UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL: | : | MDL NO. 2047 |
| PRODUCT LIABILITY LITIGATION | : | |
| | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| LONG MAI AND KAVITA MANDHARE | : | |
| | : | |
| CASE NO.: 09-3536 | : | AMENDED COMPLAINT |

………………………………………………….

Plaintiffs, LONG MAI AND KAVITA MANDHARE bring this action against Defendants, KNAUF GIPS KG, KNAUF PLASTERBOARD TIANJIN CO., LTD., TAISHAN GYPSUM CO. LTD. f/k/a SHANDONG TAIHE DONGXIN CO. LTD., USG CORPORATION, L&W SUPPLY CORPORATION d/b/a SEACOAST SUPPLY, INDEPENDENT BUILDERS SUPPLY ASSOCIATION, INC. and ROTHCHILT INTERNATIONAL LIMITED (collectively "Defendants"), and for their amended complaint allege, superseding and amending, upon information and belief and based on the investigation to date of their counsel and withdraws any claims that are contained in the Original Complaint that are not contained herein, as follows:

**INTRODUCTION**

1.      Plaintiffs bring this action as owners of homes in the State of Louisiana that was built using drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold by Defendants, Knauf Gips KG ("Knauf Gips"), Knauf Plasterboard Tianjin Co., Ltd. ("Knauf Tianjin"), Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin Co. Ltd. ("Taishan"), USG Corporation ("USG"), L&W Supply Corporation d/b/a

Seacoast Supply ("Seacoast"), Independent Builders Supply Association, Inc. ("IBSA") and Rothchilt International Limited ("Rothchilt").

2.     The drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants to build the home of Plaintiffs are defective and emits levels of sulfur, methane and/or other volatile organic chemical compounds that cause corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items, as well as create noxious, "rotten egg-like" odors. Defendants' defective gypsum drywall further causes allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns. Defendants' drywall was inherently defective and not suitable for its intended use.

## JURISDICTION AND VENUE

3.     Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

4.     Venue for this cause is proper in the Eastern District of Louisiana, pursuant to and in accordance with 28 U.S.C. §1391.

## THE PARTIES

5.     Plaintiffs, LONG MAI AND KAVITA MANDHARE are residents of the Eastern District of Louisiana, Louisiana. Plaintiff's home was built using Defendants' defective drywall.

6.     Upon information and belief, Defendant, Knauf Gips, is a German corporation doing business in the State of Louisiana. One of Knauf Gips' affiliates, Gebr. Knauf Verwaltungsgsellschaft KG, owns a substantial stake in Defendant USG. Knauf Gips is a leading manufacturer of building materials and systems. Defendant Knauf Gips, together with its affiliates, including Defendant Knauf Tianjin, provides building materials and

2

systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Defendant Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Defendant Knauf Tianjin, and its agents, apparent agents and employees.

7.     Among other things, in 1995, Defendant Knauf Gips introduced its advanced production techniques and technology into China. From 1997 through 2001, Defendant Knauf Gips established three plasterboard plants in China located in Wuhu, Tianjin and Dongguan. The product quality of all Defendant Knauf Gips' plants in China, including Defendant Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Defendant Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Defendant Knauf Tianjin in China. Defendant Knauf Tianjin and its employees are the actual and/or apparent agents of Defendant Knauf Gips.

8.     Upon information and belief, Defendant Knauf Gips, together with its affiliates and/or actual or apparent agents, including Defendant Knauf Tianjin, manufactured, sold, distributed, marketed and placed into the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Defendants Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and their drywall was installed in numerous homess in Louisiana. Defendants Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Louisiana, including Defendants USG, Seacoast, IBSA and/or Rothchilt, defective gypsum drywall that was installed in Plaintiffs' home. Moreover, Defendants Knauf Gips and/or Knauf Tianjin purposefully availed

themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

9.    Upon information and belief, Defendant, Knauf Plasterboard Tianjin Co., Ltd., is a Chinese corporation with its principal place of business located at North Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400 P.R.C., and at all times material, conducted business in the State of Louisiana. Defendant Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Defendant Knauf Tianjin is the actual and/or apparent agent of Defendant Knauf Gips. Upon information and belief, Defendant Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Defendant Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Defendants Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and their drywall was installed in numerous homes in Louisiana. Defendants Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Louisiana, including Defendants USG, Seacoast, IBSA, and/or Rothchilt, defective gypsum drywall that was installed in Plaintiffs' home. Moreover, Defendants Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

