# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**RONNIE VAN WINKLE, SR. and ANNE VAN WINKLE,**
**Individually and as Husband and Wife**

**CIVIL ACTION NO.**
**09-4378**

**Versus**

**KNAUF GIPS KG, KNAUF PLASTERBOARD**
**TIANJIN CO., LTD., TAISHAN GYPSUM CO.**
**LTD. f/k/a SHANDONG TAIHE DONGXIN**
**CO. LTD., USG CORPORATION, L&W**
**SUPPLY CORPORATION d/b/a SEACOAST**
**SUPPLY, INTERIOR EXTERIOR BUILDING**
**SUPPLY, INDEPENDENT BUILDERS**
**SUPPLY ASSOCIATION, INC.,**
**ROTHCHILT INTERNATIONAL LIMITED,**
**TUDELA'S CLASSIC HOMES, L.L.C., NAUTILUS**
**INSURANCE GROUP, LLC**

**SECTION:**

**MAG.:**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

The amending and supplemental complaint of Plaintiffs, Ronnie Van Winkle, Sr. and

Anne Van Winkle, individually and as husband and wife, respectfully bring this action against

Defendants, KNAUF GIPS KG, KNAUF PLASTERBOARD TIANJIN CO., LTD., TAISHAN

GYPSUM CO. LTD. f/k/a SHANDONG TAIHE DONGXINCO. LTD., USG CORPORATION,

L&W SUPPLY CORPORATION d/b/a SEACOAST SUPPLY, INTERIOR EXTERIOR

BUILDING SUPPLY, INDEPENDENT BUILDERS SUPPLY ASSOCIATION, INC.,

ROTHCHILT INTERNATIONAL LIMITED, TUDELA'S CLASSIC HOMES, L.L.C.,

NAUTILUS INSURANCE GROUP, LLC (collectively "Defendants"). All of the allegations

contained in the original complaint for damages are re-alleged and incorporated herein as if

copied *in extensio* and the original complaint is amended and supplemented, as follows:

## INTRODUCTION

1.

Plaintiffs bring this action as an owner of a home in the State of Louisiana that was built

using drywall manufactured, processed, delivered, supplied, inspected, marketed and/or sold by

Defendants, Knauf Gips KG ("Knauf Gips"), Knauf Plasterboard Tianjin Co., Ltd. ("Knauf

Tianjin"), Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin co. Ltd. ("Taishan"), USG

Corporation ("USG"), L&W Supply Corporation d/b/a Seacoast Supply ("Seacoast"), Interior

Exterior Building Supply ("Interior/Exterior"), Independent Builders Supply Association, Inc.

("IBSA") and Rothchilt International Limited ("Rothchilt"), Tudela's Classic Homes, L.L.C.

("Tudela's"), Nautilus Insurance Group, L.L.C. ("Nautilus").

2.

The drywall manufactured, processed, distributed, delivered, supplied, inspected

marketed, and/or sold by Defendants to build the home of Plaintiffs are defective and emits

levels of sulphur, methane and/or other volatile organic chemical compounds that cause

corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing

components, and other household items, as well as create a noxious, "rotten egg-like" odors.

Defendants' defective gypsum drywall further causes allergic reactions, coughing, sinus and

throat infection, eye irritation, respiratory problems and other health concerns. Defendant's

drywall was inherently defective and not suitable for its intended use.

## JURISDICTION AND VENUE

3.

Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

4.

Venue for this case is proper in the Eastern District of Louisiana, pursuant to an in accordance with 28 U.S.C. §1391.

## THE PARTIES

5.

Plaintiffs, Ronnie Van Winkle, Sr. and Anne Van Winkle are residents of the Eastern District of Louisiana. Plaintiffs' home was built using Defendants' defective drywall.

6.

Made Defendants herein are:

Knauf Gips, who, is a German corporation doing business in the State of Louisiana. One of Knauf Gips' affiliates, Gebr. Knauf Verwaltungsgsellschaft KG, owns a substantial stake in Defendant USG Corporation. Knauf Gips is a leading manufacturer of building materials and systems. Defendant Knauf Gips, together with its affiliates, including Defendant Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States. At all material times hereto, Defendant Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Defendant Knauf Tianjin, and its agents, apparent agents and employees.

7.

Knauf Plasterboard Tianjin Co., Ltd., who, is a Chinese corporation with its principal place of business located at North Yinhe Bridge, East Jinglin Road, Beichen District, Tianjin, 300400 P.R.C., and at all times material, conducted business in the State of Louisiana. Defendant Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Defendant Knauf Tianjin is the actual and/or apparent agent of Defendant Knauf Gips. Defendant Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Defendant Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Defendants Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and their drywall was installed in numerous homes in Louisiana. Defendants Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Louisiana, including Defendants USG, Seacoast, Interior Exterior Building Supply, IBSA, and/or Rothchilt, defective gypsum drywall that was installed in Plaintiffs' home. Moreover, Defendants Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana and by hiring agents with the State of Louisiana to investigate the very allegations at issue in this lawsuit.

8.

Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., who is a Chinese

corporation with its principal address located at Dawenkou, Taian, Shandong, China 271026, and at all times material, conducted business in the State of Louisiana.  Defendant Taishan is involved in the manufacturing and sale of gypsum drywall. Defendant Taishan manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum *drywall* with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana.  Defendant Taishan has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and its drywall was installed in numerous homes in Louisiana.  Defendant Taishan manufactured and sold, directly and indirectly, to certain suppliers in the State of Louisiana, including Defendants USG, Seacoast, Interior Exterior Budding Supply, IBSA, and/or Rothchilt, defective gypsum drywall that was installed in Plaintiffs' home.  Moreover, Defendant Taishan purposefully availed itself of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana.

