UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL  PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL NO. 2047  SECTION: L  JUDGE FALLON MAG. JUDGE WILKINSON |

_____ )

**THIS DOCUMENT RELATES TO ALL CASES**

**MEMORANDUM IN SUPPORT OF**
**EMERGENCY MOTION TO PROTECT CLASS**
**MEMBERS AND FAIRLY CONDUCT THE ACTION**

## I.     INTRODUCTION

The Plaintiffs' Steering Committee (PSC) appointed by this Court seeks emergent relief, for good cause shown, so that the abusive activities of the class of builders before this Court is curtailed. It has become well-known that builders in this litigation are seeking general releases that far exceed the benefits bestowed upon absent class member owners of homes and other premises.  In many instances, these releases provide third parties a release for no compensation whatsoever or assign all claims against third parties again for no compensation.

To cure and prevent these abusive practices, the PSC moves under Fed. R. Civ. P. 23(d)(2) to protect Class Members and fairly conduct the action by (a) requiring curative notice, approved by the Court, prepared and sent to all putative Class Members at the expense of the Homebuilders, to remedy the harm caused by the Homebuilders' improper communications to date; (b) that putative class action defendant builders shall cease and desist contacting or soliciting any putative class member property owners about releasing their claims against said builder under certain conditions; (c) that any proposed release of any putative class action defendant builder shall also contain a Court

1

approved statement; (d) that no putative class action defendant builder shall initiate contact with any individual who has not previously contacted that builder; (e) that each putative class action defendant builder shall comply with Rule 4.2 of the Louisiana Rules of Professional Conduct, or its state court analog in each jurisdiction in which each putative class action defendant builder is soliciting releases in exchange for remediation or repair work, and not communicate with persons already represented by counsel; (f) that putative class member property owners have an opportunity to rescind any previously entered agreement to release or waive their claims; and (g) that each class action defendant builder shall produce each release or waiver of claims of putative class members.

## II.    FACTUAL BACKGROUND

Since the filing of the actions comprising this MDL, Builders have contacted putative Class Members to settle putative Class Members' claims related to the defects in the Chinese drywall installed in their homes.  Builders have settled and are still attempting to settle, putative Class Members' claims without fully advising them of the true nature and scope of defects in the Chinese drywall, the pendency of this litigation, and their right to participate in this litigation.

Appendix A, attached hereto under seal, is the PSC's analysis of the releases provided by 13 representative builders that have improperly sought avoid their exposure to liability by trampling upon the rights of absent class members.  This compendium of releases is filed under seal to preserve the confidences of those persons and/or parties whose agreements are or have been attempt to be negotiated.

### III.   ARGUMENT

A.   **The Court Has Broad Authority to Prohibit and Regulate Homebuilders' Improper Communication and Solicitation Campaign to Settle Putative Class Members' Claims Pursuant to Federal Rule of Civil Procedure 23(d)**

District courts have broad discretionary powers under Fed.R.Civ.P. 23(d) to supervise communications with class members.  Rule 23(d), in relevant part, states:

> **Conducting the Actions.**  (1) In General.  In conducting an action under this rule, the court may issue orders that:
>
> (B) require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of:
>
> (I) any step in the action …
>
> (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.

Fed. R. Civ. P. 23(d)(1)(B)(I, iii).  Many courts have found that this regulatory power is adjunct to the authority of the courts themselves.  In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Supreme Court explained these plenary powers:

> [A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.

*Id.* at 100.  *See also Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) and *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D.Mo. 1983); *Burford v. Cargill, Inc.*, 2007 WL 81667 (W.D.La. June 9, 2007) (Hicks, J.).  Rule 23(d) provides this Court broad authority to manage the conduct of class actions at "any step in the action," not only after class certification.  *See Hoffman-LaRoche Inc. v. Sperling*, 110 S.Ct. 482, 486 (1989); *See also Gulf Oil Co.*, 452 U.S. at 101.

