**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED DRYWALL          MDL No. 2047
          PRODUCTS LIABILITY LITIGATION

                                                                 SECTION: L

This Document Relates to:  All Cases                   Judge Fallon
                                                                 Mag. Judge Wilkinson

_____/

**HOMEBUILDERS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO**
**THE EMERGENCY MOTION TO PROTECT CLASS MEMBERS**
**AND FAIRLY CONDUCT THE ACTION**

The Homebuilders' Steering Committee ("HSC"), opposes the Plaintiffs' Steering

Committee's ("PSC") Emergency Motion to Protect Class Members and Fairly Conduct the

Action, and their supporting memorandum ("PSC's Motion") for the reasons set forth below.

**I.      Introduction**

The PSC seeks to punish homebuilders for being the only parties to step up to the plate

and repair homes, even during one of the worst economic times for homebuilders since the Great

Depression.  The Court should deny the PSC's Motion for the same reasons two other federal

courts denied virtually identical motions filed in Chinese Drywall cases before they were

transferred to this MDL proceeding — *there is no clear record of misleading information or*

*coercive communications by homebuilders.*  The Supreme Court of the United States has rejected

prohibitions on pre-certification communications between counsel and putative class members

where, as here, there is no clear record demonstrating misleading information or coercive

communication.  *See Gulf Oil v. Bernard,* 452 U.S. 89, 101-02 (1981).  Lower courts have

consistently applied this rule since the *Gulf Oil* decision.

Moreover, the PSC seeks relief that is wholly inconsistent with its own recent request for

authority to conduct town hall meetings with homeowners with whom they have no relationship,

1

as well as its ongoing efforts through websites and media interviews to solicit clients as class members.  And any effort by the PSC to stop homebuilders from repairing their customers' homes is in direct conflict with what homeowners want and are demanding from homebuilders — *repaired homes*.  Moreover, stopping repairs would violate the Florida homebuilders' (and homeowners') rights under Chapter 558, Florida Statutes.  Accordingly, the Court should deny the PSC's Motion.

## II.    Factual Background

In late 2008, the media began reporting that Chinese-manufactured drywall was causing corrosion of building components and a sulfur or "rotten egg" smell.  Several homebuilders, including MDL defendants Beazer Homes, Lennar, M/I Homes, and Taylor Morrison, ("Homebuilders"), began investigating and learned that a small number of homes they built had some of those symptoms.  While the facts relating to the individual Homebuilders vary somewhat, typically, beginning in 2009, the Homebuilders notified homeowners of the media reports and offered to inspect their homes.  In some instances, homeowners contacted the Homebuilders first.  Some homeowners corresponded with the Homebuilders through legal counsel.  Most homeowners accepted the Homebuilders' offer of an inspection.

During the course of the inspections, the Homebuilders learned that subcontractors had installed Chinese drywall in some of their homes.  In those instances, the Homebuilders offered to pay for temporary relocation expenses, to replace the Chinese drywall with non-defective domestic drywall, to conduct extensive additional repairs, and in some instances, to warrant the work and to compensate the homeowners for incidental costs.  In exchange, the Homebuilders requested from homeowners an assignment and a release for property damage claims only.

2

As is evident from the materials the PSC filed in support of its Motion, no Homebuilder in the MDL requested a release of personal injury claims. And all Homebuilders in the MDL are making the repairs without any monetary contribution from homeowners or others despite the enormous costs involved.

After the Homebuilders began investigating — and in some instances repairing homes — several different groups of law firms began filing both individual and putative class actions in various jurisdictions. Shortly thereafter, some of those lawyers began trying to stop Homebuilders from repairing homes. The plaintiffs' lawyers in at least two putative class actions filed motions virtually identical to the PSC's Motion in federal courts in Florida and Ohio. Both federal courts denied those motions based on *Gulf Oil* and its progeny. The motion, the hearing transcript, and the court's order in *Kristin Culliton v. Taylor Morrison Services, inc., et al,* U.S. Dist. Court, Middle Dist. of Florida, Case No. 09-cv-00589-JDW-TGW (MDL Case No. 09-4114) are attached hereto as composite Exhibit A. The motion, the hearing transcript, and the court's order in *Steven Minafri v. M/I Homes, Inc., et. al,* U.S. Dist. Court, Southern Dist. of Ohio, Case No. 2:09-cv-167 (MDL Case No. 09-4120) are attached hereto as composite Exhibit B.

