UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED     *
DRYWALL PRODUCTS LIABILITY      *
LITIGATION                      *     MDL No. 2047
                                *
This Document Relates to 09-4119 *    SECTION: L
                                *
                                *     JUDGE FALLON
                                *
                                *     MAGISTRATE JUDGE
                                *     WILKINSON
                                *
*********************************************

**MEMORANDUM IN SUPPORT OF MOTION OF KNAUF GIPS KG
FOR PROTECTIVE ORDER TO REQUIRE
<u>USE OF THE HAGUE EVIDENCE CONVENTION</u>**

Defendant, Knauf Gips KG ("Knauf Gips"), by its attorneys, without waiving and expressly reserving its jurisdictional and service of process defenses, submits this Memorandum in support of its Motion pursuant to Fed. R. Civ. P. 26(c) for a protective order to require all parties to use the procedures specified in the Hague Convention on the Taking of Evidence Aboard in Civil and Commercial Matters, opened for signature, March 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 ("Hague Evidence Convention"), for any jurisdictional or merits discovery to be taken from Knauf Gips in these proceedings.

A.  BACKGROUND.

1.  **Knauf Gips Is A German Company And Did Not Manufacture Or Import Chinese Drywall Into The United States.**

Knauf Gips is a limited partnership organized under the laws of the Federal Republic of Germany with its principal place of business in Iphofen, Germany. (Declaration of Oliver Fröhlich ("Fröhlich Dec."), ¶ 3, attached as Ex. A.)  Knauf Gips manufactures drywall and provides systems designed to meet various requirements in the dry construction and plastering sector, primarily in Germany.  Knauf Gips drywall is manufactured in Germany from gypsum and other raw materials derived from Germany or other European countries, not China.  (*Id*., ¶ 4.)

Defendants Knauf Plasterboard (Tianjin) Co. ("KPT"), Knauf Plasterboard (Wuhu) Co. Ltd. ("Knauf Wuhu") and Guandong Knauf New Building Product Material Co., Ltd. ("Knauf Dongguan") are limited companies organized under the laws of China and with their principal places of business in China. (*See id.*, ¶¶ 4-6.)  Knauf International GmbH is the sole shareholder of KPT, Knauf Wuhu and Knauf Dongguan.  (*Id.*)  Knauf Gips has no ownership interest in KPT, Knauf Wuhu, Knauf Dongguan.  None of these Chinese companies have any ownership interest in Knauf Gips, and they are not subsidiaries of Knauf Gips.  (*Id.*)  Knauf Gips does not, and never has, supervised, operated, or otherwise exercised control over the day-to-day operations of the production facilities, business practices or the day-to-day administrative and financial functions of, or share bank accounts with KPT, Knauf Wuhu, or Knauf Dongguan. (*Id*., ¶ 8.)

Knauf Gips played no role in the manufacture of the allegedly defective drywall that was used in the plaintiffs' homes in the United States. (Fröhlich Dec., ¶ 9.) During the time period relevant to the complaints in these proceedings, Knauf Gips did not export, ship or otherwise convey any raw materials to manufacture drywall to China, or specifically to KPT, Knauf Wuhu or Knauf Dongguan. (*Id.*) Knauf Gips has not owned or operated any companies, properties or mines in China. (*Id.*)

### 2. Plaintiffs' Conclusory Allegations Do Not Support Full Discovery Under the Federal Rules of Civil Procedure of Knauf Gips.

Knauf Gips has been joined as a defendant in many of the pending actions notwithstanding the absence of any relationship between Knauf Gips and the manufacture of Chinese drywall. Despite Knauf Gips' lack of involvement, the plaintiffs in the consolidated MDL proceedings have alleged that Knauf Gips has potential liability arising from Chinese drywall at issue in these proceedings. In so doing, the plaintiffs make conclusory allegations that generally fall into the following two categories:

   a.  Plaintiffs falsely allege that Knauf Gips manufactured, distributed and sold the allegedly defective Chinese drywall; and

   b.  Plaintiffs falsely allege that Knauf Gips is the parent corporation of KPT, Knauf Wuhu and Knauf Dongguan and has dominated and controlled these three entities, and that these three entities have acted as Knauf Gips' agents and representatives in connection with the manufacture and distribution of the Chinese drywall at issue.

