UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: | 2047 |
| | SECTION: | L |
| THIS DOCUMENT RELATES TO: | JUDGE: | FALLON |
| **04-4112 through 09-4120** **09-4294 through 09-4322** **All other consolidated and tag-along actions alleging construction defects in the State of Florida** | MAG. JUDGE: | WILKINSON |

_____/

**RESPONSE OF PLAINTIFFS' STEERING COMMITTEE TO BENCH
MEMORANDUM OF CERTAIN DEFENDANTS
REGARDING CHAPTER 558, FLORIDA STATUTES**

**INTRODUCTION**

On behalf of all Plaintiffs from the State of Florida, individually on behalf of themselves and

all others similarly situated ("the Florida Plaintiffs"),[1] the undersigned Plaintiffs' Steering

Committee submits the following Response to the Bench Memorandum submitted by certain

Defendants Regarding Chapter 558, Florida Statutes, dated August 7, 2009.[2]

_____

[1]The Florida Plaintiffs from the cases originally transferred in the MDL Panel's June 15, 2009 Transfer Order are Shane M. Allen (No. 09-4112), Duane Ankney (No. 09-4113), Kristin Morgan Culliton (No. 09-4114), The Mitchell Co., Inc. (No. 09-4115), Lawrence Riesz (No. 09-4116), Karin Vickers (No. 09-4117), Lorena Garcia (No. 09-4118), and Janet Morris-Chin (No. 09-4119).   There are some twenty-eight (28) additional tag-along actions from the State of Florida. (Nos. 09-4294 through 09-4322).   These tag-along actions contain personal injury/medical monitoring claims that are substantially-similar to the claims set forth in the _Karin Vickers_ Complaint.  _See_, _e.g._, _Vickers v. v, Knauf Gips KG_, No. 09-4117 at ¶¶  5, 269-80 (same); _Garcia v. Lennar Corp._, No. 09-4118 at ¶¶ 2, 6, 189-195.  Many of these actions are set forth in the June 18, 2009 MDL Panel Order attached hereto as _Exhibit A_.

[2]The Bench Memorandum was submitted by Defendants Taylor Morrison Services, Inc., Taylor Woodrow Communities at Vasari, LLC, Lennar Homes, LLC f/k/a Lennar Homes, Inc., U.S. Home Corp., M/I Homes, Inc., Beazer Homes Corp., Banner Supply Co., L&W Supply Corporation, USG Corporation, All Interior Supply Corporation, and Independent Builders Supply Association.

Certain Defendants who have been named in cases that were transferred from the State of Florida (the "Florida Cases") cite to Chapter 558, Florida Statutes, *see* §§ 558.001-.005, Fla. Stat., and argue that the Florida Cases, which include both claims for damages to personal and real property and, in most instances, claims involving personal injury/medical monitoring, must be delayed in order to comply with Chapter 558's abatement provisions. Defendants' argument is based on a distortion and misapplication of Chapter 558 of the Florida Code.  Chapter 558 provides a mechanism to remedy run-of-the-mill construction defects claims (such as an uneven floor, warped lumber or a door or window that does not close correctly); it was not designed or intended to delay or impede cases involving public health concerns and/or claims of personal injury or medical monitoring claims.

As the caption of this multidistrict litigation clearly states, these consolidated cases are ***products liability*** cases against the parties responsible for placing toxic and corrosive Chinese-manufactured drywall into the stream of commerce, targeting manufacturers, distributors, suppliers, and sellers.  They are not, as certain Defendants would have it, pedestrian "construction defects" claims.  The Florida Plaintiffs therefore dispute that Chapter 558 applies here ***at all*** because  most-- if not all -- of the Florida Cases are brought under long- and well-established products liability jurisprudence that, in Florida, serve the important public policy purpose of protecting the public from defective and unreasonably dangerous products like the toxic and corrosive Chinese-manufactured drywall at issue here.   A similarly important public policy objective is also served in the Florida Cases which assert medical monitoring causes of action on behalf of a broad spectrum of Florida homeowners and occupants to provide a mechanism to detect the early onset of latent disease caused by exposure to corrosive and toxic drywall resulting from the Defendants'

misconduct.  *See Petito v. A.H. Robins Co., Inc.*, 750 So.2d 103, 104-06 (Fla. 3d DCA 1999), *rev. denied*, 780 So.2d 912 (Fla. Jan 09, 2001). This public policy purpose is distinguishable from the limited range of ordinary construction defect-type disputes addressed by Chapter 558, Florida Statutes.

By wholly ignoring the true and diverse nature of Plaintiffs' claims and by insisting that Chapter 558, Florida Statutes, applies because the defective and unreasonably dangerous product in this litigation was connected to construction, Defendants gloss over the substantial differences between the products liability jurisprudence underlying Plaintiffs' claims and the distinct, warranty-related issues Chapter 558 addresses.   For over thirty years, the Florida Supreme Court has recognized that Florida's products liability body of law is, though parallel, wholly separate and distinct from the warranty-related body of law of which Chapter 558's construction defect provisions are clearly a  part.  *See West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 88 (Fla. 1976).   In recognizing this distinction, the Florida Supreme Court *specifically* held  -- in part because of the important public policy purpose of protecting the public from unreasonably dangerous and defective products  that is served by strict products liability doctrine -- that concepts such as contractual notice and privity traditionally addressed in warranty law and principally addressed by Chapter 558 *have no place in products liability cases*.  *See id.*  Because the Florida Plaintiffs assert products liability claims, Chapter 558's contractual notice and privity provisions therefore do not apply to most – if not all – of the Florida Plaintiffs' asserted claims.  This conclusion is not altered or diminished by the expansion of the original application of strict products liability from manufacturers all the way down the distribution chain to reach distributors, suppliers and sellers.  *See Samuel Friedland Family Enterprises v. Amoroso*, 630 So.2d 1067, 1068 (Fla. 1994).

