**EXHIBIT H**

**TO**

**RESPONSE OF PLAINTIFFS' STEERING COMMITTEE TO BENCH
MEMORANDUM OF CERTAIN DEFENDANTS
REGARDING CHAPTER 558, FLORIDA STATUTES**

IN THE THIRD DISTRICT COURT
OF APPEAL OF THE STATE OF
FLORIDA

CASE NO.: 3D09-2165
L.T. Case No.: 09-08401 CA (40)

BANNER SUPPLY CO.,
a Florida corporation,

      Petitioner,

v.

JASON HARRELL and MELISSA
HARRELL individually, on behalf
of their minor children, and on behalf
of all others similarly situated.

      Respondents.

_____/

## RESPONSE TO BANNER SUPPLY CO.'S PETITION FOR CERTIORARI OR, IN THE ALTERNATIVE, FOR A WRIT OF MANDAMUS

Banner Supply Company ("Banner") seeks the benefit of a statutory abatement

period to which it is not legally entitled, for the ostensible purpose of pursuing an

alternative-dispute-resolution ("ADR") process which it deliberately neglected when

it had the opportunity. The trial court's rejection of Banner's motion to abate the

action on the ground that Banner "didn't do what [it] could have done when [it] had

the opportunity" is legally sound. Moreover, the abatement provision Banner invokes

in § 558.003, Fla. Stat. (2008) does not apply in this case, since the party with whom

Respondents ("the Harrells") contracted for the construction of their home failed to

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

comply with the provision of Chapter 558 which activates the statute's ADR provisions. Because Banner's motion to abate the Harrells' action was due to be denied under either of these grounds, the Court should deny its petition and preclude unwarranted delay of the Harrells' claims.

## I. THE HARRELLS HAD NO OBLIGATION TO FOLLOW CHAPTER 558 BECAUSE THE APPLICABLE CONTRACT FAILED TO COMPLY WITH THE STATUTE

The ADR procedures of Chapter 558 only apply to an action if the party with whom the homeowners contracted complied with the statutory requirement of furnishing the homeowners particularized notice of their rights and obligations under the law. Because defendant South Kendall Construction Corporation ("SKCC") failed to comply with the mandatory notice provision of § 558.005, the Harrells were not subject to the procedural requirements of the statute.

Section 558.005 establishes a threshold, notice-to-homeowners requirement that effectuates the declared legislative purpose of "protect[ing] the rights of property owners," § 558.001. Section 558.005 governs the application of the Chapter and states that the provisions of the Chapter only "apply" to contracts for the design, construction or remodeling of real property *which contain the statutorily required notice.* § 558.005(1).[1]

---

[1]      Specifically, § 558.005(1) provides:

(continued...)

-2-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

Subsection (2) delineates two separate notice provisions that apply depending upon the date which the contracts were entered into. The one applicable to the Harrells, governing contracts formed on or after October 1, 2006, is subsection (2)(b), which provides that "[t]he notice required by paragraph (1)(b) *must expressly cite this chapter* and be in substantially the following form[.]" § 558.005(2)(b) (emphasis added).[2] SKCC's contract with the Harrells failed to comply with this provision, and

---

[1](...continued)

   (1)   Except as otherwise provided in subsections (3) and (4), *the provisions of this chapter shall apply to every contract for the design, construction, or remodeling of real property entered into*:

         (a)   Between July 1, 2004, and September 30, 2006, *which contains the notice* as set forth in paragraph (2)(a) and is conspicuously set forth in capitalized letters.

         (b)   On or after October 1, 2006, *which contains the notice* set forth in paragraph (2)(b) and is conspicuously set forth in capitalized letters.

§ 558.005(1) (emphasis added).

[2]   That required form of notice is as follows:

CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED

(continued...)

-3-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

Banner does not contend otherwise. *See* Banner App. 1 (attached contract) at 13 (¶ 22).[3]

---

[2](...continued)

> CONSTRUCTION DEFECT. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

§ 558.005(2)(b).

[3]    While SKCC's contract recites much of the verbiage of the required notice, it is legally deficient in two independent respects. First, it omits any reference to Chapter 558, which § 558.005(2)(b) says the notice "must expressly cite." The Legislature added this express-citation requirement of subsection (2)(b) in 2006, against the existing backdrop of subsection (2)(a), which did not require the notice to point the homeowner specifically to the applicable law. *See* 2006 Fla. Sess. Law Serv. 2134 (West). Second, SKCC's notice does not "substantially" track the statutory notice. It makes several material alterations to that notice. For instance, it makes no reference to the "opportunity to inspect" provision of the law. The Legislature evidently deemed it important for homeowners to know that making a construction-defect claim may obligate them to permit someone to enter their home to inspect the alleged defect. In addition, SKCC's notice misinforms the homeowner as to whom it "must deliver" notice of the claimed defect. Whereas the statute (and the statutorily required notice) only requires the homeowner to provide notice of the claimed defect to the entity with which the homeowner has a contract, *see* §§ 558.004(1), 558.005(2)(b), SKCC's notice states that the homeowner must provide it "to the contractor, subcontractor, supplier or design professional."

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

Banner instead challenges the notion that § 558.005 imposes a threshold trigger for the application of the statute, at least as to it. It argues that "Section 558.005 . . . does not specifically require a contract between the parties in order to activate the notice obligations, but only indicates that if a contract does exist, *the contractor* must include specific language therein." Petition at 12 (emphasis theirs). Banner's argument consists of two parts, both of which are flawed. The first is its primary assertion that a homeowner's obligations to pursue the ADR requirements exist independent of the contractor's compliance with the contractual disclosure requirement of § 558.005. As we explain, this reading of Chapter 558 runs counter to the express language of the statute. Banner's subsidiary argument is that § 558.005 has "no relevance" to an entity like it which was not in privity of contract with the homeowner. Petition at 12-14. This second point not only was not preserved for appeal, but also fails to construe the statute as an integral whole and is untenable.

**A.     Only If the Contractor Complied With the Mandatory
        Contract Disclosure Requirement Must a Homeowner
        Pursue Chapter 558's ADR Procedures**

Taking Banner's primary argument first, Banner's position is inconsistent with the statutory scheme of Chapter 558. The contractual notice provision to homeowners serves as the threshold requirement for the applicability of the ADR procedures of the

-5-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

Chapter.  The Legislature's intent to that effect is evident in § 558.005(4), which

Banner does not mention.  That provision states:

> Notwithstanding the notice requirements of this section for contracts
> entered into on or after October 1, 2006, this chapter applies to all
> actions accruing before July 1, 2004, but not yet commenced as of July
> 1, 2004, and *failure to include such notice requirements in a contract
> entered into before July 1, 2004, does not operate to bar the procedures
> of this chapter from applying to all such actions.*

§ 558.005(4) (emphasis added).  The emphasized savings provision would not have

been necessary if compliance with the contractual notice provision has, as Banner

contends, no bearing on the applicability of the statute's ADR procedures.  The

existence of the savings provision proves otherwise.  In other words, the clear

implication of § 558.005(4) is that the failure to include the required notice in a

contract entered after July 1, 2004 -- like the Harrells' contract -- *does* "operate to bar

the procedures of this chapter from applying to all such actions."

