## IN THE UNITED STATE DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TIMOTHY PERRY and | * | MDL Docket No. 2047 |
| TRACEY PERREY | * | |
| PLAINTIFFS | * | |
| | * | Judge Eldon E. Fallon |
| V. | * | |
| | * | Magistrate Judge Joseph C. Wilkerson, Jr. |
| KNAUF GIPS KG; | * | |
| KNAUF PLASTERBOARD | * | Section L |
| TIANJIN COMPANY, LTD | * | |
| SUN CONSTRUCTION, LLC | * | |
| SUNRISE CONSTRUCTION, LLC | * | |
| FICTITIOUS DEFENDANTS A - Z | * | |
| DEFENDANTS | * | |

Case No. 2:09cv5500 L/2

### FIRST AMEMDED COMPLAINT
### JURY TRIAL DEMANDED

Plaintiffs Timothy Perry and Tracy Perry bring this action against Defendants, KNAUF GIPS

KG, KNAUF PLASTERBOARD TIANJIN CO., LTD., SUN CONSTRUCTION, LLC, SUNRISE

CONSTRUCTION & DEVELOPMENT, LLC, and FICTITIOUS DEFENDANTS A-Z, and for their

Complaint allege, upon information and belief and based on the investigation to date of counsel, as

follows:

### INTRODUCTION

1.      Plaintiffs bring this action for damages arising out of the construction of the Perrys'

home in Gulfport, Mississippi with defective drywall.

2.      The drywall manufactured, processed, distributed, delivered, supplied, inspected,

marketed, and/or sold by the Knauf Defendants to build  Plaintiffs' home is defective and emits

levels of sulfur, methane and/or other volatile organic chemical compounds that cause corrosion of

HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items, And can create noxious, "rotten egg-like" odors. Knaufs' defective gypsum drywall further causes allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns. Defendants drywall was inherently defective and not suitable for its intended use.

## JURISDICTION AND VENUE

3.      Planitffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

4.      This Court has subject matter jurisdiction as Plaintiffs and Defendants are citizens of different states and the amount in controversy of this Class action exceeds $75,000.00, exclucive of interest and costs.

5.      Venue for this cause is proper in the Southern District of Mississippi, pursuant to and in accordance with 28 U.S.C. §1391.

## THE PARTIES

6.      Plaintiffs, adult resident citizens of Harrison County, Mississippi, own a home located in Gulfport, Mississippi. Plaintiffs' home was built by Sunrise using Defendants' defective drywall.

7.      Sun Construction, LLC is a Louisiana limited liability company conducting business in Mississippi, and may be served with process by serving its registered agent Julien K. Byrne, III, at 311 East Second Street, Pass Christian, Mississippi 39571.

8.      Sunrise Construction and Development, LLC is a Louisiana limited liability company doing business in the State of Mississippi, which may be served with process by serving it by

2

certified mail at 1208 Belair Boulevard, Slidell, Louisiana 70460.

9.    Upon information and belief, Defendant, Knauf Gips' affiliates, Gebr. Knauf

Verwaltungsgsellschaft KG, owns a substantial stake in Defendant, USG. Knauf Gips is a leading

manufacturer of building materials and systems. Defendant, Knauf Gips, together with its affiliates,

including Defendant, Knauf Tianjin, provides building materials and systems to customers in over

50 countries, including the United States. Upon information and belief, at all material times hereto

Defendant, Knauf Gips, supervised, operated, trained and otherwise exercised control and/or had the

right to control the operations of Defendant, Knauf Tianjin, and its agents, apparent agents and

employees. Defendants, KNAUF GIPS and KNAUF TIANJIN, may be served with process through

their registered agent, Robert H. Claxton, One Knauf Drive, Shelbyville, IN 46176.

10.    Among other things, in 1995, Knauf Gips introduced its advanced production

techniques and technology into China. From 1997 through 2001, Defendant, Knauf Gips,

established three plasterboard plants in China located in Wuhu, Tianjin and Dongguan. The product

quality of all Defendant, Knauf Gips', plants in China, including Defendant, Knauf Tianjin, are

strictly controlled according to the requirements of Knauf Gips' headquarters in Germany.

