

## EXHIBIT "A"

West's Florida Statutes Annotated Currentness
   Title XXXIII. Regulation of Trade, Commerce, Investments, and Solicitations (Chapters 494-560)
    ➡ Chapter 558. Construction Defects
    ➡ **558.001. Legislative findings and declaration**

The Legislature finds that it is beneficial to have an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of property owners. An effective alternative dispute resolution mechanism in certain construction defect matters should involve the claimant filing a notice of claim with the contractor, subcontractor, supplier, or design professional that the claimant asserts is responsible for the defect, and should provide the contractor, subcontractor, supplier, or design professional with an opportunity to resolve the claim without resort to further legal process.

### 558.002. Definitions

As used in this chapter, the term:

(1) "Action" means any civil action or arbitration proceeding for damages or indemnity asserting a claim for damage to or loss of real or personal property caused by an alleged construction defect, but does not include any administrative action or any civil action or arbitration proceeding asserting a claim for alleged personal injuries arising out of an alleged construction defect.

(2) "Association" has the same meaning as in s. 718.103(2), s. 719.103(2), or s. 720.301(9), or s. 723.075.

(3) "Claimant" means a property owner, including a subsequent purchaser or association, who asserts a claim for damages against a contractor, subcontractor, supplier, or design professional concerning a construction defect or a subsequent owner who asserts a claim for indemnification for such damages. The term does not include a contractor, subcontractor, supplier, or design professional.

(4) "Construction defect" means a deficiency in, or a deficiency arising out of, the design, specifications, surveying, planning, supervision, observation of construction, or construction, repair, alteration, or remodeling of real property resulting from:

(a) Defective material, products, or components used in the construction or remodeling;

(b) A violation of the applicable codes in effect at the time of construction or remodeling which gives rise to a cause of action pursuant to s. 553.84;

(c) A failure of the design of real property to meet the applicable professional standards of care at the time of governmental approval; or

(d) A failure to construct or remodel real property in accordance with accepted trade standards for good and workmanlike construction at the time of construction.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(5) "Contractor" means any person, as defined in s. 1.01, that is legally engaged in the business of designing, developing, constructing, manufacturing, repairing, or remodeling real property.

(6) "Design professional" means a person, as defined in s. 1.01, licensed in this state as an architect, interior designer, landscape architect, engineer, or surveyor.

(7) "Real property" or "property" means land that is improved and the improvements on such land, including fixtures, manufactured housing, or mobile homes and excluding public transportation projects.

(8) "Service" means delivery by certified mail, return receipt requested, to the last known address of the addressee.

(9) "Subcontractor" means a person, as defined in s. 1.01, who is a contractor who performs labor and supplies material on behalf of another contractor in the construction or remodeling of real property.

(10) "Supplier" means a person, as defined in s. 1.01, who provides only materials, equipment, or other supplies for the construction or remodeling of real property.

## 558.003. Action; compliance

A claimant may not file an action subject to this chapter without first complying with the requirements of this chapter. If a claimant files an action alleging a construction defect without first complying with the requirements of this chapter, on timely motion by a party to the action the court shall abate the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements.

## 558.004. Notice and opportunity to repair

(1) In actions brought alleging a construction defect, the claimant shall, at least 60 days before filing any action, or at least 120 days before filing an action involving an association representing more than 20 parcels, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter. If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted. The notice of claim must describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect, if known. The claimant shall endeavor to serve the notice of claim within 15 days after discovery of an alleged defect, but the failure to serve notice of claim within 15 days does not bar the filing of an action, subject to s. 558.003. This subsection does not preclude a claimant from filing an action sooner than 60 days, or 120 days as applicable, after service of written notice as expressly provided in subsection (6), subsection (7), or subsection (8).

(2) Within 30 days after receipt of the notice of claim, or within 50 days after receipt of the notice of claim involving an association representing more than 20 parcels, the person receiving the notice of claim under subsection (1) is entitled to perform a reasonable inspection of the property or of each unit subject to the claim to assess each alleged construction defect. An association's right to access property for either maintenance or repair includes the authority to grant access for the inspection. The claimant shall provide the person receiving the notice under subsection (1) and such person's contractors or agents reasonable access to the property during normal working hours to inspect the property to determine the nature and cause of each alleged construction defect and the nature and extent of any repairs or replacements necessary to remedy each defect. The person receiving notice under subsection (1) shall reasonably coordinate the timing and manner of any and all inspections with the claimant to minimize the number of inspections. The inspection may include destructive testing by mutual agreement under the following reasonable

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

terms and conditions:

(a) If the person receiving notice under subsection (1) determines that destructive testing is necessary to determine the nature and cause of the alleged defects, such person shall notify the claimant in writing.

(b) The notice shall describe the destructive testing to be performed, the person selected to do the testing, the estimated anticipated damage and repairs to the property resulting from the testing, the estimated amount of time necessary for the testing and to complete the repairs, and the financial responsibility offered for covering the costs of repairs.

(c) If the claimant promptly objects to the person selected to perform the destructive testing, the person receiving notice under subsection (1) shall provide the claimant with a list of three qualified persons from which the claimant may select one such person to perform the testing. The person selected to perform the testing shall operate as an agent or subcontractor of the person receiving notice under subsection (1) and shall communicate with, submit any reports to and be solely responsible to the person receiving notice.

(d) The testing shall be done at a mutually agreeable time.

(e) The claimant or a representative of the claimant may be present to observe the destructive testing.

(f) The destructive testing shall not render the property uninhabitable.

In the event the claimant fails or refuses to agree to destructive testing, the claimant shall have no claim for damages which could have been avoided or mitigated had destructive testing been allowed when requested and had a feasible remedy been promptly implemented.

(3) Within 10 days after receipt of the notice of claim, or within 30 days after receipt of the notice of claim involving an association representing more than 20 parcels, the person receiving the notice under subsection (1) may forward a copy of the notice of claim to each contractor, subcontractor, supplier, or design professional whom it reasonably believes is responsible for each defect specified in the notice of claim and shall note the specific defect for which it believes the particular contractor, subcontractor, supplier, or design professional is responsible. Each such contractor, subcontractor, supplier, and design professional may inspect the property as provided in subsection (2).

(4) Within 15 days after receiving a copy of the notice of claim pursuant to subsection (3), or within 30 days after receipt of the copy of the notice of claim involving an association representing more than 20 parcels, the contractor, subcontractor, supplier, or design professional must serve a written response to the person who forwarded a copy of the notice of claim. The written response shall include a report, if any, of the scope of any inspection of the property, the findings and results of the inspection, a statement of whether the contractor, subcontractor, supplier, or design professional is willing to make repairs to the property or whether such claim is disputed, a description of any repairs they are willing to make to remedy the alleged construction defect, and a timetable for the completion of such repairs.

(5) Within 45 days after receiving the notice of claim, or within 75 days after receipt of a copy of the notice of claim involving an association representing more than 20 parcels, the person who received notice under subsection (1) must serve a written response to the claimant. The response shall be served to the attention of the person who signed the notice of claim, unless otherwise designated in the notice of claim. The written response must provide:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(a) A written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed repairs necessary to remedy the defect, and a timetable for the completion of such repairs;

(b) A written offer to compromise and settle the claim by monetary payment, that will not obligate the person's insurer, and a timetable for making payment;

(c) A written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payment;

(d) A written statement that the person disputes the claim and will not remedy the defect or compromise and settle the claim; or

(e) A written statement that a monetary payment, including insurance proceeds, if any, will be determined by the person's insurer within 30 days after notification to the insurer by means of forwarding the claim, which notification shall occur at the same time the claimant is notified of this settlement option, which the claimant can accept or reject. A written statement under this paragraph may also include an offer under paragraph (c), but such offer shall be contingent upon the claimant also accepting the determination of the insurer whether to make any monetary payment in addition thereto. If the insurer for the person receiving the claim makes no response within the 30 days following notification, then the claimant shall be deemed to have met all conditions precedent to commencing an action.

(6) If the person receiving a notice of claim pursuant to subsection (1) disputes the claim and will neither remedy the defect nor compromise and settle the claim, or does not respond to the claimant's notice of claim within the time provided in subsection (5), the claimant may, without further notice, proceed with an action against that person for the claim described in the notice of claim. Nothing in this chapter shall be construed to preclude a partial settlement or compromise of the claim as agreed to by the parties and, in that event, the claimant may, without further notice, proceed with an action on the unresolved portions of the claim.

(7) A claimant who receives a timely settlement offer must accept or reject the offer by serving written notice of such acceptance or rejection on the person making the offer within 45 days after receiving the settlement offer. If a claimant initiates an action without first accepting or rejecting the offer, the court shall abate the action upon timely motion until the claimant complies with this subsection.

(8) If the claimant timely and properly accepts the offer to repair an alleged construction defect, the claimant shall provide the offeror and the offeror's agents reasonable access to the claimant's property during normal working hours to perform the repair by the agreed-upon timetable as stated in the offer. If the offeror does not make the payment or repair the defect within the agreed time and in the agreed manner, except for reasonable delays beyond the control of the offeror, including, but not limited to, weather conditions, delivery of materials, claimant's actions, or issuance of any required permits, the claimant may, without further notice, proceed with an action against the offeror based upon the claim in the notice of claim. If the offeror makes payment or repairs the defect within the agreed time and in the agreed manner, the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer.

(9) This section does not prohibit or limit the claimant from making any necessary emergency repairs to the property as are required to protect the health, safety, and welfare of the claimant. In addition, any offer or failure to offer pursuant to subsection (5) to remedy an alleged construction defect or to compromise and settle the claim by monetary payment does not constitute an admission of liability with respect to the defect and is not admissible in an

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

action brought under this chapter.

(10) A claimant's mailing of the written notice of claim under subsection (1) tolls the applicable statute of limitations relating to any person covered by this chapter and any bond surety until the later of:

(a) Ninety days, or 120 days, as applicable, after receipt of the notice of claim pursuant to subsection (1); or

(b) Thirty days after the end of the repair period or payment period stated in the offer, if the claimant has accepted the offer. By stipulation of the parties, the period may be extended and the statute of limitations is tolled during the extension.

