UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | : | MDL |
| DRYWALL PRODUCTS LIABILITY | : | |
| LITIGATION | : | SECTION L |
| | : | |
| | : | JUDGE FALLON |
| **This document relates to:** | : | |
| **ALL ACTIONS** | : | MAG. JUDGE WILKINSON |

**DISTRIBUTOR DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR RULE 12(b)(6) MOTION TO DISMISS OR,
ALTERNATIVELY, TO STRIKE PLAINTIFFS' TORT CLAIMS FOR ECONOMIC
DAMAGES AND INCORPORATED MEMORANDUM OF LAW**

## BACKGROUND

"Distributor Defendants"[1] submit the instant Memorandum of Law in Support of their

Motion Pursuant to Federal Rule of Civil Procedure 12, to Dismiss Plaintiffs' Complaints or,

Alternatively, to Strike Plaintiffs' Tort Claims for Economic Damages. This Memorandum is

limited and directed solely to Plaintiffs' property damage claims against Distributor Defendants

brought under Florida law based upon tort theories of recovery. As to these specific claims,

pursuant to Florida law, even if the allegations of Plaintiffs' Complaints are accepted as true,

Distributor Defendants would, at most, be liable <u>only</u> for: (1) personal injury; and/or (2) damage

to "other property."[2] As to the broader elements of damages sought by Plaintiffs' tort claims,

including, but not limited to, the removal and replacement of drywall, damage to other elements

of Plaintiffs' homes and relocation expenses, these claims cannot support a recovery for

---

[1] "Distributor Defendants" includes all parties against which liability is based on alleged distribution activities, whether or not such parties engaged in such activity.

[2] As explained in detail below, "other property" constitutes items such as televisions, stereos, jewelry and other items of personal property, which would not be considered part of the finished product purchased by Plaintiffs herein, i.e., Plaintiffs' homes.

economic damages against Distributor Defendants as a matter of law because any such claims are barred by the Economic Loss Rule.

### 1.    **The Legal Standard**

A Rule 12(b)(6) motion assumes that the allegations in the complaint be taken as true. Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007).    A cause of action is subject to dismissal only if the plaintiffs can prove no set of facts in support of the claim or there is a legal bar precluding relief.    Powell v. Barrett, 496 F.3d 1288, 1304 (11th Cir. 2007) (explaining that "[a] complaint is subject to dismissal under Rule 12(b)(6) when the allegations in the complaint, on their face, show that an affirmative defense bars recovery on the claim"). For a cause of action to survive a motion to dismiss, there must be "either direct or inferential allegations respecting all material elements of a cause of action."    Snow v. DirecTv, Inc., 450 F. 3d 1314, 1320 (11th Cir. 2006).    While the rule "does not impose a probability requirement at the pleading stage," it "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Florida International Univ., 495 F. 3d 1289, 1295-96  (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).    Unless the complaint contains "facts that are suggestive enough to render [the element] plausible," it should be dismissed.  Id. (citing Twombly, 550 U.S. at 556).

Alternatively, Distributor Defendants request that this Court strike Plaintiffs' damage claims for economic losses pursuant to tort theories of recovery for anything beyond "other property" or personal injury.  A motion to strike damages is appropriate when a plaintiff claims damages that are legally unavailable.  See Brokke v. Stauffer Chem. Co., Inc., 703 F. Supp. 215, 222 (D. Conn. 1988) (claim for punitive damages stricken as not permitted under statute); McLaren v. Emory Univ., 705 F. Supp. 563 (N.D. Ga. 1988) (allegations of nonpecuniary

damages stricken as legally unsupported); <u>Barnett v. Carnival Corp.</u>, 2007 U.S. Dist. LEXIS 43636 (S.D. Fla. 2007) (nonpecuniary damages stricken as not supported by statute). Distributor Defendants submit that Plaintiffs cannot recover these damages under the claims asserted as a matter of law. Should these damages not be stricken at this time, Distributor Defendants would be prejudiced in having to litigate these legally insufficient claims, only to have them dismissed later.

### 2.    The Complaints

The Complaints, in all material respects, are identical. Many are brought by Florida homeowners and seek Florida or national classes. See e.g. <u>Allen v. Knauf GIPS, et al.</u>, 2:09-CV-54-FtM-99-DNF; <u>Foster v. Northstar Holdings, Inc., et al.</u> (09-80535-CIV-Cohn); <u>Garcia v. Lennar Corp. et al.</u> (09-20739-CIV-Ungaro); <u>Ankney v. Knauf Gips KG, et.</u> (09-CV-166-FtM-99SPC). The <u>Allen v. Knauf GIPS, et al.</u>, case, filed in Fort Meyers, Florida, provides a good example of the improper and legally insufficient damages Plaintiffs seek to recover against Distributor Defendants, alleging:

> Defendants "manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold" drywall. (Par. 1).
>
> Plaintiffs' damages include the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property. Plaintiffs and the Plaintiff class members have also suffered and continue to suffer personal injuries as a result of Defendants' defective drywall, including, but not limited to, allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns. (Par. 31).

