UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: | 2047 |
| | SECTION: | L |
| THIS DOCUMENT RELATES TO: | JUDGE: | FALLON |
| | MAG. JUDGE: | WILKINSON |

**JANET MORRIS-CHIN AND DAJAN GREEN, on behalf of themselves and all others similarly situated,**

**Case No. 09-4119**

_____/

**PSC'S RESPONSE IN OPPOSITION TO THE MOTION OF KNAUF GIPS KG FOR MOTION FOR PROTECTIVE ORDER TO REQUIRE USE OF THE HAGUE EVIDENCE CONVENTION**

The Plaintiffs Steering Committee ("PSC"), by and through undersigned counsel, files this response in opposition to the Motion of Knauf Gips KG for Protective Order to Require Use of the Hague Evidence Convention and Supporting Memorandum of Law ("Knauf's Motion for Protective Order"):

Knauf's Motion for Protective Order concludes with a telling concession: Knauf acknowledges that "this Court is bound by the Supreme Court's holding in *Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987) (hereinafter *"Aerospatiale"*), but raises this issue to preserve it in the event of appellate review," in the unlikely event the United States Supreme Court should decide to reconsider and reverse a well-settled decision rendered over 22 years ago!  In essence, Knauf's Motion is little more than a re-hashing of the views of the dissenting justices in *Aerospatiale,* which held that the Hague Evidence Convention is not –  as Knauf's Motion for Protective Order would have this Court hold

– either an exclusive or a primary means of obtaining evidence from a foreign defendant, nor does it pre-empt or supplant the discovery tools set forth in the Federal Rules of Civil Procedure.

As the Court of Appeals for the Fifth Circuit in *In re Anschuetz & Co., GmbH*, observed:

> It seems patently obvious that if the Convention were interpreted as preempting interrogatories and document requests, the Convention would really be much more that an agreement on taking evidence abroad. Instead, the Convention would amount to a major regulation of the overall conduct of litigation between nationals of different signatory states, raising a significant possibility of very serious interference with the jurisdiction of United States courts.
>
> While it is conceivable that the United States could enter into a treaty giving other signatories control over litigation instituted and pursued in American courts, a treaty intended to bring about such a curtailment of the rights given to all litigants by the federal rules would surely state its intention clearly and precisely identify crucial terms.

754 F.2d 602, 612 (5th Cir. 1985). However, as the United States Supreme Court in *Aerospatiale* – and every Circuit Court of Appeals that has considered this issue – has noted, the Hague Evidence Convention contains no plain statement of preemptive intent. *See Aerospatiale*, 482 U.S. at 539 (stating that the Hague Convention, however, contains no such plain statement of a pre-emptive intent [to "bring about such a curtailment of the rights given to all litigants by the federal rules"]). Therefore, this Court should – as the overwhelming majority of District Courts that have considered this issue – deny Knauf's blanket motion to excuse it from its discovery obligations under the Federal Rules of Civil Procedure.

## I.    BACKGROUND

In support of its motion, Knauf relies on the conclusory and self-serving factual assertions in the affidavit of Mr. Oliver Fröhlich, which purport to contest and contradict the well-pled and specific allegations in Plaintiffs' Complaint regarding Knauf Gips' jurisdictional contacts with the

United States.[1]  As a threshold matter, Plaintiffs note that Mr. Frőhlich's affidavit is nothing more

