UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| This Document Relates to 09-4119 | * * | SECTION: L |
| | * * | JUDGE FALLON |
| | * * * | MAGISTRATE JUDGE WILKINSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY IN SUPPORT OF MOTION OF KNAUF GIPS KG
FOR PROTECTIVE ORDER TO REQUIRE
USE OF THE HAGUE EVIDENCE CONVENTION**

Defendant, Knauf Gips KG ("Knauf Gips"), by its attorneys, submits this Reply to PSC's Response in Opposition to the Motion of Knauf Gips KG for Protective Order to Require Use of the Hague Evidence Convention (the "PSC Response") and to the Response of Homebuilders' Steering Committee in Opposition to Motion of Knauf Gips KG for Protective Order to Require Use of Hague Evidence Convention (the "HSC Response") and in further support of the Motion of Knauf Gips KG for Protective Order to Require Use of the Hague Evidence Convention (the "Knauf Gips Motion") and the Memorandum previously submitted in support thereof (the "Knauf Gips Memorandum").

A.   INTRODUCTION.

The Plaintiffs' Steering Committee (the "PSC") and/or the Homebuilders' Steering Committee (the "HSC"), in their separate submissions, would have this Court conclude that:

* Jurisdictional discovery against Knauf Gips should be taken pursuant to the federal rules because:



- o No distinction should be drawn between jurisdictional and merits discovery in determining whether Hague Evidence Convention or federal rule discovery should be ordered; and
- o Jurisdictional discovery should be allowed notwithstanding that no *prima facie* jurisdictional case has been made against Knauf Gips.
- Application of the *Aerospatiale* factors would lead to the use of federal rules discovery because:
  - o The discovery served on Knauf Gips will not be intrusive;
  - o German sovereign interests in protecting against the misuse of data are inconsequential; and
  - o The Hague Evidence Convention procedures would be ineffective.
- The *Aerospatiale* decision has been generally accepted as correctly decided and workable in practice in implementing the U.S.'s obligations under the Hague Evidence Convention.

The position of PSC and HSC on all these points is incorrect for the reasons set forth below:

B.  ARGUMENT.

1.  **Jurisdictional discovery against Knauf Gips should be taken pursuant to the Hague Evidence Convention.**

PSC and HSC cannot deny that *Aerospatiale* involved merits discovery or that this Court previously has held that jurisdictional discovery should be taken pursuant to the Hague Evidence Convention and not the federal rules. *Jenco v. Martech International, Inc.*, 1988 U.S. Dist. LEXIS 4727 (E.D. La. May 19, 1988). Instead, they rely upon a Third Circuit ruling, *In Re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 299 (3d Cir. 2004) ("*Automotive Refinishing*"), which PSC claims "rejected the holding in *Jenco* . . . ." [PSC

2

Response pp. 8-10; HSC Response pp. 2-3]. Not only is it erroneous to suggest that the Third Circuit can overrule a holding of this Court, but PSC ignores a key point from the *Automotive Refinishing* decision. In *Automotive Refinishing*, 358 F.3d at 302-03, the Third Circuit expressly found that:

> Unlike *Geo-Culture*[1], relied upon by the appellants, where the plaintiff failed to alleged even a *prima facie* case of personal jurisdiction, the District Court found that the plaintiffs here had established a prima facie case of personal jurisdiction, a conclusion not challenged by the Appellants. The plaintiffs' allegations amounted, therefore, to more than "mere blanket fishing expeditions" and were "not the type of bare-bone allegations that potentially could lead to the fishing expeditions of obvious concern to the signatory countries." *In re Vitamins*, 120 F. Supp. 2d at 50.[2]

Knauf Gips previously has submitted to this Court the Declaration of Oliver Fröhlich in support of Motion of Knauf KG for Protective Order to Require Use of Hague Evidence Convention (the "Fröhlich Declaration"), which categorically denies that Knauf Gips manufactured, distributed and sold the allegedly defective Chinese Drywall, that it is the parent corporation of KPT, Knauf Wuhu, Knauf Dongguan, that it has dominated and controlled these entities and/or that these entities acted as Knauf Gips' agents and representatives in connection with the manufacture and distribution of the Chinese Drywall at issue. [Fröhlich Declaration ¶¶ 5-9].

