UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION ) ) ) ) ) ) ) | MDL No. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO ALL CASES**

### PRE-TRIAL ORDER NO. 1(B)
### (Preservation of Physical Evidence)

Pursuant to the Court's duty to supervise pretrial proceedings in this case, including discovery, and pursuant to the Court's inherent power, the Court hereby modifies Paragraph 14 of Pretrial Order No. 1 to address the Court's expectations, from this date forward, with respect to the preservation of physical evidence from properties that may be repaired by the parties during the course of this litigation. Those persons or entities who do not undertake to repair their properties are, by definition, preserving the physical evidence, so long as the drywall and any building components and contents that are believed to be affected by the allegedly defective drywall remain intact. This Order addresses preservation requirements for those persons or entities who (1) were transferred to this Court by the Judicial Panel on Multidistrict Litigation, pursuant to its Order of June 15, 2009; (2) any tag-along actions subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to Rule 7.4 of the Rules of Procedure of that Panel; (3) all related cases originally filed in this Court or transferred or removed to this Court; (4) those persons or entities who intend to or may seek recovery relating to Chinese-manufactured drywall, including putative members of any class actions; and (5) any subsidiaries and affiliates of all defendants in any

such actions.

In summary, from this date forward, all persons or entities who have or who intend to pursue a claim relating to allegedly defective Chinese-manufactured drywall and their agents, subsidiaries and affiliates shall preserve the following physical evidence at their own expense, subject to further order by the Court. Notwithstanding the foregoing, the Court reiterates that Paragraph 14 of Pre-Trial Order No. 1 remained in full force and effect up until this modification.

A. <u>Preservation of Physical Evidence</u>:

1. ***Drywall*** -- The Parties shall maintain at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from an affected property, including taking samples of unmarked drywall. If there are any markings on the sample, the samples should include as much of the identifiable marking as possible. In addition, the parties also shall preserve at least one sample of each type of drywall endtape, if any, that is found during inspection, repair or removal of drywall in or from a property. These drywall and endtape samples shall be labeled with the date of collection, the room location and the specific wall that the sample was taken from. These drywall and endtape samples shall be stored separately in double-bagged polyethylene zip-lock bags or equivalents, and not grouped together. Any drywall or endtape sample to be preserved under this paragraph shall be stored in reasonable climate controlled conditions and free of water or moisture. All samples should be clearly labeled on the outside of the plastic bag or equivalent, and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (e.g. drywall, copper wire, etc.), and where the item was taken from in the property.

In addition to taking these samples, the Parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.

2. *HVAC coil material samples* -- Before removing any HVAC coils or attachments, the Parties shall identify the location of each HVAC system on a floor plan, building diagram, or other similar form of documentation, and photograph the HVAC coil and all affected attachments while the HVAC coil and other attachments remain intact. For each HVAC coil removed from the property, the Parties shall either: (a) preserve the entire removed HVAC coil, or (b) select and label: (i) at least eight representative copper U-bends (four from each side); and (ii) at least eight sections (at least six to ten inches long) of refrigerant line or other straight copper tubing associated with the coil or thermostatic expansion valve (TXV) for each HVAC system that is removed from the property. In the event that there are HVAC systems that are not removed or repaired, they should be also identified on the floor plan, building diagram, or other similar form of documentation. An appropriately trained HVAC technician should then cut off the labeled segments with a pipe cutter or saw. The serial number, make, and model of each affected HVAC coil shall be recorded and photographed.

All samples of copper U-bends, refrigerant line, and tubing (but not the HVAC coil with refrigerant line attached, if preserved) shall be placed separately in double-bagged zip-lock bags, and not grouped together. These samples must be allowed to dry, whether wet

from condensation or refrigerant, before the zip-lock bag is sealed and stored. Any HVAC coil or sample to be preserved under this paragraph shall be stored in reasonable climate controlled conditions. All such samples should be clearly labeled on the outside of the plastic bag or equivalent, and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (drywall, copper wire, etc.), and where the item was taken from in the property.

