# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID GROSS, CHERYL GROSS, AND LOUIS VELEZ, individually, and on behalf of all others similarly situated,** | **CASE NO.: 09-6690 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON** |
| **Plaintiffs,** | |
| **v.** | **CLASS ACTION COMPLAINT** |
| **KNAUF GIPS KG; KNAUF PLASTERBOARD (TIANJIN) CO., LTD.; KNAUF PLASTERBOARD (WUHU), CO., LTD.; KNAUF PLASTERBOARD (DONGGUAN) CO., LTD.; TAISHAN GYPSUM CO., LTD., f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; GEORGIA-PACIFIC LLC; PINGYI BAIER BUILDING MATERIALS CO., LTD.; CHANGZHOU YINHE WOOD INDUSTRY CO., LTD.; KING SHING STEEL ENTERPRISES CO., LTD.; NANHAI SILK IMP. & EXP. CORPORATION; JINAN RUN & FLY NEW MATERIALS CO., LTD.; SHANDONG YIFANG GYPSUM INDUSTRY CO., LTD.; SIIC SHANGHAI INTERNATIONAL TRADE (GROUP) CO., LTD.; TIANJIN TIANBAO CENTURY DEVELOPMENT CO., LTD.; WIDE STRATEGY LIMITED; SHANDONG ORIENTAL INTERNATIONAL TRADING CO., LTD.; SHANGHAI EAST BEST ARTS & CRAFTS CO., LTD.; QINGDAO YILIE INTERNATIONAL TRADE CO., LTD.; TAI'AN KANGYIJIA BUILDING MATERIALS CO., LTD.; USG CORPORATION; BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY, ("BNBM"); CHINA NATIONAL BUILDING MATERIALS CO. LTD., ("CNBM"); BEIJING NEW BUILDING MATERIALS (GROUP) CO., LTD., ("BNBM GROUP"); CHINA NATIONAL BUILDING MATERIAL GROUP CORPORATION ("CNBM GROUP"); PINGYI ZHONGXING PAPER-FACED** | **JURY TRIAL DEMAND** |

1

PLASTERBOARD CO., LTD. f/k/a
SHANDONG CHENXIANG BUILDING
MATERIALS CO., LTD., (CHENXIANG);
SINKIANG TIANSHAN BUILDING
MATERIAL AND GYPSUM PRODUCT CO.,
LTD.; TAISHAN GYPSUM CO., LTD.
LUCHENG BRANCH; YUNAN TAISHAN
GYPSUM AND BUILDING MATERIAL CO.
LTD.; TAI'AN JINDUN BUILDING
MATERIAL CO., LTD.; TAISHAN GYPSUM
(XIANGTAN) CO. LTD.; TAISHAN GYPSUM
(PINGSHAN) CO., LTD.; TAISHAN GYPSUM
(HENGSHUI) CO., LTD.; TAISHAN GYPSUM
(HENAN) CO., LTD.; HUBEI TAISHAN
BUILDING MATERIAL CO., LTD.;
TAISHAN GYPSUM (TONGLING) CO., LTD.;
WEIFANG AOTAI GYPSUM CO., LTD.;
TAISHAN GYPSUM (PIZHOU) CO., LTD.;
FUXIN TAISHAN GYPSUM AND BUILDING
MATERIAL CO., LTD.; TAISHAN GYPSUM
(WENZHOU) CO., LTD.; TAISHAN GYPSUM
(CHONGQING) CO., LTD.; TAISHAN
GYPSUM (JIANGYIN) CO., LTD.;
QINHUANGDAO TAISHAN BUILDING
MATERIAL CO., LTD.; TAI'AN TAISHAN
GYPSUM BOARD CO., LTD.; TAISHAN
GYPSUM (BAOTOU) CO., LTD.; SHAANXI
TAISHAN GYPSUM CO., LTD; ROTHCHILT
INTERNATIONAL, LTD.; L&W SUPPLY
CORPORATION d/b/a SEACOAST SUPPLY;
BANNER SUPPLY CO.; LA SUPREMA
TRADING, INC.; LA SUPREMA
ENTERPRISE, INC.; BLACK BEAR GYPSUM
SUPPLY, INC.; SMOKEY MOUNTAIN
MATERIALS, INC.; EMERALD COAST
BUILDING MATERIALS;
INTERIOR/EXTERIOR BUILDING SUPPLY,
LP.; INTERIOR/EXTERIOR ENTERPRISES,
LLC; RIGHTWAY DRYWALL, INC.;
INDEPENDENT BUILDERS SUPPLY
ASSOCIATION, INC.; TOBIN TRADING
INC.; VENTURE SUPPLY INC.; KNAUF
INSULATION GMBH a/k/a KNAUF USA;
CNBM USA CORP.; SUNRISE BUILDING
MATERIALS LTD.; DEVON
INTERNATIONAL; TRIORIENT TRADING,

2

INC.; GREAT WESTERN BUILDING
MATERIALS; ALL INTERIOR SUPPLY,
INC.; A&R HARDWARE SUPPLY, INC.;
DAVIS CONSTRUCTION SUPPLY, LLC;
ELITE SUPPLY CORPORATION;
INTERNATIONAL MATERIALS TRADING,
INCORPORATED; MARATHON
CONSTRUCTION MATERIALS INC.;
STEELER, INC.; MAURICE PINCOFFS
COMPANY, INC.; METRO RESOURCES
CORP.; NORTHERN PACIFIC LUMBER
CO.; ORIENTAL MERCHANDISE
COMPANY, INC. f/k/a ORIENTAL TRADING
COMPANY, INC.; STOCK BUILDING
SUPPLY, LLC; STOCK BUILDING SUPPLY,
INC.; BEDROCK BUILDING MATERIALS,
LLC; THE CHINA CORPORATION, LTD.;
TOV TRADING INC.; BUILDERS GYPSUM
SUPPLY, L.L.P.; BUILDERS GYPSUM
SUPPLY CO., INC.; J.W. ALLEN &
COMPANY INCORPORATED; PHOENIX
IMPORTS CO., LTD.; TMO GLOBAL
LOGISTICS, LLC; QUIET SOLUTIONS INC.;
MAZER'S DISCOUNT HOME CENTERS,
INC.; KNAUF GYPSUM INDONESIA;
GUANGDONG KNAUF NEW BUILDING
PRODUCTS CO., LTD.; KNAUF AMF GMBH
& CO. KG; KNAUF DO BRASIL LTD.;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD.; SHANGHAI YU YUAN IMP & EXP
CO., LTD. and; JOHN DOE Defendants 1-20,

        Defendants.

_____/

## AMENDED CLASS ACTION COMPLAINT

Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action on behalf of themselves

and all other similarly situated individuals and entities that have owned, own, or acquired homes,

residences, or other structures physically located in the United States containing defective

drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied,

marketed, or sold by Defendants, Knauf Gips KG ("Knauf Gips"); Knauf Plasterboard (Tianjin)

3

Co., Ltd. ("Knauf Tianjin"); Knauf Plasterboard (Wuhu) Co., Ltd.; Knauf Plasterboard

(Dongguan) Co., Ltd.; Taishan Gypsum Co., Ltd. F/k/a as Shandong Taihe Dongxin Co., Ltd.

("Taishan"); Georgia-Pacific LLC; Pingyi Baier Building Materials Co., Ltd.; Changzhou Yinhe

Wood Industry Co., Ltd.; King Shing Steel Enterprises Co., Ltd.; Nanhai Silk Imp. & Exp.

Corporation; Jinan Run & Fly New Materials Co., Ltd.; Shandong Yifang Gypsum Industry Co.,

Ltd.; Siic Shanghai International Trade (Group) Co., Ltd.; Tianjin Tianbao Century Development

Co., Ltd.; Wide Strategy Limited; Shandong Oriental International Trading Co., Ltd.; Shanghai

East Best Arts & Crafts Co., Ltd.; Qingdao Yilie International Trade Co., Ltd.; Tai'an Kangyijia

Building Materials Co., Ltd.; USG Corporation ("USG"); Beijing New Building Materials Public

Limited Co. ("BNBM"); China National Building Materials Co. Ltd.; Beijing New Building

Materials (Group) Co. Ltd.; China National Building Material Group Corporation ("CNBM

Group"); Pingyi Zhongxing Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang

Building Materials Co., Ltd. ("Chenxiang"); Sinkiang Tianshan Building Material And Gypsum

Product Co Ltd.; Taishan Gypsum Co., Ltd. Lucheng Branch; Yunan Taishan Gypsum And

Building Material Co. Ltd.; Tai'an Jindun Building Material Co., Ltd.; Taishan Gypsum

(Xiangtan) Co. Ltd.; Taishan Gypsum (Pingshan) Co., Ltd.; Taishan Gypsum (Hengshui) Co.,

Ltd.; Taishan Gypsum (Henan) Co., Ltd.; Hubei Taishan Building Material Co., Ltd.; Taishan

Gypsum (Tongling) Co., Ltd.; Weifang Aotai Gypsum Co., Ltd.; Taishan Gypsum (Pizhou) Co.,

Ltd.; Fuxin Taishan Gypsum And Building Material Co., Ltd.; Taishan Gypsum (Wenzhou) Co.,

Ltd.; Taishan Gypsum (Chongqing) Co., Ltd.; Taishan Gypsum (Jiangyin) Co., Ltd.;

Qinhuangdao Taishan Building Material Co., Ltd.; Tai'an Taishan Gypsum Board Co., Ltd.;

Taishan Gypsum (Baotou) Co., Ltd.; Shaanxi Taishan Gypsum Co., Ltd; Rothchilt International,

Ltd. ("Rothchilt"); L&W Supply Corporation d/b/a Seacoast Supply ("Seacoast"); Banner

Supply Co. ("Banner"); La Suprema Trading, Inc. ("La Suprema Trading"); La Suprema
Enterprise, Inc. ("La Suprema Enterprise"); Black Bear Gypsum Supply, Inc. ("Black Bear");
Smokey Mountain Materials, Inc.; Emerald Coast Building Materials; Interior/Exterior Building
Supply, LP; Interior/Exterior Enterprises LLC; Rightway Drywall Inc.; Independent Builders
Supply Association, Inc. ("IBSA"); Tobin Trading Inc. ("Tobin"); Venture Supply Inc.
("Venture"); Knauf Insulation GMBH a/k/a Knauf USA ("Knauf USA"); CNBM USA Corp.;
Sunrise Building Materials Ltd.; Devon International; Triorient Trading, Inc.; Great Western
Building Materials; All Interior Supply, Inc.; A&R Hardware Supply, Inc.; Davis Construction
Supply, LLC; Elite Supply Corporation; International Materials Trading, Incorporated; Marathon
Construction Materials Inc.; Steeler, Inc.; Maurice Pincoffs Company, Inc.; Metro Resources
Corp.; North Pacific Lumber Co.; Oriental Merchandise Company, Inc. f/k/a Oriental Trading
Company, Inc.; Stock Building Supply, LLC; .; Oriental Merchandise Company, Inc. f/k/a
Oriental Trading Company, Inc.; Stock Building Supply, LLC; Stock Building Supply, Inc.;
Bedrock Building Materials, LLC; The China Corporation, Ltd.; Tov Trading Inc.; Builders
Gypsum Supply, L.L.P.; Builders Gypsum Supply Co., Inc.; J.W. Allen & Company
Incorporated; Phoenix Imports Co., Ltd.; TMO Global Logistics, LLC; Quite Solutions Inc.;
Mazer's Discount Home Centers, Inc.; Knauf Gypsum Indonesia; Guangdong Knauf New
Building Product Co., Ltd.; Knauf Amf GmbH & Co. Kg; Knauf Do Brasil Ltd.; Taian Taishan
Plasterboard Co., Ltd.; Shanghai Yu Yuan Imp & Exp Co., Ltd.; and John Doe defendants 1-20.

The Defendants have marketed their products in a manner designed to conceal their
identity making a class action appropriate since it would visit an injustice by permitting these
wrongdoers, who among them have inflicted an injury upon the entirely innocent Plaintiffs, to

escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused harm.

In support thereof, Plaintiffs state as follows:

## JURISDICTION, PARTIES, AND VENUE

1.     This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act.  *See* 28 U.S.C. § 1711, *et. seq.*  Plaintiffs and certain Defendants are citizens of different states and the amount in controversy of this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.     Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to the claim occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.     Plaintiff Louis Velez owns a home located at 5427 Paris Avenue, New Orleans, LA 70122.

4.     Approximately two years ago, Mr. Velez undertook to remodel his home using defective Chinese drywall.  Mr. Velez has no way of identifying the manufacturer of the defective Chinese drywall in his home.

5.     By way of explanation, an inspection of Mr. Velez's home revealed the drywall in his home has markings with unintelligible numbering.  There are no corresponding markings identifying the manufacturer of the drywall.

6.      Notwithstanding his inability to identify the manufacturer of the drywall in his home, there are several factors demonstrating there is Chinese manufactured drywall in Mr. Velez's home.  For instance, Mr. Velez has experienced several instances of corrosion, bad odors, and a renter living in the home, Bruce Velez, has experienced headaches and other personal injuries that have been linked to the defective Chinese drywall at issue in this litigation.

7.      The defective Chinese drywall that is installed in Mr. Velez's home was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by certain unknown defendants.

8.      The defective Chinese drywall in Mr. Velez's home has caused him to suffer property damages.

9.      Plaintiffs David Gross and Cheryl Gross (the "Gross Plaintiffs") (the Velez Plaintiffs and the Gross Plaintiffs shall be referred to herein collectively as "Plaintiffs"), together own a home located at 400 Hay Place, New Orleans, LA 70124.

10.     Following the ravishes of Hurricanes Katrina and Rita, the Gross Plaintiffs undertook to repair heavy damages that had been sustained to their home.  After the completion of the repairs in December 2006, Plaintiffs moved back into their home.

11.     The Gross Plaintiffs have since discovered that defective Chinese drywall was used during the repairs to their home.  The Gross Plaintiffs have no way of identifying the manufacturer of the defective Chinese drywall in their home.

12.     By way of explanation, an inspection of the Gross Plaintiffs' home revealed "made in China" markings on their drywall without any corresponding markings identifying the manufacturer.

13.     The defective Chinese drywall that is installed in the Gross Plaintiffs' home was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by certain unknown defendants.

14.     The defective Chinese drywall in the Gross Plaintiffs' home has caused both property damage and personal injuries to the Gross Plaintiffs.

## **DEFENDANTS**

15.     Defendant Knauf Gips is a German corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  One of Knauf Gips' affiliates, Knauf Verwaltungsgsellschaft KG, owns a substantial stake in USG.  Knauf Gips is a leading manufacturer of building materials and systems.  Knauf Gips, together with its affiliates, including Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States.  Upon information and belief, at all materials times hereto, Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin, and its agents, apparent agents, and employees.

16.     Among other things, in 1995, Knauf Gips introduced its advanced production techniques and technology into China.  From 1997 through 2001, Knauf Gips invested in China and established three plasterboard plants which are located in Wuhu, Tianjin and Dongguan.  The product quality of all Knauf Gips' plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany.  Moreover, Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Knauf Tianjin in China.  Knauf Tianjin and its employees are the actual and/or apparent agents of Knauf Gips.

17.     Upon information and belief, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Upon information and belief, Knauf Gips and/or Knauf Tianjin has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Knauf Gips and/or Knauf Tianjin manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18.     Defendant Knauf Tianjin is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Knauf Tianjin is the actual agent and/or apparent agent of Knauf Gips.  Upon information and belief, Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Knauf Tianjin and/or Knauf Gips has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the United States.

19.     Defendant Knauf Plasterboard (Wuhu) Co. Ltd**.**, is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Knauf Plasterboard (Wuhu) Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Knauf Plasterboard (Wuhu) Co., Ltd. manufactured, sold, distributed, marketed or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Upon information and belief, Knauf Plasterboard Wuhu Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Knauf Plasterboard (Wuhu) Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

20.     Defendant Knauf Plasterboard (Dongguan) Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Knauf Plasterboard (Dongguan) Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Knauf Plasterboard (Dongguan) Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Plasterboard (Dongguan) Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in

numerous structures in the United States.  Upon information and belief, Knauf Plasterboard

(Dongguan) Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

21.    Defendant Knauf USA is an Indiana corporation with a principal place of business

in Shelbyville, Indiana.  By information and belief, Knauf USA is a subsidiary of Knauf GIPS.

22.    By information and belief, Knauf USA acted as an agent for Knauf GIPS and

other Knauf entities by promoting and marketing the drywall at issue in this litigation to

American suppliers.  Accordingly, Knauf USA caused the drywall at issue in the case to be

imported, distributed, delivered, supplied, inspected, marketed and/or sold.

23.    Defendant Georgia-Pacific LLC is a Delaware limited liability corporation having

its principal place of business in Atlanta, Georgia.  Georgia-Pacific LLC is involved in the

manufacturing and/or sale of gypsum drywall.  Upon information and belief, Georgia-Pacific

LLC manufactured, distributed, marketed and/or sold the drywall at issue in this litigation.

24.    Upon information and belief, Defendant Pingyi Baier Building Materials Co.,

Ltd., is a foreign corporation doing business in several States, including but not limited to,

Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Pingyi Baier

Building Materials Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.

Upon information and belief, Pingyi Baier Building Materials Co., Ltd. manufactured, sold,

distributed, marketed and/or placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas,

North Carolina, and Virginia.  Pingyi Baier Building Materials Co., Ltd. has continuously and

systematically distributed and sold drywall to numerous purchasers in the United States and their

drywall is installed in numerous structures in the United States.  Upon information and belief,

Pingyi Baier Building Materials Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

25.     Upon information and belief, Defendant Changzhou Yinhe Wood Industry Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Changzhou Yinhe Wood Industry Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Changzhou Yinhe Wood Industry Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Changzhou Yinhe Wood Industry Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Changzhou Yinhe Wood Industry Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

26.     Upon information and belief, Defendant King Shing Steel Enterprises Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  King Shing Steel Enterprises Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, King Shing Steel Enterprises Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina,

and Virginia.  King Shing Steel Enterprises Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, King Shing Steel Enterprises Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

27.     Upon information and belief, Defendant Nanhai Silk Imp. & Exp. Corporation is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Nanhai Silk Imp. & Exp. Corporation is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Nanhai Silk Imp. & Exp. Corporation manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Nanhai Silk Imp. & Exp. Corporation has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Nanhai Silk Imp. & Exp. Corporation manufactured and/or sold to certain suppliers in the United States.

28.     Upon information and belief, Defendant Jinan Run & Fly New Materials Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Jinan Run & Fly New Materials Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Jinan Run & Fly New Materials Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States,

13

including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Jinan Run & Fly New Materials Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Jinan Run & Fly New Materials Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

29.     Upon information and belief, Defendant Shandong Yifang Gypsum Industry Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Shandong Yifang Gypsum Industry Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Shandong Yifang Gypsum Industry Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Shandong Yifang Gypsum Industry Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Shandong Yifang Gypsum Industry Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

30.     Upon information and belief, Defendant Siic Shanghai International Trade (Group) Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Siic Shanghai International Trade (Group) Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Siic Shanghai International Trade (Group) Co.,

Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Siic Shanghai International Trade (Group) Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Siic Shanghai International Trade (Group) Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

31.     Upon information and belief, Defendant Tianjin Tianbao Century Development Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Tianjin Tianbao Century Development Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Tianjin Tianbao Century Development Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Tianjin Tianbao Century Development Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Tianjin Tianbao Century Development Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

32.     Upon information and belief, Defendant Wide Strategy Limited, is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama,

Florida, Mississippi, Texas, North Carolina, and Virginia.  Wide Strategy Limited is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Wide Strategy Limited manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Wide Strategy Limited has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Wide Strategy Limited manufactured and/or sold to certain suppliers in the United States.

33.     Upon information and belief, Defendant Shandong Oriental International Trading Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Shandong Oriental International Trading Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Shandong Oriental International Trading Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Shandong Oriental International Trading Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Shandong Oriental International Trading Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

34.     Upon information and belief, Defendant Shanghai East Best Arts & Crafts Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Shanghai East Best Arts & Crafts Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Shanghai East Best Arts & Crafts Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Shanghai East Best Arts & Crafts Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Shanghai East Best Arts & Crafts Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

35.     Upon information and belief, Defendant Qingdao Yilie International Trade Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Qingdao Yilie International Trade Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Qingdao Yilie International Trade Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Qingdao Yilie International Trade Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their

drywall is installed in numerous structures in the United States.  Upon information and belief, Qingdao Yilie International Trade Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

36.     Upon information and belief, Defendant Tai'an Kangyijia Building Materials Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Tai'an Kangyijia Building Materials Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Tai'an Kangyijia Building Materials Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Tai'an Kangyijia Building Materials Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Tai'an Kangyijia Building Materials Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

37.     Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Taishan is involved in the manufacturing and sale of gypsum drywall.  Upon information and belief, Taishan manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Taishan has

18

continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Taishan manufactured and sold to certain suppliers in the United States.

38.     Upon information and belief, defendant Taishan is owned and/or controlled by defendant Beijing New Building Materials Public Limited Co. ("BNBM"), which is a state-owned entity and respectively controlled by the Chinese government.  BNBM is traded on the Shenzhen Stock Exchange.

39.     Defendant, BNBM caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

40.     Defendant China National Building Material Co., Ltd., is a partially owned subsidiary of BNBM Group.

41.     Defendant, China National Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

42.     Upon information and belief, defendant BNBM is owned and/or controlled by defendant Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"), which is a state owned entity and respectively controlled by the Chinese government.

43.     Defendant BNBM Group caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

44.     Upon information and belief, BNBM Group is owned and/or controlled by China National Building Materials Group Co. ("CNBM Group"), which is a state owned entity and respectively controlled by the Chinese government.  CNBM Group is traded on the Hong Kong stock exchange.

45.     Defendant CNBM Group caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

46.     Defendant CNBM USA Corp. is a California corporation with a principal place of business in California.  By information and belief, CNBM USA Corp. is a subsidiary of either BNBM, China National Building Material Co., Ltd., BNBM Group or CNBM Group.

47.     By information and belief, CNBM USA Corp. acted as an agent for BNBM, China National Building Material Co., Ltd., BNBM Group and/or CNBM Group by promoting and marketing the drywall at issue in this litigation to American suppliers.  Accordingly, CNBM USA Corp. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

48.     To the extent Taishan, BNBM, China National Building Material Co., Ltd., BNBM Group and CNBM Group are deemed to be foreign sovereign entities, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.  Plaintiffs allege that the claims against Taishan, BNBM, China National Building Material Co., Ltd., BNBM Group and CNBM Group are based upon commercial activities carried on in the United States.  The claims also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

49.     Defendant Chenxiang is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Chenxiang is involved in the manufacturing and sale of gypsum drywall.  Upon

information and belief, Chenxiang manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Chenxiang has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Chenxiang manufactured and sold to certain suppliers in the United States.

50.     Defendant Sinkiang Tianshan Building Material And Gypsum Product Co., Ltd, is a foreign corporation and is a manufacturer of plasterboard.  Defendant Sinkiang Tianshan Building Material And Gypsum Product Co., Ltd. is a subsidiary of Taishan.

51.     Defendant Sinkiang Tianshan Building Material And Gypsum Product Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

52.     Defendant Taishan Gypsum Co., Ltd. Lucheng Branch is a foreign corporation that operates a manufacturing plant.  Defendant Taishan Gypsum Co., Ltd. Lucheng Branch is a subsidiary of Taishan.

53.     Defendant Taishan Gypsum Co. Ltd. Lucheng Branch caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

54.     Defendant Yunan Taishan Gypsum And Building Material Co., Ltd., is a foreign corporation and is a manufacturer and wholesaler of gypsum products.  Defendant Yunan Taishan Gypsum And Building Material Co., Ltd. has a joint-stock agreement with Defendant BNBM.

55.     Defendant Yunan Taishan Gypsum And Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

56.     Defendant Tai'an Jindun Building Material Co., Ltd., is a foreign corporation and is a manufacturer and wholesaler of gypsum products.  Defendant Tai'an Jindun Building Material Co., Ltd. has joint-stock agreement with Defendant BNBM.

57.     Defendant Tai'an Jindun Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

58.     Defendant Taishan Gypsum (Xiangtan) Co. Ltd., is a foreign corporation. Defendant Taishan Gypsum (Xiangtan) Co. Ltd. is a subsidiary of Taishan.

59.     Defendant Taishan Gypsum (Xiangtan) Co. Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

60.     Defendant Taishan Gypsum (Pingshan) Co., Ltd., is a foreign corporation and is a manufacturer of gypsum products.  Defendant Taishan Gypsum (Pingshan) Co., Ltd. is a subsidiary of Taishan.

61.     Defendant Taishan Gypsum (Pingshan) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

62.     Defendant Taishan Gypsum (Hengshui) Co., Ltd., is a foreign corporation and is a manufacturer of gypsum.  Defendant Taishan Gypsum (Hengshui) Co. Ltd., is a subsidiary of Taishan.

63.     Defendant Taishan Gypsum (Hengshui) Co,. Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

64.     Defendant Taishan Gypsum (Henan) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

65.     Defendant Taishan Gypsum (Henan) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

66.     Defendant Hubei Taishan Building Material Co., Ltd. is foreign corporation and is a manufacturer of gypsum.  Defendant Hubei Taishan Building Material Co., Ltd. is a subsidiary of Defendant BNBM.

67.     Defendant Hubei Taishan Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

68.     Defendant Taishan Gypsum (Tongling) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

69.     Defendant Taishan Gypsum (Tongling) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

70.     Defendant Weifang Aotai Gypsum Co., Ltd., is a foreign corporation and is a manufacturer and wholesaler of gypsum products.  Defendant Weifang Aotai Gypsum Co., Ltd. is a subsidiary of Taishan.

71.     Defendant Weifang Aotai Gypsum Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

72.     Defendant Taishan Gypsum (Pizhou) Co., Ltd. is a foreign corporation and is a manufacturer of gypsum.  Defendant Taishan Gypsum (Pizhou) Co. is a subsidiary of Taishan.

73.     Defendant Taishan Gypsum (Pizhou) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

74.     Defendant Fuxin Taishan Gypsum And Building Material Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

75.     Defendant Fuxin Taishan Gypsum And Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

76.     Defendant Taishan Gypsum (Wenzhou) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

77.     Defendant Taishan Gypsum (Wenzhou) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

78.     Defendant Taishan Gypsum (Chongqing) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

79.     Defendant Taishan Gypsum (Chongqing) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

80.     Defendant Taishan Gypsum (Jiangyin) Co., Ltd., is a foreign corporation and is a manufacturer of gypsum.  Defendant Taishan Gypsum (Jiangyin) Co., Ltd. is a subsidiary of Taishan.

81.     Defendant Taishan Gypsum (Jiangyin) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

82.     Defendant Qinhuangdao Taishan Building Material Co., Ltd., is a foreign corporation and is a manufacturer of gypsum.  Defendant Qinhuangdao Taishan Building Material Co., Ltd. is a subsidiary of Taishan.

83. Defendant Qinhuangdao Taishan Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

84. Defendant Tai'an Taishan Gypsum Board Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

85. Defendant Tai'an Taishan Gypsum Board Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

86. Defendant Taishan Gypsum (Baotou) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

87. Defendant Taishan Gypsum (Baotou) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

88. Defendant Shaanxi Taishan Gypsum Co., Ltd., is a foreign corporation and subsidiary of Taishan.

89. Defendant Shaanxi Taishan Gypsum Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

90. Defendant USG is a Delaware corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  USG, together with its various affiliates, including Seacoast, is the nation's largest distributor of drywall and related building products.

91. Defendant Seacoast is a Delaware corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Seacoast is a subsidiary of USG.

92.     Defendant Banner is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.  Banner is a supplier of drywall and related building products. Banner supplied the drywall at issue in this litigation in Florida and/or other affected states.

93.     Defendant La Suprema Trading is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.  La Suprema Trading is a supplier of drywall and related building products.  La Suprema Trading supplied the drywall at issue in this litigation in Florida and/or other affected states.

94.     Defendant La Suprema Enterprise is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.  La Suprema Enterprise is a supplier of drywall and related building products.  La Suprema Enterprise supplied the drywall at issue in this litigation in Florida and/or other affected states.

95.     Defendant Black Bear is a Florida corporation, having its principal place of business in Largo, Florida.  Black Bear is a supplier of drywall and related building products. Black Bear supplied the drywall at issue in this litigation in Florida and/or other affected states.

96.     Defendant Smokey Mountain Materials, Inc. is a foreign corporation, having its principal place of business in Knoxville, Tennessee.  Smokey Mountain Materials, Inc. is a supplier of drywall and related building products.  By information and belief, Smokey Mountain Materials, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

97.     Defendant Emerald Coast Building Materials is a division of Smokey Mountain Materials, Inc.  Emerald Coast Building Materials is a supplier of drywall and related building products.  By information and belief, Emerald Coast Building Materials supplied the drywall at issue in this litigation in certain of the affected states.

98.     Defendant Interior/Exterior Building Supply, LP is a Louisiana Limited partnership with a principal place of business in New Orleans, Louisiana.  Interior/Exterior Building Supply, LP is a supplier of drywall and related building products.  Interior/Exterior Building Supply, LP supplied the drywall at issue in this litigation in Louisiana and/or other affected states.

99.     Defendant Interior/Exterior Enterprises LLC, is a Louisiana Limited liability company with its principal place of business in New Orleans, Louisiana.  Interior/Exteriors Enterprises LLC is a supplier of drywall and related building products.  Interior/Exteriors Enterprises LLC supplied the drywall at issue in this litigation in Louisiana and/or other affected states.

100.    Defendant Rightway Drywall, Inc., is a Georgia corporation with its principal place of business in Mason and/or Bonaire, Georgia.  Rightway Drywall, Inc. is a supplier of drywall and related building products.  By information and belief, Rightway Drywall, Inc., supplied the drywall at issue in this litigation in certain of the affected states.

101.    Defendant IBSA is a member owned buying organization with its principal place of business in Smithfield, North Carolina, and is authorized to do and doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  IBSA is a supplier of drywall and related building products.

102.    Defendant Rothchilt is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Rothchilt exports products, including gypsum drywall, to customers in the United States.  Upon information and belief, Rothchilt sold, distributed, marketed and placed with the stream of commerce gypsum drywall with the expectation that the drywall would be purchased

27

by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Rothchilt has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and the drywall supplied by Rothchilt is installed in numerous structures in the United States.

103.    Defendant Tobin is a Virginia corporation with its principal place of business located at 5008 Gatehouse Way, Virginia Beach, Virginia, 23455.

104.    Defendant Tobin imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case.  Tobin supplied the drywall at issue in this litigation in Virginia and/or other affected states.

105.    Defendant Venture is a Virginia corporation with its principal place of business located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

106.    Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged Plaintiffs and Class Members.  Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiff and Class Members.  Venture supplied the drywall at issue in this litigation in Virginia and/or other affected states.

107.    Defendant Sunrise Building Materials Ltd., is a Canadian Corporation with its principle place of business located at Unit 7, 55 Nugget Ave., Scarborough, Toronto, ON, Canada, M15 3L1.  Sunrise Building Materials Ltd. is a supplier of drywall and related building products.  By information and belief, Sunrise Building Materials Ltd., supplied the drywall at issue in this litigation in certain of the affected states.

108.     Defendant Devon International is a Pennsylvania Corporation with a principle place of business located in King of Prussia, Pennsylvania.  Devon International is a supplier of drywall and related building products.  By information and belief, Devon International supplied the drywall at issue in this litigation in certain of the affected states.

109.     Defendant Triorient Trading, Inc., is a Connecticut Corporation with a principal place of business located in Stamford, Connecticut.  Triorient Trading, Inc. is a supplier of drywall and related building products.  By information and belief, Triorient Trading, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

110.     Defendant Great Western Building Materials is a Arizona Corporation with a principal place of business located in California.  Great Western Building Materials is a supplier of drywall and related building products.  By information and belief, Great Western Building Materials supplied the drywall at issue in this litigation in certain of the affected states.

111.     Defendant All Interior Supply, Inc., is a Florida Corporation with a principal place of business located in Hialeah, Florida.  All Interior Supply, Inc. is a supplier of drywall and related building products.  By information and belief, All Interior Supply, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

112.     Defendant A&R Hardware Supply, Inc., is a Florida Corporation with a principal place of business located in Miami, Florida.  A&R Hardware Supply, Inc. is a supplier of drywall and related building products.  By information and belief, A&R Hardware Supply, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

113.     Defendant Davis Construction Supply, LLC is a Florida Corporation with a principal place of business located in Newberry, Florida.  Davis Construction Supply, LLC is a

supplier of drywall and related building products.  By information and belief, Davis Construction Supply, LLC supplied the drywall at issue in this litigation in certain of the affected states.

114.    Defendant Elite Supply Corporation is a New York corporation with a principal place of business located in Elmhurst, New York.  Elite Supply Corporation is a supplier of drywall and related building products.  By information and belief, Elite Supply Corporation supplied the drywall at issue in this litigation in certain of the affected states.

115.    Defendant International Materials Trading, Incorporated is a Nevada corporation with a principal place of business located in Carson City, Nevada.  International Materials Trading, Incorporated is a supplier of drywall and related building products.  By information and belief, International Materials Trading, Incorporated supplied the drywall at issue in this litigation in certain of the affected states.

116.    Defendant Marathon Construction Materials Inc. is a New York corporation with a principal place of business located in New York, NY.  Marathon Construction Materials Inc. is a supplier of drywall and related building products.  By information and belief, Marathon Construction Materials Inc. supplied the drywall at issue in this litigation in certain of the affected states.

117.    Defendant Steeler, Inc. is a Washington corporation with a principal place of business located in Seattle, Wa.  Steeler, Inc. is a supplier of drywall and related building products.  By information and belief, Steeler, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

118.    Defendant Maurice Pincoffs Company, Inc. is a Texas corporation with a principal place of business located in Houston, TX.  Maurice Pincoffs Company, Inc. is a

supplier of drywall and related building products.  By information and belief, Maurice Pincoffs Company, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

119.   Defendant Metro Resources Corp. is a Nevada corporation with a principal place of business located in Carson City, Nevada.  Metro Resources Corp. is a supplier of drywall and related building products.  By information and belief, Metro Resources Corp. supplied the drywall at issue in this litigation in certain of the affected states.

120.   Defendant North Pacific Lumber Co. is a Oregon corporation with a principal place of business located in Portland, OR.  North Pacific Lumber Co. is a supplier of drywall and related building products.  By information and belief, North Pacific Lumber Co. supplied the drywall at issue in this litigation in certain of the affected states.

121.   Defendant Oriental Merchandise Company, Inc. f/k/a Oriental Trading Company, Inc. is a Louisiana corporation with a principal place of business located in Metairie, La. Oriental Merchandise Company, Inc. is a supplier of drywall and related building products.  By information and belief, Oriental Merchandise Company, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

122.   Defendant Stock Building Supply, LLC is a North Carolina limited liability corporation with a principal place of business located in Raleigh, NC.  Stock Building Supply, LLC is a supplier of drywall and related building products.  By information and belief, Stock Building Supply, LLC supplied the drywall at issue in this litigation in certain of the affected states.

123.   Defendant Stock Building Supply, Inc. is a North Carolina corporation with a principal place of business located in Raleigh, NC.  Stock Building Supply, Inc. is a supplier of

drywall and related building products.  By information and belief, Stock Building Supply, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

124.     Defendant Bedrock Building Materials, LLC is a Washington limited liability corporation with a principal place of business located in Olympia, Wa.  Bedrock Building Materials, LLC is a supplier of drywall and related building products.  By information and belief, Bedrock Building Materials, LLC supplied the drywall at issue in this litigation in certain of the affected states.

125.     Defendant The China Corporation, Ltd. is a foreign limited liability corporation that is a supplier of drywall and related building products.  By information and belief, The China Corporation, Ltd. supplied the drywall at issue in this litigation in certain of the affected states.

126.     Defendant Tov Trading Inc. is a New York corporation with a principal place of business located in Brooklyn, NY.  Tov Trading Inc. is a supplier of drywall and related building products.  By information and belief, Tov Trading Inc. supplied the drywall at issue in this litigation in certain of the affected states.

127.     Defendant Builders Gypsum Supply, L.L.P. is a Texas limited liability corporation with a principal place of business located in Houston, TX.  Builders Gypsum Supply, L.L.P. is a supplier of drywall and related building products.  By information and belief, Builders Gypsum Supply, L.L.P. supplied the drywall at issue in this litigation in certain of the affected states.

128.     Defendant Builders Gypsum Supply Co., Inc. is a Texas corporation with a principal place of business located in Houston, TX.  Builders Gypsum Supply Co., Inc. is a supplier of drywall and related building products.  By information and belief, Builders Gypsum Supply Co., Inc. supplied the drywall at issue in this litigation in certain of the affected states.

129.     Defendant J.W. Allen & Company Incorporated is a Louisiana corporation with a principal place of business located in Kenner, La.  J.W. Allen & Company Incorporated is a supplier of drywall and related building products.  By information and belief, J.W. Allen & Company Incorporated supplied the drywall at issue in this litigation in certain of the affected states.

130.     Defendant Phoenix Imports Co., Ltd. is a Georgia corporation with a principal place of business located in Roswell, Ga.  Phoenix Imports Co., Ltd. is a supplier of drywall and related building products.  By information and belief, Phoenix Imports Co., Ltd. supplied the drywall at issue in this litigation in certain of the affected states.

131.     Defendant TMO Global Logistics, LLC is a Virginia corporation with a principal place of business located in Charlottesville, VA.  TMO Global Logistics, LLC is a supplier of drywall and related building products.  By information and belief, TMO Global Logistics, LLC supplied the drywall at issue in this litigation in certain of the affected states.

132.     Defendant Quite Solutions Inc. is a Texas corporation with a principal place of business located in Allen, Tx.  Quite Solutions Inc. is a supplier of drywall and related building products.  By information and belief, Quite Solutions Inc. supplied the drywall at issue in this litigation in certain of the affected states.

133.      Defendant Mazer's Discount Home Centers, Inc. is a Delaware corporation with a principal place of business located in Wilmington, De.  Mazer's Discount Home Centers, Inc. is a supplier of drywall and related building products.  By information and belief, Mazer's Discount Home Centers, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

134.    Defendant Knauf Gypsum Indonesia is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Knauf Gypsum Indonesia is a subsidiary of Knauf GIPS.

135.    Defendant Knauf Gypsum Indonesia caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

136.    Defendant Guangdong Knauf New Building Product Co., Ltd. is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Guangdon Knauf New Building Product Co., Ltd. is a subsidiary of Knauf GIPS.

137.    Defendant Guangdong Knauf New Building Product Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

138.    Defendant Knauf Amf GmbH & Co. Kg is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Knauf Amf GmbH & Co. Kg is a subsidiary of Knauf GIPS.

139.    Defendant Knauf Amf GmbH & Co. Kg caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

140.    Defendant Knauf Do Brasil Ltd. is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Knauf Do Brasil Ltd. is a subsidiary of Knauf GIPS.

141.    Defendant Knauf Do Brasil Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

142.     Defendant Taian Taishan Plasterboard Co., Ltd. is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Taian Taishan Plasterboard Co., Ltd. is a subsidiary of Knauf GIPS.

143.     Defendant Taian Taishan Plasterboard Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

144.     Defendant Shanghai Yu Yuan Imp & Exp Co., Ltd. is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.

145.     Defendant Shanghai Yu Yuan Imp & Exp Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

146.     John Doe Defendants One (1) through Twenty (20) are corporations, partnerships, companies, or other entities involved in the marketing, design, development, manufacture, production, testing, inspecting, selling, advertising, promoting, distribution, importing, exporting, delivery, or supply of the defective drywall, whose identities are not presently known by Plaintiffs.

## FACTS GIVING RISE TO INDUSTRY WIDE ALTERNATIVE LIABILITY

147.     At all times herein mentioned, the Defendants collectively controlled 100% of the relevant market for the sale, distribution, exporting, importing, supplying, and/or marketing of the defective Chinese drywall at issue in this litigation.  The Conduct of the Defendants occurred simultaneously at all relevant times.

148.     The defective drywall at issue in this litigation presents a uniform risk of harm. That is, the drywall was defective since it emitted noxious gases that caused property damages and/or personal injuries to Plaintiffs and Class Members.

149.    Plaintiffs, and Plaintiffs alone, have engaged in a genuine and diligent effort to identify the manufacturers and other parties connected to the distribution of the defective drywall in this litigation without success due to the inherent inability to identify the manufacturer of the product that caused them harm.  This inability to identify the product manufacturer results from the Defendants' deliberate distribution of the defective Chinese drywall in a manner that makes it difficult and/or impossible for consumers to determine the source of the drywall.

150.    For instance, Defendants concealed the origin of the defective Chinese drywall by distributing it without any packaging and/or markings that can be used to track the product to a specific manufacturer, supplier, distributor, etc.  By way of example, certain manufacturers have deliberately engaged in subterfuge by marking their drywall as "made in China" without any corresponding markings identifying that defendant as the manufacturer of the drywall in question.  The Plaintiffs Steering Committee ("PSC") has identified several such unidentifiable markings that have been made of record in accordance with PTO 10.

151.    Since the drywall at issue in this litigation is a fungible product that is difficult to trace in the absence of such identifying characteristics, all Defendants are liable to Plaintiffs in ratio to their proportionate share of the relevant market.

152.    Given the uncertainty as to which Defendant has caused the Plaintiffs' harm, the burden should be upon Defendants to prove that they did not cause the harm to Plaintiffs and Class Members consistent with Restatement (Second) of Torts Section 433(B).

## FACTS REGARDING PRODUCT DEFECT

153.    Upon information and belief, Defendants' drywall contains gypsum.

154.    In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants herein), the

gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.  This action seeks damages from Defendants for their joint and several acts and/or omissions.

155.    Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

156.    Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

157.    As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall.

158.    Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed and/or sold the defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures and/or caused personal injury resulting in eye irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

159.    Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed and/or sold the defective drywall at issue in this litigation.

160.    Defendants recklessly, wantonly and/or negligently implement faulty, procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

161.    As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm and/or personal injury.

162.    As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.  These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

163.    As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and the Class Members have been exposed to toxic gases, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair of their home, of their home contracts, emergency/corrective notice, environmental testing and monitoring, and/or medical monitoring.

164.    Defendants engaged in a course of conduct, individually and/or collectively, that caused the Plaintiffs' and Class Members' exposure to the defective drywall at issue in this litigation by virtue of their interdependent conscious parallel conduct in the manufacture,

38

exporting, importing, distribution, delivery, supply, inspection, marketing, and/or sale of the defective drywall at issue in this litigation.  Defendants' parallel conduct suggests their common behavior was not the result of idiosyncratic decision making.

165.    By information and belief, certain of the foreign defendants have positioned themselves in a manner designed to avoid or evade liability for their role in causing the manufacture, exporting, importing, distribution, delivery, supply, marketing, and/or sale of the defective drywall at issue in this litigation by making it difficult for injured consumers (located in the United States) to accomplish service on them.  Such foreign defendants are seemingly attempting to avoid responsibility for their tortious conduct.

## FACTS REGARDING INVESTORS WHO AIDED AND ABETTED DEFENDANTS

166.    J.P. Morgan Chase & Co. ("J.P. Morgan"), and certain other corporations and entities (collectively the "Investing Entities"), engaged in a deliberate and/or reckless course of conduct designed to aid and abet Defendants in the manufacture, exporting, importing, distribution, delivery, supply, marketing, and/or sale of the defective drywall at issue in this litigation.

167.    By information and belief, but for these investments by the Investing Entities, Defendants would not have been able to manufacture, export, import, distribute, deliver, supply, market, and/or sell of the defective drywall at issue in this litigation.

168.    The Investing Entities were aware or should have been aware that Defendants were manufacturing, exporting, importing, distributing, delivering, supplying, marketing, and/or selling the defective drywall at issue in this litigation in a manner that would make it difficult for injured consumers (located in the United States) to accomplish service on the foreign defendants.

169.    Notwithstanding their apparent knowledge and/or negligent failure to discover the tortious scheme by the foreign defendants, the Investing Entities purposefully made investments with these foreign defendants in a manner that was designed to shield them from liability to American property owners.

170.    For instance, J.P. Morgan acquired a 12.3% interest in CNBM's tradeable shares with the understanding that this entity would profit from its exploitation of homeowners seeking to rebuild their lives after the devastation of hurricanes Rita and Katrina.  This type of investment was ideal to the Investing Entities since these investments could be very profitable while avoiding the risk of loss where the foreign defendants can avoid the service of process by American consumers and responsibility for their tortious conduct.

171.    Other entities that are known to own an interest in CNBM are Atlantis Investment Management Ltd., Schroder Investment Management Limited, Baillie Gifford & Co., Callander Alex, Menzies Robin, Plowden Charles, Telfer Andrew, Warden Alison, Whitley Sarah, and Government of Singapore Investment Corporation Pte Ltd.

172.    Entities that are known to own an interest in BNBM are China Construction Bank, Cha Genlou, Industrial and Commercial Bank of China, Aerospace Science & Technology Finance Co., Ltd., China Social Insurance Fund Portfolia 108, Bank of China, Agricultural Bank of China, Zhongrong International Trust Co., Ltd.

173.    By investing in entities such as CNBM and BNBM, the Investing Entities put themselves in a position to profit from the exploitation of American Consumers who were injured by Defendants.

174.    Accordingly, the Investing Entities engaged in a course of conduct, individually and/or collectively, that caused the Plaintiffs' and Class Members' exposure to the defective

drywall at issue in this litigation by virtue of their interdependent conscious parallel conduct in investing in foreign entities responsible for the manufacture, exporting, importing, distribution, delivery, supply, inspection, marketing, and/or sale of the defective drywall.

175.    Additional discovery will reveal the full role and responsibility of the Investing Entities for the damages incurred by Plaintiffs and Class Members and their potential as party defendants.

## FACTS REGARDING OTHER ENTIITIES THAT MAY HAVE AIDED AND ABETTED DEFENDANTS

176.    Plaintiffs' investigation has revealed several entities that are affiliated with certain foreign defendants.

177.    Tai'an Taihe Shengyuan Industry and Trade Co., Ltd., is a foreign corporation that has a joint-stock agreement with Defendant BNBM.

178.    BNBM Design & Research Institute Co., Ltd., is a foreign defendant that has a joint-stock agreement with Defendant BNBM.

179.    Shuoguang Tejing Technology Development Co., Ltd., is a foreign defendant that has a joint-stock agreement with Defendant BNBM.

180.    Tancheng Xinxing New Decoration Material Co., Ltd., is a foreign corporation operating in the paper products industry.  Defendant Tancheng Xinxing New Decoration Material Co., Ltd. has a joint-stock agreement with Defendant BNBM.

181.    BNBM Technology Development Co., Ltd., is a foreign corporation that has a joint-stock agreement with Defendant BNBM.

182.    Xuzhou Falashite Building Material Co., Ltd, is a foreign corporation and is a subsidiary of Defendant BNBM.

183.     Tai'an Donglian Investment and Trade Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

184.     BNBM Zhaoqing Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

185.     BNBM Suzhou Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

186.     Beijing New Material Incubator Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

187.     BNBM Taicang Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

188.     BNBM Chengdu Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

189.     BNBM Hubei Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

190.     Hubei Taishan Building Material Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

191.     BNBM Ningbo Co., Ltd., is a foreign corporation and is a  subsidiary of Defendant BNBM.

192.     BNBM Building Plastic Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

193.     BNBM Suzhou Mineral Fiber Ceiling Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

194.    BNBM Home Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

195.    BNBM Guang'an Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

196.    BNBM Beijing Chenlong Decoration Engineering Co., Ltd. (aka BNBM Chenlong Decoration Co. Ltd.), is a foreign corporation and is a subsidiary of Defendant BNBM.

197.    China National Building Material Investment Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

198.    BNBM Commercial Trading Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

199.    Beijing New Building Material (Group) Co., Ltd., Xiamen Sales Center is a foreign corporation that is owned and/or controlled by CNBM Group.

200.    Beijing New Building Material (Group) Co., Ltd., Zhengzhou Branch is a foreign corporation that is owned and/or controlled by CNBM Group.

201.    Baoding Zhugen New Material Company is a foreign corporation that is owned and/or controlled by CNBM Group.

202.    Beijing CNBM  International Corporation, is a foreign corporation that is owned and/or controlled by CNBM Group.

203.    Beijing New Building Material (Group) Co., Ltd., Shijiazhuang Branch is a foreign corporation that is owned and/or controlled by CNBM Group.

204.    China National Building Material And Equipment Import & Export Corporation (aka CNBM Equipment, China National Building Material Import and Export Company, China National Building Material Import and Export Company, CNBM Trading, CNBM International,

CNBM International Corp., and China New Building Material[s] & Equipment[s] Import & Export Corp.).

205.    By information and belief, China Building Materials Academy is a foreign corporation that is owned and/or controlled by CNBM Group.

206.    By information and belief, CNBM International Engineering Co. Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

207.    Zhujiang Building Material Industrial Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

208.    CNBM Hangzhou Design & Research Institute is a foreign corporation that is owned and/or controlled by CNBM Group.

209.    BNBM Beijing Zhugen Sales Center (aka BNBM Zhugen Sales Center) is a foreign corporation that is owned and/or controlled by CNBM Group.

210.    BNBM International Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

211.    Beijing New Building Material (Group) Co., Ltd., Jinan Branch is a foreign corporation that is owned and/or controlled by CNBM Group.

212.    BNBM Tianjin Century Sales Corporation is a foreign corporation that is owned and/or controlled by CNBM Group.

213.    Neo-China Group Engineering Consultancy Corporation is a foreign corporation that is owned and/or controlled by CNBM Group.

214.    BNBM Plastic Pipe Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

215.    By information and belief, China Triumph International Engineering Co. Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

216.    By information and belief, CTIEC Shenzhen Scieno-Tech Engineering Materials Co. Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

217.    By information and belief, CNBM Technology Co. Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

218.    By information and belief, Beijing New Building Material (Group) Co., Ltd. North China Branch is a foreign corporation that is owned and/or controlled by CNBM Group.

219.    By information and belief, Tian'an Jindun Building Material Co., Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

220.    By information and belief, Taishan Paper Gypsum Co., Ltd. Tia'an is a foreign corporation that is owned and/or controlled by CNBM Group.

221.    By information and belief, Taishan Gypsum Co. Ltd. Jiangxi is a foreign corporation that is owned and/or controlled by CNBM Group.

222.    By information and belief, Shanghai Hengsheng New Building Material Development Company Limited is a foreign corporation that is owned and/or controlled by CNBM Group.

223.    By information and belief, Xian Wall Materials Research & Design Institute is a foreign corporation that is owned and/or controlled by CNBM Group.

224.    By information and belief, United Suntech Craft, Harvest Supreme International Ltd., and Rich Well (Far East) Ltd., and Beijing Building Materials Import and Export Co., Ltd., are other potential parties who may have aided and abetted the Defendants in this action.

225.    Additional discovery will reveal the full role and responsibility of the above entities for the damages incurred by Plaintiffs and Class Members and their potential as party defendants.

## CLASS ACTION ALLEGATIONS

226.    Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class comprised of:

> All owners and landlords of real properties located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Defendants.

227.    The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

228.    For purposes of this Complaint, as to each affected property owned by a class member, the law of the State where the property is located should apply to the claims of such class members.  To the extent the Court determines Plaintiffs are improper class representatives for class members who own property outside the State of Louisiana, stand-alone classes, with class representatives to be identified at a later date, should be used to represent the interests of class members who own property outside of Louisiana.

229.    Upon information and belief, the Defendants' defective and unfit drywall was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs or Class Members.  Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

46

230.    There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.  Among these common questions of law and fact are the following:

a.    whether Defendants' drywall products that release sulfide and other noxious gases are defective and/or unfit for their intended purpose;

b.    whether Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall products;

c.    whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct;

d.    whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct; and

e.    whether Plaintiffs and Class Members are entitled to proceed against Defendants under a market share alternative theory of liability.

231.    The legal claims of Plaintiffs are typical of the legal claims of other Class Members.  Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

232.    The Plaintiffs and each member of the Class have defective and unfit drywall in their homes, residences, or other structures.  Due to the drywall in Plaintiffs' and Class Members' homes, residences, or other structures, Plaintiffs and Class Members suffered damages and the need for injunctive and equitable relief, as set forth herein.

47

233.    Plaintiffs are adequate representatives of the Class and, together with their legal counsel, will fairly and adequately protect the interests of the Class.  Plaintiffs have no conflict with the Class and are committed to the vigorous prosecution of this action.

234.    The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products.  Counsel will fairly and adequately protect the interests of the class.

235.    The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

236.    The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

237.    A class action is superior to other methods of dispute resolution in this case.  The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.  It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class members would protect their rights on their own without this class action case.  Management of

the class will be efficient and far superior to the management of individual lawsuits.

Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

238.    The issues common to the class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

239.    Defendants have by their conduct concealed their tortious conduct and their identities and as such the statute of limitations and prescription should not run on the claims of Plaintiffs and Class Members.

### COUNT I
### NEGLIGENCE
### (Against All Defendants)

240.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

241.    Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall, including a duty to adequately warn of their failure to do the same.

242.    Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

243.    Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

244.    Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of

reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

245.    Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

246.    Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

247.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

**COUNT II**
**NEGLIGENCE PER SE**
**(Against All Defendants)**

248.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

249.    Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

250.    Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing,

e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

251.    Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

252.    Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

253.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

<u>**COUNT III**</u>
**BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES**
**(All Defendants)**

254.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

255.    Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

256.    At the times Defendants utilized, supplied, inspected, and/or sold this drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class

Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

257.    Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

258.    The drywall was defective and not merchantable because it was unfit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in structures owned by Plaintiffs and Class Members for use as a building material, because it contained defects as set forth herein.

259.    The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the defects set forth herein.

260.    Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

261.    As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT IV
## PRIVATE NUISANCE
### (Against All Defendants)

262.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

263.    The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has

unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

264.    Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

265.    Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

266.    The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

267.    Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

268.    As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT V
## NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE
### (All Defendants)

269.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

270.    Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

271.    Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, Defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the homes or other structures owned by Plaintiffs and class members.

272.    By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiffs and class members.

273.    Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the corrosive and dangerous propensities of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

274.    Plaintiffs and class members have suffered injuries by virtue of their exposure to the defective drywall at issue in this litigation.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

275.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.  The injuries sustained by Plaintiffs and Class Members are within the foreseeable zone of risk created by Defendants.

## COUNT VI
## UNJUST ENRICHMENT
### (All Defendants)

276.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

277.    Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

278.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

279.   Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT VII
### VIOLATION OF CONSUMER PROTECTION ACTS
#### (All Defendants)

280.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

281.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present.  *See* L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act).

282.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the aforementioned provisions of the Consumer Protection Acts of the Relevant States.

283.   Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

284.    As a direct and proximate cause of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT VIII
## EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING
### (All Defendants)

285.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

286.    Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

287.    Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

288.    Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes or other structures, or in the alternative, remedy, repair and/or replace the drywall in such structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program.

289.    Until Defendants' defective drywall has been removed, Defendants should provide continued environmental and air monitoring in the structures owned by Plaintiffs and Class Members.

290.    Plaintiffs and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result.

291.    The sulfides and other noxious gases which have been released from Defendants drywall and to which Plaintiffs and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

292.    Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

293.    Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

294.    The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the defective and unfit drywall.

295.    As a proximate result of their exposure to sulfide and other noxious gases from Defendants' defective and unfit drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

296.    Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

297.    The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.    an order certifying the case as a class action;

b.    an order appointing Plaintiffs as the Class Representatives of the Class;

c.    an order appointing undersigned counsel and their firms as counsel for the Class;

d.    compensatory and statutory damages;

e.    punitive damages as allowed by law;

f.    pre and post-judgment interest as allowed by law;

g.    injunctive relief;

h.    an award of attorneys' fees as allowed by law;

i.    an award of taxable costs; and

j.    any and all such further relief as this Court deems just and proper.

Respectfully submitted,


Dated: October 19, 2009                         /s/ Russ M. Herman
                                                Russ M. Herman, Esquire
                                                Leonard A. Davis, Esquire
                                                HERMAN, HERMAN, KATZ & COTLAR, LLP
                                                820 O'Keefe Avenue
                                                New Orleans, Louisiana 70113
                                                Phone: (504) 581-4892

Fax: (504) 561-6024
*Plaintiffs' Liaison Counsel*
*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Bruce William Steckler

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

James Robert Reeves

Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seith Parker
Parker, Waichman, Alonso LLP
27399 Riverview Center Blvd.
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

## INDIVIDUAL PLAINTIFFS' COUNSEL

Russ M. Herman
Leonard A. Davis
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024

**SPECIAL COUNSEL TO PLAINTIFFS'
STEERING COMMITTEE**

Harry T. Lemmon
Attorney at Law
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Phone: (504) 581-5644
Fax: (504) 581-2156
htlemmon@bellsouth.net

Edward F. Sherman
Tulane Law School
6329 Freret Street
New Orleans, LA 70118-5670
Phone: (504) 865-5979
esherman@tulane.edu

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of October, 2009.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com