UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: | 2047 |
| | SECTION: | L |
| THIS DOCUMENT RELATES TO: | JUDGE: | FALLON |
| **04-4112 through 09-4120** **09-4294 through 09-4322** **All other consolidated and tag-along actions alleging construction defects in the State of Florida** _____/ | MAG. JUDGE: | WILKINSON |

**RESPONSE IN OPPOSITION OF PLAINTIFFS' STEERING COMMITTEE TO MEMORANDUM OF HOMEBUILDERS' STEERING COMMITTEE IN SUPPORT OF <u>MOTION TO ABATE PURSUANT TO FLORIDA CHAPTER 558</u>**

**INTRODUCTION**

The undersigned Plaintiffs' Steering Committee ("PSC") submits the following Response in Opposition to the Motion and Supporting Memorandum of Law submitted by the Homebuilders' Steering Committee ("HSC") seeking to abate ceratin actions arising out of the State of Florida pursuant to Florida Chapter 558 (together, the "Motion to Abate'), and respond as follows:

The Motion to Abate should be denied. The Motion to Abate adds very little to the brief overview of Chapter 558 already provided in the Defendants' Bench Memorandum on Chapter 558 and offers even less in reply to the PSC's Response in opposition thereto (the "PSC Response"). In the PSC's Response, which the PSC incorporates by reference and which is attached hereto as *Composite Exhibit A*,[1] the PSC explained that Chapter 558 is not a device to be exploited for delay – as the HSC attempts to do here – but provides for a speedy alternative dispute resolution process

---

[1] On August 7, 2009, Certain Defendants submitted a Bench Memorandum regarding the potential applicability of Florida Chapter 558, § 558.001 *et seq.*, to cases arising out of Florida. On September 22, 2009, the PCS submitted its Response.

with the goal of the defendant making an offer of settlement that is acceptable to and accepted by the plaintiffs within forty-five days of receiving notice. If no offer is made within that time period, or if the offer is unacceptable to the plaintiff (in the exercise of the plaintiff's absolute discretion), the plaintiff may file or continue with her suit. In the PSC response, the PSC also explained that the Florida Plaintiffs' claims, which are grounded in well-established Florida products liability jurisprudence that is "parallel" to and "separate" from the warranty-related issues Chapter 558 seeks to protect, are not governed by Chapter 558. In the PSC Response, the PSC also explained that the text of Chapter 558 expressly excludes the products liability claims brought by the Florida Plaintiffs because they include personal injury/medical monitoring claims. Finally, the PSC argued that the Defendants' inaction in regards to making acceptable settlement offers to the Florida Plaintiffs since these cases were transferred to this Court in June 2009, and the Defendants' refusal to voluntarily produce all discoverable information relating to the defective drywall at the center of the Florida Plaintiffs' claims, as required by Chapter 558, must lead to the conclusion that the Defendants have waived any entitlement to rely on Chapter 558. The PSC will not repeat all of those arguments and supporting authorities here requesting instead that the Court read our prior bench memorandum, prior to considering the supplementary arguments made herein, which build on our prior memo.

The HSC seeks abatement of these actions on the basis of Chapter 558, Florida Statutes. However, the HSC's inaction since receiving 558 notices from many of the Florida Plaintiffs, and the HSC's total failure to make acceptable settlement offers to any of the Florida Plaintiffs during the passage of more time than any abatement period that would be permissible under Chapter 558 (*i.e.*, 45 days), despite having particular knowledge of the identity of the Florida Plaintiffs and the bases of the Florida Plaintiffs' claims, renders the HSC's request for abatement under Florida Chapter 558 both hollow and moot. The Motion to Abate should also be denied because the Florida

Plaintiffs' claims are grounded in clearly-established Florida products liability jurisprudence that is "parallel" to and "independent" from the separate and distinct warranty-related interests served by Chapter 558. The HSC has not cited to one case or other authority contradicting this basis of the Florida Plaintiffs' claims. Chapter 558 also does not apply to the claims of the Florida Plaintiffs because they include personal injury/medical monitoring claims that are specifically excluded from Chapter 558. For these reasons, as set forth more fully below, the Motion to Abate should be denied.

## BACKGROUND

More than four (4) month have passed since June 15, 2009, when this Court initially received the transfer of Chinese-manufactured drywall products liability cases from the State of Florida (the "Florida Cases"). During practically the same period of time, the HSC has enjoyed all the benefits of *de facto* abatement of all claims -- whether from Florida or elsewhere -- during the Court-imposed stay of their obligations under the Federal Rules of Civil Procedure to respond to complaints, motions, and discovery.[2]

The HSC acknowledges they have been on notice of the Florida Plaintiffs' claims relating to the presence of toxic and corrosive Chinese-manufactured drywall in their homes and the potential applicability of Chapter 558. In particular, the HSC concedes "***[m]any of the plaintiffs in the actions to which the Motion [to Abate] relates have served notices that include the information required by Chapter 558***," Motion to Abate at 5 (emphasis added), and the HSC even attaches exemplars of three such notices dating from ***March 10, 2009***, ***April 30, 2009*** and ***May 1, 2009***. *See* Motion to Abate, *Composite Exhibit G*. The HSC also has clearly been aware of

---

[2]   *See* DE 2 (Pretrial Order No. 1 at 5 (imposing stay)); DE 216 (modifying stay).

3

obligations imposed on them by Chapter 558 because many of the HSC Defendants had moved for abatement under Chapter 558 even before the June 15, 2009 Transfer Order by the Judicial on Multidistrict Litigation, as the PSC has already pointed out in the PSC Response in Chapter 558. *See* PSC Response at 5 & n.3, attached as Exhibit "A".

In addition to having had the benefit of actual Chapter 558 notices from many plaintiffs, and being fully aware ***of the ultimate purpose of Chapter 558 that bona fide settlement offers be made within forty-five days after receipt of notice***, the HSC also has had the benefit of over forty five-days to review detailed Plaintiff Profile Forms providing even more extensive detail about the nature of the claims arising out of the presence of defective Chinese-manufactured drywall in Plaintiffs' homes. The HSC acknowledges having carefully reviewed these forms. *See* Motion to Abate at 3 (discussing HSC review of Plaintiff Profile Forms).

Given the wealth of information that has been presented to this Court, to the predecessor transferor courts, and exchanged between the parties regarding the nature of the Chinese-manufactured drywall problem, the location of the homes that are affected, the identification of the home occupants and owners, the allegations of damage to the homes, fixtures and personal property contained therein, and the nature of the health complications that have resulted, the HSC cannot credibly argue to this Court -- but nonetheless attempts to do so – that they have not received notice of the nature of the Florida Plaintiffs' Chinese-manufactured drywall related claims.

Despite having received such notice, despite the passage of many more months than would have been provided during any period of abatement, and despite enjoying the benefits of an extended de facto three-month period of abatement by way of the Court-ordered stay, ***none*** of the HSC Defendants have extended any bona fide offers of settlement that are acceptable to and have been accepted by the Plaintiffs, as required by Chapter 558.

4

On the contrary, rather than taking full advantage of the fortuitous convergence of time and their receipt of detailed information on all the Florida Plaintiffs in the form of 558 letters, complaints and Profile Forms, and rather than taking full advantage of their complete liberation from litigation obligations under the Federal Rules of Civil Procedures as a result of the Court-ordered stay and focusing on making bona fide settlement offers to the Florida Plaintiffs, the HSC has chosen to expend its time and resources in pursuit of abatement beyond any the period they have already enjoyed – ***and squandered***.  Because so much time has already passed without earnest effort or fruitful results, the HSC should not be allowed to further delay justice for the Florida Plaintiffs.

For these reasons, as set forth more fully below, the Motion to Abate should be denied.

**ARGUMENT AND CITATION OF AUTHORITIES**

**I.    THE PURPOSE OF CHAPTER 558 IS TO SPUR EARLY BONA FIDE SETTLEMENT OFFERS**

As extensively set forth in the PSC Response on Chapter 558, the purpose of Chapter 558 is to "protect property owners."  *See* § 558.001, Fla. Stat.  To this end, the Chapter requires, after receiving notice of a claim of a construction defect, that the "contractor, subcontractor, supplier, or design professional" (collectively referred to herein for ease of discussion as "contractor") make a settlement offer that is acceptable to and accepted by the claimant within forty-five days.  *See* § 558.004(5)-(7), Fla. Stat.  The claimant is free to accept or reject any offer and may file or continue with her suit.  *See* § 558.005(6), Fla. Stat.  The HSC has not complied with this obligation since these matters have been consolidated before this Court.  The statute also requires Defendants to turn over "all available discoverable evidence relating to the construction defects, including, but not limited to, expert reports, photographs, information received pursuant to subsection (4), and videotapes, if any."  *See* § 558.004(15) Fla. Stat.  The HSC also has not complied with its obligation

5

to turn over all discoverable information relating to the alleged defect, as required by section 558.004(15), Florida Statutes.

Clearly, because the HSC purposefully has not taken advantage of these alternative dispute resolution opportunities offered by the passage of more time allowed by Chapter 558 and because the HSC has ignored its production obligations to the Florida Plaintiffs, despite their receipt of notice of Plaintiffs' claims, the HSC is not entitled to any opportunity to further delay these proceedings.[3]

## II. THE PERIOD OF TIME FOR ANY ABATEMENT HAS ALREADY EXPIRED AND, THEREFORE, THE HSC'S REQUEST FOR ABATEMENT IS MOOT

The HSC concedes that "[*m*]*any of the plaintiffs in the actions to which the Motion [to Abate] relates have served notices that include the information required by Chapter 558*." Motion to Abate at 5 (emphasis added). The HSC even attaches exemplars of such notices dating from as long as **seven month ago**, since **March 10, 2009**. *See* Motion to Abate, *Composite Exhibit G*. The HSC therefore concedes that they have indeed been on notice of the presence of Chinese-manufactured drywall in the Florida Plaintiffs' homes and have had sufficient notice regarding the bases of Plaintiffs' claims. The HSC only complains that *some* compliance with the Chapter by some Plaintiffs was "premature," *i.e.*, the HSC complains that compliance was done at the time of

---

[3] Moreover, the Defendants (including the HSC Defendants) waited almost two months after the initial transfer of these actions to this Court by the MDL Panel before raising the issue of Chapter 558. Even then, none of the Defendants brought to the Court's attention any Chapter 558 motions that may have been pending in the transferor courts at the time of transfer, nor did any Defendants renew any such pending motions. Rather, they only recently filed a Bench Memorandum regarding this issue and waited almost **four months** after the transfer to actually move for abatement. This delay in bringing this issue to the Court's attention by motion and the passage of more time than would be permitted under any period of abatement also supports denial of the Motion to Abate, as argued in Section II.

filing of the complaint of after suit was filed. *See* Motion to Abate 5.[4]  Under Florida law, the passage of time beyond the permissible period of abatement renders this request moot.

The HSC glosses over the fact that Chapter 558 contemplates that an action may be filed before the expiration of the abatement period. Specifically, Chapter 558 provides that "if a claimant files an action . . . without first complying" with the waiting period required by the chapter, the

---

[4]  The HSC also appears to argue that Chapter 558 imposes extraordinary obligations on putative class actions filed pursuant to Federal Rule of Civil Procedure 23. *See* Motion to Abate at 5 ("Further troubling is that, in the cases purporting to be class actions, the information required to be included in the Chapter 558 notice is provide for the named plaintiff(s), but not for the putative class members."). This passing suggestions is not supported by any authority, has no basis in Chapter 558 and is mistaken for two reasons.

First, to the extent the HSC asserts that there are heightened pleading requirements for class actions when Chapter 558 may be implicated, this argument is contrary to Rule 8 (providing for notice pleading) and Rule 23 (establishing pleading requirements for class actions) of the Federal Rules of Civil Procedure. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997). In *Mace*, the Seventh Circuit considered a similar pre-suit notice requirement of Wisconsin's consumer protection statute. *Id.* Like the defendants here, the *Mace* defendants argued that the plaintiffs' failure to comply with the notice requirement precluded class certification and required dismissal. Relying on *Hanna v. Plumer*, 380 U.S. 460, 467-68 (1965), which held that the Federal Rules of Civil Procedure must be applied when it conflicts with a state rule, the Seventh Circuit rejected the defendants' argument in *Mace*. *See* 109 F.3d at 346. The court held that the notice provision, like Chapter 558's requirement, "does not grant or deny a substantive right . . . . Rather, it affects the period within which that right can be exercised." *Id.* Since Fed. R. Civ. P. 23 does not contain a similar pre-suit notice requirement, the state rule conflicted with the federal rule, and then required application of the federal rule. Accordingly, Chapter 558's notice requirements should not be applied to any of the consolidated cases involving class claims.

Second, the HSC's attempt to impose Chapter 558 notice obligations on all putative class members also runs afoul of well-settled case law rejecting similar attempts to impose notice or discovery obligations on absent class members. In *Wilson v. Valley Electric Membership Corp.*, 141 B.R. 309, 314-15 (E.D.La.1992), for instance, the court explained that the obligation of a class representative to complete a class proof of claim cannot extend beyond the representative to answer for all possible class members. *See also On the House Syndication, Inc. v. Federal Express Corp.*, 203 F.R.D. 452, 455 (S.D.Cal.2001)("[D]iscovery of absent class members is ordinarily not permitted in class actions."); *In re Worlds of Wonder Securities Litigation*, No. C-87-5491 SC (FSL), 1992 WL 330411, at *2 (N.D.Cal. Jul. 9, 1992) ("Absent a strong showing of necessity, discovery [of absent class members] generally will be denied."). *See generally Manual for Complex Litigation* (Fourth) § 21.41 (2004)("One of the principal advantages of class actions over massive joinder or consolidation would be lost if all class members were routinely subjected to discovery.").

"court shall abate the action . . . until the claimant has complied with such requirements," i.e, the until the waiting period has expired. *See* § 558.003, Fla. Stat. State and federal courts in Florida that have addressed the issue of alleged premature lawsuits in the context of other stronger mandatory pre-suit notice statutes in Florida have uniformly held that the passage of the allotted period of time cures any alleged prematurity and, if such period of time has already elapsed by the time the court rules on the issue, the only action the court can do is deny the request for abatement as moot.

The issue raised in the Motion to Abate arose in *Angrand v. Fox*, 552 So.2d 1113 (Fla. 3d DCA 1989). In *Angrand*, the plaintiff prematurely filed suit before the expiration of the ninety-day inspection period required by the applicable pre-suit statute. *See Angrand*, 552 So.2d 1113 (Fla. 3d DCA 1989). The lower court dismissed the premature suit and the Florida Third District Court of Appeals reversed. The Third District Court of Appeals held that *dismissal* of the action on the grounds of prematurity was inappropriate. *See Angrand*, 552 So.2d 1113 (Fla. 3d DCA 1989). It explained that **"[m]ere prematurity . . . is by definition curable simply by the passage of time"** *See id*. (emphasis added). Accordingly, because prematurity was curable by the passage of time, the appropriate remedy, Third District Court of Appeals held, was abatement. *See id*. However, the court noted that by the time that the Judge had ruled on the motion to dismiss, any abatement period that would have been required by the applicable mandatory pre-suit notice statute, had long expired. *See id*. Given these facts, the Third District Court of Appeals found that the issue was moot and that the court "could therefore do nothing at that stage but to deny the motion." *Id*. at 1116.

The same conclusion was reached by the Florida First District Court of Appeals in *Thomas v. Suwannee County*, 734 So.2d 492, 497-98 (Fla. 1st DCA 1999). In that case, the plaintiffs filed an action objecting to county zoning action without waiting for a thirty-day pre-suit period to expire.

*See Thomas*, 734 So.2d 492, 495.  The trial court dismissed the complaint on grounds that it was premature.  *See id*.  The First District Court of Appeal reversed the dismissal explaining that the remedy for prematurity is abatement.  *See id.* at 497; *see also id*. at 497-98 (citing examples where premature filing is cured by time). However, as in *Agrand*, "by the time the motions to dismiss were made, the period of statutory prematurity had ended." *Id.* at 498.  Therefore, the First District Court of Appeal found that there was no other remedy, the trial court's dismissal was reversed and the action was reinstated without further condition. *See id.*

A similar conclusion was reached by the Florida Second District Court of Appeal in *Williams v. Henderson*, 687 So.2d 838, 839-40 (Fla. 2d DCA 1996).  In *Williams*, the plaintiff filed suit against the Hillsborough County Sheriff for false arrest and imprisonment. The trial court dismissed the plaintiff's claims on summary judgment on the ground that the plaintiff had failed to wait out the six-month waiting period before filing suit against the state or one of its subdivisions.  *See Williams*, 687 So.2d 838, 839.  The Second District Court of Appeals found that failure to wait the pre-suit waiting period after giving notice did not warrant dismissal of the action. *See id.*  Moreover, the court found that because notice was duly given and "more than six months [had] elapsed before the district court finally disposed of the issue. . . . .the purpose underlying [pre-suit notice statute]. . .was adequately served." *Id*. at 839-40.  The Second District therefore reversed the dismissal and reinstated the action without requiring any additional period of abatement.  *See id*.

The very same issue was considered and handled the same way by the United States Court of Appeals in *Fitzgerald v. McDaniel*, 833 F.2d 1516, 1519-21 (11th Cir. 1987).  In *Fitzgerald*, the plaintiff sued the Jackson County, Florida Sheriff for the use of excessive force in the course of his arrest.  The defendant argued that the plaintiff prematurely filed his action before giving the notice required by Florida Statute Section 768.28(6) and before waiting the six-month statutory pre-suit

9

waiting period. *See Fitzgerald*, 833 F.2d 1516, 1519-21. The Eleventh Circuit agreed with the Florida district court's conclusion that since the six month statutory waiting period provided by Florida law had long passed by the time it ruled on the issue, it was moot. See *See id.* at 1519. Because the sheriff had been notified, had time to respond but never took any action, and the statutory period of time had passed by the time the court ruled on the issue, the Eleventh Circuit ratified the district court's holding that, essentially, the defendants had waived any entitlement to additional delay. *See id*. *See also Hattaway v. McMillian*, 903 F.2d 1440, 1448 n.12 (11th Cir. 1990) (emphasizing, under Florida statutory pre-suit notice requirement for actions against the State of Florida, that the defendant had not claimed that he did not receive notice, that the record reflected that notice was given one day prior to the filing of the lawsuit and noting that the court determined that the passage of waiting period essentially "cured" the plaintiff's failure to wait the required six months before bringing the suit); *Rumler v. Department of Corrections, Florida*, 546 F.Supp.2d 1334, 1346 (M.D. Fla. 2008) (finding that when notice period provided by Florida Statute had elapsed by the time the court ruled on issue and thus any prematurity was cured and issue was moot).

When one compares the weighty issues involved in *Williams* and *Henderson*, in which the courts addressed the limited waiver of the sovereign immunity of the State of Florida occasioned by the mandatory pre-suit notice,[5] compared to the considerably less important warranty-related issues Chapter 558 seeks to address, the results in *Williams* and *Henderson* add more support to the

---

[5] By contrast, the giving of notice under Chapter 558 is not a statutory condition precedent to suit and, therefore, cannot serve as a basis for dismissal; rather, the statute also contemplates notice being provided after a suit has already been filed, and therefore only provides for abatement for a period of 45 days and an opportunity for a defendant to pursue settlement with the plaintiff. Chapter 558 provides that if an offer is not made within that time period, or if one is made and rejected by the plaintiff (in the exercise of the plaintiff's absolute discretion), the plaintiff may continue with her suit.

10

conclusion that the passage here of much more time than called for under any abatement pursuant to Chapter 558 has cured any deficiency alleged by the HSC.

The result called for in *Angrand*, *Thomas*, *Williams* and *Fitzgerald* is therefore warranted here. Any statutory abatement period of 45 days has passed -- or will have passed -- during the five months between the time this Court received transfer of these actions on June 15, 2009 and the earliest time this Court may rule on this issue, on November 19, 2009.

Because this issue is moot and the HSC has failed - in any event – to capitalize on the ample time afforded by this Court's stay order to make acceptable settlement offers to the Florida Plaintiffs, the Motion to Abate should be dismissed.[6]

## II.   THE HSC CONCEDES THAT CHAPTER 558 DOES NOT APPLY TO PRODUCTS LIABILITY CASES LIKE THESE INVOLVING PERSONAL INJURY/MEDICAL MONITORING

The HSC concedes that, as argued in the PSC's Response, the clear language of Chapter 558 provides that it does not apply to claims involving personal injuries. *See* Motion to Abate at 2-3; PSC Response, Section III, (citing §§ 558.002(1), Fla. Stat. (defining "actions" subject to Chapter 558 and providing that this definition "does not include any . . . civil action . . . asserting a claim for alleged personal injuries arising out of an alleged construction defect.")). By virtue of this concession, Chapter 558 cannot apply to the Florida Cases which assert personal injury/medical monitoring claims.

---

[6]  As emphasized in the PSC's prior Bench memorandum, this same argument was accepted as a pending Florida state court action involving defective Chinese drywall, *Harrell v. South Kendall Construction Corp.*, No 09-08401CA42 (Fla. 11th Jud. Cir. 2009), where the trial court denied Banner's identical Motion to Abate on the grounds that Banner "didn't do what [it] could have done when [it] had the opportunity" to settle Plaintiffs' claims while the case was delayed in its early non-substantial organization stage. *See* PSC Response at p. 23 and Exhibit "F", attaching the *Harrell* order and hearing transcript.

The HSC appears also to takes issue with the grounding of the Florida Plaintiffs' claims in clearly-established Florida Supreme Court products liability jurisprudence, *see* PSC Response, Section II (citing, *inter ali*a, *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 84 (Fla. 1976)), and the HSC disputes that this basis of the Florida Plaintiffs' claims distinguishes the Florida Plaintiffs' claims from the warranty-related issues Chapter 558 was designed to address. *See* Motion to Abate at 2-4. However, the HSC offers no authority that contradicts the Florida language in the Florida Supreme Court's seminal products liability case explaining that "products liability deals with recourse for personal injury or property damage resulting from use of a product" that is "parallel" and "independent" from warranty theory, which is based largely on contract principles and which is found in Chapter 558. *See West*, 336 So.2d at 84. Nor has the HSC offered any authority to support its argument that Chapter 558 was intended to supplant this "parallel" and "independent" products liability jurisprudence in the construction context. *See id*.

In response to the well-established Florida Supreme Court authority in which the Florida Plaintiffs claims are grounded, the HSC re-directs the Court to the language of Chapter 558 which states that it applies where a "construction defect" is alleged. *See id*. This reference is made without citing or referring to any authority that contradicts *West*.

Based also on the fact that the Florida Plaintiffs have asserted claims of medical monitoring, the HSC attempts to mischaracterize the Florida Plaintiffs' claims as claims not involving personal injury. *See* Motion to Abate at 2-4. Like its other arguments, this argument must fail, however, because it is contrary to this Court's conclusion that "***personal injuries include claims for*** mental anguish and ***medical monitoring***." *See* Plaintiff Profile Forms (footnoted asterisk qualifying question "Are you claiming personal injuries?") (emphasis added); Pretrial Order No. 11 DE 168

(adopting Plaintiff Profile Forms and ordering that they be completed).[7]

Thus, in addition to the fact that any period of abatement under Chapter 558 has passed during the pendency of these actions in this Court (without any settlement offers having been by the HSC), the fact that the Florida Plaintiffs' claims include products liability claims alleging personal injury/medical monitoring implicating important public policy concerns in the State of Florida and specifically excluded from Chapter 558, warrants denial of the Motion to Abate.

### III. THE HSC HAS FAILED TO MEET IS THRESHOLD EVIDENTIARY BURDEN OF DEMONSTRATING THAT THE APPLICABLE CONTRACT TRIGGERS THE APPLICABILITY OF CHAPTER 558

The PSC remains confident that the Court's consideration of the passage of time, the HSC's squander of all opportunities to make meaningful settlement offers despite having receive sufficient notice of the Florida Plaintiffs' Claims, and the inapplicability of Chapter 558 to the Florida Plaintiffs' products liability and personal injury/medical monitoring claims, provide firm grounds for the Court's to deny the Motion to Abate.

Should the Court be unconvinced that these global reasons support the Court's denial of the Motions to Abate, the PSC reminds the Court of the threshold evidentiary burden that the HSC is still obligated to meet in order to call upon the provisions of Chapter 558 in the first place. As extensively argued in Section IV of the PSC Response, *id.* at 18-21, and as set forth in detail in

---

[7]  The Court will recall that the party Profile forms were extensively vetted by all parties, including Defendants comprising the HSC, before they were formally adopted by the Court. The HSC also makes reference to the *Vickers* Plaintiffs Profile form in support of its argument that the Vickers Plaintiffs are not asserting a medical monitoring claim. *See* Motion to Abate at 3. An examination of the *Vickers* Amended Complaint clearly demonstrate that they assert a claim for medical monitoring. *See* First Amended Complaint at ¶¶ 269-281 (Count XIV) (S.D. Fla. Case No. 09-20510, DE 7) Similarly, the *Galvin* Plaintiffs, also referred to by the HSC, *see* Motion to Abate at 3, assert a claim for medical monitoring. *See* Complaint at ¶¶ 199-211 (Count XII) (S.D. Fla. Case No. 09-20847, DE 1).

*Exhibit H* to the PSC Response, at 2-9 (Plaintiffs' Response to Banner Supply Co.'s Petition for Certiorari to Florida's Third District Court of Appeals on Applicability of Chapter 558), ***before Chapter 558 can apply,*** the HSC has the evidentiary burden of proving that **every** contract applicable to **every** Plaintiff fully complied with section 558.005, Florida Statutes, which requires that the applicable contract specifically cite Chapter 558 and specifically and conspicuously advise the homeowner of the potential applicability of Chapter 558, before the abatement provisions can apply.

Because the HSC has assiduously avoided and failed to meet this burden, the Motion to Abate is deficient there is no basis to conclude that Chapter 558 applicable to any of the Florida Cases.

## CONCLUSION

The only thing that has become clear in the course of the parties' briefing on the issue of the applicability of Florida Chapter 558 to the claims of the Florida Plaintiffs is the value the Defendants – including the HSC – invest in delay at the expense of justice. Since before these cases were transferred to Your Honor, these Defendant have incanted their need for additional abatement under Chapter 558, while months upon months have passed without any bona fide offers of settlement being made to any of the Florida Plaintiffs. The HSC has offered no reason to believe that additional time will yield different results. The Florida authority cited, which considered similar issues in the context of other analogous Florida pre-suit notice statutes that made giving pre-suit notice a statutory condition precedent to bringing a claim, found that the passage of time and commensurate inaction by the time the court ruled on the issue rendered the abatement question moot. This Court should reach this same easy conclusion, lay this issue to rest, deny the Motion to Abate, and return to the pursuit of justice for the Florida Plaintiffs.

DATED this 21st day of October, 2009

                      Respectfully Submitted,

                        /s/ Leonard A. Davis
                      Russ M. Herman, Esquire
                      Leonard A. Davis, Esquire
                      HERMAN, HERMAN, KATZ & COTLAR, LLP
                      820 O'Keefe Avenue
                      New Orleans, Louisiana 70113
                      Phone: (504) 581-4892
                      Fax: (504) 561-6024
                      *Plaintiffs' Liaison Counsel*

                      Arnold Levin
                      Fred S. Longer
                      Levin, Fishbein, Sedran & Berman
                      510 Walnut Street, Suite 500
                      Philadelphia, PA 19106
                      215-592-1500 (phone)
                      215-592-4663 (fax)
                      Alevin@lfsblaw.com
                      *Plaintiffs' Lead Counsel*
                      *MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz (on the brief)
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000

Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seith Parker
Parker, Waichman, Alonso LLP
27399 Riverview Center Blvd.
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves  
Lumpkin & Reeves  
160 Main Street  
Biloxi, MS 39530  
Phone: (228) 374-5151  
Fax: (228) 374-6630  

jrr@lumpkinreeves.com

Christopher Seeger  
Seeger Weiss, LLP  
One William Street  
New York, NY 10004  
Phone: (212) 584-0700  
Fax: (212) 584-0799  
cseeger@seegerweiss.com  

Scott Wm. Weinstein  
Morgan & Morgan  
12800 University Drive, Suite 600  
Ft. Meyers, FL 33907  
Phone: (239) 433-6880  
Fax: (239) 433-6836  
sweinstein@forthepeople.com  

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis  
HAUSFELD LLP  
1700 K Street, N.W Suite 650  
Washington, DC 20006  
Phone: (202) 540-7200  
Fax: (202) 540-7201  
rlewis@hausfeldllp.com  

Daniel K. Bryson  
Lewis & Roberts  
3700 Glenwood Avenue, Suite 410  
Raleigh, NC 27612  
Phone: (919) 981-0191  
Fax: (919) 981-0431  
dkb@lewis-roberts.com  

Jeremy W. Alters  
Alters, Boldt, Brown, Rash & Culmo, P.A.  
4141 N.E. 2nd Avenue  
Suite 201  
Miami, FL 33137  
Phone: (305) 571-8550  
Fax: (305) 571-8559  
jeremy@abbrclaw.com  

Richard J. Serpe, Esquire  
Law Offices of Richard J. Serpe  
Crown Center, Ste. 310  
580 East Main Street  
Norfolk, VA 23510-2322  
rserpe@serpefirm.com

MDL DOCKET NO. 2047

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 21[th] day of October, 2009.

/s/ Leonard A. Davis
    Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com