CASE NO.: 09-08401 CA (40)

& (2), Fla. Stat.

Section 558.005 requires that in order for the abatement procedures to apply to alleged construction defects arising after October 1, 2006, the advisement[2] must be given to the claimant specifically citing to the abatement provisions of Chapter 558. *See* § 558.005(1)(b), Fla. Stat. Section 558.005 further mandates that the advisement of the abatement provisions *expressly* cite to Chapter 558. *See* § 558.005(1) & 2(b) (providing that "the provisions of this chapter shall apply to every contract for . . . construction . . . entered into . . . [o]n or after October 1, 2006, which contains the notice set forth in paragraph (2)(b) and is conspicuously set forth in capitalized letters."); § 558.005(2)(b), Fla. Stat. ("The notice required by paragraph (1)(b) *must expressly cite this chapter and be in substantially the following form . . . .*") (emphasis added).[3]

---

[2]Where, as here, the construction defect arises out of work performed pursuant to a contract, this advisement must be contained in the contract. *See* §§ 558.004 & 558.005(2)(b), Fla. Stat.

[3]The statutory advisement requires the following language to be included in the contract:

> **CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS.  YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.**

§ 558.005(2)(b), Fla. Stat.  The contractual language identified by Banner fails to meet this standard

4

CASE NO.: 09-08401 CA (40)

Banner relies on a contract entered into between Plaintiffs and South Kendall Construction

Corp. ("SKCC") in support of its rqeuest that this action be abated. However, Banner is *not* a party

to this contract and the contract clearly fails to comply with the prerequisites set forth in section

558.005: the contract language does not set forth the language required by § 558.005(2)(b) and the

contract fails to *expressly* cite to Chapter 558. *See* Class Action Compl., *Exhibit A*.

Therefore, *even if* Banner were a party to the contract it relies upon -- and it is not -- it is

clear from review of the contractual language set forth in Banner's Motion to Abate and from a

review of the entirety of *Exhibit A* that the contract relied upon by Banner fails to *specifically and

expressly* cite Chapter 558, as required by Florida law. *See* Motion to Abate at 4; §§ 558.005(2)(b),

Fla. Stat.

Because Banner has failed to demonstrate that the prerequisites for the application of Chapter

558 have been met, *cf. WMS Const., Inc. v. North American Specialty Ins. Co.*, 929 So.2d 1, 3 (Fla.

3d DCA 2005) (explaining that construction lien statutes must be given a "strict reading," and

holding that "[f]ailure to comply with the statute's requirements . . . precludes the . . . claim" under

the statute), Chapter 588 *cannot* apply to Plaintiffs' claims against Banner and there is no lawful

support for the abatement of Plaintiffs' claims against Banner.

### CONCLUSION

Banner has failed to demonstrate strict compliance with § 558.003, Fla. Stat., which requires,

before abatement may be available, that the potential claimants be clearly advised of the potential

applicability of Chapter 558, with an *express citation* to the provisions of Chapter 558. *See* §

558.005(2)(b), Fla. Stat. Because Banner has failed to demonstrate that these prerequisites have been

met, Chapter 558 cannot apply to Plaintiffs' claims and Banner's Motion to Abate should be denied.

and, moreover, fails to *expressly* cite to Chapter 558 as required.

CASE NO.: 09-08401 CA (40)

WE CERTIFY that on this 25th day of March, 2009, a true and correct copy of the foregoing

was served by U.S. Mail, First Class, to all parties listed on the attached Service List.

HIGER LICHTER & GIVNER, LLP
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160
Tel: (305) 933-9970
Fax: (305) 933-0998
David H. Lichter, Esq
Florida Bar No. 359122
dlichter@hlglawyers.com
J. Joseph Givner, Esq.
Florida Bar No.850705
jgivner@hlglawyers.com

*Counsel for Plaintiffs*

THE BLUMSTEIN LAW FIRM
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160
Tel: (305) 356-7547
Fax: (305) 356-7539
Mark Blumstein, Esq.
Florida Bar No. 0090700
Mark@BlumsteinLaw.com

*Counsel for Plaintiffs*

PODHURST ORSECK, P.A.
25 W. Flagler Street, Suite 800
Miami, Florida 33130
Tel: (305) 358-2800
Fax: (305) 358-2382

By:
    Robert C. Josefsberg, Esq.
    Florida Bar No. 040856
    rjosefsberg@podhurst.com
    Victor M. Diaz, Jr., Esq.
    Florida Bar No. 503800
    vdiaz@podhurst.com
    Alexander Rundlet, Esq.
    Florida Bar No. 0692301
    arundlet@podhurst.com

*Counsel for Plaintiffs*

CASE NO.: 09-08401 CA (40)

## SERVICE LIST

LAW OFFICE OF KIERAN P. FALLON, P.A.
436 S.W. 8th St., Suite 200
Miami, Florida 33130
Kieran P. Fallon, Esq.
Tel: (305) 961-2900
Fax: (305) 857-9239

*Counsel for Defendant Keys Gate Realty, Inc.*

SCHWARTZ & HORWITZ
6751 N. Federal Highway, Suite 400
Boca Raton, Florida 33487
James W. Flanagan, Esq.
Steven G. Schwartz, Esq.
Tel: 561-395-4747
Fax: 561-367-1550

*Counsel for South Kendall Construction Corp.
and Palm Isles Holdings, LLC*

GUNSTER, YOAKLEY & STEWART, P.A.
One Biscayne Tower, Suite 3400
2 South Biscayne Blvd.
Miami, Florida 33130
Raymond V. Miller, Esq.
Tel: (3050) 376-6000
Fax: (305) 376-6910

*Counsel for Defendant Banner Supply Co.*

Podhurst Orseck, P.A.

8

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 09-08401-CA-40

JASON HARRELL, and MELISSA )
HARRELL, individually, on behalf of their )
minor children, and on behalf of all others )
similarly situated, )
                    )
                   Plaintiffs, )
                    )
v. )
                    )
SOUTH KENDALL CONSTRUCTION )
CORP., a Florida corporation, PALM ISLES )
HOLDINGS, LLC, a limited liability )
Company, KEYS GATE REALTY, INC., )
a Florida corporation, BANNER SUPPLY )
CO., a Florida corporation, KNAUF )
PLASTERBOARD TIANJIN CO. LTD., )
a foreign corporation, ROTHCHILT )
INTERNATIONAL, LTD., a foreign )
Corporation, and JOHN DOE #1, JOHN )
DOE #2, JOHN DOE #3, JOHN DOE #4, )
JOHN DOE #5, JOHN DOE #6, JOHN )
DOE #7, JOHN DOE #8, JOHN DOE #9 )
and JOHN DOE #10, )
                    )
                   Defendants, )
_____ )

## MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO ABATE PROCEEDING

COME NOW Defendants South Kendall Construction Corp., and Palm Isles Holdings,

LLC, by and through their undersigned counsel, and move this Honorable Court for entry of an

Order dismissing Plaintiffs' Complaint for failure to state a cause of action under Florida law, or

in the alternative, to abate this action, and in support thereof state:

      1.     Plaintiffs have alleged defects in a home owned by Plaintiffs and purchased from

South Kendall Construction and Palm Isles Holdings.

2.    Pursuant to the provisions of Florida Statute Chapter 558, and the contract attached to the Complaint, certain pre-suit requirements have not been met by Plaintiffs.

3.    Pursuant to the provisions of Florida Statute 558.004, Plaintiffs must serve written notice of claims on a contractor at least 60 days prior to filing suit. In the instant case, Plaintiffs failed to comply with the requirement, and have not pled compliance with the statutory requirement.

4.    Furthermore, the contract between the parties, Exhibit "1" to the Complaint, provides certain pre-suit requirements in paragraph 14 of the contract. Specifically, paragraph 14.2.2.3 provides in part:

> Without limiting the foregoing, Buyer shall not bring any litigation against Seller respecting the Home until the expiration of the Cure Period (which shall be deemed to be ninety (90) days from Seller's receipt of Buyer's written notice unless Seller agrees in writing to any shorter period). Seller shall have the right, but not the obligation, to take action during the Cure Period and/or respond to any notice received from Buyer.

Plaintiffs in this cause have failed to comply with the foregoing provision of the contract, and have failed to plead compliance with it.

5.    Defendants contend that Plaintiffs' actions is completely barred by the contract provision. In paragraph 19 of Exhibit "1" attached to the Complaint, the following language is found:

> The parties to this Agreement specifically agree that all disputes (whether contract, warranty, tort, statutory or otherwise) including, but not limited to, any and all controversies, disputes or claims arising under, or related to, this Agreement, the property, or any dealings between the Buyer and Seller (with the exception of Aconsumer product© as defined by the Magnuson-Moss Warranty-Federal Trade Commission Act, 15, U.S.C. §2301 et seq., and the regulations promulgated thereunder), shall first be submitted to mediation and, if not settled during mediation, shall

2

thereafter be submitted to binding arbitration as provided by the
Federal Arbitration Act, and not by or in a court of law.

6.    As can be seen, the clear language of the Agreement between the Plaintiffs and
these Defendants prohibits filing of this litigation, and requires the parties to resolve any disputes
through mediation and arbitration.

WHEREFORE, Defendants South Kendall Construction Corp. and Palm Isle Holdings,
LLC, move this Honorable Court for dismissal of the Complaint, or in the alternative, an
abatement of the matter pending proper notice and passing of the Cure Period required by the
contract, and petition the Court to award costs incurred in defense of this matter.

Dated: March 18 , 2009.

Respectfully submitted,

SOUTH KENDALL CONSTRUCTION
CORP. and PALM ISLES HOLDINGS,
LLC, Defendants,

By: _____
Steven G. Schwartz, Esquire
Florida Bar No. 911411
James W. Flanagan, Esquire
Florida Bar No. 249440

Schwartz & Horwitz, PLC
6751 North Federal Highway
Suite 400
Boca Raton, Florida  33487
Telephone: (561) 395-4747
Facsimile: (561) 367-1550
sgs@sandhlawfirm.com
jwf@sandhlawfirm.com

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via ✗ U.S. Mail; ✗ facsimile; _____ hand delivery; _____ overnight delivery, to: Mark Blumstein, Esq., The Blumstein Law Firm, Bank of America Bldg., 18305 Biscayne Blvd., Suite 402, Aventura, FL 33160, and J. Joseph Givner, Esq. and David H. Lichter, Esq., Higer Lichter & Givner, LLP, Bank of America Bldg., 18305 Biscayne Blvd., Suite 402, Aventura, FL 33160, this 18 day of March, 2009.

Steven G. Schwartz, Esq.
James W. Flanagan, Esq.

L:\OPEN FILES\100405\Pleadings\Motion to Dismiss-jg.doc

4

9

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT OF
FLORIDA IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

JASON HARRELL and MELISSA HARRELL,
Individually, on Behalf of their Minor Children
and on behalf of all others similarly situated,

              *Plaintiffs,*

vs.

SOUTH KENDALL CONSTRUCTION
CORP., a Florida corporation; PALM ISLES
HOLDINGS, LLC, a Florida limited liability
company; KEYS GATES REALTY, INC., a
Florida corporation; BANNER SUPPLY CO.,
a Florida corporation; KNAUF
PLASTERBOARD TIANJIN CO., LTD., a
Foreign corporation; ROTHCHILT INT'L.,
LTD., a Foreign corporation and DOES #1-#10,
Unknown Persons,

              *Defendants.*

_____/

CASE NO.: 09-08401 CA (40)

COMPLEX BUSINESS LITIGATION

**CLASS REPRESENTATION**
**JURY TRIAL DEMANDED**

THE ORIGINAL
FILED ON:

MAR 30 2009

IN THE OFFICE OF
CIRCUIT COURT DADE CO. FL.

## PLAINTIFFS' RESPONSE TO DEFENDANT SOUTH KENDALL CONSTRUCTION CORP.'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO ABATE

      Plaintiffs, JASON HARRELL and MELISSA HARELL, on behalf of their Minor Children

and all others similarly situated, submit the following response to South Kendall Construction

Corp.'s ("SKCC") Motion to Dismiss or in the Alternative to Abate Proceedings (the "Motion to

Dismiss/Abate"). Plaintiffs assert straightforward products liability and related claims against

SKCC arising out of its construction, marketing and sale of a home to Plaintiffs that contains

defective drywall. SKCC relies on provisions of the contract entered into between Plaintiffs and

H:\LIB\DOCS\4012\011209\CM7396.WPD

Podhurst Orseck, P.A.

CASE NO.: 09-08401 CA (40)

SKCC, and provisions of the Florida Code -- Chapter 558 -- in efforts to delay the prosecution of Plaintiffs' claims.

Although the abatement provisions set forth in Chapter 558 could arguably have applied to Plaintiffs' claims (and Plaintiffs do not concede this point), the provisions cannot apply in this instance because SKCC has failed to demonstrate satisfaction of statutory prerequisites that require -- *before* Chapter 558 can apply -- that claimants have been expressly advised of the potential applicability of the notice and abatement provisions set forth in Chapter 558. *See* § 558.005, Fla. Stat. (requiring that express notice of the specific statutory provisions be given before Chapter can apply). SKCC has failed to demonstrate that Plaintiffs were expressly advised of the potential applicability of Chapter 558 to their claims, thus the statutory prerequisite has not been met, and Chapter 558 cannot apply to Plaintiffs' claims.

Similarly, SKCC relies on ambiguous provisions of the contract between Plaintiffs and SKCC in support of its argument that Plaintiffs' claims are barred from prosecution in this Court and must be subjected to alternative dispute resolution (*i.e.*, mediation and arbitration). It is clear from review of pertinent provisions of the contract, however, that the parties expressly contemplated that "Resolution of Disputes" between the parties arising out of the contract was to be done in a "court of law." *See* Class Action Complaint, dated February 3, 2009, *Exhibit A* at ¶ 18 ("Resolution of Disputes" paragraph). The provisions relied upon by SKCC are to the contrary. Given this ambiguity, and black letter law providing that all ambiguities must be construed against the drafter of the contract (which, indisputably, was SKCC in this instance), SKCC's argument that Plaintiffs' claims cannot proceed in this Court must be rejected. Accordingly, there are no lawful grounds to

CASE NO.: 09-08401 CA (40)

support SKCC's abatement or dismissal request and, as set forth more fully below, the Motion to

Dismiss/Abate should be denied.

## INTRODUCTION

Plaintiffs filed this action on February 3, 2009, asserting claims against the manufacturer,

distributor, and supplier of defective drywall that was manufactured in the People's Republic of

China, imported into the State of Florida, and installed in homes that were constructed and sold to

Plaintiffs by SKCC. *See* Compl. at ¶¶ 1-5, 7-10.     The home constructed and sold by SKCC to

Plaintiffs contains drywall that is defective: t he drywall contains and emits toxins such as sulphur,

and sulphur compounds, including carbon disulfide, carbonyl sulfide and hydrogen sulfide within

the residences.  These toxins cause the erosion or corrosion of various metals within the residences,

disrupt or interfere with the operation of electronic equipment within said residences, and cause the

destruction of personal property. *See* Compl. ¶ 17.  Plaintiffs assert several claims seeking the

recovery of damages arising out of SKCC's sale of a home containing of defective drywall to

Plaintiffs. *See id.* ¶¶ 97.

## ARGUMENT AND CITATION OF AUTHORITIES

## STANDARD ON MOTION TO DISMISS

A motion to dismiss pursuant to Rule 1.140(b)(6) of the Florida Rules of Civil Procedure

should not be granted unless, taking all well-pleaded allegations in the Complaint as being true, and

drawing all reasonable inferences in favor of the Plaintiff, the Complaint fails to state claims upon

which relief may be granted. *See Ralph v. City of Daytona Beach*, 471 So.2d 1, 2 (Fla.1983);

*Orlando Sports Stadium, Inc. v. State ex rel. Powell*, 262 So.2d 881, 883 (Fla.1972); *Conley v. Shutts*

3

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

CASE NO.: 09-08401 CA (40)

& Bowen, P.A., 616 So.2d 523, 524-25 (Fla. 3d DCA 1993); Emile v. Florida Power & Light Co., 426 So.2d 1152, 1152 (Fla. 3d DCA 1983). In consideration of these standards, the Motion to Dismiss/Abate should be denied

### I.   SKCC HAS NOT SHOWN THAT PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

SKCC has failed to make a legally sufficient argument that demonstrates that the claims Plaintiffs assert against it fail to meet the legal criteria in Florida for stating a claim upon which relief may be granted. See Fla. R. Civ. P. 1. 140(b)(6). Because SKCC has wholly failed to carry its burden on this score, its request that any of Plaintiffs' claims be *dismissed* must be denied.[1]

### II.   CHAPTER 558 OF THE FLORIDA CODE DOES NOT APPLY TO PLAINTIFFS' CLAIMS AGAINST SKCC

SKCC asks the Court to abate this action pursuant to section 558.003 of the Florida Code. Section 558.003 requires -- under circumstances not present here -- that, before proceeding with a claim against a "contractor," "subcontractor," "supplier," or "design professional," the claimant give notice of a "construction defect." See § 558.00(5)(6)(9(10), Fla. Stat.[2]

---

[1] To the extent SKCC relies upon § 558.003, Fla. Stat., to support its argument that Plaintiffs' claims should be dismissed, even assuming the applicability of this statute to Plaintiffs' claims against SKCC (which Plaintiffs dispute, as argued below), the statute only provides for "*abate[ment] . . . without prejudice*," but *does not* support dismissal. See § 558.003, Fla. Stat. (emphasis added). Dismissal of Plaintiffs' claims is therefore wholly unsupported.

[2] Section 558.003 provides:

A claimant may not file an action subject to this chapter without first complying with the requirements of this chapter. If a claimant files an action alleging a construction defect without first complying with the requirements of this chapter, on timely motion by a party to the action the court shall abate the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

**A.     SKCC Has Failed to Demonstrate Compliance With § 558.005, Fla. Stat.**

The notice and abatement provisions of Chapter 558 do not apply to Plaintiffs' claims against

SKCC because SKCC has failed to demonstrate compliance with section 558.005, Fla. Stat.

Even assuming that Chapter 558 applies to Plaintiffs' products liability and related claims

against SKCC (which Plaintiffs do not concede), certain prerequisites must be met **before** the

abatement provisions of Chapter 558 may apply.  Specifically, SKCC must demonstrate that

Plaintiffs were advised of *specific language* that *expressly cites* to Chapter 558. *See* §§ 558.005(1)

& (2), Fla. Stat.

Section 558.005 requires that in order for the abatement procedures to apply to alleged

construction defects arising after October 1, 2006, the advisement[3] must be given to the claimant

specifically citing to the abatement provisions of Chapter 558. *See* § 558.005(1)(b), Fla. Stat.

Section 558.005 further mandates that the advisement of the abatement provisions *expressly* cite to

Chapter 558. *See* § 558.005(1) & 2(b) (providing that "the provisions of this chapter shall apply to

every contract for ... construction ... entered into ... [o]n or after October 1, 2006, which contains

the notice set forth in paragraph (2)(b) and is conspicuously set forth in capitalized letters."); §

558.005(2)(b), Fla. Stat. ("The notice required by paragraph (1)(b) *must expressly cite this chapter*

and be in substantially the following form . . . .") (emphasis added).[4]

---

§ 558.003, Fla. Stat.

[3]Where, as here, the construction defect arises out of work performed pursuant to a contract, this
advisement must be contained in the contract. *See* §§ 558.004 & 558.005(2)(b), Fla. Stat.

[4]The statutory advisement requires the following language to be included in the contract:

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800, Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

CASE NO.: 09-08401 CA (40)

SKCC makes reference to the home sales contract entered into between Plaintiffs and SKCC in support of its request that this action be abated. *See* Motion to Dismiss/Abate at 2, ¶ 2 (referring to *Exhibit A* to Complaint). However, the home sales contract *clearly fails* to comply with the prerequisites set forth in section 558.005: the contract language *does not* set forth the language required by § 558.005(2)(b) and the contract fails to *expressly* cite to Chapter 558. *See* Compl., *Exhibit A* at 13 (¶23, failing to expressly cite to Chapter 558 and only generally referring to "Florida law").

It is clear, therefore, from review of the contractual language referred to in SKCC's Motion to Dismiss/Abate and from a review of the entirety of *Exhibit A* that the contract relied upon by SKCC fails to *specifically and expressly* cite Chapter 558, as required by Florida law. *See* §§ 558.005(2)(b), Fla. Stat.

Because SKCC has failed to demonstrate that the prerequisites for the application of Chapter

**CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.**

§ 558.005(2)(b), Fla. Stat. The contractual language identified by SKCC fails to meet this standard and, moreover, fails to *expressly* cite to Chapter 558 as required.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130  Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346        www.podhurst.com

558 have been met, *cf. WMS Const., Inc. v. North American Specialty Ins. Co.,* 929 So.2d 1, 3 (Fla. 3d DCA 2005) (explaining that construction lien statutes must be given a "strict reading," and holding that "[f]ailure to comply with the statute's requirements . . . precludes the . . . claim" under the statute), Chapter 588 **cannot** apply to Plaintiffs' claims against SKCC and there is no lawful support for the abatement of Plaintiffs' claims against SKCC.

### III.  THE CONTRACT BETWEEN PLAINTIFFS AND SKCC IS AMBIGUOUS ON THE FORUM WHERE DISPUTES ARE TO RESOLVED AND THIS AMBIGUITY MUST BE CONSTRUED AGAINST SKCC, THE DRAFTER OF THE PARTIES' CONTRACT

In addition to relying on Chapter 558 in support of its Motion to Dismiss/Abate, SKCC relies on ambiguous provisions in the contract that SKCC contends bar this action from proceeding in this Court and which require that this action be submitted to arbitration or mediation. *See* Motion to Dismiss/Abate at 2-3. This argument is unsupported.

In *several places* in the contract between Plaintiffs and SKCC, the parties clearly contemplate that disputes arising out of the contract were to be resolved in a *court* of competent jurisdiction. *See* Compl., *Exhibit A* at ¶¶ 16 & 18.

For instance, the following language appears in parties' discussion of implied warranties: "In the event *a court of law* decides any disclaimer to be ineffective, the parties agree that any action brought under implied warranty must be brought within one (1) year from the date of the buyer's closing hereunder." Compl., *Exhibit A* at 9, ¶16 (emphasis added). This provision clearly expresses the parties' expectation that a court of law would adjudicate any disputes arising out of, in this instance, implied warranties relating to the home sold by SKCC to Plaintiffs.

The expectation that any disputes between the parties would be submitted to a court of

Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800, Miami, FL 33130. Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346      www.podhurst.com

CASE NO.: 09-08401 CA (40)

competent jurisdiction was also manifest in the parties' *first mention* of the "Resolution of Disputes." *See* Compl., *Exhibit A* at ¶ 18. In this paragraph, the parties *expressly agreed* that all disputes regarding the Agreement were to be heard in a "*court proceeding*" by a judge:

> **Resolution of disputes.**   Each buyer acknowledges that this Agreement is a sophisticated legal document. Accordingly, *justice will be served if issues regarding this Agreement are heard* by a judge *in a court proceeding*, and not a jury.   Each Buyer agrees that any claim, demand, action, or cause of action, with respect to any action, proceeding, claim on, arising out of, or in connection with or in any way related to this Agreement, any course of conduct, course of dealing, verbal or written statement, validation, protection, enforcement action or omission of any party *shall be heard* by a judge *in a court proceeding* and not a jury.

Compl., Exhibit A at 10, ¶ 18 (emphasis added).

In arguing that Plaintiffs' claims are barred from proceeding in this Court and subject to mandatory alternative dispute resolution, SKCC wholly ignores the most pertinent section on this subject, the "Resolution of Disputes" provisions cited above, and relies, instead, on entirely contradictory language. *See* Motion to Dismiss/Abate at 2-3 (at ¶¶ 5-6, citing to *Exhibit A* ).  The language relied upon by SKCC is set forth in subsections of Paragraph 19 of the contract, which provides that the venue for resolving disputes arising out of the Agreement is Miami-Dade County. *See* Compl., *Exhibit A* at 10, ¶ 19.

The "Resolution of Disputes" section is clear – disputes must be heard in a *court of law* -- and this provision leads to the conclusion that SKCC's argument that Plaintiffs' action is barred must be rejected. *See* Compl., Exhibit A, ¶ 18.

*At best*, SKCC has introduced an ambiguity into this issue by relying on contradictory language.  Given the clear contradiction between the "Resolution of Disputes" section set forth in Paragraph 18, however, and the alternative dispute resolution provisions relied upon by SKCC set

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346                www.podhurst.com

CASE NO.: 09-08401 CA (40)

forth in subsections of Paragraph 19, the Court could conclude that contract is ambiguous as relates to the resolution of disputes and Plaintiffs' right to prosecute their claims before this Court.

The Court's conclusion that there is an ambiguity in the contract, when combined with the indisputable fact that SKCC clearly was the drafter of this form contract – the name of SKCC is already pre-defined and included in typed format in the text of the contract, whereas the names of Plaintiffs are handwritten, *see* Compl., *Exhibit A* at 1 – firmly resolve this issue in Plaintiffs' favor. Long-standing, black letter law in the State of Florida holds that where, as here, there is an ambiguity in a contract, any ambiguity must be construed against the drafter.

As stated by the Third District Court of Appeals: "A *fundamental* and frequently applied general rule of construction is that where the language of a contract is ambiguous or doubtful, it should be construed *against the party who drew the contract and chose the wording.*" *American Agronomics Corp. v. Ross*, 309 So.2d 582, 584 (Fla. 3d DCA 1975) (emphasis added). *See also Hancock v. Brumer, Cohen, Logan, Kandell & Kaufman*, 580 So.2d 782, 783 (Fla. 3d DCA 1991) ("It is well settled law that where the language of a contract is ambiguous or doubtful, the contract should be construed in the light most favorable to the nondrafting party."); *MacIntyre*, 347 So.2d at 1081, 1083 (Fla. 3d DCA 1977) ("If the contract should be read as ambiguous, two additional principles for the interpretation of contracts support the conclusion we have reached. In cases of doubt as to the meaning the parties intended by contract language, the language will ordinarily be interpreted in a light less favorable to the party drawing the contract."); *Nicholas v. Bursley*, 119 So.2d 722, 728 (Fla. 2d DCA 1960) (construing contract against real estate broker, who was drafter of contract because " it is a general rule that a contract will be construed against the party who drew

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

CASE NO.: 09-08401 CA (40)

it or chose the language and any ambiguity will be construed *strongly against the party making use of such language*") (emphasis added).

The contract language contemplating that the "Resolution of Disputes," Compl., *Exhibit A*, ¶ 18, must be tried in a court of competent jurisdiction flatly contradicts the provision relied upon by SKCC suggesting that disputes should be referred to mediation. SKCC cannot escape the fact that *Exhibit A* is a form contract of which it is the drafter and, accordingly, the provisions must be construed against SKCC. SKCC's argument that the contract between Plaintiffs and SKCC requires that Plaintiffs' claims are barred from this Court and that the dispute must be submitted to alternative dispute resolution procedures must be rejected. The Motion to Dismiss/Abate on this ground should therefore be denied. *See American Agronomics*, 309 So.2d at 584; *Hancock*, 580 So.2d at 783; *MacIntyre*, 347 So.2d at 1083; *Nicholas*, 119 So.2d at 728.

## IV.   SKCC'S REQUEST THAT PLAINTIFFS' CLAIMS BE ABATED IS NOT SUPPORTED BECAUSE PLAINTIFFS INDEED PROVIDED NOTICE OF THEIR CLAIMS TO SKCC AND HAVE PLEADED THIS FACT IN THE COMPLAINT

In further support of its argument that this action should be abated, SKCC also relies upon the erroneous assertion that Plaintiffs have not placed it on notice of the defects alleged in this action. *See* Motion to Dismiss/Abate at 2 (¶ 2). Contrary to this assertion, Plaintiffs *have* indeed provided notice of their claims to SKCC. This notice was given as early as July 8, 2008 of last year and several times thereafter, as reflected in the emails attached hereto as *Exhibit A* (redacted to remove privileged communications between Plaintiffs and counsel). Despite *multiple* written attempts -- for example, on July 8, 2008, August 18, 2008, September 23, 2008, and January 26, 2009 -- to obtain relief from SKCC, Plaintiffs have not been made whole. *See id.* The fact that

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

CASE NO.: 09-08401 CA (40)

Plaintiffs provided written notice of their claims, beginning in July 2008 (more than *seven (7)*

*months before* the Complaint was filed) clearly demonstrates Plaintiffs' compliance with the 90-day

Cure Period set forth in the contract. *See* Compl., *Exhibit A* at ¶ 14.2.2.3.[5] Moreover, contrary to

SKCC's argument, Plaintiffs indeed alleged that they provided notice to SKCC on several occasions

and, as of the date of filing of the Complaint, had not received any relief from SKCC: "Plaintiffs

provided to SKCC and/or its assigns written notice of the defects with their home on several

occasions, which SKCC and its assigns failed to repair." Compl. ¶ 28. *See also id.* at ¶ 45

("Plaintiffs made demands on SKCC its assigns, and/or affiliates, including PIH, for repairs to home

pursuant to the warranty. However, SKCC, its assigns and/or affiliates, including PIH, failed to

resolve the problem.").

Plaintiffs' well-pleaded allegations must be accepted as true in consideration of SKCC's

request that Plaintiffs' claims be dismissed, *see Ralph*, 471 So.2d at 2; *Orlando Sports Stadium*, 262

So.2d at 883; *Conley*, 616 So.2d at 524-25, and Plaintiffs' emails putting SKCC on notice of its

claims as early as July 2008, *see Exhibit A*, must be considered in response to SKCC's request that

Plaintiffs' claims be abated.   These allegations and attachments demonstrate that Plaintiffs have

indeed served notice of their claims on SKCC, have alleged this fact, and thus the Motion to

Dismiss/Abate should be denied

## CONCLUSION

SKCC has faile d to demonstrate strict compliance with § 558.003, Fla. Stat., which requires,

---

[5] This paragraphs provides: "Without limiting the foregoing, Buyer shall not bring any litigation
against Seller respecting the Home until the expiration of the Cure Period (which shall be deemed
to be ninety (90) days from Seller's receipt of Buyer's written notice unless Seller agrees in writing
to any shorter period.")." Compl, *Exhibit A* at ¶¶ 14.2.2.3.

CASE NO.: 09-08401 CA (40)

before abatement may be available, that the potential claimants be clearly advised of the potential

applicability of Chapter 558, with an ***express citation*** to the provisions of Chapter 558.  *See* §

558.005(2)(b), Fla. Stat.  Because SKCC has failed to demonstrate that these prerequisites have been

met, Chapter 558 cannot apply to Plaintiffs' claims and SKCC's Motion to Dismiss/Abate should

be denied.  In addition, the contract between SKCC and Plaintiffs clearly contemplates adjudication

in a court of law.  At best the contract is contradictory and ambiguous on the issue of whether

Plaintiffs' claims are properly before this Court.  Long standing Florida law, however, resolves this

issue against SKCC – the drafter of the contract at issue – and in favor of Plaintiffs and the Motion

to Dismiss/Abate on this ground must be rejected.  *See American Agronomics*, 309 So.2d at 584;

*Hancock*, 580 So.2d at 783; *MacIntyre*, 347 So.2d at 1083;  *Nicholas*, 119 So.2d at 728.

WE CERTIFY that on this ___th day of March, 2009, a true and correct copy of the foregoing

was served by U.S. Mail, First Class, to all parties listed on the attached Service List.

HIGER LICHTER & GIVNER, LLP
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160
Tel: (305) 933-9970
Fax: (305) 933-0998
David H. Lichter, Esq
Florida Bar No. 359122
dlichter@hlglawyers.com
J. Joseph Givner, Esq.
Florida Bar No.850705
jgivner@hlglawyers.com

*Counsel for Plaintiffs*

THE BLUMSTEIN LAW FIRM
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160
Tel: (305) 356-7547
Fax: (305) 356-7539
Mark Blumstein, Esq.
Florida Bar No. 0090700
Mark@BlumsteinLaw.com

*Counsel for Plaintiffs*

Podhurst Orseck, P.A.

CASE NO.: 09-08401 CA (40)

PODHURST ORSECK, P.A.
25 W. Flagler Street, Suite 800
Miami, Florida   33130
Tel:  (305) 358-2800
Fax: (305) 358-2382

By: _____

      Robert C. Josefsberg, Esq.
      Florida Bar No. 040856
      rjosefsberg@podhurst.com
      Victor M. Diaz, Jr., Esq.
      Florida Bar No. 503800
      vdiaz@podhurst.com
      Alexander Rundlet, Esq.
      Florida Bar No. 0692301
      arundlet@podhurst.com

      *Counsel for Plaintiffs*

CASE NO.: 09-08401 CA (40)

## SERVICE LIST

LAW OFFICE OF KIERAN P. FALLON,
P.A.
436 S.W. 8th St., Suite 200
Miami, Florida 33130
Kieran P. Fallon, Esq.
Tel: (305) 961-2900
Fax:  (305) 857-9239

*Counsel for Defendant Keys Gate Realty, Inc.*

GUNSTER, YOAKLEY & STEWART, P.A.
One Biscayne Tower, Suite 3400
2 South Biscayne Blvd.
Miami, Florida 33130
Raymond V. Miller, Esq.
Tel: (3050) 376-6000
Fax: (305) 376-6910

*Counsel for Defendant Banner Supply Co.*

SCHWARTZ & HORWITZ
6751 N. Federal Highway, Suite 400
Boca Raton, Florida 33487
James W. Flanagan, Esq.
Steven G. Schwartz, Esq.
Tel:  561-395-4747
Fax: 561-367-1550

*Counsel for South Kendall Construction Corp.*
*and Palm Isles Holdings, LLC*

**EXHIBIT A**

**TO**

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS/ABATE FILED BY SOUTH KENDALL CONSTRUCTION CORP.**

----- Forwarded Message ----
**From:** Jason A. Harrell <harrelljason@yahoo.com>
**To:** customerservice@southkendall.net; Melissa Harrell <missyharrell@yahoo.com>
**Sent:** Tuesday, July 8, 2008 6:01:17 PM
**Subject:** Re: 1926 SE 23 Court

Toni,


One last thing. I did some touch up paint after moving in and after some work was done in the house. The paint kit that the painters gave us does not match the paint. The color seems correct however, there is a difference in the two paints. If Tim needed to see what I am talking about any upstairs door has areas touched up, and to me it seems like we were given maybe a latex when the trim paint was oil or that it was a semi gloss versus something else???


TKS,


Jason

--- On **Tue, 7/8/08, Melissa Harrell <_missyharrell@yahoo.com_>** wrote:

From: Melissa Harrell <missyharrell@yahoo.com>
Subject: 1926 SE 23 Court
To: customerservice@southkendall.net
Cc: "Jason Harrell" <harrelljason@yahoo.com>, missyharrell@yahoo.com
Date: Tuesday, July 8, 2008, 3:35 PM

Toni,

Thank you for taking my call today. These are a list of items we are having issues with. Please see what can be done to get these corrected. The first bullet is urgent.


1.  A couple of weeks ago I noticed a mildew type smell in the Master Bath & in the garage that was not there before, I could not find the source, no water or anything that appeared to be leaking. I just went into the garage to move

1

boxes (still unpacking) and found the ceiling has parts falling off and there is a 3 foot line of water damage inside the garage to the far back right. It looks like a pipe or something that is causing the damage. (I am only guessing).

2. The front downstairs bedroom never cools down, stays warm as if the AC does not work in the room, even with the fan on and the shutters closed, this room does not stay cool.

3. We added an outlet upstairs for the Master TV and if we plug anything else into the outlet it trips the breaker. This has happened several times.

4. A couple of dry wall areas in bathroom that need to be corrected around outlets. The outlet in downstairs bath sinks into the wall.

Thanks again so much!

Jason & Melissa Harrell

New Home # 305-230-1880

Melissa Cell - 919-602-4013

Jason Cell - 305-970-8384

**Cc:** Jason Harrell <harrelljason@yahoo.com>; missyharrell@yahoo.com
**Sent:** Monday, August 18, 2008 10:45:59 PM
**Subject:** 1926 SE 23 Court

Dear Toni or To Whom this may concern,

1) After returning from vacation on Saturday, I noticed water leaking from the ceiling in the family/living room and the living room wall. I also immediately noticed the house was extremely warm, although the AC unit sounded like it was running continuously. I went upstairs to check the unit and found a large puddle of water on the floor under the AC unit. I also noticed condensation all over the unit. I immediately turned the unit off and cleaned the water up while placing towels and pans to catch the rest of moisture. I opened the AC cover to see if I could get the rest of the water cleaned up to prevent any further damage to the ceiling, but when I opened the cover I saw all of the coils covered in a block of ice. I also saw mold all over the cover and the coils. I called and left a message at your office as well as a emergency message for the AC company. The AC company called me back this morning (Monday) and they came this afternoon to assess the problem. The technician said that there is a possible leak in the gas and he replaced the gas tank and said that he would have to come back on Wednesday to further asses the issue. He told me that I could turn the AC back on, but that the same problem would eventually happen again until they find and correct the problem or leak.

2) Also, as reported previously, I have smelled a mold smell in the master bathroom. We opened one wall and could not identify the problem. I still don't know the exact cause of the smell, but I do know for a fact that the faucet over the tub is creating all the caulking to turn moldy even after cleaning. I think that when the faucet was changed out prior to our closing, that water is leaking behind that tile and down to that caulking. Not sure if this is the cause of the smell or an unrelated issue. Also, the shower is not caulked and I want to be sure there is no issue there.

I have a very sensitive nose to mold as myself and my youngest son are very allergic to all indoor/outdoor molds. It is very important we work together to eliminate and prevent any further issues related to water damage & mold.

Thank you very much for you assistance in advance,
Melissa Harrell
305-230-1880 Home
919-602-4013 Cell

1

**To:** Melissa Harrell <missyharrell@yahoo.com>; customerservice@southkendall.net
**Sent:** Monday, August 25, 2008 9:57:20 PM
**Subject:** RE: 1926 SE 23 Court

Toni or whom this may concern,

Also I noticed that the French doors in the Dining room area, at the top of the door, would not lock.

TKS,

## Jason A. Harrell

**From:** Melissa Harrell [mailto:missyharrell@yahoo.com]
**Sent:** Monday, August 18, 2008 10:46 PM
**To:** customerservice@southkendall.net
**Cc:** Jason Harrell; missyharrell@yahoo.com
**Subject:** 1926 SE 23 Court

Dear Toni or To Whom this may concern,

1) After returning from vacation on Saturday, I noticed water leaking from the ceiling in the family/living room and the living room wall. I also immediately noticed the house was extremely warm, although the AC unit sounded like it was running continuously. I went upstairs to check the unit and found a large puddle of water on the floor under the AC unit. I also noticed condensation all over the unit. I immediately turned the unit off and cleaned the water up while placing towels and pans to catch the rest of moisture. I opened the AC cover to see if I could get the rest of the water cleaned up to prevent any further damage to the ceiling, but when I opened the cover I saw all of the coils covered in a block of ice. I also saw mold all over the cover and the coils. I called and left a message at your office as well as a emergency message for the AC company. The AC company called me back this morning (Monday) and they came this afternoon to assess the problem. The technician said that there is a possible leak in the gas and he replaced the gas tank and said that he would have to come back on Wednesday to further asses the issue. He told me that I could turn the AC back on, but that the same problem would eventually happen again until they find and correct the problem or leak.

2) Also, as reported previously, I have smelled a mold smell in the master bathroom. We opened one wall and could not identify the problem. I still don't know the exact cause of the smell, but I do know for a fact that the faucet over the tub is creating all the caulking to turn moldy even after cleaning. I think that when the faucet was changed out prior to our closing, that water is leaking behind that tile and down to that caulking. Not sure if this is the cause of the smell or an unrelated issue. Also, the shower is not caulked and I want to be sure there is no issue there.

I have a very sensitive nose to mold as myself and my youngest son are very allergic to all indoor/outdoor molds. It is very important we work together to eliminate and prevent any further issues related to water damage & mold.

Thank you very much for you assistance in advance,
Melissa Harrell
305-230-1880 Home
919-602-4013 Cell

1

**From:** Melissa Harrell <missyharrell@yahoo.com>
**To:** Melissa Harrell <missyharrell@yahoo.com>; customerservice@southkendall.net
**Cc:** Jason Harrell <harrelljason@yahoo.com>
**Sent:** Tuesday, September 23, 2008 9:43:16 PM
**Subject:** Re: 1926 SE 23 Court- AC Unit

Toni,

I am writing this again to say that I no longer have a function AC unit as it froze up again and leaked a ton of water out of it tonight (9/23/08). I have attached a video clip so that you can see what I am talking about. I had emptied the pan 4 times prior to shooting the video clip.

I do understand that the part is on back order, but until that part is in, the AC company has to be proactive about keeping the unit charged. Wouldn't you agree? As I also mentioned our electricity bill is ridiculously high due to this issue. Who can compensate for this? Not to mention, the continuous cleaning up of the water, the damage to the house and our inconvenience of having not AC.

Sorry to be complaining like this, it's just been 5 weeks since we first reported the issue. Please call me and let me know when they can service it. I have to have AC tomorrow (Wed) I have 14 people coming for Bible study.

Thanks for your help in advance!

Melissa Harrell

305-230-1880 Home
919-602-4013 Cell

----- Original Message -----

Dear Toni or To Whom this may concern,

1

1) After returning from vacation on Saturday, I noticed water leaking from the ceiling in the family/living room and the living room wall. I also immediately noticed the house was extremely warm, although the AC unit sounded like it was running continuously. I went upstairs to check the unit and found a large puddle of water on the floor under the AC unit. I also noticed condensation all over the unit. I immediately turned the unit off and cleaned the water up while placing towels and pans to catch the rest of moisture. I opened the AC cover to see if I could get the rest of the water cleaned up to prevent any further damage to the ceiling, but when I opened the cover I saw all of the coils covered in a block of ice. I also saw mold all over the cover and the coils. I called and left a message at your office as well as a emergency message for the AC company. The AC company called me back this morning (Monday) and they came this afternoon to assess the problem. The technician said that there is a possible leak in the gas and he replaced the gas tank and said that he would have to come back on Wednesday to further asses the issue. He told me that I could turn the AC back on, but that the same problem would eventually happen again until they find and correct the problem or leak.

2) Also, as reported previously, I have smelled a mold smell in the master bathroom. We opened one wall and could not identify the problem. I still don't know the exact cause of the smell, but I do know for a fact that the faucet over the tub is creating all the caulking to turn moldy even after cleaning. I think that when the faucet was changed out prior to our closing, that water is leaking behind that tile and down to that caulking. Not sure if this is the cause of the smell or an unrelated issue. Also, the shower is not caulked and I want to be sure there is no issue there.

I have a very sensitive nose to mold as myself and my youngest son are very allergic to all indoor/outdoor molds. It is very important we work together to eliminate and prevent any further issues related to water damage & mold.

Thank you very much for you assistance in advance,
Melissa Harrell
305-230-1880 Home
919-602-4013 Cell

**From:** Jason A. Harrell <harrelljason@yahoo.com>
**To:** customerservice@southkendall.net
**Cc:** Melissa Harrell <missyharrell@yahoo.com>
**Sent:** Monday, January 26, 2009 2:18:55 PM
**Subject:** 1926 SE 23rd CT

Toni,

  Per our conversation today I have noticed the following problems at the house.  I will be home after 1 PM tomorrow, although the sprinkler problem mentioned should not require me to be there.  That is the one I am concerned about immediately as the grass is taking a beating.

- Sprinkler system inoperative.  I suspect it has something to do with the motor.  I tuned on the system manually and it makes a noise for about 10 seconds and then de-energizes the motor.
- Outlets in the master bedroom are shorting out or something.  There are two outlets in the Master Bedroom that when you plug into them, the other outlets in the bedroom lose power.
- There is still a mold smell in the Master Bath
- Paint given to us at move in, specifically the trim is still mismatched and noticeable.  Same for the repair in the downstairs ceiling after the AC unit leaked.

Thanks for helping us get this resolved.

All the best,

Jason

1

10

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Class Representation
COMPLEX BUSINESS COURT

JASON HARRELL and MELISSA HARRELL,                    CASE NO.: 09-08401 CA 40
Individually, on behalf of their minor children,
and on behalf of all others similarly situated,            Florida Bar No. 345679
        Plaintiffs,

v.

SOUTH KENDALL CONSTRUCTION CORP.,
a Florida Corporation, PALM ISLES HOLDINGS, LLC,
a Limited Liability Company, KEYS GATE REALTY, INC.,
a Florida Corporation, et al,
        Defendants.
_____/

## MOTION TO DISMISS AMENDED COMPLAINT ON BEHALF OF DEFENDANT, KEYS GATE REALTY, INC.

COMES NOW, Defendant, KEYS GATE REALTY, INC., by and through the undersigned

counsel and hereby moves for entry of an Order to Dismiss Plaintiffs Amended Complaint as to

Defendant KEYS GATE REALTY, INC., or in the alternative to abate this action and in support states:

### Introduction

1)    On February 3, 2009 the Plaintiffs, Jason Harrell and Melissa Harrell filed a Complaint ("original

complaint") against several Defendants (the builder, the dry wall contractor, the dry wall supplier)

including the broker, KEYS GATE REALTY, INC. ("KGR"), who sold the home to the Plaintiffs.

The Complaint contains allegations that the home was "uninhabitable" because of defective dry wall

which allegedly was made in China and allegedly "sold, manufactured, distributed, imported and/or

supplied by the Defendants in violation of law" See Plaintiff's Complaint, pg. 7.

2)    On February 27, 2009, Defendant Keys Gate Realty, Inc. filed Motion to Dismiss (the original)

Complaint or In The Alternative to Abate alleging the Plaintiffs uncontroverted failure to comply

with §558.004, Florida Statute (2007). That Chapter requires that, "[i]n actions brought alleging a

construction defect, the claimant shall, at least 60 days before filing any action, or at least 120 days before filing an action involving as association representing more than 20 parcels, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter". Florida Statute §558.004 also states, "If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted". The Defendant's Motion to Dismiss Complaint or in the Alternative to Abate (KGR Motion to Dismiss) was filed on behalf of all of the named Defendants.[1]

3)   The Plaintiffs filed a Response to KGR's Motion to Dismiss Complaint declaring that the "sales Contract" for the purchase of the home does not qualify as a "contract" pursuant to Florida Statute §558.003 despite the clear inclusiveness of the language regarding contract defects based upon contractual disputes contained in Florida Statute §558.004(1).

4)   On March 17, 2009 the Plaintiffs also filed an Amended Class Action Complaint ("Amended Complaint").

5)   Section 558.003 declares that "a claimant may not file an action subjected to this chapter without *first* complying with the requirement of this chapter". If a claimant files the lawsuit "without first complying with the requirements" of Chapter 558, a court "shall abate the action, without prejudice" upon timely motion by a party and **"the action may not proceed until the claimant has complied with such requirements"** §558 .003, Fla. Stat. (2007), *See also*: Hebden v Roy A. Kunnemann Construction, Inc., So.2d, 2009 WL 38370, 34 Fla. Weekly, p 385 (4th DCA 2009). Compliance with the Act means compliance with certain pre-suit procedures, an "alternative dispute resolution mechanism" intended to "reduce the need for litigation as well as protect the rights of property owners" §558.001, Fla. Stat. (2007).

---

[1] In the Plaintiffs original complaint they alleged in Paragraph 6 that a Florida Corporation, Keys Gate Realty Inc. was the exclusive or captive real estate broker and was "controlled" by the principals of South Kendall Construction Corporation and Palm Isles Holdings LLC.

6) According to the Fourth District Court of Appeals, "Chapter 558 applies to actions involving a 'constructive defect' a term defined in Section 558.002(4)." <u>Hebden v Roy A. Kunnemann Construction, Inc.,</u> So.2d, 2009 WL 38370, 34 Fla. Weekly, p 385 (4th DCA 2009).

7) The contract provisions between the homeowner and KGR concern the realtors alleged knowing sale of a home containing a building defect ("Chinese Drywall Defect").  The Plaintiff asserts this fact by declaring in Paragraph 17 and Paragraph 97 that "Plaintiffs assert several claims seeking the recovery of damages arising out of Defendants' sale of a home containing defective drywall to the Plaintiffs".

8) Thus, to claim in response to KGR Motion to Dismiss or In The Alternative to Abate that somehow the "contract" to sell a home which is alleged to contain a building defect is somehow not covered by §558 is legally disingenuous to their own complaint allegations.

9) Therefore, the instant action should be abated until the Plaintiffs are consistent with the mandates of Section 558.

WHEREFORE, Defendant, KEYS GATE REALTY, INC., respectfully requests that this Court enter an Order Dismissing the complaint or in the alternative to abate this action until such time as the Plaintiffs have complied with the provision of the terms of the contract and granting such further relief that the Court considers just and proper.

Respectfully Submitted,

KIERAN P. FALLON, P.A.
*Attorney for the Defendants, KEYS GATE REALTY, Inc.*
436 S.W. 8th Street, Suite 200
Miami, FL 33130

By: _____
    Kieran P, Fallon, Esq.
    Florida Bar No.:345679

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing was provided, via ☑ First Class U.S.

Mail, ☐ facsimile transmission, and/or ☐ hand-delivery this ⟨O⟩ day of April, 2009 to:

Mark Blumstein, Esq.
The Blumstein Law Firm
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160
*Fax: 305.356.7539*

David Lichter, Esq.
Higer Lichter & Givner LLP
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160
*Fax: 305.933-0998*

Robert C. Josefsberg, Esq.
Podhurst Orseck, PA
25 W Flagler Street, Suite 800
Miami, Florida 33130
*Fax: 305.358-2382*

JAMES W. FLANAGAN, ESQ.
Schwartz & Horowitz P.L.C.
6751 North Federal Highway, Suite 400
Boca Raton, Florida 33487
*Fax: 561.367-1550*

Respectfully Submitted,

KIERAN P. FALLON, P.A.
*Attorney for the Defendants KEYS GATE REALTY, Inc.*
436 S.W. 8th Street, Suite 200
Miami, FL 33130
TEL: (305) 961-2900
FAX: (305)857-9239

By: _____
Kieran P. Fallon, Esq.
Florida Bar No. 345679

11

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT OF
FLORIDA IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

JASON HARRELL and MELISSA HARRELL,
Individually, on Behalf of their Minor Children
and on behalf of all others similarly situated,

CASE NO.: 09-08401 CA (40)

COMPLEX BUSINESS LITIGATION

*Plaintiffs,*

**CLASS REPRESENTATION**
**JURY TRIAL DEMANDED**

vs.

SOUTH KENDALL CONSTRUCTION
CORP., a Florida corporation; PALM ISLES
HOLDINGS, LLC, a Florida limited liability
company; KEYS GATES REALTY, INC., a
Florida corporation; BANNER SUPPLY CO.,
a Florida corporation; KNAUF
PLASTERBOARD TIANJIN CO., LTD., a
Foreign corporation; ROTHCHILT INT'L.,
LTD., a Foreign corporationl and DOES #1-
#10, Unknown Persons,



THE ORIGINAL
FILED ON:

APR 27 2009

IN THE OFFICE OF
CIRCUIT COURT DADE CO. Fl.

*Defendants.*

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT KEYS GATE REALTY, INC.'S MOTION
## TO DISMISS AMENDED COMPLAINT

Plaintiffs, JASON HARRELL and MELISSA HARELL, on behalf of their Minor Children

and all others similarly situated, submit the following in response to Defendant Keys Gate Realty,

Inc.'s ("KGR") Motion to Dismiss Amended Complaint, dated April 10, 2009 (the "Motion to

Dismiss"). As with the motion to dismiss KGR submitted with respect to Plaintiffs' initial

Complaint, KGR has once again failed to assert any basis to conclude that Plaintiffs have failed to

state a claim upon which relief may be granted and, accordingly, its request that Plaintiffs' claims

be dismissed should be denied. KGR's alternative request that Plaintiffs' claims against it should

H:\LIB\DOCS\40120\11209\CN5642.WPD

Podhurst Orseck, P.A.

75 West Flagler Street, Suite 800, Miami, FL 33130  Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  •  www.podhurst.com

CASE NO.: 09-08401 CA (40)

be abated is not supported by the statutory and contractual authority KGR relies upon: By their express terms, section 558.003, Fla. Stat., and the sales contract relied upon by KGR do not apply to KGR, a real estate broker. For these reasons, as set forth more fully below, the Motion to Dismiss should be denied in all respects.

## INTRODUCTION

Plaintiffs filed an Amended Complaint on March 17, 2009, asserting claims against the supplier of defective drywall, Banner Supply Co., that was manufactured in the People's Republic of China, imported into the State of Florida, and installed in home that were constructed and sold to Plaintiffs by the developer, South Kendall Construction Corp ("SKCC"). *See* Amended Complaint, dated March 17, 2009, at ¶¶ 1-7. KGR was the real estate broker that sold the house to Plaintiffs. *See id.* ¶ 5.

The drywall installed in the home sold by KGR to Plaintiffs is defective because it contains and emits toxins like sulphur, and sulphur compounds, including carbon disulfide, carbonyl sulfide and hydrogen sulfide within the residences, which cause the erosion or corrosion of various metals within the residences, disrupt or interfere with the operation of electronic equipment within said residences; and cause the destruction of personal property. *See* Am. Compl. ¶ 15. Plaintiffs assert several claims seeking the recovery of damages arising out of the Defendants' sale of a home containing defective drywall to Plaintiffs. *See id.* ¶¶ 29-62.

## STANDARD ON MOTION TO DISMISS

A motion to dismiss pursuant to Rule 1.140(b)(6) of the Florida Rules of Civil Procedure should not be granted unless, taking all well-pleaded allegations in the Amended Complaint as being

2

Podhurst Orseck, P.A.

CASE NO.: 09-08401 CA (40)

true, and drawing all reasonable inferences in favor of the Plaintiff, the Amended Complaint fails

to state claims upon which relief may be granted. *See Ralph v. City of Daytona Beach*, 471 So.2d

1, 2 (Fla.1983); *Orlando Sports Stadium, Inc. v. State ex rel. Powell*, 262 So.2d 881, 883 (Fla.1972);

*Conley v. Shutts & Bowen, P.A.*, 616 So.2d 523, 524-25 (Fla. 3d DCA 1993); *Emile v. Florida*

*Power & Light Co.*, 426 So.2d 1152, 1152 (Fla. 3d DCA 1983). In consideration of these standards,

the Motion to Dismiss should be denied

## ARGUMENT AND CITATION OF AUTHORITIES

### I.   KGR HAS NOT SHOWN THAT PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

KGR has failed to make a legally sufficient argument that demonstrates that the claims

Plaintiffs assert against it fail to meet the legal criteria in Florida for stating a claim upon which relief

may be granted. *See* Fla. R. Civ. P. 1. 140(b)(6). Because KGR has wholly failed to carry its

burden on this score, its request that any of Plaintiffs' claims be *dismissed* must be denied.[1]

### II.   SECTION 558.003, FLA. STAT., DOES NOT APPLY TO KGR AND THEREFORE DOES NOT SUPPORT THE ABATEMENT OF PLAINTIFFS' CLAIMS AGAINST IT

KGR also asks the Court to abate this action pursuant to section 558.003 of the Florida Code.

Section 558.003 generally requires that, before proceeding with a claim against a "contractor,"

"subcontractor," "supplier," or "design professional," the claimant give notice of a "construction

---

[1]To the extent KGR relies upon § 558.003, Fla. Stat., to support its argument that Plaintiffs' claims should be dismissed, even assuming the applicability of this statute to Plaintiffs' claims against KGR (which Plaintiffs dispute, as argued below), the statute only provides for "*abate[ment] . . . without prejudice*," but *does not* support dismissal. *See* § 558.003, Fla. Stat. (emphasis added). Dismissal of Plaintiffs' claims is therefore wholly unsupported.

Podhurst Orseck, P.A.

CASE NO.: 09-08401 CA (40)

defect." *See* § 558.002(5)(6)(9(10), Fla. Stat. (defining parties who are subject to the statute).[2]  In

the Amended Complaint, Plaintiffs allege -- and KGR does not dispute -- that KGR is a real estate

*broker*. *See* Am. Compl.¶ 5.[3]   Because KGR is *not* a "contractor", "subcontractor", "supplier" or

"design professional" -- as defined by section 558.003, the statute – by its express terms – *does not*

*apply*.  Accordingly, KGR's abatement request on this ground must be denied.

### III.   KGR IS NOT A PARTY TO THE SALES CONTRACT RELIED UPON BY KGR AND THEREFORE THERE ARE NO CONTRACTUAL GROUNDS SUPPORTING THE ABATEMENT OF PLAINTIFFS' CLAIMS AGAINST KGR

Just as there is no statutory ground to support the abatement of Plaintiffs' claims against

KGR, there are no contractual grounds supporting the abatement of Plaintiffs' claims against KGR.

In its fallback argument, KGR cites to a provision of the home sales contact between Plaintiffs and

Defendant South Kendall Construction Corp.  Just as section 558.003 does not apply to KGR

because KGR is not covered by its express terms, the sales contract between Plaintiffs and SKCC

likewise does not apply to KGR because it is *not* a party to that contract. *See Exhibit A* to Plaintiffs'

---

[2]Section 558.003 provides:

> A claimant may not file an action subject to this chapter without first complying with the requirements of this chapter. If a claimant files an action alleging a construction defect without first complying with the requirements of this chapter, on timely motion by a party to the action the court shall abate the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements.

§ 558.003, Fla. Stat.

[3]In ¶ 5, Plaintiffs allege that "KGR is a Florida corporation with its principal place of business in Miami-Dade County, Florida. KGR is the exclusive or captive *real estate broker* controlled by those principals of SKCC and/or PIH who sold homes to Plaintiffs and those similarly situated." Am. Compl. ¶ 5 (emphasis added).

Podhurst Orseck, P.A.

CASE NO.: 09-08401 CA (40)

Complaint at 1 (listing Plaintiffs and SKCC as the only parties to the contract). The conclusion that

the notice provision on Plaintiffs' sales contract does not apply to KGR is further reinforced by the

fact that, by its terms, the contractual notice provision *only* applies (if at all) to claims against the

"Seller," which is defined as SKCC. *See id. Nowhere* in the contract relied upon by KGR is KGR

defined as the "Seller." *See id.*

Because KGR is not a party to Plaintiffs' home sales contract with SKCC, because the notice

provisions applies only -- if at all -- to claims against the Seller (*i.e.*, SKCC), and because nowhere

in that contract is KGR defined as the Seller, the notice and delay provisions relied upon by KGR

do not support its argument that Plaintiffs' claims against it should be abated. KGR's abatement

request on this ground should therefore be denied.

## CONCLUSION

KGR has failed to make any argument that Plaintiffs fail to state claims upon which relief

may be granted and, therefore, KGR's request that Plaintiffs' claims be dismissed must be denied.

Similarly, by their clear terms, section 558.003, Fla. Stat., and the home sales contract between

SKCC and Plaintiffs *do not* apply to KGR and, therefore, there exists no legal basis to support the

abatement of Plaintiffs' claims against KGR. For these reasons, the Motion to Dismiss – including

KGR's request that Plaintiffs' claims be abated– must be denied.

WE CERTIFY that on this 27th day of April, 2009, a true and correct copy of the foregoing

was served by mail to all parties listed on the attached service list.

Podhurst Orseck, P.A.

CASE NO.: 09-08401 CA (40)

Respectfully Submitted,

HIGER LICHTER & GIVNER, LLP
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida  33160
Tel: (305) 933-9970
Fax: (305) 933-0998
David H. Lichter, Esq
Florida Bar No. 359122
dlichter@higlawyers.com
J. Joseph Givner, Esq.
Florida Bar No.850705
jgivner@hlglawyers.com

THE BLUMSTEIN LAW FIRM
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida  33160
Tel: (305) 356-7547
Fax: (305) 356-7539
Mark Blumstein, Esq.
Florida Bar No. 0090700
Mark@BlumsteinLaw.com

- and -

Podhurst Orseck, P.A.

CASE NO.: 09-08401 CA (40)

PODHURST ORSECK, P.A.
25 W. Flagler Street, Suite 800
Miami, Florida  33130
Tel:  (305) 358-2800
Fax:  (305) 358-2382
Robert C. Josefsberg, Esq.
Florida Bar No. 040856
riosefsberg@podhurst.com
Victor M. Diaz, Jr., Esq.
Florida Bar No. 503800
vdiaz@podhurst.com
Alexander Rundlet, Esq.
Florida Bar No. 0692301
arundlet@podhurst.com

By: _____
         Victor M. Diaz, Jr.
         Fla. Bar No. 503800

*Counsel for Plaintiffs*

Podhurst Orseck, P.A.

CASE NO.: 09-08401 CA (40)

## SERVICE LIST

LAW OFFICE OF KIERAN P. FALLON,
P.A.
436 S.W. 8th St., Suite 200
Miami, Florida 33130
Kieran P. Fallon, Esq.
Tel: (305) 961-2900
Fax:  (305) 857-9239

*Counsel for Defendant Keys Gate Realty, Inc.*

GUNSTER, YOAKLEY & STEWART, P.A.
One Biscayne Tower, Suite 3400
2 South Biscayne Blvd.
Miami, Florida 33130
Raymond V. Miller, Esq.
Tel: (3050) 376-6000
Fax: (305) 376-6910

*Counsel for Defendant Banner Supply Co.*

SCHWARTZ & HORWITZ
6751 N. Federal Highway, Suite 400
Boca Raton, Florida 33487
James W. Flanagan, Esq.
Steven G. Schwartz, Esq.
Tel:  561-395-4747
Fax: 561-367-1550

*Counsel for South Kendall Construction Corp.*
*and Palm Isles Holdings, LLC*

Podhurst Orseck, P.A.