**EXHIBIT G**

**TO**

**RESPONSE OF PLAINTIFFS' STEERING COMMITTEE TO BENCH
MEMORANDUM OF CERTAIN DEFENDANTS
REGARDING CHAPTER 558, FLORIDA STATUTES**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20510-CIV-MOORE

KARIN VICKERS, FELIX MARTINEZ, JENNY
MARTINEZ, JASON SANTIAGO, GENE
RAPHAEL, WALTER NIEMCZURA, and JIM
TARZY, individually, and on behalf of all others
similarly situated,

        Plaintiffs,

            v.

KNAUF GIPS KG, a German Corporation,
KNAUF PLASTERBOARD (TIANJIN) CO.,
LTD., a Chinese limited liability corporation,
KNAUF PLASTERBOARD (WUHU) CO. LTD.,
KNAUF PLASTERBOARD (DONGGUAN) CO.
LTD., BANNER SUPPLY CO., a Florida
corporation, ROTHCHILT INTERNATIONAL
LTD., a foreign corporation, TAYLOR
WOODROW COMMUNITIES AT VASARI,
L.L.C., a Florida corporation, and SOUTH
KENDALL CONSTRUCTION, CORP., a
Florida corporation,

        Defendants

_____/

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BANNER SUPPLY CO.'S MOTION TO STAY, MOTION TO ABATE OR, ALTERNATIVELY, MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## I. INTRODUCTION

The representative plaintiffs, Karen Vickers, Felix Martinez, Jenny Martinez, Jason
Santiago, Gene Raphael, Walter Niemczura and Jim Tarzy (hereafter the "Vickers Plaintiffs")
instituted litigation against the manufacturers of defective drywall, their American suppliers and
the plaintiffs' homebuilders to address the crisis facing these homeowners whose lives were

1

impacted and homes have been damaged through the installation of a defective product

constituting the very walls of their homes.     In its motion, Banner Supply Company ("Banner")

admits that it supplied the allegedly defective drywall in the plaintiffs' homes.   Banner Brf. at 4.

Nevertheless, Banner contends that plaintiffs' claims are implausible.   Banner's arguments

challenging the legal sufficiency of Plaintiffs' Amended Complaint range from asserting

inapposite disputes under Florida procedural law (not federal law) to substantive matters involving

disputed matters of fact (matters that the Court must accept as true given the procedural posture of

the case on a motion to dismiss under Rule 12(b)(6)).

Specifically, Banner argues 1) that the matter be stayed pending rulings by other courts in

other cases that do not share an identity of parties; 2) that abatement is appropriate under Chapter

558, Florida Statutes, until such time as Banner determines its response to the statutory notice

plaintiffs provided Banner coincident to the filing of the original complaint; 3) that a more definite

statement be alleged regarding Banner's activities; 4) that Banner can not as a matter of Florida

law be held strictly liable for structural improvements to real property; 5) that the economic loss

doctrine precludes plaintiffs' claims despite allegations of loss to other property; 6) that plaintiffs

have not met a purported heightened pleading standard applicable to their claim under the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA"); 7) that Banner cannot be held liable

under any theory of nuisance despite its admission of supplying plaintiffs with allegedly defective

drywall; 8) that plaintiffs' allegations are too conclusory to state a claim of unjust enrichment; 9)

that plaintiffs' claims in equity seeking injunctive relief and medical monitoring are improperly

joined and must be restated (not that plaintiffs have failed to state a claim); and 10) that for certain

Counts, plaintiffs have improperly pleaded an entitlement to attorneys' fees that should be stricken

only as to those challenged Counts.   Banner's arguments are misplaced and ineffective.[1]

---

[1]Although it is Banner's prerogative to respond to the Amended Complaint by challenging its legal sufficiency through motions practice, it bears mentioning that despite Banner's assertion that the pleading is too vague and ambiguous to be answered, on May 15, 2009, South Kendall Construction Corporation was able to file an ANSWER and Affirmative Defenses to the Amended Complaint, and even assert a crossclaim against Banner therein.   [Doc. #61].

For the reasons set forth below, Banner's motion to stay should be granted on the alternative grounds that the motion is premature, given the pendency of a motion before the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate this and other pending federal litigation involving the defendants' allegedly defective drywall.   That until the determination of whether consolidation is appropriate, and, if so, whether a master class action complaint is warranted so as to properly align all of the myriad parties and claims, logic dictates that staying the matter offers the highest judicial economy.

Should the Court decide not to stay the matter, Banner's alternative motions for abatement and dismissal are without merit and should be denied.

## II.  FACTUAL BACKGROUND

This is a class action of significant local, national and international importance.   The plaintiffs seek to represent a class of  "all owners and residents of residential homes in the State of Florida containing drywall manufactured, sold, distributed, or supplied by Defendants that emits excessive levels of sulfur."   Amended Complaint ¶125 [hereafter "A.Comp.¶__"].   Due to the breadth and scope of the problem caused by the defective drywall at issue scores of lawsuits have been spawned across the country.   Presently, this case and other similar actions are the subject of a motion to consolidate scheduled for a hearing before the JPML on May 27, 2009.  *See In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047, Notice of Hearing Session (J.P.M.L. April 23, 2009).[2]

---

[2]Available at http://www.jpml.uscourts.gov/HearingOrder5-27-09.pdf.

The essence of the Vickers Plaintiffs' claims is that the drywall supplied by Banner and used in the homes of Plaintiffs and the Plaintiff Class Members is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors, and causes corrosion ("the Defect") of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property"). A.Comp.¶1.

This Defect is latent and existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted.   There is no repair that will correct the Defect.   A.Comp.¶2.

As a result of each of the Defendants' conduct, Plaintiffs and Class Members have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of homes, Other Property, any materials contaminated or corroded by the drywall as a result of "off-gassing," incidental and consequential damages and equitable relief, including medical monitoring.   A.Comp. ¶¶3-4, 122-123.

Defendant Banner is responsible for the Plaintiffs' damages.   Banner exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the state of Florida.   Directly or indirectly through agents, and affiliates, Defendant Banner Supply's acts or omissions related to defective Drywall have injured Plaintiffs and Class Members.   A.Comp. ¶70.

Banner expressly admits to this conduct in its moving papers.   Specifically, Banner avows:

> Banner is but a mere supplier in a chain of merchants who
> distributed the allegedly defective drywall originally manufactured
> in China.

5

Banner Brf. at 4.

As a merchant in the chain of supply, the Amended Complaint articulates the ways in

which Banner is legally responsible for its conduct and the damage caused by the product it sold.

The Amended Complaint asserts claims specific to Banner under Strict Liability (Count IV); the

FDUTPA (Count V); Private Nuisance (Count XII); Unjust Enrichment (XIII); and for Equitable

and Injunctive relief and Medical Monitoring (Count XIV).   Banner challenges each and every

aspect of the Amended Complaint and all five (5) counts asserted against it.   As explained below,

Banner's arguments are without merit.

## III.  ARGUMENT

### A.      The Motion to Stay Should Be Granted Only Because this Action Is Likely to be Consolidated into an MDL, Where a Master Class Action Complaint Will be Employed that Will Likely Avoid Most of the Issues presented by the Instant Motion

Relying upon Florida state law precedent addressing the procedure of staying prior-filed

actions, Banner argues that this case should be stayed because of actions pending in foreign

jurisdictions.   As a diversity action, procedural issues faced by the Court are generally speaking a

matter of federal law, not state law as Banner suggests.   *See Burke v. Smith*, 252 F.3d 1260, 1265

(11th Cir. 2001); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).   Of the three actions referenced by

Banner, the *Burrus* action was dismissed by this Court on March 10, 2009;[3] and the other two

cases were either filed in the Middle District of Florida (*Allen*) or Miami-Dade Circuit Court

(*Harrell*).   Neither of the pending actions share an identity of parties or class definitions with this

case.   Accordingly, the substantial similarity asserted by Banner is absent.

---

[3]*See* PACER Docket Report, Docket #9 (S.D.Fla. March 10, 2009)(Moore, J.).

Notwithstanding the disparity between the actions referenced by Banner and the present case, the Vicker Plaintiffs agree with Banner that a stay of this action is appropriate.   Whereas Banner asserts that a stay should be imposed to await the outcome of the *Allen* and *Harrell* actions (a point with which plaintiffs disagree), Plaintiffs recognize that judicial economy will be realized if a stay is imposed until such time as the Judicial Panel on Multidistrict Litigation determines whether and where an MDL regarding defective drywall should be centralized.   If an MDL is formed, the transferee court would likely require that the pleadings be streamlined through the use of a master class action complaint.   Should such a procedural administrative device be employed,[4] then much of the bases for Banner's motion will be negated.   Additional pleadings addressing the alignment of the parties is likely to occur avoiding much of Banner's current challenges to the sufficiency of the pleadings.   Further, the focus of the transferee court will likely be on one class action, not several, making resolution of the class issue in the MDL an appropriate procedural determination to await.[5]

Accordingly, for the alternative reasons set forth above, a stay should be temporarily

---

[4]*See In re Propulsid Products Liability Litigation*, 208 F.R.D. 133, 141 (E.D.La. 2002)("Master complaints are often used in complex litigation,although they are not specifically mentioned in either the Federal Rules of Civil Procedure or in any federal statute.").

[5]Absent a judgment or other similar advanced proceeding by a state court, it would not be appropriate for a federal court to refrain from administering a class action simply because a similar class action is proceeding concurrently in a state forum.   *See Owen v. Labor Ready Inc.*, 146 Fed.Appx. 139, 141-42 (9th Cir. 2005)(District court abused its discretion in granting stay of consolidated class actions brought by employees against employer, alleging failure to pay overtime compensation in violation of Fair Labor Standards Act (FLSA), under *Colorado River* doctrine, where exceptional circumstances did not exist warranting surrender of federal court jurisdiction to concurrent state litigation.).   Federal courts are usually statutorily obligated to exercise the jurisdiction that Congress has bestowed upon them.   *See Western Auto Supply Co. v. Anderson*, 610 F.2d 1126, 1127 (3d Cir.1979).

imposed upon this and other related actions.[6]

---

[6]To further address this issue, the Vickers Plaintiffs have separately filed an Omnibus Motion for Extension of Time for the Parties to Hold a Scheduling Conference and Related Case Management Relief for several related actions filed by the undersigned counsel.

Banner's Motion to Abate is Moot

Under Florida Statues section 558.003[7], if a claimant files an action claiming a

construction defect before complying with the notice requirements, a court must abate the action.

Plaintiffs do not disagree with the state of Florida law on this matter.   Nonetheless, as set forth in

Banner's motion to abate, plaintiffs provided notice to Banner on March 3, 2009.   Consequently,

the 60 day period for plaintiffs to refrain from proceeding with this action expired no later than

May 4, 2009.   From that day forward, plaintiffs were permitted to proceed with their claim.

Consequently, Banner's motion to abate (which was filed <u>after</u> the abatement period had already

expired) must be denied.

Plaintiffs Have Well Articulated Their Claims Under The Notice Pleading Standard of the
Federal Rules of Civil Procedure

---

[7]Florida Statues §558.003 provides as follows:

> **Action; compliance**–A claimant may not file an action subject to
> this chapter without first complying with the requirements of this
> chapter.   If a claimant files an action alleging a construction defect
> without first complying with the requirements of this chapter, on
> timely motion by a party to the action the court shall abate the
> action, without prejudice, and the action may not proceed until the
> claimant has complied with such requirements.

Banner feigns an inability to understand the allegations of the Amended Complaint.
Banner is essentially challenging the notice pleading standards applicable to all federal
complaints.   Fed.R.Civ.P. 8(a)(2) requires only "a short and plain statement of the claim showing
that the pleader is entitled to relief."   "Specific facts are not necessary; the statement need only
give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v.
Pardus*, 127 S.Ct. 2197, 2200 (U.S. 2007)(citations omitted).   Yet, Banner contends that after 281
separate paragraphs, spanning 65 pages, with Five Counts addressed either specifically to Banner
or all the defendants (identified above), the Amended Complaint should be even more prolix, more
verbose and more periphrastic as to Banner's role in the litigation.   *See* Banner Brf. at 10-13,
*citing* Fed.R.Civ.P. 10(b) and 12(e).

Banner's Motion to Dismiss directly contradicts its counterfeit lapse in comprehension.[8]
Therein, the defendant had no trouble piercing through the factual assertions and claims directed
against it in the Amended Complaint.   In fact, Banner admits to its essential role in this litigation
as a "supplier in a chain of merchants who distributed the allegedly defective drywall originally
manufactured in China."   Banner Brf. at 4.   Banner's motion is proof that Banner is capable of
understanding and framing a response to the pleading after all.   Another defendant has been able

---

[8]Banner's spurious accusation that the Amended Complaint is a "shot gun" complaint is
utterly without foundation or support.   "The typical shotgun complaint contains several counts,
each one incorporating by reference the allegations of its predecessors, leading to a situation where
most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal
conclusions."   *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293,
1295 (11th Cir. 2002).   In this case, the Amended Complaint contains 281 paragraphs and
fourteen Counts, NONE of which incorporate by reference every paragraph that precedes it.
*Compare Id.*   Banner's factual contentions on this point are devoid of the evidentiary support
required by Fed.R.Civ.P. 11(b)(3).   As its arguments are colored by fiction at best, or falsehoods
at worst, they should be rejected outright.

to answer the Amended Complaint.

As the legal theories of Plaintiffs' claims revolve about the simple fact that Banner suppled the drywall in plaintiffs' homes, which fact Banner readily concedes, there is no reason for yet another round of pleading.    The present pleading is sufficient.    Discovery should be permitted to proceed to flesh out any of the other disputes Banner raises.    Our jurisprudence of notice pleading long ago rejected the common law pleading battles now espoused by Banner that harken back to Charles Dickens' Bleak House.    Accordingly, Banner's challenges to the sufficiency of the factual allegations of the Amended Complaint should be denied.

### D.    Plaintiffs Have Stated a Claim Under Florida Law for Strict Liability (Count IV)

In 1976, the Supreme Court of Florida recognized and adopted §402A of the Restatement (Second) of Torts.  *See West v. Caterpillar Tractor Co.*, 336 S.2d 80 (Fla. 1976).   Since then, strict liability has become a cornerstone of Florida law.   As the Court in the *West* noted, "Strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to human being."  *Id.* at 86.   Over time, Florida's strict liability doctrine has been expanded "to others in the distributive chain including retailers, wholesalers, and distributors."  *Plaza v. Fisher Development, Inc.*, 971 S.2d 918, 920 (Fla. 3d D.C.A. 2007).

Banner relies upon the *Plaza* decision to excuse itself from liability under the strict liability doctrine.   Banner relies on the seemingly exculpatory observation by the *Plaza* court, "that principles of strict liability are not applicable to structural improvements to real property."  *Plaza*, 971 S.2d at 919.   Banner argues that the defective drywall is no longer a product but a structural improvement to real property and therefore outside the doctrine of strict liability.   Banner's

11

arguments, however, overlook a significant exception to the structural improvement "carve out"

from the doctrine of strict liability.

In *Jackson v. L.A.W. Contracting Corp.*, 481 S.2d 1290 (Fla. 5th D.C.A. 1986), the court

recognized an exception to the rule that strict liability does not apply to improvements to real

property. In that case, the contractor had repaired, re-coated and re-stripped a private road on

which the plaintiffs were involved in a car accident. The court recognized the carve out of the

strict liability doctrine for improvements to real property but articulated the following exception:

> Of course, this principle is inapplicable where the injuries result not
> from the real property as improved by the alleged defective product
> but directly from a defective product manufactured by defendant
> which product may have itself been incorporated into the
> improvement of the realty before the injury from the product
> occurred.

*Id.* at 1292. *See also Federal Insurance Co. v. Bonded Lightening Protection Systems, Inc.*, 2008

WL 5111260, *5 (S.D.Fla. Dec. 3, 2008)(Marra, J.)(observing that Florida law recognizes an

exception to the rule that strict liability does not apply to improvements to real property); 41A

Florida Jurisprudence 2d, Products Liability §27 (2009)("The concept of strict liability does not

apply to structural improvements to real property. However, this principle is inapplicable where

the injury results not from the real property as improved by the alleged defective product but

directly from a defective product manufactured by the defendant, which product may have itself

been incorporated into the improvement of the realty before the injury from the product

occurred.").

The exception to the carve out of strict liability for improvements to real property was

approached by the Florida Supreme Court in *Edward M. Chadbourne, Inc. v. Vaughn*, 491 S.2d

551 (Fla. 1986). In that case, the Vaughns were involved in a vehicular accident when their car

encountered a drop-off in the pavement causing Mrs. Vaughn to lose control of the vehicle.   The

Vaughns had sued Chadbourne under negligence, warranty and strict liability for its role in

constructing the road upon which the Vaughn's vehicle was traveling.[9]   The Supreme Court

characterized the parties' arguments as follows:

> Vaughn argues that Chadbourne manufactured paving materials,
> which later happened to be incorporated into a roadway.
> Chadbourne, on the other hand, argues that it did not sell paving
> materials, but rather delivered a constructed road.   It was the road
> that was being used and not the raw material; no injury was caused
> by paving material, but was incurred while using the road.

*Id.* at 553.

The Supreme Court of Florida accepted Chadbourne's argument that the public road was

not a product for purposes of the application of strict liability doctrine.   In so doing, however, the

Supreme Court identified examples of improvements to real property that could be the subject of a

strict liability claim.   In particular, the Supreme Court of Florida stated:

---

[9]The First District Court of Appeal, similarly recognized this exception to the carve out of
the strict liability doctrine.   In its premonitory ruling, the Court of Appeals held:

> While no Florida case has explicitly discussed whether a product
> first manufactured and then incorporated into an improvement into
> real property falls under Section 402(a) coverage, *Hardin, Halpryn*
> *& Gory* imply that the manufacturer of such a product can be held
> strictly liability.

*Vaughn v. Edward M. Chadbourne, Inc.*, 462 So.2d 512, 515 (Fla. 1st D.C.A. 1985), *vacated on*
*other grounds*, 491 So.2d 551 (Fla. 1986).

> This is not to say that Chadbourne would in every sense or instance
> be immune to a strict liability suit for the manufacturer and sale of
> asphalt mix or even a roadway.   While we do not today decide
> these issues, assume, for instance, that Chadbourne sold bags of
> asphalt mix in hardware or home repair stores and that the Vaughns
> purchased a bag of mix, and, though they used it consistent with its
> directions, they nevertheless were burned by the mix or <u>overcome
> by fumes</u>.  *In such a situation it might be possible to argue
> successfully that the asphalt is a product subject to strict liability
> standards.*   Similarly, assume Chadbourne held itself out to the
> public as a paver of private roadways.   If Vaughn had Chadbourne
> prepare a pave a private roadway or driveway that later disintegrated
> during a rainstorm, with the remains of the road subsequently
> entering and polluting Vaughn's water supply, a strict liability
> action might also be proper.

*Id.* at 553 n. 1 (emphasis added).   The hypothetical proposed by the Florida Supreme Court is a

paradigm example of the situation presented by the Banner-supplied Chinese drywall at issue here.

Defendant Banner admits to have supplied allegedly defective drywall that was installed in class

members' homes.   Unlike the paving material at issue in *Chadbourne*, due to the latent defect

within the drywall, class members have been "overcome by fumes."    The fumes from the

defective drywall (not plaintiffs' homes) have seriously damaged other property in the class

members' homes (such as air conditioning coils and other appliances) and necessitated a medical

monitoring program.   As such, Banner should be subject to strict liability standards for supplying

the latently defective drywall that became incorporated into plaintiffs' homes.  *See Adobe*

*Building Centers, Inc. v. Reynolds*, 403 So.2d 1033 (Fla. 4th D.C.A.), *review denied*, 411 So.2d 380

(Fla. 1981)(applying strict liability to supplier of defective stucco material that was applied to

residential homes).

        As the Vickers plaintiffs' strict liability theory fits precisely within the exception to the

carve out of the strict liability doctrine that Banner relies upon, Banner's exculpatory argument

fails as a matter of law.   Its motion to dismiss on these grounds is without merit and should be

14

denied.

> **E.**    **Plaintiffs' Strict Liability Claim is not Barred by the Economic Loss Rule Because Plaintiffs Have Alleged Some Modicum of Physical Injury and Damage Caused to Other Property by Banner's Defective Drywall**

Pursuant to Fed.R.Civ.P. 12(b)(6), Banner contends that the Vickers plaintiffs have also failed to state a strict liability claim on the grounds that the economic loss doctrine precludes any recovery. Banner's argument is premised upon a distorted misunderstanding of the factual allegations of the complaint – that the plaintiffs have alleged no physical injury or damage to other property caused by the defective drywall. Plaintiffs, however, have precisely alleged exactly such contrary facts. And, on a motion to dismiss, Banner has abandoned its right to challenge such facts by admitting them to be true along with any reasonable related inferences to be drawn therefrom. *See Leib v. Hillsborough County Public Transp. Com'n*, 558 F.3d 1301, 1305 (11th Cir. 2009); *Erickson,* 127 S.Ct. at 2200. Without its flawed anchoring premise, Banner's argument simply dissolves and floats away.

The "economic loss doctrine" is a judicially created doctrine that was originally adopted by the Supreme Court of Florida in its seminal opinion of *Florida Power & Light Co. v. Westinghouse Elec. Co.*, 510 So.2d 899 (Fla. 1987). The economic loss doctrine was recently fully re-examined in *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004) on certified questions from the United States Court of Appeals for the Eleventh Circuit due to "confusion about the scope of this doctrine." *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 344 F.3d 1136 (11th Cir. 2003). Therein, the Supreme Court of Florida held that the doctrine "bars a negligence action to recover solely economic damages only in circumstances where the parties are either in contractual privity or the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies."

15

*Id.*, 891 So.2d at 534.  As to the latter application, the Court found the doctrine   germane only in instances when a defective product does cause damages to the product but causes no personal injury or damage to other property.  *Id.*

Omitting any reference to *Indemnity Ins.* or subsequent Supreme Court of Florida cases, Banner focuses principally on the much criticized decision of *Casa Clara Condominium Ass'n v. Charley Toppino and Sons, Inc.*, 620 So.2d 1244 (Fla. 1993)(a 4-3 decision, accompanied by a well reasoned dissent).   Therein, the plaintiff homeowner sought to enhance its contractual claims by asserting negligence theories against a builder supplier of defective concrete.   The Supreme Court of Florida found that "[t]he homeowners are seeking purely economic damages – no one has sustained any physical injuries and no property, other than the structures built with [defendant's] concrete, has sustained any damage."  *Id.* at 1246.  Against these facts, the court applied the economic loss rule, "which prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself."  *Id.* The court further rejected the plaintiff's arguments that characterized their loss into components of the home, as opposed to the home in its entirety.  *Id.* at 1247.[10]    This identical reasoning was adopted by the court in *Fishman v. Boldt*, 666 So.2d 273 (Fla. 4th D.C.A. 1996), the only other authority relied upon by Banner.

---

[10]The majority   held: "Generally, house buyers have little or no interest in how or where the individual components of a house are obtained.    They are content to let the builder produce the finished product, *i.e.*, a house.    These homeowners bought finished products--dwellings--not the individual components of those dwellings.    They bargained for the finished products, not their various components.    The concrete became an integral part of the finished product and, thus, did not injure "other" property."  *Id.*

Following *Casa Clara*, the Supreme Court of Florida had another opportunity to revisit the economic loss doctrine in a case where a lessee sued its lessor for damages caused to computers stored in the leased premises during renovations conducted by the lessor. *See Comptech Intern., Inc. v. Milam Commerce Park, Ltd.*, 753 So.2d 1219 (Fla.1999). Therein the Supreme Court criticized the *Casa Clara* opinion and other decisions as presenting "the danger in an unprincipled extension of the rule." *Id.* at 1225. The Court was especially critical of the *Casa Clara* court's expansive interpretation of the term "other property" and suggested that "the economic loss rule cannot be used as a barrier to legitimate causes of action." *Id.* at 1225-26. With this backdrop in place, the court determined that the computers were "other property" and found the plaintiffs' claim fit within the exception to the economic loss doctrine.

Most recently, in the *Indemnity Ins.* case, the Supreme Court of Florida reaffirmed the economic loss doctrine with the following caveat: "However, we expressly note that the "other property" exception to the products liability economic loss rule remains viable." *Indemnity Ins.*, 891 So.2d at 543. In so doing, the Court gave no credence to *Casa Clara*. Instead, it referenced *Comptech, supra,* and *Southland Construction, Inc. v. Richeson Corp.*, 642 So.2d 5 (Fla. 5th D.C.A. 1994), a case at odds with *Casa Clara*'s interpretation of other property. The *Indemnity Ins.* Court described the facts of *Southland* thus: "concluding that "other structures" not involved in the building project that were damaged by the failure of the retaining wall, i.e., the adjoining pool deck and a different wall, were other property."

In contrast to the facts asserted by the plaintiffs in *Casa Clara* or *Fishman*, the Vickers plaintiffs, in line with *Comptech* and *Southland*, have asserted far more extensive damage to other property in  plaintiffs' homes. The fumes emitted from the defective drywall supplied by Banner corrodes metal not just in the tubing, wiring and receptacles of plaintiffs' homes (which

17

components would fall under the *Casa Clara* rubric but not the *Southland* rubric), but in the air

conditioner coils outside the homes and other property used inside plaintiffs' homes (*e.g.*,

refrigerator coils, microwaves, utensils, computers and electronic appliances such as stereo

equipment and televisions). A.Comp. ¶1.   As the plaintiffs have expressly alleged damage to

"other property," Banner can not be heard to challenge those facts as being a "clever" contrivance.

Banner Brf. at 17.   Banner has admitted these allegations to be true.[11]   Also, Banner's effort to

shift its burden on a motion to dismiss to the plaintiffs by contending that plaintiffs should have

alleged that they purchased their stereos, televisions, microwaves, refrigerators, etc.,

independently from the purchase of their homes is specious.   *See Comptech*, 753 So.2d at 1226,

*citing, Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875 (1997).[12]   When viewed in the

best light, such an a *priori* inference is more than plausible without resort to the imposition of the

heightened pleading obligation Banner seeks to foist upon the plaintiffs.

---

[11]   Banner's argument attempts to extend the *Casa Clara* component rubric beyond any
realistic limitation.   In *Casa Clara*, the court was attempting to create a self-defined defense
against the unwarranted extension of contractual damages into the tort realm.   The court sought to
prohibit a plaintiff from circumventing   the contractual relationship by bringing an action in tort.
But the bounds imposed by the Supreme Court of Florida recognized that a tort remedy must be
made available when the supplier of a product breaches the fundamental "duty of reasonable care
[which] thereby encourages citizens to avoid causing physical harm to others."   *Casa Clara*, 620
So.2d at   1246.   Because *Casa Clara* contemplated tort claims like those evident here, Banner's
attempted extension of the *Casa Clara* component rubric is unfounded (both legally and factually).
Indeed, the Supreme Court of Florida has endorsed less restrictive interpretations of "other
property" in cases factually approaching this case.   *See Indemnity Ins., supra.*

[12]The *Comptech* Court observed: "In Saratoga Fishing, the owner of a fishing boat brought
a products liability action against the builder and designer of the boat and its hydraulic system,
alleging that the system was defectively designed. The boat caught fire and sank, resulting in a loss
of equipment, including an extra skiff, nets, and spare parts, which were added to the boat after it
was originally purchased. The Court found that the boat itself was the "product" and the equipment
added after the manufacturer sold it was "other property." Thus, the Court held the plaintiff could
recover for physical damage caused by the defective "product" to the "other property."

Moreover, plaintiffs have also alleged a physical aspect to the damage caused by the defective drywall.   Plaintiffs have alleged exposure to the sulfide gases emitted from Banner's defective drywall, which gases are proven hazardous, dangerous or toxic substances.   A.Comp. ¶275.   This exposure has placed plaintiffs at a signficantly increased risk of contracting a serious latent disease that may be prevented by timely diagnostic surveillance.   A.Comp. ¶¶277, 279. Banner denies these allegations by disclaiming them, "they [plaintiffs] have failed to allege that anyone has sustained any physical injury".   Banner Brf. at 16.   These alleged facts, however, must be taken as true.   When viewed in their best light, these allegations present a clear exception to the *Casa Clara* rubric.

Accordingly, Plaintiffs' Amended Complaint alleges facts that place this action into the exception to the economic loss doctrine.   Banner's motion to dismiss for failure to state a claim is without merit and should be denied.

**F.      Plaintiffs' FDUTPA Claim (Count V) Meets the Short and Plain Pleading Standard That is Applicable to Such a Claim**

Banner mistakenly contends that Plaintiffs' FDUTPA claim are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b), applicable to claims of fraud.   As evident from the authority relied upon by Banner, *Sundance Apartments I, Inc. v. General Electric Capital Corp.*, 581 F.Supp.2d 1215 (S.D.Fla. 2008)(Altonaga, J.), only a short and plain statement of the statutory claim is required.   *Id.* at 1219, *citing* Fed.R.Civ.P. 8(a)(2).   Once again, Banner overreaches.

The Vickers Plaintiffs made specific allegations applicable to Banner in Count V of the Amended Complaint.   Therein, plaintiffs stated that "providing, offering, or distributing of drywall by [Banner] to Plaintiffs and Class Members is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes."   A.Comp. ¶197.   Plaintiffs further alleged that Banner's

19

"acts and omissions as well as [its] failure to use reasonable care in this matter as alleged in this Complaint [*See* Section II, *supra* at 3-5] equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendants' trade or commerce pursuant to section 501.204, Florida Statutes." A.Comp. ¶198. Finally, Plaintiffs alleged that the "unconscionable, illegal, unfair and deceptive acts and practices of Defendants violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiffs and Class Members have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes" A.Comp. ¶198.

There is nothing vague or speculative about these allegations. Rather, they provide a short and plain statement of the claim against Banner as required by Rule. Thus, the motion to dismiss Count V should be denied.

### G.      Plaintiffs Have Stated a Claim for Nuisance (Count XII)

Banner challenges plaintiffs' private nuisance claims based upon authority related to asbestos and other product liability cases from outside of Florida. *See City of Manchester v. Nat'l Gypsum Co.*, 637 F.Supp. 646 (D.R.I. 1986); *Tioga Public School District #15 v. U.S. Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993); *Gelman Sciences, Inc. v. Dow Chemical Co.*, 508 N.W. 2d 142 (Mich. App. 1993); *DiCarlo v. Ford Motor Co.*, 409 N.Y.S.2d 417 (N.Y.A.D. 1978). These courts denied plaintiffs the right to recover in nuisance for a product that was not in the control or possession of the defendants when the nuisance occurred.

Plaintiffs have found no controlling case in Florida on this point. The *nisi prius* court in *Penelas v. Arms Technology, Inc.*, 1999 WL 1204353 (Fla. Miami-Dade Cty Cir.Ct. Dec. 13, 1999), however, accepted the rationale of these cases. In *Penelas*, the Mayor of Miami sued gun manufacturers and others under various theories, including nuisance. The court dismissed the

20

nuisance theory on the grounds that strict liability and negligence supplant nuisance claims for

manufacturers and suppliers of defective products.   The *Penelas* court held:

> Finally, the County has failed to provide this Court with any legal
> authority supporting a cause of action based on nuisance against the
> manufacturer of a product. Public nuisance does not apply to the
> design, manufacture, and distribution of a lawful product. A
> separate body of law (strict product liability and negligence) has
> been developed to apply to the manufacture and design of products.
> The public nuisance cases cited by the County are not persuasive
> because those cases involve statutory violations which
> governmental entitles are entitled to abate, or violations involving a
> direct connection to real property owned or operated by the
> government entity. The County provided no cases which support
> such a right against manufacturers of products. In fact, the case law,
> albeit outside of Florida, is to the contrary. *See, Tioga Public School
> Dist. v. United States Gypsum Co.,* 984 F.2d 915 (8th Cir.1993);
> *Bloomington v. Westinghouse Elec. Corp.,* 891 F.2d 611 (7th
> Cir.1989). Furthermore, a party cannot be held liable for nuisance
> absent control of the activity which creates the nuisance. Here, the
> nuisance is the criminal or reckless misuse of firearms by third
> parties who are beyond the control of the defendants. Because
> defendants have no ability to control the misconduct of these third
> parties, nuisance does not apply for that reason as well.

*Penelas*, 1999 WL 1204353 at *4.   In essence, the logic of the *Penelas* court would allow blanket

immunity to any manufacturer of a product from a claim sounding in nuisance.[13]   Plaintiffs

submit that the reasoning of the *Penelas* court and the other cases relied upon by Banner do not

accurately reflect Florida law.

   For starters, manufactured items can be a nuisance if they significantly and unreasonably

interfere with public rights and interests.  *See, e.g., Bruce v. Malloy*, 7 So. 2d 123, 126 (Fla. 1942)

("perfectly lawful acts of manufacture" can be nuisance if put to illegal use).

---

[13]

Further, *sic utere tuo ut alienum non laedas* (every person should so use his own property

as not to injure that of another) has long been the law in Florida. *See Jones v. Trawick*, 75 So.2d

785, 787 (Fla. 1954). Adjunct to this maxim is the common law understanding that anything that

renders the ordinary use of one's property or its physical occupation uncomfortable is a nuisance.

*Id.* And Florida recognizes traditional common law causes of action unless displaced by

legislative enactments. *See Kitchen v. K-Mart Corp.*, 697 So.2d 1200, 1207 (Fla. 1997).

Where no pronouncement of the common law is readily available, the Supreme Court of

Florida has often referred to or adopted the Restatement (Second) of Torts for its source of

traditional common law causes of action. *See, e.g., Kitchen, supra* (adopting §390 re: negligent

entrustment); *West, supra* (adopting §402A re: strict liability). In the context of liability for

nuisance by a supplier such as Banner, §834 of the Restatement (Second) of Torts recognizes the

common law responsibility of a person whose activities cause interference with others' properties

even when that person no longer has control of the instrument.

Section 834 states:

Persons Carrying on an Activity

> One is subject to liability for a nuisance caused by an activity, not
> only when he carries onthe activity but also when he participates to
> a substantial extent in carrying it on.

Restatement (Second) of Torts §834 (1979).

Comment e to §834 further explains the continuing liability for harmful physical

conditions:

> Activities that create a physical condition differ from other activities
> in that they may cause an invasion of another's interest in the use
> and enjoyment of land after the activity itself ceases. When the
> invasion continues only so long as the activity is carried on, a person
> who ceases to have any part in the activity is not liable for the

continuance of the invasion by others. *But if the activity has resulted in the creation of a physical condition that is of itself harmful after the activity that created it has ceased, a person who carried on the activity that created the condition or who participated to a substantial extent in the activity is subject to the liability for a nuisance, for the continuing harm.* His active conduct has been a substantial factor in creating the harmful condition and so long as his condition continues the harm is traceable to him. *This is true even though he is no longer in a position to abate the condition and to stop the harm. If he creates the condition upon land in his possession and thereafter sells or leases it to another, he is subject to liability for invasions caused by the condition after the sale or lease as well as for those occurring before.* When the vendor or lessor has created the condition his liability continues until the vendee or lessee discovers it and has reasonable opportunity to take effective precautions against it.

Restatement (Second) of Torts §834, comment e (1979)(emphasis added).

The reasoning of Comment e should be adopted here.   Manufacturers and suppliers of products have responsibility to assure consumers that their products do not interfere with reasonable enjoyment of the consumer's property.   Such reasoning has been adopted by other jurisdictions.   A Wisconsin court has held that a purchaser can state a nuisance claim directly against a manufacturer.   *See Northridge Co. v. W.R. Grace & Co.*, 205 Wis.2d 267, 556 N.W.2d 345 (App.1996) (finding asbestos constituted a nuisance).   Applying the longstanding rule that "one who has erected a nuisance will be responsible for its continuance, even after he has parted with the title and the possession," *Lohmiller v. Indian Ford Water-Power Co.*, 51 Wis. 683, 8 N.W. 601, 602 (1881), the court held that "manufacturers can be liable for a nuisance long after they relinquish ownership or control over their polluting products." *Northridge*, 556 N.W.2d at 352. *See also Friends of the Sakonnet v. Dutra*, 738 F.Supp. 623, 633-34 (D.R.I. 1990)(former septic tank owner liable for past discharges).

Without direct guidance from the Supreme Court of Florida and only one *nisi prius* court

23

decision on point, this Court will have to predict what that high court would decide. *See Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997). Since Florida abides by traditional common law claims, the nuisance theory alleged by the Vickers plaintiffs should be found to state a claim under Florida law. Defendant's motion to dismiss should be denied.

### H.   Plaintiffs Have Adequately Pleaded a Claim for Unjust Enrichment (Count XIII)

Banner moves to dismiss Count XIII of Plaintiffs' Amended Complaint on factual grounds. Banner acknowledges that plaintiffs have properly asserted the three elements of a claim for unjust enrichment, *i.e.*, "1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; 2) defendant voluntarily accepts and retains the benefit conferred; and 3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Banner Brf. at 23, *quoting, Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So.3d 400, 400 (Fla. 3d DCA 2009), *review denied*, 2009 WL 690288 (Fla. Mar 16, 2009). Banner simply challenges the factual allegations related to the first element – that plaintiff conferred a benefit on the defendant.

In regards to the first element, plaintiffs alleged, "Defendants [Banner] received monies as a result of Plaintiffs and Class Members' purchases of Defendants' defective drywall, or purchase of homes containing drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members." A.Comp. ¶263. These facts, coupled with plaintiffs' allegations described above, *see* Section II, *supra* at 3-5, lead to the inescapable conclusion that Banner knew that the drywall it supplied to plaintiffs' builders would be installed in plaintiffs' homes. Plaintiffs paid their builders for their homes containing Banner's drywall installed, which benefit flowed to Banner. *Id.*

24

Where such facts are expressly alleged, in the current procedural posture of this case, the facts are assumed to be true. In *Peter F. Merkle, M.D., P.A. v. Health Options, Inc.*, 940 So.2d 1190 (Fla. 4th D.C.A. 2006), *review denied*, 962 So.2d 336 (Fla. 2007), the court was confronted with an appeal from an order dismissing the plaintiff's unjust enrichment claim. The plaintiff provided emergency medical services to the HMO defendants' subscribers and the plaintiff claimed that the Defendants' reimbursement rates for these service were illegal. The HMOs denied that they received any benefit from the plaintiff. *Id.* at 1194. The district court agreed with the HMOs and found as a matter of law that the emergency room patients, not the HMOs were benefitted by the plaintiff. The Court of Appeals reversed, finding instead:

> The trial court should not have considered the ultimate merits of Merkle's unjust enrichment claim a the motion to dismiss stage. Merkle alleged facts sufficient to support its argument that Merkle's treatment of the subscribers conferred a benefit on the HMOs.

*Id.* at 1199.

The *Merkle* case is more akin to the present case than *Extraordinary Title*. Just as in *Merkle*, plaintiffs have alleged facts that the payment for their drywall or homes containing Banner's drywall conferred a benefit on the Defendant.

Banner relies on *Extraordinary Title*, but that case is distinguishable. In *Extraordinary Title*, the plaintiff sued the power company and its corporate parent for collecting taxes the power company expected to pay but due to accounting practices that included its corporate parent's financials, refunds were not obtained and therefore not returned to the plaintiff. *Extraordinary Title*, 1 So.3d at 400-401. The court dismissed plaintiff's unjust enrichment claim because the corporate parent "provided no services to Plaintiff." *Id.* at 404. Unlike the power company's parent company, Banner provided a service to plaintiffs by supplying the drywall that was installed

in plaintiffs' home.   Accordingly, *Extraordinary Title* is inapposite.

Under the far different factual pattern present in this case, dismissal is unwarranted. Plaintiffs have adequately pleaded a claim for unjust enrichment against Banner.

### I.    Plaintiffs' Claims for Injunctive Relief (Count XIV) are Properly Pleaded

Banner seeks to avoid plaintiffs' claims in equity, including medical monitoring, as pleaded in Count XIV, by renewing its technical pleading arguments.   Banner accuses plaintiffs of violating Fed.R.Civ.P. 10(b), not because the pleadings were inadequate to place Banner on notice of the claims, but instead on the grounds that the pleading should be broken down into two "separate and distinct claims."   Banner Brf. at 27.   Again, Banner contends that the 65 page complaint is not long enough; more is needed.

Plaintiffs disagree that adding more counts to the complaint will effect Banner's intransigence or reluctance to answer the complaint.   Instead, Plaintiffs submit that their factual allegations are more than sufficient to support the legal theories advanced in Count XIV.   *See L.J. v. Broward County School Bd.*, 2007 WL 1695333, *5 (S.D.Fla. June 8, 2007)(Moore, J.)("[I]t is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.")(citations omitted).   Nevertheless, if the Court deems it necessary, Plaintiffs are readily able and willing to further plead their claims in a manner that fully satisfies Banners' current insistence.

### J.    Plaintiffs' Demand for Attorneys Fees   is Consistent with the Common Fund Theory of Federal Law

Banner moves to strike Plaintiffs' request for attorneys fees from Counts IV, V, VII, XIII,

and XIV (those counts specifically applicable to Banner).   Banner has failed to meet the

requirements of Fed.R.Civ.P. 12(f).   As this Court recognized in *Perez-Nunez v. North Broward*

*Hosp. Dist.*, 2009 WL 723873 (S.D.Fla. March 13, 2009)(Moore, J.), "[m]otions to strike under

Rule 12(f), however, are disfavored, and several courts have characterized such motions as time

wasters. Accordingly, courts generally deny such motions unless the allegations have no possible

relation to the controversy, may confuse the issues, or may cause prejudice to one of the parties."

*Id.* at *1 (citations omitted).

Here, plaintiffs' allegations include the following demand: "an award of attorneys' fees to

class counsel based upon a common fund theory as allowed by Federal law, for the benefits

conferred upon the Class and/or as allowed by contract or statute".   Banner is not prejudiced by

plaintiffs' contingent demand for fees that Banner acknowledges is "permissible."   Banner Brf. at

28, *citing Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

Irrespective of its contingent claims for class fees, plaintiffs' demand in its FDUTPA Claim

(Count V) is entirely appropriate as the statute expressly provides for the recovery of attorneys

fees.   As a result, other courts facing analogous allegations have denied such "time waster"

motions.   *See Edwards v. Geisinger Clinic*, 2009 WL 585470, *7 (M.D.Pa. March 6,

2009)(denying motion to strike where plaintiff's allegations "raise a reasonable expectation that

the Court may, with the benefit of additional facts elicited through discovery, exercise its equitable

authority and award attorneys fees."); *Nova Hills Villas Condominium Ass'n, Inc. v. Aspen*

*Specialty Ins. Co.*, 2008 WL 179878, *3 (S.D.Fla. Jan. 21, 2008)(denying motion to strike demand

for attorneys fees)(Torres, J.).   This Court should waste no time and deny the motion to strike.[14]

---

[14]Alternatively, if the Court is inclined to grant the motion, then it should only be granted
*without* prejudice.   *See L.J. v. Broward County School Bd.*, 2007 WL 1695333, *5 (S.D.Fla. June

## IV.  **CONCLUSION**

For the reasons set forth above, the motion to stay should be granted on the alternative

grounds that dispositive motions should await a ruling by the JPML and after affording the

transferee court an opportunity to streamline the pleadings.   The remaining motions presented by

Banner should be denied.

I HEREBY CERTIFY that on May 18, 2009, I electronically filed the foregoing with the
Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel
of record on the attached service list in the manner specified, either via transmission of Notice of
Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or
parties who are not authorized to receive electronically Notices of Electronic Filing.

> By: s/Ervin A. Gonzalez
>        Patrick S. Montoya
>
> Ervin A. Gonzalez
> Patrick S. Montoya
> **COLSON HICKS EIDSON COLSON MATTHEWS**
> **MARTINEZ GONZALEZ KALBAC & KANE**
> 255 Aragon Avenue, 2nd Floor
> Coral Gables, FL 33134
> Phone: (305) 476-476-7400
> Fax: (305) 476-7444
> *Co-Counsel for Plaintiffs*

---

8, 2007)(Moore, J.)("A request for attorney's fees does not need to be in a complaint, so if
Plaintiffs obtain an attorney in the future, they may file a motion for attorney's fees and costs at the
appropriate time.").

## SERVICE LIST

### Case No. 09-20510-CIV-GOLD/MCALILEY

**Defendants/Attorneys:**

Knauf GIPS KG
Postfach 10, D-9743
Iphofen, Germany

Knauf Plasterboard (Tianjin) Co.
North Yinhe Bridge, East Jingjin Road
Belchen District
Tianjin, China 300400

Knauf Plasterboard (Wuhu) Co.
No. 2 Gang Wan Road
241009 Wuhu Anhul, China

Knauf Plasterboard (Dongguan)
No. 2 Xinsha Development Zone
523147 Guangdong, China

Rothchilt International Ltd.
N-510 Chia Hsin Bld.
Annex 96 Chung Shan N. Rd. Sec. 2
Taipei

James W. Flanagan
Steven G. Schwartz, Esq.
Florida Bar No.: 911471
James W. Flanagan, Esq.
Florida Bar No.: 249440
SCHWARTZ & HORWITZ, PLC
6751 North Federal Highway
Suite 400
Boca Raton, Florida 33487
(561) 395-4747
(561) 367-1550 Facsimile
sgs@sandhlawfirm.com
jwf@sandhlawfirm.com
*Attorneys for South Kendall Construction, Corp.*

Mark A. Romance
RICHMAN GREER, P.A.
Miami Center, Suite 1000

29

201 South Biscayne Boulevard
Miami, Florida 33185
(305) 373-4000
(305) 373-4099 Facsimile
Florida Bar No.: 021520
mromance@richmangreer.com
and
Neal A. Sivyer
SIVYER BARLOW & WATSON, P.A.
401 E. Jackson Street, Suite 2225
Tampa, FL 33602
(813) 221-4242
(813) 227-8598 Facsimile
Florida Bar No.: 373745
nsivyer@sbwlegal.com
*Attorneys for Taylorwoodrow Communities at Vasari, L.L.C.*


Jeffrey A. Backman
jbackman@adorno.com
Florida Bar No.: 0662501
Jan Douglas Atlas
jatlas@adorno.com
Florida Bar No.: 226426
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301-4217
(954) 763-1200
*Attorneys for Banner Supply*

## PLAINTIFFS' COUNSEL

Michael D. Hausfeld
mhausfeld@hausfeldllp.com
Richard S. Lewis
rlewis@hausfeldllp.com
James J. Pizzirusso
jpizzirusso@hausfeldllp.com
Faris Ghareeb
fghareeb@hausfeldllp.com
HAUSFELD, LLP.
1700 K Street, Suite 650
Washington, DC 20006
(202) 540-7200
(202) 540-7201 Facsimile

Robert D. Gary
rdgary@gmail.com
Jori Bloom Naegele
jbnaegele@gmail.com
GARY, NAEGELE & THEADO, LLC.
446 Broadway
Lorain, Ohio 44052
(440) 244-4809
(440) 244-3462 Facsimile

Richard W. Stimson
Law Offices of Richard W. Stimson
4726 Mainsail Drive
Bradenton, FL 34208
(214) 914-6128
(214) Facsimile
Rick.Stimson@comcast.net

Arnold Levin
Alevin@lfsblaw.com
Fred S. Longer
Flonger@lfsblaw.com
Daniel C. Levin
Dlevin@lfsblaw.com
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, PA 19106
(215) 592-1500
(215) 592-4663 Facsimile

Richard J. Serpe
Law Offices of Richard J. Serpe, P.C.
580 East Main Street, Suite 310
Norfolk, VA
(757) 233-0009
(757) 233-0455 Facsimile
rserpe@serpefirm.com

31