UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL      MDL No. 2047
         PRODUCTS LIABILITY LITIGATION

SECTION: L

This Document Relates to:  All Florida Cases                Judge Fallon
                                                             Mag. Judge Wilkinson
_____/

**HOMEBUILDERS' STEERING COMMITTEE'S RESPONSE TO THE DISTRIBUTOR DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, TO STRIKE PLAINTIFFS' CLAIMS FOR ECONOMIC DAMAGES AND THE MANUFACTURER DEFENDANTS' JOINDER IN THE DISTRIBUTOR DEFENDANTS' MOTION**

The Homebuilders' Steering Committee ("HSC"), pursuant to this Court's Orders dated September 10, 2009, and October 20, 2009, files this Response to the Distributor Defendants' Motion to Dismiss, or Alternatively, to Strike Plaintiffs' Claim for Economic Damages and the Manufacturer Defendants' Joinder in the Distributor Defendants' Motion (the "Joint Motion") and would state:

**I.   PRELIMINARY STATEMENT**

Although the Joint Motion is addressed solely to plaintiff homeowners' property damage claims against the distributor defendants and the manufacturer defendants, the HSC submits its response to the extent any rulings pertaining to the plaintiff homeowners' claims or the economic loss rule would then be extended to any other parties or any other claims (whether currently of record or to be filed in the individual cases).

Initially, the HSC submits that the plaintiff homeowners' property damage claims against the homebuilders are limited by the economic loss rule to breach of contract or breach of warranty, since the homeowners and homebuilders have written agreements relating to the

1

homes. Accordingly, the contractual privity economic loss rule bars any tort claims by the plaintiff homeowners absent an allegation of wrongdoing independent of the breach of contract. To the extent the plaintiff homeowners allege viable tort claims for personal injury or damage to property other than the homes themselves, then the HSC respectfully submits that damages in those cases are limited to non-economic damages for personal injury and damages for the "other property."

The HSC further submits that, with respect to any alleged or potential tort claims by the homebuilders against the distributors and manufacturers, the homebuilders stand in a different position than the plaintiff homeowners because they did not purchase the completed structures. A determination of what constitutes "other property" for these homebuilders entails a fact-intensive inquiry that would be premature on a motion to dismiss.

Finally, the Joint Motion and supporting papers do not reference the only homebuilder-plaintiff in this multidistrict litigation ("MDL"), The Mitchell Company, or the potential claims of any other homebuilder. To the extent that the Joint Motion could be construed to address any such claims, the HSC respectfully submits that the economic loss rule does not bar its members' claims for indemnity, equitable subrogation or statutory claims against the manufacturers and suppliers of the defective Chinese manufactured drywall ("Chinese Drywall").

## II.  ARGUMENT

**A.  The Homeowner Plaintiffs' property damage claims against the homebuilders should be limited to breach of contract and warranty and any tort claims should be dismissed**

All of the homebuilders who are members of the HSC, except The Mitchell Company,[1] have been sued in tort and in contract under Florida law for economic damages related to the

---

[1] The Mitchell Company has been sued in state court in Alabama.

2

same homes. By way of example, Taylor Morrison and Taylor Woodrow Communities at Vasari, LLC, have been sued by two different law firms asserting putative class actions for all homeowners within the State of Florida. Those cases, *Culliton v. Taylor Morrison Services, United States District Court, Middle District of Florida, Case No. 08:09-cv-00589* (MDL Cased No.09-4114), and *Vickers v. Knauf Gips, United States District Court, Southern District of Florida Case No. 09-20510* (MDL Case No. 4117) both contain breach of contract counts against the homebuilder, and also assert numerous tort theories arising from the same property damages. Taylor Morrison and Taylor Woodrow have motions to dismiss pending based upon the economic loss rule, asserting that the claims brought should be exclusively under the warranties and contract between the parties. Lennar Homes, Inc., M/I Homes, Inc., and Beazer Homes Corp., have also been sued in both contract and tort for property damages in cases pending in this MDL proceeding.[2] All of the homebuilder defendants on the HSC have purchase and sale contracts and written warranty agreements with their homeowners.

It is axiomatic that when parties have a contractual relationship, the parties may not simply "end-run" the terms of the agreement by asserting tort claims. A homeowner who contracts with a homebuilder to purchase a home cannot maintain tort claims against the homebuilder for conduct that is indistinguishable from acts that would support a claim for breach of contract. *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004). Rather, to avoid dismissal of a tort claim against a homebuilder, the economic loss rule requires a homeowner to allege some additional conduct on the part of the homebuilder

---

[2] *Minafri v. M/I Homes*, Case No. 2:09-CV-167, United States District Court For The Southern District Of Ohio (MDL Case No. 09-4120); *Royal v. Beazer Homes Corp., et al*, Case No. 09-CA-002470, Circuit Court of the 20th Judicial Circuit In And for Lee County, Florida (MDL Case No. 09-4657); *Gamboa v. Knauf (Lennar), et al.*, Case No. 1:09-CV-21869, United States District Court For the Southern District of Florida (MDL Case No. 09-4659).

996348v.1

which amounts to an independent tort, arising from a duty separate and apart from the homebuilder's duties under the contract. *Id*. The policy reason behind this rule is the assumption that the homebuilder and homeowner allocated the risk of a breach of contract through their contractual agreement. *Id*.

Thus, "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." *Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc.*, 620 So. 2d 1244, 1247 (Fla. 1993) (*citing East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986)). The economic loss rule does not permit a homeowner to "circumvent the contractual agreement by . . . seeking a better bargain than originally made." *Indemnity Ins. Co.*, 891 So. 25 at 536.

The underlying conduct in support of homeowner tort claims against homebuilders is the allegation that the homebuilders sold homes that contain defective Chinese-manufactured drywall. These claims "relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, [such that] no independent tort exists and the economic loss rule applies." *Premix-Marbletite Mfg. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1358-59 (S.D. Fla. 2001). Therefore, homeowners may not maintain tort claims for this alleged conduct that is indistinguishable from the acts that are also alleged to be the basis for a breach of contract. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996).

In light of the foregoing, the homeowners' tort claims against the homebuilders should be dismissed because the allegedly wrongful conduct underlying these claims is indistinguishable from the acts that support the claims for breach of contract. *See Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where damages sought in tort are the

4

same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."); *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 103 (Fla. 4th DCA 1969) ("[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract."); *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[B]reach of contract, alone, cannot constitute a cause of action in tort . . . [and][i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.").

Even assuming the plaintiff homeowners were able to state viable tort claims for personal injury or damage to property other than the homes themselves, then the HSC respectfully submits that damages in those cases would be limited to non-economic damages for personal injury and damages for the "other property." In *Casa Clara Condominium Association, Inc. v. Charlie Toppino & Sons*, 620 So. 2d 1244 (Fla. 1993) the Florida Supreme Court held that the economic loss rule prohibited tort recovery when the product damages itself (in that case, the concrete, which was integrated into the completed structures) and causes economic loss, but does not cause personal injury or damage to any other property. In language that should define the scope of the homebuilders' economic loss rule defense in this case, the Court stated:

> The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of loss, one must look to the product purchased by the plaintiff, not the product sold by defendant. *King v. Hilton-Davis*, 855 F.2d 1047 (3d Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished products-dwellings-not the individual components of those dwellings. They bargained for the finished products, not their various components.

> The property became an integral part of the finished product and, thus, did not injure "other" property".
>
> *Id*. at p. 1247-1248.

As in *Casa Clara,* the products purchased by the plaintiff homeowners here are the homes, not the individual components. The homes built and sold by the homebuilders include appliances, wiring, and air conditioning systems, all of which are part of the finished product that the homeowners purchased from the homebuilders. It is possible that there will be a limited amount of damaged personal property, such as television sets or jewelry that would be considered "separate property". If that is the case, any tort claim would be limited to the modest monetary damage to the "separate property."

The Florida Supreme Court in *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, made this point crystal clear,

> In exchange for eliminating the privity requirements of warranty law and *expanding* the tort liability of manufacturers of defective products which cause personal injury, we expressly limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself.
>
> 891 So. 2d 532, 541 (Fla. 2004) (emphasis in original).

Thus, even where it may be able to support a tort claim, the separate property damage does not allow all of the Plaintiff homeowners' property damage to become recoverable under the tort theory.[3]

---

[3] Indeed, the *Indemnity Ins. Co.,* decision supports the proposition that a plaintiff seeking to circumvent the application of the contractual economic loss rule --as the homeowner plaintiffs seek to do here-- needs to show that it seeks damage to "other property" that is based on alleged wrongful conduct independent of the breach of contract. The homeowner plaintiffs cannot show breach of a duty independent of the breach of contract in this case.

### B. The Homebuilders Stand in a Different Position than the Plaintiff Homeowners because they did not Purchase the Completed Structure

As set forth above, *Casa Clara Condo. Assoc. v. Charlie Toppino & Sons, Inc.*, 620 So. 2d 1244 (Fla. 1993), established that the "product" the homeowners purchased in that case is the completed home, and found that the individual components and building materials were integrated into the product and did not constitute "other property." The homebuilders, however, stand in a different position. They did not purchase a completed structure.

Accordingly, the definition of "other property" may be a different concept as applied to homebuilders who continue to own homes built with Chinese Drywall. A determination of what constitutes "other property" for these homebuilders would be premature at this stage. Given the fact-intensive nature of the inquiry, they should be permitted to develop facts sufficient to support any such claim before case dispositive determinations are made. *See, e.g., Morgan v. W.R.Grace & Co.*, 779 So. 2d 503, 508 (Fla. 2nd DCA 2000) (holding that economic loss rule should not be applied to dismiss a case until the basic facts involved in plaintiff's theory are established in the record); *Crum v. Johns Manville*, 2009 WL 637260, *6 (Ala.Civ.App.) (dismissal of homebuilders' tort claims against manufacturer not proper where allegations did not foreclose the possibility that plaintiffs could prove a set of facts that would allow them to recover damages to other property). In *Crum*, for example, the Court stressed the importance of a party's ability to develop "a set of facts" that would permit recovery for damage to property other than the defective product. 2009 WL 637260, *6.[4]

---

[4] *Crum* also emphasizes the distinction between homeowners and homebuilders. In *Crum*, the homebuilder, who bought only the roof from the manufacturer, and not the entire building, was allowed to proceed in tort because the Court recognized that it could "easily envision evidence indicating that the alleged leaks caused damage to other parts of the Crum plaintiffs' building." *Id.*

7

Even with a fully developed record, "[w]hat constitutes damage to 'other property' is sometimes a puzzling circumstance to determine in resolution of economic loss cases." *Southland Construction, Inc. v. The Richeson Corp.*, 642 So. 2d 5 (Fla. 5th DCA 1994). For these reasons, the HSC respectfully submits that the homebuilders should have an opportunity to establish facts in support of their tort claims against the distributors and manufacturers for damage to other property.

### C. The homebuilders' prospective statutory claims, and claims for indemnity or subrogation against the manufacturers and suppliers are not barred by the Economic Loss Rule

Most homebuilders have not yet asserted cross claims or third party claims against manufacturers, suppliers, or subcontractors in this multidistrict litigation. However, the HSC wishes to clarify its position on the limitations of the economic loss rule, anticipating that homebuilders will file additional third party claims against manufacturers and distributors.

The economic loss rule only applies, if at all, to bar claims sounding in tort. It does not bar indemnity, equitable or statutory claims. In Florida, common law indemnification is not a tort that would be barred by the economic loss rule. *See, e.g., Rosenburg v. Cape Coral Plumbing, Inc.*, 920 So. 2d 61, 65 (Fla. 2d DCA 2005) (builder may sue subcontractor for common law indemnity where builder was liable to homeowner for economic loss); *accord In re Masonite Corp. Hardboard Siding Products Liability Litig.*, 21 F. Supp. 2d 593, 605 (E.D. La. 1998) (applying Florida law and finding that if a homebuilder is liable to homeowners because of a product defect, the homebuilder "should be entitled to seek indemnity from defendant, the product's manufacturer"). Similarly, the economic loss rule should not bar claims for equitable subrogation, which is an "equitable remedy" designed to "prevent injustice." *See Continental Cas. Co. v. Ryan Inc. Eastern*, 974 So. 2d 368, 374 (Fla. 2008); *Garal Corp. v. Poceiro*, 888 So.

2d 681, 682 (Fla. 3d DCA 2004) ("Equitable subrogation affords relief in essentially every situation in which a non-volunteer pays a debt or discharges an obligation which in good conscience should have been met by another."). Accordingly, claims for common law indemnity and equitable subrogation[5] remain unaffected by the economic loss rule.

In fact, this Court has specifically recognized that an indemnity action may lie in the context presented here *i.e.,* a homebuilder responsible for damages to a homeowner because the homebuilder was provided, through no fault of its own, a defective component that was used in the home. In *Masonite Corp. v. Hardboard Siding Products,* 21 F. Supp. 2d 593 **(**E.D. LA. 1998**),** this Court applied Florida law in a suit by a homebuilder against an exterior hardboard siding manufacturer, seeking recovery for repairing thirty-two homes due to bad siding. The manufacturer moved for summary judgment as to the warranty, negligence, indemnity, and subrogation claims asserted by the homebuilder (Lennar).

In denying the motion for summary judgment with respect to the indemnity claim the *Masonite* court stated as follows:

> "….Obviously, Plaintiff's settlement with the homeowners does not constitute a binding admission by plaintiff that it was at fault. *Mortgage Guarantee Ins. Corp., v. Stewart,* 427 So. 2d 776, 780 (Fla. Dist. Ct. App. 1983) ("[S]ettlements or offers of settlement have never been considered admissions against interest binding on the parties making them.") The Court must not punish plaintiff, by barring indemnification, for having entered into a settlement agreement with the homeowners; instead, the Court must determine whether plaintiff settled claims for which it could seek indemnification. *Association for Retarded Citizens v. State Dep't of Health and Rehabilitative Servs.,* 619 So. 2d

---

[5] Recent Florida cases indicate that the homebuilders can assert such claims and that equitable subrogation does not require the party seeking such relief to actually make a payment in advance of filing the claim. *In 14250 250 Realty Associates, Ltd., v. Weddle Bros. Construction Co.*, 2008 WL 4853635 (M.D. Fla. 2008), a property owner who had a contract with a builder sued the builder, after finding various construction defects in the building. The builder than filed a third party complaint against various subcontractors, seeking subrogation and indemnification. The third party defendants filed a motion to dismiss the subrogation claims, arguing that contingent claims of subrogation cannot be asserted. The court denied the motion to dismiss the case, noting that virtually all third party equitable subrogation claims are contingent. *Id.* at p. 4853637.

452, 454 (Fla. Dis. CT. App. 1993) recognizing need to balance liability rules against "public policy which encourages settlements").

……Plaintiff must establish (1) that its settlement was attributable to its vicarious liability to the homeowners, and (2) that the settlement was reasonable. *Metropolitan Dade County v. Florida Aviation Fueling Co.,* 578 So. 2d 296, 298(Fla. Dist. Ct. App. 1991). The indemnity claims is defeated if plaintiff voluntarily settled, but in fact had no vicarious liability to the homeowners. *See Buettner v. Cellular One, Inc.,* 700 So. 2d 48, 48 (Fla. Dist. Ct. App. 1997 ("[A] principal cannot be held liable if the agent is exonerated."); *cf. Sherrill v. Corbett Cranes Servs., Inc.,* 656 So. 2d 181, 183 (Fla. Dist. CT. App. 1995) ("[C]rane company's payment to the injured employee had been voluntary and [thus] an action for indemnity would not lie….")

This matter presents a case for indemnity quite similar to one recognized by the *Houdaille* decision of the Florida Supreme Court. In *Houdaille*, the court stated that where a manufacturer is liable for breach of product's warranty because of a defective component part supplied by another, the manufacturer "could be without fault insofar as its relationship with the supplier of the component part is concerned…." *Houdaille,* 374 So. 2d at 493 n. 3; *see also K-Mart Corp. v. Chairs, Inc.,* 506 So. 2d 7 (Fla. Dist. Ct. App. 1987) (holding that retailer's strict liability for sale of defective product or breach of implied warranty is not "wrongful conduct" which bars indemnity). Similarly, plaintiff might be liable, though faultless, for a breach of an implied warranty on the homeowners' dwellings because defendant supplied a defective component-Masonite siding.

21 F. Supp. 2d 593 (E.D. La. 1998).

Florida courts have reached similar results in other similar cases. *See CC-Aventura, Inc. v. Weitz Co., LLC,* 2009 WL 2136527 (S.D. Fla. July 13, 2009) (holding that subcontractors sued by building owner for economic damages may seek common law indemnity against supplier of defective component of building); *Rosenburg v. Cape Coral Plumbing, Inc.,* 920 So. 2d 61,66 (Fla. 2nd DCA 2005) (builder may sue subcontractor for common law indemnity for economic loss); *Heapy Eng'g LLP v. Pure Lodging, Ltd.,* 849 So. 2d 424 (Fla. 1st DCA 2003) (same). Thus, the economic loss rule does not bar the homebuilders' indemnity claims.

Likewise, the economic loss rule does not bar statutory causes of action, such as potential claims for breach of implied warranty under applicable statutes. *See, e.g.*, *Comptech Int'l, Inc.,*

*v. Milam Commerce Park, Ltd.*, 753 So. 2d 1219, 1221 (Fla. 1999) (the economic loss rule cannot be used to eliminate a statutory cause of action); *John Hancock-Gannon Joint Venture II v. McNully*, 800 So. 2d 294, 298 (Fla. 3d DCA 2001) ("the trial court should allow the owner to proceed with its statutory claims unencumbered by the economic loss rule"); *Stallings v. Kennedy Electric, Inc.*, 710 So. 2d 195 (Fla. 5th DCA 1998) (statutory claims for building code violations were not barred by the economic loss rule); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 611 (Fla. 2d DCA 1997) (economic loss rule does not bar plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act).

### III.  CONCLUSION

For all the foregoing, the HSC respectfully submits that the plaintiff homeowners' claims against the homebuilders are limited by the economic loss rule to breach of contract or breach of warranty.  To the extent the plaintiff homeowners are able to state viable tort claims for personal injury or damage to property other than the homes themselves, then any tort recovery should be limited to the personal injury damage or damage to the separate property.  Finally, the HSC submits that any claims the homebuilders may assert against the manufacturers and distributors for indemnity, equitable subrogation or statutory breaches remain unaffected by the economic loss rule.

WHEREFORE, the HSC respectfully requests that the homebuilders' pending motions to dismiss based on the application of the economic loss rule to the plaintiff homeowners' tort claims not involving personal injury or damage to other property be granted.

| | |
|---|---|
| **STONE PIGMAN WALTHER WITTMANN**<br>*Local Lead Counsel of the HSC*<br>*Local Counsel for several homebuilders*<br>546 Carondelet Street<br>New Orleans, LA  70130<br>Telephone: (504) 593-0804<br>Facsimile: (504) 593-0804<br>E-mail: pwittmann@stonepigman.com<br><br>By:     /s/ Phillip A. Wittmann<br>         PHILLIP A. WITTMANN<br>         Louisiana Bar No. 13625 | **GREENBERG TRAURIG, P.A.**<br>*Lead Counsel for the HSC*<br>*Counsel for Lennar Corporation, Lennar Homes, LLC, and U.S. Home Corporation*<br>1221 Brickell Avenue<br>Miami, Florida 33131<br>Telephone: (305) 579-0500<br>Facsimile: (305) 579-0717<br>Email: bassh@gtlaw.com<br><br>By:     /s/ Hilarie Bass<br>         HILARIE BASS<br>         Florida Bar No. 334323 |
| **SIVYER BARLOW & WATSON**<br>*Counsel for Taylor Woodrow Communities at Vasari, LLC and Taylor Morrison Services, Inc.*<br>100 S Ashley Drive, Suite 2150<br>Tampa, FL 33602<br>Telephone: (813) 221-4242<br>Facsimile: (813) 227-8598<br>Email: nsivyer@sbwlegal.com<br><br>By:     /s/ Neal Allen Sivyer<br>         NEAL A. SIVYER<br>         Florida Bar No. 373745 | **KING & SPALDING LLP**<br>*Counsel for Beazer Homes Corp.*<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309<br>Telephone: (404) 572-4600<br>Facsimile: (404) 572-5100<br>Email: kbuster@kslaw.com<br><br>By:     /s/ J Kevin Buster<br>         J. KEVIN BUSTER<br>         Georgia Bar No. 099267 |
| **LEIFF CABRASER HEIMANN & BERNSTEIN, LLP**<br>*Counsel for The Mitchell Company, Inc.*<br>Embarcadero Center West<br>275 Battery Street. Suite 3000<br>San Francisco, California 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br>Email: ecabraser@lchb.com<br><br>By:     /s/ Elizabeth J. Cabraser<br>         ELIZABETH J. CABRASER<br>         California Bar No. 83151 | **CUNNINGHAM BOUNDS, LLC**<br>*Counsel for The Mitchell Company, Inc.*<br>Post Office Box 66705<br>Mobile, Alabama  36660<br>Telephone: (251) 471-6191<br>Facsimile:  (251) 479-1031<br>Email: sln@cunninghambounds.com<br><br>By:     /s/ Steven L. Nicholas<br>         STEVEN L. NICHOLAS<br>         Alabama Bar No. ASB-2021-N35S |

## CERTIFICATE OF SERVICE

      I HEREBY certify that on October 22, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                      s/Mark Salky
                                                      MARK SALKY

996348v.1