1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  CHINESE MANUFACTURED       *   Docket 09-MD-2047
             DRYWALL PRODUCTS           *
6            LIABILITY LIGATION         *   October 15, 2009
                                        *
7    This Document Relates to All Cases *   9:00 a.m.
     * * * * * * * * * * * * * * * * * * *

8

9

10                  STATUS CONFERENCE BEFORE THE
                     HONORABLE ELDON E. FALLON
11                  UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14
     For the Plaintiffs:          Herman Herman Katz & Cotlar
15                                BY:  RUSS M. HERMAN, ESQ.
                                  820 O'Keefe Avenue
16                                New Orleans, Louisiana 70113

17
     For the Defendant:           Frilot, LLC
18                                BY:  KERRY J. MILLER, ESQ.
                                  1100 Poydras Street, Suite 3700
19                                New Orleans, Louisiana 70163

20
     Also Participating:          Dawn M. Barrios, Esq.
21                                Arnold Levin, Esq.

22

23

24

25

1   Official Court Reporter:        Jodi Simcox, RMR, FCRR
                                    500 Poydras Street
2                                   Room B-406
                                    New Orleans, Louisiana 70130
3                                   (504) 589-7778

4

5

6   Proceedings recorded by mechanical stenography, transcript

7   produced by computer.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2                          **PROCEEDINGS**
3                        **(October 15, 2009)**
4           **THE DEPUTY CLERK:**  Everyone rise.
5           (WHEREUPON, the Court called into session.)
6           **THE COURT:**  Be seated, please.  Good morning, ladies
7    and gentlemen.
8                 Call the case, please.
9           **THE DEPUTY CLERK:**  MDL-2047 in re:  Chinese drywall.
10          **THE COURT:**  Counsel, make their appearance for the
11   record, please.
12          **MR. HERMAN:**  Good morning, Your Honor.  Judge Fallon,
13   Russ Herman for the PSC.
14          **MR. MILLER:**  Your Honor, good morning.  Kerry Miller
15   on behalf of the defense steering committee.
16          **THE COURT:**  We're here today for our monthly status
17   conference.  We have a full house and also several hundred
18   people on the phone.  I also have on the phone a number of
19   judges from both Florida and Alabama.  I appreciate their
20   attendance and look forward to working with them throughout the
21   course of this proceeding.
22                 I have met with the committees this morning and
23   discussed with them an agenda.  I'll take it in the order in
24   which they have proposed.
25                 Pretrial orders is the first item on the agenda.

1        **MR. HERMAN:**  Good morning, Judge.

2                Your Honor has indicated that you have

3    coordinated with, I believe, Judge Farina on an economic loss

4    issue, which ...

5        **THE COURT:**  Right.  Let me flesh that out a bit.

6                Judge Farina is going to hear motions on

7    economic loss claims under Florida law on November the 13th at

8    10:00 eastern standard time in Florida.  I will participate by

9    phone and participate actively in those proceedings.  We'll

10   consider the claims in Florida state courts.  They'll have a

11   number of judges present in Florida to deal with those claims;

12   and also, from my standpoint, the Florida cases that are filed

13   in the MDL, I'll consider that as the hearing on those

14   particular cases.

15               The following week on November the 20th, I will

16   have a hearing here in New Orleans on the economic loss issues

17   in the non-Florida cases, and the Florida courts will

18   participate by phone in that matter.

19               We'll confer and work out the differences.  I

20   said November the 20th.  I think we did November the 19th.  We

21   agreed upon the 19th because the Florida courts, they have some

22   motion day on the 20th.  So I'll move my conference to the

23   19th, and I'll deal with it at that time.

24               Hopefully, we'll be able to coordinate and issue

25   our opinions around the same time.  I don't know whether or not

1    they'll be consistent, but we'll at least have an opportunity

2    to confer and discuss the issues and, hopefully, we'll have

3    consistency on our rulings.

4              Property inspections.  Anything on the property

5    inspections?

6         MR. HERMAN:  Yes, Your Honor.  Russ Herman.  The

7    inspections are going forward.  They've been coordinated

8    through PSC member Jerry Meunier's firm, Gainsburgh.  Floor

9    plans have been provided to Crawford & Company in advance, as

10   well as the cosmetic plugs.

11        THE COURT:  Anything from the defendants on the

12   property inspections?

13        MR. MILLER:  Yes, Your Honor.

14        THE COURT:  We had some difficulty originally with

15   the protocol for property inspections.  I met with counsel, as

16   well as the inspectors, and discussed it with them.  They've

17   worked out a better protocol, and that protocol now is in

18   place.

19              Is it working?

20        MR. MILLER:  Your Honor, yes.  As the Court recalls,

21   we did 10 initial inspections pursuant to Pretrial Order

22   No. 13.  We had a couple of court meetings with respect to that

23   and found that that particular protocol was too time consuming

24   and too destructive in some ways to the home.

25              After that, there were a series of meetings in

1    which I participated primarily with Mr. Lambert on behalf of

2    the PSC.  We developed what we believed was a much more

3    streamlined inspection protocol; but a protocol that was still

4    objective and aimed at creating the census, detecting the

5    drywall that was on-site at the property, and not being

6    destructive.

7               We sampled -- or we used that protocol last week

8    in a couple of homes in the Slidell area.  We were able to

9    complete the protocols in about five hours, Your Honor.  And so

10   the plan moving forward is we have 18 -- there were 30 houses

11   initially that were identified for inspection.  We did 10

12   initially under the old protocol, two under the revised

13   protocol to see if it worked, did the two, then further tweaked

14   the revised protocol.

15              By the way, Your Honor, we have a final

16   document, if the Court wants to enter it, that will supersede

17   Pretrial Order 13.  It is this revised protocol.  We could give

18   it to the Court this afternoon.  And next week we're going to

19   roll it out on the remaining 18 in Louisiana, and Florida, and

20   Mississippi and North Carolina.

21              We had previously agreed that after we were done

22   with that shift, we would have another meeting to see if this

23   particular protocol was working.  Hopefully, it is, and it can

24   be rolled out to more properties.  If further modification

25   needs to be made, then the Court will entertain a hearing or a

1    meeting at that time.

2              **THE COURT:**  Yes.  I think that to some extent we're

3    dealing with trial and error, but hopefully we can get it down

4    to a meaningful and accurate protocol.

5              As I mentioned several times, you can sit with

6    experts and design a protocol that they feel and you feel is

7    best.  But until you actually do it and put it in place, you

8    don't know whether it's going to work.  So counsel met with the

9    experts.  I met with the experts.  And they came up with a

10   design that looked to be perfect.

11             But then when we started putting it in place, it

12   didn't work out that way.  So the parties had to go back to the

13   drawing board.  This is just the way it's done and the way it

14   has to be done.  But, hopefully, we'll come up with something

15   very shortly that can be used throughout the country and will

16   be helpful.

17             I think that's one of the benefits, frankly, of

18   the MDL is coordination; and with the great help of my

19   colleagues in state court, we've been able to do that with

20   motions and also with protocols.  Hopefully, we'll be able to

21   do that with the preservation of evidence protocols, so that

22   the attorneys know that the method that they preserve evidence

23   will be useful both in state as well as in federal courts.

24             **MR. MILLER:**  Your Honor, I wanted to highlight that

25   item, actually.  It's item 1B on Page 1 of the pretrial order

1   on the Physical Evidence Preservation Protocol.  That is a

2   change from our last hearing.  It was actually entered by the

3   Court earlier this week, submitted by the parties last week.

4   So now there's something in place.  I'm not quite sure if the

5   state court jurists who are on the phone are aware of that new

6   development, but that is in place now.

7            THE COURT:  Right.  I did send it to everyone and,

8   hopefully, it represents their views also and they'll be able

9   to adopt it in their respective courts.

10            Plaintiff and defendant profile forms.  Anything

11   on that?

12            MR. MILLER:  Your Honor, one issue that we have, and

13   that is there is still outstanding a retailer profile form

14   issue.  Apparently, the parties have been in touch, retailers

15   and PSC, but there has been some hiatus in discussions.  So

16   those should be brought to fruition relatively soon.  I think

17   there are two retailers currently in the case.

18            THE COURT:  Okay.  And I do have some motions on the

19   profile forms which I'll take up after the hearing.

20            The preservation order.  Do we have anything on

21   that?  We have a motion also on the preservation order.  We

22   have a preservation order for the physical evidence.  The issue

23   that is more challenging is the preservation order on

24   e-discovery and on documents and e-documents.

25            State/Federal Coordination?

9

 1          **MR. HERMAN:**  Your Honor, Ms. Barrios has, in
 2   electronic format, her report.
 3          **MS. BARRIOS:**  Thank you, Mr. Herman.
 4             Good morning, Your Honor.  Dawn Barrios for the
 5   Federal/State Committee on the plaintiff's side.
 6             Your Honor, through Pretrial Order 8, there have
 7   been no motions for remand filed.  So I think everybody's
 8   enjoying being in your court.  We have had an opportunity to
 9   meet and confer with the defense Federal/State Committee one
10   time this week and both sides have pledged to coordinate and
11   cooperate as fully as possible in this multiparty case, and we
12   pledge to do that.
13          **THE COURT:**  Yes.  I think that what we're trying to
14   do, both the state and federal court, is to see if we can get
15   an environment in a forum so that you can just do things one
16   time.  We have 18 states involved in this litigation, and there
17   may be a couple more coming on board.
18             It doesn't seem satisfactory to have to do these
19   things 18 or 19 times, taking depositions 18 or 19 times, the
20   same deposition, filing interrogatories and so forth and so on.
21   So we're trying to construct it as well as we can so that you
22   can do this work one time and use the material throughout the
23   country, both in state and federal court.
24             So I've appointed a committee to coordinate
25   that, and I appreciate all their efforts.  I know my colleagues

 1   in state court also appreciate it.

 2              **MS. BARRIOS:**  Your Honor, I have a presentation to

 3   the Court, and defense liaison counsel, and homeowners'

 4   counsel, as well as the PSC, a CD that will replace the CD that

 5   we provided last month.  We have a substantial list of cases

 6   broken down by states with the contact information for each

 7   jurist.  So I hope Your Honor finds it very convenient to use

 8   when you reach out to your state court colleagues, and we'll

 9   continue to update this every month.

10              Thank you, Your Honor.

11        **THE COURT:**  Thank you very much.

12        **MR. HERMAN:**  Your Honor, if I might.  Kerry Miller

13   addressed the issue concerning retailer forms, and if Mays'

14   counsel is present, I'd like to meet with Mays immediately

15   following the arguments.

16        **THE COURT:**  Any trial settings for state court?

17        **MR. HERMAN:**  None reported, Your Honor.

18        **THE COURT:**  Okay.  Motions in the MDL?  I've got

19   several motions, three to be exact, that will follow this

20   hearing.

21              Discovery issues.  Anything we need to talk

22   about there?

23        **MR. HERMAN:**  Yes, Your Honor.  In conference this

24   morning, Your Honor discussed the issue of a rolling document

25   production.  There will be a meeting in Mr. Wittmann's office

1  at 8:30 central standard time on Tuesday with call-in for the

2  various parties.  At that point, the parties will swap lists of

3  who they want to depose and the priority.

4          And plaintiffs yesterday received the

5  defendant's first request for production, and we're going to be

6  responding with objections and production as quickly as we can,

7  but certainly within the 15-day limit.  Hopefully, next week.

8  Basically, those are the discovery issues that were discussed

9  this morning.

10        **THE COURT:**  Okay.  I need everybody's cooperation on

11  that, both plaintiffs and defendants.  The material that you

12  have no problem with, give it up immediately or on a rolling

13  basis.  The material that you have problems with, meet and

14  confer, discuss the objections.  If you can't resolve them

15  yourself, then bring them to me, I'll hear them immediately,

16  and we'll get over the objections.

17          I understand that the parties are going to meet

18  Tuesday, as was said, and begin setting depositions on some

19  basis that everybody's comfortable with.

20        **MR. HERMAN:**  I would like to request that Mr. Davis

21  and Mr. Levin be served by defense counsel with all motions, et

22  cetera, while I'm absent.  I'll be absent for about 10 days.

23        **MR. MILLER:**  Your Honor, on the issue of discovery.

24  I am hopeful that the meeting on Tuesday will produce some

25  progress and some setting of depositions.

1            As mentioned in chambers to the Court this

2   morning, I took a survey of the defendants last night, and I

3   know that documents from various defendants are starting to

4   roll in.  Some rolled in on Tuesday, others yesterday, and I

5   know more today and tomorrow, and then again early next week.

6   And then we're going to have a meeting on Tuesday morning.  In

7   connection with the production of documents, also our piece

8   that has been served on the plaintiffs, to try and minimize the

9   chaos, I would suggest the following:

10           When a party produces documents, they file a

11   notice of production with LexisNexis.  The LexisNexis service

12   has been working very well.  In the notice of production, the

13   parties identify who to contact to get a copy of the documents.

14   If it's a vendor, if it's a paralegal, if it's someone of that

15   nature, so that's set forth in the LexisNexis notice of

16   production.  Those parties who want to get a copy can order it

17   and get it.  Those parties who don't want a copy, they don't

18   need to do it.

19           What I'm trying to avoid, Your Honor, in a case

20   that now has 50 parties, maybe more, maybe going up to

21   hundreds, hundreds of phone calls, how can I get a copy of the

22   documents, who do I need to call, calls to the Court.  I had a

23   full-time job a couple of weeks ago when we posted the pictures

24   of the different drywall markings, that we've talked with the

25   Court about that and were able to get that information on the

1   Web site.

2                     We're not to the point, Your Honor, I think

3   where we can have a central document depository.  I think

4   that's too ambitious for this particular group.  But I think if

5   we can do a notice of production on LexisNexis, that will

6   streamline a lot of aggravation and frustration.

7             THE COURT:  Is there any way you can upload those

8   documents and anybody who wants them can pull them down?  At

9   least you can discuss it with them.

10            MR. MILLER:  Yes.  That's another thing that we're

11  exploring doing, and that's a different issue.  We may do that,

12  Your Honor, upload them through FTP sites.

13            THE COURT:  Right.

14            MR. MILLER:  But that would be on the LexisNexis

15  notice.

16            THE COURT:  Right.

17            MR. MILLER:  That we've uploaded documents to X, Y

18  and Z Web site, here's a pass code, this is how you access

19  them.

20            THE COURT:  You need to flesh that out or talk about

21  it, because that's the beginning of the document depository.

22  So you then just simply import that to some other place and

23  that becomes your document depository.  So it's one document

24  depository in process.  Give that some thought.

25            MR. MILLER:  I think what we're going to see, Your

1  Honor, is a range, depending on the level of sophistication of

2  the defendant.  I think some will do exactly that, send the

3  notice, you can access these on the Internet through the X, Y

4  and Z Web site at A, B, and C pass code, all the way to the mom

5  and pop builders whose got a box and file cabinets and a

6  storage shed.  But there ought to be one way in which that

7  notice goes out.

8           **THE COURT:**  And the reason for that is that, although

9  now when it comes in piecemeal, you'll be able to keep a handle

10 on it.  But if we get to millions and millions of documents,

11 you're going to need some searchable way of getting those

12 documents.  So think about that when you're beginning to

13 coordinate these documents and you need to have them in some

14 kind of searchable form eventually.

15          **MR. HERMAN:**  Your Honor, I want to reserve comment on

16 that suggestion.  I had not heard it before.  We do have a

17 motion scheduled with regard to ESI and format following this

18 conference.

19          **THE COURT:**  The Freedom of Information Act.  Anything

20 on that?

21          **MR. HERMAN:**  We have listed in Your Honor's status

22 conference report the materials that have been received -- or

23 the departments of government from which materials have been

24 received.  They're incomplete.  We're providing -- will be

25 providing those on a rolling basis to defense liaison counsel.

1      **THE COURT:**  Okay.  And then trial court settings?

2      **MR. MILLER:**  Your Honor, before we go on to that, I

3  think we made an agreement if we're going to evolve into

4  depositions next week, we want to go ahead and get whatever

5  FOIA information plaintiffs have so we have that to review.

6      **THE COURT:**  Sure.

7      **MR. MILLER:**  So I'll hook up and, hopefully, get that

8  information.

9      **MR. HERMAN:**  You'll receive ours probably by this

10  afternoon or tomorrow morning.

11      **MR. MILLER:**  Great.  Great.

12      **MR. HERMAN:**  And we hope to receive whatever the

13  defendants have received.

14      **THE COURT:**  All right.  The next is the trial court

15  settings.  I mentioned before that what I had anticipated doing

16  is having each side pick ten cases, do some quick discovery on

17  the ten, come down with five, and then each side have two

18  strikes and we'll come down with six, and then deal with it and

19  try five of them.

20          Time is moving up on me, so I'm going to have to

21  alter that.  I've given the plaintiff first choice to pick that

22  case.  I've given them a week to pick that case.  A week

23  thereafter the defendants will pick the second case.  We'll

24  start those cases January and February.

25          Filings in the MDL.  Anything on that?

1      **MR. HERMAN:**  Nothing new, Your Honor, on the

2   particular issues of direct filing and acceptance of service.

3      **THE COURT:**  Okay.  Notice of appearance, default

4   judgments.  Anything?

5      **MR. HERMAN:**  No, Your Honor, nothing new.

6      **THE COURT:**  I gave a preliminary default against a

7   company.  I'm waiting for a motion to confirm the default so

8   that I can enter a monetary judgment against that defendant.  I

9   don't know whether that defendant has any resources in the

10   United States, be they cash, or vessels, or anything of that

11   sort.

12      But if a judgment is entered, I do sit, as an

13   MDL judge, as a district judge in every district in the

14   country, so I can issue orders seizing either vessels, or bank

15   accounts, or transfers, or anything of that sort that's brought

16   to my attention.

17      **MR. HERMAN:**  Your Honor, if I might look again at the

18   bellwether trials.  I believe Your Honor has indicated that

19   first trial would be property damage only.  The plaintiffs

20   would select it.  And you require that plaintiffs and

21   defendants meet and accelerate a jury questionnaire.

22      **THE COURT:**  Right.  I think that in a case of this

23   sort, it would be helpful to have a jury questionnaire so that

24   we don't have to have people come to the court the morning of

25   the jury selection and find that they should be excluded

 1   because they have drywall in their house and they have

 2   difficulty with it.

 3                  So I've asked the parties to get together and

 4   come up with a jury questionnaire which I'll send out.  I'll

 5   notify 100, 150 jurors that they're going to be selected for

 6   this particular jury.  I'll send the questionnaire out to them,

 7   and I'll tell them to come to court to fill out a

 8   questionnaire.

 9                  They'll fill out the questionnaire in court.

10   I'll immediately make it available to the parties.  I'll give

11   them a week to look it over.  Then I'll confer with the parties

12   and make some strikes for cause, and hopefully the

13   questionnaire will be of help to the lawyers in their voir dire

14   examination.

15             **MR. MILLER:**  Your Honor, a couple of follow-up

16   comments or questions to what was discussed in chambers

17   regarding the bellwether trial selection and the altered way in

18   which we're going to proceed in that manner.

19                  As I understand it, the eligible plaintiffs for

20   the initial selections would be those who either have profile

21   forms in as of now or will have profile forms in as of a week

22   of today.

23                  And then secondly, Your Honor, you mentioned

24   that the selections, either the first selection or the first

25   couple, should involve, I think you used the term "one

1   defendant follow-up question" on that.  Since most cases

2   involve a claim by a plaintiff against a builder, maybe an

3   intermediary and a manufacturer, are you suggesting that the

4   initial selections involve one brand of drywall, albeit you may

5   have a supplier and builder in the mix, or are you suggesting

6   just one defendant?

7                Because if it's just one defendant, albeit a

8   builder, a supplier or a manufacturer, you're going to have a

9   comparative fault analysis going on, even in a property damage

10  case.

11              **THE COURT:**  Not so much with the manufacturer.  With

12  the builder, I can imagine some issue there.  From the

13  standpoint of a manufacturer, I think that that probably is not

14  as prevalent.  A builder or a distributor or an installer, I

15  can understand that there probably would be some issues of that

16  sort.  But I don't know if I see that particular issue from a

17  manufacturer's standpoint.

18                So the first cases I would think, certainly the

19  first case, ought to be focused on the manufacturer of the

20  drywall, at least that's the way I see it presently.

21                Also, when we get down the line apiece with some

22  of these cases and learn from them, we need to focus on whether

23  or not we should have some summary trials.  We need to focus on

24  whether or not we should have some issue trials, and see

25  whether or not we can get some jury information from those

1    areas.

2              I'm not really wedded to any particular method.

3    I just think the lawyers function better when they get some

4    input from juries.

5              Okay.  Tolling

6    agreements/suspension/prescription.  Anything on that?

7         MR. HERMAN:  No, Your Honor.  There is no new

8    insurance issue before Your Honor.

9         THE COURT:  Okay.  Anything on service of pleadings,

10   electronically?  We've now instituted electronic service of the

11   initial pleading.  We have over the period of time gone from

12   electronic service of filing of everything but the initial

13   pleading.  Now we have electronic filing of the initial

14   pleadings, so keep that in mind too.

15             Master complaint.  Anything?

16        MR. HERMAN:  Your Honor, there's nothing with regard

17   to the master complaint.  There are some alternatives.  I'll

18   ask Mr. Levin to address the class action indeterminate

19   defendant complaint and the omnibus complaint.

20        THE COURT:  Okay.

21        MR. LEVIN:  Your Honor, as you know from the

22   inspections, a lot of the Chinese drywall is unmarked,

23   indicates "made in China," and there are a number of claimants

24   that have that type of drywall in their homes.

25             The PSC has filed what we would call a class

1    action indeterminate defendant complaint against a host of

2    manufacturers.  It's filing an amended complaint against

3    several others that we believe are involved in bringing that

4    product into this country.  That's where we stand.  We will

5    make service through the Hague.  It will be translated into

6    German and Chinese and, hopefully, we won't be ignored abroad.

7              THE COURT:  Okay.

8              MR. LEVIN:  Just briefly, the PSC will be filing an

9    omnibus complaint.  We anticipate filing several of them on a

10   rolling basis, where all of the existing plaintiffs that have

11   product I.D. will be suing everybody in the chain of commerce,

12   builders, importers, brokers and manufacturers.

13                   The first one should be filed within the next

14   ten days.

15             THE COURT:  Okay.

16             MR. LEVIN:  It will be about 300 or 400 plaintiffs;

17   and it will be followed very quickly by a second one.

18             THE COURT:  Generally, in cases the challenge is to

19   figure out whether or not there's any fault and, if so, the

20   nature and extent of the fault.  In this case, and probably in

21   addition to that, but maybe even dwarfing that is the location

22   and identification of the parties, the manufacturers, the

23   product, the distributors.

24                   And with regard to distributors, and installers,

25   and suppliers, when they knew, if they knew, and, if so, when

1   did they know and what-did-they-do-about-it kind of thing.  But

2   the big challenge in this particular case for everybody, and

3   certainly for the installers and the builders, and the

4   plaintiffs in general, is to find out the location and

5   participation of the manufacturers, who manufactured it and

6   where are they located.

7                So we're going to have some pleadings that throw

8   out a net to get everybody, and that's probably the process

9   that we're looking at.  But eventually we're going to be

10  culling down, because we're going to find that some people who

11  are caught in that initial net don't belong in the net.

12               And I want to make sure that if they do not

13  belong in the net, they don't have to spend a lot of resources

14  to get out of the net.  We've got to identify them as quickly

15  as we can and get those folks out.  I think it's to everybody's

16  benefit.  But that's going to be a challenge, culling them

17  down.

18               The next status conference.  Anything further

19  other than the motions?

20               MR. HERMAN:  Just one other matter on the omnibus

21  complaint.  It's the PSC's intention by filing that complaint

22  that where manufacturers and other defendants have been

23  identified, that we'll only have to spend one amount to get

24  service through the Hague rather than having a thousand cases

25  served through the Hague.  With respect to that issue, that's

1    the only comment that I have, Your Honor.

2              Your Honor, the next status conference ...

3              **THE COURT:**  The next status conference is November

4    the 19th.  I'm told that we've got some construction going on

5    in the courtrooms, so please watch the Web.  I'm going to be

6    moving it to another courtroom, but I'll also have directions

7    here.  We're going to have some updated electronic equipment

8    and so forth that we're going to be installing in this

9    courtroom, and it will take me about a month to get that done.

10             Okay.  Anything further from anyone in the

11   audience or on the phone?

12             **MR. HERMAN:**  If counsel for Mays is here, I would

13   like to talk to them.

14             **THE COURT:**  All right.  We'll take a ten-minute break

15   at this time and then I'll come back and discuss the motions

16   with you.  Court will stand in recess.

17             **THE DEPUTY CLERK:**  All rise.

18             (WHEREUPON, the Court took a recess.)

19                         **CERTIFICATE**

20             I, Jodi Simcox, RMR, FCRR, Official Court Reporter
     for the United States District Court, Eastern District of
21   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
22   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

23

24

25                         S/ Jodi Simcox, RMR, FCRR
                           Jodi Simcox, RMR, FCRR
                           Official Court Reporter