UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


|                                                    |   |                      |
|----------------------------------------------------|---|----------------------|
|                                                    | : | MDL NO. 2047         |
| IN RE: CHINESE MANUFACTURED DRYWALL                | : |                      |
|     PRODUCTS LIABILITY LITIGATION                  | : | SECTION:  L          |
|                                                    | : |                      |
|                                                    | : | JUDGE FALLON         |
|                                                    | : | MAG. JUDGE WILKINSON |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : |          |

**This Document Relates to 09-4119**

## ORDER & REASONS

Before the Court is defendant Knauf Gips KG's Motion for Protective Order to Require Use of the Hague Evidence Convention (Rec. Doc. No. 252).  For the following reasons, Knauf Gips KG's Motion is DENIED.

## I.      BACKGROUND

This case arises out the manufacturing, distribution and sale of allegedly defective drywall.  Defendant Knauf Gips KG ("Knauf") is a limited partnership organized under the laws of the Federal Republic of Germany with its principal place of business in Iphofen, Germany.  Knauf Gips manufactures drywall and provides systems designed to meet various requirements in the dry construction and plastering sector.  Defendants Knauf Plasterboard (Tianjin) Co., ("KPT"), Knauf Plasterboard (Wuhu) Co. Ltd. ("Knauf Wuhu") and Gaundong Knauf New Building Product Material Co., Ltd. ("Knauf Dongguan") are limited companies organized under the laws of China with their principal place of business in China.  Knauf International GmbH is the sole shareholder of KPT, Knauf Wuhu, and Knauf Dongguan.  Plaintiffs allege that, (1) Knauf manufactured, distributed and sold the allegedly defective drywall at issue, and (2)  that Knauf is the parent corporation of KPT, Knauf Wuhu, and Knauf Dongguan, all whom Plaintiffs allege were also involved with the allegedly defective drywall.  Because it insists it has no

relevant connections to the instant matter, Knauf has declared its intent file a motion to dismiss on jurisdictional grounds.  The parties have informed the Court that they will undertake jurisdictional discovery prior to Knauf filing the motion to dismiss.

## II.   PRESENT MOTION

On September 21, 2009, after receiving permission from the Court to lift the stay on motions (Rec. Doc. No. 216), Knauf filed the instant Motion for Protective Order to Require Use of the Hague Evidence Convention (Rec. Doc. No. 252).  Knauf requests that the Court enter a protective order requiring that all parties use the procedures specified in the Hague Convention on the Taking of Evidence Aboard in Civil and Commercial Matters, opened for signature, March 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 ("Hague Convention"), for any jurisdictional or merits discovery to be taken from Knauf in these proceedings.  Knauf raises three arguments in support of its Motion, (1) Knauf's tenuous connection to the instant litigation does not warrant intrusive discovery of a foreign entity as permitted under the Federal Rules of Civil Procedure ("Federal Rules"), (2) the sovereign interests involved weigh in favor of application of the Hague Convention, and (3) the Hague Convention provides effective means for parties to secure discovery from Knauf.

The United States Supreme Court's decision in *Societe Nationale Industrelle Aerospatiale v. United States District Court*, 482 U.S. 522 (1987), involving the application of the Hague Convention to discovery procedures, is necessarily implicated Knauf's Motion. Knauf concedes the Supreme Court in *Aerospatiale* held that the Hague Convention is merely an optional mechanism to facilitate the taking of evidence abroad, but notes the cautionary language used by the Court, specifically that district courts "should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place

them in a disadvantageous position." *Id.* at 546.  Accordingly, Knauf argues that *Aerospatiale* is

in need of reconsideration because it "has not provided foreign defendants with the protection

that the Supreme Court intended"  (Rec. Doc. No. 252).  Additionally, Knauf claims that the U.S.

District Court for the Eastern District of Louisiana's holding in *Jenco v. Martech International,*

*Inc.*, 1988 WL 54733 (E.D. La. May 19, 1988), that the Hague Convention applies to conducting

depositions of the Norwegian defendant, supports this argument.

      In support of its Motion, Knauf conducted an analysis under the three-factor test

established by the Supreme Court in *Aerospatiale* to determine whether the Hague Convention

should be applied to discovery.  *See Aerospatiale*, 482 U.S. at 544.  Under the first factor, the

particular facts of the case, *see id.*, Knauf argues that the Hague Convention should be applied

because it provides safeguards against overly intrusive discovery such as that proposed by the

Plaintiffs Steering Committee ("PSC").  Under the second factor, the sovereign interests

involved, *see id.*, Knauf argues that the Hague Convention should be applied because both the

United States and Germany are signatories to the Hague Convention, the Hague Convention is

itself U.S. law, and the application of the Federal Rules to discovery against German nationals

"can be extremely offensive to German sovereign interests"  (Rec. Doc. No. 252).  Under the

third factor, whether the Hague Convention will be an effective discovery device, *see id.*, Knauf

argues that application of the Hague Convention will prevent delays that result from discovery

disputes between domestic and foreign courts, impose limitations on frivolous document

production, and allow for the direct supervision of a German judge during depositions.

      The PSC and the Hombuilders Steering Committee ("HSC") each filed a Response in

Opposition to Knauf's Motion (Rec. Doc. Nos. 318, 319).  The PSC first notes *Aerospatiale* held

that the discovery rules of the Federal Rules are the "normal methods" to be used for federal

litigation involving foreign national parties, while the Hague Convention is only "optional" or "supplemental" when it proves more conducive to expediting the production of evidence located abroad. *Aerospatiale*, 482 U.S. at 536-41. Additionally, the PSC claims that the burden is upon Knauf to demonstrate how or why the Hague Convention is more conducive to expediting the production of evidence located abroad. The PSC concludes that Knauf has failed to meet this burden, and thus the Federal Rules alone should govern discovery of Knauf. The PSC supports its conclusion by claiming that post-*Aerospatiale* decisions have uniformly rejected the use of the Hague Convention. The PSC largely relies upon the United States Court of Appeals for the Third Circuit's opinion in *In re Automotive Refinishing Paint Antitrust Ligation*, 358 F.3d 288 (3rd Cir. 2004), to support its Opposition. The PSC notes that *Automotive Refinishing* is factually similar to the instant matter in that it involved a motion for protective order filed by two German corporations seeking to require exclusive use of the Hague Convention to resolve the German defendants' personal jurisdiction challenges. The PSC further notes that the Third Circuit, in applying *Aerospatiale*, affirmed the district court's denial of the defendants' motion. The PSC adopts the Third Circuit's reasoning that the Supreme Court's refusal in *Aerospatiale* to require the exclusive or first resort of the Hague Convention for general discovery from a foreign defendant, applies with even more persuasive force when addressing the issue of jurisdictional discovery. *Id*. at 303. Additionally, the PSC notes that the court in *Automotive Refinishing* rejected the holding in *Jenco*, 1988 WL 54733, relied upon by Knauf, for its lack of meaningful analysis in ordering deposition discovery under the Hague Convention while allowing interrogatories and document requests to proceed under the Federal Rules. *Id*.

The PSC too conducted an analysis under the three factors of *Aerospatiale* to support its Opposition. First, the PSC argues that the particular facts of the case warrant application of the

Federal Rules because it would be unfair to limit Plaintiffs' discovery of Knauf under the Hague Convention after Knauf has availed itself of the benefits of Federal Rules discovery through access to profile forms and information derived from the Threshold Inspection Program. Additionally, the PSC claims that application of the Hague Convention would divest the Court's authority to resolve discovery disputes and invest control in a German court.  Second, the PSC argues that the sovereign interests of the contracting states require the application of the Federal Rules because Germany has availed itself of this country's open trade and the U.S. has a superior sovereign interest in the integrity of its judicial system and protecting its citizens from unredressed injury.  Third, the PSC argues that the Hague Convention will not be an effective discovery tool reasoning that the practical experience of U.S. courts is that the Hague Convention is an impediment to expeditious discovery and that Germany has previously declared that it will not execute letters of request under Rule 26 for the purposes of obtaining pretrial discovery.

The HSC also filed a Response in Opposition to Knauf Gips' Motion for Protective Order (Rec. Doc. No. 319).  The HSC raises many of the same arguments as the PSC addressed above. The HSC also carries out its own analysis of the *Aerospatiale* factors to support its Opposition. First, the HSC argues that the particular facts of the case favor application of the Federal Rules because the instant matter is one in multidistrict litigation which, by definition, seeks the just and efficient disposition of pretrial discovery and, by all practical means, cannot be accomplished under the Hague Convention.  Additionally, the HSC claims that Knauf has sufficient factual connections to the instant litigation to subject it to Federal Rules discovery.  Second, the HSC argues that the sovereign interests involved require the application of the Federal Rules because under *Aerospatiale,* the Supreme Court concluded that the application of the Hague Convention

in products liability cases would frustrate the courts' interests.  Third, the HSC argues that it is unlikely that the Hague Convention will prove effective, mostly due to the lengthy process under the Hague Convention of using letters of request to obtain discovery and Germany's history of refusing to execute such letters.

Knauf filed a Reply in Support of its Motion (Rec. Doc. No. 330).  First, Knauf argues that the Supreme Court's decision in *Aerospatiale* is limited to merits discovery only so it does not apply to the instant matter.  Further, Knauf argues that the Third Circuit's decision in *Automotive Refinishing*, which did involve jurisdictional discovery, does not overrule the holding of the Supreme Court in *Aerospatiale* and is distinguishable from the instant matter because in *Automotive Refinishing*, but not in the instant matter, the plaintiffs had established a *prima facie* case of personal jurisdiction.  *Automotive Refinishing*, 358 F.3d at 302-03. Specifically, Knauf claims that the Declaration of Oliver Frohlich which denies that Knauf manufactured, distributed and sold the allegedly defective Chinese Drywall and that Knauf is the parent corporation of the Knauf Chinese manufacturers prevents Plaintiffs from establishing *prima facie* personal jurisdiction.  Knauf also reconducts the three factor *Aerospatiale* analysis. With regard to the sovereign interests involved, Knauf claims that the German law of data protection has grown enormously since *Aerospatiale* and will be properly upheld only under the Hague Convention.

On October 15, 2009, a hearing on Knauf's Motion was held at which the parties presented their positions by oral argument.  Knauf reiterated many of the points raised in its Reply brief.  Specifically, Knauf claimed that discovery under the Federal Rules would subject it to unnecessary and burdensome production of documents and information.  Additionally, Knauf argued that it should not be subject to Federal Rules discovery because the Plaintiffs have failed

to establish a *prima facie* case of personal jurisdiction and the courts in both *Automotive*

*Refinishing* and *In re Vitamins Antitrust Litig*., 120 F.Supp.2d 45, 49 (D.D.C. 2000), require that

the Hague Convention be applied where no *prima facie* personal jurisdiction is established.

Knauf also reiterated its argument that Germany's modern data protection laws would be

violated if Federal Rules discovery was used.  When asked by the Court whether the Hague

Convention could produce discovery requests within the 15 day time period established by the

Court, counsel for Knauf conceded that this was not possible.

The PSC and HSC also presented their opposition to the Court by oral argument.  The

PSC began by contending that Plaintiffs had put forth more than sufficient facts to establish a

*prima facie* case of personal jurisdiction against Knauf considering the minimal showing

required for such.  Specifically, the PSC stated that the information on Knauf's shipping records

and that found on Knauf's website, as well as the 30 specific allegations pled in the Complaints

satisfy a *prima facie* showing of personal jurisdiction.  As to the argument made by Knauf

regarding the modern German privacy laws, the PSC contends that such argument is a "red

herring" and that the laws at issue only protect the disclosure of personal information relating to

a party or third party's private and family life, none of which is implicated in the forthcoming

discovery requests.  The PSC also reiterated many of the arguments raised in its Opposition

brief.

The HSC also presented oral argument to the Court.  The HSC adopted the arguments of

the PSC, emphasizing Knauf's numerous factual connections to the instant matter.

III.    LAW & ANALYSIS

   A.    The MDL Court's Authority Over Discovery

Title 28, section 1407 of the United States Code grants the MDL court authority over

pretrial proceedings.  28 U.S.C. § 1407.  Section (a) provides "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a).  Section (b) further provides "[s]uch coordinated or consolidated pretrial proceedings shall be conducted by a judge...to whom such actions are assigned by the judicial panel on multidistrict litigation....The judge...to whom actions such actions are assigned...may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(b).  The Judicial Panel on Multidistrict Litigation has interpreted this power to apply to discovery, stating "if discovery...[is] part of the pretrial proceedings, then those powers are by clear statutory mandate required to be conducted by the transferee court.  The use of the word 'shall' in the first sentence of paragraph (b) of Section 1407 makes this clear."  *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 489 (J. P. M. L. 1968).

The Fifth Circuit has also recognized that the authority of the MDL court to exercise the powers of district judge in any district as to pretrial proceedings is not limited to "conducting pretrial depositions" under 28 U.S.C. § 1407(b), but rather encompasses a broad range of pretrial matters, including discovery.  *See In re Clients and Former Clients of Baron & Budd, P.C.,* 478 F.3d 670, 671-72 (5th Cir. 2007)(citing several district court cases to support its holding that the MDL court's authority under 28 U.S.C. § 1407(b) extends beyond depositions to embrace document production subpoenas).  This is consistent with cases outside the Fifth Circuit as well. *See e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 486 (E.D. Pa. 2005)(holding that under 28 U.S.C. § 1407(b) the MDL court has authority to adjudicate a motion to compel production of documents); *United States ex. rel. Pogue v. Diabetes Treatment*

*Ctrs. Of Am., Inc.*, 238 F.Supp.2d 270, 275 (D.D.C. 2002)(holding that the MDL court's power to act as the judge of any district for pretrial depositions includes the power to enforce subpoenas duces tecum); *In re Subpoenas Served on Wilmer, Cutler & Pickering and Goodwin Proctor LLP*, 255 F.Supp.2d 1, 2 (D.D.C. 2003)(holding that the MDL court has all the powers of the transferor district court to decide a motion to quash).  The MDL transferee court's authority over all pretrial proceedings, including discovery production, is also consistent with the objective of transfer-"to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."  Manuel for Complex Litigation (Fourth) § 20.131, at 220 (2004)(*citing In re Plumbing Fixtures Cases*, 298 F.Supp. 484 (J.P.M.L. 1968)).

The legislative history of Section 1407 indicates that the MDL transferee court's authority over pretrial proceedings, including discovery, is governed by the Federal Rules of Civil Procedure.  *In re Corrugated Container Anti-trust Litigation*, 620 F.2d 1086 (5th Cir. 1980)(citing H.R.Rep. No. 1130, 90th Cong., 2d Sess. (1968), reprinted in (1968) U.S. Code Cong. & Admin. News, pp. 1989, 1900)).  Under, Rule 26(b)(1), district courts have broad discretion in controlling discovery.  *See Trevino v. Celanese Corp.*, 701 F.2d 397, 406 (5th Cir. 1987).  Further, under Rule 26(c)(1), parties from whom discovery is sought may move for a protective order.  The burden is upon the movant to show the necessity of the protective order "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."  *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).  In reviewing the motion, "[t]he court, may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed.R.Civ.P. 26(c)(1).

**B.      Application of the Hague Convention to Discovery**

The United States, the Federal Republic of Germany and several other nations have acceded to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 ("Hague Convention").  The Hague Convention prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state.  *See id.*  The Hague Convention specifically authorizes the use of Letters of Request to obtain evidence.  *Id.*  Letters of Request are issued by a judicial authority of the requesting state to a Central Authority of another state, which in turn transmits the letter to the authority competent to execute the letter.  *Id.* at Articles 1-2.  The judicial authority which executes the letter of request shall apply its own law and may refuse to execute the letter if the request is incompatible with its own internal law.  *Id.* at Article 9.  Further, a country may declare that it will not execute letters of request issued by common law countries for the purpose of obtaining pretrial discovery of documents.  *Id.* at Article 23.

The United States Supreme Court's decision in *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522 (1987) is the seminal case regarding the extent to which a federal district court must employ the procedures set forth in the Hague Convention to discovery of foreign defendants.  *Aerospatiale* involved a negligence and breach of warranty suit against French corporations engaged in the business of designing, manufacturing and marketing aircraft.  *Id.* at 524-25.  The French corporations did not contest jurisdiction.  *Id.* at 525.  The French corporations filed a motion for protective order upon receipt of requests for production, interrogatories, and requests for admissions.  *Id.*  The motion alleged that because the defendants were French corporations and the discovery sought could only be

found in France, the Hague Convention dictated the exclusive procedures for pretrial discovery. *Id.* at 525-26.  The Magistrate Judge denied the motion reasoning that "to permit the Hague Evidence Convention to override the Federal Rules of Civil Procedure would frustrate the courts' interests, which particularly arise in products liability cases, in protecting United States citizens from harmful products and in compensating them for injuries arising from use of such products."  *Id*. at 526-27.  Defendants then sought a writ of mandamus from the Court of Appeals for the Eighth Circuit.  *Id*. at 527.  The Court of Appeals, agreeing with the decision of the Magistrate Judge, denied the petition for mandamus.  *Id*. at 528-29.  The United States Supreme Court granted *certiorari*.  *Id*. at 529.

The Supreme Court considered the defendants' contention that the Hague Convention provides the exclusive and mandatory procedures for obtaining documents and information located within the territory of a foreign signatory.  *Id*.  The Court affirmed the Court of Appeals rejection of "this extreme position" reasoning "the text of the Evidence Convention, as well as the history of its proposal and ratification by the United States, unambiguously supports the conclusion that it was intended to establish optional procedures that would facilitate the taking of evidence abroad."  *Id*. 529, 538.  The Court further reasoned that a rule of exclusivity in favor of the Hague Evidence Convention "would subordinate the court's supervision of even the most routine of these pretrial proceedings to the action or, equally, to the inactions of foreign judicial authorities,"  *Id*. at 539.  Accordingly, the Court concluded that the Hague Convention does not deprive the district court of the jurisdiction it otherwise possessed under the Federal Rules to order a foreign party to produce evidence.  *Id*. at 539-40.

However, the Supreme Court disagreed with the Court of Appeals' conclusion that the Hague Convention never applies to discovery sought from a foreign litigant who is subject to the

jurisdiction of an American court. The Court concluded that it is possible that the Hague Convention could apply in this situation, but only as "one method of seeking evidence that a court may elect to employ" when it "will facilitate the gathering of evidence." *Id*. at 541. But, because of the Court's concerns regarding the "unduly time consuming and expensive" and "less certain" Letter of Request procedure authorized by the Hague Convention, the Court rejected a rule of first resort to the Hague Convention reasoning that such would be "inconsistent with overriding interest in the 'just, speedy, and inexpensive determination' of litigation in our courts." *Id*. at 542-43.

The Court also considered defendants' argument that a rule of first resort to the Hague Convention is necessary to accord respect to the sovereignty of states in which evidence is located. In response, the Court "declined to hold as a blanket matter that comity requires resort to Hague Evidence procedures without prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." *Id*. at 544.

On remand from the Supreme Court, the United States Court of Appeals for the Fifth Circuit in *In re Anschuetz & Co.*, 838 F.2d 1362 (5th Cir. 1988), was directed to reconsider its earlier opinion regarding application of the Hague Convention to pretrial discovery of a foreign defendant in light of the recently decided *Aerospatiale*. In *Ansheutz*, a German company that manufactured steering devices was named as a third-party defendant in litigation concerning a boat accident. *Id.* at 1363. During pretrial discovery, the German defendant filed a motion for protective order claiming that discovery requests issued pursuant to the Federal Rules violated the Hague Convention. *Id*. The Fifth Circuit adopted the holding in *Aerospatiale* stating "[t]here can be no mistake that the Supreme Court intended that the district court exercise wide

-12-

discretion in resolving conflicts between the [Federal Rules and the Hague Convention]....The district court is only directed to determine whether the Hague Convention proceedings are appropriate after 'scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to these procedures would prove effective.'" *Id*. at 1364 (citing *Aerospatiale*, 482 U.S. at 544). Accordingly, the Fifth Circuit remanded the case holding that the *Aerospatiale* test is the standard that should be applied by the district court.

The United States Court of Appeals for the Third Circuit in *In re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288 (3rd Cir. 2004), addressed the issue of whether jurisdictional discovery from foreign nationals may proceed under the Federal Rules without first resorting to the Hague Convention. *Automotive Refinishing,* a multi-district litigation matter, involved federal antitrust claims against foreign and domestic defendants who allegedly conspired to raise and maintain the prices of automotive refinishing paint. *Id*. at 290-91. Two defendants, both German corporations, filed motions to dismiss for lack of personal jurisdiction. *Id*. at 291. Plaintiffs opposed the motions and served jurisdictional discovery requests pursuant to the Federal Rules. *Id*. In response, the defendants filed a motion for a protective order arguing that jurisdictional discovery should proceed first under the Hague Convention because the procedures employed under the Federal Rules offended Germany's sovereign interests. *Id*. The district court denied the motion and the Third Circuit affirmed. *Id*. The Third Circuit expressly adopted the Supreme Court's decision in *Aerospatiale*. *Id*. at 299-301. However, the Third Circuit recognized that *Aerospatiale* failed to address, (1) which party bears the burden of convincing the court of an optional and supplemental use of the Hague Convention, and (2) what procedures to follow in a case where jurisdiction is contested and discovery sought is limited only to proof of jurisdiction. *Id*. at 301. As to the former issue of which party bears the burden

-13-

of persuasion under the *Aerospatiale* three-factor balancing test, the Third Circuit held that the proponent of the Hague Convention bears this burden. *Id*. at 305. As to the latter issue, the defendants argued that *Aerospatiale* is not applicable to jurisdictional discovery and as a result, resort to the Hague Convention is proper where personal jurisdiction has yet to be established. *Id*. The Third Circuit recognized that the Court in *Aerospatiale* made numerous references to the existence of personal jurisdiction, but declined to conclude that the *Aerospatiale* holding is dependant upon personal jurisdiction. *Id*. In support of its conclusion, the Third Circuit put forth the following reasons. First, the Third Circuit concluded, citing *In re Vitamins, Antitrust Litig*., 120 F.Supp.2d 45, 49 (D.D.C. 2000), that because the district court has jurisdiction over the foreign defendants to the extent necessary to determine whether they are subject to personal jurisdiction, there exists no legal barrier to exercising the discretion given to trial courts by *Aerospatiale* in cases of jurisdictional discovery. *Id*. at 302. The Third Circuit also noted that this conclusion was consistent with that reached by the majority of trial courts. *Id.* However, the Third Circuit did recognize its decision was limited to cases in which plaintiffs had alleged at least a *prima facie* case of personal jurisdiction. *See id.* Second, the Third Circuit concluded that because merits discovery is expected to be more burdensome or comprehensive than jurisdictional discovery, there is more justification to reject a first resort rule for the more limited and less intrusive jurisdictional discovery. *Id.* Third, the Third Circuit concluded that there is less justification to adopt a first resort rule where the defendants face no sanctions because Germany has no "blocking statute." *Id.* Fourth, the Third Circuit concluded that there exists "no reason to assume that discovery under the Federal Rules would inevitably offend Germany's sovereign interest because presumably Germany, like the United States, would prohibit the alleged price-fixing conspiracy and would welcome investigation of such antitrust violation to

-14-

the fullest extent." *Id*. at 304. Fifth, the Third Circuit concluded that discovery abuse is an insufficient reason to avoid the Federal Rules because there exist sufficient safeguards in the district courts to restrict discovery abuse. *Id*. at 305.

Two cases out of the U.S. District Court, Eastern District of Louisiana have addressed whether the Hague Convention should be applied to discovery of foreign defendants. In *Jenco*, 1988 WL 54733, a foreign defendant from Norway filed a motion for review of the Magistrate Judge's order requiring that certain jurisdictional discovery should proceed under the Federal Rules. The Court, in applying *Aerospatiale*, determined that protection of a foreign litigant's interest is paramount while jurisdiction is being challenged and applied the Hague Convention to the depositions of non-parties. *Id*. However, the court failed to address the portion of the Magistrate Judge's order requiring depositions of the foreign defendants to proceed under the Federal Rules and left undisturbed the portion of the Magistrate Judge's order allowing interrogatories and document requests to proceed under the Federal Rules. *Id*. Subsequently, the Third Circuit in *Automotive Refinishing* criticized the decision in *Jenco* as containing "almost no meaningful analysis" and declined to follow the decision. *Automotive Refinishing*, 358 F.3d at 301.

Additionally, the Eastern District in *Adams v. Unione Mediterranea Di Sicurta*, 2002 WL 472252 (E.D. La. Mar. 28, 2002), addressed the issue of whether the Hague Convention applied to discovery regarding personal jurisdiction. The Court, following *Aerospatiale*, denied the foreign defendants' request for application of the Hague Convention to jurisdictional discovery. *Id*. at *3. The Court reasoned that noncompliance with the discovery issued pursuant to the Federal Rules "would likely undermine important interests of this federal court in conducting litigation properly before it and of litigants in the United States." *Id*.

### C.      Analysis of Knauf's Motion for Protective Order

In the instant multidistrict litigation, the Court, as the transferee court, has inherent authority to exercise control over any and all proceedings prior to trial, including discovery proceedings.  *See* 28 U.S.C. § 1407(a), (b); *In re Clients,478 F.3d at 671-72*; *Trevino*, 701 F.2d at 406.  This inherent authority includes the discretion to resolve conflicts between the Hague Convention and Federal Rules and to apply appropriate discovery techniques to obtain documents and information located within a territory of a foreign signatory.  *In re Anschuetz &Co.*, 838 F.2d 1362 (5th Cir. 1988).  Accordingly, it is within the Court's discretion to enter a protective order requiring application of the Hague Convention to discovery.  *Id*; *Front-Line Promotions & Marketing, Inc. v. Mayweather Promotions, L.L.C.*, 2009 WL 928568 (E.D. La. 2009).

The Court is guided by the Supreme Court's decision in *Aerospatiale*, 482 U.S. 522 (1987), the seminal case involving the issuance of a protective order requiring the application of the Hague Convention to discovery procedure.  *Aerospatiale* affirmed the Court of Appeals insofar as to hold that the Hague Convention is an optional procedure for taking evidence abroad which does not supplant the Federal Rules.  *Id.* at 538-39.  The Supreme Court directed district courts to conduct a three-factor balancing test which considers, (1) the facts of the case, (2) the sovereign interests involved, and (3) the efficiency of the Hague Convention procedures to determine whether to apply the Hague Convention to discovery.  *Id.* at 544.

At issue in *Aerospatiale* was a motion for protective order involving merits discovery only.  *Id.* at 525.  However, jurisprudence supports the application of *Aerospatiale* to protective orders involving jurisdictional discovery as well.  First, it should be noted that the Supreme Court in *Aerospatiale* did not limit its decision to merits discovery.  *Id.*  Additionally, the Third

-16-

Circuit applied *Aerospatiale* in deciding whether to grant a motion for protective order involving only jurisdictional discovery. *In re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288 (3rd Cir. 2004). The Third Circuit reasoned that because merits discovery is expected to be more burdensome or comprehensive than jurisdictional discovery, there is more justification to apply *Aerospatiale* to the more limited and less intrusive jurisdictional discovery. *Id*. at 302. The Eastern District has also applied the *Aerospatiale* balancing test to jurisdictional discovery. *See Jenco v. Martech International, Inc*., 1988 WL 54733 (E.D. La. May 19, 1988); *see also Adams v. Unione Mediterranea Di Sicurta*, 2002 WL 472252 (E.D. La. Mar. 28, 2002).

With regard to the application of *Aerospatiale* to jurisdictional discovery, Knauf argues that if *Aerospatiale* applies to jurisdictional discovery, it does not in the instant matter because Plaintiffs have failed to establish a *prima facie* case of personal jurisdiction against Knauf.  The Court agrees that the Third Circuit in *Automotive Refinishing* limited the application of *Aerospatiale* to jurisdictional discovery in cases where plaintiffs have established a *prima facie* case of personal jurisdiction so as to prevent discovery "fishing expeditions" under the Federal Rules.  *See  Automotive Refinishing,* 358 F.3d at 302-03.   However, the Court finds that the *prima facie* requirement does not present a challenge to the application of *Aerospatiale* in the instant matter.  Plaintiffs have established a *prima facie* case of personal jurisdiction against Knauf by alleging 30 factually-specific jurisdictional contacts on the part of Knauf in their complaints, *see e.g.*, Complaints in *Morris-Chin v. Knauf Plasterboard Tianjin, Co.* (MDL Case No. 09-4119), *Simmons v. Knauf Gips KG* (MDL Case No. 09-3639)*, Ankney v. Knauf Gips KG* (MDL Case No. 09-4113), *Vickers v. Knauf Gips KG* (MDL Case No. 09-4117), and putting forth information from Knauf's own website and shipping records which suggest Knauf has numerous factual connections with the instant case.  Additionally, the Court finds that the

-17-

discovery of drywall bearing the name "Knauf" during inspections of homes afflicted by the allegedly defective drywall establishes a *prima facie* case of personal jurisdiction against Knauf. Accordingly, Aerospatiale clearly applies to the issue raised in the instant Motion.

The burden of establishing that the Hague Convention should apply under the *Aerospatiale* balancing tests lies with the proponent; here, that is Knauf. This is consistent with the both the Third Circuit's holding in *Automotive Refinishing*, 358 F.3d at 305, and the general applicable burden in a motion for protective order. *See In re Terra Int'l, Inc*. 134 F.3d 302, 306 (5th Cir. 1998).

An analysis under the *Aerospatiale* balancing test results in the conclusion that the Hague Convention should not apply to jurisdictional or merits discovery of Knauf. At the outset, it should be noted that this conclusion is consistent with the jurisprudence. *See e.g. Aerospatiale*, 482 U.S. 522 (1987); *In re Anschuetz & Co*., 838 F.2d 1362 (5th Cir. 1988); *In re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288 (3rd Cir. 2004); *Adams v. Unione Mediterranea Di Sicurta*, 2002 WL 472252 (E.D. La. Mar. 28, 2002).

Under the first factor of the *Aerospatiale* test, the particular facts of the case, application of Federal Rules is warranted. The instant matter involves thousands of U.S. homes afflicted with allegedly defective drywall imported from foreign countries. Of these homes inspected thus far, several contain drywall bearing Knauf's name. This drywall is alleged to have rendered these homes uninhabitable, causing owners and renters to incur great expense and suffer great inconvenience. Knauf has benefitted from the alleged manufacture, distribution and sale of this drywall in the United States; now that this drywall has harmed U.S. citizens, Knauf should not be allowed to invoke the Hague Convention to avoid the timely production of relevant information under the U.S.'s Federal Rules discovery. Because the instant matter is a products

liability action, according to the Supreme Court in *Aerospatiale*, the Court has an interest in protecting U.S. citizens from harmful products and in compensating them for injuries arising from use of such products which is frustrated by application of the Hague Convention. *See Aerospatiale*, 482 U.S. as 525-26. Additionally, because the instant matter is also one in multidistrict litigation, the transferee court has a higher responsibility than a typical district court in resolving discovery issues effectively and timely. *See In re Plumbing Fixtures Cases*, 298 F.Supp. 484, 499 (J.P.M.L. 1968); Manual for Complex Litigation (Fourth) § 20.131, at 220 (2004). Accordingly, the transferee court is obligated to apply the most effective discovery procedures, which as discussed in more detail below, are the Federal Rules discovery procedures.

Under the second *Aerospatiale* factor, the sovereign interests involved, the United States's sovereign interest is superior to Germany's, thus application of the Federal Rules is warranted. The Court recognizes Germany has a sovereign interest in upholding its discovery laws through application of the Hague Convention. However, the U.S.'s sovereign interest in providing thousands of its citizens who have been harmed by allegedly defective drywall recourse against the foreign manufacturers of such drywall is superior. This is especially accurate given the urgency of the instant matter due to the progressive nature of the damages rendered by the allegedly defective drywall, the displacement and inconvenience of thousands of persons due to the destruction of their homes, and the increasing costs incurred by such persons. Accordingly, the U.S.'s discovery procedures under the Federal Rules should be applied.

Under the third *Aerospatiale* factor, the likelihood that resort to the Hague Convention procedures will be effective, application of the Federal Rules is warranted. The Hague Convention prescribes the use of Letters of Request to conduct discovery. Hague Convention on

the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781.  The Supreme Court has determined that Letters of Request are "unduly time consuming and expensive" and "less certain" than Federal Rules procedures.  *Aerospatiale*, 482 U.S. at 542-43.  Subsequent courts have agreed that discovery procedures under the Hague Convention are slow, cumbersome and take longer than discovery procedures under the Federal Rules.  *See In re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 300 (3rd Cir. 2004); *Hagenbuch v. 3B6 Sistemi Elettronici*, 2005 WL 6246195, *5 (N.D. Ill. Sept. 12, 2005); *Schindler Elevator Corp. V. Otis Elevator Co.*, 2009 WL 3069651, *4 (September 24, 2009).  This has been reflected in the present case. Specifically, in the present case, Plaintiffs used the Hague Convention to perfect service on foreign defendants; months later, Plaintiffs are still waiting for a response.  Further, the Hague Convention permits countries, such as Germany, to refuse to execute Letters of Request issued by common law countries, such as the U.S., for the purpose of obtaining pretrial discovery. Hague Convention, 23 U.S.T. 2555.  The Court has given the parties 15 days to provide responses to discovery.  Based on the experience of this Court and the courts cited above, and the own admission of Knauf's counsel at the hearing before the Court on October 15, 2009, discovery under the Hague Convention cannot realistically be produced within this time frame. The Court has repeatedly emphasized the need for expedited discovery in the instant matter; based on the foregoing, application of the Hague Convention would present a significant hurdle to such.  In conclusion, the analysis under the *Aerospatiale* three-factor balancing test requires application of the Federal Rules, and not the Hague Convention, to discovery of Knauf in the instant matter.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that Knauf Gips KG's Motion for Protective

Order to Require Use of the Hague Evidence Convention (Rec. Doc. No. 252) is DENIED.

New Orleans, Louisiana, this __27th__ day of October, 2009.

_____
ELDON E. FALLON
UNITED STATES DISTRICT JUDGE