UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL   MDL DOCKET: 2047
PRODUCTS LIABILITY LITIGATION

SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

**THIS DOCUMENT RELATES TO:**
**09-4112 through 09-4120**
**09-4294 through 09-4322**
**All other consolidated and tag-along actions**
**alleging construction defects in the State of Florida**
_____/

# HOMEBUILDERS' STEERING COMMITTEE'S REPLY TO PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ABATE AND COMPEL COMPLIANCE WITH CHAPTER 558, FLORIDA STATUTES

The Homebuilders' Steering Committee ("HSC"), hereby replies to the Plaintiffs' Steering Committee's ("PSC"), response in opposition (the "Response"), to the HSC's memorandum of law (the "Memo"), in support of its Motion to Abate and Compel Compliance with Chapter 558, Florida Statutes (the "Motion"), and states:

## I. The purpose of Chapter 558, Florida Statutes, is to facilitate settlement

The PSC suggests that the purpose of Chapter 558, Florida Statutes (referred to herein as "Chapter 558"), is to "protect property owners," and the purpose of the Motion is to delay this action. *See* Response, page 5. Rather, the stated purpose of Chapter 558 is to "reduce the need for litigation as well as protect the rights of property owners."[1] *See* § 558.001, Fla. Stat. The PSC further argues, without citing any authority, that Chapter 558 is not a mandatory condition precedent to bringing any civil action or arbitration proceeding for construction defects that are

---

[1] The PSC conveniently failed to include the reference to "reduc[ing] the need for litigation" in its citation to § 558.001, Fla. Stat., on page 5 of the Response.

alleged to have occurred in the State of Florida. Quite clearly, Chapter 558 requires compliance therewith **before** filing any action that falls thereunder. *See* §§ 558.003 ("A claimant may not file an action subject to this chapter without first complying with the requirements of this chapter.") and 558.004, Fla. Stat. Perhaps in acknowledgement of this fact, members of the PSC sent notices on behalf of their clients citing to Chapter 558 well before cases were consolidated in this multidistrict litigation proceeding ("MDL"), and have continued to send notices citing to Chapter 558 (with greater frequency) since the filing of the Motion.

The HSC seeks to remedy the plaintiffs' violation of Chapter 558 by asking this Court to abate any actions that were filed without first meeting the requirements of Chapter 558 so that those plaintiffs, as clearly indicated by title of the Motion, could be compelled to comply with Chapter 558 in an effort to facilitate settlement. The HSC does not intend for the Motion to apply to all plaintiffs; only those who have not complied with Chapter 558. The HSC acknowledges that most, if not all, plaintiffs are currently at various stages of the process mandated by Chapter 558 and that compliance with Chapter 558 must be evaluated and abatement decided on a case-by-case basis. Consequently, the PSC's blanket comments regarding "inaction" or "waiver" on the part of the HSC as a whole are without merit and add nothing of value to the Court's consideration of this issue.

In filing the Motion, the HSC merely seeks compliance with and the enforcement of the statutory conditions precedent to filing suit for those plaintiffs who have not yet complied. The HSC acknowledges that there may be named plaintiffs who have complied with the requirements of Chapter 558. The Motion is not directed to those plaintiffs, if any.

## II.   Application of Chapter 558 to actions alleging a construction defect

The PSC has argued that Chapter 558 does not apply to claims that "are grounded in well-established Florida products liability jurisprudence" and that Chapter 558 is "warranty-related." In so arguing, the PSC claims that the "HSC has not cited to one case or other authority contradicting this basis of the Florida Plaintiffs' [argument]." *See* Response, page 3. The PSC could not be more wrong. In the Memo, and again here, the HSC cites to Chapter 558, specifically, § 558.002(4)(a) Fla. Stat., enacted by the Florida Legislature (which trumps even "well-established" jurisprudence), which defines the "construction defect[s]" to which Chapter 558 applies to include "[d]efective material, products, or components used in the construction or remodeling." Thus, it could not be more clear that plaintiffs' claims for damages resulting from defective products are exactly what Chapter 558 was meant to address.

The PSC also argues that Chapter 558 does not apply because the plaintiffs have made a claim for what the PSC has termed (for purposes of the Response) "personal injury/medical monitoring." First, there is no such cause of action for "personal injuries/medical monitoring." The PSC has conjured up this purported cause of action solely for the purposes of their argument in response to the Motion. Most, if not all, of the plaintiffs filing lawsuits in this MDL have asserted a claim for "medical monitoring." As one of the PSC members recently argued to Judge Joseph Farina in the Chinese Drywall cases pending in state court in Miami-Dade County, Florida:

> You cannot allege a personal injury as a matter of law in order to qualify for medical monitoring. You have to have no injury because if you have an injury, if you sustained an injury by definition you're not entitled to medical monitoring.

*See* October 16, 2009 Hearing Transcript from In Re: Chinese Drywall, pp. 100-102, the relevant excerpts of which are attached hereto as Exhibit "A."[2] To the extent that any plaintiffs have actually made claims for personal injuries, then the Court should evaluate those claims and their propriety in the context of the Motion. However, Chapter 558 does not exempt claims for medical monitoring or property damage. Yet, the PSC suggests that the Court should ignore the Plaintiff Profile Forms submitted by each claimant under penalty of perjury and instead rely on the complaints drafted by the plaintiffs' attorneys to determine whether a claim for "personal injury/medical monitoring" has been made. *See* Response, n. 7.

**"Threshold evidentiary burden"**

The PSC has also conjured up a requirement, found nowhere in Chapter 558, that each defendant must satisfy a "threshold evidentiary burden" before Chapter 558 applies to any particular case. Neither § 558.005, Fla. Stat., or any other provision in Chapter 558, contains such a "threshold evidentiary burden," or any other burden, for any contractor to prove or proffer anything prior to enforcing Chapter 558. If the PSC believes that a particular plaintiff has a defense to the enforcement of Chapter 558, then that plaintiff should be able to present that defense to this Court. However, with regard to the PSC's "threshold evidentiary burden," the Florida Legislature, in an effort to correct the apparently frequent misinterpretation of § 558.005, Fla. Stat., amended § 558.005, effective October 1, 2009, to state:

> The failure to include in the contract the notice provided in this subsection does not subject the contracting owner, contractor, or design professional to any penalty. The purpose of the contractual notice is to promote awareness of the procedure, not to be a penalty.

---

[2] If, as the PSC suggests, the *Vickers* plaintiffs are indeed making claims for personal injuries, then it would seem that the *Vickers* plaintiffs are not eligible for consideration as a bellwether trial. However, even the attorney for the *Vickers* plaintiffs, Ervin Gonzalez, who is also a member of the PSC, has acknowledged that a claim for medical monitoring is <u>not</u> a claim for personal injury. Ironically, paragraphs 269-281 of the *Vickers* amended complaint, cited by the PSC in the Response, include the same paragraph in which the *Vickers* plaintiffs request the relief the HSC is attempting to get the opportunity to perform by enforcing Chapter 558 – *i.e.,* to "remedy, repair, or replace the drywall in the homes." *See Vickers* Amended Complaint, ¶ 272.

4

### III. Requirements of Chapter 558

The PSC argues that the MDL proceeding has provided the HSC with ample notice of the "nature of the Florida Plaintiffs' Chinese-manufactured drywall related claims." *See* Response, page 4. Obviously, the HSC is not primarily concerned with notice of the claims of the Florida plaintiffs who are named in cases pending in the MDL and who have submitted properly completed Plaintiff Profile Forms. The HSC is concerned with notice of claims for claimants who have been unnamed, unidentified, and are otherwise unknown to the HSC. The PSC acknowledges in their Response that not all Florida plaintiffs have served notices required by Chapter 558. *See* Response, page 4.

As set forth in the Memo, Chapter 558 requires much more than just notice. The PSC suggests that the passage of time cures every plaintiffs' violation of Chapter 558, because the HSC and other defendants have been placed on sufficient notice of the plaintiffs' claims. The PSC fails to understand that Chapter 558 requires notice and the opportunity to inspect and perform destructive testing, and the opportunity to make an offer to settle. Perhaps most notably, as this seems to be the requirement that very few claimants have completed, Chapter 558 also requires a written acceptance or rejection of the offer to settle prior to filing suit. *See* § 558.004(7) Fla. Stat. This requirement is so important to the Florida Legislature that the mandatory abatement provision is reiterated therein: § 558.004(7), Fla. Stat., explicitly states that "[i]f a claimant initiates an action without first accepting or rejecting the offer, the court shall abate the action upon timely motion until the claimant complies with this subsection."

The PSC ignores the contractors' statutory right to avoid litigation altogether by failing and refusing to comply with all of the requirements of Chapter 558 prior to filing suit and instead argues that Chapter 558 contemplates compliance after suit is filed. The plain language of

5

Chapter 558 refutes this argument. Pursuant to § 558.003, Fla. Stat., a claimant may not file an action subject to Chapter 558 without first complying with the requirements of Chapter 558. *See* § 558.003, Fla. Stat. If a claimant files an action subject to Chapter 558 without complying with the requirements of Chapter 558, the Court shall, upon timely motion, abate the action without prejudice, and the action may not proceed until the claimant has complied with the statute. See § 558.003, Fla. Stat.[3] The abatement provisions of Chapter 558 are remedies for its violation, not contemplation of excusing same.

**"Bona fide offers of settlement"**

Once again, the PSC conjures up a requirement not found in Chapter 558, in an attempt to place the burden of compliance on the contractor, when it argues that offers of settlement under Chapter 558 must be "bona fide offers of settlement" that are acceptable to and accepted by the claimant. *See* Response, page 5. Chapter 558 only requires a "written response" that falls within five separate categories – four of which include offers of settlement, one of which includes a written statement that the claim is disputed. There is no requirement that an offer of settlement must be "bona fide" or acceptable to or accepted by a plaintiff prior to Chapter 558 taking effect. Such an argument is incomprehensible. The contractor need only make a written response or dispute the claim. If the latter, the claimant is free to file suit. *See* § 558.004(6), Fla. Stat. If the former, the claimant must serve a written acceptance or rejection of the offer prior to filing suit. *See* § 558.004(7), Fla. Stat.[4]

---

[3] Effective October 1, 2009, § 558.003, Fla. Stat., will require the court to "stay," rather than "abate," any action filed without first complying with Chapter 558. *See* Exhibit "B" to the Memo.

[4] The apparent incongruity of accepting an offer of settlement *and* filing suit is resolved by the last sentence of § 558.004 (6), which acknowledges the possibility of settling part of a claim and proceeding to suit on the unresolved portions.

Nonetheless, members of the HSC have made "bona fide offers of settlement" to plaintiffs, which include offers to, among other things, remedy the alleged construction defect and rebuild the interior of the claimant's home at no cost to the claimant, pay or reimburse relocation and moving expenses, and, in some instances, pay or reimburse for alleged damage to personal property. The "bona fide offers of settlement" made to plaintiffs also reserve to plaintiffs any claims for personal injuries that they may have. A copy of a sample written offer is Exhibit "B," hereto and filed under seal along with this Reply. These "bona fide offers of settlement" have been accepted by the vast majority of claimants – a testament to their good faith nature and acceptability. In fact, certain HSC members have been successful entering into "bona fide offers of settlement" with named plaintiffs in this MDL proceeding after they finally decided to comply with Chapter 558.[5]

Despite the comprehensive offers of settlement made by members of HSC, some plaintiffs have unfortunately ignored those offers, apparently disregarded the possibility of even partial acceptance thereof, and otherwise refused and failed to comply with the requirements placed upon them by Chapter 558 to either accept or reject the offers of settlement.

**Exchange of discoverable information**

Similarly, plaintiffs have ignored requests for discoverable information made pursuant to § 558.004(15), Fla. Stat. The PSC has attempted to argue that because members of the HSC have not volunteered to provide discoverable information, the entire panoply of requirements and rights set forth in Chapter 558 are no longer in force. Once again, the PSC's argument falls short

---

[5] For example, Lorena and Angela Garcia filed suit against Lennar Corporation, Lennar Homes, LLC, and U.S. Home Corporation (collectively, "Lennar") in the Southern District of Florida on March 23, 2009. On September 2, 2009, after the case was transferred to this MDL (Lorena Garcia, et al v. Lennar Corporation, et al., Case No.: 2:09-cv-04118-EEF-JCW (E.D. La.)), the Garcias served Lennar with a notice of claim under Chapter 558, a copy of which is attached hereto as Exhibit "C". Thereafter, on September 28, 2009, the Garcias accepted Lennar's offer to settle their property damage claims by entering into a Work Authorization Agreement with Lennar. A copy of an October 23, 2009, letter confirming this settlement is attached hereto as Exhibit "D".

based upon the plain language of the statute. The obligation to provide discoverable information is only triggered under Chapter 558 "upon request." *See* § 558.004(15), Fla. Stat. The PSC does not argue or suggest that requests for such information have been made and ignored by members of the HSC. Moreover, the penalty for failing to provide information actually requested is not the abrogation of Chapter 558, but such sanctions as the court may impose for a discovery violation. *See id.*

### *De facto* abatement

The PSC argues that the Motion is moot because of the *de facto* abatement that has occurred by way of the stay entered by the Court in the MDL proceeding. The PSC's argument fails for several reasons. First, the PSC has failed and refused to provide, and vehemently argued against providing, complete and comprehensive Plaintiff Profile Forms for named plaintiffs in matters pending in the MDL and for those represented claimants who are not yet named plaintiffs in the MDL or who are putative class members. The PSC cannot argue that the HSC have "enjoyed" *de facto* abatement of the claims of the Florida claimants when the HSC does not even know the identity of all the Florida claimants. As of the drafting of this Reply, HSC members continue to receive notice letters citing Chapter 558 from members of the PSC for homes owned by putative class members who have not submitted Plaintiff Profile Forms.

Second, for some named plaintiffs, the requirements of Chapter 558 – for notices of claim, inspections, destructive testing, and the opportunity to make written settlement offers – have already occurred. For those plaintiffs, the only remaining requirement to complete the conditions precedent to filing suit is the service on the contractor of a written acceptance or rejection of the offer of settlement.[6] Thus, "the ball" has been in plaintiffs' attorneys' "court"

---

[6] The HSC reserves the right to seek sanctions against plaintiffs who failed to respond to requests for discoverable information, pursuant to § 558.004(15), Fla. Stat.

during the period of any *de facto* abatement, and any delay in complying with the requirements of Chapter 558 during that time period falls on them.

Third, the PSC's argument ignores the plain language of the statute, which requires abatement as a remedy for filing suit in violation of Chapter 558. As set forth above, § 558.004(7), Fla. Stat., states that "[i]f a claimant initiates an action without first accepting or rejecting the offer, the court **shall** abate the action upon timely motion until the claimant complies with this subsection." Thus, even if there has been *de facto* abatement, once the Court's stay is lifted, Chapter 558 requires the continued abatement of the claims filed by plaintiffs who have not complied therewith.

Perhaps if the PSC expended the time and energy it has used arguing against the applicability of Chapter 558 on actually complying with Chapter 558, the Motion really would be moot.

### IV.  Conclusion

Having engaged in the premature filing of lawsuits that fall under the provisions of Chapter 558, and, consequently, having precipitated the need for the Motion and the Memo, the PSC cannot credibly suggest it is the HSC that seeks the delay of the MDL proceeding by filing the Motion. In bringing the Motion, the HSC seeks the speedy resolution of plaintiffs' claims through the remediation, replacement, and repair of drywall in their homes. Despite having prayed for the same relief offered to their clients through the procedures mandated by Chapter 558 (*i.e.*, the repair and replacement of drywall), the PSC has ignored the possibility of partially resolving their clients' claims. By failing to comply with the simple requirements of Chapter 558, the only delay of the resolution of the matters to which the Motion is directed, whether through settlement or trial, has been caused by the plaintiffs' attorneys.

Respectfully submitted,

/s/ Stephen E. Walker
Neal A. Sivyer
Florida Bar No. 373745
nsivyer@sbwlegal.com
Stephen E. Walker
swalker@sbwlegal.com
Florida Bar No. 0497851
**SIVYER BARLOW & WATSON, P.A.**
401 E. Jackson Street, Suite 2225
Tampa, Florida 33602
Telephone: (813) 221-4242
Facsimile: (813) 227-8598
*Attorneys for Taylor Morrison Services, Inc. and Taylor Woodrow Communities at Vasari, LLC*

## CERTIFICATE OF SERVICE

I HEREBY certify that on November 4, 2009, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller by U.S. Mail and email or by hand delivery and email upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No.: 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

/s/ Stephen E. Walker
Stephen E. Walker

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

DIVISION NO.:  42 (Judge Farina)


IN RE:

CHINESE DRYWALL

_____/


Dade County Courthouse,
73 West Flagler Street,
Friday, 10:00 a.m.,
October 16, 2009.


(OMNIBUS MOTION CALENDAR)


   The above-entitled cause came on for a hearing before The Honorable Joseph P. Farina, Circuit Court Judge, pursuant to notice.

Exhibit "A"

1     Causation is alleged on Paragraph 189
2     through 90 and damages are alleged specifically
3     in 189 through 90.
4         The negligence claim short and simple
5     statement of the facts.  You have seen the
6     negligence counts in the rulebook which is
7     basically the defendant was negligent and the
8     Supreme Court says that is enough.
9         However, we allege the duties on Paragraph
10    192 in great detail and the breaches of those
11    duties in great details.  We also allege
12    causation and damages which are the elements of
13    negligence.
14        The claim that the economic loss doctrine
15    bars the claim is not really a basis for a
16    motion to dismiss.  A motion to dismiss only
17    looks at the four corners of the complaint to
18    determine whether a cause of action has been
19    properly pled.
20        They are claiming they are barred
21    substantively under the economic loss doctrine.
22    While we disagree with it because even under --
23    even if it were a contract claim, you are
24    entitled to recover damages for other property
25    under that copycat case, that landmark Supreme

1  Court case, but in this particular case where
2  there is no privity, we are entitled to our
3  full tort damages and that has become clear
4  since 2004 by -- and thereafter there are
5  numerous Supreme Court cases.
6      Unjust enrichment, Your Honor, we are
7  happy to withdraw it because we don't rely on
8  it.  So we will withdraw the unjust enrichment
9  count.
10     As to injunctive relief, Mr. Schwartz is
11 at a disadvantage.  I handled the Petitor case
12 which is the landmark case that created medical
13 monitoring in the State of Florida.  So I know
14 it like the back of my hand because I argued it
15 at the trial court level and argued it at the
16 appellate court level and I wrote the brief on
17 it.
18     You cannot allege a personal injury as a
19 matter of law in order to qualify for medical
20 monitoring.  You have to have no injury because
21 if you have an injury, if you sustained an
22 injury by definition you're not entitled to
23 medical monitoring.  It's injunctive relief.
24     So there cannot be any adequate remedy of
25 law.  If you have an injury, you have an

1   adequate remedy of law.
2         What medical monitoring states under the
3   Petito decision, which is a Third District
4   Court of Appeals case, is that if the risk of
5   injury is present, even though not even yet
6   manifested, the defendant that has caused that
7   risk or substantially contributed to that risk
8   is responsible to monitor the plaintiff, to
9   mitigate future injury or to diagnose early
10  injury that has not yet been diagnosed.
11        So if you already have an injury, if you
12  are already are infirmed, you do not qualify
13  for medical monitoring.  So it is necessarily
14  exclusive.  We could not allege what they
15  suggested to the Court now and have a medical
16  monitoring claim.
17        Being extremely familiar with the elements
18  required under Petito, we have alleged those
19  elements in Paragraphs 206, 208, 209, 210 as
20  well as specifically setting forth the remedies
21  requested under Paragraph 207 and 208.
22        The landmark case, of course, is Petito,
23  750 So2d 103 and we have tracked those elements
24  to a great detail.
25        So accordingly, Your Honor, we have stated

1  a cause of action.  Our pleadings looking at
2  the four corners of them state a valid cause of
3  action and we request that the Court deny both
4  motions and we thank the Court for its time.
5          THE COURT:  Mr. Schwartz, you have the
6  last word.  Anything else?
7          MR. SCHWARTZ:  I'm satisfied with our
8  record.
9          THE COURT:  Thank you all very much.  I
10 will reserve on that and I will get back to you.
11 Thank you.
12         Anything else before the Court at this
13 time?  Anyone need to be here at 1:45 this
14 afternoon?  I see no hands.
15         Thank you all very much.  Have a good day.
16         MR. DIAZ:  Thank you, Your Honor.
17         MR. FITZSIMMONS:  Thank you, Your Honor.
18         (Thereupon, at 12:00 p.m. the hearing was
19 concluded.)
20
21
22
23
24
25

PROPOSED EXHIBIT "B"

BEING FILED UNDER SEAL BY

SEPARATE MOTION



JEREMY W. ALTERS
KIMBERLY L. BOLDT
ROBERT B. BROWN III
DAVID C. RASH
THOMAS A. CULMO
BETH T. VOGELSANG
RACHEL F. ALTERS
DEBORAH M. SONOM

# ALTERS | BOLDT | BROWN | RASH | CULMO

THE LAW FIRM

<u>**VIA CERTIFIED FIRST CLASS MAIL**</u>

September 2, 2009

Lennar Homes, LLC
U.S. Home Corporation
c/o Hillarie Bass, Esquire
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, Florida 33131

Re: Defective Drywall — **Lorena and Angela Garcia**
**12964 S.W. 135 Street**
**Miami, Florida 33186**

To Whom It May Concern:

We represent homeowners who purchased a home constructed by your company. Our clients' names and address are set out above. Pursuant to Florida Statutes chapter 558, you should consider this letter a formal notice of our clients' claims for the defective Chinese Drywall contaminating the above-referenced home. The presence of the Chinese Drywall in the above-referenced home represents a construction defect that must be remedied. **Pursuant to section 558.004(4), please provide a copy of this letter to all sub-contractors, suppliers, distributors, and manufacturers who, by virtue of their business relationship with you, were also part of the chain of distribution that resulted in the Chinese Drywall being used in our clients' home. By putting you on notice, we hereby intend to notify all legal entities with which you have a legal relationship.**

Please also note that, notwithstanding this notice, it is our clients' position that you and/or your representatives may have already waived the notice requirements of Florida Statutes chapter 558 by your conduct with regard to the above-referenced home. This notice is being sent to you out of an abundance of caution, and is not a waiver of our clients' position that this notice is not necessary under the facts of this matter.

Chinese Drywall is a construction defect because the defective drywall emits high levels of sulfur. The high levels of sulfur emitted by the defective drywall damage the

www.abbrclaw.com
**Miami** - Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558
**Hollywood** - 2028 Harrison Street, Suite 202 • Hollywood, FL 33020 • Telephone: 954-924-5520  Fax: 954-924-1530
**Boca Raton** - 21 Southeast 5th Street, Suite 200 • Boca Raton, FL 33432 • Telephone: 561-955-0045  Fax: 561-955-1978
**Reply to Miami Office**

Exhibit "C"

home itself, including damage to wiring, pipes, metal, air conditioning, HVAC, plumbing, appliances and fixtures. The sulfur emissions also damage personal property in the home such as electronics, furnishings and metal objects. The above described issues not only cause economic damages, but potential personal injury and/or an increased risk of future health problems. Additionally, the sulfur emissions of the defective drywall have been demonstrated to cross-contaminate any non-defective drywall that may be present in the home, thus requiring the replacement of all of the drywall in the home even if only a portion of the home was built with Chinese Drywall.

In order to fix the problem, the following items must be removed and replaced: all of the drywall in the home, all of the flooring in the home, the air conditioning unit(s), cabinetry, mirrors, and any affected appliances, electrical wiring and plumbing. You are also responsible for repair and/or replacement of any damaged personal property, as well as consequential damages such as the cost of comparable temporary housing during the required repairs and associated moving and storage expenses. Furthermore, you are responsible for the cost of medical monitoring and damages related to potential personal injury. The homeowners have also suffered economic damages from the diminution of value of their home as a result of the stigma associated with a home found to contain defective drywall.

Pursuant to Florida Statutes section 558.004(5) you have 45 days to serve a written response upon undersigned counsel on how you intend to remedy this situation. We look forward to your early reply.

Additionally, pursuant to the authorization to request discovery during the notice period under section 558.004(15), this letter also serves as our clients' request that you provide us with any and all information in your possession related to the defective drywall including, but not limited to, expert reports, laboratory testing results, photographs, videotapes and information received from your sub-contractors, suppliers and/or distributors in accordance with section 558.004(4). Please note that chapter 558 authorizes sanctions for failure to provide such discoverable evidence.

Should you have any questions, please do not hesitate to contact us.

Very truly yours,

Jeremy W. Alters

ALTERS | BOLDT | BROWN | RASH | CULMO



Hilarie Bass
Tel. (305) 579-0745
Fax (305) 579-0717
bassh@gtlaw.com

October 23, 2009

**VIA FACSIMILE & U.S. MAIL**

Jeremy W. Alters, Esq.
Alters Boldt Brown Rash Culmo
4141 Northeast 2nd Avenue, Suite 201
Miami, Florida 33137

> Re: Lennar's Response to the Notice of Claim Sent on Behalf of Lorena and Angela Garcia Regarding the Home Located at 12964 S.W. 135 Street, Miami, Florida 33186 (the "Home")

Dear Mr. Alters:

Our firm represents Lennar Homes, LLC ("Lennar Homes") and U.S. Home Corporation ("U.S. Home") (collectively, "Lennar") in connection with your letter, dated September 2, 2009, regarding the referenced Home. In your letter, which was not received by our office until September 8, 2009, you provided Lennar with notice pursuant to Chapter 558, Florida Statutes, of your intention to make a construction defect claim against Lennar on behalf of your clients, Lorena and Angela Garcia.

As an initial matter, please be advised that Lennar Homes, and not U.S. Home, is the entity that built and sold the Home. Lennar Homes is fully committed to repairing your clients' Home. In fact, Lorena and Angela Garcia have executed a Work Authorization Agreement, and Lennar Homes is ready to begin repairing the Home in accordance with the Agreement. Based on the foregoing, we do not believe that any additional response is necessary under Florida Statutes § 558.004.

If you have any questions or comments, please contact me. Additionally, please direct all future communications and correspondence regarding this matter to my attention. Thank you for your cooperation.

Sincerely,

*/s/* Hilarie Bass

Exhibit "D"