**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| NEIL PIERSON AND JAN PIERSON, | * | CASE NO.: 09-cv-6658 |
| INDIVIDUALLY AND ON BEHALF OF | * | |
| THEIR MINOR CHILDREN, R.P. | * | |
| and P.P. | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | |
| | * | COMPLAINT |
| KNAUF GIPS KG; KNAUF PLASTERBOARD | * | |
| TIANJIN CO., LTD.; KNAUF | * | |
| PLASTERBOARD WUHU CO., LTD.; | * | |
| KNAUF PLASTERBOARD DONGGUAN CO., | * | |
| LTD.; INTERIOR EXTERIOR BUILDING | * | |
| SUPPLY, L.P.; INTERIOR EXTERIOR | * | |
| ENTERPRISES, L.L.C.; HOME ONE HOMES, | * | JURY TRIAL DEMANDED |
| INC.; JOHN T. GRAB, III; and LISA GRAB | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## FIRST AMENDED COMPLAINT

PLAINTIFFS, Neil Pierson and Jan Pierson, bring this action, individually and on behalf of their minor children, R.P. and P.P., against Defendants, KNAUF GIPS KG; KNAUF PLASTERBOARD TIANJIN CO., LTD.; KNAUF PLASTERBOARD WUHU CO., LTD.; KNAUF PLASTERBOARD DONGGUAN CO., LTD.; INTERIOR EXTERIOR BUILDING SUPPLY, L.P.; INTERIOR EXTERIOR ENTERPRISES, L.L.C.; HOME ONE HOMES, INC.; JOHN T. GRAB, III; and LISA L. GRAB and for their complaint allege as follows:

## INTRODUCTION

1.    Plaintiffs bring this claim as owners of a residence located at 348 Jade Court in Madisonville, Louisiana 70447 (hereinafter referred to as "Plaintiffs' Property"), built

using defective drywall designed, manufactured and processed in China.

2.    Plaintiffs' Property was built by Defendants, HOME ONE HOMES, INC. and JOHN T. GRAB, III, using defective products and components including, but not limited to drywall and related components which were supplied by Defendants, INTERIOR EXTERIOR BUILDING SUPPLY, L.P. AND/OR INTERIOR EXTERIOR ENTERPRISES, L.L.C. (hereinafter collectively referred to as "INTERIOR EXTERIOR"). Upon information and belief, the drywall and related components that were supplied by INTERIOR EXTERIOR were designed, manufactured and processed by Defendants, KNAUF GIPS KG ("Knauf Gips"); KNAUF PLASTERBOARD TIANJIN CO., LTD. ("Knauf Tianjin"); KNAUF PLASTERBOARD WUHU CO., LTD. ("Knauf Wuhu"); KNAUF PLASTERBOARD DONGGUAN CO., LTD. ("Knauf Dongguan"), hereinafter collectively referred to as "KNAUF".

3.    Upon information and belief, the drywall that was used to build Plaintiffs' Property is defective and contains harmful components including but not limited to iron disulfide, fly ash and industrial waste products which are harmful to health and property.

4.    Upon information and belief, the drywall was manufactured using waste products and consequently emits harmful gases including but not limited to hydrogen sulfide, carbonyl sulfide, sulfur dioxide, carbon disulfide, methane and/or other volatile organic compounds that cause damage to property and physical injury.

5.    Upon information and belief, the drywall and the gases that it emits, cause and contribute to contamination of Plaintiffs' Property and to problems including, but not limited to, corrosion of air-conditioner and refrigerator coils, copper tubing,

2

electrical wiring, computer wiring, exposed metals, pipes, fixtures, framing and rough carpentry hardware, nails and other household items and building materials, as well as create noxious, "rotten egg-like" odors.  The drywall is inherently defective and not suitable for intended use.

6.      Upon information and belief, the drywall system and the gases that it emits, cause and contribute to physical injuries including but not limited to shortness of breath, dizziness, headaches, fatigue, insomnia, eye irritations and respiratory difficulties as well as many other symptoms for anyone exposed to breathing these gases.

### JURISDICTION AND VENUE

7.      This action is founded upon Louisiana state law, including, but not limited to, violations of Louisiana Civil Code Articles 2475 and 2520, the warranty against redhibitory defects, the warranty of fitness for a particular purpose and fitness for ordinary use and the warranty of merchantable quality; violations of LA. REV. STAT. ANN. § 51:1401, *et. seq*., or the Louisiana  Unfair Trade Practices and Consumer Protection Law; and principles of negligence, which are subject to the jurisdiction of this court.

8.      This Honorable Court has proper Subject Matter Jurisdiction and Venue for this cause is proper in the Eastern District of Louisiana, pursuant to the Judicial Panel on Multi-District Litigation's order assigning all Federal cases regarding defective Chinese Drywall to the Eastern District of Louisiana.

9.      Plaintiffs, Neil and Jan Pierson, and their children, R.P. and P.P., are and at all relevant times have been residents of Louisiana.

**PARTIES**

10.   The subject of this action is a single-family dwelling and other improvements thereon, owned by Plaintiffs and located in the Parish of St. Tammany, State of Louisiana, described as follows:348 Jade Court in Madisonville, Louisiana 70447.

11.   Upon information and belief, Defendant, Knauf Gips, is a German corporation doing business in the State of Louisiana.  Knauf Gips is a leading manufacturer of building materials and systems.  Defendant, Knauf Gips, together with its affiliates, including Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Defendant, Knauf Gips, supervised, operated, trained and otherwise exercised control over and/or had the right to control the operations of Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, and their agents, apparent agents and employees.

12.   Among other things, in 1995, Defendant, Knauf Gips, introduced its production techniques and technology into China. From 1997 through 2001, Defendant, Knauf Gips, established at least three plasterboard plants in China located in Wuhu, Tianjin and Dongguan. The product quality of all Defendant, Knauf Gips', plants in China, including Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, is strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Defendant, Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, in China. Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, and their employees are the actual and/or apparent

4

agents of Defendant, Knauf Gips.

13. Upon information and belief, Defendant, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, manufactured, sold, distributed, marketed and placed into the stream of commerce drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Defendants, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, and/or Knauf Gips, have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and their tainted drywall was installed in numerous homes in Louisiana.  Moreover, Defendants, Knauf Gips, Knauf Wuhu, Knauf Dongguan, and/or Knauf Tianjin, purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

14. Upon information and belief, Defendant, Knauf Plasterboard Tianjin Co., Ltd., is a Chinese corporation with its principal place of business located at North Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400 P.R.C., and at all times material, conducted business in the State of Louisiana.

15. Upon information and belief, Defendant, Knauf Plasterboard Wuhu Co., Ltd., is a Chinese corporation with its principal place of business located at 2 Gang Wan Road, Wuhu Anhui, 241009 P.R.C., and at all times material, conducted business in the State of Louisiana.

16. Upon information and belief, Defendant, Knauf Plasterboard Dongguan Co., Ltd.,

is a Chinese corporation with its principal place of business located at 2 Xinsha Development Zone, Machong County, Dongguan, Guangdong, 523147 P.R.C., and, at all times material, conducted business in the State of Louisiana.

17.   Defendants, Knauf Dongguan, Knauf Wuhu, and Knauf Tianjin, are involved in the manufacturing and sale of drywall. Defendants, Knauf Dongguan, Knauf Wuhu, and Knauf Tianjin, are the actual and/or apparent agents of Defendant, Knauf Gips.

18.   Upon information and belief, Defendants, Knauf Dongguan, Knauf Wuhu, and Knauf Tianjin, individually, collectively, and/or together with and at the direction and control of its principal, Defendant, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce tainted drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana.

19.   Defendants, Knauf Dongguan, Knauf Wuhu, Knauf Tianjin, and/or Knauf Gips, have continuously and systematically distributed and sold tainted drywall to numerous purchasers in the State of Louisiana and their drywall was installed in numerous homes in Louisiana. Defendants, Knauf Tianjin, Knauf Dongguan, Knauf Wuhu, and/or Knauf Gips, manufactured and sold, directly and indirectly, defective drywall that was installed in Plaintiff's Property. Moreover, Defendants, Knauf Gips, Knauf Dongguan, Knauf Wuhu, and/or Knauf Tianjin, purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

20.     Upon information and belief, at all times herein mentioned and material hereto, INTERIOR EXTERIOR BUILDING SUPPLY, L.P., a Louisiana Limited Partnership, was and is a company authorized to do business in Louisiana and to do business in East Baton Rouge Parish and was the supplier/distributor of the drywall system that caused damage to Plaintiffs' Property and physical injury to Plaintiffs and their children.

21.     Upon information and belief, at all times herein mentioned and material hereto, INTERIOR EXTERIOR ENTERPRISES, L.L.C. a Louisiana Limited Liability Company, was and is a company authorized to do business in Louisiana and to do business in East Baton Rouge Parish and was the supplier/distributor of the drywall system that caused damage to Plaintiffs' Property and physical injury to Plaintiffs and their children.

22.     Upon information and belief, at all times herein mentioned and material hereto, HOME ONE HOMES, INC., a Louisiana corporation, was and is a company authorized to do business in Louisiana and to do business in St. Tammany Parish and was the builder of the Plaintiffs' Property.

23.     JOHN T. GRAB, III and LISA L. GRAB are residents of the state of Louisiana and the previous owners of Plaintiffs' Property.  JOHN T. GRAB, III is also the director of HOME ONE HOMES, INC., the builder of Plaintiffs' Property.

## ALLEGATIONS

24.     Defendants negligently supplied, delivered, inspected, installed, utilized, and/or sold the defective drywall that was utilized in the construction of Plaintiffs' Property, which was unreasonably dangerous in its normal intended use in that it caused

7

corrosion to air conditioning and refrigerator units, electrical wires, copper tubes, and other construction and/or building components, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards and other health concerns.

25.  The defective dry wall used in construction of Plaintiffs' Property contains harmful components including but not limited to iron disulfide, fly ash and industrial waste products which are harmful to health and property.  These waste products consequently emit harmful gases including but not limited to hydrogen sulfide, carbonyl sulfide, sulfur dioxide, carbon disulfide, methane and/or other volatile organic compounds.

26.  When combined with moisture in the air, these sulfur compounds create sulfuric acid.  Sulfuric acid has been known to dissolve solder joints, and leads to corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, exposed metals, pipes, fixtures, framing and rough carpentry hardware, nails and other household items and building materials, as well as create noxious, "rotten egg-like" odors.

27.  The defective drywall can not only affect air conditioners and refrigerators, but can affect and require replacement of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware.

28.  Defendants' actions will require Plaintiffs to remedy all defective drywall, performing extensive remedial repairs to Plaintiffs' Property, likely tearing down and rebuilding the entire property, and replacing all appliances and fixtures.  Plaintiffs have also been forced to obtain temporary housing until repairs can be completed.

8

29.     As a result, Plaintiffs have suffered, and continue to suffer damages as a result of Defendants' supplying defective drywall and the corrosive effects of the sulfur compounds.  These damages include, but are not limited to, the cost of inspection, costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes, appliances and personal property.  Defendants' actions also resulted in a substantial diminution in the value of Plaintiffs' Property.

30.     Plaintiffs and their children have suffered and continue to suffer from various health problems related to the defective drywall, including but not limited to allergic reactions, coughing, sinus and throat infection, eye irritation, breathing problems and other health problems.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

31.     Although Plaintiffs claim that the statute of limitations has not run in this matter, the running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose a known defect to Plaintiffs and misrepresenting their product as fit for its intended use, actively concealed from Plaintiffs the true risks associated with their defective drywall.

32.     As a result of Defendants' actions, Plaintiffs could not reasonably know or have learned through reasonable diligence of the drywall defects and that Plaintiffs' Property had been subjected to the damages alleged herein and that those damages were a direct and proximate result of Defendants' acts and omissions.

33.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall.

Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had exclusive control, and because Defendants knew that this information was not available to the Plaintiffs. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

34. Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at any time.

## COUNT 1
## VICARIOUS LIABILITY
### (Against Defendant Knauf Gips)

35. Plaintiffs repeat, reiterate and re-allege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

36. This is an action for vicarious liability against Defendant, Knauf Gips, for the negligent and wrongful acts of its actual and/or apparent agents, Defendants, Knauf Tianjin, Knauf Dongguan, and/or Knauf Wuhu.

37. Defendant, Knauf Gips, established Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu, in China and at all times material, exercised strict control over Defendants, Knauf Tianjin's, Knauf Dongguan's, and Knauf Wuhu's, operations in accordance with the requirements of Defendant, Knauf Gips', headquarters in Germany. Defendant, Knauf Gips, is, and at all times material was, responsible for implementing and supervising the quality control measures to be used by

10

Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu.

38.    By establishing Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu, in China, and by exercising strict control over Defendants, Knauf Tianjin's, Knauf Dongguan's, and Knauf Wuhu's, conduct and operations, Defendant, Knauf Gips, acknowledged that Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu, would act on its behalf as its actual and/or apparent agents.

39.    Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu, accepted the undertaking to act on Defendant, Knauf Gips', behalf.

40.    Upon information and belief, Defendant, Knauf Gips, supervises, monitors, and controls Defendants, Knauf Tianjin's, Knauf Dongguan's, and Knauf Wuhu's, daily conduct and operations, including the manufacturing, distribution, marketing and sale of Defendants, Knauf Tianjin's, Knauf Dongguan's, and Knauf Wuhu's, drywall products. Furthermore, upon information and belief, Defendant, Knauf Gips, is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu.

41.    As such, Defendant, Knauf Gips, is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agents, Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu.

42.    As a result of Defendants, Knauf Gips', Knauf Tianjin's, Knauf Dongguan's, and/or Knauf Wuhu's, wrongful conduct, Plaintiffs have suffered and will continue to suffer damages.

43.    As a result of the foregoing acts and omissions, Plaintiffs' Property requires and/or

will require extensive reconstruction, repairs, and subsequent related clean-ups, and Plaintiffs will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses. Upon information and belief, Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs related to this defective drywall and its removal.

**Count 2**
**Breach of Implied Warranties, La. C. C. Art. 2475, *et. Seq.***

44.   Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

45.   Defendants impliedly warranted that the Property was safe, of acceptable quality and standards, and was free of any hidden defects.

46.   Defendants did not conform to these implied representations because the drywall used in the Plaintiffs' Property contained hidden defects, was defective, unsafe, and is associated with numerous adverse side effects.

47.   Defendants impliedly warranted to Plaintiffs that the drywall supplied for use and/or used in Plaintiffs' Property was safe, efficacious, and fit for its intended purpose, that the drywall used in therein was of merchantable quality, did not produce any dangerous or damaging side effects, and was adequately tested and fit for its intended use.

48.   Defendants impliedly warranted to Plaintiffs that the drywall supplied for use and/or used in Plaintiffs' Property did not contain any hidden defects which rendered the drywall's use so dangerous, damaging or inconvenient that the Plaintiffs would not have purchased Defendants' drywall had Plaintiffs known about the hidden defects.

12

49.     Defendants knew or should have known that the aforesaid representations and warranties were false, misleading and untrue in that the drywall supplied for use and/or used in the Plaintiffs' Property contained hidden defects that rendered the drywall inappropriate for its intended use, and, in fact, produced severe and extensive damage to Plaintiffs' Property.

50.     Defendants knew or should have known that the aforesaid representations and warranties were false, misleading and untrue in that the drywall supplied for use and/or used in Plaintiffs' Property contained hidden defects that rendered the use of the drywall so inconvenient that the Plaintiffs would not have purchased the drywall had Plaintiffs known about the hidden defects.

51.     Plaintiffs are entitled to enforce the implied warranties of fitness for a particular purpose and merchantable quality because the drywall that was sold to Plaintiffs is unfit for its intended use, and Defendants knew that the drywall would be used and/or Defendants used the drywall in the construction of Plaintiffs' Property, and the drywall was not appropriate for that use.

52.     Plaintiffs are entitled to enforce the implied warranties of fitness for a particular purpose and merchantability because the defects in the drywall existed at the time that Plaintiffs purchased the drywall, and Plaintiffs, as reasonably prudent buyers, had no knowledge of the defects when the drywall was purchased, and could not have reasonably discovered the hidden defects in the drywall.

53.     As a direct and proximate result of the breach of the implied warranties of fitness for a particular purpose and merchantability present in every contract, Plaintiffs have suffered, and continue to suffer, significant monetary damages as a result of

having to replace the drywall, and all appliances and other fixtures that have been corroded by the drywall and having to obtain temporary housing while Plaintiffs' Property is being repaired.

54.   As a direct and proximate result of the breach of the implied warranties of fitness for particular purpose and merchantability that are present in every contact, Plaintiffs and their children have sustained, and/or continue to sustain, and/or at an increased risk of sustaining personal injuries and/or harm along with damages due to emotional distress and mental anguish.

## Count 3
## Breach of Warranty of Redhibition, La. C. C. Art. 2520

55.   Plaintiffs hereby re-allege and incorporate herein by reference the preceeding paragraphs of this Petition.

56.   Defendants sold defective drywall to Plaintiffs which was incorporated into Plaintiffs' home.

57.   Defendants warranted that the drywall was free of any redhibitory defects.

58.   Defendants sold drywall to Plaintiffs that contained redhibitory defects unknown and undiscoverable to Plaintiffs at the time of the sale such that it rendered the drywall and home useless.

59.   Plaintiffs would not have purchased the drywall contained in the home had Plaintiffs known about the redhibitory defects.

60.   Defendants knew or should have known that the drywall sold to Plaintiffs and used in the construction of Plaintiffs' Property contained redhibitory defects that rendered the drywall completely useless.

14

61.     Defendants knew or should have known that the drywall sold to Plaintiffs and used in the construction of Plaintiffs' Property contained redhibitory defects that rendered the use of the drywall so inconvenient that the Plaintiffs would not have purchased the drywall had Plaintiffs known about the redhibitory defects.

62.     Plaintiffs are entitled to enforce the warranty of redhibition, La. C.C. Art. 2520, because the defects in the drywall existed at the time that Plaintiffs purchased the drywall, and Plaintiffs, as reasonably prudent buyers, had no knowledge of the defects when Plaintiffs purchased the drywall, and could not have reasonably discovered the hidden defects in the drywall.

63.     Plaintiffs gave Defendants adequate notice and opportunity to repair the redhibitory defects in Plaintiffs' drywall, pursuant to La. C. C. Art. 2522.

64.     Upon information and belief, Defendants as suppliers and distributors of the drywall and/or builders of Plaintiffs' Property, knew that the drywall contained redhibitory defects that rendered the drywall completely useless, and Defendants failed to remedy, repair, or correct the defect in the drywall after receiving  adequate notice of the defects in the drywall from Plaintiffs.

65.     Defendants breached the warranty of redhibition, La. C. C. Art. 2520, *et. seq*.

66.     As a direct and proximate result of the breach of the warranty of redhibition that is present in every contract, Plaintiffs have sustained, and continue to sustain, significant monetary damages as a result of having to replace the unsuitable drywall, all appliances and other fixtures in the house that have been corrupted by the drywall and having to obtain temporary housing while Plaintiffs' Property is being repaired and/or replaced.

67.    As a direct and proximate result of the breach of the warranty of redhibition that is present in every contract, Plaintiffs have sustained, and/or will continue to sustain, and/or are at an increased risk of sustaining personal injuries and/or harm along with damages due to emotional distress and mental anguish.

### Count 4
### Negligence and Negligence Per Se

68.    Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

69.    Defendants had a duty to exercise reasonable care in inspecting and/or supplying the drywall used in Plaintiffs' Property, including a duty to assure that the drywall would perform as intended when utilized in Plaintiffs' Property and would not cause and did not cause the damages as described herein.

70.    Defendants breached their duty by failing to exercise ordinary care in the inspecting and/or supplying the drywall used in Plaintiffs' Property in that Defendants knew or should have known that the drywall supplied was defective, did not function as intended, and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to air-conditioning and refrigerator units, wires, tubes, pipes, and caused allergic reactions, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

71.    The negligence of Defendants, their agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

a.    negligently representing to Plaintiffs that the drywall was safe, fit for its intended use and contained no hidden defects;

b.    negligently failing to inspect the drywall for any potential hidden defects that

16

would limit the drywall's performance; and

c.      negligently supplying the drywall for use in Plaintiffs' Property when Defendants knew it was unfit for its intended use and contained hidden defects.

72.   Defendants were negligent in the delivery, inspection and/or sale of the defective drywall in that they:

a.      failed to inspect the drywall for any potential redhibitory defects that would limit the drywall's performance or render the drywall useless; and

b.      failed to supply Plaintiffs with drywall that was fit for its intended use, of merchantable quality, and contained no hidden defects.

73.   Upon information and belief, despite the fact that Defendants knew or should have known that the drywall supplied for use and used in Plaintiffs' Property caused unreasonably dangerous side effects, Defendants continued to deliver and/or sell Plaintiffs the defective drywall.

74.   Defendants knew or should have known that consumers such as Plaintiffs and their children would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent supplying of defective drywall, as set forth herein.

75.   Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances, and/or rules and/or regulations, constitutes negligence per se.

76.   Defendants' negligence was the proximate cause of Plaintiffs' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

77.   By reason of the foregoing, Plaintiffs and their children experienced and/or are at

17

risk of experiencing serious and dangerous side effects from the defective drywall, as well as have incurred financial damage and injury.

78.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, fixtures, medical expenses, incidental, and other related expenses.  Plaintiffs will also be required to pay for temporary housing while Plaintiffs' Property is being rebuilt and/or repaired.

79.     As a result of the foregoing acts and omissions, Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, medical care and/or attention and services.

### Count 5
### Louisiana Products Liability Act, LA. REV. STAT. ANN. § 9:2800, *et seq.*,

80.     Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

81.     Defendant, INTERIOR EXTERIOR, at all times herein mentioned, was in the business of distributing and supplying drywall to contractors for use in construction and/or construction of residences within the parish where Plaintiffs' Property is located.

82.     At all times mentioned herein, Defendants knew and intended that the drywall would be utilized by Plaintiffs without further inspection for defects.

83.     The drywall sold by Defendants to Plaintiffs and used in Plaintiffs' home is defective and unfit for its intended purpose because the drywall is an unreasonably dangerous product in construction, composition and design, which has resulted in

18

damage to the Property and its component parts.

84. The drywall used in Plaintiffs' Property is an unsafe, defective, and inherently dangerous condition which is hazardous to the occupants residing in the Property.

85. The drywall was so defective in design, formulation and manufacture that when it left Defendant, INTERIOR EXTERIOR's, control and was utilized in the construction of Plaintiffs' Property, the foreseeable risks greatly exceeded the benefits associated with the drywall.

86. At all times mentioned herein, the drywall supplied by Defendants was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that the drywall was defective and unsafe, especially when used in the form and manner in the Plaintiffs' Property.

87. Defendants knew, or should have known, that at all times herein mentioned the drywall used by Defendants was and is inherently dangerous and unsafe and failed to adequately warn Plaintiffs of the drywall's inherently dangerous condition.

88. Defendants had a duty to supply and use a product that was not unreasonably dangerous for its normal and intended use.

89. The drywall supplied by Defendants was designed, constructed, delivered, inspected and/or sold in a defective condition and was unreasonably dangerous to its intended users, including Plaintiffs.

90. Plaintiffs, acting as reasonably prudent persons, could not and did not discover that the drywall supplied by Defendants was defective as mentioned herein or perceive of its danger.

91. The defects in the drywall supplied by Defendants were a substantial factor in

causing Plaintiffs' and Plaintiffs' children's injuries and/or placing Plaintiffs and their children at an increased risk of damage, injury, and/or harm.

92.    The defects alleged herein and above are defects that were not apparent by reasonable inspection of the Property.  The defects thereafter manifested.

93.    Upon information and belief, Defendant INTERIOR EXTERIOR, as supplier of the drywall used in Plaintiffs' Property, knew that the drywall contained redhibitory defects that rendered the drywall completely useless and failed to repair, remedy, or correct the defect in the drywall, rendering INTERIOR EXTERIOR liable as a manufacturer under LA. REV. STAT. ANN. § 9:2800, *et. seq.*.

94.    As a direct and proximate result of the defective condition of the drywall supplied by Defendants for use in Plaintiffs' Property, Plaintiffs and their children are suffering, have suffered, and will continue to suffer damages, including damages due to personal injury and/or harm along with damages due to mental anguish.

95.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs are entitled to receive full compensation for all monetary damages sustained as a result of Defendants' conduct, including any physical damages suffered by Plaintiffs, damages based on the nature and duration of the inconveniences suffered by Plaintiffs and attorney's fees.

96.    Defendants, as suppliers, distributors, and/or sellers, and/or being otherwise responsible for placing the defective drywall within the stream of commerce, are strictly liable and responsible to Plaintiffs for all damage suffered as a result of the above described damage, defects and deficiencies in Plaintiffs' Property.

## Count 6
## Fraudulent Misrepresentation

97.   Plaintiffs repeat, reiterate and re-allege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

98.   Defendants falsely and fraudulently represented to Plaintiffs that Defendants' drywall had been tested and was found to be fit and/or appropriate for use.

99.   Those representations made by Defendants were, in fact, false.

100.  When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

101.  These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs and/or the consuming public, all of which evinced Defendants' reckless, wilful, indifference.

102.  At the time the aforesaid representations were made by the Defendants, the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

103.  Plaintiffs' Property was constructed using Defendants' defective drywall, with Plaintiffs thereby sustaining damages and/or being at an increased risk of sustaining damages in the future.

104.  Said Defendants knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

105.  Defendants knew, or should have known, that the defective drywall had a potential

to, could, and would cause severe damages to homeowners.

106.   Defendants brought the defective drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs.

107.   By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, injuries and damages.

108.   As a direct and proximate result of the defective condition of the drywall supplied by Defendants for use in Plaintiffs' Property, Plaintiffs and their children are suffering, have suffered, and will continue to suffer damages, including damages due to personal injury and/or harm along with damages due to mental anguish.

109.   As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs are entitled to receive full compensation for all monetary damages sustained as a result of Defendants' conduct, including any physical damages suffered by Plaintiffs, damages based on the nature and duration of the inconveniences suffered by Plaintiffs, and attorney's fees.

## Count 7
## Fraudulent Concealment

110.   Plaintiffs repeat, reiterate and re-allege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

111.   At all times material hereto, Defendants misrepresented the fitness of their drywall.

112.   Defendants knew, or were reckless in not knowing, that their representations were false.

113.   Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator units,

electrical wires, copper tubes, and other metal equipment and objects.

114. Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

115. Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

116. Defendants were under a duty to disclose to Plaintiffs the aforementioned defects as they pertain to Defendants' drywall.

117. Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

118. Defendants knew that Plaintiffs and/or the consuming public, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

119. Plaintiffs and/or the consuming public, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

120. As a result of the foregoing acts and omissions, Plaintiffs' Property requires and/or will require extensive reconstruction and repairs, and Plaintiffs will incur repair and replacement costs, repairs for appliances, clean-up costs,  incidental, and other related expenses.

121.   As a direct and proximate result of the defective condition of the drywall supplied by Defendants for use in Plaintiffs' Property, Plaintiffs and their children are suffering, have suffered, and will continue to suffer damages, including damages due to personal injury and/or harm along with damages due to mental anguish.

122.   As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs are entitled to receive full compensation for all monetary damages sustained as a result of Defendants' conduct, including any physical damages suffered by Plaintiffs, damages based on the nature and duration of the inconveniences suffered by Plaintiffs and attorney's fees.

### Count 8
### VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES ACT

123.   Plaintiffs repeat, reiterate and re-allege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

124.   This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by Defendants.

125.   Plaintiffs are "consumers" and the subject transactions are "trade or commerce" as defined by LA. REV. STAT. ANN. § 51:1402.

126.   Defendants' actions and/or omissions as described herein violate LA. REV. STAT. ANN. § 51:1401, *et. seq.*, the Louisiana Unfair Trade Practices and Consumer Law, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

127.   Specifically, Defendants misrepresented and omitted material information

24

regarding Manufacturer Defendants' drywall by failing to disclose known risks.

128.   Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendant, KNAUF's, drywall in violation of LA. REV. STAT. ANN. § 51:1401, *et. seq,* the Louisiana Unfair Trade Practices and Consumer Law.

129.   Defendants violated LA. REV. STAT. ANN. § 51:1401, *et. seq,* the Louisiana Unfair Trade Practices and Consumer Law*,* by knowingly and falsely representing that Defendants' drywall was fit to be used for the purpose for which it was intended, when Defendants knew it was deceptive, ineffective, damaging, and by other acts alleged herein.

130.   Defendants engaged in the deceptive acts and practices alleged herein in order to sell Defendants' defective drywall to the public, including Plaintiffs.

131.   Said acts and practices on the part of Defendants were and are illegal and unlawful pursuant to LA. REV. STAT. ANN. § 51:1401, *et. seq,* the Louisiana Unfair Trade Practices and Consumer Law.

132.   As a direct and proximate result of Defendants' violations of LA. REV. STAT. ANN. § 51:1401, *et. seq,* the Louisiana Unfair Trade Practices and Consumer Law, Plaintiffs and their children are suffering, have suffered, and will continue to suffer damages, including damages due to personal injury and/or harm along with damages due to mental anguish.

133.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs are entitled to receive full compensation for all monetary damages sustained as a result of Defendants' conduct, including any physical damages suffered by Plaintiffs, damages based on the nature and duration of the inconveniences suffered by Plaintiffs and attorney's fees.

## Count 9
## Medical Monitoring, La. C. C. Art. 2315

134.    Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

135.    As a direct result of Defendants' actions, Plaintiffs and their children have sustained significant exposure to drywall that is proven to be hazardous to human health.

136.    As a direct result of Defendants' actions, Plaintiffs and their children have suffered personal injuries.

137.    Damages for medical monitoring are recoverable where Plaintiffs have suffered a manifest injury.

138.    Accordingly, Defendant should be required to establish a medical monitoring program that includes, inter alia:

    a.    a trust fund, in an amount to be determined, to pay for the medical monitoring of Plaintiffs and their children, as frequently as determined to be medically necessary, as well as to pay for the development and/or research for other methods by which the health risks of the drywall can be reduced; and

    b.    providing information to treating physicians to aid them in detecting the effects of the drywall.

## APPLICABILITY OF THE NEW HOME WARRANTY ACT

139.   Plaintiffs repeat, reiterate and re-allege the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

140.   Plaintiffs submit that the New Home Warranty Act, LA. REV. STAT. ANN. § 9:3141, *et. seq* (hereinafter NHWA), is not the exclusive remedy available to Plaintiffs in their claims against the Defendants and that all counts alleged herein above constitute valid, actionable claims against Defendants.

141.   Out of an abundance of caution, Plaintiffs have complied with all requirements of the NHWA, including  the notice requirements of the NHWA described under LA. REV. STAT. ANN. § 9:3145.

## PRAYER FOR RELIEF

142.   WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.   Equitable, injunctive, and declaratory relief,

b.   Damages in an amount to be determined by the jury at trial;

c.   Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.   Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

e.   The costs and disbursements incurred by the Plaintiffs in connection with this action, including reasonable attorney's fees;

f.   All statutory damages;

h.   Disgorgement of Defendants' profits from the sale of drywall;

i.   Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments,

interest on these amounts from the date of purchase, attorney's fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiffs may be entitled; and

j.      Such other and further relief under all applicable Louisiana state laws and any other relief this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiffs, Neil and Jan Pierson, individually and on behalf of their minor children,

R.P. and P.P., hereby demand a jury trial as to all issues so triable.

Dated: November 5, 2009

Respectfully Submitted,


 s/ HUGH P. LAMBERT
HUGH P. LAMBERT, T.A.        (Bar #7933)
LINDA J. NELSON             (Bar #9938)
CAYCE C. PETERSON        (Bar #32217)
LAMBERT & NELSON, P.L.C.
701 Magazine Street
New Orleans, LA 70130
Counsel for Plaintiffs



**PLEASE SERVE:**

HOME ONE HOMES, INC.
THROUGH ITS REGISTERED AGENT
John T. Grab, Jr.
2121 North Causeway Blvd., #167
Metairie, Louisiana 70001

INTERIOR EXTERIOR BUILDING SUPPLY, L.L.P.
Through its Registered Agent:
Clayton C. Geary
727 South Cortez Street
New Orleans, Louisiana 70119

INTERIOR EXTERIOR ENTERPRISES, L.L.C.
Through its Registered Agent:
Clayton C. Geary
727 South Cortez Street
New Orleans, Louisiana 70119

LISA LEAHY GRAB
236 Kissena Park
Covington, LA 70435

JOHN T. GRAB, III
236 Kissena Park
Covington, LA 70435

**PLEASE WITHHOLD SERVICE ON THE FOLLOWING:**

KNAUF GIPS KG

KNAUF PLASTERBOARD TIANJIN CO., LTD.

KNAUF PLASTERBOARD WUHU CO., LTD.

KNAUF PLASTERBOARD DONGGUAN CO. LTD.;