UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL      MDL DOCKET: 2047
PRODUCTS LIABILITY LITIGATION

SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

**THIS DOCUMENT RELATES TO:**
**09-4112 through 09-4120**
**09-4294 through 09-4322**
**All other consolidated and tag-along actions**
**alleging construction defects in the State of Florida**

_____/

## THE HOMEBUILDERS' STEERING COMMITTEE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ABATE AND COMPEL COMPLIANCE WITH CHAPTER 558, FLORIDA STATUTES

In support of its Motion to Abate and Compel Compliance with Chapter 558, Florida Statutes (the "Motion"), the Homebuilders' Steering Committee ("HSC") files this Memorandum of Law.[1]

**I.    Chapter 558, Florida Statutes[2]**

Chapter 558, Florida Statutes (referred to herein as "Chapter 558"), governs all claims for property damage resulting from a construction defect that is alleged to have occurred in the State of Florida. The Florida legislature has determined that it is beneficial to have an alternative method to resolve construction disputes that is designed to reduce the need for litigation while protecting the rights of property owners and providing contractors, subcontractors, and suppliers

---

[1] The following Defendants, Banner Supply Co., L&W Supply Corporation, USG Corporation, All Interior Supply Corporation and Independent Builders Supply Association, Inc., join in this The Homebuilders Steering Committee's Memorandum of Law in Support of Motion to Abate and Compel Compliance with Chapter 558, Florida Statutes.

[2] A complete copy of Chapter 558 is attached hereto as Exhibit "A." A copy of the amended version of Chapter 558 effective October 1, 2009, is attached hereto as Exhibit "B." A copy of Leiby, L. and Lesser, S., *How to Comply with Chapter 558 Florida Statutes: Current Challenges and Future Changes*, 83-FEB Fla. B.J. 42 (2009), is attached hereto as Exhibit "C."

an opportunity to resolve claims without resort to further legal process. *See* § 558.001, Fla. Stat. Notably, Chapter 558 is not a permissive alternative method for resolving issues related to construction defects; it is a mandatory condition precedent to bringing any civil action or arbitration proceeding for construction defects that are alleged to have occurred in the State of Florida.

## II. Application of Chapter 558 to actions alleging a construction defect

Prior to making a claim against a contractor, subcontractor, supplier, or design professional for property damage caused by an alleged construction defect in Florida, Chapter 558 requires the claimant to provide written notice of the claim, to provide the opportunity to inspect and conduct destructive testing, to provide the opportunity to offer to settle through repairs or the payment of money, and to provide a written acceptance or rejection of that offer. Section 558.005, Fla. Stat., states that Chapter 558 applies to "every contract for the design, construction, or remodeling of real property" so long as the contract contains certain language.[3]

The Plaintiffs' Steering Committee (the "PSC"), has argued that Chapter 558 does not apply to the cases to which the Motion relates because Chapter 558 does not apply to an action "asserting a claim for alleged personal injuries arising out of an alleged construction defect," as set forth in § 558.002(1), Fla. Stat., and as a result of decades of products liability jurisprudence. However, the PSC overlooks the fact that, to the knowledge and understanding of the HSC, none of the cases to which this document relates assert "a claim for alleged personal injuries." For example, the plaintiffs in *Vickers v. Knauf Gips KG*, No. 09-4117, make a claim for medical

---

[3] Copies of contracts entered into between homebuilders and plaintiffs that have asserted claims pending in this MDL proceeding for property damage resulting from a construction defect that is alleged to have occurred in the State of Florida will be filed with the Court on an as needed basis.

2

monitoring, but do not make a claim for alleged personal injuries.[4] The closest the plaintiffs in the *Vickers* action come to asserting a claim for personal injuries is their general allegations of "potential personal injuries" and a "potential health hazard." *See Vickers*, Amended Complaint. However, not one of the causes of action asserted in the *Vickers* case, or in the *Culliton* or *Galvin* cases, includes an allegation of damages related to personal injuries or a claim for personal injuries – not even the claims for strict liability and negligence.  Perhaps astutely aware of the consequences of asserting a claim for personal injuries where none actually exists, counsel for the *Vickers* plaintiffs stops short of actually making a claim for personal injuries and instead asserts an equitable claim seeking reimbursement for medical monitoring to determine whether the plaintiffs have suffered any effects from the alleged construction defect. Like *Vickers*, the cases to which the Motion relate do not assert claims for alleged personal injuries. This proposition is supported by the Plaintiff Profile Forms submitted to this Court on behalf of Ankney and Culliton who have indicated that they are <u>not</u> making a claim for personal injuries. The Galvins failed to indicate on their Plaintiff Profile Form whether they are making a claim for personal injuries. The Plaintiff Profile Forms forms are not attached hereto as an exhibit because they were produced as "confidential."

The PSC has also suggested that Chapter 558 cannot supplant well-settled procedures related to liability for product defects – arguing that Defendants have not put forth "any **caselaw, legislative history,** or **other authority**" that supports Defendants' "extraordinary" assertion that Chapter 558 should "**preempt** an entire body of products liability law." *See PSC Response* at p. 13 (emphasis in original). The PSC has also argued that Chapter 558 only applies to "run-of-the-

---

[4] *Vickers v. Knauf Gips KG, et al.*, No. 09-4117, has been held out by the PSC as an example of a claim for "personal injury/medical monitoring" that is "substantially-similar" (sic) to the claims set forth in twenty-eight (28) tag-along actions. *See* Response of Plaintiffs' Steering Committee to Bench Memorandum of Certain Defendants Regarding Chapter 558, Florida Statutes (the "PSC Response"), Footnote 1.

3

mill" construction defect claims such as uneven floors and warped lumber. There is no support for the PSC's position. As clearly defined in Chapter 558, the term "construction defect" is defined, in pertinent part, as a deficiency in or arising out of specifications, construction, repair, alteration, or remodeling of real property **resulting from defective material, products or components used in the construction or remodeling**. *See* § 558.002(4), Fla. Stat. (emphasis added).

The plaintiffs' claims may be claims related to a defective product, but to the extent those claims relate to the construction, repair, alteration, or remodeling of real property in the State of Florida, they fall under the purview of Chapter 558. The plain language of Chapter 558 provides the basis for Defendants' rather ordinary assertion that Defendants are entitled to an opportunity to offer the plaintiffs the same relief that they are requesting in their prematurely filed complaints – to remove defective construction materials from their homes. To the extent a plaintiff has made an actual claim for alleged personal injuries, this Court should permit those claims to remain pending and apply the procedures mandated by Chapter 558 only to the claims for property damage.

### III.  Requirements of Chapter 558

Pursuant to § 558.003, Fla. Stat., a claimant cannot file an action subject to Chapter 558 without first complying with the requirements of Chapter 558. *See* § 558.003, Fla. Stat. If a claimant files an action subject to Chapter 558 without complying with the requirements of Chapter 558, the Court shall, upon timely motion, abate the action without prejudice, and the action may not proceed until the claimant has complied with the statute. *See* § 558.003, Fla. Stat.[5] The PSC has argued that the complaints filed in this matter should suffice as notice under

---

[5] Effective October 1, 2009, § 558.003, Fla. Stat., will require the court to "stay," rather than "abate," any action filed without first complying with Chapter 558. *See* Exhibit "B."

4

Chapter 558. Obviously, such an argument flies in the face of the mandates of Chapter 558 that require that the notice be served at least sixty days **prior** to filing an action and that any action filed prior to complying with Chapter 558 **shall** be abated. The PSC also ignores the specific requirements of the notice provisions of Chapter 558 and the requirement that each claimant provide an opportunity to inspect and conduct destructive testing, allow for an opportunity to make a settlement offer, and serve a written acceptance or rejection of that settlement offer **prior** to filing suit.

A. Notice

At least sixty days before filing any action, the claimant must serve written notice on the contractor, subcontractor, or supplier, as applicable.[6] *See* § 558.004(1), Fla. Stat. The notice must include: (1) a reference to Chapter 558, (2) a description of the claim, in reasonable detail sufficient to determine the nature of each alleged construction defect, and (3) a description of the damage or loss resulting from the defect, if known. *See id.* Many of the plaintiffs in the actions to which the Motion relates have served notices that include the information required by Chapter 558. However, in the rush to be the first putative class action case filed, few, if any, of those plaintiffs served their notice sixty days prior to filing suit. Many served their notice at the time or after suit was filed – in clear violation of Chapter 558. Further troubling is that, in the cases purporting to be class actions, the information required to be included in the Chapter 558 notice is provided for the named plaintiff(s), but not for the putative class members. Consequently, the Defendants have not been placed on notice of who the putative class members are, much less had an opportunity to conduct an inspection and destructive testing, offer to settle through repairs

---

[6] The time periods cited herein apply to claims made by individual owners and claims made by associations on behalf of twenty parcels or less. The time periods that apply to associations representing more than twenty parcels are greater.

and/or monetary settlement, or received a response to such an offer from the putative class members.

The PSC argues that despite the Plaintiffs' failure to follow and meet the notice requirements of Chapter 558, the Defendants have waived the enforcement of Chapter 558 by failing to respond to notices that did not conform with Chapter 558. *See* PSC Response, pp. 21-24. The PSC's argument falls short for three reasons. First, and most obvious, the PSC cannot seek enforcement of the statutory scheme which the Plaintiffs have intentionally violated by filing suit prior or concomitant to the service of their notice of claim. Second, many of the recipients of improperly served notices of claim responded to those notices despite their untimely service. Third, many, if not all, Defendants filed Motions to Abate and requested compliance with Chapter 558 prior to transfer to and consolidation in this MDL. Thus, notwithstanding the plaintiffs' failure to initially comply with Chapter 558 in improperly serving their notices of claim, the response of many Defendants in conformity with Chapter 558, and the requests made to the transferor courts to abate (or stay) the Florida cases pursuant to Chapter 558, the PSC has the temerity to suggest that the Defendants have waived their right to enforce Chapter 558.

**B.     Inspection and destructive testing**

The import of Chapter 558 is not limited to notice. Within thirty days of receiving the notice of claim, the recipient has a statutory right to inspect the property to determine the nature and cause of each alleged construction defect. *See* § 558.004(2), Fla. Stat. The claimant must provide reasonable access to the property during normal working hours. *See id.*

As a part of the inspection process, the recipient of a notice of claim may request to perform destructive testing which may be conducted on mutual agreement of the parties. *See* § 558.004(2), Fla. Stat. In the event a claimant refuses to allow destructive testing, the claimant

cannot bring a claim that could have been avoided or mitigated had destructive testing been allowed and a feasible remedy been promptly implemented. *See* § 558.004(2), Fla. Stat.

### C. Exchange of discoverable information

Both the claimant and the recipient of the notice of claim have a duty to exchange all available discoverable information relating to the alleged construction defects, including, but not limited to, expert reports, photographs, videotapes, written responses and information received from contractors, subcontractors, and suppliers to whom the notice of claim was forwarded. *See* § 558.004(15), Fla. Stat. The PSC argued that that by failing to "**voluntarily**" provide "**all**... discoverable evidence relating to the construction defects," Defendants have violated and opted-out of Chapter 558. *See PSC Response*, pp. 9 – 10 (emphasis in original). The PSC once again overlooks the plain language of Chapter 558. Section 558.004(15), creates an obligation to provide all discoverable evidence, but only "upon request." Notably, requests have been made for discoverable information pursuant to § 558.004(15) of many, if not all, of the plaintiffs who have served notices of claim.[7] Despite having been served with requests for discoverable information, very few, if any, plaintiffs have complied with Chapter 558 by providing the information requested. Pursuant to Chapter 558, any party who fails to provide the requested information is subject to such sanctions as the court may impose for a discovery violation. *See id.*

### D. Opportunity to settle

#### i. Offer for repair and/or payment

Within forty-five days of receiving a notice of claim, the person receiving the notice must serve a written response to the claimant which must provide either: (1) a written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed

---

[7] Copies of some requests for discoverable information that were served on plaintiffs' counsel and which have gone unanswered are attached hereto as Composite Exhibit "E."

7

repairs necessary to remedy the defect, and a timetable for the completion of such repairs; (2) a written offer to compromise and settle the claim by monetary payment, that will not obligate the person's insurer, and a timetable for making payment; (3) a written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payment; (4) a written statement that the recipient of the notice disputes the claim and will not remedy the defect or compromise and settle the claim; or (5) a written statement that a monetary payment, including insurance proceeds, if any, will be determined by the person's insurer within thirty days after notification to the insurer by means of forwarding the claim, which notification shall occur at the same time the claimant is notified of this settlement option, which the claimant can accept or reject. *See* § 558.004(5)(a-e), Fla. Stat.

The statute provides that nothing in Chapter 558 shall be construed to preclude a partial settlement or compromise of the claim as agreed to by the parties and, in that event, the claimant may, without further notice, proceed with an action on the unresolved portions of the claim. *See id.*

### ii.  Acceptance or rejection of the offer to settle by repair and/or payment

Upon receipt of a timely settlement offer, the claimant must accept or reject the offer by serving written notice of such acceptance or rejection on the person making the offer within forty-five days after receiving the settlement offer. *See* § 558.004(7), Fla. Stat. If a claimant initiates an action without first accepting or rejecting the offer, the Court **must** abate the action until the claimant serves a written notice of acceptance or rejection of the settlement offer. *See id.* To the knowledge and understanding of the HSC, not one plaintiff in the Florida cases has served a written notice of acceptance or rejection.

Moreover, any action for damages resulting from construction defects may only proceed to trial as to the alleged construction defects that were previously noticed and as to defects reasonably related to, or caused by, the construction defects previously noticed, and for which the claimant has complied with the requirements of Chapter 558. *See* § 558.004(11), Fla. Stat.

If the claimant timely and properly accepts the offer to repair an alleged construction defect, the claimant shall provide the offeror and the offeror's agents reasonable access to the claimant's property during normal working hours to perform the repair by the agreed-upon timetable as stated in the offer. *See* § 558.004(8), Fla. Stat. If the offeror does not make the payment or repair the defect within the agreed time and in the agreed manner, except for reasonable delays beyond the control of the offeror, including, but not limited to, weather conditions, delivery of materials, claimant's actions, or issuance of any required permits, the claimant may, without further notice, proceed with an action against the offeror based upon the claim in the notice of claim. *See id.* If the offeror makes payment or repairs the defect within the agreed time and in the agreed manner, the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer. *See id.*

E.   **Mandatory Conditions Precedent to Filing Suit pursuant to Chapter 558**

Pursuant to Chapter 558, Florida Statutes, **prior** to filing a lawsuit alleging property damage resulting from a construction defect, including a defective product or material used in construction, each claimant[8] must:

(1)   provide written notice including a reference to Chapter 558, a description of the claim, in reasonable detail sufficient to determine the nature of each alleged

---

[8] Including putative class members.

construction defect, and a description of the damage or loss resulting from each alleged construction defect if known;

(2)  provide an opportunity to inspect and conduct destructive testing (or have destructive testing refused by the claimant);

(3)  provide the opportunity to serve the claimant with a written offer to settle – including an offer for repair, payment, or a combination of both; and

(4)  provide a written acceptance or rejection of an offer to settle.

Pursuant to Chapter 558, the only circumstances that permit a claimant to file suit without meeting each of the foregoing conditions precedent are:

(1)  the recipient of the notice of claim fails to respond to the notice of claim within forty-five days of receipt of the notice of claim; or

(2)  the recipient of the notice of claim disputes the claim and elects neither to remedy the defect nor compromise and settle the claim.

Having failed to comply with each of the conditions precedent to filing suit, or shown one of the circumstances that permit the filing of a lawsuit without complying with each of the conditions precedent to filing suit, each case to which the Motion relates should be abated until each plaintiff and putative class member has fully and properly complied with Chapter 558.

### IV. Contrary to the allegations of the PSC, Chapter 558 does apply to actions involving property damages even if personal injury is "alleged"

For the first time the PSC takes position that Chapter 558 does not apply to claims for product liability (*See* PSC Response, p. 24), or claims wherein personal injury is asserted (*See* PSC Response, p. 4).

With respect to product liability, the definition of construction defect under Chapter 558.002(4) states as follows: "Construction defect" means a deficiency in "....(a) Defective material, **products**, or components used in the construction or remodeling." (emphasis applied).

With respect to personal injury, the personal injury claim itself does not require Chapter 558 compliance but the product liability claim does. Each and every complaint in this proceeding has alleged a claim for property damage. All of the profile forms involve property damage claims.

Three Florida State Court cases have made findings contrary to the position now asserted by the PSC that by filing a personal injury claim, Chapter 558 does not apply. Each of these Plaintiffs makes allegations of personal injury or argued that the statute did not apply because of such a claim. See Orders in the following cases, attached hereto as Composite Exhibit "F":

*Gianpaolo v. Centerline Homes, Inc., et al.*, In the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No.: 50 2009 CA 026362;

*Wayne Kaplan and Judity A. Stichter v. Alvanesa-Popkin, et al.*, In the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No.: 50 2009 CA 026711; and

*John C. Nowicki v. Hansen Homes of South Florida, et al.*, In the Twentieth Judicial Circuit in and for Lee County, Florida, Case No.: 09-CA-001744. [9]

The PSC further alleges that the statutory requirements may have been waived by the Defendants. The PSC alleges "...The Defendants' refusal to act in keeping with their obligations pursuant to Chapter 558 was found to be a persuasive reason by the only Florida court, of which Plaintiffs are aware." However, the PSC then stated: "....Noting that the Defendants had failed

---

[9] A fourth case decided in Florida State Court involving a PSC lawyer was also decided in favor of abatement but the order has not yet been entered. See *Fulks v. Holmes, et al,* In the 20th Judicial Circuit in and for Lee County, Florida, Case No.: 2009-CA-001747.

to act after receiving the plaintiffs' notice, the Honorable Gil S. Freeman of the Eleventh Judicial Circuit of Florida's Complex Business litigation Unit found that the Defendants were ***not entitled*** to any additional time since the 60 day abatement period had long passed and nothing had happened in the case." *See* PSC Response at p. 23. Obviously the Plaintiff in the cited case did comply with Chapter 558.

It should also be noted that in the claims purporting to assert personal injury herein, which include Vickers, Galvin and Ankney, Chapter 558 notices were sent out by plaintiffs' counsel, who are members of the PSC. See composite Exhibit "G," attached hereto. Moreover, Ankney and Culliton have indicated that they are not making a claim for personal injuries on the Plaintiff Profile Forms submitted to this Court on their behalf. The Galvins failed to indicate on their Plaintiff Profile Form whether they are making a claim for personal injuries.

While the Chapter 558 requirements may not apply to personal injury claims, they clearly apply to the property damage claims, including claims for damages resulting from defective products. The alternative interpretation of the statue would make no sense. The plaintiff could simply allege any personal injury, whether it could be proven or not, and avoid the requirements of Chapter 558 altogether.

If the PSC asserts that it has already complied with Chapter 558 for a specific plaintiff, or that a defendant failed to respond properly, that issue can be raised in the applicable case.

### V.     Application of Chapter 558 to the pending MDL

Of the ten actions listed on Schedule A of the June 15, 2009, Transfer Order from the United States Judicial Panel on Multidistrict Litigation, eight were pending in the State of Florida or include claims for property damage resulting from alleged construction defects that occurred in the State of Florida. Roughly half of the additional potential tag-along actions are

pending in Florida and, upon information and belief, include claims for property damage resulting from alleged construction defects that occurred in the State of Florida. In order to comply with the requirements of Chapter 558, each case alleging a claim for property damage resulting from construction defects which are alleged to have occurred in the State of Florida should be abated, and each putative class member should be precluded from asserting or maintaining a claim until: (1) each claimant has provided notice to the contractor, subcontractor, and/or supplier of the nature of the claim and the damage or loss resulting from a construction defect; (2) each recipient of a notice has had the opportunity to inspect and conduct destructive testing (or have destructive testing refused by the claimant); (3) each recipient has had the opportunity to serve the claimant with a written offer to settle or a statement that the claim is disputed; and (4) each claimant has served a written rejection of any offer to settle. Requiring the parties to comply with Chapter 558 will provide this Court with a structured methodology for completing the notice and inspection process contemplated by the Court and allow the parties to engage in a pre-litigation settlement process and will likely result in a vast reduction in the number of pending matters.

## VI. Conclusion

Abatement of the Florida cases and the enforcement of Chapter 558 is required by Florida Statutes and will provide the parties with the opportunity to quickly resolve actions pending before this Court. The PSC argues against the enforcement of Chapter 558 and appears vehemently opposed to the abatement of the Florida cases due to concerns of delay in handling actions involving claims for medical monitoring resulting from dangerous and defective products. The PSC fails to see that abatement and providing the homebuilder defendants' the opportunity to offer to remove defective drywall and repair the affected homes is, ironically,

exactly the relief that has been prayed for in the complaints that they drafted. The PSC's failure to agree to abate and accept the offers to repair is the only cause of delay in ridding the Plaintiffs' homes of the product that the PSC has referred to as "unreasonably dangerous," "toxic," and "corrosive."

Chapter 558 mandates a procedure to resolve disputes regarding construction defects prior to filing a lawsuit. Satisfying the statutory requirements is a mandatory condition precedent to filing suit. To the extent a claimant argues that Chapter 558 does not apply to a contract or an action, the Court should make a determination, on a case-by-case basis, as to whether procedures required by Chapter 558 should apply. In the alternative, the Court may decide that the procedures mandated by Chapter 558 would benefit every action pending in the MDL proceeding and provide every claimant with the potential to resolve their claims more quickly and easily than they ever could through the litigation process. After all, in practical terms, the statute is intended to allow both claimants and participants to construction to resolve alleged defects before both sides run to the courthouse and spend a pile of money on lawyers. *See* Leiby, L. and Lesser, S., *How to Comply with Chapter 558 Florida Statutes: Current Challenges and Future Changes*, 83-FEB Fla. B.J. 42 (2009).

Respectfully submitted,

/s/ Stephen E. Walker
Neal A. Sivyer
Florida Bar No. 373745
nsivyer@sbwlegal.com
Stephen E. Walker
swalker@sbwlegal.com
Florida Bar No. 0497851
**SIVYER BARLOW & WATSON, P.A.**
401 E. Jackson Street, Suite 2225
Tampa, Florida 33602
Telephone: (813) 221-4242
Facsimile: (813) 227-8598
*Attorneys for Taylor Morrison Services, Inc. and Taylor Woodrow Communities at Vasari, LLC*

## CERTIFICATE OF SERVICE

I HEREBY certify that on September 28, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Stephen E. Walker
Stephen E. Walker