

**EXHIBIT "A"**

West's Florida Statutes Annotated Currentness
Title XXXIII. Regulation of Trade, Commerce, Investments, and Solicitations (Chapters 494-560)
➡ Chapter 558. Construction Defects
➡ **558.001. Legislative findings and declaration**

The Legislature finds that it is beneficial to have an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of property owners. An effective alternative dispute resolution mechanism in certain construction defect matters should involve the claimant filing a notice of claim with the contractor, subcontractor, supplier, or design professional that the claimant asserts is responsible for the defect, and should provide the contractor, subcontractor, supplier, or design professional with an opportunity to resolve the claim without resort to further legal process.

**558.002. Definitions**

As used in this chapter, the term:

(1) "Action" means any civil action or arbitration proceeding for damages or indemnity asserting a claim for damage to or loss of real or personal property caused by an alleged construction defect, but does not include any administrative action or any civil action or arbitration proceeding asserting a claim for alleged personal injuries arising out of an alleged construction defect.

(2) "Association" has the same meaning as in s. 718.103(2), s. 719.103(2), s. 720.301(9), or s. 723.075.

(3) "Claimant" means a property owner, including a subsequent purchaser or association, who asserts a claim for damages against a contractor, subcontractor, supplier, or design professional concerning a construction defect or a subsequent owner who asserts a claim for indemnification for such damages. The term does not include a contractor, subcontractor, supplier, or design professional.

(4) "Construction defect" means a deficiency in, or a deficiency arising out of, the design, specifications, surveying, planning, supervision, observation of construction, or construction, repair, alteration, or remodeling of real property resulting from:

(a) Defective material, products, or components used in the construction or remodeling;

(b) A violation of the applicable codes in effect at the time of construction or remodeling which gives rise to a cause of action pursuant to s. 553.84;

(c) A failure of the design of real property to meet the applicable professional standards of care at the time of governmental approval; or

(d) A failure to construct or remodel real property in accordance with accepted trade standards for good and workmanlike construction at the time of construction.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(5) "Contractor" means any person, as defined in s. 1.01, that is legally engaged in the business of designing, developing, constructing, manufacturing, repairing, or remodeling real property.

(6) "Design professional" means a person, as defined in s. 1.01, licensed in this state as an architect, interior designer, landscape architect, engineer, or surveyor.

(7) "Real property" or "property" means land that is improved and the improvements on such land, including fixtures, manufactured housing, or mobile homes and excluding public transportation projects.

(8) "Service" means delivery by certified mail, return receipt requested, to the last known address of the addressee.

(9) "Subcontractor" means a person, as defined in s. 1.01, who is a contractor who performs labor and supplies material on behalf of another contractor in the construction or remodeling of real property.

(10) "Supplier" means a person, as defined in s. 1.01, who provides only materials, equipment, or other supplies for the construction or remodeling of real property.

**558.003. Action; compliance**

A claimant may not file an action subject to this chapter without first complying with the requirements of this chapter. If a claimant files an action alleging a construction defect without first complying with the requirements of this chapter, on timely motion by a party to the action the court shall abate the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements.

**558.004. Notice and opportunity to repair**

(1) In actions brought alleging a construction defect, the claimant shall, at least 60 days before filing any action, or at least 120 days before filing an action involving an association representing more than 20 parcels, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter. If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted. The notice of claim must describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect, if known. The claimant shall endeavor to serve the notice of claim within 15 days after discovery of an alleged defect, but the failure to serve notice of claim within 15 days does not bar the filing of an action, subject to s. 558.003. This subsection does not preclude a claimant from filing an action sooner than 60 days, or 120 days as applicable, after service of written notice as expressly provided in subsection (6), subsection (7), or subsection (8).

(2) Within 30 days after receipt of the notice of claim, or within 50 days after receipt of the notice of claim involving an association representing more than 20 parcels, the person receiving the notice of claim under subsection (1) is entitled to perform a reasonable inspection of the property or of each unit subject to the claim to assess each alleged construction defect. An association's right to access property for either maintenance or repair includes the authority to grant access for the inspection. The claimant shall provide the person receiving the notice under subsection (1) and such person's contractors or agents reasonable access to the property during normal working hours to inspect the property to determine the nature and cause of each alleged construction defect and the nature and extent of any repairs or replacements necessary to remedy each defect. The person receiving notice under subsection (1) shall reasonably coordinate the timing and manner of any and all inspections with the claimant to minimize the number of inspections. The inspection may include destructive testing by mutual agreement under the following reasonable

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

terms and conditions:

(a) If the person receiving notice under subsection (1) determines that destructive testing is necessary to determine the nature and cause of the alleged defects, such person shall notify the claimant in writing.

(b) The notice shall describe the destructive testing to be performed, the person selected to do the testing, the estimated anticipated damage and repairs to the property resulting from the testing, the estimated amount of time necessary for the testing and to complete the repairs, and the financial responsibility offered for covering the costs of repairs.

(c) If the claimant promptly objects to the person selected to perform the destructive testing, the person receiving notice under subsection (1) shall provide the claimant with a list of three qualified persons from which the claimant may select one such person to perform the testing. The person selected to perform the testing shall operate as an agent or subcontractor of the person receiving notice under subsection (1) and shall communicate with, submit any reports to and be solely responsible to the person receiving notice.

(d) The testing shall be done at a mutually agreeable time.

(e) The claimant or a representative of the claimant may be present to observe the destructive testing.

(f) The destructive testing shall not render the property uninhabitable.

In the event the claimant fails or refuses to agree to destructive testing, the claimant shall have no claim for damages which could have been avoided or mitigated had destructive testing been allowed when requested and had a feasible remedy been promptly implemented.

(3) Within 10 days after receipt of the notice of claim, or within 30 days after receipt of the notice of claim involving an association representing more than 20 parcels, the person receiving the notice under subsection (1) may forward a copy of the notice of claim to each contractor, subcontractor, supplier, or design professional whom it reasonably believes is responsible for each defect specified in the notice of claim and shall note the specific defect for which it believes the particular contractor, subcontractor, supplier, or design professional is responsible. Each such contractor, subcontractor, supplier, and design professional may inspect the property as provided in subsection (2).

(4) Within 15 days after receiving a copy of the notice of claim pursuant to subsection (3), or within 30 days after receipt of the copy of the notice of claim involving an association representing more than 20 parcels, the contractor, subcontractor, supplier, or design professional must serve a written response to the person who forwarded a copy of the notice of claim. The written response shall include a report, if any, of the scope of any inspection of the property, the findings and results of the inspection, a statement of whether the contractor, subcontractor, supplier, or design professional is willing to make repairs to the property or whether such claim is disputed, a description of any repairs they are willing to make to remedy the alleged construction defect, and a timetable for the completion of such repairs.

(5) Within 45 days after receiving the notice of claim, or within 75 days after receipt of a copy of the notice of claim involving an association representing more than 20 parcels, the person who received notice under subsection (1) must serve a written response to the claimant. The response shall be served to the attention of the person who signed the notice of claim, unless otherwise designated in the notice of claim. The written response must provide:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(a) A written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed repairs necessary to remedy the defect, and a timetable for the completion of such repairs;

(b) A written offer to compromise and settle the claim by monetary payment, that will not obligate the person's insurer, and a timetable for making payment;

(c) A written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payment;

(d) A written statement that the person disputes the claim and will not remedy the defect or compromise and settle the claim; or

(e) A written statement that a monetary payment, including insurance proceeds, if any, will be determined by the person's insurer within 30 days after notification to the insurer by means of forwarding the claim, which notification shall occur at the same time the claimant is notified of this settlement option, which the claimant can accept or reject. A written statement under this paragraph may also include an offer under paragraph (c), but such offer shall be contingent upon the claimant also accepting the determination of the insurer whether to make any monetary payment in addition thereto. If the insurer for the person receiving the claim makes no response within the 30 days following notification, then the claimant shall be deemed to have met all conditions precedent to commencing an action.

(6) If the person receiving a notice of claim pursuant to subsection (1) disputes the claim and will neither remedy the defect nor compromise and settle the claim, or does not respond to the claimant's notice of claim within the time provided in subsection (5), the claimant may, without further notice, proceed with an action against that person for the claim described in the notice of claim. Nothing in this chapter shall be construed to preclude a partial settlement or compromise of the claim as agreed to by the parties and, in that event, the claimant may, without further notice, proceed with an action on the unresolved portions of the claim.

(7) A claimant who receives a timely settlement offer must accept or reject the offer by serving written notice of such acceptance or rejection on the person making the offer within 45 days after receiving the settlement offer. If a claimant initiates an action without first accepting or rejecting the offer, the court shall abate the action upon timely motion until the claimant complies with this subsection.

(8) If the claimant timely and properly accepts the offer to repair an alleged construction defect, the claimant shall provide the offeror and the offeror's agents reasonable access to the claimant's property during normal working hours to perform the repair by the agreed-upon timetable as stated in the offer. If the offeror does not make the payment or repair the defect within the agreed time and in the agreed manner, except for reasonable delays beyond the control of the offeror, including, but not limited to, weather conditions, delivery of materials, claimant's actions, or issuance of any required permits, the claimant may, without further notice, proceed with an action against the offeror based upon the claim in the notice of claim. If the offeror makes payment or repairs the defect within the agreed time and in the agreed manner, the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer.

(9) This section does not prohibit or limit the claimant from making any necessary emergency repairs to the property as are required to protect the health, safety, and welfare of the claimant. In addition, any offer or failure to offer pursuant to subsection (5) to remedy an alleged construction defect or to compromise and settle the claim by monetary payment does not constitute an admission of liability with respect to the defect and is not admissible in an

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

action brought under this chapter.

(10) A claimant's mailing of the written notice of claim under subsection (1) tolls the applicable statute of limitations relating to any person covered by this chapter and any bond surety until the later of:

(a) Ninety days, or 120 days, as applicable, after receipt of the notice of claim pursuant to subsection (1); or

(b) Thirty days after the end of the repair period or payment period stated in the offer, if the claimant has accepted the offer. By stipulation of the parties, the period may be extended and the statute of limitations is tolled during the extension.

(11) The procedures in this chapter apply to each alleged construction defect. However, a claimant may include multiple defects in one notice of claim. The initial list of construction defects may be amended by the claimant to identify additional or new construction defects as they become known to the claimant. The court shall allow the action to proceed to trial only as to alleged construction defects that were noticed and for which the claimant has complied with this chapter and as to construction defects reasonably related to, or caused by, the construction defects previously noticed. Nothing in this subsection shall preclude subsequent or further actions.

(12) This chapter does not:

(a) Bar or limit any rights, including the right of specific performance to the extent such right would be available in the absence of this chapter, any causes of action, or any theories on which liability may be based, except as specifically provided in this chapter;

(b) Bar or limit any defense, or create any new defense, except as specifically provided in this chapter; or

(c) Create any new rights, causes of action, or theories on which liability may be based.

(13) Nothing in this section shall relieve the person receiving notice of claim under subsection (1) from complying with all contractual provisions of any liability insurance policy as a condition precedent to coverage for any claim under this section. However, notwithstanding the foregoing or any contractual provision, the providing of a copy of such notice to the person's insurer, if applicable, shall not constitute a claim for insurance purposes. Nothing in this section shall be construed to impair technical notice provisions or requirements of the liability policy or alter, amend, or change existing Florida law relating to rights between insureds and insurers except as otherwise specifically provided herein.

(14) To the extent that an arbitration clause in a contract for the sale, design, construction, or remodeling of real property conflicts with this section, this section shall control.

(15) Upon request, the claimant and the person receiving notice pursuant to subsection (1) shall have a mutual duty to exchange all available discoverable evidence relating to the construction defects, including, but not limited to, expert reports, photographs, information received pursuant to subsection (4), and videotapes, if any. In the event of subsequent litigation, any party who failed to provide such evidence shall be subject to such sanctions as the court may impose for a discovery violation. Expert reports exchanged between the parties may not be used in any subsequent litigation for any purpose, unless the expert, or a person affiliated with the expert, testifies as a witness or the report is used or relied upon by an expert who testifies on behalf of the party for whom the report was prepared.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**558.005. Contract provisions; application**

(1) Except as otherwise provided in subsections (3) and (4), the provisions of this chapter shall apply to every contract for the design, construction, or remodeling of real property entered into:

(a) Between July 1, 2004, and September 30, 2006, which contains the notice as set forth in paragraph (2)(a) and is conspicuously set forth in capitalized letters.

(b) On or after October 1, 2006, which contains the notice set forth in paragraph (2)(b) and is conspicuously set forth in capitalized letters.

(2)(a) The notice required by paragraph (1)(a) must be in substantially the following form:

CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

(b) The notice required by paragraph (1)(b) must expressly cite this chapter and be in substantially the following form:

CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

(3) After receipt of the initial notice of claim, a claimant and the person receiving notice under s. 558.004(1) may, by written mutual agreement, alter the procedure for the notice of claim process described in this chapter.

(4) This chapter applies to all actions accruing on or after July 1, 2004, and all actions commenced on or after such date, regardless of the date of sale, issuance of a certificate of occupancy or its equivalent, or substantial completion

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

of the construction. Notwithstanding the notice requirements of this section for contracts entered into between July 1, 2004, and September 30, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into prior to July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions. Notwithstanding the notice requirements of this section for contracts entered into on or after October 1, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into before July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions.

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



**EXHIBIT "B"**

FLORIDA 2009 SESSION LAW SERVICE
Twenty-First Legislature, First Regular Session

Additions are indicated by Text; deletions by ~~Text~~.

Chapter 2009-203
S.B. No. 2064
BUSINESS AND COMMERCE--CONSTRUCTION DEFECTS--REGULATION

An act relating to construction defects; amending s. 558.002, F.S.; providing and revising definitions; amending s. 558.003, F.S.; limiting application of certain notices; amending s. 558.004, F.S.; revising requirements and procedures for notice and opportunity to repair certain defects; specifying that there are no construction lien rights under certain provisions of law for certain testing; providing an exception; revising requirements for parties to exchange certain materials; providing penalties; amending s. 558.005, F.S.; revising requirements for application to certain claims for legal relief; specifying certain notices required for certain contracts; authorizing parties to agree to mediation; revising application of notice requirements to certain earlier contracts; specifying a required notice for certain contracts; providing construction of the requirement; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1. Subsections (4) through (10) of section 558.002, Florida Statutes, are renumbered as subsections (5) through (11), respectively, a new subsection (4) is added to that section, and present subsection (8) of that section is amended, to read:

<< FL ST § 558.002 >>

558.002. Definitions

As used in this chapter, the term:

(4) "Completion of a building or improvement" means issuance of a certificate of occupancy for the entire building or improvement, or the equivalent authorization to occupy or use the improvement, issued by the governmental body having jurisdiction and, in jurisdictions where no certificate of occupancy or the equivalent authorization is issued, means substantial completion of construction, finishing, and equipping of the building or improvement according to the plans and specifications.

(9) ~~(8)~~ "Service" means delivery by certified mail with a United States Postal Service record of evidence of delivery or attempted delivery ~~, return receipt requested,~~ to the last known address of the addressee , by hand delivery, or by delivery by any courier with written evidence of delivery.

Section 2. Section 558.003, Florida Statutes, is amended to read:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

<< FL ST § 558.003 >>

558.003. Action; compliance

A claimant may not file an action subject to this chapter without first complying with the requirements of this chapter. If a claimant files an action alleging a construction defect without first complying with the requirements of this chapter, on timely motion by a party to the action the court shall **stay** ~~abate~~ the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements. **The notice requirement is not intended to interfere with an owner's ability to complete a project that has not been substantially completed. The notice is not required for a project that has not reached the stage of completion of the building or improvement.**

Section 3. Section 558.004, Florida Statutes, is amended to read:

<< FL ST § 558.004 >>

558.004. Notice and opportunity to repair

(1) In actions brought alleging a construction defect, the claimant shall, at least 60 days before filing any action, or at least 120 days before filing an action involving an association representing more than 20 parcels, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter. If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted. The notice of claim must describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect, if known. The claimant shall endeavor to serve the notice of claim within 15 days after discovery of an alleged defect, but the failure to serve notice of claim within 15 days does not bar the filing of an action, subject to s. 558.003. This subsection does not preclude a claimant from filing an action sooner than 60 days, or 120 days as applicable, after service of written notice as expressly provided in subsection (6), subsection (7), or subsection (8).

(2) Within 30 days after **service** ~~receipt~~ of the notice of claim, or within 50 days after **service** ~~receipt~~ of the notice of claim involving an association representing more than 20 parcels, the person **served with** ~~receiving~~ the notice of claim under subsection (1) is entitled to perform a reasonable inspection of the property or of each unit subject to the claim to assess each alleged construction defect. An association's right to access property for either maintenance or repair includes the authority to grant access for the inspection. The claimant shall provide the person **served with** ~~receiving the~~ notice under subsection (1) and such person's contractors or agents reasonable access to the property during normal working hours to inspect the property to determine the nature and cause of each alleged construction defect and the nature and extent of any repairs or replacements necessary to remedy each defect. The person **served with** ~~receiving~~ notice under subsection (1) shall reasonably coordinate the timing and manner of any and all inspections with the claimant to minimize the number of inspections. The inspection may include destructive testing by mutual agreement under the following reasonable terms and conditions:

(a) If the person **served with** ~~receiving~~ notice under subsection (1) determines that destructive testing is necessary to determine the nature and cause of the alleged defects, such person shall notify the claimant in writing.

(b) The notice shall describe the destructive testing to be performed, the person selected to do the testing, the estimated anticipated damage and repairs to **or restoration of** the property resulting from the testing, the estimated amount of time necessary for the testing and to complete the repairs **or restoration**, and the financial responsibility offered for covering the costs of repairs **or restoration**.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(c) If the claimant promptly objects to the person selected to perform the destructive testing, the person **served with** ~~receiving~~ notice under subsection (1) shall provide the claimant with a list of three qualified persons from which the claimant may select one such person to perform the testing. The person selected to perform the testing shall operate as an agent or subcontractor of the person **served with** ~~receiving~~ notice under subsection (1) and shall communicate with, submit any reports to, and be solely responsible to the person **served with** ~~receiving~~ notice.

(d) The testing shall be done at a mutually agreeable time.

(e) The claimant or a representative of the claimant may be present to observe the destructive testing.

(f) The destructive testing shall not render the property uninhabitable.

**(g) There shall be no construction lien rights under part I of chapter 713 for the destructive testing caused by a person served with notice under subsection (1) or for restoring the area destructively tested to the condition existing prior to testing, except to the extent the owner contracts for the destructive testing or restoration.**

**If** ~~In the event~~ the claimant ~~fails or~~ refuses to agree **and thereafter permit reasonable** ~~to~~ destructive testing, the claimant shall have no claim for damages which could have been avoided or mitigated had destructive testing been allowed when requested and had a feasible remedy been promptly implemented.

(3) Within 10 days after **service** ~~receipt~~ of the notice of claim, or within 30 days after **service** ~~receipt~~ of the notice of claim involving an association representing more than 20 parcels, the person **served with** ~~receiving the~~ notice under subsection (1) may **serve** ~~forward~~ a copy of the notice of claim to each contractor, subcontractor, supplier, or design professional whom it reasonably believes is responsible for each defect specified in the notice of claim and shall note the specific defect for which it believes the particular contractor, subcontractor, supplier, or design professional is responsible. **The notice described in this subsection may not be construed as an admission of any kind.** Each such contractor, subcontractor, supplier, and design professional may inspect the property as provided in subsection (2).

(4) Within 15 days after **service of** ~~receiving~~ a copy of the notice of claim pursuant to subsection (3), or within 30 days after **service** ~~receipt~~ of the copy of the notice of claim involving an association representing more than 20 parcels, the contractor, subcontractor, supplier, or design professional must serve a written response to the person who **served** ~~forwarded~~ a copy of the notice of claim. The written response shall include a report, if any, of the scope of any inspection of the property, the findings and results of the inspection, a statement of whether the contractor, subcontractor, supplier, or design professional is willing to make repairs to the property or whether such claim is disputed, a description of any repairs they are willing to make to remedy the alleged construction defect, and a timetable for the completion of such repairs. **This response may also be served on the initial claimant by the contractor.**

(5) Within 45 days after **service of** ~~receiving~~ the notice of claim, or within 75 days after **service** ~~receipt~~ of a copy of the notice of claim involving an association representing more than 20 parcels, the person who **was served the** ~~received~~ notice under subsection (1) must serve a written response to the claimant. The response shall be served to the attention of the person who signed the notice of claim, unless otherwise designated in the notice of claim. The written response must provide:

(a) A written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed repairs necessary to remedy the defect, and a timetable for the completion of such repairs;

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(b) A written offer to compromise and settle the claim by monetary payment, that will not obligate the person's insurer, and a timetable for making payment;

(c) A written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payment;

(d) A written statement that the person disputes the claim and will not remedy the defect or compromise and settle the claim; or

(e) A written statement that a monetary payment, including insurance proceeds, if any, will be determined by the person's insurer within 30 days after notification to the insurer by means of **serving** ~~forwarding~~ the claim, which **service** ~~notification~~ shall occur at the same time the claimant is notified of this settlement option, which the claimant **may** ~~can~~ accept or reject. A written statement under this paragraph may also include an offer under paragraph (c), but such offer shall be contingent upon the claimant also accepting the determination of the insurer whether to make any monetary payment in addition thereto. If the insurer for the person **served with** ~~receiving~~ the claim makes no response within the 30 days following **service** ~~notification,~~ then the claimant shall be deemed to have met all conditions precedent to commencing an action.

(6) If the person **served with** ~~receiving~~ a notice of claim pursuant to subsection (1) disputes the claim and will neither remedy the defect nor compromise and settle the claim, or does not respond to the claimant's notice of claim within the time provided in subsection (5), the claimant may, without further notice, proceed with an action against that person for the claim described in the notice of claim. Nothing in this chapter shall be construed to preclude a partial settlement or compromise of the claim as agreed to by the parties and, in that event, the claimant may, without further notice, proceed with an action on the unresolved portions of the claim.

(7) A claimant who receives a timely settlement offer must accept or reject the offer by serving written notice of such acceptance or rejection on the person making the offer within 45 days after receiving the settlement offer. If a claimant initiates an action without first accepting or rejecting the offer, the court shall **stay** ~~abate~~ the action upon timely motion until the claimant complies with this subsection.

(8) If the claimant timely and properly accepts the offer to repair an alleged construction defect, the claimant shall provide the offeror and the offeror's agents reasonable access to the claimant's property during normal working hours to perform the repair by the agreed-upon timetable as stated in the offer. If the offeror does not make the payment or repair the defect within the agreed time and in the agreed manner, except for reasonable delays beyond the control of the offeror, including, but not limited to, weather conditions, delivery of materials, claimant's actions, or issuance of any required permits, the claimant may, without further notice, proceed with an action against the offeror based upon the claim in the notice of claim. If the offeror makes payment or repairs the defect within the agreed time and in the agreed manner, the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer.

(9) This section does not prohibit or limit the claimant from making any necessary emergency repairs to the property as are required to protect the health, safety, and welfare of the claimant. In addition, any offer or failure to offer pursuant to subsection (5) to remedy an alleged construction defect or to compromise and settle the claim by monetary payment does not constitute an admission of liability with respect to the defect and is not admissible in an action brought under this chapter.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(10) A claimant's **service** ~~mailing~~ of the written notice of claim under subsection (1) tolls the applicable statute of limitations relating to any person covered by this chapter and any bond surety until the later of:

(a) Ninety days, or 120 days, as applicable, after **service** ~~receipt~~ of the notice of claim pursuant to subsection (1); or

(b) Thirty days after the end of the repair period or payment period stated in the offer, if the claimant has accepted the offer. By stipulation of the parties, the period may be extended and the statute of limitations is tolled during the extension.

(11) The procedures in this chapter apply to each alleged construction defect. However, a claimant may include multiple defects in one notice of claim. The initial list of construction defects may be amended by the claimant to identify additional or new construction defects as they become known to the claimant. The court shall allow the action to proceed to trial only as to alleged construction defects that were noticed and for which the claimant has complied with this chapter and as to construction defects reasonably related to, or caused by, the construction defects previously noticed. Nothing in this subsection shall preclude subsequent or further actions.

(12) This chapter does not:

(a) Bar or limit any rights, including the right of specific performance to the extent such right would be available in the absence of this chapter, any causes of action, or any theories on which liability may be based, except as specifically provided in this chapter;

(b) Bar or limit any defense, or create any new defense, except as specifically provided in this chapter; or

(c) Create any new rights, causes of action, or theories on which liability may be based.

(13) ~~Nothing in~~ This section **does not** ~~shall~~ relieve the person **who is served a** ~~receiving~~ notice of claim under subsection (1) from complying with all contractual provisions of any liability insurance policy as a condition precedent to coverage for any claim under this section. However, notwithstanding the foregoing or any contractual provision, the providing of a copy of such notice to the person's insurer, if applicable, shall not constitute a claim for insurance purposes. Nothing in this section shall be construed to impair technical notice provisions or requirements of the liability policy or alter, amend, or change existing Florida law relating to rights between insureds and insurers except as otherwise specifically provided herein.

(14) To the extent that an arbitration clause in a contract for the sale, design, construction, or remodeling of real property conflicts with this section, this section shall control.

(15) Upon request, the claimant and **any** ~~the~~ person **served with** ~~receiving~~ notice pursuant to subsection (1) shall ~~have a mutual duty to~~ exchange **, within 30 days after service of a written request, which request must cite this subsection and include an offer to pay the reasonable costs of reproduction, any design plans, specifications, and as-built plans; any documents detailing the design drawings or specifications; photographs, videos, and expert reports that describe any defect upon which the claim is made; subcontracts; and purchase orders for the work that is claimed defective or any part of such materials** ~~all available discoverable evidence relating to the construction defects, including, but not limited to, expert reports, photographs, information received pursuant to subsection (4), and videotapes, if any~~. In the event of subsequent litigation, any party who failed to provide **the requested materials** ~~such evidence~~ shall be subject to such sanctions as the court may impose for a discovery violation. Expert reports exchanged between the parties may not be used in any subsequent litigation for any purpose, unless the expert, or a person affiliated with the expert, testifies as a witness or the report is used or relied upon by an expert who testifies

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

on behalf of the party for whom the report was prepared.

Section 4. Section 558.005, Florida Statutes, is amended to read:

<< FL ST § 558.005 >>

558.005. Contract provisions; application

(1) **Unless a claimant and a potential defendant have agreed in writing to opt out of the requirements of this section,** ~~Except as otherwise provided in subsections (3) and (4),~~ the provisions of this chapter shall apply to **any claim for legal relief for which the agreement to make the improvement was made after October 1, 2009, and for which the basis of the claim is a construction defect that has arisen after completion of a building or improvement.** ~~every contract for the design, construction, or remodeling of real property entered into:~~

(2) **For a claim of a construction defect pursuant to contracts for improvement entered into as described in this subsection, the following applicable notices are required:**

(a) Between July 1, 2004, and September 30, 2006, which **contract** contains the notice as set forth in paragraph **(3)** ~~(2)~~(a) and is conspicuously set forth in capitalized letters.

(b) **Between** ~~On or after~~ October 1, 2006, **and September 30, 2009,** which **contract** contains the notice set forth in paragraph **(3)** ~~(2)~~(b) and is conspicuously set forth in capitalized letters.

**(3)** ~~(2)~~(a) The notice required by paragraph **(2)** ~~(1)~~(a) must be in substantially the following form:

CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

(b) The notice required by paragraph **(2)** ~~(1)~~(b) must expressly cite this chapter and be in substantially the following form:

CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

(4) ~~(3)~~ At any time ~~After receipt of the initial notice of claim~~, a claimant and the person to whom notice is served or otherwise must be served ~~receiving notice~~ under s. 558.004(1) may agree in writing to pre-action mediation or otherwise ~~, by written mutual agreement,~~ alter the procedure for the notice of claim process described in this chapter.

(5) ~~(4)~~ Notwithstanding the notice requirements of this section for contracts entered into on or after October 1, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into before July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions. ~~This chapter applies to all actions accruing on or after July 1, 2004, and all actions commenced on or after such date, regardless of the date of sale, issuance of a certificate of occupancy or its equivalent, or substantial completion of the construction. Notwithstanding the notice requirements of this section for contracts entered into between July 1, 2004, and September 30, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into prior to July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions. Notwithstanding the notice requirements of this section for contracts entered into on or after October 1, 2006, this chapter applies to all actions accruing before July 1, 2004, but not yet commenced as of July 1, 2004, and failure to include such notice requirements in a contract entered into before July 1, 2004, does not operate to bar the procedures of this chapter from applying to all such actions.~~

(6) Notwithstanding s. 558.003, unless the parties agree that this chapter does not apply, after October 1, 2009, any written contract for improvement of real property entered into between an owner and a contractor, or between an owner and a design professional, must contain substantially the following notice: "ANY CLAIMS FOR CONSTRUCTION DEFECTS ARE SUBJECT TO THE NOTICE AND CURE PROVISIONS OF CHAPTER 558, FLORIDA STATUTES." The failure to include in the contract the notice provided in this subsection does not subject the contracting owner, contractor, or design professional to any penalty. The purpose of the contractual notice is to promote awareness of the procedure, not to be a penalty.

Section 5. This act shall take effect October 1, 2009.

Approved by the Governor June 18, 2009.

Filed in Office Secretary of State June 18, 2009.

FL LEGIS 2009-203

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**EXHIBIT "C"**

Florida Bar Journal
February, 2009

Column

Real Property, Probate and Trust Law

*42 HOW TO COMPLY WITH CHAPTER 558 FLORIDA STATUTES: CURRENT CHALLENGES AND FUTURE CHANGES

Larry R. Leiby [FNa1]

Steven B. Lesser [FNaa1]

Copyright © 2009 by The Florida Bar; Larry R. Leiby, Steven B. Lesser

F.S. Ch. 558, otherwise known as the Florida Construction Defect Statute, requires owners to send a "notice of claim" to developers, contractors, subcontractors, suppliers, and/or design professionals identifying any alleged construction and/or design defects in "reasonable detail" before any litigation or arbitration for construction defects may be initiated. [FN1] In other words, before an owner may sue someone for a defect, a very specific set of rules must be followed or legal rights may be delayed or lost. Since the introduction of Ch. 558 in 2003, participating parties to design and construction along with construction lawyers, courts, and arbitrators have wrestled with how to inject practicality into the process. Recently reported episodes prove convincing that some change is necessary. In one unreported decision, a circuit court judge interpreted a secondary notice sent to a subcontractor as an admission of liability against a developer. [FN2] In another case, a federal trial court declined to dismiss or abate for failure of a claimant to serve the notice of claim. [FN3] Instead, the court allowed the case to proceed but required the parties to comply with the procedures of Ch. 558 during the early stages of litigation. [FN4]

In a landscape of uncertainty surrounding various provisions, only four appellate decisions exist, none of which have addressed substantive issues that frequently cause construction practitioners heartburn when unsettled issues arise during this presuit process. [FN5] More decisions challenging the various provisions will likely be on the horizon because in 2006, the Florida Legislature expanded the statute to apply beyond residential dwellings to commercial real property, such as businesses, schools, hospitals, office condominiums, hotels, and all other structures except for those involving public transportation. [FN6] As businesses struggle to stay afloat in this economy, many cannot afford to interrupt the daily routine to allow parties to herd inspectors through the structures, during normal working hours, to ponder repairs to be performed at a later date. Business owners may be hard-pressed to hold off fixing their leaking roof for a period of 45 days to enable a contractor to respond with an offer to fix the leak. The statute does provide some express relief from compliance if the repairs performed constitute an "emergency." [FN7] Although this term is not defined under the statute except to describe a repair to "protect the health, safety, and welfare of the claimant," a judge may be hard-pressed to understand why an unsightly condition in a business setting such as a restaurant gives rise to an emergency situation to relieve the business owner from following the statute. The result of all of these developments will create challenges to be sorted out by lawyers and fact finders. Many of these issues may also stall repairs being made, with some business owners electing to ignore the statute only to be later delayed from pursuing

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

relief against responsible parties. [FN8]

While the statute expressly authorizes prenotice emergency repairs, it is silent as to whether the owner is precluded from making the repairs before the notice procedure is satisfied. One view of the effect of prenotice repairs would be that, by implication, the owner is barred from relief due to the inability to inspect, conduct destructive testing, or make a settlement offer (which seems rather harsh, particularly since this result would be only by implication and not express language). Another view would be that the potential defendants could argue that performing nonemergency repairs without satisfying the presuit notice requirements has prejudiced their statutory rights, giving rise to defenses, such as a) "it cost too much," *i.e.*, "it could have been done cheaper or I would have done it for nothing"; and b) "it wasn't my fault and you didn't let me see the condition before you spent money that you now seek to recover."

For the last five years, some lessons have been learned about complying with the statute, and this article will provide some suggestions to achieve compliance from the standpoint of both the owner and contractor. [FN9]

F.S. Ch. 558 requires an owner (claimant) to give notice and an opportunity to cure with respect to a building defect(s). The statute sets forth its purpose as to create "an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of property owners." [FN10] In more practical terms, it is intended to allow both claimants and participants to design and construction to resolve alleged defects before both sides run to the courthouse and spend a pile of money on lawyers.

Owners and contractors have some ***43** basic decisions to make with respect to this statute before a dispute hits the courthouse:

1) Should the parties elect to opt out of the procedure [FN11] (which the parties have the right to do at the time of making the contract or by later agreement)?

2) If you are a contractor, once you receive a notice of claim pursuant to the statute, how should you address downstream subcontractors and suppliers who may have involvement with the alleged defect?

3) Should the contractor serve a response to the notice of claim; and if so, what should it say?

The questions posed should be addressed before the matter hits the courthouse. Because of the implications and requirements to exchange documents and/or perform destructive testing, clients should involve legal counsel in such decisions. Although many clients may hesitate to involve counsel at the early stage of defect discovery, clients should be educated that significant legal fees may be avoided by following the statutory process in an effort to achieve an economical presuit resolution.

*Should the Contractor Opt Out in the Contract?* Remember that the purpose of this statute is to resolve construction defect claims by affording an opportunity to inspect, including destructive testing if appropriate, and correct the defect or offer a settlement before the relationship deteriorates to litigation or arbitration. There is little justification for a contractor to opt out of this process in the contract. By this process, there is an invaluable opportunity to learn about the claim that ultimately may be asserted in litigation or arbitration. In an arbitration setting without an automatic opportunity for discovery, [FN12] this process could be very productive and meaningful. From the owner's standpoint, those educated about the statute may suggest that the procedure be waived (opt out) so that the owner has no duty to send any notices, offer any inspections, or exchange documents relating to the claim before filing suit.

Note also that the parties may stipulate or agree to opt out of the process at any time after a notice of claim has

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

been given if it appears that the parties know the facts and are simply polarized in position, so that a third-party decision (litigation or arbitration) is the proper next step. [FN13] However, this would be a rare situation. With discussion, inspection, and the opportunity for expert input, knowledgeable parties may be able to understand and agree what the cause and/or the solution is or should be. Opting out in the contract would not appear to benefit the contractor, because it most certainly deprives the contractor and other potential defendants from being educated through receipt of a description of the defect in "reasonable detail," having an opportunity to inspect, perform destructive testing, and resolve the matter without litigation or arbitration. [FN14]

Owners may approach the matter differently, avoiding Ch. 558 altogether by opting out of the procedure in their contracts. [FN15] By this opt out approach, owners may gain flexibility when a defect arises by structuring their own dispute resolution process that adopts acceptable Ch. 558 features without being strictly bound to the statute. This could be accomplished by including a different resolution procedure in the contract to serve as a prerequisite to litigation or arbitration. [FN16] Opting out with different agreed-upon procedures carries the uncertainty of the enforcement of the contractual procedure on non-parties to the contract. Also, an alternative process could be proposed later, by the owner sending a demand letter to the contractor that outlines a dispute resolution process that the contractor may find acceptable. This approach may include providing the contractor with a detailed description of the alleged defect, an opportunity to inspect, some testing, and a shortened timeline for a contractor to respond with a proposal.

Without being bound to the statutory process, the owner may proceed forward without being confronted by motions to abate for failing to satisfy the statutory requirements. One major shortcoming of the statute that can also be rectified by using an alternative approach is to specify a time frame for completing repairs. The current statutory process permits the contractor to specify *any* time period to complete the repair, leaving the issue to a determination of whether the proposed time period is reasonable. [FN17] Of course, the owner may choose to accept or reject the offered repair in the offered time period. Tightening this up by fashioning a different process would be especially appealing to an ongoing business that cannot afford to wait for repairs to be completed.

Note also that the claimant and recipient of the notice have a mutual duty upon request to exchange "all available discoverable evidence" related to the defect issue. [FN18] Failure to exchange such information is punishable by the court (in any later litigation) by sanction. [FN19] Thus, if there is some benefit to be gained by not being obliged to furnish such information before a suit is filed, that may be a reason to opt out. This reason may not be particularly valuable if litigation is the forum for dispute resolution, since relevant information may be requested once the suit is filed. The same is not necessarily so in arbitration. As noted above, there is very little absolute right to discovery in arbitration. [FN20] One of the issues anticipated to be addressed by a proposed legislative amendment as described below is a better description of what must be produced in response to the request, so that the party and the party's lawyer are not left to guess about an omission of "available discoverable evidence" that may be subject to sanctions.

*How Do You Address Downstream Subcontractors and Suppliers?* Section 558.004(3) permits a contractor who receives a 558 notice from an owner to "forward a copy of the notice of claim to each contractor, subcontractor, supplier, or design professional whom it reasonably believes is responsible for each defect specified in the notice of claim and shall note the specific defect for which it believes the particular contractor, subcontractor, supplier, or design professional is responsible." Thus, if there is a water intrusion issue, the contractor may forward the notice to the subcontractors or suppliers whom the contractor believes are responsible for the defect, noting the ***44** specific defect applicable to the downstream parties. The contractor would wish to include anyone who may have input for the defect, but should not be overbroad. Frequently, this process is stalled because the forwarding notice does not specify the alleged defects that fall within the scope of the secondary recipient's work. The contractor recipient of the notice simply shotguns the notice received from the owner to others, without specifically identifying those alleged defects for which the downstream person is perceived to be responsible. This shotgun approach often backfires when the contractor receives an objection to the downstream notice instead of a timely proposal to correct the alleged defect.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Without having the proposal from the secondary recipient in a timely fashion, the contractor is frequently left without much to offer the owner from subcontractors when his or her own response becomes due. Counsel should educate contractor clients about the need to carefully segregate the defects to be included in notices to those responsible parties. Otherwise, the entire process may become an exercise in futility.

The contractor should carefully word the downstream notice. At least one trial court in Broward County has ruled that a downstream notice by the developer to the contractor and subcontractors was an admission against interest with respect to the developer. [FN21] Thus, to avoid that argument, the downstream notice should include some disclaimer language to make clear that the contractor does not necessarily agree that the alleged defect exists, but is only being sent to allow the subcontractor/supplier with an opportunity to inspect and respond to the notice of claim as provided by Ch. 558. The choices for responding to a downstream notice are the same that exist for the contractor [FN22] and are discussed below. The statute is silent on the effect of a failure to respond to the notice. Unlike the owner's notice to the contractor, there is no requirement for the contractor to serve a downstream notice as a precondition to the contractor bringing suit (as an original complaint or third-party complaint in the owner's action, should it be filed) against the downstream subcontractor or supplier. [FN23] Another puzzling question arises when a subcontractor receives a secondary notice from a contractor but does not receive a notice of claim directly from the owner. In that instance, can the owner directly sue the subcontractor based on the contractor's downstream notice, or will the subcontractor be able to move to abate because the owner failed to serve his or her own notice of claim upon that subcontractor? It seems that owners would be prudent to serve notices of claim on all potential parties the owners wish to directly pursue, in order to avoid this argument. [FN24]

If the contractor does send the downstream notice, the recipient subcontractor and/or supplier has the opportunity to request an inspection. [FN25] Note that the statute does not require the mutual exchange of information between subcontractors and suppliers and the contractor, which is required upon request between an owner and a contractor. [FN26] This is also one additional reason for owners to send notices of claim directly to the participating subcontractors and suppliers. Frequently, contractors request such information from subcontractors and suppliers, but the statutory sanction in a later action for failure to respond does not exist for the downstream parties. [FN27] However, subcontractors and suppliers may typically cooperate with their contractor customers by furnishing the requested information and perhaps avoid litigation (particularly where the subcontractor/supplier has a very good position on the issue).

*How Does the Contractor Respond to the Owner's Notice of Defect?* The first thing that the contractor will typically do is to identify the downstream people as well as an expert and make arrangements to inspect the alleged defect(s). Usually this will include photographs and perhaps a video, although a video should be arranged in advance of the inspection to avoid any objections by the owner or contractor at the inspection. The inspection may include destructive testing, although reasonable arrangements for the testing and restoration would ordinarily be required by the owner and may follow an initial inspection. [FN28] Although destructive testing is to be by “mutual agreement,” business owners likely will not permit it because of the noise, mess, and interruptions it may create for everyday flow of business operations. Moreover, any proposal for destructive testing should address restoration of what is being destroyed and deal with posting some financial security to protect the claimant. [FN29] Nevertheless, owners should think twice before refusing contractors and others with access to destructively test their property for defects. An owner's failure to agree to destructive testing could void an owner's claim for those damages that could have been avoided or mitigated if such testing was allowed and “had a feasible remedy been allowed.” [FN30] Based on the statutory language dealing with owners who refuse to permit destructive testing, it may be difficult for a court to determine what damages would result from the lack of destructive testing, especially since a feasible remedy has not been formulated or implemented. This defense to such damages would seem to call for speculation unless the request for testing (that is denied) identifies potential feasible remedies based on projected findings. [FN31]

The contractor will in most instances send the downstream notices to subcontractors and suppliers to obtain the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

benefit of their responses and possible financial input for a monetary offer prior to being obliged to respond to the owner (noting that there is no penalty for lack of response by anyone). The only penalty addressed in the statute for lack of response is that the owner may, after the time allowed for response, file the suit or demand arbitration. [FN32] However, the law is left to general evidentiary principles and is now developing with respect to whether or how the lack of response may be brought out in the case. It would appear that a lack of response where the statute requires one is something that may be relevant to the defect case to show disinterest by the recipient of the notice but likely nothing more. [FN33] With little to be lost other than an inference of disinterest, [FN34] it becomes understandable why some ***45** simply ignore responding to secondary notices from contractors.

The response is to include a report, if any, of the scope of any inspection of the property, the findings and results of the inspection, and may also include an offer to pay money, repair the defect, a combination of repairs and payment, a monetary payment contingent upon an insurer's decision, or that the notice of claim is disputed. [FN35]

*What Are the Time Constraints?* The statute says that an owner is to endeavor to send the notice of defect within 15 days of learning of the defect, but there is no penalty for serving the notice after expiration of the 15 days. [FN36] However, there may be some questions at a later trial about why an owner delayed sending a notice beyond 15 days from learning of the defect. As is often the case, owners initially focus only on the major parties such as the developer, general contractor, and design professionals who participated in the design and construction that led to causing the alleged defect. Although these main parties may receive an engineering report dated within the last 15 days, many times it is only much later that owners seek to serve a notice of claim on other participants such as subcontractors and suppliers. [FN37] But by that time, the 15 days or other applicable time deadlines may have long passed. In that instance, the expert report dated 10 months ago is first served on the subcontractor with the notice of claim (which on its face runs afoul of the 15-day statutory requirement). This delay may arguably serve to support an objection to the notice of claim and a motion to abate a lawsuit or arbitration from proceeding. [FN38]

The contractor may send the down-stream notice to the believed affected subcontractors and suppliers within 10 days if there are 20 or less affected parcels or within 30 days if there are more than 20 affected parcels. [FN39] Again, the statute does not address the consequences of sending the downstream notice later. One could argue that the notice is a creature of statute and that failure to timely send the notice eliminates the need for a response, since the notice would be outside of the statute.

Within 30 days of receipt of the notice for 20 or less parcels, or within 50 days of receipt of the notice for more than 30 parcels, the person receiving notice is entitled to perform a reasonable inspection of the property during normal working hours of each unit subject to the claim to assess each alleged construction defect. [FN40]

Within 15 days after receipt of the notice for 20 or less parcels, or within 30 days of receipt of the notice for more than 20 parcels, the downstream subs and suppliers are to serve their written response. [FN41] Again, there is no statutory penalty for a late response or no response, except as it may be addressed at a later trial or arbitration.

Within 45 days after receiving the notice of claim, or within 75 days after receipt of a copy of the notice of claim involving an association representing more than 20 parcels, the person(s) who received the original notice must ***46** serve a written response to the claimant. [FN42]

**What is on the Horizon?**

A bill is anticipated to be filed in the 2009 Florida legislative session to amend F.S. Ch. 558 to address many shortcomings associated with the statute. The bill is the product of a Florida Bar study committee, consisting of construction lawyers who represent owners, contractors, design professionals, and suppliers. [FN43] The amendments

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

were fashioned to address some glitches in the current law and clear up some confusing terminology and also to change some of the procedures. [FN44] The study committee discussed imposing penalties for lack of compliance or timely compliance, and decided that the law is intended to serve as an avenue for settlement, not another weapon or remedy to be asserted in the courts. The *concepts* expressed above, for the most part, are expected to remain the same, other than a change that would prohibit the sending of a downstream notice being used as an admission against interest.

[FNa1]. ***Larry R. Leiby*** *is of counsel to Leiby Stearns and Roberts, P.A. Mr. Leiby has practiced construction law in Florida for 35 years, founded and chaired the Construction Law Committee in the RPPTL Section, has chaired and still serves on The Florida Bar Construction Law Certification Committee, has written* The Florida Construction Law Manual *published by West, is adjunct faculty teaching construction law at FIU Law School, and serves as a mediator and arbitrator of construction disputes.*

[FNaa1]. ***Steven B. Lesser*** *is a shareholder in Becker & Poliakoff, P.A., in Ft. Lauderdale, where he chairs the firm's Construction Law Group. He is board certified in construction law by The Florida Bar and has authored numerous articles dealing with construction issues including construction defects and Ch. 558, Florida Statutes. Mr. Lesser previously served as chair of The Florida Bar* Journal & News *Editorial Board as well as past chair of American Bar Association Forum on the Construction Industry Steering Committee on Owners and Lenders.*

*This column is submitted on behalf of the Real Property, Probate and Trust Law Section, Sandra F. Diamond, chair, and William P. Sklar and Richard R. Gans, editors.*

[FN1]. FLA. STAT. §558.004(1) (2006). For a general discussion of Ch. 558, *see* Steven B. Lesser, *The 2004 Amendments to Florida's Construction Defect Statute: Some Solutions and More Confusion*, 78 FLA. B.J. 47 (October 2004).

[FN2]. *Geller v. Aventura Land Holdings, Ltd.*, Case No. 06-09739-CA-06, Florida 17th Circuit.

[FN3]. *See CC-Aventura, Inc. v The Weitz Co.*, Case No. 06-21598, U.S.D.C. S.D. Fla.

[FN4]. *Id.* The order in *CC-Aventura, Inc.* appeared to be a reasonable solution such that no one sought review of the order. *See also* FLA. STAT. § §558.003 and 558.004 (7) (2006).

[FN5]. *Saltponds Condominium Association, Inc. v. McCoy*, 972 So. 2d 230 (Fla. 3d D.C.A. 2007) (reiterating that mailing of the written notice of claim letter tolls the applicable statute of limitations for the timeframes specified in FLA. STAT. §558.004). *Specialty Engineering Consultants, Inc. v. Hovstone Properties Florida LLC*, 968 So. 2d 680 (Fla. 4th D.C.A. 2007) (holding that Ch. 558 does not apply to an owner who is also the contractor, since the contractor is not a "claimant" as defined in Ch. 558, citing, *Centex Homes v. Mr. Stucco Inc.*, 2007 WL 2264622 (M.D. Fla. Aug 6, 2007)(same)). *Infinity Design Builders Inc. v. Hutchinson*, 964 So. 2d 752 (Fla. 5th D.C.A. 2007) (Trial court denied builder's motion to stay arbitration for owner's failure to comply with notice requirements under Ch. 558. The district court reversed and granted builder's motion to stay arbitration on the grounds that builder had not exhibited any knowing intent to waive its right to litigate. (Note: The court did not engage in any further discussion of whether Ch. 558 requirements apply to arbitrations.)). *Saltponds Condominium Association, Inc. v. Walbridge-Aldinger Co.*, 979 So. 2d 1240 (Fla. 3d D.C.A. 2008) (notice acts to toll running of statute of limitations for the notice period under the statute).

[FN6]. Ch. 2006-281, Laws of Florida; FLA. STAT. §558.002 (7) (2006).

[FN7]. FLA. STAT. §558.004(9) (2006).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

[FN8]. FLA. STAT. §558.003 (2004).

[FN9]. References to "contractor" throughout this article include those identified in FLA. STAT. §558.002(5) that are legally engaged in the business of designing, developing, constructing, manufacturing, repairing, or remodeling real property.

[FN10]. FLA. STAT. §558.001 (2006).

[FN11]. FLA. STAT. §§558.005(1) and 558.005 (3) (2006).

[FN12]. *See* FLA. STAT. §558.004(15) (2006) contrasted with, for example, Rule R-24 Construction Industry Dispute Resolution Procedures (American Arbitration Association) which permits discovery only in the discretion of the arbitrator(s).

[FN13]. FLA. STAT. §558.005(3) (2006).

[FN14]. FLA. STAT. §558.004(15) and 558.004 (2) (2006).

[FN15]. FLA. STAT. §§558.005(1) and 558.005 (4) (2006).

[FN16]. *E.g.*, "The parties hereby agree to opt out of the provisions of Ch. 558, Fla. Stat. In the event of a claimed defect, the parties agree to pursue mediation by written demand from the owner claiming a construction defect to any party believed by the owner to be responsible for the defect as a condition precedent to any final dispute resolution procedure, arbitration or litigation [as appropriate]. Moreover, the parties agree that if mediation is requested, the other party(ies) who have been requested to mediate may inspect the alleged defect(s) upon prompt and reasonable written notice prior to the mediation."

[FN17]. FLA. STAT. §558.004(5)(a) (2006).

[FN18]. FLA. STAT. §558.004(15) (2006).

[FN19]. *Id.*

[FN20]. *See, e.g.*, Rules R-24 and L-5(b), Construction Industry Dispute Resolution Procedures (American Arbitration Association).

[FN21]. *Geller v. Aventura Land Holdings, Ltd.*, Case No. 06-09739-CA-06, Florida 17th Circuit.

[FN22]. FLA. STAT. §558.004(5) (2006).

[FN23]. FLA. STAT. §§558.002(3) and 558.004(3) (2006).

[FN24]. FLA. STAT. §558.004(1) (2006).

[FN25]. FLA. STAT. §558.004(2) (2006).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

[FN26]. FLA. STAT. §558.004(15) (2006).

[FN27]. *Id.*

[FN28]. FLA. STAT. §558.004(2) (2006).

[FN29]. FLA. STAT. §558.004(2)(b) (2006).

[FN30]. FLA. STAT. §558.004(2) (2006).

[FN31]. It is difficult to imagine how a court could make this determination absent expert testimony based on observations conducted at the time destructive testing is requested.

[FN32]. FLA. STAT. §558.004(1) and (6) (2006).

[FN33]. There is no penalty set forth in the statute.

[FN34]. Of course, one never knows whether such disinterest could be a hot button for the trier of fact.

[FN35]. FLA. STAT. §§558.004(4) and (5) (2006).

[FN36]. FLA. STAT. §558.004(1) (2006).

[FN37]. At this juncture, the only option to identify other culpable parties is through informal means, such as by a review of client documents and building department records, especially in the absence of formal discovery.

[FN38]. Practitioners often raise this issue as the basis for an objection yet the statute appears advisory at best as it states: "The claimant shall endeavor to serve the notice of claim within 15 days after discovery or an alleged defect, but the failure to serve the notice of claim within 15 days does not bar the filing an action subject to 558.003."

[FN39]. FLA. STAT. §558.004(3) (2006).

[FN40]. FLA. STAT. §558.004(2) (2006).

[FN41]. FLA. STAT. §558.004(4) (2006).

[FN42]. FLA. STAT. §558.004(5) (2006).

[FN43]. The study committee was comprised of Bruce Alexander, Fred Dudley, Tim Ford, Larry Leiby, Steve Lesser, Joy Lundeen, Lee Weintraub, and Brian Wolf.

[FN44]. The text of the bill is not offered here since it has not yet been introduced as of this writing and is subject to change.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

83-FEB FLBJ 42
83-FEB Fla. B.J. 42

Page 9

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Sarasota
Date: 11/02/05
Time: 13:06:51
S#: 20010583
C#: 1122884

Morrison Homes

## TAMPA DIVISION

PURCHASER: Kristin Morgan Culliton    Home Phone 941-360-1747    Work Phone

PURCHASER:    Home Phone    Work Phone

MAILING ADDRESS: 5284 Creekside Trail, Sarasota, FL, 34243, US

SELLER: MORRISON HOMES, INC., d/b/a MORRISON HOMES
12802 Tampa Oaks Boulevard, Suite 100, Temple Terrace, Florida 33637
Sales Office Phone #    Sales Associate Carmen Triana

PROPERTY: Lot 154 Block GG in section Terrace phase
of (Platted Subdivision name) which subdivision is also known as Greenbrook
according to subdivision plat recorded in Plat Book46,
Page 31 of the public records of MANATEE COUNTY
County, Florida, commonly known as 15314 Skip Jack Loop, Bradenton, FL,34202.

MODEL NAME: Rothbury @ GreenBrook Bend
MODEL NUMBER: 1371ROTHBU
GARAGE SWING: Right Left
(including site premium)

| | | |
|---|---|---|
| EARNEST MONEY | $ | 3,483.00 |
| RECEIVED WITH CONTRACT | $ | 3,483.00 |
| REMAINING BALANCE | $ | 0.00 |
| DUE DATE | | |

| | | |
|---|---|---|
| BASE PRICE: | $ | 324,990.00 |
| SITE PREMIUM: | $ | 15,000.00 |
| TOTAL BASE PRICE: | $ | 339,990.00 |

LENDER:
LOAN APPROVAL : YES: ____ NO: ✓

## AGREEMENT

Upon execution by Seller of this Agreement, Seller agrees to sell to Purchaser and Purchaser agrees to buy from Seller the property described above on the terms and conditions stated in this Agreement. The above purchase price is subject to changes via Addenda and/or Change Orders that are signed by both Purchaser(s) and Seller subsequent to execution of this Agreement and are made a part of this Agreement.

1. EARNEST MONEY

At the time of signing this Agreement, Purchaser is placing on deposit Earnest Money in the amount indicated above which will be retained by the Seller until closing. The Remaining Balance, if any, shall be delivered to Seller no later than the date indicated above. The Earnest Money deposit will be applied against the Purchase Price or Closing Costs at the time of closing. If this transaction does not close, the Earnest Money deposit will be retained by the Seller or delivered to the Purchaser as provided in paragraph 19. THE PURCHASER OF A ONE-FAMILY OR TWO-FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO 10 PERCENT OF THE PURCHASE PRICE) DEPOSITED IN AN INTEREST BEARING ESCROW ACCOUNT. THIS RIGHT MAY BE WAIVED, IN WRITING, BY THE PURCHASER. BY EXECUTION OF THIS AGREEMENT, PURCHASER (PURCHASER) WAIVES THIS RIGHT. Seller's minimum Earnest Money requirement is irrespective of Purchaser's obligation under their selected mortgage financing and Seller may credit to Purchaser any excess deposits, as permitted by the Purchaser's Lender, at closing.

**In the event the Purchaser is unwilling or unable to obtain a mortgage loan commitment from Morrison Financial Services of Florida, LLC or is paying cash, an additional five percent (5%) Earnest Money Deposit will be required (total of ten percent (10%) or if greater one-third (33%) of the collective total of all options selected in the Agreement. Such Earnest Money Deposit is to be paid to Seller not later than 5 days after demand, or 45 days from the Effective Date, whichever occurs first. In the case that the Home is substantially complete at the time of this Agreement, any additional required Earnest Money Deposit is to be paid by Purchaser not later than 5 business days from the Effective Date. In the event the Purchaser does not provide additional Earnest Money Deposit, as described hereinabove, such failure(s) shall constitute a default of the Agreement with no grace period or cure period for such default. In such event, Seller may terminate this Agreement without notice and be entitled to retain all deposits and sums paid by the Purchaser as liquidated damages and both parties shall be relieved of any further obligation and liability.**

2. Purchaser acknowledges Broker named below is the only broker to provide services in this transaction
Real Estate Agent: Real Estate Co: KMC

3. COMPLETION

The home is estimated to be substantially completed within 180 days of the issuance of all permits required to construct the home and receipt of all approvals including those required by the community Homeowners Association and committees, except as otherwise amended in separate Addenda. Any projected completion dates estimated by the Seller are based upon local conditions and capabilities of the Seller and the date of any estimates is subject to change. Completion may be delayed by adverse weather, shortages of materials or labor, acts of God or other events beyond the control of the Seller. If closing is delayed more than ninety (90) days beyond the planned closing date set forth by Seller in writing to the Purchaser prior to closing, Purchaser shall have ten (10) days from the ninetieth (90) day to rescind this Agreement in writing and receive back the Earnest Money. If Purchaser does not rescind the Agreement within such ten-day period, the Agreement will remain in effect. Seller shall not be responsible for any damage or loss suffered by Purchaser as a result of any delay in the closing of the house or change in the closing date. In any event, and in accordance with the

EXHIBIT COMPOSITE D

KMC initials

Interstate Land Sales Act, Seller shall complete the house within two (2) years of the date of this Agreement.

Prior to closing, on the date and time scheduled by the Seller, Seller will demonstrate the home to the Purchaser, at which time Purchaser will sign a statement listing any workmanship, material or installation items, which the Purchaser considers defective. If any item listed is actually defective based upon the construction standards set forthby the Seller and generally adhered to in the locality for similar property, Seller will correct those items. Seller shall use it'ssole discretion in the determination of an item as defective and the appearance of an item on the list does not constitute agreementby the Seller to correct the item. It is the intent of the Seller to correct items prior to closing. Purchaser agrees that the existence of any uncorrected items does not constitute grounds for deferring or imposing any conditions, including the escrow or holdback of any closing funds, upon closing. Only the Seller, at its sole discretion, may delay closing to complete items and in that event Purchaser shall continue to be responsible for personal living accommodations including moving and storage costs.

4. FINANCING

This Agreement is contingent upon Purchaser obtaining a mortgage loan commitment ("Loan") from Morrison Financial Services of Florida, LLC., which is a separate entity from Morrison Homes, Inc., but is a partly owned by Morrison Homes, Inc. This is the only contingency of this Agreement, unless modified by separate addendum. Purchaser may exercise this contingency by providing written notice of termination of this Agreement to Seller within 45 days of the date of this Agreement, after meeting the conditions specified below. In order to exercise the contingency, Purchaser must demonstrate that Purchaser 1) applied for and paid all fees required for the application of the Loan within five (5) business days of the date of this Agreement, 2) diligently pursued approval of the Loan qualified for regardless of terms or conditions, 3) delivered any information requested by the lender within ten (10) days of request, and 4) was unable to obtain a loan commitment due to no fault of Purchaser. If Purchaser satisfies the above conditions and exercises this contingency to terminate the Agreement, Seller shall return any deposit monies paid to the Seller less 1) the price of any contract options, professional services, real estate commissions or consulting fees, 2) governmental agency or proration fees for the request, submittal or receipt of applicable permits,and 3) a $250 contract processing fee, and both parties shall be relieved of further obligation or liability to the other. If the above conditions are not satisfied and the contingency exercised by Purchaser within 45 days, the contingency shall expire and be of no further effect.

Regardless of the above contingency, Purchaser may make financing application to any person or entity of Purchaser's choice. However, approval of such application shall not be a contingency of this Aggreement, and such application shall have no effect on the sole contingency specified above.

5. DEED

A General Warranty Deed will be provided to Purchaser conveying marketable title free and clear of encumbrances and exceptions other than exceptions as to 1) future taxes, 2) municipal services unit assessments, 3) covenants, restrictions, easements and utility agreements, of record or shown on the plat, 4) zoning and development order conditions, and 5) impact fee, water and wastewater assessments. The lot will be assessed by the appropriate municipality for non-ad valorem water and wastewater capacity assessment unit.

6. WARRANTY

Seller agrees to provide Purchaser with Morrison Homes Two-Year Blanket Warranty and a Ten Year Structural Warranty. Purchaser acknowledges receipt of specimen copies of such warranties and a copy of The Little Purple Book, which outlines the material and workmanship standards applicable to the Morrison Homes Two-Year Blanket Warranty. THE MORRISON HOMES TWO-YEAR BLANKET WARRANTY AND TEN-YEAR STRUCTURAL WARRANTY ARE ACCEPTED BY PURCHASER IN PLACE OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, WHETHER ARISING UNDER STATE LAW OR THE MAGNUSON-MOSS WARRANTY ACT, INCLUDING, BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF FITNESS, MERCHANTABILITY, OR HABITABILITY and Purchaser hereby waives all such implied or statutory warranties.

Purchaser agrees that Sellers sole responsibility after closing is to cover items under warranty as represented. Purchaser agrees that Seller shall not be responsible to compensate Purchaser in any manner unless otherwise contained herein and that in order for the Seller to maintain responsibility for the home warranty the Purchaser may experience some inconvenience and potential loss of income. Purchaser agrees that irregularities in the fit and finish of materials used in the construction of the property are inherent and Seller is not bound to correct these conditions. The Purchaser agrees and acknowledges that sod, landscaping, bushes, shrubbery and trees are warranted for 45 days from the date of closing and replacement thereafter is the Purchasers sole responsibility. Purchaser agrees that Sellers warranty on and the condition at installation for sod, landscaping, bushes, shrubberyand trees is predicated upon environmental conditions and restrictions imposed by controlling agencies, which often change from time to time, and that Seller, at its sole discretion may exclude or limit warranty on these items without notice to the Purchaser, anytime prior to closing. The Seller offers no warranties or representations regarding existing trees and natural foliage left on the lot and shall not be responsible at any time to care for, remove, prune, underbrush or otherwise address other than as required under Sellers ownership by governing law, code, ordinance or covenant. Purchaser and Seller mutually agree these conditions to the warranty survive the closing.

FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME, SIXTY DAYS BEFORE YOU FILE YOUR LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW.

7. STANDARD RADON GAS DISCLOSURE

**Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from the county health unit.**

KMG ______ initials

Sarasota
Date: 11/02/05
Time: 13:06:51
S#: 20010583
C#: 1122884

**Water/Wastewater Capacity Assessment::** The property ✓ HAS ________ HAS NOT been placed in a Water and/or Wastewater Capacity Assessment Unit by Manatee County. This is a municipal services benefit unit assessment, which will appear on the homeowners yearly property tax bill from the Manatee County Tax Collector.

Purchaser should not execute the contract or agreement until they have read and understand the Disclosure Summary required by law.

**22. REPRESENTATIONS OF PURCHASERS**

Purchasers represent and warrant that they have the financial ability to purchase the Property, with mortgage financing if a financing contingency is selected. This representation is a material inducement for Seller to enter into this Purchase and Sale Agreement and cease offering the Property to others. At any time during the term of this Agreement, Purchaser shall demonstrate to Seller one of the following items in writing, upon three business days demand by Seller: 1) possession and control of the amount of the Purchase Price in cash or liquid asset, or 2) a valid mortgage loan application which was received by a licensed mortgage broker within 5 days of the execution of this agreement, or 3) within 45 days of the date of execution of the Agreement, possession and control of the amount of a down payment and a pending application with licensed mortgage broker for the balance of the Purchase Price, or 4) after 45 days from the date of execution of the Agreement, a valid mortgage commitment from a licensed mortgage broker for the purchase of the Property. If Purchaser fails to demonstrate one of the preceding items, Purchaser shall fail to be in compliance with this Agreement and Seller will retain the Earnest Money as liquidated damages.

**23. TERMINATION**

**At any time during the pendency of this Contract and prior to Closing, and for any reason whatsoever or no reason, Seller may elect to terminate this Contract by providing written notice of such termination to Purchaser together with a full refund of Purchaser's Earnest Money Deposit and the payment of the sum of Five Hundred Dollars ($500) as a termination fee and/or liquidated damages, and both parties shall be relieved of any further obligation and liability. This clause shall not be deemed mutual and by signing the Contract, the Purchaser hereby acknowledges, agrees, understands the right of the Seller granted by this provision, and agrees that this liquidated damage amount is reasonable and that the ascertainment of any actual damage would be, difficult or imposssible.**

**24. MISCELLANEOUS**

a. This agreement may not be assigned.
b. Whenever the context shall so require, the singular shall include the plural, the masculine gender shall include the feminine and neuter, and vice versa.
c. This Agreement may not be amended or modified except in writing executed by both parties.
d. If two or more persons are identified as Purchasers in this Agreement, any one of them shall have the right and authority to bind the other(s) in all matters relating to this Agreement.
e. This Agreement is binding upon the Seller only when executed by a duly authorized agent of the Seller. The authorized agents are the Divsion President, Vice President of Operations, Vice President of Finance, and Vice President of Construction.
f. Neither this Agreement nor any memorandum thereof shall be recorded in the public records of the County or State in which property is located. Any attempt to record this Agreement or any memorandum thereof shall be a material breach of this Agreement.
g. Time is of the essence, in terms, conditions and provisions of this Agreement relating to time.
h. If this Agreement is a rewrite, as noted on page 1, this Agreement supercedes all previous Agreements written between the parties.
i. **If Morrison is acquiring the title to this lot for home construction under a lot sales agreement with a developer, then Purchase and Sale Agreement is contingent upon the actual completion of all subdivision improvements by the developer and conveyance of the lot by the developer to Morrison as agreed. If completion and conveyance to Morrison does not occur, Morrison shall notify Purchasers who shall have the option of canceling this agreement or entering into a new agreement for a different available lot.**
j. Without limiting the nature of any provision of the Agreement, the Purchaser specifically notes they have reviewed Paragraph (3) Completion, Paragraph (4) Financing, Paragraph (10) Signature Selections, Paragraph (11) Change Orders, Paragraph (13) Models and Plans, Paragraph, (16) Closing and Paragraph, (18) Merger, (22) Representations of Purchasers, and (23) Miscellaneous.

**Purchaser acknowledges and represents that Purchaser has read this agreement and all addenda and exhibits attached to it. Purchaser agrees to be bound by all its terms and conditions. Purchaser acknowledges that Purchaser is not relying on any statement, promise or commitment not expressly set forth in this Agreement. Oral representations shall not be relied upon, and are not a part of this agreement.**

| Carmen Triana | 11/2/05 | Kristin Morgan Culliton | 11/2/05 |
|---|---|---|---|
| **Carmen Triana** | **Date** | **Kristin Morgan Culliton** | **Date** |
| | | **SSN** | |
| **Authorized Agent** | 11/6/05 **Date** | | **Date** |
| | | **SSN** | |

CASSIA AT VASARI,
A CONDOMINIUM
RESIDENCE PURCHASE CONTRACT

RECD DEC 13 2005

Purchaser(s): James Tarzy & Bruce Elliot
Purchaser Address: 11 Sunrise Te. Medford, N.J. 08055
Purchaser Phones: (Home) 609-953-1778 FAX) ______ (Local) ______
Purchaser SS # /FEI # ______
Residence (Unit)# A-101 Plan Type: Dolce

Please indicate how Purchaser desires to take title to the Unit by printing clearly the FULL names and marital status of Purchaser (or if applicable the name of Trustee, the Trust name and date):

James Tarzy, A married man & Bruce Elliot A married man

THIS RESIDENCE PURCHASE CONTRACT (the "Contract"), made and entered into on the date written below, by and between Taylor Woodrow Communities at Vasari, L.L.C., a Florida limited liability company, as Developer, ("Seller" or "Developer") and the above named person(s) ("Purchaser" or "Buyer").

WITNESSETH:

Seller agrees to sell and Purchaser agrees to purchase, upon the following terms and conditions, condominium, Building # A, Unit # 101, Plan Type: Dolce (the unit and the undivided share of common elements appurtenant to it, are hereinafter collectively the "Unit") in Cassia at Vasari, a condominium pursuant to the Declaration of Condominium to be recorded in the Public Records of Lee County, Florida.

ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.

ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

| 1. PURCHASE PRICE: | Base Price: | $ 473,400.– |
|---|---|---|
| | Options & Upgrades | $ TBD |
| | TOTAL PURCHASE PRICE | $ 473,400.– |

The purchase price is payable in U.S. Dollars as follows:

$ 94,680.– Initial Deposit due upon Purchaser's execution of this Contract (includes any reservation deposit);

$ TBD Additional Deposit to equal 10% of the purchase price due on or before ______;

$ N/A Additional deposit due on or before 12-30-05 (date); [The Initial Deposit and Additional Deposit(s) are sometimes cumulatively referred to as the "Deposit"]

$ 378,720 The balance of the purchase price at closing by cash, cashier's check drawn on a financial institution having an office in Lee or Collier County, Florida, or wire transfer of funds (subject to adjustments and prorations described in this Contract).

The Seller has retained SunTrust Bank Corporate Trust, Miami Office 777 Brickell Avenue, Miami, Florida 33131 to act as Escrow Agent (the "Escrow Agent") as required by Section 718.202, Florida Statutes. Purchaser will be given receipts for the deposits by the Escrow Agent. Deposit checks are to be made payable to Escrow Agent and are accepted subject to collection.

This Contract is not conditioned upon the Purchaser securing financing.

Seller's Initials ______ Purchaser's Initials JT BE

the Unit or the Condominium property prior to the closing of this transaction. Purchaser shall not interfere with workmen nor trespass upon the job site.

E. It is agreed by the parties that the fact that the parties have not completed the inspection, or that items listed on the hereto inspection list have not been addressed by Seller, shall not entitle Purchaser to delay closing or to place in escrow or withhold money due Seller at closing, and a refusal to close as scheduled shall constitute a default by the Purchaser hereunder. Seller's obligation to perform the work agreed upon in the list of inspection items shall survive closing.

F. Failure of the Purchaser to conduct the personal inspection and complete and sign the list of inspection items by the date established in Paragraph 19 hereof shall be deemed to be: (1) conclusive of Purchaser's acceptance of the Unit as is; and (2) a complete waiver of all objections to defects in workmanship or materials. This shall not be deemed to be a waiver of any warranties provided to Purchaser by law.

20. LIMITATIONS OF WARRANTIES:

A. Purchaser shall have the right, pursuant to paragraph 19, to inspect the Unit and the common elements prior to the closing. Purchaser hereby agrees that from and after the closing, Purchaser shall not make or bring, and shall not support the bringing of such action by others, any claim or action whatsoever against Seller or Seller's agents with respect to the dimensions of the Unit or the common elements, the materials employed in the construction of the Unit or the common elements, or the quality of workmanship or the merchantability or fitness of the Unit or the common elements or fixtures or items of personal property sold pursuant to this Contract, or the merchantability or fitness thereof, except such claims or actions as may be permitted by Paragraph 20B, below.

B. Purchaser acknowledges that at the time of execution of this Contract, Seller has no reason to know of any particular purpose of Purchaser in purchasing the Unit and items of personal property sold pursuant to this Contract other than for normal residential use. Purchaser acknowledges and agrees that the only warranties applicable to the Condominium are those that may validly be imposed thereon by statutory law on the date thereof, as set forth in Section 718.203, Florida Statutes, as such section exists as of the date of this Agreement (hereinafter referred to as "Sole Warranties"). Purchaser further acknowledges and agrees that, to the extent allowed by law, Seller makes no other express or implied warranties whatsoever in regard to the Unit, the common elements, any fixtures or items of personal property sold pursuant to this Contract or any other real or personal property whatsoever sold hereby.

Seller makes this warranty expressly in lieu of all other express or implied warranties concerning the Unit sold or to be constructed hereunder and the property sold hereunder or previously purchased from Seller, any other representations, statements or promises made by any person are unauthorized and are not binding upon Seller. All other warranties with respect to the Unit and the property hereunder are hereby disclaimed, to the extent permitted by law, whether implied or arising by operation of law, course of dealing, custom and practice, or otherwise, including, but not limited to, any warranties of habitability, merchantability, and fitness for particular purpose; and Purchaser represents that Purchaser has read and understood this provision, and that Purchaser understands and agrees that, by entering into this Contract and accepting the benefits of the limited warranty described above, Purchaser has knowingly relinquished any and all other warranties of any kind or nature regarding the Unit and the property. In no event shall Seller be liable to Purchaser or Cassia at Vasari Condominium Association, Inc. or any other person or entity for consequential or exemplary damages, or for personal injuries arising from any breach of the Sole Warranties.

C. Purchaser hereby acknowledges that: (i) the Sole Warranties shall not apply if the defective portion of the Unit, common elements, fixtures or any other real or personal property has resulted from or been caused by, in whole or in part, the misuse of same (whether intentional or unintentional) by any person, firm or entity other than Seller or from an accident, casualty or physical alteration or modification; and (ii) the Sole Warranties are further conditioned upon routine maintenance being performed unless such maintenance is an obligation of Seller or a Seller-controlled Association.

D. CHAPTER 558, FLORIDA STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE REFERRING TO CHAPTER 558 OF ANY CONSTRUCTION CONDITONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY OFR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

Seller's Initials

Purchaser's Initials

| | |
|---|---|
| THE VASARI COMMUNITY DEVELOPMENT DISTRICT MAY IMPOSE AND LEVY TAXES OR ASSESSMENTS, OR BOTH TAXES AND ASSESSMENTS, ON THIS PROPERTY. THESE TAXES AND ASSESSMENTS PAY THE CONSTRUCTION, OPERATION, AND MAINTENANCE COSTS OF CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT AND ARE SET ANNUALLY BY THE GOVERNING BOARD OF THE DISTRICT. THESE TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS AND OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY LAW. | ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER. |

SELLER:
TAYLOR WOODROW COMMUNITIES AT VASARI, L.L.C., a Florida limited liability company

By: [signature]
Its: President
8430 Enterprise Circle, Suite 100
Bradenton, Florida 34202
941-554-2000
941-554-3010 (FAX)

Date signed by Seller: 12-16-06

PURCHASER(S):

[signature]

[signature]

Date signed by Purchaser: 12/5/06

BROKER:

Coldwell Banker
[Name of Company]

[Address]

Jim Hill
Agent's Name

CASSIA AT VASARI PURCHASE CONTRACT

Seller's Initials [initials]

Purchaser's Initials JT BE

shall be known as ______ ______ hereinafter referred to as Purchaser, and M/I Homes of Tampa, LLC, d.b.a. M/I Homes, whose address for purposes of communication shall be [redacted] Florida [redacted] hereinafter referred to as Seller.

WITNESSETH

1. **Purchase-Sale-Deposit:** Seller agrees to sell and Purchaser agrees to buy for the consideration and upon the terms hereinafter set forth, Block No. ______ ______ Lot No. ______ ______ located in the ______ ______ Community, ______ County, Florida as recorded. Seller agrees to construct on said lot a single family residence, known as the ______ ______, in accordance with Plans and Selection Sheet chosen by Purchaser and approved by Seller, which plans and Selection Sheet shall remain on file at the office of Seller and, by reference, are hereby made a part of this Agreement. Said Selection Sheet shall list optional items chosen by Purchaser and set forth on the data sheet attached hereto. Purchaser agrees to complete the Selection Sheet within fourteen (14) days of the date of execution of this Agreement by Purchaser. In the event of conflict with the Plans, the Selection Sheet shall control. Purchaser provides an initial deposit in the sum of ______ ______ accompanying Purchaser's execution of this Agreement.

2. **Purchase Price:** The purchase price of the above lot, together with the house to be constructed thereon, (together called the "property") is ______ ______, $ ______ which sum shall be paid as follows:

| | | |
|---|---|---|
| (a) | Initial deposit accompanying this Agreement | $______ |
| (b) | Additional deposit to be due and payable in U.S. dollars 30 days from date of Sales Agreement | $______ |
| (c) | Balance of purchase price to be due and payable in U.S. dollars at closing | $______ |
| | TOTAL | $______ |

Purchaser has waived his/her right to have all deposit funds deposited in an interest-bearing escrow account.

3. **Mortgage Financing Commitment:** Within seven (7) days of this Agreement, Purchaser shall make application for a [redacted] mortgage commitment in the amount of ______ ______ with a lender satisfactory to Seller for the purchase of said house & lot. If Purchaser is not able to obtain such commitment within [redacted] ([redacted]) days after the date of application, Seller shall have the right to terminate this Agreement and return the initial deposit to Purchaser. If Purchaser, after having a good faith effort to obtain a mortgage commitment, be declined in his attempt to secure said mortgage commitment, then Seller, upon notification, shall return the initial deposit to the Purchaser and all Parties shall be relieved of further liability each to the other. If Purchaser fails to make application for a commitment or fails to use good faith efforts to obtain such commitment, Seller may retain the initial deposit as liquidated damages as provided in Paragraph 11 hereof, and thereupon all Parties hereto shall be relieved of further liability each to the other. If a mortgage commitment is obtained, this Agreement shall be in full force and effect and the initial deposit shall be retained by Seller in accordance with the terms herein contained.

4. **Construction Representations:** Construction of the house shall substantially conform to the Plans and Selection Sheet on file at the Seller's office, allowing minor deviations which may be occasioned by expediency, practicability and as common to the construction industry in general, and subject to availability of labor and materials. Notwithstanding the above, Seller expressly reserves the right (a) to make such modifications, additions or deletions in or to the Plans and/or Selection Sheet as may be required by lending institutions making mortgage loans on properties within ______ ______ Community, by public authorities, by legislation, by judicial determination, or such as Seller may deem advisable and in the interests of ______ ______ Community, at large, provided none of the same shall require a substantially physical modification of such house, and (b) to make substitutions of materials or products in the construction of the house, provided such materials or products are substantially equal or superior to those shown in the Plans and/or Selection Sheet. If the house is not constructed substantially the same as represented, at either the Buyer or Seller's option, this contract is null and void and all parties released of all liability.

5. **Completion:** Seller can neither imply nor guarantee a firm completion and availability date for the house, such advance projections being, and by their nature, having to be, estimates. Seller can make every reasonable and diligent effort to meet or to exceed the estimated construction schedule, with delivery to be confirmed with the guarantee letter, after Seller receives the following: (1) written evidence of Purchaser's mortgage loan commitment (2) a completed selection sheet approved by Seller (3) the additional sum of money due from Purchaser at the time Purchaser obtained their mortgage loan commitment, but Seller shall not be obligated to make, provide or compensate for any accommodations to Purchaser as a result of construction delays or any other delays in the completion of said house or closing of this sale. Further, such delays shall not serve to cancel, amend or diminish any of the Purchaser's obligations herein undertaken.

Notwithstanding anything to the contrary, it is agreed that if electricity and/or public utilities are not available to service the aforementioned lot, through no fault of Seller, Seller's obligation to complete said construction shall be extended until 120 days after said public utilities are available to service aforesaid lot.

Notwithstanding anything to the contrary contained herein, Seller agrees to complete construction of the house on or before one (1) year from date of contract, subject however to delays provided in Section 6 hereof.

6. **Delays:** The parties hereto agree that in the event the progress of the subject house is delayed at any time by strikes, war or the declaration of a national emergency, or in the event of a disaster or loss to the construction site by act of God or other cause, then and in such event, the Seller may, at its option, within ninety (90) days of any or all of such causes, refund to Purchaser his deposit and this Agreement shall be deemed terminated and the parties shall be relieved of any and all responsibility hereunder.

7. **Interference:** Purchaser agrees that he shall not interfere with, restrict, interrupt, harass or obstruct construction or its progress, physically, by nuisance or in any other manner. So doing shall, at the option of Seller, constitute, on the part of the Purchaser, a breach of this Agreement and a failure to perform and Seller shall under such circumstances be entitled to the remedies set forth herein.

8. **Closing:** Closing of this sale, including payment in full of the balance of funds due in U.S. dollars as shown on Seller's closing statement and the execution of necessary documents and acknowledgments by the Purchaser, shall take place at Seller's place of business. Seller shall provide not less than 10 days prior written notice to Purchaser of the date of closing. If the closing is delayed at the request or through the fault of the Purchaser or Purchaser's lender, Seller may elect, at its discretion, to extend the time for settlement for successive periods of 30 days beyond the previously established date, provided that Purchaser pays to Seller a fee of 1% of the sales price in advance for each such 30 day extension. Purchaser's failure to timely close shall constitute a default by Purchaser.

Notwithstanding any previous estimated date of occupancy of the house, it is understood and agreed that Purchaser shall not be entitled to any degree of possession or occupancy of the property sold hereunder prior to closing and delivery of the deed.

9. **Closing Documents:** Seller shall cause title to be conveyed subject to: zoning, restrictions, prohibitions and other requirements imposed by governmental authority; matters appearing on the plat or otherwise common to the subdivision; easements of record; taxes and assessments for the year of closing and subsequent years; and conditions, restrictions and reservations of record which do not unreasonably interfere with use of the property for residential purposes.

If the title to all or part of the real estate to be conveyed is uninsurable, or if any part of the real estate is subject to liens, encumbrances, easements, conditions or restrictions other than those excepted in this Agreement, or in the event of any encroachment, Seller shall have a reasonable amount of time, not to exceed thirty (30) days after written notice thereof, within which to remedy or remove any such defect, lien,

remedies in law and in equity available to Seller, at the sole option of Seller, be entitled to elect one of the following rights and remedies:

(a) To retain the entire deposit as liquidated damages for the reasons set forth above and agreed to by all the parties hereto, in which event all such parties shall be relieved of further liability each to the other; or

(b) To apply the entire deposit on account and proceed with an action at law for damages for breach of contract or recovery of the balance of the purchase price. If Seller should elect this option, and prevail in such litigation against Purchaser, Seller shall be entitled to recover reasonable attorney's fees and costs.

12. **Notices:** Any notice or communication, which may be given or is required to be given pursuant to the terms of this Agreement shall be in writing by certified mail, return receipt requested, sent to the party at the address set forth herein.

13. **Right of Assignment:** Purchaser may not assign this Agreement or any rights hereunder without the prior written consent of the other party. Seller may assign this Agreement to any entity which is wholly owned by Seller or which wholly owns Seller.

14. **Captions:** The captions and title of the various sections and paragraphs of this Agreement are for convenience and reference only and in no way define, limit or describe the scope or intent of this Agreement nor in any way affect this Agreement.

15. **Previous Understandings:** All understandings and agreements heretofore between the parties hereto are merged into this Agreement which fully and completely expresses the parties agreement and the same is entered into after full investigation, neither party relying upon any statement or representation not embodied in this Agreement by the other. This Agreement may not be changed cr terminated orally. Further, this Agreement shall survive the closing.

16. **Binding Effect:** This Agreement is not effective until executed by the Division President of Seller.

17. **Miscellaneous:** Words of any gender herein shall include any other gender where appropriate.

18. **Notifications:**

(a) IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.601, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER, SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN THREE (3) DAYS AFTER RECEIPT OF THE DISCLOURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

(b) FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSTRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY (60) DAYS BEFORE YOU FILE YOUR LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW, AND FAILURE TO FOLLOW THEM MAY AFFECT YOUR ABILITY TO FILE A LAWSUIT.

(c) THE PURCHASER OF A ONE-FAMILY OR TWO-FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO TEN PERCENT (10%) OF THE PURCHASE PRICE) DEPOSITED IN AN ESCROW ACCOUNT. THIS RIGHT MAY BE WAIVED, IN WRITING, BY THE PURCHASER. THE UNDERSIGNED PURCHASER(S) HEREBY WAIVES THIS RIGHT.

19. **Other:**

**RADON NOTIFICATION:** Radon is a naturally occurring, colorless and odorless gas that is caused by the natural decay of radioactive radium and uranium. In the decay process, these two elements produce radon gas. The gas may migrate through the soil and diffuse from the ground and be released into the atmosphere. Since radium is contained in the earths crust and dissolves readily in water, radon can be found virtually everywhere. Studies suggest that prolonged indoor exposure to high levels of radon gas may result in adverse health consequences.

Because of the multitude of factors involved, it is difficult to predict whether a residence may be subject to high radon levels, unless tests to determine the actual radon concentrations are conducted on a completed structure. The United States Environmental Protection Agency ("EPA") and the Department of Energy are conducting extensive investigations regarding this matter. The EPA has issued "A Citizen's Guide to Radon", a copy of which Seller makes available to Purchaser. This guide explains, among other things, what the owner of a home should do upon receiving the results of a radon test.

The EPA has also issued testing advice that radon testing firms and homeowners should follow when testing homes. The homeowner may wish to make arrangements to test the home for radon. Cost for radon test kits vary from $10.00 to $50.00 or more. The EPA publishes a list of EPA-approved suppliers of such test kits. If you decide to measure the level of radon gas in your home, and if your test detects an elevated level, you may wish to take steps to conduct longer-term testing or to reduce the level detected.

The Purchaser acknowledges that the Seller does not claim or possess any special expertise in the measurement or reduction of radon, nor does the Seller provide any advice to Purchaser as to acceptable levels or possible health hazards of the gas. The EPA has issued a technical guidance manual for new home construction. Since no known construction technique is foolproof, the Seller assumes no responsibility for the reduction of radon gas levels in the home. If Seller makes available to Purchaser any optional construction packages, Seller cannot be certain of and does not warrant the effectiveness of any optional package.

The Seller makes no representation or warranty as to the presence or lack of radon or other hazardous environmental condition, or as to the effect of radon or any such condition on the new home or residents. SELLER DISCLAIMS AND ASSUMES NO LIABILITY AND PURCHASER WAIVES ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY WARRANTIES OF HABITABILITY OR FITNESS OF PURPOSE THAT COULD BE CONSTRUED TO COVER THE PRESENCE OF RADON OR OTHER ENVIRONMENTAL POLLUTANTS. THE ONLY WARRANTIES SELLER PROVIDES TO THE PURCHASER ARE THOSE CONTAINED IN THE HOME OWNER'S MANUAL DESCRIBING THE SELLER'S LIMITED WARRANTY.

"Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit." (Section 404.056(6) Florida Statutes effective July1, 1985)

"THE ______________________ COMMUNITY DEVELOPMENT DISTRICT MAY IMPOSE AND LEVY TAXES OR ASSESSMENTS, OR BOTH TAXES AND ASSESSMENTS, ON THIS PROPERTY. THESE TAXES AND ASSESSMENTS PAY THE CONSTRUCTION, OPERATION, AND MAINTENANCE COSTS OF CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT AND ARE SET ANNUALLY BY THE GOVERNING BOARD OF THE DISTRICT. THESE TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY LAW."s.190.048

PURCHASER(S):

SELLER:
M/I HOMES OF TAMPA, LLC, a Florida limited liability company

| Check One ✓ |
|---|
| [redacted] CASH |
| [redacted] CONV. |
| [redacted] FHA |
| [redacted] A |
| [redacted] OTHER |

Tuscany Village
6/25/2006 3:16:01PM
MIAMI-DADE COUNTY CGC062343

LENNAR HOMES, INC.
730 NW 107 AVE, Suite 400
Miami, Florida 33172
(305) 559-1951

| Check One [redacted] |
|---|
| [redacted] Owner Ocupied |
| Second Home |
| [redacted] nvestment |

# PURCHASE AND SALE AGREEMENT

THIS IS A LEGALLY BINDING AGREEMENT, IF NOT FULLY UNDERSTOOD SEEK COMPETENT LEGAL ADVICE. NO WARRANTIES OR REPRESENTATIONS, OTHER THAN THOSE SPECIFIED IN THIS AGREEMENT, ARE EXPRESSED OR IMPLIED. ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF SELLER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS AGREEMENT AND THE DOCUMENT BOOK PROVIDED TO PURCHASER, IF ANY.

THIS PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into effective as of the April 28, 2006 by and between LENNAR HOMES, INC., a Florida corporation ("Seller"), and the purchaser(s) named below ("Purchaser"):

| | | |
|---|---|---|
| PURCHASER(S) :<br>1. [redacted]<br>2.<br>3.<br>4. | | Check Applicable:<br>M [redacted] S [redacted] W [redacted] M [redacted] F [redacted]<br>M [redacted] S [redacted] W [redacted] M [redacted] F [redacted]<br>M [redacted] S [redacted] W [redacted] M [redacted] F [redacted]<br>M [redacted] S [redacted] W [redacted] M [redacted] F [redacted] |
| Purchaser Address: [redacted] | | |
| City : [redacted] | State / Country : [redacted] | Zip : [redacted] |
| By providing your telephone and fax numbers and your email address, you hereby consent to receiving telephonic, fax, and email communications, including advertisements, made or sent by or on behalf of Lennar Homes, Inc. and/or its affiliates<br>Home Telephone : [redacted] | Social Security Number / Passport Number : [redacted]<br>Social Security Number / Passport Number :<br>Social Security Number / Passport Number :<br>Social Security Number / Passport Number : | |
| Telefax Number :<br>Email Address : | Business Telephone Purchaser : [redacted]<br>Business Telephone Second Purchaser | |

1. Purchase and Sale. Purchaser agrees to buy and Seller agrees to sell to Purchaser (on the terms and conditions set forth below) Model [redacted] constructed or to be constructed on the following described property:
Lot [redacted] of Block [redacted] of Section [redacted]e of [redacted] Subdivision, in [redacted] County (the "County"), Florida.

Elevation: [redacted] Garage Locations will be determined by Seller
Address: [redacted]

The single family residence, the above-described property, improvements constructed or to be constructed thereon, and all appurtenances thereto are collectively referred to in this Agreement as the "Home" and are located within Tuscany Village (the "Community"). The lot on which the Home is located will be referred to in this Agreement as the "Homesite."

2. Purchase and Payments. The total purchase price ("Total Purchase Price") for the Home being purchased hereunder, exclusive of any Closing Costs as described in Section 16 and elsewhere herein, will be as follows:

| PURCHASE PRICE | AMOUNT |
|---|---|
| Base Purchase Price | $ [redacted] |
| | $ |
| Homesite Premium | $ |
| Options: Included | $ |
| tile lv/din, granite, | $ |
| full patio,accordian | $ |
| | $ |
| | $ |
| TOTAL PURCHASE PRICE | $ [redacted] |

THIS DWELLING UNIT IS WITHIN A COMMUNITY DEVELOPMENT DISTRICT ("DISTRICT"). THE DISTRICT PLANS TO ISSUE OR HAS ISSUED BONDS THAT WILL HAVE PRINCIPAL AND INTEREST PAYMENTS APPLICABLE TO THIS DWELLING UNIT OVER A PERIOD OF UP TO THIRTY (30) YEARS TO FUND CONSTRUCTION OF INFRASTRUCTURE SERVING THE PROPERTY IN THE ESTIMATED AGGREGATE AMOUNT OF 36,750.00. THIS DWELLING UNIT SHALL BE ASSESSED AN ESTIMATED ANNUAL CAPITAL ASSESSMENT OF 1,225.00 FOR ITS PROPORTIONATE SHARE OF DEBT SERVICE ON THE BONDS UNTIL SUCH BONDS ARE PAID IN FULL. THESE AMOUNTS ARE DUE OVER THE TERM OF THE BONDS IN ADDITION TO THE PURCHASE PRICE. INITIAL PURCHASER ALSO UNDERSTANDS THAT IF THE ACTUAL ANNUAL CAPITAL ASSESSMENTS ON THE DWELLING UNIT ARE MORE THAN FIVE PERCENT (5%) HIGHER THAN THE ESTIMATED AMOUNT PROVIDED HEREIN, INITIAL PURCHASER SHALL HAVE THE RIGHT TO RESCIND THIS AGREEMENT AT ANY TIME PRIOR TO CLOSING. INITIAL PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT THE ESTIMATED AMOUNT OF CAPITAL ASSESSMENTS DOES NOT INCLUDE ADMINISTRATIVE ASSESSMENTS WHICH SHALL BE LEVIED BY THE DISTRICT FOR OPERATIONS AND INFRASTRUCTURE MAINTENANCE AND MAY VARY FROM YEAR TO YEAR AND FROM TIME TO TIME. IN THE EVENT OF ANY CONFLICT BETWEEN THE DISCLOSURES IN THIS PROVISION AND THE ATTACHED CDD NOTICE, THE CDD NOTICE SHALL CONTROL

Purchaser shall make the following payments:

| PAYMENT | DUE DATE | AMOUNT DUE |
|---|---|---|
| Initial Deposit | [redacted] | $ [redacted] |
| Additional Deposit | [redacted] | $ [redacted] |
| | | $ |
| Nonrefundable deposit(s) for options, extras and/or upgrades | | $ |
| Amount to be financed | | $ [redacted] |
| BALANCE DUE BY CASHIER'S CHECK OR FEDERAL WIRE ONLY (BANK CHECK OR OFFICIAL CHECK WILL NOT BE ACCEPTED)<br>Initial ______ Purchaser   Initial ______ Purchaser<br>Initial ______ Purchaser   Initial ______ Purchaser | At Closing<br>(as defined in Section 14 hereof) | $ [redacted] |
| TOTAL | | $ [redacted] |

[redacted] Purchaser's Initials [redacted]

39.8. Notwithstanding the foregoing, in the event that either Seller or Purchaser seeks injunctive relief from a court because irreparable damage or harm would otherwise be suffered by either party before mediation or arbitration could be conducted, such actions shall not be interpreted to indicate that either party has waived the right to mediate or arbitrate. The right to mediate or arbitrate should also not be considered waived by the filing of a counterclaim by either party once a claim for injunctive relief had been filed with a court.

40. Other Dispute Resolutions. Notwithstanding the parties' obligation to submit any Dispute to mediation and arbitration, in the event that a court of competent jurisdiction shall determine or a relevant law shall provide that a particular Dispute is not subject to the mediation or the arbitration provisions of Section 39 hereof (such as disputes arising under Section 10 or Section 19 of this Agreement), then the parties agree to the following provisions:

40.1. Resolution of Disputes. EACH PURCHASER ACKNOWLEDGES THAT THIS AGREEMENT IS A SOPHISTICATED LEGAL DOCUMENT. ACCORDINGLY, JUSTICE WILL BEST BE SERVED IF ISSUES REGARDING THIS AGREEMENT ARE HEARD BY A JUDGE IN A COURT PROCEEDING, AND NOT A JURY. EACH PURCHASER AGREES THAT ANY DISPUTE, CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE HEARD BY A JUDGE IN A COURT PROCEEDING AND NOT A JURY. SELLER HEREBY SUGGESTS THAT EACH PURCHASER CONTACT AN ATTORNEY IF SUCH PURCHASER DOES NOT UNDERSTAND THE LEGAL CONSEQUENCES OF EXECUTING THIS AGREEMENT.

40.2. Attorneys' Fees and Costs. In the event that any litigation is commenced in connection with the enforcement or interpretation of this Agreement, the Home or the application of laws or regulations to any aspect of this transaction, each party shall pay his/her/its own legal expenses and costs.

41. Venue. Each Purchaser acknowledges that the Home is located in the County (identified on Page 1 of this Agreement) and Seller has an office in the County. Accordingly, an irrebuttable presumption exists that the only appropriate venue for the resolution of any dispute lies in the County. In addition to the foregoing, each Purchaser and Seller agree that the venue for resolution of any dispute lies in the County.

42. Pre-Paid Taxes, Fees and Charges. Unless otherwise provided herein, Purchaser agrees that any taxes, fees or other charges paid by Seller to any governmental authority, utility company, or any other entity which at a later date are refunded in whole or in part, shall be returned to Seller in the event said refund is received by Purchaser. This Section shall survive the Closing and re-sale of the Home.

43. Reservation of Easement. For the purpose of completing the construction and servicing of the Home and Community, Seller hereby reserves an easement of ingress and egress for itself and its successors and assigns, and each of their respective agents, employees, materialmen and subcontractors, over, under and upon the Home for a period of sixty (60) days after Closing. Seller shall provide reasonable notice to Purchaser before exercising easement rights granted herein.

44. Construction Activities. ALL OWNERS, OCCUPANTS AND USERS OF THE COMMUNITY ARE HEREBY PLACED ON NOTICE THAT (i) SELLER AND/OR ITS AGENTS, CONTRACTORS, SUBCONTRACTORS, LICENSEES AND OTHER DESIGNEES, AND/OR (2) ANY OTHER PARTIES, WILL BE, FROM TIME TO TIME, CONDUCTING BLASTING, EXCAVATION, CONSTRUCTION AND OTHER ACTIVITIES WITHIN OR IN PROXIMITY TO THE COMMUNITY. BY THE ACCEPTANCE OF THEIR DEED OR OTHER CONVEYANCE OR MORTGAGE, LEASEHOLD, LICENSE OR OTHER INTEREST, AND BY USING ANY PORTION OF THE COMMUNITY, EACH SUCH OWNER, OCCUPANT AND USER AUTOMATICALLY ACKNOWLEDGES, STIPULATES AND AGREES (i) THAT NONE OF THE AFORESAID ACTIVITIES SHALL BE DEEMED NUISANCES OR NOXIOUS OR OFFENSIVE ACTIVITIES, HEREUNDER OR AT LAW GENERALLY, (ii) NOT TO ENTER UPON, OR ALLOW THEIR CHILDREN OR OTHER PERSONS UNDER THEIR CONTROL OR DIRECTION TO ENTER UPON (REGARDLESS OF WHETHER SUCH ENTRY IS A TRESPASS OR OTHERWISE ANY PROPERTY WITHIN OR IN PROXIMITY TO THE COMMUNITY WHERE SUCH ACTIVITY IS BEING CONDUCTED (EVEN IF NOT BEING ACTIVELY CONDUCTED AT THE TIME OF ENTRY, SUCH AS AT NIGHT OR OTHERWISE DURING NON-WORKING HOURS), (iii) SELLER AND THE OTHER AFORESAID RELATED PARTIES SHALL NOT BE LIABLE FOR ANY AND ALL LOSSES, DAMAGES (COMPENSATORY, CONSEQUENTIAL, PUNITIVE OR OTHERWISE), INJURIES OR DEATHS ARISING FROM OR RELATING TO THE AFORESAID ACTIVITIES, EXCEPT RESULTING DIRECTLY FROM SELLER'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, (iv) ANY PURCHASE OR USE OF ANY PORTION OF THE COMMUNITY HAS BEEN AND WILL BE MADE WITH FULL KNOWLEDGE OF THE FOREGOING AND (v) THIS ACKNOWLEDGMENT AND AGREEMENT IS A MATERIAL INDUCEMENT TO SELLER TO SELL, CONVEY, AND/OR ALLOW THE USE OF THE HOME.

45. Not Binding. This Agreement shall not be binding on Seller until executed by an authorized agent or officer of Seller.

46. Attachments. The following documents are attached to and form a part of this Agreement:

Check (☑) all that apply:

- ☑ Disclosure Addendum
- ☑ Insulation Disclosure Addendum
- ☑ Energy Rating Brochure
- ☑ Disclosure Summary
- ☑ Affiliated Business Arrangement Disclosure Statement
- ☑ Features List
- ☑ Indoor Environmental Quality Disclosure
- ☑ Financial Information Disclosure
- ☐ Election Form Amendment
- ☐ Cooperating Broker Addendum
- ☑ District Brochure
- ☑ Limited Warranty for Homes
- ☑ CDD Disclosure Statement
- ☐ Specimen Warranty
- ☐ __________
- ☐ __________

47. FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND. Pursuant to Section 489.1425 of the Florida Statutes, Seller provides the following notice. PAYMENT MAY BE AVAILABLE FROM THE FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS: (850) 487-1395, 1940 N. MONROE ST., SUITE 60, TALLAHASSEE, FLORIDA 32399-2202.

48. Disclosure Summary. Prior to execution of this Agreement, Seller provided a Disclosure Summary to Purchaser. Such Disclosure Summary is incorporated herein by reference. PURCHASER SHOULD NOT EXECUTE THIS AGREEMENT UNTIL PURCHASER HAS RECEIVED AND READ THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES. IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO (THE PROSPECTIVE) PURCHASER BEFORE EXECUTING THIS AGREEMENT (CONTRACT FOR SALE), THIS AGREEMENT (CONTRACT) IS VOIDABLE BY PURCHASER (BUYER) BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE PURCHASER'S (BUYER'S) INTENTION TO CANCEL WITHIN THREE (3) DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. PURCHASER'S (BUYER'S) RIGHT TO VOID THIS AGREEMENT (CONTRACT) SHALL TERMINATE AT CLOSING.

49. CHAPTER 558 NOTICE OF CLAIM. In accordance with Florida law, Seller provides Purchaser with the following notice: CHAPTER 558, FLORIDA STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY (60) DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS AGREEMENT (CONTRACT) A WRITTEN NOTICE REFERRING TO CHAPTER 558 OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

Purchaser's Initials



If Purchaser rejects any settlement offer made pursuant to such Florida law by Seller or other contractors, subcontractors, suppliers or design professionals hired by, through or under Seller or its affiliates (collectively, "**Protected Parties**"), and Purchaser elects to proceed with an action against one or more Protected Parties, Purchaser acknowledges that the Dispute must be resolved by mediation or, if not resolved by mediation, by binding arbitration as provided in this Agreement. Further, all other provisions of this Agreement respecting Disputes remain in full force and effect.

50. District. Pursuant to Section 190.048 of Florida Statutes, Seller provides the following notice. THE ________________ COMMUNITY DEVELOPMENT DISTRICT MAY IMPOSE AND LEVY TAXES OR ASSESSMENTS, OR BOTH TAXES AND ASSESSMENTS, ON THIS PROPERTY. THESE TAXES AND ASSESSMENTS PAY THE CONSTRUCTION, OPERATION, AND MAINTENANCE COSTS OF CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT AND ARE SET ANNUALLY BY THE GOVERNING BOARD OF THE DISTRICT. THESE TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY LAW.

The parties have hereunto affixed their respective hands and seals on the day and year set forth below their respective names.

| | |
|---|---|
| ______________________ (Witness) | ______________________ (Purchaser) |
| Print Name:______________________ | Print Name:______________________ |
| | Date:______________________ |
| ______________________ (Witness) | ______________________ (Purchaser) |
| Print Name:______________________ | Print Name:______________________ |
| | Date:______________________ |
| ______________________ (Witness) | ______________________ (Purchaser) |
| Print Name:______________________ | Print Name:______________________ |
| | Date:______________________ |
| ______________________ (Witness) | ______________________ (Purchaser) |
| Print Name:______________________ | Print Name:______________________ |
| | Date:______________________ |

LENNAR HOMES, INC., a Florida corporation

By:______________________

Name:______________________

Title:______________________

Date:______________________





# Sivyer Barlow & Watson, P.A.

ATTORNEYS AT LAW

MAHLON H. BARLOW, III
R.J. HAUGHEY, II
EDWARD J. KUCHINSKI
J. CARLTON MITCHELL
MELISSA A. GIVENS
NEAL A. SIVYER
STEPHEN E. WALKER
PAUL D. WATSON

SUNTRUST FINANCIAL CENTRE
401 E. JACKSON STREET
SUITE 2225
TAMPA, FL 33602
(813) 221-4242
FAX: (813) 227-8598
www.sbwlegal.com

OF COUNSEL
GAIL M. ABERCROMBIE
DAVID S. WATSON

SENDER'S EMAIL:
swalker@sbwlegal.com

March 16, 2009

**VIA U.S. MAIL AND FACSIMILE**
Ervin A. Gonzalez, Esq.
Colson Hick Eidson
255 Aragon Avenue
2nd Floor
Coral Gables, Florida 33134

Re: Taylor Woodrow Communities at Vasari/Niemeczura, Jr.

Dear Mr. Gonzalez:

This firm represents Taylor Woodrow Communities at Vasari, L.L.C. with respect to the issues raised in your letter of March 10, 2009. This will serve as our request for all available discoverable evidence relating to the alleged construction defect(s), including, but not limited to, expert reports, photographs, and videotapes, in accordance with § 558.004(15).

Also, my client would like to inspect the Niemeczura residence pursuant to § 558.004(2). This will serve as notice, under § 558.004(2)(a)-(f), that my client has determined that destructive testing is necessary to determine the nature and cause of the alleged defects. The destructive testing will be performed by James L. Poole, PhD, CIH, Senior Manager, ENVIRON International Corp., and will include the removal of several disks of drywall three (3) inches in diameter from the garage and various living areas of each residence. The disks of drywall, along with any dust or debris caused by the testing, will be removed from the home and the resulting holes will be immediately repaired. The estimated time to complete the inspection, destructive testing, and repairs is approximately three (3) hours for each residence. Please let me know when each residence will be available for inspection and testing.

I look forward to hearing from you.

Very truly yours,

Stephen E. Walker

SEW/hen
Cc: Taylor Woodrow Communities at Vasari, L.L.C.

EXHIBIT
COMPOSITE
"E"



# Sivyer Barlow & Watson, P.A.

ATTORNEYS AT LAW

MAHLON H. BARLOW, III
R.J. HAUGHEY, II
EDWARD J. KUCHINSKI
J. CARLTON MITCHELL
MELISSA A. GIVENS
NEAL A. SIVYER
STEPHEN E. WALKER
PAUL D. WATSON

SUNTRUST FINANCIAL CENTRE
401 E. JACKSON STREET
SUITE 2225
TAMPA, FL 33602
(813) 221-4242
FAX: (813) 227-8598
www.sbwlegal.com

OF COUNSEL
GAIL M. ABERCROMBIE
DAVID S. WATSON

SENDER'S EMAIL:
swalker@sbwlegal.com

March 16, 2009

**VIA U.S. MAIL AND FACSIMILE**
Ervin A. Gonzalez, Esq.
Colson Hick Eidson
255 Aragon Avenue
2nd Floor
Coral Gables, Florida 33134

Re: Taylor Woodrow Communities at Vasari/Galvin

Dear Mr. Gonzalez:

This firm represents Taylor Woodrow Communities at Vasari, L.L.C. with respect to the issues raised in your letter of March 10, 2009. This will serve as our request for all available discoverable evidence relating to the alleged construction defect(s), including, but not limited to, expert reports, photographs, and videotapes, in accordance with § 558.004(15).

Also, my client would like to inspect the Galvin residence pursuant to § 558.004(2). This will serve as notice, under § 558.004(2)(a)-(f), that my client has determined that destructive testing is necessary to determine the nature and cause of the alleged defects. The destructive testing will be performed by James L. Poole, PhD, CIH, Senior Manager, ENVIRON International Corp., and will include the removal of several disks of drywall three (3) inches in diameter from the garage and various living areas of each residence. The disks of drywall, along with any dust or debris caused by the testing, will be removed from the home and the resulting holes will be immediately repaired. The estimated time to complete the inspection, destructive testing, and repairs is approximately three (3) hours for each residence. Please let me know when each residence will be available for inspection and testing.

I look forward to hearing from you.

Very truly yours,

Stephen E. Walker

SEW/hen
Cc: Taylor Woodrow Communities at Vasari, L.L.C.



Sivyer Barlow & Watson, P.A.

ATTORNEYS AT LAW

MAHLON H. BARLOW, III
R.J. HAUGHEY, II
EDWARD J. KUCHINSKI
J. CARLTON MITCHELL
MELISSA A. GIVENS
NEAL A. SIVYER
STEPHEN E. WALKER
PAUL D. WATSON

SUNTRUST FINANCIAL CENTRE
401 E. JACKSON STREET
SUITE 2225
TAMPA, FL 33602
(813) 221-4242
FAX: (813) 227-8598
www.sbwlegal.com

OF COUNSEL
GAIL M. ABERCROMBIE
DAVID S. WATSON

SENDER'S EMAIL:
swalker@sbwlegal.com

March 16, 2009

**VIA U.S. MAIL AND FACSIMILE**

Ervin A. Gonzalez, Esq.
Colson Hick Eidson
255 Aragon Avenue
2nd Floor
Coral Gables, Florida 33134

Re: Taylor Woodrow Communities at Vasari/Tarzy

Dear Mr. Gonzalez:

This firm represents Taylor Woodrow Communities at Vasari, L.L.C. with respect to the issues raised in your letter of March 10, 2009. This will serve as our request for all available discoverable evidence relating to the alleged construction defect(s), including, but not limited to, expert reports, photographs, and videotapes, in accordance with § 558.004(15).

Also, my client would like to inspect the Tarzy residence pursuant to § 558.004(2). This will serve as notice, under § 558.004(2)(a)-(f), that my client has determined that destructive testing is necessary to determine the nature and cause of the alleged defects. The destructive testing will be performed by James L. Poole, PhD, CIH, Senior Manager, ENVIRON International Corp., and will include the removal of several disks of drywall three (3) inches in diameter from the garage and various living areas of each residence. The disks of drywall, along with any dust or debris caused by the testing, will be removed from the home and the resulting holes will be immediately repaired. The estimated time to complete the inspection, destructive testing, and repairs is approximately three (3) hours for each residence. Please let me know when each residence will be available for inspection and testing.

I look forward to hearing from you.

Very truly yours,

Stephen E. Walker

SEW/hen
Cc: Taylor Woodrow Communities at Vasari, L.L.C.



# Sivyer Barlow & Watson, P.A.

ATTORNEYS AT LAW

MAHLON H. BARLOW, III
R.J. HAUGHEY, II
EDWARD J. KUCHINSKI
J. CARLTON MITCHELL
MELISSA A. GIVENS
NEAL A. SIVYER
STEPHEN E. WALKER
PAUL D. WATSON

SUNTRUST FINANCIAL CENTRE
401 E. JACKSON STREET
SUITE 2225
TAMPA, FL 33602
(813) 221-4242
FAX: (813) 227-8598
www.sbwlegal.com

OF COUNSEL
GAIL M. ABERCROMBIE
DAVID S. WATSON

SENDER'S EMAIL:

nsivyer@sbwlegal.com

May 8, 2009

**VIA U.S. MAIL AND FACSIMILE**

Kenneth G. Gilman, Esquire
Gilman and Pastor, LLP
6363 Highcroft Drive
Naples, Florida 34119

Re: Taylor Woodrow Communities at Vasari, LLC/
28274 Altessa Way, Vasari Country Club
(Duane Ankney)

Dear Mr. Gilman:

I represent Taylor Woodrow Communities at Vasari, LLC. I have reviewed a copy of your letter dated April 30, 2009, to my client. We do not agree that Mr. Ankney is entitled to rescission. In this real estate market all homeowners would love to have their contracts rescinded and original purchase price refunded, but that it is not the remedy for Mr. Ankney under the terms of his warranty, the contract for sale, or Florida law. I know that your client has attempted to sell this home, however, values of all homes in this part of Florida have decreased, even those without drywall issues.

Pursuant to Florida Statutes Section 558, your client has a duty to provide us notice of any construction defects, together with all discoverable information. That statute provides my client an opportunity to inspect the residence, and make repairs if need be. The warranty also provides a right to repair.

You letter states that in November 2006, Mr. Ankney closed on his home and that Taylor Woodrow "knew" that the drywall could cause severe property damage. However, you cite no evidence to support this allegation. What evidence do you have that at the time that Mr. Ankney signed his contract and/or prior to closing that Taylor Woodrow Communities at Vasari, LLC., knew that the drywall could cause severe property damage? Your client's final punch list and inspection report has no mention of this issue.

When an odor problem was identified at the residence, my client installed an air purification system, as recommended by an inspector. That was the last that we heard of this problem until 14 months later. Obviously if my client knew of a condition with the drywall that would cause severe property damage it would have fixed the problem prior to closing. The fact that the details of the drywall problem were not known to anyone is evidenced by your client purchasing three units at this development (apparently only one had the drywall problem).

You did not mention in your letter that you have a pending lawsuit against the suppliers of the materials, but that the lawsuit did not name Taylor Woodrow Communities at Vasari, LLC. Apparently you were seeking the same damages in that lawsuit against other parties but did not feel my client was responsible, at least at the time that you filed suit.

In summary, my client does not intend to pay your client $879,981. I would kindly suggest that you comply with Florida Statute 558 and the terms of your client's warranty. Taylor Woodrow Communities of Vasari, LLC., will then inspect and consider whether to make an offer to repair the alleged defects in your client's home.

Sincerely,

Neal A. Sivyer

NAS/kmp
cc:   Todd Merrill, Esquire

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 50 2009 CA 026362 XXXX MB AO

GIANPAOLO and DANIELLE CIANCIMINO,

Plaintiffs,

vs.

CENTERLINE HOMES, INC., a Florida Corporation; OCEAN COAST DRYWALL, INC., BANNER SUPPLY INTERNATIONAL, LLC; PROBUILD EAST, LLC; and RINKER MATERIALS OF FLORIDA, INC., a Florida corporation,

Defendants.

______________________________/

**ORDER ON DEFENDANT BANNER SUPPLY CO.'S + OCEAN COAST DRYWALL'S MOTION TO ABATE PENDING PLAINTIFFS' COMPLIANCE WITH CHAPTER 558, FLORIDA STATUTES AND MOTION FOR ENLARGEMENT OF TIME**

THIS CAUSE having come to be heard on September 22, 2009 on Defendant Banner Supply Co.'s + Ocean Coast Drywall's Motion to Abate Pending Plaintiffs' Compliance with Chapter 558, Florida Statutes and Motion for Enlargement of Time, and after hearing argument of counsel, having reviewed the file and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED:

Granted. The matter is abated until November 1, 2009 for the parties to comply with Chapter 558.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of September, 2009.

Honorable Thomas H. Barkdull, III
Circuit Judge

cc: Jeffrey A. Backman, Esq.
All parties on the attached service list

{218429.0005/N0785837_1}

EXHIBIT COMPOSITE "F"

CASE NO. 50 2009 CA 026362 XXXX MB AO

**SERVICE LIST**

| | |
|---|---|
| Manuel R. Comras, Esq.<br>McIntosh, Sawran, Peltz & Cartaya, P.A.<br>Centurion Tower, 1601 Forum Place<br>Suite 1110<br>West Palm Beach, Florida 33401<br>*Counsel for Plaintiffs Gianpaolo and Danielle Ciancimino* | Peter R. Goldman, Esq.<br>Adam G. Rabinowitz, Esq.<br>Broad and Cassel<br>One Financial Plaza<br>100 SE 3rd Avenue, Suite 2700<br>Fort Lauderdale, FL 33394<br>Phone: 954-764-7060<br>Fax: 954-761-8135<br>*As Counsel for Centerline Homes, Inc.* |
| Edwin E. Mortell, III, Esq.<br>Sarah M. Vazquez, Esq.<br>Peterson Bernard<br>416 Flamingo Avenue<br>Stuart, FL 34996<br>*Counsel for Defendant Ocean Coast Drywall of South Florida, Inc.* | Benjamin L. Bedard, Esq.<br>Roberts, Reynolds, Bedard & Tuzzio, P.A.<br>470 Columbia Drive, Bldg. C<br>West Palm Beach, FL 33409<br>*Counsel for Defendant Rinker Materials of Florida, Inc.* |
| Robert J. Bryan, Esq.<br>Robert J. Bryan, P.A.<br>90 Almeria Avenue, Suite 200<br>Coral Gables, FL 33134<br>Counsel for ProBuild East | Geoffrey B. Marks, Esq.<br>Billbrough & Marks, P.A.<br>100 Almeria Avenue, Suite 320<br>Coral Gables, FL 33134<br>Counsel for ProBuild East |

{218429.0005/N0785837_1}

Wayne Kaplan and Judith A. Stichter,
Plaintiffs,

vs.

Albanese-Popkin The Oaks Development Group, L.P., et al.,
Defendants

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR Palm Beach COUNTY, FLORIDA

Case No.: 50 2009 CA 026711 XXX MB AF

ORDER
on
Motions for Abatement

THIS CAUSE having come on to be heard on this 10th day of September, 2009, on Defendants's/~~Plaintiff's~~ Motions for Abatement

and the Court having considered the record, having heard counsel, and being otherwise advised in the Premises, it is hereupon,

ORDERED AND ADJUDGED that said Motions be, and the same is hereby are granted as follows: The action is abated until October 10, 2009 for all parties. The Defendants shall thereafter have twenty (20) days to respond to the Complaint.

DONE AND ORDERED in Chambers, at W. Palm Beach County, Florida

this 10 day of Sept, 2009.

Circuit Judge

Copies furnished: counsel of record
Wayne Kaplan
Lysa Friedlieb
Benjamin Bedard
Jeffrey Backman
Susan Cole
Gisela Vazquez, E Morrell

To reorder call Graftek 800/848-2992

IN THE CIRCUIT COURT OF THE 20th JUDICIAL CIRCUIT OF FLORIDA
IN AND FOR LEE COUNTY CIVIL DIVISION

CASE NO. 09-CA-001744 (McHugh)

JOHN C. NOWICKI

Plaintiff,

vs.

**HANSEN HOMES OF SOUTH FLORIDA, INC.,** a Florida corporation; KNAUF GIPS KG, a German corporation; KNAUF PLASTERBOARD (TIANJIN) CO., LTD., a Chinese limited liability corporation; KNAUF PLASTERBOARD (WUHU)( CO., LTD., a Chinese limited liability corporation; KNAUF PLASTERBOARD (DONGGUAN) CO., LTD., a Chinese limited liability corporation; BEIJING NEW BUILDING MATERIAL, PLC, a Chinese corporation, TAISHAN GYPSUM CO., LTD., a Chinese corporation, SHANDONG TAIHE DONGXIN CO., LTD., a Chinese corporation; USG CORPORATION, a Delaware corporation, L&W SUPPLY CORP. d/b/a SEACOAST SUPPLY, a Delaware corporation, ALL INTERIOR SUPPLY, INC., a Florida corporation; BANNER SUPPLY CO., a Florida corporation, ROTHCHILT INTERNATIONAL LTD., a foreign corporation; LA SUPREMA TRADING, INC., a Florida corporation, LA SUPREMA ENTERPRISE, INC., a Florida corporation; BLACK BEAR GYPSUM SUPPLY, INC., a Florida corporation; I.B.S.A., INC., a North Carolina corporation

Defendants.

______________________________________/

**ORDER ON DEFENDANT, HANSEN HOMES OF SOUTH FLORIDA, INC.'S MOTION TO ABATE**

THIS MATTER having come before the Court on the Defendant, HANSEN HOMES OF SOUTH FLORIDA, INC'S, Motion to Abate, and the Court having heard arguments of counsel and being otherwise fully advised in the premises, it is hereby

CONSIDERED, ORDERED, AND ADJUDGED that the Motion is

CASE NO. 09-CA-001744 (McHugh)

**GRANTED/DENIED** ______________________________________________

______________________________________________________________

______________________________________________________________.

DONE AND ORDERED in Chambers in Ft. Myers, Lee County, Florida this ____ day of __________, 2009.

ORIGINAL SIGNED

SEP 08 2009

MICHAEL T. McHUGH
CIRCUIT JUDGE

MICHAEL T. McHUGH
CIRCUIT COURT JUDGE

Copies furnished to:

Jeremy W. Alters, Esquire
Kimberly L. Boldt, Esquire
Alters Boldt Brown Rash & Culmo, P.A.
4141 NE 2nd Avenue, Suite 201
Miami, Florida 33137

Edward Briscoe, Esquire
Elizabeth J. Ferry, Esquire
Fowler White Burnett, PA
Espirito Santo Plaza, 14h Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Attorneys for Black Bear Gypsum

Jeffrey A. Backman, Esquire
Jan Douglas Atlas, Esquire
Adorno & Yoss, LLP
350 E Las Olas Blvd., Ste. 1700
Ft. Lauderdale, Florida 33301
Attorneys for Banner Supply

Michael K. Feldman, Esquire
1111 Kane Concourse
Suite 209
Bay Harbor Islands, FL 33154
Attorney for La Suprema Trading

Eduardo I. Rasco, Esq.
Rosenthal Rosenthal Rasco Kaplan LLC
One Aventura, Suite 600
20900 N. E. 30th Avenue
Aventura, FL 33180
Attorneys for La Suprema

Susan J. Cole, Esquire
Bice Cole Law Firm
999 Ponce de Leon Blvd., Suite 710
Coral Gables, FL 33134
Attorneys for L&W Supply Corp d/b/a Seacoast Supply

Gary F. Bauman, Esquire
Fulmer, LeRoy, Albee, Bauman
2866 East Oakland Park Blvd
Fort Lauderdale, FL 33306
Attorneys for Independent Builders Supply

Clark W. Smith, Esq.
Michele I. Nelson, Esq.
Paxton & Smith, PA
Barristers Building, Suite 500
1615 Forum Place
West Palm Beach, FL 33401

# LIGHT & ASSOCIATES, P.A.

ATTORNEYS AT LAW

1990 MAIN STREET
SUITE 750
SARASOTA, FL 34236

941-309-5415 (GULF COAST OFFICES)
305-582-7629 (SOUTH FLORIDA OFFICES)
305-357-6896 (FACSIMILE)
VLIGHT@LA-PA.COM

WWW.LA-PA.COM

OFFICE LOCATIONS:
FT. LAUDERDALE, FL
MIAMI, FL
WEST PALM BEACH, FL
BOCA RATON, FL
NAPLES, FL
SARASOTA, FL
TAMPA, FL
CAPE CANAVERAL, FL

BY APPOINTMENT ONLY

May 1, 2008

VIA FIRST CLASS MAIL

Morrison Homes Warranty Services
3700 Mansell Rd., Ste. 300
Alpharetta, GA 30022-8246

**NOTICE OF WARRANTY CLAIM**
**CONSTRUCTION DEFECTS DEMAND**

Ladies and Gentlemen:

Please be advise that the undersigned law firm has been retained to represent Ms. Kristin Culliton with regard to certain construction defects shown and admitted to exist Ms. Culliton's residence located at 15314 Skip Jack Loop, Bradenton, FL 34202 (the "Residence"). Specifically, Morrison Homes has admitted to importing and installing defective and potentially toxic drywall.

This correspondence and the enclosed Notice of Warranty Claim (form supplied by Morrison Homes) shall serve as demand for immediate replacement of all drywall located at the Residence. This shall also serve as statutory notice for all legal purposes. We have attempted to communicate with Morrison Homes numerous times regarding this matter but have been entirely ignored. Ms. Culliton, who is employed by Morrison Homes has also expressed concern regarding the hostile environment she has been subjected to since requesting Morrison Homes repair the construction defect. All appropriate parties are hereby on notice that continuing in this mode of reaction will result in very negative consequences for all involved. Especially in light of the fact that Ms. Culliton is pregnant, we would expect a responsible (or intelligent) corporation to take seriously matters which your own correspondence reveals to be potentially toxic.

If we have not received positive and satisfactory response by as of the expiration of the statutory cure period, we will encourage our client to bring actions in construction defects, toxic tort and hostile work environment against Morrison Homes. Finally, due to the evidence that Ms. Culliton has already been subjected to inappropriate forms of intimidation from your company, your are advised to direct all future correspondence to Ms. Culliton through this law

EXHIBIT
COMPOSITE
"G"
tabbies

firm.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

FOREVER

VIRGIL L. LIGHT
FOR THE FIRM

cc: Sheryl Palmer

# NOTICE OF CLAIM

**For Major Structural Defects Claims Only**

YOUR NAME Kristin Colliton

ADDRESS OF CLAIM See attached Correspondence
(Street) (City) (Zip)

HOME PHONE — BUSINESS PHONE [illegible]

EFFECTIVE DATE OF WARRANTY 09 [illegible] [illegible]
(Mo.) (Day) (Year)

Please note that your Ten-Year Limited Structural Warranty provides limited coverage which is subject to exclusions and conditions. You are encouraged to review the structural coverage provisions of **the little purple book**. Please answer the following questions:

1. Have you reviewed the structural warranty section of **the little purple book**?
   Yes (circled) No

2. Do you believe that you have actual physical damage to one or more of the listed load bearing portions of your home? Yes No Unknown

3. Have you reviewed the list of non-load bearing elements which do not qualify as a Major Structural Defect under this coverage? Yes (circled) No

4. Do you believe that your home is unsafe or otherwise unlivable as a result of the defect? Yes (circled) No

5. Are you the original owner of this home? Yes (circled) No

NATURE OF DEFECT (BE SPECIFIC. IF AVAILABLE, ENCLOSE PHOTOGRAPHS)

Contaminated defective & [illegible] [illegible] [illegible]
Drywall

(continued on the next page)

NATURE OF DEFECT (cont'd)

DATE DEFECT FIRST OBSERVED 07 (Mo.) 21 (Day) 06 (Year)

CHECK ONE (if applicable): FHA VA FmHA

Case #

If you are the original owner, and your home is FHA-financed, please provide the following:

Name of mortgage company

Address of mortgage company

DATED 5/1/08 (signature)

DATED (signature)

THIS FORM IS TO BE COMPLETED, SIGNED BY ALL OWNERS AND FAXED OR MAILED TO:

Morrison Homes Warranty Services
3700 Mansell Road, Suite 300
Alpharetta, Georgia 30022-8246

Telephone: 1-888-849-6131
Facsimile: 1-770-998-8144



ERVIN A. GONZALEZ
Board Certified Civil &
Business Trial Attorney

March 10, 2009

***Via Certified Mail and First Class Mail***
Taylor-Woodrow Communities at Vasari
c/o NRAI Services, Inc., Registered Agent
2731 Executive Park Drive, Suite 4
Weston, FL 33331

***Re: Defective Drywall Class Action***

To Whom It May Concern:

Pursuant to Florida Statutes chapter 558 on behalf of James B. Tarzy, residing at 28479 Altessa Way, #101, Bonita Springs, FL 34135, we write to provide you notice of our intent to file an action for construction defect against Taylor-Woodrow Communities at Vasari on Mr. Tarzy's behalf. The problem in the home is caused by defective drywall that emits high levels of sulfur. The drywall in the home emits levels of sulfur that damages wires, pipes, metal, air conditioning, HVAC, plumbing electronic equipment, fixtures, furnishings, and potentially health. The problem causes economic damages and potential personal injury and an increased risk of future health problems.

In order to fix the problem, the following items must be removed and replaced: all of the drywall in the home, all of the flooring in the home, the air conditioning unit(s), cabinetry, mirrors, any affected electrical wiring and plumbing. You are also responsible for consequential damages in the form of moving costs and comparable replacement housing for the homeowners during time the home is fixed, as set forth above, as well as the cost of medical monitoring and damage related to potential personal injury. The homeowners have also suffered economic damages from the loss of value of their home, as a result of the stigma attached to their house because of the defective drywall. Pursuant to Florida Statutes section 558.004(5) you have 45 days to serve a written response upon undersigned counsel on how you intend to remedy this situation. We look forward to your early reply. Should you have any questions, please do not hesitate to contact us.

Very truly yours,

Ervin A. Gonzalez

EAG/ed


ERVIN A. GONZALEZ
Board Certified Civil &
Business Trial Attorney

March 10, 2009

***Via Certified Mail and First Class Mail***
Taylor-Woodrow Communities at Vasari
c/o NRAI Services, Inc., Registered Agent
2731 Executive Park Drive, Suite 4
Weston, FL 33331

***Re: Defective Drywall Class Action***

To Whom It May Concern:

Pursuant to Florida Statutes chapter 558 on behalf of Larry and Rene Galvin, residing at 11019 Carrara Ct., #202, Bonita Springs, FL, we write to provide you notice of our intent to file an action for construction defect against Taylor-Woodrow Communities at Vasari on the Galvins' behalf. The problem in the home is caused by defective drywall that emits high levels of sulfur. The drywall in the home emits levels of sulfur that damages wires, pipes, metal, air conditioning, HVAC, plumbing electronic equipment, fixtures, furnishings, and potentially health. The problem causes economic damages and potential personal injury and an increased risk of future health problems.

In order to fix the problem, the following items must be removed and replaced: all of the drywall in the home, all of the flooring in the home, the air conditioning unit(s), cabinetry, mirrors, any affected electrical wiring and plumbing. You are also responsible for consequential damages in the form of moving costs and comparable replacement housing for the homeowners during time the home is fixed, as set forth above, as well as the cost of medical monitoring and damage related to potential personal injury. The homeowners have also suffered economic damages from the loss of value of their home, as a result of the stigma attached to their house because of the defective drywall. Pursuant to Florida Statutes section 558.004(5) you have 45 days to serve a written response upon undersigned counsel on how you intend to remedy this situation. We look forward to your early reply. Should you have any questions, please do not hesitate to contact us.

Very truly yours,

Ervin A. Gonzalez

| THE LAW FIRM OF COLSON HICKS EIDSON
| 255 ARAGON AVENUE | 2ND FLOOR | CORAL GABLES, FLORIDA | 33134-5008
| T: 305.476.7400 | F: 305.476.7444 | W: COLSON.COM

GruMAN AND PASTOR LLP
ATTORNEYS AT LAW
6363 HIGHCROFT DRIVE
NAPLES, FLORIDA 34119

TELEPHONE: (239) 598-3541 FACSIMILE: (239) 598-3982
W W W. GILMANPAS TOR. C OM

Confidential
Settlement Communication

April 30, 2009

VIA ELECTRONIC MAIL Rick
Wilmeth
Vice President
Taylor Construction Group 2301
128th .Street
Urbandale, IA 50323

Re: Claim of Duane Ankney — Vasari

THIS LETTER IS REDACTED. IT DOES NOT MENTION CHAPTER 558 NOTICES OR RESPONSES.