## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

DR. JOSEPH SERIO

**V.**

KNAUF GIPS.KG, KNAUF PLASTERBOARD
TIANJIN CO., LTD., TAISHAN GYPSUM CO.
LTD. f/k/a SHANDONG TAIHE DONGXIN CO.
LTD., USG CORPORATION, L&W SUPPLY
CORPORATION d/b/a SEACOAST SUPPLY,
INTERIOR EXTERIOR BUILDING SUPPLY,
INDEPENDENT BUILDERS SUPPLY
ASSOCIATION, INC. and ROTHCHILT
INTERNATIONAL LIMITED

CASE NO.: 09-4148

SECTION: L

MAG: 2

MC-MDL 2047

_____/

## AMENDED AND RESTATED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Complaintant, Dr. Joseph Serio, who, for the exclusive purpose of amending his original Complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure amends as follows:

A.

Complaintant realleges and reavers all allegations in his original Complaint as if plead herein *in extensor.*

B.

The original Complaint is restated as follows:

1

## INTRODUCTION

1.    Plaintiff brings this action as an owner of a home in the State of Louisiana that was built, constructed and/or renovated using drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold by Defendants, Knauf Gips KG ("Knauf Gips"), Knauf Plasterboard Tianjin Co., Ltd. ("Knauf Tianjin"), Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin Co. Ltd. ("Taishan"), HLP/GAC International, Inc. ("HLP), and Cain Construction and Designs, LLC ("Cain").

2.    The drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants to build, construct and/or renovate the home of Plaintiff is defective and emits levels of sulfur, methane and/or other volatile organic chemical compounds that cause corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items, as well as create noxious, "rotten egg-like" odors. Defendants' defective gypsum drywall further causes allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns. Defendants' drywall was inherently defective and not suitable for its intended use.

## **JURISDICTION AND VENUE**

3.    Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

4.    Venue for this cause is proper in the Eastern District of Louisiana, pursuant to and in accordance with 28 U.S.C.. 1391.

**THE PARTIES**

5.     Plaintiff, DR. JOSEPH SERIO, is a resident of the Eastern District of Louisiana. Plaintiff's home was built, constructed and/or renovated using Defendants' defective drywall.

6.     Upon information and belief, Defendant, Knauf Gips, is a German corporation doing business in the State of Louisiana. One of Knauf Gips' affiliates, Gebr. Knauf Verwaltungsgsellschaft KG, owns a substantial stake in Defendant USG. Knauf Gips is a leading manufacturer of building materials and systems. Defendant Knauf Gips, together with its affiliates, including Defendant Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Defendant Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Defendant Knauf Tianjin, and its agents, apparent agents and employees.

7.     Among other things, in 1995, Defendant Knauf Gips introduced its advanced production techniques and technology into China. From 1997 through 2001, Defendant Knauf Gips established three plasterboard plants in China located in Wuhu, Tianjin and Dongguan. The product quality of all Defendant Knauf Gips' plants in China, including Defendant Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Defendant Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Defendant Knauf Tianjin in China. Defendant Knauf Tianjin and its employees are the actual and/or apparent agents of Defendant Knauf Gips.

8.     Upon information and belief, Defendant Knauf Gips, together with its

3

affiliates and/or actual or apparent agents, including Defendant Knauf Tianjin, manufactured, sold, distributed, marketed and placed into the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Defendants Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and their drywall was installed in numerous homes in Louisiana. Defendants Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Louisiana, including Defendants USG, Seacoast, IBSA and/or Rothchilt, defective gypsum drywall that was installed in Plaintiff's home. Moreover, Defendants Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

9.      Upon information and belief, Defendant, Knauf Plasterboard Tianjin Co., Ltd., is a Chinese corporation with its principal place of business located at North Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400 P.R.C., and at all times material, conducted business in the State of Louisiana. Defendant Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Defendant Knauf Tianjin is the actual and/or apparent agent of Defendant Knauf Gips. Upon information and belief, Defendant Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Defendant Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be

4

purchased by thousands of consumers, if not more, within the State of Louisiana. Defendants Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and their drywall was installed in numerous homes in Louisiana, Defendants Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Louisiana, including Defendants HLP and Cain, defective gypsum drywall that was installed in Plaintiff's home. Moreover, Defendants Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

10.     Upon information and belief, Defendant, Taishan, is a Chinese corporation with its principal address located at Dawenkou, Taian, Shandong, China 271026, and at all times material, conducted business in the State of Louisiana. Defendant Taishan is involved in the manufacturing and sale of gypsum drywall. Upon information and belief, Defendant Taishan manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Defendant Taishan has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and its drywall was installed in numerous homes in Louisiana. Defendant Taishan manufactured and sold, directly and indirectly, to certain suppliers in the State of Louisiana, including Defendants HLP and Cain, defective gypsum drywall that was installed in Plaintiff's

5

home.         Moreover,         Defendant         Taishan         purposefully availed itself of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana.

11.     This Court has personal jurisdiction over Defendants Knauf Gips, Knauf Tianjin and Taishan because they are "engaged in substantial and not isolated activity within this state." Additionally, Plaintiff's causes of action arise from Defendants Knauf Gips, Knauf Tianjin and Taishan personally or through their agents, causing injury to property within the State of Louisiana arising out of acts or omissions of Defendants Knauf Gips, Knauf Tianjin and Taishan outside the State of Louisiana, and at the time of the injury, products, materials, or things manufactured by Defendants Knauf Gips, Knauf Tianjin and Taishan were used and consumed within the State of Louisiana in the ordinary course of commerce, trade or use.

12.     Defendant HLP is a Texas Corporation with its principal place of business located at 2051 Arbor Creek Drive, Carrollton, Texas    75010. Defendant HLP distributed drywall and related building products.

13.     Defendant Cain is a Louisiana Limited Liability Company with its principal place of business located at 700 Commerce Street #101, New Orleans, LA  70130, and at all times material, was authorized to and conducted business in the State of Louisiana. Defendant Cain was the immediate supplier of the defective drywall complained upon herein.

### GENERAL ALLEGATIONS

14.     In connection with the construction of homes in the State of Louisiana, consumers purchased gypsum drywall, either directly or indirectly, from various

6

suppliers, including, but not necessarily limited to, Defendants HLP and Cain (collectively, the "Suppliers").

15.     Upon information and belief, the Suppliers purchased, directly and/or indirectly, gypsum drywall that was manufactured in China by Defendants Knauf Gips, Knauf Tianjin and Taishan, and possibly other unknown Chinese manufacturers (collectively, the "Manufacturers").

16.     Defendants negligently manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold defective gypsum drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

17.     Defendants' drywall was made with waste material from scrubbers on coal-fired power plants, also called "fly ash." These materials can leak into the air and emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

18.     When combined with moisture in the air, these sulfur compounds create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing - creating leaks, blackening coils and causing HVAC systems and refrigerators to fail.   Sulfuric acid has also been shown to corrode copper electrical wiring and plumbing components. Not only does it blacken and corrode coils, it can harm metals such as chrome, brass and silver.

19.     Defendants' defective drywall can not only affect HVAC systems and refrigerators, but can affect and require replacement of all sorts of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware.

In addition, the defective drywall has a noxious odor, akin to the smell of rotten eggs.

20.     Upon information and belief, over 10 million square feet of Defendants' defective drywall was used in the construction of Louisiana homes between 2004 and 2006.

21.     Upon information and belief, Defendants Knauf Gips and/or Knauf Tianjin themselves have engaged experts and consultants in the State of Louisiana to investigate claims regarding the defective drywall. Among other things, Defendants Knauf Gips and/or Knauf Tianjin have inspected several affected homes and have witnessed firsthand the effects of its defective drywall on, among other things, HVAC coils, electrical wiring and plumbing. Defendants Knauf Gips and/or Knauf Tianjin have failed and refused to take responsibility for their defective product and agree to repair or replace the defective drywall.

22.     Defendants' actions will require Plaintiff to remedy all defective drywall, perform extensive remedial repairs to the homes, and then repair the damaged property made visible during the performance of these repairs.

23.     As a result, the Plaintiff has suffered, and continues to suffer damages as a result of Defendants' defective drywall and the corrosive effects of the sulfur compounds.   These damages include, but are not limited to, the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property. Plaintiff has also suffered and continues to suffer personal injuries as a result of Defendants' defective drywall, including, but not limited to, allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems

8

and other health concerns.

24.    Defendants' actions also resulted in substantial diminution in the value of Plaintiff's home.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

25.    The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose a known defect to Plaintiff, and misrepresenting their product as safe for its intended use, actively concealed from Plaintiff the true risks associated with their drywall.

26.    As a result of Defendants' actions, Plaintiff could not reasonably know or have learned through reasonable diligence of the manufacturing defect and that Plaintiff had been exposed to the risks alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

27.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall.  Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had, and continue to have, exclusive control, and because Defendants knew that this information was not available to the Plaintiff. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

28.    Plaintiff had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiff could not have reasonably discovered the wrongdoing at any time.

## COUNT I
## (Against Defendant Knauf Gips)

29.     Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

30.     This is an action for vicarious liability against Defendant Knauf Gips for the negligent and wrongful acts of its actual and/or apparent agent, Defendant Knauf Tianjin.

31.     Defendant Knauf Gips established Defendant Knauf Tianjin in China and at all times material, exercised strict control over Defendant Knauf Tianjin's operations in accordance with the requirements of Defendant Knauf Gips' headquarters in Germany. Defendant Knauf Gips is, and at all times material was, responsible for implementing and supervising the quality control measures to be used by Defendant Knauf Tianjin.

32.     By establishing Defendant Knauf Tianjin in China, and by exercising strict control over Defendant Knauf Tianjin's conduct and operations, Defendant Knauf Gips acknowledged that Defendant Knauf Tianjin would act on its behalf as its actual and/or apparent agent.

33.     Defendant Knauf Tianjin accepted the undertaking to act of Defendant Knauf Gips' behalf.

34.     Upon information and belief, Defendant Knauf Gips supervises, monitors, and controls Defendant Knauf Tianjin's daily conduct and operations, including the manufacturing, distribution, marketing and sale of Defendant Knauf Tianjin's drywall products. Furthermore, upon information and belief, Defendant Knauf Gips is responsible for establishing, implementing, supervising and maintaining the quality

10

control mechanisms utilized by Defendant Knauf Tianjin.

35.     As such, Defendant Knauf Gips is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Defendant Knauf Tianjin.

36.     As a result of Defendants Knauf Gips' and/or Knauf Tianjin's wrongful conduct, Plaintiff has suffered and will continue to suffer damages.

37.     As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believes, and further alleges, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT II**
**NEGLIGENCE AND NEGLIGENCE *PER SE***
**(Against Defendants Knauf Gips and Knauf Tianjin)**

38.     Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

39.     Defendants Knauf Gips and Knauf Tianjin had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall the Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause did not cause damage as described herein.

40.     Defendants Knauf Gips and Knauf Tianjin breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering,

11

supplying, inspecting, marketing and/or selling drywall Defendants placed into the stream of commerce in that Defendants knew or should have know that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

41.     The negligence of the Defendants, their agents, servants, and/or employees, including, but was not limited to, the following acts and/or omissions:

a.     manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without thoroughly testing it;

b.     manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

c.     selling drywall without performing proper and sufficient tests to determine the dangers to its users;

d.     negligently failing to adequately and correctly warn the Plaintiff and the public, of the dangers of Defendants' drywall;

e.     negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

f.     negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

g.     negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

h.     negligently manufacturing drywall in a manner which was dangerous to its users;

i.     negligently processing drywall in a manner which was dangerous to its users;

J.     negligently distributing drywall in a manner which was dangerous to its users;

k.     negligently delivering drywall in a manner which was dangerous to its users;

l.      concealing information concerning reports of adverse effects from the Plaintiff while knowing that Defendants drywall was unsafe, dangerous and nonconforming with accepted industry standards; and

m.      improperly concealing and/or misrepresenting information from the Plaintiff and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing defect.

42.    Defendants were negligent in the manufacturing, processing, distributing,

delivering, supplying, inspecting, marketing and/or selling of Defendants' drywall in

that they:

a.      failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

b.      failing to conduct adequate testing to determine the safety of their drywall; and

c.      failing to warn Plaintiff, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective, nature of the product; and were otherwise negligent.

43.    Upon information and belief, despite the fact that Defendants knew or

should have known that their drywall caused unreasonably dangerous side effects due

to its manufacturing defect, Defendants continued to manufacture, process,

distribute, deliver, supply, market and/or sell drywall to the Plaintiff and/or the

consuming public.

44.    Defendants knew or should have known that consumers such as Plaintiff

would suffer damage and injury, both physical and economic, and/or be at an increased

risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary

care, as well as Defendants' negligent manufacturing process, as set forth herein.

45.    Defendants' actions and/or inactions, as set forth herein, by virtue of

violating statutes, ordinances and/or rules and/or regulations, constitute negligence per se.

46.     Defendants knew or should have known that homeowners such as the Plaintiff would foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

47.     Defendants' negligence was the proximate cause of Plaintiff's damages, injuries, harm and economic loss which they suffered and will continue to suffer.

48.     By reason of the foregoing, Plaintiff experienced and/or is at risk of experiencing serious and dangerous side effects, as well as having incurred financial damage and injury.

49.     As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believes, and further alleges, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT III
### (Against Defendants Knauf Gips and Knauf Tianjin)

50.     Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

51.     At all times herein mentioned, Defendants Knauf Gips and Knauf Tianjin manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or

14

sold drywall used in the construction and/or renovation of Plaintiff's home.

52.     Defendants' drywall was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was manufactured, processed, distributed, delivered, supplied, inspected and/or sold by the Defendants.

53.     At those times, the Defendants' drywall was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to homes and, in particular, Plaintiff's home.

54.     Defendants' drywall was so defective in design or formulation or manufacture that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants' drywall.

55.     At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

56.     Defendants knew, or should have known, that at all times herein mentioned Defendants' drywall was/is inherently dangerous and unsafe.

57.     At the time of use of Defendants' drywall by Plaintiff, Plaintiff utilized the drywall for the purposes and manner normally intended.

58.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

59.     Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiff.

15

60.     Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold a defective product which created an unreasonable risk to the Plaintiff's home as well as to the health of Plaintiff. Defendants are, therefore, strictly liable for the damages and injuries sustained by Plaintiff.

61.     Plaintiff, acting as a reasonably prudent person, could not discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

62.     By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiff for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendants' drywall.

63.     Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

64.     Said defects in Defendants' drywall were a substantial factor in causing Plaintiff's injuries and/or placing Plaintiff at increased risk of damage and/or harm.

65.     As a direct and proximate result of the defective condition of Defendants' drywall as manufactured and sold by Defendants, Plaintiff suffered, and will continue to suffer, damages.

66.     By reason of the foregoing, Plaintiff experienced, and/or is at risk of experiencing, serious and dangerous side effects, as well as having incurred financial damage and injury.

67.     As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses.

16

Plaintiff is informed and believes, and further alleges, that Plaintiff will in the future be requited to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT IV**
**NEGLIGENCE AND NEGLIGENCE *PER SE*
(Against Defendant Taishann**

71.     Plaintiff repeats, reiterates and realleges the above of this Complaint, with the same force and effect as if fully set forth herein.

72.     Defendant Taishan had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall the Defendant placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause did not cause damage as described herein.

73.     Defendant Taishan breached its duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall into the stream of commerce in that Defendants knew or should have known that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

74.     The negligence of the Defendant, its agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

a.     manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without thoroughly

17

testing it;

b.    manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

c.    selling drywall without performing proper and sufficient tests to determine the dangers to its users;

d.    negligently failing to adequately and correctly warn the Plaintiff and the public, of the dangers of Defendants' drywall;

e.    negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

f.    negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

g.    negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

h.    negligently manufacturing drywall in a manner which was dangerous to its users;

i.    negligently processing drywall in a manner which was dangerous to its users;

j.    negligently distributing drywall in a manner which was dangerous to its users;

k.    negligently delivering drywall in a manner which was dangerous to its users;

l.    concealing information concerning reports of adverse effects from the Plaintiff while knowing that Defendants drywall were unsafe, dangerous and non-conforming with accepted industry standards; and

m.    improperly concealing and/or misrepresenting information from the Plaintiff and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing defect.

75.    Defendants were negligent in the manufacturing, processing, distributing,

delivering, supplying,. inspecting, marketing and/or selling of Defendants' drywall in

18

that they:

a.       failed to use due care in manufacturing their drywall so as to avoid
the aforementioned risks when the drywall was used for its intended purpose;

b.       failing to conduct adequate testing to determine the safety of their
drywall; and

c.       failing to warn Plaintiff, prior to actively encouraging the sale of
their drywall either directly or indirectly, orally or in writing, about the defective
nature of the product; and were otherwise negligent.

76.     Upon information and belief, despite the fact that Defendants knew or

should have known that their drywall caused unreasonably dangerous side effects due

to its manufacturing defect, Defendants continued to manufacture, process,

distribute, deliver, supply, market and/or sell drywall to the Plaintiff and/or the

consuming public.

77.     Defendants knew or should have known that consumers such as Plaintiff

would foreseeably suffer damage and injury, both physical and economic, and/or be

at an increased risk of suffering damage and injury as a result of Defendants' failure

to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set

forth herein.

78.     Defendants' actions and/or inactions, as set forth herein, by virtue of

violating statutes, ordinances and/or rules and/or regulations, constitute negligence per

se.

79.     Defendants knew or should have known that homeowners such as the

Plaintiff would foreseeably suffer injury, and/or be at increased risk of suffering

injury, including personal injuries and financial harm, as a result of Defendants'

failure to exercise ordinary care, as well as Defendants' negligent manufacturing process,

as set forth above.

80. Defendants' negligence was the proximate cause of Plaintiff's damages, injuries, harm and economic loss which they suffered and will continue to suffer.

81. By reason of the foregoing, Plaintiff experienced and/or is at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

82. As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believes, and further alleges, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT V
## (Against Defendant Taishan)

83. Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

84. At all times herein mentioned, Defendant Taishan manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiff's home.

85. Defendant's drywall was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold by the Defendant.

86. At those times, the Defendant's drywall was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to homes

and, in particular, Plaintiff's home.

87.    Defendants' drywall was so defective in design or formulation or manufacture that when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendant's drywall.

88.    At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendant knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendant.

89.    Defendant knew, or should have known, that at all times herein mentioned Defendant's drywall was /is inherently dangerous and unsafe.

90.    At the time of use of Defendant's drywall by Plaintiff, Plaintiff utilized the drywall for the purposes and manner normally intended.

91.    Defendant had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

92.    Defendant's drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendant and was unreasonably dangerous to its intended users, including Plaintiff.

93.    Defendant manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold a defective product which created an unreasonable risk to the Plaintiff's home as well as to the health of Plaintiff. Defendant is, therefore, strictly liable for the damages and injuries sustained by Plaintiff.

94.    Plaintiff acting as a reasonably prudent person, could not discover that Defendant's drywall was defective as herein mentioned or perceive its danger.

95.     By reason of the foregoing, the Defendant is strictly liable in tort to the Plaintiff for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendant's drywall.

96.     Defendant's defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendant's drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendant.

97.     Said defects in Defendant's drywall were a substantial factor in causing Plaintiff's injuries and/or placing Plaintiff at increased risk of damage and/or harm.

98.     As a direct and proximate result of the defective condition of Defendant's drywall as manufactured and sold by Defendant, Plaintiff suffered, and will continue to suffer, damages.

99.     By reason of the foregoing, Plaintiff experienced, and/or is at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

100.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believes, and further alleges, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT VI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Defendants HLP and Cain)

101.    Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

22

102.   This is an action against Defendants HLP and Cain for breach of the implied warranty of merchantability under Louisiana Law.

103.   Defendants HLP and/or Cain are merchants of gypsum drywall.

104.   Upon information and belief, some of the defective drywall used in the construction of Plaintiff's home was sent from the Manufacturers to Defendant HLP.

105.   Homebuilders and/or their agents or employees entered into contracts with Defendants HLP and Cain to purchase gypsum drywall that was to be installed in Plaintiff's home.

106.   Plaintiff is an intended third patty beneficiary of those contracts because it was the clear and manifest intent of Defendants HLP and/or Cain that the contracts were to primarily and directly benefit Plaintiff.

107.   Pursuant to Louisiana Law, Defendants HLP and/or Cain warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

108.   Defendants HLP and/or Cain breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

109.   The drywall supplied and sold by Defendants HLP and/or Cain and installed in Plaintiff's home is defective because it caused damage as described more fully herein.

110.   As a result of Defendants HLP's and/or Cain's breaches of the implied warranty of merchantability, Plaintiff has suffered and continues to suffer damages.

111.   As a result of the foregoing acts and omissions, Plaintiff requires and/or will

require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believes, and further alleges, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT VII**
**BREACH OF IMPLIED WARRANTY**
**OF FITNESS FOR A PARTICULAR PURPOSE**
**( Against Defendants HLP and Cain)**

112. Plaintiff repeats, reiterates and realleges the above paragraphs this Complaint, with the same force and effect as if fully set forth herein.

113. This is an action against Defendants HLP and Cain for breach of the implied warranty of fitness for a particular purpose under Louisiana Law.

114. Defendants HLP and/or Cain are suppliers of gypsum drywall.

115. Upon information and belief, some of the defective drywall used in the construction of Plaintiff's home was sent from the Manufacturers to Defendant HLP.

116. Homebuilders and/or their agents or employees entered into contracts with Defendants HLP and Cain to purchase gypsum drywall that was to be installed in Plaintiff's home.

117. Plaintiff is an intended third party beneficiary of those contracts because it was the clear and manifest intent of Defendants HLP and/or Cain that the contracts were to primarily and directly benefit Plaintiff.

118. At the time Defendants HLP and/or Cain entered into the contracts with the homebuilders, Defendants HLP and/or Cain had reason to know that the gypsum drywall was being purchased for the particular purpose of being

24

installed in residential home owned by Plaintiff, and that homebuilders were relying on Defendants HLP's and/or Cain's skill and judgment to select and furnish gypsum drywall that was suitable for this particular purpose.

119.  Plaintiff, directly and/or indirectly, relied on Defendant HLP's and/or Cain's judgment in supplying and selling gypsum drywall that was suitable for the particular purpose of being installed in residential home owned by Plaintiff.

120.  Pursuant to Louisiana Law, Defendants HLP and/or Cain warranted that the gypsum drywall was fit for the particular purpose of being installed in residential home owned by Plaintiff.

121.  Defendants HLP and/or Cain breached the implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential home owned by Plaintiff.

122.  The drywall supplied and sold by Defendants HLP and/or Cain and installed in Plaintiff's home is defective because it caused damage as described more fully herein.

123.  As a result of Defendants HLP's and/or Cain's breaches of the implied warranty of merchantability, Plaintiff has suffered and continues to suffer damages.

124.  As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believes, and further allege, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT VIII**
**(Against Defendant HLP)**

125.    Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

126.    This is an action for products liability against Defendant HLP.

127.    The defective gypsum drywall installed in Plaintiff's home was supplied by, among other suppliers, Defendant HLP. Upon information and belief, some of the defective drywall installed in Plaintiff's home was sent from the Manufacturers to Defendant HLP.

128. The defective gypsum drywall distributed, supplied, and/or sold by Defendant HLP is unreasonably defective because it causes damage and injury to Plaintiff as described more fully herein.

129.    Defendant HLP expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons coming into contact with said product without substantial change affecting that condition.

130.    The defective gypsum drywall distributed, supplied and/or sold by Defendant HLP directly and proximately caused damage and injury to Plaintiff, including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

131.    By reason of the foregoing, Plaintiff experienced, and/or is at risk of experiencing, serious and dangerous side effects, as well as has incurred financial

damage and injury as described more fully herein.

132. As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believes, and further alleges, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

### COUNT IX
### (Against Defendant Cain)

133. Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

134. This is an action for products liability against Defendant Cain.

135. The defective gypsum drywall installed in Plaintiff's home was supplied by, among other suppliers, Defendant Cain. Upon information and belief, some of the defective drywall installed in Plaintiff's home was sent from the Manufacturers to Defendant Cain.

136. The defective gypsum drywall distributed, supplied, and/or sold by Defendant Cain is unreasonably defective because it causes damage and injury to Plaintiff as described more fully herein,

137. Defendant Cain expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers, and persons corning into contact with said product without substantial change affecting that condition.

27

138. The defective gypsum drywall distributed, supplied and/or sold by Defendant Cain directly and proximately caused damage and injury to Plaintiff, including, but not limited to, corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

139. By reason of the foregoing, Plaintiff experienced, and/or is at risk of experiencing, serious and dangerous side effects, as well as having incurred financial damage and injury as described more fully herein.

140. As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believes, and further alleges, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

## COUNT XI
### (Against All Defendants)

141. Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

142. Defendants expressly warranted that Defendants' drywall was safe and well accepted by homebuilders.

143. Defendants' drywall did not conform to these express representations because Defendants' defective drywall is defective and unsafe, and is associated with numerous side effects. As a direct and proximate result of the breach of said warranties, Plaintiff suffered, and/or will continue to suffer, and/or are at an

28

increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

144.    Plaintiff did rely on the express warranties of the Defendants herein.

145.    The Defendants herein breached the aforesaid express warranties, as Defendants' drywall was defective.

146.    Defendants expressly represented to Plaintiff that Defendants' drywall ate safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall are of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall were adequately tested and fit for its intended use.

147.    Defendants knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that Defendants` drywall are not fit for the use intended and, in fact, produced severe and extensive damage to Plaintiff's home because Defendants' drywall was negligently manufactured.

148.    Defendants expressly represented to Plaintiff that Defendants' drywall is safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall are of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall were adequately tested and fit for its intended use.

149.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believe, and further allege, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care,

attention, and services.

**COUNT XII**
**FRAUDULENT MISREPRESENTATION**
**(Against Defendants Knauf Gips, Knauf Tianjin and Taishan)**

150.    Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

151.    Defendants falsely and fraudulently represented to Plaintiff that Defendants' drywall had been tested and was found to be safe and/or effective for use.

152.    That representation made by Defendants was, in fact, false.

153.    When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

154.    These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiff and/or the consuming public, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiff herein.

155.    At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiff, installed/purchased Defendants' drywall, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

156.    In reliance upon said representations, the Plaintiff's home was built using Defendants' drywall thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

157.    Said Defendants knew, and were aware, or should have been aware, that

30

Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

158.     Defendants knew, or should have known, that Defendants' drywall had a potential to, could, and would cause severe damage and injury to homeowners.

159.     Defendants brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff.

160.     By reason of the foregoing, Plaintiff experienced, and/or is at risk of experiencing, financial damage and injury.

161.     As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT XII
## (Against Defendants Knauf Gips, Knauf Tianjin and Taishan

162.     Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

163.     At all times material hereto, Defendants misrepresented the safety of Defendants' drywall.

164.     Defendants knew, or were reckless in not knowing, that its representations were false.

165.     Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator

31

units, electrical wires and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

166.     Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

167.     Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

168.     Defendants were under a duty to disclose to Plaintiff the aforementioned as it pertains to Defendants' drywall.

169.     Defendants' concealment and omissions of material facts concerning, *inter alia,* the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff and/or the consuming public into reliance and continued use of Defendants' drywall.

170.     Defendants' concealment and omissions of material facts concerning, *inter alia,* the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff and/or the consuming public into reliance and continued use of Defendants' drywall.

171.     Defendants knew that Plaintiff and/or the consuming public, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

172. Plaintiff and/or the consuming public, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

173.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff is informed and believes, and further alleges, that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

### COUNT XIV
### VIOLATION OF THE DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT
### (Against Defendants Knauf Gips, Knauf Tianjin and Taishan)

174.    Plaintiff repeats, reiterates and realleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

175.    This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by Defendants Knauf Gips, Knauf Tianjin and Taishan.

176.    Plaintiffs are a "consumer" and the subject transactions are "trade or commerce" as defined by Louisiana Law.

177.    Defendants Kriauf Gips', Knauf Tianjin's and Taishan's actions and/or omissions as described herein violate Louisiana Law, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

178.    Specifically, Defendants Knauf Gips, Knauf Tianjin and Taishan misrepresented and omitted material information regarding their drywall by failing to disclose known risks.

179.    Defendants Knauf Gips', Knauf Tianjin's and Taishan's misrepresentations

33

and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' drywall in violation of Louisiana Law.

180.    Defendants Knauf Gips, Knauf Tianjin and Taishan violated Louisiana Law, by knowingly and falsely representing that Defendants' drywall was fit to be used for the purpose for which they were intended, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

181.    Defendants Knauf Gips, Knauf Tianjin and Taishan engaged in the deceptive acts and practices alleged herein in order to sell Defendants' drywall to the public, including Plaintiff.

182.    Said acts and practices on the part of Defendants Knauf Gips, Knauf Tianjin and Taishan were and are illegal and unlawful pursuant to Louisiana Law.

183.    As a direct and proximate result of Defendants Knauf Gips', Knauf Tianjin's and Taishan's violations of Louisiana Law, Plaintiff has suffered damages. Plaintiff is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

## DEMAND FOR JURY TRIAL

Plaintiff, JOSEPH SERIO, hereby demands a trial by jury as to all issues so triable.

Respectfully Submitted,

/s/Laura L. Catlett
Robert J. Diliberto (LA 24783)
Damon A. Kirin (LA 24729)
Laura L. Catlett (LA 31431_
DILIBERTO & KIRIN, L.L.C.
3636 S. I-10 Service Road West
Suite 210
Metairie, LA 70001
Telephone: (504)828-1600
Facsimile: (504)828-1555

W. James Singleton (LA 17801)
THE SINGLETON LAW FIRM
4050 Linwood Avenue
Shreveport, LA 71108
Telephone: (318)631-5200
Facsimile: (318)636-7759