**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL    PRODUCTS LIABILITY LITIGATION | )<br>)<br>)<br>)<br>)<br>) | **MDL NO. 2047**<br><br>**SECTION: L**<br><br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

_____ )

**THIS DOCUMENT RELATES TO ALL CASES**

**PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO COMPEL DISCOVERY FROM DEFENDANTS**

**INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") respectfully submits this memorandum in support of its motion to compel discovery from all Defendants listed in Exhibit A annexed hereto, upon which the PSC served its First Set of Requests for the Production of Documents and Things ("Document Requests") on September 2, 2009.  After weeks of negotiations with Defendants involving multiple meet and confers, the PSC has serious concerns that the timing, scope, and format of Defendants' document productions will severely prejudice Plaintiffs at trial.   While the PSC continues to meet and confer with various Defendants in an effort to reach agreement on these issues, the need for expedited discovery warrants the instant motion, which seeks the Court's assistance in resolving these disputes.

As the Court is aware, the first trial in this litigation is scheduled for January 2010.  Yet, to date, and with few exceptions, most Defendants have produced only a handful of documents responsive to the PSC's Document Requests.  Indeed, some Defendants have made no productions at

all.  Further, where Defendants have produced documents, they have placed unreasonable limitations on the scope of their discovery.  As discussed in more detail *infra*, Defendants have refused to produce documents dated prior to 2005.  Additionally, some Defendants refuse to produce any information unless it pertains to named MDL Plaintiffs.  Other Defendants have refused to produce inspection or remediation protocols.  Finally, in violation of Federal Rule of Civil Procedure 34(b)(2)(E), Defendants have ignored Plaintiffs' requests that documents be produced in the format in which they were kept in the ordinary course of business.  Rather, most Defendants have made their productions in PDF format (electronic images of the original documents), thereby severely limiting Plaintiffs' ability to conduct searches of their document productions.  Moreover, Defendants have produced documents in different formats, requiring the PSC to incur needless expenses in processing the productions so that they may be maintained in a single, searchable database.

As the Court is aware, this MDL is comprised of actions filed by plaintiffs across the country against manufacturers, suppliers, brokers, builders, installers and others involved in the sale and/or use of Chinese drywall.  Plaintiffs allege that drywall manufactured in China is inherently defective because it emits various sulfide gases and other chemicals that create noxious, "rotten egg-like odor" and causes corrosion of air conditioner and refrigerator coils, electrical wiring, appliances, and other metal surfaces.  This defect, and the corrosion it causes, cannot be reversed or repaired and can only be addressed by replacing the drywall and corroded components and surfaces in effected homes.  As a result of the inherently defective drywall, plaintiffs and thousands of other consumers across the country, have suffered significant property damage, economic losses, and personal injuries as a result of owning homes and other property containing Chinese drywall.

In recognition of the seriousness of the claims at issue, this Court has scheduled the first trial in this MDL for January 2010.  The PSC is concerned that further discovery delays will prejudice

2

Plaintiffs at trial, for we will not have had an adequate opportunity to review relevant materials and fully discover the claims and defenses at issue in this litigation.  Therefore, we respectfully request that the Court grant its motion to compel in its entirety, and order Defendants to make prompt and complete productions of responsive documents in their native format.

## **PROCEDURAL HISTORY**

On September 2, 2009, the Plaintiffs' Steering Committee ("PSC") served a First Set of Requests for Production of Documents and Things ("Document Requests") on 58 Defendants, including but not limited to manufacturers, suppliers, and builders.  *See* Exh. A (Listing of All Defendants Served with the PSC's First Set of Document Requests, dated Sept. 2, 2009).  While there was some variation among the Document Requests served on Defendants, they all shared certain definitions and/or specific requests that are at issue in the present motion:

- All Document Requests defined the Relevant Time Period as running from January 1, 2001 to the date of the PSC document requests, *see, e.g.*, Document Request served on Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), at 7, ¶ 3 (annexed hereto as Exhibit B);

- All Document Requests sought discovery materials relating to Chinese Drywall generally, and not limited to only to individual plaintiffs who may have sued a given Defendant, *see, e.g., id.* at 16, ¶¶ 37-40;

- All Document Requests sought production of any drywall inspection and/or remediation protocols created, used, or relied upon by Defendants, *see id.* at 18, ¶ 49;

- All Document Requests explicitly requested that Defendants produce electronically-stored information ("ESI") in its native format (e.g., a memorandum created using Microsoft Word would be produced as an electronic Microsoft Word file), *see id.* at 9, ¶ 10; and

- All Document Requests requested that PSC representatives and defense counsel meet and confer concerning any issues relating to the format of production.  *See id.*

The PSC's Document Requests were ignored by Defendants until the PSC raised concerns about discovery delays at the September 24, 2009 case management conference, at which point the

Court ordered the parties to meet on confer on September 25, 2009.  At the subsequent meet and confer, the parties generally acknowledged the need to expedite discovery in order to be prepared for a January 2010 trial.  While certain areas of disagreement were identified at that time relating to the scope of the PSC's requests, *see infra*, Defendants generally committed to providing written responses to the PSC's requests and commencing production of non-objectionable documents within 14 business days (by October 9, 2009).    To date, many Defendants have not responded at all, while others have produced only a small number of documents.  *See* Table of Defendants' Document Productions, as of Nov. 11, 2009 (annexed hereto as Exhibit C).[1]  Notably, none of the Defendants produced documents in their native format as requested by the PSC in its Document Requests dated September 2, 2009.  *See id.*

On October 14, 2009, and in advance of the October 15, 2009 status conference, the PSC submitted a letter to the Court expressing our concerns over the Defendants' refusal to produce in native format or to agree to a uniform format of production.  *See* Oct. 14, 2009 Letter to Hon. Eldon E. Fallon from Leonard A. Davis, Esq. (annexed hereto as Exh. D).  At the subsequent hearing on October 15, 2009, Your Honor urged the parties to try to reach agreement on these issues.  On October 20, 2009, the parties met again.  At that time, many Defendants acknowledged that they hadn't even collected relevant ESI and were unable to provide production dates.  *See* Oct. 22, 2009 Letter to Kerry Miller, Esq. from Leonard A. Davis, Esq., at 2-5 (annexed hereto as Exhibit E).  Only one Supplier Defendant, Mazer Super Discount Stores ("Mazer"), agreed to produce documents in their native format.  *See id.* at 5.  To date, however, the PSC has yet to receive any ESI production from Mazer.  Rather than agree to a uniform format of production,  Defendants proposed

---

[1] Plaintiffs note that while many Defendants have produced Defense Profile Forms, these forms contain only limited information and were never intended to waive or limit Plaintiffs' right to

to meet individually with PSC representatives to discuss the format and scope of their ESI productions.  On October 21, 2009, the PSC again reiterated its request for expedited discovery and that productions be in native format.  *See* Oct. 21, 2009 Letter to Kerry Miller, Esq. from Leonard A. Davis, Esq. (annexed hereto as Exhibit F).  This letter identified specific PSC representatives that would be available to discuss any issues or concerns Defendants' had about their ESI productions. *See id.* at 3.  In its correspondence, the PSC stated that unless outstanding issues were resolved promptly, Plaintiffs would be filing a motion to compel.  *See* Exh. E at 6.  To date, only a handful of Defendants have contacted PSC representatives.

While the PSC continues to negotiate with Defendants, further delays will only prejudice Plaintiffs at trial.  Therefore, the PSC respectfully moves this Court to compel Defendants to produce responsive documents, in the scope and manner described herein.

## ARGUMENT

**I.     DEFENDANTS' FAILURE TO PRODUCE RESPONSIVE MATERIALS IN A TIMELY MANNER IS A VIOLATION OF FED. R. CIV. P. 34 AND THE PARTIES' AGREEMENT TO COMMENCE PRODUCTION ON OCTOBER 9, 2009**

The PSC served its First Set of Document Requests more than 60 days ago, yet as of the date of the instant motion and with few exceptions, it has received only meager productions from Defendants.  For example, Defendant Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), has produced only 59 documents, totaling approximately 2,600 pages.  *See* Exh. C.  Defendant Lennar Homes has produced roughly 85 documents, totaling approximately 3,100 pages (the bulk of which were not produced until Oct. 30, 2009).  *See id*.  Notably, in a recent meet and confer, Lennar's counsel indicated that although the company had identified at least 100 current and former employee

---

seek full discovery as afforded under the Federal Rules.

custodial files likely to contain relevant information, to date—more than 2 months after service of the PSC's Document Requests—*Lennar has not even begun to collect these documents*.[2]

Similarly, while Defendant KPT has identified and collected a large number of relevant employee and departmental electronic files, it has failed to produce *any of them*.  For example, KPT has indicated that much of the information the PSC has requested relating to drywall inspections and manufacturing standards will be found in the files of KPT's plant manager and lab technician. Rather than producing these files in a timely manner, KPT proposed for the first time during a meet and confer on October 24, 2009, that KPT use search terms on its entire electronic production to reduce the number of documents it must review and process for production.  While the PSC continues to discuss the use of search terms with KPT,[3] Defendant's failure to produce files from custodians it had already identified as highly relevant suggests a strategy of delay.[4] As noted *supra,* other Defendants have failed to produce <u>any documents</u> in response to the PSC's requests.  *See* Exh. C.  As such, it is appropriate at this time for the Court to Order all Defendants to commence an

---

[2] Instead, in a letter dated October 30, 2009, Lennar proposed that the PSC blindly select—with only limited information about the individuals—10 custodians for production.  Under its proposal, Lennar would an additional 10 custodians for production.  *See* Oct. 30, 2009 Letter from Hilarie Bass, Esq. to Ervin Gonzales, Esq., at 7-8 (annexed hereto as Exhibit G).  While the PSC is willing to discuss a process for the *prioritizing the order of production*, it does not believe the production should be limited where Lennar had previously identified 100 custodians likely to have relevant information or that the PSC should be forced to guess at which custodians should be produced.  Further, as Lennar can easily identify those individuals having had the most involvement with Chinese Drywall—particularly with respect to inspection and remediation protocols—there is simply no excuse for its failure to have collected and produced at least a subset of the 100 custodians it has identified.

[3] KPT did not provide the PSC with a list of proposed search terms until November 5, 2009.

[4]  The PSC continues to negotiate appropriate search methods and search terms for the Knauf Defendants' electronically-stored information, subject to our understanding that the PSC may request subsequent additional searches in the event it finds the agreed-to terms to be inadequate.  The PSC is willing to do so for any Defendant that has a sufficiently large collection (in excess of 1 gigabyte) of ESI material that search terms are necessary to expedite production.  *See* Proposed Order, annexed hereto.

immediate production, on a rolling basis, of all documents responsive to the PSC's Requests and that all productions be completed within 14 days.

## II.   DEFENDANTS HAVE PLACED UNREASONABLE LIMITATIONS ON THE SCOPE OF THEIR PRODUCTIONS THAT ARE CONTRARY TO THE BROAD DISCOVERY FAVORED UNDER THE FEDERAL RULES

The Federal Rules of Civil Procedure contemplate and support broad-based and liberal discovery allowing the parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1).  As a general matter, "relevance" for discovery purposes is broadly construed, "information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Courts have longed held that pre-trial discovery is "to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("no longer can the time–honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponents case"); *United States v. Procter Campbell Company*, 356 U.S. 677, 682-83 (1958) (modern instruments of discovery...together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent).  This liberal policy has been summarized in this District:

> It is clear that what is relevant in discovery is far different from what is relevant at trial, in that the concept at the discovery stage is much broader.  *See* C. Wright, Law of Federal Courts, 403 (1976). Discovery is designed to define and clarify the issues.  If requested materials are reasonably calculated to lead to the discovery of admissible evidence, the discovery request is relevant. Fed.R.Civ.P. 26(b)(1); *Weddington v. Consolidated Rail Corp.*, 101 F.R.D. 71, 73 (N.D.Ind. 1994).  *Alliance to End Repression v. Rockford*, 75 F.R.D. 441, 444 (N.D.Ill. 1977).  Therefore, discovery should be complied with if there is a reasonable possibility that the information sought may be relevant to the subject matter of the action.  *Sherman Park Community Association v. Wauwatosa Realty*, 486 F.Supp. 838, 845

(E.D.Wis. 1980).

Furthermore, the burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery. *Flora v. Hamilton,* 81 F.R.D. 576, 578 (M.D.N.C. 115 1978); *Zucker v. Sable,*, 72 F.R.D. 13 (S.D.N.Y. 1975).

*Arinder v. Lee*, 2000 WL 680343, *1-2 (E.D.La. May 23, 2000). *See also Giardina v. Fertel, Inc., et al.*, 2001 WL 1628597 (E.D.La. Dec. 17, 2001); *Plaisance v. Beef Connection Steakhouse*, 1998 WL 214740 (E.D.La. Apr. 3, 1998); *Jackson v. Entergy Operations, Inc., et al.*, 1998 WL 46822 (E.D.La. Feb. 4, 1998).

In response to the PSC's Document Requests, Defendants have attempted to limit their productions in three significant ways. First, all Defendants seek to exclude from production, discovery materials dated prior to 2005. Second, many Defendants refuse to produce materials relating to Chinese Drywall that do not implicate named plaintiffs in MDL filed cases. Third, many Defendants have refused to produce the inspection and remediation protocols used to evaluate and repair properties for defective drywall. As demonstrated herein, these limitations are unreasonable and contrary to the Federal Rules of Civil Procedure.

A.    **Defendants' Attempt to Exclude From Discovery Materials Dated Prior to 2005 is Unreasonable**

The PSC has defined the Relevant Time Period in this litigation as running from 2001 through the present date. The reason for this is simple: Plaintiffs' counsel have verified the presence of defective Chinese-manufactured drywall in homes built or renovated during this time period. *See, e.g.*, [5] Excerpts from Inspection Report and Client Information for C. Hasselschwert (annexed

_____

[5] Indeed, during a meet and confer on October 24, 2009, PSC representatives offered to conduct a tour of such properties for KPT.

8

hereto as Exhibit H (indicating presence of Chinese drywall in home built in 2001 and purchased by claimant in Nov. 2004). As noted above, Defendants have refused to produce discovery materials dated prior to 2005. For example, Defendant KPT purports that they only imported Chinese drywall into the continental United States from January 2006 to September 2006, and that this drywall was only manufactured beginning in late 2005. *See* KPT's Objections and Responses to the PSC's First Set of Document Requests, dated Oct. 14, 2009, at 6 (excerpt annexed hereto as Exhibit I). Therefore, it concludes that any information pertaining to Chinese Drywall dated prior to 2005 is not relevant or that its limited relevance does not outweigh the burden of production. This self-serving and narrow view of relevance is contrary to the Federal Rules, which contemplate broad-based discovery allowing the parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party..." Fed.R.Civ.P. 26(b)(1). As stated *supra*, the purpose of modern discovery is to allow the parties to obtain the fullest possible knowledge of the issues and facts before trial and this is accomplished by broad and liberal treatment of pretrial discovery. *Arinder v. Lee*, 2000 WL 680343, *1-2 (E.D.La. May 23, 2000).

Without question, documents pertaining to the development, inspection, and testing of Chinese drywall, and changes in its manufacturing processes—whether dated prior to or after the 2005-2006 time period—are relevant to the claims and defenses relating to product defect, notice, and alternative design that will be raised in this litigation. Similarly, misrepresentations and omissions in a manufacturer's promotional materials, product information and instructions, labeling, and warranties are relevant to issues of notice, negligence, failure to warn, and fraud claims. Indeed, changes in such disclosures or non-disclosures over time, or the extent to which some disclosures were made domestically but not made with respect to exported materials, may be highly relevant to Plaintiffs' claims.

Moreover, the PSC has requested information pertaining to any notices, claims, complaints, investigations, and communications regarding the defective nature of the drywall manufactured by Defendants, such as smells or odors, corrosion of household equipment and items and any related health and safety concerns. Such information may reveal when a manufacturer knew about the defect and what it told consumers, contractors, builders, distributors, and government agencies (both foreign and domestic) about the product and the results of any investigation, research or inquires regarding the defect or problems with the drywall. Such information will never be discovered if Defendant's date limitation is permitted to stand.

Like the manufacturer Defendants, several builder Defendants have also sought to exclude materials dated prior to 2005. For example, Defendant Lennar Homes has represented that it had no involvement with Chinese Drywall prior to January 1, 2005. Ironically, Lennar has also argued that it has no way of knowing whether there is Chinese Drywall in one of its homes until it conducts an inspection, because Lennar has had no involvement with the purchase or installation of drywall in its homes.[6] Setting aside the fact that if the latter were true, than Lennar could not possibly know whether it had any involvement in Chinese Drywall prior to 2005, it's exclusion of materials dated prior to 2005 will inevitably frustrate the PSC's legitimate Discovery Requests.

For example, communications between Lennar and its distributors, suppliers, or sub-contractors, relaying complaints, concerns, or information about Chinese drywall —whether such communications are made generally or are specific to Lennar properties—are relevant to whether Lennar knew or should have known of a potential defect. Similarly, complaints or concerns made by

---

[6] Other Defendants argue that the Relevant Time Period as defined by Plaintiffs is overly broad, because it has no claims against them for properties built prior to 2005. *See, e.g.,* Exh. J at 2, ¶ 3 (Objections and Responses of Defendant Taylor Morrison Services, Inc. and Taylor Woodrow Communities at Vasari, LLC.)

homeowners and contractors relating to alleged symptoms of defective drywall (e.g., corrosion of air conditioning system coils and electrical wiring)—even if Lennar failed to identify such complaints as relating  to Chinese drywall product used in its homes—will be relevant to issues such as negligence and notice, and the reasonableness of Lennar's conduct.  Finally, such materials may reflect Lennar's awareness of issues relating to Chinese-manufactured drywall, even if, as Lennar alleges, it did not use such product until 2006, and can assist in the identification of additional defendants and fact-witnesses.

As demonstrated *supra*, Defendants' refusal to produce responsive materials dated prior to 2005 should not be permitted, as such a limitation frustrates the PSC's legitimate discovery requests and the broad definition of "relevance" endorsed by the Federal Rules and this Court.  To the extent Defendants complain of burden, Plaintiffs note that if Defendants have no drywall-related information dated prior to January 1, 2005, they will have no documents to produce.  The burden of making this determination should be minimal, particularly with respect to information that is stored electronically and which can be easily searched.  Thus, the PSC requests that the Court order all Defendants to produce materials created during the Relevant Time Period, as defined by Plaintiffs in their Document Requests.

**B.  Defendants' Attempt to Limit Their Production to Information Pertaining to Named MDL Plaintiffs Has No Legitimate Basis**

In its Document Requests, the PSC has sought documents and communications relating to complaints, inspections, testing, and remediation of properties with Chinese-manufactured drywall. Several Defendants have also sought to limit their productions to only those materials relevant to the claims of named MDL plaintiffs, objecting to the Requests as overly broad, irrelevant, and seeking the "premature identification of potential class members."  *See, e.g.,* TM/TW's Responses

11

and Objections to the PSC's First Set of Document Requests at 2, ¶ 4 (annexed hereto as Exh. J). For example, Defendants Taylor Morrison Services, Inc. and Taylor Woodrow Communities at Vasari's (collectively "TM/TW") have excluded from their production any discovery materials pertaining to matters beyond the four plaintiffs who have sued TM/TW in the MDL (and one additional TM/TW resident who filed a Plaintiff Profile Form ("PPF")). *See id.* at 6. Indeed, TM/TW has acknowledged that it is excluding from its production, specific Chinese drywall data from approximately 300 Chinese drywall inspections and 150 Chinese drywall remediation agreements, across the state of Florida. In addition, TM/TW is making a blanket exclusion, under a claim of privilege, from discovery of all data generated by a third-party vendor involved in such inspections and remediations of TM/TW homes, Environ. *See, e.g.*, *id.* at 7.

With respect to Defendants' attempts to limit discovery to named MDL plaintiffs, this Court has rejected analogous arguments made by Defendant La Suprema, who objected to producing any information relating to Chinese Drywall that pertained to unnamed drywall manufacturers. In response to La Suprema's argument that the law does not allow a party to use discovery to go on a fishing expedition to find evidence of the identity of non-defendant manufacturers this Court held:

> "...I'm going to overrule that objection. I think that it may well be relevant. There's a situation here that exists that there's some manufacturers that are known, there's some manufacturers who have various marks, very designations, various descriptions. All of that information is present; and that is an issue that needs to be fleshed out, and this, I think may well be of assistance. If it's not of assistance, it's certainly relevant, and it may lead to future discovery. So I'm going to allow that and deny that objection."

*See* Transcript of the Discovery Conference (October 6, 2009), p. 13 lines 12-21. Similarly, in response to La Suprema's "case-specific" objections to producing responsive materials beyond those implicated in individual cases in which it was named, the Court aptly responded:

W:\! DRYWALL\27687 MDL\Pld\Motions to Compel\PSC's Motion to Compel Defendants\Memo in Support of MTC 2009-11-11.doc

"...I don't understand the case-specific discovery.  I know that you have been sued in some of these matters, but you're a part of the MDL.  So the case-specific discovery, it looks like I've got now several thousand cases, and it's growing.

**So that to me from the standpoint of one person saying you can't go outside of what you've sued me for, when I'm looking at the MDL, I don't see it that way, so help me out, what are you talking about?**"

Transcript of the Discovery Conference, (October 6, 2009) p. 16 lines 9-18.

Documents and data relating to properties containing Chinese Drywall other than those of "named-MDL plaintiffs," and for which TM/TW received complaints or performed inspections, product testing, or remediation of Chinese Drywall, will likely have relevance to issues of notice, causation, warnings, and damages in <u>all</u> cases.  Further, such information may lead to future discovery of other defendants and fact-witnesses.

Similarly, TM/TW's objection to the PSC's Document Requests as premature class discovery is unfounded.  This MDL includes a number of pending class actions. As such, any "unnamed plaintiff" who is a putative class member should be able to also rely on the discovery in the current litigation, since the proposed class representative is to gather such discovery.  TM/TW can demonstrate no private, protected relationship with such putative class members which would preclude this valid and relevant discovery.

With respect to TM/TW's attempt to withhold, under a claim of privilege or attorney work-product, information relating to Environ, its consultant that performed inspections and remediations of Chinese drywall-affected properties, Defendant has failed to provide a privilege log relating to such materials. To date, TM/TW has provided no explanation as to why it has not complied with this Court's Pretrial Order No. 15 ("PTO No. 15"), entered September 25, 2009, in which Your Honor

instructed all parties to provide a log for documents withheld under a claim of privilege within 7 days of production.[7]   Thus, the PSC is not in a position to adequately evaluate or raise a proper challenge to Defendants' claim of privilege.[8]

Where a party withholds materials from discovery upon a claim of attorney-client privilege, work product, or any other claim of privilege or immunity, that party has the burden of establishing that the materials fall within that privilege.  Fed.R.Civ.P. 26; *see also In re Shell Oil Refinery*, 812 F.Supp. 658 (E.D.La. Feb. 1, 1993).  The asserting party must adequately substantiate the claim of privilege; a party cannot rely on a blanket assertion of privilege.  *Id. citing Nutmeg Ins. Co. v. Atwell Vogell & Sterling*, 120 F.R.D. 504, 510 (W.D.La. 1988).  Blanket claims of privilege are disfavored. *United States v. El Paso Co.*, 682 F.R.D. 530, 539 (5th Cir. 1982).  Courts have found blanket claims of privilege as improper and invalid boilerplate objections.  *See*, *e.g. Eureka Finan. Corp. v. Hartford Accidential and Indemnity Co.*, 136 F.R.D. 179, 182 (D.C. Cal. 1991); *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 305 (D.C.N.Y. 1982); *Miller v. Pruneda,* 236 F.R.D. 277, 278 (D.C.A.Va. 2004); *Paulsen v. Case Corp.*, 168 F.R.D. 285 (D.C.Cal. 1996); *Obiajulu v. City of Rochester*, 166 F.R.D. 293 (D.C.N.Y. 1996).

The *Eureka* Court aptly stated:

> Whether a responding party states a general objection to an entire discovery document on the basis of privilege, or generally asserts a privilege objection within an individual discovery response, the resulting "blanket objection" is decidedly improper.  This fact should no longer be "news" to a responding party.  *Pete, Marwick, Mitchell*

---

[7] Indeed, no Defendant—with the exception of Mazer and South Kendall Construction—has provide privilege logs for their productions.  The PSC respectfully requests that this Court order all Defendants to comply with PTO No. 15, and produce privilege logs for their productions immediately.

[8] For example, it is not clear to the PSC, the extent to which Defendants may have waived a purportedly applicable privilege by sharing inspection reports and remediation plans with a homeowner or third-party vendor.

> & Co. v. West, 748 F.2d 540, 541-42 (10th Cir. 1984)(holding that a
> blanket, non-specific attorney-client work product privilege objection
> was insufficient and affected a waiver of the privilege); *Davis v.
> Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)(blanket privilege
> objection is improper); *Kansas-Nebraska Natural Gas Co. v.
> Marathon Oil, Co.*, 109 F.R.D. 12, 23-24 (D.Neb. 1983)(blanket
> objection based on privilege, ways to privilege); *In re Shopping Carts
> Antitrust Litigation*, 95 F.R.D. 299, 305 (S.D.N.Y. 1982)(party
> asserting a privilege objection must specify the evidence to which the
> privilege applies).

*Eureka,* at 182.

Even assuming that TM/TW has a colorable claim of privilege, it has admitted that it possesses research and analysis relating to Chinese drywall based upon data obtained from "Environ's inspections" of hundreds of TM/TW properties. TM/TW objects to producing any underlying inspection data and information, characterizing such materials as "work product." *See* Exh. J, at 3, ¶ 4. Even if the PSC agreed that the research and analysis at issue were work product, and the PSC does not concede that it is, such a claim would not apply to the *objective data* underlying the research or analysis. By contrast, such data is discoverable, even from non-testifying experts who would otherwise be protected under Fed.R.Civ.P. 26(b)(4)(B), when "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means" are present. Fed.R.Civ.P. 26(b)(4)(B)(ii); *see also Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 44 (S.D.N.Y. 1997) (requesting party granted discovery of non-testifying expert previously retained when costs would be judicially prohibitive and efforts would be duplicative).

Thus, information pertaining to the identities and locations of the homes that TM/TW has already had inspected, and data relating to any sampling and test results obtained from these properties is being improperly withheld. Moreover, the PSC would be required to expend enormous

costs to duplicate the objective data that TM/TW has already collected from such homes.  Even if, Defendants can make a showing that the opinions and communications of its consultants are privileged, the objective data and information relied upon by TM/TW's consultants should be promptly produced.

### C.   Defendants' General Refusal to Produce Inspection and Remediation Protocols Has No Legitimate Basis

Several Defendants have also objected to the PSC's request for of "all documents and communications concerning or referencing in any way any inspection, testing, repair and/or remediation protocols relating to Chinese drywall." *See, e.g.*, Defendant Lennar Homes' Responses and Objections to the PSC's First Set of Requests for Documents and Things, dated October 13, 2009, at ¶ 41 (excerpt annexed hereto as Exhibit K).  This objection is premised on Defendants' meritless position that they should only be required to produce information relating to named MDL plaintiffs and that such information is privileged.  *See id.*  For the same reasons described *supra*, in Section II.B, such objections should be rejected by this Court.

In response to the PSC's request, Lennar has agreed to produce only "a non-privileged, responsive document describing the current inspection and repair protocol associated with the repair of homes that contain defective Chinese-manufactured drywall, which continues to evolve over time."  *Id.*  Like TM/TW, Lennar has failed to produce a privilege log in connection with its productions.  As explained above, there is simply no valid basis for withholding the materials at issue—particularly, where such protocols may have changed over time and in response to certain disclosures and information provided by other parties and/or non-parties, such as government entitites.  Indeed, the fact that Lennar admits its protocols have changed over time provide further

support as to why all such protocols and related documents should be produced without delay. Plaintiffs are entitled to learn why Lennar has changed its inspection and remediation protocols over time and what caused it to do so. Such information may be relevant to notice, causation, and damages. Further, communications relating to such protocols may identify additional fact-witnesses with relevant information. Consistent with the PSC's Document Requests of September 2, 2009, all Defendants should be required to produce all documents and communications relating to their inspection, testing, repair and/or remediation protocols for Chinese drywall.

## III. DEFENDANTS' REFUSAL TO PRODUCE ELECTRONICALLY STORED INFORMATION (ESI) IN ITS NATIVE FORMAT IS IN VIOLATION OF FEDERAL RULE OF CIVIL PROCEDURE 34.

With the exception of Defendant Mazer Super Discount Stores ("Mazer"), none of the Defendants have agreed to comply with the PSC's request, as explicitly stated in its September 2, 2009 Document Requests, to produce electronically-stored information in its native format. For example, if a Defendant such as KPT uses Microsoft Word for word processing, it must produce relevant word processing documents as Microsoft Word files. Similarly, if Lennar uses Microsoft Office for their email, Lennar must produce relevant emails in Microsoft Office files. There are five significant advantages to production in native format.

First, from a cost perspective, it spares the producing party the expense of having to convert the files into another format for purposes of production.[9] Second, native files are inherently searchable because any text or data contained therein already exists in an electronic format. Thus,

---

[9] The only exception being where a documents needs to be redacted for privilege. In such cases, the Defendants would still need to convert such documents to another format for purposes of redaction. Typically, such documents are converted to and produced as single-page TIFFs or PDF files (electronic images of the document), the same format to which many Defendants are currently converting and producing their documents.

the Receiving Party has the same ability to search the documents as the Producing Party.  This is significant because it insures that no party has an advantage over the other with respect to their ability to quickly review and evaluation responsive materials.  Third, because native files are inherently searchable, they provide a cost savings to the Receiving Party.  For example, where documents are produced in hard copy or electronic images, the Receiving Party typically has to create OCR files for each document in order to make the production electronically searchable.  This step would not be necessary if documents are produced in their native format.  Fourth, native files also contain "metadata" which can provide important information about a document (*e.g*., when it was last modified, who made changes to a document, and what text was deleted or added).  As the Court is aware, such metadata became critical evidence in the Vioxx litigation.  *See* PSC Letter to the Court, dated October 14, 2009.  Finally, where needed, production of native files will provide for faster and more accurate translations of foreign-language documents.

Recognizing such advantages, the Federal Rules require production in native format.  Rule 34(b)(2)(E) governs production of electronically stored information ("ESI") and provides in pertinent part:

> Unless otherwise stipulated or ordered by the Court, these procedures apply to producing documents or electronically stored information:
>
> (i) *A party must produce documents as they are kept in the usual course of business* or must organize and label them to correspond to the categories in the requests;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms;
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Fed.R.Civ.P. 34(b)(2)(E) (emphasis added).  Rule 34(b)(2)(E) (i) requires that Defendants provide ESI as it is kept in the ordinary course of business, in this case, in their native format.  Indeed, while subsection (ii) provides that a party may produce electronically stored information in native format or in another reasonably usable form, this provision only applies where the requesting party did not specify the format of production.  *Id.* at 34(b)(2)(E)(ii); *see also* Notes to 2006 Amendment.  In this case, the PSC initially requested on September 2, 2009 that Defendants' productions be in native format and have never wavered from this request.

Where a responding party claims that ESI is not reasonably accessible because of undue burden or costs "[o]n motion to compel discovery or for a protective order, the party from whom discovery is sought <u>must show</u> that the information is not reasonably accessible because of undue burden or costs." Fed.R.Civ.P. 26(b)(2)(B)(emphasis added); *see also Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007) (responding party has duty to search electronic systems, and amended rule makes that explicit by allowing exception only on showing of undue burden or cost.  Accessible data must be produced at the cost of producing party; cost shifting does not even become a possibility unless there is first a showing of inaccessibility.).  Even if the responding party makes such a showing, the court still may order discovery if the requesting party shows good cause, but may impose limitations consistent with Rule 26(b)(2)(C).  *Id.*  These limitations may or may not include cost shifting, depending on the circumstances.

Defendants have raised only generalized objections to producing ESI in its native format, suggesting that the PSC's requests are burdensome because they ignore the peculiarities of a given Defendant's document management systems, and that such productions are inefficient and could cost "millions of dollars."  *See* Oct. 9, 2009 Letter to the Court from Hilarie Bass, Esq. (annexed hereto as Exhibit L).  In its Responses and Objections to the PSC's Document Requests, Defendant Lennar

objected to producing native files because such a request is "overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." Exh. K at 3.  To date, no Defendant has made any showing as to why such a production would be more costly than other forms of production or that it's native files are inaccessible.  Nor has any Defendant made a showing as to how producing a Word document as an electronic Word file is broader, more burdensome, or less likely to lead to the discovery of admissible evidence than producing the same document in hard copy format or as a non-searchable electronic image.

With respect to Defendants' relevancy objection, they have failed to articulate any reason as to why a native format production, as opposed to production in another format, will require them to produce non-relevant information.  In their letter to the Court on October 9, 2009, Defendants argued generally that some metadata contained in an electronic file may be irrelevant, but failed to describe with any particularity what sort of metadata they were concerned about.  Nor have they clarified this objection during subsequent meet and confers.

Moreover, rather than produce their electronic documents in the form in which they are ordinarily kept, Defendants have incurred unnecessary expense in converting their electronic documents to PDF or hard copy format.  This conduct has caused delays and forced Plaintiffs to incur needless costs.  For example, rather than producing an electronic file for a document, which would be fully searchable by both Plaintiffs, Defendants have spent time and money converting such documents into either paper format or an electronic image of the original (typically a PDF or TIFF file).  In doing so, Defendants have *significantly diminished the "searchability" of its productions*, requiring Plaintiffs to spend time and money to create OCR files for Defendants' productions, just to make them "searchable" once again, and to insure that they are compatible with standard document management systems.

20

The PSC is only seeking to be on a level playing field with Defendants and to have the same search capabilities that Defendants now have when reviewing their own electronic documents. The most direct means to accomplish this objective is by having Defendants produce their electronic documents in native format—the same format in which any given Defendant keeps its documents in the ordinary course of business. *See, e.g., In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2007 WL 121426, at *4 (Jan. 12, 2007)(for portion of ESI not yet produced, plaintiffs required to produce ESI in native format); *In re NYSE Specialists Secs. Litig.*, 2006 WL 1704447, at *1 (S.D.N.Y. June 14, 2006)(electronic documents to be produced in native format with metadata); *Hagenbuch v. 3B6 Sistemi Elettronici Industriali,* 2006 WL 665005, at *3-4 (N.D.Ill. Mar. 8, 2006)(native format required); *Nova Measuring Instruments, Ltd. v. Nanometrics, Inc.*, 417 F.Supp.2d 1121, 1122 (N.D.Cl. 2006) (ESI must be produced in native format with original metadata)(emphasis added); *Treppel v. Bioval Corp.*, 233 F.R.D. 363, 374 n. 6 (S.D.N.Y. 2006)(native format required). To that end, Plaintiffs have included a uniform format of production protocol in their Proposed Order (annexed hereto). Notably, a similar protocol was proposed to all the Knauf Defendants on November 2, 2009, to which, the PSC has yet to receive a response. The protocol proposed by the PSC is similar to that suggested in prior meet and confers with all Defendants, and which is described generally in our Letter to Your Honor dated October 14, 2009 (Exh. D).

Plaintiffs should be able to enjoy the same searchability that Defendants have when reviewing and evaluating their own document productions. This is particularly true where, as in the present case, the parties will have limited time to conduct discovery.

## CONCLUSION

For all of the foregoing reasons, the PSC respectfully requests that this Honorable Court grant its motion to compel in its entirety and order Defendants to make prompt and complete productions of responsive documents in their native format.

Respectfully submitted,

Dated: November 11, 2009

/s/ Leonard A. Davis
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

Christopher Seeger (On the Brief)
Jeffrey S. Grand (On the Brief)
Seeger Weiss, LLP
One William Street
New York, NY 10004
212-584-0700 (phone)
212-584-0799 (fax)
cseeger@seegerweiss.com

22

### PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Dawn M. Barrios<br>701 Poydras Street<br>Suite 3650<br>New Orleans, LA  70139<br>PH:  (504) 524-3300<br>Fax:  (504) 524-3313 | Daniel E. Becnel, Jr.<br>425 W. Airline Highway<br>Suite B<br>LaPlace, LA  70068<br>PH:  (985) 536-1186<br>Fax:  (985) 536-6445 |
| Victor M. Diaz<br>25 Flagler Street<br>8th Floor<br>Miami, FL  33130<br>PH:  (305) 358-2800<br>Fax:  (305) 358-2382 | Ervin Amanda Gonzalez<br>255 Aragon Avenue<br>Cora Gables, FL  33134<br>PH:  (305) 476-7400<br>Fax:  305) 476-7444 |
| Ben Gordon<br>316 S. Baylen Street<br>Suite 600<br>Pensacola, FL  32502<br>PH:  (850) 435-7090<br>Fax:  (850) 436-6091 | Hugh P. Lambert<br>701 Magazine Street<br>New Orleans, LA  70130<br>PH:  (504) 581-1750<br>Fax:  (504) 529-2931 |
| Jerrold Seth Parker<br>3301 Bonita Beach Road<br>Bonita Springs, FL  34134<br>PH:  (239) 390-1000<br>Fax:  (239) 390-0055 | Gerald E. Meunier<br>2800 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>Fax:  (504) 528-9973 |
| Christopher Seeger<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>Fax:  (212) 584-0799 | James Robert  Reeves<br>160 Main Street<br>Biloxi, MS  39530<br>PH:  (228) 374-5151<br>Fax:  (228) 374-6630 |
| Scott Weinstein<br>12800 University Drive<br>Suite 600<br>Ft. Myers, FL  33907<br>PH:  (239) 433-6880<br>Fax:  (239) 433-6836 | Bruce William Steckler<br>3102 Oak Lawn Ave.<br>Suite 1100<br>Dallas, TX  75219<br>PH:  (214) 523-6674<br>Fax:  (214) 520-1181 |

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Richard S. Lewis<br>HAUSFELD LLP<br>1700 K Street, N.WSuite  650<br>Washington, DC 20006<br>Phone: (202) 540-7200<br>Fax:  (202) 540-7201<br>rlewis@hausfeldllp.com<br><br>Daniel K. Bryson<br>Lewis & Roberts<br>3700 Glenwood Avenue, Suite 410<br>Raleigh, NC 27612<br>Phone: (919) 981-0191<br>Fax: (919) 981-0431<br>dkb@lewis-roberts.com | Jeremy W. Alters<br>Alters, Boldt, Brown, Rash & Culmo, P.A.<br>4141 N.E. 2nd Avenue<br>Suite 201<br>Miami, FL 33137<br>Phone: (305) 571-8550<br>Fax: (305) 571-8559<br>jeremy@abbrclaw.com<br><br>Richard J. Serpe, Esquire<br>Law Offices of Richard J. Serpe<br>Crown Center, Ste. 310<br>580 East Main Street<br>Norfolk, VA 23510-2322<br>rserpe@serpefirm.com |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion to Compel has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 11th day of November, 2009.

 /s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com

24