# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT APPLIES TO ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

### PLAINTIFF STEERING COMMITTEE'S FIRST REQUEST
### FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT(S) (MANUFACTURER)

TO:   Beijing New Building Material Public Limited Company

   Beijing New Building Materials Group Co., Ltd.

   Gebr Knauf Verwaltungsgesellschaft

   Knauf Gips KG

   Knauf Plasterboard Dongguan Co., Ltd.

   Knauf Plasterboard Tianjin Co., Ltd.

   Knauf Plasterboard Wuhu Anhui Co. Ltd.

   Knauf Plasterboard Wuhu Co. Ltd.

   Knauf Plasterboard Guandong Co. Ltd.

   Pingyi Zhongxing Paper Faced Plasterboard Co. Ltd.
   f/k/a Shandong Chenxiang

   Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin Co. Ltd.

1

**PLEASE TAKE NOTICE** that, pursuant to Federal Rules of Civil Procedure, 26(b) and 34, the Plaintiffs' Steering Committee ("PSC") propounds the following First Request for the Production of Documents and Things to Defendant(s).

Due to the expedited schedule for the above-captioned litigation, Defendant(s) shall produce the following documents and things within 7 days from the service of this document, or at such other time as ordered by the Court.

## DEFINITIONS & INSTRUCTIONS

1.      Whenever used in this Request, the following terms shall have the following meanings:

(a)      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(b)      "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

(c)      "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

(d)      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.   Documents shall

2

include all drafts, including drafts with "track changes,"and shall be deemed to be separate documents within the meaning of this term.

(e)     "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  ESI includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI

also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(f)    "Electronic media" means any magnetic or other storage media device used to record electronically stored information.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

(g)    "CPSC" means the Federal Consumer Product Safety Commission, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(h)    "EPA" means the Environmental Protection Agency, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(i)    "CDC" means Centers for Disease Control and Prevention's (CDC's) Division of Environmental Hazards and Health Effects within the National Center for Environmental Health (NCEH), any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(j)    "ATSDR" means Agency for Toxic Substances and Disease Registry, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(k)    "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a

4

natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(l)     "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(m)     "Including" or "includes" means including, without limitation.

(n)     "Defendant," "you," or "your" means each of the individual named Defendants to whom this set of discovery is directed, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

(o)     "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in China.

(p)     "Quality Assurance Methods" means the testing or other protocols used to ensure the ultimate quality and consistency of drywall, plasterboard, or wallboard, including, but not limited to, the stages of production at which tests were performed, if any; testing of raw materials used for production if any; specific types of testing performed, if any; and, periodic chemical composition tests on the final product, if any.

(q)   "Process Control" means the on-line or real-time measurements and corrective actions, processes and protocols used to ensure the proper operation of a manufacturing process for its drywall, including, but not limited to, the amounts, quantities and qualities of raw materials employed, the types of monitoring devices utilized, if any; the frequency with which measurement devices were calibrated, if ever; and, the frequency of which production and measurement equipment was inspected for wear, corrosion, or other damage, if ever.

(r)   "Manufacturing Methods" mean the protocol or specifications for manufacturing drywall.

(s)   "Test" or "Tests" means all tests, inspections, checks, studies, evaluations, measurements, and analyses of drywall and the materials and compounds which make up the same, into or of the composition, chemical or physical properties, performance, life expectancy, and formulation thereof.

(t)   "Person" means any natural person or any business, legal, or governmental entity or association.

2.   The following rules of construction apply to all discovery requests:

(a)   The terms "all" and "each" shall be construed as all and each;

(b)   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c)   The use of the singular form of any word includes the plural and vice versa; and

6

(d)     Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3.     Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your possession, custody, or control between January 1, 2001 and the current date (the "Relevant Time Period").

4.     Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data.  Defendant shall produce a privilege log within 7 days after the production of documents for which privilege is asserted to apply.  For each document for which Defendant asserts a privilege applies, it must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (*e.g.*, letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2).   Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, Defendant shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5.     If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible.  In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows:  persons who prepared or authorized the documents indicated or blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

6.     This Request is directed to all documents within your possession, custody or control, or within the possession of any agent of Defendant, or within the possession of any entity associated with Defendant, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

7.     Documents are to be produced in full and in their unexpurgated form. Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

8

8.      Documents shall be produced in their original language (e.g., Mandarin, German) and shall include any translations of such documents, whether such translations were performed prior to or subsequent to the date of these requests.

9.      This Request is intended to be consistent with the Federal Rules of Civil Procedure 26 and 34.   This Request is a continuing one and requires further and supplemental production by you as and whenever you acquire or create additional responsive documents after the time of the initial production hereunder.

10.     All hard copy documents and electronically stored information (ESI) produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.  With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic format. Plaintiffs request that the parties meet and confer to discuss the timing and manner of Defendant's production in response to these requests.

11.     Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document (e.g., for ABC Defendant, Inc. "ABC001"; "ABC002").   No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter), and the Bates

9

Number identified above.  The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

## DOCUMENTS TO BE PRODUCED

1.     All articles of incorporation, charters, and by-laws, including any amendments thereto of Defendant's, including any subsidiaries or affiliates of Defendant.

2.     All documents generated by, prepared for, reviewed by, received by, or concerning Defendant's  Board of Directors, or any committee thereof or authorized thereby, concerning Chinese drywall or of problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims, including any presentation to the Board of Directors, any resolution, any minutes of meetings, and any notes or memoranda of any attendee or Board member.

3.     For Defendant, including any subsidiaries or affiliates of Defendant, documents sufficient to identify:

(a)     All members of the Board of Directors during the Relevant Time Period;

(b)     All corporate officers during the Relevant Time Period;

(c)     All persons or entities that owned 5% or more of Defendant's common stock or held a 5% or more interest in Defendant during the Relevant Time Period; and

(d)     Annual organization charts for any entity that owned more than 5% of Defendant's common stock or held a 5% or more interest in Defendant, including any subsidiary or affiliate of Defendant, during the Relevant Time Period.

4.     As to any entity with which you are affiliated or have a financial interest in that is involved in the design, development, testing, inspection, manufacture, marketing, sale, export, or distribution of Chinese drywall, documents sufficient to describe the responsibilities that each such entity has in regard to Chinese drywall.

5.     For each year in which Defendant, including any subsidiary or affiliate of Defendant, designed, developed, tested, inspected, manufactured, marketed, sold, exported, or distributed Chinese drywall, all documents concerning the departmental and corporate organizational charts for the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the design, development, testing, inspection, manufacture, marketing, sale, export, or distribution of said Chinese drywall.

6.     All documents concerning any report or analysis of Defendant's financial condition or business prospects, including any subsidiary or affiliate of Defendant, prepared by you or any third party, including any analysis prepared by financial or industry analysts, during the Relevant Time Period.

7.     All filings made to any state, federal, domestic, and/or foreign governmental agencies, departments, divisions, bodies, entities, or representatives during the Relevant Time Period.

8.     Documents sufficient to identify by state, the name, address, and telephone number for all registered agent(s) for Defendant within the United States.

11

9.     For each year in which Defendant designed, developed, tested, inspected, manufactured, marketed, sold, exported, or distributed Chinese drywall, all documents concerning the departmental and corporate standard operating procedures, processes, guidelines, and rules for the conduct of the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the design, development, testing, inspection, manufacture, marketing, sale, export, or distribution of Chinese drywall.

10.     All of Defendant's document retention or document destruction policies and memoranda in effect during the Relevant Time Period.

11.     Documents sufficient to identify the steps taken by or on behalf of you to preserve documents that are or may be potentially discoverable in this action.

12.     Each and every general liability, comprehensive general liability, advertising liability, errors and omissions, or product liability insurance policy (and any other insurance policy which you believe may provide primary, umbrella or excess coverage for any personal injury, economic loss, or medical monitoring claim asserted in these proceedings), as well all excess layers, that you purchased or on which you are a named insured (including policies purchased by related corporate entities), during the Relevant Time Period.

13.     Any charts or schedules of layers of insurance or self-insured retention for any of the respective years of coverage.

14.     All documents concerning any contracts or agreements with respect to Chinese drywall, including indemnity agreements, agreements to assume liability, agreements to assume the defense, and joint defense agreements made by Defendant,

12

insurers for Defendant, or any other entities that may be financially affected by any of the claims asserted in this litigation, including but not limited to, Chinese drywall manufacturers, distributors, importers, exporters, brokers, retailers, builders, contractors, and installers.

15.    All documents concerning performance specifications and standards for Chinese drywall, whether such specifications and standards are set by Defendant, professional, engineering, laboratory, or manufacturing organizations, or by governmental entities.

16.    All documents concerning the design, development, manufacturing processes, testing, and inspection of Chinese drywall.

17.    All documents concerning the compounds used by Defendant in the manufacture of Chinese drywall.

18.    All documents concerning any research or testing on Chinese drywall by Defendant or anyone acting on its behalf, to determine how the components, properties, or effects of such drywall would, could, or might change due to chemical deterioration, exposure to various temperatures, pressure changes, weather conditions, moisture and/or humidity conditions, the passage of time, and/or any combination thereof.

19.    All documents concerning material suppliers of components and/or raw materials used in the manufacturer of Chinese drywall during the Relevant Time Period.

20.    All documents concerning any changes in the manufacturing, inspection, or testing processes for Chinese drywall during the Relevant Time Period.

21.     All documents concerning the Quality Assurance Methods utilized by Defendant, including any changes thereto, in its manufacture of Chinese drywall during the Relevant Time Period.

22.     All documents concerning Process Control, including any changes thereto, during the manufacture of Chinese drywall and any of its component materials during the Relevant Time Period.

23.     All documents and communications concerning any and all labeling, wording, markings, or lack thereof, that was placed on, affixed to, or imprinted on, or accompanied sheets of Chinese drywall manufactured, exported, shipped, sold, transferred, or distributed by Defendant.

24.     All documents relating to any inventory control systems or procedures utilized by Defendant to track its sales, exports, transfers, shipments, and/or distributions of Chinese drywall.

25.     All drafts of any promotional and/or marketing materials relating to any drywall product.

26.     All documents concerning any testing or inspections of Chinese Drywall to insure compliance with any regulations, specifications, or standards, whether such specifications and standards are set by Defendant, professional, engineering, laboratory, or manufacturing organizations, or by governmental entities.

27.     All documents evidencing the amount of Chinese drywall Defendant manufactured for, exported to, or distributed to entities within the United States during the Relevant Time Period.

14

28. Documents sufficient to identify batch and/or lot numbers for the Chinese drywall identified in Paragraph 27.

29. All documents identifying all entities to whom Defendant sold, transferred, shipped, exported, or distributed Chinese drywall during the Relevant Time Period for the sale, export, shipment, or distribution in the United States.

30. All documents, including purchase orders, sales orders, invoices, bills of lading, shipping documents, customs forms, and receipts which relate to sales, exports, shipments, or distributions of Chinese drywall to entities within the United States during the Relevant Time Period.

31. All documents identifying purchasing agents or sales brokers for Chinese drywall involved in sale, export, shipment, or distribution of Chinese drywall to the United States during the Relevant Time Period.

32. All documents identifying entities that came into possession of or had a financial interest in Chinese drywall manufactured by Defendant that was sold, exported to, shipped, or distributed in the United States.

33. All documents provided by Defendant with any and all sales, exports, shipments, or distributions of Chinese drywall during the Relevant Time Period, including but not limited to product information sheets, disclosures, material safety data sheets, and warranties.

34. All documents and communications relating to the storage and/or warehousing of Chinese drywall manufactured by Defendant prior to and/or following its sale, export, shipment, and/or distribution during the Relevant Time Period.

35.    All communications during the Relevant Time Period among or between Defendants' employees, agents, and or third-party consultants concerning Defendant's design, development, manufacture, testing, inspection, marketing, sale, export, shipment, or distribution of Chinese drywall.

36.    All communications during the Relevant Time Period between Defendant and any exporter, importer, distributor, or purchasing agent, sales broker, or purchaser of Chinese drywall concerning Defendant's design, development, manufacture, testing, inspection, marketing, sale, export, shipment, or distribution of Chinese drywall.

37.    All communications during the Relevant Time Period between Defendant and any builder, contractor, or consumer concerning Chinese drywall or problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

38.    All documents evidencing or identifying the U.S. states in which Chinese drywall was sold, exported, shipped, or distributed to by Defendant or any affiliated company during the Relevant Time Period.

39.    All documents evidencing or identifying the communities and street addresses of homes (whether single-family or multiple family dwellings) and/or commercial buildings within the United States in which Chinese drywall manufactured, sold, exported, or distributed by Defendant was used during the Relevant Time Period.

40.    All notices, claims, complaints, communications or documents of any kind among and/or between Defendant's employees and/or employees of affiliate companies,

16

consultants, distributors, exporters, purchasing agents, sales brokers, retailers, purchasers, and/or installers of Chinese drywall during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

41.    All communications between Defendant and any manufacturer and/or distributor of Chinese drywall during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

42.    All communications between Defendant and any and all foreign or domestic governmental  agencies during the Relevant Time Period, including but not limited to the CPSC, EPA, CDC, and APSDR, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

43.    All documents provided to any and all foreign or domestic government agencies, legislative bodies, departments, and or representatives during the Relevant Time Period in connection with any government investigations, research, or inquiries concerning Chinese drywall.

17

44.     All documents relating to research, testing, inspection, or analysis done by or on behalf of Defendant relating to the Chinese drywall that Defendant designed, developed, manufactured, tested, or inspected during the Relevant Time Period.

45.     All documents relating to research, testing, inspection, or analysis performed by or on behalf of Defendant relating to Chinese drywall that Defendant sold, exported, shipped, or distributed in the United States during the Relevant Time Period.

46.     All contracts and communications between Defendant and any third-party vendor or consultant relating to the inspection, testing, and/or analysis of Chinese drywall within the United States.

47.     All documents and communications between Defendant and any insurer or its representative concerning any claims relating to Chinese drywall.

48.     All notices to any property owners and/or tenants, that their property and/or other properties contain Chinese drywall.

49.     All documents and communications concerning or referencing in any way any inspection, testing, repair, and/or remediation protocols relating to Chinese drywall.

Respectfully submitted,


/s/ Russ M. Herman
**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*HERMAN, HERMAN, KATZ & COTLAR, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024

**Plaintiffs' Liaison Counsel**

18

| | |
|---|---|
| Dawn M. Barrios<br>701 Poydras Street<br>Suite 3650<br>New Orleans, LA 70139<br>PH: (504) 524-3300<br>Fax: (504) 524-3313 | Daniel E. Becnel, Jr.<br>425 W. Airline Highway<br>Suite B<br>LaPlace, LA 70068<br>PH: (985) 536-1186<br>Fax: (985) 536-6445 |
| Victor M. Diaz<br>25 Flagler Street<br>8th Floor<br>Miami, FL 33130<br>PH: (305) 358-2800<br>Fax: (305) 358-2382 | Ervin Amanda Gonzalez<br>255 Aragon Avenue<br>Cora Gables, FL 33134<br>PH: (305) 476-7400<br>Fax: 305) 476-7444 |
| Ben Gordon<br>316 S. Baylen Street<br>Suite 600<br>Pensacola, FL 32502<br>PH: (850) 435-7090<br>Fax: (850) 436-6091 | Hugh P. Lambert<br>701 Magazine Street<br>New Orleans, LA 70130<br>PH: (504) 581-1750<br>Fax: (504) 529-2931 |
| Arnold Levin<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106<br>PH: (215) 592-1500<br>Fax: (215) 592-4663 | Gerald E. Meunier<br>2800 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>Fax: (504) 528-9973 |
| Jerrold Seth Parker<br>3301 Bonita Beach Road<br>Bonita Springs, FL 34134<br>PH: (239) 390-1000<br>Fax: (239) 390-0055 | James Robert Reeves<br>160 Main Street<br>Biloxi, MS 39530<br>PH: (228) 374-5151<br>Fax: (228) 374-6630 |
| Christopher Seeger<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>Fax: (212) 584-0799 | Bruce William Steckler<br>3102 Oak Lawn Ave.<br>Suite 1100<br>Dallas, TX 75219<br>PH: (214) 523-6674<br>Fax: (214) 520-1181 |
| Scott Weinstein<br>12800 University Drive<br>Suite 600<br>Ft. Myers, FL 33907<br>PH: (239) 433-6880<br>Fax: (239) 433-6836 | |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing First Request for the Production of Documents and Things to Defendant(s) has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 2nd day of September, 2009.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
<u>ldavis@hhkc.com</u>