# Exhibit L



Hilarie Bass
Tel. (305) 579-0745
Fax (305) 579-0717
bassh@gtlaw.com

October 9, 2009

**VIA E-MAIL**

Honorable Eldon E. Fallon
c/o United States District Court
Eastern District of Louisiana
500 Poydras Street
Room C456
New Orleans, LA 70130

    Re:   *In re: Chinese-Manufactured Drywall Products Liability Litigation*
            **MDL 2047**

Dear Judge Fallon:

    I am writing on behalf of the Defense Steering Committee (DSC) and Homebuilders' Steering Committee (HSC) in response to the letter that Leonard Davis sent on behalf of the PSC to Your Honor on October 1, 2009, regarding the recent discussions between the parties on a proposed document preservation order.

    As a threshold matter, the DSC and HSC agree with the Plaintiffs' Steering Committee (PSC) that a uniform preservation order should be entered by the Court to address the preservation of hardcopy documents and electronically-stored information (ESI) by all parties, instead of separate preservation orders for each party. Because of the different computer systems and degree of sophistication of the multiple parties in this case, such a preservation order cannot be system-specific, but instead must be very general in nature. The DSC and HSC also agree that Paragraph 14 of Pretrial Order #1 is the kind of general preservation order that is appropriate for this case. However, for the reasons explained below, the DSC and HSC are of the view that a slight modification to the definition of "Documents" in Paragraph 14 of Pretrial Order #1 is warranted.

    In his letter, Mr. Davis seeks the Court's guidance in five areas, most of which has nothing to do with document *preservation*, but rather deals with the entirely separate issue of document *production*. I address each area below.

GREENBERG TRAURIG, P.A. ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
1221 Brickell Avenue ■ Miami, FL 33131 ■ Tel 305.579.0500 ■ Fax 305.579.0717

Honorable Eldon E. Fallon
October 9, 2009
Page 2

---

## Production of Electronically-Stored Information (ESI) and Hardcopy Documents

Although not a document preservation question, the first issue concerns whether, as a practical matter, the differences between the multiple defendants and their respective computer systems and degree of sophistication have a bearing on the production of documents and ESI. More specifically, the PSC argues that the Court should disregard any given defendant's document management system or sophistication in making a uniform pretrial order concerning the treatment of hardcopy documents and ESI for document *production* purposes. Such a position has no legal support.

The Federal Rules of Civil Procedure dictate whether the production must be made in any particular form or from any particular source. For example, while a requesting party is entitled to specify the form in which it desires to have ESI produced, (Fed. R. Civ. P. 34(b)(1)(C)), each responding party is entitled to object to that form and specify the form in which that party intends to produce information (Fed. R. Civ. P. 34(b)(2)(D)).

Similarly, Rule 26(b)(2)(B) relieves a responding party of the burden of providing discovery of ESI from sources it identifies as not reasonably accessible because of undue burden or cost. While the Court can still order discovery of ESI from that source for good cause, the Court must consider a number of factors, including: (i) whether the discovery is cumulative or duplicative, or can be obtained from a less expensive source; and (ii) whether the burden or expense outweighs its likely benefit, considering, among other things, the parties' resources. Without addressing these issues on a party-by-party basis, it is impossible for the Court to make these determinations and address each producing party's specific situation or objections.

Moreover, the particular circumstances of a producing party, or the claimed need of certain ESI from certain specific sources of a producing party, may permit that producing party to seek some, or indeed all, of the costs associated with the production to be shifted to the requesting party. *See, e.g., Murphy Oil USA, Inc. v. Fluor Daniel, Inc.*, 2002 U.S. Dist LEXIS 3196 (E.D. La. February 19, 2002) (directing requesting party to pay for restoration of emails as a result of specific factual findings). And, Fed. R. Civ. P. 26(b)(2)(B) requires that a party must seek protection from undue expense *before* incurring the expense. *Cason-Merenda v. Detroit Medical Center*, 2008 U.S. Dist. LEXIS 51962 (E.D. Mich. July 7, 2008). Thus, a blanket protocol for production of hardcopy documents and ESI that, according to the PSC's position, disregards the defendants' specific document management systems and sophistication, alleviates the PSC from any responsibility to make specifically tailored requests, and leaves defendants with no relief from unduly burdensome demands. *See Zubulake v. UBS Warburg*, 217 F.R.D. 309, 311 (S.D.N.Y. 2003) (setting forth seven factor test for determining whether to shift costs, including: (1) the extent to which the request is specifically tailored to discover relevant information; and (5) the relative ability of each

Honorable Eldon E. Fallon
October 9, 2009
Page 3

party to control costs and its incentive to do so.) Accordingly, a protocol for production of hard copy documents and ESI necessarily requires consideration of each defendant and their respective data storage facilities and computer systems and the likelihood that their documents are relevant and will lead to the discovery of admissible evidence.

### Investigation Into Preservation

The second issue posed by the PSC is whether the Court wants to have an investigation into document preservation at this time. Stated another way, the PSC wants the Court's blessing to engage in an early fishing expedition in an attempt to catch one or more defendants on a spoliation claim, without a single shred of evidence demonstrating cause for this collateral discovery.

The premise to the PSC's position, however, is faulty. According to the PSC, they: "have requested that each Defendant confirm they have preserved documents ...." They have not. Instead, during a meet and confer call on Wednesday, September 30, 2009, the PSC members participating in that call asked the three defense lawyers participating in that call (Doug Sanders and Mark Salky of the Defense Steering Committee and Elizabeth Ferry) to confirm whether each of the multiple defendants in this MDL proceeding -- including those defendants they do not represent -- have preserved documents in accordance with Paragraph 14 of Pretrial Order #1. Of course, these three defense lawyers could not confirm the preservation steps undertaken by each defendant in these MDL proceedings, just as the PSC could not confirm the preservation steps of each of the thousands of plaintiffs they purport to represent.

The DSC and HSC respectfully request that the Court order the PSC to focus on the real issues in this case and not allow them to engage in unwarranted fishing expeditions into side issues, particularly where, as here, the PSC has given no reason to proceed down this path at this time. If the Court is inclined to allow the PSC to investigate these preservation issues now, it must be reciprocal, and the DSC and HSC also should be permitted to inquire as to the preservation steps undertaken by the thousands of plaintiffs purportedly represented by the PSC.

### Production of ESI in Native Format

The third issue the PSC seeks guidance on also is a document production question, not a document preservation question. Specifically, the PSC wants all ESI from all defendants produced in its native format. As discussed above, this issue should be addressed on a defendant-by-defendant basis. A requesting party is entitled to specify the form in which it desires to have ESI produced, (Fed. R. Civ. P. 34(b)(1)(C)), and the responding party is entitled to object to that form, and specify the form in which it intends to produce information (Fed. R. Civ. P. 34(b)(2)(D)).

Honorable Eldon E. Fallon
October 9, 2009
Page 4

_____

To support its position, the PSC argues for production of ESI in native form because "productions will occur very soon." This court has recognized that such a speedy production militates *against*, not for, production in native form. *See McCord v. State Farm Fire & Cas. Ins. Co.*, 2008 U.S. Dist. LEXIS 36006 (E.D. La. May 2, 2008) (denying request for production of native format email due to imminent discovery deadline). Moreover, the PSC makes only general assertions that native form documents are necessary, and fails to consider that native file production creates numerous problems and issues. For example, as stated in the Sedona Principles, "information produced natively may be difficult or impossible to redact or Bates number[.]" These files will be similarly difficult or impossible to associate with legends concerning confidentiality. In addition, the review of native file production will create a review burden on counsel since, as the Sedona Principles also recognize, the metadata associated with the native files could contain or reveal privileged, secret or other sensitive information, necessitating its relatively costly review, and thus impacting the speed and cost of production.

We presume that the PSC is seeking native files in order to obtain the metadata. Many courts "have commented that most system metadata lacks evidentiary value because it is not relevant." *Aguilar v. Immigration and Customs Enforcement Div.*, 255 F.R.D. 350, 354 (S.D.N.Y. 2008); *Wyeth v. Impax Lab.*, 248 F.R.D. 169, 171 (D. Del. 1996). The PSC has not articulated how such metadata is relevant, let alone suggested a particularized need for the data. Moreover, this is another area that may be different for each defendant depending not only on how it stores data, but also how it fits into the case. A general request for native files and metadata is too broad, and plaintiffs should tailor their requests. *Dahl v. Bain Capital Partners, LLC.*, 2009 U.S. Dist. LEXIS 52551, *8 (D. Mass. June 22, 2009).

In fact, the increased costs to the defendants of producing ESI in native format could be in the many millions of dollars. Each of the defendants should have the opportunity to raise appropriate objections to producing ESI in native format and, if necessary, ask the Court to shift these increased costs to the plaintiffs.

With respect to the PSC's alternative request for "immediate" depositions of the various IT representatives from each defendant, the DSC and HSC request that the Court prevent the PSC from engaging in such a fishing expedition. A request for these IT depositions is entirely premature. These proposed depositions will not advance this case, but rather will likely delay discovery on the factual issues that must be developed in order to be prepared to try bellwether cases at the beginning of 2010. If these depositions are allowed to go forward, however, it must be a two way street, and the PSC should be required to make its plaintiffs available for "immediate" depositions on their preservation efforts.

Honorable Eldon E. Fallon
October 9, 2009
Page 5

## Converted Hardcopy Documents

Another document production (rather than preservation) issue raised by the PSC concerns the PSC's request that, where a defendant or its counsel has converted hardcopy documents into an electronic format for its own purposes, such documents should be produced to the PSC in "a Group 4 compression single page 'TIFF' format, complete with load files, objective coding and OCR text files." While that production protocol may or may not have been "similar to what was previously done in both *Propulsid* and *Vioxx*," this MDL proceeding is very different than those cases, particularly given that the cases in this MDL proceeding are not single defendant ones.

Regardless of the description given by the PSC, the data sought by the PSC is not part of the routine conversion of hardcopy documents into electronic format. Instead, the PSC seeks information in a database that may have been created for defense counsel at the substantial expense of defendants for the purpose of this litigation. While the PSC characterizes the information it seeks as objective, the coding process, and the OCR process, are prone to error. In the event that an error arose which, for example, incorrectly converts the text of an important document, the PSC may accuse one or more of the defendants of some nefarious motive. The coding process also oftentimes reflects the mental impressions and legal strategies of defense counsel. Accordingly, the kind of information sought by the PSC is protected by the work product doctrine. In the event that the Court requires the defendants to produce hardcopy documents in the format requested by the PSC, the PSC must be required to pay their share of the substantial costs involved with such a production.

As the PSC were advised during the meets and confers on this issue, there may be some defendants that will individually agree to produce hardcopy documents on a CD or DVD in a format chosen by that particular defendant. Other defendants may choose to produce the documents as they are kept in the usual course of business or make them available to the PSC for inspection or copying at the PSC's expense. The PSC has not given the Court any good reason to stray from Rule 34(b)(2)(E), which the rule in fact requires.

## Unique Identifiers

The last issue raised by the PSC involves another document production (rather than preservation) issue. During a meet and confer call on Thursday, October 1, 2009, the PSC for the first time requested that the three defense lawyers participating agree on behalf of all defendants in the MDL proceeding to require all defendants to Bates stamp their documents before producing them to the PSC. While the three defense lawyers generally agreed that it is better practice to Bates stamp documents before production, they were not in a position to bind all defendants to such an agreement, especially since there is no rule of procedure requiring such Bates stamping. The

Honorable Eldon E. Fallon
October 9, 2009
Page 6

---

PSC's request for Bates stamping also is inconsistent with its desire for native form production.

### Modification of Pretrial Order #1 Still Warranted

In addition to the five specific issues raised by the PSC in Mr. Davis' letter, the PSC also suggests in a footnote that no additional modifications should be made to Paragraph 14 of Pretrial Order #1. The DSC and HSC respectfully disagree. We suggest that the third and fourth sentences of Paragraph 14 be replaced with the following:

> As used herein, the term "Documents" shall have the meaning and interpretation ascribed to the terms "documents" and "tangible things" under Fed. R. Civ. P. 34 and shall include, without limitation
>
> 1. information that is generated, received, processed, or recorded by computers or other electronic devices, ("electronically stored information" or "ESI") or output from any software program, including, but not limited to electronic mail and attachments, electronic bulletin boards, word processing documents, graphics and presentation documents, web pages, audio and video files, spreadsheets, digital images, digital diagrams, transaction logs, and database files (as well as backup or archived copies of the foregoing information); and
>
> 2. any and all items stored in every type of electronic media including but not limited to hard drives, databases, computers, backup tapes, floppy disks, CD-ROM, magnetic tape, and optical disks, or in any other vehicle or device for digital data storage or transmittal.

The PSC has not offered any reason why this proposed alternative language is problematic. The DSC and HSC, however, believe that a more precise definition is appropriate. For the reasons discussed above, the DSC and HSC believe that "metadata" should be removed from the definition of "Documents." The Court should also exclude from Paragraph 14 reference to "voice mail," in large part because it is highly unlikely that plaintiffs or defendants are preserving (or even have the ability to preserve) this kind of information. Further, most voice mail systems have limitations which prevent the long-term retention and preservation of voice mail data, and acquisition and production of content from such voice mail systems is generally a manual, time-consuming and expensive processes. As of today, there is no reason to believe that unique data exists on anyone's voice mail system, and thus the defendants regard this kind of data as not reasonably accessible because of undue burden or costs

Honorable Eldon E. Fallon
October 9, 2009
Page 7

---

(see Fed. R. Civ. P. 26(b)(2)(b)), and not properly part of discovery because the value of such data is likely to be substantially outweighed by the burden involved in preserving, collecting, culling, reviewing and/or producing from that source (see Fed. R. Civ. P. 26(b)(2)(c)).

The DSC and HSC remain available to continue meeting and conferring with the PSC on these issues. If we are unable to reach agreement with the PSC in advance of next week's status conference, we will be prepared to address these issues with Your Honor during next week's status conference.

Respectfully,

Hilarie Bass

cc: Phillip A. Wittmann, Esq.
Kerry Miller, Esq.
Russ M. Herman, Esq.
Leonard A. Davis, Esq.
Douglas Sanders, Esq.
Elizabeth Ferry, Esq.
Homebuilders' Steering Committee

180,845,530v4 10-9-09