**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * | MDL NO. 2047 |
| | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| LUCILLE BOURDON | * | MAG. WILKINSON |
| | * | |
| Versus | * | |
| | * | 09-7025 |
| INTERIOR/EXTERIOR BUILDING SUPPLY, | * | |
| LIMITED PARTNERSHIP, INTERIOR/EXTERIOR | * | |
| ENTERPRISES, L.L.C., ARCH INSURANCE | * | |
| COMPANY, LIBERTY MUTUAL FIRE INSURANCE | * | |
| COMPANY, ARTHUR HOMES, L.L.C., JOSEPH L. | * | |
| ARTHUR, LOUISIANA HOME BUILDERS | * | |
| ASSOCIATION GENERAL LIABILITY TRUST, | * | |
| MARKEL INSURANCE COMPANY, AND STATE | * | |
| FARM FIRE AND CASUALTY COMPANY | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT STATE FARM FIRE & CASUALTY COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO SEVER</u>**

This is a suit brought by Plaintiff against four homebuilders and building material suppliers

(the "Builder/Supplier Defendants"), three commercial liability insurance carriers (the

"Builder/Supplier Insurer Defendants"), and Plaintiff's homeowners insurance company, State Farm

Fire & Casualty Company ("State Farm"). Plaintiff alleges that she has suffered property damage

and bodily injury arising from the installation of purportedly defective drywall in her home.

Plaintiff alleges that the Builder/Supplier Defendants, by processing, distributing, selling,

supplying, and installing such defective drywall in Plaintiff's home, breached the warranties

against redhibitory defects, of fitness for a particular purpose and fitness for ordinary use, and of merchantable quality; violated the Louisiana Products Liability Act, the Louisiana Unfair Trade Practices and Consumer Protection Law, and the New Home Warranty Act; and committed fraudulent concealment and misrepresentation, negligent misrepresentation, and negligence. (*See* Pet. *passim.*)   Plaintiff has sued the Builder/Supplier Insurer Defendants for insurance coverage under the Builder/Supplier Defendants' commercial general liability insurance policies for alleged physical damage and bodily injury caused by the Builder/Supplier Defendants' conduct.  (*See id.* ¶¶ 10–13.)

In contrast, the only basis on which Plaintiff seeks recovery from State Farm is the allegation that Plaintiff's own homeowners insurance policy provides coverage for her purported physical damage and bodily injury.  (*See id.* ¶ 14.)

While State Farm takes no position on the merits of Plaintiff's claims against the Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants, those claims are improperly joined with the homeowner's policy-based claim against State Farm. The allegedly tortious conduct by the Builder/Supplier Defendants and any resulting third-party indemnification obligation on the part of the Builder/Supplier Insurer Defendants are separate and distinct from any alleged first-party contractual coverage obligation on the part of State Farm.  There is no allegation (nor could there be) that State Farm participated in any way in the alleged tortious conduct of the Builder/Supplier Defendants, that State Farm issued an insurance policy for liability coverage to any of the Builder/Supplier Defendants, or that the Builder/Supplier Defendants or Builder/Supplier Insurer Defendants have any relation to

Plaintiff's homeowners insurance policy.  State Farm is not alleged to be, and could not be, responsible for the Builder/Supplier Defendants' conduct, nor could the Builder/Supplier Defendants or the Builder/Supplier Insurer Defendants be implicated in any way in the interpretation of Plaintiff's homeowners policy with State Farm.

Moreover, the claims are based on entirely different legal theories.  Plaintiff does not allege that the liability of State Farm is premised in any way on the alleged conduct of the Builder/Supplier Defendants or their insurers.  Accordingly, severance is appropriate based on improper joinder.

Even if joinder were proper, the Court should exercise its discretion to sever the claims under Federal Rule of Civil Procedure 21 to achieve judicial economy and efficiency.  The claims against the Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants are wholly unrelated to the claim against State Farm.  The only question raised by Plaintiff's claim against State Farm is whether the property damage and bodily injury allegedly suffered by Plaintiff are covered or are excluded from coverage under the terms of Plaintiff's homeowners policy.  This is a question of insurance contract interpretation and a pure issue of law having nothing to do with the tort claims against the Builder/Supplier Defendants or the indemnification obligations of their commercial liability insurers.  The question of coverage under Plaintiff's homeowners policy should be suitable for prompt resolution on a motion to dismiss.[1]

---

[1]  State Farm has filed, contemporaneously with this motion, a Rule 12(b)(6) Motion to Dismiss and memorandum in support thereof, seeking the dismissal with prejudice of Plaintiff's claim against State Farm.

In contrast, the claims against the Builder/Supplier Defendants, and thus the Builder/Supplier Insurer Defendants, involve myriad factual and legal issues regarding the processing, distribution, delivery, supply, inspection, marketing, sale, and installation of the allegedly defective drywall in Plaintiff's home. (*See, e.g.*, Pet. ¶¶ 18, 31, 42.) These claims will likely focus on what duties were owed by the Builder/Supplier Defendants to Plaintiff and whether those duties were breached. There is no reason for the claim against State Farm to be part of the same lawsuit as the claims against the Builder/Supplier Defendants and their liability insurers. It will be much more efficient to adjudicate the claim against State Farm separately, so that the homeowners insurance coverage issues can be resolved promptly. Accordingly, the claim against State Farm should be severed from the claims against the Builder/Supplier Defendants and Builder/Supplier Insurer Defendants pursuant to Rule 21.

**ARGUMENT**

**I.      The Claim Against State Farm Should Be Severed from the Claims Against the Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants.**

**A.      This Court Has Broad Discretion to Order Severance Under Rule 21.**

Under Federal Rule of Civil Procedure 21, "[a]ny claim against a party may be severed and proceeded with separately." *Allied Elevator, Inc. v. E. Texas State Bank*, 965 F.2d 34, 36 (5th Cir. 1992). When a court grants a motion for severance under Rule 21, this has the effect of creating "two separate actions or suits where previously there was but one," and the severed claims "proceed[] as a discrete, independent action . . . ." *Id.*[2] While Rule 21 also addresses

---

[2]  Rule 42(b) also provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims,

misjoinder, a court may order severance even where joinder was proper.  *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983) (rejecting argument that Rule 21 "may be used only to cure misjoinder of parties," holding that the rule "is not so limited"); *see also Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) (stating that Rule 21 "authorizes the severance of any claim, even without finding of improper joinder, where there are sufficient other reasons for ordering a severance"); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 560 n.5 (1st Cir. 2003) (stating that "a finding of misjoinder is not a prerequisite to severing parties or claims under Rule 21").

A district court has "broad discretion" to sever claims under Rule 21.  *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994); *see also Fed. Deposit Ins. Corp. v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1253 (5th Cir. 1992) (stating that the decision on whether to grant a motion to sever "rests with the broad discretion of the district court"); *Acevedo-Garcia*, 351 F.3d at 558 ("The decision to separate parties or claims is a case management determination 'peculiarly within the discretion of the trial court . . . .'") (*quoting Gonzalez-Marin v. Equitable Life Assur. Soc.*, 845 F.2d 1140, 1145 (1st Cir. 1988)); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) ("It is within the district court's broad discretion whether to sever a claim under Rule 21.").

---

crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  Whether the basis for severance is under Rule 42 or Rule 21, the standard is the same.  At this stage of the proceedings, severance under Rule 21 is appropriate.  *See McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 n.19 (5th Cir. 1993) (noting the difference between Rule 21 severance, which creates "entirely independent actions," and Rule 42(b) severance, which addresses separate trials within the same civil action).

**B.**     **Severance Is Appropriate Because the Claim Against State Farm Is Misjoined with the Claims Against the Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants.**

It is improper to join distinct and separate claims against separate defendants in the same lawsuit. *See In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *Jones v. Nastech Pharm.*, 319 F. Supp. 2d 720, 728 (S.D. Miss. 2004); *Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777, 781 (S.D. Miss. 2003).

For example, in *Smith*, the plaintiff brought suit on personal injury claims rising from an accident in which a hammerhead was ejected from a bushhog mower and crashed through the windshield of a vehicle driven by the plaintiff. He sued the driver of the mower, the driver's parents, and unnamed entities identified as the seller and manufacturer of the mower. The plaintiff also sued, in the same lawsuit, his own auto insurance company and a company that had been retained by his own health benefit plan to assert a subrogation claim on any insurance benefits owed by the auto insurer. 286 F. Supp. 2d at 778. The court held that the claims were improperly joined because the "claims against the non-diverse defendants [i.e., the driver of the mower and the driver's parents] are based on negligence relating to the accident in question, while the plaintiff's claims against ISM and Nationwide . . . sound in contract, failure to pay benefit claims, and tortious interference with contract." *Id.* at 781. The court severed the claims against the driver and the driver's parents from the claims against the auto insurer and the subrogation company. *Id.*

6

In this case, as in *Smith*, Plaintiff has improperly joined her claim against State Farm with her claims against the alleged tortfeasors, the Builder/Supplier Defendants, and the Builder/Supplier Insurer Defendants. Plaintiff's claims against the Builder/Supplier Defendants are tort claims alleging breaches of warranties, fraudulent and negligent misrepresentation, and various statutory violations. (*See* Pet. *passim.*) In contrast, Plaintiff's claim against State Farm alleges nothing more than coverage of her purported losses under her homeowners insurance policy. (*See id.* ¶ 14.) The allegedly wrongful conduct by the Builder/Supplier Defendants, and necessarily any obligations on the part of the Builder/Supplier Insurer Defendants, are entirely separate and distinct from the alleged liability on the part of State Farm. Plaintiff does not allege that State Farm acted jointly with the Builder/Supplier Defendants or the Builder/Supplier Insurer Defendants. State Farm is not alleged to be, and could not be, responsible for the torts which Plaintiff alleges were committed by the Builder/Supplier Defendants. Similarly, neither the Builder/Supplier Defendants nor the Builder/Supplier Insurer Defendants are alleged to be or could be responsible for any coverage under Plaintiff's State Farm-issued homeowners policy. The claim against State Farm is improperly joined, and, therefore, should be severed.

**C.      Even if Joinder Were Proper, Severance Would Be Appropriate.**

Where joinder is proper, factors that courts have considered in deciding whether to sever claims include the following:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003) (*quoting Wausau Bus. Ins. Co. v. Turner Const. Co.*, 204 F.R.D. 248, 250 (S.D.N.Y. 2001)).  The district court "has broad discretion to sever claims and parties, so long as in doing so the Court furthers the aims of justice, promotes judicial economy and efficiency, and avoids prejudicing the rights of any party."  *Id.* at 155 n.7.

In this case, these factors weigh in favor of severing the claim against State Farm from the claims against the Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants. The claim against State Farm is based on alleged coverage of Plaintiff's purported losses under the terms of Plaintiff's homeowners insurance policy.  (*See* Pet. ¶ 14.)  In contrast, the claims against the Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants allege that Plaintiff has suffered property damage and bodily injury as the result of those Defendants' tortious conduct in processing, distributing, marketing, selling, purchasing, delivering, supplying, inspecting, and installing defective drywall in Plaintiff's home.  (*See, e.g.*, *id.* ¶¶ 18, 31, 42.)

The principal legal issue presented by the claim against State Farm is whether contamination and corrosion of Plaintiff's home and elements therein and bodily injury suffered by Plaintiff, all allegedly caused by the installation of defective drywall (*see, e.g.*, *id.* ¶¶ 6–8, 14, 18–19, 21, 33), constitute covered losses under Plaintiff's homeowners policy or are excluded from coverage according to the terms of various policy provisions including the corrosion, contamination, latent defect, and faulty workmanship/faulty materials exclusions.  This question of coverage is one of insurance contract interpretation, separate and distinct from the potential tort liability of the Builder/Supplier Defendants and their insurers.  It is a pure legal issue that

can be resolved by the Court on a dispositive motion.  In contrast, the claims against the Builder/Supplier Defendants, and consequently the Builder/Supplier Insurer Defendants, involve factual and legal issues regarding such matters as what legal duties were owed by the Builder/Supplier Defendants to Plaintiff and whether the conduct of the Builder/Supplier Defendants in connection with the construction of Plaintiff's home breached any of those duties.

For the same reasons, judicial economy will best be served by severing the claim against State Farm from the claims against the Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants.  The questions of insurance contract interpretation presented by Plaintiff's claim against State Farm can and should be resolved promptly, and, to that end, State Farm is simultaneously moving to dismiss that claim.  On the other hand, if severance is not granted, interpretation of Plaintiff's homeowners policy likely would be a collateral, extraneous issue in a case in which approximately eight separate tort-based theories of recovery are asserted against four alleged tortfeasors and their respective liability insurers.

The claims against State Farm and the Builder/Supplier Defendants and Builder/Supplier Insurer Defendants also are likely to involve different witnesses and different documentary proof.  It is unlikely that any discovery will be necessary with respect to the claim against State Farm because a court cannot look beyond the plain language of the policy where the policy language is unambiguous.  *See Edwards v. Daugherty*, 2003-2104, p. 12 (La. 10/1/04); 883 So. 2d 932, 941 (stating that "[i]f the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written," and that "[c]ourts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation

when the policy's provisions are couched in unambiguous terms"). No witnesses or documentary proof from the Builder/Supplier Defendants or the Builder/Supplier Insurer Defendants would be appropriate or relevant in determining the intent of Plaintiff and State Farm with respect to Plaintiff's homeowners policy. The claims against the Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants will involve different witnesses and different documentary proof, focusing on such issues as what decisions were made and what actions were taken at the time the allegedly defective drywall was processed, distributed, marketed, sold, supplied, and installed, what knowledge the Builder/Supplier Defendants had at those times, and whether their conduct was reasonable.

Courts have repeatedly granted severance in similar circumstances. For example, in *In re Zyprexa Prods. Liab. Litig.*, No. MDL 1596, 04-CV-1615, 2004 WL 2812095 (E.D.N.Y. Dec. 3, 2004) (unpublished), the plaintiffs, who were the next of kin of a deceased prisoner, filed a tort action in Tennessee against various prison officials in Tennessee, a psychiatric hospital, a psychiatrist, and a prison doctor, alleging that the defendants' improper refusal to provide appropriate medial treatment resulted in the prisoner's death. *Id.* at *1. The defendants brought a drug manufacturer into the case on a product liability theory, and the plaintiffs later amended the complaint to add a product liability claim against the manufacturer. *Id.* There was an ongoing multi-district litigation involving claims against the drug manufacturer involving injuries allegedly caused by the drug which the prisoner was taking; thus, the Tennessee case was transferred to the Eastern District of New York as part of that multi-district litigation. *Id.*

The judge overseeing the MDL case granted a motion to sever the claims against the Tennessee prison officials and doctors from the claims against the drug manufacturer, concluding that the claims involved substantially different issues.  The court reasoned that "[t]he jail's alleged failure to attend to the decedent's serious medical condition has to do with what the jail and other personnel and doctors did once illness should have been apparent," while "[t]he product liability claims require an inquiry into what might have caused the illness."  *Id.* at *5. The claims against the Tennessee prison officials and doctors were based upon constitutional law, while the product liability claims against the drug manufacturer were based on tort law.  *Id.* The two different sets of claims would also involve different witnesses, evidence and proof:  the product liability claims would focus on complicated scientific evidence, while the claims against the Tennessee prison officials and doctors would focus on factual issues pertaining to the events that occurred when the prisoner was ill.  *Id.*  The court severed the claims against the Tennessee defendants and recommended that the MDL Panel remand those claims to the Eastern District of Tennessee.  *Id.* at *6.

The court reached a similar result in *In re Merrill Lynch & Co.*, 214 F.R.D. 152.  In that case, the plaintiffs had brought securities fraud claims against a company and its officers, alleging that the company had misrepresented its earnings and anticipated earnings and that its officers had engaged in illegal insider trading.  *Id.* at 153.  The plaintiffs later amended the complaint to add claims that Merrill Lynch's investment advice concerning the company's stock was tainted and biased.  The case was consolidated with an MDL proceeding involving similar claims against Merrill Lynch involving its stock rating system.  *Id.* at 153–54.  The court

overseeing the MDL proceeding granted a motion to sever the claims against the company from the claims against Merrill Lynch, concluding that "[t]he connection between the claims is tenuous" and that judicial economy and efficiency would be best served by severance. *Id.* at 156–57; *see also T.S.I. 27, Inc. v. Berman Enters., Inc.*, 115 F.R.D. 252, 254 (S.D.N.Y. 1987) (granting motion to sever tort claim arising from accident from counterclaims arising from contract disputes).

The same reasoning applies here. Plaintiff's claims against State Farm and against the Builder/Supplier Defendants and Builder/Supplier Insurer Defendants involve substantially different issues. The claim against State Farm will focus on the interpretation of the insuring agreement and various exclusions in Plaintiff's homeowners policy, whereas the claims against the Builder/Supplier Defendants and their insurers will focus on the alleged negligence and fraud of the Builder/Supplier Defendants in processing, distributing, marketing, supplying, selling, purchasing, and installing defective drywall in connection with the construction of Plaintiff's home. The homeowners insurance coverage issues should not be adjudicated together with the issues involving the Builder/Supplier Defendants and their liability insurers.

## II.     This Court Has Diversity Jurisdiction over Plaintiff's Claim Against State Farm, When Severed from the Claims Against the Builder/Supplier Defendants and Building/Supplier Insurer Defendants.

Because the Builder/Supplier Defendants and Builder/Supplier Insurer Defendants have been improperly joined as Defendants with State Farm and should be severed, diversity jurisdiction over Plaintiff's claim against State Farm exists pursuant to 28 U.S.C. § 1332. The citizenship of improperly joined parties is to be disregarded for purposes of diversity jurisdiction.

*See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 817 (5th Cir. 1993) (co-defendants "were improperly joined, so their citizenship is to be disregarded for purposes of determining diversity jurisdiction"), *cert denied*, 510 U.S. 868 (1993); *see also Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006); *In re Benjamin Moore*, 309 F.3d at 298; *Tapscott*, 77 F.3d at 1359–60.

Disregarding the citizenship of the Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants, there is complete diversity between Plaintiff and State Farm.  Plaintiff is a citizen of the State of Louisiana.  (*See* Pet. at introductory language.)  State Farm is a foreign insurer duly organized under the laws of the State of Illinois and having its principal place of business in the State of Illinois; therefore, State Farm is a citizen of the State of Illinois.  (*See* Notice of Removal ¶ 5.)  Likewise, the amount in controversy requirement of § 1332 is satisfied. (*See id.* ¶¶ 12–13.)  Accordingly, there is diversity jurisdiction over the claim against State Farm when severed from the claims against the Builder/Supplier Defendants and Builder/Supplier Insurer Defendants.[3]

## CONCLUSION

For these reasons, State Farm Fire & Casualty Company's Motion to Sever should be granted, and the claim alleged against State Farm should be severed from the claims against the

---

[3]  In her Motion to Remand and Memorandum in Support thereof, Plaintiff does not dispute that there would be diversity jurisdiction over the claim against State Farm if severed from the claims against the Builder/Supplier Defendants and Builder/Supplier Insurer Defendants.  (*See* Pls.' Mot. to Remand, filed Nov. 13, 2009; Mem. in Support of Pls.' Mot. to Remand, filed Nov. 13, 2009.)

Builder/Supplier Defendants and the Builder/Supplier Insurer Defendants, pursuant to Federal

Rule of Civil Procedure 21.

This 19th day of November, 2009.


/s/ Adrianne L. Baumgartner

_____

**ADRIANNE L. BAUMGARTNER, T.A. (#2861)**
**DARRIN M. O'CONNOR (#24582)**
**EMILY S. MORRISON  (#18351)**
PORTEOUS, HAINKEL & JOHNSON
408 North Columbia Street
Covington, LA 70434
(985) 893-4790
abaumgartner@phjlaw.com
doconnor@phjlaw.com
emorrison@phjlaw.com


**Attorneys for State Farm Fire & Casualty Company**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Defendant State Farm Fire & Casualty Company's Memorandum of Law in Support of Its Motion to Sever has been served upon Paul A. Lea, Jr., counsel for Plaintiff Lucille Bourdon,  a by email and first class mail postage pre paid pending counsels' registration with Lexis Nexis and to Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel Kerry Miller by U.S. Mail and email <u>and</u> upon all parties including Rick Duplantier, counsel for Interior Exterior, Judy Barrasso counsel for Liberty Mutual, and Jim Rowell, counsel for Markel Insurance by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on the 19th day of November, 2009.

/s/ Adrianne L. Baumgartner