installation, marketing, and/or sale of drywall, including a failure to adequately warn of its failure to do the same and to warn of the latent Defect.

34. As a direct and proximate cause of Defendants' foreseeable and negligent acts and omissions, the Plaintiff has incurred damages set forth herein.

**COUNT V**
**NEGLIGENCE PER SE**
**(Against all Defendants)**

35. The Plaintiff incorporates and restates all preceding paragraphs as if fully set forth herein.

36. Defendants breached their statutory duties to the Plaintiff by failing to exercise reasonable care in distributing, delivering, supplying, inspecting, installing, marketing, and selling the defective drywall used in the construction of the Home.

37. Defendants likewise breached their duties to the Plaintiff by failing to warn the Plaintiff about the defective nature of the drywall, which both malfunctioned and generated untoward side-effects. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective Chinese drywall and the adverse effects that it could have on the home in which it was used and on the health of the Plaintiff himself.




38. Defendants breached statutory duties to Plaintiff, including but not limited to, statutory duties imposed under the Virginia Building Code, *see* Virginia Code § 36-99, and the implied warranty that a new home be fit for habitation. *See* Va. Code §

55-70.1(B)

39. Defendants breached statutory duties to Plaintiff because the drywall utilized in construction of the home fails to meet the requirements of the International Building Code ("IBC"), Sections 2506.2 and 2507.2 requiring that the drywall be "essentially gypsum". The IBC has been adopted by the State of Virginia.

40. Given the Defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause both economic and physical damage to the Plaintiff.

41. Economic damages include, but are not limited to, substantial reconstruction and repair of the home, as well as medical expenses incurred as a result of Defendants' drywall, which are and may be considerable.

42. Defendants' drywall was the proximate cause of both the Plaintiff's personal and property damages as set forth herein.

43. Due to Defendants' negligence per se, the Plaintiff will continue to suffer from his personal and real property damages.

44. Although Defendants knew or should have known about the defective nature of their drywall products, Defendants nevertheless continued to distribute, deliver, supply, market, sell and install it.




**COUNT VI**
**UNJUST ENRICHMENT**
**(Against all Defendants)**

45. The Plaintiff incorporates and restates all preceding paragraphs as if fully set forth herein.

46. Each Defendant individually and collectively profited from the sale of the defective drywall to the Plaintiff, receiving payment themselves or through an agent. Defendants received payment for the defective drywall and have retained those sums to the detriment of the Plaintiff.

47. Defendants' receipt and retention of the profits gained by sale of the defective drywall to Plaintiff is unjust and inequitable.

48. As a direct and proximate result of Defendants' conduct complained of herein, the Plaintiff has sustained substantial damages as set forth herein.

49. Defendants knew or should have known of the damages their defective drywall would cause as described herein.

**COUNT VII**
**PRIVATE NUISANCE**
**(Against all Defendants)**

50. The Plaintiff incorporates and restates all preceding paragraphs as if fully set forth herein.

51. The acts and/or omissions of Defendants have caused injury to the Plaintiff including, among other things, depriving the Plaintiff of the peaceful and quiet use and enjoyment of his property.




52. Defendants' acts and/or omissions are wrongful and/or tortious, jeopardizing the health, well-being, and safety of the Plaintiff. Defendants knew their acts and/or omissions were wrongful or they should have known, and the resulting harm to the Plaintiff is ongoing.

53. As a direct consequence of Defendants' creation of a private nuisance, the Plaintiff has suffered, and continues to suffer personal injuries and property damage as set forth herein.

**COUNT VIII**
**EQUITABLE RELIEF, INJUNCTIVE RELIEF, AND MEDICAL MONITORING**
**(Against all Defendants)**

54. The Plaintiff incorporates and restates all preceding paragraphs as if fully set forth herein.

55. Because no adequate remedy exists for the conduct of Defendants, equitable and injunctive relief is appropriate.

56. The Plaintiff will suffer irreparable injury if the Court does not order injunctive relief and medical monitoring.

57. The Plaintiff demands that Defendants recall, repurchase, and/or repair the Plaintiff's family home, and initiate and pay for a medical monitoring program.

58. Medical monitoring is a necessary component of the relief the Court should order because some of the compounds being emitted from Defendants' defective drywall are very hazardous, some latently affecting the central nervous system and basic oxygenation on a cellular level.




59. As a direct consequence of the wrongful and/or tortious acts and/or omissions of Defendants' conduct, the Plaintiff has been exposed to airborne sulfur-based chemicals in quantities sufficient to harm him, and he has been harmed.

60. Until it has been conclusively established that all defective drywall has

been removed and that the air quality is safe, Defendants should bear the expense of air and environmental monitoring in the Plaintiff's home.

**COUNT IX**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Against all Defendants)**

61. The Plaintiff incorporates and restates all preceding paragraphs as if fully set forth herein.

62. Defendants, directly or through agents, were in privity with the Plaintiff.

63. At the times the Defendants installed, utilized, supplied, inspected and/or sold drywall for use in the Plaintiff's home, Defendants knew, or it was reasonably foreseeable, that the drywall would be used in the Plaintiff's home as a building material, and impliedly warranted the product to be fit for that use.

64. Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

65. The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by the Defendants; to wit, the installation of the drywall in the Plaintiff's family home for use as a building material, because it contained a Defect as set forth herein.




66. The Defendants breached the implied warranty of merchantability because the drywall was not fit to be installed in the Plaintiff's home as a building material due to the Defect set forth herein.

67. Defendants had reasonable and adequate notice of the Plaintiff's claims for breach of implied warranty of merchantability and have failed to cure.

68. As a direct and proximate cause of Defendants' acts and omissions, the Plaintiff has incurred economic and other damages set forth herein.

**COUNT X**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(Against all Defendants)**

69. The Plaintiff incorporates and restates all preceding paragraphs as if fully set forth herein.

70. Defendants, directly or through agents, were in privity with the Plaintiff.

71. Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

72. The drywall was defective because it was not fit for the specific purpose of being installed in the Plaintiff's family home as a building material, the purpose for which the Plaintiff bought the product in reliance on the judgment of Defendants.




73. The Defendants breached the implied warranty of fitness for a particular purpose because the drywall was not fit to be installed in the Plaintiffs' home as a building material due to the Defect set forth herein.

74. Defendants had reasonable and adequate notice of the Plaintiffs' claims for breach of implied warranty of fitness for a particular purpose and have failed to

cure.

75. As a result of Defendants' conduct, the Plaintiffs have suffered damages set forth herein.

**COUNT XI**
**VIOLATION OF CONSUMER PROTECTION ACT**
**(Against all Defendants)**

76. The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

77. This is an action for relief under Virginia Code § 59.1-196, *et seq.*, pursuant to the Virginia Consumer Protection Act.

78. Virginia Code § 59.1-198 defines a "Consumer transaction" as "[t]he advertisement, sale, lease, license or offering for sale, lease or license of goods or services to be used primarily for personal, family or household purposes." Furthermore, "Goods" means "all real, personal or mixed property, tangible or intangible".

79. The advertising, soliciting, providing, offering, distributing, installation and construction of drywall by the Defendants to the Plaintiffs constitute acts by a supplier under the Virginia Consumer Protection Act.




80. Virginia Code § 59.1-200.A. provides that: [t]he following fraudulent acts were practices committed by a supplier in connection with a consumer transaction, and are hereby declared unlawful:

a. Misrepresenting the source, ... of goods or services;

b. Misrepresenting the affiliation, connection or association of the supplier,

or of the goods or services, with another;

c. Misrepresenting geographic origin in connection with goods or services;

d. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses or benefits;

e. Misrepresenting that goods or services are of a particular standard, quality, grade, style or model. The Defendants' acts and omissions, as well as their failure to use reasonable care in this matter, as alleged in this Complaint, including, but not limited to, the knowing misrepresentation of the source, affiliation, origin, characteristics, ingredients, standards and quality of the Chinese drywall, that was mislabeled as drywall of "Venture Supply, Inc." when installed in the Plaintiffs' home constitutes violation of the aforementioned provisions of the Virginia Consumer Protection Act.

81. The Plaintiffs have suffered actual damage as a result of the Defendants' violations of the aforementioned provisions of the Virginia Consumer Protection Act for which they are entitled to relief under Virginia Code § 59.1,204,205,206 and/or 207.

**DAMAGES**




82. As a result of the Defendants' conduct as alleged herein, the Plaintiffs have suffered damage because their home contains inherently defective drywall that has caused damage to the Home, Other Property, and their health.

83. The Plaintiffs have incurred or will incur substantial damages including,

but not limited to: personal injuries, repair or replacement of the Home, repair or replacement of Other Property, repair or replacement of any other material contaminated or corroded by the drywall as a result of "off-gassing," cost of medical care, costs of relocation during repairs, storage costs, and other incidental and consequential damages.

84. Further, as a result of the Defendants' conduct as alleged herein, the Plaintiffs have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical care and monitoring. All conditions precedent to the relief requested herein have occurred, been performed or have been waived.

85. As a direct and proximate cause of the Defendants' acts and omissions, the Plaintiffs have incurred, or will incur, incidental or consequential damages for the costs of moving while the Home is being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the Home; the loss of use and enjoyment of real property; the loss in value of the Home due to the stigma attached to having defective drywall in the Home; and other related expenses.

## DEMAND FOR TRIAL BY JURY




The Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

WHEREFORE, the Plaintiffs request that this Honorable Court grant the following relief:

a. judgment in his favor, jointly and severally, against the Defendants;

b. an Order requiring the Defendants to pay compensation in the amount of at least Two Million Dollars ($2,000,000.00) in compensatory damages;

c. an Order for temporary and permanent injunctive relief and requiring medical monitoring;

d. costs and expenses in this litigation including, but not limited to, expert fees, filing fees, reasonable attorneys' fees and costs and pre-judgment and post-judgment interest; and

e. such additional and further relief as is just and appropriate under the circumstances.

DATED: 8-16-09

LAWRENCE WARD, Plaintiff

by: ______________________
Of Counsel

Richard J. Serpe, Esquire (VSB #33340)
Law Offices of Richard J. Serpe, P.C.
580 East Main Street, Suite 310
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455

LAW OFFICES OF RICHARD J. SERPE, P.C.



COPY TESTE:
GEORGE E. SCHAEFER, CLERK
NORFOLK CIRCUIT COURT
BY: Krista White
Krista White, Deputy Clerk
Authorized to sign on behalf
of George E. Schaefer
Date: 08/31/2009

COMMONWEALTH OF VIRGINIA





OFFICIAL RECEIPT
NORFOLK CIRCUIT COURT
CIVIL

DATE: 08/12/09 TIME: 10:48:54 ACCOUNT: 710CL09005167-00 RECEIPT: 09000040443
CASHIER: LXB REG: NO30 FILING: COM TYPE: FULL PAYMENT
STYLE OF CASE: WARD, LAWRENCE VS. PEAK BUILDING CORPORATION; ET
SUIT AMOUNT: $2,000,000.00
ACCT OF: WARD, LAWRENCE RECD: SERPE, RICHARD J
CHECK: $204.00 7032
DESCRIPTION 1: COMPLAINT
2: PLAINTIFF: WARD, LAWRENCE
3: NO HEARING SCHEDULED

| CODE | DESCRIPTION | PAID | CODE | DESCRIPTION | PAID |
|---|---|---|---|---|---|
| 049 | WRIT TAX - CIVIL | 25.00 | 106 | TECHNOLOGY TRST FND | 5.00 |
| 123 | LEGAL AID FEE | 9.00 | 147 | INDIGENT ASSISTANCE | 1.00 |
| 170 | COURT TECH FUND | 10.00 | 219 | LAW LIBRARY | 4.00 |
| 304 | CLERK CIVIL FEE | 150.00 | | | |

TENDERED : 204.00
AMOUNT PAID: 204.00
CHANGE AMT : .00

CLERK OF COURT: GEORGE E. SCHAEFER

DC-18 (1/90)