UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| MICHELLE GERMANO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.:  2:09cv202 |
| | ) | |
| TAISHAN GYPSUM CO., LTD., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>VENTURE SUPPLY, INC. AND THE PORTER-BLAINE
CORPORATION'S REBUTTAL MEMORANDUM IN SUPPORT OF
MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS</u>**

Venture Supply, Inc. ("Venture") and The Porter-Blaine Corporation ("PB"), by

counsel, submit the following rebuttal memorandum in support of the Motion to

Disqualify Counsel for the Plaintiffs.

**INTRODUCTION**

Venture and PB recognized an apparent conflict of interest relating to counsel for

the Plaintiffs filing two separate class actions and then filing numerous separate state

court lawsuits against the same target defendants.  They sought advice from the Virginia

State Bar Association and then suggested that the Plaintiffs' counsel seek the same

assistance, which is readily available from the Bar.  Plaintiffs' counsel refused this

somewhat common sense solution.  Had they sought assistance from the Bar, presenting

the circumstances as they saw it, and received an opinion from the Bar that they were not

in violation of the Virginia ethical rules, that would have likely been the end of this issue.

Given counsels' refusal to do so, Venture and PB felt they had no choice but to

file this Motion as suggested by the Bar.  In response, Plaintiffs vehemently attack both the motives and the ethics of the defense.  Rather than engage in a discussion that neither informs the Court of the true issues before it nor assists it in reaching a decision under the law and facts, Venture and PB will address the substantive points raised by the Plaintiffs and avoid addressing these unfounded personal attacks.

First, Plaintiffs' counsel apparently agree with the proposition that if there is a "limited fund," then there is a conflict which would prohibit counsel from representing differing groups and individuals from seeking to recover from that limited fund.  They next apparently argue that on the one hand the defense has not established that there is a "limited fund," but on the other hand, the limited fund is $260 million dollars based upon a stacking of insurance coverages and an assumption that coverage actually exists for the claims advanced by the Plaintiffs.

The defendants will not engage in a discussion as to whether coverage exists or not.  They are aware that a declaratory judgment action has been filed in this Court by an insurance carrier that addresses this very issue.  Builders Mutual Insurance Company v. Dragas Management Corp., et al., Civil Action 2:09-cv185 (E.D. Va., Norfolk Division).  As far as the current motion is concerned, either the fund is zero, $260 million or somewhere in between.

Plaintiffs next argue that the defense has not accounted for any contribution that may be made by Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"), the alleged manufacturer of the drywall.  This is somewhat disingenuous as the Plaintiffs know that not only is Taishan in default in this action (See Docket Number 77), but is also in default in actions down in Florida (E.g., See attached Motion for

Default Judgment filed against Taishan, Exhibit G).  In addition, to the knowledge of the defense, Taishan has not made an appearance in any action filed against it in the United States.  Also, Taishan may not be subject to the jurisdiction of this Court.  Finally, for some reason, Taishan is only a defendant in this action and the Hinkley action. Plaintiffs' counsel has decided not to sue Taishan in any of the 20 state court actions.  If Taishan is the deep pocket that will protect against a limited fund, it is curious why this pocket was not named in those actions.[1]

Plaintiffs argue further that this Court cannot rely on representations of counsel regarding Tobin Trading, Inc.'s ("Tobin") insurance; that Tobin has been out of business for some time; and that Venture and PB were forced out of business as a result of the publicity associated with the drywall and have no assets available.  It is a sad commentary on the state of certain judicial proceedings that plaintiffs' counsel apparently practice in settings and before tribunals in which representations of counsel are meaningless, especially in matters dealing with ethics.  However, representations of counsel are often relied upon by Courts in these settings.  E.g., Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724, 732 (E.D. Va. 1990) (cited by Plaintiffs) ("This is especially true, the Fourth Circuit added, in light of Government counsel's representation that "there was no dispute among … [the controllers] either with respect to their duties and responsibilities or the details of the plane crash." quoting Aetna Casualty & Surety Co. v. United States, 570 F.2d 1197, 1202 (4th Cir.), cert. denied 439 U.S. 821 (1978)).  Nevertheless, to the extent required, counsel will present testimony and evidence at the hearing from Venture and Tobin relating to assets and insurance. E.g., Lazy Oil Co. v.

---

[1] Once again, one wonders if counsel explained to these 20 clients that they were foregoing suit against an entity that Plaintiffs' counsel believes is a viable and culpable party.

3

Witco Corporation, 166 F.3d 581, 585 (3d Cir. 1999) (noting three days of evidentiary hearings including the issue of the adequacy of representation of counsel and disqualification).

As to the other factual arguments, Plaintiffs' counsel apparently suggest that the amounts of the Plaintiffs' claims in the various actions are unliquidated and that the class actions in this case and in Curtis Hinkley, et al. v. Taishan Gypsum Co., Ltd, et al., Civil Action No.: 2:09cv25 (E.D.N.C., Northern Division) have not been certified.  This assertion is somewhat surprising.  Plaintiffs' counsel has filed this action and the Hinkley action certifying that each case has 100 plus plaintiffs – a requirement of the  Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  Certainly, counsel would not have violated Rule 11 of the Federal Rules of Civil Procedure in filing these actions if they did not, in fact, have 100 plus plaintiffs in each action or believe that class certification is appropriate.

As to the amounts sought by the plaintiffs in the individual state court actions, Plaintiffs' counsel has now filed a total of 20 separate individual lawsuits in Virginia State Courts of which these defendants are aware (See attached Exhibit H).   Every one of these actions seeks $2 million in damages, except, surprisingly, the last suit filed by counsel on September 16, 2009, after the Motion to Disqualify was filed and while the Plaintiffs were preparing their memorandum in opposition to the Motion to Disqualify.[2]

Once again, if Plaintiffs' counsel felt that these claims were not worth $2 million

---

[2] The last suit filed seeks $500,000 in damages and apparently relates to a home that is in the same subdivision or development as the homes in 5 of the other suits filed, which each seek $2 million in damages.  The amount sought in the latest action appears designed to counter the arguments advanced in the Motion to Disqualify.  One must wonder if counsel had a discussion with these particular homeowners and explained to them why 19 of the suits they filed before this one, including three filed the day before, and including 5 apparently relating to homes in the same subdivision or development, were all worth $2 million each, but that their particular claim is only worth $500,000.

each, they would not have filed the pleadings in violation of Virginia's version of Federal Rule 11 – Va. Code Ann. § 8.01-271.1.  Counsels' apparent suggestion that not all of the claims are worth $ 2 million highlights the conflict that is raised by the representation of so many individuals and two separate classes all seeking the same pot of money. Because of the Motion to Disqualify, they apparently are now willing to "discount" all of the other claims below the amount sought in the 19 individual claims.  When the pleadings are almost exactly identical in all of the Complaints filed, when the damages and injuries are exactly identical in all of the Complaints filed, and when the relief sought is exactly identical in all of the Complaints, counsel's apparent suggestion that well, these 19 claims are worth $ 2 million, but others are only worth $500,000.00 is interesting to say the least.

The apparent limits to which counsel wish to save their representation is reflected in the filing of a submission to the MDL panel relating to their "need" to file the individual state court actions despite the fact that this class action is purportedly filed on behalf of <u>all</u> Virginia residents allegedly affected by the drywall.  In their response to supplemental submissions relating to the Motion to Vacate the Transfer Order (Exhibit I), counsel suggest that they had to file the separate state court actions because of lack of complete diversity.  However, in each of the state court actions, they chose not to sue Taishan.  This case is the only action that they have filed in Virginia relating to Venture and PB that includes Taishan as a defendant.  It is clear that this was done to attempt to secure federal court jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  Absent Taishan in this case, there would be no federal class action jurisdiction and this would be a suit, like the twenty other, filed in state court.  If

counsel were so confident of jurisdiction over Taishan or class action status, the twenty

separate state court suits would have included Taishan and would have either been filed

under the Class Action Fairness Act or joined in this action.[3]

In any event, the legal arguments, or lack thereof, addressed by counsel for the

Plaintiffs will be addressed below.

## ARGUMENT

A.   THE AUTHORITIES RELIED UPON BY PLAINTIFFS DO NOT
     APPLY TO THE CURRENT MOTION

Counsels' first argument is that the Virginia State Bar has already condoned their

representation, stating that LEO No. 692 is on point and "dispositive". (Plaintiffs'

Response, Page 11).  However, LEO No. 692 has absolutely nothing to do with the issues

addressed in this motion.  That opinion dealt with counsel who represented a

condominium association and who occasionally filed suit against individual unit owners

for condominium assessments.  Counsel sought an opinion as to whether they could

continue to represent the association against the individual unit owners while at the same

representing the unit owners individually and collectively in a class action suit under the

Virginia Condominium Act against the manufacturer of the air conditioning system at the

condominiums.  The Committee opined that there would be no conflict under the

circumstances.

How this applies to the current situation escapes Venture and PB.  That opinion

---

[3] Did counsel explain this to their clients?  Did they let the 20 state court plaintiffs know that they were foregoing suit against the party that may ultimately be liable if jurisdiction is obtained over it?  Did they explain to Mr. and Mrs. Germano that they included Taishan to secure federal court jurisdiction rather than, as in the other suits, leave Taishan out and file in state court?  Again the conflict is readily apparent by these actions.

dealt solely with the issue of filing suit against potential class action participants over a completely different matter than that addressed in the class action.  Venture and PB are not aware that Plaintiffs' counsel are actively pursuing litigation against class action members.  LEO No. 692 is completely inapposite to the matters addressed in this Motion to Disqualify.

Plaintiffs counsel next argue generally that Courts look with disfavor on motions to disqualify because they can be used as a "weapon" in an adversarial contest citing at length from Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724 (E.D. Va. 1990). However, Tessier also noted the importance of the Court and counsel's role with respect to ethical obligations.  First, as to standing of opposing counsel to file a motion to disqualify, the Court stated:

> Disciplinary Rule 1-103 and Ethical Consideration 1-4 of the Virginia Code of Professional Responsibility provide that as officers of the court, all attorneys have a continuing obligation to disclose to the court any violation of the rules of professional conduct.  See United States v. Clarkson, 567 F.2d 270, 271-72n.1 (4th Cir. 1977)("Any member of the bar aware of the facts justifying a disqualification of counsel is obligated to call it to the attention of the court."). The Fourth, Fifth, and First Circuit Courts of Appeal have held that disqualification may properly be sought by adverse counsel even though he or she is not representing the aggrieved client.

Id. at 728n. 3.

The Court went on to discuss the importance of protecting the public's confidence in the judicial system:

> The potential variety of interests which may dilute an attorney's loyalty to a client is measureless. Often in the course of complex litigation an attorney will fail to identify what others clearly recognize as an irreconcilable conflict among interests. Chief among the reasons for avoiding

7

> conflicts of interest is the preservation of the public's confidence in the integrity of lawyers and the judicial system. To allow a conflict to remain unaddressed until an affected party complains about the quality of justice he or she has received is to betray the public trust granted to the bar as a self-regulating organization.
>
> The Court is charged with the duty and responsibility of supervising the conduct of attorneys who appear before it.

Id., at 729.

Finally, the Court noted that while some deference must be given to the client's choice of counsel, that there are overriding considerations:

> However, this Court has held that the right of one to retain counsel of his choosing is "secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar." *In re Asbestos Cases*, 514 F. Supp. 914, 925 (E.D.Va. 1981), *citing Silver Chrysler*, 518 F.2d at 757; *Hull v. Celanese Corp*., 513 F.2d 568, 569 (2d Cir. 1975); *Telos Inc. v. Hawaiian Telephone Co*., 397 F. Supp. 1314 (D.Haw. 1975). There must be a balance between the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community. *In re Asbestos Cases*, 514 F. Supp. at 914.

Id.

Plaintiffs' counsel next rely upon the companion cases of Sheftelman v. Jones, 667 F. Supp. 859 (N.D. Ga. 1987) and Anderson v. Bank of the South, 118 F.R.D. 136 (M.D. Fla. 1987). In both those cases, the Courts were dealing with the certification of class actions and the defense raised, as part of their arguments against certification, the potential conflict of interest of plaintiffs' counsel relating to a potential limited fund. Both Courts noted that they were concerned with this conflict. Sheftelman, 667 F. Supp. at 865; Anderson, 118 F.R.D. at 149. However, the Courts ruled that at the time of certification, the potential limited fund was speculative at best under the particular facts

of the cases.  What is important to note is that both Courts relied heavily on the fact that the plaintiffs in the class actions had independent counsel to watch over the class counsel and protect their individual client's interests.  <u>Sheftelman</u>, 667 F. Supp. at 865 ("First, plaintiffs are represented by co-counsel untainted by this alleged conflict."); <u>Anderson</u>, 118 F.R.D. at 149 ("Local counsel for plaintiffs are not involved in the <u>Sheftelman</u> case, and the court will expect them to be independently vigilant on behalf of the plaintiff class.").

In the present case, there are no independent counsel watching over the interests of the 100 plus class members in this action, the 100 plus class members in the <u>Hinkley</u> action, or the 20 individual homeowners in the state court suits.  Moreover, given the almost half-billion dollars sought against Venture and PB, there is clearly no speculation about the "potential" limited fund.

This issue was addressed in a case not cited by Plaintiffs' Counsel.  In <u>Jackson Pontiac, Inc. v. Cleveland Press Publishing Co.</u> 102 F.R.D. 183 (N.D. Ohio 1984), class counsel also represented separate individual plaintiffs in actions against the same defendants where there was a limited fund.  The Court noted this was a clear conflict of interest.

> The first allegation is particularly disturbing, since the Press is now defunct and its assets are finite. It is not inconceivable that the amount sought by *Chinchar* plaintiffs and the proposed classes here will exceed the total assets of Press Publishing and Cole. As the court in <u>*Sullivan v. Chase Investment Services of Boston, Inc.,* 79 F.R.D. 246 (N.D. Cal. 1978)</u>, noted, counsel cannot represent different plaintiffs with conflicting claims against the same defendants without violating the ABA Code of Professional Responsibility, DR 5-105 and EC 5-14 through 5-16. "The responsibility of class counsel to absent class members whose control over their attorneys is limited

> does not permit even the appearance of divided loyalties of
> counsel." _Id._ at 258.

Id. at 192.

Nevertheless, Plaintiffs' counsel next relies on Lazy Oil Co. V. Witco

Corporation, 166 F.3d 581 (3rd Cir. 1999).  That case dealt with the approval of a

settlement of a class action suit over the objection of some of the named representatives

of the class.[4]  The Court of Appeals affirmed the approval of the settlement by the

District Court, noting that the settlement was in the best interests of the class.  As to the

disqualification of counsel issue, the Court noted that it had been "raised very late in the

litigation" Id. at 585.  The Court also noted at this stage of the litigation, there had been

two years of extensive discovery, including more than eighty depositions, substantial

document review, and the production of expert reports.  Id., at 588.

The Court went on to address the factors listed in In re "Agent Orange" Prod.

Liab. Litig., 800 F.2d 14 (2d Cir. 1986), and stated:

> The _Agent Orange_ court listed a number of relevant factors
> in this balancing inquiry, including some from Judge
> Adams's opinion: the information in the attorney's
> possession, the availability of the information elsewhere,
> the importance of this information to the disputed issues,
> actual prejudice that could flow from the attorney's
> possession of the information, the costs to class members of
> obtaining new counsel and the ease with which they might
> do so, the complexity of the litigation, and the time needed
> for new counsel to familiarize himself with the case. _See_
> _Agent Orange_, 800 F.2d at 19.

Lazy Oil, 166 F.3d at 590.

Clearly in a case that was almost at the trial stage after two years of discovery

there will be many factors weighing against a conflict of interest of counsel.  However,

---

[4] Interestingly, Plaintiffs' counsel apparently highlight that some of them were involved in this action.
(Plaintiffs' Response, Page 14).

this case is at the very beginning stages.  All of the cases, including the state court cases, are at the initial pleading stages.  In only one state court case have the parties exchanged interrogatory answers and documents.  There have been no depositions, no expert disclosures, and no extensive document reviews.

Moreover, <u>Lazy Oil</u> dealt with the objection of one class action party to a settlement.  It did not involve the issue of whether counsel can simultaneously represent hundreds of persons in class action suits and numerous separate individual plaintiffs all seeking the same pot of money.  The holding in <u>Lazy Oil</u>, therefore, offers little guidance to the Court.

Finally, the Plaintiffs' counsel rely on the U.S. Supreme Court decision in <u>Oritz v. Fireboard Corporation</u>, 527 U.S. 815 (1999).  That case dealt with the issue of an attempted mandatory class action settlement of asbestos claims based on a limited fund under Federal Rule 23(b)(1)(B).  Under such a procedure, a settlement would bind parties who were not made aware of the class action or the settlement and parties who were not yet even harmed by the asbestos products of the defendants.  While the Court did address the issue of a limited fund and the speculative nature of that fund and the value of claims of persons who have not even been harmed yet by the products, the Court also noted the inherent conflict in representing persons in such a class where there is a potential limited fund.  In discussing how to value all of the potential claims, the Court stated:

> Settlement value is not always acceptable, however. One may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining, unhindered by any considerations tugging against the interests of the parties ostensibly represented in the negotiation. But no such assumption may be indulged in this case, or probably in

any class action settlement with the potential for gigantic fees. [30] In this case, certainly, any assumption that plaintiffs' counsel could be of a mind to do their simple best in bargaining for the benefit of the settlement class is patently at odds with the fact that at least some of the same lawyers representing plaintiffs and the class had also negotiated the separate settlement of 45,000 pending claims, 90 F.3d at 969-970, 971, the full payment of which was contingent on a successful global settlement agreement or the successful resolution of the insurance coverage dispute (either by litigation or by agreement, as eventually occurred in the Trilateral Settlement Agreement), id. at 971, n. 3; App. 119a-120a. Class counsel thus had great incentive to reach any agreement in the global settlement negotiations that they thought might survive a Rule 23(e) fairness hearing, rather than the best possible arrangement for the substantially unidentified global settlement class. Cf. Cramton, Individualized Justice, Mass Torts, and "Settlement Class Actions": An Introduction, 80 Cornell L. Rev. 811, 832 (1995) ("Side settlements suggest that class counsel has been laboring under an impermissible conflict of interest and that it may have preferred the interests of current clients to those of the future claimants in the settlement class"). The resulting incentive to favor the known plaintiffs in the earlier settlement was, indeed, an egregious example of the conflict noted in *Amchem* resulting from divergent interests of the presently injured and future claimants. See 521 U.S. at 626-627 (discussing adequacy of named representatives under Rule 23(a)(4)).

### FOOTNOTES

[30] In a strictly rational world, plaintiffs' counsel would always press for the limit of what the defense would pay. But with an already enormous fee within counsel's grasp, zeal for the client may relax sooner than it would in a case brought on behalf of one claimant.

Id. at 852-53.

The Court suggested that the clients would be better served by having independent counsel evaluate their claims or potential claims given the inherent conflict

of interest with class counsel.

The Ortiz case, however, does not deal with the issues presented to this Court.  A mandatory class action settlement of a class action, without notice to all potential participants, is hardly the same issue as whether counsel can, within Virginia's ethical guidelines, represent two class actions and numerous individual plaintiffs.

> **B.**     **PLAINTIFFS' COUNSEL FAIL TO ADDRESS THE STANDARDS OF THE VIRGINIA ETHICAL RULE OR THE OTHER ETHICAL CONSIDERATIONS RAISED IN THE MOTION TO DISQUALIFY**

Plaintiffs' counsel do not address Rule 1:7 of the Virginia Rules of Professional Conduct, or the interpretation of this Rule in Comment 19, which suggests an objective view of the potential conflict:  "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances".  The question is whether an objective lawyer representing one of the plaintiff homeowners would conclude that the homeowners should not be represented by current counsel.

An objective lawyer would look to the fact that plaintiffs' counsel represents two 100 plus class action suits against the same target defendants.  He would also look to the fact that for some reason, in the class action suits the manufacturer is named – Taishan – and in the other suits it is not.  He would look to the fact that in addition to the 100 plus class action suits, there are 20, and perhaps more, individual state court actions against the same target defendants.  He would note that discovery has only been requested by the Plaintiffs in one action.  He would wonder how effected are the other homes; whether there are personal injuries, and to what extent.  He would like to know that information to evaluate the value of his client's case.  He would wonder if at the end of the day, there is

any money left for his client.  He would also wonder if his client's case should be put on the "fast track" to get to trial and judgment first.  He would wonder why some cases are not part of the class action, but are separate individual cases.  He would also wonder why one out of 20 of the cases is valued at a quarter times the other cases similarly situated.

In short, he would conclude that the above issues, and the issues raised in the Motion to Disqualify and the questions posed regarding a conflict (Motion to Disqualify, Pages 7, 8), would certainly suggest that under no circumstances should his client be represented by current counsel.  Aside from the sole issue of the limited fund, he would conclude under Rule 1.7 and comment 19 that current counsel could not ask for their clients to waive, in writing, the potential conflict.[5]  As such, counsel must withdraw under the mandates of the Code.

**WHEREFORE**, Venture and PB respectfully request an Order disqualifying plaintiffs' counsel in this matter.

---

[5] Rule 1.7 suggests that when there is "significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client…", this can be waived with written consent if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client…"  Under Comment 19 discussed above, if an objective lawyer would not consent to the representation, then the lawyer is prohibited from asking his client for written consent.  There has been absolutely no suggestion or representation by Counsel for the Plaintiffs that they have obtained written consent from any of their clients.

This 24th day of September, 2009.

                                                           _____/s/_____

                                                         Mark C. Nanavati , Esquire (VSB# 38709)

                                                         Kenneth F. Hardt, Esquire (VSB# 23966 )

                                                         Attorneys for Venture Supply, Inc. and The

                                                         Porter-Blaine Corporation

                                                         SINNOTT, NUCKOLS & LOGAN, P.C.

                                                         13811 Village Mill Dr.

                                                         Midlothian, VA 23114-4365

                                                         (804) 378-7600

                                                         (804) 378-2610 (fax)

                                                         khardt@snllaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of September, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste 3120
580 East Main Street
Norfolk, VA 23510-2322
Counsel for Plaintiffs

John Franklin, III, Esquire,
Taylor & Walker, P.C.
1300 FIRST VIRGINIA TOWER
555 Main Street, Norfolk, VA 23514
Counsel for Harbor Walk Development, LLC

Theodore I. Brenner, Esquire
Brenner, Evans & Millman
411 E. Franklin Street, Ste 200
Richmond, VA 23219
Counsel for Tobin Trading, Inc.

I hereby certify that I will mail the document by U.S. mail to the following parties who have not entered an appearance:

Taishan Gypsum Co. Ltd f/k/a
Shandong Taihe Dongxin Co. Ltd.
Dawenkou, Daiyue District
Tai'an City, Shandong Province
China 271026; and

_____/s/_____

Mark C. Nanavati , Esquire (VSB# 38709)
Kenneth F. Hardt, Esquire (VSB# 23966 )
Attorneys for Venture Supply, Inc. and The Porter-Blaine Corporation
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Dr.
Midlothian, VA 23114-4365
(804) 378-7600
(804) 378-2610 (fax)
khardt@snllaw.com

16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION, | MDL Docket No. 2047 |
| THIS DOCUMENT RELATES TO: | SECTION L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THE MITCHELL COMPANY, INC., individually and on behalf of others similarly situated, | |
| Plaintiff, | Case No. 09-cv-4115 |
| vs. | |
| KNAUF GIPS KG, a German corporation; KNAUF PLASTERBOARD (TIANJIN CO., LTD., a Chinese limited liability corporation; TAISHAN GYPSUM CO., LTD. (f/k/a Shandong Taihe Dongxin Co., Ltd.), a Chinese limited liability corporation); INTERIOR & EXTERIOR BUILDING SUPPLY, L.P., a limited partnership; and RIGHTWAY DRYWALL, INC., a Georgia corporation, | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST TAISHAN GYPSUM CO., LTD**

Plaintiff, The Mitchell Company, Inc. ("Mitchell"), filed its Amended Complaint

in this Court on July 7, 2009, alleging claims on behalf of itself and others similarly

832575.1

-1-



situated against Defendants Knauf Gips KG ("Knauf Gips"); Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf Tianjin"); Taishan Gypsum Co. Ltd. (f/k/a Shandong Taihe Dongxin Co. Ltd.) ("Taishan"); Interior & Exterior Building Supply, L.P. ("Interior & Exterior"); and Rightway Drywall, Inc., ("Rightway").

Mitchell perfected service of the Complaint on defendant Taishan on June 30, 3009. To date, Taishan has failed to enter an appearance, answer, or otherwise respond to Mitchell's Complaint. Accordingly, and pursuant to Fed. Rule Civ. Proc. 55 and this Court's Minute Order dated August 11, 2009, Mitchell requests that this Court enter default and grant default judgment against Taishan in favor Mitchell and the class it seeks to represent.

### Factual and Procedural Background

Mitchell brings this action as a proposed class action under Federal Rule of Civil Procedure 23 on behalf of itself and a Class defined as:

> All persons and entities in the States of Alabama, Mississippi, Louisiana, Georgia, Texas, and Florida, or, in the alternative, a nationwide class of persons and entities, who used drywall manufactured by Knauf Gips Kg, Knauf Plasterboard (Tianjin) Co., Ltd., or Taishan Gypsum Co., Ltd., for the construction, repair, or remodeling of any improvement to real property and who have incurred any expenses associated with (1) repair or replacement of all or part of the defective drywall, and/or (2) repair or

832575.1

-2-

> replacement of other property damaged by the defective
> drywall, and/or (3) other expenses incurred as part of the
> remediation of the effects of the defective drywall,
> including, without limitation, the cost of investigation and
> expert analysis of the defect, and cost of relocating
> customers displaced by the presence of defective drywall.

Mitchell asserts claims for negligence, strict products liability, unjust enrichment, and express and implied warranty, all arising from Defendants' design, manufacture, marketing, warranting, distribution, and sale to Plaintiff and the Class of imported drywall that Defendants knew or should have known was fundamentally unsuitable for its intended purpose.

Mitchell filed its original complaint in the Northern District of Florida on March 6, 2009. Mitchell's action was transferred to this Court by MDL transfer order on June 24, 2009. On June 30, 3009, Mitchell received notice that service of the original complaint was perfected on Chinese defendant Taishan. *See* Law Declaration, filed herewith, Exhibit A. Mitchell subsequently filed its Amended Complaint in this Court on July 7, 2009. As of the filing of this motion, Taishan has not filed an answer or otherwise responded to Mitchell's Complaint or Amended Complaint. *See* Law Declaration, Exhibit B.

## Argument

The entry of a default judgment is governed by Fed. R. Civ. Proc. 55, which states in pertinent part:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default...

> [In cases where the plaintiff's claim is for a sum that is not certain and cannot be made certain by computation], the party must apply to the court for a default judgment...If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing...

Fed. Rule. Civ. Proc. 55.  Pursuant to Fed. Rule Civ. Proc. 12, a defendant must serve an answer within 20 days after being served with the summons and complaint.  Fed. R. Civ. Proc. 12(a)(1)(A)(i).

Here, Mitchell received on June 30, 2009, documentation reflecting service of the Complaint and summons on Taishan.  *See* Ex. A. Thus, Taishan's deadline for serving its responsive pleading was, at the latest, July 20, 2009.

Taishan has failed to respond to Mitchell's complaint or otherwise defend this matter.  As the Fifth Circuit has explained, mere acceptance of service does not constitute an appearance for purposes of Fed. R. Civ. Proc. 55(b)(2).  *Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999)  Thus, Mitchell need not notify Taishan of the present motion for default.

-4-

This Court has publicly warned defendants of their obligation to appear or risk default:

> IT IS ORDERED that Pretrial Order #1, Paragraph 8 regarding EXTENSION AND STAY be and is hereby MODIFIED to reflect that those who have been served and who have not made an appearance will be subject to default. The Court instructed the parties to file a motion for default in cases involving parties who have been served but who have not made an appearance, before the next status conference.

Minute Entry dated August 11, 2009, p. 3.

Taishan has proffered no excuse for its failure to respond to Mitchell's Complaint or Amended Complaint. Accordingly, by the plain language of Fed. Rules Civ. Proc. 12 and 55, Mitchell and the Class it seeks to represent are entitled to an entry of default and default judgment.

### Conclusion

In view of Defendant Taishan's failure to file an answer or otherwise respond to Mitchell's Complaint filed March 6, 2009 or Amended Complaint filed on July 7, 2009, Mitchell respectfully requests that this Court grant default judgment in its favor and in favor of the Class.

832575.1                              -5-

/s/ Steven L. Nicholas
STEVEN L. NICHOLAS (ASB-2021-N35S)
R. EDWIN LAMBERTH
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, Alabama 36604
251-471-6191
251-479-1031 (fax)

JONATHAN D. SELBIN
Lieff, Cabraser, Heimann & Bernstein, LLP
780 Third Avenue, 48th Floor
New York, New York 10017-2024
212-355-9500
212-355-9592 (fax)

ELIZABETH J. CABRASER
KRISTEN E. LAW
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, California 94111-3339
415-956-1000
415-956-1008 (fax)

Attorneys for Plaintiff

**DEFENDANTS TO BE SERVED AS FOLLOWS:**

Knauf Gips KG
Ridham Dock, Kemsley
Sittingbourne, Kent ME9 8SR, UK

Knauf Plasterboard (Tianjin) Co., Ltd.
North Yinhe Bridge, East Jingjin Road
RC-300400 Tianjin, China

Taishan Gypsum Co. Ltd.
Dawenkou Daiyue District
RC-271026 Tai'an Shandong, China

Interior & Exterior Building Supply, L.P.
727 South Cortez Street
New Orleans, Louisiana  70119

Rightway Drywall, Inc.
c/o Michael S. Jenkins, Registered Agent
102 Samantha Drive
Bonaire, Georgia  31005

| Style | Court | Case No. | Date Action Was Instituted | Amount Sued For |
|---|---|---|---|---|
| Nguyen v. Curb Appeal Home Builders, et al. | Norfolk Circuit Court | CL09-3105 | 8-May-2009 | $2,000,000.00 |
| Sakony v. Wellington, LLC, et al. | Norfolk Circuit Court | CL09-5127 | 10-Aug-2009 | $2,000,000.00 |
| Morgan v. Wellington, LLC, et al. | Norfolk Circuit Court | CL09-5133 | 11-Aug-2009 | $2,000,000.00 |
| Baldwin v. Wellington, LLC, et al. | Norfolk Circuit Court | CL09-5135 | 10-Aug-2009 | $2,000,000.00 |
| Galgano v. Wellington, LLC, et al. | Norfolk Circuit Court | CL09-5137 | 10-Aug-2009 | $2,000,000.00 |
| Ward v. Peak Building Corporation, et al. | Norfolk Circuit Court | CL09-5167 | 10-Aug-2009 | $2,000,000.00 |
| Heishober v. Peak Building Corporation, et al. | Norfolk Circuit Court | CL09-5168 | 12-Aug-2009 | $2,000,000.00 |
| Edmonds v. Parallel Design & Development, et al. | Norfolk Circuit Court | CL09-5697 | 3-Sep-2009 | $2,000,000.00 |
| Orlando v. Wellington, LLC, et al. | Norfolk Circuit Court | CL09-5722 | 4-Sep-2009 | $2,000,000.00 |
| Gulledge v. Woodall, LLC, et al. | Norfolk Circuit Court | CL09-5763 | 8-Sep-2009 | $2,000,000.00 |
| Sakowski v. Wyndwil, LLC, et al. | Norfolk Circuit Court | CL09-5795 | 9-Sep-2009 | $2,000,000.00 |
| Simpson v. Wyndwil, LLC, et al. | Norfolk Circuit Court | CL09-5822 | 10-Sep-2009 | $2,000,000.00 |
| Gandy v. HHJV, LLC , et al. | Norfolk Circuit Court | CL09-5891 | 15-Sep-2009 | $2,000,000.00 |

EXHIBIT

H

| Style | Court | Case No. | Date Action Was Instituted | Amount Sued For |
|---|---|---|---|---|
| Bailey v. HHJV, LLC, et al. | Norfolk Circuit Court | CL09-5892 | 15-Sep-2009 | $2,000,000.00 |
| Havrilla v. HHJV, LLC, et al. | Norfolk Circuit Court | CL09-5893 | 15-Sep-2009 | $2,000,000.00 |
| Fowle v. HHJV,LLC, et al. | Norfolk Circuit Court | CL09-5894 | 15-Sep-2009 | $2,000,000.00 |
| Fontenot v. HHJV, LLC, et al. | Norfolk Circuit Court | CL09-5895 | 15-Sep-2009 | $2,000,000.00 |
| Smith v. HHJV, LLC, et al. | Norfolk Circuit Court | CL09-5901 | 14-Sep-2009 | $2,000,000.00 |
| McKellar v. HHJV, LLC, et al. | Norfolk Circuit Court | CL09-5903 | 15-Sep-2009 | $2,000,000.00 |
| Leach v. Wellington, LLC, et al. | Norfolk Circuit Court | CL09-5932 | 16-Sep-2009 | $500,000.00 |
| Germano v. Harbor Walk Development, LLC, et al. | United States District Court for the Eastern District of Virginia; Norfolk Division | 2:09-cv-202 | 1-May-2009 | $5,000,000.00 |
| Hinkley v. Venture Supply, Inc., et al. | United States District Court for the Eastern District of North Carolina; Northern Division | 2:09-cv-25 | 15-May-2009 | $5,000,000.00 |

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

In re   **CHINESE DRYWALL LITIGATION**          **MDL No. 2047**

**PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT SUPPLEMENTAL SUBMISSION AND SECOND SUPPLEMENTAL SUBMISSION OF NEW EVIDENCE IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER WITH RESPECT TO MICHELLE GERMANO, et al v. TAISHAN GYPSUM CO., LTD, et al AND  CURTIS HINKLEY, et al v. TAISHAN GYPSUM CO. LTD, et al**

Arnold Levin, Esquire
Fred S. Longer, Esquire
Daniel Levin, Esquire
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
**HAUSFELD LLP**
1700 K Street, N.W.
Ste. 650
Washington, DC 20006

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, GA 30022

Ervin A. Gonzalez
Patrick S. Montoya
**COLSON HICKS EIDSON COLSON
MATTHEWS MARTINEZ GONZALEZ
KALBAC & KANE**
255 Aragon Avenue, 2nd Floor
Coral Gables, FL 33134

Richard Serpe
**LAW OFFICES OF RICHARD J. SERPE**
Crown Center, Ste. 3120
580 East Main Street
Norfolk, VA 23510-2322

Robert Gary
**GARY, NAEGELE & THEADO, LLC**
446 Broadway
Lorain, OH 44052



EXHIBIT
I

The defendants assert that since plaintiffs' counsel has brought several actions in Virginia state court, that consolidation and transfer for the *Germano* and *Hinkley* actions are not appropriate in the transferee court (Judge Eldon E. Fallon) in Louisiana.  Defendants' argument is wrong for at least two reasons.  First, the Virginia state court actions brought by plaintiff's counsel could not be brought in federal court because federal jurisdiction is lacking.  Federal jurisdiction over this action exists, however, pursuant to 28 U.S.C. § 1332(d)(2).  This action involves a class action with minimal diversity between the parties that exceeds $5 million.  The adverted to actions filed in state court are not class actions, do not involve parties with diversity of citizenship, and are properly venued in Virginia.

Second, it is by now commonplace for consolidation and transfer pursuant to 28 U.S.C. § 1407 of class actions that are filed in federal court even when individual actions are filed in state court.  See e.g., *In re Phenylpropanolamine(PPA) Products Liability Litig.*, Docket No. 1407 (J.P.M.L 2001).  See Exhibit "A".  Because parallel actions like this occur, the need for an experienced jurist that can inspire and accommodate state/federal coordination becomes paramount to the successful conclusion of widespread litigation such as this.  Judge Fallon is such a jurist.  Indeed, Judge Fallon has already provided for such coordination of state and federal litigations.  *See, In Re: Chinese Drywall Products Liability Litigation*, MDL No. 2047, Joint Report No. 2 of Plaintiffs' and Defendants' Liaison Counsel at ¶ V (E.D. La.) (attached as Exhibit "B").

Defendants finally assert in their Second Supplemental Submission that, because a notice of deposition pursuant to 30(b)(6) issued for defendants' corporate designees who are located in Virginia to take place in Louisiana, this would be inconvenient and weighs against consolidation and coordination pursuant to § 1407.  However, defendants are again wrong.  Further, Plaintiffs'

Liaison Counsel has already negotiated the timing and location of the 30(b)(6) deposition that the defendants have referenced in a mutually agreeable fashion. Thus, the consolidation and coordination of the above matter in the Eastern District of Louisiana will not be inconvenient for their witnesses. Further, the federal judiciary will not be overburdened with similarly situated actions being litigated in numerous district courts with overlapping discovery.

In conclusion, this action should be coordinated and consolidated in the Eastern District of Louisiana with the other Chinese drywall cases.

Dated: 9/11/09

Respectfully submitted,

Arnold Levin, Esquire
Fred S. Longer, Esquire
Daniel Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Phone: (215) 592-1500
Fax: (215) 592-4663
*Counsel for Plaintiffs*

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
HAUSFELD LLP
1700 K Street, N.W.
Ste. 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, GA 30022
Phone: (214) 914-6128
*Co-Counsel for Plaintiffs*

Ervin A. Gonzalez
Patrick S. Montoya
COLSON HICKS EIDSON COLSON MATTHEWS
MARTINEZ GONZALEZ KALBAC & KANE
255 Aragon Avenue, 2nd Floor
Coral Gables, FL 33134
Phone: (305) 476-476-7400
Fax: (305) 476-7444
*Co-Counsel for Plaintiffs*

Richard Serpe
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 3120
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
*Co-Counsel for Plaintiffs*

Robert Gary
GARY, NAEGELE & THEADO, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-Counsel for Plaintiffs*

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of Plaintiffs' Response to

Defendants' Joint Supplemental Submission and Second Supplemental Submission of New

Evidence in Support of Motion to Vacate Conditional Transfer Order with Respect to *Michelle*

*Germano, et al v. Taishan Gypsum Co., Ltd, et al* and *Curtis Hinkley, et al v. Taishan Gypsum*

*Co. Ltd, et al* to be served this 11th day of September, 2009 by U.S. mail, postage prepaid, upon

the following:

**SEE ATTACHED MDL INVOLVED COUNSEL SERVICE LIST**

_____

**DANIEL C. LEVIN**

## INVOLVED COUNSEL LIST (EXCERPTED FROM CTO-1)

Curtis Hinkley, et al. v. Taishan Gypsum Co., Ltd., et al., E.D. North Carolina, C.A. No. 2;09-25
(Judge Louise Wood Flanagan)
Michelle Germano, et al. v. Taishan Gypsum Co., Ltd., et al., E.D. Virginia, C.A. No. 2:09-202
(Judge Mark S. Davis)

Theodore I. Brenner
BRENNER EVAN & MILLMAN PC
P.O. Box 470
Richmond, VA 23218

Thomas More Buckley
HEDRICK GARDNER KINCHELOE &
GAROFALO LLP
4011 Westchase Blvd.
Suite 300
Raleigh, NC 27607

John Franklin, III
TAYLOR & WALKER PC
555 Main Street
P.O. Box 3490
Norfolk, VA 23514

Russ M. Herman
HERMAN HERMAN KATZ & COTLAR LLP
820 O'Keefe Avenue
New Orleans, LA 70113-1116

J. Michael Malone
HENDREN & MALONE PLLC
4600 Marriott Drive
Suite 150
Raleigh, NC 27612

Kerry J. Miller
FRILOT LLC
1100 Poydras Street
Suite 3700
New Orleans, LA 70163-3700

Mark Charles Nanavati
SINNOTT NUCKOLS & LOGAN PC
13811 Village Mill Drive
Midlothian, VA 23114

Richard J. Serpe
LAW OFFICES OF RICHARD J SERPE
Crown Center
580 East Main Street
Suite 310
Norfolk, VA 23510-2322

Andrew A. Vanore, III
BROWN CRUMP VANORE & TIERNEY LLP
P.O. Box 1729
Raleigh, NC 27602