

28036308
Nov 13 2009
2:22PM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | :MDL NO. 2047<br>:Section L<br>: |
| This Document Relates to<br>Germano, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co. Ltd., et al. Case No. 2:09-cv-6687 (E.D. La.) | :JUDGE FALLON<br>:MAG. JUDGE WILKINSON |

**<u>VENTURE SUPPLY, INC. AND THE PORTER-BLAINE
CORPORATION'S MEMORANDUM IN OPPOSITION
TO THE PLAINTIFFS' STEERING COMMITTEE'S
MOTION TO COMPEL</u>**

Venture Supply, Inc. ("Venture") and The Porter-Blaine Corporation ("PB"), by counsel, submit the following memorandum in opposition to the Motion to Compel filed by the Plaintiffs' Steering Committee ("PSC").

## INTRODUCTION

A.   VIRGINIA LITIGATION BACKGROUND

In that the Virginia class action suit was only recently transferred to this Court, some background information is required.

1.   <u>The Germano Action</u>

Plaintiffs' counsel filed the <u>Germano</u> action in federal court in Norfolk, Virginia based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The sole basis for federal court subject matter jurisdiction was the presence of Taishan Gypsum Co., Ltd f/k/a Shandong Taihe

Dongxin Co., Ltd.[1] ("Taishan") as a defendant. Because Venture and PB believed that the federal court in Virginia lacked *in personam* jurisdiction over Taishan and that its presence in the action was solely to secure federal court jurisdiction, the defendants filed a motion to dismiss under Rule 12(b)(1) of the FRCP. Defendants pointed out that it is the affirmative duty of a federal court to inquire into its own subject matter jurisdiction and that this should be the first and foremost inquiry because if it lacked jurisdiction, everything it did would be void. Generally, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)(Court has duty to inquire into jurisdiction); see also, Gaines v. Baltimore & C.S.S. Co., 234 F. 786, 789 (E.D.S.C. 1916)(same); Mission Insurance Company v. Brown, 207 F. Supp. 818, 819-20 (W.D. Mo. 1962)(same). In addition, because most, if not all, of the claims asserted by the Plaintiffs failed under the substantive law of the Commonwealth of Virginia, the defendants filed a motion to dismiss under Rule 12(b)(6) of the FRCP.[2]

2. Other Actions Filed

Shortly after filing the Germano action, which was purportedly filed on behalf of every Virginia resident affected by the Chinese drywall, Plaintiffs' counsel filed a state court action on behalf of an individual Virginia homeowner- Tuan Nguyen and Colleen Nguyen v. Venture Supply, Inc., The Porter-Blaine Corp., Curb Appeal Home Builders, Inc. and Tobin Trading, Inc., Norfolk Circuit Court; Case No.: CL09-3105. Plaintiffs' counsel served discovery in the Nguyen action as noted in Exhibit A to the Plaintiffs' Motion to Compel. Venture and PB

---

[1] Plaintiffs allege that Taishan Gypsum Co., Ltd. is the new name for Shandong Taihe Dongxin Co., Ltd. Venture and PB have no knowledge in this regard and will assume, for the purposes of this motion only, that this is correct.
[2] The district court in Norfolk did not hold a hearing on these motions, probably because of the pendency of the Conditional Transfer Order issued by the Judicial Panel on Multi-District Litigation. These Motions are currently pending before this Court. Certainly if this Court lacks subject matter jurisdiction over this action or if the action fails to state a cause of action against Venture and PB, any discovery issues would become moot. In addition, Venture and PB should not have to incur the expense of participating in discovery if this action should be dismissed.

answered the discovery, providing thousands of documents requested by the Plaintiffs, including documents relating to the importation, purchase and shipments of the Chinese drywall, and all documents relating to the Nguyen household, including a project file which shows exactly how many Chinese drywall sheets are present in the Nguyen household.

Thereafter, Plaintiffs' counsel filed 50 individual state court lawsuits on behalf of separate homeowners. (See attached chart, Exhibit 1). In addition, they have filed (a) a class action suit on behalf of everyone in the State of North Carolina - <u>Curtis Hinkley, et al. v. Taishan Gypsum Co., Ltd, et al.</u> (currently pending before this Court) – and (b) a class action suit on behalf of everyone in the United States - <u>Gross v. Knauf Gips KG, et al.</u>, Case No. 09-6690, Eastern District of Louisiana. They have not served discovery on Venture and PB in any of these actions, nor have they requested any depositions of any parties.

### 3. Virginia State Bar Inquiry and Motion to Disqualify

Venture and PB, along with a co-defendant Tobin Trading, Inc., believed that there might be an ethical issue relating to the filing of class action suits and the simultaneous filing of individual state court actions, all seeking whatever funds are available from the defendants. Accordingly, they made an informal inquiry to the Virginia State Bar[3], which informally replied that Plaintiffs' counsel had a conflict which could not be resolved by consent. In addition, the suggestion was made that motions to disqualify be filed in the relevant actions.

This information was conveyed to Plaintiffs' counsel with a suggestion that they too contact the Virginia State Bar and inquire into the potential conflict. When Plaintiffs' counsel refused to do so, Venture and PB filed a Motion to Disqualify counsel, consistent with the

---

[3] The Virginia State Bar provides this service to all Virginia attorneys. The information provided is not binding but merely an opinion of counsel for the Bar and is based upon the facts provided to the Bar.

informal information obtained from the Bar. That Motion is currently pending before this Court[4], as well as in state court cases in which Plaintiffs' counsel appear as attorneys of record.[5]

    B.    PROCEEDINGS IN THE MDL

        1.    <u>Profile Forms</u>

This action was transferred to this Court on October 6, 2009. Venture complied with this Court's Order and served an Importer Profile Form on or about October 21, 2009. PB also diligently has sought to file a Profile Form; however, the Profile Form for "Contractors/Installers" is much different than other forms approved by this Court and seeks information about consulting experts and work-product material. Counsel has sought assistance from numerous parties, but has not received any answers with respect to this Profile Form. On November 9, 2009, Counsel sent Richard Serpe an email at his request on behalf of the PSC detailing the problems with the Contractor/Installer Profile Form (Exhibit 2). Counsel has not heard back from the PSC on this, but remains committed to comply with this Court's order with respect to Profile forms.[6]

        2.    "<u>Discovery Requests</u>"

On or around September 2, 2009, Venture and PB received a FRCP 30(b)(6) notice of deposition from the PSC. This was over one month before the Judicial Panel on Multi-District Litigation ordered the transfer of this action to this Court. Accordingly, Venture and PB were

---

[4] What is of interest is that the federal court in Norfolk did not hold hearings on any of the motions to dismiss filed by the defendants while the Conditional Transfer Order was pending. However, once the Motion to Disqualify Counsel was filed, the district court referred that motion to a magistrate for a hearing. Because of the unavailability of Plaintiffs' counsel, that hearing was not scheduled before the magistrate until October 9, 2009. However, the Judicial Panel for Multi-District Litigation ordered this action transferred to this Court on October 6, 2009. The hearing before the magistrate was, therefore, cancelled.

[5] The Motion to Disqualify filed in the <u>Nguyen</u> action was set for hearing this week – November 10, 2009. However, because of information voluntarily provided by counsel for Venture and PB relating to subcontractors, that Motion was continued upon request of Plaintiffs' counsel.

[6] Plaintiffs' counsel has been notified that there will be no new substantive information with PB's profile form than what was on Venture's profile form.

not parties to this action. Therefore, the "notice of deposition" was not authorized by the Rules and was of no effect (it would be like serving a notice of deposition on a witness without a subpoena). Plaintiffs' counsel was told of this by communication dated September 4, 2009. (See attached Exhibit 3)

In addition, the blanket notices of depositions sent by the PSC on September 2, 2009 to numerous parties were in violation of this Court's order staying discovery. Accordingly, they were all withdrawn by the PSC.

The PSC has not filed another FRCP 30(b)(6) notice of deposition on Venture or PB. Accordingly, there really is no issue before the Court with respect to a Motion to Compel. In addition, the PSC did not serve written discovery on Venture and PB until November 6, 2009 – five days before their Motion to Compel. Venture and PB have 30 days to respond to the interrogatories and requests for production of documents.[7] There is nothing to compel, therefore, as Venture and PB hopefully will be in a position to respond to these requests to the extent they are not otherwise objectionable.[8]

However, defense counsel has, since the beginning of the drywall litigation, been willing to work with Plaintiffs' counsel for the orderly preparation of all of the cases for trial. Accordingly, on October 30, 2009, counsel participated in a conference call. During that call, defense counsel learned that Plaintiffs' counsel was totally unaware that Venture had filed a

---

[7] Without authority, the discovery served on defendants on November 6, 2009, indicates that answers should be served within 7 days of service. Even assuming the PSC has the unilateral authority to supersede the requirements of the Federal Rules, the Plaintiffs' counsel did not even wait the 7 days to file their Motion to Compel!

[8] The PSC had previously served a master set of document requests on defendants. However, Plaintiffs' counsel and defense counsel agreed to turning the Nguyen discovery into MDL discovery for Venture and PB in lieu of answering the master document requests. The first set of discovery served on Venture and PB tracks the discovery issued and answered in Nguyen. Plaintiffs' counsel did not need for Venture or PB to re-produce the documents they had already produced in the Nguyen action. Defense counsel offered to produce project-specific files on every plaintiff represented by the Plaintiffs' counsel, whether those plaintiffs are named in the MDL or not (i.e. the 50 some plaintiffs in the state court actions). Even though no discovery requested this information, these were voluntarily sent to the Plaintiffs' counsel on November 9, 2009. (See attached as collectively Exhibit 4) These documents identify house-specific information of each plaintiff, including how many Chinese drywall sheets were used in their home.

Profile Form which included sales information relating to the drywall. (Exhibit E to Plaintiffs' Motion to Compel). While the conference call was going on, defense counsel e-mailed the sales information form to Plaintiffs' counsel although it had already been properly filed in accordance with this Court's Order. (See attached Exhibit 5) Obviously, Plaintiffs' counsel was anxious to get this information so that they could search for hundreds of additional clients.

It was only after this form was voluntarily provided to Plaintiffs' counsel did they begin making inquiries into Venture or PB's computer information. (See attached Exhibit 6). The sole purpose of this was to obtain more information than what appears on the sales form produced with Venture's Profile Form. And the sole purpose of obtaining that information has nothing to do with any of the 50 some individual clients that Plaintiffs' counsel represent, and clearly has nothing to do with any "bellweather" trial. It is patently designed so that the attorneys themselves may benefit by seeking additional clients to file suit.[9]

In response to these early November inquiry about computers, counsel has learned that Venture and PB used an off-site internet company to handle sales invoices, accounts receivables and account payable information. That off-site company has proprietary software protecting the information stored there. In addition, Venture has its server that served its office.[10]

---

[9] During the conference call on November 10, 2009 with counsel, Plaintiffs' counsel indicated that the sales form was relevant to show the number of drywall sheets in the Plaintiff's homes. However, Venture and PB voluntarily, and without a discovery request, produced the project file for every Plaintiff represented by the Plaintiffs' counsel, whether the Plaintiff is in the MDL or not. (See footnote 8 supra). These project files show exactly how many Chinese drywall sheets were delivered to each of the Plaintiffs' homes. (See, for example, Exhibit 8. The drywall labeled "Venture" are the drywall sheets imported from China).

[10] Because of the mass hysteria prompted by the media, Venture and PB, in business for decades, are no longer in business, had to lay-off over 50 employees, and were forced to auction off their assets to satisfy bank liens. The auction, occurring in June, 2009, included the companies' computers. However, the network server, which was backed-up, is available.

Accordingly, on November 9, 2009, Venture and PB formally hired a computer expert to gather and assimilate all electronic information which is stored, backed-up and secured.[11]  That expert is currently working on (a) what type of information is available; (b) how the information can be accessed and used (for example, apparently certain proprietary software must be purchased or used in accessing and using the data stored by the off-site internet company); (c) how the information can be physically produced to the plaintiffs; and (d) the categories of information available that will need to be reviewed for privilege or work product material prior to production.  Defense counsel fully intends to work with Plaintiffs' counsel on the production of computer information that is relevant and not privileged.  However, as noted above, Venture and PB's responses to discovery are not even due until December 6, 2009.  Therefore, Plaintiffs' counsel's motion in this regard is frivolous and designed to harass the defense.

As to the deposition of Venture and PB's corporate designee, this topic came up on a conference call with Plaintiffs' counsel on November 4, 2009 (seven days before the Motion to Compel was filed).  During that conference call, Plaintiffs' counsel requested a deposition of Venture and PB's representative and desired two back-to-back dates.  Plaintiffs' counsel suggested December 11th and 12th; however those dates were not available to defense counsel.  In reality, the only back-to-back dates available to defense counsel were December 28th, 29th, and 30th.  When Plaintiffs' counsel suggested that he did not desire to conduct the depositions between Christmas and New Years, defense counsel offered January 11th and 12th.  However, Plaintiffs' counsel indicated he was instructed by the PSC that the deposition had to occur in the

---

[11] Venture and PB had been searching for a computer expert since the issue was broached by Plaintiffs' counsel. (See Exhibit 7).

year 2009.[12]  Therefore, counsel agreed to tentatively schedule the deposition for December 29th and 30th.  It was tentative, because Plaintiffs' counsel needed to notify defense counsel in the state court cases and secure their agreement.[13]

Instead, two days later, Plaintiffs' counsel sent an email saying that the PSC desired a date earlier than that to which counsel had agreed.  (Page 2 of Exhibit D to Motion to Compel)  This was the subject of emails that are attached to Plaintiffs' Motion to Compel.  (Page 1 of Exhibit D to Motion to Compel)  It was also the subject of a telephone conference between counsel on November 10, 2009.  As detailed in those emails, defense counsel is willing to offer the corporate representative at any time convenient for counsel, as long as the representative is not subjected to being deposed again at some later time.[14]  Under the circumstances, therefore, there really is nothing to "compel".

### 3.   Plaintiffs' Conduct in Discovery and "Bellweather" Trials

Other than responses in the Nguyen action which relate solely to the claims of the Nguyen family, Plaintiffs have refused to answer any discovery in any of the state court actions.  Over 20 motions to compel have been filed to date.  In addition, in the MDL the Plaintiffs have taken the position that the only discovery that is relevant is that geared toward the bellweather property damage trials that this Court desires to start in January.  (See attached correspondence, Exhibit 10).  Apparently, according to the DSC's Motion to Compel, the DSC agreed that the

---

[12] Plaintiffs' counsel also mentioned that he was participating in the bellweather trials during that time because he is on the "Trial Committee", even though they did not involve any Virginia cases. (See Page 1 of Exhibit E to the Motion to Compel).

[13] This is all detailed in the e-mail attached as Exhibit D to the Plaintiffs' Motion to Compel.

[14] Plaintiffs' counsel in the Motion to Compel allege that the defense imposed "conditions" on the production of electronic information or the deposition of a corporate representative.  This is not accurate.  The e-mail communication on Page 1 of Exhibit E to the Motion to Compel merely requests reciprocity with respect to discovery.  No where does the e-mail state that the discovery sought by the defense is a condition precedent to the discovery sought by the Plaintiffs.  In fact, as to the reference relating to the computer files of the Plaintiffs, the e-mail clearly states "…at some point in time."  Although not necessary, this was explained to Plaintiffs' counsel during the conference call of November 10, 2009, before they filed their Motion to Compel.  It is, therefore, unclear why they make this allegation.

PSC only had to answer discovery with respect to non personal injury plaintiffs. However, according to that motion, the Plaintiffs' counsel have not even answered that narrowed discovery.

The issue of the bellweather trials raised in the Motion to Compel is a complete red herring. Plaintiffs' counsel informed defense counsel twice that none of the Virginia cases would ever be a bellweather trial, because he was not willing to waive the personal injury claims.[15] In fact, the named plaintiffs – Germano, Jackson and Dunnaway – have all filed profile forms claiming personal injuries. (See attached Exhibit 11 – redacted pursuant to FRCP Rule 5.2 with respect to birth dates). Moreover, the Germano action is a class action, which has not yet even been certified. It is not an individual action on behalf of Ms. Germano, the Jackons or the Dunnaways, because, if it was, there would be no federal court subject matter jurisdiction. Therefore, how could it possibly be a bellweather trial? In addition, because of the jurisdictional issues addressed in defense's 12(b)(6) motion and the Virginia State law issues addressed in their 12(b)(6) motions, among other issues, the defense will never consent to waive venue of the trials. Finally, as a more practical matter, this action was just transferred to this Court, while others have been pending for some time.

Therefore, the defense has consistently raised the issue of the urgency and timing of the discovery requests, which really began within the last two weeks. Should not the PSC be focusing on the bellweather cases? If they really take the position as expressed in Exhibit 10, why is any of the Virginia discovery on the fast track?[16]

---

[15] The first conversation about this was at the MDL inspection of the Germano property in Norfolk in the presence of counsel for Tobin Trading, Inc. The second conversation was during the October 30, 2009, conference call among counsel.

[16] In fact, defense counsel sent an e-mail the day the Motion to Compel was filed, before the time of the actual filing, asking why the defense's position was inconsistent with this position. (Exhibit 12).

It becomes obvious upon reflection what this is all about. It is all focused on the list of sales, attached as Exhibit E to the Motion to Compel. Rather than advancing the interests of their clients; rather than focusing discovery on the bellweather trials; and rather than seeking truly relevant discovery, Plaintiffs' counsel is intent on securing more information on sales of drywall to persons who are not their clients so that those people can be contacted and signed up as new clients. Only this can explain the feigned urgency with which they have acted. For this reason, and for the reason that the Plaintiffs counsel has filed a motion to compel some five days after serving discovery on the defendants, the Motion should be denied.

   4.  <u>Summary and Timeline</u>

This timeline reflects events relevant to the Motion to Compel:

Tuesday, October 6, 2009 – Case transferred to this Court

Wednesday, October 21, 2009 – Venture serves its Profile Form

Friday, October 30, 2009 – Conference call with counsel, wherein parties agreed that the Plaintiffs would ask the <u>Nguyen</u> discovery and in which plaintiffs' counsel learned of the Profile Form and the sales information. After being provided this form, questions started to arise about Venture and PB's computer files, and counsel began to look into that matter to respond including a search for a computer expert.

Wednesday, November 4, 2009 – Conference call with counsel, in which parties tentatively agreed to the corporate deposition of Venture and PB for December 29th and 30th.

Friday, November 6, 2009 – First set of discovery served on Venture and PB (Answers due December 6, 2009)

>    Friday, November 6, 2009 – Email from Plaintiffs counsel that the PSC wanted the corporate deposition sooner. (Page 2 of Exhibit D to Motion to Compel)
>
>    Monday, November 9, 2009 – Emails exchanged by counsel regarding the corporate deposition. (Page 1 of Exhibit D to Motion to Compel).
>
>    Monday, November 9, 2009 – Computer expert formally hired by Venture and PB
>
>    Tuesday, November 10, 2009 – Telephone conference with counsel on corporate deposition, and Plaintiffs' counsel is advised that a computer expert was hired and working on the electronic information.
>
>    Wednesday, November 11, 2009 – Motion to Compel filed (five days after serving discovery).

## ARGUMENT

Rule 37 of the FRCP is designed to provide the appropriate remedy when a party either (a) fails to answer discovery or produce a witness; or (b) improperly answers discovery. It is not designed to "anticipate" that a party may not answer discovery appropriately or may not produce a witness.

As noted above, with respect to the electronic discovery, the request for such information only came formally by the discovery served on November 6, 2009. Five days later, the Plaintiffs filed a motion to compel.

As to the deposition, Plaintiffs have not formally served a notice of deposition on Venture or PB.[17] Nevertheless, defense counsel has been working with the Plaintiffs' counsel on scheduling this deposition. An original date of December 29th and 30th was tentatively set by the

---

[17] The one served on numerous defendants in September, 2009, was before Venture and PB were parties to this action. Accordingly, it was ineffectual. In addition, this was withdrawn by the PSC when they recognized they were in violation of this Court's Order staying discovery.

parties, and then the PSC instructed Virginia counsel to withdraw the consent for that date and push for an earlier date. Venture and PB are fine with an earlier date. However, they do not want their designee exposed to multiple depositions. If the PSC wants to take the deposition in November, fine. But that should be their only chance to do so.

Venture and PB do wish to state formally, though, that there are several motions that should be addressed before any discovery matters go forward. First and foremost would probably be the disqualification motion pending before this Court. Second should be the Rule 12(b)(1) motion relating to the subject matter jurisdiction of this Court. Should the Court not have subject matter jurisdiction, everything else done in this matter would be for naught.[18] Finally, the Rule 12(b)(6) motions should be heard and ruled upon. A ruling on the legal issues before the Court will clearly shape the discovery in this action. For example, if the defense is correct that under Virginia law these actions are solely ones for personal injury and damage to other property like computers, this would direct the type of discovery that could go forward.

As a practical matter, the discovery issues with Venture and PB are not relevant to the bellweather trials that should be the focus of the parties and the Court. There is no indication that defense counsel has either (a) violated the discovery rules; or (b) not been willing to work with counsel on discovery matters. Accordingly, the Motion to Compel should be denied.

**WHEREFORE**, Venture and PB request that the Motion to Compel be denied. They also request an award of fees and costs, including flight and hotel expenses if necessary, incurred in defending this Motion under Rule 37(a)(5)(B).

---

[18] Venture and PB are named as a defendant in the North Carolina-based Hinkley class action, which was filed under the Class Action Fairness Act of 2005. (Hinkley Complaint, ¶ 1), currently pending before this Court. That action requires 100 or more plaintiffs. 28 U.S.C. § 1332(d). Although two plaintiffs are listed as filing the action, the action so far only relates to one home, which the two plaintiffs own together. Plaintiffs' counsel has filed separate state court actions on behalf of all of their clients (See Exhibit 1). To the best of the defense's knowledge, they have filed and served no actions in North Carolina on behalf of individual homeowners. Accordingly, it is extremely doubtful that this Court has subject matter jurisdiction over the Hinkley case. The defense would request class certification discovery and a ruling on that action.

This the 13th day of November, 2009.

    Respectfully submitted,

By: _____/s/_____

Mark C. Nanavati, Esquire (VSB #38709)
Kenneth F. Hardt, Esquire (VSB # 23966)
Sinnott, Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 378-7600 ext. 3311 or 3316
(804) 378-2610 (fax)
khardt@snllaw.com
mnanavati@snllaw.com
*Attorneys for Defendants Venture Supply Inc.
and The Porter-Blaine Corporation*

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Notice of Appearance and Request for Service of All Documents and Pleadings has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 13th day of November, 2009.

_____/s/_____

Kenneth F. Hardt