# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |  |
|---|---|---|
| MICHELLE GERMANO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) Civil Action No.: 2:09cv202 | |
| | ) | |
| TAISHAN GYPSUM CO., LTD., et al. | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' JOINT RESPONSE IN OPPOSITION
TO THE PORTER-BLAINE CORPORATION AND
VENTURE SUPPLY, INC.'S RULE 12(b)(1) AND 12(b)(6) MOTIONS

Defendant, the Porter-Blaine Corporation ("Porter-Blaine"), and Defendant, Venture Supply, Inc. ("Venture")(collectively "Movants"), filed two separate motions requesting that the Court dismiss all claims against them pursuant to Rule 12(b)(1) and 12(b)(6).  In their motions, Movants challenge each and every theory for liability that has been asserted against them (negligence, negligence per se, breach of express and/or implied warranty, private nuisance, unjust enrichment, violation of the Virginia Consumer Protection Act, and equitable/injunctive relief and medical monitoring).

The thrust of the Movants' motions is that the Plaintiffs cannot assert tort claims against Porter-Blaine and Venture since the class action complaint (the "Complaint") seeks damages for economic loss only.  This argument plainly fails since the Complaint alleges facts that place the Plaintiffs' claims squarely within a recognized exception to the economic loss rule, *i.e.*, where there are injuries to "other property" and personal injuries.  Such damages are not the type of injury to contractual expectations that are precluded by the economic loss doctrine.

1

Remarkably, movants also challenge the plaintiffs' contractual claims. Although it initially appears that movants' challenges to plaintiffs' tort theories on economic loss grounds concede the viability of the contract based claims,[1] Movants take the position that Plaintiffs' warranty claims fail since the defective drywall at issue is not a "good" within the meaning of the UCC. This argument is also incorrect. Between their contractual and tort defenses, Movants' are really arguing that a party who supplies and/or installs a defective building material may never be held liable to an end purchaser. This self-serving and convenient attempt to escape liability should be rejected as being at odds with basic principles of justice.

As discussed below, Movants' motion to dismiss should be denied since each and every challenge to the Complaint is infirm.

## I.   FACTUAL BACKGROUND

This is a class action of significant local, national and international importance.[2] The representative plaintiffs, Michelle Germano, Dennis Jackson, Sharon Jackson, Jason Dunaway, Lisa Dunaway (hereafter the "Germano Plaintiffs" or "Plaintiffs") instituted litigation

---

[1] Movants asserted that, "The Virginia Supreme Court has made clear that in this situation the parties are limited to their contractual rights and may not turn a contract action into a tort action." Movants' Motion to Dismiss at 3 [hereafter "Def. Brf."].

[2] The Judicial Panel on Multidistrict Litigation ("JPML") has consolidated Chinese Drywall litigation before Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana. *See In re Chinese-Manufactured Drywall Products Liability Litigation,* WL 1725973 (JPML June 15, 2009). Pursuant to CTO-1, the JPML conditionally transferred the instant action to the MDL Court as a tag-along action. *See In re Chinese-Manufactured Drywall Products Liability Litigation,* MDL 2047, CTO-1 (JPML June 18, 2009). Although the Defendants are expected to challenge the CTO-1, it is also expected that this case will ultimately be transferred to the MDL Court. Accordingly, it is respectfully submitted that the Court should defer any rulings on Movants' 12(b)(1) and 12(b)(6) motions until after the issue of transfer has been fully resolved.

against the manufacturer of their defective drywall, their American supplier/installer and the plaintiffs' homebuilders to address the crisis facing these homeowners whose lives were impacted and homes have been damaged through the installation of a defective product constituting the very walls of their homes.

The plaintiffs seek to represent a class of "all owners and residents of residential homes in the Commonwealth of Virginia containing drywall manufactured, sold, distributed, and/or supplied by Taishan Gypsum Co., Ltd. ("Taishan") and/or Venture Supply, Inc."  Complaint ¶29 [hereafter "Comp.¶__"].  The class representatives also seek to represent a subclass consisting of "[a]ll owners and residents of residential homes in the Commonwealth of Virginia containing drywall built and/or installed by Harbor Walk Development LLC and/or Porter-Blaine Corp." Comp.¶29.

The essence of the Germano Plaintiffs' claims is that the drywall installed by Defendant Porter Blaine or supplied by Defendant Venture to be used in the homes of Plaintiffs and the Plaintiff Class Members is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious gases and causes corrosion ("the Defect") to personal property such as air-conditioner and refrigerator coils, faucets, utensils, electrical wiring, copper, electrical appliances and other metal surfaces and property, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").  Comp.¶¶21-22.  The Complaint also alleges that the Defect has caused personal injuries to Plaintiffs and the Class Members.  Comp.¶¶23-28.

As a result of each of the Defendants' conduct, Plaintiffs and Class Members have incurred or will incur tens of thousands of dollars in damages including, but not limited to: costs

of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries. Comp. ¶¶25-27.

Movants are responsible for the Plaintiffs' damages. Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some plaintiffs and Class Members or to builders for use in plaintiffs' homes. Comp. ¶14. Porter-Blaine is one of Venture's drywall installation contractors and installed defective drywall in the Harbor Walk homes, and in other homes, which has resulted in damages to Plaintiffs. Comp. ¶18.

The Complaint asserts claims against Venture and Porter-Blaine under Negligence (Count I); Negligence Per Se (Count II); Breach of Express and/or Implied Warranties (Count III); Private Nuisance (Count V); Unjust Enrichment (Count VI); Violation of the Virginia Consumer Protection Act (Count VII); and for Equitable and Injunctive relief and Medical Monitoring (Count VIII). Movants challenge each and every claim that has been asserted against them. As explained below, Movants' arguments are without merit.

## II.   LEGAL STANDARD.

This Court recently described the Rule 12(b)(6) standard for dismissal of claims as follows:

> A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." Although

4

> the truth of the facts alleged is assumed, and reasonable inferences
> are drawn in the plaintiffs favor, courts are not bound by the "legal
> conclusions drawn from the facts" and "need not accept as true
> unwarranted inferences, unreasonable conclusions, or arguments."
> Ultimately, a complaint is sufficient if it provides the defendant
> sufficient notice of both what the claim is and the grounds on
> which the claim rests, such that the plaintiff "raises] a right to
> relief above the speculative level."

*See Western Refining Yorktown, Inc. v. BP Corporation North America Inc.*, 2009 WL 1468483,

*2 (E.D.Va. May 22, 2009) (Davis, J.)(citations omitted).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is

reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule

12(b)(6). *See Yousuf v. Samantar*, 2007 WL 2220576, * 7 (E.D.Va. 2007), *rev'd on other*

*grounds*, 552 F.3d 371 (4th Cir. 2009).

## III.   ARGUMENT.

### A.   Dismissal Under Rule 12(b)(1) is Improper.

Federal courts are courts of limited jurisdiction, possessing only that power authorized by

the Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994). A defendant may move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss

an action because the court lacks subject matter jurisdiction to hear and decide the case before it.

The burden of proving subject matter jurisdiction rests upon the party that seeks to invoke the

court's authority. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d

765, 768 (4th Cir. 1991). When a defendant presents other defenses in addition to challenging the

subject matter jurisdiction of the court, the question of subject matter jurisdiction must be

decided first, as it affects the court's very power to hear the case. *See Owens-Illinois, Inc. v.*

*Meade*, 186 F.3d 435, 442 n. 4 (4th Cir. 1999). In considering whether subject matter jurisdiction

exists, the court must determine whether the plaintiff's allegations, standing alone and taken as true, establish jurisdiction and a meritorious cause of action. *Dickey v. Greene*, 729 F.2d 957, 958 (4th Cir. 1984). If the court determines that it lacks subject matter jurisdiction, the case must be dismissed. *See* Fed. R.Civ. P. 12(h)(3).

Movants devote less than a page of their brief to the argument that the claims against them should be dismissed under Rule 12(b)(1). Movants speculate that the Court does not have personal jurisdiction over Taishan and, thus, jurisdiction is improper under 28 U.S.C. § 1332(d), claiming diversity jurisdiction is otherwise lacking. Notwithstanding this bold assertion, Movants leave both the Court and the Plaintiffs guessing as to why the Court lacks personal jurisdiction over Taishan.

The Complaint plainly alleges, and Movants do not dispute, that Taishan did business in the Commonwealth of Virginia and "designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold the defective drywall at issue in this case." *See* Comp.¶¶ 9 and 10. Accordingly, it would seem obvious that the complaint has made sufficient allegations of minimum contacts for purposes of satisfying the requirements of *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano Count*, 480 U.S. 102 (1987), and its progeny. Movants' argument concerning dismissal under Rule 12(b)(1) is based upon conjecture and should be denied since the allegations in the Complaint, standing alone and taken as true, establish jurisdiction and a meritorious cause of action. *See Dickey v. Greene*, 729 F.2d at 958.

**B.**   **Dismissal Under Rule 12(b)(6) is Improper.**

     **1.**   **Counts I and II (The Negligence and Negligence Per Se Claims) Are not Precluded by the Economic Loss Rule.**

Contrary to the assertions in Movants' joint motion, the Complaint seeks damages well

6

beyond mere "disappointed economic expectations". Def. Brf. at 4. Generally speaking, the economic loss rule is applied by Virginia courts in situations where a party is pursuing a claim solely for damages to a product itself. In such cases, Virginia courts will apply the doctrine in such a manner as to restrict the claims to the realm of contract law. "When a plaintiff alleges and proves nothing more than disappointed economic expectations, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Loverde v. Building Management, Inc.*, 2006 WL 1994576, * 6 (Va.Cir.Ct. 2006) (*citing Sensenbrener v. Rust, Orling & Neale Architects, Inc., et al.*, 374 S.E.2d 55 (Va. 1988)).

As noted above, the Complaint alleges that the exposure to the defective drywall has caused damages to "other property" as well as personal injuries and, thus, is not subject to dismissal. *See* Comp. ¶ 25 ("the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes and/or caused personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm."); ¶ 28 ("Plaintiffs have been exposed to above-background levels of toxic gases and suffered personal injury, have been placed at an increased risk of disease"). *See also* Comp.¶¶ 22 and 23. The economic loss rule "provides that absent privity between the parties, an action for negligent performance of a contractual obligation will not lie if there is neither injury to person or to property." *Macconkey v. F.J. Matter Design, Inc.*, 2000 WL 33594996, * 4 (Va.Cir.Ct. 2000) (*citing SensenBrenner*). Where, as here, the Complaint alleges injury to person and "other property," Virginia law recognizes that more than mere "disappointed economic expectations" has been asserted for purposes of allowing negligence claims to proceed.

So far as Movants suggest that a party may never pursue a tort claim where the duties at issue arise by virtue of a contractual relationship, they overlook the applicable exceptions to the economic loss rule in cases involving personal injury and/or the creation of an unreasonably dangerous condition.  "[T]he [Virginia] Supreme Court has recognized the state's policy interest in protecting its citizens, stating, albeit in *obiter dicta*, that personal safety and freedom from physical harm are interests which are entitled to protection under tort law, even in relationships originating from contracts."  *Gonella v. Lumbermens Mutual Casualty Company*, 2004 WL 836031, * 6 (Va.Cir.Ct. 2004) (*citing Blake Construction Co., Inc. v. Alley*, 353 S.E.2d 724, 726 (Va. 1987) ("where personal injury is threatened, a duty in negligence has been readily found"). *See also Rogers v. Dow Agrosciencse, LLC*, 2006 WL 3147393, * 2 (W.D.Va. 2006) (observing that under Virginia law, "[t]he bright line between tort and contract dims where one has a contractual duty but the performance of that duty creates a risk to the well-being of other's persons or property."); *Commonwealth Park Suites Hotel v. Armada/Hoffler Constr.Co.*, 1994 WL 1031342, * 6 (Va.Cir.Ct. 1994) ("[W]here the safety of persons or property is involved, or where physical harm is threatened, the Supreme Court [of Virginia] must have intended that where such allegations are made, a cause of action does exist.").

Indeed, in a factually similar case, the court in *Gonella* overruled a contractor's demurrer on a claim stemming from negligent installation of a roof.  In so ruling, the court observed that the creation of an unreasonably dangerous condition remains actionable in tort:

> Although this court fully agrees with the rationale underlying the Supreme Court of Virginia's decisions holding that breach of contract cases should not inevitably lead to litigation also sounding in tort, the court declines to extend this rationale to preclude a personal injury claim by someone claiming serious injury arising from a contracting party's creation of an unreasonably dangerous

condition.

*Gonella*, 2004 Wl 836031, * 6.[3]

Thus, contrary to Movant's repeated assertions, the negligence and negligence per se

claims are not precluded by virtue of the fact that the Plaintiffs' underlying relationship is

contractual in nature. While originally contractual in nature, the plaintiffs' relationship with the

defendants has changed by virtue of Movants' conduct (*i.e.*, since Movants' conduct has resulted

in personal injuries and/or the creation of unreasonably dangerous conditions in Plaintiffs'

homes). This transformation is sufficient for purposes of allowing Plaintiffs to proceed under

their negligence and negligence per se theories.[4]

------

[3] *See also Meng v. The Drees Company*, 2009 WL 798055 (Va.Cir.Ct. 2009) (rejecting economic loss doctrine defense by contractor whose negligent construction created an unsafe condition); *Cinnaminson Tp. Bd. Of Edu. v. U.S. Gypsum Co.*, 552 F.Supp. 855, 859 (D.N.J. 1982) ("The case does not primarily involve a problem with the product which mandates its replacement or repair in order to perform its function, or a loss of profit stemming from a defect in the product's performance, but rather the replacement of the product because of a grave personal safety risk.").

[4] Movants argue that any damages the defective drywall caused to the homes of class members and/or subclass members does not constitute damage to "other property" within the meaning of the economic loss rule because the drywall should be considered part of the structure that was purchased from the developer. According to the Movants, since the "package" purchased from the developer included the defective drywall, any damage the drywall caused to the rest of the structure would constitute mere damage to the product itself and would therefore be non-compensable in tort. Apart from overlooking the allegations of the Complaint that controvert this theory, this argument has no application to class members and/or subclass members who did not purchase their homes from a developer such as Harbor Walk. For instance, the class definition includes all owners of residential homes containing defective drywall sold or supplied by Venture and the subclass definition includes all owners of residential homes with defective drywall installed by Porter-Blaine. Naturally, many persons meeting these definitions did not purchase a "package" from a developer and, thus, purchased the defective drywall separate and apart from the purchase of their home.

For such plaintiffs, the reasoning of *USAA Property & Casualty Insurance Company v.*

(continued...)

9

Accordingly, the negligence and negligence per se claims should not be dismissed under the economic loss rule.

### 2.   Count II  Properly Asserts a Negligence Per Se Claim.

Plaintiffs have properly pled negligence per se consistent with the notice pleading requirement of Fed.R.Civ.P. 8.  That is, the Complaint alleges that Movants breached statutory duties that were owed to Plaintiffs and Class Members.  *See* Comp.¶¶ 49-53.  While the

---

[4](...continued)

*Armstrong Air Conditioning, Inc.*, 2004 WL 2331290 (Va.Cir.Ct. 2004) is instructive.  In *USAA Property*, the court overruled a demurrer challenging the plaintiff's complaint as improperly asserting claims prohibited by the economic loss doctrine.  The plaintiff in *USAA Property* was an insurance company seeking to pursue a subrogation claim after it had compensated its insureds, the Cooks, for damages from a fire in their home.  According to the court, the "Cooks owned their home when a defectively manufactured or defectively installed oil burning furnace was sold by another defendant, Griffith Consumers, in their residence."  *Id.* at * 1.  The other defendant, Michel, had supplied the furnace to Griffith Consumers.  *Id.*  In rejecting the argument that the economic loss rule prevented the plaintiffs from recovery under a tort theory, the court stated as follows:

> The decisive issue here is whether the defective product was the Cooks' residence for which the furnace was a defective part, or whether the product was only the oil burning furnace that harmed the Cooks' other property, the residence.  The plaintiff's motion for judgment plainly demonstrates that it was the latter.  Accordingly, the product, the oil burning furnace, did not *injure itself* as was the case in *Sensenbrenner*, but rather injured other property, not the subject of the oil burning furnace contract.

*USAA Property*, 2004 WL 2331290, * 1.

The logic of *USAA Property* applies to those class members and/or subclass members who were directly involved in the purchase of the drywall from Venture and/or contracted with Porter-Blaine for the installation of the drywall in a new home.  For such consumers, the defective product cannot be the home itself since it was the drywall that caused harm to the remaining structure, *i.e.*, the drywall did not just cause damage to itself but to "other property."  Therefore, any damage caused to their homes would *ipso facto* meet the "other property" exception to the economic loss rule.

Complaint does not specify the statutory duties that were breached, during discovery Plaintiffs can be asked to identify all statutory duties that Movants failed to observe.[5]  Additional pleading is unnecessary and exceeds the mandate of Rule 8.

Should the Court disagree and find that further pleading is necessary, leave to amend for purposes of pleading the statutory duties that were violated should be afforded.  Should leave to amend be denied, at most Count II should only be dismissed *without* prejudice.

### 3.     Count III Properly Asserts a Breach of Warranty Claim.

Movants contend that Count III fails to state a claim for breach of either the implied warranty of merchantability or the implied warranty of fitness for a particular purpose. Movants' joint motion assumes Plaintiffs are limiting their warranty claims to those under the UCC and, therefore, only points to case law suggesting the drywall is not a "good" within the meaning of the UCC since it was incorporated into real property.  Even assuming this assertion is accurate with regard to UCC warranty claims generally (which it is not), Movants fail to distinguish between UCC warranty claims and those available under common law.

In *Harris v. Aluminum Co. of America*, 550 F.Supp. 1024, 1026-27 (W.D.Va. 1982), the court determined that it was required to evaluate warranty claims under common law even if such claims were not available under the UCC.  In so ruling, the court observed:

> Coca-Cola's other arguments in support of this motion do, however, seem to have merit as it is difficult to fit plaintiff's allegations within a literal reading of Va.Code §§ 8.2-314 and 315.

---

[5] For example, it is submitted that certain of the statutory duties that were breached are those established by the Virginia Building Code.  *See* Virginia Code § 36-99.  It also appears there were certain breaches of the implied warranty that a new home be fit for habitation.  *See* Va.Code § 55-70.1(B).

Nevertheless, Comment 2 to Code §8.2-313 notes that "the warranty sections of [Article 2] are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined ... to sales contracts." Thus, even if plaintiff's allegations do not state a claim upon which relief can be granted under VA.Code §§ 8.2-314 and -315, this court must also consider whether plaintiff's allegations are sufficient to state a common law implied warranty claim under Virginia law before ruling on Coca-Cola's Rule 12(b)(6) motion.

Although research indicates that the Supreme Court of Virginia has never addressed this question, there is authority holding that implied warranty principles do extend to franchisors who promote the sale of soft drink products but do not actually manufacture or sell the product.

\*      \*      \*

By analogy, if a soft drink package was unreasonably dangerous for its ordinary use, and that unreasonably dangerous condition existed when the bottling requirements of the soft drink package were under the franchisors's control, then implied warranty liability would lie against the franchisors. Accordingly, Coca-Cola's motion to dismiss plaintiff's implied warranty allegations for failure to state a claim upon which relief can be granted under Virginia law will be denied.

*Harris*, 550 F.Supp. at 1026-27.[6]  *See also Harrison's Moving & Storage Co. v. Princess Anne Paving Corp*, 2002 WL 32075218, \*3 (Va.Cir.Ct. 2002) (acknowledging that "certain common law warranties that are similar to the UCC have been applied to construction contracts.") (*citing Hall v. McLeod*, 62 S.E.2d 42, 45 (Va. 1950).

The common law warranty in building and construction contracts implies that the building shall be erected in a reasonably good and workmanlike manner and when completed

---

[6] *See also* Va.Code § 55-70.1(C) ("Such warranties [on the sale of new homes] are in addition to, and not in lieu of, any other express or implied warranties pertaining to the dwelling, its materials or fixtures.").

shall be reasonably fit for the intended purpose. *Hall*, 62 S.E.2d at 45. Plaintiffs have well

articulated facts to support that the defective Chinese drywall has rendered their homes not

reasonably fit for their intended purpose. While Movants point to case law suggesting drywall is

not a "good" within the UCC, they fail to present any analogous case law in the context of

common law warranties. Plaintiffs are not aware of any such cases. Accordingly, Movants have

not established that they are entitled to dismissal of the Plaintiffs' common law warranty claims.

Movants' assertion that they are entitled to dismissal on the UCC warranty claims is also

suspect. While Movants reference several cases holding that articles incorporated into real

property lose their identity as "goods" within the meaning of the UCC, one highly persuasive

case rejected this very argument under analogous factual circumstances.[7] In *Stoney v. Franklin*,

---

[7] Even if the Court is inclined to accept Movants' argument that articles incorporated into
realty are not "goods" within the meaning of the UCC, this determination should not end the
Court's inquiry. For instance, in *French v. York Int'l Corp.*, 2007 WL 6006671, * 2 (Va.Cir.Ct.
2007), the court rejected a similar argument with regard to an air conditioning unit that was
included in a new home that had been purchased by the plaintiffs. In so ruling, the court
observed as follows:

> However, it has been suggested that certain items incorporated into
> a home may retain their character as "goods" subject to the UCC,
> including sliding glass doors, windows and screens, and carpet.
> *See Bay Point*, 54 Va. Cir. at 434 ("[T]he Court is of the opinion
> that sliding glass doors maintain their character as 'goods' much
> like windows and screens maintain their character as 'goods.'"),
> 436 (" '[C]arpet'... maintains a distinct character as a good and is
> incorporated into the realty in a different context than plywood or
> [siding]."). Indeed, one court has expressly suggested that an air
> conditioning unit maintains its character as a "good" even when
> incorporated into real property. *Winchester Homes, Inc.*, 30
> Va.Cir. at 30 n. 3 ("Home appliances, such as dishwashers,
> refrigerators or air conditioning units, may remain 'goods' under
> the UCC").

(continued...)

13

2001 WL 683963 (Va.Cir.Ct. 2001), the plaintiffs had asserted claims against a contractor they

hired to build a house and against the manufacturers and assemblers of defective building

materials. In ruling on the various demurrers, the court rejected an argument that an exterior

insulation finish system (EIFS) installed on the exterior of plaintiffs' home had lost its identity as

a good within the meaning of the UCC.[8] The court reasoned as follows:

> This analysis is certainly right, as far as it goes-but it only goes so
> far. It proves that the UCC does not apply to the sale of the
> residence because it constitutes both a services contract and a sale
> of an improvement to realty. And, for that reason, the plaintiffs
> cannot sue the builder for breach of any UCC implied warranties.
> In this case, however, no such claim has been asserted. Instead,
> the plaintiffs seek to enforce the implied warranties made by the
> manufacturers and assemblers of the building products. Those
> transactions clearly involved sales of goods, not contracts for
> services or real estate. Under Va. Code Ann. § 8.2-105(1), goods
> exist if they "are movable at the time of identification to the
> contract of sale." In context, the "contract of sale" identifying the
> goods refers to the sale involving the seller that made the implied
> warranty not simply the party with whom the claimant contracted.

*Stoney*, 2001 WL 683963, * 8.

--------------------------------

[7](...continued)
*French*, 2007 WL 6006671, * 2. Accordingly, even under the interpretation being advocated by
Movants, *French* suggests that drywall may have retained its character as a "good"
notwithstanding that it has been incorporated into class members' homes.

[8] The court in *Stoney* recognized that the economic loss rule had no application "to the
plaintiffs' claims for breach of implied warranty of merchantability and fitness for a particular
purpose." *Stoney*, 2001 WL 683963, * 6. The court also rejected an argument that the lack of
privity between the plaintiffs and the upstream suppliers of EIFS precluded a direct damages
claim. *Id. See also Rogers v. Dow Agrosciencse, LLC*, 2006 WL 3147393, * 7 Fn. 4 (W.D.Va.
2006) ("Under the anti-privity statute, a remote user may stand in the shoes of the first buyer in
the chain of commerce who received the goods from the seller along with the warranty."").
Although Movants do not challenge Plaintiffs' warranty claims on either of these grounds, it is
noteworthy that neither the economic loss rule, nor the lack of contractual privity imposes any
restrictions on Plaintiffs warranty claims. *See* Va. Code Ann. § 8.2-318 (eliminating privity
requirement for warranty claims).

Thus, the court did not limit the plaintiff's claims to the point in time when they acquired possession of their home from the general contractor (*i.e.*, at this point in time the defective housing materials had been incorporated into the realty and, thus, arguably were no longer "goods" within the meaning of the UCC). The court, instead, looked to the point in time when the manufacturers and assemblers had contracted with the general contractor (*i.e.*, at this point in time the building materials were movable and clearly qualified as "goods" within the meaning of the UCC). In reaching this decision, the Court rejected the reasoning of *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 1992 WL 884933 (Va.Cir.Ct. 1992), one of the cases heavily relied upon by Movants. *Stoney*, 2001 WL 683963, * 10 ("The reasoning of *Winchester Homes* seems to stand on its own shoulders. To begin with, the task of a court interpreting a statute is to apply its plain meaning. Once it became clear (as it did in *Winchester Homes*) that § 8.2-102's transaction in-goods requirement did not displace the anti-privity statute, that observation should have ended the analysis."). As the court in *Stoney* pointed out, the *Winchester Homes* court acknowledged that its reasoning was "not self-evident" and that the UCC itself did not compel its conclusion. *Id.* at 9.

It is respectfully submitted that the position adopted by the court in *Stoney* represents the superior position concerning the application of the UCC to transactions involving building materials that are incorporated into a finished structure. This reasoning is not only consistent with the plain text of the UCC but would also impose accountability upon those entities that supplied and installed the defective building materials who are in the best position to factor in the real costs of the materials they purvey. *See* Va.Prac.Products Liability § 4:2 ("As between the blameless user and the blameless manufacturer, liability [should be] imposed on the

15

manufacturer even though he may have exercised all possible care in the production of the product."). It also promotes judicial efficiency since end purchasers can pursue their claims directly against those parties who share responsibility for their damages. For these reasons, this court should find the defective drywall a good within the meaning of the UCC.

Finally, Movants argue that Plaintiffs have failed to adequately plead a claim of breach of the implied warranty of fitness for a particular purpose under the UCC. In support of this argument, Movants contend that the drywall was being used for its "ordinary purpose" as opposed to being used for any "particular purpose". Notwithstanding this semantic argument by Movants, a ruling on this issue is clearly premature since additional evidence is required to determine whether the drywall was being used for "particular purposes".[9] *See Rogers*, 2006 WL 3147393, * 8 ("The label for Dow's product is not in evidence, so I cannot assume what the "ordinary purpose" of this product is, and whether that includes aerial spraying, mixing with other chemicals or use on trees."). *See also Longwall-Associates, Inc. v. Wolfgang Preinfalk GmbH*, 2002 WL 91879, * 3 (W.D.Va. 2002) (court was unwilling to make factual finding of use for a particular purpose).

For the reasons set forth above, the warranty claims should not be dismissed.

---

[9] It should also be noted that there is case law equating the implied warranty of fitness for a particular purpose under Virginia law to the implied warranty of merchantability. *See Cooper v. Ingersol Rand Co.*, 628 F.Supp. 1488, 1495 (W.D.Va. 1986) ("When a plaintiff seeks to recover for breach of implied warranty of merchantability (or fitness for a particular purpose), plaintiff must show (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands."). Plaintiffs easily meet this standard.

4.     <u>Count V Properly Asserts a Private Nuisance Claim.</u>

Movants challenge plaintiffs' private nuisance claim based upon authority related to

asbestos and other product liability cases from outside of the Commonwealth of Virginia. *See*

*City of Manchester v. Nat'l Gypsum Co.*, 637 F.Supp. 646 (D.R.I. 1986); *Tioga Public School*

*District #15 v. U.S. Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993). These courts denied plaintiffs the

right to recover in nuisance for a product that was not in the control or possession of the

defendants when the nuisance occurred. Plaintiffs have found no controlling case in Virginia on

this point. For the reasons discussed below, the Virginia Supreme Court is unlikely to adopt a

position consistent with the authority relied upon by Movants.

The Virginia Supreme Court has broadly defined the realm of private nuisance law. For

instance, the Virginia Supreme Court has "described a private nuisance as an activity which

unreasonably interferes with the use and enjoyment of another's property." *City of Virginia*

*Beach v. Murphy*, 389 S.E.2d 462, 463 (Va. 1990) (internal quotations omitted). The high court

has also acknowledged that "[t]he term nuisance includes everything that endangers life or

health, or obstructs the reasonable and comfortable use of property." *National Energy Corp. v.*

*O'Quinn*, 286 S.E.2d 181, 182 (Va. 1982). Indeed, the Virginia Supreme Court has

acknowledged that "a nuisance may be merely a right thing in the wrong place". *Fairfax County*

*v. Parker*, 44 S.E.2d 9, 12 (Va. 1947). This broad scope of nuisance law as defined by the

Virginia Supreme Court suggests the high court would accept the application of existing

nuisance principles to defective products.

Where no pronouncement of the common law is readily available, the Supreme Court of

Virginia has often referred to or adopted the Restatement (Second) of Torts for its source of

17

traditional common law causes of action. *See, e.g., Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (adopting position of the Restatement (Second) of Torts § 46 comment j (1965)). In the context of liability for nuisance related to defective products, §834 of the Restatement (Second) of Torts recognizes the common law responsibility of a person whose activities cause interference with others' properties even when that person no longer has control of the instrument.

Section 834 states:

Persons Carrying on an Activity

One is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on.

Restatement (Second) of Torts §834 (1979).

Comment e to §834 further explains the continuing liability for harmful physical conditions:

Activities that create a physical condition differ from other activities in that they may cause an invasion of another's interest in the use and enjoyment of land after the activity itself ceases. When the invasion continues only so long as the activity is carried on, a person who ceases to have any part in the activity is not liable for the continuance of the invasion by others. *But if the activity has resulted in the creation of a physical condition that is of itself harmful after the activity that created it has ceased, a person who carried on the activity that created the condition or who participated to a substantial extent in the activity is subject to the liability for a nuisance, for the continuing harm.* His active conduct has been a substantial factor in creating the harmful condition and so long as his condition continues the harm is traceable to him. *This is true even though he is no longer in a position to abate the condition and to stop the harm. If he creates the condition upon land in his possession and thereafter sells or leases it to another, he is subject to liability for invasions caused by the condition after the sale or lease as well as for those*

18

> *occurring before.* When the vendor or lessor has created the
> condition his liability continues until the vendee or lessee
> discovers it and has reasonable opportunity to take effective
> precautions against it.

Restatement (Second) of Torts §834, comment e (1979)(emphasis added).

The reasoning of Comment e should be adopted here. Manufacturers, suppliers and
installers of products have a responsibility to assure consumers that their products do not
interfere with reasonable enjoyment of the consumer's property. Such reasoning has been
adopted by other jurisdictions. A Wisconsin court has held that a purchaser can state a nuisance
claim directly against a manufacturer. *See Northridge Co. v. W.R. Grace & Co.*, 556 N.W.2d
345 (App.1996) (finding asbestos constituted a nuisance). Applying the longstanding rule that
"one who has erected a nuisance will be responsible for its continuance, even after he has parted
with the title and the possession," the court held that "manufacturers can be liable for a nuisance
long after they relinquish ownership or control over their polluting products." *Northridge*, 556
N.W.2d at 352 (citations omitted). *See also Friends of the Sakonnet v. Dutra*, 738 F.Supp. 623,
633-34 (D.R.I. 1990) (former septic tank owner liable for past discharges).

Without direct guidance from the Supreme Court of Virginia, this Court will have to
predict what that high court would decide. *See Anderson v. Wise*, 39 F.3d 1175 (4th Cir. 1994).
Since Virginia abides by a broad definition of nuisance, the nuisance theory alleged by the
Germano Plaintiffs should be found to state a claim under Virginia law.

5.   **Count VI Properly Asserts a Claim for Unjust Enrichment.**

Movants challenge the unjust enrichment claim on the grounds that, "Plaintiffs do not
allege any contact between themselves and Venture or Porter-Blaine; that Venture or Porter-
Blaine received directly any "benefit" from the Plaintiffs; or that Venture or Porter-Blaine either

19

promised to pay or knew it was expected to pay the Plaintiffs anything." *See* Def. Brf. at 12 (emphasis is original). This argument should be rejected.

In Virginia, three elements are required to establish a quasi-contract and unjust enrichment: 1) a benefit conferred on the defendant by the plaintiff, 2) appreciation or knowledge of the benefit by the defendant, and 3) retention of that benefit by the defendant in circumstances which would make it inequitable for the defendant to retain the benefit without reimbursing the plaintiff for the value received. *Singer v. Dungan*, 1992 WL 884986, * 4 (Va.Cir.Ct. 1992); *Jones v. Link*, 493 F.Supp.2d 765, 773 (E.D.Va. 2007) (D.J., Ellis).

First, while Movants contend that the law on unjust enrichment requires that a plaintiff directly confer a benefit on the defendant, they fail to cite any case law in support of this assertion. It is commonplace for consumers to pursue unjust enrichment claims against manufacturers even where they did not directly purchase any product from the manufacturer. *See Babyage.com, Inc. v. Toys "R" Us, Inc.*, 558 F.Supp.2d 575 (E.D.Pa. 2008) (permitting unjust enrichment claim to proceed against manufacturers where consumers alleged that manufacturers conspired to cause them to pay higher prices). Indeed, it is obvious that Movants did, in fact, receive a benefit in connection with the sale and installation of the drywall. These benefits received by Movants are directly linked to the purchases of homes or drywall by Plaintiffs. The Complaint adequately pleads both of these facts. *See* Comp.¶ 74 ("Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members."). Accordingly, the first element of the unjust enrichment claim has been

20

adequately pleaded.

As to the second element, Movants do not challenge that Plaintiffs failed to allege Movant's appreciation or knowledge of the benefit. They cannot. *See* Comp. ¶74. Rather, they argue "the plaintiff must, at least, prove that the defendant knew of the benefit conferred by the plaintiff and either promised to pay for it or knew it was expected to pay for it." *See* Def. Brf. at 12 (emphasis added). Proofs of evidence are not required on a Rule 12 motion; only the sufficiency of the pleadings are at issue. *See Western Refining Yorktown, Inc., supra.*

Plaintiffs have expressly alleged that Movants "wrongfully accepted and retained" benefits "without payment of the value to Plaintiffs" in a "deliberate and tortious" manner. Comp. ¶¶74-76. These facts easily satisfy Movants' challenge, even assuming the reasoning of *Schmidt v. Household Finance Corp.*, 661 S.E.2d 834, 838 (Va. 2008) applies here. Defendants' argument requiring proofs, however, must await the development of a factual record and may only be raised on a motion for summary judgment. For the purposes of Rule 12, the second element of the unjust enrichment claim has been adequately stated.

Finally, Movants do not dispute that the Complaint alleges their retention of the benefits in circumstances that make it inequitable for them to retain the benefit without reimbursing the Plaintiffs and Class Members for the value received. No dispute is raised because these allegations exist in the complaint. Comp.¶¶74-6. Accordingly, the Complaint adequately states a claim for unjust enrichment.

### 6.   Count VII Properly Asserts Violations of the Virginia Consumer Protection Act.

Movants seek to have Count VII of the Complaint dismissed on the grounds that the Virginia Consumer Protection Act ("VCPA") imposes an actual reliance requirement that

21

Plaintiffs have failed to plead. This contention is unsupported by the text of the statute and/or by

any Virginia Supreme Court decision so interpreting the VCPA. The non-controlling authority

presented by Movants that interprets the Act to require actual reliance reach mistaken

conclusions that should not be endorsed by this Court.[10]

However, assuming the Virginia Supreme Court would accept the logic of the opinions

reading a reliance requirement into the VCPA, Movants' argument that Plaintiffs cannot

establish actual reliance because they have not pleaded any affirmative misrepresentations

misses the point. The point being, under the Virginia Consumer Protection Act a party may be

held liable for failure to disclose a material fact. *See Lambert v. Downtown Garage, Inc.*, 553

S.E.2d 714, 717-18 (Va. 2001) (deliberate nondisclosure of material fact constitutes "false

representation" for purposes of common law fraud and Consumer Protection claims); *Sykes v.

Brady-Bushey Ford, Inc.*, 2005 WL 2787517, * 5 (Va.Cir.Ct. 2005) (same). And the Complaint

plainly alleges that Movants knowingly/deliberately failed to disclose the defective condition of

the drywall.[11] The Movants' failure to disclose the defective nature of the drywall was clearly

material and undoubtedly would have influenced class members in their decision to purchase

---

[10] For instance, in *Cooper v. GCGR Investments, LLC*, 334 B.R. 179, 187-88 (E.D.Va. 2005), the court determined that plaintiffs asserting claims under the VCPA must demonstrate actual reliance simply because the provision establishing a private right of action under the Act requires that plaintiffs must suffer a loss as a result of the violation. Notwithstanding this Judge-made law, it is respectfully submitted that the Virginia legislature would have drafted an actual reliance requirement into the statute had it intended to impose such a requirement.

[11] *See* Comp.¶ 82 ("The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including, but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the defective drywall constitutes violations [sic] of the aforementioned provisions of the Virginia Consumer Protection Act.").

their homes and/or drywall for installation in their homes.[12]  In cases of omission, reliance may

be presumed.  *See Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153 (1972).  Perhaps for

this reason, Movants do not attempt to dispute the materiality of such nondisclosures.

Finally, Movants' incorrectly argue that the VCPA does not apply to building materials

that have been incorporated into a home.  Plainly the drywall installed in Plaintiffs' homes was

sold "primarily for personal, family or household purposes" as envisioned by the Act.  *See* Va.

Code Ann. § 59.1-198.  Perhaps for this reason it should come as no surprise that the majority of

cases that Movants rely upon pit opposing commercial parties, as opposed to claims by

consumers, such as end purchasers of residential homes against suppliers, builders and

manufacturers.  For instance, the principal case relied upon by Movants' in support of their

argument that the VCPA does not apply to the facts of this case, *Winchester Homes*, supra,

involves litigation by a developer as opposed to an end purchaser.[13]  Such cases do not support

---

[12] While there is scant authority regarding the purported reliance requirement under the Virginia Consumer Protection Act, cases interpreting reliance requirements in other types of actions have held that reliance may be presumed under certain circumstances.  *See Chisolm v. TranSouth Financial Corp.*, 194 F.R.D. 538, 560 (E.D.Va. 2000) (holding class members, in RICO action against finance corporations, were entitled to presumed reliance with regard to certain practices following repossession of vehicles purchased on credit).  The court in *Chisolm* identified several instances where reliance may be presumed, *i.e.*, the fraud-on-the-market doctrine in securities litigation, in cases involving credit card schemes, in cases involving consumer loans, in cases involving prescription drug pricing, in breach of commission contract claims, and in Truth in Lending Act actions.  *Id.*  Reliance should similarly be presumed in this case since logic dictates that class members would not have purchased their homes and/or the drywall for installation in their homes had Movants disclosed the defective nature of the drywall.

[13] Several of the cases cited by Movants are equally inapposite because they involve commercial transactions between commercial parties.  *See Bindra v. Michael Bowman & Assocs., Inc.*, 2001 WL 1829999 (Va.Cir.Ct. 2001) (sustaining manufacturer's demurrers to builder's VCPA claims since they did not involve consumer transactions); *MacConkey v. F.J. Matter Design, Inc.*, 2000 WL 33594996 (Va.Cir.Ct. 2000) (same); *Bay Point Condominium*
(continued...)

Movants' argument that the VCPA does not apply to end purchasers' claims with regard to building materials that were incorporated into their homes.

Accordingly, the Complaint adequately pleads a claim under the VCPA.[14]

### 7.   Plaintiffs are Entitled to the Equitable Relief Sought in Count VIII.

Movants argue that Plaintiffs are not entitled to the equitable relief requested in the Complaint.  Count VIII requests that defendants be ordered:

> (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program consistent with the requirements of Virginia law.

*See* Comp.¶ 88.

Movants do even attempt to challenge the second and third forms of equitable relief requested in paragraph eighty-eight (88) of the Complaint.  Rather, they contend that requests for medical monitoring and requests for "repair costs" are not properly sought as equitable relief on the grounds that there are adequate remedies at law.  *See* Def. Brf. at 16.  These arguments

---

[13](...continued)
*Ass'n v. RML*, 2001 WL 792690 (Va.Cir.Ct. 2001) (same).  *But see Murray v. Dryvit, Systems, Inc.*, 2002 WL 32072493, * 3 (Va.Cir.Ct. 2002) (relying upon inapposite cases involving only commercial parties for purposes of sustaining demurrers to consumer's VCPA claims against manufacturer of defective building materials).  This non-binding authority should be rejected as a basis for dismissing Plaintiffs' VCPA claims.

[14] Indeed, Movants' arguments concerning actual reliance are best reserved for the class certification stage.  *See Mornay v. Travelers Ins.*, 2008 WL 2439941, *6 (E.D.La. 2008) (denying motion to dismiss and reserving consideration of defendant's individual reliance argument to class certification stage); *see, e.g., Morris v. Wachovia Securities, Inc.*, 223 F.R.D. 284 (E.D.Va. 2004) (considering actual reliance requirement in the context of class certification).

should be rejected.

First, allegations in the Complaint requesting what Movants term "repair costs" are properly requesting equitable relief.  The portion of the Complaint Movants are challenging on these grounds is requesting that the Court compel Movants to buy back and rescind the contracts and/or repair and replace the defective drywall.  Rather than requesting money damages, the Complaint is asking the Court to order the Movants to undertake specific performance of "positive acts" involving physically removing and replacing defective drywall.  *See Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2nd Cir. 2003) (mandatory injunction alters the status quo by requiring a party to perform "some positive act.").  Hence, such relief is inherently equitable in nature and cannot be accomplished by merely ordering Movants to pay money damages.

Second, Movants' argument that medical monitoring is not an equitable remedy is against the clear weight of authority that has considered a medical monitoring cause of action and should be rejected.  *See* John C.P. Goldberg & Benjamin C. Zipursky, *Unrealized Torts*, 88 Va.L.Rev. 1625, 1712 (2002) ("Class members in these [medical monitoring] cases are asking for an equitable remedy, rather than a damage award.").  *See also Katz v. Warner-Lambert Co.*, 9 F.Supp.2d 363, 364 (S.D.N.Y. 1998) (stating that "a claim for a medical monitoring and research fund is injunctive in nature"); *Barth v. Firestone Tire & Rubber Co.*, 661 F.Supp. 193, 205 (E.D.Va. 1996) (same); *Barth v. Firestone Tire and Rubber Co.*, 673 F.Supp. 1466, 1476-77 (N.D.Cal. 1987).

Accordingly, Count VIII of the Complaint adequately pleads equitable claims.

## IV.   CONCLUSION.

For the reasons set forth above, Movants' Motions to Dismiss should be denied.

Dated:  June 25th, 2009                            Respectfully Submitted,

                                        /s/_____
                                        Richard Serpe, Esquire (VA Bar No. 33340)
                                        Law Offices of Richard J. Serpe
                                        Crown Center, Suite 310
                                        580 East Main Street
                                        Norfolk, VA 23510-2322
                                        Phone: (757) 233-0009
                                        Fax: (757) 233-0455
                                        rserpe@serpefirm.com
                                        *Counsel for Plaintiffs*

| | |
|---|---|
| Michael D. Hausfeld | Arnold Levin |
| Richard S. Lewis | Fred S. Longer |
| James J. Pizzirusso | Daniel Levin |
| Faris Ghareeb | Levin, Fishbein, Sedran & Berman |
| Hausfeld, LLP | 510 Walnut Street, Suite 500 |
| 1700 K Street, N.W., Suite  650 | Philadelphia, PA 19106 |
| Washington, DC 20006 | (215) 592-1500 |
| (202) 540-7200 | (215) 592-4663 (Facsimile) |
| (202) 540-7201 (Facsimile) | *Co-counsel for Plaintiffs* |
| *Co-counsel for Plaintiffs* | |
| | |
| Robert Gary | Richard W. Stimson |
| Gary, Naegele & Theado, LLC | Richard W. Stimson, LLC |
| 446 Broadway | 4726 Mainsail Drive |
| Lorain, OH  44052 | Bradenton, FL  34208 |
| (440) 244-4809 | (214) 914-6128 |
| (440) 244-3462 (Facsimile) | *Co-counsel for Plaintiffs* |
| *Co-counsel for Plaintiffs* | |

Ervin Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson, Cooper,
    Matthews, Martinez, Gonzalez, Kalbac
    & Kane
255 Aragon Avenue
Coral Gables, FL  33134
(305) 476-7400
Co-Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of June, 2009, the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mark C. Nanavati, Esquire (VA Bar No. 38709)

Kenneth F. Hardt, Esquire (VA Bar No. 23966)
Sinnott, Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, VA 23114-4365
(804) 378-7600
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
khardt@snllaw.com
*Counsel for Venture Supply, Inc.*
       *and The Porter-Blaine Corp.*

John Franklin, III, Esquire (VA Bar No. 13267)
James E. Brydges, Jr., Esquire (VA Bar No. 4420)
Brian N. Casey, Esquire (VA Bar No. 26710)
Taylor & Walker, P.C.
P.O. Box 3490
Norfolk, VA 23514-3490
(757) 625-7300
(757) 625-1504 (Facsimile)
jfranklin@taylorwalkerlaw.com
jbrydges@taylorwalkerlaw.com
bcasey@taylorwalkerlaw.com
*Counsel for Harbor Walk Development, LLC*

I also hereby certify that on the 25th day of June, 2009, a true and correct copy of the foregoing pleading was served by first-class mail upon:

Theodore I. Brenner, Esquire
Brenner, Evans & Millman, P.C.
411 East Franklin Street, Suite 200
Richmond, VA 23218-0470
(804) 644-1300
(804) 644-1354

*Counsel for Tobin Trading, Inc.*

By:

_/s/_____

Richard J. Serpe, Esquire (Va Bar No. 33340)
Law Offices of Richard J. Serpe, P.C.
580 E. Main Street, Suite 310
Norfolk, VA  23510-2322
757-233-0009
757-233-0455 (Facsimile)
rserpe@serpefirm.com
*Counsel for Plaintiffs*