EXHIBIT E

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE:                                                      MDL NO.: 2047

CHINESE-MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

**VENTURE SUPPLY, INC. AND THE PORTER-BLAINE CORPORATION'S
MOTION TO VACATE CONDITIONAL TRANSFER
ORDER WITH RESPECT TO MICHELLE GERMANO, et al. v. TAISHAN
GYPSUM CO., LTD, et al.,  AND CURTIS HINKLEY, et al. v. TAISHAN
GYPSUM CO. LTD, et al.**

Mark C. Nanavati (VSB# 38709)
Kenneth F. Hardt (VSB # 23966)
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Dr.
Midlothian, VA 23114
(804) 378-7600
(804) 378-2610 (fax)
khardt@snllaw.com
Counsel for Venture Supply, Inc. and The Porter-Blaine Corporation

1

## INTRODUCTION

1.  Venture Supply, Inc. ("Venture") and Porter-Blaine Corp. ("PB") are named defendants in actions filed in the United States District Court for the Eastern District of Virginia, Norfolk Division, <u>Michelle Germano, Dennis Jackson and Sharon Jackson v. Taishan Gypsum Co., Ltd.</u>, Case No. 2:09-cv-00202 ("Germano Action"), and in the United States District Court for the Eastern District of North Carolina, Northern Division, <u>Curtis Hinkley, et al. v. Taishan Gypsum Co., Ltd, et al.</u>, Civil Action No.: 2:09cv25 ("Hinkley Action").

2.  By Conditional Transfer Order dated June 18, 2009, this Panel conditionally transferred these actions to be consolidated with the nine previous actions transferred to the United States District Eastern District of Louisiana, and other "tag-along" actions listed in the Conditional Transfer Order.

3.  Venture and PB timely filed on June 24, 2009 a Notice of Objection to the Conditional Transfer Order.

## BACKGROUND

4.  Venture is a business organized under the laws of the Commonwealth of Virginia, with its principal place of business in Norfolk, Virginia.

5.  PB is a business organized under the laws of the Commonwealth of Virginia, with its principal place of business in Norfolk, Virginia.

6.  Venture is a supplier of building materials and supplies including drywall.

7.  PB is a drywall installer that generally acts as a subcontractor on construction projects.

8.      On December 16, 2005, Venture entered into a contract with Shandong Taihe Dongxin Co., Ltd., in the Dawenkou Daiyue District, Tai'an, Shandong, China for 100,000 sheets of Standard gypsum board.  (Copy attached)  Two thousand pallets were delivered on February 16, 2009, with a number of the sheets damaged in shipment.

9.      On or around May 1, 2006, Venture entered into a contract with Shandong Taihe Dongxin Co., Ltd., in the Dawenkou Daiyue District, Tai'an, Shandong, China for 53,000 sheets of gypsum board, 10% more or less, primarily to replace drywall that was damaged in shipment from the original purchase. (Copy attached).

10.     Both sales were F.O.B. China port, and Venture shipped the drywall from China to the United States.

11.     Venture sold some of the drywall from these shipments to various purchasers, although it did not sell all of the drywall and subsequently disposed of some 40,000 sheets of the drywall in a certified landfill with the approval of the Consumer Product Safety Commission.

12.     PB installed this drywall on some projects, including the projects of the named complainants in the Germano Action and Hinkley Action.

13.     The defendants in the Germano Action are Venture; PB; Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd.[1] ("Taishan"); Harbour Walk Development, LLC ("Harbour Walk"); and Tobin Trading, Inc. ("Tobin").

14.     Harbour Walk is, upon information and belief, a Virginia limited liability company that acted as the developer of the subdivision containing at least two of the named plaintiffs' homes.

---

[1] Plaintiffs allege that Taishan Gypsum Co., Ltd. is the new name for Shandong Taihe Dongxin Co., Ltd. Venture and PB have no knowledge in this regard and will assume, for the purposes of this motion only, that this is correct.

15.    Tobin was, upon information and belief, a Virginia corporation doing business primarily in the Tidewater, Virginia area, which acted as a broker in the sale of the drywall by Taishan to Venture.

16.    The defendants in the Hinkley Action are Venture, PB, Taishan and Tobin.

17.    All of the plaintiffs in the Germano action are residents of the Commonwealth of Virginia.

18.    All of the plaintiffs in the Hinkley action are residents of the State of North Carolina.

19.    Venture, PB, Tobin and Harbor Walk are not involved in any of the actions that have been transferred to Louisiana by this Panel's previous Order, or in any of the other actions conditionally transferred by the June 18, 2009 Order. Those actions involve completely different suppliers, contractors, developers and plaintiffs.

20.    Taishan has not made an appearance in the Germano Action or the Hinkley Action and, to the best of Venture and PB's knowledge, has not made an appearance in any action filed against it with respect to the drywall.

**ARGUMENT**

A.    STANDARD

28 U.S.C. § 1407 sets forth the requirements for consolidation of actions relating to Multidistrict Litigation. Under that statute, consolidation is appropriate where the actions involve "one or more common questions of fact" and will "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." With respect to tag-along actions, this Panel has stated that it considers all of these factors in whether to transfer such actions:

4

> Specifically, the moving party must demonstrate that the
> potential "tag-along" action "raises questions of fact
> common to the actions previously transferred . . . and that
> its transfer to [the transferee] district will best serve the
> convenience of the parties and witnesses and promote the
> just and efficient conduct of the litigation." In re Stirling
> Homex Corp. Sec. Litigation, 442 F. Supp. 547, 549
> (J.P.M.L. 1977); see also 15 CHARLES ALAN WRIGHT,
> ARTHUR R. MILLER & EDWARD H. COOPER,
> FEDERAL PRACTICE AND PROCEDURE § 3863 at 513
> (1986).

In re Tobacco/Governmental Health Care Costs Litigation, 76 F. Supp. 2d 5, 7-8 (Jud Pan

Mult Lit 1999).[2]

Because none of these factors exist with respect to the Germano Action and the

Hinkley Action, the Conditional Transfer Order should be vacated.

B.    THERE ARE FEW, IF ANY, "COMMON QUESTIONS OF FACT" BETWEEN
      THESE ACTIONS AND THE TRANSFERRED ACTIONS

The Germano Action deals with drywall sold or installed in Virginia; used by

Virginia contractors in the construction of homes or commercial buildings; and allegedly

adversely affecting Virginia residents.  Any liability of the defendants will be determined

under the laws of the Commonwealth of Virginia, which has not adopted strict liability.

Similarly, the Hinkley action deals with drywall sold in Virginia; the installation

of the drywall in North Carolina; and alleged adverse effects on North Carolina residents.

Any liability of the defendants will be determined under either the laws of the

Commonwealth of Virginia or the State of North Carolina.

In the majority of the cases transferred by this Panel to Louisiana, apparently the

manufacturer of the drywall was allegedly Knauf Plasterboard Co., Ltd, or one of the

---

[2] Although no party "moved" to have these actions transferred in this case, it is assumed that Plaintiffs
support the transfer of these actions, as no objections were filed on their behalf.  In any event, the same
factors set forth in 28 U.S.C. § 1407 apply in the consideration of transferring a tag-along action.

5

Knauf related entities.  In addition, apparently Knauf related entities in Germany had something to do with the importation or sale of the drywall.  For example, in <u>Karen Vickers, et al. v. Knauf GIPS KG, et al,</u> (Former Case No. 09-20510, So. Dist. of Fla.), whose plaintiffs filed the Motion to Consolidate the original cases, the Knauf related entities are the only alleged manufacturing entities named.  Similarly, the styles of almost all of the cases transferred by this Panel to Louisiana, indicate that a Knauf related entity is involved in the manufacture or sale of the drywall.

Venture did not deal with Knauf, and the drywall involved in the Germano Action and the Hinkley Action was not manufactured by Knauf.  It was manufactured by Taishan, a completely separate entity.  In the Germano Action and the Hinkley Action, there was no German Knauf related entity involved in the importation, purchase or sale of the drywall.  Venture purchased it directly from Taishan.

Venture and PB believe that Taishan may be named as an additional defendant in at least one of the Florida actions transferred by this Panel.  However, it is believed that Taishan will make no appearance in any of the actions in which it is a defendant.

Therefore, the only "common question" between the Germano Action, the Hinkley Action, and at least one of the transferred cases is whether the Taishan drywall is defective in design or manufacture.  This one "common question" will be determined by expert testimony and the laws of the particular state that governs the particular action.  Venture and PB are not using any of the experts retained in any of the other actions.

In addition, this "common question" will also depend upon a number of fact-specific circumstances peculiar to each plaintiff's individual home.  For example, how

many sheets of drywall are installed in the home[3]?  What is the environment in the home with respect to air conditioning and the like?  How "tight" is the home with respect to construction?  What other materials were used in construction of the home that could create or contribute to the alleged problems?  Does the climate of the area in which the home is located have some effect on the drywall?[4]

Expert testimony as to each particular home and application of the drywall does not present a common question of fact.  It is a question of opinion, of which numerous experts can agree or disagree.  These cases do not deal with whether an insurance broker lied; whether a credit card company charged a certain fee under certain circumstances; whether investors were told a certain security was guaranteed.  The "common question of fact" requirement of 28 U.S.C. § 1407 should not be construed as dealing with various expert opinions, all relying on the particular facts and circumstances of each individual plaintiff's claims based upon standards adopted under the common or statutory law of the various states.

Therefore, it is clear that there really is no "common question" that mandates transferring what are, in effect, actions between Virginia residents and North Carolina residents, to Louisiana, to consolidate with cases that have completely different suppliers, drywall installers, home builders, plaintiffs, and, in many instances, different manufacturers.

---

[3] Evidence will establish that the drywall Venture imported was generally used for particular applications in a home and would not be the only drywall used at a project.  For instance, Venture supplied as few as two drywall sheets on a particular purchase.

[4] There have been suggestions in the media that heat and humidity allegedly have some effect on the drywall.  Certainly the heat and humidity to which homes in Florida and Louisiana are exposed is different than the heat and humidity exposure to homes in Virginia and North Carolina.

C.    TRANSFERRING THESE ACTIONS WOULD NOT BE IN THE
      CONVENIENCE OF THE PARTIES AND WITNESSES

28 U.S.C. § 1407 clearly requires this Panel to consider the convenience of the

parties and witnesses in determining whether to transfer an action to a distant forum.

Although this Panel has sometimes indicated that this factor is usually not as important

because parties and witnesses usually do not participate in pre-trial conferences, e.g. In re

A.H. Robins Co., 438 F. Supp. 942, 943-44 (Jud Pan Mult Lit 1977), this Panel has

recognized in some cases this is an important factor:

> For the purposes of this litigation, the inconvenience to the
> party whose actions are proposed for transfer can be
> derived from the realization that the foreclosure aspect of
> the Florida and Illinois actions involves mostly, if not
> entirely, local factual, legal and potentially administrative
> issues.  Thus, movant has not convinced us that these
> actions are so complex and the accompanying discovery so
> time-consuming as to overcome the inconvenience to the
> litigants and their witnesses, as well as the burden on the
> judiciary, of having the predominantly local Illinois and
> Florida actions transferred to an out-of-state forum.

In re Brandywine Associates Antitrust and Mortgage Foreclosure Litigation, 407 F. Supp.

236 (Jud Pan Mult Lit 1976)[5]

Similarly, in In re Air Crash at Schenley Golf Course, etc. 509 F. Supp. 252 (Jud

Pan Mult Lit 1979), this Panel refused to transfer a Utah action with other actions

because of the uniqueness of the Utah case and the inconvenience to the defendant:

> Discovery in the Utah action will thus likely involve not
> only questions concerning the cause or causes of the crash
> [which was common to the transferred cases], but equally
> important, also questions concerning possibly superseding
> events occurring over a ten-year period that have little in
> common with the other actions in this litigation.
> Furthermore, Thompson urges that its repair facilities,

---

[5] While this case involved only a minimal number of actions, this opinion recognizes that convenience of
the parties and witnesses is a factor that must be considered under 28 U.S.C. § 1407.

> business records, witnesses and potential expert witnesses
> are all located in the Salt Lake City area. In light of these
> circumstances, we cannot conclude that any benefits that
> would be derived from inclusion of the Utah action in
> centralized pretrial proceedings in the Western District of
> Pennsylvania would outweigh the inconvenience transfer
> would cause the defendant in the Utah action.

Id. at 255.

In the Germano Action and the Hinkley Action, all of the witnesses, business records, and potential defense expert witnesses are in either Virginia, or, with the plaintiffs in the Hinkley Action, North Carolina. Most of the facts in these cases, such as dates of installation, number of drywall sheets used, types of uses, potential contractual claims, etc., will have little in common with any of the transferred actions.

In addition, in the Germano Action and the Hinkley Action, there is a question of jurisdiction over Taishan. With respect to Hinkley, the only connection with North Carolina is that PB installed the drywall in at least the Hinkley's house. Venture and PB are not sure how this confers a North Carolina Court with personal jurisdiction over Taishan. With respect to the Germano Action, there is also a question about personal jurisdiction over Taishan, where the purchase was FOB China and Venture shipped the drywall from China to the United States. If the U.S. District Court in Virginia does not have jurisdiction over Taishan, then it lacks subject matter jurisdiction, and this Panel would lack subject matter jurisdiction over the action.[6]

---

[6] Under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) the only potential jurisdiction of the U.S. District Court in the Eastern District of Virginia is the presence of the Taishan, the Chinese manufacturer. All of the other parties are residents of the Commonwealth of Virginia. It is for this reason alone that this Panel should deny transfer. The lack of subject matter jurisdiction would render moot anything done by the U.S. District Court and this Panel. Therefore, this should be the first and only inquiry for the Court in Virginia before there is any consideration of any other issue. Generally, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)(Court has duty to inquire into jurisdiction); see also, Gaines v. Baltimore & C.S.S. Co., 234 F. 786, 789 (E.D.S.C. 1916)(same); Mission Insurance Company v. Brown, 207 F. Supp. 818, 819-20 (W.D. Mo. 1962)(same).

9

The determination of personal jurisdiction would be fact specific, require an analysis of contacts with Virginia in the Germano Action and contacts with North Carolina in the Hinkley Action, and would probably require the testimony of persons from Venture and Tobin, all residents of Virginia.   Having Virginia witnesses and parties dealing with this issue in a Court in Louisiana is certainly not convenient.

Finally, with all due respect to the U.S. District Court in the Eastern District of Louisiana, the Germano Action was filed in what has been nationally known as the "rocket docket" of the Eastern District of Virginia.  Trials within six months of filing are common, although it is unknown how a class action lawsuit would be handled, if it remains a class action.  Venture and PB have an interest in a quick resolution of the claims that have been made against them.  Having their cases transferred with numerous other cases with so many facts and issues that have no bearing on these cases will, by necessity, delay the resolution of these actions.  This is certainly unfair to the defendants, and is clearly not "convenient".[7]

D.    TRANSFERRING THE GERMANO ACTION AND THE HINKLEY ACTION WILL NOT PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS

Apparently one of the more important considerations in the Panel's decisions with respect to the transfer and consolidation of cases is whether it will promote the just and efficient conduct of the actions.  In determining this issue, the Panel's decisions focus on whether transfer will prevent the duplication of discovery and whether it will eliminate the possibility of conflicting pretrial rulings.  In re Liquid Carbonic Truck Drivers

---

[7] Venture and PB are not sure why the individual Plaintiffs in the Germano case would consent to transfer of an action that could be resolved more quickly in accordance with the docket control procedures of the Eastern District of Virginia.

<u>Chemical Poisoning Litigation</u>, 432 F. Supp. 937, 939 (Jud Pan Mult Lit 1976).  Each of these will be addressed below.

1.      <u>There will be no Duplication of Discovery</u>

Many of the Panel's decisions turn on the issue of the avoidance of duplication of discovery.  <u>E.g.</u>, <u>In re Scotch Whiskey</u>, 299 F. Supp. 543, 544 (Jud Pan Mult Lit 1969)(where common questions of fact are not complex and there is little common discovery, joinder is not appropriate); <u>In re Brandywine Associates Antitrust & Mortgage Foreclosure Litigation</u>, 407 F. Supp. 236, 238 (Jud Pan Mult Lit 1976)(where movant failed to show that actions were complex or discovery time-consuming as to overcome inconvenience to parties and witnesses, joinder was inappropriate); <u>In re Four Seasons Securities Law Litigation</u>, 355 F. Supp. 1405, 1407 (Jud Pan Mult Lit 1973)(transfer is appropriate because discovery will be largely common to that pursued by other individual plaintiffs).

Venture and PB see absolutely no duplication of discovery between the Germano and Hinkley cases and the cases already transferred to Louisiana or sought to be transferred by the Conditional Transfer Order.  The Virginia and North Carolina cases will focus on the sale of the product by Venture in Virginia; the installation of the product by PB or another drywall supplier in Virginia or North Carolina; the construction of the home by either a Virginia or North Carolina contractor; the individual plaintiff's claims of problems, if any; and the testimony and opinions of experts relating to the drywall.  As noted above, Venture and PB's expected experts are located in Virginia and are not involved in any of the other actions.

11

The only potential "overlap" would be if Taishan chooses to make an appearance in the cases. First, this is extremely doubtful based upon current information. Second, as noted above, there is a serious question as to whether either the U.S. District Court in Virginia or North Carolina have personal jurisdiction over Taishan. Finally, if this series of unlikely events occur – that is, Taishan makes an appearance and either waives personal jurisdiction or the Courts find there is jurisdiction - there are alternate ways to handle any potential overlap of discovery directed at Taishan. E.g., In re Truck Accident Near Alamagordo, New Mexico, etc., 387 F. Supp. 732 (Jud Pan Mult Lit 1975):

> Even in this circumstance, however, plaintiffs can avoid any duplication of discovery concerning the common issues by coordinating their efforts in the two jurisdictions; for example, plaintiffs could file notices for a particular deposition in both the Oklahoma and Texas district courts, thereby making the deposition applicable in each jurisdiction. Plaintiffs could also seek a stipulation that all discovery may be used in all actions. Thus, we believe that suitable alternatives to a Section 1407 transfer are available to the parties in this litigation.

Id. at 734; see also, In re Highway Accident Near Rockville, Connecticut, etc., 388 F. Supp. 574, 575-76 (Jud Pan Mult Lit 1975)("...there is no reason why defendants cannot cooperate to avoid duplication of the discovery sought of her. Thus, suitable alternatives to a Section 1407 transfer are available to the parties in this litigation."); In re Title Insurance Real Estate Settlement Procedures Act, 560 F. Supp.2d 1374, 1376 (Jud Pan Mult Lit 2008)("The parties can avail themselves of alternatives to transfer...to minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings.").

12

2.    There will be no Possibility of Conflicting Rulings

   Another factor used by the Panel in determining whether transfer would "promote

the just and efficient conduct of the actions" is the avoidance of potentially inconsistent

pretrial rulings.  E.g., In re Boise Cascade Sec. Litigation, 364 F. Supp. 459, 461 (Jud Pan

Mult Lit 1973)(avoiding potential inconsistent rulings on confidentiality of trade secrets

and auditing techniques); In re Transocean Tender Offer Sec. Litigation, 415 F. Supp.

382, 384 (Jud Pan Mult Lit 1976)(avoiding inconsistent rulings with possible partial

dismissal or summary judgment motions based on common state court action).

   In the present case, Venture and BP see no possibility of rulings in their cases that

could be inconsistent with rulings affecting the other cases.  The Germano Action will

deal with Virginia law and the Hinkley Action will deal with North Carolina or Virginia

law.  The only potential issue that could possibly be raised in the Germano Action and

the Hinkley Action that might be raised in at least one of the transferred Florida actions is

jurisdiction over Taishan.  However, as noted above, in the Germano Action the

jurisdictional issue will be decided on Taishan's contact with the Commonwealth of

Virginia based upon its sale of drywall to Venture.  Similarly, in the Hinkley Action, the

issue will be decided on Taishan's sale of drywall to Venture, a Virginia corporation, and

how PB's installation of the drywall in North Carolina can give the U.S. District Court in

North Carolina jurisdiction over Taishan.

   None of the other actions will relate to Taishan's contacts with the

Commonwealth of Virginia or the State of North Carolina, the two sales of drywall to

Venture, or the installation of drywall by PB.  Jurisdiction over Taishan in the Florida

action will be based solely on the sales of drywall to a Florida distributor and any

13

contacts Taishan may have had with Florida.  Therefore, there is no possibility of inconsistent rulings.

Finally, the fact that liability of the defendants in the Germano Action will depend on Virginia statutory and common law; the liability of the defendants in the Hinkley Action will depend on North Carolina statutory and common law; and none of the other cases implicate the laws of these states, suggest that transfer will not promote the just or efficient conduct of these actions.  Generally, In re Title Insurance Real Estate Settlement Procedures Act, 560 F. Supp.2d 1374, 1376 (Jud Pan Mult Lit 2008)(different actions applying regulatory schemes and laws of various states not appropriate for consolidation); In re Tobacco/Governmental Health Care Costs Litigation, 76 F. Supp. 2d 5, 13 (Jud Pan Mult Lit 1999)(legal questions unique to one action which may be dispositive eliminate "any increase in efficiency or justice to be gained by the consolidation...").[8]

## CONCLUSION

None of the factors set forth in 28 U.S.C. § 1407 apply with respect to the transfer of the Germano Action, which is really a Virginia action with Virginia residents against Virginia defendants, and the Hinkley Action, which is a slight extension of the Germano Action with North Carolina residents as plaintiffs.  For the most part, the manufacturer of the product is different in these actions.  The distributor is different.  The transactions that form the basis of the sales to the ultimate plaintiffs are different.  There really are no common questions of fact, there should be no duplication of discovery, and there should

---

[8] In the Germano Action, Venture, PB and Harbor Walk filed a Rule 12(b)(1) motion, raising the jurisdictional issue of the Virginia Court, and a 12(b)(6) motion based on Virginia law seeking dismissal of all counts of the Amended Complaint.  It is expected that Tobin will do the same thing.  Responsive pleadings have not yet been filed in the Hinkley Action, but it is expected they will include 12(b)(6) motions to dismiss based on North Carolina or Virginia law.

be no possibility of inconsistent rulings.  Finally, the inconvenience to the parties and

witnesses in the Germano Action and the Hinkley Action clearly dictate against transfer

of these actions.

      **WHEREFORE**, Venture and PB request an Order vacating the Conditional

Transfer Order with respect to the Germano Action and the Hinkley Action.

 

                         VENTURE SUPPLY, INC.
                         THE PORTER-BLAINE CORPORATION

By: _____
                         Counsel

Mark C. Nanavati (VSB# 38709)
Kenneth F. Hardt (VSB # 23966)
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Dr.
Midlothian, VA 23114
(804) 378-7600
(804) 378-2610 (fax)
khardt@snllaw.com
Counsel for Venture Supply, Inc. and The Porter-Blaine Corporation

15

12/19/2005  12:28   8570283          PORTER BLAINE CORP                    PAGE  01

# Contract

Contract NO. SDTH05121601

Date: 16TH December, 2005                     Place: TAI AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

Address: Dawankou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller

agrees to sell and the buyer agrees to buy the under mentioned commodity

according to the terms and conditions stipulated below.

1. Term of delivery: deliver commodity in China port

| Commodity & Specification | Quantity | Unit Price | Total Value |
|---|---|---|---|
| Standard gypsum board (17E) 12.7*1220*3660mm | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total value of the contract:US DOLLAR: Three hundred sixty-six thousand and eight hundred ONLY. | | | |

2. Quality and packing terms: the gypsum board should be produced as per

the relative standard of China GB/T9775-1999, using plastic inner package,

gypsum pallet, gypsum protecting board and steel belt. It should be



12/12 '05 SUN 18:40 FAX 6610 840S2149

inspected and confirmed by Mr. Philip W. Perry who comes from Tobin Trading Inc and represents the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement. The stating can be regarded as the part of the contract.

3. Term of payment: 30% earnest money should be paid in advance, the rest should be by irrevocable letter of credit at sight. We agree to accept the one hundred percent letter of credit for future orders (except this one).

4. The buyer should be in charge of ocean transportation and insurance, the ocean freight should be paid at the buyer's end.

5. Force Majeure: the seller shall not be held responsible for late or non-delivery of the goods owing to the generally recognized "Force Majeure" cause. However in such case, the seller shall inform the buyer in four working days.

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

The Seller: Shandong Taihe

The buyer: Venture Supply, Inc.

# CONTRACT

DATE: MAY 1, 2006

IT IS THIS DAY MUTUALLY AGREED AND CONFIRM BETWEEN THE UNDERSIGNED
PARTIES ON THE FOLLOWING TERMS AND CONDITIONS:

1. CARGO & QUANTITY: 53000 SHEETS GYPSUM BOARD 10 PERCENT
   MORE OR LESS, 7600 SHEETS PLYWOOD 5 PERCENT MORE OR LESS
   IN 40'GP OR 40 HC CONTAINERS (NOT MORE THAN 27
   MT/CONTAINER)
2. LAYTIME: LOAD ALL CARGO BEFORE JUNE 1, 2006
3. L/D PORT: QINGDAO, CHINA / NORFOLK, USA
4. FREIGHT RATE: USD3200.00/40'GP AND USD 3350.00/40'HC CONTAINER
   YARD/ CONTAINER YARD
5. PAYMENT OF FREIGHT: FULL FERGHT TO BE PAID WITHIN 3
   BANKING DAYS AFTER COMPLETION OF LOADING AND BEFORE
   SIGNING THE ORIGINAL BILLS OF LADING.
6. AGENT: OWNERS SHIP AGENT AT BENDS.
7. TAXES/DUES/WHARAGE: ON CARGO TO BE FOR CHARTERS
   ACCOUNT AND ON VESSEL/FREIGHT TO BE FOR OWNERS ACCOUNT.
8. ANY DISPUTE ARISING UNDER THIS AGREEMENT TO BE REFERED TO
   ARBITRATION IN QINGDAO BY RULE OF CHINESE LAW, THE AWARD
   OF THE ARBITRATORS TO BE FINAL AND BINDING ON OTHER
   PARTIES.

MAIN ITEMS END.

CONSIGNEE/NOTIFYEE:          VENTURE SUPPLY, INC.
                            1140 AZALEA GARDEN ROAD
                            NORFOLK, VIRGINIA 23502
                            TEL:  757-855-5433
                            FAX:  757-857-0283

AGENT VENTURE SUPPLY INC.:          _____

QINGDAO    PORT    JINTONG    FREIGHT    TRANSPOTATION    CO.,    LTD.
          _____

## CERTIFICATE OF SERVICE

I certify that on this 6th day of July, 2009, a true copy of the foregoing was mailed, first class mail, postage pre-paid to, or filed electronically with, the Clerk of the United States District Court for the Eastern District of Virginia, Norfolk Division; Clerk of the Eastern District of North Carolina, Northern Division; Richard J. Serpe, Esquire, Law Offices of Richard J. Serpe, Crown Center, Ste 3120, 580 East Main Street, Norfolk, VA 23510-2322, counsel for Michelle Germano, Dennis Jackson and Sharon Jackson; John Franklin, III, Esquire, Taylor & Walker, P.C., 1300 FIRST VIRGINIA TOWER, 555 Main Street, Norfolk, VA 23514, counsel for Harbor Walk Development, LLC; Theodore I. Brenner, Esquire, Brenner, Evans & Millman, 411 E. Franklin Street, Ste 200, Richmond, VA 23219, counsel for Tobin Trading, Inc.; and . J. Michael Malone, Esquire, HENDREN & MALONE, PLLC, 4600 Marriott Drive, Suite 150, Raleigh, North Carolina 27612, counsel for Curtis Hinkley.

I also certify that a true copy of the foregoing was mailed to the Attached MDL Panel Service List.

Mark C. Nanavati (VSB# 38709)
Kenneth F. Hardt (VSB # 23966)
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Dr.
Midlothian, VA 23114
(804) 378-7600
(804) 378-2610 (fax)
khardt@snllaw.com
Counsel for Venture Supply, Inc. and The Porter Blaine Corporation

IN RE: CHINESE-MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

MDL No. 2047

## INVOLVED COUNSEL LIST (EXCERPTED FROM CTO-1)

Curtis Hinkley, et al. v. Taishan Gypsum Co., Ltd., et al., E.D. North Carolina, C.A. No. 2:09-25
    (Judge Louise Wood Flanagan)
Michelle Germano, et al. v. Taishan Gypsum Co., Ltd., et al., E.D. Virginia, C.A. No. 2:09-202
    (Judge Mark S. Davis)

Jan Douglas Atlas
ADORNO & YOSS LLP
350 East Las Olas Blvd
Suite 1700
Fort Lauderdale, FL 33301

Hilarie Bass
GREENBERG TRAURIG LLP
1221 Brickell Avenue
Miami, FL 33131

Gary F. Baumann
FULMER LEROY ALBEE
BAUMANN & GLASS
2866 East Oakland Park Blvd.
Ft. Lauderdale, FL 33306

Daniel E. Becnel, Jr.
BECNEL LAW FIRM LLC
106 West Seventh Street
P.O. Drawer H
Reserve, LA 70084

Kimberly L. Boldt
ALTERS BOLDT BROWN RASH & CULMO PA
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137

Edward J. Briscoe
FOWLER WHITE BURNETT PA
Espirito Santo Plaza
1395 Brickell Avenue
14th Floor
Miami, FL 33131-3302

Thomas More Buckley
HEDRICK GARDNER KINCHELOE &
GAROFALO LLP
4011 Westchase Blvd.
Suite 300
Raleigh, NC 27607

S. Greg Burge
BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203

Christopher C. Casper
JAMES HOYER NEWCOMER &
SMILJANICH PA
One Urban Centre
4830 West Kennedy Boulevard
Suite 550
Tampa, FL 33609-2589

Susan J. Cole
BICE COLE LAW FIRM
999 Ponce De Leon Boulevard
Suite 710
Coral Gables, FL 33134

Chris S. Coutroulis
CARLTON FIELDS PA
P.O. Box 3239
4221 West Boy Scout Boulevard
Suite 1000
Tampa, FL 33601-3239

MDL No. 2047 - Involved Counsel List (Excerpted from CTO-1) (Continued)

Victor Manuel Diaz, Jr.
PODHURST ORSECK JOSEFSBERG ET AL
City National Bank Building
Suite 800
25 W. Flagler Street
Miami, FL 33130

John Franklin, III
TAYLOR & WALKER PC
555 Main Street
P.O. Box 3490
Norfolk, VA 23514

Kenneth G. Gilman
GILMAN & PASTOR LLP
6363 Highcroft Drive
Naples, FL 34119

Interior Exterior Bldg.
727 S. Cortez
New Orleans, LA 70119

Knauf Gips KG
Ridham Dock, Kemsley
Sittingbourne, Kent ME 9 8SR, UK

Knauf Plasterboard
North Yinhe Bridge, East Jingjin Road
Beichen District
Tianjin, China 300400 P.R.C.

Knauf Plasterboard
No. 2 Gang Wan Road
RC-241009 Whuhu Anhui, China

Knauf Plasterboard
No. 2 Xinsha Development Zone
RC-52347 Guangdong, China

La Suprema Enterprise
221 NE 164th Street
North Miami Beach, FL 33160

La Suprema Trading, Inc.
221 NE 164th Street
N. Miam Beach, FL 33160

Jack Landskroner
LANDSKRONER GRIECO MADDEN LTD
1360 West 9th Street
Suite 200
Cleveland, OH 44113

Arnold Levin
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, PA 19106-3697

Raul Ricardo Loredo
MINTZER SOROWITZ & ZERIS
255 Alhambra Circle
Suite 1150
Coral Gables, FL 33134

J. Michael Malone
HENDREN & MALONE PLLC
4600 Marriott Drive
Suite 150
Raleigh, NC 27612

Steven L. Nicholas
CUNNINGHAM BOUNDS LLC
1601 Dauphin Street
P.O. Box 66705
Mobile, AL 36660

Jack Reise
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432

Rothchilt International
N-510 Chia Hsn Bld.
Annex 96 Chung Shan N. Rd. Sec. 2
Taipei, Taiwan R.O.C.

MDL No. 2047 - Involved Counsel List (Excerpted from CTO-1) (Continued)

Richard J. Serpe
LAW OFFICES OF RICHARD J SERPE
Crown Center
580 East Main Street
Suite 310
Norfolk, VA 23510-2322

Neal A. Sivyer
SIVYER BARLOW & WATSON PA
401 East Jackson Street
Suite 2225
Tampa, FL 33602

South Kendall Constructio
2368 SE 17th Ter.
Homestead, FL 33035

Bruce Steckler
BARON & BUDD
3102 Oak Lawn Ave, Ste 1100
Dallas, TX 75219-4281

Taishan Gypsum Co., Ltd.
Dawenkou, Taian
Shandong, China 271026

Andrew A. Vanore, III
BROWN CRUMP VANORE & TIERNEY LLP
P.O. Box 1729
Raleigh, NC 27602

Scott Wm. Weinstein
MORGAN & MORGAN PA
12800 University Drive
Suite 600
Fort Myers, FL 33907-5337