UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MICHELLE GERMANO, et al.,           )
                                    )
                  Plaintiffs,       )
                                    )
v.                                  )          Civil Action No.:  2:09cv202
                                    )
TAISHAN GYPSUM CO., LTD., et al.    )
                                    )
                  Defendants.       )

**MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS
AND MEMORANDUM IN SUPPORT**

Venture Supply, Inc. ("Venture") and The Porter-Blaine Corporation ("PB"), by

counsel, move for an Order disqualifying Plaintiffs' counsel from representation in this

matter because of a conflict in interest in representing class actions and individual

plaintiffs seeking a limited fund, in violation of Rule 1.7 of the Virginia Rules of

Professional Conduct.  In support thereof, they state as follows:

**BACKGROUND**

A.       ACTIONS FILED AGAINST VENTURE AND PB

The Amended Complaint in this matter identifies 5 separate lawyers/law firms as

counsel for the plaintiffs in this matter.  The only one who signed the pleadings, however,

and located in the Commonwealth of Virginia is Richard Serpe, Esquire. In this action,

the lawyers purportedly represent all Virginia residents who have been allegedly

damaged by drywall imported from China.

After filing the original Complaint in this action, all of the same counsel filed a

separate class action suit in North Carolina against Venture, PB, and Tobin Trading, Inc.

1

("Tobin") - <u>Curtis Hinkley, et al. v. Taishan Gypsum Co., Ltd, et al.</u>, Civil Action No.: 2:09cv25 (United States District Court for the Eastern District of North Carolina, Northern Division)(Exhibit A)("Hinkley Action").  In that class action suit, these attorneys purportedly represent all residents of the State of North Carolina who have allegedly sustained damages by drywall imported from China.  As with the present action, the Hinkley Action allege damages in excess of $5 million dollars and was filed under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), which requires 100 or more plaintiffs.

Also subsequent to the filing of the Complaint in this action, plaintiffs' counsel[1], filed a separate state court action in Virginia on behalf of one homeowner, seeking $2 million in damages from these defendants for allegedly defective Chinese drywall.  <u>Tuan Nguyen and Colleen Nguyen v. Venture Supply, Inc., The Porter-Blaine Corp., Curb Appeal Home Builders, Inc. and Tobin Trading, Inc.</u>, Norfolk Circuit Court; Case No.: CL09-3105.  (Copy of Complaint attached hereto as Exhibit B)("Nguyen Action").  Since that time, Richard Serpe, Esquire, has filed 6 more separate Virginia state court lawsuits on behalf of individual homeowners against Venture, PB, Tobin, and builders alleging damages due to Chinese drywall.  (See attached Complaints, collectively Exhibit C). Each state court suit seeks, as does the Nguyen Action, $2 million in damages for each individual homeowner.

It should be noted that if the seven individual state action homeowner's claims are worth $2 million each, then the 100-plus plaintiffs in this action must have claims worth at least $200 million, and the 100-plus plaintiffs in the Hinkley Action must have claims worth at least the same amount.  Therefore, these attorneys have filed claims against

---

[1] With the inclusion of counsel from Florida, Ervin Gonzalez, Esquire and Patrick Montoya, Esquire.

Venture, PB and Tobin in an amount approaching half a billion dollars.

B.    INSURANCE COVERAGE AND LIMITED FUNDS

Counsel will represent to the Court that it has been informed that Tobin has $2 million in insurance coverage under a reservation of rights and that Tobin itself has been out of business for some time and has no assets.  Counsel will also represent to the Court that in response to discovery in Nguyen Action, Venture answered an interrogatory about insurance coverage as follows:

> Hanover Insurance Company, Policy Number ZBR 7905525-(00,01,02,03,04); effective 11/15/04 – 11/15/09, liability limits $1,000,000.00/$2,000,000.00.

> Hanover Insurance Company, Policy Number UHR 7917898-(00,01,02,03,04); effective 11/15/04 – 11/15/09, umbrella limits of $10,000,000.00/$10,000,000.00.

> Hanover has notified Venture of its reservation of rights.

PB similarly answered an interrogatory in that action about insurance coverage as follows:

> Hanover Insurance Company, Policy Number ZBR 7905525-(00,01,02,03,04); effective 11/15/04 – 11/15/09, liability limits $1,000,000.00/$2,000,000.00.

> Hanover Insurance Company, Policy Number UHR 7917898-(00,01,02,03,04); effective 11/15/04 – 11/15/09, umbrella limits of $10,000,000.00/$10,000,000.00.

> Hanover has notified Porter-Blaine of its reservation of rights.

Since answering those interrogatories, there is a question as to whether there exists an additional umbrella policy issued by Fireman's Fund in the amount of $10 million/$10 million. As with the Hanover policies, however, it would be expected that a

reservation of rights would be asserted with respect to that policy if it applies to the current action.

In addition, counsel has spoken with Plaintiffs' counsel and has been informed that they believe that they can stack coverages for each year to create a potential fund in the amount exceeding $100 million.

Whether or not the carriers are correct in their reservation of rights that there is no available coverage or whether the plaintiffs are right and there is coverage in excess of $100 million, there is still a limited fund available for the all of the plaintiffs purportedly represented by counsel.

Counsel will also represent to the Court that Venture and PB are out of business as a result of the publicity associated with the Chinese drywall and have no available assets to satisfy any judgment.

C.    VIRGINIA STATE BAR INQUIRY

An ethical question appeared to be presented with the inconsistency of filing a class action suit in Federal Court, purportedly representing all persons in Virginia affected by the drywall, and then turning around and filing 7 separate state court actions on behalf of individual homeowners.  However, given the limited funds available to satisfy any future judgments, the primary ethical concern relates to attorneys representing class action members and individual plaintiffs in separate suits all seeking substantial damages.  There is a substantial question as to whether an attorney can ethically represent so many individual plaintiffs and pursue two separate class action suits with a total of over 200 members all seeking the same limited funds.

As a result, counsel for Venture and PB, and counsel for Tobin, made separate inquiries to the Virginia State Bar for informal opinions.  The inquiry by Venture and PB was as follows:

> Is a lawyer representing the plaintiffs in a class action lawsuit precluded from representing an individual who wishes to bring a tort action involving related subject matter against the same defendant?  Just for reference, the cost of complying with a judgment in favor of the individual or class may render the defendant financially unable to satisfy the claims of the other.

In response to their separate inquiries, counsel received the same informal opinions from the Bar Association: The lawyer would be in a conflict situation and the conflict situation cannot be cured by consent.  Counsel for Venture and PB were told that the most prudent course of action would be to move to disqualify counsel in both actions if the conflict was not addressed by the lawyer, rather than report the conflict to the Bar.

Venture and PB notified Richard Serpe, Esquire and Daniel C. Levin, Esquire[2] of these informal bar opinions.  (See attached August 20, 2009 letter, Exhibit D).  Venture and PB invited plaintiffs' counsel to contact the Bar Association and see what response they received to this conflict situation.

In response to this notice, plaintiffs' counsel informed Venture and PB:  "We acknowledge receipt of yours of August 20th, and reject your suggestion of the need to take any such action, based both upon our own analysis and that of an independent ethics counsel."  (See attached August 31, 2009 e-mail communication, Exhibit E).  Accordingly, it appears that plaintiffs' counsel will not contact the Bar Association with respect to this issue or take any further action.

---

[2] Daniel Levin, Esquire, was the contact person at the firm in which Arnold Levin, Esquire, and Fred S. Longer, Esquire, are partners.

Given that Venture and PB have been informally advised to move to disqualify counsel and, apparently, counsel for plaintiffs will take no further action in this regard, Venture and PB hereby move to disqualify counsel for the plaintiffs.  Venture and PB have already filed a motion to disqualify counsel in the Nguyen Action, and will also move to disqualify counsel in the Hinkley Action and in the six new actions recently filed by counsel.

## ARGUMENT

Rule 1:7 of the Virginia Rules of Professional Conduct provides that a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A "concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client…"

The Rule goes on to provide that this conflict can be waived with written consent, but only if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client…"     Comment 19 of the Rule provides guidance on this issue, and suggests an objective view of the conflict:

> A client may consent to representation notwithstanding a conflict.  However, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent.  When more than one client is involved, the question of conflict must be resolved as to each client.  Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent.  For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to

6

permit the other client to make an informed decision, the
lawyer cannot properly ask the latter to consent.

In the present case, it seems almost axiomatic that a lawyer cannot adequately
represent the interests of a class action, all seeking the same pot of money, and then file a
separate lawsuit on behalf of one client (and then six other clients), seeking to deplete the
pot of money available to all. For example, if the lawyer secures on behalf of his client in
the Nguyen Action a $2 million dollar judgment and recovers it all from Tobin, he has
depleted the entire amount of insurance proceeds available to cover Tobin at the expense
of every other client he purportedly represents. If, instead, he recovers the $2 million
from PB or Venture, he has similarly depleted the assets available to satisfy the 100 plus
plaintiffs in this suit, the 100 plus plaintiffs in the Hinkley Action and the plaintiffs in the
6 other new separate state court lawsuits.

A number of conflicting situations arise. Should the lawyer attempt to rush to
judgment on the Nguyen Action, which would be in the interests of the Nguyens but not
his other clients? Should he instead press forward with this class action at the expense of
the Nguyens and other clients? What about all the clients in North Carolina in the
Hinkley Action? How about the 6 other separate state court lawsuits? Who goes first?
Who has access to the limited funds first? If the lawyer proceeds with the Hinkley class
action first, and secures $22 million to cover those 100-plus residents in North Carolina,
he has just made it so none of his Virginia clients – whether class action clients or
separate state court action clients – will ever see any money should they prove the
damages they allege.

Hypothetically, if the lawyer learns from one client that he suffered from a

chronic condition before any exposure to the Chinese drywall this would surely lessen the value of his personal injury claim to the benefit of the lawyer's other clients.  Does the lawyer inform his other clients, breaching his obligations to the  one with the pre-existing condition, or does he sit on this information to the detriment of all of his other clients?

Has the lawyer informed the class representatives or other purported class members that he is filing individual lawsuits on behalf of other clients?  Has he or can he mention that the federal class action suit may get transferred to a combined MDL proceeding in Louisiana with thousands of cases from across the country, but that he can proceed to judgment in the individual state court suits without the constraints of being joined with cases involving differing state laws and differing damages?  Has the lawyer mentioned to his class action clients that the Nguyens, or the other six separate state court plaintiffs, for example, may get monetary relief far sooner than the class representatives and members, all to the detriment of the classes?

Even in attempting to negotiate settlements, should that day ever come, how does the lawyer ethically advise every single client as to the value of their particular claim as compared to others?  Is a 1,500 square foot house claim the same as a 4,000 square foot house?  If the 1,500 square foot house is completely finished with Chinese drywall, but the 4,000 square foot home only has 40 Chinese drywall sheets, is the claim still the same or now different?   As to the personal injury claims, how can the lawyer advise each client about the number of family members in the homes of each of the other clients he represents and their health conditions?  For example, in response to discovery in this case apparently some of the Nguyen family members are not allegedly experiencing health-related issues.  Does this make this particular claim worth less?  Can the lawyer disclose

this to his other clients relating to the value of their own cases without violating his

ethical duties to the Nguyens?

There are apparently no Virginia LEO's directly on point on this issue, especially

ones dealing with Virginia's revised Rules of Professional Conduct.  With respect to

multiple representations, however, under the older Rules, the Standing Committee on

Legal Ethics recognized that caution should be exercised by lawyers:

> Further guidance is available through Ethical
> Considerations 5-14 which cautions that problems
> regarding a lawyer's independent professional judgment
> may arise when the lawyer is asked to represent two or
> more clients who may have conflicting, inconsistent,
> diverse, or otherwise discordant interests; and 5-15 which
> exhorts the lawyer facing the possibility of impaired
> independent judgment or divided loyalty to "resolve all
> doubts against the propriety of the [multiple]
> representation.  A lawyer should never represent in
> litigation multiple clients with differing interests, and there
> are a few situations in which he would be justified in
> representing in litigation multiple clients with potentially
> differing interests.  If a lawyer accepted such employment
> and the interests did become actually differing, he would
> have to withdraw from employment with likelihood of
> resulting hardship on the clients…."

LEO 1454 (March 1992).

For example, in LEO 1508, the Standing Committee was dealing with a question

whether an attorney could represent multiple defendants in a CERCLA action.

Apparently, in such actions it is in the interest of each defendant to, in effect, "point the

finger" at other defendants to lessen that particular defendant's liability.  However, the

defendants can waive cross-claims against each other, which apparently these multiple

defendants did with presumed consent.  The Standing Committee noted the above ruled

of EC 5-14, but ruled that it was not a per se violation of the Disciplinary Rule.  The

Committee noted, however, that the interests of the defendants may become diverse as to the issue of each defendant's contribution and it may become necessary for the attorney to withdraw from representing all clients involved in the litigation.

The District of Colombia Bar Association ruled in Opinion 301 (copy attached as Exhibit F) on the issue of whether a law firm could represent an individual member of a class action lawsuit in a separate personal injury action against the defendant of the class action suit. The Committee noted that each suit sought separate forms of relief and it would not be an ethical violation per se to represent a class in one action and an individual member of that class in another action against the same defendant. However, the Committee noted in Footnote 3:

> A conflict may arise if it appears that the cost of complying with a judgment in favor of one client will render the defendant financially unable to satisfy the claims of another client. There is no suggestion that such as risk has arisen here.

Similarly, in North Carolina, which will apply to these attorneys with respect to the Hinkley Action, in 2001 Formal Ethics Opinion 6 (copy attached as Exhibit G), the North Carolina Committee ruled that an attorney could not represent beneficiaries of an award of death benefits under the Workers' Compensation Act because some of the beneficiaries would have an interest in disqualifying others to maximize their own recovery under the limited fund. Since each of these groups of beneficiaries had a direct interest in opposing the claims of the others to maximize their recovery, the Committee also ruled that this conflict could not be waived because under Comment [5] to N.C. Rule 1.7 (which is the same as Comment 19 to Virginia's Rule 1.7), a disinterested lawyer would not conclude that the client agree to such representation.

In the present action, no disinterested lawyer would conclude that a lawyer could adequately represent 200-plus class action plaintiffs in addition to the seven individual state court action plaintiffs.  They are all fighting in different forums in different actions for the same pot of money.  Each one has an interest in (a) advancing to judgment first; (b) maximizing their own recovery; and (c) diminishing the recovery of anyone else who may exhaust the limited funds available to pay their own claim.

Accordingly, all counsel listed on the pleadings in these actions should be disqualified.

**WHEREFORE**, Venture and PB respectfully request an Order disqualifying plaintiffs' counsel in this matter.

This 4th day of September, 2009.

<div style="margin-left:50%">

_____/s/_____
Mark C. Nanavati , Esquire (VSB# 38709)
Kenneth F. Hardt, Esquire (VSB# 23966 )
Attorneys for Venture Supply, Inc. and The Porter-Blaine Corporation
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Dr.
Midlothian, VA 23114-4365
(804) 378-7600
(804) 378-2610 (fax)
khardt@snllaw.com

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of September, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste 3120
580 East Main Street
Norfolk, VA 23510-2322
Counsel for Plaintiffs

John Franklin, III, Esquire,
Taylor & Walker, P.C.
1300 FIRST VIRGINIA TOWER
555 Main Street, Norfolk, VA 23514
Counsel for Harbor Walk Development, LLC

Theodore I. Brenner, Esquire
Brenner, Evans & Millman
411 E. Franklin Street, Ste 200
Richmond, VA 23219
Counsel for Tobin Trading, Inc.

I hereby certify that I will mail the document by U.S. mail to the following parties who have not entered an appearance:

Taishan Gypsum Co. Ltd f/k/a
Shandong Taihe Dongxin Co. Ltd.
Dawenkou, Daiyue District
Tai'an City, Shandong Province
China 271026; and

_____/s/_____

Mark C. Nanavati , Esquire (VSB# 38709)
Kenneth F. Hardt, Esquire (VSB# 23966 )
Attorneys for Venture Supply, Inc. and The Porter-Blaine Corporation
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Dr.
Midlothian, VA 23114-4365
(804) 378-7600
(804) 378-2610 (fax)
khardt@snllaw.com