

Norfolk Circuit Court
Civil Division
100 St. Paul's Blvd.
Norfolk, Virginia  23510

Summons

To:    PORTER-BLAINE CORP
       C/O RICHARD E BIEMILLER          Case number: 710CL09003105-00
       REGISTERED AGENT
       CONVERGENCE CENTER 1V
       301 BENDIX RD., STE 500
       VIRGINIA BEACH, 23452

    The party upon whom this Summons and the attached Complaint are served is hereby
notified that unless within 21 days after such service, response is made by filing
in the clerk's office of this court a pleading in writing, in proper legal form,
the allegations and charges may be taken as admitted and the court may enter an
order, judgment, or decree against such party either by default or after hearing
evidence.

Appearance in person is not required by this Subpoena.

Done in the name of the Commonwealth of Virginia on, Friday, May 22, 2009.


Clerk of Court: George E. Schaefer


                        By:  _____
                                 (Clerk/Deputy Clerk)


    Instructions:


Attorney's name: SERPE, RICHARD J
                 757-233-0009


SERVED BY
DRISKELL SERVICES, INC.
757-461-4099

VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

TUAN NGUYEN and COLLEEN
NGUYEN,

               Plaintiffs,

v.                                                          Case No.

VENTURE SUPPLY INC.,
Serve:      Richard E. Biemiller, RA
              Convergence Center IV
              301 Bendix Rd., Ste 500
              Virginia Beach, VA 23452

and

THE PORTER-BLAINE CORP.,
Serve:      Richard E. Biemiller, RA
              Convergence Center IV
              301 Bendix Rd., Ste 500
              Virginia Beach, VA 23452

and

CURB APPEAL HOME BUILDERS, INC.,
Serve:      Emmanuel D. Voces, RA
              209 Business Park Dr.
              Virginia Beach, VA 23462

               Defendants.



## COMPLAINT

NOW COME Tuan Nguyen and Colleen Nguyen (the "Nguyens"), by counsel, who file their Complaint against Venture Supply, Inc. ("Venture"), The Porter-Blaine Corp. ("Porter-Blaine"), and Curb Appeal Home Builders, Inc. ("Curb Appeal"), and respectfully state as follows:

## INTRODUCTION

1.     The Nguyens bring this action because their family home was built by Curb Appeal with defective drywall supplied and installed by Porter-Blaine and Venture.

2.     Defendants' drywall, used in the Nguyens' family home, is inherently defective because it emits various sulfide gases and/or other toxic chemicals through "off-gassing" that create noxious, "rotten-egg-like" odors, and cause damage and corrosion (the "Defect") to the structural, mechanical and plumbing systems of the Nguyen's home such as the framing, heating, air-conditioning and ventilation ("HVAC") units, refrigeration coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and Other Property such as microwaves, utensils, personal property, electronic appliances, jewelry, and other household and personal property items ("Other Property").

3.     The compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure.  These chemical compounds cause and have caused dangerous health consequences including, among other things, allergic reactions, respiratory afflictions, sinus and bronchial problems requiring medical attention, including headaches suffered by the Nguyens.

4.     Published reports acknowledge this Defect was well known in the industry as early as 2006.  The Defendants knew or should have known the corrosive and damaging effect of the defective drywall installed in the Nguyen's family home.



5.      The Defect existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted and continues without interruption to this date and will continue beyond this date.  There is no repair (other than complete removal and replacement of all affected structures) that will correct the Defect.

6.      As a result of the Defendants' conduct as alleged herein, the Nguyens have suffered damage because their home contains inherently defective drywall that has caused damage to their home, Other Property, and their health.

7.      The Nguyens have incurred or will incur substantial damages including, but not limited to:  Repair or replacement of their family home, repair or replacement of Other Property, repair or replacement of any other material contaminated or corroded by the drywall as a result of "off-gassing," cost of medical care, costs of relocation during repairs, storage costs, and other incidental and consequential damages.

8.      Further, as a result of the Defendants' conduct as alleged herein, the Nguyens have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical care and monitoring.  All conditions precedent to the relief requested herein have occurred, been performed or have been waived.



3

## PARTIES AND VENUE

9.     Plaintiffs Tuan and Colleen Nguyen (husband and wife) are residents of Virginia who own a home located at 1100 Michaelwood Drive, Virginia Beach, Virginia, 23452.

10.    The Nugyens' home was custom built by Curb Appeal in 2006. In early 2007, the Nguyens moved into the home. Around July 2007, when the humidity rose and the air conditioning units were used, they started to notice a "burnt" smell.

11.    The Nguyens also began to have headaches, which went away when they are away from the home. Mrs. Nguyen and her daughter have frequent sore throats and her daughter often complains about itchy eyes as a result of the emissions from the defective Chinese drywall.

12.    The Nguyens have checked electrical boxes in their home which show the ground wire corroded -- another problem caused by the defective Chinese drywall in their home.

13.    The Nguyens also received a letter from Venture indicating that they have defective Chinese drywall in their home.

14.    Defendant Venture is a Virginia corporation with its principal place of business located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.



LAW OFFICES OF
RICHARD J. SERPE, PC

4

15.    Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders, such as Curb Appeal, that was supplied to and damaged the Plaintiffs.

16.    Defendant Porter-Blaine is a Virginia corporation and is located at 1140 Azalea Garden Rd, Norfolk, Virginia, 23502.

17.    Porter-Blaine, which shares an address with Venture, is one of Venture's drywall installation contractors.  Upon information and belief, Porter-Blaine installed the defective Chinese drywall in Plaintiffs' home, which has resulted in harm and damages to Plaintiffs as described herein.

18.    At all times herein mentioned, each of the Defendants was acting in concert with one another and was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiffs.

## COUNT I
## BREACH OF CONTRACT
### (Against Curb Appeal)

19.    The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

20.    The Nguyens offered, and Curb Appeal accepted, sums of money in exchange for an agreement to build a home pursuant to the terms of the Contract.


LAW OFFICES OF
RICHARD J. SERPE, P.C.

5

21.     Upon information and belief, the Contract entered into by the Nguyens for construction of their family home impliedly and expressly warranted that the home would be free from Defects.

22.     The presence of defective drywall, which "off-gasses" sulfur and other toxic chemicals is a material breach of the duties Curb Appeal owed to the Nguyens pursuant to the Contract.

23.     As a direct consequence of the material breaches of the Contract described above, the Nguyens have sustained substantial damages, including, but not limited to:  The removal and replacement of the defective drywall and/or the family home, replacement of any and all mechanical and structural systems damaged in the home, replacement of personal and other property damaged, costs of moving to alternative housing while repairs are made, costs of comparable alternative housing, loss of use and enjoyment of their home and compensation for the reduced value of their home as a result of the perception of the home as tainted by the defective drywall.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Against Curb Appeal)

24.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

25.     Curb Appeal warranted that the Property and all its fixtures were free from structural defects, constructed in a workmanlike manner and fit for habitation.



6

26.  By distributing, delivering, supplying, inspecting, installing, marketing, and selling a defective, unsafe, and poorly manufactured drywall product, and installing it on the property, Curb Appeal has materially breached its express warranties to the Nguyens.

27.  The Nguyens provided Curb Appeal all required notices of the breach of the warranties and requested that Curb Appeal remedy the same.

28.  The Nguyens relied on these express warranties to their detriment.

29.  As a direct result of this breach of express warranties, personal injury and personal and real property damages have been, and continue to be, incurred by the Nguyens.

## COUNT III
## BREACH OF IMPLIED WARRANTIES
### (Against all Defendants)

30.  The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein

31.  When Defendants distributed, delivered, supplied, inspected, installed, marketed, or sold their defective drywall to the Nguyens, Defendants implicitly warranted that the product was safe, efficacious, well tested, and of high quality.  In addition, by virtue of Va. Code §55-70.1, Curb Appeal is held to have warranted to the Nguyens that the Property and all its fixtures were free from structural defects, constructed in a workmanlike manner and fit for habitation.  The Nguyens are beneficiaries of these warranties.



7

32.     By distributing, delivering, supplying, inspecting, installing marketing, and selling a defective, unsafe and poorly manufactured drywall product, and installing it on the property, Defendants have breached their implied warranties.  The Nguyens provided Defendants all required notices of the breach of the warranties and requested that Defendants remedy the same.

33.     These implied warranties were relied on by the Nguyens because it is understood that the Defendants have knowledge as to the quality, safety, and efficacy of the drywall they distribute, deliver, supply, inspect, install, market and sell.

34.     As a direct result of the breach of implied warranties, personal injury and personal real property damages have been, and continue to be, incurred by the Nguyens for which the Defendants are liable.

**COUNT IV**
**NEGLIGENCE**
**(Against all Defendants)**

35.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

36.     Defendants owed a duty to the Nguyens to exercise reasonable care in the distributing, delivering, supplying, inspecting, installation, marketing, and/or selling drywall, including a duty to adequately warn of its failure to do the same and to warn the Nguyens of this Defect.  Defendants' foreseeable duties include, but are not limited to the following:



RICHARD J. SERPE, PC

a.      using reasonable care in the distributing of the drywall to prevent it from containing the Defect as set forth herein;

8

b.     using reasonable care in the delivering of the drywall to prevent it from containing the Defect as set forth herein;

c.     using reasonable care in the supplying of the drywall to prevent it from containing the Defect as set forth herein;

d.     using reasonable care in the inspecting of the drywall to prevent it from containing the Defect as set forth herein;

e.     using reasonable care in the installation of the drywall to prevent it from containing the Defect as set forth herein;

f.     using reasonable care in the marketing of the drywall to prevent it from containing the Defect as set forth herein;

g.     using reasonable care in the selling of the drywall to prevent it from containing the Defect as set forth herein;

h.     using reasonable care to warn of Defendants' failure to use reasonable care in any of the above circumstances;

i.     using reasonable care to warn, give adequate warning, and/or instruct the Nguyens of all latent dangers and defects;

j.     recalling, or otherwise notifying the Nguyens, at the earliest date that it became known that the drywall used in their family home was dangerous and defective;

k.     recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;



l.      not misrepresenting that the drywall was safe for its intended purpose, when, in fact, it was not;

m.      not distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

n.      not concealing information from the Nguyens regarding reports of adverse effects associated with drywall; and/or

o.      otherwise exercising reasonable care in the distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing the Defect as set forth herein.

37.     Defendants were negligent and breached their duty to exercise reasonable care in the distribution, delivery, supply, inspections, installation, marketing, and/or sale of drywall, including a failure to adequately warn of its failure to do the same and to warn of the latent Defect.  Defendants negligently breached their foreseeable duties to include, but not limited to:

a.      failure to use reasonable care in the distributing of the .drywall to prevent it from containing the Defect as set forth herein;

b.      a failure to use reasonable care in the delivering of the drywall to prevent it from containing the Defect as set forth herein;

c.      a failure to use reasonable care in the supplying of the drywall to prevent it from containing the Defect as set forth herein;

d.      a failure to use reasonable care in the inspecting of the drywall to prevent it from containing the Defect as set forth herein;



10

e.    a failure to use reasonable care in the installation of the drywall to prevent it from containing the Defect as set forth herein;

f.    a failure to use reasonable care in the marketing of the drywall to prevent it from containing the Defect as set forth herein;

g.    a failure to use reasonable care in the selling of the drywall to prevent it from containing the Defect as set forth herein;

h.    a failure to use reasonable care to warn of Defendants' failure to use reasonable care in any of the above circumstances;

i.    a failure to use reasonable care to warn, give adequate warning, and/or instruct the Nguyens of all latent dangers and the Defect;

j.    a failure to recall, or otherwise notify the Nguyens, at the earliest date that it became known that the drywall used in their family home was dangerous and defective;

k.    a failure to recommend the use of drywall with sufficient knowledge as to its Defect and dangerous propensities;

l.    a failure to refrain from misrepresenting that the drywall was safe for its intended purpose when, in fact, it was not;

m.    a failure to refrain from distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

n.    a failure to refrain from concealing information from the Nguyens regarding reports of adverse effects associated with drywall; and/or



11

o.      a failure to otherwise exercise reasonable care in the distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing the Defect as set forth herein.

38.    As a direct and proximate cause of Defendants' foreseeable and negligent acts and omissions, the Nguyens have incurred damages and are entitled to recover monetary damages for:  Repair or replacement of their home; removal and replacement of all of the drywall contained in their home; the replacement of air-conditioners, refrigeration coils and other heating, ventilation and air conditioning equipment, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items; the repair and/or the replacement of the Other Property, and the repair and/or replacement of any materials contaminated or corroded by the drywall.

39.    As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred or will incur direct, incidental and/or consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.



40.    As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred personal injuries and are experiencing, or are at risk of

experiencing, serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

41.     Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT V
## NEGLIGENCE PER SE
### (Against all Defendants)

42.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

43.     Defendants breached their statutory duties to the Nguyens by failing to exercise reasonable care in distributing, delivering, supplying, inspecting, installing, marketing, and selling the defective drywall used in the construction of their family home.

44.     Defendants likewise breached their duties to the Nguyens by failing to warn the Nguyens about the defective nature of the drywall, which both malfunctioned and generated untoward side-effects.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective Chinese drywall and the adverse effects that it could have on the home in which it was used and on the health of the Nguyens themselves.

45.     Given the Defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause both economic and physical damage to the Nguyens.



13

46.     Economic   damages   include,   but   are   not   limited   to,   substantial reconstruction   and   repair   of   the   Nguyen   family   home,   as   well   as   medical   expenses incurred as a result of Defendants' drywall, which are and may be considerable.

47.     Defendants' drywall   was   the   proximate   cause   of   both   the   personal   and property damages which the Nguyens suffered.

48.     As a direct and proximate cause of Defendants' acts and omissions, the Nguyens   have   incurred   personal   injuries   and   are   experiencing   or   are   at   risk   of experiencing   serious   and   dangerous   health   hazards   including   economic   and   non-economic damages from adverse health effects.

49.     Due   to   Defendants'   negligence   per   se,   the   Nguyens   will   continue   to suffer to their personal and real property damages.

50.     Although   Defendants   knew   or   should   have   known   about   the   defective nature   of   their   drywall   products,   Defendants   nevertheless   continued   to   distribute, deliver, supply, market, sell and install it.

## COUNT VI
## UNJUST ENRICHMENT
### (Against all Defendants)

51.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.



52.     Each Defendant individually and collectively profited from the sale of the defective drywall to the Nguyens, receiving payment themselves or through an agent. Defendants received payment for the defective drywall and have retained those sums to the detriment of the Nguyens.

14

53.     Defendants' receipt and retention of the profits gained by sale of the defective drywall to Nguyens is unjust and inequitable.

54.     As a direct and proximate result of Defendants conduct complained of herein, the Nguyens have sustained substantial damages, including, by not limited to: the removal and replacement of the defective drywall and/or the family home, replacement of any and all mechanical and structural systems damaged in the home, replacement of personal and Other Property damaged, costs of moving to alternative housing while repairs are made, costs of comparable alternative housing, loss of use and enjoyment of their home and compensation for the reduced value of their home as a result of the perception of the home as tainted by the defective drywall.

55.     Defendants knew or should have known of the damages their defective drywall would cause as described herein.

## COUNT VII
## PRIVATE NUISANCE
### (Against all Defendants)

56.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

57.     The acts and/or omissions of Defendants have caused injury to the Nguyens, among other things, depriving the Nguyens of the peaceful and quiet use and enjoyment of their property.

58.     Defendants' acts and/or omissions are wrongful and/or tortious, jeopardizing the health, well-being, and safety of the Nguyens.  Defendants knew



15

their acts and/or omissions were wrongful or they should have known, and the resulting harm to the Nguyens is ongoing.

59.    As a direct consequence of Defendants' creation of a private nuisance, the Nguyens have suffered, and continue to suffer, substantial damages to their real and personal property and their persons as described herein.

60.    As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred personal injuries and are experiencing or are at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

## COUNT VIII
## EQUITABLE RELIEF, INJUNCTIVE RELIEF, AND MEDICAL MONITORING
### (Against all Defendants)

61.    The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

62.    Because no adequate remedy exists for the conduct of Defendants, equitable and injunctive relief is appropriate.

63.    The Nguyens will suffer irreparable injury if the Court does not order injunctive relief and medical monitoring.

64.    The Nguyens demand that Defendants recall, repurchase, and/or repair the Nguyens' family home, and initiate and pay for a medical monitoring program.

65.    Medical monitoring is a necessary component of the relief the Court should order because some of the compounds being emitted from Defendants'


LAW OFFICES OF
RICHARD J. SERPE, PC

16

defective drywall are very hazardous, some latently affecting the central nervous system and basic oxygenation on a cellular level.

66. As a direct consequence of the wrongful and/or tortious acts and/or omissions of Defendants' conduct, the Nguyens and their children have been exposed to airborne sulfur-based chemicals in quantities sufficient to harm them, and they have been harmed.

67. Until it has been conclusively established that all defective drywall has been removed and that the air quality is safe, Defendants should bear the expense of air and environmental monitoring in the Nguyens' home.

## COUNT IX
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against all Defendants, Except MetLife)

68. The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

69. Defendants, directly or through agents, were in privity with the Nguyens.

70. At the times Defendants installed, utilized, supplied, inspected and/or sold drywall for use in the Nguyens' home, Defendants knew, or it was reasonably foreseeable, that the drywall would be used in the Nguyens' home as a building material, and impliedly warranted the product to be fit for that use.

71. Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.



17

72.   The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by the Defendants; to wit, the installation of the drywall in the Nguyens' family home for use as a building material, because it contained a Defect as set forth herein.

73.   The Defendants breached the implied warranty of merchantability because the drywall was not fit to be installed in the Nguyens' home as a building material due to the Defect set forth herein.

74.   Defendants had reasonable and adequate notice of the Nguyens' claims for breach of implied warranty of merchantability and have failed to cure.

75.   As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred economic and other damages and are entitled to recover monetary damages for:   Repair or replacement of their home; removal and replacement of all of the drywall contained in their home; the replacement of Other Property (air-conditioner and refrigeration coils, microwaves, faucets, utensils, copper tubing, electrical wiring computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.



76.   As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred or will incur incidental or consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use

and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

77.     Defendants knew or should have known that their wrongful acts and omissions would cause the Nguyens personal and property damages, personal injuries and would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT X
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (Against all Defendants)

78.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

79.     Defendants, directly or through agents, were in privity with the Nguyens.

80.     Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

81.     The drywall was defective because it was not fit for the specific purpose of being installed in the Nguyens' family home as a building material, the purpose for which the Nguyens bought the product in reliance on the judgment of Defendants.

82.     The Defendants breached the implied warranty of fitness for a particular purpose because the drywall was not fit to be installed in the Nguyens' home as a building material due to the Defect set forth herein.



83.     Defendants had reasonable and adequate notice of the Nguyens' claims for breach of implied warranty of fitness for a particular purpose and have failed to cure.

84.     As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred economic and other damages and are entitled to recover monetary damages for:   Repair or replacement of their home; removal and replacement of all of the drywall contained in their home; the replacement of Other Property (air-conditioner and refrigeration coils, microwaves, faucets, utensils, copper tubing, electrical wiring computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

85.     As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred or will incur incidental or consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

86.     Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.



## COUNT XI
## VIOLATION OF CONSUMER PROTECTION ACT
### (Against all Defendants)

87.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

88.     This is an action for relief under Virginia Code § 59.1-196, *et seq.*, pursuant to the Virginia Consumer Protection Act.

89.     Virginia Code § 59.1-198 defines a "Consumer transaction" as "[t]he advertisement, sale, lease, license or offering for sale, lease or license of goods or services to be used primarily for personal, family or household purposes." Furthermore, "Goods" means "all real, personal or mixed property, tangible or intangible."

90.     The advertising, soliciting, providing, offering, distributing, installation and construction of drywall by the Defendants to the Nguyens constitute acts by a supplier under the Virginia Consumer Protection Act.

91.     Virginia Code § 59.1-200.A. provides that:  [t]he following fraudulent acts were practices committed by a supplier connection with a consumer transaction are hereby declared unlawful:



a.     Misrepresenting the source, ... of goods or services;

b.     Misrepresenting the affiliation, connection or association of the  supplier, or of the goods or services, with another;

c.     Misrepresenting geographic origin in connection with goods or services;

21

d.   Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses or benefits;

e.   Misrepresenting that goods or services are of a particular standard, quality, grade, style or model. The Defendants' acts and omissions, as well as their failure to use reasonable care in this matter, as alleged in this Complaint, including, but not limited to, the knowing misrepresentation of the source, affiliation, origin, characteristics, ingredients, standards and quality of the Chinese drywall, that was mislabeled as drywall of "Venture Supply, Inc." when installed in the Nguyens' home constitutes violation of the aforementioned provisions of the Virginia Consumer Protection Act.

92.   The Nguyens have suffered actual damage as a result of the Defendants' violations of the aforementioned provisions of the Virginia consumer Protection Act for which they are entitled to relief under Virginia Code § 59.1,204,205,206 and/or 207.

93.   As a direct and proximate cause of the Defendants' acts and omissions, the Nguyens have incurred damages and are entitled to recovery monetary damages for:  Replacement/repair of their home; the removal and replacement of all drywall contained in their home; the replacement of Other Property; the repair and/or replacement of any materials contaminated or corroded by the defective drywall; the cost of relocation and living during the rehabilitation work required by the foregoing, and such further and additional relief as is appropriate under the circumstances,



including, but not limited to, incidental and consequential damages for the cost of moving while their home is being repaired, renting comparable housing the duration of the repairs, loss of use and enjoyment of real property; the loss and value of the home due to the stigma attached to having defective drywall in the home and other related expenses.

## DEMAND FOR TRIAL BY JURY

The Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

WHEREFORE, the Plaintiffs request that this Honorable Court grant the following relief:

a.    judgment in their favor, jointly and severally, against the Defendants, Venture Supply, Inc., The Porter-Blaine Corp. and Curb Appeal Home Builders, Inc.;

b.    an Order requiring Defendants to pay compensation in the amount of at least Two Million Dollars ($2,000,000.00) in compensatory damages;

c.    an Order for temporary and permanent injunctive relief and requiring medical monitoring;

d.    costs and expenses in this litigation including, but not limited to, expert fees, filing fees and reasonable attorneys' fees and costs and pre-judgment and post-judgment interest; and

e.    such additional and further relief as is just and appropriate under the circumstances.



23

DATED: _5·8·09_        BY: _____

Richard Serpe, Esquire
Law Offices of Richard J. Serpe, P.C.
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
*Counsel for Plaintiffs*

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
HAUSFELD LLP
1700 K Street, N.W.
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Co-counsel for Plaintiffs*

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Co-counsel for Plaintiffs*

Robert Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Co-counsel for Plaintiffs*



24

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VENTURE SUPPLY, INC.

NOW COMES the Plaintiff, by counsel, and propounds the following Interrogatories and Requests for Production of Documents to the Defendant, Venture Supply, Inc., pursuant to Rule 4:8 and 4:9 of the Supreme Court of Virginia, to be answered under oath and documents are to be produced to the Law Offices of Richard J. Serpe, P.C., 580 E. Main Street, Suite 310, Norfolk, Virginia 23510, within twenty-eight (28) days, as follows:

### DEFINITIONS

A.    The terms "You" and "Your" shall mean the Venture Supply, Inc., including all of its officers, directors, agents, servants, employees, partners, attorneys, experts, consultants, and any other representatives.

B.    The terms "Property" and "Premises" shall mean that certain residential property located at 1100 Michaelwood Drive, Virginia Beach, Virginia.

C.    The term "Person" means any natural person, firm, or corporation, partnership, joint venture, or any other form of business entity.

D.    The term "Representative" shall mean and include any and all officers, directors, agents, servants, employees, partners, attorneys, experts, and consultants.



E.    "Identify" or "identity", when used in reference to a person, means to state his or her full name, present address, and home and work telephone numbers, and present or last known work position and/or business affiliation.

F.    "Document" shall mean any written, recorded, or graphic matter, however produced or reproduced, whether or not in the possession, custody, or

control of the party to whom these interrogatories are directed, and whether or not claimed to be privileged against discovery on any ground, including but not limited to reports, books, records, lists, memoranda, correspondence, telegrams, schedules, written papers, photographs, sound recordings, films, or any other documents or writings of any kind whatsoever.

"Document" shall also mean and include the original and every copy regardless of origin or location.

## INTERROGATORIES

1.      Identify every individual who participated in the drafting and preparation of the responses to these interrogatories and the associated request for production of documents.

**ANSWER:**

2.      Identify the name address and telephone number of every individual who has any knowledge of the subject matter of this case or the allegations in the Complaint and matters raised by your defense.

**ANSWER:**

3.      Describe all liability coverage required by you for calendar years 2006 through the present. Include in your description any information concerning denial of coverage or reservation of rights under each policy.

**ANSWER:**

4.      Identify the broker or importer from whom you arrange to purchase drywall from China. Describe all dealings you had with this individual, including any



26

specifications or requirements you communicated to them concerning potential purchasers for drywall.

**ANSWER:**

5.    Identify the manufacturers of all drywall which you have ever purchased from a Chinese manufacturer at any time in the past. For each such manufacturer, identify the time period over which you obtained drywall from them.

**ANSWER:**

6.    When was the first time that any alleged defect or problem was communicated to you concerning drywall manufactured in China? Who made this communication to you? What method of communication that they utilize?

**ANSWER:**

7.    Describe all information or warnings that you ever provided to any of your employees concerning Chinese manufactured drywall. In your answer, specify whether or not you ever instructed employees to avoid discussing Chinese drywall contamination with any individual outside of the company.

**ANSWER:**

8.    Describe all steps you took to investigate any complaints made to you concerning Chinese drywall which you sold or installed. In your description, include information as to where all documentation concerning your investigation is located, and identify all individuals with knowledge of this investigation.

**ANSWER:**



9.     Identify all lawsuits and/or written demand communications which you have received concerning Chinese drywall.

**ANSWER:**

10.    Describe your system for managing your inventory of Chinese manufactured drywall. Include in your description the method by which you document the purchaser of all such drywall and/or the address to which all such drywall is delivered.

**ANSWER:**

11.    What year was the home for Samuel Porter constructed? Describe any conversations which took place prior to the construction of his house concerning the use or prohibition on use of Chinese drywall and his personal residence.

**ANSWER:**

12.    Describe all communications you have received from any individual concerning efforts made to repair homes which contain Chinese drywall supplied by you. In your description, include the identity of all such individuals who have contacted you, the substance of your communications, and the date(s) of all such communications.

**ANSWER:**



## REQUESTS FOR PRODUCTION OF DOCUMENTS TO VENTURE SUPPLY, INC.

1.    Produce any document reflecting your purchase of drywall from China, including but not limited to purchase orders, contracts of sale, and bills of lading.

**RESPONSE:**

2.    Produce any document reflecting your relationship with any individual or company who served as an importer or facilitator of your purchase with any Chinese manufacturers of drywall.

**RESPONSE:**

3.    Produce any document reflecting specifications, standards, or requirements for the composition or construction for drywall which you communicated to any Chinese manufacturers.

**RESPONSE:**

4.    Produce any document reflecting specifications, standards, or requirements promised or warranted by any Chinese drywall manufacturer with respect to its products.

**RESPONSE:**

5.    Produce any warnings provided to you by any drywall manufacturer concerning any dangerous property or component of their product.

**RESPONSE:**

6.    Produce any document reflecting your purchase of drywall from China prior to 2006, specifically including your purchase of drywall from Knauf Plasterboard,


LAW OFFICES OF
RICHARD J. SERPE, PC

29

as well as any other drywall manufacturer and specifically including your receipt of drywall regardless of whether or not such drywall was ultimately sold or installed.

**RESPONSE:**

7.    Produce any document reflecting your sale of drywall manufactured in China to any drywall contractor or builder.

**RESPONSE:**

8.    Produce any document reflecting your sale of drywall manufacturing China to any retailer including Home Depot, Lowe's, etc.

**RESPONSE:**

9.    Any document reflecting complaints made to you by any homeowner concerning the toxic nature of drywall, including, but not limited to, drywall manufactured in China.

**RESPONSE:**

10.    Any document reflecting complaints made to you or inquiries made to you by Dragas Homes concerning the presence of contaminated drywall.

**RESPONSE:**

11.    Any document reflecting complaints or inquiries made to you from any drywall contractor concerning drywall manufactured in China.

**RESPONSE:**

12.    Every document in your possession containing the names Taishan Gypsum Co., Ltd (f/k/a Shandong Taihe Dongxin Co., Ltd.).

**RESPONSE:**



13.    Produce every document in your possession concerning damage allegedly caused by Chinese drywall to any building component, including, but not limited to, air conditioning systems, electrical systems, appliances, metallic surfaces, and consumer goods.

RESPONSE:

14.    Produce every document in your possession concerning any alleged health effects from Chinese drywall.

RESPONSE:

15.    Produce every document in your possession concerning the allegation that U.S. manufactured drywall also causes property damage and/or health effects.

RESPONSE:

16.    Produce every insurance policy which may provide coverage to you for calendar years 2006 through the present.  Also, produce all correspondence and notices concerning any denial of coverage or reservation of rights under your policy.

RESPONSE:

17.    Produce any document indicating that Chinese manufactured drywall was sold to or installed in the Plaintiffs' home, 1100 Michaelwood Drive, Virginia Beach, Virginia.

RESPONSE:

18.    Produce any document reflecting complaints made by employees concerning their working with Chinese drywall including but not limited to complaints concerning unpleasant smell and potential health implications of such exposure.


LAW OFFICES OF
RICHARD J. SERPE, P.C.

31

**RESPONSE:**

TUAN NGUYEN and COLLEEN
NGUYEN

By: _____
                  Of Counsel

Richard J. Serpe, Esq. - VA Bar No. 33340
LAW OFFICES OF RICHARD J. SERPE, P.C.
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510
(757) 233-0009
(757) 233-0455 (facsimile)


Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
HAUSFELD LLP
1700 K Street, N.W.
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Co-counsel for Plaintiffs*

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Co-counsel for Plaintiffs*

Robert Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Co-counsel for Plaintiffs*



32

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## AND REQUESTS FOR PRODUCTION OF DOCUMENTS
## TO DEFENDANT, THE PORTER-BLAINE CORP.

NOW COMES the Plaintiff, by counsel, and propounds the following Interrogatories and Requests for Production of Documents to the Defendant, The Porter-Blaine Corp., pursuant to Rule 4:8 and 4:9 of the Supreme Court of Virginia, to be answered under oath and documents are to be produced to the Law Offices of Richard J. Serpe, P.C., 580 E. Main Street, Suite 310, Norfolk, Virginia 23510, within twenty-eight (28) days, as follows:

### DEFINITIONS

A.     The terms "You" and "Your" shall mean The Porter-Blaine Corp., including all of its officers, directors, agents, servants, employees, partners, attorneys, experts, consultants, and any other representatives.

B.     The terms "Property" and "Premises" shall mean that certain residential property located at 1100 Michaelwood Drive, Virginia Beach, Virginia.

C.     The term "Person" means any natural person, firm, or corporation, partnership, joint venture, or any other form of business entity.

D.     The term "Representative" shall mean and include any and all officers, directors, agents, servants, employees, partners, attorneys, experts, and consultants.

E.     "Identify" or "identity", when used in reference to a person, means to state his or her full name, present address, and home and work telephone numbers, and present or last known work position and/or business affiliation.



33

F.      "Document" shall mean any written, recorded, or graphic matter, however produced or reproduced, whether or not in the possession, custody, or control of the party to whom these interrogatories are directed, and whether or not claimed to be privileged against discovery on any ground, including but not limited to reports, books, records, lists, memoranda, correspondence, telegrams, schedules, written papers, photographs, sound recordings, films, or any other documents or writings of any kind whatsoever.

"Document" shall also mean and include the original and every copy regardless of origin or location.

## INTERROGATORIES

1.      Identify every individual who participated in the drafting and preparation of the responses to these interrogatories and the associated request for production of documents.

**ANSWER:**

2.      Identify the name address and telephone number of every individual who has any knowledge of the subject matter of this case or the allegations in the Complaint and matters raised by your defense.

**ANSWER:**



3.      Describe all liability coverage required by you for calendar years 2006 through the present. Include in your description any information concerning denial of coverage or reservation of rights under each policy.

**ANSWER:**

34

4.     Identify the broker or importer from whom you arrange to purchase drywall from China.  Describe all dealings you had with this individual, including any specifications or requirements you communicated to them concerning potential purchasers for drywall.

**ANSWER:**

5.     Identify the manufacturers of all drywall which you have ever purchased from a Chinese manufacturer at any time in the past.  For each such manufacturer, identify the time period over which you obtained drywall from them.

**ANSWER:**

6.     When was the first time that any alleged defect or problem was communicated to you concerning drywall manufactured in China? Who made this communication to you? What method of communication that they utilize?

**ANSWER:**

7.     Describe all information or warnings that you ever provided to any of your employees concerning Chinese manufactured drywall. In your answer, specify whether or not you ever instructed employees to avoid discussing Chinese drywall contamination with any individual outside of the company.

**ANSWER:**



8.     Describe all steps you took to investigate any complaints made to you concerning Chinese drywall which you sold or installed.  In your description, include information as to where all documentation concerning your investigation is located, and identify all individuals with knowledge of this investigation.

**ANSWER:**

9.      Identify all lawsuits and/or written demand communications which you have received concerning Chinese drywall.

**ANSWER:**

10.      Describe your system for managing your inventory of Chinese manufactured drywall.  Include in your description the method by which you document the purchaser of all such drywall and/or the address to which all such drywall is delivered.

**ANSWER:**

11.      What year was the home for Samuel Porter constructed?  Describe any conversations which took place prior to the construction of his house concerning the use or prohibition on use of Chinese drywall and his personal residence.

**ANSWER:**

12.      Describe all communications you have received from any individual concerning efforts made to repair homes which contain Chinese drywall supplied by you.  In your description, include the identity of all such individuals who have contacted you, the substance of your communications, and the date(s) of all such communications.

**ANSWER:**



## REQUESTS FOR PRODUCTION OF DOCUMENTS
## TO THE PORTER-BLAINE CORP.

1.      Produce any document reflecting your purchase of drywall from China, including but not limited to purchase orders, contracts of sale, and bills of lading.

**RESPONSE:**

2.      Produce any document reflecting your relationship with any individual or company who served as an importer or facilitator of your purchase with any Chinese manufacturers of drywall.

**RESPONSE:**

3.      Produce any document reflecting specifications, standards, or requirements for the composition or construction for drywall which you communicated to any Chinese manufacturers.

**RESPONSE:**

4.      Produce any document reflecting specifications, standards, or requirements promised or warranted by any Chinese drywall manufacturer with respect to its products.

**RESPONSE:**

5.      Produce any warnings provided to you by any drywall manufacturer concerning any dangerous property or component of their product.

**RESPONSE:**

6.      Produce any document reflecting your purchase of drywall from China prior to 2006, specifically including your purchase of drywall from Knauf Plasterboard,


LAW OFFICES OF
RICHARD J. SERPE, PC

37

as well as any other drywall manufacturer and specifically including your receipt of drywall regardless of whether or not such drywall was ultimately sold or installed.

**RESPONSE:**

7.    Produce any document reflecting your sale of drywall manufactured in China to any drywall contractor or builder.

**RESPONSE:**

8.    Produce any document reflecting your sale of drywall manufacturing China to any retailer including Home Depot, Lowe's, etc.

**RESPONSE:**

9.    Any document reflecting complaints made to you by any homeowner concerning the toxic nature of drywall, including, but not limited to, drywall manufactured in China.

**RESPONSE:**

10.    Any document reflecting complaints made to you or inquiries made to you by Dragas Homes concerning the presence of contaminated drywall.

**RESPONSE:**

11.    Any document reflecting complaints or inquiries made to you from any drywall contractor concerning drywall manufactured in China.

**RESPONSE:**

12.    Every document in your possession containing the names Taishan Gypsum Co., Ltd (f/k/a Shandong Taihe Dongxin Co., Ltd.).

**RESPONSE:**



38

13.     Produce every document in your possession concerning damage allegedly caused by Chinese drywall to any building component, including, but not limited to, air conditioning systems, electrical systems, appliances, metallic surfaces, and consumer goods.

**RESPONSE:**

14.     Produce every document in your possession concerning any alleged health effects from Chinese drywall.

**RESPONSE:**

15.     Produce every document in your possession concerning the allegation that U.S. manufactured drywall also causes property damage and/or health effects.

**RESPONSE:**

16.     Produce every insurance policy which may provide coverage to you for calendar years 2006 through the present.  Also, produce all correspondence and notices concerning any denial of coverage or reservation of rights under your policy.

**RESPONSE:**

17.     Produce any document indicating that Chinese manufactured drywall was sold to or installed in the Plaintiffs' home, 1100 Michaelwood Drive, Virginia Beach, Virginia.

**RESPONSE:**



18.     Produce any document reflecting complaints made by employees concerning their working with Chinese drywall including but not limited to complaints concerning unpleasant smell and potential health implications of such exposure.

39

RESPONSE:

TUAN NGUYEN and COLLEEN
NGUYEN



By: _____
Of Counsel

Richard J. Serpe, Esq. - VA Bar No. 33340
LAW OFFICES OF RICHARD J. SERPE, P.C.
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510
(757) 233-0009
(757) 233-0455 (facsimile)



Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
HAUSFELD LLP
1700 K Street, N.W.
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Co-counsel for Plaintiffs*

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Co-counsel for Plaintiffs*

Robert Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Co-counsel for Plaintiffs*

40

## <u>PLAINTIFF'S FIRST SET OF INTERROGATORIES AND<br>REQUESTS FOR PRODUCTION OF DOCUMENTS<br>TO DEFENDANT, CURB APPEAL HOME BUILDERS, INC.</u>

NOW COMES the Plaintiff, by counsel, and propounds the following Interrogatories and Requests for Production of Documents to the Defendant, Curb Appeal Home Builders, Inc., pursuant to Rule 4:8 and 4:9 of the Supreme Court of Virginia, to be answered under oath and documents are to be produced to the Law Offices of Richard J. Serpe, P.C., 580 E. Main Street, Suite 310, Norfolk, Virginia 23510, within twenty-eight (28) days, as follows:

## <u>DEFINITIONS</u>

A.      The terms "You" and "Your" shall mean the Curb Appeal Home Builders, Inc., including all of its officers, directors, agents, servants, employees, partners, attorneys, experts, consultants, and any other representatives.

B.      The terms "Property" and "Premises" shall mean that certain residential property located at 1100 Michaelwood Drive, Virginia Beach, Virginia.

C.      The term "Person" means any natural person, firm, or corporation, partnership, joint venture, or any other form of business entity.

D.      The term "Representative" shall mean and include any and all officers, directors, agents, servants, employees, partners, attorneys, experts, and consultants.

E.      "Identify" or "identity", when used in reference to a person, means to state his or her full name, present address, and home and work telephone numbers, and present or last known work position and/or business affiliation.



41

F.     "Document" shall mean any written, recorded, or graphic matter, however produced or reproduced, whether or not in the possession, custody, or control of the party to whom these interrogatories are directed, and whether or not claimed to be privileged against discovery on any ground, including but not limited to reports, books, records, lists, memoranda, correspondence, telegrams, schedules, written papers, photographs, sound recordings, films, or any other documents or writings of any kind whatsoever.

"Document" shall also mean and include the original and every copy regardless of origin or location.

## INTERROGATORIES

1.     Identify every individual who participated in the drafting and preparation of the responses to these interrogatories and the associated request for production of documents.

**ANSWER:**

2.     Identify the name address and telephone number of every individual who has any knowledge of the subject matter of this case or the allegations in the Complaint and matters raised by your defense.

**ANSWER:**



3.     Describe all liability coverage required by you for calendar years 2006 through the present. Include in your description any information concerning denial of coverage or reservation of rights under each policy.

**ANSWER:**

42

4.    Identify the broker or importer from whom you arrange to purchase drywall from China.  Describe all dealings you had with this individual, including any specifications or requirements you communicated to them concerning potential purchasers for drywall.

**ANSWER:**

5.    Identify the manufacturers of all drywall which you have ever purchased from a Chinese manufacturer at any time in the past.  For each such manufacturer, identify the time period over which you obtained drywall from them.

**ANSWER:**

6.    When was the first time that any alleged defect or problem was communicated to you concerning drywall manufactured in China? Who made this communication to you? What method of communication that they utilize?

**ANSWER:**

7.    Describe all information or warnings that you ever provided to any of your employees concerning Chinese manufactured drywall. In your answer, specify whether or not you ever instructed employees to avoid discussing Chinese drywall contamination with any individual outside of the company.

**ANSWER:**

8.    Describe all steps you took to investigate any complaints made to you concerning Chinese drywall which you sold or installed.  In your description, include information as to where all documentation concerning your investigation is located, and identify all individuals with knowledge of this investigation.



43

**ANSWER:**

9.      Identify all lawsuits and/or written demand communications which you have received concerning Chinese drywall.

**ANSWER:**

10.      Describe your system for managing your inventory of Chinese manufactured drywall. Include in your description the method by which you document the purchaser of all such drywall and/or the address to which all such drywall is delivered.

**ANSWER:**

11.      What year was the home for Samuel Porter constructed? Describe any conversations which took place prior to the construction of his house concerning the use or prohibition on use of Chinese drywall and his personal residence.

**ANSWER:**

12.      Describe all communications you have received from any individual concerning efforts made to repair homes which contain Chinese drywall supplied by you. In your description, include the identity of all such individuals who have contacted you, the substance of your communications, and the date(s) of all such communications.

**ANSWER:**



44

## REQUESTS FOR PRODUCTION OF DOCUMENTS
## TO CURB APPEAL HOME BUILDERS, INC.

1.      Produce any document reflecting your purchase of drywall from China, including but not limited to purchase orders, contracts of sale, and bills of lading.

**RESPONSE:**

2.      Produce any document reflecting your relationship with any individual or company who served as an importer or facilitator of your purchase with any Chinese manufacturers of drywall.

**RESPONSE:**

3.      Produce any document reflecting specifications, standards, or requirements for the composition or construction for drywall which you communicated to any Chinese manufacturers.

**RESPONSE:**

4.      Produce any document reflecting specifications, standards, or requirements promised or warranted by any Chinese drywall manufacturer with respect to its products.

**RESPONSE:**

5.      Produce any warnings provided to you by any drywall manufacturer concerning any dangerous property or component of their product.

**RESPONSE:**

6.      Produce any document reflecting your purchase of drywall from China prior to 2006, specifically including your purchase of drywall from Knauf Plasterboard,



45

as well as any other drywall manufacturer and specifically including your receipt of drywall regardless of whether or not such drywall was ultimately sold or installed.

RESPONSE:

7.      Produce any document reflecting your sale of drywall manufactured in China to any drywall contractor or builder.

RESPONSE:

8.      Produce any document reflecting your sale of drywall manufacturing China to any retailer including Home Depot, Lowe's, etc.

RESPONSE:

9.      Any document reflecting complaints made to you by any homeowner concerning the toxic nature of drywall, including, but not limited to, drywall manufactured in China.

RESPONSE:

10.     Any document reflecting complaints made to you or inquiries made to you by Dragas Homes concerning the presence of contaminated drywall.

RESPONSE:

11.     Any document reflecting complaints or inquiries made to you from any drywall contractor concerning drywall manufactured in China.



RESPONSE:

12.     Every document in your possession containing the names Taishan Gypsum Co., Ltd (f/k/a Shandong Taihe Dongxin Co., Ltd.).

RESPONSE:

46

13.     Produce every document in your possession concerning damage allegedly caused by Chinese drywall to any building component, including, but not limited to, air conditioning systems, electrical systems, appliances, metallic surfaces, and consumer goods.

**RESPONSE:**

14.     Produce every document in your possession concerning any alleged health effects from Chinese drywall.

**RESPONSE:**

15.     Produce every document in your possession concerning the allegation that U.S. manufactured drywall also causes property damage and/or health effects.

**RESPONSE:**

16.     Produce every insurance policy which may provide coverage to you for calendar years 2006 through the present. Also, produce all correspondence and notices concerning any denial of coverage or reservation of rights under your policy.

**RESPONSE:**

17.     Produce any document indicating that Chinese manufactured drywall was sold to or installed in the Plaintiffs' home, 1100 Michaelwood Drive, Virginia Beach, Virginia.

**RESPONSE:**

18.     Produce any document reflecting complaints made by employees concerning their working with Chinese drywall including but not limited to complaints concerning unpleasant smell and potential health implications of such exposure.



**RESPONSE:**

TUAN NGUYEN and COLLEEN
NGUYEN

By:  _____
Of Counsel

Richard J. Serpe, Esq. - VA Bar No. 33340
LAW OFFICES OF RICHARD J. SERPE, P.C.
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510
(757) 233-0009
(757) 233-0455 (facsimile)



Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
HAUSFELD LLP
1700 K Street, N.W.
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Co-counsel for Plaintiffs*

Robert Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Co-counsel for Plaintiffs*

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Co-counsel for Plaintiffs*

48