
For Lawyers

For the Public

Inside the Bar

Home > For Lawyers > Ethics > Legal Ethics > Opinions

# Opinion 301

**Conflict of Interest: Simultaneous Representation of Two Plaintiffs Against a Common Defendant in Separate but Related Lawsuits**

A lawyer representing the plaintiffs in a class action lawsuit is not precluded from representing a member of the class who wishes to bring a tort action involving related subject matter against the same defendant. The test is whether representation of one client will be or is likely to be adversely affected by representation of the other. If not, dual representation is permissible without client consent. If so, dual representation is permissible only after informed consent of all affected clients is obtained. The situation must be reassessed if adversity appears to arise in the course of the representations.

**Applicable Rule**

- Rule 1.7 (Conflict of Interest: General Rule)

**Inquiry**

An inquiring law firm represents the plaintiffs in a class action suit against the District of Columbia that is currently pending in the United States District Court. The class is composed of approximately 3,000 special education students in the District of Columbia who complain that the District is not meeting its obligations under the Individuals with Disabilities Education Act (20 U.S.C. §1400, *et seq.*) to provide a free, appropriate education (and related services) to meet each individual student's unique special education needs. Among other things, the court has ordered the District of Columbia Public Schools to pay tuition bills in a timely manner and to provide appropriate transportation services.

During the pendency of the suit, an individual class member was abducted and assaulted, allegedly as a result of the failure to provide adequate transportation services. Once the law firm learned of these events, it filed in the class action a Motion for Injunctive Relief on behalf of the individual class member. The class member and his mother have now asked the law firm to represent them in a tort action against the District of Columbia. The law firm has requested our opinion as to whether potential conflicts of interest preclude it from accepting the proffered representation.

**Discussion**

Rule 1.7 of the District of Columbia Rules of Professional Conduct states general rules governing conflicts of interest. It is important to note at the outset that the District of Columbia Court of Appeals "adopted a version of Rule 1.7 which substantially differs from the American Bar Association's Model Rule 1.7." *Griva v. Davison*, 637 A.2d 830, 842 (D.C. 1994). Thus, while interpretations of the ABA Model Rule may be helpful, they must be applied with caution.

"The legislative history of our Rule 1.7 reflects an intention to divide potential conflict of interest situations into three categories: (1) cases in which representation is absolutely forbidden, (2) cases in which dual representation is permissible after informed consent of all affected clients is obtained, and (3) cases in which dual representation is permitted without client consent." *Griva v. Davison*, 637 A.2d at 842. This is not a situation (prohibited by Rule 1.7(a)) where a lawyer is being

asked to advance adverse positions on behalf of different clients in the same matter.[1] Rather, the law firm has been asked to represent two clients, whose interests seem to be similar, in separate law suits with an overlapping subject matter. We must look to Rule 1.7(b) for guidance.

Rule 1.7(b) states, in pertinent part, that "a lawyer shall not represent a client with respect to a matter if:

> (2) such representation will be or is likely to be adversely affected by representation of another client; [or]
> (3) representation of another client will be or is likely to be adversely affected by such representation[.]"

These are not absolute prohibitions, however.

> A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if each potentially affected client provides consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation.

Rule 1.7(c). Thus, representation of both clients is permitted if each gives informed consent. The more difficult question is whether the law firm even needs to seek such consent. The answer to that question depends, in turn, on whether the representation of one client "will be or is likely to be adversely affected" by representation of the other.

The test has objective as well as subjective elements. "Although the lawyer must be satisfied that the representation can be wholeheartedly and zealously undertaken, if an objective observer would have any reasonable doubt on that issue, the client has a right to disclosure of all relevant considerations and the opportunity to be the judge of its own interests." Rule 1.7, Comment [7]. However, the conflict must be likely, not merely hypothetical. In Opinion 265 we explained that "[t]he rule focuses on those conflicts that would be apparent to a reasonably conscientious lawyer." D.C. Bar Op. 265 (1996). "[I]n a wide variety of routine cases where no concrete adverse effect by one representation on another is foreseeable, the inquirer is not obliged to make disclosure or to seek consent." Id. In other words, "[t]he mere possibility that a result in one representation will affect the outcome of another is not enough to trigger a conflict as to which waiver must be sought." Id.

Nevertheless, "if an objective observer can identify and describe concrete ways in which one representation may reasonably be anticipated to interfere with the other, then a cognizable conflict arises under our rules, and disclosure must be made and a waiver sought." Id. "If the lawyer determines or can foresee that an issue with respect to the application of paragraph (b) exists, the only prudent course is for the lawyer to make disclosure, pursuant to paragraph (c), to each affected client and enable each to determine whether in its judgment the representation at issue is likely to affect its interests adversely." Rule 1.7, Comment [9]. "It is much to be preferred that a representation that is likely to lead to a conflict be avoided before the representation begins, and a lawyer should bear this fact in mind in considering whether disclosure should be made and consent obtained at the outset." Id., Comment [22].[2]

"Central to deciding whether adverse effect, and therefore a conflict, exists will be issues such as: (1) the relationship between the two forums in which the two representations will occur; (2) the centrality in each matter of the legal issue as to which the lawyer will be asked to advocate; (3) the directness of the adversity between the positions on the legal issue of the two clients; (4) the extent to which the clients may be in a race to obtain the first ruling on a question of law that is not well settled; and (5) whether a reasonable observer would conclude that the lawyer would be likely to hesitate in either of her

representations or to be less aggressive on one client's behalf because of the other representation. . . . [T]he focus of the analysis ought not to be on formalities but should be on the actual harm that may befall one or both clients." D.C. Bar Op. 265.

Given the facts presented in the inquiry, it seems unlikely that representation of either client "will be or is likely to be adversely affected" by representation of the other. Most importantly, there is no present adversity of positions, and it seems unlikely that direct adversity will arise in the future. In both law suits the plaintiffs are, or will be, asserting the obligation of the District of Columbia to provide adequate transportation services. They thus are on the same side of the issue. See *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (not improper for single lawyer to represent police officers and city in malicious prosecution action, even though city's only liability arose under doctrine of respondeat superior; although city might have defended by claiming that officers were not acting within the scope of their official duties, in this case both city and officers argued that officers were acting in their official capacities, and lawyer advanced all possible defenses available to officers); *Molitoris v. Woods*, 618 A.2d 985 (Pa. Super. Ct. 1992) (no conflict of interest when law firm represented plaintiff in personal injury suit and employee benefit plan in its subrogation claim arising from payment of medical benefits to plaintiff; subrogation interest of plan identical to interest of plaintiff in recovery against defendants).

Moreover, the potential for conflict is lessened because the plaintiffs seek different relief. In the class action, plaintiffs seek injunctive relief and, from time to time, submit claims for attorneys' fees. There is no claim for money damages. The tort action, by contrast, will present solely a claim for money damages. Success by one client should not interfere with the other client's chances of winning its suit. *Cf. Fiandaca v. Cunningham*, 827 F.2d 825 (1st Cir. 1987) (counsel for class of female inmates seeking improved facilities should have been disqualified when defendants offered to settle suit on advantageous terms which were contrary to the interests of a class of plaintiffs which counsel represented in a separate action); *North Carolina State Bar v. Whitted*, 347 S.E.2d 60 (N.C. Ct. App. 1986) (improper to undertake representation of two wrongful death claimants in obtaining settlement from limited fund; any apportionment would benefit one client to other's detriment).[3] Similarly, a ruling against one client should not preclude relief for the other.

It has been suggested that a conflict may arise in the course of defining the District's obligation to provide adequate transportation services for special education students. The tort plaintiff likely will assert that the District breached its obligations because the bus driver did not wait long enough for the plaintiff to arrive for pick-up or did not take additional steps to determine whether the plaintiff was planning to go to school that day. However, extending the time required to pick up one student will necessarily lengthen the ride and extend the waiting time of other students. This possibility does not seem to create a conflict that is any more concrete than the fact that the law firm is representing a class of approximately 3,000 students. Inevitably, increased attention to the transportation needs of one class member may divert resources from the others. These facts without more do not create a conflict, but the law firm should remain sensitive to the possibility that a conflict may arise.

The prospect of a conflict developing is lessened by the fact that claims for equitable damages and attorneys' fees are decided by the court. A claim for money damages is ordinarily decided by a jury. A conflict will be even less likely if the tort action is filed in the Superior Court, or is assigned to a different federal judge.[4] Moreover, it is unlikely that any actual conflict will escape notice, because the representations are public in nature and will be monitored by the judges presiding over the litigation.

Because there is no present or likely conflict, the law firm may accept the second representation without obtaining the consent of both clients. However, it must reassess the situation as both lawsuits progress. If a conflict as defined by Rule 1.7 develops and the lawyer nevertheless is "satisfied that [both

representations] can be wholeheartedly and zealously undertaken," Rule 1.7, Comment [7], the firm must seek consent of both clients or withdraw if that is possible in compliance with Rule 1.16.

**Conclusion**
Based on the facts presented, Rule 1.7 does not preclude the law firm from undertaking the second representation. The most cautious approach would be to seek the informed consent of both clients as the second representation begins. However, the District of Columbia's version of Rule 1.7 recognizes that there are cases where dual representation is permitted without client consent. Because it does not appear that representation of one client "will be or is likely to be adversely affected by" representation of the other, we conclude that the law firm may undertake the second representation without seeking client consent, subject to reassessment if at a later time adversity between the interests of the client in the second representation and those of the class in the first representation should arise.

Inquiry No. 99-7-22
Adopted: June 20, 2000

1. Rule 1.7(a) provides that "[a] lawyer shall not advance two or more adverse positions in the same matter."
2. In a recent opinion this committee discussed the impact of joint representation on the lawyer's duty to maintain client confidences and to keep each client reasonably informed. D.C. Bar Op. 296 (2000).
3. A conflict may arise if it appears that the cost of complying with a judgment in favor of one client will render the defendant financially unable to satisfy the claims of another client. There is no suggestion that such a risk has arisen here.
4. This situation is unlike that discussed in ABA Formal Opinion 93-377 (1993). Interpreting Model Rule 1.7(b), the ABA Committee opined that if "two matters are being litigated in the same jurisdiction, and there is a *substantial risk* that the law firm's representation of one client will create a legal precedent, even if not binding, which is likely *materially* to undercut the legal position being urged on behalf of the other client, the lawyer should either refuse to accept the second representation or (if otherwise permissible) withdraw from the first, unless both clients consent after full disclosure of the potential ramifications of the lawyer continuing to handle both matters." (emphasis added). This conclusion was based on the premise that the lawyer was being asked to advocate "directly contrary" positions with respect to a substantive legal issue presented in the two matters. Here, by contrast, it does not seem likely that the law firm will face the prospect of arguing "directly contrary" legal positions.




**DCBAR The American Express Card welcome here!**
Accepted for dues payments, course registrations, and more!

The District of Columbia Bar | 1101 K Street NW, Suite 200 | Washington DC 20005 | 202-737-4700 | **Directions/Parking**
©2009 D.C. Bar **Restrictions on Use** All rights reserved. **Privacy Policy** | **Accessibility Policy** | **Disclaimer** | **Author guidelines**