**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED | : | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | : | |
| LITIGATION | : | SECTION:  L |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| Germano, et al. v. Taishan Gypsum Co., Ltd., | : | |
| f/k/a Shandong Taihe Dongxin Co. Ltd., et al., | : | |
| Case No. 09-6687 (E.D.La.) | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR MORE DEFINITE STATEMENT AND MOTION TO DISMISS**

Defendant Tobin Trading Inc. ("Tobin"), by counsel, for its Memorandum in Support of

Motion For More Definite Statement and Motion to Dismiss pursuant to Rules 9 and 12 of the

Federal Rules of Civil Procedure, states the following:

**PROCEDURAL HISTORY**

Plaintiffs, individually and on behalf of a proposed class of "others similarly situated,"

commenced this action on May 1, 2009 with the filing of a "Complaint – Class Action"

(*Germano* Doc. No. 1).  This action purportedly was filed pursuant to Fed. R. Civ. P. 23 on

behalf of a class of "owners and residents of residential homes in the Commonwealth of Virginia

containing defective drywall that was designed, manufactured, exported, imported, distributed,

delivered, supplied, inspected, marketed, sold and/or installed by Defendants Taishan Gypsum

1

Co. Ltd. f/k/a Shandong Taihe Dongxin, Cp. Ltd. ("Taishan") and/or Venture Supply Inc."
(Complaint at p. 1). Plaintiffs also alleged that the action was brought "on behalf of a subclass of
similarly situated owners and residents of residential homes in the Commonwealth of Virginia
containing defective drywall that were built and/or had drywall installed by developer Harbor
Walk Development, LLC ("Harbor Walk") and/or The Porter-Blaine Corp. ("Porter-Blaine")"
(*Id.*). For purposes of invoking jurisdiction under the Class Action Fairness Act ("CAFA"), 28
U.S.C. § 1332(d)(2), Plaintiffs have alleged that the amount in controversy exceeds $5 million.

On May 26, 2009, Plaintiffs filed a "First Amended Complaint – Class Action," adding
Tobin Trading, Inc. as a defendant (*Germano* Doc. No. 3). The Amended Complaint was alleged
in eight (8) counts: (1) negligence (all defendants); (2) negligence *per se* (all defendants); (3)
breach of express and/or implied warranties (all defendants); (4) breach of contract (Harbor
Walk only); (5) private nuisance (all defendants); (6) unjust enrichment (all defendants); (7)
violation of the Virginia Consumer Protection Act (all defendants); and (8) equitable and
injunctive relief and medical monitoring (all defendants) (see Amended Complaint pp. 10-16).
As to Tobin, the allegations of the First Amended Complaint are and were conclusory, vague,
non-specific and ambiguous, and failed to state a claim upon which the relief demanded can be
granted.[1]

On July 22, 2009, Tobin responded to the "First Amended Complaint – Class Action"
with a Motion for More Definite Statement, Motion to Dismiss and Answer (see *Germano* Doc.
54, 55, 57). Before these motions were heard, on October 6, 2009 the United States Judicial
Panel on Multidistrict Litigation entered a Transfer Order directing that this action was

---

[1] Notably, as alleged, all plaintiffs and all defendants are citizens of the Commonwealth of Virginia, with the
exception of defendant Taishan. It is questionable whether this Court can exercise personal jurisdiction over
defendant Taishan, and whether this Court has proper subject matter jurisdiction over this proposed class action
pursuant to CAFA, 28 U.S.C. § 1332(d)(2).

transferred to the Eastern District of Louisiana for inclusion in the coordinated or consolidated pretrial proceedings occurring in MDL Docket No. 2047.

On October 30, 2009, the Plaintiffs filed a Motion To Amend The First Amended Class Action Complaint By Interlineation, representing that "Plaintiffs seek to amend the class definition as to í Taishan from a Virginia class to a national class, *i.e.,* all persons and entities in the United States with properties that were impacted by defective drywall that was manufactured and distributed by Taishan" (MDL No. 2047, Doc. 396). In the supporting memorandum that accompanied the Plaintiffs' Motion To Amend, the Plaintiffs represented that "[w]hile the proposed amendment expands the class that has been asserted against Taishan, it has no impact on the claims and/or subclasses that have been asserted against Tobin, Venture, Harbor-Walk, and Porter-Blaine" (MDL No. 2047, Doc. 396, Memorandum at p. 4).

By Order entered November 17, 2009 (MDL No. 2047, Doc. 469), the Court granted the Plaintiffs' Motion To Amend The First Amended Class Action Complaint By Interlineation and directed the Clerk to enter the Second Amended Class Action Complaint on the docket. The Second Amended Complaint was entered on the docket of MDL No. 2047 on November 18, 2009 (Doc. No. 470). The Order did not address whether the defendants in this case would be required to file responsive pleadings. To the extent that a response may be required, Tobin is filing this motion and its answer and affirmative defenses to the Second Amended Complaint.

## ALLEGATIONS OF SECOND AMENDED COMPLAINT

As alleged, Plaintiffs Michelle Germano and Dennis and Sharon Jackson contracted with "Defendants Harbor Walk and/or Porter-Blaine" to build their homes in Norfolk, Virginia "and/or" to install drywall in their homes (Second Amended Complaint ["SAC"] ¶¶ 4-7, 66-68). Plaintiffs allege that "Harbor Walk and/or Porter-Blaine" built their homes with "defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied,

inspected, marketed, and/or sold by Defendants Taishan, Tobin and/or Venture" (SAC ¶¶ 5, 7). Plaintiffs Jason and Lisa Dunaway allege that they "built their own home" in Courtland, Virginia, and allege that "it contains defective drywall" (SAC ¶¶ 8-9).

Plaintiffs allege that defendant Harbor Walk "built some Plaintiffs' and Class Members' homes and, directly or through agents, installed defective drywall in those homes, which has resulted in harm and damages to Plaintiffs and Subclass Members" (SAC ¶ 19). They allege that "Porter-Blaine installed defective drywall in the Harbor Walk homes, and in other homes" (SAC ¶ 21).

The "defective drywall," Plaintiffs allege, was "designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold" by defendant Taishan (SAC ¶ 11). Plaintiffs allege that defendant Venture "imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members" and "also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiffs and Class Members" (SAC ¶ 17).

Plaintiffs allege that defendant Tobin "imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case" (SAC ¶ 15). The Second Amended Complaint does *not* contain factual allegations indicating that Tobin was in contractual privity with any of the Plaintiffs or any of the members of the proposed class or sub-class.

The Second Amended Complaint contains only general, conclusory allegations regarding the alleged "defective drywall" and its alleged effects (*see* SAC, "General Allegations" at ¶¶ 23-31). Plaintiffs allege that "Plaintiffs and the Class Members' homes, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective

drywallö (SAC ¶ 27).  As alleged, some Plaintiffs and Class Members have suffered only economic loss, while others allegedly have incurred õdamages associated with personal injuriesö (SAC ¶¶ 29-30).  There appears to be no uniformity in the claims asserted by each plaintiff and putative class member.

Additional allegations are discussed in the Argument section below as they become relevant.

## ARGUMENT

### A.   MOTION FOR MORE DEFINITE STATEMENT

With regard to Tobin Trading, Inc., the allegations of the Second Amended Complaint are so vague, ambiguous, conclusory and general in nature that Tobin cannot reasonably prepare a response.

Rule 12(e) of the Federal Rules of Civil Procedure provides in part that õ[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.ö  The remedy for any claim or allegation lacking sufficient specificity to provide adequate notice is a Rule 12(e) motion for a more definite statement.  *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002).

Other courts faced with similarly pled õshot gunö complaints have directed plaintiffs to file a more definite statement under Rule 12(e).  *See, e.g., Ames v. Department of Marine Resources Com'r,* 256 F.R.D. 22, 30-31 (D. Me. 2009) (granting in part motion for more definite statement where õshot gunö complaint against multiple defendants relied on õbald assertionsö and õvague and conclusory allegationsö with respect to each moving defendant; plaintiff was ordered to specify what individual facts were unique to each defendant, and provide a nexus between the legal claims in the complaint and the facts allegedly supporting them); *see also*

*Householder v. The Cedars, Inc.*, Case No. 08-2463, 2008 WL 4974785 (D. Kan. 6/19/08) (unpublished opinion and order granting motion for more definite statement due to absence of critical allegations in complaint, explaining: "The Complaint lacks any facts to support the defamation claim. The allegations of paragraphs 40 through 43 are nothing more than a brief of legal argument, inappropriate for a pleading, i.e. the complaint. Plaintiff fails to identify any particular statement Defendant made about her. She fails to allege that any defamatory statement was heard by a third party and, if so, by whom. There is no allegation of time and place, which is material when testing the sufficiency of a pleading").

Furthermore, Rule 9(f) of the Federal Rules of Civil Procedure states that "[a]n allegation of time or place is material when testing the sufficiency of a pleading." *See also Esancy v. Quinn*, 2006 WL 322607 at *4 (W.D.N.C. 2006) (unpublished opinion citing Rule 9(f) for proposition that "allegations of time and place are material for purposes of testing the sufficiency of a pleading and, therefore, should be plead in the complaint"); *Fischer Industries Inc. v. Medivance Instruments, Ltd.*, 1992 WL 686866 at *9 (N.D. Ill. 1992) (unpublished opinion noting that in certain tort cases, courts have required specific allegations of the place and time the tort occurred under Rule 9(f), explaining that "Such allegations usually are necessary if without them the statement of claim is so vague and ambiguous that the other party cannot adequately frame an answer" (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, § 1309 at 696-98 (1990)); *Kincheloe v. Farmer,* 214 F.2d 604, 605 (7th Cir. 1954), *cert. denied,* 348 U.S. 920 (1955) (noting that reason behind Rule 9(f) "is to make ascertainable whether a cause of action is barred by the statute of limitations, and that where so shown a complaint is properly dismissed on motion").[2]

---

[2] In addition, one Court has held that specific allegations "as to relevant time periods" are "required by Rules 8 and 10(b)," explaining that "Rule 10(b) requires that, in a multi-defendant / multi-plaintiff case like this case, each plaintiff must separately identify an unlawful action taken

This case presents circumstances in which more specific *factual* allegations regarding the nature of Tobin's alleged misconduct or breach of duty, including specific allegations of time and place, are necessary in order to properly frame an answer.  Among other things, the Second Amended Complaint is completely devoid of any dates or times on which any of the events, acts / omissions, breaches, etc. allegedly occurred, which makes it impossible to determine whether one or more of the claims alleged therein may be time-barred by the applicable statute of limitations.  For example, assuming *arguendo* that the Second Amended Complaint alleges a viable personal injury claim or fraud claim (under the Virginia Consumer Protection Act) against Tobin, those claims are time-barred if the facts alleged show that these claims accrued more than two (2) years before the commencement of this action against Tobin.  *See* Va. Code § 8.01-243(A); Va. Code § 59.1-204.1.

Pursuant to Rule 12(e), the factual details desired are described below, as follows:

1.      The facts (including allegations of time and place) upon which Plaintiffs rely in alleging in paragraph 15 of the Second Amended Complaint that Tobin "imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case."

2.      The facts (including allegations of time and place) upon which Plaintiffs rely in alleging the matters set forth in paragraph 22 of the Second Amended Complaint, to the extent directed at defendant Tobin.

3.      The facts (including allegations of time and place) upon which Plaintiffs rely in alleging the matters set forth in Count I of the Second Amended Complaint (at paragraphs 45, 46, 47, and 48), to the extent directed at defendant Tobin, including the facts upon which Plaintiffs rely in alleging that Tobin had the tort duties described in paragraph 45, and the facts

---

by each defendant at a recognizable point in time that caused the plaintiff to suffer an actual, identifiable injury." *Evans v. Walter Industries, Inc.*, 579 F.Supp.2d 1349, 1355 (N.D. Ala. 2008) (citing 5 Charles A. Wright & Arthur B. Miller, *Federal Practice & Procedure: Civil* 3D § 1248, 443-44 (2002)).

upon which Plaintiffs rely in alleging that Tobin breached one or more of those tort duties as alleged in paragraphs 47 and 48.

      4.      The precise õstatutory dutiesö that Plaintiffs allege Tobin owed to the Plaintiffs and Class Members, as alleged in paragraph 52 of the Second Amended Complaint.

      5.      The facts (including allegations of time and place) upon which Plaintiffs rely in alleging the matters set forth in Count II of the Second Amended Complaint (at paragraphs 52, 53 and 54), to the extent directed at defendant Tobin, including the facts upon which Plaintiffs rely in alleging that Tobin had the statutory duties described in paragraph 52, and the facts upon which Plaintiffs rely in alleging that Tobin breached one or more of those statutory duties as alleged in paragraphs 53 and 54.

      6.      To the extent directed at Tobin, the facts (including allegations of time and place) upon which Plaintiffs rely in alleging in paragraph 58 of the Second Amended Complaint that õDefendants and/or their agents were in privity with Plaintiffs and Class Members.ö

      7.      To the extent directed at Tobin, the precise terms and source of the õwarrantyö alleged in paragraphs 58, 62 and 63 of the Second Amended Complaint.

      8.      The precise terms and source of any express or implied warranty (including allegations of time and place) that Plaintiffs allege was given or breached by Tobin, as alleged in Count III of the Second Amended Complaint.

      9.      The facts (including allegations of time and place) upon which Plaintiffs rely in alleging the matters set forth in paragraph 77 of the Second Amended Complaint, to the extent directed at defendant Tobin, including the facts upon which Plaintiffs rely in alleging that Tobin õreceived money as a result of Plaintiffsø and Class Membersø purchases of Defendantsø defective drywall, or purchases of homes containing this drywall.ö

10.     To the extent directed at Tobin, the specific facts and alleged "acts and omissions" upon which Plaintiffs rely in alleging that Tobin is liable for violating "the various Consumer Protection Acts" alleged generally in paragraphs 81 through 84 of the Second Amended Complaint, including details of the time and place of each and every alleged act of fraud or misrepresentation attributable to Tobin; the person or persons who allegedly committed the alleged "knowing misrepresentation" or other act or omission that supports this claim; and the specific content and substance of each act of fraud, misrepresentation or misconduct for which Plaintiffs allege liability on the part of Tobin.

**B.     MOTION TO DISMISS**[3]

**1.     APPLICABLE STANDARD OF REVIEW UNDER RULE 12(b)(6).**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint ...." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  In ruling on a 12(b)(6) motion, all well-pleaded allegations in the complaint are to be taken as true and all reasonable factual inferences are to be drawn in the plaintiff's favor. *Edwards,* 178 F.3d at 244.  However, the Court is not bound to accept any legal conclusions set forth in the Complaint.  *Id.*

To survive a Rule 12(b)(6) motion to dismiss, the facts alleged "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)).  "[D]ismissal is appropriate if it appears that the plaintiff is not ̵entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Board of Trustees for*

---

[3] Tobin joins with defendants Venture, Porter-Blaine, and Harbor Walk in challenging subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, for the reasons already discussed in the motions and supporting memoranda filed by Venture, Porter-Blaine, and Harbor Walk (*see Germano* Doc. No. 17, 18, 25, 26).

*Hampton Roads Shipping Ass'n-Intern. Longshoremen's Ass'n v. Stokley*, 618 F.Supp.2d 546,

551 (E.D. Va. 2009) (citations omitted).

The standard applicable to a motion to dismiss, and the heightened pleading requirements

of *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), were recently summarized by the Eastern

District of Virginia as follows:

> A motion to dismiss tests the legal sufficiency of a complaint. *Randall v. United
> States,* 30 F.3d 518, 522 (4th Cir. 1994). In contemplating a 12(b)(6) motion, the
> Court must "take the facts in the light most favorable to the plaintiff," but "need
> not accept the legal conclusions drawn from the facts," and "need not accept as
> true unwarranted inferences, unreasonable conclusions, or arguments."
> *Giarratano v. Johnson,* 521 F.3d 298, 302 (citing *E. Shore Mkts., Inc. v. J.D.
> Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000)). Moreover, the Court need
> not "accept as true a legal conclusion couched as a factual allegation." *Bell Atl.
> Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007) *(quoting Papasan
> v. Allain,* 478 U.S. 265, 286 (1986)). In order for a claim or complaint to survive
> dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to
> state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours &
> Co.,* 324 F.3d 761, 765 (4th Cir. 2003) *(citing Dickson v. Microsoft Corp.,* 309
> F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States,* 289 F.3d 270, 281 (4th
> Cir.2002)). Discussing the pleading standard applicable under Rule 8, the
> Supreme Court advises that "[l]abels and conclusions will not do." *Twombly,* 127
> S.Ct. at 1959.

*Parkman v. Elam*, Slip Copy, 2009 WL 736067 at *2 (E.D. Va. 2009). "The Complaint must be

dismissed if it does not allege ─enough facts to state a claim to relief that is plausible on its

face.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

(2009) (under *Twombly*, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation" and "[a] pleading that offers ─labels and conclusions' or ─a formulaic

recitation of the elements of a cause of action will not do [ Nor does a complaint suffice if it

tenders ─naked assertion[s]' devoid of ─further factual enhancement'"; "The plausibility standard

is not akin to a ─probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully" and "Where a complaint pleads facts that are ─merely consistent

with a defendant's liability, it "stops short of the line between possibility and plausibility of

entitlement to relief" (citations omitted)).

Claims of fraud must satisfy an even more stringent pleading standard. *Parkman v. Elam,*

*supra,* at *3; *see also* Rule 9(b), Federal Rules of Civil Procedure; *Douros v. State Farm Fire &*

*Cas. Co.*, 508 F.Supp.2d 479, 485-86 (E.D. Va. 2007) (dismissing constructive fraud count for

failure to plead the claim "with the heightened specificity required" by Rule 9(b), explaining that

plaintiffs had not "indicated the identity of the agent of the defendant who made" the alleged

misrepresentation, nor had they "indicated the time or place where the alleged fraud occurred").

As stated by the Court in *Parkman v. Elam, supra*:

> "In alleging fraud or mistake, a party must state *with particularity* the
> circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b) (emphasis added).
> The Fourth Circuit has counseled that Plaintiff, in order to satisfy this heightened
> pleading standard, must state "the time, place, and contents of the false
> representations, as well as the identity of the person making the misrepresentation
> and what he obtained thereby." *Harrison v. Savannah Westinghouse River Co.,*
> 176 F.3d 776, 783-84 (4th Cir. 1999).

*Parkman v. Elam*, Slip Copy, 2009 WL 736067 at *3 (E.D. Va. 2009) (emphasis in original).

"Failing to satisfy the pleading requirements under the applicable federal rule will result in

dismissal of the claim." *Id.*

## 2.   COUNT I - NEGLIGENCE [4]

As alleged, the Plaintiffs and putative class members contracted with other parties

regarding the purchase or construction of their homes in Virginia.  As alleged, their homes were

purchased or constructed with a defective component part – namely, the drywall "building

material".  *See* SAC ¶¶ 59, 61 (describing drywall as "building material" that was "installed" in

---

[4] Tobin observes that Virginia choice of law rules govern tort actions filed in the Eastern District
of Virginia. *Milton v. IIT Research Inst.,* 138 F.3d 519, 521 (4th Cir. 1998).  Virginia applies the
law of the place of the wrong. *Id.* at 521; *Rahmani v. Resorts Int'l Hotel, Inc.,* 20 F.Supp.2d 932,
937 (E.D. Va. 1998). "The place of the wrong or injury is the place where the injury was
suffered, not where the tortious act took place." *Rahmani,* 20 F.Supp.2d at 937 (citations
omitted).

the homes of Plaintiffs and Class Members).  They describe their damages as including "costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries" (SAC ¶ 30).[5]

There are no factual allegations in the Second Amended Complaint that Plaintiffs or any putative class member was in contractual privity with Tobin.  Insofar as the claimed loss comprises nothing more than disappointed economic expectations, the Second Amended Complaint fails to state a negligence claim or cause of action against Tobin.  *See Redman v. John D. Brush and Co.*, 111 F.3d 1174, 1182 (4th Cir. 1997) ("A plaintiff who is not in privity with the defendant may not maintain a suit for negligence, such as products liability suit, based on purely economic loss").

The leading Virginia case on this issue is *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 374 S.E.2d 55 (1988).  In *Sensenbrenner*, a landowner contracted with a builder for the construction of a swimming pool.  After construction, the landowner discovered the pool had been constructed on a fill causing settlement that caused the water pipes to break and part of the foundation of the landowner's house to crack.  The landowner sued an architect and a swimming pool subcontractor, who had been employed by the builder, seeking "to recover for the cost of repairing the damage done to their home caused by the pool –as well as the cost of placing the pool in a condition where it will cause no further damage to their home." 236 Va. at 423, 374 S.E.2d at 57.  The Virginia Supreme Court noted the owner had purchased a package and the package was defective.  The failure of the component part caused a diminution in value of the

---

[5] Due to the vague and ambiguous manner in which the Second Amended Complaint has been pled, it is unclear who among the Plaintiffs and putative class members, if any, have suffered "damages associated with personal injury" as opposed to purely economic loss.

whole.  Because the loss was purely economic, the landowner had no cognizable negligence claim against the architect or subcontractor.  236 Va. at 423, 374 S.E.2d at 57.

The *Sensenbrenner* Court explained that in products liability cases, the economic loss rule "limit[s] tort recovery against parties not in privity with the purchaser of a product to cases in which negligent manufacture or design has resulted in a product which constitutes a danger to the *safety* of persons or property other than the product itself." 236 Va. at 424, 374 S.E.2d at 57. In cases involving the sale of real estate, the *Sensenbrenner* Court noted that "the rule limiting recovery for economic losses to the law of contracts does apply to sales of real property alleged to be qualitatively defective."  236 Va. at 424, 374 S.E.2d at 58.

Because it was the package (or a component thereof) purchased by the landowner that was alleged to be defective, the *Sensenbrenner* Court held that the architect or subcontractor (with whom the landowner was not in contractual privity) owed no tort duty to the landowner:

> The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package. The package included land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective-one or more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair. This is a purely economic loss, for which the law of contracts provides the sole remedy.
>
> Recovery in tort is available only when there is a breach of a duty "to take care for the *safety* of the person or property of another." The architect and the pool contractor assumed no such duty to the plaintiffs by contract, and the plaintiffs' complaint alleges no facts showing a breach of any such duty imposed by law.

*Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988) (citation omitted); *see also Fix v. Eakin/Youngentob Associates, Inc.,* 57 Va. Cir. 149 (Alexandria 2001) (under *Sensenbrenner*, Circuit Court sustained demurrer to claim that defendants were liable in negligence for constructing home with defective materials); *MacConkey v. F.J. Matter Design,*

*Inc., et al.*, 54 Va. Cir. 1 (Virginia Beach 2000) (under *Sensenbrenner*, damages arising out of construction of plaintiffs' residence caused by water intrusion beneath exterior insulation finish system (EIFS) was an economic loss, barring negligence claim asserted against EIFS manufacturer).

As alleged, the homes of the Plaintiffs and putative class members were purchased or constructed with a defective component part.  The Plaintiffs and putative class members were not in contractual privity with Tobin.  Under *Sensenbrenner*, insofar as the damages claimed are purely economic, Count I of the Second Amended Complaint should be dismissed for failure to state a claim.  Moreover, under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), *supra*, as to Tobin the factual allegations are insufficient and Count I comprises no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Without further factual enhancement, Count I "stops short of the line between possibility and plausibility of ‑entitlement to relief" and fails to state a negligence claim against Tobin.

**3.    COUNT II – NEGLIGENCE PER SE**

In conclusory fashion, Count II of the Second Amended Complaint alleges that all defendants owed and breached "statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall" (SAC ¶¶ 52-53).  The Second Amended Complaint alleges that "Defendants likewise breached their statutory duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall" (SAC ¶ 54).  Count II of the Second Amended Complaint should be dismissed for failure to state a claim of negligence *per se* against Tobin.

In Virginia, "[t]he requirements for establishing an action based on negligence *per se* are well settled." *Robinson v. Matt Mary Moran, Inc.*, 259 Va. 412, 418, 525 S.E.2d 559, 563 (2000).

> In order to maintain a claim of negligence *per se,* a plaintiff must allege: (1) that the defendant violated a statute that was enacted for public safety, *see VEPCO v. Savoy Construction Co.,* 224 Va. 36, 45(1982); (2) that plaintiff belongs to the class of persons for whose benefit the statute was enacted, and that the harm that occurred was of the type against which the statute was designed to protect, *see Pearson v. Canada Contracting Co.,* 232 Va. 177 (1986) and (3) that the statutory violation was a proximate cause of his injury. *See Thomas v. Settle,* 247 Va. 15, 20 (1994).

*Moskowitz v. Renaissance at Windsong Creek, Inc.*, 52 Va. Cir. 459, 2000 WL 1210501 at *1 (2000); *see also Robinson v. Matt Mary Moran, Inc.*, 259 Va. 412, 418, 525 S.E.2d 559, 563 (2000).

Courts presented with complaints containing similar generic claims of negligence *per se* have had no trouble dismissing such claims under Rule 12(b)(6).  *See, e.g., Holler v. Cinemark USA, Inc.*, 185 F.Supp.2d 1242, 1244 (D. Kan. 2002) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence *per se* … If plaintiff brings a claim based on a specific statute, it logically follows that plaintiff must plead the statute on which the claim is based.  In this case, plaintiff's generic complaint that defendant violated unspecified ‗local, state and federal statutes, guidelines and regulations'does not provide fair notice of his claim. It is therefore subject to dismissal under Rule 12(b)(6)" (citations omitted)).[6]

---

[6] *See also Pincetich v. Jeanfreau*, 699 F.Supp. 1469, 1477 (D. Or. 1988) (dismissing negligence *per se* claim because plaintiffs did not cite the specific statute, rule or regulation that was allegedly violated, and because plaintiffs had not alleged that they were members of the class of persons meant to be protected by the statute or that the injury was the type which the statute was enacted to prevent); *Gates v. W.R. Grace & Co.*, Slip Copy, Case No. 8:08-cv-2560, 2009 WL 1455316, at *3 (M.D. Fla. 5/21/09); *Heisner ex rel. Heisner v. Genzyme Corp.*, Case No. 08-C-593, 2008 WL 2940811 (N.D. Ill. 7/25/08) (unpublished opinion dismissing negligence *per se*

Here, the Second Amended Complaint fails to allege facts sufficient to state all the elements of a claim for negligence *per se*, and fails to allege enough facts to state a claim for negligence *per se* that is plausible on its face.  It is not enough to simply allege in vague, conclusory fashion that "statutory duties" were owed and breached.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (under *Twombly*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'").  Plaintiffs must identify the statute or statutes on which they rely.  The Second Amended Complaint fails to allege sufficiently that Tobin violated a statute that was enacted for public safety, and further fails to allege sufficient facts demonstrating that Plaintiffs and Class Members belong to the class of persons for whose benefit any such statute was enacted, or that the harm that allegedly occurred was of the type against which the statute was designed to protect.  Like Count I, as to Tobin the factual allegations of Count II are insufficient and amount to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal, supra.* Accordingly, Count II of the Second Amended Complaint should be dismissed.[7]

## 4.    COUNT III – BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES

Although there are no factual allegations in the Second Amended Complaint suggesting that Tobin was in contractual privity with Plaintiffs or any of the putative Class Members, Count III alleges in a conclusory, confusing manner that "Defendants and/or their agents were in privity

---

claim "for failing to place Defendant on notice of the underlying standard of care, an essential element of a negligence *per se* claim").

[7] It is settled in Virginia that "the violation of a statute does not, by that very fact alone, constitute actionable negligence or make the guilty party negligent *per se*." *Williamson v. Old Brogue, Inc.*, 232 Va. 350, 355, 350 S.E.2d 621, 624 (1986).  "In other words, a statute may define the standard of care to be exercised where there is an underlying common-law duty, but the doctrine of negligence *per se* does not create a cause of action where none otherwise exists." *Id.* at 355, 350 S.E.2d at 624.  Thus, to the extent that Count II alleges damages in the nature of economic loss, Count II is barred by the economic loss rule for the same reasons discussed above with regard to the negligence count.

with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warrantyö (SAC ¶ 58).  Count III alleges that õ[a]t the times Defendants installed, utilized, supplied, inspected, sold, and/or installed this drywall for use in the Plaintiffsø and Class Membersø homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffsø and Class Membersø homes for use as a building material, and expressly or impliedly warranted the product to be fit for that useö (SAC ¶ 59).  Count III alleges that õ[t]he drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffsø and Class Membersø homes for use as a building material, because it contained defects as set forth hereinö (SAC ¶ 61).  Count III alleges that õDefendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs and Class Membersø homes as building material) due to the defects set forth hereinö (SAC ¶ 62).  Count III of the Second Amended Complaint should be dismissed for failure to state a breach of warranty claim against Tobin, for several reasons.

First, to the extent that it is directed at Tobin, Count III merely alleges *ipse dixit* that Tobin breached a õwarrantyö or õany warranty,ö but fails to allege facts sufficient to state all the elements of a claim for breach of warranty, and fails to allege enough facts to state a claim for breach of warranty that is plausible on its face.  There are insufficient facts (as opposed to formulaic labels or conclusions) alleged in the Second Amended Complaint to indicate that Tobin provided an express or implied warranty to Plaintiffs or any of the putative Class Members that the drywall was õfit and safe í    to be installed in Plaintiffs and Class Membersø homes as a building materialö (SAC ¶ 62).

Second, to the extent that the Second Amended Complaint purports to allege a warranty claim under the Virginia Uniform Commercial Code, the allegedly õdefective drywallö that was

allegedly incorporated into the homes of Plaintiffs and the putative Class Members is not a "good" governed by Virginia's Uniform Commercial Code.  The UCC applies only to "transactions in goods," defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title 8.8A) and things in action." Va. Code §§ 8.2-102, 105.[8]  "Pursuant to these provisions, state courts [in Virginia] have held that the UCC does not apply to transactions in real property or to building components incorporated into real property." *French v. York Int'l. Corp.,* 72 Va. Cir. 538, 2007 WL 6006671 at \*2 (Albemarle Co. 2007); *MacConkey v. F.J. Matter Design, Inc., et al.*, 54 Va. Cir. 1, 2000 WL 33594996 at \*6 (Virginia Beach 2000) ("for public policy reasons, the UCC protections do not cover goods used for construction once they have been incorporated into realty"); *see also Winchester Homes v. Hoover Univ., Inc.*, 30 Va. Cir. 22 (Fairfax Co. 1992) (same holding).

Third, because the UCC does not apply to transactions in real property or to building components incorporated into real property, it follows that the UCC's anti-privity statute, Va. Code § 8.2-318, does not apply and absence of privity between Plaintiffs and Tobin bars all claims against Tobin, whether economic or non-economic in nature.  The statute provides:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of *goods* to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the *goods* from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the *goods*[.]

Va. Code § 8.2-318 (emphasis added).  As alleged, this is not an "action brought against the manufacturer or seller of goods" within the meaning of the statute.  Plaintiffs and the putative

---

[8] Moreover, the provisions of the UCC do not apply to services, *see* Va. Code § 8.2-102, which presumably would encompass the alleged "installation" (by other defendants or third parties, not including Tobin) of the drywall in the homes of Plaintiffs and the putative class members during construction.

class members did not purchase drywall from Tobin, nor enter into a contract with Tobin. Because Plaintiffs and the putative class members were not in privity with Tobin, and because the drywall that was installed in the homes of Plaintiffs and the putative class members does not qualify as "goods" for purposes of triggering the UCC, Count III must be dismissed.[9]

## 5.   COUNT V – PRIVATE NUISANCE

Count V of the Second Amended Complaint should be dismissed for failure to state a private nuisance claim against Tobin.

In Virginia, "a private nuisance is an activity which unreasonably interferes with the use and enjoyment of another's property." *City of Newport News v. Hertzler*, 216 Va. 587, 593, 221 S.E.2d 146, 150 (1976); *see also Akers v. Mathieson Alkali Works*, 151 Va. 1, 11, 144 S.E. 492, 495 (1928) ("The defendant had the right to deposit the muck upon its own land, but no right to cause or permit it to flow upon or under and injure the land of the plaintiff. *The law requires that every person so use his own property as not to injure the property of another*. One who places a dangerous animal upon his own premises and permits him to escape and damage his neighbor's property must answer in damages for the injury done. When defendant permitted the muck to escape from its land and injure land of the plaintiff, without his fault, defendant was liable for the damages sustained by the plaintiff" (emphasis added)).

The Supreme Court of Virginia has defined private nuisance as

the using, or authorizing the use of, one's property, or of anything under one's control, so as to injuriously affect an owner or occupier of property (1) by

---

[9] The vague, ambiguous allegation that "Plaintiffs and Class Members were *foreseeable* third party beneficiaries of *any* warranty" (SAC ¶ 58 (emphasis added)) does not change this result. Plaintiffs have not alleged that Tobin provided a specific warranty under which it assumed an obligation that was clearly and definitely intended to confer a benefit on Plaintiffs and Class Members.  At best, the Second Amended Complaint alleges that Plaintiffs and Class Members are persons who benefit (or should benefit) only incidentally from "any warranty," which gives them no standing or rights as third parties to such warranty.  *See* Va. Code § 55-22; *MNC Credit Corp. v. Sickels*, 255 Va. 314, 497 S.E.2d 331 (1998).

> diminishing the value of that property; (2) by continuously interfering with his
> power of control or enjoyment of that property; (3) by causing material
> disturbance or annoyance to him in his use or occupation of that property.

*Adams v. Star Enterprise*, 851 F.Supp. 770, 773 (E.D. Va. 1994) (quoting from *Virginian*

*Railway Co. v. London,* 114 Va. 334, 76 S.E. 306 (1912), and concluding that property owners'

allegations were insufficient to state a claim for private nuisance, absent an allegation of actual

intrusion into use and enjoyment of property).

 Here, Count V of the Second Amended Complaint alleges in conclusory fashion that

"Defendants' tortious and wrongful acts or omissions have caused sulfide gas and/or other

chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered,

and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their

properties … " (SAC ¶ 70).

 As alleged, at all pertinent times, Plaintiffs and the putative class members owned the

properties (including the drywall or component "building materials" incorporated therein at the

time of construction) of which they complain.  Count V fails to allege that Tobin has used or

authorized the use of its own property (or anything else under Tobin's control) so as to

injuriously affect the owners or occupiers of the subject properties.  Indeed, the facts alleged in

the Second Amended Complaint do not give rise to a "private nuisance" claim under any stretch

of Virginia law.[10]  Instead, the gist of the Second Amended Complaint is that Plaintiffs and

putative Class Members purchased or constructed homes with a defective component part, and

consequently they did not receive what they bargained for.  Count V of the Second Amended

Complaint fails to state a claim against Tobin for private nuisance and should be dismissed.

---

[10] *Compare Tioga Public School District v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993)
(explaining that "nuisance law does not afford a remedy against the manufacturer of an asbestos-
containing product to an owner whose building has been contaminated by asbestos following
installation of that product in the building," Eight Circuit held that the defendant that had no
further control of contaminated material after it was sold to the plaintiff could not be held liable
in nuisance).

6.      **COUNT VI – UNJUST ENRICHMENT**

Count VI of the Second Amended Complaint fails to state a claim against Tobin for

unjust enrichment and should be dismissed.

The Supreme Court of Virginia has described the elements of an unjust enrichment claim,

as follows:

> To state a cause of action for unjust enrichment, Schmidt had to allege that: (1) he
> conferred a benefit on Household Finance; (2) Household Finance knew of the
> benefit and should reasonably have expected to repay Schmidt; and (3) Household
> Finance accepted or retained the benefit without paying for its value. *See Nedrich
> v. Jones,* 245 Va. 465, 476, 429 S.E.2d 201, 207 (1993) ("One may not recover
> under a theory of implied contract simply by showing a benefit to the defendant,
> without adducing other facts to raise an implication that the defendant promised to
> pay the plaintiff for such benefit." (citing *Mullins v. Mingo Lime & Lumber Co.,*
> 176 Va. 44, 51, 10 S.E.2d 492, 495 (1940))); *see also Provident Life & Accident
> Ins. Co. v. Waller,* 906 F.2d 985, 993-94 (4th Cir.1990).

*Schmidt v. Household Finance Corp., II,* 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008)

(concluding that circuit court properly sustained demurrer to unjust enrichment claim because

plaintiff (Schmidt) did not plead sufficient factual allegations in his amended complaint to state a

cause of action for unjust enrichment).

"One may recover in an action for unjust enrichment under Virginia law only where one

holds an unquestioned right to the diverted funds." *John C. Holland Enterprises, Inc. v. J.P.*

*Mascaro & Sons, Inc.*, 829 F.2d 1120 (Table), 1987 WL 38095 at *1 (4th Cir. 1987)

(unpublished).  As explained by the Fourth Circuit:

> [T]he defendant has received money from a third person by law or authority
> through some mistake or fraud, which but for the mistake or fraud would have
> vested the right to the money in the plaintiff ... [T]he plaintiff may recover
> whenever, but for the mistake or fraud, he would have had unquestioned right to
> the money. Such cases rest upon the plaintiff's original right to the fund, which
> right has been lost to the plaintiff or impaired by the mistake or fraud.

*Id.* at *1 (citing *City of Norfolk v. Norfolk County*, 120 Va. 356, 91 S.E. 820, 826 (1917)).

Count VI of the Second Amended Complaint fails to allege sufficient facts showing that (1) Plaintiffs or Class Members conferred a benefit on Tobin; (2) Tobin knew of the benefit and should reasonably have expected to repay Plaintiffs or Class Members; or (3) Tobin accepted or retained the benefit without paying for its value. Moreover, Count VI fails to allege sufficient facts demonstrating ödiverted fundsö to which the Plaintiffs or Class Members have an unquestioned right, which right has been lost to the Plaintiffs / Class Members or impaired by some mistake or fraud attributable to Tobin. Under Virginia law and Rule 12(b)(6), Count VI should be dismissed for failure to state a claim.

## 7.   COUNT VII – VIOLATION OF CONSUMER PROTECTION ACTS

### A.   Virginia Consumer Protection Act

Count VII of the Second Amended Complaint purports to allege a claim against Tobin for violating the provisions of the Virginia Consumer Protection Act (VCPA), Va. Code § 59.1-196 *et seq.,* which makes it unlawful if öa supplier in connection with a consumer transactionö engages in certain enumerated öfraudulent acts or practices.ö Va. Code § 59.1-200(A). Count VII of the Second Amended Complaint fails to state a claim against Tobin for violation of the Virginia Consumer Protection Act, for at least two reasons.

First, the VCPA defines a öconsumer transactionö in pertinent part as ö[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes.ö Va. Code § 59.1-198. The alleged sale and installation of the subject drywall is not a öconsumer transactionö within the meaning of the VCPA, and is outside the purview of the VCPA. *See MacConkey v. F.J. Matter Design, Inc., et al.*, 54 Va. Cir. 1, 2000 WL 33594996 at *6 (Virginia Beach 2000) (in homeownersø action for damages arising out of the sale and installation of EIFS system, where product was sold by the manufacturer to the subcontractor who installed the product as exterior siding, court determined

that sale of EIFS was õoutside the purview of the Consumer Protection Actö); *Winchester Homes v. Hoover Univ., Inc.*, 30 Va. Cir. 22 (Fairfax Co. 1992) (holding that sale of plywood, to be used as a component part in construction of homes, was not a consumer transaction as envisioned by the VCPA); *Murray v. Dryvit Systems, Inc.*, 2002 WL 32072493 at *3 (Franklin Co. Cir. Ct. 2002) (sustaining demurrer to VCPA claim because õ[t]he sale of the EIFS to a contractor or subcontractor is a commercial transaction, not a consumer transaction within the VCPAö).[11]

Second, even assuming *arguendo* that Count VII of the Second Amended Complaint does allege a õconsumer transactionö within the purview of the VCPA, the vague, generalized, conclusory allegations of the Second Amended Complaint fail to meet the heightened pleading requirements of either *Twombly* or Rule 9(b) of the Federal Rules of Civil Procedure.

To state a claim under the VCPA, a plaintiff must allege a fraudulent misrepresentation of fact. *Lambert v. Downtown Garage, Inc.,* 262 Va. 707, 711, 553 S.E.2d 714, 716 (2001); *Weiss v. Cassidy Dev. Corp.,* 63 Va. Cir. 76, 2003 WL 22519650 at *2 (Fairfax 2003). õThe misrepresentations must be judged by the common law standards of what constitutes a misrepresentation.ö *Weiss v. Cassidy Dev. Corp.,* 63 Va. Cir. 76, 2003 WL 22519650 at *2 (Fairfax 2003). õAllegations of misrepresentation of fact must include the elements of fraud: a false representation, of material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage.ö *Id.* (citing *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.,* 256 Va. 553, 557-558 (1988)).[12] õIn addition, plaintiff must allege facts with requisite specificity, including identification of the agents, officers and employees of the entities who are alleged to have perpetrated the fraud and the details of time and place of the

---

[11] In addition, even if the Plaintiffs could allege a claim under the VCPA, it is worth noting that at least two Virginia state courts have concluded that personal injury damages are not recoverable under the VCPA. *See Deane v. Novacare,* 50 Va. Cir. 418 (Rockingham Co. 1999); *Devonshire v. EurAuPair International Inc.*, 40 Va. Cir. 149 (Fairfax Co. 1996).
[12] õGeneralized, nonspecific allegations ... are insufficient to state a valid claim of fraud.ö *Ward's Equip. v. New Holland N. Am.,* 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997).

23

fraudulent acts.ö *Id.* (citing *Tuscarora v. B.V.A.,* 218 Va. 849, 858, 241 S.E.2d 778, 786 (1978)).

       Virginia courts look to a number of the characteristics of the pleading to determine whether it states a claim for fraud with sufficient specificity. The pleadings must identify the person who made the misrepresentation and the time and place of the alleged fraud. *Tuscarora, Inc. v. B.V.A. Credit Corp.,* 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978); *RML Corp. v. Lincoln Window Products, Inc.,* 67 Va. Cir. 545, 569 (City of Norfolk 2005).  The plaintiff must allege that the wrongdoer knew or had reason to know that the plaintiff would rely on the false representation. *Mortarino v. Consultant Engineering,* 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996) (öWhere fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defence accordingly, and since [fraud] must be clearly proved, it must be distinctly statedö).  Additionally, the pleadings must clearly show that the alleged misrepresentations caused the plaintiff's damage, *Torrez v. Comacho,* 66 Va. Cir. 161, 169 (Fairfax County 2004), and that the statements were misstatements of material fact and not future promises or expressions of opinion.  *See Blair Cosntr. v. Weatherford,* 253 Va. 343, 346, 485 S.E.2d 137, 139 (1997); *see also Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 241 S.E.2d 778 (1978) (allegations of actual or constructive fraud were too vague, indefinite, and conclusory to state a cause of action, where plaintiff failed to allege the identities of the agents, officers, and employees of the defendant who were alleged to have perpetrated the fraud were not revealed, or the details of the time and place where the fraudulent acts occurred); *Goldstein v. Malcolm G. Fries & Assoc., Inc.*, 72 F. Supp. 2d 620, 627 (E.D. Va. 1999) (dismissing fraud claim on basis that öUnder Fed. R. Civ. P. 9(b), a claim of fraud must allege with particularity a false representation by a defendant of a material fact with the intent to mislead, and that the plaintiff reasonably relied on the representations to his detriment.  The minimum type of circumstances that must be pleaded include the time, place,

content, and identity of authorship of any alleged misrepresentation. Conclusory allegations do not satisfy the requirements of the ruleö (citations omitted)).

Applying the foregoing principles, Count VII of the Second Amended Complaint clearly fails to plead a cognizable VCPA claim against Tobin with the heightened specificity and particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Count VII fails to allege sufficient, detailed facts demonstrating *inter alia* (1) the content and substance of any alleged fraud or misrepresentation attributable to Tobin; (2) that such misrepresentations were made by Tobin intentionally and knowingly with the intent to mislead Plaintiffs or any putative class members; (3) that Plaintiffs / Class Members relied on such misrepresentation by Tobin, and sustained damages as a result; (4) the identification of the agents, officers or employees of Tobin who are alleged to have perpetrated the fraud; and (5) the details of the time and place of the fraudulent acts.  Count VII should be dismissed under Rule 9(b), *see Douros v. State Farm Fire & Cas. Co., supra,* and should also be dismissed for failure to state a claim under Rule 12(b)(6).

### B.   "Various Consumer Protection Acts" Of Other States

In a vague, generalized, conclusory fashion, Count VII of the Second Amended Complaint also purports to allege a claim against Tobin for violating öthe various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, Louisiana, Alabama, North Carolina, Florida, Virginia, Texas, and Mississippiö (SAC ¶ 81).  This is a significant change to the First Amended Complaint, which was limited in scope to the Virginia Consumer Protection Act.

The plaintiffs should be precluded from asserting such a claim against Tobin Trading Inc. In their October 30, 2009 Motion To Amend The First Amended Class Action Complaint By Interlineation, Plaintiffs represented that the purpose of the amendment was öto amend the class

definition as to í    Taishan from a Virginia class to a national class, *i.e.,* all persons and entities in the United States with properties that were impacted by defective drywall that was manufactured and distributed by Taishanö (MDL No. 2047, Doc. 396).  In the supporting memorandum that accompanied the Plaintiffsø Motion To Amend, the Plaintiffs affirmatively represented that õ[w]hile the proposed amendment expands the class that has been asserted against Taishan, *it has no impact on the claims and/or subclasses that have been asserted against Tobin*, Venture, Harbor-Walk, and Porter-Blaineö (MDL No. 2047, Doc. 396, Memorandum at p. 4 (emphasis added)).  The Court granted the motion to amend, presumably based on the plaintiffsø assurances or representations that the amendments contained in the Second Amended Complaint would only affect the claims asserted against Taishan, and would not impact or affect any of the existing claims against Tobin Trading or the other defendants.[13]

In any event, post-*Twombly,* the federal pleading standard requires more than õa formulaic recitation of the elements of a cause of action.ö *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007); *see also Walker v. Prince George's County*, 575 F.3d 426, 432  (4th Cir. 2009) (OøConnor, Associate Justice, Retired) (citing *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) for proposition that õ-[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not sufficeö to plead a claimö and õ-[w]e are not bound to accept as true a legal conclusion couched as a factual allegationöö).  Here, the Second Amended Complaint contains insufficient factual allegations to support an actionable claim against Tobin for violating õthe Consumer Protection Acts of the relevant statesö (SAC ¶

---

[13] To the extent that the amendments to Count VII of Second Amended Complaint are directed at Tobin, plaintiffs should not be permitted to assume such inconsistent positions.  *See P.W. Brooks & Co. v. North Carolina Public Service Co.*, 37 F.2d 220, 224 (4th Cir. 1930) (õfor, in the language of the Scottish law, a man shall not be allowed at the same time to approbate and reprobateö); *County School Board v. RT*, 433 F.Supp.2d 692, 707 (E.D. Va. 2006) (noting the õquaint but apt Scotch law that -a man shall not be allowed ... to approbate and reprobateø at the same timeö).

82, 84).  This is precisely the type of claim that is too vague and indefinite to meet the *Twombly*
standard.  Under the circumstances, to the extent that it is directed at Tobin, Count VII of the
Second Amended Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of
Civil Procedure.

8.     **COUNT VIII – EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL
MONITORING**

   i.     **Amended Complaint Fails to State a Claim for "Equitable and Injunctive
          Relief"**

This is an action at law seeking an award of money damages, under theories of
negligence, negligence *per se*, breach of contract, breach of warranty, private nuisance, unjust
enrichment, and fraud (under the Virginia Consumer Protection Act).  Notwithstanding, the
Second Amended Complaint also alleges in conclusory fashion that Plaintiffs and the Class "are
without adequate remedy at law, rendering injunctive and other equitable relief appropriate" and
"will suffer irreparable harm if the Court does not render the injunctive relief and medical
monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind,
and/or repair the í  homes" (SAC ¶¶ 86-87).  Plaintiffs "demand injunctive and equitable relief"
that orders the defendants:

> (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes,
> or in the alternative, remedy, repair and/or replace the drywall in the homes upon
> proof by the defendants of the feasibility of such remedy or repair; (2) cease and
> desist from misrepresenting to the Class and the general public that there is no
> defect in, or danger associated with, the drywall; (3) institute, at their own cost, a
> public awareness campaign to alert the Class and general public of the defect and
> dangers associated with the drywall; and (4) create, fund, and support a medical
> monitoring program consistent with the requirements of Virginia law.

(SAC ¶ 88.)  Plaintiffs also demand that defendants "provide continued environmental and air
monitoring in Plaintiffs and Class Members' homes" (AC ¶ 89).

As to Tobin, the Second Amended Complaint fails to state a cognizable or plausible
claim for "Equitable and Injunctive Relief" and should be dismissed under Rule 12(b)(1) and

27

12(b)(6) of the Federal Rules of Civil Procedure.  As to Tobin, insufficient facts have been alleged that would give this Court equity jurisdiction to award the requested injunctive relief. Moreover, as to Tobin, the requested injunctive relief is not plausibly suggested by the facts alleged in the Second Amended Complaint.

"The predicate inquiry in evaluating whether to issue permanent injunctive relief is whether the court may properly exercise equity jurisdiction." *Northeast Women's Center v. McMonagle*, 745 F.Supp. 1082, 1085 (E.D. Pa. 1990).  Equity jurisdiction is not proper unless "(1) plaintiff has no adequate legal remedy, (2) the threatened injury is real, not imagined, and (3) no equitable defenses preclude jurisdiction." *Id.* (citations omitted).

In the Fourth Circuit, in order to obtain a permanent injunction in any case:

> "[a] *plaintiff must demonstrate:* (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Mercexchange LLC v. eBay*, 500 F.Supp.2d 556, 568 (E.D. Va. 2007) (citation omitted; emphasis in original).

The first two factors, irreparable injury and remedy at law, "are essentially two sides of the same coin." *Id.* at 569 n. 11.  As stated by the U.S. Supreme Court,

> The key word in this consideration is *irreparable*.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, <u>weighs heavily against a claim of irreparable harm</u>.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Assoc. v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C. Cir. 1958)) (emphasis added).

"Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable."

*Hughes Network Systems v. Interdigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (citing *Morton v. Beyer,* 822 F.2d 364, 371-72 (3d Cir. 1987) and *Foxboro Co. v. Arabian Am. Oil Co.,* 805 F.2d 34, 36 (1st Cir. 1986)).  "[A] party does not normally suffer irreparable harm simply because it has to win a final judgment on the merits to obtain monetary relief."  *Id.*

Plaintiffs have failed to allege sufficient facts (as opposed to labels, conclusions, or a mere formulaic recitation of the elements of a claim for injunctive relief) which demonstrate the predicate to this Court's exercise of equity jurisdiction, or which demonstrate each of the four factors enunciated in *Mercexchange LLC v. eBay, supra.*[14]   As alleged, plaintiffs and the putative class members have not suffered an "irreparable injury," and the remedies available at law (i.e., monetary damages) are adequate.  Moreover, as discussed below, the request for "medical monitoring" for unknown "potential" or "possible" health problems associated with "exposure" to drywall, is entirely speculative and unsupported by Virginia law.  Count VIII fails to state a claim for injunctive relief that is plausible on its face, and should be dismissed.

**ii.      Amended Complaint Fails to State a Claim for "Medical Monitoring"**

The Second Amended Complaint fails to state a cognizable claim for "Medical Monitoring" under Virginia law and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Second Amended Complaint alleges that Plaintiffs and Class Members "have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result" (SAC ¶ 90).  The Complaint alleges that this "exposure *may lead* to serious

---

[14] *See also Levinson v. Massachusetts Mutual Life Insurance Co.*, 2006 WL 3337419 at *9 (E.D. Va. 2006) ("As a general rule, when a party has an adequate remedy at law, he has none in equity.' *Neff v. Baker,* 82 Va. 401, 405, 4 S.E. 620, 621 (1887) (quotations omitted). In Virginia, '[i]t is settled beyond question that equity does not have jurisdiction of cases in which the plaintiff has a full, complete, and adequate remedy at law, unless some peculiar feature of the case comes within the province of a court of equity.' 1 Michie's Jurisprudence of Virginia and West Virginia, Equity, § 10 (2004)").

health problems, diseases, and medical conditions that *may be prevented* by timely diagnosis and treatmentö (SAC ¶ 93 (emphasis added)).  The Complaint requests õmedical monitoringö (or a õmonitoring regimeö) in order to detect or diagnose õ*potential* medical problems,ö õproblems that they *may encounter*,ö or õ*any* latent disease *possible*ö (SAC ¶¶ 94, 96 (emphasis added)).

The Court is õobliged to apply the jurisprudence of the Supreme Court of Virginia on issues of Virginia law.ö *St. Paul Fire & Marine Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4ᵗʰ Cir. 2002) (citation omitted); *see also Ball v. Joy Technologies, Inc.*, 958 F.2d 36, 39 (4ᵗʰ Cir. 1991) (observing that õ[t]he *Erie* doctrine permits federal courts -to rule upon state law as it presently exists and not to surmise or suggest its expansion,ö the Fourth Circuit declined the plaintiffsø request to expand the law of torts in West Virginia and Virginia and recognize exposure to toxic substances as a physical injury, and affirmed the District Courtøs order concluding that exposure to toxic chemicals did not constitute an injury that would entitle plaintiffs to recover damages for emotional distress).

The Supreme Court of Virginia has not recognized õmedical monitoringö or medical surveillance as a viable independent tort claim or cause of action, nor has it recognized a remedy involving the creation of a medical monitoring fund (or a õmonitoring regimeö) for õpotential medical problems.ö  Because the Court must õrule upon state law as it presently existsö and not õsurmise or suggest its expansion,ö *Ball v. Joy Technologies, Inc.*, *supra*, the Court should decline the invitation of the Plaintiffs to re-write or expand the law of torts in Virginia and dismiss Count VIII for failure to state a claim.

**9.   CLAIM FOR PUNITIVE DAMAGES.**

The Second Amended Complaint demands an award of punitive damages, but fails to state a claim or sufficient facts which would warrant an award of punitive damages.

Virginia law generally does not look favorably upon punitive damages, and only permits such an award upon a showing "that the defendant's acts were ÷so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct." *Bowers v. Westvaco Corp.,* 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992).  The Virginia Supreme Court has held that punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct.  *Id.*  To prove willful or wanton conduct, a plaintiff must show that the defendant "was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct." *Infant C. v. Boy Scouts of America, Inc.,* 239 Va. 572, 581, 391 S.E.2d 322, 327 (1990).

Applying these principles, the Second Amended Complaint clearly fails to allege sufficient facts that would warrant an award of punitive damages against Tobin.  Indeed, the Second Amended Complaint is completely devoid of any facts demonstrating the willful, wanton, conscious and malicious conduct required as a predicate for an award of punitive damages.  Thus, the demand for punitive damages should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## CONCLUSION AND REQUEST FOR HEARING

WHEREFORE, Defendant Tobin Trading Inc. respectfully prays that this Court enter an Order granting its Motion for More Definite Statement and Motion to Dismiss, and requests a hearing and opportunity to present oral argument in support of these Motions.

Respectfully submitted,

TOBIN TRADING, INC.

Date:  November 25, 2009          By:      /s/ Theodore I. Brenner
                                        Theodore I. Brenner, VSB 17815
                                        BRENNER, EVANS & MILLMAN, P.C.
                                        P.O. Box 470
                                        Richmond, Virginia  23218-0470
                                        Phone: (804) 644-1300
                                        Fax: (804) 644-1354
                                        E-mail: tbrenner@beylaw.com

                                        Jay O. Millman, VSB 37212
                                        BRENNER, EVANS & MILLMAN, P.C.
                                        P.O. Box 470
                                        Richmond, Virginia  23218-0470
                                        Phone: (804) 644-1300
                                        Fax: (804) 644-1354
                                        E-mail: jom@beylaw.com
                                        Alexander S. de Witt, VSB 42708
                                        BRENNER, EVANS & MILLMAN, P.C.
                                        411 East Franklin Street, Suite 200
                                        P.O. Box 470
                                        Richmond, VA  23218-0470
                                        Phone: (804) 644-1300
                                        Fax: (804) 644-1354
                                        E-mail: adewitt@beylaw.com

                                        *ATTORNEYS FOR TOBIN TRADING, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum of Law has been served on Plaintiffsø Liaison Counsel, Russ Herman, and Defendantsø Liaison Counsel Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mal and upon all parties by electronically uploading the same to LexisNexis File and Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 2047, on this 25th day of November, 2009

By:    /s/ Theodore I. Brenner