# EXHIBIT B



LAW OFFICES OF
RICHARD J. SERPE, P.C.

September 16, 2009

**<u>HAND DELIVERED</u>**

George E. Schaeffer, III, Clerk
Norfolk Circuit Court
125 St. Paul's Blvd.
Norfolk, VA 23510

   Re:  Joseph E. Leach and Cathy L. Leach v. Wellington, L.L.C., et al.

Dear Mr. Schaeffer:

   Enclosed please find the following:

1.  Original and 3 copies of a Complaint in the above-referenced matter;

2.  This firm's check payable to the Clerk, Norfolk Circuit Court in the amount of $204.00 representing payment of the filing fee; and

3.  Original Cover Sheet for Filing Civil Actions.

   We will be having the Complaint served upon the following Defendants by Driskell Services, a private process server. Please contact the undersigned when the service copies are available for pick up.

   Wellington, L.L.C., American Eastern, L.L.C., Michael Brazil and Leslie Brazil

   We will NOT be serving the Complaint on the remaining defendants at this time.

   Should you have any questions, please do not hesitate to contact our office.

      Sincerely yours,

      LAW OFFICES OF RICHARD J. SERPE, P.C.

      Richard J. Serpe

RJS/JLB
Enclosures

{DRYWALL\FORMS\00035316.DOC }

**COVER SHEET FOR FILING CIVIL ACTIONS**                     Case No. ..........................................

COMMONWEALTH OF VIRGINIA                                      (CLERK'S OFFICE USE ONLY)*

.................................................................................................................................... Circuit Court

Joseph E. Leach and Cathy L. Leach          v./In re: .......... Wellington, L.L.C., et al. .......

_____                      _____
PLAINTIFF(S)                                                 DEFENDANT(S)

.................................................................    .................................................................

I, the undersigned [ ] plaintiff [ ] defendant [ ] attorney for [ ] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

| | | |
|---|---|---|
| [ ] Accounting | [ ] Construe Will | [ ] Landlord/Tenant |
| [ ] Administrative Appeal | [ ] Contract Action | [ ] Mechanics Lien |
| [ ] Adoption | [ ] Contract Specific | [ ] Medical Malpractice |
| [ ] Adoption - Foreign | Performance | [ ] Motor Vehicle Tort |
| [ ] Adult Protection | [ ] Correct/Erroneous State/Local | [ ] Name Change |
| [ ] Aid and Guidance | Taxes | [ ] Order to Sever |
| [ ] Annexation | [ ] Counterclaim | [ ] Partition |
| [ ] Annulment | [ ] Cross Claim | [ ] Petition |
| [ ] Appeal Decision of ABC Board | [ ] Custody/Visitation/Support/ | [ ] Product Liability |
| [ ] Appeal Decision of Board of Zoning | Equitable Distribution | [ ] Quiet Title |
| [ ] Appeal Decision of Comp Board | [ ] Declaratory Judgment | [ ] Referendum Elections |
| [ ] Appeal Decision of Employment | [ ] Declare Death | [ ] Reformation of Trust |
| Commission | [ ] Delinquent Taxes | [ ] Reinstatement of Driving |
| [ ] Appeal Decision of Local | [ ] Detinue | Privileges |
| Government | [ ] Divorce | [ ] Reinstatement (General) |
| [ ] Appeal Decision of Marine Resources | [ ] Ejectment | [ ] Removal |
| Commission | [ ] Encumber/Sell Real Estate | [ ] Separate Maintenance |
| [ ] Appeal Decision of Voter | [ ] Enforce Vendor's Lien | [ ] Standby Guardian/ |
| Registration | [ ] Escheat | Conservator |
| [ ] Appointment of Church Trustee, | [ ] Establish Boundaries | [ ] Termination of Mineral |
| Substitute Fiduciaries | [ ] Expunge | Rights |
| [ ] Approval of Right to be Eligible to | [ ] Forfeiture of U.S. Currency | [ ] Unlawful Detainer |
| Vote | [ ] Freedom of Information | [ ] Vehicle Confiscation |
| [ ] Asbestos Litigation | [ ] Garnishment | [ ] Will Contested |
| [ ] Attachment | [ ] General Tort Liability (other | [ ] Writ of Certiorari |
| [ ] Bond Forfeiture Appeal | than motor vehicle) | [ ] Writ of Habeas Corpus |
| [ ] Child Abuse and Neglect - Unfounded | [ ] Grievance Procedures | [ ] Writ of Mandamus |
| Complaint | [ ] Guardian/Conservator | [ ] Writ of Prohibition |
| [ ] Civil Contempt | Appointment | [ ] Writ of Quo Warranto |
| [ ] Claim Impleading Third Party | [ ] Impress/Declare a Trust | [ ] Wrongful Death |
| Defendant | [ ] Injunction | [ ] Other |
| [×] Complaint - (Miscellaneous) | [ ] Interdiction | |
| [ ] Compromise Settlement | [ ] Interrogatory | |
| [ ] Condemnation | [ ] Intentional Tort | |
| [ ] Confessed Judgment | [ ] Judgment Lien-Bill to Enforce | |
| [ ] Conservator of Peace | [ ] Judicial Review | |

[×] Damages in the amount of $ 500,000.00 ....................................... are claimed.

September 16, 2009                          _____
_____
DATE                  [ ] PLAINTIFF  [ ] DEFENDANT   [×] ATTORNEY FOR [×] PLAINTIFF
                                                                  [ ] DEFENDANT

..........................................................................................................................................

Richard J. Serpe
PRINT NAME

Law Offices of Richard J. Serpe, 580 East Main Street, Suite 310, Norfolk, Virginia 23510 (757) 233-0009
ADDRESS /TELEPHONE NUMBER OF SIGNATOR

* See reverse side for Civil Action Type Codes
                                                        - for Clerk's Office Use Only

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK**

**JOSEPH E. LEACH and**
**CATHY L. LEACH**

               **Plaintiffs,**

**v.**                                          Case No. _____

**WELLINGTON, L.L.C.**
**Serve:**      Bennett Stein, Registered Agent
              740 Thimble Shoals Boulevard, Suite F
              Newport News, VA 23606-3574

**and**

**AMERICAN EASTERN, INC.**
**Serve:**      H.R. Ashe, Registered Agent
              632 Hampton Highway
              Yorktown, VA 23693

**and**

**VENTURE SUPPLY INC.,**
**Serve:**      Richard E. Biemiller, Registered Agent
              Convergence Center IV
              301 Bendix Rd., Ste 500
              Virginia Beach, VA 23452

**and**

**THE PORTER-BLAINE CORP.,**
**Serve:**      Richard E. Biemiller, Registered Agent
              Convergence Center IV
              301 Bendix Rd., Ste 500
              Virginia Beach, VA 23452

**and**

**TOBIN TRADING INC.,**
**Serve:**      Phillip W. Perry, Jr., Registered Agent
              5008 Gatehouse Way
              Virginia Beach, VA 23455

**and**

**MICHAEL BRAZIL and**
**LESLIE BRAZIL**
**Serve:**      107 Winsome Haven Dr.
               Seaford, VA 23696

               **Defendants.**

## COMPLAINT

NOW COME the Plaintiffs, Joseph Leach and Cathy Leach by counsel, who file their Complaint against Venture Supply, Inc. ("Venture"), Tobin Trading, Inc. "Tobin"), The Porter-Blaine Corp. ("Porter-Blaine"), Wellington, L.L.C. ("Wellington") and American Easter ("American") and Michael Brazil and Leslie Brazil ("Brazils") and respectfully state as follows:

## INTRODUCTION

1.      The Plaintiffs bring this action because their family home located at 4043 Dunbarton Cir., Williamsburg, VA 23188 ("the home") was built with defective drywall. The Plaintiffs purchased the home from the previous owners, Michael and Leslie Brazil (these defendants will be referred to as the "reseller defendants").

2.      The home was built by American and Wellington (these defendants will be referred to collectively in this suit as the "builder/developer defendants").

3.      The defective drywall installed in the Plaintiffs' home was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Tobin, Venture, and Porter-Blaine (these

2

defendants will be referred to collectively in this suit as the "manufacturer/supplier defendants").

4.      Defendant Venture is a Virginia corporation with its principal place of business located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

5.      Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders.

6.      Defendant American is a Virginia corporation with its principal place of business located at 632 Hampton Highway, Yorktown, Virginia 23693.

7.      Defendant Wellington is a Virginia limited liability company with its principal place of business located at 740 Thimble Shoals Boulevard, Suite F, Newport News, Virginia 23606.

8.      Defendant Tobin is a Virginia corporation with its principal place of business located at 5008 Gatehouse Way, Virginia Beach, Virginia, 23455.

9.      Tobin imported, distributed, delivered, supplied, inspected, marketed and/or sold defective drywall at issue in this case.

10.     Defendant Porter-Blaine is a Virginia corporation and is located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

11.     Defendants Michael Brazil and Leslie Brazil are the previous owners who contracted and sold the home to the Plaintiffs and are now located at 107 Winsome Haven Dr., Seaford, VA 23696.   Leslie Brazil is also the daughter of H.R. Ashe, president of builder developer defendant American.

12.     The Brazils purchased the house from Wellington on or around September 28, 2006.   The Brazils contracted with the Plaintiffs on June 20, 2008 for

3

the sale of the house and closed on the property on July 23, 2008.

13.   All obligations, rights, warranties, and duties from each defendant owed to the Brazils from the other defendants for the house passed to the Plaintiffs as third-party beneficiaries.

14.   Hereinafter the Plaintiffs will assert their claims against all defendants as if they had been the first purchasers of the home.

15.   Porter-Blaine, which shares an address with Venture, is one of Venture's drywall installation contractors.  Porter-Blaine installed the defective Chinese drywall in Plaintiffs home, which has resulted in harm and damages to Plaintiffs as described herein.

16.   The drywall, used in the Plaintiffs' family home, is inherently defective because it emits various sulfide gases and/or other toxic chemicals through "off-gassing" that create noxious odors, and cause damage and corrosion (the "Defect") to the structural, mechanical and plumbing systems of the Plaintiffs' home such as the framing, heating, air-conditioning and ventilation ("HVAC") units, refrigeration coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and Other Property such as microwaves, utensils, electronic appliances, jewelry, and other household and personal property items ("Other Property").

17.   The compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure.  These chemical compounds cause and have caused dangerous health consequences including, among other things, allergic reactions, respiratory afflictions, sinus and bronchial problems requiring medical attention, including headaches

4

suffered by the Plaintiffs.

18.     The Defendants knew, had reason to know and/or should have known the corrosive and damaging effect of the defective drywall installed in the Plaintiffs' family home.

19.     The Defect existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted and continues without interruption to this date and will continue beyond this date.

20.     At all times herein mentioned, each of the Defendants were acting in concert with one another and was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiffs.

### COUNT I
### BREACH OF CONTRACT
**(Against the builder/developer defendants and reseller defendants)**

21.     The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

22.     The Plaintiffs offered, and the builder/developer and/or reseller defendants accepted, sums of money in exchange for an agreement to build a home pursuant to the terms of the Contract.

23.     Upon information and belief, the Contract entered into by the Plaintiffs for

5

construction of their family home impliedly and expressly warranted that the home would be free from Defects.

24.     The presence of defective drywall, which "off-gasses" sulfur and other toxic chemicals is a material breach of the duties the builder/developer defendants owed to the Plaintiffs pursuant to the Contract.

25.     As a direct consequence of the material breaches of the Contract described above, the Plaintiffs have sustained substantial damages set forth herein.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(Against the builder/developer defendants)**

26.     The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

27.     The builder/developer defendants warranted that the Property and all its fixtures were free from structural defects, constructed in a workmanlike manner and fit for habitation.

28.     By distributing, delivering, supplying, inspecting, installing, marketing, and selling a defective, unsafe, and poorly manufactured drywall product, and installing it on the property, the builder/developer defendants have materially breached their express warranties to the Plaintiffs.

29.     The Plaintiffs provided builder/developer defendants all required notices of the breach of the warranties and requested that the builder/developer defendants remedy the same.

30.     The Plaintiffs relied on these express warranties to their detriment.

6

31.     As a direct result of this breach of express warranties, personal injury and personal and real property damages have been, and continue to be, incurred by the Plaintiffs as set forth herein.


## COUNT III
## BREACH OF IMPLIED WARRANTIES
### (Against all Defendants except the reseller defendants)

32.     The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

33.     When Defendants distributed, delivered, supplied, inspected, installed, marketed, or sold their defective drywall to the Plaintiffs, Defendants implicitly warranted that the product was safe, efficacious, well tested, and of high quality.

34.     By distributing, delivering, supplying, inspecting, installing marketing, and selling a defective, unsafe and poorly manufactured drywall product, and installing it on the property, Defendants have breached their implied warranties.  The Plaintiffs provided Defendants all required notices of the breach of the warranties and requested that Defendants remedy the same.

35.     These implied warranties were relied on by the Plaintiffs because it is understood that the Defendants have knowledge as to the quality, safety, and efficacy of the drywall they distribute, deliver, supply, inspect, install, market and sell.

36.     As a direct result of the breach of implied warranties, personal injury and personal real property damages have been, and continue to be, incurred by the Plaintiffs as set forth herein.

7

## COUNT IV
## NEGLIGENCE
### (Against all Defendants except the reseller defendants)

37.     The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

38.     Defendants owed a duty to the Plaintiffs to exercise reasonable care in the distributing, delivering, supplying, inspecting, installation, marketing, and/or selling drywall, including a duty to adequately warn of its failure to do the same and to warn the Plaintiffs of this Defect.   Defendants' foreseeable duties include, but are not limited to the following:

a.     using reasonable care in the distributing of the drywall to prevent it from containing the Defect as set forth herein;

b.     using reasonable care in the delivering of the drywall to prevent it from containing the Defect as set forth herein;

c.     using reasonable care in the supplying of the drywall to prevent it from containing the Defect as set forth herein;

d.     using reasonable care in the inspecting of the drywall to prevent it from containing the Defect as set forth herein;

e.     using reasonable care in the installation of the drywall to prevent it from containing the Defect as set forth herein;

f.     using reasonable care in the marketing of the drywall to prevent it from containing the Defect as set forth herein;

g.     using reasonable care in the selling of the drywall to prevent it from containing the Defect as set forth herein;

8

h.   using reasonable care to warn of Defendants' failure to use reasonable care in any of the above circumstances;

i.   using reasonable care to warn, give adequate warning, and/or instruct the Plaintiffs of all latent dangers and defects;

j.   recalling, or otherwise notifying the Plaintiffs, at the earliest date that it became known that the drywall used in their family home was dangerous and defective;

k.   recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;

l.   not misrepresenting that the drywall was safe for its intended purpose, when, in fact, it was not;

m.   not distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

n.   not concealing information from the Plaintiffs regarding reports of adverse effects associated with drywall; and/or

o.   otherwise exercising reasonable care in the distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing the Defect as set forth herein.

p.   Defendants were negligent and breached their duty to exercise reasonable care in the distribution, delivery, supply, inspections, installation, marketing, and/or sale of drywall, including a failure to adequately warn of its failure to do the same and to warn of the latent Defect.

9

39.   As a direct and proximate cause of Defendants' foreseeable and negligent acts and omissions, the Plaintiffs have incurred damages set forth herein.

## COUNT V
## NEGLIGENCE PER SE
### (Against all Defendants except the reseller defendants)

40.   The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

41.   Defendants breached their statutory duties to the Plaintiffs by failing to exercise reasonable care in distributing, delivering, supplying, inspecting, installing, marketing, and selling the defective drywall used in the construction of their family home.

42.   Defendants likewise breached their duties to the Plaintiffs by failing to warn the Plaintiffs about the defective nature of the drywall, which both malfunctioned and generated untoward side-effects.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective Chinese drywall and the adverse effects that it could have on the home in which it was used and on the health of the Plaintiffs themselves.

43.   Defendants breached statutory duties to Plaintiffs, including but not limited to, statutory duties imposed under the Virginia Building Code, *see* Virginia Code § 36-99, and the implied warranty that a new home be fit for habitation. *See* Va.Code § 55-70.1(B).

44.   Defendants breached statutory duties to Plaintiffs because the drywall utilized in construction of the home fails to meet the requirements or the International

10

Building Code, Sections 2506.2 and 2507.2 requiring that the drywall be "essentially gypsum." The IBC has been adopted by the State of Virginia.

45.     Given the Defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause both economic and physical damage to the Plaintiffs.

46.     Economic damages include, but are not limited to, substantial reconstruction and repair of the home, as well as medical expenses incurred as a result of Defendants' drywall, which are and may be considerable.

47.     Defendants' drywall was the proximate cause of both the plaintiffs personal and property damages as set forth herein.

48.     Due to Defendants' negligence per se, the Plaintiffs will continue to suffer from their personal and real property damages.

49.     Although Defendants knew or should have known about the defective nature of their drywall products, Defendants nevertheless continued to distribute, deliver, supply, market, sell and install it.


**COUNT VI**
**UNJUST ENRICHMENT**
**(Against all Defendants)**

50.     The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

51.     Each Defendant individually and collectively profited from the sale of the defective drywall to the Plaintiffs, receiving payment themselves or through an agent. Defendants received payment for the defective drywall and have retained those sums

11

to the detriment of the Plaintiffs.

52.    Defendants' receipt and retention of the profits gained by sale of the defective drywall to Plaintiffs is unjust and inequitable.

53.    As a direct and proximate result of Defendants conduct complained of herein, the Plaintiffs have sustained substantial damages as set forth herein.

54.    Defendants knew or should have known of the damages their defective drywall would cause as described herein.

## COUNT VII
### PRIVATE NUISANCE
### (Against all Defendants)

55.    The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

56.    The acts and/or omissions of Defendants have caused injury to the Plaintiffs, among other things, depriving the Plaintiffs of the peaceful and quiet use and enjoyment of their property.

57.    Defendants' acts and/or omissions are wrongful and/or tortious, jeopardizing the health, well-being, and safety of the Plaintiffs.  Defendants knew their acts and/or omissions were wrongful or they should have known, and the resulting harm to the Plaintiffs is ongoing.

58.    As a direct consequence of Defendants' creation of a private nuisance, the Plaintiffs have suffered, and continue to suffer personal injuries and property damage as set forth herein.

## COUNT VIII
### EQUITABLE RELIEF, INJUNCTIVE RELIEF, AND MEDICAL MONITORING
#### (Against all Defendants)

59.     The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

60.     Because no adequate remedy exists for the conduct of Defendants, equitable and injunctive relief is appropriate.

61.     The Plaintiffs will suffer irreparable injury if the Court does not order injunctive relief and medical monitoring.

62.     The Plaintiffs demand that Defendants recall, repurchase, and/or repair the Plaintiffs' family home, and initiate and pay for a medical monitoring program.

63.     Medical monitoring is a necessary component of the relief the Court should order because some of the compounds being emitted from Defendants' defective drywall are very hazardous, some latently affecting the central nervous system and basic oxygenation on a cellular level.

64.     As a direct consequence of the wrongful and/or tortious acts and/or omissions of Defendants' conduct, the Plaintiffs and their children have been exposed to airborne sulfur-based chemicals in quantities sufficient to harm them, and they have been harmed.

65.     Until it has been conclusively established that all defective drywall has been removed and that the air quality is safe, Defendants should bear the expense of air and environmental monitoring in the Plaintiffs' home.

13

## COUNT IX
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against all Defendants except the reseller defendants)

66.     The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

67.     Defendants, directly or through agents, were in privity with the Plaintiffs.

68.     At the times Defendants installed, utilized, supplied, inspected and/or sold drywall for use in the Plaintiffs' home, Defendants knew, or it was reasonably foreseeable, that the drywall would be used in the Plaintiffs' home as a building material, and impliedly warranted the product to be fit for that use.

69.     Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

70.     The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by the Defendants; to wit, the installation of the drywall in the Plaintiffs' family home for use as a building material, because it contained a Defect as set forth herein.

71.     The Defendants breached the implied warranty of merchantability because the drywall was not fit to be installed in the Plaintiffs' home as a building material due to the Defect set forth herein.

72.     Defendants had reasonable and adequate notice of the Plaintiffs' claims for breach of implied warranty of merchantability and have failed to cure.

73.     As a direct and proximate cause of Defendants' acts and omissions, the

14

Plaintiffs have incurred economic and other damages set forth herein.

## COUNT X
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (Against all Defendants except the reseller defendants)

74.     The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

75.     Defendants, directly or through agents, were in privity with the Plaintiffs.

76.     Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

77.     The drywall was defective because it was not fit for the specific purpose of being installed in the Plaintiffs' family home as a building material, the purpose for which the Plaintiffs bought the product in reliance on the judgment of Defendants.

78.     The Defendants breached the implied warranty of fitness for a particular purpose because the drywall was not fit to be installed in the Plaintiffs' home as a building material due to the Defect set forth herein.

79.     Defendants had reasonable and adequate notice of the Plaintiffs' claims for breach of implied warranty of fitness for a particular purpose and have failed to cure.

80.     As a result of defendants conduct, plaintiffs have suffered damages set forth herein.

15

**COUNT XI**
**VIOLATION OF CONSUMER PROTECTION ACT**
**(Against all Defendants except the reseller defendants)**

81.     The Plaintiffs incorporate and restate all preceding paragraphs as if fully set forth herein.

82.     This is an action for relief under Virginia Code § 59.1-196, *et seq.,* pursuant to the Virginia Consumer Protection Act.

83.     Virginia Code § 59.1-198 defines a "Consumer transaction" as "[t]he advertisement, sale, lease, license or offering for sale, lease or license of goods or services to be used primarily for personal, family or household purposes." Furthermore, "Goods" means "all real, personal or mixed property, tangible or intangible."

84.     The advertising, soliciting, providing, offering, distributing, installation and construction of drywall by the Defendants to the Plaintiffs constitute acts by a supplier under the Virginia Consumer Protection Act.

85.     Virginia Code § 59.1-200.A. provides that:  [t]he following fraudulent acts were practices committed by a supplier in connection with a consumer transaction, and are hereby declared unlawful:

a.      Misrepresenting the source, ... of goods or services;

b.      Misrepresenting the affiliation, connection or association of the supplier, or of the goods or services, with another;

c.      Misrepresenting geographic origin in connection with goods or services;

d.      Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses or benefits;

16

e.     Misrepresenting that goods or services are of a particular standard, quality, grade, style or model.  The Defendants' acts and omissions, as well as their failure to use reasonable care in this matter, as alleged in this Complaint, including, but not limited to, the knowing misrepresentation of the source, affiliation, origin, characteristics, ingredients, standards and quality of the Chinese drywall, that was mislabeled as drywall of "Venture Supply, Inc." when installed in the Plaintiffs' home constitutes violation of the aforementioned provisions of the Virginia Consumer Protection Act.

86.     The Plaintiffs have suffered actual damage as a result of the Defendants' violations of the aforementioned provisions of the Virginia Consumer Protection Act for which they are entitled to relief under Virginia Code § 59.1,204,205,206 and/or 207.


### COUNT XII
### FRAUD
**(Against the builder developer defendants and the reseller defendants)**

87.     The builder/developer defendants fraudulently misrepresented the Defect in the Home was a normal part of the construction process which the plaintiffs should not be concerned about as it would promptly dissipate.

88.     The reseller defendants fraudulently misrepresented that there was no Defect in the home by trying to cover up signs and symptoms of its existence.

89.     This representation was false.  The odor in the home was the result of defective drywall.  The defendants knew that an odor existed and tried to hide its

17

existence.

90.    The misrepresentation was of a material fact, in that it concealed the existence of the Defect.

91.    The misrepresentation was made intentionally and knowingly. The defendants had actual knowledge of the defect, and/or recklessly misrepresented facts to the plaintiffs.   The misrepresentation was made with an intent to mislead, and/or was made recklessly.

92.    Alternatively, the conduct of the defendants constitutes constructive fraud, in that the defendants were negligent in making misrepresentations concerning the Defect.

93.    Defendants failed to disclose material facts such as their awareness of the Defect and previous problems with the air-conditioning systems to Plaintiffs.

94.    The plaintiffs reasonably justifiably relied on the misrepresentations and failures to disclose.   Defendants' misrepresentations diverted Plaintiffs from making reasonable additional inquiries.

95.    As a direct and proximate cause of Defendants' acts and omissions, the plaintiffs have incurred or will incur direct, incidental and/or consequential damages in the manner set forth herein.

## **DAMAGES**

96.    As a result of the Defendants' conduct as alleged herein, the Plaintiffs have suffered damage because their home contains inherently defective drywall that has caused damage to their home, Other Property, and their health.

18

97.     The Plaintiffs have incurred or will incur substantial damages including, but not limited to:  Repair or replacement of their family home, repair or replacement of Other Property, repair or replacement of any other material contaminated or corroded by the drywall as a result of "off-gassing," cost of medical care, costs of relocation during repairs, storage costs, and other incidental and consequential damages.

98.     Further, as a result of the Defendants' conduct as alleged herein, the Plaintiffs have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical care and monitoring.  All conditions precedent to the relief requested herein have occurred, been performed or have been waived.

99.     As a direct and proximate cause of Defendants' acts and omissions, the Plaintiffs have incurred, or will incur, incidental or consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

## DEMAND FOR TRIAL BY JURY

The Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

WHEREFORE, the Plaintiffs request that this Honorable Court grant the following relief:

19

a.      judgment in their favor, jointly and severally, against the Defendants;

b.      an Order requiring Defendants to pay compensation in the amount of at least Two Million Dollars ($500,000.00) in compensatory damages;

c.      an Order for temporary and permanent injunctive relief and requiring medical monitoring;

d.      costs and expenses in this litigation including, but not limited to, expert fees, filing fees and reasonable attorneys' fees and costs and pre-judgment and post-judgment interest; and

e.      such additional and further relief as is just and appropriate under the circumstances.

DATED: ___9·16-09_____          Joseph E. Leach and Cathy L. Leach, Plaintiffs


by: _____
          Richard J. Serpe


Richard J. Serpe, Esquire (VSB #33340)
Law Offices of Richard J. Serpe, P.C.
580 East Main Street, Suite 310
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455

20