# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

STEVEN HEISCHOBER
and ELIZABETH HEISCHOBER,

        Plaintiffs,

v.                                          Civil Action No. _____

TAISHAN GYPSUM CO. LTD. f/k/a
SHANDONG TAIHE DONGXIN CO. LTD.
Dawenkou, Daiyue District,
Tai'an City, Shandong Province, China, 271026

and

BNBM PUBLIC LIMITED COMPANY a/k/a
BEIJING NEW BUILDING MATERIALS
PUBLIC LIMITED CO.
No. 16, West Road
Jiancaicheng Xisanqi Haidian District
Beijing, China

        Defendants.

## COMPLAINT

NOW COME the Plaintiffs, by counsel, who file their Complaint against the Defendants Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin, Co. Ltd. ("Taishan"), and BNBM Public Limited Company a/k/a Beijing New Building Materials Public Limited Co. ("BNBM"). In support thereof, Plaintiffs states as follows:

### JURISDICTION AND PARTIES

1.    This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332 and diversity of citizenship, with an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

1

2. Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(2) because some Plaintiffs reside in this jurisdiction, some Defendants reside in this jurisdiction, and a substantial amount of the events and occurrences giving rise to the claim occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3. Plaintiffs, Steven Heischober and Elizabeth Heischober (the "Heischobers"), are residents of Virginia and own a home located at 214-A 80th Street, Virginia Beach, Virginia.

4. Upon information and belief, the Heischober's home contains defective drywall that was designed, manufactured, exported, inspected, marketed, and/or sold by Defendants Taishan and BNBM.

## DEFENDANTS

5. Defendant Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin Co. Ltd. ("Taishan") is a Chinese corporation doing business in the Commonwealth of Virginia with its principal place of business located at Dawenkou, Daiyue District, Tai'an City, Shandong Province, China, 271026.

6. Defendant Taishan designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case.

7. Defendant BNMP Public Limited Company a/k/a Beijing New Building Materials Public Limited Co. ("BNBM") is a Chinese corporation doing business in the Commonwealth of Virginia with its principal place of business located at No. 16 West Road, Jiancaicheng Xisanqi Haidian District, Beijing, China.

8. Upon information and belief, Taishan is owned, held, and controlled by BNBM which is a state-owned entity and respectively controlled by the Chinese government.

9. Defendant BNBM caused the drywall at issue in this case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

10. To the extent Defendants are deemed a foreign sovereign entity, Plaintiffs bring claims pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception. Plaintiffs allege that the claim is based upon Defendants' commercial activities carried on in the United States. The claim also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

11. At all times herein mentioned, each of the Defendants was acting in concert with one another and was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of the other Defendant herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendant, knowing that their collective conduct constituted a breach of duty owed to Plaintiffs.

## GENERAL ALLEGATIONS

12. Upon information and belief, Defendants' drywall contains gypsum.

13. In "defective drywall" (such as that designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants herein), the

gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.

14. Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

15. Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

16. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs home, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall.

17. Defendants tortiously manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' home and/or caused personal injury resulting in eye irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

18. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs have suffered, and continue to suffer, economic harm and/or personal injury.

19. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, the Plaintiffs have suffered, and continue to suffer, damages. These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

20. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs have been exposed to above-background levels of toxic gases and suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair of their homes or rescission of their home contracts, emergency/corrective notice, environmental testing and monitoring, and/or medical monitoring.

## COUNT I
## NEGLIGENCE

21. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

22. Defendants owed a duty to Plaintiffs to exercise reasonable care in a) designing, b) manufacturing, c) exporting,  e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) and/or selling, this drywall, including a duty to adequately warn of their failure to do the same.

23. Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

24. Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

25. Defendants likewise breached their duties to Plaintiffs by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs.

26. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs.

27. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT II
## NEGLIGENCE PER SE

28. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

29. Defendants owed statutory duties to Plaintiffs to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d), e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) this drywall.

30. Defendants breached their statutory duties to the Plaintiffs by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) distributing, e) delivering, f) supplying, g) inspecting, h) marketing, and/or i) selling this drywall.

31. Defendants likewise breached their statutory duties to Plaintiffs by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care,

knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs.

32. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs.

33. Defendants breached statutory duties to Plaintiffs, including but not limited to, statutory duties imposed under the Virginia Building Code, *see* Virginia Code § 36-99, and the implied warranty that a new home be fit for habitation. *See* Va. Code § 55-70.1(B).

34. Defendants breached statutory duties to Plaintiffs because the drywall utilized in construction of the home fails to meet the requirements of the International Building Code ("IBC"), Sections 2506.2 and 2507.2 requiring that the drywall be "essentially gypsum". The IBC has been adopted by the State of Virginia.

Defendants also knew from communication with the purchasers of the drywall that the drywall was required to comply with other standards including ASTM safety standards. Defendants conspired with US importers to avoid the testing and certification of these products as being in compliance with these standards.

35. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT III
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES

36. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

37. Defendants and/or their agents were in privity with Plaintiffs and/or Plaintiffs were foreseeable third party beneficiaries of any warranty.

38. At the times Defendants utilized, supplied, inspected, sold, and/or installed this drywall for use in the Plaintiffs' home, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' home for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

39. Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

40. The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' home for use as a building material, because it contained defects as set forth herein.

41. The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs home as a building material) due to the defects set forth herein.

42. Defendants had reasonable and adequate notice of the Plaintiffs' claims for breach of warranty and failed to cure.

43. As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs have incurred harm and damages and/or personal injuries as described herein.

## COUNT IV
## PRIVATE NUISANCE

44. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

45. The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' home which has unreasonably interfered, and

continues to interfere, with the Plaintiffs' use and enjoyment of their property and caused them harm and damage as discussed herein.

46. Defendants' interference has impaired the rights of Plaintiffs' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

47. Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

48. The interference with Plaintiffs' use of their property caused by Defendants is substantial and is ongoing.

49. Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

50. As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs have incurred harm and damages and/or personal injuries as described herein.

## COUNT V
## UNJUST ENRICHMENT

51. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

52. Defendants received money as a result of Plaintiffs' purchase of Defendants' defective drywall, or purchases of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs.

53. Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs.

54. Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT VI
## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT

55. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

56. This is an action for relief under Virginia Code § 59.1-196, *et seq.*, pursuant to the Virginia Consumer Protection Act.

57. Virginia Code § 59.1-198 defines a "Consumer transaction" as "[ t ]he advertisement, sale, lease, license or offering for sale, lease or license of goods or services to be used primarily for personal, family or household purposes." Furthermore, "Goods" means "all real, personal or mixed property, tangible or intangible."

58. Defendants' sales of defective drywall to the Plaintiffs, either directly or through agents, constitute transactions by a supplier under the Virginia Consumer Protection Act.

59. Virginia Code § 59.1-200.A. provides that: "[t]he following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful":

    a. Misrepresenting the source . . . of goods or services;

    b. Misrepresenting the affiliation, connection or association of the supplier, or of the goods or services, with another;

    c. Misrepresenting geographic origin in connection with goods or services;

    d. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses or benefits;

    e. Misrepresenting that goods or services are of a particular standard, quality, grade, style or model.

10

60. The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including, but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the defective drywall constitute violation of the aforementioned provisions of the Virginia Consumer Protection Act.

61. Plaintiffs have suffered actual damage as a result of the Defendants' violations of the aforementioned provisions of the Virginia consumer Protection Act for which they are entitled to relief under Virginia Code § 59.1,204,205,206 and/or 207.

62. As a direct and proximate cause of Defendant's violations of the Virginia Consumer Protection Act, Plaintiffs have incurred harm and damages as described herein.

## COUNT VII
### EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING

63. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

64. Plaintiffs are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

65. Plaintiffs will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the Plaintiffs home.

66. Plaintiffs demand injunctive and equitable relief and further, that defendants be ordered to: (1) to buy back or rescind the contracts for Plaintiffs' home, or in the alternative, remedy, repair and/or replace the drywall in the home upon proof by the Defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Plaintiffs and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the general public of the defect

and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program consistent with the requirements of Virginia law.

67. Until Defendants' defective drywall has been removed, Defendants should provide continued environmental and air monitoring in Plaintiffs home.

68. Plaintiffs have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result.

69. The sulfides and other noxious gases which have been released from Defendants drywall and to which Plaintiffs have been exposed are proven hazardous, dangerous, or toxic substances.

70. Plaintiffs' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

71. Plaintiffs' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

72. The method and means for diagnosing the Plaintiffs' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs by preventing or minimizing health problems that they may encounter as a result of the defective and unfit drywall.

73. As a proximate result of their exposure to sulfide and other noxious gases from Defendants' defective and unfit drywall, Plaintiffs have developed a significantly increased risk of contracting a serious latent disease.

74. Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

75. The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs demand:

a. compensatory, statutory, and/or punitive damages in the amount of at least Five Million Dollars ($5,000,000.00);

b. pre and post-judgment interest as allowed by law;

c. injunctive relief;

d. an award of attorneys' fees as allowed by law;

e. an award of taxable costs; and

f. any and all such further relief as this Court deems just and proper.

DATED: 8-28-09

Richard Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
*Counsel for Plaintiffs*

| | |
|---|---|
| Michael D. Hausfeld<br>Richard S. Lewis<br>James J. Pizzirusso<br>Faris Ghareeb<br>HAUSFELD LLP<br>1700 K Street, N.W.<br>Suite 650<br>Washington, DC 20006<br>Phone: (202) 540-7200<br>Fax: (202) 540-7201<br>*Co-counsel for Plaintiffs* | Arnold Levin<br>Fred S. Longer<br>Daniel Levin<br>Levin, Fishbein, Sedran & Berman<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106<br>Phone: (215) 592-1500<br>Fax: (215) 592-4663<br>*Co-counsel for Plaintiffs* |
| Robert Gary<br>Gary, Naegele & Theado, LLC<br>446 Broadway<br>Lorain, OH 44052<br>Phone: (440) 244-4809<br>Fax: (440) 244-3462<br>*Co-counsel for Plaintiffs* | Richard W. Stimson<br>Attorney at Law<br>920 Waters Reach Court<br>Alpharetta, Georgia 30022<br>Phone: 214-914-6128<br>*Co-counsel for Plaintiffs* |

{765\01\00036243.DOC }