UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | : | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | : | |
| LITIGATION | : | SECTION L |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | JUDGE FALLON |
| | : | |
| MICHELLE GERMANO, et al. vs. | : | MAG. JUDGE WILKINSON |
| TAISHAN GYPSUM CO. LTD., et al., | : | |
| CASE NO. 2:2009-CV-06687 (E.D. La.) | : | |
| | : | |
| | : | |

**NON-PARTY DISTRIBUTOR DEFENDANTS' MEMORANDUM IN SUPPORT OF CORRECTED MOTION FOR EXTENSION OF DEADLINES IN THIS COURT'S SCHEDULING ORDER DATED NOVEMBER 24, 2009 AND FOR CONTINUANCE OF THE FEBRUARY CONFIRMATION OF DEFAULT JUDGMENT PROCEEDING**

Non-Party Distributor Defendants[1], through their undersigned counsel, file the instant Memorandum in Support of their Corrected Motion for Extension of Deadlines in this Court's Scheduling Order Dated November 24, 2009 and for Continuance of the February Confirmation of Default Judgment Proceeding, and as grounds therefore, state:

1. On November 19, 2009, this Court announced during its Pretrial Conference that it intended to conduct a Confirmation of Default Judgment proceeding against TAISHAN GYPSUM CO. LTD. ("TAISHAN") in the above-styled cause (the "Default Judgment Proceeding").

2. On November 24, 2009, this Court entered a Scheduling Order governing the Default Judgment Proceeding. The Scheduling Order sets deadlines for disclosing witnesses, conducting inspections, conducting discovery, as well as other deadlines leading up to a hearing

---

[1] Distributor Defendants include, but may not be limited to, Defendants BANNER SUPPLY CO., INDEPENDENT BUILDER SUPPLY ASSOCIATION, INC., INTERIOR EXTERIOR SUPPLY, INC., and others similarly situated. By filing the instant Motion, Distributor Defendants are not intervening into the *Germano* action at this time. Rather, since the Court in its Scheduling Order invites all parties with a potential interest in the determination of a proper remediation protocol to intervene, and since the Distributor Defendants have such an interest, the instant Motion is being filed to advise the Court of these interests, but at the same time, advise the Court that the current Scheduling Order may not be feasible for certain Defendants whose interests, even if remote, could potentially be affected by any outcome.

{218429.0005/N0800437_1}

in February 2010 to determine "the scope and extent of the appropriate remediation necessary for a number of properties that will adequately represent a cross-section of properties at issue in the *Germano* case that are impacted with allegedly defective Chinese drywall". The Court intends to conduct *Daubert* hearings starting on January 25, 2010.

3. In its Scheduling Order, the Court also invites any interested party to file a Motion to Intervene on or before December 4, 2009.

4. While Distributor Defendants believe they may have an interest in establishing a proper and scientifically supported remediation protocol, Distributor Defendants are concerned that the current Scheduling Order, given the nature of the instant proceedings and the available discovery, does not provide Distributor Defendants with a sufficient amount of time and opportunity to adequately protect their interests should they intervene in order to present complete and adequate scientific and expert testimony as to remediation.

5. Since learning of the proposed Default Judgment Proceeding and the opportunity to intervene in that proceeding, Distributor Defendants have made reasonable efforts to locate experts to develop and implement a proper, scientifically supported remediation protocol and to define the scope of remediation. These experts include, but are not limited to, industrial hygienists, general contractors, electricians, plumbers, toxicologists, chemists and metallurgists.

6. In discussing the proposed Default Judgment Proceeding with proposed experts, it became readily apparent that any such experts will need sufficient time to inspect homes, obtain samples of the allegedly defective Chinese drywall (which may require samples from different manufacturer's), conduct various testing on defective Chinese drywall, nondefective Chinese drywall and other types of drywall, develop a scientifically supported remediation protocol or alternative protocols, define the scope and cost of remediation and, most importantly, test those proposed remediation protocols. It is presently unknown what the full scope and extent of the testing may require since it will largely depend on the information obtained and the initial testing

that is conducted. Distributor Defendants are fairly certain, however, that additional testing, evaluation and analysis will be required after the initial sampling and investigation of the homes occurs.

7. Distributor Defendants believe that any such experts will need to perform destructive testing on homes, including those that are the subject of the Default Judgment Proceeding, to obtain appropriate samples of drywall, wiring and other building components, conduct appropriate environmental sampling, conduct appropriate lab tests, develop and implement proposed alternative remediation protocols, define the extent and cost of the proposed remediation protocols, and, most importantly, test the protocols to see if they are feasible. Distributor Defendants anticipate that the lab tests, particularly chamber tests, tests to determine chemical emissions, tests to determine long term corrosion impacts, if any, and electrical component testing, among others, will take a substantial amount of time. Additionally, testing the proposed remediation protocols would take a significant amount of time as it would require a home (or several homes) to be remediated in accordance with a proposed remediation protocol and, after being remediated, inspected, tested, evaluated and analyzed under appropriate environmental conditions to determine whether the protocol is a feasible resolution to the alleged problem.

8. The amount of research, testing, inspecting and analysis that is required to reach reasonable scientific conclusions will take a significantly greater amount of time than what is provided for in the Scheduling Order; Distributor Defendants are unable to quantify the exact amount of time it may take to allow the science to catch up to the pending litigation. The need for additional time is supported by the findings of the Consumer Products Safety Commission's ("CPSC") November, 2009 Report which indicated that the CPSC would need additional time to

develop a remediation protocol (this after nearly one (1) year of research, testing and analysis)[2] and that certain studies, including the investigation of the corrosive impacts on electrical components, would not be completed until *at least* June 2010. Moreover, the experts seem to agree that humidity and warm climates may play a significant role in the alleged "off-gassing" and thus, it is important that any proposed protocol be conducted and tested under comparable conditions.

9. Distributor Defendants are also concerned that the Default Judgment Proceeding may not be a legally binding proceeding and, in fact, is not ripe for consideration for the reasons set forth by Defendants Venture Supply, Inc. and Porter-Blaine Corporation in their Objection to Apparent Stipulation or Agreement Between PSC and DSC (the "Venture Objection"). To the extent that Distributor Defendants could be materially impacted by the findings in the Default Judgment Proceeding, this is an extremely significant consideration. At the very least, Distributor Defendants would respectfully request that an Order, similar to the Consent Order entered relating to Venture's Objection, be entered as to Distributor Defendants, whether or not they intervene in the Default Judgment Proceeding.

10. The inability of all Distributor Defendants to conduct appropriate testing, research, evaluation and analysis into this new and unchartered area of allegedly defective Chinese drywall would result in substantial prejudice to those parties who have an interest in the development of a proper remediation protocol and defining the extent and cost of remediation.

---

[2] In fact, after spending nearly one (1) year, and conducting a fifty-one home study, the CPSC has only been able to make the preliminary conclusion that there is a "strong association between the problem drywall, the hydrogen sulfide levels in homes with that drywall, and corrosion in those homes". With all of the resources available to the CPSC, the number of tests conducted and the amount of time and money expended, how could BANNER possibly develop a protocol in a shorter period of time?

WHEREFORE, Non-Party Distributor Defendants respectfully request the Court to enter an Order (1) enlarging the time to file a Motion to Intervene, if at all, by ten (10) days following the resolution of the instant Motion; (2) continuing the February, 2010 Default Judgment Proceeding until a date and time sufficient to allow the expert witnesses who may be called upon to render opinions and conclusions on the proper remediation protocol; (3) extending all deadlines in the Scheduling Order; and (4) such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/Jeffrey A. Backman
JAN DOUGLAS ATLAS
Fla. Bar No. 226246
JEFFREY A. BACKMAN
Fla. Bar No. 0662501
ADORNO & YOSS LLP
350 East Las Olas Boulevard; Suite 1700
Fort Lauderdale, FL 33301-4217
Telephone: (954) 763-01200
Facsimile: (954) 766-7800
Attorneys for BANNER SUPPLY CO.

/s/ Gary Baumann
GARY BAUMANN, ESQ.
Florida Bar No. 89052
Fulmer LeRoy Albee Baumann & Glass
2866 E. Oakland Park Blvd.
Fort Lauderdale, FL 33306
Telephone: 954-707-4430
Fax: 954-707-4431
Attorneys for Defendant INDEPENDENT BUILDERS SUPPLY ASSOC.

/s/ Richard Duplantier
RICHARD DUPLANTIER, ESQ.
Louisiana Bar No. 18874
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040
New Orleans, LA 70139
Telephone: 504-525-6802
Fax: 504-525-2456

Attorneys for Defendant INTERIOR EXTERIOR BUILDING SUPPLY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing pleading has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 8th day of December, 2009.

/s/Jeffrey A. Backman
Jeffrey A. Backman