UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Northern Division

CURTIS HINKLEY, et al.,                )
                                       )
                    Plaintiffs,        )
                                       )
v.                                     )        Civil Action No.: 2:09cv25
                                       )
TAISHAN GYPSUM CO. LTD, et al.,        )
                                       )
                    Defendants.        )

### THE PORTER BLAINE CORPORATION AND VENTURE SUPPLY, INC.'S RULE 12(b)(6) MOTIONS WITH BRIEFS IN SUPPORT, ANSWER AND RULE 13(g) CROSS CLAIM

Come now the defendants The Porter-Blaine Corporation ("Porter-Blaine") and Venture Supply, Inc. ("Venture"), by counsel, and for their Rule 12(b)(6) Motions with Briefs in Support, Answer and Rule 13(g) Cross-Claim state as follows:

### MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF, PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

A.    BACKGROUND

As it relates to these answering Defendants, the Plaintiffs allege that Defendant "Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members. Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiff and Class Members." (Am. Compl. ¶ 12.) Similarly, the Amended Complaint states that "Porter-Blaine… is one of Venture's drywall installation contractors… Porter-Blaine installed defective drywall in Plaintiffs' homes, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein." (Am. Compl. ¶ 14.) In other words, the Amended Complaint states that the Plaintiffs

and Class Members either purchased drywall from one of these answering Defendants and/or one of these answering Defendants sold drywall to a builder from whom the Plaintiffs and Class Members purchased homes. The Amended Complaint goes on to state that the drywall installed in the Plaintiffs and Class Members homes is defective.

In their Amended Complaint, Plaintiffs assert numerous Counts against the Defendants. As to Defendants Venture and Porter-Blaine, the Plaintiffs set forth seven separate causes of action, taking a shotgun approach and alleging everything from "nuisance" to "unjust enrichment." Most, if not all, of these manufactured counts fail as a matter of law and should be dismissed. Each separate cause of action will be addressed separately below.

B.  COUNT II "NEGLIGENCE PER SE" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Count II, the Plaintiffs allege a cause of action based upon "negligence *per se*"; however, the Plaintiffs' Amended Complaint does not contain allegations sufficient to support such a claim. Specifically, in order to state a negligence *per se* claim, the Plaintiffs must allege the following:

> (1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff; (3) a breach of the statutory duty; (4) that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and, (6) that the violation of the statute proximately caused the injury.

Rudd v. Electrolux Corp., 982 F. Supp. 355, 365 (M.D.N.C., 1997) (citations omitted).

In Lynn v. Overlook Dev., 328 N.C. 689, 691, 403 S.E.2d 469, 470 (1991), the plaintiffs filed suit against a city building inspector, among others, alleging that the City of Asheville "had a duty to inspect [a] unit and that defendants' failure to inspect and/or order correction of the alleged Building Code violations was a proximate cause of plaintiffs' damages." Specifically, the plaintiffs alleged that the "defendants were negligent *per se* because they violated the

provisions of N.C.G.S. §§ 160A-417, -420, and -423 and Building Code sec. 105 relating to permits, inspections, and the certificate of compliance." Id. at 695-96, 403 S.E.2d at 473. Although the plaintiffs alleged particular statutes and Building Code provisions that were allegedly violated, the court stated that, "[a]lthough the violation of a statute which imposes a duty upon the city building inspector in order to promote the safety of the public, including the plaintiffs, may be negligence *per se*, *such negligence is actionable only if it is the proximate cause of injury to the plaintiff*." Id. at 696, 403 S.E.2d at 473 (emphasis in original). After evaluating whether the plaintiffs' allegations were sufficient to show that the alleged violations proximately caused the alleged damages, the court concluded, "we do not find that plaintiffs' allegations state a claim upon which relief can be granted." Id. at 696-97, 403 S.E.2d at 473. Accordingly, the court upheld the trial court's dismissal of the plaintiffs' claim, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

Here, although the Plaintiffs allege that the "Defendants owed statutory duties to Plaintiffs and Class Members[,]" (Am. Compl. ¶ 45) the Amended Complaint does not set forth a single allegation regarding the particular statute, law, or regulation which Porter-Blaine or Venture allegedly violated. Additionally, the Plaintiffs do not allege in their Amended Complaint that any statute or ordinance the Defendants allegedly violated was enacted to protect a class of persons, nor that they are members of the class of persons intended to be protected. Because they fail to allege any particular statute or ordinance, the Plaintiffs also fail to allege that the injury sustained was suffered by an interest which the statute protected and that the injury was of the nature contemplated in the statute. Since Plaintiffs have pled none of the requisite allegations to support a negligence *per se* cause of action, such claim should be dismissed for failure to state a claim upon which relief can be granted, as in Lynn, supra.

C.    COUNT III "BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Count III, Plaintiffs attempt to assert claims for Breach of Express and/or Implied Warranties.    Although the Amended Complaint does not specifically identify the implied warranties allegedly breached by Defendants, the allegations themselves reveal that Plaintiffs are asserting a claim for the breach of the Implied Warranty of Fitness for a Particular Purpose. Specifically, Plaintiffs' Amended Complaint states "[t]he Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' and Class Members' homes as a building material) due to the defects set forth herein."  (Am. Compl. ¶ 55.)  Accordingly, the viability of Plaintiffs' claim for "Breach of Implied Warranties" should be determined with reference to N.C. Gen. Stat. § 25-2-315.

N.C. G.S. § 25-2-315 states,

[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section [G.S. 25-2-316] an implied warranty that the goods shall be fit for such purpose.

The official comment to this statute makes a distinction between the implied warranty of fitness for a particular purpose and the implied warranty of merchantability.  N.C. Gen. Stat. § 25-2-315 cmt. 2.  Specifically, the comment states,

[a] "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Id.  Accordingly, courts have held that the "[o]rdinary use of a product forecloses recovery under the implied warranty of fitness for a particular purpose."  McDonald Bros., Inc. v. Tinder Wholesale, LLC, 395 F. Supp.2d 255, 266 (M.D.N.C., 2005).

In McDonald Bros., Inc., the plaintiff sought recovery for a breach of the implied warranty of fitness for a particular purpose regarding the sale of trim boards.  Id.  There, the plaintiff alleged "the trim boards were not fit for the particular purpose – for installation on residential housing – 'for which [they were] manufactured, designed, and sold.'"  Id. (citations omitted).  The court noted that "[t]he fact that the trim boards were manufactured, designed, and sold for residential use makes Plaintiff's actual use ordinary."  Id.  The court went on to state that "[s]uch ordinary, intended use prevents recovery under the implied warranty of fitness for a particular purpose as a matter of law."  Id. (citing Halprin v. Ford Motor Co., 107 N.C. App. 423, 431, 420 S.E.2d 686, 691 (1992) (denying claim where a plaintiff used his truck only for general everyday purposes)).  Accordingly, the court held that the plaintiff's claim for breach of the implied warranty of fitness for a particular purpose fails to state a claim and granted the defendant's motion to dismiss such claim.  Id.

Here, the Plaintiffs' Amended Complaint states, "[t]he Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' and Class Members' homes as a building material) due to the defects set forth herein."  (Am. Compl. ¶ 55.)  Indeed, the Plaintiffs' allegations are strikingly similar to those set forth in McDonald Bros., Inc., supra, and, similarly, the Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose should be dismissed, as the "[o]rdinary use of a product forecloses recovery under the implied warranty of fitness for a particular purpose."  McDonald Bros., Inc., 395 F. Supp.2d at 266.

Count III of Plaintiffs' Amended Complaint also purports to establish a claim for breach of express warranties; however, the Amended Complaint is devoid of any allegations tending to establish the existence of an express warranty. N.C. Gen. Stat. § 25-2-313 describes the circumstances under which an express warranty is created. Specifically, it states that an express warranty is created by a seller in the following circumstances:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise[;]

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description[; or]

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Id. Here, the Plaintiffs fail to allege any of the above circumstances under which an express warranty might have been created. Rather, the Amended Complaint merely states, "Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty[,]" (Am. Compl. ¶ 51) and that the Defendants "expressly or impliedly warranted the product to be fit for" installation in the Plaintiffs' and Class Members' homes. (Am. Compl. ¶ 52.) This vague and general allegation of the existence of an express warranty is insufficient to state a claim for the breach of an express warranty. Accordingly, Plaintiffs' have failed to state a claim for the breach of express and/or implied warranties and such claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

D.     COUNT IV "PRIVATE NUISANCE" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Count IV of the Amended Complaint, the Plaintiffs attempt to allege a cause of action for "private nuisance"; however, the Plaintiffs fail to allege that the Defendants had any

ownership or control over the thing allegedly causing a nuisance to the Plaintiffs.  In North Carolina, the following must be established in order to make a *prima facie* case of nuisance, "(1) that the defendant's use of its property, under the circumstances, unreasonably invaded or interfered with the plaintiff's use and enjoyment of the plaintiff's property; and (2) because of the unreasonable invasion or interference, the plaintiff suffered substantial injury."  Elliott v. Muehlbach, 173 N.C. App. 709, 712, 620 S.E.2d 266, 269 (2005).  In other words, "a private nuisance exists in a legal sense when one makes an improper use of his own property and in that way injures the land or some incorporeal right of one's neighbor."  Evans v. Lochmere Recreation Club, Inc., 176 N.C. App. 724, 727, 627 S.E.2d 340, 342 (2006) (emphasis added) (quoting Morgan v. High Penn Oil Co., 238 N.C. 185, 193, 77 S.E.2d 682, 689 (1953)).

Here, the Plaintiffs allege that Venture sold drywall to the drywall installer, and that the drywall was installed in a home they purchased from the builder or built themselves.  (Am. Compl. ¶ 12.)  It is also alleged that Porter-Blaine installed drywall in homes purchased by some Plaintiffs.  (Am. Compl. ¶14.)  It is not alleged that Venture or Porter-Blaine had any ownership in or control over the allegedly defective drywall.  Accordingly, Plaintiffs' Amended Complaint fails to state a cause of action for private nuisance.

Courts across the country find that in this type of action, a claim for private nuisance, is not viable. For example, in City of Manchester v. Nat'l Gypsum Co., 637 F. Supp. 646, 648 (D.R.I. 1986), the plaintiff arranged for construction of additions and modifications to City schools.  Plaster products containing asbestos were used in the construction.  Id.  The plaintiff filed suit over six years after construction was completed alleging, among other things, a cause of action based on nuisance.  See Id.  The court noted that the plaster products had been in the possession of the plaintiff since the completion of construction, and that, after the product was

manufactured and sold by the defendant, it had no control over the product.  Id. at 656.

Accordingly, the court found that, because the defendant "had [no] power to abate the

nuisance…, a basic element of the tort of nuisance [was] absent, and the plaintiff [could not]

succeed on [that] theory of relief."  Id.

Similarly, in Tioga Public School Dist. v. U.S. Gypsum Co., 984 F.2d 915, 920 (8th Cir.,

1993), the court held that "nuisance law does not afford a remedy against the manufacturer of an

asbestos-containing product to an owner whose building has been contaminated by asbestos

following the installation of that product in the building."  Because the defendant had no further

control of the contaminated material after it was sold to the plaintiff, the defendant could not be

held liable in nuisance.  Id.  See also Roseville Plaza Ltd. P'ship v. U.S. Gypsum Co., 811 F.

Supp. 1200, 1220 (E.D. Mich., 1992) (noting "the idea of a wrongful use of property (as

distinguished from an improper condition of property) is basic to the legal concept of nuisance…

[T]he role of the 'creator' of a nuisance, upon whom liability for nuisance-caused injury is

imposed, is one to which manufacturers and sellers seem totally alien." (emphasis added)).

Accordingly, since Plaintiffs have failed to allege any use, ownership, or control by the

Defendants over the property to which Plaintiffs assign a nuisance, Count IV should be

dismissed for failure to state a claim upon which relief can be granted.

E.    COUNT V "UNJUST ENRICHMENT" SHOULD BE DISMISSED FOR FAILURE TO
      STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Count V of their Amended Complaint, Plaintiffs attempt to state a claim for "unjust

enrichment."  In North Carolina, "[i]n order to establish a claim for unjust enrichment, a party

must have conferred a benefit on the other party."  Booe v. Shadrick, 322 N.C. 567, 570, 369

S.E.2d 554, 556 (1988).  Additionally, "[t]he benefit must not have been conferred officiously,

that is it must not be conferred by an interference in the affairs of the other party in a manner that

is not justified in the circumstances." Id. The benefit conferred "must not be gratuitous and it must be measurable." Id. (citations omitted). Finally, "the defendant must have consciously accepted the benefit." Id.

A claim of unjust enrichment is "neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." Id. In other words, "[t]he claim is not based on a promise but is imposed by law to prevent an unjust enrichment." Id. Accordingly, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." Id. (citations omitted).

In their Amended Complaint, the Plaintiffs divide the relationships between the Plaintiffs and Defendants Venture and Porter-Blaine into two categories, where: 1) the Plaintiff or Class Member had a contract with the Defendant at issue; and 2) the Plaintiff or Class Member was a third party beneficiary of such a contract. Specifically, the Amended Complaint states "Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty." (Am. Compl. ¶ 51.) Likewise, the Amended Complaint states that "Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members. Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiff and Class Members." (Am. Compl. ¶ 12.) Similarly, the Amended Complaint states that "Porter-Blaine… is one of Venture's drywall installation contractors… Porter-Blaine installed defective drywall in Plaintiffs' homes, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein." (Am.

Compl. ¶ 14.)   In order to determine whether Plaintiffs' have stated a claim for "unjust enrichment," these categories must be evaluated separately.

First, "[i]t is a well established principle that an express contract precludes an implied contract with reference to the same matter."  Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962).  Accordingly, in those instances where, as alleged in the Complaint, "Defendants and/or their agents were in privity with Plaintiffs and Class Members[,]" (Am. Compl. ¶ 51) and where "Venture… imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to… Plaintiff and Class Members[,]" (Am. Compl. ¶ 12) the existence of a direct contract precludes recovery on an implied contract.

In the second category of Plaintiffs and Class Members, the Amended Complaint establishes that the Plaintiffs and/or Class Members are a third party beneficiary to the contract of others.  An analogous situation was evaluated by the North Carolina Supreme Court in Vetco Concrete, supra.  There, a contract was entered into between the plaintiff and the Fore-Taylor Building Company, a third party to the relevant litigation.  Vetco Concrete, 256 N.C.at 713, 124 S.E.2d at 907.  Pursuant to that contract, the plaintiff furnished materials, which went into the construction of residences built on the defendant's lots.  Id.  The plaintiff never entered into any agreement with the defendant, under which the defendant would have agreed to pay the plaintiff for the materials supplied.  Id.

In determining whether the plaintiff could recover from the defendant under the theory of an implied contract or unjust enrichment, the court noted that "[i]t is a well established principle that an express contract precludes an implied contract with reference to the same matter."  Id. at 713, 124 S.E.2d at 908 (citations omitted).  Indeed, "[t]here cannot be an express and an implied contract for the same thing existing at the same time."  Id. (quoting 12 Am. Jur., Contracts,

Section 7, p. 505). The court went on to note that "[n]o agreement can be implied where there is

an express one existing[.]" Id. at 713-14, 124 S.E.2d at 908. More importantly,

> [t]he same rule has been applied to benefits conferred under a special contract
> with a third person. When there is a contract between two persons for the
> furnishing of services or goods to a third, the latter is not liable on an implied
> contract simply because he has received such services or goods.

Id. at 714, 124 S.E.2d at 908. (quoting 12 Am. Jur., Contracts, Section 7, p. 505). The court

concluded that, since the plaintiff proved a contract with the Fore-Taylor Building Company for

the purchase of the materials used in the construction of houses on defendant's property, "it was

error for the court to submit the case to the jury on the theory of an implied contract on the part

of the defendant to pay for materials sold and delivered." Id. at 715, 124 S.E.2d at 909.

 Here, in the second category of Plaintiffs and Class Members, the Plaintiffs allege that

they were "third party beneficiaries" to the contracts entered into by the first category of

Plaintiffs and Class Members discussed above. (Am. Compl. ¶ 51.) In other words, in the

instances in which a contract was entered into between a builder and Defendant Venture or

Porter-Blaine, the Plaintiff and/or Class Member homeowner would be a third-party beneficiary

to that contract. (See Am. Compl. ¶ 12 (alleging "Venture imported, distributed, delivered,

supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and

damaged homeowners including Plaintiffs and Class Members.").) According to the holding in

Vetco Concrete, supra, the Plaintiffs' claim for "unjust enrichment" as to this category of

Plaintiffs must fail because the existence of a contract regarding the sale of drywall between

parties other than the Plaintiffs and/or Class Members precludes the finding of an implied

contract regarding the same subject matter.

 Although the Amended Complaint is regretfully lacking in detail regarding the alleged

relationships between the parties, there are only two possible scenarios under which the Plaintiffs

and/or Class Members could have been involved with Defendants Venture and Porter-Blaine: either the Plaintiff/Class Member at issue had a contract with Venture or Porter-Blaine related to the provision of drywall; or Venture or Porter-Blaine had a contract with a builder related to the provision of drywall. Under either scenario, according to the cases outlined above, Plaintiffs have not properly pled a cause of action for "unjust enrichment," and such claim should be dismissed for failure to state a claim upon which relief can be granted.

F.  COUNT VI "VIOLATION OF THE NORTH CAROLINA CONSUMER PROTECTION ACT" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Count VI of the Amended Complaint, Plaintiffs purport to assert a claim for "Violation of the North Carolina Consumer Protection Act." Although Count VI summarily alleges that the acts of the Defendants constituted a "violation of the aforementioned provisions of the North Carolina Consumer Protection Act[,]" the Amended Complaint is entirely devoid of any allegations which would give rise to a valid claim under the Act.

In North Carolina "[t]o establish a *prima facie* claim for unfair trade practices, the plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce…, and (3) the act proximately caused injury to the plaintiff." Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995) (citations omitted). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Warfield v. Hicks, 91 N.C. App. 1, 8, 370 S.E.2d 689, 693 (1988). In other words, "[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." Id. (citations omitted).

In Wilson v. Dryvit Systems, Inc., 206 F. Supp.2d 749, 756-57 (E.D.N.C., 2002), the court evaluated whether the defendants acts, related to the sale of DEFS cladding on the

plaintiffs' house, gave rise to a claim for unfair and deceptive trade practices. There, the court noted that there was "no evidence that Dryvit said or did anything, or failed to say or to do something, that influenced plaintiffs' decision to clad their home with Fastrak in any relevant way." Id. at 756. Since the plaintiffs could not show the requisite causal connection between the alleged misrepresentation and their alleged damages, the court concluded "that no claim for unfair trade practices exists[,]" since "plaintiffs [could] not prove an essential element of their unfair trade practices claim." Id.; see also, Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995) (holding that plaintiff did not "demonstrate actual reliance on [defendant's] misrepresentations and, therefore, failed to provide the requisite casual connection[,]" and, therefore the plaintiff failed to prove the defendant committed an unfair and deceptive act which proximately caused injury to the plaintiff).

Here, the Amended Complaint alleges that

[t]he Defendants' acts and omissions as well as their failure to use reasonable care in this matter… including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the aforementioned provisions of the North Carolina Consumer Protection Act.

(Am. Compl. ¶ 72.) At the outset, it is important to note that, apart from the summary allegations that Defendants made a "knowing misrepresentation," (Am. Compl. ¶ 72) the Amended Complaint contains no allegations regarding the substance of any alleged misrepresentation. The Amended Complaint is silent as to any statements made to the Plaintiff regarding the quality, origin, or characteristics of the drywall installed in the Plaintiffs and/or Class Members' homes. Likewise, although the Amended Complaint states that the Defendants failed to disclose the "source, affiliation, origin, characteristics, ingredients, standards and quality" of the drywall, there are no allegations that any act or omission of the Defendants influenced the plaintiffs' decisions regarding the drywall used in their homes in any way.

Indeed, the Plaintiffs fail to allege that, had they been possessed of the knowledge that the drywall used in their homes had been imported from China, their actions would have been altered in any way. Accordingly, pursuant to the holdings in Wilson, supra, and Pleasant Valley Promenade, supra, the Plaintiffs have failed to plead that the alleged acts of the Defendants proximately caused any injury to the Plaintiffs and/or Class Members, and Count VI should be dismissed for failure to state a claim upon which relief can be granted.

G.    COUNT VII "EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF SHOULD BE GRANTED

In Count VII of the Amended Complaint, the Plaintiffs are seeking injunctive relief in the nature of an Order requiring Venture and Porter-Blaine to 1) repair and/or replace the drywall; 2) "cease and desist" from representing that there is no danger or defect with the drywall; 3) institute a public awareness campaign about the defect and dangers associated with the drywall; and 4) "create, fund, and support a medical monitoring program[.]" (Am. Compl. ¶ 78.) Although Plaintiffs summarily allege that irreparable harm will be suffered by the Plaintiffs and Class Members without the injunctive relief and medical monitoring requested, the allegations make it clear that the monetary damages sought by the Plaintiffs would provide the Plaintiffs with adequate relief. Additionally, North Carolina courts do not recognize a cause of action for medical monitoring in anticipation of some future personal injury.

The law in North Carolina is clear with respect to whether equitable and injunctive relief will be granted where compensation in damages would be an adequate remedy. Specifically, our courts have held that "[t]he Court will not grant relief by injunction… when it appears that the plaintiff can have adequate remedy, and compensation in damages for the injury sustained." Frink v. Stewart, 94 N.C. 484, 1886 WL 932, 1 (1886). In Morganton Land & Improvement Co. v. Webb, 117 N.C. 478, 23 S.E. 458, 459 (1895), the North Carolina Supreme Court discussed

"[w]hat kind of trespass is remedied by compensation and what kind by an injunction to prevent it[.]" Id. There, the court stated,

> [t]he rule is that, if the threatened injury can be compensated in damages, then injunctive relief will not be given, but the parties will be left to work out their grievances in a court of law. If the prospective injury is such as cannot be atoned for in damages, or if, in case of an ordinary trespass, the trespasser is insolvent, and unable to respond in damages, then injunctive relief will be granted, in order to prevent injustice in any event.

Id. In other words, "[t]he peculiar jurisdictions of a court of equity will be exercised only when the legal remedy does not furnish an adequate remedy, and the nature of the subject-matter must be considered." Id. The court went on to define an "irreparable injury" as one "which cannot be repaired retrieved, put back again, or atoned for. The injury must be of a peculiar nature, so that compensation in money cannot atone for it." Id. Additionally, North Carolina courts have held that "it is not sufficient to allege [an irreparable] injury in general terms – it must be done by such specific allegations of facts, as will enable the Court to see that such injury will, or may, happen." Frink, 94 N.C. 484, 1886 WL at 1.

Here, the Plaintiffs have not alleged any specific facts which would entitle them to equitable or injunctive relief. In fact, the allegations specifically request monetary damages. In that regard, the Amended Complaint states, "Plaintiffs… demand injunctive and equitable relief and further, that defendants be ordered to: (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair[.]" (Am. Compl. ¶ 78.) Accordingly, the Complaint essentially alleges that monetary damages would provide an adequate remedy.

The Plaintiffs also request that this Court require the Defendants to institute a medical monitoring program. North Carolina courts have specifically addressed such a request and have

refused to recognize such a cause of action. In <u>Curl v. American Multimedia, Inc.</u>, 187 N.C.

App. 649, 655, 654 S.E.2d 76, 80-1 (2007), the plaintiffs asked the court to recognize a cause of

action for medical monitoring, among others. After noting its sympathy for the plaintiffs'

alleged risk of future serious illnesses caused by the plaintiffs' exposure to certain chemicals, the

court elected "not to create these new causes of action." <u>Id.</u> at 655, 654 S.E.2d at 81.

Noting that a cause of action for medical monitoring for potential future injuries does not

exist in North Carolina, the court stated that the "recognition of a new cause of action is a policy

decision which falls within the province of the legislature." <u>Id.</u> The court went on to discuss the

potential policy implications, stating,

> [s]ound policy reasons might be advanced either in favor of or opposition to the
> creation of this cause of action, and if such a claim were recognized, other policy
> questions would arise. The questions would include the following inquiries: What
> statistical chance of future illness or percent increase in that likelihood would
> trigger the cause of action? Would secondary causes of increased risk, such as
> cigarette smoking, preclude recovery? Would plaintiffs be required to
> demonstrate present physical effects, such as decreased immune function or
> increased cellular concentration of a toxin?... Would Defendants be liable for the
> costs of all "medically recommended" monitoring, or would Plaintiffs have to
> meet some other standard?

<u>Id.</u> Noting the complex nature of these policy questions, the court concluded that "balancing the

humanitarian, environmental, and economic factors implicated by these issues is a task within

the purview of the legislature and not the courts." <u>Id.</u> at 657, 654 S.E.2d at 81.

The Plaintiffs' Amended Complaint states that "Plaintiffs' and Class Members' exposure

may lead to serious health problems, diseases, and medical conditions that may be prevented by

timely medical diagnosis and treatment." (Am. Compl. ¶ 83.) Accordingly, the relief sought by

the Plaintiffs falls squarely within the holding of <u>Curl</u>, <u>supra</u>, and should be dismissed, as North

Carolina does not recognize a cause of action for the cost of future medical monitoring without

evidence of a present personal injury. To the extent the Plaintiffs allege entitlement to a medical

monitoring program for an alleged present personal injury, an award for future medical expenses, where appropriate testimony is rendered, would be an adequate and appropriate remedy at law. Accordingly, pursuant to the holding in <u>Frink</u>, <u>supra</u>, and <u>Morganton Land & Improvement Co.</u>, <u>supra</u>, Count VII of the Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed.

**WHEREFORE,** Venture and Porter-Blaine request that their Motions to Dismiss be granted and that the above referenced Counts be dismissed with prejudice.

## NOTICE REQUESTING HEARING

Please take notice that Porter-Blaine and Venture Supply request oral argument on the preceding Motions under Rule 12 of the Federal Rules of Civil Procedure.

## FIRST DEFENSE

Venture and Porter-Blaine set forth the following as their Answer to the First Amended Complaint without waiving the above Motions to Dismiss.

## JURISDICTION, PARTIES, AND VENUE

1.      The allegations of Paragraph 1 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity as it is unknown to these answering Defendants whether this Court has subject matter jurisdiction over Taishan Gypsum Co., Ltd f/k/a Shandong Tiahe Dongxin, Co., Ltd ("Taishan").

2.      The allegations of Paragraph 2 of the Plaintiffs' Complaint are admitted.

## PLAINTIFFS

3.      The allegations of Paragraph 3 of the Plaintiffs' Complaint are admitted, upon information and belief.

4.      The allegations of Paragraph 4 of the Plaintiffs' Complaint are admitted in part and denied in part.  These answering Defendants admit that drywall was installed by Porter-Blaine.  The remaining allegations of Paragraph 4 are denied.

## DEFENDANTS

5.      The allegations of Paragraph 5 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

6.      The allegations of Paragraph 6 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

7.      The allegations of Paragraph 7 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

8.      The allegations of Paragraph 8 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

9.      The allegations of Paragraph 9 of the Plaintiffs' Complaint are admitted, upon information and belief.

10.      The allegations of Paragraph 10 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

11.      The allegations of Paragraph 11 of the Plaintiffs' Complaint are admitted.

12.      The allegations of Paragraph 12 of the Plaintiffs' Complaint are admitted in part and denied in part.  These answering Defendants admit that Venture Supply imported and supplied drywall.  The remaining allegations of this Paragraph are denied.

13.      The allegations of Paragraph 13 of the Plaintiffs' Complaint are admitted.

14. The allegations of Paragraph 14 of the Plaintiffs' Complaint are admitted in part and denied in part. These answering Defendants admit that Porter-Blaine shares an address with Venture Supply and installs drywall. The remaining allegations of this Paragraph are denied.

15. The allegations of Paragraph 15 of the Plaintiffs' Complaint are denied.

## GENERAL ALLEGATIONS

16. The allegations of Paragraph 16 of the Plaintiffs' Complaint are admitted.

17. The allegations of Paragraph 17 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

18. The allegations of Paragraph 18 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

19. The allegations of Paragraph 19 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

20. The allegations of Paragraph 20 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

21. The allegations of Paragraph 21 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

22. The allegations of Paragraph 22 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

23. The allegations of Paragraph 23 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

24. The allegations of Paragraph 24 of the Plaintiffs' Complaint are denied for lack of information sufficient to form a belief as to their truth or falsity.

Case 2:09-cv-06804-EEF-JCW Document 591-1 Filed 12/19/09 Page 20 of 35

## CLASS ACTION ALLEGATIONS

25.     As to the allegations of Paragraph 25, it is denied that this suit should be certified as a class action.  Otherwise, Paragraph 25 sets forth no allegations requiring admission or denial.  To the extent that Paragraph 25 can be said to require an answer, the allegations of Paragraph 25 are denied.

26.     The allegations of Paragraph 26 of the Plaintiffs' Complaint contain legal conclusions to which no response is required.  To the extent that Paragraph 26 can be said to require an answer, the allegations of Paragraph 26 are denied.

27.     The allegations of Paragraph 27 of the Plaintiffs' Complaint are denied.

28.     The allegations of Paragraph 28 of the Plaintiffs' Complaint, inclusive of all sub-parts, are denied.

29.     The allegations of Paragraph 29 of the Plaintiffs' Complaint are denied.

30.     The allegations of Paragraph 30 of the Plaintiffs' Complaint are denied.

31.     These answering Defendants deny that this dispute should be certified as a class action.  Otherwise, Paragraph 31 sets forth no allegations requiring admission or denial.  To the extent that Paragraph 31 can be said to require an answer, the allegations of Paragraph 31 are denied for lack of information sufficient to form a belief as to their truth or falsity.

32.     These answering Defendants deny that this dispute should be certified as a class action.  Otherwise, Paragraph 32 sets forth no allegations requiring admission or denial.  To the extent that Paragraph 32 can be said to require an answer, the allegations of Paragraph 32 are denied for lack of information sufficient to form a belief as to their truth or falsity.

33.     The allegations of Paragraph 33 of the Plaintiffs' Complaint are denied.

34.     The allegations of Paragraph 34 of the Plaintiffs' Complaint are denied.

35.     The allegations of Paragraph 35 of the Plaintiffs' Complaint are denied.

36.     The allegations of Paragraph 36 of the Plaintiffs' Complaint are denied.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

37.     These answering Defendants set forth their responses to the preceding paragraphs as if fully set forth herein.

38.     The allegations of Paragraph 38 of the Plaintiffs' Complaint are denied.

39.     The allegations of Paragraph 39 of the Plaintiffs' Complaint are denied.

40.     The allegations of Paragraph 40 of the Plaintiffs' Complaint are denied.

41.     The allegations of Paragraph 41 of the Plaintiffs' Complaint are denied.

42.     The allegations of Paragraph 42 of the Plaintiffs' Complaint are denied.

43.     The allegations of Paragraph 43 of the Plaintiffs' Complaint are denied.

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

44.     These answering Defendants set forth their responses to the preceding paragraphs as if fully set forth herein.

45.     The allegations of Paragraph 45 of the Plaintiffs' Complaint are denied.

46.     The allegations of Paragraph 46 of the Plaintiffs' Complaint are denied.

47.     The allegations of Paragraph 47 of the Plaintiffs' Complaint are denied.

48.     The allegations of Paragraph 48 of the Plaintiffs' Complaint are denied.

49.     The allegations of Paragraph 49 of the Plaintiffs' Complaint are denied.

## COUNT III
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
#### (All Defendants)

50.     These answering Defendants set forth their responses to the preceding paragraphs as if fully set forth herein.

51.     The allegations of Paragraph 51 of the Plaintiffs' Complaint are denied.

52.     The allegations of Paragraph 52 of the Plaintiffs' Complaint are denied.

53.     The allegations of Paragraph 53 of the Plaintiffs' Complaint are denied.

54.     The allegations of Paragraph 54 of the Plaintiffs' Complaint are denied.

55.     The allegations of Paragraph 55 of the Plaintiffs' Complaint are denied.

56.     The allegations of Paragraph 56 of the Plaintiffs' Complaint are denied.

57.     The allegations of Paragraph 57 of the Plaintiffs' Complaint are denied.

## COUNT IV
### PRIVATE NUISANCE
#### (Against All Defendants)

58.     These answering Defendants set forth their responses to the preceding paragraphs as if fully set forth herein.

59.     The allegations of Paragraph 59 of the Plaintiffs' Complaint are denied.

60.     The allegations of Paragraph 60 of the Plaintiffs' Complaint are denied.

61.     The allegations of Paragraph 61 of the Plaintiffs' Complaint are denied.

62.     The allegations of Paragraph 62 of the Plaintiffs' Complaint are denied.

63.     The allegations of Paragraph 63 of the Plaintiffs' Complaint are denied.

64.     The allegations of Paragraph 64 of the Plaintiffs' Complaint are denied.

## COUNT V
## UNJUST ENRICHMENT
### (All Defendants)

65.     These answering Defendants set forth their responses to the preceding paragraphs as if fully set forth herein.

66.     The allegations of Paragraph 66 of the Plaintiffs' Complaint are denied.

67.     The allegations of Paragraph 67 of the Plaintiffs' Complaint are denied.

68.     The allegations of Paragraph 68 of the Plaintiffs' Complaint are denied.

## COUNT VI
## VIOLATION OF THE NORTH CAROLINA CONSUMER PROTECTION ACT
### (All Defendants)

69.     These answering Defendants set forth their responses to the preceding paragraphs as if fully set forth herein.

70.     Paragraph 70 sets forth no allegations requiring admission or denial.  To the extent that Paragraph 70 can be said to require an answer, the allegations of Paragraph 70 are denied.

71.     The allegations of Paragraph 71 of the Plaintiffs' Complaint are denied.

72.     The allegations of Paragraph 72 of the Plaintiffs' Complaint are denied.

73.     The allegations of Paragraph 73 of the Plaintiffs' Complaint are denied.

74.     The allegations of Paragraph 74 of the Plaintiffs' Complaint are denied.

## COUNT VII
## EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING
### (All Defendants)

75.     These answering Defendants set forth their responses to the preceding paragraphs as if fully set forth herein.

76.     The allegations of Paragraph 76 of the Plaintiffs' Complaint are denied.

77.      The allegations of Paragraph 75 of the Plaintiffs' Complaint are denied.

78.      Paragraph 78 sets forth no allegations requiring admission or denial.   To the extent that Paragraph 78 can be said to require an answer, the allegations of Paragraph 78 are denied.

79.      The allegations of Paragraph 79 of the Plaintiffs' Complaint are denied.

80.      The allegations of Paragraph 80 of the Plaintiffs' Complaint are denied.

81.      The allegations of Paragraph 81 of the Plaintiffs' Complaint are denied.

82.      The allegations of Paragraph 82 of the Plaintiffs' Complaint are denied.

83.      The allegations of Paragraph 83 of the Plaintiffs' Complaint are denied.

84.      The allegations of Paragraph 84 of the Plaintiffs' Complaint are denied.

85.      The allegations of Paragraph 85 of the Plaintiffs' Complaint are denied.

86.      The allegations of Paragraph 86 of the Plaintiffs' Complaint are denied.

87.      The allegations of Paragraph 87 of the Plaintiffs' Complaint are denied.

EACH AND EVERY ALLEGATION CONTAINED IN THE COMPLAINT NOT SPECIFICALLY ADMITTED IS HEREBY DENIED.

## **SECOND DEFENSE**

Defendants hereby plead the running of any applicable statute of limitation and/or statue of repose as a complete bar to Plaintiffs' claims.

## **THIRD DEFENSE**

Plaintiffs have failed to adequately maintain the property and have failed to mitigate damages by undertaking proper preventative or curative measures with respect to any damages allegedly suffered by Plaintiffs.  Plaintiffs are barred from recovering of these Defendants any

damages which could have reasonably been mitigated and the same is pled in bar of Plaintiffs' claims against Defendants.

### FORTH DEFENSE

Defendants hereby plead the economic loss doctrine as a bar to Plaintiffs' recovery.

### FIFTH DEFENSE

Should Defendants be found to be guilty of any negligence, which is specifically denied, then Defendants plead Plaintiffs' own contributory negligence as a complete bar to Plaintiffs' recovery. More specifically, Plaintiffs failed to properly inspect the premises in question, failed to exercise reasonable care after discovery of the alleged defective conditions, and acted or failed to act in such other ways as shall be determined at trial or through the discovery process.

### SIXTH DEFENSE

If by any rule or interpretation of law, as alleged by Plaintiffs, these Defendants were guilty of any negligence, which is again expressly denied, then this alleged but denied negligence in no way involved or caused any damage or injury to Plaintiffs, in that the negligence of known or unknown third parties interrupted, broke, displaced or superseded the consequences of the alleged but denied negligence of these Defendants. Such negligence on the part of said known or unknown third parties contributed to, and was a proximate cause of, Plaintiffs' alleged damages, and the doctrine of insulating negligence is hereby pleaded in bar of any right which Plaintiffs might otherwise have to recover herein.

### SEVENTH DEFENSE

If by any rule or interpretation of law, as alleged by Plaintiffs, these Defendants were guilty of any negligence, which is again expressly denied, then this alleged but denied negligence in no way involved or caused any damage or injury to Plaintiffs, in that the alleged but denied

negligence of Defendants was passive and negative in character, whereas the negligence of known or unknown third parties was the active, positive and sole producing cause of the injury or damage sustained by Plaintiffs, and such actions by those known or unknown third parties is hereby pleaded in bar of any right which Plaintiffs might otherwise have to recover herein.

## EIGHTH DEFENSE

All activities undertaken by these Defendants were completed in conformity with the industry standards and applicable building codes, and in conformance with the applicable standard of care, all of which is pled in bar of any recovery by Plaintiffs against Defendants.

## NINTH DEFENSE

Defendants plead the terms, provisions, and conditions of any and all contracts entered into between Defendants and any other parties including but not limited to any warranty provisions as a complete bar to the claims of Plaintiffs.

## TENTH DEFENSE

Defendants plead the doctrines of discharge by performance or substantial performance as a defense in this action.

## ELEVENTH DEFENSE

Plaintiffs' Complaint alleges a purely economic loss, and, as such, Plaintiff may only seek recovery of these answering Defendants as allowed by the provisions of the North Carolina Uniform Commercial Code.

## TWELFTH DEFENSE

These answering Defendants show and allege that there was no contractual relationship between Plaintiffs and these answering Defendants; and, therefore, Plaintiffs' claims must be dismissed for lack of privity of contract.

## THIRTEENTH DEFENSE

Plaintiffs are barred from recovering of these answering Defendants, pursuant to the Products Liability Act, N.C. GEN. STAT. §§ 99B-1 through 99B-11, *Products Liability*.

## FOURTEENTH DEFENSE

Defendants hereby give notice that they reserve the right to amend this answer to include any additional affirmative defenses as may become apparent or available during the course of discovery in the litigation of this action.

## CROSS-CLAIMS

Venture and Porter-Blaine, pursuant to Rule 13(g) of the Federal Rules of Civil Procedure, set forth the following Crossclaims against Taishan Gypsum Co., Ltd f/k/a Shandong Tiahe Dongxin, Co., Ltd. ("Taishan"), to the extent this Court has personal jurisdiction over Taishan, and Tobin Trading, Inc. ("Tobin").

## VENTURE AND PORTER-BLAINE'S CROSS-CLAIM AGAINST TAISHAN AND TOBIN TRADING, INC. FOR NEGLIGENCE

1. Defendants Taishan and Tobin owed a duty of care to Venture and Porter-Blaine, such duties being specifically set forth in the Plaintiffs' Amended Complaint and incorporated herein by reference.

2. If the allegations of the Plaintiffs' Amended Complaint are true, Defendants Taishan and Tobin breached the aforementioned duties and were negligent as specifically described in the Plaintiffs' Amended Complaint and incorporated herein by reference.

3. If the allegations of the Plaintiffs' Amended Complaint are true, Defendants Taishan and Tobin breached the aforementioned duties and were negligent by failing to warn Venture and Porter-Blaine about the defective nature of the drywall. If the allegations of the

Plaintiffs' Amended Complaint are true, Defendants Taishan and Tobin, through the exercise of reasonable care, knew or should have known the nature of the defective drywall.

4.      If the allegations of the Plaintiffs' Amended Complaint are true, it was reasonably foreseeable that the aforementioned acts of negligence would cause damage to Venture and Porter-Blaine.

5.      If the allegations of the Plaintiffs' Amended Complaint are true, as a direct and proximate consequence of Defendant Taishan and Tobin's negligence, Venture and Porter-Blaine have suffered and incurred damages in excess of $10,000.00.

## VENTURE AND PORTER-BLAINE'S CROSS-CLAIM AGAINST TAISHAN AND TOBIN TRADING, INC. FOR BREACH OF CONTRACT

6.      The allegations set forth in Paragraphs 1 through 5 of the Cross-Claims are hereby re-alleged, reasserted and incorporated by reference herein as fully set forth.

7.      Venture and Porter-Blaine entered into contracts with Defendants Taishan and Tobin for the brokerage, purchase, and delivery of drywall.

8.      If the allegations of the Plaintiffs' Amended Complaint are true, Defendants Taishan and Tobin, and each of them, breached the aforementioned contracts by manufacturing, exporting, brokering, importing, distributing, delivering, supplying, and selling defective drywall to Venture and Porter-Blaine.

9.      If the allegations of the Plaintiffs' Amended Complaint are true, Defendants Taishan and Tobin's provision of defective drywall to Venture and Porter-Blaine constitute material breaches of the contracts.

10.     If the allegations of the Plaintiffs' Amended Complaint are true, as a direct and proximate consequence of Defendants Taishan's and Tobin's material breaches of the contracts, Venture and Porter-Blaine have suffered and incurred damages in excess of $10,000.00.

## VENTURE AND PORTER-BLAINE'S CROSS-CLAIM AGAINST TAISHAN AND TOBIN TRADING, INC. FOR BREACH OF WARRANTY OF MERCHANTABILITY

11.     The allegations set forth in Paragraphs 1 through 10 of the Cross-Claims are hereby re-alleged, reasserted and incorporated by reference herein as fully set forth.

12.     Venture and Porter-Blaine purchased drywall from Taishan and Tobin, and, as such, Venture and Porter-Blaine were in privity with Taishan and Tobin.

13.     Upon information and belief, Taishan and Tobin are merchants with respect to drywall.

14.     If the allegations of Plaintiffs' Amended Complaint are true, the drywall was not merchantable, in that it was not fit for the ordinary purpose for which drywall is used.

15.     If the allegations of Plaintiffs' Amended Complaint are true, Taishan and Tobin failed to warn Venture and Porter-Blaine about the defects with the drywall.

16.     If the allegations of Plaintiffs' Amended Compliant are true, Taishan and Tobin breached the implied warranty of merchantability because the drywall was not merchantable and because of Taishan and Tobin's failure to warn Venture and Porter-Blaine about the drywall defects.

17.     If the allegations of the Plaintiffs' Amended Complaint are true, as a direct and proximate cause of Taishan and Tobin's breach of the implied warranty of merchantability, Venture and Porter-Blaine suffered damages in an amount in excess of $10,000.00.

## VENTURE AND PORTER-BLAINE'S CROSS-CLAIM AGAINST TAISHAN AND TOBIN TRADING, INC. FOR CONTRIBUTION AND INDEMNIFICATION

18.     The allegations set forth in Paragraphs 1 through 17 of the Cross-Claims are hereby re-alleged, reasserted and incorporated by reference herein as fully set forth.

19.     Plaintiffs have filed an action against defendants Venture, Porter-Blaine, Tobin and Taishan, among others, claiming in their Amended Complaint that they have suffered

damages based on acts or omissions of these Defendants and others relating to drywall allegedly incorporated in their homes.  A copy of the Plaintiffs' Amended Complaint is attached hereto as Exhibit A and is incorporated herein by reference.

20.    Plaintiffs claim that the alleged acts or omissions committed by Defendants Venture and Porter-Blaine and others lead to the alleged improper and/or inadequate sale or installation of drywall which is allegedly "off gassing."

21.    Defendants Venture and Porter-Blaine have generally denied any liability to the Plaintiffs and have expressly denied any improper conduct in relation to the drywall.

22.    Taishan is in the business of manufacturing and marketing drywall.  Drywall was manufactured, marketed and sold by Taishan for use in residential construction.

23.    Based upon the claims made in Plaintiffs' Amended Complaint, Defendants Venture and Porter-Blaine are informed and therefore allege that Taishan manufactured and sold some of the drywall installed in Plaintiffs' homes.

24.    Defendant Venture was in privity of contract with Taishan with respect to the drywall and Porter-Blaine was a foreseeable user of such drywall.

25.    Tobin acted as an intermediary in the sale of the drywall from Taishan.

26.    Tobin expressly and impliedly warranted that it would inspect the drywall for quality, fitness, and compliance with the contract documents, and, irrespective of the warranties and contractual obligations, had the duty to do so.

27.    If any negligence is found against Defendants Venture and/or Porter-Blaine, which has been and is once again denied, then Taishan and Tobin were also negligent with respect to the Plaintiffs damages, such negligence of Taishan and Tobin being more particularly described in the Plaintiff's Amended Complaint and incorporated herein by reference.

28.     To the extent that the drywall was defective and negligently designed, manufactured, imported, marketed, or otherwise unfit for use in the Plaintiffs' homes, and to the extent Plaintiffs are entitled to recover anything from Defendants Venture and/or Potter-Blaine, which Defendants expressly deny, Plaintiffs' damages were caused by the breaches, failures, errors, and omissions of Taishan.

29.     To the extent that the drywall Tobin imported, distributed, delivered, supplied, inspected, marketed, and/or sold was defective or otherwise unfit for use in the Plaintiffs' homes, and to the extent Plaintiffs are entitled to recover anything from Defendants Venture and/or Porter-Blaine, which Defendants expressly deny, Plaintiffs' damages were caused by the breaches, failures, errors, and omissions of Tobin.

30.     If Defendants Venture and/or Porter-Blaine were negligent, which has been and is once again denied, their negligence was merely passive and secondary and arose out of the active negligence of Taishan and Tobin.  In addition, if Venture and/or Porter-Blaine are liable to Plaintiffs in any other respect, which has been and is once again denied, then such liability arose solely from the negligence, breaches, failures, errors, and omissions of Taishan and Tobin. Taishan and Tobin should indemnify Venture and Porter-Blaine for any liability that may be adjudged against it in favor of Plaintiffs.

31.     In the alternative, if the Court and the Jury find that Venture and/or Porter-Blaine are liable in any fashion to Plaintiffs, which has been and is once again denied, then the aforesaid negligence of Taishan and Tobin was a direct and proximate cause of damage to Plaintiffs, and such negligence by Taishan and Tobin joined and concurred with the alleged, but denied, negligence of Venture and Porter-Blaine in producing the injuries and damages allegedly suffered by Plaintiffs, and, if Venture and/or Porter-Blaine is liable to Plaintiffs, then Venture

and Porter-Blaine are entitled to contribution from Taishan and Tobin as a joint tortfeasor, pursuant to and to the extent provided by Chapter 1B of the North Carolina General Statutes.

32.    Venture and Porter-Blaine, therefore, make this claim for indemnity and/or contribution against Taishan and Tobin for any sums awarded to the Plaintiffs, and for their attorney's fees and costs incurred herein.

**WHEREFORE,** Defendants The Porter-Blaine Corporation and Venture Supply, Inc., having fully responded to the allegations contained in the Plaintiffs' Amended Complaint and having fully set forth their Cross-Claims, pray the Court:

1.    That the Plaintiffs have and recover nothing of these answering Defendants in this action, and that this action be dismissed;

2.    That if the Plaintiffs are awarded any amount from these answering Defendants, then that Defendants Taishan and Tobin be required to indemnify these answering Defendants and pay to these answering Defendants any such amount, plus costs and attorney fees, OR that Defendants Taishan and Tobin be required to pay contribution to these answering Defendants;

3.    That all issues of fact be tried before a jury;

4.    That the costs of this action be taxed against the Plaintiffs; and

5.    For such other and further relief as the Court may deem just and proper.

This the 20th day of July, 2009.

HEDRICK, GARDNER, KINCHELOE &
GAROFALO, LLC


By:   /s/ Thomas M. Buckley
      Thomas M. Buckley
      N.C. Bar No. 26706
      Attorneys for Defendants Venture Supply, Inc. and
      The Porter-Blaine Corporation
      4011 Westchase Blvd., Suite 300
      Raleigh, NC  27607
      Telephone:   (919) 719-3721
      Facsimile:   (919) 832-9425
      Email:       TBuckley@hedrickgardner.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20th, 2009, I electronically filed the foregoing Notice of Filing with the Clerk of Court using the CM/ECF system which will send notification of filing to the following:

J. Michael Malone
Hendren & Malone, PLLC
4600 Marriott Dr., Suite 150
Raleigh, NC  27612
*Counsel for Plaintiffs*

Robert Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH  44052
*Co-Counsel for Plaintiffs*

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
Hausfeld, LLP
1700 K Street, N.W., Suite 650
Washington, DC  20006
*Co-Counsel for Plaintiffs*

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106
*Co-Counsel for Plaintiffs*

Richard J. Serpe
Law Offices of Richard J. Serpe, P.C.
580 E. Main Street, Suite 310
Norfolk, VA  23510
*Co-Counsel for Plaintiffs*

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, GA 30022
*Co-Counsel for Plaintiffs*

This the 20th day of JULY, 2009.


/s/ Thomas M. Buckley
**THOMAS M. BUCKLEY**