**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| ================================ | x | =========================== |
|---|---|---|
| | x | |
| IN RE: CHINESE-MANUFACTURED | x | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | x | |
| LITIGATION | x | SECTION: L |
| | x | |
| THIS DOCUMENT APPLIES TO ALL | x | JUDGE FALLON |
| CASES | x | |
| | | MAG. JUDGE WILKINSON |
| ================================ | x | =========================== |

**RE-NOTICE OF ORAL AND VIDEOTAPED DEPOSITION**
**PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO:   **Mazer Super Discount Store**
       Through its attorneys of record
       Michael Jackson, Esq.
       Larry S. Logsdon, Esq.
       *WALLACE, JORDAN, RATLIFF & BRANDT, LLC*
       800 Shades Creek Pkwy.
       Suite 400
       Birmingham, AL  35209
       **AND/OR**
       Chris Bottcher, Esq.
       Mary Blanche Hankey, Esq.
       C. Lee Reeves, Esq.
       *SIROTE & PERMUTT, PC*
       2311 Highland Ave. South
       Birmingham, AL  35205

**PLEASE TAKE NOTICE** that pursuant to Rule 26 and 30(b)(6) of the Federal

Rules of Civil Procedure, plaintiffs, by and through their undersigned attorneys, the

Plaintiffs Steering Committee in the MDL, will take the deposition of **Mazer Super**

1

**Discount Store** on January 13, 2010, at 9:00 o'clock a.m. at the offices of Christopher

Bottcher, Sirote & Permutt, P.C., 2311 Highland Avenue South, Birmingham, AL

35205, PH: (205) 930-5279 or at another location mutually agreed upon by the parties.

Pursuant to Fed. R. Civ. P. 30(b)(6), **Mazer Super Discount Store** shall designate and

produce a designated representative or representatives, as may be required, to testify on

behalf of **Mazer Super Discount Store** concerning the topics identified in Schedule A

attached hereto.

| | |
|---|---|
| Primary Examiner: | A member of the PSC or its designee |
| Videotaped Deposition: | Yes |
| Call-In Number: | **888-337-8218**<br>**Participant Code: 548696** |

The deposition will be taken before a person authorized by law to administer

oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding

Sundays and court-recognized holidays, until the examination is completed.

Respectfully submitted,

/s/ Leonard A. Davis
**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***HERMAN, HERMAN, KATZ & COTLAR, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024

**Plaintiffs' Liaison Counsel**

2

W:\! DRYWALL\27687 MDL\Discovery\30(b)(6) Re-Notice - Mazer Super Discount Store 2009-12-11.doc

| | |
|---|---|
| Dawn M. Barrios<br>701 Poydras Street<br>Suite 3650<br>New Orleans, LA  70139<br>PH:  (504) 524-3300<br>Fax:  (504) 524-3313 | Daniel E. Becnel, Jr.<br>425 W. Airline Highway<br>Suite B<br>LaPlace, LA  70068<br>PH:  (985) 536-1186<br>Fax:  (985) 536-6445 |
| Victor M. Diaz<br>25 Flagler Street<br>8th Floor<br>Miami, FL  33130<br>PH:  (305) 358-2800<br>Fax:  (305) 358-2382 | Ervin Amanda Gonzalez<br>255 Aragon Avenue<br>Cora Gables, FL  33134<br>PH:  (305) 476-7400<br>Fax:  305) 476-7444 |
| Ben Gordon<br>316 S. Baylen Street<br>Suite 600<br>Pensacola, FL  32502<br>PH:  (850) 435-7090<br>Fax:  (850) 436-6091 | Hugh P. Lambert<br>701 Magazine Street<br>New Orleans, LA  70130<br>PH:  (504) 581-1750<br>Fax:  (504) 529-2931 |
| Arnold Levin<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106<br>PH:  (215) 592-1500<br>Fax:  (215) 592-4663 | Gerald E. Meunier<br>2800 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>Fax:  (504) 528-9973 |
| Jerrold Seth Parker<br>3301 Bonita Beach Road<br>Bonita Springs, FL  34134<br>PH:  (239) 390-1000<br>Fax:  (239) 390-0055 | James Robert  Reeves<br>160 Main Street<br>Biloxi, MS  39530<br>PH:  (228) 374-5151<br>Fax:  (228) 374-6630 |
| Christopher Seeger<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>Fax:  (212) 584-0799 | Bruce William Steckler<br>3102 Oak Lawn Ave.<br>Suite 1100<br>Dallas, TX  75219<br>PH:  (214) 523-6674<br>Fax:  (214) 520-1181 |
| Scott Weinstein<br>12800 University Drive<br>Suite 600<br>Ft. Myers, FL  33907<br>PH:  (239) 433-6880<br>Fax:  (239) 433-6836 | |

**PLAINTIFFS' STEERING COMMITTEE**

3

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Richard S. Lewis<br>HAUSFELD LLP<br>1700 K Street, N.WSuite  650<br>Washington, DC 20006<br>Phone: (202) 540-7200<br>Fax:  (202) 540-7201<br>rlewis@hausfeldllp.com<br><br>Daniel K. Bryson<br>Lewis & Roberts<br>3700 Glenwood Avenue, Suite 410<br>Raleigh, NC 27612<br>Phone: (919) 981-0191<br>Fax: (919) 981-0431<br>dkb@lewis-roberts.com | Jeremy W. Alters<br>Alters, Boldt, Brown, Rash & Culmo, P.A.<br>4141 N.E. 2nd Avenue<br>Suite 201<br>Miami, FL 33137<br>Phone: (305) 571-8550<br>Fax: (305) 571-8559<br>jeremy@abbrclaw.com<br><br>Richard J. Serpe, Esquire<br>Law Offices of Richard J. Serpe<br>Crown Center, Ste. 310<br>580 East Main Street<br>Norfolk, VA 23510-2322<br>rserpe@serpefirm.com |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Re-Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 11th day of December, 2009.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com

**SCHEDULE A**

**DEFINITIONS & INSTRUCTIONS**

1.       Whenever used herein, the following terms shall have the following meanings:

        (a)      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

        (b)      "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

        (c)      "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

        (d)      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.   Documents shall include all drafts, including drafts with "track changes,"and shall be deemed to be separate documents within the meaning of this term.

        (e)      "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments,

5

annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  ESI includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names"), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(f)     "Electronic media" means any magnetic or other storage media device used to record electronically stored information.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such

as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

      (g)     "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

      (h)     "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

      (i)     "Including" or "includes" means including, without limitation.

      (j)     "Defendant," "you," or "your" means the individual party to whom this request is directed and being responded to, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

      (k)     "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in China.

(l) "Test" or "Tests" means all tests, inspections, checks, studies, evaluations, measurements, and analyses of drywall and the materials and compounds which make up the same, into or of the composition, chemical or physical properties, performance, life expectancy, and formulation thereof.

(m) "Person" means any natural person or any business, legal, or governmental entity or association.

2. The following rules of construction apply to all discovery requests:

(a) The terms "all" and "each" shall be construed as all and each;

(b) The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c) The use of the singular form of any word includes the plural and vice versa; and

(d) Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3. Unless otherwise indicated, the Relevant Time Period for the information sought is between January 1, 2001 and the current date.

4. In responding to this request, if any document is withheld on the basis of a claim of privilege, work product, or any other ground, it is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data. Defendant shall produce a privilege log within 7 days after the production of documents for which privilege is asserted to apply.  For each document for which Defendant asserts

8

a privilege applies, it must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (*e.g.*, letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2).  Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, Defendant shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5.      In responding to this request, for each document furnished, documents are to be produced in full and in their unexpurgated form.  Redacted documents shall not constitute compliance with this request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

6.      In responding to this request, for each document furnished, documents shall be produced in their original language (e.g., Mandarin, German) and shall include

any translations of such documents, whether such translations were performed prior to or subsequent to the date of these requests.

7.     All hard copy documents and electronically stored information (ESI) produced in response to this request shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.  With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic format.

8.     In responding to this request, for each document furnished, each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document (e.g., for ABC Defendant, Inc. "ABC001"; "ABC002").  No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter), and the Bates Number identified above. The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

## DEPOSITION TOPICS

Pursuant to Rule 30(b)(6), Defendant shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

**A.    Organization and Record-keeping**

1.    For each year in which Defendant, including any subsidiary or affiliate of Defendant, designed, developed, manufactured, promoted, exported, imported, brokered, distributed, shipped, stored, sold, purchased, and/or installed Chinese drywall, the corporate organization and structure for any individuals, groups, departments, teams, and divisions with any responsibility or oversight of any aspect of the design, development, manufacture, promotion, export, import, brokerage, distribution, shipment, storage, sale, purchase, and/or installation of said Chinese drywall.

2.    Any entities with which Defendant is affiliated or has a financial interest in that was or is involved in the design, development, manufacture, promotion, export, import, brokerage, distribution, shipment, storage, sale, purchase, and/or installation of Chinese drywall during the Relevant Time Period.

3.    Any filings made by or on behalf of Defendant to any state, federal, domestic, and/or foreign governmental agencies, departments, divisions, bodies, entities, or representatives during the Relevant Time Period.

4.    Any record filing, storage, retention, and/or destruction procedures and/or systems that contain or capture potentially relevant data, hard-copy documents, and electronically stored information (ESI), including any standard operating procedures

(SOPs), retention, destruction, or preservation policies, guidance, instructions, and/or manuals relating thereto.

5.      Any computer programs, software, or databases used to create, manipulate, duplicate, maintain, store, and/or destroy data, documents, and ESI responsive to these requests.

6.      Steps taken by you or on your behalf to preserve data, documents, and ESI that are or may be potentially discoverable in this action.

**B.      Transactions Involving Chinese Drywall**

7.      If you are a manufacturer of Chinese drywall:

a.      the identities of all entities to whom you exported, transferred, shipped, sold, and/or distributed Chinese Drywall during the Relevant Time Period;

b.      the types of drywall product manufactured by you during the Relevant Time Period;

c.      any markings on the Chinese drywall product manufactured by you (e.g., lot number, batch number, serial number, color markings, labeling, UPC codes, etc.) during the Relevant Time Period;

d.      the methods, locations, and standards employed in the storage of any and all Chinese drywall manufactured by you prior to your export, transfer, shipment, sale, and/or distribution of Chinese drywall during the Relevant Time Period; and

e.      any systems and/or procedures used by you for product identification, inventory control, and/or the tracking of sales or shipments of Chinese drywall during the Relevant Time Period.

8.      If you are an exporter, importer, or broker of Chinese drywall:

a.      the nature of any and all of your transactions involving Chinese drywall during the Relevant Time Period;

b.      the identities of any entities involved in any way with your transactions in Chinese drywall during the Relevant Time Period;

c.      the types of drywall product involved in your transactions in Chinese drywall during the Relevant Time Period;

d.      any markings on the Chinese drywall product that you exported, imported, or brokered (e.g., lot number, batch number, serial number, color markings, labeling, UPC codes, etc.) during the Relevant Time Period;

e.      the methods, locations, and standards employed in the storage of any and all Chinese drywall exported, imported, or brokered by you during the Relevant Time Period; and

f.      any systems and/or procedures used by you for product identification, inventory control, and/or the tracking of purchases, sales, brokerage, transfers, and/or shipments of Chinese drywall during the Relevant Time Period.

9.      If you are a distributor or retailer of Chinese drywall:

a.      the identities of all entities from whom you imported, purchased, received, accepted, and/or took title of Chinese drywall during the Relevant Time Period;

b.      the identities of all entities to whom you sold, transferred, and/or distributed Chinese drywall during the Relevant Time Period;

c.      the types of drywall product involved in your transactions in Chinese drywall during the Relevant Time Period;

d.      any markings on the Chinese drywall product that you imported, purchased, received, accepted, took title to, sold, transferred, and/or distributed (e.g., lot number, batch number, serial number, color markings, labeling, UPC codes, etc.) during the Relevant Time Period;

e.      the methods, locations, and standards employed in the storage of any and all Chinese drywall that you imported, purchased, received, accepted, took title to, sold, transferred, and/or distributed during the Relevant Time Period; and

f.      any systems and/or procedures used by you for product identification, inventory control, and/or the tracking of purchases, receipts,

13

sales, transfers, shipments, and/or distributions of Chinese drywall during the Relevant Time Period.

10.     If you are a builder that purchased or used Chinese drywall:

a.      the identities of all entities from whom you imported, purchased, received, accepted, and/or took title of Chinese drywall during the Relevant Time Period;

b.      the communities and locations of all residences (whether single-family or multiple-family dwellings) and commercial properties for which you provided, installed, placed, or used Chinese drywall during the Relevant Time Period;

c.      the identities of all contractors and/or installers to whom you sold, transferred, provided, or distributed Chinese drywall during the Relevant Time Period;

d.      the types of drywall product involved in your transactions in Chinese drywall during the Relevant Time Period;

e.      any markings on the Chinese drywall product that you imported, purchased, received, accepted, took title to, sold, transferred, distributed, used, placed, or provided (e.g., lot number, batch number, serial number, color markings, labeling, UPC codes, etc.) during the Relevant Time Period;

f.      the methods, locations, and standards employed in the storage of any and all Chinese drywall that you imported, purchased, received, accepted, took title to, sold, transferred, distributed, used, placed, or provided during the Relevant Time Period; and

g.      any systems and/or procedures used by you for product identification, inventory control, and/or the tracking of purchases, receipts, sales, transfers, shipments, placements, and/or distributions of Chinese drywall during the Relevant Time Period.

11.     If you are a contractor and/or installer that purchased and/or used Chinese

drywall:

a.      the identities of all entities from whom you purchased, received, accepted, and/or took title of Chinese drywall during the Relevant Time

Period;

b.      the communities and locations of all residences (whether single-family or multiple-family dwellings) and commercial properties for which you provided, installed, placed, or used Chinese drywall during the Relevant Time Period;

c.      the types of drywall product involved in your transactions in Chinese drywall during the Relevant Time Period;

d.      any markings on the Chinese drywall product that you purchased, received, accepted, took title to, used, placed, or provided (e.g., lot number, batch number, serial number, color markings, labeling, UPC codes, etc.) during the Relevant Time Period;

e.      the methods, locations, and standards employed in the storage of any and all Chinese drywall that you purchased, received, accepted, took title to, used, placed, or provided during the Relevant Time Period; and
f.      any systems and/or procedures used by you for product identification, inventory control, and/or the tracking of purchases, receipts, shipments, placements, and/or use of Chinese drywall during the Relevant Time Period.

12.     Financial data relating to your transactions involving Chinese Drywall during the Relevant Time Period, including:

a.  Sales data;
b.  Shipping costs;
c.  Storage costs;
d.  Purchase costs; and
e.  Refunds paid or received;

13.     Any product labeling, information, instructions, specifications, and/or warranties that you provided and/or received with any receipts or shipments of Chinese drywall during the Relevant Time Period.

14.     Any inspections, analyses, and/or compliance testing of Chinese drywall conducted by you or on your behalf in connection with your manufacture of Chinese drywall or transactions involving Chinese drywall during the Relevant Time Period.

15.     Any standards consulted, considered, or relied upon to determine the quality and characteristics of the drywall products subject to such inspections, analyses, and compliance testing.

16.     Any communications with trade associations, professional organizations, manufacturing organizations concerning the manufacture, storage, care, or use of Chinese Drywall.

**C.    Inspection, Testing, and Remediation of Any Properties Containing Chinese Drywall**

17.     For any Chinese drywall that you manufactured, exported, imported, brokered, shipped, transferred, purchased, sold, distributed, used, provided, and/or placed during the Relevant Time Period:

   a.     The locations of any communities, residences (whether single-family or multiple-family dwellings), and/or commercial properties where Chinese drywall is located;

   b.     The existence and nature of any contracts or agreements with the property owners, managers, condo/co-op boards, and/or homeowner associations relating to the Chinese drywall;

   c.     Notices to or from any property owners, managers, condo/co-op boards, and/or homeowner associations relating to Chinese drywall;

d.     Communications with any domestic or foreign governmental bodies, entities, agencies, departments, divisions, or representatives relating to Chinese drywall;

e.     Insurance that may be applicable.

18.     For any inspections, sampling, analyses, testing, and/or remediations conducted by you or on your behalf in any communities, residences (whether single-family or multiple-family dwellings), and/or commercial properties during the Relevant Time Period:

a.     The existence and nature of any contracts or agreements with any third-party vendors and/or consultants conducting such inspections, sampling, analyses, testing, and/or remediations; and

b.     Any protocols, instructions, guidances, manuals, plans, and/or standard operating procedures (SOPs) for such inspections, sampling, analyses, testing, and/or remediations;

c.     Any standards consulted, considered, or relied upon to determine the quality and characteristics of the drywall products subject to such inspections, sampling, analyses, testing, and/or remediations.

19.     Any communications and/or reports of adverse health effects associated with exposure to Chinese drywall.

D.    **Insurance**

20.    Any policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and excess insurance policies relating to claims, and including the following information for each policy;

        a.    Insurer;
        b.    Dates policy in effect;
        c.    Policy Number;
        d.    Type of Policy;
        e.    Insurance Agent;
        f.    Policy Coverage Limits; and
        g.    Claims and Coverage issues.

21.    Any claims you have made on any insurance policies relating to your sale, installation, transfer, distribution or shipment of products identified herein, and including the following information for each claim:

        a.    Date;
        b.    Insurer;
        c.    Description of claim; and
        d.    Insurer's response to claim.
        e.    If in litigation:
            i.    Caption of Case; and
            ii.    Name and address of attorneys involved.

## DOCUMENT REQUESTS

Pursuant to Rules 30(b)(2) and 34 of the Federal Rules of Civil Procedure, please produce the following:

1.    To the extent not already produced in response to Plaintiff's August 31, 2009, First Request for Documents and Things, please produce any and all documents and communications referencing or relating to the Deposition Topics described herein.

18

      2.      All documents which you reviewed, referred to, considered, and/or relied upon in responding to the Deposition Topics described herein.