UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN RE:  CHINESE-MANUFACTURED            Docket No. 09-MD-2047
DRYWALL PRODUCTS LIABILITY              New Orleans, Louisiana
                                        Tuesday, August 11, 2009


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
HEARD BEFORE THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:              HERMAN, HERMAN, KATZ & COTLAR
                                BY:  RUSS M. HERMAN, ESQ.
                                820 O'Keefe Avenue
                                New Orleans, LA 70130


FOR THE DEFENDANT:              FRILOT L.L.C.
                                BY:  KERRY J. MILER, ESQ.
                                Energy Centre - Suite 3700
                                1100 Poydras Street
                                New Orleans, LA 70163-3700


Official Court Reporter:        Karen A. Ibos, CCR, RPR, CRR
                                500 Poydras Street, Room HB-406
                                New Orleans, Louisiana 70130
                                (504) 589-7776



  Proceedings recorded by mechanical stenography, transcript
produced by computer.

<u>P R O C E E D I N G S</u>

(TUESDAY, AUGUST 22, 2009)

(STATUS CONFERENCE PROCEEDINGS)

THE COURT:  Be seated, please.  Good morning, ladies and gentlemen.  Call the case, please.

THE DEPUTY CLERK:  MDL No. 2047, <u>in re:  Chinese Manufactured Drywall Products</u>.

THE COURT:  Liaison counsel make their appearance for the record, please.

MR. HERMAN:  Good morning, Judge Fallon, Russ Herman for plaintiffs in MDL 2047.

MR. MILLER:  Kerry Miller for defendants, your Honor.

THE COURT:  I am pleased to advise that we have several judges on the line:  Judge Joseph Farina from Miami, Eleventh Judicial District; Judge Robert Rosenberg from Fort Lauderdale, Seventeenth Judicial District; and Judge Glenn Kelly, West Palm Beach, Fifteenth Judicial District.

Gentlemen, I appreciate your being with us today.  I am going to look forward to working with you as a team, and hopefully together we can work on this matter.

I met with liaison counsel to talk about the agenda. I'll take them in the order as it's given.

First, Pretrial Orders.

MR. HERMAN:  May it please the court, good morning, your

Honor, and good morning your Honors.

With respect to the status conference this morning, Item No. 2, Property Inspections, we've had numerous meetings with defense counsel.  We're in progress, we expect to provide to the court for review no later than Thursday of this week an agreed to protocol for inspection and to get it to the five or six companies that were interviewed mutually by plaintiffs and defendants on Friday and ask them to please expedite their review and get back to us.

We plan to agree on a discrete number of initial inspections that will move rapidly, probably between 30 and 50 with your Honor's approval.  And then look at whether the protocol is working and whether the company that's been contracted is doing the job.  We will make sure that the company mutually selected or companies mutually selected are available to meet with your Honor on accord with your schedule before the inspections begin.

MR. MILLER:  Your Honor, I think that's all correct. With respect to the inspection companies, just a few more details on what Mr. Herman had to say.

THE COURT:  Speak into the mike so the judges can hear you.

MR. MILLER:  I think the parties jointly believe that the inspection company needs to be court approved so whereby the parties may make suggestions to the court.  Ultimately the inspection company needs to be court approved and we anticipate

09:05:34  1    inserting the name of the inspection company into the pretrial

09:05:34  2    order that's going to govern the inspections.

09:05:35  3         THE COURT:  I've had several meetings with the parties on

09:05:40  4    this issue.  My feeling is at this point I think all would profit

09:05:45  5    by understanding the identification of the issues and the parties

09:05:50  6    involved.  I think we need a threshold inspection protocol to

09:05:55  7    determine whether or not the property in question contains Chinese

09:06:00  8    manufactured drywall; secondly, the name of the manufacturer,

09:06:07  9    distributor and installer of that particular drywall; third, the

09:06:12 10    nature and extent, if any, of the impact on the surrounding

09:06:18 11    property.  And that's the thrust of this initial inspection.

09:06:22 12         I need a protocol by the end of this week.  I will, of

09:06:26 13    course, forward it to the state judges for their inspection and

09:06:30 14    input.  And also when you give me the names of the inspectors, I'll

09:06:36 15    also send it to my colleagues in state court for their input.

09:06:41 16         I think this case is going to profit from understanding

09:06:46 17    and getting our hands around as quickly as possible what we're

09:06:51 18    dealing with.  We need to know whether or not a particular property

09:06:58 19    has within it Chinese manufactured drywall.  And if so, the extent

09:07:03 20    of that drywall.  It seems that this drywall has also been sold

09:07:09 21    together with non-Chinese drywall.  So not all homes that have some

09:07:16 22    Chinese drywall, have all of the drywall is Chinese manufactured.

09:07:22 23    We need to know that, we need to know how much is involved, we need

09:07:27 24    to know who manufactured it, we need to know who distributed it, we

09:07:30 25    need to know who installed it, and also we need to know at least

09:07:34  1   visually the nature and extent of the collateral damage.

09:07:39  2         So once that is ascertained, and I would hope that that

09:07:43  3   could be ascertained within 30 or 60 days, I am looking for an

09:07:47  4   initial read of 25, 30 homes, take a look at the protocol, you may

09:07:54  5   have to tweak it at that time, and then let's step it out to 1,500,

09:07:58  6   2,000 homes throughout the country.  And then from that group, both

09:08:04  7   the federal court, as well as the state courts may find it

09:08:07  8   advisable to select some cases and try those particular cases.  At

09:08:13  9   least that's my thought presently.

09:08:15 10         In addition, I asked counsel to get together and give to

09:08:22 11   us a plaintiff and defendant profile form.  The traditional method,

09:08:36 12   as all of us know, is to draft a large set of interrogatories and

09:08:36 13   serve those interrogatories and wait for 30 days and then you get

09:08:37 14   them back and you deal with them back and forth.  We don't have

09:08:40 15   that time in this particular case, so we have to shortcut that and

09:08:44 16   deal with profile forms instead of detailed sets of

09:08:51 17   interrogatories.  Doesn't mean that you can't file interrogatories

09:08:53 18   later, it simply means that there's some information that you need

09:08:58 19   now and we can't wait 30 and 60 days to get that information.  So

09:09:04 20   I've instructed counsel to get together and prepare profile forms.

09:09:08 21         Let me hear from the parties on the progress of those

09:09:11 22   profile forms.

09:09:12 23         MR. HERMAN:  May it please the court, your Honor, we've

09:09:15 24   had a number of meetings.  We expect to have more meetings as soon

09:09:20 25   as this status conference is concluded and to send a representative

09:09:24  1  from plaintiffs and whomever liaison counsel for defense selects

09:09:30  2  with a profile forms for you to review.  And if your Honor is

09:09:34  3  satisfied with them to enter an order.

09:09:36  4      We have one issue outstanding, we expect that we're going

09:09:39  5  to resolve it very shortly as soon as this is concluded.  We're

09:09:45  6  well aware your Honor is in trial, and so we will try not to

09:09:49  7  interrupt your Honor while you're conducting other business.

09:09:52  8      I will say this, there was some dispute as to who was

09:09:56  9  going to pay, how they were going to pay.  The PSC, Plaintiffs

09:10:03  10  Steering Committee met last night, and we met with some of our

09:10:06  11  cochairs, we are going to pay the initial cost of the 25

09:10:10  12  inspections.  That does not mean that we are not going to seek

09:10:13  13  reimbursement at some point, it doesn't mean that we agree for the

09:10:16  14  next thousand that we're going to pay.  But in order to get this

09:10:20  15  show on the road, the plaintiffs are going to pick up the costs of

09:10:24  16  the inspections, whatever they are.

09:10:26  17      THE COURT:  Okay.  With regard to the profile forms, let

09:10:28  18  me have those by the end of the week in final form.  So I'll put

09:10:32  19  that out in an order and we can distribute the profile forms and

09:10:35  20  we'll get them back as quickly as possible.

09:10:38  21      MR. MILLER:  Judge, Kerry Miller on behalf of the

09:10:40  22  defendants.  On the issue of the profile forms, just one

09:10:42  23  supplemental point to what Mr. Herman had to say.

09:10:45  24      I think we are close to finalizing those documents, I

09:10:48  25  have every confidence in the world they will be finalized in the

09:10:56  1    next day or so.  I think in the course of our discussions yesterday
09:10:56  2    there was an agreement that once they are finalized, submitted to
09:10:57  3    the court for entry, that as part of the court's order authorizing
09:11:03  4    the issuance of those profile forms that the return date would be
09:11:06  5    15 days.
09:11:07  6              THE COURT:  Right.
09:11:08  7              MR. MILLER:  Because we are going to try to move this
09:11:10  8    fast, get those profile forms answered quickly.  We understand from
09:11:13  9    plaintiffs and defendants who come in subsequent to that it's going
09:11:16 10    to be a rolling production.  But for the group that's here right
09:11:19 11    now, 15 days is what we're looking for to get the responses in.
09:11:22 12              THE COURT:  And that dovetails in with the inspections
09:11:25 13    because I think the profile forms will help you understand from the
09:11:29 14    defendant's standpoint what the complaints are so you will be able
09:11:33 15    to at least be aware of those when you do the inspections.
09:11:35 16              MR. MILLER:  In terms of what the court identified as the
09:11:38 17    main issues for the thrust of discovery, the one, the two, and the
09:11:43 18    three, it's the profile forms and the inspections together in
09:11:45 19    agreement that's hopefully going to answer those questions.
09:11:48 20              THE COURT:  I think that's right.  Also while you're
09:11:50 21    doing the inspections you're going to come across some property,
09:11:53 22    obviously, and some samples will be taken.  The issue of what to do
09:11:57 23    with those samples is the next item on the agenda, the Preservation
09:12:01 24    Order.  This type of material you need to talk to the people to
09:12:05 25    find out how you store it.  You can't stick it in a plastic bag,

09:12:10  1   you can't put it in your pocket and expect that the chain of

09:12:14  2   custody will be maintained.

09:12:17  3          So we need to deal with a preservation order and get that

09:12:25  4   to me so I can send it to the state judges and hopefully that same

09:12:30  5   chain of custody will satisfy their requirements as it will for the

09:12:35  6   federal requirements.

09:12:36  7          You won't have to go back in and take other samples, the

09:12:40  8   samples will be valid samples -- I am not saying you have to test

09:12:44  9   them now, that may come later, but the samples will be validly

09:12:48  10  taken, validly stored, and then able to be tested at another time.

09:12:55  11  But the chain of custody is what I am focussing on with the

09:12:58  12  preservation order.  Anything on that?

09:13:03  13          MR. HERMAN:  We've exchanged three different versions of

09:13:05  14  a preservation order and we're continuing to work on it, your

09:13:08  15  Honor.  We'll have an order to you certainly before inspections

09:13:12  16  begin.

09:13:14  17          THE COURT:  All right.

09:13:14  18          MR. HERMAN:  Your Honor, the next issue I believe on your

09:13:19  19  Honor's agenda is No. 5 which would be State Court Trial Settings.

09:13:30  20          THE COURT:  Yes, right.  Anything on that from either the

09:13:30  21  plaintiffs or defendants?

09:13:30  22          MR. HERMAN:  From plaintiffs we will attempt to track

09:13:32  23  removals and remands, your Honor, and I believe the defendants will

09:13:36  24  advise, as is customary, at each status conference the trial

09:13:42  25  settings in state and federal court, as well as motions that are

pending.

And, your Honor, as I understand it, your Honor is considering a period of time in which no motions will either be filed or heard.

THE COURT:  Two points on that.  The reason that I need to know about the state court settings is so that I am not inconsistent with their settings.  I don't want to set a trial on a date that they have a trial set, so I want to be conscious of that.  And if they have something coming up, I need to know it so I don't get in the way of it.  That's the reason for that.

With respect to motions, my thinking with motions is that we've got to stop everything, the motions initially, just to get a handle on it.  In this case we've got several thousand of claims that we know about and maybe many thousands more.  We can't have thousands of motions being filed with people having to respond to the motions within a certain period of time or have their rights prejudiced.  So I am going to be issuing an order freezing motions and then I am going to instruct the parties to get together a list of motions for me, prioritize the motions, and then I'll set a briefing schedule on those motions.

I need them to direct their attention on the key motions as opposed to being all over the place.  So we're going to get to the motions and we're going to get to them expeditiously, but I need to focus on the key motions first rather than motions that can wait for a week or two.

09:15:48  1          The State/Federal Coordination.  My thinking there is

09:15:54  2     that I talked to liaison counsel for both sides, lead counsel for

09:15:58  3     both sides to suggest to them that they could get together for me

09:16:04  4     some names of individuals who are involved in the state court

09:16:07  5     proceedings and give me some input on a committee to appoint for

09:16:19  6     state court liaison purposes, and I'd like the committee to feel

09:16:24  7     free to come to every meeting, at least their chairs if not the

09:16:29  8     whole committee, the state court liaison committee, and I want to

09:16:35  9     hear from them as to what their needs are, what their problems are,

09:16:40 10     that we can deal with them from the federal vantage point.  So I

09:16:44 11     will be hearing from counsel before the next meeting on that, on

09:16:52 12     that issue.

09:16:55 13          THE COURT:  Discovery Issues is the next item.

09:16:57 14          MR. HERMAN:  Your Honor, with respect to coordination, we

09:17:03 15     understand that there are a number of defense counsel that have

09:17:05 16     signed up and haven't entered an appearance, and plaintiffs would

09:17:10 17     not object to, if they are required to enter an appearance, would

09:17:14 18     not object to your Honor considering that they don't have to file

09:17:18 19     responsive pleadings at this point but at least we would know which

09:17:24 20     party is represented by whom.

09:17:26 21          THE COURT:  I am going to have to act on that, folks.  My

09:17:33 22     problem is is that I need to know who is in the litigation, and

09:17:41 23     from that standpoint the people who have been sued and who have

09:17:46 24     been served, those individuals have to make some appearance.  And

09:17:52 25     if they don't make the appearance, I am going to instruct the

09:17:58  1    plaintiffs who have sued them to file with me a motion for default

09:18:02  2    judgment and I will have to act on that.

09:18:05  3            So I need to have some appearance by those individuals,

09:18:11  4    and I need that done before the next meeting, either file a motion

09:18:18  5    for default, I'm talking about individuals who are defendants who

09:18:23  6    have been served who have not answered yet.  It's time at least for

09:18:31  7    them to make an appearance.

09:18:34  8            Any matters on Discovery Issues?

09:18:36  9            MR. MILLER:  Your Honor, on that very point, on making

09:18:38 10    the appearance by all defendants who have been served in the

09:18:41 11    various MDL cases.  Just as a point of reference, in Pre-Trial

09:18:46 12    Order No. 1 entered by your Honor back in July, section 8 is titled

09:18:50 13    Extension and Stay, and that's what provides, at least at this

09:18:54 14    point an unlimited extension of time to even file a notice of

09:18:59 15    appearance.  So that would be the section that needs to be modified

09:19:02 16    and get the parties who have been served at least file an

09:19:06 17    appearance in the litigation so we know who they are.

09:19:08 18            As we work on these discovery issues and progress on

09:19:11 19    profile forms and inspection sheets, if you're in the case, the

09:19:13 20    parties jointly think, at least at this point, you need to get

09:19:16 21    those profile forms, you need to be involved in the inspections,

09:19:19 22    and you need to move forward.  So we think it's critical that that

09:19:23 23    paragraph get modified.

09:19:24 24            THE COURT:  I just modified it, I verbally modified it.

09:19:27 25    It will go into my minute entry, that's already been done two

09:19:35 1   minutes ago.

09:19:35 2           MR. HERMAN:  May it please the court, with the next item

09:19:35 3   on your agenda, Item No. 7, Discovery Issues, we are drafting,

09:19:43 4   plaintiffs are drafting a master set of discovery and we should be

09:19:50 5   ready to file that within the next two weeks.

09:19:52 6           We will be filing within the next two weeks a motion and

09:19:57 7   brief for the conduct of early 30(b)(6) depositions.  And we will

09:20:07 8   give defendant liaison counsel a copy of any discovery we intend to

09:20:13 9   initiate before it's filed so that we can meet and confer, and

09:20:20 10  hopefully, your Honor, by the time we meet next in a status

09:20:24 11  conference, that issue will either be ripe for your Honor's

09:20:28 12  consideration or it will be resolved.

09:20:31 13          THE COURT:  Let me comment on that.  On both sides from

09:20:35 14  discovery, before you file discovery, I need you to file it with

09:20:38 15  each other or send it to each other in draft form and meet and

09:20:42 16  confer on it.  You don't have to agree, but at least you ought to

09:20:47 17  meet and confer on it.  And then after you've met and conferred,

09:20:50 18  put it in final form and send it to the court.  That's not going to

09:20:54 19  delay it because I don't want you to meet and confer and get

09:20:58 20  together in a week or two.  When you send it in draft form, meet

09:21:03 21  within an hour or two and talk about it and then file it with the

09:21:07 22  court.

09:21:08 23          But meet and confer before you file discovery matters

09:21:11 24  with the court so that I'll know that whatever the disagreement is

09:21:17 25  you've at least tried to resolve it first.

Next item is the FOIA Issues.

MR. HERMAN:  Your Honor, I apologize, I've made an error in connection with the status report.  It should have included your Honor's web site, www.laed.uscourts.gov/drywall/drywall.htm.  Let me repeat it, www.laed.uscourts.gov/drywall/drywall.htm, which then would allow any interested party to access your conferences and your rulings.

THE COURT:  Right.  And a shortcut is the www.laed.uscourts.gov.  When you pull the court's web site for the Eastern District, you'll see on the left-hand side a number of buttons and click on the Drywall button and I'll come up that way, too.

In that connection, I'll post everything on there for everyone who is interested in this litigation, whether it's litigants or lawyers or anyone else public, they have access to it.  You can keep in touch with it, I have current events on it, I have all of the orders, all of my opinions will be posted on it.  Even the transcripts from these hearings in due course will be posted on that website.

MR. HERMAN:  Your Honor, under the Freedom of Information Act, plaintiffs have filed a number of requests to various governmental agencies, both federal and state, and will be filing more.  We have not had a problem in terms of return at this juncture.  In the event we do have a problem, we will report to the court by the next status conference and if necessary ask the court

09:23:40 1    to assist in having FOIA returns.

09:23:45 2         THE COURT:  Both sides have a right to have that.  If you

09:23:48 3    don't get cooperation, let me know and I'll issue the appropriate

09:23:52 4    order for the person to come down here and tell us why.

09:23:58 5         MR. MILLER:  Your Honor, while on the topic, Russ, if you

09:24:01 6    wouldn't mind sharing with me a copy of the FOIA requests that have

09:24:05 7    been issued.

09:24:05 8         MR. HERMAN:  I don't see any problem with sharing FOIA

09:24:08 9    requests.  And we would like any of the defense also to provide us

09:24:16 10   copies of their FOIA requests; and we're also willing to exchange

09:24:20 11   the materials that we receive, I think we can work cooperatively to

09:24:25 12   have that process accelerated.

09:24:27 13        MR. MILLER:  Sounds good from our end, your Honor.

09:24:30 14        THE COURT:  Okay.  Next item is Trial Settings in Federal

09:24:32 15   Court.

09:24:35 16        What my thinking is on that is that after the next

09:24:39 17   meeting, I am going to look to you all to give me each ten cases

09:24:45 18   that you're focussing on, and those ten cases will be cases that

09:24:53 19   will form the initial pool from which we'll try the cases.  I will

09:24:57 20   give you an opportunity to conduct some discovery, some pertinent

09:25:04 21   case specific discovery on those ten cases, and then I'll ask you

09:25:07 22   to come up with five from each side.  From the five I'll give each

09:25:13 23   side an opportunity to veto two selections.

09:25:19 24        We'll come up with three each, that will be six, we will

09:25:22 25   try to try five cases, we will have one as a swing in the event one

09:25:27 1    folds.  And I hope to start those cases the beginning of next year,

09:25:32 2    January so that will give you four months or so to get ready for

09:25:39 3    them and we'll have an opportunity to look at the cases.

09:25:43 4          All of us who have been doing this for awhile know that

09:25:46 5    you can think about a case, you can plan a case, you can visualize

09:25:55 6    a case, but until you put a case on, you don't know what that case

09:25:56 7    is about, just the way it works.  From those bellwether trials

09:26:02 8    you'll find out how much it costs to try the case, what's involved

09:26:06 9    in the trial of the case, how the juries respond to those cases,

09:26:13 10   and it'll give you some input, hopefully, that will give you an

09:26:17 11   opportunity to look at this case from a global standpoint.

09:26:21 12         But that's my current thinking.  But I will meet with the

09:26:23 13   parties to discuss it with them before taking any action.  And I

09:26:29 14   will also coordinate as much as I can with the state courts so that

09:26:35 15   I get their consent and cooperation also.  Yes.

09:26:41 16         MR. MILLER:  Judge, if I may on that point of trial

09:26:43 17   settings.  That's why the defendants think the discovery moving

09:26:48 18   forward needs to be focused two things:  No. 1, the selection of

09:26:51 19   the bellwether plaintiffs.  The plaintiffs are at an advantage,

09:26:54 20   they know their clients better than we do.  That's why the profile

09:26:58 21   forms and the inspections need to go forward so the defendants have

09:27:01 22   the ability to evaluate the cases and select their ten.

09:27:03 23         So that's why we think discovery needs to be focused

09:27:05 24   that.  And of course once the 20 cases are selected, there can be

09:27:09 25   more intense discovery on those cases.

09:27:11  1        THE COURT:  That's correct.  And I agree with that.

09:27:14  2        With the ten cases, too, I ask that counsel in good faith

09:27:18  3   try to select cases that are across the spectrum.  I mean, it

09:27:23  4   doesn't make any sense to take the same case and try that ten times

09:27:27  5   or five times, it doesn't make any sense to do that.  So I am going

09:27:31  6   to look to you for some guidance and some suggestions as to how we

09:27:34  7   get a sampling of what we're dealing with.

09:27:37  8        MR. HERMAN:  Your Honor, there is, as natural, to have

09:27:43  9   some disagreement between sides in a case.  We think that the

09:27:46 10   defendants know a lot more about our clients than we know, having

09:27:51 11   conducted somewhere between 400 and 800 inspections directly with

09:27:56 12   clients in Florida and elsewhere.  Notwithstanding that, if we are

09:28:02 13   to really have a spectrum of cases, then we need expedited 30(b)(6)

09:28:09 14   depositions in-depth to determine which suppliers, which members of

09:28:15 15   the distribution chain are going to be involved in those eventual

09:28:20 16   five or six cases that are going to be tried.

09:28:22 17        So we have a disagreement as to what the limit would be

09:28:26 18   in 30(b)(6), we'll try and work it out.  We have to provide the

09:28:36 19   usual list of subjects, but I note for your Honor and the other

09:28:37 20   judges, we do have a disagreement on this issue.

09:28:39 21        THE COURT:  All right.  Okay.  Next item is Filings in

09:28:44 22   the MDL.

09:28:46 23        MR. HERMAN:  Your Honor, there have been intense

09:28:49 24   discussions which have become even more intense in the last three

09:28:53 25   days.  It would be premature for me to speak other than to say that

09:29:04 1   folks on both sides are encouraged that there may be, with the

09:29:07 2   consent of their clients, a waiver of service under some

09:29:13 3   circumstances with a reservation of certain defenses and direct

09:29:18 4   filing in the MDL with a reservation as to venue and other

09:29:25 5   defenses.  And hopefully that will happen because that will allow

09:29:29 6   us, both sides, a better opportunity in the MDL to explore the

09:29:38 7   issues.

09:29:40 8          THE COURT:  Anything from the defendants on that?

09:29:43 9          MR. MILLER:  I think Russ's recitation is right.  There

09:29:47 10  are certain defendants I think right now that are amenable to

09:29:50 11  direct filing in the MDL while others may not be, but are

09:29:54 12  evaluating the issue.

09:29:55 13         With respect to service, again, the same.  I think there

09:29:55 14  are certain defendants, particularly domestic defendants that are

09:29:58 15  capable of accepting service.  I know some of the foreign

09:30:01 16  defendants are considering the issue.  We hope to be back with your

09:30:04 17  Honor at the next conference on it.

09:30:05 18         THE COURT:  It's important that we get everybody in as

09:30:08 19  quickly as we can, because the train is leaving, folks, and you're

09:30:12 20  not going to be able to catch up to it.  So the MDL is going to get

09:30:16 21  it eventually, you might as well shortcut it.  It's going to take

09:30:21 22  about two months to get from filed in a state through the process

09:30:25 23  to this MDL.  If you can detour and come in initially reserving

09:30:31 24  your rights, I don't expect anybody to give up any rights, but

09:30:36 25  reserving your rights for all of the defenses, all of the

09:30:44 1   applicable laws, and where you're going to try the case, things of

09:30:49 2   that sort and any problem with it.  But I think it's to everybody's

09:30:54 3   advantage that you get into this if you're going to go with the MDL

09:30:59 4   that you get in as quickly as possible.

09:31:01 5             Tolling Agreements/Suspension of Prescription.

09:31:08 6             MR. HERMAN:  We have no agreement as to tolling in

09:31:10 7   Louisiana.  Of course, what we are entertaining doing is filing a

09:31:16 8   large complaint with all plaintiffs in alphabetical order in

09:31:23 9   federal court and asking the court to put it on the suspense

09:31:26 10  docket, either directly or by class action.

09:31:29 11            As to Tolling Agreements, there is no agreement on

09:31:31 12  tolling at this point.

09:31:32 13            With respect to class actions, your Honor, the PSC has

09:31:43 14  requested consent from defendants for a waiver of local Rule 23B

09:31:44 15  requiring motions to be filed moving for certification as required

09:31:51 16  by that rule.

09:31:54 17            THE COURT:  All right.  Anything on that?

09:31:56 18            MR. MILLER:  Yeah, I think there's consent on defendants

09:31:58 19  to go ahead and waive that local rule.

09:32:02 20            THE COURT:  I will grant that.  I am not going to be

09:32:05 21  dealing with certifications within a short period of time like that

09:32:08 22  in a case like this.

09:32:11 23            MR. HERMAN:  May it please the court, on Motions in the

09:32:13 24  MDL, there is an application for the homebuilders.  I might note

09:32:20 25  that the only attorney older than Arnold Levin in the courtroom is

09:32:26   1   subject to that motion.

09:32:28   2          MR. LEVIN:  Phil, welcome to our court.

09:32:33   3          MR. WITTMANN:  I am hiding back here, Judge.

09:32:35   4          THE COURT:  We can't see you, Phil, so you must be in it

09:32:41   5   some way.

09:32:42   6          I got that application and I am going to grant that.  And

09:32:45   7   I look to the committee to give me some suggestions as to lead

09:32:49   8   counsel.

09:32:53   9          MR. HERMAN:  We will be pleased to work with whomever is

09:33:02  10   chosen and directed by your Honor.

09:33:05  11          THE COURT:  Anything more on motions?  I think we've

09:33:09  12   talked about that earlier.

09:33:12  13          MR. MILLER:  I think so, your Honor.  The idea is that a

09:33:13  14   list is going to be submitted jointly by Friday on motions we think

09:33:17  15   can be prioritized and handled either with little discovery or with

09:33:20  16   discrete amounts of discovery.

09:33:22  17          THE COURT:  That's fine.  Insurance Issues.

09:33:24  18          MR. HERMAN:  There are no current issues other than, I

09:33:27  19   believe, there is one dec action, I will ask lead counsel for

09:33:31  20   plaintiffs.

09:33:33  21          MR. LEVIN:  There are two dec actions in Virginia, your

09:33:40  22   Honor, and one has been noted as a tag along, the other will be

09:33:43  23   noted as a tag along.  There is one homeowners suit against AIG in

09:33:52  24   the Middle District of Florida, that will be tagged along today.

09:33:59  25          MR. HERMAN:  Your Honor --

09:34:00   1          MR. MILLER:  On the point of insurance issues, it is my

09:34:05   2   belief and understanding that that question is part of the defense

09:34:09   3   profile forms, identification of insurers.

09:34:12   4          THE COURT:  I think it is.

09:34:13   5          MR. MILLER:  And if it is, as we all think that it is,

09:34:18   6   that would all be answered within 15 days.  I would hope that if

09:34:21   7   there's going to be actions filed against those insurers if they're

09:34:24   8   filed after that 15-day period because, as you put it out, the

09:34:27   9   train is leaving the station.

09:34:28  10          MR. HERMAN:  The plaintiffs will withhold filing any

09:34:30  11   insurer amendments to complaints or new complaints until after the

09:34:36  12   15 days and we've met and conferred.  Its plaintiffs' intention to

09:34:48  13   chart policies and different types of policies of various parties,

09:34:48  14   that's another reason we feel we need 30(b)(6), because of the

09:34:52  15   chain of distribution they have different types of policies issued

09:34:57  16   by different insurers with different clauses.

09:35:00  17          So we will be happy to refrain from filing any direct

09:35:07  18   actions against insurers or amendments against insurers until the

09:35:11  19   15 days have passed and we've met and conferred.

09:35:15  20          THE COURT:  Also with regard to depositions.  I've done

09:35:18  21   this in another case or two, there is an opportunity to do

09:35:25  22   depositions online.  There's some outside providers that afford

09:35:31  23   that service.

09:35:33  24          In the cases that I've used it on, you log on with your

09:35:38  25   social security number, it's prearranged, the depositions are taken

09:35:42  1   online; that is to say, two people, one from the plaintiff, one

09:35:47  2   from the defendant or other parties appear, one individual has a

09:35:54  3   lap top, the other asks the questions.  People who want to

09:35:59  4   participate in the deposition participate by pulling it up on their

09:36:07  5   computer.  On the right-hand side of the screen is the running

09:36:09  6   transcript, on the left-hand side is voice and image.  The

09:36:12  7   plaintiffs have their chat rooms, defendants have their chat rooms,

09:36:16  8   the Chinese wall separates them.  You can communicate back and

09:36:21  9   forth.  If Hawaii has something or New York has something or

09:36:23 10   someone else has something, you can communicate that way, and it

09:36:28 11   comes up and you click on, you click on the screen next to the

09:36:32 12   questioner.

09:36:34 13        At the appropriate time he elbows him and says New

09:36:37 14   Orleans wants this, Miami wants this, and so forth and you do it

09:36:42 15   that way.

09:36:43 16        With this number of people, it works.  It's economical.

09:36:48 17   It's good because the experts can monitor the depositions.  If you

09:36:53 18   give me a heads up on a particular deposition that you anticipate

09:36:57 19   some difficulty with, I log on and I'll make my rulings immediately

09:37:01 20   so that you can continue on.

09:37:04 21        It's worked before and I notice it to you because you can

09:37:11 22   take a look at it and if you want all or some of the depositions

09:37:16 23   taken in that fashion you can do so.

09:37:20 24        MR. HERMAN:  With great respect, your Honor, from the

09:37:23 25   plaintiffs standpoint we prefer an iron curtain to a Chinese wall.

09:37:28  1        MR. MILLER:  Well, just as long as it's not Chinese

09:37:32  2  drywall, right?

09:37:34  3        THE COURT:  As long as it's not Chinese drywall,

09:37:37  4  manufactured drywall.  Okay.

09:37:39  5        The next item is Service of Pleadings Electronically.

09:37:42  6        MR. HERMAN:  Yes, your Honor, and LexisNexis has a

09:37:51  7  training session scheduled for today.  At what time?

09:37:52  8        THE DEPUTY CLERK:  Noon.

09:37:53  9        MR. HERMAN:  At noon.

09:37:53 10        THE COURT:  And segue into that, the importance in a case

09:37:57 11  of this sort, the importance of transparency and in disseminating

09:38:02 12  information, we talked about transparency with the website, the

09:38:06 13  method of disseminating information is done through an outside

09:38:10 14  provider LexisNexis.  They will be keyed in to the court and they

09:38:15 15  will be served with the documents that the liaison counsel are

09:38:20 16  served with.  Instead of liaison counsel having to sending the

09:38:26 17  documents to 1,500 or 2,000 lawyers, LexisNexis can do that and it

09:38:33 18  will be done electronically with e-mail.

09:38:36 19        And as soon as the document is filed, they will get a

09:38:40 20  copy and they will be able to upload it and then distribute it

09:38:45 21  immediately.  So you will get the filings within about 20 minutes

09:38:50 22  after it's filed so you will know what's happening.

09:38:52 23        MR. MILLER:  Your Honor, on that point.  LexisNexis is

09:38:55 24  also going to conduct a training session tomorrow morning at nine

09:38:58 25  at my office.  So if it's more convenient for folks to do it then,

09:39:02  1  if they're staying over, nine o'clock tomorrow.

09:39:04  2          THE COURT:  We have a session here in court at 12

09:39:07  3  o'clock, I understand we've got about 100 people who are going to

09:39:11  4  be attending.  So if you're interested, you can attend.

09:39:15  5          THE DEPUTY CLERK:  It's on the second floor, Judge,

09:39:16  6  courtroom 227.

09:39:18  7          THE COURT:  I am in trial myself, starting in a couple of

09:39:22  8  minutes, so it won't be in this courtroom, it will be on the second

09:39:26  9  floor.

09:39:28 10          Anything on the Master Complaint?

09:39:30 11          MR. HERMAN:  Not at this time, your Honor.

09:39:33 12          THE COURT:  Anything from the defendants on that?

09:39:34 13          MR. MILLER:  No, your Honor.

09:39:35 14          THE COURT:  The next status conference, I think it would

09:39:38 15  be helpful if we had one in a shorter period of time, September the

09:39:44 16  3rd, Thursday, September the 3rd at 8:30 for the liaison counsel

09:39:50 17  and lead counsel, and then at nine o'clock in open court.

09:39:59 18          Again, I appreciate the attendance of the judges from

09:40:02 19  state court, they do me an honor by attending today; and hopefully

09:40:08 20  one day they can sit with me on the bench and we'll deal with the

09:40:13 21  Frye hearings, the Daubert hearings that we have.

09:40:17 22          One last comment about the PSC.  I have asked the PSC to

09:40:25 23  be conscious of individual lawyers who are not on the PSC who wish

09:40:28 24  to perform work on this particular case under the direction of the

09:40:34 25  PSC.  There's room for everyone who wants to work, whether you're

09:40:45  1   on the PSC or not on the PSC.  I know there are extremely talented

09:40:45  2   lawyers, and if you're willing to work and interested in working, I

09:40:49  3   assure you there will be a spot for you.

09:40:52  4        MR. HERMAN:  Your Honor, in accord with your Honor's

09:40:55  5   direction, every lawyer that has submitted an application either to

09:41:00  6   serve on the PSC or a committee who has a filed case and commits to

09:41:06  7   file cases in the MDL will be appointed as of seven o'clock P.M.

09:41:15  8   this evening to a committee.  And in some cases, those that have

09:41:22  9   been very active and have indicated, even though they're not on the

09:41:26 10   PSC, they will be cochairs or chairs of various subcommittees.  We

09:41:33 11   will provide your Honor the list after we get confirmation back

09:41:38 12   that they choose to serve and they're willing to serve under the

09:41:42 13   guidelines set forth.

09:41:43 14        But I assure your Honor, it will be open participation,

09:41:49 15   but only by those who intend to participate fully in the activities

09:41:53 16   of the MDL.  We've had a number of applications from folks that

09:41:57 17   have no filed cases in federal court, so they should file if they

09:42:03 18   want to participate.

09:42:04 19        THE COURT:  Fine.  I know we have several hundred people

09:42:06 20   here.  If there's anything anyone else wishes to bring up to the

09:42:10 21   court I have it in open court for that reason, not only to inform

09:42:14 22   you but also to give you a forum if you have something to say.

09:42:19 23        Hearing none, thank you very much, I look forward to

09:42:22 24   seeing you on September 3rd.

09:42:23 25        THE DEPUTY CLERK:  Everyone rise.

(WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)


* * * * * *


REPORTER'S CERTIFICATE


I, Karen A. Ibos, CCR, Official Court Reporter, United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.


_____

Karen A. Ibos, CCR, RPR, CRR

Official Court Reporter