UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION: L |
| | * | |
| * * * * * * * * * * | * | JUDGE FALLON |
| | * | |
| This Document Relates to: | * | MAG. JUDGE WILKINSON |
| *ALL CASES* | * | |
| | * | |
| * * * * * * * * * * * | | |

SUPPLEMENTAL AND AMENDED
RE-NOTICE OF ORAL AND VIDEOTAPED DEPOSITION
PURSUANT TO FED. R. CIV. P. 30(b)(6)

To:   **Interior/Exterior Building Supply, LP**
      Through its attorneys of record
      Richard G. Duplantier, Esq.
      Lambert J. "Joe" Hassigner, Jr., Esq.
      GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
      701 Poydras Street, Suite 4040
      New Orleans, LA  70139
      E-Mail: Rduplantier@gjtbs.com

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 30(b)(6) of the Federal

Rules of Civil Procedure, plaintiffs, by and through their undersigned attorneys, the

Plaintiffs Steering Committee in the MDL, will take the deposition of **INTERIOR/EXTERIOR**

**BUILDING SUPPLY, LP** on February 5, 2010, at 9:00 o'clock a.m. at the offices of Frilot, Patridge, Kohnke & Clements, LC, 1100 Poydras Street, Suite 3600, New Orleans, Louisiana, (telephone (504) 599-8000), or at another location mutually agreed upon by the parties.  Pursuant to Fed. R. Civ. P. 30(b)(6), Interior/Exterior Building Supply, LP is requested to designate and produce a representative or representatives, as may be required, to testify on behalf of Interior/Exterior Building Supply, LP concerning the topics identified in SCHEDULE A attached hereto.  The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and by video, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed.

This 22nd day of December, 2009.

Respectfully submitted,

   /s/ Stephen J. Herman
**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
**HERMAN, HERMAN, KATZ & COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024

*Plaintiffs' Liaison Counsel*

| | |
|---|---|
| Dawn M. Barrios<br>701 Poydras Street<br>Suite 3650<br>New Orleans, LA  70139<br>PH:  (504) 524-3300<br>Fax:  (504) 524-3313 | Daniel E. Becnel, Jr.<br>425 W. Airline Highway<br>Suite B<br>LaPlace, LA  70068<br>PH:  (985) 536-1186<br>Fax:  (985) 536-6445 |
| Victor M. Diaz<br>25 Flagler Street<br>8th Floor<br>Miami, FL  33130<br>PH:  (305) 358-2800<br>Fax:  (305) 358-2382 | Ervin Amanda Gonzalez<br>255 Aragon Avenue<br>Cora Gables, FL  33134<br>PH:  (305) 476-7400<br>Fax:  305) 476-7444 |
| Ben Gordon<br>316 S. Baylen Street<br>Suite 600<br>Pensacola, FL  32502<br>PH:  (850) 435-7090<br>Fax:  (850) 436-6091 | Hugh P. Lambert<br>701 Magazine Street<br>New Orleans, LA  70130<br>PH:  (504) 581-1750<br>Fax:  (504) 529-2931 |
| Arnold Levin<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106<br>PH:  (215) 592-1500<br>Fax:  (215) 592-4663 | Gerald E. Meunier<br>2800 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>Fax:  (504) 528-9973 |
| Jerrold Seth Parker<br>3301 Bonita Beach Road<br>Bonita Springs, FL  34134<br>PH:  (239) 390-1000<br>Fax:  (239) 390-0055 | James Robert  Reeves<br>160 Main Street<br>Biloxi, MS  39530<br>PH:  (228) 374-5151<br>Fax:  (228) 374-6630 |
| Christopher Seeger<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>Fax:  (212) 584-0799 | Bruce William Steckler<br>3102 Oak Lawn Ave.<br>Suite 1100<br>Dallas, TX  75219<br>PH:  (214) 523-6674<br>Fax:  (214) 520-1181 |

| | |
|---|---|
| Scott Weinstein<br>12800 University Drive<br>Suite 600<br>Ft. Myers, FL 33907<br>PH: (239) 433-6880<br>Fax: (239) 433-6836 | |

## PLAINTIFFS' STEERING COMMITTEE

### OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Richard S. Lewis<br>HAUSFELD LLP<br>1700 K Street, N.W Suite 650<br>Washington, DC 20006<br>Phone: (202) 540-7200<br>Fax: (202) 540-7201<br>rlewis@hausfeldllp.com<br><br>Daniel K. Bryson<br>Lewis & Roberts<br>3700 Glenwood Avenue, Suite 410<br>Raleigh, NC 27612<br>Phone: (919) 981-0191<br>Fax: (919) 981-0431<br>dkb@lewis-roberts.com | Jeremy W. Alters<br>Alters, Boldt, Brown, Rash & Culmo, P.A.<br>4141 N.E. 2nd Avenue<br>Suite 201<br>Miami, FL 33137<br>Phone: (305) 571-8550<br>Fax: (305) 571-8559<br>jeremy@abbrclaw.com<br><br>Richard J. Serpe, Esquire<br>Law Offices of Richard J. Serpe<br>Crown Center, Ste. 310<br>580 East Main Street<br>Norfolk, VA 23510-2322<br>rserpe@serpefirm.com |

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Re-Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) has been served on Counsel for Defendant Interior Exterior, Richard Duplantier, *via* E-Mail, and upon Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this <u>22nd</u> day of <u>December</u>, <u>2009</u>.

                                                 /s/ Stephen J. Herman  
                                                 Stephen J. Herman  
                                                 Herman, Herman, Katz & Cotlar, LLP  
                                                 820 O'Keefe Ave.  
                                                 New Orleans, LA  70113  
                                                 PH:  (504) 581-4892  
                                                 Fax:  (504) 561-6024  
                                                 E-Mail: sherman@hhkc.com

## SCHEDULE A

## Definitions & Instructions

1.  Whenever used herein, the following terms shall have the following meanings:

    A.  "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

    B.  "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

    C.  "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. Documents shall include all drafts, including drafts with "track changes," and shall be deemed to be separate documents within the meaning of this term.

    D.  "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. ESI includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all

      items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

E. "Electronic media" means any magnetic or other storage media device used to record electronically stored information. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

F. "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

G. "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

H. "Including" or "includes" means including, without limitation.

I. "Defendant," "Interior Exterior", "you," or "your" means Interior Exterior Building Supply LP, and/or Interior Exterior Enterprises LLC, and/or any of their domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

  J.  "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in and/or purchased from and/or shipped from China.

  K.  "Test" or "Tests" means all tests, inspections, checks, studies, evaluations, measurements, and analyses of drywall and the materials and compounds which make up the same, into or of the composition, chemical or physical properties, performance, life expectancy, and formulation thereof.

  L.  "Person" means any natural person or any business, legal, or governmental entity or association.

  M.  "Knauf" refers to Knauf Gips KG, Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Knauf Plasterboard (Dongguan) Co., Ltd., Knauf Hong Kong Ltd, Knauf Plasterboard Beijing Co, Ltd, Knauf Trading Shanghai Co., Ltd, and/or any other Knauf parent, subsidiary, sister entity, affiliate, predecessor, successor, and/or employee, officer, agent, inspector, attorney, broker and/or other representative with whom and/or from whom Interior Exterior communicated and/or received communication, information and/or materials, either directly or indirectly, in any way related or pertaining to Chinese Drywall, and/or any other construction material and/or building supply.

2. The following rules of construction apply to all discovery requests:

  a.  The terms "all" and "each" shall be construed as all and each;

  b.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

  c.  The use of the singular form of any word includes the plural and vice versa; and

  d.  Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3. Unless otherwise indicated, the Relevant Time Period for the information sought is between January 1, 2001 and the current date.

4. In responding to any request, if any document is withheld on the basis of a claim of privilege, work product, or any other ground, it is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data.

Defendant shall produce a privilege log within 7 days after the production of documents for which privilege is asserted to apply.  For each document for which Defendant asserts a privilege applies, it must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (*e.g.*, letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2). Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, Defendant shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5.     In responding to any request, for each document furnished, documents are to be produced in full and in their unexpurgated form.  Redacted documents shall not constitute compliance with this request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

6.     In responding to this request, for each document furnished, documents shall be produced in their original language (e.g., Mandarin, German) and shall include any translations of such documents, whether such translations were performed prior to or subsequent to the date of these requests.

7.     All hard copy documents and electronically stored information (ESI) produced in response to these requests shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.  With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic format.

8.     In responding to these requests, for each document furnished, each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document (*e.g.,* "INT/EXT0001" etc).  No

other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter), and the Bates Number identified above. The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

## DEPOSITION TOPICS

Pursuant to Rule 30(b)(6), Defendant shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

**A.     Organization and Record-keeping**

1. For each year in which Defendant, including any subsidiary or affiliate of Defendant, designed, developed, manufactured, promoted, exported, imported, brokered, distributed, shipped, stored, sold, purchased, and/or installed Chinese drywall, the corporate organization and structure for any individuals, groups, departments, teams, and divisions with any responsibility or oversight of any aspect of the design, development, manufacture, promotion, export, import, brokerage, distribution, shipment, storage, sale, purchase, and/or installation of said Chinese drywall.

2. Any entities with which Defendant is affiliated or has a financial interest in that was or is involved in the design, development, manufacture, promotion, export, import, brokerage, distribution, shipment, storage, sale, purchase, and/or installation of Chinese drywall during the Relevant Time Period.

3.      Any filings made by or on behalf of Defendant to any state, federal, domestic, and/or foreign governmental agencies, departments, divisions, bodies, entities, or representatives during the Relevant Time Period.

4.      Any record filing, storage, retention, and/or destruction procedures and/or systems that contain or capture potentially relevant data, hard-copy documents, and electronically stored information (ESI), including any standard operating procedures (SOPs), retention, destruction, or preservation policies, guidance, instructions, and/or manuals relating thereto.

5.      Any computer programs, software, or databases used to create, manipulate, duplicate, maintain, store, and/or destroy data, documents, and ESI responsive to these requests and/or any other requests for documents and/or ESI served by any party in this and/or other Chinese-drywall-related litigation.

6.      Steps taken by you or on your behalf to preserve data, documents, and ESI that are or may be potentially discoverable in this action and/or other Chinese-drywall-related litigation.

**B.      Transactions Involving Chinese Drywall**

7.      The nature of any and all of your transactions involving Chinese drywall during the Relevant Time Period, including, but not limited to: (a) all entities from whom you imported, purchased, received, accepted, and/or took title of Chinese drywall during the Relevant Time Period; and (b) the identities of all entities to whom you sold, transferred, distributed and/or supplied Chinese drywall during the Relevant Time Period.

8.      The identities of any entities involved in any way with your transactions in Chinese drywall during the Relevant Time Period.

9.      The types of drywall product you imported, brokered, supplied, distributed and/or sold during the Relevant Time Period.

10.     Any markings on the Chinese drywall product that you imported, brokered, supplied, distributed and/or sold (*e.g.,* lot number, batch number, serial number, color markings, labeling, UPC codes, etc.) during the Relevant Time Period.

11.     The methods, locations, and standards employed in the importation, purchase, shipping, and/or storage of any and all Chinese drywall imported, brokered, distributed, sold and/or supplied by you during the Relevant Time Period.

12.     Any systems and/or procedures used by you for product identification, inventory control, and/or the tracking of purchases, sales, brokerage, transfers, and/or shipments of Chinese drywall during the Relevant Time Period.

13.     Any and all communications with manufacturers of Chinese drywall, including, but not limited to, Knauf, during the Relevant Time Period.

14.     Any and all visits by You and/or Your agents, brokers and/or representatives to the People's Republic of China, during the Relevant Time Period.

15.     Financial data relating to your transactions involving Chinese Drywall during the Relevant Time Period, including:

   a. Sales data;

   b. Shipping costs;

   c. Storage costs;

   d. Purchase costs; and

   e. Refunds paid or received;

16. Any product labeling, information, advertising, marketing, promotion, instructions, specifications, certifications, and/or warranties provided, directly or indirectly, to You, from Knauf and/or any other manufacturer of Chinese drywall during the Relevant Time Period.

17. Any product labeling, information, advertising, marketing, promotion, instructions, specifications, certifications, and/or warranties that you provided with any shipments and/or sales of Chinese drywall during the Relevant Time Period.

18. Any inspections, analyses, and/or compliance testing of drywall (whether Chinese drywall or otherwise) conducted by you or on your behalf during the Relevant Time Period.

19. Any standards consulted, considered, or relied upon to determine the quality and/or characteristics of the drywall products (whether Chinese drywall or otherwise) subject to such inspections, analyses, and compliance testing.

20. Any communications with trade associations, professional organizations, and/or manufacturing organizations concerning the manufacture, shipment, storage, testing, care, or use of Chinese drywall.

**C.     Inspection, Testing, and Remediation of Any Properties Containing Chinese Drywall**

21. For any Chinese drywall that you imported, brokered, shipped, transferred, purchased, sold, distributed, used, provided, placed and/or supplied during the Relevant Time Period:

    a. The locations of any communities, residences (whether single-family or multiple-family dwellings), and/or commercial properties where Chinese drywall is located;

    b. The existence and nature of any contracts or agreements with the property owners, managers, condo/co-op boards, and/or homeowner associations relating to the Chinese drywall;

    c. Notices to or from any property owners, managers, condo/co-op boards, homeowner associations, contractors, builders, architects and/or retailers relating to Chinese drywall;

    d. The existence and nature of any indemnity, joint-defense, warranty, joint-prosecution, and/or other contracts and/or agreements with contractors, builders, retailers and/or other suppliers, relating to Chinese drywall;

    e. The existence and nature of any indemnity, joint-defense, warranty, and/or other contracts and/or agreements with Knauf and/or any other manufacturer, broker, shipper and/or supplier of Chinese drywall;

    f. Any and all claims against carriers, shippers, brokers and/or marine insurance carriers relating or in any way pertaining to alleged damage to Chinese

        drywall during the shipping and/or carriage process;

  g.    Communications with any property owners, managers, condo/co-op boards, homeowner associations, contractors, builders, architects and/or retailers relating to Chinese drywall, including, but not limited to, any and all communications evidencing and/or relating to problems, complaints and/or concerns with the quality and/or potential adverse effects of Chinese drywall;

  h.    Communications with any domestic or foreign governmental bodies, entities, agencies, departments, divisions, or representatives relating to Chinese drywall;

  i.    Communications with Knauf and/or any other manufacturer of Chinese drywall evidencing and/or relating to problems, complaints and/or concerns with the quality and/or potential adverse effects of Chinese drywall;

  j.    Inspections and/or testing by Knauf and/or any other manufacturer of Chinese drywall and/or agents, contractors, brokers, dealers, inspectors and/or other representatives hired and/or employed by Knauf and/or any other manufacturer to engage in such inspections and/or testing.

  k.    Visits to the United States by Knauf and/or any other manufacturer of Chinese drywall.

22.    For any inspections, sampling, analyses, testing, and/or remediations conducted by you or on your behalf in any communities, residences (whether single-family or multiple-

family dwellings), and/or commercial properties during the Relevant Time Period:

    a.    The existence and nature of any contracts or agreements with any third-party vendors and/or consultants conducting such inspections, sampling, analyses, testing, and/or remediations; and

    b.    Any protocols, instructions, guidances, manuals, plans, and/or standard operating procedures (SOPs) for such inspections, sampling, analyses, testing, and/or remediations;

    c.    Any standards consulted, considered, or relied upon to determine the quality and characteristics of the drywall products subject to such inspections, sampling, analyses, testing, and/or remediations.

23.     All knowledge, information and/or notice to Interior Exterior regarding potential problems, issues, defects and/or concerns with Chinese drywall, including, but not limited to:

- A. Observation of strange and suspicious odors in handling the Chinese drywall you sold.

- B. Receipt of reports or complaints of strange and suspicious odors in the Chinese Drywall you sold.

- C. Complaints or reports of high Sulfur and/or Chloride and/or microbial content in Chinese Drywall.

- D. Complaints or reports of high Strontium content in Chinese Drywall.

- E. Complaints or reports of defective Chinese Drywall.

- F. Complaints or reports of copper wire and/or other corrosion associated, or potentially associated, with the installation or use of Chinese Drywall.

- G. Complaints or reports of electrical problems associated, or potentially associated, with the installation or use of Chinese Drywall.

- H. Complaints or reports of HC/VAC and/or other air conditioning problems associated, or potentially associated, with the installation or use of Chinese Drywall.

- I. Complaints or reports of refrigerator or refrigerator coil problems associated, or potentially associated, with the installation or use of Chinese Drywall.

- J. Receipt of notices, warnings or reports from shippers, suppliers, distributors and/or manufacturers regarding problems, or potential problems, with Chinese Drywall.

- K. Whether employees or other agents and/or associates of Interior Exterior may have had suspicious and/or adverse personal experiences with Chinese Drywall.

  L. Whether Interior Exterior performed tests on the Chinese Drywall it was selling.

  M. Interior Exterior's knowledge, understanding and/or expectations about the uses or purposes for the Chinese Drywall it was selling.

  N. Lower cost of the Chinese-manufactured drywall. And/or,

  O. Knowledge and/or suspicions regarding products manufactured in and/or imported from China, including, but not limited to, (i) inspection standards and/or processes (and/or lack thereof); (ii) safety standards (and/or lack thereof); (iii) problems with other products, such as dog food, generic drugs and/or children's toys; and/or (iv) lower costs.

24. Any communications and/or reports of adverse health effects associated with exposure to Chinese drywall.

**D.** **Insurance**

25. Any policies of insurance, including, but not limited to, all CGL, Product Liability, Builder's Risk, D&O, umbrella and/or excess insurance policies relating to claims, and including the following information for each policy;

  a. Insurer;

  b. Dates policy in effect;

  c. Policy Number;

  d. Type of Policy;

  e. Insurance Agent;

  f. Policy Coverage Limits; and

  g. Claims and Coverage issues.

26.     Any claims you have made on any insurance policies relating to your sale, installation, transfer, distribution or shipment of products identified herein, and including the following information for each claim:

      a.    Date;
      b.    Insurer;
      c.    Description of claim; and
      d.    Insurer's response to claim.
      e.    If in litigation:
            i.    Caption of Case; and
            ii.    Name and address of attorneys involved.

## **DOCUMENT REQUESTS**

Pursuant to Rules 30(b)(2) and 34 of the Federal Rules of Civil Procedure, please produce the following:

1.  To the extent not already produced in response to Plaintiff's First Request for Documents and Things, please produce any and all Documents, ESI and/or other communications referencing or relating to the Deposition Topics described herein.

2.  Please produce (and/or identify by specific Bates No if already produced) any and all Documents and/or ESI which You reviewed, referred to, considered, and/or relied upon in responding to the Deposition Topics described herein.