UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL  PRODUCTS LIABILITY LITIGATION ) ) ) ) ) ) ) | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO ALL CASES

**PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY FROM DEFENDANTS AND ESTABLISH A UNIFORM FORMAT OF PRODUCTION**

**INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") respectfully submits this memorandum in support of its motion to compel discovery from all Defendants listed in Exhibit A annexed hereto, upon which the PSC served its First Set of Requests for the Production of Documents and Things, and/or Rule 30(b)(6) Deposition Notices with associated documents requests (collectively "Document Requests") on September 2, 2009.  Since that date, and in the days and weeks leading up to the instant motion, the PSC has made repeated efforts to obtain information and materials responsive to our requests.   While PSC representatives continue to meet and confer with certain Defendants in an effort to reach agreement on various discovery issues, the present motion concerns three significant issues that have severely impacted our ability to conduct discovery in this case and for which the PSC now seeks the Court's assistance to resolve.

First, numerous Defendants have ignored the PSC's requests and this Court's explicit Order requiring parties producing documents to provide privilege logs within 7 days of production.  In many cases, these privilege logs are more than 60 days overdue.  As indicated in the annexed Order Concerning the Production of Privilege Logs (Exhibit B), the PSC requests that the Court order

production of such logs within 5 days or that noncompliant Defendants be required to produce all relevant documents in their possession, including those withheld without identification or explanation.

Second, those Defendants that have produced documents have done so in differing formats and with few exceptions, in a form not readily searchable by the PSC. To avoid this problem, Plaintiffs have proposed a reasonable format of production protocol, which has been agreed to by certain Knauf Defendants and which was proposed to all Defendants on December 7, 2009. To date, only a handful of Defendants have even responded to the PSC proposal and only after the PSC sought an expedited hearing to address discovery concerns on December 18, 2009. To avoid inconsistency, delay, and needless processing expenses, the PSC requests that the Court order a uniform format of production for all Defendants.[1] Plaintiffs have submitted an Order that is substantially similar to the format of production agreement between the PSC and certain Knauf Defendants (annexed hereto as Exhibit C).

Third, certain Defendants have failed to produce any documents at all in response to the PSC's requests. Plaintiffs seek productions from these Defendants as soon as possible.

As a result of Defendants' failure to respond to discovery and/or the PSC's format of production proposals, Plaintiffs have received only limited productions, mostly comprised of electronic images of hardcopy documents from Defendants' files. With few exceptions, the PSC has received no electronically stored information (e.g., Word documents, spreadsheets, or emails),

---

1 For those Defendants that are small, unsophisticated entities (e.g., "Mom-and-Pop" builders and contractors), the PSC is willing to consider alternative formats of production. Indeed, the PSC has recently reached such an agreement with Defendant Mayroux Construction, Inc., which will provide the PSC with a searchable document production. However, the PSC wishes to avoid, as some Defendants have proposed, individual format of production orders for each Defendant, particularly those entities that have the resources and sophistication to provide responsive materials in the format proposed by the PSC. Such a result will create significant delays in both

responsive to their Discovery Requests. Moreover, to the extent Defendants have withheld documents or information from their productions under a claim of privilege, Plaintiffs have no way of identifying what has been withheld or the bases of said privilege.

No Defendant should be permitted to simply ignore valid discovery requests and the orders of this Court. Further, the PSC is concerned that the Defendants at issue may have ESI relevant to the upcoming 2010 trials or may have information that leads to the identification of other witnesses and documents relevant to such trials. To avoid further delay and potential prejudice at trial, we respectfully as the Court to order prompt and complete production of the discovery materials at issue, and as described in further detail herein.

## **PROCEDURAL HISTORY**

On September 2, 2009, the Plaintiffs' Steering Committee ("PSC") served Notices for Corporate Witness Depositions with associated document requests and/or a First Set of Requests for Production of Documents and Things (collectively "Document Requests") on 58 Defendants, including but not limited to manufacturers, suppliers, and builders. The Defendants that have made an appearance in this action and which are at issue in the instant motion, are listed in the annexed Exhibit A. While there was some variation among the Document Requests served on Defendants, they all shared certain definitions and/or specific requests that are at issue in the present motion:

- All Document Requests explicitly requested that Defendants produce electronically-stored information ("ESI") in its native format (e.g., correspondence created using Microsoft Word would be produced as an electronic Microsoft Word file), *see* Exhibit D at 9, ¶ 10 (excerpted Document Request);

- All Document Requests requested that PSC representatives and defense counsel meet and confer concerning any issues relating to the format of production, *see id.*; and

- All Document Requests requested information relating to documents or portions of document withheld by Defendants on a basis of privilege. *See id.* at Definition and

---

the production and review of responsive materials.

Instruction No. 4.

The PSC's Document Requests were ignored by Defendants until the PSC raised concerns about discovery delays at the September 24, 2009 case management conference, at which point the Court ordered the parties to meet on confer on September 25, 2009. At the subsequent meet and confer, the parties generally acknowledged the need to expedite discovery in order to be prepared for a January 2010 trial. While certain areas of disagreement were identified at that time relating to the scope of the PSC's requests, *see infra*, Defendants generally committed to providing written responses to the PSC's requests and commencing production on a rolling basis of non-objectionable documents within 14 business days (by October 9, 2009).

To date, some Defendants have not responded at all, while the majority produced only a small number of documents. *See* Exhibit A. Notably, none of the Defendants produced documents in their native format as requested by the PSC in its Document Requests dated September 2, 2009. Instead, with few exceptions, documents were produced in either hardcopy format or as electronic images of documents (PDFs or TIFFs) without any accompanying text files or load files. *See id.* As a result such documents are not searchable and Plaintiffs incurred substantial expense and delays in processing such productions so that they could be incorporated into a searchable, document database.

On October 14, 2009, and in advance of the October 15, 2009 status conference, the PSC submitted a letter to the Court expressing our concerns over the Defendants' refusal to produce in native format or to agree to a uniform format of production. *See* Oct. 14, 2009 Letter to Hon. Eldon E. Fallon from Leonard A. Davis, Esq. (annexed hereto as Exh. E). At the subsequent hearing on October 15, 2009, Your Honor urged the parties to try to reach agreement on these issues. On October 20, 2009, the parties met again. At that time, many Defendants acknowledged that they

hadn't even collected relevant ESI and were unable to provide production dates. *See* Oct. 22, 2009 Letter to Kerry Miller, Esq. from Leonard A. Davis, Esq., at 2-5 (annexed hereto as Exhibit F). Rather than agree to a uniform format of production, each Defendant proposed to meet individually with PSC representatives to discuss the format and scope of their ESI productions. On October 21, 2009, the PSC again reiterated its request for expedited discovery and that productions be in native format. *See* Oct. 21, 2009 Letter to Kerry Miller, Esq. from Leonard A. Davis, Esq. (annexed hereto as Exhibit G). This letter identified specific PSC representatives that would be available to discuss any issues or concerns Defendants' had about their ESI productions. *See id.* at 3. In its correspondence, the PSC stated that unless outstanding issues were resolved promptly, Plaintiffs would be filing a motion to compel. *See* Exh. F at 6.

On November 11, 2009, the PSC filed a motion to compel that largely related to the issues raised in the instant briefing. That motion was deferred to allow further negotiations. On or about November 18, 2009, PSC representatives and defense counsel for Defendants Knauf (Tianjin) and Knauf (Wuhu) reached agreement in principle on the format of production for those Defendants' productions. This agreement reflected significant compromise by the PSC from its original request for complete native format productions. Once the agreement was finalized, its terms were circulated in a proposed order to the remaining Defendants, with a request that they contact PSC representatives to discuss. *See* Exhibit H (Dec. 7, 2009 Email to Kerry Miller, Esq.). Ten days later, no Defendant—other than Lennar—had contacted the PSC to discuss a format of production, prompting the PSC to seek an expedited hearing on discovery issues on December 18, 2009. As of the filing of this motion, only a handful of Defendants have contacted PSC representatives. Most of these communications occurred only in the last week.[2]

---

2 Most of the Defendants that contacted the PSC were Builder Defendants that have agreed to

While the PSC will continue to negotiate with certain Defendants further delays will only prejudice Plaintiffs at trial. Therefore, the PSC respectfully moves this Court to compel Defendants to produce responsive materials, in the scope and manner described herein.

## ARGUMENT

### I. DEFENDANTS' FAILURE TO PROVIDE A PRIVILEGE LOG FOR THEIR PRODUCTIONS IS A VIOLATION OF FED. R. CIV. P. 26 AND PTO NO. 15

The PSC served its Document Requests on Defendants nearly 4 months ago, yet as of the date of the instant motion and with few exceptions, it has received only meager productions from the majority of the Defendants. *See* Exh. A. Of those Defendants that have made productions, only 5 have provided privilege logs as required under this Court's Pretrial Order No. 15 ("PTO No. 15") entered September 25, 2009.[3] Further, under Federal Rule of Civil Procedure 26(b)(5)(A), a party withholding discovery materials under a claim of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, *will enable other parties to assess the claim*." Fed.R.Civ.P. 26(b)(5)(A)(ii) (emphasis added). To date, Defendants have failed to provide any information regarding withheld materials other than the boilerplate objections included in their Responses and Objections to the PSC's Document Requests, which stated that certain materials may be privileged. Thus, the PSC is not in a position to adequately evaluate or raise a proper challenge to Defendants' claim of privilege. Indeed, the PSC has no way of identifying the materials that have been withheld from production.[4]

---

defer to whatever format of production agreement is reached between Lennar and the PSC. As noted in footnote 1, the PSC has reached a separate agreement with Mayroux Construction.
3 As of the date of the instant motion, those Defendants include the Lennar entities, Mazer Super Discount Stores, South Kendall Construction Co., Taylor Morrison, and Tobin Trading, Inc.
4 For example while some Defendants may assert that inspection reports and/or remediation plans are attorney work-product, it is not clear to the PSC the extent to which Defendants may

Defendants have provided no explanation as to why it has not complied with this Court's Pretrial Order No. 15, in which Your Honor instructed all parties to provide a log for documents withheld under a claim of privilege within 7 days of production. Indeed, Defendants have been silent on this issue, completely ignoring the PSC's repeated requests for this material. *See, e.g.*, Exh. G (Oct. 21, 2009 Letter to Kerry Miller, Esq. from Leonard A. Davis, Esq.). To the extent Defendants are relying on previously raised boilerplate objections, such reliance is inappropriate.

First, Defendants have failed to identify with any specificity what materials have been withheld from their productions. Second, where a party withholds materials from discovery upon a claim of attorney-client privilege, work product, or any other claim of privilege or immunity, that party has the burden of establishing that the materials fall within that privilege. Fed.R.Civ.P. 26; *see also In re Shell Oil Refinery*, 812 F.Supp. 658 (E.D.La. Feb. 1, 1993). The asserting party must adequately substantiate the claim of privilege; a party cannot rely on a blanket assertion of privilege. *Id*. citing *Nutmeg Ins. Co. v. Atwell Vogell & Sterling*, 120 F.R.D. 504, 510 (W.D.La. 1988). Blanket claims of privilege are disfavored. *United States v. El Paso Co.*, 682 F.R.D. 530, 539 (5th Cir. 1982). Courts have found blanket claims of privilege as improper and invalid boilerplate objections. *See*, *e.g. Eureka Finan. Corp. v. Hartford Accidential and Indemnity Co.*, 136 F.R.D. 179, 182 (D.C. Cal. 1991); *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 305 (D.C.N.Y. 1982); *Miller v. Pruneda,* 236 F.R.D. 277, 278 (D.C.A.Va. 2004); *Paulsen v. Case Corp.*, 168 F.R.D. 285 (D.C.Cal. 1996); *Obiajulu v. City of Rochester*, 166 F.R.D. 293 (D.C.N.Y. 1996).

The *Eureka* Court aptly stated:

> Whether a responding party states a general objection to an entire discovery document on the basis of privilege, or generally asserts a privilege objection within an individual discovery response, the

---

have waived a purportedly applicable privilege by sharing inspection reports and remediation plans with a homeowner or third-party vendor.

> resulting "blanket objection" is decidedly improper. This fact should no longer be "news" to a responding party. *Pete, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 541-42 (10th Cir. 1984)(holding that a blanket, non-specific attorney-client work product privilege objection was insufficient and affected a waiver of the privilege); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)(blanket privilege objection is improper); *Kansas-Nebraska Natural Gas Co. v. Marathon Oil, Co.*, 109 F.R.D. 12, 23-24 (D.Neb. 1983)(blanket objection based on privilege, ways to privilege); *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 305 (S.D.N.Y. 1982)(party asserting a privilege objection must specify the evidence to which the privilege applies).

*Eureka,* at 182.

In many cases, Defendants' privilege logs are more than 60 days overdue. As indicated in the annexed Order Concerning Privilege Logs (Exhibit B), the PSC respectfully requests that the Court order production of such logs within 5 days. Where a noncompliant Defendant fails to do so, that Defendant shall be required to produce all responsive documents in their possession, including those previously withheld without identification or explanation. Further, the PSC requests that it be awarded the costs incurred in bringing this motion.

## II.   DEFENDANTS' REFUSAL TO AGREE TO A UNIFORM FORMAT OF PRODUCTION

As noted *supra*, the PSC originally requested that electronically stored information be produced in its native format. Further, it requested that documents existing originally in hardcopy form be produced as electronic images with accompanying OCR and load files so that the information would be searchable within a document database. *See* Exh. D. The benefits of such a production are described more fully in the PSC's Motion to Compel, dated November 11, 2009. However, because the PSC has since agreed to a compromise format of production with certain Knauf Defendants and has proposed a similar protocol to all other Defendants, this discussion will focus solely on the most recent PSC proposal and subsequent negotiations relating to the format of

production.

On or about November 18, 2009, the PSC and counsel for Knauf Tianjin and Knauf Wuhu agreed to a format of production for those Defendants. Important features of this protocol include:

- Documents that existed originally in hardcopy or electronic documents that require redaction will be produced as electronic images with associated text/OCR files so that such materials are searchable by Plaintiffs;

- Certain categories of documents, such as Powerpoint presentations and Excel spreadsheets will be produced in their native format;

- Plaintiffs are provided input into the search terms utilized by Defendant to identify relevant documents without waiving their right to seek additional searches at a later date when more information about the Defendant is known; and

- Plaintiffs may seek production of native format on a document-by-document basis.

Once this agreement was formalized, the PSC embodied it into a proposed order and circulated it to all Defendants on December 7, 2009. *See* Exh. H. In the 10 days that followed, only the Lennar Defendants responded and sought to confer with the PSC on our proposal.[5] Consequently, the PSC sought an expedited hearing on discovery issues on December 18, 2009. Since that time, the PSC has been contacted by a number of Defendants, the majority of whom are builder defendants that indicated they will defer to whatever format of production is agreed to or ordered with respect to Lennar, or other Defendants who have suggested they want a separate agreement from that reached with Knauf Tianjin and Knauf Wuhu.

As discussed *supra* n.1, while the PSC is willing to discuss alternative arrangements with small, unsophisticated entities, to avoid significant expense and delay, it requires a uniform format

---

5 While Lennar and the PSC continue their discussions, there remain significant differences and the PSC does not believe it likely that an agreement will be reached. Additionally, many of the Defendants that contacted the PSC during the last week are builder defendants who have indicated they will defer to whatever format of production is agreed or ordered with respect to Lennar. Therefore, while the PSC appreciates Lennar's willingness to confer on this issue, it includes this Defendant in its motion too compel.

of production order that will apply to the majority of Defendants. Therefore, the PSC requests that the agreement it entered into with Knauf, which is embodied in the order it proposed to all other Defendants on December 7, 2009, should now be entered by this Court. *See* Exh. C. This order reflects significant compromise by the PSC from their original proposal of a full native production. Further, it is largely consistent with standard production formats utilized in large litigations. Moreover, as parties typically maintain documents as searchable electronic files or for litigation purposes, convert their discovery materials into an electronic format, such a protocol should not create undue burden on any Defendants.

As the Court is aware, this litigation implicates a large number of Defendants and third parties, and the Court has set an aggressive trial schedule. The PSC seeks a uniform format of production so that it may conduct discovery in a timely and cost-efficient manner. Further, Plaintiffs should be on a level playing field with Defendants who maintain their documents electronically and have the same search capabilities that such Defendants have when reviewing their own documents. By contrast, the manner in which productions have been made by Defendants thus far has only *diminished* the searchability of electronic documents, as they have been produced largely as electronic images without any text or OCR files. Plaintiffs should not be placed at a disadvantage due to inconsistent and cumbersome production formats. Therefore, the PSC respectfully requests that the Court enter the annexed Order Concerning the Format of Production (Exh. C).

### III.  DEFENDANTS THAT HAVE FAILED TO PRODUCE ANY MATERIALS IN RESPONSE TO PSC DOCUMENT REQUESTS SHOULD BE REQUIRED TO MAKE IMMEDIATE PRODUCTIONS

As indicated in Exhibit A, certain Defendants, including Centerline Homes, Northstar Holdings, Inc., Northstar Homes, Inc., and Rightway Drywall, Inc. have not produced any documents at all. This is incredible, given that the PSC Document Requests were served on

September 2, 2009. The PSC requests that the Court order immediate productions from these Defendants and that the Court award costs incurred in bringing the instant motion.

Case 2:09-md-02047-EEF-JCW   Document 667-2   Filed 12/29/2009   Page 11 of 14

**CONCLUSION**

For all of the foregoing reasons, the PSC respectfully requests that this Honorable Court grant its motion to compel in its entirety and enter the annexed Proposed Orders requiring Defendants to complete their productions as described herein.

Respectfully submitted,

Dated: December 29, 2009

/s/ Leonard A. Davis
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Christopher Seeger (On the Brief)
Jeffrey S. Grand (On the Brief)
SEEGER WEISS, LLP
One William Street
New York, NY 10004
212-584-0700 (phone)
212-584-0799 (fax)
jgrand@seegerweiss.com

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Dawn M. Barrios<br>701 Poydras Street<br>Suite 3650<br>New Orleans, LA  70139<br>PH:  (504) 524-3300<br>Fax:  (504) 524-3313 | Daniel E. Becnel, Jr.<br>425 W. Airline Highway<br>Suite B<br>LaPlace, LA  70068<br>PH:  (985) 536-1186<br>Fax:  (985) 536-6445 |
| Victor M. Diaz<br>25 Flagler Street<br>8th Floor<br>Miami, FL  33130<br>PH:  (305) 358-2800<br>Fax:  (305) 358-2382 | Ervin Amanda Gonzalez<br>255 Aragon Avenue<br>Cora Gables, FL  33134<br>PH:  (305) 476-7400<br>Fax:  305) 476-7444 |
| Ben Gordon<br>316 S. Baylen Street<br>Suite 600<br>Pensacola, FL  32502<br>PH:  (850) 435-7090<br>Fax:  (850) 436-6091 | Hugh P. Lambert<br>701 Magazine Street<br>New Orleans, LA  70130<br>PH:  (504) 581-1750<br>Fax:  (504) 529-2931 |
| Jerrold Seth Parker<br>3301 Bonita Beach Road<br>Bonita Springs, FL  34134<br>PH:  (239) 390-1000<br>Fax:  (239) 390-0055 | Gerald E. Meunier<br>2800 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>Fax:  (504) 528-9973 |
| Christopher Seeger<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>Fax:  (212) 584-0799 | James Robert  Reeves<br>160 Main Street<br>Biloxi, MS  39530<br>PH:  (228) 374-5151<br>Fax:  (228) 374-6630 |
| Scott Weinstein<br>12800 University Drive<br>Suite 600<br>Ft. Myers, FL  33907<br>PH:  (239) 433-6880<br>Fax:  (239) 433-6836 | Bruce William Steckler<br>3102 Oak Lawn Ave.<br>Suite 1100<br>Dallas, TX  75219<br>PH:  (214) 523-6674<br>Fax:  (214) 520-1181 |

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Richard S. Lewis<br>HAUSFELD LLP<br>1700 K Street, N.W Suite 650<br>Washington, DC 20006<br>Phone: (202) 540-7200<br>Fax: (202) 540-7201<br>rlewis@hausfeldllp.com<br><br>Daniel K. Bryson<br>Lewis & Roberts<br>3700 Glenwood Avenue, Suite 410<br>Raleigh, NC 27612<br>Phone: (919) 981-0191<br>Fax: (919) 981-0431<br>dkb@lewis-roberts.com | Jeremy W. Alters<br>Alters, Boldt, Brown, Rash & Culmo, P.A.<br>4141 N.E. 2nd Avenue<br>Suite 201<br>Miami, FL 33137<br>Phone: (305) 571-8550<br>Fax: (305) 571-8559<br>jeremy@abbrclaw.com<br><br>Richard J. Serpe, Esquire<br>Law Offices of Richard J. Serpe<br>Crown Center, Ste. 310<br>580 East Main Street<br>Norfolk, VA 23510-2322<br>rserpe@serpefirm.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 29th day of December, 2009.

        /s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113
PH: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhkc.com