# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : MDL No. 2047<br>:<br>: SECTION: L<br>: JUDGE FALLON<br>: MAG. JUDGE WILKINSON |
| _____ | : |
| THIS DOCUMENT RELATES TO: | :<br>: |
| Hinkley, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al., Case No. 09-06686 (E.D.La.) | :<br>:<br>: |

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action on behalf of themselves and all other similarly situated owners and/or residents of real properties in the United States containing defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin, Co. Ltd. ("Taishan"). Plaintiffs also bring this action on behalf of subclasses consisting of all owners and/or residents of real properties in the state of North Carolina containing Taishan's defective drywall that was exported, imported, distributed, delivered, supplied, inspected, marketed, installed, and/or sold by Defendants Tobin Trading Inc. ("Tobin"), Venture Supply Inc. ("Venture"), and/or The Porter-Blaine Corp. ("Porter-Blaine"). In support thereof, Plaintiffs state as follows:

**JURISDICTION, PARTIES, AND VENUE**

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act. Plaintiffs and Defendants are citizens of

different states and the amount in controversy of this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.     Should the Court not have original jurisdiction over any claim or claims under CAFA, this Court can exercise supplemental jurisdiction under 28 U.S.C. §1367 over the claims because they are derived from the same nucleus of operative facts such that plaintiffs would ordinarily expect to try them in one proceeding.

3.     Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2)  and (c) because a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to the claims occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.  Venue is otherwise appropriate in this district consistent with JPML's consolidation of MDL.

## PLAINTIFFS

4.     Plaintiffs Curtis and Lynn Hinkley, citizens and residents of Pasquotank County, North Carolina, and Stephanie Hinkley-Lopez, a citizen and resident of Perquimans County, North Carolina, together own a home located at 156 Mulberry Lane, Hertford, Perquimans County, North Carolina.

5.     Upon information and belief, the Hinkley's home was built and/or had drywall installed by Defendant Porter-Blaine and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan, Tobin and/or Venture.

## DEFENDANTS

6.     Defendant Taishan is a foreign corporation doing business in the United States.

2

7.      Defendant Taishan designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case.

8.      Upon information and belief, Taishan is controlled by the Beijing New Building Materials Public Limited Co., which is a state-owned entity and respectively controlled by the Chinese government.

9.      To the extent Taishan is deemed a foreign sovereign entity, Plaintiffs bring claims against Taishan pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.  Plaintiffs allege that the claim is based upon Taishan's commercial activities carried on in the United States.  The claim also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

10.     Defendant Tobin is a Virginia corporation doing business in the State of North Carolina with its principal place of business located at 5008 Gatehouse Way, Virginia Beach, Virginia, 23455.

11.     Tobin is run by Philip W. Perry who was responsible for brokering deals between the Chinese drywall manufacturer Taishan, and Venture Supply Company.

12.     It is upon information and belief that Tobin specifically brokered the deal with knowledge and purpose that the drywall would be sold and installed in North Carolina.  In fact, it is upon information and belief that Tobin in fact intended for the drywall to be used in North Carolina.

3

13.     Defendant Tobin brokered and/or negotiated the transaction(s) responsible for the ultimate distribution, delivery, supply, marketing, and/or sale of the defective drywall at issue in this case.

14.     Defendant Venture is a Virginia corporation doing business in North Carolina with its principal place of business located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

15.     Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members.  Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiff and Class Members.

16.     Defendant Porter-Blaine is a Virginia corporation doing business in North Carolina and is located at 1140 Azalea Garden Rd, Norfolk, Virginia, 23502.

17.     Porter-Blaine, which shares an address with Venture, is one of Venture's drywall installation contractors.  Upon information and belief, Porter-Blaine installed defective drywall in Plaintiffs' home, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein.

18.     At all times herein mentioned, each of the Defendants was acting in concert with one another and was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiffs and Class Members.

4

## GENERAL ALLEGATIONS

19.     Upon information and belief, Defendants' drywall contains gypsum.

20.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.  This action seeks damages from Defendants for their joint and several acts and/or omissions.

21.     Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

22.     Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

23.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' homes, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall.

24.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes and/or

caused personal injury resulting in eye irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

25.     As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm and/or personal injury.

26.     As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.  These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

27.     As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and the Class Members have been exposed to toxic gases, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair of their home, of their home contracts, emergency/corrective notice, environmental testing and monitoring, and/or medical monitoring.

## CLASS ACTION ALLEGATIONS

28.     Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2),

(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the

following Class and Subclasses comprised of:

**Class Definition:**

All owners and/or residents of real properties located in the United
States containing defective Chinese drywall manufactured, sold,
distributed, and/or supplied by Taishan Gypsum Co. Ltd.

**Tobin Trading Inc. Subclass Definition:**

All owners and/or residents of real properties located in the State
of North Carolina containing Taishan Chinese drywall that was
brokered or whose purchase was negotiated by Tobin Trading Inc.

**Venture Supply Inc. Subclass Definition:**

All owners and/or residents of real properties located in the State
of North Carolina containing Taishan Chinese drywall that was
sold, distributed, and/or supplied by Venture Supply Inc.

**Porter-Blaine Subclass Definition:**

All owners and/or residents of real properties located in the State
of North Carolina containing Taishan Chinese drywall that was
built and/or installed by Porter-Blaine Corp.

29.     The following Persons shall be excluded from the Class: (1) Defendants and their

subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be

excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this

case is assigned and any immediate family members thereof.

30.     Upon information and belief, the Defendants' defective and unfit drywall was

installed in at least hundreds of homes in the United States.  Therefore, the Class and Subclasses

are sufficiently numerous such that the joinder of all Class and Subclass members in a single action is impracticable.

31.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class and Subclasses.  Among these common questions of law and fact are the following:

a.      whether Defendants' drywall products that release sulfide and other noxious gases are defective and/or unfit for their intended purpose;

b.      whether Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold, and/or installed defective drywall products;

c.      whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

d.      whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

32.     The legal claims of named Plaintiffs are typical of the legal claims of other Class and Subclass Members.  Named Plaintiffs have the same legal interests and need for legal remedies as other Class and Subclass Members.

33.     The named Plaintiffs and each member of the Class and Subclasses have defective and unfit drywall in their homes.  Due to the drywall in named Plaintiffs' and Class and Subclass Members' homes, each have suffered damages and the need for injunctive and equitable relief, as set forth herein.

34.     Named Plaintiffs are adequate representatives of the Class and Subclasses and, together with their legal counsel, will fairly and adequately protect the interests of the Class and Subclasses.  Named Plaintiffs have no conflict with the Class and Subclasses and are committed to the vigorous prosecution of this action.

35.     The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products.  Counsel will fairly and adequately protect the interests of the Class and Subclasses.

36.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass members that would establish incompatible standards of conduct for the party opposing the Class and Subclass; or adjudications with respect to individual Class and Subclass members that, as a practical matter, would be dispositive of the interests of the other Class and Subclass members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

37.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the Class and Subclasses, so that final injunctive relief is appropriate respecting the Class and Subclasses as a whole.

38.     A class action is superior to other methods of dispute resolution in this case.  The Class and Subclass members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.  It is highly desirable to concentrate the

9

resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class and Subclass members would protect their rights on their own without this class action case.  Management of the class will be efficient and far superior to the management of individual lawsuits.

39.     The issues common to the Class and Subclass members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4) as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

40.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

41.     Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall, including a duty to adequately warn of their failure to do the same.

42.     Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

43.     Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

44.     Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of

reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs and Class Members.

45.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

46.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT II
## NEGLIGENCE PER SE
## (Against All Defendants)

47.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

48.     Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall.

49.     Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall.

50.     Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).  Defendants, through the exercise of

11

reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

51.     Defendant failed to provide drywall under USBC § 112.3, 113.5.

52.     Since the Chinese drywall was manufactured in China and did not contain the proper listing, label or certification it is no compliant with ASTMC 36, C1395, E119 and other related standards.

53.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

54.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

### COUNT III
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (All Defendants)

55.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

56.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

57.     At the times Defendants installed, utilized, supplied, inspected, sold, and/or installed this drywall for use in the Plaintiffs' and Class Members' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' and Class Members' homes for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

58.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

59.     The drywall was defective and not merchantable because it was unfit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for use as a building material, because it contained defects as set forth herein.

60.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' and Class Members' homes as a building material) due to the defects set forth herein.

61.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

62.     As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT IV
## PRIVATE NUISANCE
### (Against All Defendants)

63.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

64.     The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

13

65.     Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

66.     Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

67.     The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

68.     Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

69.     As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT V
## UNJUST ENRICHMENT
### (All Defendants)

70.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

71.     Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

72.     Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

73.     Defendants, by the deliberate and tortious conduct complained of herein, have

been unjustly enriched in a manner which warrants restitution.

**COUNT VI**
**VIOLATION OF CONSUMER PROTECTION ACTS**
**(AGAINST TAISHAN ONLY)**

74.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

75.     This is an action for relief under the various Consumer Protection Acts of the

jurisdictions in which affected properties are present, including but not limited to, Louisiana,

Alabama, North Carolina, Florida, Virginia, Texas, and Mississippi. *See* L.SA-R.S. 51:1401, *et*

*seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1,

*et seq.*,  (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq* (North Carolina

Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices

Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com.

Code Ann. § 17.41, *et seq* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss.

Code Ann. §75-24-1, *et seq.* (Mississippi Consumer Protection Act).

76.     The Defendant's acts and omissions as well as their failure to use reasonable care

in this matter as alleged in this complaint, including but not limited to, the knowing

misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients,

standards and quality of defective drywall constitute violations of the aforementioned Consumer

Protection Acts.

77.     Plaintiffs and Class Members have suffered actual damages as a result of

Defendants' violation of the aforementioned Consumer Protection Acts and are entitled to relief.

78.     As a direct and proximate cause of Defendant's violation of the aforementioned Consumer Protection Acts, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT VII**

**VIOLATION OF THE NORTH CAROLINA CONSUMER PROTECTION ACT**
**(Tobin, Venture, and Porter-Blaine Only)**

79.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

80.     This is an action for relief under North Carolina law G.S. § 75-1.1, *et seq.*, pursuant to the North Carolina Consumer Protection Act.

81.     North Carolina law provides a claim for unfair trade practices and when the defendant committed an unfair deceptive act, the act in question was in or affecting commerce and proximately caused injury to Plaintiffs.  G.S. § 75-1.1

82.     The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the aforementioned provisions of the North Carolina Consumer Protection Act.

83.     Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of the North Carolina Consumer Protection Act and are entitled to relief.

84.     As a direct and proximate cause of Defendants' violations of North Carolina's Consumer Protection Act, Plaintiffs and Class Members have incurred harm and damages as described herein.

## <u>COUNT VIII</u>
## EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING
### (All Defendants)

85.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

86.    Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

87.    Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, remediate, and/or repair the Plaintiffs' and members of the class' homes.

88.    Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1)  to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or  in the alternative, remediate, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program.

89.    Until Defendants' defective drywall has been removed, Defendants should provide continued environmental and air monitoring in Plaintiffs' and Class Members' homes.

17

90.     Plaintiffs and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result.

91.     The sulfides and other noxious gases which have been released from Defendants drywall and to which Plaintiffs and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

92.     Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

93.     Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

94.     The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the defective and unfit drywall.

95.     As a proximate result of their exposure to sulfide and other noxious gases from Defendants' defective and unfit drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

96.     Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

97.     The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

18

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

      a.   an order certifying the case as a class action;

      b.   an order appointing Plaintiffs as the Class Representatives of the Class;

      c.   an order appointing undersigned counsel and their firms as counsel for the Class;

      d.   compensatory and statutory damages;

      e.   pre and post-judgment interest as allowed by law;

      f.   injunctive relief;

      g.   an award of attorneys' fees as allowed by law;

      h.   an award of taxable costs; and

      i.   any and all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

19

Respectfully submitted,

**Dated: December 30, 2009**                /s/ Arnold Levin _____
                                            Arnold Levin, Esquire
                                            Fred S. Longer, Esquire
                                            Daniel Levin, Esquire
                                            Matthew C. Gaughan, Esquire
                                            LEVIN, FISHBEIN, SEDRAN & BERMAN
                                            510 Walnut Street, Suite 500
                                            Philadelphia, PA 19106
                                            Phone: (215) 592-1500
                                            Fax: (215) 592-4663
                                            *Co-counsel for Plaintiffs*

                                            Richard Serpe, Esquire
                                            LAW OFFICES OF RICHARD J. SERPE
                                            Crown Center, Suite 310
                                            580 East Main Street
                                            Norfolk, VA 23510-2322
                                            Phone: (757) 233-0009
                                            Fax: (757) 233-0455
                                            *Counsel for Plaintiffs*

                                            Michael D. Hausfeld, Esquire
                                            Richard S. Lewis, Esquire
                                            James J. Pizzirusso, Esquire
                                            Faris Ghareeb, Esquire
                                            HAUSFELD LLP
                                            1700 K Street, N.W., Suite  650
                                            Washington, DC 20006
                                            Phone: (202) 540-7200
                                            Fax: (202) 540-7201
                                            *Co-counsel for Plaintiffs*

                                            Richard W. Stimson, Esquire
                                            Attorney at Law
                                            920 Waters Reach Court
                                            Alpharetta, Georgia 30022
                                            Phone: 214-914-6128
                                            *Co-counsel for Plaintiffs*

Robert Gary, Esquire
GARY, NAEGELE & THEADO, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*