1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
2

3    ****************************************************************

4    IN RE: CHINESE-MANUFACTURED
     DRYWALL PRODUCTS LIABILITY
5    LITIGATION
                              CIVIL DOCKET NO. MDL 2047 "L"
6                             NEW ORLEANS, LOUISIANA
                              FRIDAY, DECEMBER 4, 2009, 9:00 A.M.
7    THIS DOCUMENT RELATES TO
     09-6687, GERMANO V TAISHAN
8    GYPSUM CO., LTD.

9    ****************************************************************

10               TRANSCRIPT OF ORAL ARGUMENT PROCEEDINGS
            HEARD BEFORE THE HONORABLE ELDON E. FALLON
11               UNITED STATES DISTRICT JUDGE

12
     APPEARANCES:
13

14   FOR THE PLAINTIFF:        HERMAN HERMAN KATZ & COTLAR
                               BY:   LEONARD A. DAVIS, ESQUIRE
15                             820 O'KEEFE AVENUE
                               NEW ORLEANS LA  70113
16
                               LEVIN, FISHBEIN, SEDRAN & BERMAN
17                             BY:  FRED S. LONGER, ESQUIRE
                               510 WALNUT STREET, SUITE 500
18                             PHILADELPHIA, PENNSYLVANIA 19106-3697

19
     FOR THE DEFENDANT:        SINNOT NUCKLOS & LOGAN
20                             BY:  KENNETH F. HARDT, ESQUIRE
                               MARK C. NANAVATI, ESQUIRE
21                             13811 VILLAGE MILL DRIVE
                               MIDLOTHIAN VA  23114
22

23   OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                  500 POYDRAS STREET, ROOM B406
24                                NEW ORLEANS LA  70130
                                  (504) 589-7779
25   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.

1                             **I N D E X**

2

SPEAKERS                                                        PAGE

3

4   MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL................   3
    MR. HARDT...............................................   4
5   THE COURT...............................................   9
    MR. HARDT...............................................   9
6   THE COURT...............................................  11
    MR. HARDT...............................................  12
7   MR. LONGER..............................................  15
    MR. HARDT...............................................  22
8   THE COURT...............................................  26
    PLAINTIFF'S MOTION TO COMPEL DISCOVERY..................  30
9   MR. DAVIS...............................................  30
    MR. HARDT...............................................  32
10  MR. DAVIS...............................................  32
    MR. HARDT...............................................  32
11  MR. DAVIS...............................................  33
    THE COURT...............................................  33
12  ELECTRONICALLY STORIED INFORMATION.....................  33
    MR. DAVIS...............................................  33
13  MR. HARDT...............................................  33
    MR. DAVIS...............................................  37
14  THE COURT...............................................  37
    MR. DAVIS...............................................  38
15  THE COURT...............................................  38
    MR. HARDT...............................................  38
16  THE COURT...............................................  39
    JURISDICTIONAL ISSUE....................................  40
17  THE COURT...............................................  40
    MR. HARDT...............................................  41
18  THE COURT...............................................  42
    MR. HARDT...............................................  43
19  THE COURT...............................................  44
    MR. HARDT...............................................  44
20  THE COURT...............................................  45
    MR. HARDT...............................................  45
21  THE COURT...............................................  47
    MR. DAVIS...............................................  47
22  THE COURT...............................................  48
    MR. HARDT...............................................  48
23  THE COURT...............................................  49
    MR. HARDT...............................................  49
24  THE COURT...............................................  50
    MR. DAVIS...............................................  50

25

1                      **P-R-O-C-E-E-D-I-N-G-S**

2                   M O R N I N G   S E S S I O N

3                   FRIDAY, DECEMBER 4, 2009

4                   (COURT CALLED TO ORDER)

5

6

7          THE DEPUTY CLERK:  All rise.

8          THE COURT:  Be seated, please.  Good morning.  Call the

9  case, please.

10         THE DEPUTY CLERK:  MDL 2047, *In Re: Chinese Drywall*.

11         THE COURT:  Would counsel make their appearance for the

12  record, please.

13         MR. DAVIS:  Good morning, Your Honor.  On behalf of the

14  Plaintiffs Steering Committee, Leonard Davis and Fred Longer.

15         THE COURT:  Okay.

16         MR. HARDT:  Good morning, Your Honor.  On behalf of

17  Venture Supply, Inc., and the Porter-Blaine Corporation, my name

18  is Kenneth Hardt.

19         THE COURT:  Welcome to the Court, sir.

20         MR. HARDT:  Thank you.  It's a pleasure to be here.

21         THE COURT:  I have a number of people on the phone and,

22  of course, in the audience.  I have before me three motions that

23  I'll take up, and also there was an objection filed on another

24  matter, and I'll discuss that with counsel, too.

25              First, the Motion to Disqualify Plaintiffs'

1   Counsel.  I have received the briefings on that.  The defendant

2   takes the position that there is an innate conflict between and

3   among plaintiffs' counsel because there is a defined fund and

4   that this presents a conflict for plaintiffs' counsel to

5   represent individual claimants as well as the class.  I'll hear

6   from the moving party.

7           MR. HARDT:  Yes, Your Honor.  If it please the Court, I

8   understand Your Honor is going to take up our objection to this

9   hearing.

10          THE COURT:  At least I'll discuss them with you, sure.

11          MR. HARDT:  Thank you, Your Honor.  Just for the record

12  I wanted to note that.

13              On the Motion to Disqualify, Your Honor, this is

14  not something that I'm comfortable bringing up.  It's not

15  something that I do in my practice.  I don't make it a practice

16  to move to disqualify counsel.  I truly believe that's a matter

17  between counsel and the bar association.

18              In fact, I've talked with my colleagues.  It's one

19  of those situations where you might not like what you ask for.

20  Right now I'm dealing with one counsel on 50, 60 some odd cases.

21  If my Motion to Disqualify is successful, I may have to deal with

22  50 or 60 individual counsel, and I'm not sure that's something I

23  want either.

24              We're dealing with ethics, Your Honor, and as the

25  *Tessier* decision, which has been cited by both parties, says,

1    It's really the duty of counsel, lawyers that practice before the

2    Court and actually the Court itself to look into ethical matters

3    that have been raised, and that's really the only reason we're

4    here.

5             Your Honor is aware of the background that's in our

6    briefs, but the plaintiffs' counsel filed the *Germano* class

7    action, which was an action on behalf of all citizens of the

8    Commonwealth of Virginia.  They then filed the *Hinkley* class

9    action, which was a class action on behalf of all the citizens in

10   North Carolina, in the state of North Carolina.

11            Then they filed an individual state court action,

12   the *Colleen Nguyen* action, in the state court in Norfolk,

13   Virginia.  When they did that, I kind of scratched my head.  I

14   said, Well, we've got a situation where you're representing

15   everybody on behalf of everybody supposedly affected by the

16   drywall in Virginia, and you're representing everybody in

17   North Carolina too, but now you've got an individual state court

18   plaintiff that is suing us for $2 million.  Is she not part of

19   the class action?  Why is she just separate from the class

20   action?  It just kind of -- just conceptually I didn't understand

21   how you could file a suit on behalf of everybody in Virginia and

22   then just file a separate individual state court action suit.  So

23   that popped into my head.

24            Then in discussing with my co-counsel and counsel

25   for Tobin Trading we thought, Well, wait a minute, they are all

1    seeking whatever funds are available from Venture and

2    Porter-Blaine, and can they do this?  And the Virginia State Bar

3    has this wonderful program.  It's an informal ethics opinion

4    program.  If you're a member of the bar of Virginia, you can call

5    this.  You can call and ask for advice and say, you know, Here is

6    the situation.  Here is the facts as I know them.  Is there a

7    situation here?

8                    So we called them up and we presented a question to

9    them.  We said, Can counsel represent members of the class action

10   and individual state court plaintiffs when there may just be a

11   limited fund available?  The response was -- and, again, this is

12   an informal opinion.  It's not formal.  It's not binding.  It's

13   not really a statement of the bar of Virginia that this is what's

14   going on, but their informal opinion was, yeah, there is a

15   conflict here, and it's not one that can be resolved by consent.

16                   So the response was, Is this a reportable thing?

17   Do we need to report this?  Because, you know, again, we're just

18   doing this to satisfy whatever ethical obligations we have with

19   the State bar.  They said, No, that the proper course would be to

20   file a motion to disqualify the cases in which counsel are

21   counsel of record.

22                   So we took that information and we provided it to

23   the plaintiffs.  We said, Look, Counsel, this is what we asked

24   the Bar.  This is the response we got.  Why don't you seek, you

25   know, seek advice from the Bar?  The response we got was, No,

1   we're comfortable ourselves.  We're not going to seek advice from

2   the Bar.  We think we're okay, which placed us in a position

3   where we had sought an informal opinion.  I'm certainly not an

4   expert on ethics, but, you know, I seek informal opinions, they

5   tell us there is an situation here.  They tell us what the

6   solution is.  The plaintiff's counsel is telling us they are not

7   going to do anything further; therefore, we filed the Motion to

8   Disqualify, and that's kind of how we got here procedurally.

9   Again, it's not something that I'm comfortable with proceeding

10  with.

11          The issues have been briefed, Your Honor.  All of

12  the case law that's been cited.  And, frankly, the cases really

13  don't disagree that have been cited by counsel for the plaintiffs

14  or counsel for defendants.

15          The real question is under Rule 1.7 of the rules of

16  the Virginia State Supreme Court, and the interpretation of that

17  rule under Comment 19.  Rule 1.7 says, "If there is a significant

18  risk that the representation of one or more clients might be

19  materially limited by responsibility to other clients, that

20  presents a conflict situation; however, under 1.7, that can be

21  waived by getting written consent of clients."

22          First of all, I don't believe there is any

23  suggestion here that there has been written consent obtained by

24  any of the plaintiffs.  But to go on, Comment 19 kind of

25  interprets that and says, "If an independent counsel looking

1    objectively at the situation would advise your client, no, that
2    this isn't a good idea, then you can't go and ask your client for
3    that written consent for the waiver."  That's the process you
4    need to look to.

5              So in determining whether representing more than
6    one clients, where there may be a problem between representing
7    them all, the issue is whether you can go to your client and seek
8    consent for that, to waive that apparent conflict, and if an
9    independent, objective attorney looking at the situation would
10   say, No, that's not a good idea, I don't think that's a good
11   idea, then you can't go ask your client for the consent.  There
12   is -- it can't be waived by consent, so actually, the rule and
13   the case law that we've cited supports the informal opinion that
14   we got from the state bar.  But again, the briefs cover the
15   issue.

16             We don't believe, frankly, that an independent,
17   objective lawyer looking at the situation could say, Yes, it's
18   okay for these counsel to represent the numerous individual state
19   court plaintiffs that they have in what are now three class
20   actions.  We've got the *Germano* class action, which I'm really
21   not sure the status of it.  It's either on behalf of everybody in
22   Virginia -- well, as far as my client, it's on behalf of
23   everybody in Virginia.  We've got the *Hinkley* class action, which
24   is on behalf of everybody in North Carolina.  Now we've got the
25   *Gross* class action, which is apparently on behalf of everybody in

1　the world or everybody in the United States -- I'll put it that

2　way -- against my client.

3　　　　　So we've got three separate class actions, and

4　we've got -- I'll show the Court in a minute. I'm going to

5　supplement the record as far as the number of the state court

6　actions, but we have 54 individual state court actions that are

7　pending in Virginia. They are all seeking whatever pile of money

8　there is available to satisfy everybody.

9　　THE COURT: How does that work from the standpoint of

10　the MDL? Because in addition to what you have, I have least a

11　thousand, if not more cases. It looks like I have 18 states

12　involved, I have maybe 32 class actions involved, and yet, I have

13　the same people on the committee who either represent all of

14　those individuals or some of those individual class actions. How

15　do you square your argument with the MDL process?

16　　MR. HARDT: Well, Your Honor, frankly, the MDL process

17　is something new. I'm a construction lawyer from Virginia, and I

18　don't envy what Your Honor has in front of you and is faced with.

19　I am not moving to disqualify the plaintiff steering committee.

20　　　　　This is solely related to the *Germano* class-action

21　suit as far as it concerns this Court, and the Hinkley

22　class-action suit also. Those two class-action suits. It only

23　relates to their representation of those folks.

24　　　　　In the *Germano* action, their Motion to Disqualify,

25　we filed it based on Virginia -- the Rules of Professional

1    Conduct in Virginia because that was a Virginia action.   These

2    attorneys represented the plaintiffs in the *Germano* class action

3    and some 54 individual state court plaintiffs.

4             So the Motion to Disqualify is not directed at the

5    plaintiff steering committee.   It's not directed at the whole

6    slew of attorneys that represent the plaintiffs before the MDL.

7    It's just can these counsel represent the individuals that are

8    represented in the *Germano* class action?   That's it.   It has

9    nothing to do with the PSC.   It has nothing to do with their

10   representation of the thousands of other cases that are pending

11   in 18 other states.   It the only has to do with *Germano*.

12             THE COURT:   Of course, they are on the steering

13   committee, though.

14             MR. HARDT:   But again, this only relates to the *Germano*

15   class action, Your Honor.   If they are disqualified from

16   representing the members of the *Germano* class action, that has

17   nothing to do with whether they represent other plaintiffs that

18   may satisfy this Court.   They are -- they should be -- and

19   members of the PSC.   It's not directed at that.

20             THE COURT:   Okay.

21             MR. HARDT:   The question, I guess, it's not just the

22   limited fund -- I'll talk about that in a minute -- but the

23   question is when you represent individual state court plaintiffs

24   and you represent class-action plaintiffs, who goes first?   Do

25   you press forward with your state court action to get the relief

1   that those people want immediately, the same as *Nguyen?*
2   *Colleen Nguyen*, she's the first plaintiff who filed an individual
3   state court action.  Do you tell her that you didn't file suit
4   against Taishan because none of the individual state court
5   actions joined the manufacturer as the defendant; although, they
6   tell us in the MDL, Taishan is a very important party who may
7   come in with tons and tons of money.
8              None of the 54 individual state court actions have
9   filed suit against Taishan.  Have you gone to those clients and
10  explained that to them and told them that a viable defendant may
11  not be in?  Have you explained to the class action defendants,
12  look, I can file a state court action and get it resolved
13  probably in six months if I get a bench trial.  Let's get it
14  resolved now.
15         THE COURT:  Some of the areas that you focused on,
16  though, deals with litigation involving one or two cases.  I just
17  got more or less through dealing with the *Vioxx* MDL action.  I
18  had representatives from 50 states in that litigation.  I had
19  cases from all 50 states.  In addition to that, I had
20  50,000 cases in various class actions, 42 class actions that came
21  into that case.  There are multiple roles that the attorneys
22  occupy.  Some of them represented people in state court, and they
23  tried cases in state court.  They also tried cases in the MDL.
24  The courts have to some extent passed on some of the issues you
25  raised in that context.  If you're looking at it in one context,

1    it may be different than looking at it in another context.

2            I don't know how you deal with it with the MDL with

3    which I am focused on.  I've got the MDL litigation here

4    involving actions in about 18 states that have been referred to

5    me from various federal courts.  In addition, I have state judge

6    colleagues with whom I'm working in Virginia, in Florida, and in

7    Alabama, and we're trying to coordinate this massive litigation.

8            There are attorneys who are representing people in

9    each of these.  It doesn't work to be disqualifying them in that

10   type situation.  If I did what you ask I would have no lawyers

11   representing anybody.  I would have a group of lawyers who

12   absolutely had no clients.

13       MR. HARDT:  I understand.  Again, I don't envy the

14   position this Court is in.  I understand that this Court has to

15   deal with a number of these issues.  The issues that we have

16   raised in our Motion to Disqualify was actually filed before this

17   case got transferred to the MDL.  It actually was going to be

18   heard in the Eastern District of Virginia, I guess, three days

19   before the transfer order was actually entered.  We had filed

20   similar pending motions in the state court action because

21   basically we were told file it, file the Motion to Disqualify in

22   actions in which these counsel appear of record.

23           The issue that we have to resolve or the issue on

24   behalf of my clients, and really on behalf of my duties -- again,

25   I don't want to be here doing this, but --

1        THE COURT:  Sure.  No, I understand.

2        MR. HARDT:  -- but the issue that I need to address as

3   far as the Virginia State Bar considerations and my ethical

4   obligations is can an attorney in these situations represent so

5   many multiple people, all seeking whatever funds there are

6   available?  That's the position we were in, Your Honor.

7        THE COURT:  Let me hear from your opponent.  I'll give

8   you an opportunity.  Both of you have written extensive briefs.

9   I've had an opportunity to review the briefs and read the cases

10  that you've cited, so I am familiar with the issue.

11       MR. HARDT:  Your Honor, if I may supplement the record

12  first.

13       THE COURT:  Yes.

14       MR. HARDT:  First of all, Your Honor -- and I've

15  provided these to counsel for the plaintiff -- the first is an

16  updated list of all the individual state court actions.  As I

17  mentioned, it's 54.  If I may approach.

18            The second, this all goes to the limited fund issue

19  as we indicated in our brief.  I'm really not coverage counsel.

20  I don't get involved in coverage counsel whether it's the

21  260 million they say or whether it's the -- I calculated

22  132 million or whether it's what the insurance company says,

23  which is zero, there is still a limited fund no matter what.

24            This is an action in which plaintiff's counsel are

25  not plaintiff's counsel.  It's the *Proto* v *The Futura Group* case

1   pending in the Circuit Court for the City of Virginia Beach.  It

2   seeks 660,000 and plus damages against my clients.  Actually,

3   just against Venture Supply.

4            Then, finally, Porter-Blaine Corporation.

5   Actually, this is another case in which the plaintiffs are not

6   counsel, but, again, it goes to the limited fund issue.  This is

7   the same *James Development Corporation v Long Island Wallpaper*

8   case.  It's pending in the Supreme Court of the State of

9   New York, Nassau County.  It's filed by the builder against

10  Venture Supply and it seeks 250,000 plus damages.

11           THE COURT:  Thank you.

12           MR. HARDT:  Then finally, Your Honor, this is an

13  arbitration proceeding.  This is actually kind of what started

14  the ball rolling against my client, Venture Supply and

15  Porter-Blaine.  This is an arbitration claimed by Dragas

16  Management Corporation against Porter-Blaine Corporation in the

17  amount of $5.5 million.

18           THE COURT:  Okay.

19           MR. HARDT:  Then finally, Your Honor, I've got an

20  affidavit from Mr. Sam Porter.  I've provided this this morning

21  to counsel for the plaintiffs.  I've told them before by phone

22  that this -- we were going to be providing this information.  I

23  didn't get it until fax (sic) yesterday.  I'm providing that.

24  It's an affidavit which basically shows that my client,

25  Venture Supply, Inc., and the Porter-Blaine Corporation have been

1    out of business since June of 2009, have no assets, and basically

2    are on the verge of bankruptcy.

3              Thank you, Your Honor.

4         THE COURT:  Thank you very much.

5         MR. LONGER:  Good morning, Your Honor.  Fred Longer on

6    behalf of the plaintiff steering committee, and I guess on behalf

7    of myself, Arnold Levin, Irvin Gonzales, Richard Serpe,

8    Richard Lewis, all members of the plaintiff steering committee

9    that was appointed by Your Honor.  The movants here have moved to

10   disqualify us.  We don't take that lightly, and the case law

11   requires that you not take it lightly either.

12              I would start out just to finish up what just got

13   introduced into the record.  There was a number of papers that

14   were just submitted by counsel opposite.  My position on all of

15   this is that it as the moving parties, they were obliged when

16   filing their motion to actually present evidence to the Court.

17   They failed to do that, and only today, at oral argument, are

18   they now putting into the record evidence which, quite honestly,

19   had they produced long ago, we might have be able to take

20   discovery of, we might have been able to depose Mr. Porter; for

21   example, his affidavit just came in, et cetera.  So I object to

22   the late introduction of evidence trying to backfill a record

23   that should have been created at the onset as opposed to today.

24              Having said that, Your Honor, Your Honor raised

25   some very important points about what has become a modern

1   practice of MDL reality within the United States federal courts.

2   The reality that Your Honor faces and that we on the plaintiff

3   side have been facing for a number of years is that we represent

4   both individual clients and we represent class actions.  It has

5   always been the case, as far as I know, that there is nothing

6   unethical or improper about that, and I intend to go through some

7   matters with Your Honor to firm that up.

8           I would tell you something that I know you already

9   know, which is that Arnold Levin and I practice in Philadelphia.

10  The Eastern District of Pennsylvania has been one of the leading

11  districts of class-action litigation over the past quarter

12  century or more.  Some of the finest minds, I believe, have come

13  out of Philadelphia, Herbert Newberg, for example, David Berger.

14          One of the leading jurists in the Eastern District

15  of Pennsylvania was Judge Higginbotham.  Judge Higginbotham was

16  the former chief justice of the Third Circuit Court of Appeals.

17  When he was a district judge, before he was elevated to the Third

18  Circuit, he authored an opinion by the name of *Umbriac v American*

19  *Snacks, Incorporated*.  I have it here.

20          I would like to read into the record what

21  Judge Higginbotham said at the district court level, which is,

22  "It is in the nature of the motion practice on class

23  determination issues that defendants who naturally have no

24  interest in the successful prosecution of the class suit against

25  them are called upon to interpose arguments in opposition to

1    class determination motions verbally grounded upon a certain for

2    the best representation for the class while the implicit, but

3    nonetheless real, objective of their vigorous legal assaults is

4    to ensure no representation for the class. "

5          Your Honor, I'm sure that counsel opposite was

6    acting in their best interests and my clients' best interests

7    when they sought an informal legal opinion from the Virginia Bar

8    Association, but the reality is is that motions to disqualify are

9    recognized as rife with abuse, and what we are facing is a motion

10   which is based on pure speculation, pure hypothetical, pure

11   guessing.

12         I counted in the defendant's motion the number of

13   *if's*, the word *if*.  There were ten in the opening motion alone.

14   It's just complete guessing that there is a conflict here.  The

15   standard in this litigation is there has to be an actual

16   conflict, not supposed, not I wish, an actual conflict.  *If*

17   doesn't cut the mustard.  There were ten of them.

18         Having said that, going back to the

19   Eastern District of Pennsylvania, we have been involved in a

20   number of litigations, and one of the leading cases in the Third

21   Circuit now and, frankly, in the United States, on multiple

22   representation is the *Lazy Oil* case, which my partner

23   Howard Sedran was counsel of record.

24         That was a class action where our class

25   representative plaintiff objected to the settlement.  My partner

1    was faced with a client who was objecting to him going forward

2    with a settlement which he believed to be perfectly reasonable,

3    fair, and adequate.

4            The Third Circuit said that in circumstances like

5    that the rules of professional obligation, the rules of

6    professional conduct, which we're all obliged to follow -- and we

7    take very seriously -- cannot be applied mechanically, rigidly

8    when you're dealing with class actions because there is a

9    fluidity involved when you have multiple representations in

10   existence.

11           That goes back to what Your Honor was saying with

12   regard to MDL practice.  You can't apply Rule 1.7 mechanically in

13   the fashion that opposing counsel would ask the Court to do it.

14   It doesn't work in the circumstances that are reflected in MDL

15   practice.

16           So what I would like to do, Your Honor, is to just

17   go through quickly what I understand to be the record that is

18   before the Court.  First of all, counsel opposite say that they

19   have produced in discovery all the insurance that's there.  When

20   this motion started in the *Nguyen* case in Norfolk, we were -- the

21   movants originally thought there was only $10 million of

22   insurance.  After we pointed out to the defendants that their

23   discovery production indicated far in excess of $12 million, that

24   you could stack these policies, that there was general liability,

25   excess coverage, umbrella coverage for both companies, today I

1    just heard that it's 132 million.  By our count, it's almost

2    twice that because there are two policies for both companies.

3    That's not a limited fund as far as I know.

4            One of the other things that I heard, and this was

5    a representation that was made to my co-counsel, Mr. Serpe, is

6    that each of the installers involved -- and I haven't gotten

7    this discovery, and this is an issue that I understand we have

8    been asking for from opposing counsel, and he keeps promising it

9    to us -- is that there will be project files produced, and within

10   each project file, although it hasn't been produced yet, is an

11   insurance certificate for each installer.  Each installer was

12   required to have at a minimum a $1 million policy for each home.

13   It could be up to $3 million per home, we are told.

14           So count however many homes that Porter-Blaine

15   installed drywall in, and we have least another million dollars

16   per home.  If it's a hundred homes, we've got another hundred

17   million added the 230 million already.  330 million.  By their

18   count, we're about already to surpass what they perceive to be

19   the minimum -- or maximum limited fund.

20           Going on, Your Honor, they have calculated the

21   total liability by adding up the *ad damnum* clauses of each of the

22   cases, and they have assumed -- and they say this in their

23   papers; it's an assumption, not actuality, not reality -- that

24   there will be a minimum of $2 million damages per household in

25   the class.  Well, not every home is the same.  Not every home is

1   going to have $2 million in damages.  Some homes have 1,000

2   square feet; some homes have 10,000 square feet.  Damages will

3   differ per home, and it won't be $2 million.  I'm sure that it

4   will be less in some instances, and I would be surprised if it

5   greatly exceeds $2 million in every instance.

6            So I think the speculation and the hypotheticals

7   that were presented to Your Honor in the motion, as well as to

8   the Virginia State Bar when they sought their informal legal

9   opinion, were incorrect, inaccurate, and, frankly, they were

10  entitled to no weight.  I think that Your Honor should give no

11  weight to the informal opinion which, frankly, isn't written.

12           What we do know is written is that we have a formal

13  legal ethics opinion from the Virginia Bar, which was provided as

14  Exhibit A to our papers, and in the formal legal ethics opinion

15  the Virginia State Bar found it was perfectly permissible to have

16  multiple representations like what we're doing right now.

17           Your Honor, one of the things that I was actually

18  concerned about, which is the *Ortiz* case, because the essence of

19  the defendant's motion is that there is a limited fund here.

20  Limited funds really came to an end, for all practical purposes,

21  in the *Ortiz v Fibreboard* case at the United States Supreme

22  Court.

23           I think our firm had probably one of the last, as I

24  know it, surviving class actions that was based on a limited fund

25  in the bone screw litigation against AcroMed, and interestingly,

1   there was never a Motion to Disqualify us in that litigation even

2   though there was a limited fund.  We established a limited fund,

3   we're had individual clients, and we had a class action on a

4   limited fund basis.

5            When I looked at the *Ortiz* case in preparation for

6   today, one of the things that I found most interesting was that

7   the case came up in the Fifth Circuit -- I believe it came up out

8   of Texas -- and when it got to the Fifth Circuit on appeal there

9   were a number of issues from the district court's opinion.  What

10  they found was in the *In re: Asbestos* case at 90 F.3d 963 was

11  that there was a Motion to Disqualify where the same concerns

12  raised about Rule 1.7 were made, and the Fifth Circuit rejected

13  the notion that there was a conflict between current claimants

14  and future asbestos claimants.

15           So I think the case law is very clear, Your Honor.

16  There is no conflict unless there is an actual limited fund

17  proven.  So far we don't even have a class certified.  There

18  cannot be any reason to suggest that there is an actual conflict

19  in existence here, and I suggest without that premise, there is

20  no need for me to even go further.

21           THE COURT:  Thank you, counsel.  Any rebuttal?

22           MR. HARDT:  Briefly, Your Honor.

23           MR. LONGER:  Your Honor, one last thing, I just want to

24  add.

25           THE COURT:  Sure.

 1          MR. LONGER:  I just got this the other day, and I want

 2   to put on it the ELMO here.  I thought this was the most

 3   interesting thing, that at the end of November, counsel opposite

 4   actually referred a client to us even though this Motion to

 5   Disqualify was pending.  It strikes me as more than extremely

 6   disingenuous for counsel to be moving to disqualify people and

 7   saying that we're behaving unethically and, yet, referring

 8   clients to us.  So I think that there is a quite a lot of

 9   questions that should be raised by this motion, and I think all

10   of the questions are answered in the negative.  Thank you,

11   Your Honor.

12          THE COURT:  Thank you.

13          MR. HARDT:  They're complaining we're referring clients

14   to them.  That wasn't a referral of clients.  That was an inquiry

15   that had been made quite some time ago in the interest of making

16   sure that everybody was on the same page, we referred them to

17   them for comment.  That's just interesting how these things come

18   up.

19          A couple of points.  As far as the

20   class-certification procedure -- and it sounds like these fellows

21   play in a lot rougher playground that I play in, Your Honor --

22   we're not filing this as far as class certification.  We not

23   attacking that aspect of the classification proceedings.

24          I think I told Your Honor why we're here and why we

25   felt compelled to file the motion that we did.  It's not

1   something that I relish.  It's not something -- and I'm not doing

2   it for strategical reasons.  Again, I'm not sure I really want

3   the outcome of this.  Again, I believe I have an obligation under

4   the Virginia ethical rules to raise this issue, and I think that

5   the Court has a responsibility as well.

6            As far as the *Lazy Oil* case, we distinguished that

7   on a brief and ruled on a brief on that issue.  Actually, I think

8   the *Lazy Oil* case has no application to what's before this Court.

9            As far as the subcontractor -- as far as this

10  limited fund issues, we have addressed those.  Let me tell you,

11  though, they say that, you know, we made up this $2 million

12  number.  We didn't make up this $2 million number.  If you would

13  look at the list that we've just provided to the Court, and it

14  actually is -- the stages of the filings of these individual

15  state court actions have changed since we originally filed the

16  *Germano* disqualification order.  That's why I provided this list,

17  but of the 54 individual state court actions that they have filed

18  in Norfolk, each one seeks $2 million except, for some reason,

19  after we filed the Motion to Disqualify which suggested that

20  there was a limited fund and suggested that, look, they are suing

21  for $2 million on behalf of every single client, you know, they

22  obviously believe these claims each have $2 million, they are all

23  different homes, they are all seeking personal injuries, now you

24  got a hundred class action members in Virginia, you got a hundred

25  class-action members in the *Hinkley* matter in North Carolina, add

1   the numbers up and it's almost half a billion dollars.  After we

2   made that argument, one of the very next lawsuits that was filed

3   was for $500,000.

4          It was like, okay, did you talk to these folks who

5   have a home in the same subdivision as four other plaintiffs who

6   you all sued for $2 million and tell them, sorry, your case is

7   only worth half a million dollars?  Did you tell these folks, the

8   $500,000 folks, that the three suits we filed the day before,

9   those suits were each worth $2 million, but this one is only

10  worth $500,000?  Have you gone back and told them that since we

11  filed your $500,000 suit we filed 20 more suits all in the amount

12  of $2 million, but in any event, the $2 million, we didn't make

13  that up.  That's what they are suing for.

14         As far as the formal legal ethics opinion that they

15  refer to, we mentioned in our rebuttal brief that we filed in the

16  *Germano* action in the Eastern District that that formal opinion

17  from the Virginia State Bar has absolutely, positively no

18  application in this case.  That issue dealt with an attorney in a

19  firm that represented a condominium association, and every once

20  in a while they would sue members of the condominium unit owners

21  for their overdue fees.  Then at one point in time the air

22  conditioning unit, which was a common element and which was also

23  a unit -- part of the units, failed so they wanted to file suit

24  on behalf of all of the condominium folks against the

25  manufacturer of the air-conditioning unit to get the

1  air-conditioning unit fixed.

2      The sole issue really before the Bar in that formal

3  legal ethics opinion was -- is the fact that we filed suit

4  against some of these homeowners for the collection -- for

5  collection of their assessments, does that prohibit us from

6  filing this, in effect, class suit on behalf of all these folks

7  to sue a manufacturer of the air-conditioning unit?  How that

8  applies to the present case, I have no idea.  It doesn't apply.

9  Citing it is just kind of one of those scratch-your-head kind of

10  things.

11      Finally the *Ortiz* case, as far as it whether it

12  puts an end to the limited fund or not, we cited a number of

13  cases that deal with the limited fund, but actually if you read

14  the *Ortiz* decision, that decision actually supported the decision

15  that you kind of need to step back and have an independent

16  attorney who is objective take a look at the situation and say to

17  these individual clients, all of these 54 individual state court

18  plaintiffs, the Nguyens, the Herschovers (spelled phonetically),

19  the Morgans, all of these folks, would an objective attorney

20  suggest to you that it's okay for these attorneys to represent

21  three separate class actions and a bunch of other folks in

22  Virginia all seeking whatever fund it is, whether it's 260

23  million or whatever it is, and we believe that the answer is no.

24      I appreciate Your Honor as far as what Your Honor

25  has to deal with the MDL and the fact that the PSC -- again, this

1    is not directed to the PSC -- but the PSC has to represent people

2    in a bunch of different states and all of those different types

3    of things, but I believe that if the issue comes up in

4    Judge Hall's court, which is the judge that currently has the

5    matters pending in the Norfolk Circuit Court, that she is not so

6    constrained as this Court may feel it is because of the MDL

7    process to deal with issue as a state court matter.

8               That's our position.  Thank you, Your Honor.

9          THE COURT:  I'm not sure, Judge Hall was going to be on

10   the phone today.  I have discussed the matter with her, but she

11   does have some other commitments, so she has a law clerk that is

12   monitoring this situation, so I appreciate both sides.

13              I have had an opportunity to review the briefs as

14   well as the all of the citations given by the parties, and I'll

15   give you my view of it.

16              First, I recognize that this is a Motion to

17   Disqualify Counsel.  These motions, and I take counsel at his

18   word, they are very reluctant to bring it.  It is an

19   uncomfortable motion for anyone to bring, and I think that

20   counsel is in good faith when he says that.  He also recognizes

21   that if there is a substitution, he may find that he's not able

22   to work with the substitute attorneys, so the devil that he knows

23   is generally better than the devil that he doesn't know, and he's

24   concerned about that also.

25              I do recognize that it is a grave responsibility

1   for counsel to bring these motions and also a grave

2   responsibility for the Court to consider these motions.  I do so

3   with the following observations:

4           First, all of us recognize that it is a sacred and

5   protected right of an individual to select counsel of his or her

6   choosing.  That is one of the important aspects of not only our

7   law but the law of all civilizations, to give someone an

8   opportunity to pick a lawyer to represent them that they feel

9   most comfortable with.  Back in even Greek and medieval times it

10  was recognized that the right to choose counsel was a sacred and

11  protected right, so to thwart that right takes some extraordinary

12  circumstances.

13          Second, I notice that the cases are legion in both

14  class actions as well as MDL's in which counsel have both the

15  responsibility to represent the class or the group as well as to

16  represent individual claimants.  To thwart that is problematic.

17  You would have individuals who represent the class but had

18  absolutely no responsibility to individual class members.  They

19  would be making decisions more often for themselves without any

20  opportunity to consult with their own clients because they would

21  have no clients except the entire class.  If this class is a

22  100,000 people, they would have to convene a meeting of a 100,000

23  individuals and have them respond.  It's not a workable

24  situation.  In every case, MDL cases, class actions, lawyers have

25  responsibilities to represent the class or group as well as the

1    individual claimants so that's not unusual.

2            With regard to the limited fund, I am not able to

3    at this time say that there is a limited fund.  To say that

4    because the plaintiffs have asked for $10 million, that's what

5    they feel the case is worth, that's not the real world.  All of

6    us know that.  In fact, many states -- Louisiana being one -- now

7    prohibit plaintiffs from asking for any amount.  They simply have

8    to say a reasonable amount, because it's gotten totally out of

9    hand.  Plaintiffs sued for a million dollars and settle a case

10   for $300 or a thousand dollars.  What they asked for has no

11   relationship to what they expect the case to bring.  So to use

12   that as a guide is not accurate.

13           Secondly, I don't know what the damages are.  Each

14   individual case will be different.  Whether or not there is any

15   damages will be different.  I don't know who the defendants are

16   in this case.  I don't know whether it's several, joint

17   liability, or independent liability.

18           In Louisiana, we have a situation where you're only

19   liable for your own negligence.  So if you had two or three or

20   four defendants and one defendant is is held 10 percent

21   negligent, he just is responsible or that entity is only

22   responsible for paying 10 percent of the total damages.  In other

23   states, if you're liable at all, you're liable for the whole

24   amount, and it's your job as a defendant to go after the other

25   defendants for their amount.

1          So in summary, I don't know how much is involved at

2     this point.  I don't know which defendants are involved at this

3     point.  I don't know how many defendants are involved at this

4     point, and I don't know whether or not there is any liability,

5     and if so, who is liable, and if so, how much they are liable

6     for.

7          Even with the mover, you're looking at insurance.

8     I don't know what the personal assets of the company's owners

9     are.  I don't know whether or not the insurance policies are

10    going to be interpreted for each instance or for a total

11    liability or responsibility.  I don't know whether the insurance

12    agents are responsible for selling insurance at this limited

13    amount.  I don't know whether the brokers are responsible.  I

14    don't know whether there is any insurance advisors that said to

15    the company, "You only need liability for this amount."  If so,

16    they may be responsible.

17         Lastly, I don't know whether or not there are any

18    additional insurers for additional jobs, and I don't know whether

19    they are primary or secondary.  Oftentimes we see a situation

20    where an installer has to put up a certain amount for the job,

21    and that installer's insurance is primary.  So the other

22    insurance may not even be exhausted before the primary insurer's

23    of the installers.  Occasionally it's not that way, but it may

24    well be.

25         In conclusion, the point is that at this stage of

1    the litigation I don't know whether there is any conflict at all.

2    If a true conflict does emerge later, rather than a possibility

3    of a conflict, then the plaintiffs are going to have to determine

4    whether or not to waive that conflict, which is possible, the

5    advantage of waiving the conflict or not, which is possible; if

6    not, then I can step in and say that there is a conflict, and you

7    have to get out of one or both of the cases.  At this point it's

8    premature at best and baseless at worst from the standpoint of

9    the moving party, so I'm going to deny the motion.

10           The next motion that I have before me is the

11   Plaintiff's Motion to Compel Discovery.  This focuses primarily

12   on the ESI material, electronically stored information, and also

13   the designation of a 30(b)(6) company representative.  Since it's

14   the plaintiff's motion, I'll hear from the plaintiff.

15         MR. DAVIS:  Good morning, Your Honor.  If I may pass to

16   the Court just a brief timeline.  Leonard Davis on behalf of the

17   PSC.

18           As the Court instructed the PSC early on in this

19   matter, the PSC issued discovery to a number of parties.  I know

20   the Court is very familiar with that, and I don't need to go

21   through all of that.

22           Two of the parties that we sent discovery to were

23   Venture and Porter-Blaine, who were both the subject of this

24   Motion to Compel, Venture being an importer and supplier;

25   Porter-Blaine being an installer, which really is a subsidiary of

1    Venture.

2              We know that Mr. Tobin, who the Court is familiar

3    with and knows that name, is a broker for Venture who was in

4    China making deals, dealt with Taishan to get drywall for

5    Sam Porter, who is the principal in the Venture company.

6              Just to set the stage as to where we are, I don't

7    need to go through the fact that we have trials coming up.  No

8    one knows that better than the Court.  They are imminent.  The

9    Court is well aware that much of this discovery is absolutely

10   critical for preparing those trials, and they are what I'll call

11   *bellwether* or *global*-type trials where we need to gather a lot of

12   information.

13             In the course of issuing the discovery, as the

14   Court is well aware, we had a number of meet and confers with

15   Venture, with Porter's counsel, opposing counsel.  Richard Serpe,

16   as you well know, has been involved in this.  So has Fred Longer

17   of Arnold Levin's office, my office.  We issued 30(b)(6) notices

18   which the Court is familiar with.  I know the Court has seen

19   those before.  They are also attached to the motion.  We also

20   issued the master set of discovery, which the Court, I know, is

21   familiar with.

22             THE COURT:  Right.

23             MR. DAVIS:  I know the question is what do we want?

24   What do we need?

25             THE COURT:  Let me see if I understand it.  The issue is

1   twofold.  You're asking the defendants to designate a 30(b)(6)

2   representative.  What's the problem with that?

3           MR. DAVIS:  I can go through that, Your Honor.

4           THE COURT:  Let me hear just from counsel.  Is there any

5   problem with that?

6           MR. HARDT:  No.  I'm somewhat incensed we're even

7   talking about a Motion to Compel.  We've worked all of this out.

8   I don't know why Mr. Davis is --

9           THE COURT:  Let's not waste of time.

10          MR. HARDT:  We offered a corporate designee -- we

11  haven't heard back from them -- and offered a date,

12  December 13th, that whole week, we said whatever.

13          THE COURT:  You guys have to be able to get together on

14  that.

15          MR. DAVIS:  We have, Your Honor, and we will take any

16  date, December 13th, of that week for a 30(b)(6) in the MDL of

17  Venture and a 30(b)(6) of Porter-Blaine; however --

18          THE COURT:  That issue is out, then.  You know who the

19  representative is.

20          MR. DAVIS:  No, we don't.

21          THE COURT:  He's just told you.

22          MR. HARDT:  It's Sam Porter, Your Honor.  They know

23  Sam Porter was the only one that's left.  He was the president of

24  both Venture Supply and Porter-Blaine.

25          THE COURT:  He's the guy so give them the areas that you

1    want him to cover so he can bone up for it and get the material

2    that you need and take his deposition.

3            MR. DAVIS:  We will do that, Your Honor.

4            THE COURT:  The second one was the ESI material.  Now,

5    the ESI material, as I understand it, you wanted it in natural

6    format and the defendant has given it to you in PDF format.

7            MR. DAVIS:  No, Your Honor.

8            THE COURT:  That's not it?

9            MR. DAVIS:  That's not really it.  What we have is, we

10   actually have a little bit more than ESI, and I hate to burden

11   the Court but I really need to.  We have been given a production

12   of hard copy documents.  This morning I've been told by opposing

13   counsel that he will certify that we have a complete production

14   of all hard copy documents, and I've asked that we get that

15   certification on the record, and counsel has told me that he's

16   willing to do that.

17           MR. HARDT:  Your Honor, I'm very incensed with bringing

18   up this Motion to Compel.  We've worked this out.  All of a

19   sudden Mr. Davis this morning has hit me with a bunch of things.

20               What we have done is in the state court action, the

21   *Colleen Nguyen* action, which I understand primarily that they

22   filed that state court action after the *Germano* action because

23   they wanted some discovery quick, and we produced the documents

24   in response to the *Nguyen* document production requests.  We

25   produced, I thought, we had produced a privileged log.  I believe

1   we had produced a privilege log in the *Nguyen* action.

2   We recently had a conference with them, with the

3   PSC as far as the discovery they were going to serve on the MDL.

4   They said, Look, we don't you want to reproduce all of these hard

5   copy documents from the *Nguyen* case.  We don't need all of that.

6   We said, Look, Richard -- we were dealing with Mr. Serpe -- the

7   only thing really that you don't have are project files that may

8   relate to some of the other plaintiffs that you have filed suit

9   on behalf of, the 50 something that are listed on the chart.  We

10  will produce those project files to you, and other than that,

11  they said, Okay, we'll take a look and see what we have and let

12  you know if we need anything else.  We, in effect, converted the

13  *Nguyen* discovery to the MDL discovery.  So I'm not real sure.

14  Now, the ESI issue has come up.  The way that the

15  ESI issue came up is in response to this Court's pretrial order,

16  when we were brought into this case, when *Germano* was transferred

17  into this case, on behalf of Venture Supply, within the 15 days

18  of this Court's order, we supplied a profile form, and in that

19  profile form we had to identify sales information, so we

20  identified everybody that we sold Chinese drywall to.

21  It's a 703 list chart that had been put together by

22  our client by their off-site -- they have some off- site company

23  that does accounting and stuff like that.  But unfortunately for

24  the PSC, apparently they didn't like it, the chart only had the

25  first part of an address.  It had, like, a street address.  It

1  didn't have, like, Norfolk, Virginia, or Tidewater, Virginia, or

2  whatever.

3          All of a sudden they start screaming and yelling

4  about our computer.  Where is the computer stuff that backs this

5  up?  And we said, We'll go and hire a computer expert, which we

6  have done, and we'll have a computer expert figure out what we're

7  dealing with.

8          What we're dealing with was an off-site company

9  that had its own licensed software, and we said, Work with those

10  people, get training with those people and get the sales

11  information, which is what they want.  We have now produced all

12  of that back-up sales information to them.

13          Now, Mr. Longer mentioned, as far as we were

14  talking about the Motion to Disqualify the subcontractor files,

15  so I said, What do you want next as far as the ESI stuff?  They

16  said, We want the subcontractor information.  We want to figure

17  out if there is more insurance out there, certificates of

18  insurance or whatever for the projects that we worked on.  So I

19  said, Okay, computer guy, go get this information as best you can

20  off the network server, which was backed up and saved.  The

21  network server that was actually kept at Venture and

22  Porter-Blaine.

23          So he has been working diligently on that.  We told

24  him yesterday that our computer expert says you'll get that today

25  or you will get it Monday.  And, in fact, what he's done is he's

1   go through each individual 50 of the project files which has the

2   names of the subcontractors, and he's keyed it up to each

3   individual project file, not making them sift through all of this

4   stuff, but he's making it available per each project time.  These

5   were the subcontractors that work on the Nguyen house.  These are

6   the certificates of insurance we have on them.  He's done that,

7   gone through the search information.  We will hopefully have this

8   today, no later than Monday.

9          Then we said, What next do you want as far as the

10  ESI?  They said, We want whatever e-mail information you have.

11  Well, our client used AOL.  He didn't have a network kind of an

12  Outlook Express or whatever.  So I said, Computer guy, go to AOL,

13  figure out what they can do.  He went to AOL and yesterday he

14  found out from AOL what we got to do.  We got to go through AOL's

15  legal department.  So my partner Mark Nanavati sent an e-mail to

16  the AOL legal department yesterday saying, We want access to this

17  e-mail account and whatever backup.  We don't know backup they

18  have.  If you delete an AOL -- it's cloud computing.  It's not

19  kept on your own computer.  So we don't know what they actually

20  have, but we've now taken a step to say, AOL e-mails, what else

21  do you want?

22         So now the question is, What else more do you want?

23  Tell us what to focus on.  Tell us what it is that you want.

24  Every step we have taken we have responded to you.  That's all

25  we're asking.

1          THE COURT:  Where are we at this point?

2          MR. DAVIS:  Part of the problem, Your Honor, is back in

3    June of this year we were given a spreadsheet, which counsel was

4    just talking about, that was incomplete.  It wasn't usable

5    because we didn't know what state, what city, things like so, so

6    we've tried to clean that up.  It's been 6 months and we still

7    don't have the information.

8          THE COURT:  I thought he said he was giving it to you

9    today and tomorrow.

10         MR. DAVIS:  We were hopeful.  That's what we need,

11   Your Honor, is a deadline because we had preservation orders.

12   The other thing that really concerns us, and we're not at that

13   stage, is that the computers and a bunch of this hardware was

14   auctioned off by this company, and so we're really concerned

15   about that, and we're not at that stage yet, but we need to get

16   somebody who is the most knowledgeable who can tell us about the

17   electronic discovery, where it is, what happened to it, how we

18   can get to it and what we need to do.

19             So part of the 30(b)(6) request is not just for the

20   substance but also about the computer information so we can get

21   to that, and we haven't been able to get that, and I'm hopeful

22   that we'll able to get that so that we can find out when we'll

23   get ESI.  We need a deadline.  We've got to get it done and we

24   need to get it done quickly.

25         THE COURT:  It looks to me like the thing is worked out,

 1  but I'll set a status conference in a week to follow up on it,

 2  but it seems to me that counsel is meeting with you, and he's

 3  trying his best to produce what you need.  So I don't see any

 4  problem with that at this point.

 5           I think you ought to go forward with the 30(b)(6)

 6  deposition, ask all of those questions, and then we'll deal with

 7  it if an issue comes up.  It doesn't look like an issue is

 8  coming.  As I understand by Monday you're going to have the

 9  material.  You've got a designation for a 30(b)(6) deposition.

10  That individual is going to give his deposition at a certain date

11  that you all have agreed upon, and you plan on asking him more

12  information about ESI.

13           MR. DAVIS:  We will do that, Your Honor.  The concern we

14  had and we just need the Court to be aware is that we don't have

15  a complete production, and so this deposition may need to be

16  continued if we get more of this information in.

17           The other thing is that we don't have a privileged

18  log that's in accordance with Your Honor's pretrial order, and we

19  just ask for a time frame to get that privilege log.

20           THE COURT:  Did you give him a privileged log?

21           MR. HARDT:  Again, Your Honor, this all started with the

22  *Nguyen* action.  You mentioned June 30.  That was the *Nguyen*

23  responses to discovery.  Had nothing to do with the MDL.  In the

24  *Nguyen* action we produced thousands and thousands of documents.

25  All of the documents that relate to the sale of the stuff from

1    Taishan to us, all of the documents that related to the shipment

2    of the stuff, all of the documents related to the *Nguyen* action

3    and every document we had as far as that was relevant to the

4    *Nguyen* action.

5              They asked us for a privileged log under Virginia

6    rules, just as under this Court's rule they asked for a

7    privileged log.  We've produced a privileged long to them as far

8    as the documents that we produced.  We did not withhold from the

9    documents that they requested in the *Nguyen* action any document

10   other than what's on our privileged log, so we gave them a

11   privileged log.  I don't know what else we were supposed to do.

12             THE COURT:  Take a look at the privileged log.  If the

13   privileged log is not appropriate or not satisfactory enough,

14   talk with counsel.  Nowadays, with the new 502 rule of the

15   evidence, you've got quick peeks available to you, you've got

16   clawbacks available to you, and rather than ask for everything in

17   the world, it's easier to take a quick peek and see what you need

18   and then ask for what you need.

19             This is not a type situation where you don't want

20   them to know information as much as it is in some cases, I don't

21   see it in this case, at least from your standpoint.  So I would

22   take advantage of some of those mechanisms.  I know they are new.

23   Lawyers are not as familiar with them because they have just kind

24   of been instituted, but it's a worthwhile vehicle.

25             I don't see any problem that you need me to resolve

 1   at this point.  I'll keep up with it.  I'll set a status

 2   conference for 2 weeks, and I'll alert you all to the date of the

 3   status conference.

 4              At that time, I'm just interested in whether you

 5   have any problems or whether you have any problems so that we

 6   don't have to get you from Virginia to argue the case or get you

 7   from where to argue the case.  If there is an problem that I can

 8   be of help to you with or to you with, I'll deal with it on the

 9   phone so that we don't need to cut any more trees down to have

10   any paper unless you all feel that that's necessary.

11              MR. HARDT:  It appreciate it.

12              MR. DAVIS:  Thank you, Your Honor, and we'll report to

13   you at the status conference that is next week.

14              MR. HARDT:  Your Honor, just so that I don't have to

15   find --

16              THE COURT:  Wait.  The other part that I did want to

17   discuss with you is a jurisdictional issue that counsel has

18   raised.

19              First, from that standpoint, I know that the

20   jurisdictional issue was raised in the Virginia court and that it

21   was adequately briefed in the Virginia court.  When the case was

22   transferred over here, what I do, because there is motions

23   pending, I don't know how many motions are pending, and while

24   you're dealing with one case, I'm generally dealing with 20,000,

25   30,000 cases, and so I don't know how many motions have come over

1   in those cases.

2          So I ask counsel to refile them when they get here,

3   because when it's filed in my court here, then I know it's here.

4   I don't know what's being sent or whether it's being sent by the

5   various states.  So I don't have the briefs before me.  I didn't

6   get them yet because you haven't refiled the motion.

7          You have brought to my attention a concern that you

8   have about whether or not the Court has jurisdiction of this

9   case.  I'm not quite sure I understand the nature of your

10  argument, though, because from the Taishan situation, if they

11  have manufactured drywall and if that drywall is defective and if

12  that drywall has been sold and used in Virginia and if it's in

13  homes and it's contaminating homes, why wouldn't a Virginia

14  federal court have jurisdiction over that entity?

15          MR. HARDT:  Your Honor, I wanted to address that issue.

16  Your Honor, frankly I'm not prepared to argue the personal

17  jurisdiction aspects of it -- I'm sorry, madam court reporter --

18  the jurisdictional aspects of it.  The reason that we raised it,

19  Your Honor, and I understand as far as the MDL filing and that

20  you don't know what motions have been pending in all the

21  transferred cases or whatnot, the reason that we did file it

22  because in our research it had indicated that really before the

23  Court should consider these other matters, like the Motion to

24  Compel and the even Motion to Disqualify, that the Court needed

25  to satisfy itself and address itself to the issue of whether or

1   not it had subject matter jurisdiction, and that's why we raised

2   it as an objection.  Again, it's not a motion that I would like

3   to tell the Court we don't think you have subject matter

4   jurisdiction, but, hey, you know, Judge, we've got to bring it

5   up.

6               Now, as far as the personal jurisdiction issue

7   goes, I'm not here on behalf of Taishan.  I'm not here to argue

8   Taishan's position, but I am here to tell this Court that under

9   the way we read the law is this Court has a duty to make an

10  inquiry into that issue, and the issue may be directed at let's

11  do some discovery as to whether there is sufficient minimum

12  contact tax under *International Shoe* for this Court to exercise

13  personal jurisdiction over Taishan because the only reason the

14  *Germano* action is in federal court is because of the existence

15  and presence of Taishan.  All of others defendants, all of the

16  other plaintiffs are citizens of the Commonwealth of Virginia.

17            THE COURT:  I understand that.  Let's assume, just for

18  purposes of argument, that Taishan manufactured the drywall, and

19  let's assume the drywall was purchased and placed in Virginia

20  homes and it's contaminated.

21            MR. HARDT:  Just as a commonsense type of thing.

22            THE COURT:  How could a court in Virginia not have

23  jurisdiction over an entity that sells a defective product and

24  has a defective product put in a Virginia home?  How can they

25  avoid jurisdiction there?

1        MR. HARDT:  Well, it all goes down to --

2        THE COURT:  They have been served.  We know that.

3        MR. HARDT:  Service does not confer jurisdiction.

4        THE COURT:  No, I know that.  But it's certainly

5   significant from the standpoint of getting them before the Court.

6   How can their product, if it's defective, and it's sold in and

7   installed in Virginia -- I'll tell you this, if that product was

8   sold in and installed in Louisiana, there is no doubt in my mind

9   that I would have jurisdiction or a federal court would have

10  jurisdiction.

11       MR. HARDT:  Well, it comes down, Your Honor, to an

12  examination of *International Shoe* minimum contact whether the

13  defendant has purposely availed themselves of that particular.

14  There are all those issues that need to be explored through

15  discovery.

16       The way we understand is it, for example,

17  Your Honor, if you go to California and you to go a mom and pop

18  store in California that only deals in California, this mom and a

19  pop store has no connections whatsoever with Louisiana, and you

20  buy a product and you say, Gosh, this is a tremendous product.

21  I'm going to buy this product and I'm going to take it back to my

22  home and give it to my wife in Louisiana.  And they say, Great,

23  go for it.  Have fun.  You buy the product and you take it back

24  to Louisiana and it blows up and it hurts people.

25       The question is can you file suit?  That product

1  made its way back to Louisiana, but can you file suit against

2  this California company that has done absolutely nothing to avail

3  itself of the jurisdiction of Louisiana?  The answer is no,

4  absolutely not.

5          So the question in the case -- in the case as far

6  as Taishan goes is the sales documents that we have produced and

7  that the plaintiffs have is that these sales are were all FOB

8  China.  Chinese manufacturers are very smart.  I've dealt with

9  numerous cases in which Chinese manufacturers are involved.  They

10  are very smart.  They do not want to touch United States soil.

11  They are afraid of the United States liability litigation, so

12  what they do is ship things FOB China.  You have to go over

13  there, pick them up --

14      THE COURT:  I understand the argument.  I don't see that

15  is inconsistent, and I'll be looking at that over the next year

16  or so as well as all of the discovery, but I'm not going to stop

17  the discovery of all of the case and then just have discovery of

18  jurisdiction and finish jurisdiction before I get on with the

19  other case.  I'm not going to do that.

20          I'll take that seriously and we'll see what

21  information is available, but we'll go forward with the whole

22  case.  That's really the way that I see it.

23      MR. HARDT:  Your Honor is obviously free to do what

24  Your Honor wishes to do.  The point that we wanted to raise to

25  this Court -- and it is a serious point, and I know MDL has so

1  many other concerns that are involved -- and that is that the

2  cases that we have cited in our objections suggestion that that

3  is a threshold matter.

4         THE COURT:  I agree and before we go to trial, that will

5  be resolved.  I'm not going to stop the whole ball from moving

6  until we deal with jurisdiction, because in a jurisdictional

7  situation it might take me 3 years for jurisdiction to be

8  resolved.  It really will.  That's just the way it is, with

9  service under the Hague convention, with serving people, with

10 finding in China who has done what, we don't have the time for

11 that.  It will get done and it will get done before the trials of

12 that particular entity, but I'm not going to stop everything

13 while we proceed with jurisdiction and deal with jurisdiction and

14 then give a temporary appeals or immediate appeals.  We'll be

15 here for a decade just on jurisdiction.

16        MR. HARDT:  Understood, Your Honor.  One other thing

17 that I could say on this, the reason we raised it is because when

18 we got sued, when my clients got sued in federal district court

19 in Virginia, we took a look at it and we said, Why are we in

20 this?  Why are we in a federal district court?  This case doesn't

21 belong in federal district court.

22        We looked at the Class Action Fairness Act, and we

23 saw that really the presence of Taishan, who has now been in

24 default, you know, in a builder's case before this MDL, who

25 hasn't made an appearance in any case that I know of up and down

1    the East Coast, and we're saying Taishan is in here just to get

2    federal jurisdiction over *Germano*.  They can do that.  That's

3    what the law allows.

4            The court in the Eastern District of Virginia

5    addressed the subject matter jurisdiction issue because we don't

6    think there really is subject matter jurisdiction.  Well, the

7    Court in the Eastern District of Virginia decided, because I

8    assume the conditional transfer order had been issued by the MDL

9    panel, decided to step back and say, Well, we're just going to

10   wait and see what happens with the conditional transfer order.

11   I'm speaking on behalf of a judge that I have no authority to

12   speak on behalf of, but I'm just guessing that's what happened.

13           We raised the issue with the MDL panel too.  We

14   said, Look, don't transfer the case.  There is no subject matter

15   jurisdiction, but obviously the MDL panel doesn't have authority

16   to consider jurisdictional issues.  So then when it got filed

17   down here in every single thing that we had have to file in this

18   Court -- and I understand we were supposed to refile the

19   12(b)(1), but we couldn't refile because there was a stay -- but

20   in the -- in response to their Motion to Compel we raised the

21   jurisdictional issues in response to -- in the objection that we

22   filed for the stipulation that was apparently reached which has

23   now been withdrawn because of the Court's entry of a consent

24   order, we raised the jurisdictional issue.

25           It's not something we are just bringing up now.  It

1   is something we have tried to pursue since this case was filed

2   back in May, I believe, of this year.  Now it's December.  We

3   have been brought down to Louisiana to deal with this issue, and

4   we'll deal with this issue as the Court wishes.  We just wanted

5   to raise it.

6          THE COURT:  Well, I appreciate it.  I'm sure we're going

7   to have a lot of discovery on that.  The jurisdiction,

8   particularly worldwide jurisdiction these days or the

9   *International Shoe* has been made more complicated by the

10  Internet, by having web sites, by having accessible web sites, by

11  allowing the world to look at your web site and order from your

12  web site as if it were right there, and there is a lot of modern

13  technology that has moved *International Shoe* very far these days.

14  So a lot of that discovery will be necessary, and we'll see where

15  we go with it, but I am going to take that together with any

16  other discovery.

17         MR. HARDT:  Thank you, Your Honor.

18         MR. DAVIS:  Your Honor, we are just scratching our head

19  trying to figure out why Taishan's defense is being urged by

20  Venture and Porter-Blaine, but whatever it is, it is.  We'll

21  supplement the record because as discovery has gone on, there is

22  more and more to support that jurisdiction, such as e-mails where

23  the Chinese entities are attempting to cooperate and enlarge

24  their market, things like that where discovery has shown that

25  they certainly availed themselves of the United States and knew

1   that they were getting into this situation, but we're happy to

2   supplement the record and will do so.

3          THE COURT:  Historically, what's happened in this case,

4   obviously, is that when the hurricanes visited us in 2005 and

5   2006, the supply of drywall manufactured by the United States was

6   tested, and, frankly, it was very hard to get, if not impossible,

7   so the opportunities presented itself to China and others to ship

8   in drywall.

9          I mean no disrespect; they took advantage of a

10  business opportunity.  They felt that they were helping society

11  by providing drywall and they did, and it was certainly helpful

12  to their company's bottom line to supply it.  They knew that it

13  was badly needed, that this country was needing drywall, so there

14  was a lot of aggressive business activity from China and others

15  to supply that need.  So it's not surprising to me that they

16  would not only have e-mail but advertising and things of that

17  sort which may well visit jurisdiction on them, but it will have

18  to be discovered, and I will be mindful of that.

19         With regard to your motion, if you feel that it

20  should be in the MDL proceeding, you need to file it so that I'll

21  have it here with me, and I'll either take it up or I'll deal

22  with it on the briefs.

23         MR. HARDT:  Your Honor, I'm getting mixed signals from

24  the clerk, too, but with our objection, we filed all of those

25  briefs.  I don't know if that now brings it into the MDL or not.

1   We just got something from the clerk the other day fussing with

2   us for filing that because they said we've got all of these

3   files; now you're filing it again, because all the files came

4   down from Virginia, why are you filing it again?

5           THE COURT:  I'll talk with the clerk.  What needs to be

6   done is you need to refile in the MDL any motions that you're

7   serious on so that I'll have it docketed in the MDL.

8               You see, what happens is that motions are filed in

9   the state proceedings, and with electronic document transfers

10  now, we get just a portion of the record of that proceeding.  We

11  don't get everything.  So in order to make sure that I have the

12  motions that the parties want me to have, I provide in my initial

13  pretrial order that any motions that have been filed need to be

14  refiled in the MDL.

15              The reason for that is I need them docketed in my

16  court so that I can keep a record of them, that they don't get

17  lost in the shuffle.  That's really the reason for it.  As a

18  result, I noticed on the docket that we didn't have those

19  motions.

20          MR. HARDT:  I'll be happy --

21          THE COURT:  You can check with my law clerk, and she'll

22  help you go through that.

23          MR. HARDT:  What I was wondering, when we refile, like,

24  our motion, like 12(b)(6), for example, motions, when we refile

25  that, do we file simultaneously all of the briefs that have

1    already been filed on that?

2         THE COURT:  Well, the briefs you can send to me.  I

3    don't want you to be doing any new briefs if you're satisfied.

4         MR. HARDT:  No, the briefs have already been done.

5         THE COURT:  Just make sure I have them.

6         MR. HARDT:  Okay.

7         MR. DAVIS:  I just want to remind counsel of the

8    obligation of the LexisNexis to upload those so that everybody

9    gets access.

10        MR. HARDT:  We have it.  No, we've done that.

11        THE COURT:  Okay.  Thank you.  The Court will stand in

12   recess.

13        THE DEPUTY CLERK:  Everyone rise.

14        (WHEREUPON, at 10:15 a.m., the proceedings were

15   concluded.)

16                           *    *    *

17

18

19

20

21

22

23

24

25

1                          REPORTER'S CERTIFICATE

2

3       I, Cathy Pepper, Certified Realtime Reporter, Registered

4  Merit Reporter, Registered Professional Reporter, Certified Court

5  Reporter, Official Court Reporter for the United States District

6  Court, Eastern District of Louisiana, do hereby certify that the

7  foregoing is a true and correct transcript, to the best of my

8  ability and understanding, from the record of the proceedings in

9  the above-entitled and numbered matter.

10

11

12                              *s/Cathy Pepper*_____

13                              Cathy Pepper, CRR, RMR, CCR

14                              Official Court Reporter

15                              United States District Court

16

17

18

19

20

21

22

23

24

25

## $

**$10** [2] - 18:21, 28:4
**$12** [1] - 18:23
**$300** [1] - 28:10
**$500,000** [4] - 24:3, 24:8, 24:10, 24:11

## 0

**09-6687** [1] - 1:7

## 1

**1** [1] - 19:12
**1,000** [1] - 20:1
**1.7** [5] - 7:15, 7:17, 7:20, 18:12, 21:12
**10** [2] - 28:20, 28:22
**10,000** [1] - 20:2
**100,000** [2] - 27:22
**10:15** [1] - 50:14
**11** [1] - 2:6
**12** [1] - 2:6
**12(b)(1** [1] - 46:19
**12(b)(6** [1] - 49:24
**132** [2] - 13:22, 19:1
**13811** [1] - 1:21
**13th** [2] - 32:12, 32:16
**15** [2] - 2:7, 34:17
**18** [3] - 9:11, 10:11, 12:4
**19** [2] - 7:17, 7:24
**19106-3697** [1] - 1:18

## 2

**2** [15] - 5:18, 19:24, 20:1, 20:3, 20:5, 23:11, 23:12, 23:18, 23:21, 23:22, 24:6, 24:9, 24:12, 40:2
**20** [1] - 24:11
**20,000** [1] - 40:24
**2005** [1] - 48:4
**2006** [1] - 48:5
**2009** [3] - 1:6, 3:3, 15:1
**2047** [2] - 1:5, 3:10
**22** [1] - 2:7
**230** [1] - 19:17
**23114** [1] - 1:21
**250,000** [1] - 14:10
**26** [1] - 2:8
**260** [2] - 13:21, 25:22

## 3

**3** [3] - 2:4, 19:13, 45:7
**30** [3] - 2:8, 2:9, 38:22
**30(b)(6** [8] - 30:13, 31:17, 32:1, 32:16, 32:17, 37:19, 38:5, 38:9
**30,000** [1] - 40:25
**32** [4] - 2:9, 2:10, 2:10, 9:12
**33** [5] - 2:11, 2:11, 2:12, 2:12, 2:13
**330** [1] - 19:17
**37** [2] - 2:13, 2:14
**38** [3] - 2:14, 2:15, 2:15
**39** [1] - 2:16

## 4

**4** [3] - 1:6, 2:4, 3:3
**40** [2] - 2:16, 2:17
**41** [1] - 2:17
**42** [2] - 2:18, 11:20
**43** [1] - 2:18
**44** [2] - 2:19, 2:19
**45** [2] - 2:20, 2:20
**47** [2] - 2:21, 2:21
**48** [2] - 2:22, 2:22
**49** [2] - 2:23, 2:23

## 5

**5.5** [1] - 14:17
**50** [8] - 2:24, 2:24, 4:20, 4:22, 11:18, 11:19, 34:9, 36:1
**50,000** [1] - 11:20
**500** [2] - 1:17, 1:23
**502** [1] - 39:14
**504** [1] - 1:24
**510** [1] - 1:17
**54** [6] - 9:6, 10:3, 11:8, 13:17, 23:17, 25:17
**589-7779** [1] - 1:24

## 6

**6** [1] - 37:6
**60** [2] - 4:20, 4:22
**660,000** [1] - 14:2

## 7

**70113** [1] - 1:15

**70130** [1] - 1:24
**703** [1] - 34:21

## 8

**820** [1] - 1:15

## 9

**9** [2] - 2:5, 2:5
**90** [1] - 21:10
**963** [1] - 21:10
**9:00** [1] - 1:6

## A

**a.m** [1] - 50:14
**A.M** [1] - 1:6
**ability** [1] - 51:8
**able** [7] - 15:19, 15:20, 26:21, 28:2, 32:13, 37:21, 37:22
**above-entitled** [1] - 51:9
**absolutely** [6] - 12:12, 24:17, 27:18, 31:9, 44:2, 44:4
**abuse** [1] - 17:9
**access** [2] - 36:16, 50:9
**accessible** [1] - 47:10
**accordance** [1] - 38:18
**account** [1] - 36:17
**accounting** [1] - 34:23
**accurate** [1] - 28:12
**AcroMed** [1] - 20:25
**Act** [1] - 45:22
**acting** [1] - 17:6
**Action** [1] - 45:22
**action** [47] - 5:7, 5:9, 5:11, 5:12, 5:19, 5:20, 5:22, 6:9, 8:20, 8:23, 8:25, 9:20, 9:22, 9:24, 10:1, 10:2, 10:8, 10:15, 10:16, 10:24, 10:25, 11:3, 11:11, 11:12, 11:17, 12:20, 13:24, 16:11, 17:24, 21:3, 23:24, 23:25, 24:16, 33:20, 33:21, 33:22, 34:1, 38:22, 38:24, 39:2, 39:4, 39:9, 42:14
**actions** [21] - 8:20, 9:3, 9:6, 9:12, 9:14, 11:5, 11:8, 11:20,

12:4, 12:22, 13:16, 16:4, 18:8, 20:24, 23:15, 23:17, 25:21, 27:14, 27:24
**activity** [1] - 48:14
**actual** [4] - 17:15, 17:16, 21:16, 21:18
**actuality** [1] - 19:23
**ad** [1] - 19:21
**add** [2] - 21:24, 23:25
**added** [1] - 19:17
**adding** [1] - 19:21
**addition** [3] - 9:10, 11:19, 12:5
**additional** [2] - 29:18
**address** [5] - 13:2, 34:25, 41:15, 41:25
**addressed** [2] - 23:10, 46:5
**adequate** [1] - 18:3
**adequately** [1] - 40:21
**advantage** [3] - 30:5, 39:22, 48:9
**advertising** [1] - 48:16
**advice** [3] - 6:5, 6:25, 7:1
**advise** [1] - 8:1
**advisors** [1] - 29:14
**affected** [1] - 5:15
**affidavit** [3] - 14:20, 14:24, 15:21
**afraid** [1] - 44:11
**agents** [1] - 29:12
**aggressive** [1] - 48:14
**ago** [2] - 15:19, 22:15
**agree** [1] - 45:4
**agreed** [1] - 38:11
**air** [4] - 24:21, 24:25, 25:1, 25:7
**air-conditioning** [3] - 24:25, 25:1, 25:7
**Alabama** [1] - 12:7
**alert** [1] - 40:2
**allowing** [1] - 47:11
**allows** [1] - 46:3
**almost** [2] - 19:1, 24:1
**alone** [1] - 17:13
**American** [1] - 16:18
**amount** [9] - 14:17, 24:11, 28:7, 28:8, 28:24, 28:25, 29:13, 29:15, 29:20
**answer** [2] - 25:23, 44:3
**answered** [1] - 22:10
**AOL** [7] - 36:11, 36:12, 36:13, 36:14, 36:16, 36:18, 36:20
**AOL's** [1] - 36:14

**apparent** [1] - 8:8
**appeal** [1] - 21:8
**appeals** [2] - 45:14
**Appeals** [1] - 16:16
**appear** [1] - 12:22
**appearance** [2] - 3:11, 45:25
**APPEARANCES** [1] - 1:12
**application** [2] - 23:8, 24:18
**applied** [1] - 18:7
**applies** [1] - 25:8
**apply** [2] - 18:12, 25:8
**appointed** [1] - 15:9
**appreciate** [4] - 25:24, 26:12, 40:11, 47:6
**approach** [1] - 13:17
**appropriate** [1] - 39:13
**arbitration** [2] - 14:13, 14:15
**areas** [2] - 11:15, 32:25
**argue** [4] - 40:6, 40:7, 41:16, 42:7
**ARGUMENT** [1] - 1:10
**argument** [6] - 9:15, 15:17, 24:2, 41:10, 42:18, 44:14
**arguments** [1] - 16:25
**Arnold** [3] - 15:7, 16:9, 31:17
**asbestos** [2] - 21:10, 21:14
**aspect** [1] - 22:23
**aspects** [2] - 27:6, 41:17, 41:18
**assaults** [1] - 17:3
**assessments** [1] - 25:5
**assets** [2] - 15:1, 29:8
**association** [2] - 4:17, 24:19
**Association** [1] - 17:8
**assume** [3] - 42:17, 42:19, 46:8
**assumed** [1] - 19:22
**assumption** [1] - 19:23
**attached** [1] - 31:19
**attacking** [1] - 22:23
**attempting** [1] - 47:23
**attention** [1] - 41:7
**attorney** [5] - 8:9, 13:4, 24:18, 25:16, 25:19
**attorneys** [6] - 10:2, 10:6, 11:21, 12:8, 25:20, 26:22

**auctioned** [1] - 37:14
**audience** [1] - 3:22
**authored** [1] - 16:18
**authority** [2] - 46:11, 46:15
**avail** [1] - 44:2
**available** [8] - 6:1, 6:11, 9:8, 13:6, 36:4, 39:15, 39:16, 44:21
**availed** [2] - 43:13, 47:25
**AVENUE** [1] - 1:15
**avoid** [1] - 42:25
**aware** [4] - 5:5, 31:9, 31:14, 38:14

**B**

**B406** [1] - 1:23
**back-up** [1] - 35:12
**backed** [1] - 35:20
**backfill** [1] - 15:22
**background** [1] - 5:5
**backs** [1] - 35:4
**backup** [2] - 36:17
**badly** [1] - 48:13
**ball** [2] - 14:14, 45:5
**bankruptcy** [1] - 15:2
**bar** [5] - 4:17, 6:4, 6:13, 6:19, 8:14
**Bar** [11] - 6:2, 6:24, 6:25, 7:2, 13:3, 17:7, 20:8, 20:13, 20:15, 24:17, 25:2
**based** [3] - 9:25, 17:10, 20:24
**baseless** [1] - 8:14
**basis** [1] - 21:4
**Beach** [1] - 14:1
**become** [1] - 15:25
**BEFORE** [1] - 1:10
**behalf** [23] - 3:13, 3:16, 5:7, 5:9, 5:15, 5:21, 8:21, 8:22, 8:24, 8:25, 12:24, 15:6, 23:21, 24:24, 25:6, 30:16, 34:9, 34:17, 42:7, 46:11, 46:12
**behaving** [1] - 22:7
**bellwether** [1] - 31:11
**belong** [1] - 45:21
**bench** [1] - 11:13
**Berger** [1] - 16:13
**BERMAN** [1] - 1:16
**best** [7] - 17:2, 17:6, 30:8, 35:19, 38:3, 51:7
**better** [2] - 26:23, 31:8

**between** [4] - 4:2, 4:17, 8:6, 21:13
**billion** [1] - 24:1
**binding** [1] - 6:12
**bit** [1] - 33:10
**Blaine** [13] - 3:17, 6:2, 14:4, 14:15, 14:16, 14:25, 19:14, 30:23, 30:25, 32:17, 32:24, 35:22, 47:20
**blows** [1] - 43:24
**bone** [2] - 20:25, 33:1
**bottom** [1] - 48:12
**brief** [5] - 13:19, 23:7, 24:15, 30:16
**briefed** [2] - 7:11, 40:21
**briefings** [1] - 4:1
**briefly** [1] - 21:22
**briefs** [12] - 5:6, 8:14, 13:8, 13:9, 26:13, 41:5, 48:22, 48:25, 49:25, 50:2, 50:3, 50:4
**bring** [5] - 26:18, 26:19, 27:1, 28:11, 42:4
**bringing** [3] - 4:14, 33:17, 46:25
**brings** [1] - 48:25
**broker** [1] - 31:3
**brokers** [1] - 29:13
**brought** [3] - 34:16, 41:7, 47:3
**builder** [1] - 14:9
**builder's** [1] - 45:24
**bunch** [4] - 25:21, 26:2, 33:19, 37:13
**burden** [1] - 33:10
**business** [3] - 15:1, 48:10, 48:14
**buy** [3] - 43:20, 43:21, 43:23
**BY** [5] - 1:14, 1:17, 1:20, 1:25, 1:25

**C**

**calculated** [2] - 13:21, 19:20
**California** [4] - 43:17, 43:18, 44:2
**CALLED** [1] - 3:4
**cannot** [2] - 18:7, 21:18
**Carolina** [5] - 5:10, 5:17, 8:24, 23:25
**case** [50] - 3:9, 7:12, 8:13, 11:21, 12:17,

13:25, 14:5, 14:8, 15:10, 16:5, 17:22, 18:20, 20:18, 20:21, 21:5, 21:7, 21:10, 21:15, 23:6, 23:8, 24:6, 24:18, 25:8, 25:11, 27:24, 28:5, 28:9, 28:11, 28:14, 28:16, 34:5, 34:16, 34:17, 39:21, 40:6, 40:7, 40:21, 40:24, 41:9, 44:5, 44:17, 44:19, 44:22, 45:20, 45:24, 45:25, 46:14, 47:1, 48:3
**cases** [23] - 4:20, 6:20, 7:12, 9:11, 10:10, 11:16, 11:19, 11:20, 11:23, 13:9, 17:20, 19:22, 25:13, 27:13, 27:24, 30:7, 39:20, 40:25, 41:1, 41:21, 44:9, 45:2
**CATHY** [1] - 1:23
**Cathy** [2] - 51:3, 51:13
**CCR** [2] - 1:23, 51:13
**century** [1] - 16:12
**certain** [3] - 17:1, 29:20, 38:10
**certainly** [4] - 7:3, 43:4, 47:25, 48:11
**certificate** [1] - 19:11
**CERTIFICATE** [1] - 51:1
**certificates** [2] - 35:17, 36:6
**certification** [3] - 22:20, 22:22, 33:15
**Certified** [2] - 51:3, 51:4
**certified** [1] - 21:17
**certify** [2] - 33:13, 51:6
**cetera** [1] - 15:21
**changed** [1] - 23:15
**chart** [3] - 34:9, 34:21, 34:24
**check** [1] - 49:21
**chief** [1] - 16:16
**China** [6] - 31:4, 44:8, 44:12, 45:10, 48:7, 48:14
**CHINESE** [1] - 1:4
**Chinese** [4] - 34:20, 44:8, 44:9, 47:23
**chinese** [1] - 3:10
**CHINESE-MANUFACTURED** [1] - 1:4
**choose** [1] - 27:10

**choosing** [1] - 27:6
**Circuit** [9] - 14:1, 16:16, 16:18, 17:21, 18:4, 21:7, 21:8, 21:12, 26:5
**circumstances** [3] - 18:4, 18:14, 27:12
**citations** [1] - 26:14
**cited** [7] - 4:25, 7:12, 7:13, 8:13, 13:10, 25:12, 45:2
**citing** [1] - 25:9
**citizens** [3] - 5:7, 5:9, 42:16
**City** [1] - 14:1
**city** [1] - 37:5
**CIVIL** [1] - 1:5
**civilizations** [1] - 27:7
**claimants** [5] - 4:5, 21:13, 21:14, 27:16, 28:1
**claimed** [1] - 14:15
**claims** [2] - 23:22
**Class** [1] - 45:22
**class** [53] - 4:5, 5:6, 5:8, 5:9, 5:19, 6:9, 8:19, 8:20, 8:23, 8:25, 9:3, 9:12, 9:14, 9:20, 9:22, 10:2, 10:8, 10:15, 10:16, 10:24, 11:11, 11:20, 16:4, 16:11, 16:22, 16:24, 17:1, 17:2, 17:4, 17:24, 18:8, 19:25, 20:24, 21:3, 21:17, 22:20, 22:22, 23:24, 23:25, 25:6, 25:21, 27:14, 27:15, 27:17, 27:18, 27:21, 27:24, 27:25
**class-action** [6] - 9:20, 9:22, 10:24, 16:11, 23:25
**class-certification** [1] - 22:20
**classification** [1] - 22:23
**clauses** [1] - 19:21
**clawbacks** [1] - 39:16
**clean** [1] - 37:6
**clear** [1] - 21:15
**CLERK** [3] - 3:7, 3:10, 50:13
**clerk** [5] - 26:11, 48:24, 49:1, 49:5, 49:21
**client** [13] - 8:1, 8:2, 8:7, 8:11, 8:22, 9:2, 14:14, 14:24, 18:1, 22:4, 23:21, 34:22,

36:11
**clients** [17] - 7:18, 7:19, 7:21, 8:6, 11:9, 12:12, 12:24, 14:2, 16:4, 21:3, 22:8, 22:13, 22:14, 25:17, 27:20, 27:21, 45:18
**clients'** [1] - 17:6
**cloud** [1] - 36:18
**CO** [1] - 1:8
**co** [2] - 5:24, 19:5
**co-counsel** [2] - 5:24, 19:5
**Coast** [1] - 46:1
**colleagues** [2] - 4:18, 12:6
**collection** [2] - 25:4, 25:5
**Colleen** [3] - 5:12, 11:2, 33:21
**comfortable** [4] - 4:14, 7:1, 7:9, 27:9
**coming** [2] - 31:7, 38:8
**Comment** [2] - 7:17, 7:24
**comment** [1] - 22:17
**commitments** [1] - 26:11
**committee** [6] - 9:13, 9:19, 10:5, 10:13, 15:6, 15:8
**Committee** [1] - 3:14
**common** [1] - 24:22
**commonsense** [1] - 42:21
**Commonwealth** [2] - 5:8, 42:16
**companies** [2] - 18:25, 19:2
**company** [8] - 13:22, 29:15, 30:13, 31:5, 34:22, 35:8, 37:14, 44:2
**company's** [2] - 29:8, 48:12
**COMPEL** [1] - 2:8
**Compel** [6] - 30:11, 30:24, 32:7, 33:18, 41:24, 46:20
**compelled** [1] - 22:25
**complaining** [1] - 22:13
**complete** [3] - 17:14, 33:13, 38:15
**complicated** [1] - 47:9
**COMPUTER** [1] - 1:25
**computer** [8] - 35:4, 35:5, 35:6, 35:19, 35:24, 36:19, 37:20

**Computer** [1] - 36:12
**computers** [1] - 37:13
**computing** [1] - 36:18
**conceptually** [1] - 5:20
**concern** [2] - 38:13, 41:7
**concerned** [3] - 20:18, 26:24, 37:14
**concerns** [4] - 9:21, 21:11, 37:12, 45:1
**concluded** [1] - 50:15
**conclusion** [1] - 29:25
**conditional** [2] - 46:8, 46:10
**conditioning** [4] - 24:22, 24:25, 25:1, 25:7
**condominium** [3] - 24:19, 24:20, 24:24
**conduct** [1] - 18:6
**Conduct** [1] - 10:1
**confer** [1] - 43:3
**conference** [5] - 34:2, 38:1, 40:2, 40:3, 40:13
**confers** [1] - 31:14
**conflict** [17] - 4:2, 4:4, 6:15, 7:20, 8:8, 17:14, 17:16, 21:13, 21:16, 21:18, 30:1, 30:2, 30:3, 30:4, 30:5, 30:6
**connections** [1] - 43:19
**consent** [8] - 6:15, 7:21, 7:23, 8:3, 8:8, 8:11, 8:12, 46:23
**consider** [3] - 27:2, 41:23, 46:16
**considerations** [1] - 13:3
**constrained** [1] - 26:6
**construction** [1] - 9:17
**consult** [1] - 27:20
**contact** [2] - 42:12, 43:12
**contaminated** [1] - 42:20
**contaminating** [1] - 41:13
**context** [3] - 11:25, 12:1
**continued** [1] - 38:16
**convene** [1] - 27:22
**convention** [1] - 45:9
**converted** [1] - 34:12
**cooperate** [1] - 47:23
**coordinate** [1] - 12:7

**copy** [3] - 33:12, 33:14, 34:5
**corporate** [1] - 32:10
**Corporation** [6] - 3:17, 14:4, 14:7, 14:16, 14:25
**correct** [1] - 51:7
**COTLAR** [1] - 1:14
**counsel** [56] - 3:11, 3:24, 4:3, 4:4, 4:16, 4:17, 4:20, 4:22, 5:1, 5:6, 5:24, 6:9, 6:20, 6:21, 7:6, 7:13, 7:14, 7:25, 8:18, 10:7, 12:22, 13:15, 13:19, 13:20, 13:24, 13:25, 14:6, 14:21, 15:14, 17:5, 17:23, 18:13, 18:18, 19:5, 19:8, 21:21, 22:3, 22:6, 26:17, 26:20, 27:1, 27:5, 27:10, 27:14, 31:15, 32:4, 33:13, 33:15, 37:3, 38:2, 39:14, 40:17, 41:2, 50:7
**Counsel** [3] - 4:1, 6:23, 26:17
**COUNSEL.............** [1] - 2:4
**count** [3] - 19:1, 19:14, 19:18
**counted** [1] - 17:12
**country** [1] - 48:13
**County** [1] - 14:9
**couple** [1] - 22:19
**course** [4] - 3:22, 6:19, 10:12, 31:13
**COURT** [52] - 1:1, 1:23, 3:4, 3:8, 3:11, 3:15, 3:19, 3:21, 4:10, 9:9, 10:12, 10:20, 11:15, 13:1, 13:7, 13:13, 14:11, 14:18, 15:4, 21:21, 21:25, 22:12, 26:9, 32:9, 32:13, 32:18, 32:21, 32:25, 33:4, 33:8, 37:1, 37:8, 37:25, 38:20, 39:12, 40:16, 42:17, 42:22, 43:2, 43:4, 44:14, 45:4, 47:6, 48:3, 49:5, 49:21, 50:2, 50:5, 50:11
**court** [40] - 5:11, 5:12, 5:17, 5:22, 6:10, 8:19, 9:5, 9:6, 10:3, 10:23, 10:25, 11:3,

11:4, 11:8, 11:12, 11:22, 11:23, 12:20, 13:16, 16:21, 23:15, 23:17, 25:17, 26:4, 26:7, 33:20, 33:22, 40:20, 40:21, 41:3, 41:14, 41:17, 42:14, 42:22, 43:9, 45:18, 45:20, 45:21, 46:4, 49:16
**Court** [53] - 3:19, 4:7, 5:2, 7:16, 9:4, 9:21, 10:18, 12:14, 14:1, 14:8, 15:16, 16:16, 18:13, 18:18, 20:22, 23:5, 23:8, 23:13, 26:5, 26:6, 27:2, 30:16, 30:18, 30:20, 31:2, 31:8, 31:9, 31:14, 31:18, 31:20, 33:11, 38:14, 41:8, 41:23, 41:24, 42:3, 42:8, 42:9, 42:12, 43:5, 44:25, 46:7, 46:18, 47:4, 50:11, 51:4, 51:5, 51:6, 51:14, 51:15
**Court's** [4] - 34:15, 34:18, 39:6, 46:23
**court's** [1] - 21:9
**COURT...................... ......................** [15] - 2:5, 2:6, 2:8, 2:11, 2:14, 2:15, 2:16, 2:17, 2:18, 2:19, 2:20, 2:21, 2:22, 2:23, 2:24
**courts** [3] - 11:24, 12:5, 16:1
**cover** [2] - 8:14, 33:1
**coverage** [4] - 13:19, 13:20, 18:25
**created** [1] - 15:23
**critical** [1] - 31:10
**CRR** [2] - 1:23, 51:13
**current** [1] - 21:13
**cut** [2] - 17:17, 40:9

### D

**damages** [8] - 14:2, 14:10, 19:24, 20:1, 20:2, 28:13, 28:15, 28:22
**damnum** [1] - 19:21
**date** [4] - 32:11, 32:16, 38:10, 40:2
**David** [1] - 16:13
**Davis** [4] - 3:14, 30:16,

32:8, 33:19
**DAVIS** [16] - 1:14, 3:13, 30:15, 31:23, 32:3, 32:15, 32:20, 33:3, 33:7, 33:9, 37:2, 37:10, 38:13, 40:12, 47:18, 50:7
**DAVIS...................... ......................** [8] - 2:9, 2:10, 2:11, 2:12, 2:13, 2:14, 2:21, 2:24
**days** [4] - 12:18, 34:17, 47:8, 47:13
**deadline** [2] - 37:11, 37:23
**deal** [13] - 4:21, 12:2, 12:15, 25:13, 25:25, 26:7, 38:6, 40:8, 45:6, 45:13, 47:3, 47:4, 48:21
**dealing** [9] - 4:20, 4:24, 11:17, 18:8, 34:6, 35:7, 35:8, 40:24
**deals** [3] - 11:16, 31:4, 43:18
**dealt** [3] - 24:18, 31:4, 44:8
**decade** [1] - 45:15
**December** [3] - 32:12, 32:16, 47:2
**DECEMBER** [2] - 1:6, 3:3
**decided** [2] - 46:7, 46:9
**decision** [4] - 4:25, 25:14
**decisions** [1] - 27:19
**default** [1] - 45:24
**defective** [4] - 41:11, 42:23, 42:24, 43:6
**defendant** [7] - 4:1, 11:5, 11:10, 28:20, 28:24, 33:6, 43:13
**DEFENDANT** [1] - 1:19
**defendant's** [2] - 17:12, 20:19
**defendants** [11] - 7:14, 11:11, 16:23, 18:22, 28:15, 28:20, 28:25, 29:2, 29:3, 32:1, 42:15
**defense** [1] - 47:19
**defined** [1] - 4:3
**delete** [1] - 36:18
**deny** [1] - 30:9
**department** [2] - 36:15, 36:16

**depose** [1] - 15:20
**deposition** [5] - 33:2, 38:6, 38:9, 38:10, 38:15
**DEPUTY** [3] - 3:7, 3:10, 50:13
**designate** [1] - 32:1
**designation** [2] - 30:13, 38:9
**designee** [1] - 32:10
**determination** [2] - 16:23, 17:1
**determine** [1] - 30:3
**determining** [1] - 8:5
**Development** [1] - 14:7
**devil** [2] - 26:22, 26:23
**differ** [1] - 20:3
**different** [6] - 12:1, 23:23, 26:2, 28:14, 28:15
**diligently** [1] - 35:23
**directed** [5] - 10:4, 10:5, 10:19, 26:1, 42:10
**disagree** [1] - 7:13
**discovered** [1] - 48:18
**Discovery** [1] - 30:11
**discovery** [25] - 15:20, 18:19, 18:23, 19:7, 30:19, 30:22, 31:9, 31:13, 31:20, 33:23, 34:3, 34:13, 37:17, 38:23, 42:11, 43:15, 44:16, 44:17, 47:7, 47:14, 47:16, 47:21, 47:24
**DISCOVERY............. ..** [1] - 2:8
**discuss** [3] - 3:24, 4:10, 40:17
**discussed** [1] - 26:10
**discussing** [1] - 5:24
**disingenuous** [1] - 22:6
**disqualification** [1] - 23:16
**disqualified** [1] - 10:15
**DISQUALIFY** [1] - 2:4
**Disqualify** [15] - 3:25, 4:13, 4:21, 7:8, 9:24, 10:4, 12:16, 12:21, 21:1, 21:11, 22:5, 23:19, 26:17, 35:14, 41:24
**disqualify** [6] - 4:16, 6:20, 9:19, 15:10, 17:8, 22:6
**disqualifying** [1] -

12:9
**disrespect** [1] - 48:9
**distinguished** [1] - 23:6
**DISTRICT** [3] - 1:1, 1:1, 1:11
**district** [6] - 16:17, 16:21, 21:9, 45:18, 45:20, 45:21
**District** [10] - 12:18, 16:10, 16:14, 17:19, 24:16, 46:4, 46:7, 51:5, 51:6, 51:11
**districts** [1] - 16:11
**docket** [1] - 49:18
**DOCKET** [1] - 1:5
**docketed** [2] - 49:7, 49:15
**document** [4] - 33:24, 39:3, 39:9, 49:9
**DOCUMENT** [1] - 1:7
**documents** [11] - 33:12, 33:14, 33:23, 34:5, 38:24, 38:25, 39:1, 39:2, 39:8, 39:9, 44:6
**dollars** [5] - 19:15, 24:1, 24:7, 28:9, 28:10
**done** [13] - 33:20, 35:6, 35:25, 36:6, 37:23, 37:24, 44:2, 45:10, 45:11, 49:6, 50:4, 50:10
**doubt** [1] - 43:8
**down** [7] - 40:9, 43:1, 43:11, 45:25, 46:17, 47:3, 49:4
**Dragas** [1] - 14:15
**DRIVE** [1] - 1:21
**DRYWALL** [1] - 1:4
**drywall** [13] - 5:16, 19:15, 31:4, 34:20, 41:11, 41:12, 42:18, 42:19, 48:5, 48:8, 48:11, 48:13
**Drywall** [1] - 3:10
**duties** [1] - 12:24
**duty** [2] - 5:1, 42:9

### E

**e-mail** [4] - 36:10, 36:15, 36:17, 48:16
**e-mails** [2] - 36:20, 47:22
**early** [1] - 30:18
**easier** [1] - 39:17
**East** [1] - 46:1

**Eastern** [8] - 12:18, 16:10, 16:14, 17:19, 24:16, 46:4, 46:7, 51:6
**EASTERN** [1] - 1:1
**effect** [2] - 25:6, 34:12
**either** [5] - 4:23, 8:21, 9:13, 15:11, 48:21
**ELDON** [1] - 1:10
**electronic** [2] - 37:17, 49:9
**electronically** [1] - 30:12
**ELECTRONICALLY** [1] - 2:12
**element** [1] - 24:22
**elevated** [1] - 16:17
**ELMO** [1] - 22:2
**emerge** [1] - 30:2
**end** [3] - 20:20, 22:3, 25:12
**enlarge** [1] - 47:23
**ensure** [1] - 17:4
**entered** [1] - 12:19
**entire** [1] - 27:21
**entities** [1] - 47:23
**entitled** [2] - 20:10, 51:9
**entity** [4] - 28:21, 41:14, 42:23, 45:12
**entry** [1] - 46:23
**envy** [2] - 9:18, 12:13
**ESI** [10] - 30:12, 33:4, 33:5, 33:10, 34:14, 34:15, 35:15, 36:10, 37:23, 38:12
**ESQUIRE** [4] - 1:14, 1:17, 1:20, 1:20
**essence** [1] - 20:18
**established** [1] - 21:2
**et** [1] - 15:21
**ethical** [4] - 5:2, 6:18, 13:3, 23:4
**ethics** [7] - 4:24, 6:3, 7:4, 20:13, 20:14, 24:14, 25:3
**event** [1] - 24:12
**evidence** [4] - 15:16, 15:18, 15:22, 39:15
**examination** [1] - 43:12
**example** [4] - 15:21, 16:13, 43:16, 49:24
**exceeds** [1] - 20:5
**except** [2] - 22:25, 48:10, 27:21
**excess** [2] - 18:23, 18:25
**exercise** [1] - 42:12
**exhausted** [1] - 29:22

**Exhibit** [1] - 20:14
**existence** [3] - 18:10, 21:19, 42:14
**expect** [1] - 28:11
**expert** [4] - 7:4, 35:5, 35:6, 35:24
**explained** [2] - 11:10, 11:11
**explored** [1] - 43:14
**Express** [1] - 36:12
**extensive** [1] - 13:8
**extent** [1] - 11:24
**extraordinary** [1] - 27:11
**extremely** [1] - 22:5

### F

**F.3d** [1] - 21:10
**faced** [2] - 9:18, 18:1
**faces** [1] - 16:2
**facing** [2] - 16:3, 17:9
**fact** [6] - 4:18, 25:3, 25:25, 28:6, 31:7, 35:25
**facts** [1] - 6:6
**failed** [2] - 15:17, 24:23
**fair** [1] - 18:3
**Fairness** [1] - 45:22
**faith** [1] - 26:20
**FALLON** [1] - 1:10
**familiar** [6] - 13:10, 30:20, 31:2, 31:18, 31:21, 39:23
**far** [26] - 8:22, 9:5, 9:21, 13:3, 16:5, 18:23, 19:3, 21:17, 22:19, 22:22, 23:6, 23:9, 24:14, 25:11, 25:24, 34:3, 35:13, 35:15, 36:9, 39:3, 39:7, 41:19, 42:6, 44:5, 47:13
**fashion** [1] - 18:13
**fax** [1] - 14:23
**federal** [9] - 12:5, 16:1, 41:14, 42:14, 43:9, 45:18, 45:20, 45:21, 46:2
**fees** [1] - 24:21
**feet** [2] - 20:2
**fellows** [1] - 22:20
**felt** [2] - 22:25, 48:10
**Fibreboard** [1] - 20:21
**Fifth** [3] - 21:7, 21:8, 27:2
**figure** [4] - 35:6, 35:16, 36:13, 47:19

**file** [17] - 5:21, 5:22, 6:20, 11:3, 11:12, 12:21, 19:10, 22:25, 24:23, 36:3, 41:21, 43:25, 44:1, 46:17, 48:20, 49:25
**filed** [30] - 3:23, 5:6, 5:8, 5:11, 7:7, 9:25, 11:2, 11:9, 12:16, 12:19, 14:9, 23:15, 23:17, 23:19, 24:2, 24:8, 24:11, 24:15, 25:3, 33:22, 34:8, 41:3, 46:16, 46:22, 47:1, 48:24, 49:8, 49:13, 50:1
**files** [7] - 19:9, 34:7, 34:10, 35:14, 36:1, 49:3
**filing** [7] - 15:16, 22:22, 25:6, 41:19, 49:2, 49:3, 49:4
**filings** [1] - 23:14
**finally** [4] - 14:4, 14:12, 14:19, 25:11
**finest** [1] - 16:12
**finish** [2] - 15:12, 44:18
**firm** [3] - 16:7, 20:23, 24:19
**first** [12] - 3:25, 7:22, 10:24, 11:2, 13:12, 13:14, 13:15, 18:18, 26:16, 27:4, 34:25, 40:19
**FISHBEIN** [1] - 1:16
**fixed** [1] - 25:1
**Florida** [1] - 12:6
**fluidity** [1] - 18:9
**FOB** [2] - 44:7, 44:12
**focus** [1] - 36:23
**focused** [2] - 11:15, 12:3
**focuses** [1] - 30:11
**folks** [8] - 9:23, 24:4, 24:7, 24:8, 24:24, 25:6, 25:19, 25:21
**follow** [2] - 18:6, 38:1
**following** [1] - 27:3
**FOR** [2] - 1:14, 1:19
**foregoing** [1] - 51:7
**form** [2] - 34:18, 34:19
**formal** [6] - 6:12, 20:12, 20:14, 24:14, 24:16, 25:2
**format** [1] - 33:6
**former** [1] - 16:16
**forward** [4] - 10:25, 18:1, 38:5, 44:21
**four** [2] - 24:5, 28:20

**frame** [1] - 38:19
**frankly** [8] - 7:12, 8:16, 9:16, 17:21, 20:9, 20:11, 41:16, 48:6
**FRED** [1] - 1:17
**Fred** [3] - 3:14, 15:5, 31:16
**free** [1] - 44:23
**FRIDAY** [2] - 1:6, 3:3
**front** [1] - 9:18
**fun** [1] - 43:23
**fund** [21] - 4:3, 6:11, 10:22, 13:18, 13:23, 14:6, 19:3, 19:19, 20:19, 20:24, 21:2, 21:4, 21:16, 23:10, 23:20, 25:12, 25:13, 25:22, 28:2, 28:3
**funds** [3] - 6:1, 13:5, 20:20
**fussing** [1] - 49:1
**Futura** [1] - 13:25
**future** [1] - 21:14

### G

**gather** [1] - 31:11
**general** [1] - 18:24
**generally** [2] - 26:23, 40:24
**Germano** [15] - 5:6, 8:20, 9:20, 9:24, 10:2, 10:8, 10:11, 10:14, 10:16, 23:16, 24:16, 33:22, 34:16, 42:14, 46:2
**GERMANO** [1] - 1:7
**given** [4] - 26:14, 33:6, 33:11, 37:3
**global** [1] - 31:11
**global-type** [1] - 31:11
**Gonzales** [1] - 15:7
**Gosh** [1] - 43:20
**grave** [2] - 26:25, 27:1
**Great** [1] - 43:22
**greatly** [1] - 20:5
**Greek** [1] - 27:9
**Gross** [1] - 8:25
**grounded** [1] - 17:1
**Group** [1] - 13:25
**group** [3] - 12:11, 27:15, 27:25
**guess** [3] - 10:21, 12:18, 15:6
**guessing** [3] - 17:11, 17:14, 46:12
**guide** [1] - 28:12
**guy** [3] - 32:25, 35:19,

36:12
**guys** [1] - 32:13
**GYPSUM** [1] - 1:8

# H

**Hague** [1] - 45:9
**half** [2] - 24:1, 24:7
**Hall** [1] - 26:9
**Hall's** [1] - 26:4
**hand** [1] - 28:9
**happy** [2] - 48:1, 49:20
**hard** [4] - 33:12,
33:14, 34:4, 48:6
**Hardt** [1] - 3:18
**HARDT** [37] - 1:20,
3:16, 3:20, 4:7, 4:11,
9:16, 10:14, 10:21,
12:13, 13:2, 13:11,
13:14, 14:12, 14:19,
21:22, 22:13, 32:6,
32:10, 32:22, 33:17,
38:21, 40:11, 40:14,
41:15, 42:21, 43:1,
43:3, 43:11, 44:23,
45:16, 47:17, 48:23,
49:20, 49:23, 50:4,
50:6, 50:10
**HARDT**.....................
........................ [14] -
2:4, 2:5, 2:6, 2:7,
2:9, 2:10, 2:13, 2:15,
2:17, 2:18, 2:19,
2:20, 2:22, 2:23
**hardware** [1] - 37:13
**hate** [1] - 33:10
**head** [4] - 5:13, 5:23,
25:9, 47:18
**hear** [4] - 4:5, 13:7,
30:14, 32:4
**HEARD** [1] - 1:10
**heard** [4] - 12:18,
19:1, 19:4, 32:11
**hearing** [1] - 4:9
**held** [1] - 28:20
**help** [2] - 40:8, 49:22
**helpful** [1] - 48:11
**helping** [1] - 48:10
**Herbert** [1] - 16:13
**hereby** [1] - 51:6
**HERMAN** [2] - 1:14
**Herschovers** [1] -
25:18
**Higginbotham** [3] -
16:15, 16:21
**Hinkley** [4] - 5:8, 8:23,
9:21, 23:25, 46:9
**hire** [1] - 35:5
**historically** [1] - 48:3

**hit** [1] - 33:19
**home** [9] - 19:12,
19:13, 19:16, 19:25,
20:3, 24:5, 42:24,
43:22
**homeowners** [1] -
25:4
**homes** [8] - 19:14,
19:16, 20:1, 20:2,
23:23, 41:13, 42:20
**honestly** [1] - 15:18
**Honor** [64] - 3:13,
3:16, 4:7, 4:8, 4:11,
4:13, 4:24, 5:5, 7:11,
9:16, 9:18, 10:15,
13:6, 13:11, 13:14,
14:12, 14:19, 15:3,
15:5, 15:9, 15:24,
16:2, 16:7, 17:5,
18:11, 18:16, 19:20,
20:7, 20:10, 20:17,
21:15, 21:22, 21:23,
22:11, 22:21, 22:24,
25:24, 26:8, 30:15,
32:3, 32:15, 32:22,
33:3, 33:7, 33:17,
37:2, 37:11, 38:13,
38:21, 40:12, 40:14,
41:15, 41:16, 41:19,
43:11, 43:17, 44:23,
44:24, 45:16, 47:17,
47:18, 48:23
**Honor's** [1] - 38:18
**HONORABLE** [1] -
1:10
**hopeful** [2] - 37:10,
37:21
**hopefully** [1] - 36:7
**house** [1] - 36:5
**household** [1] - 19:24
**Howard** [1] - 17:23
**hundred** [4] - 19:16,
23:24
**hurricanes** [1] - 48:4
**hurts** [1] - 43:24
**hypothetical** [1] -
17:10
**hypotheticals** [1] -
20:6

# I

**idea** [4] - 8:2, 8:10,
8:11, 25:8
**identified** [1] - 34:20
**identify** [1] - 34:19
**if's** [1] - 17:13
**immediate** [1] - 45:14
**immediately** [1] - 11:1

**imminent** [1] - 31:8
**implicit** [1] - 17:2
**important** [3] - 11:6,
15:25, 27:6
**importer** [1] - 30:24
**impossible** [1] - 48:6
**improper** [1] - 16:6
**IN** [1] - 1:4
**inaccurate** [1] - 20:9
**Inc** [2] - 3:17, 14:25
**incensed** [2] - 32:6,
33:17
**incomplete** [1] - 37:4
**inconsistent** [1] -
44:15
**Incorporated** [1] -
16:19
**incorrect** [1] - 20:9
**independent** [5] -
7:25, 8:9, 8:16,
25:15, 28:17
**indicated** [3] - 13:19,
18:23, 41:22
**individual** [29] - 4:5,
4:22, 5:11, 5:17,
5:22, 6:10, 8:18, 9:6,
9:14, 10:3, 10:23,
11:2, 11:4, 11:8,
13:16, 16:4, 21:3,
23:14, 23:17, 25:17,
27:5, 27:16, 27:18,
28:1, 28:14, 36:1,
36:3, 38:10
**individuals** [4] - 9:14,
10:7, 27:17, 27:23
**informal** [9] - 6:3,
6:12, 6:14, 7:3, 7:4,
8:13, 17:7, 20:8,
20:11
**information** [17] -
6:22, 14:22, 30:12,
31:12, 34:19, 35:11,
35:12, 35:16, 35:19,
36:7, 36:10, 37:7,
37:20, 38:12, 38:16,
39:20, 44:21
**INFORMATION**...........
............ [1] - 2:12
**initial** [1] - 49:12
**injuries** [1] - 23:23
**innate** [1] - 4:2
**inquiry** [2] - 22:14,
42:10
**installed** [3] - 19:15,
43:7, 43:8
**installer** [1] - 19:11,
29:20, 30:25
**installer's** [1] - 29:21
**installers** [2] - 19:6,
29:23

**instance** [2] - 20:5,
29:10
**instances** [1] - 20:4
**instituted** [1] - 39:24
**instructed** [1] - 30:18
**insurance** [4] - 13:22,
18:19, 18:22, 19:11,
29:7, 29:9, 29:11,
29:12, 29:14, 29:21,
29:22, 35:17, 35:18,
36:6
**insurer's** [1] - 29:22
**insurers** [1] - 29:18
**intend** [1] - 16:6
**interest** [2] - 16:24,
22:15
**interested** [1] - 40:4
**interesting** [3] - 21:6,
22:3, 22:17
**interestingly** [1] -
20:25
**interests** [2] - 17:6
**International** [4] -
42:12, 43:12, 47:9,
47:13
**Internet** [1] - 47:10
**interpose** [1] - 16:25
**interpretation** [1] -
7:16
**interpreted** [1] - 29:10
**interprets** [1] - 7:25
**introduced** [1] - 15:13
**introduction** [1] -
15:22
**involved** [12] - 9:12,
13:20, 17:19, 18:9,
19:6, 29:1, 29:2,
29:3, 31:16, 44:9,
45:1
**involving** [2] - 11:16,
12:4
**Irvin** [1] - 15:7
**Island** [1] - 14:7
**issue** [33] - 8:7, 8:15,
12:23, 13:2, 13:10,
13:18, 14:6, 19:7,
23:4, 23:7, 24:18,
25:2, 26:3, 26:7,
31:25, 32:18, 34:14,
34:15, 38:7, 40:17,
40:20, 41:15, 41:25,
42:6, 42:10, 46:5,
46:13, 46:24, 47:3,
47:4
**ISSUE**........................
............ [1] - 2:16
**issued** [4] - 30:19,
31:17, 31:20, 46:9
**issues** [10] - 7:11,
11:24, 12:15, 16:23,

21:9, 23:10, 43:14,
46:16, 46:21
**issuing** [1] - 31:13
**itself** [5] - 5:2, 41:25,
44:3, 48:7

# J

**James** [1] - 14:7
**job** [2] - 28:24, 29:20
**jobs** [1] - 29:18
**joined** [1] - 11:5
**joint** [1] - 28:16
**JUDGE** [1] - 1:11
**Judge** [5] - 16:15,
16:21, 26:4, 26:9,
42:4
**judge** [5] - 12:5,
16:15, 16:17, 26:4,
46:11
**June** [3] - 15:1, 37:3,
38:22
**jurisdiction** [28] -
41:8, 41:14, 41:17,
42:1, 42:4, 42:6,
42:13, 42:23, 42:25,
43:3, 43:9, 43:10,
44:3, 44:18, 45:6,
45:7, 45:13, 45:15,
46:2, 46:5, 46:6,
46:15, 47:7, 47:8,
47:22, 48:17
**JURISDICTIONAL** [1]
- 2:16
**jurisdictional** [7] -
40:17, 40:20, 41:18,
45:6, 46:16, 46:21,
46:24
**jurists** [1] - 16:14
**justice** [1] - 16:16

# K

**KATZ** [1] - 1:14
**keep** [2] - 40:1, 49:16
**keeps** [1] - 19:8
**Kenneth** [1] - 3:18
**KENNETH** [1] - 1:20
**kept** [2] - 35:21, 36:19
**keyed** [1] - 36:2
**kind** [10] - 5:13, 5:20,
7:8, 7:24, 14:13,
25:9, 25:15, 36:11,
39:23
**knowledgeable** [1] -
37:16
**knows** [3] - 26:22,
31:3, 31:8

## L

**LA** [2] - 1:15, 1:24
**last** [2] - 20:23, 21:23
**lastly** [1] - 29:17
**late** [1] - 15:22
**law** [10] - 7:12, 8:13, 15:10, 21:15, 26:11, 27:7, 42:9, 46:3, 49:21
**lawsuits** [1] - 24:2
**lawyer** [3] - 8:17, 9:17, 27:8
**lawyers** [5] - 5:1, 12:10, 12:11, 27:24, 39:23
**Lazy** [3] - 17:22, 23:6, 23:8
**leading** [3] - 16:10, 16:14, 17:20
**least** [4] - 4:10, 9:10, 19:15, 39:21
**left** [1] - 32:23
**legal** [9] - 17:3, 17:7, 20:8, 20:13, 20:14, 24:14, 25:3, 36:15, 36:16
**legion** [1] - 27:13
**LEONARD** [1] - 1:14
**Leonard** [2] - 3:14, 30:16
**less** [2] - 11:17, 20:4
**level** [1] - 16:21
**Levin** [2] - 15:7, 16:9
**LEVIN** [1] - 1:16
**Levin's** [1] - 31:17
**Lewis** [1] - 15:8
**LexisNexis** [1] - 50:8
**liability** [8] - 18:24, 19:21, 28:17, 29:4, 29:11, 29:15, 44:11
**LIABILITY** [1] - 1:4
**liable** [5] - 28:19, 28:23, 29:5
**licensed** [1] - 35:9
**lightly** [2] - 15:10, 15:11
**limited** [22] - 6:11, 7:19, 10:22, 13:18, 13:23, 14:6, 19:3, 19:19, 20:19, 20:20, 20:24, 21:2, 21:4, 21:16, 23:10, 23:20, 25:12, 25:13, 28:2, 28:3, 29:12
**line** [1] - 48:12
**list** [4] - 13:16, 23:13, 23:16, 34:21
**listed** [1] - 34:9

**LITIGATION** [1] - 1:5
**litigation** [10] - 11:16, 11:18, 12:3, 12:7, 16:11, 17:15, 20:25, 21:1, 30:1, 44:11
**litigations** [1] - 17:20
**log** [11] - 33:25, 34:1, 38:18, 38:19, 38:20, 39:5, 39:7, 39:10, 39:11, 39:12, 39:13
**LOGAN** [1] - 1:19
**LONGER** [4] - 1:17, 15:5, 21:23, 22:1
**LONGER..................
.........................** [1] - 2:7
**Look** [4] - 6:23, 34:4, 34:6, 46:14
**look** [11] - 5:2, 8:4, 11:12, 23:13, 23:20, 25:16, 34:11, 38:7, 39:12, 45:19, 47:11
**looked** [2] - 21:5, 45:22
**looking** [7] - 7:25, 8:9, 8:17, 11:25, 12:1, 29:7, 44:15
**looks** [2] - 9:11, 37:25
**lost** [1] - 49:17
**LOUISIANA** [2] - 1:1, 1:6
**Louisiana** [10] - 28:6, 28:18, 43:8, 43:19, 43:22, 43:24, 44:1, 44:3, 47:3, 51:6
**LTD** [1] - 1:8

## M

**madam** [1] - 41:17
**mail** [4] - 36:10, 36:15, 36:17, 48:16
**mails** [2] - 36:20, 47:22
**Management** [1] - 14:16
**MANUFACTURED** [1] - 1:4
**manufactured** [3] - 41:11, 42:18, 48:5
**manufacturer** [3] - 11:5, 24:25, 25:7
**manufacturers** [2] - 44:8, 44:9
**MARK** [1] - 1:20
**Mark** [1] - 36:15
**market** [1] - 47:24
**massive** [1] - 12:7
**master** [1] - 31:20

**material** [5] - 30:12, 33:1, 33:4, 33:5, 38:9
**materially** [1] - 7:19
**matter** [14] - 3:24, 4:16, 13:23, 23:25, 26:7, 26:10, 30:19, 42:1, 42:3, 45:3, 46:5, 46:6, 46:14, 51:9
**matters** [4] - 5:2, 16:7, 26:5, 41:23
**maximum** [1] - 19:19
**MDL** [33] - 1:5, 3:10, 9:10, 9:15, 9:16, 10:6, 11:6, 11:17, 11:23, 12:2, 12:3, 12:17, 16:1, 18:12, 18:14, 25:25, 26:6, 27:24, 32:16, 34:3, 34:13, 38:23, 41:19, 44:25, 45:24, 46:8, 46:13, 46:15, 48:20, 48:25, 49:6, 49:7, 49:14
**MDL's** [1] - 27:14
**mean** [1] - 48:9
**MECHANICAL** [1] - 1:25
**mechanically** [2] - 18:7, 18:12
**mechanisms** [1] - 39:22
**medieval** [1] - 27:9
**meet** [1] - 31:14
**meeting** [2] - 27:22, 38:2
**member** [1] - 6:4
**members** [8] - 6:9, 10:16, 10:19, 15:8, 23:24, 23:25, 24:20, 27:18
**mentioned** [4] - 13:17, 24:15, 35:13, 38:22
**Merit** [1] - 51:4
**MIDLOTHIAN** [1] - 1:21
**might** [5] - 4:19, 7:18, 15:19, 15:20, 45:7
**MILL** [1] - 1:21
**million** [30] - 5:18, 13:21, 13:22, 14:17, 18:21, 18:23, 19:11, 19:12, 19:13, 19:15, 19:17, 19:24, 20:1, 20:3, 20:5, 23:11, 23:12, 23:18, 23:21, 23:22, 24:6, 24:7, 24:9, 24:12, 25:23, 28:4, 28:9

**mind** [1] - 43:8
**mindful** [1] - 48:18
**minds** [1] - 16:12
**minimum** [5] - 19:12, 19:19, 19:24, 42:11, 43:12
**minute** [3] - 5:25, 9:4, 10:22
**mixed** [1] - 48:23
**modern** [2] - 15:25, 47:12
**mom** [2] - 43:17, 43:18
**Monday** [3] - 35:25, 36:8, 38:8
**money** [2] - 9:7, 11:7
**monitoring** [1] - 26:12
**months** [2] - 11:13, 37:6
**Morgans** [1] - 25:19
**morning** [8] - 3:8, 3:13, 3:16, 14:20, 15:5, 30:15, 33:12, 33:19
**most** [4] - 21:6, 22:2, 27:9, 37:16
**Motion** [21] - 3:25, 4:13, 4:21, 7:7, 9:24, 10:4, 12:16, 12:21, 21:1, 21:11, 22:4, 23:19, 26:16, 30:11, 30:24, 32:7, 33:18, 35:14, 41:23, 41:24, 46:20
**motion** [20] - 6:20, 15:16, 16:22, 17:9, 17:12, 17:13, 18:20, 20:7, 20:19, 22:9, 22:25, 26:19, 30:9, 30:10, 30:14, 31:19, 41:6, 42:2, 48:19, 49:24
**MOTION** [2] - 2:4, 2:8
**motions** [17] - 3:22, 12:20, 17:1, 17:8, 26:17, 27:1, 27:2, 40:22, 40:23, 40:25, 41:20, 49:6, 49:8, 49:12, 49:13, 49:19, 49:24
**movants** [2] - 15:9, 18:21
**move** [1] - 4:16
**moved** [2] - 15:9, 47:13
**mover** [1] - 29:7
**moving** [6] - 4:6, 9:19, 15:15, 22:6, 30:9, 45:5
**MR** [77] - 2:4, 2:5, 2:6,

2:7, 2:7, 2:9, 2:9, 2:10, 2:10, 2:11, 2:12, 2:13, 2:13, 2:14, 2:15, 2:17, 2:18, 2:19, 2:20, 2:21, 2:22, 2:23, 2:24, 3:13, 3:16, 3:20, 4:7, 4:11, 9:16, 10:14, 10:21, 12:13, 13:2, 13:11, 13:14, 14:12, 14:19, 15:5, 21:22, 21:23, 22:1, 22:13, 30:15, 31:23, 32:3, 32:6, 32:10, 32:15, 32:20, 32:22, 33:3, 33:7, 33:9, 33:17, 37:2, 37:10, 38:13, 38:21, 40:11, 40:12, 40:14, 41:15, 42:21, 43:1, 43:3, 43:11, 44:23, 45:16, 47:17, 47:18, 48:23, 49:20, 49:23, 50:4, 50:6, 50:7, 50:10
**multiple** [5] - 11:21, 13:5, 17:21, 18:9, 20:16
**mustard** [1] - 17:17

## N

**name** [3] - 3:17, 16:18, 31:3
**names** [1] - 36:2
**NANAVATI** [1] - 1:20
**Nanavati** [1] - 36:15
**Nassau** [1] - 14:9
**natural** [1] - 33:5
**naturally** [1] - 16:23
**nature** [2] - 16:22, 41:9
**necessary** [2] - 40:10, 47:14
**need** [32] - 6:17, 8:4, 13:2, 21:20, 25:15, 29:15, 30:20, 31:7, 31:11, 31:24, 33:2, 33:11, 34:5, 34:12, 37:10, 37:15, 37:18, 37:23, 37:24, 38:3, 38:14, 38:15, 39:17, 39:18, 39:25, 40:9, 43:14, 48:15, 48:20, 49:6, 49:13, 49:15
**needed** [2] - 41:24, 48:13
**needing** [1] - 48:13
**needs** [1] - 49:5
**negative** [1] - 22:10

**negligence** [1] - 28:19
**negligent** [1] - 28:21
**network** [3] - 35:20, 35:21, 36:11
**never** [1] - 21:1
**new** [4] - 9:17, 39:14, 39:22, 50:3
**New** [1] - 14:9
**NEW** [3] - 1:6, 1:15, 1:24
**Newberg** [1] - 16:13
**next** [6] - 24:2, 30:10, 35:15, 36:9, 40:13, 44:15
**Nguyen** [16] - 5:12, 11:1, 11:2, 18:20, 33:21, 33:24, 34:1, 34:5, 34:13, 36:5, 38:22, 38:24, 39:2, 39:4, 39:9
**Nguyens** [1] - 25:18
**NO** [1] - 1:5
**none** [1] - 11:4
**None** [1] - 11:8
**nonetheless** [1] - 17:3
**Norfolk** [5] - 5:12, 18:20, 23:18, 26:5, 35:1
**North** [5] - 5:10, 5:17, 8:24, 23:25
**note** [1] - 4:12
**nothing** [6] - 10:9, 10:17, 16:5, 38:23, 44:2
**notice** [1] - 27:13
**noticed** [1] - 49:18
**notices** [1] - 31:17
**notion** [1] - 21:13
**November** [1] - 22:3
**nowadays** [1] - 39:14
**NUCKLOS** [1] - 1:19
**number** [13] - 3:21, 9:5, 12:15, 15:13, 16:3, 17:12, 17:20, 21:9, 23:12, 25:12, 30:19, 31:14
**numbered** [1] - 51:9
**numbers** [1] - 24:1
**numerous** [2] - 8:18, 44:9

### O

**O'KEEFE** [1] - 1:15
**object** [1] - 15:21
**objected** [1] - 17:25
**objecting** [1] - 18:1
**objection** [5] - 3:23, 4:8, 42:2, 46:21,
48:24
**objections** [1] - 45:2
**objective** [5] - 8:9, 8:17, 17:3, 25:16, 25:19
**objectively** [1] - 8:1
**obligation** [3] - 18:5, 23:3, 50:8
**obligations** [2] - 6:18, 13:4
**obliged** [2] - 15:15, 18:6
**observations** [1] - 27:3
**obtained** [1] - 7:23
**obviously** [4] - 23:22, 44:23, 46:15, 48:4
**occasionally** [1] - 29:23
**occupy** [1] - 11:22
**odd** [1] - 4:20
**OF** [2] - 1:1, 1:10
**off-site** [2] - 34:22, 35:8
**offered** [2] - 32:10, 32:11
**office** [2] - 31:17
**Official** [2] - 51:5, 51:14
**OFFICIAL** [1] - 1:23
**often** [1] - 27:19
**oftentimes** [1] - 29:19
**Oil** [3] - 17:22, 23:6, 23:8
**once** [1] - 24:19
**one** [29] - 4:18, 4:20, 6:15, 7:18, 8:6, 11:16, 11:25, 16:10, 16:14, 17:20, 19:4, 20:17, 20:23, 21:6, 21:23, 23:18, 24:2, 24:9, 24:21, 25:9, 27:6, 28:6, 28:20, 30:7, 31:8, 32:23, 33:4, 40:24, 45:16
**onset** [1] - 15:23
**opening** [1] - 17:13
**opinion** [15] - 6:3, 6:12, 6:14, 7:3, 8:13, 16:18, 17:7, 20:9, 20:11, 20:13, 20:14, 21:9, 24:14, 24:16, 25:3
**opinions** [1] - 7:4
**opponent** [1] - 13:7
**opportunities** [1] - 48:7
**opportunity** [6] - 13:8, 13:9, 26:13, 27:8, 27:20, 48:10
**opposed** [1] - 15:23
**opposing** [4] - 18:13, 19:8, 31:15, 33:12
**opposite** [4] - 15:14, 17:5, 18:18, 22:3
**opposition** [1] - 16:25
**ORAL** [1] - 1:10
**oral** [1] - 15:17
**order** [11] - 12:19, 23:16, 34:15, 34:18, 38:18, 46:8, 46:10, 46:24, 47:11, 49:11, 49:13
**ORDER** [1] - 3:4
**orders** [1] - 37:11
**originally** [2] - 18:21, 23:15
**ORLEANS** [3] - 1:6, 1:15, 1:24
**Ortiz** [5] - 20:18, 20:21, 21:5, 25:11, 25:14
**ought** [1] - 38:5
**ourselves** [1] - 7:1
**outcome** [1] - 23:3
**Outlook** [1] - 36:12
**overdue** [1] - 24:21
**own** [4] - 27:20, 28:19, 35:9, 36:19
**owners** [2] - 24:20, 29:8

### P

**PAGE** [1] - 2:2
**page** [1] - 22:16
**panel** [3] - 46:9, 46:13, 46:15
**paper** [1] - 40:10
**papers** [3] - 15:13, 19:23, 20:14
**part** [6] - 5:18, 24:23, 34:25, 37:2, 37:19, 40:16
**particular** [2] - 43:13, 45:12
**particularly** [1] - 47:8
**parties** [6] - 4:25, 15:15, 26:14, 30:19, 30:22, 49:12
**partner** [3] - 17:22, 17:25, 36:15
**party** [3] - 4:6, 11:6, 30:9
**pass** [1] - 30:15
**passed** [1] - 11:24
**past** [1] - 16:11
**paying** [1] - 28:22
**PDF** [1] - 33:6
**peek** [1] - 39:17
**peeks** [1] - 39:15
**pending** [10] - 9:7, 10:10, 12:20, 14:1, 14:8, 22:5, 26:5, 40:23, 41:20
**PENNSYLVANIA** [1] - 1:18
**Pennsylvania** [3] - 16:10, 16:15, 17:19
**people** [13] - 3:21, 9:13, 11:1, 11:22, 12:8, 13:5, 22:6, 26:1, 27:22, 35:10, 43:24, 45:9
**Pepper** [3] - 51:3, 51:12, 51:13
**PEPPER** [1] - 1:23
**per** [5] - 19:13, 19:16, 19:24, 20:3, 36:4
**perceive** [1] - 14:22
**percent** [2] - 28:20, 28:22
**perfectly** [2] - 18:2, 20:15
**permissible** [1] - 20:15
**personal** [5] - 23:23, 29:8, 41:16, 42:6, 42:13
**PHILADELPHIA** [1] - 1:18
**Philadelphia** [2] - 16:9, 16:13
**phone** [4] - 3:21, 14:21, 26:10, 40:9
**phonetically** [1] - 25:18
**pick** [2] - 27:8, 44:13
**pile** [1] - 9:7
**placed** [2] - 7:2, 42:19
**plaintiff** [10] - 5:18, 9:19, 10:5, 11:2, 13:15, 15:6, 15:8, 16:2, 17:25, 30:14
**PLAINTIFF** [1] - 1:14
**PLAINTIFF'S** [1] - 2:8
**plaintiff's** [4] - 7:6, 13:24, 13:25, 30:14
**Plaintiff's** [1] - 30:11
**plaintiffs** [22] - 6:10, 6:23, 7:13, 7:24, 8:19, 10:2, 10:3, 10:6, 10:17, 10:23, 10:24, 14:5, 14:21, 24:5, 25:18, 28:4, 28:7, 28:9, 30:3, 34:8, 42:16, 44:7
**Plaintiffs** [1] - 3:14
**Plaintiffs'** [1] - 3:25
**peek** [1] - 39:17
**PLAINTIFFS'** [1] - 2:4
**plaintiffs** [3] - 4:3, 4:4, 5:6
**plan** [1] - 38:11
**play** [2] - 22:21
**playground** [1] - 22:21
**pleasure** [1] - 3:20
**plus** [2] - 14:2, 14:10
**point** [11] - 24:21, 29:2, 29:3, 29:4, 29:25, 30:7, 37:1, 38:4, 40:1, 44:24, 44:25
**pointed** [1] - 18:22
**points** [2] - 15:25, 22:19
**policies** [3] - 18:24, 19:2, 29:9
**policy** [1] - 19:12
**pop** [3] - 43:17, 43:19
**popped** [1] - 5:23
**porter** [1] - 15:20
**Porter** [17] - 3:17, 6:2, 14:4, 14:15, 14:16, 14:20, 14:25, 19:14, 30:23, 30:25, 31:5, 32:17, 32:22, 32:23, 32:24, 35:22, 47:20
**Porter's** [1] - 31:15
**Porter-Blaine** [13] - 3:17, 6:2, 14:4, 14:15, 14:16, 14:25, 19:14, 30:23, 30:25, 32:17, 32:24, 35:22, 47:20
**portion** [1] - 49:10
**position** [7] - 4:2, 7:2, 12:14, 13:6, 15:14, 26:8, 42:8
**positively** [1] - 24:17
**possibility** [1] - 30:2
**possible** [2] - 30:4, 30:5
**POYDRAS** [1] - 1:23
**practical** [1] - 20:20
**practice** [8] - 4:15, 5:1, 16:1, 16:9, 16:22, 18:12, 18:15
**premature** [1] - 30:8
**premise** [1] - 21:19
**preparation** [1] - 21:5
**prepared** [1] - 41:16
**preparing** [1] - 31:10
**presence** [2] - 42:15, 45:23
**present** [2] - 15:16, 25:8
**presented** [3] - 6:8, 20:7, 48:7

**presents** [2] - 4:4, 7:20
**preservation** [1] - 37:11
**president** [1] - 32:23
**press** [1] - 10:25
**pretrial** [3] - 34:15, 38:18, 49:13
**primarily** [2] - 30:11, 33:21
**primary** [3] - 29:19, 29:21, 29:22
**principal** [1] - 31:5
**privilege** [2] - 34:1, 38:19
**privileged** [10] - 33:25, 38:17, 38:20, 39:5, 39:7, 39:10, 39:11, 39:12, 39:13
**problem** [7] - 8:6, 32:2, 32:5, 37:2, 38:4, 39:25, 40:7
**problematic** [1] - 27:16
**problems** [2] - 40:5
**procedurally** [1] - 7:8
**procedure** [1] - 22:20
**proceed** [1] - 45:13
**proceeding** [4] - 7:9, 14:13, 48:20, 49:10
**PROCEEDINGS** [3] - 1:10, 1:25, 3:1
**proceedings** [4] - 22:23, 49:9, 50:14, 51:8
**process** [4] - 8:3, 9:15, 9:16, 26:7
**produce** [2] - 34:10, 38:3
**PRODUCED** [1] - 1:25
**produced** [13] - 15:19, 18:19, 19:9, 19:10, 33:23, 33:25, 34:1, 35:11, 38:24, 39:7, 39:8, 44:6
**product** [9] - 42:23, 42:24, 43:6, 43:7, 43:20, 43:21, 43:23, 43:25
**production** [5] - 18:23, 33:11, 33:13, 33:24, 38:15
**PRODUCTS** [1] - 1:4
**Professional** [2] - 9:25, 51:4
**professional** [2] - 18:5, 18:6
**profile** [2] - 34:18, 34:19
**program** [2] - 6:3, 6:4

**prohibit** [2] - 25:5, 28:7
**project** [7] - 19:9, 19:10, 34:7, 34:10, 36:1, 36:3, 36:4
**projects** [1] - 35:18
**promising** [1] - 19:8
**proper** [1] - 6:19
**prosecution** [1] - 16:24
**protected** [2] - 27:5, 27:11
**Proto** [1] - 13:25
**proven** [1] - 21:17
**provide** [1] - 49:12
**provided** [6] - 6:22, 13:15, 14:20, 20:13, 23:13, 23:16
**providing** [3] - 14:22, 14:23, 48:11
**PSC** [10] - 10:9, 10:19, 25:25, 26:1, 30:17, 30:18, 30:19, 34:3, 34:24
**purchased** [1] - 42:19
**pure** [3] - 17:10
**purposely** [1] - 43:13
**purposes** [2] - 20:20, 42:18
**pursue** [1] - 47:1
**put** [5] - 9:1, 22:2, 29:20, 34:21, 42:24
**puts** [1] - 25:12
**putting** [1] - 15:18

## Q

**quarter** [1] - 16:11
**questions** [3] - 22:9, 22:10, 38:6
**quick** [3] - 33:23, 39:15, 39:17
**quickly** [2] - 18:17, 37:24
**quite** [4] - 15:18, 22:8, 22:15, 41:9

## R

**raise** [3] - 23:4, 44:24, 47:5
**raised** [14] - 5:3, 11:25, 12:16, 15:24, 21:12, 22:9, 40:18, 40:20, 41:18, 42:1, 45:17, 46:13, 46:20, 46:24
**rather** [2] - 30:2, 39:16

**RE** [1] - 1:4
**Re** [1] - 3:10
**re** [1] - 21:10
**reached** [1] - 46:22
**read** [4] - 13:9, 16:20, 25:13, 42:9
**real** [4] - 7:15, 17:3, 28:5, 34:13
**reality** [4] - 16:1, 16:2, 17:8, 19:23
**really** [22] - 5:1, 5:3, 6:13, 7:12, 8:20, 12:24, 13:19, 20:20, 23:2, 25:2, 30:25, 33:9, 33:11, 34:7, 37:12, 37:14, 41:22, 44:22, 45:8, 45:23, 46:6, 49:17
**Realtime** [1] - 51:3
**reason** [9] - 5:3, 21:18, 23:18, 41:18, 41:21, 42:13, 45:17, 49:15, 49:17
**reasonable** [2] - 18:2, 28:8
**reasons** [1] - 23:2
**rebuttal** [2] - 21:21, 24:15
**received** [1] - 4:1
**recently** [1] - 34:2
**recess** [1] - 50:12
**recognize** [3] - 26:16, 26:25, 27:4
**recognized** [2] - 17:9, 27:10
**recognizes** [1] - 26:20
**record** [18] - 3:12, 4:11, 6:21, 9:5, 12:22, 13:11, 15:13, 15:18, 15:22, 16:20, 17:23, 18:17, 33:15, 47:21, 48:2, 49:10, 49:16, 51:8
**RECORDED** [1] - 1:25
**refer** [1] - 24:15
**referral** [1] - 22:14
**referred** [3] - 12:4, 22:4, 22:16
**referring** [2] - 22:7, 22:13
**refile** [6] - 41:2, 46:18, 46:19, 49:6, 49:23, 49:24
**refiled** [2] - 41:6, 49:14
**reflected** [1] - 18:14
**regard** [3] - 18:12, 28:2, 48:19
**Registered** [2] - 51:3, 51:4

**rejected** [1] - 21:12
**relate** [2] - 34:8, 38:25
**related** [3] - 9:20, 39:1, 39:2
**RELATES** [1] - 1:7
**relates** [2] - 9:23, 10:14
**relationship** [1] - 28:11
**relevant** [1] - 39:3
**relief** [1] - 10:25
**relish** [1] - 23:1
**reluctant** [1] - 26:18
**remind** [1] - 50:7
**report** [2] - 6:17, 40:12
**reportable** [1] - 6:16
**reporter** [1] - 41:17
**REPORTER** [1] - 1:23
**Reporter** [6] - 51:3, 51:4, 51:5, 51:14
**REPORTER'S** [1] - 51:1
**represent** [19] - 4:5, 6:9, 8:18, 9:13, 10:6, 10:7, 10:17, 10:23, 10:24, 13:4, 16:3, 16:4, 25:20, 26:1, 27:8, 27:15, 27:16, 27:17, 27:25
**representation** [7] - 7:18, 9:23, 10:10, 17:2, 17:4, 17:22, 19:5
**representations** [2] - 18:9, 20:16
**representative** [4] - 17:25, 30:13, 32:2, 32:19
**representatives** [1] - 11:18
**represented** [4] - 10:2, 10:8, 11:22, 24:19
**representing** [7] - 5:14, 5:16, 8:5, 8:6, 10:16, 12:8, 12:11
**reproduce** [1] - 34:4
**request** [1] - 37:19
**requested** [1] - 39:9
**requests** [1] - 33:24
**required** [1] - 19:12
**requires** [1] - 15:11
**research** [1] - 41:22
**resolve** [2] - 12:23, 39:25
**resolved** [5] - 6:15, 11:12, 11:14, 45:5, 45:8
**respond** [1] - 27:23
**responded** [1] - 36:24
**response** [8] - 6:11,

6:16, 6:24, 6:25, 33:24, 34:15, 46:20, 46:21
**responses** [1] - 38:23
**responsibilities** [1] - 27:25
**responsibility** [7] - 7:19, 23:5, 26:25, 27:2, 27:15, 27:18, 29:11
**responsible** [5] - 28:21, 28:22, 29:12, 29:13, 29:16
**result** [1] - 49:18
**review** [2] - 13:9, 26:13
**Richard** [4] - 15:7, 15:8, 31:15, 34:6
**rife** [1] - 17:9
**rigidly** [1] - 18:7
**rise** [2] - 3:7, 50:13
**risk** [1] - 7:18
**RMR** [2] - 1:23, 51:13
**roles** [1] - 11:21
**rolling** [1] - 14:14
**ROOM** [1] - 1:23
**rougher** [1] - 22:21
**Rule** [4] - 7:15, 7:17, 18:12, 21:12
**rule** [4] - 7:17, 8:12, 39:6, 39:14
**ruled** [1] - 23:7
**Rules** [1] - 9:25
**rules** [5] - 7:15, 18:5, 23:4, 39:6

## S

**s/Cathy** [1] - 51:12
**sacred** [2] - 27:4, 27:10
**sale** [1] - 38:25
**sales** [5] - 34:19, 35:10, 35:12, 44:6, 44:7
**Sam** [4] - 14:20, 31:5, 32:22, 32:23
**satisfactory** [1] - 39:13
**satisfied** [1] - 50:3
**satisfy** [4] - 6:18, 9:8, 10:18, 41:25
**saved** [1] - 35:20
**saw** [1] - 45:23
**scratch** [1] - 25:9
**scratch-your-head** [1] - 25:9
**scratched** [1] - 5:13
**scratching** [1] - 47:18

**screaming** [1] - 35:3
**screw** [1] - 20:25
**search** [1] - 36:7
**seated** [1] - 3:8
**second** [3] - 13:18, 27:13, 33:4
**secondary** [1] - 29:19
**secondly** [1] - 28:13
**Sedran** [1] - 17:23
**SEDRAN** [1] - 1:16
**see** [13] - 29:19, 31:25, 34:11, 38:3, 39:17, 39:21, 39:25, 44:14, 44:20, 44:22, 46:10, 47:14, 49:8
**seek** [5] - 6:24, 6:25, 7:1, 7:4, 8:7
**seeking** [5] - 6:1, 9:7, 13:5, 23:23, 25:22
**seeks** [3] - 14:2, 14:10, 23:18
**select** [1] - 27:5
**selling** [1] - 29:12
**sells** [1] - 42:23
**send** [1] - 50:2
**sent** [4] - 30:22, 36:15, 41:4
**separate** [4] - 5:19, 5:22, 9:3, 25:21
**serious** [2] - 44:25, 49:7
**seriously** [2] - 18:7, 44:20
**Serpe** [4] - 15:7, 19:5, 31:15, 34:6
**serve** [1] - 34:3
**served** [1] - 43:2
**server** [2] - 35:20, 35:21
**service** [2] - 43:3, 45:9
**serving** [1] - 45:9
**set** [4] - 31:6, 31:20, 38:1, 40:1
**settle** [1] - 28:9
**settlement** [2] - 17:25, 18:2
**several** [1] - 28:16
**ship** [2] - 44:12, 48:7
**shipment** [1] - 39:1
**Shoe** [4] - 42:12, 43:12, 47:9, 47:13
**show** [1] - 9:4
**shown** [1] - 47:24
**shows** [1] - 14:24
**shuffle** [1] - 49:17
**sic** [1] - 14:23
**side** [1] - 16:3
**sides** [1] - 26:12
**sift** [1] - 36:3

**signals** [1] - 48:23
**significant** [2] - 7:17, 43:5
**similar** [1] - 12:20
**simply** [1] - 28:7
**simultaneously** [1] - 49:25
**single** [2] - 23:21, 46:17
**SINNOT** [1] - 1:19
**site** [5] - 34:22, 35:8, 47:11, 47:12
**sites** [2] - 47:10
**situation** [18] - 5:14, 6:6, 6:7, 7:5, 7:20, 8:1, 8:9, 8:17, 12:10, 25:16, 26:12, 27:24, 28:18, 29:19, 39:19, 41:10, 45:7, 48:1
**situations** [2] - 4:19, 13:4
**six** [1] - 11:13
**slew** [1] - 10:6
**smart** [2] - 44:8, 44:10
**Snacks** [1] - 16:19
**society** [1] - 48:10
**software** [1] - 35:9
**soil** [1] - 44:10
**sold** [4] - 34:20, 41:12, 43:6, 43:8
**sole** [1] - 25:2
**solely** [1] - 9:20
**solution** [1] - 7:6
**someone** [1] - 27:7
**somewhat** [1] - 32:6
**sorry** [2] - 24:6, 41:17
**sort** [1] - 48:17
**sought** [3] - 7:3, 17:7, 20:8
**sounds** [1] - 22:20
**SPEAKERS** [1] - 2:2
**speaking** [1] - 46:11
**speculation** [2] - 17:10, 20:6
**spelled** [1] - 25:18
**spreadsheet** [1] - 37:3
**square** [3] - 9:15, 20:2
**stack** [1] - 18:24
**stage** [4] - 29:25, 31:6, 37:13, 37:15
**stages** [1] - 23:14
**stand** [1] - 50:11
**standard** [1] - 17:15
**standpoint** [1] - 9:9, 30:8, 39:21, 40:19, 43:5
**start** [2] - 15:12, 35:3
**started** [3] - 14:13, 18:20, 38:21

**state** [30] - 5:10, 5:11, 5:12, 5:17, 5:22, 6:10, 8:14, 8:18, 9:5, 9:6, 10:3, 10:23, 10:25, 11:3, 11:4, 11:8, 11:12, 11:22, 11:23, 12:5, 12:20, 13:16, 23:15, 23:17, 25:17, 26:7, 33:20, 33:22, 37:5, 49:9
**State** [8] - 6:2, 6:19, 7:16, 13:3, 14:8, 20:8, 20:15, 24:17
**statement** [1] - 6:13
**States** [10] - 9:1, 16:1, 17:21, 20:21, 44:10, 44:11, 47:25, 48:5, 51:5, 51:15
**STATES** [2] - 1:1, 1:11
**states** [9] - 9:11, 10:11, 11:18, 11:19, 12:4, 26:2, 28:6, 28:23, 41:5
**status** [5] - 8:21, 38:1, 40:1, 40:3, 40:13
**stay** [1] - 46:19
**Steering** [1] - 3:14
**steering** [5] - 9:19, 10:5, 10:12, 15:6, 15:8
**STENOGRAPHY** [1] - 1:25
**step** [5] - 25:15, 30:6, 36:20, 36:24, 46:9
**still** [2] - 13:23, 37:6
**stipulation** [1] - 46:22
**stop** [3] - 44:16, 45:5, 45:12
**store** [2] - 43:18, 43:19
**stored** [1] - 30:12
**STORIED** [1] - 2:12
**strategical** [1] - 23:2
**STREET** [2] - 1:17, 1:23
**street** [1] - 34:25
**strikes** [1] - 22:5
**stuff** [6] - 34:23, 35:4, 35:15, 36:4, 38:25, 39:2
**subcontractor** [3] - 23:9, 35:14, 35:16
**subcontractors** [2] - 36:2, 36:5
**subdivision** [1] - 24:5
**subject** [6] - 30:23, 42:1, 42:3, 46:5, 46:6, 46:14
**submitted** [1] - 15:14
**subsidiary** [1] - 30:25

**substance** [1] - 37:20
**substitute** [1] - 26:22
**substitution** [1] - 26:21
**successful** [2] - 4:21, 16:24
**sudden** [2] - 33:19, 35:3
**sue** [2] - 24:20, 25:7
**sued** [4] - 24:6, 28:9, 45:18
**sufficient** [1] - 42:11
**suggest** [3] - 21:18, 21:19, 25:20
**suggested** [2] - 23:19, 23:20
**suggestion** [2] - 7:23, 45:2
**suing** [3] - 5:18, 23:20, 24:13
**suit** [14] - 5:21, 5:22, 9:21, 9:22, 11:3, 11:9, 16:24, 24:11, 24:23, 25:3, 25:6, 34:8, 43:25, 44:1
**SUITE** [1] - 1:17
**suits** [4] - 9:22, 24:8, 24:9, 24:11
**summary** [1] - 29:1
**supplement** [4] - 9:5, 13:11, 47:21, 48:2
**supplied** [1] - 34:18
**supplier** [1] - 30:24
**supply** [3] - 48:5, 48:12, 48:15
**Supply** [7] - 3:17, 14:3, 14:10, 14:14, 14:25, 32:24, 34:17
**support** [1] - 47:22
**supported** [1] - 25:14
**supports** [1] - 8:13
**supposed** [3] - 17:16, 39:11, 46:18
**supposedly** [1] - 5:15
**Supreme** [3] - 7:16, 14:8, 20:21
**surpass** [1] - 19:18
**surprised** [1] - 20:4
**surprising** [1] - 48:15
**surviving** [1] - 20:24

**T**

**Taishan** [13] - 11:4, 11:6, 11:9, 31:4, 39:1, 41:10, 42:7, 42:13, 42:15, 42:18, 44:6, 45:23, 46:1
**TAISHAN** [1] - 1:7

**Taishan's** [2] - 42:8, 47:19
**tax** [1] - 42:12
**technology** [1] - 47:13
**temporary** [1] - 45:14
**ten** [2] - 17:13, 17:17
**Tessier** [1] - 4:25
**tested** [1] - 48:6
**Texas** [1] - 21:8
**THE** [70] - 1:10, 1:14, 1:19, 2:5, 2:6, 2:8, 2:11, 2:14, 2:15, 2:16, 2:17, 2:18, 2:19, 2:20, 2:21, 2:22, 2:23, 2:24, 3:7, 3:8, 3:10, 3:11, 3:15, 3:19, 3:21, 4:10, 9:9, 10:12, 10:20, 11:15, 13:1, 13:7, 13:13, 14:11, 14:18, 15:4, 21:21, 21:25, 22:12, 26:9, 31:22, 31:25, 32:4, 32:9, 32:13, 32:18, 32:21, 32:25, 33:4, 33:8, 37:1, 37:8, 37:25, 38:20, 39:12, 40:16, 42:17, 42:22, 43:2, 43:4, 44:14, 45:4, 47:6, 48:3, 49:5, 49:21, 50:2, 50:5, 50:11, 50:13
**themselves** [3] - 27:19, 43:13, 47:25
**therefore** [1] - 7:7
**Third** [4] - 16:16, 16:17, 17:20, 18:4
**THIS** [1] - 1:7
**thousand** [2] - 9:11, 28:10
**thousands** [3] - 10:10, 38:24
**three** [7] - 3:22, 8:19, 9:3, 12:18, 24:8, 25:21, 28:19
**threshold** [1] - 45:3
**thwart** [2] - 27:11, 27:16
**Tidewater** [1] - 35:1
**timeline** [1] - 30:16
**TO** [4] - 1:7, 2:4, 2:8, 3:4
**Tobin** [2] - 5:25, 31:2
**today** [8] - 15:17, 15:23, 18:25, 21:6, 26:10, 35:24, 36:8, 37:9
**together** [3] - 32:13, 34:21, 47:15
**tomorrow** [1] - 37:9

**tons** [2] - 11:7
**took** [3] - 6:22, 45:19, 48:9
**total** [3] - 19:21, 28:22, 29:10
**totally** [1] - 28:8
**touch** [1] - 44:10
**Trading** [1] - 5:25
**training** [1] - 35:10
**transcript** [1] - 51:7
**TRANSCRIPT** [2] - 1:10, 1:25
**transfer** [4] - 12:19, 46:8, 46:10, 46:14
**transferred** [4] - 12:17, 34:16, 40:22, 41:21
**transfers** [1] - 49:9
**trees** [1] - 40:9
**tremendous** [1] - 43:20
**trial** [2] - 11:13, 45:4
**trials** [4] - 31:7, 31:10, 31:11, 45:11
**tried** [4] - 11:23, 37:6, 47:1
**true** [2] - 30:2, 51:7
**truly** [1] - 4:16
**trying** [4] - 12:7, 15:22, 38:3, 47:19
**twice** [1] - 19:2
**two** [5] - 9:22, 11:16, 19:2, 28:19, 30:22
**twofold** [1] - 32:1
**type** [4] - 12:10, 31:11, 39:19, 42:21
**types** [1] - 26:2

# U

**umbrella** [1] - 18:25
**Umbriac** [1] - 16:18
**uncomfortable** [1] - 26:19
**under** [9] - 7:15, 7:17, 7:20, 23:3, 39:5, 39:6, 42:8, 42:12, 45:9
**understood** [1] - 45:16
**unethical** [1] - 16:6
**unethically** [1] - 22:7
**unfortunately** [1] - 34:23
**unit** [6] - 24:20, 24:22, 24:23, 24:25, 25:1, 25:7
**United** [10] - 9:1, 16:1, 17:21, 20:21, 44:10,

44:11, 47:25, 48:5, 51:5, 51:15
**UNITED** [2] - 1:1, 1:11
**units** [1] - 24:23
**unless** [2] - 21:16, 40:10
**unusual** [1] - 28:1
**up** [36] - 3:23, 4:8, 4:14, 6:8, 15:12, 16:7, 19:13, 19:21, 21:7, 22:18, 23:11, 23:12, 24:1, 24:13, 26:3, 29:20, 31:7, 33:1, 33:18, 34:14, 34:15, 35:5, 35:12, 35:20, 36:2, 37:6, 38:1, 38:7, 40:1, 42:5, 43:24, 44:13, 45:25, 46:25, 48:21
**updated** [1] - 13:16
**upload** [1] - 50:8
**urged** [1] - 47:19
**usable** [1] - 37:4

# V

**VA** [1] - 1:21
**various** [3] - 11:20, 12:5, 41:5
**vehicle** [1] - 39:24
**Venture** [17] - 3:17, 6:1, 14:3, 14:10, 14:14, 14:25, 30:23, 30:24, 31:1, 31:3, 31:5, 31:15, 32:17, 32:24, 34:17, 35:21, 47:20
**verbally** [1] - 17:1
**verge** [1] - 15:2
**viable** [1] - 11:10
**view** [1] - 26:15
**vigorous** [1] - 17:3
**VILLAGE** [1] - 1:21
**Vioxx** [1] - 11:17
**Virginia** [44] - 5:8, 5:13, 5:16, 5:21, 6:2, 6:4, 6:13, 7:16, 8:22, 8:23, 9:7, 9:17, 9:25, 10:1, 12:6, 12:18, 13:3, 14:1, 17:7, 20:8, 20:13, 20:15, 23:4, 23:24, 24:17, 25:22, 35:1, 39:5, 40:6, 40:20, 40:21, 41:12, 41:13, 42:16, 42:19, 42:22, 42:24, 43:7, 45:19, 46:4, 46:7, 49:4
**visit** [1] - 48:17

**visited** [1] - 48:4

# W

**wait** [3] - 5:25, 40:16, 46:10
**waive** [2] - 8:8, 30:4
**waived** [2] - 7:21, 8:12
**waiver** [1] - 8:3
**waiving** [1] - 30:5
**Wallpaper** [1] - 14:7
**WALNUT** [1] - 1:17
**waste** [1] - 32:9
**web** [4] - 47:10, 47:11, 47:12
**week** [4] - 32:12, 32:16, 38:1, 40:13
**weeks** [1] - 40:2
**weight** [2] - 20:10, 20:11
**welcome** [1] - 3:19
**whatnot** [1] - 41:21
**whatsoever** [1] - 43:19
**WHEREUPON** [1] - 50:14
**whole** [5] - 10:5, 28:23, 32:12, 44:21, 45:5
**wife** [1] - 43:22
**willing** [1] - 33:16
**wish** [1] - 17:16
**wishes** [2] - 44:24, 47:4
**withdrawn** [1] - 46:23
**withhold** [1] - 39:8
**wonderful** [1] - 6:3
**wondering** [1] - 49:23
**word** [2] - 17:13, 26:18
**workable** [1] - 27:23
**world** [4] - 9:1, 28:5, 39:17, 47:11
**worldwide** [1] - 47:8
**worst** [1] - 30:8
**worth** [4] - 24:7, 24:9, 24:10, 28:5
**worthwhile** [1] - 39:24
**written** [6] - 7:21, 7:23, 8:3, 13:8, 20:11, 20:12

# Y

**year** [3] - 37:3, 44:15, 47:2
**years** [2] - 16:3, 45:7
**yelling** [1] - 35:3

**yesterday** [4] - 14:23, 35:24, 36:13, 36:16
**York** [1] - 14:9

# Z

**zero** [1] - 13:23