IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: <br> CHINESE MANUFACTURED DRYWALL <br> PRODUCTS LIABILITY LITIGATION | MDL No. 2047 <br> SECTION: L |
| This Document Relates To: <br> ALL CASES | Judge Fallon <br> Mag. Judge Wilkinson |

**MEMORANDUM IN OPPOSITION TO THE
<u>PLAINTIFFS' STEERING COMMITTEE'S MOTION TO COMPEL</u>**
*(By Banner Supply Co.)*

Distributor Defendant[1] Banner Supply Co. ("BANNER"), by and through the undersigned counsel, submits this Memorandum In Opposition To The Plaintiffs' Steering Committee's Motion To Compel (CP 430).[2]

**I.    INTRODUCTION:**

The Plaintiffs' Steering Committee's Motion to Compel (CP 430) should be denied for three reasons.  First, like much of its discovery requests, the motion is overbroad and has no justified basis before this Court since it includes defendants such as BANNER who have not only complied with the discovery requests, but made efforts above and beyond what is necessary for any party.  Second, as detailed further below, the Plaintiffs' Steering Committee ("PSC") failed to meet a prerequisite to filing this motion as it relates to BANNER because it failed to confer in good faith regarding the disputed discovery prior to filing this motion as it relates to

---

[1] The classification as a "Distributor Defendant" is made solely by the theory of liability asserted against the defendant and is not based upon whether or not the defendant actually engaged in the alleged distribution activities.  As such, this classification is neither an admission nor denial of any allegation and is used simply for uniformity to assist the Court.

[2] "CP" references the consolidated pleading entry number assigned to the electronic document filed with the court in this action.

BANNER since all discovery disputes had either been resolved or were subject to a future conference with a PSC Representative who failed to respond to BANNER's repeated requests to meet and confer. Third, the objections asserted by BANNER are valid and should be sustained with respect to the disputed discovery requests. For all of these reasons, each one of which is sufficient basis standing alone, this Court should deny the PSC's Motion to Compel to the extent it is directed to BANNER.

Moreover, and to the extent that the PSC seeks to compel production from other Banner entities not yet named in this multi-district litigation, the motion has no basis in fact or law as the discovery requests at issue are directed to named defendants and the unnamed Banner entities are not parties to this action. Accordingly, the Court should deny the PSC's Motion to Compel to the extent it is directed to other Banner entities not yet named.

## II.     CASE BACKGROUND

### A.     Multi-District Litigation

On June 15, 2009, the United States Judicial Panel entered a Transfer Order by which it commenced centralization of multi-district litigation actions involving Chinese-manufactured drywall products liability ("Chinese Drywall Cases"). (CP 1.) With this Transfer Order, and the subsequent Transfer Orders, the Judicial Panel transferred actions then pending in other district courts to the Eastern District of Louisiana where the Chinese Drywall Cases were assigned to the Honorable Eldon E. Fallon "for coordinated or consolidated pretrial proceedings." (CP 1.) On June 16, 2009, Judge Fallon stayed all outstanding discovery and directed that no further discovery be initiated until further ordered by the Court. (CP 2 (Pretrial Order # 1), ¶8.) Through the following months, numerous other Chinese Drywall Cases were transferred to the Eastern District of Louisiana and into the multi-district litigation ("MDL") before Judge Fallon,

for coordinated or consolidated pretrial proceedings. (See Conditional Transfer Orders # 1 through 10 (CP 51, 150, 164, 176, 262, 286, 301, 332, 372, & 400) and other Transfer Orders (CP 331 & 450))(collectively transferring and consolidating over 120 other actions.)

During a Status Conference held on September 2, 2009, the Court advised the parties of its intent to hold bellweather trials in January 2010, and discussed the process it planned to implement in selecting the cases to be tried. (See Minute Entry, CP 212.)

### B. Party Profile Forms

At a monthly status conference on August 11, 2009, the Court entertained discussions regarding plaintiff and defendant profile forms to allow for the streamlining of discovery. (See, Minute Entry, CP 165.) By Pretrial Order # 11, Plaintiff Profile Forms were adopted along with Defendant Manufacturer, Defendant Contractor/Installer, and Defendant Builder Profile Forms and these parties ordered to submit completed forms by September 2, 2009. (CP 168.) Similarly, by Pretrial Order # 12A, Defendant Distributor Profile Forms were adopted and, thereafter, by Pretrial Orders # 14 and # 14A, Exporter, Importer or Broker Defendant Profile Forms were adopted and each of these party defendants were required to submit completed forms within a specific time frame. (CP 174 & 281.)

### C. Banner Profile Forms

Banner Supply Co., Banner Supply Company Pompano, LLC, Banner Supply Company Fort Myers, LLC, Banner Supply Company Port St. Lucie, LLC, and Banner Supply Company Tampa, LLC (collectively, the "Banner Entities") are five separate and distinct entities. Most plaintiffs failed to recognize this, thereby making no distinction as to the appropriate entity to be named as a party and incorrectly naming (in most cases) Banner Supply Co.

However, in order to save time, expense and confusion for all parties, and in order to cooperate with this Court's desires to expedite discovery, BANNER worked with the other Banner Entities to proactively research and investigate each claim to determine whether or not any Banner Entity supplied drywall to any property identified.[3] In doing so, BANNER and each of the Banner Entities not only completed and submitted a Distributor Profile Form, but also completed a Property Specific Disclosure Form (Exhibit A to the Distributor Profile Form) for every property to which it may have supplied any drywall, without regard to whether or not it was identified as having done so. As such, despite the fact that there were only 38 properties identified in Plaintiff Profile Form submissions that were involved in an MDL case in which one of the Banner Entities was a named defendant, when research and investigation revealed that one the Banner Entities may have supplied drywall to 67 of the properties identified in Plaintiff Profile Form submissions, a Property Specific Disclosure Form was completed and produced for all 67 properties and not limited to those cases in which a Banner entity was named.

In addition to simply completing these Property Specific Disclosure Forms, BANNER worked with each of the other Banner Entities to voluntarily produce the Invoices and signed Delivery Receipts with every Property Specific Disclosure Form submitted. In doing so, BANNER not only provided complete disclosure, but proactively engaged in a more meaningful disclosure with respect to every identified property, overlooking plaintiffs' failures to properly identify the Banner Entity involved or, in many cases, any of the Banner Entities at all.

---

[3] These acts do not constitute a submission to jurisdiction or an acceptance of service by any of the Banner Entities and are not to be construed as such.

D.     **PSC's Document Requests**

Despite the stay on discovery set in place since entry of the June 16, 2009 Pretrial Order #1, (CP 2), and without leave of Court, on September 2, 2009, the PSC served its First Set of Requests for the Production of Documents and Things ("Document Requests") on all defendants including, *inter alia*, BANNER.  The PSC's violation of the discovery stay was brought to the Court's attention during the September 24, 2009 Status Conference, (See, Minutes of Status Conference (CP 358), pg 10-11), and it was only then that the Court lifted the stay and directed the parties to meet and confer on September 25, 2009.

During that initial meet and confer, the PSC refused to limit its Document Requests, while demanding that all defendants provide written responses and non-objectionable documents responsive to the requests.  In the end, the parties outlined areas of disagreement and agreed to a "rolling production" such that non-objectionable documents would be produced first and additional responsive documents would be produced as necessary as issues were resolved.

E.     **Banner's Discovery Response and Production**

As with the profile forms, BANNER worked with the other Banner Entities and coordinated an exhaustive response to the PSC's Document Requests, responding to every request in painstaking detail.  On October 16, 2009, BANNER served its Responses and Objections to the PSC's Document Requests.  (A true and correct copy of BANNER's Responses and Objections are attached hereto as **EXHIBIT A**.)  As reflected in BANNER's Response and Objections, BANNER asserted an overall objection to the broad temporal scope set forth in the PSC's Document Requests, which included a self-serving definition of the "Relevant Time Period" as the time period "between January 1, 2001 and the current date" and which did not bear any specific relation to the time period in which BANNER had any

involvement with Chinese drywall. (See Ex C to PSC's Motion to Compel.) However, rather than simply posing an objection to the temporal scope, BANNER limited its responses to the "time period in which BANNER may have received or distributed Chinese drywall" and produced responsive documents in that time frame. (Ex. A, p.1.) Additionally, with respect to the PSC's request for the production of electronically stored information ("ESI") BANNER objected to a broad, undefined search of the its electronic systems and requested a "meet and confer" to address the method to be utilized including the search terms and the number of computers to be searched as well as the costs associated with any production. (Ex A, p.2.)

Thereafter, on October 21, 2009, BANNER made its first production to the PSC, producing in excess of 7,300 pages of documents, which included responsive documents from each of the Banner Entities. (A true and correct copy of BANNER's Notice of Document Production to Plaintiff's Steering Committee is attached hereto as **EXHIBIT B**.) (See also, Ex. C to PSC's Motion to Compel, CP 430.)

### F. Negotiations

On October 20, 2009, the PSC conferred with numerous defendants at a "meet and confer" session, during which the PSC designated representatives with whom BANNER was to address general discovery and ESI issue.[4] During this session, the PSC adamantly demanded an immediate and complete production from all defendants. (Ex. C, p.2.) As evidenced by the summary contained in the correspondence by PSC Representative Davis, the manner in which

---

[4] Cf. Correspondence dated October 22, 2009, from PSC Representative, Leonard Davis, to the Defense Steering Committee ("DSC") Liaison, Kerry Miller, a true and correct copy of which is attached hereto as **EXHIBIT C** and Correspondence dated October 26, 2009, from BANNER Attorney Jan Douglas Atlas to PSC Representative Davis, a true and correct copy of which is attached hereto as **EXHIBIT D**.)

defendants were producing the documents requested varied as some were producing copies of the documents by electronic means, such as a CD, while others were producing the physical documents as "hard documents." (Ex. C, p.2-5.) With respect to BANNER's document production, PSC Representative Davis noted that it was to be made electronically in the form of a "CD of hard documents." (Ex. C, p.3.)

In the interim, the PSC received discovery requests from Defendants and objected that the requests were overbroad and needed to be narrowed, complaining that the requests were directed to non parties who had completed a Plaintiff Profile Form as well as to every plaintiff in the MDL, which the PSC estimated to be several hundred persons.[5] The PSC argued that Court's intentions for the profile forms was to "facilitate informed case selection … to be used to refine the process of case selection by providing defendants sufficient initial information to enable them to select a pool of test cases that would then receive intensive case-specific discovery." (Ex. E, p.1.) The PSC further challenged the discovery contending that it was not permitted under Federal Rules of Civil Procedure on the basis that it sought discovery of information related to appliances in the affected homes without regard to whether a damage claim was pending and suggested that such discovery be limited only to bellweather trial selected plaintiffs. (Ex E, p.2.)

Shortly thereafter, on October 22, 2009, BANNER Attorneys Jeffrey Backman and Rachel Coe engaged in a telephonic discovery conference with BANNER's designated PSC

---

[5] Correspondence dated October 21, 2009, from PSC Representative Davis to DSC Liaison Miller, a true and correct copy of which is attached hereto as ***EXHIBIT E***.)

contacts, Attorneys Melissa Hutts and Bob Brown.[6]  During that discovery conference, Attorney Backman reminded the PSC Representatives of "the expedited, good faith production [BANNER has] made on behalf of all 5 Banner entities (despite the fact that they have not all been named in this MDL)" and despite the PSC's unwillingness "to provide such reciprocal courtesies and is refusing to participate in discovery for any Plaintiff not named in this MDL proceeding."  (Ex. F.)

Based upon the representations of counsel, virtually all of BANNER's responses were agreed to be sufficient, with various concessions and compromises including the following:

1. **Request No. 3a – d**.  BANNER objected on the basis that time frame was not sufficiently limited in scope with respect to BANNER, since Banner only supplied Chinese drywall during the calendar year 2006.  *As a compromise, BANNER advised that the Distributor Defendant Profile Forms listed the individuals responsible at each Banner entity and that the other documents being produced may reveal names of other employees during the relevant time period.*

2. **Request 14**:  PSC Representatives limited this Request by advising that the PSC was really looking for any agreements with third parties who have agreed to pay money for Chinese drywall claims, such as indemnification agreements.  BANNER agreed to search its records for documents responsive to this more limited Request and to produce same.

3. **Request 34**:  PSC Representatives agreed to exclude claim letters and complaints sent to BANNER, and limited the Request to those documents that would show when Banner may have discovered some sort of problem with drywall manufactured in China.

(Ex. F.)  Notably, neither PSC Representative raised any issue to BANNER's production of documents by way of scanned copies of the original documents produced electronically on CD or otherwise.

---

[6] See Electronic Correspondence dated October 27, 2009, from BANNER Attorney Jeffrey Backman to designated PSC contacts, Attorneys Bob Brown and Melissa Hutts, a true and correct copy of which is attached hereto as ***EXHIBIT F***.)

After the October 22, 2009 telephonic conference, only four disputed issues remained as to BANNER's Responses and Objections: (1) the "Relevant Time Frame" as defined by the PSC and as it relates to Requests 16-23 & 31; (2) Request 43, which sought all communications between BANNER and its insurers; (3) the scope of ESI; and (4) the scope of a privilege log. The issues relating to ESI discovery and the filing of a privilege log were deferred to other PSC representatives and BANNER requested an extension of time with respect to its privilege log pending resolution of the ESI issues.

This was all outlined in Attorney Backman's Electronic Correspondence, which states:

> This is to confirm the various agreements we reached with respect to discovery during our October 22, 2009 conference.
>
> \* \* \*
>
> As it relates to the specific discovery requests, with the exception of the specific issues outlined below, I believe we reached agreement with virtually all of them in their current form. …
>
> \* \* \*
>
> I believe the foregoing describes the only remaining issues as it relates to Banner's discovery responses, other than those involving privileged materials and ESI.  Relating to ESI, we will await our meet and [confer] with Mr. Parker or Mr. Grand.  … In the meantime, we would request an extension of time to serve a privilege log until those issues are fully resolved.

(Ex. F.)

Neither Attorney Hutts nor Attorney Brown (nor any other representative for the PSC) ever provided any indication or other feedback in response to suggest that Attorney Backman's Electronic Correspondence was in any way inaccurate.  Additionally, and despite repeated requests by BANNER, no PSC representative returned BANNER's requests to discuss the ESI issues and the scope of a privilege log.  In fact, it was not until twenty (20) days after the initial

meet and confer of October 20, 2009, that PSC Representative Davis sent an email to the DSC Liaison inquiring as to the production of privilege logs.[7] BANNER Attorney Backman immediately forwarded this email to BANNER's assigned PSC Representative Attorney Brown, asking, "Bob, what is this about?" (Ex. G.) As evidenced by email summarizing the October 22, 2009 telephonic conference between BANNER Attorneys and PSC Representatives, PSC Representatives Brown and Hutts acknowledged that given the scope of the documents requested and the unnecessary task of providing a privilege log (which would otherwise encompass BANNER's entire litigation file(s) and clearly protected attorney-client communications between BANNER and its attorney(s), attorney-client privileged materials would not need to be included and that to a certain extent, joint defense materials would similarly not need to be identified. (See Ex. G.) Instead, the full scope of what would need to be included in BANNER's privilege log would be addressed at a later date, after the ESI issues were resolved. (See Ex. G.) As it relates to ESI, BANNER has continued its efforts to open a dialogue with the PSC through the date of this filing and anticipates that outstanding ESI issues will be addressed this week. (See E-Mail series dated from December 22, 2009 through January 4, 2010, a true and correct copy of which is attached hereto as ***EXHIBIT H***.)

      Further, and consistent with BANNER's agreement with the PSC to a rolling production, BANNER has continued to review its offices for documents responsive to the requests and has submitted numerous boxes for scanning and imaging and anticipates a second production of approximately 1000 pages later this week. Confidential documents will be marked as required

---

[7] See Electronic Correspondence Series dated November 9, 2009, with initial communication from PSC Representative Davis to DSC Liaison Miller and follow-up communication from BANNER Attorney Backman to PSC Representative Brown, a true and correct copy of which is attached hereto as ***EXHIBIT G***.)

ADORNO & YOSS, LLP
350 EAST LAS OLAS BLVD. · SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

and BANNER will produce and update a confidentiality log in accordance with Pre-Trial Order #16 (CP 288). Additionally, and while only a handful of plaintiffs have produced privilege logs, Banner will produce a privilege log identifying any documents withheld from production on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery within seven (7) days of any production, in accordance with Pre-Trial Order #15 (CP 289).

Based upon BANNER's good faith efforts to go above and beyond with its document production and responses and BANNER's proactive attempts to resolve outstanding issues related to discovery with its appointed PSC Representatives, there is simply no basis for the instant Motion to Compel Discovery as it relates to BANNER.

### III.    ARGUMENT

As stated earlier, the PSC's attempt to compel production of broad-based and liberal discovery from all defendants is deficient and must fail for three reasons:  (1) the motion is overbroad and unjustified as BANNER has made good faith efforts to fully comply; (2) the PSC failed to conduct the pre-requisite good faith attempt to resolve discovery disputes; and (3) BANNER's objections are legally valid and should be sustained.

#### A.    The PSC's Motion is Overbroad and Unjustified as to BANNER

The PSC's Motion to Compel is generally directed to all defendants. In doing so, the PSC fails to give accord to the individual responses and productions provided by specific defendants, such a BANNER. As detailed above, BANNER has acted in good faith and has produced all responsive documents it has been able to locate to date. Indeed, despite the fact that only one of the Banner Entities has been named in the MDL, BANNER has endeavored to obtain responsive documents from each of the other Banner Entities. Further, and unlike the PSC,

BANNER has produced property specific information for all properties identified in the Plaintiff Profile Form submissions for which any Banner Entity had records, without regard to whether that property subject to the MDL. Accordingly, despite the PSC's generalized complaints of non-compliance by defendants, BANNER is not one such defendant but, rather, has more than complied with its duty to disclose and the PSC's Motion to Compel as it relates to BANNER is factually deficient and legally inaccurate and as such should be denied.

###        B.        The PSC Failed to Confer in Good Faith Prior to Filing Its Motion to Compel

In order to bring a motion for an order compelling disclosure or discovery, the moving party must meet the requirements set forth in Rule 37(a)(1) of the Federal Rules of Civil Procedure, which provides:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has **in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action**.

In support of its motion and in accordance with Rule 37(a)(1) and Local Rule 37.1, the PSC submitted a certification that members of the PSC "ha[ve] conferred with opposing counsel relative to the dispute giving rise to the motion, but that counsel cannot resolve same amicably, making the forgoing motion necessary." (Local Rule 37.1 Certificate, CP 430-16). However, this generalized averment is wholly inaccurate as it relates to BANNER.

As a sign of Banner's good faith discovery efforts, and as mentioned above, Banner has produced documents relating to all five (5) entities, despite the fact that these five (5) entities are separate and independent and only one has been named in this MDL proceeding. Banner has informed the PSC of this fact, but the PSC has not amended any of its Complaints to add the

appropriate, additional parties.  Moreover, Banner has proposed a date for the deposition of its corporate representative; yet, to date (almost two weeks later), the PSC has not served a Notice of Taking Deposition.

Finally, as illustrated above, at the initial meet and confer on October 20, 2009, issues of ESI and privilege logs would be subject to future meet and confer sessions with PSC appointed Representatives.  (See, Ex. C.)  Indeed, after the October 22, 2009 telephonic conference, BANNER requested an extension of time to submit its privilege log, until the pending issues with respect to ESI and the scope of a privilege log were discussed with the PSC Representatives.  However, and despite repeated requests from BANNER, such "meet and confer" was never conducted and the PSC remained unresponsive.  Further, as evidenced by the email series attached as Exhibit H, BANNER has repeatedly requested a meet and confer with regard to ESI issues and as of the writing of this response no conference has taken place, although a telephone conference is scheduled for the afternoon of January 4, 2010.  As such, the PSC failed to meet the prerequisite to bringing its motion and, therefore, the PSC's Motion to Compel Discovery from BANNER should be denied.

### C. <u>BANNER's Objections Are Legally Valid and Should be Sustained.</u>

As explained above, BANNER objected to (1) the "Relevant Time Frame" as defined by the PSC and as it relates to Requests 16-23 & 31; and (2) the scope of Request 43, which sought all communications between BANNER and its insurers; (3) the scope of ESI; and (4) the scope of a privilege log.  Each of these objections is legally valid and should be sustained as the Document Requests to which BANNER objected are outside the scope of permissible discovery in this MDL action.

1. **The "Relevant Time Frame" As Defined by The PSC is Not Relevant**

The scope of discovery is governed by Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is **relevant to the claim or defense of any party**, including the existence, description, nature, custody, condition, and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. **For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.** Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(I), (ii), and (iii).

Fed. R. Civ. Pro 26(b)(1)(emphasis added). In 2000, Rule 26(b)(1) was amended to narrow the scope of relevancy from "subject matter" of the action to "claims or defenses of any party." See Fed. R. Civ. Pro 26(b)(1), Advisory Committee Note to 2000 Amendment. In order to compel the production of information that is relevant to the **subject matter** of the action generally, the rule requires that the party seeking discovery demonstrate **good cause**. Id. See, also, U.S. ex rel. Stewart v. Louisiana Clinic, 2003 WL 21283944, 8 (E.D.La.) (E.D.La. 2003)(limiting scope to plaintiffs identified in action and limiting time frame to period in which plaintiffs were affected) Courts have recognized that while discovery rules are to be broadly applied, courts should not allow discovery to be a boundless fishing expedition. Garcel, Inc. v. Hibernia Nat Bank, 2002 WL 100605 at *2 (E.D.La.2002); Estate of Monroe v. Bottle Rock Power Corp., 2005 WL 119883, 4 (E.D.La., 2005).

Based on this, it is clear that the PSC's self-defined "Relevant Time Frame" is outside the applicable scope of discovery. In response, BANNER limited the scope to the time period in which BANNER or any Banner Entity was involved in the distribution or supply of Chinese

Drywall.  Any documents that BANNER would have outside of the time period when BANNER was involved in the distribution or supply of Chinese Drywall would be entirely irrelevant to any claims or defenses in this action.  Indeed, the PSC contends that its time period extended to 2001 because defective Chinese-manufactured drywall was found in homes built or renovated during this time period, citing a single Inspection Report and Client Information for C. Hasselschwert. (PSC's Motion to Compel (CP 430), p. 8-9.)  While that may be a basis to include that time period for the parties involved with construction, installation, supply, distribution, and manufacturer of drywall to that property, there is no basis to extend such a broad blanket time period to all defendants.  BANNER was not involved in any way with the property cited and as such, any discovery of BANNER's information during this time period does not relate to "any claims or defenses" in this action.  As such, BANNER's objection to the PSC defined time period should be sustained and BANNER's limitation of scope to the time period that it was involved with Chinese drywall should be deemed sufficient.

Indeed, in order to obtain discovery of BANNER information outside the time period that it was involved with Chinese drywall, the PSC would have to demonstrate that such information not only relates to the "subject matter" of the action, but also, good cause as to why the PSC needs such information from BANNER.  The PSC cannot demonstrate that BANNER information outside the time scope is relevant to the subject matter and, moreover, the PSC has failed to allege and cannot demonstrate good cause to compel BANNER to produce documents outside the time period.

    **2.**    **An ESI Protcol Needs to Be Set**

Rule 26 also governs the production of electronically stored information. Specifically, Rule 26(b)(2) provides that "[a] party need not provide discovery of electronically stored

information from sources that the party identifies as not reasonably accessible because of the undue burden or cost." Machine-readable data, such as active, online, near-line, or offline data in storage or archives are accessible, however, backup tapes and erased, fragmented, or damaged data is not accessible. <u>Canon U.S.A., Inc. v. S.A.M., Inc.</u>, 2008 WL 2522087, 3 (E.D.La.) (E.D.La.,2008), citing <u>Zubulake v. UBS Warburg, LLC</u>, 217 F.R.D. 309, 324 (S.D.N.Y.2003).

In its Responses and Objections, BANNER objected to the PSC's blanket request for ESI, requesting a meet and confer to establish method of searching databases and key search terms. In 2007, BANNER converted computer systems, changing the programs with which it tracked its orders and invoices and as such, most ESI data that BANNER has is offline data that is not easily accessible and depending on the method with which BANNER searches its offline data, may be unduly costly and burdensome. As such, BANNER specifically requested a protocol be set so that the method of searching its data and key search terms could be discussed and agreed upon with the PSC. Accordingly, BANNER contends that the PSC's motion, with respect to ESI is premature because no protocol has been established or even discussed and without a protocol, BANNER is unable to determine the costs associated with retrieval of information from the offline data.

Moreover, Rule 26(b)(2)(C) **requires** limitations on the extent of discovery where:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The PSC seeks to compel not only a "hard copy" of the information sought, but also, in **every instance** has requested production of ESI in its native format. BANNER has already produced numerous invoices, delivery receipts and other data in PDF format, which can very easily be electronically manipulated to allow for word searches and the like. However, the PSC's demand for the exact same information be produced in "native format" is unreasonably cumulative and clearly repetitious of information already produced. Additionally, as to BANNER, since its data is offline, the burden or expenses of obtaining the proposed discovery, simply so that the PSC can have it in "native format" as well as the images that have already been produced in PDF format imposes a burden and expense on BANNER that outweighs any benefit that the PSC will obtain from receiving the information, especially where the "native format" will not provide any additional information and, thus, holds no importance in resolving issues in this case. As such, the PSC's Requests should be limited to exclude production of ESI in "native format" where the information has already been produced in PDF format.

### D. The PSC's Request for Information On Non-MDL Properties

In its Motion to Compel, the PSC urges the Court to compel all defendants to provide property specific information for non-MDL properties. Not only is BANNER unable to determine where it delivered "Chinese" drywall, but such a request is wholly improper in light of

the PSC's refusal to participate in discovery and the PSC's contention that it cannot control or otherwise account for individuals who are not parties to this MDL proceeding. (See, e.g., Ex. D.)

As stated in BANNER's Responses, BANNER is unable to determine from a review of its records where it shipped "Chinese" drywall because the origin of drywall supplied to its customers was simply not maintained. However, once a potentially affected home is identified, BANNER has the ability to determine whether it shipped any drywall to that particular property and, in fact, BANNER has provided this information for all properties identified in Plaintiff Profile Form submissions. Requiring Banner to produce every delivery invoice and shipping receipt during the eight year time period requested by the PSC is unreasonable, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Even limiting the request to the time period when Banner knows it had Chinese drywall in its warehouse(s) would create the same issues and makes the request equally objectionable; Banner simply has no knowledge where Chinese drywall was shipped and requiring Banner to produce evidence of each and every delivery during this time period, simply put, makes no sense and would only result in the PSC knocking on hundreds of thousands of doors searching out Plaintiffs. Clearly, seeking this information is merely a fishing expedition by the PSC. The problems associated with defective Chinese drywall are well known and publicized throughout the state of Florida. If homeowners believe their homes are affected, they will reach out to attorneys, who will take appropriate action on their behalf. There is no legitimate basis to require BANNER to produce the invoices and shipping records for each and every delivery of any drywall during this time period, which, during 2006 alone, BANNER estimates to be in excess of 200,000 deliveries between the five (5) Banner Entities. As such, the PSC's attempt to

compel production of all delivery information, without limitation as to whether the property is involved in the MDL is without basis and should be denied.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff Steering Committee's Motion to Compel Discovery From Defendants (CP 430) should be denied to the extent it relates to Banner Supply Co., Banner Supply Company Pompano, LLC, Banner Supply Company Fort Myers, LLC, Banner Supply Company Port St. Lucie, LLC, and Banner Supply Company Tampa, LLC

Respectfully submitted,

/s/ *Jeffrey A. Backman*
Jan Douglas Atlas
    Fla. Bar No. 226246
Jeffrey A. Backman
    Fla. Bar No. 0662501
ADORNO & YOSS LLP
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301-4217
Telephone: (954) 763-01200
Facsimile: (954) 766-7800
***Attorneys for Banner Supply Co***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order # 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern district of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 5th day of January, 2010.

/s/ *Jeffrey A. Backman*
Jeffrey A. Backman