# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN MINAFRI on behalf of himself and all others similarly situated, On Behalf of the General Public,<br><br>          Plaintiff,<br><br>vs.<br><br>M/I HOMES, INC., M/I HOMES OF TAMPA, LLC, KNAUF GIPS KG, KNAUF PLASTERBOARD (TIANJIN) CO., LTD., and DOES 1-99,<br><br>          Defendants. | Case No. 2:09-cv-04120<br><br>MDL 2047<br>SECTION: L<br>JUDGE FALLON<br><br>JURY TRIAL DEMANDED |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Steven Minafri, brings this action on his own behalf and on behalf of a Class of persons described below. Plaintiff brings this action against M/I Homes Inc. and M/I Homes of Tampa, LLC (collectively "M/I Homes"), Knauf Gips KG, Knauf Plasterboard (Tianjin) Co., Ltd. and Does 1-99. All facts contained in this complaint are alleged upon information and belief and based upon the investigation of counsel.

## INTRODUCTION

1. Plaintiff brings this action on his own behalf and on behalf of all other similarly situated owners of homes in the United States (or alternatively in the State of Florida only) built using the defective drywall described herein.

2. The drywall at issue contains high levels of sulfur, and/or other organic compounds and emits ("off-gasses") levels of these compounds capable of, among other things, harming the health of individuals subjected to prolonged exposure and damaging, among other things, any and all metals subjected to prolonged exposure. The drywall also creates a noxious odor of sulfur, which smells like "rotten eggs." Upon information and belief, the chemical compounds cause dangerous health consequences including, among other things, respiratory problems, sinus problems, eye irritation and

nose bleeds. Further, the chemical compounds cause damage to home structure and mechanical systems, such as, copper piping, refrigeration coils, air conditioner coils, and electrical wiring, as well as personal and other property, such as personal electronics, appliances and jewelry.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the class are citizens of states different than Defendants.

4. Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391(a), (b), and (c). Defendants are incorporated and headquartered within this Federal Judicial District, advertise in this District, build homes in this District, and have made material omissions and misrepresentations and breaches of warranties emanating from this District. This action was subsequently transferred to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1407.

## THE PARTIES

5. Plaintiff Steven Minafri ("Plaintiff" or "Minafri") is a resident of Apollo Beach, Florida and owns a home located at 2511 Yukon Cliff Drive Ruskin, Florida 33570. Plaintiff purchased his home in 2006. Plaintiff's home was built by Defendant M/I Homes using defective drywall on or about 2006. Plaintiff has had substantial problems with his home, including but not limited to the repeated failure of his air conditioning system due to the corrosive effects of the sulfur and/or other compounds in the drywall.

6. Defendant M/I Homes, Inc. is organized and incorporated under the laws of the state of Ohio, with its principal place of business located at 3 Easton Oval, Suite 500, Columbus, Ohio.

7. Defendant M/I Homes of Tampa, LLC is a Florida limited liability corporation with its principal place of business located at 4904 Eisenhower Blvd., Tampa, Florida 33634. Defendant is a subsidiary of M/I Homes, Inc.

8. Defendant Knauf Gips KG ("Knauf Gips") is an international corporation organized under the laws of Germany. Knauf Gips is an international leader in the development and manufacturing of building materials and systems. Knauf Gips has over 130 plants in more than 40 countries worldwide and has annual sales exceeding $4.8 billion Euros. Knauf Gips, in conjunction with its subsidiaries and affiliates, does business in over 50 countries and employs approximately 20,000 individuals worldwide. Knauf Gips does substantial business in the United States of America generally, and in the State of Florida specifically.

9. Since the late 1990's, Knauf Gips built three plants for the manufacture of drywall in China. These plants are located in Wuhu, Tianjin and Dongguan. Upon information and belief Knauf Gips exercises strict control over the manufacture and sale of drywall by its Chinese subsidiaries and affiliates.

10. Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf Tianjin") is an international corporation organized and existing under the laws of China. Knauf Tianjin's principal place of business is located at North Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400, China. Upon information and belief Knauf Tianjin is a wholly owned subsidiary of Knauf Gips.

11. The identities of Does 1-99 are unknown to Plaintiff at this time. Does 1-99 are manufacturers, builders and suppliers of defective drywall that Plaintiff has not yet identified. When Plaintiff discovers the identities of these individuals and/or entities, Plaintiff will amend to specifically name the Defendants referred to as Does 1-99.

**GENERAL ALLEGATIONS**

12. Defendants Knauf Gips and Knauf Tianjin were responsible for the manufacturing and distribution of a substantial amount of defective drywall. The defective drywall emits, among other things, high levels of sulfur. When the sulfur in the drywall is exposed to moisture and/or leaks into the air, it creates compounds such as sulfur dioxide and hydrogen sulfide causing the problems described herein.

13. This defective drywall causes adverse health consequences such as respiratory problems, sinus problems, eye irritation and nosebleeds, in addition to the creation of noxious odors, which smell like "rotten eggs."

14. The drywall emits these organic compounds, which also react with metal, causing damage as the result of oxidation. The compounds damage, among other things, air conditioners, refrigerators, copper piping, silver, brass and chrome. The compounds blacken the aforementioned items and literally eat away at the metals to the point that they degrade and can crack or break.

15. The problems caused by the drywall are numerous, when one considers the vast number of items in a house that contain metal. Nearly every appliance in a house is susceptible of damage, in addition to the air conditioning, plumbing and heating systems. It is unclear at this time the extent to which the defective drywall causes additional damage to homes.

16. Upon information and belief use of the defective drywall is extensive. It is reported that over 10 million square feet of the defective drywall have been used in construction in just the State of Florida. Some reports claim that as many as 60,000 average sized homes could be built with the defective drywall imported from China.

17. Repairing the damage caused by all Defendants conduct will cost homeowners in the State of Florida and throughout the United States millions of dollars. Remedying the problems caused by Defendants may include, among other things, the cost of inspection, compensation for the diminution in property value, the replacement of the defective drywall, the repair or replacement cost of damaged property in the affected homes and the cost of whatever medical expenses are attributable to Defendants' defective drywall.

## **CLASS ACTION ALLEGATIONS**

18. Plaintiff brings this case as a Class Action pursuant to Fed. R. Civ. P. 23 on behalf of himself and on behalf of a class defined as:

> All owners and residents of homes in the United States, which contain drywall manufactured, sold or installed by

4

>>Defendants that emits excessive amounts of sulfur as well as any individual or entity that paid for or performed repairs of damage caused by the drywall.

19. In the alternative, Plaintiff brings this case as a Class Action pursuant to Fed. R. Civ. P. 23 on behalf of himself and on behalf of a class of all others similarly situated in the state of Florida, defined as:

>>All owners and residents of homes in the state of Florida, which contain drywall manufactured, sold or installed by Defendants that emits excessive amounts of sulfur as well as any individual or entity that paid for or performed repairs of damage caused by the drywall.

Expressly excluded from the Classes defined in paragraphs 16 and 17 are:

>>A. Defendants and any entities in which Defendants have a controlling interest;
>>
>>B. Any entities in which Defendants officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;
>>
>>C. The Judge and Magistrate to whom this case is assigned and any member of the Judge's or Magistrate's immediate family; and
>>
>>D. All persons or entities that properly execute and timely file a request for exclusion from the Class.

**NUMEROSITY**

20. The Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of Class members is presently unknown to Plaintiff, but it is believed that Class members number at least in the thousands. The identity of Class members is ascertainable. Class members may be informed of the pendency of this Class action by a combination of direct mail and public notice, or other means.

**COMMONALITY**

21. Common questions of fact and law exist as to all members of the Class, which predominate over questions affecting only individual members of the Class. These include, but are not limited to, the following:

    a. Whether Defendants manufactured and sold defective drywall;

    b. Whether Defendants are liable for the repair and replacement of all defective drywall;

    c. Whether Defendants are liable for the repair and replacement of all damaged items in the affected homes;

    d. Whether Defendants are liable for the adverse medical consequences of the defective drywall;

    e. Whether Defendants other than M/I Homes, deliberately concealed information about the defective drywall from the Class;

    f. Whether Defendants negligently or recklessly concealed information about the defective drywall;

    g. Whether Defendants, other than M/I Homes, intentionally concealed information about the defective drywall;

    h. Whether Defendants breached express warranties;

    i. Whether Defendants breached implied warranties;

    j. Whether Plaintiffs are entitled to compensatory, punitive, and other damages as a result of Defendants acts and/or omissions;

    k. Whether Defendants, other than M/I Homes, are guilty of fraudulent misrepresentation;

    l. Whether Defendants, other than M/I Homes, are guilty of fraudulent concealment;

    m. Whether Defendants are guilty of negligence.

**TYPICALITY**

22. Plaintiff's claims are typical of the claims of the Class and all such claims arise out of the wrongful course of conduct engaged in by Defendants.

**ADEQUACY OF REPRESENTATION**

23. Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the members of the Class he seeks to represent. Plaintiff is represented by experienced and able counsel that have litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and his counsel can fairly and adequately protect the interests of the members of the Class.

**PREDOMINANCE AND SUPERIORITY**

24. The class action is the best available method for the efficient adjudication of this litigation because individual litigation of the Class claims would be impracticable and individual litigation would be unduly burdensome to the courts. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS</u>**

25. The running of any statute of limitations has been tolled due to Defendants', other than M/I Homes, fraudulent concealment. By failing to disclose a known defect to Plaintiff and the Class, and misrepresenting the nature of their product as safe for its intended use, actively concealed from Plaintiff and the Plaintiff Class the true risks associated with their drywall.

26. Plaintiff and the Class could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

27. In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their

7

drywall. Defendants were under a duty to disclose the true information about their product and they failed in that duty to Plaintiff and the Class.

28. Plaintiff and the Class had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein

## COUNT I

## NEGLIGENCE AND NEGLIGENCE *PER SE*

(Against all Defendants)

29. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

30. Defendants breached their duties to Plaintiff and the proposed class by failing to exercise reasonable care in manufacturing, inspecting, distributing, selling and installing the drywall.

31. Defendants likewise breached their duties to Plaintiff and the proposed class by failing to warn Plaintiff and the proposed class about the defective nature of the drywall, which both malfunctioned and generated untoward side-effects. Defendants, through the exercise of reasonable care, knew or should have known the nature of the drywall and the adverse effects that it could have on the health of the homes it was used to build and the individuals within them.

32. Given the range defects of the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause both economic and physical damage to the members of the class.

33. Economic damages include, but are not limited to, substantial reconstruction and repair of proposed Class members' homes, as well as any medical expenses incurred as a result of Defendants' drywall, which are in many instances considerable.

34. Defendants' drywall was the proximate cause of both economic and physical damage brought upon members of the class.

35. Due to Defendants' negligence, members of the Class and the public at large will continue to suffer economic and physical damages.

36. Although Defendants knew or should have known about the defects of their drywall product, Defendants nevertheless continued to manufacture the product and sell it to members of the class and the public at large.

## COUNT II

## STRICT LIABILITY

(Against all Defendants)

37. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

38. Defendants were responsible for the manufacturing, inspecting, distributing, selling and installing of the drywall at issue.

39. By the time Defendants' drywall left Defendants' hands, the risks associated with the product far outweighed its benefits.

40. Further, by the time Defendants' drywall left Defendants' hands, they knew, or should have known, the product was unsafe, defective, and could cause serious physical and economic harm to members of the proposed class.

41. Defendants had a duty to provide Plaintiff, the proposed class and the general public with a safe and properly functioning product. This is a duty Defendants failed to uphold.

42. Because Defendants' product created an unreasonable risk to Plaintiff's home and person, Defendants are strictly liable for economic and physical injuries to Plaintiff and members of the proposed Class.

43. No prudent buyer of Defendants' product could be expected to determine on his or her own that Defendant's product was dangerous and defective.

44. Defendants not only manufactured, inspected, distributed, sold and/or installed a poorly designed and defective drywall, but also failed to give Plaintiff and the proposed class adequate warning regarding the risks associated with Defendants' product.

45. Defendants' drywall was a substantial factor in the economic and physical losses that have been, and continue to be, incurred by the Plaintiff and proposed class.

46. Economic losses include, but are not limited to, substantial reconstruction and repair of proposed Class members' homes, damage to property other than the Class members' homes, as well as any medical expenses incurred as a result of Defendants' drywall, which are in many instances considerable.

## COUNT III
## BREACH OF EXPRESS WARRANTY

(Against all Defendants)

47. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

48. Defendants expressly warranted that the drywall they manufactured, distributed, and/or installed was safe, efficacious, well tested and of high quality.

49. By manufacturing, distributing, selling and/or installing a defective, unsafe, and poorly manufactured drywall product, Defendants have breached their express warranty.

50. Defendants knew or should have known that their warranties were specious.

51. Plaintiff and the proposed Class and/or their representatives relied on these express warranties to their detriment.

52. As a direct result of this breach of expressed warranty, physical and economic damages have been, and continue to be, incurred by Plaintiff and the proposed Class.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES

(Against all Defendants)

53. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

54. When Defendants manufactured, distributed, sold, and/or installed their drywall to Plaintiff and the proposed class, Defendants implicitly warranted that the product was safe, efficacious, well tested and of high quality. Plaintiff and members of the proposed class are beneficiaries of these warranties.

55. By manufacturing, distributing, selling, and/or installing a defective, unsafe, and poorly manufactured drywall product, Defendants have breached their implied warranties.

56. These implied warranties were relied on by Plaintiff and the proposed class and/or their representatives, because it is understood that Defendants have knowledge as to the quality, safety and efficacy of the drywall they manufacture, distribute, sell, and/or install.

57. As a direct result of this breach of implied warranty, physical and economic damages have been, and continue to be, incurred by Plaintiff and the proposed class.

## COUNT V

## FRAUDULENT CONCEALMENT

(Against Knauf Gips KG, Knauf Plasterboard (Tianjin) Co. Ltd. and Does 1-99)

58. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

59. Defendants knew or should have known that Defendants' drywall was defective, unsafe and poorly manufactured.

60. Defendants fraudulently concealed that Defendants' drywall was defective, unsafe and poorly manufactured.

61. Defendants knew or should have known that their drywall would cause corrosion of, among other things, electrical wiring, air conditioner coils, plumbing and other personal property throughout the effected homes.

62. Defendants fraudulently concealed that their drywall caused damage to, among other things, electrical wiring, air conditioner coils, plumbing and other personal property throughout the effected homes.

11

63. Defendants fraudulently concealed that they had received and/or otherwise learned of complaints regarding their drywall product.

64. Defendants' above-mentioned concealments of key facts regarding the Defendants' drywall resulted in physical and economic damages that have been, and continue to be, incurred by Plaintiff and the proposed class.

65. As a result of the Defendants' fraudulent concealments regarding their drywall product, physical and economic damages have been, and continue to be, incurred by Plaintiff and the proposed class.

## COUNT VI

## FRAUDULENT MISREPRESENTATION

(Against Knauf Gips KG, Knauf Plasterboard (Tianjin) Co. Ltd. and Does 1-99)

66. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

67. Defendants fraudulently alleged to the Plaintiff, the proposed class, and the public that the Defendants' drywall was safe, efficacious, well tested and of high quality.

68. Defendants knew the above-mentioned representations made to Plaintiff, the proposed class, and the public were specious and fraudulent. These representations were made recklessly and with the intent of defrauding Plaintiff, the proposed Class and the public.

69. Defendants' drywall was installed in Plaintiff's home in reliance of the veracity of the above-mentioned fraudulent representations.

70. As a result of Defendants' fraudulent representations regarding their drywall product, physical and economic damages have been, and continue to be, incurred by Plaintiff and the proposed Class.

## COUNT VII

## NEGLIGENT MISREPRESENTATION

(Against All Defendants)

71. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

72. As discussed herein, Defendants fundamentally misrepresented material facts regarding the characteristics of the drywall and omitted other material facts that should have been disclosed to Plaintiff and the Class.

73. In disseminating information regarding the drywall Defendants negligently caused statements to be made, which they knew or should have known were inaccurate and untrue.

74. As a direct consequence of the Defendants' negligent misrepresentations and omissions of material facts regarding the defective drywall, Plaintiff and the class will be irreparably harmed and otherwise damaged in an amount which cannot presently be calculated.

## COUNT VIII

## UNJUST ENRICHMENT

(Against all Defendants)

75. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

76. Each Defendant individually and collectively profited from the sale of the defective drywall to Plaintiff and the Class, receiving payment themselves or through an agent. Defendants received payment for the defective drywall and have retained those sums to the detriment of Plaintiff and the Class.

77. Defendants' receipt and retention of the profits gained by sale of the defective drywall to Plaintiff and the proposed Class is unjust and inequitable.

78. As a direct and proximate result of Defendants conduct complained of herein Plaintiff and the Class have sustained substantial damages, including, but not limited to: the removal and replacement of the defective drywall and/or the homes,

13

replacement of any and mechanical and structural systems damaged in the homes, replacement of personal and other property damaged, costs of moving to alternative housing while repairs are made, costs of comparable alternative housing, loss of use and enjoyment of their homes and compensation for the reduced value of the homes as the result of perception of the homes as tainted by the defective drywall.

79. Defendants knew or should have known of the damages their defective drywall would cause as described herein.

## COUNT IX

## BREACH OF CONTRACT

(Against the M/I Homes Defendants)

80. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

81. Plaintiff and the Class offered and Defendant M/I Homes (and other unnamed builders identified as Does 1-99) accepted sums of money in exchange for an agreement to build homes.

82. Upon information and belief each agreement entered into by the Class for construction of their homes warranted that the homes would be free from defects.

83. The presence of the defective drywall, which "off-gases" sulfur is a violation of Plaintiff's agreement, and upon information and belief, the contracts of each and every member of the Class.

84. As a direct consequence of the breaches of contract described above, Plaintiff and the Class have sustained substantial damages, including, but not limited to: the removal and replacement of the defective drywall and/or the homes, replacement of any and mechanical and structural systems damaged in the homes, replacement of personal and other property damaged, costs of moving to alternative housing while repairs are made, costs of comparable alternative housing, loss of use and enjoyment of their homes and compensation for the reduced value of the homes as the result of perception of the homes as tainted by the defective drywall.

## COUNT X
## PRIVATE NUISANCE
(Against all Defendants)

85. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

86. The acts and/or omissions of Defendants have caused injury to Plaintiff and the Class by, among other things, depriving Plaintiff and the Class of the quiet enjoyment of their property.

87. Defendants' acts and/or omissions are wrongful and/or tortious, jeopardizing the health, wellbeing and safety of Plaintiff and the Class. Defendants knew their acts and/or omissions were wrongful or they should have known and the harm to Plaintiff and Class is ongoing.

88. As a direct consequence of Defendants' private nuisance Plaintiff and the Class have suffered, and continue to suffer, substantial damages to their property and to themselves as described herein.

## COUNT XI
## EQUITABLE RELIEF, INJUNCTIVE RELIEF AND MEDICAL MONITORING
(Against All Defendants)

89. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

90. Because no adequate remedy exists for the conduct of Defendants, equitable and injunctive relief is appropriate.

91. Plaintiff and the Class will suffer irreparable injury if the Court does not order injunctive relief and medical monitoring.

92. Plaintiff on behalf of himself and the Class demands that Defendants: (A) recall, repurchase and/or repair Plaintiff's and the Class' homes; (B) initiate and pay for a medical monitoring program under Ohio law; (C) identify, at their own expense, each and every home with the defective drywall, if necessary, testing every home in which the defective drywall may potentially be found.

93. Medical monitoring is a necessary component of the relief the Court should order because some of the sulfur compounds being emitted from the defective drywall are very hazardous. For example, Hydrogen Sulfide ("$H^2S$"), one of the compounds found in the drywall is a broad-spectrum poison – meaning it can attack more than one system of the body simultaneously. $H^2S$ most commonly affects the central nervous system. Through a complex reaction the $H^2S$ prevents oxygen from reaching cells in the body, essentially preventing them from "breathing."

94. As a direct consequence of the wrongful and/or tortious acts and/or omissions of Defendants' conduct Plaintiff and the Class (among them, small children and senior citizens) have been exposed to $H^2S$ in quantities sufficient to harm them.

95. Until it has been conclusively established that all defective drywall has been removed and that air quality is safe Defendants should bear the expense of air and environmental monitoring in each and every home with defective drywall.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Minafri, on behalf of himself and on behalf of a class of others similarly situated, requests that this Honorable Court grant the following relief:

1. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate class, finding that Plaintiff is a proper representative of the class and that her counsel are appropriate class counsel;

2. An order requiring that Defendants pay compensation to Plaintiff and the class members to the full extent permitted by the law;

3. An order requiring medical monitoring;

4. Costs and expenses in this litigation, including, but not limited to, expert fees, filing fees, and reasonable attorneys' fees; and

5. Such other relief as the Court may deem just and appropriate.

Dated:   December 14, 2009               Respectfully submitted:

s/Jack Landskroner
Jack Landskroner (0059227)
Drew Legando (0084209)
Landskroner Grieco Madden, LLC
1360 West 9th Street, Ste. 200
Cleveland, OH 44113
(216) 522-9000
(216) 522-9007 (fax)
jack@lgmlegal.com
drew@lgmlegal.com

Charles J. LaDuca
William H. Anderson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960

Robert K. Shelquist
Yvonne M. Flaherty
Lockridge Grindal Nauen P.L.L.P.
100 Washington Ave S, Ste 2200
Minneapolis, MN 55401
(612) 339-6900

Shawn M. Raiter
Larson King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6518

Jeremy W. Alters
Alters Boldt Brown Rash Culmo
4141 NE 2nd Avenue, Ste. 201
Miami, FL 33137
(305) 571-8550

*Attorneys for Plaintiff*