UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL           MDL DOCKET: 2047
       PRODUCTS LIABILITY LITIGATION

SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

**THIS DOCUMENT RELATES TO ALL CASES**
_____/

### TAYLOR MORRISON SERVICES, INC. AND TAYLOR WOODROW COMMUNITIES' RESPONSE TO PLAINTIFFS' STEERING COMMITTEE'S MOTION TO COMPEL DISCOVERY FROM DEFENDANTS AND ESTABLISH A UNIFORM FORMAT OF PRODUCTION

Defendants, Taylor Morrison Services, Inc., and Taylor Woodrow Communities at Vasari, LLC., (collectively herein referred to as "Taylor") by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 26 and Local Rule 7.4, hereby move for an order protecting against certain discovery requests served by the Plaintiffs' Steering Committee ("PSC") and responds to the PSC's Motion to Compel:

    A.    <u>The PSC's First Request for Production of Documents and Things is overly broad relative to the cost of e-discovery and the damages at issue relative to Taylor.</u>

Only four (4) originally named individual Plaintiffs in this MDL case own homes built by Taylor – all on the west coast of Florida.[1] There were nine named Plaintiffs in the Omnibus Complaint who owned Taylor homes (including 3 also listed in the MDL case). There are no defective drywall cases pending against Taylor in state court. Taylor has been repairing, at its own expense, the vast majority of homes it unknowingly built which have been found to contain defective drywall. In addition, Taylor has been paying those homeowners temporary relocation expenses, storage fees, and some money for personal property damages. The publicity of

---

[1] One, however, (Niemczura) has since withdrawn from the case.

defective Chinese drywall has been widespread for many months. Therefore, the number of cases likely to be filed against Taylor is not likely to increase dramatically, if at all, and certifying a class against Taylor is highly unlikely.

In spite of the very small number of Plaintiffs who have filed suit against Taylor in this MDL case, the PSC served a massively overbroad request for electronic data not at all tailored to, suitable for or adapted to the Taylors' Plaintiffs, or even the applicable region. The PSC improperly frames the request as follows:

> "...(e) Electronically Stored Information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. ESI includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mails alias's (not merely "display names", electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all **metadata, source code of all types**, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and **regardless of whether said ESI consists in an active file, deleted file or file fragment**. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROM's, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, **any physical storage device** associated with each original and copy...."
> (emphasis supplied)

In addition, the PSC has requested the data not only from the named Defendants, but also as to all companies related to Taylor, by defining Taylor as follows:

"....(n) "Defendant," "you," or "your" means each of the individual named Defendants to whom this set of discovery is directed and **any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates**, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants...."

The request implicates numerous Taylor companies throughout the world who are not parties to this case. Taylor Morrison Services Inc, is a company related to Taylor Wimpey, PLC, which builds homes internationally.[2] None of the homes built by Taylor outside of Florida have experienced any problems from Chinese drywall.

In addition, with one possible exception, no home built before 2005 by Taylor has experienced any problems. The PSC, however, is requesting all electronic data from January 1, 2001, through the current date as follows:

"....(3) Unless otherwise specifically stated, this Request encompasses documents, which were created, received or generated or otherwise entered into your possession, custody, or control between January 1, 2001, and the current date (the "Relative Time Period")...."

In addition to the overbroad definitions and time frame of the requests for electronic data, the PSC has also propounded overbroad requests. Those requests include:

"....(3) For Defendant, including any subsidiaries or affiliates of Defendant, documents sufficient to identify:

(a) All members of the Board of Directors during the Relevant Time Period;
(b) All corporate officers during the Relevant Time Period;
(c) All persons or entities that owned 5% or more of Defendant's common stock or held a 5% or more interest in Defendant during the Relevant Time Period...."

"....(6) All documents concerning any report or analysis of Defendant's financial condition or business prospects, including any subsidiary or affiliate of Defendant, prepared by you or any third party, including any analysis prepared by financial or industry analysis, during the Relevant Time Period...."

---

[2] A public filing listing the international offices of Taylor's parent company (Taylor Wimpey, PLC) is attached.

"….(7) All filings made to any state, federal, domestic, and/or foreign governmental agencies, departments, divisions, bodies, entities, or representatives during the Relevant Time Period…."

"…..(9) For each year in which Defendant designed, developed, tested, inspected, manufactured, marketed, sold, exported, or distributed Chinese drywall, all documents concerning the departmental and corporate standard operating procedures, processes, guidelines, and rules for the conduct of the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the design, development, testing, inspection, manufacture, marketing, sale, export or distribution of Chinese drywall…."

"….(30) All notices, claims, communications or documents of any kind among and/or between Defendant's employees and/or employees of affiliate companies or consultants, and any property owners, homeowner's associations, co-op or condo boards, property managers, or tenants during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims…."

The PSC's requests are overbroad as to the time period, the documents requested, the companies who are requested to produce documents, and the subject matter of the ESI requested.

Taylor has already produced over 5000 pages of "hard documents" in response to the PSC's requests and has filed objections to specific requests. This production was bates numbered and in TIFF format. A copy of Taylors' response and objections is attached as Exhibit "A."

A subsequent production included the "backup" for repairs at three representative homes. To require Taylor to produce similar documents for over 140 homes that have been or will be repaired is simply not practical. The repair protocol for all Taylor homes is identical. This suggested compromise seemed to be accepted by this Court at the preliminary hearing in December 2009.

Attached to this Motion as Exhibit "B," is the Affidavit of Robert W. Witte, Chief Information Officer of Taylor. Mr. Witte's affidavit confirms, among other things, the

4

unreasonable burden on Taylor to comply with all of the PSC's requests. For example, in his affidavit, Mr. Witte explains that Taylor has approximately 13 million online emails and 2 million online documents that would need to be searched, in addition to approximately 1,500 stored tapes that would need to be restored and searched, that were created for disaster relief purposes. The approximate cost of restoring and searching all electronic information approaches nearly $2 million. That figure does not include the cost of undersigned's time to review those documents for responsiveness, relevance, confidentiality, and privilege. Estimates for a much more limited ESI search are also included in Mr. Witte's affidavit. However, without agreed search terms, even a more limited search is impractical.

Taylor suggested at the preliminary hearing that it search the active computers and archives of its 30-35 employees most actively involved with the drywall issue. Obviously if other key witnesses are identified in this case, those computers could be searched later. Again this Court seemed to accept this compromise at the December 2009 preliminary hearing.

> B. <u>In an effort to narrow the issues for electronic discovery, Taylor has met with the PSC and exchanged emails which include suggestions to limit the cost and time to search electronic data. Most suggestions were rejected by the PSC.</u>

In an effort to streamline the ESI process, Taylor has suggested the following:

i. Agreement on search terms;

ii. Sharing of the expenses for production of electronic discovery;

iii. Limiting the electronic searches to Taylor's specific employees that are most likely to be involved in the Chinese drywall dispute; and

iv. Limiting the time frame of the request made by the PSC.

Despite Taylor's counsel flying to New Orleans to meet with the PSC on October 20, 2009, and exchanging correspondence on these issues, these requests were rejected by the PSC.

A copy of the letter from Mr. Davis of the PSC is attached hereto as Exhibit "C". It is essentially the PSC's position that Taylor and all other Defendants need to start producing electronic data "on a rolling basis" prior to agreement as to search terms, without a limitation on employees whose ESI is searched, or more limited dates. The PSC has now modified its position to the extent of offering proposed search terms. However, the PSC refuses to share any of the expenses. Restoring stored tapes would be a tremendous expense.

Taylor respectively requests that this Court enter a protective Order limiting the scope of ESI discovery, and requiring the PSC to share in the expense of ESI production.

Two additional written attempts by Taylor to resolve these issues are attached as Composite Exhibit "D." No responses were received from the PSC.

    C.    <u>The Factors set forth in the Federal Rules and case law militate in favor of substantially restricting the electronic discovery sought by the PSC.</u>

Rule 26(B)(2)(b) was amended in 2006 to specifically limit discovery of ESI, and states the following:

> "....A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost..."

If a showing of undue burden or cost is made, the Court may nonetheless order discovery if the requesting party shows good cause, at which time the Court may specify conditions for discovery. One condition the Court may specify for the production of ESI that is not reasonably accessible is the requesting party's payment of costs to retrieve and produce that information. Backup tapes are not reasonably accessible. No good cause has been identified by the PSC for this breath of discovery.

The committee notes to the 2006 amendment to Rule 26(b) set forth the conditions which the Court should consider in ordering the production of electronic data:

6

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

CEMEX CONSTRUCTION MATERIALS
FLORIDA, LLC, as successor to CEMEX
CONSTRUCTION MATERIALS, L.P.,

    Plaintiff,

vs.

Case No. 09-CA-15445

Division C

LEXINGTON HOMES, INC., a Florida corporation,
and CRAIG J. FIEBE, an individual,

    Defendants.
_____/

## FINAL JUDGMENT AGAINST DEFENDANTS

**THIS CAUSE** came before the Court on January 6, 2010, for consideration of Plaintiff's Motion for Summary Final Judgment Against Defendants (the "Motion"), and the Court, having reviewed the file and the Motion, together with the affidavits, having heard argument of counsel and being otherwise duly advised in the premises, it is hereby

**ORDERED and ADJUDGED** as follows:

1. The Court has jurisdiction over the parties and the subject matter of this lawsuit.

2. The Motion be and the same is hereby GRANTED.

## FINAL JUDGMENT

Final Judgment is hereby entered in favor of Plaintiff, CEMEX Construction Materials Florida, LLC, as successor in interest to CEMEX Construction Materials, L.P., 3820 Northdale Blvd., Suite 100B, Tampa, Florida 33624, and against Defendants, Lexington Homes, Inc. and Craig J. Fiebe, in the amount of $66,004.91 as principal and $9,048.90 as interest (calculated at the rate of 18% from April 4, 2009, to the date of this judgment) under the agreement sued on in

> "....The good-cause inquiry and consideration of the Rule26(b)(2)(C) limitations are coupled with the authority to set conditions for discovery. The conditions may take the form of limits on the account, type, or sources of information required to be accessed and produced. The conditions may also include payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible. A requesting party's willingness to share or bear the access costs may be weighed by the court in determining whether there is good cause. But the producing party's burdens in reviewing the information for relevance and privilege may weigh against permitting the requested discovery.
>
> The limitations of Rule 26(b)(2)(C) continue to apply to all discovery of electronically stored information, including that stored on reasonably accessible electronic sources...."

Similarly, the Manuel for Complex Litigation sets forth the procedure to be followed in connection with ESI production requests:

> "....<u>The requesting parties should indentify the information they require as narrowly and precisely as possible</u>, and the responding parties should be forthcoming and explicit in identifying what data are available from what sources, to allow formulation of a realistic computer-based discovery plan. Rule 26(b)(2)(iii) allows the court to limit or modify the extent of otherwise allowable discovery if the burdens outweigh the likely benefit – <u>the rule should be used to discourage costly, speculative, duplicative, or unduly burdensome discovery of computer data and systems</u>...."

Emphasis Added *Id* at p. 79

As this Court set forth in *Murphy Oil v. Fluor Daniel*, 2002 WL 246439 (E.D. La.), there is an eight part test to determine the appropriate scope and allocation of costs for the production of electronic data, which includes the following:

> "....Because of the shortcoming of either bright-line rule, courts have adopted a balancing approach taking into consideration such factors as: (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party. Each of these factors is relevant in determining whether discovery costs should be shifted in this case..."

The factors apply to Taylors' electronic data as follows:

1. The document requests by the PSC are overly broad in numerous requests, including as to the definition of data sought, the time frame, the companies from which data is requested, and the scope and extent of the electronic information sought.

2. It is highly unlikely that a search of files outside specific Florida employees would garner relevant or important data, yet the cost for such search would be extreme.

3. The availability of other sources include hard data that is being produced and deposition testimony, which will shed light on exactly the time frame involved with respect to the homes that are relevant to this case, and the Taylor employees primarily involved in the Chinese drywall issues. Complete hard copies of files for the named Plaintiffs' homes (including a Plaintiff who did not name Taylor as a Defendant) were produced by Taylor.

4. The purposes of retaining the stored electronic data of Taylor was in case of an emergency, such as a storm damage, which is the same rational applied by this Court in limiting discovery in the *Murphy Oil* case.

5. The benefit in obtaining this full scale data information sought is minimal, compared to the cost. There is no evidence that the homebuilders ever manufactured, stored, directly installed, or even knew in advance about the defective nature of the subject drywall.

6. The total cost of this electronic discovery will be extremely high, potentially well over one million dollars. While the Plaintiffs are individual homeowners, some without significant resources, the PSC has numerous resources from its members, as reflected by its expenditures for inspections, town hall meetings, travel for hearings

2

this action, and $4,953.10 for attorneys' fees, plus $702.42 for costs, which this Court deems reasonable, making a total sum of $80,709.33, that shall bear interest at the statutory rate, for which sum let execution issue.

The addresses of Defendants are as follows:

>Lexington Homes, Inc.
>11046 Lakeview Drive
>New Port Richey, FL  34654

>Craig J. Fiebe
>11046 Lakeview Drive
>New Port Richey, FL  34654

**DONE AND ORDERED** in Chambers, in Tampa, Hillsborough County, Florida, this _____ day of January, 2010.

_____
JAMES M. BARTON, II
Circuit Court Judge

Copies furnished to:

Neal A. Sivyer, Esq.
Sivyer Barlow & Watson, P.A.
401 East Jackson Street, Suite 2225
Tampa, FL 33602

Zala L. Forizs, Esq.
Forizs & Dogali P.L.
4301 Anchor Plaza Parkway, Suite 300
Tampa, FL 33634-7521

and meetings, and payment of filing and service fees with regard to international service of process for multiple lawsuits. The homebuilders, on the other hand, are currently embroiled in one of the worst construction environments in decades and it is common knowledge that resources are extremely scarce. Yet the PSC has offered to pay nothing toward these discovery expenses. Since the PSC is an unincorporated group of attorneys, rather than a legal entity with assets, even a later decision by this Court to assess costs against the PSC, without an upfront payment, may prove unenforceable in the future.

In *W.E. Aubuchon Co., Inc., v. Benefirst, LLC,* 245 F.R.D. 38 (D. Mass. 2007), the court considered a broad based request for the production of electronic data. In determining the scope of allowable ESI discovery the court stated as follows:

> "....The principal of liberal discovery is sorely tested when the object of discovery is electronic data...." *Id.* at p. 42

The court held that the retrieval of the records would be costly and the retrieval would involve undue burden or cost. *Id.* at p. 43. Among other things the court held that active online data, in most cases, would be considered accessible, and that backup tapes would in most cases be considered inaccessible. *Id.* at p. 43.

In *Rowe Entertainment v. The William Morris Agency, Inc.,* 205 F.R.D. 421 (S.D. NY 2002), the plaintiffs were concert promoters who brought suit against booking agencies contending that they were "frozen out" of the market. The court held that the plaintiffs would be required to bear the cost of the defendant restoring and producing emails from backup tapes and hard drives. The court held as follows:

> "....the less specific the requesting parties' discovery demands, the more appropriate it is to shift the cost of production to that party...." *Id.* at p. 430.

As noted above the Plaintiffs' electronic discovery request in this case is extremely broad.

A recent law review article summarized the current state of the law on e-discovery. *In Conducting E Discovery After The Amendments: The Second Wave,* 10 SEDCJ 215(Fall 2009), the author states as follows:

> "....All discovery is limited by the "proportionality" principle, currently found in Rule 26(b)(2)(C). This principal provides that a party need not provide discovery when the potential benefits are outweighed by the burdens or costs involved.
> Thus, in *Dilley v. Metropolitan Life,* 2009 WL 756967 (N.D. Cal. March 19, 2009) a court refused to require a producing party to access a database in order to respond to an interrogatory where 'the significance of the discovery to the issues in the present case is substantially outweighed by burden....'"
> In *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. (D. Md. 2008) the court criticized "kneejerk discovery requests served without consideration of cost or burden to the responding party" and "boilerplate objections" which do not disclose the burdens involved." *Id.* at 359 The court ordered that the parties meet and cooperate with a goal of "attempt[ing] to quantify a workable 'discovery budget' that is proportional to what is at issue in the case".
> In *Oxford House v. City of Topeka*, 2007 WL 1246200 (D. Kan. 2007) a court denied access to deleted email because "the likelihood of retrieving these electronic communications is low and the cost high." A similar result was reached in *Palgut v. City of Colorado Springs*, 2007 WL 4277564 (D. Colo. 2007) where the costs of restoration of backup tapes outweighed the "possible yield of relevant and probative information."
> A reviewing court is empowered to deny discovery sought, condition it on payment of some or all of the costs involved *CBT Flint Partners v. Return Path, Inc.*, 2008 WL 4441920 (N.D. Ga. 2008) or order sampling to provide information on the necessity for further discovery. In *Kay Beer Distributing v. Energy Brands*, 2009 WL 1649592 (E.D. Wis. 2009) the court refused to compel production of ESI collected as part of preliminary search where the costs of a further review privilege, confidential and relevant information were deemed to be excessive *Id.* at *5...."
> *Id* at p. 220-221 (full citations added)

With regard to the issue of shifting costs for electronic discovery the author states:

> "....In *Zubulake III,* 216 F.R.D. 280 (S.D. N.Y. 2003) the court asserted that "only the costs of restoration and searching should be shifted" and that "the responding party should always bear the cost of reviewing and producing electronic data." *Id.* at 290
> However, the 2006 Amendments do not limit the power of a court to remedy undue burdens. While Rule 26(b)(2)(B) affirmatively notes the power of courts to condition discovery from inaccessible sources on the payment of costs, "[t]he

10

> amended rule does not say that judges may only consider cost allocation if the subject of the discovery....is not reasonably accessible." *Cason-Merenda v. Detroit Med. Cir.*, 2008 WL 2714239 (E.D. Mich. 2008)
> In *CBT Flint Partners v. Return Path, Inc.*, 2008 WL 4441920 (N.D. Ga. Aug. 7, 2008) the court required a requesting party to pay for the costs of a privilege review as a condition of compliance with the "extraordinary demands made [for] document production." This was consistent with *Principle 13* of the Sedona Principles (Second Edition), which recommends that the "cost of retrieving and reviewing" electronic information can be shifted in appropriate cases...."
> *Id* at p. 222

In this case, the PSC has refused to agree that Taylor may limit the scope of its search for information to a reasonable time frame and to employees and companies that would likely have material information. Nor does the PSC agree to share in the expense of this tremendously broad electronic discovery request.

    D.    <u>Review of electronic data for privilege, trade secret status or other confidential business issues would result in additional expense.</u>

After restoring and reviewing the millions of electronic documents to identify every single potentially responsive email and other document, Taylor will then be required to review each restored document for relevance, privilege, trade secret issues and other confidential business information. The additional legal fees that would be incurred by Taylor for such an electronic data production is extremely burdensome and must also be considered as part of the analysis as to whether the ESI is "reasonably accessible" within the meaning of Rule 26(b)(2)(B).

    E.    <u>Notwithstanding the issues raised herein, Taylor has responded in good faith to the PSC's Request for Production of Documents and Things and produced a privilege log.</u>

As evidenced in Exhibit C to the PSC's Motion to Compel, Taylor has produced over 5,000 documents in "summation format w/ OCR." The method of production utilized by Taylor (which was in TIFF format) provides the PSC with a searchable product that does not require the

11

additional time and expense associated with reviewing native documents and metadata for responsiveness, relevance, privilege, and confidentiality. Prior to the filing of the Motion to Compel, the undersigned offered to convert the production to "Concordance." *See* Emails to Leonard Davis attached hereto as Exhibit "E".

The only issues that remain with respect to Taylor's response to the PSC's document request are Taylor's objections and the production of ESI, as set forth above. Taylor has made every effort to resolve these issues with the PSC.

### CONCLUSION

The Court should deny the PSC's Motion to Compel as to Taylor. Taylor has met its burden of showing that the proportionality principal has not been met by the PSC, given its refusal to limit the scope of it electronic discovery requests, and refusal to share any of the substantial costs in connection with the electronic discovery. Moreover, the PSC has refused to agree to share the cost of this discovery. The PSC has not even responded to Taylor's requests.

This Court should enter a Protective Order in favor of Taylor, limiting the scope of ESI discovery to the active and stored data in the hard drives of the Taylor employees most involved in the Chinese Drywall dispute, with reasonable search terms, and limiting the time frame from 2005 to the present. To require a homebuilder with only 4-9 homes at issue to spend hundreds of thousands of dollars retrieving and reviewing electronic data that is not reasonably accessible and unlikely to yield any relevant information necessary to prove Plaintiffs' claim, is unfair, costly, and unduly burdensome. Alternatively, the costs of responding to the PSC's overbroad discovery requests should be borne by the PSC.

/s/ Neal A. Sivyer
Neal A. Sivyer
Florida Bar No. 373745
nsivyer@sbwlegal.com

>Stephen E. Walker
>swalker@sbwlegal.com
>Florida Bar No. 0497851
>**SIVYER BARLOW & WATSON, P.A.**
>401 E. Jackson Street, Suite 2225
>Tampa, Florida 33602
>Telephone: (813) 221-4242
>Facsimile: (813) 227-8598
>*Attorneys for Taylor Morrison Services, Inc., and Taylor Woodrow Communities at Vasari, LLC*

## CERTIFICATE OF SERVICE

I HEREBY certify that on January 5, 2010, the foregoing document is being served on Plaintiffs' Liaison Counsel, Russ M. Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, Suite 100, New Orleans, LA 70113 and all counsel of record upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No.: 6.

>/s/ Neal A. Sivyer
>Attorney

13