IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

CASE NO. 2:09-cv-00025-FL

CURTIS HINKLEY, LYNN HINKLEY,  )
and STEPHANIE HINKLEY-LOPEZ,  )
individually, and on behalf of all others  )
similarly situated,  )
    )
           Plaintiffs,  )
    )
v.  )    **DEFENDANT TOBIN TRADING INC.'S**
    )    **MOTION TO DISMISS**
TAISHAN GYPSUM CO. LTD. f/k/a  )
SHANDONG TAIHE DONGXIN CO.  )
LTD.; TOBIN TRADING INC.;  )
VENTURE SUPPLY INC.; and THE  )
PORTER-BLAINE CORP.,  )
           Defendants.  )

---

Defendant Tobin Trading Inc. ("Tobin"), by counsel, subject to and without waiving the

defenses raised in its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule

12(b)(2) of the Federal Rules of Civil Procedure, and for its Motion to Dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, states the following:

    1.    For the reasons stated more fully in its supporting memorandum filed herewith,

Count I (Negligence) of the First Amended Complaint fails to state a claim against Tobin, and

fails to state sufficient facts upon which the relief demanded can be granted.

    2.    For the reasons stated more fully in its supporting memorandum filed herewith,

Count II (Negligence *Per Se*) of the First Amended Complaint fails to state a claim against

Tobin, and fails to state sufficient facts upon which the relief demanded can be granted.

    3.    For the reasons stated more fully in its supporting memorandum filed herewith,

Count III (Breach of Express and/or Implied Warranties) of the First Amended Complaint fails to

EXHIBIT
2

state a claim against Tobin, and fails to state sufficient facts upon which the relief demanded can be granted.

4.     For the reasons stated more fully in its supporting memorandum filed herewith, Count IV (Private Nuisance) of the First Amended Complaint fails to state a claim against Tobin, and fails to state sufficient facts upon which the relief demanded can be granted.

5.     For the reasons stated more fully in its supporting memorandum filed herewith, Count V (Unjust Enrichment) of the First Amended Complaint fails to state a claim against Tobin, and fails to state sufficient facts upon which the relief demanded can be granted.

6.     For the reasons stated more fully in its supporting memorandum filed herewith, Count VI (Violation of the North Carolina Consumer Protection Act) of the First Amended Complaint fails to state a claim against Tobin, and fails to state sufficient facts upon which the relief demanded can be granted.

7.     For the reasons stated more fully in its supporting memorandum filed herewith, Count VII (Equitable and Injunctive Relief and Medical Monitoring) of the First Amended Complaint fails to state a claim against Tobin, and fails to state sufficient facts upon which the relief demanded can be granted.

8.     For the reasons stated more fully in its supporting memorandum filed herewith, the First Amended Complaint fails to state a claim against Tobin for punitive damages, and fails to state sufficient facts upon which an award of punitive damages can be granted.

WHEREFORE, Defendant Tobin Trading Inc. respectfully prays that this Court enter an Order granting its Motion to Dismiss.


This the 22nd day of July, 2009.

Respectfully submitted,

  /s/ Theodore I. Brenner
Theodore I. Brenner
*Visiting Attorney Specially Appearing for*
*Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 17815


  /s/ Alexander S. de Witt
Alexander S. de Witt
*Visiting Attorney Specially Appearing for*
*Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 42708

  /s/ Andrew A. Vanore, III
Andrew A. Vanore, III
*Attorney for Defendant, Tobin Trading Inc.*
Brown, Crump, Vanore & Tierney, L.L.P.
P.O. Box 1729
Raleigh, NC  27602
Phone: (919) 835-0909
Fax: (919) 835-0915
E-mail: drewvanore@bcvtlaw.com
NC State Bar No. 42708

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date electronically filed the foregoing **Motion to Dismiss** with the Clerk of the Court using the CM/ECF system which will then send notification of such filing to the following:

J. Michael Malone
Hendren & Malone, PLLC
4600 Marriott Dr., Suite 150
Raleigh NC  27612
 Counsel for Plaintiffs

Roberty Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH  44052
 Co-Counsel for Plaintiffs

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
Hausfeld, LLP
1700 K Street, N.W., Suite 650
Washington, DC  20006
 Co-Counsel for Plaintiffs

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106
 Co-Counsel for Plaintiffs

Richard J. Serpe
Law Offices of Richard J. Serpe, P.C.
580 E. Main Street, Suite 310
Norfolk, VA  23510
 Co-Counsel for Plaintiffs

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, GA  300022
 *Co-Counsel for Plaintiffs*

4

Thomas M. Buckley
Hedrick, Gardner, Kincheloe & Garofalo, LLC
4011 Westchase Blvd., Suite 300
Raleigh, NC  27607
*Counsel for Porter-Blaine Corp.*


    /s/ Alexander S. de Witt
Alexander S. de Witt
*Visiting Attorney Specially Appearing for*
*Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 42708

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

CASE NO. 2:09-cv-00025-FL

CURTIS HINKLEY, LYNN HINKLEY,       )
and STEPHANIE HINKLEY-LOPEZ,        )
individually, and on behalf of all others   )
similarly situated,                 )
                                    )
                    Plaintiffs,     )
                                    )       **DEFENDANT TOBIN TRADING INC.'S**
v.                                  )       **MEMORANDUM IN SUPPORT OF**
                                    )       **MOTION TO DISMISS**
TAISHAN GYPSUM CO. LTD. f/k/a       )
SHANDONG TAIHE DONGXIN CO.          )
LTD.; TOBIN TRADING INC.;           )
VENTURE SUPPLY INC.; and THE        )
PORTER-BLAINE CORP.,                )
                    Defendants.     )

---

Defendant Tobin Trading Inc. ("Tobin"), by counsel, for its Memorandum in Support of

Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, states the

following:

## STATEMENT OF FACTS

Plaintiffs, individually and on behalf of a putative class of "others similarly situated,"

commenced this action on May 15, 2009 with the filing of a "Complaint – Class Action" (Dkt.

No. 1). This action purportedly was filed pursuant to Rule 23 of the Federal Rules of Civil

Procedure on behalf of a class of "owners and residents of residential homes in the State of North

Carolina containing defective drywall that was designed, manufactured, exported, imported,

distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants Taishan

Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin, Cp. Ltd. ("Taishan") and/or Venture Supply

Inc." (Complaint at p. 1). Plaintiffs also alleged that the action was brought "on behalf of a

subclass of similarly situated owners and residents of residential homes in the State of North

1

Carolina containing defective drywall that were built and/or had drywall installed by The Porter-Blaine Corp. ("Porter-Blaine")" (*Id.*). Plaintiffs alleged that the amount in controversy exceeds $5 million.

On May 26, 2009, Plaintiffs filed a "First Amended Class Action Complaint" adding Tobin Trading, Inc. as a defendant (Dkt. No. 7). The Amended Complaint is alleged in seven (7) counts: (1) negligence (all defendants); (2) negligence *per se* (all defendants); (3) breach of express and/or implied warranties (all defendants); (4) private nuisance (all defendants); (5) unjust enrichment (all defendants); (6) violation of the North Carolina Consumer Protection Act (all defendants); and (7) equitable and injunctive relief and medical monitoring (all defendants) (see First Amended Complaint ["AC"] pp. 9-14). As to Tobin, the allegations of the First Amended Class Action Complaint are conclusory, vague and ambiguous, and fail to state a claim under Rule 12 of the Federal Rules of Civil Procedure.

As alleged, the home of Plaintiffs Curtis and Lynn Hinckley and Stephanie Hinckley-Lopez "was built and/or had drywall installed by Defendant Porter-Blaine and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan, Tobin and/or Venture" (AC ¶¶ 3-4).

Plaintiffs allege that defendant Porter-Blaine is "one of Venture's drywall installation contractors" which "installed defective drywall in Plaintiffs' home, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members" (AC ¶ 18).

The "defective drywall," Plaintiffs allege, was "designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold" by defendant Taishan (AC ¶ 6). Plaintiffs allege that defendant Venture "imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged

homeowners including Plaintiffs and Class Members" and "also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiffs and Class Members" (AC ¶ 12).

Plaintiffs allege that defendant Tobin "imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case" (AC ¶ 10).[1]  The Amended Complaint does *not* allege any facts indicating that Tobin was in contractual privity with any of the Plaintiffs or any of the putative members of the class or sub-class.

The Amended Complaint contains only very general, conclusory allegations regarding "defective drywall" and its alleged effects (*see* AC, "General Allegations" at ¶¶ 16-24). Plaintiffs allege that "Plaintiffs and the Class Members' homes, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall" (AC ¶ 20).  As alleged, some Plaintiffs and Class Members have suffered only economic loss, while others allegedly have incurred "damages associated with personal injuries" (AC ¶¶ 22-23).  Accordingly, there appears to be no uniformity in the claims asserted by each plaintiff and putative class member.

## ARGUMENT

## <u>APPLICABLE STANDARD OF REVIEW UNDER RULE 12(b)(6).</u>

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint" *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The standard applicable to a motion to dismiss, and the heightened pleading requirements of *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), were recently described by the United States Supreme Court as follows:

---

[1] There is no allegation that Tobin Trading Inc. was a "manufacturer" of a product as that term is defined in N.C. Gen. Stat. § 99B-1.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

4

Thus, although a court considering a motion to dismiss accepts "as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff," in order to survive the motion the complaint must allege "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Philips v. Pitt County Memorial Hosp.*, -- F.3d --, 2009 WL 2006695 at *2 (4th Cir. 2009) (citing *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 616 n. 26 (4th Cir. 2009) and *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965, 1974, (2007)). "Moreover, the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.* (citations omitted).

1.   <u>**COUNT I - NEGLIGENCE**</u>

In order to establish a claim for negligence under North Carolina law, a Plaintiff must establish the following elements: "duty, breach of duty, proximate cause, and damages." *Camalier v. Jeffries,* 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995); *see also Eli Research, Inc. v. United Communications Group, LLC,* 312 F.Supp.2d 748, 758 (M.D.N.C. 2004) ("The essential elements of negligence are duty, a breach of that duty, causation, and damages" (citing *Camalier v. Jeffries,* 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995)).[2]  In North Carolina,

> A duty to act for negligence purposes may flow from a contract or statute or may be implied from attendant circumstances. *Huyck Corp. v. C.C. Mangum, Inc.,* 309 N.C. 788, 794, 309 S.E.2d 183, 187 (1983). Statutes, even those that do not specifically mention tortious conduct, can establish a duty to act and a standard of care. *See NCNB Nat'l Bank of N.C. v. Gutridge,* 94 N.C.App. 344, 348, 380 S.E.2d 408, 411 (1989). To create such a duty, however, the statute must be a public safety statute, that is, it must impose a duty on a person for the protection of others. *See Hart v. Ivey,* 332 N.C. 299, 303-04, 420 S.E.2d 174, 177 (1992)

---

[2] As the North Carolina Supreme Court stated in *Hart v. Ivey,* 332 N.C. 299, 420 S.E.2d 174 (1992), "[a]ctionable negligence is the failure to exercise that degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a *duty* to use reasonable care." *Id.* at 305, 420 S.E.2d at 177-78 (emphasis added).

(holding that a statute barring the sale of alcohol to those under 21 was not a public safety statute and thus did not trigger a negligence duty); *Gregory v. Kilbride,* 150 N.C.App. 601, 610, 565 S.E.2d 685, 692 (2002) *rev. denied,* 357 N.C. 164, 580 S.E.2d 365 (2003) (holding that civil commitment statute was not a public safety statute, and thus violation of the statute by a psychiatrist which resulted in a patient killing his wife and himself was not negligence per se).

*Eli Research, Inc. v. United Communications Group, LLC,* 312 F.Supp.2d 748, 758 (M.D.N.C. 2004).

"In the absence of a legal duty owed to the plaintiff by [the defendant], [the defendant] cannot be liable for negligence." *Stein v. Asheville City Board of Education,* 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006) (citing *Cassell v. Collins,* 344 N.C. 160, 163, 472 S.E.2d 770, 772 (1996)). "No legal duty exists unless the injury to the plaintiff was foreseeable and avoidable through due care." *Id.* at 328, 626 S.E.2d at 267 (citation omitted).

In order to survive a Rule 12(b)(6) motion, "a complaint asserting a negligence claim must disclose 'that each of the elements is present....'" *Iodice v. United States,* 289 F.3d 270, 281 (4th Cir. 2002) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1249 (2d ed. 1990 & Supp.2001)). Under *Twombly,* in order to disclose that each of the elements of "duty, breach of duty, proximate cause, and damages" is present, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'." *Id.*

Thus, Plaintiffs must establish that Tobin owed the Plaintiffs and putative class members a legal duty to exercise reasonable care. The First Amended Complaint fails to sufficiently allege such a tort duty. The pleading is replete with conclusory, vague, non-specific allegations that fail to demonstrate a relationship between Plaintiffs (or the putative class members) and Tobin upon which a tort duty could be based. The same holds true for the general claim that

6

Tobin breached a tort duty that proximately caused the Plaintiffs to sustain damages.  As to

Tobin, the Amended Complaint offers nothing more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action" for negligence, which is insufficient

under *Twombly* and *Ashcroft v. Iqbal, supra,* and therefore should be dismissed under Rule

12(b)(6) of the Federal Rules of Civil Procedure.

## 2.   COUNT II – NEGLIGENCE PER SE

In conclusory fashion, Count II of the Amended Complaint alleges that all defendants

owed and breached "statutory duties to Plaintiffs and Class Members to exercise reasonable care

in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g)

supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall" (AC ¶¶ 45-46).

The Amended Complaint alleges that "Defendants likewise breached their statutory duties to

Plaintiffs and Class Members by failing to warn about the defective nature of the drywall" (AC ¶

47).  Count II of the Amended Complaint should be dismissed for failure to state a claim of

negligence *per se* against Tobin.

"[T]he general rule in North Carolina is that the violation of a [public safety statute]

constitutes negligence *per se.*" *Stein v. Asheville City Board of Education*, 360 N.C. 321, 326,

626 S.E.2d 263, 266 (2006) (citing *Byers v. Standard Concrete Prods. Co.,* 268 N.C. 518, 521,

151 S.E.2d 38, 40 (1966)).  "A public safety statute is one 'impos[ing] upon [the defendant] a

specific duty for the protection of others.'" *Id.* at 326, 626 S.E.2d at 266 (*Lutz Indus., Inc. v.

Dixie Home Stores,* 242 N.C. 332, 341, 88 S.E.2d 333, 339 (1955)).  "Significantly, even when a

defendant violates a public safety statute, the plaintiff is not entitled to damages unless the

plaintiff belongs to 'the class [of persons] intended to be protected by [the] statute,' *Baldwin v.

GTE S., Inc.,* 335 N.C. 544, 546, 439 S.E.2d 108, 109 (1994), and the statutory violation is 'a

proximate cause of [the plaintiff's] injury,' *Hart v. Ivey,* 332 N.C. 299, 303, 420 S.E.2d 174, 177

(1992)." *Id.* at 326, 626 S.E.2d at 266.

Thus, "[i]n order to prevail on [their] claim of negligence per se, plaintiff[s] must show:

(1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to

protect a class of persons which includes the plaintiff[s]; (3) a breach of the statutory duty; (4)

that the injury sustained was suffered by an interest which the statute protected; (5) that the

injury was of the nature contemplated in the statute; and, (6) that the violation of the statute

proximately caused the injury." *Rudd v. Electrolux Corp.*, 982 F.Supp. 355, 365 (M.D.N.C.

1997) (citing *Baldwin v. GTE South, Inc.,* 335 N.C. 544, 439 S.E.2d 108 (1994)).

Here, the Amended Complaint fails to allege facts sufficient to state all the elements of a

claim for negligence *per se*, and fails to allege enough facts to state a claim for negligence *per se*

that is plausible on its face.  It is not enough to simply allege in vague, conclusory fashion that

"statutory duties" were owed and breached.  Plaintiffs must identify the statute or statutes on

which they rely.  The Amended Complaint fails to allege sufficiently a duty created by a public

safety statute; that the statute or ordinance was enacted to protect a class of persons which

includes the Plaintiffs and putative class members; a breach by Tobin of any such public safety

statutory duty; that the damage or injury allegedly sustained was suffered by an interest which

any such statute protected; that the alleged damage or injury was of the nature contemplated in

any such public safety statute; or that violation of the statute proximately caused the Plaintiffs

and putative class members to sustain damages.  Accordingly, Count II of the Amended

Complaint should be dismissed.

**3.**      <u>**COUNT III – BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES**</u>

Although there are no factual allegations in the Amended Complaint suggesting that

Tobin was in contractual privity with Plaintiffs or any of the putative Class Members, Count III

alleges in a conclusory, confusing manner that "Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of *any warranty*" (AC ¶ 51 (emphasis added)).  Count III alleges that "[a]t the times Defendants installed, utilized, supplied, inspected, sold, and/or installed this drywall for use in the Plaintiffs' and Class Members' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' and Class Members' homes for use as a building material, and expressly or impliedly warranted the product to be fit for that use" (AC ¶ 52).  Count III alleges that "[t]he drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for use as a building material, because it contained defects as set forth herein" (AC ¶ 54).  Count III alleges that "Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs and Class Members' homes as building material) due to the defects set forth herein" (AC ¶ 55).  Count III of the Amended Complaint should be dismissed for failure to state a breach of warranty claim against Tobin, for at least two reasons.

First, to the extent that it is directed at Tobin, Count III merely alleges *ipse dixit* that Tobin breached a "warranty" or "any warranty," but fails to allege facts sufficient to state all the elements of a claim for breach of warranty, and fails to allege enough facts to state a claim for breach of warranty that is plausible on its face.  There are insufficient facts (as opposed to conclusions) alleged in the Amended Complaint to indicate that Tobin provided an express or implied warranty to Plaintiffs or any of the putative Class Members that the drywall was "fit and safe … to be installed in Plaintiffs and Class Members' homes as a building material" (Complaint ¶ 55).  Under *Twombly,* in order to properly allege the existence and breach of an enforceable warranty by Tobin, Rule 8 "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation," "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action …'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As pled, Count III only contains "'naked assertion[s]' devoid of 'further factual enhancement'", *id.*, and should be dismissed under Rule 12(b) of the Federal Rules of Civil Procedure.

Second, to the extent that the Amended Complaint purports to allege a warranty claim under North Carolina's Uniform Commercial Code (UCC), as a matter of law the alleged "defective drywall," having been incorporated into the homes of the Plaintiffs and the putative class members, does not qualify as a "good" governed by the UCC. Article 2 of the UCC applies only to "transactions in goods." N.C.G.S. § 25-2-102.[3] The UCC defines goods as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action." N.C.G.S. § 25-2-105(1). It is well settled that "[r]eal estate does not fall under the U.C.C.'s definition of 'goods'." *Cudahy Foods Company v. Holloway*, 55 N.C. App. 626, 628, 286 S.E.2d 606, 607 (1982) (citing N.C.G.S. § 25-2-105); *see also Everts v. Parkinson*, 147 N.C.App. 315, 555 S.E.2d 667 (2001) (trial court properly granted summary judgment to defendants on homeowners' claim that defendants provided and breached an express warranty that the roof, gutters and other structural components of the home were in sound condition, as such a claim did not fall within the purview of the UCC). Thus, because the UCC does not apply to transactions in real property, including the structural components of a home or the building components incorporated into real property,[4] Count III fails to state a claim and should be dismissed.

---

[3] The scope of the UCC is limited to "transactions in goods" and does not apply to contracts for the provision of services. N.C.G.S. § 25-2-102.

[4] *See also BFS Retail & Commercial Operations, LLC v. City of Asheville*, No. 1:07cv192007, WL 2461924 at *5 (W.D.N.C. May 16, 2007) ("As is commonly understood, fixtures are considered to be real property in that they are attached to the land. Real fixtures are those which

4.    **COUNT IV – PRIVATE NUISANCE**

Count IV of the Amended Complaint should be dismissed for failure to state a private

nuisance claim against Tobin.

In North Carolina, "a private nuisance exists in a legal sense when one makes an

improper use of his own property and in that way injures the land or some incorporeal right of

one's neighbor." *Evans v. Lochmere Recreation Club, Inc.*, 176 N.C.App. 724, 727, 627 S.E.2d

340, 342 (2006) (citing *Morgan v. High Penn Oil Co.,* 238 N.C. 185, 193, 77 S.E.2d 682, 689

(1953)).  The liability forming conduct must involve a defendant's improper use of his property,

or the unreasonable maintenance or operation of an enterprise on his property, which results in

an encroachment or an invasion onto, or interference with, his neighbor's property that involves

more than slight inconvenience or petty annoyance.  *See also Elliott v. Muehlbach*, 173 N.C.

App. 709, 712, 620 S.E.2d 266, 269 (2005) ("in order to establish a *prima facie* case of nuisance

*per accidens,* a plaintiff must prove: (1) that the defendant's use of its property, under the

circumstances, unreasonably invaded or interfered with the plaintiff's use and enjoyment of the

plaintiff's property; and (2) because of the unreasonable invasion or interference, the plaintiff

suffered substantial injury").

"To support a complaint for private nuisance, a plaintiff must allege 'sufficient facts from

which it may be determined what liability forming conduct is being complained of and what

injury plaintiffs have suffered.'" *Evans v. Lochmere Recreation Club, Inc.*, 176 N.C.App. 724,

727, 627 S.E.2d 340, 341-42 (2006) (citing *Hill v. Perkins,* 84 N.C.App. 644, 648, 353 S.E.2d

686, 689 (1987)).

Here, Count IV of the Amended Complaint alleges in conclusory fashion that

"Defendants' tortious and wrongful acts or omissions have caused sulfide gas and/or other

---

become inseparable from the land and are considered part of the real property due to permanent
annexation") (unpublished opinion filed herewith as Exhibit 1).

chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties …" (AC ¶ 59).

Clearly, though, at all pertinent times, Plaintiffs and the putative class members allegedly owned the properties (including the drywall or component "building materials" incorporated therein at the time of construction or sale) of which they complain. Count IV fails to allege that Tobin used or authorized the use of its own property (or anything else under its control) so as to injuriously affect the owners or occupiers of the subject properties. Indeed, the facts alleged in the Amended Complaint do not give rise to a "private nuisance" claim under any stretch of North Carolina law.[5] Instead, the gist of the Amended Complaint is that Plaintiffs and putative Class Members purchased or constructed homes with a defective component part, and consequently they did not receive what they bargained for. Count IV of the Amended Complaint fails to state a claim against Tobin for private nuisance and should be dismissed.

## 5.   COUNT V – UNJUST ENRICHMENT

Count V of the Amended Complaint fails to state a claim against Tobin for unjust enrichment and should be dismissed.

"Unjust enrichment is an equitable claim in which the court implies a quasi-contract in the absence of an actual agreement between the parties and permits a plaintiff to bring an action in restitution to recover the amount of the benefit conferred on the defendant." *Johnson v. Sprint Solutions, Inc.*, No. 3:08-CV-00054, 2008 WL 2949253 at *4 (W.D.N.C. July 29, 2008) (citing

---

[5] *Compare Tioga Public School District v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (explaining that "nuisance law does not afford a remedy against the manufacturer of an asbestos-containing product to an owner whose building has been contaminated by asbestos following installation of that product in the building," Eight Circuit held that defendant that had no further control of contaminated material after it was sold to the plaintiff could not be held liable in nuisance).

*Booe v. Shadrick,* 322 N.C. 567, 369 S.E.2d 554 (1988)) (unpublished opinion filed herewith as

Exhibit 2).  In *Booe v. Shadrick,* the Supreme Court of North Carolina stated:

> The Restatement of Restitution § 1 lays down the general principle that "[a]
> person who has been unjustly enriched at the expense of another is required to
> make restitution to the other." In order to establish a claim for unjust enrichment,
> a party must have conferred a benefit on the other party. The benefit must not
> have been conferred officiously, that is it must not be conferred by an interference
> in the affairs of the other party in a manner that is not justified in the
> circumstances. The benefit must not be gratuitous and it must be measurable. *See*
> *Britt v. Britt,* 320 N.C. 573, 359 S.E.2d 467 (1987) and E. Allan Farnsworth,
> *Contracts* § 2.20. In *Wells v. Foreman,* 236 N.C. 351, 72 S.E.2d 765 (1952), we
> said that the defendant must have consciously accepted the benefit. A claim of
> this type is neither in tort nor contract but is described as a claim in quasi contract
> or a contract implied in law. A quasi contract or a contract implied in law is not a
> contract. The claim is not based on a promise but is imposed by law to prevent an
> unjust enrichment. If there is a contract between the parties the contract governs
> the claim and the law will not imply a contract. *Concrete Co. v. Lumber Co.,* 256
> N.C. 709, 124 S.E.2d 905 (1962). Our cases hold that the measure of damages for
> unjust enrichment is the reasonable value of the goods and services to the
> defendant. *Johnson v. Sanders,* 260 N.C. 291, 132 S.E.2d 582 (1963);
> *Environmental Landscape Design v. Shields,* 75 N.C.App. 304, 330 S.E.2d 627
> (1985); *Hood v. Faulkner,* 47 N.C.App. 611, 267 S.E.2d 704 (1980); *Harrell v.*
> *Construction Co.,* 41 N.C.App. 593, 255 S.E.2d 280 (1979), *affirmed,* 300 N.C.
> 353, 266 S.E.2d 626 (1980).

*Booe v. Shadrick,* 322 N.C. 567, 570, 369 S.E.2d 554, 555-56 (1988).

Thus, to prevail on a claim of unjust enrichment, Plaintiffs must demonstrate that (1) they

conferred a benefit on Tobin, (2) the benefit was not conferred gratuitously or officiously, "that

is it must not be conferred by an interference in the affairs of the other party in a manner that is

not justified in the circumstances," (3) the benefit was measurable, and (4) Tobin consciously

accepted the benefit.  *See Fireman's Fund Ins. Co. v. Safeco Ins. Co. of America,* No. 3:07-CV-

862007 WL 4233317 at *2 (W.D.N.C. November 28, 2007) (citing *Booe v. Shadrick*)

(unpublished opinion filed herewith as Exhibit 3).

Count V of the Amended Complaint fails to allege sufficient facts showing that (1)

Plaintiffs conferred a benefit on Tobin; (2) any such benefit was not conferred gratuitously or

officiously, (3) any such benefit was measurable, and (4) Tobin consciously accepted any such

benefit.  Indeed, the Amended Complaint alleges that Plaintiffs contracted with others in order to build or purchase their homes.  There are no allegations of fact (as opposed to conclusions) indicating that Plaintiffs conferred a benefit on Tobin.  Moreover, "[i]f a party induces or solicits another party to confer some sort of benefit, the second party's behavior is non-officious." *Firemen's Fund Ins. Co. v. Safeco Ins. Co.*, *supra*, 2007 WL 4233317 at *2.  Plaintiffs fail to allege that Tobin acted to induce or solicit Plaintiffs to confer any alleged benefit.  "Absent such inducement or solicitation, Defendants are simply not liable for unjust enrichment, even if they did benefit from [Plaintiffs'] actions." *Id.* (noting that "[w]here a person has officiously conferred a benefit upon another, the other is enriched, but is not considered to be unjustly enriched").  There are also insufficient allegations of fact (as opposed to conclusions) demonstrating that any alleged benefit to Tobin was measurable, or that Tobin consciously accepted any such benefit.  Under North Carolina law and Rule 12(b)(6), Count V should be dismissed for failure to state a claim.[6]

**6.    COUNT VI – NORTH CAROLINA CONSUMER PROTECTION ACT**

Count VI of the Amended Complaint indicates that it is "an action for relief under North Carolina law G.S. § 57-1.1, *et seq.*, pursuant to the North Carolina Consumer Protection Act" (AC ¶ 70).  Count VI fails to state a claim against Tobin under the North Carolina Unfair and Deceptive Trade Practices Act, and should be dismissed.

This Court has stated that in order to establish a claim for unfair trade practices under N.C. Gen. Stat. § 75-1.1 *et seq.*,

---

[6] Moreover, unless there is an inadequate remedy at law, an equitable remedy like unjust enrichment would be inappropriate. *See Robertson v. City of High Point*, 129 N.C.App. 88, 92, 497 S.E.2d 300, 303 (1998) ("the general rule is that, if there is an adequate remedy at law, then an equitable remedy such as an injunction would be inappropriate").  As a predicate to seeking equitable relief, Plaintiffs have not pled sufficient facts demonstrating that they lack an adequate remedy at law.

a plaintiff must show that (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. *See Dalton v. Camp,* 353 N.C. 647, 548 S.E.2d 704, 711 (2001); *Pleasant Valley Promenade,* 464 S.E.2d at 58 (to establish a prima facie case for unfair trade practices, a plaintiff must show that it suffered actual injury as a proximate result of defendant's misrepresentations).

*Wilson v. Dryvit Systems, Inc.*, 206 F.Supp.2d 749, 756 (E.D.N.C. 2002), *aff'd* 71 Fed. Appx. 960 (4th Cir. 2003).  Moreover, this Court has stated:

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." *Johnson v. Phoenix Mut. Life Ins. Co.,* 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980). "An act or practice is deceptive ... if it has the capacity or tendency to deceive." *Id.* at 265. "What is an unfair or deceptive trade practice usually depends upon the facts of each case and the impact the practice has on the marketplace." *Id* . at 262-63. "While an act or practice which is unfair may also be deceptive, or vice versa, it need not be so for there to be a violation of the Act." *Id.* at 263.

Generally, North Carolina courts and the Fourth Circuit have held that a mere breach of contract or breach of warranty does not, standing alone, constitute an unfair or deceptive trade practice. *Stone v. Paradise Park Homes, Inc.,* 37 N.C.App. 97, 106, 245 S.E.2d 801, 807, review denied, 295 N.C. 653, 248 S.E.2d 257 (1978); *Bartolomeo v. Thomas,* 889 F.2d at 535. Determining whether a defendant's conduct was unfair and deceptive within the meaning of the Act in *United Roasters, Inc. v. Colgate Palmolive Co.,* 649 F .2d 985, 992 (4th Cir.), cert. denied, 454 U.S. 1054 (1981), the Fourth Circuit analyzed the scope of the statute.

It is clear that the statute encompasses such things as misrepresentation and a wide variety of shady practices sometimes associated with the marketing of consumer goods and services. Whatever the limit of their reach, however, the words must mean something more than an ordinary contract breach. In a sense, unfairness inheres in every breach of contract when one of the contracting parties is denied the advantage for which he contracted, but this is why remedial damages are awarded on contract claims. If such an award is to be trebled, the North Carolina legislature must have intended that substantial aggravating circumstances be present.

Even an intentional breach of a valid contract does not, by itself, violate the statute. *Id.* at 992 (citing *CF Industries, Inc. v. Continental Gas Pipe Line Corp.,* 448 F.Supp. 475 (W.D.N.C.1978)); *Bartolomeo,* 889 F.2d at 535 ("A simple breach of contract, even if intentional, does not amount to a violation of the Act...."); *Branch Banking and Trust Co. v. Thompson,* 107 N.C.App. 53, 62, 418 S.E.2d 694, review denied, 332 N.C. 482, 421 S .E.2d 350 (1992) ("It is well

recognized ... that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the Act]").

Instead, "a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." *Bartolomeo*, 889 F.2d at 535; *Branch Banking and Trust Co.*, 107 N.C.App. at 62. The Fourth Circuit has suggested that "to find such [substantial aggravating circumstances] one would probably need to demonstrate deception either in the formation of the contract or in the circumstances of its breach." *Bartolomeo*, 889 F.2d at 535; *see also, Harbert Int'l Inc. v. Wake County Bd. Of Educ.*, No. 90-640-CIV-5-D (E.D.N.C. Aug. 7, 1992) at 10 (citing *Bartolomeo* and *United Roasters*)

*Terry's Floor Fashions, Inc. v. Georgia-Pacific Corp.*, No. 5:97-CV-683-BR(2), 1998 WL 1107771 at *9-10 (E.D.N.C. July 23, 1998) (unpublished opinion filed herewith as Exhibit 4). If the facts supporting Plaintiffs' unfair trade practices claim are indistinguishable from those of plaintiff's breach of warranty claims, and Plaintiff does not assert any additional facts to demonstrate substantial aggravating circumstances, as required by the Fourth Circuit, the complaint should be dismissed. *Id.*

That is exactly the situation presented by Count VI of the Amended Complaint. Count VI is replete with conclusions and labels, but contains no factual allegations demonstrating that Tobin committed an unfair or deceptive act or practice; that any such act or practice was in or affecting commerce; or that any such act or practice proximately caused injury to the plaintiffs. Plaintiffs do not assert any facts demonstrating substantial aggravating circumstances, as required by the Fourth Circuit. And there are no factual allegations demonstrating that Tobin said or did anything, or failed to say or to do something, that influenced the Plaintiffs' decision to purchase or build their homes with the subject drywall. *See Wilson v. Dryvit Systems, Inc.*, 206 F.Supp.2d at 756-57 ("In short, there is no evidence that Dryvit said or did anything, or failed to say or to do something, that influenced plaintiffs' decision to clad their home with Fastrak in any relevant way. *Cf. Pleasant Valley Promenade*, 464 S.E.2d at 58 (defendant was entitled to directed verdict on plaintiff's unfair trade practices claim where plaintiff 'did not sufficiently

demonstrate actual reliance on [defendant's] misrepresentations, and therefore, failed to provide the requisite causal connection'). Therefore, as a matter of law, plaintiffs cannot prove an essential element of their unfair trade practices claim"). Count VI should be dismissed for failure to state a claim against Tobin under the North Carolina Unfair and Deceptive Trade Practices Act.

7. **COUNT VII – EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING**

    i. **Complaint Fails to State a Claim for "Equitable and Injunctive Relief"**

This is an action at law seeking an award of money damages. Notwithstanding, the Amended Complaint also alleges in conclusory fashion that Plaintiffs and the Class "are without adequate remedy at law, rendering injunctive and other equitable relief appropriate" and "will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the …homes" (AC ¶¶ 76-77). Plaintiffs "demand injunctive and equitable relief" that orders the defendants:

> (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program consistent with the requirements of North Carolina law.

(AC ¶ 78.) Plaintiffs also demand that defendants "provide continued environmental and air monitoring in Plaintiffs and Class Members' homes" (AC ¶ 79).

As to Tobin, the Amended Complaint fails to state a cognizable or plausible claim for "Equitable and Injunctive Relief" and should be dismissed under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. As to Tobin, insufficient facts have been alleged that

would give this Court equity jurisdiction to award the requested injunctive relief. Moreover, as to Tobin, the requested injunctive relief is not plausibly suggested by the facts alleged in the Amended Complaint.

"The predicate inquiry in evaluating whether to issue permanent injunctive relief is whether the court may properly exercise equity jurisdiction." *Northeast Women's Center v. McMonagle*, 745 F.Supp. 1082, 1085 (E.D. Pa. 1990). Equity jurisdiction is not proper unless "(1) plaintiff has no adequate legal remedy, (2) the threatened injury is real, not imagined, and (3) no equitable defenses preclude jurisdiction." *Id.* (citations omitted).

In the Fourth Circuit, in order to obtain a permanent injunction in any case:

> "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*eBay Inc. v. Mercexchange LLC*, 547 U.S. 388, 391 (2006) (internal citations omitted).

Irreparable injury and remedy at law "are essentially two sides of the same coin." *Mercexchange LLC v. eBay*, 500 F.Supp.2d 556, 569 n. 11 (E.D. Va. 2007). As stated by the U.S. Supreme Court,

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Assoc. v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C. Cir. 1958)).

"Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." *Hughes Network Systems v. Interdigital Communications Corp.*, 17 F.3d 691 (4th Cir. 1994)

(citing *Morton v. Beyer,* 822 F.2d 364, 371-72 (3d Cir. 1987) and *Foxboro Co. v. Arabian Am. Oil Co.,* 805 F.2d 34, 36 (1st Cir. 1986)). "[A] party does not normally suffer irreparable harm simply because it has to win a final judgment on the merits to obtain monetary relief." *Id.*; *see also Robertson v. City of High Point*, 129 N.C.App. 88, 92, 497 S.E.2d 300, 303 (1998) ("the general rule is that, if there is an adequate remedy at law, then an equitable remedy such as an injunction would be inappropriate").

Plaintiffs have failed to allege sufficient facts (as opposed to conclusions) which demonstrate the predicate to this Court's exercise of equity jurisdiction, or which demonstrate each of the four factors enunciated in *eBay v. Mercexchange LLC, supra.* As alleged, plaintiffs and the putative class members have not suffered an "irreparable injury," and the remedies available at law (i.e., monetary damages) are adequate. Moreover, as discussed below, the request for "medical monitoring" for unknown "potential" or "possible" health problems associated with "exposure" to drywall, is entirely speculative and unsupported by North Carolina law. Count VII fails to state a claim to injunctive relief that is plausible on its face, and should be dismissed.

### ii.        Complaint Fails to State a Claim for "Medical Monitoring"

The Amended Complaint fails to state a cognizable claim for "Medical Monitoring" under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Amended Complaint alleges that Plaintiffs and Class Members "have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result" (AC ¶ 80). The Amended Complaint alleges that this "exposure *may lead* to serious health problems, diseases, and medical conditions that *may be prevented* by timely diagnosis and treatment" (AC ¶ 83 (emphasis added)). The Amended Complaint requests "medical

19

monitoring" (or a "monitoring regime") in order to detect or diagnose "*potential* medical problems," "problems that they *may encounter*," or "*any* latent disease *possible*" (AC ¶¶ 84, 86 (emphasis added)).

As a federal court sitting in diversity, this Court is obliged to apply the jurisprudence of the Supreme Court of North Carolina on issues of North Carolina law. *See St. Paul Fire & Marine Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2002) (citation omitted); *see also Ball v. Joy Technologies, Inc.*, 958 F.2d 36, 39 (4th Cir. 1991) (observing that "[t]he *Erie* doctrine permits federal courts 'to rule upon state law as it presently exists and not to surmise or suggest its expansion,'" the Fourth Circuit declined the plaintiffs' request to expand the law of torts in West Virginia and Virginia and recognize exposure to toxic substances as a physical injury, and affirmed the District Court's order concluding that exposure to toxic chemicals did not constitute an injury that would entitle plaintiffs to recover damages for emotional distress).

Neither the Supreme Court of North Carolina, nor the legislature in North Carolina, have recognized "medical monitoring" or medical surveillance as a viable independent tort claim or cause of action, nor has it recognized a remedy involving the creation of a medical monitoring fund (or a "monitoring regime") for "potential medical problems." To the contrary, if presented with this issue, all indications are that the Supreme Court of North Carolina would decline to expand North Carolina tort law and would refuse to recognize such a claim. *See, e.g., Curl v. American Multimedia, Inc.*, 187 N.C.App. 649, 655-56, 654 S.E.2d 76, 80-81 (2007).

Because this Court must "rule upon state law as it presently exists" and not "surmise or suggest its expansion," *Ball v. Joy Technologies, Inc.*, *supra*, this Court should decline the invitation of the Plaintiffs to re-write or expand the law of torts in North Carolina and dismiss the claim for "Medical Monitoring" in Count VII for failure to state a claim.

8.   **PUNTIVE DAMAGES CLAIM.**

The Amended Complaint demands an award of punitive damages. Pursuant to N.C. Gen.

Stat. § 1D-15(a):

> Punitive damages may be awarded only if the claimant proves that the defendant
> is liable for compensatory damages and that one of the following aggravating
> factors was present and was related to the injury for which compensatory damages
> were awarded:
>
> > (1) Fraud.
> > (2) Malice.
> > (3) Willful or wanton conduct.

N.C. Gen. Stat. § 1D-15(a).  The Amended Complaint is completely devoid of any facts

demonstrating the existence of any "aggravating factors" attributable to Tobin.  Thus, the

demand for punitive damages should be dismissed under Rule 12(b)(6) of the Federal Rules of

Civil Procedure.

## CONCLUSION AND REQUEST FOR HEARING

WHEREFORE, Defendant Tobin Trading Inc., by counsel, respectfully prays that this

Court enter an Order granting its Motion to Dismiss, and requests a hearing and opportunity to

present oral argument in support of these Motions.

This the 22nd day of July, 2009.

Respectfully submitted,

_/s/ Theodore I. Brenner_
Theodore I. Brenner
*Visiting Attorney Specially Appearing for*
*Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 17815

/s/ Alexander S. de Witt
Alexander S. de Witt
*Visiting Attorney Specially Appearing for*
*Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia 23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 42708

/s/ Andrew A. Vanore, III
Andrew A. Vanore, III
*Attorney for Defendant, Tobin Trading Inc.*
Brown, Crump, Vanore & Tierney, L.L.P.
P.O. Box 1729
Raleigh, NC 27602
Phone: (919) 835-0909
Fax: (919) 835-0915
E-mail: drewvanore@bcvtlaw.com
NC State Bar No. 42708

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date electronically filed the foregoing **Memorandum in Support of Motion to Dismiss** with the Clerk of the Court using the CM/ECF system which will then send notification of such filing to the following:

J. Michael Malone
Hendren & Malone, PLLC
4600 Marriott Dr., Suite 150
Raleigh NC 27612
Counsel for Plaintiffs

Roberty Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
Co-Counsel for Plaintiffs

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
Hausfeld, LLP
1700 K Street, N.W., Suite 650
Washington, DC  20006
 Co-Counsel for Plaintiffs

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106
 Co-Counsel for Plaintiffs

Richard J. Serpe
Law Offices of Richard J. Serpe, P.C.
580 E. Main Street, Suite 310
Norfolk, VA  23510
 Co-Counsel for Plaintiffs

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, GA  300022
*Co-Counsel for Plaintiffs*

Thomas M. Buckley
Hedrick, Gardner, Kincheloe & Garofalo, LLC
4011 Westchase Blvd., Suite 300
Raleigh, NC  27607
 *Counsel for Porter-Blaine Corp.*

    /s/ Alexander S. de Witt
Alexander S. de Witt
*Visiting Attorney Specially Appearing for
Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@bevlaw.com
Virginia State Bar No. 42708

23

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2461924 (W.D.N.C.)
**(Cite as: 2007 WL 2461924 (W.D.N.C.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court, W.D. North Carolina, Asheville Division.
BFS RETAIL & COMMERCIAL OPERATIONS, LLC, Plaintiff,
v.
CITY OF ASHEVILLE, Defendant.
No. 1:07cv19.

May 16, 2007.

Christopher Andrew Page, Young, Moore & Henderson, P.A., Raleigh, NC, for Plaintiff.

Frederick S. Barbour, Barbour Law Firm, PLLC, Asheville, NC, for Defendant.

## MEMORANDUM AND RECOMMENDATION

DENNIS L. HOWELL, United States Magistrate Judge.

**\*1 THIS MATTER** is before the court on defendant's Motion to Dismiss (# 9), plaintiff's Response (# 13), and defendant's Reply (# 16). Having carefully considered those motions and reviewed current case law, the court enters the following findings, conclusions, and Recommendation

## FINDINGS AND CONCLUSIONS

### I. Background

For the limited purpose of the pending Motion to Dismiss the court has accepted all allegations of the Complaint as true.

Plaintiff is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Bloomingdale, Illinois. Compl., at ¶ 1. Plaintiff leased a retail store located at 85 Tunnel Road, Asheville, North Carolina (hereinafter the "Firestone Store"). Compl., at ¶ 6.

Defendant is the City of Asheville ("Defendant"), which is a North Carolina municipality. Compl., at ¶ 2. Plaintiff contends that defendant operates and maintains water lines within the city limits as a proprietary function, making the doctrine of governmental immunity inapplicable. Compl., at ¶ 3.

The Tunnel Road building leased by plaintiff was constructed in 1965, Compl., at ¶ 7, and two sixteen-inch water mains were located under the store in 1964. Compl., at ¶ 8. On or about November 30, 2004, a representative of the City of Asheville contacted the manager of the plaintiff's store to inform the manager that the City of Asheville would be working on the water mains and would be required to turn off the water to the store than evening from 11:00 p.m. until 7:00 a.m. Compl., at ¶ 10. On or about December 1, 2004, the Defendant's agents and employees were working near the plaintiff's store on the water mains in order to service those water lines. Compl., at ¶ 9. At approximately 4 a.m. on the morning of December 1, 2004, the manager of the plaintiff's store was contacted by the Asheville Police Department and told that the water mains running under the store had ruptured. Compl., at ¶ 11. As a result of this rupture, the building was damaged structurally, plaintiff's fixtures and equipment were damaged, customer vehicles were damaged, as well as personal belongings of the plaintiff's employees. The building was declared structurally unsound by the City, and the building had to be substantially rebuilt. The landlord was not able to deliver possession back to the plaintiff until on or about October 2005. Compl., at ¶ 12. The plaintiff had to re-fixture the store, and was not able to reopen until on or about October 29, 2005.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.


EXHIBIT 1

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2461924 (W.D.N.C.)
**(Cite as: 2007 WL 2461924 (W.D.N.C.))**

Page 2

*Id.*

Plaintiff contends that as a direct result of the actions of the defendant, the plaintiff suffered significant property damage and loss of revenue, and had to compensate both its employees and its customers for their property damage. Compl., at ¶ 13.

## II. Plaintiff's Claims and Defendant's Motion to Dismiss

Plaintiff has brought three causes of action: (1) negligence; (2) trespass; and (3) private nuisance. Defendant has moved to dismiss plaintiff's claims for trespass and nuisance, arguing under Rule 12(b)(6) that such claims are "barred" because the "losses of the type alleged by Plaintiff" fall exclusively within North Carolina's inverse condemnation statute.

## III. Applicable Rule 12(b)(6) Standard

*2 Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Conley v. Gibson,* 355 U.S. 41 (1957). As the Court discussed in *Neitzke:*

This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory.... What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

*Id.,* at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. *Taubman Realty Group LLP v.. Mineta,* 320 F.3d 475, 479 (4th Cir.2003); *Migdal v. Rowe Price-Fleming Intl Inc.,* 248 F.3d 321, 325-36 (4th Cir.2001).

While the court accepts factual allegations in the Complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP,* 213 F.3d 175, 180 (4th Cir.2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

*Migdal,* at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit ." *Venev v. Wyche,* 293 F.3d 726, 730 (4th Cir.2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendant's motion, the court has accepted as true the facts alleged by plaintiff in the Complaint and will view them in a light most favorable to plaintiff.

## IV. Discussion

Defendant contends that plaintiff has failed to state claims for trespass and private nuisance because the inverse condemnation action allowed by Chapter

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2461924 (W.D.N.C.)
**(Cite as: 2007 WL 2461924 (W.D.N.C.))**

Page 3

40A-51 "is the sole remedy to a property owner against a municipality, barring claims for trespass or nuisance."Defendant's Brief in Support, at 2. Defendant's argument is based on North Carolina's inverse condemnation statute, which provides as follows:

*3 (a) If property has been taken by an act or omission of a condemnor listed in G.S. 40A-3(b) or (c) and no complaint containing a declaration of taking has been filed the owner of the property may initiate an action to seek compensation for the taking. The action may be initiated within 24 months of the date of the taking of the affected property or the completion of the project involving the taking, whichever shall occur later.

* * *

(c) *Nothing in this section shall in any manner affect an owner's common-law right to bring an action in tort for damage to his property.*
N.C.Gen.Stat. § 40A-51. (emphasis added). While the statute specifically refers to owners, it would appear that lessees as well as owners may commence an inverse condemnation proceeding inasmuch as

a lessee has standing to litigate its portion of the total award upon condemnation. *See Durham v. Realty Co.,* 270 N.C. 631, 155 S.E.2d 231 (1967).

* * *

Chapter 40A defines "owner" as "any person having an interest or estate in the property."N.C.Gen.Stat. § 40A-2(5) (1984) (emphasis added). *Transcontinental Gas Pipe Line Corp. v. Calco Enterprises,* 132 N.C.App. 237, 242-43 (1999).

Chapter 40A-51 was intended to provide owners and others who have an interest in real property

with a cause of action to seek inverse condemnation where real property is for all practical purposes taken by act or omission by a lawful condemnor, but only where such condemnor has failed to file a complaint in court seeking condemnation of such property. Prior to the passage of Chapter 40A-51 in 1981, aggrieved land owners were relegated to bringing common law claims for trespass and nuisance against condemnors.

Defendant argues that Chapter 40A-51 preempts plaintiff's common law claims for trespass and nuisance. The undersigned agrees with defendant, but only insofar as an owner or another person with an interest in real property attempts to avoid Chapter 40A-51 (and its two year period of limitations) and bring claims for inverse condemnation by utilizing the pre-1981 method of cobbling claims of trespass or nuisance. Otherwise, it would appear that all common law claims remain available to land owners for damages suffered at the hands of public or *quasi* public authority. Indeed, the statute provides as much: "(c) Nothing in this section shall in any manner affect an owner's common-law right to bring an action in tort for damage to his property."N.C.Gen.Stat. 40A-51. In the factual allegations of the Complaint, the plaintiff alleges in relevant part:

12. As a result of this rupture, the building was damaged structurally, the Plaintiff's fixtures and equipment were damaged, customer vehicles were damaged, as well as personal belongings of the Plaintiff's employees. The building was declared structurally unsound by the City, and the building had to be substantially rebuilt. The landlord was not able to deliver possession to the Plaintiff until on or about the second half of October, 2005. The Plaintiff had to fixture the store, and was not able to reopen until on or about October 29, 2005.

*4 13. As a direct result of the actions of the Defendant, the Plaintiff suffered significant property

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2461924 (W.D.N.C.)
(Cite as: 2007 WL 2461924 (W.D.N.C.))

damage and loss of revenue, and had to compensate both its employees and its customers for their property damage.

Compl., at ¶¶ 12-23.

Plaintiff goes on to allege in seeking damages based on its cause of action for negligence a narrower range of damages:

20. As a proximate cause of the Defendant's negligence, Plaintiff suffered damages, including significant property damage to inventory and fixtures in the store, and compensating customers and employees for their losses, and Plaintiff suffered significant loss of revenue because the damage caused by the ruptured water mains caused the store to be closed for one year.

Compl., at ¶ 20.

Defendant argues that "[u]nder no set of facts can Plaintiff prevail on a claim for inverse condemnation."Defendant's Brief, at 3. The undersigned agrees with that statement, but not because plaintiff has asserted claims for trespass or nuisance that are preempted, but because plaintiff seeks only monetary damages for its alleged losses. Plaintiff has not requested a declaration of inverse condemnation as remedy for its claims sounding in trespass or nuisance. To hold as defendant suggests would require a finding that a statutory condemnor, when it damages property through proprietary activity, is immune from all common law claims of trespass and nuisance. Certainly, even the City of Asheville is capable of committing a trespass or causing a nuisance, and not all trespasses or nuisances are remedied by a declaration of inverse condemnation. Indeed, the facts alleged in the Complaint would lead to a reasonable inference that the last thing plaintiff would want would be to permanent loss of what appears to be a prime retail location through a declaration of inverse

Plaintiff, a lessee, does not allege a taking or even

that defendant substantially interfered with its real property rights, but instead alleged that defendant "substantially interfered with Plaintiff's *use and enjoyment* of its property."Compl., at ¶ 27. While "use and enjoyment" are a substantial aspect of the bundle of sticks constituting property ownership, such a allegation falls short of alleging a *taking* of real property. Under Chapter 40A of the North Carolina General Statutes entitled "Eminent Domain", the definition of "property" subject to such eminent domain proceedings, including inverse condemnation, is defined as follows:

(7) "Property" means any right, title, or interest in land, including leases and options to buy or sell. "Property" also includes rights of access, rights-of-way, easements, water rights, air rights, and any other privilege or appurtenance in or to the possession, use, and enjoyment of land.

N.C.Gen.Stat. § 40A-2(7). Comparing the description of the damages sought by the plaintiff in its Complaint with the statutory definition of "property," the damages sought by the plaintiff are not encompassed within Chapter 40A of the North Carolina General Statutes.

**5** The only category of damage to property sought by plaintiff that gives the undersigned pause as being possibly covered by the statutory scheme is damage to fixtures. As is commonly understood, fixtures are considered to be real property in that they are attached to the land.

Real fixtures are those which become inseparable from the land and are considered part of the real property due to permanent annexation. *Hughes v. Young*, 115 N.C.App. 325, 328, 444 S.E.2d 248, 250,*disc. review denied*, 337 N.C. 692, 448 S.E.2d 525 (1994); *Webster's Real Estate Law in North Carolina*, § 2-2 (5th ed.1995). However, where the chattel retains its own character and is not permanently annexed to the property, it remains personal property. *Webster's*, § 2-2. The

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2461924 (W.D.N.C.)
**(Cite as: 2007 WL 2461924 (W.D.N.C.))**

Page 5

controlling test to determine the nature of a fixture on real property is "the intention with which the annexation is made." *Little v. National Service Industries, Inc.,* 79 N.C.App. 688, 692, 340 S.E.2d 510, 513 (1986) (citation omitted).

*Johnson v. Wilder,* 2002 WL 31459073, 2 (N.C.App.2002). A review of the decisions of the North Carolina Appellate Courts shows, however, that even fixtures are not always property subject to inverse condemnation. *City of Durham v. Woo,* 129 N.C.App. 183, 191,cert. denied, 348 N.C. 496 (1998). In Woo, the North Carolina Court of Appeals stated, as follows:

For purposes of condemnation, 'property' is limited to interests in real property, and does not include personal property. It therefore follows that personal property cannot be taken through an eminent domain proceedings under Chapter 40A.

*Id.,* at 191.Because the damages sought by the plaintiff appear to be losses to personalty such as "damage to inventory and fixtures in the store", "compensating customers and employees for their losses", and "significant loss of revenue," Compl., at ¶ 20, plaintiff's causes of action could not have been brought through an inverse condemnation action as contended by the defendant.

North Carolina courts have long recognized that not every tortious act of a sovereign results in a taking. North Carolina courts have long held that

In all of these [condemnation] cases the acts of the sovereign in exercise of its governmental powers resulted in the imposing of some more or less permanent servitude upon plaintiffs' property sufficient for the court to find that there had been a taking of a property interest from the citizen by the sovereign. **The acquisition by the sovereign of such an interest, and not the mere incidental damage to the citizen's property by the tortious acts of sovereign's agents, is required before there is a compensable taking of property.**

**Admittedly the line between the two types of situations may not always be precise.**

*Bynum v. Onslow County,* 1 N.C.App. 351, 355 (1968)(emphasis added). In this case, the acts of defendant imposed no greater servitude on the real property than existed prior to the water line break. To the extent the alleged damage required vacation of the premises for 11 months so that repairs could be made to the pipe and in turn the structure, it cannot be inferred that such activities imposed a "permanent servitude."

**\*6** In all of the cases cited by defendant in support of the proposition that trespass and nuisance are preempted by Chapter 40A-51, plaintiffs therein alleged that the statutory condemnors committed continuing and permanent trespass. Indeed, *Howell v. City of Lumberton,* 144 N.C.App. 695 (2001), stands for the proposition that common law claims-other than those for inverse condemnation-survive enactment of Chapter 40A-51. Clearly, under *Howell,* if "a common-law action for negligence by defendant would otherwise be available to plaintiff, it is preserved under N.C .G.S. § 40A-51(c) and not preempted by the inverse condemnation statute."*Id.,* 700.

It follows that if a common-law action for trespass or nuisance is otherwise available to plaintiff, it is preserved under Chapter 40A-51 so long as plaintiff does not claim a *continuing and permanent* trespass and nuisance, or seek inverse condemnation as a remedy.

### RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Dismiss (# 9) be **DENIED.**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2461924 (W.D.N.C.)
**(Cite as: 2007 WL 2461924 (W.D.N.C.))**

Page 6

law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208 (1984).

W.D.N.C.,2007.
BFS Retail & Commercial Operations, LLC v. City of Asheville
Not Reported in F.Supp.2d, 2007 WL 2461924 (W.D.N.C.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 2949253 (W.D.N.C.)
(Cite as: 2008 WL 2949253 (W.D.N.C.))

Page 1

C

Only the Westlaw citation is currently available.

United States District Court, W.D. North Carolina,
Charlotte Division.
Myra JOHNSON, on behalf of herself and all oth-
ers similarly situated, Plaintiff,
v.
SPRINT SOLUTIONS, INC., Defendants.
No. 3:08-CV-00054.

July 29, 2008.

Alan J. Statman, Jeffrey P. Harris, William Kelly
Lundrigan, Statman Harris & Eyrich LLC, Cincin-
nati, OH, Gary W. Jackson, Jackson & McGee,
LLP, Charlotte, NC, Jon Lambiras, Michael T. Fat-
ini, Berger & Montague, Sherrie R. Savett, Phil-
adelphia, PA, for Plaintiff.

C. Ralph Kinsey, Jr., Jonathan Harlan Edgar,
McGuireWoods, LLP, Charlotte, NC, David E.
Mills, Dow, Lohnes & Albertson, PLLC, Washing-
ton, DC, Michael George Kovaka, Dow Lohnes,
PLLC, Atlanta, GA, for Defendants.

### ORDER

GRAHAM MULLEN, District Judge.

**\*1 THIS MATTER** is before the Court upon De-
fendant's "Motion to Dismiss" (Document # 20).
Defendant contend that Plaintiff's claim should be
dismissed for failure to state a claim pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Proced-
ure.

For the foregoing reasons, Defendant's Motion to
Dismiss is GRANTED.

### I. BACKGROUND

Since at least 2005, Defendant Sprint Solutions,
Inc. ("Sprint") has offered a series of contractual
national rate plans known collectively as the
"Sprint PCS Fair and Flexible Plans."Plaintiff Myra
Johnson ("Johnson") contracted with Defendant for
this plan in March, 2005 (the "Contract"). The Con-
tract consists of i) the Sprint PCS Service Plans
Guide (including the Sprint PCS Coverage Guide),
ii) Sprint's most recent Terms and Conditions, iii)
the PCS Advantage Agreement in the form of a
cash register receipt provided to customers at the
point of sale, and iv) any other printed materials
made available to the customer at Sprint's store.

Within the Sprint PCS Coverage Guide, Sprint
provides national and regional maps that divide the
United States into five geographic categories. These
categories demonstrate the areas where Sprint may
charge customers, using the Fair and Flexible Plan,
roaming fees and where it may not. Two categories,
the "Sprint Nationwide PCS Network" and
"Additional Sprint PCS Service" (collectively the
"Home Area"), reflect the area where a customer
may make or receive telephone calls without incur-
ring roaming charges. In Johnson's complaint Two
other categories, "off-Network Digital Roaming"
and "Off-Network Analog Roaming," reflect the
areas where Sprint may charge roaming fees for
calls made or received. Finally, the "No Service
Available" category indicates where a customer
could not make or receive calls at all. The Coverage
Guide goes on to state that maps "show approxim-
ate service areas" of coverage and coverage "isn't
available everywhere and may not be available in
all areas shown on these maps."

Johnson alleges that Sprint breached the Contract
with Johnson when Sprint was unable to determine
a customer's physical location when calls were
made or received, yet still charged plan holders for
roaming fees. Johnson alleges that she was assessed
roaming charges for telephone calls purportedly

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



EXHIBIT
2

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 2949253 (W.D.N.C.)
(Cite as: 2008 WL 2949253 (W.D.N.C.))

Page 2

made or received both inside and outside of the "Home Area," which she paid. These allegations are supported by invoice exhibits filed in support of Johnson's complaint.

Sprint alleges that Johnson had full knowledge of the fact that she was being charged roaming fees for calls made within her "Home Area."

## II. DISCUSSION

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face," *id.* at 1974.But "allegations must be stated in terms that are neither vague nor conclusory." *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 220-221 (4th Cir.1994).

### A. Voluntary Payment Doctrine

*2 The North Carolina court system continues to recognize that "voluntary payment of money by a person who has full knowledge of all the facts cannot be recovered." *Guerry v. American Trust Co.,* 68 S.E.2d 272, 274 (N.C.1951); *see also Collins v. Covert,* 98 S.E.2d 26, 29 (N.C.1957) (finding the viability of the voluntary payment doctrine); *Shelton v. Duke Univ. Health Sys., Inc.,* 2005 WL 6013159 at *5 (N.C.Sup.Ct.2005) (granting motion to dismiss while acknowledging the voluntary payment doctrine). While the use of the voluntary pay-

ment doctrine may be regarded as an affirmative defense, "a motion under Rule 12(b)(6) should ... be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint." *Hobbs v. Schneider Nat'l Carriers, Inc.,* 793 F.Supp. 660, 662 (W.D.N.C.1992).

While the Court must accept as true all well pleaded allegations, any perceived conflict "between bare allegations of the complaint and any exhibit attached [to the complaint] ... the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir.1991). If a payment is made in ignorance or mistake of fact where the means of knowledge or information is in reach of the paying party but the party neglects to obtain it, there can be no recovery. *Brummit v. McGuire,* 12 S.E. 191, 193 (N.C.1890).

Here, Johnson acknowledges she received and "paid" invoices where she was "assessed roaming charges for telephone calls purportedly made or received both inside and outside the Home Area."The issue before the Court is whether Johnson had "full knowledge" of the roaming charge calculations when she voluntarily paid the invoices.

Johnson alleges that Sprint misrepresented their system for calculating roaming charges. Specifically, Johnson asserts that Sprint, through its Coverage Guide, "represented that roaming charges were a geographic function based upon the customers' physical locations at the time calls were made or received" and "represented to customers that it had the ability to determine the customer's geographic location" while "conceal[ing] its total inability to determine the location of subscribers for billing purposes."However, exhibits offered in support of Johnson's complaint demonstrate the explicit lack of "geographic" language. The Terms and Conditions of the Sprint Contract specifically state, "You are roaming anytime your phone indicates that you are roaming ... Depending on your phone settings, you may automatically roam if there is a gap or in-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 2949253 (W.D.N.C.)
**(Cite as: 2008 WL 2949253 (W.D.N.C.))**

Page 3

terruption in coverage within the Sprint Nationwide PCS Network coverage area and roaming coverage areas."Furthermore, the Coverage Guide states that the coverage maps listed in the Guide:

show approximate service areas for outdoor coverage. They're based on computer generated radio-frequency projections and information from third parties but don't guarantee service availability. Actual coverage and the quality and availability of coverage can vary according to network problems, signal strength, your equipment, terrain, structures, weather and other limitations or conditions. Coverage isn't available everywhere and may not be available in all areas shown on these maps.

*3 Compl. Ex. B at 1. Finally, invoices submitted in support of Johnson's complaint contains a specific section entitled "Roaming While in Charlotte." Under Johnson's reading of the coverage maps, Charlotte is an area wholly within the "Home Area" and allegedly exempt from roaming charges.

Johnson was provided with the Terms and Conditions of the Contract, the Coverage Guide and the Service Plan Guide at or before entering into the phone contract with Sprint. Each of these exhibits explicitly states that Sprint has a digital network that can only approximate the coverage and roaming areas. In addition, monthly invoices sent to Johnson provide a detailed record of the roaming charges. One section of the invoice is specifically devoted to roaming charges on calls made while in Charlotte, N.C. Charlotte was a coverage area that Johnson knew to be wholly within the "Home Area." Regardless of Johnson's knowledge of Sprint's coverage network when signing the Contract, she became fully informed of the roaming charges when she received an invoice with Charlotte roaming charges and paid it. By continuing to pay the invoices despite the knowledge that she was being charged for roaming calls that she did not think were correct, Johnson subjects herself to the

voluntary payment doctrine.

The Complaint, on its face, along with the exhibits filed in support of the Complaint give rise to Sprint's claim of voluntary payment. Johnson had the opportunity to review Sprint's information in order to fully comprehend the roaming charges she was contracting to pay.

**B. Negligent Misrepresentation**

In order to state a viable claim in tort for conduct that is alleged to breach a contract, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.,* 994 F.Supp. 350, 362 (W.D.N.C.1997). This "independent duty" exception has been "carefully circumscribed by state law." *Strum v. Exxon Co., USA,* 15 F.3d 327, 331 (4th Cir.1994). The independent tort must be identifiable and "the tortious conduct must have an aggravating element such as malice or recklessness." *Strum,* 15 F.3d at 331.

The economic loss doctrine stands for the general rule that "ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *Carolina Ports Authority v. Lloyd A. Fry Roofing, Co.,* 294 N.C. 73, 81 (1978). The Fourth Circuit clarified the application of the economic loss doctrine in *Broussard v. Meineke Discount Muffler Shops, Inc.* 155 F.3d 331 (4th Cir.1998). There, the court applied the economic loss doctrine to claims of negligence arising out of the performance of a contract, restricting claims of negligence to the type of distinct circumstances necessary to allege an independent tort. *Broussard,* 155 F.3d at 347.

The case at hand is similar to two other cases decided in this district. In *Mecklenburg Cnty. v. Nortel Gov't Solutions, Inc.,* the plaintiff brought claims of breach of contract, unfair and deceptive trade practices, and negligent misrepresentation

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 2949253 (W.D.N.C.)
**(Cite as: 2008 WL 2949253 (W.D.N.C.))**

Page 4

against the defendant. 2008 WL 906319 at *4 (W.D.N.C.2008). The plaintiff alleges the defendant misrepresented the delivery, completion of acceptance testing, implementation and go-live dates for defendant's complete product. *Mecklenburg Cnty.,* 2008 WL 906319 at *5. This Court found the statements by the defendant, addressing the level of preparation and functional readiness of their product, directly related to the defendant's performance of the contract. *Id.* These statements are at the heart of plaintiff's contractual claim. *Id.* This Court held that the claims of negligent misrepresentation and unfair trade practices fail to sufficiently allege identifiable and distinct facts, apart from the breach of contract claims, to overcome the North Carolina economic loss doctrine. *Id.* at *4.

*4 In *US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.,* the plaintiff filed a claim for breach of contract and the defendant filed counterclaims of fraud and negligent misrepresentation. 2006 WL 1367383 (W.D.N.C.2006). Plaintiff and defendant entered into an agreement where the defendant would not charge the plaintiff for wireless-originated toll free calls. *US LEC Commc'ns, Inc.,* 2006 WL 1367383 at *2. The defendant claims that plaintiff's invoices did not identify the charges as charges for wireless-originated toll free calls but instead described the charges as though they were from landline callers. *Id.* The defendant alleges that it was deceived into paying charges that were not owed. *Id.* This Court found no allegation in defendant's claim that creates a separate and independent duty owed by plaintiffs outside the contractual relationship. *Id.* This Court held that defendant's fraud and negligent misrepresentation claims were premised on the same facts as its breach of contract claims, defendant's violation of an agreement not to charge plaintiff for wireless-originated toll free calls. *Id.* This Court dismissed the defendant's counterclaim for failure to allege an independent duty. *Id.*

Here, like the defendant in *US LEC Commc'ns, Inc.,* Johnson bases her claim of negligent misrepresent-

ation on Sprint's alleged assurances not to charge for certain roaming charges when entering into a contract. In Johnson's breach of contract and negligent misrepresentation claims, she alleges that Sprint stated that roaming charges would be based on Johnson's geographic location when making and receiving calls. Johnson uses these same set of alleged facts to support her claim of negligent representation and identifies no independent duty Sprint owed to her. However, like the plaintiff in *Mecklenburg Cnty.,* Johnson fails to present any identifiable and distinct fact, wholly separate from her breach of contract claim, to overcome the North Carolina economic loss doctrine.

**C. Unjust Enrichment**

Unjust enrichment is an equitable claim in which the court implies a quasi-contract in the absence of an actual agreement between the parties and permits a plaintiff to bring an action in restitution to recover the amount of the benefit conferred on the defendant. *Booe v. Shadrick,* 369 S.E.2d 554, 555-56. If there is a contract between the parties, the contract governs the claim and the law will not imply a contract. *Booe,* 369 S.E.2d at 556.

Here, Johnson admits that there is a contract between herself and Sprint in the Complaint (Compl.¶ 61). Given the existence of an actual contract, this Court will refuse to recognize the existence of a quasi-contract.

For these reasons, Defendant's Motion to Dismiss the all of Plaintiff's claims is hereby GRANTED.

IT IS SO ORDERED.

W.D.N.C.,2008.
Johnson v. Sprint Solutions, Inc.
Not Reported in F.Supp.2d, 2008 WL 2949253 (W.D.N.C.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 4233317 (W.D.N.C.)
(Cite as: 2007 WL 4233317 (W.D.N.C.))

C
Only the Westlaw citation is currently available.

United States District Court, W.D. North Carolina,
Charlotte Division.
FIREMAN'S FUND INSURANCE COMPANY,
Plaintiff,
v.
SAFECO INSURANCE COMPANY OF AMER-
ICA and Hartford Fire Insurance Company, De-
fendants.
**No. 3:07-CV-86.**

Nov. 28, 2007.

Richard Horace Conner, III, Robert H. Pryor,
Stephen David Allred, Helms, Mulliss & Wicker,
PLLC, Charlotte, NC, for Plaintiff.

Garland Stuart Cassada, Scott William Gaylord,
Robinson, Bradshaw & Hinson, P.A., Charlotte,
NC, Allen Holt Gwyn, Conner, Gwyn, Schenck
PLLC, Greensboro, NC, for Defendants.

**ORDER**

GRAHAM C. MULLEN, District Judge.

**\*1 THIS MATTER** is before the Court upon De-
fendant Safeco's Motion to Dismiss (Document 23)
and Defendant Hartford's Motion to Dismiss
(Document 27). For the reasons set forth below, Sa-
feco's motion is GRANTED and Hartford's motion
is GRANTED. Because Safeco and Hartford
(together, "Defendants") advance the same argu-
ments, this Court will address the two motions to
dismiss simultaneously.

**I. Background**

Plaintiff Fireman's Fund Insurance Company

("FFIC") filed the present unjust enrichment and re-
servation of rights actions against Defendants Sa-
feco Insurance Company of America ("Safeco")
and Hartford Fire Insurance Company ("Hartford").
FFIC is a property and casualty insurance and
surety company, headquartered in California. Sa-
feco is a property and casualty insurance and surety
company, headquartered in Washington. Hartford is
a marine, property and casualty insurance and
surety company, headquartered in Connecticut. All
three companies are licensed to do business in
North Carolina. Each company issued payment and
performance bonds for several construction projects
that were contracted by J.A. Jones Construction
Company ("Jones") and Rea Construction Com-
pany ("Rea"). Although each company bonded with
Jones and Rea, Safeco and Hartford's bonded some
Jones and Rea projects 100%, and thus, FFIC did
not provide a bond for these projects. Compl. ¶¶
8-11.

Jones and Rea filed for bankruptcy on September
25, 2003. In response, FFIC "took remedial steps to
mitigate damages arising from these prob-
lems."Compl. ¶ 11. As FFIC asserts: "This was an
enormous task executed by FFIC under urgent con-
ditions, requiring [FFIC] to fund direct project costs
and corporate overhead related to virtually all bon-
ded Jones ... and Rea projects."Compl. ¶ 14. FFIC's
support covered Jones and Rea's production and op-
erating costs. Without this funding, FFIC maintains
that Jones and Rea "could not have maintained op-
erations ... resulting in defaults, damages and other
surety exposure for Safeco, Hartford and FFIC."Id.

FFIC's support, however, was not limited solely to
its own construction projects. Instead, because
Jones and Rea could not distinguish their costs
between Safeco, Hartford and FFIC bonded
projects, FFIC's support benefitted Safeco and
Hartford projects as well. Due to "the exigencies of
the circumstances-with [Jones and Rea] precipit-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



EXHIBIT
3

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 4233317 (W.D.N.C.)
**(Cite as: 2007 WL 4233317 (W.D.N.C.))**

ously headed for bankruptcy and in danger of defaulting on substantial projects," FFIC did not obtain a reimbursement agreement from Safeco and Hartford. FFIC's funding continued from April 2003 through October 2003. Since that time, despite FFIC's requests, Safeco and Hartford have repaid only a small portion of the $2,403,574.00 in reimbursement FFIC claims it is owed.

On February 20, 2007, FFIC filed the present unjust enrichment and reservation of rights claims. In May 2007, Safeco and Hartford separately moved to dismiss FFIC's Complaint under Fed.R.Civ.P. 12(b)(6) on three grounds: (1) FFIC has failed to plead elements necessary to establish a prima facie case of unjust enrichment; (2) FFIC's unjust enrichment claim is barred by a three-year statute of limitations; and (3) the reservation of rights claim is not a cognizable action.

## II. Discussion

*2 In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355U.S. 41, 47 (1957)). Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

## A. FFIC Does Not Presents a Credible Unjust Enrichment Claim

This Court will begin with the elements of the unjust enrichment claim. Accepting FFIC's complaint

as true, and drawing all reasonable inferences in favor of FFIC, this Court finds that FFIC fails to present a credible claim for unjust enrichment against either Hartford or Safeco.

To prevail on a claim of unjust enrichment, FFIC must demonstrate that (1) it conferred a benefit on Hartford, (2) the benefit was not conferred gratuitously or officiously, "that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances," (3) the benefit was measurable, and (4) Defendants consciously accepted the benefit. *Booe v. Shadrick,* 369 S.E.2d 554, 556 (N.C.Sup.Ct.1988).

First, this Court finds that FFIC conferred a benefit on Hartford. As set forth in FFIC's complaint, Hartford benefitted from FFIC's support of Jones and Rea because neither company defaulted on their projects, thus saving Hartford from its bond. This benefit satisfies the North Carolina standard which analyzes benefit conferral "without regard to the directness of the transaction." *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.,* 72 Fed. Appx. 916, 921 (4th Cir.2003). Indeed, Hartford does *not dispute that it benefitted* from FFIC's actions. Thus, this element is not issue.

Under the second element of the analysis, this Court finds that FFIC's actions were officious. If a party induces or solicits another party to confer some sort of benefit, the second party's behavior is non-officious. Here, FFIC fails to allege that either Defendant acted to induce or solicit FFIC's actions. Absent such inducement or solicitation, Defendants are simply not liable for unjust enrichment, even if they did benefit from FFIC's actions. "Where a person has officiously conferred a benefit upon another, the other is enriched, but is not considered to be unjustly enriched ." *Wright v. Wright,* 289 S.E.2d 347, 351 (1982)(quoting *Rhyne v. Sheppard,* 32 S.E.2d 316, 318 (1944). The Court understands that FFIC acted to protect its own business interests, but

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 4233317 (W.D.N.C.)
**(Cite as: 2007 WL 4233317 (W.D.N.C.))**

to the extent that FFIC's choice to protect its business impacted Hartford and Safeco, this Court finds FFIC's conduct to be officious.

\*3 Finding FFIC's behavior to be officious vitiates the need for analysis of the remaining two terms. Even if the benefit conferred onto Defendants is measurable, FFIC simply asserts no allegations that would support a claim that the benefit received by the Defendants is unjust. As explained above, this Court recognizes that Defendants received a benefit from FFIC, but without inducement or solicitation, that benefit is not unjust enrichment.

As for conscious acceptance of a benefit, the Court declines to analyze this element because it has no bearing on the Court's conclusion. Whether or not Defendants consciously accepted a benefit from FFIC, the benefit is not unjust enrichment.

**B. Statute of Limitations Does Not Matter Given the Plaintiff's Failure to Present a Prima Facie Case of Unjust Enrichment**

Since neither Defendant was unjustly enriched by FFIC, the Court will not enter into a discussion of the applicable statute of limitations. Even if the Court found that FFIC's claim was not barred by a statute of limitations, its claim of unjust enrichment is not valid.

**C. FFIC Does Not Present a Credible Reservation of Rights Claim.**

FFIC also alleges a claim against the defendants entitled "reservations of rights claim." "A complaint may be dismissed on motion filed under Rule 12(b)(6) if it is clearly without merit; such lack of merit may consist of an absence of law to support a claim of the sort made, absence of fact sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim." *Forbis v. Honeycutt*, 273 S.E.2d 240, 241 (N.C.1980). Here,

FFIC's claim for relief entitled "reservation of rights" fails to state a viable claim against-and does not ask for relief from-Safeco or Hartford. Further, North Carolina does not recognize a "reservation of rights" cause of action. This claim will therefore be dismissed.

IT IS THEREFORE ORDERED that Defendant Safeco's Motion to Dismiss is GRANTED and Defendant Hartford's Motion to Dismiss is GRANTED.

W.D.N.C.,2007.
Fireman's Fund Ins. Co. v. Safeco Ins. Co. of America
Not Reported in F.Supp.2d, 2007 WL 4233317 (W.D.N.C.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680
**(Cite as: 1998 WL 1107771 (E.D.N.C.))**

H

United States District Court, E.D. North Carolina.
TERRY'S FLOOR FASHIONS, INC. Plaintiff,
v.
GEORGIA-PACIFIC CORPORATION, Defendant.
**No. 5:97-CV-683-BR(2).**

July 23, 1998.

Walter L. Tippett, Jr., Ragsdale, Liggett & Foley,
Raleigh, NC, for Terry's Floor Fashions, Inc.,
plaintiff.

A. Todd Brown, Hunton & Williams, Raleigh, NC,
for Georgia-Pacific Corporation, defendant.

*ORDER*

BRITT, Senior J.

*1 Defendant Georgia-Pacific's motion to dismiss
plaintiff's original and amended complaints is be-
fore the Court.

On 31 July 1997, plaintiff filed a complaint in
North Carolina state court to recover damages al-
legedly caused by defective plywood underlayment
that it purchased from defendant. Defendant re-
moved the action to federal court on 27 August
1997 and, on 24 September 1997, moved to dismiss
plaintiff's original complaint for failure to state a
claim upon which relief could be granted. On 1 Oc-
tober 1997, plaintiff filed an amended complaint
pursuant to Fed.R.Civ.P. 15(a), and on 20 October
1997, defendant submitted a motion to dismiss both
plaintiff's original complaint and amended com-
plaint pursuant to Fed . R.Civ.P. 12(b)(6) and a
memorandum of law in support of that motion. On
12 November 1997, plaintiff filed an opposition to
defendant's motion, and on 20 November 1997, de-
fendant filed a reply. The issues have been fully

briefed by both parties and are now ripe for review.

I. FACTS[FN1]

FN1. Because plaintiff is entitled, as non-
movant, to have its version of all that is in
dispute accepted for purposes of summary
judgment, the following recitation of the
facts assumes the truth of the facts as
presented by plaintiff.

Plaintiff Terry's Floor Fashions, Inc. (Terry's Floor)
sells and installs vinyl flooring for residential and
commercial use. When installed, the vinyl flooring
is attached to a subflooring of plywood underlay-
ment. Defendant Georgia-Pacific manufactures and
sells plywood underlayment. Before July 1993,
Terry's Floor purchased plywood underlayment
from Georgia-Pacific for use as subflooring on sev-
eral occasions, and, before July 1993, plaintiff was
satisfied with the product provided to it by defend-
ant.

On or about 12 July 1993, 25 August 1993, 1
November 1993, 10 January 1994, and 2 February
1994, Terry's Floor purchased from Georgia-Pacific
a total of 10,229 square yards of plywood underlay-
ment. Before contracting with Georgia-Pacific,
Terry's Floor inquired whether the plywood under-
layment would conform to its needs, specifically,
whether the underlayment would cause discolora-
tion of vinyl flooring. Plaintiff was informed that
the underlayment would meet plaintiff's needs and
that it would not cause discoloration. Terry's Floor
alleges in its amended complaint that it relied upon
defendant's representations that the underlayment
would not cause discoloration in deciding to pur-
chase and install the product. Terry's Floor pro-
ceeded to install the underlayment purchased from
defendant.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



EXHIBIT
4

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680
**(Cite as: 1998 WL 1107771 (E.D.N.C.))**

Page 2

In March 1996, Terry's Floor discovered that the underlayment was nonconforming in that it had caused discoloration of the vinyl flooring plaintiff had installed for various customers. Sometime after March 1996, Terry's Floor notified Georgia-Pacific of the alleged defective nature of the product, but defendant allegedly refused to engage in settlement discussions. In response to customers' complaints about discoloration of their vinyl flooring, plaintiff has replaced and repaired both the plywood underlayment and the vinyl flooring attached to it.

Plaintiff claims that defendant knew or should have known that the plywood underlayment would cause discoloration of vinyl flooring (Amended Compl. ¶ 16); that defendant negligently designed, manufactured, inspected and assembled the product (Amended Compl. ¶ 27); that defendant breached both implied and express warranties of merchantability and fitness for a particular purpose (Amended Compl. ¶ 35 and ¶ 46); that defendant breached its contract with plaintiff because the product was defective (Amended Compl. ¶ 50); that defendant should indemnify plaintiff for all expenses and damages associated with defendant's defective product (Amended Compl. ¶¶ 9-11); and that defendant deliberately misrepresented the traits and qualities of the underlayment and engaged in bad faith negotiation of the contract between the parties. (Amended Compl. ¶ 58) Plaintiff seeks recovery from defendant for the losses that it has incurred to date as well as protection from damages that it will incur in the future.

## II. LEGAL STANDARD APPLICABLE TO RULE 12(B)(6) MOTIONS TO DISMISS

**\*2** Defendant Georgia-Pacific has filed a motion to dismiss plaintiff's complaint and amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). Because the original complaint is deemed superseded by the amended complaint, the court will treat defendant's motion as one to dismiss only plaintiff's amended

complaint. *See* 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1476, pp. 556-558 (1990). For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true. As stated by the Supreme Court in *Conley v. Gibson,* 355 U.S. 41 (1957):

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Id.* at 45-46."[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4 th Cir.1989).

## III. BREACH OF EXPRESS AND IMPLIED WARRANTIES

In Counts II and III of its amended complaint, plaintiff alleges that defendant breached both express and implied warranties with respect to the underlayment it sold to plaintiff. While Counts II and III of plaintiff's original complaint may have been technically deficient because plaintiff failed to allege reasonable notice to defendant as required by N.C. Gen.Stat. § 25-2-607(3), plaintiff has cured any deficiency by properly pleading the breach of express and implied warranty claims in the amended complaint, and an amended complaint filed as of right pursuant to Fed.R.Civ.P. 15(a) effectively supersedes an original complaint. Defendant's motion to dismiss Counts II and III of plaintiff's amended complaint will be denied.

## IV. REIMBURSEMENT OF UNNECESSARY LEGAL EXPENSES

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                      Page 3
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680
**(Cite as: 1998 WL 1107771 (E.D.N.C.))**

Defendant argues that plaintiff's original complaint contained several claims that were technically deficient and that plaintiff should be required to reimburse defendant for the costs of defending against such claims before plaintiff is permitted to proceed with the claims set forth in its amended complaint. Federal Rule of Civil Procedure 11 requires that the allegations in a pleading be well-grounded in fact and that the claims and other legal contentions are warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. Fed.R.Civ.P. 11(b)(2) and (3); *seealso,*N.C. Gen.Stat. 1A-1, Rule 11. Plaintiff's claims against defendant are each based, in some respect, on defendant's alleged breach of its contract with plaintiff or conduct pertaining to that commercial relationship and, as such, are warranted by existing law. This court agrees with plaintiff that defendant's primary complaint on this issue is that plaintiff's claims were inartfully pled. After receiving defendant's motion to dismiss its original complaint, plaintiff availed itself of its right, under Federal Rule of Civil Procedure 15(a), to amend its complaint as a matter of course. There is no sound legal basis for defendant's request for expenses, attorney's fees and costs in this matter, and, as such, that portion of defendant's motion will be denied.

## V. NEGLIGENCE

*3 In its complaint, plaintiff alleges that defendant negligently designed, manufactured, inspected and assembled the plywood underlayment it sold to plaintiff. (Amended Compl. ¶ 27) Plaintiff seeks in excess of $10,000 in damages for defendant's negligent actions. (*Id.* at ¶ 28) Defendant argues that plaintiff has alleged only economic losses and that, under North Carolina law, a plaintiff may not recover for purely economic losses in tort.

Economic loss "is essentially 'the loss of the benefit of the user's bargain.' ...'[T]he distinguishing central feature of economic loss is ... its relation to

what the product was supposed to accomplish." ' *AT & T Corp. v. Medical Review of North Carolina, Inc.,* 876 F.Supp. 91, 94 (E.D.N.C.1995) (citations omitted). "When a product fails to perform as intended, economic loss results ." *Id.*

The economic loss rule prohibits the purchaser of a defective product from bringing a tort action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected. *See East River S.S. Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 871 (1986) (discussing economic loss rule in admiralty context and holding that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself"); *Saratoga Fishing Co. v. J.M. Martinac & Co.,* 520 U.S. 875, 117 S.Ct. 1783 (1997) (construing *East River* as holding that an admiralty tort plaintiff cannot recover for damage a defective product causes to the product itself, but can recover for damage the product causes to "other property").

North Carolina has adopted the economic loss rule. *Chicopee, Inc. v. Sims Metal Works, Inc.,* 98 N.C.App. 423, 432, 391 S.E.2d 211, 217 (1990) (adopting rule that "purely economic losses are not ordinarily recoverable under tort law" in context of products liability suit); see also *AT & T Corp.,* 876 F.Supp. at 91 (noting that, with respect to losses recoverable in product liability suits, North Carolina follows the majority rule and does not allow recovery of purely economic losses in negligence actions); and *Ports Auth. v. Roofing Co.,* 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978) ("Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor."), *rejectedinpartonothergrounds, Trustees of Rowan Tech. College v. J. Hyatt Hammond Assoc., Inc.,* 313 N.C. 230, 328 S.E.2d 274 (1985). In *Spillman v. American Homes,* 108 N.C.App. 63, 65, 422 S.E.2d 740, 741-42 (1992), the North Carolina Court of Appeals wrote:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680
**(Cite as: 1998 WL 1107771 (E.D.N.C.))**

a tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation.

*4 All of these cases support the general rule that when a plaintiff seeks recovery for damage to a product that is the subject of the contract between the parties, a plaintiff is limited to a contract or warranty action.

The reasoning behind the economic loss rule rests on risk allocation.

Contract law permits the parties to negotiate the allocation of risk. Even where the law acts to assign risk through implied warranties, it can easily be shifted by the use of disclaimers. No such freedom is available under tort law. Once assigned, the risk cannot be easily disclaimed. This lack of freedom seems harsh in the context of a commercial transaction, and thus the majority of courts have required that there be injury to a person or property before imposing tort liability.

*2000 Watermark Ass'n, Inc. v. Celotex Corp.,* 784 F.2d 1183, 1185-86 (4 th Cir.1986); see also *Chicopee,* 98 N.C.App. at 432 (adopting *2000 Watermark* rule).

The nature of plaintiff's loss in this case is central to the viability of plaintiff's negligence claim. Defendant claims that plaintiff has suffered only economic loss. Plaintiff claims that the plywood underlayment that it purchased from defendant and installed for various clients caused the discoloration of the vinyl flooring it manufactured, marketed, sold and installed. To the extent plaintiff's negligence claim pertains to the negligent design, manu-

facture, inspection, and assembly of the plywood underlayment it purchased from defendant, and to the resulting defective nature of and/or damage to that product, plaintiff's negligence claim is precluded by the application of the economic loss rule.

Plaintiff also seeks to recover in tort for damage to the vinyl flooring it installed above the underlayment, however. The vinyl flooring sold by plaintiff is property, and, according to plaintiff, it was damaged and discolored as a direct result of installation above defendant's product. Plaintiff states that vinyl flooring is an expensive product and that it had to be replaced for several of plaintiff's customers as a result of the defect in the product supplied by defendant. Plaintiff argues that the vinyl flooring constitutes "other property" for purposes of the economic loss rule, and that, consequently, plaintiff should be permitted to proceed with its negligence action.

Typically, in a tort action, a plaintiff may recover damages resulting from physical injury or actual damage to property. North Carolina law permits a party to a contract to sue in tort in very limited circumstances.

Generally, a breach of contract does not give rise to damages based on a negligence method of recovery even where the breach "was due to negligence".... Such damages are appropriate for a breach of contract in four situations. A promisee may sue a promisor for the negligent performance of a contract where injury ... (2) occurs "to property of the promisee other than the property which was the subject of the contract...."

*5 *Mason v. Yontz,* 102 N.C.App. 817, 818, 403 S.E.2d 536, 538 (1991) (quoting *Ports Auth.,* 294 N.C. at 81);*seealso Reece v. Homette Corp.,* 110 N.C.App. 462, 429 S.E.2d 768 (1993) (holding that the U.C.C. governed plaintiff's claim but noting that "[that] claim [was] substantially different from a factual situation where the manufactured product

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680
(Cite as: 1998 WL 1107771 (E.D.N.C.))

Page 5

causes physical injury to a person or property other than the manufactured property itself.").

While this court accepts plaintiff's assertion that vinyl flooring is property separate and distinct from the plywood underlayment that formed the basis of the contract between the parties,[FN2] it appears from the plaintiff's complaint that the damaged vinyl flooring is not plaintiff's property but rather, the property of plaintiff's customers. Pursuant to the exception to the economic loss rule set out in *Ports Authority* and reiterated in *Mason*, a plaintiff may seek damages in a negligence action only if the damage was to "property *of the promisee* other than the property that was the subject of the contract." *Ports Authority*, 294 N.C. at 81 (emphasis added). Because plaintiff has not made factual allegations that bring its claim within the scope of the *Ports Authority* exception, its negligence claim is surplussage and will be dismissed pursuant to the economic loss rule. *See Warfield v. Hicks,* 91 N.C.App. 1, 9-10, 370 S.E.2d 689, 694,*review denied,* 323 N.C. 629, 374 S.E.2d 602 (1988).

> FN2. This court explicitly rejects defendant's argument based on *2000 Watermark* because, as plaintiff explains in its opposition, that case is factually distinguishable from this case.

## VI. BREACH OF CONTRACT

In Count IV of its amended complaint, plaintiff has alleged breach of contract. Defendant argues that plaintiff is precluded from bringing a breach of contract action because the contract for the sale of goods comes within the parameters of the Uniform Commercial Code (UCC), and that the UCC, as adopted by North Carolina, provides plaintiff's exclusive remedy.

In its amended complaint, plaintiff states that the transactions at issue were either (1) contracts for the sale of goods pursuant to N.C. Gen.Stat. §

25-2-204, or (2) part of a single contract for the sale of goods involving repeated occasions for performance with payment on an open account. (Compl. at ¶ 10) In response to defendant's motion to dismiss, plaintiff argues that it "has alternatively pled that the concerned sales were either contracts for the sale of goods pursuant to the UCC or common law contracts" and "[a]s such, [plaintiff's] claim for breach of a common law contract must stand."(Pl. Opp. at 13)

This court holds that the UCC applies to plaintiff's claims against defendant as a matter of law. The contract between the parties was one for the sale of goods and is covered by N.C.G.S. § 25-2-204. *SeeReece,* 110 N.C. at 466, 429 S.E.2d at 770 (holding that Article 2 of Chapter 25, the U.C.C., applies to transactions in goods and determines the rights of the parties); *Alberti v. Manufactured Homes, Inc.,* 329 N.C. 727, 732, 407 S.E.2d 819, 822 (1991); *Boudreau v. Baughman,* 322 N.C. 331, 336, 368 S.E.2d 849 (1988) ("Actions for breach of implied warranty are now governed by the Uniform Commercial Code, adopted in North Carolina in 1965 as chapter 25 of the General Statutes.").

*6 Remedies for the breach of express and implied warranties of the sale of goods are provided by N.C.G.S. §§ 25-2-713, 25-2-714 and 25-2-715. *See First Georgia Bank v. Webster,* 168 Ga.App. 307, 308, 308 S.E.2d 579, 581 (1983)("where the Code provides a comprehensive remedy for parties to a transaction, a common law action would be barred"). According to § 25-2-714, the measure of the buyer's damages in regard to accepted goods is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."Any incidental and consequential damages may also be recovered under § 25-2-715. Consequential damages specifically include "injury to person or property proximately resulting from any breach of warranty."§

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680
**(Cite as: 1998 WL 1107771 (E.D.N.C.))**

Page 6

25-2-715(2)(b). Because N .C. Gen.Stat. § 25-1-103 provides that the principles of law and equity survive only to the extent that they are not displaced by particular provisions of the Code and because the U.C.C. does provide specific remedies for defendant's alleged breach of warranties, the provisions of the U.C.C. govern. Therefore, plaintiff's breach of contract claim will be dismissed.

## VII. INDEMNITY

Plaintiff has, at its own expense, repaired and replaced vinyl flooring and defective underlayment in response to complaints from its customers. In its amended complaint, plaintiff has requested that defendant indemnify plaintiff against all damages arising from past and future claims resulting from plaintiff's use and installation of the underlayment. The amended complaint suggests that dissatisfied customers have merely complained to the store about the discoloration of their vinyl flooring; plaintiff does not allege that any of its customers has filed a legal action against plaintiff.

"[A] right to indemnity exists whenever one party is exposed to liability by the action of another who, in law or equity, should make good the loss of the other." *McDonald v. Scarboro,* 91 N.C.App. 13, 22, 370 S.E.2d 680, 686,review denied, 323 N.C. 476, 373 S .E.2d 864 (1988); see also, *Cox v. Shaw,* 263 N.C. 361, 139 S.E.2d 676 (1965); 41 Am.Jur.2d § 2, Bases for Indemnity, at 348. In an indemnity contract or in an indemnity clause within a contract, one party "engage[s] to make good and save another harmless from loss on some obligation which he has incurred or is about to incur to a third party." *New Amsterdam Cas. Co. v. Waller,* 233 N.C. 536, 64 S.E.2d 826 (1951). A party's right to indemnity may be based on one of the following: 1) an express contract; 2) a contract implied-in-fact; or 3) equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied-in-law.

Plaintiff has not asserted the existence of an express indemnification clause in its contracts with defendant. Nor has plaintiff made any allegations that defendant expressly agreed either orally or in writing to indemnify plaintiff for claims that might be brought against plaintiff by plaintiff's customers, or that the parties intended the defendant to be responsible for losses attributable to plaintiff's use of the product. Plaintiff argues, however, that the doctrine of implied contractual indemnity supports its claim.

*7 Because plaintiff seeks indemnity based on implied contract theory, among others, a short description of North Carolina's law regarding implied contractual indemnity is in order. North Carolina cases discuss both implied-in-fact and implied-in-law contractual indemnity. Contractual indemnity that is implied-in-fact suggests the existence of a binding contract between two parties that fairly implies the right to indemnity. In such a situation, the right to indemnity arises from the relationship between the parties and the circumstances of the parties' conduct, and the essence of such a claim is the intent of the parties to create an indemnitor/indemnitee relationship. In *McDonald v. Scarboro,* for example, the North Carolina Court of Appeals held that defendant Scarboro had submitted sufficient evidence to establish the existence of an implied-in-fact contract for indemnity with respect to attorney's fees by eliciting testimony that another defendant had orally agreed to provide him with an attorney in the event he was sued by plaintiff for breach of contract.

Other North Carolina courts, however, discuss contractual indemnity implied-in-law: those cases explain that the terminology "implied contract" is actually a legal fiction used to describe a type of tort liability among defendants:

The old-time judges said that the duty imposed by law upon the actively negligent tort-feasor to reimburse the passively negligent tort-feasor for the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680

**(Cite as: 1998 WL 1107771 (E.D.N.C.))**

Page 7

damages paid by him to the victim of their joint tort was based on an implied contract, meaning a contract implied in law from the circumstance that the passively negligent tort-feasor had discharged an obligation for which the actively negligent tort-feasor was primarily liable. And this is all the courts mean today when they declare that the right of the passively negligent tort-feasor to indemnity from the actively negligent tort-feasor rests upon an implied contract. There is, of course, in such case no contract implied in fact. This is necessarily so because contracts implied in fact are true contracts based on consent.

*Hunsucker v. High Point Bending & Chair Co.,* 237 N.C. 559, 563-64, 75 S.E.2d 768, 771 (1953).

Likewise, in *Cox,* the North Carolina Supreme Court explained the use of the term "implied contract" in the context of indemnification:

Enforceable in assumpsit, a contract implied in law [which is the basis for the doctrine of primary-secondary liability] is a quasi contract, which may result either from a tortious wrong ... or from one that is contractual. 'A quasi-contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.... (I)t would be better not to use the word 'contract' at all.'

*Cox,* 263 N.C. at 367. (Citations omitted). Whether plaintiff asserts a right to indemnity based on a contract implied-in-law or implied-in-fact, the result is the same: plaintiff has not stated a claim upon which relief can be granted.

A. *Tort Theory: A Contract Implied-in-Law*

*8 Because plaintiff has not stated a cognizable negligence claim against defendant, plaintiff's indemnity claim, to the extent that it is premised upon defendant's liability in tort, must be dismissed.

Moreover, because plaintiff has not been sued in tort and has not been held liable in tort, plaintiff cannot look to defendant at this stage of the proceedings for indemnification. Actions for indemnification are generally brought by means of a third-party complaint. *Teachy v. CobleDairies, Inc.,* 306 N.C. 324, 332, 293 S.E.2d 182, 187 (1982). The North Carolina Supreme Court has held that the right to indemnity by operation of law arises out of a tort claim against two alleged joint tortfeasors. *Teachy,* 306 N.C. at 332; *Hunsucker,* 237 N.C. at 563 ("a party secondarily liable in a tort action is entitled to indemnity from the party primarily liable ... when the active negligence of one tort-feasor and the passive negligence of another tort-feasor combine and proximately cause an injury to a third person"); see also *Edwards v. Hamill,* 262 N.C. 528, 531, 138 S.E.2d 151, 153 (1964). Currently, no such tort claim against joint tort-feasors exists. Certainly, defendant's tort liability to plaintiff or any of plaintiff's customers has not been adjudicated. And, as noted above, plaintiff's negligence claim against defendant in this action will be dismissed. Because this court cannot presume the existence of tort liability by defendant or the absence of tort liability by the plaintiff in cases that have not yet been filed,[FN3] indemnity is not available to plaintiff in this action against defendant.

> FN3. "Indemnity is not permitted when the defendants are in pari delicto, that is, when both defendants breach substantially equal duties owed to the plaintiff." *Kim v. Professional Business Brokers Limited,* 74 N.C.App. 48, 51, 328 S.E.2d 296, 299 (1985).

B. *Contract Theory: A Contract Implied-in-Fact*

This court must determine whether the relationship between plaintiff and defendant is such that the court might imply a right to indemnity on plaintiff's behalf. *See American Alloy Steel, Inc. v. Armco,*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680
(Cite as: 1998 WL 1107771 (E.D.N.C.))

Page 8

*Inc.,* 777 S.W.2d 173, 175-76 (Tex.Ct.App.1989). Although *American Alloy* is in no way binding on this court, the decision is instructive. In that case, appellant American Alloy purchased steel plating from appellee, Armco, which it later sold to a third party. When that buyer alleged that the steel plating was defective, American Alloy replaced the product and sued Armco for reimbursement. Analyzing Texas indemnity cases other than those arising out of tort, the court of appeals found that those cases recognizing an implied right of indemnification did so on the basis of agency or surety principles. Because the parties in that case did not share an agency or surety relationship, the court affirmed the trial court's grant of summary judgment in favor of Armco.

As in *American Alloy,* the parties in this case were "parties to a contract with the freedom to negotiate its terms, keeping in mind their individual needs and circumstances." *American Alloy,* 777 S.W.2d at 175. Here, as in *American Alloy,* it would have been to plaintiff's "benefit to negotiate a provision in the sales contract protecting itself" in the event of clearly foreseeable defects and damages arising therefrom. "It is clear that a buyer and seller can freely negotiate to extend liability into the future."*Id.* at 175.Here, as in *American Alloy,* the relationship between plaintiff and defendant fails to compel the court to imply a right to indemnity on behalf of plaintiff. Moreover, plaintiff has failed to allege any special circumstances from which such an agreement might be implied.[FN4]Because plaintiff has not provided sufficient evidence to establish a right to indemnity based on an implied contract, defendant's motion to dismiss plaintiff's claim for indemnity will be allowed.

> FN4. Unlike the defendant in *McDonald,* Terry's Floor has not alleged any circumstances tending to show the existence of an indemnification agreement-either oral or written.

## VIII. UNFAIR AND DECEPTIVE TRADE PRACTICES ACT CLAIM

*9 Plaintiff alleges in its amended complaint that defendant's deliberate misrepresentation of the traits and qualities of its plywood underlayment and its wrongful, bad faith negotiation of the contract or contracts at issue were deceptive and/or unfair under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen.Stat. § 75-1.1 (1988) (the Act). In its brief in opposition to defendant's motion to dismiss, plaintiff argues that defendant not only breached the express and implied warranties pertaining to the sale of plywood underlayment by delivering a non-conforming product, but also deceptively induced plaintiff to enter into the contract in the first place by making false representations about the product's characteristics. Defendant argues that plaintiff has made only a garden-variety contract claim.

The Act prohibits "unfair methods of competition ... and unfair or deceptive acts or practices in or affecting commerce."*Id.*"Although the ultimate issue of whether a particular act or practice violates the Act is one of law for the court, disputes over the facts on which such a legal decision is based are for the trier of fact." *Bartolomeo v. S.B. Thomas, Inc.,* 889 F.2d 530, 534 (4 th Cir.1989). Because defendant has requested this court to dismiss plaintiff's unfair and deceptive trade practices claim pursuant to 12(b)(6), this court must accept all of plaintiff's well-pleaded factual allegations as true in order to determine whether, as a matter of law, defendant's conduct could rise to the level of unfair or deceptive trade practices.

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." *Johnson v. Phoenix Mut. Life Ins. Co.,* 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980)."An act or practice is deceptive ... if it has the capacity or tendency to deceive." *Id.* at

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                           Page 9
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680
**(Cite as: 1998 WL 1107771 (E.D.N.C.))**

265."What is an unfair or deceptive trade practice usually depends upon the facts of each case and the impact the practice has on the marketplace." *Id* . at 262-63."While an act or practice which is unfair may also be deceptive, or vice versa, it need not be so for there to be a violation of the Act." *Id.* at 263.

Generally, North Carolina courts and the Fourth Circuit have held that a mere breach of contract or breach of warranty does not, standing alone, constitute an unfair or deceptive trade practice. *Stone v. Paradise Park Homes, Inc.,* 37 N.C.App. 97, 106, 245 S.E.2d 801, 807,review denied, 295 N.C. 653, 248 S.E.2d 257 (1978); *Bartolomeo v. Thomas,* 889 F.2d at 535. Determining whether a defendant's conduct was unfair and deceptive within the meaning of the Act in *United Roasters, Inc. v. Colgate Palmolive Co.,* 649 F .2d 985, 992 (4 ᵗʰ Cir.), cert. denied, 454 U.S. 1054 (1981), the Fourth Circuit analyzed the scope of the statute.

It is clear that the statute encompasses such things as misrepresentation and a wide variety of shady practices sometimes associated with the marketing of consumer goods and services. Whatever the limit of their reach, however, the words must mean something more than an ordinary contract breach. In a sense, unfairness inheres in every breach of contract when one of the contracting parties is denied the advantage for which he contracted, but this is why remedial damages are awarded on contract claims. If such an award is to be trebled, the North Carolina legislature must have intended that substantial aggravating circumstances be present.

**\*10** Even an intentional breach of a valid contract does not, by itself, violate the statute. *Id.* at 992 (citing *CF Industries, Inc. v. Continental Gas Pipe Line Corp.,* 448 F.Supp. 475 (W.D.N.C.1978)); *Bartolomeo,* 889 F.2d at 535 ("A simple breach of contract, even if intentional, does not amount to a violation of the Act...."); *Branch Banking and Trust Co. v. Thompson,* 107 N.C.App. 53, 62, 418 S.E.2d 694,review denied, 332 N.C. 482, 421 S .E.2d 350

(1992) ("It is well recognized ... that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the Act]").

Instead, "a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." *Bartolomeo,* 889 F.2d at 535; *Branch Banking and Trust Co.,* 107 N.C.App. at 62. The Fourth Circuit has suggested that "to find such [substantial aggravating circumstances] one would probably need to demonstrate deception either in the formation of the contract or in the circumstances of its breach." *Bartolomeo,* 889 F.2d at 535;ᶠᴺ⁵seealso,*Harbert Int'l Inc. v. Wake County Bd. Of Educ.,* No. 90-640-CIV-5-D (E.D.N.C. Aug. 7, 1992) at 10 (citing *Bartolomeo* and *United Roasters* ).

> FN5.*See Marshall v. Miller,* 302 N.C. 539, 546-49, 276 S.E.2d 397, 401-403 (1981) (finding intent of the actor and good faith irrelevant to determination of violation of the Act, and holding that showing of bad faith and/or intentional wrongdoing are not necessary to establish violation of § 75-1.1.)

According to North Carolina law, plaintiff's assertion that defendant has breached its contract with plaintiff is not, standing alone, sufficient to constitute a violation of the Act. The question before the court on defendant's motion to dismiss is whether the facts constitute substantial aggravating circumstances attending the alleged breach to permit the plaintiff to state a cognizable claim under the Act and seek a recovery for treble damages.

Regardless of the fact that plaintiff has recited language to suggest that defendant "deliberately misrepresented" the traits and qualities of the plywood underlayment and that plaintiff entered into the contract on that basis, the fact remains that this dispute, at bottom, is one over whether the product

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680
**(Cite as: 1998 WL 1107771 (E.D.N.C.))**

that was delivered by defendant was in accordance with the specifications as ordered by plaintiff. Plaintiff cannot convert its breach of warranty claim into an unfair trade practices claim simply by "artfully pleading" the appropriate legal language for such a claim. *See Lambert v.. Kysar,* 983 F.2d 1110, 1121 (1ᵃ Cir.1993) (refusing to allow plaintiff to avoid forum selection clause in contract by artfully pleading a tort claim); *Lawler v. Schumacher Filers America, Inc.,* 832 F.Supp. 1044, 1052 (E.D.Va.1993) (adopting holding in *Lambert* );*see also Conservation Council of Western Australia, Inc. v. Aluminum Co. of America;* 518 F.Supp. 270, 281 (W.D.Pa.1981) (refusing to "permit plaintiff through the expedient of artful pleading, to circumvent the proper disposition of [the] action").

Plaintiff must also allege facts to support its legal claims. The facts supporting plaintiff's unfair trade practices claim are indistinguishable from those of plaintiff's breach of warranty claims. Plaintiff does not assert any additional facts to demonstrate substantial aggravating circumstances, as required by the Fourth Circuit. Therefore, the unfair trade practices claim will be dismissed.

## IX. CONCLUSION

**\*11** For the foregoing reasons, defendant's motion to dismiss plaintiff's Counts II and III pertaining to claims under the Uniform Commercial Code is DENIED. Defendant's motion for an award of expenses, attorney's fees and costs based on errors in plaintiff's first complaint is DENIED. Defendant's motion to dismiss Counts I, IV, V, and VI of plaintiff's amended complaint is ALLOWED.

E.D.N.C.,1998.
Terry's Floor Fashions, Inc. v. Georgia-Pacific Corp.
Not Reported in F.Supp.2d, 1998 WL 1107771 (E.D.N.C.), 36 UCC Rep.Serv.2d 680

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.