IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

CASE NO. 2:09-cv-00025-FL

| | | |
|---|---|---|
| CURTIS HINKLEY, LYNN HINKLEY, and STEPHANIE HINKLEY-LOPEZ, individually, and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **DEFENDANT TOBIN TRADING INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND** |
| TAISHAN GYPSUM CO. LTD. f/k/a SHANDONG TAIHE DONGXIN CO. LTD.; TOBIN TRADING INC.; VENTURE SUPPLY INC.; and THE PORTER-BLAINE CORP., | ) ) ) ) ) | |
| Defendants. | ) | |

Defendant Tobin Trading Inc. ("Tobin"), by counsel, for its Response in Opposition to the "Plaintiffs' Motion to Amend Plaintiffs' Amended Complaint" (Dkt. No. 43), states the following:

## OVERVIEW

The Plaintiffs state that they have filed a motion to amend in order to (i) "allege additional facts regarding Tobin Trading, Inc.'s ... minimum contacts with North Carolina thereby invoking personal jurisdiction over Tobin"; (ii) "assert allegations of implied warranty of merchantability"; and (iii) "allege negligence per se allegations with specific violations of building codes" (Plaintiffs' Memorandum at p. 1).

In support of their motion, Plaintiffs have lodged a proposed Second Amended Complaint (Exhibit A to Plaintiffs' Memorandum) that proposes to amend the First Amended Complaint in four (4) respects, as follows:

**EXHIBIT**

3

1.    In the "Defendants" section of the complaint, paragraphs 10 and 11 have been added, alleging that: "Tobin is run by Phillip W. Perry who was responsible for brokering deals between the Chinese drywall manufacturer Taishan, and Venture Supply Company"; "[i]t is upon information and belief that Tobin specifically brokered the deal with knowledge and purpose that the drywall would be installed in North Carolina"; and "[i]t is upon information and belief that Tobin in fact intended for the deal to be for the drywall to be used in North Carolina" (Second Amended Complaint at p. 3).

2.    Count II (negligence per se) adds paragraphs 51 and 52, alleging that "Defendant failed to provide drywall under USBC § 112.3, 113.5" and "Since the Chinese drywall was manufactured in China and did not contain the proper listing, label or certification it is no [sic] compliant with ASTMC 36, C1395, E119 and other related _standards_" (Second Amended Complaint at p. 11 (emphasis added)).

3.    Count III (breach of express and/or implied warranties), which currently alleges that "The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for use as a building material, because it contained defects as set forth herein" (First Amended Complaint ¶ 54), has been modified to allege that "The drywall was defective _and not merchantable_ because it was _unfit_ for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for use as a building material, because it contained defects as set forth herein" (Second Amended Complaint ¶ 58 (emphasis added)).

4.    The "Prayer for Relief" drops the request for punitive damages.

2

## ARGUMENT

## THE MOTION FOR LEAVE TO FILE THE PROPOSED SECOND AMENDED COMPLAINT SHOULD BE DENIED BECAUSE THE PROPOSED AMENDMENTS WOULD BE FUTILE.

With the exception of the Plaintiffs' decision to drop the claim for punitive damages,[1] the proposed amendments in the Second Amended Complaint will do nothing to change the Court's analysis as to whether the Court can exercise personal jurisdiction over Tobin Trading Inc., nor do the proposed amendments sufficiently state a claim against Tobin for negligence *per se* or breach of warranty under Rule 12(b)(6).  On this record, the motion to file the Second Amended Complaint should be denied.

### A.    Legal Standard Applicable to Motion to Amend

The general rule is that leave to amend a complaint under Federal Rule of Civil Procedure 15(a) should be freely given, *see Foman v. Davis,* 371 U.S. 178, 182 (1962), unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile," *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (internal quotation marks omitted).

"A district court may deny leave if amending the complaint would be futile - that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citing *United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 740 (7th Cir. 2007) and affirming district court's order denying leave to file proposed amended complaint that did not properly state a claim, lacked sufficient particularity, and therefore would be futile).

---

[1] For the reasons stated in Tobin Trading Inc.'s memorandum in support of its motion to dismiss under Rule 12(b)(6) (*see* Dkt. No. 37, at p. 21), the First Amended Complaint fails to state a claim for punitive damages.  Tobin therefore has no objection if the Plaintiffs wish to voluntarily dismiss or drop the claim for punitive damages.

3

**B.     Paragraphs 10 and 11 of the Proposed Second Amended Complaint.**

For the reasons discussed in Tobin Trading Inc.'s Reply to Plaintiffs' Response to Motion

to Dismiss for Lack of Personal Jurisdiction, filed contemporaneously herewith, the Plaintiffs

have failed to meet their burden of establishing that Tobin Trading Inc. has sufficient minimum

contacts with the State of North Carolina such that this Court can exercise long-arm personal

jurisdiction over Tobin.  The inclusion of the proposed *conclusory* amendments in paragraphs 10

and 11 of the proposed Second Amended Complaint would be futile.

**C.     Paragraphs 51 and 52 of the Proposed Second Amended Complaint.**

Plaintiffs state that they "seek to add allegations to their negligence per se claims alleging

violation of building codes, which include but are not limited to, United States Building Codes §

112.3, 113.5" and "ASTM Codes C36, C1395, E119" (Plaintiffs' Memorandum at p. 2).

Tobin's research has not disclosed the existence of Code known as the "United States

Building Code."  And, notably, Plaintiffs do not allege that the specific cited sections (112.3 and

113.5) of the "United States Building Code" have been adopted by the legislature of North

Carolina or enacted into law.

The ASTM (American Society for Testing and Materials) standards cited by the Plaintiffs

are not "Code" or statutory provisions that can serve as the basis for a negligence *per se* claim

against Tobin.[2]

"In order to prevail on [their] claim of negligence per se, plaintiff[s] must show: (1) a

duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a

class of persons which includes the plaintiff[s]; (3) a breach of the statutory duty; (4) that the

injury sustained was suffered by an interest which the statute protected; (5) that the injury was of

---

[2] There is no claim or allegation in this case that Tobin has violated any specific provisions of the North Carolina State Building Code.

the nature contemplated in the statute; and, (6) that the violation of the statute proximately caused the injury." *Rudd v. Electrolux Corp.*, 982 F.Supp. 355, 365 (M.D.N.C. 1997) (citing *Baldwin v. GTE South, Inc.*, 335 N.C. 544, 439 S.E.2d 108 (1994)).

The vague, generalized references to the "United States Building Codes" and to the various ASTM standards cited in the proposed Second Amended Complaint are insufficient to state a negligence *per se* claim against Tobin Trading Inc.

Courts presented with complaints containing similar generic claims of negligence *per se* routinely dismiss such claims for failure to state a claim under Rule 12(b)(6). *See, e.g., Holler v. Cinemark USA, Inc.*, 185 F.Supp.2d 1242, 1244 (D. Kan. 2002) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence *per se* … If plaintiff brings a claim based on a specific statute, it logically follows that plaintiff must plead the statute on which the claim is based.  In this case, plaintiff's generic complaint that defendant violated unspecified 'local, state and federal statutes, guidelines and regulations' does not provide fair notice of his claim. It is therefore subject to dismissal under Rule 12(b)(6)" (citations omitted)).[3]

---

[3] *See also Pincetich v. Jeanfreau*, 699 F.Supp. 1469, 1477 (D. Or. 1988) (dismissing negligence *per se* claim because plaintiffs did not cite the specific statute, rule or regulation that was allegedly violated, and because plaintiffs had not alleged that they were members of the class of persons meant to be protected by the statute or that the injury was the type which the statute was enacted to prevent); *Gates v. W.R. Grace & Co.*, Slip Copy, Case No. 8:08-cv-2560, 2009 WL 1455316, *3 (M.D. Fla. 5/21/09) (in unpublished opinion granting 12(b)(6) motion to dismiss negligence *per se* claim, Court explained: "In this case, Mr. Gates fails to allege the violation of any specific statute or regulation, instead generally alleging that the Defendants 'violated various Federal, state and local environmental laws and regulations relating to the release and discharge to toxic pollutants into the water, soil and air, including specifically Federal and state regulations imposing MCLs for contaminants in drinking water.' … By failing to allege the statutory or regulatory basis for the negligence *per se* claim, Mr. Gates fails to give Defendants fair notice of the grounds on which this claim rests. Moreover, Defendants have failed to allege that Mr. Gates was within the class of persons the unidentified statutes or regulations were designed to protect" (citation omitted)) (opinion filed herewith as Exhibit 1); *Heisner ex rel. Heisner v. Genzyme*

Post-*Twombly,* the federal pleading standard requires more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007); *see also Walker v. Prince George's County,* ___ F.3d ___, ___, 2009 WL 2343614, at *5 (4th Cir. 2009) (citing *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) for proposition that "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to plead a claim" and "'[w]e are not bound to accept as true a legal conclusion couched as a factual allegation'").

Here, the proposed Second Amended Complaint fails to allege facts sufficient to state all the elements of a claim for negligence *per se*, and fails to allege enough facts to state a claim for negligence *per se* that is plausible on its face. The proposed Second Amended Complaint (like the First Amended Complaint) fails to allege sufficiently a duty created by a public safety statute; that the statute or ordinance was enacted to protect a class of persons which includes the Plaintiffs and putative class members; a breach by Tobin of any such public safety statutory duty; that the damage or injury allegedly sustained was suffered by an interest which any such statute protected; that the alleged damage or injury was of the nature contemplated in any such public safety statute; or that violation of the statute proximately caused the Plaintiffs and putative class members to sustain damages. Because the proposed amendment would be futile, the Plaintiffs' motion to amend should be denied.

**D.      Paragraph 58 of the Proposed Second Amended Complaint.**

Count III of the proposed Second Amended Complaint is identical to the First Amended Complaint, with the following modification (underscored and in italics): "The drywall was

---

*Corp.,* Case No. 08-C-593, 2008 WL 2940811, *7 (N.D. Ill. 7/25/08) (unpublished opinion dismissing negligence *per se* claim "for failing to place Defendant on notice of the underlying standard of care, an essential element of a negligence *per se* claim") (opinion filed herewith as Exhibit 2).

defective *and not merchantable* because it was *unfit* for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for use as a building material, because it contained defects as set forth herein" (Second Amended Complaint ¶ 58 (emphasis added)).[4] The proposed modifications are conclusory and formulaic in nature.

Count III of the proposed Second Amended Complaint fails to state a claim against Tobin for breach of an express or implied warranty, for the reasons already discussed in Tobin's 12(b)(6) motion to dismiss the First Amended Complaint and supporting memorandum. Because the proposed amendment would be futile, the Plaintiffs' motion to amend should be denied.

### CONCLUSION

WHEREFORE, Defendant Tobin Trading Inc. respectfully prays that this Court enter an Order denying the "Plaintiffs' Motion to Amend Plaintiffs' Amended Complaint," and for such other relief as this Court deems proper.

Respectfully submitted this the 20th day of August, 2009.

/s/ Theodore I. Brenner
Theodore I. Brenner
*Visiting Attorney Specially Appearing for*
*Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 17815

---

[4] Just like the First Amended Complaint, Count III of the proposed Second Amended Complaint continues to allege in a conclusory fashion that "Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' and Class Members' homes as a building material) due to the defects set forth herein" (Second Amended Complaint ¶ 59).

7

 /s/ Alexander S. de Witt
Alexander S. de Witt
*Visiting Attorney Specially Appearing for*
*Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 42708

 /s/ Andrew A. Vanore, III
Andrew A. Vanore, III
*Attorney for Defendant, Tobin Trading Inc.*
Brown, Crump, Vanore & Tierney, L.L.P.
P.O. Box 1729
Raleigh, NC  27602
Phone: (919) 835-0909
Fax: (919) 835-0915
E-mail: drewvanore@bcvtlaw.com
NC State Bar No. 13139

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date electronically filed the foregoing **RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND** with the Clerk of the Court using the CM/ECF system which will then send notification of such filing to the following:

J. Michael Malone
4600 Marriott Dr., Suite 150
Raleigh NC  27612
*Counsel for Plaintiffs*

Roberty Gary
446 Broadway
Lorain, OH  44052
*Co-Counsel for Plaintiffs*

Michael D. Hausfeld, Richard S. Lewis,
James J. Pizzirusso, Faris Ghareeb
1700 K Street, N.W., Suite 650
Washington, DC  20006
*Co-Counsel for Plaintiffs*

8

Arnold Levin, Fred S. Longer and Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
 *Co-Counsel for Plaintiffs*

Richard J. Serpe
580 E. Main Street, Suite 310
Norfolk, VA 23510
 *Co-Counsel for Plaintiffs*

Richard W. Stimson
920 Waters Reach Court
Alpharetta, GA 300022
*Co-Counsel for Plaintiffs*

Thomas M. Buckley
4011 Westchase Blvd., Suite 300
Raleigh, NC 27607
 *Counsel for Porter-Blaine Corp.*


　　　　　　 /s/ Alexander S. de Witt
Alexander S. de Witt
*Visiting Attorney Specially Appearing for*
*Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia 23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 42708

9

Westlaw.

Slip Copy, 2009 WL 1455316 (M.D.Fla.)
(Cite as: 2009 WL 1455316 (M.D.Fla.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, M.D. Florida,
Tampa Division.
Charlie L. GATES, Jr. and Kimberly Gates,
Plaintiffs,
v.
W.R. GRACE & CO., et al., Defendants.
No. 8:08-cv-2560-T-27TBM.

May 21, 2009.

John Sam Kalil, Law Office of John S. Kalil, PA,
Jacksonville, FL, for Plaintiffs.

Frank H. Gassler, Michele G. Johnson, Banker
Lopez Gassler, P.A., David Barnett Weinstein,
Christopher Torres, Kimberly Staffa Mello, Green-
berg Traurig, LLP, Tampa, FL, Daniel Brandon Ro-
gers, Edward A. Moss, Jennifer A. McLoone,
Shook, Hardy & Bacon, LLP, Miami, FL, for De-
fendants.

### ORDER

JAMES D. WHITTEMORE, District Judge.

**\*1 BEFORE THE COURT** is Defendants Mosaic
Fertilizer, LLC's and Cargill Fertilizer, Inc.'s Mo-
tion to Dismiss Complaint (Dkt.26), to which
Plaintiffs have responded in opposition. Upon con-
sideration, the motion is GRANTED IN PART.

### Background

Plaintiff Charlie L. Gates, Jr. previously owned
property in Bartow, Florida adjacent to a chemical
fertilizer plant operated by Defendants. (Comp.,
Dkt.1, ¶¶ 2, 9). Mr. Gates and his wife, Plaintiff
Kimberly Gates, lived there "either part time or full

time, from at least 1986 until 1996." (Dkt.1, ¶ 9).
Defendant W .R. Grace & Co. ("Grace") operated
the plant from at least 1975 to 1988. [FN1] (Dkt.1, ¶
10). Defendant Seminole Fertilizer Corporation
("Seminole") purchased the plant and property in
1988 and operated it until 1993. (Id.) Defendant
Cargill Fertilizer, Inc. ("Cargill") purchased the
plant and property in 1993 and operated it until
2004. (Id.) In 2004, Cargill transferred ownership
and operation of the plant to Mosaic Fertilizer, LLC
("Mosaic"). (Id.) Plaintiffs allege that Mosaic is the
legal successor-in-interest to Cargill and is liable
for Cargill's prior acts and omissions. (Id.)

> FN1. This action is stayed as to Grace due
> to a pending bankruptcy proceeding. 11
> U.S.C. § 362. (Dkt.16).

Plaintiffs allege that Grace, Seminole, and Cargill
negligently released and discharged toxic contamin-
ants into the groundwater aquifer system, which
spread into Mr. Gates' well. (Dkt.1, ¶ 13). Mr.
Gates used this well for drinking water and cook-
ing, and for other purposes. (Dkt.1, ¶ 9). Plaintiffs
also allege that these Defendants negligently re-
leased and discharged toxic contaminants into the
air and soil in and around the plant, including in
and upon Mr. Gates' property. (Id.)

Plaintiffs allege that Grace, Seminole, and Cargill
knew or should have known of the contamination.
(Dkt.1, ¶ 14). Specifically, Plaintiffs allege that
Grace was required to undertake a groundwater
monitoring plan by the Florida Department of Reg-
ulation and the United States Environmental Pro-
tection Agency. (Dkt.1, ¶ 15). Grace employed Ar-
daman & Associates, Inc. to prepare a Preliminary
Groundwater Contamination Assessment Report,
which concluded that Mr. Gates' well was "grossly
contaminated with radionuclides." (Id.) Specific-
ally, the gross s-alpha levels were 59 pCi/L and the
total radium levels were 18.3 pCi/L, greatly exceed-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT
1

Slip Copy, 2009 WL 1455316 (M.D.Fla.)
**(Cite as: 2009 WL 1455316 (M.D.Fla.))**

ing the maximum contaminant levels permitted by federal and state regulations of 15 pCi/L for gross s-alpha radionuclides and 5 pCi/L for total radium. (*Id.*) The report recommended that the well "should not be used for potable water supply." (*Id.*)

Plaintiffs allege that Mr. Gates was never informed of the contamination and that Defendants failed to take any action to prevent his exposure to the contaminants. (Dkt.1, ¶ 16). Mr. Gates alleges that as a direct and proximate result, he was exposed to dangerous levels of contaminants and was diagnosed with acute promyelocyte leukemia on December 27, 2004, as well as aplastic anemia and decimated intravascular coagulation secondary to the acute leukemia. (Dkt.1, ¶¶ 19, 20).

*2 Mr. Gates brings claims for negligence (Count I), negligence per se (Count II), nuisance (Count III), trespass (Count IV), and strict liability pursuant to Fla. Stat. § 376.313 (Count VI). Mrs. Gates brings claims for loss of consortium (Count V) and joins in the strict liability claim. Defendants Cargill and Mosaic filed the instant motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing that: (1) the negligence per se claim fails, as Mr. Gates has not identified a statute or regulation that was violated, nor alleged that he is a member of the class of persons the laws were intended to protect; and (2) the nuisance and trespass claims fail, as Mr. Gates has not alleged an intrusion that interfered with his exclusive possession or use and enjoyment of the land. Defendants also challenge Plaintiffs' claim for property damages in each count, as well as personal injury damages with respect to Count VI. As set forth, the claims for negligence per se and nuisance are dismissed with leave to amend, and the motion is otherwise denied.

### Standard

Rule 8(a) (2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 n. 43 (11th Cir.2008). Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "raise a right to relief above the speculative level." *Id.* A conclusory statement of the elements of a cause of action will not suffice to state a claim under Rule 8. *Id.* A well-pleaded complaint, however, may survive a motion to dismiss even if it appears "that recovery is very remote and unlikely." *Id.* (quoting *Scheur v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

### Discussion

#### 1. Negligence per se (Count II)

"A cause of action in negligence per se is created when a penal statute is designed to protect a class of persons, of which the plaintiff is a member, against a particular type of harm." *Newsome v. Haffner,* 710 So.2d 184, 186 (Fla. 1st DCA), *rev. denied,* 722 So.2d 193 (Fla.1998). In Florida, violations of two types of statutes may establish negligence per se. First, negligence per se is established by violation of a "strict liability" statute, which is "designed to protect a particular class of persons from their inability to protect themselves." *deJesus v. Seaboard Coast Line R.R. Co.,* 281 So.2d 198, 201 (1973) (citing *Tamiami Gun Shop v. Klein,* 116 So.2d 421 (Fla.1959)). Strict liability statutes comprise a narrow group of "unusual and exceptional statutes," including child labor laws and statutes prohibiting the sale of firearms to minors. *Eckelbarger v. Frank,* 732 So.2d 433, 435-36 (Fla. 2d

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1455316 (M.D.Fla.)
(Cite as: 2009 WL 1455316 (M.D.Fla.))

Page 3

DCA 1999).

*3 Second, negligence per se is demonstrated by violation of "any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." *deJesus,* 281 So.2d at 201. The plaintiff must establish that he "suffered injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of his injury." *Id.* The Florida Supreme Court has held that a violation of any other type of statute, such as traffic regulations, is considered only prima facie evidence of negligence. *Id.*

In this case, Mr. Gates fails to allege the violation of any specific statute or regulation, instead generally alleging that the Defendants "violated various Federal, state and local environmental laws and regulations relating to the release and discharge to toxic pollutants into the water, soil and air, including specifically Federal and state regulations imposing MCLs for contaminants in drinking water." (Dkt.1, ¶ 27). By failing to allege the statutory or regulatory basis for the negligence per se claim, Mr. Gates fails to give Defendants fair notice of the grounds on which this claim rests. *Cf. Tatum v. Pactiv Corp.,* Case No. 2:06-cv-83, 2006 WL 3543106, at *2 (M.D.Ala. Dec.8, 2006). Moreover, Defendants have failed to allege that Mr. Gates was within the class of persons the unidentified statues or regulations were designed to protect. *See also Irwin v. Miami-Dade County Pub. Schs.,* Case No. 06-23029-civ, 2009 WL 497652, at *4 (S.D.Fla. Feb.25, 2009); *cf. Mest v. Cabot Corp.,* 449 F.3d 502, 518 (3d Cir.2006). Count II is therefore dismissed with leave to amend.

## 2. Nuisance and Trespass (Counts III and IV)

Defendants next argue that Mr. Gates' claims for nuisance and trespass must be dismissed because Mr. Gates did not have any knowledge of the alleged contamination at the time he occupied the Bartow property sufficient to interfere with his use and enjoyment of the property.

A nuisance is "[a]nything which annoys or disturbs one in the free use, possession, or enjoyment of his property, or which renders its ordinary use or occupation physically uncomfortable." *Jones v. Trawick,* 75 So.2d 785, 787 (Fla.1954). Thus, a "nuisance" refers to "the interest invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion." *Durrance v. Sanders,* 329 So.2d 26, 29 (Fla.1976). While no particular type of conduct by a defendant is required to establish a nuisance, the defendant's conduct must be the proximate cause of the alleged injury. *Id.* A successful plaintiff may recover out-of-pocket costs incurred to abate the nuisance, loss of business or rental proceeds during the nuisance, diminution in value of the property, and in certain cases, damages for personal injury. *See Antun Invs. Corp. v. Ergas,* 549 So.2d 706, 709 (Fla. 3d DCA 1989); *Exxon Corp., U.S.A. v. Dunn,* 474 So.2d 1269, 1273-74 (Fla. 1st DCA 1985); *Nitram Chems., Inc. v. Parker,* 200 So.2d 220, 225 (Fla. 2d DCA 1967).

*4 In the instant case, Mr. Gates alleges that Defendants' conduct "as described above constitutes an actionable nuisance because it unreasonably interfered with Mr. Gates use and enjoyment of his property." (Dkt.1, ¶ 30). Plaintiff has not, however alleged what the "nuisance" itself was, in terms of the interest invaded. *See Durrance,* 329 So.2d at 29. In other words, assuming that Defendants caused the nuisance by the discharge of contaminants into the water, soil, and air of Plaintiff's property, *see, e.g., Davey Compressor Co. v. City of Delray Beach,* 639 So.2d 595, 596 (Fla.1994), Plaintiff has failed to allege any facts suggesting that he was annoyed or disturbed in the use or enjoyment of his property, or that its occupation was physically uncomfortable. To the contrary, Plaintiff alleges that he was not informed of the contamina-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1455316 (M.D.Fla.)
(Cite as: 2009 WL 1455316 (M.D.Fla.))

Page 4

tion of the water, soil, and air on his property. (Dkt.1, ¶ 16). Mr. Gates thus fails to allege an actionable "nuisance." *Durrance,* 329 So.2d at 29. Count III is therefore dismissed with leave to amend.

On the other hand, Mr. Gates' claim for trespass is sufficient. The fundamental requirements for a claim of trespass are that the plaintiff is the owner or in possession of land and that the land was invaded by the defendant. *Okaloosa County Gas Dist. v. Enzor,* 101 So.2d 406, 407 (Fla. 1st DCA 1958). It is well-established that the requisite invasion may occur through environmental contaminants. *See Courtney Enters., Inc. v. Publix Super Markets, Inc.,* 788 So.2d 1045, 1048 (Fla. 2d DCA 2001). In the instant case, Plaintiff alleges that Defendants' discharge of contaminants into the water, soil, and air on his property constituted a trespass. (Dkt.1, ¶ 33). This is sufficient to state a trespass claim. Defendants' motion to dismiss Count IV is therefore denied.

*3. Property damage*

Defendants also argue that Plaintiffs' claims for property damage must be dismissed because Plaintiffs could not have incurred any loss of use, remediation expenses, or diminution in value of the Bartow property. While this argument may ultimately have merit, it is a matter for discovery, and is not proper for a motion to dismiss to the extent Plaintiffs have otherwise stated valid claims.

*4. Strict liability (Count VI)*

Finally, Defendants argue that Plaintiffs' strict liability claim pursuant to Florida's Water Quality Assurance Act ("WQAA"), Fla. Stat. §§ 376.30 *et seq.,* should be dismissed to the extent Plaintiffs seek to recover personal injury damages. Again, however, Defendants do not argue that Plaintiffs have failed to state a claim, and the damages issue

is therefore more properly the subject for a dispositive motion. Moreover, the Florida Supreme Court has ruled that there is a private cause of action under § 376.313(3) of the WQAA, which creates "a damages remedy for the non-negligent discharge of pollution without proof that the defendant caused it." *Aramark Uniform and Career Apparel, Inc. v. Easton,* 894 So.2d 20, 24 (Fla.2004). Courts have permitted claims for personal injury pursuant to the WQAA. *See Cunningham v. Anchor Hocking Corp.,* 558 So.2d 93, 97 (Fla. 1st DCA 1990) (holding that complaint stated a cause of action where plaintiffs alleged personal injury).[FN2] As a result, Defendants' motion to dismiss Count VI is denied.

> FN2. The case relied on by Defendants is distinguishable, as it addressed whether fisherman, who did not own the property that was subject to the alleged pollution, could recover purely economic damages arising from the discharge of pollutants into the waters in which they fished. *Curd v. Mosaic Fertilizer, LLC,* 993 So.2d 1078, 1079 (Fla. 2d DCA 2008), *rev. granted,* 993 So.2d 511 (Fla.2008). Indeed, that case noted that there is case law interpreting the WQAA as permitting recovery of personal injury damages. *Id.* at 1084.

### Conclusion

*5 Based on the foregoing, it is **ORDERED**:

1) Defendants Mosaic Fertilizer, LLC's and Cargill Fertilizer, Inc.'s Motion to Dismiss Complaint (Dkt.26) is **GRANTED IN PART** to the extent that Counts II and III are **DISMISSED WITHOUT PREJUDICE** as to Mosaic Fertilizer, LLC and Cargill Fertilizer, Inc ., with leave to amend, and is otherwise **DENIED.**

2) Plaintiffs are granted leave to file an Amended Complaint within *twenty (20) days* of the date of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1455316 (M.D.Fla.)
**(Cite as: 2009 WL 1455316 (M.D.Fla.))**

this Order, failing which Counts II and III will
stand dismissed with prejudice.

**DONE AND ORDERED** in chambers this *20th*
day of May, 2009.

M.D.Fla.,2009.
Gates v. W.R. Grace & Co.
Slip Copy, 2009 WL 1455316 (M.D.Fla.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)
**(Cite as: 2008 WL 2940811 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Elmer HEISNER, individually and on behalf of
Jayne HEISNER, Plaintiff,
v.
GENZYME CORPORATION, a Massachusetts
corporation, Defendant.
**No. 08-C-593.**

July 25, 2008.

Kurt D. Hyzy, The Law Group, Ltd., Chicago, IL,
for Plaintiff.

Stephanie Ann Scharf, David W. Austin, Schoeman
Updike Kaufman & Scharf, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

DAVID H. COAR, District Judge.

*1 Plaintiff Elmer Heisner ("Plaintiff" or "Heisner") brought this action against Defendant Genzyme Corporation ("Genzyme" or "Defendant") for violations of state law surrounding the death of his wife, Jayne Heisner ("Decedent"). Now before this Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 8). For the reasons stated below, Defendant's motion is GRANTED.

### 1. FACTS[FN1]

> FN1. These facts are derived from Plaintiffs' complaint and, for the purposes of this motion, are assumed to be true. See

*Davis Companies v. Emerald Casino, Inc.,* 268 F.3d 477, 479 (7th Cir.2001).

As an initial matter, Defendant requests that this Court take judicial notice of the fact that "Seprafilm is a Class III device approved through the PMA [premarket approval] process." (Def.'s Reply at 2-4.) The Complaint references Seprafilm's approval by the FDA on December 20, 2000, but does not make clear what approval process or category was applied to the device.

It is certainly possible to "take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon,* 217 F.3d 472, 474-75 (7th Cir.2000) (citing *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994)). However, this can be done only where "an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1081 (7th Cir.1997).

Plaintiff argues against taking judicial notice of facts surrounding the FDA's approval, stating that "disputable findings exist concerning the Defendant's compliance with the FDA's Medical Device Amendments (MDA) and Premarket approval process in the manufacturing of their product, Seprafilm." (Pl.'s Resp. at 3.) However, this does not contradict the putative fact in question, which is only that the FDA approved Seprafilm as a Class III device pursuant to the PMA process. Whether that process was properly followed by the FDA, or whether Defendant fulfilled its obligations over the course of that process, are disputed issues that cannot be resolved at this early stage. However, neither of these questions contradict the clear, undisputed, and publicly available fact put forward by Defendant; that the FDA approved Seprafilm as a Class III device. As a matter of law, this approval is granted

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT
2

Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)
**(Cite as: 2008 WL 2940811 (N.D.Ill.))**

only upon completion of the PMA process. *See* 21 U.S.C. § 360c(a)(1)(C). Therefore, this Court takes judicial notice of the fact that "Seprafilm is a Class III device approved by the FDA pursuant to the PMA process," and leaves open any additional questions regarding the adequacy of that process as applied in this case.

Plaintiff's wife underwent surgery to remove an ovarian cyst on January 19, 2006. A Seprafilm adhesion barrier manufactured and sold by the Defendant was inserted into her body to prevent post-surgical adhesions from forming between her internal organs and tissue. Plaintiff alleges that Jayne Heisner died on February 22, 2006 as a proximate result of the insertion of Seprafilm into her body. (Compl.¶ 2.)

**\*2** Plaintiff's Complaint contains seven counts, generally alleging that Genzyme was negligent in the design, manufacture, and labeling of Seprafilm and that Seprafilm was not fit for its intended use. Defendant has moved to dismiss all seven counts of the Complaint. In his Response to the Defendant's Motion to Dismiss, Plaintiff has asked this Court to dismiss without prejudice Count II, which claimed a failure to disclose under Massachusetts General Law Ch. 93A § 2(a). (Pl.'s Resp. to Def.'s Mot. to Dismiss 14-15.) Dismissal of Count II is GRANTED without prejudice. The remaining counts are:

I. Breach of Implied Warranty of Merchantability under Massachusetts General Law § 2-314.

III. Strict Liability under Illinois tort law, as product was unreasonably dangerous for normal use.

IV. Negligence under Illinois tort law in testing, inspection, design, manufacture, warning, and/or labeling.

V. Negligence *per se* under Illinois tort law due to adulteration and/or misbranding in violation of the Federal Food, Drug, and Cosmetic Act, 21

U.S.C. § 301, the Sherman Food, Drug and Cosmetic Law, and "other applicable laws, statutes, and regulations," including standards for care and labeling set by 21 C .F.R. §§ 201.56 and 201.57.

VI. Breach of Express Warranty under Illinois tort law

VII. Breach of Implied Warranty under Illinois tort law

## 2. STANDARD OF REVIEW FOR MOTION TO DISMISS

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), courts take the allegations in the complaint as true, drawing all possible inferences in favor of the plaintiff. *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir.2007).

To state a claim under federal pleading standards, a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with "fair notice" of the claim and its basis. Fed.R.Civ.P. 8(a)(2); *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). In *Twombly,* however, the Supreme Court seemingly raised the level of factual development required to state a claim, requiring a complaint to contain more than "labels and conclusions," *id.* at 1964-65, and "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974.

The Seventh Circuit has emphasized that *Twombly* "did not ... supplant the basic notice pleading standard." *Tamayo v. Blagojevich,* No. 07-2975, 2008 WL 2168638, at \*8 (7th Cir. May 27, 2008). The essential requirement of a complaint remains, that it "give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Id.* But after *Twombly,* the Seventh Circuit has also re-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)
(Cite as: 2008 WL 2940811 (N.D.Ill.))

Page 3

cognized that "the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility, L.L.C.,* 499 F.3d 663, 667 (7th Cir.2007); *Killingsworth,* 507 F.3d at 619.

## 3. ANALYSIS

*3 Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) that advances several arguments for judgment as a matter of law, including: (1) federal preemption of state law claims pursuant to § 360k (seeking dismissal of all counts); (2) failure to state a claim for negligence per se (Count V); (3) failure to identify an express warranty (Count VI); (4) lack of duty to warn (all counts); (5) improper use of conclusions rather than facts (all counts); and (6) terminal failure to satisfy requirements of the Illinois Wrongful Death Act (multiple counts).

a. *Preemption*

i. *Law of the FDCA*

The primary issue now before this Court is whether any of Plaintiff's claims are preempted under the Medical Device Amendments (MDA) to the federal Food, Drug, and Cosmetic Act (FDCA). 21 U.S.C. § 360c *et seq.* The MDA established a regulatory structure pursuant to which the Food and Drug Administration (FDA) regulates medical devices. Under the MDA, devices are categorized into three classes, based on the level of risk that they pose. Devices used "in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health" are classified as Class III devices. *Id.* § 360c(a)(1)(C). A Class III device is required to undergo a pre-market approval (PMA) process "to provide reasonable assurance of its safety and effectiveness" be-

fore being marketed. *Id.* During the PMA process, manufacturers must submit detailed information regarding the safety and efficacy of their devices, which the FDA thoroughly reviews. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 477, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The FDA must approve the product's design, testing, intended use, manufacturing methods, performance standards, and labeling. *Mitchell v. Collagen Corp.,* 126 F.3d 902, 913 (7th Cir.1997). The device in question in this case, Seprafilm, received PMA as a Class III device on December 20, 2000. (*See* Compl. ¶ 12; discussion *supra* p. 1.)

The MDA contains a preemption clause meant to displace state regulations that conflict with requirements imposed by the FDA. The clause states that:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement

1) which is different from, or in addition to, any requirement applicable under this chapter to this device, and

2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). The initial interpretive questions raised by the preemption clause involve the meaning of the word "requirement": (1) whether the federal process or action constitutes a "requirement" imposed by the FDA; and (2) whether state statutes and state tort law impose different and additional "requirements" on manufacturers. If the FDA and state statutory and tort duties both constitute "requirements," then § 360k may dictate that the state requirements be preempted by those imposed by the FDA. *Lohr,* 518 U.S. at 477. If the state requirement creates obligations that are "different from, or in addition to" the relevant fed-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)
**(Cite as: 2008 WL 2940811 (N.D.Ill.))**

eral requirements, then § 360k necessitates preemption. *McMullen v. Medtronic, Inc.,* 421 F.3d 482, 488 (7th Cir.2005). However, tension between FDA requirements and those created by state law is avoided where the state requirements parallel the federal ones. *Riegel,* 128 S.Ct. at 1011 (declining to address, in the first instance, whether plaintiffs' claims were "parallel" to federal requirements); *Lohr,* 518 U.S. at 496-497 (holding that state requirements that are "substantially identical to" those imposed by the MDA are not preempted).

*4 The Supreme Court recently applied the preemption analysis to the PMA process in *Riegel v. Medtronic,* holding that the specific approval of a device's design and implementation amounts to the imposition of federal requirements, and that both state statutes and state tort duties may be requirements within the meaning of § 360k(a). --- U.S. ----, ---- - ----, 128 S.Ct. 999, 1007-8, 169 L.Ed.2d 892 (2008). *Riegel* involved a number of New York statutory and tort law claims brought against the manufacturer of a balloon catheter that had received PMA. Given the potentially conflicting requirements of the state laws and the PMA process, the Court held that the latter preempted the plaintiff's claims of implied warranty of merchantability, strict liability, and negligence. *Id.* at 1008-9.

*ii. Party positions*

Defendant argues that all six of the remaining counts of the Complaint are preempted pursuant to § 360k(a). (Def.'s Dismiss Mem. at 4-7.) In response, Plaintiff attempts to find loopholes in the holding of *Riegel.* (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss 4-8.) Plaintiff first notes that manufacturers are required to inform the FDA, under 21 U.S.C. § 360(i), of any new clinical studies or of incidents of death or serious injury related to medical devices that have received PMA. (*Id.* at 5-6.) Plaintiff seems to suggest that, because Genzyme may have failed to meet these reporting require-

ments, this Court should not accept Genzyme's contention that Seprafilm is an approved Class III device that has met the requirements of the MDA.

Plaintiff also contends that his claims "parallel" the PMA requirements and Good Manufacturing Practice requirements that specify regulations in regard to the manufacturing, design, packaging, labeling, marketing and distribution of medical devices. 21 U.S.C. §§ 360(e, j, contract); 21 C.F.R. § 820.1. Therefore, Plaintiff argues, his claims should not be preempted for imposing different or additional requirements. (Pl.'s Resp. to Def.'s Mot. to Dismiss 6-8.)

*iii. Discussion*

Defendant overstates the holding of *Riegel* in arguing that it settles all questions of preemption in this case. It is true that Plaintiff's claims in this case are similar to those that were found, in *Riegel,* to constitute different and additional requirements. The plaintiffs in *Riegel* alleged that a balloon catheter "was designed, labeled, and manufactured in a manner that violated New York common law." 128 S.Ct. at 1001. They made claims of strict liability, breach of implied warranty, and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of the catheter. *Id.* In the instant case, Plaintiff similarly alleges that Seprafilm was negligently designed, manufactured, and labeled. (Compl.¶¶ 20, 34, 39.) Like the plaintiffs in *Riegel,* he makes claims of strict liability, breach of implied warranty, and negligence. (*Id.* ¶¶ 20, 34, 39.) However, the *Riegel* court expressly declined to address the question of whether the claims were sufficiently "parallel" as to avoid preemption, because the plaintiff had failed to raise this issue before the court of appeals or in their petition for certiorari. 128 S.Ct. at 1011. In addition, *Riegel* does not delve into the compatibility of FDCA preemption and state law claims based on the post-approval reporting requirements of 21 U.S.C. § 360i.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)
**(Cite as: 2008 WL 2940811 (N.D.Ill.))**

*\*5* Here, there is at least some possibility that Sieprafilm's failure might be attributed to Defendant's negligence in a way that does not conflict with the FDA's requirements. *See, e.g., Mitchell,* 126 F.3d at 907 ("[T]o the extent that the Mitchells' claims for mislabeling, misbranding and adulteration alleged that Collagen had not followed the FDA requirements, the claims were not preempted because, in permitting a cause of action for nonconformity with federal requirements, state law did not impose a requirement 'different from, or in addition to,' the federal requirements.") (summarizing a previous ruling); *Riegel,* 128 S.Ct. at 1001. As Defendant acknowledges, to the extent that Plaintiff's allegations are concerned not with the nature of Seprafilm as approved by the FDA, but rather with Defendant's action or inaction in its efforts to take part in the PMA process or implement its results, he may be able to satisfy the parallel exception to preemption. (*See* Def.'s Reply at 5 ("An exception [to preemption] is when claims are premised on violations of the federal requirements embodied in the PMA process specific to the challenged device.") (citing *Riegel,* 128 S.Ct. at 1011).)

Whatever merit there may be to Plaintiff's argument regarding parallel requirements, however, the Complaint cannot be saved as it is now formulated. This Court cannot possibly determine whether Plaintiff's claims are based on requirements that are "substantially identical" to those of the FDA without a more precise statement of his claims. *See Lohr,* 518 U.S. at 496-497. As currently pled, each and every count brought by Plaintiff relies either directly or indirectly on the existence of a "defect" in Seprafilm. (*See* Compl. ¶¶ 19-20, 34, 39, 46, 50, 55.) However, if the referenced defect was in fact intrinsic to the product as approved in the PMA, then it is likely if not certain that any finding of liability based on that defect would place additional and/or different burdens on Defendant's product, necessitating preemption pursuant to *Lohr* and § 360k. *See McMullen,* 421 F.3d at 489 (finding that

state and federal requirements are not equivalent if a manufacturer could be held liable under state law while complying with federal requirements). Out of practical necessity and the cold calculus of nationwide regulation, the FDA may be aware of a certain failure rate associated with a medical product and yet approve it. A single instance of such failure, while tragic, does not necessarily amount to a "defect" for purposes of establishing liability that survives preemption. *See Mitchell,* 126 F.3d at 913-15 (upholding summary judgment against plaintiff due to the fact that any judgment premised on product failure which nonetheless complied with the PMA "would necessarily conflict with the determination of the FDA that its requirements rendered the product safe and effective").

Similarly, it may be premature to conclude that Plaintiff cannot succeed in establishing Defendant's liability by means of the reporting requirements created by the FDCA. Though not entirely clear, Plaintiff seems to suggest that some portion of his claims should survive on a distinct basis by way of these requirements. Plaintiff is correct that after receiving PMA, Class III devices are subject to annual reporting requirements. 21 U.S.C. § 360i. These "post-approval reports" must identify all changes made to the device, 21 C.F.R. § 814.84(b)(1), and summarize unpublished data from any clinical investigations or laboratory studies or reports in scientific literature involving the device "that reasonably should be known to the applicant," *id.* § 814.84(b) (2) (i-ii). A manufacturer must also report to the FDA any problems in labeling, malfunctions of devices, and incidents in which a device may have caused death or serious injury. *Id.* § 803.50. At this stage it cannot be said that any liability for failing to meet these requirements is precluded. Nonetheless, Plaintiff's vague suggestion that Defendant violated these reporting requirements does not help Plaintiff avoid dismissal of his claims; Plaintiff has not alleged anything in his Complaint that would put Defendant on notice that

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)
(Cite as: 2008 WL 2940811 (N.D.Ill.))

Page 6

the basis of Plaintiff's claim was Genzyme's failure to meet the FDA's reporting requirements. *See* Fed.R.Civ.P. 8(a)(2); *Twombly,* 127 S.Ct. at 1964.

*6 The burden is on Defendant to show "a conflict between the state and federal regulations of the medical devices which threatens to interfere with a specific federal interest." *Mitchell,* 126 F.3d at 913 (quoting *Hernandez v. Coopervision, Inc.,* 691 So.2d 641 (Fla.Dist.Ct.App.1997)). However, Defendant cannot adequately argue this defense where the Complaint fails to provide the proper level of specificity in its claims. *Brokaw v. Mercer County,* 235 F.3d 1000, 1014 (7th Cir.2000) ("while the federal rules of notice pleading do not require the plaintiff to allege all of the relevant facts, '[f]or fair notice to be given, a complaint must at least include the operative facts upon which a plaintiff bases his claim.' ") (quoted cite omitted). To the extent that Plaintiff may eventually succeed in a claim that rests outside those that are preempted by § 360k, it is unclear from the Complaint as it now stands how such a claim would appear. It is not the responsibility of this Court to restructure Plaintiff's suit so that it alleges claims with some potential for success under the FDCA. *See James Cape & Sons Co. v. PCC Const. Co.,* 453 F.3d 396 (7th Cir.2006) ("District judges are not mind readers, and should not be required to explain to parties whether or how their complaints could be drafted to survive a motion to dismiss."). At this stage, we find only that every aspect of the Complaint in its current form is either preempted pursuant to § 360k, or lacks sufficient clarity to place Defendant on notice of the claims levied against it. Plaintiff has therefore failed to state a claim upon which relief can be granted, and the Complaint must be dismissed in its entirety. Fed.R.Civ.P. 12(b)(6).

Plaintiff has requested the opportunity to amend his complaint in light of some of the issues addressed in the motion to dismiss filings. It is clear that the defense of preemption has highlighted a lack of clarity in the structure of several of Plaintiff's

claims that may be redeemable through amendment. At the very least, Plaintiff must provide some allegations regarding the nature of the alleged Seprafilm defect as it relates to the FDA approval process. In the interest of justice, Plaintiff will therefore be permitted the opportunity to amend those counts of the Complaint whose failings have only been made clear as a result of the defense of preemption. *See* Fed.R.Civ.P. 15. Therefore, Counts I, III, IV, and VII-related to implied warranties, strict liability, or negligence-are DISMISSED. The remaining Counts V and VI suffer from additional failings that warrant additional discussion.

b. *Negligence per se Claim*

Count V of Plaintiff's Complaint alleges that Defendant has violated a statute establishing a standard of care, making Defendant negligent *per se.* (Compl.¶¶ 43, 45, 46.) Under Illinois law, the violation of a statute intended to protect human life or property may establish a prima facie case of negligence. *Kalata v. Anheuser-Busch Cos.,* 144 Ill.2d 425, 434, 163 Ill.Dec. 502, 581 N.E.2d 656 (1991). To prevail on a claim of negligence based on the violation of a statute, a plaintiff must establish that (1) he was a member of the class of persons the statute was designed to protect, (2) his was the type of injury the statute was intended to protect against, and (3) the defendant's violation of the statute was the proximate cause of his injury. *Id.*

*7 Plaintiff alleges that Defendant violated the standards of care for labeling and provision of information set by 21 C.F.R. §§ 201.56 and 201.57 and that Defendant violated §§ 301 and 331 of the FDCA. (Compl. ¶¶ 43-46.) Plaintiff also alleges that he, "as a purchaser and consumer of Seprafilm, is within the class of persons the statutes and regulations ... are designed to protect and [his] injury is of the type of harm these statutes are designed to prevent." (*Id.* at ¶ 44, 163 Ill.Dec. 502, 581 N.E.2d 656.) Plaintiff further alleges that his injuries resul-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)
(Cite as: 2008 WL 2940811 (N.D.Ill.))

ted from the violation of the statutes. (*Id.* at ¶ 47, 163 Ill.Dec. 502, 581 N.E.2d 656.)

In response to the Complaint, Defendant contends that the regulations in 21 C.F.R. §§ 201.56 and 201.57 do not apply to medical devices such as Seprafilm. (Def.'s Memo. in Supp. of Mot. to Dismiss 7.) Defendant is correct that these regulations apply to "human prescription drug and biological products," not medical devices. 21 C.F.R. §§ 201.56; 201.57. The statutory regulations for Class III medical devices are defined in § 360 of the FD-CA, as Plaintiff now acknowledges. (Pl.'s Resp. to Def.'s Mot. to Dismiss 10-11.) So far as Plaintiff alleges that Defendant has violated 21 C.F.R. §§ 201.56 and 201.57, Count V of Plaintiff's Complaint must be dismissed for failing to place Defendant on notice of the underlying standard of care, an essential element of a negligence *per se* claim. *See Kalata*, 144 Ill.2d at 434, 163 Ill.Dec. 502, 581 N.E.2d 656.

Plaintiff argues in his Response that, because he also alleged that Defendant violated §§ 301 *et seq* and 331, he has pleaded the applicable statutory regulations for medical devices. (*Id.* at 9-10, 163 Ill.Dec. 502, 581 N.E.2d 656.) Plaintiff suggests that he could amend his Complaint to more specifically allege that Defendant violated the regulations for medical device warnings in 21 C.F.R. 801.1 and 801.6 and the requirements for PMA laid out in 21 U.S.C. § 360(e). (*Id.* at 10, 163 Ill.Dec. 502, 581 N.E.2d 656 .) Such amendment may save this count of Plaintiff's Complaint, but must refer specifically to one or more federal requirements to place Defendant on proper notice of the negligence *per se* claim; if Plaintiff merely reiterates FDCA duties within the context of the PMA, its post-approval implementation, or general reporting requirements, the amended Count V will simply duplicate the claims of Count IV, brought on the basis of overall negligence, and will likely be stricken. *See* Fed.R.Civ.P. 12(f) (enabling a court to strike from a pleading any redundant matter). Therefore,

Count V is DISMISSED.

*c. Breach of Express Warranty*

Count VI of Plaintiff's Complaint alleges that Defendant has breached an express warranty made to Plaintiff, on which Plaintiff relied in using Seprafilm. (Compl.¶¶ 49-50.)

According to Section 2-313 of the UCC, express warranties are created by:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

**\*8** (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

810 ILCS 5/2-313(1)(a)-(c) (West 2006). An express warranty creates an obligation on the part of the seller to deliver goods that conform to the promise, description, or model offered by the seller. *Mydlach v. DaimlerChrysler Corp.*, 226 Ill.2d 307, 320, 314 Ill.Dec. 760, 875 N.E.2d 1047 (2007). The warranty is breached if the goods do not conform. *Id* . at 321, 314 Ill.Dec. 760, 875 N.E.2d 1047.[FN2]

> FN2. Illinois courts have not been consistent in interpreting the "basis of the bargain" language in § 2-313 to require proof that a plaintiff actually relied on the warranty. *Compare Hasek*, 319 Ill.App.3d at 538 ("The burden is on the seller to establish ... that the affirmations did not become

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)
(Cite as: 2008 WL 2940811 (N.D.Ill.))

Page 8

part of the basis of the bargain.), *with Regopoulous v. Waukegan P'ship,* 240 Ill.App.3d 668, 674, 181 Ill.Dec. 384, 608 N.E.2d 457 (1992) (requiring purchaser to prove he "actually relied on the warranty"). In this case, however, the issue is irrelevant because Plaintiff alleges that he relied on the warranty.

Under an express warranty, the language of the warranty itself dictates the obligations of the parties. *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,* 379 F.Supp.2d 968, 983-84 (N.D.Ill.2005); *Hasek v. DaimlerChrysler Corp.,* 319 Ill.App.3d 780, 788, 253 Ill.Dec. 504, 745 N.E.2d 627 (2001). Express warranty claims are not preempted by § 360k, as they arise from representations made by parties as the basis of the bargain between them rather than requirements imposed under state law. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Were a court to hold that, under state law, a defendant had breached an express representation made to a plaintiff, such a holding would not interfere with the operation of the PMA process. *Mitchell,* 126 F.3d at 915.

Defendant contends, however, that Plaintiff's Complaint must be dismissed because it does not contain sufficient factual allegations about the nature of the express warranty to state a claim. (Def.'s Mem. in Supp. of Mot. to Dismiss 8-9.) Defendant is correct that Count VI of Plaintiff's Complaint essentially repeats the elements required to prevail on a claim for breach of express warranty-that a warranty forming part of the basis of the bargain between the parties was breached by the defendant. *See Hasek,* 253 Ill.Dec. 504, 745 N.E.2d at 634. Plaintiff alleges that "Genzyme expressly warranted to Plaintiff by and through statements made ... orally and in publications, package inserts, and other written materials ... that Seprafilm was safe, effective, fit and proper for its intended use." (Compl.¶ 49.) Plaintiff then alleges that he relied on the war-

ranty in using the device and that the warranty was false. (*Id.* at ¶ 50, 253 Ill.Dec. 504, 745 N.E.2d 627.)

The Seventh Circuit has not addressed what is required to state a claim based on breach of express warranty. Even before *Twombly,* however, some courts required that plaintiffs at least mention the particular promise or description that allegedly gave rise to an express warranty. For example, in *Johnson v. Brown & Williamson Tobacco Corp.,* a complaint was insufficient when it stated only that the defendant extended an express warranty through its "advertising, marketing and other efforts." 122 F.Supp.2d 194, 206 (D.Mass.2000). Plaintiff has not pointed this Court to any case suggesting that its allegation that Defendant made "statements ... orally and in publications" is sufficient to state a claim for breach of express warranty. The single case Plaintiff's Response cites in defense of Count VI of his Complaint, *Gelormino v. J.C. Penney Co., Inc.,* actually states that "[s]ince J.C. Penney's allegation of a breach of an express warranty is not supported by any facts, such a mere conclusion of law is legally insufficient." No. CV 960067840, 1997 WL 297601, at *3 (Conn.Super.Ct. May 22, 1997). This unpublished case, moreover, is in no way binding on this Court and has only limited persuasive value.

*9 Post-*Twombly,* the federal pleading standard requires more than "a formulaic recitation of the elements of a cause of action." *Twombly,* ---U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). The Seventh Circuit has indicated that the factual content of a claim may be too "sketchy" to put a defendant on notice. *Killingsworth,* 507 F.3d at 619. In this case, Plaintiff has offered nothing more than a formulaic recitation of the elements required to prevail on a claim and has alleged no facts at all that suggest an express warranty existed. Plaintiff has not specified any particular affirmation, promise, description, or sample that formed part of the basis of his bargain with Defendant. He thus fails to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)
**(Cite as: 2008 WL 2940811 (N.D.Ill.))**

put the Defendant on notice as to the substance of his claim. This seems to be precisely the type of claim that is too indefinite to meet the *Twombly* standard. Count VI of Plaintiff's Complaint is therefore DISMISSED.

## CONCLUSION

In any other instance, a claim of a purported defect related to negligence would likely place Defendant on sufficient notice as to survive dismissal. Within the context of § 360k of the FDCA, however, the word "defect" carries much less meaning, as any such "defect" falling within the scope of the PMA essentially carries no weight for purposes of showing liability under state law. Therefore, the ability of Plaintiff to adequately state a claim according to such allegations is limited, and at present it is not clear that any of his claims might survive those limitations.

During the pendency of a decision on the instant motion to dismiss, Plaintiff amended his complaint. (Docket No. 23.) However, Plaintiff's voluntary amendments as reflected in that document are relatively limited, consisting of: the exclusion of the *strict liability count already withdrawn voluntarily*; expansion of the general negligence claim to include Defendant's design and manufacture of Seprafilm, as well as its failure to adequately and properly warn "Plaintiff's health care provider purchasing Seprafilm"; changes in the negligence *per se* count to shift its statutory basis; and removal of Count VI for breach of implied warranty. (*See generally id.*) Of these, the only significant change impacting this Court's rationale for granting dismissal involves the new basis for Plaintiff's claim of negligence *per se*. However, this claim is still dependent on the purported "defect" that this Court has already found to be lacking in clarity. In the interest of efficiency this Court will not ask the parties to re-argue a motion to dismiss on this one count before Plaintiff has had the opportunity to resolve the

failings identified in this opinion. Therefore, the Amended Complaint does not save Plaintiff's claims, and it is similarly dismissed without prejudice.

For the reasons stated above, Defendant's motion to dismiss is GRANTED. Counts I, II, III, IV, V, VI, and VII of the Complaint are DISMISSED WITHOUT PREJUDICE. Plaintiff's Amended Complaint is also DISMISSED WITHOUT PREJUDICE. Plaintiff will be granted leave to amend his Complaint on or before August 18, 2008 in light of this Opinion.

N.D.Ill.,2008.
Heisner ex rel. Heisner v. Genzyme Corp.
Not Reported in F.Supp.2d, 2008 WL 2940811 (N.D.Ill.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.