IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

CASE NO. 2:09-cv-00025-FL

| | | |
|---|---|---|
| CURTIS HINKLEY, LYNN HINKLEY, and STEPHANIE HINKLEY-LOPEZ, individually, and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **DEFENDANT TOBIN TRADING INC.'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| TAISHAN GYPSUM CO. LTD. f/k/a SHANDONG TAIHE DONGXIN CO. LTD.; TOBIN TRADING INC.; VENTURE SUPPLY INC.; and THE PORTER-BLAINE CORP., | ) ) ) ) ) ) | |
| Defendants. | ) | |

Defendant Tobin Trading Inc. ("Tobin"), by counsel, pursuant to Local Civil Rule

7.1(f)(1), in order to reply to matters initially raised in "Plaintiffs' Response to Tobin Trading

Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" (Dkt. No. 44), states the following:

## OVERVIEW

A.   <u>The New Allegations in Plaintiffs' Response.</u>

For the first time in this proceeding, and in response to Tobin's motion to dismiss for lack

of personal jurisdiction, Plaintiffs allege in conclusory fashion that (i) they "expect to prove

through discovery that Tobin, when distributing the drywall, specifically distributed to suppliers,

including Venture, to which it knew was intending to sell drywall in North Carolina"; (ii) "Tobin

served as a broker for Venture who specifically marketed itself as the supplier of drywall to

Virginia and North Carolina"; (iii) "Tobin also directed business to Venture with full knowledge

that Venture was ultimately going to have products sold in North Carolina"; and (iv) "plaintiffs

**EXHIBIT
4**

believe that defendant Tobin knew, when it served as a broker for Venture and Taichan [sic], that

the Chinese Drywall purchased by Venture was directly going to Virginia and North Carolina"

(Plaintiffs' Response at p. 2-5). Plaintiffs also state in a vague, ambiguous fashion that they

"intend to discover evidence that defendant Tobin ... has other contacts with suppliers who sell

drywall in North Carolina and do business in North Carolina" (Plaintiffs' Response at p. 2).

Plaintiffs have produced no Affidavits or other evidence to support these self-serving,

conclusory allegations, including the allegation that there may be evidence that Tobin knew that

Venture "was ultimately going to have products sold in North Carolina", or that Tobin "has other

contacts with suppliers who sell drywall in North Carolina and do business in North Carolina."

Tobin denies these new allegations, as indicated in the attached Affidavit (Exhibit 1 hereto).

**B.**     **Tobin Denies The New Allegations.**

In December 2005 and May 2006, Venture Supply Inc. purchased approximately 150,000

sheets of gypsum board from Shandong Taihe Dongxin Co., Ltd., which was located in

Dawenkou Daiyue District, Tai'an, China. Tobin assisted with the purchase of the gypsum

board in China, and helped coordinate the shipping of the gypsum board from a port in China to

its destination in Norfolk, Virginia. After the gypsum board was shipped to Norfolk, Virginia,

Tobin had no further involvement. See Exhibit 1, attached hereto.

At all pertinent times, Tobin was informed and advised that the gypsum board would be

stored in Venture's warehouse(s) in Norfolk, Virginia. Tobin had no involvement with

Venture's sale or distribution of the drywall to others, and no knowledge as to where or to whom

Venture might sell or distribute the gypsum board. Assuming *arguendo* that Venture intended to

sell or ship the gypsum board to any customers or buyers in North Carolina, Tobin had no

knowledge of any such intent.

2

Tobin also denies the Plaintiffs' new (albeit vague) allegation that Tobin "has other contacts with suppliers who sell drywall in North Carolina and do business in North Carolina."

Under the circumstances, Tobin Trading Inc. objects to being sued in the Eastern District of North Carolina, and objects to this Court's exercise of personal jurisdiction over Tobin.

## REBUTTAL ARGUMENT

**PLAINTIFFS HAVE NOT MADE A *PRIMA FACIE* SHOWING THAT PERSONAL JURISDICTION EXISTS OVER TOBIN TRADING INC., NOR HAVE THEY DEMONSTRATED THAT TOBIN TRADING INC. HAS SUFFICIENT GENERAL OR SPECIFIC CONTACTS WITH THE STATE OF NORTH CAROLINA FOR THIS COURT TO EXERCISE LONG-ARM PERSONAL JURISDICTION OVER TOBIN.**

A.    **The Legal Standard for Personal Jurisdiction**

In the Fourth Circuit, "[w]hen personal jurisdiction is challenged under Rule 12(b)(2), the jurisdictional question is resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Jensen v. Klayman*, 115 Fed.Appx. 634, 634, 2004 WL 2634521, *1 (4th Cir. 2004) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)) (opinion filed herewith as Exhibit 2).

Under Fed. R. Civ. P. 12(b)(2), a District Court may decide the issue of personal jurisdiction on the basis of affidavits and documentary evidence submitted by the parties, or hold an evidentiary hearing regarding the matter. *See* 4 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure*, § 1351 (3d ed. 2004).

If the District Court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff has the burden of making a *prima facie* showing of personal jurisdiction. *Carefirst Of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). A plaintiff's factual allegations concerning personal jurisdiction are generally sufficient to make a *prima facie*

showing. *Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc.,* 750 F.Supp. 184, 186 (W.D.N.C. 1990)

(citing *Dowless v. Warren-Rupp Houdailles, Inc.,* 800 F.2d 1305, 1307 (4th Cir. 1986)).

However, "[o]nce the party opposing the exercise of jurisdiction presents evidence

indicating that the requisite minimum contacts do not exist, the party bearing the burden to

establish personal jurisdiction must come forward with affidavits or other evidence in support of

its position." *In re Polyester Staple Antitrust Litigation*, MDL Docket No. 3:03CV1516, 2008

WL 906331, *7 (W.D.N.C. 4/1/08) (citing *Anderson v. Dobson,* Case No. 1:06CV2, 2006 WL

1431667, *4 (W.D.N.C. 5/22/06) and *Clark v. Remark,* 993 F.2d 228 (4th Cir. 1993)); *see also*

*Exhibit Icons, LLC v. XP Companies, LLC,* 609 F.Supp.2d 1282, 1291 (S.D. Fla. 2009) ("If by

defendant's affidavits or other competent evidence, defendant sustains the burden of challenging

plaintiff's allegations, the plaintiff must substantiate the jurisdictional allegations in the

complaint by affidavits, testimony or documents").

"[A] *prima facie* showing in this context means that 'plaintiff must present evidence

sufficient to defeat a motion for judgment as a matter of law.'" *In re Polyester Staple Antitrust*

*Litigation, supra* (citing *Reese Bros., Inc. v. U.S. Postal Service,* 477 F.Supp.2d 31, 36 (D.D.C.

2007)). As noted by one district court, "a *prima facie* showing must be based on affirmative

proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific

facts." *Liska v. Macarro,* Slip Copy, Case No. 08-CV-1872IEG(POR), 2009 WL 2424293, *4

(S.D. Cal. 8/5/09) (citing 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1067.6 (3rd ed. 2002)) (opinion filed herewith as Exhibit 3).

Another district court has summarized the legal standard applicable to a motion to

dismiss under Rule 12(b)(2), as follows:

> Plaintiffs have the initial burden of establishing "a *prima facie* case of personal
> jurisdiction over a nonresident defendant." *Meier v. Sun Int'l Hotels, Ltd.,* 288

4

F.3d 1264, 1268-69 (11th Cir. 2002). Once that is established, if a defendant challenges personal jurisdiction through affidavits or testimony, the burden shifts back to the Plaintiff to prove jurisdiction. *Id.* at 1269. The Court must only accept facts alleged in the complaint as true if they are uncontroverted by the defendant's evidence. In other words, plaintiff is required "to substantiate the jurisdictional allegations in the complaint by affidavits of other competent proof, and not merely reiterate the factual allegations in the complaint." *Future Technology Today, Inc. v. OSF Healthcare Systems,* 218 F.3d 1247, 1249 (11th Cir. 2000) (quoting *Prentice v. Prentice Colour, Inc.,* 779 F.Supp. 578, 583 (M.D. Fla. 1991)). If the plaintiff fails to refute the defendant's evidence by sworn proof of jurisdiction, the motion to dismiss must be granted. *Venetian Salami Co. v. J.S. Parthenais,* 554 So.2d 499, 502 (11th Cir. 1989).

*Gregory v. EBF & Associates, L.P.,* 595 F.Supp.2d 1334, 1339 (S.D. Fla. 2009).

**B.      The Plaintiffs Have Failed to Meet Their Initial Burden of Establishing a *Prima Facie* Case of Personal Jurisdiction Over Tobin Trading Inc.**

In order to defeat Tobin's motion to dismiss under Rule 12(b)(2), Plaintiffs must make a *prima facie* showing that includes specific averment of facts (as opposed to conclusions) that, if proven, would suffice to establish jurisdiction over Tobin Trading Inc. Plaintiffs have only asserted conclusory, vague allegations that, without more, are insufficient to make out a *prima facie* case of personal jurisdiction.

On this point, the case of *Panda Brandywine Corp. v. Potomac Elec. Power,* 253 F.3d 865 (5th Cir. 2001) is instructive. In that case, the Fifth Circuit upheld a district court's decision to exclude uncontroverted assertions offered to show personal jurisdiction over a nonresident defendant because those assertions were conclusory. 252 F.3d at 868-69. The only evidence offered to establish personal jurisdiction was the plaintiffs' "state court petition, which allege[d] 'on information and belief' that [defendant] knew [plaintiffs] are Texas residents and knew its actions would intentionally cause harm to [plaintiffs] in Texas." *Id.* at 869. The Fifth Circuit held that the district court properly concluded that these allegations were "merely conclusory"

and failed to establish a *prima facie* case that the nonresident defendant had purposefully availed itself of the benefits and protections of and minimum contacts with the State of Texas. *Id.*[1]

In this case, Plaintiffs' sole ground for asserting personal jurisdiction is their conclusory allegation that they "believe that defendant Tobin knew, when it served as a broker for Venture and Taichan [sic], that the Chinese Drywall purchased by Venture was directly going to Virginia and North Carolina" (Plaintiffs' Response at p. 5 n. 1). This is insufficient for a *prima facie* showing of personal jurisdiction over Tobin Trading Inc. The record does not present a factual dispute that would be resolved in Plaintiffs' favor.[2]

Indeed, without more, the Plaintiffs' strained theory of personal jurisdiction has been expressly rejected by the Fourth Circuit. In *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939 (4th Cir. 1994), after her husband died of mesothelioma, the decedent's wife, a Maryland resident, sued both Lorillard, Inc., a cigarette manufacturer and a New York corporation, and Hollingsworth & Vose Co., a filter manufacturer and a Massachusetts corporation, in the federal district court in Maryland. The plaintiff's complaint alleged that Hollingsworth manufactured filter mediums which contained crocidolite asbestos. Hollingsworth manufactured these filters in Massachusetts and then shipped them to Lorillard's cigarette manufacturing plants in Kentucky and New Jersey. Lorillard incorporated the filters containing crocidolite asbestos into cigarettes and marketed them throughout the nation. The plaintiff alleged that Hollingsworth knew or

---

[1] The *Panda Brandywine* Court also held that "even if [plaintiffs'] allegations are not conclusory, they are nonetheless insufficient to establish a prima facie case for jurisdiction over [defendant]," explaining that these allegations "even if true, only relate to the foreseeability of causing injury in Texas, which is not a 'sufficient benchmark' for specific jurisdiction." 252 F.3d at 869; *see also Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 212 (5th Cir. 1999) ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum.").

[2] The same holds true for Plaintiffs vague, conclusory assertion that "Tobin ... has other contacts with suppliers who sell drywall in North Carolina and do business in North Carolina" (Plaintiffs' Response at p. 2).

should have known of the dangers of crocidolite asbestos at the time that the filters were manufactured, and failed to either improve the filters or warn the public.

Hollingsworth moved to dismiss the complaint for lack of personal jurisdiction. Significantly, Hollingsworth admitted when it sold the filters to Lorillard, it knew that those materials would eventually be sold in Maryland (as a component of a cigarette). But Hollingsworth argued that mere knowledge is not sufficient to either confer personal jurisdiction or show that its activity was purposefully directed toward the State of Maryland (and the District Court and Fourth Circuit agreed.)  The plaintiff argued that Hollingsworth subjected itself to personal jurisdiction in Maryland merely by placing the filters into the stream of commerce, knowing that they would be bought by consumers in Maryland, and that Hollingsworth's close relationship with Lorillard subjected it to personal jurisdiction derivatively through Lorillard's contacts. The district court granted Hollingsworth's motion to dismiss, and the plaintiff appealed.

On appeal, the Fourth Circuit in *Lesnick v. Hollingsworth & Vose Co* affirmed. The Court noted that Hollingsworth was a Massachusetts corporation with its principal place of business in Massachusetts that had virtually "no presence in Maryland." 35 F.3d at 946.  The Court specifically rejected the plaintiff's argument that Hollingsworth subjected itself to personal jurisdiction in Maryland merely by placing the filters into the stream of commerce, knowing that they would be distributed to and bought by consumers in Maryland.  The Fourth Circuit explained that the plaintiff "cannot rely simply upon the 'stream of commerce' logic to establish jurisdiction." 35 F.3d at 946.[3]

---

[3] The *Lesnick* Court also rejected the plaintiff's argument that Hollingsworth's close relationship with Lorillard subjected it to personal jurisdiction derivatively through Lorillard's contacts, explaining: "Although [the two companies' close relationship] represents 'additional conduct' beyond the mere sale to Lorillard of filter material, it does not rise to the level of establishing jurisdiction because none of the conduct is in any way directed *toward the state of Maryland.* All

On the record of this case, Plaintiffs have failed to meet their initial burden of establishing a *prima facie* case of personal jurisdiction over Tobin Trading Inc. There are no facts suggesting that Tobin purposefully availed itself of the privilege of conducting activities in North Carolina, invoked the benefits and protections of North Carolina's laws, or purposefully directed its actions or efforts toward North Carolina residents.

**C.    Plaintiffs Have Failed To Refute Tobin Trading Inc.'s Evidence By Sworn Proof Of Jurisdiction.**

Even assuming *arguendo* that Plaintiffs have alleged sufficient facts to make out a *prima facie* case of jurisdiction, that does not end the inquiry. Tobin has challenged personal jurisdiction through affidavits, and therefore the Plaintiffs have the additional burden of producing evidence in order to establish personal jurisdiction. Tobin's evidence directly contradicts the allegations of the complaint and the new allegations in the Plaintiffs' Response, and therefore Plaintiffs must substantiate their jurisdictional allegations by affidavits or other competent proof. But Plaintiffs have produced no Affidavits or other evidence to support their *belief* that Tobin may have known that Venture Supply Inc. intended to sell the drywall in North Carolina, or that Tobin "has other contacts with suppliers who sell drywall in North Carolina and do business in North Carolina." Because the Plaintiffs have failed to refute or contradict Tobin's evidence by sworn proof of jurisdiction, Tobin's motion should be granted.

---

of the listed contacts between Lorillard and [Hollingsworth] relate only to [Hollingsworth's] agreement to supply filters from its plant in Massachusetts to Lorillard in Kentucky and New Jersey. While the result might be different if [Hollingsworth] had changed production to comply with Maryland regulations or if it had set up a customer relations network there ... on the record in this case, we can discover no affirmative action by [Hollingsworth] rising to the level of purposeful availment." 35 F.3d at 946-47.

**D.    The Court Should Deny Plaintiffs' Request For Jurisdictional Discovery.**

Plaintiffs have requested "limited" jurisdictional discovery.  On this record, the Plaintiffs'

request should be denied.

In cases where, as here, "a plaintiff offers only speculation or conclusory assertions about

[a defendant's] contacts with a forum state, a court is within its discretion in denying

jurisdictional discovery."  *Carefirst Of Maryland, Inc., supra,* 334 F.3d at 402; *see also*

*McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir. 1983) (holding that district court did not

abuse its discretion in denying jurisdictional discovery when, "[a]gainst the defendants'

affidavits," plaintiff "offered nothing beyond his bare allegations that the defendants had had

significant contacts with the [forum] state of Maryland" (internal quotation marks omitted)); *ALS*

*Scan Inc. v. Digital Services Consultants, Inc.,* 293 F.3d 707, 716 n. 3 (4th Cir. 2002) (upholding

district court's refusal to allow plaintiff to engage in jurisdictional discovery where plaintiff's

request was based on "conclusory assertions"); *Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259

(M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both

attenuated and based on bare allegations in the face of specific denials made by defendants, the

Court need not permit even limited discovery confined to issues of personal jurisdiction should it

conclude that such discovery will be a fishing expedition."); *Bosdorf v. Vessel "MIRAMAR",*

Case No. 1:98CV00441, 1999 WL 1939261, *4 (M.D.N.C. 2/2/99) ("Because the pleadings

contain no facts which can reasonably establish a *prima facie* case of personal jurisdiction, the

court will deny Plaintiffs' request") (copy of opinion filed herewith as Exhibit 4).[4]

---

[4] *See also Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 562 (9th Cir. 1995); *In re Chocolate Confectionary Antitrust Litigation,* 602 F.Supp.2d 538, 572 (M.D. Pa. 2009) ("General allegations that defendants transact business within the forum do not entitle plaintiffs to jurisdictional discovery; plaintiffs must produce evidence suggesting that discovery will bear fruit").

Plaintiffs' claim of personal jurisdiction is both attenuated and based on bare allegations in the face of specific denials made by Tobin. Plaintiffs have failed to file counter-affidavits or make any concrete offer of proof suggesting that Tobin purposefully availed itself of the privilege of conducting activities in North Carolina, invoked the benefits and protections of its laws, or purposefully directed its actions or efforts toward its residents. The Plaintiffs' request for jurisdictional discovery appears to be a fishing expedition, which should be denied.

Given the absence of contacts between Tobin Trading Inc. and North Carolina, to require Tobin to defend its interests in this State would offend traditional notions of fair play and substantial justice and would exceed the limits of due process. Tobin respectfully prays that this Court grant its Motion to Dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Respectfully submitted this 20th day of August, 2009.

/s/ Theodore I. Brenner
Theodore I. Brenner
*Visiting Attorney Specially Appearing for
Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia 23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 17815

/s/ Alexander S. de Witt
Alexander S. de Witt
*Visiting Attorney Specially Appearing for
Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia 23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 42708

10

/s/ Andrew A. Vanore, III
Andrew A. Vanore, III
*Attorney for Defendant, Tobin Trading Inc.*
Brown, Crump, Vanore & Tierney, L.L.P.
P.O. Box 1729
Raleigh, NC 27602
Phone: (919) 835-0909
Fax: (919) 835-0915
E-mail: drewvanore@bcvtlaw.com
NC State Bar No. 13139

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date electronically filed the foregoing **REPLY MEMORANDUM** with the Clerk of the Court using the CM/ECF system which will then send notification of such filing to the following:

J. Michael Malone
4600 Marriott Dr., Suite 150
Raleigh NC 27612
*Counsel for Plaintiffs*

Roberty Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
*Co-Counsel for Plaintiffs*

Michael D. Hausfeld, Richard S. Lewis,
James J. Pizzirusso, Faris Ghareeb
1700 K Street, N.W., Suite 650
Washington, DC 20006
*Co-Counsel for Plaintiffs*

Arnold Levin, Fred S. Longer and Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
*Co-Counsel for Plaintiffs*

Richard J. Serpe
580 E. Main Street, Suite 310
Norfolk, VA 23510
*Co-Counsel for Plaintiffs*

11

Richard W. Stimson
920 Waters Reach Court
Alpharetta, GA  300022
*Co-Counsel for Plaintiffs*

Thomas M. Buckley
4011 Westchase Blvd., Suite 300
Raleigh, NC  27607
*Counsel for Porter-Blaine Corp.*

/s/ Alexander S. de Witt
Alexander S. de Witt
*Visiting Attorney Specially Appearing for
Defendant, Tobin Trading Inc.*
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com
Virginia State Bar No. 42708

12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Northern Division

| | | |
|---|---|---|
| CURTIS HINKLEY, LYNN HINKLEY, and STEPHANIE HINKLEY-LOPEZ, individually, and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:09cv00025-FL |
| TAISHAN GYPSUM CO. LTD. f/k/a SHANDONG TAIHE DONGXIN CO. LTD.; TOBIN TRADING INC.; VENTURE SUPPLY INC.; and THE PORTER-BLAINE CORP. | ) ) ) ) ) | |
| Defendants. | ) ) | |

## AFFIDAVIT OF PHILLIP WILLIAM PERRY, JR.

BEFORE ME, the undersigned authority, on this day personally appeared PHILLIP WILLIAM PERRY, JR., known to me to be the person whose name is subscribed to the following instrument, and, having been first duly sworn, upon his oath deposes and states as follows:

1.      My name is PHILLIP WILLIAM PERRY, JR.  I am of sound mind, over 18 years of age, and I am competent to make this Affidavit.  The statements contained herein are true and correct and are based on my personal knowledge.

2.      As previously stated in my Affidavit dated July 20, 2009, at all pertinent times, I was the President and Registered Agent of TOBIN TRADING INC., which at all pertinent times was a Virginia corporation with its principal place of business in Virginia Beach, Virginia.

3.      I have reviewed the allegations contained in "Plaintiffs' Memorandum of Law in Response to Defendants' Motion to Dismiss for Lack of Jurisdiction," filed August 12, 2009.

4.      In or about December 2005 and May 2006, VENTURE SUPPLY, INC. purchased approximately 150,000 sheets of gypsum board from SHANDONG TAIHE DONGXIN CO., LTD., which was located in Dawenkou Daiyue District, Tai'an, China.

5.      TOBIN TRADING INC. assisted VENTURE SUPPLY, INC. with the purchase of the gypsum board in China, and helped coordinate the shipping of the gypsum board from the port in China to its destination in Norfolk, Virginia.

EXHIBIT
1

6.     After the gypsum board was purchased by VENTURE SUPPLY, INC. and shipped to Norfolk, Virginia, TOBIN TRADING INC. had no further involvement in this matter.

7.     At all pertinent times, TOBIN TRADING INC. was informed and advised that the gypsum board would be stored in a warehouse(s) of VENTURE SUPPLY, INC., in Norfolk, Virginia. TOBIN TRADING INC. had no involvement with VENTURE SUPPLY, INC.'s sale or distribution of the drywall to others, and no knowledge as to where or to whom VENTURE SUPPLY, INC. might sell or distribute the gypsum board.

8.     In their Memorandum filed August 12, 2009, Plaintiffs allege that TOBIN TRADING INC. knew that the gypsum board purchased by VENTURE SUPPLY, INC. "was directly going to Virginia and North Carolina," and knew that VENTURE SUPPLY, INC. intended to sell the gypsum board in North Carolina. These allegations are false. Assuming that VENTURE SUPPLY, INC. intended to sell or ship the gypsum board to any customers or buyers in North Carolina, TOBIN TRADING INC. had no knowledge of any such intent. At all pertinent times, TOBIN TRADING INC. was informed and advised that the gypsum board would be shipped to VENTURE SUPPLY, INC.'s warehouse in Norfolk, Virginia. Beyond that point, TOBIN TRADING INC. had no knowledge as to where or to whom VENTURE SUPPLY, INC. would sell or ship the gypsum board.

9.     In their Memorandum filed August 12, 2009, Plaintiffs suggest that TOBIN TRADING INC. "has other contacts with suppliers who sell drywall in North Carolina and do business in North Carolina." At all pertinent times, and upon information and belief, TOBIN TRADING INC. has had no such "other contacts."

FURTHER, AFFIANT SAYETH NOT.

_____
PHILLIP WILLIAM PERRY, JR.

COMMONWEALTH OF VIRGINIA
CITY / COUNTY  Norfolk , to wit:

Subscribed, sworn to and acknowledged before me, a Notary Public in and for the City / County and State aforesaid, by PHILLIP WILLIAM PERRY, JR. on this 14 day of August, 2009.

_____
Notary Public

CHINA YEBOAH
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES SEPT. 30, 2013
COMMISSION # 7251897

My Commission Expires: 09/30/13

2

Westlaw.

115 Fed.Appx. 634, 2004 WL 2634521 (C.A.4 (Va.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 115 Fed.Appx. 634, 2004 WL 2634521 (C.A.4 (Va.)))**

C

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
Paul Rolf JENSEN, Plaintiff-Appellant,
v.
Larry KLAYMAN, a/k/a Larry E. Klayman, A candidate for the United States Senate from Florida
Defendant-Appellee.
No. 04-1478.

Submitted Oct. 1, 2004.
Decided Nov. 19, 2004.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (CA-03-1600-A).
Paul Rolf Jensen, Appellant pro se. Joseph Ray Price, Arent Fox, P.L.L.C., Washington, D.C., for Appellee.

Before MICHAEL, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.
Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).PER CURIAM:

**\*\*1** Paul Rolf Jensen appeals the district court's order granting the Defendant's motion to dismiss his civil action under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, or in the alternative, under Fed.R.Civ.P. 12(b)(1), because of the parties' agree-

ment to arbitrate the dispute in Florida. Jensen asserts the district court erred in determining he failed to make a prima facie showing of personal jurisdiction over the Defendant, in finding his claims were subject to an arbitration agreement, and in failing to sua sponte transfer his case to the Southern District of Florida. Because we find no reversible error, we affirm.

When personal jurisdiction is challenged under Rule 12(b)(2), the jurisdictional question is resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59-60 (4th Cir.1993). When a district court rules on a pretrial personal jurisdiction motion without conducting an evidentiary hearing, we review the facts in the light most favorable to the plaintiff and determine de novo whether he has made a prima facie showing of personal jurisdiction. *Mitrano v. Hawes,* 377 F.3d 402, 406 (4th Cir.2004). To establish personal jurisdiction over a nonresident defendant through a state long arm statute, a court must first determine that jurisdiction is authorized by state law; if so, the court must next decide whether exercising personal jurisdiction would be consistent with due process. *Id.* (citations omitted).

Virginia's long arm statute extends personal jurisdiction to the limits allowed by due process. *Id.* (citations omitted). Thus, our statutory inquiry merges with our constitutional inquiry. **\*635***Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396-97 (4th Cir.2003). A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.



115 Fed.Appx. 634, 2004 WL 2634521 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 115 Fed.Appx. 634, 2004 WL 2634521 (C.A.4 (Va.)))

L.Ed. 95 (1945) (internal quotation marks omitted).
"A defendant should be able to anticipate being
sued in a court that can exercise personal jurisdic-
tion over him; thus, to justify an exercise of juris-
diction, a defendant's actions must have been
'directed at the forum state in more than a random,
fortuitous, or attenuated way.' " *Mitrano*, 377 F.3d
at 407 (citing *ESAB Group, Inc. v. Centricut, Inc.*,
126 F.3d 617, 625 (4th Cir.1997)).

The standard for determining the existence of per-
sonal jurisdiction over a nonresident defendant var-
ies, depending on whether the defendant's contacts
with the forum state also provide a basis for the
suit. *Carefirst of Md.*, 334 F.3d at 397. If those con-
tacts form the basis for the suit, they may establish
"specific jurisdiction." *Id.* In determining whether
specific jurisdiction exists, the court considers (1)
the extent to which the defendant has purposefully
availed himself of the privilege of conducting activ-
ities in the state; (2) whether the plaintiff's claims
arise out of those activities directed at the state; and
(3) whether the exercise of personal jurisdiction
would be constitutionally reasonable. *Id.* "If,
however, the defendant's contacts with the state are
not also the basis for the suit, then jurisdiction over
the defendant must arise from the defendant's gen-
eral, more persistent, but unrelated contacts with
the state." *Id.* To establish general jurisdiction, the
defendant's activities in the state must have been
"continuous and systematic," a more demanding
standard than is necessary for establishing specific
jurisdiction. *ALS Scan, Inc. v. Digital Serv. Con-
sultants, Inc.*, 293 F.3d 707, 712 (4th Cir.2002)
(citations omitted). Our review of the record con-
vinces us that Jensen failed to make the requisite
prima facie showing of personal jurisdiction.

**2 We also agree with the district court that this
dispute is subject to an arbitration agreement
between the parties. Because the examination of the
scope of an arbitration agreement is primarily a task
of contract interpretation, we review a district
court's determination of the arbitrability of a dis-

pute de novo. *Cara's Notions v. Hallmark Cards*,
140 F.3d 566, 569 (4th Cir.1998). In applying state-
law contract interpretation principles, due regard is
given to federal policy favoring arbitration, and am-
biguities are resolved in favor of arbitration. *Id.* An
agreement to arbitrate in a particular place "is, in
effect, a specialized kind of forum-selection clause
that posits not only the situs of suit but also the pro-
cedure to be used in resolving the dispute." *Scherk
v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S.Ct.
2449, 41 L.Ed.2d 270 (1974). Since its decision in
*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,
92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), "the Su-
preme Court has consistently accorded choice of
forum and choice of law provisions presumptive
validity." *Allen v. Lloyd's of London*, 94 F.3d 923,
928 (4th Cir.1996) (citations omitted). We find the
district court correctly determined Jensen's claims
were covered by an agreement to arbitrate in Flor-
ida.

Finally, Jensen claims the district court erred in
failing to sua sponte transfer this case to the South-
ern District of Florida under 28 U.S.C. § 1631
(2000) once the court determined that it lacked per-
sonal jurisdiction over the Defendant. First, we note
that Jensen waived this claim by failing *636 to
raise it in the district court. *See Muth v. United
States*, 1 F.3d 246, 250 (4th Cir.1993). Moreover,
the district court did not plainly err in failing to
transfer the case, since the parties agreed to arbitra-
tion and Jensen did not establish that a transfer to a
district court in Florida would be in the interest of
justice. *See* 28 U.S.C. § 1631.

Accordingly, we affirm the judgment of the district
court. We grant Appellee's unopposed motions for
leave to file transcripts with his brief and to seal the
parties' briefs. We deny Appellee's motion for sum-
mary affirmance as moot, and we deny Appellee's
motion to seal his motion for summary affirmance.
We dispense with oral argument because the facts
and legal contentions are adequately presented in
the materials before the court and argument would

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

115 Fed.Appx. 634, 2004 WL 2634521 (C.A.4 (Va.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 115 Fed.Appx. 634, 2004 WL 2634521 (C.A.4 (Va.)))**

Page 3

not aid the decisional process.

*AFFIRMED*

C.A.4 (Va.),2004.
Jensen v. Klayman
115 Fed.Appx. 634, 2004 WL 2634521 (C.A.4 (Va.))

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
**(Cite as: 2009 WL 2424293 (S.D.Cal.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
Joseph LISKA, Petitioner,
v.
Mark MacARRO; Mark Calac; Mar Luker; John
Magee; Andrew Masiiel; Donna Baron; Butch
Murphy; and Does 1 to 50, Respondents.
**No. 08-CV-1872IEG(POR).**

Aug. 5, 2009.

Joseph Liska, National City, CA, pro se.

**ORDER:**

**(1) DENYING PETITIONER'S MOTION FOR
DEFAULT JUDGMENT (Doc. No 19); and**

**(2) GRANTING IN PART AND DENYING IN
PART RESPONDENT'S MOTION TO DIS-
MISS THE PETITION (Doc. No. 26)**

IRMA E. GONZALEZ, Chief Judge.

*1 Presently before the Court are Petitioner Joseph
Liska's motion for default judgment (Doc. No. 19,)
and Respondent Donna Baron's [FN1] motion to dis-
miss Petitioner's petition for writ of habeas corpus
pursuant to Federal Rules of Civil Procedure
12(b)(1), 12(b) (2), and 12(b)(6). (Doc. No. 26.)
For the reasons stated herein, the Court denies Peti-
tioner's motion, denies Respondent's Rule 12(b) (1)
motion, and grants Respondent's Rule 12(b)(2) and
12(b)(6) motions.

FN1. Although the complaint names De-
fendant as "Donna Baron," Ms. Baron's

moving papers indicate the proper spelling
of her last name is "Barron." For the sake
of consistency with the petition, this Order
addresses Defendant as "Ms. Baron."

**BACKGROUND**

*I. The Parties*

Petitioner Joseph Liska ("Petitioner"), proceeding
*pro se,* alleges he is a descendant of the Pechanga
Band of Mission Luiseño Mission Indians
("Pechanga Band" or "Tribe").

Respondents Mark Macarro, Mark Calac, Mar
Luker, John Magee, Andrew Masiiel, Donna Baron,
and Butch Murphy are allegedly "enrolled members
of the Pechanga Band." Respondent Baron
("Respondent") is the only Respondent whom Peti-
tioner has served with the complaint.

*II. Factual and Procedural Background*

On February 26, 2005 Petitioner attempted to enter
to the Pechanga Indian Reservation ("The Reserva-
tion") without prior permission from the Tribe.
(Attachment 1 to Petition, "Exclusion Letter.") Mr.
Liska allegedly made false statements to the ranger
on duty at the reservation entrance, claiming he was
lost and sought to promptly turn around his vehicle
and leave. After passing the ranger post, Petitioner
continued into the reservation and did not turn his
vehicle around until a ranger stopped him. The Tri-
bal Council of the Pechanga Band ("Tribal Coun-
cil") found that these actions constituted trespass
and public nuisance and excluded Petitioner from
the reservation pursuant to the Tribe's
"Non-Member Reservation Access and Rental Or-
dinance." The Tribal Council informed Petitioner of
his exclusion in a letter dated May 19, 2005. (*Id.*)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT
3

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
(Cite as: 2009 WL 2424293 (S.D.Cal.))

Page 2

Petitioner additionally alleges he attempted to enter the reservation on August 1, 2006 to pray at his father's gravesite, but tribal rangers refused to let him enter the reservation. (Petition at 7.) The rangers contacted the Riverside County Sheriff's Department, who dispatched a deputy to the scene. The deputy threatened to arrest Petitioner if he did not leave the reservation. (*Id.*)

On October 14, 2008 Petitioner filed a "Complaint [for] Writ of Habeas Corpus." (Doc. No. 1.) The Complaint alleges Respondents illegally banished Petitioner from the Pechanga Band, in violation of the United States Constitution and the American Indian Civil Rights Act of 1968 ("ICRA"), 25 U.S.C. §§ 1301, 1302, and 1303. Petitioner also filed an affidavit in support of his complaint attaching: (1) the exclusion letter; and (2) a letter from the Pechanga Indian Reservation verifying Petitioner's application for enrollment to the Pechanga Band, dated March 15, 2001. (Doc. No. 2.) The latter document explains that his membership application had not been processed due to a "moratorium" enacted by the Pechanga Band. Petitioner prays that the Court issue an order vacating his alleged "conviction for unspecified criminal charges" [FN2] and his banishment from the Tribe. Additionally, Petitioner requests the Court order respondents to provide him with "back pay he should have been receiving" during the membership moratorium period. This "back pay" allegedly consists of "per capita payments" and revenue from "trust land," both of which are "paid to all other members of the Pechanga Band." (Petition at 5.)

> FN2. It is unclear what "criminal charges" Petitioner references with this request. Ostensibly, Petitioner is referring to the Tribal Council's finding of trespass and public nuisance, which gave rise to his alleged "banishment."

*2 On June 15, 2009 Petitioner filed a motion for default judgment against all respondents. (Doc. No.

19.) Respondent Baron filed an opposition. The Court finds Petitioner's motion suitable for disposition without oral argument pursuant to Local Civil Rule 7.1(d)(1).

On June 25, 2009, Respondent Baron ("Respondent") filed the instant motion to dismiss the petition. Petitioner has filed an opposition and Respondent has filed a reply. The Court heard oral argument on Respondent's motion on Monday, July 27, 2009.

## DISCUSSION

### I. Petitioner's Motion for Default Judgment

On October 14, 2008 Petitioner filed his petition for writ of habeas corpus. On March 18, 2009, Petitioner moved for default judgment against Donna Baron (Doc. No. 5,) along with a proof of service indicating Ms. Baron had been served with the petition on February 12, 2009. Petitioner has not submitted proof that he has served any other respondent with the petition, aside from Ms. Baron. On April 2, 2009, the Court issued an order construing Petitioner's request as a motion for entry of default pursuant to Fed.R.Civ.P. 55(a), and granted the motion. The Clerk of Court entered default against Ms. Baron that same day. On May 12, 2009, Ms. Baron filed a motion to set aside the entry of default. (Doc. No. 13.) The Court granted the motion on June 22, 2009. (Doc. No 25.)

On June 15, 2009, before the Court granted Ms. Baron's motion to set aside default, Petitioner filed the instant motion default judgment against all respondents, including Ms. Baron. His motion contends all respondents were properly served with the complaint on February 13, 2009.

### A. Legal Standard

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
**(Cite as: 2009 WL 2424293 (S.D.Cal.))**

Federal Rule of Civil Procedure 55 describes a two-step process by which a default judgment may be entered where the defendant is not an infant, incompetent person, or the United States government. *See* Fed.R.Civ.P. 55(a), (b) (2009); *Bach v. Mason,* 190 F.R.D. 567, 574 (D.Idaho 1999); *see also Eitel v. McCool,* 782 F.2d 1470, 1471 (9th Cir.1986). First, under Rule 55(a), a plaintiff may request the clerk to enter a default against a party upon a showing that the party "has failed to plead or otherwise defend as provided by these rules...." Fed.R.Civ.P. 55(a). After entry of default, and upon application by the plaintiff, a default judgment may then be entered by the clerk or by the Court pursuant to Rule 55(b). *See* Fed.R.Civ.P. 55(b).

*B. Analysis*

As an initial matter, the Court has already set aside the Clerk's entry of default against Ms. Baron. Petitioner's motion for default judgment against Ms. Baron is therefore denied as moot.

As to the rest of the respondents, Petitioner has improperly moved for default judgment without first requesting a Clerk's entry of default against them pursuant to Fed.R.Civ.P. 55(a). However, even if the Court construed Petitioner's motion as a request for entry of default, his request is still denied because there is no proof that any of the remaining respondents have been properly served with the petition. Fed.R.Civ.P. 55(a) provides the clerk must enter a party's default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, *and that failure is shown by affidavit or otherwise* [.]" Fed.R.Civ.P. 55(a) (2009) (emphasis added). Therefore, in order to secure entry of default a plaintiff must make a showing that the defendant(s) have been served with summons and complaint and have failed to respond within the time permitted by the Federal Rules of Civil Procedure. *Accord Geter v. Horning Bros. Mgmt.,* 502 F.Supp.2d 69, 70 (D.Colo.2007)

("In the absence of proof that the individual defendants were properly served with process, no basis exists for entering defaults and granting plaintiff's motion for a default judgment.") Here, Petitioner has not properly secured a Clerk's entry of default before moving for default judgment, and has also failed to offer proof that an entry of default is even warranted. The Court therefore denies his motion for default judgment against respondents Macarro, Calac, Luker, Magee, Masiiel, and Murphy.

*II. Respondent Baron's Motion to Dismiss the Petition*

*3 Respondent's motion to dismiss is based on three theories: lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1); lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2); and failure to state a claim under Fed.R.Civ.P. 12(b)(6).

*A. Subject Matter Jurisdiction*

Petitioner alleges Respondent was "at all times [a] member[ ] of the General Council of the tribe or [was an] individual who [was] given official authority to cause the banishment of Petitioner," and that she caused him to be banished "while acting in her official capacity." (Petition, ¶¶ 7-8.) Respondent argues that because Petitioner sued her in her official capacity, she is protected by the doctrine of sovereign immunity and the Court lacks subject matter jurisdiction over this action.[FN3]

> FN3. Respondent also appears to argue the Court lacks *personal* jurisdiction based on sovereign immunity, but provides no support for this argument beyond briefly invoking Fed.R.Civ.P. 12(b)(2) (2009). Sovereign immunity is an issue underlying subject matter jurisdiction, not personal jurisdiction. *See, e.g. Cook v. AVI Casino Enters.,* 548 F.3d 718, 726 (9th Cir.2008) (upholding dismissal for lack of subject

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
(Cite as: 2009 WL 2424293 (S.D.Cal.))

matter jurisdiction because of tribal sovereign immunity); and *Cook v. Avi Casino Enter.,* 2006 U.S. Dist. LEXIS 78265, at *3 n. 2 (D.Ariz. Oct. 25, 2006) ("tribal sovereign immunity is an issue of subject matter jurisdiction ...."). *Compare Mc-Carthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988) ( "The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction.")

*1. Legal Standard*

"[T]he issue of tribal sovereign immunity is jurisdictional in nature," *Pan American Co. v. Sycuan Band of Mission Indians,* 884 F.2d 416, 418 (9th Cir.1989), and a court must address jurisdictional questions before proceeding to the merits of a case. *Wilbur v. Locke,* 423 F.3d 1101, 1106 (9th Cir.2005). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publishing Co. v. General Tel. & Elect.,* 594 F.2d 730, 733 (9th Cir.1979); *see also* Fed.R.Civ.P. 12(b)(1) (2009). "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or *any other evidence* properly before the court." *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989) (emphasis added). Thus, the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* Because the plaintiff bears the burden of establishing subject matter jurisdiction, no presumption of truthfulness attaches to the allegations of the plaintiff's complaint and the Court must presume it lacks jurisdiction until the plaintiff establishes jurisdiction. *Stock West, Inc. v. Confederated*

*Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989).

*2. Analysis*

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Thus, a tribe may not be sued absent an express waiver or Congressional abrogation of sovereign immunity. *A.K. Management Co. v. San Manuel Band of Mission Indians,* 789 F.2d 785, 789 (9th Cir.1986). With the passage of the ICRA, Congress created a limited mechanism for federal judicial review of tribal actions through the habeas corpus provisions of 25 U.S.C. § 1303.[FN4] *Santa Clara Pueblo,* 436 U.S. at 70. Under § 1303, suits against a tribe are barred by the tribe's sovereign immunity, *Id.* at 59, but "Congress clearly has power to authorize civil actions against *tribal officers,* and has done so with respect to habeas corpus relief in § 1303." *Id.* at 60 (emphasis added).

> FN4. "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." 25 U.S.C. § 1303 (2009).

*4 Respondent's argument that the Tribe's sovereign immunity shields her from Petitioner's habeas corpus claim against her in her official capacity is therefore meritless. Although the cases Respondent cites hold that tribal officials acting within the scope of their authority are immune from suit, none of those cases involve a § 1303 habeas corpus claim. *See Burlington Northern & Santa Fe Ry. v. Vaughn,* 509 F.3d 1085, 1093 (9th Cir.2007) (holding tribal official was immune from suit for declaratory and injunctive relief); *Marceau v. Blackfeet Hous. Auth.,* 455 F.3d 974, 978 (9th Cir.2006) (holding sovereign immunity extended to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
(Cite as: 2009 WL 2424293 (S.D.Cal.))

Page 5

board members of tribal housing authority in a class action seeking declaratory relief, injunctive relief, and damages); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479-480 (9th Cir.1985) (holding tribal officials acting in their representative capacities were immune from a suit for declaratory and injunctive relief). The Court denies Respondent's motion to dismiss the petition under Rule 12(b)(1) for lack of subject matter jurisdiction.

*B. Personal Jurisdiction*

Respondent's papers incorrectly conflate the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b) (2). She apparently contends her arguments for lack of subject matter jurisdiction also establish lack of personal jurisdiction, even though the two inquiries are distinct. Nevertheless, Respondent's contention that she cannot give Petitioner the relief he seeks because she is no longer a Tribal Council member implicates personal jurisdiction, as discussed below.

*1. Legal Standard*

Under Fed.R.Civ.P. 12(b)(2), a court may decide the issue of personal jurisdiction on the basis of affidavits and documentary evidence submitted by the parties,[FN5] or hold an evidentiary hearing [FN6] regarding the matter. See 4 Charles A. Wright & Arthur Miller, Federal Practice and Procedure, § 1351 (3d ed.2004); *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). The court retains broad discretion in determining which procedure to utilize. See, e.g., *Travelers Cas. & Sur. Co. of America v. Telstar Constr. Co.*, 252 F.Supp.2d 917 (D.Ariz.2003). Under either procedure, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir.2002).

    FN5. If the Court considers evidence

presented in documentary evidence, it may order discovery on the jurisdictional issues. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir.2001).

    FN6. At such a preliminary hearing, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence. *Data Disc., Inc. v. Systems Technology Association, Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).

If the motion is based on affidavits and documentary evidence, the plaintiff need only make a prima facie showing of facts establishing personal jurisdiction, "i.e. facts that, if true would support the court's exercise of jurisdiction over the defendant." *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F.Supp.2d 1093, 1100 (C.D.Cal.2007). Uncontroverted allegations in the complaint are accepted as true and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004). Nevertheless, a prima facie showing must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts.[FN7] See 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.6 (3rd ed.2002).

    FN7. Even if Plaintiff makes a prima facie showing, he still must prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial. *Data Disc, Inc.*, 557 F.2d at 1285 n. 2 (citation omitted).

*2. Analysis*

**\*5** The proper respondent in a federal habeas corpus petition is the petitioner's immediate custodian. *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir.1992). However, "[a]s the 'custody' re-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
**(Cite as: 2009 WL 2424293 (S.D.Cal.))**

quirement has expanded to encompass more than actual physical custody, so too has the concept of a custodian as a respondent in a habeas case." *Poodry v. Tonawanda Band of Seneca Indians,* 85 F.3d 874, 899 (2d Cir.), cert. denied, 519 U.S. 1041, 117 S.Ct. 610, 136 L.Ed.2d 535 (1996). Therefore, even if a habeas corpus petitioner under § 1303 is not in actual physical custody he may still " 'name as respondent someone (or some institution) who has both an interest in opposing the petition if it lacks merit, and the power to give the petitioner what he seeks if the petition has merit-namely, his unconditional freedom.' " *Poodry,* 85 F.3d at 899 (citation omitted); *see also Quair v. Sisco,* 359 F.Supp.2d 948, 974 (E.D.Cal.2004) (relying on *Poodry,* 85 F.2d at 899-900 and *Armentero v. I.N.S.,* 340 F.3d 1058, 1064 (9th Cir.2003)) (finding the petitioner had correctly named tribal council members as respondents in § 1303 matter because they were empowered to end the petitioner's restraint by overturning or ceasing to enforce the relevant banishment order).

Respondent submits, and Petitioner does not dispute, that "only the Tribal Council has [the] authority [to offer Petitioner his requested relief]." (Memo. ISO Motion at 2.) Accordingly, if Respondent is a member of the Tribal Council, she would be a proper respondent in this action under *Poodry* and *Quair.* However, Respondent's declaration states she is no longer a member of the Tribal Council or otherwise empowered to take any action with respect to Petitioner's expulsion. (Barron Decl. ISO Motion, ¶¶ 2-3.) At oral argument, Respondent again maintained she was no longer a member of the Tribal Council, and Petitioner did not refute this assertion. Petitioner also did not claim Ms. Baron is otherwise capable of providing him with the relief he seeks. Ms. Baron, therefore, is not the proper respondent in this action.

Federal courts lack personal jurisdiction when a habeas corpus petition fails to name a proper respondent, *see Ortiz-Sandoval v. Gomez,* 81 F.3d

891, 894 (9th Cir.1996) (citing Rule 2(a), 28 U.S.C. foll. § 2254),[FN8] and Ms. Baron is the only respondent who has been served with the petition. Petitioner has therefore failed to properly establish personal jurisdiction. Although the Court may substitute the successor of a party sued in her official capacity under Fed.R.Civ.P. 25(d) (2009),[FN9] such a substitution would be futile in this case because Petitioner cannot state a claim, as is further explained below.

> FN8. Although there is no case holding that failure to name the proper respondent in a § 1303 habeas corpus petition defeats personal jurisdiction, the Court finds this rule is nonetheless applicable because courts deciding § 1303 claims frequently draw on principles of analogous habeas statutes. The Second Circuit has notably held that "the legislative history [of the ICRA] suggests that § 1303 was to be read coextensively with analogous statutory provisions [regarding the scope of federal habeas review]," and that "[c]ourts ... appear to look to the development of law under 28 U.S.C. § 2254 for guidance as to whether habeas relief is available in such matters under § 1303." *Poodry,* 85 F.2d at 891-92. *See also Weatherwax on behalf of Carlson v. Fairbanks,* 619 F.Supp. 294, 296 (D.Mont.1985) ("This court has consistently found the law which has developed with respect to actions for habeas corpus relief under 28 U.S.C. § 2254 to be applicable by analogy to actions founded upon 25 U.S.C. § 1303.")

> FN9. "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
**(Cite as: 2009 WL 2424293 (S.D.Cal.))**

but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution."

*C. Failure to State a Claim*

*1. Legal Standard*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed.R.Civ.P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir.2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co. .*, 80 F.3d 336, 337-38 (9th Cir.1996). To a void a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). In spite of the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The Court recognizes the mandate to construe a *pro se* plaintiff's pleadings liberally in de-

termining whether a claim has been stated. *Ortez v. Washington County*, 88 F.3d 804, 807 (9th Cir.1996).

*6 In ruling on a motion to dismiss for failure to state a claim, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007). If a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995). Leave to amend, however, may be denied where a complaint previously has been amended, or where amendment would be futile. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.1990).

*2. Analysis*

*a. 25 U.S.C. § 1301 and 1302 Claims*

Respondent first challenges Petitioner's claims under 25 U.S.C. §§ 1301 and 1302. Section 1301 merely provides the definitions of various terms of the ICRA, and does not contain provisions capable of being violated. The Court therefore strikes Petitioner's § 1301 cause of action under Fed.R.Civ.P. 12(f)(1) [FN10] as redundant of his other claims.

> FN10. "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f) (2009).

Section 1302 lists a number of substantive constitutional rights afforded to individuals. However, Title I of the ICRA does not establish or imply a federal civil cause of action to remedy violations of § 1302. See *Santa Clara Pueblo*, 436 U.S. at 72; *Poodry*, 85 F.3d at 884 ("*Santa Clara Pueblo* thus precluded federal interpretation of the substantive provisions of the ICRA, except in cases in which the relief

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
(Cite as: 2009 WL 2424293 (S.D.Cal.))

sought could properly be cast as a writ of habeas corpus.") Rather, the ICRA "identifies explicitly only one federal court procedure for enforcement of the substantive guarantees of § 1302: § 1303 makes available to any person 'the privilege of the writ of habeas corpus ..., in a court of the United States, to test the legality of his detention by order of an Indian tribe.' " *Id.* at 882 (quoting 25 U.S.C. § 1303).

Here, Respondent argues Petitioner cannot state a § 1302 claim because the ICRA does not provide an individual civil cause of action under that section. This argument fails because Petitioner's allegations under § 1302 are not independent civil causes of action; they ultimately derive from his alleged "illegal banish[ment]," which, as explained below, is also the basis for his claim for habeas corpus relief under § 1303. Petitioner's ability to assert his § 1302 claims therefore turns on his eligibility for relief under § 1303. The Court addresses this issue further below.

*b. 25 U.S.C. § 1303 Claim*

25 U.S.C. § 1303 (2009) provides, "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." Petitioner alleges he was denied various procedural and substantive rights under the ICRA as a result of the proceedings that resulted in the Tribe's decision to "illegally banish" him from the reservation. He now challenges the legality of this alleged "detention" under § 1303 and alleges the Tribe's actions denied him: (1) his right to free speech, peaceful assembly, and to petition for a redress of grievances under § 1302(1); (2) his right to a trial, to confront adverse witnesses, to be informed of the nature and cause of accusations against him, to produce favorable witnesses, and to an attorney under § 1302(6); (3) his right to be free from cruel and unusual punishment under § 1302(7); (4) his rights to equal protection and due process under §

; and (5) his right to a jury trial under § 1302(10). (Petition at 3-4.)

*7 In order to state a claim for habeas corpus relief under § 1303, Petitioner must successfully allege, *inter alia,* that he is being "detained" within the meaning of the statute. *See Poodry,* 85 F.3d at 889. In *Poodry,* court determined the petitioners' banishment constituted "detention" for purposes of § 1303 because the tribe's revocation of the petitioners' tribal membership and subsequent banishment constituted a significant restraint on their liberty to which other members of the tribe were not subject. *Id.* at 895-97; *Quair,* 359 F.Supp.2d at 969. *Cf Alire v. Jackson,* 65 F.Supp.2d 1124, 1129 (D.Or.1999) (finding a tribe's exclusion of a nonmember "[fell] far short of the severe restraint on liberty suffered by the plaintiffs in Poodry" because the plaintiff "[had] not been stripped of her Indian name, her lands, her tribal citizenship, or her tribal membership, nor [had] she been banished frm her own Tribe's reservation or territory.") Petitioner has cited no authority for the proposition that a nonmember of a tribe who is excluded from a reservation is "detained" as contemplated by § 1303. In fact, Ninth Circuit authority conclusively establishes that "[i]n the absence of treaty provisions or congressional pronouncements to the contrary, the tribe has the inherent power to exclude nonmembers from the reservation." *Quechan Tribe of Indians v. Rowe,* 531 F.2d 408, 410 (9th Cir.1976).

Respondent argues the "detention" requirement has not been satisfied here, because unlike in *Poodry,* "Petitioner was not stripped of his tribal citizenship because he never was a Pechanga Tribal citizen." (Reply at 7.) The Court agrees. Properly focusing on the petition itself and the attached documents for the purposes of Rule 12(b)(6), the petition alleges Petitioner is a "descendent" of the Pechanga Band (Petition at 1), as opposed to a member. Petitioner also attaches a letter from the Tribe indicating that at some point prior to March 15, 2001 he had applied for membership in the Tribe but that his ap-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
**(Cite as: 2009 WL 2424293 (S.D.Cal.))**

plication "ha[d] not been processed due to a moratorium enacted by the Pechanga Band." (Attachment 2 to Petition.) Plaintiff's affidavit in support of his petition describes the letter as one of "acknowledgment that Petitioner is a descendant of the Pechanga Band of Mission Indians;" not that he is a member of the Tribe. (Liska Affidavit of Supporting Documentation ISO Petition.) Moreover, elsewhere in the petition, Petitioner prays for "per capita payments that he should have been receiving for the last ten years he's been sitting in the tribe's moratorium," (Petition at 8,) further indicating that while Petitioner may self-identify as a tribal member,[FN11] he is not an official member of the Pechanga Band and continues to be subject to the Tribe's moratorium on membership. Petitioner's assertion at oral argument that he is not a tribal member corroborates the Court's reading of the petition.

> FN11. At points in his petition Petitioner claims he was "stripped of his citizenship in the tribe" (Petition at 2,) and that he has "lost individual recognition as a member of a federally recognized indian tribe." (*Id.* at 3.) His conclusory labeling of himself as a tribal member is insufficient to establish a basis for habeas corpus relief under § 1303. See *Twombly*, 550 U.S. 544 at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted).

**\*8** Therefore, Petitioner has not alleged he is an official member of the Pechanga Band. Although the Court sympathizes with Petitioner's situation, he has not sufficiently alleged his exclusion from the Tribe constitutes a restraint on liberty that rises to the level of a "detention" for purposes of § 1303. Further, because Plaintiff *cannot* claim he is a member of the Tribe, it would be futile to amend

his petition to sufficiently allege the "detention" requirement. As such, even if Petitioner had established personal jurisdiction in this case by naming and serving the proper respondent, which he has not, he still could not state a claim under § 1303. The Court therefore dismisses the petition with prejudice.

*c. 18 U.S.C. § 1167 Claim*

As Respondent points out, Petitioner invokes but does not discuss 18 U.S.C § 1167 in his petition. The statute provides:

(a) Whoever abstracts, purloins, willfully misapplies, or takes and carries away with intent to steal, any money, funds, or other property of a value of $ 1,000 or less belonging to an establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission shall be fined under this title or be imprisoned for not more than one year, or both.

(b) Whoever abstracts, purloins, willfully misapplies, or takes and carries away with intent to steal, any money, funds, or other property of a value in excess of $ 1,000 belonging to a gaming establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission shall be fined under this title, or imprisoned not more than ten years, or both.

28 U.S.C. § 1167 (2009). Respondent is correct that this is a criminal statute does that does not provide a private right of action. Even if the Court did have personal jurisdiction in this case, which it does not, Petitioner could not state a claim for relief under this statute.

### CONCLUSION

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424293 (S.D.Cal.)
**(Cite as: 2009 WL 2424293 (S.D.Cal.))**

As discussed herein, the Court denies Petitioner's motion for default judgment and denies Respondent's motion to dismiss the complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). However, the Court grants Respondent's motion to dismiss the petition for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), and alternatively for failure to state a claim under Rule 12(b)(6). The Court also strikes Petitioner's claim for relief under 25 U.S.C. §§ 1301, pursuant to Fed.R.Civ.P. 12(f) (1). The Court dismisses the petition with prejudice.

**IT IS SO ORDERED.**

S.D.Cal.,2009.
Liska v. Macarro
Slip Copy, 2009 WL 2424293 (S.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 1999 WL 1939261 (M.D.N.C.)
(Cite as: 1999 WL 1939261 (M.D.N.C.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, M.D. North Carolina.
Angela BOSDORF, Individually and as the Personal Representative of the Estate and Heirs of Frank Rainer Bosdorf, deceased, and as Mother and Natural Guardian of Dominique Bosdorf, a minor; Dominique Bosdorf, a minor, by and through his Mother and Natural Guardian Angela Bosdorf; Reinhold Bosdorf; Elsbeth Bosdorf; Plaintiffs,
v.
THE VESSEL "MIRAMAR"; Lamar Beach; J & L Enterprises, Inc.; Harry Charles Sinnamon; Judy Ann Sinnamon; Safe Divers, Inc.; and Edwin Osgood Bussey, Defendants.
No. CIV. 1:98CV00441.

Feb. 2, 1999.

William Scott Brannan, Coggin, Hoyle, Blackwood & Brannan, Greensboro, NC, Robert D. Wilson, Sterns & Walker, Oakland, CA, for Angela Bosdorf, individually and as the Personal Representative of the Estate and Heirs of Frank Rainer Bosdorf, deceased, and as Mother and Natural Guardian of Dominique Bosdorf, a minor, plaintiff.

William Scott Brannan, Robert D. Wilson, (See above), for Dominique Bosdorf, a minor, by and through his Mother and Natural Guardian Angela Bosdorf, plaintiff.

William Scott Brannan, Robert D. Wilson, (See above), for Reinhold Bosdorf, plaintiff.

William Scott Brannan, Robert D. Wilson, (See above), for Elsbeth Bosdorf, plaintiff.

Steven B. Epstein, Hunton & Williams, Raleigh, NC, for Vessel" Miramar", the, defendant.

Steven B. Epstein, (See above), Matthew Patrick

McGuire, Hunton & Williams, Raleigh, NC, D. Arthur Kelsey, Hunton & Williams, Norfolk, VA, for Lamar Beach, defendant.

Steven B. Epstein, Matthew Patrick McGuire, D. Arthur Kelsey, (See above), for J & L Enterprises, Inc., defendant.

Steven B. Epstein, Matthew Patrick McGuire, (See above), Wendy T. Cohen, Hunton & Williams, Norfolk, VA, for Harry Charles Sinnamon, defendant.

Steven B. Epstein, Matthew Patrick McGuire, Wendy T. Cohen, (See above), for Judy Ann Sinnamon, defendant.

Steven B. Epstein, Matthew Patrick McGuire, Wendy T. Cohen, (See above), for Safe Divers, Inc., defendant.

Steven B. Epstein, Matthew Patrick McGuire, Wendy T. Cohen, (See above), for Edwin Osgood Bussey, defendant.

*MEMORANDUM OPINION*

BULLOCK, Chief J.

*1 This action is before the court on a motion to dismiss for lack of personal jurisdiction filed by Defendants Harry Charles Sinnamon, Judy Ann Sinnamon, Safe Divers, Inc., and Edwin Osgood Bussey (collectively "Florida Defendants") and on a motion to dismiss the *in rem* action against Defendant The Vessel *"Miramar"* (*"Miramar"*) filed by one of the ship's two owners, Defendant J & L Enterprises, Inc. ("J & L Enterprises"). In response to the latter motion, Plaintiffs have filed a request for abeyance of issuance and delivery of process. For the following reasons, the court will grant Defendants' motions and deny Plaintiffs' request.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT
4

Not Reported in F.Supp.2d, 1999 WL 1939261 (M.D.N.C.)
(Cite as: 1999 WL 1939261 (M.D.N.C.))

Page 2

## FACTS

Plaintiffs' suit arises out of a boating accident which occurred off the coast of Cozumel, Quintana Roo, Mexico. On May 24, 1996, Frank Rainer Bosdorf participated in a supervised dive along with five other persons. As Bosdorf surfaced from a group dive, he was struck by the *Miramar* and died as a result of the wounds inflicted during the collision.

Bosdorf's widow, Angela Bosdorf, brought a wrongful death suit in this court, on May 22, 1998, alleging both diversity jurisdiction and jurisdiction under the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.* Also named as plaintiffs in the complaint are Angela Bosdorf's minor daughter, Dominique Bosdorf, and Frank Bosdorf's parents, Reinhold and Elsbeth Bosdorf. At all relevant times each member of the Bosdorf family resided in, and was a citizen of, Germany.

The Bosdorfs allege that when the accident occurred the Florida Defendants were operating the *Miramar.* More specifically, Plaintiffs contend that Harry Sinnamon was the captain of the *Miramar* and owned and operated Safe Divers, Inc. ("Safe Divers"). Plaintiffs contend as well that Judy Sinnamon and Edwin Bussey were crew members aboard the *Miramar.* Both Harry and Judy Sinnamon are residents of Florida, as is Edwin Bussey. Safe Divers was incorporated in Florida and Sinnamon maintains its principal place of business in Florida. Plaintiffs served Harry and Judy Sinnamon and Safe Divers by substitute process in early September 1998, after twenty-one failed attempts at personal service. Plaintiffs served Edwin Bussey by personal service on July 20, 1998.

The *Miramar* is a propeller-driven fishing boat which operates out of the port of Wrightsville Beach, North Carolina, as well as one or more Florida ports. It is owned by Defendants Lamar Beach, a resident of North Carolina, and J & L Enterprises,

a corporation incorporated in North Carolina with a principal place of business in Sanford, North Carolina. No judicial officer has issued a warrant for the arrest of the *Miramar,* and thus it has not been seized by the court.

Plaintiffs allege that the Florida Defendants negligently and recklessly operated the *Miramar,* thereby causing the vessel to overrun Frank Bosdorf. At the time of the accident, the Florida Defendants worked as the crew of the *Miramar* pursuant to an agreement between Safe Divers and the ship's owners, Beach and J & L Enterprises. As a result of this agreement, the Florida Defendants spent approximately twenty-five per cent (25%) of their time aboard the *Miramar,* and, when the *Miramar* operated out of Wrightsville Beach, the Florida Defendants would live temporarily in North Carolina. At the time of service of process, no such agreement existed between Safe Divers and the *Miramar'* s owners, and the Florida Defendants no longer served as crew of the ship. Other than the expired agreement, the Florida Defendants have no contacts with North Carolina.

**\*2** The Florida Defendants have moved to dismiss Plaintiffs' claims against them for lack of personal jurisdiction. J & L Enterprises has moved to dismiss the *in rem* action against the *Miramar* . In opposing this motion, Plaintiffs have requested that the court hold in abeyance for ninety (90) days issuance and delivery of process.

## DISCUSSION

A. *Personal Jurisdiction over the Florida Defendants*

When a defendant asserts that a court lacks personal jurisdiction over it, the plaintiff must come forward with a *prima facie* showing that personal jurisdiction exists. *Crown Cork & Seal Co., Inc. v. Dockery,* 886 F.Supp. 1253, 1256 (M.D.N.C.1995).

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1939261 (M.D.N.C.)
**(Cite as: 1999 WL 1939261 (M.D.N.C.))**

In deciding whether the plaintiff has made its case, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citing *Combs v. Baker,* 886 F.2d 673, 676 (4th Cir.1989)). The Florida Defendants argue that Plaintiffs have failed to prove that they are subject to personal jurisdiction in North Carolina. The court agrees.

District courts employ a two-step analysis to assess a defendant's challenge to the exercise of personal jurisdiction. First, the court must determine whether North Carolina's long-arm statute, North Carolina General Statutes § 1-75.4, provides a basis for subjecting the defendant to personal jurisdiction in North Carolina. *Vishay Intertechnology, Inc. v. Delta Int'l Corp.,* 696 F.2d 1062, 1064 (4th Cir.1982). If this first element is met, the court then ascertains whether the exercise of personal jurisdiction would offend the Due Process Clause of the United States Constitution. *Id.* It is well established that when engaging in this analysis a court must construe the provisions of North Carolina's long-arm statute liberally to extend to the limits of due process. *Id.* at 1065 (citing *Dillon v. Numismatic Funding Corp. .,* 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)). However, this liberal construction does not serve to nullify the first prong of the analysis. *See Plant Genetic Sys., N.V. v. Ciba Seeds,* 933 F.Supp. 519, 522-23 . (M.D.N.C.1996) (following rule that "both prongs of the test must be analyzed") (citing *English & Smith v. Metzger,* 901 F.2d 36 (4th Cir.1990)); *see, e.g., Barclays Leasing, Inc. v. National Bus. Sys., Inc.,* 750 F.Supp. 184 (W.D.N.C.1990) (determining applicability of three asserted provisions of North Carolina's long-arm statute, before turning to due process considerations).

In the case at bar, Plaintiffs have offered only Section 1-75.4(3) as a basis for asserting jurisdiction over the Florida Defendants under North Carolina's long-arm statute. This provision allows North Carolina to bring a defendant before its courts when that defendant commits an act or omission within North Carolina giving rise to an injury to person or property or to a wrongful death. N.C. Gen.Stat. § 1-75.4(3). Plaintiffs maintain that the agreement between Safe Divers and the *Miramar'* s owners, which caused the Florida Defendants at times to live temporarily in North Carolina and to spend approximately twenty-five per cent (25%) of their time aboard the *Miramar,* places these Defendants within the purview of this section of North Carolina's long-arm statute.

**\*3** This section does not apply, however, because Plaintiffs have pointed to no local act or omission which led to the alleged wrongful death. Frank Bosdorf's injury did not arise out of the Florida Defendants' contract to use a North Carolina boat but, as the Plaintiffs themselves contend, from the negligent operation of that boat. Given that the fateful journey of the *Miramar* began from Florida, the sole connection between the Florida Defendants and North Carolina with respect to Plaintiffs' allegations is their use of a North Carolina-owned vessel. *See* Harry Sinnamon Decl.; Judy Sinnamon Decl. Such a connection is far too attenuated to constitute a "local act" giving rise to a foreign injury under Section 1-75.4(3). *See Lane v. WSM, Inc.,* 575 F.Supp. 1246, 1250 (W.D.N.C.1983) (finding defendant Tri-Son's minor advertising campaign in North Carolina not "so significant that plaintiff's injury can be considered to have 'arisen out of' an act committed in this state by Tri-Son," where North Carolinian suffered injury at dinner and show on Tennessee State Fairgrounds organized by Tri-Son); *Godwin v. Walls,* 118 N.C.App. 341, 455 S.E.2d 473 (1995) (holding Section 1-75.4(3) failed to confer jurisdiction over Maryland defendant on plaintiff's wrongful death claim, where deaths resulted from accident in Virginia caused by tractor trailer operated by defendant and plaintiffs offered only defendant's employment for North Carolina

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1939261 (M.D.N.C.)
(Cite as: 1999 WL 1939261 (M.D.N.C.))

Page 4

company which owned vehicle as local act).

Plaintiffs also suggest general jurisdiction as a basis for exercising personal jurisdiction over the Florida Defendants. Section 1-75.4(1) relates to general jurisdiction and provides that in order for it to apply, "when service of process is made" a defendant must be "engaged in substantial activity within this State." N.C. Gen.Stat. § 1-75.4(1). Substantial activity by a defendant in North Carolina permits a North Carolina court to exercise personal jurisdiction over that defendant, even when plaintiff's claims do not arise out of the activity. But this subsection cannot help Plaintiffs, since the agreement linking the Florida Defendants to the *Miramar* and its owners, and thereby to North Carolina, terminated prior to service of process. *Id. See also Godwin,* 118 N.C.App. at 351-52, 455 S.E.2d 473. Because the business relationship between Safe Divers and the owners of the *Miramar* is no longer in existence, the Florida Defendants no longer serve as crew members aboard the *Miramar* and thus no longer visit North Carolina. *See* Harry Sinnamon Decl., ¶¶ 11, 14-15.

Because no provision of North Carolina's long-arm statute authorizes the court to exercise personal jurisdiction over the Florida Defendants, dismissal of Plaintiffs' case against these Defendants is warranted. *See Lane,* 575 F.Supp. at 1249-50 (dismissing claim against defendant Tri-Son, Inc., where evidence insufficient to trigger Section 1-75.4(3)); *Uniprop Manufactured Hous., Communities Income Fund II v. Home Owners Funding Corp. of Am.,* 753 F.Supp. 1315, 1321 (E.D.N.C.1990) (dismissing claim where plaintiff failed to establish that exercise of jurisdiction under 1-75.4(4)(a) was proper). *Godwin,* 118 N.C.App. 341, 455 S.E.2d 473 (dismissing plaintiff's wrongful death claim against defendant Walls, were no provision of North Carolina's long-arm statute provided basis of jurisdiction). Plaintiffs' failure to satisfy the first prong of personal jurisdiction analysis makes it unnecessary to determine whether the exercise of per-

sonal jurisdiction would comport with due process. *See Lane,* 575 F.Supp. at 1249 ("It is not necessary to engage in a two-step inquiry with regard to defendant Tri-Son, Inc., because the court finds that the North Carolina long-arm statute, as broad as it is, does not permit the exercise of personal jurisdiction over this defendant in this case."); *Uniprop,* 753 F.Supp. at 1321 (holding that plaintiff's "failure to meet the first prong of the test alleviates the need by the court to consider the due process considerations"); *see also* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1068 (Supp.1998).

*4 Plaintiffs have requested that, in the event the court is inclined to grant the Florida Defendants' motion to dismiss, the court defer ruling on the motion until Plaintiffs have had sufficient time to conduct discovery on the issue. The timing of discovery is a matter committed to the sound discretion of the court. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 64 (4th Cir.1993). Because the pleadings contain no facts which can reasonably establish a *prima facie* case of personal jurisdiction, the court will deny Plaintiffs' request. *See id.; Crown Cork & Seal,* 886 F.Supp. at 1260 n. 5.

B. *In Rem Jurisdiction over the Miramar*

Defendant J & L Enterprises has moved to dismiss Plaintiffs' *in rem* action against the *Miramar* for failure to comply with the pleading requirements for admiralty claims set forth in the Supplemental Rules to the Federal Rules of Civil Procedure. Supplemental Rule C(2) provides that, "In actions in rem the complaint shall be verified on oath or solemn affirmation. It shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action." Fed.R.Civ.P. C(2) (Supplemental Rules for Certain Admiralty and Maritime Claims). Plaintiffs' complaint is not verified, and it does not state that the *Miramar* is in

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 1999 WL 1939261 (M.D.N.C.)
**(Cite as: 1999 WL 1939261 (M.D.N.C.))**

the Middle District of North Carolina or that it will be during this action. Supplemental Rule C also requires a vessel subject to an *in rem* proceeding to be served with a warrant of arrest, after a judicial officer reviews the pleadings and determines that the "conditions for an action in rem appear to exist." Fed.R.Civ.P. C(3) (Supplemental Rules for Certain Admiralty and Maritime Claims). No such warrant has been issued.

The deficiencies in Plaintiffs' complaint warrant dismissal of the *in rem* action against the *Miramar*. When a plaintiff fails to file a verified complaint which specifies that the vessel is or shortly will be within the territorial jurisdiction of the court, no *in rem* jurisdiction will lie. *See Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 508 F.2d 1113, 1115-16 (5th Cir.1975); *American Bank of Wage Claims v. Registry of the District Court of Guam*, 431 F.2d 1215, 1218-19 (9th Cir.1970); *Francosteel Corp. v. M/V Charm*, 825 F.Supp. 1074, 1081 (S.D.Ga.1993) ("Where the vessel will not be present in the district during the pendency of the action, the court should dismiss the action for lack of *in rem* jurisdiction."). Given the Middle District's location, it seems improbable that the *Miramar* ever will find its way into the rolling hills of the Piedmont.

These deficiencies doom Plaintiffs' claims against the *Miramar* before they can begin. The verified complaint provides the basis for serving a warrant of arrest upon a vessel. If a vessel is not arrested, the court lacks jurisdiction to act upon it. *See Goodman v.1973 26 Foot Trojan Vessel, Arkansas Registration No. AR1439SN*, 859 F.2d 71, 74 (8th Cir.1988) ("The first step in an action *in rem* is the filing of a verified complaint that describes the boat and alleges that a maritime lien exists.... [B]efore a court may exercise jurisdiction over a vessel, the vessel must be arrested within the court's territorial jurisdiction."); *Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir.1983) ("In absence of an arrest, no decree *in rem* can be

rendered against the *res.*"); *Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1090 (5th Cir.1982); *see also* 2 Warren B. Daly, Jr., *et al ., Benedict on Admiralty* § 22 at 2-6 (7th ed. 1997) ("The foundation for the effective exercise of jurisdiction *in rem* is the taking of the vessel ... into the custody of the court....").

**\*5** For these reasons, the court will grant the motion of J & L Enterprises to dismiss Plaintiffs' *in rem* action against the *Miramar*.

*C. Plaintiffs' Request for Abeyance of Issuance and Delivery of Process*

Plaintiffs have requested that the court hold in abeyance for ninety (90) days issuance and delivery of process on the *Miramar* under Supplemental Rule E(3)(b). This provision states that "[i]ssuance and delivery of process in rem, or of maritime attachment and garnishment, shall be held in abeyance if the plaintiff so requests." Fed.R.Civ.P. E(3)(b) (Supplemental Rules for Certain Admiralty and Maritime Claims). The court declines to grant Plaintiffs' request because more than ninety (90) days have passed since the request under Rule E(3)(b) was made and because Plaintiffs have not yet shown that the *Miramar* is or shortly will be within the territorial boundaries of this district. *See Norfolk Shipbuilding & Dry Dock Corp. v. USNS Truckee*, 629 F.Supp. 779, 781 (E.D.Va.1985) (denying plaintiff's request for Supplemental Rule E(3)(b) abeyance in action under Suits in Admiralty Act because plaintiff made request the day before trial and thus could not show vessel would be within court's jurisdiction "shortly" after filing of complaint).

CONCLUSION

For the foregoing reasons, the motion of Harry Sinnamon, Judy Sinnamon, Safe Divers, and Edwin Bussey to dismiss Plaintiffs' suit against them for

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1939261 (M.D.N.C.)
**(Cite as: 1999 WL 1939261 (M.D.N.C.))**

lack of personal jurisdiction will be granted. The motion of J & L Enterprises to dismiss Plaintiffs' *in rem* action against the *Miramar* also will be granted. Plaintiffs' request for abeyance of issuance and delivery of process will be denied.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

M.D.N.C.,1999.
Bosdorf v. Vessel ""MIRAMAR"
Not Reported in F.Supp.2d, 1999 WL 1939261 (M.D.N.C.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.