# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

| | | |
|---|---|---|
| CURTIS HINKLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) Case 2:09-cv-00025-FL | |
| | ) | |
| TAISHAN GYPSUM CO. LTD., et al. | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' JOINT RESPONSE IN OPPOSITION
TO THE PORTER-BLAINE CORPORATION AND
VENTURE SUPPLY, INC.'S RULE 12(b)(6) MOTIONS

Defendant, the Porter-Blaine Corporation ("Porter-Blaine"), and Defendant, Venture

Supply, Inc. ("Venture")(collectively "Movants"), filed the instant motion requesting that the

Court dismiss the majority of claims against them pursuant to Rule 12(b)(6). In their motions,

Movants challenge the claims for negligence per se, breach of express and/or implied warranties,

private nuisance, unjust enrichment, violation of the North Carolina Consumer Protection Act,

and for equitable/injunctive relief and medical monitoring. Movants do not challenge the

Plaintiffs' negligence claim.[1]

---

[1] Although the economic loss rule is one of the defenses proffered by Movants in their
answer to the Complaint, this defense is highly suspect since Movants are not challenging
Plaintiffs' negligence claims (on these grounds). North Carolina courts has deemed the
economic loss rule inapplicable in the absence of a contractual relationship and/or direct
contractual privity. *See Lord v. Customized Consulting Speciality, Inc.*, 643 S.E.2d 28
(N.C.App. 2007); *see also Hospira Inc. v. Alphagary Corp.*, 671 S.E.2d 7 (N.C.App. Jan. 6,
2009). Indeed, the *Lord* court held the economic loss rule was inapplicable under circumstances
factually analogous to those concerning Plaintiffs' claims against Movants. *See Lord, supra*
(economic loss rule inapplicable for purposes of restricting claims against contractors who
performed services during the construction of the plaintiffs' home).

1

As discussed is detail below, Movants' motion to dismiss should be denied since each and every challenge to the Complaint is infirm.

## I.   FACTUAL BACKGROUND

This is a class action of significant local, national and international importance.[2] The representative plaintiffs, Curtis Hinkley, Lynn Hinkley, and Stephanie Hinkley-Lopez (hereafter the "Hinkley Plaintiffs" or "Plaintiffs") instituted litigation against the manufacturer of their defective drywall, and their American supplier/installer to address the crisis facing these homeowners whose lives were impacted and homes have been damaged through the installation of a defective product constituting the very walls of their homes.

The plaintiffs seek to represent a class of "[a]ll owners and residents of residential homes in the State of North Carolina containing drywall manufactured, sold, distributed, and/or supplied by Taishan Gypsum Co. Ltd., Tobin Trading Inc. and/or Venture Supply, Inc." Complaint ¶25 [hereafter "Comp.¶__"].  The class representatives also seek to represent a subclass consisting of "[a]ll owners and residents of residential homes in the State of North Carolina containing defective drywall built and/or installed by Porter-Blaine Corp." Comp.¶25.

The essence of the Hinkley Plaintiffs' claims is that the drywall installed by Defendant Porter Blaine or supplied by Defendant Venture to be used in the homes of Plaintiffs and the

---

[2] The Judicial Panel on Multidistrict Litigation ("JPML") has consolidated Chinese Drywall litigation before Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana. *See In re Chinese-Manufactured Drywall Products Liability Litigation*, WL 1725973 (JPML June 15, 2009).  Pursuant to CTO-1, the JPML conditionally transferred the instant action to the MDL Court as a tag-along action. *See In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL 2047, CTO-1 (JPML. June 18, 2009).  Although Movants and several other defendants have challenged CTO-1, it is expected that this case will ultimately be transferred to the MDL Court.  Accordingly, it is respectfully submitted that the Court should defer any rulings on the instant motion until after the issue of transfer has been fully resolved.

Plaintiff Class Members is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious gases and causes corrosion to personal property (such as air-conditioner and refrigerator coils, faucets, utensils, electrical wiring, copper, electrical appliances and other metal surfaces and property). Comp.¶¶17-18. The Complaint also alleges that the defective drywall has caused personal injuries to Plaintiffs and the Class Members. Comp.¶¶19-24.

As a result of each of the Defendants' conduct, Plaintiffs and Class Members have incurred or will incur tens of thousands of dollars in damages including, but not limited to: costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries. Comp. ¶23.

Movants are responsible for the Plaintiffs' damages. Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some plaintiffs and Class Members or to builders for use in Plaintiffs' homes. Comp. ¶12. Porter-Blaine is one of Venture's drywall installation contractors and installed defective drywall in Plaintiffs' home, and in other homes, which has resulted in damages to Plaintiffs and Class Members. Comp. ¶15.

The Complaint asserts claims against Venture and Porter-Blaine under Negligence (Count I); Negligence Per Se (Count II); Breach of Express and/or Implied Warranties (Count III); Private Nuisance (Count IV); Unjust Enrichment (Count V); Violation of the North Carolina Consumer Protection Act (Count VI); and for Equitable and Injunctive relief and Medical Monitoring (Count VII). With the exception of the negligence claim, Movants have challenged

3

each and every claim that Plaintiffs have asserted against them.  As explained below, Movants'

arguments are without merit.

## II.   **LEGAL STANDARD.**

This Court recently described the Rule 12(b)(6) standard for dismissal of claims as

follows:

> A motion under Rule 12(b)(6) seeks dismissal on the grounds that
> the complaint challenged fails to state a claim upon which relief
> may be granted.  Federal Rule of Civil Procedure 8(a)(2) requires
> only "a short and plain statement of the claim showing that the
> pleader is entitled to relief."  Fed.R. Civ. Pro. 8(a)(2).  This
> statement must be sufficient to "give the defendant fair notice of
> what the ... claim is and the grounds upon which it rests."  *Bell.Atl.
> Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).  While the factual
> allegations in the complaint need not be detailed, they "must be
> enough to raise a right to relief above the speculative level." *Id.*
> The Fourth Circuit has stated the plaintiff must "set forth facts
> sufficient to allege each element of his claim."  *Dickson v.
> Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002).

> The purpose of a motion to dismiss is to test the legal sufficiency
> of the complaint, not to resolve conflicts of fact or to decide the
> merits of the action.  *Edwards v. City of Goldsboro*, 178 F.3d 231,
> 243 (4th Cir. 1999).  In considering a motion to dismiss, the court
> accepts as true the well-pleaded allegations of the challenged
> complaint and views those allegations in the light most favorable
> to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420
> (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130,
> 1134 (4th Cir. 1993)).  All reasonable factual inferences from the
> allegations must be drawn in the plaintiff's favor.  *Edwards*, 178
> F.3d at 244.  Nevertheless, while the court must take the facts in
> the light most favorable to the plaintiff, the court "need not accept
> the legal conclusions drawn from the facts [or] ... unwarranted
> inferences, unreasonable conclusions, or arguments," *Eastern
> Shore Mkts., Inc. v. J.D. Assocs, Ltd. P'ship*, 213 F.3d 175, 180 (4th
> Cir. 2000); *see also Labram v. Havel*, 43 F.3d 918, 921 (4th Cir.
> 1995) (stating that the court is not required to accept "conclusory
> allegations regarding the legal effect of the facts alleged").

4

*See Warner Bros. Records, Inc. v. Doe*, 2008 WL 5111883, * 2 (E.D.N.C. Dec. 4, 2008)

(Flanagan, J.).

## III.   ARGUMENT.

### A.   Count II Properly Asserts a Negligence Per Se Claim.

Plaintiffs have properly pled negligence per se consistent with the notice pleading

requirement of Fed.R.Civ.P. 8.  That is, the Complaint alleges that Movants breached statutory

duties that were owed to Plaintiffs and Class Members.  *See* Comp.¶¶ 45-49.  While the

Complaint does not specify the statutory duties that were breached, during discovery Plaintiffs

can be asked to identify all statutory duties that Movants failed to observe.[3]  Additional pleading

is unnecessary and exceeds the mandate of Rule 8.

Should the Court disagree and find that further pleading is necessary, leave to amend for

purposes of pleading the statutory duties that were violated should be afforded.  Should leave to

amend be denied, at most Count II should only be dismissed *without* prejudice.

### B.   Count III Properly Asserts a Breach of Warranty Claim.

With regard to Count III, Movants only challenge Plaintiffs' implied warranty of fitness

for particular purpose and express warranty claims.[4]  Since Movants have no basis for

challenging Plaintiffs' implied warranty of merchantability claims, they instead take the position

---

[3] For example, it is submitted that certain of the statutory duties that were breached are those established by the North Carolina Building Code and/or all other state and county building codes.

[4] Movants do not challenge Plaintiffs' common law warranty claims and/or claims for breach of the warranty against structural defects.  *See Eastern Carolina Feed & Seed Co. v. Mann*, 129 S.E.2d 488 (N.C. 1963) (discussing common law warranties); *Hartley v. Ballou*, 209 S.E.2d 776, 783 (N.C. 1974) (discussing warranty against structural defects).

that the Complaint does not allege implied warranty of merchantability claims. *See* Def.Brf. at 4. This assertion is incorrect and should be rejected since the Complaint adequately alleges implied warranty of merchantability claims.

For starters, Count III is headed "Breach of Express and/or **Implied Warranties**". Complaint at 11. The use of the term "implied warranties" should make it clear that Plaintiffs are pursuing more than one implied warranty theory. Beyond the heading of Count III, the allegations that follow demonstrate that Plaintiffs are, in fact, pursuing an implied warranty of merchantability claim. *See* Complaint ¶54 ("The drywall was defective because it was **not fit for the uses intended or reasonably foreseeable by Defendants**; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for **use as a building material**, because it contained defects as set forth herein."). *See also* Complaint ¶54. These assertions make it plain that Plaintiffs are pursuing an implied warranty of merchantability claims as well as an implied warranty of fitness for particular purpose claim..[5] *See* N.C. Gen. Stat. § 25-2-314 (2)(C) (for a good to be merchantable, it must be "fit for the ordinary purposes for which such goods are used"). Since Movants make no direct challenges to Plaintiffs' implied warranty of merchantability claim, the claim is proper and should not be dismissed.[6]

---

[5] "A good may be defective in regards to both the "ordinary purpose" for which it is generally used and the more specific "particular purpose" for which the buyer intends to use it." *Gregory Wood Products, Inc. v. Advanced Sawmill Machinery Equipment, Inc.*, 2007 WL 1825179, * 5, Fn. 4 (W.D.N.C. 2007).

[6] In reality, Movants are making a convenient argument designed to avoid the warranty claims. Movants begin their challenge to the warranty claims by arguing that plaintiffs have failed to allege a breach of implied warranty of merchantability claim. They next argue that Plaintiffs' implied warranty of fitness for particular purpose claim is invalid since the drywall was being used for its ordinary purpose, *i.e.*, that the alleged use of the drywall in this litigation

(continued...)

Movants next argue that Plaintiffs have failed to adequately plead a claim for breach of the implied warranty of fitness for a particular purpose. In support of this argument, Movants contend that the drywall was being used for its "ordinary purpose" as opposed to being used for any "particular purpose". Def.Brf. at 5.

Notwithstanding this semantic argument by Movants, a ruling on this issue is clearly premature since additional evidence is required to determine whether the drywall was being used for "particular purposes". *See Reynold v. Palmer*, 21 F. 433, 443 (C.C.N.C. 1884) (instructing jury that "[w]hether or not an article has been sold for a particular purpose is, indeed, a question of fact"). *See also Warren v. Joseph Harris Co., Inc.*, 313 S.E.2d 901 (N.C.App. 1984) (question of fact existed as to whether cabbage seed sellers expressly warranted that seeds would "winter over" and impliedly warranted that seeds would be suitable for buyers' particular purpose in fall planting and winter growth, precluding directed verdict in buyers' action for damages); *Delta Marine, Inc. v. Whaley*, 813 F.Supp. 414 (E.D.N.C. 1993) (finding that genuine issue of material fact as to whether seller of adhesive which emitted vapors that ignited during repair of vessel had recommended that adhesive be used for job precluded summary judgment on claim for breach of implied warranty of fitness for particular purpose in action against seller).[7]

---

[6](...continued)
would only support a breach of implied warranty of merchantability claim. *See* Def.Brf. at 4-5. Movants cannot have it both ways.

[7] *See also Rogers v. Dow Agrosciencse, LLC*, 2006 WL 3147393, * 8 (W.D.Va. 2006) (with regard to Virginia's version of the implied warranty of fitness for a particular purpose, which is nearly identical to the North Carolina version, the court observed that, "[t]he label for Dow's product is not in evidence, so I cannot assume what the "ordinary purpose" of this product is, and whether that includes aerial spraying, mixing with other chemicals or use on trees."); *Longwall-Associates, Inc. v. Wolfgang Preinfalk GmbH*, 2002 WL 91879, * 3 (W.D.Va. 2002)
(continued...)

7

Finally, Movants contend that the Complaint is devoid of any factual assertions demonstrating that Movants made any express warranties to Plaintiffs and Class Members. This inquiry into the express warranty claims is premature since discovery is necessary to determine the existence and scope of any express warranties provided by Movants. Certainly with regard to Class Members who had direct dealings with Movants, the existence of such express warranties is highly probable. Before this determination can be made, however, the factual record must be developed. Thus, given the existence of factual issues concerning the existence and scope of express warranties, dismissal of the express warranty claims is unwarranted. *See Halprin v. Ford Motor Co.*, 420 S.E.2d 686 (N.C.App. 1992) (overturning grant of motion for summary judgment where there were factual issues concerning plaintiff's express warranty claims).

For the reasons set forth above, the warranty claims should not be dismissed.

**C.     Count IV Properly Asserts a Private Nuisance Claim.**

Movants challenge plaintiffs' private nuisance claim based upon authority related to asbestos and other product liability cases from outside the State of North Carolina. *See City of Manchester v. Nat'l Gypsum Co.*, 637 F.Supp. 646 (D.R.I. 1986); *Tioga Public School District #15 v. U.S. Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993). These courts denied plaintiffs the right to recover in nuisance for a product that was not in the control or possession of the defendants when the nuisance occurred. Plaintiffs have found no controlling case in North Carolina on this point. For the reasons discussed below, the North Carolina Supreme Court is unlikely to adopt a

---

[7](...continued)
(court was unwilling to make factual finding of use for a particular purpose).

position consistent with the authority relied upon by Movants.

North Carolina has broadly defined the realm of private nuisance law. For instance, North Carolina courts have explained that "[t]o recover in nuisance, plaintiffs must show an unreasonable interference with the use and enjoyment of their property." *Whiteside Estates, Inc., v. Highlands Cove, L.L.C.*, 553 S.E.2d 431, 455 (N.C.App. 2001) (citations omitted). "The ownership or rightful possession of land necessarily involves the right not only to the unimpaired condition of the property itself, but also to some reasonable comfort and convenience in its occupation." *Id.* at 437 (internal quotations omitted) (citations omitted). "A person who intentionally creates or maintains a private nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised by him to avoid such injury." *Morgan v. High Penn Oil Co.*, 77 S.E.2d 682, 689 (N.C. 1953) (citations omitted), *declined to follow on other grounds*, *Boldridge v. Crowder Const. Co.*, 108 S.E.2d 215 (N.C. 1959). This broad scope of nuisance law as defined by North Carolina courts suggests the North Carolina Supreme Court would accept the application of existing nuisance principles to defective products.

Where no pronouncement of the common law is readily available, the Supreme Court of North Carolina has often referred to or adopted the Restatement (Second) of Torts for its source of traditional common law causes of action. *See, e.g., Page v. Sloan*, 190 S.E.2d 189, 192-93 (N.C. 1972) (adopting Restatement (Second) of Torts § 411). In the context of liability for nuisance related to defective products, §834 of the Restatement (Second) of Torts recognizes the common law responsibility of a person whose activities cause interference with others' properties even when that person no longer has control of the instrument.

Section 834 states:

9

Persons Carrying on an Activity

> One is subject to liability for a nuisance caused by an activity, not
> only when he carries on the activity but also when he participates
> to a substantial extent in carrying it on.

Restatement (Second) of Torts §834 (1979).

Comment e to §834 further explains the continuing liability for harmful physical

conditions:

> Activities that create a physical condition differ from other
> activities in that they may cause an invasion of another's interest in
> the use and enjoyment of land after the activity itself ceases. When
> the invasion continues only so long as the activity is carried on, a
> person who ceases to have any part in the activity is not liable for
> the continuance of the invasion by others. *But if the activity has
> resulted in the creation of a physical condition that is of itself
> harmful after the activity that created it has ceased, a person who
> carried on the activity that created the condition or who
> participated to a substantial extent in the activity is subject to the
> liability for a nuisance, for the continuing harm.* His active
> conduct has been a substantial factor in creating the harmful
> condition and so long as his condition continues the harm is
> traceable to him. *This is true even though he is no longer in a
> position to abate the condition and to stop the harm. If he creates
> the condition upon land in his possession and thereafter sells or
> leases it to another, he is subject to liability for invasions caused
> by the condition after the sale or lease as well as for those
> occurring before.* When the vendor or lessor has created the
> condition his liability continues until the vendee or lessee
> discovers it and has reasonable opportunity to take effective
> precautions against it.

Restatement (Second) of Torts §834, comment e (1979)(emphasis added).

The reasoning of Comment e should be adopted here. Manufacturers, suppliers and

installers of products have a responsibility to assure consumers that their products do not

interfere with reasonable enjoyment of the consumer's property. Such reasoning has been

adopted by other jurisdictions. A Wisconsin court has held that a purchaser can state a nuisance

10

claim directly against a manufacturer.  *See Northridge Co. v. W.R. Grace & Co.*, 556 N.W.2d

345 (App.1996) (finding asbestos constituted a nuisance).  Applying the longstanding rule that

"one who has erected a nuisance will be responsible for its continuance, even after he has parted

with the title and the possession," the court held that "manufacturers can be liable for a nuisance

long after they relinquish ownership or control over their polluting products." *Northridge*, 556

N.W.2d at 352 (citations omitted).  *See also Friends of the Sakonnet v. Dutra*, 738 F.Supp. 623,

633-34 (D.R.I. 1990) (former septic tank owner liable for past discharges).

     Without direct guidance from the Supreme Court of North Carolina, this Court will have

to predict what that high court would decide.  *See Anderson v. Wise*, 39 F.3d 1175 (4th Cir.

1994).  Since North Carolina abides by a broad definition of nuisance, the nuisance theory

alleged by the Hinkley Plaintiffs should be found to state a claim under North Carolina law.

     **D.**    **Count V Properly Asserts a Claim for Unjust Enrichment.**

     Movants challenge the unjust enrichment claim[8] by arguing Plaintiffs cannot pursue

implied contract theories where there are direct contractual relationships between Class

Members and Movants and/or where Class Members are third-party beneficiaries of contracts

between Movants and developers.  This argument should be rejected.

     First, so far as the Complaint pursues claims on behalf of Class Members who had direct

contractual relationships with Movants, Movants fail to acknowledge that the Complaint is

---

    [8] A claim for unjust enrichment requires showing that: (1) party conferred a benefit on
the other party; (2) the benefit was not conferred officiously, that is, it was not conferred by an
interference in the affairs of the other party in a manner that was not justified in the
circumstances; (3) the benefit was not gratuitous; (4) the benefit is measurable; and (5) the
defendant consciously accepted the benefit.  *See Progressive American Ins. Co. v. State Farm
Mut. Auto. Ins. Co.*, 647 S.E.2d 111, 116 (N.C.App. 2007).

seeking injunctive relief that requests, in part, that the Court "rescind the contracts for Plaintiffs' and Class Members' homes ...". Complaint at ¶ 78. Thus, since Plaintiffs have issued certain challenges to the express contracts, the unjust enrichment theory is being pled as an alternative theory of liability. The Federal Rules of Civil Procedure plainly permit parties to plead in the alternative and to assert inconsistent claims. *See* Fed.R.Civ.P. 8(d)(2), (3); *Park v. American Circuit Breaker Corp.*, 2008 WL 4596234, * 3 (M.D.N.C. 2008) (declining motion to dismiss unjust enrichment claim where express contract had been alleged since parties may plead different theories of liability in the alternative); *Allstate Ins. Co. v. Weir*, 2008 WL 4877047, * 2 (E.D.N.C. 2008) (Fed.R.Civ.P. 8(d)(2), (3) permits parties to plead in the alternative). *See also Keith v. Day*, 343 S.E.2d 562, 571 (N.C.App. 1986) (ruling that a plaintiff who alleged an express contract could plead an implied contract theory, quantum meruit, in the alternative); *James River Equipment, Inc. v. Mecklenburg Utils., Inc.*, 634 S.E.2d 557, 560 (N.C.App. 2006) ("It is well-established that '[l]iberal pleading rules permit pleading in the alternative,' and that theories [for breach of express contract and for quantum meruit] may be pursued in the complaint even if plaintiff may not ultimately be able to prevail on both." (internal quotation omitted)). Accordingly, the unjust enrichment claim should not be dismissed with regard to Class Members who had direct contractual relationships with Movants.

As noted above, Movants also contend that the unjust enrichment claims as to Class Members who were third party beneficiaries of contracts with Movants, "must fail because the existence of a contract regarding the sale of drywall between parties other than the Plaintiffs and/or Class Members precludes the finding of an implied contract regarding the same subject matter." This argument should also be rejected.

12

For starters, the principle case relied upon by Movants, *Vetco Concrete Company v. Troy Lumber Company*, 124 S.E.2d 905 (N.C. 1962), is clearly distinguishable. The plaintiff in *Vetco* entered an express contract to furnish concrete to a third-party. In *Vetco*, unlike the instant action, the plaintiff was a party to the express contract and was attempting to pursue a claim against the third-party beneficiary. For this reason, the plaintiff's contract claims against the other party to the contract were deemed to preclude the plaintiff from pursing implied contract claims against the third-party beneficiary. The circumstances in this case are clearly distinguishable.

Additionally, other North Carolina appellate court opinions since *Vetco* was decided in 1962 have since recognized that a plaintiff may pursue an implied contract theory where that plaintiff is a third-party beneficiary of a contract with the defendant. *See James River*, *supra* (rental company that was a third-party beneficiary of a contract with a general contractor could pursue a quantum meruit claim against that same general contractor). Thus, assuming Movants are correct in arguing that the Complaint pleads that certain Class Members were third-party beneficiaries to contracts between Movants and builders/developers, the Complaint properly asserts an unjust enrichment claim.[9]

Accordingly, the Complaint adequately states a claim for unjust enrichment.

---

[9] The paragraph in the Complaint relied upon by Movants states that, "Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty." *See* Complaint at ¶ 51. The Complaint thus alleges that Class Members were third-party beneficiary to warranties, not third-party beneficiaries to contracts.

13

### E.    Count VI Properly Asserts Violations of the
### North Carolina Consumer Protection Act.

Movants seek to have Count VI dismissed since they argue the "Complaint is entirely devoid of any allegations which would give rise to a valid claim under the Act." Def.Brf. at 12. Movants essentially argue that Count VI should be dismissed since it fails to allege that they made any knowing misrepresentation of fact.

This argument of course misses the point. The point being, under the North Carolina Consumer Protection Act a party may be held liable for failure to disclose a material fact. *See Governors Club, Inc. v. Governors Club Ltd. Partnership*, 567 S.E.2d 781 (N.C.App. 2002) (Gold club corporation stated a claim for unfair and deceptive trade practices against development corporation from which the golf club corporation purchased the newly-constructed golf club facilities, relating to undisclosed latent defects in the construction). *See also First Atlantic Management Corp. v. Dunlea Realty Co.*, 507 S.E.2d 56 (N.C.App. 1998) (Genuine issues of material fact existed as to whether conduct of seller's representative constituted an unfair or deceptive trade practice, precluding summary judgment for seller, where there was evidence that representative knew that the list of property management accounts attached to purchase agreement did not accurately represent the accounts that buyer believed it was purchasing, yet did not tell buyer about this prior to closing.).[10] The Complaint plainly alleges

---

[10] The authority relied upon by Movants implicitly recognizes this same standard for the imposition of liability. *See Wilson v. Dryvit Systems, Inc.*, 206 F.Supp.2d 749, 756 (E.D.N.C. 2002) ("no evidence that Dryvit said or did anything, **or failed to say or do something,** that influenced plaintiffs' decision to clad their home with Fastrak in any relevant way.").

that Movants knowingly/deliberately failed to disclose the defective condition of the drywall.[11] The Movants' failure to disclose the defective nature of the drywall was clearly material and undoubtedly would have influenced class members in their decision to purchase their homes and/or drywall for installation in their homes.  In cases of omission, reliance may be presumed. *See Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153 (1972).[12]  Perhaps for this reason, Movants do not attempt to dispute the materiality of such nondisclosures.

Additionally, contrary to Movants' argument, the Complaint also alleges that Movants made knowing misrepresentations of fact. *See* Comp.¶ 72 ("The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including, but not limited to, the **knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the defective drywall** constitutes violations [sic] of the aforementioned provisions of the North Carolina Consumer Protection Act.").  While Movants argue the Complaint fails to set forth any facts

---

[11] *See* Comp.¶ 72 ("The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including, but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the defective drywall constitutes violations [sic] of the aforementioned provisions of the North Carolina Consumer Protection Act.").

[12] In light of this authority, Movants' argument that Plaintiffs' have failed to adequately plead reliance for purposes of their Consumer Protection claims is misplaced. *See* Def.Brf. at 13 ("there are no allegations [in the Complaint] that any act of omission of the Defendants influenced the plaintiffs' decisions regarding the drywall used in their homes in any way."); Def.Brf. at 14 ("Plaintiffs fail to allege that, had they been possessed of the knowledge that the drywall used in their homes had been imported from China, their actions would have been altered in any way.").  In any event, arguments concerning individual reliance are best reserved for the class certification stage. *See Mornay v. Travelers Ins.*, 2008 WL 2439941, *6 (E.D.La. 2008) (denying motion to dismiss and reserving consideration of defendant's individual reliance argument to class certification stage); *see, e.g., Morris v. Wachovia Securities, Inc.*, 223 F.R.D. 284 (E.D.Va. 2004) (considering actual reliance requirement in the context of class certification).

supporting the assertion that Movants made any "knowing misrepresentation" of quality or other characteristics of the defective drywall, *see* Def.Brf. at 13, Plaintiffs may plead knowledge generally. *See* Fed.R.Civ.P. 9(b) ('knowledge and other conditions of a person's mind may be alleged generally.").[13]

Accordingly, the Complaint adequately pleads a claim under the North Carolina Consumer Protection Act.

### F.   Plaintiffs are Entitled to the Equitable Relief Sought in Count VII.

Movants argue Plaintiffs are not entitled to the equitable relief requested in the Complaint. Count VII requests that defendants be ordered:

> (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program consistent with the requirements of North Carolina law.

*See* Comp.¶ 78.

Movants do not attempt to challenge the second and third forms of equitable relief

---

[13]So far as Movants contend Count VI should be dismissed since it fails to include any allegations "regarding the substance of any alleged misrepresentation ...," *see* Def.Brf. at 13, no such allegation is required for the reasons stated above. Additionally, discovery is clearly warranted to fully investigate all statements by Movants concerning the quality and origin of the defective drywall. Certainly with regard to Class Members who had direct dealings with Movants, it is highly probable that Movants made statements concerning the quality of the drywall that was ultimately furnished. Before this determination can be made, however, the factual record must be developed. Thus, given the existence of factual issues concerning the existence of misrepresentations of fact by Movants, dismissal of such claims is unwarranted. *Taha v. Thompson*, 463 S.E.2d 553, 558 (N.C.App. 1995) (reversing the grant of summary judgment where there were issues of material fact concerning plaintiff's unfair and deceptive trade practices claim).

requested in paragraph seventy-eight (78) of the Complaint. Rather, they only dispute the requests for what they term "repair costs" and the request for medical monitoring. These challenges should be rejected.

First, the allegations in the Complaint requesting what Movants term "repair costs" are properly seeking equitable relief. The portion of the Complaint that Movants challenge on these grounds is requesting that the Court compel Defendants to buy back and rescind the contracts and/or repair and replace the defective drywall. Rather than seeking money damages, the Complaint is asking the Court to order the Defendants to undertake specific performance of "positive acts" involving physically removing and replacing the defective drywall. *See Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2nd Cir. 2003) (mandatory injunction alters the status quo by requiring a party to perform "some positive act."). Hence, such relief is inherently equitable in nature and cannot be accomplished by merely ordering Movants to pay money damages.[14]

Movants next argue that Plaintiffs cannot pursue medical monitoring claims under North Carolina law in light of the Court of Appeals Opinion in *Curl v. American Multimedia, Inc., et al.*, 654 S.E.2d 76 (N.C.App. 2007), which held North Carolina does not recognize medical monitoring claims. As a threshold matter, it should be observed that the North Carolina Supreme Court has not yet ruled on the viability of medical monitoring claims. It should also be observed that the majority of courts now recognize that a plaintiff may recover for medical monitoring even

---

[14] The Complaint alleges that Plaintiffs will suffer "irreparable injury" if the equitable relief requested is not granted, *i.e.*, since Plaintiffs have suffered personal injuries and are being exposed to known hazardous substances.

in the absence of a personal injury.[15] Thus, so far as the court in *Curl* determined the plaintiffs cannot recover medical monitoring expenses in the absence of a present physical injury, this determination is in conflict with the clear weight of authority and the North Carolina Supreme Court is unlikely to follow *Curl*.[16]

Since the *Curl* opinion is against the clear weight of authority, additional analysis of the viability of medical monitoring claims in North Carolina is warranted. North Carolina is likely to recognize a medical monitoring claim in light of its recognition of a parties right to recover future

---

[15] The majority of states recognize medical monitoring actions. *See Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 33-34 (Ariz.Ct.App. 1987) (holding that awards of surveillance costs to monitor the effects of hazardous chemical exposure are allowed in the absence of physical injury); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 822-23 (Cal. 1993) (en banc) (same); *Petito v. A.H. Robins*, 750 So.2d 103, 106-07 (Fla.Ct.App. 2000) (same); *Ayers v. Township of Jackson*, 525 A.2d 287, 314 (N.J. 1987) (same); *Redland Soccer Club, Inc. v. Dep's of the Army*, 696 A.2d 137, 145 (Pa. 1997) (same); *Hansen v. Mountain Fuel Supply*, 858 P.2d 970, 979-81 (Utah 1993) (same); *Bower v. Westinghouse*, 522 S.E.2d 424, 429-30 (W.Va. 1999). *See also In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 852 (3rd Cir. 1990) (concluding that the Pennsylvania Supreme Court would recognize a medical monitoring action without a showing of physical injury); *Martin v. Shell*, 180 F.Supp.2d 313, 323 (D.Conn. 2002) (noting a citation by Connecticut Supreme Court indicating that it would uphold a medical monitoring action without requiring physical injury); *Carey v. Kerr-McGee Chem. Corp.*, 999 F.Supp. 1109, 1119 (N.D.Ill. 1989) (concluding that the Illinois Supreme Court would uphold a claim for medical monitoring without requiring plaintiffs to show actual, present injury); *Bocook v. Ashland Oil, Inc.*, 819 F.Supp. 530, 537-38 (S.D.W.Va. 1993) (concluding that Kentucky law would recognize a medical monitoring action without requiring injury); *Cook v. Rockwell Int'l Corp.*, 755 F.Supp. 1468, 1476-77 (D.Col. 1991) (concluding that the Colorado Supreme Court would probably recognize a medical monitoring cause of action without requiring physical injury).

[16] It should also be observed that the *Curl* opinion does not reject medical monitoring claims where a plaintiff alleges a present physical injury. The court's opinion is clearly limited in so far as it rejects medical monitoring claims where no physical injury has been alleged. *See Curl*, 654 S.E.2d at 81 (rejecting authority cited by plaintiffs for purposes of recognizing medical monitoring claims where "these cases do not address or support a freestanding claim for future medical expenses in the absence of a present injury."). Thus, to the extent Class Members have suffered present physical injuries, allowing them to pursue medical monitoring claims would be consistent with the court's opinion in *Curl*. *See* Comp.¶¶19-24 (alleging that Plaintiffs and Class Members have suffered personal injuries as a result of Defendants' negligence).

medical damages, *see Williams v. Rutherford Freight Lines, Inc.*, 179 S.E.2d 319 (N.D.App. 1971), as well as a parties duty to mitigate damages. *Tripps Restaurants of North Carolina, Inc. v. Showtime Enterprises, Inc.*, 595 S.E.2d 765 (N.C.App. 2004). These well-established tort principles of future medical damages and avoidable consequences/duty to mitigate "support[] the recognition of medical monitoring damages in the field of toxic torts." Taylor, *Public Health Funds: The Next Step in the Evolution of Tort Law*, 21 B.C. Envtl. Aff. L. Rev. 753, 777-778 (1994) ("Medical monitoring damages originated from two traditional tort doctrines, the "avoidable consequences" rule and "allowance of medical expense damages' rule . . . ."). Since North Carolina recognizes both of these principles, the North Carolina Supreme Court is likely to determine that parties may pursue medical monitoring claims. *See* Taylor, *Public Health Funds: The Next Step in the Evolution of Tort Law, supra*.

Accordingly, Count VII of the Complaint adequately pleads equitable claims.

## IV.   **CONCLUSION.**

For the reasons set forth above, Movants' Motions to Dismiss should be denied.

Respectfully submitted,

Dated: August 12, 2009      By:      /s/ J. Michael Malone
     J. Michael Malone, Esquire
     N.C. State Bar No.: 26512
     Hendren & Malone, PLLC
     4600 Marriott Drive
     Suite 150
     Raleigh, NC 27612
     Telephone: (919) 573-1423
     Facsimile:  (919) 420-0475
     *Counsel for Plaintiffs*

Ervin A. Gonzalez, Esquire
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
*Counsel for Plaintiffs*

Richard Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com
*Counsel for Plaintiffs*

Michael D. Hausfeld, Esquire
Richard S. Lewis, Esquire
James J. Pizzirusso, Esquire
Faris Ghareeb, Esquire
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Co-counsel for Plaintiffs*

Arnold Levin, Esquire
Fred S. Longer, Esquire
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Co-counsel for Plaintiffs*

20

Richard W. Stimson, Esquire
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Co-counsel for Plaintiffs*

Robert Gary, Esquire
GARY, NAEGELE & THEADO, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Plaintiffs' Joint Response in Opposition to the

Porter-Blaine Corporation and Venture Supply, Inc.'s Rule 12(b)(6) Motions was served upon all

counsel of record on this 12th day of August, 2009 via the Court's electronic notification system.

I also certify that a true and correct copy of the above response was served on the

following unrepresented party on this 12th day of August, 2009 via Federal Express Service:

> Taishan Gypsum Co., Ltd
> f/k/a Shandong Taihe Dongxin Co., Ltd.
> Dawenkou, Taian
> Shandong, China 271026

> /s/ J. Michael Malone
> J. Michael Malone, Esq.
> N.C. State Bar No.: 26512
> Hendren & Malone, PLLC
> 4600 Marriott Drive
> Suite 150
> Raleigh, NC 27612
> Telephone:  (919) 573-1423
> Facsimile:  (919) 420-0475
> *Counsel for Plaintiffs*