Members' homes, each have suffered damages in the form of economic damages, and the need for injunctive and equitable relief, as set forth herein.

123. Named Plaintiffs, Class Members, and Subclass Members' homes and personal property have sustained the same type of economic damage and potential physical harm due to the defective drywall. Thus, the legal remedies available to named Plaintiffs and the Class and Subclass Members are the same due to the wrongful conduct of Defendants. The Plaintiffs' claims satisfy the typicality requirement.

## ADEQUACY OF REPRESENTATION

124. Named Plaintiffs are adequate representatives of the Class and Subclasses and together with legal counsel will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs have no conflicts with the Class and Subclasses and are committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature to represent them. Named Plaintiffs anticipate no difficulty in the management of this litigation as a class action. Moreover, the class representatives' interests are aligned with the Class and Subclass Members and it is unlikely there will be a divergence of viewpoint.

125. The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products. Counsel will fairly and adequately protect the interests of the Class and Subclasses.

## RULE 23(b)(1) REQUIREMENTS

126. The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass Members that would establish

incompatible standards of conduct for the party opposing the Class and Subclasses; or adjudications with respect to individual Class and Subclass Members that, as a practical matter, would be dispositive of the interests of the other Class and Subclass Members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## RULE 23(b)(2) REQUIREMENTS

127. The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the Class and Subclasses, so that final injunctive relief is appropriate respecting the Class and Subclasses as a whole.

## RULE 23(b)(3) REQUIREMENTS

128. The common questions set forth above predominate over Class and Subclass Members' individual issues.

129. A class action is superior to other methods of dispute resolution in this case. The Class and Subclass members have an interest in class adjudication rather than individual adjudication because of the overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class and Subclass members would protect their rights on their own without this class action case. Management of the Class and Subclasses will be efficient and far superior to the management of individual lawsuits.

## COUNT I
## NEGLIGENCE
### (Against All Manufacturer Defendants Knauf Gips, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan)

130. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

131. Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in the a) design, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling drywall, including a duty to adequately warn of its failure to do the same. Defendants' duty includes, but was not limited to the following:

   a. using reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

   b. using reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein;

   c. using reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

   d. using reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

   e. using reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

   f. using reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

   g. using reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h. using reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i. using reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j. using reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k. adequately warning and instructing the Plaintiffs and Class Members of the Defects associated with drywall;

l. properly manufacturing the drywall to prevent it from containing the Defects as set forth herein;

m. properly selecting the gypsum that did not contain excessive levels of sulfur;

n. recalling or otherwise notifying users at the earliest date that it became known that the drywall was dangerous and Defective;

o. advertising and recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;

p. not misrepresenting that the drywall was safe for its intended purpose when, in fact, it was not;

q. not manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

r. not exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

s. not distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

24

  t. not concealing information from Plaintiffs and Class Members regarding reports of adverse effects associated with drywall;

  u. not improperly concealing and/or misrepresenting information from the Plaintiffs and Plaintiff Class Members and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

  v. otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing Defects as set forth herein.

132. Defendants were negligent and breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall, including a duty to adequately warn of its failure to do the same. Defendants' negligence included, but was not limited to the following:

  a. failing to use reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

  b. failing to use reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein:

  c. failing to use reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

  d. failing to use reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

e. failing to use reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

f. failing to use reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g. failing to use reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h. failing to use reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i. failing to use reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j. failing to use reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k. failing to adequately warn and instruct the Plaintiffs and Class Members of the Defects associated with drywall;

l. failing to properly manufacture the drywall to prevent it from containing the Defects as set forth herein;

m. failing to properly select the gypsum that did not contain excessive levels of sulfur;

n. failing to recall or otherwise notify users at the earliest date that it became known that drywall was dangerous and Defective;

o. advertising and recommending the use of drywall without sufficient knowledge as to its manufacturing Defect and dangerous propensities;

26

p. misrepresenting that drywall was safe for its intended purpose when, in fact, it was not;

q. manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

r. exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

s. distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

t. concealing information from Plaintiffs and Class Members regarding reports of adverse effects associated with drywall;

u. improperly concealing and/or misrepresenting information from the Plaintiffs and Plaintiff Class Members and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

v. failing to otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing Defects as set forth herein.

133. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household

27

items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

134. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

135. Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

    a. an order certifying the case as a class action;

    b. an order appointing Plaintiffs as the Class Representatives of the Class;

    c. an order appointing undersigned counsel and their firms as counsel for the Class;

    d. compensatory damages;

    e. post-judgment interest;

    f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

    g. an award of taxable costs; and,

    h. any and all such further relief as this Court deems just and proper.

## COUNT II
## STRICT LIABILITY
**(Against All Manufacturer Defendants Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan)**

136. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

137. At all times relevant hereto, Defendants were in the business of designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

138. The drywall, including that installed in the homes of Plaintiffs and Class Members were placed by Defendants in the stream of commerce.

139. Defendants knew that the subject drywall would be used without inspection for defects by consumers.

140. Defendants intended that the drywall reach the ultimate consumer, such as Plaintiffs and Class Members, and it indeed reached Plaintiffs and Class Members when it was installed in their homes.

141. When installed in the Plaintiffs and Class Members' homes, the drywall was in substantially the same condition it was when Defendants manufactured, sold, and/or delivered it.

142. At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

143. The subject drywall was not misused or altered by any third parties, Plaintiffs or Class Members.

144. The drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

29

145. The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and damage Plaintiffs' property that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property") and potential health hazards.

146. The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors for drywall that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

147. The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

148. The defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to the Plaintiffs and Class Members.

149. The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct the Plaintiffs and Class Members of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

150. Plaintiffs and Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiffs and Class Members, acting as a

30

reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

151. Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiffs and Class Members.

152. Defendants' defective drywall benefit to Plaintiffs and Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

153. The defects in the drywall, as well as Defendants' failure to adequately warn the Plaintiffs and Class Members of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiffs and Class Members.

154. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

155. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

31

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

   a. an order certifying the case as a class action;

   b. an order appointing Plaintiffs as the Class Representatives of the Class;

   c. an order appointing undersigned counsel and their firms as counsel for the Class;

   d. compensatory damages;

   e. post-judgment interest;

   f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

   g. an award of taxable costs; and,

   h. any and all such further relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF CONSUMER PROTECTION ACTS
**(Against All Manufacturer Defendants Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan)**
**(Against Distributor Defendant Rothchilt)**

156.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

157.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, Louisiana, Alabama, North Carolina, Florida, Virginia, Texas, and Mississippi. *See* L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.*, (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection

32

Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. §75-24-1, *et seq.* (Mississippi Consumer Protection Act).

158.	The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including, but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the defective drywall constitute violation of the aforementioned provisions of the Consumer Protection Acts of the relevant states.

159.	The unconscionable, illegal, unfair and deceptive acts and practices of Defendants violate the provisions of the various Consumer Protection Acts of the jurisdictions in which affected properties are located. Plaintiffs and Class Members have suffered actual damage for which they are entitled to relief pursuant to Consumer Protection Statutes.

160.	As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

161.	As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home

33

due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

    a. an order certifying the case as a class action;

    b. an order appointing Plaintiffs as the Class Representatives of the Class;

    c. an order appointing undersigned counsel and their firms as counsel for the Class;

    d. compensatory damages;

    e. post-judgment interest;

    f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

    g. an award of taxable costs; and,

    h. any and all such further relief as this Court deems just and proper.

<u>**COUNT IV**</u>
**STRICT LIABILITY**
**(Against All Distributor Defendants Rothchilt and Banner Supply)**

162. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

163. At all times relevant hereto, Defendants were in the business of exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

164. The drywall, including that installed in the homes of Plaintiffs and Class Members were placed by Defendants in the stream of commerce.

165. Defendants knew that the subject drywall would be used without inspection for defects by consumers.

166. Defendants intended that the drywall reach the ultimate consumer, such as Plaintiffs and Class Members, and it indeed reached Plaintiffs and Class Members when it was installed in their homes.

167. When installed in the Plaintiffs and Class Members' homes, the drywall was in substantially the same condition it was when Defendants distributed, supplied, sold, and/or delivered it.

168. At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

169. The subject drywall was not misused or altered by any third parties, Plaintiffs or Class Members.

170. The drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, delivered, and/or sold.

171. The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and damage Plaintiffs' property that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property") and potential health hazards.

172. The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors for drywall that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer

35

wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

173. The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

174. The defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to the Plaintiffs and Class Members.

175. The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct the Plaintiffs and Class Members of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

176. Plaintiffs and Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiffs and Class Members, acting as a reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

177. Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiffs and Class Members.

178. Defendants' defective drywall benefit to Plaintiffs and Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

179. The defects in the drywall, as well as Defendants' failure to adequately warn the Plaintiffs and Class Members of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiffs and Class Members.

180. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

181. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

    a. an order certifying the case as a class action;

    b. an order appointing Plaintiffs as the Class Representatives of the Class;

    c. an order appointing undersigned counsel and their firms as counsel for the Class;

    d. compensatory damages;

    e. post-judgment interest;

    f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

    g. an award of taxable costs; and,

    h. any and all such further relief as this Court deems just and proper.

**COUNT V**
**VIOLATION OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**
**(Against Distributor Defendant Banner Supply)**

182. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

183. This is an action for relief under section 501.201, *et.seq.*, Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

184. Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiffs and Class Members are "Consumers" within the meaning of §501.203(7), Florida Statutes.

185. Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

The advertising, soliciting, providing, offering, or distributing of drywall by Defendant to Plaintiffs and Class Members is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

186. Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendant's acts and omissions as well as

38

their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to section 501.204, Florida Statutes.

187. The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiffs and Class Members have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

188. Plaintiffs and Class Members are entitled to recover their reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

189. As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

190. As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

    a. an order certifying the case as a class action;

    b. an order appointing Plaintiffs as the Class Representatives of the Class;

    c. an order appointing undersigned counsel and their firms as counsel for the Class;

    d. compensatory damages;

    e. post-judgment interest;

    f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

    g. an award of taxable costs; and,

    h. any and all such further relief as this Court deems just and proper.

### COUNT VI
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(All Defendant Builder/Developer Defendants Taylor Woodrow, and South Kendall Construction)

191. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

192. Defendants were in privity with Plaintiffs and Class Members.

193. At the times Defendants installed, utilized, supplied, inspected, and/or sold drywall for use in the Plaintiffs and Class Members' homes. Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs and Class Members' homes for use as a building material, and impliedly warranted the product to be fit for that use.

194. Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and were expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which they were sold.