UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION: L |
| | * | |
| **This document relates to case no.:** | * | JUDGE FALLON |
| | * | |
| **10-CV-52 (Bourgeios v. Allstate Indemnity)** | * | MAG. JUDGE WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OF LAW IN SUPPORT OF
## ALLSTATE INDEMNITY COMPANY'S MOTION TO DISMISS

From the face of plaintiffs' Complaint, it is clear they cannot state a claim against defendant Allstate Indemnity Company ("Allstate"). Plaintiffs themselves allege that no applicable Allstate insurance policy was in effect when the alleged damage manifested itself. Under Louisiana law, an insurer whose policies were not in force at the time of manifestation of an alleged loss in these circumstances owes no coverage for the loss. For that simple reason, plaintiffs' Complaint should be dismissed as against Allstate.

## BACKGROUND

Plaintiffs, Patricia Bourgeois and Glenn Bourgeois, commenced this action as a result of Allstate's alleged failure to pay for damages to their property caused by Chinese drywall. According to plaintiffs, they purchased a homeowners insurance policy from Allstate for the period March 23, 2004 to June 25, 2007, Number 915293589. (Complaint, ¶ 7.) Plaintiffs further allege that, after subsequently purchasing homeowners insurance coverage from

150907

further allege that, after subsequently purchasing homeowners insurance coverage from defendant Louisiana Citizens Property Insurance Company, they purchased another homeowners insurance policy from Allstate, Number 931556471, for the period April 24, 2008 to December 1, 2008.  (*Id.*, ¶¶ 9-12.)  Plaintiffs allege they purchased a homeowners policy from defendant ASI Lloyds for the period December 1, 2008 until the present.  (*Id.*, ¶ 13.)[1]

Plaintiffs allege that in April, 2007, they purchased and installed Chinese drywall in their home.  (*Id.*, ¶¶ 16-18.)  According to plaintiffs, unbeknownst to them, the drywall "was contaminated and defective at the time it was installed[.]" (*Id.*, ¶ 19.)  Plaintiffs allege that in the "Spring of 2009 [they] discovered that their home was constructed using Chinese manufactured drywall, which emits odorous gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items and caused physical injuries to Plaintiffs and their families who inhaled such noxious gases." (*Id.*, ¶ 20.)

Plaintiffs allege the physical loss and damage caused by the Chinese drywall has "necessitate[ed] complete replacement of the drywall in the entire home." (*Id.*, ¶ 21.)  According to plaintiffs, they have been deprived of the benefit of insurance coverage for which Allstate was paid a substantial premium," and have suffered economic damage, "particularly associated with their remediation efforts and loss of rental income." (*Id.*, ¶ 28.)  Plaintiffs therefore seek insurance coverage for their alleged losses from Allstate and the other insurer defendants.

---

[1]    It should be noted that Allstate's records demonstrate the Allstate policy in effect for the period March 23, 2004 to June 25, 2007 actually covered a different property, at a different address, from the property at issue in this action.  Nonetheless, even if this policy was applicable to the relevant property, it, like the applicable April 24, 2008 - December 1, 2008 policy, was not in force at the time of the Spring, 2009 manifestation of the alleged property damage.

150907

## **ARGUMENT**

Plaintiffs' Complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim against Allstate.

## I. **Pleading Standards Applicable to Rule 12(b)(6) Motions**

In deciding a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true the well-pleaded allegations in the complaint" and grants the motion if the factual allegations serving as the plaintiff's grounds for entitlement to relief fail to "'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"). A plaintiff's obligation to state the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009) (same principle). Plaintiffs' Complaint fails under this standard.

## II. **Plaintiffs' Claims Against Allstate Should Be Dismissed Because the Complaint Does Not Allege that Any Property Damage Occurred During Allstate's Policy Period[s].**

All plaintiffs' claims against Allstate fail as a matter of law because plaintiffs do not allege that any property damage occurred within the policy periods during which the applicable Allstate policies were allegedly in effect (but see n. 1 regarding the alleged first policy).

3

150907

Louisiana courts have applied the "manifestation" theory in determining whether an occurrence results in property damage during a particular policy period. *See, e.g., Liberty Mut. Ins. Co. v. Jotun Paints, Inc.,* 555 F. Supp. 2d 686, 697 (E.D. La. 2008) (Africk, J.) (citing *Audubon Trace Condo. Ass'n, Inc. v. Brignac-Derbes, Inc.,* 924 So. 2d 1131, 1133 (La. App. 5 Cir. 2006); *Oxner v. Montgomery,* 794 So. 2d 86, 92-93 (La. App. 1 Cir. 2001)); *New Orleans Assets, L.L.C. v. Travelers Prop. Cas. Co.,* 2002 WL 32121257, *2 (E.D. La. 2002) (Feldman, J.); *James Pest Control, Inc. v. Scottsdale Ins. Co.,* 765 So. 2d 485, 490-92 (La. App. 5 Cir. 2000) (holding manifestation theory applied to determine when termite damage occurred).

Under the manifestation theory, property damage is deemed to occur "at the point *when it becomes manifest, or when it is* discovered," rather than at the time of the act causing the damage. *New Orleans Assets,* 2002 WL 32121257, *2 (emphasis added). So, if the property damage does not manifest itself within the policy period for the applicable insurance policy, no coverage is afforded under that policy.

For example, in *New Orleans Assets,* the plaintiff sought insurance coverage for property damage caused by mold to a building the plaintiff owned. The plaintiff had an insurance policy with Travelers with a coverage period of August 15, 2000 to January 1, 2001. After concluding that coverage for the mold property damage at issue should be analyzed under the manifestation theory, the court held that because the manifestation of the mold contamination did not occur during Travelers' policy period, that policy did not cover the damage. *Id,* **2-3.

Similarly, in *Audubon Trace Condominium Ass'n v. Brignac-Derbes, Inc.,* 924 So. 2d 1131 (La. App. 5 Cir. 2006), the plaintiff, a condominium association, filed suit against several

150907

defendants, including the contractor and developer of the condominiums and their insurers, seeking to recover damages resulting from the alleged faulty construction, design, and development of the condominiums. The court concluded the manifestation theory applied, noted that under this theory "property damage is considered to have occurred when it becomes manifest, regardless of when the act from which it resulted occurred," and found that the damage to the condominiums "did not manifest itself during defendant insurance companies' policy periods." *Id.* at 1135. Accordingly, the court flatly rejected the contention that the defendant insurers were required to provide coverage for the alleged loss. *Id.*

In *Korossy v. Sunrise Homes, Inc.*, 653 So. 2d 1215 (La. App. 5 Cir. 1995), *writ denied,* 660 So. 2d 878 (1995), homeowners whose homes were damaged by excessive differential settlement of the foundations sued the subdivision developer, alleging settlement resulted from faulty construction and defective building materials. The court considered whether the developer's insurers were required to provide coverage for the loss. The developer argued that because the homeowners had to prove the defects existed at the time of the sale, and the evidence established the defects arose from construction of the homes' foundations, the date of sale was the appropriate coverage trigger. The court disagreed, stating: "We find the manifestation theory should be applied in this case. The differential settlement resulted from each home's continuous or repeated exposure to the injurious conditions over a course of time, *but the effects of the excessive settlement did not become 'damage' until it was discovered by the homeowners.*" *Id.* at 1226 (emphasis added). The court further explained:

> It is true that what constituted "damage" depended to an extent on
> the perceptions of the individual homeowner, in that one may have

> perceived damage where another perceived only normal wear-and-
> tear, up to the point where any reasonable person would perceive
> "damage." *Nevertheless, we conclude the better rule is to deem
> the occurrence took place when the damage was discovered.*

*Id.* (emphasis added).  Under this approach, the court found coverage existed under the various

insurers' policies only if a homeowner discovered the property damage during that insurer's

policy period. *Id.* & n. 13.

Applying the manifestation principle in *Jotun Paints*, the court found a barge owner's

claim that a coating product sold by the insured caused acceleration of the corrosive process in

its barges did not fall within the scope of coverage under the insured's policy, hence the insurer

had no duty to defend the insured in the owner's products liability action against it.  There, as

here, the damage did not manifest itself during the insurer's policy period.  555 F. Supp. 2d at

701.

*Alberti v. Welco Mfg. of Texas.,* 560 So. 2d 964 (La. App. 4 Cir. 1990), *writ denied,* 565

So. 2d 945 (La. 1990), is also instructive.  There, the plaintiffs began construction of their home

in January, 1985.  In April, sheetrock and sheetrock mud, manufactured by Welco, was placed in

their home.  In late December, 1986, plaintiffs noticed discoloration of the walls in their kitchen.

Travelers, Welco's insurer, argued there was no occurrence during the life of its policy.  The trial

judge concluded the occurrence was the application of the sheetrock mud, since this was when

the "chemical reaction" causing the discoloration of the plaintiffs' wall covering occurred.  The

Court of Appeals disagreed, explaining:  "even if a chemical reaction occurred immediately after

the placement of the sheetrock mud, it is only when this reaction affected the walls that damage

6

envisioned in the policy occurred.   There is no evidence that the wall discoloration occurred before late December, after the policy had lapsed." *Id.* at 965.

Plaintiffs' claims against Allstate plainly fail under all the above case law.   The Complaint itself specifically alleges that the policy periods for the applicable Allstate policies were March 23, 2004 to June 25, 2007 and April 24, 2008 to December 1, 2008.  (Complaint, ¶¶ 7, 11.)  Yet, the Complaint further expressly alleges the property damage resulting from the Chinese drywall did not manifest itself until Spring of 2009 – *i.e.,* well outside Allstate's policy period[s].  (*Id.,* ¶ 20.)[2]  From the face of the Complaint, then, it is clear that plaintiffs have not alleged the occurrence of any property damage during Allstate's policy period[s].   Accordingly, under the above case law, Allstate owes no coverage to plaintiffs for their alleged loss, and all plaintiffs' claims against Allstate should be dismissed.

## CONCLUSION

For all the foregoing reasons, defendant, Allstate Indemnity Company, respectfully requests this Court to enter an Order dismissing plaintiffs' Complaint as against Allstate, with prejudice and without leave to amend.

---

[2]  As noted above, Allstate's records indicate that the first of these two policies did not cover the relevant property, but even if it did its term ended long before manifestation of the alleged damage.

150907

Respectfully submitted,

*/s/ Catherine F. Giarrusso*

_____

Judy Y. Barrasso, 2814
Catherine F. Giarrusso, 29875
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700

*Attorneys for Allstate Indemnity Company*

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 14th day of January, 2009.

*/s/ Catherine F. Giarrusso*

_____

150907

8