1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  CHINESE MANUFACTURED        *    Docket 09-MD-2047
            DRYWALL  PRODUCTS           *
6           LIABILITY LITIGATION        *    January 14, 2010
                                        *
7   This Document Relates to All Cases  *    9:00 a.m.
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

8

9

10              STATUS CONFERENCE BEFORE THE
                 HONORABLE ELDON E. FALLON
11              UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14

     For the PLC:                 Herman Herman Katz & Cotlar, LLP
15                                 BY:  RUSS M. HERMAN, ESQ.
                                        LEONARD A. DAVIS, ESQ.
16                                 820 O'Keefe Avenue
                                   New Orleans, Louisiana 70113
17

18   For the DLC:                 Frilot, LLC
                                   BY:  KERRY J. MILLER, ESQ.
19                                 1100 Poydras Street, Suite 3700
                                   New Orleans, Louisiana 70163
20

21   For the Home Builders        Stone Pigman Walther Wittmann
      and Installers:             BY:  PHILLIP A. WITTMANN, ESQ.
22                                 546 Carondelet Street
                                   New Orleans, Louisiana 70130
23

24   Also Participating:          Dawn M. Barrios, Esq.
                                   Arnold Levin, Esq.
25                                 Michael K. Rozen, Esq.

1   Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                                 500 Poydras Street, Room B-406
2                                New Orleans, Louisiana 70130
                                 (504) 589-7778
3

4

5
    Proceedings recorded by mechanical stenography, transcript
6   produced by computer.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**<u>PROCEEDINGS</u>**

**(January 14, 2010)**

1
2
3     **THE DEPUTY CLERK:**  All rise.

4     **THE COURT:**  Be seated, please.  Good morning, ladies
5 and gentlemen.  Call the first case, please.

6     **THE DEPUTY CLERK:**  MDL 2047, *In Re: Chinese Drywall*.

7     **THE COURT:**  Counsel make their appearance for the
8 record.

9     **MR. HERMAN:**  May it please the Court.  Good morning,
10 Judge Fallon.  Russ Herman for plaintiffs.

11    **MR. MILLER:**  Good morning, Your Honor.  Kerry Miller
12 on behalf of the defense steering committee.

13    **MR. WITTMANN:**  Good morning, Your Honor.  Phil
14 Wittmann for the homebuilders and for the installers.

15    **THE COURT:**  After this, let's everybody use the mic.
16 It looks like we have about 150 people present and we have an
17 equal amount, perhaps more, on the phone.  Let's use the mics
18 so everybody can hear what's being said.

19        I met with the steering committees this morning
20 to discuss the proposed agenda.  I will take it in the order
21 that it is stated.  First, pretrial orders.

22    **MR. HERMAN:**  May it please the Court.  Your Honor, at
23 page 1, there is some clarification Your Honor wanted to make
24 with regard to the orders 1C and 1D about lifting the stays
25 with regard to responsive pleadings.

1          **THE COURT:**  Let me talk about the stays.  When an MDL

2   begins, the transferee judge gets a lot of cases.  Many of

3   those cases had motions attached to it.  Other cases, the

4   motions are anticipated and they are to be filed shortly.  I

5   want everybody's attention at the beginning to be focused on

6   organizational aspects of the case.  I have to stop discovery

7   from continuing so that we can get some structure in place to

8   deal with it as an MDL, so I issue a stay order stopping

9   everything and focusing everybody's attention on structure and

10  some other organizational issues.  After that aspect of the

11  case is over, then I lift the stay.

12          The reason for lifting the stay is to permit

13  people to file answers, to file responses, whatever they need

14  to file.  Now, that doesn't mean that I'm going to immediately

15  devote time to handling those various motions.  What I try to

16  do in a case of this sort is to open the gates, let people file

17  what they need to file, then I see what's filed, and then I

18  group them into various groups that contain similar issues.  I

19  look at each group and make a decision as to which motion best

20  represents that group and I tee that up for hearing.  When I

21  decide that, hopefully it decides similar motions or similar

22  issues or at least gives some guidance to those matters.

23          We are at the stage now where I lifted the stay.

24  Now, there may be some areas that a particular motion needs to

25  be clarified, but I'll deal with that as it's necessary.  The

1    point is that now I've lifted the stay, so anybody who wants to

2    file or needs to file something, they ought to be filing it.

3                   Property inspections is the next item on the

4    agenda.

5         MR. HERMAN:  Your Honor, I'm pleased to report that

6    the intervenors' inspections in *Germano* are complete.

7    Recently, the inspections of intervenors in *Hernandez* are

8    complete.  I personally want to acknowledge on the record the

9    work that the *Germano* and *Hernandez* trial teams and the science

10   committee has done as well as the 60 or more lawyers that

11   showed up last night for our meeting.  I don't have anything

12   further to add as to inspections.

13        THE COURT:  How about from the defense?

14        MR. MILLER:  No, Your Honor.  I think that's correct.

15   The focus has been on *Germano* and *Hernandez*, and those

16   inspections have been conducted at those properties.

17                   There is an issue that Russ and I probably need

18   to discuss pertaining to Crawford & Company.  They were the

19   inspection company.  I think they have been solicited by some

20   other outfits doing drywall inspections.  They were the

21   Court-approved inspector, and they are awaiting guidance from

22   us as to whether they can take some other jobs that wouldn't

23   conflict them out from further court duties.

24        MR. HERMAN:  I will attempt to discuss that with

25   Kerry today.  There is one other issue about Crawford &

1   Company.   The *Hernandez* trial team -- Steve Herman, Skip,

2   Chris, etc. -- have indicated the Hernandez home now looks like

3   Swiss cheese there have been so many inspections and holes cut

4   by government agencies, by intervenors, by our own people.   We

5   would like to have considered, rather than any more samples

6   taken, using the Crawford samples in connection with the

7   preparation of the *Hernandez* trial.

8          **THE COURT:**   Yes.   That was the reason for picking

9   Crawford & Company just so that we are all on the same page.

10  Within several weeks after getting this case, I felt that the

11  first order should be to conduct immediate inspections.   The

12  issue then is who's to conduct the inspections.

13          What we did was put out a notice to any

14  companies that are interested in doing inspections from the

15  Court's standpoint, that they would be appointed by the Court

16  to do the inspections.   Several applied.   I interviewed them.

17  The one that seemed to be the best capable of doing something

18  on a nationwide basis, with sufficient knowledge and

19  experience, was Crawford & Company.   I appointed them.

20          A protocol was designed.   Everybody had input

21  into the protocol, the method for the inspections.   They

22  conducted the inspection, and the protocol was obviously out of

23  sync.   It needed to be clarified.   It needed to be altered to

24  make more sense out of it, so we altered the protocol.   Then

25  they took it back and started working on it and conducting the

1    inspections.

2              They have some good experience in this area, and

3    I haven't heard any problems that anybody has raised about any

4    bias or inexperience or things of that sort.  It seems to me

5    that everybody profits from having someone who has the

6    experience and the capacity to do the inspections.  It seems to

7    me that we ought to utilize that type of grouping for these

8    inspections.

9              Anybody else who does it, I can't obviously tell

10   them not to do it, but if it's going to be used in trial, I

11   suggest that they get the Court's approval first so that I can

12   deal with it.  It doesn't make any sense to me to have 15

13   different groups inspecting a piece of property because, in

14   inspecting, you have to cut holes and remove certain things,

15   and there will be nothing left to the property.  So that

16   creates its own problems.  Who's to pay for that at the end of

17   the day?  We have enough issues in this particular case.  We

18   ought not to try to manufacture other issues.

19             Plaintiff and defendant profile forms.

20             **MR. HERMAN:**  Your Honor, just one issue.  It's not

21   ripe before Your Honor.  There are a number of defendant

22   profile forms that we do not have certified copies of their

23   insurance policies.  We are filing 30(b)(6) notices limited to

24   insurance matters with reference to all of those defendants,

25   and we'll report to you at the next hearing.

1        **THE COURT:**  As I mentioned several times, the purpose

2   of a profile form is to expedite discovery.  If we have to wait

3   for long lists of interrogatories back and forth and waiting

4   for 30 days, another 15 days, and so forth, you will never get

5   through with this case.  In order to expedite matters, I put

6   into place profile forms.  It gives you a quick peek on some

7   significant material from each side.

8        That doesn't mean you can't do interrogatories

9   or it doesn't mean that you have given up your right to do

10  discovery.  It simply is a way of expediting the transfer of

11  information, and it's a cheap way of doing it also.  So it's

12  fast and quick and economical, but I'm serious about it.  The

13  parties have to comply with the Court's order to produce

14  profile forms.

15       Now, we have some situations where the

16  plaintiffs haven't completed the profile forms and I have

17  motions before me to dismiss the case.  I have looked at the

18  material, and there's a question of whether or not people got

19  notice and whether or not the notice was sufficient and things

20  of that sort.  I'm going to continue those motions for the next

21  hearing date because they're legitimate issues.

22       The point I make is that I expect them to put

23  information on the profile forms and supply the profile forms.

24  If the people don't do that, I assume they are not interested

25  in pursuing their case.  The same way from the defendant.  If

1    the defendant fails to supply profile forms, I will entertain

2    motions to dismiss defenses and take whatever steps I need to

3    do there.  It's going to only be effective if the people comply

4    with the profile forms, and I'm serious about it.  That's the

5    Court's position on the profile forms.

6                    Preservation order is the next item.

7                MR. HERMAN:  Nothing new to report, Your Honor.

8                THE COURT:  State/federal coordination, anything on

9    that?

10                MR. HERMAN:  Just one issue for me and then

11   Ms. Barrios will report.  Yesterday, the Louisiana attorney

12   general in CDC No. 2010-392, State of Louisiana district court,

13   filed an action versus Knauf and others in connection with

14   drywall.  The attorney general of Louisiana, Buddy Caldwell, or

15   his representative was invited to appear here today as a

16   courtesy.  So far, we have not heard back.  Both Mr. Miller and

17   myself intend to dialogue in that regard.

18                THE COURT:  I have received a courtesy copy of the

19   material.  It's an issue as to whether or not there's any

20   overlapping or whether or not there's a carve-out for the MDL

21   proceedings.  It looks at first blush that there's a carve-out,

22   but there's also some other words and statements in the

23   pleading that may be in conflict.  I'll have to study that a

24   little bit more.

25                    Of course, the cases need to be served.  If they

1   are served, the issue then is whether or not they can be

2   removed to this Court and consolidated in this particular

3   proceeding.

4           **MR. HERMAN:**  Your Honor, Ms. Barrios is here with

5   regard to state/federal coordination.

6           **THE COURT:**  Okay.

7           **MS. BARRIOS:**  Good morning, Your Honor.  Dawn Barrios

8   for the state/federal committee.  In addition to the Louisiana

9   attorney general's case that Mr. Herman discussed, there was

10  only one other state filing that we had since the last status

11  conference and that is *Silva v. Interior/Exterior*, which was

12  filed in CDC.  On our disc this month, we have all the judges'

13  contact information on those two cases.  There have been no

14  conditional transfer orders since the last status conference

15  and no remands filed.

16          **THE COURT:**  Thank you very much.  I have been in

17  touch with most of the judges in the states that have entered

18  the litigation.  I've established a working relationship with

19  them.  I have several on the line this morning.  They need to

20  know I appreciate all of their help in this matter and look to

21  them for guidance, particularly in the laws of their respective

22  states.  I look forward to working with them in this matter.  I

23  have made available to them all of the orders that the Court

24  has issued and will continue to do so.

25          **MR. MILLER:**  Your Honor, on that issue -- just to use

1    this forum where we have so many people in the courtroom and on

2    the line, something to think about -- my client, Knauf

3    Plasterboard (Tianjin), accepted service of an omnibus

4    complaint filed by the PSC back in December that numbered some

5    2,000 plaintiffs.  It may make sense -- and I offer this as

6    food for thought -- for state court actions in which those same

7    plaintiffs appear in claims against builders or others in the

8    supply chain -- we don't have any against my client, but it may

9    make sense that those actions be stayed or deferred given the

10   fact that there is acceptance of service and there's a

11   2,068-person omnibus complaint proceeding in Your Honor's

12   Court.  I offer it for consideration, judicial efficiency, and

13   streamlining things.

14           **MR. HERMAN:**  May it please the Court.  I'll be happy

15   to discuss it with Mr. Miller and Mr. Wittmann perhaps tomorrow

16   if they are available.

17           Your Honor, with respect to the next item,

18   Item VII --

19           **THE COURT:**  We have several motions in this matter.

20   What I will do is I will take those motions up after our

21   meeting here today.  I'll defer those until after this meeting

22   is over.  Any discovery issues?

23           **MR. HERMAN:**  Your Honor, there are some discovery

24   issues.  One of the motions set for today involves discovery

25   issues.  Discovery and other issues involving *Germano* and

1    *Hernandez*, as I understand it, Your Honor will meet with those

2    trial team leaders following the conference today.

3               **THE COURT:**  That's correct.

4               **MR. HERMAN:**  I did want to point out again for the

5    record that Your Honor's Web site, which posts these hearings

6    and other significant matters in *Drywall*, is at

7    www.laed.uscourts.gov.  We continue to get a number of

8    inquiries.  We refer folks to that Web site,

9    www.laed.uscourts.gov, and then you can reference MDL Docket

10   No. 2047.

11              Your Honor, with regard to Freedom of

12   Information Act public records requests, we have had an

13   exchange with the CPSC, and we understand that they are

14   articulating with other government agencies.  We really have no

15   matter before Your Honor.

16              We have a chart at pages 15 through 20 of

17   Your Honor's status conference report detailing all of the FOIA

18   orders which we are aware of, what the responses are, and what

19   the current situation is.  In light of the *Germano* and

20   *Hernandez* trials, from a PSC point of view and I believe from

21   an intervenor point of view, those issues are not paramount at

22   this time.

23              **MR. MILLER:**  It doesn't appear to be, Your Honor.  We

24   want to thank Mr. Herman's office.  I think they have supplied

25   us with the FOIA information that they received.  I know we

1   have one issue where it looks like we got corrupted data from

2   the EPA.  I think our offices are working on sorting that out.

3   I think Mr. Herman's assessment is right.  That's not a

4   priority issue at the moment.

5               THE COURT:  Let's keep heads up on that.  It seems to

6   me that if somebody does a FOIA request and gets information,

7   it ought to be distributed to the other side so everybody

8   doesn't have to write the same agencies and get either some

9   material or no material or partial material.  Let's continue to

10  do that.  Of course, I will put this up on the Web site so

11  everybody can see it.

12              Trial settings.  We have talked about that with

13  *Germano* and *Hernandez*.  I'll be meeting with the parties.

14              Filings in the MDL.

15          MR. HERMAN:  Excuse me, Your Honor.  We also jointly

16  submit a case management order for Your Honor's consideration

17  in *Hernandez*.  It will be submitted to Your Honor.

18          MR. MILLER:  If you would like, we have it ready to

19  submit.  I can hand it to the clerk.

20          MR. HERMAN:  Absolutely.  I subscribe to Mr. Miller

21  handing it.  I like the "clean hands" theory.

22          THE COURT:  I directed the parties to get together

23  and prepare a case management order.  That's my first approach

24  with case management orders either now or in the future.  I ask

25  counsel to get together and try to do it.  If they can't do it,

1    then I will get each version or versions of the case management

2    order and I will draft the one that I feel is appropriate.

3    Unless it's a problem with dates or whatever, I look to them

4    for some guidance, at least initially.

5                    Notices of appearance and default judgments,

6    next item.

7            **MR. HERMAN:**  Your Honor wanted to make some

8    additional remarks about the necessity for filing appearance

9    forms.  Other than that, we have no new matters under filings

10   in the MDL.

11           **THE COURT:**  Yes.  It's important that the parties

12   enter the case before they have access to any material.  The

13   reason for that is not to deprive them of access but to make

14   sure that it's under the auspices of the MDL court so that I

15   can deal with it.  If they feel that they haven't gotten

16   enough, they can turn to me.  If they feel like there's some

17   problem, I can deal with it from each side.  I can't deal with

18   it if they are not in the litigation.  It's important that they

19   enter the litigation, and I look forward to them doing that.

20                    The next item is on insurance issues.

21           **MR. HERMAN:**  Your Honor, the only insurance issues

22   relate to certified copies of policies.  We defer that issue at

23   this time.  We do want to point out that there was an issue

24   with LexisNexis.  Leonard Davis has conferred with the clerk of

25   court.  We don't anticipate a problem at this time.

1          **THE COURT:**  There's also some matters that I

2    mentioned the last time with the insurance companies, the issue

3    of whether or not they should be transferred to the MDL and

4    consolidated with this case or whether they should go forward

5    in separate, independent jurisdictions.

6               I studied the matter a little more closely, and

7    I find that a lot of the policy defenses that are being urged

8    really have to do with the type of issues that I'll be dealing

9    with in the MDL; that is to say, a defense might be contesting

10   contamination or contesting the type of material that was being

11   used and whether or not that's accepted or excluded by the

12   policy.

13              Rather than have discovery in the various

14   districts of the country on the same issues -- the whole

15   purpose of the MDL is to prevent that -- those insurance

16   issues, since they deal with the same facts that I will be

17   dealing with in the MDL, it looks like that those cases are

18   better and more efficiently dealt with if they are transferred

19   to the MDL.  Hopefully, that will be done.

20          **MR. MILLER:**  Your Honor, I just want to report on

21   that issue.  There are some insurance cases that are already

22   here, and those are cases that would have been filed in the

23   Eastern District initially or in state court within the

24   jurisdiction of the Eastern District and removed.  Since I'm

25   defense liaison counsel, I have been contacted by some insurers

1    along the way who are here and have filed or would like to file
2    different types of motions.

3                        I'm not particularly aware of what those issues
4    are, but in light of the Court's statement that it may be
5    entertaining broader insurance issues not only from Louisiana
6    but from some of the other states that are impacted -- Florida,
7    Mississippi, and so on and so forth -- it may make sense that
8    some attention be devoted to that issue in terms of structure
9    and organization.  I do know that some of the local insurers
10   and their counsel here have been trying to get their motions
11   filed and heard, and if you have a slew of others to come from
12   other states, some attention maybe should be paid to that from
13   an organizational standpoint.

14             THE COURT:  Some of the issues may be dealt with
15   under state law, but a lot of the substance of the defenses
16   that I'm looking at or heard about or read about have to do
17   with the same issues in this particular case.  I may be able to
18   group those cases and deal with them.

19             MR. HERMAN:  Your Honor, briefly, I'll point out that
20   some have been filed directly in the MDL and some in other
21   divisions.  We'll endeavor to get the Court where they are as
22   soon as possible.

23             THE COURT:  The next item is service of pleadings
24   electronically.

25             MR. HERMAN:  LexisNexis had an issue.  Leonard Davis

1    discussed it with the clerk of court.  We don't think it's
2    going to be an issue.  If it becomes an issue, we'll alert the
3    Court.
4                  With respect to the next three items on
5    Your Honor's agenda -- master complaint, class action complaint
6    (indeterminate defendant), omnibus class action complaint and
7    future omnibus class action complaints -- lead counsel for
8    plaintiffs, Mr. Levin, will address those.
9              **MR. LEVIN:**  Arnold Levin.  Your Honor, at this point
10   we feel there's no need for a master complaint because most
11   matters have been consolidated or grouped into either the
12   indeterminate defendant complaint or an omnibus complaint.
13                 With regard to the indeterminate defendant
14   complaint, we have entries of appearance.  We have had service
15   with no entries of appearance.  We intend to send the
16   transcript of these proceedings to the unrepresented and the
17   represented so they know what their obligations are with regard
18   to filing motions because there has been a refinement of
19   Pretrial Order 1.
20                 With regard to the omnibus class action
21   complaint, there has been no service.  The clerk's office is in
22   the process of getting the summons out.  Our service is in the
23   process of translating the complaints.  There will be service.
24   We anticipate within the next month filing three additional
25   complaints:

1          An omnibus roman numeral II complaint against

2     non-Knauf manufacturing defendants along with their

3     distributors, installers, brokers, etc.; another Knauf

4     complaint which we will serve, rather, because there's no

5     acceptance of service, but the PSC will take on the obligation

6     of serving it for all plaintiffs' counsel; and another

7     complaint which will dovetail probably by intervention with the

8     indeterminate defendant complaint, which will bring in those

9     brokers, those installers, those builders.

10          So at that point I don't see a need for a master

11    complaint because we will have four or five master complaints,

12    really.

13          THE COURT:  Okay.  We'll take a look at that.  I

14    don't think that the fact that you don't have one now means

15    that you can never have one.  If we feel that a master

16    complaint can be more efficient, then we can take a look at it

17    at that time.

18          Master complaints, as we all know, are really

19    more for efficiency, so that they are grouped into one

20    complaint so we don't have to file 100 motions or 200 motions

21    or 1,000 motions; just file one motion and it covers 1,000

22    cases.  It doesn't do anything other than it's a housekeeping

23    measure.  We may not need it in this case.

24          MR. LEVIN:  If we need it, we know how to do it.

25          THE COURT:  Knauf personal jurisdiction.

1    **MR. HERMAN:**  The special master, Michael Rozen, is in

2    the court.

3        **THE COURT:**  Anything from the special master?

4    Mr. Rozen, as you know, I've asked to be the special master in

5    this particular case.  I know he has been hard at work.

6        **THE SPECIAL MASTER:**  Good morning, Your Honor.  The

7    only thing that I would report is that negotiations have been

8    ongoing with all the parties, everybody in complete and the

9    utmost of good faith, and I remain optimistic that we will get

10   something done here in the short term.

11       **THE COURT:**  Good.  Thank you very much.

12       **MR. HERMAN:**  Your Honor, Item XIX, Knauf GIPS KG

13   personal jurisdiction, was covered earlier.  Are there any

14   comments that Mr. Miller wishes to make?  I believe we have

15   covered it.

16           Appearing under Item XX, proceedings in *Germano*,

17   Your Honor has scheduled a conference with those participating

18   in that trial for plaintiff, for Knauf intervenor, and for

19   Mitchell intervenor immediately following.  Whatever issues

20   there are will be discussed with Your Honor at that time.

21           With respect to *Hernandez*, the new order has

22   been presented to Your Honor, CMO, for consideration.  There

23   are no issues until that CMO is entered.  Hopefully, by meeting

24   with *Germano* today, some of the anticipated issues can be

25   resolved.

1          **THE COURT:**  The next status conference will be
2     February 11.  At 8:30, I'll meet with the steering committees,
3     and I'll open court at 9:00.
4          **MR. HERMAN:**  I understand that Your Honor also --
5          **THE COURT:**  I've been asked by the parties to have a
6     telephone status conference on the cases that are set for
7     trial.  We are doing it January 28 at 10:00 in the morning.
8     We'll post the numbers.
9          **MR. HERMAN:**  That concludes it.
10         **THE COURT:**  I know the parties are working on these
11    trials and other matters.  I don't want to take too much time
12    from their work on this matter.  Anything further on it?
13         **MR. MILLER:**  No, Your Honor.
14         **MR. HERMAN:**  No, Your Honor.
15         **MR. WITTMANN:**  Just one thing, Your Honor.  Phil
16    Wittmann.  We have discussed with Mr. Herman and Mr. Miller
17    meeting with them with respect to teeing up the personal
18    jurisdiction issue on Knauf GIPS.  We agreed to meet and
19    discuss that further after the hearing today.
20         **THE COURT:**  Just so everybody, again, understands, I
21    gave the plaintiffs the opportunity to select the first trial,
22    Knauf the second trial, and the home builders the third trial.
23    He was talking about that particular trial and the structure of
24    it and the issues.  I suggested to the parties that they get
25    together and talk about it and then bring it to me if they

1    can't agree.  If they do agree, bring it to me anyway, and I
2    will see whether or not I agree.
3              MR. HERMAN:  Your Honor, may it please the Court.
4    You have two motions and you have a *Germano* --
5              THE COURT:  I'll take a break at this time just for
6    five minutes to let anybody who is not involved in the motions
7    either sign off or leave, and then we will take the motions.
8              MR. MILLER:  Your Honor, before we sign off, the
9    concern here is that the motions that the PSC have are now only
10   against two defendants.  These are motions to compel.  I want
11   to make sure these defendants don't get off the line, if they
12   are not here, before we take a break.
13             THE COURT:  Most of the motions have been resolved.
14   Which ones do we still have to deal with?
15             MR. DAVIS:  Your Honor, Leonard Davis.  La Suprema
16   and Rightway Drywall are the two remaining issues.
17             THE COURT:  Also, we have an issue with the
18   amendment.  Is that still on?
19             MR. MILLER:  I don't think that's contested or
20   opposed.
21             MR. DAVIS:  There was an opposition.
22             THE COURT:  There was an opposition in one of them.
23   So these two motions plus the *Hinkley* amendment.  Is that it?
24   Someone stood up in the back.  Do you want to come forward and
25   speak in the microphone?

1          **MR. MILLER:**  Your Honor, I just want to make sure

2    that counsel who are opposing these motions -- it's not me --

3    are here or on the phone.

4          **THE COURT:**  Defense counsel is Eduardo Rasco and Greg

5    Burge in those two.

6               Yes, sir.  You want to make your appearance.

7          **MR. BRENNER:**  My name is Ted Brenner.  I represent

8    Tobin in the *Hinkley* case, Judge.

9          **MR. HARDT:**  Your Honor, this is Ken Hardt.  Can you

10   hear me?

11         **THE COURT:**  Yes, I can.

12         **MR. HARDT:**  I represent Venture Supply and

13   Porter-Blaine in the *Hinkley* case.

14         **THE COURT:**  In five minutes, I will come back and

15   deal with those three motions.

16         **MR. MILLER:**  Your Honor, with respect to the motion

17   against La Suprema, I haven't heard anything from their

18   counsel.

19         **THE COURT:**  Anything from Mr. Rasco?

20         **MR. MILLER:**  It may be that they are on "listen"

21   only.  If they are, maybe they need to contact the Court, if

22   they want to call in in five minutes.

23         **THE COURT:**  All right.  The Court will stand in

24   recess for five minutes.

25         **THE DEPUTY CLERK:**  All rise.

1                       **<u>CERTIFICATE</u>**

2           I, Toni Doyle Tusa, CCR, FCRR, Official Court

3  Reporter for the United States District Court, Eastern District

4  of Louisiana, do hereby certify that the foregoing is a true

5  and correct transcript, to the best of my ability and

6  understanding, from the record of the proceedings in the

7  above-entitled and numbered matter.

8

9

10                            <u>s/ Toni Doyle Tusa</u>
                                 Toni Doyle Tusa, CCR, FCRR

11                                 Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25