# EXHIBIT A

# LEVIN, FISHBEIN, SEDRAN & BERMAN

*Counsellors at Law and Proctors in Admiralty*

ARNOLD LEVIN
MICHAEL D. FISHBEIN
HOWARD J. SEDRAN
LAURENCE S. BERMAN
FRED S. LONGER *
DANIEL C. LEVIN
CHARLES E. SCHAFFER
AUSTIN B. COHEN
MICHAEL M. WEINKOWITZ * †
CHARLES C. SWEEDLER *
MATTHEW C. GAUGHAN * †

* also admitted in New Jersey
† also admitted in New York

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106-3697
www.lfsblaw.com

TELEPHONE (215) 592-1500
FACSIMILE (215) 592-4663

January 20, 2010

**VIA REGULAR MAIL TO DOMESTIC DEFENDANTS AND
VIA FEDERAL EXPRESS TO FOREIGN DEFENDANTS EXCEPT THOSE
DEFENDANTS LISTED BELOW.[1]**

> **Re:** **In re: Chinese Drywall Litigation, MDL No. 2047**
> **Gross, et al v. Knauf Gips, KG, et al,  No: 09-6690, (E.D.La.)**

To Whom It May Concern:

Enclosed please find the transcript of a hearing held on January 14, 2010 in *In re: Chinese Drywall Litigation*, MDL No. 09-MD-2047 (E.D.La.) in the above matter.  Also please find enclosed a Court summary of the hearing filed by the Court on January 14, 2010 attached hereto as Exhibit "A".  You or your client were named as a defendant in a complaint filed on October 19, 2009.  The hearing transcript and Court summary of the hearing applies to the case in which you or your client were named as a defendant.  The Court has lifted the stay of the action and the Court has directed the parties address motions it desires the Court to consider and also to file responsive pleadings.  See attached transcript at pp. 4-5.  See also, Court summary of the monthly status conference at p. 14 attached hereto as Exhibit "B".

---

[1]The following defendants have been mailed this letter by United States Postal Service Registered Mail.

- Taishan Gypsum (Xiangtan) Co., Ltd.;
- Yunan Taishan Gypsum and Building Material Co., Ltd.;
- Fuxin Taishan Gypsum and Building Material Co., Ltd.;
- Taishan Gypsum (Baotou) Co., Ltd;
- Shaanxi Taishan Gypsum Co., Ltd.; and
- Taishan Gypsum (Chongqing) Co., Ltd.

LEVIN, FISHBEIN, SEDRAN & BERMAN

Should you have any questions, please feel free to contact me.

Very truly yours,

ARNOLD LEVIN

DCL:jsl
Enclosure

# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  CHINESE MANUFACTURED          *    Docket 09-MD-2047
        DRYWALL PRODUCTS              *
        LIABILITY LITIGATION          *    January 14, 2010
                                      *
This Document Relates to All Cases    *    9:00 a.m.
* * * * * * * * * * * * * * * * * *


STATUS CONFERENCE BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the PLC:                 Herman Herman Katz & Cotlar, LLP
                             BY:  RUSS M. HERMAN, ESQ.
                                  LEONARD A. DAVIS, ESQ.
                             820 O'Keefe Avenue
                             New Orleans, Louisiana 70113


For the DLC:                 Frilot, LLC
                             BY:  KERRY J. MILLER, ESQ.
                             1100 Poydras Street, Suite 3700
                             New Orleans, Louisiana 70163


For the Home Builders        Stone Pigman Walther Wittmann
  and Installers:            BY:  PHILLIP A. WITTMANN, ESQ.
                             546 Carondelet Street
                             New Orleans, Louisiana 70130


Also Participating:          Dawn M. Barrios, Esq.
                             Arnold Levin, Esq.
                             Michael K. Rozen, Esq.

```
 1   Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                     500 Poydras Street, Room B-406
 2                                   New Orleans, Louisiana 70130
                                     (504) 589-7778
 3

 4

 5

     Proceedings recorded by mechanical stenography, transcript
 6   produced by computer.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PROCEEDINGS

(January 14, 2010)

THE DEPUTY CLERK:  All rise.

THE COURT:  Be seated, please.  Good morning, ladies and gentlemen.  Call the first case, please.

THE DEPUTY CLERK:  MDL 2047, In Re: Chinese Drywall.

THE COURT:  Counsel make their appearance for the record.

MR. HERMAN:  May it please the Court.  Good morning, Judge Fallon.  Russ Herman for plaintiffs.

MR. MILLER:  Good morning, Your Honor.  Kerry Miller on behalf of the defense steering committee.

MR. WITTMANN:  Good morning, Your Honor.  Phil Wittmann for the homebuilders and for the installers.

THE COURT:  After this, let's everybody use the mic.  It looks like we have about 150 people present and we have an equal amount, perhaps more, on the phone.  Let's use the mics so everybody can hear what's being said.

I met with the steering committees this morning to discuss the proposed agenda.  I will take it in the order that it is stated.  First, pretrial orders.

MR. HERMAN:  May it please the Court.  Your Honor, at page 1, there is some clarification Your Honor wanted to make with regard to the orders 1C and 1D about lifting the stays with regard to responsive pleadings.

1        THE COURT:  Let me talk about the stays.  When an MDL

2   begins, the transferee judge gets a lot of cases.  Many of

3   those cases had motions attached to it.  Other cases, the

4   motions are anticipated and they are to be filed shortly.  I

5   want everybody's attention at the beginning to be focused on

6   organizational aspects of the case.  I have to stop discovery

7   from continuing so that we can get some structure in place to

8   deal with it as an MDL, so I issue a stay order stopping

9   everything and focusing everybody's attention on structure and

10  some other organizational issues.  After that aspect of the

11  case is over, then I lift the stay.

12        The reason for lifting the stay is to permit

13  people to file answers, to file responses, whatever they need

14  to file.  Now, that doesn't mean that I'm going to immediately

15  devote time to handling those various motions.  What I try to

16  do in a case of this sort is to open the gates, let people file

17  what they need to file, then I see what's filed, and then I

18  group them into various groups that contain similar issues.  I

19  look at each group and make a decision as to which motion best

20  represents that group and I tee that up for hearing.  When I

21  decide that, hopefully it decides similar motions or similar

22  issues or at least gives some guidance to those matters.

23        We are at the stage now where I lifted the stay.

24  Now, there may be some areas that a particular motion needs to

25  be clarified, but I'll deal with that as it's necessary.  The

1    point is that now I've lifted the stay, so anybody who wants to

2    file or needs to file something, they ought to be filing it.

3              Property inspections is the next item on the

4    agenda.

5              MR. HERMAN:  Your Honor, I'm pleased to report that

6    the intervenors' inspections in Germano are complete.

7    Recently, the inspections of intervenors in Hernandez are

8    complete.  I personally want to acknowledge on the record the

9    work that the Germano and Hernandez trial teams and the science

10   committee has done as well as the 60 or more lawyers that

11   showed up last night for our meeting.  I don't have anything

12   further to add as to inspections.

13             THE COURT:  How about from the defense?

14             MR. MILLER:  No, Your Honor.  I think that's correct.

15   The focus has been on Germano and Hernandez, and those

16   inspections have been conducted at those properties.

17             There is an issue that Russ and I probably need

18   to discuss pertaining to Crawford & Company.  They were the

19   inspection company.  I think they have been solicited by some

20   other outfits doing drywall inspections.  They were the

21   Court-approved inspector, and they are awaiting guidance from

22   us as to whether they can take some other jobs that wouldn't

23   conflict them out from further court duties.

24             MR. HERMAN:  I will attempt to discuss that with

25   Kerry today.  There is one other issue about Crawford &

1  Company.  The Hernandez trial team -- Steve Herman, Skip,

2  Chris, etc. -- have indicated the Hernandez home now looks like

3  Swiss cheese there have been so many inspections and holes cut

4  by government agencies, by intervenors, by our own people.  We

5  would like to have considered, rather than any more samples

6  taken, using the Crawford samples in connection with the

7  preparation of the Hernandez trial.

8           THE COURT:  Yes.  That was the reason for picking

9  Crawford & Company just so that we are all on the same page.

10  Within several weeks after getting this case, I felt that the

11  first order should be to conduct immediate inspections.  The

12  issue then is who's to conduct the inspections.

13           What we did was put out a notice to any

14  companies that are interested in doing inspections from the

15  Court's standpoint, that they would be appointed by the Court

16  to do the inspections.  Several applied.  I interviewed them.

17  The one that seemed to be the best capable of doing something

18  on a nationwide basis, with sufficient knowledge and

19  experience, was Crawford & Company.  I appointed them.

20           A protocol was designed.  Everybody had input

21  into the protocol, the method for the inspections.  They

22  conducted the inspection, and the protocol was obviously out of

23  sync.  It needed to be clarified.  It needed to be altered to

24  make more sense out of it, so we altered the protocol.  Then

25  they took it back and started working on it and conducting the

1    inspections.

2               They have some good experience in this area, and

3    I haven't heard any problems that anybody has raised about any

4    bias or inexperience or things of that sort.  It seems to me

5    that everybody profits from having someone who has the

6    experience and the capacity to do the inspections.  It seems to

7    me that we ought to utilize that type of grouping for these

8    inspections.

9               Anybody else who does it, I can't obviously tell

10   them not to do it, but if it's going to be used in trial, I

11   suggest that they get the Court's approval first so that I can

12   deal with it.  It doesn't make any sense to me to have 15

13   different groups inspecting a piece of property because, in

14   inspecting, you have to cut holes and remove certain things,

15   and there will be nothing left to the property.  So that

16   creates its own problems.  Who's to pay for that at the end of

17   the day?  We have enough issues in this particular case.  We

18   ought not to try to manufacture other issues.

19               Plaintiff and defendant profile forms.

20          MR. HERMAN:  Your Honor, just one issue.  It's not

21   ripe before Your Honor.  There are a number of defendant

22   profile forms that we do not have certified copies of their

23   insurance policies.  We are filing 30(b)(6) notices limited to

24   insurance matters with reference to all of those defendants,

25   and we'll report to you at the next hearing.

1          THE COURT:  As I mentioned several times, the purpose

2     of a profile form is to expedite discovery.  If we have to wait

3     for long lists of interrogatories back and forth and waiting

4     for 30 days, another 15 days, and so forth, you will never get

5     through with this case.  In order to expedite matters, I put

6     into place profile forms.  It gives you a quick peek on some

7     significant material from each side.

8               That doesn't mean you can't do interrogatories

9     or it doesn't mean that you have given up your right to do

10    discovery.  It simply is a way of expediting the transfer of

11    information, and it's a cheap way of doing it also.  So it's

12    fast and quick and economical, but I'm serious about it.  The

13    parties have to comply with the Court's order to produce

14    profile forms.

15              Now, we have some situations where the

16    plaintiffs haven't completed the profile forms and I have

17    motions before me to dismiss the case.  I have looked at the

18    material, and there's a question of whether or not people got

19    notice and whether or not the notice was sufficient and things

20    of that sort.  I'm going to continue those motions for the next

21    hearing date because they're legitimate issues.

22              The point I make is that I expect them to put

23    information on the profile forms and supply the profile forms.

24    If the people don't do that, I assume they are not interested

25    in pursuing their case.  The same way from the defendant.  If

1   the defendant fails to supply profile forms, I will entertain

2   motions to dismiss defenses and take whatever steps I need to

3   do there.  It's going to only be effective if the people comply

4   with the profile forms, and I'm serious about it.  That's the

5   Court's position on the profile forms.

6               Preservation order is the next item.

7        MR. HERMAN:  Nothing new to report, Your Honor.

8        THE COURT:  State/federal coordination, anything on

9   that?

10        MR. HERMAN:  Just one issue for me and then

11   Ms. Barrios will report.  Yesterday, the Louisiana attorney

12   general in CDC No. 2010-392, State of Louisiana district court,

13   filed an action versus Knauf and others in connection with

14   drywall.  The attorney general of Louisiana, Buddy Caldwell, or

15   his representative was invited to appear here today as a

16   courtesy.  So far, we have not heard back.  Both Mr. Miller and

17   myself intend to dialogue in that regard.

18        THE COURT:  I have received a courtesy copy of the

19   material.  It's an issue as to whether or not there's any

20   overlapping or whether or not there's a carve-out for the MDL

21   proceedings.  It looks at first blush that there's a carve-out,

22   but there's also some other words and statements in the

23   pleading that may be in conflict.  I'll have to study that a

24   little bit more.

25               Of course, the cases need to be served.  If they

1   are served, the issue then is whether or not they can be

2   removed to this Court and consolidated in this particular

3   proceeding.

4          MR. HERMAN:  Your Honor, Ms. Barrios is here with

5   regard to state/federal coordination.

6          THE COURT:  Okay.

7          MS. BARRIOS:  Good morning, Your Honor.  Dawn Barrios

8   for the state/federal committee.  In addition to the Louisiana

9   attorney general's case that Mr. Herman discussed, there was

10  only one other state filing that we had since the last status

11  conference and that is Silva v. Interior/Exterior, which was

12  filed in CDC.  On our disc this month, we have all the judges'

13  contact information on those two cases.  There have been no

14  conditional transfer orders since the last status conference

15  and no remands filed.

16         THE COURT:  Thank you very much.  I have been in

17  touch with most of the judges in the states that have entered

18  the litigation.  I've established a working relationship with

19  them.  I have several on the line this morning.  They need to

20  know I appreciate all of their help in this matter and look to

21  them for guidance, particularly in the laws of their respective

22  states.  I look forward to working with them in this matter.  I

23  have made available to them all of the orders that the Court

24  has issued and will continue to do so.

25         MR. MILLER:  Your Honor, on that issue -- just to use

1   this forum where we have so many people in the courtroom and on

2   the line, something to think about -- my client, Knauf

3   Plasterboard (Tianjin), accepted service of an omnibus

4   complaint filed by the PSC back in December that numbered some

5   2,000 plaintiffs.  It may make sense -- and I offer this as

6   food for thought -- for state court actions in which those same

7   plaintiffs appear in claims against builders or others in the

8   supply chain -- we don't have any against my client, but it may

9   make sense that those actions be stayed or deferred given the

10  fact that there is acceptance of service and there's a

11  2,068-person omnibus complaint proceeding in Your Honor's

12  Court.  I offer it for consideration, judicial efficiency, and

13  streamlining things.

14          MR. HERMAN:  May it please the Court.  I'll be happy

15  to discuss it with Mr. Miller and Mr. Wittmann perhaps tomorrow

16  if they are available.

17              Your Honor, with respect to the next item,

18  Item VII --

19          THE COURT:  We have several motions in this matter.

20  What I will do is I will take those motions up after our

21  meeting here today.  I'll defer those until after this meeting

22  is over.  Any discovery issues?

23          MR. HERMAN:  Your Honor, there are some discovery

24  issues.  One of the motions set for today involves discovery

25  issues.  Discovery and other issues involving Germano and

1    Hernandez, as I understand it, Your Honor will meet with those

2    trial team leaders following the conference today.

3              THE COURT:   That's correct.

4              MR. HERMAN:   I did want to point out again for the

5    record that Your Honor's Web site, which posts these hearings

6    and other significant matters in Drywall, is at

7    www.laed.uscourts.gov.   We continue to get a number of

8    inquiries.   We refer folks to that Web site,

9    www.laed.uscourts.gov, and then you can reference MDL Docket

10   No. 2047.

11             Your Honor, with regard to Freedom of

12   Information Act public records requests, we have had an

13   exchange with the CPSC, and we understand that they are

14   articulating with other government agencies.   We really have no

15   matter before Your Honor.

16             We have a chart at pages 15 through 20 of

17   Your Honor's status conference report detailing all of the FOIA

18   orders which we are aware of, what the responses are, and what

19   the current situation is.   In light of the Germano and

20   Hernandez trials, from a PSC point of view and I believe from

21   an intervenor point of view, those issues are not paramount at

22   this time.

23             MR. MILLER:   It doesn't appear to be, Your Honor.   We

24   want to thank Mr. Herman's office.   I think they have supplied

25   us with the FOIA information that they received.   I know we

1   have one issue where it looks like we got corrupted data from

2   the EPA.  I think our offices are working on sorting that out.

3   I think Mr. Herman's assessment is right.  That's not a

4   priority issue at the moment.

5            THE COURT:  Let's keep heads up on that.  It seems to

6   me that if somebody does a FOIA request and gets information,

7   it ought to be distributed to the other side so everybody

8   doesn't have to write the same agencies and get either some

9   material or no material or partial material.  Let's continue to

10  do that.  Of course, I will put this up on the Web site so

11  everybody can see it.

12            Trial settings.  We have talked about that with

13  Germano and Hernandez.  I'll be meeting with the parties.

14            Filings in the MDL.

15            MR. HERMAN:  Excuse me, Your Honor.  We also jointly

16  submit a case management order for Your Honor's consideration

17  in Hernandez.  It will be submitted to Your Honor.

18            MR. MILLER:  If you would like, we have it ready to

19  submit.  I can hand it to the clerk.

20            MR. HERMAN:  Absolutely.  I subscribe to Mr. Miller

21  handing it.  I like the "clean hands" theory.

22            THE COURT:  I directed the parties to get together

23  and prepare a case management order.  That's my first approach

24  with case management orders either now or in the future.  I ask

25  counsel to get together and try to do it.  If they can't do it,

1    then I will get each version or versions of the case management

2    order and I will draft the one that I feel is appropriate.

3    Unless it's a problem with dates or whatever, I look to them

4    for some guidance, at least initially.

5                    Notices of appearance and default judgments,

6    next item.

7                    MR. HERMAN:  Your Honor wanted to make some

8    additional remarks about the necessity for filing appearance

9    forms.  Other than that, we have no new matters under filings

10   in the MDL.

11                   THE COURT:  Yes.  It's important that the parties

12   enter the case before they have access to any material.  The

13   reason for that is not to deprive them of access but to make

14   sure that it's under the auspices of the MDL court so that I

15   can deal with it.  If they feel that they haven't gotten

16   enough, they can turn to me.  If they feel like there's some

17   problem, I can deal with it from each side.  I can't deal with

18   it if they are not in the litigation.  It's important that they

19   enter the litigation, and I look forward to them doing that.

20                   The next item is on insurance issues.

21                   MR. HERMAN:  Your Honor, the only insurance issues

22   relate to certified copies of policies.  We defer that issue at

23   this time.  We do want to point out that there was an issue

24   with LexisNexis.  Leonard Davis has conferred with the clerk of

25   court.  We don't anticipate a problem at this time.

1           THE COURT:   There's also some matters that I

2    mentioned the last time with the insurance companies, the issue

3    of whether or not they should be transferred to the MDL and

4    consolidated with this case or whether they should go forward

5    in separate, independent jurisdictions.

6               I studied the matter a little more closely, and

7    I find that a lot of the policy defenses that are being urged

8    really have to do with the type of issues that I'll be dealing

9    with in the MDL; that is to say, a defense might be contesting

10   contamination or contesting the type of material that was being

11   used and whether or not that's accepted or excluded by the

12   policy.

13              Rather than have discovery in the various

14   districts of the country on the same issues -- the whole

15   purpose of the MDL is to prevent that -- those insurance

16   issues, since they deal with the same facts that I will be

17   dealing with in the MDL, it looks like that those cases are

18   better and more efficiently dealt with if they are transferred

19   to the MDL.  Hopefully, that will be done.

20           MR. MILLER:   Your Honor, I just want to report on

21   that issue.  There are some insurance cases that are already

22   here, and those are cases that would have been filed in the

23   Eastern District initially or in state court within the

24   jurisdiction of the Eastern District and removed.  Since I'm

25   defense liaison counsel, I have been contacted by some insurers

1   along the way who are here and have filed or would like to file

2   different types of motions.

3            I'm not particularly aware of what those issues

4   are, but in light of the Court's statement that it may be

5   entertaining broader insurance issues not only from Louisiana

6   but from some of the other states that are impacted -- Florida,

7   Mississippi, and so on and so forth -- it may make sense that

8   some attention be devoted to that issue in terms of structure

9   and organization.  I do know that some of the local insurers

10  and their counsel here have been trying to get their motions

11  filed and heard, and if you have a slew of others to come from

12  other states, some attention maybe should be paid to that from

13  an organizational standpoint.

14       THE COURT:  Some of the issues may be dealt with

15  under state law, but a lot of the substance of the defenses

16  that I'm looking at or heard about or read about have to do

17  with the same issues in this particular case.  I may be able to

18  group those cases and deal with them.

19       MR. HERMAN:  Your Honor, briefly, I'll point out that

20  some have been filed directly in the MDL and some in other

21  divisions.  We'll endeavor to get the Court where they are as

22  soon as possible.

23       THE COURT:  The next item is service of pleadings

24  electronically.

25       MR. HERMAN:  LexisNexis had an issue.  Leonard Davis

1 discussed it with the clerk of court.  We don't think it's

2 going to be an issue.  If it becomes an issue, we'll alert the

3 Court.

4                With respect to the next three items on

5 Your Honor's agenda -- master complaint, class action complaint

6 (indeterminate defendant), omnibus class action complaint and

7 future omnibus class action complaints -- lead counsel for

8 plaintiffs, Mr. Levin, will address those.

9                MR. LEVIN:  Arnold Levin.  Your Honor, at this point

10 we feel there's no need for a master complaint because most

11 matters have been consolidated or grouped into either the

12 indeterminate defendant complaint or an omnibus complaint.

13                With regard to the indeterminate defendant

14 complaint, we have entries of appearance.  We have had service

15 with no entries of appearance.  We intend to send the

16 transcript of these proceedings to the unrepresented and the

17 represented so they know what their obligations are with regard

18 to filing motions because there has been a refinement of

19 Pretrial Order 1.

20                With regard to the omnibus class action

21 complaint, there has been no service.  The clerk's office is in

22 the process of getting the summons out.  Our service is in the

23 process of translating the complaints.  There will be service.

24 We anticipate within the next month filing three additional

25 complaints:

1    An omnibus roman numeral II complaint against

2    non-Knauf manufacturing defendants along with their

3    distributors, installers, brokers, etc.; another Knauf

4    complaint which we will serve, rather, because there's no

5    acceptance of service, but the PSC will take on the obligation

6    of serving it for all plaintiffs' counsel; and another

7    complaint which will dovetail probably by intervention with the

8    indeterminate defendant complaint, which will bring in those

9    brokers, those installers, those builders.

10    So at that point I don't see a need for a master

11    complaint because we will have four or five master complaints,

12    really.

13    THE COURT:  Okay.  We'll take a look at that.  I

14    don't think that the fact that you don't have one now means

15    that you can never have one.  If we feel that a master

16    complaint can be more efficient, then we can take a look at it

17    at that time.

18    Master complaints, as we all know, are really

19    more for efficiency, so that they are grouped into one

20    complaint so we don't have to file 100 motions or 200 motions

21    or 1,000 motions; just file one motion and it covers 1,000

22    cases.  It doesn't do anything other than it's a housekeeping

23    measure.  We may not need it in this case.

24    MR. LEVIN:  If we need it, we know how to do it.

25    THE COURT:  Knauf personal jurisdiction.

1          MR. HERMAN:   The special master, Michael Rozen, is in

2     the court.

3          THE COURT:   Anything from the special master?

4     Mr. Rozen, as you know, I've asked to be the special master in

5     this particular case.   I know he has been hard at work.

6          THE SPECIAL MASTER:   Good morning, Your Honor.   The

7     only thing that I would report is that negotiations have been

8     ongoing with all the parties, everybody in complete and the

9     utmost of good faith, and I remain optimistic that we will get

10    something done here in the short term.

11         THE COURT:   Good.   Thank you very much.

12         MR. HERMAN:   Your Honor, Item XIX, Knauf GIPS KG

13    personal jurisdiction, was covered earlier.   Are there any

14    comments that Mr. Miller wishes to make?   I believe we have

15    covered it.

16              Appearing under Item XX, proceedings in Germano,

17    Your Honor has scheduled a conference with those participating

18    in that trial for plaintiff, for Knauf intervenor, and for

19    Mitchell intervenor immediately following.   Whatever issues

20    there are will be discussed with Your Honor at that time.

21              With respect to Hernandez, the new order has

22    been presented to Your Honor, CMO, for consideration.   There

23    are no issues until that CMO is entered.   Hopefully, by meeting

24    with Germano today, some of the anticipated issues can be

25    resolved.

1        THE COURT:  The next status conference will be

2   February 11.  At 8:30, I'll meet with the steering committees,

3   and I'll open court at 9:00.

4        MR. HERMAN:  I understand that Your Honor also --

5        THE COURT:  I've been asked by the parties to have a

6   telephone status conference on the cases that are set for

7   trial.  We are doing it January 28 at 10:00 in the morning.

8   We'll post the numbers.

9        MR. HERMAN:  That concludes it.

10       THE COURT:  I know the parties are working on these

11  trials and other matters.  I don't want to take too much time

12  from their work on this matter.  Anything further on it?

13       MR. MILLER:  No, Your Honor.

14       MR. HERMAN:  No, Your Honor.

15       MR. WITTMANN:  Just one thing, Your Honor.  Phil

16  Wittmann.  We have discussed with Mr. Herman and Mr. Miller

17  meeting with them with respect to teeing up the personal

18  jurisdiction issue on Knauf GIPS.  We agreed to meet and

19  discuss that further after the hearing today.

20       THE COURT:  Just so everybody, again, understands, I

21  gave the plaintiffs the opportunity to select the first trial,

22  Knauf the second trial, and the home builders the third trial.

23  He was talking about that particular trial and the structure of

24  it and the issues.  I suggested to the parties that they get

25  together and talk about it and then bring it to me if they

1    can't agree.  If they do agree, bring it to me anyway, and I

2    will see whether or not I agree.

3              MR. HERMAN:  Your Honor, may it please the Court.

4    You have two motions and you have a Germano --

5              THE COURT:  I'll take a break at this time just for

6    five minutes to let anybody who is not involved in the motions

7    either sign off or leave, and then we will take the motions.

8              MR. MILLER:  Your Honor, before we sign off, the

9    concern here is that the motions that the PSC have are now only

10   against two defendants.  These are motions to compel.  I want

11   to make sure these defendants don't get off the line, if they

12   are not here, before we take a break.

13             THE COURT:  Most of the motions have been resolved.

14   Which ones do we still have to deal with?

15             MR. DAVIS:  Your Honor, Leonard Davis.  La Suprema

16   and Rightway Drywall are the two remaining issues.

17             THE COURT:  Also, we have an issue with the

18   amendment.  Is that still on?

19             MR. MILLER:  I don't think that's contested or

20   opposed.

21             MR. DAVIS:  There was an opposition.

22             THE COURT:  There was an opposition in one of them.

23   So these two motions plus the Hinkley amendment.  Is that it?

24   Someone stood up in the back.  Do you want to come forward and

25   speak in the microphone?

1    MR. MILLER:  Your Honor, I just want to make sure

2    that counsel who are opposing these motions -- it's not me --

3    are here or on the phone.

4        THE COURT:  Defense counsel is Eduardo Rasco and Greg

5    Burge in those two.

6            Yes, sir.  You want to make your appearance.

7        MR. BRENNER:  My name is Ted Brenner.  I represent

8    Tobin in the Hinkley case, Judge.

9        MR. HARDT:  Your Honor, this is Ken Hardt.  Can you

10   hear me?

11       THE COURT:  Yes, I can.

12       MR. HARDT:  I represent Venture Supply and

13   Porter-Blaine in the Hinkley case.

14       THE COURT:  In five minutes, I will come back and

15   deal with those three motions.

16       MR. MILLER:  Your Honor, with respect to the motion

17   against La Suprema, I haven't heard anything from their

18   counsel.

19       THE COURT:  Anything from Mr. Rasco?

20       MR. MILLER:  It may be that they are on "listen"

21   only.  If they are, maybe they need to contact the Court, if

22   they want to call in in five minutes.

23       THE COURT:  All right.  The Court will stand in

24   recess for five minutes.

25       THE DEPUTY CLERK:  All rise.

1                           CERTIFICATE

2              I, Toni Doyle Tusa, CCR, FCRR, Official Court

3     Reporter for the United States District Court, Eastern District

4     of Louisiana, do hereby certify that the foregoing is a true

5     and correct transcript, to the best of my ability and

6     understanding, from the record of the proceedings in the

7     above-entitled and numbered matter.

8

9

10                                    s/ Toni Doyle Tusa
                                      Toni Doyle Tusa, CCR, FCRR
11                                    Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AO44
(Rev. 11/07)

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

INVOICE NO:   20100006

**MAKE CHECKS PAYABLE TO:**

Leonard A. Davis, Esq.
Herman Herman Katz & Cotlar
820 O'Keefe Avenue
New Orleans, LA 70113

Phone:   (504) 581-4892

ldavis@hhkc.com

Toni Doyle Tusa, CCR, FCRR
Official Court Reporter
500 Poydras Street, HB-406
New Orleans, LA 70130

Phone:     (504) 589-7778
FAX        (504) 589-7726

tdtusa1@aol.com

| ☐ CRIMINAL | ☒ CIVIL | DATE ORDERED: 01-15-2010 | DATE DELIVERED: 01-15-2010 |
|---|---|---|---|

**Case Style:** 09-MD-2047, IN RE:  Chinese Manufactured Drywall Products Liability Litigation

Status Conference held 1-14-10; transcript provided in both E-Tran and pdf; cost of original split between the parties

| CATEGORY | ORIGINAL | | | 1ST COPY | | | 2ND COPY | | | TOTAL CHARGES |
|---|---|---|---|---|---|---|---|---|---|---|
| | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | |
| Ordinary | | 3.65 | | | 0.90 | | | 0.60 | | |
| 14-Day | | 4.25 | | | 0.90 | | | 0.60 | | |
| Expedited | | 4.85 | | | 0.90 | | | 0.60 | | |
| Daily | 11 | 6.05 | 66.55 | 22 | 1.20 | 26.40 | | 0.90 | | 92.95 |
| Hourly | | 7.25 | | | 1.20 | | | 0.90 | | |
| Realtime | | 3.05 | | | 1.20 | | | | | | |

| Misc. Desc. | | | MISC. CHARGES: | |
|---|---|---|---|---|
| | | | TOTAL: | 92.95 |
| | | | LESS DISCOUNT FOR LATE DELIVERY: | |
| | | | TAX (If Applicable): | |
| | | | LESS AMOUNT OF DEPOSIT: | |
| | | | TOTAL REFUND: | |
| **Date Paid:** | **Amt:** | | TOTAL DUE: | $92.95 |

### ADDITIONAL INFORMATION
Full price may be charged only if the transcript is delivered within the required time frame. For example, if an order for expedited transcript is not completed and delivered within seven (7) calendar days, payment would be at the ordinary delivery rate.

### CERTIFICATION
I certify that the transcript fees charged and page format used comply with the requirements of this court and the Judicial Conference of the United States.

| SIGNATURE: *Toni Doyle Tusa, CCR, FCRR* | DATE 01-15-2010 |
|---|---|

*(All previous editions of this form are cancelled and should be destroyed)*

# EXHIBIT B



29058460
Jan 15 2010
3:42PM

MINUTE ENTRY
FALLON, J.
JANUARY 14, 2010

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * | MDL Docket No. 2047 |
| | * | SECTION L |
| | * | |
| This document relates to All Cases | * | JUDGE FALLON |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

The monthly status conference was held on this date in the Courtroom of Judge Eldon E. Fallon. The Court first met with Liaison Counsel and certain members of the Steering Committees to discuss agenda items for the conference. At the conference, counsel reported to the Court on topics set forth in Joint Report No. 7. This monthly status conference was transcribed by Ms. Toni Tusa, Official Court Reporter. Counsel may contact Ms. Tusa at (504) 589-7778 to request a copy of the transcript. A summary of the monthly status conference follows.

    I.    <u>PRE-TRIAL ORDERS</u>

The Court has issued the following Pre-Trial Orders:

Pre-Trial Order No. 1 entered June 15, 2009 – Initial Case Management

Pre-Trial Order No. 1A entered August 28, 2009 – Counsel must Enter Appearances for Served Parties or risk Default Judgment

Pre-Trial Order No. 1B entered October 9, 2009 – Amending Pre-Trial Order No. 1 to clarify the preservation of physical evidence during home remediation.

Pre-Trial Order No. 1C entered November 24, 2009 – Lifting the stay on motion practice, but continuing all motions filed in the MDL without date.  Pursuant to a November 25, 2009 Order, all motion practice in the *Gross* matter (09-6690) is stayed.

Pre-Trial Order No. 1D entered January 8, 2010 – Clarifies Pre-Trial Order 1C and lifts the stay with regard to responsive pleadings.
     The Court further clarified that the stay has been lifted and thus parties who want or need to file motions or responsive pleadings are now permitted to do so. However, because a motion or responsive pleading is filed on the record does not mean that the Court will immediately hear such.  Rather, when the time is appropriate the Court will categorize all outstanding motions and address each as necessary.

Pre-Trial Order No. 2 entered June 16, 2009 – Notice to Transferor Court

Pre-Trial Order No. 2A entered September 18, 2009 – Means of Tracking Remands in MDL 2047

Pre-Trial Order No. 3 entered July 6, 2009 – Designation of Plaintiffs' Liaison Counsel

Pre-Trial Order No. 4 entered July 6, 2009 – Designation of Defendants' Liaison Counsel

Pre-Trial Order No. 5 entered July 6, 2009 – Contact Information

Pre-Trial Order No. 5A entered July 9, 2009 – Counsel Contact Information Form

Pre-Trial Order No. 6 entered July 21, 2009 – Electronic Service (LexisNexis)

Pre-Trial Order No. 7 entered July 27, 2009 – Appointment Defendants' Steering Committee

Pre-Trial Order No. 7A entered August 4, 2009 – Amending PTO 7 re: Defendants' Steering Committee

Pre-Trial Order No. 7B entered August 27, 2009 – Amending PTO 7 re: list containing Defendants' Steering Committee and lists responsibilities for same

Pre-Trial Order No. 8 entered July 28, 2009 – Appointing Plaintiffs' Steering Committee

Pre-Trial Order No. 9 entered July 28, 2009 – Time and Billing Guidelines/Submissions

Pre-Trial Order No. 10 entered August 21, 2009 – All parties to provide PLC or DLC with photographic catalog of markings, brands, endtapes and other identifying markers found in affected homes by August 26, 2009. PSC and DSC to collect and submit data to the Court and inspection company for TIP a joint catalog of data to assist in training of inspections no later than August 28, 2009.

Pre-Trial Order No. 11 entered August 17, 2009 - Profile forms to be distributed to appropriate parties and filed and returned on or before September 2, 2009

Pre-Trial Order No. 12 entered August 25, 2009 – Court will prepare final version of Distributor Profile Form.

Pre-Trial Order No. 12A entered August 25, 2009 – Court adopted Distributor Profile Form be distributed to appropriate parties and returned to DLC Kerry Miller on or before 9/8/09, either electronically or by hard copy

Pre-Trial Order No. 13 entered August 27, 2009 – Court institutes and will supervise Threshold Inspection Program (TIP). Court appoints Crawford & Company to carry out the inspections.

Pre-Trial Order No. 13(A) entered November 24, 2009 – Amending the Threshold Inspection Program (TIP).

Pre-Trial Order No. 14 entered September 24, 2009 - Court approves Exporter, Importer or Broker Profile Form, and provides requirements for issuance and return of the form.

Pre-Trial Order No. 14(A) entered October 13, 2009 – Court approves a revised Exporter, Importer or Broker Defendant Profile Form.

Pre-Trial Order No. 15 entered September 25, 2009 – Counsel must provide privilege log for documents withheld in response to discovery requests. Also, the accidental production of privileged information does not constitute a waiver of the privilege.

Pre-Trial Order No. 16 entered September 25, 2009 – Pertains to the disclosure, use and protection of confidential information produced during the course of this MDL.

Pre-Trial Order No. 17 entered November 2, 2009 – Recognizing and Confirming KPT's Agreement to Accept Service of PSC's Omnibus Class Action Complaint.

Pre-Trial Order No. 18 entered November 5, 2009 – Appointing Phillip A. Wittmann to be the Homebuilders and Installers Liaison Counsel.

II.    PROPERTY INSPECTIONS

Crawford & Company ("Crawford") has inspected the initial thirty (30) homes pursuant to Pre-Trial Order No. 13 and the revised inspection protocol. Crawford is prepared to continue inspections upon notice from the parties or the Court.

Liaison Counsel informed the Court that all inspections for the *Germano* and *Hernandez* matters have been completed. Because of the damage caused to the properties as a result of the inspections, the Court encourages those persons interested in inspections to rely on samples obtained from the properties by the Court-appointed inspector, Crawford & Co.

III.    PLAINTIFF AND DEFENDANT PROFILE FORMS

In Pre-Trial Orders 11 and 12A, the Court approved a Plaintiff Profile Form, a Defendant Manufacturers' Profile Form, a Contractor/Installer Profile Form, a Builder Defendant Profile Form and a Defendant Distributor Profile Form. In Pre-Trial Order 14, the Court approved the Importer/Exporter/Broker Profile Form. Completed and signed profile forms have been submitted for many of the parties. The parties will continue to supplement responses as additional responses are received. As new parties are added to the MDL, those parties will respond to the appropriate profile form within 15 days of becoming a party to the MDL. DLC and HLC contend that many issues still remain with respect to the Plaintiff Profile Forms, including supplementation

of certain incomplete profile forms received to date by the DSC, and the lack of Plaintiff Profile

Forms received by the DSC that are the subject of a motion to dismiss (see Section VII(B)(b), *infra*).

Likewise, the PSC contends that many issues still remain with respect to Defendant Profile Forms,

including supplementation of certain incomplete profile forms and the lack of Defendant Profile

Forms received from Defendants.  The parties continue to discuss this issue.

Further, the parties have been discussing the creation of a Retailer Profile Form.  To

date, the retailer form has not been submitted to the Court.

IV.     PRESERVATION ORDER

On October 9, 2009, the Court issued Pre-Trial Order No. 1B, clarifying the protocol

for the preservation of physical evidence during home remediation.  Pre-Trial Order No. 1 continues

in effect regarding documents/ESI.

V.      STATE/FEDERAL COORDINATION

At the status conference on August 11, 2009, the Court instructed the PSC and DSC

to confect separate subcommittees on state and federal coordination.  The PSC and DSC each

proposed members to the subcommittee, but the Court has not yet taken action with respect to the

creation and duties of a formal subcommittee.

VI.     STATE COURT TRIAL SETTINGS

Defendants advised the Court, to the best of their knowledge, of the following:

1)      All trial settings in state court that are set over the next 12 months;

2)      All pending discovery motions in state court cases;

3)      All dispositive motions pending in state court cases; and

4)      Any state court issues that should be discussed as a matter of state/federal coordination.

In addition to the foregoing, the PSC advised the Court of all motions that are pending regarding tag-along cases and, to the extent known, assist in advising the Court regarding the above mentioned matters.

The Louisiana Attorney General filed suit in Louisiana state court against the Knauf defendants.  Service on the defendants has yet to be executed.

One additional suit has been filed in Louisiana state court.  Dawn Barrios submitted to the Court an updated disk containing the information for this matter.

VII.    <u>MOTIONS IN THE MDL</u>

On September 8, 2009, the Court issued an Order concerning the Court's directive to counsel for Plaintiffs and Defendants to indicate which motions needed to be heard on an expedited basis and to prioritize such motions and further set forth scheduling deadlines with respect to such motions.  The stay issued in Pre-Trial Order No. 1 was modified to allow the parties to file certain proposed motions.

A.      PSC Motions

a.  On November 11, 2009, the PSC filed a Motion to Compel Full and Complete Discovery From All Defendants [Doc. 430].  The motion was continued at the last status conference.  Thereafter, on December 29, 2009, the PSC filed a Motion to Compel Discovery from Defendants and Establish a Uniform Format of

6

Production [Doc. 667]. The PSC has conducted a number of meet and confers with various Defendants that are subject to the motion in an attempt to resolve outstanding issues. The hearing on the Motion to Compel Discovery from Defendants and Establish a Uniform Format for Production is set for hearing on January 14, 2010, following the monthly status conference.

b. On November 11, 2009, the PSC filed a Motion to Compel Discovery From Defendants, Venture-Supply, Inc. and Porter-Blaine Corp. [Doc. 432]. The matter was heard on December 4, 2009 and the Court ordered that the motion was denied as moot, reserving the right to re-file, if necessary, and further, scheduled a status conference to discuss discovery issues on December 18, 2009 at 1:30 p.m. The parties have continued to meet and confer and discuss outstanding discovery issues, specifically ESI.

c. On December 18, 2009, the PSC filed a Motion to Strike Pleadings for Failure to Comply with Pre-Trial Order No. 6 [Doc. 636]. The matter was set for hearing on January 14, 2010 following the monthly status conference. The PSC has withdrawn the motion.

d. On December 30, 2009, Plaintiffs filed a Motion to Amend Class Action Complaint by Interlineation in *Roberts* (09-5870) [Doc. 673].

e.  On December 30, 2009, Plaintiffs filed a Motion to Amend Class
Action Complaint by Interlineation in _Hinkley_ (09-6686) [Doc.
672]. Responses to the motion must be filed by January 12, 2010
and the matter is set for hearing following the status conference
on January 14, 2010.

f.  On January 12, 2010, Plaintiffs filed a Motion to Amend the
Amended Class Action Complaint by Interlineation in _Vickers_
(09-04117) [Doc. 727].

B.  DSC Motions

a.  On September 28, 2009, Distributor Defendants filed a Motion to
Dismiss or, Alternatively, to Strike Plaintiffs' Claims for
Economic Damages (Florida Law) [Doc. 295]. On November 13,
2009, the Honorable Judge Joseph Farina, Circuit Judge,
Eleventh Judicial Circuit, conducted a hearing on the economic
damage issue relating to Florida state law and Judge Eldon Fallon
of the MDL participated by phone in the hearing. The matter was
heard at the November monthly status conference in the MDL
and has been taken under submission by the Court. Judge Farina
issued a ruling on December 18, 2009 denying the motion. The
parties await a ruling on the matter from the MDL Court.

b.  On November 13, 2009, the DSC filed a Motion to Dismiss
certain plaintiffs based upon their failure to provide Plaintiff

8

Profile Forms pursuant to Pre-Trial Order No. 11 [Doc. 443].
The matter was set for hearing on December 10, 2009, at which
the Court directed the DSC to file a motion for rule to show
cause. In accordance with the Court's direction, the DSC filed a
Motion for Rule to Show Cause Why Cases Should Not Be
Dismissed For Failure to Comply With Pre-Trial Order No. 11
The Rule setting the hearing on January 14, 2009 after the status
conference was signed by the Court on January 5, 2009. On
January 6, 2009, the DSC mailed via certified mail the Rule and
Exhibit "A" to counsel for those plaintiffs who have not provided
a profile form. The DSC has not yet received the signed return
receipts from its certified mailing.

C.      Other

    a.   On September 24, 2009, the Court entered a preliminary default
         judgment against Taishan Gypsum Co. Ltd. [Doc.190]. Counsel
         for The Mitchell Co. has advised they need additional time to
         gather the evidence documents in support of the confirmation of
         the default judgment, and seek a continuance to a future date.

    b.   On December 24, 2009, The Mitchell Company, Inc., filed a
         Motion for Class Certification Against Taishan Gypsum Co., Ltd.
         [Doc. 653]. The PSC and Mitchell have communicated regarding
         the motion, as well as the default steps and timing issues

9

associated with such motion, and have agreed to defer further briefing on the motion. The Mitchell Company and the PSC will advise the Court regarding their meet and confers and will suggest, at a later date, that a briefing schedule and hearing on the Class Certification be established at a time that is appropriate after the conclusion of the remediation hearing.

c. On November 19, 2009, the Court entered a preliminary default judgment against Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd. [Doc.487]. The Court has established a scheduling order for a hearing in anticipation of further default proceedings in that matter. (See Section XX, *infra.*)

d. On October 23, 2009, Tudela's Classic Homes filed a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based upon incomplete diversity [Doc. 382]. The Court has not yet set a hearing date.

e. On October 23, 2009 (and again on December 23, 2009), Nautilus Insurance Company filed a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based upon incomplete diversity [Doc. 384]. The Court has not yet set a hearing date.

f. On November 4, 2009, HBW Insurance Services, filed a 12(b)(1), (2), and (5) motion to dismiss for insufficient service of process

and lack of subject matter jurisdiction [Doc. 408].    The Court

has not yet set a hearing date.

g.   On November 10, 2009, Sun Construction filed a motion for

leave to file a summary judgment relating to arbitration of claims

against Sun Construction prior to litigation [Doc. 428].      The

Court has not yet set a hearing date.

h.   On November 12, 2009, Lowe's Home Centers, Inc. moved the

Court to lift the stay and to allow a Motion to Deconsolidate from

MDL [Doc. 439].   The Court has not yet set a hearing date.

i.   On November 19, 2009, State Farm moved to sever the claims

against it in the *Bourdon* (09-7025) [Doc. 480] matter from the

builder and supplier defendants because the claims made by

plaintiffs are based upon different legal theories, involve different

factual and legal issues, and can be more efficiently adjudicated

in separate cases.    State Farm also filed a 12(b)(6) motion,

arguing that the policy at issue does not provide coverage for any

of the claims made by plaintiffs, and thus plaintiffs' Complaint

fails to state a claim for which the relief requested may be

granted.    The Court has not yet set a hearing date.

j.   On November 19, 2009, State Farm moved to sever the claims

against it in the *Hufft* (09-7016) [Doc. 477] matter from the

builder and supplier defendants because the claims made by

11

plaintiffs are based upon different legal theories, involve different factual and legal issues, and can be more efficiently adjudicated in separate cases. State Farm also filed 12(b)(6) motion, arguing that the policy at issue does not provide coverage for any of the claims made by plaintiffs, and thus plaintiffs' Complaint fails to state a claim for which the relief requested may be granted. The Court has not yet set a hearing date.

k.  On November 17, 2009, State Farm filed a Motion to Dismiss (Rule 12(b)(6)) the Petition for Damages in the *West* (09-6356) matter [Doc. 461]. The motion alleges that the policy at issue does not provide coverage for the claims made by plaintiffs and thus plaintiffs' complaint fails to state a claim for which the relief requested may be granted. The Court has not yet set a hearing date.

l.  On December 1, 2009, Tobin Trading, Inc. filed a Motion for a More Definitive Statement [Doc. 512], stating that the allegations of the *Germano* Second Amended Complaint are vague, ambiguous, conclusory and general in nature, and thus Tobin Trading cannot formulate a response. Tobin Trading also claims that the Second Amended Complaint does not state a claim for which relief can be granted. The Court has not yet set a hearing date.

12

m.  On December 2, 2009, Harbor Walk Development, LLC filed a 12(b)(1) motion as to personal and subject matter jurisdiction over Taishan in the *Germano* matter [Doc. 543]. Harbor Walk Development, LLC also re-urged its previously filed 12(b)(6) motion.    The Court has not yet set a hearing date.

n.  On December 4, 2009, DLC filed a Motion to Compel Discovery Responses from Homebuilders [Doc. 559], arguing that due to the expediency with which the MDL is progressing and the eminency of the *Germano* default proceedings, DLC needs to obtain certain information concerning remediation of properties by the homebuilders DLC and the Homebuilders are negotiating the scope of responses and appropriate documents in response to DLC's discovery requests.

o.  On December 10, 2009, Porter Blaine Corporation and Venture Supply, Inc. filed a 12(b)(6) Motion to Dismiss in the *Hinkley v. Taishan* action [Doc. 591].   The Court has not yet set a hearing date.

p.  On December 24, 2009, The Mitchell Company filed a Motion for Class Certification that was deemed deficient by the Clerk of Court. On January 11, 2010, the Motion for Class Certification was refiled [Doc. 722].

13

On November 29, 2009, the Court issued Pre-Trial Order No. 1C which allows parties to file motions before the MDL Court and provides that the motions will be continued without date, unless a motion is specifically excepted from the continuance set forth in the Pre-Trial Order and further that the Court will organize and prioritize the continued motions and in due course, set the motions for hearing and further that no responses to the motions are due until two (2) weeks before the hearing date set by the Court.  On January 8, 2010, Pre-Trial Order 1D was issued to clarify Pre-Trial Order 1C and lifts the stay with regard to responsive pleadings.

VIII.   DISCOVERY ISSUES

On September 2, 2009, the PSC provided its First Set of Discovery Requests on Defendants.  Numerous meet and confers have taken place between the parties in an attempt to narrow issues in dispute.  The meet and confers included topics relating to hard copy document production, ESI and also addressed the FRCP 30(b)(6) deposition notices that were provided to Defendants on September 2, 2009.

On October 19, 2009, the 30(b)(6) deposition of the La Suprema entities took place. On December 16 and 17, 2009, the 30(6)(6) deposition of Venture Supply and Porter Blaine entities took place.  The 30(b)(6) deposition of Mazer Super Discount Store is scheduled for January 29, 2010.  The 30(b)(6) deposition of Interior/Exterior Building Supply, LP is scheduled for February 5, 2010.  Additionally, the 30(b)(6) deposition of the Lennar entities has been postponed and is to be rescheduled at a later date.  No other Defendants' 30(b)(6) depositions have been scheduled as of yet.  The PSC has requested production of documents, ESI and dates for depositions.

There is currently pending a Motion to Compel Full and Complete Discovery From All Defendants, which includes a request for the establishment of a document production protocol.

14

(See Section VI, *infra.*)    The issue has been discussed in several prior status conferences and numerous meet and confers between the parties have taken place.   The PSC has indicated to Defendants that it would be willing to agree to the same format of production of ESI for all Defendants that was agreed to with Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Plasterboard (Wuhu) Co., Ltd.  The PSC continues to request that electronic discovery from all Defendants be provided at this time.  Thus far, the only Defendant that has agreed to provide electronic discovery in a protocol acceptable to the PSC are the Knauf entities.

On October 15, 2009, the HSC propounded Personal Jurisdiction Interrogatories and Request for Production of Documents to Knauf Gips KG in connection with Knauf Gips' objection to personal jurisdiction.   Also, on October 30, 2009, the PSC propounded its First Set of Interrogatories and Request for Production Concerning Jurisdictional Issues to Defendants, Knauf Gips KG, Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd. and Knauf Plasterboard (Dongguan) Co., Ltd.  (See Section XIX, *infra.*)  On December 4, 2009, the Knauf entities provided responses to plaintiffs' and the HSC's discovery requests and on January 4, 2010 Knauf Gips provided some documents responsive to the jurisdictional discovery requests.  Knauf Gips is in the process of producing additional documentation and undertaking the collection of ESI documents responsive to the requests. The 30(b)(6) deposition of Knauf Gips KG was noticed to take place on January 12 and 13, 2010, but the matter has been postponed and will be rescheduled. The parties will be prepared to discuss this further at the monthly status conference on January 14, 2010.

IX.    FREEDOM OF INFORMATION ACT/PUBLIC RECORDS REQUESTS

Several Freedom of Information Act/Public Records Requests have been made by Plaintiffs.  The

following outlines the status of responses:

|  | STATE | REQUEST MADE TO | DATE OF REQUEST | DESCRIPTION OF REQUEST | DATE OF RESPONSE | DOCUMENTS RECEIVED | DOCUMENTS SENT TO DEFENSE |
|---|---|---|---|---|---|---|---|
| 1 | FED | Centers for Disease Control/Agency | 8/25/09 - General request to CDC's FOIA office in Atlanta regarding documents relating to Chinese Drywall | Fed. FOIA Request Toxic Substances and Disease Registry | 8/31/09 - CDC acknowledged request and assigned request number | NO |  |

| 2 | FED. | Consumer Product Safety Commission | 7/17/09 - Letter to FOIA Requester Service regarding documents relating to Chinese Drywall, from Victor Diaz      7/20/09 - Letter to Alberta E. Mills, FOIA Officer regarding documents relating to Chinese Drywall, from Ervin Gonzalez     9/29/09 - Letter to Pamela McDonald enclosing check for $1,400.00 to complete processing of request     11/02/09 - Letter to Todd Stevenson, Director, Office of the Secretary, Div. of Info. Mgmt., by | Fed. FOIA Request to CPSC     Request to CPSC requesting info on status of July 17, 2009 request including time-line of correspondence | 9/24/09 - Letter from Pamela McDonald stating CPSC has completed initial file search but processing requires fees of $1,400.00 and processing will take 90-120 days, to Victor Diaz     9/24/09 - Letter from Pamela McDonald stating CPSC has completed initial file search but processing requires fees of $1,400.00 and processing will take 90-120 days, to Ervin Gonzalez     11/3/09 - Letter from Todd Stevenson, partial response incl. 44 | YES - Partial Response | YES-11/13/09 |
|---|------|------|------|------|------|------|------|

| 3 | FED | EPA | 8/25/09 - General request to EPA's FOIA office in Atlanta and to the National FOIA officer for the EPA in Washington DC, regarding documents relating to Chinese Drywall | Fed. FOIA Request | 8/26/09 - Letter from Larry F. Gottesman, National FOIA Officer at EPA's National Office acknowledged request and stated that the request was forwarded to the Office of Solid Waste and Emergency Response Service Center

8/27/09 - Letter from Kindra Kallahan, FOIA Officer at EPA's FOIA office in Atlanta, assigning FOIA Specialist Karen Cody and providing fee schedule and response times for processing

11/5/09 - EPA Partial Response | YES - Partial Response - 11/5/09; YES - Partial Response/Denial - 11/24/09 (OIG);  YES - Partial Response (EPA - Agency); YES - Final Response (EPA - Agency) - 12/3/09 | YES-11/25/09 (3 cds received 11/5/09); YES - 12/8/09 (OIG response from 11/24/09); YES - 12/15/09, 3 cds and two letters (EPA - Agency responses from 11/20/09 and 12/3/09) . |

| 4 | FL | Fla. Dept. of Financial Services, Division of State Fire Marshall | **7/17/09 -** General Ch. 119 request by Victor Diaz **7/20/09 -** General Ch. 119 request by Ervin Gonzalez | Fla. Ch. 119, Public Records Request (requesting public records re reports of fires in Fla. Structures containing imported Chinese Drywall | **7/29/09 -** Letter from Nazlee Aziz, Records Section, stating no reports of fires referencing Chinese Drywall at this time | NO | |
|---|----|----|----|----|----|----|----|
| 5 | FL | Florida Department of Health | **2/10/09 -** Request to FDOH **7/8/09 -** Second request to FDOH | Fla. Ch. 119, Public Records | **5/3/09 -** First set of production, see CD **7/17/09 -** Second set of production, see CD | YES | YES-10/21/09 (both productions) |
| 6 | LA | Louisiana Dept. of Economic Development | **8/4/09 -** Request to Secretary Stephen Moret requesting documents relating to Chinese Drywall | FOIA Request under LSA-RS 44:1 "Public Records Act" | **8/26/09 -** Letter from Matt Braud claiming consumer complaints and health issues are not within the scope of the organization | NO | |

| 7 | LA | Louisiana Dept. of Environmental Quality | 8/4/09 - Request to Secretary Harrold Leggett, PH.D. requesting documents relating to Chinese Drywall | FOIA Request under LSA-RS 44:1 "Public Records Act" | Only response was phone call stating that they do not have any such documents | NO | | |

| 8 | LA | La. Dept. of Health and Hospitals | **8/4/09 -** Request to Secretary Allen Levine PH.D. requesting documents relating to Chinese Drywall<br><br>**10/13/09 -** Request to Michael J. Coleman, Office of the Secretary, further request for records and response to DDH's August 10 letter | FOIA Request under LSA-RS 44:1 "Public Records Act" | **8/10/09 -** Michael J. Coleman responds the records requested are confidential so they won't be able to provide any documents; however, DHH notes several items could be obtained by other federal agencies under FOIA.<br><br>**10/16/09** - Michael J. Coleman response DHH will re-review the records responsive to the request and will arrange for delivery if any are subject to disclosure under the Public Records Act | NO | | |

| 9 | LA | La. Dept. Of Justice | 8/4/09 - Request To Attorney General James D. "Buddy" Caldwell requesting documents related to Chinese Drywall | FOIA Request under LSA-RS 44:1 "Public Records Act" | 9/3/09 - Assistant Attorney General Susan Crawford claims information not subject to public record law | NO | | |
|---|---|---|---|---|---|---|---|---|

Upon receipt of requested information, the PLC has been transmitting copies to DLC pursuant to DLC's request.

The Plaintiffs seek copies now of whatever public records the Defendants have received in response to the FOIA/public records requests. To the best of the DSC's knowledge, no defendants have made FOIA/public records requests, and thus no documents exist.

X.   TRIAL SETTINGS IN FEDERAL COURT

The Court has advised that it plans to establish "Bellwether" trials (see Minute Entry dated July 9, 2009 [Doc. 111]). The Court has further advised that any such trials will be limited to property damage only. *Id.* at sect. IV;   The parties have been discussing the protocol and procedure for selecting Bellwether trial candidates. The PSC suggests a sufficient representative sample of cases be selected with regard to geography, concentration of properties, distinctive facts and legal issues. The Defendants suggest that the selection of Bellwether plaintiffs must be limited to the approximately 31 plaintiffs that have submitted profile forms where personal injuries are not claimed. A list of these plaintiff properties has been made available to the PSC and the Court. The parties continue to discuss the selection of Bellwether trials.

22

The Court has set aside the following dates for possible Bellwether trials:

March 15, 2010.

At the status conference on December 10, 2009, the PSC announced its suggested Bellwether trial for the March 15, 2010 date as *Tatum B. Hernandez and Charlene M. Hernandez, individually and obo their minor children, Grant M. Hernandez and Amelia C. Hernandez versus Knauf Gips KG, et al*, USDC EDLA No. 2:09-cv-06050 (see Section XXI, *infra*.).

The parties submitted a Joint Proposed Case Management Order for the *Hernandez* case. The Court will consider the Order.

XI.   FILINGS IN THE MDL

The parties also continue to discuss the prospect of direct filings and acceptance of service with Defendants under such circumstances maintaining Defendants' objections as to personal jurisdiction and other defenses, including the right to return cases to the originating venue for trial purposes. Plaintiffs assert this process allows for multiple plaintiffs to file claims in one matter (see Minute Entry dated July 9, 2009 [Doc. 111]). Six (6) suppliers have advised that they will consent to direct filings in the MDL and one (1) supplier has a specific reservation. Builders have advised that they are willing to accept service of any cases, but are not willing to agree to direct filings in the MDL.

XII.   NOTICES OF APPEARANCE AND DEFAULT JUDGMENTS

Pursuant to Pre-Trial Order 1A, counsel must file Notices of Appearances for all parties served in MDL cases or risk entry of a default judgment. On December 15, 2009, the PSC filed a Notice to Defendants of Initially Relevant Pre-Trial Orders [Doc. 617] and suggested that all named Defendants in the *Gross v. Knauf Gips* case (see Section XVI, *infra*.) familiarize themselves

with Pre-Trial Orders issued by the Court, as well as the Court's website.  Counsel making an appearance are encouraged to familiarize themselves with the same information.

### XIII.   INSURANCE ISSUES

There are a number of issues involving insurance matters that will be addressed in this litigation.  These include actions against insurers of manufacturers, exporters, importers, brokers, distributors, builders, drywall contractors/installers and homeowners.

The Court declared its preference for handling insurance matters in the MDL.

### XIV.   SERVICE OF PLEADINGS ELECTRONICALLY

The LexisNexis File & Serve System has been established for the service of pleadings electronically in the MDL in order to facilitate service to all counsel.  All counsel are required pursuant to Pre-Trial Order No. 6 to serve pleadings both through LexisNexis and the Electronic Filing System (ECF) of the Eastern District of Louisiana Court.  Pre-Trial Order No. 6 governs service of pleadings electronically and sets forth the procedure required for all counsel to register with LexisNexis.

In addition to the foregoing, the parties have been advised that LexisNexis is in the process of establishing a system that allows for tracking state cases involving Chinese drywall.

### XV.   MASTER COMPLAINT

The PSC informed the Court that a Master Complaint likely would not be necessary in the instant matter.

### XVI.   CLASS ACTION COMPLAINT (INDETERMINATE DEFENDANT)

On October 7, 2009, a Class Action Complaint (Indeterminate Defendant), *Gross, et al v. Knauf Gips KG, et al*, Case No. 2:09-cv-06690 (E.D.La.), was filed with the Court and on

October 19, 2009, an amendment was filed. The Court has directed that the stay on motion practice instituted by Pre-Trial Order No. 1 remains in place in the Class Action Complaint (Indeterminate Defendant) until further notice from the Court. The PSC filed a Notice to Defendants of Initially Relevant Pre-Trial Orders [Doc. 617] and suggested that all named Defendants familiarize themselves with Pre-Trial Orders issued by the Court, as well as the Court's website.

The Court was informed that the Clerk's Office is in the process of getting summons out to the Defendants named in the Complaint.

The PSC informed the Court that it plans to file three more Omnibus Complaints, one for non-manufacturer defendants, a second against Knauf defendants, and one involving the *Gross* defendants.

## XVII.   OMNIBUS CLASS ACTION COMPLAINT

On November 2, 2009, Pre-Trial Order No. 17 was issued which recognizes and confirms Knauf Plasterboard (Tianjin) Co., Ltd.'s agreement to accept service of the PSC's Omnibus Class Action Complaint. The Omnibus Class Action Complaint, *Sean and Beth Payton, et al v. Knauf Gips KG, et al,* Case No. 2:09-cv-07628 (E.D.La.), was filed with the Court on December 9, 2009 and Knauf Plasterboard (Tianjin) Co., Ltd. waived its right to demand service of process through the Hague Convention.

## XVIII. SPECIAL MASTER

On November 24, 2009, the Court appointed Michael K. Rozen of Feinberg Rozen, LLP, as Special Master.

## XIX.   KNAUF GIPS KG PERSONAL JURISDICTION MATTER

On September 21, 2009, Knauf Gips KG filed a Motion for Protective Order to Require Use of the Hague Evidence Convention.  On October 5, 2009, the PSC filed a Response in Opposition and the HSC also filed a Response in Opposition.  On October 12, 2009, Knauf Gips KG filed a Motion for Leave to File Reply in Support of Motion of Knauf Gips KG for Protective Order to Require Use of the Hague Evidence Convention.   On October 27, 2009, the Court issued Order & Reasons denying the motion.

On September 29, 2009, the Court issued an Order advising that the briefing schedule originally established in connection with a Motion for Protective Order would extend well into January 2010, after commencement of the first Bellwether trial, and therefore, the parties were directed to discuss the matter with the Court.  The PSC and the HSC have each issued discovery relating to personal jurisdiction issues to Knauf Gips KG. (See Section VIII, *infra*.)

XX.    DEFAULT PROCEEDINGS IN *GERMANO* AND REMEDIATION HEARING.

On December 21, 2009, the Court issued a Scheduling Order [Doc. 643] in *Germano, et al v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd, et* al, Case No. 2:09-cv-6687 (E.D.La.).  The Scheduling Order applies to a hearing in anticipation of further default proceedings in that matter which is pending before the MDL Court.  The evidentiary hearing before the Court is to commence with *Daubert* hearings starting on January 25, 2010 and the focus of the hearing is to be the scope and extent of the appropriate remediation necessary for a number of properties that will adequately represent a cross section of properties at issue in the case that are impacted with allegedly defective Chinese drywall.  On November 20, 2009, Venture Supply and Porter-Blaine filed an objection to the default proceedings against Taishan in the *Germano* matter.

On December 2, 2009, the Court entered a Consent Order. Upon entry of the Consent Order, the objection filed by Venture Supply and Porter-Blaine was deemed withdrawn and moot. Motions to intervene on behalf of seven (7) plaintiff property owners and by Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT") and The Mitchell Company were filed prior to December 4, 2009. Inspections of the seven (7) intervenor plaintiffs' homes have taken place and expert reports have been exchanged. Plaintiffs have disclosed twenty experts, KPT has disclosed four and The Mitchell Company has disclosed one expert witness. To date, the parties have been unable to negotiate a mutually agreeable schedule for the depositions of the experts in order to complete the depositions in sufficient time to file Daubert motions pursuant to the Court's scheduling order. In the event that the parties are unable to reach an agreement prior to the monthly status conference, the parties will provide their suggested deposition schedules to the Court and request guidance from the Court.

The trial teams for the Germano hearings met with the Court following the monthly status conference.

XXI.   *HERNANDEZ* TRIAL

The *Tatum B. Hernandez and Charlene M. Hernandez, individually and obo their minor children, Grant M. Hernandez and Amelia C. Hernandez versus Knauf Gips KG, et al,* USDC EDLA No. 2:09-cv-06050, matter has been selected as the proposed trial setting for the March 15, 2010 setting. The Court has not yet issued an Order setting the matter for trial; however, the parties are meeting and conferring regarding the establishment of a scheduling order, deposition dates, deadlines for discovery, etc. The PSC and KPT are discussing a proposed scheduling order and is waiting for a response from Knauf.

XXII.   NEXT STATUS CONFERENCE

The next monthly status conference will be held on February 11, 2010, at 9:00 a.m. in the Chambers of Judge Eldon E. Fallon.  Additionally, a telephone status conference for the *Germano* and *Hernandez* trial teams will be held on January 28, 2010, at 10:00 a.m.  The call-in information and other relevant dates will be posted on the Court's Drywall MDL website, www.laed.uscourts.gov/drywall/drywall.htm under the "Calendar" link.

28