UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : :: : : : : | MDL NO: 2047<br>SECTION: L<br>JUDGE: FALLON<br>MAG.JUDGE: WILKINSON |

**This pleading relates to:**
**CASES IN WHICH MANUFACTURER DEFENDANTS ARE SERVED[1]**

**MANUFACTURER DEFENDANTS' REQUEST FOR CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW**

COME NOW "Manufacturer Defendants", KNAUF PLASTERBOARD (TIANJIN) CO. LTD ("KPT"), KNAUF PLASTERBOARD (WUHU) CO., LTD ("Knauf Wuhu") and KNAUF GIPS, KG ("Knauf Gips")[2] and file this Request for Certification and Incorporated Memorandum of Law. Manufacturer Defendants request

---

[1] Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd and Knauf Gips KG have been served in *Janet Morris-Chin, et al. v. Knauf Plasterboard (Tianjin) Co., Ltd., et al.*, 09-4119 and *Mitchell v. Knauf*, 09-4115; Knauf Plasterboard (Wuhu) Co., Ltd. has been served in *Karin Vickers, et al. v. Knauf Gips KG, et al.*, 09-4117 and *Lisa Lebron, et. al. v. Knauf Gips KG, et. al.* Knauf Plasterboard (Tianjin) Co., Ltd. has accepted service in *Hernandez v. Knauf*, 09-6050. This Motion is being filed in those cases only. The cases are representative of the claims made in other cases and other jurisdictions. For purposes of judicial economy, pursuant to the Court's briefing schedule and because the cases are styled as class actions involving multiple states, KPT, Knauf Wuhu and Knauf Gips are addressing the Economic Loss Rule in jurisdictions in which they have been named as defendants, but not yet served: Florida, Alabama, Mississippi and Louisiana.

[2] Knauf Gips joins in this motion to the extent it is required by the Court's scheduling order. By joining the Motion, Knauf Gips KG does not waive any of its rights to object on any grounds in these or in any other proceedings, including without limitation to: (i) the sufficiency of process or the service of process upon it; (ii) the jurisdiction of this or any other court over it; and/or (iii) any discovery that may be served upon it on any grounds including, without limitation, that such discovery violates the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

certification to the United States Fifth Circuit Court of Appeals of this Court's January 13, 2010 Order (Rec. Doc. No. 741, attached hereto as Exhibit A) denying their motion to dismiss tort claims in the "Chinese drywall" litigation premised upon the Economic Loss Rule ("ELR"), as interpreted by the laws of Florida, Alabama, Mississippi and Louisiana. As grounds for this Certification Request, Manufacturer Defendants respectfully state as follows:

## INTRODUCTION

Certification for interlocutory review is warranted in this instance to review a potential error of law that will impact damage claims that some independent third parties estimate could involve hundreds of millions, or perhaps billions of dollars[3], in hundreds of lawsuits in this MDL, as well as those pending in state courts in Florida, Alabama, Mississippi and Louisiana.

Manufacturer Defendants respectfully submit that this Court's Order refusing to apply the ELR to this litigation is contrary to established precedent in each of the four state jurisdictions. The contrary arguments on this point made before this Court and interpreted in this Court's ruling show that a substantial ground for difference of opinion exists in applying the ELR to this litigation. The debate in this area of the law is acknowledged by this Court in its own order: **"The difficulty in determining whether to apply the doctrine has been recognized by courts and scholars alike."** Exhibit A, at p. 13 (emphasis added).

[3] Melanie Trottman and M.B. McQueen, *CPSC Ties Drywall, Corrosion*, Wall Street Journal, November 24, 2009, at A2. "Consulting firm Towers Perrin estimates drywall damages of $15 to $25 billion, including litigation costs."

Manufacturer Defendants firmly believe, based upon case precedent and statutory law, that the ELR is a viable bar to tort liability in each state, and a resolution of this issue by an appellate court will materially advance the termination of this litigation. Otherwise, Manufacturer Defendants will be fundamentally prejudiced by defending claims that should be dismissed based on well-established precedent.

**STANDARD FOR CERTIFICATION**

This Court has jurisdiction pursuant to 28 U.S.C. § 1292(b) to certify to the United States Fifth Circuit Court of Appeals an interlocutory order if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The decision to permit such an appeal is in the discretion of this Court, *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 405, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004), and that discretion should be exercised due to the tremendous stakes involved. The ELR issue is a question of law and its resolution will materially advance the ultimate termination of the litigation – thereby saving time, expense, and judicial resources. *Ryan v. Flowserve Corp.*, 444 F.Supp.2d 718, 723 (N.D. Tex. 2006) *see also Ryan*, 444 F.Supp.2d at 723 (certification should be used where it will "speed up the litigation"); 16 Charles A. Wright, Arthur Miller & Edward H. Cooper, Federal Practice and Procedures, Section 3930 at 439 (2nd ed. 1996) (certification is helpful "by accelerating or simplifying trial court proceedings"). If the issue is not addressed by the Fifth Circuit, and the Manufacturer Defendants are correct in their contention that this

Court has misapplied the ELR, Defendants will be fundamentally prejudiced by the lack of appellate review of an issue with such wide ranging economic implications.

## STATEMENT OF FACTS

This MDL includes approximately 212 cases involving properties in Florida, Alabama, Mississippi and Louisiana. For the purposes of this Request, the subject complaints in all four states are identical in all material aspects, including the nature of the tort claims and damage allegations. The tort claims raised in the complaints include strict liability, negligence, gross negligence and negligence per se. The specific damage claims include repair and replacement costs, repairs for appliances, medical expenses, and incidental and other related expenses. *See e.g. Allen v. Knauf GIPS, et al.*, 2:09-CV-54-FtM-99-DNF; *Ankney v. Knauf Gips KG* (09-CV-166-FtM-99SPC). In Louisiana, virtually identical damage claims are made in *Jeanette Mills v. Knauf Gips KG,* 3:09-CV-00721-JJB-SCR. In another Louisiana case, *Marrero v. Knauf Gips KG*, 1:09-CV-5916, Plaintiffs allege incidental and consequential damages for costs of moving during repairs, rental value during the repair period, repair costs and the loss of the use and enjoyment of the property. Similarly, in Mississippi and Alabama, Plaintiffs allege damages including repair and replacement costs, medical expenses and incidental and related expenses. *Gagnard and Legandre v. Knauf Gips KG* (09-CV-654-LGRHW); *Kokoska v. Knauf Gips KG* (1:09-CV-00371-N); *Rayfield v. Knauf Gips KG* (1:09-CV-00255-KD-C).

## ARGUMENT

### I. THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW

In its Order, this Court framed the question as "whether the [ELR] applies to bar the tort claims of the Plaintiffs." Exhibit A. However, Defendants respectfully submit

that this frames the issue too broadly because Defendants specifically limited their motion to dismiss (Rec. Doc. No. 304) to claims for economic damages only, and did not address other tort claims for damages, including damage to "other property" and personal injury. Consequently, the Manufacturer Defendants respectfully submit that the controlling issue is:

> **Does the ELR, as applied by the state law of Florida, Alabama, Mississippi and Louisiana, bar recovery in tort when one component of a house, in this case, drywall, causes injury to another component, or otherwise causes economic loss?**

Because the majority of the Plaintiffs' claims are affected by the ELR, it is undisputed that the application of the ELR is a controlling question of law in this case.

## II. THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

Key factors in a "substantial ground for difference of opinion" inquiry include a divergence of authorities and a lack of unambiguous case law on point. *Id., citing Sussman v. Salem, Saxon & Nielsen, P.A.*, 150 F.R.D. 209 (M.D. Fla. 1993). As evidenced by the parties' briefs and this Court's own lengthy analysis of the ELR, especially as it relates to Florida and the interpretation of Florida Supreme Court precedent,[4] there is a substantial ground for difference of opinion about the application of the ELR in the state jurisdictions. *See City of Clarksdale v. Bellsouth Telecommunications, Inc.* 2008 U.S. Dist. LEXIS 57941 (N.D. Miss. 2008).

With respect to each jurisdiction, the Manufacturer Defendants address the substantial grounds for difference of opinion below:

---

[4] The majority of claims arise in Florida.

**A. FLORIDA**

The leading Florida case on the ELR is *Casa Clara Condominium Ass'n. Inc. v. Charley Toppino and Sons, Inc.*, 620 So. 2d 1244 (Fla. 1993), a case whose meaning and affect was extensively argued by both sides. In that case, the Florida Supreme Court held:

> Economic Loss has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property . . . which are protected by contract law, rather than tort law.'

*Id*, at 1246.

In *Casa Clara*, a homeowners association filed suit against the supplier of allegedly defective concrete used for constructing houses. During construction the concrete supplier, Toppino, mixed excess salt into the concrete and the salt corroded the concrete's reinforcing steel, causing the concrete to fracture and break. *Id.* The plaintiffs alleged that their houses and component parts were damaged by the defective concrete *Id.* at 1245. The plaintiffs sought economic damages for the lost value of their houses caused by the defective concrete and also alleged that the concrete presented a risk of personal injury. *Id.* at 1247. The court in *Casa Clara* held that the completed house constituted "the product" so that the plaintiffs had no tort claim against the concrete supplier under the ELR. *Id.*

As the Florida Supreme Court held:

> The homeowners also argue that Toppino's concrete damaged 'other' property because the individual components and items of building material, not the homes themselves are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant. Generally, house buyers have little or no interest in how or where the

> individual components of a house are obtained. . . . These homeowners bought finished products—dwellings—not the individual components of those dwellings. They bargained for the finished products, not their various components. The concrete became an integral part of the finished product and, thus, did not injure 'other' property.

*Id.*

The ELR was developed for cases just like the Chinese drywall litigation, "to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided by warranty law." *See Indemnity Insurance co. of North Am. v. American Aviation, Inc.*, 891 So. 2d 532, 538 (Fla. 2004).

This Court, adopting the arguments of the Plaintiffs and others, found that the drywall at issue was different than the crumbling concrete of *Casa Clara* and other like Florida cases because:

> The Defendants fail to note the factual discrepancies between [these] two cases. *Casa Clara* involved crumbling, cracking concrete which failed [to] service its intended purpose as a support foundation for a building, while the Chinese drywall has and is currently serving its intended purpose as a room divider.

Exhibit A at 20. The Defendant Manufacturers believe that if the phrase "as part of an integral component of the product itself, the home" is added to the last sentence of the above quotation, this Court's ELR ruling would be different.

Manufacturer Defendants have argued under *Casa Clara* the manner in which a product fails is irrelevant when the only damage sustained is to the product itself. There is no difference between the failing cement which allegedly damaged the other components in a house in *Casa Clara*, and the Chinese drywall in this case which allegedly also damages HVAC systems, electrical wiring and other components of a house. The alleged impact on other components of a house attributed to off-gassing of

Chinese drywall is indistinguishable from the alleged deterioration of other home components caused by the installed plywood in *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734 (11th Cir. 1995), or the rotting siding in *In re Masonite Corp. Hardboard Siding Products Liability Litigation*, 21 F. Supp. 2d 593 (E.D. La. 1998)(ELR applied under Florida law in analogous circumstances against Lennar). At the very least, it is an arguable point upon which there is substantial ground for a difference of opinion.

This Court's own words in distinguishing *Casa Clara* from the present case show just how debatable the applicability of the ELR is in this case under Florida law. First, this Court distinguished *Casa Clara* on its facts, finding that in that case the product was structurally inferior, while in this case there was no such structural inferiority: "The Chinese drywall is not structurally inferior drywall, nor does it fail to serve its intended structural purpose; rather, its defects go beyond disappointed economic expectations, causing harm which justifies access to tort remedies." Exhibit A at 21. However, this analysis requires a finding of fact that is appropriate at a summary judgment stage, but not when addressing a motion to dismiss that is limited to the four corners of the complaint.

Second, this Court found *Casa Clara* distinguishable because in this case there was "actual physical injury as a result of the Chinese drywall in their homes." In addition, the Court finds this case analogous to the asbestos litigation, which "provides further support" for the finding that ELR does not bar tort claims for economic loss. Exhibit A at 27. These are distinctions not found in *Casa Clara* or its progeny (and certainly no Florida court has applied the logic from asbestos-related injuries to cases like

this involving injury to the product itself). In fact, *Casa Clara* did hold that homeowners such as those here should not be exempt from the ELR:

> We are urged to make an exception to the economic loss doctrine for homeowners. . . and homeowners are an appealing, sympathetic class. If a house causes economic disappointment by not meeting the purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law. There are protections for homebuyers, however, such as statutory warranties, the general warranty of habitability, and the duty of sellers to disclose defects, as well as the ability of purchasers to inspect houses for defects. Coupled with homebuyers' power to bargain over price, these protections must be viewed as sufficient when compared with the mischief that could be caused by allowing tort recovery for purely economic losses. Therefore, we again 'hold contract principles more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage.'

*Casa Clara,* 620 So. 2d at 1247. In addition, Manufacturer Defendants do not seek to strike the Plaintiffs claims for personal injuries resulting from the allegedly defective drywall

Third, this Court questions whether *Casa Clara* should be looked at for guidance, in part because it was a 4-3 decision with a vigorous dissent. However, despite the number of judges whose opinion prevailed, it is still a decision of Florida's highest court and should be treated as binding precedent. In addition, there are a number of cases following *Casa Clara*, such as: *Fishman v. Boldt*, 666 So. 2d 273 (Fla. 4th DCA 1996) (applying *Casa Clara* the appellate court applied the ELR to deny a homeowner's claim for damages to a pool, patio, and house caused by the collapse of a defective seawall); *Indemnity Insurance Co. v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004) (explicitly reaffirming the ELR in a product liability context as announced in *Casa Clara*); *Pulte Home Corp.*, 60 F.3d at 739 (holding the ELR precluded tort damages where chemicals in plywood used for roofing rendered the roof defective since the roof

was not considered "other property"); *Premix-Marbletite Mfg.*, 145 F. Supp 2d at 1358-9; *In re Masonite Corp.*, 21 F. Supp. 2d at 602 (dismissing tort claims for economic loss based on damage caused by defective sideboard installed in house).

Finally, even state courts within Florida are divided on the application of the ELR to the Chinese drywall cases. Judge Farina in Miami-Dade County ruled as did this Court; however, the only other Florida trial court considering the very same facts held to the contrary.[5] A Lee County Florida Circuit Court found *Casa Clara* dispositive and dismissed the plaintiffs' claims for economic damages – damages to household components – arising from Chinese drywall. Exhibits B and C, attached hereto. In that case, plaintiffs attempted to allege a tort cause of action for negligence against a drywall contractor with allegations for economic damages very similar to those in the instant case, including damage to other property such as an HVAC system, copper wiring and other metals throughout the house. In dismissing the claims under the ELR, the court held that "Plaintiffs' alleged damages are purely economic losses as defined by Florida law. . . . Plaintiffs' contention that 'other property' has been damaged, in an effort to avoid the economic loss rule, has been squarely rejected by the Supreme Court of Florida."[6] The Lee County court did not consider damages or claims that were not raised in the complaint or engage in any attempt to distinguish drywall from other building materials. If two Florida state court judges, addressing the same set of facts, can rule

[5] Knauf Plasterboard (Tianjin) Co., Ltd., filed a Petition for Writ of Certiorari with the Florida Third District Court of Appeals. On January 25, 2010, that appellate court made an initial determination that there was sufficient merit to the Petition to require Respondents, including Lennar Homes, to file a response.

[6] The Lee County court allowed the plaintiffs leave to amend to allege "damages to other metals (i.e. jewelry) if they believe it is appropriate to do so."

differently on this issue applying Florida law, there is an obvious grounds for a difference of opinion.

**B. ALABAMA**

Alabama courts have also adopted the ELR and applied it to product manufacturers. *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671 (Ala. 1989) (affirming grant of summary judgment to defendant on plaintiffs' negligence claim based on the ELR for damage to the product itself); *see also Bay Lines, Inc. v. Stoughton Trailers Inc.*, 838 So. 2d 1013, 1019 (Ala. 2002); *In re Fema Trailer Formaldehyde Products Liab. Litig.*, 2008 U.S. Dist. LEXIS 103249 (E.D. La. 2008) (dismissing plaintiffs claims against manufacturer defendants under Alabama law for economic losses alleged under strict liability and negligence theories based on the ELR); *Wellcraft Marine, a Division of Genmar Industries, Inc. v. Sarzour,* 577 So. 2d 414 (Ala. 1990) (barring tort claims based on economic loss where a boat was damaged as a result of manufacturing defects in the boat).

In its Order, this Court attempts to distinguish the instant case from the aforementioned Alabama case law as follows:

> In *Lloyd Wood*, the front-end loader was not performing as such because it caught fire, in *Wellcraft*, the boat was not operating because of defective parts in it, and in *Bay Lines,* the fiberglass panels on the trailers were no longer sufficiently protecting the trailers. In the instant matter, the Chinese drywall has not been destroyed nor has it ceased to function for its intended purpose; rather, it is contaminating the health and homes of the Plaintiffs.

Exhibit A at 21.

However, reasonable people can differ about whether, for example, there is a real difference between a boat like that in *Wellcraft,* which was not operating because of a defective part, and a home, which is purportedly uninhabitable due to a defective

component, drywall. In *Wellcraft,* the boat remained in tact, although water began seeping in due to a defective component part of the boat; in this case the homes remain intact, but it is alleged that there is corrosion to metal materials in the homes allegedly from off-gassing as a result of the drywall, a defective component part of the home. *Wellcraft Marine* 577 So. 2d at 416. Thus, Manufacturer Defendants respectfully submit that this case is factually indistinguishable from *Wellcraft.*

Similarly, *Bay Lines* closely resembles the facts of the instant case. In that case, the plaintiffs alleged that defects in panels used in building trailers caused damages including the loss of its investment in the trailers and the costs of repair and replacement. The court dismissed all tort claims against the manufacturer defendants under the ELR, stating that when a product damages itself the reasons to impose tort liability are weak and do not reflect the primary concern of tort law, safety. *Bay Lines, Inc* 838 So. 2d at 1019.

Such debate over the interpretation of an entire body of Alabama case law is an apt demonstration of the substantial ground for difference of opinion. [7]

**C. <u>MISSISSIPPI</u>**

Like in Alabama and Florida, both state and federal courts in Mississippi apply the ELR to bar tort claims against manufacturers. However, in Mississippi a plaintiff

---

[7] This Court's order also states that the instant case goes beyond the concerns of "increased costs of doing business" and "customer displeasure" cited in *Bay Lines* to "concerns with the destruction of Plaintiffs' homes and the deterioration of Plaintiffs' health." Exhibit A at 21-22. Again, Manufacturer Defendants do not dispute that Plaintiffs have tort remedies for damages to "other property" and personal injury, however merely alleging such injury does not entitle the parties to also recover for economic damages. Economic damages, such as the "increased costs of doing business" and "customer displeasure" listed in the courts order are more properly recoverable on theories of warranty and contract. *See Bay Lines* 838 So. 2d at 1020.

who suffers only economic loss may not recover under tort theories, including strict liability and negligence, against a manufacturer. *Progressive Insurance Co. v. Monaco Coach Corp.*, 2006 U.S. Dist. LEXIS 21251 at *8 (S.D. Miss 2009) (court granted defendant manufacturers' motion to dismiss tort claims based upon the ELR); *Lee v. General Motors Corp.*, 950 F. Supp. 170, 172-3 (S.D. Miss. 1996) (In granting defendant manufacturers' motion to dismiss the court held that a plaintiff who suffers only economic loss as the result of a defective product may have no recover in strict liability or negligence under the ELR).

This Court distinguished the Mississippi case law based upon the factual allegations. For example, this Court cited *State Farm Mutual Auto Insurance v. Ford Motor Co.*, 736 So. 2d 384, 387-88 (Miss. Ct. App. 1999), where a defective oil cap resulted in a fire destroying a vehicle. There, the court determined that the defendant car manufacturer was not liable for claims based on strict liability and negligence because the only damage sustained was to the product itself, the car. This Court found a factual distinction between oil that causes a car not to function and drywall "which continues to function." Exhibit A at 25. Similarly, this Court distinguished *Lee v. General Motors Corp.*, 950 F. Supp 170 (S.D. Miss 1996), where plaintiffs did not allege damages to their homes and health, on the basis that such damages are alleged in the case at bar. Exhibit A at 25.

Such fine factual distinctions are again evidence of the substantial ground for difference of opinion regarding the ELR. If the drywall is treated as part of the finished product, the home, Mississippi law would unquestionably bar the tort claims on the basis of the ELR. If the drywall is considered an independent, stand alone product, the claims

may withstand the ELR. This crucial distinction is not clearly delineated in Mississippi case law. Just as in Florida and Alabama, there is a very real difference of opinion about the application of the Mississippi ELR to this litigation.

### D. LOUISIANA

With respect to Louisiana law, the "substantial ground for difference of opinion" lies in the Court's incorrect statement that as a matter of tort law, "Louisiana does not recognize the ELR." Because the Louisiana Products Liability Act ("LPLA") specifically precludes all tort-based remedies for economic loss, the ELR is an inherent and critical feature of Louisiana's statutory framework.

The tort claims at issue include strict liability, negligence, gross negligence, and negligence per se. The LPLA is the "exclusive remedy against a manufacturer" for "damage" as defined by La.R.S. 9:2800.53(5), and specifically precludes the foregoing tort-based claims:

> (5) 'Damage' means all damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1, and 2315.2 allow recovery. 'Damage' includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that the [Civil Code's redhibition articles do] not allow recovery for such damage or economic loss.

Similarly, comment (a) to La.C.C. Article 3545, which governs choice of law conflicts in LPLA actions, states:

> This article applies to any injury caused by a product, rather than to the product itself. The latter type of damage is likely to be characterized as contractual in nature and thus would be governed by the Title on conventional obligations.

Thus, because the LPLA precludes damages based on the foregoing tort-based remedies, the ELR applies.

## III. IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

It is undisputed that the tort claims affected by the ELR are by far the lion's share of the claimed damages in this litigation[8]. If this Court's analysis of state law is inaccurate, it will materially injure Manufacturer Defendants (and other similarly situated defendants) in this extraordinarily complex and expensive litigation, in part because Manufacturer Defendants will have to defend claims that should be barred, both in the massive MDL proceedings (where the first of monthly "bellwether" trials and determinative hearings begin at the end of this month),[9] and in separate state court actions. For instance, the state court in Miami-Dade County, Florida is starting "bellwether" trials beginning June 1, 2010. An appellate ruling at this early stage on such a critical issue to the pending litigation cannot help but to advance the ultimate termination of this litigation.

## CONCLUSION

This Court's Order regarding the ELR is the perfect example of a situation where this Court should exercise its discretion and certify the question to the United State Fifth Circuit Court of Appeals. The ELR ruling is one of the most significant legal issues in an extremely complex piece of litigation because there is unquestionably a substantial ground for a difference of opinion on this point, as evidenced by the cogent arguments on both sides and this Court's own attempts to make sense of the complex law in the four

---

[8] Again, the Plaintiffs have other claims against Defendant Manufacturers.
[9] *Germano v. Taishan Gypsum*, 2:09-cv-6687 (E.D. La.), Scheduling Order entered December 21, 2009 commencing *Daubert* hearings on January 25, 2010.

state jurisdictions. An early resolution on this point by an appellate court will, in all likelihood, result in a far speedier resolution to this litigation than would otherwise occur.

For the reasons stated above, Manufacturer Defendants respectfully request that this Court exercise its discretion to certify an immediate interlocutory appeal in this order so that this case may be certified by the United States Fifth Circuit Court of Appeals to the respective state supreme courts for proper determination of these controlling issues of state law.

Respectfully submitted,

BY: s/Kerry J. Miller
KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
PAUL C. THIBODEAUX (#29446)
**FRILOT L.C.**
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504)599-8194
Facsimile: (504)599-8145
Email: kmiller@frilot.com

-AND-

DONALD J. HAYDEN (Fla. Bar No. 0097136)
BAKER & McKENZIE LLP
MELLON Financial Center
1111 Brickell Avenue Suite 1700
Miami, FL 33131
Telephone: (305) 789-8966
Facsimile: (305) 789-8953
Email: donald.j.hayden@bakernet.com

DOUGLAS B. SANDERS (IL Bar No. 6256621)
RICHARD M. FRANKLIN (IL Bar No. 0864390)
**BAKER & MCKENZIE LLP**
130 E. Randolph Drive
One Prudential Plaza
Chicago, IL 60601
Telephone: (312) 861-8075
Facsimile: (312) 698-2375
Email: douglas.b.sanders@bakernet.com

**CERTIFICATE**

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, and Phillip Wittmann, Homebuilders' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 2047, on this 25th day of January, 2010.

s/Kerry J. Miller