1      cited.  They fail to address these issues.
2             As to the character of the loss, we
3      believe, Your Honor, candidly their failure to
4      address those issues is in effect a concession
5      to our argument.
6             To the extent that they urge that the
7      product is in fact the drywall and in that
8      fashion attempt to argue that therefore the
9      alleged damage to "other property" under the
10     economic loss rule is the house because now the
11     house is the property and the drywall is the
12     product which is a position that we think is
13     nonsensical.
14            But in even making that argument, Your
15     Honor, we believe that this acknowledges an
16     admission on their part that their damages are
17     in fact limited to other property and personal
18     injury, which is exactly our argument.  It's
19     the argument that we've made in briefs
20     submitted to Your Honor and to Judge Fallon.
21            JUDGE FALLON:  You mentioned American
22     Aviation.  Is there anything in there that would
23     restrict the economic loss rule to those
24     instances where there is some privity between
25     the parties and so that the party has both a

1  contract claim and a tort claim and the thought
2  is since they have a contract claim that they
3  have bargained for the risks and bargained for
4  the surety of the risks and therefore since they
5  have some privity and there is a contract claim,
6  they can't also then bring in the tort claim?
7           MR. ATLAS:  I think there is language to
8  that effect, Your Honor, but I think that in
9  looking at that language and candidly looking it
10 over and over and over again it seems to be
11 clear that without interfering in any way
12 downgrading whatever claims the homeowners may
13 have on a contract theory or a warranty theory,
14 American Aviation again makes clear to us that
15 the economic loss prevails as to the issue of
16 the preclusion of damages to the product itself.
17          In no way do we think that American
18 Aviation in any way is an interference or an
19 obstacle to the argument that we are making
20 here.
21          JUDGE FARINA:  And those warranty claims
22 that you think the plaintiffs have which remain
23 viable, are those then based in contract and not
24 in tort?
25          MR. ATLAS:  Correct.  Correct, Your Honor.

1          JUDGE FALLON: You say contract, but there
2     is no privity. In other words, there may not be
3     warranty claims against you, but doesn't the
4     manufacturer, and maybe I ought to ask the
5     manufacturer this, but doesn't the manufacturer
6     warrant the soundness of his product and the use
7     of the product to the ultimate consumer?
8          MR. ATLAS: I actually like your
9     suggestion, Judge Fallon, that Mr. Hayden
10    address that issue.
11         JUDGE FALLON: Okay. You're right. I'm
12    sorry.
13         MR. ATLAS: No, that's okay. I appreciate
14    the offer, but with all due respect to
15    Mr. Hayden, I will let him address that.
16         JUDGE FARINA: Some offers need not be
17    accepted.
18         MR. ATLAS: Exactly.
19         Furthermore, we want to point out that the
20    plaintiffs in their position, as Judge Fallon
21    asked me, they rely upon the Moransais case,
22    Comptech and American Aventura.
23         Just briefly if I may, Moransais was a
24    professional negligence case. It did not
25    involve a products liability issue.

1          Comptech also was not a products liability
2    economic loss rule case.  It involves only a
3    lessee of a warehouse where computers were
4    damaged while the warehouse was being
5    renovated.
6          American Aviation also was not a products
7    liability case.  In fact, the American Aviation
8    case, addressing Judge Fallon's question as
9    well as your's, Your Honor, in American
10   Aviation they said, "This case does not involve
11   a cause of action against the manufacturer or
12   distributor for economic loss caused by a
13   product which damages itself.  Thus the
14   products liability economic loss rule is
15   inapplicable."
16         So we do not believe that American
17   Aviation rejected Casa Clara as the plaintiffs'
18   lawyers seem to suggest.  We think
19   inferentially, again, it affirms Casa Clara and
20   the viability of the product liability economic
21   loss rule.  None of the cases that the
22   plaintiffs have cited do that.
23         Comptech, again, Your Honor, re-affirms
24   Casa Clara in that product is that which is
25   purchased by the injured party.  We have a

1   home. That's the product. Comptech was not a
2   products liability case and in Comptech the
3   court determined that the object of the
4   contract was the warehouse. Damage to the
5   computers would be considered other property.
6         Comptech also relied candidly on Saratoga,
7   Saratoga Fishing, as well as Casa Clara. Just
8   pointing out, I think that Sarasota Fishing is
9   particularly pertinent for our consideration
10  because the reading of that decision and
11  argument clearly negates the plaintiffs'
12  argument.
13        It clearly specifies that the damages
14  recoverable as only "other property" and
15  confirming the East River holding that, "A
16  plaintiff cannot recover in tort for the
17  physical damage a defective product causes to
18  the product itself regardless of whether damage
19  occurs to other property."
20        In our view this case emphasizes, and I am
21  going to address real quickly at the conclusion
22  of my time, the plaintiffs' argue in their
23  brief that under the economic loss rule should
24  one of the two exceptions be triggered, meaning
25  other property gets damaged or there is

1   personal injury, that upon that event all of
2   the other damages to the home become available
3   to these plaintiffs.  That's their argument and
4   Saratoga clearly refutes that argument.
5           And I would also like to point out to you,
6   Judge Farina, and to Judge Fallon, in
7   preparation to this argument and conversations
8   with counsel I raise the following example.
9           If you have a situation where you don't
10  have any other property damage and you have no
11  personal injury, it's clear that the damage to
12  arguably a million dollar home would be
13  precluded in our distributor defendant client.
14          However, under their argument if I had a
15  $500 bangle bracelet, gold-plated bracelet that
16  got ruined, then clearly that is defined as
17  other property.  Under their argument that
18  would then trigger all of their other damages
19  and they would get the million dollars worth of
20  damage to their home.
21          We believe that their argument that
22  somehow triggered one of the two exceptions to
23  the economic loss rule brings back into play
24  all the other damages is without any authority,
25  totally without any authority.

1            So briefly in conclusion, and Judge
2    Farina, I might just ask for one minute of
3    rebuttal after my esteemed colleagues have a
4    chance to talk.
5            In conclusion, I would like to emphasize
6    the costume jewelry example.  I think it's very
7    pertinent.  I would like to emphasize that
8    there is no dispute that the product is the
9    home that was purchased by the plaintiff
10   homeowner.  The drywall is not the product and
11   it is considered part of the home.
12           Any further damage to the home is to be
13   deemed damaged to the product itself.  The
14   homeowners bought finished products.  Just like
15   Casa Clara, they did not buy individual
16   component parts.
17           The Chinese drywall, the alleged Chinese
18   drywall is an integrated part of the finished
19   product and it did not injure other property.
20           Contrary to what is being portrayed as I
21   indicated earlier in response to Judge Fallon's
22   questions and to your questions, the homeowner
23   plaintiffs indeed have remedies and either our
24   client, Banner, nor any of the other
25   distributor defendants stand before you in an

1      attempt to strip them or deprive them of any of
2      their valid existent remedies.
3              Our instant motion merely seeks to ensure
4      that the proper remedies are sought from the
5      proper party.  The law in Florida is clear that
6      the plaintiffs' tort claims against the
7      distributor defendants are barred by the
8      economic loss rule.
9              Thank you.
10             JUDGE FALLON:  You make a distinction with
11     someone who buys a finished product and someone
12     who buys drywall at a store and brings it home
13     and installs it into an existing home, right?
14             MR. ATLAS:  Yes, I do.
15             JUDGE FALLON:  Okay.  All right.  Thank
16     you.
17             MR. ATLAS:  Your Honor, what we have here
18     is we just have a binder of the cases that are
19     referred to in our memorandum and that are
20     referred to in the plaintiffs' memorandum.
21             JUDGE FARINA:  Put it right there.  Thank
22     you.
23             MR. ATLAS:  Thank you very much, Your
24     Honor.
25             JUDGE FARINA:  Thank you.

1         MR. HAYDEN:  Your Honor, Don Hayden on
2    behalf of Knauf Plasterboard Tianjin.
3         I do not intend to rehash the argument
4    that has been made by my learned collegue and I
5    appreciate Ms. Bass allowing me to jump ahead
6    and address the Court with regard to our
7    arguments here.
8         But I felt it important to address some of
9    the questions that were raised both by Judge
10   Fallon and by you, specifically with regard to
11   whether this is appropriate for hearing on a
12   motion to dismiss given that it would apply to
13   newly constructed homes.
14        In my case the three class actions that
15   are before Judge Fallon, the Labrons, the
16   Victores and the Korshoes (phonetic) matters
17   all involve new construction, new home
18   developments.
19        So we are talking about new construction
20   and I believe that it is few and far between,
21   especially in the Florida context, that you are
22   going to have instances where the drywall was
23   sold sheet by sheet in a Home Depot setting.
24        The drywall was brought into Florida and
25   distributed and supplied to various homeowners

1  who were involved in large developments that
2  were ongoing.
3          So it is appropriate here that it be
4  handled on a motion to dismiss because the
5  lion's share of the allegations of damage are
6  damage to the property itself, the product.
7  The product clearly here is the finished home.
8          Under the Integrative components doctrine
9  and its application in the building
10 construction context under Casa Clara and other
11 or cases that have followed it indicate that we
12 look to the finished home when determining
13 whether there is damage to other property.
14         The damages that we are hearing about are
15 damages to HVAC coils, to electrical wiring, to
16 copper plumbing, to other components of the
17 home.
18         Now, there are also allegations of
19 personal injury or allegations of some damage
20 to some personal property, but I raise the
21 Court, if my silver ring tarnishes, or I have a
22 complaint of some chest congestion that I
23 believe are somehow related to the Chinese
24 drywall being installed in the home, it doesn't
25 open this floodgate so that there is recovery

1     for the damage to the product itself, that
2     being the home, the component part of the home.
3          JUDGE FARINA: Is there any wiring or
4     plumbing that would be in your estimation other
5     property?
6          MR. HAYDEN: No, Your Honor, I don't
7     believe so. The other property that you would
8     be looking at would be TVs, things that were
9     brought into the home by the homeowner after the
10    fact.
11         These homes were sold in a ready to go
12    situation by Lennar and other home builders and
13    Ms. Bass or others could speak to that in
14    greater detail, but --
15         JUDGE FARINA: And these ready to move in
16    homes with the appliances that were provided,
17    when those appliances needed repair or
18    replacement, would it be the home builder who
19    would actually do that?
20         MR. HAYDEN: Yes, Your Honor.
21         JUDGE FARINA: So it would not be the
22    General Electric or the Sears or anyone else
23    involved in warranty repairs?
24         MR. HAYDEN: Well, that goes to the whole
25    underlying rationale behind the economic loss

1   doctrine, that in that context the allocation of
2   risks and responsibilities should be determined
3   by contract law and warranty law rather than by
4   tort law and that really is what underpins the
5   economic loss doctrine.
6          JUDGE FALLON: Let me ask you this. This
7   is Judge Fallon. If there is no privity of
8   contract between you as manufacturer and the
9   homeowner, where does the law on warranty come
10  in? Do you stand behind your product and do
11  they sue you in warranty as opposed to tort?
12         MR. HAYDEN: Your Honor, they have
13  warranty claims against the individuals that
14  they contracted for. They have other claims
15  that they can make against us.
16         The thing that I think I have to
17  distinguish for both Judge Farina and for you,
18  Judge Fallon, is that the economic loss rule
19  has really developed along two separate prongs.
20         There is the contractual privity economic
21  loss rule, which has been established here in
22  Florida and is what I think you are speaking
23  to.
24         I am speaking to a second prong that has
25  been developed in Florida called the products

1      liability economic loss doctrine.
2             The economic loss of products liability
3      economic loss doctrine precludes plaintiffs
4      from recovering in tort for economic damages
5      arising from a component of the final product
6      in this case the finished home or injuries to
7      components of that home.
8             JUDGE FALLON:  Does that presuppose that
9      they have a warranty claim or a contractual
10     claim before that tort claim is cut off?
11            MR. HAYDEN:  Your Honor, the Florida
12     Supreme Court specifically addressed that issue
13     on certified questions from the Eleventh Circuit
14     in Airport Rent-a-Car.
15            In that case the Eleventh Circuit raised
16     with the Florida Supreme Court whether there
17     could be a no-other cause of action exception
18     to the application of the economic loss rule.
19            In that case, Airport Rent-a-Car, the
20     Florida Supreme Court said no.  The Florida
21     Supreme Court was very conscious of what it was
22     doing in Casa Clara and as the cases that
23     followed it and as it said in its ruling in
24     Casa Clara, it did not misapprehend the
25     implications of its findings.

1           In Casa Clara they drew a line in the sand
2       and indicated that there are certain things
3       that should be resolved through tort law and
4       there are certain things that are better
5       resolved through contract negotiation and
6       warranty --
7           JUDGE FALLON: Suppose in the Casa Clara
8       case the people were in privity. That
9       presupposes that the person had claims both in
10      contract and tort and they said since you have
11      claims in contract and tort, you can only
12      proceed in contract because both of you all sat
13      down at the table and part of the deal was the
14      reassumption of risks or shifting of the risks.
15          MR. HAYDEN: Actually, Your Honor, not all
16      of the parties were in privity in the Casa Clara
17      case. The manufacturer of the concrete was not
18      in privity with the homeowners who were bringing
19      the actions.
20          JUDGE FARINA: I want to -- I'm sorry. I
21      was just saying -- go ahead, Judge Fallon.
22          JUDGE FALLON: I'm sorry. I was just
23      saying that if there are no contract claims and
24      there is no warranty claims then in effect what
25      you're saying is that there is no claims.

1    JUDGE FARINA:  I want to follow up on that
2    exact line because I think you have indicated to
3    us that the plaintiffs would have their claims
4    against us and if indeed there is no privity,
5    that eliminates the contractural privity and if
6    indeed, they theoretically were in privity,
7    which they are not, they would be limited to a
8    contract which they don't have.
9         So tell me, tell Judge Fallon, how indeed
10   a homeowner who is not in privity with the
11   manufacturer, what is their cause of action?
12   Based on what, contract or in tort?  If it's
13   contract, tell us how because there is no
14   privity.
15        MR. HAYDEN:  Right.  What I am saying to
16   the Court is that they do have tort claims for
17   damage to other property other than the product
18   itself.
19        Their recovery is limited in when it is
20   damage to the product itself, that being the
21   home, to damages under contract.
22        JUDGE FARINA:  So you are suggesting that
23   you have no liability whatsoever as to the sale
24   of this product regardless of its condition or
25   what it may or may not produce even on personal

1  injury?
2       MR. HAYDEN: I'm saying that from the
3  homeowners I will not have any such claim. I do
4  believe that down the stream of commerce I will
5  have claims being brought against me from
6  individuals who do have privity with me down the
7  road.
8       But the case law is clear and I would ask
9  the Courts to look at two or three cases that
10 follow Casa Clara.
11      JUDGE FARINA: Which two or three would
12 you like us to look at?
13      MR. HAYDEN: The two or three cases that
14 the Courts should look at are first the two
15 cases, the Pulte cases out of the Middle
16 District of Florida. The Pultes are wood cases.
17      Pulte Home Corp cases where the Court
18 granted judgment under Rule 50 on damages in
19 favor of the defendants in very analogous
20 circumstances.
21      In that case it was fire retarded plywood
22 that was used in the roof structures of the
23 homes that were then installed in multi-unit
24 developments that were developed by Pulte.
25      Pulte sued the manufacturer for the

1    damages resulting from the deterioration of the
2    roofs, the damage that the defective drywall
3    caused to other components and to the
4    structural integrity of the home.  And Pulte
5    took a remediation program similar to that of
6    Lennar here and sought assignments.
7             JUDGE FALLON:  In Pulte they had to remove
8    the part of the roof because they had to get to
9    the bad plywood.  It wasn't contaminating other
10   areas.  They just had to remove it and the Court
11   said -- as I read the case, the Court said that
12   was just collateral damage.  You can't get to
13   the plywood without taking the shingles off the
14   roof and so that was just part of the problem.
15            But, you know, in all of those cases as
16   the judge points out there is some claims
17   expand.  The problem that is faced in Louisiana
18   is that a lot of the people who built the
19   houses or who did the repairs to the houses,
20   they were just fly by night or they came in as
21   immigrant laborers and they aren't around any
22   more.
23            So those individuals can't be sued because
24   they can't be found and they may be in privity
25   contract up the line, but the homeowner is not

1     in privity or contract with anyone and if you
2     are not warranting your product to the ultimate
3     consumer and you are not in privity or contract
4     with the ultimate consumer, then these
5     individuals in essence have absolutely no claim
6     under your argument.  How do you deal with
7     that?
8          MR. HAYDEN:  Your Honor, I am going to
9     answer it two ways.  First way being that my
10    motion does not go to an economic loss doctrine
11    application under Louisiana law.  So the focus
12    here is on Florida, Mississippi and Alabama
13    where the economic loss rule in a products
14    liability context is alive and kicking and
15    specifically in Florida where the majority of
16    the properties, the newly constructed
17    developments are located and where the Florida
18    Supreme Court had further clarified what the
19    economic loss rule means in different contexts.
20         I will go then now to whether it's called
21    Insurance Indemnity or American Aviation case.
22    The Insurance Indemnity or American Aviation
23    case does not change the Florida case law.
24    Casa Clara is still Black Letter law in Florida
25    and it was re-affirmed in Insurance Indemnity.

1            In fact, as Mr. Atlas indicated, that had
2       to do with negligent providing of services.  It
3       was a negligent providing of services.  It was
4       not a products liability case and that is,
5       quite honestly, where some of the lower Florida
6       Appellate Courts got off track on trying to
7       expand the economic loss rule into other areas
8       other than contract privity and products
9       liability.
10           I am here today to talk only about
11      products liability.  American Aviation,
12      Insurance Indemnity, whatever you want to call
13      it, that had to do with expanding the economic
14      loss rule to negligent providing of services.
15           And in that case the court re-affirmed
16      products liability economic loss rule is alive
17      and kicking.  Look closely at Justice Cantero's
18      concurrence.
19           Justice Cantero, as he can do very well,
20      says very succinctly it does not change the law
21      of the economic loss doctrine in products
22      liability cases at all.
23           JUDGE FALLON:  Doesn't American Aviation
24      assume there are either privity of contract or
25      warranty claims?

1           MR. HAYDEN:  No, it does not.
2           JUDGE FALLON:  Okay.
3           MR. HAYDEN:  And actually what it does is
4    re-affirms what goes back to East River and
5    Seely and all the rest, the concern by the
6    courts that if we go down this route, that
7    contract law will be drowned in tort law and
8    that is something that we have to avoid.  And
9    that's why in Casa Clara the Florida Supreme
10   Court made this line in the sand.
11           The other two or three cases that I want
12    to remind the Court of is the case that came
13    out of the Eastern District of Louisiana.
14           JUDGE FARINA:  Mr. Hayden, you've got
15   about a minute left so give us the cases you
16   want us to look at and we will review them.  If
17   we have already, we will look at them again, and
18   let's give some of the other parties a chance to
19   make some presentation.
20           MR. HAYDEN:  That's fair, Your Honor.
21           That case in the Eastern District is the
22    Masonite hardwood siding cases.  It involves
23    Lennar.  It involved Lennar taking assignment
24    and the court clearly talks about the harsh
25    result and the equities and re-affirmed that