Page 41

1       while the plaintiff homeowner class is a

2       sympathetic and appealing class, they still

3       have to balance the avoiding opening a

4       Pandora's box by allowing tort damages where it

5       is damage to the product itself and that being

6       the home.

7            Now, the one thing that I also want to

8       emphasize is --

9            JUDGE FARINA:  And the second case in

10      conclusion will be what, Mr. Hayden?

11           MR. HAYDEN:  I think I mentioned the Pulte

12      matters.

13           JUDGE FARINA:  Right.

14           MR. HAYDEN:  And the Masonite matter out

15      of the Eastern District of Louisiana applying

16      Florida law.

17           JUDGE FALLON:  Do you feel that the

18      Masonite case, the fact that it's an indemnity

19      claim, do you make any distinction there?

20           MR. HAYDEN:  The court went out of its way

21      to talk about the inabilities to bring a

22      negligence claim under Florida law because of

23      the economic loss rule and went into great

24      detail about while it's a harsh result, it is a

25      result that must be imposed by this court.

In Re: Chinese Drywall                                    November 13, 2009

Page 42

1              One last thing.

2              JUDGE FARINA:  Mr. Hayden, thank you very

3       much.

4              Who is next, please?

5              MR. HAYDEN:  Your Honor, just some

6       housekeeping?

7              JUDGE FARINA:  Yes, sir, what is it?

8              MR. HAYDEN:  I have two cases from 2008

9       and 2009 that I will provide counsel and to the

10      Court that involves the products liability

11      economic loss rule to reiterate, to counter the

12      argument that after American Aviation or

13      Indemnity Insurance the economic loss products

14      liability doctrine no longer applies.

15             JUDGE FARINA:  All right, thank you.

16      Judge Fallon, I will get those to you as well.

17             JUDGE FALLON:  Thank you.

18             JUDGE FARINA:  You're welcome, sir.

19             MS. BASS:  Good morning, Your Honor.

20      Hilarie Bass on behalf of Lennar and the home

21      builders.

22             We obviously stand in somewhat of a unique

23      position, Your Honor.  Clearly we have privity

24      with all of the homeowners.  So we fit within

25      that prong of the economic loss rule that

```
 1          Mr. Hayden was just describing that which we
 2      are parties to an underlying contract where
 3      they can allocate the risk between the parties
 4      as to what type of damages will be allowable.
 5      That is the contract that binds and determines
 6      what damages are entitled to be received or
 7      recovered by a homeowner.
 8          The only exception, as you have heard, is
 9      to the extent there is either personal injury
10      or other property.
11          JUDGE FARINA:  Ms. Bass, the plaintiffs
12      seem to indicate that the off gassing of the
13      drywall was not a foreseeable, allocatable risk
14      and was not part of the bargain.  What would you
15      respond to that?
16          MS. BASS:  Your Honor, the plaintiffs have
17      asserted two bases to attempt to have this Court
18      ignore the scriptures of the economic loss rule.
19          The one to which I assume you are
20      referring is the reference by the plaintiff
21      homeowners to asbestos cases in which based on
22      the recognition of an existing product, which
23      is known to have toxic effects, courts, none of
24      the Eleventh Circuit and none in Florida, but
25      other courts outside of Florida, had determined
```

1          that it is unnecessary to wait until you

2          actually have the physical injury in order to

3          allow plaintiffs to recover outside of the

4          economic loss rule limitations and they suggest

5          that this Court should adopt that type of

6          asbestos analysis to Chinese drywall.

7               I suggest, Your Honor, that that would be

8          completely unsupported by Florida law and

9          unsupported by the record currently before you.

10              The cases cited, and specifically the City

11         of Greenville versus W.R. Grace Company, which

12         is a Fourth Circuit 1987 case, which is an

13         action brought against a manufacturer and in

14         fact, every single one of the asbestos cases

15         cited by the plaintiffs' homeowner group fit

16         within that category.  They are either against

17         manufacturers, installers or distributors.

18         None of them are direct against home builders.

19              And basically what they talk about is that

20         in instances where the manufacturer knew of the

21         danger of the product, knew of the deletory

22         health effects where there was ample evidence

23         of willful and wanton conduct, and where the

24         claims of injuries and the threats of injuries

25         to other persons and other property were so

1       recognized in the scientific field, that we

2       don't have to sit back and say, you have to

3       show evidence of cancer before we will admit

4       that you have a personal injury.

5              In the case of Chinese drywall there is no

6       factual support to anything close to what you

7       see in those asbestos cases.

8              First and foremost to the extent there is

9       any recognized science on the issue of personal

10      injury, all of the science appears to reflect

11      that at worst Chinese drywall creates an

12      irritant for homeowners and then once the

13      drywall is taken out of their home, there is no

14      long-term physical effects.

15             As recently as just last week Dr. Krause

16      from the Florida Department of Health announced

17      in a speech in Tampa that his department had

18      not found any long-term toxic effects as a

19      result of Chinese drywall.

20             Now, we can all agree that there had not

21      been a definitive report filed as of yet by

22      either the federal or state government, but

23      from reading the research out there, it is all

24      clear that that appears to be the direction

25      that all of the science is reflecting that

```
1        Chinese drywall --
2            JUDGE FALLON:  Let me ask you this
3     question, counsel.  If there is wanton and
4     willful negligence, is that outside the economic
5     loss rule?
6            MS. BASS:  Your Honor, to the extent that
7     you have an independent factual support for
8     torts, clearly that is what the economic loss
9     rule says, that to the extent that the facts
10    relate to a contractual relationship between the
11    parties, you are limited to contractual damages.
12           In this case the only thing that has been
13     alleged against the home builders is damages
14     that relate to the type of economic damages
15     that are contemplated by contractual
16     relationships between parties and that is
17     why --
18           JUDGE FALLON:  I guess what I am asking is
19    whether or not at this stage in the litigation
20    there is enough information to know, number one,
21    what is other property, and number two, whether
22    there is anything outside the economic loss rule
23    that is applicable.  I am not saying that it is
24    not applicable or not.  I am just saying at this
25    stage is more discovery necessary?
```

```
 1          MS. BASS:  Your Honor, in fact the home
 2     builders are in complete agreement.  It is our
 3     position that these issues are completely
 4     premature in the current context.
 5          We are all very smart lawyers.  Everyone
 6     in this room knows how to plead around the
 7     economic loss rule.  The real issue as to
 8     whether or not there is other property that has
 9     been affected by Chinese drywall, what that
10     property is is very fact specific.
11          Similiarly on the personal injury side.
12     You clearly have allegations that personal
13     injury has been caused.  Whether or not there
14     is factual support for that or not, again, is
15     not something that we can resolve on a motion
16     to dismiss.
17          So it is our view that the basic issues of
18     the application of the economic loss rule and
19     how it affects the contours of the damages
20     being sought is something that cannot be
21     decided on a motion to dismiss.
22          There are, however --
23          JUDGE FALLON:  Can these issues be brought
24     back at another time with summary judgment
25     motions after some discovery has been made so
```

1        that the courts can flush out and streamline

2        some of the causes of action?

3             MS. BASS:  We absolutely agree with Your

4        Honor.  The vast majority of the issues before

5        you today are more appropriately considered on

6        summary judgment.

7             The home builders, however, do believe

8        that there are two specific findings that could

9        be made that will assist all the parties going

10        forward.

11             One was referred to by Mr. Atlas earlier

12        on and that is assuming that there are

13        exceptions to the economic loss rule that apply

14        in this case, that means assuming there is

15        eventually proof that there was other property

16        damage other than the building component,

17        whether it is the home or the drywall or

18        whatever other building product you want to

19        describe it as, and secondly, assuming that

20        personal injury is established, what is the

21        effect that the exception of the economic loss

22        rule has and the home builders strongly believe

23        that contrary to the position taken by the

24        plaintiffs, to the extent they are successful

25        in proving an exception to the economic loss

In Re: Chinese Drywall

November 13, 2009

Page 49

1      rule, the damages for personal injury and other

2      property are under Florida law limited to

3      whatever damages they are able to prove that

4      relate to that other property and personal

5      injury.

6           And by that, the example just given about

7      let's assume there is a television in a home

8      that proves to have been affected by the

9      Chinese drywall, the existence of that personal

10     property claim may entitle the homeowner to

11     bring a claim for damages for that television,

12     even though that's not the product that they

13     purchased.  That would be an exception to the

14     economic loss rule.

15          However, the fact that they can recover

16     damages for that television set does not mean

17     that they can also recover consequential

18     damages for damages to the home.

19          Similarly if a homeowner is able to prove

20     personal injury, that may create an exception

21     under economic loss that would entitle them to

22     damages for their personal injury.

23          But once again, it does not alter the fact

24     that the limitations of what their economic

25     damages are are based on the contract that is

www.mydepos.com
www.myreporters.com

Taylor, Jonovic, White, Gendron & Kircher-Echarte
Florida Realtime Reporting

305-358-9047
Fax  305-371-3460

Page 50

1          in existence between them and their home

2          builder.

3                  JUDGE FALLON:  How about the situation

4          where the person buys some drywall themself and

5          installs it or has a contractor do it, do you

6          make any distinction between the turnkey job and

7          the repair job?

8                  MS. BASS:  Yes, Your Honor, we do and in

9          fact, we have home builders who are in just that

10         circumstance.  We have home builders who

11         continue to own inventory.  For those home

12         builders they in fact purchased drywall.  They

13         did not purchase homes.  And those home builders

14         would be treated similarly to those homeowners

15         who bought drywall individually either from Home

16         Depot or from an installer because they also did

17         not purchase completed homes.  So that's a

18         separate category.

19                 JUDGE FALLON:  What is your position on

20         the warranty claim of the manufacturer?

21                 MS. BASS:  Your Honor, we have claims as a

22         plaintiff against the manufacturer, which are

23         resulting from two things.  One, those homes

24         that we continue to own where we are suing them

25         on tort theories as well as indemnity theories

 1        because we have damages to other property as

 2        well as assignments from homeowners.

 3              So to the extent as home builders, we come

 4         in and we repair a home.  Those homeowners are

 5         assigning to the home builders whatever their

 6         claims are and we are raising those claims

 7         against the manufacturers.

 8              Now, some of those claims are in the form

 9         of indemnity.  Some are in the form of

10         equitable subrogation.  Some are going to be in

11         the form of contribution.  All of those claims

12         are outside of the economic loss rule and so

13         we --

14              JUDGE FALLON:  What is your position on

15         Masonite?  You were involved in that or your

16         company was.

17              MS. BASS:  Yes, Your Honor, and it

18         reflects the concept of what the economic loss

19         rule provides as far as restricting damages to

20         those that relate to other property and personal

21         injury.  In that case there were not allegations

22         that either took place.

23              Unlike in our case, where the home

24          builders are suing the manufacturer for the

25          damages that they have incurred, both as a

Page 52

```
 1        result of homes that continue to own the
 2        Chinese drywall, and as the assignee for the
 3        homeowners' claims, in those instances we have
 4        asserted that there is other property which has
 5        been damaged.
 6             So, for example, to the extent Lennar
 7        comes in and repairs a home, included within
 8        that home repair could be lots of items that
 9        were not part of the original home that was
10        purchased.
11             For example, build-ins, security systems,
12        lighting fixtures.  There is lots of other
13        property which the home builders are being
14        forced to undertake the cost of repair which
15        would not be excluded even under the most
16        restrictive interpretation of the economic loss
17        rule.
18             So the home builders have claims both for
19        other property and then as owners of inventory
20        of homes to the extent that they have claims
21        down the line.
22             JUDGE FALLON:  But if you don't have
23        privity with a manufacturer, what is your theory
24        against them?
25             MS. BASS:  Our theory, Your Honor, is both
```

1    indemnity, contribution and equitable
2    subrogation.
3         JUDGE FALLON:  How about warranty?
4         MS. BASS:  Your Honor, it's questionable
5    whether or not we will be able to pursue
6    warranty claims because of the lack of privity.
7         But we have privity with our installers
8     and we have claims for breach of warranty
9     against them and then claims for everybody in
10    the supply chain for both equitable
11    subrogation, indemnity and contribution.
12         JUDGE FALLON:  Do you need privity of
13    warranty, isn't that one of those McPherson
14    versus Ureic?  I haven't thought about that in a
15    long, long time.  We all learned that in law
16    school.
17         MS. BASS:  There are certain theories of
18    warranty, Your Honor, that get around the idea
19    of privity.  But the theory of strict liability
20    is in large part particularly what is considered
21    to be replacement for non-privity warranty
22    claims.
23         And strict liability is a theory, products
24     liability that is covered by the economic loss
25     rule and precludes you from recovering anything

www.mydepos.com
www.myreporters.com
Taylor, Jonovic, White, Gendron & Kircher-Echarte
Florida Realtime Reporting
305-358-9047
Fax  305-371-3460

1        other than other property and personal injury.

2             JUDGE FARINA:  Is that because strict

3        liability is not in tort?

4             MS. BASS:  Correct, Your Honor.

5             JUDGE FARINA:  Let me go back to your

6        papers if I can.  You had a statement on Page 2

7        in Paragraph No. 5 and I will just read it and I

8        will ask you a question about it.  It is only a

9        sentence.

10            It says:  "Even assuming that the

11        plaintiff homeowners alleged viable tort claims

12        for personal injury or damage to other

13        property, such claims would be limited to

14        recovery of non-economic damages, personal

15        injury and/or damages for other property."

16            Can you help me put some meat on the bones

17        as far as what you mean by "recovery" and

18        "non-economic damages"?

19            MS. BASS:  Yes, Your Honor.  Going back to

20        the Indemnity Insurance versus American

21        Aviation, Inc., a Supreme Court case of Florida

22        of 2004.  The court made it very clear and I am

23        going to quote from Page 541, "In exchange for

24        eliminating the privity requirements of warranty

25        law and extending the tort liability for

1    manufacturers of defective products which cause

2    personal injury, we expressly limited tort

3    liability with respect to defective products to

4    injury caused to persons or damage caused to

5    property other than the defective product

6    itself."

7         And it goes on to say, Your Honor, that

8    "The restrictions as to the type of recovery to

9    the extension creates the exception because

10   there is personal injury, the damages for that

11   personal injury do not expand to eliminate the

12   effect of the economic loss rule."

13        Meaning to the extent you have a

14   underlying contract between a homeowner and a

15   home builder, that contract defines the

16   contours of the economic damages which can be

17   recovered by the homeowner.

18        JUDGE FARINA:  So you're not suggesting

19   that for those viable tort claims if founded in

20   negligence or some other tort theory, that the

21   issues of pain and suffering, loss of enjoyment

22   of life, either past, present or future are in

23   any way restricted?

24        MS. BASS:  That is correct, Your Honor.

25   We are not suggesting there is any limitations

Page 56

 1    on the types of damages for the personal injury.

 2    The type of restriction that continues in effect

 3    are restrictions for the economic damages,

 4    specifically consequential damages relating to

 5    perhaps loss in value of the home, costs of

 6    moving out, those types of things that are not

 7    specifically contracted for between the parties.

 8            JUDGE FALLON:  Can you get the cost of the

 9    drywall?

10            MS. BASS:  Only to the extent, Your Honor,

11    that the contract between the homeowner and home

12    builder provides for it.  Many of those warranty

13    claims do provide for repair of the home, which

14    is why many of the home builders are currently

15    actively repairing their homeowners' homes.

16    They are entitled to those contract rights.

17            JUDGE FALLON:  How about the homeowner --

18    that from your own standpoint you are out of it,

19    and the homeowner has a claim, does the

20    homeowner have a claim against the manufacturer

21    for new drywall?

22            MS. BASS:  No, Your Honor, the economic

23    loss rule would limit the claim of the homeowner

24    against the manufacturer to only seeking a tort

25    recovery for other property or for personal

In Re: Chinese Drywall                                November 13, 2009

Page 57

1    injury.

2         JUDGE FALLON:  So in your theory, then,

3    they would not have a claim against anyone for

4    that?

5         MS. BASS:  They would have a claim against

6    their homeowner restricted by the confines of

7    whatever the parties negotiated as part of the

8    contract to purchase that home.

9         JUDGE FALLON:  You would have a claim

10   against the home builder?

11        MS. BASS:  Correct.  I'm sorry, yes.  The

12   home builder, correct.

13        JUDGE FARINA:  Let me do this, we have

14   about one or two more minutes and we are done on

15   the defense side.

16        MR. BAUMANN:  I understand we are running

17   late on time, but I would submit that part of

18   Lennar's time -- Gary Baumann for IBSA and on

19   behalf of the suppliers.  I submit some of the

20   time is on behalf of the plaintiffs so I will be

21   brief.

22        The focus of the analysis --

23        JUDGE FARINA:  And you are, sir?

24        MR. BAUMANN:  Gary Baumann, I did

25   announce, for the suppliers.

Page 58

1           The focus of this analysis, Your Honor,

2     again has to go back to what does the product

3     mean, what is the benefit of the bargain during

4     a good faith arm's length negotiation.  That

5     falls into two categories.  Home buyers and

6     consumers who purchased drywall from a

7     retailer.  I think we focused on that and we

8     are all in agreement about that.

9           So that takes us back to the issue that

10    Judge Fallon has addressed several times.  If

11    there is a drywall problem in the home, does

12    that homeowner have a claim against the

13    manufacturer for the defect?

14          My answer is yes.  They have a claim

15    against the manufacturer of the product and

16    that is what the focus of this analysis must

17    be.

18          If the product is the home, they have a

19    claim against the manufacturer of the home who

20    is the home builder.  They would then have an

21    additional claim against manufacturers of the

22    components of the home, such as drywall

23    manufacturer or distributors, such as my

24    client, for other claims such as bodily injury

25    or damage to other property as been briefed by

Page 59

1    all of the parties and I think adequately

2    handled by Mr. Atlas.

3          In reading plaintiffs' memorandum of law

4    they want to carve out a new definition of the

5    word exception to the economic loss rule and I

6    understand why the plaintiffs take exception

7    with that phrasing of the law, because it is

8    going to substantially limit the claims against

9    my client as far as the damages they can seek

10   for economic loss or the manufacturers of the

11   component of the product built by the home

12   builder, the drywall, but there are still

13   claims, viable claims for bodily injury and for

14   other property against these two classes of

15   defendant.

16         There is still a claim against the

17   manufacturer of the product by the homeowner.

18   I will repeat that.  The other class of

19   plaintiffs who purchases drywall from the

20   store, whether it be Home Depot or Loew's, has

21   a claim against that manufacturer of the

22   product which would in that case be the

23   drywall.

24         But for each and every case -- my client

25   as a supplier has been sued here in Florida in

Page 60

```
 1        excess of 100 cases -- the product is the home,

 2        Your Honor.  So the manufacturer of the

 3        product, again, is the home builder and, yes --

 4             JUDGE FALLON:  Let me ask you, I know you

 5     have a short time, I will be very quick.  It

 6     seems that the distinction is made between the

 7     individual who goes out and buys drywall and

 8     installs it in an existing home as opposed to an

 9     individual who buys a finished home and the

10     latter doesn't have any claim against the

11     manufacturer in essence, but the person who buys

12     the drywall and puts it in their home does have

13     a claim.

14          Now, supposed that thousands of sheets of

15        drywall -- the home is taken down to the studs.

16        There is so many other repairs being made here

17        and the whole home is rewired and re-everything

18        on it, that individual then has a claim

19        against -- that is not restricted by the

20        economic loss, but the fellow who purchased a

21        whole home does have a claim.  Is that the

22        position that we are in at this point?

23             MR. BAUMANN:  That's not accurate, Your

24     Honor, Judge Fallon.

25             Again, the manufacturer would be
```

Page 61

1    different, depending upon the class of

2    plaintiffs.  Since we've identified two classes

3    of plaintiffs who are home purchasers and

4    plaintiffs who are drywall purchasers, the

5    manufacturers would then be in two classes.

6        So in both instances, the purchaser, the

7    consumer, if you will, will have direct claims

8    against the manufacturer.  In the case where

9    the product against the home, they do have a

10   claim against the manufacturer of the home and

11   would in fact have additional claims against

12   the manufacturer of the components of the

13   product, again, for bodily injuries and damage

14   to other property.

15       Now, I don't believe --

16       JUDGE FALLON:  Not for the product itself?

17       MR. BAUMANN:  Well, the product itself

18   would be the home, Your Honor.  The component of

19   the home, there would be a claim for bodily

20   injury or other property again and I don't

21   know --

22       JUDGE FALLON:  The one who got all of this

23   drywall, thousands of sheets of drywall

24   installed in a skeleton of a home, whether we

25   call that a home builder or home or an

www.mydepos.com
www.myreporters.com
Taylor, Jonovic, White, Gendron & Kircher-Echarte
Florida Realtime Reporting
305-358-9047
Fax 305-371-3460

Page 62

1    individual, that person would have a claim

2    against the manufacturer of the drywall?

3        MR. BAUMANN:  If they indirectly purchased

4    the drywall themselves?

5        JUDGE FALLON:  Yes.

6        MR. BAUMANN:  Yes.

7        JUDGE FALLON:  I see.

8        JUDGE FARINA:  All right, thank you.

9        MR. BAUMANN:  And again, I do believe it's

10   ripe as it is framed by the pleadings on a

11   motion to dismiss.  We can conduct discovery

12   later on what the scope of damages would be

13   responsible for the supplier defendants.  Thank

14   you.

15       JUDGE FARINA:  Thank you.

16       The plaintiffs in response.

17       MR. DIAZ:  Good morning, Your Honors.

18   Victor Diaz on behalf of the Plaintiffs'

19   Steering Committee.

20       Your Honor, consideration of this motion

21   begins and ends with this Court's fundamental

22   understanding of two things.

23       One, the nature of the product defect that

24   is alleged by plaintiffs in their complaint,

25   and two, the nature of the injury or damage

www.mydepos.com
www.myreporters.com
Taylor, Jonovic, White, Gendron & Kircher-Echarte
Florida Realtime Reporting
305-358-9047
Fax  305-371-3460