1          which plaintiffs allege that product is

2          causing.

3               This is not a case of plaintiffs who

4          appear before this Court complaining of

5          disappointed economic expectations in trying to

6          act as tort liability in order to somehow

7          circumvent the bargain for allocation for a

8          foreseeable risk.

9               This is a class of plaintiffs who are

10         before you complaining of a wholly

11         unprecedented failure of a product which is

12         alleged to be causing a serious risk of hazard

13         to the safety and health of these consumers

14         which is the classic case for which tort

15         remedies are preserved under any version of the

16         economic loss rule.

17              In fact, this Court would have to ignore

18         the fact that the Environmental Protection

19         Agency, the Consumer Products Safety

20         Commission, the Center for Disease Controls,

21         the U.S. Agency for Toxic Substances & Disease

22         Registry, the Florida Department of Health and

23         the Louisiana Department of Health are all

24         investigating this because it is precisely a

25         public health crisis and that is the classic

1       kind of situation where the economic loss rule

2       simply has no applicability.

3            Now, I heard Dr. Bass talking about the

4       science testifying in this Court on a 12(b)6

5       motion, but the fact is that we are the master

6       of our own complaint and we have alleged a

7       unique type of product failure.

8            One which poses a serious risk of harm to

9       these consumers, one which is caused by off

10      gassing of toxic, potentially toxic sulfur

11      based gases which we allege are causing

12      plaintiffs to get sick, which we allege is

13      literally corroding and contaminating away the

14      contents and at the very structure of these

15      homes, Judge, it isn't even close.  That is the

16      classic situation where the Florida Supreme

17      Court has said --

18            JUDGE FALLON:  Hello.

19            MR. DIAZ:  Yes, Judge Fallon.

20            JUDGE FALLON:  The defendants agree with

21      you that it is unfortunate and they are

22      embarrassed, they tell you, to bring this

23      motion, but they feel compelled to because of

24      the law applicable in Florida and they cite the

25      Casa Clara case and they also cite the Eastern

Page 65

```
 1        District Masonite case and they say
 2        unfortunately they are stuck with the law and
 3        they have to bring it even though it's not very
 4        popular.
 5              How do you deal with the law as opposed
 6        to --
 7              MR. DIAZ:  I will be happy to deal with
 8        the law, and let's turn, first of all, Your
 9        Honor, to what the Florida Supreme Court says
10        because they mischaracterize the law.
11              Let's talk about what the Florida Supreme
12        Court has instructed the courts to do in
13        applying the economic loss rule.
14              Indemnity Insurance, the latest and most
15        comprehensive pronouncement of the Florida
16        Supreme Court on this topic, it wants courts to
17        get the formulaic application of the economic
18        loss rule and then the first thing you must do
19        is look to see if the policy considerations,
20        which justified the creation of this judicially
21        created doctrine, exists and warn its
22        application.
23              And the Florida Supreme Court
24        distinguishes between two different types of
25        product failures and this is the key to
```

Page 66

1      understanding plaintiffs' position.

2            First they talk about a product failure

3      which results in a disappointed economic

4      expectation and, second, and I am now quoting

5      from the Florida Supreme Court decision in

6      Indemnity Insurance, they talk about a product

7      failure which results from, "A manufacturer's

8      failure to match a standard of safety defined

9      in terms of creating conditions that create an

10     unreasonable risk of harm."

11           That is the law in Florida and in that

12     case, in that latter set of circumstances where

13     we are dealing with a manufacturer's failure to

14     match a standard of safety defined in terms of

15     creating conditions that create an unreasonable

16     risk of harm, the Florida Supreme Court says

17     the economic loss rule has no applicability.

18           If you want to talk about Casa Clara, it

19     is only in the form of a set of circumstances,

20     Judge Farina and Judge Fallon, where you are

21     dealing with plaintiffs who are essentially

22     talking about the failure of a product to meet

23     its economic expectations that the economic

24     loss rule should be applied.

25           With respect to Casa Clara, let's look at

Page 67

1        what they don't tell you about that case.

2        They've relied on it extensively, but they

3        forget about the part in Casa Clara where the

4        court says when the rule should not be applied.

5              In Casa Clara the Court said that it

6        should be applied to situations where "A

7        plaintiff is complaining of diminution in value

8        of the product because it is inferior in

9        quality and does not work for the general

10       purposes for which it was manufactured and

11       sold."

12             That's at Page 1246.

13             And then quoting the U.S. Supreme Court

14       decision in East River, even Casa Clara

15       acknowledges that the economic loss rule has no

16       applicability when the plaintiff complains of,

17       quote, "a hazard to life and health inherent in

18       defective products."

19             That's also at Page 1246 of that decision.

20             In fact, and this is an exact quote from

21       Casa Clara, "For recovery in tort, the

22       plaintiff must show a harm above and beyond

23       disappointed economic expectations."

24             I would suggest to you that we have

25       alleged a harm so far beyond, well beyond a

Page 68

 1     disappointed expectation that we are in the

 2     stratosphere about complaining about the health

 3     hazards that this defective drywall is causing

 4     to these plaintiffs.

 5          Now, going back to what the Florida

 6     Supreme Court had said in defining how courts

 7     should apply its doctrine, it is made clear

 8     that economic expectations, disappointed

 9     economic expectations are only when, quote,

10     "The level of performance by a product is

11     inferior."  That's Indemnity Insurance.

12          Or where, quote, "The plaintiff is

13     essentially complaining solely of the loss of

14     the benefit of his bargain."  That is also in

15     Indemnity Insurance.

16          We are not here complaining about drywall

17     that cracked.  We are not here complaining

18     about drywall that crumbled.  In fact, it is

19     still holding up the walls.  This is not a case

20     of warped roof joists.  This is not a case of

21     concrete that cracked.  This is not a case of

22     leaky roof materials.

23          This is a case of contaminated drywall

24     wholly unprecedented in U.S. history which is

25     toxically discharging sulfur based gases which

```
 1        are contaminating all the plaintiffs' homes
 2        which are causing their TVs, computers and
 3        radios to fail, which is corroding away of
 4        silver, copper and other metal contents in the
 5        homes themselves and where plaintiff has
 6        alleged, in just a cursory review of plaintiffs
 7        complain of headaches, respiratory problems,
 8        runny eyes, runny and bloody noses, sinus
 9        problems, allergic reactions, hospital and
10        doctor visits and other serious medical
11        conditions.
12             There is no way that you can characterize
13        plaintiffs alleged injuries in this case as
14        plaintiffs who are complaining of disappointed
15        economic expectations.
16             What these plaintiffs are complaining
17        about is outrageous, unreasonable, unknown and
18        unknowable serious risk of harm to their health
19        and safety which is making them sick and
20        literally destroying their homes.
21             JUDGE FALLON:  The distributor takes the
22        position that you have claims against the
23        manufacturer and others even if you are
24        restricted by the economic loss rule.  How do
25        you see it?
```

In Re: Chinese Drywall
November 13, 2009

Page 70

1          MR. DIAZ:  The distributors -- repeat
2     that, Your Honor.
3          JUDGE FALLON:  I think the distributor is
4     saying that you have claims, viable claims
5     against others for all of these damages even if
6     you are restricted by the economic loss rule.
7     As I understand it, they assume that you have
8     other claims.
9          MR. DIAZ:  Judge, first of all, it's
10    irrelevant whether we have other claims because
11    we have these claims.  These claims are the
12    classic types of situations where tort liability
13    is supposed to be available and the reason it is
14    supposed to be available is precisely the reason
15    that you mentioned in one of your earlier
16    questions.
17          Because we are not supposed to be chasing
18     down contract exclusions, because we are not
19     supposed to be chasing down bankrupted and
20     disappeared home builders or installers or
21     others in the chain of distribution, because we
22     are dealing here with a public safety risk and
23     because the law says that, "When a manufacturer
24     fails to meet" -- again, I am using the
25     language of the Florida Supreme Court -- "a

www.mydepos.com
www.myreporters.com
Taylor, Jonovic, White, Gendron & Kircher-Echarte
Florida Realtime Reporting
305-358-9047
Fax  305-371-3460

 1      standard of safety defined in terms of creating

 2      conditions that create unreasonable risk of

 3      harm," that's the law.

 4          The public policy dictates that the

 5      plaintiffs should not be allocated the risk of

 6      the defendants being gone and bankrupted, that

 7      the plaintiffs' homeowners should not be

 8      designated the risk or allocated the risk of

 9      the contract exclusions by limiting their

10      warranties because this is the type of public

11      policy risk of exposure that the manufacturer

12      must bear because they put the product into the

13      stream of commerce.

14          They are the ones that failed to meet the

15      standard of safety and its intent, when you

16      read the case law, in order to keep

17      manufacturers from manufacturing toxic and

18      defective goods that kill Americans.

19          Now, moving on to talk a little bit more

20      about the difference between this case and Casa

21      Clara.  Even though Casa Clara itself, when you

22      look at the holding of that case, clearly

23      justifies application to this case, we are not

24      dealing here with disappointed economic

25      expectations like the plaintiffs in Casa Clara.

Page 72

```
 1              The nature of the defect that is alleged
 2         by these plaintiffs is totally different.  We
 3         are talking about an unreasonable risk of harm
 4         to public health and safety.  That factor was
 5         not present in Casa Clara.
 6              The nature of the product failure is
 7         different here as well.  Here the product
 8         failed to perform in accordance with its
 9         economic expectations.  The concrete cracked
10         and it wasn't structurally sound anymore.
11              Here the product arguably is performing in
12         accordance with the expectations, just like in
13         the asbestos cases.  It's still holding up the
14         walls.
15              What they are talking about is the defect
16         that involves the toxic discharge of sulfur
17         based gases is the nature of the product
18         failure that defines whether the economic loss
19         rule applies.
20              And unlike Casa Clara, we are dealing here
21         with an unforeseeable risk.  It is absurd to
22         suggest that in buying those homes these
23         plaintiffs somehow assumed the risk of the
24         allocation in their contract of the fact that
25         they were bound to get toxic drywall wholly
```

Page 73

1    unprecedented in the history of U.S.

2    construction that were going to literally

3    invade their home with sulfur based gases

4    making them sick and eating away of all of the

5    metallic substances.

6         It's not reasonable for this Court to

7    conclude that that risk was foreseeable and

8    therefore there is no bargained for allocation

9    of risk that you need to judicially defend by

10   applying the economic loss rule.

11        In fact, none of the critical factors that

12   justify the application of the economic loss

13   rule in Casa Clara are present in this case.

14        In fact, none of the critical policy

15   justifications that justifies the application

16   of the economic loss rule to deprive these

17   plaintiffs of the real remedy that they have in

18   this case, which is against the manufacturers,

19   this lousy and toxic product are present and

20   any reading of the juris prudence, of the

21   Florida Supreme Court, of the U.S. Supreme

22   Court, and I don't care, of any well-reasoned

23   court, you reach the same conclusion.  These

24   plaintiffs have a remedy in tort and that

25   remedy is a full and robust remedy which these

In Re: Chinese Drywall                                    November 13, 2009

Page 74

1          plaintiffs need in order to get complete

2          recovery.

3                    JUDGE FALLON:  How do you see the Masonite

4          case?

5                    MR. DIAZ:  That's a case of disappointed

6          economic expectation, Judge.  That's why I said,

7          this is not a leaky roof case.

8                    That case did not involve, as the Florida

9          Supreme Court keeps telling courts over and

10         over, where a manufacturer fails to meet that

11         standard of safety and creates an unreasonable

12         risk of harm to the consuming public.  That is

13         the case where you need to defend the tort

14         liability and give the plaintiffs the full and

15         robust measure of recovery and shift the

16         applicable risk to the person who is best

17         suited to bear it, the manufacturers, and

18         others in the chain of distribution who put

19         this toxic product into the market and that is

20         so we will have manufacturers producing safe

21         products.

22                   I don't care if they are in China or

23         whether they are in the U.S., if they are

24         selling those products to Americans, they are

25         subject to the same standard of care that

```
 1       American manufacturers have and that is why the

 2       economic loss rule has no applicability in this

 3       case.

 4            JUDGE FARINA:  What specific remedies in

 5       tort would not be available to you if only the

 6       contract remedies were available?

 7            MR. DIAZ:  Gone is negligence.  Gone is

 8       strict liability.  Gone for all intents and

 9       purposes are even our contractual remedies to

10       those defendants that have gone bankrupt and

11       have disappeared and are no longer willing to

12       live up to their warranties.

13            The plaintiffs would be relegated to

14        whatever limited remedies they might have

15        against those viable defendants of which they

16        have direct contractural privity.  That is not

17        the law.  It's not the law in Florida.  It's

18        not the law in any state.  It's not the law in

19        this country.

20            The law in this country is very clear that

21        where a manufacturer fails to meet that

22        standard of safety, where the nature of the

23        product defect is clear that it imposes a

24        unreasonable risk of harm to public health and

25        safety, and that is indisputable in this case,
```

```
 1        that the burden needs to be shifted and
 2        allocated in this judicially created doctrine
 3        to those that are best suited to bear it.
 4             Are we saying that these homeowners who
 5        are the most vulnerable, the most victimized,
 6        the least capable of bearing this loss should
 7        be allocated with the risk of this entire
 8        product catastrophe and done so by a judicial
 9        fiat?  I would suggest to you that would be
10        standing justice on its head.
11             Now, I would like to turn to the home
12        builders' argument and contractural privity
13        prong of the economic loss rule.
14             First, let's observe, and they made a lot
15        of concessions including the concession in
16        their argument that this was premature, and you
17        know Ms. Bass misspoke, and Judge Fallon, I
18        will tell you, I think you need to kill this
19        economic loss rule now once and for all and you
20        need to do it like it was done in the asbestos
21        litigation because the policy and judicial
22        underpinnings of this rule have no application
23        in this case.
24             But I will be forthcoming and tell you,
25        Judge, that there is a case directly on point
```

```
 1        in the asbestos context out of the Florida

 2        Second District Court of Appeal, Morgan versus

 3        W.R. Grace & Company where the court decided to

 4        take the route that you were earlier suggesting

 5        and I am quoting from the decision now at Page

 6        7.

 7              "If anything is clear from the case law

 8        addressing the economic loss rule is that the

 9        application of the doctrine requires a firm

10        grasp of the facts in a particular case."

11              Citing to Moran, it's a Florida Supreme

12        Court decision, "This doctrine should not be

13        employed to dismiss a case until the basic

14        facts involved in Ms. Morgan's theory," that's

15        the plaintiffs, "are established in the record

16        as a matter of either pleading or evidence.

17        This is particularly true now given the Supreme

18        Court's recent decision limiting the effects of

19        the economic loss rule as a bar to certain

20        negligence cases.  We conclude that the trial

21        Court erred in denying giving Ms. Morgan that

22        opportunity."

23              So to the extent that they concede that

24        this is premature, there is case law support

25        for it.  I would tell you it is not premature
```

 1        when you read the asbestos lines of cases to
 2        put an end to this silliness that where a
 3        manufacturer has produced a toxic product and
 4        put it into the stream of commerce, where
 5        plaintiffs have clearly alleged that that
 6        product poses a safety hazard to the health and
 7        safety of these plaintiffs, that there should
 8        be any suggestion even now or down the road
 9        that the economic loss rule has any
10        applicability.
11             Other concessions that the home builders
12        have made is that they conceded in their papers
13        to the extent plaintiffs have pled an
14        independent tort based on conduct separate and
15        distinct from the purchase of the home that
16        that survives the economic loss rule.
17             In that respect I would refer the Courts
18        to Paragraphs 168 and 169 and Paragraphs 210
19        and 211 of the master complaint where
20        plaintiffs allege an independent tort against
21        the home builders and an independent duty to
22        exercise reasonable care in inspection and
23        testing of the drywall.  That, based on their
24        concession, survives this motion to dismiss.
25             Second, they do not concede in their

Page 79

1    papers, but must acknowledge because it is the

2    law in the State of Florida, that the economic

3    loss rule, a judicially created doctrine,

4    cannot be applied to bar statutory causes of

5    action.

6            I repeat that.  Under Florida law and the

7    decision is Comptech, "The judicially created

8    economic loss rule cannot be utilized to defeat

9    a statutory cause of action."

10           That means that under any version of the

11   law, plaintiffs -- the FUDTPA claims, Florida

12   Unfair Deceptive Trade Practices Act, it's

13   Building Codes under Florida Statute Section

14   553.84, it's claims for statutory implied

15   warranty fit for a particular purpose under

16   672.315, and it's claims for the statutory

17   implied warranty for merchantability under

18   672.314 under Florida statute survive.

19           Also they concede that damages to other

20   property are recoverable.  But here is where it

21   gets really absurd.  When they are talking

22   about themselves, Lennar, and I have to single

23   out Lennar for this, says, oh, well, other

24   property for us means drywall.  The product is

25   the drywall.

Page 80

```
 1              But when we are talking about the
 2      homeowners for whom we are taking assignments
 3      and trying to collect against these
 4      manufacturers, somehow before the assignment
 5      the property was the home, the product was the
 6      home, and after the assignment the product
 7      becomes the drywall.
 8              Well, it's time to end duplicity and
 9      injustice that is implicit in the home
10      builders' argument.  As far as duplicity is
11      concerned, I would turn to Paragraph 42 of
12      Lennar's own complaint where they have a very
13      detailed definition of what is other property
14      in their case and they say "it causes damage to
15      other property within the effected home
16      including HVAC coils."  That's other property
17      in Lennar's complaint.
18              "Certain electrical and plumbing
19      components."  That's other property in Lennar's
20      complaint.  And "other affected materials and
21      items within the homes."
22              Now, what they would suggest to you is
23      that they, the home builders, should have the
24      full measure of justice and that they should
25      get all tort recovery against these
```

Page 81

1      manufacturers and this Court should mete out

2      that justice to them and then turn around and

3      with the same hand slap these homeowners in the

4      face and take the most vulnerable victimized

5      plaintiffs in this litigation, the ones that

6      are least financially able to bear the risk and

7      the ones that are least culpable for this

8      disaster and deprive them of the same recovery

9      that Lennar says they are entitled to.  That

10     would be a gross injustice under any reading of

11     the law.

12         JUDGE FARINA:  Mr. Diaz, you are

13     suggesting that Lennar's position is not that

14     the product is the home and that we are not to

15     look at any integrated portion or portions of

16     that home, it's just that is the product and

17     anything else is something else?

18         MR. DIAZ:  No, Lennar's position is when

19     it stands in the shoes of the plaintiff,

20     Lennar's position is that the product is the

21     drywall and that everything else is other

22     property.

23         When Lennar stands in the shoes as a

24     defendant, Lennar's position is that the

25     product is the home and not the drywall and

Page 82

```
 1        therefore plaintiff is restricted.

 2            But it's irrelevant what the product is

 3        because what the Florida Supreme Court has said

 4        is don't use formulaic applications of the

 5        rule.  It doesn't matter whether you

 6        characterize the product in this case as the

 7        drywall or whether you characterize it as the

 8        home, because the policy considerations for the

 9        application of the economic loss rule are

10        simply not present in this case and in

11        Comptech, the Florida Supreme Court at Page

12        1223 told courts exactly that.  Don't get

13        caught up in these formulaic applications of

14        the terms of other property.

15            I am quoting from the court, "In order to

16        appreciate and understand the use of the term

17        other property, we must examine the genesis of

18        the economic loss rule."

19            That's what good judging does.  That's

20        what good lawyering urges upon the Court.  That

21        you have to look at the policy considerations

22        to see if the economic loss rule has any

23        applicability and in deciding what is other

24        property.

25            All the Casa Clara court did was say, hey,
```

In Re: Chinese Drywall

November 13, 2009

Page 83

1    whey you have a product that fails to meet

2    economic expectations, that concrete that

3    cracked, and it is integrated into a larger

4    home, we are not going to let you circumvent

5    the rule by drawing an exception and say, oh,

6    well, it affected the roof materials, all of a

7    sudden there is an exception because the

8    exception is part of the rule.

9        Because the court said, "The policy

10   considerations for the application of the

11   economic loss rule are still here.  Essentially

12   what the plaintiffs is complaining about is

13   disappointed economic expectation."

14       But in the same case the court says, "If

15   the plaintiff is complaining about something

16   more than that, then it doesn't matter whether

17   the product had integrated into the home or the

18   product is defective itself.  It is the nature

19   of the product defect that defines whether the

20   economic loss rule applies."

21       That's what this Court needs to focus on.

22   Where the defect results in a manufacturer's

23   failure to meet a standard of safety which

24   causes an unreasonable risk of harm to a

25   consumer, the economic loss rule has no

www.mydepos.com
www.myreporters.com

Taylor, Jonovic, White, Gendron & Kircher-Echarte
Florida Realtime Reporting

305-358-9047
Fax 305-371-3460

In Re: Chinese Drywall                                    November 13, 2009

Page 84

```
 1        applicability and all of the Jurisprudence and
 2        the Florida Supreme Court says that, including
 3        Casa Clara.
 4            Now, as to the allocation of risk fiction
 5        which exists in the enforcement of the
 6        contractual privity rule, this is not a case as
 7        the Florida Supreme Court stated in Indemnity
 8        Insurance at Page 542 where, "The parties have
 9        negotiated remedies for nonperformance and one
10        party seeks to obtain the better bargain than
11        it made by turning a breach of contract into
12        tort for economic loss."
13            Rather this is a case like the Florida
14        Supreme Court said in Moransais, and to use
15        again the words of the Florida Supreme Court,
16        "Public policy dictates that liability not be
17        limited to the terms of the contract."
18            Because we are dealing here with a
19        previously unknown and unknowable risk
20        unprecedented in U.S. history, not involving
21        the failure of an integrated product that meets
22        economic expectations, but involving an
23        unforeseeable and unique product failure
24        through a mechanism of failure never seen
25        before in the history of the United States,
```