Page 85

1    drywall causing gases to be omitted from the

2    walls which is killing -- well, not killing,

3    making plaintiffs sick and eating away at the

4    contents of their homes.

5         That is the classic situation where courts

6    do not need to impose any kind of judicial fiat

7    to say, hey, plaintiffs, you're trying to go

8    around the bargain that you struck when you

9    bought your homes.

10        Judge Fallon, Judge Farina, I don't think

11   for one minute you think that when the Harrells

12   went and bought their home in the subdivision

13   of Palm Isle and they got their contractural

14   warranty that they thought they were allocating

15   the risk that their home was going to be toxic

16   to them and their children.

17        That's not the kind of risk that is

18   supposed to be judicially enforced here.  That

19   is not the kind of risk that should be

20   allocated to these plaintiffs.  It was an

21   unforeseeable risk and that point is made

22   repeatedly in the asbestos litigation and that

23   is why that line of cases is very, very

24   important for this Court to consider.

25        I would like to spend a couple of minutes

Page 86

1    on it because other than saying asbestos has

2    no -- there is no Eleventh Circuit decision,

3    the defendants glaringly are cited on that

4    point.  But the asbestos cases, I would submit

5    to the Court, are exactly the type of an

6    analysis that this Court needs to follow.

7         It gives you a blueprint for deciding

8    these cases and I would like to hand to the

9    Court a copy of the cases that we cited and

10   just read a couple of excerpts from them in

11   conclusion of my argument, and I am taking a

12   lot less time than the defendants, but I speak

13   faster.

14        Starting with the Town of Hooksett School

15   District versus W.R. Grace, again, these are

16   all cases dealing with the application of the

17   economic loss rule.  If you turn to Page 7 of

18   that decision -- and this is exactly -- you

19   could almost right from the beginning deny the

20   defendants' motion to dismiss by reading these

21   five cases because it engages in the very kind

22   of analysis the plaintiffs are urging upon this

23   Court.

24        It looks at the policy considerations

25   underlying the economic loss rule and it makes

In Re: Chinese Drywall                                           November 13, 2009

Page 87

```
 1      the very kind of exact analysis distinctions

 2      that are necessary to understand why the

 3      economic loss rule has no application in this

 4      case.

 5          At Headnote 4 the Court says, "The success

 6      of defendant's motion to dismiss Counts I and

 7      II requires that plaintiff's injuries be

 8      characterized as purely economic."

 9          It then goes on to say, "Economic loss has

10      been defined as the diminution in the value of

11      the product because it is inferior in quality

12      and does not work for the general purposes for

13      which it was manufactured and sold.

14          "This does not mean, however, that every

15      prayer for relief that seeks the cost of

16      repairing a damaged product entails the type of

17      economic loss traditionally encompassed within

18      warranty law.

19          "Dean Prosser has emphatically  noted the

20      distinction between economic loss and physical

21      injury."

22          And this is an essential quote from

23      Prosser on torts:  "There can be no doubt that

24      the seller's liability for negligence covers

25      any kind of physical harm, including not only
```

1      physical injuries, but also property damage to

2      the defective chattel itself, as where an

3      automobile is wrecked by reason of its own bad

4      brakes, but where there is no physical damage,

5      and the only loss a pecuniary one, through the

6      loss of the value of use of the things sold,

7      courts adhered to the rule that purely economic

8      interests are not entitled to protection

9      against mere negligence."

10          "Where a defect in defendant's product" --

11     in this case the asbestos -- "creates a

12     cognizable safety hazard, the resulting injury

13     to property is as actionable in strict

14     liability and negligence as personal injury

15     resulting from the defect would be:

16          "That the measure of the plaintiff's

17     damages is economic does not transform the

18     nature of his injury into a strictly economic

19     loss.  The gist of plaintiff's strict liability

20     and negligence count is not" -- as in this case

21     -- "that the plaintiff failed to receive the

22     quality of product he expected, but that the

23     plaintiff has been exposed, through a hazardous

24     product, to an unreasonable risk of injury to

25     his person or his property."

In Re: Chinese Drywall                                    November 13, 2009

1          That is this case.  That is exactly this
2     case.  You can't read plaintiffs' complaint and
3     conclude that it is anything but that.
4          Turning now to Tioga Public Schools versus
5     U.S. Gypsum Company.  Apparently the gypsum
6     company is plagued by a number of defective
7     products, not just drywall.
8          In that case reading Page 6 of this
9     decision and this is a decision of the Eighth
10    Circuit Court of Appeals, Judge Fallon, the
11    court said, "The presence of asbestos in
12    ceiling tiles and resulting danger has nothing
13    to do with the level of performance of the
14    product."
15         That is exactly analogous to this case.
16    In fact, the evidence suggests that the ceiling
17    tiles, although encapsulated with asbestos, is
18    still performing well as acoustical plaster.
19         "USG should not be allowed to escape
20    liability by arguing that its product is merely
21    a component of a larger product and that any
22    damages are to the buildings themselves."
23         Exactly the arguments which these
24    defendants devoted an hour and ten minutes to
25    making in this case.

1          At Page 7 of this decision the Eighth

2     Circuit Court of Appeals said, "Plaintiff is

3     not seeking to recover the lost benefits of its

4     bargain based on a claim that the plaster is

5     deficient as acoustical plaster."

6          Just like in this case, we are not

7     claiming damages because the drywall is

8     deficient as drywall that's holding up the

9     walls.

10         "Such a claim would clearly be barred by

11    the economic loss doctrine.  Instead, plaintiff

12    is seeking to recover the cost of removing the

13    asbestos-containing plaster from its schools on

14    the grounds that the asbestos poses a risk of

15    injury to those exposed to it."

16         That's what we are seeking in this case.

17    We want this drywall out of our house to stop

18    leaking these sulfur based gases and making our

19    children sick.

20         Moving on to the decision of the Highest

21    Court of Michigan in Detroit, Board of

22    Education versus Celotex.  This addresses

23    another one of the arguments that the

24    defendants have raised.

25         At Page 8 the Court says in clear terms

 1         that, "We decline to apply the economic loss
 2         doctrine in the present case.  We believe that
 3         the policy considerations that underlie the
 4         doctrine would not be served if we were to do
 5         so.
 6              "No jurisdiction has held that an asbestos
 7         tort claim is barred by the economic loss
 8         doctrine.
 9              "Tort remedies for defective products are
10         premised on a policy of allocating the risk of
11         unsafe products to manufacturers and sellers in
12         order to encourage the design of safer
13         products."
14              "Essentially, then, policy holds that
15         defects of suitability and quality are
16         redressed through contract and safety hazards
17         through tort actions.
18              "In the present case, plaintiffs do not
19         allege that defendants' products were inferior
20         in quality or did not work for their intended
21         purpose.  They do not claim any injury to the
22         product themselves.
23              "Rather, they claim that the defendants'
24         products are safety hazards that have created a
25         potential health threat and caused them to

1         suffer damages in abating the hazard.  We also

2         observe that it is highly unlikely that the

3         parties could have anticipated and bargained

4         over the hazards of asbestos at the time the

5         products were sold, which was apparently years

6         before the risks of the material were known.

7              "In short, the risk involved here is not

8         the type that is allocated to a party through

9         negotiation."

10             An exact analogous situation here.  All of

11        the defendants have stated throughout this

12        litigation they knew nothing about the dangers

13        of drywall, that it was totally unprecedented

14        and it caught them by surprise.

15             And yet somehow they think when the

16        homeowner went and bought a house and signed

17        the purchase contract for the home, that they

18        should be judicially allocated by the risk that

19        there was a safety hazard and defective product

20        that was going to pose an unreasonable risk of

21        harm to them and their children in that home.

22             That's simply not the type of risk that

23        the Supreme Court of Michigan or the Highest

24        Court of Michigan said should be allocated to

25        the plaintiffs in this case.

1             I will close with the decision of the

2    Fourth Circuit in the City of Greenville versus

3    W.R. Grace.  In that case the Fourth Circuit

4    said, "Neither the Supreme Court's decision in

5    East River, nor our decision in Watermark

6    convinces us that the South Carolina courts

7    would preclude Greenville from asserting a

8    cause of action for negligence under the facts

9    of this case.  Indeed, we believe those

10   decisions are largely inapposite to the

11   situation presented here.

12            In both East River and Watermark the

13   defective products injured only themselves.

14   There was no claim of any injury or threat of

15   injury to persons or to other property.

16            "By contrast, the injury that resulted

17   from the installation of the asbestos in this

18   case is the contamination of the Greenville

19   City Hall with asbestos fibers which endanger

20   the lives and health of the building's

21   occupants.

22            "In our opinion this is not the type of

23   risk that is normally allocated between the

24   parties to a contract by agreement, unlike the

25   risk of a malfunctioning turbine at issue in

Page 94

```
 1        East River or the risk of faulty roofing
 2        shingles at issue in Watermark.
 3             "We think the South Carolina courts would
 4        be willing to extend tort liability to the
 5        manufacturer whose product threatens a
 6        substantial and unreasonable risk of harm by
 7        releasing toxic substances into the
 8        environment, thereby causing damage to the
 9        property owner who has installed the harmful
10        product in his building."
11             That is exactly analogous to what we are
12        arguing in this case.  The fact is that those
13        asbestos cases deal with essentially the facts
14        of this case.  They involve direct contract
15        purchasers of a good.  They involve a building
16        product integrated into larger structures.
17        They involve an unexpected and unforeseeable
18        product failure.  They involve, as in this
19        case, a product meeting its economic
20        expectations but causing risk of toxic
21        exposure.
22             They definitely address the economic loss
23        rule throughout the country, Judge Fallon,
24        because you're dealing with the motion that
25        deals with more than Florida law, in every
```

 1        jurisdiction and they uniformly rejected its

 2        application and they use the same analytical

 3        framework urged by plaintiffs on these Courts,

 4        on both you, Judge Farina, and you, Judge

 5        Fallon.

 6              Look to the theoretical underpinnings of

 7        this judicially created doctrine to decide if

 8        the economic loss rule has any application or

 9        should be applied to the facts of this case and

10        they universally arrive at the same conclusion.

11        The economic loss rule should not be allocated,

12        should not be applied because the risk at issue

13        is not the type of risk that needs or could

14        have been allocated by the parties to the

15        contract and because of the nature of the

16        defect posing an unreasonable risk of harm to

17        the consuming public is the very type of defect

18        which U.S. law universally throughout the

19        country says tort remedies should be available

20        to plaintiffs.

21              Any principal reading of the U.S. Supreme

22        Court's decisions since East River on the

23        doctrine of the economic loss, or any principal

24        reading of all of the Florida Courts juris

25        prudence in this case since Casa Clara, as well

```
 1        as all of the well-reasoned opinions by great

 2        jurists who have written on the subject in the

 3        asbestos context reach the same conclusion.

 4             This is not a case of solely disappointed

 5        economic expectations.  This is not a case of a

 6        foreseeable and therefore allocatable risk of

 7        frustrated economic expectations.

 8             This is a case of unprecedented

 9        unforeseeable product failure which is causing

10        an unreasonable risk of harm to plaintiffs'

11        health and safety to the off gassing of

12        potentially toxic gases which are making

13        plaintiffs sick and destroying their property.

14             This is a classic case, I would submit, of

15        tort liability.  This is a case where these

16        plaintiffs deserve the full measure of damages

17        and the full measure of justice.  I would

18        suggest to you that this is a case where the

19        facts of the law and justice are aligned and

20        require that you deny the defendants' motion.

21             MS. BASS:  Hilarie Bass on behalf of

22        the --

23             MR. DIAZ:  Wait.  I want to see if any of

24        my colleagues want to use my time.  Anybody want

25        to speak?  No, okay.
```

    1              MS. BASS:  Very briefly, Your Honor,

    2       apparently the prior speaker failed to review

    3       the Lennar's responses because there is

    4       absolutely nothing inconsistent in our position.

    5              We are in a unique position in that we are

    6       both the defendant and a plaintiff, but I

    7       believe if you read both the motion to dismiss

    8       that Lennar filed against the claims of the

    9       homeowners, as well as the response to the

   10       motion to dismiss that we filed in response to

   11       Knauf's motion to dismiss, our complaint, you

   12       will find that Lennar is 100 percent consistent

   13       in understanding what the economic loss rule

   14       says and what it restricts as to what is a

   15       product.

   16              The product the homeowners' purchased is a

   17       home and they only have an exception to the

   18       economic loss rule if they have damage to other

   19       property that was not purchased as part of that

   20       initial home or if they have personal injury.

   21              The only other position advocated by

   22       Lennar on behalf of other home builders is to

   23       the extent they sit in a position of owning

   24       home inventory.  They are the product they

   25       purchased as a home builder would have been

Page 98

1        just the drywall.

2              But those positions are completely

3        consistent.  We recognize what the economic

4        loss rule states as to what we can recover in

5        both of those situations and there is nothing

6        inconsistent about it.

7              Secondarily, and very briefly in response

8        to what you just heard Mr. Diaz go on at length

9        about victims and injuries, there is an

10       exception to the economic loss rule for

11       personal injury.

12             If he is in fact correct and his

13       homeowners are in fact suffering itchy eyes and

14       running noses, they will be able to recover

15       damages relating to those personal injuries.

16             No one is suggesting the economic loss

17       rule takes that away from him.  What he is

18       really arguing about, however, is not damages

19       for personal injury.  He is suggesting that you

20       should throw the baby out with the bath water

21       and because his clients have runny noses and

22       itchy eyes we should completely eliminate the

23       contracts that exist between homeowners and

24       home builders where the parties specifically

25       negotiated what the damages would be for any

Page 99

1      warranty defect.

2           And I suggest to Your Honor, these parties

3      did contract, they did negotiate the allocation

4      of economic damages and those contracts cannot

5      be ignored because Mr. Diaz's clients have

6      running noses and itchy eyes.  There is

7      absolutely no basis for that.

8           To the extent he is suggesting that there

9      is some public harm at the level of asbestos,

10     all I can say is it would be completely

11     premature for this Court or Judge Fallon to

12     consider that because right now there is

13     absolutely nothing on the record other than

14     three paragraphs and a complaint that suggests

15     any support for that.

16          I also suspect that by the time we get to

17     summary judgment there will be lots of

18     definitive reports from the Department of

19     Health explaining just the nature of this

20     public health problem and I don't attest to

21     predict what it's going to say, but I suspect

22     this is not going to look anything like

23     asbestos by the time we are done and it would

24     be premature for you to rule otherwise at this

25     point in time.

Page 100

1          Thank you, Your Honor.

2          JUDGE FARINA:   Mr. Atlas, you wanted a

3     minute, you have it.

4          MR. ATLAS:   Once again on behalf of Banner

5     and the distributor defendants, I concur in what

6     Ms. Bass has said about the obvious viability of

7     the economic loss rule.

8          Interestingly enough, Ms. Bass is

9     basically being a derivative homeowner in terms

10     of the assignment proceedings.   She

11     acknowledges that the definitions of other

12     property product as personal injury under the

13     economic loss rule and all of the authority

14     that has been provided is the law and nothing

15     that Mr. Diaz said interferes with the

16     existence of the law in Florida with respect to

17     the economic loss rule.

18          If I just may briefly read one little

19     quote from American Aviation, which obviously

20     was the subject of a number of questions, the

21     court said, "We hold that a manufacturer or

22     distributor in a commercial relationship has no

23     duty beyond that arising from its contract to

24     prevent the product from malfunctioning or

25     damaging itself.   In other words, we re-affirm

 1          our recognition of the products liability
 2          economic loss rule."
 3                  Despite the plaintiffs' characterizations
 4          and criticisms of Casa Clara, as Judge Fallon
 5          asked earlier, we are all in agreement about
 6          American Aviation, that American Aviation
 7          statement about the ongoing current viability
 8          of the economic loss rule.
 9                  Briefly, the premature argument that has
10          been raised, we submit on behalf of the
11          distributor defendants that we think it is ripe
12          for determination on the basis of the motion to
13          dismiss.
14                  If the Court were to look at the result in
15          Bowling Green Municipal Utilities versus
16          Thompson Lumbar, in that case the court
17          determined that -- and this was on a motion to
18          dismiss, Your Honor.
19                  "It is hereby ordered that defendants'
20          motion to dismiss plaintiffs' tort claims for
21          strict liability and negligence are sustained
22          to the extent that plaintiffs seeks to recover
23          in tort for the cost of identifying, repairing
24          or replacing the defective utility poles."
25                  The economic loss rule is viable and it is

In Re: Chinese Drywall                                    November 13, 2009

Page 102

1    the law in the State of Florida.  Mr. Diaz made

2    emotional reference to the catastrophic effect

3    of drywall.  The fact of the matter is, as Ms.

4    Bass said, no one on behalf of the defendants

5    is telling the plaintiffs that they don't have

6    personal injury claims.

7         Nobody is standing before Your Honor or

8    Judge Fallon in saying to the extent that there

9    is any personal injury claim, we are saying

10   that they can't be pursued.

11        A clear reading of the economic loss rule

12   provides that it only is the product itself

13   that is precluded.  Other property and personal

14   injury remains viable.

15        The reason that we submit that the motion

16   to dismiss is not premature is because we

17   believe that this Court and Judge Fallon can

18   decide what other property is and limit any

19   allegations of damages to the house and repair

20   and restructuring that has no place in this

21   litigation under the economic loss rule.

22        One need only look to Mr. Diaz's own

23   complaint in Paragraph 39 when he specifies

24   that.

25        Thank you very much for your time.

Page 103

1          JUDGE FARINA:  Thank you.

2          MR. HAYDEN:  Your Honor, may I have 30

3     seconds?

4          JUDGE FARINA:  All right, 30 seconds.  Go

5     ahead.

6          MR. HAYDEN:  Make no mistake, Your Honor,

7     if you follow the reasoning of Mr. Diaz today,

8     you are making law.  You are making new Florida

9     law here.

10          The Florida Supreme Court has articulated

11     the economic loss rule and its application in a

12     building construction context, that is still

13     good law.

14          There is reference to the asbestos cases.

15     Let's talk about the asbestos cases.  Some of

16     those cases are 25, 30 years ago.  None of

17     those cases involve Florida cases.  None of

18     those cases are products post Casa Clara and

19     the application of the economic loss rule in

20     Florida by Florida Power & Light.

21          JUDGE FARINA:  Got it.  Thank you.

22          MR. HAYDEN:  Thank you, Your Honor.

23          JUDGE FARINA:  Thank you.

24          Thank you all for your professionalism and

25     the quality of the arguments orally and in

In Re: Chinese Drywall                                           November 13, 2009

Page 104

1          writing and we will be reserving judgment.

2          Have a nice day.

3                  MR. GONZALEZ:   Thank you, Your Honor.

4                  JUDGE FARINA:   Thank you, Judge Fallon and

5          the other persons on the telephone, thank you.

6                  (Thereupon, at 12:00 p.m. the hearing was

7          concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

In Re: Chinese Drywall                                    November 13, 2009

Page 105

1                          CERTIFICATE

2

3    STATE OF FLORIDA    )

4    COUNTY   OF   DADE   )

5

6              I, Jill M. Kircher-Echarte, court reporter
     and Notary Public, in and for the State of

7    Florida at large, do hereby certify that I was
     authorized to and did report said hearing in

8    stenotype; and that the foregoing pages,
     numbered 1 to 105, inclusive, are a true and

9    correct transcription of my shorthand notes of
     said hearing.

10

               I further certify that said hearing was

11   taken at the time and place hereinabove set
     forth and that the taking of said hearing was

12   commenced and completed as hereinabove set out.

13             I further certify that I am not an
     attorney or counsel of any of the parties, nor

14   am I a relative or employee of any attorney or
     counsel of party connected with the action, nor

15   am I financially interested in the action.

16             The foregoing certification of this
     transcript does not apply to any reproduction

17   of the same by any means unless under the
     direct control and/or direction of the

18   certifying reporter.

19             IN WITNESS WHEREOF, I have hereunto set my
     hand this 17th day of November, 2009.

20

21             _____

                    Jill Kircher-Echarte

22             Notary Public - State of Florida
               My Commission No. DD 776597

23        My Commission Expires June 18, 2012

24

25