**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE:  CHINESE-MANUFACTURED** | : | **MDL No. 2047** |
| **DRYWALL PRODUCTS LIABILITY** | : | |
| **LITIGATION** | : | **SECTION:  L** |
| | : | |
| | : | **JUDGE FALLON** |
| **THIS DOCUMENT RELATES TO:** | : | |
| | : | **MAG. JUDGE WILKINSON** |
| **Hinckley, et al. v. Taishan Gypsum Co., Ltd.,** | : | |
| **f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,** | : | |
| **Case No. 09-6686 (E.D.La.)** | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT
(By Tobin Trading Inc.)**

MAY IT PLEASE THE COURT:

Defendant Tobin Trading Inc. ("Tobin"), by counsel, subject to and without waiving the

defenses raised in its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule

12(b)(2) of the Federal Rules of Civil Procedure, for its Memorandum in Support of its Motion

to Dismiss the Plaintiffs' Second Amended Class Action Complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, states the following:

## STATEMENT OF FACTS

Plaintiffs, individually and on behalf of a putative class of "others similarly situated," commenced this action on May 15, 2009 with the filing of a "Complaint – Class Action" (Dkt. No. 1). This action purportedly was filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of "owners and residents of residential homes in the State of North Carolina containing defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin, Cp. Ltd. ("Taishan") and/or Venture Supply Inc." (Complaint at p. 1). Plaintiffs also alleged that the action was brought "on behalf of a subclass of similarly situated owners and residents of residential homes in the State of North Carolina containing defective drywall that were built and/or had drywall installed by The Porter-Blaine Corp. ("Porter-Blaine")" (*Id.*).

On May 26, 2009, Plaintiffs filed a "First Amended Class Action Complaint" adding Tobin Trading, Inc. as a defendant. On January 19, 2010, Plaintiffs filed their "Second Amended Class Action Complaint." The Second Amended Complaint is alleged in eight (8) counts: (1) negligence (all defendants); (2) negligence *per se* (all defendants); (3) breach of express and/or implied warranties (all defendants); (4) private nuisance (all defendants); (5) unjust enrichment (all defendants); (6) violation of Consumer Protection Acts (against Taishan only); (7) violation of the North Carolina Consumer Protection Act (Tobin, Venture and Porter-Blaine only); and (8) equitable and injunctive relief and medical monitoring (all defendants) (see Second Amended Complaint ["SAC"] pp. 10-18). As to Tobin, the allegations of the Second Amended Class Action Complaint (like all prior versions of the complaint) are conclusory, vague and ambiguous, and fail to state a claim under Rule 12 of the Federal Rules of Civil Procedure.

As alleged, the home of Plaintiffs Curtis and Lynn Hinckley and Stephanie Hinckley-Lopez "was built and/or had drywall installed by Defendant Porter-Blaine and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan, Tobin and/or Venture" (SAC ¶¶ 4-5).

Plaintiffs allege that defendant Porter-Blaine is "one of Venture's drywall installation contractors" which "installed defective drywall in Plaintiffs' home, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members" (SAC ¶ 17).

The "defective drywall," Plaintiffs allege, was "designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold" by defendant Taishan (SAC ¶ 7). Plaintiffs allege that defendant Venture "imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members" and "also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiffs and Class Members" (SAC ¶ 15).

Plaintiffs allege that defendant Tobin "is run by Philip W. Perry who was responsible for brokering deals between the Chinese drywall manufacturer Taishan, and Venture Supply Company" (SAC ¶ 11). Plaintiffs allege that "Tobin brokered and/or negotiated the transaction(s) responsible for the ultimate distribution, delivery, supply, marketing, and/or sale of the defective drywall at issue in this case" (SAC ¶ 13).[1]

The Second Amended Complaint does *not* allege any facts indicating that Tobin was in contractual privity with any of the Plaintiffs or any of the putative members of the class or sub-class.

---

[1] There is no allegation that Tobin Trading Inc. was a "manufacturer" of a product as that term is defined in N.C. Gen. Stat. § 99B-1.

The Second Amended Complaint contains only very general, conclusory allegations regarding "defective drywall" and its alleged effects (*see* SAC, "General Allegations" at ¶¶ 19-27).  Plaintiffs allege that "Plaintiffs' and the Class Members' homes, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall" (SAC ¶ 23).  As alleged, some Plaintiffs and Class Members have suffered only economic loss, while others allegedly have incurred "damages associated with personal injuries" (SAC ¶¶ 25-27).  Accordingly, there appears to be no uniformity in the claims asserted by each plaintiff and putative class member.

## ARGUMENT

## <u>APPLICABLE STANDARD OF REVIEW UNDER RULE 12(b)(6).</u>

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint" *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The standard applicable to a motion to dismiss, and the heightened pleading requirements of *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), were recently described by the United States Supreme Court as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for

more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

Thus, although a court considering a motion to dismiss accepts "as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff," in order to survive the motion the complaint must allege "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 616 n. 26 (4th Cir. 2009) and *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965, 1974, (2007)). "Moreover, the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.* (citations omitted).

1.     **COUNT I - NEGLIGENCE**

In order to establish a claim for negligence under North Carolina law, a Plaintiff must establish the following elements: "duty, breach of duty, proximate cause, and damages." *Camalier v. Jeffries,* 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995); *see also Eli Research, Inc. v. United Communications Group, LLC*, 312 F.Supp.2d 748, 758 (M.D.N.C. 2004) ("The essential elements of negligence are duty, a breach of that duty, causation, and damages" (citing *Camalier v. Jeffries,* 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995)).[2]  In North Carolina,

> A duty to act for negligence purposes may flow from a contract or statute or may be implied from attendant circumstances. *Huyck Corp. v. C.C. Mangum, Inc.,* 309 N.C. 788, 794, 309 S.E.2d 183, 187 (1983). Statutes, even those that do not specifically mention tortious conduct, can establish a duty to act and a standard of care. *See NCNB Nat'l Bank of N.C. v. Gutridge,* 94 N.C.App. 344, 348, 380 S.E.2d 408, 411 (1989). To create such a duty, however, the statute must be a public safety statute, that is, it must impose a duty on a person for the protection of others. *See Hart v. Ivey,* 332 N.C. 299, 303-04, 420 S.E.2d 174, 177 (1992) (holding that a statute barring the sale of alcohol to those under 21 was not a public safety statute and thus did not trigger a negligence duty); *Gregory v. Kilbride,* 150 N.C.App. 601, 610, 565 S.E.2d 685, 692 (2002) *rev. denied,* 357 N.C. 164, 580 S.E.2d 365 (2003) (holding that civil commitment statute was not a public safety statute, and thus violation of the statute by a psychiatrist which resulted in a patient killing his wife and himself was not negligence per se).

*Eli Research, Inc. v. United Communications Group, LLC*, 312 F.Supp.2d 748, 758 (M.D.N.C. 2004).

"In the absence of a legal duty owed to the plaintiff by [the defendant], [the defendant] cannot be liable for negligence." *Stein v. Asheville City Board of Education*, 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006) (citing *Cassell v. Collins,* 344 N.C. 160, 163, 472 S.E.2d 770, 772 (1996)).  "No legal duty exists unless the injury to the plaintiff was foreseeable and avoidable through due care." *Id.* at 328, 626 S.E.2d at 267 (citation omitted).

---

[2] As the North Carolina Supreme Court stated in *Hart v. Ivey,* 332 N.C. 299, 420 S.E.2d 174 (1992), "[a]ctionable negligence is the failure to exercise that degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a *duty* to use reasonable care." *Id.* at 305, 420 S.E.2d at 177-78 (emphasis added).

In order to survive a Rule 12(b)(6) motion, "a complaint asserting a negligence claim must disclose –that each of the elements is present....‖ *Iodice v. United States,* 289 F.3d 270, 281 (4th Cir. 2002) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1249 (2d ed. 1990 & Supp.2001)).  Under *Twombly,* in order to disclose that each of the elements of "duty, breach of duty, proximate cause, and damages‖ is present, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation‖ and "[a] pleading that offers –labels and conclusions‖ or –a formulaic recitation of the elements of a cause of action will not do.‖ *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Nor does a complaint suffice if it tenders –naked assertion[s]‖ devoid of –further factual enhancement‖‖ *Id.*

Thus, Plaintiffs must establish that Tobin owed the Plaintiffs and putative class members a legal duty to exercise reasonable care.  The Second Amended Complaint fails to sufficiently allege such a tort duty.  The pleading is replete with conclusory, vague, non-specific allegations that fail to demonstrate a relationship between Plaintiffs (or the putative class members) and Tobin upon which a tort duty could be based.  The same holds true for the general claim that Tobin breached a tort duty that proximately caused the Plaintiffs to sustain damages.  As to Tobin, the Second Amended Complaint offers nothing more than "labels and conclusions‖ or "a formulaic recitation of the elements of a cause of action‖ for negligence, which is insufficient under *Twombly* and *Ashcroft v. Iqbal, supra,* and therefore should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**2.**     **COUNT II – NEGLIGENCE PER SE**

In conclusory fashion, Count II of the Second Amended Complaint alleges that all defendants owed and breached "statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f)

delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywallö (SAC ¶¶ 48-49).

The Second Amended Complaint alleges in a broad, shot-gun manner that õDefendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code (õIBCö) and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywallö (SAC ¶ 47).

Plaintiffs make reference to õUSBC § 112.3, 113.5ö; õASTMC C 1396/C 1396M-069ö; and õASTMC 36, C1395, E119 and other related *standards*ö (SAC ¶¶ 50-52 (emphasis added)).

Count II of the Second Amended Complaint should be dismissed for failure to state a claim of negligence *per se* against Tobin.

õ[T]he general rule in North Carolina is that the violation of a [public safety statute] constitutes negligence *per se*.ö *Stein v. Asheville City Board of Education*, 360 N.C. 321, 326, 626 S.E.2d 263, 266 (2006) (citing *Byers v. Standard Concrete Prods. Co.,* 268 N.C. 518, 521, 151 S.E.2d 38, 40 (1966)).  õA public safety statute is one ‑impos[ing] upon [the defendant] a specific duty for the protection of others.øö *Id.* at 326, 626 S.E.2d at 266 (*Lutz Indus., Inc. v. Dixie Home Stores,* 242 N.C. 332, 341, 88 S.E.2d 333, 339 (1955)).  õSignificantly, even when a defendant violates a public safety statute, the plaintiff is not entitled to damages unless the plaintiff belongs to ‑the class [of persons] intended to be protected by [the] statute,ø *Baldwin v. GTE S., Inc.,* 335 N.C. 544, 546, 439 S.E.2d 108, 109 (1994), and the statutory violation is ‑a proximate cause of [the plaintiff's] injury,ø *Hart v. Ivey,* 332 N.C. 299, 303, 420 S.E.2d 174, 177 (1992).ö *Id.* at 326, 626 S.E.2d at 266.

Thus, õ[i]n order to prevail on [their] claim of negligence per se, plaintiff[s] must show: (1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff[s]; (3) a breach of the statutory duty; (4)

8

that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and, (6) that the violation of the statute proximately caused the injury." *Rudd v. Electrolux Corp.*, 982 F.Supp. 355, 365 (M.D.N.C. 1997) (citing *Baldwin v. GTE South, Inc.,* 335 N.C. 544, 439 S.E.2d 108 (1994)).

Here, the Second Amended Complaint fails to allege facts sufficient to state all the elements of a claim for negligence *per se*, and fails to allege enough facts to state a claim for negligence *per se* that is plausible on its face.  It is not enough to simply allege in vague, conclusory fashion that "statutory duties" were owed and breached.  Plaintiffs must identify the statute or statutes on which they rely.  The Second Amended Complaint fails to allege sufficiently a duty created by a public safety statute; that the statute or ordinance was enacted to protect a class of persons which includes the Plaintiffs and putative class members; a breach by Tobin of any such public safety statutory duty; that the damage or injury allegedly sustained was suffered by an interest which any such statute protected; that the alleged damage or injury was of the nature contemplated in any such public safety statute; or that violation of the statute proximately caused the Plaintiffs and putative class members to sustain damages.  Accordingly, Count II of the Second Amended Complaint should be dismissed.

Plaintiffs' general reference to "USBC § 112.3, 113.5"; "ASTMC C 1396/C 1396M-069"; and "ASTMC 36, C1395, E119 and other related *standards*" (SAC ¶¶ 50-52 (emphasis added)) is not enough.

In pleadings previously filed in the *Hinckley* case (prior to its transfer to the MDL),[3] Plaintiffs asserted that the "USBC" cite refers to the "United States Building Code."  Tobin's research has not disclosed the existence of a Code known as the "United States Building Code."

---

[3] *See* Plaintiffs' Motion to Amend Plaintiffs' Amended Complaint, filed August 12, 2009 (*Hinckley*, Case No. 2:09cv00025-FL, Doc. No. 43).

And, notably, Plaintiffs do not allege that the specific cited "USBC" sections (112.3 and 113.5) have been adopted by the legislature of North Carolina or enacted into law in North Carolina.

The ASTM (American Society for Testing and Materials) standards cited by the Plaintiffs are not "Code" or statutory provisions that can serve as the basis for a negligence *per se* claim against Tobin.[4]

The vague, generalized references to the "USBC" and to the various ASTM *standards* mentioned in the Second Amended Complaint are insufficient to state a negligence *per se* claim against Tobin Trading Inc.

Courts presented with complaints containing similar generic claims of negligence *per se* routinely dismiss such claims for failure to state a claim under Rule 12(b)(6).  *See, e.g., Holler v. Cinemark USA, Inc.*, 185 F.Supp.2d 1242, 1244 (D. Kan. 2002) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence *per se* … If plaintiff brings a claim based on a specific statute, it logically follows that plaintiff must plead the statute on which the claim is based.  In this case, plaintiff's generic complaint that defendant violated unspecified ₌local, state and federal statutes, guidelines and regulations₎ does not provide fair notice of his claim. It is therefore subject to dismissal under Rule 12(b)(6)" (citations omitted)).[5]

---

[4] There is no claim or allegation in this case that Tobin has violated any specific provisions of the North Carolina State Building Code.

[5] *See also Pincetich v. Jeanfreau*, 699 F.Supp. 1469, 1477 (D. Or. 1988) (dismissing negligence *per se* claim because plaintiffs did not cite the specific statute, rule or regulation that was allegedly violated, and because plaintiffs had not alleged that they were members of the class of persons meant to be protected by the statute or that the injury was the type which the statute was enacted to prevent); *Gates v. W.R. Grace & Co.*, Slip Copy, Case No. 8:08-cv-2560, 2009 WL 1455316, *3 (M.D. Fla. 5/21/09) (in unpublished opinion granting 12(b)(6) motion to dismiss negligence *per se* claim, Court explained: "In this case, Mr. Gates fails to allege the violation of any specific statute or regulation, instead generally alleging that the Defendants ₌violated various Federal, state and local environmental laws and regulations relating to the release and discharge to toxic pollutants into the water, soil and air, including specifically Federal and state regulations imposing MCLs for contaminants in drinking water.₎ … By failing to allege the statutory or

Post-*Twombly,* the federal pleading standard requires more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007); *see also Walker v. Prince George's County*, 575 F.3d 426, 431 (4th Cir. 2009) (O'Connor, Associate Justice (Retired)) (citing *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) for proposition that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim" and "[w]e are not bound to accept as true a legal conclusion couched as a factual allegation").

Here, as to Tobin Trading Inc., the Second Amended Complaint fails to allege facts sufficient to state all the elements of an actionable claim for negligence *per se*, and fails to allege enough facts to state a claim for negligence *per se* that is plausible on its face.

## 3.     COUNT III – BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES

Although there are no factual allegations in the Second Amended Complaint suggesting that Tobin was in contractual privity with Plaintiffs or any of the putative Class Members, Count III alleges in a conclusory, confusing manner that "Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of *any warranty*" (SAC ¶ 56 (emphasis added)).[6]  Count III alleges that "[a]t the times Defendants installed, utilized, supplied, inspected, sold, and/or installed this drywall for use in the Plaintiffs' and Class Members' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' and Class Members' homes for

---

regulatory basis for the negligence *per se* claim, Mr. Gates fails to give Defendants fair notice of the grounds on which this claim rests. Moreover, Defendants have failed to allege that Mr. Gates was within the class of persons the unidentified statutes or regulations were designed to protect" (citation omitted)); *Heisner ex rel. Heisner v. Genzyme Corp.*, Case No. 08-C-593, 2008 WL 2940811, *7 (N.D. Ill. 7/25/08) (unpublished opinion dismissing negligence *per se* claim "for failing to place Defendant on notice of the underlying standard of care, an essential element of a negligence *per se* claim").

[6] Indeed, Plaintiffs allege that the role of Tobin was "brokering deals between the Chinese drywall manufacturer Taishan, and Venture Supply Company" (SAC ¶ 11).

use as a building material, and expressly or impliedly warranted the product to be fit for that use"
(SAC ¶ 57). Count III alleges that "[t]he drywall was defective and not merchantable because it
was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation
of the drywall in Plaintiffs' and Class Members' homes for use as a building material, because it
contained defects as set forth herein" (SAC ¶ 59). Count III alleges that "Defendants breached
their warranty because the drywall was not fit and safe for the particular purposes for which the
goods were required (to be installed in Plaintiffs and Class Members' homes as building
material) due to the defects set forth herein" (SAC ¶ 60). Count III of the Second Amended
Complaint should be dismissed for failure to state a breach of warranty claim against Tobin, for
at least two reasons.

First, to the extent that it is directed at Tobin, Count III merely alleges *ipse dixit* that
Tobin breached a "warranty" or "any warranty," but fails to allege facts sufficient to state all the
elements of a claim for breach of warranty, and fails to allege enough facts to state a claim for
breach of warranty that is plausible on its face. There are insufficient facts (as opposed to
conclusions) alleged in the Second Amended Complaint to indicate that Tobin provided an
express or implied warranty to Plaintiffs or any of the putative Class Members that the drywall
was "fit and safe ... to be installed in Plaintiffs and Class Members' homes as a building
material" (SAC ¶ 60). Under *Twombly,* in order to properly allege the existence and breach of an
enforceable warranty by Tobin, Rule 8 "demands more than an unadorned, the-defendant-
unlawfully-harmed-me accusation," "labels and conclusions" or "a formulaic recitation of the
elements of a cause of action ..." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As pled,
Count III only contains "naked assertion[s]" devoid of "further factual enhancement," *id.*, and
should be dismissed under Rule 12(b) of the Federal Rules of Civil Procedure.

Second, to the extent that the Second Amended Complaint purports to allege a warranty claim under North Carolina's Uniform Commercial Code (UCC), as a matter of law the alleged "defective drywall," having been incorporated into the homes of the Plaintiffs and the putative class members, does not qualify as a "good" governed by the UCC.  Article 2 of the UCC applies only to "transactions in goods." N.C.G.S. § 25-2-102.[7]  The UCC defines goods as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action." N.C.G.S. § 25-2-105(1).  It is well settled that "[r]eal estate does not fall under the U.C.C.'s definition of ÷goods.'" *Cudahy Foods Company v. Holloway*, 55 N.C. App. 626, 628, 286 S.E.2d 606, 607 (1982) (citing N.C.G.S. § 25-2-105); *see also Everts v. Parkinson*, 147 N.C.App. 315, 555 S.E.2d 667 (2001) (trial court properly granted summary judgment to defendants on homeowners' claim that defendants provided and breached an express warranty that the roof, gutters and other structural components of the home were in sound condition, as such a claim did not fall within the purview of the UCC).  Because the UCC does not apply to transactions in real property, including the structural components of a home or the building components incorporated into real property,[8] Count III fails to state a claim and should be dismissed.

**4.    COUNT IV – PRIVATE NUISANCE**

Count IV of the Second Amended Complaint should be dismissed for failure to state a private nuisance claim against Tobin.

---

[7] The scope of the UCC is limited to "transactions in goods" and does not apply to contracts for the provision of services. N.C.G.S. § 25-2-102.

[8] *See also BFS Retail & Commercial Operations, LLC v. City of Asheville*, No. 1:07cv19, 2007 WL 2461924 at *5 (W.D.N.C. May 16, 2007) ("As is commonly understood, fixtures are considered to be real property in that they are attached to the land. Real fixtures are those which become inseparable from the land and are considered part of the real property due to permanent annexation").

In North Carolina, "a private nuisance exists in a legal sense when one makes an improper use of his own property and in that way injures the land or some incorporeal right of one's neighbor." *Evans v. Lochmere Recreation Club, Inc.*, 176 N.C.App. 724, 727, 627 S.E.2d 340, 342 (2006) (citing *Morgan v. High Penn Oil Co.,* 238 N.C. 185, 193, 77 S.E.2d 682, 689 (1953)).  The liability forming conduct must involve a defendant's improper use of his property, or the unreasonable maintenance or operation of an enterprise on his property, which results in an encroachment or an invasion onto, or interference with, his neighbor's property that involves more than slight inconvenience or petty annoyance.  *See also Elliott v. Muehlbach*, 173 N.C. App. 709, 712, 620 S.E.2d 266, 269 (2005) ("in order to establish a *prima facie* case of nuisance *per accidens,* a plaintiff must prove: (1) that the defendant's use of its property, under the circumstances, unreasonably invaded or interfered with the plaintiff's use and enjoyment of the plaintiff's property; and (2) because of the unreasonable invasion or interference, the plaintiff suffered substantial injury").

"To support a complaint for private nuisance, a plaintiff must allege ÷sufficient facts from which it may be determined what liability forming conduct is being complained of and what injury plaintiffs have suffered." *Evans v. Lochmere Recreation Club, Inc.*, 176 N.C.App. 724, 727, 627 S.E.2d 340, 341-42 (2006) (citing *Hill v. Perkins,* 84 N.C.App. 644, 648, 353 S.E.2d 686, 689 (1987)).

Here, Count IV of the Second Amended Complaint alleges in conclusory fashion that "Defendants' tortious and wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties í " (SAC ¶ 64).

Clearly, though, at all pertinent times, Plaintiffs and the putative class members allegedly owned the properties (including the drywall or component "building materials" incorporated therein at the time of construction or sale) of which they complain.  Count IV fails to allege that Tobin used or authorized the use of its own property (or anything else under its control) so as to injuriously affect the owners or occupiers of the subject properties.  Indeed, the facts alleged in the Second Amended Complaint do not give rise to a "private nuisance" claim under any stretch of North Carolina law.[9]  Instead, the gist of the Second Amended Complaint is that Plaintiffs and putative Class Members purchased or constructed homes with a defective component part, and consequently they did not receive what they bargained for.  Count IV of the Second Amended Complaint fails to state a claim against Tobin for private nuisance and should be dismissed.

**5.     COUNT V – UNJUST ENRICHMENT**

Count V of the Second Amended Complaint fails to state a claim against Tobin for unjust enrichment and should be dismissed.

"Unjust enrichment is an equitable claim in which the court implies a quasi-contract in the absence of an actual agreement between the parties and permits a plaintiff to bring an action in restitution to recover the amount of the benefit conferred on the defendant." *Johnson v. Sprint Solutions, Inc.*, No. 3:08-CV-00054, 2008 WL 2949253 at *4 (W.D.N.C. July 29, 2008) (citing *Booe v. Shadrick,* 322 N.C. 567, 369 S.E.2d 554 (1988)).  In *Booe v. Shadrick,* the Supreme Court of North Carolina stated:

> The Restatement of Restitution § 1 lays down the general principle that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." In order to establish a claim for unjust enrichment,

---

[9] *Compare Tioga Public School District v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (explaining that "nuisance law does not afford a remedy against the manufacturer of an asbestos-containing product to an owner whose building has been contaminated by asbestos following installation of that product in the building," Eight Circuit held that defendant that had no further control of contaminated material after it was sold to the plaintiff could not be held liable in nuisance).

a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable. *See Britt v. Britt,* 320 N.C. 573, 359 S.E.2d 467 (1987) and E. Allan Farnsworth, *Contracts* § 2.20. In *Wells v. Foreman,* 236 N.C. 351, 72 S.E.2d 765 (1952), we said that the defendant must have consciously accepted the benefit. A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law. A quasi contract or a contract implied in law is not a contract. The claim is not based on a promise but is imposed by law to prevent an unjust enrichment. If there is a contract between the parties the contract governs the claim and the law will not imply a contract. *Concrete Co. v. Lumber Co.,* 256 N.C. 709, 124 S.E.2d 905 (1962). Our cases hold that the measure of damages for unjust enrichment is the reasonable value of the goods and services to the defendant. *Johnson v. Sanders,* 260 N.C. 291, 132 S.E.2d 582 (1963); *Environmental Landscape Design v. Shields,* 75 N.C.App. 304, 330 S.E.2d 627 (1985); *Hood v. Faulkner,* 47 N.C.App. 611, 267 S.E.2d 704 (1980); *Harrell v. Construction Co.,* 41 N.C.App. 593, 255 S.E.2d 280 (1979), *affirmed,* 300 N.C. 353, 266 S.E.2d 626 (1980).

*Booe v. Shadrick,* 322 N.C. 567, 570, 369 S.E.2d 554, 555-56 (1988).

Thus, to prevail on a claim of unjust enrichment, Plaintiffs must demonstrate that (1) they conferred a benefit on Tobin, (2) the benefit was not conferred gratuitously or officiously, "that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances," (3) the benefit was measurable, and (4) Tobin consciously accepted the benefit. *See Fireman's Fund Ins. Co. v. Safeco Ins. Co. of America*, No. 3:07-CV-86, 2007 WL 4233317 at *2 (W.D.N.C. November 28, 2007) (citing *Booe v. Shadrick*).

Count V of the Second Amended Complaint fails to allege sufficient facts showing that (1) Plaintiffs conferred a benefit on Tobin; (2) any such benefit was not conferred gratuitously or officiously, (3) any such benefit was measurable, and (4) Tobin consciously accepted any such benefit. Indeed, the Second Amended Complaint alleges that Plaintiffs contracted with others in order to build or purchase their homes. There are no allegations of fact (as opposed to conclusions) indicating that Plaintiffs conferred a benefit on Tobin. Moreover, "[i]f a party induces or solicits another party to confer some sort of benefit, the second party's behavior is

non-officious.ö *Firemen's Fund Ins. Co. v. Safeco Ins. Co.*, *supra,* 2007 WL 4233317 at *2.

Plaintiffs fail to allege that Tobin acted to induce or solicit Plaintiffs to confer any alleged

benefit.  öAbsent such inducement or solicitation, Defendants are simply not liable for unjust

enrichment, even if they did benefit from [Plaintiffsø] actions.ö *Id.* (noting that ö[w]here a person

has officiously conferred a benefit upon another, the other is enriched, but is not considered to be

unjustly enrichedö).  There are also insufficient allegations of fact (as opposed to conclusions)

demonstrating that any alleged benefit to Tobin was measurable, or that Tobin consciously

accepted any such benefit.  Under North Carolina law and Rule 12(b)(6), Count V should be

dismissed for failure to state a claim.[10]

**6.   COUNT VII – NORTH CAROLINA CONSUMER PROTECTION ACT**

Count VII of the Second Amended Complaint indicates that it is öan action for relief

under North Carolina law G.S. § 57-1.1, *et seq.*, pursuant to the North Carolina Consumer

Protection Actö (SAC ¶ 80).  Count VII fails to state a claim against Tobin under the North

Carolina Unfair and Deceptive Trade Practices Act, and should be dismissed.

The Eastern District of North Carolina has stated that in order to establish a claim for

unfair trade practices under N.C. Gen. Stat. § 75-1.1 *et seq.,*

> a plaintiff must show that (1) defendant committed an unfair or deceptive act or
> practice; (2) the action in question was in or affecting commerce; and (3) the act
> proximately caused injury to the plaintiff. *See Dalton v. Camp,* 353 N.C. 647, 548
> S.E.2d 704, 711 (2001); *Pleasant Valley Promenade,* 464 S.E.2d at 58 (to
> establish a prima facie case for unfair trade practices, a plaintiff must show that it
> suffered actual injury as a proximate result of defendant's misrepresentations).

---

[10] Moreover, unless there is an inadequate remedy at law, an equitable remedy like unjust
enrichment would be inappropriate. *See Robertson v. City of High Point*, 129 N.C.App. 88, 92,
497 S.E.2d 300, 303 (1998) (öthe general rule is that, if there is an adequate remedy at law, then
an equitable remedy such as an injunction would be inappropriateö).  As a predicate to seeking
equitable relief, Plaintiffs have not pled sufficient facts demonstrating that they lack an adequate
remedy at law.

*Wilson v. Dryvit Systems, Inc.*, 206 F.Supp.2d 749, 756 (E.D.N.C. 2002), *aff'd* 71 Fed. Appx.

960 (4th Cir. 2003).  Moreover, the Court has stated:

> õA practice is unfair when it offends established public policy as well as when the
> practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious
> to customers.ö *Johnson v. Phoenix Mut. Life Ins. Co.,* 300 N.C. 247, 263, 266
> S.E.2d 610, 621 (1980). õAn act or practice is deceptive ... if it has the capacity or
> tendency to deceive.ö *Id.* at 265. õWhat is an unfair or deceptive trade practice
> usually depends upon the facts of each case and the impact the practice has on the
> marketplace.ö *Id .* at 262-63. õWhile an act or practice which is unfair may also be
> deceptive, or vice versa, it need not be so for there to be a violation of the Act.ö
> *Id.* at 263.

> Generally, North Carolina courts and the Fourth Circuit have held that a mere
> breach of contract or breach of warranty does not, standing alone, constitute an
> unfair or deceptive trade practice. *Stone v. Paradise Park Homes, Inc.,* 37
> N.C.App. 97, 106, 245 S.E.2d 801, 807, review denied, 295 N.C. 653, 248 S.E.2d
> 257 (1978); *Bartolomeo v. Thomas,* 889 F.2d at 535. Determining whether a
> defendant's conduct was unfair and deceptive within the meaning of the Act in
> *United Roasters, Inc. v. Colgate Palmolive Co.,* 649 F .2d 985, 992 (4 [th] Cir.),
> cert. denied, 454 U.S. 1054 (1981), the Fourth Circuit analyzed the scope of the
> statute.

> It is clear that the statute encompasses such things as misrepresentation and a
> wide variety of shady practices sometimes associated with the marketing of
> consumer goods and services. Whatever the limit of their reach, however, the
> words must mean something more than an ordinary contract breach. In a sense,
> unfairness inheres in every breach of contract when one of the contracting parties
> is denied the advantage for which he contracted, but this is why remedial damages
> are awarded on contract claims. If such an award is to be trebled, the North
> Carolina legislature must have intended that substantial aggravating
> circumstances be present.

> Even an intentional breach of a valid contract does not, by itself, violate the
> statute. *Id.* at 992 (citing *CF Industries, Inc. v. Continental Gas Pipe Line Corp.,*
> 448 F.Supp. 475 (W.D.N.C.1978)); *Bartolomeo,* 889 F.2d at 535 (õA simple
> breach of contract, even if intentional, does not amount to a violation of the
> Act....ö); *Branch Banking and Trust Co. v. Thompson,* 107 N.C.App. 53, 62, 418
> S.E.2d 694, review denied, 332 N.C. 482, 421 S .E.2d 350 (1992) (õIt is well
> recognized ... that a mere breach of contract, even if intentional, is not sufficiently
> unfair or deceptive to sustain an action under [the Act]ö).

> Instead, õa plaintiff must show substantial aggravating circumstances attending
> the breach to recover under the Act, which allows for treble damages.ö
> *Bartolomeo,* 889 F.2d at 535; *Branch Banking and Trust Co.,* 107 N.C.App. at 62.
> The Fourth Circuit has suggested that õto find such [substantial aggravating
> circumstances] one would probably need to demonstrate deception either in the

formation of the contract or in the circumstances of its breach." *Bartolomeo,* 889 F.2d at 535; *see also, Harbert Int'l Inc. v. Wake County Bd. Of Educ.,* No. 90-640-CIV-5-D (E.D.N.C. Aug. 7, 1992) at 10 (citing *Bartolomeo* and *United Roasters*)

*Terry's Floor Fashions, Inc. v. Georgia-Pacific Corp.*, No. 5:97-CV-683-BR(2), 1998 WL 1107771 at *9-10 (E.D.N.C. July 23, 1998). If the facts supporting Plaintiffs' unfair trade practices claim are indistinguishable from those of plaintiff's breach of warranty claims, and Plaintiffs do not assert any additional facts to demonstrate substantial aggravating circumstances, the complaint should be dismissed. *Id.*

That is exactly the situation presented by Count VII of the Second Amended Complaint. Count VII is replete with conclusions and labels, but contains no factual allegations demonstrating that Tobin committed an unfair or deceptive act or practice; that any such act or practice was in or affecting commerce; or that any such act or practice proximately caused injury to the plaintiffs. Plaintiffs do not assert any facts demonstrating substantial aggravating circumstances, as required by the Fourth Circuit and North Carolina law. And there are no factual allegations demonstrating that Tobin said or did anything, or failed to say or to do something, that influenced the Plaintiffs' decision to purchase or build their homes with the subject drywall. *See Wilson v. Dryvit Systems, Inc.*, 206 F.Supp.2d at 756-57 ("In short, there is no evidence that Dryvit said or did anything, or failed to say or to do something, that influenced plaintiffs' decision to clad their home with Fastrak in any relevant way. *Cf. Pleasant Valley Promenade,* 464 S.E.2d at 58 (defendant was entitled to directed verdict on plaintiff's unfair trade practices claim where plaintiff ┼did not sufficiently demonstrate actual reliance on [defendant's] misrepresentations, and therefore, failed to provide the requisite causal connection)). Therefore, as a matter of law, plaintiffs cannot prove an essential element of their unfair trade practices claim"). Count VII should be dismissed for failure to state a claim against Tobin under the North Carolina Unfair and Deceptive Trade Practices Act.

7.      **COUNT VIII – EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING**

    i.      **Complaint Fails to State a Claim for "Equitable and Injunctive Relief"**

This is an action at law seeking an award of money damages.  Notwithstanding, the Second Amended Complaint also alleges in conclusory fashion that Plaintiffs and the Class "are without adequate remedy at law, rendering injunctive and other equitable relief appropriate" and "will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the í homes" (SAC ¶¶ 86-87).  Plaintiffs "demand injunctive and equitable relief" that orders the defendants:

> (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remediate, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program.

(SAC ¶ 88.)  Plaintiffs also demand that defendants "provide continued environmental and air monitoring in Plaintiffs and Class Members' homes" (SAC ¶ 89).

As to Tobin, the Second Amended Complaint fails to state a cognizable or plausible claim for "Equitable and Injunctive Relief" and should be dismissed under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  As to Tobin, insufficient facts have been alleged that would give the Court equity jurisdiction to award the requested injunctive relief.  Moreover, as to Tobin, the requested injunctive relief is not plausibly suggested by the facts alleged in the Second Amended Complaint.

"The predicate inquiry in evaluating whether to issue permanent injunctive relief is whether the court may properly exercise equity jurisdiction." *Northeast Women's Center v.*

*McMonagle*, 745 F.Supp. 1082, 1085 (E.D. Pa. 1990).  Equity jurisdiction is not proper unless

"(1) plaintiff has no adequate legal remedy, (2) the threatened injury is real, not imagined, and

(3) no equitable defenses preclude jurisdiction."  *Id.* (citations omitted).

> In the Fourth Circuit, in order to obtain a permanent injunction in any case:
>
>  "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2)
> that remedies available at law, such as monetary damages, are inadequate to
> compensate for that injury; (3) that, considering the balance of hardships between
> the plaintiff and defendant, a remedy in equity is warranted; and (4) that the
> public interest would not be disserved by a permanent injunction."

*eBay Inc. v. Mercexchange LLC*, 547 U.S. 388, 391 (2006) (internal citations omitted).

Irreparable injury and remedy at law "are essentially two sides of the same coin."

*Mercexchange LLC v. eBay*, 500 F.Supp.2d 556, 569 n. 11 (E.D. Va. 2007).  As stated by the

U.S. Supreme Court,

> The key word in this consideration is *irreparable*.  Mere injuries, however
> substantial, in terms of money, time and energy necessarily expended in the
> absence of a stay, are not enough.  The possibility that adequate compensatory or
> other corrective relief will be available at a later date, in the ordinary course of
> litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Assoc. v.*

*Federal Power Comm'n,* 259 F.2d 921, 925 (D.C. Cir. 1958)).

"Where the harm suffered by the moving party may be compensated by an award of

money damages at judgment, courts generally have refused to find that harm irreparable."

*Hughes Network Systems v. Interdigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir. 1994)

(citing *Morton v. Beyer,* 822 F.2d 364, 371-72 (3d Cir. 1987) and *Foxboro Co. v. Arabian Am.*

*Oil Co.,* 805 F.2d 34, 36 (1st Cir. 1986)).  "[A] party does not normally suffer irreparable harm

simply because it has to win a final judgment on the merits to obtain monetary relief." *Id.*; *see*

*also Robertson v. City of High Point*, 129 N.C.App. 88, 92, 497 S.E.2d 300, 303 (1998) ("the

general rule is that, if there is an adequate remedy at law, then an equitable remedy such as an injunction would be inappropriateö).

Plaintiffs have failed to allege sufficient facts (as opposed to conclusions) which demonstrate the predicate to the Courtøs exercise of equity jurisdiction, or which demonstrate each of the four factors enunciated in *eBay v. Mercexchange LLC, supra.* As alleged, plaintiffs and the putative class members have not suffered an õirreparable injury,ö and the remedies available at law (i.e., monetary damages) are adequate. Moreover, as discussed below, the request for õmedical monitoringö for unknown õpotentialö or õpossibleö health problems associated with õexposureö to drywall, is entirely speculative and unsupported by North Carolina law. Count VIII fails to state a claim to injunctive relief that is plausible on its face, and should be dismissed.

### ii. Complaint Fails to State a Claim for "Medical Monitoring"

The Second Amended Complaint fails to state a cognizable claim for õMedical Monitoringö under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Second Amended Complaint alleges that Plaintiffs and Class Members õhave been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendantsø defective and unfit drywall and have suffered personal injuries as a resultö (SAC ¶ 90). The Second Amended Complaint alleges that this õexposure *may lead* to serious health problems, diseases, and medical conditions that *may be prevented* by timely diagnosis and treatmentö (SAC ¶ 93 (emphasis added)). The Second Amended Complaint requests õmedical monitoringö (or a õmonitoring regimeö) in order to detect or diagnose õ*potential* medical problems,ö õproblems that they *may encounter*,ö or õ*any* latent disease *possible*ö (SAC ¶¶ 94, 96 (emphasis added)).

As a federal court sitting in diversity, the Court is obliged to apply the jurisprudence of the Supreme Court of North Carolina on issues of North Carolina law. *See St. Paul Fire & Marine Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2002) (citation omitted); *see also Ball v. Joy Technologies, Inc.*, 958 F.2d 36, 39 (4th Cir. 1991) (observing that "[t]he *Erie* doctrine permits federal courts –to rule upon state law as it presently exists and not to surmise or suggest its expansion," the Fourth Circuit declined the plaintiffs' request to expand the law of torts in West Virginia and Virginia and recognize exposure to toxic substances as a physical injury, and affirmed the District Court's order concluding that exposure to toxic chemicals did not constitute an injury that would entitle plaintiffs to recover damages for emotional distress).

Neither the Supreme Court of North Carolina, nor the legislature in North Carolina, have recognized "medical monitoring" or medical surveillance as a viable independent tort claim or cause of action, nor has it recognized a remedy involving the creation of a medical monitoring fund (or a "monitoring regime") for "potential medical problems."  To the contrary, if presented with this issue, all indications are that the Supreme Court of North Carolina would decline to expand North Carolina tort law and would refuse to recognize such a claim.  *See, e.g., Curl v. American Multimedia, Inc.*, 187 N.C.App. 649, 655-56, 654 S.E.2d 76, 80-81 (2007).

Because this Court must "rule upon state law as it presently exists" and not "surmise or suggest its expansion," *Ball v. Joy Technologies, Inc.*, *supra*, the Court should decline the invitation of the Plaintiffs to re-write or expand the law of torts in North Carolina and dismiss the claim for "Medical Monitoring" in Count VIII for failure to state a claim.

## CONCLUSION

WHEREFORE, Defendant Tobin Trading Inc., by counsel, respectfully prays that this Court enter an Order granting its Motion to Dismiss.

TOBIN TRADING, INC.

Date:  January 28, 2010       By:      _/s/ Theodore I. Brenner_____

Theodore I. Brenner, VSB 17815
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com

Alexander S. de Witt, VSB 42708
BRENNER, EVANS & MILLMAN, P.C.
P.O. Box 470
Richmond, VA  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: adewitt@beylaw.com

*ATTORNEYS FOR TOBIN TRADING, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison

Counsel, Russ Herman, and Defendants' Liaison Counsel Kerry Miller, by U.S. Mail and e-mail

or by hand delivery and e-mail and upon all parties by electronically uploading the same to

LexisNexis File and Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was

electronically filed with the Clerk of Court of the United States District Court for the Eastern

District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing

in accord with the procedures established in MDL 2047, on this 28th day of January, 2010.

      By:      _/s/ Theodore I. Brenner_____

Theodore I. Brenner, VSB 17815
BRENNER, EVANS & MILLMAN, P.C.
411 E. Franklin Street, Suite 200
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: tbrenner@beylaw.com

*ATTORNEY FOR TOBIN TRADING, INC.*