IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL No. 09-2047** |
| | **SECTION: L** |
| **THIS DOCUMENT RELATES TO:** Curtis Hinkley, et al. v. Taishan Gypsum Co. Ltd., et al. | **JUDGE: FALLON** |
| Case No. 2:2009-cv-06686 (E.D. La.) | **MAGISTRATE: WILKINSON** |

**VENTURE SUPPLY, INC. AND THE PORTER-BLAINE CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT, PURSUANT TO RULE 12(b)(6)**

Come now the defendants The Porter-Blaine Corporation ("Porter-Blaine") and Venture Supply, Inc. ("Venture"), by counsel, and submit the following memorandum in support of their Rule 12(b)(6) Motions to Dismiss, and state as follows:

A.   BACKGROUND

As it relates to these answering Defendants, the Plaintiffs allege that Defendant "Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members. Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiff and Class Members." (Second Am. Compl. ¶ 15.) Similarly, the Second Amended Complaint states that "Porter-Blaine… is one of Venture's drywall installation contractors… Porter-Blaine installed defective drywall in Plaintiffs' homes, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein." (Second Am. Compl. ¶ 17.) In other words, the Second Amended Complaint states that the Plaintiffs and Class Members either purchased drywall from one of these answering Defendants and/or one of these answering Defendants sold drywall to a builder

from whom the Plaintiffs and Class Members purchased homes. The Second Amended Complaint goes on to state that the drywall installed in the Plaintiffs and Class Members homes is defective.

In their Second Amended Complaint, Plaintiffs assert numerous Counts against the Defendants. As to Defendants Venture and Porter-Blaine, the Plaintiffs set forth seven separate causes of action, taking a shotgun approach and alleging everything from "nuisance" to "unjust enrichment." Most, if not all, of these manufactured counts fail as a matter of law and should be dismissed. Each separate cause of action will be addressed separately below.

B.  COUNT II "NEGLIGENCE PER SE" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Count II, the Plaintiffs allege a cause of action based upon "negligence *per se*"; however, the Plaintiffs' Second Amended Complaint does not contain allegations sufficient to support such a claim. Specifically, in order to state a negligence *per se* claim, the Plaintiffs must allege the following:

> (1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff; (3) a breach of the statutory duty; (4) that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and, (6) that the violation of the statute proximately caused the injury.

Rudd v. Electrolux Corp., 982 F. Supp. 355, 365 (M.D.N.C., 1997) (citations omitted).

In Lynn v. Overlook Dev., 328 N.C. 689, 691, 403 S.E.2d 469, 470 (1991), the plaintiffs filed suit against a city building inspector, among others, alleging that the City of Asheville "had a duty to inspect [a] unit and that defendants' failure to inspect and/or order correction of the alleged Building Code violations was a proximate cause of plaintiffs' damages." Specifically, the plaintiffs alleged that the "defendants were negligent *per se* because they violated the provisions of N.C.G.S. §§ 160A-417, -420, and -423 and Building Code sec. 105 relating to permits, inspections, and the certificate of compliance." Id. at 695-96, 403 S.E.2d at 473.

2

Although the plaintiffs alleged particular statutes and Building Code provisions that were allegedly violated, the court stated that, "[a]lthough the violation of a statute which imposes a duty upon the city building inspector in order to promote the safety of the public, including the plaintiffs, may be negligence *per se*, *such negligence is actionable only if it is the proximate cause of injury to the plaintiff*." Id. at 696, 403 S.E.2d at 473 (emphasis in original). After evaluating whether the plaintiffs' allegations were sufficient to show that the alleged violations proximately caused the alleged damages, the court concluded, "we do not find that plaintiffs' allegations state a claim upon which relief can be granted." Id. at 696-97, 403 S.E.2d at 473. Accordingly, the court upheld the trial court's dismissal of the plaintiffs' claim, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

Here, although the Plaintiffs have amended their First Amended Class Action Complaint to allege particular code violations which Porter-Blaine or Venture allegedly violated, Venture and PB's research has not disclosed the existence of Code known as the "United States Building Code." Notably, Plaintiffs do not allege that the specific cited sections (112.3 and 113.5) of the "United States Building Code" have been adopted by the legislature of North Carolina or enacted into law. Additionally, the ASTM (American Society for Testing and Materials) standards cited by the Plaintiffs are not "Code" or statutory provisions that can serve as the basis for a negligence per se claim against the Defendants.[1]

Courts presented with complaints containing similar generic claims of negligence *per se* routinely dismiss such claims for failure to state a claim under Rule 12(b)(6). See, e.g., Holler v. Cinemark USA, Inc., 185 F. Supp. 2d 1242, 1244 (D. Kan. 2002) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence *per se*... If plaintiff brings a claim based on a specific statute, it logically follows that plaintiff

---

[1] There is no claim or allegation in this case that the Defendants violated any specific provision of the North Carolina State Building Code.

3

must plead the statute on which the claim is based.  In this case, plaintiffs generic complaint that defendant violated unspecified 'local, state and federal statutes, guidelines and regulations' does not provide fair notice of his claim. It is therefore subject to dismissal under Rule 12(b)(6)" (citations omitted)).

Additionally, the Plaintiffs do not allege in their Second Amended Complaint that any statute or ordinance the Defendants allegedly violated was enacted to protect a class of persons, nor that they are members of the class of persons intended to be protected.  Because they fail to allege any particular statute or ordinance, the Plaintiffs also fail to allege that the injury sustained was suffered by an interest which the statute protected and that the injury was of the nature contemplated in the statute.  Since Plaintiffs have pled none of the requisite allegations to support a negligence *per se* cause of action, such claim should be dismissed for failure to state a claim upon which relief can be granted, as in <u>Lynn</u>, <u>supra</u>.

C. <u>COUNT III "BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>

In Count III, Plaintiffs attempt to assert claims for Breach of Express and/or Implied Warranties.  Although the Second Amended Complaint does not specifically identify the implied warranties allegedly breached by Defendants, the allegations themselves reveal that Plaintiffs are asserting a claim for the breach of the Implied Warranty of Fitness for a Particular Purpose. Although Plaintiffs amended their First Amended Complaint to state "The drywall was defective *and not merchantable* because it was *unfit* for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for

use as a building material, because it contained defects as set forth herein" (Second Amended Complaint ¶ 59 (emphasis added))[2], these allegations remain conclusory and formulaic in nature.

N.C. G.S. § 25-2-315 states,

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section [G.S. 25-2-316] an implied warranty that the goods shall be fit for such purpose.

The official comment to this statute makes a distinction between the implied warranty of fitness for a particular purpose and the implied warranty of merchantability. N.C. Gen. Stat. § 25-2-315 cmt. 2. Specifically, the comment states,

> [a] "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Id. Accordingly, courts have held that the "[o]rdinary use of a product forecloses recovery under the implied warranty of fitness for a particular purpose." McDonald Bros., Inc. v. Tinder Wholesale, LLC, 395 F. Supp.2d 255, 266 (M.D.N.C., 2005).

In McDonald Bros., Inc., the plaintiff sought recovery for a breach of the implied warranty of fitness for a particular purpose regarding the sale of trim boards. Id. There, the plaintiff alleged "the trim boards were not fit for the particular purpose – for installation on residential housing – 'for which [they were] manufactured, designed, and sold.'" Id. (citations omitted). The court noted that "[t]he fact that the trim boards were manufactured, designed, and

---

[2] Just like the First Amended Complaint, Count III of the proposed Second Amended Complaint continues to allege in a conclusory fashion that "Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' and Class Members' homes as a building material) due to the defects set forth herein" (Second Amended Complaint ¶ 59).

5

sold for residential use makes Plaintiff's actual use ordinary." Id.  The court went on to state that "[s]uch ordinary, intended use prevents recovery under the implied warranty of fitness for a particular purpose as a matter of law." Id. (citing Halprin v. Ford Motor Co., 107 N.C. App. 423, 431, 420 S.E.2d 686, 691 (1992) (denying claim where a plaintiff used his truck only for general everyday purposes)).  Accordingly, the court held that the plaintiff's claim for breach of the implied warranty of fitness for a particular purpose fails to state a claim and granted the defendant's motion to dismiss such claim.  Id.

Here, the Plaintiffs' Second Amended Complaint states, "[t]he Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' and Class Members' homes as a building material) due to the defects set forth herein."  (Second Am. Compl. ¶ 60.)  Indeed, the Plaintiffs' allegations are strikingly similar to those set forth in McDonald Bros., Inc., supra, and, similarly, the Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose should be dismissed, as the "[o]rdinary use of a product forecloses recovery under the implied warranty of fitness for a particular purpose." McDonald Bros., Inc., 395 F. Supp.2d at 266.  Likewise, Plaintiffs' addition of "and not merchantable" to the Second Amended Complaint does nothing more than add a formulaic conclusion in an attempt to state a claim where none exists.  Even with the inclusion of these words, Plaintiffs' Second Amended Complaint fails to allege facts which would give rise to a claim for breach of an implied warranty.

Count III of Plaintiffs' Second Amended Complaint also purports to establish a claim for breach of express warranties; however, the Second Amended Complaint is devoid of any allegations tending to establish the existence of an express warranty.  N.C. Gen. Stat. § 25-2-313 describes the circumstances under which an express warranty is created.  Specifically, it states that an express warranty is created by a seller in the following circumstances:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise[;]
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description[; or]
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Id.  Here, the Plaintiffs fail to allege any of the above circumstances under which an express warranty might have been created.  Rather, the Second Amended Complaint merely states, "Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty[,]" (Second Am. Compl. ¶ 56) and that the Defendants "expressly or impliedly warranted the product to be fit for" installation in the Plaintiffs' and Class Members' homes.  (Second Am. Compl. ¶ 57.)  This vague and general allegation of the existence of an express warranty is insufficient to state a claim for the breach of an express warranty.  Accordingly, Plaintiffs' have failed to state a claim for the breach of express and/or implied warranties and such claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

D.  COUNT IV "PRIVATE NUISANCE" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Count IV of the Second Amended Complaint, the Plaintiffs attempt to allege a cause of action for "private nuisance"; however, the Plaintiffs fail to allege that the Defendants had any ownership or control over the thing allegedly causing a nuisance to the Plaintiffs.  In North Carolina, the following must be established in order to make a *prima facie* case of nuisance, "(1) that the defendant's use of its property, under the circumstances, unreasonably invaded or interfered with the plaintiff's use and enjoyment of the plaintiff's property; and (2) because of the unreasonable invasion or interference, the plaintiff suffered substantial injury."  Elliott v.

Muehlbach, 173 N.C. App. 709, 712, 620 S.E.2d 266, 269 (2005).  In other words, "a private nuisance exists in a legal sense when one makes an improper use of his own property and in that way injures the land or some incorporeal right of one's neighbor."  Evans v. Lochmere Recreation Club, Inc., 176 N.C. App. 724, 727, 627 S.E.2d 340, 342 (2006) (emphasis added) (quoting Morgan v. High Penn Oil Co., 238 N.C. 185, 193, 77 S.E.2d 682, 689 (1953)).

Here, the Plaintiffs allege that Venture sold drywall to the drywall installer, and that the drywall was installed in a home they purchased from the builder or built themselves.  (Second Am. Compl. ¶ 15.)  It is also alleged that Porter-Blaine installed drywall in homes purchased by some Plaintiffs.  (Second Am. Compl. ¶17.)  It is not alleged that Venture or Porter-Blaine had any ownership in or control over the allegedly defective drywall.  Accordingly, Plaintiffs' Second Amended Complaint fails to state a cause of action for private nuisance.

Courts across the country find that in this type of action, a claim for private nuisance, is not viable. For example, in City of Manchester v. Nat'l Gypsum Co., 637 F. Supp. 646, 648 (D.R.I. 1986), the plaintiff arranged for construction of additions and modifications to City schools.  Plaster products containing asbestos were used in the construction.  Id.  The plaintiff filed suit over six years after construction was completed alleging, among other things, a cause of action based on nuisance.  See Id.  The court noted that the plaster products had been in the possession of the plaintiff since the completion of construction, and that, after the product was manufactured and sold by the defendant, it had no control over the product.  Id. at 656.  Accordingly, the court found that, because the defendant "had [no] power to abate the nuisance…, a basic element of the tort of nuisance [was] absent, and the plaintiff [could not] succeed on [that] theory of relief."  Id.

Similarly, in Tioga Public School Dist. v. U.S. Gypsum Co., 984 F.2d 915, 920 (8th Cir., 1993), the court held that "nuisance law does not afford a remedy against the manufacturer of an

asbestos-containing product to an owner whose building has been contaminated by asbestos following the installation of that product in the building." Because the defendant had no further control of the contaminated material after it was sold to the plaintiff, the defendant could not be held liable in nuisance. Id. See also Roseville Plaza Ltd. P'ship v. U.S. Gypsum Co., 811 F. Supp. 1200, 1220 (E.D. Mich., 1992) (noting "the idea of a wrongful use of property (as distinguished from an improper condition of property) is basic to the legal concept of nuisance… [T]he role of the 'creator' of a nuisance, upon whom liability for nuisance-caused injury is imposed, is one to which manufacturers and sellers seem totally alien." (emphasis added)).

Accordingly, since Plaintiffs have failed to allege any use, ownership, or control by the Defendants over the property to which Plaintiffs assign a nuisance, Count IV should be dismissed for failure to state a claim upon which relief can be granted.

E.  COUNT V "UNJUST ENRICHMENT" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Count V of their Second Amended Complaint, Plaintiffs attempt to state a claim for "unjust enrichment." In North Carolina, "[i]n order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party." Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). Additionally, "[t]he benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances." Id. The benefit conferred "must not be gratuitous and it must be measurable." Id. (citations omitted). Finally, "the defendant must have consciously accepted the benefit." Id.

A claim of unjust enrichment is "neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." Id. In other words, "[t]he claim is not based on a promise but is imposed by law to prevent an unjust enrichment." Id. Accordingly, "[i]f there is

9

a contract between the parties the contract governs the claim and the law will not imply a contract." Id. (citations omitted).

In their Second Amended Complaint, the Plaintiffs divide the relationships between the Plaintiffs and Defendants Venture and Porter-Blaine into two categories, where: 1) the Plaintiff or Class Member had a contract with the Defendant at issue; and 2) the Plaintiff or Class Member was a third party beneficiary of such a contract.  Specifically, the Second Amended Complaint states "Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty." (Second Am. Compl. ¶ 56.)  Likewise, the Amended Complaint states that "Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members. Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiff and Class Members." (Second Am. Compl. ¶ 15.) Similarly, the Second Amended Complaint states that "Porter-Blaine… is one of Venture's drywall installation contractors…  Porter-Blaine installed defective drywall in Plaintiffs' homes, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein." (Second Am. Compl. ¶ 17.)  In order to determine whether Plaintiffs have stated a claim for "unjust enrichment," these categories must be evaluated separately.

First, "[i]t is a well established principle that an express contract precludes an implied contract with reference to the same matter." Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962).  Accordingly, in those instances where, as alleged in the Second Amended Complaint, "Defendants and/or their agents were in privity with Plaintiffs and Class Members[,]" (Second Am. Compl. ¶ 51) and where "Venture… imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to… Plaintiff and

10

Class Members[,]" (Second Am. Compl. ¶ 12) the existence of a direct contract precludes recovery on an implied contract.

In the second category of Plaintiffs and Class Members, the Second Amended Complaint establishes that the Plaintiffs and/or Class Members are a third party beneficiary to the contract of others. An analogous situation was evaluated by the North Carolina Supreme Court in <u>Vetco Concrete</u>, <u>supra</u>. There, a contract was entered into between the plaintiff and the Fore-Taylor Building Company, a third party to the relevant litigation. <u>Vetco Concrete</u>, 256 N.C.at 713, 124 S.E.2d at 907. Pursuant to that contract, the plaintiff furnished materials, which went into the construction of residences built on the defendant's lots. <u>Id.</u> The plaintiff never entered into any agreement with the defendant, under which the defendant would have agreed to pay the plaintiff for the materials supplied. <u>Id.</u>

In determining whether the plaintiff could recover from the defendant under the theory of an implied contract or unjust enrichment, the court noted that "[i]t is a well established principle that an express contract precludes an implied contract with reference to the same matter." <u>Id.</u> at 713, 124 S.E.2d at 908 (citations omitted). Indeed, "[t]here cannot be an express and an implied contract for the same thing existing at the same time." <u>Id.</u> (<u>quoting</u> 12 Am. Jur., Contracts, Section 7, p. 505). The court went on to note that "[n]o agreement can be implied where there is an express one existing[.]" <u>Id.</u> at 713-14, 124 S.E.2d at 908. More importantly,

> [t]he same rule has been applied to benefits conferred under a special contract with a third person. When there is a contract between two persons for the furnishing of services or goods to a third, the latter is not liable on an implied contract simply because he has received such services or goods.

<u>Id.</u> at 714, 124 S.E.2d at 908. (<u>quoting</u> 12 Am. Jur., Contracts, Section 7, p. 505). The court concluded that, since the plaintiff proved a contract with the Fore-Taylor Building Company for the purchase of the materials used in the construction of houses on defendant's property, "it was

error for the court to submit the case to the jury on the theory of an implied contract on the part of the defendant to pay for materials sold and delivered." Id. at 715, 124 S.E.2d at 909.

Here, in the second category of Plaintiffs and Class Members, the Plaintiffs allege that they were "third party beneficiaries" to the contracts entered into by the first category of Plaintiffs and Class Members discussed above. (Second Am. Compl. ¶ 51.) In other words, in the instances in which a contract was entered into between a builder and Defendant Venture or Porter-Blaine, the Plaintiff and/or Class Member homeowner would be a third-party beneficiary to that contract. (See Second Am. Compl. ¶ 15 (alleging "Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members.").) According to the holding in Vetco Concrete, supra, the Plaintiffs' claim for "unjust enrichment" as to this category of Plaintiffs must fail because the existence of a contract regarding the sale of drywall between parties other than the Plaintiffs and/or Class Members precludes the finding of an implied contract regarding the same subject matter.

Although the Second Amended Complaint is regretfully lacking in detail regarding the alleged relationships between the parties, there are only two possible scenarios under which the Plaintiffs and/or Class Members could have been involved with Defendants Venture and Porter-Blaine: either the Plaintiff/Class Member at issue had a contract with Venture or Porter-Blaine related to the provision of drywall; or Venture or Porter-Blaine had a contract with a builder related to the provision of drywall. Under either scenario, according to the cases outlined above, Plaintiffs have not properly pled a cause of action for "unjust enrichment," and such claim should be dismissed for failure to state a claim upon which relief can be granted.

F. COUNT VII "VIOLATION OF THE NORTH CAROLINA CONSUMER PROTECTION ACT" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Count VII of the Second Amended Complaint, Plaintiffs purport to assert a claim for "Violation of the North Carolina Consumer Protection Act." Although Count VII summarily alleges that the acts of the Defendants constituted a "violation of the aforementioned provisions of the North Carolina Consumer Protection Act[,]" the Second Amended Complaint is entirely devoid of any allegations which would give rise to a valid claim under the Act.

In North Carolina "[t]o establish a *prima facie* claim for unfair trade practices, the plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce…, and (3) the act proximately caused injury to the plaintiff." Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995) (citations omitted). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Warfield v. Hicks, 91 N.C. App. 1, 8, 370 S.E.2d 689, 693 (1988). In other words, "[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." Id. (citations omitted).

In Wilson v. Dryvit Systems, Inc., 206 F. Supp.2d 749, 756-57 (E.D.N.C., 2002), the court evaluated whether the defendants acts, related to the sale of DEFS cladding on the plaintiffs' house, gave rise to a claim for unfair and deceptive trade practices. There, the court noted that there was "no evidence that Dryvit said or did anything, or failed to say or to do something, that influenced plaintiffs' decision to clad their home with Fastrak in any relevant way." Id. at 756. Since the plaintiffs could not show the requisite causal connection between the alleged misrepresentation and their alleged damages, the court concluded "that no claim for unfair trade practices exists[,]" since "plaintiffs [could] not prove an essential element of their unfair trade practices claim." Id.; see also, Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995) (holding that plaintiff did not "demonstrate actual

13

reliance on [defendant's] misrepresentations and, therefore, failed to provide the requisite casual connection[,]" and, therefore the plaintiff failed to prove the defendant committed an unfair and deceptive act which proximately caused injury to the plaintiff).

Here, the Second Amended Complaint alleges that

> [t]he Defendants' acts and omissions as well as their failure to use reasonable care in this matter… including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the aforementioned provisions of the North Carolina Consumer Protection Act.

(Second Am. Compl. ¶ 82.) At the outset, it is important to note that, apart from the summary allegations that Defendants made a "knowing misrepresentation," (Second Am. Compl. ¶ 72) the Second Amended Complaint contains no allegations regarding the substance of any alleged misrepresentation. The Second Amended Complaint is silent as to any statements made to the Plaintiff regarding the quality, origin, or characteristics of the drywall installed in the Plaintiffs and/or Class Members' homes. Likewise, although the Second Amended Complaint states that the Defendants failed to disclose the "source, affiliation, origin, characteristics, ingredients, standards and quality" of the drywall, there are no allegations that any act or omission of the Defendants influenced the plaintiffs' decisions regarding the drywall used in their homes in any way. Indeed, the Plaintiffs fail to allege that, had they been possessed of the knowledge that the drywall used in their homes had been imported from China, their actions would have been altered in any way. Accordingly, pursuant to the holdings in <u>Wilson</u>, <u>supra</u>, and <u>Pleasant Valley Promenade</u>, <u>supra</u>, the Plaintiffs have failed to plead that the alleged acts of the Defendants proximately caused any injury to the Plaintiffs and/or Class Members, and Count VII should be dismissed for failure to state a claim upon which relief can be granted.

G. <u>COUNT VIII "EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF SHOULD BE GRANTED</u>

14

In Count VIII of the Second Amended Complaint, the Plaintiffs are seeking injunctive relief in the nature of an Order requiring Venture and Porter-Blaine to:

> 1) buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remediate, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair; 2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; 3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and 4) create, fund, and support a medical monitoring program[.]

(Second Am. Compl. ¶ 88.) Although Plaintiffs summarily allege that irreparable harm will be suffered by the Plaintiffs and Class Members without the injunctive relief and medical monitoring requested, the allegations make it clear that the monetary damages sought by the Plaintiffs would provide the Plaintiffs with adequate relief. Additionally, North Carolina courts do not recognize a cause of action for medical monitoring in anticipation of some future personal injury.

The law in North Carolina is clear with respect to whether equitable and injunctive relief will be granted where compensation in damages would be an adequate remedy. Specifically, our courts have held that "[t]he Court will not grant relief by injunction… when it appears that the plaintiff can have adequate remedy, and compensation in damages for the injury sustained." Frink v. Stewart, 94 N.C. 484, 1886 WL 932, 1 (1886). In Morganton Land & Improvement Co. v. Webb, 117 N.C. 478, 23 S.E. 458, 459 (1895), the North Carolina Supreme Court discussed "[w]hat kind of trespass is remedied by compensation and what kind by an injunction to prevent it[.]" Id. There, the court stated,

> [t]he rule is that, if the threatened injury can be compensated in damages, then injunctive relief will not be given, but the parties will be left to work out their grievances in a court of law. If the prospective injury is such as cannot be atoned for in damages, or if, in case of an ordinary trespass, the trespasser is insolvent, and unable to respond in damages, then injunctive relief will be granted, in order to prevent injustice in any event.

15

Id. In other words, "[t]he peculiar jurisdictions of a court of equity will be exercised only when the legal remedy does not furnish an adequate remedy, and the nature of the subject-matter must be considered." Id. The court went on to define an "irreparable injury" as one "which cannot be repaired retrieved, put back again, or atoned for. The injury must be of a peculiar nature, so that compensation in money cannot atone for it." Id. Additionally, North Carolina courts have held that "it is not sufficient to allege [an irreparable] injury in general terms – it must be done by such specific allegations of facts, as will enable the Court to see that such injury will, or may, happen." Frink, 94 N.C. 484, 1886 WL at 1.

Here, the Plaintiffs have not alleged any specific facts which would entitle them to equitable or injunctive relief. In fact, the allegations specifically request monetary damages. In that regard, the Second Amended Complaint states, "Plaintiffs… demand injunctive and equitable relief and further, that defendants be ordered to: (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remediate, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair[.]" (Second Am. Compl. ¶ 88.) Accordingly, the Complaint essentially alleges that monetary damages would provide an adequate remedy.

The Plaintiffs also request that this Court require the Defendants to institute a medical monitoring program. North Carolina courts have specifically addressed such a request and have refused to recognize such a cause of action. In Curl v. American Multimedia, Inc., 187 N.C. App. 649, 655, 654 S.E.2d 76, 80-1 (2007), the plaintiffs asked the court to recognize a cause of action for medical monitoring, among others. After noting its sympathy for the plaintiffs' alleged risk of future serious illnesses caused by the plaintiffs' exposure to certain chemicals, the court elected "not to create these new causes of action." Id. at 655, 654 S.E.2d at 81.

Noting that a cause of action for medical monitoring for potential future injuries does not exist in North Carolina, the court stated that the "recognition of a new cause of action is a policy decision which falls within the province of the legislature." Id. The court went on to discuss the potential policy implications, stating,

> [s]ound policy reasons might be advanced either in favor of or opposition to the creation of this cause of action, and if such a claim were recognized, other policy questions would arise. The questions would include the following inquiries: What statistical chance of future illness or percent increase in that likelihood would trigger the cause of action? Would secondary causes of increased risk, such as cigarette smoking, preclude recovery? Would plaintiffs be required to demonstrate present physical effects, such as decreased immune function or increased cellular concentration of a toxin?... Would Defendants be liable for the costs of all "medically recommended" monitoring, or would Plaintiffs have to meet some other standard?

Id. Noting the complex nature of these policy questions, the court concluded that "balancing the humanitarian, environmental, and economic factors implicated by these issues is a task within the purview of the legislature and not the courts." Id. at 657, 654 S.E.2d at 81.

The Plaintiffs' Second Amended Complaint states that "Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment." (Second Am. Compl. ¶ 93.) Accordingly, the relief sought by the Plaintiffs falls squarely within the holding of Curl, supra, and should be dismissed, as North Carolina does not recognize a cause of action for the cost of future medical monitoring without evidence of a present personal injury. To the extent the Plaintiffs allege entitlement to a medical monitoring program for an alleged present personal injury, an award for future medical expenses, where appropriate testimony is rendered, would be an adequate and appropriate remedy at law. Accordingly, pursuant to the holding in Frink, supra, and Morganton Land & Improvement Co., supra, Count VIII of the Plaintiffs' Second

Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed.

WHEREFORE, Defendants Venture and Porter-Blaine respectfully pray that this Court enter an Order granting their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 29th day of January, 2010.

Respectfully submitted,

By: /s/ Thomas M. Buckley
Thomas M. Buckley, Esq. (NCB # 26076)
Mindi L. Schulze, Esq. (NCB # 32918)
Attorney for Defendants Venture Supply, Inc. and The Porter-Blaine Corporation
Hedrick, Gardner, Kincheloe & Garofalo, LLC
4011 Westchase Blvd., Suite 300
Raleigh, NC  27607
Telephone:     (919) 719-3721
Facsimile:     (919) 832-9425
Email: TBuckley@hedrickgardner.com
Email: MSchulze@hedrickgardner.com

Mark C. Nanavati, Esquire (VSB #38709)
Kenneth F. Hardt, Esquire (VSB # 23966)
Sinnott, Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 378-7600 ext. 3311 or 3316
(804) 378-2610 (fax)
khardt@snllaw.com
mnanavati@snllaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint Pursuant to Rule 12(b)(6) was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 and has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, on this 29th day of January, 2010.

/S/ THOMAS M. BUCKLEY
Thomas M. Buckley