UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * | MDL NO. 2047 |
| | * | |
| | * | SECTION: L |
| | * | |
| | * | JUDGE:  FALLON |
| | * | |
| | * | MAG. JUDGE NO.: 2 |
| THIS DOCUMENT RELATES TO ALL CASES | * | |
| | * | MAG. JUDGE: WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN SUPPORT OF MOTION FOR APPOINTMENT TO THE PROPOSED INSURER STEERING COMMITTEE AND APPOINTMENT AS CO-LEAD COUNSEL FOR THE FIRST-PARTY INSURER SUBCOMITTEE, *OR IN THE ALTERNATIVE*, MOTION TO EMPLOY A NOMINATION PROCEDURE FOR APPOINTEMENTS TO THE PROPOSED COMMITTEES AND LEADERS OF SAME

**MAY IT PLEASE THE COURT:**

The Travelers Indemnity Company and The Standard Fire Insurance Company on behalf of themselves and their affiliated property insurance companies (hereinafter "Travelers") respectfully submit this memorandum in support of their motion, in the event that the Court deems it appropriate to create an insurer steering committee, for appointment of Ralph S. Hubbard III to such committee and for appointment of Ralph S. Hubbard III as Co-Lead Counsel for a First-Party Insurer Steering Committee as contemplated in the joint motion filed by Liberty Mutual Insurance Company ("Liberty Mutual") and State Farm Fire & Casualty ("State Farm") on January 19, 2010 [Rec. Doc. 760] ("Liberty Mutual/State Farm Motion"), or in the alternative for an order establishing a nomination procedure for appointments to the proposed committees and leaders of same.

## INTRODUCTION

A large number of homeowners' insurance policies issued by Travelers to residents of the State of Louisiana were in effect at the time that Chinese-made drywall was installed in homes in Louisiana. Indeed, Travelers routinely finds itself in lists identifying the ten insurance companies having underwritten the largest market shares of homeowners' policies in Louisiana. Travelers was extensively involved in the consolidated Hurricane Katrina litigation in Section K of this Court. Ralph S. Hubbard III, representing Travelers and several other insurance companies, served as Defendants' Liaison Counsel in that litigation. To date, Travelers is not a defendant in any Chinese-made drywall litigation pending in this District. Nevertheless, Travelers has received claims from insureds in Louisiana involving Chinese-made drywall, and such claims may give rise to litigation involving the same or similar issues to those presented by the first-party and third-party insurance cases presently pending before this Court.

While the Judicial Panel on Multidistrict Litigation might decide not to transfer insurance cases from other districts to this MDL,[1] Travelers recognizes that, regardless of the Panel's rulings, the Eastern District of Louisiana likely will consolidate, for administrative purposes, insurance cases pending in this Court relating to Chinese-made drywall, and that an insurer steering committee would facilitate the consolidated administration of these cases. This District appears to have already adopted a practice whereby all insurance cases pending in this District

---

[1] In the PSC's Response to the Liberty/State Farm Motion, the Plaintiff's Steering Committee ("PSC") advised the Court that the "[t]he Judicial Panel on Multidistrict Litigation conducted a hearing on January 27, 2010, and it will decide whether to transfer certain coverage insurance coverage claims to the MDL." Response, at p. 2 [Rec. Doc. 841]. Upon information and belief, Travelers believes the matter referred to by the PSC is *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL-2047 (Jud. Panel. Multidistrict Litig. Feb. 5, 2010) (copy attached as Ex. 1.), a case in which the Judicial Panel on Multidistrict Litigation *denied* the PSC's motion to transfer an insurance coverage case involving liability coverage for Chinese Drywall related liabilities. The Panel reached a similar result in December when it vacated a conditional transfer order and denied the requested transfer of a Florida case involving insurance coverage for alleged liabilities arising out of Chinese Drywall. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL-2047 (Jud. Panel. Multidistrict Litig. Dec. 2, 2009) (copy attached as Ex. 2).

and relating to Chinese-made drywall are being assigned, at the time of filing, to Section "L,"

similar to the manner in which certain Hurricane Katrina litigation was consolidated in Section

"K." Travelers believes it has a significant interest in participating in any Chinese-made drywall

insurance coverage litigation in this Court because that litigation could substantially affect

Travelers' rights under its insurance contracts.

I.   **TRAVELERS' COUNSEL SHOULD BE APPOINTED TO THE PROPOSED INSURER STEERING COMMITTEE AND AS CO-LEAD COUNSEL OF THE FIRST-PARTY INSURING STEERING COMMITEEE**

The Liberty Mutual/State Farm Motion places at issue the question of whether the

insurance coverage litigation before this Court is currently at a stage in which organization to the

degree contemplated in that motion is needed.  Travelers respectfully submits that, in the event

the Court deems it appropriate to create an insurer steering committee, the appointment process

should not give undue weight to the fact that some insurers have been sued in this Court at an

earlier stage than others with substantial market shares. Travelers therefore believes that if a

committee is formed, it should include broader representation, and, in light of its significant

interest, Travelers should be permitted to participate.

In this Court's Minute Entry dated July 9, 2009, the Court advised of the following:

Both PLC and DLC advised of the possibility of the addition of new parties to this
litigation.  Potential additions include insurers....

\*        \*        \*

The Court advised that it will be to the advantage of those potential defendants
who remain unknown to come forward...
[Rec. Doc. 111]

Based on the foregoing Minute Entry, Travelers is coming forward, as requested by the Court,

and respectfully requests that, in the event an insurer steering committee is formed, it be allowed

to participate despite currently not being a defendant in any Chinese-made drywall litigation

pending in this Court. Until such time as Travelers becomes a formal party to a case pending before this Court, it could serve in an *amicus curiae*-like capacity.

Furthermore, in the event that an insurer steering committee is created, Travelers requests that its attorney, Ralph S. Hubbard III, be appointed as Co-Lead Counsel for the First-Party Insurer Subcommittee contemplated in the First Motion to Create Insurer Steering Committee. That motion is silent as to who will be proposed to lead the two proposed subcommittees. However, from discussions with counsel for State Farm, Travelers understands that, in addition to serving on the Steering Committee, State Farm's counsel likewise is desirous and willing to serve the Court in the role of Lead Counsel for the First-Party Insurer Subcommittee. Travelers respectfully suggests that both its counsel, Ralph S. Hubbard III and State Farm's counsel be appointed to jointly serve the Court together in a capacity as Co-Lead Counsel of the First-Party Insurer Subcommittee.

In support of this motion, Travelers avers that Mr. Hubbard was appointed as Defendants' Liaison Counsel in the *In Re: Katrina Canal Breaches Litigation* in Section K this Court, where he served in that role for several years, coordinating the thousands of suits which were part of that consolidated litigation, including coordinating the consolidated briefing and oral argument of critical coverage issues. Mr. Hubbard was also appointed as Defendants' Liaison Counsel in a putative class action lawsuit filed by the State of Louisiana against ostensibly the entire insurance industry, arising from Hurricanes Katrina and Rita. *State v. AAA Ins.*, Civ. A. No. 07-5528 (Sections K and J). Mr. Hubbard would be pleased to continue to serve this Court. A copy of Mr. Hubbard's CV is attached as Ex. 3.

II.     IN THE ALTERNATIVE, TRAVELERS RESPECTFULLY SUGGESTS THAT
        THIS COURT EMPLOY A NOMINATION PROCEDURE FOR
        APPOINTMENTS TO THE PROPOSED COMMITTEES AND LEADERS OF
        SAME

        In the Liberty Mutual/State Farm Motion, the movants acknowledge that several insurers

are presently not parties to litigation before this Court. *See* Liberty Mutual/State Farm Motion,

Section I. Indeed, only two insurers were parties to the motion to create an insurer steering

committee. In the event that this Court believes that the creation of a steering committee at this

time is appropriate, there is a need to provide for representation of those insurers who may later

become parties to insurance coverage litigation before this court.

        As an alternative to the relief sought in Part I above, Travelers respectfully suggests that,

in the event a steering committee is created, this Court consider employing an open process

whereby any interested insurer could submit nominations for appointments to leadership roles on

such committee and/or the subcommittees. With the absence of a significant portion of the

insurers writing property insurance in the State of Louisiana before this Court, as referenced by

State Farm and Liberty Mutual in their motion, Travelers respectfully suggests that such a

nomination procedure would make sense. Travelers understands there are a number of insurers

who are similarly situated to Travelers without a pending lawsuit against them in this Court.

        For the benefit of all insurers involved who are likely to be ultimate members of any

insurer defendants' group to be organized and to be led by an insurer steering committee,

Travelers respectfully suggests that fundamental fairness dictates that it and other similarly

situated insurers should have an opportunity to participate in the process of selecting leaders for

any insurer steering committee. Travelers respectfully suggests that a nomination process should

be employed wherein the Court would call for applications to serve the Court from all affected

insurer parties and non-parties. Regardless of who is selected to serve the Court in the manner

requested above or any other manner the Court saw fit, counsel's ability to lead and organize the insurers would be enhanced if the selection was based on the Court's careful review of all applicants as opposed to having been one of the "first to file" such a request.

The concept of accepting nominations to serve in a leadership role to the Court in mass litigation is common. Indeed, in the *In Re: Katrina Canal Breaches Consolidated Litigation*, Judge Duval called for applications of all interested parties to identify a subset of defendants warranting organization and leadership of same. *See* Minute Entry dated April 11, 2006 at p.7, [Rec. Doc. 69 in Case No. 05-4182 before Section K of this Court], attached as Ex. 4. Similarly, in the *In Re: FEMA Trailer Formaldehyde Products Liability Litigation* MDL proceeding, Judge Engelhardt recently granted in part and denied in part a motion for appointment of liaison counsel for insurers. *See* Pretrial Order No. 58, [Rec. Doc. 10917 in MDL Case No. 07-1873 before Section N of this Court], attached hereto as Ex. 5. Judge Engelhardt, *sua sponte*, decided to employ a nomination procedure and invited applications. He further ordered that "[t]he Court will accept nominations/volunteers from those individuals who represent insurance carriers that *may* provide coverage relevant to the claims asserted in this MDL, without regard to whether such carriers are yet named as parties herein." *Id.* Judge Englehardt further ordered that "all defense counsel of record shall transmit this Order to an appropriate representative of each insurance carrier that may be relevant to the claims asserted in this MDL." *Id.* Travelers respectfully suggests that the Court consider employing a similar nomination procedure for appointment to the proposed committees and subcommittees.

## CONCLUSION

As a first-party insurer that routinely finds itself on lists identifying the ten insurance companies having underwritten the largest market share of homeowners' policies in Louisiana,

Travelers has a significant interest in any first-party insurance coverage litigation in this District regarding Chinese-made Drywall. Accordingly, if the Court deems it appropriate to establish an insured steering committee, Travelers requests that its motion also be granted and that this Court (1) appoint Ralph S. Hubbard III as a member of such committee on behalf of Travelers, and (2) appoint Ralph S. Hubbard III as Co-Lead Counsel for the First-Party Property Insurer Subcommittee contemplated in the Liberty Mutual/State Farm Motion.

Nevertheless, in the spirit of fairness, Travelers recognizes that it may not be entitled to a leadership role simply because it was the first insurer not yet brought into this Court to file a motion requesting same. Accordingly, and as an alternative to the relief previously sought, Travelers requests this Court enter an order in which a nomination procedure is employed to provide all interested insurers – whether currently parties before this Court or not – with an opportunity to participate in the selection of steering committee members and lead counsel.

Respectfully Submitted:

/s/ Seth A. Schmeeckle
**Ralph S. Hubbard III, La. Bar No. 7040**
**Seth A. Schmeeckle, La. Bar No. 27076**
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504-568-1990
Facsimile: 504-310-9195
**Attorneys for The Travelers Indemnity**
**Company, The Standard Fire Insurance**
**Company, and its affiliated property insurance**
**companies**

## CERTIFICATE

I hereby certify that on February 10, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all

CM/ECF participants. There are no manual recipients. In compliance with Pretrial Order No. 6,

it is the undersigned's intentions to serve the attached document via the Lexis-Nexis File &

Serve service as soon as that function is made available to non-parties.

/s/ Seth A. Schmeeckle