UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

---

| | |
|---|---|
| IN RE CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2047 |
| ---------------------------------------- | SECTION: L |
| | JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: | |
| Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al. | |
| Case No. 2:09-cv-6687 (E.D. La.) | |

---

### INTERVENOR THE MITCHELL COMPANY, INC.'S
### TRIAL MEMORANDUM

**I.     Introduction**

The Mitchell Company, Inc. ("Mitchell Co.") submits this trial memorandum to summarize the legal issues to be decided based on the facts to be adduced at the default proceedings in *Germano v. Taishan Gypsum, et al.*, Case No. 2:09-cv-6687.

Mitchell Co. is a party to the MDL by virtue of its class action complaint filed against Taishan Gypsum Co., Ltd. and others, wherein Mitchell Co. seeks to represent a class of homebuilders damaged by the importation and sale of defective Chinese manufactured drywall. Defendant Taishan Gypsum Co., Ltd. was served with Mitchell Co.'s complaint on or about May 8, 2009, and failed to answer or otherwise plead before this Court. On September 22, 2009, this Court entered a default judgment in favor of Mitchell Co. against Defendant Taishan Gypsum Co., Ltd. and deferred any ruling on the quantification of Plaintiff's damages.

On November 20, 2009, the clerk also entered a default [Doc. 487] against Taishan Gypsum Co., Ltd. in *Germano*. Thereafter, the Court scheduled proceedings for the determination of the proper measure and amount of damages to be included in any judgment in Germano against Taishan Gypsum. This Court ordered that any interested party could seek to intervene in the *Germano* case

in order to participate in those proceedings. Mitchell Co. sought -- and this Court granted -- permissive intervention pursuant to FRCP 24(b) on the grounds that common questions of law and fact existed between Mitchell's claim and the issues presented in *Germano*.

Mitchell Co. asserts claims for damages based on negligence, strict products liability, unjust enrichment, warranty, and indemnity claims against various distributor and manufacturer defendants. Because the Court's stated purpose in the *Germano* default proceedings is to determine the appropriate scope and cost of repair necessary to remedy the damage caused by defective Chinese drywall, Mitchell Co. limits its legal discussion here to those issues.[1]

## II. Argument

### A. Knauf's Proposed Repair Fails as a Matter of Law

As the Court is already aware, Knauf Plasterboard Tianjin ("KPT") has intervened in these proceedings to advocate a limited damage model on Taishan's behalf. KPT proposes that removal and replacement of the defective imported drywall is not necessary. Instead, KPT posits that the drywall may be left in place, and the deleterious effects of the drywall may be minimized through the use of filters, and reducing the relative humidity inside the houses to a level where water vapor will not combine with the drywall produced-gases to create the corrosive compounds currently attacking certain metal surfaces in the houses. Mitchell believes the *Germano* hearing will demonstrate that KPT's proposed mitigation plan is flawed as a matter of fact. However, even if KPT is correct in every scientific point it has thus far advanced, Mitchell asserts that KPT's proposed mitigation plan fails as a matter of law, in that it does not provide a full and complete remedy to the homeowners under applicable law. As such, KPT's proposed measure of damages based on that mitigation plan falls short and would unduly expose other parties to liability to make up the difference. Those parties in turn have claims over manufacturers like KPT, such that KPT will ultimately be liable for an amount that makes the homeowners whole.

---

[1] Mitchell discusses below the appropriate measure of damages in a homeowner's action against a homebuilder. The potential liability of a homebuilder to a homeowner is relevant to the builder's indemnity claims. Because the focus of these proceedings is limited to damages, Mitchell does not address potential defenses which a builder may possess.

### 1. **Choice of Law**

Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the MDL court applies the choice of law rules of each jurisdiction in which the transferred actions were originally filed. *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570 (5th Cir. 1996); *Van Dusen v. Barrack*, 376 U.S. 612 (1964); 28 U.S.C. § 1407. Because the *Germano* cases were originally filed in Virginia, Virginia choice of law rules apply. *Id.* Virginia courts employ the "place of the wrong" rule when deciding choice of law questions for tort actions. *McMillan v. McMillan*, 269 Va. 1127, 1128, 253 S.E. 2d 662, 663 (1979). Because the *Germano* plaintiffs are Virginia residents alleging Virginia claims for injury occurring in Virginia, a Virginia court would almost certainly apply Virginia law. *Id.* Thus, it is appropriate for this Court to consider the issues presented under Virginia law.[2]

### 2. **Virginia Law**

The Virginia Supreme Court has recognized two methods of calculating damages in construction defect cases: (1) the cost rule, which is the cost of correcting the defects in the construction and making it conform to the terms of the contract; and (2) the value rule, which is the difference between the value of the structure properly completed according to the contract and the value of the defective structure. *Nichols Const. Corp. v. Virginia Machine & Tool Co., LLC*, 276 Va. 81, 89, 661 S.E. 2d 467, 472 (2008) (citing *Mann v. Clowser*, 190 Va. 887, 903, 59 S.E. 2d 78, 85-86 (1950)). In the construction context, Virginia's highest court has observed that "the cost measure of damages is appropriate unless the cost to repair ... would involve unreasonable economic waste." *Lochaven Co. v. Master Pools by Schertle, Inc.*, 233 Va. 537, 543, 357 S.E. 2d 534, 538 (1987); *see also Klaiber v. Freemason Assocs.*, 266 Va. 478, 488, 587 S.E. 2d 555, 560 (2003); *Kirk Reid Co v. Fine*, 205 Va. 778, 789, 139 S.E. 2d 829, 837 (1965).

The Virginia Supreme Court has recognized that general jurisprudence dictates that if the construction defect is remediable from a practical standpoint, recovery should be based on the market

---

[2] While Virginia law applies to this action, Virginia law is not unique. As shown below, the law of the states of other affected plaintiffs is similar.

price of completing or correcting the defective performance, and this will generally be shown by the cost of having the work completed by a third party. *Mann*, 59 S.E. 2d at 86, quoting *Williston on Contracts*, Rev. Ed., Vol. 5, § 1363, pp. 3825-26. Stated another way, the owner is entitled to receive what he or she contracted for, and the owner is entitled to be paid as damages that sum of money necessary to provide the improvements in their proper condition as contemplated by the contract. *Lambert v. Jenkins*, 112 Va. 376, 71 S.E. 718 (1911).[3]

### 3. Compensation Based on the Cost of an ECS System Would Not Make the *Germano* Plaintiffs Whole

Here, the only remedy consistent with these principles is the removal and replacement of the defective product at issue. To make homeowners whole, repair efforts must encompass that which is necessary to deliver to the owner the improvements called for under their contract with the builder.[4]

The February 19, 2010 proceeding will quantify the *Germano* plaintiffs' direct claims against the manufacturer Taishan. Despite that narrow focus, the Court has expressed its interest in providing clarity and guidance for other claims relating to defective drywall, including claims against homebuilders, and builders' claims against manufacturers. As the Court is also aware, several builders have spent substantial sums in performing full removal and repairs. Builders who have not performed such repairs (either because of lack of clarity as to the proper repair approach or lack of resources) face claims from their homeowner customers for such repairs.

---

[3] The laws of the other states at issue in this MDL are in accord with the general view. *See Elite Homes, Inc. v. Youngblood*, 242 So. 2d 614 (La. App. 4th Cir. 1971) (owner entitled to actual cost of correction of defective work); *Ray v. Dock & Marine Const. Inc.*, 183 So. 2d 237 (Fla. 3rd DCA 1966) (measure of damages is cost of making the work conform to the contract); *Fox v. Webb*, 268 Ala. 111, 105 So. 2d 75 (1958) (damages are equal to the reasonable value of the work in making the building conform to the contract.). *See also Restatement of Contracts* § 346C) (damages and reasonable cost of completion in accordance with the contract unless waste would result).

[4] While the cases cited herein focus on situations where there is a contract for construction, the same rules would apply to new home sales under either an express warranty or an implied warranty of habitability. *See Va. Code Ann.* § 55-70.1; *La. Rev. Stat. Ann* § 3144; *Conklin v. Hurley*, 428 So. 2d 654 (Fla. 1983); *Stephens v. Creel*, 429 So. 2d 278 (Ala. 1983); *Brown v. Elton Chalk, Inc.*, 358 So. 2d 721 (Miss. 1978).

As shown above, under applicable law, the builders face potential liability for that sum of money necessary to deliver to their homeowner customers the improvements that will meet the homeowner's reasonable contractual expectations. KPT's proposal to provide only enough compensation to allow the homeowner to install an ECS system, with its filters and dehumidifiers, fails to meet the contractual expectations for which the homeowner bargained. That ECS system, without debate, requires the homeowner to perform maintenance on the system for the useful life of the house. That ECS system requires electrical power to be supplied to the system without fail. That ECS system requires the homeowner to maintain constant relative humidity levels in the home at levels which even KPT's experts acknowledge are at the bottom of a reasonable comfort zone. While KPT's experts may posit that a home with Chinese drywall and an ECS system is "better" than a house with domestic drywall, the same experts must acknowledge that the ECS-modified home is not what the homeowner contracted to buy. As the Supreme Court of Alabama aptly stated: "It seems to us that when an owner contracts to have a dwelling constructed he wants a particular structure, not just any structure that could be built for the same price." *Fox v. Webb*, 268 Ala. 111, 119, 105 So. 2d 75, 82 (1958). The same rationale applies to this case.

If the tort law claims asserted by the *Germano* plaintiffs against the drywall manufacturer allow for the acceptance of KPT's limited damage model, a compensation gap will exist when compared to the damages potentially recoverable from the homebuilders to compensate the homeowner for his or her lost contractual expectations. The homebuilders are obligated to perform their contractual obligation to their customers; that is, to deliver the improvements as contracted. *Hall v. MacLeod*, 191 Va. 665, 625 S.E. 2d 42 (1950). Those builders performing tear-out and replacement repairs have done so in order to meet that obligation. Other builders who have not performed such repairs are likely to be held to that standard. Allowing the drywall manufacturer to pay less than full compensation would leave the builder to fill in the gap between the two measures. Those same builders have asserted claims against the drywall manufacturers on their own behalf for recovery of their damages and for indemnity. If the Court were to limit the damages against the manufacturers to the cost of an ECS system, the liability gap will either be borne by the

homebuilders or passed along to the manufacturers by virtue of the indemnity claims. The better course is to allow for full compensation in the first instance, which requires a rejection of KPT's limited damage model.

Thus, Mitchell Co. submits that the appropriate scope of repairs for homes containing defective Chinese drywall includes, as a general matter: removal of all drywall, affected wiring, and all affected components in the home, followed by reconstruction in accordance with the original house plan. Mitchell's proposed repair protocol is outlined in detail in Exhibit 9 to the Expert Report of Robert M. Freas dated December 30, 2009, which has been submitted to the Court. Any other measure of damages is incomplete as a matter of law.

### B. The Cost of Repair

Mitchell Co. will present the testimony of one expert, Robert M. Freas, a Principal in the Construction Consulting group at Exponent, a global scientific and engineering consulting firm. Mr. Freas has conducted a detailed analysis of Mitchell Co.'s properties that contain defective Chinese drywall. Using a repair protocol developed by a consulting expert, Mr. Freas, in consultation with Mitchell Co. employees familiar with relevant building costs, developed repair cost estimates for each of Mitchell Co.'s contaminated homes. From these estimates, Mr. Freas has calculated the anticipated repair cost per square foot for Mitchell Co.'s affected homes.

In an effort to crosscheck the reasonability of his estimates, Mr. Freas has conducted a comparative analysis of his estimated repair costs for the Mitchell Co. properties and actual historical repair cost data from two other homebuilders operating in the Gulf Coast region. Mr. Freas's work to date indicates that his estimated cost per square foot for repair is consistent with actual historical costs of repair incurred by other builders. Based on his research and analysis to date, Mr. Freas will testify about market conditions that may account for slight variance among expert reports and actual historical cost data regarding repair cost per square foot.

Respectfully submitted,

STEVEN L. NICHOLAS
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, Alabama 36604
251-471-6191
251-479-1031 (fax)
sln@cunninghambounds.com


JONATHAN D. SELBIN
Lieff, Cabraser, Heimann & Bernstein, LLP
780 Third Avenue, 48th Floor
New York, New York 10017-2024
212-355-9500
212-355-9592 (fax)


ELIZABETH J. CABRASER
KRISTEN E. LAW
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, California 94111-3339
415-956-1000
415-956-1008 (fax)

Attorneys for The Mitchell Company, Inc.

## CERTIFICATE OF SERVICE

I do hereby certify that the above and foregoing Trial Memorandum has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel Kerry Miller, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this the /2 day of February, 2010.

STEVEN L. NICHOLAS