IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * * * * | MDL Docket No. 2047<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * *

**THIS DOCUMENT RELATES TO:** *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 2:09-cv-6687 (E.D.La.)

**INTERVENOR KNAUF PLASTERBOARD (TIANJIN) CO. LTD.'S MEMORANDUM OF LAW REGARDING THE SCOPE AND EXTENT OF REMEDIATION FOR HOUSES IMPACTED WITH ALLEGEDLY DEFECTIVE CHINESE DRYWALL**

**I.    INTRODUCTION.**

Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT"), as intervenor in the *Germano* proceeding involving seven Virginia homeowners, which is proceeding on default against the manufacturer, Taishan Gypsum Co., Ltd., respectfully submits this memorandum of law in support of its position with respect to the scope and extent of repair or remediation of houses with allegedly defective Chinese drywall. While the Plaintiffs' Steering Committee ("PSC") may argue that other damages are also recoverable for these seven Virginia homeowners, KPT is not, as an intervenor, addressing the reasonableness or recoverability of those damages at this time. Rather, KPT is focusing on the specific issue before this Court – the scope and extent of remediation for houses impacted with allegedly defective Chinese drywall.

It appears from the *Daubert* pleadings and arguments filed by the PSC that both KPT and the PSC are in agreement that the value of repairing houses with Chinese drywall is an

1

appropriate measure of damages. Indeed, under the Restatement (Second) of Torts, and the law of Virginia, if non-economic losses to property are deemed to be recoverable under the economic-loss rule, the value of repairing property that has been damaged by a defective product is an appropriate measure of damages.[1]

The PSC, however, is urging this Court to order a complete replacement of the seven houses containing Chinese drywall, by essentially gutting them to the studs and rebuilding. The total remedy proposed by the PSC is not required as a matter of law. The evidence to be presented by KPT at the upcoming hearing will establish that the PSC fails to show that such a drastic, sweeping remedy is necessary to repair the impact on houses containing allegedly defective Chinese drywall. As such, the PSC's proposed remedy is an inappropriate measure of damages.

The *Germano* plaintiffs raise warranty and negligence claims against, among other parties, the Chinese manufacturer of drywall used in their home. *See Germano* Second Am. Compl. ¶¶ 44-64.) These plaintiffs claim that off-gassing from Chinese drywall has caused damage to other materials in these seven houses, including damage to their heating and cooling systems, copper wiring, pipes and other electronic equipment. The houses contain a varied amount of Chinese drywall, from one isolated room, to one floor, to mixed, to almost the entire

---

[1] KPT, as intervenor, addresses the law of Virginia in this memorandum of law as it assumes that these seven Virginia cases will be decided under Virginia law. If another state's law is determined to apply, KPT's position as to the appropriate scope and remedy for houses containing Chinese drywall does not change, nor does the legal basis for such position. KPT also has filed a motion to certify the appeal of the denial of its motion to dismiss certain damages based on the economic loss doctrine.

house. These seven homeowners are not alleging that their houses are entirely damaged, and no PSC expert is suggesting that the property is damaged in its entirety.[2]

## II. THE COST OF REPAIRING PROPERTY IS THE APPLICABLE MEASURE OF TORT AND NEGLIGENCE DAMAGES.

The issues for this Court to consider in this negligence and breach of warranty case are (1) what actual, proven damages are caused by odor and tarnishing to personal or other property in the houses as a result of Chinese drywall; and (2) how is any damage reasonably fixed. The two repair options proffered by KPT's experts (1) removal of Chinese drywall and (2) a proven combination of mature technologies, dehumidification, conditioning and filtration, *i.e.*, the Environmental Control System ("ECS"), fix the problems associated with Chinese drywall in houses. Both eliminate conditions that may shorten the life of devices containing electric circuitry and electrical equipment and return the atmospheric corrosivity in houses with Chinese drywall to that in houses without affected drywall. KPT's repair options are not merely mitigation, as they are adequate repairs.

The PSC's sole repair option goes well beyond what is necessary to address the corrosion and odor issues complained of in the Virginia houses. The PSC must show why its proposed remedy is necessary amidst alternatives that fix the problem at a fraction of the cost. The PSC's remedy—near-complete teardown of the house—goes well beyond what is necessary to make these seven Virginia homeowners whole.

A firmly established principle of tort law is that the appropriate measure of damages is that which makes the plaintiff whole. *See Lockhaven Vo. v. Master Pools by Schertle, Inc.*, 233 Va. 537 (Va. 1987) (finding proven repair costs for damages to property stemming from

---

[2] For example, the PSC's omnibus expert report from Dean Rutila and Peter Nelson, SGH, submitted December 30, 2009, acknowledges that portions of the house are not impacted by Chinese drywall, including wood, concrete, tile, and various other finishes in the house.

3

negligence is appropriate measure of damages). Under either a negligence or warranty theory, damages not otherwise barred by the economic loss rule in property cases are properly measured by the value of repairing the damaged property. *See Virginia Model Jury Instructions*, Civil Instruction No. 9.060 ("when personal property is partially damaged, the measure of damages is the reasonable cost of repairing the property plus the amount, if any, the property was depreciated because it was damaged, plus the necessary and reasonable expenses shown by the evidence to have been incurred by the plaintiff as a result of the damage to the property"); *see also Klaiber v. Freemason Assoc. Inc.*, 266 Va. 478, 488 (Va. 2003) (appropriate measure of damages is cost to repair unless it would be grossly disproportionate or would involve unreasonable economic waste); Restatement (Second) of Torts, § 929 (repair of property is a proper measure of damages).

Whether the property is real or personal is irrelevant to repair costs being an appropriate measure of damages. *See Westlake Props. v. Westlake Point Prop. Owners Ass'n*, 273 Va. 107, 126 (Va. 2007) (in a negligence action involving property, the court upheld the lower court's damages instruction to the jury finding that "[t]he evidence in this case…showed that the removal of the original septic system, its replacement with the newly designed system, and the necessary repair of the slope was the most cost-effective and beneficial method of remedying the damages caused by Westlake Properties' negligence"); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F. 3d 768, 816-17 (3d Cir. 1995) (considering whether diminution of value or cost of retrofit to put the truck in condition it should have been was the appropriate measure of damages); *Mossy Motors Inc. v. Sewerage and Water Board of New Orleans*, 753 So. 2d 269, 280 (La. Ct. App. 1999) (reducing the trial court's damage award by the full amount for

cost of repairs to a services building where the plaintiff could not prove the extent and cost of necessary repairs).

If there is an issue as to whether the value of the repair exceeds the value of the property, the proper measure of damages in a negligence action is the lesser of the two. *See Virginia Model Jury Instructions,* Civil Instruction No. 9.070; *see also Lee v. Bell*, 237 Va. 626, 629 (Va. 1989) (if the plaintiff meets the burden of proving the cost of removing the damaged fixtures at issue in a tortious property damage action would exceed the difference in market value, then the appropriate measure of damages could be the diminution in fair market value of the realty); *St. Martin v. Mobil Exploration Producing U.S., Inc.*, No. 95-4128, 1998 U.S. Dist. LEXIS 12808, at *28-29 (E.D. La. 1998) (property damages may include cost of restoration that has been reasonably incurred or the value of the property unless disproportionate); *Ewell v. Petro Processors of Louisiana, Inc.*, 364 So. 2d 604, 608-09 (La. Ct. App. 1979) (limiting the plaintiffs' recovery in a toxic waste action in which the plaintiff sought $170 million to $25,000 after considering "the extent of the damage; the use to which the property may be put; extent of economic loss, both as to value and income; and the cost of and practicability of restoration").

The PSC also bears the burden of proving the *fact of damage* and *every aspect of damages* to a reasonable degree of certainty, such that its extraordinary and expensive (and sole) remedy—amounting to a full replacement of the house—is justified. *See Freeport Sulphur Co.*, 526 F.2d 300, 307 (5th Cir. 1976) (reducing the district court's damages award where the plaintiff's damages claim included repairs that enhanced the life of the dock at issue, finding that the plaintiff failed to meet the burden in light of the "absence of factual support" to justify repair costs that enhanced the life of the dock. "[A] plaintiff is denied consideration for expenditure of repair costs beyond that necessary to restore its property to the condition it was in before the

accident"); *see also St. Martin*, 1998 U.S. Dist. LEXIS 12808, at *28-29 (refusing to award the full damages sought by the plaintiff landowners because the plaintiffs' request to convert the marsh at issue into solid ground extended "far beyond what the Court perceives to be reasonable, in scope as well as cost"); *Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1088 (5th Cir. 1982) ("plaintiff bears the burden of proof to show the amount, as well as the fact, of damages"); *Patterson v. Oliver*, No. 98-1283, 1999 U.S. App. LEXIS 4741, at *5 (4th Cir. 1999) (noting that plaintiff must show the "loss or injury actually sustained" in meeting the burden of proof for damages). Additionally, the PSC must also prove *every aspect of damage claimed*. *See Pizani*, 669 F.2d at 1088 (holding that there is "no rule shifting this burden to the defendant every time a plaintiff succeeds in introducing into evidence some figure denominated as 'cost of repairs'"); *see also Amonfo v. Tate*, 623 F. Supp. 513, 518 (E.D. La. 1985) (holding that the plaintiff "bears the burden of establishing each and every element of damage claimed" in a personal injury context).

The PSC will fail to meet its burden of establishing that the remedy of tearing the house down to the studs is the only cost-effective and beneficial method of remedying the damages caused by Chinese drywall.. *Westlake*, 273 Va. at 126. The PSC's proposed remedy is a particularly poor fit where a house, such as the Baldwin house, contains less than 100% Chinese drywall, and partial removal can be effective and efficient. As such, the PSC's remedy is an inappropriate remedy

KPT, as intervenor, offers two more targeted, and less burdensome options—the introduction of an Environmental Control System, or the removal of Chinese drywall. Both of these options directly address the potential issues associated with Chinese drywall—tarnishing and odor—and with the attendant repairs associated with each, fully address the related property

damage issues associated with Chinese drywall. KPT's alternative repair options are more cost-effective than near-complete teardown of a house containing Chinese drywall and more appropriate remedies as a matter of law. *See e.g., Wittman Family Trust v. Renaissance Housing Corp.*, 2000 Va. Cir. LEXIS 523, at *3 (Va. Cir. Ct. 2000) (where homeowners sought damages arising form the allegedly poor air quality in their homes, the court held that the appropriate measure of damages was the cost of repair, unless the cost of the repair would constitute economic waste).

### III. CONCLUSION.

The scope and extent of the remediation for these seven homeowners is the cost of a repair that addresses the alleged corrosion and odor issues associated with Chinese drywall. The PSC's near-total teardown approach is well beyond what is necessary to repair these seven homeowners' houses and therefore should not be used as a proper measure of damages. Alternative, more cost-effective repair options are available, including the removal of Chinese drywall or the use of the Environmental Control System.

Respectfully submitted,

BY: /s/Kerry J. Miller

KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
PAUL C. THIBODEAUX (#29446)
**FRILOT L.C.**
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504)599-8194
Facsimile: (504)599-8145
Email: kmiller@frilot.com

        -AND-

DONALD J. HAYDEN (FL Bar No. 0097136)
**BAKER & MCKENZIE LLP**
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, FL 33131
Telephone:     (305) 789-8966
Facsimile:     (305) 789-8953
Email: donald.j.hayden@bakernet.com

DOUGLAS B. SANDERS
(IL Bar No. 6256621)
RICHARD M. FRANKLIN
(IL Bar No. 0864390)
**BAKER & MCKENZIE LLP**
130 E. Randolph Drive
One Prudential Plaza
Chicago, IL 60601
Telephone:     (312) 861-8075
Facsimile:     (312) 698-2375
Email: douglas.b.sanders@bakernet.com

On behalf of *Intervenor Knauf Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties in the *Germano* proceeding by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana under seal, on this 12th day of February, 2010.

                */s/ Kerry J. Miller*
                Kerry J. Miller