UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al., Case No. 2:09-cv-6687 (E.D.La.) | |

PLAINTIFFS' STEERING COMMITTEE'S RESPONSE TO
INTERVENOR KNAUF PLASTERBOARD (TIANJIN) CO. LTD.'S
MOTION IN LIMINE (NO. 1) TO EXCLUDE TESTIMONY AND OPINIONS THAT
ELECTRICAL EQUIPMENT MAY FAIL AS A RESULT OF CHINESE DRYWALL

Knauf seeks to exclude expert opinion on the failure of electrical and electronic equipment due to corrosion. The motion should be denied for several reasons.

First, Knauf's expert, Sandy Sharp, Ph.D., *admits* based on standards he adopts and data he generated in this case that electrical and electronic failures *will occur* in Chinese Drywall ("CDW") homes prior to the full expected life of electrical equipment, including Virginia Plaintiff Mr. Bill Morgan's home.

Second, the record in this case is replete with *actual* corrosion failures that *have already occurred*, both to electronics such as TV sets, computers, thermostats, and switches; and to mechanical systems such as HVAC; as well as evidence from peer reviewed literature, consensus

1

standards, and building codes as to corrosion failure. All this record evidence amply supports Plaintiffs' expert opinions on corrosion failures.

Third, this motion is clearly a *Daubert* motion attacking the scientific reliability of the electrical and electronic failure opinions offered by Plaintiffs' experts in several areas including but not limited to copper wire, silver switches, consumer electronics, and fire safety. The time to file *Daubert* motions has long passed. Even if the Court were to consider this out of time *Daubert* motion, the electrical and electronic failure opinions are based on reliable scientific evidence under *Daubert* standards, so Knauf's criticisms of these opinions go to weight, not methodology or scientific reliability.

**I. Knauf's Own Expert Testified that Electrical and Electronic Failures Will Occur Prematurely in CDW Homes.**

Knauf's expert, Sandy Sharp, PhD., testified at his deposition that electronic failures will occur where thicknesses are calculated at .1 Micron per year (or 1000 Angstroms/per year), and that his own data showed exceedances of that standard in CDW homes.

> Q. With respect to the first coupon, that being coupon No. 4355 which was placed in the bedroom wall, the micron-per-year result is .76 microns per year, is it not?
> A. It is.
> Q. Which is 7.6 times higher than the practical maximum corrosivity guideline which you reported in your paper, Sharp Exhibit No. 1.
> A. That is correct.
> Q. The coupon also has a thickness reported in angstroms for that 30-day time period, correct?
> A. Yes.
> Q. And the thickness is reported as 2179 angstroms, does it not?
> A. It does.
> Q. Which is somewhere along the order of magnitude of five times higher than your limit for expecting the intermittency – intermittent failures of electronic equipment?

2

> A. It is.
> Q. The environment in this Florida home, according to the standards in your 1989 paper, is a corrosive environment?
> A. *I would predict from my 1979 data that this environment would cause failures in electronic equipment at some point in the future.*
> Q. And because the corrosive environment in this home is going to lead to failures in electronic equipment, you believe something needs to be done about this environment.
> A. *Without doing something, then I would predict that <u>there will be failures of electronic equipment</u> at some point in the future.*
>
> \* \* \*
>
> Q. So if we want to protect the electrical equipment in a house for 50 to 100 years, you're going to have to do something about the Chinese drywall in these houses, aren't you?
> A. As I said already, the – these environments need to be changed to avoid the possibility of future failures.
> Q. *In fact, your own data indicates that you expect to see electrical failures at contacts and wires in as short as three years at a 1434-angstrom thickness, aren't you?*
> A. Those were rheostats in electrical circuits, yes.
> Q. *And three years is obviously significantly shorter than an expected normal use or lifetime for an electrical system in a house.*
> A. That is correct.

Deposition of William Broom Alexander 'Sandy' Sharp, Ph.D. (2/5/10) at 70:5-71:20, 75:1-20 (emphasis added).

Later in his testimony, when Knauf's expert was confronted with data from Mr. Bill Morgan's house showing a corrosion product on a wire of 100,000 Angstroms (or 10 microns), he testified as follows:

> Q. And in angstroms, the thickness he measured would have been 100,000-angstroms thick of corrosion product on this wire underneath the insulation jacket.
> A. At the maximum, yes.

3

> Q. But for which you're once again claiming it would be irresponsible to draw a conclusion as having violated a 487-angstrom prediction of electrical –
> A. Electronic.
> Q. Electronic failure.
> Ms. Maus: Objection, form; mischaracterizes his testimony.
> A. This wire appears to have served in a corrosive environment. I would expect that the classification of that environment would indicate that it were a G3 or GX[1] environment, but I don't have data to show that.

Id. at 183:15-184:9.

Therefore, the Knauf argument that there is no reliable scientific evidence of expected electrical and electronic failure in CDW homes and no failure standards to apply in this case is contradicted by its own expert's opinion. For this reason alone, the motion should be denied.

## II. The Evidentiary Record is Replete with Evidence of Electrical Corrosion Failures and Mechanical Corrosion Failures

The evidentiary record in this case is replete with corrosion failure evidence. The seven intervener Plaintiffs have reported numerous electronic failures; and microscopic evaluation of available equipment establishes excessive corrosion at contact points.[2] On the basis of such evaluations of experienced investigators, as well as failure standards,[3] peer reviewed literature,[4] building, electric and life safety codes,[5] and measured corrosion product thickness on components in excess of failure thresholds,[6] Plaintiffs' experts have supported their opinions on failure.[7]

---

[1] A G3 or GX corrosive environment is universally understood to be associated with electrical failures. *See* Atmospheric Corrosion of Central Equipment, MTI Publication No. 38, Abbott (1993) at P2. 0195-0017.

[2] *See* Summary of Property Failures, Appendix 1 to Report Supplement Investigation of Alleged Damage Due to Drywall in Williamsburg, VA (1/18/10) Pl. 2018-0013, 14; Micro Photographs of Visible Corrosion Evaluated by Don Galler, BDM-67, TV set (attached as Exhibit 1).

[3] *Atmospheric Corrosion of Control Equipment*, MTI Publication No. 38, P2. 0195-001, 0017, 0066; *see also* P2. 0223.

[4] *Atmospheric Corrosion of Control Equipment*, MTI Publication No. 38, P2. 0195-0026; P2. 0223.

[5] International Residential Code, Pl. 184.

[6] Corrosion Testing Laboratories Report (1/14/10) Pl. 2002 (at p. 5).

[7] Expert Reports of John Scully (12/30/09) (1/18/10) at Pl. 2021-0012; P.1 2022-0013; Expert Deposition of Don Galler (1/22/10) at 122:21-123:13; Expert Deposition of Jonathan Barnett (2/12/10) at 82:11-83:12; SGH Expert

4

Furthermore, Dr. Perricone, expert for Knauf, admits that HVAC systems in CDW homes have failed due to corrosive CDW emissions,[8] and the seven Plaintiff interveners reported similar premature failures,[9] which have been verified as corrosion-related by laboratory evaluations.[10]

Finally, numerous independent investigators have classified CDW homes as severely corrosive,[11] a classification known to be associated with electrical failures and a corrosive environment where specialized electrical equipment is needed to survive corrosive attack.[12]

Thus, the record is replete with numerous sources of CDW corrosion failure evidence from different investigators and peer reviewed and consensus standards to evaluate and predict corrosion failures. For these reasons, Knauf's motion should be denied.

### III.  *Assuming Arguendo*, the Court Will Consider This Late *Daubert* Motion, the Memorandum does not Demonstrate any Lack of Scientific Reliability in Regard to Plaintiffs' Experts Failure Opinions.

Under the Courts Pretrial Scheduling Order, the time for *Daubert* motions has passed. This motion is a direct attempt to exclude expert opinion on the basis of a lack of scientific reliability. It is a *Daubert* argument citing only *Daubert* cases. Under the Court's Scheduling Order, as amended, the time for such motions has expired. Indeed, the Court has already issued its Order and Reasons on *Daubert* denying Knauf's timely filed motions. *See In re: Chinese Manufactured Drywall Products Liability Litigation,* MDL 2047, Orders & Reasons (E.D.La. Feb. 17, 2010).

---

Report (1/18/10), Pl. 2018 (at p. 10).
[8] Deposition of Matthew Perricone, Ph.D. (1/21/10) at 81:9-82:8.
[9] FRE 1006 HVAC Failure Summary Chart, P3. 0625-001-0003.
[10] Expert Report of Corrosion Testing Laboratories (Bradley Krantz) (12/29/09) Pl. 2001 (at p.16-18).
[11] CPSC/Sandia National Laboratories Report, Pl. 0060 (at 10-12 (CPSC), 23, 30(Sandia)).
[12] *Atmospheric Corrosion of Control Equipment*, MTI Publication No. 38, P.2 0195-0066; CPSC/Sandia at Pl. 0060 (at p.12) (CPSC).

5

*Assuming arguendo*, that the Court considers the motion, Knauf does not identify with particularity any issue regarding the methodology or scientific reliability of the failure opinions expressed by plaintiffs' experts. *Daubert* case law makes clear that reliance on qualified expert investigation, codes, consensus standards and peer reviewed literature provide a reliable basis to express expert opinions. *Daubert v. U.S.*, 509 U.S. at 592-94 (peer review and the existence of standards are two recognized *Daubert* reliability criteria); *Frazier v. Continental Oil*, 568 F.2d 378, 383-84 (5th Cir 1978); *In re Stand N Seal, Prod Liab. Litig*, 2009 WL 1772585 at *3-4 (N.D. Ga. June 22, 2009).

Plaintiffs' experts' reliance on their own evaluations of corroded components from the homes, electrical codes (which are based in fire and life safety), consensus standards, and peer review literature to support their failure opinions,[13] establishes the reliability of the opinions. Thus, Knauf's arguments do not go to scientific reliability, but to weight. For all these reasons, Knauf's motions should be denied.

Dated: February 17, 2010                    Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

---

[13] See P1. 1814, P1. 1817 (International Residential Code (2000, 2003)) (Integrity of Electrical Equipment); P2. 0195- 0001, 0017, *Atmospheric Corrosion of Control Equipment*, MTI Publication No. 38.

6

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

| | |
|---|---|
| Jeremy W. Alters<br>Alters, Boldt, Brown, Rash & Culmo, P.A.<br>4141 N.E. 2nd Avenue, Suite 201<br>Miami, FL 33137<br>Phone: (305) 571-8550<br>Fax: (305) 571-8559<br>jeremy@abbrclaw.com | Richard J. Serpe, Esquire<br>Law Offices of Richard J. Serpe<br>Crown Center, Ste. 310<br>580 East Main Street<br>Norfolk, VA 23510-2322<br>rserpe@serpefirm.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiffs' Steering Committee's Response to Intervenor Knauf Plasterboard (Tianjin) Co. Ltd.'s Memorandum in Support of Motion in Limine (No. 1) to Exclude Testimony and Opinions that Electrical Equipment May Fail as a Result of Chinese Drywall has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 17th day of February, 2010.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*

4829-5468-4677