## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| | x |
| | x |
| IN RE: CHINESE-MANUFACTURED | x   MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | x |
| LITIGATION | x   SECTION: L |
| | x |
| THIS DOCUMENT APPLIES TO ALL | x   JUDGE FALLON |
| CASES | x |
| | x   MAG. JUDGE WILKINSON |
| | x |

## CROSS-NOTICE OF THE PLAINTIFFS'
## ORAL AND VIDEOTAPED DEPOSITION OF
## SOUTH KENDALL CONSTRUCTION CORP.

TO:   The parties in all cases consolidated in *In re Chinese-Manufactured Drywall Products Liability Litigation*, by and through their counsel of record.

PLEASE TAKE NOTICE that the deposition of the corporate representative of **South Kendall Construction Corp.**, will be held on **March 12, 2010** beginning at **10 a.m.**, at **Podhurst Orseck, P.A., 25 W. Flagler St., Suite 800, Miami, Florida 33130,** to continue from day to day until completed. This deposition is being taken for the purpose of discovery, for use at trial, or for such other purposes as are permitted under the Federal Rules of Civil Procedure. You are invited to attend and participate.

|  |  |
|---|---|
| Primary Examiner: | A member of the PSC or its designee |
| Videotaped Deposition: | Yes |
| Call-In Number: | **888-337-8218** |
| | **Participant Code:  769758** |

This cross-notice is based on Plaintiffs' Notice of Taking Videotaped Deposition Duces Tecm (Exhibit "A" attached hereto) of the corporate representative of South

1

Kendall Construction Corp. in *Jason Harrell and Melissa Harrell, Individually and on behalf of all others similarly situated vs. South Kendall Construction Corp., a Florida corporation; Palm Isles Holdings, LLC, a Florida limited liability company, Keys Gate Realty, Inc., a Florida corporation; Banner Supply Co., a Florida corporation*,  In the Circuit Court of the Eleventh Judicial Circuit in and for Maimi-Dade County, Florida, Case No.  09-08401 CA (42) (In re:  Chinese Drywall Litigation, Case No. 09-200,000 CA (42)).

> Respectfully submitted,
>
> /s/ Leonard A. Davis
> **Russ M. Herman** (Bar No. 6819)
> Leonard A. Davis (Bar No. 14190)
> Stephen J. Herman (Bar No. 23129)
> ***HERMAN, HERMAN, KATZ & COTLAR, LLP***
> 820 O'Keefe Avenue
> New Orleans, LA  70113
> PH:  (504) 581-4892
> FAX:  (504) 561-6024
>
> **Plaintiffs' Liaison Counsel**

Dawn M. Barrios
701 Poydras Street
Suite 3650
New Orleans, LA  70139
PH: (504) 524-3300
Fax: (504) 524-3313

Victor M. Diaz
25 Flagler Street
8th Floor
Miami, FL  33130
PH: (305) 358-2800
Fax: (305) 358-2382

Ben Gordon
316 S. Baylen Street
Suite 600
Pensacola, FL  32502
PH: (850) 435-7090
Fax: (850) 436-6091

Arnold Levin
510 Walnut Street
Suite 500
Philadelphia, PA  19106
PH: (215) 592-1500
Fax: (215) 592-4663

Jerrold Seth Parker
3301 Bonita Beach Road
Bonita Springs, FL  34134
PH: (239) 390-1000
Fax: (239) 390-0055

Christopher Seeger
One William Street
New York, NY  10004
PH: (212) 584-0700
Fax: (212) 584-0799

Scott Weinstein
12800 University Drive
Suite 600
Ft. Myers, FL  33907
PH: (239) 433-6880
Fax: (239) 433-6836

Daniel E. Becnel, Jr.
425 W. Airline Highway
Suite B
LaPlace, LA  70068
PH: (985) 536-1186
Fax: (985) 536-6445

Ervin Amanda Gonzalez
255 Aragon Avenue
Cora Gables, FL  33134
PH: (305) 476-7400
Fax: 305) 476-7444

Hugh P. Lambert
701 Magazine Street
New Orleans, LA  70130
PH: (504) 581-1750
Fax: (504) 529-2931

Gerald E. Meunier
2800 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-2800
PH: (504) 522-2304
Fax: (504) 528-9973

James Robert Reeves
160 Main Street
Biloxi, MS  39530
PH: (228) 374-5151
Fax: (228) 374-6630

Bruce William Steckler
3102 Oak Lawn Ave.
Suite 1100
Dallas, TX  75219
PH: (214) 523-6674
Fax: (214) 520-1181

**PLAINTIFFS' STEERING COMMITTEE**

3

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Richard S. Lewis<br>HAUSFELD LLP<br>1700 K Street, N.WSuite  650<br>Washington, DC 20006<br>Phone: (202) 540-7200<br>Fax:  (202) 540-7201<br>rlewis@hausfeldllp.com<br><br>Daniel K. Bryson<br>Lewis & Roberts<br>3700 Glenwood Avenue, Suite 410<br>Raleigh, NC 27612<br>Phone: (919) 981-0191<br>Fax: (919) 981-0431<br>dkb@lewis-roberts.com | Jeremy W. Alters<br>Alters, Boldt, Brown, Rash & Culmo, P.A.<br>4141 N.E. 2nd Avenue<br>Suite 201<br>Miami, FL 33137<br>Phone: (305) 571-8550<br>Fax: (305) 571-8559<br>jeremy@abbrclaw.com<br><br>Richard J. Serpe, Esquire<br>Law Offices of Richard J. Serpe<br>Crown Center, Ste. 310<br>580 East Main Street<br>Norfolk, VA 23510-2322<br>rserpe@serpefirm.com |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Cross-Notice of Oral and Videotaped Deposition has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 23rd day of February, 2010.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com

4

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

**CHINESE DRYWALL DIVISION**
CASE NO.: 09-200,000 (42)

IN RE: CHINESE DRYWALL LITIGATION

THIS DOCUMENT RELATES TO ALL
CASES

_____/

JASON HARRELL and MELISSA HARRELL,
individually and on behalf of their minor
children and on behalf of all others similarly
situated,

       Plaintiffs,               CASE NO.: 09-08401 CA (42)

vs.

SOUTH KENDALL CONSTRUCTION
CORP., a Florida Corporation; PALM ISLES
HOLDINGS, LLC, a Florida Limited Liability
Company; KEYS GATE REALTY, INC., a
Florida corporation; and BANNER SUPPLY
CO., a Florida corporation,

       Defendants.

_____/

**PLAINTIFFS' NOTICE OF TAKING VIDEOTAPED DEPOSITION DUCES TECUM**

      PLEASE TAKE NOTICE that, pursuant to rule 1.310(b)(6), Florida Rules of Civil

Procedure, Plaintiffs will take the deposition of

| | |
|---|---|
| **DEPONENT:** | **The Corporate Representative(s) of South Kendall Construction Corp. most knowledgeable of the subject matters set forth on Exhibit "A" attached hereto** |
| **DATE & TIME:** | **March 12, 2010 beginning at 10:00 AM** |
| **PLACE:** | **Podhurst Orseck, P.A.**<br>**25 West Flagler Street, Suite 800**<br>**Miami, FL 33130** |

**CALL-IN INFORMATION:**        **DIAL IN: 888-337-8218**
                               **PASSCODE: 769758**

upon oral examination.  The deposition will be videotaped in accordance with rule 1.310(b)(4), Florida Rules of Civil Procedure, by Video Court Reporting, Inc and will be recorded stenographically by Linda Golkow or another officer authorized to record depositions.  Pursuant to rule 1.310(b)(6), the deponent shall designate one or more officers, directors, or managing agents, or other persons who consent to do so, to testify on its behalf and may state the matters on which each person designated will testify.  The persons so designated shall testify about matters known or reasonably available to the organization.  The matters on which examination is requested are those listed in **Exhibit "A"** attached hereto.  Pursuant to rules 1.310(b)(5) and 1.350, Florida Rules of Civil Procedure, and the Court's oral ruling announced on February 5, 2010, Defendant South Kendall Construction Corp. shall produce, to Podhurst Orseck, P.A., 25 W. Flagler St., Suite 800, Miami, FL 33130, the documents and things identified on **Exhibit "B"** attached hereto *within 15 days of service of this Notice.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was served on **Robert Fitzsimmons, Esq., Defendants' Liaison Counsel,** and upon all parties by electronically uploading the same to Lexis Nexis File & Serve, which will send a notice of electronic filing to all interested parties, and that the foregoing was filed with the Miami-Dade Clerk of Court by paper on this *22nd* day of February, 2010.

2

HIGER LICHTER & GIVNER, LLP
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida  33160
Tel: (305) 933-9970
Fax: (305) 933-0998
David H. Lichter, Esq
Florida Bar No. 359122
dlichter@hlglawyers.com
J. Joseph Givner, Esq.
Florida Bar No.850705
jgivner@hlglawyers.com

*Counsel for Plaintiffs*

THE BLUMSTEIN LAW FIRM
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida  33160
Tel: (305) 356-7547
Fax: (305) 356-7539
Mark Blumstein, Esq.
Florida Bar No. 0090700
Mark@BlumsteinLaw.com

*Counsel for Plaintiffs*

PODHURST ORSECK, P.A.
25 W. Flagler Street, Suite 800
Miami, Florida   33130
Tel:  (305) 358-2800
Fax:  (305) 358-2382

By: _____ FBN 180122
       Victor M. Diaz, Jr., Esq.
       Florida Bar No. 503800
       vdiaz@podhurst.com

*Counsel for Plaintiffs*

3

## <u>EXHIBIT A – MATTERS ON WHICH</u>
## <u>EXAMINATION IS REQUESTED</u>

1.   The process you generally undertake to select subcontractors with whom to contract as part of your effort to construct homes, including subcontractors that supply drywall for the job.

2.   The process you undertook as it relates to the Plaintiffs' home to select Banner Supply Company to supply the drywall that you caused to be installed in the Plaintiffs' home.

3.   Your general practice, as a general contractor, concerning how directly involved you are in supervising or conducting the physical process of constructing homes such as the one purchased by the Plaintiffs.

4.   The practice you followed as it relates to the Plaintiffs' home concerning how directly involved you are in supervising or conducting the physical process of constructing the Plaintiffs' home.

5.   Your knowledge of the source of the drywall, generally, used in homes you construct.

6.   Your knowledge of the source of the drywall used in the Plaintiffs' home.

7.   Your ability to select the manufacturer of the drywall that is to be installed in homes constructed by you.

8.   Your ability to select any sub-subcontractor who would perform the actual physical labor involved in installing drywall in homes constructed by you.

9.   Your input, as it relates to the Plaintiffs in the instant case, in selecting any sub-subcontractor that installed the drywall that was installed in the Plaintiffs' home.

10.  Your relationship with Keys Gate Realty, Inc.

11.  Your relationship with Palm Isles Holdings, LLC.

12.  The relationship of Keys Gate Realty, Inc. to Palm Isles Holdings, LLC.

13.  The positions and responsibilities of all officers and directors of South Kendall Construction Corp.

14.  The positions and responsibilities of all officers and directors of Palm Isles Holdings, LLC.

15.  The positions and responsibilities of all officers and directors of Keys Gate Realty, Inc.

16.  The identity of all manufacturers, suppliers, distributors and installers of the drywall that was installed at Palm Isles, Augusta Greens and/or Arbor Park.

17.  The total number of homes in the Palm Isles, Augusta Greens and Arbor Park communities that you constructed.

18.     The number of homes in Palm Isles, Augusta Green and/or Arbor Park in which you installed, or caused to be installed, drywall.

19.     The number of homes in and percentage of those homes that you built which were constructed with drywall manufactured in the People's Republic of China.

20.     The quantity of drywall manufactured in the People's Republic of China which you installed or caused to be installed in homes in Palm Isles, Augusta Green and/or Arbor Park.

21.     The identity of the specific homes (i.e., by address or property description) nationwide that you are aware contain drywall manufactured in the People's Republic of China.

22.     The number and dates of complaints (whether oral or written) made or submitted to you by or on behalf of anyone (including but not limited to homeowners, their families, contractors, developers, builders, installers, or any of their agents or assigns) concerning any of the following phenomena in homes or structures built nationwide since 2001: (a) the drywall, (b) the corrosion, blackening or malfunction of air conditioners and/or air conditioner coils, (c) the corrosion or blackening of metal items installed in the homes (such as electrical wiring, copper plumbing, etc.), and/or (d) the corrosion, blackening or malfunction electrical equipment in the houses.

23.     The identity of each person who has submitted a complaint to you concerning any of the following phenomena in homes or structures built nationwide since 2001: (a) the drywall, (b) the corrosion, blackening or malfunction of air conditioners and/or air conditioner coils, (c) the corrosion or blackening of metal items installed in the homes (such as electrical wiring, copper plumbing, etc.), and/or (d) the corrosion, blackening or malfunction electrical equipment in the houses.

24.     The number and dates of complaints (whether oral or written) concerning alleged unusual odors (including but not limited to sulfur or "rotten egg" smells) emanating from any buildings built nationwide since 2001, and as to each, the date each complaint was made and the address of the concerned property.

25.     Whether you had any product specifications formulated and/or used by you for the drywall installed in the homes you built since 2001, and what such standards were.

26.     Whether you complied with all governmental, industry or safety organizations standards, codes or regulations concerning the manufacture, use and installation of drywall in the homes you built since 2001.

27.     Any quality control measures regarding the drywall used and/or installed in the homes you built since 2001.

28.     The identity of all other developments, condominiums, houses, apartments, shopping centers or other structures in Florida where you have installed or directed the installation of drywall manufactured by the same manufacturer(s) that supplied the drywall for Palm Isles, Augusta Greens and/or Arbor Park.

29.  The number of homes nationwide in which you have made mitigation and/or repair efforts, including the issuance of written notice to the homeowner of your intent to undertake mitigation and/or repair efforts, for any drywall installed in those homes which was manufactured in the People's Republic of China, and the address of each such home.

30.  Any factual differences among homes and/or homeowners in Palm Isles, Augusta Greens and/or Arbor Park as compared to nationwide or statewide that you contend may render the claims in this case unsuitable for class treatment.

31.  Your position in these consolidated actions as to whether the drywall you installed in the Plaintiffs' home was and is defective or unreasonably dangerous.

32.  Your position in these consolidated actions as to whether the drywall you procured for supply in construction in the State of Florida was and is defective because it contains and emits toxins, including sulphur and sulphur compounds such as carbon disulfide, carbonyl sulfide and hydrogen sulfide, which damage homes, fixtures attached thereto, and personal property contained therein, in many ways, including, but not limited to: (a) eroding, corroding and/or tarnishing various metals within residences, including plumbing and interior electrical wiring; (b) disrupting and/or interfering with the operation of electric and electronic equipment and appliances within said residences, including but not limited to microwaves, computers, air conditioning and refrigerator coils; and (c) creating a noxious rotten egg-like odor that renders the homes uninhabitable.

33.  Your position in these consolidated actions as to whether the alleged defect exists and, if so, whether the defect can or should be repaired or remediated.

34.  The circumstances surrounding the formation of the contract for sale and purchase of the home at issue between the Harrell Plaintiffs and you.

35.  Your position in this action as to whether Plaintiffs have actually sustained damage to their homes, fixtures attached thereto, and personal property contained therein as a direct result of the sulphuric toxins emitted by defective drywall installed by you.

36.  Your position in this action as to whether the homes of Plaintiffs and members of the putative class in which defective drywall has been installed are in need of remediation.

37.  Your position in this action as to the specifics of what would constitute a remediation protocol that would acceptably remedy all problems caused by the defective Chinese-manufactured drywall.

38.  Your position in this action as to whether the home sold to Plaintiffs is habitable or fit for its intended purpose.

39.  As to any entity with which you are affiliated that is involved in the ordering, purchase, use, sale, or distribution of Chinese drywall, the responsibilities that each such entity has in regard to Chinese drywall.

40. The steps taken by or on behalf of you to preserve documents that are or may be potentially discoverable in this action.

41. Your knowledge regarding all mitigation efforts embodied in any complaint filed against you in these consolidated proceedings.

42. Your knowledge regarding any affirmative defenses or demands included in any responsive pleading filed by you in these consolidated proceedings.

## EXHIBIT B – DOCUMENTS AND THINGS REQUESTED

1.    Any and all documents and things, regardless of their label, that show the relationship between Keys Gate Realty, Inc. and South Kendall Construction Corp., including but not limited to contracts, agreements, letters, correspondence, emails, and any other business document of any kind or label.

2.    Any and all documents and things, regardless of their label, that show the relationship between South Kendall Construction Corp. and Palm Isles Holdings, LLC., including but not limited to contracts, agreements, letters, correspondence, emails, and any other business document of any kind or label.

3.    Any and all documents and things, regardless of their label, that show the relationship between and/or professional position of Paige Latterner, Jerry Joseph and/or Patrick Gleber concerning South Kendall Construction Corp.; Palm Isles Holdings, LLC; and Keys Gate Realty, Inc., including but not limited to employment contracts, agreements, letters, correspondence, emails, and any other business document of any kind or label.

4.    Any and all documents and things relating to the sale of the home to Jason and Melissa Harrell located at 1926 SE 23rd Court, Homestead, FL 33035 that is at issue in this action.

5.    Any and all contracts for purchase and sale of homes sold by you in the years 2004 – 2008.

6.    The Articles of Incorporation of South Kendall Construction Corp.

7.    The Bylaws of South Kendall Construction Corp.

8.    The minutes of any Board of Director meetings of South Kendall Construction Corp. from 2001 – 2008.

9.    Any and all correspondence between Keys Gate Realty, Inc. and South Kendall Construction Corp. concerning the sale of homes in the Palm Isles, Augusta Greens and/or Arbor Park communities from 2001 -2008.

10.    Any and all correspondence between Keys Gate Realty, Inc. and South Kendall Construction Corp. concerning the sale of any home nationwide from 2001-2008.

11.    Any and all notices pursuant to Chapter 558, Florida Statutes, received by South Kendall Construction Corp. concerning any home built in the Palm Isles, Augusta Greens and/or Arbor Park communities.

12.    Any and all notices pursuant to Chapter 558, Florida Statutes, received by South Kendall Construction Corp. concerning any home built by you nationwide.

13.    Any and all written notices concerning any alleged problem or issue relating to alleged "Chinese drywall" in any home sold by Keys Gate Realty, Inc.; South Kendall Construction Corp.; and/or Palm Isles Holdings, LLC from 2001 – 2008.

14.  Any and all written notices concerning any alleged problem or issue relating to alleged "Chinese drywall" in any home sold nationwide from 2001 – 2008.

15.  Any and all correspondence between South Kendall Construction Corp. and homeowners concerning any alleged problems with A/C units, A/C coils, "sulfur" or "burnt matches" or other alleged bad odor, corrosion of metals, wiring or appliances, or defective appliances in homes sold by Keys Gate Realty, Inc.; South Kendall Construction Corp.; and/or Palm Isles Holdings, LLC from 2004 – 2008.

16.  Any and all correspondence between South Kendall Construction Corp. and homeowners concerning any alleged problems with A/C units, A/C coils, "sulfur" or "burnt matches" or other alleged bad odor, corrosion of metals, wiring or appliances, or defective appliances in homes sold nationwide from 2004 – 2008.

17.  And and all investigations, studies, inquiries, and tests performed or commissioned by you to attempt to determine (A) whether the drywall you installed in the Plaintiffs' homes is defective or unreasonably dangerous; (B) whether drywall obtained from China in the years 2001-2008 is defective or unreasonably dangerous; and (C) the source of the drywall you installed in the Plaintiffs' homes.

18.  Any and all documents generated by, prepared for, reviewed by, received by, or concerning your Board of Directors, or any committee thereof or authorized thereby, concerning Chinese drywall or of problems with the drywall, including any symptoms of the drywall's presence such as smell, air conditioning unit replacement, or the corrosion of metals, and any related health and safety concerns, including any presentation to the Board of Directors, any resolution, any minutes of meetings, and any notes or memoranda of any attendee or Board member.

19.  For each year in which you ordered, purchased, used, sold, or distributed Chinese drywall, any and all documents concerning the departmental and corporate organizational charts for the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the ordering, purchase, use, sale, or distribution of said Chinese drywall.

20.  Your annual reports and other communications and correspondence directed to your shareholders during the Relevant Time Period.

21.  Any and all documents concerning any report or analysis of your financial condition or business prospects prepared by you or any third party, including any analysis prepared by financial or industry analysts, during the Relevant Time Period.

22.  For each year in which you ordered, purchased, used, sold, or distributed Chinese drywall, any and all documents concerning the departmental and corporate standard operating procedures, processes, guidelines, and rules for the conduct of the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the ordering, purchase, use, sale, or distribution of Chinese drywall.

23.   Any and all of your document retention or document destruction policies and memoranda in effect during the Relevant Time Period.

24.   Each and every general liability, comprehensive general liability, advertising liability, errors and omissions, or product liability insurance policy (and any other insurance policy which you believe may provide primary, umbrella or excess coverage for any personal injury, economic loss, or medical monitoring claim asserted in these proceedings), as well all excess layers, that you purchased or on which you are a named insured (including policies purchased by related corporate entities), during the Relevant Time Period.

25.   Any charts or schedules of layers of insurance or self-insured retention for any of the respective years of coverage.

26.   Any and all documents concerning any contracts or agreements with respect to Chinese drywall, including indemnity agreements, agreements to assume liability, agreements to assume the defense, and joint defense agreements made by you, your insurers, or any other entities that may be financially affected by any of the claims asserted in this litigation.

27.   Any and all documents evidencing the amount of Chinese drywall you purchased during the Relevant Time Period.

28.   Any and all documents identifying the entity or entities from whom you purchased Chinese drywall during the Relevant Time Period, including documents identifying direct manufacturer purchases and purchases through suppliers.

29.   Any and all documents, including invoices, bills of lading and receipts which relate to purchases of Chinese drywall during the Relevant Time Period, including documents identifying direct manufacturer purchases and purchases through suppliers.

30.   Any and all documents identifying your purchasing agent(s) for Chinese drywall during the Relevant Time Period, if any.

31.   Any and all documents you received with any and all purchases of Chinese drywall during the Relevant Time Period, including but not limited to product information sheets, disclosures, material safety data sheets, and warranties.

32.   Any and all communications during the Relevant Time Period among your employees, agents, and or third-party consultants concerning your orders, purchases, use, sale, or distribution of Chinese drywall.

33.   Any and all communications during the Relevant Time Period between you and any manufacturer and/or distributor of Chinese drywall concerning your orders, purchases, use, sale, or distribution of Chinese drywall.

34.   Any and all communications during the Relevant Time Period between you and any purchasing agent(s) for Chinese drywall concerning your orders, purchases, use, sale, or distribution of Chinese drywall.

35.   Any and all documents evidencing or identifying the states in which Chinese drywall was used and/or distributed by you or any affiliated company during the Relevant Time Period.

36.   Any and all documents identifying the names of all the installers of Chinese drywall that you or affiliated companies used during the Relevant Time Period.

37.   Any and all documents evidencing or identifying the communities, street addresses or homes in which Chinese drywall was used and/or distributed by you or any affiliated company during the Relevant Time Period.

38.   Any and all documents evidencing whether Chinese drywall was used and/or distributed by you or any affiliated company in commercial buildings during the Relevant Time Period.

39.   Any and all documents evidencing the number of commercial buildings, if any, where Chinese drywall was installed in part or in whole by you or an installer used by you, during the Relevant Time Period.

40.   Any and all documents evidencing whether Chinese drywall was used by you or an installer used by you, during the Relevant Time Period in residential buildings other than single family homes.

41.   Any and all documents evidencing the number of residential buildings other than single family homes, if any, where Chinese drywall was used by you or an installer used by you, during the Relevant Time Period in residential buildings other than single family homes.

42.   Any and all documents evidencing the number of single family homes where Chinese drywall was installed in part or in whole by you or an installer used by you during the Relevant Time Period.

43.   Any and all documents listing addresses of single family homes in which Chinese drywall was installed in whole or in part by you or an installer used by you during the Relevant Time Period.

44.   Any and all documents listing addresses for any residential buildings, other than single family homes, where Chinese drywall was installed in whole or in part by you or an installer used you during the Relevant Time Period.

45.   Any and all documents listing addresses of any commercial buildings in which Chinese drywall was installed in whole or in part by you or an installer used by Defendant during the Relevant Time Period.

11

46. Any and all notices, claims, complaints, communications or documents of any kind among and/or between your employees and/or employees of affiliate companies, and any consultants, property owners, homeowner's associations, co-op or condo boards, property managers, or tenants during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smell, air conditioning unit replacement, corrosion of metals, and any related health and safety concerns.

47. Any and all communications between you and any manufacturer and/or distributor of Chinese drywall during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smell, air conditioning unit replacement, corrosion of metals, and any related health and safety concerns.

48. Any and all communications between you and any purchasing agent(s) for Chinese drywall during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smell, air conditioning unit replacement, corrosion of metals, and any related health and safety concerns.

49. Any and all communications between you and any installer of Chinese drywall used by you during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smell, air conditioning unit replacement, corrosion of metals, and any related health and safety concerns.

50. Any and all communications between you and any governmental agency during the Relevant Time Period, including but not limited to the CPSC, EPA, CDC, and APSDR, concerning problems with the Chinese drywall, including any symptoms of the drywall's presence such as smell, air conditioning unit replacement, corrosion of metals, and any related health and safety concerns.

51. Any and all communications between you and any foreign government agency or representative during the Relevant Time Period, concerning problems with the Chinese drywall, including any symptoms of the drywall's presence such as smell, air conditioning unit replacement, corrosion of metals, and any related health and safety concerns.

52. Any and all documents provided to any foreign or domestic government agency, legislative body, department, and or representative during the Relevant Time Period in connection with any government investigations, research, or inquiries concerning Chinese drywall.

53. Any and all documents evidencing research, testing, or analysis done by or on behalf of you relating to the Chinese drywall that you ordered, purchased, used, sold, or distributed.

54. Any and all contracts and communications between you and any third-party vendor or consultant relating to the inspection, testing, and analysis of Chinese drywall.

55. Any and all documents and communications between you and any insurer or its representative concerning any claims relating to Chinese drywall.