# EXHIBIT A



| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |

Previous on List       Next on List       Return To List

Events              Name History

Entity Name Search

Submit

## Detail by Entity Name

### Florida Limited Liability Company

BETA DRYWALL, LLC

### Filing Information

| | |
|---|---|
| Document Number | L06000039433 |
| FEI/EIN Number | 900146232 |
| Date Filed | 04/14/2006 |
| State | FL |
| Status | INACTIVE |
| Last Event | ADMIN DISSOLUTION FOR REGISTERED AGENT |
| Event Date Filed | 02/18/2010 |
| Event Effective Date | NONE |

### Principal Address

6586 HYPOLUXO RD. #306
LAKE WORTH FL 33467

Changed 06/10/2009

### Mailing Address

6586 HYPOLUXO RD. #306
LAKE WORTH FL 33467

Changed 06/10/2009

### Registered Agent Name & Address

None

FL US

Registered Agent Resigned: 11/20/2009

### Manager/Member Detail

Name & Address

Title MGRM

FELDMAN, STEPHEN
5 SOUNDVIEW LANE
GREAT NECK NY 11024

Title MGRM

WATKINS, MICHAEL B
572 EAST SILVER CLOUD PLACE
ORO VALLEY AZ 85737

### Annual Reports

Report Year Filed Date

| | |
|---|---|
| 2007 | 02/15/2007 |
| 2008 | 07/18/2008 |
| 2009 | 04/20/2009 |

## Document Images

| | |
|---|---|
| 11/20/2009 -- Reg. Agent Resignation | View image in PDF format |
| 04/20/2009 - ANNUAL REPORT | View image in PDF format |
| 07/18/2008 -- ANNUAL REPORT | View image in PDF format |
| 02/15/2007 -- ANNUAL REPORT | View image in PDF format |
| 08/28/2006 -- LC Name Change | View image in PDF format |
| 04/14/2006 -- Florida Limited Liability | View image in PDF format |

Note: This is not official record. See documents if question or conflict.

Previous on List    Next on List    Return To List

Events    Name History

Entity Name Search

Submit

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

# 2009 LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L06000039433

Entity Name: BETA DRYWALL, LLC

FILED
Apr 20, 2009
Secretary of State

| Current Principal Place of Business: | New Principal Place of Business: |
|---|---|
| 6601 LYONS ROAD, A-3<br>COCONUT CREEK, FL  33073 | |

| Current Mailing Address: | New Mailing Address: |
|---|---|
| 6601 LYONS ROAD, A-3<br>COCONUT CREEK, FL  33073 | 6586 HYPOLUXO ROAD #306<br>LAKE WORTH, FL  33467 |

FEI Number: 90-0146232     FEI Number Applied For ( )     FEI Number Not Applicable ( )     Certificate of Status Desired ( )

| Name and Address of Current Registered Agent: | Name and Address of New Registered Agent: |
|---|---|
| MAS, CARLOS A<br>2525 PONCE DE LEON BLVD.<br>SUITE 400<br>CORAL GABLES, FL  33134  US | |

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

Electronic Signature of Registered Agent                                    Date

**MANAGING MEMBERS/MANAGERS:**

| Title: | MGRM     ( ) Delete |
|---|---|
| Name: | FELDMAN, STEPHEN |
| Address: | 5 SOUNDVIEW LANE |
| City-St-Zip: | GREAT NECK, NY  11024 |

| Title: | MGRM     ( ) Delete |
|---|---|
| Name: | WATKINS, MICHAEL B |
| Address: | 572 EAST SILVER CLOUD PLACE |
| City-St-Zip: | ORO VALLEY, AZ  85737 |

**ADDITIONS/CHANGES:**

| Title: | ( ) Change  ( ) Addition |
|---|---|
| Name: | |
| Address: | |
| City-St-Zip: | |

| Title: | ( ) Change  ( ) Addition |
|---|---|
| Name: | |
| Address: | |
| City-St-Zip: | |

I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Chapter 119, Florida Statutes. I further certify that the information indicated on this report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 608, Florida Statutes.

SIGNATURE:  MICHAEL WATKINS                                    MGR                    04/20/2009

Electronic Signature of Signing Managing Member, Manager, or Authorized Representative / Date

CARLTON FIELDS

ATTORNEYS AT LAW

ATLANTA
MIAMI
ORLANDO
ST. PETERSBURG
TALLAHASSEE
TAMPA
WEST PALM BEACH

4000 International Place
100 S.E. Second Street
Miami, Florida 33131-2114

305.530.0050
305.530.0055 fax
www.carltonfields.com

Carlos A. Mas
305.539.7375 direct
cmas@carltonfields.com

November 17, 2009

Division of Corporations
P.O. Box 6327
Tallahassee, Florida 32314

Gentlemen:

Please find enclosed a Resignation of Registered Agent form for Beta Drywall, LLC.  Also enclosed is a check No. 477612 in the amount of $85.00 for the filing fee.

Sincerely,

Carlos A. Mas

15959533.1

L060000039433

(Requestor's Name)

(Address)

(Address)

(City/State/Zip/Phone #)

[ ] PICK-UP     [ ] WAIT     [ ] MAIL

(Business Entity Name)

(Document Number)

Certified Copies _____     Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



500162755755

11/20/09--01028--003   **85.00

09 NOV 20 PH 1:38
FILED
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

RA/RES
(10) 11/25/09

# RESIGNATION OF REGISTERED AGENT FOR A LIMITED LIABILITY COMPANY

Pursuant to the provisions of section 608.416(2) or 608.509, Florida Statutes, the undersigned,

Carlos A Mas

_____ , hereby resigns as

(Name of Registered Agent)

Registered Agent for  Beta Drywall, LLC

_____

(Name of Limited Liability Company)

L06000039433
_____

(Document Number, if known)

A copy of this resignation was mailed to the above listed limited liability company at its last known address.

The agency is terminated and the office discontinued on the 31st day after the date on which this statement is filed.

_____

(Signature of Resigning Agent)

If signing on behalf of an entity:

Carlos A. Mas
_____

(Typed or Printed Name)

Attorney
_____

(Capacity)

**FILING FEES:**
$ 85.00    Active limited liability company
$ 25.00    Administratively dissolved/ voluntarily dissolved/
           withdrawn limited liability company

Make checks payable to Florida Department of State and mail to:
**Division of Corporations**
**P.O. Box 6327**
**Tallahassee, FL  32314**

INHS17 (08/05)

09 NOV 20  PM 1:38

FILED
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

# EXHIBIT B



| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |

Previous on List    Next on List    Return To List

No Events          No Name History

Entity Name Search

Submit

# Detail by Entity Name

## Florida Profit Corporation

SUPREME DRYWALL & METAL FRAMING COMPANY

## Filing Information

Document Number   P05000034873
FEI/EIN Number    202463305
Date Filed        03/07/2005
State             FL
Status            ACTIVE

## Principal Address

4905 34TH ST SOUTH, STE 105
ST PETERSBURG FL 33711

Changed 12/16/2008

## Mailing Address

4905 34TH ST SOUTH, STE 105
ST PETERSBURG FL 33711

Changed 12/16/2008

## Registered Agent Name & Address

NEVILLE, SUSAN
4905 34TH ST SOURH, STE 105
ST PETERSBURG FL 33711 US

Address Changed: 04/28/2009

## Officer/Director Detail

Name & Address

Title PD

NEVILLE, STEPHEN
4905 34TH ST SOUTH STE 105
ST PETERSBURG FL 33711

Title VP

CHAMBERLAIN, THOMAS
4905 34TH ST SOUTH STE 105
ST PETERSBURG FL 33711

Title VSTD

NEVILLE, SUSAN
4905 34TH ST SOUTH STE 105
ST PETERSBURG FL 33711

## Annual Reports

Report Year Filed Date
2007       04/20/2007
2008       04/18/2008
2009       04/28/2009

## Document Images

| | |
|---|---|
| 04/28/2009 -- ANNUAL REPORT | View image in PDF format |
| 04/18/2008 -- ANNUAL REPORT | View image in PDF format |
| 04/20/2007 -- ANNUAL REPORT | View image in PDF format |
| 04/21/2006 -- ANNUAL REPORT | View image in PDF format |
| 03/07/2005 -- Domestic Profit | View image in PDF format |

Note: This is not official record. See documents if question or conflict.

| Previous on List | Next on List | Return To List | | Entity Name Search |
|---|---|---|---|---|
| No Events | No Name History | | | Submit |

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

# 2009 FOR PROFIT CORPORATION ANNUAL REPORT

FILED
Apr 28, 2009
Secretary of State

DOCUMENT# P05000034873

Entity Name: SUPREME DRYWALL & METAL FRAMING COMPANY

**Current Principal Place of Business:**

4905 34TH ST SOUTH, STE 105
ST PETERSBURG, FL 33711

**New Principal Place of Business:**

**Current Mailing Address:**

4905 34TH ST SOUTH, STE 105
ST PETERSBURG, FL 33711

**New Mailing Address:**

FEI Number: 20-2463305    FEI Number Applied For ( )    FEI Number Not Applicable ( )    Certificate of Status Desired ( )

**Name and Address of Current Registered Agent:**

NEVILLE, SUSAN
14605 49TH STREET NORTH
SUITE ONE
CLEARWATER, FL 33762 US

**Name and Address of New Registered Agent:**

NEVILLE, SUSAN
4905 34TH ST SOURH, STE 105
ST PETERSBURG, FL 33711    US

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida

SIGNATURE  S NEVILLE                                                                04/28/2009

Electronic Signature of Registered Agent                                           Date

Election Campaign Financing Trust Fund Contribution ( ).

## OFFICERS AND DIRECTORS:

| | |
|---|---|
| Title | PD    ( ) Delete |
| Name | NEVILLE, STEPHEN |
| Address | 14605 49TH STREET NORTH SUITE ONE |
| City-St-Zip | CLEARWATER, FL 33762 |

| | |
|---|---|
| Title | VP    ( ) Delete |
| Name | CHAMBERLAIN, THOMAS |
| Address | 14605 49TH STREET NORTH SUITE ONE |
| City-St-Zip | CLEARWATER, FL 33762 |

| | |
|---|---|
| Title: | VSTD    ( ) Delete |
| Name: | NEVILLE, SUSAN |
| Address: | 14605 49TH STREET NORTH SUITE ONE |
| City-St-Zip | CLEARWATER, FL 33762 |

## ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS:

| | |
|---|---|
| Title: | PD    (X) Change ( ) Addition |
| Name: | NEVILLE, STEPHEN |
| Address: | 4905 34TH ST SOUTH STE 105 |
| City-St-Zip: | ST PETERSBURG, FL 33711 |

| | |
|---|---|
| Title: | VP    (X) Change ( ) Addition |
| Name: | CHAMBERLAIN, THOMAS |
| Address: | 4905 34TH ST SOUTH STE 105 |
| City-St-Zip: | ST PETERSBURG, FL 33711 |

| | |
|---|---|
| Title: | VSTD    (X) Change ( ) Addition |
| Name: | NEVILLE, SUSAN |
| Address: | 4905 34TH ST SOUTH STE 105 |
| City-St-Zip: | ST PETERSBURG, FL 33711 |

I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Chapter 119, Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with an address, with all other like empowered.

SIGNATURE  S NEVILLE                                     V                          04/28/2009

Electronic Signature of Signing Officer or Director                                Date

# EXHIBIT C



LEXSEE 2004 U.S. DIST. LEXIS 16153



Positive
As of: Feb 12, 2010

**SIEMENS BUILDING TECHNOLOGIES, INC. VERSUS JEFFERSON PARISH**

**CIVIL ACTION NO. 03-2272 SECTION "K" (3)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*2004 U.S. Dist. LEXIS 16153*

**August 12, 2004, Decided
August 16, 2004, Filed, Entered**

**PRIOR HISTORY:** *Siemens Bldg. Techs., Inc. v. Jefferson Parish, 2004 U.S. Dist. LEXIS 5602 (E.D. La., Mar. 31, 2004)*

**DISPOSITION:**     [*1]  Defendants' Motion to Dismiss granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant parish moved to dismiss, pursuant to *Fed. R. Civ. P. 12(b)(6), (7)*, plaintiff subcontractor's action arising out of the parish's award of the heating, ventilating and air conditioning portion of a public works project to a competitor of the subcontractor.

**OVERVIEW:** The motion to dismiss was two-pronged. First, the parish contended that the claims should be dismissed under *Rule 12(b)(7)* for failure to join an indispensable party, the competitor, under *Fed. R. Civ. P. 19*. Second, the parish claimed that, under *Fed. R. Civ. P. 12(b)(6)*, the claims should be dismissed for failure to state a claim upon which relief can be granted. As to *Fed. R. Civ. P. 19*, the court concluded that the competitor was an indispensable party. The competitor was so situated that disposition of the action in its absence might impair or impede its ability to protect that interest, or leave the parish subject to a substantial risk of incurring multiple or otherwise inconsistent obligations. The competitor had to be joined pursuant to *Rule 19*. As to *Fed. R. Civ. P. 12(b)(6)*, the parish argued that the subcontractor was precluded from recovery under the Louisiana Public Works Act (LPWA), *La. Rev. Stat. Ann. § 38:2241 et seq.* The court, however, concluded that the subcontractor could state a claim for relief in an ordinary proceeding. Further, the subcontractor could seek damages under the LPWA; the subcontractor had stated why timely suit for injunction was impossible.

**OUTCOME:** The motion to dismiss was granted to the extent that the competitor was found to be an indispensable party, but the motion to dismiss was otherwise denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Parties > Joinder > Indispensable Parties*
*Civil Procedure > Parties > Joinder > Necessary Parties*
[HN1] Joinder under *Fed. R. Civ. P. 19* is a two step process. First, the court must decide if the absent party is a necessary party to the action. *Rule 19(a)*. Second, if the absent party is a necessary party, but its joinder is not feasible, the court must decide whether the absent party

is an "indispensable" party to the action under *Rule 19(b)*. *Rule 19(b)*.

***Civil Procedure > Parties > Joinder > Necessary Parties***

[HN2] A party is "necessary" under *Fed. R. Civ. P. 19(a)* if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. *Rule 19(a)*.

***Civil Procedure > Parties > Joinder > Necessary Parties***

[HN3] When a party is "necessary," but cannot be joined in the action, the court must determine whether in equity and good conscience the action should proceed among the parties before it. *Fed. R. Civ. P. 19(b)*. *Rule 19(b)* provides the following four factors for a court to consider when making its determination: First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *Rule 19(b)*.

***Civil Procedure > Parties > Joinder > Compulsory Joinder***
***Civil Procedure > Parties > Joinder > Necessary Parties***

[HN4] Compulsory joinder is an exception to the general practice of allowing the plaintiff to decide who shall be the parties to a lawsuit. Although courts recognize a plaintiff's traditional prerogative, they should compromise plaintiff's choice when "significant countervailing considerations" make the joinder of particular absentees desirable. Those "countervailing considerations" include: (1) the present defendant's interests; (2) the interests of potential but absent parties; and (3) the court's social interest in the orderly, expeditious administration of justice.

***Civil Procedure > Parties > Joinder > Indispensable Parties***
***Civil Procedure > Parties > Joinder > Necessary Parties***

[HN5] In an action to set aside a contract, all persons who are parties to the contract may be affected by the determination of the action and are indispensable parties for the purposes of *Fed. R. Civ. P. 19*. Federal courts consistently hold that a party to an agreement in dispute is an indispensable party under *Rule 19(a)* in a suit seeking to rescind, annul, or interpret that agreement.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims***
***Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims***

[HN6] *Fed. R. Civ. P. 12(b)(6)* permits a defendant to seek dismissal of a complaint based on the failure to state a claim upon which relief can be granted.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims***

[HN7] A complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.

***Contracts Law > Types of Contracts > Guaranty Contracts***
***Public Contracts Law > Bids & Formation > Subcontracts & Subcontractors > General Overview***
***Public Contracts Law > Contract Interpretation > General Overview***

[HN8] In Louisiana, public construction contracts are governed by the Louisiana Public Works Act (LPWA), *La. Rev. Stat. Ann. § 38:2241 et seq.*, which provides that governing authorities entering into a contract for construction of a public work must furnish a statutory bond. *§ 38:2241(a)*. The LPWA has been interpreted by the Louisiana Supreme Court to limit claims to those who have a contractual relationship with either the contractor or a subcontractor. These provisions provide certain classes of persons not enjoying privity of contract with the general contractor or with the governing authority a claim nevertheless against the general contractor and his surety and in some instances a claim against the governing authority itself. The provisions also protect the public authority complying with the requirements of the statutes from expenses caused by failure of the contractor or subcontractor to faithfully perform the contract.

2004 U.S. Dist. LEXIS 16153, *

*Governments > Legislation > Interpretation*
*Public Contracts Law > Dispute Resolution > General Overview*
[HN9] Public contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes.

*Governments > Legislation > Interpretation*
*Public Contracts Law > Dispute Resolution > General Overview*
[HN10] The Louisiana Public Works Act, *La. Rev. Stat. Ann. § 38:2241 et seq.*, is sui generis and provides exclusive remedies to parties in public construction work.

*Public Contracts Law > Contract Interpretation > Specifications*
[HN11] See *La. Rev. Stat. Ann. § 38:2290(A)*.

*Public Contracts Law > Dispute Resolution > Bid Protests*
*Public Contracts Law > Dispute Resolution > Jurisdiction*
*Public Contracts Law > Terminations > General Overview*
[HN12] See *La. Rev. Stat. Ann. § 38:2293*.

*Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions*
*Contracts Law > Remedies > Equitable Relief > Injunctive Relief*
*Public Contracts Law > Bids & Formation > Offer & Acceptance > Acceptances & Awards*
[HN13] Seeking injunctive relief is not a prerequisite for the use of ordinary proceedings to seek nullification of a public works contract that has allegedly been wrongfully awarded. Indeed, after a contract is awarded a party seeking to nullify must proceed by ordinary proceeding. This is the aggrieved party's "sole remedy."

*Contracts Law > Remedies > Equitable Relief > Injunctive Relief*
*Public Contracts Law > Bids & Formation > General Overview*
*Torts > Damages > General Overview*
[HN14] In the public contracts context, although damages are not ordinarily available to an unsuccessful bidder unless it timely seeks to enjoin the wrongful award of the contract, an unsuccessful bidder may still be able to re-

cover damages if it can specifically plead why a timely suit for injunction was impossible. The timeliness of a bidder's suit for injunctive relief depends upon the facts and circumstances of the particular case.

**COUNSEL:** For SIEMENS BUILDING TECHNOLO-GIES, INC., plaintiff: Philip Anthony Franco, Elizabeth N. Anderson, Adams & Reese, New Orleans, LA.

For JEFFERSON PARISH, JEFFERSON PARISH COUNCIL, defendants: Daniel Aubry Ranson, Michael Don Peytavin, Gaudry, Ranson, Higgins & Gremillion, LLC, Gretna, LA.

**JUDGES:** Stanwood R. Duval Jr.

**OPINION BY:** Stanwood R. Duval Jr.

**OPINION**

Before the Court is a Motion to Dismiss Combining Various Defenses (Rec. Doc. 30) filed by defendants Jefferson Parish and the Jefferson Parish Council (collectively, the "Parish"). Having reviewed the pleadings, memoranda, and relevant law, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion, for reasons stated *infra.*

**I. BACKGROUND**

This matter arises out of a public construction dispute. Plaintiff Siemens Building Technologies, Inc., ("Siemens"), a sub-subcontractor, bid on the Heating, Ventilating [*2] and Air Conditioning ("HVAC") portion of a public works project sanctioned by defendants. The Parish and Siemens then entered into discussions regarding the HVAC portion of the project. Thereafter, Siemens installed a HVAC system. Nevertheless, the Parish ultimately awarded the HVAC contract to Johnson Controls, Inc. ("JCI"), a company that manufactures and installs HVAC equipment. As to HVAC installation, JCI is a competitor of plaintiff Siemens. The instant lawsuit resulted.

The Complaint alleges the following facts: Jefferson Parish advertised a contract for public bidding regarding the construction of an Administrative Building for the Parish. Prior to the bidding deadline of May 16, 2002, the Parish issued Addendum No. 3, which included bidding specifications that required bidders to furnish and install an extension of JCI Metasys Facility Management Systems ("Metasys System"), the Parish's HVAC Control System. The cost of the JCI System, and of the labor in installing it, was to be included in a bidder's price. Addendum No. 3 also provided that "[a] fixed cost for the devices labeled 'proprietary' will be furnished by JCI and published in a subsequent addendum."

Case 2:09-md-02047-EEF-MBN   Document 1328-1   Filed 02/24/10   Page 16 of 41

Page 4
2004 U.S. Dist. LEXIS 16153, *

Seventy-two [*3] hours before the bidding deadline, the Parish issued Addendum No. 5, which purported to create a closed proprietary specification in favor of JCI. This addendum indicated a fixed price of $ 292,721.00 for the materials and proprietary labor that would be supplied by JCI. Addendum No. 5 also specified that the installation cost for the proprietary materials, and for the installation and supply of all non-proprietary materials, was not included in the lump sum to be given to JCI by the contractor.

Siemens alleges that, even after the Addenda were issued, there was a lack of clarity as to what portions of the project were to be proprietary and non-proprietary. Siemens further alleges that this failure to create a clear distinction between the proprietary and non-proprietary portions of the project "made it impossible for a vender other than JCI to bid only the non-proprietary portion of the project."

In March 2002, the Parish informed Siemens that it intended to create a closed proprietary specification in favor of JCI. Siemens informed the Parish that Siemens could save the Parish money by (1) either purchasing the necessary equipment from JCI and then installing that equipment for [*4] the Parish, or (2) by simply using Siemens equipment in the installation. The parties discussed whether Siemens should submit bids to the Parish regarding these proposals, and the Parish indicated that it was receptive to saving money.

After correspondence between Siemens and the Parish confirming this conversation, Siemens provided a bid to Mechanical Towers ("Towers"), a subcontractor, for a HVAC Temperature Controls system. This bid to Towers included supply of the JCI proprietary equipment specified, the supply of the non-proprietary equipment, and commissioning, totaling $ 377,850.000. The JCI bid for the same services was $ 442,000.000.

Towers incorporated Siemens' bid into a bid to Brice Building Company, Inc. ("Brice"), the general contractor. The Parish and Brice entered into a contract for the construction of the Administration Building on July 10, 2002. This contract was based on the bid Towers made to Brice, which included Siemens' bid to provide and install both the JCI equipment and all non-proprietary equipment specified.

After the contract between the Parish and Brice was executed, Siemens met with the Parish and Brice to demonstrate its system's ability to integrate [*5] with the Parish's existing JCI Metasys system. Siemens informed the Parish that using Siemens equipment would save the Parish an additional $ 100,256.000. During this meeting, the Parish stated that, so long as the equipment used worked with their existing JCI system, it did not matter whether Siemens or JCI equipment was used.

Siemens then made a post-bid request to substitute Siemens equipment for the JCI proprietary equipment specified.

Siemens alleges that, after this meeting, JCI met with the Parish and convinced them not to use Siemens equipment in updating the HVAC system. The Parish then denied Siemens' post-bid request to substitute its equipment for JCI equipment. During continuing discussions between the Parish and Siemens, the Parish only objected to Siemens' substitution of its equipment for JCI equipment; the Parish did not object to Siemens performing the HVAC project with the JCI equipment specified.

At a meeting between the Parish, Siemens, Towers, and Brice on September 18, 2002, the Parish informed Siemens that it did not matter where Siemens acquired the JCI equipment or who installed it. The Parish did not inform Siemens that it would not be permitted to perform [*6] the HVAC project. Siemens also alleges that the Parish remained silent during discussions when Siemens indicated its intention to provide the JCI equipment for the project.

Siemens purchased the JCI proprietary equipment required for the Parish's project. On February 3, 2002, Siemens prepared a written submittal for the work to be performed by Siemens; this submittal included the JCI equipment Siemens purchased for the project. Soon after, by a letter dated February 26, 2003, the Parish's architect "returned Siemens submittal without engineering review stating that the Siemens submittal package represented a variance from the Contract Specifications and was not in compliance with the requirements outlined in Addendum No. 5." Siemens alleges that this was its first notice that it would not be permitted to perform the portion of the project involving the JCI equipment.

On March 11, 2002, Siemens issued an invoice to Towers in the amount of $ 134,912.00; $ 121,901.20 of this amount was for the JCI proprietary materials. Towers then included this amount in its April pay request to the Parish architect. The Parish architect subsequently rejected the invoice for Siemens' purchase of the [*7] JCI equipment.

Siemens obtained counsel and informed the Parish that it had "illegally bid the project with respect to the HVAC Temperature Controls system in violation of the public bid law by improperly designating the JCI equipment as a proprietary closed specification." The Parish conceded that it had illegally bid the closed specification in violation of the public bid laws. The Parish also indicated its intention to re-bid the HVAC Temperature Controls portion of the project in a proper manner. Thereafter, on May 14, 2003, the Parish adopted Resolution No. 98361, in which the Parish authorized Construction

Change Directive No. 1. This Directive deleted from the public bid project the lump sum of $ 292,721.000 for the materials, equipment, and other proprietary work to be performed by JCI as described in Addendum No. 5. By deleting this portion of the project from the public bid, the proprietary portion of the project was no longer part of the public bid. Siemens alleges that the JCI equipment the Parish obtained from JCI for this portion of the project is the same equipment they have already purchased. Siemens further alleges that some of the equipment Siemens purchased is already [*8] installed in the Parish's Administration Building.

After Jefferson Parish deleted the HVAC Temperature Controls system portion of the project from the general contract with Brice on May 14, 2003, the Parish re-bid that portion of the project. In connection with the re-bid, the Parish issued a new set of contract specifications to prospective bidders. Like the original contract specifications, the new specifications purported to create a closed specification in favor of JCI. The deadline for submitting bids on the re-bid of the HVAC system was August 5, 2003.

During the re-bid process, Siemens requested any and all certifications which were required to be made under the *Public Bid Law* in order for the JCI equipment to be specified as proprietary. Siemens never received any such certifications.

Siemens submitted two bids in response to the Parish's re-bid of the HVAC Temperature Controls portion of the project: one which used the JCI equipment specified in the new contract specifications, and one which used the Siemens equipment that was of equal quality and utility to the JCI equipment specified. JCI also submitted a bid in response to the Parish's re-bid of the HVAC Temperature [*9]   Controls portion of the project. Both of Siemens bids were lower than the JCI bid.

On August 6, 2003, the Parish adopted Resolution No. 99030 rejecting both of Siemens' bids and accepting the higher-priced JCI bid. The Parish subsequently entered into a contract with JCI to install the HVAC system into the Administration Building. The Parish's contract with JCI is separate and apart from its general contract with Brice and all of Brice's subcontracts for this project. Brice has no contract with JCI for this portion of the project. Pursuant to its contract with JCI, the Parish intends to have JCI provide the identical equipment Siemens already purchased at a cost of $ 121,901.20, most of which Siemens has already installed into the Administration Building.

Siemens filed a Complaint (Rec. Doc. No. 1) in this Court on August 12, 2003. In its Complaint, Siemens alleges counts of detrimental reliance, unjust enrichment,

abuse of right, and tort. Siemens argues that it purchased JCI equipment in reliance on the Parish's conduct and words, and that because of this reliance the Parish "is bound to compensate Siemens for the cost of the JCI proprietary equipment Siemens purchased for the [*10] Administration Building." Siemens contends that since it bid for the entire project, it is now obligated to perform the non-proprietary portion of the project and that it has suffered a loss due to the Parish's deletion of the proprietary portion of the project from its public bid.

On September 24, 2003, the Parish filed a Motion to Dismiss (Rec. Doc. No. 5) alleging improper venue, lack of subject matter jurisdiction, failure to join indispensable parties, improper party in interest, and failure to state a claim upon which relief can be granted. A hearing on the matter was set for October 15, 2003, at 9:30 a.m. and the Court heard oral argument. On January 9, 2004, this Court granted Jefferson Parish's motion and dismissed Siemens' claims with prejudice (Rec. Doc. No. 12).

Siemens filed a Motion to Amend and Supplement the Complaint on January 9, 2004, which was granted by Magistrate Judge Knowles on February 4, 2004. Siemens' Amended Complaint added a claim against the Parish for illegally re-bidding the HVAC Temperature Controls system and improperly awarding the separate contract to JCI. The Amended Complaint seeks not only to nullify the new separate contract between the Parish [*11]   and JCI, but also to compel the Parish to award that contract to Siemens and, alternatively, for damages including, but not limited to, the amount of Siemens' lost profits.

On March 15, 2004, Jefferson Parish filed the instant motion to dismiss on the grounds that JCI is an indispensable party under *Fed. R. Civ. P. 19* and that Siemens has no right to seek damages or injunctive relief. The motion was set for hearing on April 14, 2004. That day, prior to the Court hearing said motion, counsel informed the Court that a settlement had been reached. Consequently, the Court entered an Order of Dismissal (Rec. Doc. 35) with the caveat that the case could be reopened within ninety (90) days if settlement was not consummated. On June 4, 2004, plaintiff filed a Motion to Re-open Case (Rec. Doc. 37). Thereafter, the Court reopened this matter and reset the motion at bar for hearing on July 21, 2004.

## II. LAW AND ANALYSIS

Defendant's Motion to Dismiss is two-pronged. First, the Parish contends that Siemens' claims should be dismissed pursuant to *Rule 12(b)(7)* for failure to join an indispensable party, JCI, under *Rule 19*. Second, defendant claim [*12]   that, pursuant to *Rule 12(b)(6)*, plain-

tiff's claims should be dismissed for failure to state a claim upon which relief can be granted.

*A. Rule 19 and Compulsory Joinder*

[HN1] Joinder under *Federal Rule of Civil Procedure 19* is a two step process. First, the court must decide if the absent party is a necessary party to the action. *See Fed. R. Civ. P. 19(a)*. Second, if the absent party is a necessary party, but its joinder is not feasible, the court must decide whether the absent party is an "indispensable" party to the action under *Rule 19(b)*. *See Fed. R. Civ. P. 19(b)*.

[HN2] A party is "necessary" under *Rule 19(a)* if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, [*13] or otherwise inconsistent obligations by reason of the claimed interest.

*Fed. R. Civ. P. 19(a)*. [HN3] When a party is "necessary," but cannot be joined in the action, the court must determine "whether in equity and good conscience the action should proceed among the parties before it ..." *Fed. R. Civ. P. 19(b)*. *Rule 19(b)* provides the following four factors for a court to consider when making its determination:

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Fed. R. Civ. P. 19(b)*.

Professors Wright and Miller note that [HN4] compulsory joinder is an exception to the general practice of allowing the plaintiff to decide who shall be the parties

[*14] to a lawsuit. Although courts recognize a plaintiff's traditional prerogative, they should compromise plaintiff's choice when "significant countervailing considerations" make the joinder of particular absentees desirable. 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, § 1602 at 19. Those "countervailing considerations" include: (1) the present defendant's interests; (2) the interests of potential but absent parties; and (3) the court's social interest in the orderly, expeditious administration of justice. 7 Wright, Miller, & Kane, § 1602 at 19 (citing John W. Reed, *Compulsory Joinder of Parties in Civil Actions*, 55 Mich. L.Rev. 327, 330 (1957)). In *Schutten v. Shell Oil Co., 421 F.2d 869 (5th Cir. 1970)*, the United States Fifth Circuit Court of Appeals provided the following rationale for considering compulsory joinder:

> The plaintiff has the right to "control" his own litigation and to choose his own forum. This "right" is, however, like all other rights, "defined" by the rights of others. Thus the defendant has the right to be safe from needless multiple litigation and from incurring avoidable [*15] inconsistent obligations. Likewise the interests of the outsider who cannot be joined must be considered. Finally there is the public interest and the interest the court has in seeing that insofar as possible the litigation will be both effective and expeditious.

*Schutten, 421 F.2d at 873*.

Jefferson Parish's contends that JCI is an indispensable party under *Rule 19*. The Court agrees. [HN5] "In an action to set aside a contract, all persons who are parties to the action and are indispensable parties for the purposes of *Rule 19*." *Niagra Mohawk Power v. Tonawanda Band, 862 F. Supp. 995 (W.D. N.Y. 1994) aff'd, 94 F.3d 747 (2nd Cir. 1996)*. Federal courts consistently hold that a party to an agreement in dispute is an indispensable party under *F. Rule Civ. P. 19(a)* in a suit seeking to rescind, annul, or interpret that agreement. *See, e.g., Niagra Mohawk Power, 862 F. Supp. 995; Lomayaktewa v. Hathaway, 520 F.2d 1324,1325 (9th Cir. 1975) cert denied, 425 U.S. 903, 96 S. Ct. 1492, 47 L. Ed. 2d 752 (1976); Moore v. Ashland Oil, 901 F.2d 1445 (7th Cir. 1990);* [*16] *The Torrington Co. v. Youst, 139 F.R.D. 91 (Dist. S.C. 1990); Denkmann Assoc. v. International Paper Co., 132 F.R.D. 168 (M.D. La. 1990)*.

In the instant matter, JCI is so situated that disposition of the action in its absence may impair or impede its

2004 U.S. Dist. LEXIS 16153, *

ability to protect that interest, or leave the Parish subject to a substantial risk of incurring multiple or otherwise inconsistent obligations. JCI is under contract with the Parish to provide HVAC controls for the Administration Building. Siemens' Complaint seeks to take the contract away from JCI and perform the work itself. In essence, Siemens seeks a declaration that the contract between JCI and the Parish is null and void. The Court finds that JCI is an indispensable party that must be joined pursuant to *Rule 19*. However, the Court shall not dismiss plaintiff's claims under *Rule 12(b)(7)* unless JCI is shown not to be amenable to joinder. Rather, this Court shall compel the joinder of JCI under *Rule 19*.

*B. Rule 12(b)(6) and Failure to State a Claim Upon Which Relief Can be Granted*

*Federal Rule of Civil Procedure 12(b)(6)* [HN6] permits a defendant to seek dismissal [*17] of a complaint based on the "failure to state a claim upon which relief can be granted." To determine whether a motion to dismiss has merit, *Jefferson Parish v. Lead Ind. Ass'n. Inc., 106 F.3d 1245, 1250 (5th Cir.1997)* instructs that "the standard to be applied to a motion to dismiss under Federal *Rule 12(b)(6)* is a familiar one." When considering a motion to dismiss under *Rule 12(b)(6)*, district courts should construe the complaint liberally in favor of the plaintiff, assuming all factual allegations to be true and resolving any ambiguities and doubts in favor of the plaintiff. *Fernandez- Montes v. Allied Pilots Ass'n., 987 F.2d 278, 284 (5th Cir.1993)*; *see Leleux v. United States, 178 F.3d 750, 754 (5th Cir. 1999)*. [HN7] A complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997))*; *Leffall v. Dallas Independent School District, 28 F.3d 521, 524 (5th Cir.1994)*; *Fernandez- Montes, 987 F.2d at 284-85.* [*18] However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Fernandez-Montes, 987 F.2d at 284*; *Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir.1994)*.

[HN8] In Louisiana, public construction contracts are governed by the Louisiana Public Works Act ("LPWA" or the "Act"), *La. R.S. 38:2241 et seq.*, which provides that governing authorities entering into a contract for construction of a public work must furnish a statutory bond. *La. R.S. 38:2241(a)*. The LPWA has been interpreted by the Louisiana Supreme Court to limit claims to those who have a contractual relationship with either the contractor or a subcontractor. *Wilkin v. Dev Con Builders, Inc., 561 So.2d 66, 71 (La.1990)*; *Thurman v. Star Electric Supply, Inc., 307 So.2d 283 (La.1975)*; *American Creosote Works v. City of Monroe, 175 La.*

*905, 144 So. 612 (1932)*; *J. Watts Kearney & Sons v. Perry, 174 LA. 411, 141 So. 13 (1932)*. These provisions provide "certain classes of persons not enjoying privity of contract with the general contractor or with the [*19] governing authority a claim nevertheless against the general contractor and his surety and in some instances a claim against the governing authority itself." *Wilkin, 561 So.2d at 71*. "The provisions also protect the public authority complying with the requirements of the statutes from expenses caused by failure of the contractor [or subcontractor] to faithfully perform the contract." *Id.* (citing *Town of Winnsboro v. Barnard & Burk, Inc., 294 So.2d 867 (La. App. 2d Cir.), writ denied, 295 So.2d 445 (1974))*.

[HN9] "Public contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes." *State ex rel. Division of Admin. v. McInnis Bros. Constr., 97-0742 (La. 10/21/97), 701 So.2d 937, 944, 693 So. 2d 779*(quoting *Wilkin, 561 So.2d at 71*); *see also American Creosote Works v. City of Natchitoches, 182 La. 641, 162 So. 206 (1935)*; *Rester v. Moody & Stewart, 172 La. 510, 134 So. 690 (1931)*. [HN10] The LPWA is sui generis and provides exclusive remedies to parties in public construction work. *The Rowley Group v. Mid-Continent Casualty, Inc., 2004 U.S. Dist. LEXIS 5119, 2004 WL 614500 (E. D. La. 2004)*; [*20] *McInnis Brothers, 701 So.2d at 944* (citing *United States Pollution Control v. National Am. Ins. Co., 663 So.2d 119 (La. App. 3rd Cir. 1995))*.

*Louisiana Revised Statutes 38:2290-96* address the issue of closed specifications under the LPWA. *La. Rev. Stat. 38:2290* provides in pertinent part:

A. [HN11] No architect or engineer, either directly or indirectly, shall submit a closed specification of a product to be used in the construction of a public building or project, unless all products other than the one specified would detract from the utility of the building or except in those cases where a particular material is required to preserve the historical integrity of the building or the uniform appearance of an existing structure.

*La. Rev. Stat. 38:2290(A)*. *LPWA § 2293* addresses the effect of a closed specification violation:

[HN12] A. Any contract entered into in violation of any provision of this Part shall be null and void.

B. The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested [*21]

Case 2:09-md-02047-EEF-MBN    Document 1328-1    Filed 02/24/10    Page 20 of 41

Page 8
2004 U.S. Dist. LEXIS 16153, *

party has a right of action to bring suit for appropriate injunctive relief in the district court to nullify a contract entered into in violation of this Part.

C. If a judgment of nullity is rendered in an action brought by a district attorney or by the attorney general pursuant to Subsection B hereof, the district court may award a civil penalty not in excess of ten thousand dollars against each offending party.

*La. Rev. Stat. 38:2293.*

In the instant matter, Jefferson Parish contends that Siemens is precluded from recovery here under the LPWA. The Parish argues that Siemens, as an unsuccessful bidder on a public contract, was required to first seek injunctive relief when they knew or could have known that the contract was wrongfully awarded to JCI. *See Airline Construction Company, Inc. v. Ascension Parish School Board, 568 So.2d 1029, 1035 (La. 1990).* The Court disagrees with defendant's contentions.

*Louisiana Revised Statute 38:2293(B)*, provides in pertinent part:

... any interested party has a right of action to bring suit for appropriate injunctive relief in the district court to nullify a [*22] contract entered into in violation of this Part [regulations of closed specifications and exclusive distribution of materials].

*La. Rev. Stat. 38:2293(B).* In *B.F. Carvin Const. Co., Inc. v. Jefferson Parish Council, 707 So.2d 1326 (La. App. 5th Cir 1998)*, the court stated:

[HN13] ... seeking injunctive relief is not a prerequisite for the use of ordinary proceedings to seek nullification of a public works contract that has allegedly been wrongfully awarded.

*B.F. Carvin, 707 So.2d at 1327.* Indeed, "after a contract is awarded a party seeking to nullify must proceed by ordinary proceeding." *B.F. Carvin, 707 So.2d at 1328* (quoting *Benson Construction Co., Inc. v. City of Shreveport, 592 So.2d 1307 (La. 1992))*. This is the aggrieved party's "sole remedy." *See B.F. Carvin, 707 So.2d at 1328.* Thus, Siemens may state a claim for relief in an ordinary proceedings, such as this one.

Jefferson Parish also claims that Siemens cannot recover under the closed specification portion of the LPWA, *Louisiana Revised Statute 38:2290 et seq.* Specifically, [*23] the Parish avers that there is no provision in the closed specification section of the LPWA providing for damages. Again, the Court disagrees. [HN14] Although damages are not ordinarily available to an unsuccessful bidder unless it timely seeks to enjoin the wrongful award of the contract, an unsuccessful bidder may still be able to recover damages if it can specifically plead why a timely suit for injunction was impossible. *See B.F. Carvin, 707 So.2d at 1327* ("when damages are sought to be recovered by the unsuccessful bidder, a timely injunction must have been filed or the unsuccessful bidder must specifically plead why a timely suit for injunction was impossible."); *see also Airline Constr. Co., Inc. v. Ascension Parish School Bd., 568 So.2d 1029, 1035 (La. 1990).* Furthermore, the timeliness of a bidder's suit for injunctive relief depends upon the facts and circumstances of the particular case. *Webb Constr. v. City of Shreveport, 714 So.2d 119, 122 (La. App. 2 Cir. 1998).*

Here, Siemens has plead specifically why a timely suit to enjoin was not filed. Plaintiff's Amended Complaint states that Siemens sent a letter to the [*24] Parish architect after the Parish rejected Siemens bids and accepted the higher priced JCI bid asking the Parish to produce justification for the creation of a closed specification in favor of JCI on August 12, 2003, a mere six days after the Parish rejected Siemens' lower priced bids. The Parish architect never responded to Siemens' request. Thereafter, on August 28, 2003, Siemens attempted to obtain that same information from the Parish through a public records request. The Parish refused to produce any documents in response to Siemens' public records request. Then, Siemens again attempted to obtain the closed specification justification through a discovery request. The Parish refused to respond to Siemens' discovery request. Only after Siemens moved to compel the production of documents did the Parish produce any documents to Siemens, none of which indicated that the Parish properly created a closed specification in favor of JCI when it re-bid the HVAC portion of the Administration Building project.

The reason Siemens did not include in its original suit a challenge to the Parish's creation of a closed specification in favor of JCI and its award of the HVAC contract to JCI is that [*25] the Parish would not provide Siemens with documentation to determine whether justification for creating the closed specification existed. Indeed, Siemens states in its Amended Complaint why timely suit for injunction was impossible; therefore, plaintiff may seek damages here under the LPWA. *See B.F. Carvin, 707 So.2d at 1327.*

2004 U.S. Dist. LEXIS 16153, *

Finally, defendants aver that plaintiff's suit for injunction is now moot. Again, the Court disagrees. Contrary to the Parish's contention, it is not too late to nullify the contract the Parish illegally awarded to JCI and award that contract to Siemens. At present, the HVAC equipment that Siemens furnished and installed remains in the Administration Building. If the contract between the Parish and JCI is declared null and void and the contract is awarded to Siemens, the JCI equipment that Siemens has already installed into the Administration Building can stay in the building and plaintiff can prevent any further unnecessary delays and costs to the project. Thus, for reasons stated *supra,*

**IT IS ORDERED** that the Motion to Dismiss Combining Various Defenses (Rec. Doc. 30) filed by defendants is hereby **GRANTED IN PART** to the extent [*26]  that JCI is found to be an indispensable party under *Federal Rule of Civil Procedure 19*. Accordingly,

**IT IS ORDERED** that plaintiff shall join JCI as a defendant and attempt to commence service of process by September 12, 2004.

**IT IS FURTHER ORDERED** that defendants' Motion to Dismiss is hereby **DENIED IN PART** as to all other aspects.

Stanwood R. Duval Jr.

# EXHIBIT D





Analysis
As of: Feb 17, 2010

## DORE ENERGY CORPORATION VS. THE PROSPECTIVE INVESTMENT & TRADING COMPANY, LTD. and ATLANTIC AND GULF PETROLEUM COMPANY

### DOCKET NO. 2:05 CV 1657

### UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA, LAKE CHARLES DIVISION

*2008 U.S. Dist. LEXIS 1020*

**January 2, 2008, Decided**
**January 4, 2008, Filed**

**PRIOR HISTORY:** *Dore Energy Corp. v. Prospective Inv. & Trading Co., 2007 U.S. Dist. LEXIS 69037 (W.D. La., Sept. 12, 2007)*

**COUNSEL:** [*1] For Dore' Energy Corp, Plaintiff: Patrick Donavon Gallaugher, Jr, LEAD ATTORNEY, Richard E Gerard, Jr, Scofield Gerard et al, Lake Charles, LA.

For Prospective Investment & Trading Co Ltd, Atlantic & Gulf Petroleum Co, Defendants: Michael B Donald, LEAD ATTORNEY, Joshua A Norris, Lemle & Kelleher (HOU), Houston, TX; B Richard Moore, Jr, Ernest L Edwards, Jr, Lemle & Kelleher (NO), New Orleans, LA.

**JUDGES:** PATRICIA MINALDI, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** PATRICIA MINALDI

**OPINION**

### MEMORANDUM RULING

Before the court is a Motion to Dismiss For Failure to Join Indispensable Parties under *Federal Rule of Civil Procedure 12(b)(7)* [ doc. 74], filed by the defendants

("Prospective"). Dore filed a Motion in Opposition to Prospective's Motion to Dismiss [doc. 85]. Prospective filed a Reply [doc. 92]. Dore obtained leave of court to file an Exhibit in Opposition to Prospective's Motion [doc. 117].

### BACKGROUND

This court recently granted plaintiff Dore's Motion for Partial Summary Judgment, which essentially enforced the parties' own Settlement Agreement. [1] In the Settlement Agreement, which was executed in 2002, the parties agreed that in three years Prospective would release all acreage within the Retained Area that was [*2] not in "producing units." [2] This court first found that a contract between parties is law. [3] The court next found that the Settlement Agreement was unambiguous, and thus would interpret the Settlement Agreement by giving technical words a generally understood meaning within the oil and gas industry. [4] Next, the court interpreted "producing units" as it is generally understood in the oil and gas context--as the actual production of minerals in paying quantities in units formed by convention or order of a federal or state agency. [5] Thus, this court found that the only producing unit on January 28, 2005 was the Planulina 1 Sand Reservoir A Unit, and therefore ordered the release of the remainder of the land and the cancella-

2008 U.S. Dist. LEXIS 1020, *

tion of the Lease, in accordance with the Settlement Agreement. [6]

> 1   Mem. Ruling (Sept. 17, 2007) [doc. 72]. The Memorandum Ruling sets forth the facts underlying the dispute.
> 2   Pl.'s Ex. 4 ("Settlement Agreement").
> 3   Mem. Ruling (Sept. 17, 2007) [doc. 72].
> 4   *Id.*
> 5   *Id.*
> 6   Judgment on Mot. for Partial Summary Judgment (Sept. 17, 2007) [doc. 73].

## LAW

### *Rule 12(b)(7)*

Pursuant to *Federal Rule of Civil Procedure 12(b)(7)*, a party may make a motion for failure to join an indispensable party [*3] under *Federal Rule of Civil Procedure 19* as a defense at any pleading permitted under *Rule 7(a)*, [7] or by motion for judgment on the pleadings, or at the trial on the merits. *Fed. R. Civ. P. 12(h)(1)*. Although *Rule 12(h)(2)* permits parties to preserve the defense of failure to join an indispensable party until the close of a trial on the merits, many courts find that the absence of an indispensable party is such a significant defect that this defense may be raised for the first time even after trial to the trial court or on appeal. *See, e.g.,* 5C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1609 (3d ed. 1998). *Rule 12(b)(7)* motions to dismiss "should be made early in the proceedings," and when not made in a responsive pleading, the court should "in equity and good conscience consider the timing of the motion, and the reason for the delay in weighing prejudice to the moving party." *Ilan-Gat Engineers v. Antigua Int. Bank, 212 U.S. App. D.C. 188, 659 F.2d 234, 242, 1981 U.S. App. LEXIS 11086 (D.C. Cir. 1981)*. The burden of proof is on the party moving under *Rule 12(b)(7)* to "show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury [*4] to them or that the parties before the court will be disadvantaged by their absence." 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1359 (3d ed. 1998).

> 7   These pleadings include the complaint, the answer, and any replies. *FED. R. CIV. P. 7(a)*.

The Fifth Circuit also takes the approach that the failure to join an indispensable party should be timely raised. *Judwin Properties, Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 434 (5th Cir. 1992)*. In *Judwin*, the plaintiff

waited until appeal to the Fifth Circuit to raise the issue of indispensable parties, although the court observed that as the plaintiff, Judwin had the ability to choose which parties to sue. *Id.* Further, the court noted that Judwin had notice of indispensable parties long before appealing to the Fifth Circuit from the defendant's answer, which raised the issue of Judwin's failure to join. *Id.* The Fifth Circuit also cautioned that waiting until an unfavorable ruling to raise a *Rule 12(b)(7)* motion is an "offensive use" of *Rule 19*. *Id.*

### *Rule 19*

Under *Federal Rule 19(a)*, a party is necessary in two situations. First, a party is necessary only if "in the person's absence complete relief [*5] cannot be accorded among those already parties." *FED. R. CIV. P. 19(a)(1)*. *Rule 19(a)(1)* focuses on whether relief can be afforded to the existing parties in the absence of the party in dispute. *Schweyer Import-Schnittholz GmbH v. Genesis Capital Fund, LP, 220 F.R.D. 582, 586 (S.D. Iowa 2004)*. When the underlying dispute is a contract action, all parties to the contract are generally indispensable. *Harris Trust & Saving Bank v. Energy Assets Int'l., 124 F.R.D. 115, 117(E.D. La. 1989)*.

Second, a party is also necessary when the absent party claims a legally protected interest in the action. *FED. R. CIV. P. 19(a)(2)*. *Rule 19(a)(2)* focuses on the effects the litigation would have on the absent party. *Schweyer, 220 F.R.D. at 586*. *Rule 19(a)(2)* only applies when the absent party asserts the interest. *See U.S. v. Bowen, 172 F.3d 682, 689 (9th Cir. 1999)* (noting that it is not enough for a legally protected interest to exist, but that the absent party must actually assert that interest).

Pursuant to *FED. R. CIV. P. 19(b)*, if a party listed in *Rule 19(a)* cannot be made a party, the court must determine "whether in equity and good conscience the action should proceed among the parties before [*6] it, or should be dismissed, the absent person being thus as indispensable." The court considers:

> [f]irst, to what extent a judgment rendered in the party's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*FED. R. CIV. P. 19(b)*. The party asserting the *Rule 19* motion bears the burden of proof to establish that the parties are indispensable, and that the absent parties are unable to protect their interests. *Ferrofluidics Corp. v. Advanced Vacuum Components, 789 F. Supp. 1201, 1208 (D.N.H. 1992)*.

## ARGUMENTS

### Prospective's Arguments

Prospective filed this motion on October 1, 2007, after this court denied Prospective's Motion for Summary Judgment. * Prospective argues that although Prospective is the successor-in-interest to the original lessee of the Henshaw Lease and the current operator with respect to that lease, there are other parties on   [*7] the lessee side of the Lease who have an interest in the Lease. [9] In support of its motion, Prospective attached an affidavit by Adam Singer, the President of Prospective. [10] This affidavit states that there are various interests derivative of Prospective's interest in the Henshaw Lease owned by individuals and corporate entities outside of the named defendants. [11] Attachment B identifies thirty (30) alleged overriding royalty interest owners [12] with Louisiana addresses. Further, Mr. Singer states that at least thirteen (13) individuals and two (2) corporations have their domicile or principally reside in Louisiana. [13] Mr. Singer also states that production from the Henshaw Lease continues to be sold, and the amount paid to the overriding royalty interest holders since January 28, 2005 exceeds $ 1.4 million. [14]

8   Def.'s Mem. in Support of Mot. to Dismiss for Failure to Join Indispensable Parties [doc. 74].
9   Def.'s Mem. in Support of Mot. to Reconsider Partial Summary Judgment Order and Alternative Mot. to Certify Orders for Appeal Pursuant to *28 U.S.C. § 1292(b)* [doc. 75], at 5.
10   Def.'s Ex. A (Singer Aff.)
11   *Id.*
12   An overriding royalty is an assignment by a lessee of a right to receive   [*8] a share of production revenues from a lease. LA. REV. STAT. ANN. § 31.126.
13   Def.'s Ex. A (Singer Aff.)
14   *Id.* P 9.

Prospective cites several cases for the proposition that when the issue before the court involves the cancellation of a mineral lease, the working interest owners and royalty interest owners are indispensable parties. *See, e.g., Holland v. Questar Exploration & Production Co., 2006 U.S. Dist. LEXIS 9492, 2006 WL 461127 (W.D. La. 2006)* (Not reported in F. Supp.2d). Prospective argues that because this court terminated the Lease without

these other lessees being parties, this court's judgment must be vacated. Moreover, Prospective argues that the royalty owners cannot all be joined without destroying diversity jurisdiction. Accordingly, Prospective requests that this court vacate the partial summary judgment order because the overriding royalty owners are indispensable parties under *Federal Rule of Civil Procedure 19*, in whose absence cancellation or termination of the lease cannot be ordered.

### Dore's Arguments

First, Dore argues that Prospective's motion is untimely because although the failure to join indispensable parties cannot be waived, the court has discretion to deny untimely motions. Dore argues   [*9] that the court should, in its discretion, reject Prospective's motion because Prospective could have raised this defense throughout the two years of litigation, but deliberately avoided raising it until after this court issued an unfavorable decision. Dore argues that Prospective could have raised a *Rule 12(b)(7)* defense in its *Rule 12* Motion to Dismiss, filed in December 2005, in one of the seven briefs Prospective filed relating to its Cross-Motion for Summary Judgment, or during oral argument on summary judgment. Additionally, Dore observes that it attempted to procure information on royalty interests relating to the Lease via interrogatory on May 19, 2006. [15] Prospective refused to answer and directed Dore to the Cameron Parish public records. [16]

15   Def.'s Mem. in Opposition of Mot. to Dismiss for Failure to Join Indispensable Parties, at 6 n.9.
16   *Id.*

Second, Dore argues that overriding royalty owners are not indispensable parties because Dore sued Prospective to enforce the parties' voluntary Settlement Agreement, which released the non-unitized parts of the Lease. Thus, Dore argues that although the remedy is the termination of Prospective's lease, because the court was only asked   [*10] to enforce the Settlement Agreement, the only indispensable parties are the parties to the contract--Dore, Prospective, and Atlantic & Gulf. Dore argues that if Prospective could not have entered into the Settlement Agreement without consent of all of the overriding royalty interest holders, then Prospective tricked Dore by signing the Settlement Agreement in 2002.

Third, Dore argues that it has no obligation to sue overriding royalty interest holders, since it does not stand in privity of contract with them, and they were not parties to the mineral lease. Furthermore, Dore argues that Louisiana law is clear that overriding royalty owners are not indispensable parties even when the suit is to cancel a mineral lease for breach. *See Fontenot v. Sun Oil Co.,*

*257 LA. 642, 243 So. 2d 783 (La. 1971)*. In *Fontenot*, the plaintiff sued to cancel the mineral lease and joined several overriding royalty owners because he sought a judgment against them for reimbursement of production revenues they had received. *Id. at 784*. The court held that it was not necessary for the plaintiff to join the overriding royalty holders. *Id. at 786*. Dore argues that because it does not seek a judgment against the overriding royalty [*11] owners, it is not necessary for Dore to sue the overriding royalty owners. [17] Thus, because Dore does not plan to sue for reimbursement of lost royalty payments, Dore argues the overriding royalty owners cannot be indispensable parties.

> [17] Dore has agreed to continue pay overriding royalty holders who are duly recorded in Cameron Parish conveyance records. To do so, Dore has included a proposed amendment to the court's September 17, 2007 ruling. Pl.'s Mem. in Opposition of Mot. to Dismiss for Failure to Join Indispensable Parties [doc. 85], at 11. Dore has also executed a top lease. Pl.'s Proffer Exhibit List [doc. 135].

> Prospective argues in its Reply Memorandum that Dore cannot stipulate away the rights of indispensable parties by offering to pay their royalties. Prospective argues that Louisiana law does not permit such an assumption or novation of rights without the express consent of the obligee. *LA. CLV. CODE ANN. art. 1823*. Thus, Prospective argues that Dore would have to obtain the consent of the indispensable parties. Prospective also notes that because the royalty holders are not diverse, that this court has no jurisdiction to adjudicate their rights.

> Dore, in its Supplemental [*12] Memorandum in Opposition to Motion to Dismiss, cites to a treatise interpreting *FED. R. CIV. P. 19(b)*. 25 FED. PROC. § 59:116. This treatise states that a factor to consider under *Rule 19* is "the extent to which, by protective provisions of the judgment, by the shaping of relief, or by other measures, prejudice to present or absent parties may be lessened or avoided." *Id.* Dore also argues that Prospective gives no logical reason why Dore cannot legally bind itself to pay the overriding royalty owners. Dore notes that when it bought the lease from Samedan Oil Corporation, Prospective assumed the obligations to pay overriding royalties without asking consent.

Fourth, Dore also argues that Prospective's evidence is insufficient to prove overriding royalties. Prospective's evidence consists of an affidavit by Adam Singer, Prospective's President, that identifies persons to whom Prospective pays royalties. Dore argues that ownership of a mineral lease cannot be established by parol evidence, but instead requires a written contract. *See Scroggins, Inc. v. Emerald Exploration, 401 So.2d 680, 684 (La. App. 3d Cir. 1981)*.

Lastly, Dore argues that Prospective's position on indispensable parties   [*13] completely contradicts Prospective's earlier position in its Removal Petition, [18] which asserted complete diversity of parties. Moreover, when Prospective removed this suit to federal court in 2000, Prospective never suggested that overriding royalty owners had to consent to a release. Thus, in addition to the aforementioned legal principles Dore cites, Dore also urges this court to consider Prospective's position from 2000 until October 2007, which was that the parties in this suit are completely diverse.

> [18] As an exhibit, Dore attaches Prospective's Removal Petition, which requested removal from the 38th Judicial District to the Western District of Louisiana on November 21, 2000. In this petition, Prospective asserted jurisdiction pursuant to *28 U.S.C. § 1332(a)*, stating that the parties are "completely diverse" and the amount in controversy exceeds $ 75,000.

## ANALYSIS

Although the outcome of this court's Memorandum Ruling does ultimately result in the cancellation of a mineral lease, at the crux of this lawsuit is the enforcement of the parties' Settlement Agreement. The parties voluntarily entered into a valid Settlement Agreement, which Dore sued to enforce. In its September 17, 2007 [*14] Memorandum Ruling, this court interpreted the Settlement Agreement using principles of contractual interpretation, rather than the law governing the cancellation of a mineral lease. Accordingly, the only indispensable parties to this litigation are the parties to the contract--Dore, Prospective, and Prospective's co-defendant, Atlantic and Gulf Petroleum Company. *See Harris Trust & Saving Bank, 124 F.R.D. at 117*.

Even if the royalty owners are indispensable parties, this court has the discretion to bar Prospective's Motion to Dismiss for Failure to Join Indispensable Parties as untimely. Prospective had ample opportunity during the two years of litigating this case to raise the issue of indispensable parties before it received an unfavorable ruling. Even accepting Prospective's position at oral argument on this motion--that it never raised the issue of indispensable parties because it never foresaw that the lease could be cancelled as to "productive" land--surely Prospective was put on notice by Dore's Motion for Summary Judgment or at oral argument on the parties' Cross-Motions for Summary Judgment on August 31,

2007. The court issued its Memorandum Ruling two weeks later, giving Prospective  [*15] time to file a Motion to Dismiss for Failure to Join Indispensable Parties before receiving an unfavorable judgment. Thus, waiting until receiving an unfavorable ruling is an "offensive use" of *Rule 19*, and this court also denies Prospective's motion for undue delay.

Furthermore, this court also finds that Prospective acted in bad faith by failing to raise the issue of indispensable parties until after this court issued a ruling on the merits. Prospective was aware of the overriding royalty interests prior to this court's ruling on the merits, especially since by Prospective's own admission, Prospective paid $ 1.4 million in royalties from 2002 to 2005. Unlike in *Judwin*, where the plaintiff had access to the identities of the indispensable parties, here, Prospective and not Dore had access to the identities of the alleged indispensable parties. Prospective also refused to provide information to Dore on the royalty holders during discovery, leaving Dore unable to determine who these parties are and how they relate to the litigation. A finding of bad faith is further supported by Prospective's undue delay.

Lastly, even if the royalty owners are indispensable, Dore executed a top lease  [*16] that provides for the continued payment of royalties in the event that the Henshaw Lease is cancelled. [19] Prospective bears the burden of demonstrating that the top lease, if incorporated into the judgment, fails to protect the royalty owners. *See Ferrofluidics Corp., 789 F. Supp. at 1208*. Prospective has not demonstrated that Dore's proposed top lease fails to protect the royalty holders' interests. Prospective's Opposition to Dore's Proffer of Exhibit makes two points against the proffer of Dore's top lease. [20] First, Prospective argues that the document is nothing more than an attempt by Dore to prematurely "claim jump" because it provides no enforceable protection for the overriding royalty owners. Prospective does not cite any legal principles in asserting this argument. From the court's own research, top leases go into effect upon the expiration of the old lease. *See, e.g., Bares v. Stone Oil Corp., 510 So.2d 102, 105 (La. App. 3d Cir. 1987)*. Dore's proffered top lease, which is recorded in Cameron Parish, clearly states that it "shall not become effective unless or until the underlying Henshaw Lease terminates and is extinguished fully...." [21]

19    Pl.'s Proffer Exhibit List [doc.  [*17] 135].
20    [doc. 148].
21    Pl.'s Proffer Exhibit List [doc. 135].

Second, Prospective argues that this court should not consider the top lease because Dore acted in bad faith by waiting until the day of oral argument to enter into the agreement and failed to provide Prospective with notice

prior to oral argument. Although Dore should have provided opposing counsel with notice of the top lease and an opportunity to respond at oral argument, this disadvantage was cured by the court deferring its ruling until Prospective submitted a supplemental memorandum on the top lease. Thus, even if the royalty interest holders are indispensable parties to a lawsuit enforcing a Settlement Agreement, this court finds that Prospective has not met its burden of proving that Dore's proffered top lease fails to protect the overriding interest holders.

Because the disposition of this issue may materially advance the ultimate termination of the litigation, this court also certifies the Order on Prospective's Motion to Dismiss for Failure to Join Indispensable Parties for immediate appeal to the Fifth Circuit, pursuant to *28 U.S.C. § 1292(b)*; accordingly,

IT IS ORDERED that Prospective's Motion to Dismiss for Failure  [*18] to Join Indispensable Parties is hereby DENIED;

IT IS FURTHER ORDERED that the Order on Prospective's Motion to Dismiss for Failure to Join Indispensable Parties is hereby certified for immediate appeal to the Fifth Circuit, pursuant to *28 U.S.C. § 1292(b)*;

IT IS FURTHER ORDERED that the Order on the parties' Cross-Motions for Summary Judgment, [doc. 72] is also hereby certified for immediate appeal to the Fifth Circuit, pursuant to *28 U.S.C. § 1292(b)*.

Lake Charles, Louisiana, this 2 day of January 2008

/s/ Patricia Minaldi

PATRICIA MINALDI

UNITED STATES DISTRICT JUDGE

## JUDGMENT

In accordance with the corresponding Memorandum Ruling, for the reason set forth therein, based on the pleadings, affidavits, and certified documents submitted by the parties,

IT IS ORDERED that Prospective's Motion to Dismiss for Failure to Join Indispensable Parties, [doc. 74], is hereby DENIED;

IT IS FURTHER ORDERED that the Order on Prospective's Motion to Dismiss for Failure to Join Indispensable Parties is hereby certified for immediate appeal to the Fifth Circuit, pursuant to *28 U.S.C. § 1292(b)*;

IT IS FURTHER ORDERED that the Order on the parties' Cross-Motions for Partial Summary Judgment, [doc. 73], is also  [*19] hereby certified for immediate

2008 U.S. Dist. LEXIS 1020, *

appeal to the Fifth Circuit, pursuant to *28 U.S.C. § 1292(b)*.

Lake Charles, Louisiana, this 2nd day of January, 2008.

/s/ Patricia Minaldi

PATRICIA MINALDI

UNITED STATES DISTRICT JUDGE

# EXHIBIT E



LEXSEE 1992 U.S. DIST. LEXIS 9718



Cited
As of: Feb 12, 2010

**RAGAN HENRY BROADCAST GROUP, INC. and U.S. RADIO GROUP, INC. and RAGAN A. HENRY, Plaintiffs v. ROBERT J. HUGHES, Defendant**

**CIVIL ACTION No. 91-CV-6157**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1992 U.S. Dist. LEXIS 9718*

**June 18, 1992, Decided
June 19, 1992, Filed; June 22, 1992, Entered**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant, an employee, moved to join other employers as indispensable parties under *Fed. R. Civ. P. 19* and to disqualify a law firm from further representation in the case. Plaintiff, an employer, sought a declaratory judgment that the employers terminated the employee's employment properly, for cause, and in accordance with their agreement.

**OVERVIEW:** The employer hired the employee and the employee signed an affirmation agreement, which provided that the employment was subject to termination with cause. The employer fired the employee and sought declaratory judgment that the termination was for cause and that they did not owe the employee compensation. The employee counterclaimed for breach of contract, bad faith, unfair dealing, and defamation, and he sought injunctive relief. The employee moved to join other employers as indispensable parties under *Fed. R. Civ. P. 19* and to disqualify a law firm from further representation in the case. The court granted the relief requested. Because the other entities were parties to the contract at the core of the dispute and because their non-joinder could result in redundant and inconsistent litigation, they should be joined as indispensable parties. The law firm's representation of the employers would have been directly adverse to the employee, with whom the firm had confidential communications. Also, members of the law firm were likely to be called as witnesses at trial. Thus, the professional rules impelled the court to disqualify them from further representation of the employers.

**OUTCOME:** The court granted the employee's motion to join other employers as indispensable parties and to disqualify a law firm from further representation in the case.

**LexisNexis(R) Headnotes**

*Civil Procedure > Parties > Joinder > Indispensable Parties*
*Civil Procedure > Parties > Joinder > Necessary Parties*
[HN1] Under *Fed. R. Civ. P. 19(a)*, a person whose joinder does not deprive the court of jurisdiction shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons

1992 U.S. Dist. LEXIS 9718, *

already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Generally, where rights sued upon arise from a contract, all parties thereto must be joined.

*Civil Procedure > Parties > Joinder > Necessary Parties*

[HN2] It is the purpose of *Fed. R. Civ. P. 19(a)* to avoid unnecessary multiple litigation, to provide complete relief to parties before court, and to protect rights and interests of absent parties.

*Civil Procedure > Counsel > General Overview*
*Legal Ethics > Client Relations > Conflicts of Interest*

[HN3] See Rules of Professional Conduct, Rule 1.9(a), 204 Pa. Code § 81.4.

*Criminal Law & Procedure > Counsel > Joint Representation*
*Legal Ethics > Client Relations > Conflicts of Interest*
*Legal Ethics > Client Relations > Effective Representation*

[HN4] Conflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties. Although joint representation is permissible, under Rule of Professional Conduct 1.7(b), when the clients relationship places them on opposite side in litigation on the matter in which the attorney advised them, the prohibition against representation of opposing parties, under Rule 1.7(a) prevails. A substantial relationship between successive representations often triggers concerns about divided loyalties and conflict of interest. To determine whether there is a substantial relationship, courts have identified three factors: (a) What is the nature and scope of the prior representation at issue? (b) What is the nature of the present lawsuit against the former client? (c) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation.

*Legal Ethics > Client Relations > Conflicts of Interest*

[HN5] Under Rule of Professional Conduct 3.7, 204 Pa. Code § 81.4, a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called

as a witness unless precluded from doing so by Rule 1.7 or 1.9.

*Legal Ethics > Client Relations > Conflicts of Interest*

[HN6] Absent extraordinary precautions to cordon off dealings with a client from the rest of the firm the firm must be disqualified if any of its members are, under Rule of Professional Conduct 1.10 Imputed Disqualification, 204 Pa. C. S. § 81.4.

*Legal Ethics > Client Relations > Conflicts of Interest*

[HN7] See Rule of Professional Conduct 1.10, 204 Pa. Code § 81.4.

*Criminal Law & Procedure > Counsel > Right to Counsel > General Overview*
*Legal Ethics > Client Relations > Conflicts of Interest*

[HN8] Conflicts of interest, including potential conflicts of interest, are a threat not only to the rights and interests of clients and attorneys, but also to the integrity of the court. For this reason, the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

**COUNSEL:** [*1]  For RAGAN HENRY BROADCAST GROUP, INC., RAGAN A. HENRY, PLAINTIFFS: DAVID M. DORET, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, S.E. COR. 15TH & CHESTNUT STS., 12TH FL., PACKARD BLDG., PHILA, PA 19102, USA, RAGAN HENRY BROADCAST GROUP, INC., [PRO SE], 1207 CHESTNUT STREET, 2ND FLOOR, PHILADELPHIA, PA 19107. For US RADIO GROUP, INC., PLAINTIFF: DAVID M. DORET, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, S.E. COR. 15TH & CHESTNUT STS., 12TH FL., PACKARD BLDG., PHILA, PA 19102, USA, US RADIO GROUP, INC., [PRO SE], 1207 CHESTNUT STREET, 2ND FLOOR, PHILADELPHIA, PA 19107.

For ROBERT J. HUGHES, DEFENDANT: MAGSOOD MIR, 1818 N STREET NW, WEST LOBBY, WASHINGTON, DC 20036, USA, HERBERT R RUBENSTEIN, 1818 N STREET, NW, WEST LOBBY, WASHINGTON, DC 20036-2406, USA.

1992 U.S. Dist. LEXIS 9718, *

For ROBERT J. HUGHES, COUNTER-CLAIMANT: MAGSOOD MIR, 1818 N STREET, NW, WEST LOBBY, WASHINGTON, DC 20036, USA.

For RAGAN HENRY BROADCAST GROUP, INC., COUNTER-DEFENDANT: DAVID M. DORET, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, S.E. COR. 15TH & CHESTNUT STS., 12TH FL., PACK-ARD BLDG., PHILA, PA 19102, USA. For RAGAN A. HENRY, COUNTER-DEFENDANT: RAGAN A. HENRY, 505 WALDRON T ERRACE, MERION, PA 19066.

**JUDGES:** Gawthrop

**OPINION BY:** ROBERT S. GAWTHROP, III

**OPINION**

*MEMORANDUM AND* [*2] *ORDER*

Gawthrop, J.

Plaintiffs bring this diversity case, under *28 U.S.C. §1332* and *28 U.S.C. §2201*, asking for declaratory judgment that they terminated defendant's employment properly, for cause, in accordance with their agreement of February 15, 1989. There are two motions pending. Defendant has moved to join the other Henry partnerships which employed him as indispensable parties, under *Fed.R.Civ.P. 19*, and to disqualify the law firm of Wolf, Block, Schorr & Solis-Cohen from further representation in this case. Upon the following reasoning, I shall grant both motions.

BACKGROUND

In February, 1989, plaintiff Ragan Henry ("Henry") hired defendant, Hughes, to be President of Ragan Henry Broadcast Group ("RHGB") and U.S. Radio Group ("USRG") and Chief Operating Officer of several other partnerships affiliate with Mr. Henry. In December 1989, Mr. Hughes signed an "affirmation agreement" under which "(a) The employment was subject to termination with cause, provided six months compensation was to be paid to Hughes pursuant to the Agreement. (b) Hughes was subject to termination with cause and without compensation, provided there existed 'misconduct having a material adverse [*3] effect on the business of the Partnerships." (Complaint P10). The employment contract was to run until December 31, 1994. However, on February 8, 1991, plaintiffs fired defendant from his various positions in the Henry corporations and partnerships. Plaintiffs seek declaratory judgment that the termination was for cause and that they do not owe Mr. Hughes compensation. Mr. Hughes has counterclaimed for breach of contract, bad faith, unfair dealing, and defamation, and he seeks injunctive relief.

The case is currently before the court on two issues: (1) whether the affiliated Henry partnerships, in which Mr. Hughes served, should be indispensable parties under *Fed.R.Civ.P. 19*, and *(2)* whether the law firm of Wolf, Block, Schorr & Solis-Cohen, legal counsel to the Henry organizations, should be disqualified for conflict of interest. Hughes alleges that in its capacity as corporate counsel and for breach of confidentiality, the law firm allegedly advised Hughes as a client on a number of business deals and become privy to personal, confidential matters of his employment and finances which would preclude their representing the parties adverse to him in this litigation.

DISCUSSION

[*4] 1. *Joinder of Indispensable Party*

Defendant Hughes seeks to join Communications Management National, L.P., Ragan Henry National Radio, L.P., Ragan Henry Communications, L.P., and U.S. Radio, L.P. as indispensable plaintiffs to this law suit. [HN1] Under *Fed.R.Civ.P. 19(a)*, a person whose joinder does not deprive the court of jurisdiction

> shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*Fed.R.Civ.P. 19(a)*

Generally, where rights sued upon arise from a contract, all parties thereto must be joined. *See Ward v. Deavers, 203 F.2d 72 (D.C.Cir. 1953)*; *Japan Petroleum Co (Nigeria) Ltd. v. Ashland Oil, 456 F.Supp. 831, 836 (1978)*. [*5] Here, the proposed indispensable parties were identified as the defendant's employer in the contested employment contract. The employment contract of February 15, 1989, states that Hughes "will be employed by any one and all of Communications Management National, L.P., Ragan Henry National Radio, L.P., Ragan Henry Communications Group, L.P." By the December 26, 1989, letter affirming the contract, "U.S. Radio, L.P. is inserted as a party to the agreement." This is a dispute over Mr. Hughes's employment by Ragan Henry and his

affiliates under the February 15, 1989 agreement. Ra-
gan Henry controls these entities, which defendant avers,
were his composite employers under the contract. Thus,
it appears that under the general rule, complete litigation
of this employment dispute would call for the presence
of the four employer-plaintiffs. Mr. Hughes's counter-
claims run against his employers for wrongful discharge,
breach of contract, and defamation, which would also
make them indispensable parties to the suit.

Defendant also argues that if these entities are not
joined as plaintiffs, he will be subject to the risk of mul-
tiple or inconsistent obligations. [HN2] It is the purpose
of *Rule* [*6] *19* "to avoid unnecessary multiple litiga-
tion, to provide complete relief to parties before court,
and to protect rights and interests of absent parties."
*CBS, Inc. v. Film Corp. of America, 545 F.Supp. 1382
(E.D.Pa. 1982)*. If all of his employers under the contract
are not party to the suit, he would have to bring separate,
parallel actions against each party to the contract to re-
ceive complete relief and would expose himself to mul-
tiple claims by the other non-party employers, resulting
in duplicative litigation and the risk of inconsistent
judgments, precisely the result *Rule 19* w as meant to
avoid.

Plaintiffs assert that because these other entities are
under the control of the existing plaintiffs, as the general
partners in the proposed indispensable parties, joinder is
unnecessary. However, where, as here, the entities are
separately parties to an employment contract, and the
central issue to be decided is defendant's fulfillment of
his employment obligations to each of them under the
contract, the presence of those entities is necessary to
assure the complete adjudication of defendant's counter-
claim.

Defendant avers, without objection from the plain-
tiffs, [*7] that the joinder of these entities will not
deprive this court of jurisdiction, here based on diversity
of citizenship. Thus, because these other entities were
parties to the contract at the core of this dispute and be-
cause their non-joinder could result in redundant and
inconsistent litigation, they should be joined as indis-
pensable parties under *Rule 19*.

2. *Motion to Disqualify the Law Firm of Wolf,
Block, Schorr and Solis-Cohen from Further Represen-
tation of the Plaintiffs*

Defendant Hughes argues that the law firm, which
served as corporate counsel to various of the plaintiff
entities, should be disqualified because of conflict of
interest and breach of its duty of loyalty to him. Hughes
states that the law firm, of which Henry is a partner, was
in a *de facto* attorney-client relationship with him.
During the course of this relationship, Hughes says, the
law firm became privy to the details of his business deci-

sions, which he had taken on the advice of the law firm,
and the law firm had advised him on aspects of the dis-
puted employment contract as well as his stock options
and personal finances. (Hughes Aff., Feb. 21, 1992,
P7). Hughes also avers that Henry told [*8] him that
he did not need outside counsel in his dealings with the
plaintiffs because the law firm, and he, in particular,
could advise him. (Hughes Aff., Feb. 21, 1992, P10).
Finally, because the key budgeting decision which led to
his dismissal was based on advice from the law firm,
which the law firm told him to follow, Hughes says that
the members of the law firm's corporate and tax sections
are likely to be witnesses at the trial, thus giving a further
reason for disqualification.

Under the Local Rules of Civil Procedure, Rule 14,
"The Rules of Conduct adopted by this court are the rules
of Professional Conduct adopted by the Supreme Court
of Pennsylvania." [1] [HN3] The Rules of Professional
Conduct, 1.9

> A lawyer who has formerly
> represented a client in a matter shall not
> thereafter: (a) represent another person in
> the same or a substantially related matter
> in which that person's interests are mate-
> rially adverse to the interests of the former
> client unless the former client consents
> after a full disclosure of the circumstances
> and consultation; or (b) use information
> relating to the representation to the disad-
> vantage of the former client except as
> Rule 1.6 would permit with respect [*9]
> to a client except as Rule 1.6 would per-
> mit with respect to a client or when the
> information has become generally known.

Rules of Professional Conduct, Rule 1.9(a), 204 Pa.Code
§ 81.4.

> 1    The defendant avers, and plaintiffs do not
> dispute, that the Rules of Professional Conduct
> applicable to this issue are the same for Delaware
> law, which is the law governing the contract.
> Thus, the choice of law would not affect the re-
> sult of this analysis.

[HN4] "Conflicts of interest arise whenever an at-
torney's loyalties are divided, and an attorney who
cross-examines former clients inherently encounters di-
vided loyalties." *United States v. Moscony, 927 F.2d
742, 751 (3d Cir. 1991)* (citations omitted). Here, the
law firm was corporate counsel, acting as attorney to
both the plaintiffs and defendant, for example, on the
disputed contract. At that time, this joint representation

Case 2:09-md-02047-EEF-MBN   Document 1328-1   Filed 02/24/10   Page 34 of 41

Page 5
1992 U.S. Dist. LEXIS 9718, *

may not have been problematic, although I today need not and do not decide that question. However, as the employment relationship [*10] unraveled, the clients' interests devolved into the adverse. Although joint representation is permissible, under Rule of Professional Conduct 1.7(b), when the clients relationship places them on opposite side in litigation on the matter in which the attorney advised them, the prohibition against representation of opposing parties, under Rule 1.7(a) prevails. "A substantial relationship between successive representations often triggers concerns about divided loyalties and conflict of interest. *United States v. Moscony, 927 F.2d 742, 750 (3d Cir. 1991)* (citations omitted).

To determine whether there is a substantial relationship, courts have identified three factors: (a) What is the nature and scope of the prior representation at issue? (b) What is the nature of the present lawsuit against the former client? (c) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation. *INA Underwriters Ins. v. Nalibotsky, 594 F.Supp. 1199, 1206 (E.D.Pa. 1984).* [*11]

a. Nature and Scope of Prior Representation

Here, Hughes argues that the law firm, as corporate counsel to plaintiffs, gave him advice in his corporate capacity, and he further argues that his communications with corporate counsel are privileged under Rule of Professional Conduct 1.13 and 1.6. Here, the defendant had confidential communications with the corporate counsel and Mr. Henry, in both his business and personal decision-making. (Hughes Aff., Feb. 21, 1992, P7) Henry told Hughes to rely on his advice and the advice of the law firm in making decisions about the very employment contracts that are at the core of this case. (Hughes Aff., Feb. 21, 1992, P10). In course of his tenure as President of the plaintiff entities, he confided in corporate counsel and relied upon their advice in his business decisions, which will now be at issue in determining whether he was fired with or without cause. (Hughes Aff., Feb. 21, 1992, P3). Indeed, many of the meetings were held at the law firm's offices and several documents central to the case are on law firm stationery. (Hughes Aff., Feb. 21, 1992, P4, Def.Ex. 3). Hughes says that the law firm's advice goes to the heart of the very [*12] budgeting and business decisions for which he allegedly was fired. (Hughes Aff., Feb. 21, 1992, P3). The law firm also gave Hughes and his wife advice on their stock option investments made through the Henry affiliates. (Def. Ex. 6). Thus, the law firm's representation is inextricably intertwined with the dispute.

b. The Nature of the Present Case

The present case focuses on Hughes's contract and his performance as president of the plaintiff entities. Because of the plaintiff's status as a partner in the law firm and because the key budgeting decision which allegedly led to his dismissal arose out of advice from the law firm, the law firm is directly and intimately involved in central issues of the case. In fact, it is likely that the law firm will be called as a witness.

C. Relevance of Confidences Disclosed in Earlier Representation to Present Action

Here, the law firm was involved not only in the decision-making process but also in advising the now-adversary party on the decisions and contract which are the subject of the law suit. The exhibits submitted by defendant in support of this motion, document dealings during which the defendant confided in the law firm his [*13] concerns and his thought processes to which the law firm would not have been privy but for its confidential relationship with the defendant. The defendant would have been unlikely to have discussed his personal financial decisions on stock options or his contractual agreements with the law firm if their relationship had been adversary or if he had not been encouraged to do so by the assurances of Henry that the law firm would advise him.

Thus, all three factors point to the existence of a confidential relationship between Hughes and the law firm, which under the Rules of Professional Conduct, would preclude the law firm from representing his adversary in this law suit.

The likelihood of the law firm's being called as a witness in this case, in addition to being an independent basis for disqualification, lends further support to the conclusion that the law firm's participation as plaintiffs' counsel in this law suit is improper. [HN5] Under Rule of Professional Conduct 3.7, "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be [*14] called as a witness unless precluded from doing so by Rule 1.7 or 1.9." Here, the representation would violate 1.9, because of the former confidential relationship between Hughes and the law firm, thus the law firm may not represent the plaintiffs against Hughes. It would also violate Rule 1.7 because the earlier joint representation of the company and principals in business decisions central to this suit.

Although the law firm asserts that a different department or different lawyers will be involved in the case, the involvement of the firm's corporate and tax sections pervades the central issues in this lawsuit. [HN6] Absent extraordinary precautions to cordon off dealings

1992 U.S. Dist. LEXIS 9718, *

with this client from the rest of the firm -- precautions which based on the evidence before the court do not appear to have been made, the firm must be disqualified if any of its members are, under Rule of Professional Conduct 1.10 Imputed Disqualification, 204 Pa.C.S. § 81.4. [2] In this litigation, the law firm's corporate and tax attorneys who advised the defendant would be directly adverse to that of the defendant, thus by the rule of imputed disqualification the entire firm would be disqualified.

> 2   [HN7] Rule 1.10 (a) reads "while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, or 2.2."

[*15]   [HN8] Conflicts of interest, including potential conflicts of interest, are a threat not only to the rights and interests of clients and attorneys, but also to the integrity of the court. *United States v. Dolan, 570 F.2d 1177, 1184 (3d Cir. 1978)*. For this reason, the District Court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon

into an actual conflict as the trial progresses." *Wheat v. United States, 486 U.S. 153, 163 (1988)*.

CONCLUSION

Because the law firm's representation of plaintiffs would be directly adverse to the defendant with whom the firm had numerous confidential communications, in his personal and corporate capacities, and because members of the law firm are likely to be called as witnesses at trial, the professional rules impel my disqualifying them from further representation of the plaintiffs in this case.

An order follows.

*ORDER*

AND NOW, this 18th day of June, 1992, upon consideration of defendant's Motion [*16]   to Join Indispensable Parties, under *Fed.R.Civ.P. 19*, and defendant's Motion to Disqualify the law firm of Wolf, Block, Schorr & Solis-Cohen from Further Representation of Plaintiffs, and the responses thereto, it is ORDERED that both motions are GRANTED.

BY THE COURT:

Robert S. Gawthrop, III, J.

# EXHIBIT F



LEXSEE 2002 U.S. DIST. LEXIS 22700

**GENE ALONZO, ET AL. VERSUS STATE OF LOUISIANA, THROUGH THE
DEPARTMENT OF NATURAL RESOURCES, AND NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA**

**CIVIL ACTION 02-2792 SECTION "T"(5)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
LOUISIANA**

*2002 U.S. Dist. LEXIS 22700*

**November 21, 2002, Decided
November 21, 2002, Filed; November 22, 2002, Entered**

**DISPOSITION:**     [*1]   Motions to Remand
GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff property owners
obtained a judgment against defendants, the State of
Louisiana regarding a takings claim. The property own-
ers then filed a suit for declaratory judgment under in
state court to determine whether defendant, the state's
insurer, was contractually obligated to pay some or all of
the judgments. The insurer removed the case to federal
district court; the property owners and the state moved to
remand to state court.

**OVERVIEW:** The insurer argued that the State of Loui-
siana was fraudulently joined. The district court disa-
greed. The property owners sought a declaration of the
specific coverage issues which existed not only between
the state and the insurer but they also sought a particular
finding as to the amount of insurance coverage available
to them. The state, therefore, was clearly an indispensa-
ble party to the proceeding which sought a determination
of coverage issues and rights and responsibilities under a
contract to which the state was a party. The state adopted
this same argument in support of its motion to remand.
Further, there was the issue of whether the state com-
plied with its obligations under the policy. The district
court rejected the insurer's argument that the state was
not a proper party because it did not waive its sovereign

immunity. The district court denied imposing on the in-
surer costs or attorney's fees in conjunction with the mo-
tion to remand.

**OUTCOME:** The district court granted the motions to
remand.

**LexisNexis(R) Headnotes**

*Civil Procedure > Removal > Basis > Diversity of Citi-
zenship*
*Civil Procedure > Removal > Postremoval Remands >
Jurisdictional Defects*
*Civil Procedure > Removal > Postremoval Remands >
Motions for Remand*
[HN1] In a motion to remand pursuant to *28 U.S.C.S. §
1447*, a removing party bears the burden of establishing
federal removal jurisdiction.

*Civil Procedure > Declaratory Judgment Actions >
General Overview*
*Governments > State & Territorial Governments >
Claims By & Against*
[HN2] The Louisiana Declaratory Judgment Act is to be
broadly construed and grants plaintiffs a cause of action
against the state.

2002 U.S. Dist. LEXIS 22700, *

*Insurance Law > Claims & Contracts > Declaratory Relief > Jurisdiction*
*Insurance Law > Claims & Contracts > Declaratory Relief > Parties*
*Torts > Vicarious Liability > Corporations > General Overview*
[HN3] A claimant, an insured, and an insurer are all indispensable parties in actions which seek to determine whether an insurer is liable for judgments rendered against its insured in favor of a claimant.

*Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects*
*Civil Procedure > Removal > Postremoval Remands > Motions for Remand*
[HN4] The question in applying *28 U.S.C.S. § 1447(c)* is whether a defendant had objectively reasonable grounds to believe the removal was legally proper.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects*
[HN5] A motion to remand a case to state court on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal. *28 U.S.C.S. § 1447(c)*.

*Admiralty Law > Practice & Procedure > Jurisdiction*
*Civil Procedure > Removal > Postremoval Remands > Motions for Remand*
*Civil Procedure > Parties > General Overview*
[HN6] In a motion to remand pursuant to *28 U.S.C.S. § 1447*, the burden of persuasion placed upon those who cry fraudulent joinder is indeed a heavy one. Where charges of fraudulent joinder are used to establish federal jurisdiction, the removing party has the burden of proving the claimed fraud. In order to establish that a plaintiff fraudulently joined an in-state defendant so as to preclude exercise by a federal court of diversity jurisdiction, the removing party must show that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

*Civil Procedure > Parties > Joinder > Fraudulent Joinder*
*Civil Procedure > Joinder of Claims & Remedies > Claims*

*Civil Procedure > Trials > Jury Trials > Province of Court & Jury*
[HN7] Claims of fraudulent joinder to defeat diversity jurisdiction should be resolved in a summary judgment-like procedure whenever possible. Although a district court may "pierce the pleadings" to examine affidavits and other evidentiary material, it should not conduct a full evidentiary hearing on questions of fact, but rather should make a summary determination by resolving all disputed facts in favor of a plaintiff.

**COUNSEL:** For GENE ALONZO, plaintiff: Glenn E. Diaz, David Vidrine, Carlos Alberto Zelaya, II, Law Offices of Glenn E. Diaz, J. Wayne Mumphrey, Law Office of J. Wayne Mumphrey, Chalmette, LA.

For NATIONAL UNION FIRE INSURANCE OF PITTSBURGH, PA, defendant: David F. Bienvenu, Shawn L. Holahan, Hoffman, Siegel, Seydel, Bienvenu, Centola & Cordes, APLC, New Orleans, LA.

**JUDGES:** G. THOMAS PORTEOUS, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** G. THOMAS PORTEOUS, JR.

**OPINION**

Before the Court are two Motions to Remand filed on behalf of the Plaintiffs, Gene Alonzo, et al., and on behalf of the Defendant, State of Louisiana, through the Department of Natural Resources. The Court, having considered the arguments of counsel, the evidence presented, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

**ORDER**

**I. BACKGROUND:**

On or about May 2, 1996, the Plaintiffs, Gene Alonzo, et al., filed a civil action in the 34th Judicial District Court, Parish of St. Bernard, State of Louisiana against the State of Louisiana [*2] seeking, *inter alia,* damages or compensation for the "taking" of their property and/ or property interests. Judgments in favor of the Plaintiffs' individual claims have been rendered by the trial court against the State of Louisiana in this suit. On January 11, 2002, the trial court rendered a money judgment in favor of the Plaintiffs on their individual claims against the State. The State suspensively appealed the money judgment of January 11, 2002. Most of the remaining claims asserted by Plaintiffs were tried between January 22, 2002 and February 1, 2002. On February 21, 2002, the trial court, following a trial on the merits, rendered a money judgment in favor of Plaintiffs and against the State. All claims were merged into the judg-

2002 U.S. Dist. LEXIS 22700, *

ment rendered on February 21, 2002. The State did not apply for a new trial or seek post-trial modification of the money judgment rendered on February 21, 2002. The delays for seeking a new trial or a suspensive or devolutive appeal of the February 21, 2002 judgment have expired. The judgment, therefore, is a definitive judgment for which no right to appeal exists under Louisiana law. The trial on the merits of the remaining Plaintiffs' claims was [*3]  conducted between March 21 and March 22, 2002. The decision on the merits was, at the time of the petition, under advisement by the trial court. No individual claims remain to be considered on the merits. The only remaining issue pertains to quantifying the costs and expenses which were awarded to the Plaintiffs.

The Plaintiffs filed the current suit for Declaratory Judgment under Louisiana law on August 15, 2002 in the 34th Judicial District Court, Parish of St. Bernard, State of Louisiana. The Plaintiffs allege the State's insurer, National Union Fire Insurance Company of Pittsburgh, PA, hereinafter "National Union," is contractually obligated to pay some or all of the money judgments rendered in favor of Plaintiffs on February 21, 2002.

The common issues of fact and law, common to all Plaintiffs and Defendants described, and/ or issues for which Declaratory Judgment is sought include:

a. Whether the State complied with all of its obligations arising under the policy(ies) of insurance issued to it by National Union;

b. Whether the policy(ies) of insurance issued to the State by National Union provide coverage for sum or all of the money judgment(s) rendered in favor of [*4]  the Plaintiffs against the State in the *Alonzo* lawsuit; and

c. The amount and scope of the coverage provided to the State by its insurer, National Union, with respect to the individual claims of the Plaintiffs and/ or money judgment(s) in favor of Plaintiffs.

## II.  ARGUMENTS  OF  THE  RESPECTIVE PARTIES:

### A. Arguments on Behalf of Gene Alonzo, et al., in Support of Motion to Remand:

The Plaintiffs argue that the State of Louisiana is an indispensable party to the litigation and the case must be remanded to the 34th Judicial District Court, Parish of St. Bernard, State of Louisiana because there is no removal jurisdiction. [HN1] The removing party bears the burden of establishing removal jurisdiction and the Defendant, National Union, has failed to carry its burden. There is no diversity of citizenship. The Plaintiffs are all citizens of Louisiana and the State is a named party. [HN2] The Louisiana Declaratory Judgment Act is to be broadly construed and grants the Plaintiffs a cause of action against the State. In this case, the Plaintiffs seek a declaration of the specific coverage issues which exist not only between the State and National Union but the Plaintiffs also seek [*5]  a particular finding as to the amount of insurance coverage available to them. The State, therefore, is clearly an indispensable party to any proceeding which seeks a determination of coverage issues and rights and responsibilities under a contract to which the state is a party. The Plaintiffs rely on the *Ranger Ins. Co. v. United Housing of New Mexico, Inc., 488 F.2d 682 (5th Cir. 1973)*, decision. In *Ranger* the Fifth Circuit held that [HN3] the claimant, the insured, and the insurer are all indispensable parties in actions which seek to determine whether an insurer is liable for judgments rendered against its insured in favor of a claimant. *Id.* Another decision considered whether an insured was a dispensable party in a declaratory action and concluded that the insured and its parent company were both indispensable parties. *National Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of South Carolina, Inc., 210 F.3d 246 (4th Cir. 2000)*. The State, therefore, is a properly joined indispensable party.

### B. Arguments of the State of Louisiana, Through the Department of Natural Resources, in Support of Motion to Remand:

The Defendant, State [*6]  of Louisiana, through the Department of Natural Resources, argues that they are an indispensable party and have not been fraudulently joined. The Defendant adopts the same argument as the Plaintiff in support of the Motion to Remand.

The Defendant also argues that National Union has not carried its burden of establishing removal jurisdiction. National Union's argument that the State was fraudulently joined in order to defeat diversity jurisdiction is unsupported by the facts. The State court must decide the issue as to whether or not the Defendant State has complied with its obligations under the policy issued by National Union. The Defendant, National Union, therefore, has failed to carry its heavy burden to establish fraudulent joinder.

The Defendant further argues that the removal is improper because the State has not waived its sovereign immunity and that National Union has not complied with the rule of unanimity. Since there are several grounds to remand, the case should be remanded to the 34th Judicial District Court, Parish of St. Bernard, State of Louisiana.

### C.  Arguments of National Union in Opposition to Motion to Remand:

The Defendant, National Union, argues [*7]  that the removal is proper because diversity jurisdiction exists because the State was fraudulently joined. There was no

2002 U.S. Dist. LEXIS 22700, *

need to obtain the consent to removal from the State because the State was fraudulently joined. On its face, the Plaintiff's Petition for Declaratory Judgment does not state a cognizable claim for relief against the State. Plaintiffs' only allegation against the state is "whether the state complied with its obligations arising under policy(ies) of insurance issued to it by National Union." This allegation does not set out a justiciable controversy and, consequently, does not state any possible cause of action. The Plaintiffs do not have a viable cause of action under the Louisiana Declaratory Judgment Act because the requisite controversy is not present. The Plaintiffs and the State are aligned with one another with respect to whether or not the State complied with its obligations under the National Union policy. Furthermore, the State owes no duty, either in tort or contract, to Plaintiffs to comply with the State's obligations under the National Union policy. The Plaintiffs' Petition, therefore, does not state any possible cause of action against the State.

The [*8] Defendant also argues that the Plaintiffs and State rely on cases that do not support the Plaintiffs' argument that the State is an indispensable party. The *Rite Aid* case involved parties who were parties to the underlying insurance contract. *Id.* This case, however, involves strangers to the insurance policy (the Plaintiffs) who have no standing to assert whether or not notification requirements or other policy obligations have been met by the insureds. The *Ranger* case is also distinguishable because the court found that claimants, not the insured, were indispensable parties and the facts are distinguishable. *Id.*

The Defendants further argue that neither the Plaintiffs nor the State are entitled to anything under *28 U.S.C. § 1447(c)* in the event that the motion to remand is granted. Any award under *28 U.S.C. § 1447(c)* regarding payment of costs or attorney's fees is committed to the discretion of the court. *Sims v. Ward, 2001 U.S. Dist. LEXIS 15073, 2001 WL 1104636 (E.D. La. 2001)*. [HN4] The question in applying *§ 1447(c)* is whether the defendant had objectively reasonable grounds to believe the removal was legally proper. *Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 292-293*. [*9] The court should use its discretion to deny any such award because National Union is being sued by individuals who are claiming coverage for alleged "unjust taking" of property and this is not covered by National Union's policy. Furthermore, the state court judgments rendered against the State do not allow the Plaintiffs to have a cause of action against National Union when none exists. National Union should not have to pay costs or attorney's fees because they have reasonable grounds to believe the suit is removable.

**III. LAW AND ANALYSIS:**

**A. Law on Remand/ Fraudulent Joinder:**

[HN5] A motion to remand a case to state court on the basis of any defect other than lack of subject matter jurisdiction must be made within thirty days after the filing of the notice of removal. *28 U.S.C. § 1447(c)*. In the case at hand, the defendant filed its notice of removal on September 13, 2002 and the Plaintiff filed the motion to remand on October 9, 2002. The Defendant's Motion to Remand was likewise filed timely on October 11, 2002. As both motions were timely filed, the Court will address the issues presented therein.

[HN6] "The burden of persuasion placed upon those who [*10] cry 'fraudulent joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir.1981)*; *Ford, et al. v. Elsbury, et al., 32 F.3d 931, 935 (5th Cir.1994)*. Where charges of fraudulent joinder are used to establish federal jurisdiction, the removing party has the burden of proving the claimed fraud. *Dodson v. Spiliada Maritime Corp., et al., 951 F.2d 40, 42 (5th Cir.1992)*. In order to establish that a plaintiff fraudulently joined an in-state defendant so as to preclude exercise by a federal court of diversity jurisdiction, the removing party must show that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts. *Dodson, 951 F.2d at 42*; *B., Inc., 663 F.2d at 549*.

[HN7] Claims of fraudulent joinder should be resolved in a summary judgment-like procedure whenever possible. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd., 99 F.3d 746 (5th Cir.1996)*. Although the district court may [*11] "pierce the pleadings" to examine affidavits and other evidentiary material, it should not conduct a full evidentiary hearing on questions of fact, but rather should make a summary determination by resolving all disputed facts in favor of the plaintiff. *Id. at 751*; *Ford, 32 F.3d at 935*; *Dodson, 951 F.2d at 42*.

**B. The Court's Analysis:**

The Defendant, National Union, has failed to carry its burden of establishing fraudulent joinder. In order to establish fraudulent joinder, the Defendant must show that there is no possibility of recovery from the Defendant in State court. The Defendant State, however, is an indispensable party to the judgments that have been rendered. Any claims in regard to the insurance policy the State has with the Defendant National Union involves the State. Because the State is an indispensable party, there is no complete diversity and the case must be remanded to the 34th Judicial District Court, Parish of St.

2002 U.S. Dist. LEXIS 22700, *

Bernard, State of Louisiana. The Court, however, will use its discretion to deny imposing costs or attorney's fees in conjunction with the Motion to Remand, on the Defendant National Union.

Accordingly,

[*12]  **IT IS ORDERED** that the Motions to Remand of the Plaintiff, Gene Alonzo, et al., and Defen-

dant, State of Louisiana, through the Department of Natural Resources, be and the same are hereby **GRANTED.**

New Orleans, Louisiana, this 21st day of November, 2002.

**G. THOMAS PORTEOUS, JR.**

**UNITED STATES DISTRICT JUDGE**