UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO ALL CASES | : : : | JUDGE FALLON MAG. JUDGE WILKINSON |

## DISTRIBUTOR DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS, OR, ALTERNATIVELY, TO STRIKE PLAINTIFFS' TORT CLAIMS FOR ECONOMIC DAMAGES

Distributor Defendants submit the instant Reply in Support of their Motion to Dismiss, or, Alternatively, to Strike Plaintiffs' Tort Claims for Economic Damages.[1]  For all the reasons set forth herein, as well as those set forth in Distributor Defendants' Motion and supporting Memorandum of Law, Plaintiffs' tort claims must be dismissed, or, alternatively, Plaintiffs' claims for economic damages must be stricken.

---

[1] Although the Homebuilders' Steering Committee (HSC) filed a "response" to Distributor Defendants' Motion, it is actually their own Motion seeking dismissal of Plaintiffs' tort claims for the same reasons asserted by Distributor Defendants.  Although Distributor Defendants disagree with the HSC's interpretation of the Economic Loss Rule as it relates to claims by homebuilders against others in the chain of distribution, and since Distributor Defendants' Motion was not addressed to any claim asserted by a homebuilder, Distributor Defendants do not believe the HSC has standing to respond and thus, does not believe that a Reply to the HSC's response is necessary at this time.

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

## INTRODUCTION

A distributor has **no duty** beyond that arising from its contract, if any, to prevent a product from malfunctioning or injuring itself. <u>Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.</u>, 891 So. 2d 532, 542 (Fla. 2004)[2]. In other words, "one may not recover for injury to the product itself under strict liability or negligence. . . ." <u>American Universal, Ins. Group v. General Motors Corp.</u>, 578 So. 2d 451, 452 (Fla. 1st DCA 1991). The Economic Loss Rule, as developed throughout the United States and adopted by the courts in Florida, makes clear that the distributor of a product has no legal duty to ensure that the product does not injure itself; without such a legal duty, there can be no tort recovery for any such damages. According to <u>American Aviation</u>,

> The Economic Loss Rule adopted in <u>Florida Power</u> represents this Court's pronouncement that, notwithstanding the theory of strict liability adopted in <u>West</u>, strict liability has not replaced warranty law as the remedy for frustrated economic expectations in the sale of goods. In exchange for eliminating the privity requirements of warranty law and expanding the tort liability for manufacturers of defective products which cause personal injury, *we expressly limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself.* . . .

<u>American Aviation</u>, 891 So. 2d at 541 (emphasis added).

These homeowners HAVE remedies and Distributor Defendants are not seeking to "strip" them of any such remedies; rather, the instant Motion seeks to ensure that the proper remedies are sought from the proper defendants. The purchase of a home is an economic transaction and although the common law rule of *Caveat Emptor* previously governed the sale of real property, today, warranties implied by law accompany the sale from the homebuilder and are

---

[2] Although the PSC takes issue with the 4-3 decision rendered in <u>Casa Clara Condo. Ass'n, Inc. v. Charley Toppino and Sons, Inc.</u>, 620 So. 2d 1244 (Fla. 1993), its rationale and purpose were confirmed by the Florida Supreme Court in <u>American Aviation</u>. Moreover, <u>American Aviation</u> did not involve the products liability economic loss rule, yet the court "reaffirmed" its principles and application under Florida law. Most importantly however, nowhere within the <u>American Aviation</u> decision does the Florida Supreme Court criticize, or retreat from, its prior holding in <u>Casa Clara</u>.

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800
{JBACKMAN/218429.0005/N0792392_1}

designed to protect the purchaser.  In actuality, this simplifies matters for the homeowner in that

the homeowner need only look to the homebuilder, rather than seeking relief from everyone in

the chain of distribution.  In turn, the homebuilder can pursue contract or warranty remedies

where appropriate against subcontractors, suppliers and/or manufacturers.  Where the loss

ultimately falls is, of course, subject to the law of contracts and warranties, but the homeowner is

protected.  Distributor Defendants' Motion merely asks this Court to acknowledge this

framework and apply the law of the Florida Supreme Court as set forth in <u>Casa Clara</u> and

<u>American Aviation</u>, recognizing that a homeowner cannot use tort remedies to do an "end run"

around the homebuilder to reach upstream suppliers with regard to damage to the product itself,

i.e., the home.

Without citing to a single Florida authority in opposition to Distributor Defendants'

Motion, or even attempting to distinguish the case law cited by Distributor Defendants, the PSC

devotes virtually the entirety of its response to quoting from authorities in other jurisdictions and

referring this Court to asbestos cases from New Hampshire and South Carolina, which, in

actuality, support Distributor Defendants' position.[3]  The PSC goes to great lengths to trace the

history of the Economic Loss Rule relying on the very same authority, for the very same

propositions, set forth in Distributor Defendants' Motion.  However, after illuminating the

genesis of the Economic Loss Rule and the well-established law existing in Florida, the PSC

urges in a logic-defying manner that once it establishes a limited exception to the Economic Loss

Rule, it then may recover <u>all</u> economic damages recoverable under any tort theory, including

---

3 In its Response, the PSC cites only four cases from the state of Florida, not otherwise cited by Distributor
Defendants, in support of their contention that Plaintiffs' claims should not be dismissed.  These cases relied upon
by the PSC are not factually analogous and, most importantly, are not based upon Florida law; thus, further
discussion is not warranted.  Nonetheless, many of the cases do not discuss the Economic Loss Rule, apply specific
law from other states, or deal with asbestos cases which involve third parties harmed by the asbestos rather than the
purchasers of a product, such as the homeowners in this Chinese drywall litigation.  Applicable authority mandates
that pursuant to Florida law, Plaintiffs' recovery in tort against Distributor Defendants is limited to damages caused
to "other property" or for personal injury.

3

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

damage to the product itself.[4]  This tortured interpretation of the Economic Loss Rule has no support in any case law, abrogates over 20 years of well-established precedent and, on its face, negates the very essence of what the Economic Loss Rule was created to avoid, i.e., the recovery of economic damages in tort where a product injures itself.

The PSC virtually concedes that the product in this Chinese drywall litigation is that which was purchased by Plaintiffs, i.e., the homes in their completed form; the PSC makes no effort to distinguish the countless cases from Florida and other jurisdictions throughout the country which unequivocally endorse the definition of the completed home as "the product" in this Chinese drywall litigation.  In fact, the PSC concedes this point in one section in its response where it attempts to distinguish different Plaintiffs in these proceedings by stating that "some are new homeowners, some are persons that purchased drywall to renovate only parts of their homes."[5]  (PSC Resp. at p. 4).[6]  Nonetheless, "the law is what the law is" and thus, the product is what the product is.  See Casa Clara, 620 So. 2d at 1248.  The PSC's failure to even remotely suggest that the product is anything other than the home in these cases requires no further response from Distributor Defendants.

---

[4] *The PSC would have this Court believe that if a television was damaged, or some costume jewelry were ruined, it is then entitled to recover the costs associated with all of the economic damages allegedly caused to the entire home, including costs to repair and remediate.  Such a specious argument ignores the fact that "no duty" exists as it relates to a distributor and further ignores the entire purpose of the Economic Loss Rule, which is to limit recovery for damage to the product itself to the parties' rights under contract and/or warranty law, such as the warranties which exist between homeowners and builders.*

[5] The PSC has failed to cite one case factually analogous to this Chinese drywall litigation.  In fact, none of the PSC's cases deal with the application of Florida's Economic Loss Rule to a direct purchaser of a product.  Neither has the PSC cited one case to support the contention that, under Florida law, the "product" is anything other than that which was purchased by Plaintiffs, i.e., the homes.

[6] A review of the Florida Complaints, however, reveals that all Plaintiffs and proposed class members purchased homes which, "unbeknownst to Plaintiffs," contained the allegedly defective drywall.  See, e.g., Karin Vickers, et al. v. Knauf Gips KG, et al., E.D. La. Case No. : 09-4117 (Plaintiffs' homes were built using drywall manufactured and supplied by the Defendants); Jordan Burrus, et al. v. L&W Supply, et al., Case No. 2:09-cv-14027 ("Plaintiffs . . . bring this lawsuit on behalf of themselves and all others similarly situated . . ., for all individuals who purchased residential real estate from January 22, 2005 through the present date . . ., containing plasterboard or drywall manufactured by Defendant, Knauf ("Chinese drywall"); Kristin Morgan Culliton, et al. v. Taylor Morrison Services, Inc., et al., E.D.La. Case No.: 09-4114 (action brought on behalf of "all Florida property owners who purchased a home through Morrison, which, during construction of said home, defective drywall was installed in the home").

4

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

With that concession in place, the only remaining dispute is what constitutes "other property" and what types of damages are recoverable to the extent other property damage has occurred or personal injury has resulted to Plaintiffs. What is clear, however, and what is not contradicted by the PSC, is that Plaintiffs have no recovery in tort for economic damages to the homes themselves and thus, any claims by any Plaintiff for such economic damages, including, but not limited to, the diminution in the value of the product because of its inferior quality, the disappointed economic expectations, the lost use and enjoyment of the home, additional rental expenses, repair costs, remediation costs, and any other consequential damages stemming from the property damage caused to their homes, are not recoverable.

As stated in Distributor Defendants' Motion, to the extent Plaintiffs can allege damages to "other property," such as items brought into the home after it was purchased, including televisions, stereos, and other personal property, limited recovery may be obtainable under applicable tort theories. Additionally, to the extent Plaintiffs can establish that they suffered personal injury, the Economic Loss Rule would not bar those claims; however, the majority of Plaintiffs' claims in this MDL proceeding pending in the State of Florida assert claims for "medical monitoring" which, by its very nature, means that Plaintiffs have suffered no personal injury.[7]

---

[7] Indeed, by the PSC's own admission, a claim for "medical monitoring" means that the Plaintiff has no personal injury, as the two are mutually exclusive. See pp. 100-01 of the transcript from the Miami-Dade Status conference attached hereto as Exhibit "A", where Ervin Gonzalez, Esq., a member of the PSC, urged that "[y]ou cannot allege a personal injury as a matter of law in order to qualify for medical monitoring. You have to have no injury because if you have an injury, if you sustained an injury by definition you're not entitled to medical monitoring." The notion that this Court's adoption of the Plaintiff Profile Forms, which include a question about the existence of personal injury, was a pronouncement by this Court relating to the law of medical monitoring, is wholly without merit.

5

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

I.   **Florida Law**

    A.   **Pursuant to Florida Law, Plaintiffs' Tort Claims are Barred by the Economic Loss Rule.**

The PSC clearly agrees that the authority cited in Distributor Defendants' Motion is not only good law, but is directly on point. See Casa Clara, supra. The PSC, understandably, cannot avoid this well developed body of law existing in Florida, and instead mistakenly relies on four Florida cases; Comptech Intern., Inc. v. Milam Commerce Park, Ltd., 753 So. 2d 1219 (Fla. 1999), Southland Constr., Inc. v. Richeson Corp., 642 So. 2d 5 (Fla. 5th DCA 1994), St. Paul Fire and Marine Ins. Co. v. Largo Canyon, Inc., 2007 WL 397047 (S.D. Fla.) and Florida Specialty, Inc. v. H2Ology, Inc., 742 So. 2d 523 (Fla. 1st DCA 1999). However, as discussed more fully below, those cases have no bearing upon the application of the Economic Loss Rule to the instant Chinese drywall litigation; indeed, none discuss the "products liability economic loss doctrine", none involve an allegedly defective product and none involve the purchase of a product which damaged itself.

While conceding that their damages are limited to "other property," the PSC evasively refuses to identify exactly what constitutes the "other property." Instead the alleged damages are "lumped together" and include, remediation costs, diminution in value, damage to A/C coils and other items that are integrated into the purchased home; this is precisely why dismissal is appropriate. As the PSC is aware, the Economic Loss Rule bars the recovery of any such damages. To be sure, Casa Clara makes clear that the "product," for purposes of an Economic Loss Rule analysis, is that which the Plaintiff purchased; in this case, analogous to Casa Clara, . . . the homes![8]  Casa Clara discussed this very issue and concluded that the claims relating to

---

[8] The HSC similarly agrees that the Economic Loss Rule limits Plaintiffs' tort claims to damaged property other than the home itself and personal injury. See HSC Resp. at pp. 2, 5 and 6.

{JBACKMAN/218429.0005/N0792392_1}

damage caused to a home, due to defective concrete supplied by a supplier, were barred by the

Economic Loss Rule, holding:

> The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes themselves, are the products they purchased. ***We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant.*** King v. Hilton-Davis, 855 F.2d 1047 (3d Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. ***These homeowners bought finished products-dwellings-not the individual components of those dwellings. They bargained for the finished products, not their various components.*** The concrete became an integral part of the finished product and, thus, did not injure "other" property.

Casa Clara, 620 So. 2d at 1248 (emphasis added).[9]

More importantly, Casa Clara was not the first time, nor the last time, the Florida courts

have opined on this issue. First, contrary to Plaintiffs' suggestion, Casa Clara remains the

prevailing law in the State of Florida.[10]  Moreover, in Casa Clara, the Supreme Court reviewed

the history of the Economic Loss Rule and cited prior precedent, not only from Florida, but also

from the United States Supreme Court and other Federal courts, see e.g., East River Steamship

Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986); Seely v. White Motor Co., 63 Cal. 2d

9 (1965); Saratoga Fishing Co. V. J.M. Martinac & Co., 520 U.S. 875 (1997); King v. Hilton-

Davis, 855 F. 2d 1047 (3d Cir. 1988).

Prior to Casa Clara, the Supreme Court of Florida previously recognized the Economic

Loss Rule and its preclusion of a strict liability claim in the absence of damage to "other

property" or personal injury.  See Florida Power & Light Co. v. Westinghouse Electric Corp.,

---

[9] As Distributor Defendants noted in their initial Memorandum, the issue in this case concerns identifying the product for purposes of the Economic Loss Rule, which as stated in Casa Clara, must be viewed from the perspective of the purchaser.  The manner in which the product is defined may be different for purposes of insurance coverage.

{JBACKMAN/218429.0005/N0792392_1}

510 So. 2d 899 (Fla. 1987).  In <u>Florida Power & Light</u>, the Supreme Court of Florida held that a

claim against a manufacturer of nuclear steam generators was barred by the Economic Loss

Rule.  In determining that "strict liability should be reserved for those cases where there are

personal injury or damage to other property <u>only</u>," the Supreme Court of Florida stated:

> We agree and find no reason to intrude into the parties' allocation of risk by
> imposing a tort duty and corresponding cost burden on the public.  ***We hold
> contract principles more appropriate than tort principles for resolving economic
> loss without an accompanying physical injury or property damage.***

<u>Id.</u> at 902 (emphasis added).

Following the decision in <u>Casa Clara</u>, the Fifth District Court of Appeal recognized <u>Casa

Clara</u> as the law in Florida.  <u>See Southland Const., Inc.</u>, <u>supra</u>.  Although the PSC relies on

<u>Southland</u> for the proposition that the Economic Loss Rule is inapplicable to the instant case,

<u>Southland</u> is clearly distinguishable.  First, it does not involve the purchase of a "product," but

rather, the purchase of "services."  Additionally, it does not involve a claim for strict liability;

instead, it relates to a claim against an engineer for the improper design of a retaining wall.

Finally, to the extent it has any effect herein, <u>Southland</u> reaffirms that Plaintiffs' damages would

be limited solely to "other property," separate from the product that was purchased. [11]  <u>St. Paul</u>,

also erroneously relied upon by the PSC, similarly involved a service contract.  There, the

plaintiff sued for negligent repair services to an air conditioning unit.  During the repairs, the air

conditioning unit caused damage to the entire vessel upon which it was located.  The court held:

> The Court finds that in this case, the air conditioner is the "product" at issue in the
> contract and the remainder of the Ves[s]el is the "other property."  Since damage
> occurred to the "other property," Lago's negligence claim is not barred by the

---

[11] In 1995, the Supreme Court of Florida considered a defective product case and the impact of the Economic Loss
Rule in <u>Airport Rent-A-Car, Inc. v. Prevost Car, Inc.</u>, 660 So. 2d 628 (Fla. 1995), and followed the rationale of <u>Casa
Clara</u>, concluding that the Economic Loss Rule barred a cause of action for negligence against the manufacturer of
defective buses where the only damage alleged was to the buses themselves.

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800
{JBACKMAN/218429.0005/N0792392_1}

economic loss rule and <u>it is entitled to bring a tort action against Tropical for recovery of the damage suffered to the remainder of the Vessel</u>.

<u>St. Paul</u>, 2007 WL 397047 at * 3 (emphasis added).

The Supreme Court of Florida again reviewed this issue in <u>Comptech International, Inc.</u>, the case primarily relied upon by the PSC.[12] In <u>Comptech</u>, the Supreme Court of Florida, reaffirming <u>Casa Clara</u>, made clear that the "product" is that which is purchased by the injured party. However, <u>Comptech</u> was not a products liability case; it involved a service contract for renovations at a warehouse and thus, did not involve "other property." <u>Id.</u> at 1226.[13] Indeed, the Supreme Court of Florida stated:  ""[t]his case is not a products liability or similar case. . . . Thus, this case does not involve 'other property,' as that term was used in <u>East River</u> and <u>Florida Power</u>." <u>Id.</u>  Nonetheless, the Court stated that since the object of the contract was the warehouse, that damage to computers inside of the warehouse would be considered "other property." Clearly, this is consistent with Distributor Defendants' Motion which seeks to dismiss Plaintiffs' claims to the extent they seek damages to the home or its component parts, such as for costs to repair and diminution in value. <u>See also</u> <u>Stallings v. Kennedy Electric, Inc.</u>, 710 So. 2d 195 (Fla. 5th DCA 1998) (finding that the Economic Loss Rule precluded negligence claims against a subcontractor who installed electrical wiring in the home purchased by the plaintiffs that subsequently was determined to be defective and caused two fires).

---

[12] Contrary to the PSC's contention, the court in <u>Comptech</u> did not "criticize" the <u>Casa Clara</u> opinion.
[13] The PSC's reliance upon <u>Florida Specialty, Inc.</u> is misplaced and, in fact, has no bearing on the relief sought in Distributor Defendants' Motion. <u>Florida Specialty, Inc.</u> allowed a claim for negligent discharge of a corrosive substance against a neighboring business to a car dealership; it did not involve an allegedly defective product purchased by the individual filing suit, did not involve strict liability and did not involve a standard negligence claim.

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

**B.      Although a Sympathetic Class, Pursuant to <u>Casa Clara</u>, Homeowners are not Excepted from the Economic Loss Rule.**

The PSC seems to suggest that a special exception to the Economic Loss Rule should be made for homeowners.  Lobbying for what is clearly a deviation from existing law, the PSC refuses to acknowledge the Supreme Court of Florida's holding in <u>Casa Clara</u>.  The PSC makes no attempt to distinguish <u>Casa Clara</u> or the many other cases in Florida which have addressed and resolved this issue.  In <u>Casa Clara</u>, the very same class of plaintiffs, to wit, homeowners, urged that the Economic Loss Rule should not apply to the purchase of houses.  In rejecting this argument, the Supreme Court of Florida stated:

> We are urged to make an exception to the economic loss doctrine for homeowners.  Buying a house is the largest investment many consumers ever make, . . ., and homeowners are an appealing, sympathetic class.  If a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law. . . .  There are protections for home buyers, however, such as statutory warranties, the general warranty of habitability, and the duty of sellers to disclose defects, as well as the ability of purchasers to inspect houses for defects.  Coupled with home buyers power to bargain over price, these protections must be viewed as sufficient when compared with the mischief that could be caused by allowing tort recovery for purely economic losses.  ***Therefore, we again "hold contract principals more appropriate than tort principals for recovering economic loss without an accompanying physical injury or property damage". . . If we held otherwise, "contract law would drown in a sea of tort.". . .  We refuse to hold that homeowners are not subject to the economic loss rule.***

<u>Id.</u> at 1247 (emphasis added).

**C.      Distributor Defendants' Motion Does Not Seek To "Extend The <u>Casa Clara</u> Rubric"; Instead It Requests That This Court Follow The "Casa Clara Rubric".**

Distributor Defendants do not believe this contention of the PSC warrants much discussion.  <u>Casa Clara</u> "says what it says" and it has been, and continues to be, Florida law since 1993.  Nothing in the PSC's Response remotely negates or diminishes <u>Casa Clara's</u> holding and no cases have been cited by the PSC to support the notion that, in

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

Florida, damage caused to component parts integrated into the finished product are recoverable.[14]   Indeed, this identical argument was expressly rejected by the Supreme Court of Florida:

> **The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant. King v. Hilton-Davis, 855 F.2d 1047 (3d Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished products--dwellings--not the individual components of those dwellings. They bargained for the finished products, not their various components. The concrete became an integral part of the finished product and, thus, did not injure "other" property.**

Casa Clara, 620 So. 2d at 1246-47 (emphasis added).[15]

> **D.     Even Assuming Plaintiffs Can Maintain Tort Claims For Damage To "Other Property" or Personal Injury, The Separate Damages Caused to The Homes Themselves Do Not Become Recoverable.**

In a questionable effort to avoid the mandate of Florida law and the application of the Economic Loss Rule, the PSC has attempted to abrogate the entire history of the Economic Loss Rule, discard it as trivial thought, and advocate for law that simply does not exist.  Indeed, the PSC urges this Court to adopt a view, without any colorable support whatsoever, that would allow homeowners to recover all of their damages under any tort theory if they can merely

---

[14] The HSC's Response reflects that it interprets the law in the same manner as Distributor Defendants.
[15] The remainder of the cases cited in Distributor Defendants' Motion support the Supreme Court of Florida's holding and demonstrate that this is the law in Florida.  See, e.g., In re Masonite Corp. Hardboard Siding Prods. Liab. Litig., 21 F. Supp. 2d 593 (E.D. La. 1998); Pulte Home Corp. v. Osmose Wood Preserving, Inc., et al., 1992 U.S. Dist. LEXIS 19441 (M.D. Fla. 1992); Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734 (11th Cir. 1995); Fishman v. Boldt, 666 So. 2d 273 (Fla. 4th DCA 1996); Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 so. 2d 628 (Fla. 1995); Curd v. Mosaic Fertilizer, LLC, 993 So. 2d 1078 (Fla. 2d DCA 2008); Cessna Aircraft Co. v. Avior Techs., Inc., 990 So. 2d 532 (Fla. 3d DCA 2008); N. Atl. Marine, Ltd. v. Sealine Int'l, Ltd., 2007 U.S. Dist. LEXIS 23046 (S.D. Fla. Mar. 29, 2007); Pycsa Pan., S.A. v. Tensar Earth Techs., Inc., 625 F. Supp. 1198 (S.D. Fla. 2008); Jarmco., Inc. v. Polygard, Inc., 668 So. 2d 300 (Fla. 4th DCA 1996); Turbomeca, S.A. v. French Aircraft Agency, Inc., 913 So. 2d 714 (Fla. 3d DCA 2005).  The PSC has cited nothing to the contrary and has made no effort whatsoever to distinguish this well developed law, other than to characterize it as "vintage".

11

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

establish the existence of one of the very limited exceptions to the Economic Loss Rule. Ignoring the clear state of the law and urging what it would like as opposed to what actually is, the PSC states at Page 18 of its Response, that: "[w]hen viewed in their best light, these allegations present a clear exception to the Casa Clara rubric and under Florida law, once within the exception, Plaintiffs are entitled to all damages, consequential or otherwise, reasonably necessary to 'compensate the plaintiff for loss and return him to the position he occupied before the injury.' East River, 476 U.S. at 873 n. 9." Clearly misrepresenting that such a proposition exists "under Florida law," yet citing no authority, the PSC compounds its audacity by referring to a footnote from East River, the very case which established the application of the Economic Loss Rule to preclude the availability of economic damages based upon tort theories of recovery for injury to the product itself.

The PSC simply cannot make this argument while relying upon the cases cited in its Response. The PSC focuses heavily upon East River.[16]  However, the holding in East River clearly precludes the recovery in tort for damages to the product itself and limits any such claims to those the customer may have in contract. Moreover, and as stated above, the PSC did not attempt to distinguish any of the cases relied upon by Distributor Defendants which discuss and explain the application of the Economic Loss Rule in the exact context presented herein under the law of Florida. Conveniently, the PSC ignores the fact that the law developed in Florida is based directly upon the holding from East River and its progeny. The PSC's flawed theory is further negated by the decision of the Supreme Court of the United States in Saratoga Fishing Co. In Saratoga Fishing Co., the Supreme Court of the United States discussed at length the East River doctrine which specifically held that "an admiralty tort plaintiff cannot recover for the

---

[16] Contrary to the PSC's representations, the Economic Loss Rule did not "germinate" in the East River decision; it has existed long before it was adopted in admiralty law.

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

physical damage a defective product causes to the product itself," but can recover for physical damage the product causes to "other property."  Id. at 884-85.  In Saratoga, the plaintiff, owner of a fishing vessel which caught fire and sank due to a defectively designed hydraulic system, could not recover for damage caused to the vessel, which all parties agreed constituted the "product," but could recover for equipment which was added to the vessel after the purchase including an extra skiff, nets and spare parts, as such added equipment constituted "other property" within the meaning of the East River doctrine.  The Saratoga holding clearly and succinctly defines the law as it relates to the instant Chinese drywall litigation; not only as to what constitutes the "product" but also as to what constitutes "other property."  Perhaps most importantly, however, it effectively vitiates the PSC's posture by clearly specifying the damages recoverable as only "other property" and confirming the East River holding that a plaintiff cannot recover in tort for the physical damage a defective product causes to the product itself, regardless of whether damage occurs to "other property."  In Micor Supply Ships Associates vs. General Motors Corp., 876 F.2d 501 (5th Cir. 1989), a case originating in the United States District Court for the Eastern District of Louisiana, the Fifth Circuit Court of Appeals determined that the vessel constituted the "product" and that the East River doctrine precluded recovery for damage to the product itself.  The Court held:

> Having sustained "physical injury to a proprietary interest," Digicon may recover for economic loss as well, but its recovery for loss of profits is limited to losses resulting from its inability to use the "other property" it placed on the vessel as a result of the casualty.  Digicon is not entitled to recover for its loss of profits resulting from its inability to use the vessel itself. . . .

Id. at 506.

Similarly, in Bowling Green Municipal Utilities vs. Thomasson Lumber Co., 902 F. Supp. 134 (W.D. Ken. 1995), the court discussed the dichotomy between damage to the product itself and damage to the buyer's "other property."  There, the court, in considering a motion to

13

dismiss, held that the Economic Loss Rule precluded the plaintiff's recovery under tort theories against a utility pole manufacturer for damages to the poles themselves, including the cost for removal and replacement of the defective utility poles; however, relying upon the <u>East River</u> doctrine, the Court found that damage to "other property," such as items attached to the poles by the plaintiff or a company other than the defendant, could be recovered in tort.  In making its ruling, the Court held:

> *[I]t is hereby ordered that Defendant's Motion to Dismiss Plaintiff's tort claims for strict liability and negligence are sustained to the extent that Plaintiff seeks to recover in tort for the cost of identifying, repairing or replacing the defective utility poles.*

<u>Id.</u> at 139 (emphasis added).

It is that very ruling that should be made by this Court determining that the product purchased by Plaintiffs is the home and any tort claims for strict liability and negligence, must be dismissed to the extent Plaintiffs seek to recover for the cost of identifying, repairing, replacing, or remediating the homes, in addition to any consequential economic damages stemming therefrom.  Simply put, Plaintiffs' tort claims against Distributor Defendants are limited solely to damage to "other property" and/or personal injury.

## II.    Alabama Law

### A.    Pursuant to Alabama Law, Plaintiffs' Tort Claims are Barred by the Economic Loss Rule.

Plaintiffs claim that the Economic Loss Rule is invalid under Alabama law because that doctrine purportedly applies only to disputes between commercial entities.  This is a misrepresentation of Alabama law in general and the cases cited in particular.

In <u>Lloyd Wood Coal Co. v. Clark Equipment Co.</u>, 543 So. 2d 671 (Ala. 1989), the Alabama Supreme Court adopted the Economic Loss Rule as expressed in <u>East River</u>.  The

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

Alabama court adopted the East River ruling and rationale wholesale, without modification or limitation, and certainly without limitation to the commercial-only arena.

Plaintiffs' citation to the Lloyd Wood opinion's distinction between commercial and consumer use is taken out of context; the full paragraph from which that citation is taken reads as follows:

> This is a claim solely for damage to the product itself, the front-end loader, which was for commercial use, as opposed to consumer use. As stated above, there is no claim for personal injury or for damage to any property other than the front-end loader itself.

Lloyd Wood, 543 So. 2d at 672. When read in context, it is clear the distinction is made only to highlight the fact that there is no personal injury claim and the only claimed loss is economic in nature. The court does not refer to this distinction again in the remainder of its opinion.

The court's decision in Wellcraft Marine, a Div. of Genmar Industries, Inc. v. Zarzour, 577 So.2d 414, 418 (Ala. 1990) is also instructive and determinative on this issue. In that case the court stated as follows:

> On its appeal, Wellcraft contends that it was error for the trial court to submit to the jury Zarzour's AEMLD claim, because the only damage claimed by Zarzour was to the product itself and, Wellcraft contends, one cannot recover under the AEMLD for damage to the product itself. This Court held in Dairyland Ins. Co. v. General Motors Corp., 549 So.2d 44 (Ala.1989), and Lloyd Wood Coal Co. v. Clark Equipment Co., 543 So.2d 671 (Ala.1989), that there is no cause of action in tort under the AEMLD for a product defect that results in damage only to the product itself. **Zarzour contends that this Court should distinguish between products that are sold to consumers and products that are sold to commercial buyers, but we are unwilling to adopt such a distinction.** The rule remains the same, regardless of the nature of the customer: A defective product is a loss of the benefit of the bargain which is a contract rather than a tort action. Dairyland Ins. Co., 549 So.2d at 46, quoting C. Gamble & D. Corley, Alabama Law of Damages, § 32-8 at 339 (1982).

Id. at 418 (emphasis added).

Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc., 901 So. 2d 84 (Ala. 2004), which

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

Plaintiffs refer to repeatedly in their Response, did not abrogate or modify the Economic Loss Rule. Rather, the <u>Vesta</u> court noted that there was not enough evidence, due to spoliation, to make a determination as to whether the doctrine could apply, and thus it could not apply the doctrine in that instance. This has no bearing on the validity of the doctrine as applied to other cases.

Plaintiffs additionally refer to <u>Crum v. Johns Manville, Inc.</u>, 2009 Ala. Civ. App. LEXIS 76 (2009), for two propositions: (1) the Economic Loss Rule should be limited to commercial entities and that (2) damage to building components can be distinguished from damage to the building itself. However, <u>Crum</u> stands for neither of these propositions. Addressing the first contention, <u>Crum</u> did not explicitly or implicitly limit the application of the Economic Loss Rule to commercial entities only. The plaintiffs in that action happened to be commercial entities, it is true, but the court's reasoning in no way relied on that fact. Addressing the second contention, <u>Crum</u> is distinguishable on its facts from the present case. The plaintiffs in <u>Crum</u> were builders, not individual homeowners, and contracted separately for the roofing system. They did not, as did the homeowners in the instant litigation, bargain for and buy an entire completed building. Their situation is more analogous to a homeowner who replaced a sheet of drywall in an already existing home. Further, the "other property" damaged in the <u>Crum</u> case was not detailed in the opinion to the level of detail which would be required to compare it to the present case. In fact, the basis of the court's holding there is that it did not have enough information about the damages to apply the Economic Loss Rule. In this respect, <u>Crum</u> is as inapplicable to the instant litigation as is <u>Vesta</u>.

Finally, this Court's own application of Alabama law in <u>In Re: FEMA Trailer Formaldehyde Prods. Liab. Litigation</u>, 2008 U.S. Dist. LEXIS 103249 (E.D. La. 2008), is also

analogous to the instant litigation and is instructive of the proper application of the Economic

Loss Rule. In that case, the plaintiffs, as here, alleged both damage to their dwellings (emergency

housing units or EHUs) and personal injury resulting from high levels of formaldehyde. This

Court ruled as follows:

> [T]o the extent that Plaintiffs seek damages in strict liability and negligence for
> economic losses, such claims are dismissed as they are precluded by Alabama's
> application of the economic loss doctrine. However, Plaintiffs may proceed with
> their claims under negligence and strict liability that relate to injuries and
> damages sustained by the plaintiffs themselves.

Id. at *58. This case makes it clear that contrary to Plaintiffs' contention, the economic loss of

the home itself can be severed from any personal injury or other property damages, and that the

application of an exception to the Economic Loss Rule does not exclude all elements of damage

from its ambit.

**III.    Mississippi Law**

**A.        Plaintiff's claims arising out of negligence and strict liability are barred as to
Distributors by the Economic Loss Rule.**

Mississippi caselaw establishes that there can be no recovery in strict liability or

negligence for a product defect where the defect results only in damage to the product itself.

Progressive Insurance Co. v. Monaco Coach Corp., 2006 WL 839520, at * 3 (S.D. Miss. 1996).

Plaintiffs have responded to Defendants' Motion to Dismiss with the claim that the economic

loss doctrine does not apply because they allege damages beyond those to the product itself,

which they claim to be limited to the drywall that is the subject of this litigation. The relevant

cases, however, establish that component parts are not "other property" for purposes of the

economic loss rule; rather, they are integrated parts of a whole.  State Farm Mutual Auto

Insurance Co. v. Ford Motor Co., 736 So.2d 384, 388 (Miss. App. 1999).  The "other property"

exception to the economic loss doctrine does not apply to cases, such as the present case, in

{JBACKMAN/218429.0005/N0792392_1}

MDL NO. 2047
SECTION L

which the alleged damage is to an integrated product by a component part.  <u>Progressive
Insurance Co.</u>, 2006 WL 839520 at *3.  The exception's inapplicability is the result of the
principle that damage by a defective component of an integrated system to either the system as a
whole or other system components is not damage to "other property" that can preclude
application of the economic loss doctrine.  <u>Id</u>.

Plaintiffs allege damages to metals, HVAC systems, and fixtures in homes resulting from
exposure to the drywall that is the subject of this litigation.  Accordingly, they have asserted the
very type of damages to an integrated system (in this case, homes) by a component part (the
drywall) that the renders the other property exception inapplicable.  In <u>Progressive Insurance
Co.</u>, the product at issue was a motor home.  In determining the applicability of the economic
loss doctrine, the Court noted that the motor home was a single, integrated product, and that any
damage to the motor home resulting from its component parts, such as a refrigerator or the
electrical system, could not constitute "other property" so as to exclude application of the
economic loss doctrine.  <u>Id</u>. at *3, FN3.  The parallels between the components of a motor home,
and drywall as a component of a complete home are obvious.[17]  A component product, such as
drywall – the only use for which requires integration into a whole product (a home or other
building) – can not be held to have caused damage to "other property" under Mississippi law
when the only damage alleged was to other components of the integrated system.  As Plaintiff
has not alleged any damages to any "other property," the economic loss doctrine applies to the
present case.

---

17  In <u>Ford Motor Co.</u>, the Court similarly held that a leaky oil seal was a component, and the fact that it caused
damage to the vehicle as a whole does not mean that the rest of the car constituted "other property."  <u>Ford Motor
Co.</u>, 736 So.2d at 388.  This holding is in agreement with the holding of <u>Progressive Insurance Co.</u>, and indicates
that economic loss doctrine applies to the present case.

18

MDL NO. 2047
SECTION L

## <u>CONCLUSION</u>

Distributor Defendants do not dispute the fact that Plaintiffs could arguably have tort claims, to the extent they are pled properly and involve damage to "other property" or personal injury. Additionally, Plaintiffs may also have possible claims for damages from those parties with whom they have privity. It is abundantly clear, however, that the PSC cannot seek to impose tort liability on Distributor Defendants which the law simply does not recognize.

For all the reasons set forth herein, as well as those set forth in Distributor Defendants' Motion, the instant Motion should be granted in all respects, together with such other and further relief as this Court deems just and proper.

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800

{JBACKMAN/218429.0005/N0792392_1}

MDL NO. 2047
SECTION L

Respectfully submitted,

/s/Jeffrey A. Backman
JAN DOUGLAS ATLAS
Fla. Bar No. 226246
JEFFREY A. BACKMAN
Fla. Bar No. 0662501
ADORNO & YOSS LLP
350 East Las Olas Boulevard; Suite 1700
Fort Lauderdale, FL 33301-4217
Telephone: (954) 763-01200
Facsimile: (954) 766-7800
Attorneys for Distributor Defendants
SUPPLY CO. entities

/s/ Gary Baumann
GARY BAUMANN, ESQ.
Florida Bar No. 89052
Fulmer LeRoy Albee Baumann & Glass
2866 E. Oakland Park Blvd.
Fort Lauderdale, FL 33306
Telephone: 954-707-4430
Fax: 954-707-4431
Attorneys for Defendant INDEPENDENT
BUILDERS SUPPLY ASSOC.

/s/ David Conner
W. DAVID CONNER, ESQ.
South Carolina Bar No. 66358
Haynsworth Sinkler Boyd LLP
75 Beattie Place, 11th Floor
Greenville, SC 29601
Telephone: 864-240-3226
Fax: 864-240-3300
Attorneys for Defendant L&W SUPPLY
CORP. and USG CORP.

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800
{JBACKMAN/218429.0005/N0792392_1}

MDL NO. 2047
SECTION L

/s/ Richard Duplantier
RICHARD DUPLANTIER, ESQ.
Louisiana Bar No. 18874
Galloway, Johnson, Tompkins, Burr &
Smith
701 Poydras Street, Suite 4040
New Orleans, LA 70139
Telephone: 504-525-6802
Fax: 504-525-2456
Attorneys for Defendant INTERIOR
EXTERIOR BUILDING SUPPLY

/s/ Edward Briscoe
EDWARD BRISCOE, ESQ.
Florida Bar No. 109691
Fowler White Burnett
1395 Brickell Avenue, 14th Floor
Miami, FL 33131
Telephone: 305-789-9200
Fax: 305-789-9201
Attorneys for Defendants BLACK BEAR
GYPSUM SUPPLY, INC. and SMOKY
MOUNTAIN MATERIALS, INC. d/b/a
EMERALD COAST BUILDING
MATERIALS

/s/ Eduardo I. Rasco
EDUARDO I. RASCO, ESQ.
Florida Bar No. 646326
Rosenthal, Rosenthal, Rasco, Kaplan, LLC
20900 N.E. 30th Avenue, Suite 600
Aventura, FL 33180
Telephone: 305-937-0300
Fax: 305-937-1311
Attorneys for Defendant LA SUPREMA
TRADING, INC. and LA SUPREMA
ENTERPRISE, INC.

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800
{JBACKMAN/218429.0005/N0792392_1}

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern district of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 4th day of November, 2009.

/s/Richard Duplantier

**Adorno & Yoss LLP**
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 •
FAX 954-766-7800
{JBACKMAN/218429.0005/N0792392_1}