# POLICY COVER PAGE

**Date Printed:** 09/13/07                    **Policy/Quote Number:** 5346464
**Time Printed:** 000000

**Underwriter Name:**            Tara Dillon
**Issuing Office Division:**     0068
**Issuing Office Branch:**       0075
**Issuing Office Region:**       069
**Operator Name:**              Tara Dillon
**Operator Telephone:**          908-679-3590
**Policy Effective Date:**       September 15, 2007

**Transaction Type:**           NB

**Set Copy Name:**
**Set Copy Mailing Instructions:**

EPS TRACKING-ID:    0000000407778010000
JOB-ID:

*Archive Copy*

(Ed. 4-99)



EXHIBIT
A

**AIG Small Business**

Connell Corporate Center I
One Connell Drive, Suite 2100
Berkeley Heights, NJ 07922

Re:  FINEST DRYWALL INC

Barbara Glennon   @
FLORIDA HOME BUILDERS INSURANCE
PO BOX 15459
TALLAHASSEE, FL 32317-5459

AH1079

*Archive Copy*



**AIG Small Business®**
One Connell Drive, Suite 2100
Berkeley Heights, NJ 07922
908.679.3000
800.315.3896 Fax
aigsb@aig.com E-mail

FLORIDA HOME BUILDERS INSURANCE
PO BOX 15459
TALLAHASSEE, FL 32317-5459

Attn: Barbara Glennon

RE:  FINEST DRYWALL INC

     Policy Number:  BE    5346464
     Policy Effective/Expiration:  From:  September 15, 2007     To:  September 15, 2008

Dear Barbara Glennon,

Enclosed are one original and one copy of the policy for the above captioned account.  Upon review of the policy, we believe it is complete and accurate based upon the binder.  However, if you have any questions or concerns, feel free to give me a call.

Thank you for the opportunity to be of service to your company on this account.  We look forward to working with you on future opportunities.

Best regards,

Tara Dillon

908-679-3590

*Archive Copy*

**AIG** AIG Small Business is a unit of the property and casualty insurance companies of American International Group, Inc.

# CRISISRESPONSE®

**Funds and Resources for Managing a Crisis**

**One phone call immediately after a catastrophe strikes can provide:**

- Up to $250,000 outside of the umbrella limit for covered expenses such as temporary living, travel, psychological counseling, medical and funeral expenses.

- Up to $50,000 outside of the umbrella limit for public relations expenses incurred during a crisis.

- Immediate access to the expertise of the AIG Excess Casualty® claims team to assist in managing the crisis situation.

- Resources and expertise from an extensive list of the nation's leading public relations firms and crisis management experts to help prevent damage to the company's reputation and loss of valued customers.

- Assistance in creating an immediate and effective public response at no additional cost.

**AIG®** **AIG Small Business®**

Coverages provided by the member companies of American International Group, Inc. The descriptions contained herein are summaries only. Please see actual policy for full terms, conditions and exclusions. All submissions are subject to underwriting guidelines. Coverage may not be available in all jurisdictions.

**24-Hour, Toll Free Hotline:  1-877-AIG-3100**

---

## CRISIS RESPONSE®

### 877-AIG-3100

For immediate assistance, call our toll free, 24 hour hot line, without delay, to report a crisis event.

**AIG®** **AIG Small Business®**

## CRISIS RESPONSE®

### 877-AIG-3100

For immediate assistance, call our toll free, 24 hour hot line, without delay, to report a crisis event.

**AIG®** **AIG Small Business®**

---

## CRISIS RESPONSE®

### 877-AIG-3100

For immediate assistance, call our toll free, 24 hour hot line, without delay, to report a crisis event.

**AIG®** **AIG Small Business®**

*Archive Copy*

## CRISIS RESPONSE®

### 877-AIG-3100

For immediate assistance, call our toll free, 24 hour hot line, without delay, to report a crisis event.

**AIG®** **AIG Small Business®**

FORMS SCHEDULE

**Named Insured:**     FINEST DRYWALL INC

**Policy Number:**     BE     5346464
**Effective 12:01 AM:**  September 15, 2007

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
|  | COMM UMB DEC NAT UNION OF PA | 57696 | (10/04) |
|  | COMM UMB POL FORM | 57697 | (10/04) |
| 1 | VIOL. OF COMM. OR COMM. LAW EXCL. ENDT. | 87260 | (12/04) |
| 2 | CONST.OPS. EXCL. ENDT(WITH NON-STRUCTURAL IMPR. EX | 87211 | (12/04) |
| 3 | ECONOMIC OR TRADE SANCTIONS CONDITION ENDT. | 87067 | (11/04) |
| 4 | COMM. GENERAL LIAB. LIMITATION ENDT. | 87042 | (11/04) |
| 5 | MISC CHANGES ENDT. | 81513 | (04/04) |
| 6 | ACT OF TERRORISM SIR ENDORSEMENT | 81256 | (03/06) |
|  | PREM INCL TERRORISM NOTICE | 81249 | (03/03) |
| 7 | COMMERCIAL UMBRELLA POLICY FUNGUS EXCLUSION | 78691 | (08/01) |
| 8 | SPECIFIED OPERATIONS EXCLUSION | 76254 | (06/00) |
| 9 | CRISISRESPONSE AND EXCESS CASUALTY CRISISFUND | 76217 | (06/00) |
|  | FL.ADDENDUM TO DEC. | 74825 | (02/01) |
| 10 | ENDR FOR CONTINUING OR PROGRESSIVE BODILY INJ | 69562 | (01/98) |
| 11 | SILICA EXCL | 66687 | (12/96) |
| 12 | PRE-EXISTING DAMAGES AND/OR DEFECTS EXCL | 65597 | (06/96) |
| 13 | EMPLOYERS' LIABILITY EXCL | 62279 | (03/95) |
| 14 | TOTAL POLLUTION EXCL ENDORSEMENT | 62221 | (03/03) |
| 15 | AIRCRAFT LIAB EXCL | 62084 | (02/95) |
| 16 | LEAD EXCL | 61718 | (12/94) |
| 17 | FLORIDA AMENDATORY | 61704 | (12/94) |
| 18 | MARINE LIAB EXCL | 60468 | (05/94) |
| 19 | PROFESSIONAL LIAB EXCL | 60458 | (05/94) |
| 20 | AUTOMOBILE LIAB FOLLOW-FORM | 60446 | (05/94) |
| 21 | CROSS SUITS EXCL | 60441 | (05/94) |
| 22 | FOREIGN LIABILITY EXCL. ENDT | 60419 | (12/03) |
| 23 | SUBSIDENCE EXCL | 57725 | (06/93) |
| 24 | EMPLOYEE BENEFITS LIAB EXCL | 57720 | (06/93) |
| 25 | CONTRACTOR'S ENDR EXCLUDED HAZARDS | 57707 | (06/93) |

*Archive Copy*

**AIG**   **COMMERCIAL UMBRELLA DECLARATIONS**

# NATIONAL UNION FIRE INSURANCE COMPANY
# OF PITTSBURGH, PA.

A CAPITAL STOCK COMPANY

2704 COMMERCE DRIVE, SUITE B, HARRISBURG, PA 17110

**POLICY NUMBER:** BE   5346464                    **RENEWAL OF:** NEW

**PRODUCER NAME:** FLORIDA HOME BUILDERS INSURANCE

**ADDRESS:**      PO BOX 15459
                  TALLAHASSEE, FL 32317-5459

**ITEM 1.**   **NAMED INSURED:**   FINEST DRYWALL INC

        **ADDRESS:**      4872 SW 74TH CT
                        MIAMI, FL 33155-4454

**ITEM 2.**   **POLICY PERIOD:  FROM:** September 15, 2007          **TO:** September 15, 2008
AT 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.**   **LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

| | | |
|---|---|---|
| A. | $3,000,000 | Each Occurrence |
| B. | $3,000,000 | General Aggregate (in accordance with Section III, Limits of Insurance) |
| C. | $3,000,000 | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D. | $10,000 | Self Insured Retention |

**ITEM 4.**   **PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE / PER | ADVANCE PREMIUM | MINIMUM PREMIUM |
|---|---|---|---|
| | FLAT | $10,019 | $10,019.00 |
| | | Plus $493.00 FL Surcharge(s) | |

**ITEM 5.**   **ENDORSEMENTS ATTACHED:**   <u>SEE ATTACHED SCHEDULE</u>

COUNTERSIGNED _____          BY _____

57696 (10/04)      *Archive Copy* DATE                  **AUTHORIZED REPRESENTATIVE**
AH0016

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: FINEST DRYWALL INC                           Policy Number: BE    5346464

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | Mid-Continent Casualty Company 09/15/07 09/15/08 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $2,000,000 PROD / COMP OPS AGGREGATE |
| | | Defense Expenses are in addition to the limit |
| AUTO LIABILITY | SAFECO Insurance Companies 09/15/07 09/15/08 | $1,000,000 COMBINED SINGLE LIMIT |
| | | Defense Expenses are in addition to the limit |

**AUTHORIZED REPRESENTATIVE**

UNDSCH (5/99)
AH0006                  *Archive Copy*

# Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word **"Insured"** means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

### Insuring Agreements

**I.**   **Coverage**

   We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of  **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

   If we are prevented by law or statute from paying on behalf of the **Insured,** then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

**II.**  **Defense**

   **A.**   We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

      **1.**   The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

      **2.**   Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the  **Insured.**

   **B.**   When we assume the defense of any claim or suit:

      **1.**   We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

      **2.**   We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured:**

         **a.**   premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

         **b.**   premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish any such bond;

         **c.**   all costs taxed against the **Insured** in any claim or **suit** we defend;

> d.  pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;
>
> e.  all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;
>
> f.  the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

**C.**  In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## III.  Limits of Insurance

**A.**  The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

1.  **Insureds;**

2.  Claims made or **suits** brought; or

3.  Persons or organizations making claims or bringing **suits**.

**B.**  The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

1.  Damages included in the **Products-Completed Operations Hazard;** and

2.  Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.**  The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

**D.**  Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence**.

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

1.  In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

2.  In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

E.    Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.    The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

2.    The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured;**

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

IV.   **Definitions**

A.    **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

1.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.    Oral or written publication of material that violates a person's right of privacy;

3.    Misappropriation of advertising ideas or style of doing business; or

4.    Infringement of copyright, title or slogan.

B.    **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But **auto** does not include **mobile equipment.**

C.    **Bodily Injury** means bodily injury, sickness, disability or disease.  **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

D.    **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

1.    It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.    The repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

2.    Your fulfilling the terms of the contract or agreement.

E.    **Insured** means each of the following, to the extent set forth:

1.    The **Named Insured**, meaning:

a.    any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

b.    any organization newly acquired, controlled or formed by you during the policy period but only:

1)    as respects **Occurrences** taking place after you acquire, take control or form such organization;

2)    if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

3)    if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2.    If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3.    If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

4.    Any person or organization, other than the **Named Insured,** included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5.    Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6.    Any person, other than one of your employees, or organization while acting as your real estate manager.

7.    Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

a.    liability arising out of operations conducted by you or on your behalf; or

b.    facilities owned or used by you.

8.    Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your be half and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

F.    **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G.    **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.    Vehicles maintained for use solely on or next to premises you own or rent;

3.   Vehicles that travel on crawler treads;

4.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **a.**   power cranes, shovels, loaders, diggers or drills; or

    **b.**   road construction or resurfacing equipment such as graders, scrapers or rollers;

5.   Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **a.**   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **b.**   cherry pickers and similar devices used to raise or lower workers;

6.   Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

    **a.**   equipment designed primarily for:

        **1)**   snow removal;

        **2)**   road maintenance, but not construction or resurfacing; or

        **3)**   street cleaning;

    **b.**   cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **c.**   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**H.**   **Occurrence** means:

1.   As respects **Bodily Injury** or **Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured.** All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence;**

2.   As respects **Personal Injury,** an offense arising out of your business that results in **Personal Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3.   As respects **Advertising Injury,** an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

**I.**   **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1.   False arrest, detention or imprisonment;

2.   Malicious prosecution;

3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

57697 (10/04)
AH0034

*Archive Copy*                    (5)

4.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5.   Oral or written publication of material that violates a person's right of privacy.

J.   1.   **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

   a.   products that are still in your physical possession; or

   b.   work that has not yet been completed or abandoned.

2.   **Your Work** will be deemed completed at the earliest of the following times:

   a.   When all of the work called for in your contract has been completed.

   b.   When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   c.   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3.   This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

   a.   the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

   b.   the existence of tools, uninstalled equipment or abandoned or unused materials.

K.   **Property Damage** means:

1.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.   Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

L.   **Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

1.   An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

M.   **Your Product** means:

1.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a.   you;

   b.   others trading under your name; or

   c.   a person or organization whose business or assets you have acquired; and

2.   Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**N.** **Your Work** means:

1. Work or operations performed by you or on your behalf; and

2. Materials, parts or equipment furnished in connection with such work or operations.

**O.** **Your Work** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2. The providing of or failure to provide warnings or instructions.

**V.** **Exclusions**

This insurance does not apply to:

**A.** Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

**B.** Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

**C.** Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

**D.** **Property Damage** to:

1. Property you own, rent, occupy or use;

2. Personal property in the care, custody or control of the **Insured**.

**E.** **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**F.** **Property Damage** to **Your Product** arising out of it or any part of it.

**G.** **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.   **Your Product;**

2.   **Your Work;** or

3.   **Impaired Property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.   Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

1.   This exclusion shall not apply; and

2.   The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.   **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.   This exclusion shall not apply; and

2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.   **Personal Injury** or **Advertising Injury:**

1.   Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

2.   Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

3.   Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

4.   For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.   **Advertising Injury** arising out of:

1.   Breach of contract, other than misappropriation of advertising ideas under an implied contract;

2.   The failure of goods, products or services to conform with advertised quality or performance;

3.   The wrong description of the price of goods, products or services; or

4.   An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

**M.**   **1.**    **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

      **2.**    Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

      **3.**    Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

      This exclusion M. shall not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

      **a.**    Heat, smoke or fumes from a hostile fire;

      **b.**    The upset, overturn or collision of a motor vehicle; or

      **c.**    The **Products-Completed Operations Hazard;**

      if insurance for such **Bodily Injury, Property Damage** or **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such **Bodily Injury, Property Damage** or **Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

      As used in this exclusion:

      **a.**    "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. "Waste material" includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

      **b.**    A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**N.**    **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condit ion incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**O.**    **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured.**

      However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

**P.**   **1.**    **Bodily Injury, Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

      **2.**    Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

      **3.**    Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

**Q.**   **Bodily Injury** or **Personal Injury** to:

    **1.**   A person arising out of any:

        **a.**   Refusal to employ that person;

        **b.**   Termination of that person's employment; or

        **c.**   Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **2.**   The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

    **1.**   Whether the **Insured** may be liable as an employer or in any other capacity; and

    **2.**   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**R.**   **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of or by reason of:

    **1.**   The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

    **2.**   Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

    **3.**   Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

**S.**   **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

    **1.**   Causing or contributing to the intoxication of any person;

    **2.**   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **3.**   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    **1.**   This exclusion shall not apply; and

    **2.**   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

**T.**   **Bodily Injury** or **Property Damage**:

    **1.**   **a.**   with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

1.   b.   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2.   **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

   **a.**   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

   **b.**   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

   **c.**   the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3.   As used in this exclusion:

   **a.**   "hazardous properties" includes radioactive, toxic or explosive properties;

   **b.**   "nuclear material" means source material, special nuclear material or by-product material;

   **c.**   "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

   **d.**   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   **e.**   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   **f.**   "nuclear facility" means:

      **1)**   any nuclear reactor;

      **2)**   any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

      **3)**   any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

      **4)**   any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   **g)**   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

      **h)**    **Property Damage** includes all forms of radioactive contamination of property.

## VI. Conditions

### A. Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

### B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

### C. Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

### D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7. The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**E.    Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy.  This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.    Duties In The Event Of An Occurrence, Claim Or Suit**

1.    You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy.  To the extent possible, notice should include:

a.    how, when and where the **Occurrence** took place;

b.    the names and addresses of any injured persons and witnesses; and

c.    the nature and location of any injury or damage arising out of the **Occurrence.**

2.    If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3.    You and any other involved **Insured** must:

a.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit;**

b.    authorize us to obtain records and other information;

c.    cooperate with us in the investigation, settlement or defense of the claim or **suit**; and

d.    assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.    No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G.    Inspection**

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

**H.    Legal Actions Against Us**

There will be no right of action against us under this insurance unless:

1.    You have complied with all the terms of this policy; and

2.    The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

**I.    Maintenance of Underlying Insurance**

During the period of this policy, you agree:

1.    To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

4. That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**J.** Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K.** Premium

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**L.** Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**M.** Separation of **Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1. As if each **Named Insured** were the only **Named Insured;** and

2. Separately to each **Insured** against whom claim is made or **Suit** brought.

**N.** Subrogation

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

Any recoveries shall be applied as follows:

1. Any interests, including the **Insured,** that have paid an amount in excess of our payment under this policy will be reimbursed first;

2.      We then will be reimbursed up to the amount we have paid; and

3.      Lastly, any interests, including the **Insured,** over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the **Insured,** in the ratio of their respective recoveries as finally settled.

**O.**    Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P.**    When Loss Is Payable

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured.**

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives.

By signing below, the President and Secretary of the Company agree on our behalf to all the terms of this policy.

_Elizabeth M. Tuck_
SECRETARY

_[signature]_
PRESIDENT

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.

_____
Authorized Representative

ENDORSEMENT No. 1

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no:** BE    5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Policy Form

### Violation of Communication or Information Law Exclusion Endorsement

This policy is amended as follows:

**Section V. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

It is understood that to the extent any coverage may otherwise be available under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

87260 (12/04)
AH1552              *Archive Copy*

ENDORSEMENT No. 2

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no:**  BE    5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Construction Operations Exclusion Endorsement**
**(With Non-Structural Improvement Exception)**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Construction Operations**

This insurance does not apply to any liability arising out of **Construction Operations**. This exclusion applies whether or not the **Construction Operations** have been completed or are ongoing.

However, this exclusion does not apply to **Bodily Injury** or **Property Damage** arising out of **Non-Structural Improvements** performed by or on behalf of the **Insured.**

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Construction Operations** means any activity by or on behalf of any **Insured**, in any capacity, regarding, related to, or in support of the erection, remodeling, or structural repairing of a building on land.

**Non-Structural Improvements** means **Construction Operations** that do not relate to the erection, repair, improvement, or replacement of:

1. building frames;
2. building foundations;
3. load-bearing walls;
4. columns, girders, trusses, beams and spandrels that are necessary to the stability of the building structure; or
5. any other element or component of a building necessary to the stability of the building structure.

**Non-Structural Improvements** include the installation, repair, improvement, and replacement of fixtures.

All other terms, definitions, conditions and exclusions remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

87211 (12/04)
AH1479             *Archive Copy*

ENDORSEMENT No. 3

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no:** BE     5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy Form**

**Economic or Trade Sanctions Condition Endorsement**

This policy is amended as follows:

**Section VI. Conditions** is amended to include the following additional condition:

Economic or Trade Sanctions

If coverage for a claim or **Suit** under this Policy is in violation of any United States of America's economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

87067 (11/04)
AH1512               *Archive Copy*

## ENDORSEMENT No. 4

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no:**  BE    5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Policy Form

### Commercial General Liability Limitation Endorsement

This policy is amended as follow:

**Section V. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to Commercial General Liability.

However, if insurance for Commercial General Liability is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  Coverage under this policy will follow the terms, definitions, conditions and exclusions of the policy listed in the Schedule of Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

87042 (11/04)
AH1520          *Archive Copy*

**ENDORSEMENT No. 5**

**This endorsement, effective 12:01 AM:** September 15, 2007

**Forms a part of policy no:** BE     5346464

**Issued to:** FINEST DRYWALL INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy Form**

**Miscellaneous Changes Endorsement**

This policy is amended as follows:

I.  **Section I. Coverage** is amended by adding the following:

This policy applies to **Bodily Injury** or **Property Damage** only if prior to the Policy Period, no **Insured** shown in Paragraph E.2. and E.3. of **Section IV. Definitions**, no executive officer or director shown in Paragraph E.5. of **Section IV. Definitions** and no employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part.  If such an **Insured** or  authorized employee knew, prior to the Policy Period, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the Policy Period will be deemed to have been known prior to the Policy Period.

**Bodily Injury** or **Property Damage** which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred by any **Insured** shown in Paragraphs E.2. and E3. of **Section IV. Definitions**, any executive officer or director shown in Paragraph E.5. of **Section IV. Definitions** and any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the Policy Period.

**Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** shown under Paragraphs E.2. and E.3.  of **Section IV. Definitions**, any executive officer, director shown in Paragraph E.5. of **Section IV. Definitions** or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

1.  Reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

2.  Receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

3.  Becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

II.  **Section IV. Definitions** is amended as follows:

**Section IV. Definitions** is amended to include the following additional definitions:

**Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

Page 1 of 3

*Archive Copy*©2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**Volunteer Worker(s)** means a person who is not your employee and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**Section IV. Definitions** is amended by deleting subparagraphs 4 and 5 of Paragraph I. **Personal Injury** and replacing them with the following:

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services; or

5. Oral or written publication, in any manner, of material that violates a person's right of privacy.

**Section IV. Definitions** is amended by deleting subparagraphs 3. and 4. of Paragraph A. **Advertising Injury** and replacing them with the following:

3. The use of another's advertising idea in your **Advertisement**; or

4. Infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

**Section IV. Definitions** is amended by adding the following to Paragraph K. **Property Damage**:

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**Section IV. Definitions** is amended by adding the following subparagraphs 9.,10. and 11. to Paragraph E. **Insured**:

9. If you are designated in the Declarations as a trust, you are an **Insured.** Your trustees are also **Insureds**, but only with respect to their duties as trustees.

10. Your **Volunteer Workers** only while performing duties related to the conduct of your business.

11. If you are a limited liability company, you are an **Insured**. Your members are also **Insureds**, but only with respect to the conduct of your business. Your managers are **Insureds**, but only with respect to their duties as your managers.

**III. Section V. Exclusions** is amended as follows:

**Section V. Exclusions**, Paragraph D., subparagraph 1. is deleted and replaced by the following:

1. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**Section V. Exclusions**, Paragraph J. is amended by adding the following:

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

*Archive Copy* © 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Section V. Exclusions**, Paragraph K. is amended by adding the following:

5. Committed by an Insured whose business is:

   a. designing or determining content of web-sites for others; or
   b. An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs I.1., I.2. and I.3. of **Section IV. Definitions**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**Section V. Exclusions**, Paragraph N., deleted and replaced by the following:

**N. War**

This insurance does not apply to any loss, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war; or

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**Section V. Exclusions** is amended to include the following additional exclusions:

This insurance does not apply to:

**Personal Injury** or **Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.

This insurance does not apply to:

**Personal Injury** or **Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

This insurance does not apply to:

**Personal Injury** or **Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

All other terms and conditions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

*Archive Copy* © 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

ENDORSEMENT No. 6

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no:**  BE      5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy Form**

**Act of Terrorism Self-Insured Retention Endorsement**

Solely with respect to any **Act of Terrorism**, this policy is amended as follows:

**ITEM 3. OF THE DECLARATIONS, LIMITS OF INSURANCE** is amended to include the following additional Self Insured Retention:

> **ACT OF TERRORISM SELF-INSURED RETENTION** - $1,000,000 Each **Occurrence** (As respects all liability covered under this policy arising out of any **Act of Terrorism**.)  The **Act of Terrorism Self-Insured Retention** will not be reduced or exhausted by **Defense Expenses**.

**ITEM 4. OF THE DECLARATIONS, PREMIUM COMPUTATION** is amended to include the following:

> **ACT OF TERRORISM PREMIUM**          $99.00

**Section III. Limits of Insurance,** Paragraph E. is deleted in its entirety and replaced by the following:

> The **Act of Terrorism Self Insured Retention** applies whether or not there is any applicable underlying insurance listed in the Schedule of Underlying Insurance or applicable limits of any other insurance providing coverage to the **Insured.**  If there is applicable underlying insurance listed in the Schedule of Underlying Insurance or other insurance providing coverage to the **Insured,** amounts received through such underlying insurance or other insurance for payment of the loss may be applied to reduce or exhaust the **Act of Terrorism Self Insured Retention.**  However, in no event will amounts received through such underlying insurance or other insurance for the payment of **Defense Expenses** reduce the **Act of Terrorism Self Insured Retention.**

**Section II. Defense** Paragraphs A.1., A.2. and C. are deleted in their entirety, and Paragraph C. is replaced by the following:

> C.  We will have no duty to defend any claim or Suit against the **Insured.**  We will, however, have the right, but not the duty, to participate in the defense of any Suit and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

**Section IV. Definitions** is amended to include the following additional definitions:

**Act of Terrorism** means:

> 1.  any act which is verified or recognized by the United States Government as an act of terrorism, including a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions, amendments, or extensions thereto; or

2.  the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1.  Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2.  Premiums on bonds to release attachments;

3.  Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4.  Costs taxed against the **Insured** in any claim or **Suit**;

5.  Pre-judgment interest awarded against the **Insured**;

6.  Interest that accrues after entry of judgment.

It is understood and agreed that if any other endorsement to this policy excludes terrorism liability arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceeding the Act of Terrorism.

Coverage for Acts of Terrorism for losses is already included in your current policy. The portion of your annual premium that is attributable to coverage for Acts of Terrorism covered by the Act is $99.00.

<u>FINEST DRYWALL INC</u>
Insured Name

BE 5346464
Policy #

0068
Division #

<u>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.</u>
Insurance Carrier

WITHOUT EXCLUSION BUT WITH CHARGE
81249 (3/03)    *Archive Copy*
AH0992

**ENDORSEMENT No. 7**

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no:**  BE     5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**COMMERCIAL UMBRELLA POLICY**
**FUNGUS EXCLUSION**

Section V. Exclusions is amended by adding the following exclusion to the policy:

This insurance does not apply to **bodily injury, property damage, personal injury, advertising injury** or any other loss, injury, damage, cost or expense, including but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

      a.  Any "fungus(i)", "molds(s)", mildew or yeast, or

      b.  Any "spore(s)" or toxins created or produced by or emanating from such fungus(I), mold(s), mildew or yeast, or

      c.  Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

      d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury ,damage, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

    "Fungus(i)" includes, but is not limited to, Any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms.

    "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

    "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)', mildew, plants, organisms or microorganisms.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

_____
                    **Authorized Representative**

ENDORSEMENT No. 8

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no.:** BE    5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## SPECIFIED OPERATIONS EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the following operations of the **Insured:**

EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS)
THIS INSURANCE DOES NOT APPLY TO BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY OR ADVERTISING INJURY, INCLUDED WITHIN THE PRODUCTS-COMPLETED OPERATIONS HAZARD, ARISING IN WHOLE OR IN PART OUT OF THE DESIGN, MANUFACTURE, CONSTRUCTION, FABRICATION, PREPARATION, INSTALLATION, APPLICATION, MAINTENANCE OR REPAIR, INCLUDING REMODELING, SERVICE, CORRECTION OR REPLACEMENT OF AN EXTERIOR INSULATION AND FINISH SYSTEM (EIFS), SYNTHETIC STUCCO, OR ANY PART THEREOF, INCLUDING THE APPLICATION OR USE OF PAINTS, CONDITIONERS, PRIMERS, ACCESSORIES, FLASHINGS, COATINGS, CAULKINGS OR SEALANTS IN CONNECTION WITH SUCH PRODUCT.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

76254 (6/00)               *Archive Copy*
AH0865

**ENDORSEMENT No. 9**

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no.:** BE    5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## Commercial Umbrella Policy

### CrisisResponse[SM] and Excess Casualty CrisisFund[SM]

**(Advancement of CrisisResponse Costs during a Crisis Management Event and Crisis Communications Management Insurance )**

---

### Additional Declarations

**Item 1. CrisisResponse Sublimit of Insurance:** $250,000.00          **Each Crisis Management Event And Aggregate**

**Item 2. Crisis Management Limit of Insurance:** $50,000.00          **Each Crisis Management Event And Aggregate**

**Item 3. Premium:**                          included

---

This policy is amended to provide for Advancement of **CrisisResponse Costs** during a **Crisis Management Event** and Crisis Communications Management Insurance pursuant to the terms, definitions, conditions and exclusions set forth below:

| **I. INSURING AGREEMENTS-CrisisResponse and Excess Casualty CrisisFund** |
| --- |

The following insuring agreements section is added to this policy for the purpose of the coverage provided by this endorsement:

A.    **Advancement of CrisisResponse Costs during a Crisis Management Event**

We will advance on behalf of the **Named Insured CrisisResponse Costs** that may be associated with damages covered by this policy arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **CrisisResponse Sublimit of Insurance.**

We will advance **CrisisResponse Costs** that may be associated with damages covered by this policy directly to third parties.

B.    **Crisis Communications Management Insurance**

We will pay on behalf of the **Named Insured Crisis Management Loss** arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **Crisis Management Limit of Insurance.**

C.    A **Crisis Management Event** shall first commence at the time during the Policy Period when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and shall end at the earliest of the time when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance,** whichever applies, has been exhausted.

*Archive Copy* ©1999 American International Group, Inc.

D.   There shall be no Retained Limit applicable to **CrisisResponse Costs** or **Crisis Management Loss**. We shall pay such **CrisisResponse Costs** or **Crisis Management Loss** from first dollar, subject to the other terms and conditions of this endorsement.

## II. LIMITS OF INSURANCE

The following provisions are added to Section III. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A.   The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **CrisisResponse Sublimit of Insurance** shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B.   The **Crisis Management Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **Crisis Management Limit of Insurance** shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C.   We will have no obligation to advance **CrisisResponse Costs** or to pay **Crisis Management Loss** from the earliest of the time when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

## III. DEFINITIONS

The following definitions are added to Section IV. Definitions for the purpose of the coverage provided by this endorsement:

A.   **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has reasonably been associated with or may be associated with:

   1.   damages covered by this policy that are in excess of the Retained Limit applicable to such damages; and

   2.   significant adverse regional or national media coverage.

   **Crisis Management Event** shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B.   **Crisis Management Firm** means any public relations firm or crisis management firm approved by us that is hired by the **Named Insured** to perform **Crisis Management Services** in connection with a **Crisis Management Event**. Attached to and forming a part of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the **Named Insured** without further approval by us.

C.   **Crisis Management Limit of Insurance** means the Crisis Management Limit of Insurance shown in Item 2 of the Additional Declarations of this endorsement.

D.   **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

   1.   Amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

2.     Amounts for reasonable and necessary printing, advertising, mailing of mate rials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event.**

E.     **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured.**

F.     **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1.     Medical expenses;

2.     Funeral expenses;

3.     Psychological counseling;

4.     Travel expenses;

5.     Temporary living expenses;

6.     Expenses to secure the scene of a **Crisis Management Event**; and

7.     Any other expenses pre-approved by the Company.

**CrisisResponse Costs** will not include defense costs or **Crisis Management Loss.**

G.     **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 1 of the Additional Declarations of this endorsement.

H.     **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person designated as such and scheduled by written endorsement.

---

## IV. EXCLUSIONS

The following exclusions are added to Section V. Exclusions for the purpose of the coverage provided by this endorsement:

This insurance shall not apply to any **CrisisResponse Costs** or **Crisis Management Loss** in connection with a **Crisis Management Event**:

A.     arising out of, based upon or attributable to the facts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B.     arising out of, based upon or attributable to any pending or prior crisis, claim, or **Suit** as of the inception date of this policy.

---

## V. CONDITIONS

The following conditions are added to Section VI. Conditions for the purpose of the coverage provided by this endorsement:

A.   You must report any **Crisis Management Event** to us within twenty-four (24 ) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss.**

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

1.   how, when and where the **Crisis Management Event** is taking or took place;

2.   the names and addresses of any injured persons and any witnesses; and

3.   the nature and location of any injury or damage arising out of the **Crisis Management Event.**

Written notice should be mailed or delivered to:

AIG Excess Casualty Claim Department
70 Pine Street
New York, NY 10270

B.   There shall be no requirement that you obtain prior written approval from us before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by you to perform the **Crisis Management Services** has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.   Any payments for **Crisis Management Loss** or advancement of **CrisisResponse Costs** that we make under this endorsement:

1.   shall not be deemed to be a determination of the **Insured's** liability with respect to any claim or **Suit** that results from a **Crisis Management Event;** and

2.   shall not create any duty to defend any **Suit** or to investigate any claim arising from a **Crisis Management Event**, nor any coverage obligations under this policy.

D.   If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the **Named Insured** by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.   In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Management Event** has occurred, the **Named Insured** may, at its own cost, retain the services of an approved **Crisis Management Firm** and/or advance **CrisisResponse Cost.** Provided, however, if the **Named Insured** elects to retain an approved **Crisis Management Firm** or to advance **CrisisResponse Costs**, we shall have no obligation to reimburse under this endorsement the **Named Insured** for such costs or expenses. The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized   Representative**
or Countersignature (in States Where Applicable)

 **AIG Excess Casualty**®

## Excess Casualty CrisisFund®
### (Crisis Communications Management Insurance)

### *Approved Crisis Management Firms*
### *as of May 1,2002*

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Abernathy MacGregor Group** | | |
| <u>New York Office</u><br>501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Tel. (212) 343-0818<br>Cell (917) 449-9964 |
| | Rhonda Barnat, Managing Director<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Cell (917) 912-6378 |
| <u>Los Angeles Office</u><br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel. (213) 630-6550<br>Cell (213) 489-3443 | *Emergency Only*<br>Tel. (818) 957-5650<br>Cell (917) 940-3476 |
| **Citigate Sard Verbinnen** | | |
| <u>New York Office</u><br>630 Third Avenue<br>New York, NY 1 0017 | George Sard<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br><br><u>Citigate Sard Verbinnen web address:</u><br>www.sardverb.com<br><br>Paul Verbinnen<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br><br><u>Citigate Sard Verbinnen web ad dress:</u><br>www.sardverb.com | *Emergency Only*<br>Contact switchboard @<br>(212) 687-8080 |
| **Hill & Knowlton** | | |
| <u>New York Office</u><br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017 | Richard C. Hyde<br>Tel. (212) 885-0372<br>Cell (917) 816-2208<br>Fax: (212) 885-0570<br><br>Arthur Forster<br>Tel. (212) 885-0442<br>Cell: (908) 337-6853<br>Fax: (212) 885-0570<br>aforster@hillandknowlton.com | *Emergency Only*<br>H&K Crisis Pager<br>(888) 264-5193<br>24 Hours/7 Days |

AH0559          ***Archive Copy***          Page 1 of 3

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

### Hill & Knowlton Continued

***Additional United States/Canada Offices:***
*Atlanta; Austin; Calgary; Chicago; Detroit; Ft. Lauderdale; Houston; Irvin e; Los Angeles; Montreal; Ottawa; Portland; Quebec City; Sacramento; San Francisco; San Juan; Seattle; Tampa; Toronto; Vancouver; Washington, D.C.*

***International Offices:***
***Latin America:*** *Bogota; Buenos Aires; Caracas; Mexico City; Sao Paulo; Santiago; Guatemala*
***Europe, Middle East, Africa:*** *Amsterdam; Aschaffenburg; Athens; Barcelona; Berlin; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Rome; Stockholm; Tallinn; Warsaw*
***Asia Pacific:*** *Auckland; Bangkok; Beijing; Canberra; Hong Kong; Kuala Lumpur; Melbourne; Seoul; Shanghai; Singapore; Sydney; Tokyo; Wellington*

---

### Lexicon Communications Corp.

| | | |
|---|---|---|
| <u>Los Angeles Office</u> | Steven B. Fink | ***Emergency Only*** |
| 9200 Sunset Blvd. | Tel. (213) 346-1212 | Contact switchboard @ |
| Suite 1203 | Cell (626) 253-1519 | (213) 346-1200, ext. 225 |
| Los Angeles, CA 90069 | sfink | |
| | <u>Lexicon Comm web address:</u> | |
| | www.crisismanagement.com | |

---

### PR21 (A Division of Edelman Worldwide)

| | | |
|---|---|---|
| <u>New York Office</u> | Jon Goldberg | ***Emergency Only*** |
| 79 Fifth Avenue, 17th Fl. | Tel. (212) 299-8952 | Cell (973) 699-7148 |
| New York, NY 10003 | Fax (212) 462-1026/7 | Pager (877) 386-8115 |

***Additional United States/Canada Offices:***
*Atlanta; Austin; Chicago; Dallas; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.*

***International Offices:***
***Latin America:*** *Buenos Aires; Mexico City; Sao Paulo*
***Europe:*** *Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris*
***Asia Pacific:*** *Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei*

---

### Robinson Lerer & Montgomery

| | | |
|---|---|---|
| <u>New York Office</u> | Michael J. Gross | ***Emergency Only*** |
| 75 Rockefeller Plaza | Tel. (212) 484-7721 | Contact switchboard @ |
| 6th Floor | Cell (917) 853-0620 | (212) 484-6100 |
| New York, NY 10019 | Fax (212) 484-7411 | |
| | mgross52@aol.com | |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Sitrick and Company Inc.** | | |
| Los Angeles Office<br>2029 Century Park East<br>Suite 1750<br>Los Angeles, CA 90067 | Michael S. Sitrick<br>Tel. (310) 788-2850<br>Cell (310) 788-2855 | *Emergency Only*<br>(310) 358-1011<br>24 hours/7 days |

Additional United States Offices:  New York and Washington, D.C.

*Archive Copy*

## FLORIDA ADDENDUM TO THE DECLARATIONS

If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:

American International Companies ®
70 Pine Street
New York, NY 10270
(212) 770-7000

74825(02/01)
AH1405

*Archive Copy*

ENDORSEMENT No. 10

**This endorsement, effective 12:01 AM:** September 15, 2007

**Forms a part of policy no.:** BE     5346464

**Issued to:**  FINEST DRYWALL INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## ENDORSEMENT FOR CONTINUING OR PROGRESSIVE BODILY INJURY, PROPERTY DAMAGE OR PERSONAL INJURY

In Section IV. Definitions, the following amendments are made:

1.    Paragraph 1. of Definition H. **Occurrence** is amended to include the following provision:

In the event of continuing or progressive **Bodily Injury** or **Property Damage** over any length of time, such **Bodily Injury** or **Property Damage** shall be deemed to be one **Occurrence** and shall be deemed to occur only when such **Bodily Injury** or **Property Damage** first commenced.

2.    Paragraph 2 of Definition H. **Occurrence** is amended to include the following provision:

In the event of continuing or progressive **Personal Injury** over any length of time, such **Personal Injury** or damage shall be deemed to be one **Occurrence** or offense and shall be deemed to occur or be committed only when such **Personal Injury** first commenced.

It is further agreed that:

1.    In the event of continuing or progressive **Bodily Injury, Property Damage** or **Personal Injury** over any length of time, we will have no duty to defend or investigate any **Occurrence**, offense, claim or **suit** unless:

a.    Such **Bodily Injury, Property Damage** or **Personal Injury** first commenced during the policy period; and

b.    The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies.

2.    This insurance does not apply to **Bodily Injury, Property Damage** or **Personal Injury** which is continuing or progressive and which first commenced prior to the inception date of this policy. This exclusion shall apply whether or not the **Insured's** legal obligation to pay for damages for **Bodily Injury, Property Damage** or **Personal Injury** was established before the inception date of this policy.

3.    The following Conditions are added to Section VI.  Conditions of this policy:

a.    Obligations of Other Insurers.

Nothing herein shall be interpreted to relieve any other insurer from obligations under policies issued to any **Insured** which provide coverage for all or part of any continuing or progressive **Bodily Injury, Property Damage or Personal Injury.**

b.    Defects and Deficiencies in Buildings and Real Property.

With respect to any alleged defects or deficiencies in buildings or real property, this endorsement applies separately to each alleged defect or deficiency.

All other terms and conditions of this policy remain  unchanged.

_____
AUTHORIZED REPRESENTATIVE

69562 (1/98)          *Archive Copy*
AH0404

ENDORSEMENT No. 11

**This endorsement, effective 12:01 AM:**   September 15, 2007

**Forms a part of policy no.:** BE     5346464

**Issued to:**   FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### SILICA EXCLUSION

This insurance does not apply to:

1.     **Bodily Injury, Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to silica, silica products, silica fibers or silica dust;

2.     Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage,** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to silica, silica products, silica fibers or silica dust; or

3.     Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to silica, silica products, silica fibers or silica dust.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

ENDORSEMENT No. 12

**This endorsement, effective 12:01 AM:** September 15, 2007

**Forms a part of policy no.:** BE    5346464

**Issued to:** FINEST DRYWALL INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### PRE-EXISTING DAMAGES AND/OR DEFECTS EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of, based on or involving the continuation of in the period of this policy, any pre-existing damages and/or defects known to any "Insured" before the effective date of this policy as shown in Item 2. of the Declarations. This exclusion shall apply whether or not the "Insured's" legal obligation to pay for such pre-existing damages and/or defects was established before the effective date of this policy. This exclusion shall be applicable to all known pre-existing damages and/or defects including, but not limited to, those listed in the Schedule of this endorsement.

Solely for the purposes of this endorsement, "Insured" shall mean the **Named Insured**, its officers, directors, partners, risk managers or any other persons acting in similar capacities.

Schedule of Known Pre-Existing Damages And/Or Defects

NONE KNOWN

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

65597 (6/96)
AH0348            *Archive Copy*

ENDORSEMENT No. 13

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no.:** BE     5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>**EMPLOYERS' LIABILITY EXCLUSION**</u>

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured**.

All other terms and conditions of this policy remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

62279 (03/95)          *Archive Copy*
AH0278

ENDORSEMENT No. 14

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no: BE    5346464**

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy Form**

**Total Pollution Exclusion Endorsement**

This policy is amended as follows:

**Section V. Exclusions**, Paragraph M. is deleted in its entirety and replaced by the following:

This insurance does not apply to:

1.  Any **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere in the world at any time;

2.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.  Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

For the purpose of this endorsement only, **Section IV. Definitions** is amended to include the following additional definition:

**Pollutants**  means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**

62221 (03/03)
AH0272                    *Archive Copy*

ENDORSEMENT NO. 15

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no:**  BE     5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### AIRCRAFT LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft.

All other terms, conditions and exclusions remain the same.

_____
AUTHORIZED REPRESENTATIVE

62084 (2/95)
AH0268                    *Archive Copy*

ENDORSEMENT No. 16

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no.:** BE      5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### LEAD EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury, Advertising Injury** or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption of or exposure to lead in any form or products containing lead.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

61718 (12/94)          *Archive Copy*
AH0261

ENDORSEMENT No. 17

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no.:** BE     5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### COMMERCIAL UMBRELLA

### FLORIDA AMENDATORY ENDORSEMENT

In Section VI, Conditions, Condition D, Cancellation, is hereby deleted in its entirety and replaced by the following:

**D.**     Cancellation/Nonrenewal/Renewal Premium

Cancellation

1.     You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.     Policies in effect for ninety (90) days or less.

We may cancel this policy. If we cancel for non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Such notice of cancellation shall state the reason or reasons for the cancellation. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice.

3.     Policies in effect for more than ninety (90) days.

We may not cancel this policy unless the cancellation is based on one or more of the following reasons: a material misstatement, a non-payment of premium, a failure to comply with underwriting requirements established by us within ninety (90) days of the date of effectuation of coverage, a substantial change in the risk covered by this policy or when the cancellation is for all insureds under such policies for a given class of insureds.

If we cancel for non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any of the other reasons stated above, we must mail or deliver to you not less then forty-five (45) days advance written notice stating when the cancellation is to take effect. Such notice of cancellation shall state the reason or reasons for the cancellation. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice.

If we fail to provide the required forty-five (45) days advance written notice of cancellation, the coverage provided to you shall remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by you, whichever occurs first.

4.   The policy period will end on the day and hour stated in the cancellation notice.

5.   If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

6.   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

7.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.   The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

9.   Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

<u>Nonrenewal/Renewal Premium</u>

We must mail or deliver to you at least forty-five (45) days advance written notice of nonrenewal or of the renewal premium. If the policy is not to be renewed, the written notice will state the reason or reasons as to why the policy is not to be renewed. This requirement applies only if you have furnished all of the necessary information so as to enable us to develop the renewal premium prior to the expiration date of this policy.

If we fail to provide the required forty-five (45) days advance written notice the coverage provided to you shall remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by you, whichever occurs firsts. The premium for the coverage shall remain the same during any such extension period except that if the rate filing then in effect would have resulted in a premium reduction, the premium during such extension of coverage shall be calculated based upon the later rate filing.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 18

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no.: BE    5346464**

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## MARINE LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of any marine liability which includes but is not limited to the following:

| | |
|---|---|
| Charterers Liability | Terminal Operation Liability |
| Safe Berth Legal Liability | Wharfingers Liability |
| Stevedores Liability | Protection and Indemnity including Collision |
| Towers Liability | Ship Builders Liability |
| Jones Act Coverage | U.S. Longshoreman and Harbor Workers |
| Ship Repairers Legal Liability | |

It is further agreed that this insurance does not apply to:

1.  **Bodily Injury** or **Property Damage** arising out of the maintenance, fueling, loading or unloading of any watercraft or **Property Damage** to any watercraft in the **Insured's** care, custody or control;

2.  **Bodily Injury** to passengers or **Property Damage** to property of passengers;

3.  **Property Damage** to any dock, pier, harbor, bridge, buoy, lighthouse, breakwater structure, beacon, cable or to any fixed or movable object or property for which the **Insured** may be held liable; or

4.  The cost or expense of, or incidental to, the removal of the wreck of any vessel.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**

60468 (5/94)      ***Archive Copy***
AH0210

ENDORSEMENT No. 19

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no.:** BE     5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### PROFESSIONAL LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60458 (5/94)          *Archive Copy*
AH0203

ENDORSEMENT No. 20

**This endorsement, effective 12:01 AM:** September 15, 2007

**Forms a part of policy no.:** BE      5346464

**Issued to:** FINEST DRYWALL INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## AUTOMOBILE LIABILITY FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any **auto.**

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.   This exclusion shall not apply; and

2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

_____

AUTHORIZED REPRESENTATIVE

60446 (5/94)          *Archive Copy*
AH0192

ENDORSEMENT No. 21

**This endorsement, effective 12:01 AM:**   September 15, 2007

**Forms a part of policy no.:** BE     5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## <u>CROSS SUITS EXCLUSION</u>

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any injuries initiated, alleged, or caused to be brought about by a **Named Insured** covered by this policy against any other **Named Insured** covered by this policy.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60441 (5/94)          *Archive Copy*
AH0187

ENDORSEMENT No. 22

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no:**  BE    5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy Form**

**Foreign Liability Exclusion Endorsement**

This policy is amended as follows:

**Section V. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to:

**Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that occurs outside the United
States of America, its territories and possessions, Puerto Rico and Canada.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

60419 (12/03)
AH1293                    *Archive Copy*

ENDORSEMENT No. 23

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no.:** BE     5346464

**Issued to:**  FINEST DRYWALL INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## SUBSIDENCE EXCLUSION

This insurance does not apply to any damages directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, or any other movements of land or earth; if any of the foregoing emanates from, or is attributable to, any operations of the **Insured**.

It is further agreed that this insurance does not apply to any damages arising out of any act of direct condemnation of property or exercise of power of eminent domain by the **Insured**, any act by the **Insured** of inverse condemnation, any taking of property by the **Insured** which is compensable under the Fifth or Fourteenth Amendments to the United States Constitution, or any taking of property by the **Insured** which is compensable under the Constitution of the State in which the claim is made.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 24

**This endorsement, effective 12:01 AM:** September 15, 2007

**Forms a part of policy no.:** BE    5346464

**Issued to:** FINEST DRYWALL INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## EMPLOYEE BENEFITS LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any negligent act, error or omission of the **Insured** or of any other person for whom the **Insured** is legally liable in the administration of the the **Insured's** Employee Benefit Programs as defined herein.

For the purposes of this endorsement, the following definitions apply:

1.  "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Worker's Compensation, Unemployment Insurance, Social Security and Disability Benefits.

2.  "Administration" shall mean:

    a.   Giving counsel to employees with respect to Employee Benefit Programs;

    b.   Interpreting Employee Benefit Programs;

    c.   Handling of records in connection with Employee Benefit Programs; or

    d.   Effecting enrollment of employees under Employee Benefit Programs;

    provided all such acts are authorized by you.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

57720 (6/93)          *Archive Copy*
AH0119

ENDORSEMENT No. 25

**This endorsement, effective 12:01 AM:**  September 15, 2007

**Forms a part of policy no.:** BE    5346464

**Issued to:**  FINEST DRYWALL INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### CONTRACTOR'S ENDORSEMENT
#### Excluded Hazards

This insurance does not apply to:

1.   **Property Damage** to any property or equipment leased by the **Insured**;

2.   **Property Damage** to property being installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured**;

3.   **Bodily Injury** or **Property Damage** arising out of any project insured under a "wrap-up" or any similar rating plan; or

4.   **Bodily Injury** or **Property Damage** arising out of any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

#### Following Form Hazards

It is further agreed that this insurance does not apply to:

1.   **Property Damage** arising out of:

    a.   Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

    b.   The collapse of or structural injury to any building or structure due to:

        1)   the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work,

        2)   the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof, or

    c.   Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

2.   Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.   This exclusion shall not apply; and

2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

<hr>

AUTHORIZED REPRESENTATIVE

*Archive Copy*