UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | : | MDL NO. 2047 |
| IN RE: CHINESE MANUFACTURED DRYWALL | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE FALLON |
| Olschewski, *et al.* v. Centerline Homes, Inc., *et al.* | : | MAG. JUDGE WILKINSON |
| Case No.: 09-06751 | : | |

**DEFENDANT CENTERLINE HOMES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT AND STRIKE CLAIMS FOR ATTORNEYS' FEES**

Defendant, Centerline Homes, Inc. ("Centerline"), by and through its undersigned counsel and pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, hereby files its Memorandum of Law in Support of its Motion to Dismiss Complaint. For all the reasons set forth herein, Centerline's Motion should be granted.

**I.      INTRODUCTION**

This matter generally arises from the alleged use of Chinese Drywall in the Plaintiffs' home. Plaintiffs have stated claims against Centerline, the purported builder and developer of the home, and several other Defendants "up the chain", sounding in negligence, products liability, breach of express and implied warranties, fraud, unjust enrichment, breach of contract,[1] private nuisance, medical monitoring, and violation of Florida's Deceptive and Unfair Trade Practices Act.[2] See Compl. (DE # 1, Attach. #2). However, all of Plaintiffs' claims must be dismissed because they are not supported by Florida law and/or have been improperly pleaded.

---

[1]      The breach of contract claim is directed solely against Centerline, while the balance of the claims are directed at all defendants.

[2]      Plaintiffs are also seeking class certification of their claims. Centerline reserves the right to assert all defenses to class certification once the Plaintiffs file a motion for class certification.

**MEMORANDUM OF LAW**

## II. THE APPLICABLE LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a cause of action against the Defendant. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, at 1965 (2007); *see also Weissman v. NASD*, 500 F.3d 1293, 1303 (11th Cir. 2007) (noting that higher pleading standard established in *Twombly*) (internal citations and quotations omitted). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge the[] claims across the line from conceivable to plausible." *Id.* at 1974.

The Federal Rules of Civil Procedure also address the need for pleadings to be clear and precise to allow the opposing party an opportunity to frame a response. For example, Rule 8(a) requires "a short and plain statement of the claims showing that the pleader is entitled to relief," and Rule 8(e) requires a pleading to be "simple, concise, and direct." The time and place of relevant events are material and must be alleged. *See* Fed. R. Civ. P. 9(f). A court's failure to require parties to adhere to those rules distorts the adversarial process, imperils fundamental principles of due process, and undermines the judicial system. *See Byrne v. Nezhat*, 261 F.3d 1075, 1128-32 (11th Cir. 2001) (setting forth a thorough analysis of the dangers of allowing "shotgun" pleadings). A court can properly dismiss a complaint that does not comport with

those rules. *See id.*; *Bonnie L. ex rel. Hadsock v. Bush*, 180 F. Supp. 2d 1321, 1348-49 (S.D. Fla. 2001) (citing *Byrne* to support dismissal of complaint).

### III. CENTERLINE HOMES, INC. IS NOT A PROPER PARTY TO THIS ACTION.

Plaintiffs have alleged that Centerline is the builder and/or developer of their residence. Compl., ¶¶ 13-14. However, a plain reading of the Purchase and Sale Agreement ("Agreement") reveals that Centerline was not the builder, developer, or seller of the Plaintiffs' home. *See* Ex. A.[3] Thus, all claims against Centerline, including the breach of contract and breach of express warranty claims, must be dismissed.

### IV. EVEN ASSUMING CENTERLINE IS A PROPER PARTY, ALL CLAIMS MUST BE DISMISSED.

Even assuming *arguendo* that Centerline is a proper party to this action, all of the claims against Centerline fail as a matter of law.

#### A. **Plaintiffs Complaint Must be Dismissed for Failure to Properly State Claims Against all Defendants.**

With the exception of Count X (breach of contract) against Centerline, Plaintiffs have asserted various claims against the eight named defendants (and various "Doe" defendants), but have failed to distinguish each defendant's alleged conduct. Plaintiffs refer to all of the defendants collectively as "Defendants" throughout the Complaint without differentiating the alleged conduct of Centerline from the numerous other defendants named in this lawsuit. In

---

[3] Although the Agreement was not attached to Plaintiffs' Complaint, it may be considered by the Court in support of Centerline's motion. The Agreement is central to Plaintiffs' claims against Centerline, particularly the breach of contract and breach of express warranty claims. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (holding that a document attached to a motion to dismiss may be considered by the court if it is central to the plaintiff's claim and undisputed).

3

doing so, Plaintiffs have failed to give adequate notice to each defendant as to what each defendant specifically did wrong. *See Lane v. Capital Acquisitions and Mgmt. Co.*, No, 04-60602 UV, 2006 WL 4590705, at *5 (S.D. Fla. April 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8."). The Complaint must therefore be dismissed for failure to properly state claims against all defendants, including Centerline.

Plaintiffs various allegations against the "Doe" defendants is also prohibited. *See New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094, n.1 (11th Cir. 1997) ("[F]ictitious party practice is not permitted in federal court."). Courts in the Eleventh Circuit consistently apply this rule. *See e.g., Meade v. Prison Health Servs.*, 1994 U.S. Dist. LEXIS 16533, at *11 (M.D. Fla. Nov. 10, 1994) ("There is no provision in the Federal Rules of Civil Procedure for fictitious party pleading, and thus the practice is prohibited."); *see also Macelvain v. United States*, No. 02-A-102-N, 2002 U.S. Dist. LEXIS 23053, at *2 n.1 (M.D. Ala. Aug. 14, 2002) ("Because fictitious party practice is not permitted under the Federal Rules of Civil Procedure, the fictitious defendants are due to be dismissed."); *Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1205, n. 4 (M.D. Ala. 2000) (dismissing Plaintiff's claims against fictitious defendants). Thus, because Plaintiffs' claims are directed at all defendants, including the Doe defendants, Plaintiffs' Complaint must be dismissed.

      **B.** **Plaintiffs' Tort Claims are Barred by the Economic Loss Rule.**

Plaintiffs have asserted various tort claims against Centerline, including negligence (Count I), negligence per se (Count II), strict liability (Count III), fraudulent concealment (Count VI), fraudulent misrepresentation (Count VII), negligent misrepresentation (Count VIII), unjust enrichment (Count IX), private nuisance (Count XI), and violation of the Florida Deceptive and

4

Unfair Trade Practices Act (Count XIII). It is axiomatic that when parties have a contractual relationship, the parties may not simply "end-run" the terms of the agreement by asserting tort claims. A homeowner who contracts with a homebuilder to purchase a home cannot maintain tort claims against the homebuilder for conduct that is indistinguishable from acts that would support a claim for breach of contract. *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004). Rather, to avoid dismissal of a tort claim against a homebuilder, the economic loss rule requires a homeowner to allege some additional conduct on the part of the homebuilder which amounts to an independent tort, arising from a duty separate and apart from the homebuilder's duties under the contract. *Id*. The policy reason behind this rule is the assumption that the homebuilder and homeowner allocated the risk of a breach of contract through their contractual agreement. *Id*.

Thus, "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." *Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc.,* 620 So. 2d 1244, 1247 (Fla. 1993) *(citing East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 870 (1986)). The economic loss rule does not permit a homeowner to "circumvent the contractual agreement by . . . seeking a better bargain than originally made." *Indemnity Ins. Co.,* 891 So. 2S at 536.

Here, the underlying conduct in support of Plaintiffs' tort claims against Centerline is the allegation that Centerline sold homes that contain defective Chinese-manufactured drywall. This claim, "relates directly to the subject matter of the parties' agreement, or are interwoven with the agreement, [such that] no independent tort exists and the economic loss rule applies." *Premix-Marbletite Mfg.* v. *SKW Chems., Inc.,* 145 F. Supp. 2d 1348, 1358-59 (S.D. Fla. 2001).

Therefore, Plaintiffs may not maintain tort claims for this alleged conduct that is indistinguishable from the acts that are also alleged to be the basis for a breach of contract. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So. 2d 1238, 1239 (Fla. 1996).

In *Fishman v. Boldt,* 666 So. 2d 273 (Fla. 4th DCA 1996) the purchasers of a home brought an action against the builder of a seawall which failed, which resulted in damages to the pool, the patio and the home, alleging negligent construction. The trial court entered summary judgment, disposing of the homeowners' tort claims. The district court of appeal affirmed stating as follows:

> ….The appellants sued the appellee, Bert Boldt, as the original builder of the seawall, for negligent construction. The trial court entered summary judgment for Boldt based on <u>Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc.,</u> 620 So. 2d 1244 (Fla. 1993). We affirm.
>
> ….In the instant case, the "product" purchased by the appellants was the home with all of its component parts, including the seawall, pool, and patio. Therefore, the pool, patio, and home were not "other property" which would exclude the application of the economic loss rule. *See also* <u>Sensenbrenner v. Rust, Orling & Neale Architects, Inc., 236 Va. 419, 374 S.E. 2d 55 (1988)</u> (Cited in <u>Casa Clara, 620 So. 2d at 1246, 1247 n. 8</u>).

*Id.* at p. 274. Similarly, Plaintiffs are bringing an action for damages to the home and its component parts. Unless Plaintiffs can prove personal injury, all of their tort claims are barred by the economic loss rule.

In light of the foregoing, Plaintiffs tort claims against Centerline, except for personal injury, should be dismissed because the allegedly wrongful conduct underlying these claims is indistinguishable from the acts that support the claims for breach of contract. *See Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."); *Weimar v. Yacht Club Point Estates, Inc., 223* So. 2d

100, 103 (Fla. 4th DCA 1969) ("[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract."); *Electronic Sec. Sys Corp. v. Southern Bell Tel. & Tel. Co.,* 482 So. 2d 518, 519 (Fla. 3d. DCA 1986) ("[B]reach of contract, alone, cannot constitute a cause of action in tort... [and] [i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.").

Moreover, even assuming Plaintiffs were able to state viable tort claims for personal injury or damage to property other than the homes themselves, then Centerline respectfully submits that damages in those cases would be limited to non-economic damages for personal injury and damages for the "other property". In *Casa Clara,* the Florida Supreme Court held that the economic loss rule prohibited tort recovery when the product damages itself (in that case, the concrete, which was integrated into the completed structures) and causes economic loss, but does not cause personal injury or damage to any other property. In language that should define the scope of the homebuilders' economic loss rule defense in this case, the Court stated:

> …The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of loss, one must look to the product purchased by the plaintiff, not the product sold by defendant. *King v. Hilton-Davis,* 855 F.2d 1047 (3d. Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished products-dwellings-not the individual components of those dwellings. They bargained for the finished products, not their various components. The property became an integral part of the finished product and, thus, did not injure 'other' property.

*Id.* at p. 1247-1248. As in *Casa Clara,* the products purchased by Plaintiffs here are the homes, not the individual components.

This court recently previewed these issues, and the Order and Reasons issued by Judge Fallon on January 13, 2010, MDL Case No. 2047, In Re: Chinese Manufactured Drywall Products Liability Litigation, states:

> "….In their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity ELR established by the Florida Supreme Court in *Indemnity Insurance Co. of North America v. American Aviation, Inc.,* 891 So. 2d 532 (Fla. 2004). The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contract breach, and in other limited circumstances. *Id.* at 536-37. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs". This issue is not presently before the Court and thus it declines to draw any further conclusions with regard to Plaintiffs' claims against Homebuilders.

*Id.* at p. 30. The issue of the contractual privity ELR is now before the Court and Plaintiffs' claims for economic tort damages should be dismissed as set forth above.

### C. **Plaintiffs' Expressly Disclaimed all Implied Warranties.**

In Counts V, XIV and XV, Plaintiffs attempt to state causes of action for breach of implied warranties against all defendants. However, Plaintiffs' claims for breach of implied warranties against Centerline should be dismissed because Plaintiffs expressly disclaimed all implied warranties in the Agreement when they purchased their home. Specifically, the Agreement states:

> 12.1.2. DURING THE TIME THAT THE LIMITED WARRANTY AND THE THIRD PARTY WARRANTY REMAIN IN EFFECT, ANY IMPLIED WARRANTIES AVAILABLE TO YOU UNDER FEDERAL OR STATE LAW WITH RESPECT TO THE CENTRAL AIR CONDITIONING AND HEATING SYSTEMS SHALL REMAIN AVAILABLE TO YOU. **WITH RESPECT TO ALL OTHER COMPONENTS OF THE RESIDENCE, SELLER GIVES THE LIMITED WARRANTY AND THIRD PARTY WARRANTY EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED.** TO THE MAXIMUM EXTENT LAWFUL, AND WITH THE EXCEPTION OF IMPLIED WARRANTIES AVAILABLE TO PURCHASER FOR A LIMITED AMOUNT OF TIME 1N ACCORDANCE WITH THE

> MAGNUSON-MOSS WARRANTY FEDERAL TRADE COMMISSION IMPROVEMENT ACT (15 U.S.C. 2301, ET. SEQ.), **SELLER DISCLAIMS ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY, INTENDED USE, WORKMANSHIP, OR CONSTRUCTION, RESPECTING THE HOME, COMMON AREAS, OF THE COMMUNITY, IF ANY, AND ALL FIXTURES OR ITEMS OF PERSONAL PROPERTY SOLD PURSUANT TO THIS AGREEMENT, OR ANY OTHER REAL OR PERSONAL PROPERTY WHATSOEVER CONVEYED IN CONNECTION WITH THE SALE OF THE RESIDENCE, OR LOCATED WITHIN THE COMMUNITY WHETHER ARISING FROM THIS AGREEMENT, USAGE, TRADE, IMPOSED BY STATUTE, COURSE OF DEALING, CASE LAW OR OTHERWISE.**

Agreement, p. 3.

A detailed agreement relative to items covered by warranty and those that are excluded is enforceable. *McGuire v. Ryland Group, Inc.*, 497 F. Supp. 2d 1356 (M.D. Fla. 2007) (upholding disclaimer of implied warranty in claim brought by homeowner). Moreover, contractual exclusions of implied warranties are enforceable. *Saunders Leasing System, Inc. v. Gulf Central Distribution Center*, 513 So. 2d 1303 (Fla. 2d DCA 1987). Because the Agreement expressly disclaims **all** implied warranties, Counts V, XIV and XV fail as a matter of law and must be dismissed. *See Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (holding that defendant could not be liable for breach of implied warranty because the agreement disclaimed all implied warranties).

### D. **Plaintiffs' Breach of Express Warranty Claim is Barred by the Express Warranties.**

Plaintiffs' claim for breach of express warranty must also be dismissed. Plaintiffs received two express warranties upon purchasing the subject residence: (1) the Centerline Homes Limited Warranty (which is annexed to the Agreement in Exhibit A), and (2) the Home Buyers Warranty Corporation VI, a third party warranty (*see* Exhibit B). As specified in the Agreement, these warranties were the **sole** warranties provided to the Plaintiffs. *See* Agreement, p. 3.

9

Plaintiffs' property damage claims and related damages are barred under the express warranties provided to Plaintiffs. The Limited Warranty specifies that only "substantial construction defects" are covered under the express warranty. Limited Warranty, p. 5. For example, the Limited Warranty explicitly warrants "load bearing elements" of the subject property, but excludes non-bearing elements, such as drywall. *Id.* In addition, the Home Buyers' Warranty provides limited coverage for defects associated with the drywall used in the subject property. *See* Ex. B (Home Buyers' Warranty VI), p. 2, 20. However, the defects alleged by Plaintiffs are not covered under the Home Buyers' Warranty. Thus, there has been no breach of an express warranty and Count IV must be dismissed.

### E. Plaintiffs Failed to Plead their Fraud Claims with the Requisite Specificity.

Plaintiffs' claims for fraudulent concealment (Count VI), fraudulent misrepresentation (Count VII), and negligent misrepresentation (Count VIII)[4], should be dismissed because Plaintiffs failed to plead these claims with the requisite specificity. When a plaintiff raises claims sounding in fraud, the plaintiff must state with particularity the circumstances constituting fraud. See Fed. R. Civ. P. 9(b). "A mere conclusory allegation which asserts fraud without a description of the fraudulent conduct will not fulfill Rule 9(b)." *United States v. Magellan Health Services, Inc.*, 74 F. Supp. 2d 1201, 1215 (M.D. Fla. 1999) (finding that when plaintiffs plead fraud, they must generally allege the date, time and place). Instead, to satisfy Rule 9(b) the Complaint must allege the following:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; and (2) the time and place of each such statement and the person responsible for making or, in the case of omissions, not making same: and (3) the

---

[4] *See Morgan v. W.R. Grace & Co. – Conn.*, 779 So. 2d 503, 506 (Fla. 2d DCA 2000) (requirement that fraud be pleaded with particularity also applies to claims for negligent misrepresentation); *Thompson v. Bank of N.Y.*, 862 So. 2d 768 (Fla. 4th DCA 2003).

content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

*Bruhl v. Price Waterhousecoopers Int'l*, 2007 WL 983263 (S.D. Fla. Mar. 27, 2007); s*ee also Clark v. Porcelli*, 2009 WL 210859, *1 (M.D. Fla. Jan. 27, 2009); *Sunoptic Tech., LLC v. Integra Luxtec, Inc.*, 2009 WL 722320, *2 (M.D. Fla. Mar. 18, 2009).

Here, Plaintiffs have failed to specify: (1) the particular misrepresentations or omissions that were made by Centerline to Plaintiffs; (2) the time and place when these alleged misrepresentations were supposedly made; (3) the individuals who made these allegations; and (4) what Centerline obtained as a consequence of the fraud. Rather, Defendants made broad accusations against all defendants without providing the requisite information. Counts VI, VII and VII must therefore also be dismissed.

### F. Plaintiffs Claim for Unjust Enrichment Fails Because They Have Adequate Remedies at Law.

Plaintiffs' unjust enrichment claim (Count IX) fails as a matter of law. It is well settled in Florida that "unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA 1987) (dismissing unjust enrichment count because plaintiff had a contractual remedy). Consequently, an unjust enrichment claim must fail upon a showing that an express contract exists. *Id.*

Here, Plaintiffs' claim for unjust enrichment must fail because an express contracts exist between the parties. Moreover, Plaintiffs allege to have adequate remedies at law, and are, in fact, already pursuing those remedies in this case. Indeed, Plaintiffs are seeking the same relief in their unjust enrichment count as they are in their breach of contract count. (Compare Compl. at ¶ 183 with Compl. at ¶ 189). Therefore, because Plaintiffs have adequate remedies at law, their

claim for unjust enrichment fails as a matter of law and the Court should dismiss Count IX of the Complaint.

### G. Plaintiffs Cannot State a Claim for Private Nuisance.

Plaintiffs' claim for private nuisance (Count XI) should be dismissed. "[The law of private nuisance is bottomed on the fundamental rule that every person should use his own property as not to injure that of another." *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954). "Nuisance, in law, for the most part consists of using one's property as to injure the land or some incorporeal right of one's neighbor." *Beckman v. Marshall*, 85 So, 2d 552, 554 (Fla. 1956). Stated differently, a claim for private nuisance requires conduct on one person's property that causes harm to another person's property.

In this case, all of the alleged conduct occurred solely on the Plaintiffs' own property, and existed at the time the Plaintiffs purchased their home. As such, Plaintiffs fail to state a claim for private nuisance. *See Morgan v, W.R. Grace & Co.-Conn*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) ("we conclude that Ms. Morgan has not alleged a theory of nuisance, entitling her to monetary damages, based upon an alleged condition on her own property, which existed at the time she purchased the land"). Therefore, the Court should dismiss Count XI of the Complaint.

### H. Plaintiffs Failed to State a Claim for Medical Monitoring.

In Count XII of the Complaint, Plaintiffs ask the Court for equitable and injunctive relief; including requiring Centerline to "initiate and pay for a medical monitoring program." (Compl. at ¶ 198). Medical monitoring is an equitable remedy that is available in only limited circumstances. *Petito v. AH Robins Co., Inc.*, 750 So. 2d 103, 108 (Fla. 3d DCA 1999). A trial court may use its equitable powers to create and supervise a medical monitoring program if a plaintiff proves the following seven elements: (1) exposure greater than normal background

levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Id.* at 106-07.

Here, Plaintiffs have failed to allege the elements necessary to state a claim for medical monitoring. For instance, Plaintiffs do not allege that: (i) a monitoring procedure exists that makes the early detection of the alleged disease possible; (ii) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; or (iii) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. Therefore, Plaintiffs fail to state a claim for medical monitoring, and Count XII should be dismissed.

## I.     The Complaint Fails to State a Claim Under FDUTPA.

Lastly, in Count XIII, Plaintiffs purport to allege a cause of action for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). This Act is embodied in Section 501.201 to 501.213, Florida Statutes. In bringing a claim under FDUTPA, "a plaintiff must do more than merely allege in a conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant acted 'wrongfully, unreasonably and unjustly' and for a `deceptive and improper purpose.'" Infinity Global, LLC v. Resort at Singer Island, Inc., No. 07- 80690-C1V, 2008 WL 1711535, at *4 (S.D. Fla. April 10, 2008) (finding that plaintiff failed to state a claim under FDUTPA) (citations omitted). FDUTPA is "intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the

goods or services purchased by the consumer" and authorizes a consumer to recover actual damages for a violation of FDUTPA. *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985); Fla. Stat, § 501.211(2). The measure of actual damages is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered" *Urling*, 468 So. 2d at 454. Where a plaintiff has failed to allege a recoverable loss under FDUTPA (i.e., actual damages), the claim is subject to dismissal. *See Smith v. 2001 South Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004) ("We conclude that the trial court was correct in dismissing appellant's complaint because appellant did not allege a recoverable loss under the statute and, therefore, failed to state a cause of action.").

In this case, Plaintiffs are not seeking actual damages. Rather, Plaintiffs are seeking only special and consequential damages, including the costs to repair their homes and replace the other property allegedly damaged by the defective drywall, and diminution in value damages. (Compl. at ¶¶ 210-211). However, these damages are not recoverable under FDUTPA. *Urling*, 468 So. 2d at 454 (denying cost spent repairing damages caused by termites because it "constitutes special or consequential damages which fall outside the statutory concept as defined in section 501.211, Florida Statutes"); *Kia Motors America Corp v. Butler*, 985 So. 2d 1133, 1140 (Fla. ad DCA 2008) (noting that "FDUTPA 'actual damages' do not include consequential damages, such as repair damages or resale damages"); *Rollins, Inc.*, 951 So. 2d at 869-70 ("the recovery afforded under FDUTPA does not include diminution in value or stigma damages"). Nor are damages to "property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *Rollins, Inc. v. Heller*, 454 So. 2d 580, 584-85 (Fla. 3d DCA 1984) (denying recovery for items stolen due to defective burglary alarm system because

14

FDUTPA "only allows recovery of damages related to the property which was the subject of the consumer transaction"). Therefore, because Plaintiffs have failed to plead actual damages and are instead seeking damages that are not recoverable under FDUTPA, the court should dismiss Plaintiffs' FDUTPA claim. *Smith*, 872 So. 2d at 994.

V.  **PLAINTIFFS' CLAIMS FOR ATTORNEYS' FEES MUST BE STRICKEN**

In their prayer for relief, the Plaintiffs have generally alleged an entitlement to attorney's fees. Compl., p. 49. Plaintiffs have stated fifteen different theories of liability, but only one of the Plaintiffs' counts authorizes a *discretionary* award of prevailing party attorney's fees. Namely, only Count XIII based upon an alleged violation of Florida Deceptive and Unfair Trade Practice permits a discretionary award of attorney's fees. Accordingly, Plaintiffs' general claim for attorney's fees must be stricken and/or limited to Count XIII.

WHEREFORE, Defendant Centerline Homes, Inc. respectfully requests that this Court dismiss the Complaint and grant such other and further relief as this Court deems just and proper.

Dated March 2, 2010                                              Respectfully submitted,

By: __/s/ Vanessa M. Serrano_____
PETER R. GOLDMAN
Florida Bar No. 860565
VANESSA M. SERRANO
Florida Bar No. 51555
BROAD AND CASSEL
100 S.E. Third Ave., Ste. 2700
Fort Lauderdale, FL 33394
Telephone: (954) 764-7060
Facsimile: (954) 761-8135
pgoldman@broadandcassel.com
vserrano@broadandcassel.com

*Counsel for Centerline Homes, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing Memorandum of Law has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 2nd day of March, 2010.

                                            __/s/ Vanessa M. Serrano_____
                                            Vanessa M. Serrano

4841-7823-9237.1
34720/0038