BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

CASE NO. MDL Docket No. 2047

In re: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO THE FOLLOWING CASE: *Chartis Specialty Insurance Co. v. Banner Supply Co.*, Case No.: 8:10-cv-330-T 30 EAJ

______________________________________/

**MOTION TO TRANSFER AND NOTICE OF RELATED AND POTENTIAL TAG-ALONG ACTION SUPPORTING TRANSFER TO IN RE CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION IN THE EASTERN DISTRICT OF LOUISIANA**

Defendants, BANNER SUPPLY CO. ("Banner Co."), BANNER SUPPLY CO., INC. ("Banner, Inc."), BANNER SUPPLY COMPANY FORT MYERS, L.L.C. ("Banner Fort Myers"), BANNER SUPPLY COMPANY TAMPA, L.L.C. ("Banner Tampa"), BANNER SUPPLY COMPANY POMPANO, L.L.C. ("Banner Pompano"), BANNER SUPPLY COMPANY PORT ST. LUCIE, L.L.C. ("Banner Port St. Lucie"), and BANNER INTERNATIONAL, L.L.C. ("Banner International") (collectively the "Banner Entities"), pursuant to 28 U.S.C. § 1407 (a) (2009) and J.P.M.L. 7.5 (e) , move to transfer this action to *In re: Chinese Manufactured Drywall Products Liability Litigation*, Case No.: MDL Docket No. 2047 (the MDL Litigation) pending in the Eastern District of Louisiana. The Banner Entities state the following in support of this Motion:

**I.**

**FACTUAL BACKGROUND**

A.

*The Banner Entities and the Chinese Drywall*

The Banner Entities supply and distribute drywall. During 2006, the Banner Entities purchased Chinese-manufactured drywall and sold and distributed the Chinese-manufactured drywall to various drywall subcontractors for installation in single family and multi-family residences.

B.

*The Underlying Lawsuits*

The owners of certain homes located throughout Florida have made certain claims against the Banner Entities alleging that the Chinese-manufactured drywall installed in their homes is defective and has resulted in bodily injury and property damage to their homes and personal property. Banner has currently been sued two hundred twenty (220) times.

**II.**

**THE RELATED TAG-ALONG ACTION**

The Banner Entities are named insureds under certain umbrella policies (the "Policies") of insurance issued by Chartis Specialty Insurance Company, Illinois National Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA (the "Banner Insurance Carriers"). The Banner Insurance Carriers filed a Complaint for Declaratory Judgment (the "Complaint") against the Banner Entities in a case styled *Chartis Specialty Insurance Co. et al. v. Banner Supply Co., et al.,* Case No. 8:10-cv-339-T 30 EAJ, pending in the United States District Court, Middle District of Florida, on February 2, 2010 (the "Related Tag-Along Action).

The policy periods of the Policies issued by the Banner Insurance Carriers to the Banner Entities range from at least January 1, 2004 through January 1, 2010. The Banner Entities tendered the Chinese drywall claims to the Banner Insurance Carriers for indemnity and defense, but the Banner Insurance Carriers failed to acknowledge their coverage and defense obligations. The Banner Insurance Carriers attached two Complaints to their Complaint filed in the Related Tag-Along Action as Exhibits "A" and "B." The Complaint attached to the Banner Insurance Carriers' Complaint as Exhibit "A" is styled *Howard Abrams, et al. v. Knauf GIPS KG, et al., Case No. 09022693 (14)* and is pending in the Circuit Court of Broward County, Florida (the "Abrams Complaint"). The Complaint attached to the banner Insurance Carriers' Complaint as Exhibit "B" is styled *Robert Deane, et al. v. Knauf GIPS KG, et al., Case No. 09-21660 CA (02)* and is pending in the Circuit Court of Miami-Dade County, Florida (the "Deane Complaint"). ***The plaintiffs in the Abrams Complaint, Howard Abrams and Nally Dookwah-Abrams, as well as the plaintiffs in the Deane Complaint, Robert Deane and Lois Deane, are also class plaintiffs in a the putative class action lawsuit styled Sean and Beth Payton, et al. v. Knauf GIPS KG, et al., currently pending in MDL-2047, as case number 2:09-cv-07628-EEF-JCW (the "Underlying Putative Class Action") presided over by Judge Eldon Fallon of the Eastern District of Louisiana where all of the Banner Entities are party defendants.*** (emphasis added) See Page 1 of 17 of Exhibit "A" to the Underlying Putative Class Action, as well as Page 1 of 17 of Schedule "1" to the Underlying Putative Class Action, listing the Abrams and the Deanes as class plaintiffs in the Underlying Putative Class Action attached hereto as Composite Exhibit "A."

In the Related Tag-Along Action, the Banner Insurance Carriers seek a judgment from the United States District Court, Middle District of Florida, declaring that the Banner Insurance

Carriers have no duty under the Policies to defend or indemnify the Banner Entities with respect to any claims or damages arising from the Chinese drywall claims being asserted against the Banner Entities in any of the lawsuits where plaintiffs have alleged bodily injury or property damage as a result of Chinese-manufactured drywall. As alleged in their Complaint, the Banner Insurance Carriers assert the following bases for rejecting the Banner Entities' claims for coverage:

a. Insurance coverage is provided on an excess basis, and Plaintiffs have reserved their rights to deny coverage. See Complaint at ¶ 22;

b. The Banner Entities are being defended by their primary insurers and have not exhausted the limits of their primary policies. See Complaint at ¶ 23;

c. The claims are excluded by the Total Pollution Exclusion Endorsement. See ¶ 24 of the Complaint;

d. The claims are excluded from coverage to the extent that any claim for relief is not for "damages" as defined in the applicable policies such as equitable relief, including medical monitoring, or economic losses associated with defective drywall. See ¶ 25 of the Complaint.

e. The claims are excluded from coverage to the extent that the damages are not for "bodily injury" or "property damage" within the meaning of the policies; specifically the mere presence of defective drywall is not "property damage," and there is no coverage for replacing or repairing drywall. See ¶ 26 of the Complaint.

f. The claims are excluded from coverage to the extent that the "bodily injury" or "property damage" is not the result of an "occurrence" within the meaning of the policies. See ¶ 27 of the Complaint.

g. The claims are excluded from coverage if the "bodily injury" or "property damage" did not occur within the policy period. See ¶ 28 of the Complaint.

h. The claims are excluded from coverage if the "bodily injury" or "property damage" for which the Banner Entities are obligated to pay damages is the result of an assumption of liability in a contract or agreement. See ¶ 29 of the Complaint.

i. The claims are excluded from coverage if the "property damage" is caused to property the Banner Entities own, rent or occupy." See ¶ 30 of the Complaint.

j. The claims are excluded from coverage to the extent the Banner Entities' work is included in "products completed operations hazard" exclusion. See ¶ 31 of the Complaint.

k. The claims are excluded from coverage if the "property damage" or "bodily injury" does not exceed the applicable underlying insurance coverage. See ¶ 32 of the Complaint.

l. The claims are excluded from coverage if the "property damage" is to "impaired property" within the meaning of the policies, or property that has not been physically injured, arises out of a defect in the Banner Entities' product or work, or a delay on the part of the Banner Entities, or anyone acting on their behalf, to perform a contract or agreement in accordance with its terms. See ¶ 33 of the Complaint.

m. The claims are excluded from coverage to the extent that any one of the Banner Entities is not an insured under the policies. See ¶ 34 of the Complaint.

As conceded by the Banner Insurance Carriers in their Complaint filed in the Related tag-Along Action, the Banner Insurance Carriers rely on only two (2) complaints filed against the Banner Entities as a predicate for requesting this Court to enter a Declaratory Judgment "that Plaintiffs have no duty under the Policies to defend or indemnify Defendants [the Banner Entities] with respect to any claims or damages "***arising from defective drywall installed at the homes of the plaintiffs in the Underlying Lawsuits.***" (emphasis added) See Complaint at ¶¶10, 11, 12, 13, 14, 15 and 16, as well as Exhibits "A" and "B." The Banner Insurance Carriers define the "Underlying Lawsuits" as "***approximately 146 lawsuits.***" (emphasis added) See Complaint at ¶ 10. Yet the Banner Insurance Carriers attach only two (2) complaints to their Complaint and request this Court to declare that the Banner Entities are not entitled to a defense or coverage in all of the approximately one hundred forty six (146) lawsuits in which the Banner Entities are named defendants. See Complaint at ¶ 1 of the prayer for relief.

In requesting such relief, the Banner Insurance Carriers quote from several paragraphs of the Abrams Complaint and the Deane Complaint as the basis for requesting this Court to declare that Plaintiffs have no obligation to defend and provide coverage to the Banner Entities. See Complaint at ¶¶ 15 and 16. In addition, the Banner Insurance Carriers, without attaching any additional complaints to their Complaint, allege "[T]he Complaints in the Underlying Lawsuits generally contain counts for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and strict products liability." See Complaint at ¶ 12. The Banner Insurance Carriers attempt to bootstrap their position that the Banner Entities are not entitled to defense or coverage by alleging that "[A]ll of the Complaints filed in the Underlying Lawsuits contain ***substantially similar, if not identical***, allegations against Defendants [the Banner Entities] regarding defective Chinese Drywall." See Complaint at ¶ 13. Finally, the Banner Insurance Carriers attempt to paraphrase the allegations in unidentified complaints that have been filed in what they define as the Underlying Lawsuits and which are otherwise not attached to their Complaint in an effort to characterize for this Court what the Banner Insurance Carriers believe "[T]he Complaints filed in the Underlying Lawsuits ***generally allege.***" (emphasis added) See Complaint at ¶¶ 14(a), 14(b), 14(c). ***Interestingly, Plaintiffs fail to attach their Complaint the Complaint that was filed on behalf of the Abrams or the Deanes in the Underlying Putative Class Action pending before Judge Fallon in the Eastern District of Louisiana***. (emphasis added)

**III.**

**THE BASIS FOR NOTICE AND TRANSFER**

On June 15, 2009, the Panel issued a transfer order (the "June 15 Transfer Order") in which it determined that coordinated or consolidated pretrial proceedings were appropriate in ten

(10) lawsuits which shared "factual questions concerning drywall manufactured in China, imported to and distributed in the United States, and used in the construction of houses; plaintiffs in all actions allege that the drywall emits smelly, corrosive gases." In Re: Chinese-Manufactured Drywall Prod. Liab. Litig., 626 F. Supp. 2d 1346 (June 15, 2009). Pursuant to the June 15 Transfer Order, such proceedings were consolidated in the MDL Litigation pending in the United States District Court for the Eastern District of Louisiana ("E.D. La."), the Honorable Eldon E. Fallon presiding (MDL No. 2047).

Numerous actions have been transferred to MDL Case No. 2047 subsequent to the Panel's June 15 Transfer Order. Judge Fallon has undertaken to provide a forum for the pre-trial litigation, discovery, and possible resolution of all aspects of the cases resulting from the effects of Chinese drywall, including insurance defense and coverage. At a status conference on January 14, 2010, Judge Fallon indicated that the insurance issues will play a significant role in the MDL proceedings and expressed his preference for handling insurance matters in the MDL.

The Related Tag-Along Action and the underlying determination with regard to defense and coverage obligations of the Banner Insurance Carriers are premised upon the allegations made by the plaintiffs in the Abrams Complaint and the plaintiffs in the Deane Complaint. These plaintiffs are also plaintiffs in the Underlying Putative Class Action pending in the MDL Litigation, and the Banner Entities are defendants in the Underlying Putative Class Action pending in the MDL Litigation.

A review of the policy provisions alleged in the Complaint filed by the Banner Insurance Carriers in the Related Tag-Along Action reveals that the application of those provisions and exclusions cited by the Banner Insurance Carriers in Paragraphs 22 through 34 of their Complaint are, by there very nature, highly fact dependent. These are the same facts that are

currently at issue for determination in the Underlying Putative Class Action: (1) whether the "bodily injury" or "property damage" associated with the allegedly defective drywall arises from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants;" (2) whether the damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are "damages" within the meaning of the applicable policies; (3) whether the damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage constitute "bodily injury" or "property damage;" (4) whether the damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are "occurrences"; (5) whether the damages claimed by the plaintiffs in each lawsuit filed against the banner Entities and for which the Plaintiffs' policies may provide coverage are the result of an assumption of liability by the Banner Entities in a contract or agreement; (6) whether the damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are to property owned, rented or occupied by any of the Banner Entities; (7) whether the damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are caused by any of the Banner Entities' defective work; (8) whether the damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage will exceed the amount of any applicable underlying insurance coverage; (9) whether the damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are damages to "impaired property", arise from a defect in any of the Banner Entities work or products, or the delay or failure by any of the Banner Entities, or anyone acting

on their behalf, to perform a contract or agreement in accordance with its terms; and (10) whether the damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage were caused by a Banner Entity that was not an insured under any applicable policy. See e.g. Auto-Owners Insurance Co. v. Pozzi Window Co., 984 So. 2d 1241 (Fla. 2008); see also United States Fire Insurance Co. v. J.S.U.B., Inc., 979 So. 2d 871 (Fla. 2007).

As explained in more detail in the Legal Argument and Incorporated Memorandum of Law below, and as evidenced above, there are multiple common questions of fact in the Related Tag-Along Action and the Underlying Putative Class Action. Furthermore, the legal bases for rejecting the Banner Entities' claims for coverage asserted by the Banner Insurance Carriers in the Related Tag-Along Action are similar to the bases for rejecting claims for coverage raised by other insurance carriers in the MDL Litigation that is currently pending before Judge Fallon in the Eastern District of Louisiana. As a result of: (i) the common questions of fact that must be determined in the Related Tag-Along Action and the Underlying Putative Class Action; (ii) the similarity of the issues concerning insurance defense obligations and coverage obligations in the Related Tag-Along Action, the Underlying Putative Class Action and the other cases pending in the MDL Litigation before Judge Fallon; and (iii) Judge Fallon's intimate familiarity with the facts and issues surrounding all aspects of the Chinese drywall cases, including coverage and defense obligations, the transfer of the Related Tag-Along Action to the MDL Litigation is appropriate because the transfer will enhance the just and efficient administration of the Related Tag-Along Action and the Underlying Putative Class Action, and will promote the consistent resolution of issues common to both cases, including, but not limited to, pre-trial and discovery-related issues.

## II.

## LEGAL ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### A.

### *Transfer to the Eastern District of Louisiana for the Purpose of Coordinating Pretrial Proceedings Supports the Purpose of 28 U.S.C. § 1407*

Under 28 U.S.C. § 1407, "when civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." Id. "The basic purpose underlying the enactment of 28 U.S.C. § 1407 was to secure, in multi-district civil litigation as in all other civil litigation, the „just, speedy and inexpensive determination of every action." In re Nat. Student Marketing Litigation, 368 F. Supp. 1311, 1316 (J.P.M.L. 1973). The goals of § 1407 include "the need to avoid conflicting rulings and schedules, eliminate duplicative discovery, reduce litigation costs, and save time and effort on the part of all involved." In re Intel Corp. Microprocessor Antitrust Litigation, No. 05-1717-JJF, 2008 WL 5377979, at *2 (D. Del. 2008). Where, like here, multiple actions are pending in different districts where common questions of fact must be determined, transfer and coordination pursuant to § 1407 is both appropriate and proper. In re Western States Wholesale Natural Gas Antitrust Litigation, 290 F.Supp.2d 1376, 1378 (J.P.M.L. 2003) (finding that multiple actions involved common questions of fact and holding that centralizing actions "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."); see also In re European Rail Pass Antitrust Litigation, 2001 WL 587855, at *1 (J.P.M.L., 2001) (holding that consolidation of cases pursuant to section 1407 is "necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."); In re Air

West, Inc. Securities Litig., 384 F.Supp. 609, 611 (J.P.M.L. 1974). "There is another highly persuasive reason for transferring all these actions to one district for pretrial proceedings. We have consistently held that transfer of actions under section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists." In re Sugar Industry Antitrust Litigation, 395 F.Supp. 1271, 1273 (J.P.M.L. 1975).

The parties to the Underlying Putative Class Action will need to conduct extensive discovery concerning the Chinese manufactured drywall including, but not limited to, its alleged chemical composition, how and why the drywall is allegedly emitting chemical compounds, what chemical compounds are allegedly being emitted, why chemical compounds are allegedly being emitted, the alleged damages being suffered, the cause(s) of the alleged damages being suffered, and the amount of the alleged damages being suffered. These issues, as evidenced above, must be determined in both the Related Tag-Along Action, as well as the Underlying Putative Class Action pending in the MDL Litigation. These determinations are highly factual, and given the complexity of the subject of this litigation - chemical composition of drywall, chemical compounds being emitted from drywall, causes of the alleged property damage, causes of the alleged bodily injury – the transfer and consolidation of the Related Tag-Along Action with the Underlying Putative Class Action in the MDL Litigation will be critical to the prevent inconsistent rulings by multiple courts and duplicative discovery. In re Scotch Whisky, 299 F.Supp. 543, 544 (J.P.M.L. 1969) (holding that where actions share extremely complex questions of fact, transfer under Section 1407 is proper).

Again, a review of the policy provisions recited by the Banner Insurance Carriers in the Complaint filed in the Related Tag-Along Action reflects that the application of those provisions and exclusions cited will be, by there very nature, highly fact dependent. The facts that are

currently at issue for determination in the Underlying Putative Class Action are the same facts as those at issue in the Related Tag-Along Action and include, but are not limited to, whether the: (1) "bodily injury" or "property damage" associated with the allegedly defective drywall arises from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants;" (2) damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are "damages" within the meaning of the applicable policies; (3) damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage constitute "bodily injury" or "property damage;" (4) damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are "occurrences"; (5) damages claimed by the plaintiffs in each lawsuit filed against the banner Entities and for which the Plaintiffs' policies may provide coverage are the result of an assumption of liability by the Banner Entities in a contract or agreement; (6) damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are to property owned, rented or occupied by any of the Banner Entities; (7) damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are caused by any of the Banner Entities' defective work; (8) damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage will exceed the amount of any applicable underlying insurance coverage; (9) damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage are damages to "impaired property", arise from a defect in any of the Banner Entities work or products, or the delay or failure by any of the Banner Entities, or anyone acting

on their behalf, to perform a contract or agreement in accordance with its terms; and (10) damages claimed by the plaintiffs in each lawsuit filed against the Banner Entities and for which the Plaintiffs' policies may provide coverage were caused by a Banner Entity that was not an insured under any applicable policy. See Gadolinium Contrast Dyes Products Liability Litigation, 536 F.Supp.2d 1380, 1382 (J.P.M.L. 2008) (finding that "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as prerequisite to transfer."). Japanese Electronic Products Antitrust Litigation, 388 F.Supp. 565, 567 (J.D.M.L. 1975) (finding fact that one of two related cases involved two unique claims and four different defendants did not bar transfer pursuant to Section 1407).

B.

*The Eastern District of Louisiana is the Appropriate Forum to Preside Over the Related Tag-Along Action*

When entering the Transfer Order in the MDL Litigation on June 15, 2009, the Panel opined:

> …the centralization under Section 1407 in the Eastern District of Louisiana will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. … Centralization under Section 1407 will eliminate duplicative discovery, including discovery on international parties; prevent inconsistent pretrial rulings, particularly those with respect to class certification issues; and conserve the resources of the parties, their counsel and the judiciary.

As the Banner Insurance Carriers are well aware, the determination of defense and coverage obligations under an applicable insurance policy is directly dependent upon the allegations made in the underlying complaint filed against the insured. IDC Construction, L.L.C. v. Admiral Insurance Co., 339 F. Supp. 2d 1342, 1349 (S.D. Fla. 2004) (citing Tropical Park, Inc. v. United States Fidelity & Guaranty Co., 357 So. 2d 253, 256 (Fla. 3d DCA 1978); Biltmore Construction

Co. v. Owners Insurance Co., 842 So. 2d 947, 949 (Fla. 2d DCA 2003); Grissom v. Commercial Union Insurance Co., 610 So. 2d 1299, 1306-07 (Fla. 1st DCA 1992)). The Banner Insurance Carriers attached the Abrams Complaint and the Deane Complaint to their Complaint in the Related Tag-Along Action to form the basis of their request for a declaratory judgment that they have no obligation to defend or to provide coverage to the Banner Entities in any action where there is "bodily injury" or "property damage" arising from allegedly defective Chinese-manufactured drywall. The plaintiffs in the Abrams Complaint and the Deane Complaint are also plaintiffs in the Underlying Putative Class Action pending in the MDL Litigation. It is, therefore, appropriate that Judge Fallon determine the factual issues giving rise to defense and coverage obligations in the MDL Litigation. In fact, on January 14, 2010, Judge Fallon expressed his desire to entertain coverage and defense disputes in the MDL Litigation and stated:

> There's also some matter that I mentioned the last time with the insurance companies, the issue of whether or not they should be transferred to the MDL and consolidated with this case or whether they should go forward with separate, independent jurisdictions. I studied the matter a little more closely, and I find that a lot of the policy defenses that are being argued really have to do with the type of issues that I'll be dealing with the MDL; that is to say, a defense might be contesting contamination or contesting the type of materials that was being used and whether or not that is accepted or excluded by the policy. Rather than have discovery in the various districts of the country on the same issues-the whole purpose of the MDL is to prevent that-those insurance issues, since they deal with the same facts that I'll be dealing with in the MDL, it looks like that those cases are better and more efficiently dealt with if they are transferred to the MDL. Hopefully, that will be done.

See In re Chinese-Manufactured Drywall Products Liability Litigation, MDL No. 2047, January 14, 2010, Status Conference Hearing Transcript at 15 (E.D. La. Jan. 14, 2010). Not only has the Panel determined that the Eastern District of Louisiana is the appropriate forum to address the

Chinese drywall claims, Judge Fallon has expressly indicated his desire to address and decide insurance defense and coverage claims such as those pending in the Related Tag-Along Action.

C.

*Just, Efficient, and Consistent Resolution of Claims*

The Banner Entities are currently named defendants in a the Underlying Putative Class Action pending in MDL Litigation. Judge Fallon is intimately knowledgeable about the facts and circumstances surrounding all aspects of the Chinese drywall cases, including, as indicated by the quotation from the transcript above, the issues of insurance coverage and defense. Allowing Judge Fallon to preside over the Related Tag-Along Action and the Putative Class Action will promote the just, efficient and consistent resolution of the Related tag-Along Action and the Putative Class Action. In re Bausch & Lomb Inc. Contact Lens Solution Prods. Liab. Litig., 444 F.Supp.2d 1336 (J. P. M. L. 2006) (finding action should be transferred to district where relevant discovery will be found). The plaintiffs in the Abrams Complaint and the plaintiffs in the Deane Complaint are already class plaintiffs in the Putative Class Action pending in the MDL Litigation. Judge Fallon, therefore, will be making determinations relating to the same claims that these plaintiffs brought in Florida. It is only appropriate that the Related Tag-Along Action be transferred and consolidated with the Underlying Putative Class Action in the MDL Litigation so that the plaintiffs can be deposed once, the representatives of the Banner Entities can be deposed once, the representatives of the Banner Insurance Carriers can be deposed once, all fact witnesses can be deposed once, all expert witnesses can be deposed once, Judge Fallon can provide uniform and consistent rulings in the case, and Judge Fallon can make legal determinations regarding defense and coverage obligations relating to cases that are presently pending before him in the MDL Litigation. In re Live Concert Antitrust Litig., 429

F.Supp.2d 1363, 1364 (J. P. M. L. 2006) (transferring action to district that was "likely to provide a substantial number of witnesses and documents"). Moreover, a transfer of the Related Tag-Along Action to the Underlying Putative Class Action pending in the MDL Litigation will avoid inconsistent discovery and other pre-trial rulings in the Related Actions, as well as inconsistent results at trial. In re Continental Grain Co., 482 F. Supp. 330 (J.P.M.L. 1979) (granting motion pursuant to 28 USCS § 1407 to transfer all pending cases to the Eastern District of Louisiana for coordinated or consolidated pretrial proceedings for purposes of convenience of parties and witnesses and as promoting just and efficient conduct of litigation since (1) several actions in the litigation were already consolidated in transferee district; (2) most of parties are located in Louisiana; (3) action in transferee district is clearly most advanced; (4) judge in transferee district is judge most familiar with this litigation; (5) actions involve common questions of fact; and (6) centralization will prevent duplication of discovery and eliminate possibility of conflicting pretrial rulings concerning common factual questions).

Perhaps the most significant benefit of the transfer of the Related Tag-Along Action with the Putative Underlying Class Action pending in the MDL Litigation will be that the transfer will facilitate the resolution of both the plaintiff homeowners' claims against the Banner Entities and the Banner Entities' claims against the Banner Insurance Carriers. It may not be possible to resolve the homeowners' claims in the Underlying Putative Class Action without the participation of the Banner Insurance Carriers. Given such participation, however, the Banner Entities' claims against the Banner Insurance Carriers will almost certainly be resolved at the same time.

**III.**

**CONCLUSION**

WHEREFORE, for the reasons and authority cited herein, the fact that the plaintiffs in the underlying complaints relied upon by the Banner Insurance Carriers to avoid their obligations to defend and provide coverage to the Banner Entities are also plaintiffs in the Underlying Putative Class Action pending in the MDL Litigation, in the interest of conserving resources of the parties, their counsel and the judiciary, and in the interest of judicial efficiency and the avoidance of conflicting pretrial rulings, the Banner Entities respectfully request the Judicial Panel to enter an Order transferring the Related Tag-Along Action to the MDL Litigation, consolidating the Related Tag-Along Action with the Underlying Putative Class Action pending in the MDL Litigation pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, and for such other and further relief that this Court deems just and proper.

Dated this 4th day of March, 2010.

Respectfully submitted,

PETERSON & ESPINO, P.A.
/s/ Michael P. Peterson
Florida Bar No. 982040
mpeterson@petersonespino.com
8900 S.W. 117th Avenue, Suite C-104
Miami, Florida 33186
Telephone: (305) 270-3773
Facsimile: (305) 275-7410
*Attorneys for Banner Supply Co., Banner Supply* Co., Inc., Banner Supply Co. Port St. Lucie, L.L.C., Banner Supply Co. Tampa, L.L.C., Banner Supply Co. Pompano, L.L.C., Banner Supply Co. Port St. Lucie, L.L.C. and Banner Supply International, L.L.C.

**CERTIFICATE OF SERVICE**

I HEREBY certify that a true and correct copy of the foregoing was furnished by regular First Class U.S. Mail on this 4th day of March, 2010, to:

Russ M. Herman, Esquire
Herman Herman Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113-1116
*Plaintiff's Liaison Counsel*

Kerry J. Miller, Esq.
Frilot, LLC
1100 Poydras St., Suite 3700
New Orleans, LA 70163-3700
*Defendants' Liaison Counsel*

Cindy L. Ebenfield, Esq.
Hicks, Porter, Ebenfield & Stein, P.A.
11011 Sheridan Street, Suite 104
Cooper City, Florida 33026
Telephone: (954) 624-8700
Facsimile: (954) 624-8064
cebenfeld@mhickslaw.com
*Counsel for Chartis Specialty Insurance Co., Illinois National Insurance Co., and National Union Fire Insurance Co. of Pittsburgh, PA*

Joseph A. Hinckhouse, Esq.
Richard A. Hodyl, Esq.
Joshua A. Boddioni, Esq.
Hinkhouse, Williams Walsh, L.L.P.
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois 60601
Telephone: (312) 784-5400
Facsimile: (312) 784-5499
jhinkhouse@hww-law.com
rhodyl@hww-law.com
jboggioni@hww-law.com
*Counsel for Chartis Specialty Insurance Co., Illinois National Insurance Co., and National Union Fire Insurance Co. of Pittsburgh, PA*

United States District Court, Middle District of Florida
Lee Ann Bennett, Acting Clerk of Court
Sam M. Gibbons U.S. Courthouse
801 N. Florida Avenue
Tampa, Florida 33602-3800

*/s/ Michael P. Peterson*
MICHAEL P. PETERSON, ESQ.
Florida Bar No.: 982040

EXHIBIT "A"

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 1 | WCI BANK CLAIM NO. | NAME | ADDRESS | CITY | STATE | ZIP CODE | | |
| 2 | 4078 | ABRAMS, HOWARD & NALLY DOOKWAH-ABRAMS | 7651 NW 120TH DRIVE | PARKLAND | FL | 33076 | | |
| 3 | 4567 | ABREU, CESAR | 12367 NW 80TH PLACE | PARKLAND | FL | 33076 | | |
| 4 | 4472 | ACADIA II CONDOMINIUM ASSOCIATION | 1906 CLUBHOUSE DRIVE | SUN CITY CENTER | FL | 33573 | | |
| 5 | 4566 | ACETO, ANTHONY & MANEVICH, IDA | 225 MESTRE PLACE | NORTH VENICE | FL | 34275 | | |
| 6 | 4550 | ACETO, ANTHONY & MANEVICH, IDA | 201 MESTRE PLACE | NORTH VENICE | FL | 34275 | | |
| 7 | 4487 | ACKERMAN, LILLIAN | | | | | | |
| 8 | | ADAMS, ELAINE R. | 1028 RAINBOW COURT | BRADENTON | FL | 34212 | | |
| 9 | 4593 | ALFORD, EDGAR & RITA | 2104 SIFIELD GREENS WAY | SUN CITY CENTER | FL | 33573 | | |
| 10 | | ANDERSON, GREGG | 10530 AMIATA WAY, UNIT 202 | FORT MYERS | FL | 33913 | | |
| 11 | 4496 4090 | ANDERSON, WILLIAM P. & MARY T. | 1413 EMERALD DUNES DRIVE | SUN CITY CENTER | FL | 33573 | | |
| 12 | 4457 | ANDREASEN, GRANT & PATTY | 313 MESTRE PLACE | NORTH VENICE | FL | 34275 | | |
| 13 | 4594 | ARIAS, MIRTHA | | | | | | |
| 14 | | ARNOLD, JOE, R. | 2858 TIBURON BLVD E, UNIT 1 | NAPLES | FL | 34109 | | |
| 15 | 4486 | ARNOLD, LEE & MAUREEN | 1045 FISH HOOK COVE | BRADENTON | FL | 34212 | | |
| 16 | | AUGER, JERRY & SUSAN | 507 RIMINI VISTA WAY | SUN CITY CENTER | FL | 33573 | | |
| 17 | 4284 | AUKER, DANIEL B. & FRANCES | 10820 TIBERIO DRIVE | FORT MYERS | FL | 33913 | | |
| 18 | 3133 | AVERSANA AT HAMMOCK BAY CONDOMINIUM ASSOCIATION | | | | | | |
| 19 | 4525 | AWADALLAH, MAZEN | 8289 EMERALD AVENUE | PARKLAND | FL | 33076 | | |
| 20 | 4526 | AWADALLAH, MAZEN | 9650 EDEN MANOR | PARKLAND | FL | 33076 | | |
| 21 | | AVERY, JANET | 10671 CAMARELLE CIRCLE | FORT MYERS | FL | 33913 | | |
| 22 | 4014 | BAGGIERO, ALAN & DENA | 9601 EDEN MANOR | PARKLAND | FL | 33076 | | |
| 23 | 4436 | BAILEY, ROBERT & ANNE | 1433 EMERALD DRIVE | SUN CITY CENTER | FL | 33573 | | |
| 24 | 4494 4091 | BALLARD, MILDRED L. | 1437 EMERALD DUNES DRIVE | SUN CITY CENTER | FL | 33573 | | |
| 25 | 4559 | BANK OF AMERICA | | | | | | |
| 26 | | BANNIGAN, TIM | 11257 NW 65TH COURT | PARKLAND | FL | 33076 | | |
| 27 | | BARNES, DAVID | | | | | | |
| 28 | 4492 | BARNES, GARY & MAUREEN | 289 MONTELLUNA DRIVE | NORTH VENICE | FL | 34275 | | |
| 29 | | BARNETT, DEAN | 9320 EDEN MANOR | PARKLAND | FL | 33076 | | |
| 30 | | BARSHAI, WALTER | 9639 CLEMMONS STREET | PARKLAND | FL | 33076 | | |
| 31 | | BATA, KLARA & SARNJAI, ISTVAN | 8049 NW 126TH TERRACE | PARKLAND | FL | 33076 | | |
| 32 | 4581 | BECKER, JOHN | 1217 HUNTINGTON GREENS DRIVE | SUN CITY CENTER | FL | 33573 | | |
| 33 | 4295 | BELFOUR, ED & ASHLI | 7260 WISTERIA AVENUE | PARKLAND | FL | 33076 | | |
| 34 | | BELSON, LYUDMILA | 198 MEDICI TERRACE | NORTH VENICE | FL | 34275 | | |
| 35 | 4553 | BENESCH, PAUL M. | 1927 SIFIELD GREENS WAY | SUN CITY CENTER | FL | 33573 | | |
| 36 | | BERENS, HARRIET M. & WAYNE | 105 CIPRIANI COURT | NORTH VENICE | FL | 34275 | | |
| 37 | 4498 4084 | BERRA, DALE & JANE WOODRUFF | 310 MESTRE PLACE | NORTH VENICE | FL | 34275 | | |
| 38 | 4108 | BETH A. WININGER REVOCABLE TRUST | | | | | | |



*Sean and Beth Payton, et al. v. Knauf Gips, KG, et al.*

**Schedule "1"–Distributor/Supplier List of Subclasses to Plaintiffs Omnibus Class Action Complaint (I)**

| Plaintiff/Current Address | Distributor Defendant | Defendants' Subclass # |
|---|---|---|
| Davis, Jesse<br>8626 104th Avenue<br>Vero Beach, FL 32967 | Banner Supply Co. | 6 |
| Deane, Robert and Lois<br>2225 SE 20 Avenue<br>Homestead, FL 33035 | Banner Supply Co. | 6 |
| Deutsch, Hunting and Mary<br>590 Loretto Avenue<br>Coral Gables, FL 33146 | Banner Supply Co. | 6 |
| Dileo, Carl<br>634 Glen Court<br>Turnersville, NJ 08012 | Banner Supply Co. | 6 |
| Druand, Pedro and Alice<br>19020 SW 74 Avenue<br>Cutler Bay, FL 33157 | Banner Supply Co. | 6 |
| Edwards, Trenice<br>1745 NW 74th Avenue<br>Plantation, FL 33313 | Banner Supply Co. | 6 |
| Elliot, Dezman<br>9845 Cobblestone Creek Drive<br>Boynton Beach, FL 33437 | Banner Supply Co. | 6 |
| Elsenberg, Brian and Lauren<br>9957 Cobblestone Creek Drive<br>Boynton Beach, FL 33472 | Banner Supply Co. | 6 |
| Elzein, Hassib<br>10781 NW 81st Lane<br>Doral, FL 33178 | Banner Supply Co. | 6 |
| Eskenazi, Anna and Mark<br>17878 Monte Vista Drive<br>Boca Raton, FL 33496 | Banner Supply Co. | 6 |
| Etter, Steve and Cathy<br>18894 Southeast Jupiter Inlet Way<br>Tequesta, FL 33469 | Banner Supply Co. | 6 |
| Ferguson, Kejuana and Livingston, Jr.<br>1892 SE 23rd Court<br>Homestead, FL 33035 | Banner Supply Co. | 6 |
| Fernandez, Damian<br>14881 SW 161 St.<br>Miami, FL 33187 | Banner Supply Co. | 6 |
| Fernandez, Jorge and Michelle<br>12257 SW 82nd Terrace<br>Miami, FL 33183 | Banner Supply Co. | 6 |
| Flaherty, Sean<br>157 Highland Ave.<br>Midland Park, NJ 07432 | Banner Supply Co. | 6 |
| Fleck, Joe<br>554 Loretto Avenue<br>Coral Gables, FL 33146 | Banner Supply Co. | 6 |