UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION ))))))) | MDL NO: 2047<br><br>SECTION: L |
| This document relates to:<br>David Gross, et al v. Knauf Gips KG, et al<br>Case No. 2:09cv06690 (E.D. La.) ))))))) | JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANT TMO GLOBAL LOGISTICS, LLC

I.

Plaintiffs, David Gross, Cheryl Gross, and Louis Velez (hereinafter referred to collectively as "Plaintiffs") filed a class action lawsuit in the United States District Court for the Eastern District of Louisiana on October 7, 2009 against 95 named defendants and 20 fictitious defendants. On November 4, 2009, Plaintiffs amended the class action lawsuit adding 35 new named defendants, including TMO Global Logistics, LLC (hereinafter referred to as "TMO").

II.

Plaintiffs allege that following the ravishes of Hurricane Katrina and Rita, their homes were remodeled using gypsum drywall that was manufactured, exported, imported, distributed,

delivered, supplied, inspected, marketed, and/or by certain unnamed defendants. Plaintiffs further allege that the gypsum drywall installed into their homes caused them to suffer damages, to wit: property damage, several instances of corrosion, bad odors, and other personal injuries that have been linked to the allegedly defective Chinese drywall at issue in this litigation. (Amended Complaint, ¶ 6, 14). Plaintiffs do not know the identity of the manufacturer of the drywall installed in their homes. (Amended Complaint, ¶ 4, 5, 11, 12).

II.

In the allegation specifically against TMO, plaintiffs make the following vague statement: "Defendant TMO Global Logistics, LLC is a Virginia corporation with a principal place of business located in Charlottesville, VA. TMO Global Logistics, LLC is a supplier of drywall and related building products. By information and belief, TMO Global Logistics, LLC supplied the drywall at issue in this litigation in certain of the affected states." (Amended Complaint, ¶ 131).

TMO is a third party logistics provider and freight forwarder that arranges transportation of cargo anywhere in the world to its place of destination anywhere in the world. TMO is certified by the Federal Maritime Commission as an Ocean Freight Forwarder and Non-Vessel-Operating Common Carrier (Exhibit A). The law and case history provide that liability for a common carrier is limited to actual damage to the goods transported in interstate commerce. (49 U.S.C. § 14706, Carmack Amendment to the Interstate Commerce Act and 46 U.S.C. § 30706, Carriage of Goods by Sea Act). The Carmack Amendment defines "common carrier" as motor carrier, a water carrier, and a freight forwarder. 49 USC § 14706. Under this statute, the liability imposed on a motor carrier and freight forwarder is limited to the person entitled to recover under the receipt or bill of lading. Further, any state claims of damages involving transportation

2

of goods by a carrier are preempted by Federal Law. Therefore, any claims for damages under state law must be dismissed.

At no time have the Plaintiffs alleged damaged caused by the transportation of the alleged defective drywall installed in their homes. As evidenced in Exhibit B, Plaintiffs have not been privy to any bill of lading issued or received by TMO with respect to any cargo that involved allegedly defective drywall transported to the United States.

Under the Carriage of Goods by Sea Act, a carrier "means the owner, manager, charterer, agent, or master of a vessel." 46 USC § 30706(b)(5) provides, in pertinent part, that "a carrier and the vessel are not liable for loss or damage arising from 'inherent defect, quality, or vice of the goods.' " In general, the courts have held that a defense for damage from inherent defect or vice deals with damage that occurred during transit that was attributed to an inherent defect in the product and not by any action of the vessel or crew.

The Courts have recognized that there are two distinct roles or duties of a freight forwarder, and often those duties are far less than those of a carrier; therefore, the liability is different. The court recognized the distinction between the freight forwarder " 'who in essence act as export departments for their shipping clients' in securing cargo space on a vessel, advising on licensing and letter of credit terms, getting the shipment to the dock on time, clearing Customs, etc." and the "freight forwarders who hold themselves out "not merely to arrange with common carriers for the transportation of the goods, but rather to deliver them safely to the consignee.'" *Zima Corp v. M/V ROMAN PAZINSKI*, 493 F.Supp. 268 (1980). In the first instance, the freight forwarder could be held liable for instances of overcharging for less than carload freight and making a profit by consolidating shipments. Conversely, a freight forwarder in the second instance would be considered a carrier and could be held liable for the actual cost

3

of the cargo for any alleged damage caused during transport. In either case, the Plaintiffs have failed to state a claim in which allege any damage caused by any shipment of alleged defective drywall in which the Plaintiffs were a person entitled to recover damages as recognized on any bill of lading.

III.

TMO is a limited liability corporation of the State of Virginia. Its business records reveal that TMO did not make any sales or delivery of drywall to the Plaintiffs, or purchased, supplied or delivered any drywall to any other person or entity in the State of Louisiana. As evidenced in the affidavit (attached as Exhibit B) of TMO's Director of Finance, Jeanne Lynch. Plaintiffs have failed to show any connection with the State of Louisiana and TMO in order to establish that personal jurisdiction in the State of Louisiana is proper.

"In diversity actions ... the law of the forum state, subject to the Constitutional limits imposed by the Due Process Clause, controls the ability of a district court to exercise personal jurisdiction over nonresident defendants." *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F. 3d 389(5th Cir. 2001) citing *Southmark Corp. v. Life Investors, Inc.*, 851 F. 2d 763 (5th Cir. 1988) and *Stuart v. Spademan*, 722 F. 2d 1158 (5th Cir. 1985).

The Louisiana long-arm statute, La. R.S. 13:3201(A) and (B), describes the circumstances under which a Louisiana court may exercise personal jurisdiction over a nonresident defendant such as TMO:

> A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
> (1) Transacting any business in this state.
> (2) Contracting to supply services or things in this state.
> (3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.

>(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
>B. In addition to the provision of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the Constitution of this state and of the Constitution of the United States.

La. R.S. 13:3201(B) ensures that the long-arm jurisdiction of a Louisiana court extends to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *Superior Supply Co. v. Associated Pipe and Supply Co.*, 515 So. 2d 790 (La. 1987). In *Superior Supply*, the court stated that under "the express terms of the present long-arm statute, the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. If the assertion of jurisdiction meets the constitutional requirements of due process, jurisdiction is authorized under the long-arm statute." Id. (citing *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So. 2d 1188 (La. 1987). See also *Puckett v. Advance Sports, Inc.*, No. 2009 CA 0507, 2009 WL 3430283 (La. App. 1 Cir. Oct. 26, 2009) at *4; *Thomas v. Kennedy*, supra, 75 Fed. Appx. at 283.

TMO is not subject to the jurisdiction of this court because it has not established minimum contacts with the State of Louisiana. A non-resident defendant is not subject to the jurisdiction of this Court unless it has sufficient "minimum contacts" with the State of Louisiana, and maintaining the suit does not offend "traditional notions of fair play and substantial justice." *Dalton v. R&M Marine, Inc.*, 897 F. 2d 1359 (5th Cir. 1990) citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *LaRocca's Auto Sales Floorplan, Inc. v. Shelton*, No. 09-CA-143 2009 WL 3447606 at *2, (La. App. 5th Cir. Oct. 27, 2009). As evidenced in Exhibit A, TMO's primary place of business is the State of Virginia.

TMO has no connection with the State of Louisiana with respect to the Plaintiffs' cause of action as a supplier, or furthermore, as a designer, manufacturer, exporter, importer, or distributor of defective drywall. TMO has no connection with the Plaintiff's cause of action against the designers, manufacturers, sellers, suppliers, exporters, importers, or distributors of allegedly defective drywall. (Exhibit B). TMO maintains that contact with the State of Louisiana include less than 0.5% of its business costs for the year 2009 and it has no profits from Louisiana based customers since 2007. (Exhibit B). Contact with the State of Louisiana by TMO includes the limited business involved with arranging transportation for non-Louisiana customers. TMO has had no Louisiana customers for transportation arrangements since 2007 (Exhibit B). TMO has not sold any drywall to the Plaintiffs, nor to any resident of Louisiana (Exhibit B). Further, TMO has not arranged for the transportation of drywall for or to any resident of Louisiana (Exhibit B). TMO does not maintain any offices, bank accounts, employees, or real property in Louisiana (Exhibit B).

In *Asarco, Inc. v. Glenara Ltd.*, 912 F. 2d 784 (5th Cir. 1990), the Fifth Circuit Court of Appeals identified two categories of minimum contacts which give rise to personal jurisdiction over a non-resident defendant. These categories are specific and general jurisdiction. Specific jurisdiction arises when the suit is derived from, or related to, the defendant's purposeful contacts with the forum state. *Asarco*, 912 F. 2d at 786 citing *Dalton v. R&W Marine*, supra, 897 F. 2d at 1361-1362; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Louisiana has general jurisdiction over a defendant when the defendant has "continuous and systematic contacts" with the state. *Asarco*, supra at 786.

In *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (1987), the court held that "[a] conclusion that there is a stream of commerce ensures that the contact that caused harm in the

6

forum occurred there through the defendant's conduct and not the plaintiff's unilateral activities; it does not ensure that defendant's relationship with the forum is continuous and systematic, such that it can be sued there for unrelated claims." Any "continuous and systematic" contact with the State of Louisiana by TMO has been limited by the specific activity of arranging transportation of goods. TMO has not conducted any activity in the State of Louisiana as alleged by Plaintiffs. Therefore, there is no basis for exercising either specific or general jurisdiction over TMO in Louisiana.

IV.

The Eastern District of Louisiana is an improper venue for any and all claims brought against TMO that involve the transportation of drywall. As stated above, TMO has not marketed, promoted or sold any allegedly defective drywall or any products in Louisiana.

V.

When considering a motion to dismiss pursuant to Fed. R. Civ. Rule 12(b)(2) and 12(b)(6), this Court must consider the allegations contained in the Plaintiff's complaint as true, unless those allegations are controverted by the defendant's affidavit. Thomas v. Kennedy, 75 Fed. Appx. 281, 283-4 (5th Cir. 2003) (unpublished) citing *Asarco, Inc. v. Glenara Ltd.*, 912 F. 2d 784 (5th Cir. 1990).

Plaintiffs have not alleged any facts that link the alleged defective drywall installed in their homes with TMO. Under Fed. R. Civ. P. 8(a), a complaint must allege a cause of action. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that a complaint must plead "enough facts to state a claim to relief that is plausible on its face." The Court also held in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), that when evaluating the

7

sufficiency of a complaint, a court must identify and disregard all unsupported legal conclusions, and determine whether the remaining factual allegations plausibly suggest defendant's liability because "[t]hreadbare recitals of a cause of action supported by mere conclusory statements do not suffice." *Iqbal* at 1950 citing *Bell Atlantic v. Corp v. Twombly*, at 555.

Plaintiffs cite eight (8) counts of allegations against all Defendants that include: acts of negligence, negligence per se, breach of express and/or implied warranties, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violation of various state Consumer Protection Acts, and equitable and injunctive relief and medical. Each of these counts provide no plausible facts as to how TMO breached any duty, reasonable or statutory, and what occurrence created the duty that existed between the Plaintiffs and TMO.

In addition, Plaintiffs do not have standing because TMO did not cause Plaintiff's alleged injuries. To establish standing "there must be a causal connection between the injury and the conduct complained ... the injury has to be 'fairly ... trace [able] to the challenged action of the defendant ... "*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Further, "[s]tanding is a prerequisite to bringing suit and nothing in Rule 23 Fed. R. Civ.P. alters this requirement." *Thompson v. Board of Educ. of Romeo Community Schools*, 709 F.2d 1200 (6th Cir. 1983) citing *LaMar v. H&B Novelty & Loan Co.*, 489 F. 2d 461 (9th Cir. 1973).

VI.

Because Plaintiffs have failed to identify any causal connection between the Defendants, in particular TMO, and the alleged injuries, the Complaint offers a claim under alternative liability or "market share" liability. Under Louisiana law, this theory of liability has not been recognized. *Thompson v. Johns-Manville Sales Corp.*, 714 F.2d 581 (1983). Louisiana's Product Liability Act "establishes the exclusive theories of liability for manufacturers for damages

8

caused by their products." La.Rev.Stat.Ann. § 9:2800.52. The LPLA provides that a manufacturer of a product is liable to a claimant for damage "proximately caused" by a characteristic of the product that rendered it "unreasonably dangerous" when the damage arose from a reasonably anticipated use of the product by the "claimant or another person or entity." La.Rev.Stat.Ann. § 9:2800.54A.

The LPLA defines a manufacturer as a "person or entity who is in the business of manufacturing a product for placement into trade or commerce." La.Rev.Stat.Ann. § 9:2800.53(1)

> "Manufacturer" is further defined as (a) a person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product, (b) a seller of a product who exercises control over or influences a characteristic of the design, construction, or quality of the product that causes damage, (c) a manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer, and (d) a seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. La.Rev.Stat.Ann. § 9:2800.53(1)

Plaintiffs have failed to show any action by TMO that indicates it conducted any activity in which it conducted business as a manufacturer as defined under LPLA. In fact, Plaintiffs have failed to identify the manufacturer of the allegedly defective drywall found in their respective homes. The drywall found in the home of Plaintiff Louis Velez has "markings with unintelligible numbering. There are no corresponding markings identifying the manufacturer of the drywall." (Amended Complaint, ¶ 5) Plaintiffs David Gross and Cheryl Gross discovered "made in China" markings on their drywall without any corresponding markings identifying the manufacturer." (Amended Complaint, ¶ 11, 12) TMO is a certified freight forwarder (Exhibit B). It is not considered a manufacturer under the LPLA; therefore, any claim for relief should be dismissed against TMO.

9

Furthermore, TMO is not a seller of drywall or any goods. TMO did not sell any goods to the Plaintiffs. However, if TMO was a seller, redhibition is a buyer's legal course of action against a seller in the State of Louisiana. La.Rev.Stat.Ann. Art. 2520, inter alia. A seller is liable for any redhibitory defects whether known to the seller or not. If the seller did not know of the defect, then the seller is "only bound to repair, remedy, or correct the defect." La.Rev.Stat.Ann. Art. 2531. In addition, if TMO was a seller, "under Louisiana law, a non-manufacturer/seller is not required to inspect a product prior to sale to determine the possibility of inherent defects." *Tunica-Biloxi Indians of Louisiana v. Pecot*, 2006 WL 1228902 (W.D.La. 2006). However, TMO is a certified freight forwarder and does not know of any inherent defects in any of the goods it arranges for transportation. TMO does not package, handle, promote, or inspect any goods it arranges to transport. TMO is not a seller for purposes of redhibition for Plaintiffs claims.

WHEREFORE, defendant prays that after all legal proceedings be had, there be judgment herein dismissing plaintiffs' claims at their cost.

DEFENDANT FURTHER PRAYS for all orders and decrees necessary in the premises and for general and equitable relief.

Respectfully submitted,
WOODLEY, WILLIAMS LAW FIRM, L.L.C.


BY: **/s/ Donald C. Brown**
    DONALD C. BROWN (#3549)
    P. O. Box 3731
    Lake Charles, LA 70602-3731
    Telephone: (337) 433-6328
    Facsimile: (337) 433-7513
    E-mail: dcbrown@woodleywilliams.com
Attorney for defendant, TMO GLOBAL LOGISTICS, LLC,

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing Memorandum of Law in Support of Motion to Dismiss Defendant, TMO Global Logistics, LLC has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECG System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 4th day of March, 2010.

                                     WOODLEY, WILLIAMS LAW FIRM, L.L.C.

                                     /s/ Donald C. Brown
                                   **DONALD C. BROWN**
                                   **LA BAR ROLL #3549**
                                   P. O. Box 3731
                                   Lake Charles, LA 70602-3731
                                   Telephone: (337) 433-6328
                                   Facsimile: (337) 433-7513
                                   dcbrown@woodleywilliams.com