**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED | § | MDL. NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | § | |
| LITIGATION | § | SECTION:  L |
| | § | |
| THIS DOCUMENT RELATES TO: | § | JUDGE FALLON |
| *Otis Ashford, et al vs. Knauf Gips KG,* | § | |
| *et al*; No. 09-7042 | § | MAG. JUDGE WILKINSON |

---

## PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES

---

This Complaint of certain persons of the full age of majority, on behalf of themselves and, in some instances, on behalf of individuals who lack the capacity to sue individually (hereinafter, "Plaintiffs"), who are all named in the caption of the lawsuit and in the annexed listing of all Plaintiffs (hereinafter, "Exhibit A"), through undersigned counsel, bring this action against Defendants, KNAUF GIPS KG, KNAUF PLASTERBOARD TIANJIN CO., LTD., TAISHAN GYPSUM CO. LTD. f/k/a SHANDONG TAIHE DONGXIN CO. LTD., UNITED STATES GYPSUM f/k/a USG CORPORATION, L&W SUPPLY CORPORATION d/b/a SEACOAST SUPPLY, INTERIOR EXTERIOR BUILDING SUPPLY LP, INDEPENDENT BUILDERS SUPPLY ASSOCIATION, INC., and ROTHCHILT INTERNATIONAL LIMITED, GREAT SOUTHERN BUILDERS, L.L.C., GAVINS CONSTRUCTION COMPANY, BEL-TEX CONTRACTING, INC. AND JOHN DOES 1-20 (collectively "Defendants") and for their complaint allege, upon information and belief and based on the investigation to date of their counsel, as follows:

## INTRODUCTION

1.      Plaintiffs bring this action related to their properties that were built using drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold by Defendants, Knauf Gips KG ("Knauf Gips"), Knauf Plasterboard Tianjin Co., Ltd. ("Knauf Tianjin"), United States Gypsum f/k/a/ USG Corporation ("USG"), L&W Supply Corporation d/b/a Seacoast Supply ("Seacoast"), Interior Exterior Building Supply LP, Independent Builders Supply Association, Inc. ("IBSA") and Rothchilt International Limited ("Rothchilt").

2.      The drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants to build the homes of Plaintiffs is defective and emits levels of sulfur, methane, strontium, and/or other volatile organic chemical compounds that cause corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items, as well as create noxious odors.  Defendants' defective gypsum drywall further causes allergic reactions, coughing, sinus, and throat infection, eye irritation, respiratory problems and other health concerns. Defendants' drywall was inherently defective and not suitable for its intended use.

## JURISDICTION AND VENUE

3.      Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

4.      The subject matter of this Complaint is also the subject matter of multi-district litigation commenced pursuant to 28 U.S.C. § 1407 in MDL No. 2047 in the Eastern District of Louisiana.  The presiding Judge is U.S. District Judge Eldon E. Fallon.

5.      There is subject matter jurisdiction due to ample diversity pursuant to the terms of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2) and (d)(11)(A) and (B)(i)) as a mass action in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the grounds that the Plaintiffs' claims involve common questions of law or fact.  Plaintiffs contend that this matter will be consolidated with, filed in, or transferred to MDL No. 2047 which includes monetary relief claims of 100 or more persons proposed to be tried jointly on the grounds that plaintiffs' claims involve common questions of law or fact.  The amount in controversy of this Mass Action exceeds five million dollars ($5,000,000.00), exclusive interest and costs.

6.      Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. §1391, based on information and belief, this is a judicial district where in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## PARTIES

7.      Named Plaintiffs are those individuals and entities listed on the attached Exhibit A, which is incorporated herein as if set forth *in extenso*. Plaintiffs' homes were built using defective drywall manufactured, supplied and installed by one or more of the Defendants.

3

8.     Upon information and belief Defendant, Knauf Gips, is a German corporation doing business in the United States and in this district.   One of Knauf Gips' affiliates, Gebr. Knauf Verwaltungsgsellschaft KG, owns a substantial stake in Defendant USG.   Knauf Gips is a leading manufacturer of building materials and systems.   Defendant Knauf Gips, together with its affiliates, including Defendant Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States.   Upon information and belief, at all material times hereto, Defendant Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Defendant Knauf Tianjin, and its agents, apparent agents and employees.

9.     Among other things, in 1996, Defendant Knauf Gips introduced its advanced production techniques and technology into China. From 1997 through 2001, Defendant Knauf Gips established three plasterboard plants in China located in Wuhu, Tianjin and Dongguan.   The product quality of all Defendant Knauf Gips' plants in China, including Defendant Knauf Tianjin, is strictly controlled according to the requirements of Knauf Gips' headquarters in Germany.   Defendant Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Defendant Knauf Tianjin in China.   Defendant Knauf Tianjin and its employees are the actual and/or apparent agents of Defendant Knauf Gips.   A summons is hereby requested to be issued by the court.

10.     Upon information and belief, Defendant Knauf Gips, together with its affiliates and/or actual or apparent agents, including Defendant Knauf Tianjin,

manufactured, sold, distributed, marketed and placed into the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the United States.  Defendants Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold, directly and indirectly, to certain suppliers in the United States, including Defendants USG, Seacoast Interior Exterior Building Supply, IBSA and/or Rothchilt, defective gypsum drywall that was installed in Plaintiffs' homes.  Moreover, Defendants Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the United States, including this district, and by hiring agents within the United States to investigate the very allegations at issue in this lawsuit.

11.     Upon information and belief, Defendant, Knauf Plasterboard Tianjin Co., Ltd., is a Chinese corporation with its principal place of business located at North Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400 P.R.C., and at all times material, conducted business in the United States and this district.  Defendant Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall.  Defendant Knauf Tianjin is the actual an apparent agent of Defendant Knauf Gips.  Upon information and belief, Defendant Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Defendant Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by consumers, including the Plaintiffs herein, within the United States and the States of Louisiana and Mississippi.

Defendants Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the United States, and their drywall was installed in numerous homes and commercial buildings throughout the United States, including the Plaintiffs' homes and/or commercial buildings, as complained of herein.  Defendants Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the United States, including Defendants USG, Seacoast, Interior Exterior Building Supply, IBSA, and/or Rothchilt, defective gypsum drywall that was installed in Plaintiffs' homes and/or commercial buildings.  Moreover, Defendants Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the United States and this district and by hiring agents to investigate the very allegations at issue in this lawsuit. A summons is hereby requested to be issued by the court.

12.   Upon information and belief, Defendant, Taishan, is a Chinese corporation with its principal address located at Dawenkou, Taian, Shandong, China 271026, and at all times material, conducted business in the United States, including this district. Defendant Taishan is involved in the manufacturing and sale of gypsum drywall. Upon information and belief Defendant Taishan manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, including the Plaintiffs, within the United States.  Defendant Taishan has continuously and systematically distributed and sold drywall to numerous purchasers in the United

States, and its drywall was installed in numerous homes and commercial buildings in the United States, including the Plaintiffs' homes and/or commercial buildings. Defendant Taishan manufactured and sold, directly and indirectly, to certain suppliers in the United States, including Defendants USG, Seacoast, Interior Exterior Building Supply, IBSA, and/or Rothchilt, defective gypsum drywall that was installed in Plaintiffs' homes and/or commercial buildings. Moreover, Defendant Tiashan purposefully availed itself of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the United States and this district.

13. This Court has personal jurisdiction over Defendant Knauf Gips, Knauf Tianjin and Taishan because they are "engaged in substantial and not isolated activity within this state." Additionally, Plaintiffs' causes of action arise from Defendants Knauf Gips, Knauf Tianjin and Taishan personally or through their agents, causing injury to property within the United States and this district arising out of acts or omissions of Defendants Knauf Gips, Knauf Tianjin and Taishan outside this district, and at the time of the injury, products, materials, or things manufactured by Defendants Knauf Gips, Knauf Tianjin and Taishan were used and consumed within the United States in the ordinary course of commerce, trade or use. A summons is hereby requested to be issued by the court.

14. Defendant USG is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material, was authorized to and conducted business in the United States. Defendant USG together with its various affiliates, including Defendant Seacoast, is the nation's

largest distributor of drywall and related building products. USG may be served with summons and process by serving its registered agent, CT Corp Systems, 350 N. St. Paul, Dallas, Texas 75201. A summons is hereby requested to be issued by the court.

15. Defendant Seacoast is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material, was authorized to and conducted business in the United States. Defendant Seacoast has numerous supply centers in the United States. Defendant Seacoast is a subsidiary of Defendant USG. Seacoast may be served with summons and process by serving its registered agent, CT Corp Systems, 350 N. St. Paul, Dallas, Texas 75201. A summons is hereby requested to be issued by the court.

16. Defendant Interior Exterior Building Supply, LP, is a Louisiana partnership with its principal place of business located at 727 S. Cortez, New Orleans, LA 70119. Interior Exterior Building Supply, LP, may be served with summons and process by serving its registered agent, CT Corp Systems, 350 N. St. Paul, Dallas, Texas 75201. A summons is hereby requested to be issued by the court.

17. Defendant IBSA is a member owned buying organization with its principal place of business located in Smithfield, North Carolina, and is authorized to do and doing business in the United States. IBSA may be served with summons and process by serving its counsel of record who has agreed to accept service on IBSA's behalf, Gary Baumann, Fulmer Leroy Albee Baumann & Glass, 2866 East Oakland Park Blvd., Ft. Lauderdale, FL 33306. A summons is hereby requested to be issued by the court.

18.     Upon information and belief Defendant Rothchilt is a Chinese corporation organized with its principal place of business located at N-510 China Shin Bald., Annex 96 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan R.0.C., and at all times material, conducted business in the United States.  Defendant Rothchilt exports products, including gypsum drywall, to customers in the United States.  Upon information and belief, Defendant Rothchilt sold, distributed, marketed, and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, including Plaintiffs, within the United States. Rothchilt has continuously and systematically distributed and sold drywall to numerous purchasers in the United States, and its drywall was installed in numerous homes and commercial buildings in the United States.  Upon information and belief Defendant Rothchilt supplied defective gypsum drywall that was installed in Plaintiffs' homes and/or commercial buildings.

19.     This Court has personal jurisdiction over Defendant Rothchilt because it is "engaged in substantial and not isolated activity within this state." Additionally, Plaintiffs' causes of action arise out of acts or omissions or Defendant Rothchilt, and at the time of the injury, products, materials, or things manufactured by Defendant Rothchilt were used and consumed within the United States in the ordinary course of commerce, trade or use. A summons is hereby requested to be issued by the court.

20.     Defendant Great Southern Builders, L.L.C., is a Louisiana limited liability company with its principal place of business located at 13222 Lake Bend Drive, Covington, Louisiana   70435. Great Southern Builders, L.L.C., may be served with

summons and process by serving its registered agent, Robert J. Champagne, 13222 Lake Bend Drive, Covington, Louisiana  70435. A summons is hereby requested to be issued by the court.

21.     Defendant Gavins Construction Company, is a company doing business in the State of Mississippi with its principal place of business located at 960 Riverview Drive, Biloxi, Mississippi  39532. Gavins Construction Company, may be served with summons and process by serving its owner, David Ray Gavins at 960 Riverview Drive, Biloxi, Mississippi  39532.  A summons is hereby requested to be issued by the court.

22.     Defendant Bel-Tex Contracting, Inc., is a Louisiana corporation with its principal place of business located at 330 Eden Isles, Slidell, Louisiana  70458. Bel-Tex Contracting, Inc., may be served with summons and process by serving its registered agent, Hermilo G. Moralez, Jr., 330 Eden Isles, Slidell, Louisiana  70458. A summons is hereby requested to be issued by the court.

23.     Defendant John Does 1 – 20 are manufacturers, processors, distributors, suppliers, builders and others who may be responsible for the damages suffered by Plaintiffs and who have yet to be fully ascertained.

<u>GENERAL ALLEGATIONS</u>

**Chinese Drywall Enters the United States**

24.     Knauf, a leading manufacturer of building materials and systems, including drywall, together with its affiliated entities provides building materials and systems to customers in over 50 countries, including the United States.  In the 1900s, Knauf introduced its production technique and technology into China, establishing

three plasterboard plants in Wuhu, Tianjin, and Dongguan. Knauf strictly controls, and at all material times controlled, its operations in Wuhu, Tianjin, and Dongguan. In addition, Knauf Tianjin and its employees are the actual and/or apparent agents of Knauf.

25.     Until 2004, drywall used in the construction of residences and commercial buildings in the United States typically was manufactured domestically.  However, in the wake of the nationwide housing boom and shortage caused as a result of widespread hurricane damage beginning in 2004, many builders and suppliers began purchasing drywall from China manufactured by the Knauf entities.

26.     Since 2006, at least 550 million pounds of Chinese drywall have come into the United States — enough to construct 60,000 average homes. From January to September 2006, five separate ships unloaded 52 million pounds of Chinese-made Knauf drywall in New Orleans, Louisiana, three-quarters of which came from Knauf Tianjin.  Shipments to Florida also were extensive, both directly and through Defendant Rothchilt.  At least 37 million pounds of Knauf drywall was shipped directly from three sites in China to Florida through Tampa and Port Canaveral.

27.     This Drywall was ultimately installed, upon information and belief in thousands of residential and commercial buildings throughout the United States, including those of Plaintiffs herein.

28.     In connection with the construction of homes and commercial buildings in the United States, consumers purchased gypsum drywall, either directly or indirectly, from various suppliers, including, but not necessarily limited to, Defendants USG,

Seacoast, Interior Exterior Building Supply, IBSA, and/or Rothchilt (collectively, the "Suppliers").

29.    Upon information and belief, the Suppliers purchased, directly and/or indirectly, gypsum drywall that was manufactured in China by Defendants Knauf Gips, Knauf Tianjin and Taishan, and possibly other unknown Chinese manufacturers (collectively, the "Manufacturers").

## The Chinese Drywall is Defective

30.    Defendants negligently manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold defective gypsum drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to HVAC coils and refrigerator units, certain electrical wiring and plumbing components and caused allergic reactions, coughing, sinus, and throat infection, eye irritation, respiratory problems and other health concerns.

31.    Defendants' drywall was made with waste material from scrubbers on coal-fired power plaints, also called "by ash."  These materials can leak into the air and emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

32.    When combined with moisture in the air, these sulfur compounds create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing - creating leaks, blackening coils and causing HVAC systems and refrigerators to fail.  Sulfuric acid has also been shown to corrode copper electrical wiring and plumbing components.  Not only does it blacken and corrode coils, it can harm metals such as chrome, brass and silver.

33.     Defendants' defective drywall can not only affect HVAC systems and refrigerators, but also can affect and require replacement of all sorts of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware.  In addition, the defective drywall has a noxious odor, akin to the smell of rotten eggs.

34.     Upon information and belief, over 10 million square feet of Defendants' defective drywall was used in the construction of homes and commercial buildings between 2004 and 2006.

35.     Upon information and belief, Defendants Knauf Gips and/or Knauf Tianjin themselves have engaged experts and consultants to investigate claims regarding the defective drywall.  Among other things, Defendant Knauf Gips and/or Knauf Tianjin have inspected several affected homes and have witnessed firsthand the effects of its defective drywall on, among other things, HVAC coils, electrical wiring and plumbing.  Defendants Knauf Gips and/or Knauf Tianjin have failed and refused to take responsibility for their defective product.

36.     Defendants' actions will require Plaintiffs to remedy all defective drywall, perform extensive remedial repairs to the homes and commercial buildings, and then repair the damaged property made visible during the performance of these repairs.

37.     As a result, the Plaintiffs have suffered, and continue to suffer damages as a result of Defendants defective drywall and the corrosive effects of the sulfur compounds.  These damages include, but are not limited to the cost of inspection, the cost and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finish and personal property.  Plaintiffs have also

13

suffered and continue to suffer personal injuries as a result of the Defendants' defective drywall, including, but not limited to, allergic reactions, coughing, sinus and throat infection, eye imitation, respiratory problems and other health concerns.

38.     Defendants' actions also resulted in substantial diminution in the value of the Plaintiffs' homes.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

39.     The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment.  Defendants, through failing to disclose a known defect to Plaintiffs, and misrepresenting their product as safe for its intended use, actively concealed from Plaintiffs the true risks associated with their drywall.

40.     As a result of Defendants' actions, Plaintiffs could not reasonably know or have learned through reasonable diligence of the manufacturing defect and that Plaintiffs had been exposed to the risks alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

41.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall.  Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had, and continue to have, exclusive control, and because Defendants knew that this information was not available to the Plaintiffs. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

42.     Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein.   Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at any time.

### CAUSES OF ACTION – ALL STATES

### COUNT I
### VICARIOUS LIABILITY
(Against Defendant Knauf Gips)

43.     Plaintiffs reiterate and re-allege paragraphs 1 through 39 of this Compliant, with the same force and effect as if fully set forth herein.

44.     This is an action for vicarious liability against Defendant Knauf Gips for the negligent and wrongful acts of its actual and/or apparent agent, Defendant Knauf Tianjin.

45.     Defendant Knauf Gips established Defendant Knauf Tianjin in China at all times material, exercised strict control over Defendant Knauf Tianjin s operations in accordance with the requirements of Defendant Knauf Gips headquarters in Germany.   Defendant Knauf Gips is, and at all times material was, responsible for implementing and supervising the quality control measures to be used by Defendant Knauf Tianjin.

46.     By establishing Defendant Knauf Tianjin in China, and by exercising strict control over Defendant Knauf Tianjin's conduct and operations, Defendant Knauf Gips acknowledged that Defendant Knauf Tianjin would act on its behalf as its actual and/or apparent agent.

47.     Defendant Knauf Tianjin accepted the undertaking to act on Defendant Knauf Gip's behalf.

48.     Upon information and belief, Defendant Knauf Gips supervises monitors, and controls Defendant Knauf Tianjin's daily conduct and operations, including the manufacturing, distribution, marketing and sale of Defendant Knauf Tianjin's drywall products.  Furthermore, upon information and belief Defendant Knauf Gips is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Defendant Knauf Tianjin.

49.     As such, Defendant Knauf Gips is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Defendant Knauf Tianjin.

50.     As a result of Defendants Knauf Gip's and/or Knauf Tianjin's wrongful conduct, Plaintiffs have suffered and will continue to suffer damages.

51.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT II
## NEGLIGENCE AND NEGLIGENCE PER SE

(Against Defendants Knauf Gips, Knauf Tianjin, and Tiashan
(Collectively the "Manufacturers"))

52.     Plaintiffs repeat, reiterate and reallege paragraphs 1 through 51 of this Complaint, with the same force and effect as it fully set forth herein.

53.     Defendant Manufacturers had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall, Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause damages as described herein.

54.     Defendant Manufacturers breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall, Defendants placed into the stream of commerce in that Defendants knew or should have known that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infections, eye irritation, respiratory problems and other health concerns.

55.     The negligence of the Defendant Manufacturers, their agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

        a.     manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall without thoroughly testing it;

17

b.      manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

c.      selling drywall without performing proper and sufficient tests to determine the dangers to its users;

d.      negligently failing to adequately and correctly warn the Plaintiffs of the dangers of Defendants' drywall;

e.      negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

f.      negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

g.      negligently representing that Defendant Manufacturers'' drywall was safe for its intended purpose when, in fact, its safety is questionable;

h.      negligently manufacturing drywall in a manner which was dangerous to its users;

i.      negligently processing drywall in a manner which was dangerous to its users;

j.      negligently distributing drywall in a manner which was dangerous to its users;

k.      negligently delivering drywall in a manner which was dangerous to its users;

l.      concealing information concerning reports of adverse effects from the Plaintiffs while knowing that Defendants drywall was unsafe, dangerous and non-conforming with accepted industry standards; and

m.      improperly concealing and/or misrepresenting information from the Plaintiffs and/or the public, concerning the severity of risks and dangers of Defendants drywall and/or the manufacturing defect.

56.     Defendant Manufacturers were negligent in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Defendants' drywall in:

a.      failing to use due care in manufacturing their drywall so as to avoid the aforementioned risk when the drywall was used for its intended purpose;

b.      failing to conduct adequate testing to determine the safety of their drywall; and

c.      failing to warn Plaintiffs, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

57.     Upon information and belief despite the fact that Defendant Manufacturers knew or should have known that their drywall caused unreasonably dangerous side effects due to manufacturing defects, Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs and the consuming public.

58.     Defendant Manufacturers knew or should have known that consumers, such as Plaintiffs, would foreseeably suffer damage and injury as a result of Defendants' failure to exercise ordinary care as well as Defendants' negligent manufacturing process, as set forth herein.

59.     Defendant Manufacturers' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitute negligence per se.

60.     Defendant Manufacturers knew or should have known that homeowners such as the Plaintiffs would foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

61.     Defendant Manufacturers negligence was the proximate cause of Plaintiffs' damages, injuries, harms and economic loss, which they suffered and will continue to suffer.

62.     By reason of the foregoing, Plaintiffs experienced and/or are at risk of experiencing serious and dangerous side effects, as well as having incurred financial damage and injury.

63.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

<u>**COUNT III**</u>
<u>**FRAUDULENT MISREPRESENTATIONS**</u>

(Against Defendants Knauf Gips, Knauf Tianjin, and Tiashan
(Collectively the "Manufacturers"))

64.     Plaintiffs repeat, reiterate and reallege paragraphs 1 through 63 of this Complaint, with the same force and effect as if fully set forth herein.

65.     Defendant Manufacturers falsely and fraudulently represented to Plaintiffs and/or the consuming public in general that Defendants' drywall had been tested and was found to be safe and/or effective for use.

66.     That representation made by Defendant Manufacturers was, in fact, false.

67.     When said representations were made by Defendant Manufacturers, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

68.     Defendant Manufacturers made these representations with the intent of defrauding and deceiving the Plaintiffs and/or the consuming public, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiffs herein.

69.     At the time of the aforesaid representations were made by the Defendant Manufacturers and, at the time the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

70.     In reliance upon said representations, the Plaintiffs homes and commercial buildings were built using Defendant Manufacturers' drywall thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

71.     Said Defendant Manufacturers knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

72.     Defendant Manufacturers' knew, or should have known, that Defendants' drywall had potential to, could and would cause severe damage and injury to homeowners and owners of commercial buildings.

73.     Defendant Manufacturers brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs.

74.     By reason of the foregoing, Plaintiffs experience, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury as described more fully herein.

75.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services.

## COUNT IV
## FRAUDULENT CONCEALMENT

(Against Defendants Knauf Gips, Knauf Tianjin, Tiashan ("Manufacturers"))

76.     Plaintiffs repeat, reiterate and reallege paragraphs 1 through 75 of this Complaint, with the same force and effect as if fully set forth herein.

77.     At all times material hereto, Defendant Manufacturers misrepresented the safety of Defendants' drywall.

78.     Defendant Manufacturers knew, or were reckless in not knowing, that its representations were false.

22

79.     Defendant Manufacturers fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air conditioning and refrigerator units, electrical wires and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

80.     Defendant Manufacturers fraudulently concealed, and/or intentionally omitted, the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

81.     Defendant Manufacturers fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

82.     Defendant Manufacturers were under a duty to disclose to Plaintiffs the aforementioned as it pertains to Defendants' drywall.

83.     Defendant Manufacturers concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

84.     Defendant Manufacturers knew that Plaintiffs had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

85.     Plaintiffs and/or the consuming public, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant Manufacturers.

86.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services.

**COUNT V**
**BREACH OF EXPRESS WARRANTY**

(Against All Defendants)

87.     Plaintiffs repeat, reiterate and reallege paragraphs 1 through 86 of this Complaint, with the same force and effect as if fully set forth herein.

88.     Defendants expressly warranted that Defendants' drywall was safe and well accepted by builders of residential homes and commercial buildings.

89.     Defendants' drywall did not conform to this representation because Defendants' drywall is defective and unsafe and is associated with numerous side effects.  As a direct and proximate result of the breach of said warranties, Plaintiffs suffered, and/or will continue to suffer, and/or are at an increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

90.     Plaintiffs did rely on the express warranties of the Defendants herein.

91.     The Defendants herein breached the aforesaid express warranties, as Defendants' drywall was defective.

92.     Defendants expressly represented to Plaintiffs that Defendants' drywall is safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall

24

is of merchantable quality, that Defendants' drywall did not product any dangerous side effects, and that Defendants' drywall was adequately tested and fit for its intended use.

93.     Defendants knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that Defendants' drywall is not fit for the use intended, and in fact, produced severe and extensive damage to Plaintiffs' homes and commercial buildings.

94.     Defendants expressly represented to Plaintiffs that Defendants' drywall is safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall is of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall was adequately tested and fit for its intended use.

95.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for the appliances, medical expenses, incidental and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services.

## COUNT VI
## PRODUCTS LIABILITY

(Against Defendant Knauf Gips, Knauf Tianjin, and Taishan)
(collectively the "Manufacturers"))

96.     Plaintiffs repeat, reiterate and reallege paragraphs 1 through 95 of this Complaint, with the same force and effect as if fully set forth herein.

97.     At all times herein mentioned, Defendant Manufacturers manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiffs' homes.

98.     Defendant Manufacturers' drywall was expected to, and did, reach the usual consumers handlers, and persons coming into contact with said product without substantial change in the condition, which it was manufactured, processed, distributed, delivered, supplied, inspected and/or sold by the Defendants.

99.     At those times, the Defendant Manufacturers' drywall was in an unsafe, defective, and inherently dangerous condition that was unreasonably dangerous to homes and commercial buildings and, in particular, Plaintiffs' homes.

100.    Defendant Manufacturers drywall was so defective in design or formulation or manufacture that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants' drywall.

101.    At all times herein mentioned, Defendant Manufacturers' drywall was in a defective condition and unsafe, and the Defendants knew, had reason to know, or

should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

102.   Defendant Manufacturers knew, or should have known, that at all times herein mentioned Defendants' drywall was/is inherently dangerous and unsafe.

103.   At the time of use of Defendant Manufacturers' drywall by Plaintiffs, Plaintiffs utilized the drywall for the purposes and manner normally intended.

104.   Defendant Manufacturers had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

105.   Defendant Manufacturers' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users including Plaintiffs herein.

106.   Defendant Manufacturers' manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold a defective product, which created an unreasonable risk to the Plaintiffs' homes as well as to the health of Plaintiffs.  Defendants are, therefore, liable for the damages and injuries sustained by Plaintiffs.

107.   The Plaintiffs in this action, acting as reasonably prudent persons, could not discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

108.    By reason of the foregoing, the Defendant Manufacturers are liable in tort to Plaintiffs for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and/or selling of a defective product, Defendants' drywall.

109.    Defendant Manufacturers defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

110.    Said defects in Defendant Manufacturers' drywall were a substantial factor in causing Plaintiffs and/or placing Plaintiffs at increased risk of damage and/or harm.

111.    As a direct and proximate result of the defective condition of Defendant Manufacturers' drywall as manufactured and sold by Defendants, Plaintiffs suffered, and will continue to suffer, damages.

112.    By the reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as having incurred financial damage and injury.

113.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

(Against Defendants USG, Seacoast, Interior Exterior Building Supply,
IBSA, & Rothchilt (collectively the "Suppliers"))

114.   Plaintiffs repeat, reiterate and re-allege paragraphs 1 through 113 of this Complaint, with the same force and effect as if fully set forth herein.

115.   This is an action against Defendant Suppliers for breach of the implied warranty of merchantability.

116.   Defendant Suppliers are merchants of gypsum drywall.

117.   Upon information and belief, some of the defective drywall used in the construction of Plaintiffs' homes and commercial buildings was sent from the Manufacturers to Defendant Suppliers.

118.   Builders and/or their agents or employees entered into contracts with Defendant Suppliers to purchase gypsum drywall that was to be installed in Plaintiffs' homes and commercial buildings.

119.   Plaintiffs are an intended third party beneficiary of those contracts because it was the clear and manifest intent of Defendant Suppliers that the contracts were to primarily and directly benefit Plaintiffs.

120.   Defendant Suppliers warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

121.     Defendant Suppliers breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

122.     The drywall supplied and sold by Defendant Suppliers and installed in Plaintiffs' homes and commercial buildings is defective because it caused damage as described more fully herein.

123.     As a result of Defendant Suppliers' breaches of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

124.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services.

### COUNT VIII
### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

(Against Defendants USG, Seacoast, Interior Exterior Building Supply, IBSA, & Rothchilt (collectively the "Suppliers"))

125.     Plaintiffs repeat, reiterate and re-allege paragraphs 1 through 124 of this Complaint, with the same force and effect as if fully set forth herein.

126.     This is an action against Defendant Suppliers for breach of the implied warranty of fitness for a particular purpose.

127.    Defendant Suppliers are suppliers of gypsum drywall.

128.    Upon information and belief, some of the defective drywall used in the construction of Plaintiffs' homes and commercial buildings was sent from the Manufacturers to Defendant Suppliers.

129.    Builders and/or their agents or employees entered into contracts with Defendant Suppliers to purchase gypsum drywall that was to be installed in Plaintiffs' homes and commercial buildings.

130.    Plaintiffs are intended third party beneficiary of those contracts because it was the clear and manifest intent of Defendant Suppliers that the contracts were to primarily and directly benefit Plaintiffs.

131.    At the time Defendant Suppliers entered into the contracts with the homebuilders, Defendant Suppliers had reason to know that the gypsum drywall was being purchased for the particular purpose of being installed in residential homes and commercial buildings owned by Plaintiffs, and that homebuilders were relying on Defendant Suppliers skill and judgment to select and furnish gypsum drywall that was suitable for this purpose.

132.    Plaintiffs, directly and/or indirectly, relied on Defendant Suppliers' judgment in supplying and selling gypsum drywall that was suitable for the particular purpose of being installed in residential homes and commercial buildings owned by Plaintiffs.

133.   Defendant Suppliers warranted that the gypsum drywall was fit for the particular purpose of being installed in residential homes and commercial buildings owned by Plaintiffs.

134.   Defendant Suppliers breached the implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential homes and commercial buildings owned by Plaintiffs.

135.   The drywall supplied and sold by Defendant Suppliers and installed in Plaintiffs' homes and commercial buildings is defective because it caused damage as described more fully herein.

136.   As a result of Defendants Suppliers' breaches of the implied warranty of fitness for a particular purpose, Plaintiffs have suffered and continue to suffer damages.

137.   As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services.

## COUNT IX
## PRODUCTS LIABILITY

(Against Defendants USG, Seacoast, Interior Exterior Building Supply,
IBSA, & Rothchilt (collectively the "Suppliers"))

138.    Plaintiffs repeat, reiterate and re-allege paragraphs 1 through 137 of this
Complaint, with the same force and effect as if fully set forth herein.

139.    This is an action for products liability against Defendant Suppliers.

140.    The defective gypsum drywall installed in Plaintiffs' homes and
commercial buildings was supplied by, among others, Defendant Suppliers.   Upon
information and belief, some of the defective drywall installed in Plaintiffs' homes and
commercial buildings was sent from the Manufacturer to Defendant Suppliers.

141.    The defective gypsum drywall distributed, supplied, and/or sold by
Defendant Suppliers is unreasonably defective because it causes damage and injury to
Plaintiffs as described more fully herein.

142.    Defendant Suppliers expected the defective gypsum drywall to reach the
usual consumers, handlers, and persons coming into contact with said product without
substantial change affecting its condition, and the defective gypsum drywall did in fact
reach the usual consumer, handlers, and persons coming into contact with said product
without substantial change affecting the condition.

143.    The defective gypsum drywall distributed, supplied and/or sold by
Defendant Suppliers directly and proximately caused damage and injury to Plaintiffs,
including but not limited to, corrosion of HVAC coils and refrigerator units, certain

electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

144.    By reason of the foregoing, Plaintiffs experience, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury as described more fully herein.  As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses.  Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services.

## COUNT X
## REDHIBITION

(By Louisiana Plaintiffs Against All Defendants)

145.    Plaintiffs repeat, reiterate and re-allege paragraphs 1 through 144 of this Complaint, with the same force and effect as if fully set forth herein.

146.    The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose.

147.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2525.

148.    In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to emit or off-gas Sulfer compounds and/or potentially

harmful, irritating and/or corrosive substances renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the defect or defects.

149.    In the alternative, the defects are redhibitory in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

150.    The Manufacturing Defendants are conclusively presumed to know of the defects in the drywall manufactured by them.

151.    In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

152.    Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Manufacturing Defendants and/or Distributor Defendants are, moreover,   deemed to be placed on notice when notice is provided to Contractor/Builder Defendants (and/or Distributor Defendants); and All Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

153.    All Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of

the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

154.    In the alternative, to the extent that any Distributor Defendant and/or Contractor/Builder Defendant did not know of the defects in the drywall at the time of delivery and/or sale, those defendants are liable to Louisiana Plaintiffs to repair, remedy or correct the defect; and/or, if unable to do so, for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale, and those expenses incurred for the preservation of the drywall and associated items, in accordance with La. Civ. Code art. 2531.

## COUNT XI
## BREACH OF CONTRACT

(Against Defendants Great Southern Builders, L.L.C., Gavins Construction Company and Bel-Tex Contracting, Inc. (collectively the "Contractors/Builders"))

155.    Plaintiffs repeat, reiterate and re-allege paragraphs 1 through 154 of this Complaint, with the same force and effect as if fully set forth herein.

156.    Plaintiffs, SARAH FRANATOVICH, as Next Friend of MACI FRANATOVICH, a minor, SARAH FRANATOVICH, and MITCHELL FRANATOVICH, offered and Defendant GREAT SOUTHERN BUILDERS, L.L.C. accepted sums of money in exchange for an agreement to build/remodel their home.

157.    TIFFANY BRAIDEN, AS REPRESENTATIVE OF THE ESTATE OF JANE BIENEMEY, DECEASED, offered and Defendant BEL-TEX CONTRACTING, INC. accepted sums of money in exchange for an agreement to build/remodel her home.

158.    LE HUNG, TRAN LANG, LE LINDA, LE LUYEN, LE NHI NGA, LE VINH, AS NEXT FRIEND OF LE THI TUYETY, A MINOR and LE VINH offered and Defendant GAVINS CONSTRUCTION COMPANY accepted sums of money in exchange for an agreement to build/remodel their home.

159.    Upon information and belief each agreement entered into by Plaintiffs for the construction/remodeling of their homes warranted that the homes would be free from defects.

160.    The presence of the defective drywall, which "off-gasses" sulfur is a violation of Plaintiffs' agreement, and upon information and belief, the contracts of each Plaintiff.

161.    As a direct consequence of the breaches of contract described above, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses.  Plaintiffs are informed and believe, and further allege that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services.

## COUNT XII
## BREACH OF THE IMPLIED WARRANTY OF HABITABILITY

(Against Defendants Great Southern Builders, L.L.C., Gavins Construction Company and Bel-Tex Contracting, Inc.(collectively the "Contractors/Builders"))

162.    Plaintiffs repeat, reiterate and re-allege paragraphs 1 through 161 of this Complaint, with the same force and effect as if fully set forth herein.

163.    The Contractors/Builders Defendants were in direct contractual privity with Plaintiffs FRANATOVICH, BRAIDEN and VINH herein.

164.    The drywall that the the Contractors/Builders installed in the homes of Plaintiffs, FRANATOVICH, BRAIDEN and VINH, was placed into the stream of commerce by the Contractor/Builder Defendants in a defective condition and was expected to, and did, reach users, handlers, and persons coming into contact with said drywall product without substantial change in the condition in which it was sold.

165.    Plaintiffs FRANATOVICH, BRAIDEN and VINH bought/remodeled their homes containing defective drywall based upon judgment of the Contractor/Builder Defendants.

166.    The Contractor/Builder Defendants breached the implied warranty of habitability because the defective drywall causes Plaintiffs', FRANATOVICH, BRAIDEN and VINH, homes not meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality time due to the defects set forth herein.

167.    The Contractor/Builder Defendants had reasonable and adequate notice of the claims of the Plaintiffs, FRANATOVICH, BRAIDEN and VINH, for breach of implied warranty of habitability and failed to cure.

168.    As a direct and proximate cause of the Contractor/Builder Defendants' breach of implied warranty of habitability, Plaintiffs, FRANATOVICH, BRAIDEN and VINH, have incurred harm and damages and/or personal injuries as described herein.

## COUNT XIII
## VIOLATION OF THE LOUISIANA
## NEW HOME WARRANTY ACT

(Against Defendants Great Southern Builders, L.L.C. and Bel-Tex Contracting,
Inc.(collectively the "Louisiana Contractors/Builders"))

169.    Plaintiffs repeat, reiterate and re-allege paragraphs 1 through 168 of this Complaint, with the same force and effect as if fully set forth herein.

170.    The Louisiana New Home Warranty Act provides protection to owners of homes against builders in connection with the construction of the homes.

171.    Plaintiffs, FRANATOVICH and BRAIDEN, are "owners", as that term is defined by LSA-R.S. 9:3143(3), who is asserting a claim under the New Home Warranty Act against their "builder", as that term is defined by LSA-R.S. 9:3143(1).

172.    Implicit in every Builder Defendant's building contract is the requirement that the work to be completed be performed in a workmanlike manner that is free from defects in material and workmanship.

173.    Defendants Great Southern Builders, L.L.C. and Bel-Tex Contracting, Inc. who are subject to this claim violated their duty to use materials that are free from defects.  The Chinese drywall used by the Builders is defective for the reasons set forth above.

174.    Given the defect in the Chinese Drywall , the Builders knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs.

175.    As a direct cause of the Builders' acts and omissions, Plaintiffs were harmed and have incurred damages and/or personal injuries as described herein.

## STATE SPECIFIC CAUSES OF ACTION

## CAUSE OF ACTION AGAINST THE MANUFACTURERS UNDER LOUISIANA PRODUCTS LIABILITY ACT

176.    Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

177.    The Manufacturers, as named herein, are manufacturers and their defective drywall constitutes products under the Louisiana Products Liability Act [LPLA].

178.    The exposure to dangerous gases from the Manufacturers' products resulted from the normal, foreseeable, and intended use of the products, without substantial alteration in the condition in which the Manufacturers' sold these products.

179.    The design of the drywall that contains harmful materials is defective and poses an unreasonable risk of harm to the Plaintiffs and their homes.

180.    Alternatively, the use of harmful materials in the drywall constitutes a defect in composition or manufacture that poses an unreasonable risk of harm to the Plaintiffs and their homes.

181.    The Manufacturers' products were in a defective condition and were unreasonably dangerous under normal use at the time the products left the respective Manufacturers' control. The Plaintiffs were intended and foreseeable users of the alleged defective products, and damages and losses to the Plaintiffs reasonably could have been anticipated by the Manufacturers.

182.    The defects in the Manufacturers' drywall is described in detail hereinabove, and includes, but is not limited to, the following:

a.    In failing to design their respective products so as not to emit dangerous levels of gases;

b. In providing drywall to the Plaintiffs which, by virtue of its design and/or manufacture and/or composition was unreasonably dangerous under reasonably anticipated use;

c. In providing drywall to the Plaintiffs which, by virtue of a lack of an adequate warning(s) was unreasonably dangerous under reasonably anticipated use;

d. In providing drywall to the Plaintiffs which did not conform to the express warranties made by the Manufacturers regarding their fitness for use as reasonably anticipated;

e. In failing to properly test the drywall to properly evaluate the level of emissions of various gases under foreseeable conditions for extended periods of time;

f. In failing to warn Plaintiffs of the unreasonably dangerous nature of the drywall or of the presence of excessive levels of emissions of dangerous gases and the hazards, both to persona and property, associated with the excess levels of emissions of these gases;

g. In failing to ensure that the drywall they manufactured and provided to the Plaintiffs was suitable for its intended use;

h. In failing to adhere to any and all express warranties of fitness and safety for the drywall they manufactured and provided;

i. In manufacturing and providing drywall which was unduly dangerous due to its emissions of various gases; and,

j. Such other indicia of fault under the LPLA as will be shown at the trial of this matter.

## CAUSE OF ACTION UNDER MISSISSIPPI STATE LAW
### Strict Products Liability MS Code Annotated § 11-1-63

183.    Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

184.    The Manufacturers, at the time the drywall left their control, knew or should have known that the product was defective because it deviated in a material

way from the manufacturers' specifications or from otherwise identical drywall manufactured to the same manufacturing specifications.

185.    The Manufacturers knew or should have known that the defective condition rendered the subject drywall unreasonably dangerous to the Plaintiffs and their property; and

186.    The defective and unreasonably dangerous condition of the product (the failure of the drywall to be installed in a home that is then safely habitable without exposure to noxious fumes, odors and dangerous gases) proximately caused the damages and injuries sustained by Plaintiffs, both physically and to their property.

187.    At all relative times, Plaintiffs lacked actual or constructive knowledge of the defective condition of the product and that the defective product was inconsistent with their safety and the integrity of their homes.

188.    At all relevant times, Plaintiffs did not appreciate the danger of the drywalls' defective conditions.

189.    At all relevant times, Plaintiffs did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition.

190.    The subject drywall in question failed to function as expected as a result of its design characteristics.

191.    An alternative design existed at the time the drywall left the control of the Manufacturers, which would have not impaired the products' usefulness or desirability.

42

192.    The alternative design would have, to a reasonable probability, prevented the toxic exposure of the Plaintiffs and the adverse effects upon their homes and the appliances and components therein.

## PRODUCTS LIABILITY: FAILURE TO WARN

193.    The product (drywall) was defective because it failed to contain adequate warnings or instructions.

## PRODUCTS LIABILITY: BREACH OF EXPRESS WARRANTY

194.    The product (drywall) breached an express warranty and/or failed to conform to other express factual representations upon which the Plaintiffs justifiably relied in electing to use these products.

## COMPENSATORY DAMAGES UNDER MISSISSIPPI LAW

195.    Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

196.    As a direct and proximate result of the Manufacturers' acts and omissions, Plaintiffs have suffered and will continue to suffer damages in an amount in excess of the minimum jurisdictional limits of the court for past and future physical pain and mental suffering, past and future reasonable and necessary medical expenses, past and future physical impairments and disability, past and future loss of earning capacity, and past and future loss of enjoyment and quality of life and other damages and injuries as set forth above, including the damages Plaintiffs suffered from exposure to the various gases emitted by Defendants' drywall products.

197.    Plaintiffs, as a direct and proximate result of the Manufacturers' negligence, malicious, fraudulent and intentional acts and omissions, and as a direct result of the other causes of action described above, have experienced and continue to experience severe mental pain, anguish and suffering directly attributable to the occurrence made the basis of this lawsuit and directly attributable to the injuries and the harm they have sustained.

198.    Plaintiffs have suffered out-of-pocket expenses, which include travel expenses, attorney's fees, costs of court, time from work and other expenses. Accordingly, Plaintiffs seek all general, special, incidental and consequential damages as shall be proven at the time of trial, including exemplary, enhanced and trebled damages, pre judgment interest, and post-judgment interest.

199.    As a result of the drywall emitting excessive and dangerous levels of various gases, the drywall is dangerous to human health and property.

## PUNITIVE / EXEMPLARY DAMAGES AS TO MANUFACTURING DEFENDANTS UNDER MISSISSIPPI LAW

200.    Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

201.    Pursuant to Miss. Code Ann. § 11-1-65, inasmuch as the conduct of the Manufacturers and their servant/employees constitutes willful, wanton, egregious and reckless disregard for the rights and safety of the Plaintiffs and their property, an award of punitive damages is appropriate and necessary under these facts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally as follows:

a.    Equitable, injunctive, and declaratory relief;

b.    Damages in an amount to be determined at trial;

c.    Pre-judgment and post-judgment interest at the maximum rate allowed at law;

d.    Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

e.    The costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees;

f.    All statutory damages;

g.    Disgorgement of Defendants' profits from the sale of drywall;

h.    Reimbursements for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as other legal or equitable relief to which Plaintiffs may be entitled;

j.    Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable.

BY ATTORNEYS:

Dated:  February 12, 2010

/s/ Mikal C. Watts
_____

    Mikal C. Watts
    State Bar No.  20981820
    Robert C. Hilliard
    Texas State Bar No. 09677700
    Ryan L. Thompson
    State Bar No.  24046969
    Jesse E. Guerra, Jr.
    State Bar No. 24057877
    Kevin W. Grillo, Of Counsel
    Texas State Bar No. 08493500

**WATTS HILLIARD LLP**
4 Dominion Dr., Bldg. 3., Ste. 100
San Antonio, Texas 78257-1390
Telephone:  (210) 447-0500
Facsimile:  (210) 447-0501
mcwatts@wgclawfirm.com
bobh@hmglawfirm.com
rthompson@wgclawfirm.com
jesseg@hmglawfirm.com
kevin@hmglawfirm.com

ATTORNEYS FOR PLAINTIFFS