IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE MANUFACTURED
DRYWALL PRODUCTS LIABILITY            : MDL No. 2047
LITIGATION                            : Section L
_____/

This Document Relates to:             : JUDGE FALLON
Gross, 09-6690                        : MAG. JUDGE WILKINSON

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LA SUPREMA ENTERPRISE, INC. AND LA SUPREMA TRADING, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Defendants, LA SUPREMA ENTERPRISE, INC. and LA SUPREMA TRADING, INC. (collectively, "La Suprema"), by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), hereby submit their Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Amended Class Action Complaint ("Complaint"), and further state:

Plaintiffs are residents of New Orleans, Louisiana and allege to have defective, Chinese-manufactured drywall in their respective homes. However, they furthermore allege that they have, "no way of identifying the manufacturer" of said drywall (Complaint ¶¶ 4, 11). Consequently, Plaintiffs included numerous entities throughout the world as named Defendants in this litigation, which entities the Plaintiffs assert, "collectively contro[l] 100% of the relevant market for the sale, distribution, exporting, importing, supplying, and/or marketing of the defective Chinese drywall at issue" (Complaint ¶147).

In support of such unconventional strategy, Plaintiffs purport to allege facts justifying "industry wide alternative liability" (Complaint ¶¶147-152). Essentially, all of

the named defendants are targeted due to their alleged "concealment" of the drywall's origin (Complaint ¶150) as well as the alleged "fungible" nature of the drywall (Complaint ¶151). These factors, so the argument goes, create such "uncertainty as to which Defendant has caused the Plaintiffs' harm" that the burden should shift to each of the dozens of Defendants named herein to prove that they did not cause the alleged harm to Plaintiffs and the class members as contemplated by the Restatement (Second) of Torts §433(B) (Complaint ¶152).

That the named Plaintiffs may have suffered redressable harm in no way justifies the unprecedented, overbroad and irresponsible theory of liability pursued. The Complaint seeks to trample upon venerable constitutional, statutory and precedential safeguards designed to ensure that an injured plaintiff obtains redress in a manner consistent with due process, and against only those defendants that may properly be held accountable. Plaintiffs have therefore unnecessarily burdened scarce judicial resources already taxed by the complexities of multidistrict litigation and required the named Defendants, the vast majority (if not all) of whom have no connection to Mr. Velez or the Grosses, to expend resources better channeled towards less frivolous matters. As will be discussed in detail below, the Complaint suffers from legal deficiencies so severe that the need for its dismissal with prejudice is beyond peradventure.

    I.    *<u>Plaintiffs lack standing as to La Suprema.</u>*

Although the Complaint is infirm for numerous reasons, the issue of standing is a threshold inquiry encompassing a federal district court's subject matter jurisdiction to hear the merits of the case at issue. *See* <u>In re FEMA Trailer Formaldehyde Products Liability Litigation</u>, 570 F.Supp.2d 851, 853 (E.D.La.2008). In the absence of standing,

there is no "case or controversy" upon which the Court may exercise its judicial power under Article III of the Constitution. <u>Matte v. Sunshine Mobile Homes, Inc.</u>, 270 F.Supp.2d 805, 813 (W.D.La.2003) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 498-499 (1975)). Although the Court must accept as true all material allegations of the Complaint and construe same in favor of Plaintiffs upon consideration of a motion to dismiss for lack of standing, Plaintiffs have the burden to establish the existence of the Court's subject matter jurisdiction. <u>In re FEMA Trailer Formaldehyde Products Liability Litigation</u>, 570 F.Supp.2d at 853.

Article III standing is comprised of three elements: (1) actual or imminent injury, which injury must be concrete and particularized rather than conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood of the injury being redressed via favorable decision. <u>Matte</u>, 270 F.Supp.2d at 813. The second prong – causation – requires a showing that the alleged injury is fairly traceable to the alleged conduct of the defendant. *See* <u>Sprint Communications Co., L.P. v. APCC Services, Inc.</u>, 128 S.Ct. 2531, 2535 (2008). In the case at bar, the Complaint is entirely premised upon Plaintiffs' assertion that *they cannot trace their injuries to the conduct of any particular Defendant.* Accordingly, it is indisputable that Mr. Velez and the Grosses lack the causation element of constitutional standing necessary to trigger this Court's jurisdiction to hear their case.

Specifically, Plaintiffs candidly maintain that the drywall allegedly installed in their homes, "was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by *certain unknown defendants*." (Complaint ¶¶ 7, 13 (emphasis added) As to La Suprema, Plaintiffs merely assert that both entities,

"supplied the drywall at issue in this litigation in Florida and/or other affected states." (Complaint ¶¶ 93, 94) Such allegations effectively concede that La Suprema had no part in causing Plaintiffs' asserted injuries since each Plaintiff is a resident of Louisiana, and the Complaint conspicuously omits allegations that Plaintiffs' drywall was obtained out-of-state. Plaintiffs go on to allege that, despite unspecified "diligent" efforts to identify those parties involved in the drywall's distribution, such efforts were unsuccessful due to an allegedly "inherent inability to identify the manufacturer of the product that caused them harm." (Complaint ¶149) Thus, even assuming the truth of Plaintiffs' allegations of actual injury resulting from the allegedly defective drywall, there simply is no constitutional basis upon which to invoke this Court's jurisdiction in order to assign liability to parties (such as La Suprema) whom Plaintiffs cannot identify as having caused their purported injuries.

This Court previously rejected the standing of plaintiffs asserting allegations similar to those at issue here in <u>In re FEMA Trailer Formaldehyde Products Liability Litigation</u>, *id.* Therein, plaintiffs in a multidistrict litigation proceeding attempted to bring claims against various manufacturers of trailers provided by FEMA to residents along the Gulf Coast in the wake of Hurricanes Katrina and Rita. Upon consideration of a motion to dismiss brought by certain of the manufacturers challenging, *inter alia*, the plaintiffs' standing, this Court determined:

> "Here, the named Plaintiffs have similarly not set forth allegations sufficient and specific enough to establish that any of them has Article III standing to pursue claims against any of the Newly-Added Defendants. Further, Plaintiffs admit that they have not alleged that any particular Plaintiff ever lived in a housing unit manufactured by any of the Newly-Added Defendants. *Thus, the Court finds that the [Administrative Master*

> *Complaint] is deficient because it fails to include allegations that any particular plaintiff lived in any particular housing unit or was harmed by a specific manufacturer of any housing unit. … Standing is an irreducible constitutional minimum that is a threshold inquiry to adjudication.* The Court cannot simply ignore the fact that at this point in time, sufficient facts have not been alleged to show that standing exists." In re FEMA Trailer Formaldehyde Products Liability Litigation, 570 F.Supp.2d at 856 (citations omitted) (emphasis added)

Similarly, the United States District Court for the Western District of Louisiana was faced with a challenge to the standing of plaintiffs who brought a putative class action against various mobile home manufacturers in Matte v. Sunshine Mobile Homes, Inc., *id.* The Matte Court noted:

> "The complaint is devoid of allegations that any named plaintiff ever owned, rented, occupied, resided in, or otherwise had any contact with *any* mobile home – whether manufactured by one of the 282 defendants or another entity. … Responding to the argument that they failed to allege any contact with specific mobile homes, plaintiffs make the astonishing statement that *'[i]t is possible, if not probable,* that some or all of the named plaintiffs have either lived in, occupied or even purchased at some time or another a mobile home manufactured by some or all of the defendants.' As a complete admission of no standing, this statement would be hard to improve upon." Matte, 270 F.Supp.2d at 814-815 (emphasis supplied)

Here, Plaintiffs have likewise made their lack of standing plainly evident by the express allegations of the Complaint. Paragraphs 7, 13, 149, and the sole allegations specifically directed against La Suprema – paragraphs 93-94 – clearly establish that they cannot fairly trace their asserted injuries to the conduct of any particular defendant. The Complaint must therefore be dismissed in its entirety due to Plaintiffs' failure to properly invoke the Court's Article III subject matter jurisdiction.

### II. *La Suprema lacks the contacts with Louisiana necessary for the Court to exercise personal jurisdiction.*

The Complaint's constitutional infirmities extend beyond Article III. Additionally, the Fourteenth Amendment's Due Process Clause prohibits federal courts from exercising *in personam* jurisdiction over nonresident defendants where such parties lack sufficient "contacts, ties, or relations" with the forum state. Luv n' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir.2006) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Upon a challenge to a federal court's personal jurisdiction over a nonresident defendant, the party seeking to invoke the power of the court bears the burden of establishing jurisdiction via a *prima facie* showing. *Id.* Although a federal personal jurisdiction analysis typically entails two inquiries – amenability to service under the forum state's long-arm statute, and consistency with Fourteenth Amendment due process – the inquiries merge in Louisiana because the state's long-arm statute permits service to the fullest extent of the Due Process Clause. Reed v. Biomet Orthopedics, Inc., 2008 WL 1735162 at 2 (W.D.La.); *see also* La. R.S. 13:3201(B).

A federal court's exercise of personal jurisdiction over a nonresident defendant may be general or specific, depending upon the extent of the defendant's contacts with the forum state. Luv n' care, Ltd., 438 F.3d at 469. General jurisdiction requires "continuous and systematic general business contacts", whereas specific jurisdiction is authorized if the subject litigation specifically arises out of or relates to the defendant's contacts with the forum. *Id.* (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Where a nonresident defendant lacks the continuous and systematic contacts required to sustain the exercise of

general jurisdiction, the Fifth Circuit has devised a three-pronged test to determine if sufficient "minimum contacts" exist to support the exercise of specific jurisdiction. *Id.* (citing <u>Nuovo Pignone v. STORMAN ASIA M/V,</u> 310 F.3d 374 (5th Cir.2002). Specific jurisdiction is available where: (1) the nonresident defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) the subject litigation arises or results from the defendant's forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Id.* In the case at bar, due process precludes the Court's exercise of either general or specific jurisdiction over La Suprema.

As evidenced by the affidavit attached hereto as exhibit "A," the La Suprema entities are Florida corporations having absolutely no contacts with the state of Louisiana. La Suprema neither did business in, nor with any entity doing business in, the state of Louisiana. Prior to its inclusion as a named Defendant in this case, its only contacts with Louisiana were the various lawsuits filed against it solely by Florida Plaintiffs in Florida courts which lawsuits were ultimately transferred to this Court within MDL No. 2047. Thus, La Suprema has never engaged in the purposeful direction of its activities towards, nor purposely availed itself of the privilege of conducting business in, Louisiana. Moreover, the instant litigation in no way arose or resulted from La Suprema's Louisiana-related contacts – because no such contacts exist. Indeed, the Complaint alleges nothing to the contrary, and merely asserts that La Suprema "supplied the drywall at issue in this litigation in Florida and/or other affected states." (Complaint ¶¶ 93, 94). Plaintiffs' omission of even a single allegation that La Suprema conducted business in Louisiana speaks volumes.

Finally, there would be nothing fair or reasonable should the Court exercise personal jurisdiction over La Suprema within this case. As formulated by the Fifth Circuit, the fairness and reasonableness aspect of the specific jurisdiction analysis requires consideration of: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. Felch v. Transportes Lar-Mex SA De CV, 92 F.3d 320, 324 (5th Cir.1996). All of these factors strongly militate against the Court's exercise of personal jurisdiction over La Suprema.

The burden on a nonresident defendant upon being haled into court in a foreign jurisdiction, towards which such defendant neither directed its commercial activities nor reasonably could have foreseen its products reaching the forum, is tremendously unfair. Even under the Fifth Circuit's relaxed "mere foreseeablity" minimum contacts test, Luv n' care, Ltd., 438 F.3d at 470, no interpretation of La Suprema's business conduct could support the fair and reasonable exercise of personal jurisdiction in Louisiana. Moreover, Louisiana has no legitimate interest in providing a forum for plaintiffs to litigate against random defendants with no causal relationship to the asserted injuries. Similarly, a plaintiff has no legitimate interest sufficient to support the exercise of personal jurisdiction in securing relief against a party whom such plaintiff cannot identify as having caused any harm. The interest of the interstate judicial system in the efficient administration of justice would be impeded to the extent personal jurisdiction is exercised over a party with no contacts with the forum state and who did not cause redressable harm to the Plaintiffs. Finally, the shared interests of the several states in furthering

fundamental social polices are best served via upholding constitutional safeguards designed to ensure that injured parties seek redress consistently with due process. In contrast, the Court's exercise of personal jurisdiction over La Suprema in this case would turn due process on its head because of La Suprema's utter lack of minimum contacts with Louisiana. The Complaint must therefore be dismissed on personal jurisdiction grounds.

      III.      *Plaintiffs have failed to state a claim upon which relief can be granted.*

The Complaint is furthermore defective based upon substantive legal grounds. As an initial matter, a federal court sitting in diversity jurisdiction looks to the forum state's choice-of-law rules to determine which substantive law to apply. Marchesani v. Pellerin-Milnor Corp., 269 F.3d 481, 485 (5th Cir.2001). The Louisiana Civil Code dictates that in products liability cases such as the instant litigation, Louisiana law applies if the injury was sustained in Louisiana by a Louisiana resident. *See* La. Civ.Code Ann. Art. 3545. Pursuant to paragraphs 3, 4, 9 and 11 of the Complaint (collectively establishing that Plaintiffs reside in New Orleans and sustained damages due to allegedly defective drywall installed in their New Orleans residences), therefore, Louisiana substantive law applies to this suit.

Although the Louisiana Products Liability Act, La.Rev.Stat. 9:2800.51, *et seq.*, establishes the exclusive theories of liability for *manufacturers* for damages caused by their defective products, non-manufacturer sellers of a defective product are liable in tort only to the extent such sellers knew or should have known that the product sold was defective and the defect was not declared to the purchaser. *See* Jefferson v. Lead Industries Ass'n, Inc., 106 F.3d 1245, 1250-51 (5th Cir. 1997); Slaid v. Evergreen

Indemnity, Ltd., 745 So.2d 793, 797 (La.App. 2d Cir. 1999). Non-manufacturer sellers are not required to inspect a product prior to sale in order to discover inherent defects. *Id.*; Harris v. Atlanta Stove Works, Inc., 428 So.2d 1040, 1043 (La.App. 1st Cir. 1983).

La Suprema is alleged to be a "supplier" of drywall, and is therefore a non-manufacturer seller under Louisiana products liability law (Complaint ¶¶ 93, 94). Accordingly, La Suprema's sole basis for liability to Plaintiffs is dependent upon its actual or constructive knowledge of the alleged defects in the drywall.

Plaintiffs' allegations as to the nature of the alleged defect in the drywall establish that absent actual knowledge, the only way that La Suprema could have known about the defect is via chemical testing of the drywall. Specifically, Plaintiffs allege, "the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or 'off-gassed') from the drywall." (Complaint ¶ 154) In other words, the alleged defect cannot be discerned with the naked eye, nor would such alleged phenomena be evident in normal shipping of the drywall. Rather, absent laboratory testing, chemical analysis, or observing the alleged side effects from "off-gassing" after the drywall was installed – such as corroded wires, HVAC components, etc. – the defect is latent. Thus, La Suprema was under no duty to discover same. Slaid, 745 So.2d at 797; Harris, 428 So.2d at 1043.

Even if Plaintiffs had properly alleged La Suprema possessed actual knowledge of the alleged defect (the Court should discount Plaintiffs' bare, conclusory assertions that "Defendants" knew or should have known…; e.g., Complaint ¶244), they cannot establish that La Suprema failed to declare the defect when they cannot establish that La Suprema supplied their drywall.

For the same reasons Plaintiffs lack standing to bring their claims, each of their substantive causes of action fail as a matter of law due to lack of causation. Plaintiffs do not even attempt to allege the proximate causation necessary to sustain their claims; instead, they purport to rely upon a market share theory of alternative liability (Complaint ¶¶ 147-152). Such purported reliance is fatal to their claims under Louisiana law, since Louisiana does not recognize a market share theory of liability. *See* Jefferson, 106 F.3d at 1247-1248 (citing Thompson v. Johns-Manville Sales Corp., 714 F.2d 581, 583 (5th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984); Bateman v. Johns-Manville Sales Corp., 781 F.2d 1132, 1133 (5th Cir.1986)); Ramey v. Cantrell Machine Co., Inc., 2008 WL 4155335 at 5, n.3 (W.D.La.). As noted by the Fifth Circuit in Jefferson:

> "If the inapplicability of either the market share or the civil conspiracy theories of recovery in Louisiana products liability cases is to be changed to make either or both of those theories pertinent, *such change should come from the legislature as the primary source of Louisiana law or from the highest court of that state as a secondary source of law, not from a federal court sitting in diversity*." 106 F.3d at 1248 (emphasis added)

IV.   *Conclusion.*

La Suprema acknowledges Plaintiffs' misfortune in having allegedly defective drywall installed in their homes. Misfortune alone, however, is no substitute for standing, due process, and *jurisprudence constante*. Plaintiffs seek to impose liability upon La Suprema, yet they openly concede they cannot identify La Suprema as having caused their injuries. They seek to invoke the Court's exercise of personal jurisdiction over La Suprema, notwithstanding the absence of even the slightest trace of the minimum contacts necessary to do so. They purport to rely upon an alternative theory of liability

which has been soundly rejected by Louisiana's state courts and ignored by its

legislature, under circumstances whereby this Court is bound to apply state law.

Dismissal with prejudice is therefore required.

        ROSENTHAL ROSENTHAL RASCO KAPLAN, LLC
        One Aventura, Suite 600
        20900 NE 30th Avenue
        Aventura, Florida 33180
        Tel:    305-937-0300
        Fax:   305-937-1311


By:_____
        EDUARDO I. RASCO, ESQ.
        FLORIDA BAR NO. 646326
        STEVE BIMSTON, ESQ.
        FLORIDA BAR NO. 179205

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 5th day of March, 2010.

ROSENTHAL ROSENTHAL RASCO KAPLAN, LLC
One Aventura, Suite 600
20900 NE 30th Avenue
Aventura, Florida 33180
Tel:   305-937-0300
Fax:   305-937-1311


By:_____
EDUARDO I. RASCO, ESQ.
FLORIDA BAR NO. 646326
STEVE BIMSTON, ESQ.
FLORIDA BAR NO. 179205

# 172587 - 1