UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON |
| State of Louisiana, *ex rel.* James D. ("Buddy") Caldwell, the Attorney General of Louisiana | * * * * | MAG. WILKINSON (#10-0340) |
| VERSUS      #10-0340 | * * | |
| Knauf Gips KG, et al | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
LOUISIANA'S MOTION TO REMAND**

The State of Louisiana ("Louisiana"), through the Honorable James D. "Buddy" Caldwell, Attorney General of Louisiana, submits this Memorandum in support of Louisiana's Motion to Remand. For the following reasons, Louisiana asks this Court to remand this case to state court because this Court lacks subject matter jurisdiction.

**INTRODUCTION AND PROCEDURAL BACKGROUND**

On January 14, 2010, Louisiana filed suit on its own behalf and as *parens patriae*, in the Civil District Court for the Parish of Orleans, State of Louisiana, seeking damages that Louisiana has suffered by reas

on of the widespread use of Defendants' defective drywall in Louisiana. Louisiana's Petition asserts only state law claims. On February 5, 2010, Defendants Knauf Insulation GmbH and Interior Exterior Building Supply, L.P. (collectively the "Removing Defendants") filed a notice of removal, removing Louisiana's suit to this Court. None of the other twenty-one Defendants have sought removal or joined the Notice. The Removing Defendants claim that removal is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). They are wrong.

Removal is improper for several reasons. First, Louisiana's Petition raises no questions of federal law. Only state law claims are made, and thus there is no federal question of jurisdiction under 28 U.S.C. § 1331. The Removing Defendants do not claim otherwise. Second, because under the Constitution and settled law, a State is not a citizen for diversity purposes, there can be no diversity jurisdiction under § 1332. Without either federal question or diversity jurisdiction, this Court lacks subject matter jurisdiction. While CAFA permits a federal court to exercise jurisdiction in certain cases involving minimal, rather than complete, diversity, this is not such a case. Here, unlike *State of Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir. 2008), Louisiana is the real party in interest and even the minimal diversity constitutionally required by CAFA is absent. Third, contrary to the Removing Defendants' assertion in their Notice of Removal, (*see* Notice at ¶¶ 8-15), Louisiana's Petition is neither a "class action" nor a "mass action" within the meaning of CAFA, and therefore CAFA has no application to this case at all.

Finally, even if this case, brought only by Louisiana for its own interests, were by some reckoning a "class action" or a "mass action" within the meaning of CAFA, CAFA cannot abrogate the State's Eleventh Amendment immunity from being "called at the bar of the federal court." In sum, there is no basis for federal subject matter jurisdiction and remand is required.

## DISCUSSION

### A. Removal To Federal Court Is Generally Disfavored.

We start with the undeniable proposition that federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and that parties attempting to remove a case to federal court bear a heavy burden of proving federal jurisdiction over the state court suit. *See Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *Sid Richardson Carbon & Gasoline Co v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). "The federal removal statute, 28 U.S.C. § 1441, is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank*, 128 F.3d at 922. Because removal raises significant federalism concerns, courts must resolve all doubts against the exercise of federal jurisdiction. *See Rico v. Flores*, 481 F.3d 234, 238-39 (5th Cir. 2007) (court is "obligated to resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law, in the plaintiff's favor" in deciding whether removal is proper); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction"); *Univ. of S. Ala. v. Am. Tobacco Co.*, 163 F.3d 405, 411 (11th Cir. 1999) ("all doubts about jurisdiction should be resolved in favor of remand to state court."). "CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." *Evans v. Walter Indus., Inc.* 449 F.3d 1159, 1164 n. 3 (11th Cir. 2006).

Accordingly, 28 U.S.C. § 1441(a) authorizes removal of a civil action from state court to federal court only if the district courts of the United States have "original jurisdiction" over the

action.[1] Pursuant to 28 U.S.C. § 1331, the district courts of the United States have "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." Under 28 U.S.C. § 1332(a), the district courts of the United States also have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between ... citizens of a State and citizens or subjects of a foreign state."

**B.     Louisiana Is Not A "Citizen" For Diversity Purposes, There Is No Diversity, And Remand Is Therefore Required.**

The Removing Defendants invoke this Court's diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d).[2] CAFA expands the grant of original federal jurisdiction to include "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant . . . or . . . any member of a class of plaintiffs is a citizen of a State and any defendant is a . . . citizen or subject of a foreign state." 28 U.S.C. § 1331(d)(2).

However, as the Removing Defendants concede, even CAFA requires minimal diversity. Thus, because the State of Louisiana is the only plaintiff in this case, Petition at ¶ 15, and because Louisiana is not a citizen for diversity purposes, it follows that there is no diversity in this case.[3] "If at any time before final judgment it appears that the district court lacks subject

---

[1] Section 1441(a) states: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court *of which the district Courts of the United States have original jurisdiction*, may be removed by the defendant or the defendants, to the district court of the United states for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (emphasis added).

[2] Generally there must be complete diversity between the plaintiff and all defendants for removal to federal court based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441(b). The Removing Defendants do not dispute that there is not complete diversity in this case. (Notice at ¶ 6.) Under CAFA, a defendant can remove to federal court absent complete diversity if certain conditions are met: there is minimal diversity, the action is a "class action" or "mass action" as defined by CAFA, various prerequisites of CAFA are met, and none of the exceptions to CAFA apply.

[3] "There is no question that a State is not a 'citizen' for purposes of diversity jurisdiction." *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973). *See In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 706 (5th Cir. 2008) ("a state is not a citizen under the diversity statutes, including CAFA"); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 547 (5th Cir. 2006) (holding that CAFA did not change long-settled rule that "a state has no citizenship for § 1332(a) diversity purposes.").

matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). "This provision is mandatory." *Univ. of S. Ala.*, 168 F.3d at 410. Therefore, remand is required.

### C. This Case Is Neither A Class Action Nor A Mass Action Under CAFA.

The Removing Defendants claim, in conclusory fashion, that Louisiana's case is either a "class action" or a "mass action" within the meaning of CAFA. However, as even a cursory review of Louisiana's Petition reveals, this case was not brought pursuant to Fed. R. Civ. P. 23 or a "similar State statute or rule of judicial procedure authorizing an action to be brought by 1 [sic] or more representative persons as a class action." *See* 28 U.S.C. § 1332(d)(1)(B). Instead, the State of Louisiana brought this case as authorized by Article 4, Section 8 of the Louisiana Constitution, La. Rev. Stat. 13:5036, La. Rev. Stat. 51:1407, and La. Rev. Stat. 51-1408. This case is therefore not a class action within the meaning of CAFA, 28 U.S.C. § 1332(d)(1)(B).

Nor does this case qualify as a mass action under CAFA, as the Removing Defendants allege. *See* 28 U.S.C. § 1332(d)(11). Under CAFA, a "mass action" is defined "as any civil action … in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact …" 28 U.S.C. § 1332 (d)(11)(B)(i).

#### 1. Louisiana Is The Real Party In Interest.

If Louisiana is the real party in interest, then this case must be remanded. The Removing Defendants can avoid remand only by proving (1) that Louisiana is not the real party in interest in this case but is rather a mere nominal party suing on behalf of a "class" or "mass," as defined in CAFA, *and* (2) that the requirements of CAFA are otherwise met. *See Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980) (for purposes of evaluation diversity jurisdiction, only the citizenship of the real parties in interest is considered; the citizenship of a nominal party is disregarded). While the Removing Defendants declare, without legal argument or factual

support, that "'all' Louisiana citizens" are the "real parties in interest" and "Plaintiffs" in this case, (Notice at ¶¶ 5-6),[4] Louisiana's Petition makes clear that the State is the real party in interest.

Louisiana brought this suit for its own interests, is the only plaintiff, and is the real party in interest. No private party could conceivably sue for damage to the State's finances, or the State's overall economy, as Louisiana has done here. (*See, e.g.*, Petition at ¶¶ 177, 178, 185, 187, 192.)

### a. The Petition Alleges Direct and Indirect Harm to the State.

The State of Louisiana has several direct and indirect interests of its own in this litigation apart and distinct from the interests of individual homeowners and occupants living in homes contaminated by Defendants' drywall. Louisiana's Petition enumerates numerous ways in which Defendants' conduct and drywall products are harming Louisiana's overall economy and finances. (*See, e.g.*, Petition at ¶¶ 177, 178, 185, 187, 192.) Among other harms, Louisiana has suffered the following specific, direct economic and financial injuries:

- By decreasing (or eliminating) the property values of homes and buildings across Louisiana, the presence of Defendants' drywall in Louisiana "is thus reducing the amount of property taxes and permit fees the State and local taxing authorities will collect, which in turn harms Louisiana's public schools, law enforcement, fire protection, parks and recreation, libraries, public retirement systems, local health services and all other public services funded in whole or part through property taxes that are generated by local political subdivisions." (Petition ¶ 185.)

---

[4] Indeed, the substantive portion of the Removing Defendant's Notice (Notice ¶¶ 4-25) is conspicuously devoid of a single citation to case law.

- The presence of Defendants' drywall in Louisiana has diminished the State's creditworthiness, has resulted in an increase in interest costs on the State's debts, and/or has reduced the State's borrowing capacity, thus harming the State's economy and finances. (Petition ¶ 192(j).)

- The State has expended additional money and resources as a result of health problems caused by Defendants' Chinese drywall. (Petition ¶¶ 177-78.)

- "[T]he stigmatizing effect of the presence of such drywall" is harming the "the State's vacation, travel, convention, hotel, hospitality and motion picture/television industries, and general business retention and development." (Petition ¶ 192.)

Louisiana has alleged several ways in which it has been directly or indirectly harmed by the Defendants' products and conduct, *independent of the harms suffered by the State's citizens*. Any one of the above listed injuries is sufficient by itself to confirm that Louisiana is the real party in interest in this action. Louisiana has a direct quasi-sovereign interest in the functioning of its economy and finances. *See Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 450-51 (1945) (state has quasi-sovereign interest in economic prosperity and public welfare); *United States v. Hooker Chem. & Plastics Corp.*, 749 F.2d 968, 984 (2d Cir. 1984) ("the concept of *parens patriae* has been expanded to include actions in which a state seeks to redress quasi-sovereign interests, such as damage to its general economy or environment"); *Connecticut v. Liberty Mut. Holding Co., Inc.*, Case No. X09CV064023087, 2009 WL 943094, at *3 (Conn. Super. Ct. March 20, 2009) (State's price fixing action "adequately alleges a *parens patriae* claim based on alleged damage to the state's general economy and harm to the Connecticut citizenry from the alleged conspiracy.").

> If the allegations of the [Petition] are taken as true, the economy of [Louisiana] and the welfare of her citizens have seriously suffered as the result of this alleged

conspiracy. . . . [Abandoned and uninhabitable homes, as well as decimated property values and tax bases] may cause a blight no less serious than the spread of noxious gas over the land or the deposit of sewage in the streams. They may affect the prosperity and welfare of a State as profoundly as any diversion of waters from the rivers. . . . [Louisiana] as a representative of the public is complaining of a wrong which, if proven, limits the opportunities of her people, shackles her industries, retards her development, and relegates her to an inferior economic position among her sister States. These are matters of grave public concern in which [Louisiana] has an interest apart from that of particular individuals who may be affected.

*Pennsylvania R. Co.*, 324 U.S. at 450-51. In light of Louisiana's numerous direct injuries alleged in the Petition, it cannot be said that Louisiana is a mere nominal party. Because "the State of Louisiana is more than a nominal party in this litigation, subject matter jurisdiction is lacking" and remand is required. *State ex rel. Ieyoub v. Borden, Inc.*, No. 94-3640, 1995 WL 59548, at *1 (E.D. La. Feb. 10, 1995) (hereafter *Borden I*) (remanding *parens patriae* action because the State was a real party in interest).[5]

    **b.**    ***Louisiana ex rel. Caldwell v. Allstate Insurance Co.*, is Not to the Contrary**

Furthermore, *Louisiana ex rel. Caldwell v. Allstate Insurance Co.*, 536 F.3d 418 (5th Cir. 2008), is easily distinguishable. In *Allstate*, Louisiana filed a *parens patriae* action against insurers and others for antitrust violations after the defendants allegedly manipulated computer

---

[5] In addition, it is well established that "a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general" and that such an interest justifies a *parens patriae* action. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982). The Petition clearly describes the numerous ways in which Defendants' drywall is harming the physical and economic health and well-being of Louisiana's residents in general. (Petition ¶¶ 79-81, 83-88, 175-76, 179-183, 185-86, 197.) For example, in addition to property damage, the presence of Defendants' drywall is devastating property values (both of homes and buildings contaminated with Chinese drywall and, indirectly, of some that are not contaminated but nevertheless stigmatized), places affected homeowners at risk of losing their homeowners' insurance and, as a result, their mortgages and homes (or, alternatively, being forced to have more expensive "force placed" insurance added to their mortgages). (*Id.* at ¶¶ 181-182.) "[T]he presence of Defendants' drywall is also causing Louisiana homeowners to lose their insurance, their homes and ultimately their financial security." (*Id.* at ¶ 182.) In addition, Defendants' drywall is causing various health problems to occupants livings in homes contaminated with Defendants' drywall. (*Id.* at ¶¶ 79-81, 175-76.) Because a State has a quasi-sovereign interest in the physical and economic health and well-being of its residents, the State is a real party in interest in this case. *See Borden I*, 1995 WL 59548, at *1 ("If it has such a quasi-sovereign interest it is a real party in interest for diversity purposes").

programs to reduce the value of insurance claims following Hurricanes Katrina and Rita. Louisiana sought injunctive relief and treble damages. In evaluating whether removal was proper, the court determined that individual policyholders, and not the State, were the real parties in interest because there, the State was "seeking to recover damages suffered by *individual policyholders*." *Id.* at 420-30 (emphasis in original).

In *Allstate*, only individual policyholders were injured by the defendants' alleged conduct. In contrast, in this case, as discussed above and at length in the Petition, Defendants' drywall has directly and indirectly injured Louisiana's economy, finances, tax revenue, creditworthiness, and public services as well as that of its political subdivisions. It has also affected the property values and tax burdens of homeowners whose homes do not even contain Defendants' drywall, and, indeed, all persons who rely on, benefit from, or enjoy public services provided by the State and its political subdivisions, such as public schools, police, fire protection, road maintenance, and so on. (*See* Petition ¶¶ 79-81, 83-88, 175-190, 192, 196-97.) Quite simply, the entire State and all its residents have been directly or indirectly harmed by Defendants' drywall. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) ("Although more must be alleged than injury to an identifiable group of individual residents, the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population."). Therefore, the State is a real party in interest in this valid *parens patriae* action.

Moreover, also unlike *Allstate*, it cannot be said that Louisiana is here seeking to recover damages suffered by individuals. While the Removing Defendants declare that the State "seeks to recover for property damage, personal injury and other damages on behalf of the same individuals in the State of Louisiana who are represented and participating in the MDL and state

court cases," (Notice ¶ 10), paragraph 198 of the Petition expressly disclaims any such claims or requested relief.

> [N]othing contained in this Petition shall be construed to duplicate or otherwise assert any claim for relief property asserted in such lawsuits on behalf of owners or occupants of homes in Louisiana which are contaminated with Defendants' drywall, or which may be properly asserted in any similar lawsuits hereafter filed by or on behalf of owners or occupants of homes in Louisiana which are contaminated with Defendants' drywall. Likewise, nothing in the Petition shall be deemed or construed as a claim by the State on behalf of any citizen for:
> a. Any damages recoverable by a homeowner or occupant for losses arising from the presence of Defendant's drywall in his or [her] residence, including the contents thereof.
> b. Any damages recoverable by a citizen for health-related losses or issues from exposure to Defendants' drywall.

(Petition ¶ 198.) In light of this express disclaimer, it cannot be said that the State's action (unlike in *Allstate*) is a disguised attempt to recover damages on behalf of individual citizens. Therefore, the State is the real party in interest.

### c.    Louisiana's Petition Does Not Duplicate the Pending MDL.

Contrary to the Removing Defendants' unsupported contention, (Notice ¶ 10), the State's *parens patriae* action does not duplicate, or even overlap, either the MDL or any pending state court action. The State's concern in this case is much broader than individual homeowners and occupants of contaminated homes—the only plaintiffs or putative class members in the MDL and various state court actions. The harms of Defendants' drywall are not limited to those unfortunate homeowners who had Chinese drywall installed in their homes. As discussed above, the presence of Defendants' defective drywall in Louisiana has directly and indirectly harmed the State, its political subdivisions, and all residents of Louisiana (including those who do not have any Chinese drywall in their homes). The various pending class actions can do nothing to redress the injuries to the State, its subdivisions, or its residents who do not have Chinese drywall in their homes. For example, though injured, citizens who do not have Defendants' drywall in

their homes but who have nevertheless been injured by it (through lower property values, a decrease in public services, and a higher tax burden) cannot join any of the various pending class actions and lack standing to pursue individual private actions. Only the State's *parens patriae* action can address the injuries to the State, its political subdivisions, and all its citizens—not just those with Chinese drywall in their homes.

Because the State has its own independent interests, the fact that individual homeowners whose homes contain Defendants' defective drywall may benefit from the State's Petition does not render the State a mere nominal party. "A *parens patriae* action brought by the State on behalf of its citizens has elements of private and public enforcement." *State ex rel. Ieyoub v. Borden, Inc.*, 684 So.2d 1024, 1028 (La. Ct. App. 1996) (hereafter *Borden II*). Although individual homeowners are undoubtedly affected by Defendants' drywall, the overall injury from Defendants' conduct extends far beyond that suffered individually, and strikes directly at the State itself. "Undoubtedly, a state can have a legitimate public interest in ensuring the economic well-being of its citizens—and in indirectly promoting a smoothly functioning economy freed of antitrust violations—even though the most obvious beneficiaries may be individual consumers." *Pennsylvania v. Mid-Atlantic Toyota Distribs., Inc.*, 704 F.2d 125, 131 (4th Cir. 1982). "That the 'obvious beneficiaries' of the action might be the individual consumers was not an obstacle to the court's decision." *Borden I*, 1995 WL 59548, at *3 (discussing *Mid-Atlantic*). *See also Alabama ex rel. Galanos v. Star Serv. & Petroleum Co.*, 616 F. Supp. 429 (D. Ala. 1985) ("Whether other parties will benefit from this action does not affect the state's valid [*parens patriae*] interest.").

        d.     **The Remedies Sought Are Appropriate.**

Finally, contrary to the Removing Defendants' contention, (Notice ¶ 12), the remedies sought by the State are appropriate for a *parens patriae* action. The State's request for damages

does not change the fact that the State is the real party in interest in this case. "It is the nature of state's interest, not the remedy it seeks, that governs whether a *parens patriae* action lies. That the state has sought to vindicate its quasi-sovereign interest in an honest marketplace by seeking damages instead of injunctive relief does not make this any less a *parens patriae* action." *Borden I*, 1995 WL 59548, at *4. "The Fifth Circuit has held that, even without an express grant of *parens patriae* authority, the attorney general can bring an action on behalf of the state to recover *parens patriae* damages." *Id.* at *3 (citing *Texas v. Scott & Fetzer Co.*, 709 F.2d 1024 (5th Cir. 1983)).

The State can obtain compensatory damages in this case. As discussed above, the State is not seeking monetary relief to distribute to affected homeowners. Instead, just as the State can recover its cleanup costs from polluters, Louisiana should be allowed to recover its cleanup costs from the Defendants. In the context of oil spills, the Fifth Circuit has noted that a State can "recover its cleanup costs and other damages" from the polluter. *United States v. Dixie Carriers, Inc.*, 736 F.2d 180, 186 n.11 (5th Cir. 1984). *See also Maine v. M/V Tamano*, 357 F. Supp. 1097, 1099-1102 (D. Me. 1973) (allowing State's *parens patriae* action to recover monetary damages incurred due to oil spill).[6] None of the pending class actions could achieve such a result. For these reasons, the State is the real party in interest in this case.

---

[6] Several courts have allowed *parens patriae* actions seeking damages. *See, e.g., New York, ex rel. Vacco v. Mid Hudson Med. Group*, 877 F. Supp. 143, 146-49 (S.D.N.Y. 1995) (denying motion to dismiss State's *parens patriae* action under the ADA for compensatory and punitive damages, injunctive relief, statutory penalties, and attorneys fees); *New York ex rel. Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703, 705-07 (S.D.N.Y. 1982) (holding that attorney general had a quasi-sovereign interest and was real party in interest in action alleging defects in automatic transmissions, even though State sought, among other relief, restitution and damages for those who allegedly had been defrauded by defendants); *Illinois ex rel. Scott v. Hunt Int'l Res. Corp.*, 481 F. Supp. 71 (N.D. Ill. 1979) (State of Illinois held to be a real party in interest in a suit by its Attorney General to enjoin violations of Illinois's consumer protection laws and to obtain damages and restitution for consumers injured by those violations); *Rhode Island v. Lead Indus. Ass'n, Inc.*, No. 99-5226, 2001 WL 345830 (R.I. Super. Ct. April 2, 2001) (holding that attorney general had *parens patriae* authority to bring public nuisance claim against lead paint manufacturers in action seeking abatement of lead from premises, compensatory and punitive damages, and other injunctive and equitable relief).

Where, as here, the State is the real party in interest, diversity is lacking and remand is required. *See Borden I*, 1995 WL 59548, at *1 (remanding Louisiana's *parens patriae* action because State was real party in interest and, therefore, there was no diversity jurisdiction).[7] In the absence of minimal diversity, this action cannot be removed, even under CAFA. *See Allstate*, 536 F.3d at 430 (affirming removal because individual policyholders, not the State, were the real parties in interest).

2.   **This Action is Not a "Mass Action" under CAFA.**

CAFA's "mass action" provision applies only to civil actions in which the "monetary relief claims of 100 or more persons are proposed to be tried jointly." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009). The State's Petition does not seek to try jointly the monetary relief claims of 100 of more persons. Therefore, by its plain terms, CAFA's mass action provision cannot apply to the State's Petition. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* at 953 (internal quotation marks omitted, citing *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000)). In *Tanoh*, a case deciding whether seven individual state court actions, each with fewer than 100 plaintiffs, should be treated as a "mass action," the court discussed that "concluding that plaintiff's claims fall outside CAFA's removal provisions is not absurd, but rather is consistent with both the well-established rule that plaintiffs, as masters of their complaint, may choose their forum by selecting state over federal court and with the equally well-established presumption against federal removal jurisdiction." *Id.*

---

[7] To be the real party in interest, the State "must show a direct interest of its own and not merely seek recovery for the benefit of individuals who are the real parties in interest." *Oklahoma v. Cook*, 304 U.S. 387, 396 (1938). *See Land O'Lakes Creameries v. Louisiana State Bd. of Health*, 160 F. Supp. 387, 388 (E.D. La. 1958) (a quasi-sovereign "interest is lacking when a State undertakes to sue for the particular benefit of a limited number of citizens. . . . The State must show a direct interest of its own.").

Accordingly, this Court should follow *Tanoh*'s plain reading of CAFA and hold that only one plaintiff – the State – is the real party in interest in this case and thus the case should not be removed under CAFA. Moreover, CAFA's legislative history describes "mass actions" as "suits that are brought on behalf of numerous named plaintiffs who claim that their suits present common questions of law or fact that should be tried together even though they do not seek class certification status." S. Rep. No. 109-14, at 46, reprinted in 2005 U.S.C.C.A.N. 3, 43-44. The State's case was clearly brought on behalf of the State and not any named plaintiffs.

    **3.**    **Even if the Case Were Brought on Behalf of More than 100 Persons, It Would Still Be Excluded from the Definition of a "Mass Action".**

CAFA expressly excludes from its definition of "mass action" any case in which – "(I) all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State; (II) the claims are joined upon motion of a defendant; (III) all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or (IV) the claims have been consolidated or coordinated solely for pretrial proceedings." 28 U.S.C. § 1332(d)(11)(B)(ii). This case falls squarely within the exceptions provided in subsection (I) and (III) and therefore cannot be a "mass action."

    **a.**    **All of the Claims in the Action Arose from an Event or Occurrence in Louisiana and Resulted in Injuries in Louisiana.**

A "mass action" shall not include any civil actions in which "all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in the State …" 28 U.S.C. § 1332(d)(11)(B)(ii)(I). In Louisiana's case, the defective drywall was supplied and sold to Louisiana citizens, used to construct or repair commercial, governmental and residential properties in Louisiana, and the resulting

injuries from the tainted drywall all occurred in Louisiana. All of the causes of actions set forth in the Petition arose from the damages caused by the actions of the Defendants within Louisiana's borders.

### b. All of the Claims in the Action Are Asserted on Behalf of the General Public Pursuant to the Proprietary Claims and *Parens Patriae* Claims Set Forth in the Petition.

Pursuant to 28 U.S.C. § 1332(d)(11)(B)(ii)(III), a civil action is not a "mass action" if all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants) pursuant to a state statute specifically authorizing such action. Under a plain reading of this statute, this case plainly fails to qualify as a mass action because: (a) no individual claimant was named in the case and (b) Article 4, § 8 of the Louisiana Constitution and the statutory authority of the Louisiana Attorney General allow this case to be properly asserted by him on behalf of the State and the general public of the State under the *parens patriae* authority of Louisiana. In a recent District of Columbia case, the court discussed that because the District of Columbia Consumer Procedures Act authorized a suit to be brought on behalf of the general public and the plaintiff did just that, the case fell "squarely within the definitional exclusion of 'mass action.'" *Breakman v. AOL LLC*, 545 F.Supp.2d 96, 101 (D.D.C. 2008). The Attorney General is authorized to bring this case on behalf of the general public and the case thus falls within this exception to the definition of "mass action" and should be remanded.

Therefore, even if Louisiana's claim for damages to its "own proprietary interest, and as *parens patriae* for the State's local political subdivisions and all of its citizens," Petition ¶ 15, was a claim for more than "100 or more persons proposed to be tried jointly," that claim would still not be a "mass action" within the meaning of the federal statute, and jurisdiction under CAFA would still be absent. Again, in an action that has been removed to federal court, a

district court is required to remand the case to state court if it determines it lacks subject matter jurisdiction. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004). Because it lacks subject matter jurisdiction, this Court should remand this case to state court.

**D.     The Eleventh Amendment Also Bars CAFA Removal Jurisdiction.**

Remand is also compelled by the Eleventh Amendment. The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Louisiana brought this case under state law and in state court to recover damages Louisiana has suffered. CAFA cannot, consistent with the Eleventh Amendment, authorize removal of this case to federal court.

The Fifth Circuit panel in *In re Katrina Canal Litigation Breaches* (hereafter *Katrina Canal I*), 524 F.3d 700 (5th Cir. 2008), discussed but did not decide this Eleventh Amendment issue. *Id.* at 706-11. This case, unlike *Katrina Canal I*, presents the "precise question" previously described but undecided by the Fifth Circuit, namely: "the insulating force of any sovereign immunity of the State of Louisiana from removal of a suit filed by it alone in its own state courts, seeking enforcement of its state laws against [defendants] who each qualified to do business in the State and are subject to its regulation." *Id.* at 706. After noting that "none of the cases or founding history speak directly to the issue at hand," the *Katrina Canal I* panel avoided answering this important question due to the presence of private individual citizens as plaintiffs. *Id.* at 707, 711. Here, however, if the Court does not remand this case for one of the many reasons set forth above, the Court will have to reach this important question.

In this action, the State of Louisiana—the only plaintiff in this case—filed suit in state court asserting only state law claims. Because forcing such claims to be litigated in a federal

72080-0001/LEGAL17796635.1                    15

forum harms Louisiana's sovereignty in a manner forbidden by the Eleventh Amendment and the "fundamental rule of which the Amendment is but an exemplification," *id.* at 708 (quoting *Ex Parte New York, No. I*, 256 U.S. 490, 497 (1921)), the Eleventh Amendment bars federal jurisdiction over such cases brought by States in their own state courts.

The Eleventh Amendment's text does not exhaust the sovereign immunity the Constitution implicitly recognizes. *See Katrina Canal I*, 524 F.3d at 708-10. Since the Eleventh Amendment *confirms* rather than *creates* sovereign immunity, "the scope of the States' immunity from suit is demarcated not by the text of the Amendment but by fundamental postulates implicit in the constitutional design." *Id.* at 708-09 (quoting *Alden v. Maine*, 527 U.S. 706, 728-29 (1999)). Thus, the Supreme Court has held that, despite the Amendment's language, its protection is not limited to diversity jurisdiction and, conversely, that defendants may consent to federal jurisdiction. *Id.* at 708 (discussing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *Principality of Monaco v. Mississippi*, 292 U.S. 313, 321 (1934)). For the same reasons, the fact that Louisiana is the plaintiff is no obstacle to Eleventh Amendment protection. *See Katrina Canal I*, 524 F.3d. at 709-11 (discussing whether immunity extends to States as plaintiffs but concluding that the case law does not answer the question directly). *See also Moore ex rel. Mississippi v. Abbott Labs., Inc.*, 900 F. Supp. 26, 30-31 (S.D. Miss. 1995) (holding that Eleventh Amendment barred removal to federal court of suit brought by State in state court where State had not consented to federal jurisdiction).

In the case before this Court, what counts for immunity purposes is that Louisiana, as a constitutional sovereign, should be able to seek to enforce her own laws in her own courts. Congress, through CAFA, cannot authorize removal of such state law actions to federal courts. *Cf. Alden*, 527 U.S. at 712 (holding that under Article I Congress cannot authorize suits against

States in their own courts); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72 (1996) (holding that under Article I Congress cannot authorize suits against states in federal courts). Immunity from federal jurisdiction under such circumstances is a "presupposition … which [the Eleventh Amendment] confirms." *Seminole Tribe*, 517 U.S. at 54. During ratification, John Marshall himself explained that this limitation is implicit in Article III: "With respect to disputes between *a state and citizens of another state* … I hope that no gentleman will think that a state will be called at the bar of federal court." *Katrina Canal I*, 524 F. 3d at 709 (quoting The Debates in the Several State Conventions on the Adoption of the Federal Constitution 533 (J. Elliot ed. 1836)). Allowing removal of this action forces Louisiana to be "called at the bar of federal court" just as surely as if Louisiana had been sued there as a defendant.

The immunity implicit in the constitutional structure, as recognized by the Eleventh Amendment, forbids the removal of Louisiana's lawsuit to federal court. Therefore, this Court should remand this case to state court.

## CONCLUSION

This Court lacks subject matter jurisdiction for the reasons stated above. Accordingly, this action must be remanded to the state court. *See* 28 U.S.C. § 1447(c). Because remand is required, the State respectfully requests payment by the Removing Defendants of the State's just cost and actual expenses, including attorneys' fees, incurred as a result of removal. *Id.*

Respectfully submitted,

JAMES D. "BUDDY" CALDWELL
LOUISIANA ATTORNEY GENERAL

Bryan K. McMinn (Bar Roll # 20520)
James Trey Phillips (Bar Roll # 19978)
Sanettria Glasper Pleasant (Bar Roll#25396)
Assistant Attorneys General

**LOUISIANA DEPARTMENT OF JUSTICE**
1885 North Third Street
Post Office Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6000
Facsimile: (225) 326-6499

**Usry, Weeks & Matthews, APLC**
T. Allen Usry, La. Bar #12988
Trial Attorney


__s/John F. Weeks, II__
John F. Weeks, II, La. Bar #13309
1615 Poydras St., Ste. 1250
New Orleans, LA 70112
(504) 592-4600

**Shows, Cali, Berthelot & Walsh, LLP**
E. Wade Shows, La. Bar #7637
Trial Attorney
John C. Walsh, La. Bar #24903
628 St. Louis St.
P. O. Drawer 4425
Baton Rouge, LA 70821
(225) 346-1461

**Perkins Coie, LLP**
David L. Black
1899 Wynkoop St., #700
Denver, CO 80202
(303) 291-2306
*Pro Hac Vice*

COUNSEL FOR THE STATE OF LOUISIANA

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing State of Louisiana's Memorandum in Support of Motion to Remand has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liason Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 8th day of March, 2010.

                                                                                                                                                                   s/John F. Weeks, II
                                                                                                                                                                   (Signature of Filing Attorney)