Page 1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | § | MDL NO. 2047 |
| IN RE: | § |  |
| CHINESE-MANUFACTURED | § | SECTION: L |
| DRYWALL PRODUCTS | § |  |
| LIABILITY LITIGATION | § | JUDGE FALLON |
|  | § | MAG. JUDGE WILKINSON |

- - -

WEDNESDAY, MARCH 3, 2010
- CONFIDENTIAL -
SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

TRIAL TESTIMONY

- - -

Videotaped deposition of DAVID J. MALONEY, JR., held at the Law Offices of Herman Herman Katz & Cotlar, 820 O'Keefe Road, New Orleans, Louisiana, commencing at 10:59 a.m., on the above date, before Kari J. Behan, Certified Court Reporter, Certified Shorthand Reporter.

- - -

GOLKOW TECHNOLOGIES, INC.
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com



Golkow Technologies, Inc. - 1.877.370.DEPS

Confidential - Subject to Further Confidentiality Review

1   Plaintiffs' Steering Committee.

2        Q.    And what was the assignment

3   that you were given in the Hernandez case?

4        A.    I was requested to personally

5   inspect certain items of property in the

6   Hernandez home, and which I did, in the

7   presence of Mr. and Mrs. Hernandez, as well

8   as yourself. I was asked to consult

9   with the homeowners to determine which items

10  would be listed in my appraisal, and then to

11  eventually assign values or, rather, develop

12  opinions of values regarding those items.

13             Those items were to fall into

14  two categories, as they did in the seven

15  homes that I appraised in Germano. And those

16  two categories are this: The first category

17  was to be of materials or of -- of property

18  which was made of materials or constructed of

19  materials which were absorbing in nature,

20  such as fabrics; and the second category was

21  to appraise items which consisted of

22  electrical appliances and electronic

23  equipment.

24             That list was compiled as I

Confidential - Subject to Further Confidentiality Review

Page 23

1  went through the house by myself and Mr. and
2  Mrs. Hernandez. Once the list was compiled,
3  the photographs were taken, notations were
4  made, I returned to the office to prepare my
5  appraisal report and do my research.
6      Q.   Okay. Let's stop there and
7  let's break that down into smaller chunks of
8  information.
9           Were you instructed to use
10 replacement value new as the criteria of the
11 appraisal of these items?
12     A.   Yes, I was.
13     Q.   Were you also instructed on
14 exactly what items to appraise?
15     A.   Yes, I was.
16     Q.   Could you define for the Court
17 what replacement value new means?
18     A.   As indicated in my report, and
19 which is required by USPAP, I note that my
20 type and -- my type of value used as
21 replacement cost and the definition is as
22 follows, taken from my 3rd -- the copy --
23 the 3rd copy of my book Appraising Personal
24 Property: Principles and Methodology.

Confidential - Subject to Further Confidentiality Review

Page 33

1  reader to better understand the report, then
2  that information has to be included within
3  the appraisal report.  My feeling is that my
4  involvement with the Germano case, combined
5  with my consultations with the homeowners,
6  combined with my personal observations compel
7  me to make a comment regarding this
8  assignment condition of what appeared to me
9  to be exposure to Chinese drywall, which then
10 would support an assumption of mine that
11 because of this exposure, that the items are
12 going to be worthless or are going to
13 be worth less.  And that's indicated in my
14 report.
15            Having said that, that wasn't
16 the assigned scope of work.  My scope of work
17 was to determine replacement cost new and
18 the -- whether or not the property had been
19 exposed is not going to have an impact on my
20 determination of replacement cost new.
21 Although, it has a relevancy to the report
22 itself, thus the inclusion of my comments
23 regarding applicable assignment conditions
24 and extraordinary assumptions, which, in my

Confidential - Subject to Further Confidentiality Review

Page 34

1  opinion, makes this report more
2  understandable in the context of the intended
3  use, which is for litigation purposes.  And
4  that's an important issue that the appraisal
5  needs to be understood within the con- --
6  within the construct of how the appraisal is
7  going to be used.  This is not an appraisal
8  for replacement purposes for acquiring
9  insurance coverage; it's a replacement -- or
10  it's an appraisal being done with the --
11  with the intended use of litigation.
12     Q.     Okay, Mr. Maloney, let me ask
13  you to break those concepts down in smaller
14  bites for us.
15            As I understand, the
16  extraordinary assumptions was required to be
17  placed in your report by USPAP regulations?
18     A.     USPAP requires that -- that all
19  information is properly described and that
20  sufficient information is included so that
21  the report is understandable.  USPAP doesn't
22  require that -- that extraordinary
23  assumptions be included in any report, but if
24  they are made, then they have to be

Confidential - Subject to Further Confidentiality Review

1   disclosed.  That's what USPAP requires.
2        Q.     And you included the
3   extraordinary assumptions here to give the
4   fuller picture of the conclusion that you
5   made in your report?
6        A.     I in- -- that's correct.  I
7   included the extraordinary assumptions here
8   in order to give the bigger picture to make
9   the report understandable and to support the
10  first paragraph of our market analysis for
11  contaminated property, which -- which goes to
12  the fact that, in my opinion, that this --
13  the subject property is -- because of this
14  extraordinary assumption of exposure to
15  Chinese drywall is now deemed non-marketable
16  and because of that, worthless.
17       Q.     But what effect does the
18  extraordinary assumptions have on the $11,907
19  opinion that you rendered regarding the
20  replacement value new of these 40 items?
21       A.     Well, the extraordinary
22  assumptions might make the report more
23  understandable to the reader.  They have no
24  impact on the replacement value new of the 40

Confidential - Subject to Further Confidentiality Review

Page 47

1   new values by reference to websites?

2       A.      Yes, it is.

3       Q.      And could you describe to the
4   Court, just generally, the most common
5   websites that you would use in order to
6   ascertain your replacement cost new?

7       A.      For -- well, for mattresses --
8   I have a specific list of websites.  Do -- do
9   you have that in that Reliance rather than --

10      Q.      (Tenders document to witness.)

11      A.      Thank you.

12              I used several that I -- I
13  would personally shop at; for instance,
14  Wal-Mart, Lowe's, Target, K-Mart, Home Depot.
15  Mattresses, Sleep Happens, Pottery Barn.
16  Toshiba for the Laptops, Amazon, Sears.
17  Those are pretty common, well-known brick and
18  mortar shops, as well as online shops, so the
19  individual can locate the item on the web and
20  go on sites to pick it up off of.

21      Q.      With reference to your schedule
22  that I've marked as Hernandez 104 through 0
23  -- I'm sorry -- 104-0001 through 6, could you
24  describe to the Court the various columns

Confidential - Subject to Further Confidentiality Review

Page 56

1  A. And my Reliance, yes.
2  Q. I think, as you testified
3  earlier, you were directed to prepare your
4  report by giving the value as replacement
5  cost new?
6  A. Let me clear that up.
7  Technically, it's replacement value new, and
8  there are different pathways to get to
9  replacement value: One is replacement cost
10 new; one is replacement cost comparable. I
11 note that in my -- on page 1. But I like to
12 use the term replacement value new, yeah.
13 Q. And so you were directed by the
14 plaintiffs to -- and by the -- by your client
15 to form an opinion on what the replacement
16 value new was?
17 A. That's correct.
18 Q. Okay. And they also determined
19 that you would use, let's say, replacement
20 cost new as opposed to replacement cost
21 comparable?
22 A. No. While I am
23 compelled to communicate with them to
24 determine the type and definition of

Case 2:09-md-02047-EEF-MBN   Document 1658-2   Filed 03/08/10   Page 9 of 12
Confidential - Subject to Further Confidentiality Review

Page 65

1   expert yourself?
2       A.   No, sir, I'm not.
3       Q.   You're not providing an opinion
4   in this case that these items are actually
5   corroded or failed, correct?
6       A.   No, I am not.
7       Q.   And while you said you observed
8   some odors, you're not an environmental
9   consultant or an industrial hygienist who
10  investigates chemical contaminants or things
11  like that, correct?
12      A.   That's correct, I am not.
13      Q.   You discussed some of, I think,
14  Dr. Galler's, in particular, testimony in the
15  Germano trial, but at the time of issuing
16  this report under USPAP, you hadn't -- you
17  hadn't heard that testimony?
18      A.   You are correct.
19      Q.   And that's not a part of this
20  report or your opinions in this report?
21      A.   No, it isn't.  No.
22      Q.   And that informative
23  information that we were talking about that
24  you described to Mrs. Barrios, you also

Confidential - Subject to Further Confidentiality Review

Page 66

1  testified that that has no impact on your
2  your assignment which was to calculate
3  the --
4      A.      -- replacement --
5      Q.      -- new replacement value?
6      A.      Replacement value.
7              MS. BARRIOS:  Wait --
8  BY MR. SANDERS:
9      Q.      -- replacement value of
10 the property, correct?
11             MS. BARRIOS:  Objection as to
12     form.
13             THE WITNESS:  Say that again.
14 BY MR. SANDERS:
15     Q.      I think you said before, and
16 I'm sure you'll correct me, that your --
17 these extraordinary assumptions are
18 informative, but your assignment was to
19 calculate the replacement value new?
20     A.      That's correct.
21     Q.      And so they're not relevant to
22 the numbers that you came up with for
23 replacement value new?
24     A.      That is correct.  They're just

Confidential - Subject to Further Confidentiality Review

1  supportive of the understandability of
2  the report.
3       Q.    Would -- if there was other
4  information out there that these items
5  weren't compromised and the owners could be
6  corrected, would that be something that
7  might be informative and that you would
8  want to know?
9       A.    My task was not to opine on
10 whether or not the items can be cleaned or
11 whether they can be restored or what their
12 loss of value would be if they were restored,
13 which, by the way, would require
14 post-restoration examination to
15 determine.  That was not my opinion or
16 that was not my task.  That was not involved
17 in my charge; therefore, the -- I think the
18 answer would be no to your question, then, it
19 wouldn't have an impact on what I did in this
20 report.
21      Q.    But those items wouldn't even
22 be informative to your opinion as far as
23 your extraordinary assumptions and what
24 you said formed the bases or contributed

Confidential - Subject to Further Confidentiality Review

Page 68

1  to?

2              MS. BARRIOS:  Objection as to

3       form.

4              THE WITNESS:  Would they

5       support -- would they all --

6       would they affect my value

7       conclusions?  No, they wouldn't.

8       Would they affect my disclosure of

9       supportive information that would

10      better help understand this

11      assignment, yes, I would include that.

12 BY MR. SANDERS:

13      Q.     Did you seek out or ask for any

14 kind of opinions or sort of a comprehensive

15 review of whether or not the -- these

16 materials are compromised?

17      A.     No, I didn't; just my

18 discussions with the client.

19      Q.     So in a sense, your opinions

20 obviously go to the value of replacement, not

21 whether the items actually need to be

22 replaced?

23      A.     That was my task, yes.

24      Q.     Are you aware of any USPAP