**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | * | **MDL No. 2047** |
| **This Document Relates to all cases** | * | **SECTION: L** |
| | * | **JUDGE FALLON** |
| | * | **MAGISTRATE JUDGE WILKINSON** |

****************************************

**MEMORANDUM IN SUPPORT OF MOTION TO ENJOIN DUPLICATIVE STATE ACTIONS, OR, IN THE ALTERNATIVE, DISMISS OR STAY CERTAIN DUPLICATIVE FEDERAL CASES**

## INTODUCTION

In an age of increasing skepticism regarding the use of class actions in our legal regime, the modern multidistrict litigation (MDL) process embodied in 28 U.S.C. § 1407 is emerging as the primary vehicle for the resolution of complex civil cases. The MDL process has traditionally been limited to establishing a centralized forum where related cases are consolidated so that coordinated pretrial discovery can proceed in an efficient and effective manner. In theory, this centralized forum, or "transferee court", as it is known, is a sort of way-station at which the preliminary aspects of the litigation can be more or less completed before individual cases are sent to their final destinations in courts across the country for ultimate resolution.

* * *

Congress amended the Judicial Code in 1968 "[t]o provide for the temporary transfer to a single district for coordinated or consolidated pretrial proceedings of civil actions pending in different districts which involve one or more common questions of fact." In its current form, the MDL statute provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this upon determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be

ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

> remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, [t]hat the panel may separate any claim, cross-claim, or third-party claim and remand any of such claims before the reminder of the action is remanded.

* * *

> Despite criticisms of inefficiency, judicial economy is undoubtedly well-served by MDL consolidation when scores of similar cases are pending in the courts. The relevant comparison is not between a massive MDL and an "average case", but rather between a massive MDL and the alternative of thousands of similar cases clogging the courts with duplicative discovery and the potential for unnecessary conflict.

82 Tul. L. Rev. 2323, 2325-26 Bellwether Trials in Multidistrict Litigation (June 2008).

It is against this backdrop that BANNER files the instant Motion and Memorandum requesting that this Court preserve and reinforce the judicial economy intended to be "well-served" by MDL consolidation. Many of the Plaintiffs who have brought either individual actions or class actions in state courts have also filed federal class actions, involving the same issues and litigating substantially the same claims as those pending in state court.[1] Some Plaintiffs have split their cases – state cases against domestic builders, suppliers and contractors and federal cases against foreign manufacturers – and/or filed individual actions in state court in order to avoid jurisdiction in this Court under Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.), while other Plaintiffs have filed individual cases in state court, yet are named as putative class representatives in federal court.[2] However, the underlying properties which are the true subject matter of theses cases, are

---

[1] Attached as Exhibit "A" is the Affidavit of Jeffrey A. Backman, Esq., which includes, as Exhibit "1", a list of as many of the duplicative federal and state cases as the BANNER entities are aware. The Court may take judicial notice of other state and federal proceedings. Kinnett Diaries, Inc. v. Farrow, 580 F. 2d 1260 (5th Cir. 1978).

[2] The common practice in the "Chinese drywall litigation" of filing identical or nearly identical multiple class actions on behalf of different named plaintiffs by the same attorney results in serious conflicts of interest and those attorneys cannot credibly claim that they can adequately represent any one of their purported classes. Even more

pending in multiple forums at the same time.  Indeed, as Exhibit "1" to the  Backman Affidavit reveals, **there are 803 properties which have been filed in duplication two and three times, resulting in 1,811 separate claims**. This Court should not permit the duplicative actions to proceed and should enjoin the state cases, or at least stay or dismiss the federal cases.[3]

Each case should be pursued as one action either, before this Court once actions are properly transferred through the MDL, or in state court.  To allow Plaintiffs, many of whom have represented to this Court that they support efficient and speedy prosecution of their claims in these consolidated actions in the MDL, to pursue both federal and state cases simultaneously, is a waste of judicial resources and may result in significant collateral estoppel issues, complicating, rather than simplifying, resolution of Plaintiffs' claims.  Clearly, in the interests of justice, this Court should enjoin the state cases listed in Exhibit "1" to the Backman Affidavit, or, in the alternative, stay or dismiss the duplicative federal cases.

## BACKGROUND

Plaintiffs have filed numerous individual or class action lawsuits in several states and class action lawsuits in federal courts throughout the United States.  In essence, the complaints allege the same set of core facts – that the subject homes are impacted by defective drywall manufactured in China.  Many of these same Plaintiffs have filed duplicative actions against Defendants in both state and federal court.  The federal cases are being transferred to this Court

---

troubling is the pursuit by the same plaintiff of an individual state case, while purporting to be an adequate representative of a class in federal court.  While this Court has postponed any decision on class certification, the conflict issues that plaintiffs have created for themselves highlight the lengths that they will go to in order to forum shop and raise insurmountable obstacles for their class claims.

[3] Defendants do not prefer the alternative relief requested in the instant Motion, as Defendants wish for the MDL to control the Chinese drywall litigation throughout the country.  The problem Defendants are encountering, however, makes it impossible for these cases to be managed.  Indeed, Plaintiffs are engaging in the conduct described herein, are representing that there are thousands of additional unfiled claims (yet will not file them and commit to being parties to this MDL), and are seeking to pursue their state court cases.

as part of the MDL process. However, state cases, by the same plaintiffs, remain pending in Florida, Louisiana and other states throughout the country. The only relevant distinction between the federal and state class actions is that certain state cases are directed only at domestic builders, suppliers and other domestic companies who innocently supplied or used allegedly defective drywall and many of the federal cases assert the same claims against the alleged foreign manufacturers of the same drywall. (*See, e.g., Harrell* Complaints attached hereto as Exhibit "B.") For the state actions, this distinction is likely only temporary as the foreign manufacturers will be brought into the state cases by named defendants, if those defendants are forced to proceed with the parallel state actions; indeed, the process of filing third party complaints against the foreign manufacturers has already begun in Florida state courts. In the individual state cases, CAFA may not apply, but, allowing a plaintiff to pursue an individual action against domestic builders and suppliers in state court and a class action against foreign manufacturers in federal court involving the same transactions makes no sense and is highly disruptive to the prosecution and resolution of these cases.

Compounding matters further is the fact that many of the named plaintiffs in the individual state court cases, have taken advantage of the MDL and become named class representatives in the various "Omnibus Complaints" being filed by the PSC.[4] For example, as it relates to the BANNER entities, distributor defendants in these proceedings, they are currently a party to 220 separately filed actions, all involving the identical issues and allegations. Of the 220 cases, 37 are virtually identical class actions pending in the MDL, four of which are the four "Omnibus" Complaints currently on file with this Court, i.e., <u>Gross</u>, <u>Payton</u>, <u>Wiltz</u> and <u>Rogers</u>, and the remaining 183 cases are individual state court cases scattered throughout Florida.

[4] To date, there are four (4) Omnibus Class Action Complaints; various "Banner" entities are parties to each such Complaint.

Interestingly, **of the 183 state court cases pending against BANNER, 105 of them are filed by Plaintiffs who are also named plaintiffs and class representatives in the various Omnibus Complaints and other class actions pending in the MDL.**[5] Thus, not only do the pending class action complaints (37) subsume all of the individual state court plaintiffs, but at least 105 of the state court plaintiffs have identical actions pending in federal court against the same parties.

## ARGUMENT

### A. This Court Should Exercise its Authority to Enjoin Duplicative State Actions.

This Court has the authority to enjoin state proceedings under the All Writs Act, 28 U.S.C. §1651, and the Anti-Injunction Act, 28 U.S.C. § 2283, "where necessary in aid of its jurisdiction." The All Writs Act, 28 U.S.C. § 1651(a), confers "extraordinary powers" upon federal courts by authorizing them to enjoin parallel state court proceedings that threaten their jurisdiction. The Act provides: "[t]he Supreme Court and all courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a).

Under the Anti-Injunction Act, 28 U.S.C. § 2283, federal courts have the power to enjoin state court proceedings when (1) the injunction is "expressly authorized by Act of Congress," (2) the injunction is "necessary in aid of [the court's] jurisdiction," (3) the injunction is necessary "to protect or effectuate [the court's] judgments." The provisions of the All Writs Act ("necessary or appropriate in aid of" the court's jurisdiction) closely resembles those of the Anti-Injunction Act's second exception ("necessary in aid of [the court's] jurisdiction"), and thus courts construe the two similarly. *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201-02 (7th Cir. 1996); *but see In re Diet Drugs Prod. Liab. Litig.*, 282 F.3d 220, 239 (3d Cir. 2002) (commenting that the

---

[5] It is also interesting to note that the large majority of individual State court actions are filed by members of the

{218429.0005/N0787214_1}

"appropriate in aid of" jurisdiction language of the All Writs Act endows courts with greater authority to issue injunctions than does the Anti-Injunction Act exception). An order pursuant to the All Writs Act is proper if it is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *In re Diet Drugs Prod. Liab. Litig.*, 282 F.3d at 234 (*quoting Atlantic Coast Line R.R. Co. v. Board of Locomotive Engineers*, 398 U.S. 281, 295 (1970)). Moreover, this Court has the power to enjoin any party over which it has personal jurisdiction from pursuing or settling the claims that are at issue in this action in any other forum. *See In re Lease Oil Antitrust Litig. (No. II)*, 48 F. Supp. 2d 699 (S.D. Tex. 1998); *Newby v. Enron Corp.*, 302 F.3d 295, 300-01 (5th Cir. 2002); *Single Premium Deferred Annuities Ins. Litig.*, 770 F.2d 328, 335 (2d Cir. 1985).

The federal cases brought by plaintiffs listed in Exhibit "1" to the Backman Affidavit have been consolidated as part of the MDL process before this Court. This Court has jurisdiction over those plaintiffs and their cases for all pre-trial purposes. This court should exercise its authority to enjoin those same plaintiffs' duplicative state cases to allow this Court to efficiently and effectively resolve the federal actions.

Enjoinder of the duplicative state actions is necessary in aid of this Court's jurisdiction:

> The settled law of this case establishes that the "'aid of jurisdiction' exception . . . includes 'consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation.'" *Prudential: Lowe, 261 F.3d at 365*; *see also Prudential: La Marra, 314 F.3d at 103-05*. In light of that authority, the [defendants] do not seriously contend that the District Court lacked statutory power to enter the injunction.

*In re Prudential Ins. Co.*, 232 Fed. Appx. 161 (3d Cir. 2007); *see also*, *Winkler*, 101 F.3d at 1202 ("Other courts have extended the exception to consolidated multidistrict litigation, where a

---

PSC.

parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation.") (*citing Garcia v. Bauza-Salas*, 862 F.2d 905, 909 (1st Cir. 1988)); *Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 197 (3d Cir. 1993); *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334-35 (5th Cir. 1981)).

Plaintiffs' actions have already begun to frustrate this MDL and the authority of this Court. For example, in the Harrell state court action, a proposed putative class action involving homes containing allegedly defective Chinese drywall supplied by BANNER and built by South Kendall Construction Corp., counsel for the Harrells (members of the Plaintiffs' Steering Committee) have aggressively pursued that state court class claim despite the existence of this MDL and despite the numerous requests from defense counsel that the matter be coordinated with the MDL. Plaintiffs set hearings on dispositive motions and motions relating to the application of Chapter 558, Florida Statutes. Moreover, despite defense counsel's well-reasoned position that the actions should be stayed while the MDL is proceeding, the Harrells urged the state court judge to not only rule on several motions identified above, but also to set this matter for trial in June, 2010. The Harrells are also seeking extensive discovery and litigating this matter without proper coordination with the MDL, requiring the parties to unnecessarily duplicate efforts, conduct especially problematical in light of the fact that their counsel are members of the PSC. Should the Harrell action, a proposed putative class action[6], proceed to trial and should plaintiffs obtain a judgment against BANNER, it would substantially deplete the limited funds available. Similarly, BANNER is unable to resolve only the Harrell action and

[6] Counsel for the Harrells intentionally "dropped" the foreign manufacturers from their lawsuit and have refused, to date, to provide BANNER with sufficient information to determine whether the action is removable pursuant to CAFA.

leave itself exposed to the numerous MDL and countless additional state court actions.[7] To date, the Harrells continue to seek to pursue the resolution of various issues in the state court proceeding. In the face of the extensive litigation in the state court case, the Harrells have also filed an individual federal court action against only the foreign manufacturers, *see Jason and Melissa Harrell v. Knauf Plasterboard (Tianjin) Co., Ltd.*, Case No.: 2:09-cv-06543, and are named class representatives against BANNER, South Kendall and Knauf in the Payton Omnibus Complaint. Moreover, this proposed state court class action is identical to a putative class action pending in the MDL, to-wit: *Karin Vickers v. Knauf Gips KG, et al.*, Case No.: 2:09-cv-04117.

Clearly, injunctive relief is considered only for extreme circumstances, but these are extreme circumstances. Should any plaintiffs be permitted to pursue these duplicate actions in state court, and essentially divide homes and "race to the courthouse", this Court's jurisdiction and ability to manage this MDL will necessarily become compromised. For instance, and by way of example only:

(1) Defendants, such as BANNER, with limited funds, could wind up with a judgment in state court that depletes all of its funds. This would result in the inability to address and defend any action pending in the MDL and would potentially result in counsel in the state court proceedings obtaining money for the benefit of a few clients and to the detriment of all other potential class members, despite having MDL class participants.

(2) Parties may appeal any final judgment or other interlocutory rulings and obtain opinions from appellate courts which could be inconsistent with this Court's rulings and overall administration of the MDL Chinese drywall litigation.

[7] **Surely, the PSC would object and probably file this identical motion if they knew BANNER was contemplating settlement of a state court action.**

(3) Findings and judgments from state court actions could have *res judicata* and collateral estoppel effect upon parties to the MDL that are not parties to the state court actions. Moreover, to the extent a party claims to have suffered redressable injury, all damages sustained or accruing to one as a result of a single wrongful act must be claimed in one action or not at all. *See Mims v. Reid*, 98 So. 2d 498, 501 (Fla. 1957).[8] Accordingly, the Florida Supreme Court explained:

> "The law presumes that a single cause of action can be tried and determined in one suit, and will not permit the plaintiff to maintain more than one action against the same party for the same cause. This rule is founded on the plainest and most substantial justice - namely, that litigation should have an end, and that no person should be unnecessarily harassed with a multiplicity of suits. If the first suit is effective and available, and affords ample remedy to the plaintiff, the second suit is unnecessary and consequently vexatious. The rule against splitting causes of action is closely related to the doctrine of res judicata in this respect. `The remedy for a defendant against whom two actions are brought on the same cause of action is a defense in the nature of a plea in abatement to the second action.'"

*Id.* (emphasis added)

Additionally, to the extent Plaintiffs argue that they are suing certain defendants in federal court and others in state court for the same underlying transaction or occurrence, the Third District Court of Appeal has recognized that, in products liability actions such as this, the traditional requirement of identity of the parties in order for a prior action to have preclusive effect must be expanded to account for the relationship between defendants along the chain of distribution of the product at issue. *See West v. Kawasaki Motors Mfg. Corp., U.S.A.*, 595 So. 2d 92 (Fla. 3d DCA 1992), *rev. denied*, 604 So. 2d 489 (Fla. 1992). In *West*, the plaintiff attempted to sue the manufacturer and retailer of an allegedly defective motorcycle in state court based upon claims of strict liability and

[8] Since all of the actions involving BANNER are governed by Florida law, Florida law is used for purposes of this

negligence. The Third District affirmed the trial court's summary judgment award in favor of the defendants based upon *res judicata*, because the plaintiff had previously (and unsuccessfully) sued the wholesale distributor of the motorcycle in federal court asserting identical allegations. The Third District reasoned:

> "...Florida courts have on occasion recognized exceptions to the identity of the parties requirement under the res judicata or collateral estoppel doctrines where special fairness or policy considerations appear to compel it. ... Similarly, fairness and policy considerations dictate that in products liability cases an exception should be recognized to the identity of the parties requirement under the doctrines of res judicata or collateral estoppel. In such cases, there are three potentially liable parties, none of whom are joint tortfeasors: the manufacturer, the wholesale distributor, and the retailer of the allegedly defective product. *If the plaintiff elects to sue only one or two of the potentially liable parties for a single injury and proceeds to judgment against such party or parties, he should not, in all fairness, be allowed to relitigate the same issues resolved in the first case and proceed against the remaining party or parties ..."*

*Id.* at 94-96 (emphasis added)

Although *West* was decided upon *res judicata* grounds due to the existence of a summary judgment entered in the earlier-filed action, its reasoning is directly applicable to this case because of the relationship between the doctrine of *res judicata* and the rule against splitting causes of action. *See, e.g., Mims*, 98 So. 2d at 501 (referencing the close relation between the rule against splitting causes of action and the doctrine of res judicata); *Department of Agriculture and Consumer Services v. Mid-Florida Growers. Inc.*, 570 So. 2d 892, 901 (Fla. 1990) ("Such a result is precluded by the rule against splitting causes of action, which flows from the doctrine of res judicata"); *Gilbert v. Florida Power & Light Co.*, 981 So. 2d 609, 613 (Fla. 4th DCA 2008) (referencing the interrelationship between both concepts).

---

argument.

{218429.0005/N0787214_1}

Thus, the *West* decision clearly stands for the proposition that a plaintiff asserting products liability claims must join all parties along the chain of distribution of the product in question in a single action, or risk preclusion of such claims in any subsequent action. *See also Georgia-Pacific Corp. v. Squires Development Corp.*, 387 So. 2d 986, 993 (Fla. 4th DCA 1980) (concluding that separate products liability actions based upon same circumstances involving disparate parties should have been consolidated because "the injuries to the various parties herein grew out of a single transaction").

(4) Substantial duplication will occur in that the same parties will have litigated the same issues in multiple forums.

(5) Crossclaims and Third-Party Claims will have to be litigated in multiple forums. For example, if all Defendants, including builders, contractors, suppliers and manufacturers, are parties to the Payton action (or another one of the Omnibus Complaints) pending in the MDL, along with 2100 plaintiffs, why should those defendants not be afforded the opportunity to litigate their various crossclaims in one action?

(6) The same witnesses and experts will be forced to testify in multiple proceedings and the parties will be subject to the substantial burden and expense of the same discovery in every case.

(7) Allowing plaintiffs to proceed in this manner ignores the purpose and intent of CAFA. Plaintiffs' conduct, in participating in individual cases in state court, while acting as class representatives in federal court in cases involving the identical facts and circumstances and the identical homes, is precisely the type of conduct that Congress was seeking to eliminate through CAFA. According to CAFA, state and local courts are the problem, not the answer:

{218429.0005/N0787214_1}

ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

> Class Action Fairness Act; findings and purposes: (a) Findings. Congress finds the following: .... (4) Abuses in class actions undermine the national judicial system, the free flow of interstate commerce, and the concept of diversity jurisdiction as intended by the framers of the United State Constitution, in that State and local courts are – (A) keeping cases of national importance out of Federal court.

CAFA § 2(a)(4)(A). Congress therefore enacted CAFA to "restore the intent of the framers of the United State Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." CAFA § 2(b)(2). Plaintiffs are abusing our federalist judicial system by clogging the courts with duplicative federal and state litigation and defeating the purpose of consolidation under the MDL. Moreover, plaintiffs are precluding any court from resolving these cases at one time in one proceeding by attempting to litigate without the foreign manufacturers in state court. The Defendants thus have to take appropriate steps to sue the foreign manufacturers. However, the state court plaintiffs are urging state court judges to proceed without the foreign manufacturer and bifurcate any third party claims. As a result, these Defendants will be forced to litigate these identical issues in a subsequent indemnification action. Certainly, judicial economy and principles of comity dictate resolving these matters in one proceeding. Because the plaintiffs' duplicative state actions frustrate this Court's exercise of jurisdiction and organization of the consolidated actions in the MDL, this Court should use its power to enjoin the duplicative state actions of those plaintiffs who also filed federal cases.

**B. In The Alternative, This Court Should Stay Or Dismiss The Federal Cases In Favor Of The Duplicative State Cases Previously Filed By Plaintiffs.**

If this Court does not enjoin the state cases, this Court should stay or dismiss the duplicative federal actions. There are over two hundred (200) actions based upon substantially similar issues and concerning substantially the same parties filed in State and Federal court

{218429.0005/N0787214_1}

against BANNER. District courts not only have the discretion to stay similar actions within the same jurisdiction, *Landis v. North American Co.*, 299 U.S. 248 (1936), but can also stay an action pending the resolution of related proceedings in another forum. *See Ortega Trujillo,* 221 F.3d 1262, 1264 (11th Cir. 2000); *Lisa, S.A. v. Mayorga*, 232 F. Supp. 2d 1325 (S.D. Fla. 2002). "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). There are many reasons why a court may stay a proceeding pending the resolution of a related action. *See Ortega Trujillo,* 221 F.3d at 1264. "A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing actions before the district court." *Id.; see also Landis*, 299 U.S. at 254 (stating that an action may be stayed to control the docket with economy of time and effort for itself, counsel, and litigants). Other times, "a stay might be authorized…by principles of abstention." *Ortega Trujillo,* 221 F.3d at 1264. (citations omitted). Even when there is a disparity in the parties to the actions, actions seeking to certify an almost identical class of plaintiffs are sufficiently similar to cause a stay of the subsequent action. *See Landis,* 299 U.S. at 254 (parties to two causes need not be the same and issues need not be identical in order for a court to stay proceedings in one suit to move forward with proceedings in another). Most importantly, however, courts have stayed the later-filed actions to avoid the potential waste of judicial resources associated with litigating two overlapping putative class actions at once. If class certification is granted in the earlier-filed litigation, the named plaintiffs and putative class members in the later-filed action will be made part of – and have their claims resolved through – the earlier case and, therefore, any intervening activity taken and rulings made in the later filed matter will likely have been wasted. *White v. Microsoft Corp.*, No. 05-0731, 2006 U.S. Dist. LEXIS. 77010, at * 8, n. 6 (S.D. Ala. April 3, 2006) ("the concern [of the first-filed rule] manifestly is to avoid the waste of duplication … and to avoid piecemeal resolution of issues that

{218429.0005/N0787214_1}

ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

call for a uniform result") (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. and Gulf Coast Dist. of ILA, AFL-CIO*, 751 F. 2d 721, 729-29 (5th Cir. 1985)); *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 689 (E.D. Tenn. 2005) (applying first-filed rule where "both actions seek certification of the same collective class").

The eleventh circuit has also held that a stay "is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004). The *Colorado River* doctrine is based "on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (citations omitted). Under the *Colorado River* doctrine, there are several factors the court will consider in determining whether a stay is warranted:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the for[um]; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Id.* at 997.

Subsequently, additional "factors" have been incorporated into the analysis:

> The Supreme Court has also indicated that district courts should consider "the vexatious or reactive nature of either the federal or the state litigation" in determining whether to abstain under *Colorado River*. *See id*. at 18, 103 S. Ct. at 938. *See also Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985). Abstaining when litigation is reactive or vexatious furthers the important federal policy of prohibiting forum shopping. *See Allied Machinery Serv. Inc. v. Caterpillar, Inc.*, 841 F. Supp. 406, 410 (S.D. Fla. 1993).

*Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1343-1344 (S.D. Fla. 1999).

1. **There is no property over which the Court has assumed jurisdiction.**

The claims in the cases before this Court involve tort claims against manufacturers, builders, distributors, installers and other Defendants, and this Court has not assumed jurisdiction

{218429.0005/N0787214_1}

ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

over any property. Accordingly, this factor does not prevent dismissal or stay in favor of the state cases.

2. **The state forums are not inconvenient.**

Venue in the state forums is based on a lack of diversity between plaintiffs and defendants of the same state. The only difference in the federal cases are the substitution of a foreign defendant, which if service and jurisdiction are proper, could be tried in federal court (resulting in transfer to this Court under the MDL) or the various states courts where they have been brought. The convenience of the federal forum is not a factor.

3. **Allowing these federal cases to proceed ensures that there will be piecemeal litigation.**

There is no benefit to the parties in allowing the duplicative litigation to proceed in both the federal and state courts, and unless the federal cases are dismissed or stayed, the parties will be litigating their claims in piecemeal fashion between the respective forums. The only discernable reason that Plaintiffs are filing their lawsuits in state court against domestic defendants only or filing cases on behalf of individuals in state court, while asserting them as class representatives in federal court, is to avoid or delay removal under CAFA. Plaintiffs are forum shopping or hedging their bets against the MDL process and the consolidation before this Court.

However, if removal is avoided, or if Plaintiffs are permitted to proceed in two separate forums at the same time, it will result in piecemeal litigation, judicial inefficiency and potentially conflicting decisions. For example, critical issues that this Court is considering in fast-track briefing for the consolidated federal cases, such as the scope of the economic loss doctrine, could be controverting state court decisions on the same issues. More importantly, the identical factual issues will have to be tried against the same parties on multiple occasions, and, where the state

cases fail to include the foreign Defendants, it is inevitable that the foreign Defendants will be joined as third party defendants. Moreover, Plaintiffs' tactic ultimately may not prevent removal, at least in the state class actions, because when Defendants to those state court actions file cross-claims or third-party claims against foreign manufacturers in the state court cases, they may be removed by that foreign defendant under CAFA. *See Deutsche Bank Nat'l Trust Co. v. Weickert,* 638 F. Supp. 2d 826 (N.D. Ohio 2009) (CAFA authorizes any defendant to remove class action claims to federal court); *but see Palisades Collections, LLC v. Shorts*, 552 F. 3d 327 (4th Cir. 2008) (Section 1441 requires original defendant to file removal under CAFA); *Progressive West v. Preciado*, 479 F.3d 1014 (9th Cir. 2007) (CAFA did not provide jurisdiction where defendant/cross-plaintiff filed class action).[9] This Court should stay or dismiss the duplicative federal cases until they are properly before this Court under CAFA or require Plaintiffs to pursue only their individual cases in state court, not pursue duplicative federal class actions.

4. **The Plaintiffs chose to initiate many of the state cases prior to the federal cases.**

Some of the parties already are engaged in and have expended significant effort in addressing Plaintiffs' claims in the state cases. Indeed, despite being in front of this Court in the MDL, some of the Plaintiffs are aggressively pushing the state actions. Defendants were looking to the MDL to consolidate and streamline this complex litigation, not set up mirror cases in federal and state courts that may result in duplicative efforts. To the extent this Court will not enjoin Plaintiffs' conduct, this Court should stay or dismiss these duplicative federal cases in

[9] This Court cited to *Palisades Collections, LLC v. Shorts,* 552 F. 3d 327 (4th Cir. 2008) and *Progressive West v. Preciado*, 479 F.3d 1014 (9th Cir. 2007), but ultimately held that intervention was improper and did not address whether jurisdiction under CAFA was appropriate based on the claims by the intervenor. *Ball v. Alfortish***,** 2009 U.S. Dist. LEXIS 33593, *7-11 & n.2 (E.D. La. ) (J. Fallon). Unlike in *Progressive West* and *Ball*, some of these state court actions are already class actions and the manufacturers would be aligned with the original defendants against the plaintiffs, even as third-party defendants.

favor of the pending state cases to ensure that efforts are not duplicated, and that neither this Court's nor the state court's judicial resources are wasted.

5. **State law, not Federal law, will be applied to the Plaintiffs' claims.**

While this Court can adeptly apply the various states' laws that are relevant to the claims pending in the MDL, pursuing the same claims under state law before both this Court and state courts may result in conflicting decisions and judgments. Plaintiffs have asserted a variety of claims against Defendants under state law, including products liability, negligence, breach of warranties, unjust enrichment, private nuisance, a demand for medical monitoring, and deceptive trade practices. All of the claims are based on state law. This Court may defer to the state court actions as appropriate on state law issues and stay or dismiss these duplicative cases.

6. **The state forum is adequate to protect the parties' rights.**

The state courts are capable of resolving all of the questions before them, and, for the most part, there is no claim, or right of the parties before the state courts, which cannot be adequately addressed. The only exception are claims against the foreign manufacturer which have been brought separately in federal court, and potentially cross-claims by state court defendants against those foreign manufacturers. Based on the potential for contrary rulings, waste of judicial resources and resolution of most claims in the state forum, this factor weighs in favor of abstention.

## CONCLUSION

Defendants are presently defendants in several class actions and individual actions pending in federal and state courts (the "other pending actions"). The federal actions have been coordinated and consolidated in the MDL. Additionally, after filing their state court cases, many Plaintiffs voluntarily availed themselves of the MDL proceeding by becoming Plaintiffs, and

{218429.0005/N0787214_1}

ADORNO & YOSS LLP
350 EAST LAS OLAS BLVD.• SUITE 1700 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-763-1200 • FAX 954-766-7800

class representatives, in the Omnibus Complaint(s). Plaintiffs should not be permitted to split their causes of action and/or proceed in two separate forums.

In the interest of judicial economy, BANNER respectfully requests that the state court actions be stayed pending resolution of the MDL. The Defendants and subject matter at issue are substantially similar and a resolution of any of those actions will resolve the issues raised in the complaints. All the actions involve the same operative facts and issues, i.e., the allegedly defective Chinese drywall, and there are no unique factual issues presented.

Applying the law to the extreme circumstances presented herein supports the stay or dismissal of the federal cases in favor of the duplicative state cases, if this Court does not enjoin the state cases outright. The circumstances here are particularly appropriate for a stay where plaintiffs have split cases against different defendants or brought individual state actions and a purported federal class action by the same plaintiff solely to avoid removal under CAFA and the efficient consolidation in the MDL.

Accordingly, Defendants respectfully request that this Court exercise its discretion to enter an Order enjoining the duplicative state actions identified in Exhibit "1", or, in the alternative, dismissing or staying the duplicative federal cases.

Respectfully submitted,

/s/Jeffrey A. Backman
JAN DOUGLAS ATLAS
Fla. Bar No. 226246
JEFFREY A. BACKMAN
Fla. Bar No. 0662501
ADORNO & YOSS LLP
350 East Las Olas Boulevard; Suite 1700
Fort Lauderdale, FL 33301-4217
Telephone: (954) 763-01200
Facsimile: (954) 766-7800
Attorneys for BANNER SUPPLY CO.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing pleading has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 10th day of March, 2010.

/s/Jeffrey A. Backman
Jeffrey A. Backman