# MASTER CHINESE DRYWALL COMPLAINT AND DEMAND FOR JURY TRIAL OUTLINE

**Section:**                                                              **Paragraphs:**

I.   INTRODUCTION                                                          1 – 3

II.  JURISDICTION AND VENUE                                               4 -5

   A. Jurisdiction for Manufacturer                         6

   B. Jurisdiction for Out-of-State Distributor/Supplier   7

   C. Jurisdiction for In-State Distributor/Supplier       8-9

   D. Jurisdiction for Out-of-State Builder/Developer      10

   E. Jurisdiction for In-State Builder/Developer          11-12

   F. Jurisdiction for Contractor/Installer                13-14

III. GENERAL ALLEGATIONS                                                  15-43

   A. Drywall Background                                    15-26

   B. How Drywall is Created                                27-33

   C. The Defective Drywall Emits Noxious and Corrosive Levels of Sulfur   34-43

IV.  COUNTS AGAINST MANUFACTURER                                          44-99

   A. Negligence Against Manufacturer                       44-49

   B. Strict Liability Against Manufacturer                 50-69

   C. Violation of the Florida Deceptive and Unfair Trade Practices Act Against Manufacturer   70-78

   D. Private Nuisance Against Manufacturer                  79-87

   E. Medical Monitoring Against Manufacturer               88-99



EXHIBIT
"2"

1

V.      COUNTS AGAINST DISTRIBUTOR/SUPPLIER                100-146

        A.  Strict Liability Against Distributor/Supplier        100-119

        B.  Negligence Against Distributor/Supplier              120-125

        C.  Private Nuisance Against Distributor/Supplier        126-134

        D.  Medical Monitoring Against Distributor/Supplier      135-146

VI.     COUNTS AGAINST BUILDER/DEVELOPER                    147-236

        A.  Strict Liability Against Builder/Developer           147-166

        B.  Negligence Against Builder/Developer                 167-172

        C.  Breach of Implied Warranty of Merchantability        173-182
            Against Builder/Developer

        D.  Breach of Implied Warranty of Fitness for a Particular   183-191
            Purpose Against Builder/Developer

        E.  Breach of Implied Warranty of Habitability          192-200
            Against Builder/Developer

        F.  Breach of Contract Against Builder/Developer         201-208

        G.  Negligence Against Builder/Developer for             209-214
            Other Property

        H.  Private Nuisance Against Builder/Developer           215-223

        I.  Medical Monitoring Against Builder/Developer         224-236

VII.    COUNTS AGAINST CONTRACTOR/INSTALLER                 237-284

        A.  Strict Liability Against Contractor/Installer        237-256

        B.  Negligence Against Contractor/Installer              257-262

        C.  Private Nuisance Against Contractor/Installer        263-271

        D.  Medical Monitoring Against Contractor/Installer      272-284

VIII.   PERSONAL INJURY CLAIM AGAINST                       285

DEFENDANT(S)

IX.   LOSS OF CONSORTIUM CLAIM                286
      AGAINST DEFENDANT(S)


X.    ATTORNEYS' FEES CLAIM AGAINST           287-289
      BUILDER/DEVELOPER FOR BREACH
      OF CONTRACT

IN RE CHINESE DRYWALL MASTER
COMPLAINT

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

Plaintiff(s),

CASE NO:

v.

Defendant(s)

_____/

## MASTER COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff(s) bring(s) this action because of drywall in the home that emits various sulfide gases and/or other chemicals through "off-gassing" that causes property damage and potential health hazards. The drywall has been manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, installed and/or sold by Defendant(s). In support thereof, Plaintiff(s) state(s) as follows:

### I. INTRODUCTION

1)      The drywall Defendant(s) used in the home of the Plaintiff(s) is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors, and causes corrosion ("the Defect") of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

2)      This Defect is latent and existed in the drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted. There is no repair that will correct the Defect.

i

3)     As a result of the conduct of Defendant(s) as alleged herein, Plaintiff(s) has/have suffered economic losses by owning a home containing inherently defective drywall that has caused damage to the home and Other Property.

## II. JURISDICTION AND VENUE

4)     Plaintiff(s) incurred or will incur damages in excess of $15,000, exclusive of interest, attorneys' fees and costs, including, but not limited to: repair/replacement of the home, Other Property, any materials contaminated or corroded by the drywall as a result of "off-gassing," incidental and consequential damages.

5)     Venue in this district is proper because the property that is the subject matter of this action is located in Miami-Dade County, Florida, and the cause of action accrued in Miami-Dade County.

## A. JURISDICTION FOR MANUFACTURER

6)     The Court has personal jurisdiction over Defendant Manufacturer(s) pursuant to Florida's Long-Arm Statute, and due process because:

    a.  Defendant Manufacturer(s) has/have caused injury to Plaintiff(s) that arose out of the acts and omissions that occurred outside the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused economic damages and potential personal injury damages to Plaintiff(s) set forth more fully herein; and

    b.  Defendant Manufacturer(s) has/have engaged in substantial and not isolated activity within Miami-Dade County by: 1) having shipped tons of defective drywall into the Port of Miami, located in this District; 2) having the defective

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

drywall reach the ultimate consumer, Plaintiff(s) who had the defective drywall installed in the home; and 3) selling and marketing the defective drywall in this District and the State of Florida.

## B. JURISDICTION FOR OUT-OF-STATE DISTRIBUTOR/SUPPLIER

7)      The Court has personal jurisdiction over Defendant Distributor/Supplier pursuant to Florida's Long-Arm Statute, and due process because:

        a.  Defendant Distributor/Supplier has caused injury to Plaintiff(s) that arose out of the acts and omissions that occurred outside the State of Florida during the relevant period of time, namely, the exporting and importing of defective Drywall into the State of Florida.

        b.  Defendant Distributor/Supplier has engaged in substantial and not isolated activity within Miami-Dade County by: having exported, imported, distributed, delivered, supplied, inspected, marketed and/or sold drywall in the State of Florida.

## C. JURISDICTION FOR IN-STATE DISTRIBUTOR/SUPPLIER

8)      Defendant Distributor/Supplier is a Florida corporation with its principal place of business in Florida.

9)      Defendant Distributor/Supplier exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the state of Florida.

## D. JURISDICTION FOR OUT-OF-STATE BUILDER/DEVELOPER

10)     The Court has personal jurisdiction over Defendant Builder/Developer pursuant to Florida's Long-Arm Statute, and due process because:

Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue. 2nd Floor. Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

a.  Defendant Builder/Developer has caused injury to Plaintiff(s) that arose out of the acts and omissions that occurred outside the State of Florida during the relevant period of time, namely, the decision to use defective Drywall in the construction of Plaintiff(s)' home(s).

b.  Defendant Builder/Developer has engaged in substantial and not isolated activity within Miami-Dade County by: installing defective Drywall in Plaintiff(s)' home(s) located in the State of Florida.

## E. JURISDICTION FOR IN-STATE BUILDER/DEVELOPER

11)  Defendant Builder/Developer is a Florida corporation with its principal place of business in Florida.

12)  Defendant Builder/Developer installed defective Drywall in Plaintiff(s)' home(s) located in the State of Florida.

## F. JURISDICTION FOR CONTRACTOR/INSTALLER

13)  Defendant Contractor/Installer is a Florida corporation with its principal place of business in Florida.

14)  Defendant Contractor/Installer installed defective drywall in Plaintiff(s)' home(s) located in the State of Florida.

## III. GENERAL ALLEGATIONS

### A.  Drywall Background

15)  Drywall is also commonly known as gypsum board, wallboard, plasterboard, rock lath, sheetrock, gyproc, or simply board.

16)  A drywall panel is made of a paper liner wrapped around an inner core made primarily from hardened gypsum plaster.

4

17)    Drywall is typically available in 4 ft (1219 mm) wide sheets of various lengths. Newly formed sheets are cut from a belt, the result of a continuous manufacturing process.

18)    The most commonly used drywall is one-half-inch thick but can range from one quarter (6.35 mm) to one inch (25.4 mm) thick.

19)    The core material of drywall, gypsum, is available in two forms, pure gypsum, which is naturally occurring, and synthetic gypsum, which is manmade.

20)    Pure gypsum is a white to transparent mineral, but sometimes impurities color it grey, brown, or pink.

21)    Synthetic gypsum is generally manufactured with byproducts of coal-fired power plants.

22)    Coal combustion byproducts ("CCBs" or "CCPs") are the inorganic residues that remain after pulverized coal is burned.

23)    The primary CCBs used in drywall are byproducts resulting from a utility's attempts to remove sulfur from flue gases.

24)    In order to meet emission standards, many utilities have installed flue-gas-desulfurization (FGD) equipment. Flue gas desulfurization is a chemical process to remove sulfur oxides from the flue gas at coal-burning powerplants.

25)    Various FGD methods have been developed that chemically combine the sulfur gases released in coal combustion by reacting them with a sorbent, such as limestone or lime.

26)    As the flue gas comes in contact with the slurry of calcium salts, sulfur dioxide reacts with the calcium to form hydrous calcium sulfate, otherwise known as gypsum.

B.    How Drywall Is Created

5

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

27)     In order to form drywall, gypsum must be "calcined," or partially dehydrated by heating.

28)     When gypsum is heated, it loses about three quarters of its water and becomes hemihydrate gypsum which is soft and can be easily ground to a powder called hemihydrate gypsum plaster.

29)     The gypsum powder is then mixed with water to form a paste or slurry.

30)     While the hemihydrate gypsum plaster is in slurry form, it is poured between two paper layers to make drywall.

31)     Drywall is formed by sandwiching a core of wet gypsum between two sheets of heavy paper or fiberglass mats. When the core sets and is dried in a large drying chamber, the "sandwich" becomes rigid and strong enough for use as a building material.

32)     The paste or slurry is typically mixed with fiber (usually paper and/or fiberglass), plasticizer, foaming agent, potash as an accelerator, starch or other chelate as a retarder, various additives that increase mildew and fire resistance (fiberglass or vermiculite), and water.

33)     Drywall may consist of two other materials with sulfur content: alkyl ethoxy sulfates as foaming agents and lignin or napthalene sulfonates as dispersing agents.

## C. The Defective Drywall Emits Noxious and Corrosive Levels of Sulfur

34)     Upon information and belief, the drywall of Defendant(s) contained naturally mined gypsum and synthetic gypsum manufactured from CCBs.

35)     When gypsum, mined or synthetic, is subjected to certain environmental conditions, the product breaks down into sulfate ions which in turn can be chemically transformed into hydrogen sulfide gas and other sulfide gases.

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue. 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

36)     The problem of sulfide emissions from drywall is well-understood in the drywall industry and has been studied for many years.

37)     The level of sulfides emitted from drywall may depend, in part, on contamination of the drywall with sulfur materials or the use of contaminated gypsum materials.

38)     Sulfide emissions from drywall have been a particular problem in landfills and, as such, many landfills refuse to accept drywall or place strict limitations on the amounts and on the ways in which drywall can be disposed. An independent consulting firm, hired by a Miami-based builder, has concluded there is little doubt that the drywall in the home of the Plaintiff(s) and obtained from Defendant(s) is the cause.

39)     One of the managing principles of the independent testing firm stated that: "We have definitely identified that a combination of sulfide gases are the cause of the corrosion of the coils. The substances we've found are well known to cause that kind of corrosion."

40)     The firm's December 2008 results found three sulfide gases: carbon disulfide, carbonyl sulfide and dimethyl sulfide.

41)     Hydrogen sulfide was found in previous testing that the company conducted on the Defendant(s)' drywall: "Our previous studies indicate, however, that carbon disulfide, carbonyl sulfide, and hydrogen sulfide are gases that can be associated with emissions from Chinese drywall."

42)     One importer acknowledged in published reports that the defective Chinese Drywall was "well known in the industry" by 2007.

43)     Plaintiff(s) did not discover the existence of the defect in the Chinese-manufactured drywall until press reports about the defects were released in December 2008.

7

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

## IV. COUNTS AGAINST MANUFACTURER(S)

## A. NEGLIGENCE AGAINST MANUFACTURER(S)

44)     Plaintiff(s) adopt(s) and restate(s) paragraphs 1-6, and 15-43 as if fully set forth herein.

45)     Defendant(s) owed a duty to Plaintiff(s) to exercise reasonable care in the a) design, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling of drywall, including a duty to adequately warn of its failure to do the same.  Defendant(s)' duty includes, but was not limited to the following:

   a.     using reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

   b.     using reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein;

   c.     using reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

   d.     using reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

   e.     using reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

   f.     using reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

   g.     using reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

8

h.    using reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i.    using reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j.    using reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k.    adequately warning and instructing the Plaintiff(s) of the Defects associated with drywall;

l.    properly manufacturing the drywall to prevent it from containing the Defects as set forth herein;

m.    properly selecting the gypsum that did not contain excessive levels of sulfur;

n.    recalling or otherwise notifying users at the earliest date that it became known that the drywall was dangerous and Defective;

o.    advertising and recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;

p.    not misrepresenting that the drywall was safe for its intended purpose when, in fact, it was not;

q.    not manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

r.    not exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

9

s.  not distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

t.  not concealing information from Plaintiff(s) regarding reports of adverse effects associated with drywall; and

u.  not improperly concealing and/or misrepresenting information from the Plaintiff(s) and/or the public, concerning the severity of risks and dangers of Defendant(s)' drywall and/or the manufacturing Defect; and otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing Defects as set forth herein.

46)  Defendant(s) was/were negligent and breached the duty to exercise reasonable care in the a) design, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling of drywall, including a duty to adequately warn of its failure to do the same.  Defendant(s)' negligence included, but was not limited to the following:

a.  failing to use reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

b.  failing to use reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein;

c.  failing to use reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

d.   failing to use reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

e.   failing to use reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

f.   failing to use reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g.   failing to use reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h.   failing to use reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i.   failing to use reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j.   failing to use reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k.   failing to adequately warn and instruct the Plaintiff(s) of the Defects associated with drywall;

l.   failing to properly manufacture the drywall to prevent it from containing the Defects as set forth herein;

m.   failing to properly select the gypsum that did not contain excessive levels of sulfur;

n.   failing to recall or otherwise notify users at the earliest date that it became known that drywall was dangerous and Defective;

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

o.   advertising and recommending the use of drywall without sufficient knowledge as to its manufacturing Defect and dangerous propensities;

p.   misrepresenting that drywall was safe for its intended purpose when, in fact, it was not;

q.   manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

r.   exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

s.   distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

t.   concealing information from Plaintiff(s) regarding reports of adverse effects associated with drywall; and

u.   improperly concealing and/or misrepresenting information from the Plaintiff(s) and/or the public, concerning the severity of risks and dangers of Defendant(s)' drywall and/or the manufacturing Defect; and failing to otherwise exercise reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling of drywall to prevent it from containing Defects as set forth herein.

47)   As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred economic damages and is/are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in

the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

48)     As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred or will incur incidental and consequential damages for the costs of moving while the home is being repaired/replaced; renting of comparable housing during the duration of the repairs or until the home is replaced; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

49)     Defendant(s) knew or should have known that its/their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff(s) demand(s):

     a.   compensatory damages;

     b.   post and pre-judgment interest;

     c.   an award of taxable costs; and,

     d.   any and all such further relief as this Court deems just and proper.

## B. STRICT LIABILITY AGAINST MANUFACTURER(S)

50)     Plaintiff(s) adopt(s) and restate(s) paragraphs 1-6, and 15-43 as if fully set forth herein.

51)     At all times relevant hereto, Defendant(s) was/were in the business of designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

52)     The drywall, including that installed in the home of Plaintiff(s) was placed by Defendant(s) in the stream of commerce.

53)     Defendant(s) knew that the subject drywall would be used without inspection for defects by consumers.

54)     Defendant(s) intended that the drywall reach the ultimate consumer, such as Plaintiff(s), and it indeed reached Plaintiff(s) when it was installed in the home.

55)     When installed in the home, the drywall was in substantially the same condition it was when Defendant(s) manufactured, sold, and/or delivered it.

56)     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendant(s), and in accordance with the Defendant(s)' directions and instructions.

57)     The subject drywall was not misused or altered by any third parties.

58)     The Defendant(s)' drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

59)     The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and damage  the property that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property") and potential health hazards.

60)     The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors for drywall that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

61)     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

62)     The Defendant(s)' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to the Plaintiff(s).

63)     The drywall is also defective and unreasonably dangerous because Defendant(s) failed to adequately warn and instruct the Plaintiff(s) of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

64)     Plaintiff(s) was/were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiff(s), acting as a reasonably prudent person/people discover that Defendant(s)' drywall was defective, as set forth herein, or perceive its danger.

65)     Defendant(s)' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiff(s).

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

66)     Defendant(s)' defective drywall benefit to Plaintiff(s), if any, was greatly outweighed by the risk of harm and danger to them.

67)     The defects in the drywall, as well as Defendant(s)' failure to adequately warn the Plaintiff(s) of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiff(s).

68)     As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred economic damages and is/are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

69)     As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred or will incur incidental and consequential damages for the cost of moving while the home is being repaired/replaced; renting of comparable housing during the duration of the repairs or until the home is replaced; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiff(s) demand(s):

   a. compensatory damages;

   b. post and pre-judgment interest;

   c. an award of taxable costs; and,

   d. any and all such further relief as this Court deems just and proper.

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

## C. VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT AGAINST MANUFACTURER(S)

70)     Plaintiff(s) adopt(s) and restate(s) paragraphs 1-6, and 19-43 as if fully set forth herein.

71)     This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

72)     Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff(s) is/are "Consumer(s)" within the meaning of §501.203(7), Florida Statutes.

73)     Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

The advertising, soliciting, providing, offering, or distributing of drywall by Defendant(s) to Plaintiff(s) are "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

74)     Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendant(s)' acts and omissions as well as its/their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant(s)' trade or commerce pursuant to section 501.204, Florida Statutes.

17

75)     The unconscionable, illegal, unfair and deceptive acts and practices of Defendant(s) violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiff(s) has/have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

76)     Plaintiff(s) is/are entitled to recover reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

77)     As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred economic damages and is/are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

78)     As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred or will incur incidental and consequential damages for the costs of moving while the home is being repaired/replaced; renting of comparable housing during the duration of the repairs or until the home is replaced; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiff(s) demand(s):

      a.   compensatory damages;

      b.   post and pre-judgment interest;

      c.   an award of attorneys' fees and taxable costs; and,

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

d.  any and all such further relief as this Court deems just and proper.

## D. PRIVATE NUISANCE AGAINST MANUFACTURER(S)

79)   Plaintiff(s) adopt(s) and restate(s) paragraphs 1-6, and 15-43 as if fully set forth herein.

80)   The Defendant(s)' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into the home which has unreasonably interfered, and continues to interfere, with the use and enjoyment of the property and caused potential health problems.

81)   Defendant(s)' interference has impaired the rights of the Plaintiff(s) and the health, comfort, safety, free use of the property, and/or peaceful enjoyment of the property.

82)   Defendant(s)' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

83)   The interference with the use of the property caused by Defendant(s) is substantial and is ongoing.

84)   Defendant(s)' private nuisance was the direct, proximate, and foreseeable cause of the damages, injuries, harm, economic loss, and increased risk of harm, which Plaintiff(s) suffered and will continue to suffer.

85)   As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred economic damages and is/are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

19

Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

86)    As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred or will incur incidental and consequential damages for the costs of moving while the home is being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

87)    Defendant(s) knew or should have known that its/their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff(s) demand(s):

     a.   compensatory damages;

     b.   post and pre-judgment interest;

     c.   an award of taxable costs; and,

     d.   any and all such further relief as this Court deems just and proper.

## E. MEDICAL MONITORING AGAINST MANUFACTURER(S)

88)    Plaintiff(s) adopt(s) and restate(s) paragraphs 1-6, and 15-43 as if fully set forth herein.

89)    Plaintiff(s) will suffer irreparable harm if the Court does not render the medical monitoring relief set forth herein.

90)    Plaintiff(s) demand(s) injunctive and equitable relief and further, that Defendant(s) be ordered to create, fund, and support a medical monitoring program consistent with the requirements of Florida law.

91)    Until Defendant(s)' defective drywall has been removed, Defendant(s) should provide continued environmental and air monitoring in the home.

Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

92)   Plaintiff(s) has/have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendant(s)' defective drywall.

93)   The sulfides gases and the other chemicals which have been released from Defendant(s)' drywall and to which Plaintiff(s) has/have been exposed are proven hazardous, dangerous, or toxic substances.

94)   The exposures were caused by the Defendant(s)' negligence or otherwise tortious conduct.

95)   The exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

96)   The method and means for diagnosing the potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiff(s) by preventing or minimizing health problems that they may be encountered as a result of the defective drywall.

97)   As a proximate result of the exposure to sulfide gases and other toxic chemicals from Defendant(s)' defective drywall, Plaintiff(s) has/have developed a significantly increased risk of contracting a serious latent disease.

98)   Monitoring procedures exist that makes the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

99)   The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

WHEREFORE Plaintiff(s) demand(s):

       a.   compensatory damages;

21

    b.  post and pre-judgment interest;

    c.  an award of attorneys' fees and taxable costs; and,

    d.  any and all such further relief as this Court deems just and proper.

## V. COUNTS AGAINST DISTRIBUTOR/SUPPLIER

## A. STRICT LIABILITY AGAINST DISTRIBUTOR/SUPPLIER

100) Plaintiff(s) adopt(s) and restate(s) paragraphs 1-5, and 15-43 as if fully set forth herein.

101) At all times relevant hereto, Defendant was in the business of exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

102) The drywall, including that installed in the home of the Plaintiff(s) was placed by Defendant in the stream of commerce.

103) Defendant knew that the subject drywall would be used without inspection for defects by consumers.

104) Defendant intended that the drywall reach the ultimate consumer, such as Plaintiff(s), and it indeed reached Plaintiff(s) when it was installed in the home.

105) When installed in the home, the drywall was in substantially the same condition it was when Defendant distributed, supplied, sold, and/or delivered it.

106) At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendant, and in accordance with the Defendant's directions and instructions.

107) The subject drywall was not misused or altered by any third parties or Plaintiff(s).

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

108) The drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, delivered, and/or sold.

109) The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and damage the property that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property") and potential health hazards.

110) The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors for drywall that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

111) The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

112) The defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to the Plaintiff(s).

113) The drywall is also defective and unreasonably dangerous because Defendant failed to adequately warn and instruct the Plaintiff(s) of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

114) Plaintiff(s) was/were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiff(s), acting as a reasonably prudent person/people discover that Defendant's drywall was defective, as set forth herein, or perceive its danger.

115) Defendant's defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiff(s).

116) Defendant's defective drywall benefit to Plaintiff(s), if any, was greatly outweighed by the risk of harm and danger to them.

117) The defects in the drywall, as well as Defendant's failure to adequately warn the Plaintiff(s) of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiff(s).

118) As a direct and proximate cause of Defendant's acts and omissions, Plaintiff(s) has/have incurred economic damages and is/are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

119) As a direct and proximate cause of Defendant's acts and omissions, Plaintiff(s) has/have incurred or will incur incidental and consequential damages for the costs of moving while the home is being repaired/replaced; renting of comparable housing during the duration of the repairs or until the home is replaced; the cost of repair or replacement of the home; the loss

of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiff(s) demand(s):

      a.  compensatory damages;

      b.  post and pre-judgment interest;

      c.  an award of attorneys' fees and taxable costs; and,

      d.  any and all such further relief as this Court deems just and proper.

## B. NEGLIGENCE AGAINST DISTRIBUTOR/SUPPLIER

120) Plaintiff(s) adopt(s) and restate(s) paragraphs 1-5, and 15-43 as if fully set forth herein.

121) Defendant owed a duty to Plaintiff(s) to exercise reasonable care in the a) inspecting, and b) testing, of the drywall they were installing in the home, including a duty to adequately warn of its failure to do the same.  Defendant's duty includes, but was not limited to the following:

      a.  using reasonable care in the inspecting of the drywall they installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home;

      b.  using reasonable care in the testing of the drywall installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home;

      c.  adequately warning and instructing the Plaintiff(s) of the Defects associated with drywall; and

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

    d.   otherwise exercising reasonable care in the inspecting and testing of the drywall installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home.

122) Defendant was negligent and breached its duty to exercise reasonable care in the a) inspecting, and b) testing of the drywall they were installing in the home, including a duty to adequately warn of its failure to do the same.  Defendant's negligence included, but was not limited to the following:

    a.   failing to use reasonable care in the inspecting of the drywall Defendant installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home;

    b.   failing to use reasonable care in the testing of the drywall Defendant installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home;

    c.   failing to adequately warn and instruct the Plaintiff(s) of the Defects associated with drywall; and

    d.   failing to otherwise exercise reasonable care in the inspecting and testing of the drywall they installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home.

123) As a direct and proximate cause of Defendant's acts and omissions, Plaintiff(s) has/have incurred economic damages and is/are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property,

furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

124) As a direct and proximate cause of Defendant's acts and omissions, Plaintiff(s) has/have incurred or will incur incidental and consequential damages for the costs of moving while the home is being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

125) Defendant's knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff(s) demand(s):

     a.   compensatory damages;

     b.   post and pre-judgment interest;

     c.   an award of taxable costs; and,

     d.   any and all such further relief as this Court deems just and proper.

## C. PRIVATE NUISANCE AGAINST DISTRIBUTOR/SUPPLIER

126)    Plaintiff(s) adopt(s) and restate(s) paragraphs 1-5, and 15-43 as if fully set forth herein.

127)    The Defendant's tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into the home which has unreasonably interfered, and continues to interfere, with the use and enjoyment of the property and caused potential health problems.

128)    Defendant's interference has impaired the rights of the Plaintiff(s) and the health, comfort, safety, free use of the property, and/or peaceful enjoyment of the property.

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

129)   Defendant's invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

130)   The interference with the use of the property caused by Defendant is substantial and is ongoing.

131)   Defendant's private nuisance was the direct, proximate, and foreseeable cause of damages, injuries, harm, economic loss, and increased risk of harm, which Plaintiff(s) suffered and will continue to suffer.

132)   As a direct and proximate cause of Defendant's acts and omissions, Plaintiff(s) has/have incurred economic damages and is/are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

133)   As a direct and proximate cause of Defendant's acts and omissions, Plaintiff(s) has/have incurred or will incur incidental and consequential damages for the costs of moving while the home is being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

134)   Defendant knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff(s) demand(s):

       a.   compensatory damages;

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

    b.  post and pre-judgment interest;

    c.  an award of taxable costs; and,

    d.  any and all such further relief as this Court deems just and proper.

## D. MEDICAL MONITORING AGAINST DISTRIBUTOR/SUPPLIER

135) Plaintiff(s) adopt(s) and restate(s) paragraphs 1-5, and 15-43 as if fully set forth herein.

136) Plaintiff(s) will suffer irreparable harm if the Court does not render the medical monitoring relief set forth herein.

137) Plaintiff(s) demand(s) injunctive and equitable relief and further, that defendant be ordered to create, fund, and support a medical monitoring program consistent with the requirements of Florida law.

138) Until Defendant's defective drywall has been removed, Defendant should provide continued environmental and air monitoring in the home.

139) Plaintiff(s) has/have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendant's defective drywall.

140) The sulfides gases and the other chemicals which have been released from Defendant's drywall and to which Plaintiff(s) has/have been exposed are proven hazardous, dangerous, or toxic substances.

141) The exposures were caused by the Defendant's negligence or otherwise tortious conduct.

142) The exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

143) The method and means for diagnosing the potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiff(s) by preventing or minimizing health problems that they may encounter as a result of the defective drywall.

144) As a proximate result of the exposure to sulfide gases and other toxic chemicals from Defendant's defective drywall, Plaintiff(s) has/have developed a significantly increased risk of contracting a serious latent disease.

145) Monitoring procedures exist that makes the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

146) The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

WHEREFORE Plaintiff(s) demand(s):

      a.   compensatory damages;

      b.   post and pre-judgment interest;

      c.   an award of attorneys' fees and taxable costs; and,

      d.   any and all such further relief as this Court deems just and proper.

## VI. COUNTS AGAINST BUILDER/DEVELOPER

### A. STRICT LIABILITY AGAINST BUILDER DEVELOPER

147)   Plaintiff(s) adopt(s) and restate(s) paragraphs 1-5, and 15-43 as if fully set forth herein.

148)   At all times relevant hereto, Defendant(s) was/were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

149)    The drywall, including that installed in the home of Plaintiff(s) was placed by
Defendant(s) in the stream of commerce.

150)    Defendant(s) knew that the subject drywall would be used without inspection for
defects by consumers.

151)    Defendant(s) intended that the drywall reach the ultimate consumer, such as
Plaintiff(s), and it indeed reached Plaintiff(s) when it was installed in the home.

152)    When installed in the home, the drywall was in substantially the same condition it
was when Defendant(s) manufactured, sold, and/or delivered it.

153)    At all times relevant hereto the subject drywall was used in a manner consistent
with the uses intended by, or known to Defendant(s), and in accordance with the Defendant(s)'
directions and instructions.

154)    The subject drywall was not misused or altered by any third parties.

155)    The Defendant(s)' drywall was defectively manufactured, designed, inspected,
tested, marketed, distributed, and sold.

156)    The design defect was in designing drywall that allowed high levels of sulfur
and/or other chemicals to emit through off-gassing and damage  the property that caused
corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing,
electrical wiring, computer wiring, personal property, electronic appliances, and other metal
surfaces and household items ("Other Property") and potential health hazards.

157)    The manufacturing defect was in improperly selecting, testing, inspecting,
mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too
high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates
noxious, "rotten egg-like" odors for drywall that caused corrosion of air-conditioner and

refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

158)     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

159)     The Defendant(s)' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to the Plaintiff(s).

160)     The drywall is also defective and unreasonably dangerous because Defendant(s) failed to adequately warn and instruct the Plaintiff(s) of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

161)     Plaintiff(s) was/were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiff(s), acting as a reasonably prudent person/people discover that Defendant(s)' drywall was defective, as set forth herein, or perceive its danger.

162)     Defendant(s)' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiff(s).

163)     Defendant(s)' defective drywall benefit to Plaintiff(s), if any, was greatly outweighed by the risk of harm and danger to them.

164)     The defects in the drywall, as well as Defendant(s)' failure to adequately warn the Plaintiff(s) of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiff(s).

Colson Hicks Eidson Colson Matthews Martinez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

165)   As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred economic damages and is/are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

166)   As a direct and proximate cause of Defendant(s)' acts and omissions, Plaintiff(s) has/have incurred or will incur incidental and consequential damages for the cost of moving while the home is being repaired/replaced; renting of comparable housing during the duration of the repairs or until the home is replaced; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiff(s) demand(s):

      a.   compensatory damages;

      b.   post and pre-judgment interest;

      c.   an award of taxable costs; and,

      d.   any and all such further relief as this Court deems just and proper.

## B. NEGLIGENCE AGAINST BUILDER/DEVELOPER

167)   Plaintiff(s) adopt(s) and restate(s) paragraphs 1-5, and 15-43 as if fully set forth herein.

168)   Defendant owed a duty to Plaintiff(s) to exercise reasonable care in the a) inspecting, b) testing, the drywall it was installing in the home, including a duty to adequately

33

warn of its failure to do the same. Defendant's duty includes, but was not limited to the following:

    a)    using reasonable care in the inspecting of the drywall it installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home;

    b)    using reasonable care in the testing of the drywall it installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home;

    c)    adequately warning and instructing the Plaintiff(s) of the Defects associated with drywall; and

    d)    otherwise exercising reasonable care in the inspecting and testing of the drywall it installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home.

169) Defendant was negligent and breached its duty to exercise reasonable care in the a) inspecting, b) testing, the drywall Defendant was installing in the home, including a duty to adequately warn of its failure to do the same. Defendant's negligence included, but was not limited to the following:

    a)    failing to use reasonable care in the inspecting of the drywall it installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home;

    b)    failing to use reasonable care in the testing of the drywall it installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home;

Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

c) failing to adequately warn and instruct the Plaintiff(s) of the Defects associated with drywall; and

d) failing to otherwise exercise reasonable care in the inspecting and testing of the drywall it installed in the home to discover that it contained Defects as set forth herein and not to install the defective drywall in the home.

170) As a direct and proximate cause of Defendant's acts and omissions, Plaintiff(s) has/have incurred economic damages and is/are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

171) As a direct and proximate cause of Defendant's acts and omissions, Plaintiff(s) has/have incurred or will incur incidental and consequential damages for the costs of moving while the home is being repaired/replaced; renting of comparable housing during the duration of the repairs or until the home is replaced; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

172) Defendant knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein. WHEREFORE Plaintiff(s) demand(s):

a. compensatory damages;

b. post and pre-judgment interest;

Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue. 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444