UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047  SECTION: L |
| * * * * * * * * * * * * | * | JUDGE FALLON |
| This Document Relates to: | * * | MAG. JUDGE WILKINSON |
| *Hernandez v. Knauf*, Case No. 09-6050 (E.D.La.) | * * * | |
| * * * * * * * * * * * | * | |

### PRE-TRIAL BRIEF

PLAINTIFFS Tatum and Charlene Hernandez respectfully submit the following memorandum in advance of the trial on the merits which is set to begin on March 15, 2010:

**MAY IT PLEASE THE COURT:**

In January of 2005, Tatum and Charlene Hernandez bought a lot in Mandeville, Louisiana. High school classmates who grew up in the Houma area, Mr. Hernandez works for the State Department as passport supervisor, while Charlene is a nurse in the obstetrics unit at Ochsner Hospital. They have two children: Grant, who is four years-old, and Amelia, who is two. With the help of Tatum's uncle, an architect, they designed the house which they believed would be perfect for their young family.

Anthony Marino, the previous owner of the lot and a contractor by trade, was hired to construct the home, for $205,380,[1] and the Hernandez family moved in on August 9, 2006.

The house is a one-story, six-room, three-bedroom, two-bath, single-family dwelling with 1,688 square feet of living space.[2] An appraisal performed in February of 2009 valued the property at $238,000.[3]

During the construction phase, 180 sheets of drywall were purchased from Louisiana Lumber, which obtained the drywall from Interior Exterior Building Supply.[4] After repeated problems with the AC unit and several electrical appliances, Mr. and Mrs. Hernandez confirmed the presence of Knauf Tianjin drywall after Charlene saw a report on the local Fox News 8 on or around March 19, 2009. Since that time, the Hernandez family has experienced, and documented, numerous problems with the wiring, electrical, and HVAC systems, as well as various personal property items, as will be presented at trial.

---

[1]The land, which is approximately 1.5 acres, was originally purchased from Mr. Marino for $29,350 in January of 2005. [*See* HERNANDEZ 17] The land was then re-sold to Mr. Marino in order to construct the house, with a total sale/construction cost of $195,380, in March of 2005. [*See* HERNANDEZ 4] After Hurricane Katrina, the terms were re-negotiated, for a final sale/construction price of $205,380, executed in November of 2005. [*See* HERNANDEZ 508]

[2]*See* HERNANDEZ 22.

[3]*See* HERNANDEZ 22.

[4]*See* HERNANDEZ 24 and HERNANDEZ 25.

**The Joint Stipulation**

By Joint Stipulation dated February 24, 2010, the parties have agreed to the critical liability issues before the Court, most notably: **(i)** that Defendant Knuaf Plasterboad (Tianjin) Co., Ltd., is both the "manufacturer" and the "seller" of drywall which was purchased by Mr. & Mrs. Hernandez and is present in their home;[5] **(ii)** that said Knauf drywall emits an odor and off-gasses sulfur compounds, which both constitutes a redhibitory vice and renders the drywall unfit for its intended purpose;[6] **(iii)** that while damages are not claimed by Plaintiffs under the Louisiana Products Liability Act, neither will the exclusivity provisions of the LPLA operate to preclude any damages claimed in the Amended and Restated Complaint;[7] and **(iv)** that Defendant KPT will not assert comparative fault, contribution, or any other reduction in the legal responsibility of KPT on account of the alleged fault of any other person or entity.[8] Hence, it is clear that Defendant KPT is liable to the Plaintiffs under Louisiana Civil Code Article 2545 for:

     i.     the return of the purchase price with interest from the time it was paid;

     ii.     the reasonable expenses occasioned by the sale;

     iii.     reasonable expenses incurred for the preservation of the thing;

---

[5] *See* JOINT STIPULATION [HERNANDEZ 176] [Doc 1438], ¶¶7-8.

[6] *See* JOINT STIPULATION, ¶¶9-10.  *See* LA. CIV. CODE ARTS. 2520 and 2524.

[7] *See* JOINT STIPULATION, ¶5.

[8] *See* JOINT STIPULATION, ¶3.  Plaintiffs note that, (even absent the stipulation), a manufacturer is directly and independently liable for redhibitory defects existing at the time of delivery. Aucoin v. Southern Quality Homes, 2007-1014 (La. 2/26/08), 984 So.2d 685, 693.

   iv. damages;[9] and,

   v. reasonable attorneys fees.[10]

Tailoring those available legal remedies to the factual scenario at issue, the plaintiffs will briefly set forth the specific relief requested in this case.

## **Restoring the Property to its Original Condition**

When property is damaged through the fault of another, the primary goal is to restore the property, as nearly as possible, to the state it was in immediately prior to the damage. It is well-settled, in this regard, that the measure of property damage is the cost of restoring the property to its former condition. Generally, therefore, Louisiana courts have considered the cost of restoration to be the proper measure of damage where the thing damaged can be adequately repaired.[11]  No mechanical rule is applied with exactitude.  Each case must rest on its own facts and circumstances. Coleman v. Victor,

---

[9] Defendant KPT is also liable for damages under Louisiana Civil Code Article 2524. *See, e.g.,* REVISION COMMENT (b), La.C.C. 2524 ("when the thing sold is not fit for its ordinary use, even though it is free from redhibitory defects, the buyer may seek dissolution of the sale and damages, or just damages, under the general rules of conventional obligations"); Walton Construction Company v. G.M. Horne, 2007-0145 (La. App. 1st Cir. 2/20/08), 984 So.2d 827, 838 (Downing, J., concurring) ("The warranty of fitness which, by law, comes with my air conditioner, doesn't just run to the guy who bought it to install it, it runs to me, the ultimate consumer, for which it was intended.  This allows me, the ultimate consumer, to sue the manufacturer without also suing the (probably broke and long gone) contractor, distributor, or middle man").

[10] As the manufacturer of the drywall, Defendant KPT is conclusively presumed to be in "bad faith" under Civil Code Article 2545.  *See* REVISION COMMENT (b), La.C.C. 2545 (1993) ("Under this Article, a manufacturer is presumed to know the defects in the things it manufactures.... Thus, regardless of what his actual knowledge may be, a manufacturer is deemed to be in bad faith in selling defective products").

[11] Two alternative tests employed by the courts have included: (2) Value differential, prior to and after the damage; and, (3) Cost of replacement, less depreciation, if the value before and after the damage cannot be reasonably determined or if the cost of repair is more than the value of the damaged item.

326 So.2d 344, 347 (La. 1976); <u>Alpha Alpha v. Southland Aviation</u>, 96-928 (La. App. 3rd Cir. 7/9/97), 697 So.2d 1364, 1372; <u>Summarell v. Ross</u>, 27,160 (La. App. 2nd Cir. 8/23/95), 660 So.2d 112, 116-117; *see also,* <u>Roman Catholic Church of the Archdiocese of New Orleans v. Louisiana Gas Serv. Co.</u>, 618 So.2d 874, 880 (La. 1993) ("If a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building").

**Costs of Remediation**

Defendant's own experts admit that the remediation should include:

- Removal and replacement of all drywall;
- Removal and replacement of all insulation;
- Removal and replacement of all electrical connections, receptacles, and switches;
- Removal and replacement of all carpet;
- Removal and replacement of AC coils and all HVAC ductwork;
- Removal and replacement of granite counter-tops;
- Removal and re-setting of mantel;
- New paint;
- Removal and replacement of base, crown and door moldings;
- Set up; clean up, including vacuuming; and waste disposal.[12]

---

[12] *See* DX0035 [DEFENSE EXPERT REPORT OF ROY M. CARUBBA (and Exhibits A and B thereto)].

The evidence presented by Plaintiffs will further show that Chinese Drywall (including Knauf drywall) is significantly different from domestically manufactured drywall, as sulfur compounds off-gassing from the Chinese Drywall cause corrosion and an irritating odor in the home. The off-gassed sulfur compounds cause corrosion to numerous building components, including electrical components, appliances, and the HVAC system. Copper and silver metal surfaces are particularly susceptible to this corrosive attack. The current corrosion (and future corrosion, absent remediation) creates an increased risk of fire or electrical shock within the home, as well as premature system, appliance and/or component failure.

In order to remove and replace the Chinese Drywall, all damaged components and materials, and other materials which may provide a reservoir of sulfur compounds and odors, practical deconstruction and construction requirements must be considered. These practical and economic considerations necessitate the removal of more than simply the Chinese-manufactured drywall and other property which have been directly damaged by the off-gassing. Many interior building components require removal to access and inspect for damaged components and materials.

Cost considerations also must be weighed in the remediation process. Less than complete repair often proves more labor-intensive and thus more expensive for the owner. The evidence in this case will show that in some instances it "costs more to do less" in addressing Chinese Drywall remediation.

While there appears to be no significant damage to wood product framing, steel framing connectors, or windows and doors, these items will need to be thoroughly cleaned and allowed to off-gas before reconstruction. During and at the conclusion of the remediation, it is necessary to perform specialized micro-cleaning in order to assure the long-term success of the remediation.

Plaintiffs' experts and other witnesses will provide the scientific, practical and economic foundation for this scope of remediation, at an estimated cost of $200,218.09.[13]

**Storage, Moving and Rental Costs**

Due to the remediation stemming from the redhibitory vice contained in KPT's Chinese drywall, the Hernandez family will need an alternative place to live during the remediation process. Such moving, storage and rental expenses are clearly recognized,[14] and will be presented *via* affidavit, by plaintiffs' expert in forensic accounting, J.C. Tuthill.[15]

**Personal Property**

The evidence will show that several items of personal property have already been purchased to either minimize the effects of the Chinese Drywall or to replace items which have failed in the Hernandez home. Such items include de-humidifiers, window AC units, a refrigerator, a television, and a toaster. At the same time, there are numerous items still within the home that have been affected by the sulfur gasses and/or corrosion. Personal possessions such as jewelry, silverware and sorbent materials should be cleaned where possible; otherwise, these items will need to be replaced. Appliances

---

[13] *See* HERNANDEZ 477.

[14] *See e.g.,* Ashley v. Strong, 09-336 (La. App. 3rd Cir. 10/7/09), 19 So.3d 1260, 1262-1263 (plaintiff entitled to cost for renting replacement vehicle during estimated three-day repair period, irrespective of whether she actually performs the repairs); *citing,* Nelorns v. Wmpire & Marine Ins., 37,786 (La. App. 2nd Cir. 10/16/03), 859 So.2d 225, 233; *see also, e.g.,* Diamond v. Interstate Dodge, 35,137 (La. App. 2nd Cir. 9/26/01), 796 So.2d 701 (affirming award for loss of use of mobile home not fit for ordinary use).

[15] *See* HERNANDEZ 481 and HERNANDEZ 482.

and electronics with contact switches or printed circuit boards, such as televisions and computers, will also need to be replaced. The value of these items has been quantified as $11,907 by Plaintiffs' expert in personal property appraisal, David Maloney.[16]

**Damages Not Claimed by Mr. & Mrs. Hernandez from Knauf at Trial**

While Plaintiffs believe that such damages are generally available,[17] Mr. & Mrs. Hernandez are *not* claiming non-pecuniary damages from Knauf at the trial of this matter. While Plaintiffs believe that such damages are generally available,[18] Mr. & Mrs. Hernandez are *not* claiming post-remediation diminution in value or "stigma" damages from Knauf at the trial of the matter. Nor are Plaintiffs claiming any damages in this lawsuit for physical injuries.[19] Plaintiffs respectfully reserve their rights and claims to any and all such damages from any other person, party or entity who may be legally responsible to them for same.

---

[16] *See* HERNANDEZ 104.

[17] When the object of a contract is a home or other thing which is, at least in part, intended to gratify a significant non-pecuniary interest, general damages for emotional distress, inconvenience and loss of enjoyment of the property may be awarded. REVISION COMMENT (j), La.C.C. 2545; *see, e.g.,* Thomas v. Desire Community Housing Project, 98-2097 (La. App. 4th Cir. 8/10/00), 773 So.2d 755 (allowing non-pecuniary damages of $15,500 for problems in the construction of plaintiff's home); Taylor v. Burton, 97-1348 (La. App. 3rd Cir. 3/6/98), 708 So.2d 531 (upholding award for aggravation and mental distress due to defects in plaintiff's house); Mayerhofer v. Three R's Inc., 597 So.2d 151, 155 (La. App. 3rd Cir. 1992) (affirming award for inconvenience and mental anguish), *writ denied,* 600 So.2d 680 (La. 1992); *see also,* LA. CIV. CODE ART. 2524.

[18] *See* Bonnette v. Conoco Inc., 2001-2767 (La. 1/28/03), 837 So.2d 1219, 1238-1240 (upholding an award for the diminished value of a remediated home because the former presence of asbestos would need to be disclosed to prospective buyers); *see also, e.g.,* Johnson v. Orleans Parish School Bd., 2006-1223 (La. App. 4th Cir. 1/30/08), 975 So.2d 698, 705-706.

[19] *See* AMENDED AND RESTATED COMPLAINT, ¶XXXVIII.

**Attorneys' Fees**

As set forth above, Defendant KPT is liable under Louisiana Civil Code Article 2545 for reasonable attorneys' fees.[20] Plaintiffs respectfully request that the Court's Judgment include an award of attorneys' fees, to be determined at a subsequent proceeding, in accordance with FED. RULE CIV. PRO. 54(d)(2).

This 12th day of March, 2010.

Respectfully submitted,

   /s/ Stephen J. Herman
**RUSS M. HERMAN**, La. Bar No. 6819
   *Plaintiffs' Liaison Counsel*
**LEONARD A. DAVIS**, La. Bar No. 14190
**STEPHEN J. HERMAN, T.A.,** La. Bar No. 23129
**JEREMY S. EPSTEIN**, La. Bar No. 32135
**HERMAN, HERMAN, KATZ & COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sherman@hhkc.com

*Attorneys for Plaintiffs*
*Tatum and Charlene Hernandez*

**CHRISTOPHER SEEGER**
**JEFF S. GRAND**
**SCOTT A. GEORGE**
**SEEGER WEISS, LLP**
One William Street

---

[20] LA. CIV. CODE ART. 2545; *see, e.g.,* Aucoin, supra, 984 So.2d at 698.

>New York, NY 10004
>Phone: (212) 584-0700
>Fax: (212) 584-0799
>E-Mail: cseeger@seegerweiss.com
>
>*Co-Lead Trial Counsel*
>
>**ARNOLD LEVIN**
>**FRED S. LONGER**
>**LEVIN, FISHBEIN, SEDRAN & BERMAN**
>510 Walnut Street, Suite 500
>Philadelphia, PA 19106
>215-592-1500 (phone)
>215-592-4663 (fax)
>E-Mail: Alevin@lfsblaw.com
>
>*Plaintiffs' Lead Counsel*
>*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630   jrr@lumpkinreeves.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that I have served the above and foregoing Pre-Trial Brief *via* E-Mail upon Defense Liaison Counsel and Counsel for Defendant Knuaf Plasterboard (Tianjin) Co. Ltd., and that I will cause the above and foregoing Pre-Trial Brief to be served upon all counsel and/or parties *via* the Lexis-Nexis File & Serve in accordance with Pre-Trial Order No. 6, this March 12th, 2010.

                                                                   /s/ Stephen J. Herman