IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * * * * | MDL Docket No. 2047 SECTION L JUDGE FALLON MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * *

**THIS DOCUMENT RELATES TO:** *Hernandez v. Knauf Plasterboard (Tianjin) Co. Ltd. et al.*, Case No. 09-6050 (E.D. La.)

**DEFENDANT KNAUF PLASTERBOARD (TIANJIN) CO. LTD.'S RESPONSE TO PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE SPECIFIC ASPECTS OF THE TESTIMONY OF KNAUF'S EXPERTS ON THE IMPACT OF CORROSION ON THE SCOPE OF REMEDIATION**

I.   INTRODUCTION

Plaintiffs' motion is not a proper *Daubert* challenge. Rather, it is a thinly veiled request for this Court to engage in premature fact finding before Defendant proffers its case. Plaintiffs' motion is essentially a presentation of their substantive arguments that challenge the conclusions reached by KPT's experts. These arguments, which go only to the weight, not admissibility, of KPT's experts' opinions are inappropriate for a *Daubert* challenge and are appropriately left for trial. This Court need look no further than Plaintiffs' memorandum, much of which simply contains argument that KPT's experts' opinions are wrong because they are different than Plaintiffs' own experts' opinions. (*See* Plaintiffs' Motion at Section C, p.7: seeking to exclude KPT's experts from

1

discussing the Consumer Product Safety Commission ("CPSC") because "that is not what the report says;" Plaintiffs' Motion at Section F, p.11-12: seeking to exclude KPT's expert testimony with respect to copper oxide because "Knauf expert Beyler concludes that copper oxide films are the same as copper sulfide ones").

Through the guise of a *Daubert* challenge, Plaintiffs raise issue with KPT's opinions on the impact, or lack thereof, of tarnishing on materials in the house. This goes to the heart of the issue before this Court – the proper scope of repair to the Hernandez house. Plaintiffs can hardly claim that these opinions are not relevant, and Plaintiffs extensively misstate KPT's expert opinions, including their opinions on the various repair methods for houses containing Chinese drywall. The repair offered here, and the opinions offered to support that repair option, are directed at the Hernandez house, which is a house that contains all Chinese drywall. Nowhere in the motion do Plaintiffs explain *why* KPT's expert opinions on tarnishing are irrelevant or an improper fit for this case under *Daubert*.

Plaintiffs' argument that KPT's experts did not follow certain methods or improperly relied on applicable standards is spurious; they ignore the actual standards relied upon by KPT's experts. Plaintiffs instead substitute their own experts' opinions for those standards. These arguments are improper under *Daubert*, because they are challenges to the KPT experts' ultimate conclusions,. Such a challenge goes to the weight of the testimony rather than the admissibility. While an interesting preview of Plaintiffs' positions at trial, Plaintiffs must wait three days until the trial to properly challenge KPT's expert opinions. Plaintiffs' disagreements with KPT's experts are a matter of weight to be determined at that point, not a matter of admissibility under *Daubert* before

2

then. This Court should therefore deny Plaintiffs' motion.

## II. APPLICABLE LAW

Disputes over the conclusions or merits of an expert's opinion properly go to the weight rather than the admissibility of the testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993). The focus of a *Daubert* challenge "must be *solely* on principles and methodology, not on the conclusions that they generate." *Id.* at 595 (emphasis added). As Judge Duval recently noted in the *Katrina* litigation: "Courts should not [be] lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility." *In re Katrina Canal Breaches Consol. Litigation*, No. 05-4182, U.S. Dist. LEXIS 8841 at *205 (E.D. La. Jan. 6, 2010) (quoting *General Electric Capital Business Asset Funding Corp. v. S.A.S.E. Military Ltd.*, No. SA-03-CA-189-RF, U.S. Dist. LEXIS 30714 at *14 (W.D. Tex. 2004)). In line with well-established Fifth Circuit case law, Judge Duval continued: "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Id.*; *see also Huss v. Gayden*, 571 F.3d 442, 452-55 (5th Cir. 2009) (reversing the trial's exclusion of expert testimony and noting that "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility"); *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 589 (5th Cir. 2003) (reversing the trial court's exclusion of expert testimony where challenges to the testimony at issue "go to the weight to be given to [the expert's] testimony, not its admissibility"); *Tyler v. Union Oil Co.*, 304 F.3d 379, 392-93 (5th Cir. 2002) (same).

3

Moreover, as Judge Barbier expressed in a bench trial context, the objectives of *Daubert* are no longer implicated. *Deville v. Comar Marine Corp.*, U.S. Dist. LEXIS 60018 at *2 (E.D. La 2009) (quoting *Daubert*, 509 U.S. at 596). Instead: "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate avenues through which to challenge the merits or conclusions of an expert's testimony. *Id.* (denying a *Daubert* motion to exclude expert testimony on the grounds that the testimony could be appropriately challenged at trial); *cf. Johnson v. Big Stores, Inc.*, U.S. Dist. LEXIS 35316 at *19, 28 (E.D. La. 2008) (Judge Vance noting that challenges to expert reliance data in a bench trial "pertain to the *weight* and not the admissibility"). Plaintiffs disagree about the proper scope of repair for the Hernandez house and all Plaintiffs' purported *Daubert* arguments are grounded in those differences. None of their challenges, however, are properly brought under *Daubert* because they each go to the weight – not the admissibility – of KPT's expert opinions.

### III.   ARGUMENT

Plaintiffs make seven summary challenges to the merits or conclusions of KPT's experts. None of these challenges question the qualifications of the KPT experts or the reliability of the KPT experts' testimony under *Daubert*. Instead, Plaintiffs point to the conclusions with which they disagree and ask this Court to engage in a premature determination of the ultimate issues at trial. Plaintiffs not only mischaracterize the KPT experts' testimony; more fundamentally, Plaintiffs improperly use the vehicle of a *Daubert* motion to address substantive issues to the court in the eleventh hour. Such challenges go to the weight of the expert testimony at trial rather than the admissibility beforehand. *Huss v. Gayden*, 571 F.3d 442, 452-55 (5th Cir. 2009) (differences among

experts on a substantive point in question "bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility"); *Canal Breaches Consol. Litigation*, No. 05-4182, U.S. Dist. LEXIS 8841 at *205 (E.D. La. 2010) ("[c]ourts should not [be] lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility"). Accordingly, this Court should reject Plaintiffs' motion.

### A. Plaintiffs' Argument With Respect To The Interpretation Of The Building Code Mischaracterizes KPT's Position And Goes To The Weight, Not The Reliability, Of KPT's Expert Opinions.

Plaintiffs do not cite a single case in support of their argument that this Court should exclude KPT's expert testimony under *Daubert* for purportedly contradicting the building code. Indeed, Plaintiffs do not question the reliability of KPT's expert opinions – they merely claim that the KPT experts' conclusions with respect to whether the six-inch rule for free conductors is "discretionary" are "unreasonable." As such, Plaintiffs fail to provide any viable basis under *Daubert* on which this Court could rule. *See, e.g., Johnson v. Circle K Stores, Inc.*, No. 2:09-cv-31, U.S. Dist. LEXIS at *4 (M.D. Fl. 2009) (admitting expert testimony with respect to the International Building Code and Life Safety Code where the opposing party improperly objected under *Daubert* "on relevance and credibility issues rather than upon the scientific method and techniques used by the expert"). Plaintiffs can challenge whether KPT's expert opinions on the meaning, interpretation and implementation of the building code are reasonable through cross-examination or by their own experts' opinions at trial.

Plaintiffs also ignore the testimony of their own experts with respect to the strictness of the 6-inch rule. Even Plaintiffs' experts recognize that the six-inch rule may not be rigid and may be subject to interpretation by a building inspector:

5

> Q. [I]f the code is read in a way such that you have to have six inches [and] I'm a homeowner and I want to change it out or I want to have something changed that requires the wires to be cut, you would automatically be violative of the code with the first cut...is that your understanding of how the code is supposed to be read?
>
> A. I'm not sure. I mean I think that's the way it's read. But I guess the issue is what is a building inspector going to do when he comes in, electrical inspector when he comes in, I mean if you have a house that has one wire that's five inches, is he going to make you do a tremendous amount of work, or are there some other alternatives to fix the problem? I don't know the answer to that."

(Deposition Testimony of Donald Galler at 177.19-179.18.) Mr. Galler's testimony demonstrates the point: there may not be a clear standard and this is not a *Daubert* issue. It is for the Court to weigh after the substantive evidence is presented at trial.

### B. Whether Copper Ground Wires And Other Copper Components In Plaintiffs' House Can Be Cleaned Is A Substantive Issue Which Does Not Belong In A *Daubert* Inquiry.

The focus of a *Daubert* challenge "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. 579, at 595. Here, Plaintiffs do not challenge the principles or methodology of KPT's experts with respect to the cleaning of the copper ground wires and other electrical components at issue. Instead, Plaintiffs attempt to challenge the merits of KPT's expert opinions by arguing that "Mr. Canzoneri does not explain why corrosion . . . can be likened to 'paint.'" (*See* Plaintiffs' Motion at Section B, p.6.) Plaintiffs then merely state without any basis or citation that "[n]either Mr. Canzoneri, nor any other Knauf expert, cites any authority to support the notion that corrosion on and in copper and silver components of electrical equipment can be cleaned." (*Id.*) Plaintiffs' claims are a misstatement of KPT's expert opinions and testimony.

Nowhere in Mr. Canzoneri's testimony does he liken corrosion to paint; and

6

contrary to Plaintiffs' assertion, he does cite to a provision of a building code that allows ground wires to be cleaned. In addition, KPT's repair protocol for the Hernandez house does not call for cleaning, but for the clipping of live and neutral wires to establish a clean connection with new receptacles and switches. (*See* Roy Carubba, Scope of Work, attached as Ex. A.) KPT's experts, Dr. Lee and Dr. Perricone, address the "pit" argument and what the impacts are of the tarnish film on electrical wires. (*See* Expert Report of Dr. Matthew Perricone and Dr. Richard Lee, at 13-16, attached as Ex. B.) Plaintiffs ignore this scientific testimony and its relevance to the issue of cleaning copper wires and other copper components in the Hernandez house.

Further, even Plaintiffs' own experts express uncertainty as to whether the copper wires can be cleaned. (*See* Deposition Testimony of Dean Rutila at 76.22-77.1: stating that "you might be able to" clean the copper wire "but it certainly would be a very important question"; Deposition Testimony of Bradley Krantz at 156.19-20: "If you're to go in and try and clean that off, you can probably clean the surface reasonably well"). Plaintiffs' arguments, which grossly misstate KPT's expert testimony and ignore other critical scientific evidence, at best go to the weight of KPT's expert opinions and do not establish a basis under *Daubert* for a challenge to KPT's expert testimony.

  C. **Plaintiffs Only Challenge The Conclusions Drawn From The CPSC And Sandia Reports, Not The Methodology Of The KPT Experts' Investigation Of Safety Wires In The Houses.**

Plaintiffs next seek to bar KPT's experts from drawing "inferences" that none of them draw in their reports. (*See* Plaintiffs' Motion at Section C, p.7.) Namely, Plaintiffs misstate the "inferences" purportedly drawn by KPT's experts from the CPSC and Sandia Report, and claim: "That is not what the report says[.]" (*Id.*) Challenging the inferences made by experts from reliance materials such as the CPSC and Sandia Labs reports do

not form the basis for a *Daubert* challenge. *Daubert*, 509 U.S. 579 at 595 (a challenge to expert testimony "must be solely on principles and methodology"). KPT's experts are entitled to draw conclusions from the CPSC and Sandia reports in the same way Plaintiffs' experts are. It is undisputed that neither the CPSC, nor any other government agency, has concluded that there is a fire safety issue in houses containing Chinese drywall. That the CPSC and other laboratories under CPSC direction continue to do work on this issue does not change the fact that to date, after all of the investigation they have currently conducted, no such fire safety hazard in houses containing Chinese drywall has been identified. The draft nature of the CPSC and Sandia reports and the continuing investigation of these government agencies, as pointed out by Plaintiffs, underscore the importance of rejecting these reports as evidence in this case. While experts in this case are free to rely on this information if it is the type of information reasonably relied upon by individuals in their field, these government reports do not contain the indicia of reliability that is afforded to government records that are admissible under a hearsay exception.

**D. Plaintiffs Incorrectly Claim That KPT's Experts Ignore The Battelle Corrosivity Classifications And Inappropriately Make An Argument On The Merits.**

Plaintiffs are incorrect to claim that KPT's experts "ignore the accepted, bedrock principles" such as the Battelle corrosivity classifications and failure standards. (*See* Plaintiffs' Motion at Section D, p.9.) KPT's experts do not ignore these standards at all, but rather disagree about the relevance of these standards in the context of the remediation alternatives available for the Hernandez house. The Battelle corrosivity standard is not a correct "fit" because it does not account for the removal of drywall from

8

the house. Plaintiffs' conclusions and the application of Battelle are only correct if a persistently corrosive environment exists. Plaintiffs cannot account for this change in environment and have not provided a time frame in which failure would possibly occur – if ever – once the drywall is removed.

Moreover, just because Plaintiffs claim that the Battelle classification is a bedrock principle does not make it so. The value and scope of the Battelle classification standard is a substantive issue in dispute which belongs before this Court at trial, not a *Daubert* inquiry. Here, where Plaintiffs have offered no evidence of failure analysis with regard to the Hernandez house electrical system and electronics located therein, mere reference to a possible Battelle corrosivity level does not in and of itself establish that product failure is assured. KPT's experts provide substantial evidence to the contrary – that the electrical system in the Hernandez house is not subject to failure and with removal of the source of the corrosivity, any tarnishing of wires would not be likely to cause failure at a later date.

### E. Plaintiffs Misstate The Relationship Between Contact Resistance Tests And Compliance With Standards, Misstate The Purpose Of Measurements And Make An Inappropriate Claim On The Merits.

Plaintiffs do not even make a direct attack on KPT's copper coupon testing because they misstate the purposes of such testing. Copper coupon testing performed by Dr. Lee and Dr. Perricone was never intended to serve as a measurement of contact resistance. Plaintiffs improperly cite the Chudnovsky paper to attack the viability of the copper coupon tests performed in the houses. (*See* Plaintiffs' Motion at Section E, p.10.) Plaintiffs overlook the fact that the Chudnovsky paper deals with silver corrosion, not copper corrosion. KPT's experts, Dr. Lee and Dr. Perricone, applied the valid standard for what they were trying to measure – copper sulfide's potential resistance as an

9

insulator. Even after a careful review of Plaintiffs' motion on this point, it remains unclear what they contend Dr. Lee and Dr. Perricone are doing wrong. Dr. Lee's and Dr. Perricone's lab work certainly complies with established testing methods, and Plaintiffs appear to be confused about what tests were taken and for what purpose.

Plaintiffs are not entitled to invent an argument, attribute it to KPT's experts, and then challenge that argument by way of a *Daubert* motion – which is precisely what they have done here. Plaintiffs' misstated claims are, at best, substantive issues of weight for this Court to decide at trial and not beforehand.

### F. Plaintiffs Grossly Misstate Dr. Beyler's Opinions With Respect To The Impact Of Copper Sulfide Film On Wires And Fail To Challenge The Expert's Methodology.

Again, Plaintiffs have misstated what one of KPT's expert has opined. Plaintiffs claim that Dr. Beyler has opined that copper oxide films are the same as copper sulfide ones. First, this is not what Dr. Beyler said in his report. Dr. Beyler, who is being deposed as this Response is being written, provided a 36-page report that provides detailed opinions that are based on his independent testing of electrical wiring, electrical systems, an analysis of the CPSC and Sandia Labs Reports and other learned treatises. (*See* Expert Report of Dr. Craig Beyler, attached as Ex. C.) Section F of Plaintiffs' motion is entirely based on one sentence in the introduction to Dr. Beyler's report, from which Plaintiffs infer an opinion that Dr. Beyler has never offered and does not intend to offer. Plaintiffs' arguments here have nothing to do with the actual opinions that are detailed in Dr. Beyler's report. In any event, their arguments again would be the subject of impeachment at trial as they go to weight rather than the methodology or qualifications of Dr. Beyler.

> G. **Dr. Lee's And Dr. Perricone's Opinions About The Unique Environment Found In The HVAC System And The Lack Of Pitting Outside That Environment Are Well-Supported By Their Extensive Testing And Analysis Of These Issues.**

Unlike the *Germano* trial, where Plaintiffs' experts rendered unchecked opinions, KPT intends to offer established expert opinions that directly contradict some of Plaintiffs' expert's opinions including those of Scully, Krantz and Galler. According to Plaintiffs, the KPT experts believe that pitting corrosion can "only occur on HVAC coils where visible condensation exists." (*See* Plaintiffs' Motion at Section G, p.13.) This is not at all what Dr. Perricone and Dr. Lee assert. KPT's experts do not reject the proposition that water must be present in order for corrosion to occur. KPT's experts do distinguish the level, type, and mechanism of tarnishing on HVAC coils from that seen on other materials in the house because of the unique environment found in HVAC system. This environment includes cyclic condensation and drying that can cause a transition from superficial surface copper tarnishing to pitting corrosion. (*See* Expert Report of Dr. Matthew Perricone and Dr. Richard Lee, at 9). The presence of liquid water on the surface of copper creates an aqueous environment that provides an avenue for multiple corrosion mechanisms to occur. (*Id.* at 9-10). This unique environment, which includes the presence of liquid water, is not presented outside of the HVAC system, in other portions of the house. Drs. Lee and Perricone then assert that the impact of hydrogen sulfide gases on exposed copper outside of this aqueous environment is different than on HVAC coils:

> High air flow rates within HVAC systems increase the amount of airborne molecules to which the copper coils are exposed thereby increasing the potential for reaction. The low part per billion (ppb) concentrations of molecules like H2S in the air will therefore have a concentrated impact on

> the copper in HVAC coils because of the large volume of air delivered to this location.
>
> Copper reactivity coupons placed within the returned plenums of residences with Chinese drywall have consistently demonstrated sulfide tarnished layers significantly thicker than those placed in locations immediately adjacent to Chinese drywall for the same type of period of time. Appendix D2 contains a summary of the copper reactivity coupon thickness measurements.

(*Id.* at 10).

In addition to copper coupon testing, microscopic evaluation of exposed copper materials in the house confirm that a different type of tarnishing and pitting corrosion is occurring in the HVAC environment, even if such exposed copper is near a location where condensation is likely. (*See id.* at 13-14 ("Cross sections of wires removed from outlets near air conditioning supply vents or diffusers (Appendix A-1(9): Figures 52, 77, 78, 79) cannot be distinguished from wires that are located away from these vents.")

KPT's experts therefore disagree with Plaintiffs's experts concerning the impact of water on tarnishing seen on exposed copper surfaces outside of the HVAC context, particularly in the event that the source of hydrogen sulfide is removed:

> In a house with Chinese drywall removed, the lack of continuing source of H2S will arrest the growth of the tarnish film. Newly exposed copper surfaces will have a tendency to oxidize and form a passive oxide, CuO2O, as would be expected on wires and plumbing in any house.

(*Id.* at 15). This disagreement is not an appropriate issue to resolve through a *Daubert* challenge. Accordingly, Plaintiffs' claim suffers from the same flaw as all of the other claims in its motion: it inappropriately attempts to usurp the function of trial by waging a substantive argument in the form of a *Daubert* challenge. The law of the Fifth Circuit is clear on this point: a *Daubert* motion is not the appropriate forum for challenging the core opinions of an opposing expert. *Huss*, 571 F.3d 442, at 452.

IV. **CONCLUSION**

For the foregoing reasons, this Court should find a *Daubert* inquiry is an inappropriate forum for Plaintiffs' arguments, which go to weight and are proper for this Court to determine at trial rather than now. This Court should reject Plaintiffs' motion in its entirety.

                                         Respectfully submitted,

                                         /s/ Donald J. Hayden
                                         Donald J. Hayden
                                         **BAKER & MCKENZIE LLP**
                                         1111 Brickell Avenue
                                         Suite 1700
                                         Miami, Florida 33131
                                         Telephone: (305) 789-8966
                                         Facsimile: (305) 789-8953
                                         E-mail: Donald.hayden@bakernet.com

                                         Douglas B. Sanders
                                         Richard Franklin
                                         **BAKER & MCKENZIE LLP**
                                         130 E. Randolph Dr.
                                         Chicago, IL 60601
                                         Telephone: (312) 861-8075
                                         Facsimile: (312) 698-2375
                                         Email: douglas.b.sanders@bakernet.com

                                         Kerry Miller (LA Bar No. 24562)
                                         Kyle A. Spaulding (LA Bar No. 29000)
                                         **FRILOT L.L.C.**
                                         1100 Poydras Street
                                         Suite 3700
                                         New Orleans, Louisiana 70163
                                         Telephone: (504) 599-8194
                                         Facsimile: (504) 599-8145
                                         Email: kmiller@frilot.com

                                         *Attorneys for Defendant, Knauf*
                                         *Plasterboard (Tianjin) Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served upon all parties by electronically uploading the pleading to LexisNexis File & Serve and filed via CM/ECF in accordance with procedures established in MDL 2047, on this 12th day of March, 2010.

/s/ Donald J. Hayden