IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * * * * | MDL Docket No. 2047 SECTION L JUDGE FALLON MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * *

**THIS DOCUMENT RELATES TO:** *Hernandez v. Knauf Plasterboard (Tianjin) Co. Ltd. et al.*, Case No. 09-6050 (E.D. La.)

**DEFENDANT KNAUF PLASTERBOARD (TIANJIN) CO. LTD.'S MEMORANDUM IN SUPPORT OF MOTION TO BAR BRADLEY KRANTZ'S PREVIOUSLY UNDISCLOSED THRESHOLD FAILURE CALCULATIONS**

Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT") submits this Memorandum in Support of its Motion to Bar Bradley Krantz from testifying to or introducing any evidence with respect to failure of copper wires based on failure calculations. On the Saturday afternoon before the start of trial on Monday, plaintiffs' produced a table, entitled *Examples of Hernandez Home Components with Actual Corrosion Thickness Exceeding the Battelle Three Year Threshold Predicting Component Failure.* (*See* Table, attached as Ex. 1, recently marked as PX 591.) The email sending the exhibit indicates that they are producing "new documents we just received from Krantz." (*See* Email, attached as Ex. 2.) The table is similar to a table contained in Mr. Krantz's February 12, 2010 report, except for the last column, which did not appear in that report. (*See* February 12, 2010 Report, attached as Ex. 3.)

KPT cannot state for certain what Mr. Krantz intends to testify about with respect to that last column, but on its face, it appears that Mr. Krantz has performed some sort of calculations that purport to show the wires to be above the "Battelle Three Year Threshold Predicting Component Failure." (*See* Ex. 1.) Mr. Krantz's February 12, 2010 report does not reference a Battelle three-year threshold for component failure. (*See* Krantz Report.) There is a vague mention of growth rates of tarnish film and an indication that no such calculations had been done – "if we were to back calculate," but to the extent any standard is cited it is the ISA standard, not Battelle. (*Id.* at 4.) Nowhere in his report does Mr. Krantz even cite to Battelle. The report discusses (although without actually applying it to wires) another completely different standard, the API 579-1 standard, with respect to potential failure or minimum fitness for service (*i.e.*, failure). (*Id.* at 3-4.)

Mr. Krantz report was filed on February 12, 2010, according to the agreed upon deadlines and all reliance materials were to be produced at that time. Based upon the report and reliance materials provided, Mr. Krantz was deposed on March 5, 2010 in Waltham, Massachusetts. The Battelle standard or reference to the Battelle standard were not included in the reliance materials. In his deposition, he did not indicate that he had further opinions regarding product failure for devices from the Hernandez house that was based upon the Batelle threshold for component failure.

Now on the eve of trial, Mr. Krantz has produced an exhibit that purports to base failure on some quantitative analysis or assessment. When deposed about the API standard (the standard actually referenced in his report), Mr. Krantz did not run any calculations under API to assess potential failure:

> Q:  You cite to fitness-for-service provisions in the API. Did you do any fitness-for-service calculations for any of these wires or any of these components?
>
> A:  No. The example we used here was just to illustrate that, the reason for our use of maximum penetration as opposed to an average. We did not do a fitness-for-serves in the same respect for these wires.
>
> \* \* \*
>
> Q.  Well, my understanding of the API code is it's a minimum measured thickness, would that be the same thing?
>
> A.  That would be the same thing. You can either measure pit depth and subtract that from the known thickness or known original thickness or presumed thickness, or you can measure remaining thickness.
>
> Q.  And did you do that?
>
> A.  It has to do with what methods you use.
>
> Q.  Did you did you do that for any of these?
>
> A.  No, we did not measure the remaining thickness.

(Krantz Deposition Tr. at 137:5-13, 137:20-138:9.) Mr. Krantz indicated that the whole API exercise was included only as a hypothetical and that he had no intention of doing the calculations. (Krantz Deposition Tr. at 138:110-18.)

Again, in the context of the API standard, Mr. Krantz indicated that they had not done any measurements on thickness of wires and that their testing to date indicated that wires were not functionally damaged.

> Q.  Well, actually I don't think API 579 or section part four or part five deal with pits, do they?
>
> A.  That's true. API, typically what they do when they take measurements is they're using an ultrasonic where they're measuring from the outside so they get remaining thickness, rather than measuring from the inside out where you would have pit depth.

Q. And again, you haven't done that; you haven't calculated remaining thickness here?

A. No, we haven't.

Q. Would the remaining thickness of the wire impact its functionality electronically?

A. Only if there as much – if there was enough attack where it was being completely consumed and would break.

Q. So what is your concern about electrical functionality then?

A. Electrical functionality on a wire is typically, one is to conduct current, and two is at its termination point where there's a connection is that contact resistance.

Q. Have you done any measurements of contact resistance?

A. We did a limited number.

Q. And what were the results of those?

A. The results were that there was low resistance across those contacts.

(Krantz Dep. at 142:20-143:24.)

At the end of the API discussion, Mr. Krantz was asked whether he had conducted any other analysis of remaining life.

Q. Is there any other – have you done any other sort of remaining life analysis? I mean I guess you used this by way of example, but you don't actually do a fitness-for-service or remaining life calculation.

A. No, no, we don't.

Q. So what would be your bases for an opinion that the electrical wiring left in the house after the source is removed is going to have a diminished life?

A. It's based on things that John Scully said, and the unknown that if we leave – on the ground wire you leave corrosion in place, you don't know what is going to occur there in the future.

(Krantz Deposition Tr. at 154:16-155:6.) Mr. Krantz answered that they did not do any

other remaining life calculation, and then he cited two bases for his opinion that the wires left in the house would have a diminished life – John Scully and the unknown.

Now, it appears, Mr. Krantz is going to take another shot at providing an opinion – based on a different standard than what is in his report – that the future functional life of wires is in jeopardy. If plaintiffs, had wanted to secure Mr. Krantz's testimony in that regard, they needed to disclose it to KPT, so that Mr. Krantz could have been questioned about it. As it stands, KPT does not know what Mr. Krantz did to calculate the "multiples over failure threshold," what the "Battelle three year threshold predicting component failures" is or how a standard referencing "component failures" will apply to wiring or even electrical devices and appliances, if that is the intent, because the calculations were not disclosed in Mr. Krant'z report or provided sooner than two days before trial in the form of a single column on a one-page table.

KPT would be prejudiced if Mr. Krantz were allowed to shift the basis of his presumed opinion regarding the future life of wires to a new, previously undisclosed standard and without any back-up or support calculations. Mr. Krantz's table relying on the "Battelle Three Year Threshold" and any testimony about such a threshold or opinions that rely on such a threshold should be barred.

Respectfully submitted,

BY: s/Douglas B. Sanders

KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
PAUL C. THIBODEAUX (#29446)
**FRILOT L.C.**
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504)599-8194
Facsimile: (504)599-8145
Email: kmiller@frilot.com

-AND-

DONALD J. HAYDEN (FL Bar No. 0097136)
**BAKER & MCKENZIE LLP**
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, FL 33131
Telephone: (305) 789-8966
Facsimile: (305) 789-8953
Email: donald.j.hayden@bakernet.com


DOUGLAS B. SANDERS (IL Bar No. 6256621)
**BAKER & MCKENZIE LLP**
130 E. Randolph Drive
One Prudential Plaza
Chicago, IL 60601
Telephone: (312) 861-8075
Facsimile: (312) 698-2375
Email: douglas.b.sanders@bakernet.com

## CERTIFICATE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 2047, on this 14th day of March, 2010.

s/Douglas B. Sanders

CHIDMS1/2773121.1