IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  CHINESE-MANUFACTURED | * | MDL Docket No. 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAG. JUDGE WILKINSON |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THIS DOCUMENT RELATES TO:** *Hernandez v. Knauf Plasterboard (Tianjin) Co. Ltd. et al.*, Case No. 09-6050 (E.D. La.)

---

**KNAUF PLASTERBOARD (TIANJIN) CO. LTD.'S PRE-TRIAL BRIEF**

---

I.   **INTRODUCTION**

Defendant Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT") submits this brief with respect to the proper scope of repair for the Hernandez house and measure of damages as a matter of law.  Plaintiffs and KPT agree that the cost to repair a house with Chinese drywall is an appropriate measure of damages in this case. Plaintiffs seek a repair that amounts to more than what the house cost to build.[1]  KPT will show that the sweeping remedy that Plaintiffs propose is an inappropriate measure of damages because it exceeds the scope of what is necessary to repair the Hernandez house given KPT's equally

---

[1] In their Pre-Trial Brief, Plaintiffs raised a February 2009 Appraisal Report.  Plaintiffs have agreed that the appraisal value was improperly raised and is contrary to the joint stipulation of the parties.  KPT did not submit its own Appraisal Report by a local appraiser – because of the joint stipulation – which indicated the value of the Hernandez property on March 10, 2010 to be $197,500 ($40,000 less than the value provided by Plaintiffs).  This Court should not consider either appraisal value, and KPT understands that Plaintiffs will withdraw the appraisal value set forth in their Pre-Trial Brief.

effective and less costly alternative.

## II.    QUESTION BEFORE THIS COURT

Pursuant to the Joint Stipulation of the parties, the *Hernandez* Plaintiffs raise claims in redhibition and fitness for ordinary use against KPT as the Chinese manufacturer of drywall used in their house. The plaintiffs claim that off-gassing from Chinese drywall has caused damage to other materials in the Hernandez house, including damages to their copper wiring, plumbing pipes and other electronic equipment in the house.

The issue for this Court to decide is what actual, proven damage is caused by the odor and tarnishing in the house and how that damage can be remedied.  KPT does not dispute, in this case, that tarnishing of certain metallic surfaces and odor are present in Hernandez house or that such effects are caused by off-gassing from the Chinese drywall. But Plaintiffs offer this Court a drastic remedy – gutting the house to the studs – based almost entirely on unproven claims of potential future damage.  KPT offers a far less burdensome option that fully addresses the property issues associated with Chinese drywall in the Hernandez house: removal of the drywall without the replacement of un-impacted components. The components that KPT will demonstrate should not be removed include:

- electrical wiring; (*see Hernandez* Trial Testimony of Dr. Craig Beyler at 57.20-58.4; 61.3-6 (stating that copper wires remain fully functional));

- copper plumbing; (*see* Expert Report of Dr. Richard Lee and Dr. Matt Perricone at 15 ("No impact on pipe performance or remaining life is expected"));

- electronic appliances; (*see Germano* Trial Testimony of Donald Galler at Vol. I,

Afternoon Session, 149.20-150.16, and *Hernandez* Deposition Testimony of Dean Rutila at 102.11-23.)

KPT's remedy will fix Plaintiffs' house and enable them to return in sixty days.  (*See* Expert Report of Roy Carubba, at 3.)

### III.   THE PROPER MEASURE OF DAMAGES IN THIS REDHIBITION ACTION IS THE COST OF NECESSARY REPAIRS TO FIX THE HERNANDEZ HOUSE.

The proper measure of damages in a redhibition action is "the cost of repairs necessary to make the thing whole."  *Doell v. Lachney*, 544 S.2d 519, 523 (La. Ct. App. 1989); *see also St. Martin v. Mobil Exploration & Producing U.S., Inc.*, No. 95-4128, U.S. Dist. LEXIS 12808, at *28-29 (E.D. La. 1998) ("[a]s a general rule of thumb, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred"); *Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 304 (5th Cir. 1976) ("the amount of [property ] damages must be determined by the cost of repairs to the property").

That the property is real or personal is irrelevant to repair costs being an appropriate measure of damages.  *See, e.g., Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1088 (5th Cir. 1982) (quoting *Freeport Sulphur*, 526 F.2d at 304) ("When … 'injury to property and the market value of that property is unknown, the amount of damages must be determined by the cost of repairs'"); *Mossy Motors Inc. v. Sewerage and Water Board of New Orleans*, 753 So. 2d 269, 280 (La. Ct. App. 1999) (reducing the trial court's damages award by the full amount for cost of repairs to a services building where the plaintiff could not prove the extent and cost of necessary repairs).

If equally effective, alternative damage remedy options are presented, the more cost-effective option constitutes the proper measure of damages in an action concerning property damages. *Doell v. Lachney*, 544 S.2d 519, at 523 (lowering the damage award in a redhibition action where the trial court "awarded the cost of an entire new roof when only one side of this four-sided roof leaked and needed replacement"); *see also Simoneaux v. Amoco Production Co.*, 860 S. 2d 560, 572-75 (La. Ct. App. 2003) (reversing the trial court judge's $12 million award for environmental damages to property and reinstating the jury verdict's $375,000 damages award where the "defense experts refuted the plaintiffs' experts' testimony on the necessity, method and cost of cleanup of the [property]"); *Ewell v. Petro Processors of Louisiana, Inc.*, 364 So. 2d 604, 608-09 (La. Ct. App. 1979) (limiting the plaintiffs' recovery in a toxic waste action in which the plaintiffs sought $170 million to $25,000 after considering "the extent of the damage; the use to which the property may be put; extent of economic loss, both as to value and income; and the cost of and practicability of restoration."); *Louisiana Civil Jury Instructions*, Louisiana Civil Code Article 2315: "award should be designed to fully and fairly compensate the plaintiff...and *should not go beyond such reparation* … [do not] award speculative damages for injuries which … plaintiff might have suffered or might suffer in the future; on the other hand … make an effort to reasonably approximate the damages which plaintiff has proved are more probable than not") (emphasis added).

## IV.    KPT WILL SHOW THAT ITS REPAIR OPTION WILL FIX THE PROBLEMS IN THE HERNANDEZ HOUSE BY REMOVING THE SOURCE OF THE ODOR AND TARNISHING.

The appropriate repair option under the law is to eliminate the source of odor and tarnishing in the Hernandez house – the Chinese drywall – without removing the un-

impacted components. *See Simoneaux*, 860 So. 2d 560, at 572-75; *Mossy Motors*, 753 So. 2d 269, 280.  KPT's repair option will fix the issues associated with Chinese drywall in the Hernandez house without performing the high-cost overhaul that Plaintiffs propose. In other words, KPT's repair option will do what is necessary to fix the tarnishing and odor issues in the Hernandez house in a more cost-effective way than Plaintiffs' approach would.

KPT's fire engineering expert, Dr. Craig Beyler, explains why the copper wires that run through the Hernandez house are fully operational.  (*See Hernandez* Trial Testimony of Dr. Craig Beyler at 57.20-58.4; 61.3-6.)  Dr. Beyler demonstrates that the tarnishing on the wires can be cleaned and that the life of the wires is in no way diminished.  He also shows that the wires, once the Chinese drywall is removed, pose no fire or other safety risks in the Hernandez house whatsoever.  (*See Hernandez* Trial Testimony of Dr. Craig Beyler at 65.7-11: "I think the wire can be safely used as part of the remediation.").

Dr. Richard Lee and Dr. Matt Perricone, KPT's corrosion science experts, will explain in scientific terms why removal of electrical wiring and copper plumbing from the Hernandez house is not necessary.  (*See* Expert Report of Dr. Richard Lee and Dr. Matt Perricone, at 10-15.)  They will show that the removal of Chinese drywall from the Hernandez house will eliminate the cause of sulfur-related tarnishing, corrosion and odor. (*Id*.)  They will demonstrate "no evidence of wire failure" that justifies removal.  (*Id*. at 11.)  The current carrying capacity of the copper wires in the Hernandez house has not been negatively impacted, nor have the structures of these wires been compromised.  (*Id*.) Mark Hartenstein, KPT's electrical expert, will confirm based on his experience in the

field and actual observation of the Hernandez house that the wires show no signs of failure.  (*See* Deposition Testimony of Mark Hartenstein at 33.7-17.)

Dr. Lee and Dr. Perricone will also explain why removal of the copper plumbing from the Hernandez house is unnecessary.  (*Id*. at 14-15.)   While visual tarnishing of the copper plumbing has been observed, the testing performed on cross sections of the pipes reveals that "the tarnish film on unprotected copper plumbing fixtures is superficial and will not compromise the structural integrity of the components." (*Id*. at 14.)   As Dr. Lee and Dr. Perricone demonstrate, the oxide scale that forms on the interior diameter of the pipe due to water service "is significantly thicker than anything observed on the outer surface due to exposure to Chinese drywall." (*Id*. at 14-15.)   Bruce Fuselier, KPT's plumbing expert, will confirm this through his experience in the plumbing field and observations in the Hernandez house. (*See* Deposition Testimony of Bruce Fuselier, at 10.15-11.1.) While Mr. Fuselier will acknowledge that some of the plumbing pipes have black residue, he explains that the pipes do not need to be removed.  (*Id*.)

Contrary to Plaintiffs' experts' speculations on this point, Dr. Lee and Dr. Perricone will explain that pits observed at the surface of the copper wiring and plumbing components are not self-sustaining and will not continue to grow once the Chinese drywall is removed.  (*Id*.)  As such, "[n]o impact on the pipe performance or remaining life is expected." (*Id*.)

Plaintiffs' experts Donald Galler and Dean Rutila have conceded certain electronic devices do not reveal significant corrosion.  (*See Germano* Trial Testimony of Donald Galler at Vol. I, Afternoon Session, 149.20-150.16 (conceding that the circuit board of the Morgan's television in the Morgan house "didn't have very much corrosion

on it"), and *Hernandez* Deposition Testimony of Dean Rutila at 102.11-23 (admitting that he could "not identify a link in any individual [electronic] device between failure status and sulfur gases," explaining: "In each of the [electronic] devices we found principally copper sulfide corrosion on devices, resistors and diodes and things like that, but not a direct link between any particular corroded element and the fact that the device was not working…normally")).

Finally, Roy Carubba, KPT's expert general contractor and registered Louisiana civil engineer, will explain how KPT's repair option will take sixty to ninety days to complete.  (*See* Expert Report of Roy Carubba, at 3.)  Mr. Carubba performed a visual inspection of the Hernandez house and conducted a thorough scope of work. (*Id.* at 1-3.) Notably, Mr. Carubba found that his team could repair the Hernandez house without removing the electrical wiring or plumbing fixtures.  (*Id.* at 3: "The sheathed wiring is acceptable in its present state … Plumbing fixture tarnish is discoloration only and can remain in place.").  Unlike Plaintiffs' cost estimate for replacement – which exceed $200,000 – Mr. Carubba concludes that his team will complete the repairs to the Hernandez house for less than $55,000, or $26.90 per square foot.  (*Id.* at Appendix B, 8.)

In short, KPT will demonstrate to this Court that its repair option will fix the problem associated with Chinese drywall in the Hernandez house.  KPT's repair option will eliminate the source of tarnishing and odor and thereby eliminate any risk of failure associated with Chinese drywall.  It is also significantly lower in cost than Plaintiffs' complete replacement proposal and will have the Plaintiffs back in their home in sixty to ninety days after repair has commenced.

## V.   PLAINTIFFS WILL FAIL TO MEET THEIR BURDEN OF PROVING THAT WHOLESALE GUTTING OF THE HERNANDEZ HOUSE IS APPROPRIATE IN LIGHT OF KPT'S REPAIR OPTION.

Plaintiffs bear the burden of proving the fact of damage and every aspect of damages in the Hernandez house by a preponderance of the evidence, such that the extraordinarily expensive (and sole) remedy that they offer this Court is justified.  *See Mitchell v. Popiwchak*, 677 So.2d 1050, 1057 (La. App. Ct. 1996) (holding that the plaintiffs "did not sustain their burden" in a redhibition action where, despite identifying specific damaged items, "did not establish that any of the repairs were 'for the preservation of' the house" as required under the statute); *see also Pizani*, 669 F.2d 1084, at 1088 ("plaintiff bears the burden of proof to show the amount, as well as the fact, of damages"); *Freeport Sulphur Co.*, 526 F.2d 300, 307 (5th Cir. 1976) (reducing the district court's damages award on the grounds that "a plaintiff is denied consideration for expenditure of repair costs beyond that necessary to restore its property to the condition it was in before the accident."); *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, No. 95-4128, U.S. Dist. LEXIS 12808, at *28-29 (E.D. La. 1998) (refusing to award the full damages sought by the plaintiff landowners because the plaintiffs' request to convert the marsh at issue into solid ground extended "far beyond what the Court perceives to be reasonable, in scope as well as cost").

Plaintiffs must also prove every aspect of damage claimed.  *Mitchell v. Popiwchak*, 677 So.2d 1050, 1057; *see also Pizani*, 669 F.2d 1084, at 1088 (holding that there is "no rule shifting this burden to the defendant every time a plaintiff succeeds in introducing into evidence some figure denominated as 'cost of repairs'"); *Amonfo v. Tate*, 623 F. Supp. 513, 518 (E.D. La. 1985) (holding that the plaintiff "bears the burden of

proving, by a preponderance of the evidence, each and every element of damage claimed" in the personal injury context).

Accordingly, it is Plaintiffs' burden to prove by a preponderance of the evidence that their remedy proposal, in every aspect, is more cost-effective than KPT's repair option. *See Pizani* 669 F.2d 1084, at 1088; *see also Freeport Sulphur*, 526 F.2d 300, 307; *Simoneaux*, 860 So. 2d 560, at 572-75; *Mossy Motors*, 753 So. 2d 269, 280. To date, Plaintiffs have failed to do so. While Plaintiffs will claim that their option is a repair, what they propose amounts to a full replacement. Plaintiffs, without scientific support, essentially adopt the tear-down approach used by home builders such as Beazer and Lennar – whose reasons for selecting such an approach may or may not relate to a proper measure of damages here. This approach would gut the Hernandez house to the studs and eliminate the electrical wiring, plumbing and electronics in the process.

Plaintiffs will not prove by a preponderance of the evidence that corrosion-related failure will occur *over time*, such that almost all building materials in the house – including the copper wiring, plumbing and electronics – must be removed and replaced. Nor will Plaintiffs able to show with any reasonable certainty that cross-contamination in any other way justifies removal of these components from the house. At best, Plaintiffs can show current surface impact to *some* materials.

Importantly, the copper wiring, plumbing and electronics can be repaired where necessary, and future failure eliminated, through the removal of Chinese drywall off-gassing and appropriate surface cleaning of the materials – which is precisely what KPT proposes. Plaintiffs cannot show why the extraordinarily high-cost approach to fixing the Hernandez house is justified when KPT's option fixes the problem without expending the

resources to remove the components that are not damaged.  By leaving the copper wiring, plumbing and electronics in the Hernandez house, KPT offers a remedy that will return the Plaintiffs to their home in less time and for less money than the drastic remedy option they endorse.

Plaintiffs' burden is not simply to submit a theory that will make them whole. They must instead demonstrate by a preponderance of the evidence why their solution, which guts the house to the studs, is preferable to KPT's repair method, which will fix the problem for a fraction of the cost.  *Simoneaux*, at 572-75.  In *Simoneaux*, the court found that the plaintiffs' damages theory for a $21 million damages award was "overkill" – and thus unjustified – in light of the defendants' more strategic option that fixed the problem for $375,000.  *Id.*   In the same vein,  KPT's expert testimony will show that Plaintiffs' wholesale gutting theory far exceeds what will make them whole.  KPT's repair option will remove the source of the tarnishing and odor problem in the Hernandez house without needlessly removing the fully operational components.  As such, Plaintiffs will fail to satisfy their burden here because they cannot show why their replacement approach is necessary in light of KPT's more cost-effective alternative that will fix the problem for far less.  *Simoneaux v. Amoco Production Co.*, 860 S. 2d 560, 572-75; *In the Matter of M&M Towing Co.*, No. 94-3264, U.S. Dist. LEXIS 2431 at *5 (E.D. La. 1997) (finding the plaintiffs failed to prove that the costs of debris removal were attributable to the defendant, noting that "the extent of damages [to property] is measured by the cost of repairs [and] a party incurring property damage is entitled to no more than restoration to the condition prior to the accident.").

## IV.    CONCLUSION

The scope and extent of remediation of the Hernandez house is the cost of a repair option that addresses the corrosion and odor issues associated with Chinese drywall. KPT proposes an option that fixes the problem for a fraction of the cost.  Plaintiffs' tear-down proposal, on the other hand, well exceeds what is necessary to repair the Hernandez house, and should not be adopted by this Court as an appropriate measure of damages.

Respectfully submitted,

/s/ Donald J. Hayden
Donald J. Hayden
**BAKER & MCKENZIE LLP**
1111 Brickell Avenue
Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8966
Facsimile:  (305) 789-8953
E-mail: Donald.hayden@bakernet.com

Douglas B. Sanders
Richard Franklin
**BAKER & MCKENZIE LLP**
130 E. Randolph Dr.
Chicago, IL 60601
Telephone: (312) 861-8075
Facsimile:  (312) 698-2375
Email: douglas.b.sanders@bakernet.com

Kerry Miller (LA Bar No. 24562)
Kyle A. Spaulding (LA Bar No. 29000)
**FRILOT L.L.C.**
1100 Poydras Street
Suite 3700
New Orleans, Louisiana 70163
Telephone:  (504) 599-8194
Facsimile:   (504) 599-8145
Email:   kmiller@frilot.com

*Attorneys for Defendant, Knauf*
*Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon all parties by electronically uploading the pleading to LexisNexis File & Serve and filed via CM/ECF in accordance with procedures established in MDL 2047, on this 15th day of March, 2010.

/s/ Donald J. Hayden