UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL     MDL DOCKET: 2047
PRODUCTS LIABILITY LITIGATION

SECTION:  L

JUDGE FALLON
MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO
CASE NO. 2:09cv-07628
_____/

## THE RYLAND GROUP INC.'S, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' ONMIBUS CLASS ACTION COMPLAINT

Defendants, The Ryland Group Inc.'s, ("Ryland"), by and through their undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss the Class Action Complaint ("Complaint") filed by Plaintiffs, Brad and Kerry Keller ("Ryland Homeowners").  In support thereof, Ryland submits the following Memorandum of Law in Support of their Motion to Dismiss and would state:

### I.  PRELIMINARY STATEMENT

The Omnibus Action is essentially a laundry list of claims without any pleading of specific facts relative to the Ryland Homeowners or Ryland.

Ryland built homes in Florida. The Ryland Homeowners reside in Florida.  Therefore, Florida substantive law applies to all claims against Ryland.

Ryland has been sued under the following counts:

> I) Negligence, II) Negligence Per Se, III) Strict Liability, IV) Breach of Express and/or Implied Warranties, V) Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes Section 718.203, VI) Breach of the Implied Warranty of Habitability, VII) Breach of Contract, XI) Private Nuisance, XII) Negligent Discharge of a Corrosive Substance, XIII) Unjust Enrichment, XIV)Violation of Consumer Protection

Acts, and XV) Equitable and Injunctive Relief and Medical Monitoring.

## II. ARGUMENT

### A. Ryland has a written contract with the Ryland Homeowner. The contract controls the claims in this case.

Attached hereto as Exhibit "A" is the affidavit of Joseph Fontana authenticating the Agreement of Sale that is the subject matter of this action between Ryland and the Ryland Homeowners. There is a written contract with the Ryland Homeowners who are plaintiffs in this action. In addition, the Ryland Homeowners were provided a warranty, as required by the Agreement of Sale. The terms of the parties' written contracts govern the claims asserted in this case against Ryland, other than personal injury claims.

### B. Ryland Homeowners' property damage claims against Ryland should be limited to breach of contract and express warranty. Tort claims should be dismissed, (except claims for personal injury) based upon the economic loss rule

Counts I, II, III, XI and XII are tort claims that should be dismissed based on the Economic Loss Rule.

The Ryland Homeowners' property damage claims against Ryland are limited by the economic loss rule to breach of contract or breach of express warranty, since Ryland Homeowners and Ryland have written agreements relating to the homes. Accordingly, the contractual privity economic loss rule bars any tort claims by Ryland Homeowners, absent an allegation of personal injury or damage to separate property. To the extent Ryland Homeowners allege viable tort claims for personal injury or damage to property other than the home itself, then Ryland respectfully submits that damages in the case is limited to non-economic damages for personal injury and damages for the "other property." The Ryland Homeowners have not specifically pled damage to separate property.

It is axiomatic that when parties have a contractual relationship, the parties may not simply "end-run" the terms of the agreement by asserting tort claims. A homeowner who contracts with a homebuilder to purchase a home cannot maintain tort claims against the homebuilder for conduct that is indistinguishable from acts that would support a claim for breach of contract. *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004). Rather, to avoid dismissal of a tort claim against a homebuilder, the economic loss rule requires a homeowner to allege some additional conduct on the part of the homebuilder which amounts to an independent tort, arising from a duty separate and apart from the homebuilder's duties under the contract. *Id.* The policy reason behind this rule is the assumption that the homebuilder and homeowner allocated the risk of a breach of contract through their contractual agreement. *Id.*

Thus, "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." *Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc.,* 620 So. 2d 1244, 1247 (Fla. 1993) *(citing East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 870 (1986)). The economic loss rule does not permit a homeowner to "circumvent the contractual agreement by . . . seeking a better bargain than originally made." *Indemnity Ins. Co.,* 891 So. 25 at 536.

The underlying conduct in support of homeowner tort claims against homebuilders is the allegation that the homebuilders sold homes that contain defective Chinese-manufactured drywall. These claims, "relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, [such that] no independent tort exists and the economic loss rule applies." *Premix-Marbletite Mfg.* v. *SKW Chems., Inc.,* 145 F. Supp. 2d 1348, 1358-59 (S.D.

Fla. 2001). Therefore, homeowners may not maintain tort claims for this alleged conduct that is indistinguishable from the acts that are also alleged to be the basis for a breach of contract. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So. 2d 1238, 1239 (Fla. 1996).

In *Fishman v. Boldt,* 666 So. 2d 273 (Fla. 4th DCA 1996) the purchasers of a home brought an action against the builder of a seawall which failed, which resulted in damages to the pool, the patio and the home, alleging negligent construction. The trial court entered summary judgment, disposing of the homeowners' tort claims. The district court of appeal affirmed stating as follows:

> "….The appellants sued the appellee, Bert Boldt, as the original builder of the seawall, for negligent construction. The trial court entered summary judgment for Boldt based on *Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc.,* 620 So. 2d 1244 (Fla. 1993). We affirm."
>
> "….In the instant case, the "product" purchased by the appellants was the home with all of its component parts, including the seawall, pool, and patio. Therefore, the pool, patio, and home were not "other property" which would exclude the application of the economic loss rule. *See also Sensenbrenner v. Rust, Orling & Neale Architects, Inc.,* 236 Va. 419, 374 S.E. 2d 55 (1988) (Cited in *Casa Clara,* 620 So. 2d at 1246, 1247 n. 8)."

*Id.* at p. 274

Similarly, in the case *sub judice* Ryland Homeowners are bringing an action for damages to the home and its component parts. Unless Ryland Homeowners can prove personal injury, all of their tort claims are barred by the economic loss rule.

In light of the foregoing, the homeowners' tort claims against all homebuilders, except for personal injury, should be dismissed because the allegedly wrongful conduct underlying these claims is indistinguishable from the acts that support the claims for breach of contract. *See Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where

4

damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."); *Weimar v. Yacht Club Point Estates, Inc., 223* So. 2d 100, 103 (Fla. 4th DCA 1969) ("[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract."); *Electronic Sec. Sys Corp. v. Southern Bell Tel. & Tel. Co.,* 482 So. 2d 518, 519 (Fla. 3d. DCA 1986) ("[B]reach of contract, alone, cannot constitute a cause of action in tort... [and] [i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.").

Homebuilders stand in a different position than the manufacturers because the manufacturers did not sell the complete structure. *Casa Clara Condo. Assoc. v. Charlie Toppino & Sons*, *Inc.,* 620 So 2d 1244 (Fla. 1993), established that the "product" the homeowners purchased in that case is the completed home, and found that the individual components and building materials were integrated into the product and did not constitute "other property."

Even assuming Ryland Homeowners were able to state viable tort claims for personal injury or damage to property other than the home itself, then Ryland respectfully submits that damages in those cases would be limited to non-economic damages for personal injury and damages for the "other property". In *Casa Clara,* the Florida Supreme Court held that the economic loss rule prohibited tort recovery when the product damages itself (in that case, the concrete, which was integrated into the completed structures) and causes economic loss, but does not cause personal *injury* or damage to any other property. In language that should define the scope of the homebuilders' economic loss rule defense in this case, the Court stated:

> "…The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of loss, one must look to the product purchased by the plaintiff, not the product sold by defendant. *King v. Hilton-Davis,* 855 F.2d 1047 (3d. Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished products-dwellings-not the individual components of those dwellings. They bargained for the finished products, not their various components. The property became an integral part of the finished product and, thus, did not injure 'other' property."
>
> *Id.* at p. 1247-1248.

As in *Casa Clara,* the products purchased by the Ryland Homeowners here is the home, not the individual components.

The same factual allegations are incorporated in the negligence claim as in the breach of contract count. Therefore, there is no damage to separate property or a separate tort pled. In *John Brown Automotive, Inc. v. Lewis J. Nobles,* 537 So.2d 614 (Fla. 2d DCA 1988), a verdict entered for the plaintiff on a misrepresentation claim, based upon the same events as the breach of contract claim, was reversed on appeal, based upon the economic loss rule. The economic loss rule also bars negligence claims against title insurers for performing an inadequate title search. *Ahern v. Fidelity*, 2009 WL 3242017 (M.D. Fla. 2009) and *Chicago Title Insurance company v. Commonwealth Forrest Investments, Inc.,* 494 F.Supp.2d 1332 (M.D. Fla. 2007). The tort claims against Ryland in this case should similarly be dismissed.

The Order and Reasons issued by Judge Fallon on January 13, 2010, MDL Case No. 2047, In Re: Chinese Manufactured Drywall Products Liability Litigation, states:

> "….The Florida Supreme Court, in applying this test, concluded that when homeowners purchased finished homes, and not the individual components of those homes, the finished homes constitute the "product." *Id.* at 1247; *see also, Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 741-42 (11th Cir. 1995); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F.Supp.2d 593, 602 (E.D. La. 1998); *Progressive Ins. Co. v. Monaco Coach Corp.*, 2006 WL 839520, *3 (S.D. Miss. Mar. 29, 2006). Accordingly, the "product" for purposes of the ELR for those Plaintiffs in the instant matter who purchased sheets of drywall is the drywall, not the completed homes. Thus, these Plaintiffs' tort claims for economic losses are not barred by the ELR."
>
> *Id.* at P. 18.

Further, the Order states:

> "….Additionally, the Plaintiffs are not in privity with the Manufacturer and Distributor Defendants, so they, unlike the plaintiff in *East River,* are not left with breach of contract and breach of warranty actions against these defendants (except in Louisiana where by statute the purchaser or ultimate consumer does have breach of warranty claims against the manufacturer under the LPLA)."
>
> *Id.* at p. 19.

The Order goes on to state the following:

> "….More recently, in I*ndemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004), the Florida Supreme Court attempted to resolve the confusion surrounding application of the ELR. The court reaffirmed the definition of economic losses as "disappointed economic expectations," "diminution in value of the product because it is inferior in quality," "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain."
>
> *Id*. at 536 n.1.

This Court then categorized the two different situations in which the ELR applies, (1) the contractual privity ELR where two parties are in contract, and (2) the products liability ELR where a defective product causes damage, but only to itself. *Id.* The court determined that the

factual situation before it did not fit into either ELR category because the suit was not for a defective product, but rather for defective services, and the parties (the manufacturers and homeowners) were not in privity of contract. *Id* at P. 22.

The court further stated as follows:

> "….In their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity ELR established by the Florida Supreme Court in *Indemnity Insurance Co. of North America v. American Aviation, Inc.,* 891 So. 2d 532 (Fla. 2004). The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contract breach, and in other limited circumstances. *Id.* at 536-37. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs". This issue is not presently before the Court and thus it declines to draw any further conclusions with regard to Plaintiffs' claims against Homebuilders.
>
> *Id.* at p. 30.

The issue of the contractual privity ELR is now before the Court and the Ryland Homeowners' claims for economic tort damages should be dismissed. While personal injury claims are an exception to the ELR, paragraphs 2646 and 2647 of the Omnibus Complaint merely state that plaintiffs "have incurred damages and/or personal injuries" without identifying which Plaintiff (if any) suffered personal injury. Plaintiffs should be required to plead personal injuries by specifically identifying which plaintiffs have suffered them.

WHEREFORE, Counts I, II, III, XI and XII should be dismissed based upon the contractual privity economic loss rule. To the extent that personal injury claims exist, they

should be pled specifically as to the individual homeowner and any tort claims for economic damages would still be barred.

### C. The Breach of Implied Warranty claims should be dismissed since the parties have contractually agreed to an exclusive express warranty.

Counts IV for breach of implied warranties improperly comingles claims for breach of implied warranty of merchantability and the implied warranty for fitness for a particular purpose. Counts IV and VI should be dismissed for two separate reasons.

First, Paragraph 18 of Ryland's Agreement of Sale with the Ryland Homeowners states that "… WE MAKE NO WARRANTIES, INCLUDING ANY WARRANTIES AS TO MERCHANTABILITY OR FITNESS, EITHER EXPRESSED OR IMPLIED, WITH RESPECT TO APPLIANCES OR OTHER CONSUMER PRODUCTS EITHER ATTACHED OR INSTALLED IN THE HOME, AND WE ARE NOT RESPONSIBLE FOR ANY PROMISE OR WARRANTY MADE BY THE MANUFACTURES OF SUCH PRODUCTS."

Additionally, Paragraph 19 of Ryland's contract states that "You agree to accept the Your Ryland Home Warranty as the only warranty from Us."

Further, Paragraph 21 of Ryland's contract with Ryland Homeowners disclaims "We make no expressed or implied warranties to You except as required by law and as set forth in this Agreement of Sale and on the Riders."

The Ryland Limited Warranty provided by Ryland to its homeowners contains the following language:

> "BUILDER MAKES NO HOUSING MERCHANT IMPLIED WARRANTY OR ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED, IN CONNECTION WITH THE AGREEMENT OF SALE OR THE WARRANTED HOME, AND ALL SUCH WARRANTIES ARE EXCLUDED, EXCEPT AS EXPRESSLY PROVIDED IN THIS LIMITED WARRANTY.  THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE OF THIS LIMITED WARRANTY."

Section B.1. of the Limited Warranty Program states as follows:

Your Ryland Home Warranty Program provides you with the following protection:

>    a. <u>Beginning of Coverage</u>: Your limited warranty coverage begins on the Effective Date.
>
>    b. <u>Coverage During Year One</u>: We warrant that for a period of one year Your Home will be free from defects in materials and workmanship. We determine whether a defect exists by referring to the performance standards in Section C of this Agreement. Manufactured items of fixtures, appliances and equipment that are covered by a manufacturer's warranty are not covered by this warranty. We assign manufacturer's warranties to You at closing. We will, however, administer any claim that you have for a defective manufactured item during the first year.
>
>    c. <u>Coverage During Years One and Two</u>: We warrant that for a period of two years, specified portions of the heating, ventilating and air conditioning (HVAC) system, and the electrical and plumbing systems will be free from defects. Again, We determine whether a defect exists by referring to the performance standards set forth in Section C of this Agreement. Manufactured items of fixtures, appliances and items of equipment covered by a manufacturer's warranty that are part of these systems are not covered by this warranty.
>
>    d. <u>Coverage During Years One Through Ten</u>: We warrant for a period of ten years that Your Home is protected against loss resulting from Major Structural Defects (as defined in Section A of this Agreement).

Further, in Section D Exclusions, of Ryland's Limited Warranty Program states:

"The following are not covered under this Agreement…

> 19. Consequential damages, including but not limited to, (a) costs of shelter, transportation, food, moving and storage, or (b) other incidental expenses related to relocation during repairs."

Rather than rely upon the terms of the express warranties provided by Ryland (which they had contractually negotiated), Ryland Homeowners have sued for implied warranty. Count IV, to the extent it seeks to pursue the written warranties, should be amended to include reference to the specific terms therein.

Ryland Homeowners cannot set forth claims for Breach of Implied Warranty of Habitability (Count VI) and Breach of Implied Warranty (Count IV) when such implied warranties are expressly waived and disclaimed in both the contract and the express warranty, as noted above. A detailed agreement relative to items covered by warranty and those that are excluded is enforceable. *McGuire v. Ryland Group, Inc.*, 497 F.Supp.2d 1356 (M.D. Fla. 2007)(upholding disclaimer of implied warranty in claim brought by homeowner). Moreover, contractual exclusions of implied warranties are enforceable. *Saunders Leasing System, Inc. v. Gulf Central Distribution Center*, 513 So.2d 1303 (Fla. 2d DCA 1987). Pursuant to this limitation of warranties, Counts IV and VI should be dismissed. *See Int'l Marine Terminals, Inc. v. Johnson Bros. Corp of La.*, 1987 WL 13219 (E.D. La. 1987).

Second, Count IV and VI should also be dismissed because a breach of implied warranty of fitness for intended purpose, by definition, requires that the purported defective product, here the drywall, fail its intended purpose. This Court has already ruled in its January 13, 2010 Order and Reasons (D.E. 741) that the subject drywall does not fail its intended purpose. The court explained: "[T]he Chinese drywall in the instant matter is operating as intended – as an interior wall and/or ceiling, a room divider, a shell for insulation and wiring, and a base for hanging various items, such as lighting fixtures and decorative items." *Slip op. at 18-19*. "It is not crumbling, deteriorating or failing to serve its intended purpose." *Id*.

Count V of the Complaint for Breach of Implied Warranty is pled pursuant to Chapter 718 (the Florida Condominium Statute). However, Count V simply contains a laundry list of each of the warranties provided under that statute, without identifying which plaintiffs are entitled to those warranties, and which warranty was specifically breached with respect to their property. Any plaintiff condominium owner that purchased from Ryland should be required to

11

amend its complaint to allege specifically which statutory warranty applied, how it applied to that particular unit, and how it was breached.

WHEREFORE, Counts IV, V and VI should be dismissed as to the implied warranty claims, since they are waived under the parties' contracts. Ryland Homeowners should be granted leave to assert a proper express warranty claim. The statutory warranty claim must be pled with reasonable specificity.

### D. The Complaint Fails to State a Viable Claim Under the Florida Deceptive and Unfair Trade Practices Act, ("FDUTPA")

Finally, the Court should dismiss Ryland Homeowners' claim under FDUTPA (Count XIV). To state a claim under FDUTPA, a plaintiff must establish the following: (1) a deceptive or unfair practice; (ii) causation; and (iii) actual damages. *See e.g., Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). In bringing a claim under FDUTPA, "a plaintiff must do more than merely allege in a conclusory fashion that a defendant's actions constitute an 'unfair or deceptive act' or that the defendant acted 'wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.' *Infinity Global, LLC v. Resort at Singer Island, Inc*., No. 07-80690-CIV, 2008 WL 1711535, at *4 (S.D. Fla. April 10, 2008) (finding that plaintiff failed to state a claim under FDUTPA) (citations omitted).

As the basis for their FDUTPA claim, Ryland Homeowners merely allege that all of the "Defendants" acts and omissions, as well as their failure to use reasonable care, constitute a violation of the provisions of the Consumer Protection Acts of the Relevant States." (Compl. At 2755). Ryland Homeowners do not identify the specific conduct of Ryland that was allegedly deceptive or unfair, or how this unidentified conduct constituted an unfair or deceptive act. Instead, Ryland Homeowners' allegations are nothing more than bare legal conclusions, which

are insufficient to state a claim under FDUTPA. *Infinity Global, LLC, 2008* WL 1711535, at *4; *Twombly*, 550 U.S. at 555.

Moreover, even if Ryland Homeowners had alleged sufficient facts to support a FDUTPA claim, Ryland Homeowners fail to allege damages that are recoverable under FDUTPA. FDUTPA is "intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer" and authorizes a consumer to recover actual damages for a violation of FDUTPA. *Urling v. Helms Exterminators, Inc.*, 468 So 2d 451, 454 (Fla. 1st DCA 1985); Fla. Stat. § 501.211(2). The measure of actual damages is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered…" *Urling,* 468 So 2d at 454. Where a plaintiff has failed to allege a recoverable loss under FDUTPA (i.e., actual damages), the claim is subject to dismissal. See *Smith v. 2001 South Dixie Highway, Inc.*, 872 So 2d 992, 994 (Fla 4th DCA 2004) ("We conclude that the trial court was correct in dismissing appellant's complaint because appellant did not allege a recoverable loss under the statute and, therefore, failed to state a cause of action.").

In this case, Ryland Homeowners are not seeking actual damages. Rather, Ryland Homeowners plead only special and consequential damages, including the costs to repair their homes and replace the other property allegedly damages by the defective drywall, and diminution in value damages. (Compl. at ¶ 2632). However, these damages are not recoverable under FDUTPA. *Urling*, 468 So. 2d at 454 (denying cost spent repairing damages caused by termites because it "constitutes special or consequential damages which fall outside the statutory concept as defined in section 501.211, Florida Statutes")' *Kia Motors America Corp. v. Butler*, 985 So 2d 1133, 1140 (Fla. 3rd DCA 2008) (noting that under "FDUTPA 'actual damages' do not

13

include consequential damages, such as repair damages or resale damages"); *Rollins, Inc.*, 951 So. 2d at 869-70 ("the recovery afforded under FDUTPA does not include diminution in value or stigma damages"). Nor are damages to "property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *Rollins, Inc. v. Heller*, 454So 2d 580, 584-85 (Fla. 3rd DCA 1984) (denying recovery for items stolen due to defective burglary alarm system because FDUTPA "only allows recovery of damages related to the property which was the subject of the consumer transaction"). Therefore, because Ryland Homeowners have failed to plead actual damages and are instead seeking damages that are not recoverable under FDUTPA, the court should dismiss Ryland Homeowners' FDUTPA claim. *Smith*, 872 So. 2d at 994.

### E. Plaintiffs Cannot State A Claim For Unjust Enrichment Because They Have Adequate Remedies At Law And Have Pled Them.

Ryland Homeowners' unjust enrichment claim (Count XIV) against Ryland fails as a matter of law. It is well settled in Florida that "unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA 1987) (dismissing unjust enrichment count because plaintiff had a contractual remedy). Consequently, an unjust enrichment claim must fail upon a showing that an express contract exists. *Id.*; *Garcia v. Cosicher*, 504 So. 2d 462, 463 n.2 (Fla. 3d DCA 1987) (action based on quantum merit theory failed "in light of express contract between the parties").

Here, Ryland Homeowners' claim for unjust enrichment must fail because Ryland Homeowners have alleged that express contracts exist between the parties. Moreover, Ryland Homeowners allege to have adequate remedies at law, and are, in fact, already pursuing those remedies in this case. Indeed, Ryland Homeowners are seeking the same relief in their unjust enrichment count as they are in almost every other count in the Complaint, namely economic damages as a result of the allegedly defective drywall. Therefore, because Ryland Homeowners

have adequate remedies at law, their claim for unjust enrichment fails as a matter of law and the Court should dismiss Count XIV of the Omnibus Complaint.

### F. Ryland Homeowners Fail to State a Claim for Equitable And Injunctive Relief and Medical Monitoring

In Count XV of the Complaint, Ryland Homeowners ask the Court for equitable and injunctive relief, including requiring the Ryland Defendant to …"create, fund and support a medical monitoring program." (Compl. at ¶2761). Medical monitoring is an equitable remedy that is available in only limited circumstances. *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 108 (Fla. 3d DCA 1999).

As stated above, the Ryland Homeowners have an adequate remedy at law (which they have pled) and therefore cannot plead a claim for "equitable and injunctive relief". Count XV seems to improperly combine claims for rescission, misrepresentation, and injunction. In addition, Ryland Homeowners have failed to allege the elements necessary to state a claim for medical monitoring. For instance, Ryland Homeowners do not allege that: (i) a monitoring procedure exists that makes the early detection of the alleged disease possible or what the "disease" is; (ii) how the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; or (iii) why the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

Therefore, Ryland Homeowners fail to state a claim for medical monitoring, equitable relief and injunction, and count XV should be dismissed. *Petito*, 750 So. 2d at 106-07.

Furthermore, medical monitoring applies to tort claims and the Ryland Homeowners are limited to contract and warranty remedies absent personal injury.

III. **CONCLUSION**

For all the foregoing reasons, the Court should dismiss all counts of the Ryland Homeowners' Complaint and grant such other and further relief as this Court deems just and proper. The Court should grant leave for the Ryland Plaintiffs to amend by asserting claims based upon written contract and express warranty. Moreover, if personal injury has been incurred by Ryland homeowners, the specific homeowner(s) should be identified in the amended complaint.

Dated: March 17, 2010

Respectfully submitted,

/s/ Neal A. Sivyer
Neal A. Sivyer
Florida Bar No. 373745
**SIVYER BARLOW & WATSON, P.A.**
401 E. Jackson Street, Suite 2225
Tampa, Florida 33602
Telephone: (813) 221-4242
Facsimile: (813) 227-8598

**CERTIFICATE OF SERVICE**

I HEREBY certify that on March 17, 2010, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller by U.S. Mail and email or by hand delivery and email upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No.: 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

/s/ Neal A. Sivyer
Neal A. Sivyer