# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| MICHELLE GERMANO, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No.: 2:09cv202 |
| TAISHAN GYPSUM CO., LTD., et al. | ) |
| Defendants. | ) |

### THE PORTER-BLAINE CORPORATION AND VENTURE SUPPLY, INC.'S REBUTTAL MEMORANDUM IN SUPPORT OF RULE 12(b)1 AND 12(B)6 MOTIONS

Come now the defendants The Porter-Blaine Corporation ("Porter-Blaine") and Venture Supply, Inc. ("Venture"), by counsel, and submit the following memorandum in support of their motions to dismiss under Rule 12(b)(1) and 12(b)(6 of the Federal Rules of Civil Procedure:

### RULE 12(b)(1) MOTION

The Plaintiffs apparently argue in their Brief in Opposition that merely because they allege that the Chinese Manufacturer, Taishan Gypsum Co., Ltd f/k/a Shandong Tiahe Dongxin, Co., Ltd ("Taishan"), does business in the Commonwealth of Virginia that this Court has subject matter jurisdiction. However, federal courts are courts of limited jurisdiction. Jurisdiction cannot be conferred by waiver, consent, inaction or stipulation. California v. LaRue, 409 U.S. 109, 112n.3 (1972); Basso v. Utah Power & Light, 495 F.2d 906, 909 (10th Cir. 1974). Even if the parties do not raise jurisdictional issues, it is the duty of the Court to inquire *sua sponte*, if necessary. Basso, supra.

Merely because there is a bare allegation in a pleading that a federal court has jurisdiction, this does not end the inquiry:

1

> The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. We think that only in this way may the practice of the District Courts be harmonized with the true intent of the statute which clothes them with adequate authority and imposes upon them a correlative duty.

McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

It is, therefore, the duty of the Court to inquire into whether it has subject matter jurisdiction, even in the situation where the parties do not themselves raise the issue. "Even if neither of these questions are pressed by the defendant in this case, yet, where the jurisdiction of the court depends upon the existence of certain conditions, as does the jurisdiction of this court, it is incumbent upon the court, especially in a cause involving the adjudication of public questions, to see that those conditions exist, whether or not the parties to the cause may waive objection or acquiesce in the statement that those conditions do exist." Gaines v. Baltimore & C.S.S. Co., 234 F. 786, 789 (E.D.S.C. 1916); see also, Mission Insurance Company v. Brown,

2

207 F. Supp. 818, 819-20 (W.D. Mo. 1962)("This Court is required to raise all questions of jurisdiction, including the presence or absence of jurisdictional amount, on its own motion should the parties fail so to do. Cf. Canadian Indemnity Co. v. Republic Indemnity Co., (9th Cir., 1955), 222 F.2d 601. See also Kaufman v. Liberty Mutual Ins. Co., (3rd Cir., 1957), 245 F.2d 918.").

It is apparently conceded by Plaintiffs that the only way in which this Court has subject matter jurisdiction over this case under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), is the presence of the Chinese manufacturer - Taishan. Venture and Porter Blaine felt it was their duty to raise the jurisdictional issue before the Court, because Venture was the one that purchased the drywall from Taishan and it knows that the sale of the drywall was F.O.B. China. (See attached contract documents, Exhibit A). It also knows that it did not deal with any agent or employee of Taishan who was located in the United States, much less the Commonwealth of Virginia. Accordingly, raising the issue with the Court was the proper thing to do.

As the burden of proving subject matter jurisdiction rests on the Plaintiffs, Richmond, Fredricksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991), McNutt, supra, and as it is the duty of this Court to constantly ascertain and monitor its jurisdiction, the Plaintiffs should be forced to come forward with evidence and prove that this Court has in personam jurisdiction over Taishan. And since this inquiry could make everything else moot should there be no subject matter jurisdiction, this should be the first and sole inquiry of the Court and the parties at this time.

3

## RULE 12(b)(6) MOTION

### A.     COUNT I "NEGLIGENCE"

Apparently, Plaintiffs concede that there claims for the repairs to their home and removal of the allegedly defective drywall itself would be governed by the economic loss rule. They argue merely that their claims for damage to other property (e.g. computers) or their claims for personal injury are outside the economic loss rule. While the Plaintiffs may be correct in this regard, it is equally clear that whatever claim they make for repairs to their homes is governed by the economic loss rule and, therefore, they may not bring a tort cause of action. Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988).

Accordingly, Plaintiffs' negligence claim for economic damages fails as a matter of law and should be dismissed.

### B.     COUNT II "NEGLIGENCE PER SE"

In their Brief in opposition, Plaintiffs allege that pleading a breach of "statutory duties" in and of itself is sufficient to state a cause of action for negligence per se. However, they have cited no authority for this proposition. Cf., Sepuldeva v. Stiff, 2006 U.S. Dist. LEXIS 82885 (E.D. Va. 2006)("Plaintiff has sufficiently plead the elements of negligence by stating a statutory standard of care which she alleges Riverside breached, causing her injury.")

The defendants are entitled to know the basis for the claim against them. While "negligence" in and of itself may be generally pled, pleading the violation of some "statutory" duty is insufficient to inform these defendants as to what exact claim is being made against them. Isler v. Nutall, 64 Va. Cir. 218 (Richmond Cir. Ct. 2004)(sustaining a demurrer to negligence per se claim because plaintiffs failed to allege a specific statute).

The defendants believe that the Plaintiffs cannot point to a statute that was violated that was enacted to benefit persons in their position. Accordingly, absent an allegation of a specific statutory duty that defendants violated, this Count should be dismissed.

C.   COUNT III "BREACH OF IMPLIED WARRANTIES"

Plaintiffs' first argument is that they are not relying solely on the U.C.C. implied warranties in Count III of their Complaint, but also on common law warranties. However, the only cases they cite are one dealing with food products, Harris v. Aluminum Co. of America, 550 F. Supp 1024 (W.D. Va. 1982), and one dealing with a construction services contract, Hall v. McLeod, 191 Va. 665, 62 S.E.2d 42 (1950). Neither applies to the present case.

Plaintiffs' main complaint is that the drywall is allegedly defective in manufacture or design because it allegedly "off-gases" sulfur compounds. This attempts to state a typical U.C.C. claim of defective goods. However, as recognized by almost all of the Circuit Courts in Virginia that have considered this issue, plaintiffs such as these did not purchase "goods" as that term is defined in the U.C.C. They purchased homes. Extending the U.C.C. to cover sales of realty would extend the scope of the U.C.C. far beyond its current terms. As the Court in Winchester Homes, Inc. v. Hoover Universal, Inc., 30 Va. Cir. 22, 30 (1996), noted, that task should be left to the legislature, not the Court. The state Courts of Virginia Beach and Norfolk have agreed with this analysis. MacConkey v. F. J Matter Design, Inc., 54 Va. Cir. 1 (2000); Bay Point Condo. Ass'n v. RML Corp., 54 Va. Cir. 422, 431 (2001).

In footnote 7 of their brief, Plaintiffs cite French v. York International Corp., 72 Va. Cir. 538 (Greene Co. 2007), and argue that certain items, such as air conditioners, maintain their U.C.C. status as goods. However, that case actually supports the defendants: "Because building materials are manipulated and altered in the course of construction by developers, the legislature

5

has created alternative means of protecting homebuyers without placing the burden on manufacturers to warrant these materials once incorporated into a structure. See Va. Code Ann. § 55-70.1" In distinguishing air conditioners, the court relied on Winchester Homes, citing footnote 3 of that decision which states: "However, building components, such as mortar, **drywall** and plywood that re transformed into a building, would not stand on the same footings as "goods" under the U.C.C." (emphasis added).

Finally, Plaintiffs argue that they have adequately alleged a breach of warranty of fitness for a particular purpose under Va. Code Section 8.2-315. However, they clearly do not allege the elements of a cause of action for such a breach under Medcom, Incorporated, et al. v. C. Arthur Weaver Company, Incorporated, 232 Va. 80, 84, 348 S.E.2d 243, 246 (1986). In their Complaint, they do not allege that (a) they or anyone else had a "particular purpose" in mind for the drywall, other than using it as drywall; (b) that Venture or Porter Blaine knew of this "particular purpose"; or (c) that they or anyone else relied on Venture or Porter Blaine's skill or judgment in fulfilling this "particular purpose." On the face of the Complaint, therefore, this claim fails as a matter of law.

### D. COUNT V "PRIVATE NUISANCE"

The Plaintiffs fail to address in their brief in opposition the clear statement of the Virginia Supreme Court on the elements of a cause of action for nuisance set forth in Virginia Railway Company v. London, 114 Va. 334, 344, 76 S.E. 306, 308 (1912), and cited by defendants in their initial brief. That case requires that one use or authorize the use of one's property to injure another's property.

Instead, Plaintiffs argue that the Virginia Supreme Court has adopted a broad definition of the types of activities that can cause a nuisance. However, in the cases cited by the Plaintiffs

6

that dealt with the issue of "nuisance", the alleged offender owned or controlled the property that was causing the nuisance. City of Virginia Beach v. Murphy, 239 Va., 353, 389 S.E.2d 462 (1990)(restaurant owner prosecuted for creating public nuisance by allowing loud music); National Energy Corp. v. O'Quinn, 223 Va. 83, 286 S.E.2d 181 (1982)(coal mine operator sued for nuisance by neighbor).[1]

There is no indication, except the Plaintiffs' wishes, that the Virginia Supreme Court would adopt the Section 834 of the Restatement (Second) of Torts or Comment e to that section. In fact, in another nuisance case, the Court recently rejected the Restatement's approach dealing with when vegetation can be a nuisance. Fancher v. Fagella, 274 Va. 549, 650 S.E.2d 519 (2007)(rejecting Sections 839 and 840 of the Restatement).[2]

Given the clear statement by the Virginia Supreme Court on the elements of a nuisance cause of action, there is no need to turn to either the Restatement or cases from Wisconsin or Rhode Island. As Venture and Porter Blaine have no ownership interest in the drywall, there is no nuisance and nothing to abate. Accordingly, Count V should be dismissed.

    E.    COUNT VI DOES NOT ALLEGE A VALID CAUSE OF ACTION FOR "UNJUST ENRICHMENT"

In their opposition brief, Plaintiffs do not and cannot distinguish the elements of a cause of action in Virginia for unjust enrichment, set forth in Schmidt v. Household Finance Corp., 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008), which followed Nedrich v. Jones, 245 Va. 465, 476, 429 S.E.2d 201, 207 (1993). Plaintiffs state the defendants have cited no case that says the

---

[1] Plaintiffs also cite Fairfax County v. Parker, 186 Va. 675, 44 S.E.2d 9 (1947). However, that case is a zoning case brought by the County against a landowner.

[2] Plaintiffs' citation to Russo v. White, 241 Va. 23, 400 S.E.2d 160 (1991), in which the Court adopted one section of the Restatement dealing with intentional infliction of emotional distress is not helpful. Defendants could cite many cases where the Virginia Supreme Court has rejected portions of the Restatement. E.g., O'Neil v. Windshire Copeland Associates, 267 Va. 605, 595 S.E.2d 281 (2004)(rejecting Restatement (Second) of Torts, § 483).

plaintiff must have directly conferred a benefit on the defendant; however, both Schmidt and Nedrich state that the plaintiff must prove that "**he** conferred a benefit on the defendant." In addition, both cases state that an element of the cause of action for unjust enrichment is that the defendant at least by implication promised to pay the plaintiff for such a benefit. The Plaintiffs have alleged neither one of these elements of a cause of action for unjust enrichment.

If the theory advanced by the plaintiff was accepted, every disappointed consumer transaction would turn a breach of contract case into one of "unjust enrichment." That simply is not the law in Virginia. E.g., Schmidt, supra (plaintiff's Complaint alleging that he took out an illegal loan from a bank, and, thus conferred a benefit on the bank, which equity would require the bank to return excess funds, failed to state a cause of action for unjust enrichment). Accordingly, Count VI should be dismissed.

    F.    COUNT VII "VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT"

Plaintiffs cite no Virginia case which rejects the reasoning of Judge Ellis in Cooper v. GGGR Investments, LLC, 334 B.R. 179, 187-88, 2005 U.S. Dist. LEXIS 32333 (E.D. Va. 2005). They also do not dispute that they cannot and have not alleged reliance on any particular statement of Venture or Porter Blaine.

Rather, they attempt to skew Virginia law by saying first, that knowing concealment can be a violation of the VCPA, citing Lambert v. Downtown Garage, Inc., 262 Va. 707, 553 S.E.2d 714 (2001), and that there may be a "presumption" of reliance on such concealment, citing Chisholm v. TranSouth Financial Corp., 194 F.R.D 538, 560 (E.D. Va. 2000).

As to Lambert, the Virginia Supreme Court was dealing with the sale of an automobile, and relied on the Attorney General's opinion that in the sale of a previously wrecked car, concealment by a dealer may constitute a violation of the VCPA. The Court went on to note,

8

however, that: "...proof of misrepresentation by nondisclosure requires "evidence of a knowing and a deliberate decision not to disclose a material fact."" 262 Va. at 714, 553 S.E.2d at 718. Plaintiffs have not alleged any such conduct on the part of Venture.

In addition, the Lambert case was dealing with face-to-face negotiations between a dealer and a customer. Given this, and the Attorney General's opinion, it is no wonder that the Court found that in certain circumstances, knowing concealment may give rise to a claim. We are not dealing with any face-to-face dealings with respect to the Plaintiffs. They all purchased homes, or had homes constructed for them. There is no allegation of any direct contact between Venture or Porter Blaine and the Plaintiffs.

The holding in Chisholm, cited by Plaintiffs, does not apply to the facts of this case. In Chisholm, the Court noted that the U.S. Supreme Court has recognized a presumption of reliance in very narrow cases: "Presumed reliance under civil RICO is generally disfavored outside of certain narrow contexts." Id. at 560. The Court went on to note that presumed reliance does not apply to Virginia fraud causes of actions. Id.

Finally, Plaintiffs attempt to distinguish the six Virginia Circuit Court opinions which hold that the VCPA does not apply to building material incorporated into real property purchased by the Plaintiffs. Plaintiffs argue that in some of those cases the Court was ruling on demurrers or motions filed by builders against component suppliers. However, as recognized in Murray v. Dryvit Systems, Inc., 2002 Va. Cir. LEXIS 420 (Franklin County 2002), the reasoning of those cases applies with equal force to cases filed by homeowners:

> This court agrees with the reasoning of the Hoover and Bay Point courts and finds that the EIFS was not sold to Murray for personal, family or household purposes but sold to Royal or his subcontractor) by Dryvit to be included as a component part of the house constructed by Royal for Murray.

9

> Likewise, Royal did not sell the EIFS to Murray for personal, family or household purposes but turned over to him a completed house containing the EIFS. This is a transaction involving non-consumer goods and is not subject to the provisions of the VCPA.

In short, the Plaintiffs claims fail to allege an essential element of a cause of action under the VCPA. In addition, the present action does not come within the provisions of the VCPA. Accordingly, Count VII should be dismissed.

### H.    EQUITABLE RELIEF SOUGHT IN COUNT VIII

In their brief in opposition, Plaintiffs' main argument is that they are seeking injunctions; therefore they are entitled to equitable relief. This is almost like saying if they seek an injunction requesting an Order from the Court to pay them damages, then they are entitled to equitable relief.

This is not the law in the Commonwealth of Virginia. The Plaintiffs are, in reality, seeking monetary damages associated with either a decrease in the value of their home, damages for repairs to their home, personal injury damages, and the costs, if they prove they are entitled to it, of monitoring their environment and health for, the defendants guess, forever. Their remedy at law is adequate.

Finally, permitting the Plaintiffs to maintain such an action would, in effect, suspend forever the running of the statute of limitations. Assume 20 years down the road, one of the Plaintiffs suffer from some lung problem. One would assume that the Plaintiff would want as part of their injunction, an order requiring the defendants to pay for treatment for that disease. However, this is counter to clear Virginia law that once someone is "injured" by a wrongful act, the statute of limitations begins to run for all injuries even if later the injuries become more substantial:

> Therefore, as a general rule, where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

Street v. Consumer Mining Corp., 185 Va. 561, 566, 39 S.E.2d 271, 272 (1946).

Accordingly, Plaintiffs should be left to whatever legal remedy is available to them at this time. Count VIII of the Amended Complaint should be dismissed.

**WHEREFORE,** Venture and Porter-Blaine requests that its Motion to Dismiss be granted and that the above referenced Counts be dismissed with prejudice.

This 29th day of June, 2009.

                                            /s/
Mark C. Nanavati, Esquire (VSB# 38709)
Kenneth F. Hardt, Esquire (VSB# 23966)
Attorneys for Venture Supply, Inc. and The Porter-Blaine Corporation
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Dr.
Midlothian, VA 23114-4365
(804) 378-7600
(804) 378-2610 (fax)
mnanavati@snllaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste 3120
580 East Main Street
Norfolk, VA 23510-2322
Counsel for Plaintiffs

John Franklin, III, Esquire,
Taylor & Walker, P.C.
1300 FIRST VIRGINIA TOWER
555 Main Street, Norfolk, VA 23514
Counsel for Harbor Walk Development, LLC;

I hereby certify that I will mail the document by U.S. mail to the following parties who have not entered an appearance:

Taishan Gypsum Co. Ltd f/k/a
Shandong Taihe Dongxin Co. Ltd.
Dawenkou, Daiyue District
Tai'an City, Shandong Province
China 271026; and

Tobin Trading, Inc.
c/o Theodore I. Brenner, Esquire
Brenner, Evans & Millman
411 E. Franklin Street, Ste 200
Richmond, VA 23219
Counsel for Tobin Trading, Inc.

/s/

Mark C. Nanavati , Esquire (VSB# 38709)
Kenneth F. Hardt, Esquire (VSB# 23966 )
Attorneys for Venture Supply, Inc. and The Porter-Blaine Corporation
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Dr.
Midlothian, VA 23114-4365
(804) 378-7600
(804) 378-2610 (fax)
mnanavati@snllaw.com

Case 2:09-md-02047-EEF-MBN   Document 1841-3   Filed 03/18/10   Page 14 of 16
12/19/2005  12:29   8578293         PORTER BLAINE CORP             PAGE  01
Case 2:09-cv-00202-MSD-TEM   Document 41-2   Filed 06/29/2009   Page 1 of 3

# Contract

Contract NO: SDTH05121601

Date: 16TH December 2005          Place: TAI'AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

Address: Dawenkou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller agrees to sell and the buyer agrees to buy the under mentioned commodity according to the terms and conditions stipulated below:

1. Term of delivery: deliver commodity in China port.

| Commodity & Specification | Quantity | Unit Price | Total Value |
|---|---|---|---|
| Standard gypsum board (T/E) 12.7*1220*3660mm | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total value of the contract US DOLLAR Three hundred sixty-six thousand and eight hundred ONLY ||||

2. Quality and packing terms: the gypsum board should be produced as per the relative standard of China GB/T9775-1999, using plastic inner package, gypsum pallet, gypsum protecting board and steel belt. It should be


EXHIBIT A

inspected and confirmed by Mr. Phillip W Perry, who comes from Tobin Trading Inc and representes the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement. The stating can be regarded as the part of the contract.

3. Term of payment: 30% earnest money should be paid in advance, the rest should be by irrevocable letter of credit at sight. We agree to accept the one hundred percent letter of credit for future orders (except this one).

4. The buyer should be in charge of ocean transportation and insurance, the ocean freight should be paid at the buyer's end.

5. Force Majeure: the seller shall not be held responsible for late or non-delivery of the goods owing to the generally recognized "Force Majeure" cause. However in such case, the seller shall inform the buyer in four working days.

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

The Seller: Shandong Taihe Dongxin Co., Ltd

The buyer: Venture Supply, Inc.

## CONTRACT

DATE: MAY 1, 2006

IT IS THIS DAY MUTUALLY AGREED AND CONFIRM BETWEEN THE UNDERSIGNED PARTIES ON THE FOLLOWING TERMS AND CONDITIONS:

1. CARGO & QUANTITY: 53000 SHEETS GYPSUM BOARD 10 PERCENT MORE OR LESS, 7600 SHEETS PLYWOOD 5 PERCENT MORE OR LESS IN 40'GP OR 40 HC CONTAINERS (NOT MORE THAN 27 MT/CONTAINER)
2. LAYTIME: LOAD ALL CARGO BEFORE JUNE 1, 2006
3. L/D PORT: QINGDAO, CHINA / NORFOLK, USA
4. FREIGHT RATE: USD3200.00/40'GP AND USD 3350.00/40'HC CONTAINER YARD/ CONTAINER YARD
5. PAYMENT OF FREIGHT: FULL FERGHT TO BE PAID WITHIN 3 BANKING DAYS AFTER COMPLETION OF LOADING AND BEFORE SIGNING THE ORIGINAL BILLS OF LADING.
6. AGENT: OWNERS SHIPAGENT AT BENDS.
7. TAXES/DUES/WHARAGE: ON CARGO TO BE FOR CHARTERS ACCOUNT AND ON VESSEL/FREIGHT TO BE FOR OWNERS ACCOUNT.
8. ANY DISPUTE ARISING UNDER THIS AGREEMENT TO BE REFERED TO ARBITRATION IN QINGDAO BY RULE OF CHINESE LAW, THE AWARD OF THE ARBITRATORS TO BE FINAL AND BINDING ON OTHER PARTIES.

MAIN ITEMS END.

CONSIGNEE/NOTIFYEE:   VENTURE SUPPLY, INC.
1140 AZALEA GARDEN ROAD
NORFOLK, VIRGINIA 23502
TEL: 757-855-5433
FAX: 757-857-0283

AGENT VENTURE SUPPLY INC.:

QINGDAO   PORT   JINTONG   FREIGHT   TRANSPOTATION   CO.,   LTD.