UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: SEAN AND BETH PAYTON, et al. vs. KNAUF GIPS, DG, et al. CASE NO. 2:09cv-07628 _____/ | JUDGE FALLON MAG. JUDGE WILKINSON |

**MORRISON HOMES, INC., TAYLOR MORRISON AND TAYLOR WOODROW COMMUNITIES AT VASARI, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS <u>PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT</u>**

Defendants, Morrison Homes, Inc., n/k/a Taylor Morrison Services, Inc., Taylor Morrison of Florida, Inc., and Taylor Woodrow Communities at Vasari, LLC's (collectively, "Taylor"), by and through their undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss the Class Action Complaint ("Complaint") filed by Plaintiffs, Robert and Maria Hay ("Hay"), Jason and Shanique Herbert, ("Herbert"), Grant and Kathyrn Reid, ("Reid"), Patrick Dinitto and Hevanilson Magalhaes ("Dinitto"), Dale and Beverly Dodge, (Dodge"), Christine and Robert Akers, ("Akers"), Larry and Rene Galvin,

1

("Galvin"), Allan Neumann, ("Neumann"), and Jim Tarzy[1] ("Tarzy") (collectively, "Taylor Homeowners"). In support thereof, Taylor submits the following Memorandum of Law in Support of their Motion to Dismiss and would state:

## I.  PRELIMINARY STATEMENT

The Omnibus Action is essentially a laundry list of claims without any pleading of specific facts relative to any Taylor Homeowners or Taylor.

Taylor built homes in Florida. All Taylor Homeowners bought homes in Florida. Therefore, Florida substantive law applies to all claims against Taylor.

Taylor has been sued under the following counts:  I) Negligence, II) Negligence Per Se, III) Strict Liability, IV) Breach of Express and/or Implied Warranties, V) Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes, Section 718.203, VI) Breach of the Implied Warranty of Habitability, VII) Breach of Contract, XI) Private Nuisance, XII) Negligent Discharge of a Corrosive Substance, XIII) Unjust Enrichment, XIV) Violation of Consumer Protection Acts, and XV) Equitable and Injunctive Relief and Medical Monitoring.

## II.  ARGUMENT

### A. Taylor has written contracts with each Taylor Homeowner.  Those contracts control the claims in this case.

Attached hereto as Exhibit "A" is the affidavit of Jeffrey M. Cooper authenticating the purchase contracts that are the subject matter of this action between Taylor and the Taylor Homeowners.  There is a written contract with each Taylor Homeowner who is a plaintiff in this action.  In addition, each Taylor Homeowner was provided a warranty, as required by the purchase contract.  The terms of the parties' written contracts govern the claims asserted in this case against Taylor, other than personal injury claims.

---

[1] Taylor and plaintiff, Jim Tarzy have reached a Settlement Agreement.

2

### B. Taylor Homeowners' property damage claims against Taylor should be limited to breach of contract and express warranty. Tort claims should be dismissed, (except claims for personal injury) based upon the economic loss rule

Counts I, II, III, XI and XII are tort claims that should be dismissed based on the Economic Loss Rule.

The Taylor Homeowners' property damage claims against Taylor are limited by the economic loss rule to breach of contract or breach of express warranty, since Taylor Homeowners and Taylor have written agreements relating to the homes. Accordingly, the contractual privity economic loss rule bars any tort claims by Taylor Homeowners, absent an allegation of personal injury or damage to separate property. To the extent Taylor Homeowners allege viable tort claims for personal injury or damage to property other than the homes themselves, then Taylor respectfully submits that damages in those cases are limited to non-economic damages for personal injury and damages for the "other property." None of the Taylor Homeowners have specifically pled damage to separate property.

It is axiomatic that when parties have a contractual relationship, the parties may not simply "end-run" the terms of the agreement by asserting tort claims. A homeowner who contracts with a homebuilder to purchase a home cannot maintain tort claims against the homebuilder for conduct that is indistinguishable from acts that would support a claim for breach of contract. *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004). Rather, to avoid dismissal of a tort claim against a homebuilder, the economic loss rule requires a homeowner to allege some additional conduct on the part of the homebuilder which amounts to an independent tort, arising from a duty separate and apart from the homebuilder's duties under the contract. *Id*. The policy reason behind this rule is the

assumption that the homebuilder and homeowner allocated the risk of a breach of contract through their contractual agreement. *Id.*

Thus, "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." *Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc.,* 620 So. 2d 1244, 1247 (Fla. 1993) *(citing East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 870 (1986)). The economic loss rule does not permit a homeowner to "circumvent the contractual agreement by . . . seeking a better bargain than originally made." *Indemnity Ins. Co.,* 891 So. 25 at 536.

The underlying conduct in support of homeowner tort claims against homebuilders is the allegation that the homebuilders sold homes that contain defective Chinese-manufactured drywall. These claims, "relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, [such that] no independent tort exists and the economic loss rule applies." *Premix-Marbletite Mfg.* v. *SKW Chems., Inc.,* 145 F. Supp. 2d 1348, 1358-59 (S.D. Fla. 2001). Therefore, homeowners may not maintain tort claims for this alleged conduct that is indistinguishable from the acts that are also alleged to be the basis for a breach of contract. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So. 2d 1238, 1239 (Fla. 1996).

In *Fishman v. Boldt,* 666 So. 2d 273 (Fla. 4th DCA 1996) the purchasers of a home brought an action against the builder of a seawall which failed, which resulted in damages to the pool, the patio and the home, alleging negligent construction. The trial court entered summary judgment, disposing of the homeowners' tort claims. The district court of appeal affirmed stating as follows:

> "….The appellants sued the appellee, Bert Boldt, as the original builder of the seawall, for negligent construction. The trial court

>entered summary judgment for Boldt based on *Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc.,* 620 So. 2d 1244 (Fla. 1993). We affirm."
>
>"….In the instant case, the "product" purchased by the appellants was the home with all of its component parts, including the seawall, pool, and patio. Therefore, the pool, patio, and home were not "other property" which would exclude the application of the economic loss rule. *See also Sensenbrenner v. Rust, Orling & Neale Architects, Inc.,* 236 Va. 419, 374 S.E. 2d 55 (1988) (Cited in *Casa Clara,* 620 So. 2d at 1246, 1247 n. 8)."
>*Id.* at p. 274

Similarly, in the case *sub judice* Taylor Homeowners are bringing an action for damages to the home and its component parts. Unless Taylor Homeowners can prove personal injury, all of their tort claims are barred by the economic loss rule.

In light of the foregoing, the Taylor Homeowners' tort claims against Taylor, except for personal injury, should be dismissed because the allegedly wrongful conduct underlying these claims is indistinguishable from the acts that support the claims for breach of contract. *See Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."); *Weimar v. Yacht Club Point Estates, Inc., 223* So. 2d 100, 103 (Fla. 4th DCA 1969) ("[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract."); *Electronic Sec. Sys Corp. v. Southern Bell Tel. & Tel. Co.,* 482 So. 2d 518, 519 (Fla. 3d. DCA 1986) ("[B]reach of contract, alone, cannot constitute a cause of action in tort... [and] [i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.").

Although the drywall manufacturer and suppliers have been named in this suit along with Taylor, Taylor stands in a different position than the manufacturer and suppliers because the manufacturer and suppliers did not sell the complete structure. *Casa Clara Condo. Assoc. v. Charlie Toppino & Sons*, *Inc.,* 620 So 2d 1244 (Fla. 1993), established that the "product" the homeowners purchased in that case is the completed home, and found that the individual components and building materials were integrated into the product and did not constitute "other property."

Even assuming the Taylor Homeowners were able to state viable tort claims for personal injury or damage to property other than the homes themselves, then Taylor respectfully submits that damages in those cases would be limited to non-economic damages for personal injury and damages for the "other property". In *Casa Clara,* the Florida Supreme Court held that the economic loss rule prohibited tort recovery when the product damages itself (in that case, the concrete, which was integrated into the completed structures) and causes economic loss, but does not cause personal *injury* or damage to any other property. In language that should define the scope of the homebuilders' economic loss rule defense in this case, the Court stated:

> "…The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of loss, one must look to the product purchased by the plaintiff, not the product sold by defendant. *King v. Hilton-Davis,* 855 F.2d 1047 (3d. Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished products-dwellings-not the individual components of those dwellings. They bargained for the finished products, not their various components. The property became an integral part of the finished product and, thus, did not injure 'other' property."
> *Id.* at p. 1247-1248.

6

As in *Casa Clara,* the products purchased by the Taylor Homeowners here are the homes, not the individual components.

The same factual allegations are incorporated in the negligence claim as in the breach of contract and breach of warranty counts. Therefore, there is no damage to separate property or a separate tort pled. In *John Brown Automotive, Inc. v. Lewis J. Nobles,* 537 So.2d 614 (Fla. 2d DCA 1988), a verdict entered for the plaintiff on a misrepresentation claim, based upon the same events as the breach of contract claim, was reversed on appeal, based upon the economic loss rule. For example, the economic loss rule bars negligence claims against title insurers for performing an inadequate title search because of the contractual relationship between the parties. *Ahern v. Fidelity*, 2009 WL 3242017 (M.D. Fla. 2009) and *Chicago Title Insurance company v. Commonwealth Forrest Investments, Inc.,* 494 F.Supp.2d 1332 (M.D. Fla. 2007). The tort claims against Taylor in this case should similarly be dismissed.

The Order and Reasons issued by Judge Fallon on January 13, 2010, MDL Case No. 2047, In Re: Chinese Manufactured Drywall Products Liability Litigation, states:

> "….The Florida Supreme Court, in applying this test, concluded that when homeowners purchased finished homes, and not the individual components of those homes, the finished homes constitute the "product." *Id.* at 1247; *see also, Pulte Home Corp. v. Osmose Wood Preserving, Inc*., 60 F.3d 734, 741-42 (11th Cir. 1995); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig*., 21 F.Supp.2d 593, 602 (E.D. La. 1998); *Progressive Ins. Co. v. Monaco Coach Corp*., 2006 WL 839520, *3 (S.D. Miss. Mar. 29, 2006).
> *Id.* at P. 18.

Further, the Order states:

> "….Additionally, the Plaintiffs are not in privity with the Manufacturer and Distributor Defendants, so they, unlike the plaintiff in *East River,* are not left with breach of contract and breach of warranty actions against these defendants (except in

7

> Louisiana where by statute the purchaser or ultimate consumer does have breach of warranty claims against the manufacturer under the LPLA)."
> *Id.* at p. 19.

The Order goes on to state the following:

> "….More recently, in I*ndemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004), the Florida Supreme Court attempted to resolve the confusion surrounding application of the ELR. The court reaffirmed the definition of economic losses as "disappointed economic expectations," "diminution in value of the product because it is inferior in quality," "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain."
> *Id*. at p. 536 n.1.

This Court then categorized the two different situations in which the ELR bars tort claims, (1) the contractual privity ELR where two parties are in contract, and (2) the products liability ELR where a defective product causes damage, but only to itself. *Id.* This Court determined that the factual situation before it did not fit into either ELR category because the suit was not for a defective product, but rather for defective services, and the parties (the manufacturers and homeowners) were not in privity of contract. *Id* at P. 22.

The court further stated as follows:

> "….In their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity ELR established by the Florida Supreme Court in *Indemnity Insurance Co. of North America v. American Aviation, Inc.,* 891 So. 2d 532 (Fla. 2004). The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contract breach, and in other limited circumstances. *Id.* at 536-37. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to

8

> Plaintiffs. This issue is not presently before the Court and thus it declines to draw any further conclusions with regard to Plaintiffs' claims against Homebuilders."
> *Id.* at p. 30.

The issue of the contractual privity ELR is now before the Court and the Taylor Homeowners' claims for economic tort damages should be dismissed. While personal injury claims are an exception to the ELR, paragraphs 2646 and 2647 of the Omnibus Complaint merely state that plaintiffs "have incurred damages and/or personal injuries" without identifying which Plaintiff (if any) suffered personal injury. The Taylor Homeowners should be required to plead personal injuries by specifically identifying which plaintiffs have suffered them. However, even with such an amended pleading their tort claims for economic damages would not be proper and must still be dismissed.

WHEREFORE, Counts I, II, III, XI and XII should be dismissed based upon the contractual privity economic loss rule. To the extent that personal injury claims exist, they should be pled specifically as to the individual homeowner and any tort claims for economic damages (i.e. property damages) would still be barred.

### C. The Breach of Implied Warranty claims should be dismissed since the parties have contractually agreed to an exclusive express warranty.

Counts IV for breach of implied warranties improperly comingles claims for breach of implied warranty of merchantability and the implied warranty for fitness for a particular purpose. Counts IV and VI should be dismissed for two separate reasons.

First, Paragraph 20. B of Taylor Woodrow Communities at Vasari, LLC's contract with Taylor Homeowners[2] disclaims "all such other warranties" other than the express warranties set forth in the contract. The limitation in the contract states as follows**:**

> "….Purchaser acknowledges that at the time of execution of this Contract, Seller has no reason to know of any particular purpose of Purchaser in purchasing the Unit and items of personal property sold pursuant to this Contract other than for normal residential use. Purchaser acknowledges and agrees that the only warranties applicable to the Condominium are those that may validly be imposed thereon by statutory law on the date thereof, as set forth in Section 718.203, Florida Statutes, as such section exists as of the date of this Agreement (hereinafter referred to as "Sole Warranties"). Purchaser further acknowledges and agrees that, to the extent allowed by law, Seller makes no other express or implied warranties whatsoever in regard to the Unit, the common elements, any fixtures or items of personal property sold pursuant to this Contract or any other real or personal property whatsoever sold hereby."

> "….Seller makes this warranty expressly in lieu of all other express or implied warranties concerning the Unit sold or to be constructed hereunder and the property sold hereunder or previously purchased from Seller, any other representations, statements or promises made by any person are unauthorized and are not binding upon Seller. All other warranties with respect to the Unit and the property hereunder are hereby disclaimed, to the extent permitted by law, whether implied or arising by operation of law, course of dealing, custom and practice, or otherwise, including, but not limited to, any warranties of liability, merchantability, and fitness for particular purpose; and Purchaser represents that Purchaser has read and understood this provision, and that Purchaser understands and agrees that, by entering into this Contract and accepting the benefits of the limited warranty described above, Purchaser has knowingly relinquished any and all other warranties of any kind or nature regarding the Unit and the property. In no event shall Seller be liable to Purchaser or Cassia at Vasari Condominium Association, Inc., or any other person or entity for consequential or exemplary damages, or for personal injuries arising from any breach of Sole Warranties."

---

[2] Larry and Rene Galvin, Christine and Robert Akers, Allan Neumann, Jim Tarzy and Patrick Dinitto and Hevanilson Magalhaes

Specifically as to Taylor Homeowners who contracted with Morrison Homes, Inc., n/k/a Taylor Morrison Services, Inc.,[3] Paragraph 6 of the contract states as follows**:**

> "….Seller agrees to provide Purchaser with Morrison Homes Two-Year Blanket Warranty and a Ten Year Structural Warranty. Purchaser acknowledges receipt of specimen copies of such warranties and a copy of the Little Purple Book, which outlines the material and workmanship standards applicable to the Morrison Homes Two-Year Blanket Warranty. THE MORRISON HOMES TWO-YEAR BLANKET WARRANTY AND TEN-YEAR STRUCTURAL WARRANTY ARE ACCEPTED BY PURCHASER IN PLACE OF ALL OTHER WARRANTIES, EXPRESED OR IMPLIED WHETER ARISING UNDER STATE LAW OR THE MAGNUSON-MOSS WARRANTY ACT, INCLUDING, BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF FITNESS, MERCHANTABILITY, OR HABITABILITY and Purchaser hereby waives all such implied or statutory warranties.
>
> Purchaser agrees that Sellers sole responsibility after closing is to cover items under warranty as represented. Purchaser agrees that Seller shall not be responsible to compensate Purchaser in any manner unless otherwise contained herein and that in order for the Seller to maintain responsibility for the home warranty the Purchaser may experience some inconvenience and potential loss of income."

Further, Morrison Homes, Inc., n/k/a Taylor Morrison Services, Inc., provided to its Taylor Homeowners[4] a Warranty Program which provides for a Ten-Year Structural Warranty and a Two-Year Blanket Warranty. Specifically, Paragraph B. Limitations and Exclusions of the Two Year Blanket Warranty states:

> "….1. The Morrison Homes Two-Year Blanket Warranty is to be interpreted in accordance with our Materials and Workmanship Standards, as set forth in this manual.
> 2. The Morrison Homes Two-Year Blanket Warranty shall not apply to any defect, loss, or damage caused or contributed to by:
>     The negligence of anyone besides Morrison Homes and its employees or subcontractors…
> 3. The Morrison Homes Two-Year Blanket Warranty applies only

---

[3] Dale and Beverly Dodge, Robert and Maria Hay, Jason and Shanique Herbert, and Grant and Kathyrn Reid
[4] Dale and Beverly Dodge, Robert and Maria Hay, Jason and Shanique Herbert, and Grant and Kathyrn Reid

11

> to your home. It does not extend to claims for consequential damages, bodily injury, or damage to personal property.
> 4. Except as set forth in connection with the Ten-Year Limited Structural Warranty, Morrison Homes makes no other warranty, express or implied."

Rather than rely upon the terms of the express warranties provided by Taylor (which they had contractually negotiated), Taylor Homeowners have sued for implied warranty. Count IV, to the extent it seeks to pursue the written warranties, should be amended to include reference to the specific terms therein.

Taylor Homeowners cannot set forth claims for Breach of Implied Warranty of Habitability (Count VI) and Breach of Implied Warranty for Fitness (Count IV) when such implied warranties are expressly waived and disclaimed in both the contract and the express warranty, as noted above. A detailed agreement relative to items covered by warranty and those that are excluded is enforceable. *McGuire v. Ryland Group, Inc.*, 497 F.Supp.2d 1356 (M.D. Fla. 2007)(upholding disclaimer of implied warranty in claim brought by homeowner). Moreover, contractual exclusions of implied warranties are enforceable. *Saunders Leasing System, Inc. v. Gulf Central Distribution Center*, 513 So.2d 1303 (Fla. 2d DCA 1987). Pursuant to this limitation of warranties, Counts IV and VI should be dismissed with prejudice. *See Int'l Marine Terminals, Inc. v. Johnson Bros. Corp of La.*, 1987 WL 13219 (E.D. La. 1987).

Second, Count IV and VI should also be dismissed because a breach of implied warranty of fitness for intended purpose, by definition, requires that the purported defective product, here the drywall, fail its intended purpose. This Court has already ruled in its January 13, 2010 Order and Reasons (D.E. 741) that the subject drywall does not fail its intended purpose. The court explained: "[T]he Chinese drywall in the instant matter is operating as intended – as an interior wall and/or ceiling, a room divider, a shell for insulation and wiring, and a base for hanging

various items, such as lighting fixtures and decorative items." *Slip op. at 18-19*. "It is not crumbling, deteriorating or failing to serve its intended purpose." *Id*.

Count V of the Complaint for Breach of Implied Warranty is pled pursuant to Chapter 718 (the Florida Condominium Act). However, Count V simply contains a laundry list of each of the warranties provided under that statute, without identifying which Taylor Homeowners are entitled to those warranties, and which warranty was specifically breached with respect to their property. Any Taylor Homeowner that purchased a condominium from Taylor should be required to amend its complaint to allege specifically which statutory warranty applied, how it applied to that particular unit, and how it was breached.

WHEREFORE, Counts IV, V and VI should be dismissed as to the implied warranty claims, since they are waived under the parties' contracts. Taylor Homeowners should be granted leave to assert a proper express warranty claim (Count V). The statutory warranty claim must be pled with reasonable specificity.

### D. The Complaint Fails to State a Viable Claim Under the Florida Deceptive and Unfair Trade Practices Act, ("FDUTPA")

The Court should dismiss Taylor Homeowners' claim under FDUTPA (Count XIV). To state a claim under FDUTPA, a plaintiff must establish the following: (1) a deceptive or unfair practice; (ii) causation; and (iii) actual damages. *See e.g., Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). In bringing a claim under FDUTPA, "a plaintiff must do more than merely allege in a conclusory fashion that a defendant's actions constitute an 'unfair or deceptive act' or that the defendant acted 'wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.' *Infinity Global, LLC v. Resort at Singer Island, Inc*., No. 07-80690-CIV, 2008 WL 1711535, at *4 (S.D. Fla. April 10, 2008) (finding that plaintiff failed to state a claim under FDUTPA) (citations omitted).

As the basis for their FDUTPA claim, Taylor Homeowners merely allege that all of the "Defendants" acts and omissions, as well as their failure to use reasonable care, constitute a violation of the provisions of the Consumer Protection Acts of the Relevant States." (Compl. At 2755). Taylor Homeowners do not identify the specific conduct of Taylor that was allegedly deceptive or unfair, or how this unidentified conduct constituted an unfair or deceptive act. Instead, Taylor Homeowners' allegations are nothing more than bare legal conclusions, which are insufficient to state a claim under FDUTPA. *Infinity Global, LLC, 2008* WL 1711535, at *4; *Twombly*, 550 U.S. at 555.

Moreover, even if Taylor Homeowners had alleged sufficient facts to support a FDUTPA claim, Taylor Homeowners fail to allege damages that are recoverable under FDUTPA. FDUTPA is "intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer" and authorizes a consumer to recover actual damages for a violation of FDUTPA. *Urling v. Helms Exterminators, Inc.*, 468 So 2d 451, 454 (Fla. 1st DCA 1985); Fla. Stat. § 501.211(2). The measure of actual damages is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered…" *Urling,* 468 So 2d at 454. Where a plaintiff has failed to allege a recoverable loss under FDUTPA (i.e., actual damages), the claim is subject to dismissal. See *Smith v. 2001 South Dixie Highway, Inc.*, 872 So 2d 992, 994 (Fla 4th DCA 2004) ("We conclude that the trial court was correct in dismissing appellant's complaint because appellant did not allege a recoverable loss under the statute and, therefore, failed to state a cause of action.").

In this case, Taylor Homeowners are not seeking actual damages. Rather, Taylor Homeowners plead only special and consequential damages, including the costs to repair their

homes and replace the other property allegedly damaged by the defective drywall, and diminution in value damages. (Compl. at ¶ 2632). However, these damages are not recoverable under FDUTPA. *Urling*, 468 So. 2d at 454 (denying cost spent repairing damages caused by termites because it "constitutes special or consequential damages which fall outside the statutory concept as defined in section 501.211, Florida Statutes")' *Kia Motors America Corp. v. Butler*, 985 So 2d 1133, 1140 (Fla. 3rd DCA 2008) (noting that under "FDUTPA 'actual damages' do not include consequential damages, such as repair damages or resale damages"); *Rollins, Inc.*, 951 So. 2d at 869-70 ("the recovery afforded under FDUTPA does not include diminution in value or stigma damages"). Nor are damages to "property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *Rollins, Inc. v. Heller*, 454 So 2d 580, 584-85 (Fla. 3rd DCA 1984) (denying recovery for items stolen due to defective burglary alarm system because FDUTPA "only allows recovery of damages related to the property which was the subject of the consumer transaction"). Therefore, because Taylor Homeowners have failed to plead actual damages and are instead seeking damages that are not recoverable under FDUTPA, the court should dismiss the Taylor Homeowners' FDUTPA claim. *Smith*, 872 So. 2d at 994.

### E. Plaintiffs Cannot State A Claim For Unjust Enrichment Because They Have Adequate Remedies At Law And Have Pled Them.

Taylor Homeowners' unjust enrichment claim (Count XIV) against Taylor fails as a matter of law. It is well settled in Florida that "unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA 1987) (dismissing unjust enrichment count because plaintiff had a contractual remedy). Consequently, an unjust enrichment claim must fail upon a showing that an express contract exists. *Id.*; *Garcia v. Cosicher*, 504 So. 2d 462, 463 n.2 (Fla. 3d DCA 1987) (action based on quantum merit theory failed "in light of express contract between the parties").

Here, Taylor Homeowners' claim for unjust enrichment must fail because Taylor Homeowners have alleged that express contracts exist between the parties. Moreover, Taylor Homeowners allege to have adequate remedies at law, and are, in fact, already pursuing those remedies in this case. Indeed, Taylor Homeowners are seeking the same relief in their unjust enrichment count as they are in almost every other count in the Complaint, namely economic damages as a result of the allegedly defective drywall. Therefore, because Taylor Homeowners have adequate remedies at law, their claim for unjust enrichment fails as a matter of law and the Court should dismiss Count XIV of the Omnibus Complaint.

### F. Taylor Homeowners Fail to State a Claim for Equitable And Injunctive Relief and Medical Monitoring

In Count XV of the Complaint, Taylor Homeowners ask the Court for equitable and injunctive relief, including requiring the Taylor Defendants to …"create, fund and support a medical monitoring program." (Compl. at ¶2761). Medical monitoring is an equitable remedy that is available in only limited circumstances. *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 108 (Fla. 3d DCA 1999).

As stated above, the Taylor Homeowners have an adequate remedy at law (which they have pled) and therefore cannot plead a claim for "equitable and injunctive relief". Count XV improperly combines claims for rescission, misrepresentation, and injunction. In addition, Taylor Homeowners have failed to allege the elements necessary to state a claim for medical monitoring. For instance, Taylor Homeowners do not allege that: (i) a monitoring procedure exists that makes the early detection of the alleged disease possible or what the "disease" is; (ii) how the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; or (iii) why the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

16

Therefore, Taylor Homeowners fail to state a claim for medical monitoring, equitable relief and injunction, and Count XV should be dismissed. *Petito*, 750 So. 2d at 106-07.

### III.    CONCLUSION

For all the foregoing reasons, the Court should dismiss all counts of the Taylor Homeowners' Complaint and grant such other and further relief as this Court deems just and proper. The Court should grant leave for the Taylor Homeowners to amend by asserting claims based solely upon written contract and express warranty. Moreover, if personal injury has been incurred by a Taylor Homeowner, the specific homeowner(s) should be identified in the amended complaint.

Dated: March 22, 2010

Respectfully submitted,

/s/ Neal A. Sivyer
Neal A. Sivyer
Florida Bar No. 373745
**SIVYER BARLOW & WATSON, P.A.**
401 E. Jackson Street, Suite 2225
Tampa, Florida  33602
Telephone:  (813) 221-4242
Facsimile:   (813) 227-8598

**CERTIFICATE OF SERVICE**

I HEREBY certify that on March 22, 2010, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller by U.S. Mail and email or by hand delivery and email upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No.: 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

/s/ Neal A. Sivyer
Neal A. Sivyer