UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL Docket No. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | |
| Sean and Beth Payton, et al. v. Knauff Gips, KG, et al. | JUDGE FALLON |
| Case No.: 2:09-cv-07628-EEF-JCW | MAG. JUDGE WILKINSON |

-------------------------------------------------------------------

## MARONDA HOMES, INC. OF FLORIDA'S
## BRIEF IN SUPPORT OF MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, TO STAY

### INTRODUCTION

Plaintiffs Christopher George and Natalie Vacca (the "Plaintiffs" or the "Subclass Representatives") have filed this action against, *inter alia*, Defendant, Maronda Homes, Inc. of Florida ("Maronda"), seeking to recover damages allegedly caused by defective Chinese-manufactured drywall installed in their Florida home, which was built by Maronda. (*See* Plaintiffs Omnibus Class Action Complaint (the "Complaint") ¶¶ 441, 2352, 2627 & Schedule 3.) Plaintiffs seek relief not only for themselves, but allegedly on behalf of others similarly situated. (Complaint, at 1-2.) Plaintiffs have filed their Omnibus Class Action Complaint in the Eastern District of Louisiana, where, by June 15, 2009 Transfer Order of the Judicial Panel of Multidistrict Litigation, other actions involving Chinese-manufactured drywall had previously been transferred **only** for pretrial proceedings pursuant to 28 U.S.C. § 1407.

Plaintiffs are residents of the State of Florida, where the house at issue in this action is located.  (Complaint ¶ 441.)  Maronda is a real estate developer and home builder that builds homes only in the State of Florida.  (Affidavit of Gregg Carlson ¶ 3.) It is a Florida corporation with its principal address in Pennsylvania.  *Id.* ¶ 4.  It is a wholly owned subsidiary of Maronda, Inc., a Pennsylvania corporation with a principal place of business in Pennsylvania.  *Id.* ¶ 5.  Neither Maronda nor Maronda, Inc. nor any of their affiliated entities have ever built a home in Louisiana, sold a home in Louisiana, conducted or sought to conduct business in Louisiana, nor in any way targeted their activities towards Louisiana.  *Id.* ¶¶ 6-7.

In the absence of a single contact between Maronda and the State of Louisiana, this Court simply cannot assert personal jurisdiction over Maronda on claims that arise from real property constructed by Maronda in the State of Florida.  While it may be convenient for Plaintiffs to file a class action in the district where other actions have been transferred for multidistrict litigation of pretrial proceedings, neither Plaintiffs' convenience, nor the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) &(d)(6), nor the pendency of multidistrict litigation pursuant to 28 U.S.C. § 1407 can abrogate Maronda's due process right not to be subject to litigation in a forum with which is has established no meaningful contacts.  Accordingly, this action against Maronda must be dismissed.

Furthermore, the standard Purchase Agreement that is utilized by Maronda for house sales in the State of Florida, including the house now owned by Plaintiffs, contains the following clear, conspicuous and unambiguously broad arbitration provisions:

C. WITHOUT LIMITING ANY RIGHTS SET FORTH IN OTHER SECTIONS OF THIS AGREEMENT AND AFTER THE REQUIREMENTS OF SECTION 17A

AND 17B ABOVE HAVE BEEN SATISFIED, ANY AND ALL DISPUTES ARISING HEREUNDER . . . SHALL BE SUBMITTED TO BINDING ARBITRATION AND NOT TO A COURT FOR DETERMINATION. . . .

D. BY INITIALING BELOW, BUYER AGREES TO HAVE ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER DOCUMENT SIGNED OR INITIALED IN CONNECTION WITH THIS AGREEMENT, THE HOME, THE RELATIONSHIP BETWEEN THE PARTIES, STATUTORY VIOLATIONS, AND/OR ANY ALLEGED DUTIES OR OBLIGATIONS BETWEEN THE PARTIES DETERMINED BY BINDING ARBITRATION AND HEREBY ACKNOWLEDGES AND AGREES THAT IT HAS UNEQUIVOCALLY GIVEN UP AND WAIVED ANY RIGHT OR OPPORTUNITY TO FILE, LITIGATE, OR HAVE HEARD ANY CLAIMS, CAUSES OF ACTION OR DISPUTES IN A FEDERAL, STATE OR OTHER COURT OF LAW OR EQUITY. IN NO EVENT SHALL BUYER BE ENTITLED TO A TRIAL BY JURY. IN THE EVENT THAT BUYER FILES ANY ACTION IN A COURT OF LAW AGAINST SELLER, BUYER CONSENTS TO THE IMMEDIATE ENTRY OF AN ORDER OF DISMISSAL WITH PREJUDICE OF ALL CAUSES OF ACTION AGAINST SELLER. IN SUCH EVENT BUYER SHALL REIMBURSE SELLER FOR ALL ATTORNEYS FEES AND COSTS INCURRED IN OBTAINING SUCH ORDER OF DISMISSAL.

(Affidavit of Gregg Carlson ¶13; Exhibit A to Affidavit of Gregg Carlson ¶¶ 17.C & .D, at 5-6.)

These provisions are valid and enforceable and clearly encompass all the claims asserted against Maronda in the Complaint. Maronda therefore is entitled to "immediate dismissal with prejudice" and an award of attorney's fees and costs under the terms of the Purchase Agreement, or, at a minimum and in the alternative, to the entry of a stay pending arbitration under the Federal Arbitration Act, 9 U.S.C. § 3.

Lastly, the Subclass Representatives' class claims must be stayed pending compliance with the requirements of Chapter 558 of the Florida Statutes, which mandates that any action arising from a construction defect in the State of Florida that is brought without first completing the statutory process for notice and an opportunity to cure **must** be stayed. *See* Fla. Stat. §§ 558.003, 558.004. There are at most five (and,

more likely, three) houses built by Maronda that potentially still incorporate Chinese-manufactured drywall.  (*See* Affidavit of Gregg Carlson ¶¶ 9-10, 15.)   All of these houses are located in the State of Florida.  *See id.* ¶¶ 11, 15.  The owners of three of these five houses have not yet complied with the statutory requirements of § 558.004 (*see id.* ¶¶ 14-15), and therefore the class claims asserted in the Complaint must be stayed pursuant to § 558.003 and § 558.004(7).

ARGUMENT

**I.     This Court Does Not Have Personal Jurisdiction Over Maronda.**

When personal jurisdiction is challenged by the defendant, it is the plaintiff's burden to establish it.  *See Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1138 (5th Cir. 1980).  On a motion to dismiss for lack of personal jurisdiction, this Court considers the allegations of the Complaint as true only to the extent they are not controverted by the defendant's affidavit.  *See Asarco, Inc. v. Glenara Ltd.*, 912 F.2d 784, 785 (5th Cir. 1990).

Under well-established precedents, there are two jurisdictional analyses that may apply depending on the relationship between the defendant's contacts with the forum and the cause of action.  When the cause of action arises out of the defendant's forum contacts, the court conducts a "specific" jurisdiction analysis.   *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).  When the cause of action does not arise out of the defendant's forum contacts, the court must determine whether the defendant's forum contacts support the exercise of "general" jurisdiction.   *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984).  In this case,

4

however, the distinction between specific and general jurisdiction is academic, given that Maronda has absolutely no contacts with the forum.

A.    This Court May Not Assert Specific Jurisdiction.

In order to exercise specific jurisdiction over a nonresident defendant, two requirements must be met.   "First, the defendant must be amenable to service of process under the forum state's jurisdictional long-arm statute.   Second, the exercise of jurisdiction under this statute must comport with norms imposed by the due process clause of the fourteenth amendment."   *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).

Louisiana's long-arm statute provides:

A.   A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

(1) Transacting any business in this state.

(2) Contracting to supply services or things in this state.

(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.

(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

(5) Having an interest in, using or possessing a real right on immovable property in this state.

(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.

(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.

(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.

B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

La. R.S. § 13:3201. Thus, Louisiana's long-arm statute is effectively coextensive with the Fourteenth Amendment, and the jurisdictional inquiry turns on the constitutional analysis. *See Superior Supp. Co. v. Associated Pipe & Supp. Co.*, 515 So.2d 790, 792 (La. 1987).

A court may constitutionally assert personal jurisdiction over a nonresident defendant only when that defendant has such "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *accord Dalton v. R&M Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).

In deciding whether personal jurisdiction is consistent with the Due Process Clause, a three-prong test is applied: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

1.      *Maronda Has Not Purposely Directed Activities Toward Louisiana Nor Conducted Any Activities There.*

To support assertion of personal jurisdiction over Maronda, Plaintiffs must "identify some act whereby [Maronda] 'purposefully avail[ed] itself of the privilege of

conducting activities [in Louisiana], thus invoking the benefits and protections of its laws.'" *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469-70 (5th Cir. 2006); *accord Hanson v. Denckla*, 357 U.S. 235, 253 (1958).   The litmus test is whether the defendant's forum conducts are such that it would "reasonably anticipate[ ] being haled into court" in Louisiana.   *Luv n' Care, Ltd.*, 438 F.3d at 470; *accord World Wide Volkswagen Corp.*, 444 U.S. at 297.

Fortunately, the instant case does not require close analysis to determine whether Maronda's contacts with Louisiana are of a kind and quality that would make it reasonably foreseeable that it would be haled into court there.   This is because Maronda simply has **no** contacts with Louisiana at all.

Indeed, Plaintiffs do not even allege to the contrary.   The Complaint does not even contain an allegation of personal jurisdiction.   To the contrary, it alleges that Maronda has a principal place of business in Pennsylvania, and that it installed defective drywall in homes it built for certain Plaintiffs in Florida.   (Complaint ¶¶ 441, 776, 2352 & Sched. 3).

In fact, Maronda is a real estate developer and home builder that builds houses only in the State of Florida.   (Affidavit of Gregg Carlson ¶ 3.)   It is a Florida corporation with its principal address in Pennsylvania.   *Id.* ¶ 4.   It is the wholly owned subsidiary of Maronda, Inc., a Pennsylvania corporation with a principal place of business in Pennsylvania.   *Id.* ¶ 5.   Neither Maronda, Maronda, Inc. nor any of their affiliated entities has ever built a home in Louisiana, sold a home in Louisiana, conducted or sought to conduct business in Louisiana, advertised in Louisiana, nor in any way targeted their activities towards Louisiana.   *Id.* ¶¶ 6-7.   Moreover, the very nature of Maronda's

products, namely houses, is such that they do not move in the stream of commerce but stay fixed to the real estate on which they are built.

In the absence of any contacts between Maronda and the State of Louisiana, much less contacts constituting the kind of purposeful availment that would cause Maronda to reasonably anticipate being haled into court there, Plaintiffs have wholly failed to carry their burden of demonstrating the kind of minimum contacts that support the exercise of personal jurisdiction.

2.      *Plaintiffs' Claims Do Not Arise Out of Any Contact Between Maronda and the State of Louisiana.*

The second prong of the inquiry under *Nuovo Pignone, SpA* is whether the plaintiff's cause of action arises from the defendant's contacts with the forum. *Nuovo Pignone, SpA*, 310 F.3d at 378. As explained above, Maronda has no contacts with the forum. It necessarily follows that Plaintiffs' causes of action cannot arise from nonexistent contacts. Rather, as is clear from the Complaint, Plaintiffs' causes of action against Maronda all arise out of Maronda's construction and/or sale of houses in Florida owned by plaintiffs who are Florida residents. (Complaint ¶¶ 441, 776, 2352 & Sched. 3).

3.      *Assertion of Jurisdiction Would Offend Traditional Notions of Fair Play and Substantial Justice.*

The final prong of the jurisdictional inquiry under *Nuovo Pignone, SpA* is whether the court's exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Id.* If the assertion of jurisdiction in the absence of a single contact with the forum could comport with notions of fair play and substantial justice, then there is no case in which jurisdiction could not be asserted, and the limits on the exercise of

personal jurisdiction would be illusory.  This is simply not the law, and this Court's assertion of personal jurisdiction over Maronda would violate all notions of fair play and substantial justice.

B.    Maronda Is Not Subject to General Jurisdiction.

Given the complete lack of contact between Maronda and the State of Louisiana, any argument for the assertion of general jurisdiction can be addressed summarily. Where the plaintiff's cause of action does not arise from the defendant's contacts with the forum, due process permits the exercise of jurisdiction only when the defendant has "continuous and systematic contacts" with the forum.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  "The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and forum." *Olagues v. Kousharian*, 557 F. Supp. 2d 731, 738 (E.D. La. May 27, 2008).

Plainly, given that Maronda has **no** contacts with Louisiana, has never built or sold a home there, has never conducted nor sought to conduct business there, nor in any way targeted its activities there, and further that the nature of Maronda's products (i.e., houses) is that they do not move in the stream of commerce but stay fixed to the foreign real estate on which they are built, it cannot be said that Maronda has the kind of continuous and systematic contacts that support the exercise of general jurisdiction. (*See* Affidavit of Gregg Carlson ¶¶ 6-7.)

C.    The Fact That This Is a Class Action and a Multi-District Litigation Has No Effect on the Personal Jurisdictional Analysis.

Jurisdictional analysis does not change merely because the plaintiffs have opted to bring a class action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) &(d)(6).  See *In re Train Derailment Near Amite, Louisiana, on October 12,*

*2002*, No. MDL 1531, 2004 WL 224573, at * 1, 3 (E.D. La. Feb. 3, 2004) (holding that conversion from multidistrict litigation to class action had no bearing on the personal jurisdiction determination, which "depends solely on the defendant['s] . . . conduct in and contacts with the forum state"); *see also Morrison v. YTB Int'l, Inc.*, 641 F. Supp. 2d 768, 777-81 (S.D. Ill. 2009) (applying ordinary jurisdictional analysis to claim under CAFA); *Baumkel v. Scotts Miracle-Gro Co.*, No. 08-14137, 2009 WL 3190477, at *1-4 (E.D. Mich. Sept. 28, 2009) (same).  CAFA expands the subject matter jurisdiction of the federal courts, but does not affect personal jurisdiction.  Indeed, Congress could not by mere statute deprive a defendant of its constitutional due process right not to be subject to the judgment of a forum with which it has established no meaningful contacts.

Similarly, as explained by the Judicial Panel on Multidistrict Litigation, multidistrict litigation does not deprive defendants of any right entitled to judicial protection, nor has Congress given any indication that in enacting 28 U.S.C. § 1407 "it intended to expand the territorial limits of effective service."  *In re Library Editions of Children's Books*, 299 F. Supp. 1139, 1142 (J.P.M.L. 1969); *accord In re Gypsum Wallboard*, 302 F. Sup. 794, 794 & n.1 (J.D.M.L. 1969).

In sum, in the absence of specific or general jurisdiction as discussed above, this Court may not assert personal jurisdiction over Maronda.

## II.     This Action Must Be Dismissed or Stayed Pending Arbitration.

The law is clear that a valid arbitration clause of the kind involved in this case compels a stay of any action not brought pursuant to the arbitration procedures outlined in the parties' agreement.

The Federal Arbitration Act ("FAA"), 9. U.S.C. § 1 *et seq.*, governs all contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. In enacting the FAA, Congress exercised its legislative power to the fullest extent permissible by the Commerce Clause, reaching all contracts affecting interstate commerce. *See Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 273-74 (1995). There can be no doubt that interstate commerce is involved in and affected by the contracts at issue in this case for the construction of houses incorporating components and/or materials brought in from out of state (and, indeed, in some instances, like the drywall at issue allegedly, from overseas). *See* Affidavit of Gregg Carlson ¶ 12; *Allied-Bruce Terminix Cos.*, 513 U.S. at 282 (contract for termite treatment and home repair services involves interstate commerce in light of the use of termite-treating and house-repairing materials that came from out of state); *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145, 147-48 (5th Cir. 1987) (construction contract involves commerce and is subject to the FAA), *overruling on other grounds recognized by Pedcor Mng't Co., Inc. Welfare Ben. Plan v. Nations Personnel, Inc.*, 343 F.3d 355, 362 (5th Cir. 2003); *Gill v. Jim Walter Homes*, 187 F. Supp. 2d 618, 620-21 (applying FAA to residential construction contract).

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has stressed that the FAA sets forth a strong federal policy favoring arbitration and establishes "that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Moreover, the FAA expressly authorizes and, in fact, mandates that a court stay any proceeding brought before it in favor of arbitration where the claim asserted is subject to arbitration pursuant to the parties' agreement.  *See Williams v. Cigna Fin. Advisors*, 56 F.3d 656, 659 (5th cir. 1995).  Specifically, the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

In deciding whether a dispute must be arbitrated under the FAA, a court conducts a two-step inquiry: "first whether parties agreed to arbitrate, and, second, whether federal statute or policy renders the claims nonarbitrable." *Dealer Computer Servs. v. Old Colony Motors*, 588 F.3d 884, 886 (5th Cir. Nov. 19, 2009).  Ordinary state law principals governing contract formation determine whether the parties have agreed to arbitrate.  *See Gill*, 187 F. Supp. 2d at 622.  In the absence of any reason to invalidate the parties' private contractual agreement, an arbitration provision in a home sales and construction contract that is supported by consideration is valid and enforceable.  *See id.*

Moreover, when a contractual arbitration provision uses language referring to all claims arising out of or relating to the parties' agreement, this language is to be interpreted expansively as reaching all aspects of their relationship and embracing all claims under common law, as well as federal and state statutes.  *See id.* at 625 (claims arising from alleged defects in the construction of plaintiff's home); *see also Commerce*

*Park v. Mardian Constr. Co.*, 729 F.2d 334, 336, 339 & n.4 (5th Cir. 1984) (statutory deceptive practices claims "relates to" construction contract and is thus arbitrable); *cf. Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979) ("unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted").

Maronda's standard Purchase Agreement used for Florida house sales, including the sale of the three houses known to contain Chinese-manufactured drywall, contains the following broad arbitration clauses, which are conspicuously printed in all capital letters and which the buyer is required to specifically and separately initial:

> C.  WITHOUT LIMITING ANY RIGHTS SET FORTH IN OTHER SECTIONS OF THIS AGREEMENT AND AFTER THE REQUIREMENTS OF SECTION 17A AND 17B ABOVE HAVE BEEN SATISFIED, ANY AND ALL DISPUTES ARISING   HEREUNDER   . . . SHALL   BE   SUBMITTED   TO   BINDING ARBITRATION AND NOT TO A COURT FOR DETERMINATION. . . .

> D.  BY INITIALING BELOW, BUYER AGREES TO HAVE ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER DOCUMENT SIGNED OR INITIALED IN CONNECTION WITH THIS AGREEMENT, THE HOME, THE RELATIONSHIP BETWEEN THE PARTIES, STATUTORY   VIOLATIONS,   AND/OR   ANY   ALLEGED   DUTIES   OR OBLIGATIONS BETWEEN THE PARTIES DETERMINED BY BINDING ARBITRATION AND HEREBY ACKNOWLEDGES AND AGREES THAT IT HAS UNEQUIVOCALLY GIVEN UP AND WAIVED ANY RIGHT OR OPPORTUNITY TO FILE, LITIGATE, OR HAVE HEARD ANY CLAIMS, CAUSES OF ACTION OR DISPUTES IN A FEDERAL, STATE OR OTHER COURT OF LAW OR EQUITY.  IN NO EVENT SHALL BUYER BE ENTITLED TO A TRIAL BY JURY. IN THE EVENT THAT BUYER FILES ANY ACTION IN A COURT OF LAW AGAINST SELLER, BUYER CONSENTS TO THE IMMEDIATE ENTRY OF AN ORDER OF DISMISSAL WITH PREJUDICE OF ALL CAUSES OF ACTION AGAINST SELLER.  IN SUCH EVENT BUYER SHALL REIMBURSE SELLER FOR ALL ATTORNEYS FEES AND COSTS INCURRED IN OBTAINING SUCH ORDER OF DISMISSAL.

(Affidavit of Gregg Carlson ¶13; Exhibit A to Affidavit of Gregg Carlson ¶¶ 17.C & .D, at 5-6.)

These arbitration provisions are supported by consideration, and there is no basis upon which to invalidate the buyers' agreement to their terms.  Moreover, all of the causes of action asserted against Maronda relate to the contract, the house, the relationship between the parties, statutory violations and/or duties or obligations between the parties and thus fall within the scope of the expansive arbitration provisions.  Accordingly, the parties have clearly agreed to arbitrate, and the first prong of the arbitrability analysis is satisfied.

Turning to the second prong of the inquiry, the burden is on the party opposing arbitration to demonstrate that conflicting federal legislation evidences that Congress intended to preclude waiver of judicial remedies for the statutory rights at issue.  *See Gill*, 187 F. Supp. 2d at 625-26.  Plaintiffs are wholly unable to meet this burden and, indeed, have not even asserted any federal statutory claims, much less claims under a statute that could be read as evidencing the requisite congressional intent.

Thus, the claims asserted against Maronda must be arbitrated, and, under the contract, Maronda is entitled not only to "immediate dismissal with prejudice" but also an award of attorney's fees and costs.  At a minimum and in the alternative, the FAA mandates the entry of a stay pending arbitration.

III.    **This Action Must Be Stayed Pending Compliance With Chapter 558 of the Florida Statutes.**

Chapter 558 of the Florida statutes applies to all claims for property damage arising from a construction defect and imposes specific requirements regarding notice and an opportunity to cure with which a claimant must comply before filing an action

14

asserting such claims.  Fla. Stat. §§ 558.003, 558.004.   If an action is filed without first complying with these requirements, "on timely motion by a party to the action the court shall stay the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements." Fla. Stat. § 558.003.

This case should be stayed because potential absent class members have yet to comply with the requirements of Chapter 558.  There are at most five houses built by Maronda incorporating Chinese drywall.  (Affidavit of Gregg Carlson ¶ 9, 15.)  Of these five, three are known to incorporate Chinese drywall: the house owned by the Subclass Representatives, the house owned by Francesca and Brian Gardner, who are Named Plaintiffs in this Omnibus Action but who, as required by Chapter 558, have not asserted a claim against Maronda herein,[1] and the house owned by one of the potential absent class members.  *See id.* ¶¶ 9-10.  Beyond these three houses, there are at most two other houses that might possibly contain Chinese-manufactured drywall, the owners of which thus might be potential class members.  *See id.* ¶ 15.

The process for notice and an opportunity to cure that is required by Chapter 558 has not yet concluded with respect to three of the five houses built by Maronda and potentially involved in this class action.  *See id.* ¶ 14-15.  With respect to the Gardner house, Maronda has made a remediation proposal, and is awaiting a written response from the owners, as required by § 558.004(7).  *See id.* ¶ 14 & Exhibit B; *see also* Fla. Stat. § 558.004(7) ("If a claimant initiates an action without first accepting or rejecting the offer, the court shall stay the action upon timely motion until the claimant complies

---

[1] The Gardners are identified in paragraph 776 of the Complaint, which states that they are "participating as class representatives in the class and subclasses as set forth in the schedules accompanying this complaint." (Complaint ¶ 776.)  The Gardners are not set forth in Schedule 3, the Builder Developer List of Subclasses to the Complaint, and thus have not asserted a claim against Maronda. (Complaint, Schedule 3.)

with this subsection.").  With respect to the other two houses, Maronda is in the process of scheduling the inspection to which it is entitled under § 558.004(2) and which will determine whether Chinese-manufactured drywall is in fact even present in the houses. (*See* Affidavit of Gregg Carlson ¶ 15; Fla. Stat. § 558.004(2).)

Given that the owners of three of the five houses potentially at issue in this class action have not yet completed the statutory process that is a precondition to any suit (and where a class action is clearly an inappropriate vehicle to resolve claims relating to only two houses), the class claims asserted in this class action must be stayed until subclass members have complied with Chapter 558.

## CONCLUSION

For the foregoing reasons, Maronda respectfully requests that this Court grant Maronda's Motion to Dismiss, or, in the Alternative, to Stay, and dismiss this action.  At a minimum and in the alternative, Maronda respectfully requests that this Court stay this action pending both arbitration and compliance with Florida Statutes Chapter 558.

Respectfully submitted,

*/s/ Robert D. Finkel*
Robert D. Finkel, Esquire
rfinkel@mmlpc.com
PA ID No. 71130
MANION MCDONOUGH & LUCAS, P.C.
600 Grant Street, Suite 1414
Pittsburgh, Pennsylvania 15219
(412) 232-0200
(412) 232-0206
Firm I.D. No. 786

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail <u>and</u> upon all parties by electronically uploading the same to Nexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 24th day of March, 2010.


/s/  *Robert D. Finkel*
Robert D. Finkel, Esquire
PA ID No. 71130
rfinkel@mmlpc.com
MANION MCDONOUGH & LUCAS, P.C.
600 Grant Street, Suite 1414
Pittsburgh, Pennsylvania 15219
(412) 232-0200
(412) 232-0206
Firm I.D. No. 786