IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL NO. 2047 |
| DRYWALL PRODUCTS LITIGATION | * | |
| | * | |
| _____ | * | SECTION: "L" |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| Payton, et al. v. Knauf GIPS KG, et al. | * | |
| | * | JUDGE FALLON |
| Case No. 09-7628, Sect. L MAG. 2 | * | MAG. JUDGE WILKINSON |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**TUSCAN-HARVEY ESTATE HOMES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT**

**MAY IT PLEASE THE COURT:**

Defendant, Tuscan-Harvey Estate Homes, Inc. ("Tuscan-Harvey"), moves this Court for an Order dismissing the claims asserted against it by Plaintiffs, William & Jill Wachter ("Tuscan-Harvey Homeowners"), in the Class Action Complaint based on Federal Rules of Civil Procedure 12(b)(2), 12(b)(7), and 12(b)(6).

## I. BACKGROUND

On or about December 9, 2010, over two thousand Plaintiffs filed a Class Action Complaint ("Complaint") in the instant matter against over five hundred defendants, including

1

Tuscan-Harvey. The suit alleges that Plaintiffs' homes were damaged from defective drywall, and that Defendants played a role in this. However, out of the 2,067 Plaintiffs in the Complaint, only two Plaintiffs, William and Jill Wachter of Palm Beach Gardens, Florida, make allegations against Tuscan-Harvey. (Complaint, p. 106, ¶ 566; Schedule 3 to Complaint: Builder/Developer List, p. 64). As noted in the Complaint, Tuscan-Harvey is a home builder headquartered and doing business in Florida.

## II. ARGUMENT

A. **The Tuscan-Harvey Homeowners' Complaint must be Dismissed because the Court Lacks Personal Jurisdiction over Tuscan-Harvey.**

### 1. Tuscan-Harvey Lacks Minimum Contacts with Louisiana

Tuscan-Harvey is a Florida corporation, with its principal place of business in Boca Raton, Florida. (*See* Exhibit "A" for Affidavit of David B. Harvey, ¶ 3). It has not conducted business in Louisiana, nor does it have any plans to do so in the foreseeable future. *Id*. at ¶ 12-14. It does not have a registered agent for service of process in Louisiana. *Id*. at ¶ 11. Tuscan-Harvey also lacks a post office box in Louisiana. *Id*. at ¶ 10. And, as provided for in the Complaint, the home at issue in this case is located in Florida, not Louisiana.

For a federal court to exercise personal jurisdiction over a non-resident defendant such as Tuscan-Harvey, there must be "minimum contacts" between the forum state and the non-resident which result from some type of affirmative act on the part of the non-resident. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). After a court determines that there have been sufficient minimum contacts with the forum state, then other factors must also be considered to

2

ascertain whether the exercise of personal jurisdiction would offend the notions of "fair play and substantial justice." *International Shoe*, 326 U.S. at 316; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Under the minimum contacts analysis, a court can have specific jurisdiction based on the extent of the non-resident defendant's contacts with the forum state relative to the particular case at issue, as outlined in *Helicopteros Nacionales de Colombia*, *S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Or, a court can have general jurisdiction when the non-resident defendant is deemed to have "sufficiently systematic" interactions with the forum state that do not relate to the controversy. *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985). The defendant's connection with the forum state must be such that he "should reasonably anticipate being haled into court" there. *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

The analysis to be applied in the instant situation is straightforward as there have been no allegations asserted by the Tuscan-Harvey Homeowners against Tuscan-Harvey which would indicate that Tuscan-Harvey had any contacts with Louisiana, whether unrelated or related to the subject matter of this lawsuit. Clearly, the actions of Tuscan-Harvey were not such that the company should have "reasonably anticipated being haled into court" in Louisiana under the theory of either specific or general jurisdiction.

**2. The Court Lacks Specific Jurisdiction over Tuscan-Harvey**

This Court does not possess specific jurisdiction over Tuscan-Harvey since the facts involving the Tuscan-Harvey Homeowners' purchase of the house at issue here from Tuscan-

3

Harvey do not involve Louisiana in any way. The Tuscan-Harvey Homeowners are located in Florida, the home containing allegedly defective drywall is in Florida, the contract was entered into in Florida, and finally, Tuscan-Harvey is a Florida-based company. There has been no activity relative to the purchase or construction of the Tuscan-Harvey Homeowners' residence that has anything to do with the forum state of Louisiana. As a result, the Court cannot exercise specific jurisdiction over non-resident, Tuscan-Harvey.

### 3. The Court Lacks General Jurisdiction over Tuscan-Harvey

Likewise, the Court does not have general jurisdiction over Tuscan-Harvey. Tuscan-Harvey is a Florida company which has never conducted business in Louisiana. It does not have any contacts with the forum state, much less than the "minimum contacts" required for jurisdiction under *International Shoe*. If Tuscan-Harvey is forced to defend this suit in Louisiana, it will offend the notions of fair play and substantial justice by forcing this Florida company to litigate in Louisiana at a great expense. Doing so would not further this case along—indeed, since the witnesses, defendant and plaintiffs in the dispute are in Florida, litigating it in Louisiana would be inefficient and costly for all parties. As a result, this Court lacks personal jurisdiction over Tuscan-Harvey and should respectfully dismiss the claims asserted herein against the company.

**B.  The Tuscan-Harvey Homeowners' Complaint must be Dismissed because the Tuscan-Harvey Homeowners did not Join Necessary or Indispensable Parties, i.e., the Subcontractors.**

### 1. Rule 12(b)(7) Standard

The Complaint has identified four classes of Defendants—Distributor/Suppliers, Importer/Exporter Brokers, Builder/Developers, and Contractor/Installer. However, noticeably

4

absent in the Complaint is any reference to subcontractors, who many builders, including Tuscan-Harvey, relied upon in good faith to perform installation work and select the allegedly defective drywall.  Without these subcontractors being included as a party to this suit, complete relief cannot be accorded.  As such, the Tuscan-Harvey Homeowners' Complaint should be dismissed based on the failure to join subcontractors, who are necessary and indispensable parties to the action.

According to Rule 12(b)(7) of the Federal Rules of Civil Procedure, a complaint should be dismissed when it fails to join a party that is deemed necessary and/or indispensable under Rule 19 of the Federal Rules of Civil Procedure.  Rule 19(a) requires the joinder of all parties whose presence in a lawsuit is required for "the fair and complete resolution of the dispute at issue."  *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986)).  If all of the parties may not be joined, then the action must be dismissed.  Fed.R.Civ.P. 19(b); *Pulitzer-Polster,* 784 F.2d at 1308.

**2. Rule 19(a) Requires the Subcontractors to be Joined in this Matter**

As the Fifth Circuit stated in *HS Resources v. Wingate*, *supra*, a court must first determine under Rule 19(a) whether a person should be joined to the lawsuit; if joinder is warranted, then the person will be brought into the lawsuit.  In the case at bar, many of the builder defendants, including Tuscan-Harvey, used the services of subcontractors to build the homes at issue in this litigation.  Those subcontractors were invariably responsible for ordering products, including drywall, and interacting with the various suppliers who have been made defendants in this matter.  Therefore, the subcontractors will be in the best position to provide information concerning which supplier provided which product(s) for use in certain homes.

5

Without the inclusion of the subcontractors in this matter, Tuscan-Harvey and other builder defendants' ability to protect their interests are impaired and/or impeded, and leave them open to the risk of incurring otherwise inconsistent obligations which would run afoul of Rule 19(a) of the Federal Rules of Civil Procedure. *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009).

### 3. Rule 19(b) Requires that this Matter be Dismissed

If joining the necessary and indispensable subcontractors would destroy diversity jurisdiction in this case, then the Court must determine under Rule 19(b) whether to continue the suit without the subcontractors, or dismiss the suit. Factors to consider in making this decision under Rule 19(b) include "(1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4) whether the plaintiff has another effective forum if the suit is dismissed." *HS Resources, Inc. v. Wingate*, 327 F.3d at 439 (quoting *Cornhill Ins. PLC v. Valsamis, Inc.,* 106 F.3d 80, 84 (5th Cir. 1997)). Adequate relief certainly cannot be given without participation of the subcontractors as previously noted. It is clear that Tuscan-Harvey and other defendants will be prejudiced in the absence of the subcontractors. Likewise, the subcontractors will likely be prejudiced by any judgment rendered in their absence. For these reasons, this action should be dismissed.

**C.   The Tuscan-Harvey Homeowners' Complaint Must be Dismissed for Failure to State a Claim for which Relief can be Granted.**

### 1. The Contract Controls the Claims in this Case

Tuscan-Harvey has been sued by the Tuscan-Harvey Homeowners under the following theories: I) Negligence; II) Negligence Per Se; III) Strict Liability; IV) Breach of Express and/or Implied Warranties; V) Breach of the Implied Warranty of Fitness and Merchantability under Florida Statutes section 718.203; VI) Breach of the Implied Warranty of Habitability; VII) Breach of Contract; XI) Private Nuisance; XII) Negligent Discharge of a Corrosive Substance; XIII) Unjust Enrichment; and XV) Equitable and Injunctive Relief for Medical Monitoring. However, since Tuscan-Harvey entered into a written contract with Tuscan-Harvey Homeowners, William and Jill Wachter, regarding the home that is the subject matter of this action, each of the above counts should be dismissed except for the claims for breach of express warranty and breach of contract as the contract in this case controls any claims stemming from same. (*See* Exhibit "B" for the written contract between the Tuscan-Harvey Homeowners and Tuscan-Harvey with Addendums A, B, C, and D; and Exhibits A, B, C, and D to same).

## 2. The Economic Loss Rule Prevents Recovery for Tort Claims when there is a Contract

The Order and Reasons (Rec. Doc. No. 741) issued by Judge Fallon on January 13, 2010, MDL Case No. 2047, states:

> Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. **Accordingly, under the contractual privity ELR ("Economic Loss Rule"), the terms of those contracts will generally determine the remedies available to Plaintiffs.** (emphasis supplied)

While the Court denied on that date the Manufacturer and Distributor Defendants' Rule 12(b)(6) Motions to Dismiss based on the ELR due in part to the absence of contractual privity between the parties, the Court noted in its Order and Reasons that, unlike the manufacturer and

7

distributors, the homebuilder defendants are in contractual privity with Plaintiffs. This Court then instructed that, "whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity ELR established by the Florida Supreme Court case of *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004)." *Id*. at 30.

In *Indemnity Insurance*, the Florida Supreme Court noted that the prohibition against tort actions to recover economic damages for those who entered into a contract exists to prevent parties in a contract from dodging the terms of any losses as set forth in the contract by bringing an action for economic loss in tort. *Indemnity Ins. Co.,* 891 So.2d at 536 (quoting *Ginsberg v. Lennar Fla. Holdings, Inc*., 645 So.2d 490, 494 (Fla. 3d DCA 1994)("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort.").

Again, Tuscan-Harvey entered into a contract with the Tuscan-Harvey Homeowners. As a result of that contract and based on the Florida Supreme Court's rationale found in *Indemnity Insurance, supra,* any remedies for economic damages other than breach of contract and breach of express warranties that the Tuscan-Harvey Homeowners may have against Tuscan-Harvey, if any, are found in contract law not in tort. To the extent that the Tuscan-Harvey Homeowners allege tort claims for personal injury or damage to property other than the home itself, any damages in this case should be limited to non-economic damages for personal injury and damages for the "other property." The Tuscan-Harvey Homeowners have not specifically pled any damage to separate property.

### 3. All Property Damage Claims asserted against Tuscan-Harvey should be Dismissed based on the Contractual Privity ELR

The Tuscan-Harvey Homeowners' claims against Tuscan-Harvey for negligence, negligence per se, strict liability, private nuisance, and negligent discharge of a corrosive substance should be dismissed based on the contractual privity ELR since the Tuscan-Harvey Homeowners and Tuscan-Harvey have a written agreement relating to the home at issue. The Tuscan-Harvey Homeowners' attempt to do an end-run around the terms of the contract are in direct contravention of the contractual privity ELR, which does not allow a homeowner to "circumvent the contractual agreement by…seeking a better bargain than originally made." *Indemnity Ins. Co*., 891 So.2d at 536.

Indeed, just because a "house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concept of contract, not tort, law." *Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc.,* 620 So.2d 1244, 1247 (Fla. 1993) (citing *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 870, 106 S.Ct. 2295 (1986)).

Tellingly, the same factual allegations are incorporated in the Tuscan-Harvey Homeowners' negligence claim as those found in the breach of contract claim. There is no damage to separate property or a separate tort pled which would allow the Tuscan-Harvey Homeowners to avoid the reach of the contractual privity ELR. *See e.g., Swaebe v. Sears World Trade,* 639 So.2d 1120 (Fla. 3d DCA 1994) ("absent a separate and independent tort, breach of contract may not be converted into a tort action"). Accordingly, the Tuscan-Harvey Homeowners' claims for negligence, negligence per se, strict liability, private nuisance, and

9

negligent discharge of a corrosive substance, found in the Complaint at Counts I, II, III, XI, and XII, respectively, should be dismissed pursuant to contractual privity ELR.

### 4. The Breach of Implied Warranty Claims should be Dismissed

The contract between Tuscan-Harvey and the Tuscan-Harvey Homeowners does not provide for any implied warranties such that the Tuscan-Harvey Homeowners' implied warranty claims found at Count IV and VI should also be dismissed. (*See* Exhibit "B" and Addendum A to same). Since the Tuscan-Harvey Homeowners entered into a contract which does not provide for any implied warranties, these implied warranty claims should be dismissed. *Barile Excavating & Pipeline Co. v. Vacuum Under-Drain, Inc.,* 362 So.2d 117 (Fla. 1st DCA 1978).

In addition, the Tuscan-Harvey Homeowners' claims at Count IV and VI should also be dismissed because any claim for breach of implied warranty of fitness for intended purpose requires the allegedly defective product to fail its intended purpose. As the Court noted in its January 13, 2010 Order and Reasons (Rec. Doc. 741), the product at issue in this case, the purportedly defective drywall, "is not crumbling, deteriorating, or failing to serve its purported purpose." Slip op. at pp. 18-19. For these reasons, Count IV and VI do not apply here such that they should be dismissed.

Additionally, Count V of the Complaint, which asserts a claim for breach of warranty under Chapter 718, the Florida Condominium Statute, should also be dismissed as no facts have been plead by the Tuscan-Harvey Homeowners to support such a claim against Tuscan-Harvey. Moreover, the Complaint fails to provide any information regarding which statutory warranty under the Florida Condominium Statute applies in this particular case.

Therefore, the claims for implied warranty at Counts IV, V, and VI, should be dismissed due to the applicable contract. If the Tuscan-Harvey Homeowners do intend to assert a claim against Tuscan-Harvey based on Count V and the Florida Condominium Statute, they should be forced to amend their Complaint to allege these facts with sufficient specificity.

### 5. The Unjust Enrichment Claim should be Dismissed

Quite simply, the Tuscan-Harvey Homeowners do not possess a valid unjust enrichment claim against Tuscan-Harvey due to the existence of the above-referenced contract. Where there is an express contract between the parties, such as there is here, claims arising out of that contractual relationship will not support a claim for unjust enrichment. *Moynet v. Courtois*, 8 So.3d 377 (Fla. 3d DCA 2009) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank,* 989 So.2d 696, 697 (Fla. 1st DCA 2008); *Harding Realty, Inc. v. Turnberry Towers Corp.,* 436 So.2d 983 (Fla. 3d DCA 1983)). As a result, Count XIV of their Complaint, in which a cause of action for unjust enrichment is pled, should be dismissed.

### 6. The Medical Monitoring Claim should be Dismissed

The Tuscan-Harvey Homeowners seek damages for the costs associated with the development of a medical monitoring program at Count XV of the Complaint. However, it is well established that medical monitoring is provided for only in certain limited instances following a showing of need. For instance, a Florida appellate court stated that the following elements must be met in order to state a claim for medical monitoring: (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's

11

negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Petito v. A.H. Robins, Co., Inc.,* 750 So.2d 103 (Fla. 3d DCA 1999). Notably, the Tuscan-Harvey Homeowners have not met this showing such that their claim for medical monitoring found at Count XV of the Complaint should be dismissed.

### III. CONCLUSION

Based on the reasons outlined in more specific detail herein, the Court should dismiss the Tuscan-Harvey Homeowners' Complaint with respect to all counts, and grant any and all additional relief to which Tuscan-Harvey Estate Homes, Inc., may be entitled to under the law. Additionally, if any personal injury claims are being asserted by the Tuscan-Harvey Homeowners, they should be required to amend their Complaint to provide more information concerning these claims.

**Respectfully submitted,**

**KUCHLER POLK SCHELL WEINER & RICHESON, LLC**

BY:  /s/ Leigh Ann Schell
LEIGH ANN SCHELL (La. Bar No. 19811)
MICHELE HALE DESHAZO (La. Bar No. 29893)
1615 Poydras St., Suite 1300
New Orleans, LA  70112
Telephone:  (504) 592-0691
Facsimile: (504) 592-0696

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the above and foregoing document has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 26th day of March, 2010.

/s/ Leigh Ann Schell
LEIGH ANN SCHELL