Gay | Henson
054-001
P

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
## IN AND FOR LAKE COUNTY, FLORIDA

DIANA E. GAY and JAMES M.
HENSON;

Plaintiffs,

vs.

PALM STATE CONSTRUCTION, INC.,
a Florida Corporation; TWIN LAKES
RESERVE & GOLF CLUB, INC.; a
Florida Corporation; AND DOES 1-10,
INCLUSIVE

Defendants.

**CASE NO.: 09-CA-4725**

**FIRST AMENDED COMPLAINT:**
1. STRICT PRODUCTS LIABILITY
2. NEGLIGENCE AND NEGLIGENCE
   PER SE
3. BREACH OF EXPRESS WARRANTY
4. BREACH OF IMPLIED WARRANTY
5. VIOLATION OF THE FLORIDA
   DECEPTIVE AND UNFAIR TRADE
   PRACTICES ACT
6. EQUITABLE RELIEF, INJUNCTIVE
   RELIEF AND MEDICAL MONITORING

**DEMAND FOR JURY TRIAL**

Plaintiffs, DIANA E. GAY and JAMES M. HENSON, (collectively
"PLAINTIFFS"), bring this action as defined below against Defendants, PALM STATE
CONSTRUCTION, INC., AND TWIN LAKES RESERVE & GOLF CLUB, INC.
(collectively "DEFENDANTS"), and for their complaint allege, upon information and
belief and based on the investigation to date of their counsel, as follows:

### INTRODUCTION

1.     PLAINTIFFS bring this action as owners of homes in the Twin Lakes
Reserve & Golf Club development located in Umatilla, Florida that were built using
defective drywall.

2.     The drywall used to build PLAINTIFFS' homes is defective and emits
levels of sulfur, methane and/or other volatile organic compounds that cause corrosion of

10/23/09

air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items, as well as creates noxious, "rotten egg-like" odors. The drywall was inherently defective and not suitable for its intended use. The compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure. These chemical compounds cause and have caused dangerous health consequences including, among other things, respiratory problems, sinus problems, eye irritation and nose bleeds.

3.    This defect is latent and existed in DEFENDANTS' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted.

4.    As a result of DEFENDANTS' conduct as alleged herein, PLAINTIFFS have suffered economic losses by owning homes built by DEFENDANTS with defective drywall that has caused damage to their homes, health, and other property.

5.    PLAINTIFFS have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of their homes, other property, and any materials contaminated or corroded by the drywall as a result of "off-gassing;" incidental and consequential damages; and diminution of value of their homes.

6.    PLAINTIFFS suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of

Gay & Henson v. Palm State Construction, Inc., et al.
Case No.: 09-CA-004725

earnings and loss of the ability to earn money. The loss and injuries are either permanent
or continuing and the Plaintiff will suffer these losses in the future.

7.      Further, as a result of DEFENDANTS' conduct as alleged herein,
PLAINTIFFS have suffered harm and/or been exposed to an increased risk of harm and
thus have need for injunctive and/or equitable relief in the form of emergency notice,
environmental monitoring, and medical monitoring.

## JURISDICTION AND VENUE

8.      This action is for damages in excess of FIFTEEN THOUSAND DOLLARS
($15,000.00) exclusive of interest and costs and is founded upon Florida state law
including, but not limited to, common law violations, which are subject to the jurisdiction
of this court.

9.      Venue is proper in that Defendants PALM STATE CONSTRUCTION,
INC., TWIN LAKES RESERVE & GOLF CLUB, INC., and DOES 1-10, are authorized
to conduct and do conduct significant amounts of business in Lake County as well as
throughout the State of Florida. In particular, Defendants maintain offices in Florida and
a substantial part of the events and omissions giving rise to PLAINTIFFS' claims
occurred in Lake County, Florida. These entities have been provided with proper notice
pursuant to Fla. Stat. §558.001 and therefore this suit is timely and proper.

10.     Plaintiff DIANA E. GAY is and at all relevant times has been a resident of
Lake County, Florida.

11.    Plaintiff JAMES M. HENSON is and at all relevant times has been a resident of Lake County, Florida.

## PARTIES

12.    PLAINTIFFS are individuals residing in the County of Lake, State of Florida.

13.    The subject of this action are the lands with single family dwellings and other improvements thereon, owned by PLAINTIFFS respectively, (hereinafter collectively referred to as the "PROPERTIES") located in the County of Lake, State of Florida, described as follows:

**Diana E. Gay        105 Twin Lake Circle, Umatilla, Florida 32784**

**James M. Henson  107 Twin Lake Circle, Umatilla, Florida 32784**

14.    PLAINTIFFS' homes were built using defective Chinese Drywall. PLAINTIFFS have had substantial problems with their homes, including but not limited to the corrosive effects of sulfur and/or compounds in the drywall, have suffered adverse medical effects and personal injury, and have suffered injury to personal, real, and other property as a result of DEFENDANTS' conduct as further described herein.

15.    PLAINTIFFS are informed and believe and based thereon allege that at all times herein mentioned and material hereto that PALM STATE CONSTRUCTION, INC., a Florida Corporation, was and is a corporation authorized to conduct business in Florida and engaged in business in the County of Lake and were the *developers* and/or

*general contractors* of the PROPERTIES and the project within which the PROPERTIES is located.

16.     PLAINTIFFS are informed and believe and based thereon allege that at all times herein mentioned and material hereto that TWIN LAKES RESERVE & GOLF CLUB INC., a Florida Corporation, was and is a corporation authorized to conduct business in Florida and engaged in business in the County of Lake and were the *developers* and/or *general contractors* of the PROPERTIES and the project within which the PROPERTIES is located.

17.     The names and capacities, whether individual, corporate, associate or otherwise of certain *developers, builders, general contractors, subcontractors* and/or their alter egos sued herein as DOES 1 through 10 inclusive, are presently unknown, and PLAINTIFFS will amend the Complaint to insert the same when ascertained. PLAINTIFFS are informed and believe and based thereon allege that each of these Defendants was a resident of said County and State and/or have principal offices or were doing business in said County and State and were and are responsible in some way for the happenings and damages alleged in this complaint. Said Defendants, along with the Defendants named above, will hereinafter be referred to as "DEFENDANTS".

18.     In order to build and construct said PROPERTIES and project(s), DEFENDANTS hired, retained, employed, or contracted for the services of certain persons or entities to *plan, design, and prepare* drawings and specifications for the

building of the PROPERTIES and project(s). The identities of said persons or entities, whether individual, corporate or otherwise, sued herein as Does 1 through 3 are presently unknown to PLAINTIFFS who therefore sue such persons by their fictitious names. PLAINTIFFS are informed and believe and thereon allege that said persons or entities are wholly or in some part responsible for the occurrences set forth in the complaint. Said Defendants, along with the Defendants named above, will hereinafter be referred to as "DEFENDANTS".

19. In order to build and construct said project, DEFENDANTS hired, retained, employed, or contracted with persons or entities to *provide for labor and materials* in the construction of the PROPERTIES and project(s). The identities of said persons or entities, whether individual, corporate, or otherwise, sued herein as Does 4 through 7 are presently unknown to PLAINTIFFS who therefore sue such persons by their fictitious names. PLAINTIFFS are informed and believe and thereon allege that said persons or entities are wholly or in some part responsible for the occurrences set for in the Complaint in accordance with their individual scope of work. Said Defendants, along with the Defendants named above, will hereinafter be referred to as "DEFENDANTS".

20. PLAINTIFFS are informed and believe and based thereon allege that there were other persons and entities involved in the *planning, design, construction, maintenance, repairs, and sale* of the PROPERTIES and project(s). The identities of said persons or entities, whether individual, corporate, or otherwise, sued herein as Does 8

through 10 are presently unknown to PLAINTIFFS who therefore sue such persons by their fictitious names. PLAINTIFFS are informed and believe and thereon allege that said persons or entities are wholly or in some part responsible for the occurrences set forth in the complaint. PLAINTIFFS are informed and believe and based thereon allege that at all times herein mentioned Defendants and each of them were the agents, servants, employees, assistants and consultants of their co-Defendants and were as such acting within the course and scope of their agency and authority of such agency and employment. Said Defendants, along with the Defendants named above, will hereinafter be referred to as "DEFENDANTS".

## GENERAL ALLEGATIONS

21. DEFENDANTS negligently designed, constructed, manufactured, delivered, inspected and/or sold the subject PROPERTIES with defective drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

22. The defective drywall used in the PROPERTIES was made with material that is not suitable for use as drywall.

23. When combined with moisture in the air, these sulfur compounds create sulfuric acid, among other compounds. Sulfuric acid has been known to dissolve solder

joints, corrode coils and copper tubing – creating leaks, blackening coils and causing air conditioners and refrigerators to fail. Sulfuric acid has also been shown to corrode copper electrical wiring. Not only does it blacken and corrode coils, it can harm metals such as chrome, brass and silver.

24. The defective drywall can not only affect air conditioners and refrigerators, but can affect and require replacement of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware.

25. In addition, the defective drywall has a noxious odor, akin to the smell of rotten eggs.

26. In addition, the defective drywall can cause a variety of medical problems, including, but not limited to, respiratory problems, runny nose, sinus infection, bloody nose, burning eyes, and other serious conditions.

27. DEFENDANTS' actions will require PLAINTIFFS to remedy all defective drywall, performing extensive remedial repairs to the PROPERTIES, and then repair the damaged property made visible during the performance of these repairs.

28. As a result of DEFENDANTS' conduct as alleged herein, PLAINTIFFS have suffered economic losses by owning homes built by DEFENDANTS with defective drywall that has caused damage to their home, health, and other property.

29. PLAINTIFFS have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of their homes, other property,

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

and any materials contaminated or corroded by the drywall as a result of "off-gassing;" incidental and consequential damages; and diminution of value of their homes.

30.     PLAINTIFFS suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiff will suffer these losses in the future.

## THE NEED FOR MEDICAL MONITORING
## FOR THE HEALTH EFFECTS OF SULFUR EMITTING DRYWALL

31.     Dangerous chemicals have been found to be released from the defective drywall, some of which is considered a broad-spectrum poison, meaning that it can poison several different systems in the body.

32.     The toxicity of many of these harmful chemicals is comparable with that of hydrogen cyanide and may form a complex bond with iron in the mitochondrial cytochrome enzymes, thereby blocking oxygen from binding and stopping cellular respiration.

33.     Exposure to lower concentrations of these dangerous chemicals can result in eye irritation, a sore throat and cough, nausea, shortness of breath, and fluid in the lungs.

34. Long-term, low-level exposure to these dangerous chemicals has been associated with fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness. Chronic exposure to low levels of these dangerous chemicals has also been implicated in increases in miscarriages and reproductive health issues.

35. DEFENDANTS' tortious acts and omissions have significantly increased the risk of PLAINTIFFS contracting a serious latent disease.

### THE SULFUR EMITTING DRYWALL INJURES THE HEALTH OF AFFECTED HOMEOWNERS

36. As a direct and proximate result of DEFENDANTS' actions and omissions, PLAINTIFFS' homes and bodies have been exposed to the defective drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

37. As a direct and proximate result of DEFENDANTS' use of defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the PLAINTIFFS have suffered, and continue to suffer damages for injuries from medical ailments, including but not limited to respiratory problems, sinus problems, eye irritations and nosebleeds, in addition to the creation of noxious odors, which smell like "rotten eggs."

### THE MERE EXISTENCE OF CHINESE DRYWALL HAS DIMINISHED HOME VALUES

38. Because neither the long term effects of Chinese drywall, nor the triggers of

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

the adverse chemical processes within the Chinese Drywall are yet fully understood, the mere existence of Chinese manufactured drywall in a particular home causes automatic and substantial diminution of value to a home. All homes found or disclosed to have Chinese drywall are tainted by the mere existences of the drywall in the home, even if it is ultimately determined that some drywall manufactured in China is not defective. While the PLAINTIFFS are certain that their homes contain defective Chinese drywall, if it is ultimately determined that the drywall in PLAINTIFFS' homes is not defective, even though it was manufactured in China, PLAINTIFFS have still sustained a diminution of value of their homes and are entitled to recover damages for that diminution of value.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

39. The running of any statute of limitations has been tolled by reason of DEFENDANTS' concealment. DEFENDANTS, through failing to disclose a known defect to PLAINTIFFS, and misrepresenting the PROPERTIES as safe for its intended use, actively concealed from PLAINTIFFS the true risks associated with their homes containing the defective drywall.

40. As a result of DEFENDANTS' actions, PLAINTIFFS could not reasonably know how or have learned through reasonable diligence of the defects with the drywall within their homes and that PLAINTIFFS had been exposed to the risks alleged herein and that those risks were a direct and proximate result of DEFENDANTS' acts and omissions.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

41.    Furthermore, DEFENDANTS are estopped from relying on any statute of limitations because of their concealment of the defective nature of the drywall used in the PROPERTIES. DEFENDANTS were under a duty to disclose the true character, quality, and nature of the PROPERTIES and the defective drywall used therein because this was non-public information over which DEFENDANTS had, and continue to have, exclusive control, and because DEFENDANTS knew that this information was not available to PLAINTIFFS. In addition, DEFENDANTS are estopped from relying on any statute of limitations because of their concealment of these facts.

42.    PLAINTIFFS had no knowledge that DEFENDANTS were engaged in the wrongdoing alleged herein.    Because of the wrongdoing by DEFENDANTS, PLAINTIFFS could not have reasonably discovered the wrongdoing at any time.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY

43.    PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

44.    DEFENDANTS, at all times herein mentioned, were in the business of developing and mass producing homes in and within the County where this PROPERTIES is located, and selling them to members of the public at large.

45.    DEFENDANTS developed and mass produced the PROPERTIES and/or otherwise participated in the stream of commerce for sale of the PROPERTIES in the project where the PROPERTIES are located.

46.     At all times herein mentioned and material hereto, DEFENDANTS knew and intended that the PROPERTIES would be purchased by members of the public at large, and used by them without further inspection for defects.

47.     PLAINTIFFS purchased the PROPERTIES from the DEFENDANTS and moved into the homes.

48.     At the time of the purchase by PLAINTIFFS, the PROPERTIES was defective and unfit for its intended purposes because Defendants did not construct the PROPERTIES in a workmanlike manner as manifested by, but not limited to, numerous drywall defects which have resulted in damage to the homes, their component parts, and other property.

49.     The drywall used in the PROPERTIES was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to the homes and, in particular, PLAINTIFFS' PROPERTIES.

50.     The drywall was so defective in design or formulation or manufacture that when it left the hands of the manufacturer and/or suppliers and was used by DEFENDANTS, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of the drywall.

51.     At all times herein mentioned, the drywall used by DEFENDANTS was in a defective condition and unsafe, and DEFENDANTS knew, had reason to know, or should have known that the drywall was defective and unsafe, especially when used in

the form and manner in the PROPERTIES.

52.    DEFENDANTS knew, or should have known, that at all times herein mentioned the drywall used by DEFENDNANTS was/is inherently dangerous and unsafe.

53.    Plaintiffs utilized the drywall for the purposes and manner normally intended.

54.    Defendants had a duty to utilize a product that was not unreasonably dangerous for its normal, intended use.

55.    The drywall utilized by DEFENDANTS was designed, constructed, manufactured, delivered, inspected and/or sold in a defective condition and was unreasonably dangerous to its intended users, including Plaintiffs.

56.    Defendants manufactured, processed, distributed, delivered, supplied, inspected and/or sold the defective PROPERTIES which created an unreasonable risk to the Plaintiffs' homes as well as to the health of the Plaintiffs.  Defendants are, therefore, strictly liable for the injuries sustained by Plaintiffs.

57.    PLAINTIFFS, acting as a reasonably prudent person, could not discover that the drywall utilized by DEFENDANTS was defective as herein mentioned or perceive its danger.

58.    The defects in the drywall utilized by DEFENDANTS were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at increased risk of damage

and/or harm.

59.    As a direct and proximate result of the defective condition of the drywall used by DEFENDANTS in the PROPERTIES, PLAINTIFFS suffered, and will continue to suffer, damages.

60.    By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

61.    The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTIES at the time of the purchase. The defects thereafter manifested.

62.    Because of the defective conditions of the PROPERTIES as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

A) . PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTIES to cure the damage, defects and/or deficiencies.    The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

B)    PLAINTIFFS have been damaged through the diminution in value of the PROPERTIES. PLAINTIFFS are unaware of the precise amount

of such damage but will establish such amount at time of trial.

C)  PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

D)  That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, DIANA E. GAY and JAMES M. HENSON, suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiff will suffer these losses in the future.

63.  DEFENDANTS, as developers, mass producers, builders and sellers and/or otherwise within the stream of commerce are strictly liable and responsible to PLAINTIFFS for all damage suffered as a result of the above described damage, defects and deficiencies in the PROPERTIES.

64.  WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly

and severally, as follows:

a.    Equitable, injunctive, and declaratory relief;

b.    Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c.    Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.    The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.    All statutory damages;

f.    Disgorgement of DEFENDANTS' profits from the sale of the PROPERTIES;

g.    Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

h.    Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## SECOND CAUSE OF ACTION
## NEGLIGENCE AND NEGLIGENCE PER SE

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

65.     PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

66.     DEFENDANTS had a duty to exercise reasonable care in designing, constructing, manufacturing, delivering, inspecting and/or selling the PROPERTIES before being placed into the stream of commerce, including a duty to assure that the PROPERTIES and drywall would perform as intended and would not cause and did not cause damage as described herein.

67.     DEFENDANTS breached their duty by failing to exercise ordinary care in the designing, constructing, manufacturing, delivering, inspecting and/or selling the PROPERTIES with defective drywall in that DEFENDANTS knew or should have known that the PROPERTIES was defective with the drywall used therein, because the drywall did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to air-conditioning and refrigerator units, wires, tubes and pipes, and caused allergic reactions, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

68.     The negligence of the DEFENDANTS, their agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

        a.     negligently failing to adequately and correctly warn PLAINTIFFS and the public of the dangers of the drywall used by DEFENDANTS in the PROPERTIES;

        b.     negligently failing to recall or otherwise notify users at the earliest

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

date that it became known that the drywall in the PROPERTIES was, in fact, dangerous and defective;

c.      negligently representing that the drywall was safe for its intended purpose when, in fact, its safety is questionable;

d.      negligently distributing the drywall in a manner which was dangerous to its users;

e.      negligently delivering the drywall in a manner which was dangerous to its users;

f.      concealing information concerning reports of adverse effects of the drywall used in the PROPERTIES while knowing that the drywall was unsafe, dangerous and non-conforming with accepted industry standards; and

g.      improperly concealing and/or misrepresenting information from PLAINTIFFS and/or the public, concerning the severity of risks and dangers to Defendants' drywall and/or the manufacturing defect.

69.     DEFENDANTS were negligent in the design, construction, manufacture, delivery, inspection and/or sale of the subject PROPERTIES with defective drywall in that they:

a.      failed to use due care in constructing the PROPERTIES with adequate drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

   b.  failed to conduct adequate testing to determine the safety of the drywall; and

   c.  failed to warn PLAINTIFFS prior to the sale of the PROPERTIES, either directly or indirectly, orally or in writing, about the defective nature of the drywall used therein; and were otherwise negligent.

70. Upon information and belief, despite the fact that DEFENDANTS knew or should have known that the drywall used in the PROPERTIES caused unreasonably dangerous side effects due to its manufacturing defect, DEFENDANTS continued to design, construct, manufacture, deliver, inspect and/or sell the subject PROPERTIES to PLAINTIFFS and/or the consuming public.

71. DEFENDANTS knew or should have known that consumers such as PLAINTIFFS would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of DEFENDANTS' failure to exercise ordinary care, as well as DEFENDANTS' negligent use of defective drywall, as set forth herein.

72. DEFENDANTS' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence per se.

73. As a direct and proximate result of the actions of the DEFENDANTS as alleged herein, PLAINTIFFS suffered, and will continue to suffer, damages.

74. By reason of the foregoing, PLAINTIFFS experienced, and/or are at risk of

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

75.     The defects alleged herein above are defects that were not apparent by reasonable inspection of the PROPERTIES at the time of the purchase. The defects thereafter manifested.

76.     Because of the defective conditions of the PROPERTIES as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

A)      PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTIES to cure the damage, defects and/or deficiencies. The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

B)      PLAINTIFFS have been damaged through the diminution in value of the PROPERTIES. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

C)      PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

D) That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, DIANA E. GAY and JAMES M. HENSON, suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiff will suffer these losses in the future.

77. WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a. Equitable, injunctive, and declaratory relief;

b. Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d. The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e. All statutory damages;

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

    f.    Disgorgement of DEFENDANTS' profits from the sale of the PROPERTIES;

    g.    Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

    h.    Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY

78.    PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

79.    Based upon information and belief, and, in part, upon written representations in the possession at DEFENDANTS and to be obtained in the discovery process, DEFENDANTS expressly warranted that DEFENDANTS' PROPERTIES was safe and of acceptable quality and standards. DEFENDANTS also expressly warranted that PLAINTIFFS' homes would "be free from substantial construction defects and from defects in materials and workmanship".

80.     DEFENDANTS' PROPERTIES did not conform to these express representations because the drywall used in the PROPERTIES was defective and unsafe, and is associated with numerous side effects. As a direct and proximate result of the breach of said warranties, PLAINTIFFS suffered, and/or will continue to suffer, and/or at an increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

81.     PLAINTIFFS did rely on the express warranties of the DEFENDANTS herein.

82.     The DEFENDANTS herein breached the aforesaid express warranties, as DEFENDANTS' used defective drywall.

83.     DEFENDANTS expressly represented to PLAINTIFFS that the PROPERTIES was safe, efficacious, and fit for use for the purposes intended, that the drywall used in the PROPERTIES was of merchantable quality, did not produce any dangerous side effects, and was adequately tested and fit for its intended use.

84.     DEFENDANTS knew or should have known that the aforesaid representations and warranties were false, misleading and untrue in that the PROPERTIES, with the defective drywall used therein, was not fit for the use intended and, in fact, produced severe and extensive damage to PLAINTIFFS' homes because defective drywall was negligently used therein.

85.     As a result of the foregoing acts and omissions, PLAINTIFFS require

and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. PLAINTIFFS are informed and believe, and further allege, that PLAINTIFFS will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

86.　Because of the defective conditions of the PROPERTIES as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

A)　PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTIES to cure the damage, defects and/or deficiencies. The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

B)　PLAINTIFFS have been damaged through the diminution in value of the PROPERTIES. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

C)　PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of

trial.

D)  That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, DIANA E. GAY and JAMES M. HENSON, suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiff will suffer these losses in the future.

87.  WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.  Equitable, injunctive, and declaratory relief;

b.  Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c.  Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.  The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

e. All statutory damages;

f. Disgorgement of DEFENDANTS' profits from the sale of the PROPERTIES;

g. Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

h. Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

88. PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

89. At all times herein, DEFENDANTS designed, constructed, manufactured, delivered, inspected and/or sold the subject PROPERTIES with defective drywall.

90. DEFENDANTS utilized defective drywall for use in the construction of PLAINTIFFS' homes and DEFENDANTS knew of the use for which the drywall was intended and impliedly warranted the product to be of merchantable quality and fit for such use.

Gay & Henson v. Palm State Construction, Inc., et al.
Case No.: 09-CA-004725

91.     DEFENDANTS impliedly represented and warranted to PLAINTIFFS that the drywall used in the PROPERTIES was safe and of merchantable quality and fit for the ordinary use for which said product was to be used.

92.     Said representations and warranties aforementioned are false, misleading, and inaccurate in that the drywall used in the PROPERTIES was unsafe, unreasonably dangerous, improper, not merchantable quality, and defective and cause damage and injury to PLAINTIFFS.

93.     PLAINTIFFS relied on said implied warranty of merchantability and fitness for a particular use and purpose.

94.     PLAINTIFFS reasonably relied upon the skill and judgment of DEFENDANTS as to whether the drywall used in the PROPERTIES was of merchantable quality and safe and fit for its intended use.

95.     The defective drywall used in the PROPERTIES was placed into the stream of commerce by DEFENDANTS in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which they were sold.

96.     The DEFENDANTS herein breached the aforesaid implied warranties, as the drywall used in the PROPERTIES was not fit for its intended purposes and uses.

97.     As a direct and proximate result of the breach of said warranties,

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

PLAINTIFFS suffered, and/or will continue to suffer, and/or are at an increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

98.     As a result of the foregoing acts and omissions, PLAINTIFFS require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. PLAINTIFFS are informed and believe, and further allege, that PLAINTIFFS will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

99.     Because of the defective conditions of the PROPERTIES as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

A)     PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTIES to cure the damage, defects and/or deficiencies. The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

B)     PLAINTIFFS have been damaged through the diminution in value of the PROPERTIES. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

C)     PLAINTIFFS have been forced to retain expert consultants to

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

Gay & Henson v. Palm State Construction, Inc., et al.
Case No.: 09-CA-004725

analyze and determine the method of repairing the aforementioned defects and damage. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

D) That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, DIANA E. GAY and JAMES M. HENSON, suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiff will suffer these losses in the future.

100. WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

    a.    Equitable, injunctive, and declaratory relief;

    b.    Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

    c.    Pre-judgment and post-judgment interest at the maximum rate

allowable at law;

d.   The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.   All statutory damages;

f.   Disgorgement of DEFENDANTS' profits from the sale of the PROPERTIES;

g.   Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

h.   Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

**FIFTH CAUSE OF ACTION
VIOLATION OF THE FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT**

101.   PLAINTIFFS repeat and reallege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

102.   This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by DEFENDANTS.

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

103.   PLAINTIFFS are "consumers" and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

104.   DEFENDANTS' actions and/or omissions as described herein violate Florida Statutes, §501.201, *et seq.*, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

105.   Specifically, DEFENDANTS misrepresented and omitted material information regarding Defendants' use of defective drywall in the PROPERTIES and by failing to disclose known risks.

106.   DEFENDANTS' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' homes in violation of Florida Statutes, §501.201, *et seq.*

107.   DEFENDANTS violated Florida Statutes, §501.201, *et seq.*, by knowingly and falsely representing that the PROPERTIES and drywall used therein was fit to be used for the purpose for which they were intended, when DEFENDANTS knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

108.   DEFENDANTS engaged in the deceptive acts and practices alleged herein

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

Gay & Henson v. Palm State Construction, Inc., et al.
Case No.: 09-CA-004725

in order to sell more homes to the public, including PLAINTIFFS.

109. Said acts and practices on the part of DEFENDANTS were and are illegal and unlawful pursuant to Florida Statute §501.204.

110. As a direct and proximate result of DEFENDANTS' violations of Florida Statutes, §501.201, *et seq.*, PLAINTIFFS have suffered damages. PLAINTIFFS are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

111. Because of the defective conditions of the PROPERTIES as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

    A)    PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTIES to cure the damage, defects and/or deficiencies. The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

    B)    PLAINTIFFS have been damaged through the diminution in value of the PROPERTIES. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

    C)    PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned

defects and damage. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

D) That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, DIANA E. GAY and JAMES M. HENSON, suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiff will suffer these losses in the future.

112. WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a. Equitable, injunctive, and declaratory relief;

b. Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

d.  The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.  All statutory damages;

f.  Disgorgement of DEFENDANTS' profits from the sale of the PROPERTIES;

g.  Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be entitled;

h.  Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## SIXTH CAUSE OF ACTION
## EQUITABLE RELIEF, INJUNCTIVE RELIEF AND MEDICAL MONITORING

113.  PLAINTIFFS repeat and reallege the forgoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

114.  Because no adequate remedy exists for the conduct of DEFENDANTS, equitable and injunctive relief is appropriate.

115.  PLAINTIFFS will suffer irreparable injury if the Court does not order

injunctive relief and medical monitoring.

116.    PLAINTIFFS demand that DEFENDANTS: (A) recall, repurchase and/or repair PLAINTIFFS' homes; (B) initiate and pay for a medical monitoring program under Florida law; (C) identify, at their own expense, each and every home with the defective drywall, if necessary, testing every home in which the defective drywall may potentially be found.

117.    Medical monitoring is a necessary component of the relief the Court should order because some of the sulfur components and other organic compounds being emitted from the defective drywall are very hazardous. For example, many of the compounds found in the drywall are considered a broad-spectrum poison – meaning it can attack more than one system of the body simultaneously.

118.    As a direct consequence of the wrongful and/or tortious acts and/or omissions of DEFENDANTS' conduct, PLAINTIFFS have been exposed to sulfur and other dangerous compounds in quantities sufficient to harm them.

119.    Until it has been conclusively established that all defective drywall has been removed and that air quality is safe, DEFENDANTS should bare the expense of air and environmental monitoring in PLAINTIFFS' homes.

120.    Because of the defective conditions of the PROPERTIES as herein above alleged, PLAINTIFFS have been specifically damaged in the following ways, as well as others which will be inserted with leave of court when ascertained:

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

A)    PLAINTIFFS will be forced to incur expenses for the restoration and repairs of the PROPERTIES to cure the damage, defects and/or deficiencies. The exact amount of the damages is presently unknown, except that the costs will exceed tens of thousands of dollars per home.

B)    PLAINTIFFS have been damaged through the diminution in value of the PROPERTIES. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

C)    PLAINTIFFS have been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage. PLAINTIFFS are unaware of the precise amount of such damage but will establish such amount at time of trial.

D)    That as a direct and proximate result of the negligence of the Defendant, the Plaintiffs, DIANA E. GAY and JAMES M. HENSON suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing

-37-

Gay & Henson v. Palm State Construction, Inc., et al.
Case No.: 09-CA-004725

condition, loss of earnings and loss of the ability to earn money. The loss and injuries are either permanent or continuing and the Plaintiff will suffer these losses in the future.

121.   WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.   Equitable, injunctive, and declaratory relief;

b.   Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c.   Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.   The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.   All statutory damages;

f.   Disgorgement of DEFENDANTS' profits from the sale of the PROPERTIES;

g.   Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which PLAINTIFFS may be

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

Gay & Henson v. Palm State Construction, Inc., et al.
Case No.: 09-CA-004725

entitled;

h.　Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

### GENERAL PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a.　Equitable, injunctive, and declaratory relief;

b.　Damages in an amount to be determined at trial, but in an amount exceeding fifteen thousand dollars;

c.　Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.　The costs and disbursements incurred by PLAINTIFFS in connection with this action, including reasonable attorneys' fees;

e.　All statutory damages;

f.　Disgorgement of DEFENDANTS' profits from the sale of the PROPERTIES;

g.　Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any

ROBERTS & DURKEE, P.A.
Alhambra Towers Penthouse I, 121 Alhambra Plaza, Suite 1603, Coral Gables, Florida 33134 (305) 442-1700 FAX: (305) 442-2559

other legal or equitable relief to which PLAINTIFFS may be entitled;

h.  Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, DIANA E. GAY and JAMES M. HENSON, hereby demand a trial by jury as to all issues so triable.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed and served this _23_ day of _Oct_, 2009 to: **Stephen J. Braun, Esq.**, Bauer & Associates, P.A., Attorneys for Palm State Construction, Inc., P.O. Box 459, DeLand, Florida 32721 and **Michael J. Roper, Esq.**, Bell, Roper & Kohlmyer, P.A., Attorneys for Twin Lakes Reserve & Golf Club, Inc., 2707 E. Jefferson Street, Orlando, Florida 32803.

ROBERTS & DURKEE, P.A.
**Attorneys for Plaintiffs**
Alhambra Towers, Penthouse I
121 Alhambra Plaza, Suite 1603
Coral Gables, Florida 33134
Tel: (305) 442-1700

BY: _____
C. DAVID DURKEE

-40-