IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE MANUFACTURED
DRYWALL PRODUCTS LIABILITY        : MDL No. 2047
LITIGATION                                            : Section L
_____/

This Document Relates to:                   : JUDGE FALLON
Payton, 09-7628                                   : MAG. JUDGE WILKINSON

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LA SUPREMA ENTERPRISE, INC. AND LA SUPREMA TRADING, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

Defendants, LA SUPREMA ENTERPRISE, INC. and LA SUPREMA TRADING, INC. (collectively, "La Suprema"), by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), hereby submit their Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Omnibus Class Action Complaint (I)("Complaint"), and further state:

The case at bar is illustrative of the problems inherent in attempting to prosecute a "nationwide class action" against myriad local defendants scattered across the country. Various named class representatives purport to participate in subclasses, which are allegedly structured so as to establish standing on behalf of the representatives comprising the subclass vis-à-vis the various regional entities included as defendants therein. While such rather unwieldy arrangement may suffice to confer standing, it does nothing to establish personal jurisdiction over those defendants (such as La Suprema) who lack sufficient contacts with the forum state. Consequently, any efforts to centralize litigation against a diverse array of defendants in a single forum with which such defendants have no connection are necessarily arbitrary.

In addition to the Complaint's severe jurisdictional infirmities, each of the asserted causes of action is substantively deficient. In stark contrast to the sheer volume of named class representatives and multitudinous defendants carefully arranged via subclasses, the substantive allegations of the Complaint are conclusory, bereft of ultimate facts necessary to support the stated causes of action and are therefore woefully inadequate. Quality has been sacrificed for quantity.

Although the substantive deficiencies of the Complaint could potentially be remedied via amendment, the jurisdictional issues cannot. Dismissal with prejudice is therefore warranted.

> I. *La Suprema lacks the contacts with Louisiana necessary for the Court to exercise personal jurisdiction.*

The Fourteenth Amendment's Due Process Clause prohibits federal courts from exercising *in personam* jurisdiction over nonresident defendants where such parties lack sufficient "contacts, ties, or relations" with the forum state. Luv n' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir.2006) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Upon a challenge to a federal court's personal jurisdiction over a nonresident defendant, the party seeking to invoke the power of the court bears the burden of establishing jurisdiction via a *prima facie* showing. *Id.* Although a federal personal jurisdiction analysis typically entails two inquiries – amenability to service under the forum state's long-arm statute, and consistency with Fourteenth Amendment due process – the inquiries merge in Louisiana because the state's long-arm statute permits service to the fullest extent of the Due Process Clause. Reed v. Biomet Orthopedics, Inc., 2008 WL 1735162 at 2 (W.D.La.); *see also* La. R.S. 13:3201(B).

A federal court's exercise of personal jurisdiction over a nonresident defendant may be general or specific, depending upon the extent of the defendant's contacts with the forum state. Luv n' care, Ltd., 438 F.3d at 469. General jurisdiction requires "continuous and systematic general business contacts", whereas specific jurisdiction is authorized if the subject litigation specifically arises out of or relates to the defendant's contacts with the forum. *Id.* (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Where a nonresident defendant lacks the continuous and systematic contacts required to sustain the exercise of general jurisdiction, the Fifth Circuit has devised a three-pronged test to determine if sufficient "minimum contacts" exist to support the exercise of specific jurisdiction. *Id.* (citing Nuovo Pignone v. STORMAN ASIA M/V, 310 F.3d 374 (5th Cir.2002). Specific jurisdiction is available where: (1) the nonresident defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) the subject litigation arises or results from the defendant's forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Id.* In the case at bar, due process precludes the Court's exercise of either general or specific jurisdiction over La Suprema.

As evidenced by the affidavit attached hereto as exhibit "A," the La Suprema entities are Florida corporations having absolutely no contacts with the state of Louisiana. La Suprema neither did business in, nor with any entity doing business in, the state of Louisiana. Prior to its inclusion as a named Defendant in this case, its only contacts with Louisiana were the various lawsuits filed against it solely by Florida Plaintiffs in Florida courts which lawsuits were ultimately transferred to this Court within MDL No. 2047.

Thus, La Suprema has never engaged in the purposeful direction of its activities towards, nor purposely availed itself of the privilege of conducting business in, Louisiana. Moreover, the instant litigation in no way arose or resulted from La Suprema's Louisiana-related contacts – because no such contacts exist. Indeed, the Complaint alleges nothing to the contrary, and merely asserts that La Suprema "is a *[sic]* importer, exporter, or broker of drywall and related building products that engaged in these practices, which has resulted in harm and damages to Subclass Members." (Complaint ¶¶ 2126, 2127). Plaintiffs' omission of even a single allegation that La Suprema conducted business in Louisiana speaks volumes.

Finally, there would be nothing fair or reasonable should the Court exercise personal jurisdiction over La Suprema within this case. As formulated by the Fifth Circuit, the fairness and reasonableness aspect of the specific jurisdiction analysis requires consideration of: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. Felch v. Transportes Lar-Mex SA De CV, 92 F.3d 320, 324 (5th Cir.1996). All of these factors strongly militate against the Court's exercise of personal jurisdiction over La Suprema.

The burden on a nonresident defendant upon being haled into court in a foreign jurisdiction, towards which such defendant neither directed its commercial activities nor reasonably could have foreseen its products reaching the forum, is tremendously unfair. Even under the Fifth Circuit's relaxed "mere foreseeablity" minimum contacts test, Luv n' care, Ltd., 438 F.3d at 470, no interpretation of La Suprema's business conduct could

support the fair and reasonable exercise of personal jurisdiction in Louisiana. Moreover, Louisiana has no legitimate interest in providing a forum for plaintiffs to litigate against random defendants with no connection to the forum state. Similarly, a plaintiff has no legitimate interest sufficient to support the exercise of personal jurisdiction in securing relief against a party in a forum completely unrelated to the alleged misconduct of the defendant or the asserted injuries resulting therefrom. The interest of the interstate judicial system in the efficient administration of justice would be impeded to the extent personal jurisdiction is exercised over a party with no contacts with the forum state. Finally, the shared interests of the several states in furthering fundamental social polices are best served via upholding constitutional safeguards designed to ensure that injured parties seek redress consistently with due process. In contrast, the Court's exercise of personal jurisdiction over La Suprema in this case would turn due process on its head because of La Suprema's utter lack of minimum contacts with Louisiana. The Complaint must therefore be dismissed, with prejudice, on personal jurisdiction grounds.

II. <u>Plaintiffs have failed to state a claim upon which relief can be granted.</u>

The Complaint is furthermore defective based upon substantive legal grounds. As an initial matter, a federal court sitting in diversity jurisdiction looks to the forum state's choice-of-law rules to determine which substantive law to apply. <u>Marchesani v. Pellerin-Milnor Corp.</u>, 269 F.3d 481, 485 (5th Cir.2001). Although the Louisiana Civil Code dictates that in products liability cases such as the instant litigation, Louisiana law applies if the injury was sustained in Louisiana by a Louisiana resident, s*ee* La. Civ.Code Ann. Art. 3545, the analysis is altered in this case because (as evidenced by exhibit "A" hereto) La Suprema does not conduct business in Louisiana and only certain named plaintiff

class representatives – none of whom reside in Louisiana - are asserting claims against La Suprema.

La. Civ.Code Ann. Art. 3542 provides:

> "Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts."

Even assuming the Court possessed personal jurisdiction over La Suprema, the above provision dictates that Florida law be applied to the claims of the relevant subclasses of Plaintiffs because La Suprema's only contacts are with Florida. As will be discussed below, each of Plaintiffs' asserted causes of action fail as a matter of Florida law.

### Count I – Negligence

Plaintiffs' allegations as to the nature of the alleged defect in the drywall establish that absent actual knowledge, the only way that La Suprema could have known about the defect is via chemical testing of the drywall. Specifically, Plaintiffs allege, "the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or 'off-gassed') from the drywall." (Complaint ¶ 2611) In other words, the alleged defect cannot be discerned with the naked eye, nor would such

alleged phenomena be evident in normal shipping of the drywall. Rather, absent laboratory testing, chemical analysis, or observing the alleged side effects from "off-gassing" after the drywall was installed – such as corroded wires, HVAC components, etc. – the defect is latent.

La Suprema is alleged to be an importer, exporter or broker of drywall (Complaint ¶¶ 2126, 2127). The Complaint omits allegations establishing that the alleged defect in the drywall resulted from the manner in which it was imported, exported, or brokered. Accordingly, Plaintiffs' assertion of a negligence claim against La Suprema is dependent upon a legal duty to inspect the drywall and/or warn of its alleged latent defects.

Florida law clearly holds that, unless a product is inherently dangerous, there is no duty to discover, correct or warn of latent defects absent actual or implied knowledge of such defects. *See* Carter v. Hector Supply Co., 128 So.2d 390, 392 (Fla.1961); Ryan v. Atlantic Fertilizer & Chemical Co., 515 So.2d 324, 326 (Fla. 3d DCA 1987); Skinner v. Volkswagen of America, Inc., 350 So.2d 1122, 1123 (Fla. 3d DCA 1977); *see also* Mendez v. Honda Motor Co., 738 F.Supp. 481, 483-84 (S.D.Fla.1990). The Complaint omits allegations establishing that the drywall is inherently dangerous, nor do Plaintiffs allege how La Suprema should have known of the alleged defects in the drywall merely by virtue of its alleged importation, exportation or brokering of same. Although Plaintiffs allege that, "Defendants, through the exercise of reasonable care" should have known of the latent defect (Complaint ¶2644), such conclusory assertion essentially seeks to impose a duty to discover where none exists pursuant to Florida law. Count I is therefore substantively defective and must be dismissed.

### Count II – Negligence Per Se

In deJesus v. Seaboard Coast Line Railroad, 281 So.2d 198 (Fla.1973), the Supreme Court of Florida specified that not all statutory violations constitute negligence per se. Rather, it divided statutory violations into three categories: violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves; violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular injury or type of injury; and violation of any other type of statute. While the first and second varieties of statutory violations are actionable as negligence per se, the third variety constitutes mere prima facie evidence of negligence. *Id.*; Chevron, U.S.A., Inc. v. Forbes, 783 So.2d 1215, 1219 (Fla. 4th DCA 2001).

In Count II of the Complaint, Plaintiffs neglect to specify which statute(s), if any, La Suprema is alleged to have violated. Consequently, Count II omits allegations establishing whether Plaintiffs are among the class of persons for which the statute(s) in question is/are designed to protect – which allegations are essential to supporting an action for negligence per se under Florida law. Although Plaintiffs make general reference to state building codes (Complaint ¶2651), such statutes are merely designed to protect the public in general and therefore cannot support a claim for negligence per se. *See* Grand Union Co. v. Rocker, 454 So.2d 14, 16 (Fla. 3d DCA 1984). Count II is therefore substantively defective and must be dismissed.

### Count III – Strict Liability

The drywall at issue is not a product upon which a strict liability claim may be based; it is instead a structural improvement to real property and, accordingly, cannot

form the basis for a strict liability claim. *See* Plaza v. Fisher Development, Inc., 971 So.2d 918 (Fla. 3d DCA 2007); *see also* Federal Ins. Co. v. Bonded Lightning Protection Systems, Inc., 2008 WL 5111260 at 4-5 (S.D.Fla.). Count III is therefore substantively defective and must be dismissed.

Count IV – Breach of Express and/or Implied Warranties

Privity of contract is a prerequisite to recovery under a claim for breach of either express or implied warranty. *See* Weiss v. Johansen, 898 So.2d 1009, 1012 (Fla. 4th DCA 2005) (citing T.W.M. v. Am. Med. Sys., Inc., 886 F.Supp. 842, 844 (N.D.Fla.1995)); *see also* Federal Ins. Co. v. Bonded Lightning Protection Systems, Inc., 2008 WL 5111260 at 7 (S.D.Fla.) (citing, *inter alia*, Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla.1988); West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976)). Moreover, the clear and manifest intent of the contracting parties to primarily and directly benefit the third party must be established to support a third party beneficiary claim. *See* Foundation Health v. Westside EKG Associates, 944 So.2d 188, 195 (Fla.2006).

Plaintiffs merely allege, "Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty" (Complaint ¶2674). No allegations of ultimate fact are offered to support such unbuttressed legal conclusions. Pursuant to the United States Supreme Court's mandate, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). Plaintiffs' conclusory allegations of privity and/or third party

beneficiary status are clearly deficient under the foregoing standard. Count IV is therefore substantively defective and must be dismissed.

### Count IX – Redhibition

Only certain subclasses of Plaintiffs assert claims against La Suprema, none of whom are Louisiana residents (Complaint Schedule 2, subclasses 46 and 47). Thus, no Louisiana Plaintiffs have standing to bring claims against La Suprema. As Count IX is brought solely on behalf of Louisiana Plaintiffs, it is substantively defective as to La Suprema and must be dismissed.

### Count XI – Private Nuisance

Anything which annoys or disturbs one in the free use, possession or enjoyment of his property, or which renders its ordinary use or occupation physically uncomfortable, is a nuisance and may be restrained. *See* Jones v. Trawick, 75 So.2d 785, 787 (Fla.1954). However, a plaintiff asserting a nuisance claim must demonstrate that the maintenance of the nuisance was the natural and proximate cause of the injury. *See* Durrance v. Sanders, 329 So.2d 26, 29 (Fla. 1st DCA 1976).

Here, Plaintiffs have omitted any allegations detailing how an importer, exporter or broker of allegedly defective drywall created the alleged nuisance which actually and proximately caused Plaintiff's damages. Specifically, Plaintiffs assert that the alleged nuisance consists of, " … sulfide gas and/or other chemical leaching into structures owned by Plaintiffs and Class Members" (Complaint ¶2736). Although Plaintiffs go on to allege in conclusory fashion that, "Defendants' private nuisance was the direct, proximate and foreseeable cause of Plaintiffs' and Class Members' damages …" (Complaint ¶2740), the Complaint omits allegations of ultimate fact detailing how La Suprema's

alleged importation, exportation or brokering of the drywall created or caused the nuisance of emission of gasses. On the contrary, the alleged nuisance claimed by Plaintiffs suggests a defect in the manufacturing of the drywall rather than issues related to the manner in which it was imported, exported or brokered.

A distinction must be made between the alleged conduct of La Suprema – importation, exportation or brokering of the drywall – and the alleged nuisance for which Plaintiffs seek recovery – "off-gassing" from the drywall. The Complaint omits allegations establishing that any act of La Suprema actually or proximately caused the alleged nuisance. Florida's First District Court of Appeal recognized the obligation of a plaintiff seeking to recover upon a nuisance claim to connect the alleged misconduct of the defendant with the asserted damages in Durrance v. Sanders, *id.* Durrance involved a nuisance claim based upon compost dumped by the defendants on property adjacent to that owned by the plaintiffs. The plaintiffs claimed the defendants' activity in dumping the compost created a nuisance after the compost caught fire and thereby spread smoke and unpleasant odors. The First District overturned the judgment for the Plaintiffs and remanded for a new trial, reasoning:

> *"Our examination of the pleadings and the evidence adduced at trial lead us to the inescapable conclusion that the nuisance maintained by appellants (the piles of compost) was not proved to have proximately caused the injuries suffered by appellees as a result of the fire*. Clearly, appellees [*sic*] were responsible for the compost and the damages associated with it. However, the fire is a different matter, even though appellees' complaints asserted that the fire was of unknown origin, they attempted to establish at trial that the compost caught fire by means of spontaneous combustion. At best, then, appellees have established the possibility of spontaneous combustion, *which falls far short of a showing that the fire, and the smoke and odors associated therewith, were proximately caused by some*

> *activity on the part of appellants. The mere dumping of the compost did not cause the fire. There was no evidence presented at trial tending to show that any act of appellants, either intentional, negligent or abnormal or out of place in its surroundings caused the fire.*" *Id.* at 29 (emphasis added)

Clearly, Plaintiffs are asserting Count XI as a second claim for strict liability against La Suprema. That is, Plaintiffs are attempting to assign liability under the guise of "nuisance" without regard to whether La Suprema engaged in culpable behavior. Count XI is therefore substantively defective and must be dismissed.

### Count XII – Negligent Discharge of a Corrosive Substance

Plaintiffs attempt to restate their negligence claim in Count XII via reference to discharge of a corrosive substance – the "off-gassing" from the drywall. No additional allegations of ultimate fact are asserted to establish how an importer, exporter or broker of the drywall knew or should have known of the alleged latent manufacturing defect inherent in the drywall. Absent such allegations, there is no legal duty under Florida law to discover, correct or warn of latent manufacturing defects. Carter v. Hector Supply Co., 128 So.2d 390, 392 (Fla.1961); Ryan v. Atlantic Fertilizer & Chemical Co., 515 So.2d 324, 326 (Fla. 3d DCA 1987); Skinner v. Volkswagen of America, Inc., 350 So.2d 1122, 1123 (Fla. 3d DCA 1977); *see also* Mendez v. Honda Motor Co., 738 F.Supp. 481, 483-84 (S.D.Fla.1990). Count XII is therefore substantively defective and must be dismissed.

### Count XIII – Unjust Enrichment

Count XIII is framed as an action for unjust enrichment against all named Defendants. A claim for unjust enrichment requires allegations that: the plaintiff conferred a benefit upon the defendant; the defendant knowingly and voluntarily accepted and retained such benefit; and that the circumstances are such that it would be

inequitable for the defendant to retain such benefit without paying the fair value thereof to the plaintiff. *See* Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805 (11th Cir.1999).

Here, the Complaint omits allegations that Plaintiffs conferred a benefit upon La Suprema. Instead, they allege:

> "Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members." (Complaint ¶2750)

Plaintiffs do not allege that they purchased the drywall directly from La Suprema, nor do they allege that the specific drywall in their homes was distributed or supplied by La Suprema. Accordingly, any monies La Suprema allegedly received from the sale of the drywall did not come from Plaintiffs. Assuming that the specific drywall in Plaintiffs' homes was allegedly distributed or supplied by La Suprema, any monies from the sale of such drywall were conferred by the distributor/supplier downstream from La Suprema, prior to the ultimate retail sale of the drywall to Plaintiffs. If, alternatively, La Suprema allegedly distributed or supplied drywall in Florida's stream of commerce without ever actually distributing or supplying the specific drywall installed in Plaintiffs' homes, La Suprema never received monies resulting from Plaintiffs' purchases of the drywall. Under either scenario, no benefit was ever conferred by Plaintiffs upon La Suprema. *See, e.g.,* Virgilio v. Ryland Group, Inc., 2009 WL 320857 at 6 (M.D.Fla.):

> "Upon review, the Court concludes that Plaintiffs have failed to allege that they ever conferred any benefit on Defendants. While Ryland's payment of 1.5% of the gross sales price of each home or lot to certain Defendants could

>perhaps be construed as a benefit, Plaintiffs did not confer that benefit on Defendants – Ryland did."

Count XIII is therefore substantively defective and must be dismissed.

Count XIV – Violation of Consumer Protection Acts

Count XIV is framed as an action for a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) against La Suprema. In order to state a valid FDUTPA claim, the claimant must plead: a deceptive act or unfair practice; causation; and actual damages. *See* Third Party Verification, Inc. v. Signaturelink, Inc., 492 F.Supp.2d 1314, 1326 (M.D.Fla. 2007); Grillasca v. Amerada Hess Corp., 2006 WL 3313719 at 4 (M.D.Fla.). Additionally, FDUTPA claims cannot be based upon personal injuries or damage to property other than that which is the subject of the consumer transaction. §501.212(3), Fla.Stat. (2004); T.W.M. v. American Medical Systems, Inc., 886 F.Supp. 842, 844 (N.D.Fla. 1995).

Where a FDUTPA claim is asserted against multiple defendants, the pleader must allege facts establishing deceptive or unfair conduct on the part of each individual defendant which directly resulted in the damages at issue. *See, e.g.,* Virgilio v. Ryland Group, Inc., 2009 WL 320857 at 6 (M.D.Fla.); General Motors Acceptance Corp. v. Laesser, 718 So.2d 276, 277-78 (Fla. 4th DCA 1998). In Virgilio, purchasers of a home brought a FDUTPA claim against multiple defendants alleging that their home was located near a WWII bombing range containing harmful chemicals and live ammunition, and that no disclosure about the bombing range was given when the plaintiffs purchased their home. The developer that sold the undeveloped land to the homebuilder, a property management company and a project management company were joined as defendants, in

addition to the homebuilder that directly sold the home to the plaintiffs. Upon a motion to dismiss the FDUTPA claim brought by the developer, property management company and the project manager, the Court held that the plaintiff failed to allege a deceptive or unfair practice because such defendants were not directly involved in the sale of the home to plaintiffs. Virgilio, 2009 WL 320857 at 6.

Similarly, in Laesser the plaintiff brought a FDUTPA claim against an automobile dealership as well as the finance company involved in plaintiff's auto purchase. Although the Florida Fourth District Court of Appeal acknowledged the "deceptive" character of training seminars conducted by GMAC wherein "bait and switch" tactics were taught, the judgment against GMAC was reversed upon the Court's holding that no evidence was presented establishing that the deceptive training seminars caused the misconduct on the part of the dealership which directly resulted in the plaintiff's damages. Laesser, 718 So.2d at 277-78.

Here, Count XIV lacks allegations establishing either a deceptive or unfair practice on the part of La Suprema or that such practice directly caused Plaintiffs' damages. Plaintiffs neglect to allege any direct contact with La Suprema. Therefore, the Complaint omits averments evidencing deceptive or unfair conduct by La Suprema. Moreover, even if merely importing, exporting or brokering defective drywall could fairly be characterized as "deceptive" or "unfair," the Complaint is silent as to when, how and from whom Plaintiffs directly obtained the allegedly defective drywall. Consequently, Plaintiffs have not established that La Suprema's conduct actually caused the damages at issue. Finally, Plaintiffs cannot recover under FDUTPA to the extent they claim personal injuries or damage to property other than that which was the subject of the

consumer transactions at issue. Count XIV is therefore substantively defective and must be dismissed.

### Count XV – Equitable and Injunctive Relief and Medical Monitoring

Plaintiffs omit allegations establishing a right to either an injunction or medical monitoring.

In order to state a claim for injunctive relief, Plaintiffs must allege facts establishing that irreparable harm will occur absent issuance of an injunction. *See* Abele v. Sawyer, 750 So.2d 70, 76 (Fla. 4th DCA 1999); Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County, 616 So.2d 562, 564 (Fla. 5th DCA 1993). Plaintiffs yet again plead a bare legal conclusion by merely stating they will suffer irreparable harm, and no supporting allegations of ultimate fact are made (Complaint ¶2760). Additional allegations, however, contradict such conclusion.

Specifically, Plaintiffs demand that Defendants, "buy back or rescind the contracts for Plaintiffs' and Class Members' homes … or … remediate, repair and/or replace the drywall …" (Complaint ¶2761). Accordingly, Plaintiffs are merely seeking remuneration for the allegedly defective drywall; injunctive relief is therefore unavailable due to the existence of (and, indeed, specific request for) an adequate legal remedy. *See* Action Elec. & Repair, Inc. v. Batelli, 416 So.2d 888, 889 (Fla. 4th DCA 1982) ("An action for damages does not become an equitable action merely because a request for injunction is also made.")

Moreover, Plaintiffs' demand that Defendants, "institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers

associated with the drywall" (Complaint ¶2761) is entirely inappropriate because Plaintiffs clearly lack standing to seek such relief.

Plaintiffs' claim for medical monitoring is similarly inadequate. In order to obtain such remedy, the following elements must be established: 1) exposure greater than normal background levels; 2) to a proven hazardous substance; 3) which exposure was caused by the defendant's negligence; 4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; 5) a monitoring procedure exists that makes early detection of such disease possible; 6) the prescribed monitoring regime is different than that normally recommended in the absence of the exposure; and 7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *See* Petito v. A.H. Robins Co., Inc., 750 So.2d 103, 106-07 (Fla. 3d DCA 1999).

The allegations of Count XV do not even remotely satisfy the elements necessary to state a claim for medical monitoring as set forth above. Although Plaintiffs do allege that they have been exposed to a hazardous substance, they do not specify that such exposure has proximately increased their risk of contracting a serious latent disease or that a medical monitoring regime exists that makes early detection of any such latent disease possible. Defendants and the Court are therefore required to speculate as to what prospective ailments Plaintiffs are seeking to detect and whether medical monitoring is capable of detecting such unspecified maladies. Count XV is therefore substantively defective and must be dismissed.

### III. *Conclusion.*

The June 15, 2009 Transfer Order of the Judicial Panel on Multidistrict Litigation which precipitated MDL no. 2047 expressly states that the cases being transferred to the Eastern District of Louisiana are for coordinated or consolidated *pretrial proceedings*. Plaintiffs herein have nevertheless filed suit within such proceedings against a wide assortment of local Defendants unconnected to this forum. No constitutional or statutory basis exists to enable the Court to exercise personal jurisdiction over those Defendants whose only ties to Louisiana result from the June 15, 2009 Transfer Order. Moreover, each substantive count directed against La Suprema lacks specific allegations of ultimate facts necessary to support the stated cause of action. Dismissal with prejudice is required.

ROSENTHAL ROSENTHAL RASCO KAPLAN, LLC
One Aventura, Suite 600
20900 NE 30th Avenue
Aventura, Florida 33180
Tel:   305-937-0300
Fax:   305-937-1311


By:_____
EDUARDO I. RASCO, ESQ.
FLORIDA BAR NO. 646326
STEVE BIMSTON, ESQ.
FLORIDA BAR NO. 179205

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 26th day of March, 2010.

        ROSENTHAL ROSENTHAL RASCO KAPLAN, LLC
        One Aventura, Suite 600
        20900 NE 30th Avenue
        Aventura, Florida 33180
        Tel:   305-937-0300
        Fax:  305-937-1311

        By: _____
            EDUARDO I. RASCO, ESQ.
            FLORIDA BAR NO. 646326
            STEVE BIMSTON, ESQ.
            FLORIDA BAR NO. 179205