# EXHIBIT C

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

MID-CONTINENT CASUALTY CO., a foreign
corporation,

        Plaintiff,

vs.                                          CASE NO:

ROBERT C. PATE, as Trustee for the Chinese
Drywall Trust, a Citizen of the State of Texas,
1ST CHOICE CONSTRUCTION, INC., a
Florida Corporation, FINEST DRYWALL,
INC., a Florida Corporation, DISTINCTIVE
FINISHES, LLC, a Florida Corporation,
SWEDBERG ENTERPRISES, INC. d/b/a
FLORIDA DRYWALL, a Florida Corporation,
and, STEVEN SWEET DRYWALL, a Florida
Corporation,

        Defendants.

_____/

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, Mid-Continent Casualty Company ("MCC"), sues the Defendants, Robert C. Pate, as Trustee for the Chinese Drywall Trust ("Pate"), 1st Choice Construction, Inc. ("1st Choice"), Finest Drywall, Inc. ("Finest"), Distinctive Finishes, LLC ("Distinctive"), Swedberg Enterprises, Inc. d/b/a Florida Drywall ("Swedberg"), Steven Sweet Drywall ("Sweet Drywall") (collectively the "Subcontractors") for declaratory relief as follows:

**NATURE OF ACTION**

1.      This is an action for declaratory relief pursuant to 28 U.S.C. §2201 and 2202 for the purposes of determining an actual controversy between the parties as to the scope of MCC's duty to defend and indemnify under its contracts of insurance with the Subcontractors.

## JURISDICTION AND VENUE

2.      Jurisdiction in this Court is proper, pursuant to 28 U.S.C. §1332(a), since the amount in controversy exceeds $75,000, exclusive of interest and costs, and this civil action is between citizens of different states.

3.      Venue is proper in the United States District Court for the Middle District of Florida, Fort Myers Division, because one or more defendants reside here, the events or omissions giving rise to the claims set forth below occurred here, and one or more of the projects are located here.

4.      All conditions precedent to the institution of this action have occurred, been performed or have been waived.

## THE PARTIES

5.      The plaintiff, MCC, is an Ohio Corporation with its principle place of business in Tulsa, Oklahoma.

6.      The defendant, Pate, is a citizen of the State of Texas and lives in Corpus Christi, Texas. As alleged below, Pate was assigned WCI Communities, Inc. ("WCI") rights.  WCI is a Delaware corporation with its principle place of business in Bonita Springs, Florida.

7.      The defendant, 1st Choice, is a Florida corporation with its principle place of business in Bonita Springs, Florida.

8.      The defendant, Finest, is a Florida corporation with its principle place of business in Miami, Florida.

9.      The defendant, Distinctive, is a Florida corporation with its principle place of business in Sanibel, Florida.

2

Case No.:

10.     The defendant, Swedberg, is a Florida corporation with its principle place of business in Land O'Lakes, Florida.

11.     The defendant, Sweet Drywall, is a Florida corporation with its principle place of business in Tampa, Florida.

## FACTUAL ALLEGATIONS

12.     Upon information an belief, the Subcontractors contracted with WCI to install drywall on projects located in Fort Myers, Fort Lauderdale, and Brandenton, Florida (the "Projects").[1]

13.     WCI is a developer that builds homes and residential communities and then sells the homes to prospective buyers/homeowners.

14.     The Projects include, among other things, single-family homes, villas, condominiums, and luxury high rise towers and were primarily built between September 5, 2006 and September 12, 2008.

15.     After the single family homes, villas, condominiums, and/or luxury high rise towers were completed and/or put to their intended use, WCI began to receive complaints from homeowners regarding Chinese Drywall.

16.     The homeowners alleged claims include increased rates of corrosion of soft metal materials throughout the houses to air conditioning coils, refrigerator tubing, electrical wires, television connections, various health issues, and tarnishing of silver and soft metal within the homes from the drywall.

17.     On August 4, 2008 and July 1, 2009, WCI, and a number of its subsidiaries filed for bankruptcy (the "Bankruptcy Plan or Plan").

---

[1]     MCC does not have copies of the subcontracts between the Subcontractors and WCI, but copies will be obtained during discovery, if they exist.

14469478v1 908419 56475

Case No.:

18.     The Plan created a Chinese Drywall Trust.  A copy of the Plan is attached as Exhibit "A."

19.     The Plan transferred WCI's rights to Pate to prosecute the Chinese Drywall claims.

20.     Neither Pate nor WCI has sued the Subcontractors.  However, WCI has requested MCC as the insurer of one or more of the Subcontractors to defend and indemnify it as a result of the homeowners' claims.

21.     Pate and the Subcontractors are proper parties as their rights may be affected by this Court's declaration.

## POLICY PROVISIONS

22.     MCC entered into contracts of insurance with 1st Choice, Finest, Distinctive, Sweedberg, and Sweet Drywall (Collectively the "Policies").  The Policies include:

### 1st Choice

Policy No. 04-GL-000717960, from 6/01/08 to 6/01/09, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (the "1st Choice Policy").

### Finest

Policy No. 04-GL-000699958, from 9/15/07 to 9/15/08, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate;

Policy No. 04-GL-000730812, from 9/15/08 to 9/15/09, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate;

Policy No. 04-GL-000768602, from 9/15/09 to 9/15/10, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (the "Finest Policies").

### Distinctive

Policy No. 04-GL-000586669, from 4/11/05 to 4/11/06, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate;

4

Case No.:

Policy No. 04-GL-000627470, from 4/11/06 to 4/11/07, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate;

Policy No. 04-GL-000712047, from 4/11/08 to 4/11/09, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (the "Distinctive Policies").[2]

**Swedberg**

Policy No. 04-GL-000630931, from 5/11/06 to 5/11/07, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate. (the "Swedberg Policy").

**Sweet Drywall[3]**

Policy No. 04-GL-000705707, from 2/15/08 to 2/15/09, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (the "Sweet Drywall Policy).

\* \* \*

Copies of the Policies are attached as Composite Exhibit "B."

23.    The Policies contain the following relevant provisions:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance doe not apply. We may at our discretion investigate any occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

---

[2]    Policy was cancelled on 12/01/08 for nonpayment.
[3]    Policy was cancelled on 9/26/08 for nonpayment.

14469478v1 908419 56475

Case No.:

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)  The "bodily injury" or "property damage" occurs during the policy period; and

c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

\* \* \*

## b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract", provided the 'bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

6

Case No.:

**f.    Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)**"Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(2)** Any loss, cost, or expense arising out of any:

**(a)**  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants", or

**(b)**  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

\* \* \*

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

7

Case No.:

***

**m.**     **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**     **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency. inadequacy or dangerous condition in it.

***

## SECTION V- DEFINITIONS

***

8.     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

8

a.      The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.      Your fulfilling the terms of the contract or agreement.

***

15.     "Pollutants" mean any solid, liquid, gaseous or vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.     "Products-completed operations hazard":

a.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.

(b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.      Does not include "bodily injury" or "property damage" arising out of:

(1)     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2)     The existence of tools, uninstalled equipment or abandoned or unused materials; or

9

Case No.:

(3)    Products or operations for which the classification, listed in the Declarations or in a policy schedule, states the products completed operations are subject to the General Aggregate Limit.

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

21.    "Your product":

a.    Means:

(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)    You;

(b)    Others trading under your name; or

(c)    A person or organization whose business or assets you have acquired; and

(2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.    Includes:

(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2)    The providing of or failure to provide warnings or instructions.

c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

22.    "Your work" means":

a.    Means:

(1)    Work or operations performed by you or on your behalf; and

10

Case No.:

      (2)    Materials, parts or equipment furnished in connection with such work or operations.

b.    Includes:

      (1)    Warranties or representatives made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2)    The providing of or failure to provide warnings or instruction.

\*\*\*

## EXCLUSION—DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF  (CG 22 94 10 01)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of Section I-Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

2.    Exclusions

This insurance does not apply to:

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

\*\*\*

## ADDITIONAL INSURED- OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION (ML 1081 03 01)[4]

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

---

[4] The 1st Choice policy does not contain this endorsement.

11

14469478v1  908419  56475

Case No.:

**Any person or organization for whom the named insured has agreed by written "insured contract" to designate as an additional insured subject to all provisions and limitations of this policy.**

(if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of ongoing operations for that insured.

\*\*\*

### OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION – ADDITIONAL INSURED (ML 12 14 07 01)[5]

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

**WCI Communities, Inc.**

(if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of ongoing operations for that insured.

This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

(hereinafter collectively the "AI Endorsements")

\*\*\*

### COUNT I – WCI IS NOT AN ADDITIONAL INSURED UNDER ANY OF THE SUBCONTRACTORS' POLICIES

24.    MCC realleges paragraphs 1 through 23 as paragraph 24 of Count I.

---

[5] This endorsement is in policies issued to Distinctive, policy nos. 04-GL-000586669 and 04-GL-000627470.

12

Case No.:

25.     The AI Endorsements only applies to liability directly attributable to the named insured's ongoing operations.

26.     The 1st Choice policy does not contain the AI Endorsements or any other endorsement naming WCI as an additional insured.

27.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to defend or indemnify Pate under the Policies.

28.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policies.

Wherefore, MCC respectfully requests this Court to:

     a.     Take jurisdiction over this matter;

     b.     Find and declare that MCC does not have any obligation to either defend or indemnify WCI under its Policies; and

     c.     Enter any other order the Court deems proper under the evidence and circumstances.

**COUNT II – IF WCI IS AN INSURED THERE IS NO DUTY TO INDEMNIFY FOR DAMAGES THAT DO NOT CONSTITUTE PROPERTY DAMAGE OR TO DEFEND OR INDEMNIFY WCI OR 1ST CHOICE TO THE EXTENT THE DAMAGES DID NOT TAKE PLACE DURING THE POLICY PERIOD UNDER THE 1ST CHOICE POLICY**

29.     MCC realleges paragraphs 1 through 23 as paragraph 29 of Count II.

30.     MCC's duty to indemnify is limited to pay damages because of property damage caused by an occurrence.  To the extent 1st Choice and/or Pate is seeking to recover from MCC the cost to repair and replace defective work/defective product, as opposed to damage caused by defective work/defective product, or damages for economic losses in the nature of the diminished value of the Projects, such damages do not meet the definition of property damage.

14469478v1 908419 56475

Case No.:

31.     MCC's duty to indemnify is limited to property damage that occurs during the policy period.  To the extent 1st Choice and/or Pate is seeking to recover from MCC any damages that did not take place during the policy period, MCC has no duty to defend or indemnify Pate and/or 1st Choice.

32.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify and in particular to:

      a.     Whether MCC has an obligation to indemnify Pate and 1st Choice for  the cost to remove and replace the defective work/defective product;

      b.     Whether MCC has an obligation to indemnify Pate and 1st Choice for the cost to remove, repair and replace undamaged property in order to remove and replace the defective work/defective product for which no coverage is provided under the policy;

      c.     Whether MCC has an obligation to indemnify Pate and 1st Choice for economic damages in the nature of the diminished value of the Projects;

      d.     Whether MCC has an obligation to indemnify Pate and 1st Choice for any equitable relief such as the recall the materials used to construct the Projects; and

      e.     Whether MCC has an obligation to indemnify Pate and 1st Choice for only those damages, if any, that took place during the policy period.

33.     Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, constitute property damage under the 1st Choice Policy.

34.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the 1st Choice Policy.

Wherefore, MCC respectfully requests this Court to:

      a.     Take jurisdiction over this matter;

14

Case No.:

  b.  Find and declare that MCC's obligation under the 1st Choice Policy is limited to indemnifying Pate and 1st Choice for property damage, if any, as that term is defined in the 1st Choice Policy;

  c.  Find and declare that MCC's obligation under the 1st Choice Policy is limited to indemnifying Pate and 1st Choice for property damage that took place during the policy period and if no property damage took place during the policy period that MCC has no obligation to defend or indemnify Pate and 1st Choice; and

  d.  Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT III – NO DUTY TO DEFEND AND INDEMNIFY TO THE EXTENT THE POLLUTION EXCLUSION APPLIES OR TO INDEMNIFY FOR DAMAGES EXCLUDED FROM COVERAGE UNDER THE 1ST CHOICE POLICY

35.  MCC realleges paragraphs 1 through 23 as paragraph 35 of Count III.

36.  The 1st Choice Policy contains the your product, damage to work performed by subcontractors on your behalf, pollution, impaired property, recall, and contractual liability exclusions, each of which limit, in whole or in part, MCC's obligation to defend or indemnify Pate and 1st Choice.

37.  In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to defend and/or indemnify 1st Choice and Pate.

38.  Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, are covered under the 1st Choice Policy.

39.  Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the 1st Choice Policy.

Wherefore, MCC respectfully requests this Court to:

  a.  Take jurisdiction over this matter;

14469478v1 908419 56475

Case No.:

b.      Find and declare that MCC's obligation under the 1st Choice Policy is limited to indemnifying Pate and 1st Choice for damages, if any, not excluded by the Policy;

c.      Find and declare that MCC has no obligation under the 1st Choice Policy to defend Pate and 1st Choice if the pollution exclusion applies; and

d.      Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT IV – NO DUTY TO INDEMNIFY FOR EQUITABLE RELIEF, INCLUDING MEDICAL AND ENVIRONMENTAL MONITORING UNDER THE 1ST CHOICE POLICY

40.    MCC realleges paragraphs 1 through 23 as paragraph 40 of Count IV.

41.    MCC's duty to indemnify is limited to pay damages because of bodily injury or property damage caused by an occurrence.

42.    In view of the foregoing, a present actual controversy exists between the parties as to the scope of MCC's obligation to indemnify Pate and/or 1st Choice and in particular to:

a.      initiate and pay for medical monitoring;

b.      identify each and every home with defective drywall;

c.      test every home in which defective drywall may be found;

d.      retain experts/consultants to analyze the drywall in any way;

e.      temporarily relocating the homeowners;

f.      to rescind the contract and/or to repurchase the home; and

g.      initiate and pay for environmental monitoring.

43.    Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to whether equitable relief, including medical and environmental monitoring, constitutes damages and/or bodily injury/property damage under the 1st Choice Policy.

14469478v1 908419 56475

44.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the 1st Choice Policy.

Wherefore, MCC respectfully requests this Court to:

a.      Take jurisdiction over this matter;

b.      Find and declare that MCC is not obligated under the 1st Choice Policy to pay for the costs to initiate and pay for medical/environmental monitoring or for any other equitable relief; and

c.      Enter any other order the Court deems proper under the evidence and circumstances.

**COUNT V – IF WCI IS AN INSURED THERE IS NO DUTY TO INDEMNIFY FOR DAMAGES THAT DO NOT CONSTITUTE PROPERTY DAMAGE OR TO DEFEND OR INDEMNIFY WCI OR FINEST TO THE EXTENT THE DAMAGES DID NOT TAKE PLACE DURING THE POLICY PERIOD UNDER THE FINEST POLICIES**

45.     MCC realleges paragraphs 1 through 23 as paragraph 45 of Count V.

46.     MCC's duty to indemnify is limited to pay damages because of property damage caused by an occurrence.  To the extent Finest and/or Pate is seeking to recover from MCC the cost to repair and replace defective work/defective product, as opposed to damage caused by defective work/defective product, or damages for economic losses in the nature of the diminished value of the Projects, such damages do not meet the definition of property damage.

47.     MCC's duty to indemnify is limited to property damage that occurs during the policy periods.  To the extent Finest and/or Pate is seeking to recover from MCC any damages that did not take place during the policy periods, MCC has no duty to defend or indemnify Pate and/or Finest.

48.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify and in particular to:

17

    a.      Whether MCC has an obligation to indemnify Pate and Finest for the cost to remove and replace the defective work/defective product;

    b.      Whether MCC has an obligation to indemnify Pate and Finest for the cost to remove, repair and replace undamaged property in order to remove and replace the defective work/defective product for which no coverage is provided under the Finest Policies;

    c.      Whether MCC has an obligation to indemnify Pate and Finest for economic damages in the nature of the diminished value of the Projects;

    d.      Whether MCC has an obligation to indemnify Pate and Finest for any equitable relief such as the recall the materials used to construct the Projects; and

    e.      Whether MCC has an obligation to indemnify Pate and Finest for only those damages, if any, that took place during the policy periods.

49.    Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, constitute property damage under the Finest Policies.

50.    Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Finest Policies.

Wherefore, MCC respectfully requests this Court to:

    a.      Take jurisdiction over this matter;

    b.      Find and declare that MCC's obligation under the Finest Policies is limited to indemnifying Finest for property damage, if any, as that term is defined in the Policies;

    c.      Find and declare that MCC's obligation under the Finest Policies is limited to indemnifying Pate and/or Finest for property damage that took place during the policy

Case No.:

periods and if no property damage took place during the policy period that MCC has no obligation to defend or indemnify Pate and Finest; and

      d.     Enter any other order the Court deems proper under the evidence and circumstances.

### COUNT VI – DUTY TO DEFEND AND INDEMNIFY TO THE EXTENT THE POLLUTION EXCLUSION APPLIES OR TO INDEMNIFY FOR DAMAGES EXCLUDED FROM COVERAGE UNDER THE FINEST POLICIES

51.     MCC realleges paragraphs 1 through 23 as paragraph 51 of Count VI.

52.     The Policies contain the your product, damage to work performed by subcontractors on your behalf, pollution, impaired property, recall, and contractual liability exclusions, each of which limit, in whole or in part, MCC's obligation to defend or indemnify Pate and Finest.

53.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to defend and/or indemnify Finest and Pate.

54.     Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, are covered under the Finest Policies.

55.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Finest Policies.

Wherefore, MCC respectfully requests this Court to:

      a.     Take jurisdiction over this matter;

      b.     Find and declare that MCC's obligation under the Finest Policies are limited to indemnifying Pate and Finest for damages, if any, not excluded by the Finest Policies;

      c.     Find and declare that MCC has no obligation under the Finest Policies to defend Pate and Finest if the pollution exclusion applies; and

14469478v1 908419 56475

Case No.:

d.    Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT VII – NO DUTY TO INDEMNIFY FOR EQUITABLE
## RELIEF, INCLUDING MEDICAL AND ENVIRONMENTAL MONITORING UNDER
## THE FINEST POLICIES

56.    MCC realleges paragraphs 1 through 23 as paragraph 56 of Count VII.

57.    MCC's duty to indemnify is limited to pay damages because of bodily injury or property damage caused by an occurrence.

58.    In view of the foregoing, a present actual controversy exists between the parties as to the scope of MCC's obligation to indemnify Pate and/or Finest and in particular to:

a.    initiate and pay for medical monitoring;

b.    identify each and every home with defective drywall;

c.    test every home in which defective drywall may be found;

d.    retain experts/consultants to analyze the drywall in any way;

e.    temporarily relocating the homeowners;

f.    to rescind the contract and/or to repurchase the home; and

g.    initiate and pay for environmental monitoring.

59.    Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to whether equitable relief, including medical and environmental monitoring, constitutes damages and/or bodily injury/property damage under the Finest Policies.

60.    Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Finest Policies.

Wherefore, MCC respectfully requests this Court to:

a.    Take jurisdiction over this matter;

14469478v1 908419 56475

Case No.:

    b.    Find and declare that MCC is not obligated under the Finest Policies to pay for the costs to initiate and pay for medical/environmental monitoring or for any other equitable relief; and

    c.    Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT VIII – –IF WCI IS AN INSURED THERE IS NO DUTY TO INDEMNIFY FOR DAMAGES THAT DO NOT CONSTITUTE PROPERTY DAMAGE OR TO DEFEND OR INDEMNIFY WCI OR DISTINCTIVE TO THE EXTENT THE DAMAGES DID NOT TAKE PLACE DURING THE POLICY PERIOD UNDER THE DISTINCTIVE POLICIES

61.    MCC realleges paragraphs 1 through 23 as paragraph 61 of Count VIII.

62.    MCC's duty to indemnify is limited to pay damages because of property damage caused by an occurrence. To the extent Distinctive and/or Pate is seeking to recover from MCC the cost to repair and replace defective work/defective product, as opposed to damage caused by defective work/defective product, or damages for economic losses in the nature of the diminished value of the Projects, such damages do not meet the definition of property damage.

63.    MCC's duty to indemnify is limited to property damage that occurs during the policy periods. To the extent Distinctive and/or Pate is seeking to recover from MCC any damages that did not take place during the policy periods, MCC has no duty to defend or indemnify Pate and/or Distinctive.

64.    In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify and in particular to:

    a.    Whether MCC has an obligation to indemnify Pate and Distinctive for the cost to remove and replace the defective work/defective product;

14469478v1 908419 56475

b.      Whether MCC has an obligation to indemnify Pate and Distinctive for the cost to remove, repair and replace undamaged property in order to remove and replace the defective work/defective product for which no coverage is provided under the Distinctive Policies;

c.      Whether MCC has an obligation to indemnify Pate and Distinctive for economic damages in the nature of the diminished value of the Projects;

d.      Whether MCC has an obligation to indemnify Pate and Distinctive for any equitable relief such as the recall the materials used to construct the Projects; and

e.      Whether MCC has an obligation to indemnify Pate and Distinctive for only those damages, if any, that took place during the policy periods.

65.      Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, constitute property damage under the Distinctive Policies.

66.      Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policies.

Wherefore, MCC respectfully requests this Court to:

a.      Take jurisdiction over this matter;

b.      Find and declare that MCC's obligation under the Distinctive Policies are limited to indemnifying Pate and Distinctive for property damage, if any, as that term is defined in the Distinctive Policies;

c.      Find and declare that MCC's obligation under the Distinctive Policies is limited to indemnifying Pate and Distinctive for property damage that took place during the policy periods and if no property damage took place during the policy period that MCC has no obligation to defend or indemnify Pate and Distinctive; and

Case No.:

d.      Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT IX – DUTY TO DEFEND AND INDEMNIFY TO THE EXTENT THE POLLUTION EXCLUSION APPLIES OR TO INDEMNIFY FOR DAMAGES EXCLUDED FROM COVERAGE UNDER THE DISTINCTIVE POLICIES

67.     MCC realleges paragraphs 1 through 23 as paragraph 67 of Count IX.

68.     The Policies contain the your product, damage to work performed by subcontractors on your behalf, pollution, impaired property, recall, and contractual liability exclusions, each of which limit, in whole or in part, MCC's obligation to defend or indemnify Pate and Distinctive.

69.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to defend and/or indemnify Distinctive and Pate.

70.     Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, are covered under the Distinctive Policies.

71.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Distinctive Policies.

Wherefore, MCC respectfully requests this Court to:

a.      Take jurisdiction over this matter;

b.      Find and declare that MCC's obligation under the Distinctive Policies is limited to indemnifying Pate and Distinctive for damages, if any, not excluded by the Distinctive Policies;

c.      Find and declare that MCC has no obligation under the Distinctive Policies to defend Pate and Distinctive if the pollution exclusion applies; and

d.      Enter any other order the Court deems proper under the evidence and circumstances.

Case No.:

## COUNT X – NO DUTY TO INDEMNIFY FOR EQUITABLE RELIEF, INCLUDING MEDICAL AND ENVIRONMENTAL MONITORING UNDER THE DISTINCTIVE POLICIES

72.    MCC realleges paragraphs 1 through 23 as paragraph 72 of Count X.

73.    MCC's duty to indemnify is limited to pay damages because of bodily injury or property damage caused by an occurrence.

74.    In view of the foregoing, a present actual controversy exists between the parties as to the scope of MCC's obligation to indemnify Pate and/or Distinctive and in particular to:

    a.    initiate and pay for medical monitoring;

    b.    identify each and every home with defective drywall;

    c.    test every home in which defective drywall may be found;

    d.    retain experts/consultants to analyze the drywall in any way;

    e.    temporarily relocating the homeowners;

    f.    to rescind the contract and/or to repurchase the home; and

    g.    initiate and pay for environmental monitoring.

75.    Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to whether equitable relief, including medical and environmental monitoring, constitutes damages and/or bodily injury/property damage under the Distinctive Policies.

76.    Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Distinctive Policies.

Wherefore, MCC respectfully requests this Court to:

    a.    Take jurisdiction over this matter;

    b.    Find and declare that MCC is not obligated under the Distinctive Policies to pay for the costs to initiate and pay for medical/environmental monitoring or for any other equitable relief; and

24

Case No.:

c.     Enter any other order the Court deems proper under the evidence and circumstances.

**COUNT XI –IF WCI IS AN INSURED THERE IS NO DUTY TO INDEMNIFY FOR DAMAGES THAT DO NOT CONSTITUTE PROPERTY DAMAGE OR TO DEFEND OR INDEMNIFY WCI OR SWEDBERG TO THE EXTENT THE DAMAGES DID NOT TAKE PLACE DURING THE POLICY PERIOD UNDER THE SWEDBERG POLICY**

77.    MCC realleges paragraphs 1 through 23 as paragraph 77 of Count XI.

78.    MCC's duty to indemnify is limited to pay damages because of property damage caused by an occurrence.  To the extent Swedberg and/or Pate is seeking to recover from MCC the cost to repair and replace defective work/defective product, as opposed to damage caused by defective work/defective product, or damages for economic losses in the nature of the diminished value of the Projects, such damages do not meet the definition of property damage.

79.    MCC's duty to indemnify is limited to property damage that occurs during the policy periods.  To the extent Swedberg and/or Pate is seeking to recover from MCC any damages that did not take place during the policy period, MCC has no duty to defend or indemnify Pate and/or Swedberg.

80.    In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify and in particular to:

a.     Whether MCC has an obligation to indemnify Pate and Swedberg for  the cost to remove and replace the defective work/defective product;

b.     Whether MCC has an obligation to indemnify Pate and Swedberg for the cost to remove, repair and replace undamaged property in order to remove and replace the defective work/defective product for which no coverage is provided under the policy;

c.     Whether MCC has an obligation to indemnify Pate and Swedberg for economic damages in the nature of the diminished value of the Projects;

14469478v1 908419 56475

Case No.:

  d.  Whether MCC has an obligation to indemnify Pate and Swedberg for any equitable relief such as the recall the materials used to construct the Projects; and

  e.  Whether MCC has an obligation to indemnify Pate and Swedberg for only those damages, if any, that took place during the policy period.

81.  Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages constitute property damage, if any under the Swedberg Policy.

82.  Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Swedberg Policy.

Wherefore, MCC respectfully requests this Court to:

  a.  Take jurisdiction over this matter;

  b.  Find and declare that MCC's obligation under the Swedberg Policy is limited to indemnifying Pate and Swedberg for property damage, if any, as that term is defined in the Swedberg Policy;

  c.  Find and declare that MCC's obligation under the Swedberg Policy is limited to indemnifying Swedberg for property damage that took place during the policy period and if no property damage took place during the policy period that MCC has no obligation to defend or indemnify Pate and Swedberg; and

  d.  Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT XII — DUTY TO DEFEND AND INDEMNIFY TO THE EXTENT THE POLLUTION EXCLUSION APPLIES OR TO INDEMNIFY FOR DAMAGES EXCLUDED FROM COVERAGE UNDER SWEDBERG POLICY

83.  MCC realleges paragraphs 1 through 23 as paragraph 83 of Count XII.

84.  The Swedberg Policy contains the your product, damage to work performed by subcontractors on your behalf, pollution, impaired property, recall, and contractual liability

26

Case No.:

exclusions, each of which limit, in whole or in part, MCC's obligation to defend or indemnify Pate and Swedberg.

85.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to defend and/or indemnify Swedberg and Pate.

86.     Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, are covered under the Swedberg Policy.

87.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Swedberg Policy.

Wherefore, MCC respectfully requests this Court to:

a.     Take jurisdiction over this matter;

b.     Find and declare that MCC's obligation under the Swedberg Policy is limited to indemnifying Pate and Swedberg for damages, if any, not excluded by the Swedberg Policy;

c.     Find and declare that MCC has no obligation under the Swedberg Policy to defend Pate and Swedberg if the pollution exclusion applies; and

d.     Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT XIII – NO DUTY TO INDEMNIFY FOR EQUITABLE RELIEF, INCLUDING MEDICAL AND ENVIRONMENTAL MONITORING UNDER THE SWEDBERG POLICY

88.     MCC realleges paragraphs 1 through 23 as paragraph 88 of Count XIII.

89.     MCC's duty to indemnify is limited to pay damages because of bodily injury or property damage caused by an occurrence.

90.     In view of the foregoing, a present actual controversy exists between the parties as to the scope of MCC's obligation to indemnify Pate and/or Swedberg and in particular to:

14469478v1 908419 56475

Case No.:

    a.    initiate and pay for medical monitoring;

    b.    identify each and every home with defective drywall;

    c.    test every home in which defective drywall may be found;

    d.    retain experts/consultants to analyze the drywall in any way;

    e.    temporarily relocating the homeowners;

    f.    to rescind the contract and/or to repurchase the home; and

    g.    initiate and pay for environmental monitoring.

91.    Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to whether equitable relief, including medical and environmental monitoring, constitutes damages and/or bodily injury/property damage under the Swedberg Policy.

92.    Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Swedberg Policy.

Wherefore, MCC respectfully requests this Court to:

    a.    Take jurisdiction over this matter;

    b.    Find and declare that MCC is not obligated under the Swedberg Policy to pay for the costs to initiate and pay for medical/environmental monitoring or for any other equitable relief; and

    c.    Enter any other order the Court deems proper under the evidence and circumstances.

**COUNT XIV –IF WCI IS AN INSURED THERE IS NO DUTY TO INDEMNIFY FOR DAMAGES THAT DO NOT CONSTITUTE PROPERTY DAMAGE OR TO DEFEND OR INDEMNIFY WCI OR SWEET DRYWALL TO THE EXTENT THE DAMAGES DID NOT TAKE PLACE DURING THE POLICY PERIOD UNDER THE SWEET DRYWALL POLICY**

93.    MCC realleges paragraphs 1 through 23 as paragraph 93 of Count XIV.

94.     MCC's duty to indemnify is limited to pay damages because of property damage caused by an occurrence.  To the extent Sweet Drywall and/or Pate is seeking to recover from MCC the cost to repair and replace defective work/defective product, as opposed to damage caused by defective work/defective product, or damages for economic losses in the nature of the diminished value of the Projects, such damages do not meet the definition of property damage.

95.     MCC's duty to indemnify is limited to property damage that occurs during the policy periods.  To the extent Sweet Drywall and/or Pate is seeking to recover from MCC any damages that did not take place during the policy period, MCC has no duty to defend or indemnify Pate and/or Sweet Drywall.

96.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify and in particular to:

a.     Whether MCC has an obligation to indemnify Pate and Sweet Drywall for the cost to remove and replace the defective work/defective product;

b.     Whether MCC has an obligation to indemnify Pate and Sweet Drywall for the cost to remove, repair and replace undamaged property in order to remove and replace the defective work/defective product for which no coverage is provided under the policy;

c.     Whether MCC has an obligation to indemnify Pate and Sweet Drywall for economic damages in the nature of the diminished value of the Projects;

d.     Whether MCC has an obligation to indemnify Pate and Sweet Drywall for any equitable relief such as the recall the materials used to construct the Projects; and

e.     Whether MCC has an obligation to indemnify Pate and Sweet Drywall for only those damages, if any, that took place during the policy period.

Case No.:

97.     Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages constitute property damage, if any, under the Sweet Drywall Policy.

98.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Sweet Drywall Policy.

Wherefore, MCC respectfully requests this Court to:

a.     Take jurisdiction over this matter;

b.     Find and declare that MCC's obligation under the Sweet Drywall Policy is limited to indemnifying Pate and Sweet Drywall for property damage, if any, as that term is defined in the Sweet Drywall Policy;

c.     Find and declare that MCC's obligation under the Sweet Drywall Policy is limited to indemnifying Sweet Drywall for property damage that took place during the policy period and if no property damage took place during the policy period that MCC has no obligation to defend or indemnify Pate and Sweet Drywall; and

d.     Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT XV – DUTY TO DEFEND AND INDEMNIFY TO THE EXTENT THE POLLUTION EXCLUSION APPLIES OR TO INDEMNIFY FOR DAMAGES EXCLUDED FROM COVERAGE UNDER THE SWEET DRYWALL POLICY

99.     MCC realleges paragraphs 1 through 23 as paragraph 99 of Count XV.

100.    The Sweet Drywall Policy contains the your product, damage to work performed by subcontractors on your behalf, pollution, impaired property, recall, and contractual liability exclusions, each of which limit, in whole or in part, MCC's obligation to defend or indemnify Pate and Sweet Drywall.

14469478v1 908419 56475

Case No.:

101.    In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to defend and/or indemnify Sweet Drywall and Pate.

102.    Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, are covered under the Sweet Drywall Policy.

103.    Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Sweet Drywall Policy.

Wherefore, MCC respectfully requests this Court to:

   a.    Take jurisdiction over this matter;

   b.    Find and declare that MCC's obligation under the Sweet Drywall Policy is limited to indemnifying Pate and Sweet Drywall for damages, if any, not excluded by the Sweet Drywall Policy;

   c.    Find and declare that MCC has no obligation under the Sweet Drywall Policy to defend Pate and Sweet Drywall if the pollution exclusion applies; and

   d.    Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT XVI – NO DUTY TO INDEMNIFY FOR EQUITABLE RELIEF, INCLUDING MEDICAL AND ENVIRONMENTAL MONITORING UNDER THE SWEET DRYWALL POLICY

104.    MCC realleges paragraphs 1 through 23 as paragraph 104 of Count XVI.

105.    MCC's duty to indemnify is limited to pay damages because of bodily injury or property damage caused by an occurrence.

106.    In view of the foregoing, a present actual controversy exists between the parties as to the scope of MCC's obligation to indemnify Pate and/or Sweet Drywall and in particular to:

   a.    initiate and pay for medical monitoring;

   b.    identify each and every home with defective drywall;

31

Case No.:

    c.     test every home in which defective drywall may be found;

    d.     retain experts/consultants to analyze the drywall in any way;

    e.     temporarily relocating the homeowners;

    f.     to rescind the contract and/or to repurchase the home; and

    g.     initiate and pay for environmental monitoring.

107.  Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to whether equitable relief, including medical and environmental monitoring, constitutes damages and/or bodily injury/property damage under the Sweet Drywall Policy.

108.  Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Sweet Drywall Policy.

Wherefore, MCC respectfully requests this Court to:

    a.     Take jurisdiction over this matter;

    b.     Find and declare that MCC is not obligated under the Sweet Drywall Policy to pay for the costs to initiate and pay for medical/environmental monitoring or for any other equitable relief; and

    c.     Enter any other order the Court deems proper under the evidence and circumstances.

Dated: _2/23_____, 2010.

32

Case No.:

Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Pedro E. Hernandez
Florida Bar No. 30365
phernandez@hinshawlaw.com
HINSHAW & CULBERTSON LLP
9155 S. Dadeland Boulevard, Suite 1600
Miami, Florida 33156-2741
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Counsel for Mid-Continent Casualty Company*