UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * | MDL No. 09-2047 |
| | * | JUDGE: FALLON |
| THIS DOCUMENT RELATES TO Sean and Beth Payton, et al. v. Knauf Gips, KG, et al. Case No. 2:09-cv-07628 (E.D.La.) | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

Defendant, Swift Supply, Inc. ("Swift") seeks an Order dismissing the claims of the

Plaintiffs under FRCP 12(b)(2) and (3) because Swift is not subject to the jurisdiction of this

Court, and the Eastern District of Louisiana is an improper venue for the proceedings

against Swift.

**I. BACKGROUND**

On December 9, 2009 the Plaintiffs filed this class action Complaint against certain

Knauf Manufacturers of Chinese drywall, distributors/suppliers, importers/exporters/

brokers, builders/developers and contractors/installers, seeking to recover damages said

-1-

to be caused by the Chinese drywall (Doc. 1). Plaintiffs allege that Swift is a distributor or supplier of drywall which resulted in harm and damages to certain Subclass Members (Doc. 1 at p.399; Paragraph 2122). The Complaint (Schedule I) identifies five Subclass Members owning properties in Alabama with claims against Swift.[1] As Plaintiffs' Complaint correctly  asserts, Swift is an Alabama company with a principal place of business in Atmore, Alabama.

As shown herein, Swift is not subject to the personal jurisdiction of this Court because it lacks the constitutionally mandated "minimum contacts" with the state of Louisiana, required before the Court can properly exercise jurisdiction. Therefore, Swift seeks an order of dismissal.

## II.  ARGUMENT

Plaintiffs allege that Swift is an Alabama corporation headquartered in Alabama, further that Swift supplied drywall which was installed in five residences in Alabama. These allegations are insufficient to establish this Court's jurisdiction over Swift.

Due to Swift's challenge to this Court's jurisdiction over it, the Plaintiffs must prove that personal jurisdiction is present. *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d

---

[1]  (a) Austin and Betty Beasley, owning property at 1608 Grace Lake in Fairhope, Alabama (Doc. 1, p. 360; Paragraph 1940); (b) Patricia Childress, owning property at 12156 Twin Oaks Drive in Magnolia Springs, Alabama (Doc. 1, p. 192; Paragraph 1035); © Patricia Dewberry, owning property at 13861 Leon Court in Stapleton, Alabama (Doc. 1, p.192 at Paragraph 1032); (d) Christopher and Natalie Lewis, owning property at 35069 Spring Road South in Stapleton, Alabama (Doc. 1, p. 360; Paragraph 1938); and (e) Shelly Stockwell, owning property at 11823 Stucki Road in Elbert, Alabama (Doc. 1, p. 192; Paragraph 1034).

1134 (5th Cir. 1980).  In this instance, because Plaintiffs assert diversity jurisdiction, the

Court can exercise personal jurisdiction over a nonresident such as Swift only if two criteria

are met: (1) the forum state's long-arm statute confers personal jurisdiction; **and** (2) the

exercise of jurisdiction does not exceed the boundaries of due process. *See Seiferth v.*

*Helicopters Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).

Louisiana's long-arm statute states that a Louisiana court "may exercise personal

jurisdiction over a nonresident on any basis consistent with ... the Constitution of the United

States," La. R.S. 13:3201(B).  La.R.S. 13:3201, provides in its entirety:

A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

(1) Transacting any business in this state.

(2) Contracting to supply services or things in this state.

(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.

(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

(5) Having an interest in, using or possessing a real right on immovable property in this state.

(6) Non-support of a child, parent or spouse or a former spouse domiciled in this state to whom an

-3-

obligation of support is owed and with whom the nonresident formerly resided in this state.

(7)   Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.

(8)   Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.

B.   In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of the state and of the Constitution of the United States.

The long-arm statute sets forth two methods for the exercise of personal jurisdiction over a nonresident. La. R.S. 13:3201(A) outlines instances in which a court may exercise "specific" jurisdiction on account of activities by the defendant from which a cause of action arises. The activities supporting the existence of "specific" jurisdiction grow out of a defendant's purposeful contacts with the forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

La. R.S. 13:3201(B) sets forth a second basis for exercising jurisdiction in instances where such exercise is consistent with the laws of the forum, and the U.S. Constitution. Therefore, if a court lacks specific jurisdiction, it may exercise general jurisdiction consistent with due process considerations – i.e., the defendant is engaged in "continuous

and systematic contacts" with the forum state.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984).

Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the inquiry is simply whether this Court's exercise of jurisdiction over Swift would offend due process. *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F3d 465, 469 (5th Cir. 2006); *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3D 867, 761 (5th Cir. 1999).

The Due Process Clause of the United States Constitution limits the Court's power to assert personal jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 413-14. The Due Process inquiry is two-fold. First, the Court must establish whether Swift, a nonresident defendant, has the requisite minimum contacts with Louisiana, the forum state. *Luv N' Care*, 438 F.3d at 469 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. at 319). Second, the Court must determine whether exercising personal jurisdiction over Swift would violate "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. 310 (1945).

The Fifth Circuit has developed a three-part test in order to determine whether jurisdiction is appropriate under the Due Process Clause and *International Shoe. Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 10/31/2002).  First, the Court determines if the defendant has minimum contacts with the forum state, i.e., whether it purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there. Second, the Court asks whether the plaintiffs'

-5-

cause of action arises out of, or results from, the defendant's forum-related contacts. Last, the Court determines if the exercise of personal jurisdiction is fair and reasonable.

In order to determine whether Swift has minimum contacts with Louisiana, the Court "must identify some act whereby [Swift] 'purposely avail[ed] itself of the privilege of conducting activities [in Louisiana], thus invoking the benefits and protections of its laws.'" *Luv N'Care, Ltd. v. Insta-Mix, Inc.* , 438 F.3d 465, 469-470 (5th Cir. 1/25/2006). Swift's conduct must show that it "reasonably anticipates being haled into Court" in Louisiana. *Id.* at 470; citing *World Wide Volkswagen Corp.*, 444 U.S. at 297. Here, Swift has committed no act to show that it reasonably anticipates being haled into court in Louisiana, and the burden is on the Plaintiffs to prove to the contrary.

Plaintiffs are unable to met their jurisdictional burden of proof.  Attached hereto as Exhibit 1 is the Affidavit of Swift's President, David Dauphin Swift, Sr., wherein he states:

1. Swift is an Alabama corporation, with its principal place of business located at 1450 Swift Mill Road, Atmore, Alabama 36502.

2. Swift is not authorized to do business in Louisiana, and has never done, any business in the state of Louisiana nor does it maintain a registered or statutory agent for service in Louisiana.

3. Swift has never been a resident of the state of Louisiana.

4. Swift has no offices in Louisiana, principal place of business or otherwise.   It has no address or telephone number in Louisiana. It neither owns nor operates, and has never owned or operated, any property - real, personal, or mixed - in Louisiana.

5. Swift has no directors, officers, or employees in Louisiana.  It has no bank accounts in Louisiana.

6.    Swift does not, and has never, solicited any business in Louisiana.

7.    Swift has never transacted business in the State of Louisiana.

8.    He is not personally, or in his capacity as President of Swift, aware of any Swift drywall being distributed in Louisiana, making its way to Louisiana in any fashion, or being installed in any building, home, or other structure in Louisiana.

9.    He is aware of only four instances in the last five years where Swift products have been distributed in Louisiana.  Copies of the invoices for these Swift products are attached hereto as Exhibits"A-D."

10.   The first sale occurred on March 28, 2007, wherein building siding was purchased by Howle-E-Lacy Contractors, a company located in Mobile, Alabama, and  thereafter shipped via independent contract carrier to  Shreveport, Louisiana. Attached hereto, as Exhibit "A," is a copy of said invoice, invoice number 27912411.

11.   The second sale occurred on December 22, 2008, wherein wood pilings were purchased by Barlow Marine, located in Fairhope, Alabama, and  thereafter shipped via independent contract carrier to Plaquemines, Louisiana.  Attached hereto, as Exhibit "B," is a copy of said invoice, invoice number 27912411.

12.   The third sale occurred on January 27, 2009, wherein pressure treated lumber was purchased by Barlow Marine, located in Fairhope, Alabama, and  thereafter shipped via independent contract carrier to Plaquemines, Louisiana.  Attached hereto, as Exhibit "C," is a copy of said invoice, invoice number 70302647.

13.   The fourth and final sale occurred on February 26, 2009, wherein marine treated lumber was purchased by an office of Heatheon, located in New Orleans, Louisiana, and thereafter shipped via independent contract carrier to Plaquemines, Louisiana.  Attached hereto, as Exhibit "D," is a copy of said invoice, invoice number 27913749.

-7-

14.   Swift has never advertised in any publications either targeted to the state of Louisiana, or in any way intended to draw business from any potential customers in Louisiana.

15.   Swift has never received business from any contacts in Louisiana whether individual customers or business contacts.

It is clear that Plaintiffs' causes of action for damages caused to their Alabama properties are not related to any forum-related contacts by Swift.  Plaintiffs make no allegations that Swift's activities are linked to acts by Swift in Louisiana.  As previously noted, Swift is not aware of any instances wherein any type of drywall it has sold has been transported to Louisiana.  *Id*.  Swift is aware of only four instances in the last five years where Swift products (not drywall) have been distributed to Louisiana. See Exhibits "A - D," attached to Exhibit 1.

To require Swift to defend the claims of Alabama property owners in Louisiana offends traditional notions of fair play and substantial justice. In reaching its decision, this Court must consider the burden on Swift of having to defend the claims of Alabama property owners in a Louisiana court at a great distance from its place of business, when Swift has never sought to do business in Louisiana. Here, the Plaintiffs reside in Alabama and the properties at issue are located in Alabama. Swift's primary witnesses will be Alabama citizens. Under these circumstances, it would be anything but fair and reasonable for Swift to be subjected to litigation in Louisiana.

As demonstrated, Plaintiffs cannot establish specific jurisdiction over Swift because the Plaintiffs' causes of action do not arise out of any of Swift's activities in Louisiana. Nor

-8-

can Plaintiffs establish that the Court can exercise general jurisdiction because Swift has not engaged in continuous and systematic activities in Louisiana.

"A court may exercise general jurisdiction over a defendant when the defendant has engaged in 'continuous and systematic contacts' with the forum, but the contacts are not necessarily related to the lawsuit." *Helicopteros,* 466 U.S. at 414-415;   *Peters v. Alpharetta Spa, L.L.C.,* 2004-0979 (La. App. 1 Cir. 5/6/05), 915 So.2d 910, 911. Thus, the sole focus of a general jurisdiction inquiry is whether there are any continuous and systematic contacts between Swift and the state of Louisiana. *Dickinson Marine, Inc.,* 179 F.3d at 339. The Fifth Circuit has found that the continuous and systematic test "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent.,* 249 F.3d 413, 419 (5th Cir. 2001). In addition, Louisiana jurisprudence establishes that "much more substantial contacts with the forum state are required to establish general jurisdiction."   *Curran v. Fisherman Marine Prod., Inc., et al,* 2000-0099 (La. App. 4 Cir. 11/15/00), 773 So.2d 285, 288.

The Supreme Court addressed the question of general jurisdiction in *Helicopteros v. Nacionales de Columbia, S.A. v. Hall* , 466 U.S. 408, wherein a helicopter accident occurred in Peru resulting in the death of American citizens. *Id.* at 410-411. The relatives of these citizens then sued the foreign defendant, Helicopteros, in Texas state court. *Id.* at 412. The Supreme Court was thus forced to consider whether the Texas state court had general jurisdiction over Helicopteros. *Id.* at 415-416. The Supreme Court concluded that no general jurisdiction existed. *Id.* at 416. In reaching this decision, the Court looked to

-9-

the fact that Helicopteros had never been authorized to do business in Texas, never signed a contract in Texas (although it did contract with residents of Texas several times), never had any employee based in Texas, never maintained an office in Texas, did not maintain any records in Texas, and did not have any shareholders in Texas. *Id*.

However, Helicopteros did have numerous contacts with Texas. *Id*. at 411. For example, for seven years, Helicopteros purchase helicopters, spare parts, and accessories from a Bell Helicopters, a Texas company. *Id*. Additionally, Helicopteros sent prospective pilots to Texas for training and management and maintenance personnel of Helicopteros visited Bell Helicopters. *Id*. Despite these contacts, the Supreme Court held that the contacts did not "constitute the kind of continuous and systematic general business contacts" necessary to find general jurisdiction. *Id*. at 418-419.

Swift is organized under the laws fo the state of Alabama and has its principal place of business in Alabama. *See*, Exhibit 1. Swift has no facilities in Louisiana, is not authorized to do business in Louisiana, and has no offices, real property, or telephone listings in Louisiana. *Id*. Moreover, Swift has no employees in Louisiana, recruits no employees in Louisiana, does not make any unsolicited mailings to Louisiana, does not advertise in Louisiana, and has no contracts that are performed in Louisiana. *Id*.

In the last five years, Swift products (not drywall) have been transported to Louisiana only four times. *Id*. In all instances, said products were transported to Louisiana by independent carriers. *Id*. Such interaction is far less than the contacts noted by the Supreme Court in *Helicopteros*. In fact, when referring to the purchase of helicopters

made by Helicopteros in Texas, the Supreme Court held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros*, 466 U.S. at 418. Because none of the Swift products that were transported to Louisiana were drywall, Swift's sales of these products are not related to the cause of action asserted by the Plaintiffs.

Plaintiffs' Petition is thus devoid of any proof that Swift has continuous and systematic contacts with Louisiana as required for a finding of general jurisdiction. Consequently, because Swift has no continuous contacts with Louisiana, an exercise of general jurisdiction over Swift offends the Due Process Clause.

Furthermore, this Court has refused to alter its jurisdictional analysis based on a class certification. *See In Re: Train Derailment Near Amite, Louisiana, on October 12, 2002*; 2004 WL 224573 (E.D. La. 2/3/2004), wherein the plaintiff brought suit against two railroad defendants arising out of a train derailment in Louisiana. *Id.* at *1, asserting individual and class claims. The defendant challenged the Court's jurisdiction. In response to that challenge, the plaintiff asserted that the Motion to Dismiss should be denied or deferred because, "the Court has recently certified a class in this matter changing the procedural paradigm from one of multi-district litigation to a class action." *Id.* at *1. Following the analysis of jurisdiction, the Court concluded, "Finally, this Court is unpersuaded that the certification of a class in this case has any bearing on [the defendant's] motion to dismiss for lack of personal jurisdiction. The personal jurisdiction

-11-

determination depends solely on [the defendant's] conduct in and contacts with the forum state." *Id*. at *3.

## III.  CONCLUSION

In sum, Plaintiffs' Complaint fails to establish that Swift has the necessary minimum contacts with Louisiana in order to render it subject to jurisdiction in Louisiana.  Since Swift has not purposefully availed itself of the privileges of conducting activities within the forum state, Plaintiffs' allegations have no basis for specific or general jurisdiction over Swift. Therefore, Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction.

Respectfully submitted,

Daniel J. Caruso (03941) (T.A.)
Herman J. Hoffmann (06899)
Betty F. Mullin (09818)
Simon Peragine Smith & Redfearn L.L.P.
1100 Poydras Street, 30th Floor
New Orleans, Louisiana 70163-3000
Telephone: (504) 569-2030
Fax: (504) 569-2999

Attorneys for Swift Supply, Inc.

-12-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Memorandum of Law in Supoprt of Defendant's Motion to Dismiss  has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 29 th day of March, 2010.

_____
Betty F. Mullin

N:\DATA\N\45234001\pleadings\dismiss mem.wpd

-13-