# EXHIBIT "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

MID-CONTINENT CASUALTY COMPANY, a
foreign corporation,

      Plaintiff,

vs.

CENTERLINE HOMES CONSTRUCTION, INC., a
Florida Corporation, COMPLETED COMMUNITIES
II, LLC, a Florida Corporation, CENTERLINE
HOMES AT GEORGETOWN, LLC a Florida
Corporation, CENTERLINE HOMES, INC., a Florida
Corporation, UNITED FRAMERS, INC., a Florida
Corporation, OLSCHEWSKI and CHAD PRANDI,
citizens of Florida, et al.

      Defendants.                  /

Case No.:

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Mid-Continent Casualty Company ("MCC"), sues the Defendants, Centerline Homes Construction, Inc. ("CHC"), Centerline Homes at Georgetown, LLC ("CHG"), Centerline Homes, Inc. ("CH"), Completed Communities II, LLC ("Completed Communities") (collectively "Centerline"), United Framers, Inc. ("United Framers"), Krzysztof Olschewski and Chad Prandi, Victor Conte and Luciana Conte, Howard Wong and Rosemarie D. Wong, Darrell Gonzales and Jewel Gonzales, Marlene Bennett, Michael Gallacher and Randal J. Baker, Garry Poulsen and Donna Poulsen, Charles DiFalco and Monica L. DiFalco, Stephanie Steiner, Jean-Sebastian Picotte and Alessandra Cunha, Marc-Andre Boisseau, Larry Fitzgerald and Jessica Fitzgerald, Gary Delgreco, Jr. and Connie Delgreco, Philip R. Stalcup and Nancy B. Stalcup, Richard Perrin and Maria Perrin, Troy Marchese and Dina Marchese, Dominic Giannetti and Lauren Giannetti, Yvrose Meyer and Darly Meyer, Jeffrey Korentur and Lori J. Dahan, Jerrold P. Gultz, Wayne Siegel and Mandy Siegel, Thakur Lallo and Mahendrawattie Lalloo, Kimberly

Case No.:

A. Baron Mandis, Gary Marozi, Frank Gitto and Mark Gitto, Walter Dinneen and Vickie Dinneen, Shirley Mueller, Ronald Quakenbush and Lorraine Quakenbush, Hugh Casey, Donald Ambroise and Arliomey Ambroise, Kenneth Grant and Allison Grant, Carol Albano Suely Auerbach, Judith Braithwaite, Monique Crawrod and Elaine Shand, Janelle James, Vincent Mulligan and Virginia Mulligan, Marvin Reid, Alexander Popov and Susan Popov, Peter Teixeira and Janet Teixeira, Edmondo Catalfamo and Laura Portanova, Gianpaolo Ciancimino and Danielle Ciancimimo, Davidson Raymond and Jean Raymond, Roxane Bonheur, Nick Morakis and Karen Morakis, Mohammed Manzur and Kamrun Manzur, Louise M. Forte, Mark Bowes and Alison Bowes, Carl Abbott and Adele Abbott, Morton Brown and Ruth Brown and Alexandr Cherba and Yelena Cherba (collectively the "Homeowners") for declaratory relief and alleges:

## NATURE OF ACTION

1. This is an action for declaratory relief pursuant to 28 U.S.C. §2201 and 2202 for the purposes of determining an actual controversy between the parties as to the scope of MCC's duty to defend and indemnify under its contracts of insurance with Centerline and United Framers.

## JURISDICTION AND VENUE

2. Jurisdiction in this Court is proper, pursuant to 28 U.S.C. §1332(a), since the amount in controversy exceeds $75,000, exclusive of interest and costs, and this civil action is between citizens of different states.

3. Venue is proper in the United States District Court for the Southern District of Florida, Broward Division, because one or more defendants reside here, the events or omissions

2

Case No.:

giving rise to the claims set forth below occurred here, the insurance contracts were issued and delivered here, and one or more of the projects are located here.

4. All conditions precedent to the institution of this action have occurred, been performed or have been waived.

## THE PARTIES

5. The Plaintiff, MCC, is an Ohio Corporation with its principle place of business in Tulsa, Oklahoma.

6. The Defendant, CH, is a Florida corporation with its place of business in Coral Springs, Florida.

7. The Defendant, HHC, is a Florida corporation with its place of business in Coral Springs, Florida.

8. The Defendant, CHG, is a Florida corporation with its place of business in Coral Springs, Florida.

9. The Defendant, Completed Communities, is a Florida corporation with its place of business in Coral Springs, Florida.[1]

10. The Defendant, United Framers, is a Florida corporation with its place of business in Parkland, Florida.

11. The Defendants, Krzysztof Olschewski and Chad Prandi, are citizens of the state of Florida residing in Boynton Beach, Florida.

12. The Defendants, Victor and Luciana Conte, are citizens of the state of Florida residing in Boynton Beach, Florida.

---

[1] Completed Communities is the successor entity by merger of the Centerline Homes at B&A, LLC, Centerline Homes at Tradition, LLC, and Centerline Port St. Lucie, Ltd.

3

Case No.:

13. The Defendants, Howard and Rosemarie D. Wong, are citizens of the state of Florida residing in Boynton Beach, Florida.

14. The Defendants, Darrell and Jewel Gonzales, are citizens of the state of Florida residing in Boynton Beach, Florida.

15. The Defendant, Marlene Bennett, is a citizen of the state of Florida residing in Boynton Beach, Florida.

16. The Defendants, Michael Gallacher and Randal J. Baker, are citizens of the state of Florida residing in Boynton Beach, Florida.

17. The Defendants, Garry and Donna Poulsen, are citizens of the state of Florida residing in Boynton Beach, Florida.

18. The Defendants, Charles and Monica L. DiFalco, are citizens of the state of Florida residing in Boynton Beach, Florida.

19. The Defendant, Stephanie Steiner, is a citizen of the state of Florida residing in Boynton Beach, Florida.

20. The Defendants, Jean-Sebastian Picotte and Alessandra Cunha, are citizens of the state of Florida residing in Boynton Beach, Florida.

21. The Defendant, Marc-Andre Boisseau, is a citizen of the state of Florida residing in Boynton Beach, Florida.

22. The Defendants, Larry and Jessica Fitzgerald, are citizens of the state of Florida residing in Boynton Beach, Florida.

23. The Defendants, Gary and Corrnie Delgreco, are citizens of the state of Florida residing in Boynton Beach, Florida.

Case No.:

24. The Defendants, Philip and Nancy Stalcup, are citizens of the state of Florida residing in Boynton Beach, Florida.

25. The Defendants, Richard and Maria Perrin, are citizens of the state of Florida residing in Boynton Beach, Florida.

26. The Defendants, Troy and Dina Marchese, are citizens of the state of Florida residing in Boynton Beach, Florida.

27. The Defendants, Dominic and Lauren Giannetti, are citizens of the state of Florida residing in Boynton Beach, Florida.

28. The Defendants, Yvrose and Darly Meyer, are citizens of the state of Florida residing in Boynton Beach, Florida.

29. The Defendants, Jeffrey Korentur and Lori J. Dahan, are citizens of the state of Florida residing in Boynton Beach, Florida.

30. The Defendant, Jerrold P. Gultz, is a citizens of the state of Florida residing in Boynton Beach, Florida.

31. The Defendants, Wayne and Mandy Siegel, are citizens of the state of Florida residing in Boynton Beach, Florida.

32. The Defendants, Thakur and Mahendrawattie Lalloo, are citizens of the state of Florida residing in Boynton Beach, Florida.

33. The Defendant, Kimberly A. Baron Mandis, is a citizen of the state of Florida residing in Boynton Beach, Florida.

34. The Defendant, Gary Marozi, is a citizen of the state of Florida residing in Port St. Lucie, Florida.

14470430v1 908840 56475

Case No.:

35. The Defendants, Frank and Mark Gitto, are citizens of the state of Florida residing in Boynton Beach, Florida.

36. The Defendants, Walter and Vickie Dinneen, are citizens of the state of Florida residing in Port St. Lucie, Florida.

37. The Defendant, Shirley Mueller, is a citizen of the state of Florida residing in Port St. Lucie, Florida.

38. The Defendants, Ronald and Lorraine Quakenbush, are citizens of the state of Florida residing in Port St. Lucie, Florida.

39. The Defendant, Hugh Casey, is a citizen of the state of Florida residing in Port St. Lucie, Florida.

40. The Defendants, Donald and Arliomey Ambroise, are citizens of the state of Florida residing in Lauderhill, Florida.

41. The Defendants, Kenneth and Allison Grant, are citizens of the state of Florida residing in Port St. Lucie, Florida.

42. The Defendant, Carol Albano, is a citizen of the state of Florida residing in Lauderhill, Florida.

43. The Defendant, Suely Auerbach, is a citizen of the state of Florida residing in Lauderhill, Florida.

44. The Defendant, Judith Braithwaite, is a citizen of the state of Florida residing in Lauderhill, Florida.

45. The Defendants, Monique Crawrod and Elaine Shand, are citizens of the state of Florida residing in Lauderhill, Florida.

14470430v1 908840 56475

46. The Defendant, Janelle James, is a citizen of the state of Florida residing in Lauderhill, Florida.

47. The Defendants, Vincent and Virginia Mulligan, are citizens of the state of Florida residing in Lauderhill, Florida.

48. The Defendants, Marvin Reid, is a citizen of the state of Florida residing in Lauderhill, Florida.

49. The Defendants, Alexander and Susan Popov, are citizens of the state of Florida residing in Boynton Beach, Florida.

50. The Defendants, Peter and Janet Teixeira, are citizens of the state of Florida residing in Boynton Beach, Florida.

51. The Defendants, Edmondo Catalfamo and Laura Portanova, are citizens of the state of Florida residing in Boynton Beach, Florida.

52. The Defendants, Gianpaolo and Danielle Ciancimimo, are citizens of the state of Florida residing in , Florida.

53. The Defendants, Davidson and Jean Raymond, are citizens of the state of Florida residing in Boynton Beach, Florida.

54. The Defendant, Roxane Bonheur, is a citizens of the state of Florida residing in Boynton Beach, Florida.

55. The Defendants, Nick and Karen Morakis, are citizens of the state of Florida residing in Boynton Beach, Florida.

56. The Defendants, Mohammed and Kamrun Manzur, are citizens of the state of Florida residing in Boynton Beach, Florida.

7

Case No.:

57. The Defendants, Louise M. Forte, is a citizen of the state of Florida residing in Boynton Beach, Florida.

58. The Defendants, Mark and Alison Bowes, are citizens of the state of Florida residing in Boynton Beach, Florida.

59. The Defendants, Carl and Adele Abbott, are citizens of the state of Florida residing in Port St. Lucie, Florida.

60. The Defendants, Morton and Ruth Brown, are citizens of the state of Florida residing in Port St. Lucie, Florida.

61. The Defendants, Alexandr and Yelena Cherba, are citizens of the state of Florida residing in Boynton Beach, Florida.

## FACTUAL ALLEGATIONS

62. Upon information an belief, Centerline contracted with subcontractors to install drywall on projects located in Broward, Palm Beach, and Saint Lucie Counties, Florida (the "Projects").[2]

63. One of the subcontractors was United Framers who allegedly supplied and/or installed Chinese Drywall in the Homeowners' homes.

64. Centerline is a developer that builds homes and residential communities and then sells the homes to prospective buyers/homeowners.

65. The Projects include, among other things, single and multi-family homes such as townhouses and condominiums and were primarily built between May 2005 and May 2007.

66. After the Projects were completed and/or put to their intended use, Centerline began to receive complaints from homeowners regarding alleged property damage and/or bodily

---

[2] MCC does not have copies of the subcontracts between the subcontractors and Centerline, but copies will be obtained during discovery, if they exist.

14470430v1 908840 56475

Case No.:

injury occurring as a result of the Chinese Drywall in homes that one or more of the Centerline entities sold to the Homeowners.

67. The Homeowners sued Centerline in multiple lawsuits. ("Underlying Actions"). A copy of an Appendix referencing each lawsuit and corresponding copies of the lawsuits are attached as Exhibit "A" and Composite Exhibit "B."

68. The Homeowners seek damages allegedly caused by Centerline's and/or United Framers' defective work/defective product. These damages include the cost to remove and replace the defective work/defective product, the removal and replacement of all of the drywall, the replacement of other property such as air-conditioning and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliance, and other metal surfaces and household items. They also seek the repair or replacement of any materials contaminated or corroded by the drywall and economic damages such as diminution of the value of the home.

69. In addition, the Underlying Actions also seek equitable relief by way of injunctive, medical and environmental monitoring.

70. The Homeowners also seek in the Underlying Actions, the costs of moving while the home is being repaired, the cost of renting a comparable home while the repairs are taking place, loss of use of enjoyment, and loss of use of value of the home due to stigma.

71. Finally, the Homeowners' allege personal injury and negative health effects.

72. Upon information and belief, Centerline has not sued the subcontractors. However, Centerline has requested MCC as its insurer and the insurer of United Framers to defend and indemnify it as a result of the Homeowners' claims.

Case No.:

73. The Homeowners and United Framers are proper parties as their rights may be affected by this Court's declaration.

## POLICY PROVISIONS

74. MCC entered into contracts of insurance with Centerline and United Framers (the "Policies"). The Policies include:

### The Centerline Policies

***Primary:***
Policy No. 04-GL-000568052, from 9/08/04 to 9/08/05, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (multi-family);

Policy No. 04-GL-000572650, from 9/08/04 to 9/08/05, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (single-family);

Policy No. 04-GL-000603021, from 9/08/05 to 9/08/06, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (multi-family);

Policy No. 04-GL-000603065, from 9/08/05 to 9/08/06, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (single-family);

Policy No. 04-GL-000645709, from 9/08/06 to 9/08/07, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (single-family) (the "Centerline Primary Policies");

***Excess:***
Policy No. 04-XS-137856, from 12/08/04 to 9/08/05, with limits of $3,000,000 aggregate and $10,000 SIR each occurrence;

Policy No. 04-XS-140631, from 9/08/05 to 9/08/06, with limits of $3,000,000 aggregate and $10,000 SIR each occurrence;

Policy No. 04-XS-145904, from 9/08/06 to 9/08/07, with limits of $3,000,000 aggregate and $10,000 SIR each occurrence (the "Centerline Excess Policies");

### The United Framers Policy

Policy No. 04-GL-000656133, from 8/21/06 to 8/21/07, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (the "United Framers Policy");

\* \* \*

Copies of the Policies are attached as Composite Exhibit "C."

Case No.:

## *PRIMARY POLICIES*

75.   Both the Centerline and United Framers Primary Policies contain the following pertinent insuring agreement:

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1)   The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

   (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   b.   This insurance applies to "bodily injury" and "property damage" only if:

   (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;

   (2)   The "bodily injury" or "property damage" occurs during the policy period; and

   (3)   Prior to the policy period, no insured listed under Paragraph 1. of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property

11

Case No.:

> damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

76.   Both the Centerline and United Framers Primary Policies contain the following pertinent exclusions:

**2.   Exclusions**

> This insurance does not apply to:

\* \* \*

> **a.   Expected or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion dose not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> **b.   Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1)   That the insured would have in the absence of the contract or agreement; or
>
> (2)   Assumed in a contract or agreement that is an "insured contract", provided the 'bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>
> (a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>
> (b)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

14470430v1 908840 56475

Case No.:

    **f.**    **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(2) Any loss, cost, or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants", or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

                                               \* \* \*

    **k.**    **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

13

Case No.:

\*\*\*

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency. inadequacy or dangerous condition in it.

\*\*\*

77. Both the Centerline and United Framers Primary Policies include the following pertinent definitions:

**SECTION V-- DEFINITIONS**

\* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

14

Case No.:

\* \* \*

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b. Your fulfilling the terms of the contract or agreement.

\*\*\*

15. "Pollutants" mean any solid, liquid, gaseous or vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed.

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

14470430v1 908840 56475