10.    Upon information and belief, Defendant, Taishan, is a Chinese corporation with its principal address located at Dawenkou, Taian, Shandong, China 271026, and at all

times material, conducted business in the State of Louisiana. Defendant Taishan is involved in the manufacturing and sale of gypsum drywall. Upon information and belief, Defendant Taishan manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Defendant Taishan has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and its drywall was installed in numerous homes in Louisiana. Defendant Taishan manufactured and sold, directly and indirectly, to certain suppliers in the State of Louisiana, including Defendants USG, Seacoast, IBSA, and/or Rothchilt, defective gypsum drywall that was installed in Plaintiffs' home. Moreover, Defendant Taishan purposefully availed itself of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana.

11.     This Court has personal jurisdiction over Defendants Knauf Gips, Knauf Tianjin and Taishan because they are "engaged in substantial and not isolated activity within this state." Additionally, Plaintiffs' causes of action arise from Defendants Knauf Gips, Knauf Tianjin and Taishan personally or through their agents, causing injury to property within the State of Louisiana arising out of acts or omissions of Defendants Knauf Gips, Knauf Tianjin and Taishan outside the State of Louisiana, and at the time of the injury, products, materials, or things manufactured by Defendants Knauf Gips, Knauf Tianjin and Taishan were used and consumed within the State of Louisiana in the ordinary course of commerce, trade or use.

12.     Defendant USG is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material, was authorized to and conducted business in the State of Louisiana. Defendant USG,

5

together with its various affiliates, including Defendant Seacoast, is the nation's largest distributor of drywall and related building products.

13.     Defendant Seacoast is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material, was authorized to and conducted business in the State of Louisiana. Defendant Seacoast has numerous supply centers in the State of Louisiana. Defendant Seacoast is a subsidiary of Defendant USG.

14.     Defendant IBSA is a member owned buying organization with its principal place of business located in Smithfield, North Carolina, and is authorized to do and doing business in the State of Louisiana.

15.     Upon information and belief, Defendant Rothchilt is a Chinese corporation organized with its principal place of business located at N-510 Chia Hsin Bld., Annex 96 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan R.O.C., and at all times material, conducted business in the State of Louisiana. Defendant Rothchilt exports products, including gypsum drywall, to customers in the United States, including the State of Louisiana. Upon information and belief, Defendant Rothchilt sold, distributed, marketed, and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Rothchilt has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and its drywall was installed in numerous homes in Louisiana. Upon information and belief, Defendant Rothchilt supplied defective gypsum drywall that was installed in Plaintiffs' home.

16.     This Court has personal jurisdiction over Defendant Rothchilt because it is "engaged in substantial and not isolated activity within this state."  Additionally, Plaintiffs'

causes of action arise from Defendant Rothchilt personally or through its agents, causing injury to property within the State of Louisiana arising out of acts or omissions of Defendant Rothchilt outside the State of Louisiana, and at the time of the injury, products, materials, or things manufactured by Defendant Rothchilt were used and consumed within the State of Louisiana in the ordinary course of commerce, trade or use.

### GENERAL ALLEGATIONS

17.     In connection with the construction of homes in the State of Louisiana, consumers purchased gypsum drywall, either directly or indirectly, from various suppliers, including, but not necessarily limited to, Defendants USG, Seacoast, IBSA and/or Rothchilt (collectively, the "Suppliers").

18.     Upon information and belief, the Suppliers purchased, directly and/or indirectly, gypsum drywall that was manufactured in China by Defendants Knauf Gips, Knauf Tianjin and Taishan, and possibly other unknown Chinese manufacturers (collectively, the "Manufacturers").

19.     Defendants negligently manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold defective gypsum drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

20.     Defendants' drywall was made with waste material from scrubbers on coal-fired power plants, also called "fly ash."  These materials can leak into the air and emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

21.     When combined with moisture in the air, these sulfur compounds create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing – creating leaks, blackening coils and causing HVAC systems and refrigerators to fail. Sulfuric acid has also been shown to corrode copper electrical wiring and plumbing components. Not only does it blacken and corrode coils, it can harm metals such as chrome, brass and silver.

22.     Defendants' defective drywall can not only affect HVAC systems and refrigerators, but can affect and require replacement of all sorts of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware. In addition, the defective drywall has a noxious odor, akin to the smell of rotten eggs.

23.     Upon information and belief, over 10 million square feet of Defendants' defective drywall was used in the construction of Louisiana homes between 2004 and 2006.

24.     Upon information and belief, Defendants Knauf Gips and/or Knauf Tianjin themselves have engaged experts and consultants in the State of Louisiana to investigate claims regarding the defective drywall. Among other things, Defendants Knauf Gips and/or Knauf Tianjin have inspected several affected homes and have witnessed firsthand the effects of its defective drywall on, among other things, HVAC coils, electrical wiring and plumbing. Defendants Knauf Gips and/or Knauf Tianjin have failed and refused to take responsibility for their defective product and agree to repair or replace the defective drywall.

25.     Defendants' actions will require Plaintiffs to remedy all defective drywall, perform extensive remedial repairs to the homes, and then repair the damaged property made visible during the performance of these repairs.

26.     As a result, the Plaintiffs have suffered, and continue to suffer damages as a result of Defendants' defective drywall and the corrosive effects of the sulfur compounds.

These damages include, but are not limited to, the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property. Plaintiffs have also suffered and continues to suffer personal injuries as a result of Defendants' defective drywall, including, but not limited to, allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

27.      Defendants' actions also resulted in substantial diminution in the value of Plaintiffs' home.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

28.      The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose a known defect to Plaintiffs, and misrepresenting their product as safe for its intended use, actively concealed from Plaintiffs the true risks associated with their drywall.

29.      As a result of Defendants' actions, Plaintiffs could not reasonably know or have learned through reasonable diligence of the manufacturing defect and that Plaintiffs had been exposed to the risks alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

30.      Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had, and continue to have, exclusive control, and because Defendants knew that this information was not available to the Plaintiffs. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

31.     Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at any time.

## COUNT I
### (Against Defendant Knauf Gips)

32.     Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

33.     This is an action for vicarious liability against Defendant Knauf Gips for the negligent and wrongful acts of its actual and/or apparent agent, Defendant Knauf Tianjin.

34.     Defendant Knauf Gips established Defendant Knauf Tianjin in China and at all times material, exercised strict control over Defendant Knauf Tianjin's operations in accordance with the requirements of Defendant Knauf Gips' headquarters in Germany. Defendant Knauf Gips is, and at all times material was, responsible for implementing and supervising the quality control measures to be used by Defendant Knauf Tianjin.

35.     By establishing Defendant Knauf Tianjin in China, and by exercising strict control over Defendant Knauf Tianjin's conduct and operations, Defendant Knauf Gips acknowledged that Defendant Knauf Tianjin would act on its behalf as its actual and/or apparent agent.

36.     Defendant Knauf Tianjin accepted the undertaking to act of Defendant Knauf Gips' behalf.

37.     Upon information and belief, Defendant Knauf Gips supervises, monitors, and controls Defendant Knauf Tianjin's daily conduct and operations, including the manufacturing, distribution, marketing and sale of Defendant Knauf Tianjin's drywall products. Furthermore, upon information and belief, Defendant Knauf Gips is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms

10

utilized by Defendant Knauf Tianjin.

38.     As such, Defendant Knauf Gips is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Defendant Knauf Tianjin.

39.     As a result of Defendants Knauf Gips' and/or Knauf Tianjin's wrongful conduct, Plaintiffs have suffered and will continue to suffer damages.

40.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs informed and believes, and further alleges, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT II
## NEGLIGENCE AND NEGLIGENCE *PER SE*
### (Against Defendants Knauf Gips and Knauf Tianjin)

41.     Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

42.     Defendants Knauf Gips and Knauf Tianjin had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall the Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause did not cause damage as described herein.

43.     Defendants Knauf Gips and Knauf Tianjin breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall Defendants placed into the stream of commerce in that Defendants knew or should have know that the product was defective, did not

function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

44.     The negligence of the Defendants, their agents, servants, and/or employees, including, but was not limited to, the following acts and/or omissions:

a.      manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without thoroughly testing it;

b.      manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

c.      selling drywall without performing proper and sufficient tests to determine the dangers to its users;

d.      negligently failing to adequately and correctly warn the Plaintiffs and the public, of the dangers of Defendants' drywall;

e.      negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

f.      negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

g.      negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

h.      negligently manufacturing drywall in a manner which was dangerous to its users;

i.      negligently processing drywall in a manner which was dangerous to its users;

j.      negligently distributing drywall in a manner which was dangerous to its users;

k.      negligently delivering drywall in a manner which was dangerous to its users;

l.      concealing information concerning reports of adverse effects from the Plaintiffs while knowing that Defendants drywall was unsafe, dangerous and non-conforming with accepted industry standards; and

m.      improperly concealing and/or misrepresenting information from the Plaintiffs and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing defect.

45.     Defendants were negligent in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Defendants' drywall in that they:

a.      failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

b.      failing to conduct adequate testing to determine the safety of their drywall; and

c.      failing to warn Plaintiffs, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

46.     Upon information and belief, despite the fact that Defendants knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defect, Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs and/or the consuming public.

47.     Defendants knew or should have known that consumers such as Plaintiffs would suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth herein.

48.     Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence per se.

49.     Defendants knew or should have known that homeowners such as the Plaintiffs would foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

50.    Defendants' negligence was the proximate cause of Plaintiffs' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

51.    By reason of the foregoing, Plaintiffs experienced and/or are at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

52.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

<u>COUNT III</u>
<u>(Against Defendants Knauf Gips and Knauf Tianjin)</u>

53.    Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

54.    At all times herein mentioned, Defendants Knauf Gips and Knauf Tianjin manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiffs' home.

55.    Defendants' drywall was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was manufactured, processed, distributed, delivered, supplied, inspected and/or sold by the Defendants.

56.    At those times, the Defendants' drywall was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to homes and, in particular, Plaintiffs' home.

57.    Defendants' drywall were so defective in design or formulation or

14

manufacture that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants' drywall.

58.     At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

59.     Defendants knew, or should have known, that at all times herein mentioned Defendants' drywall was/is inherently dangerous and unsafe.

60.     At the time of use of Defendants' drywall by Plaintiffs, Plaintiffs utilized the drywall for the purposes and manner normally intended.

61.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

62.     Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiffs.

63.     Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold a defective product which created an unreasonable risk to the Plaintiffs' home as well as to the health of Plaintiffs. Defendants are, therefore, strictly liable for the damages and injuries sustained by Plaintiffs.

64.     Plaintiffs, acting as a reasonably prudent person, could discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

65.     By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiffs for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendants' drywall.

66.     Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

67.     Said defects in Defendants' drywall were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at increased risk of damage and/or harm.

68.     As a direct and proximate result of the defective condition of Defendants' drywall as manufactured and sold by Defendants, Plaintiffs suffered, and will continue to suffer, damages.

69.     By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

70.     As a result of the foregoing acts and omissions, Plaintiffs requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT IV
## NEGLIGENCE AND NEGLIGENCE *PER SE*
### (Against Defendant Taishan)

71.     Plaintiffs repeat, reiterate and reallege the above of this Complaint, with the same force and effect as if fully set forth herein.

72.     Defendant Taishan had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall the Defendant placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause did not cause damage as described

herein.

73.     Defendant Taishan breached its duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall into the stream of commerce in that Defendants knew or should have know that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

74.     The negligence of the Defendant, its agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

  a.     manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without thoroughly testing it;

  b.     manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

  c.     selling drywall without performing proper and sufficient tests to determine the dangers to its users;

  d.     negligently failing to adequately and correctly warn the Plaintiffs and the public, of the dangers of Defendants' drywall;

  e.     negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

  f.     negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

  g.     negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

  h.     negligently manufacturing drywall in a manner which was dangerous to its users;

17

  i.  negligently processing drywall in a manner which was dangerous to its users;

  j.  negligently distributing drywall in a manner which was dangerous to its users;

  k.  negligently delivering drywall in a manner which was dangerous to its users;

  l.  concealing information concerning reports of adverse effects from the Plaintiffs while knowing that Defendants drywall were unsafe, dangerous and non-conforming with accepted industry standards; and

  m.  improperly concealing and/or misrepresenting information from the Plaintiffs and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing defect.

75. Defendants were negligent in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Defendants' drywall in that they:

  a.  failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

  b.  failing to conduct adequate testing to determine the safety of their drywall; and

  c.  failing to warn Plaintiffs, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

76. Upon information and belief, despite the fact that Defendants knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defect, Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs and/or the consuming public.

77. Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise

ordinary care, as well as Defendants' negligent manufacturing process, as set forth herein.

78.     Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence per se.

79.     Defendants knew or should have known that homeowners such as the Plaintiffs would foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

80.     Defendants' negligence was the proximate cause of Plaintiffs' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

81.     By reason of the foregoing, Plaintiffs experienced and/or are at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

82.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT V
### (Against Defendant Taishan)

83.     Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

84.     At all times herein mentioned, Defendant Taishan manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiffs' home.

85.     Defendant's drywall was expected to, and did, reach the usual consumers,

handlers, and persons coming into contact with said product without substantial change in the condition which it was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold by the Defendant.

86.     At those times, the Defendant's drywall was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to homes and, in particular, Plaintiffs' home.

87.     Defendants' drywall were so defective in design or formulation or manufacture that when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants' drywall.

88.     At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

89.     Defendants knew, or should have known, that at all times herein mentioned Defendants' drywall was/is inherently dangerous and unsafe.

90.     At the time of use of Defendants' drywall by Plaintiffs, Plaintiffs utilized the drywall for the purposes and manner normally intended.

91.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

92.     Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiffs.

93.     Defendants manufactured, processed, distributed, delivered, supplied,

inspected, marketed and/or sold a defective product which created an unreasonable risk to the Plaintiffs' home as well as to the health of Plaintiffs. Defendants are, therefore, strictly liable for the damages and injuries sustained by Plaintiffs.

94.     Plaintiffs acting as a reasonably prudent person, could not discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

95.     By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiffs for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendants' drywall.

96.     Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

97.     Said defects in Defendants' drywall were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at increased risk of damage and/or harm.

98.     As a direct and proximate result of the defective condition of Defendants' drywall as manufactured and sold by Defendants, Plaintiffs suffered, and will continue to suffer, damages.

99.     By reason of the foregoing, Plaintiffs experienced, and/or is at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

100.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT VI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Defendants USG and Seacoast)

101.    Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

102.    This is an action against Defendants USG and Seacoast for breach of the implied warranty of merchantability under Louisiana Law.

103.    Defendants USG and/or Seacoast are merchants of gypsum drywall.

104.    Upon information and belief, some of the defective drywall used in the construction of Plaintiffs' home was sent from the Manufacturers to Defendant USG.

105.    Homebuilders and/or their agents or employees entered into contracts with Defendants USG and Seacoast to purchase gypsum drywall that was to be installed in Plaintiffs' home.

106.    Plaintiffs are an intended third party beneficiary of those contracts because it was the clear and manifest intent of Defendants USG and/or Seacoast that the contracts were to primarily and directly benefit Plaintiffs.

107.    Pursuant to Louisiana Law, Defendants USG and/or Seacoast warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

108.    Defendants USG and/or Seacoast breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

109.    The drywall supplied and sold by Defendants USG and/or Seacoast and installed in Plaintiffs' home is defective because it caused damage as described more fully herein.

110.    As a result of Defendants USG's and/or Seacoast's breaches of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

111.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT VII**
**BREACH OF IMPLIED WARRANTY**
**OF FITNESS FOR A PARTICULAR PURPOSE**
**(Against Defendants USG and Seacoast)**

112.    Plaintiffs repeat, reiterate and reallege the above paragraphs this Complaint, with the same force and effect as if fully set forth herein.

113.    This is an action against Defendants USG and Seacoast for breach of the implied warranty of fitness for a particular purpose under Louisiana Law.

114.    Defendants USG and/or Seacoast are suppliers of gypsum drywall.

115.    Upon information and belief, some of the defective drywall used in the construction of Plaintiffs' home was sent from the Manufacturers to Defendant USG.

116.    Homebuilders and/or their agents or employees entered into contracts with Defendants USG and Seacoast to purchase gypsum drywall that was to be installed in Plaintiffs' home.

117.    Plaintiffs are an intended third party beneficiary of those contracts because it was the clear and manifest intent of Defendants USG and/or Seacoast that the contracts were to primarily and directly benefit Plaintiffs.

118.    At the time Defendants USG and/or Seacoast entered into the contracts with the homebuilders, Defendants USG and/or Seacoast had reason to know that the

23

gypsum drywall was being purchased for the particular purpose of being installed in residential home owned by Plaintiffs, and that homebuilders were relying on Defendants USG's and/or Seacoast's skill and judgment to select and furnish gypsum drywall that was suitable for this particular purpose.

119.    Plaintiffs, directly and/or indirectly, relied on Defendant USG's and/or Seacoast's judgment in supplying and selling gypsum drywall that was suitable for the particular purpose of being installed in residential home owned by Plaintiffs.

120.    Pursuant to Louisiana Law, Defendants USG and/or Seacoast warranted that the gypsum drywall was fit for the particular purpose of being installed in residential home owned by Plaintiffs.

121.    Defendants USG and/or Seacoast breached the implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential home owned by Plaintiffs.

122.    The drywall supplied and sold by Defendants USG and/or Seacoast and installed in Plaintiffs' home is defective because it caused damage as described more fully herein.

123.    As a result of Defendants USG's and/or Seacoast's breaches of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

124.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT VIII
## (Against Defendant USG)

24

125.    Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

126.    This is an action for products liability against Defendant USG.

127.    The defective gypsum drywall installed in Plaintiffs' home was supplied by, among other suppliers, Defendant USG. Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendant USG.

128.    The defective gypsum drywall distributed, supplied, and/or sold by Defendant USG is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

129.    Defendant USG expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

130.    The defective gypsum drywall distributed, supplied and/or sold by Defendant USG directly and proximately caused damage and injury to Plaintiffs', including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

131.    By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury as described more fully herein.

132.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs,

repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT IX
### (Against Defendant Seacoast)

133.    Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

134.    This is an action for products liability against Defendant Seacoast.

135.    The defective gypsum drywall installed in Plaintiffs' home was supplied by, among other suppliers, Defendant Seacoast. Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendant Seacoast.

136.    The defective gypsum drywall distributed, supplied, and/or sold by Defendant Seacoast is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

137.    Defendant Seacoast expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

138.    The defective gypsum drywall distributed, supplied and/or sold by Defendant Seacoast directly and proximately caused damage and injury to Plaintiffs', including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

139.    By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury as described more fully herein.

140.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

## COUNT X
### (Against Defendants Rothchilt and IBSA)

141.    Plaintiffs repeat, reiterate and reallege in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

142.    This is an action against Defendants Rothchilt and IBSA for breach of the implied warranty of merchantability under the common law and/or Louisiana Law.

143.    Defendants Rothchilt and/or IBSA are merchants of gypsum drywall.

144.    Homebuilders and/or their agents or employees entered into contracts with Defendants Rothchilt and IBSA to purchase gypsum drywall that was to be installed in Plaintiffs' home.

145.    Plaintiffs are an intended third party beneficiary of those contracts because it was the clear and manifest intent of Defendants Rothchilt and/or IBSA that the contracts were to primarily and directly benefit Plaintiffs.

146.    Pursuant to Louisiana Law, Defendants Rothchilt and/or IBSA warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

27

147.     Defendants Rothchilt and/or IBSA breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

148.     The drywall supplied and sold by Defendants Rothchilt and/or IBSA and installed in Plaintiffs' home is defective because it caused damage as described more fully herein.

149.     As a result of Defendants Rothchilt's and/or IBSA's breaches of the implied warranty of merchantability, Plaintiffs have  suffered and continue to suffer damages.

150.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT XI**
**BREACH OF IMPLED WARRANTY**
**OF FITNESS FOR A PARTICULAR PURPOSE**
**(Against Defendants Rothchilt and IBSA)**

151.     Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

152.     This is an action against Defendants Rothchilt and IBSA for breach of the implied warranty of fitness for a particular purpose under Louisiana Law.

153.     Defendants Rothchilt and/or IBSA are suppliers of gypsum drywall.

154.     Homebuilders and/or their agents or employees entered into contracts with Defendants Rothchilt and/or IBSA to purchase gypsum drywall that was to be installed in Plaintiffs' home.

155.     Plaintiffs are an intended third party beneficiary of those contracts because it

was the clear and manifest intent of Defendants Rothchilt and/or IBSA that the contracts were to primarily and directly benefit Plaintiffs.

156.     At the time Defendants Rothchilt and/or IBSA entered into the contracts with the homebuilders, Defendants Rothchilt and/or IBSA had reason to know that the gypsum drywall was being purchased for the particular purpose of being installed in residential home owned by Plaintiffs, and that homebuilders were relying on Defendants Rothchilt's and/or IBSA's skill and judgment to select and furnish gypsum drywall that was suitable for this particular purpose.

157.     Plaintiffs, directly and/or indirectly, relied on Defendant Rothchilt's and/or IBSA's judgment in supplying and selling gypsum drywall that was suitable for the particular purpose of being installed in residential home owned by Plaintiffs.

158.     Pursuant to Louisiana Law, Defendants Rothchilt and/or IBSA warranted that the gypsum drywall was fit for the particular purpose of being installed in residential home owned by Plaintiffs.

159.     Defendants Rothchilt and/or IBSA breached the implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential home owned by Plaintiffs.

160.     The drywall supplied and sold by Defendants Rothchilt and/or IBSA and installed in Plaintiffs' home is defective because it caused damage as described more fully herein.

161.     As a result of Defendants Rothchilt's and/or IBSA's breaches of the implied warranty of merchantability, Plaintiffs have  suffered and continue to suffer damages.

162.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs,

repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT XII**
**(Against Defendant IBSA)**

163.    Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

164.    This is an action for products liability against Defendant IBSA.

165.    The defective gypsum drywall installed in Plaintiffs' home was supplied by, among other suppliers, Defendant IBSA. Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendant IBSA.

166.    The defective gypsum drywall distributed, supplied, and/or sold by Defendant IBSA is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

167.    Defendant IBSA expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

168.    The defective gypsum drywall distributed, supplied and/or sold by Defendant IBSA directly and proximately caused damage and injury to Plaintiffs, including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

30

169.    By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury as described more fully herein.

170.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

<u>**COUNT XIII**</u>
<u>**(Against Defendant Rothchilt)**</u>

171.    Plaintiffs repeat, reiterate and reallege the above paragraph of this Complaint, with the same force and effect as if fully set forth herein.

172.    This is an action for products liability against Defendant Rothchilt.

173.    The defective gypsum drywall installed in Plaintiffs' home was supplied by, among other suppliers, Defendant Rothchilt. Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendant Rothchilt.

174.    The defective gypsum drywall distributed, supplied, and/or sold by Defendant Rothchilt is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

175.    Defendant Rothchilt expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach

31

the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

176.     The defective gypsum drywall distributed, supplied and/or sold by Defendant Rothchilt directly and proximately caused damage and injury to Plaintiffs, including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

177.     By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury as described more fully herein.

178.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will requires extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

## COUNT XIV
### (Against All Defendants)

179.     Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

180.     Defendants expressly warranted that Defendants' drywall was safe and well accepted by homebuilders.

181.     Defendants' drywall did not conform to these express representations because Defendants' defective drywall is defective and unsafe, and is associated with numerous side effects. As a direct and proximate result of the breach of said warranties,

Plaintiffs suffered, and/or will continue to suffer, and/or are at an increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

182.    Plaintiffs did rely on the express warranties of the Defendants herein.

183.    The Defendants herein breached the aforesaid express warranties, as Defendants' drywall was defective.

184.    Defendants expressly represented to Plaintiffs that Defendants' drywall are safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall are of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall were adequately tested and fit for its intended use.

185.    Defendants knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that Defendants' drywall are not fit for the use intended and, in fact, produced severe and extensive damage to Plaintiffs' home because Defendants' drywall was negligently manufactured.

186.    Defendants expressly represented to Plaintiffs that Defendants' drywall is safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall are of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall were adequately tested and fit for its intended use.

187.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will requires extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

**COUNT XV**
**FRAUDULENT MISREPRESENTATION**

**(Against Defendants Knauf Gips, Knauf Tianjin and Taishan)**

188.    Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

189.    Defendants falsely and fraudulently represented to Plaintiffs that Defendants' drywall had been tested and was found to be safe and/or effective for use.

190.    That representation made by Defendants was, in fact, false.

191.    When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

192.    These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs and/or the consuming public, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiffs herein.

193.    At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiffs, installed/purchased Defendants' drywall, the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

194.    In reliance upon said representations, the Plaintiffs' home was built using Defendants' drywall thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

195.    Said Defendants knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

196.    Defendants knew, or should have known, that Defendants' drywall had a potential to, could, and would cause severe damage and injury to homeowners.

197.    Defendants brought Defendants' drywall to the market and acted

34

fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs.

198.    By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, financial damage and injury.

199.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT XVI**
**(Against Defendants Knauf Gips, Knauf Tianjin and Taishan)**

200.    Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

201.    At all times material hereto, Defendants misrepresented the safety of Defendants' drywall.

202.    Defendants knew, or were reckless in not knowing, that its representations were false.

203.    Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

204.    Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

205.    Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

206.    Defendants were under a duty to disclose to Plaintiffs the aforementioned as it pertains to Defendants' drywall.

207.    Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

208.    Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

209.    Defendants knew that Plaintiffs and/or the consuming public, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

210.    Plaintiffs and/or the consuming public, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

211.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

### COUNT XVII
### VIOLATION OF THE DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT
### (Against Defendants Knauf Gips, Knauf Tianjin and Taishan)

212.     Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

213.     This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by Defendants Knauf Gips, Knauf Tianjin and Taishan.

214.     Plaintiffs are a "consumer" and the subject transactions are "trade or commerce" as defined by Louisiana Law.

215.     Defendants Knauf Gips', Knauf Tianjin's and Taishan's actions and/or omissions as described herein violate Louisiana Law, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

216.     Specifically, Defendants Knauf Gips, Knauf Tianjin and Taishan misrepresented and omitted material information regarding their drywall by failing to disclose known risks.

217.     Defendants Knauf Gips', Knauf Tianjin's and Taishan's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' drywall in violation of Louisiana Law.

218.     Defendants Knauf Gips, Knauf Tianjin and Taishan violated Louisiana Law, by knowingly and falsely representing that Defendants' drywall was fit to be used for the purpose for which they were intended, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

219.     Defendants Knauf Gips, Knauf Tianjin and Taishan engaged in the deceptive acts and practices alleged herein in order to sell Defendants' drywall to the public, including Plaintiffs.

220.     Said acts and practices on the part of Defendants Knauf Gips, Knauf Tianjin and Taishan were and are illegal and unlawful pursuant to Louisiana Law.

221.     As a direct and proximate result of Defendants Knauf Gips', Knauf Tianjin's and Taishan's violations of Louisiana Law, Plaintiffs have  suffered damages. Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against the Defendants, jointly and severally, as follows:

a.     Equitable, injunctive, and declaratory relief;

c.     Damages in an amount to be determined at trial, but in an amount exceeding twenty-five thousand dollars;

d.     Pre-judgment and post-judgment interest at the maximum rate allowable at law;

e.     Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

f.     The costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees;

g.     All statutory damages;

h.     Disgorgement of Defendants' profits from the sale of drywall;

i.     Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiffs may be entitled;

j.     Such other and further relief under all applicable state and federal law and

any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, LONG MAI AND KAVITA MANDHARE hereby demands a trial by jury as to all issues so triable.

By:   s//Daniel E. Becnel, Jr.
      Daniel E. Becnel, Jr. (La. Bar No. 2926)
      Matthew B. Moreland (La. Bar. No. 24567)
      **BECNEL LAW FIRM, LLC**
      P. O. Drawer H
      Reserve, Louisiana  70084
      Telephone: (985) 536-1186
      Facsimile: (985) 536-6445
      Email: dbecnel@becnellaw.com

      Morris Bart (La. Bar No. 2788)
      Reed G. Bowman (La. Bar No. 30408)
      Jeff J. Kaiser (La. Bar No. 31805)
      **MORRIS BART, L.L.C.**
      909 Poydras St., 20th Floor
      New Orleans, LA  70112
      Telephone: (504) 525-8000
      Facsimile: (504) 599-3382

      Russ M. Herman (La. Bar No. 6819)
      Leonard A. Davis (La. Bar No. 14190)
      Stephen J. Herman (La. Bar No. 23129)
      **HERMAN HERMAN KATZ &**
      **COTLAR, LLP**
      820 O'Keefe Avenue
      New Orleans, La.  70113
      Telephone: (504) 581-4892
      Facsimile: (504) 561-6024

      *Attorneys for Plaintiffs*