9.

USG Corporation, a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, who at all times material, was authorized to and conducted business in the State of Louisiana. Defendant USG, together with its various affiliates, including Defendant Seacoast, is the nation's largest distributor of drywall and related building products.

10.

L&W Supply Corporation, d/b/a Seacoast Supply, a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, who at all

times material, was authorized to and conducted business in the State of Louisiana. Defendant Seacoast has numerous supply centers in the State of Louisiana.   Defendant Seacoast is a subsidiary of Defendant USG.

11.

Interior Exterior Building Supply, a Louisiana partnership with its principal place of business located at 727 S. Cortez, New Orleans, LA 70119.

12.

Independent Builders Supply Association, Inc., (hereinafter "IBSA"), a member owned buying organization with its principal place of business located in Smithfield, North Carolina, who is authorized to do and doing business in the State of Louisiana.

13.

Rothchilt International Limited, who, is a Chinese corporation, organized with its principal place of business located at N-510 Chia Hsin Bld., Annex 96 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan R.O.C., who at all times material, conducted business in the State of Louisiana. Defendant Rothchilt exports products, including gypsum drywall, to customers in the United States, including the State of Louisiana.   Defendant Rothchilt sold, distributed, marketed, and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Rothchilt has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and its drywall was installed in numerous homes in Louisiana. Defendant Rothchilt supplied defective gypsum drywall that was installed in Plaintiffs' home.

14.

Tudela's Classic Homes, L.L.C., who is a Louisiana Limited Liability Company, organized with its principal place of business located at 22374 Max Jude Lane, Mandeville, LA 70471, who at all times material, conducted business in the State of Louisiana. Defendant Tudela's Classic Homes, L.L.C., is the builder, purchaser, supplier and installer of the gypsum drywall in Plaintiffs' home. Tudela's Classic Homes, L.L.C., has purchased, supplied and installed drywall in numerous homes in the State of Louisiana.

15.

Nautilus Insurance Group, LLC, who is a Delaware Limited Liability Company, organized with its principal place of business located at 7233 E Butherus Drive, Scottsdale, AZ 85260, who at all times material, by and through its agents in the State of Louisiana, provided a policy of liability insurance coverage to Defendant Tudela's Classic Homes, L.L.C.

## GENERAL ALLEGATIONS

16.

Plaintiffs are the owners of a home located at 70304 8th Street, Covington, Louisiana 70433. This home was constructed with and contains the defective Chinese-manufactured drywall. Plaintiffs were not informed prior to purchase that all of the drywall in the house was the defective drywall manufactured, sold, distributed and/or installed by the defendants herein and/or their respective insurers.

17.

In connection with the construction of homes in the State of Louisiana, Consumers

purchased gypsum drywall, either directly or indirectly, from various suppliers, including, but not necessarily limited to, Defendants USG, Seacoast, IBSA and/or Rothchilt (collectively, the "Suppliers").

18.

Upon information and belief, the Suppliers purchased, directly and/or indirectly, gypsum drywall that was manufactured in China by Defendants Knauf Gips, Knauf Tianjin and Taishan, and possibly other unknown Chinese manufacturers (collectively, the "Manufacturers").

19.

Defendants negligently manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold defective gypsum drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

20.

Defendants' drywall was made with waste material from scrubbers on coal fired power plants, also called "fly ash." These materials can leak into the air and emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

21.

When combined with moisture in the air, these sulfur compounds create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing - creating leaks, blackening coils and causing HVAC systems and refrigerators to fail. Sulfuric acid has also been shown to corrode copper electrical wiring and plumbing components. Not only does it

blacken and corrode coils, it can harm metals such as chrome, brass and silver.

22.

Defendants' defective drywall can not only affect HVAC systems and refrigerators, but can affect and require replacement of all sorts of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware. In addition, the defective drywall has a noxious odor, akin to the smell of rotten eggs.

23.

Upon information and belief, over 10 million square feet of Defendants' defective drywall was used in the construction of Louisiana homes between 2004 and 2006.

24.

Upon information and belief, Defendants Knauf Gips and/or Knauf Tianjin themselves have engaged experts and consultants in the State of Louisiana to investigate claims regarding the defective drywall. Among other things, Defendants Knauf Gips and/or Knauf Tianjin have inspected several affected homes and have witnessed firsthand the effects of its defective drywall on, among other things, HVAC coils, electrical wiring and plumbing. Defendants Knauf Gips and/or Knauf Tianjin have failed and refused to take responsibility for their defective product and agree to repair or replace the defective drywall.

25.

Defendants' actions will require Plaintiffs to remedy all defective drywall, perform extensive remedial repairs to the homes, and then repair the damaged property made visible during the performance of these repairs.

26.

As a result, the Plaintiffs have suffered, and continue to suffer damages as a result of Defendants' defective drywall and the corrosive effects of the sulfur compounds.

27.

These damages include, but are not limited to, the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property. Plaintiffs have also suffered and continue to suffer personal injuries as a result of Defendants' defective drywall, including, but not limited to, allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

28.

Defendants' actions also resulted in substantial diminution in the value of Plaintiffs' home.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

29.

The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment, Defendants through failing to disclose a known defect to Plaintiffs, and misrepresenting their product as safe for its intended use, actively concealed from Plaintiffs the true risks associated with their drywall.

30.

As a result of Defendants' actions, Plaintiffs could not reasonably know or have learned through reasonable diligence of the manufacturing defect and that Plaintiffs had been exposed to

the risks alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

31.

Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had, and continue to have, exclusive control, and because Defendants knew that this information was not available to the Plaintiffs. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

32.

Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at any time.

**COUNT I**
**VICARIOUS LIABILITY**

**(Against Defendant Knauf Gips)**

33.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

34.

This is an action for vicarious liability against Defendant Knauf Gips for the negligent

and wrongful acts of its actual and/or apparent agent, Defendant Knauf Tianjin.

35.

Defendant Knauf Gips established Defendant Knauf Tianjin in China and at all times material, exercised strict control over Defendant Knauf Tianjin's operations in accordance with the requirements of Defendant Knauf Gips' headquarters in Germany. Defendant Knauf Gips is, and at all times material was, responsible for implementing and supervising the quality control measures to be used by Defendant Knauf Tianjin.

36.

By establishing Defendant Knauf Tianjin in China and by exercising strict control over Defendant Knauf Tianjin's conduct and operations, Defendant Knauf Gips acknowledged that Defendant Knauf Tianjin would act on its behalf as it's actual and/or apparent agent.

37.

Defendant Knauf Tianjin accepted the undertaking to act of Defendant Knauf Gips' behalf.

38.

Upon information and belief, Defendant Knauf Gips supervises, monitors, and controls Defendant Knauf Tianjin's daily conduct and operations, including the manufacturing, distribution, marketing and sale of Defendant Knauf Tianjin's drywall products. Furthermore, upon information and belief, Defendant Knauf Gips is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Defendant Knauf Tianjin.

39.

As such, Defendant Knauf Gips is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Defendant Knauf Tianjin.

40.

As a result of Defendants Knauf Gips' and/or Knauf Tianjin's wrongful conduct, Plaintiffs have suffered and will continue to suffer damages.

41.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs informed and believe and further allege that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT II
## NEGLIGENCE AND
## NEGLIGENCE *PER SE*

**(Against Defendants Knauf Gips, Knauf Tianjin)**

42.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

43.

Defendants Knauf Gips, Knauf Tianjin, and Taishan had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall the Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause did not cause damage

described herein.

44.

Defendants Knauf Gips, Knauf Tianjin, and Taishan breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall Defendants placed into the stream of commerce in that Defendants knew or should have know that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

45.

The negligence of the Defendants, their agents, servants, and/or employees, including, but was not limited to, the following acts and/or omissions:

a.    manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without thoroughly testing it;

b.    manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

c.    selling drywall without performing proper and sufficient tests to determine the dangers to its users;

d.    negligently failing to adequately and correctly warn the Plaintiffs and the public of the known dangers of the Defendants drywall;

e.      negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

f.      negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

g.      negligently representing that Defendants' drywall was safe for its intended purpose, intended purpose when, in fact, its safety is questionable;

h.      negligently manufacturing drywall in a manner which was dangerous to its users;

i.      negligently processing drywall in a manner which was dangerous to negligently distributing drywall in a manner that was dangerous to its users;

j.      negligently distributing drywall in a manner which was dangerous to its users;

k.      negligently delivering drywall in a manner which was dangerous to its users;

l.      concealing information concerning reports of adverse effects of adverse effects from Plaintiffs while knowing that Defendants dry wall was unsafe, dangerous, and non-conforming with accepted industry standards; and

m.      improperly concealing and/or misrepresenting information from the Plaintiffs and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing defect.

46.

Defendants were negligent in the manufacturing, processing, distributing, delivering supplying, inspecting, marketing and/or selling of Defendants' drywall in that they:

a.  failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

b.  failing to conduct adequate testing to determine the safety of their drywall; and

c.  failing to warn Plaintiffs, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

47.

Upon information and belief, despite the fact that Defendants knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defect, Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs and/or the consuming public.

48.

Defendants knew or should have known that consumers such as Plaintiffs would suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth herein.

49.

Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitute negligence per se.

50.

Defendants knew or should have known that homeowners such as the Plaintiffs would foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

51.

Defendants' negligence was the proximate cause of Plaintiffs' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

52.

By reason of the foregoing, Plaintiffs experienced and/or are at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

53.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT III
## STRICT PRODUCTS LIABILITY

### (Against Defendants Knauf Gips, Knauf Tianjin)

54.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

55.

At all times herein mentioned, Defendants Knauf Gips and Knauf Tianjin, manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the

construction of Plaintiffs' home.

56.

Defendants' drywall was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was manufactured, processed, distributed, delivered, supplied, inspected and/or sold by the Defendants.

57.

At those times, the Defendants' drywall was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to homes and, in particular, Plaintiffs' home.

58.

Defendants' drywall were so defective ill design or formulation or manufacture that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants' drywall.

59.

At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

60.

Defendants knew, or should have known, that at all times herein mentioned Defendants' drywall was is inherently dangerous and unsafe.

61.

At the time of use of Defendants' drywall by Plaintiffs, Plaintiffs utilized the drywall for the purposes and manner normally intended.

62.

Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

63.

Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiffs.

64.

Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold a defective product which created an unreasonable risk to the Plaintiffs' home as well as to the health of Plaintiffs. Defendants are, therefore, strictly liable for the damages and injuries sustained by Plaintiffs.

65.

Plaintiffs, acting as a reasonably prudent person, could discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

66.

By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiffs for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendants' drywall.

67.

Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

68.

Said defects in Defendants' drywall were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at increased risk of damage and/or harm.

69.

As a direct and proximate result of the defective condition of Defendants' drywall as manufactured and sold by Defendants, Plaintiffs suffered, and will continue to suffer damages.

70.

By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

71.

As a result of the foregoing acts and omissions, Plaintiffs requites and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT IV
## NEGLIGENCE AND NEGLIGENCE *PER SE*

### (Against Defendant Taishan)

72.

Plaintiffs repeat, reiterate and reallege the above of this Complaint, with the same force and effect as if fully set forth herein.

73.

Defendant Taishan had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/ or selling drywall the Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause damage as described suffer, damages and injury.

74.

Defendant Taishan breached its duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall into the stream of commerce in that Defendants knew or should have know that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

75.

The negligence of the Defendant, its agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

a. manufacturing, processing, distributing, delivering, inspecting, marketing and/or selling drywall without thoroughly testing it;

b. manufacturing, processing, distributing, delivering, inspecting, marketing and/or selling drywall without testing it;

c. selling drywall without performing proper and sufficient tests to determine the dangers to its users;

d. negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

e. negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was in fact, dangerous and defective;

f. negligently advertising and recommending the use of the aforesaid without dangerous propensities;

g. negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

h. negligently manufacturing drywall in a manner which was dangerous to its users;

i. negligently processing drywall in a manner which was dangerous to its users;

j. negligently distributing drywall in a manner which was dangerous to its users;

k. negligently delivering drywall in a manner which was dangerous to its users;

l. concealing information concerning reports of adverse effects from the Plaintiffs while knowing that Defendants drywall were unsafe, dangerous and non-conforming with accepted industry standards; and

m. improperly concealing and/or misrepresenting information from Plaintiffs and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or manufacturing defect.

76.

Defendant Taishan was negligent in the manufacturing, processing, distributing,

delivering, supplying, inspecting, marketing and/or selling of Defendants' drywall in that they:

    a.    failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

    b.    failing to conduct adequate testing to determine the safety of their drywall; and

    c.    failing to warn Plaintiffs. Prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

77.

Upon information and belief, despite the fact that Defendants knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defect, Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs and/or the consuming public.

78.

Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well Defendants; negligent manufacturing process, as set forth herein.

79.

Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations constitute negligence per se.

80.

Defendants knew or should have known that homeowners such as the Plaintiffs would

foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

81.

Defendants' negligence was the proximate cause of Plaintiffs' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

82.

By reason of the foregoing, Plaintiffs experienced and/or are at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

83.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT V**
**STRICT PRODUCTS LIABILITY**

**(Against Defendant Taishan)**

84.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

85.

At all times herein mentioned, Defendant Taishan manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiffs' home.

86.

Defendant's drywall was expected to, and **did,** reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold by the Defendant.

87.

At those times, the Defendant's drywall was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to homes and, in particular, Plaintiffs' home.

88.

Defendants' drywall were so defective in design or formulation or manufacture that when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants' drywall.

89.

At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

90.

Defendants knew, or should have known, that at all times herein mentioned Defendants' drywall was/is inherently dangerous and unsafe.

91.

At the time of use of Defendants' drywall by Plaintiffs, Plaintiffs utilized the drywall for the purposes and manner normally intended.

92.

Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

93.

Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiffs.

94.

Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold a defective product which created an unreasonable risk to the Plaintiffs' home as well as to the health of Plaintiffs. Defendants are, therefore, study liable for the damages and injuries sustained by Plaintiffs.

95.

Plaintiffs acting as a reasonably prudent person could not discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

96.

By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiffs for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendants' drywall.

97.

Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

98.

Said defects in Defendants' drywall were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at increased risk of damage and/or harm.

99.

As a direct and proximate result of the defective condition of Defendants' drywall as manufactured and sold by Defendants, Plaintiffs suffered, and will continue to suffer, damages.

100.

By reason of the foregoing, Plaintiffs experienced, and/or is at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

101.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional

repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT VI
## BREACH OF IMPLIED WARRANTY
## OF MERCHANTABILITY

### (Against Defendants USG and Seacoast)

102.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

103.

This is an action against Defendants USG and/ or Seacoast for breach of the implied warranty of merchantability under Louisiana Law.

104.

Defendants USG and/ or Seacoast are merchants of gypsum drywall.

105.

Upon information and belief, some of the defective drywall used in the construction of Plaintiffs' home was sent from the Manufacturers to Defendant USG.

106.

When Defendants USG and/ or Seacoast manufactured, distributed, sold, and/or installed their drywall in home that Plaintiffs own, Defendants implicitly warranted that the product was safe, efficacious, well tested and of high quality. Plaintiffs were the non-exclusive, but intended beneficiary of these warranties.

107.

Home builders and/or their agents or employees entered into contracts with Defendants

USG and Seacoast to purchase gypsum drywall that was to be installed in Plaintiffs' home.

108.

Plaintiffs are an intended third party beneficiary of those contracts because **it** was the clear and manifest intent of Defendants USG and/or Seacoast that the contracts.

109.

These implied warranties were relied upon by Plaintiffs and the purchasers of the drywall, because it is understood that the Defendants have knowledge as to the quality, safety, and efficacy of the drywall they manufacture, distribute, sell, and/or install.

110.

Pursuant to Louisiana Law, Defendants USG and/or Seacoast warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

111.

Defendants USG and/or Seacoast breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

112.

The drywall supplied and sold by Defendants USG and/or Seacoast and installed in Plaintiffs' home is defective because it caused damage as described more fully herein.

113.

As a result of Defendants USG's and/or Seacoast's breaches of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

114.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and or/replacement costs, and/or medical care, attention, and services.

## COUNT VII
## BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE

### (Against all Defendants USG and Seacoast)

115.

Plaintiffs repeat, reiterate and reallege the above paragraphs this Complaint, with the same force and effect as if fully set forth herein.

116.

This is an action against Defendants for breach of the implied warranty of fitness for a particular purpose under Louisiana Law.

117.

Defendants' USG and/or Seacoast are suppliers of gypsum drywall.

118.

Upon information and belief, some of the defective drywall used in the construction of Plaintiffs' home was sent from the Manufacturers to Defendant USG.

119.

Homebuilders and/or their agents or employees entered into contracts with Defendants to

purchase gypsum drywall that was to be installed in Plaintiffs' home.

120.

Plaintiffs are an intended third party beneficiary of those contracts because it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs.

121.

At the time Defendants' USG and/or Seacoast entered into the contracts with the Defendant Tudela's Classic Homes, LLC, Defendants' USG and/or Seacoast had reason to know that the gypsum drywall was being purchased for the particular purpose of being installed in residential home owned by Plaintiffs, and that homebuilders were relying on Defendants USG's and/or Seacoast's skill and judgment to select and furnish gypsum drywall that was suitable for this particular purpose.

122.

Plaintiffs, directly and/or indirectly, relied on Defendant USG's and/or Seacoast's judgment in supplying and selling gypsum drywall that was suitable for the particular purpose of being installed in residential home owned by Plaintiffs.

123.

Pursuant to Louisiana Law, Defendants USG and/or Seacoast warranted that the gypsum drywall was fit for the particular purpose of being installed in residential home owned by Plaintiffs.

124.

Defendants USG and/or Seacoast breached the implied warranty of fitness for a particular

purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential home owned by Plaintiffs.

125.

The drywall supplied and sold by Defendants USG and/or Seacoast and installed in Plaintiffs' home is defective because it caused damage as described more fully herein.

126.

As a result of Defendants USG's and/or Seacoast's breaches of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

127.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT VIII
## STRICT PRODUCTS
## LIABILITY

### (Against Defendant USG)

128.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

129.

This is an action for products liability against Defendant USG.

130.

The defective gypsum drywall installed in Plaintiffs' home was supplied by, among other suppliers, Defendant USG. Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendant USG.

131.

The defective gypsum drywall distributed, supplied, and/or sold by Defendant USG is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

132.

Defendant USG expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

133.

The defective gypsum drywall distributed, supplied and/or sold by Defendant USG directly and proximately caused damage and injury to Plaintiffs', including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

134.

By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing,

serious and dangerous side effects, as well as have incurred financial damage and injury as described more fully herein.

135.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT IX
## STRICT PRODUCTS
## LIABILITY

### (Against Defendant Seacoast)

136.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

137.

This is an action for products liability against Defendant Seacoast.

138.

The defective gypsum drywall installed in Plaintiffs' home was supplied by among other suppliers, Defendant Seacoast. Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendant Seacoast.

139.

The defective gypsum drywall distributed, supplied, and/or sold by Defendant Seacoast is

unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein

### 140.

Defendant Seacoast expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

### 141.

The defective gypsum drywall distributed, supplied and/or sold by Defendant Seacoast directly and proximately caused damage and injury to Plaintiffs', including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

### 142.

By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

## COUNT X
## BREACH OF IMPLIED WARRANTY
## OF MERCHANTABILITY

### (Against Defendants Interior Exterior Building Supply and
### Tudela's Classic Homes, LLC)

143.

Plaintiffs repeat, reiterate and reallege in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

144.

This is an action against Defendant Interior Exterior Building Supply and Defendant Tudela's for breach of the implied warranty of merchantability under the common law and/or Louisiana Law.

145.

Defendant Interior Exterior Building Supply and Defendant Tudela's breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for ordinary purpose for which gypsum drywall is used.

146.

Defendant Tudela's Classis Homes, LLC, and/or its agents or employees entered into contracts with Defendant Interior Exterior Building Supply to purchase gypsum drywall that was to be installed in Plaintiffs home.  It was the clear and manifest intent of Defendant Interior Exterior Building Supply and Defendant Tudela's that the contracts were to primarily and directly benefit Plaintiffs.

147.

Plaintiffs are an intended third party beneficiary of those contracts because it was clear and manifest intent of Defendant Interior Exterior Building Supply and Defendant Tudela's that the contracts were to primarily and directly benefit Plaintiffs.

148.

Pursuant to Louisiana Law, Defendant Interior Exterior Building Supply and Defendant Tudela's warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

149.

Defendant Interior Exterior Building Supply and Defendant Tudela's breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

150.

The drywall supplied and sold by Defendant Interior Exterior Building Supply and Defendant Tudela's, which was ultimately installed in Plaintiffs' home, is defective because it caused damage as described more fully herein.

151.

As a result of Defendants breach of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

152.

Prior to Defendant, Tudela's Classic Homes, L.L.C., foregoing acts and omissions, Defendant, Nautilus Insurance Group issued to Defendant Tudela's Classic Homes, L.L.C., a

policy of liability insurance which was in full force and effect at the time Defendant, Tudela's Classic Homes, L.L.C., purchased, distributed, supplied and installed defective gypsum drywall in Plaintiffs' home.

153.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT XI**
**BREACH OF IMPLED WARRANTY**
**OF FITNESS FOR A PARTICULAR PURPOSE**

**(Against Defendants Interior Exterior Building Supply and**
**Tudela's Classic Homes, LLC)**

154.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

155.

This is an action against Defendant Interior Exterior Building Supply and Defendant Tudela's for breach of the implied warranty of fitness for a particular purpose under Louisiana Law.

156.

Defendant Interior Exterior Building Supply and Defendant Tudela's are the sellers/ suppliers of the gypsum drywall installed in Plaintiffs' home.

157.

Defendant Tudela's Classis Homes, LLC, and/or its agents or employees entered into contracts with Defendant Interior Exterior Building Supply to purchase gypsum drywall that was to be installed in Plaintiffs home.  It was the clear and manifest intent of Defendant Interior Exterior Building Supply and Defendant Tudela's that the contracts were to primarily and directly benefit Plaintiffs.

158.

Plaintiffs are an intended third party beneficiary of those contracts because it was clear and manifest intent of Defendant Interior Exterior Building Supply and Defendant Tudela's that the contracts were to primarily and directly benefit Plaintiffs.

159.

At the time Defendant Interior Exterior Building Supply entered into the contracts with the Defendant Tudela's, Defendants had reason to know that the gypsum drywall was being purchased for the particular purpose of being installed in residential home owned by Plaintiffs, and that Plaintiffs were relying on Defendant Tudela's and Defendant Interior Exterior Building Supply's skill and judgment to select and furnish gypsum drywall that was suitable for this particular purpose.

160.

Plaintiffs, directly and/or indirectly, relied on Defendant Tudela's and Defendant Interior

Exterior Building Supply's judgment in supplying and selling gypsum drywall that was suitable for the particular purpose of being installed in residential home owned by Plaintiffs.

161.

Pursuant to Louisiana Law, Defendant Interior Exterior Building Supply and Defendant Tudela's warranted that the gypsum drywall was fit for the particular purpose of being installed in residential home owned by Plaintiffs.

162.

Defendant Interior Exterior Building Supply and Defendant Tudela's breached the implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential home owned by Plaintiffs.

163.

The drywall supplied and sold by Defendants Interior Exterior Building Supply and Tudela's that was installed in Plaintiffs' home is defective because it caused damage as described more fully herein.

164.

As a result of Defendant Tudela's and Defendant Interior Exterior Building Supply's breach of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

165.

Prior to Defendant, Tudela's Classic Homes, L.L.C., foregoing acts and omissions, Defendant, Nautilus Insurance Group issued to Defendant Tudela's Classic Homes, L.L.C., a

policy of liability insurance which was in full force and effect at the time Defendant, Tudela's Classic Homes, L.L.C., purchased, distributed, supplied and installed defective gypsum drywall in Plaintiffs' home.

166.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT XII
## STRICT PRODUCTS
## LIABILITY

### (Against Defendants Interior Exterior Building Supply and
### Tudela's Classic Homes, LLC)

167.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint with the same force and effect as id fully set forth herein.

168.

This is an action for products liability against Defendant Interior Exterior Building Supply and Defendant Tudela's Classis Homes, LLC.

169.

The defective gypsum drywall installed in Plaintiffs' home was supplied by, among other suppliers, Defendant Interior Exterior Building Supply and Defendant Tudela's. Upon

information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendants Interior Exterior Building Supply and Tudela's.

170.

The defective gypsum drywall distributed, supplied, and/or sold by Defendant Interior Exterior Building Supply and Defendant Tudela's is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

171.

Defendant Interior Exterior Building Supply and Defendant Tudela's expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

172.

Defendant Interior Exterior Building Supply and Defendant Tudela's directly and proximately caused damage and injury to Plaintiffs, including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

173.

By reason of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs. And will incur repair and replacement costs, repairs for appliances, medical expenses, incidental and other related expenses. Plaintiffs are informed and

believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/ or replacement costs and/or medical care, attention, and services.

## COUNT XIII
## BREACH OF IMPLED WARRANTY
## OF MERCHANTABILITY

### (Against Defendant Rothchilt and IBSA)

174.

Plaintiffs repeat, reiterate and reallege in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

175.

This is an action against Defendants Rothchilt and IBSA for breach of the implied warranty of merchantability under the common law and/or Louisiana Law.

176.

Defendants Rothchilt and IBSA breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for ordinary purpose for which gypsum drywall is used.

177.

Defendants Tudela's Classic Homes and/or its agents or employees entered into contracts with Defendants Rothchilt and IBSA to purchase gypsum drywall that was to be installed in Plaintiffs Home. It was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs.

178.

Plaintiffs are an intended third party beneficiary of those contracts because it was clear

and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs.

179.

Pursuant to Louisiana Law, Defendants Rothchilt and IBSA warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

180.

Defendants Rothchilt and IBSA breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

181.

The drywall supplied and sold by Defendants Rothchilt and IBSA and installed in Plaintiffs' home is defective because it caused damage as described more fully herein.

182.

As a result of Defendants Rothchilt and IBSA's breach of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

183.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT XIV
## BREACH OF IMPLED WARRANTY
## FITNESS FOR A PARTICULAR PURPOSE

### (Against Defendant Rothchilt and IBSA)

184.

Plaintiffs repeat, reiterate and reallege the above paragraph of this Complaint, with the same force and effect as if fully set forth herein.

185.

This is an action for products liability against Defendants Rothchilt and IBSA.

186.

The defective gypsum drywall installed in Plaintiffs' home was supplied by, among other suppliers, Defendants Rothchilt and IBSA. Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendants Rothchilt and IBSA.  Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from Manufactures to Defendants Rothchilt and IBSA.

187.

The defective gypsum drywall distributed, supplied, and/or sold by Defendants Rothchilt and IBSA is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

188.

Defendants Rothchilt and IBSA expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual

customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

189.

The defective gypsum drywall distributed, supplied and/or sold by Defendants Rothchilt and IBSA directly and proximately caused damage and injury to Plaintiffs, including but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

190.

By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury as described more fully herein.

191.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will requires extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

## COUNT XV
## STRICT PRODUCTS
## LIABILITY

**(Against Defendant IBSA)**

192.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint with the same force and effect as is fully set forth herein.

193.

This is an action for products liability against Defendant IBSA.

194.

The defective gypsum drywall installed in Plaintiffs' home was supplied by, among other suppliers, Defendant IBSA. Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendant IBSA.

195.

The defective gypsum drywall distributed, supplied, and/or sold by Defendant IBSA is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

196.

Defendant IBSA expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

197.

Defendant IBSA directly and proximately caused damage and injury to Plaintiffs,

including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

198.

By reason of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs. And will incur repair and replacement costs, repairs for appliances, medical expenses, incidental and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/ or replacement costs and/or medical care, attention, and services.

## COUNT XVI
## BREACH OF EXPRRESS WARRANTY

### (Against All Defendants)

199.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

200.

Defendants expressly warranted that Defendants' drywall was safe and well accepted by homebuilders.

201.

Defendants' drywall did not conform to these express representations because Defendants' defective drywall is defective and unsafe, and is associated with numerous side

effects. As a direct and proximate result of the breach of said warranties, Plaintiffs suffered, and/or will continue to suffer, and/or are at an increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

202.

Plaintiffs did rely on the express warranties of the Defendants herein.

203.

The Defendants herein breached the aforesaid express warranties, as Defendants' drywall was defective.

204.

Defendants expressly represented to Plaintiffs that Defendants' drywall are safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall are of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall were adequately tested and fit for its intended use.

205.

Defendants knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that Defendants' drywall are not fit for the use intended and, in fact, produced severe and extensive damage to Plaintiffs' home because Defendants' drywall was negligently manufactured.

206.

Defendants expressly represented to Plaintiffs that Defendants' drywall is safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall are of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and

that Defendants' drywall were adequately tested and fit for its intended use.

207.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will requires extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

## COUNT XVII
## STRICT PRODUCTS
## LIABILITY

### (Against Defendant Rothchilt)

208.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint with the same force and effect as id fully set forth herein.

209.

This is an action for products liability against Defendant Rothchilt.

210.

The defective gypsum drywall installed in Plaintiffs' home was supplied by, among other suppliers, Defendant Rothchilt. Upon information and belief, some of the defective drywall installed in Plaintiffs' home was sent from the Manufacturers to Defendant Rothchilt.

211.

The defective gypsum drywall distributed, supplied, and/or sold by Defendant Rothchilt

is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

212.

Defendant Rothchilt expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

213.

Defendant Rothchilt directly and proximately caused damage and injury to Plaintiffs, including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

214.

By reason of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs. And will incur repair and replacement costs, repairs for appliances, medical expenses, incidental and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/ or replacement costs and/or medical care, attention, and services.

## COUNT XVIII
## FRAUDULENT MISREPRESENTATION

### (Against Defendants Knauf Gips. Knauf Tianjin and Taishan)

216.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

217.

Defendants falsely and fraudulently represented to Plaintiffs that Defendants' drywall had been tested and was found to be safe and/or effective for use.

218.

That representation made by Defendants was, in fact, false.

219.

When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

220.

These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs and/or the consuming public, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiffs herein.

221.

At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiffs, installed/purchased Defendants' drywall, the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

222.

In reliance upon said representations, the Plaintiffs' home was built using Defendants'

drywall thereby sustaining damage and injury and/or being at an increased risk of sustaining damages and injury in the future.

223.

Said Defendants knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

224.

Defendants knew, or should have known, that Defendants' drywall had a potential to, could, and would cause severe damage and injury to homeowners.

225.

Defendants brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs.

226.

By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, financial damage and injury.

227.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT XIX
## NEGLIGENT MISREPRESENTATION

**(Against Defendants Knauf Gips,  Knauf Tianjin and Taishan)**

228.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

229.

At all times material hereto, Defendants misrepresented the safety of Defendants drywall.

230.

Defendants knew, or were reckless in not knowing, that its representations were false.

231.

Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

232.

Defendants fraudulently concealed, and/or intentionally omitted the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

233.

Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

234.

Defendants were under a duty to disclose to Plaintiffs the aforementioned as it pertains to Defendants' drywall.

235.

Defendants' concealment and omissions of material facts concerning, *inter alia,* the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

236.

Defendants' concealment and omissions of material facts concerning, *inter alia,* the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

237.

Defendants knew that Plaintiffs and/or the consuming public had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

238.

Plaintiffs and/or the consuming public reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

239.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

## COUNT XX
## FRAUDULENT CONCEALMENT

### (Against Defendants Knauf Gips, Knauf Tianjin and Taishan)

240.

Plaintiffs' adopt and restate the preceding paragraphs as is fully set forth herein.

241.

At all times material hereto, Defendants misrepresented the safety of Defendants' drywall.

242.

Defendants knew, or were reckless in not knowing, that its representations were false.

243.

Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to the air-conditioning and refrigerator units, electrical wired and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards and other health concerns.

244.

Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' were aware of complaints regarding defects in the Defendants' drywall and did nothing.

245.

Defendants fraudulently concealed and/ or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

246.

Defendants were under a duty to disclose to Plaintiffs, the aforementioned as it pertains to Defendants' drywall.

247.

Defendants' concealment and omissions of material facts concerning, inter alia, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, and/or the consuming pubic into reliance and continued use of Defendants' drywall.

248.

Defendants' knew the Plaintiffs and/or the consuming public, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

249.

Plaintiffs and/or the consuming public reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

250.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

## COUNT XXI
## VIOLATION OF THE DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT
## AND CONSUMER PROTECTION LAW

**(Against all Defendants)**

251.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

252.

The Louisiana Unfair Trade Practices and Consumer Protection Law prohibit unfair or deceptive methods, acts or practices in the conduct of trade or commerce.

253.

Plaintiffs is a "consumer" and the subject transactions are "trade or commerce" as defined by Louisiana Law

254.

The Defendants acts and omissions as well as their failure to use reasonable care as described herein violate Louisiana Law, which was enacted to protect the consuming public from

those who engage in unfair methods and competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

255.

Specifically, Defendants misrepresented and omitted information regarding their drywall by failing to disclose known risks.

256.

Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' drywall in violation of Louisiana Law. As a result, Plaintiffs suffered actual damage for which they are entitled to relief. Plaintiffs are also entitled under the law to recover attorney's fees.

257.

Defendants violated Louisiana Law, by knowingly and falsely representing that Defendants' drywall was fit to be used for the purpose for which they were intended, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

258.

Defendants engaged in the deceptive acts and practices alleged herein in order to sell Defendants' drywall to the public, including Plaintiffs.

259.

Said acts and practices on the part of Defendants were and are illegal and unlawful pursuant to Louisiana Law.

260.

As a direct and proximate result of Defendants' violations of Louisiana Law, Plaintiffs has suffered damages. Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

## COUNT XXII
## CLAIM UNDER REDHIBITION
## LAWS OF LOUISIANA

### (Against Tudela's Classic Homes)

261.

Plaintiffs, who originally filed the claim in Louisiana and was domiciled there at the time of the purchase and exposure to the Chinese Drywall, has claim under the Redhibition Laws of Louisiana contained in Civil Code Articles 2520-2548.

262.

Defendants were the manufacturers, distributors, vendors and suppliers of the Chinese Drywall.

263.

Plaintiffs were not aware of the unsafe and defective nature of the Chinese Drywall at the time of purchase, nor were the defects of the type that would have been discovered by a reasonably prudent buyer of such things. If Plaintiffs had known of the unsafe and defective

nature of the Chinese Drywall, they would not have entered into the contract.

264.

The Chinese Drywall sold by Defendants was not reasonably fit for ordinary use.

265.

The defect contained in the Chinese Drywall manufactured by the Defendants existed at the time the Chinese Drywall was sold to Plaintiffs.

266.

Prior to Defendant, Tudela's Classic Homes, L.L.C., foregoing acts and omissions, Defendant, Nautilus Insurance Group issued to Defendant Tudela's Classic Homes, L.L.C., a policy of liability insurance which was in full force and effect at the time Defendant, Tudela's Classic Homes, L.L.C., purchased, distributed, supplied and installed defective gypsum drywall in Plaintiffs' home.

267.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs is entitled to receive full reimbursement of all moneys paid for the Chinese Drywall plus interest from the time of sale, plus full compensation for all the damages that they have sustained as a foreseeable result thereof, including any physical, mental and emotional damages that were foreseeable and a necessary consequence of the defective Chinese Drywall purchased by them from the Defendants and attorney fees.

## COUNT XXIII
## MEDICAL MONITORING

### (Against All Defendants)

268.

Plaintiffs repeat, reiterate and reallege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

269.

As a direct result of Defendants' actions and omissions, Plaintiffs have been exposed to hazardous chemicals which have off-gassed and/or evaporated from the Chinese drywall, the exposure to which has caused personal injury. Specifically, Mr. Van Winkle suffers from a debilitating respiratory disease which was caused and/or exacerbated by his exposure to the substances emanating from the drywall. Exposure to Chinese Drywall may also cause premature death. The risk requires frequent diagnostic medical examinations. By monitoring and testing the affected Plaintiffs, it can be determined whether they are prone to further personal injuries at the time of the test. Through this, lives may be saved.

270.

Because exposure to Chinese Drywall poses significant health risks to Plaintiffs and each Class member, medical monitoring is the most appropriate method by which it can be determined whether further medical treatment should be given.

271.

Accordingly, Defendants should be required to establish a medical monitoring program that includes, *inter alia*:

   a. establishing a trust fund, in an amount to be determined , to pay for the medical monitoring of Plaintiffs affected by the Chinese Drywall, as frequently as determined to be medically necessary, as well to pay development and/or research for other methods by which the risk of these persons affected by Chinese Drywall can be reduced;

b.  notifying Plaintiffs in writing, not just notices to physicians, that their Chinese Drywall exposure requires frequent medical monitoring; and

c.  providing information to treating physicians to aid them in detecting the effects of Chinese Drywall.

272.

Plaintiffs have no adequate remedy at law in that monetary damages alone will not compensate them for the risk of a personal injury and/or premature death as a result of Chinese Drywall exposure monitoring program, as described above, Plaintiffs will continue to face an unreasonable risk of death.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Ronnie Van Winkle, Sr. and Anne Van Winkle, individually and as husband and wife, pray that the Defendants be served with this petition and cited to appear and answer same, and after due proceedings, there be a judgment rendered in favor of Plaintiffs, Ronnie Van Winkle, Sr. and Anne Van Winkle, individually and as husband and wife, and against Defendants, jointly, severally and *in solido,* for all damages suffered by Plaintiffs, and judicial interest from the date of judicial demand until paid, for all general and equitable relief the circumstances may warrant, all taxable costs, and any and all equitable relief to which they may be entitled including, but not limited to, treble, exemplary and punitive damages in an amount to be determined at trial, all statutory damages, reimbursement for all costs and expenses paid in the repair of their home, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees

and costs, non-pecuniary damages, as well as any other legal or equitable relief to which

Plaintiffs may be entitled; such other and further relief under all applicable state and federal

law and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues triable.

Respectfully Submitted:

**THE ANDRY LAW FIRM, LLC**
Jonathan B. Andry, Esq. (LSBA # 20081)
Kea Sherman, Esq. (LSBA # 30299)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile: (504)586-8923

By: _____
Jonathan B. Andry, Esq. (LSBA # 20081)