Courts have long recognized the potential for abuse that may occur when a defendant or its counsel communicate with members of a class or proposed class. *See Gulf Oil Co.*, 452 U.S. at 99-100; *In re School Asbestos Litig.*, 842 F.d 671, 679 -80 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601-02 (2d Cir. 1986); *Kleiner*, 751 F.2d at 101-03. Specifically, misleading communications to class members or putative class members regarding the litigation pose a significant threat to the fairness of the proceedings, the fundamental rights of parties, the adequacy of representation and the general administration of justice generally. *In re School Asbestos Litig.*, 842 F.2d at 680; *See Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 783, 790-91 (E.D. La. 1977), *appeal dismissed*, 579 F.2d 642 (5th Cir. 1978) ("Unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice."). "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could be irreparable." *Kleiner*, 751 F.2d at 1203.

Because of the potential for abuse, district courts have "both the duty and the broad authority to...enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co.*, 452 U.S. at 100; *In re School Asbestos Litig.*, 842 F.2d at 679-80. In *Gulf Oil v. Bernard*, the Supreme Court advised courts that any order regulating communications with putative class members should be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101.[1]

---

[1] In *Gulf Oil*, the Court ultimately found invalid an order that imposed a <u>complete</u> ban on all communications concerning the class action between the parties or their counsel and any actual or potential class member not a party without prior approval of a court. *Gulf Oil*, 452 U.S. at 102-04.

In discussing the requirements for an order regulating communications with potential class members, the Supreme Court in *Gulf Oil* quoted *Coles v. Marsh*, 560 F.2d 186 (3d Cir. 1977), *cert. denied*, 434 U.S. 985 (1977):

> [T]o the extent that the district court is empowered...to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened. Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respected parties.

*Coles*, 560 F.2d at 189 (quoted in *Gulf Oil,* 452 U.S. at 102).   In seeking an order limiting defendants' communications with putative Class Members, plaintiffs must show that a restricting order would guard against the likelihood of serious abuses.  *Gulf Oil*, 452 U.S. at 104.  Plaintiffs do not have to show actual harm.  *See Jennifer v. Delaware Sold Waste Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999).  Showing that the "interests embodied in Rule 23 might be hindered is a sufficient finding upon which to base an order limiting contacts."  *See Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994).

Recently, the Court, in *Burford, supra.,* was confronted with defendants that admitted to contacting putative class members and soliciting their consent to a general release.  The court found "the use of the general receipt and release which is being used by the defendants in regards to putative class members, without notification of the pending putative class action, is misleading as a matter of law."  *Id.*, 2007 WL 81667 at *2.  Indeed, by not advising of the pending class litigation, the court found that "such misleading communications are abusive and threaten the proper functioning" of class actions.  *Id*.  To correct this abuse, the court therefore ordered that an

appropriate notice issue to apprise class members of the pendency of the action and the nature of the claims, it consented to a standstill agreement of the parties, and further ordered the defendants to disclose and produce copies of each release obtained.  *Id.*

Following *Gulf Oil*, many courts have been confronted with the need to supervise inherently coercive communications with absent class members.  That is the issue presented in this litigation. In these situations, courts, almost uniformly order limitations on such communications, if not curtailing the communications altogether. *In re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988); *In re Community Bank of Northern Virginia,*  418 F.3d 277 (3d Cir. 2005); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478 (E.D. PA. 1995); *Haffer v. Temple University*, 115 F.R.D. 506, 512 (E.D. PA. 1987); *See Kleiner v. First National Bank of Atlanta*, 751.2d 1193 (11th Cir. 1985); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 845 (2d Cir. 1980); *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D. Mo. 1983); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F.Supp. 720, 722-24 (W.D. Ky. ) *appeal dismissed without opinion*, 659 F. 1081 (6th Cir. 1981); *Tedesco v. Mishkin*, 629 F.Supp. 1474, 1484 (S.D.N.Y. 1986); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1982); *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033-34 (E.D. Wash. 1985); *Zarate v. Younglove*, 86 F.R.D.  80 (C.D. Cal. 1982); *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132, *2 (S.D. N.Y. Sept. 7, 2001); *Jennifer v. Delaware Solid Waste Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999); *Burrell v. Crown Ent. Petroleum, Inc.*, 176 F.R.D. 239, 242-43 (E.D. Tex. 1997).

In *Erhardt*, the court recognized that it was the responsibility of the district court to prevent any unauthorized notices to class members:

> It is the responsibility of the court to direct the "best notices practicable" to class members, Rule 23(c)(2), and to safeguard them

> from unauthorized, misleading communications from the parties or their counsel.  Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice.  To prevent abusive practices in the absence of a local rule, the court should include in its order of notice a provision limiting within constitutional parameters any unauthorized correspondence by parties and their counsel with class members.

*Erhardt*, 629 F.2d at 846.

Of particular concern are communications by defendants with putative class members that are misleading as to a proposed settlement, the status of pending class action, or that induce class members to opt-out or not cooperate with class counsel.  *In re School Asbestos Litigation*, 842 F.2d at 682, *In re Community Bank of Northern* Virginia, 418 F.3d at 311-312; *Georgine*, 160 F.R.D. at 490; *Haffer*, 115 F.R.D. at 512-513;  See *Kleiner*, 751 F.2d at 1202; *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *4-6; *Jennifer*, 1999 WL 117762 at *2; *Hampton Hardware*, 156 F.R.D. at 633, *Impervious Paint*, 508 F. Supp. at 721-723.

In *Impervious Paint Industries*, an antitrust class action where one defendant improperly contacted absent class members, the court noted that plaintiffs' counsel's relation to the absent class members is unusual during the period between the filing of the class action complaint and the opt-out period.  *Impervious Paint Industries*, 508 F.Supp. at 722.  The court found that class counsel must treat absent class members as clients and avoiding  "compromising the rights of the class members," while at the same time avoid unethical solicitation by treating class members as non-clients.  *Id.*  Significantly, the court held that defendants' counsel's role is likewise restricted during this same period:

> However, we cannot conclude that the corollary of this peculiar circumstance is that the class counsel's adversary has diminished

7

> responsibilities.  While it is technically correct that a class member
> does not abandon its claim by opting out of the class, it is beyond
> cavil that it is in defendants' interest for class members to elect to
> remove themselves from the action.  Reading DR 7-104 as a whole,
> we believe the implicating is unavoidable that defendants' counsel
> must treat plaintiff class members as represented by counsel, and
> must conduct themselves in accordance with both sections of DR 7-
> 104.

*Id*. at 723 (emphasis added).  Thus, even before the class is certified, defense counsel are obligated

to treat absent class members as represented by class counsel in accordance with the ethical

restraints of the rules of the rules of professional conduct.  *Id*.;  *See also Resnick*, 95 F.R.D. at 378-

79 ("[Defendant] cannot lift language from *Gulf Oil* out of context to insulate communications from

its counsel to actual class members.  Indeed, even were *Gulf Oil* applicable to the latter situation

(which it is not)...").  The rationale for this treatment is that "the imbalance in knowledge and skill

which exists between class members and defense counsel presents an extreme potential for prejudice

to class members' rights."  *Bower*, 698 F.Supp. at 1034.

In *Jennifer,* plaintiffs sought to enjoin defendants from communicating with putative class

members where defendants were attempting to coerce putative class members not to participate in

litigation and/or settle their claims by executing a release.  *Jennifer*, 1999 WL 117762 at *2.  The

court held that there was potential that certain members of the putative class would be completely

unaware of the litigation and by signing a release would waive their right to participate in the class

action.  *Id*. at *7.  The court stated in pertinent part:

> While the defendant may seek to settle individual claims prior to
> certification, the putative class member should know the essence of
> the claim they would be giving up in response to the solicitation of
> DSWA.  Those who sign the DSWA three-year contract may be
> completely unaware of this litigation and by signing the contract
> would waive their right to participate in the class action.  Some
> potential plaintiffs may wish to participate in the action and,

> therefore, should be given the necessary information and opportunity to choose between signing the contract and participating in the differential pricing program or not participating, but have the right to ship waste out of the state.

*Id*. at *7. The same concerns apply in this litigation. The court in *Jennifer* required defendants to properly notify each class member at the time it seeks a signing of the release so that they have sufficient notice of the pendency of the action. *Id*. In addition, the court required that a similar notification must be provided to those putative class members who already received settlement information." *Id*.

Similarly, in *Ralph Oldsmobile, Inc.,* the court addressed the potential abuse of defendant's settlement communications and obtaining releases from unknowing putative class members. The class representative plaintiff moved, pursuant to Fed. R. Civ. P. 23, for an order requiring defendant "to seek and desist his practice of obtaining *ex parte* releases from putative class members," voiding those releases already obtained, and requiring defendant "to send a court-approved corrected notice" that any such releases had been voided. *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *1. Like Judge Hicks in *Burford*, the district court in *Ralph Oldsmobile, Inc.* found that the record supported findings of <u>potential</u> <u>abuse</u> in defendants' communications with putative class members resulting from the potentially unknowing waivers of rights or claims by the execution of a release by putative class members. *Id.* at *3. The court specifically pointed out the release purported to waive claims, but failed to mention the class action, which resulted in risk that class members may sign a release without knowing what they were releasing. *Id.* The same concerns apply in this litigation. The court determined that an unknowing release is abusive and ordered relief in the form of curative

9

notice be given in future settlements and releases.  *Id*.[4]

In the instant matter, Homebuilders' solicitations of settlements from individual putative Class Members have obstructed plaintiffs' counsel.  An Order protecting Class Members and otherwise protecting the integrity of the class action process is therefore appropriate.

**B.**     **Homebuilders Do Not Have an Untrammeled Right to Communicate With Putative Class Members.  Non-commercial Speech May be Limited to Meet <u>the Requirements of Rule 23.</u>**

An order restricting communications between parties and putative class member must take into account the rights of the parties under the First Amendment.  *In re School Asbestos Litig*., 842 F.2d 671, 680 (3d Cir. 1988).  However, misleading, false or deceptive speech has no protection under the First Amendment.[5]   Indeed, the rights of Homebuilders to engage in commercial speech may be regulated further than the right to pure speech.  *See Friedman v. Rogers*, 440 U.S. 1, 11 n.9 (1979)(*quoting Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)):

> When dealing with restrictions on commercial speech we frame our decisions narrowly "allowing modes of regulations [of commercial speech] that might be impermissible in the realm of non-commercial expression."

*See also Virginia Pharmacy Board v. Virginia Citizens Consumers Council*, 425 U.S. 748, 771-72

---

[4]     The Court declined to void the releases that already had been executed, however, it agreed to consider applications to void a release made by any class member who signed such a release prior to receiving notice.  *Id*. at *7,

[5]     *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 556, 566 (1980) ("For commercial speech to come within [the First Amendment], it at least must...not be misleading."); *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading...'); *Castrol Inc. v. Pennzoil Co*., 987 F.2d 939, 949 (3d Cir. 1993) ("[F]alse commercial speech is not protected by the First Amendment and may be banned entirely.").

(1976)( "the first amendment, as we construe it today, does not prohibit the state from insuring that the stream of commercial information flow cleanly as well as freely").

In the instant litigation, there can be no serious question that Homebuilders' proposed speech is commercial and therefore can be prohibited by this Court. *See Kliener,* 751 F.2d at 1203 (District Court's order protected class members against possible one-sided, unsupervised, unreviewable communications was upheld under the commercial speech standard). The Court of Appeals in *Kleiner* with respect to the defendant's commercial speech stated:

> The Bank's entreaties indubitably amounted to speech of a commercial bent. Commercial Speech consists of expression related largely or solely to the economic interests of the speaker and the audience. Commercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests, exclusive of beliefs and ideas.

*Id*. at 1203 n. 22 (citations omitted). Clearly, proposed settlement communications with Class Members qualify as commercial speech.

Homebuilders may argue that the First Amendment provides them with the right to engage in alleged accurate but one-sided commercial speech, irrespective of the potential harmful effects on the class and individual Class Members. The Supreme Court, however, has rejected such an argument. For example, in *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 U.S. 328 (1986), the Supreme Court upheld a Puerto Rican statute prohibiting local casinos from advertising their gambling facilities to residents of Puerto Rico, but allowing them to advertise to potential tourists in the continental United States and elsewhere. The Supreme Court held that Puerto Rico could curtail commercial speech where its legislative body reasonably found that such speech could potentially have a harmful effect on its audience. The Supreme Court found that the legislation was not overly restrictive since such regulation would reduce gambling more than

11

"promulgating additional speech designed to discourage gambling."  *Id*. at 344.

In *Kleiner*, the court recognized that restrictions on commercial speech are not entitled to the strict prior restraint doctrine applied to pure speech.  *Kleiner*, 751 F.2d at 1205.  As the court there held:

> In the domain of commercial speech, as discussed, the Supreme Court had issued repeated admonitions against the wholesale incorporation of the law of prior restraint.  *Athena Products*, 654 F.2d at 367.  We therefore judge petitioner's prior restraint argument under a relaxed standard of scrutiny better suited to the hardiness of commercial speech.  *Cf. In re San Juan Star Co.*, 662 F.2d 108, 116 (1st Cir. 1981) (relaxed standard for review of order prohibiting dissemination to press of communications produced during discovery).

*Id*.  Thus, the court in *Kleiner*, under a "heightened sensitivity" approach, upheld the district court's ban on exclusion solicitations through the end of the exclusion period.

Additionally, it has long been recognized that even the right of pure speech can be abridged in the litigation process.  In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 18 (1984), the Supreme Court held:

> Although litigants do not "surrender their First Amendment rights at the courthouse door," *In re Halkin*, 194 U.S. App. D.C., at 268, 598 F.2d at 186, those rights may be subordinated to other interests that arise in this setting.  For instance, on several occasions this Court has approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant. . . .  In the conduct of a case, a court often finds it necessary to restrict the free expression of participants, including counsel, witnesses, and jurors.

*Id*. (footnotes omitted).  *See also Gulf Oil,* 452 U.S. at 104 n. 21.

Based on the above, the solicitations to settle in this litigation by providing overly broad releases, some of which, release claims against third parties such as manufacturers is palpably

misleading speech.  Therefore, any order regulating such speech does not pose any First Amendment concerns.

### C.     The Misleading Settlement Communications by Homebuilders Requires Appropriate Relief, Including Curative Notice.

An injunction-like order may be issued by this Court pursuant to Rule 23(d), without regard to the requirements for a preliminary injunction under Rule 65.  In *Kleiner*, the court upheld just such an order which did not satisfy the requirements of Rule 65:

> [W]e do not fault the orders for perceived procedural defects under Fed.R.Civ.P. 65(d).  Rule 65(d) states that injunctions and restraining orders must set forth the reasons for their issuance and identify, with reasonable detail, the acts to be restrained.  The orders at issue, however, are of a different ilk.   The lower court correctly characterized the rulings as directives to counsel in their capacity as officers of the court, pursuant to the court's inherent power to manage its cases.  *See* Fed.R.Civ.P. 23(d)(2).  The more relaxed prerequisites of Rule 23(d)(2) therefore [are] applied, as the district court noted:

> Findings of fact and technical precision are unnecessary for such direction to be valid; rather the direction must only be (a) within the Court's power and (b) specific enough so that counsel may understand what conduct or action is required.

> Opinion of the district court at 34.  The trial court justifiably found that both criteria were "amply met in the instant case."

751 F.d at 1201.  Thus, a ban, on solicitations to settle absent class members' claims, and curative notice may be issued pursuant to the Court's inherent authority under Rule 23(d) to protect the integrity of the Rule 23 class action device and to protect class members; it is not an injunction sought pursuant to Rule 65.  However, like any injunction, a violation of the Court's order may be punished by this Court regardless of where the violation occurs.  *See United States Steel Corp. v. Multistate Tax Comm'n*, 367 F.Supp. 107, 117 (S.D.N.Y. 1973).

The dangers of the settlement communications with putative Class Members are that they are inaccurate, one-sided, coercive, and misleading.  *See In re Community Back of Northern Virginia*, 418 F.3d at 310-311; *Georgine*, 160 F.R.D. at 498; *Haffer*, 115 F.R.D. at 512; *Kleiner*, 751 A. 2d at 1202; *Ralph Oldsmobile, Inc.*, 2000 WL 1035132 at *3-4; *Jennifer*, 1999 WL 117762 at *7; *Hampton Hardware*, 156 F.R.D. at 633; *Impervious Paint Industries*, 528 F.Supp. at 721-723; *Burford*, 2007 WL 81667 at *2.  The settlement communications also raise the potential abuse of unknowing waivers of claims and rights by putative class members.  *See Ralph Oldsmobile, Inc.*, 2000 WL 1035132 at *3-4; *Jennifer*, 1999 WL 117762 at *7.

The unsupervised communications by Homebuilders to settle create "possibilities for deception" and therefore threaten Rule 23.  Such communications should not be sanctioned by the Court.  *See Impervious Paint Industries, supra* (the court enjoined defendants from seeking class member exclusions).   In *Impervious Paint Industries*, the court discussed the importance of the independence of the class member's decision to participate in class litigation and the responsibility of the court to assure this independent participation:

> It is essential that the class member's decision to participate or to withdraw be made on the basis of an independent analysis of its own self-interest.  It is the responsibility of the court as a neutral arbiter and of the attorneys in their adversarial capacity, to ensure this type of free and unfettered decision.   The mechanism selected for accomplishing this is the class notice, which is designed to present the relevant facts in an unbiased format.

*Id.* 508 F.Supp. at 723 (emphasis added).  And here, as in *Impervious Paint Industries*, the Court must protect the Class Members' right to make an independent, uncoerced decision with respect to participating in the class action or settling their claims with Homebuilders on their own:

> In this type of case, both sides are subject to tremendous pressure to step over the thin line between vigorous advocacy and overreaching.

14

> It is essential that the class member's decision to participate or to withdraw be made on the basis of an independent analysis of its own self-interest.  It is the responsibility of the court as a neutral arbiter, and of the attorneys in their adversarial capacity to insure this type of free and unfettered decision.
>
> The mechanism selected for accomplishing this is the class notice, which is designed to present the relevant facts in an unbiased format.

*Id*.

Of particular concern are the attempts by Homebuilders to have putative class members unknowingly release rights or claims by the signing of releases.  *See Jennifer*, 1999 WL 117762 at *7; *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *3-4; *Burford*, *supra*.  Courts have prohibited such attempts by defendants and have ordered that curative notices be sent to putative Class Members who have received a release and to all potential Class Members in the future when defendant seeks the signing of a release.  *Id.  See also Jaffee v. United States,* 592 F.2d 712, 719-20 (3d Cir. 1979), where the court affirmed an order directing the federal government to warn all soldiers who were ordered to be present at an atomic blast about the medical risks facing them at the government's expense.

In this litigation, Homebuilders have misled putative Class Members in an effort to resolve their claims related to the defective drywall.  Along with the letter seeking to resolve the putative Class Member's claims, Homebuilders have enclosed releases for the putative Class Members to execute.  Both the letter and releases are misleading and have material omissions in several respects.  First, the letters fail to inform the intended recipients that plaintiffs have filed class actions on their behalf and that the Court has appointed a Plaintiffs Steering Committee.  Second, the letters fail to inform the intended recipients that the class action complaints seek compensation beyond what is being offered by the Homebuilders.  Third, the letters fail to inform the intended recipients that Class

Counsel has determined that the settlement offers undervalue the claims and releases claims without adequate redress.  Fourth, the letters fail to inform the intended recipient that he or she is releasing all claims both past and present for the defective drywall which is still affixed to his or her home. Fifth, the letters fail to inform the intended recipient that the remaining drywall on his or her home is defective.

The conduct described above is the same type of abusive and coercive conduct that have caused the courts in *Jennifer*, *Ralph Oldsmobile, Inc.*, and *Burford* to intervene in order to correct through curative notices.  Given the importance that potential class members have sufficient information to make an informed decision and not knowingly waive rights or claims by executing a release, curative notice is warranted to protect absent class members from the homebuilders' abuses.

Respectfully submitted,

Dated: September 3, 2009

/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
*Plaintiffs' Liaison Counsel*
*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Matthew C. Gaughan (on the brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020   bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seith Parker
Parker, Waichman, Alonso LLP
27399 Riverview Center Blvd.
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants'
Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon
all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-
Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the
United States District Court for the Eastern District of Louisiana by using the CM/ECF System,
which will send a notice of electronic filing in accordance with the procedures established in MDL
2047, on this 3rd day of September, 2009.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com