Similarly, in response to the PSC's recent "Motion to Approve Town Hall Meetings," this Court stated both Plaintiffs' counsel and Defendants' counsel are free to contact non-party homeowners. *See Transcript of September 3, 2009, Status Conference (not yet available from the reporter).* This Court's statement is consistent with the Supreme Court's decision in *Gulf Oil*, other courts that have considered this issue since *Gulf Oil*, and the recent decisions in the *Culliton* and *Minafri* cases.

3

## III.    Legal Argument

The PSC argues, and the Homebuilders agree, that the Court has "broad discretionary powers....to supervise communications [by defense counsel] with class members." *See PSC's Motion, citing Fed. R. Civ. P. 23(d)*. It is uncontradicted, however, that the Homebuilders' customers are not "class members" because no class has been certified in this MDL or in any case transferred to it. The PSC also ignores the First Amendment limitations that circumscribe the Court's "broad discretionary powers" in this context. Contrary to the PSC's argument, federal courts generally hold that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive, and that this outweighs the infringement of the parties' right to communicate with non-parties. *See Section III.A. below*. Indeed, as demonstrated in section III.C. below, cases on which the PSC relies emphasize courts' limited authority to restrict parties' rights to communicate with putative class members.

### A.    The Homebuilders are legally permitted to communicate with homeowners and to negotiate settlements prior to certification of a class, so long as their communications are not misleading or coercive

The starting point for this analysis is the Supreme Court's decision in *Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981). In *Gulf Oil*, the Court struck down a district court order prohibiting communications between the plaintiffs' counsel in an uncertified class action and putative class members. The Supreme Court found that "the order was an abuse of discretion," explaining:

> [A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited.... The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order....[T]he order involved serious

4

> restrains on expression. This fact, at minimum, counsels caution
> on a part of a district court in drafting such an order, and attention
> to whether the restraint is justified by a likelihood of serious
> abuses.

452 U.S. at 100, 103-04. Although the Court recognized that parties' communications with

putative class members might result in abuses in some circumstances, it held that "the mere

possibility of abuses does not justify routine adoption of a communications ban." *Id.* at 104. A

court may enter "a carefully drawn order that limits speech as little as possible" but it can do so

only on the basis of a "clear record and specific findings that reflect a weighing of the need for a

limitation and the potential interference with the rights of the parties." *Id.* at 101-02.

After *Gulf Oil*, the federal courts have generally agreed that parties cannot be prohibited

from communicating with putative class members, prior to class certification, unless there is a

clear finding that the communications are misleading or coercive and that this outweighs the

infringement of the parties' right to communicate with non-parties.. For example in *Payne v.*

*Goodyear Tire & Rubber Co.,* 207 F.R.D. 16 (D. Mass. 2002), homeowners brought a putative

class action case against the manufacturer of allegedly defective floor heating hoses. The

homeowners moved to prevent the manufacturer from communicating with putative class

members and inspecting homes. The court denied the request and refused to order the

manufacturer to modify its website. It explained: "Considering all of the evidence put forth by

the plaintiffs, an order barring ex parte communication with absent plaintiffs is not justified by

the record currently before the court." *Id.* at 20. "What remains on Goodyear's website

regarding Entran II hose is, in essence, the company's opinion on the hose's functionality." *Id.*

Even cases predating *Gulf Oil* generally allowed communications to "putative" class

members. In *Weight Watchers of Philadelphia, Inc., v. Weight Watchers International, Inc.,* 455

F.2d 770 (2d Cir. 1972), a franchisee brought a class action alleging antitrust violations. The

chairman of the defendant's board of directors sent a letter to all putative class member franchisees stating, among other things, that the lawsuit would have a detrimental affect on the image of the parent company. The plaintiff moved to preclude the defendant from communicating with any potential member of the class and attempting to settle the claims of potential class members. The court held:

> Indeed, we are unable to perceive any legal theory that would endow a plaintiff who has brought what would have been a "spurious" class action under former Rule 23 with a right to prevent negotiation of settlements between the defendant and other potential members of the class who are of the mind to do this; it is only the settlement of the class action itself without court approval that Fed.R.Civ.P. 23(e) prohibits.

*Id.* at 773.

The *Weight Watchers* court further held that "even if defendant should succeed in settling with so many franchisees that the court will be forced to deny class action status, plaintiff's complaint will remain untouched." *Id.* at 775. Similarly, here, the named Plaintiffs' claims will not be impacted by settlements with non-party homeowners. According to the PSC, there remain "thousands" of affected homeowners that could form a class if they so desire. *See Miami Herald article attached as Exhibit C.*

As stated in the current version of the Manual for Complex Litigation: "Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Manual for Complex Litigation (4th Ed.), §21.12 - Precertification Communications with the Proposed Class.* The Manual adds that "[m]ost judges are reluctant to restrict communications between

6

the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." *Id.*

Consistent with this rule, in response to the PSC's recent "Motion to "Motion to Approve Town Hall Meetings," this Court ruled that both Plaintiffs' counsel and Defendants' counsel are free to contact non-party homeowners. *See Transcript of September 3, 2009, Status Conference (not yet available from the reporter).* This Court made a similar ruling in *Patrick Turner v. Murphy Oil*, Civil Action No. 05-4206, U.S. Dist. Court, Eastern Dist. of Louisiana, when it denied the plaintiffs' motion to preclude ex parte communications between Murphy Oil and putative class members, and required that such issues be raised on a case by case basis. *See October 4, 2005, Minute Entry.*

The PSC must make an evidentiary showing of two kinds of proof. First, it must show that a particular form of communication has occurred or is threatened to occur. Second, the PSC must show that the particular form of communication at issue is abusive and that it threatens the proper functioning of the litigation. *Cox Nuclear Medicine v. Gold Cup Coffee Svcs., Inc.*, 214 F.R.D. 696, 697-98 (S.D. Ala. 2003). The PSC has provided **no** actual evidence of a single misleading or abusive communication. Evidence that Homebuilders have repaired their customers' homes and obtained releases in exchange for their expenditures can hardly be deemed *per se* abusive. "Claims that the defendant merely communicated a settlement offer to a putative plaintiff will not provide the basis for a limitation. Absent any specific evidence that the communication is abusive, a limitation is in appropriate." *The Kay Co. v. Equitable Production Co.*, 246 F.R.D. 260, 263 (S.D.W.Va. 2007) (finding defendant contact with putative class members regarding settlement was not abusive).

**B.    The Homebuilders' communications with homeowners are not misleading or coercive**

The materials the PSC filed in support of the PSC's Motion demonstrate the Homebuilders are not providing misleading or coercive information to their customers. Tellingly, the PSC fails to identify any misleading or coercive information. The PSC merely asserts, without evidentiary support, that the Homebuilders' failure to advise homeowners of this MDL proceeding is somehow inherently misleading. It is not. The Homebuilders respectfully suggest that this MDL proceeding should be used as a forum to consolidate pretrial discovery for cases in numerous district courts, not as a means to solicit clients for the PSC.

The PSC also contends that it has authority to control settlement discussions and opine on the validity of the releases for all plaintiffs and non-plaintiffs who own affected homes in Florida. Notably, it cites no authority for this novel proposition either. Homeowners can make their own choices about repairs and counsel, and whether to participate in this litigation or settle their claims.

In addition to requesting that the Homebuilders not contact homeowners relative to repairs and inspections, the PSC seeks to prohibit future settlement agreements and rescind those already executed. But in making this argument, the PSC inaccurately depicts the scope and benefits of the settlement agreements with homeowners. The PSC incorrectly asserts that the Homebuilders "have improperly sought [to] avoid their exposure to liability by trampling upon the rights of absent class members" *See PSC's Motion at p. 2.* The PSC fails to support this conclusory assertion with any facts. The PSC also argues that "[i]t is well-known that builders in this litigation are seeking general releases that far exceed the benefits bestowed upon absent class member owners." *See PSC's Motion at p. 1.* These bald assertions are patently false.

8

The PSC's bald assertions are also misleading. First, they assume that participating homeowners have and want claims that are a part of any action, let alone the action filed by one or more of the putative class representatives. Second, in making these assertions in support of its purported effort to "protect the interests of putative class members," the PSC presumptuously seeks to substitute its intentions and desires with regard to the issues presented in this action for those of the other homeowners (several of whom have their own attorneys). In fact, many of the homeowners who have had contact with the Homebuilders, some of whom are represented by counsel in these proceedings, have contacted the Homebuilders directly and have expressed a desire to have their homes repaired. Third, many Homebuilders are providing a new warranty for the repairs. Thus, if the repairs are insufficient or incorrect, the homeowners have a legal remedy. Fourth, most Homebuilders, in response to the homeowners' requests that they repair their homes, have delivered or mailed the applicable agreement to the homeowners and provided them the opportunity to review the agreement and confer with whomever they like, including legal counsel. And nothing in those documents is misleading or coercive. Indeed, in many cases, the release, assignment, and other pertinent provisions appear as headings or are otherwise prominently displayed in bold typeface.

The PSC would have this Court believe that without their guidance the homeowners are incapable of contacting a lawyer, asking questions of or negotiating with the Homebuilders, or considering their options. For example, at least one of the Homebuilders sold homes that ranged from $300,000-$840,000. *See affidavit of Todd Merrill at par.7 & 8, attached hereto as Exhibit D.* Owners of those homes are not uneducated people and are not incapable of reading documents or retaining counsel, if they desire.

9

In sum, the Homebuilders have not made any misleading or coercive communications – regarding the nature and extent of the releases, the repairs offered, or otherwise. And the PSC has not provided any evidence either.

### C.    The PSC's Motion is not supported by law

The PSC's Motion is not supported by federal case law in general or by the cases upon which the PSC relies in particular. Courts have agreed that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive, and that this outweighs the infringement of the parties' right to communicate with non-parties.

The relief the PSC seeks here would prohibit the Homebuilders from continuing their ongoing communications with customers simply because the PSC has included them in various proposed class definitions. However, most of the cases the PSC cites do not even address that issue; they address the very different question of whether defense counsel can be prohibited from communicating with parties, *i.e.,* members of a class that has been certified and who therefore are represented by counsel. *See, e.g., Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), where the court found that it was improper for defendant to conduct a massive telephone campaign to convince members of a certified class "to withdraw from the class" so that the defendant could reduce its potential liability. The telephone calls violated two previous court orders, but the Court's ruling was based upon the "ethical duty" that "a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter." *Id.* at 1207. That rule does not apply here because no classes have been certified and the PSC does not represent putative class members.

10

As noted, the PSC is relying on cases that involved communications with actual members of certified classes who were parties to the litigation and thus were represented by class counsel. *See, e.g., Resnick v. American Dental Association*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1984) ("unnamed class members, once the class has been certified, are represented by the class counsel", and therefore "the reasons for the prohibition of a lawyer's direct dealing with an adverse party represented by counsel . . . apply here") (citation and internal punctuation omitted); and *In re Federal Skywalk Cases*, 97 F.R.D. 370, 376 (W.D. Mo. 1983) (finding that communications between defense counsel and class members were improper because "this Court expressly created an attorney-client relationship between the counsel appointed to represent the class and those class members" when it certified the class).   Other cases the PSC cites that involve post-certification communication with parties include *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032 (E.D. Wash. 1985); *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D. N.Y. 1986); *In re School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986); *Haffer v. Temple University*, 115 F.R.D. 506 (E.D. Pa. 1987); *Erhardt v. Prudential Group, Inc.* 629 F.2d 843 (2d Cir. 1980); *Georgine v. Amchem Products*, 160 F.R.D. 478 (E.D. Pa. 1995); *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005); and *Impervious Paint Industries, Inc. v. Ashland Oil Co.*, 508 F. Supp. 720 (W.D. Ky. 1981).

In addition, most of the cases the PSC cites, including those that address pre-certification communications with putative class members, were decided *before* the Supreme Court changed the rule in *Gulf Oil, supra*, and held that prohibitions on pre-certification communications between parties and putative class members should be ordered with "caution" and must be based upon a clear record showing that the communications are misleading, coercive, or otherwise

threaten the fairness of the proceedings, and that this outweighs the resulting infringement of the parties' rights to communicate with non parties.    452 U.S. at 104.    Many of these courts expressly relied upon a previous provision in the Manual for Complex Litigation that had allowed similar prohibitions, before the *Gulf Oil* ruling.    *See e.g., Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782 (E.D. La. 1977) (upholding an order restricting communications with putative class members prior to class certification because, *inter alia*, it was "drawn verbatim from . . . the Manual for Complex Litigation," an "appropriate reference"); *Impervious Paint Industries, Inc. v. Ashland Oil Co.* 508 F. Supp. 720 (W.D. Ky. 1981); and *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843 (2d Cir. 1980).[1]    At that time, the Manual recommended "that the court at pretrial enter an order 'forbidding unapproved direct or indirect written and oral communications by formal parties or their counsel with potential and actual class members.' "    *See Erhardt,* 629 F.2d at 845.

This is precisely the type of blanket prohibition that the Supreme Court struck down in *Gulf Oil*, and the Manual was radically changed after *Gulf Oil*.    The Manual now provides that "[d]efendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Manual for Complex Litigation (4th Ed.), § 21.12 - Precertification Communications*

---

[1]    Further distinguishing some of these cases from the instant case is their reliance upon Rule 23 as it existed prior to the 2003 amendment which clarified when the court can refuse to approve a settlement.  The 2003 amendment makes it clear that court approval is <u>not</u> required for the pre-certification settlement of the claims of a putative class member.  The current version of Rule 23 (e) requires court approval and notice of settlements or compromise only as to certified classes.  Thus, the court has no obligation, under Rule 23, to "protect" putative class members from pre-certification contact and settlement discussions with a defendant absent clear evidence of misleading or coercive communications.

15681885.1

*with the Proposed Class.* The Manual observes that "[m]ost judges are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." *Id.*

Significantly, many of the cases the PSC cites involved communications that occurred after formal class *notice* was approved. Courts are particularly concerned about misleading attempts to influence class members during the "opt-out" period when they must decide whether to exclude themselves from a class. For example, in *In re Community Bank of Northern Virginia*, 418 F.3d 277, 287 (3d Cir. 2005), several law firms mailed letters to class members after notice of a proposed class settlement, encouraging them to opt out of the class and to contact the law firms to discuss their claims. The court recognized in that case that "district courts must closely monitor the notice process and take steps to safeguard members from unauthorized and misleading communications," even though it acknowledged a "broad and sweeping . . . ban on communications" is a "serious restraint[ ] on expression" that "counsels caution." 418 F.3d at 310. The fact that the communications occurred after class notice was also significant to the courts in *Kleiner,* 751 F.2d at 1201-02; *Georgine,* 160 F.R.D. at 490; *Impervious Paint,* 508 F. Supp. at 723; and *Erhardt,* 629 F.2d at 845.

Most importantly, many courts have expressly recognized that a defendant may properly engage in communications with putative class members, including settlement discussions, before a class is certified. For example, in *Cada v. Costa Line, Inc.,* 93 F.R.D. 95, 98 (N.D. 111. 1981), the court held that "[i]ndividual class members who choose to settle (or to litigate or indeed just to forget about) their claims are simply opting out of the class, an opportunity available to them until there has been a class determination under Rule 23(c) and the date specified in the class notice in accordance with Rule 23 (c)(2)(A)..has passed. Rule 23(e) is aimed at a different

13

target. It requires court approval of settlement of the class action itself, not of individual claims." *See also, In re M.L. Stern Overtime Litigation*, 250 F.R.D. 492, 499-500 (S.D. Cal. 2008) (holding that a letter from a defendant to putative class members in which it offered to settle their claims was not "improper, misleading, or coercive", in the absence of a clear record of "particular abuses," the Court refused to "impose limitations based on speculation and conjecture"); *Keystone Tobacco Co. v. United States Tobacco Co.*, 238 F. Supp. 2d 151, 157 (D. D.C. 2002) (where the court held that a defendant could properly communicate with putative class members about potential settlement prior to class certification where "the correspondence itself does not appear to contain any incorrect assertions of fact regarding the current class action or the terms of the settlement" and does not contain "inaccurate or misleading" statements); *Jenifer v. Delaware Solid Waste Auth.*, No. Civ. A 98-270, 98-565, 1999 WL 117762, (D. Del. Feb. 25, 1999), (where the Court cited the post-*Gulf Oil* provision of the Manual on Complex Litigation regarding pre-certification communications with putative class members in concluding the communications at issue were not improper); and *American Finance System, Inc. v. Harlow*, 65 F.R.D. 572, 575 (D. Md. 1974) (rejecting plaintiffs' "erroneous presumption that [defendant] is absolutely prohibited from negotiating compromises with individual class members" prior to class certification).[2] Likewise, in this case, no class has been certified, so the Homebuilders may properly communicate with homeowners and settle claims.

### D. Two federal courts have already rejected the PSC's arguments in Chinese Drywall cases that are now pending in this MDL

---

[2]       The PSC also relies on the "memorandum order" entered in *Burford v. Cargill, Inc.*, No. 05-0283, 2007 WL 81667 (W.D. La. June 9, 2007), an unpublished opinion, and *Ralph Oldsmobile, Inc. v. General Motors Corp.*, No. 99-Civ-4567, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001). *Burford* required the parties to negotiate notice language regarding the pending litigation. The *Burford* court did not prohibit releases from being negotiated. The Homebuilders respectfully submit that *Burford* is against the weight of authority rejecting the forced inclusion of such notice language in a pre-certification communication. *Ralph* is distinguishable because, unlike here, the putative class members there were dependent on the defendant for future business, including information, supplies, and credit, such that the court found the potential for coercion. That is not the case here.

14

Two federal courts have already denied motions almost identical to the PSC's Motion. In *Kristin Culliton v. Taylor Morrison Services, inc., et al,* U.S. Dist. Court, Middle Dist. of Florida, Case No. 09-cv-00589-JDW-TGW (MDL Case No. 09-4114), a putative class action, Magistrate Judge Thomas Wilson conducted a hearing on May 12, 2009, on the plaintiff's Motion for Protective Order. There the plaintiff sought, among other things, to prohibit Taylor Morrison from enforcing the releases, to declare the release and assignments void, to require the homebuilder to distribute a court-approved notice or information sheet, and to require the homebuilder to identify any homes to which repairs and relocation agreements have been sought. Judge Wilson denied all of the above stated relief requested by the plaintiff.[3] During the proceedings, counsel for the Culliton (Mr. Casper) stated as follows:

*     *     *     *

MR. CASPER: Well, Your Honor, one side has lawyers. A lot of people on the other side don't. That's not a fair situation.

THE COURT: Well, why? Why? Because they want their house fixed. If their house gets fixed, then what - - why would they need a lawyer?

MR. CASPER: The way the agreements are written, there's no assurance the house is going to be fixed and put in the condition it would have been absent the defective drywall that was installed. The agreement says they'll put it back - -

THE COURT: Well, then you have the warranty, the old one as well as the new one.

MR. CASPER: The release releases any claims related to the defective Chinese drywall, right in Paragraph 15.

THE COURT: Well, of course. They are taking up that old drywall and putting in new drywall; then you get a year warranty.

*See Hearing transcript at p. 32-33, attached hereto as Exhibit A.*

---

[3]   Judge Wilson did require the homebuilder to notify homeowners that they have the right to have an attorney review the release, if they choose to retain one. This insert was included in all future packets provided by the homebuilder.

15

\*        \*        \*        \*

The court also addressed the plaintiff's contention that the release and assignments were misleading:

\*        \*        \*        \*

      THE COURT:  I've read all this stuff.  I didn't find it particularly misleading.  The only thing I find that's - - that has some persuasiveness is some statement to contact a lawyer, period, not you guys, not the other guys, not anybody, but a statement in their facts that there should be some - - that you may wish to contact a lawyer before you sign this document.

      MR. CASPER:  **But, Your Honor, why not clearer language on the assignment and release issue as well?  I don't think it's clear to a lot of people in reading this that this means you're done; this is all you're going to get.**

      THE COURT:  No.  That's why you contact a lawyer.  **I don't think there's anything misleading about that, so I'm not going to say, yeah, you ought to change that.  If I'm reading that, I understand what it means.  If you don't want to do that, okay, then fine.  Then you don't accept their deal.**  You get a lawyer; you bring your own lawsuit - - not necessarily yours but their own lawsuit, and they can ask for a class.  So I'm not changing that one because I don't see anything  wrong with that one.  And I don't see anything wrong with the other stuff.  I didn't find this a misleading statement at all.

\*        \*        \*        \*

*Id at p. 39-40.*

      Similarly, in *Steven Minafri v. M/I Homes, Inc., et. al*, U.S. Dist. Court, Southern Dist. of Ohio, Case No. 2:09-cv-167 (MDL Case No. 09-4120), a putative class action, after a hearing, Judge Algenon Marbley denied the plaintiff's motion for temporary restraining order to prevent M/I Homes from contacting homeowners, repairing homes, and settling potential property damage claims.  At the hearing, Judge Marbley ruled that "precertification communications to potential class members by both parties generally are permitted and are also considered to constitute constitutionally-protected speech."  *See Hearing Transcript at p. 45, attached hereto*

*as Exhibit B.* Importantly, Judge Marbley found "nothing coercive" and "nothing false" about M/I Homes' communication. *Id.* at 46. And Judge Marbley found "compelling the fact that the putative class members, should they enter into [the] agreement, would not give up any of their personal injury claims and they can still remain members of the class." *Id.* In his order denying the plaintiff's motion, Judge Marbley found "there is no clear record demonstrating misleading information in the Letter or inherently coercive behavior on the part of Defendant M/I Homes." *See Order denying motion for temporary restraining order, attached hereto as Exhibit B.* This Court should be persuaded by the decisions in *Culliton* and *Minafri*.

### E.    Florida Homebuilders have a statutory right to make repairs and settle potential claims

Chapter 558, Florida Statutes, provides the Homebuilders the right to make repairs or payment that would result in resolution of potential claims. Chapter 558 requires claimants to advise a potentially responsible defendant of any construction defect and bars any claims upon acceptable repair or payment. Section 558.004, Fla. Stat., provides:

Notice and opportunity to repair –

(1) " In actions brought alleging a construction defect, the claimant shall, at least 60 days before filing any action, or at least 120 days before filing an action involving an association representing more than 20 parcels, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter. If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted. The notice of claim must describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect, if known.

*            *            *            *

(5) "Within 45 days after receiving the notice of claim, or within 75 days after receipt of a copy of the notice of claim involving an association representing more than 20 parcels, the person who received notice under subsection (1) must serve a written response to the claimant. The response shall be served to the attention of

17

the person who signed the notice of claim, unless otherwise designated in the notice of claim. The written response must provide:

(a) A written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed repairs necessary to remedy the defect, and a timetable for the completion of such repairs;

(b) A written offer to compromise and settle the claim by monetary payment, that will not obligate the person's insurer, and a timetable for making payment;

(c) A written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payment;"

*       *       *       *

**(8) "…..If the offeror makes payment or repairs the defect within the agreed time and in the agreed manner, the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer."**

Therefore, the Homebuilders are permitted to contact both represented and unrepresented homeowners pursuant to Chapter 558, which is intended to facilitate resolution of claimed construction defects directly between claimants (homeowners) and builders to avoid the expenditure of judicial resources. Larry R. Leiby and Steven B. Lesser, *How to Comply with Chapter 558 Florida Statutes: Current Challenges and Future Changes*, 83 FLA. B.J. 42 (February 2009), provides:

….F.S. Ch. 558 requires an owner (claimant) to give notice and an opportunity to cure with respect to a building defect(s). The statute sets forth its purpose as to create **"an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of the property owners". In more practical terms, it is intended to allow both claimants and participants to design and construction to resolve alleged defects before both sides run to the courthouse and spend a pile of money on lawyers…**

18

In addition, many of the Homebuilders have the right to make repairs or offer payment pursuant to their warranties. For example, Taylor Morrison provides a structural warranty (in addition to a separate two year comprehensive warranty) which provides:

> E.    WHAT HAPPENS AFTER YOU SUBMIT A CLAIM?
>
> 1.    "Morrison Homes is entitled to assess claimed defects and decide upon an appropriate repair plan. Morrison Homes is also entitled to choose to repair or replace, or to pay you the fair value of the repair or the replacement of a covered defect."
>
> 2.    "…..By accepting the benefits of this Ten-Year Limited Structural Warranty you agree to grant access to Morrison Homes and its contractors to conduct tests and to inspect and repair your home, as Morrison Homes deems appropriate. Failure to grant such access to Morrison Homes shall automatically void this warranty."
>
> *        *        *        *
>
> 5.    "As noted, Morrison Homes, in its sole discretion, may choose to perform the required repairs, if any, or to pay its fair value…."

The various settlement agreements satisfy the Homebuilders warranty obligations and offer benefits far beyond that.

The PSC seeks to prevent unrepresented homeowners from having their homes repaired and from complying with Chapter 558, apparently to create a larger class. Nothing in Chapter 558 prevents the Homebuilders from requesting a release and assignment. Most of the releases do not release future personal injury claims, and most contain a new warranty for repair work, as well as cash payments for certain items.

## IV.    Conclusion

The Court should deny the PSC's Motion because the Homebuilders are permitted by law to communicate with homeowners regarding inspections, repairs, releases and assignments, and otherwise, so long as their communications are not misleading or coercive, and there is no evidence, let alone a clear record, of misleading or coercive communications.

19

Moreover, two federal courts have already considered and decided this issue, and denied the very relief the PSC seeks. Moreover, the Florida Homebuilders are permitted to make repairs and settle claims in accordance with Chapter 558, Florida Statutes. Accordingly, the Court should deny the PSC's Motion.

| | |
|---|---|
| **STONE PIGMAN WALTHER WITTMANN**<br>*Local Lead Counsel of the HSC*<br>*Local Counsel for several homebuilders*<br>546 Carondelet Street<br>New Orleans, LA 70130<br>Telephone: (504) 593-0804<br>Facsimile: (504) 593-0804<br>E-mail: pwittmann@stonepigman.com<br><br>By:  /s/ Phillip A. Wittmann<br>    PHILLIP A. WITTMANN<br>    Louisiana Bar No. 13625 | **GREENBERG TRAURIG, P.A.**<br>*Lead Counsel for the HSC*<br>*Counsel for Lennar Corporation, Lennar*<br>*Homes, LLC, and U.S. Home Corporation*<br>1221 Brickell Avenue<br>Miami, Florida 33131<br>Telephone: (305) 579-0500<br>Facsimile: (305) 579-0717<br>Email: bassh@gtlaw.com<br><br>By:  /s/ Hilarie Bass<br>    HILARIE BASS<br>    Florida Bar No. 334323 |
| **SIVYER BARLOW & WATSON**<br>*Counsel for Taylor Woodrow Communities at*<br>*Vasari, LLC and Taylor Morrison Services, Inc.*<br>100 S Ashley Drive, Suite 2150<br>Tampa, FL 33602<br>Telephone: (813) 221-4242<br>Facsimile: (813) 227-8598<br>Email: nsivyer@sbwlegal.com<br><br>By:  /s/ Neal Allen Sivyer<br>    NEAL A. SIVYER<br>    Florida Bar No. 373745 | **KING & SPALDING LLP**<br>*Counsel for Beazer Homes Corp.*<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309<br>Telephone: (404) 572-4600<br>Facsimile: (404) 572-5100<br>Email: kbuster@kslaw.com<br><br>By:  /s/ J Kevin Buster<br>    J. KEVIN BUSTER<br>    Georgia Bar No. 099267 |
| **CARLTON FIELDS, P.A.**<br>*Counsel for M/I Homes, Inc.*<br>PO Box 3239<br>Tampa, Florida 33601<br>Telephone: (813) 223-7000<br>Facsimile: (813) 229-4133<br>Email: jfuente@carltonfields.com<br><br>By:  /s/ Jaret J. Fuente<br>    JARET J. FUENTE<br>    Florida Bar No. 146773 | **SCHWARTZ & HORWITZ, PLC**<br>*Counsel for South Kendall Construction*<br>6751 North Federal Highway, Suite 400<br>Boca Raton, Florida 33487<br>Telephone: (561) 395-4747<br>Facsimile: (561) 367-1550<br>Email: sgs@sandhlawfirm.com<br><br>By:  /s/ Steven G. Schwartz<br>    STEVEN G. SCHWARTZ<br>    Florida Bar No. 911471 |

| **LEIFF CABRASER HEIMANN & BERNSTEIN, LLP**<br>*Counsel for The Mitchell Company, Inc.*<br>Embarcadero Center West<br>275 Battery Street. Suite 3000<br>San Francisco, California 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br>Email: ecabraser@lchb.com<br><br>By:   /s/ Elizabeth J. Cabraser<br>     ELIZABETH J. CABRASER<br>     California Bar No. 83151 | **CUNNINGHAM BOUNDS, LLC**<br>*Counsel for The Mitchell Company, Inc.*<br>Post Office Box 66705<br>Mobile, Alabama  36660<br>Telephone:  (251) 471-6191<br>Facsimile:  (251) 479-1031<br>Email: sln@cunninghambounds.com<br><br>By:   /s/ Steven L. Nicholas<br>     STEVEN L. NICHOLAS<br>     Alabama Bar No. ASB-2021-N35S |

### CERTIFICATE OF SERVICE

I HEREBY certify that on September 21, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____
Attorney

15681885.1