These allegations are not supported by facts, and Knauf Gips should not be subject to intrusive discovery under the Federal Rules.

**B.      ARGUMENT.**

Parties should be required to use the Hague Evidence Convention procedures for all jurisdictional or merits discovery in these proceedings against Knauf Gips because (1) the facts demonstrate that Knauf Gips tenuous connection to the issues in the litigation do not warrant intrusive discovery of a foreign entity; (2) the sovereign interests involved weigh in favor of its application; and (3) the Hague Evidence Convention provides effective means for the parties to secure discovery from Knauf Gips.

### 1.      The Hague Evidence Convention and the *Aerospatiale* decision.

The Hague Evidence Convention, which has been ratified by both the United States and Germany, provides specified procedures by which plaintiffs and codefendants can obtain evidence from Knauf Gips in Germany.  Under Chapter I of the Hague Evidence Convention, this Court is authorized to submit a letter of request containing the requested discovery to the German authorities, who would forward the request to a German court with jurisdiction over Knauf Gips.[1]  The German court then would supervise the taking of evidence from Knauf Gips. Additionally, Chapter II of the Hague Evidence Convention provides three alternative procedures for the taking of evidence abroad – the taking of evidence by diplomatic officers, by consular agents and by commissioners.

---

[1] This court would issue the letter of request only after performing a comity analysis considering: "(1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interest of the United States, or compliance with the request would undermine important interests of the state where information is located."  *Seoul Semiconductor Co. v. Nichia Corp.*, 590 F. Supp. 832, 834 (E D. Tex. 2008).

The Supreme Court, by a 5-4 ruling in *Societe Nationale Industrelle Aerospatiale v. United States District Court*, 482 U.S. 522 (1987), held that the Hague Evidence Convention is an optional mechanism to facilitate the taking of evidence abroad. *Id.* at 547. Justice Stevens, writing for the five-justice majority, emphasized that in deciding whether to utilize the Hague Evidence Convention, the district court: "should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Id.* at 546. Justice Stevens further noted: "When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Id.* The majority opinion specifically requires the district court to scrutinize the following three factors in determining whether to require use of the Hague Evidence Convention: (i) the particular facts of each case; (ii) the sovereign interest involved; and (iii) whether resort to the Hague Evidence Convention would be an effective discovery device. *Id.* at 544. Justice Blackmun, writing for the four-justice minority, expressed concern that courts would perform this case-by-case comity analysis inadequately and that the provisions of the Hague Evidence Convention would be invoked infrequently. *Id.* at 548. He instead advocated a general presumption that, in most cases, courts should resort first to the Hague Evidence Convention procedures. *Id.* at 548-49.

    **2.**    **Jurisdictional discovery against Knauf Gips should be taken pursuant to the Hague Evidence Convention procedures.**

*Aerospatiale* involved discovery on the merits and not jurisdictional discovery. Knauf Gips' initial pleading in response to plaintiffs' complaints will be a motion under Fed. R. Civ. P.

12(b) that will raise the issue of personal jurisdiction. Because plaintiffs have no evidence to support their allegations of this Court's personal jurisdiction over Knauf Gips, their anticipated response will be a request to take jurisdictional discovery. Knauf Gips further anticipates that the requested jurisdictional discovery will be extraordinarily broad and intrusive, particularly because it will inquire into every conceivable aspect of the relationship between Knauf Gips and KPT, Knauf Wuhu or Knauf Dongguan, in what will be a futile attempt to impose alter ego or corporate veil piercing liability on Knauf Gips.[2]

In a case that gave full regard to *Aerospatiale*, this Court ruled that jurisdictional discovery must be taken pursuant to the Hague Evidence Convention. In *Jenco v. Martech International, Inc.*, 1988 U.S. Dist. LEXIS 4727 (E.D. La.. May 19, 1988), this Court expressly held that since a foreign defendant had contested jurisdiction, depositions should be scheduled according to the Hague Evidence Convention. This Court found that:

> While it is settled that first resort to Hague Convention procedures is not required whenever discovery is sought from foreign litigants [citation to *Aerospatiale* omitted], the trial court must strike a balance between protecting foreign litigants from unduly burdensome litigation and the need for a just, speedy and inexpensive resolution of the case. [Further citation to *Aerospatiale* omitted]. While judicial economy may dictate that the Federal Rules of Civil Procedure should be used, the interest of protecting a foreign litigant in light of the jurisdictional problems are paramount. The Court has already ruled that service of process should be affected according to the Hague Convention. [Citation omitted]. The Court sees no reason to depart from the procedures of the Hague Convention until the jurisdictional dispute is resolved.

---

[2] Knauf Gips reserves its right to oppose efforts to take jurisdictional discovery to the extent that plaintiffs have failed to allege even a bare-bones *prima facie* jurisdictional case, and reserves its right to object to the scope of any jurisdictional discovery.

*Id.* at *1-*2.; *accord Geo-Culture, Inc. v. Siam Investment Management S. A.*, 147 Ore. App. 536 (1997) (requiring plaintiffs to conduct jurisdictional discovery through the Hague Evidence Convention); *Knight v. Ford Motor Co.*, 260 N.J. Super. (1992) ("if jurisdiction does not exist over for a party. . . the [Hague Evidence] Convention may provide the only recourse for obtaining evidence").

Consequently, where the issue before the Court clearly is the importation of "Chinese drywall," and the allegations of Knauf Gips' involvement are not supported by the facts (*see* Fröhlich Dec., ¶¶ 3-9), any jurisdictional discovery to be taken from Knauf Gips should be conducted in accordance with the Hague Evidence Convention.

### 3. Application of the *Aerospatiale* factors.

With regard to merits discovery, application of the three factors articulated in the *Aerospatiale* majority opinion likewise leads to the conclusion that plaintiffs and codefendants should be required to use the Hague Evidence Convention to take their discovery from Knauf Gips.[3]

#### (a) The particular facts of this case.

*Aerospatiale* and subsequent cases emphasize that the intrusiveness of the discovery is a key factor in determining the applicability of the Hague Evidence Convention procedures.

---

[3] Knauf Gips is proceeding with this analysis although a district court in this circuit, relying on Fifth Circuit authority, has held that the burden of persuasion is on the party requesting discovery with regard to Hague Evidence Convention issues. *Seoul Semiconductor Co. v. Nichia Corp.*, 590 F. Supp. 832, 835 (E D. Tex. 2008). Authorities outside the Fifth Circuit are split on the burden of persuasion issue. *See In re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 305 (3rd Cir. 2004).

*Aerospatiale,* 482 U.S. at 545-46; *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*, 2005 U.S. Dist. LEXIS 20049 at *5-*14 (N.D. Ill. Sept. 12, 2005); *In re Perrier Bottled Water Litigation*, 138 F.R.D. 348, 354-55 (D. Conn. 1991); *Benton Graphics v. Uddeholm Corp.*, 118 F.R.D. 386, 390 (D.N.J.1987).

The Plaintiff Steering Committee already has drafted proposed document production requests. Including among the drafts prepared for individual categories of defendants is a document request to "Manufacturers," which appears to be the category Knauf Gips fits into based on plaintiffs allegations. (*See* Plaintiff Steering Committee's First Request for the Production of Documents and Things to Defendants ("Document Production Request"), attached as Exhibit B.) The Document Production Request is extraordinarily broad in scope. Without acknowledging the reasonableness of the request in any respect, a limited number of examples of these burdensome requests is provided by way of example:

> Request No. 3 would require Knauf Gips to produce extensive corporate and managerial information regarding itself and all of its subsidiaries or affiliates
>
> Requests Nos. 4 and 5 would require Knauf Gips to provide information regarding its subsidiaries' and affiliates' involvement in connection with Chinese drywall.
>
> Request No. 6 would require Knauf Gips to provide documents concerning any report or analysis of Knauf Gips and its subsidiaries' and affiliates' financial condition or business prospects.
>
> Request No. 7 would require Knauf Gips to provide all of its governmental filings during the alleged Relevant Time Period (which is a 9-year period as defined in the Requests).

This preliminary Document Production Request is only a foretaste of the massively intrusive discovery that plaintiffs and codefendants inevitably will serve on Knauf Gips. Particularly in

view of Knauf Gips' lack of involvement with the manufacture of Chinese drywall (*see* Fröhlich Dec., ¶¶ 3-9), this is a factor that strongly favors the use of the Hague Evidence Convention.

### (b) The sovereign interests involved.

Aside from the intrusiveness of the discovery, the *Aerospatiale* majority opinion analysis requires this Court to consider the sovereign interests of the United States and the relevant foreign state. In the present case, the sovereign interests of both the United States and Germany generally mandate that their courts follow the provisions of the Hague Evidence Convention, a multilateral treaty which both countries have signed and ratified. In joining the Hague Evidence Convention, signatory nations consented to its procedures as an expression of their sovereign interests, which weighs heavily in favor of the use of these procedures. *Perrier*, 138 F.R.D. at 355; *Hudson v. Herman Pfauter GmbH & Co.*, 117 F.R.D. 33, 38 (N.D.N.Y. 1987). Here, The Hague Evidence Convention procedures will accommodate both U.S. and German sovereign interests:

### (i) The sovereign interests of the United States.

The application of Hague Evidence Convention procedures will further U.S. sovereign interests because U.S. laws will be enforced under such procedures. The Hague Evidence Convention is itself U.S. law. *Aerospatiale* at 533. It is consistent with the sovereign interests of the United States to honor its obligations under international treaties, such as the Hague Evidence Convention, to which the United States is a signatory.

### (ii) The sovereign interests of Germany.

U.S. federal rules discovery against German nationals can be extremely offensive to German sovereign interests. In a case that the Supreme Court remanded in light of *Aerospatiale*, the Fifth Circuit mandated that district courts should be especially sensitive to German sovereign interests. Indeed. the Fifth Circuit expressly noted as an illustration: "the constitutional principle of proportionality in the Federal Republic of Germany, pursuant to which a judge may protect personal privacy, commercial property, and business secrets." *In re Anschuetz & Co.,* 838 F.2d 1362,  (5th Cir. 1988) (internal quotation marks and citation to *Aerospatiale* omitted).  Other U.S. authority has recognized that U.S. federal rules discovery can violate German sovereign interests. In *Hudson*, the court properly noted that the taking of federal rules discovery from a German party may constitute a violation of German judicial sovereignty and rights protected by the German constitution.  117 F.R.D. at 37-38.  Indeed, *Hudson* characterizes federal rules discovery as "nothing less than a violation of West Germany's internal laws by outsiders with the approval and support of American courts. . . ."  *Id.* at 38; *see also Perrier,* 138 F.R.D. at 355 ("in this context, a foreign state's sovereign interests are implicated, if at all, in seeking discovery from citizens of the foreign state within the boundaries of that state, but without the permission for that state"); *Orlih v. Helm Brothers, Inc.*, 560 N.Y. Supp. 2d 10, 15 (App.Div.1990) ("since fact gathering is a judicially controlled process in civil law nations such as West Germany, the non-judicial taking of evidence located within their territory is regarded as an affront to their sovereignty.")

United States and German sovereign interests thus weigh in favor of the applicability of the Hague Evidence Convention.

### (c) Resort to the Hague Evidence Convention will be an effective discovery device.

The *Aerospatiale* majority opinion analysis requires this Court to consider as the third factor the effectiveness of the discovery which the Hague Evidence Convention procedures can provide. There is no evidence that there will be any undue delay or prejudice by use of the Hague Evidence Convention.

Indeed, use of the Hague Evidence Convention procedures in Germany has a major advantage over federal rules discovery procedures. Germany has declared in connection with its adoption of the Hague Evidence Convention: "The authority competent to execute a Letter of Request shall be the local court (Amtsgericht) in whose district the official act is to be before performed." Significant delays in federal rules discovery often result from disputes regarding privileges or relevancy. As discovery pursuant to the Hague Evidence Convention will be taken under the direct supervision of the German courts, any such disputes can be resolved on the spot and without delay.

Plaintiffs may argue that the accommodation of German legal and constitutional privileges will obstruct discovery from Knauf Gips. There is naturally some tension between accommodating German legal principles and providing U.S.-style discovery. However, this tension is the very reason for the ratification of the Hague Evidence Convention. "The Convention's purpose was to establish a system for obtaining evidence located abroad that would

be 'tolerable' to the state executing the request and would produce evidence 'utilizable' in the requesting state." *Aerospatiale*, 483 at 530.  For example, Article 9 of the Hague Evidence Convention imposes an obligation on the state of execution to follow any "special method or procedures" specified by the requesting authority.  The Hague Evidence Convention procedures, not the federal rules, are best equipped to provide effective discovery while accommodating the constitutional and legal rights of foreign litigants.

With regard to document production requests, the Hague Evidence Convention procedures are especially needed to accommodate German sovereign interests while providing effective discovery. Germany has declared pursuant to Article 23 of the Hague Evidence Convention that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents.  This does not mean that plaintiffs and codefendants will be unable to obtain any documents from Knauf Gips through the German court.  Under German procedural law "'fishing' for information ('Ausforschung') is generally impermissible."  Jan W. Bolt and Joseph K. Wheatley, *Private Rules for International Discovery in U.S. District Court: The U.S.-German Example*, 11 UCLA J. Int'l L. & For. Aff. 1, 7 (2006).  Nonetheless, the German court:

> has discretion to order litigants and non-parties to produce documents and other tangible things and to allow inspection of objects. However, this power is to be used only to clarify issues that are in dispute, not to investigate other areas of the case in which the parties have not yet made specific allegations.

This limitation on document production request is an explicit expression of a specific German sovereign interest.   Under the Hague Evidence Convention procedures, this German sovereign

interest will be accommodated by placing this reasonable limitation on document production requests directed to Knauf Gips in Germany.[4]

With regard to depositions, the Hague Evidence Convention procedures are particularly effective. Depositions from Knauf Gips personnel under the Hague Evidence Convention procedures would be taken under the direct supervision of a German judge, which is most suitable to accommodate German sovereign interests while providing plaintiffs and co-defendants with effective discovery. A U.S. lawyer with actual experience in taking testimony in Germany pursuant to the Hague Evidence Convention concluded that: "All things considered, the German depositions in the end worked out rather well." Charles Platto, *Taking Evidence Abroad for Use in Civil Cases in the United States - A Practical Guide* 16 Int'l. Law 575, 585 (1982). With regard to the German judges who supervised the examination, the U.S. lawyer wrote that:

> The German judge undertook to study the documents and our summaries in advance. He then proceeded to conduct an extensive examination of each witness in the first instance, after which he allowed us to examine the witness at length. Wide latitude was allowed in this follow-up examination. We were not limited to filling in the details of the judge's interrogation, but we were permitted to question on relevant areas not covered in the judge's initial examination. Six witnesses were examined on complex antitrust issues over the course of four weeks.
>
> Several novel procedures were employed to facilitate the depositions. A verbatim transcript was taken, rather than the judge's minutes as is the usual practice. The English

---

[4] Moreover, plaintiffs can still pursue effective discovery as to their alter ego, corporate veil piercing and related claims by discovering documents in China from KPT, Knauf Wuhu and Knauf Dongguan, the entities whose corporate veils plaintiffs would seek to pierce, as these three entities are subject to the jurisdiction of this Court and are not claiming the protection of the Hague Evidence Convention procedures.

> questions were translated into German for the witnesses to answer. A transcript was recorded in German and then translated into English.

*Id.* at 584.

Consequently, the Hague Evidence Convention procedures will be an effective discovery device in the circumstances of these proceedings.

### 4.     Reconsideration of A*erospatiale*.

There is considerable sentiment that *Aerospatiale* majority opinion analysis, as administered by the district courts, has not provided foreign defendants with the protection that the Supreme Court intended. In a concurring opinion in a case ordering Hague Evidence Convention discovery, Judge Roth of the Third Circuit, joined by Judge McKee, expressly noted that:

> it is time for the Supreme Court to revisit that decision—particularly because I perceive that many of our courts have not exercised the "special vigilance to protect foreign litigants" that the Supreme Court anticipated.

*In Re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 307 (3rd Cir. 2004). In expressing this view, Judge Roth relied upon his Third Circuit colleague Judge Weis, who has opined that first resort to the Hague Evidence Convention, as Justice Blackmun advocated in his minority opinion *Aerospatiale*, is in fact appropriate. Joseph F. Weiss, Jr., *The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity*, 50 U Pitt. L. Rev. 903, 931 (Spring, 1989). Judge Roth noted the Judge Weis' views mirrored the conclusions of the Special Division of the Hague Conference of April 1989 that priority should be given to the Hague Evidence Convention procedures. *Hague Conference of Private International Law: Special*

*Commission Report on the Operation of the Hague Service Convention and the Hague Evidence Convention*, April 1989, *reprinted in* 28 Int'l Law Materials 1556, 1569 (1989).

In addition to the views of these Third Circuit judges, commentators repeatedly have criticized the *Aerospatiale* holding. For example, Professor Bermann writing in the Tulane Law Review stated flatly regarding *Aerospatiale* that "the Supreme Court seriously erred on the merits. . . ." George A. Bermann, *Eason-Weinman Center for Comparative Law Colloquium: The Internationalization of Law and Legal Practice: The Hague Evidence Convention and the Supreme Court: a Critique of the Aerospatiale decision,* 63 Tul. L. Rev. 525, 529 (1989); *See also* Russell J. Weintraub*, The Need for Awareness of International Standards when Construing Multilateral Conventions: the Arbitration, Evidence and Service Conventions,* 28 Texas Int'l L.J. 441, 460-61 (1993) ("Comments on *Aerospatiale* have almost uniformly condemned the opinion as inconsistent with America's obligations under the Evidence Convention and offensive to other signatories."); William L. Wilkes and Nancy E.Goldberg, *The Unsolved Problem in Taking Evidence Abroad: The Non-Rule of Aerospatiale,* 7 Dick J. Int'l L. 65, 92 (1988) ("the Supreme Court was incorrect in *Aerospatiale*.").

Knauf Gips understands that this Court is bound by the Supreme Court's holding in *Aerospatiale,* but raises this issue to preserve it in the event of appellate review that may lead to the Supreme Court heeding the call of these distinguished judges and commentators for reconsideration of the *Aerospatiale* decision.

## C.  CONCLUSION.

For the reasons stated herein, this Court should enter a protective order requiring all parties in these proceedings to use the procedures specified in the Hague Evidence Convention for any jurisdictional or merits discovery to be taken from Knauf Gips.

Respectfully Submitted by,

s/ Kyle A. Spaulding

Douglas B. Sanders
Richard M. Franklin
BAKER & MCKENZIE LLP
130 E. Randolph Drive
One Prudential Plaza
Chicago, IL  60601
Telephone:      (312) 861-8075
Facsimile:       (312) 698-2375
Email:  douglas.b.sanders@bakernet.com

Donald J. Hayden
BAKER & McKENZIE
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, FL  33131
Telephone:      (305) 789-8966
Facsimile:       (305) 789-8953
Email:  donald.j.hayden@bakernet.com

Kerry J. Miller (LA Bar #24562)
Kyle A. Spaulding (LA Bar #29000)
FRILOT L.L.C.
1100 Poydras Street Suite 3700
New Orleans, LA  70163
Telephone: (504)599-8000
Facsimile:  (504)599-8100
E-mail:  KMiller@frilot.com

*Counsel for Knauf Gips KG*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **MEMORANDUM IN SUPPORT OF KNAUF GIPS KG FOR PROTECTIVE ORDER TO REQUIRE USE OF THE HAGUE EVIDENCE CONVENTION** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 21st day of September, 2009.

Respectfully Submitted by,

s/ Kyle A. Spaulding

Douglas B. Sanders
Richard M. Franklin
BAKER & MCKENZIE LLP
130 E. Randolph Drive
One Prudential Plaza
Chicago, IL  60601
Telephone:    (312) 861-8075
Facsimile:    (312) 698-2375
Email: douglas.b.sanders@bakernet.com

Donald J. Hayden
BAKER & McKENZIE

        Mellon Financial Center
        1111 Brickell Avenue, Suite 1700
        Miami, FL  33131
        Telephone:     (305) 789-8966
        Facsimile:      (305) 789-8953
        Email: donald.j.hayden@bakernet.com

        Kerry J. Miller (LA Bar #24562)
        Kyle A. Spaulding (LA Bar #29000)
        FRILOT L.L.C.
        1100 Poydras Street Suite 3700
        New Orleans, LA  70163
        Telephone: (504)599-8000
        Facsimile:  (504)599-8100
        E-mail:  KMiller@frilot.com

        *Counsel for Knauf Gips KG*