3

Defendants have cited no authority that remotely suggests that Chapter 558 was intended to be the exclusive mechanism through which products liability claims must pass when they arise in the construction context.  Nor have they cited any authority suggesting that the Florida legislature intended to supplant over thirty (30) years of well-established strict products liability jurisprudence that holds that concepts such as contractual notice and privity addressed by Chapter 558 are inapplicable.  This absence of supportive authority in the face of and long- and clearly-established products liability jurisprudence negates the Defendants' assertions that Chapter 558 should be applied wholesale to the Florida Cases.

The Plaintiffs' Steering Committee submits, in addition, that Chapter 558 *does not apply* to the Florida Cases because most of these actions contain claims involving public health concerns, medical monitoring claims and/or claims for personal injury and such actions *are specifically exempt from Chapter 558*.  *See* § 558.002(1), Fla. Stat. (defining "actions" under Chapter 558 and providing that "actions" "*does not include any* . . . *civil action* . . . *asserting a claim for alleged personal injuries arising out of an alleged construction defect*." (emphasis added)).

Moreover, in the small minority of Florida Cases in which Chapter 558 could be applicable (because no claims involving personal injury or medical monitoring have been asserted), Chapter 558 requires that, where the party receiving notice of a claim of a construction defect under the statute (*i.e.*, a contractor, subcontractor, supplier or design professional, referred collectively herein for discussion as "contractor"), and the claimant/plaintiff are in contractual privity – for instance, through a home sale and purchase agreement – the contractor must demonstrate that the applicable contract *strictly complied* with section 558.005(1), Florida Statutes, before Chapter 558's brief

abatement provision can apply. *See* § 558.005, Fla. Stat.  For contracts entered into after October 1, 2006, this section requires that the contract **expressly** cite Chapter 558 and contain **specific language** cited from Chapter 558 that is **conspicuously displayed** in the contract in all capital letters. *See* § 558.005, Fla. Stat.  If the contractor cannot demonstrate compliance with these prerequisites, Chapter 558 does not apply. *See id*. The Defendants have failed to satisfy this threshold evidentiary burden.

Finally, even assuming in the small minority of cases in which no claim of medical monitoring or personal injury is involved and in the limited instances where a Defendant could meet their burden of demonstrating strict compliance with the contractual notice requirements of section 558.005, Florida Statutes, the Defendants' insistence that Chapter 558 requires abatement still rings hollow:  These Defendants have been on notice of the Florida Plaintiffs' claims regarding the presence of toxic and corrosive Chinese-manufactured drywall in the Florida Plaintiffs' homes for **many, many** months through service of actual Chapter 558 letters and/or complaints by the Florida Plaintiffs.[3]    In fact, in many instances, these Defendants have been on notice of the Florida

---

[3]*See*, *e.g.*, Motion to Dismiss Complaint For Improper Venue or, In The Alternative, to Sever and Transfer and Motion to Abate and Incorporated Memorandum of Law by Taylorwoodrow Communities at Vasari LLC, *Vickers v. v, Knauf Gips KG*, No. 09-4117 [S.D. Fla. D.E. 20], at 13 (Apr. 20, 2009) (moving to abate based in Chapter 558, Florida Statutes); Joint Motion For Miscellaneous Relief, Specifically to Abate Pursuant to Florida Statute Chapter 558 by L&W Supply Corporation & USG Corporation, *Culliton v. Taylor Morrison Serv.*, No. 09-4114 [M.D. Fla. D.E. 44) (May 14, 2009) (same).  Defendant Banner Supply Co. also has repeatedly moved to abate based on Chapter 558 in Chinese-drywall related litigation pending in Miami-Dade County, Florida.  See Motion to Abate by Banner Supply Co., *Harrell v. South Kendall Construction Corp.*, No 09-08401CA40 (Fla. 11th Jud. Cir. Mar. 23, 2009). ***After a hearing held on July 1,2009, the Circuit Court denied Banner's Motion to Abate, issued a Case Management Order, and was the first state court to set a trial date in a Chinese-drywall-related case***.  *See Composite Exhibit B* (attaching defendants' motions to abate and orders denying such motions, as well as case management order

Plaintiffs' claims and have had direct contact and dealings with the Florida Plaintiffs prior to their filing suit, being mindful of Chapter 558's command that, upon receipt of notice, Defendants must make ***an acceptable offer of settlement or make repairs*** within forty-five (45) days of receiving such notice.  *See* § 558.004(5), Fla. Stat.  For the most part, the Defendants have done nothing; rather, they have repeatedly focused on the ***inapplicable abatement*** provisions in the hopes of achieving delay, rather than complying with the statute's spirit and command.  Having been rebuffed -- for the very same reasons -- by the sole Florida state court to rule on this issue, Defendants now seek to persuade this Court to arrive at an inconsistent conclusion with far more significant consequences.  *See infra* discussion at Section V.

Under Chapter 558, where the contractor fails to respond to the notice, disputes the claim, fails to make an offer that is acceptable, ***or if the claimant exercises his/her unrestricted right to reject the offer***, within 45 days, the Chapter permits the claimant/plaintiff to file ***or continue*** with her suit.  *See* §§ 558.003 & 558.006-.008, Fla. Stat.  Thus, irrespective of Chapter 558's applicability and irrespective of whether the contractor makes an offer, the ***claimant/plaintiff is still the master of her own claim and is always entitled to her day in court***.  By virtue of the Defendants' inaction in the face of their knowledge of the presence of Chinese drywall in the Florida Plaintiffs' homes, their knowledge of that Chapter 558 requires that they make ***acceptable*** offers to settle the claim within 45 days of being placed on notice of such claim and their corresponding inaction, the Defendants have waived any entitlement to abatement under Chapter 558 because the forty-five day window to seize this opportunity has long passed.

---

setting trial date).

6

MDL DOCKET NO. 2047

For these reasons, as set forth more fully below, Chapter 558 does not apply to Plaintiffs' products liability claims. Where it applies, *it is not*-- as certain Defendants would have it -- a device to serve their miserly ends of delaying justice to the thousands of Florida homeowners whose lives have been afflicted by the scourge of Chinese drywall. This conclusion should give Court substantial comfort that this issue will not derail the Court's expressed intent to bring this expansive litigation to a just, efficient, and speedy resolution.

## DISCUSSION AND ANALYSIS

### I.    CHAPTER 558 OVERVIEW

Below, the Plaintiffs' Steering Committee attempts to explain the essential provisions set forth in, and the timing required by, Chapter 558, Florida Statutes. These requirements are set forth in the Chart attached as *Exhibit C*, hereto. A copy of Chapter 558 is also attached hereto as *Exhibit D* for the Court's convenience. In summary, where it is applicable, Chapter 558 compels Defendants to make bona fide offers of settlement (either with money, repairs, or through a combination of both) that are *acceptable to the claimant* within forty-five (45) days of being placed on notice of a construction defect. *See* § 558.004(5), Fla. Stat. *Regardless of whether Chapter 558 applies, the Plaintiff is master of her claim – she may accept a settlement offer if, in her sole judgment, it is acceptable or she may prosecute her action.* *See* §§ 558.006-.008, Fla. Stat. Where the parties are in contractual privity -- for instance, where a homeowner and homebuilder have entered into a home purchase and sale agreement -- and *before* any abatement can be permitted pursuant to Chapter 558, the contractor must meet the threshold evidentiary burden demonstrating that its contract with each Plaintiff *strictly complied* with statutory requirements that the contract contain language advising

7

the homeowner of the potential applicability of Chapter 558 by *expressly* citing Chapter 558 and including *specific*, statutory language that has been "*conspicuously* set forth" in the contract. *See* § 558.005(2), Fla. Stat.[4]  If these prerequisites *are not met*, Chapter 558 *cannot apply*.  *See id.*

### A.    Claimant to Give Notice of Construction Defect

In the very limited instances where Chapter 558 may apply,[5] a claimant must given written notice of a "construction defect."  The Chapter requires that the notice "describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect, if known," § 558.004(1), Fla. Stat.

---

[4]This section provides:

The provisions of this chapter shall apply to every contract for the design, construction, or remodeling of property entered into:

(a)    Between July 1, 2004 and September 30, 2006, which contains the notice set forth in paragraph (2)(a) and is conspicuously set forth in capital letters[;]

(b)    On or after October 1, 2006, which contains the notice set forth in paragraph (2)(b) and is conspicuously set forth in capitalized letters.

§ 559.005(1), Fla. Stat.  Subsections (2)(a) and (b) require the contract to include specific language that "must be substantially in the . . . form" set forth therein.  § 559.005(2)(a) & (b), Fla. Stat.

[5]Chapter 558 only applies to claims alleging construction defects where there is no allegation of personal injury/medical monitoring. *See* § 558.002(1), Fla. Stat. (defining "action" for purposes of the Chapter).  Since claims of personal injury or medical monitoring have been asserted arising out of the presence of defective drywall, Chapter 558 *does not apply* to the actions transferred from Florida.  This is discussed below in Section III.

MDL DOCKET NO. 2047

B.     **Chapter 558 Imposes Obligation On Defendants To Immediately Make Available "All Discoverable Information Regarding the Construction Defect" Or Be Subject to Sanctions**

Upon receipt of a claim that he believes to be covered by Chapter 558,[6] Florida Statutes, the contractor **must** make **wholesale** disclosure of all information relating to the construction defect: Section 558.004(15) requires the Defendants exchange "**all** available discoverable evidence relating to the construction defects, including but not limited to expert reports, photographs, information received" with respect to any inspection or testing conducted, "and videotapes, if any." § 558.004(15), Fla. Stat.  A failure to make production of these materials is specifically subject to an award of sanctions in any subsequent litigation.  *See id.* ("In the event of subsequent litigation, any party who failed to provide such evidence shall be subject to such sanctions as the court may impose for a discovery violation."); Fed.R.Civ.P. 37 (proving for sanctions for discovery violations).  To the extent the Defendants have asserted that Chapter 558 compels the abatement of this action, they are in default of their reciprocal production obligations.  Rather than **voluntarily** making "**all** . . . discoverable evidence relating to the construction defects" available to Plaintiffs as required by Chapter 558, they have adopted the most narrow and recalcitrant interpretation of their discovery obligations prior to transfer and again in these multidistrict proceedings and have withheld the

---

[6]For each time period, Chapter 558 provides two deadlines -- one deadline if the defect relates to only one parcel and a slightly longer deadline if the defect is from an association representing 20 or more parcels.  *See*, *e.g.*, § 558.004(1), Fla. Stat. (establishing 60 and 120 day deadlines, respectively, for abatement of claim); § 558.004(2), Fla. Stat. (establishing 30 and 50 days deadlines, respectively for requesting an inspection); § 558.004(3), Fla. Stat. (establishing 10 and 30 day deadlines, respectively to forward claim); § 558.004(5), Fla. Stat (establishing 45 and 75 day deadline respectively, for contractor to make offer to settle).  For ease of discussion, the deadline relating to one parcel is discussed herein and in *Exhibit C*, attached hereto.

wholesale exchange of information required by the statutes. By failing to do so, Defendants are actively violating the provisions **and "opting-out" of** Chapter 558, Florida Statutes. *See* § 558.004(15), Fla. Stat.

### C.    Contractor May Request Inspection or Conduct Testing

Within ten (10) days after receipt of the notice, the contractor may forward the notice to "each contractor, subcontractor, supplier, or design processional whom it reasonably believes is responsible for each defect specified in the notice." § 558.003, Fla. Stat.[7] The contractor may make a request to inspect the premises within thirty (30) days after receipt of the notice and must coordinate with the claimant regarding the time, manner of, and person conducting any inspection or destructive testing of the premises containing the construction defect. *See* § 558.002(a)-(f), Fla. Stat.

### D.    Contractor Must Make Offer of Settlement Within Forty-Five (45) Days of Receiving Notice

*Regardless of whether any inspection is conducted or any testing is performed*,[8] within forty-five (45) days of receipt of notice, the contractor must communicate one of the following actions:

---

[7]The Chapter provides for additional deadlines for the submission of any reports of inspections when a notice if forwarded pursuant to § 558.003, Fla. Stat., but none of these provisions extend or alter the 45 day timeframe within which an offer must be made or the claim disputed. See §§ 558.003 & 558.004(5), Fla. Stat.

[8]It is noteworthy that the statutory scheme ***does not*** provide for additional time within which a contractor must make a bona fide offer of settlement if inspection is undertaken. Section 558.005, Fla. Stat. ***unequivocally*** provides that an offer must be made within 45 days from the receipt of the notice. and does not toll or otherwise provide for additional time if an inspection is planned. *See* §§ 558.004(2) & 558.005, Fla. Stat. The Chapter therefore eliminates all opportunity for gamesmanship that may be exploited in the course of working out the details of an inspection.

MDL DOCKET NO. 2047

(a)    that it will settle by making *free repairs* that are described in detail, with a timetable for completion;

(b)    that it will *settle* the claim with a *monetary payment* that is described in detail, with a timetable for completion of payment;

(c)    that it will *settle* the claim with a *combination of repairs* and a *monetary payment* that are described in detail, with a timetable for completion of repairs and payment;

(d)    that it is *rejecting the claim*; or

(e)    that it will *settle* the claim with a *monetary payment from insurance proceeds, if any*, and the decision from the insurer must be within thirty (30) days of the date of the notification given to the claimant.

*See* § 558.005(a)-(e), Fla. Stat.

### E.    Claimant May Accept Offer If, In Her Sole Discretion, It Is Acceptable, Or She May Continue With or Commence Her Action

If, forty-five (45) days after receiving notice, however, the contractor fails to respond to the notice at all, or fails to make any of the offers to settle described above, the claimant may file suit or continue with her suit if it has already been filed.  *See* § 558.006, Fla. Stat. ("If the person receiving notice . . . does not respond to the claimant's notice of claim within the time provided in sub section (5), the claimant may, without further notice, proceed with the action."); § 558.003, Fla. Stat. (providing that if an action is filed before compliance with the Chapter, it should be abated until compliance has been satisfied).[9]

Similarly, if, forty-five (45) days after receiving notice, the contractor communicates that

---

[9] *In all circumstances and regardless of the outcome, the maximum time for any abatement* under Chapter 558 is *sixty (60) days*. *See* § 558.004(1), Fla. Stat. This period is 120 days where 20 or more parcels are involved. *See id*.

11

it is disputing the claim, the claimant may file or continue with her suit. *See id*. ("If the person receiving notice . . . disputes the claim and will neither remedy the defect or compromise and settle the claim . . . the claimant may, without further notice, proceed with the action.").

### F.    Claimant Always Has The Right to Go To Court

Regardless of whether an offer is made or not, ***the claimant may continue her action or file suit if, in her sole discretion, the offer is not acceptable***. *See* § 558.00(7), Fla. Stat. ("A claimant who receives a timely settlement offer must accept or reject the offer by serving written notice of such acceptance or rejection . . . within 45 days after receiving the settlement offer."). The claimant is, therefore, always the master of her claim, regardless of whether Chapter 558 applies. ***The claimant, also, is always entitled to her day in court***. *See id*.

### G.    Chapter 558 Is Not a Device to Serve Delay

As *Exhibit C* and the provisions of Chapter 558 set forth in *Exhibit D* clearly illustrate, Chapter 558 ***is not*** -- as Defendants would have it -- a device to be perverted into the service of delay.  Rather, where it applies (and it does not apply to the Florida Cases, as described more fully below), it provides a finite, forty-five (45) day period of time within which Defendants must offer free repair or monetary settlement, with a detailed explanation and a timetable to make repairs and payment, that is acceptable to, and accepted by, the claimant.  *See* §§ 558.005-.006, Fla. Stat.  If, however, the Defendant disputes the claim or does not make an offer ***that makes the claimant whole*** in a manner that is ***accepted*** within forty-five days of receiving notice, the action may proceed if the claimant has already filed an action, or the claimant may file an action in the first instance.  *See* §§ 558.003 & 558.006, Fla. Stat.  Chapter 558, therefore, does not provide for "abatement" *per se*, but

rather compels Defendants to make realistic, ***bona fide*** settlement offers that are calculated to be acceptable to a claimant/plaintiff.

## II.    PRODUCTS LIABILITY CASES OR CLAIMS ARE NOT SUBJECT TO CHAPTER 558

Notably missing from the Defendants' submission is the absence of any ***any caselaw***, ***legislative history***, or ***other authority*** from the State of Florida that remotely supports their extraordinary assertion that Chapter 558 should ***preempt*** an entire body of Florida products liability law and the underlying public policy rationale of protecting the Florida public from damages caused to persons and property by unreasonably dangerous and defective products like the toxic and corrosive Chinese-manufactured drywall at issue in this case.

As the name of this multidistrict litigation clearly states, these are ***products liability*** cases against the manufacturer and all other parties who are responsible for placing corrosive and toxic Chinese-manufactured drywall into the stream of commerce.  *See West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 84 (Fla. 1976) (explaining that "products liability deals with recourse for ***personal injury or property damage resulting from use of a product***") (emphasis added).[10]  By citing to Chapter 558 and insisting that these are really "construction defect" cases, rather than products liability cases, Defendants suggest the absurd.

Florida's well-established body of products liability law is grounded in the public policy of

_____

[10]The Supreme Court relied on the Restatement (Second) of Torts § 402A, which provided that "[o]ne who sells any product in a ***defective condition unreasonably dangerous to the user or consumer or to his property*** is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property."  *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 87 (Fla. 1976) (quoting Restatement (Second) of Torts § 402A) (emphasis added).

protecting the public from products that are defective and unreasonably dangerous.  As the Florida

Supreme Court explains in the seminal products liability case in Florida, "[s]trict tort [products]

liability is based **on public policy**." *West*, 336 So.2d at 88 (emphasis added).[11]  It is this grounding

in the public policy purposes served by products liability doctrine that distinguishes these cases from

the run-of-the-mill warranty-type dispute over a "construction defect" that is served by Chapter 558.

The public policy objective of protecting public health is served in yet another way in the Florida

Cases by Plaintiffs' assertion of medical monitoring claims to guard against latent injuries caused

by exposure to corrosive and toxic Chinese-manufactured drywall.  A "medical monitoring" claim

is an equitable cause of action specifically authorized in the State of Florida to detect the early onset

of latent disease caused by exposure to hazardous substances as a result of the Defendants'

misconduct.  *See Petito v. A.H. Robins Co., Inc.*, 750 So.2d 103, 104-06 (Fla. 3d DCA 1999), *rev.

denied*, 780 So.2d 912 (Fla. Jan 09, 2001).  Defendants have pointed to no authority or legislative

history that suggests that Chapter 558 was intended to be applicable to these claims, either.

The Florida Supreme Court explains that Florida's well-developed body of products liability

law, grounded in public policy, is recognized as being "***parallel***" to and ***"independent"*** from the

"other" defective products law that is based largely on contract principles, the law of  "implied

warranty." *See id*.  Among the distinguishing features of warranty law are concepts such a privity,

notice and disclaimers which, tellingly, are concepts that lie at the core of Chapter 558.  *Compare*

---

[11]*See also Porter v. Rosenberg*, 650 So.2d 79, 81 (Fla. 4th DCA 1995) (stating that the "fundamental purpose" of strict product liability "is to further public safety in the use of consumer goods, by imposing liability without fault upon entities that have the ability to adequately compensate the injured party, distribute the risk of loss, and deter further production of defective products").

*West*, 336 So.2d at 88 (discussing warranty concepts of notice, privity and disclaimer) *with*, *e.g.*, §
558.004(1), Fla. Stat. (requiring notice to be given of construct defect) § 558.005, Fla. Stat.
(mandating inclusion of contract between claimant and contractor).

Whether intentional or not, Defendants' suggestion that Chapter 558 applies to the Florida
Plaintiffs' products liability claims seeks to exploit the similarities between two separate bodies of
defective products law while simultaneously eliding their important distinctions.  Whereas Chapter
558 purportedly imposes a notice requirement, the Florida Supreme Court has expressly stated that
"[a]n action under the strict [products] ***liability doctrine eliminates the notice requirement*** . . ."
*West*, 336 So.2d at 88.

Given the true nature of Plaintiffs' claims (as plainly evidenced in the caption of this
multidistrict litigation) and the broad and important public policy interests Plaintiffs' products
liability and medical monitoring claims seek to vindicate, Chapter 558's application to the Florida
Cases is entirely misplaced.

Part of the Florida Supreme Court's decision in *West* illustrates just how separate and distinct
the interests Chapter 558 seeks to represent are from the well-established body of products liability
law.  In *West*, the Florida Supreme Court addressed the argument that it did not have the authority
to adopt strict products liability theory because the Florida legislature had, purportedly, preempted
this area by enacting the Uniform Commercial Code.  *See West*, 336 So.2d at 88.  The Florida
Supreme Court rejected this argument by finding that the legislature had not expressed any intent
to make the U.C.C. the ***exclusive*** remedy to address defective products. *See id*.  Just as the Florida
Supreme Court found in *West* that the Florida legislature did not intend that the ordinary law of

warranty set forth in the U.C.C. was the exclusive remedy for defective products, and concluded that Florida's adoption of strict products liability doctrine in the place of the U.S.C. was justified, this Court should conclude that the Florida legislature just as clearly *did not* intend Chapter 558 to be the exclusive means for resolving products liability claims if they arise in the construction context, nor did it intend to preempt or supplant over thirty years of products liability jurisprudence in Florida.

### III.     CHAPTER 558 DOES NOT APPLY TO THE FLORIDA CASES -- IT ONLY APPLIES TO CONSTRUCTION DEFECT CLAIMS WHERE NO PERSONAL INJURY IS ALLEGED

Chapter 558 does not *apply* to the Florida Cases that involve claims for personal injury caused by the presence of defective drywall in the Florida Plaintiffs' home. Such actions are *specifically exempt* from Chapter 558.[12]

In citing to Chapter 558 in the support of their argument that it requires the delay of the prosecution of the claims of Florida Plaintiffs and putative class members, the Defendants gloss over and wholly ignore the clear intent expressed in the plain language of Chapter 558 *specifically*

---

[12]This entire language of this section provides:

> A claimant may not file an action subject to this chapter without first complying with the requirements of this chapter. If a claimant files an action alleging a construction defect without first complying with the requirement of this chapter, on a timely motion by a party to the action the court shall abate the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements.

§ 558.003, Fla. Stat. Even though this section makes it clear that Chapter 558 does not apply to many of the Florida Cases, Chapter 558 notice letters were still sent by some of the Florida Plaintiffs in the abundance of caution. *See*, *e.g.* Chapter 558 Letters, dated March 10, 2009, in *Vickers v. Knauf Gips KG*, No. 09-20510, attached hereto as *Exhibit E*.

*providing that it does not apply to "actions" where, as here, the construction defect caused*

*personal injury in addition to property damage.*

Chapter 558 only applies to "actions," which "means any civil action . . . for damages or indemnity asserting a claim for damage to or loss of real or personal property caused by an alleged construction defect . . . ." § 558.002(1), Fla. Stat.

For purposes of Chapter 558, however, the term "action" "***does not include any*** *. . .* ***civil*** ***action*** *. . .* ***asserting a claim for alleged personal injuries arising out of an alleged construction*** ***defect***." § 558.002(1), Fla. Stat. (emphasis added). Because a substantial majority of the transferred Florida Cases allege that the gasses emitted by the defective drywall cause adverse health affects on occupants of the homes and, accordingly, "include claims for alleged personal injuries" arising out of defective Chinese-manufactured drywall,[13] the Florida Cases ***are not*** "actions" for purposes of Chapter 558. The provisions of Chapter 558, therefore, ***cannot*** apply. § 558.002(1), Fla. Stat.

The Florida legislature's exclusion from Chapter 558 of the cases that include claims alleging personal injury ***was not accidental***. The carve-out is consistent with the Florida's Supreme Court's vigilant protection of claims alleging personal injury -- particularly where, as here, the claim of

---

[13]*See, e.g., Morris-Chin v. Knauf Plasterboard (Tianjin) CO., Ltd.,*, No. 09-4119, at ¶¶ 5, 97-107 (alleging adverse health affects and asserting claim for medical monitoring to determine effects of exposure to gasses emitted by defective drywall); *Vickers v. v, Knauf Gips KG*, No. 09-4117 at ¶¶ 5, 269-80 (same); *Garcia v. Lennar Corp.*, No. 09-4118 at ¶¶ 2, 6, 189-195 (same); *Culliton v. Taylor Morrison Serv.*, No. 09-4114, at ¶¶ 30, 31, 51-63 (plaintiff advised by physician to vacate home; alleges toxic condition); *Ankney v. Knauf Gips KG*, No. 09-4113, at ¶¶ 1, 5, 89-96, 98, 258-270 (alleging health hazards from "poisonous" product and requesting medical monitoring); *Allen v. Knauf Plasterboard (Tianjin) Co.*, No. 09-4112, at ¶¶ 2, 24, 31, 52, 61, 142-144, 174, 180 (same). The case of *Riesz v. Knauf Plasterboard (Tianjin) Co.*, No. 09-4116, at ¶¶ 3, alleges adverse human health effects, but *does not* assert a claim for medical monitoring.

personal injury has potentially far-reaching public health consequences -- from resolution through forced alternative dispute resolution.  The Court has preserved the courtroom for resolution of these claims.  *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999) (addressing the issue of the non-applicability of the mediation/arbitration clause to the tort claims where public health concerns are implicated).

Given *Siefert* and Chapter 558's corresponding exclusion of defects cases that also involve claims of personal injury, both the Florida Supreme Court **and** the Florida Legislature clearly express Florida public policy that **strongly favor** the resolution of personal injury claims -- particularly where, as here, they implicate significant public health risks  -- in a court of law and not through alternative dispute resolution procedures, regardless of whether those procedures are statutorily contractually derived.

## IV.    WHERE THE PARTIES ARE IN CONTRACTUAL PRIVITY, CHAPTER 558 CANNOT APPLY UNLESS THE DEFENDANTS MEET THEIR THRESHOLD EVIDENTIARY BURDEN OF DEMONSTRATING STRICT COMPLIANCE WITH THE STATUTE

Even in the limited number of cases where claims of personal injury or medical monitoring have not been asserted and before Chapter 558 may apply and where the parties are in contractual privity – for instance where a homeowner and a builder have entered into a home sale and purchase agreement -- section 558.003 requires that certain prerequisites must be met.  Specifically, any Defendant who is in contractual privity with a Plaintiff must demonstrate that the contract between the parties contained **specific language** that **expressly cited** to Chapter 558 and the procedures set forth therein.  *See* §§ 558.005(1) & (2), Fla. Stat.  This evidentiary burden requires that Defendants prove that **every** applicable contract of **every** plaintiff complies with the statutory prerequisites set

18

MDL DOCKET NO. 2047

forth in Chapter 558 before abatement under Chapter 558 may apply.    The Defendants' Bench Memorandum falls far short of meeting this threshold evidentiary burden (in fact, it does not even attempt it).

Section 558.005 requires that **before** the Chapter 558 can apply to a claimed construction defect (not involving a claim of personal injury), arising after October 1, 2006, an advisement[14] must be given to the claimant.  The advisement must ***specifically*** cite to the abatement provisions of Chapter 558.  *See* § 558.005(1)(b), Fla. Stat.  For contracts entered into after October 1, 2006, section 558.005 further mandates that the advisement of the abatement provisions ***expressly*** cite to Chapter 558. *See* § 558.005(1) & 2(b) (providing that "the provisions of this chapter shall apply to every contract for . . . construction . . . entered into . . . [o]n or after October 1, 2006, which contains the notice set forth in paragraph (2)(b) and is conspicuously set forth in capital letters."); § 558.005(2)(b), Fla. Stat. ("The notice required by paragraph (1)(b) ***must expressly cite this chapter*** and be in substantially the following form . . . .") (emphasis added).[15]

---

[14]Where, as here, the construction defect arises out of work performed pursuant to a contract, this advisement must be contained in the contract.  *See* §§ 558.004 & 558.005(2)(b), Fla. Stat.

[15]The statutory advisement requires the following language to be included in the contract:

**CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS.  YOU ARE NOT**

Where the Defendant fails to demonstrate that the contract expressly cites Chapter 558 and includes the language contained in section 558.005(2), Florida Statutes, Chapter 558 cannot apply apply because of the Defendant's failure to strictly adhere to the statute. *See Chalfonte Condominium Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 526 F.Supp.2d 1251, 1258-59 (S.D.Fla.2007) (interpreting insurance policy provision of Florida insurance code and finding that policy failed to strictly comply with clear wording of applicable statute requiring "language in the proper font size and by using . . . term[s] in a certain font and bold-faced type" and concluding that the statute "clearly require[d] insurance companies to strictly follow its command"); *cf. WMS Const., Inc. v. North American Specialty Ins. Co.*, 929 So.2d 1, 3 (Fla. 3d DCA 2005) (explaining that construction lien statutes must be given a "strict reading," and holding that "[f]ailure to comply with the statute's requirements . . . precludes the . . . claim" under the statute). The Defendants' evidentiary burden in these consolidated and coordinated multidistrict proceedings can *only* be met through proof that *each and every Plaintiff* was placed on specific notice in their contract which specifically cited Chapter 558 and included the specific language set forth in the statute and, where appropriate, specifically cited to Chapter 558 Florida Statutes. *See* § 558.005, Fla. Stat. In addition, the Defendants would be forced to demonstrate that the applicable contract did not contain any fatal ambiguities that, by operation of Florida law, must be construed against the drafter, which is almost

---

**OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.**

§ 558.005(2)(b), Fla. Stat. Each Defendant must demonstrate that each applicable contract contained this language before the abatement provisions may apply.

always the contractor.[16]

Therefore, in the limited minority of cases where Chapter 558 might apply and where a Defendants are in contractual privity with a Florida Plaintiff, the Defendants must first meet their threshold evidentiary burden of demonstrating strict compliance with the requirement that the applicable contract expressly cites Chapter 558 and specifically quotes the language contained in section 558.005(2), Florida Statutes.[17]

### V.     EVEN IF CHAPTER 558 WERE TO APPLY TO A SMALL MINORITY OF CASES FROM  FLORIDA, IT NONETHELESS DOES NOT APPLY BECAUSE OF  DEFENDANTS' INACTION

By being served with complaints that describe -- in sufficient detail -- the damages caused to property and personal health by the presence of defective Chinese-manufactured drywall in their homes, the Defendants have been on notice of the Florida Plaintiffs' claims.  Thus, having received notice of such claims *the onus has been on the Defendants* to make *bona fide* offers of settlement that are acceptable to Plaintiffs.  *See* §§ 558.005(a)-(e) & 558.006, Fla. Stat.  **Defendants** -- not Plaintiffs -- have failed to act.

_____

[16]Already, one court in Miami-Dade County presiding over a parallel Chinese drywall state court claim has ruled that a contract's failure to specifically comply with the section 558.005 prerequisites and additional fatal ambiguities in the contract rendered Chapter 558 *inapplicable*. *See Composite Exhibit B* (containing (i) Orders denying Defendants' Motions to Abate Based on Chapter 558; (ii) Defendants' Motions to Abate Based on Chapter 558; (iii)Plaintiffs' Responses to Motions to Abate; and (iv) Case Management Order).  The same court also found that ambiguities in the contract rendered certain provisions unenforceable against the Plaintiffs.  *See id*.

[17]Due to revisions in Chapter 558 that took effect in October 1, 2006, slightly different language applies to contracts entered into before and after October 1, 2006.  *See* § 558.005(2)(a) &(b) (setting forth different advisements that must be conspicuously placed in body of contract depending upon whether contract was entered into before or after October 1, 2006).  Contracts entered into after October 1, 2006 must expressly cite Chapter 558.  *See id*.  Additional language changes are to take affect for contracts entered into after October 1, 2009.

Many of the Florida cases have been pending for several months now.[18]  Conservatively speaking, these cases have been pending before this Court for **over three months,** since the Judicial Panel for Multidistrict Litigation issued its transfer order on June 15, 2009.  For as much time, many Defendants have been aware of Chapter 558's provisions and the clear command that they are to make settlement offers **that are acceptable to claimants** within forty-five (45) days of receiving notice.  Rather than making *bona fide* attempts to do so, however, the Defendants have merely lodged the unfounded complaint that Chapter 558 requires the abatement of these actions.[19]  In light of their inaction, the Defendants' reliance on Chapter 558 therefore rings hollow.  Not only did the Florida legislature impose a short, forty-five day deadline to encourage that bona fide settlement offers be made and accepted quickly, but it also provided additional incentive for bona fide offers to be made **by fully protecting** any offer made by a contractor from use in subsequent litigation.  The

---

[18]For instance, the Florida Cases initially consolidated were filed on the following dates: *Morris-Chin* was filed on March 27, 2009; *Garcia* was filed on March 23, 2009; *Vickers* was filed on March 2, 2009; *Riesz* was filed on March 10, 2009; Culliton was filed on March 11, 2009; *Ankney* was filed on March 19, 2009; Allen was filed on Jan. 30, 2009.  Many of the tag-along cases from the Southern District of Florida were filed in the month of April 2009.

[19]*See, e.g.*, Motion to Dismiss Complaint For Improper Venue or, In The Alternative, to Sever and Transfer and Motion to Abate and Incorporated Memorandum of Law by Taylorwoodrow Communities at Vasari LLC, *Vickers v. v, Knauf Gips KG*, No. 09-4117 [S.D. Fla. D.E. 20], at 13 (Apr. 20, 2009) (moving to abate based in Chapter 558, Florida Statutes); Joint Motion For Miscellaneous Relief, Specifically to Abate Pursuant to Florida Statute Chapter 558 by L&W Supply Corporation & USG Corporation, *Culliton v. Taylor Morrison Serv.*, No. 09-4114 [M.D. Fla. D.E. 44) (May 14, 2009) (same).  Defendant Banner Supply Co. also has repeatedly moved to abate based on Chapter 558 in Chinese-drywall related litigation pending in Miami-Dade County, Florida.. *See* Motion to Abate by Banner Supply Co., *Harrell v. South Kendall Construction Corp.*, No 09-08401CA40 (Fla. 11th Jud. Cir. Mar. 23, 2009).  A*fter a hearing held on July 1, 2009, the Circuit Court denied Banner's Motion to Abate*. *See Composite Exhibit B* & *Exhibit F* (Transcript of Hearing on Motions to Abate and Case Management Conference, dated July 1, 2009, at 51, *Harrell v. South Kendall Construction Corp.*, No. 09-08401CA 46 (Fla. 11th Jud. Cir. Jul. 1, 2009).

Chapter specifically provides that "any offer [of settlement] pursuant to [§ 558.004(5), Fla. Stat.] to remedy an alleged construction defect or to compromise or settle the claim by monetary payment ***does not constitute an admission of liability*** with respect to the defect and ***is not admissible in an action*** brought under this chapter."§ 558.009, Fla. Stat. (emphasis added).

The Defendants' refusal to act in keeping with their obligations pursuant to Chapter 558 was found to be a persuasive reason by the only Florida court, of which Plaintiffs are aware, to have already ruled on this issue. In the related Chinese drywall case styled *Harrell v. South Kendall Construction Corp.*, No. 0908401 CA 46 (Fla. 11th Jud. Cir.), pending in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, the Honorable Gil S. Freeman denied Banner Supply Co.'s Motion to Abate based on Chapter 558. Noting that the Defendants had failed to act after receiving the plaintiffs' notice (filed simultaneously with the filing of plaintiffs' complaint), the Honorable Gil S. Freeman of the Eleventh Judicial Circuit of Florida's Complex Business Litigation Unit found that the Defendants were ***not entitled*** to any additional time since the 60 day abatement period had long passed and nothing had happened in the case. The Court's assessment of the Defendants' dilatory intent in advancing belated abatement arguments should similarly set the tone for this Court's consideration of Defendants' tactics here: "***[W]hy I should give you another 60 to 90 days when you didn't do what could have done when you had the opportunity and got the notice initially***." *See Exhibit F* (Transcript of Hearing on Motions to Abate and Case Management Conference, dated July 1, 2009, at 51, *Harrell v. South Kendall Construction Corp.*, No. 09-08401CA 46 (Fla. 11th Jud. Cir. Jul. 1, 2009) (emphasis added). Similarly, the Defendants have done ***nothing*** since receiving Plaintiffs' notices to compromise and settle

Plaintiffs' claims.[20]   Their protestations regarding the stay provisions of Chapter 558, Florida Statutes, now ring falsely, since they have delayed implementation of any remedial efforts, just as they did in the Florida Circuit Court, by ignoring  the legislative purpose of Chapter 558 to get Plaintiffs' homes fixed quickly and without prolonged litigation.[21]

The information contained in actual Chapter 558 letters and/or the Florida Plaintiffs' complaints served to put the Defendants on notice of the nature of the claims arising out of the presence of Chinese drywall in the Florida Plaintiffs' homes.   Chapter 558 was intended to provide Defendants with a 45 day period to make settlement offers that were ***acceptable*** to Plaintiffs and avoid protracted litigation.   *See* § 558.004(5), Fla. Stat.  Given that the Defendants have failed to make any effort to comply with their obligations under the Chapter (*i.e.*, make wholesale production of all relevant documents relating to Plaintiffs' claims ***and*** make settlement offers within the short, forty-five day window, notwithstanding the statutory command and protections that attend any such offer), the Defendants have ***waived*** any entitlement to abatement of the Florida actions by their categorical failure to act.

## CONCLUSION

---

[20]Before the *Vickers* case was transferred, the plaintiffs similarly argued that the Defendants' inaction during the 60-day period after being placed on notice rendered any Chapter 558 abatement argument moot.  *See* Plaintiffs' Response in Opposition to Defendant Banner Supply Co.'s Motion to Stay, Motion to Abate or, Alternatively, Motion to Dismiss Plaintiffs' Amended Complaint, at 9, *Vickers v. Knauf Gips KG*, No. 09-20510, attached hereto as *Exhibit G*.

[21]Defendant Banner Supply filed a Petition for Certiorari which in pending before the Florida Third District Court of Appeals, seeking review of Judge Freeman's decision.  Plaintiffs' Response is attached hereto as *Exhibit H*. ***Plaintiffs incorporate by reference the additional arguments made therein in rebuttal to Defendants' attempt to recast Chapter 558's alternative dispute resolution procedures as a mechanism for delay and inaction.***

MDL DOCKET NO. 2047

The Florida Plaintiffs dispute that Chapter 558 applies here at all because these cases fall into the defined exception in section 558.002(1), Florida Statutes, for "actions" involving personal injury claims. Chapter 558 also does not apply because the Florida Cases are *products liability* cases brought under well-established strict products liability jurisprudence that, in Florida, serves a public policy purpose to protect the public from defective and unreasonably dangerous products like the toxic and corrosive Chinese-manufactured drywall at issue here.

In the small minority of cases where Chapter 558 could be applicable, and where the contractor and plaintiff are in contractual privity – for instance, through a home sale and purchase agreement – the Defendants have not even attempted to satisfy the threshold evidentiary burden that the applicable contract *strictly complied* with section 558.005(1), Florida Statutes, which requires that the contract specifically cite to Chapter 558 and contain *specific language* cited from Chapter 558. *See* § 558.005, Fla. Stat. Because the Defendants have fallen fall short of meeting this onerous burden that requires proof of compliance with these prerequisites, Chapter 558 cannot apply. Defendants would also be required to meet their burden of proving that each of the applicable contracts does not contain a fatal ambiguity in compliance with Chapter 558 that renders it inapplicable.

Finally, even assuming the Defendants can at some future date meet their threshold evidentiary burden of demonstrating, in the small minority of cases where no personal injury claim, medical monitoring or claim involving public health is asserted, that their contracts have strictly complied with the requirements of section 588.005, Florida Statutes, the Defendants' insistence that Chapter 558 requires abatement still would ring hollow. These Defendants have been on notice of

25

MDL DOCKET NO. 2047

Plaintiffs' claims regarding the presence of toxic and corrosive Chinese-manufactured drywall in their homes for many, many months.  By virtue of the Defendants' inaction, therefore, they have waived any entitlement to abatement under Chapter 558.

For these reasons, Chapter 558 provides no basis for any delay in the continued prosecution of the claims of the Florida Plaintiffs and this litigation should continue apace.

DATED this 22nd day of September, 2009          Respectfully Submitted,

    /s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

MDL DOCKET NO. 2047

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz (on the brief)
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

MDL DOCKET NO. 2047

Jerrold Seith Parker
Parker, Waichman, Alonso LLP
27399 Riverview Center Blvd.
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

MDL DOCKET NO. 2047

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Response of Plaintiffs' Steering Committee to Bench Memorandum of Certain Defendants Regarding Chapter 558, Florida Statutes, has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 22d day of September, 2009.

/s/ Alexander Rundlet
Alexander Rundlet
Florida Bar No. 0692301
arundlet@podhurst.com