This plain understanding of the statutory text finds further support in the

legislative history of the statute.  When the Legislature first added identical non-bar

language to the statute in 2004 (concerning contracts entered into between July 1,

2004 and September 30, 2006), the Senate Staff issued a report on the proposed

language, explaining that:

> [t]he effect of s. 558.005(1), F.S., as amended by the bill, *is to exempt
> from the requirements of ch. 558*, F.S., construction professionals that
> choose not to conspicuously provide the notice in s. 558.005(2), F.S.

-6-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

Senate Staff Analysis and Economic Impact Statement on C.S./S.B. 3046, S. 18, 2nd
Sess., at 9 (2004) (emphasis added).[4]   In other words, the provision allowed
construction professionals to opt out of Chapter 588 -- both its benefits and burdens --
by choosing not to give homeowners the clear notice of their rights in the manner
required by the statute.  *See* Larry R. Leiby and Steven B. Lesser, *How to Comply
With Chapter 558 Florida Statutes: Current Challenges and Future Changes*, 83 Fla.
Bar J., Feb. 2009, at 42, 43 & n.11 (characterizing § 558.001(1) as an "opt out"
provision for contractors).[5]

Prior to this amendment, there was no opt-out provision in Chapter 558.
Although the 2003 version of the statute imposed certain disclosure language in
contracts, the statute's ADR provisions arguably applied irrespective of whether the
contractor furnished the required notice.  *See* § 558.003, Fla. Stat. (2003) ("If a
claimant files an action without first complying with the requirements of this act, on

---

[4]     This report is available at /www.myfloridahouse.com/ Sections/Documents/
loaddoc.aspx?FileName=2004s3046.ri.doc&DocumentType=Analysis&BillNumbe
r=3046&Session=2004.  The Senate bill at issue was the companion to the House bill
that passed and became Ch. 2004-342 (H.B. 1899), but it contained the identical
proposed amendment to § 558.005(1) (2003).  *Compare* 2004 Fla. Sess. Law Serv.
1720-1721 (West) (showing House bill language) *with* SB 3046, § 5 (available at
www.myfloridahouse.com/Sections/Documents/loaddoc.aspx?Filename+_s3046__
html&DocumentType=Bill&BillNumber=3046&Session=2004)(showing Senate bill
language).

[5]     The authors were both members of the Florida Bar's Study Committee on
Chapter 558.  *Id.* at 46 n.43.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

motion by a party to the action, the court shall abate the action . . .").  The 2004 amendments eliminated this absolutist phrasing, changing § 558.003 to say:  "A claimant may not file an action *subject to this chapter* without first complying with the requirements of this chapter." 2004 Fla. Sess. Law Serv. 1716 (West) (emphasis added).  Through this change and the addition of the non-bar provision of § 558.005(4), discussed above, the 2004 Legislature made clear that the statute's ADR procedures depend upon the contractor's compliance with the contractual notice provision.

This understanding of the function of the contractual notice makes sense. Unless compliance with the contractual notice requirement were linked to activation of the statute's ADR procedures, as § 558.005(4) logically implies, there would be no teeth to the mandatory contractual notice provisions.  If that were the case, a contractor could, without consequence, flout the Legislature's explicit command that homeowners must be given certain *particularized* notice concerning their rights and obligations under Chapter 558.  Far more sensible is a statutory scheme that links compliance with that mandate to enjoyment of the benefits the statute holds for the various entities and professionals involved in the design and construction of a home. In simple terms, if a party involved with the design, construction or remodeling of a dwelling is going to avail itself of the ADR procedures of Chapter 558, it is only fair

-8-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346       www.podhurst.com

that the homeowners be contractually placed on notice of the particular law that informs them of their obligations.

As the Legislature said, the scheme established by Chapter 588 balances *both* the homeowners' rights and the rights of the parties alleged to be responsible for a construction defect. *See* §558.001. The contracting party has the initial obligation to alert the homeowners to their rights and obligations under the Chapter, § 558.005, and if the contracting party does so, the homeowners must comply with the statute's ADR procedures, *id.*; § 558.004.

It is uncontested in this proceeding that SKCC's contract failed to comply with § 558.005. Therefore, the Harrells were never obligated to comply with the ADR procedures of Chapter 558.

**B.    A Supplier Is No Differently Situated Than a Contractor and Enjoys No Greater Procedural Protections Under Chapter 558**

Banner's subsidiary argument -- that the contractual disclosure requirement in § 558.005 applies only to the contractor, and that the contractor's failure to comply with it has no bearing whatsoever upon the rights and obligations of *other parties* who did not execute contracts with the homeowners -- is neither preserved nor persuasive.

Banner did not advance this argument below and may not do so here for the first time. *See, e.g., DiPasquale v. Maroone Ford, LLC.*, 954 So. 2d 691 (Fla. 4th

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

DCA 2007).  Banner's argument is actually contrary to the position it took before the

trial court, where it expressly predicated its right to an abatement upon SKCC's

asserted compliance with the mandatory Chapter 558 disclosure in SKCC's contract

with the Harrells.  *See* Banner App., Ex. 3 at 4.  After quoting the contract, Banner

argued:

> There is no question that the language in Section 22 of the
> Contract is in substantially the same form as Section 558.005(2)(b),
> Florida Statutes.  *Accordingly*, pursuant to Section 558.003, Florida
> Statutes, this action should be abated pending compliance by Harrell
> with the requirements of Chapter 558, Florida Statutes.

*Id.*, ¶ 9 (emphasis added).  Both the Harrells and the trial court were entitled to rely

on the argument Banner raised below.  Banner should not be permitted to raise a

contrary position in this appellate proceeding.

   In any event, Banner's interpretation of the statute is at odds with its text.  The

linkage in § 558.005(4) between the "procedures of this chapter" and a contractor's

"failure to include [the] notice requirements in a contract" is not limited to actions

against the contractor alone.  The statute speaks of "all . . . actions."  *Id.*  Thus, failure

of the contractor to comply with the contractual notice provisions has case-wide

effect, freeing the homeowners from the obligation of pursuing the statute's ADR

procedures.

-10-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

In Banner's view, however, § 558.005's requirement that a party who has a contract with the homeowners must provide them the mandated statutory notice is irrelevant to parties who did not contract with the homeowners. This position suffers from several flaws.

First, it depends upon a myopic view of the statute. It ignores the qualifier in § 558.003 on the claimant's obligation to comply with the ADR mechanism, which applies only if the suit is "an action subject to this chapter." It also focuses unduly on the provision of § 558.004(1) that says that "the claimant shall, at least 60 days before filing any action . . . , serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable . . . ." Banner ignores the impact of the following sentence, which says that "[i]f the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted." § 558.004(1). The second of these adjacent provisions modifies the first.

This natural reading finds support in the history of the provision and the larger statutory scheme. In 2004, the Legislature enacted several amendments which streamlined the procedures of the Chapter, elevating the significance of the relationship between the homeowners and the party with whom they contracted. These changes reveal the intent of the statute's notice provision, § 558.004(1). The

-11-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

2003 version of that section merely contained the first sentence discussed above, which required homeowners to give notice to each "applicable" party, irrespective of whether they had a contract with that party.  § 558.004(1), Fla. Stat. (2003).  In 2004, the Legislature added the second sentence to the section, requiring notice to be given to "the person with whom the claimant contracted" for all claims "aris[ing] from work performed under a contract."  *See* 2004 Fla. Sess. Law Serv. 1717 (West).  The only way to harmonize the two provisions is for the second one to modify, and thus restrict the application of, the first.  There would have been no point to the amendment otherwise, since notice to parties with whom the homeowners had contracted was already subsumed within the unqualified language of the first sentence, and was thus already required, in 2003.  The product of the 2004 amendment, which persists today, is that notice need only be provided to the party with whom the homeowners directly contracted for claims arising out of work performed pursuant to that contract.[6]

At the same time that the Legislature made this change, it also made clear that the homeowners' mailing of notice to the contracting party tolls the statute of limitations as to all other parties.  *See* 2004 Fla. Sess. Law Serv. 1721 (West) (showing amendment to § 558.004(10)).  The Legislature also added the activation provisions of § 558.005 for the first time, prescribing that "the provisions of this

---

[6]    This scheme makes perfect sense, since the party with whom the homeowners contracted is likely to be the only one they will know or be able to identify.

-12-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346      www.podhurst.com

chapter shall control every contract . . . which contains the [specified] notice . . . ," as well as the language of § 558.005(4) which implies that non-compliance with the contractual notice requirement "operate[s] to bar the procedures of this chapter from applying to all such actions." *See id.* at 1721-1722.

Second, Banner emphasizes a different aspect of the "evolution" of § 558.005(1), *see* Petition at 13, but reads too much into it. The 2003 version of the section listed parties who had to provide the contractual notice if they had a contract with the homeowners. *See* § 558.005(1), Fla. Stat. (2003) ("Upon entering into a contract for the sale, design, construction, or remodeling of a dwelling, *the contractor, subcontractor, supplier, or design professional shall provide notice to the owner . . . ."*) (emphasis added). The 2004 amendment struck this provision and replaced it with a different formulation: that "the provisions of this chapter shall control *every contract* for the design, construction, or remodeling of a dwelling . . . which contains the [required] notice . . . ." 2004 Fla. Sess. Law Serv. 1720 (West) (emphasis added). The unqualified scope of the replacement provision ("every contract") is plainly broader than the 2003 provision it replaced.

Banner, however, argues that the deletion of the reference to a "supplier" signifies that the Legislature removed suppliers' obligation to give contractual notice. Petition at 14. Not so. If that were the case, then the simultaneous deletion of

-13-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346        www.podhurst.com

reference to "contractor[s]," "subcontractor[s]" and "design professional[s]" would also mean they too were freed from the requirement that contractual notice be afforded to the homeowners. But that is clearly not the case, since the amendment merely simplified the provision with an across-the-board requirement for "every contract" for design, construction or remodeling of a dwelling.

Third, Banner also puts too much weight on the reference to "suppliers" in § 558.004(1) as a party to whom the homeowners must give notice. The first sentence of that section only says that the notice must be provided to "the contractor, subcontractor, supplier, or design professional, *as applicable* . . ." § 558.004(1) (emphasis added). The "applicable" party is the one (or ones) with whom the homeowners contracted, a point clarified by the second sentence: "If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted." *Id.*

Finally, Banner's reading of the statute is problematic from a policy perspective. It would illogically segregate construction parties into two unequal classes: on the one hand, those who contracted with the homeowners, carry the obligation of notifying them of the law and, if they fail, lose its protections, and on the other, those (like Banner) who did not contract with the homeowners, have no notice obligation but reap the full benefit of the statute's protections. This makes little sense.

-14-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

It would create an uneven playing field where homeowners remain burdened with the obligations of Chapter 558 against non-contracting defendants regardless of whether the defendants who contracted with the homeowners failed or chose not to comply with the advance statutory notice requirement intended to benefit the homeowners. It makes far more sense -- as § 558.005 strongly implies -- for the application of the statute to turn equally as to all potential defendants on whether or not the contractor complied with the statute's contractual notice provision.

In short, even if Banner had preserved the argument that a supplier who is not in privity with the homeowner still can insist in the homeowner's compliance with the ADR procedures of Chapter 558, the argument relies on an untenable reading of the statute. Rather, the applicability of the statute -- as to all defendants -- turns on the contracting party's compliance with the mandatory notice requirements of § 558.005. It is uncontested here that SKCC failed to comply. Thus, Banner had no entitlement to the statute's ADR provisions and no right to abate the Harrells' action.

## II.   EVEN IF SKCC'S FAILURE TO COMPLY WITH § 558.005 DID NOT DISENGAGE THE STATUTE, THE TRIAL COURT STILL DID NOT DEPART FROM THE ESSENTIAL REQUIREMENTS OF LAW BECAUSE BANNER FAILED TO COMPLY WITH ITS OWN OBLIGATIONS UNDER § 558.004

The trial court did not rule on the threshold issue of the applicability of Chapter 558 in light of SKCC's non-compliance with the statute. Instead, it based its decision on the Harrells' secondary argument that Banner failed to avail itself of the time

-15-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

allotted to it under § 558.004 to inspect the property and otherwise engage in the statute's ADR mechanisms. Assuming *arguendo* that the statute does apply to this action, the trial court's rationale for rejecting Banner's motion to abate correctly applied Chapter 558 to the facts of this case.

In essence, the trial court properly found that the statute is a two-way street: it imposes obligations and deadlines on *both* parties. In looking only one way – at the Harrells' asserted obligation to serve notice – Banner failed to look at the deadlines coming at it from the other direction. The trial court rightly refused to look in isolation only at the provisions Banner pointed to, but read them in light of the balanced scheme governing both sides that the Legislature crafted.

The trial court was presented with the following uncontested facts to reach its conclusion.[7] On February 3, 2009, through counsel, the Harrells protectively served a formal notice-of-claim letter upon both Banner and SKCC. Banner App., Ex. 5

---

[7]     The trial court did not hold an evidentiary hearing; rather, it took the representations of counsel concerning their sending and receipt of correspondence and the contents thereof. Banner has not questioned the process by which those facts were adduced at the hearing, nor the accuracy of the trial court's fact-finding. In any event, it is proper to attribute evidentiary significance to factual representations of counsel which are unchallenged and not inconsistent with any evidence. *Centennial Ins. Co. v. Fulton*, 532 So. 2d 1329, 1331 (Fla. 3rd DCA 1988); *Waste Mgt., Inc. v. Florida Power & Light Co.*, 571 So. 2d 507, 509 (Fla. 2nd DCA 1990); *Bartholomew v. Bartholomew*, 611 So. 2d 85, 87 n.2 (Fla. 2nd DCA 1992).

-16-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

(July 1, 2009 hearing transcript) (hereinafter "Tr.") at 28:20-25; Harrell App., Ex. A.[8]

During the seven months before that, the Harrells had corresponded directly with

SKCC's customer service department via email on four separate occasions to notify

SKCC about a noxious smell in certain parts of the house and repeated failures of the

brand new air conditioning unit, among other things. *See* Harrell App., Ex. D at 10

(and Ex. A thereto) (attaching emails dated July 8, 2008, August 18, 2008, September

23, 2008 and January 26, 2009). Both SKCC and Banner's registered agents received

the Harrells' formal notice letter. *See* Tr. at 52:6-7; Harrell App., Exs. B, C.[9] Despite

several rounds of correspondence between the Harrells and Banner and SKCC during

February, in which the Harrells offered the opportunity to inspect their home during

the week of March 2, 2009, *see* Harrell App., Exs. B, C, *neither Banner nor SKCC*

*followed through with the inspection.*

---

[8]      The Harrells' counsel referenced and read from several letters during the
hearing. We have attached them as an Appendix to this Response, designated
"Harrell App." Since the date of the hearing, the Harrells have filed additional
correspondence which further documents the back-and-forth between the parties in
February 2009.

[9]      At the hearing, SKCC's registered agent, Kieran Fallon, Esq., did not dispute
that he received the Harrells' February 3 notice letter, *see* Tr. at 52:4-13, and Banner
does not argue that either its own agent or SKCC's agent did not receive the notice
letter. *See* Petition at 4 ("[a]ccepting Plaintiffs' allegations as true"). The Harrells
have since filed with the trial court a letter from Michael Peterson, Esq., dated
February 10, 2009, which acknowledges prior receipt of the Harrell's notice letter, *see*
*also* Harrell App., Ex. B (replying to Mr. Peterson's letter), as well as a letter from
Mr. Fallon dated February 4, 2009 acknowledging receipt of the notice letter.

-17-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346        www.podhurst.com

Instead, on March 9, after waiting thirty-three days from receipt of the Harrells' notice (and many months after the Harrells first notified SKCC of the problem), Banner filed a motion to abate the action. *See* Banner App., Ex. 3 at 5.[10] The reason Banner abandoned the inspection appears to have been that it was not yet sure what inspection protocol to use. *See* Tr. at 52:14-53:11; *see also id.* at 55:19-56:10.

The trial court focused on the fact that Banner failed to perform an inspection of the Harrells' home during the thirty days allotted to it to do so under § 558.004(2). *See id.* at 36-38, 40-41, 50-51, 59. The statute affirmatively authorizes claimants to file suit upon failure of the party who received their notice to give them a written "response" consisting of either a settlement offer or a rejection of claim, within 45 days of receipt of the notice. *See* §§ 558.004(5), (6). Section 558.004(6) says that upon such failure, "the claimant may, without further notice, proceed with an action against that person for the claim described in the notice of claim."[11] Thus, since none

---

[10]     As became evident at the hearing, for whatever reason, Banner never advised its litigation counsel that its own registered agent had received the Harrells' notice letter and had begun the process of arranging for an inspection with them. *See* Tr. at 38:13-39:9; 50:3-7.

[11]     Where, as in this case, a prospective defendant fails to serve a settlement offer within this time period, it is a misnomer to say that a homeowner must serve notice "at least 60 days before filing the action." Petition at 6. Rather, the homeowner only needs to give 45 days' notice. The full 60 days become relevant when a prospective defendant *does* tender a settlement offer, at which point the burden shifts to the homeowner to accept or reject the offer within a given time. § 558.004(7).

-18-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

of the defendants either inspected the home within 30 days of receiving notice (March 6, 2009) as required by § 558.004(2), or served a "response" after forty-five days (March 21, 2009) as required by § 558.004(5), the Harrells were statutorily authorized to "proceed" with their action, § 558.004(6).

> The trial court summarized its reasoning as follows:

> if a 558 notice was provided, and *there was an opportunity for inspection and curing, and your client didn't do it,* and nothing has transpired in this lawsuit, please tell me what the harm is and why I should give you another 60 to 90 days when *you didn't do what you could have done when you had the opportunity and got the notice initially.*

Tr. at 51:4-13 (emphasis added). In stating its ruling, the trial court found:

> I am going to deny the Motion to Abate. . . . *It appears clear that there was a notice given in February and* it appears that there was a notice under the statute and *that time period has lapsed. There was a recognition of that opportunity to inspect.*

*Id.* at 59:2-12 (emphasis added).

More importantly, there was no basis to abate the Harrells' action.  The abatement provision only calls for abatement in the event that "the claimant files an action alleging a construction defect *without first complying with the requirements of this chapter,*" and only then "until the claimant has complied with such requirements." § 558.003 (emphasis added). Assuming the Chapter was even applicable, the Harrells had already complied with its only requirement: they had given SKCC notice. They also gave Banner notice.  The subsequent burdens on the homeowner in §§

-19-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

558.004(2), (7) and (8) were never triggered, since Banner chose not to inspect their home or provide them with a "response" containing its decision regarding settlement. As the trial court recognized, what would be the point of abating the action so that the Harrells could just re-issue the very same notice that Banner had deliberately ignored when first received? Banner itself could articulate no good reason at the hearing. *See* Tr. at 37:10-18.

We expect Banner to argue that the Harrells did not comply with their initial notice obligation because they filed suit on the same day they provided the formal Chapter 558 notice to Defendants. Banner contends that its obligations to inspect and serve a "response" only followed from receipt of "proper notice." Petition at 6. It asserts that the Harrells' February 3 notice cannot so qualify because it was served "simultaneously with the filing of their initial Complaint . . . and only 42 days – not the requisite 60 – before serving their Amended Complaint," *id.* at 8 (citation omitted). This logic may be superficially attractive, but it is clearly flawed.

Banner's equivocation that the Harrells' notice might be computed as 42 days prior to the filing of the Amended Complaint tacitly betrays a telling realization on Banner's part: that the original complaint was irrelevant for Chapter 558 purposes. That is because the original complaint asserted a claim for personal injuries, *see* Banner App. 1 (Compl.), ¶¶ 17, 26, 88, and the Legislature expressly excluded such

-20-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

actions from the scope of the statute. The ADR provisions only apply to "action[s] subject to this chapter." § 558.003. The definitions section of the statute carves out certain kinds of actions from those subject to its ADR provisions:

> As used in this chapter, the term:
>
> (1) 'Action' . . . *does not include* any . . . civil action . . . asserting a claim for alleged personal injuries arising out of an alleged construction defect.

§ 558.002(1) (emphasis added). Thus, the original complaint was *not* an "action" for purposes of the statute, and it was not "subject to . . . chapter [558]," § 558.003. The Harrells so advised Banner in their February 3 notice letter, which they served in an abundance of caution. Harrell App., Ex. A ("Plaintiffs claiming personal injuries are under no affirmative obligation to serve you with a Notice of Claim prior to filing a lawsuit."). Significantly, then, the Harrells *did* provide Banner with notice of their claim "before filing any action" subject to the provisions of Chapter 558. § 558.004(1).[12]

   After receiving statutorily proper notice, Banner had thirty days to inspect the Harrells' home. *See* § 558.004(2). It chose not to, despite the Harrells' invitation and

---

[12]   Thus, Banner's assertion that "Plaintiffs had a mandatory obligation to provide notice to Banner Supply before filing their *lawsuit*" (Petition at 5 (emphasis altered)) is mistaken. The Harrells' lawsuit was not an "action" under Chapter 558. For this reason, the cases Banner cites involving failures to serve pre-suit notice under other statutes (Petition at 10-11) are simply inapposite.

-21-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

full cooperation. *See* Harrell App., Ex. A at 2; Ex. B. Nor did it give the Harrells the written "response" that was due 45 days after receipt of their notice. *See* §

558.004(5). Assuming the statute applied, Banner's failure to file serve a "response" by March 21 authorized the Harrells to proceed with litigation against it. *See* §

558.004(6).

Banner cannot colorably claim that the pendency of this lawsuit somehow precluded it from communicating a settlement offer to the Harrells by March 21, 2009, the last day of Banner's deadline for doing so under Chapter 558 (assuming it applied). The trial court probed Banner's counsel about how the pendency of the lawsuit interfered with its ability to comply with its statutory obligations; Banner's counsel was unable to offer any response:

> THE COURT: . . . . Now, nothing went on [in the lawsuit] between February and now [July 1, 2009]. We're certainly beyond the time period to do the inspection. So?
>
> MR. ATLAS: So we still feel the action should be abated because they just didn't comply with Chapter 558.
>
> THE COURT: And abated for how long *and why?*
>
> MR. ATLAS: Until they comply.

Tr. at 37:10-18 (emphasis added). Banner's counsel conceded that the litigation had been essentially dormant:

> THE COURT: . . . [N]othing is happening in this case.

-22-

MR. ATLAS: That's true.

THE COURT: So it's not like they roller coastered or whatever, nothing has happened. It's been pretty normal since Februar[y]..

MR. ATLAS: That's true.

*Id.* at 41:20-25.

Realistically, what prevented Banner from serving a settlement offer was its failure to inspect the Harrells' house, an apparent product of its own intentional decision. Had Banner truly desired to inspect and make an offer, it could have asked the Harrells to extend the 30-day inspection deadline and permit it to make an offer. *See* § 558.005(3). But it did not. Banner had no interest in settlement, but only in brandishing the abatement provision as a weapon to delay this litigation while it figured out how to handle the Chinese drywall litigation explosion. *See* Tr. at 52:14-53:11. This conclusion is evident from the fact that Banner filed its motion to abate on March 9, three days after its 30-day window for inspection ended and well before its 45-day window for tendering a settlement offer expired.

Through these actions, Banner plainly waived any right it might conceivably have had to an abatement in order to tender a settlement offer. *See* §§ 558.004(2), (5), (6); *cf. Univ. of Miami v. Wilson*, 948 So. 2d 774, 779 (Fla. 3rd DCA 2006) (where plaintiff in medical malpractice action gave prospective defendant pre-suit notice

-23-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

sufficient to enable it to investigate the claim and defendant decided not to propose a settlement, Court would not countenance attack on technical inadequacy of the pre-suit notice). Moreover, since the Harrells still had an unconditional right to reject a settlement offer, § 558.004(7), an order compelling such an abatement would have been an exercise in futility.

In summary, the trial court did not depart from the essential requirements of law in denying Banner's motion to abate. Banner has no right at all to abate this action. And even if it did, Banner waived such a right and squandered the "opportunity to resolve the claim without resort to further legal process," § 558.001, which the Legislature sought to afford it. The trial court wisely refused to engage in an exercise in futility that would only have resulted in unnecessary delay.

## CONCLUSION

Banner's protestations of legal error are unavailing. There was neither a departure from the essential requirements of law here, nor was there any non-discretionary duty to abate this action. Accordingly, the Harrells respectfully request that the Court deny Banner's petition for a writ.

DATED this __8th__ day of September, 2009.

Respectfully submitted,

PODHURST ORSECK, P.A.
*Counsel for Respondents*

-24-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

City National Bank Bldg., Suite 800
25 West Flagler Street
Miami, Florida 33130
Robert C. Josefsberg, Esq.
Florida Bar No. 040856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esq.
Florida Bar No. 503800
vdiaz@podhurst.com
Alexander Rundlet, Esq.
Florida Bar No. 0692301
arundlet@podhurst.com

By: _____

Stephen F. Rosenthal, Esq.
Florida Bar No. 0131458
srosenthal@podhurst.com

–AND–

<table>
<tr><td>

Mark Blumstein, Esq.
Florida Bar No. 0090700
Mark@BlumsteinLaw.com
THE BLUMSTEIN LAW FIRM
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160
Tel: (305) 356-7547
Fax: (305) 356-7539

</td><td>

David H. Lichter, Esq
Florida Bar No. 359122
dlichter@hlglawyers.com
J. Joseph Givner, Esq.
Florida Bar No.850705
jgivner@hlglawyers.com
HIGER LICHTER & GIUVNER, LLP
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160
Tel: (305) 933-9970
Fax: (305) 933-0998

</td></tr>
</table>

-25-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

## CERTIFICATE OF COMPLIANCE WITH
## RULE 9.210(a)(2)

I hereby certify that the type style utilized in this brief is 14 point Times New Roman proportionally spaced.

_____
Stephen F. Rosenthal

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was sent via U.S. First Class mail this __8__ th day of September, 2009, to: Jack R. Reiter, Adorno & Yoss, LLP, 2525 Ponce de Leon Boulevard, Suite 400, Miami, Florida 33134, *Counsel for Petitioner, Banner Supply Co.*

_____
Stephen F. Rosenthal
Fla. Bar No.: 0131458

-26-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com



A

**THE**
**BLUMSTEIN**
**LAW FIRM**

Mark Blumstein, Esquire
Direct No. (305) 356-7547
E-Mail:mark@blumsteinlaw.com

February 3, 2009

**VIA FEDEX OVERNIGHT**

**South Kendall Construction Corp. ("SKCC")**
**Palm Isles Holdings, LLC ("PIH")**
Kieran P. Fallon, Esq., as Registered Agent
Kieran P. Fallon, P.A.
436 SW 8th Street, Suite 200
Miami, FL 33130

**Banner Supply Co. ("Banner")**
Arthur Landers, as Registered Agent
7195 NW 30th Street
Miami, FL 33122

Re:   *Notice of Claim pursuant to Fla. Stat. § 558 by Claimants*

Dear Sir or Madam:

The undersigned represents Jason and Melissa Harrell of 1926 SE 23 Court, Homestead, FL ("Harrell"), Travis and Kelly Johnson of 1924 SE 21 Court, Homestead, FL ("Johnson I"), John and Anne Johnson of 1941 SE 22 Court, Homestead, FL ("Johnson II"), Christopher and Loroy Johnson of 1958 SE 23 Court, Homestead, FL ("Johnson III"), Rafael and Marcela Lugo of 1951 SE 22 Drive, Homestead, FL ("Lugo"), Ingrid Veras of 1932 SE 21 Court, Homestead, FL ("Veras"), Ernest and Kimberly Brown of 2178 SE 20 Avenue, Homestead, FL ("Brown"), as well as Nevinsthon and Marlen Alcindor of 1938 SE 22 Court, Homestead, FL ("Alcindor") (collectively, the "Claimants"). Claimants have or will be filing a lawsuit against you for personal injuries and other damages arising from construction defects with their homes for which you are liable.

Florida Statute § 558 expressly excludes civil actions "asserting a claim for alleged personal injuries arising out of an alleged construction defect" from any requirement to serve a Notice of Claim. *Id.* Accordingly, Plaintiffs claiming personal injuries are under no affirmative obligation to serve you with a Notice of Claim prior to filing a lawsuit. Nonetheless, and without waiving any of their rights, including the right to initiate a lawsuit against you without a Notice of Claim, Claimants hereby serve you with this Notice of Claim.

Demand is hereby made on you to cure Claimants' defective homes. The defects emanate from defective drywall purchased, installed, marketed and/or supplied by you and constructed and/or installed in Claimants' homes. As a result, Claimants' homes are completely defective, including but not limited to the drywall, walls, insulation, outlets, wiring, air conditioners and component parts, tiles, grout as well as other components within the homes adversely impacted by the defective drywall used in construction of the homes.

·SKCC, PIH, BANNER
February 3, 2009
Page 2

Claimants seek immediate relief, including but not limited to the following:

    a.  new homes free of defects plus sections c. and d. below; or

    b.  replacement of –

        (1) all defective drywall with drywall that is safe and complies with applicable safety standards, regulations, codes and ordinances; and

        (2) replacement of all wiring within the homes; and

        (3) replacement of all systems within the homes adversely impacted by the drywall defects; and

        (4) replacement of all personal property in the homes damaged by the defective drywall; plus

    c.  other incidental and consequential damages caused by the defective drywall including personal injuries to those residing in the homes; and

    d.  reasonable attorneys' fees and costs.

Kindly contact the undersigned in writing for purposes of any reasonable inspection and/or destructive testing of Claimants' homes.   We look forward to your immediate attention, cooperation and resolution of the claims referenced herein.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

                    Respectfully Submitted,

**THE BLUMSTEIN LAW FIRM**
*Co-Counsel for Claimants*
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160

Mark Blumstein, Esq.
Florida Bar No. 0090700
(305) 356-7547 (phone)
(305) 356-7539 (fax)
Mark@BlumsteinLaw.com

**HIGER LICHTER & GIVNER, LLP**
*Co-Counsel for Claimants*
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida  33160

David Lichter, Esq.
Florida Bar No.  0359122
(305) 933-9970 (phone)
(305) 933-0998 (fax)
dlichter@hlglawyers.com

**B**

**THE
BLUMSTEIN
LAW FIRM**

Mark Blumstein, Esquire
Direct No. (305) 356-7547
E-Mail:mark@blumsteinlaw.com

February 24, 2009

**VIA FACSIMILE & U.S. MAIL**
Michael P. Peterson, P.A.
8900 Southwest 117th Avenue
Suite C-104
Miami, Florida 33186

Re:    Chapter 558 Notice
        Case No. 09-08401 CA (40) (Miami-Dade County, Florida)

Dear Mr. Peterson:

We are in receipt of your letter dated February 10, 2009 on behalf of your client, Banner Supply Company ("Banner"). We have since been made aware that Banner is represented by Raymond V. Miller, Esq. of Gunster, Yoakley & Stewart, P.A. for the subject litigation. Please confirm if you continue to represent Banner and/or if your representation is limited to the subject notice.

With respect to your request for information pursuant to the above referenced Notice, please be advised that Claimants will reasonably cooperate with your request. Inspections of Claimants homes may be conducted on mutually agreeable dates beginning the week of March 2, 2009 subject to your advanced disclosure of those persons to be testing Claimants' homes, their proposed protocols, and whether destructive testing will be conducted in conjunction with said inspection. Further, please be advised that we are without test results responsive to your request.

We look forward to receipt of your requested inspection dates so we may coordinate same. Should you have any questions, please do not hesitate to contact us.

Sincerely,

**THE BLUMSTEIN LAW FIRM**
*Co-Counsel for Claimants*
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160

Mark Blumstein, Esq.
Florida Bar No. 0090700
(305) 356-7547 (phone)
(305) 356-7539 (fax)
Mark@BlumsteinLaw.com
Cc:     Clients
          File

**HIGER LICHTER & GIVNER, LLP**
*Co-Counsel for Claimants*
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160

David Lichter, Esq.
Florida Bar No. 0359122
(305) 933-9970 (phone)
(305) 933-0998 (fax)
dlichter@hlglawyers.com

Bank of America Building, Suite 402, 18305 Biscayne Boulevard, Aventura, Florida 33160
Telephone (305) 356-7547 • Facsimile (305) 356-7539 • www.blumsteinlaw.com

C

**THE**
**BLUMSTEIN**
**LAW FIRM**

Mark Blumstein, Esquire
Direct No. (305) 356-7547
E-Mail:mark@blumsteinlaw.com

February 24, 2009

**VIA FACSIMILE & U.S. MAIL**
Kieran P. Fallon, Esq.
Kieran P. Fallon, P.A.
436 SW 8th Street, Suite 200
Miami, Florida 33130

   Re:  Case No. 09-08401 CA (40) (Miami-Dade County, Florida)

Dear Mr. Fallon:

We are in receipt of your letter dated February 10, 2009 on behalf of your client, South Kendall Construction Corp. ("SKCC").

Your letter indicates that you are in receipt of a Notice of Claim pursuant to Chapter 558, Florida Statutes for the Harrells and Oteros. Please note that a Notice of Claim has been made on behalf of all of our clients, including the Harrells, the Oteros, the Johnsons (Travis and Kelly), the Johnsons (John and Anne), the Johnsons (Christopher and Loray), Ms. Ingrid Veras, the Browns and the Alcindors. We trust that you are now in receipt of same. If not, please let us know.

Also, your letter indicates that notice is required on the contractors pursuant to a sales contract signed by our clients. Kindly forward us copies of said contracts along with the names and addresses of the contractors after which we will review same and take appropriate action. Your letter also suggests that warranties may be applicable to our clients. If so, kindly forward me copies of any applicable warranties so we may review same and make any applicable claims.

Further, your letter seeks inspections of our clients' homes. As we have previously indicated, inspections may proceed beginning the week of March 2, 2009 subject to your advanced disclosure of those persons to be testing Claimants' homes, their proposed protocols, and whether destructive testing will be conducted in conjunction with said inspection.

Finally, your letter advised that you would be contacting me "to discuss a process to resolve these issues in an expedited manner." We welcome your proposal to resolve our clients' claims expeditiously. We did not hear from you last week, but hope that you will contact us soon with your proposal.

Thank you for your anticipated cooperation. Should you have any questions, please do not hesitate to contact us.

Kieran P. Fallon, Esq.
February 24, 2009
Page 2


Sincerely,

**THE BLUMSTEIN LAW FIRM**
*Co-Counsel for Claimants*
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160

Mark Blumstein, Esq.
Florida Bar No. 0090700
(305) 356-7547 (phone)
(305) 356-7539 (fax)
Mark@BlumsteinLaw.com

**HIGER LICHTER & GIVNER, LLP**
*Co-Counsel for Claimants*
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160

David Lichter, Esq.
Florida Bar No. 0359122
(305) 933-9970 (phone)
(305) 933-0998 (fax)
dlichter@hlglawyers.com

Cc:    Clients
       File

D

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT OF
FLORIDA IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

JASON HARRELL and MELISSA HARRELL,
Individually, on Behalf of their Minor Children
and on behalf of all others similarly situated,

CASE NO.: 09-08401 CA (40)

COMPLEX BUSINESS LITIGATION

          *Plaintiffs*,

**CLASS REPRESENTATION**
**JURY TRIAL DEMANDED**

vs.

SOUTH KENDALL CONSTRUCTION
CORP., a Florida corporation; PALM ISLES
HOLDINGS, LLC, a Florida limited liability
company; KEYS GATES REALTY, INC., a
Florida corporation; BANNER SUPPLY CO.,
a Florida corporation; KNAUF
PLASTERBOARD TIANJIN CO., LTD., a
Foreign corporation; ROTHCHILT INT'L.,
LTD., a Foreign corporation and DOES #1-#10,
Unknown Persons,

          *Defendants*.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT SOUTH KENDALL CONSTRUCTION CORP.'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO ABATE

      Plaintiffs, JASON HARRELL and MELISSA HARELL, on behalf of their Minor Children

and all others similarly situated, submit the following response to South Kendall Construction

Corp.'s ("SKCC") Motion to Dismiss or in the Alternative to Abate Proceedings (the "Motion to

Dismiss/Abate").   Plaintiffs assert straightforward products liability and related claims against

SKCC arising out of its construction, marketing and sale of a home to Plaintiffs that contains

defective drywall. SKCC relies on provisions of the contract entered into between Plaintiffs and

H:\LIB\DOCS\40120\11209\CM7396.WPD

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

CASE NO.: 09-08401 CA (40)

it or chose the language and any ambiguity will be construed *strongly against the party making use of such language*") (emphasis added).

The contract language contemplating that the "Resolution of Disputes," Compl., *Exhibit A,* ¶ 18, must be tried in a court of competent jurisdiction flatly contradicts the provision relied upon by SKCC suggesting that disputes should be referred to mediation. SKCC cannot escape the fact that *Exhibit A* is a form contract of which it is the drafter and, accordingly, the provisions must be construed against SKCC. SKCC's argument that the contract between Plaintiffs and SKCC requires that Plaintiffs' claims are barred from this Court and that the dispute must be submitted to alternative dispute resolution procedures must be rejected. The Motion to Dismiss/Abate on this ground should therefore be denied. *See American Agronomics,* 309 So.2d at 584; *Hancock,* 580 So.2d at 783; *MacIntyre,* 347 So.2d at 1083; *Nicholas,* 119 So.2d at 728.

**IV.    SKCC'S REQUEST THAT PLAINTIFFS' CLAIMS BE ABATED IS NOT SUPPORTED BECAUSE PLAINTIFFS INDEED PROVIDED NOTICE OF THEIR CLAIMS TO SKCC AND HAVE PLEADED THIS FACT IN THE COMPLAINT**

In further support of its argument that this action should be abated, SKCC also relies upon the erroneous assertion that Plaintiffs have not placed it on notice of the defects alleged in this action. *See* Motion to Dismiss/Abate at 2 (¶ 2). Contrary to this assertion, Plaintiffs *have* indeed provided notice of their claims to SKCC. This notice was given as early as July 8, 2008 of last year and several times thereafter, as reflected in the emails attached hereto as *Exhibit A* (redacted to remove privileged communications between Plaintiffs and counsel). Despite *multiple* written attempts -- for example, on July 8, 2008, August 18, 2008, September 23, 2008, and January 26, 2009 -- to obtain relief from SKCC, Plaintiffs have not been made whole. *See id.* The fact that

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346        www.podhurst.com

CASE NO.: 09-08401 CA (40)

Plaintiffs provided written notice of their claims, beginning in July 2008 (more than *seven (7) months before* the Complaint was filed) clearly demonstrates Plaintiffs' compliance with the 90-day Cure Period set forth in the contract. *See* Compl., *Exhibit A* at ¶ 14.2.2.3.[5] Moreover, contrary to SKCC's argument, Plaintiffs indeed alleged that they provided notice to SKCC on several occasions and, as of the date of filing of the Complaint, had not received any relief from SKCC: "Plaintiffs provided to SKCC and/or its assigns written notice of the defects with their home on several occasions, which SKCC and its assigns failed to repair." Compl. ¶ 28. *See also id.* at ¶ 45 ("Plaintiffs made demands on SKCC its assigns, and/or affiliates, including PIH, for repairs to home pursuant to the warranty. However, SKCC, its assigns and/or affiliates, including PIH, failed to resolve the problem.").

Plaintiffs' well-pleaded allegations must be accepted as true in consideration of SKCC's request that Plaintiffs' claims be dismissed, *see Ralph*, 471 So.2d at 2; *Orlando Sports Stadium*, 262 So.2d at 883; *Conley*, 616 So.2d at 524-25, and Plaintiffs' emails putting SKCC on notice of its claims as early as July 2008, *see Exhibit A*, must be considered in response to SKCC's request that Plaintiffs' claims be abated. These allegations and attachments demonstrate that Plaintiffs have indeed served notice of their claims on SKCC, have alleged this fact, and thus the Motion to Dismiss/Abate should be denied

## CONCLUSION

SKCC has failed to demonstrate strict compliance with § 558.003, Fla. Stat., which requires,

---

[5]This paragraphs provides: "Without limiting the foregoing, Buyer shall not bring any litigation against Seller respecting the Home until the expiration of the Cure Period (which shall be deemed to be ninety (90) days from Seller's receipt of Buyer's written notice unless Seller agrees in writing to any shorter period.")." Compl, *Exhibit A* at ¶¶ 14.2.2.3.

H:\LIB\DOCS\40120\11209\CM7396.WPD

Podhurst Orseck, P.A.

11

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

**EXHIBIT A**

**TO**

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS/ABATE FILED BY SOUTH KENDALL CONSTRUCTION CORP.**

----- Forwarded Message ----
**From:** Jason A. Harrell <harrelljason@yahoo.com>
**To:** customerservice@southkendall.net; Melissa Harrell <missyharrell@yahoo.com>
**Sent:** Tuesday, July 8, 2008 6:01:17 PM
**Subject:** Re: 1926 SE 23 Court

Toni,

   One last thing. I did some touch up paint after moving in and after some work was done in the house. The paint kit that the painters gave us does not match the paint. The color seems correct however, there is a difference in the two paints. If Tim needed to see what I am talking about any upstairs door has areas touched up, and to me it seems like we were given maybe a latex when the trim paint was oil or that it was a semi gloss versus something else???

TKS,

Jason

--- On **Tue, 7/8/08, Melissa Harrell <_missyharrell@yahoo.com_> wrote:**

From: Melissa Harrell <missyharrell@yahoo.com>
Subject: 1926 SE 23 Court
To: customerservice@southkendall.net
Cc: "Jason Harrell" <harrelljason@yahoo.com>, missyharrell@yahoo.com
Date: Tuesday, July 8, 2008, 3:35 PM

Toni,

Thank you for taking my call today. These are a list of items we are having issues with. Please see what can be done to get these corrected. The first bullet is urgent.

    1. A couple of weeks ago I noticed a mildew type smell in the Master Bath & in the garage that was not there before, I could not find the source, no water or anything that appeared to be leaking. I just went into the garage to move

1

boxes (still unpacking) and found the ceiling has parts falling off and there is a 3 foot line of water damage inside the garage to the far back right. It looks like a pipe or something that is causing the damage. (I am only guessing).

2. The front downstairs bedroom never cools down, stays warm as if the AC does not work in the room, even with the fan on and the shutters closed, this room does not stay cool.

3. We added an outlet upstairs for the Master TV and if we plug anything else into the outlet it trips the breaker. This has happened several times.

4. A couple of dry wall areas in bathroom that need to be corrected around outlets. The outlet in downstairs bath sinks into the wall.

Thanks again so much!

Jason & Melissa Harrell

New Home # 305-230-1880

Melissa Cell – 919-602-4013

Jason Cell – 305-970-8384

**Cc:** Jason Harrell <harrelljason@yahoo.com>; missyharrell@yahoo.com
**Sent:** Monday, August 18, 2008 10:45:59 PM
**Subject:** 1926 SE 23 Court

Dear Toni or To Whom this may concern,

1) After returning from vacation on Saturday, I noticed water leaking from the ceiling in the family/living room and the living room wall. I also immediately noticed the house was extremely warm, although the AC unit sounded like it was running continuously. I went upstairs to check the unit and found a large puddle of water on the floor under the AC unit. I also noticed condensation all over the unit. I immediately turned the unit off and cleaned the water up while placing towels and pans to catch the rest of moisture. I opened the AC cover to see if I could get the rest of the water cleaned up to prevent any further damage to the ceiling, but when I opened the cover I saw all of the coils covered in a block of ice. I also saw mold all over the cover and the coils. I called and left a message at your office as well as a emergency message for the AC company. The AC company called me back this morning (Monday) and they came this afternoon to assess the problem. The technician said that there is a possible leak in the gas and he replaced the gas tank and said that he would have to come back on Wednesday to further asses the issue. He told me that I could turn the AC back on, but that the same problem would eventually happen again until they find and correct the problem or leak.

2) Also, as reported previously, I have smelled a mold smell in the master bathroom. We opened one wall and could not identify the problem. I still don't know the exact cause of the smell, but I do know for a fact that the faucet over the tub is creating all the caulking to turn moldy even after cleaning. I think that when the faucet was changed out prior to our closing, that water is leaking behind that tile and down to that caulking. Not sure if this is the cause of the smell or an unrelated issue. Also, the shower is not caulked and I want to be sure there is no issue there.

I have a very sensitive nose to mold as myself and my youngest son are very allergic to all indoor/outdoor molds. It is very important we work together to eliminate and prevent any further issues related to water damage & mold.

Thank you very much for you assistance in advance,
Melissa Harrell
305-230-1880 Home
919-602-4013 Cell

1

**To:** Melissa Harrell <missyharrell@yahoo.com>; customerservice@southkendall.net
**Sent:** Monday, August 25, 2008 9:57:20 PM
**Subject:** RE: 1926 SE 23 Court

Toni or whom this may concern,

Also I noticed that the French doors in the Dining room area, at the top of the door, would not lock.

TKS,

## Jason A. Harrell

**From:** Melissa Harrell [mailto:missyharrell@yahoo.com]
**Sent:** Monday, August 18, 2008 10:46 PM
**To:** customerservice@southkendall.net
**Cc:** Jason Harrell; missyharrell@yahoo.com
**Subject:** 1926 SE 23 Court

Dear Toni or To Whom this may concern,

1) After returning from vacation on Saturday, I noticed water leaking from the ceiling in the family/living room and the living room wall. I also immediately noticed the house was extremely warm, although the AC unit sounded like it was running continuously. I went upstairs to check the unit and found a large puddle of water on the floor under the AC unit. I also noticed condensation all over the unit. I immediately turned the unit off and cleaned the water up while placing towels and pans to catch the rest of moisture. I opened the AC cover to see if I could get the rest of the water cleaned up to prevent any further damage to the ceiling, but when I opened the cover I saw all of the coils covered in a block of ice. I also saw mold all over the cover and the coils. I called and left a message at your office as well as a emergency message for the AC company. The AC company called me back this morning (Monday) and they came this afternoon to assess the problem. The technician said that there is a possible leak in the gas and he replaced the gas tank and said that he would have to come back on Wednesday to further asses the issue. He told me that I could turn the AC back on, but that the same problem would eventually happen again until they find and correct the problem or leak.

2) Also, as reported previously, I have smelled a mold smell in the master bathroom. We opened one wall and could not identify the problem. I still don't know the exact cause of the smell, but I do know for a fact that the faucet over the tub is creating all the caulking to turn moldy even after cleaning. I think that when the faucet was changed out prior to our closing, that water is leaking behind that tile and down to that caulking. Not sure if this is the cause of the smell or an unrelated issue. Also, the shower is not caulked and I want to be sure there is no issue there.

I have a very sensitive nose to mold as myself and my youngest son are very allergic to all indoor/outdoor molds. It is very important we work together to eliminate and prevent any further issues related to water damage & mold.

Thank you very much for you assistance in advance,
Melissa Harrell
305-230-1880 Home
919-602-4013 Cell

1

**From:** Melissa Harrell <missyharrell@yahoo.com>
**To:** Melissa Harrell <missyharrell@yahoo.com>; customerservice@southkendall.net
**Cc:** Jason Harrell <harrelljason@yahoo.com>
**Sent:** Tuesday, September 23, 2008 9:43:16 PM
**Subject:** Re: 1926 SE 23 Court- AC Unit

Toni,

I am writing this again to say that I no longer have a function AC unit as it froze up again and leaked a ton of water out of it tonight (9/23/08). I have attached a video clip so that you can see what I am talking about.  I had emptied the pan 4 times prior to shooting the video clip.

I do understand that the part is on back order, but until that part is in, the AC company has to be proactive about keeping the unit charged.  Wouldn't you agree? As I also mentioned our electricity bill is ridiculously high due to this issue.  Who can compensate for this?  Not to mention, the continuous cleaning up of the water, the damage to the house and our inconvenience of having not AC.

Sorry to be complaining like this, it's just been 5 weeks since we first reported the issue.  Please call me and let me know when they can service it. I have to have AC tomorrow (Wed) I have 14 people coming for Bible study.

Thanks for your help in advance!

Melissa Harrell

305-230-1880 Home
919-602-4013 Cell

----- Original Message ----

Dear Toni or To Whom this may concern,

1

1) After returning from vacation on Saturday, I noticed water leaking from the ceiling in the family/living room and the living room wall. I also immediately noticed the house was extremely warm, although the AC unit sounded like it was running continuously. I went upstairs to check the unit and found a large puddle of water on the floor under the AC unit. I also noticed condensation all over the unit. I immediately turned the unit off and cleaned the water up while placing towels and pans to catch the rest of moisture. I opened the AC cover to see if I could get the rest of the water cleaned up to prevent any further damage to the ceiling, but when I opened the cover I saw all of the coils covered in a block of ice. I also saw mold all over the cover and the coils. I called and left a message at your office as well as a emergency message for the AC company. The AC company called me back this morning (Monday) and they came this afternoon to assess the problem. The technician said that there is a possible leak in the gas and he replaced the gas tank and said that he would have to come back on Wednesday to further asses the issue. He told me that I could turn the AC back on, but that the same problem would eventually happen again until they find and correct the problem or leak.

2) Also, as reported previously, I have smelled a mold smell in the master bathroom. We opened one wall and could not identify the problem. I still don't know the exact cause of the smell, but I do know for a fact that the faucet over the tub is creating all the caulking to turn moldy even after cleaning. I think that when the faucet was changed out prior to our closing, that water is leaking behind that tile and down to that caulking. Not sure if this is the cause of the smell or an unrelated issue. Also, the shower is not caulked and I want to be sure there is no issue there.

I have a very sensitive nose to mold as myself and my youngest son are very allergic to all indoor/outdoor molds. It is very important we work together to eliminate and prevent any further issues related to water damage & mold.

Thank you very much for you assistance in advance,
Melissa Harrell
305-230-1880 Home
919-602-4013 Cell

**From:** Jason A. Harrell <harrelljason@yahoo.com>
**To:** customerservice@southkendall.net
**Cc:** Melissa Harrell <missyharrell@yahoo.com>
**Sent:** Monday, January 26, 2009 2:18:55 PM
**Subject:** 1926 SE 23rd CT

Toni,

   Per our conversation today I have noticed the following problems at the house.  I will be home after 1 PM tomorrow, although the sprinkler problem mentioned should not require me to be there.  That is the one I am concerned about immediately as the grass is taking a beating.

- Sprinkler system inoperative.  I suspect it has something to do with the motor.  I tuned on the system manually and it makes a noise for about 10 seconds and then de-energizes the motor.
- Outlets in the master bedroom are shorting out or something.  There are two outlets in the Master Bedroom that when you plug into them, the other outlets in the bedroom lose power.
- There is still a mold smell in the Master Bath
- Paint given to us at move in, specifically the trim is still mismatched and noticeable.  Same for the repair in the downstairs ceiling after the AC unit leaked.

Thanks for helping us get this resolved.

All the best,

Jason

1