Defendant Knauf Gips' sales and technical suport teams support Knauf Gips' bussinesses throughout

the world, including Defendant, Knauf Tianjin, in China. Defendant, Knauf Tianjin, and its

employees are the actual and/or apparent agents of Defendant, knauf Gips.

11.    Upon information and belief Knauf Gips, together with its affiliates and/or actual or

apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed into

the stream of commerce gypsum drywall with the expectation that the drywall would be purchased

3

by thousands of consumers, if not more, within the State of Mississippi.. Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Mississippi and their drywall was installed in numerous homes in Mississippi. Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Mississippi, defective gypsum drywall that was installed in Plaintiffs' home. Moreover, Knauf Gips and /or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Mississippi.

12.     Upon information and belief, Knauf Plasterboard Tianjin Co., Ltd., is a Chinese corporation with its principal place of business located at North Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400 P.R.C., and at all times material, conducted business in the State of Mississippi. Knauf Tianjin is involved in the manufacturing and saleof gypsum drywall. Defendant, Knauf Tianjin is the actual and/or apparent agent of Defendant, Knauf Gips. Upon information and belief, Knauf Tianjin individually and/or together with and at the direction and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more within the State of Mississippi. Defendants, Knauf Tianjin and/or Knauf Gips, have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Mississippi and their drywall was installed in numberous homes in Mississippi. Defendants, Knauf Tianjin and/or dKnauf Gips, manufacture and sold, directly and indirectly, to certain suppliers in the State of Mississippi defective gypsum drywall that was installed in Plaintiffs' home and the homes of the Plaintiff Class Members. Moreover, Knauf Gips and/or

4

Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Mississippi.

13.    Fictitious Defendants A through Z, are various unidentified individuals and/or entities, presently unknown to the Plaintiffs, who may be responsible, in part for the conduct complained of herein for th manufacture and distribution of the drywall in question which resulted in injuries to the Plaintiffs. Plaintiffs are making diligent inquiries to determine the identity and whereabouts of Fictitious Defendants A through Z. Plaintiffs will, with leave of Court, replace Fictitious Defendants A through Z as named Defendants in this action by amendment or supplemental pleadings in accordance wit Rule 15 of the Federal Rules of Civil Procedure, as soon as practical as they are identified, with their service relating back to the original date of the filing of this action.

## JURISDICTION and VENUE

14.    This Court has personal jurisdiction over Defendants because they are engaged in substantial and not isolated activity within this state. Additionally, Plaintiffs' causes of action arise from Defendants personally or through their agents, causing injury to property within the State of Mississippi arising out of acts or omissions of Defendants, outside the State of Mississippi, and at the time of the injury, products, materials, or things manufactured by the Knauf Defendants, were used and consumed within the State of Mississippi in the ordinary curse of commerce, trade or use.

## GENERAL ALLEGATIONS

15.    In connection with the construction of homes in the State of Mississippi, Sun Construction LLC and Sunrise Construction and Development, LLC ("Builders") purchased gypsum drywall, either directly or indirectly, from various unidentified suppliers (collectively, the

"Suppliers").

16.    Upon information and belief, the Suppliers purchased, directly and/or indirectly, gypsum drywall that was manufactured in China by Knauf and Taishan, and possibly other unknown Chinese manufacturers (collectively, the "Manufacturers").

17.    The Knauf Defendants negligently manufactured, processed, distributed, supplied, inspected, marketed and/or sold defective gypsu drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

18.    The Knauf Defendants' drywall was on information and belief, made with waste from scrubbers on coal-fired power plants, also called "fly ash." These materials can leak into the air and emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

19.    When combined with moisture in the air, these sulfur compounds create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing - creating leaks, blackening coils and causing HVAC systems, appliances, and refrigerators to fail. Sulfuric acid has also been shown to corrode copper electrical wiring and plumbing components. Not only does it blacken and corrode coils, it can harm metals such as chrome, brass and silver.

20.    The defective drywall affects HVAC systems and refrigerators, and also affects and require replacement of all sorts of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware. Plaintiffs have had multiple problems with their homes HVAC systems, electronics and electrical systems.

21.    Defendants' actions will require Plaintiffs to remedy all defective drywall, perform

6

extensive remedial repairs to the homes, and then repair the damaged property made visible during the performance of these repairs.

22.    As a result, Plaintiffs have suffered, and continue to suffer damages as a result of Defendants' defective drywall and the corrosive effects of the sulfur compounds. These damages include, but are not limited to, the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property. Plaintiffs have also suffered and continue to suffer personal injuries as a result of Defendants' defective drywall, including, but not limited to, allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

23.    Defendants' actions also resulted in substantial diminution in the value of Plaintiffs' home.

### COUNT I
### VICARIOUS LIABILITY
### (Against Defendant Knauf Gips)

24.    Plaintiffs repeat, reiterate and reallege the preceding paragraphs of the Complaint, with the same force and effect as if fully set forth herein.

25.    This is an action for vicarious liability against Defendant Knauf Gips for the negligent and wrongful acts of its actual and/or apparent agent, Defendant Knauf Tianjin.

26.    Defendant Knauf Gips established Defendant Knauf Tianjin in China and at all times material, exercised strict control over Defendant Knauf Tianjin's operations in accordance with the requirements of Defendant Knauf Gips's headquarters in Germany. Defendant Knauf Gips is, and at all times material was, responsible for implementing and supervising the quality control measures

7

to be used by Defendant Knauf Tianjin.

27.    By establishing Defendant Knauf Tianjin in China, and by exercising strict control over Defendant Knauf Tianjin's conduct and operations, Defendant Knauf Gips acknowledged that Defendant Knauf Tianjin would act on its behalf as its actual and/or apparent agent.

28.    Defendant Knauf Tianjin accepted the undertaking to act of Defendant Knauf Gips' behalf.

29.    Upon information and belief, Defendant dKnauf Gips supervises, monitors, and controls Defendnat Knauf Tianjin's daily conduct and operations, including the manufacturing, distribution, marketing and sale of Defendant Knauf Tianjin's drywall products. Furthermore, upon information and belief, Defendant Knauf Gips is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Defendant Knauf Tianjin.

30.    As such, Defendant Knauf Gips is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Defendant Knauf Tianjin.

31.    As a result of Defendants Knauf Gips' and/or Knauf Tianjins's wrongful conduct, Plaintiff and the Plaintiff Class Members have suffered and will continue to suffer damages.

32.    As a result of the foregoing acts and omissions, Plaintiff and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiffs and the Plaintiff Class members will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT II
## NEGLIGENCE AND NEGLIGENCE PER SE
## (Against Defendants Knauf Gips and Knauf Tianjin)

33.     Plaintiffs reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

34.     Defendants, Knauf Gips and Knauf Tianjin, had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall the Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause did not cause damage as described herein.

35.     Defendants, Knauf Gips and Knauf Tianjin breached their duty b failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall Defendants placed into the stream of commerce in that Defendants knew or should have known that the product was defective , did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

36.     The negligence of the Defendants, their agents, servants, and/or employees, included, but was not limited to , the following acts and/or omissions:

a.     manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and selling drywall with out adequately testing it;

b.     negligently failing to adequately and correctly warn the Plaintiffs and Plaintiff Class Members and the public, of the dangers of Defendants' drywall;

c.     negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

      d.     negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

      e.     negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

      f.     negligently manufacturing drywall in a manner which was dangerous to its users;

      g.     improperly concealing and/or misrepresenting information from the Plaintiffs and/or the public, concerning the severity of risks and dangers of Defendants' Drywall and/or the manufacturing defect.

      37.     Defendants were negligent in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Defendants' drywall in that they:

      a.     failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

      b.     failing to conduct adequate testing to determine the safety of their drywall; and

      c.     failing to warn Plaintiffs prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

      38.     Upon information and belief, despite the fact that Defendants knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defect, Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs and/or the consuming public.

      39.     Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth herein.

      40.     Defendants actions and/or inactions, as set forth herein, by virtue of violating

10

statutes, ordinances and/or rules and/or regulations, constitutes negligence per se.

41.     Defendants knew or should have known that homeowners such as the Plaintiffs would foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

42.     Defendants' negligence was the proximate cause of Plaintiffs; damages, injuries, harm and economic loss which they suffered and will continue to suffer.

43.     By reason of the foregoing, Plaintiffs experienced and/or are at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

44.     As a result of the foregoing acts and omissions, Plaintiffs' homes will require extensive reconstruction and repairs, and Plaintiffs will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege that they will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT III
## STRICT PRODUCTS LIABILITY
### (Against Defendant Knauf and Knauf Tianjin)

45      Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

46.     At all times herein mentioned, Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiffs' home.

47.     Defendants' drywall was expected to, and did, reach the usual consumers, handlers,

11

and persons coming into contact with said product without substantial change in the condition which it was manufactured, processed, distributed, delivered, supplied, inspected and/or sold by the Defendants.

48.    At those times, the Defendants' drywall was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to homes and, in particular, Plaintiffs' home and the homes of the Plaintiff Class Members.

49.    Defendants drywall were so defective in design or formulation or manufacture that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants drywall.

50.    At all times herein mentioned, Defendants drywall was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form an manner as provided by Defendants.

51.    Defendants knew, or should lhave known, that at all times herein mentioned Defendants' drywall was/is inherently dangerous and unsafe.

52.    At the time of use of Defendants' drywall by Plaintiffs, Plaintiffs used the drywall for the purposes and manner normally intended.

53.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

54.    Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiffs.

55.    Defendants manufactured, processed, distributed, delivered, supplied, inspected,

12

marketed and/or sold a defective product which created an unreasonable risk to the Plaintiffs' home as well as to the health of Plaintiffs. Defendants are, therefore, strictly liable for the damages and injuries sustained by Plaintiffs.

56.     Plaintiffs, acting as a reasonably prudent person, could not discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

57.     By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiffs for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendants' drywall.

58.     Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendant.

59.     Said defects in Defendants' drywall were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at increased risk of damage and/or placing Plaintiffs at increased risk of damage and/or harm.

60.     As a direct and proximate result of the defective condition of Defendants' drywall as manufactured and sold by Defendants, Plaintiffs suffered, and will continue to suffer damages.

61.     By reason of the foregoing, Plaintiffs experienced, and/or at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

62.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that they will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

13

## COUNT IV
## FRAUDULENT MISREPRESENTATION
### (Against Defendants Knauf Gips and Knauf Tianjin)

63.      Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

64.      Defendants falsely and fraudulently represented to Plaintiffs and the consuming public in general that Defendants' drywall had been tested and was found to be safe and/or effective for use.

65.      That representation made by Defendants was, in fact, false.

66.      When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

67.      These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs and/or the consuming public, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiffs.

68.      At the time the aforesaid representations were made by Defendants and, at the time the Plaintiffs and Plaintiff Class Members, Defendants' drywall, the Plaintiffs were unaware of the falsity of said representations and reasonable believed them to be true.

69.      In reliance upon said representations, the Plaintiffs home was built using Defendants' drywall thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

70.      Said Defendants knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

71.      Defendants knew, or should have known, that Defendants' drywall had a potential

14

to, could, and would cause severe damage and injury to homeowners.

72.    Defendants brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs.

73.    By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, financial damage and injury.

74.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT V**
**FRAUDULENT CONCEALMENT**
**(Against Defendants Knauf Gips and Knauf Tianjin)**

75.    Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

76.    At all times material hereto, Defendants misrepresented the safety of Defendants' drywall.

77.    Defendants knew, or were reckless in not knowing, that its representations were false.

78.    Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

79.    Defendants fraudulently concealed, and/or intentionally omitted, the fact that

15

Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

80.     Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

81.     Defendants were under a duty to disclose to Plaintiffs and the Plaintiff Class Members, the aforementioned as it pertains to Defendants' drywall.

82.     Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

83.     Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

84.     Defendants knew that Plaintiffs and/or the consuming public, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

85.     Plaintiffs, and/or the consuming public, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

86.     As a result of the foregoing acts and omissions, Plaintiffs will require extensive re-construction and repairs, and will incur repair and replacement costs, repairs for appliances, medical

16

expenses, incidental, and other related expenses.  Plaintiffs are informed and believe, and further

allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement

costs, and/or medical, care attention, and services.

## COUNT VI
## VIOLATION OF THE MISSISSIPPI CONSUMER
## PROTECTION LAWS
## (Against Defendants Knauf Gips and Knauf Tianjin)

87.    Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint,

with the same force and effect as if fully set forth herein.

88.    This action is brought to secure redress for the unlawful, deceptive and unfair trade

practices, perpetrated by Defendants Knauf Gips, and Knauf Tianjin.

89.    Defendants, Knauf Gip's and Knauf Tianjin's, actions and/or omissions as described

herein violate Mississippi law, which was enacted to protect the consuming public from those who

engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices

in the conduct of any trade or commerce.

90.    Specifically, Defendants, Knauf Gips and Knauf Tianjin, misrepresented and omitted

material information regarding their drywall by failing to disclose known risks.

91.    Defendants, Knauf Gip's, and Knauf Tianjin's, misrepresentations and concealment

of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses,

misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with

the intent that others rely on such concealment, suppression, or omission in connection with the sale

and use of Defendants' drywall in violation of Mississippi law.

17

92.    Defendants, Knauf Gips and Knauf Tianjin, violated Mississippi law by knowingly and falsely representing that Defendants' drywall was fit to be used for the purpose for which they were intended, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

93.    Defendants, Knauf Gips and Knauf Tianjin, engaged in the deceptive acts and practices alleged herein in order to sell Defendants' drywall to the public, including Plaintiffs.

94.    Said acts and practices on the part of Defendants, Knauf Gips and Knauf Tianjin, were and are illegal and unlawful pursuant to Mississippi law.

95.    As a direct and proximate result of Defendants, Knauf Gips', and Knauf Tianjin's violations of Mississippi law, Plaintiffs have suffered damages.  Plaintiffs and Plaintiff Class Members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

**COUNT VII**
**BREACH OF WARRANTY**
(Against Builders)

96.    Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

97.    Builders expressly and impliedly warranted to Plaintiffs that Plaintiffs' home would be constructed in a workmanlike manner, free from defects in workmanship and materials. Builders' use of Chinese drywall was in breach of all warranties to Plaintiffs, proximately causing Plaintiffs damages. Builders notified Plaintiffs of the presence of Chinese drywall in Plaintiffs' home but Builders have failed and/or refused to cure the known defect and breach.

18

## COUNT VIII
## NEGLIGENCE
(Against Builders)

98.    Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

99.    Builders owed Plaintiffs a duty to construct Plaintiffs' home using ordinary and reasonable care.  Builders ' use of defective Chinese drywall was in breach of this duty, and proximately caused Plaintiffs' injuries and damages.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.    Equitable, injunctive, and declaratory relief;

b.    Damages in an amount to be determined at trial;

c.    Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.    Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

e.    The costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees;

f.    All statutory damages;

g.    Disgorgement of Defendants' profits from the sale of drywall;

h.    Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiffs may be entitled;

19

i.    Such other and further relief under all applicable state and federal law and any other

relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable.

TIMOTHY PERRY and TRACY PERRY

By:___/s/ David McMullan, Jr._____
      David McMullan, Jr.

David McMullan, Jr.(MSB 8494)
Don Barrett (MSB 2063)
Katherine B. Riley (MSB 99109)
DON BARRETT, P.A.
404 Court Square
P.O. Box 987
Lexington, MS 39095
Tel: (662) 834-2376
Fax: (662)834-2628
dmcmullan@barrettlawoffice.com

Dewitt M. Lovelace
LOVELACE LAW FIRM, P.A.
Lovelance Bldg., Suite 200
Miramar Beach, FL 32550
Tel. (850) 837-6020
Fax. (850) 837-4093

Richard R. Barrett (MSB 99108)
Richard R. Barrett Law Offices, PLLC
404 Court Square
P.O. Box 987
Lexington, MS 39095
Tel. (662) 834-4960
Fax (866) 4305459