(11) The procedures in this chapter apply to each alleged construction defect. However, a claimant may include multiple defects in one notice of claim. The initial list of construction defects may be amended by the claimant to identify additional or new construction defects as they become known to the claimant. The court shall allow the action to proceed to trial only as to alleged construction defects that were noticed and for which the claimant has complied with this chapter and as to construction defects reasonably related to, or caused by, the construction defects previously noticed. Nothing in this subsection shall preclude subsequent or further actions.

(12) This chapter does not:

(a) Bar or limit any rights, including the right of specific performance to the extent such right would be available in the absence of this chapter, any causes of action, or any theories on which liability may be based, except as specifically provided in this chapter;

(b) Bar or limit any defense, or create any new defense, except as specifically provided in this chapter; or

(c) Create any new rights, causes of action, or theories on which liability may be based.

(13) Nothing in this section shall relieve the person receiving notice of claim under subsection (1) from complying with all contractual provisions of any liability insurance policy as a condition precedent to coverage for any claim under this section. However, notwithstanding the foregoing or any contractual provision, the providing of a copy of such notice to the person's insurer, if applicable, shall not constitute a claim for insurance purposes. Nothing in this section shall be construed to impair technical notice provisions or requirements of the liability policy or alter, amend, or change existing Florida law relating to rights between insureds and insurers except as otherwise specifically provided herein.

(14) To the extent that an arbitration clause in a contract for the sale, design, construction, or remodeling of real property conflicts with this section, this section shall control.

(15) Upon request, the claimant and the person receiving notice pursuant to subsection (1) shall have a mutual duty to exchange all available discoverable evidence relating to the construction defects, including, but not limited to, expert reports, photographs, information received pursuant to subsection (4), and videotapes, if any. In the event of subsequent litigation, any party who failed to provide such evidence shall be subject to such sanctions as the court may impose for a discovery violation. Expert reports exchanged between the parties may not be used in any subsequent litigation for any purpose, unless the expert, or a person affiliated with the expert, testifies as a witness or the report is used or relied upon by an expert who testifies on behalf of the party for whom the report was prepared.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**558.005. Contract provisions; application**

(1) Except as otherwise provided in subsections (3) and (4), the provisions of this chapter shall apply to every contract for the design, construction, or remodeling of real property entered into:

(a) Between July 1, 2004, and September 30, 2006, which contains the notice as set forth in paragraph (2)(a) and is conspicuously set forth in capitalized letters.

(b) On or after October 1, 2006, which contains the notice set forth in paragraph (2)(b) and is conspicuously set forth in capitalized letters.

(2)(a) The notice required by paragraph (1)(a) must be in substantially the following form:

CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OB-LIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

(b) The notice required by paragraph (1)(b) must expressly cite this chapter and be in substantially the following form:

CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTER-ESTS.

(3) After receipt of the initial notice of claim, a claimant and the person receiving notice under s. 558.004(1) may, by written mutual agreement, alter the procedure for the notice of claim process described in this chapter.

(4) This chapter applies to all actions accruing on or after July 1, 2004, and all actions commenced on or after such date, regardless of the date of sale, issuance of a certificate of occupancy or its equivalent, or substantial completion

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

of the construction. Notwithstanding the notice requirements of this section for contracts entered into between July 1, 2004, and September 30, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into prior to July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions. Notwithstanding the notice requirements of this section for contracts entered into on or after October 1, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into before July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions.

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



2009 Fla. Sess. Law Serv. Ch. 2009-203 (S.B. 2064) (WEST)                                    Page 1

## EXHIBIT "B"

FLORIDA 2009 SESSION LAW SERVICE
Twenty-First Legislature, First Regular Session

Additions are indicated by Text; deletions by
~~Text~~.

Chapter 2009-203
S.B. No. 2064
BUSINESS AND COMMERCE--CONSTRUCTION DEFECTS--REGULATION

An act relating to construction defects; amending s. 558.002, F.S.; providing and revising definitions; amending s. 558.003, F.S.; limiting application of certain notices; amending s. 558.004, F.S.; revising requirements and procedures for notice and opportunity to repair certain defects; specifying that there are no construction lien rights under certain provisions of law for certain testing; providing an exception; revising requirements for parties to exchange certain materials; providing penalties; amending s. 558.005, F.S.; revising requirements for application to certain claims for legal relief; specifying certain notices required for certain contracts; authorizing parties to agree to mediation; revising application of notice requirements to certain earlier contracts; specifying a required notice for certain contracts; providing construction of the requirement; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1. Subsections (4) through (10) of section 558.002, Florida Statutes, are renumbered as subsections (5) through (11), respectively, a new subsection (4) is added to that section, and present subsection (8) of that section is amended, to read:

<< FL ST § 558.002 >>

558.002. Definitions

As used in this chapter, the term:

(4) "Completion of a building or improvement" means issuance of a certificate of occupancy for the entire building or improvement, or the equivalent authorization to occupy or use the improvement, issued by the governmental body having jurisdiction and, in jurisdictions where no certificate of occupancy or the equivalent authorization is issued, means substantial completion of construction, finishing, and equipping of the building or improvement according to the plans and specifications.

(9) (8) "Service" means delivery by certified mail with a United States Postal Service record of evidence of delivery or attempted delivery, ~~return receipt requested,~~ to the last known address of the addressee, by hand delivery, or by delivery by any courier with written evidence of delivery.

Section 2. Section 558.003, Florida Statutes, is amended to read:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

<< FL ST § 558.003 >>

558.003. Action; compliance

A claimant may not file an action subject to this chapter without first complying with the requirements of this chapter. If a claimant files an action alleging a construction defect without first complying with the requirements of this chapter, on timely motion by a party to the action the court shall stay abate the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements. The notice requirement is not intended to interfere with an owner's ability to complete a project that has not been substantially completed. The notice is not required for a project that has not reached the stage of completion of the building or improvement.

Section 3. Section 558.004, Florida Statutes, is amended to read:

<< FL ST § 558.004 >>

558.004. Notice and opportunity to repair

(1) In actions brought alleging a construction defect, the claimant shall, at least 60 days before filing any action, or at least 120 days before filing an action involving an association representing more than 20 parcels, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter. If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted. The notice of claim must describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect, if known. The claimant shall endeavor to serve the notice of claim within 15 days after discovery of an alleged defect, but the failure to serve notice of claim within 15 days does not bar the filing of an action, subject to s. 558.003. This subsection does not preclude a claimant from filing an action sooner than 60 days, or 120 days as applicable, after service of written notice as expressly provided in subsection (6), subsection (7), or subsection (8).

(2) Within 30 days after service receipt of the notice of claim, or within 50 days after service receipt of the notice of claim involving an association representing more than 20 parcels, the person served with receiving the notice of claim under subsection (1) is entitled to perform a reasonable inspection of the property or of each unit subject to the claim to assess each alleged construction defect. An association's right to access property for either maintenance or repair includes the authority to grant access for the inspection. The claimant shall provide the person served with receiving the notice under subsection (1) and such person's contractors or agents reasonable access to the property during normal working hours to inspect the property to determine the nature and cause of each alleged construction defect and the nature and extent of any repairs or replacements necessary to remedy each defect. The person served with receiving notice under subsection (1) shall reasonably coordinate the timing and manner of any and all inspections with the claimant to minimize the number of inspections. The inspection may include destructive testing by mutual agreement under the following reasonable terms and conditions:

(a) If the person served with receiving notice under subsection (1) determines that destructive testing is necessary to determine the nature and cause of the alleged defects, such person shall notify the claimant in writing.

(b) The notice shall describe the destructive testing to be performed, the person selected to do the testing, the estimated anticipated damage and repairs to or restoration of the property resulting from the testing, the estimated amount of time necessary for the testing and to complete the repairs or restoration, and the financial responsibility offered for covering the costs of repairs or restoration.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(c) If the claimant promptly objects to the person selected to perform the destructive testing, the person served with receiving notice under subsection (1) shall provide the claimant with a list of three qualified persons from which the claimant may select one such person to perform the testing. The person selected to perform the testing shall operate as an agent or subcontractor of the person served with receiving notice under subsection (1) and shall communicate with, submit any reports to ¦ and be solely responsible to the person served with receiving notice.

(d) The testing shall be done at a mutually agreeable time.

(e) The claimant or a representative of the claimant may be present to observe the destructive testing.

(f) The destructive testing shall not render the property uninhabitable.

(g) There shall be no construction lien rights under part I of chapter 713 for the destructive testing caused by a person served with notice under subsection (1) or for restoring the area destructively tested to the condition existing prior to testing, except to the extent the owner contracts for the destructive testing or restoration.

If In the event the claimant fails or refuses to agree and thereafter permit reasonable to destructive testing, the claimant shall have no claim for damages which could have been avoided or mitigated had destructive testing been allowed when requested and had a feasible remedy been promptly implemented.

(3) Within 10 days after service receipt of the notice of claim, or within 30 days after service receipt of the notice of claim involving an association representing more than 20 parcels, the person served with receiving the notice under subsection (1) may serve forward a copy of the notice of claim to each contractor, subcontractor, supplier, or design professional whom it reasonably believes is responsible for each defect specified in the notice of claim and shall note the specific defect for which it believes the particular contractor, subcontractor, supplier, or design professional is responsible. The notice described in this subsection may not be construed as an admission of any kind. Each such contractor, subcontractor, supplier, and design professional may inspect the property as provided in subsection (2).

(4) Within 15 days after service of receiving a copy of the notice of claim pursuant to subsection (3), or within 30 days after service receipt of the copy of the notice of claim involving an association representing more than 20 parcels, the contractor, subcontractor, supplier, or design professional must serve a written response to the person who served forwarded a copy of the notice of claim. The written response shall include a report, if any, of the scope of any inspection of the property, the findings and results of the inspection, a statement of whether the contractor, subcontractor, supplier, or design professional is willing to make repairs to the property or whether such claim is disputed, a description of any repairs they are willing to make to remedy the alleged construction defect, and a timetable for the completion of such repairs. This response may also be served on the initial claimant by the contractor.

(5) Within 45 days after service of receiving the notice of claim, or within 75 days after service receipt of a copy of the notice of claim involving an association representing more than 20 parcels, the person who was served the received notice under subsection (1) must serve a written response to the claimant. The response shall be served to the attention of the person who signed the notice of claim, unless otherwise designated in the notice of claim. The written response must provide:

(a) A written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed repairs necessary to remedy the defect, and a timetable for the completion of such repairs;

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(b) A written offer to compromise and settle the claim by monetary payment, that will not obligate the person's insurer, and a timetable for making payment;

(c) A written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payment;

(d) A written statement that the person disputes the claim and will not remedy the defect or compromise and settle the claim; or

(e) A written statement that a monetary payment, including insurance proceeds, if any, will be determined by the person's insurer within 30 days after notification to the insurer by means of serving forwarding the claim, which service notification shall occur at the same time the claimant is notified of this settlement option, which the claimant may can accept or reject. A written statement under this paragraph may also include an offer under paragraph (c), but such offer shall be contingent upon the claimant also accepting the determination of the insurer whether to make any monetary payment in addition thereto. If the insurer for the person served with receiving the claim makes no response within the 30 days following service notification, then the claimant shall be deemed to have met all conditions precedent to commencing an action.

(6) If the person served with receiving a notice of claim pursuant to subsection (1) disputes the claim and will neither remedy the defect nor compromise and settle the claim, or does not respond to the claimant's notice of claim within the time provided in subsection (5), the claimant may, without further notice, proceed with an action against that person for the claim described in the notice of claim. Nothing in this chapter shall be construed to preclude a partial settlement or compromise of the claim as agreed to by the parties and, in that event, the claimant may, without further notice, proceed with an action on the unresolved portions of the claim.

(7) A claimant who receives a timely settlement offer must accept or reject the offer by serving written notice of such acceptance or rejection on the person making the offer within 45 days after receiving the settlement offer. If a claimant initiates an action without first accepting or rejecting the offer, the court shall stay abate the action upon timely motion until the claimant complies with this subsection.

(8) If the claimant timely and properly accepts the offer to repair an alleged construction defect, the claimant shall provide the offeror and the offeror's agents reasonable access to the claimant's property during normal working hours to perform the repair by the agreed-upon timetable as stated in the offer. If the offeror does not make payment or repair the defect within the agreed time and in the agreed manner, except for reasonable delays beyond the control of the offeror, including, but not limited to, weather conditions, delivery of materials, claimant's actions, or issuance of any required permits, the claimant may, without further notice, proceed with an action against the offeror based upon the claim in the notice of claim. If the offeror makes payment or repairs the defect within the agreed time and in the agreed manner, the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer.

(9) This section does not prohibit or limit the claimant from making any necessary emergency repairs to the property as are required to protect the health, safety, and welfare of the claimant. In addition, any offer or failure to offer pursuant to subsection (5) to remedy an alleged construction defect or to compromise and settle the claim by monetary payment does not constitute an admission of liability with respect to the defect and is not admissible in an action brought under this chapter.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2009 Fla. Sess. Law Serv. Ch. 2009-203 (S.B. 2064) (WEST)                                      Page 5

(10) A claimant's service ~~mailing~~ of the written notice of claim under subsection (1) tolls the applicable statute of limitations relating to any person covered by this chapter and any bond surety until the later of:

(a) Ninety days, or 120 days, as applicable, after service ~~receipt~~ of the notice of claim pursuant to subsection (1); or

(b) Thirty days after the end of the repair period or payment period stated in the offer, if the claimant has accepted the offer. By stipulation of the parties, the period may be extended and the statute of limitations is tolled during the extension.

(11) The procedures in this chapter apply to each alleged construction defect. However, a claimant may include multiple defects in one notice of claim. The initial list of construction defects may be amended by the claimant to identify additional or new construction defects as they become known to the claimant. The court shall allow the action to proceed to trial only as to alleged construction defects that were noticed and for which the claimant has complied with this chapter and as to construction defects reasonably related to, or caused by, the construction defects previously noticed. Nothing in this subsection shall preclude subsequent or further actions.

(12) This chapter does not:

(a) Bar or limit any rights, including the right of specific performance to the extent such right would be available in the absence of this chapter, any causes of action, or any theories on which liability may be based, except as specifically provided in this chapter;

(b) Bar or limit any defense, or create any new defense, except as specifically provided in this chapter; or

(c) Create any new rights, causes of action, or theories on which liability may be based.

(13) ~~Nothing in~~ This section does not ~~shall~~ relieve the person who is served a ~~receiving~~ notice of claim under subsection (1) from complying with all contractual provisions of any liability insurance policy as a condition precedent to coverage for any claim under this section. However, notwithstanding the foregoing or any contractual provision, the providing of a copy of such notice to the person's insurer, if applicable, shall not constitute a claim for insurance purposes. Nothing in this section shall be construed to impair technical notice provisions or requirements of the liability policy or alter, amend, or change existing Florida law relating to rights between insureds and insurers except as otherwise specifically provided herein.

(14) To the extent that an arbitration clause in a contract for the sale, design, construction, or remodeling of real property conflicts with this section, this section shall control.

(15) Upon request, the claimant and any ~~the~~ person served with ~~receiving~~ notice pursuant to subsection (1) shall ~~have a mutual duty to~~ exchange, within 30 days after service of a written request, which request must cite this subsection and include an offer to pay the reasonable costs of reproduction, any design plans, specifications, and as-built plans; any documents detailing the design drawings or specifications; photographs, videos, and expert reports that describe any defect upon which the claim is made; subcontracts; and purchase orders for the work that is claimed defective or any part of such materials ~~all available discoverable evidence relating to the construction defects, including, but not limited to, expert reports, photographs, information received pursuant to subsection (4), and videotapes, if any~~. In the event of subsequent litigation, any party who failed to provide the requested materials ~~such evidence~~ shall be subject to such sanctions as the court may impose for a discovery violation. Expert reports exchanged between the parties may not be used in any subsequent litigation for any purpose, unless the expert, or a person affiliated with the expert, testifies as a witness or the report is used or relied upon by an expert who testifies

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

on behalf of the party for whom the report was prepared.

Section 4. Section 558.005, Florida Statutes, is amended to read:

<< FL ST § 558.005 >>

558.005. Contract provisions; application

(1) Unless a claimant and a potential defendant have agreed in writing to opt out of the requirements of this section, Except as otherwise provided in subsections (3) and (4), the provisions of this chapter shall apply to any claim for legal relief for which the agreement to make the improvement was made after October 1, 2009, and for which the basis of the claim is a construction defect that has arisen after completion of a building or improvement every contract for the design, construction, or remodeling of real property entered into:

(2) For a claim of a construction defect pursuant to contracts for improvement entered into as described in this subsection, the following applicable notices are required:

(a) Between July 1, 2004, and September 30, 2006, which contract contains the notice as set forth in paragraph (3) (2)(a) and is conspicuously set forth in capitalized letters.

(b) Between On or after October 1, 2006, and September 30, 2009, which contract contains the notice set forth in paragraph (3) (2)(b) and is conspicuously set forth in capitalized letters.

(3) (2)(a) The notice required by paragraph (2) (1)(a) must be in substantially the following form:

CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

(b) The notice required by paragraph (2) (1)(b) must expressly cite this chapter and be in substantially the following form:

CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO

INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO RE-PAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

(4) (3) At any time After receipt of the initial notice of claim, a claimant and the person to whom notice is served or otherwise must be served receiving notice under s. 558.004(1) may agree in writing to pre-action mediation or otherwise , by written mutual agreement, alter the procedure for the notice of claim process described in this chapter.

(5) (4) Notwithstanding the notice requirements of this section for contracts entered into on or after October 1, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into before July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions. This chapter applies to all actions accruing on or after July 1, 2004, and all actions commenced on or after such date, regardless of the date of sale, issuance of a certificate of occupancy or its equivalent, or substantial completion of the construction. Notwithstanding the notice requirements of this section for contracts entered into between July 1, 2004, and September 30, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into prior to July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions. Notwithstanding the notice requirements of this section for contracts entered into on or after October 1, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into before July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions.

(6) Notwithstanding s. 558.003, unless the parties agree that this chapter does not apply, after October 1, 2009, any written contract for improvement of real property entered into between an owner and a contractor, or between an owner and a design professional, must contain substantially the following notice: "ANY CLAIMS FOR CONSTRUCTION DEFECTS ARE SUBJECT TO THE NOTICE AND CURE PROVISIONS OF CHAPTER 558, FLORIDA STATUTES." The failure to include in the contract the notice provided in this subsection does not subject the contracting owner, contractor, or design professional to any penalty. The purpose of the contractual notice is to promote awareness of the procedure, not to be a penalty.

Section 5. This act shall take effect October 1, 2009.

Approved by the Governor June 18, 2009.

Filed in Office Secretary of State June 18, 2009.

 FL LEGIS 2009-203

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



83-FEB FLBJ 42
83-FEB Fla. B.J. 42

### EXHIBIT "C"

©Florida Bar Journal
February, 2009

Column

Real Property, Probate and Trust Law

**\*42 HOW TO COMPLY WITH CHAPTER 558 FLORIDA STATUTES: CURRENT CHALLENGES AND FUTURE CHANGES**

Larry R. Leiby [FNa1]

Steven B. Lesser [FNaa1]

Copyright © 2009 by The Florida Bar; Larry R. Leiby, Steven B. Lesser

F.S. Ch. 558, otherwise known as the Florida Construction Defect Statute, requires owners to send a "notice of claim" to developers, contractors, subcontractors, suppliers, and/or design professionals identifying any alleged construction and/or design defects in "reasonable detail" before any litigation or arbitration for construction defects may be initiated. [FN1] In other words, before an owner may sue someone for a defect, a very specific set of rules must be followed or legal rights may be delayed or lost. Since the introduction of Ch. 558 in 2003, participating parties to design and construction along with construction lawyers, courts, and arbitrators have wrestled with how to inject practicality into the process. Recently reported episodes prove convincing that some change is necessary. In one unreported decision, a circuit court judge interpreted a secondary notice sent to a subcontractor as an admission of liability against a developer. [FN2] In another case, a federal trial court declined to dismiss or abate for failure of a claimant to serve the notice of claim. [FN3] Instead, the court allowed the case to proceed but required the parties to comply with the procedures of Ch. 558 during the early stages of litigation. [FN4]

In a landscape of uncertainty surrounding various provisions, only four appellate decisions exist, none of which have addressed substantive issues that frequently cause construction practitioners heartburn when unsettled issues arise during this presuit process. [FN5] More decisions challenging the various provisions will likely be on the horizon because in 2006, the Florida Legislature expanded the statute to apply beyond residential dwellings to commercial real property, such as businesses, schools, hospitals, office condominiums, hotels, and all other structures except for those involving public transportation. [FN6] As businesses struggle to stay afloat in this economy, many cannot afford to interrupt the daily routine to allow parties to herd inspectors through the structures, during normal working hours, to ponder repairs to be performed at a later date. Business owners may be hard-pressed to hold off fixing their leaking roof for a period of 45 days to enable a contractor to respond with an offer to fix the leak. The statute does provide some express relief from compliance if the repairs performed constitute an "emergency." [FN7] Although this term is not defined under the statute except to describe a repair to "protect the health, safety, and welfare of the claimant," a judge may be hard-pressed to understand why an unsightly condition in a business setting such as a restaurant gives rise to an emergency situation to relieve the business owner from following the statute. The result of all of these developments will create challenges to be sorted out by lawyers and fact finders. Many of these issues may also stall repairs being made, with some business owners electing to ignore the statute only to be later delayed from pursuing

relief against responsible parties. [FN8]

While the statute expressly authorizes prenotice emergency repairs, it is silent as to whether the owner is precluded from making the repairs before the notice procedure is satisfied. One view of the effect of prenotice repairs would be that, by implication, the owner is barred from relief due to the inability to inspect, conduct destructive testing, or make a settlement offer (which seems rather harsh, particularly since this result would be only by implication and not express language). Another view would be that the potential defendants could argue that performing nonemergency repairs without satisfying the presuit notice requirements has prejudiced their statutory rights, giving rise to defenses, such as a) "it cost too much," *i.e.*, "it could have been done cheaper or I would have done it for nothing"; and b) "it wasn't my fault and you didn't let me see the condition before you spent money that you now seek to recover."

For the last five years, some lessons have been learned about complying with the statute, and this article will provide some suggestions to achieve compliance from the standpoint of both the owner and contractor. [FN9]

F.S. Ch. 558 requires an owner (claimant) to give notice and an opportunity to cure with respect to a building defect(s). The statute sets forth its purpose as to create "an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of property owners." [FN10] In more practical terms, it is intended to allow both claimants and participants to design and construction to resolve alleged defects before both sides run to the courthouse and spend a pile of money on lawyers.

Owners and contractors have some **\*43** basic decisions to make with respect to this statute before a dispute hits the courthouse:

1) Should the parties elect to opt out of the procedure [FN11] (which the parties have the right to do at the time of making the contract or by later agreement)?

2) If you are a contractor, once you receive a notice of claim pursuant to the statute, how should you address downstream subcontractors and suppliers who may have involvement with the alleged defect?

3) Should the contractor serve a response to the notice of claim; and if so, what should it say?

The questions posed should be addressed before the matter hits the courthouse. Because of the implications and requirements to exchange documents and/or perform destructive testing, clients should involve legal counsel in such decisions. Although many clients may hesitate to involve counsel at the early stage of defect discovery, clients should be educated that significant legal fees may be avoided by following the statutory process in an effort to achieve an economical presuit resolution.

*Should the Contractor Opt Out in the Contract?* Remember that the purpose of this statute is to resolve construction defect claims by affording an opportunity to inspect, including destructive testing if appropriate, and correct the defect or offer a settlement before the relationship deteriorates to litigation or arbitration. There is little justification for a contractor to opt out of this process in the contract. By this process, there is an invaluable opportunity to learn about the claim that ultimately may be asserted in litigation or arbitration. In an arbitration setting without an automatic opportunity for discovery, [FN12] this process could be very productive and meaningful. From the owner's standpoint, those educated about the statute may suggest that the procedure be waived (opt out) so that the owner has no duty to send any notices, offer any inspections, or exchange documents relating to the claim before filing suit.

Note also that the parties may stipulate or agree to opt out of the process at any time after a notice of claim has

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

been given if it appears that the parties know the facts and are simply polarized in position, so that a third-party decision (litigation or arbitration) is the proper next step. [FN13] However, this would be a rare situation. With discussion, inspection, and the opportunity for expert input, knowledgeable parties may be able to understand and agree what the cause and/or the solution is or should be. Opting out in the contract would not appear to benefit the contractor, because it most certainly deprives the contractor and other potential defendants from being educated through receipt of a description of the defect in "reasonable detail," having an opportunity to inspect, perform destructive testing, and resolve the matter without litigation or arbitration. [FN14]

Owners may approach the matter differently, avoiding Ch. 558 altogether by opting out of the procedure in their contracts. [FN15] By this opt out approach, owners may gain flexibility when a defect arises by structuring their own dispute resolution process that adopts acceptable Ch. 558 features without being strictly bound to the statute. This could be accomplished by including a different resolution procedure in the contract to serve as a prerequisite to litigation or arbitration. [FN16] Opting out with different agreed-upon procedures carries the uncertainty of the enforcement of the contractual procedure on non-parties to the contract. Also, an alternative process could be proposed later, by the owner sending a demand letter to the contractor that outlines a dispute resolution process that the contractor may find acceptable. This approach may include providing the contractor with a detailed description of the alleged defect, an opportunity to inspect, some testing, and a shortened timeline for a contractor to respond with a proposal.

Without being bound to the statutory process, the owner may proceed forward without being confronted by motions to abate for failing to satisfy the statutory requirements. One major shortcoming of the statute that can also be rectified by using an alternative approach is to specify a time frame for completing repairs. The current statutory process permits the contractor to specify *any* time period to complete the repair, leaving the issue to a determination of whether the proposed time period is reasonable. [FN17] Of course, the owner may choose to accept or reject the offered repair in the offered time period. Tightening this up by fashioning a different process would be especially appealing to an ongoing business that cannot afford to wait for repairs to be completed.

Note also that the claimant and recipient of the notice have a mutual duty upon request to exchange "all available discoverable evidence" related to the defect issue. [FN18] Failure to exchange such information is punishable by the court (in any later litigation) by sanction. [FN19] Thus, if there is some benefit to be gained by not being obliged to furnish such information before a suit is filed, that may be a reason to opt out. This reason may not be particularly valuable if litigation is the forum for dispute resolution, since relevant information may be requested once the suit is filed. The same is not necessarily so in arbitration. As noted above, there is very little absolute right to discovery in arbitration. [FN20] One of the issues anticipated to be addressed by a proposed legislative amendment as described below is a better description of what must be produced in response to the request, so that the party and the party's lawyer are not left to guess about an omission of "available discoverable evidence" that may be subject to sanctions.

*How Do You Address Downstream Subcontractors and Suppliers?* Section 558.004(3) permits a contractor who receives a 558 notice from an owner to "forward a copy of the notice of claim to each contractor, subcontractor, supplier, or design professional whom it reasonably believes is responsible for each defect specified in the notice of claim and shall note the specific defect for which it believes the particular contractor, subcontractor, supplier, or design professional is responsible." Thus, if there is a water intrusion issue, the contractor may forward the notice to the subcontractors or suppliers whom the contractor believes are responsible for the defect, noting the *44 specific defect applicable to the downstream parties. The contractor would wish to include anyone who may have input for the defect, but should not be overbroad. Frequently, this process is stalled because the forwarding notice does not specify the alleged defects that fall within the scope of the secondary recipient's work. The contractor recipient of the notice simply shotguns the notice received from the owner to others, without specifically identifying those alleged defects for which the downstream person is perceived to be responsible. This shotgun approach often backfires when the contractor receives an objection to the downstream notice instead of a timely proposal to correct the alleged defect.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Without having the proposal from the secondary recipient in a timely fashion, the contractor is frequently left without much to offer the owner from subcontractors when his or her own response becomes due. Counsel should educate contractor clients about the need to carefully segregate the defects to be included in notices to those responsible parties. Otherwise, the entire process may become an exercise in futility.

The contractor should carefully word the downstream notice. At least one trial court in Broward County has ruled that a downstream notice by the developer to the contractor and subcontractors was an admission against interest with respect to the developer. [FN21] Thus, to avoid that argument, the downstream notice should include some disclaimer language to make clear that the contractor does not necessarily agree that the alleged defect exists, but is only being sent to allow the subcontractor/supplier with an opportunity to inspect and respond to the notice of claim as provided by Ch. 558. The choices for responding to a downstream notice are the same that exist for the contractor [FN22] and are discussed below. The statute is silent on the effect of a failure to respond to the notice. Unlike the owner's notice to the contractor, there is no requirement for the contractor to serve a downstream notice as a precondition to the contractor bringing suit (as an original complaint or third-party complaint in the owner's action, should it be filed) against the downstream subcontractor or supplier. [FN23] Another puzzling question arises when a subcontractor receives a secondary notice from a contractor but does not receive a notice of claim directly from the owner. In that instance, can the owner directly sue the subcontractor based on the contractor's downstream notice, or will the subcontractor be able to move to abate because the owner failed to serve his or her own notice of claim upon that subcontractor? It seems that owners would be prudent to serve notices of claim on all potential parties the owners wish to directly pursue, in order to avoid this argument. [FN24]

If the contractor does send the downstream notice, the recipient subcontractor and/or supplier has the opportunity to request an inspection. [FN25] Note that the statute does not require the mutual exchange of information between subcontractors and suppliers and the contractor, which is required upon request between an owner and a contractor. [FN26] This is also one additional reason for owners to send notices of claim directly to the participating subcontractors and suppliers. Frequently, contractors request such information from subcontractors and suppliers, but the statutory sanction in a later action for failure to respond does not exist for the downstream parties. [FN27] However, subcontractors and suppliers may typically cooperate with their contractor customers by furnishing the requested information and perhaps avoid litigation (particularly where the subcontractor/supplier has a very good position on the issue).

*How Does the Contractor Respond to the Owner's Notice of Defect?* The first thing that the contractor will typically do is to identify the downstream people as well as an expert and make arrangements to inspect the alleged defect(s). Usually this will include photographs and perhaps a video, although a video should be arranged in advance of the inspection to avoid any objections by the owner or contractor at the inspection. The inspection may include destructive testing, although reasonable arrangements for the testing and restoration would ordinarily be required by the owner and may follow an initial inspection. [FN28] Although destructive testing is to be by "mutual agreement," business owners likely will not permit it because of the noise, mess, and interruptions it may create for everyday flow of business operations. Moreover, any proposal for destructive testing should address restoration of what is being destroyed and deal with posting some financial security to protect the claimant. [FN29] Nevertheless, owners should think twice before refusing contractors and others with access to destructively test their property for defects. An owner's failure to agree to destructive testing could void an owner's claim for those damages that could have been avoided or mitigated if such testing was allowed and "had a feasible remedy been allowed." [FN30] Based on the statutory language dealing with owners who refuse to permit destructive testing, it may be difficult for a court to determine what damages would result from the lack of destructive testing, especially since a feasible remedy has not been formulated or implemented. This defense to such damages would seem to call for speculation unless the request for testing (that is denied) identifies potential feasible remedies based on projected findings. [FN31]

The contractor will in most instances send the downstream notices to subcontractors and suppliers to obtain the

benefit of their responses and possible financial input for a monetary offer prior to being obliged to respond to the owner (noting that there is no penalty for lack of response by anyone). The only penalty addressed in the statute for lack of response is that the owner may, after the time allowed for response, file the suit or demand arbitration. [FN32] However, the law is left to general evidentiary principles and is now developing with respect to whether or how the lack of response may be brought out in the case. It would appear that a lack of response where the statute requires one is something that may be relevant to the defect case to show disinterest by the recipient of the notice but likely nothing more. [FN33] With little to be lost other than an inference of disinterest, [FN34] it becomes understandable why some **45** simply ignore responding to secondary notices from contractors.

The response is to include a report, if any, of the scope of any inspection of the property, the findings and results of the inspection, and may also include an offer to pay money, repair the defect, a combination of repairs and payment, a monetary payment contingent upon an insurer's decision, or that the notice of claim is disputed. [FN35]

*What Are the Time Constraints?* The statute says that an owner is to endeavor to send the notice of defect within 15 days of learning of the defect, but there is no penalty for serving the notice after expiration of the 15 days. [FN36] However, there may be some questions at a later trial about why an owner delayed sending a notice beyond 15 days from learning of the defect. As is often the case, owners initially focus only on the major parties such as the developer, general contractor, and design professionals who participated in the design and construction that led to causing the alleged defect. Although these main parties may receive an engineering report dated within the last 15 days, many times it is only much later that owners seek to serve a notice of claim on other participants such as subcontractors and suppliers. [FN37] But by that time, the 15 days or other applicable time deadlines may have long passed. In that instance, the expert report dated 10 months ago is first served on the subcontractor with the notice of claim (which on its face runs afoul of the 15-day statutory requirement). This delay may arguably serve to support an objection to the notice of claim and a motion to abate a lawsuit or arbitration from proceeding. [FN38]

The contractor may send the down-stream notice to the believed affected subcontractors and suppliers within 10 days if there are 20 or less affected parcels or within 30 days if there are more than 20 affected parcels. [FN39] Again, the statute does not address the consequences of sending the downstream notice later. One could argue that the notice is a creature of statute and that failure to timely send the notice eliminates the need for a response, since the notice would be outside of the statute.

Within 30 days of receipt of the notice for 20 or less parcels, or within 50 days of receipt of the notice for more than 30 parcels, the person receiving notice is entitled to perform a reasonable inspection of the property during normal working hours of each unit subject to the claim to assess each alleged construction defect. [FN40]

Within 15 days after receipt of the notice for 20 or less parcels, or within 30 days of receipt of the notice for more than 20 parcels, the downstream subs and suppliers are to serve their written response. [FN41] Again, there is no statutory penalty for a late response or no response, except as it may be addressed at a later trial or arbitration.

Within 45 days after receiving the notice of claim, or within 75 days after receipt of a copy of the notice of claim involving an association representing more than 20 parcels, the person(s) who received the original notice must **46** serve a written response to the claimant. [FN42]

**What is on the Horizon?**

A bill is anticipated to be filed in the 2009 Florida legislative session to amend F.S. Ch. 558 to address many shortcomings associated with the statute. The bill is the product of a Florida Bar study committee, consisting of construction lawyers who represent owners, contractors, design professionals, and suppliers. [FN43] The amendments

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

83-FEB FLBJ 42
83-FEB Fla. B.J. 42

were fashioned to address some glitches in the current law and clear up some confusing terminology and also to change some of the procedures. [FN44] The study committee discussed imposing penalties for lack of compliance or timely compliance, and decided that the law is intended to serve as an avenue for settlement, not another weapon or remedy to be asserted in the courts. The *concepts* expressed above, for the most part, are expected to remain the same, other than a change that would prohibit the sending of a downstream notice being used as an admission against interest.

[FNa1]. **Larry R. Leiby** *is of counsel to Leiby Stearns and Roberts, P.A. Mr. Leiby has practiced construction law in Florida for 35 years, founded and chaired the Construction Law Committee in the RPPTL Section, has chaired and still serves on The Florida Bar Construction Law Certification Committee, has written* The Florida Construction Law Manual *published by West, is adjunct faculty teaching construction law at FIU Law School, and serves as a mediator and arbitrator of construction disputes.*

[FNaa1]. **Steven B. Lesser** *is a shareholder in Becker & Poliakoff, P.A., in Ft. Lauderdale, where he chairs the firm's Construction Law Group. He is board certified in construction law by The Florida Bar and has authored numerous articles dealing with construction issues including construction defects and Ch. 558, Florida Statutes. Mr. Lesser previously served as chair of The Florida Bar* Journal & News *Editorial Board as well as past chair of American Bar Association Forum on the Construction Industry Steering Committee on Owners and Lenders.*
*This column is submitted on behalf of the Real Property, Probate and Trust Law Section, Sandra F. Diamond, chair, and William P. Sklar and Richard R. Gans, editors.*

[FN1]. FLA. STAT. §558.004(1) (2006). For a general discussion of Ch. 558, *see* Steven B. Lesser, *The 2004 Amendments to Florida's Construction Defect Statute: Some Solutions and More Confusion*, 78 FLA. B.J. 47 (October 2004).

[FN2]. *Geller v. Aventura Land Holdings, Ltd.*, Case No. 06-09739-CA-06, Florida 17th Circuit.

[FN3]. *See CC-Aventura, Inc. v The Weitz Co.*, Case No. 06-21598, U.S.D.C. S.D. Fla.

[FN4]. *Id.* The order in *CC-Aventura, Inc.* appeared to be a reasonable solution such that no one sought review of the order. *See also* FLA. STAT. § §558.003 and 558.004 (7) (2006).

[FN5]. *Saltponds Condominium Association, Inc. v. McCoy*, 972 So. 2d 230 (Fla. 3d D.C.A. 2007) (reiterating that mailing of the written notice of claim letter tolls the applicable statute of limitations for the timeframes specified in FLA. STAT. §558.004). *Specialty Engineering Consultants, Inc. v. Hovstone Properties Florida LLC*, 968 So. 2d 680 (Fla. 4th D.C.A. 2007) (holding that Ch. 558 does not apply to an owner who is also the contractor, since the contractor is not a "claimant" as defined in Ch. 558, citing, *Centex Homes v. Mr. Stucco Inc.*, 2007 WL 2264622 (M.D. Fla. Aug 6, 2007)(same)). *Infinity Design Builders Inc. v. Hutchinson*, 964 So. 2d 752 (Fla. 5th D.C.A. 2007) (Trial court denied builder's motion to stay arbitration for owner's failure to comply with notice requirements under Ch. 558. The district court reversed and granted builder's motion to stay arbitration on the grounds that builder had not exhibited any knowing intent to waive its right to litigate. (Note: The court did not engage in any further discussion of whether Ch. 558 requirements apply to arbitrations.)). *Saltponds Condominium Association, Inc. v. Walbridge-Aldinger Co.*, 979 So. 2d 1240 (Fla. 3d D.C.A. 2008) (notice acts to toll running of statute of limitations for the notice period under the statute).

[FN6]. Ch. 2006-281, Laws of Florida; FLA. STAT. §558.002 (7) (2006).

[FN7]. FLA. STAT. §558.004(9) (2006).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

[FN8]. FLA. STAT. §558.003 (2004).

[FN9]. References to "contractor" throughout this article include those identified in FLA. STAT. §558.002(5) that are legally engaged in the business of designing, developing, constructing, manufacturing, repairing, or remodeling real property.

[FN10]. FLA. STAT. §558.001 (2006).

[FN11]. FLA. STAT. §§558.005(1) and 558.005 (3) (2006).

[FN12]. *See* FLA. STAT. §558.004(15) (2006) contrasted with, for example, Rule R-24 Construction Industry Dispute Resolution Procedures (American Arbitration Association) which permits discovery only in the discretion of the arbitrator(s).

[FN13]. FLA. STAT. §558.005(3) (2006).

[FN14]. FLA. STAT. §558.004(15) and 558.004 (2) (2006).

[FN15]. FLA. STAT. §§558.005(1) and 558.005 (4) (2006).

[FN16]. *E.g.*, "The parties hereby agree to opt out of the provisions of Ch. 558, Fla. Stat. In the event of a claimed defect, the parties agree to pursue mediation by written demand from the owner claiming a construction defect to any party believed by the owner to be responsible for the defect as a condition precedent to any final dispute resolution procedure, arbitration or litigation [as appropriate]. Moreover, the parties agree that if mediation is requested, the other party(ies) who have been requested to mediate may inspect the alleged defect(s) upon prompt and reasonable written notice prior to the mediation."

[FN17]. FLA. STAT. §558.004(5)(a) (2006).

[FN18]. FLA. STAT. §558.004(15) (2006).

[FN19]. *Id.*

[FN20]. *See, e.g.*, Rules R-24 and L-5(b), Construction Industry Dispute Resolution Procedures (American Arbitration Association).

[FN21]. *Geller v. Aventura Land Holdings, Ltd.*, Case No. 06-09739-CA-06, Florida 17th Circuit.

[FN22]. FLA. STAT. §558.004(5) (2006).

[FN23]. FLA. STAT. §§558.002(3) and 558.004(3) (2006).

[FN24]. FLA. STAT. §558.004(1) (2006).

[FN25]. FLA. STAT. §558.004(2) (2006).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

83-FEB FLBJ 42
83-FEB Fla. B.J. 42

[FN26]. FLA. STAT. §558.004(15) (2006).

[FN27]. *Id.*

[FN28]. FLA. STAT. §558.004(2) (2006).

[FN29]. FLA. STAT. §558.004(2)(b) (2006).

[FN30]. FLA. STAT. §558.004(2) (2006).

[FN31]. It is difficult to imagine how a court could make this determination absent expert testimony based on observations conducted at the time destructive testing is requested.

[FN32]. FLA. STAT. §558.004(1) and (6) (2006).

[FN33]. There is no penalty set forth in the statute.

[FN34]. Of course, one never knows whether such disinterest could be a hot button for the trier of fact.

[FN35]. FLA. STAT. §§558.004(4) and (5) (2006).

[FN36]. FLA. STAT. §558.004(1) (2006).

[FN37]. At this juncture, the only option to identify other culpable parties is through informal means, such as by a review of client documents and building department records, especially in the absence of formal discovery.

[FN38]. Practitioners often raise this issue as the basis for an objection yet the statute appears advisory at best as it states: "The claimant shall endeavor to serve the notice of claim within 15 days after discovery or an alleged defect, but the failure to serve the notice of claim within 15 days does not bar the filing an action subject to 558.003."

[FN39]. FLA. STAT. §558.004(3) (2006).

[FN40]. FLA. STAT. §558.004(2) (2006).

[FN41]. FLA. STAT. §558.004(4) (2006).

[FN42]. FLA. STAT. §558.004(5) (2006).

[FN43]. The study committee was comprised of Bruce Alexander, Fred Dudley, Tim Ford, Larry Leiby, Steve Lesser, Joy Lundeen, Lee Weintraub, and Brian Wolf.

[FN44]. The text of the bill is not offered here since it has not yet been introduced as of this writing and is subject to change.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

83-FEB FLBJ 42                                                                    Page 9
83-FEB Fla. B.J. 42

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

THIS EXHIBIT LEFT INTENTIONALLY BLANK.

COMPOSITE EXHIBIT "D"



# Sivyer Barlow & Watson, P.A.

### ATTORNEYS AT LAW

MAHLON H. BARLOW, III

R.J. HAUGHEY, II

EDWARD J. KUCHINSKI

J. CARLTON MITCHELL

MELISSA A. GIVENS

NEAL A. SIVYER

STEPHEN E. WALKER

PAUL D. WATSON

SUNTRUST FINANCIAL CENTRE
401 E. JACKSON STREET
SUITE 2225
TAMPA, FL 33602
(813) 221-4242
FAX: (813) 227-8598
www.sbwlegal.com

OF COUNSEL

GAIL M. ABERCROMBIE

DAVID S. WATSON

SENDER'S EMAIL:
swalker@sbwlegal.com

March 16, 2009

**VIA U.S. MAIL AND FACSIMILE**
Ervin A. Gonzalez, Esq.
Colson Hick Eidson
255 Aragon Avenue
2nd Floor
Coral Gables, Florida 33134

Re:     Taylor Woodrow Communities at Vasari/Niemeczura, Jr.

Dear Mr. Gonzalez:

This firm represents Taylor Woodrow Communities at Vasari, L.L.C. with respect to the issues raised in your letter of March 10, 2009. This will serve as our request for all available discoverable evidence relating to the alleged construction defect(s), including, but not limited to, expert reports, photographs, and videotapes, in accordance with § 558.004(15).

Also, my client would like to inspect the Niemeczura residence pursuant to § 558.004(2). This will serve as notice, under § 558.004(2)(a)-(f), that my client has determined that destructive testing is necessary to determine the nature and cause of the alleged defects. The destructive testing will be performed by James L. Poole, PhD, CIH, Senior Manager, ENVIRON International Corp., and will include the removal of several disks of drywall three (3) inches in diameter from the garage and various living areas of each residence. The disks of drywall, along with any dust or debris caused by the testing, will be removed from the home and the resulting holes will be immediately repaired. The estimated time to complete the inspection, destructive testing, and repairs is approximately three (3) hours for each residence. Please let me know when each residence will be available for inspection and testing.

I look forward to hearing from you.

Very truly yours,

Stephen E. Walker

SEW/hen
Cc: Taylor Woodrow Communities at Vasari, L.L.C.



EXHIBIT
COMPOSITE
"E"



# Sivyer Barlow & Watson, P.A.

### ATTORNEYS AT LAW

MAHLON H. BARLOW, III

R.J. HAUGHEY, II

EDWARD J. KUCHINSKI

J. CARLTON MITCHELL

MELISSA A. GIVENS

NEAL A. SIVYER

STEPHEN E. WALKER

PAUL D. WATSON

SunTrust Financial Centre
401 E. Jackson Street
Suite 2225
Tampa, FL 33602
(813) 221-4242
Fax: (813) 227-8598
www.sbwlegal.com

OF COUNSEL

GAIL M. ABERCROMBIE

DAVID S. WATSON

SENDER'S EMAIL:
swalker@sbwlegal.com

March 16, 2009

**VIA U.S. MAIL AND FACSIMILE**
Ervin A. Gonzalez, Esq.
Colson Hick Eidson
255 Aragon Avenue
2nd Floor
Coral Gables, Florida 33134

Re:     Taylor Woodrow Communities at Vasari/Galvin

Dear Mr. Gonzalez:

This firm represents Taylor Woodrow Communities at Vasari, L.L.C. with respect to the issues raised in your letter of March 10, 2009. This will serve as our request for all available discoverable evidence relating to the alleged construction defect(s), including, but not limited to, expert reports, photographs, and videotapes, in accordance with § 558.004(15).

Also, my client would like to inspect the Galvin residence pursuant to § 558.004(2). This will serve as notice, under § 558.004(2)(a)-(f), that my client has determined that destructive testing is necessary to determine the nature and cause of the alleged defects. The destructive testing will be performed by James L. Poole, PhD, CIH, Senior Manager, ENVIRON International Corp., and will include the removal of several disks of drywall three (3) inches in diameter from the garage and various living areas of each residence. The disks of drywall, along with any dust or debris caused by the testing, will be removed from the home and the resulting holes will be immediately repaired. The estimated time to complete the inspection, destructive testing, and repairs is approximately three (3) hours for each residence. Please let me know when each residence will be available for inspection and testing.

I look forward to hearing from you.

Very truly yours,

Stephen E. Walker

SEW/hen
Cc: Taylor Woodrow Communities at Vasari, L.L.C.



# Sivyer Barlow & Watson, P.A.

### ATTORNEYS AT LAW

MAHLON H. BARLOW, III

R.J. HAUGHEY, II

EDWARD J. KUCHINSKI

J. CARLTON MITCHELL

MELISSA A. GIVENS

NEAL A. SIVYER

STEPHEN E. WALKER

PAUL D. WATSON

SunTrust Financial Centre
401 E. Jackson Street
Suite 2225
Tampa, FL 33602
(813) 221-4242
Fax: (813) 227-8598
www.sbwlegal.com

OF COUNSEL

GAIL M. ABERCROMBIE

DAVID S. WATSON

SENDER'S EMAIL:
swalker@sbwlegal.com

March 16, 2009

**VIA U.S. MAIL AND FACSIMILE**
Ervin A. Gonzalez, Esq.
Colson Hick Eidson
255 Aragon Avenue
2nd Floor
Coral Gables, Florida 33134

Re:     Taylor Woodrow Communities at Vasari/Tarzy

Dear Mr. Gonzalez:

This firm represents Taylor Woodrow Communities at Vasari, L.L.C. with respect to the issues raised in your letter of March 10, 2009. This will serve as our request for all available discoverable evidence relating to the alleged construction defect(s), including, but not limited to, expert reports, photographs, and videotapes, in accordance with § 558.004(15).

Also, my client would like to inspect the Tarzy residence pursuant to § 558.004(2). This will serve as notice, under § 558.004(2)(a)-(f), that my client has determined that destructive testing is necessary to determine the nature and cause of the alleged defects. The destructive testing will be performed by James L. Poole, PhD, CIH, Senior Manager, ENVIRON International Corp., and will include the removal of several disks of drywall three (3) inches in diameter from the garage and various living areas of each residence. The disks of drywall, along with any dust or debris caused by the testing, will be removed from the home and the resulting holes will be immediately repaired. The estimated time to complete the inspection, destructive testing, and repairs is approximately three (3) hours for each residence. Please let me know when each residence will be available for inspection and testing.

I look forward to hearing from you.

Very truly yours,

Stephen E. Walker

SEW/hen
Cc: Taylor Woodrow Communities at Vasari, L.L.C.



# Sivyer Barlow & Watson, P.A.
### ATTORNEYS AT LAW

MAHLON H. BARLOW, III

R.J. HAUGHEY, II

EDWARD J. KUCHINSKI

J. CARLTON MITCHELL

MELISSA A. GIVENS

NEAL A. SIVYER

STEPHEN E. WALKER

PAUL D. WATSON

SunTrust Financial Centre
401 E. Jackson Street
Suite 2225
Tampa, FL 33602
(813) 221-4242
Fax: (813) 227-8598
www.sbwlegal.com

OF COUNSEL

GAIL M. ABERCROMBIE

DAVID S. WATSON

SENDER'S EMAIL:

nsivyer@sbwlegal.com

May 8, 2009

**VIA U.S. MAIL AND FACSIMILE**

Kenneth G. Gilman, Esquire
Gilman and Pastor, LLP
6363 Highcroft Drive
Naples, Florida  34119

Re:     Taylor Woodrow Communities at Vasari, LLC/
        28274 Altessa Way, Vasari Country Club
        (Duane Ankney)

Dear Mr. Gilman:

I represent Taylor Woodrow Communities at Vasari, LLC.  I have reviewed a copy of your letter dated April 30, 2009, to my client.  We do not agree that Mr. Ankney is entitled to rescission.  In this real estate market all homeowners would love to have their contracts rescinded and original purchase price refunded, but that it is not the remedy for Mr. Ankney under the terms of his warranty, the contract for sale, or Florida law.  I know that your client has attempted to sell this home, however, values of all homes in this part of Florida have decreased, even those without drywall issues.

Pursuant to Florida Statutes Section 558, your client has a duty to provide us notice of any construction defects, together with all discoverable information.  That statute provides my client an opportunity to inspect the residence, and make repairs if need be.  The warranty also provides a right to repair.

You letter states that in November 2006, Mr. Ankney closed on his home and that Taylor Woodrow "knew" that the drywall could cause severe property damage.  However, you cite no evidence to support this allegation.  What evidence do you have that at the time that Mr. Ankney signed his contract and/or prior to closing that Taylor Woodrow Communities at Vasari, LLC., knew that the drywall could cause severe property damage?  Your client's final punch list and inspection report has no mention of this issue.

When an odor problem was identified at the residence, my client installed an air purification system, as recommended by an inspector. That was the last that we heard of this problem until 14 months later. Obviously if my client knew of a condition with the drywall that would cause severe property damage it would have fixed the problem prior to closing. The fact that the details of the drywall problem were not known to anyone is evidenced by your client purchasing three units at this development (apparently only one had the drywall problem).

You did not mention in your letter that you have a pending lawsuit against the suppliers of the materials, but that the lawsuit did not name Taylor Woodrow Communities at Vasari, LLC. Apparently you were seeking the same damages in that lawsuit against other parties but did not feel my client was responsible, at least at the time that you filed suit.

In summary, my client does not intend to pay your client $879,981. I would kindly suggest that you comply with Florida Statute 558 and the terms of your client's warranty. Taylor Woodrow Communities of Vasari, LLC., will then inspect and consider whether to make an offer to repair the alleged defects in your client's home.

Sincerely,

Neal A. Sivyer

NAS/kmp
cc:   Todd Merrill, Esquire

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL
CIRCUIT IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO.  50 2009 CA 026362 XXXX MB AO

GIANPAOLO and DANIELLE
CIANCIMINO,

        Plaintiffs,

vs.

CENTERLINE HOMES, INC., a Florida
Corporation; OCEAN COAST DRYWALL,
INC., BANNER SUPPLY INTERNATIONAL,
LLC; PROBUILD EAST, LLC; and RINKER
MATERIALS OF FLORIDA, INC., a
Florida corporation,

        Defendants.

_____/

**ORDER ON DEFENDANT BANNER SUPPLY CO.'S MOTION TO ABATE PENDING
PLAINTIFFS' COMPLIANCE WITH CHAPTER 558, FLORIDA STATUTES AND
MOTION FOR ENLARGEMENT OF TIME**

*+ OCEAN COAST DRYWALL'S*

THIS CAUSE having come to be heard on September 22, 2009 on Defendant Banner Supply Co.'s *+ Ocean Coast Drywall's*

Motion to Abate Pending Plaintiffs' Compliance with Chapter 558, Florida Statutes and Motion for

Enlargement of Time, and after hearing argument of counsel, having reviewed the file and being otherwise

fully advised in the premises, it is hereby

        ORDERED AND ADJUDGED:

*Granted. The matter is abated until November 1, 2009 for the parties to comply with Chapter 558.*

        DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this *22* 

day of September, 2009.

                              Honorable Thomas H. Barkdull, III
                              Circuit Judge

cc:    Jeffrey A. Backman, Esq.
       All parties on the attached service list

**EXHIBIT
COMPOSITE
" F "**
tabbies

CASE NO.  50 2009 CA 026362 XXXX MB AO

## SERVICE LIST

| | |
|---|---|
| Manuel R. Comras, Esq.<br>McIntosh, Sawran, Peltz & Cartaya, P.A.<br>Centurion Tower, 1601 Forum Place<br>Suite 1110<br>West Palm Beach, Florida 33401<br>*Counsel for Plaintiffs Gianpaolo and Danielle Ciancimino* | Peter R. Goldman, Esq.<br>Adam G. Rabinowitz, Esq.<br>Broad and Cassel<br>One Financial Plaza<br>100 SE 3rd Avenue, Suite 2700<br>Fort Lauderdale, FL  33394<br>Phone:  954-764-7060<br>Fax:  954-761-8135<br>*As Counsel for Centerline Homes, Inc.* |
| Edwin E. Mortell, III, Esq.<br>Sarah M. Vazquez, Esq.<br>Peterson Bernard<br>416 Flamingo Avenue<br>Stuart, FL  34996<br>*Counsel for Defendant Ocean Coast Drywall of South Florida, Inc.* | Benjamin L. Bedard, Esq.<br>Roberts, Reynolds, Bedard & Tuzzio, P.A.<br>470 Columbia Drive, Bldg. C<br>West Palm Beach, FL  33409<br>*Counsel for Defendant Rinker Materials of Florida, Inc.* |
| Robert J. Bryan, Esq.<br>Robert J. Bryan, P.A.<br>90 Almeria Avenue, Suite 200<br>Coral Gables, FL 33134<br>Counsel for ProBuild East | Geoffrey B. Marks, Esq.<br>Billbrough & Marks, P.A.<br>100 Almeria Avenue, Suite 320<br>Coral Gables, FL 33134<br>Counsel for ProBuild East |

WAYNE KAPLAN and JUDITH A. STICHTER,

Plaintiffs,

VS.

ALBANESE-POPKIN THE OAKS DEVELOPMENT
GROUP, L.P., et al.,

Defendants

IN THE CIRCUIT COURT OF THE 15th

JUDICIAL CIRCUIT, IN AND FOR PALM BEACH

COUNTY, FLORIDA

Case No.: 50 2009 CA 026 711 XXX MB AF

)
)
)
)
)
)
)

**ORDER**

on

Motions For Abatement

THIS CAUSE having come on to be heard on this 10th day of September, 2009, on Defendant's/Plaintiff's

Motions For Abatement

and the Court having considered the record, having heard counsel, and being otherwise advised in the Premises,

it is hereupon,

ORDERED AND ADJUDGED that said Motions be, and the same is hereby

are granted as follows: The action is abated until October 16, 2009 for

all parties. The Defendants shall thereafter have twenty (20) days to

respond to the Complaint

DONE AND ORDERED in Chambers, at _____ Beach _____ County, Florida

this _____ day of _____, _____.

_____
Circuit Judge

Copies furnished: counsel of record
Wayne Kaplan
Lyssa Friedheim
Benjamin Bedard
Jeffrey Backman
Susan Cole
Gisela Marquez, F. Morell

To reorder call Graftek 800/848-2992

IN THE CIRCUIT COURT OF THE 20th JUDICIAL CIRCUIT OF FLORIDA
IN AND FOR LEE COUNTY                    .          CIVIL DIVISION

CASE NO.  09-CA-001744 (McHugh)

JOHN C. NOWICKI

                    Plaintiff,

vs.

**HANSEN HOMES OF SOUTH FLORIDA, INC.,** a
Florida corporation; KNAUF GIPS KG, a German
corporation; KNAUF PLASTERBOARD (TIANJIN)
CO., LTD., a Chinese limited liability corporation;
KNAUF PLASTERBOARD (WUHU)( CO., LTD., a
Chinese   limited   liability   corporation;   KNAUF
PLASTERBOARD (DONGGUAN) CO., LTD., a
Chinese limited liability corporation; BEIJING NEW
BUILDING MATERIAL, PLC, a Chinese corporation,
TAISHAN   GYPSUM   CO.,   LTD.,   a   Chinese
corporation, SHANDONG TAIHE DONGXIN CO.,
LTD., a Chinese corporation; USG CORPORATION,
a Delaware corporation, L&W SUPPLY CORP. d/b/a
SEACOAST SUPPLY, a Delaware corporation, ALL
INTERIOR SUPPLY, INC., a Florida corporation;
BANNER   SUPPLY   CO.,   a   Florida   corporation,
ROTHCHILT   INTERNATIONAL   LTD.,   a   foreign
corporation; LA SUPREMA TRADING, INC., a Florida
corporation, LA SUPREMA ENTERPRISE, INC., a
Florida   corporation;   BLACK   BEAR   GYPSUM
SUPPLY, INC., a Florida corporation; I.B.S.A., INC., a
North Carolina corporation

                    Defendants.
_____/

## ORDER ON DEFENDANT, HANSEN HOMES OF SOUTH FLORIDA, INC.'S MOTION TO ABATE

    THIS MATTER having come before the Court on the Defendant, HANSEN

HOMES OF SOUTH FLORIDA, INC'S, Motion to Abate, and the Court having heard

arguments of counsel and being otherwise fully advised in the premises, it is hereby

    CONSIDERED, ORDERED, AND ADJUDGED that the Motion is

CASE NO.   09-CA-001744 (McHugh)

(GRANTED)/DENIED _____

_____

_____

DONE AND ORDERED in Chambers in Ft. Myers, Lee County, Florida

this _____ day of _____, 2009.

ORIGINAL SIGNED

SEP 0 8 2009

MICHAEL T. McHUGH
CIRCUIT JUDGE

_____
MICHAEL T. McHUGH
CIRCUIT COURT JUDGE

Copies furnished to:

Jeremy W. Alters, Esquire
Kimberly L. Boldt, Esquire
Alters Boldt Brown Rash & Culmo, P.A.
4141 NE 2nd Avenue, Suite 201
Miami, Florida  33137

Edward Briscoe, Esquire
Elizabeth J. Ferry, Esquire
Fowler White Burnett, PA
Espirito Santo Plaza, 14h Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Attorneys for Black Bear Gypsum

Jeffrey A. Backman, Esquire
Jan Douglas Atlas, Esquire
Adorno & Yoss, LLP
350 E Las Olas Blvd., Ste. 1700
Ft. Lauderdale, Florida 33301
Attorneys for Banner Supply

Michael K. Feldman, Esquire
1111 Kane Concourse
Suite 209
Bay Harbor Islands, FL  33154
Attorney for La Suprema Trading

2

CASE NO. 09-CA-001744 (McHugh)

Eduardo I. Rasco, Esq.
Rosenthal Rosenthal Rasco Kaplan LLC
One Aventura, Suite 600
20900 N. E. 30th Avenue
Aventura, FL 33180
Attorneys for La Suprema

Susan J. Cole, Esquire
Bice Cole Law Firm
999 Ponce de Leon Blvd., Suite 710
Coral Gables, FL 33134
Attorneys for L&W Supply Corp d/b/a Seacoast Supply

Gary F. Bauman, Esquire
Fulmer, LeRoy, Albee, Bauman
2866 East Oakland Park Blvd
Fort Lauderdale, FL 33306
Attorneys for Independent Builders Supply

Clark W. Smith, Esq.
Michele I. Nelson, Esq.
Paxton & Smith, PA
Barristers Building, Suite 500
1615 Forum Place
West Palm Beach, FL 33401

3

# LIGHT & ASSOCIATES, P.A.

### ATTORNEYS AT LAW

1990 MAIN STREET
SUITE 750
SARASOTA, FL  34236

941-309-5415 (GULF COAST OFFICES)
305-582-7629 (SOUTH FLORIDA OFFICES)
305-357-6896 (FACSIMILE)
VLIGHT@LA-PA.COM

WWW.LA-PA.COM

OFFICE LOCATIONS:
FT. LAUDERDALE, FL
MIAMI, FL
WEST PALM BEACH, FL
BOCA RATON, FL
NAPLES, FL
SARASOTA, FL
TAMPA, FL
CAPE CANAVERAL, FL

BY APPOINTMENT ONLY

May 1, 2008

VIA  FIRST CLASS MAIL

Morrison Homes Warranty Services
3700 Mansell Rd., Ste. 300
Alpharetta, GA  30022-8246

## NOTICE OF WARRANTY CLAIM
## CONSTRUCTION DEFECTS DEMAND

Ladies and Gentlemen:

Please be advise that the undersigned law firm has been retained to represent Ms. Kristin Culliton with regard to certain construction defects shown and admitted to exist Ms. Culliton's residence located at 15314 Skip Jack Loop, Bradenton, FL  34202 (the "Residence"). Specifically, Morrison Homes has admitted to importing and installing defective and potentially toxic drywall.

This correspondence and the enclosed Notice of Warranty Claim (form supplied by Morrison Homes) shall serve as demand for immediate replacement of all drywall located at the Residence. This shall also serve as statutory notice for all legal purposes. We have attempted to communicate with Morrison Homes numerous times regarding this matter but have been entirely ignored. Ms. Culliton, who is employed by Morrison Homes has also expressed concern regarding the hostile environment she has been subjected to since requesting Morrison Homes repair the construction defect. All appropriate parties are hereby on notice that continuing in this mode of reaction will result in very negative consequences for all involved. Especially in light of the fact that Ms. Culliton is pregnant, we would expect a responsible (or intelligent) corporation to take seriously matters which your own correspondence reveals to be potentially toxic.

If we have not received positive and satisfactory response by as of the expiration of the statutory cure period, we will encourage our client to bring actions in construction defects, toxic tort and hostile work environment against Morrison Homes. Finally, due to the evidence that Ms. Culliton has already been subjected to inappropriate forms of intimidation from your company, your are advised to direct all future correspondence to Ms. Culliton through this law



EXHIBIT
COMPOSITE
"G"

firm.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

FOREVER

VIRGIL I. LIGHT,
FOR THE FIRM

cc:    Sheryl Palmer

# NOTICE OF CLAIM

## For Major Structural Defects Claims Only

YOUR NAME _Kristin   Culliton_

ADDRESS OF CLAIM _See   Attached   Correspondence_
(Street)                              (City)                    (Zip)

HOME PHONE _____   BUSINESS PHONE _504 - 388 - ____

EFFECTIVE DATE OF WARRANTY   _09_     _____     ____
(Mo.)      (Day)      (Year)

Please note that your Ten-Year Limited Structural Warranty provides limited coverage which is subject to exclusions and conditions. You are encouraged to review the structural coverage provisions of **the little purple book**. Please answer the following questions:

1. Have you reviewed the structural warranty section of **the little purple book**?
   _Yes_     No

2. Do you believe that you have actual physical damage to one or more of the listed load bearing portions of your home?     Yes     No   _Unknown_

3. Have you reviewed the list of non-load bearing elements which do not qualify as a Major Structural Defect under this coverage?     _Yes_     No

4. Do you believe that your home is unsafe or otherwise unlivable as a result of the defect?     _Yes_     No

5. Are you the original owner of this home?     _Yes_     No

NATURE OF DEFECT (BE SPECIFIC. IF AVAILABLE, ENCLOSE PHOTOGRAPHS)

_Corrosion   defective & toxichall   toxic_

_Dry wall_

(continued on the next page)

11

NATURE OF DEFECT (cont'd)

_____

_____

_____

_____

DATE DEFECT FIRST OBSERVED    09    21    06
                            (Mon)  (Day)  (Year)

CHECK ONE (if applicable):    FHA    VA    FmHA

Case #  _will file w/ bank of health in lot recorded._

If you are the original owner, and your name is FHA-financed, please provide the following:

Name of mortgage company _____

Address of mortgage company _____

DATED  5/11/8              _V. B. Foster, as owner._
                                    (signature)

DATED _____        _____
                                    (signature)

THIS FORM IS TO BE COMPLETED, SIGNED BY ALL OWNERS AND FAXED OR MAILED TO:

            Morrison Homes Warranty Services
            3700 Mansell Road, Suite 401
            Alpharetta, Georgia 30022-8246

            Telephone: 1-888-84-FIELD
            Facsimile: 1-770-998-8144

12



**Colson**
**Hicks**
**Eidson**

ERVIN A. GONZALEZ
Board Certified Civil &
Business Trial Attorney

March 10, 2009

*Via Certified Mail and First Class Mail*
Taylor-Woodrow Communities at Vasari
c/o NRAI Services, Inc., Registered Agent
2731 Executive Park Drive, Suite 4
Weston, FL 33331

Re: *Defective Drywall Class Action*

To Whom It May Concern:

Pursuant to Florida Statutes chapter 558 on behalf of James B. Tarzy, residing at 28479 Altessa Way, #101, Bonita Springs, FL 34135, we write to provide you notice of our intent to file an action for construction defect against Taylor-Woodrow Communities at Vasari on Mr. Tarzy's behalf. The problem in the home is caused by defective drywall that emits high levels of sulfur. The drywall in the home emits levels of sulfur that damages wires, pipes, metal, air conditioning, HVAC, plumbing electronic equipment, fixtures, furnishings, and potentially health. The problem causes economic damages and potential personal injury and an increased risk of future health problems.

In order to fix the problem, the following items must be removed and replaced: all of the drywall in the home, all of the flooring in the home, the air conditioning unit(s), cabinetry, mirrors, any affected electrical wiring and plumbing. You are also responsible for consequential damages in the form of moving costs and comparable replacement housing for the homeowners during time the home is fixed, as set forth above, as well as the cost of medical monitoring and damage related to potential personal injury. The homeowners have also suffered economic damages from the loss of value of their home, as a result of the stigma attached to their house because of the defective drywall. Pursuant to Florida Statutes section 558.004(5) you have 45 days to serve a written response upon undersigned counsel on how you intend to remedy this situation. We look forward to your early reply. Should you have any questions, please do not hesitate to contact us.

Very truly yours,

Ervin A. Gonzalez

EAG/ed


Colson
Hicks
Eidson

ERVIN A. GONZALEZ
Board Certified Civil &
Business Trial Attorney

March 10, 2009

*Via Certified Mail and First Class Mail*
Taylor-Woodrow Communities at Vasari
c/o NRAI Services, Inc., Registered Agent
2731 Executive Park Drive, Suite 4
Weston, FL 33331

   *Re: Defective Drywall Class Action*

To Whom It May Concern:

   Pursuant to Florida Statutes chapter 558 on behalf of Larry and Rene Galvin, residing at 11019 Carrara Ct., #202, Bonita Springs, FL, we write to provide you notice of our intent to file an action for construction defect against Taylor-Woodrow Communities at Vasari on the Galvins' behalf. The problem in the home is caused by defective drywall that emits high levels of sulfur. The drywall in the home emits levels of sulfur that damages wires, pipes, metal, air conditioning, HVAC, plumbing electronic equipment, fixtures, furnishings, and potentially health. The problem causes economic damages and potential personal injury and an increased risk of future health problems.

   In order to fix the problem, the following items must be removed and replaced: all of the drywall in the home, all of the flooring in the home, the air conditioning unit(s), cabinetry, mirrors, any affected electrical wiring and plumbing. You are also responsible for consequential damages in the form of moving costs and comparable replacement housing for the homeowners during time the home is fixed, as set forth above, as well as the cost of medical monitoring and damage related to potential personal injury. The homeowners have also suffered economic damages from the loss of value of their home, as a result of the stigma attached to their house because of the defective drywall. Pursuant to Florida Statutes section 558.004(5) you have 45 days to serve a written response upon undersigned counsel on how you intend to remedy this situation. We look forward to your early reply. Should you have any questions, please do not hesitate to contact us.

   Very truly yours,

   Ervin A. Gonzalez

GILMAN AND PASTOR LLP
ATTORNEYS AT LAW
6363 HIGHCROFT DRIVE
NAPLES, FLORIDA 34119

TELEPHONE: (239) 598-3541                          FACSIMILE: (239) 598-3982

W W W. GILMANPAS TOR. C OM

Confidential
Settlement Communication

April 30, 2009

VIA ELECTRONIC MAIL Rick
Wilmeth
Vice President
Taylor Construction Group 2301
128th .Street
Urbandale, IA 50323

Re: Claim of Duane Ankney — Vasari

THIS LETTER IS REDACTED. IT DOES NOT MENTION CHAPTER 558 NOTICES OR
RESPONSES.