Allegations of damages in other representative Plaintiff Complaints include, "replacement/repair of their homes;" "the removal and replacement of all of the drywall contained in their homes;" "the costs of moving while the homes are being repaired;" "renting of comparable housing during the duration of the repairs;" "the cost of repair or replacement of the

**ADORNO & YOSS LLP**

350 EAST LAS OLAS BLVD. • SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

homes;" "the loss of use and enjoyment of real property;" "the loss in value of the home due to the stigma attached to having defective drywall in the home;" and "other related expenses." See Ankney Compl. at Par. 166-67; Vickers Am. Compl. at Par. 192-93; Culliton Sec. Am. Compl. at Par. 157-58.[3]

The Allen Complaint, as to each Distributor Defendant, asserts four (4) claims: (1) breach of the implied warranty of merchantability; (2) breach of the implied warranty of fitness for a particular purpose; (3) breach of express warranty; and (4) strict liability. Other Complaints filed by Plaintiffs in Florida seeking damages against Distributor Defendants are very similar and add additional claims, including claims for deceptive trade practices, unjust enrichment, private nuisance and fraudulent concealment. Cf. Foster v. Northstar Holdings, Inc., et al. (09-80535-CIV-Cohn); Garcia v. Lennar Corp. et al. (09-20739-CIV-Ungaro); Ankney v. Knauf Gips KG, et. (09-CV-166-FtM-99SPC). Nevertheless, all of the Florida Complaints contain tort claims against Distributor Defendants such as strict liability and negligence.[4] See id., Allen v. Knauf GIPS, et al., 2:09-CV-54-FtM-99-DNF.

Taking the allegations of the Complaints as true, under Florida law, Plaintiffs' tort theories against Distributor Defendants cannot support a claim for property damage to anything more than "other property," separate and apart from Plaintiffs' homes, in that the law is clear that a distributor is not liable for the damages claimed by Plaintiffs under the currently asserted theories. As a result, Distributor Defendants submit that this Court should grant the instant

---

[3] This brief references various Complaints. Plaintiffs have not yet served all Complaints in this MultiDistrict Litigation ("MDL"). By referring to a Complaint in this Memorandum, no Distributor Defendant is thereby accepting service, and each Distributor Defendant reserves all defenses.

[4] This is not an exhaustive list of tort claims. Distributor Defendants reserve the right to argue that many other claims are grounded in tort and are barred by the Economic Loss Rule.

Motion and dismiss Plaintiffs' tort claims and/or strike Plaintiffs' claims for economic damages against Distributor Defendants for anything beyond damage to "other property."

## ARGUMENT

**A.**     **Florida's Economic Loss Rule Operates as a Bar to Plaintiffs' Tort Claims Against Distributor Defendants for Damages to Anything Beyond "Other Property" or Personal Injury.**

As a matter of law, Plaintiffs have no viable tort claim for property damages against Distributor Defendants for anything beyond "other property," such as televisions and stereos, as the Economic Loss Rule bars a tort claim against Distributor Defendants for damages to the product purchased by Plaintiffs, in this case, the homes in their completed state.[5]

**(i)**     **Florida's Economic Loss Rule Prohibits Tort Recovery For Damages to the Finished Product Purchased, i.e., Plaintiffs' Homes, Including Their Component Parts.**

The Economic Loss Rule "prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself." Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244, 1246 (Fla. 1993). Of course, this description of the Economic Loss Rule immediately raises the questions of what constitutes the "product" and damage to the "product" itself in the context of the instant Chinese drywall litigation. In the case of building products used in home construction, "the product" is the home itself, or that product (in its completed state) purchased by the consumer, so that the Economic Loss Rule prohibits any recovery in tort for economic damages to the finished product purchased by Plaintiffs, i.e., the home, by an allegedly defective component of the finished product. Casa Clara, 620 So.2d at 1246; In re Masonite Corp. Hardboard Siding Prods. Liab. Litig., 21 F. Supp. 2d 593 (E.D. La. 1998); Pulte Home Corp. v.

---

[5] A federal court sitting in a diversity case is of course constrained to apply state law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

Osmose Wood Preserving, Inc., et al. case no. 89-788-CIV-T-17A, 1992 U.S. Dist. LEXIS 19441 (M.D. Fla. 1992); Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734 (11th Cir. 1995)[6]. *In other words, damage to other components integrated into a single unit are not considered damage to "other property" for purposes of the Economic Loss Rule.*

The Economic Loss Rule was "developed to protect manufacturers [and distributors] from liability for economic damages caused by a defective product beyond those damages provided by warranty law." See Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 538 (Fla. 2004). "[A] manufacturer or distributor in a commercial relationship has no duty beyond that arising from its contract [if any] to prevent a product from malfunctioning or damaging itself." Id. at 542. The Economic Loss Rule "applies even in the absence of privity of contract." Id. at 541 (citations omitted); See Moransais v. Heathman, 744 So. 2d 973, 977 (Fla. 1999). In adopting the Economic Loss Rule, the Florida Supreme Court reasoned that "contract principles [are] more appropriate than tort principles for resolving economic loss . . . ." Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So. 2d 899, 902 (Fla. 1987) (formally adopting by name the "Economic Loss Rule" as applied by the United States Supreme Court and a "majority of courts").

According to the Florida Supreme Court, "Economic loss has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property.' It includes 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold,'" or the "'disappointed economic

---

[6] See also Bowling Green Municipal Utilities v. Thomas-son Lumber Co., 902 F. Supp 134 (W.D. Ky. 1995) (concluding that the "defective product" is considered to be the finished product bargained for by the buyer rather than its individual components).

expectations,' which are protected by contract law, rather than tort law." Casa Clara Condo. Assoc., Inc., 620 So. 2d at 1246 (citations omitted); Stallings v. Kennedy Electric, Inc., 710 So. 2d 195 (Fla. 5th DCA 1998) (applying the Economic Loss Rule to preclude damages in tort for "lost use and enjoyment of their home," "additional rental expense" and a complete rewiring of the home where damage was caused by defective wiring which caused two fires in the home); Lucer Mfg. v. Milwaukee Steel Foundry, 777 F. Supp. 413 (E.D. Pa. 1991) (finding that economic loss includes claims for loss of goodwill).

### (ii)    The Florida Supreme Court's Decision in Casa Clara Requires Dismissal of Plaintiffs' Claims Against Distributor Defendants.

In Casa Clara, a homeowners' association, which included the owners of both condominium units and single family homes, brought suit against various defendants, including a concrete supplier, for defective concrete utilized in the construction of the condominiums and homes. Various contractors built the structures, but they all had one thing in common - - Toppino and Sons ("Toppino") had supplied the concrete used in the construction of the walls. During construction, Toppino had mixed excess salt into the concrete, and the salt had corroded the concrete's reinforcing steel. As a result, the concrete would fracture and break. The homeowners sought economic damages for the lost value of their homes caused by the defective concrete walls and alleged, as well, that the concrete presented a risk of personal injury.

The trial court dismissed the claims against Toppino, and the Florida Supreme Court framed the controlling issue in the following manner:

> The issue is whether a homeowner can recover for purely economic losses from a concrete supplier under a negligence theory. We agree with the district court that such a recovery cannot be had and approve the decisions under review and disapprove the conflicting decisions.

Casa Clara Condo. Assoc., Inc., 620 So. 2d at 1245.

{218429.0005/N0785757_1}

7

ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD. • SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

Thus, Casa Clara presented the question of whether the Economic Loss Rule barred a tort claim brought by a homeowner against the supplier of a component of a home incorporated into the finished product.  The court observed that, "[p]laintiffs find a tort remedy attractive because it often permits the recovery of greater damages than an action on a contract and may avoid the conditions of a contract."  Id.  However, the "[E]conomic Loss Rule . . . prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to property other than itself."  Id. at 1246.[7]

The Casa Clara court held that the completed home constituted "the product" so that the plaintiffs had no tort claim against the concrete supplier under the Economic Loss Rule, stating:

> The homeowners are seeking purely economic damages--no one has sustained any physical injuries and no property, other than the structures built with Toppino's concrete, has sustained any damage. They argue that holding them to contract remedies is unfair and that homeowners in general should be excepted from the operation of the Economic Loss Rule. We disagree.
>
> * * *
>
> The purpose of a duty in tort is to protect society's interest in being free from harm, Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (N.J. 1985), and the cost of protecting society from harm is borne by society in general. Contractual duties, on the other hand, come from society's interest   in the performance of promises. Id. When only economic harm is involved, the question becomes "whether the consuming public as a whole should bear the cost of economic losses sustained by those who failed to bargain for adequate contract remedies." Barrett, supra at 933.
>
> We are urged to make an exception to the economic loss doctrine for homeowners. Buying a house is the largest investment many consumers ever make, see Conklin v. Hurley, 428 So. 2d 654 (Fla. 1983), and homeowners are an appealing, sympathetic class. If a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law. East River, 476 U.S. at 870. There are protections for homebuyers, however, such as statutory warranties, the general warranty of habitability, and the duty of sellers to disclose defects, as well as the ability of purchasers to inspect houses for defects. Coupled with homebuyers' power to bargain over price, these protections must be viewed as

---

[7] Quoting Seely v. White Motor Co., 63 Cal.2d 9, 403 P.2d 145 (Ca. 1965).

sufficient when compared with the mischief that could be caused by allowing tort recovery for purely economic losses. **Therefore, we again "hold contract principles more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage."** Florida Power & Light, **510 So. 2d at 902. If we held otherwise, "contract law would drown in a sea of tort."** East River, **476 U.S. at 866. We refuse to hold that homeowners are not subject to the Economic Loss Rule.**

**The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant.** King v. Hilton-Davis, **855 F.2d 1047 (3d Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished products--dwellings--not the individual components of those dwellings. They bargained for the finished products, not their various components. The concrete became an integral part of the finished product and, thus, did not injure "other" property.**

\* \* \*

Therefore, we approve the district court's opinions and hold that the Economic Loss Rule applies to the purchase of houses.

Id. at 1246-48 (emphasis added).[8]

The Casa Clara decision should be dispositive as to this aspect of Distributor Defendants' Motion, in that it is clear that there can be no recovery in tort by a homeowner against the supplier of a building component for damage to the home. Indeed, as demonstrated below,

---

[8] It is noteworthy that the Casa Clara court expressly overruled Adobe Building Centers, Inc. v. Reynolds, 403 So.2d 1033 (Fla. 4th DCA 1981). In that case, homes had been constructed with defective stucco that dried in a pock-marked pattern. The plaintiff builders were not in privity with the supplier but had hired plasterers who had bought the stucco from defendant Adobe. The appeals court allowed the builder to proceed against Adobe in strict liability; Casa Clara rejected that result. Casa Clara also expressly overruled other Fourth District Court of Appeal decisions which had held that homeowners in construction defect cases could proceed on negligence claims against builders to recover economic losses. See Latite Roofing Co. v. Urbanek, 528 So. 2d 1381 (Fla. 4th DCA 1988); Drexel Props. v. Bay Colony Club Condo., 406 So. 2d 515 (Fla. 4th DCA 1981).

substituting the "Chinese drywall" for the "concrete" in the court's holding indisputably resolves this issue:

> **These homeowners bought finished products--dwellings--not the individual components of those dwellings. They bargained for the finished products, not their various components. The [Chinese drywall] became an integral part of the finished product and, thus, did not injure "other" property.**

### (iii)    The Florida Supreme Court Has Recently Reaffirmed Casa Clara, As Well As The Continuing Vitality of the Economic Loss Rule.

In 2004, the Florida Supreme Court expressly affirmed the <u>Casa Clara</u> opinion[9] and explained the Economic Loss Rule further in <u>American Aviation</u>. In <u>American Aviation</u>, the plaintiff purchased a used airplane. Defendant American Aviation had performed maintenance on the plane for the previous owner and had allegedly installed a landing gear thruster backwards. When the landing gear failed to fully extend during a landing and the plane was damaged, the new owner brought suit.

The Florida Supreme Court considered the following question:

> Whether the economic loss doctrine bars a negligence action to recover purely economic loss in a case where the defendant is neither a manufacturer nor distributor of a product and there is no privity of contract.

<u>Id.</u> at 535.

The court answered the question by stating:

> We conclude that the "economic loss doctrine" or Economic Loss Rule" bars a negligence action to recover solely economic damages only in circumstances where the parties are either in contractual privity or the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies.

<u>Id.</u>

---

[9] <u>American Aviation, Inc.</u>, 891 So.2d at 536, n.4 and 541.

**ADORNO & YOSS LLP**

350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

Citing to and following the rationale previously laid down in landmark cases decided by the United States Supreme Court and the California Supreme Court, *the Florida Supreme Court explained that, in the economic loss context, the consumer should look to the parties with which it has privity and their warranties and the limitations of those warranties to determine the nature of the responsibility undertaken with respect to products*, stating:

> As the theory of strict liability replaced the theory of implied warranties with regard to actions based on defective products that resulted in personal injury, the issue arose as to whether the courts should permit a cause of action in tort by one who suffered purely economic loss due to a defective product. For those who were in contractual privity, actions based on breach of warranty continued as the viable method if the only damages were economic in nature. But for those who were not in contractual privity and who sustained economic losses as a result of defective products, the question became what theory of recovery would be proper.

Id. at 539.

> Turning to its own past decisions, the Florida Supreme Court observed:

> Relying on Seely and East River, this Court adopted the products liability Economic Loss Rule in Florida Power & Light Co. v. Westinghouse Electric Corp., 510 So. 2d 899, 902 (Fla. 1987). . . .

> In determining whether Florida law permitted FPL to recover the economic losses in tort without a claim for personal injury or separate property damage, this Court considered the policy issues supporting the application of a rule that limits tort recovery for economic losses when a product damages itself. Id. Concluding that warranty law was more appropriate than tort law for resolving economic losses in this context, the Court adopted the holding in East River that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." Florida Power, 510 So. 2d at 901 (quoting East River, 476 U.S. at 871).

American Aviation, 891 So. 2d at 540.

* * *

**The Economic Loss Rule adopted in Florida Power represents this Court's pronouncement that, notwithstanding the theory of strict liability adopted in West, strict liability *has not* replaced warranty law as the remedy for frustrated economic expectations in the sale of goods. In exchange for eliminating the privity requirements of warranty law and expanding the tort**

> **liability for manufacturers of defective products which cause personal injury,** ***we expressly limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself.*** **In this regard, we also note that the products liability Economic Loss Rule articulated in** <u>Seely</u> **and** <u>East River</u>**, and adopted by this Court in** <u>Florida Power</u>**, applies even in the absence of privity of contract.** (emphasis added) (citations omitted).

<u>Id.</u> at 541.

American Aviation affirmed the ability of the Economic Loss Rule to protect a distributor who is sued in tort for damage to the product itself. Moreover, a lengthy line of Florida cases both before and after <u>American Aviation</u> demonstrate Florida's adherence to the Economic Loss Rule. <u>See</u>, <u>e.g</u>, <u>Airport Rent-A-Car, Inc. v. Prevost Car, Inc.</u>, 660 So. 2d 628, 631 (Fla. 1995) (cited in <u>American Aviation</u> for the holding that a cause of action for negligence against the manufacturer of defective buses was barred by the Economic Loss Rule notwithstanding absence of privity); <u>Florida Power & Light Co.</u>, 510 So. 2d at 902 (cited in <u>American Aviation</u> for the proposition that "[t]he Economic Loss Rule adopted in <u>Florida Power</u> represents this Court's pronouncement that . . . strict liability has not replaced warranty law as the remedy for frustrated economic expectations in the sale of goods," <u>see</u> 891 So. 2d at 541); <u>Curd v. Mosaic Fertilizer, LLC</u>, 993 So. 2d 1078, 1080 (Fla. 2d DCA 2008) (closely following the Florida Supreme Court's reasoning in <u>American Aviation</u> and rejecting the plaintiff's argument that the <u>American Aviation</u> opinion "has narrowed the scope of the Economic Loss Rule"); <u>Cessna Aircraft Co. v. Avior Techs., Inc.</u>, 990 So. 2d 532, 536 (Fla. 3d DCA. 2008) (finding the plaintiffs' negligence claims barred under the Economic Loss Rule as articulated in <u>American Aviation</u>); <u>N. Atl. Marine, Ltd. v. Sealine Int'l, Ltd.</u>, No. 06-20200, 2007 U.S. Dist. LEXIS 23046, 28-30 (S.D. Fla. Mar. 29, 2007) (finding that plaintiff's strict product liability claims against a boat manufacturer related to the quality of the boat purchased were barred under the "product liability Economic Loss Rule" as set forth in <u>American Aviation</u>).

{218429.0005/N0785757_1}

(iv)    **Florida Law Is Well Established That Damage To Other Components Integrated Into A Single Unit Are Not Considered Damage To "Other Property."**

Casa Clara makes clear that the Economic Loss Rule bars Plaintiffs' property damage claims against Distributor Defendants to the extent Plaintiffs' claims are based upon the false assumption that other components integrated into a single unit (the home) constitute "other property." Following Casa Clara, the Fourth District Court of Appeal in Fishman v. Boldt, 666 So.2d 273 (Fla. 4th DCA 1996) applied the Economic Loss Rule in denying a homeowner's claim for damages to a pool, patio, and home caused by the collapse of a defective seawall. The court rejected plaintiff's argument that the pool, patio, and home were physically and geographically distinct from the seawall and therefore constituted "other property." Applying the rule set forth in Casa Clara, the Fishman Court held:

> The Economic Loss Rule announced in Casa Clara prohibits recovery in tort where a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself. *In order to determine the character of the loss, one must look to the product purchased by the plaintiff and not the product sold by the defendant. In the instant case, the "product" purchased by the appellants was the home with all of its component parts, including the seawall, pool, and patio. Therefore, the pool, patio, and home were not "other property" which would exclude the application of the Economic Loss Rule.*

Fishman, 666 So. 2d at 274 (emphasis added).[10]

Similarly, applying Florida law, Judge Feldman of the Eastern District of Louisiana had the opportunity to consider the Economic Loss Rule in a case factually indistinguishable from the instant Chinese drywall litigation. See In re Masonite Corp. Hardboard Siding Prods. Liab. Litig., 21 F. Supp. at 593. In that case, Lennar Homes had purchased Masonite siding from supply stores and subcontractors that it had installed on condominium projects it was building in

---

[10] The issue addressed in the instant Memorandum concerns the identity of the product for purposes of Florida's Economic Loss Rule, i.e., the product purchased by the consumer. The manner in which is the product is defined may be different for purposes of insurance coverage.

{218429.0005/N0785757_1}

13

Florida. _Id._ at 597. Several years later, the siding began to prematurely rot. _Id._ The homeowners complained to Lennar, and Lennar repaired the damage and took an assignment of the homeowners' claims. _Id._ Lennar then filed suit against the siding manufacturer. _Id._ Though Lennar did not expressly assert any negligence claims in that case, Judge Feldman found that even had it done so, those claims would be barred under Florida's Economic Loss Rule because there was no damage to "other property":

> Even were the Court to construe plaintiff's complaint as stating a negligence claim, that claim would be barred by the Economic Loss Rule. Ordinarily, plaintiffs seeking only economic losses are precluded from seeking tort damages and must proceed in contract. "Economic losses" generally include "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits--without any claim of personal injury or damage to other property." Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc., 620 So. 2d 1244, 1246 (Fla. 1993) (internal quotation omitted). . . .

> [Lennar] and the homeowners seek recovery for expenditures related to the labor and costs of replacing the deteriorated siding; apparently, they also seek additional monies for water damages and infestation in areas where the siding has deteriorated. These additional damages do not qualify as damages to "other property" recoverable in tort.

> ***The character of a loss is determined by looking at the product purchased by the plaintiffs—a home—not the product sold by the defendant. Homeowners bargain for finished products, not the component parts. Accordingly, the hardboard siding is considered part of the finished product—the dwelling—and any further damages to the dwelling (water damage or infestation, in this case) are considered merely part of the damage to the product itself. Thus, tort recovery would be barred by the Economic Loss Rule.***

_Id._ at 602 (citing Casa Clara, 620 So.2d at 1247).

The Eleventh Circuit Court of Appeals in Pulte Home Corp. also addressed the issue presented herein and held that the Economic Loss Rule barred a tort claim for damage caused by a home building component. In Pulte Home Corp., a builder claimed that a manufacturer's chemical used to treat plywood purchased by the builder for roofing ultimately caused the wood to deteriorate, requiring the builder to spend millions of dollars replacing the plywood. The

replacement involved not only the sheathing itself but related components such as shingles and
structural supports.

On preliminary motions, the district court observed:

. . . . even assuming that Pulte did "own" the homes in question -- . . . Pulte would
still be unable to prove that Pulte had suffered "property" damage of the sort
required by the economic loss doctrine.

In the context of actions in tort, in determining whether a party has suffered
"property damage," the question for the court is whether property other than the
defective property itself, or property other than that which the defective property
is an integral part of has been damaged. Aetna Life & Casualty Co. v. Therm-O-
Disc, Inc., 511 So.2d 992 (Fla. 1987). This rule of liability is based on the premise
that "since all but the very simplest of machines have component parts, '[a
contrary]' holding would require a finding of 'property damage' in virtually every
case where a product damages itself. Such a holding would eliminate the
distinction between warranty and strict products liability." East River Steamship
Corp., 476 U.S. at 866. quoting Northern Power & Engineering Corp. v.
Caterpillar Tractor Co., 623 P.2d 324, 330 (Alaska 1981).

The Florida courts have consistently applied this narrow definition of injury to
"other property" in determining whether a party may recover in tort. For example,
in Aetna Life & Casualty Co. v. Therm-O-Disc, Inc., 511 So.2d 992, defendant
Therm-O-Disc, Inc. manufactured defective switches which were then purchased
and incorporated by another company into heat transfer units. When the switches
failed to operate properly, the water in the units froze causing substantial damage
to the units. Id. at 993. Despite the fact that the failure of the switches resulted not
only in damage to the switches themselves but to other parts of the heating units,
the Florida Supreme Court concluded that no damage to "other property" had
been suffered by the heating unit owners -- the only damage suffered was
economic loss. Id. at 993. Thus, the court ruled, defendant had not committed a
tort. Id. at 993. . . .

**Application of Florida's definition of "other property" for purposes of
applying the economic loss doctrine mandates the conclusion that the
damages suffered in this case constitute purely economic loss. . . . The only
damages claimed to have been caused by the deterioration of the FRT
plywood are the costs of the repair and replacement of the roofs containing
the FRT plywood and repair and structural damages. Pulte presented only
evidence regarding damages suffered as a result of the costs it incurred in
inspecting, repairing and replacing the defective roofs. "Losses due to repair,
replacement and diminution in value [,however,] are not recoverable in
tort." Casa Clara Condo. v. Charley Toppino, 588 So.2d 631, 633.**

{218429.0005/N0785757_1}

15
ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD. • SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

Pulte Home Corp., Inc., case no. 89-788-CIV-T-17A, 1992 U.S. Dist. LEXIS 19441 at *12-16.

On appeal, the Eleventh Circuit affirmed and stated that the plaintiff's tort claims were barred by the Economic Loss Rule and found the "other property" exception inapplicable:

> To satisfy the other property exception, Pulte must establish damage to property aside from the FRT plywood treated with Osmose chemicals. See Therm-O-Disc, 511 So. 2d at 994 (requiring "property damage to property other than the allegedly defective goods"). Pulte incorporated the FRT plywood into its townhouses, such that the deterioration of the plywood destroyed the structural integrity of the roof. As a result, Pulte was forced to remove and replace the FRT plywood. In doing so, Pulte also had to remove and replace other portions of the roof, including untreated plywood and shingles. These other roof components form the basis of Pulte's "other property" argument.

> In Casa Clara, 620 So. 2d 1244, the Florida Supreme Court held that the Economic Loss Rule barred homeowners' negligence claims against a subcontractor who supplied faulty concrete that was used in their homes. The court rejected the homeowners' assertion that other property damage had occurred when steel reinforcements rusted due to the unusually high salt content of the concrete. Id. at 1245, 1247. . . .

> In the present case, Pulte cannot establish there was damage to other property.

> **[O]nce the roofs were installed, they became an integral part of the housing units. Accordingly, any costs incurred as a result of damage to those roofs, or as a result of damages to the structure of the units, would not fall within the ambit of damages recoverable in tort.**

60 F.3d at 741-42.

The Pulte Homes Corp. court cited with approval Aetna Life & Casualty Co. v. Therm-O-Disc, Inc., 511 So. 2d 992 (Fla. 1987). Although it predates Casa Clara, the Florida Supreme Court's decision in Aetna Life leads inevitably to the result suggested by Distributor Defendants. In Aetna Life, the plaintiff sued an electrical switch manufacturer for damages caused by defective switches. Another company had incorporated the switches into HVAC units. The damages were to not only the switches themselves but also to other parts of the HVAC units so that the question arose as to what constituted "other property." Because the switches were

{218429.0005/N0785757_1}

16

ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD.* SUITE 1700 * FT. LAUDERDALE, FLORIDA 33301 * TELEPHONE 954-763-1200 * FAX 954-766-7800

integrated into the units, however, the court concluded that the units were not "other property" in relation to the switches, id. at 994, and thus, the Economic Loss Rule barred any tort claim. See also Pycsa Pan., S.A. v. Tensar Earth Techs., Inc., 625 F. Supp. 1198, 1248 (S.D. Fla. 2008) (holding that "[i]n determining if plaintiff has suffered damage to other property, the question is whether property other than the defective property itself, or property other than that which the defective property is an *integral part of*, has been damaged" (emphasis added)); Am. Universal Ins. Group v. Gen. Motors Corp., 578 So. 2d 451 (Fla. 1st DCA 1991) (Economic Loss Rule barred claim for loss of engine when the damage was caused by a cap replacement oil pump that was an integral component of the engine); Monsanto Agricultural Products Co. v. Edenfield, 426 So. 2d 574 (Fla. 1st DCA 1983); Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 So. 2d 628 (Fla. 1995) (applying the Economic Loss Rule to bar bus owner's negligence claim where the only damages occurred to the busses, the bargained-for products); Turbomeca, S.A. v. French Aircraft Agency, Inc., 913 So. 2d 714 (Fla. 3d DCA 2005) (refusing to bifurcate the purchased product into separate parts where a component part harms or destroys the finished product); Jarmco, Inc. v. Polygard, Inc., 668 So. 2d 300 (Fla. 4th DCA 1996) (Economic Loss Rule barred claim against distributors of boat resin where only damage was to the boat itself); Cedars of Lebanon Corp. v. European X-Ray Distrib., Inc., 444 So. 2d 1068, 1071 (Fla. 3d DCA 1984) ("strict liability should be reserved for those cases where there is personal injury or damage to other property only").

Although Florida law is unambiguous, other jurisdictions throughout the country have analyzed and applied the Economic Loss Rule in the same manner as Florida. For example, the Fifth Circuit Court of Appeals had the opportunity to address this identical issue in American Eagle Ins. Co. v. United Tech. Corp., 48 F.3d 142 (5th Cir. 1995), holding that damage to the

{218429.0005/N0785757_1}

17

ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD. • SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

hull of an aircraft did not constitute damage to "other property" and thus, did not allow recovery

in strict liability. Id. at 145. The defective product was an engine incorporated into the aircraft

and subsequently sold to the plaintiff. Id. at 143-44. The plaintiff argued that since the defective

product was the engine, and the engine damaged the hull, that the hull was "other property" for

which plaintiffs could seek recovery. Id. at 144. In concluding that the damage to the hull was

not damage to "other property," the court held that the plaintiff did not bargain for the

component parts of the aircraft, but rather for the aircraft as a whole. Id. at 145; see also Shipco

2295, Inc. v. Avondale Shipyards, Inc., 825 F. 2d 925 (5th Cir. 1987) (rejecting buyers effort to

recover in tort against the seller of a vessel for damage to certain components of each vessel

caused to unrelated components in the same vessel where the product purchased by the buyer

was the completed vessel). In analyzing the concept of "other property," the Shipco court stated:

> In applying the rule adopted by *East River,* that one party to a commercial
> transaction cannot recover in tort for economic loss that arises from damage to
> the product itself but may recover for such loss that arises from damage to
> "other" property, Appellants' argument raises the question-what is the product?
>
> **In attempting to identify the product, our analysis leads us to ask what is the
> object of the contract or bargain that governs the rights of the parties? The
> completed vessels were obviously the objects of the contract. Shipco** [FN2] **did
> not bargain separately for individual components of each vessel. We are
> persuaded that these same vessels that were the object of the contract must
> be considered "the product" rather than the individual components that
> make up the vessels.**

Id. at 928 (emphasis added); see also Transport Corp. of Am. v. Internat'l Bus. Machines Corp.,

Inc., 30 F.3d 953 (8th Cir. 1994) (Economic Loss Rule barred claim for damage to computer

system caused by defective disk drive which was incorporated into the computer prior to the sale

to the plaintiff); R.W. Murray Co. v. Shatterproof Glass Corp., 697 F. 2d 818 (8th Cir. 1983)

(applying the Economic Loss Rule to bar a claim for the diminution in value of a building and

lost rental profits allegedly caused by the negligent manufacture of glass panels incorporated into

a building); City of Lennox v. Mitek Indus., Inc., 519 N.W. 2d 330 (S.D. 1994) (defective trusses which ultimately required removal of insulation and sheet metal were considered part of the whole product and thus, not "other property").

Since the character of a loss is determined by looking at the product purchased by the plaintiffs, not the product sold by the defendant, there can be no dispute that herein the "product" is the home purchased by the respective Plaintiffs. The Complaints allege that the homeowners bargained for completed homes, not the component parts. Accordingly, the allegedly defective Chinese drywall is considered part of the finished product—the home—and any further damage to the home, in this case, is considered merely part of the damage to the product itself. Thus, Florida law, and the law of other jurisdictions considering this issue, make clear that Plaintiffs' tort claims against Distributor Defendants for the alleged property damage to their homes, including costs of repair, costs of replacement, diminution in value of the home, relocation costs, and other related expenses, are barred by the Economic Loss Rule. In other words, any claim against Distributor Defendants for economic losses resulting from the allegedly defective Chinese drywall – absent a showing of harm to people or "other property" – can be asserted and reviewed only under warranty principles and not by way of an action for damages under a tort theory of recovery.[11]

## CONCLUSION

Pursuant to Florida law, Plaintiffs have no recovery against Distributor Defendants for property damage to their homes under tort theories. Florida's Economic Loss Rule bars any tort claim against Distributor Defendants by a homeowner for damage to his or her home caused by allegedly defective Chinese drywall incorporated into Plaintiffs' homes prior to purchase.

---

[11] As the Complaints filed in this MDL proceeding allege, there are numerous parties, such as builders, in privity with the homeowners and who may have provided warranties for which the homeowners may seek recovery.

ADORNO & YOSS LLP

350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

Taking the allegations in Plaintiffs' Complaints as true, the products purchased by Plaintiffs were the finished homes, including the allegedly defective Chinese drywall, for which Plaintiffs now seek damages against Distributor Defendants for repairs and remediation of the entire home, including consequential damages for relocation expenses and alleged diminution in value. Plaintiffs do not, and cannot, allege that they purchased the allegedly defective Chinese drywall directly from Distributor Defendants separate and apart from the homes; rather, Plaintiffs allege that they purchased the completed homes from a particular builder and that the allegedly defective Chinese drywall was incorporated into the home, thus causing the claimed damages. Those damages, against Distributor Defendants, are simply not recoverable.[12]  As a consequence, Distributor Defendants respectfully submit that this Court grant their Motion to Dismiss or, in the alternative, that this Court strike Plaintiffs' claims for damages against Distributor Defendants for anything other than "other property" and personal injury.

Respectfully submitted,

/s/Jeffrey A. Backman
JAN DOUGLAS ATLAS
Fla. Bar No. 226246
JEFFREY A. BACKMAN
Fla. Bar No. 0662501
ADORNO & YOSS LLP
350 East Las Olas Boulevard; Suite 1700
Fort Lauderdale, FL 33301-4217
Telephone: (954) 763-1200
Facsimile: (954) 766-7800
Attorneys for Defendant BANNER
SUPPLY CO.

---

[12] By filing the instant Motion, Distributor Defendants are not urging this Court to find that Plaintiffs have absolutely no claims against this category of Defendant; rather, Distributor Defendants are requesting this Court to apply the law to Plaintiffs' claims and limit them accordingly.

{218429.0005/N0785757_1}

20
ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD. • SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

/s/Gary Baumann
GARY BAUMANN, ESQ.
Florida Bar No. 89052
Fulmer LeRoy Albee Baumann & Glass
2866 E. Oakland Park Blvd.
Fort Lauderdale, FL 33306
Telephone: 954-707-4430
Fax: 954-707-4431

/s/David Connor
W. DAVID CONNER, ESQ.
South Carolina Bar No. 66358
Haynsworth Sinkler Boyd LLP
75 Beattie Place, 11th Floor
Greenville, SC 29601
Telephone: 864-240-3226
Fax: 864-240-3300

/s/Richard Duplantier
RICHARD DUPLANTIER, ESQ.
Louisiana Bar No. 18874
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040
New Orleans, LA 70139
Telephone: 504-525-6802
Fax: 504-525-2456

/s/Edward Briscoe
EDWARD BRISCOE, ESQ.
Florida Bar No. 109691
Fowler White Burnett
1395 Brickell Avenue, 14th Floor
Miami, FL 33131
Telephone: 305-789-9200
Fax: 305-789-9201

{218429.0005/N0785757_1}

21

ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

/s/ Eduardo I. Rasco
EDUARDO I. RASCO, ESQ.
Florida Bar No. 646326
Rosenthal, Rosenthal, Rasco, Kaplan, LLC
20900 N.E. 30th Avenue, Suite 600
Aventura, FL 33180
Telephone: 305-937-0300
Fax: 305-937-1311
Attorneys for Defendant LA SUPREMA
TRADING, INC. and LA SUPREMA
ENTREPRISE, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served upon Plaintiffs'

Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail

and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the

same to Lexis Nexis File & Serve in accordance with pretrial Order No. 6, and that the foregoing

was electronically filed with the Clerk of Court of the United States District Court for the Eastern

District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing

in accordance with the procedures established in MDL 2047, on this 28th day of September,

2009.

/s/Jeffrey A. Backman
Jeffrey A. Backman

{218429.0005/N0785757_1}

22
ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800