---

[1]Although Knauf Gips' motion is filed only in Case No. 09-4119, it purports to establish a rule for discovery by all Plaintiffs.  The transferred actions allege the following jurisdictional contacts on the part of Knauf Gips:  (1) carries on a business that has directed its activities, including the manufacture and sale of drywall, to residents of the State of Florida, from which it has derived pecuniary gain; (2) is an international leading manufacturer of building materials and systems; (3) together with affiliates has over 130 plants worldwide and has annual sales exceeding 4.8 billion Euros; (4) in connection with subsidiaries and affiliates does business in over 50 countries and employs approximately 20,000 individuals worldwide; (5) does substantial business in the United States of America generally, and in the State of Florida; (6) since the late 1990s built three plants for the manufacture of drywall in China, located in Wuhu, Tianjin, and Dongguan; (7) exercises strict control over the manufacture and sale of drywall by its Chinese subsidiaries and affiliates, including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan; (8) supervised, operated, trained, and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, and their agents, apparent agents, and employees; (9) established the quality control criteria for the production of drywall; (10) monitored the production of drywall by its subsidiaries according to criteria established by Knauf Gips; (11) engaged in substantial and not isolated activity in the United States; (12) through its agents and subsidiaries, which are apparent and actual agents, designed, tested, manufactured, created, distributed, wholesaled, marketed, and/or sold drywall containing high levels of toxic chemicals that were installed in homes in the United States; (13) since approximately 1997 continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and throughout the United States, to be used in construction in the United States; (14) marketed, sold, or caused to be marketed and sold, drywall with the expectation that it would be purchased and used by thousands of consumers in the State of Florida and throughout the United States; (15) purposefully availed itself of the laws of the State of Florida by shipping substantial quantities of drywall into the State of Florida through Florida ports, and by seeking out and hiring experts, investigators, and consultants and other agents in the State of Florida and State of Louisiana in response to complaints relating to the defective drywall at issue in this litigation; (16) Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world; (17) in 1995, introduced its advanced production techniques and technology into China; (18) product quality of all Knauf Gips' subsidiaries in China is strictly controlled according to the requirements of Knauf Gips' headquarters in Germany; (19) manufactured, sold, distributed, marketed and placed into the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana; (20) continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and Knauf Gips' drywall was installed in numerous homes in Louisiana; (21) manufactured and sold defective drywall directly to certain supplier defendants in this litigation, which defective drywall was installed in plaintiffs' homes in the United States; (22) has production plants in the United States; (23) provided defective drywall to homes in the United States and concealed the existence of the defect; (24) engaged in substantial and not isolated activity in the United States, including delivering tons of defective drywall into the United States, having the defective drywall reach the ultimate consumer, and selling and marketing the drywall in the United States; (25) in the spring of 2006 the cargo ship *Great Immensity* unloaded a shipment of more than 16 million pounds of Chinese drywall manufactured by Knauf Tianjin, a subsidiary of Knauf Gips whose manufacturing activities were controlled by Knauf Gips–enough to make approximately 1,700 homes–at more than two dozen ports throughout the United States, including seven in Florida; (26) shipping records show coordination between Knauf Gips' Chinese subsidiaries, including sharing the same vessel to transport their product to the U.S.; (27) has more than 130 production plants in over 40 countries generating annual sales in excess of 4.8 billion Euros; (28) tens of millions of square feet of Knauf Gips' defective drywall was used in the construction of Florida homes between 2004

than written hearsay which should be disregarded by this Court. Plaintiffs have requested Mr.

Frőhlich's deposition and Knauf Gips has refused to produce the witness for deposition in this

jurisdiction.  In an analogous situation where Plaintiffs moved to strike as inadmissible hearsay the

affidavit of an affiant who refused to be deposed, the Honorable Magistrate Joseph Wilkinson, Jr.

of this District ordered the witness to sit for a deposition – taken under the Federal Rules of Civil

Procedure – before due consideration could be given to his affidavit. *See Adams v. Unione*

*Mediterranea Di Sicurta et al*., No. Civ.A. 94-1954, 2002 WL 472252 at *4 (E.D. La. Mar. 28,

2002) ("UMS cannot rely on Giovanni's affidavit, yet refuse to produce him, one of its own

managers, for a deposition.").  In fact, the very filing of Mr. Frőhlich's affidavit by Knauf Gips in

connection with a motion brought under Federal Rule of Civil Procedure 26(c) constitutes a legal

waiver of any objection Mr. Frőhlich may otherwise have to a question-and-answer deposition in

this case.  *See Schindler v. Otis Elevator Co.*, No. 09-cv-560 (DMC), 2009 WL 3069651 at *7 (

D.N.J. Sept. 24, 2009) (citing to Magistrate Judge Wilkinson's opinion in *Adams*).

Without citing to any legal authority, Knauf Gips purports to have this Court, based solely

on Mr. Frohlich's hearsay assertions, preemptively disregard Plaintiffs' allegations as "false."

Knauf's Motion for Protective Order at Section A(2). This argument is not only procedurally

improper, but also virulently contested factually by Plaintiffs.  Although it is not Plaintiffs' burden

to adduce factual evidence in support of its efforts to take discovery pursuant to the Federal Rules

of Civil Procedure, the assertions of Plaintiffs' complaint are not difficult to verify.  Attached hereto

---

and the present; (29) at least 37 million pounds of Knauf drywall was shipped directly from three sites in
China to Florida, most of it into Miami, according to Knauf company officials; and (30) in March 2006 a
Knauf Gips subsidiary, controlled by Knauf Gips, shipped 11 million pounds of Chinese drywall aboard the
cargo ship *Afra*. *See, e.g.,* Complaints in *Morris-Chin* (MDL Case No. 09-4119), *Simmons* (MDL Case No.
09-3639), *Ankney* (MDL Case No. 09-4113); *Vickers* (MDL Case No. 09-4117).

as *Composite Exhibit A[2]* are limited excerpts of shipping records obtained from third party sources

by the PSC that clearly evidence Plaintiff's allegations that Knauf Gips' has been involved ***directly***

in the importation and distribution of Chinese drywall into the United States.  Attached hereto as

*Composite Exhibit B[3]* are printed excerpts from Knauf's website which evidence Plaintiffs'

allegations that Knauf is – and holds itself out to be – an integrated global conglomerate doing

business in the United States and with affiliated offices in the United States.  This publically

available information is more than sufficient to establish a threshold case of personal jurisdiction

sufficient to support Plaintiffs' request for discovery through the Federal Rules of Civil Procedure.

*See In re*: *Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 299 (3rd Cir. 2004)

(hereinafter "*Automotive Refinishing*").  This publically available information is also sufficient to

dispute Knauf Gips' unilateral assertion that it has only a "tenuous connection" to the issues in this

litigation.  Knauf's Motion for Protection Order at Section 13.

---

[2]*Exhibit A-1* reflects a summary of shipping transactions between Knauf Gips KG and L&W Supply Corp., a U.S. corporation and drywall supplier defendant.  *Exhibit A-2* reflects Bills of Lading evidencing shipments of "standard wallboards" consigned by Knauf Gips KG to L&W Supply Co. for delivery in the United States.

[3]*Exhibit B-1* reflects English language webpages from Knauf's "worldwide" website, http://www.knauf.com, which uses the ".com" internet suffix typically corresponding to U.S. URLs. Specifically provided is the "Knauf Worldwide USA" webpage, which lists three United States addresses in Shelbyville, Indiana; in Lebanon, Ohio; and in Lannett, Alabama.  *Exhibit B-1* also contains pages from "knauf.com" describing the Company Divisions. In Knauf's welcome page, Knauf is described as a "global group of companies as supplier of building materials."  The United States is highlighted and listed among other countries (for instance, China and Germany) in which Knauf operates in the worldwide maps on this and other pages throughout the website. *Exhibit B-2* is a description of Knauf Gips from on online business search resource, Hoovers.com, describing Knauf Gips KG as a "global group of companies [that] has more than 150 plants, quarries, and mines around the world and operations in some 40 countries in the Americas, Europe, and Asia."

## II.     ARGUMENT

The United States Supreme Court's decision in *Aerospatiale,* every Circuit Court of Appeals decision that has since considered the issue, and on overwhelming majority of District Courts have all concluded that the normal discovery method of the Federal Rules of Civil Procedure can and should be used to take discovery from foreign defendants, even those contesting jurisdiction. Powerful legal, equitable and policy considerations weigh in favor of the use of the expedited discovery means of the Federal Rules over the inefficient and cumbersome mechanisms of the Hague Evidence Convention.   Knauf Gips' complaints regarding the alleged overbreadth of Plaintiffs' discovery requests have already been addressed and rejected by this Court, which ruled at the September 24, 2009 status conference that it was not going to limit the scope of general discovery on a pre-emptive basis and ordered the parties to resolve issues of specific objections to specific requests through a meet and confer process. (D.E. 278).  This prior ruling – as well as the Court's expressed desire to allow Plaintiffs expedited jurisdictional discovery (D.E. 216) – flies in the face of the relief Knauf Gips is requesting. For these reasons, Knauf's Motion for Protection Order should be denied.

### A.     *Aerospatiale* **Dictates Denial of Knauf's Motion for Protective Order**

In *Aerospatiale,* 482 U.S. at 542-46, the United State Supreme Court specifically held that the Hague Evidence Convention (HEC) does not provide an exclusive or mandatory procedure for obtaining documents and information located in a signatory country.  The Court further held that a "first resort" to the HEC was not required.  *Id*. at 542 ("("Nevertheless, we cannot accept petitioners' invitation to announce a new rule of law that would require first resort to Convention procedures whenever discovery is sought from a foreign litigant.").  The Court concluded that the text of the

HEC and the history of its proposal and ratification by the United States unambiguously supports the conclusion that it was intended to establish "optional" procedures to be utilized in those limited instances where it would facilitate the taking of evidence abroad. *See id.* at 536-38. In short, "the utter absence in the Hague Convention of an exclusivity provision has an obvious explanation: The contracting states did not agree that is procedures were to be exclusive." *Id.* at 537 n 23.

In reaching its decision, the *Aerospatiale* Court was influenced by the fact that an interpretation of the HEC as the exclusive means for obtaining evidence located abroad would effectively subject every American court hearing a case involving nationals of a contracting state to the internal laws of that state. See id. at 538-39. Further, "[i]nterrogatories and document requests are staples of international commercial litigation, no less than of other suits, yet a rule of exclusivity would subordinate the court's supervision of even the most routine of these pretrial proceedings to the actions or, equally, to the inactions of foreign judicial authorities." *Id.* at 539.

The Supreme Court explicitly concluded that the discovery rules of the Federal Rules of Civil Procedure are "the normal methods" to be used for federal litigation involving foreign national parties; the Convention procedures provide "optional" or "supplemental" avenues for obtaining discovery to be utilized only when they prove more conducive to expediting the production of evidence located abroad. *Id.* at 536 (concluding that "the Convention was intended as a *permissive supplement* not a pre-emptive replacement, for other means of obtaining evidence located abroad") (emphasis added); *Id.* at 538 (concluding that both the text and negotiating history of the Convention show that "it was intended to establish *optional* procedures that would facilitate the taking of evidence abroad") (emphasis added); *Id.* at 541 (stating that "the *optional* Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the

Convention") (emphasis added); *Id.* at 542 ("the *normal methods* of the Federal Rules of Civil Procedure") (emphasis added).

Accordingly, the burden is on the party seeking to require the exclusive use of the Hague Evidence Convention rather than the discovery tools of the Federal Rules to demonstrate how or why the Convention offers a more expeditious avenue for obtaining discovery of evidence located abroad. *See Automotive Refinishing,* 358 F. 3d at 305; *Accord Valois of America, Inc. v. Risdon Corporation,* 183 F.R.D. 344, 346 (D. Conn. 1997) ("A party which seeks the application of the Hague Convention procedures rather than the Federal Rules bears the burden of persuading the trial court."); *Rich v. KIS California, Inc.,* 121 F.R.D. 254, 257-58 & n. 3 (M.D.N.C. 1988); *Doster v. Schenk,* 141 F.R.D. 50, 51-52 & n. 3 (M.D.N.C. 1991); *Benton Graphics v. Uddeholm Corp.*, 118 F.R.D. 386, 388-89 & n. 2 (D.N.J. 1987).

Knauf's Motion for Protective Order not only does not discharge this evidentiary burden, it does not even attempt it. For as Knauf well knows, and as is described below, requiring use of the Hague Evidence Convention as to jurisdictional and merits discovery against Knauf Gips would only impede – not facilitate – the expedited discovery this Court has already ordered under the Federal Rules.

> **B.     Post-*Aerospatiale* Decisions Uniformly Have Rejected The Required Use of the Hague Evidence Convention**

The holding and analytical reasoning of *Aerospatiale* – when applied to the particular facts and circumstances of this case – dictates denial of Knauf's Motion for Protective Order. This result becomes even more evident when the post-*Aerospatiale* jurisprudence is considered.

In the seminal post-*Aerospatiale* decision involving jurisdictional discovery from a foreign defendant, the Third Circuit Court of Appeals categorically rejected the notion that resort to the

Hague Evidence Convention could in any way expedite the resolution of Defendant's jurisdictional objections.  In *Automotive Refinishing,* the Third Circuit affirmed the denial by the District Court of a motion for protective order filed by two German corporations seeking – as Knauf Gips seeks– to require exclusive use of the Hague Evidence Convention to resolve the German defendants personal jurisdiction challenges.  After carefully reviewing the *Aerospatiale* holding, the Third Circuit concluded that the U.S. Supreme Court's reasoning in refusing to require the "exclusive" or "first resort" use of the Hague Evidence Convention for general discovery from a foreign defendant applied with even more persuasive force when addressing the issue of jurisdictional discovery:

> . . . where *Aerospatiale* has categorically rejected a first resort rule for "merits" discovery, *which we can expect to be more comprehensive or burdensome than jurisdictional discovery*, there is more justification to reject a first resort rule for the more limited and less intrusive jurisdictional discovery.

*Id.* at 303 (emphasis added) (citing to *Fishel v. BASF Group,* 175 F.R.D. 525 (S.D. Iowa 1997) ("The

ascertainment of facts bearing on personal jurisdiction normally involves the least intrusive type of inquiries.")); *Accord In re Vitamins Antitrust Litigation*, 120 F. Supp. 2d 45, 54 (D.D.C. 2000) ("Given the need for prompt resolution of these jurisdictional questions and the time and cost to both sides in dragging out this process any longer than is necessary, the Court finds that jurisdictional discovery under the Federal Rules is appropriate in this case").

In reaching its conclusion, the Third Circuit rejected the holding in *Jenco v. Montech, Int'l, Inc.,* CIV. A. No. 86-4229, 1988 WL 54733 (E.D. La. May 19, 1988) (Collins, J.) -- which Knauf relies upon in its moving papers.  The Court of Appeals noted that even the District Court in *Jenco* allowed interrogatories and document requests directed to the foreign Defendant to proceed under the Federal Rules, distinguishing "with almost no meaningful analysis" only deposition discovery.

*See Automotive Refinishing,* 358 F. 3d at 303.

Since the Third Circuit decision – which remains the highest level judicial pronouncement on the exact issue before this Court – the overwhelming majority of District Courts that have considered the issue of jurisdictional discovery have rejected the use of the Hague Evidence Convention over the Federal Rules' full range of discovery tools. Numerous district courts have applied the *Aerospatiale* balancing test and concluded that ***jurisdictional*** discovery could proceed under the Federal Rules of Civil Procedure.[4]

An even greater number of district courts have similarly applied the *Aerospatiale* balancing test and concluded that full-blown ***merits*** discovery could proceed under the Federal Rules of Civil Procedure.[5]

---

[4]*See Schindler Elevator Corp. v. Otis Elevator Co.*, — F. Supp. 2d —, 2009 WL 306965, \*4 (D.N.J. 2009); *Synthes (U.S.A.) v. G.M. Dos Reis Jr.*, 2008 WL 81111, \*6 (S.D. Cal. 2008) (not reported in F. Supp. 2d); *Adams v. Unione Mediterranea Di Sicurta*, 2002 WL 472252, \*3 (E.D. La. 2002) (not reported in F. Supp. 2d); *In re Vitamins Antitrust Lit.*, 120 F. Supp. 2d 45, 58 (D.D.C. 2000); *Fishel v. BASF Group*, 175 F.R.D. 525, 529 (S.D. Iowa 1997); *In re Bedford Computer Corp. v. Israel Aircraft Indus.*, 114 B.R. 2, 6 (Bankr. D.N.H. 1990); *Rich v. KIS Calif., Inc.*, 121 F.R.D. 254, 258 (M.D.N.C. 1988).

[5]*See Calixto v. Watson Bowman Acme Corp.*, 2008 WL 4487679, \*4 (S.D. Fla. 2008) (not reported in F. Supp. 2d); *Emerson Electric Co. v. Le Carbone Lorraine, S.A.*, 2008 WL 4126602, \*8 (D.N.J. 2008) (not reported in F. Supp. 2d); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 456 (E.D.N.Y. 2008); *In re Aspartame Antitrust Litig.*, 2008 WL 2275531, \* 4 (E.D. Pa. 2008); *United States Commodity Futures Trading Comm'n v. Lake Shore Asset Man. Ltd.*, 2007 WL 2915647, \*13 (N.D. Ill. 2007) (not reported in F. Supp. 2d); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 213, 227-28 (E.D.N.Y. 2007); *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 45 (E.D.N.Y. 2007); *Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 316-17 (E.D.N.Y. 2006); *In re Vivendi Universal, S.A. Securities Litig.*, 2006 WL 3378115, \*4 (S.D.N.Y. 2006) (not reported in F. Supp. 2d); *Promotional Containers, Inc. v. Aztec Concrete Accessories, Inc.*, 2006 WL 897190, \*2 (E.D. Ky. 2006) (not reported in F. Supp. 2d); *Jones v. Deutsche Bank AG*, 2006 WL 648369, \*1, \*4 (N.D. Cal. 2006) (not reported in F. Supp. 2d); *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*, 2005 WL 6246195, \*1 (N.D. Ill. 2005) (not reported in F. Supp. 2d); *Reino de España v. American Bureau of Shipping, ABS*, 2005 WL 1813017, \*9 (S.D.N.Y. 2005) (not reported in F. Supp. 2d); *Int'l Ins. Co. v. Caja Nacional de Ahorro y Segurro*, 2004 WL 555618, \*2 (N.D. Ill. 2004) (not reported

Given the overwhelming authority favoring the conduct of discovery under the Federal Rules of Civil Procedure, Knauf's motion – based on the singular opinion of Judge Collins (an opinion "with almost no meaningful analysis") -- should be denied.

> **C.    Application of the *Aerospatiale* Factors to the Facts and Circumstances of This Case Dictates Denial of Knauf's Motion for Protective Order.**

With regards to both jurisdictional and merits discovery application of the *Aerospatiale* factors to the particular facts and circumstances of this case dictates denial of Knauf's Motion for Protective Order.

> **1.    The Particular Facts of this Case**

Knauf Gips has availed itself of the jurisdiction of this Court and of Conventional Multi-District litigation discovery tools to obtain substantial discovery from Plaintiff (in the form of the Plaintiff Profile Form and Threshold Inspection Program) and from its co-defendants (in the numerous different non-manufacturer profile forms completed and exchanged by order of this Court).  Knauf's belated attempt to now impose the Hague Evidence Convention on future discovery efforts would create the very "unacceptable asymmetries" which the U.S. Supreme Court

---

in F. Supp. 2d); *In re: Vitamins Antitrust Litig.*, 2001 WL 109433, *1 (D.D.C. 2001) (not reported in F. Supp. 2d); *Madanes v. Madanes*, 190 F.R.D. 135, 142 (S.D.N.Y. 2001); *Bodner v. Paribas*, 202 F.R.D. 370, 377 (E.D.N.Y. 2000); *Belmont Textile Machinery Co. v. Superba, S.A.*, 48 F. Supp. 2d 521, 524-25 (W.D.N.C. 1999); *Triple Crown Am. v. Biosynth*, 1998 WL 227886, *4 (E.D. Pa. 1998); *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78, 82 (D.D.C. 1999); *Valois of America, Inc. v. Risdon Corp.*, 183 F.R.D. 344, 349 (D. Conn. 1997); *Minnesota Mining & Mfr. Co. v. Nippon Carbide Indus.*, 171 F.R.D. 246, 250-51 (D. Min.. 1997); *In re Aircrash Disaster Near Roselawn, Indiana*, 172 F.R.D. 295, 308 (N.D. Ill. 1997); *Ward THG, Inc. v. Swiss Reinsurance Co.*, 1997 WL 83294, *1 (S.D.N.Y. 1997); *In re Honda American Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 538 (D. Maryland 1996); *M & C. Corp. v. Erwin Behr GmbH & Co.*, 165 F.R.D. 65, 68 (E.D. Mich. 1996); *Doster v. Schenk A.G.*, 141 F.R.D. 50, 55 (M.D.N.C. 1991); *Roberts v. Heim*, 130 F.R.D. 430, 437 (N.D. Cal. 1990); *Haynes v. Kleinwefers*, 119 F.R.D. 335, 339 (E.D.N.Y. 1988); *In re Benton Graphics v. Uddeholm Corp.*, 118 F.R.D. 386, 390-91 (D.N.J. 1987); *Work v. Bier*, 106 F.R.D. 45, 55-56 (D.D.C. 1985).

specifically rejected in *Aerospatiale*:

> The opposite conclusion of exclusivity would create three unacceptable asymmetries. First, within any lawsuit between a national of the United States and a national of another contracting party, the foreign party could obtain discovery under the Federal Rules of Civil Procedure, while the domestic party would be required to resort first to the procedures of the Hague Convention. The imbalance would run counter to the fundamental maxim of discovery that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947).

482 U.S. at 540 n. 25. Knauf's Motion for Protective Order is not advanced to further this Court's expressed desire to expeditiously discover, analyze and adjudicate the underlying litigation and disputes. Rather, it would only impede Plaintiffs while Knauf presumably would continue to enjoy the benefit of the expedited U.S. multi-district litigation discovery tools from all other parties which this Court has crafted – with substantial encouragement from Knauf's counsel and with their substantial and ongoing involvement.

Second, to the extent Knauf's Motion is predicated upon the alleged "intrusiveness" of Plaintiffs propounded discovery and seeks a blanket protective order, it is inconsistent with this Court's most recent orders on this issue. Once already, in granting Plaintiffs' Motion for Expedited Discovery (under the Federal Rules of Civil Procedure), this Court has expressly stated it would not pre-emptively impede general discovery in this case, noting its expressed willingness to consider specific objections to specific discovery requests on an expedited basis. Further, this Court instructed the parties to meet and confer and resolve through agreement as many disputes as to specific discovery requests as possible. As to any unresolved specific disputes this Court has made itself extra-ordinarily available to the parties to rule on unresolved objections. To suggest that this Court has not exercised in an exemplary manner its obligations to "supervise pretrial discovery

12

proceedings particularly closely to prevent discovery abuses" is absurd.  *See In re Anschuetz & Co.,* 838 F.2d at  1364.  Admittedly, Knauf's Motion for Protective Order was filed days before this Court made its most recent pronouncements regarding the Court's "open door" to the litigants for expeditious resolution of discovery objections; however, this Court's pronouncements on this issue are neither recent to the parties to this case nor surprising to any counsel who has practiced before this Court.

Knauf Gips' specific objections to specific requests can, have and should be resolved expeditiously by this Court pursuant to the Federal Rules and this Court's stated discovery process. Resorting to the Hague Evidence Convention would only divest this Court of such supervisory authority and invest control over the pace of discovery in this case in a German court.  In addition to trying to divest this Court of its authority over discovery through the required use of the Hague Evidence Convention, Knauf Gips has -- without being fully forthcoming about its activities in other fora --  previously contested service of process in the German courts, rather than before this Court.

### 2.     Resort to the Hague Evidence Convention Will Not Be an Effective Discovery Tool

As previously noted, the United States Supreme Court and every Circuit Court of Appeals who has pronounced itself on the subject have emphasized that the "optional" use of the Hague Evidence Convention should be restricted to those situations where it facilitates or expedites the discovery of evidence located abroad.  Despite conceding "some tension between accommodating German legal principles and providing U.S. style discovery," Knauf's Motion for Protective Order utterly fails to present any argument on how or why the Convention procedures would be more expeditious for conducting discovery than the discovery tools of the Federal Rules.

The fact is that the practical experience of U. S. Courts is that the Hague Evidence

Convention is an impediment to expeditious discovery.  Citing to the U.S. Department of State's Circular on Hague Evidence Convention Operations, the District Court in *Hagenbuch v. 3b6 Sistemi Electronici,* No. 04 C 3109, 2005 WL 6246195 (N.D. Ill. Sept. 12, 2005), concluded: "The United States' interest is adversely affected by unnecessary adherence to the Hague Convention, as the Convention procedures are often long and drawn out and result in less discovery than United States Courts consider appropriate."  *Id.* at *5 (noting the Convention procedures can take from six to twelve months to complete).  *See also Schindler Elevator v. Otis Elevator*, No. 09-cv-560 (DMC), 2009 WC 306965 at *4 (D.N.J. Sept. 24, 2009) ("[I] has been the experience of this and many other courts that utilization of Hague procedures are slow and cumbersome and usually take far longer than discovery procedures under the Federal Rules"), *Automotive Refinishing,* 358 F.3d at 300 ("The Convention procedures are often unduly time-consuming and expensive, and less likely to produce needed evidence than direct use of the Federal Rules."); *Triple Crown*, 1998 WL 227886, at *3 ("[I]t appears that it would be difficult if not impossible for plaintiff to secure depositions of Biosynth AG in Switzerland in a manner as prompt, efficient and effective as that contemplated by the Federal Rules of Civil Procedure.").

The desire for expeditious discovery is – as this Court has previously noted – needed to vindicate the rights of Defendants, as well as Plaintiffs.  Prompt resolution of Knauf's threshold objections to this Court's exercise over it of personal jurisdiction is in Knauf's interest and Plaintiffs' interests, as well as needed for the prompt and efficient resolution of this case.  As noted by the U. S. District Court for the District of Columbia when faced with the precise issue before this Court:

> Presumably, defendants also have an interest in receiving a quick
> response to this jurisdictional question, so that they can determine

14

> whether or not they must prepare for defending these actions and, if so, in what fora...
>
> Given the need for prompt resolution of these jurisdictional questions and the time and cost to both sides in dragging out this process any longer than is necessary, the Court finds that jurisdictional discovery under the Federal Rules is appropriate in this case.

*In re Vitamins Antitrust Litigation,* 120 F.Supp at 54.

Further, overlooked in Knauf's Motion for Protective Order is the fact that Germany, in accordance with Article 23 of the Hague Evidence Convention, has declared it will not execute letters of requests issued for the purpose of obtaining pre-trial discovery of documents!  In its amicus brief filed before the Fifth Circuit Court of Appeals in *In re Anschuetz & Co.,* dated September 25, 1984, the Federal Republic of Germany, through its counsel, stated:

> The Federal Republic of Germany declared in pursuance of Article 23 of the Convention that it will not, in its territory, execute Letters of Request issued for the purpose of obtaining a pre-trial discovery of documents as known in common law countries.

*Work v. Bier,* 106 F.R.D. 45, 54 (D.D.C. 1985) (quoting the German Republic's brief and concluding "utilization of the Hague Evidence Convention procedures would lead to inordinate delay, even to the extent that any pretrial discovery were accomplished. . . [it] would be totally ineffectual").

While Knauf asserts that this limitation in document production is an explicit expression of a German sovereign interest, it runs afoul of this Court's and this nation's sovereign interest in the expeditious resolution of the claims of U.S. nationals who allege they have been harmed by the acts of a German national and it runs afoul of Knauf's expressed desire to have its jurisdictional objections promptly resolved.  *See Fishel v. BASF Group,* 175 F.R.D. 525, 529 (S.D. Iowa 1997). ("Presumably both sides want an expeditious and reliable determination of [defendant's jurisdictional motion].  As between the civil discovery rules and Convention procedures, the former

offer the surer the course for this to occur").

Knauf's Motion for Protective Order – if granted – would greatly slow down and limit the discovery process in this case and the resolution of Knauf's threshold challenges to this Court's jurisdiction, frustrating this Court's prior order requiring expedited discovery and recent order setting the first bellwether trial in just over 100 days!

### 3.      The Sovereign Interests of the Contracting States

The sovereign interests of Germany in restricting citizens from obtaining discovery through U.S. courts from German nationals who have openly availed themselves of this country's open trade policies are not new.  They were the same over 22 years ago when *Aerospatiale* was decided and have remained unchanged in the intervening years, during which every Circuit Court of Appeal that has decided the specific issue – and the overwhelming majority of District Courts – have found these German sovereign interests inferior to this country's very important interest in defending the integrity and efficiency of its judicial system and the constitutional promise of "equal access to justice under the law," as well as the U.S. sovereign interest in protecting its citizens from unredressed injury.

As recognized by the United State Supreme Court, these U.S. sovereign interests are most powerful in products liability cases.  In *Aerospatiale,* which Knauf concedes is binding on this Court, the United States Supreme Court approvingly cited the raionale of the Magistrate Judge, who noted the practical impediment that requiring use of the Hague Evidence Convention would frustrate the Court's desire to expeditiously resolve Plaintiffs' products liability claims:

> To permit the Hague Evidence Convention to override the Federal Rules of Civil Procedure would frustrate the courts' interests, *which particularly arise in products liability cases,* in protecting United States citizens from harmful products and in compensating them for

16

injuries arising from use of such products.

482 U.S. at 526-27 (emphasis added). As observed by the Third Circuit in *Automotive Refinishing,* 358 F.3d at 304, there is no reason to assume that discovery under the Federal Rules would inevitably offend Germany's sovereign interest in cases where the two countries share a common judicial goal. Germany – like the United States – protects the interests of innocent victims of defective products. *See* BGH [Fed. Ct. Justice] Nov. 26, 1968, 51 Entscheidungen des Bundesgerichtshofs in Zivilsachen [BGHZ] 91 (seminal German case shifting the burden of proving negligence in a product liability action from the claimant to the defendant provided that claimant can prove a product defect and damages caused by the defect). Therefore, expediting the process by which Plaintiffs' product liability claims are adjudicated would not offend German sovereign interests.

For over 22 years, U.S. courts have been confronted with foreign defendants who have allegedly distributed defective products into this country who contest – or ignore – the jurisdiction of U.S. courts to adjudicate product liability claims of U. S. citizens. For the same 22 years, these same foreign defendants have consistently attempted – and consistently failed – to wrest control from U. S. courts – and transfer them to foreign courts – to regulate the discovery process in such cases. If ever there was a case that warranted the more expeditious discovery procedures of the Federal Rules, it is this one: where people are living in houses contaminated with defective drywall emitting noxious sulphur based gases which no less than three U.S. government agencies (EPA CPSC, and CDC/ATSDR) and two state public health agencies (the Florida and Louisiana Departments of Health) have considered serious enough to engage in major regulatory investigations. This Court has countenanced little delay and even fewer challenges to its mandate

17

to expeditiously resolve all pre-trial matters in these consolidated proceedings.  Requiring the mandatory use of the Hague Evidence Convention would be at odds with all these compelling interests.

### III.    CONCLUSION

Knauf's Motion for Protective Order should be denied (1) because Knauf has not met its burden of persuasion that use of the Hague Evidence Convention would be more expeditious than the use of the discovery tools of the Federal Rules; (2) because this Court's vigilant supervision of the discovery process has already provided a mechanism for ensuring the discovery process is regulated and fair; (3) because the Hague Evidence Convention would divest this Court of jurisdiction of discovery from Knauf Gips and impede this Court's ability to manage this case;( 4) because the Hague Evidence Convention is time-consuming, expensive and ineffectual in providing full discovery and (5) because the sovereign interests of this Court and of this nation in ensuring "equal access to justice under the law" and the adjudication of the urgent product liability claims of U.S. citizens outweighs the desire of foreign nations to limit or prevent discovery from foreign companies who have profitably availed themselves of our national sovereignty and free trade policies.

DATED this 5th day of October, 2009.                    _____/s/ Russ M.Herman_____
                                                        Russ M. Herman, Esquire
                                                        Leonard A. Davis, Esquire
                                                        HERMAN, HERMAN, KATZ & COTLAR,
                                                        LLP
                                                        820 O'Keefe Avenue
                                                        New Orleans, Louisiana 70113
                                                        Phone: (504) 581-4892
                                                        Fax: (504) 561-6024
                                                        *Plaintiffs' Liaison Counsel*
                                                        *MDL 2047*

                                                        **and**

                                                        Arnold Levin
                                                        Fred S. Longer
                                                        LEVIN, FISHBEIN, SEDRAN &
                                                        BERMAN
                                                        510 Walnut Street, Suite 500
                                                        Philadelphia, PA 19106
                                                        215-592-1500 (phone)
                                                        215-592-4663 (fax)
                                                        Alevin@lfsblaw.com
                                                        *Plaintiffs' Lead Counsel*
                                                        *MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz (on the brief)
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seith Parker
Parker, Waichman, Alonso LLP
27399 Riverview Center Blvd.
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

        I hereby certify that the above and foregoing has been served on Plaintiffs' Liaision Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 5th  day of October, 2009.

                                    /s/  Victor M. Diaz, Jr., Esq.