The Fröhlich Declaration is completely sufficient to rebut the boilerplate jurisdictional allegations in plaintiffs' complaints, outlined in detail by PSC [PSC Response p. 3 at n.1], and to place the burden on PSC and HSC to make out at least a *prima facie* jurisdictional case, as *Automotive Refinishing* requires, as a predicate to any discovery.[3] The Fifth Circuit has cited the

---

[1] *Geo-Culture, Inc. v. Siam Investment Management, S.A.*, 147 Ore. App. 536, 544 (1997).
[2] *In re: Vitamins Antitrust Litigation*, 120 F. Supp. 2d 45, 50 (D.D.C. 2000).
[3] PSC nonsensically suggests that the Fröhlich Declaration is inadmissible hearsay and automatically entitles them to a deposition of Mr. Fröhlich [PSC Response at pp 3-4]. As discussed, the Fröhlich Declaration was submitted to counter the utterly false jurisdictional allegations against Knauf Gips and to compel PSC and HSC to disclose what probative jurisdictional evidence they really have (which, as it

3

following definition for *prima facie* from Black's Law Dictionary 598 (8th ed. 2004): "*prima facie evidence.* Evidence that will establish a fact or sustain a judgment unless contradictory evidence is adduced." *Foradori v. Harris,* 523 F.3d 477, 518 (5th Cir. 2008).

PSC and HSC have failed to meet this burden. Indeed, the only "evidence" PSC and HSC rely upon to establish personal jurisdiction over Knauf Gips are Bills of Lading for two sales of drywall into the U.S.[4] and excerpts from Knauf websites. [PSC Response Ex. A; HSC Response Ex B]. These are insufficient to give rise to anything remotely resembling a *prima facie* case for jurisdiction over Knauf Gips for the following reasons:

- The Bills of Lading are for two shipments by Knauf KG in 2006 consisting of 1891 and 1764 pallets of "Standard Wallboards" to Port Canaveral Florida and Charleston, South Carolina, respectively, for a consignee in Chicago, Illinois. The Bills of Lading expressly state that the "Foreign Port" for the shipment was "Bremen, Germany". [PSC Response Ex. A-2]. In other words, this was drywall manufactured in **Germany** and exported to the U.S. To remove any doubt about this, attached as Exhibit A hereto are the invoices for the two shipments of 1891 and 1764 pallets of "Standard Wallboard", which expressly state that the "Country of Origin" was the "Federal Republic of Germany". This is completely consistent with the Fröhlich Declaration, which states that Knauf Gips manufactures drywall in Germany and played no role in the manufacture of the allegedly defective drywall in the plaintiffs' homes. [Fröhlich Declaration ¶¶ 5,

---

turns out, is none). Moreover, if the submission of a declaration in support of a motion for Hague Evidence Convention discovery mandates a federal rules deposition of the declarant, then any such motion would be self-defeating, *i.e.*, it would lead to federal rules discovery. The Hague Evidence Convention is a solemn treaty obligation of the United States, and nothing in it and, certainly nothing in the *Aerospatiale* decision, permits it to become rendered useless because foreign parties cannot request its protection without exposing themselves to the federal rules discovery that they are entitled to avoid.
[4] Although PSC's exhibit includes three copies of Bills of Lading, two of them are identical. [PSC Response Ex. A-2].

9]. This case is about alleged deficiencies in **Chinese** Drywall. The shipment by Knauf Gips of **German** Drywall for a consignee in Chicago has nothing to do with this case and certainly cannot give rise to a *prima facie* case for jurisdiction over Knauf Gips.

- The websites mention Knauf Gips only to identify it as a limited commercial partnership under German law with its principal place of business in Iphopfen, Germany and to provide identification of its CEO and contact information. The Fröhlich Declaration establishes that Knauf Gips is not the parent company and has no ownership interest in KPT, Knauf Wuhu or Knauf Dongguan.. [Fröhlich Declaration ¶¶5-7]. References in the websites to the "Knauf Family of Companies" and to other Knauf entities do not create a *prima facie* case that Knauf Gips has liability for Chinese Drywall sold by KPT, Knauf Wuhu, Knauf Dongguan into the United States and/or that Knauf Gips is exposed on any other basis to the jurisdiction of the U.S. courts for purposes of this litigation. Otherwise, every website providing routine information about related companies would be a basis for exposing all the affiliated companies to joint liability.

Exactly as articulated in *Automotive Refinishing*, 358 F.3d at 302-03, the claims against Knauf Gips are "bare-bone allegations that potentially could lead to the fishing expeditions of obvious concern to the [Hague Evidence Convention] signatory countries." Consequently, jurisdictional discovery against Knauf Gips, if allowed at all, should be taken subject to the Hague Evidence Convention procedures.[5]

---

[5] HSC also relies upon *Adams v. Unione Mediterranea di Sicurta*, 2002 U.S. Dist. LEXIS 5789 (E.D.La. Mar. 28, 2002) [HSC Response pp. 2-4], which likewise is distinguishable as there was no issue that a *prima facie* case for personal jurisdiction had been made.

2.  **Applying the Aerospatiale factors, merits discovery against Knauf Gips should be taken pursuant to the Hague Evidence Convention.**

Under the standards that PSC and HSC would employ, application of the *Aerospatiale* three factor test invariably would lead to the conclusion that federal rules discovery should apply to foreign litigants. Indeed, PSC addresses this issue under the heading "Post-*Aerospatiale* Decisions **Uniformly** Have Rejected the Required Use of the Hague Evidence Convention." [PSC Response p. 8. (emphasis supplied)]. Not only is this factually incorrect,[6] but it is counter to the Supreme Court's manifest intention in *Aerospatiale*, 482 U.S. at 546, for the district courts to "exercise special vigilance to protect foreign litigants from the danger that unnecessary or unduly burdensome discovery may place them in a disadvantageous position."

a.  **The discovery propounded on Knauf Gips will be intrusive.**

The jurisdictional discovery attached as Exhibit B to the HSC Response lays to rest any possible doubt regarding the extraordinary intrusiveness of what will be propounded upon Knauf Gips. Examples of these intrusive requests include the following:

**Document Production Request No. 4.**
- All communications (including, but not limited to, communications about Chinese Drywall) between Knauf Gips and nine listed Knauf Entities (the "Knauf Entities").

**Document Production Request No. 5.**
- All documents about shared services between Knauf Gips and the Knauf Entities.

**Document Production Request No. 6.**
- All documents about any contracts or agreements between Knauf Gips and any of the Knauf Entities.

---

[6] *E.g., In re Perrier Bottled Water Litigation*, 138 F.R.D. 348 (D. Conn. 1991) (concluding that discovery should proceed under the Hague Evidence Convention); *Jenco v. Martech International, Inc.*, 1988 U.S. Dist. LEXIS 4727 (E.D. La. May 19, 1988) (holding that jurisdictional discovery should be taken under the Hague Evidence Convention); *Geo-Culture, Inc. v. Siam Investment Management, S.A.*, 147 Ore. App. 536, 544 (1997) (holding that jurisdictional discovery should be taken under the Hague Evidence Convention where there was no *prima facie* basis for jurisdiction).

**Document Production Request No. 9.**
- All documents about any transfer of ownership, control and/or possession of any of the Knauf Entities.

**Document Production Request No. 11.**
- All documents about any business-related telephone calls by Knauf Gips to any person or entity in the United States

**Document Production Request No. 12 .**
- All business-related e-mails sent or received by Knauf Gips to any person in the United States.

**Document Production Request No. 14.**
- All documents about any visits by Knauf Gips to the United States.

**Interrogatory No. 2**
- Identification and details about each officer or director of Knauf Gips.

**Interrogatory No. 3**
- Identification and details about any officer, director, employee, agent, representative, servant or attorney present in the United States

**Interrogatories No. 4-5**
- Identification and details about any business in the United States or any merchandise or product shipped into the United States, irrespective of whether it was Chinese drywall.

**Interrogatories No. 6-7**
- Identification and details about to all documents sent to, or received from, any person in the United States.

**Interrogatory No. 14**
- Identification and details about all orders or other business from the United States irrespective of their connection with Chinese Drywall.

**Interrogatories No. 18-24**
- Detailed information regarding the relationship between Knauf Gips and the Knauf Entities and the business, personnel of the Knauf Entities as well as other subsidiaries and affiliates.

Moreover, the definitions to these discovery requests require Knauf Gips to provide information regarding not just itself but also "any of its officers, directors, employees, agents or

representatives, as applicable."[7] The expansion of these discovery responses to include these individuals has special significance to the relevant German sovereign interests that are discussed directly below.[8]

### b. German sovereign interests merit grave consideration.

Both PSC and HSC would give no regard to German sovereign interests in their desire to take intrusive discovery to attempt to uncover the jurisdictional facts that they do not have and that do not exist. [PSC Response pp. 16-18; HSC Response pp. 9-11]. Most remarkably, PSC suggests that : "The sovereign interests of Germany. . .are not new. They were the same over 22 years ago when *Aerospatiale* was decided and have remained unchanged in the intervening years. . . ." [PSC Response p. 16].

This reveals a complete lack of understanding of the relevant European and German legal developments. In the 22 years since the *Aerospatiale* decision, the law of data protection has grown and expanded enormously in the European Union (the "EU") and in Germany. Two of the most important expansions are discussed immediately below:

- The EU issued its Directive 95/46/EC (the "Privacy Directive") to harmonize the Data Protection Laws of its member states, including Germany. As a recent commentator has stated:

    > The Privacy Directive restricts the transfer and processing of "personal data" which is broadly defined as "any information relating to an identified or identifiable natural person." Privacy Directive Article 25 forbids the transfer of personal data to a third country unless the third country provides an adequate level of data protection. Furthermore, if a specific third country is found to lack adequate data protection, EU states are required to take affirmative steps to

---

[7] Additionally, the definition of "Relevant Time Period" to include "from January 1, 2004, to the present" further expands the scope of the discovery beyond what might be reasonable.

[8] Contrary to PSC's assertion [PSC Response pp. 11-13], there will be no "asymmetry" resulting from Knauf Gips' benefiting from the Plaintiff Profile Form and Threshold Inspection Program. Knauf Gips likewise has completed a Defendant Manufacturers' Profile form subject to the express reservation of its rights under the Hague Evidence Convention.

8

prevent the transfer of personal data to that country. The EU position is that the United States lacks adequate data protection standards.

*Carla L. Reyes*, Note, The U.S. Discovery-EU Privacy Directive Conflict; Constructing a Three-tiered Compliance Strategy, *Duke J. Comp. & Int'l. L.* 357, 359 (2009). This commentator proceeds to state:

> The Privacy Directive restrictions on transfers and proceeding of personal data pose a problem for litigants involved in U.S.-EU transborder litigation. First, the Privacy Directive transfer provisions restrict the scope of discoverable data. Second, because processing is defined as the "collection, recording, organization, storage, adaptation, or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, blocking, erasure or destruction" of personal data, the processing requirement apply to "virtually any action that a U.S. litigator would take" in preparation for trial.
>
> Thus, parties to U.S.-EU trans-border litigation may not be able to comply with U.S. discovery requirements without violating EU data protection law. However, full compliance with the Privacy Directive may require refusal to comply with a U.S. discovery request. Notably, entities subject to the Privacy Directive pay strict monetary penalties for any violation, and failure to comply with U.S. discovery requests can result in "severe sanctions including contempt, monetary fines, prosecution for obstruction of justice, prejudicial jury instructions and dismissal of claims." Litigants are therefore left to decide which set of laws to violate – EU data protection or U.S. discovery.

*Id.* at 360-61. As noted above, the discovery requested from Knauf Gips will include a substantial amount of "personal data" which encompasses any data, including business data, which relates to a natural person. This personal data cannot be transferred to the U.S. Moreover, Knauf Gips and its lawyers would be prohibited from "processing" this data which, under the broad definition of that term, would include reviewing and culling the data for discovery production purposes.

- In a landmark decision issued on June 16, 2009, 2 BvR 902/06, the German Federal Constitutional Court ruled that the German Telecommunications Law protects any

communication on an e-mail account, to which the user only has access via an internet connection, *e.g.*, the email accounts that the Knauf Gips employees have with Knauf Gips. Under this decision, the production of documents may still be ordered in circumstances which are considered "proportional." *See* Federal Constitutional Court Press Release No. 79-2009 of 15 July, 2009 (attached as Exhibit B hereto). Consequently, the documents of the Knauf Gips employees stored on Knauf Gips servers could be claimed to be subject to the protection of the German Telecommunications Law, and it is highly questionable whether the highly intrusive discovery sought in this case would be deemed "proportional" under German standards. **A violation of the secrecy obligations in the Telecommunications Law is a criminal offence punishable by imprisonment of up to five years or by monetary fines.**

Both the EU/German Data Protection laws and the German Telecommunication law are statutes of general application (not statutes enacted to block discovery in U.S. litigation) and represent strong German public policy interests that will need to be taken into regard in connection with any discovery taken from Knauf Gips in this case. Indeed, several U.S. courts have granted protective orders on the basis of the EU/German Data Protection Laws. *Volkswagen, AG v. Valdez*, 909 S. W.2d 900, 903 (Tex. 1995) (production of personal information relating to employees denied because such production would violate the German Federal Data Protection Act); *Salerno v. Lecia, Inc.*, 1999 U.S. Dist. LEXIS 7169 at *9-*10 (W.D.N.Y. Mar. 23, 1999) (production of documents denied in view of violations of EU and German Data Protection Laws). A German court, administering discovery propounded to a German party through the Hague Evidence Convention, is in the best position to balance these interests and provide a

solution that will provide reasonable discovery but simultaneously will avoid violating German law. *See* Reyes, *Note* at 364-68.

### c. The Hague Evidence procedures will be effective.

Knauf Gips previously has demonstrated that: (i) the German reservation on the production of documents is designed to prevent the classic fishing expedition and does not mean that documents will not be produced at all pursuant to the Hague Evidence Convention procedures; and (ii) oral testimony can be taken effectively under the auspices of the German court through the Hague Evidence Convention. [Knauf Gips Memorandum pp. 11-14].

Most important, the discovery sought in this case raises serious questions under EU and German data privacy law, as discussed immediately above. Prompt and complete compliance with discovery will be facilitated by the involvement of a German judge, who can provide a definitive analysis as to the extent to which compliance with the discovery requests would impermissibly violate EU and German law. This will facilitate discovery and the ultimate resolution of this case by avoiding compelling this Court to analyze and opine upon the EU and German Data Protection Law. It also will avoid the possibility that Knauf Gips might find itself in a legal dilemma caused by differing understandings on the part of U.S. and German courts as to the impact of German law on its potential compliance with the discovery requests.[9]

---

[9] As to delay, HSC relies on a generalized statement in the State Department's website that the "Execution of letters rogatory may take a year or more worldwide." [HSC Response p. 12; Ex. A.]. HSC fails to note that this website page deals with letters rogatory, whose execution is discretionary, and not with requests under the Hague Evidence Convention, whose execution is mandatory under Art. 12 thereof. Indeed, this website page expressly states that: "Letters rogatory are the customary method of obtaining judicial assistance from abroad **in the absence of a treaty or executive agreement.**" [*Id.* at Ex. A (emphasis supplied)]. Moreover, any generalized "worldwide" statement by no means can be applied to a particular country. The other website page devoted to "Judicial Assistance Germany" that HSC has provided [*Id*]. contains no hint that that Hague Evidence Convention discovery is subject to undue delays.. In any event, Knauf Gips has a strong interest in the prompt resolution of these proceedings against it and pledges its cooperation in facilitating appropriate Hague Evidence Convention discovery through the German courts.

3.  *Aerospatiale* **was wrongly decided, is ripe for reconsideration and should be narrowly interpreted.**

There is no disagreement that *Aerospatiale* is controlling precedent upon this Court. [Motion p. 15; PSC Response p. 1]. What PSC and HSC fail to address is that *Aerospatiale* has been uniformly criticized by commentators and by leading federal judges, including Judge Roth, who sat on the panel of the *Automotive Refinishing* antitrust litigation on which PSC and HSC so heavily rely. [Knauf Gips Memorandum pp. 14-16]. PSC and HSC have cited no commentators or jurists who take the contrary view, namely that *Aerospatiale* was correctly decided and has proved workable in practice.

In view of this profound criticism, it is appropriate for *Aerospatiale* to be read narrowly and not automatically to require the application of federal rules discovery, particularly to jurisdictional discovery propounded despite the absence of a *prima facie* case for jurisdiction over Knauf Gips.

C.  CONCLUSION.

For the reasons stated in the Knauf Gips Memorandum and herein, this Court should enter a protective order requiring all parties in these proceedings to use the procedures specified in the Hague Evidence Convention for any jurisdictional or merits discovery to be taken from Knauf Gips.

Respectfully submitted by,

Richard M. Franklin
Douglas B. Sanders
BAKER & MCKENZIE LLP
130 E. Randolph Drive
One Prudential Plaza
Chicago, IL 60601
Telephone:   (312) 861-8075
Facsimile:   (312) 698-2375
Email: douglas.b.sanders@bakernet.com

Donald J. Hayden
BAKER & McKENZIE
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, FL 33131
Telephone: (305) 789-8966
Facsimile: (305) 789-8953
Email: donald.j.hayden@bakernet.com


s/ KYLE A. SPAULDING
Kerry J. Miller (LA Bar #24562)
Kyle A. Spaulding (LA Bar #29000)
FRILOT L.L.C.
1100 Poydras Street Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
E-mail: Kmiller@frilot.com


*Counsel for Knauf Gips KG*


## CERTIFICATE

I hereby certify that the above and foregoing Reply In Support of Motion of Knauf Gips KG For Protective Order To Require Use of Hague Evidence Convention has been served upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 2047, on this 12th day of October, 2009.

s/ KYLE A. SPAULDING