   3. *Plumbing component samples* – The parties shall photograph all of the allegedly affected plumbing fixtures removed from the property, while they are still in place before removal and identify their location on a floor plan, building diagram, or other similar form of documentation. If multiple allegedly affected bathroom or kitchen plumbing fixtures are removed from the property, the Parties shall preserve one complete allegedly affected fixture.In addition, if allegedly affected copper connecting segments to fixtures ("stubouts") are removed, the Parties shall preserve at least one segment (at least four (4) inches long) of such copper stubouts. To the extent that such items are removed, the Parties shall also preserve at least one allegedly affected brass shower valve and a section of any allegedly affected copper riser pipe (at least eight (8) inches long) from between the shower valves and shower head in a bathroom. The Parties shall photograph each sample before cutting or removing the sample from the corresponding location or fixture. An appropriately trained person should cut off, where necessary, each sample with a pipe cutter or saw, and protect all sharp edges with tape or by other appropriate means. These samples should be stored separately in double-bagged polyethylene zip-lock bags or equivalents (if possible due to the size of the sample taken), and not grouped together. These samples must be allowed to dry

before the zip-lock bag, if any, is sealed and stored. Any fixture or sample to be preserved under this paragraph shall be stored in reasonable climate controlled conditions. All samples should be clearly labeled on the outside of the plastic bag or equivalent and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (drywall, copper wire, etc.), and where the item was taken from in the property.

    4.    *Electrical component samples* -- The Parties shall preserve at least three affected electrical receptacles and three affected switches, if available, from a wall or walls with allegedly defective Chinese-manufactured drywall. The samples do not need to be taken from a single wall. Similarly, the Parties shall preserve at least three affected receptacles and three affected switches, if available, from a wall or walls with non-Chinese manufactured drywall. These samples likewise do not need to be taken from a single wall but should be representative of the types of receptacles and switches found in the property.

    Additionally, if smoke detectors, carbon monoxide detectors, intruder alarm devices or any similar life safety devices are present, the Parties shall collect at least two of each type of device from each floor, if available. The Parties shall photograph these selected samples prior to their removal and identify the location of all samples and photographs on a floor plan, building diagram, or other similar form of documentation. An appropriately trained person should cut the electrical wires connecting the receptacles, switches and other electrical fixtures, so that at least two (2) inches of each wire remain connected to the device. For smoke detectors and similar devices, the electrician should cut the wires above any plug or similar connector. If other less common devices with copper wire connections are found,

the Parties should preserve representative samples as described in this subparagraph 4.

These samples should be stored in zip-lock bags. Samples shall not be stored in wet conditions. If wet from condensation, the sample must be allowed to dry before the zip-lock bag is sealed and stored. Any sample devices and wiring to be preserved under this paragraph shall be stored in reasonable climate controlled conditions. All samples should be clearly labeled on the outside of the plastic bag or equivalent and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (drywall, copper wire, etc.), and where the item was taken from in the property.

5. ***Photograph or video affected items:*** To the extent that a party intends to seek a recovery for building components or contents not described herein allegedly affected by defective Chinese manufactured drywall, such claimed other building components shall be documented by photograph or video and reasonable sampling consistent with this Order. Unless otherwise agreed by all parties in advance of the repair or removal, to the extent that a Party is contending that an appliance has been damaged or affected by defective Chinese drywall and seeks to recover damages for same, then that party shall preserve representative samples of that portion of the appliance exhibiting those effects (e.g., blackened coils in a refrigerator). This paragraph is not related to incidental damages, such as damage to cabinetry, countertops, wood trim, or other materials that must be replaced in order to access or remove the allegedly defective Chinese-manufactured drywall or are necessarily damaged through the repairs to the property. All samples should be clearly labeled on the outside of the plastic bag or equivalent and then placed inside a second plastic bag or equivalent. The

label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (drywall, copper wire, etc.), and where the item was taken from in the property.

B.	Property owners and renters shall preserve, at their own expense, any and all personal property items that they claim to be affected by the allegedly defective Chinese-manufactured drywall for which they intend to pursue recovery.

C.	This duty to preserve only applies to those persons or entities that intend to seek recovery for damages in connection with repairs to properties that contain allegedly defective Chinese-manufactured drywall, or recovery for damages to personal property contained in such a property, or personal injury from allegedly defective Chinese-manufactured drywall.

D.	This Order pertains only to preservation of physical evidence in properties being repaired, and it replaces the provisions of Paragraph 14 of Pretrial Order #1 that pertain to physical evidence other than documents. The Court may enter a separate order that pertains to documents, which may similarly replace the provisions of Paragraph 14 of Pretrial Order #1 that pertain to documents.

E.	Nothing in this Order shall be construed to affect the discoverability or admissibility of evidence. All objections to discoverability, admissibility or sufficiency of evidence are maintained and may be asserted at any time.

F.	Evidence or material not preserved in compliance with this Pre-Trial Order may be subject to exclusion for use in either discovery or trial of the matter and further, the party responsible for failing to preserve evidence may be subject to the claim or defense of spoliation.

G.	This Order may be subject to future modification when and if a remediation protocol is developed in this litigation.

New Orleans, Louisiana, this 9th day of October, 2009.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE