UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: Sean and Beth Payton, et al. v. Knauf Gips, KG, et al., Case No. 2:09-cv-07628. _____/ | MAG. JUDGE WILKINSON |

**DEFENDANT, MEADOWS OF ESTERO'S, MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFFS' OMNIBUS CLASS ACTION (I) COMPLAINT</u>**

Defendant, Meadows of Estero-Bonita Springs Limited Partnership ("Meadows"), by and through its undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, has contemporaneously filed a motion to dismiss certain claims asserted against Meadows by Brigid Soldavini-Clapper ("Soldavini") in the Payton Omnibus Class Action (I) Complaint ("Complaint"). Meadows submits the following Memorandum of Law in Support of its Motion to Dismiss:

**I. Background.**

Meadows developed the Meadows of Estero Condominiums in Naples, Florida ("Project"). Complaint, ¶ 2361. On or about August 10, 2005, Soldavini and/or her affiliated

1

entity, That's Right Baby, LLC, entered into a written contract ("Contract") with Meadows to purchase a condominium unit within the Project ("Unit").1  A copy of the relevant portions of the Contract is attached hereto as Exhibit "1."2  The Complaint accurately alleges that certain units in the Project were constructed with suspected Chinese Drywall.  *Id*.

Soldavini, as one of the many Class Action Plaintiffs in the Payton Omnibus (I) Action, has asserted claims against Meadows in the Complaint for: I) Negligence, II) Negligence Per Se, III) Strict Liability, IV) Breach of Express and/or Implied Warranties, V) Breach of the Implied Warranty of Fitness and Merchantability Pursuant to Florida Statutes, Section 718.203, VI) Breach of the Implied Warranty of Habitability, VII) Breach of Contract, XI) Private Nuisance, XII) Negligent Discharge of a Corrosive Substance, XIII) Unjust Enrichment, XIV) Violation of Consumer Protection Acts, and XV) Equitable and Injunctive Relief and Medical Monitoring.  The Complaint does not include any specific factual allegations relating to Soldavini's claims against Meadows.  As more fully set forth below, the Court should dismiss Counts I, II, III, IV, V, VI, VII, XI, XII, XIII, XIV, and XV which Soldavini asserted against Meadows in the Complaint.3

**II.  Applicable Law.**

In a multidistrict litigation matter, the court must apply the choice of law rules of the transferor court and should apply the substantive law that would have been applied by the transferor court.  *In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation*, 517 F. Supp. 2d 832, 839 (E.D. La. 2007); *In re Masonite Corp. Hardboard Siding Products Liability Litigation*, 21 F. Supp. 2d 593 (E.D. La. 1998).  When

---

[1] Soldavini and/or her affiliated entity may have purchased multiple units within the Project.  The Complaint does not identify the specific unit(s) that is the basis for her claims.
[2] Soldavini failed to attach to the Complaint her contract to purchase the Unit.
[3] To the extent any response is required with respect to the remaining claims asserted by Soldavini or others against Meadows, such claims are denied in their entirety.

determining questions of state law, the transferee court must apply the state law applicable to the individual case had there not been a transfer for purposes of consolidation. *In re Temporomandibular Joint Implants Products Liability Litigation*, 97 F. 3d 1050, 1055 (8th Cir. 1996).

It is important to note that Soldavini's claims were not transferred to the MDL proceeding because she did not file a federal court action against Meadows in another jurisdiction. Soldavini's claims against Meadows originated as part of the Payton Omnibus (I) Action.[4] Nonetheless, the Court should still apply Florida law because, to the extent Soldavini was entitled to file a federal action against Meadows, she should have initially filed the action in a Florida District Court. Furthermore, Florida's substantive law should apply to all claims Soldavini asserted against Meadows because the Project is located in Florida, Soldavini's Unit is located in Florida, and Soldavini purchased the Unit in Florida.

**III.  Legal Standard Applicable to A Motion to Dismiss.**

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint is subject to dismissal if it fails to state a claim. To state a valid claim, a complaint must factually allege each element of the claim for which relief is sought. *See Russell v. Sherwin-Williams Co.*, 767 So.2d 592, 593 (Fla. 4th DCA 2000); *Todd v. Johnson*, 965 So.2d 255, 256-57 (Fla. 1st DCA 2007); *Chaires v. North Florida Nat. Bank*, 432 So.2d 183, 184 (Fla. 1st DCA 1983). In ruling on a motion to dismiss, the court must determine if a party has sufficiently pled the facts supporting the elements necessary to state a valid cause of action. *Id*. When allegations in a complaint are wholly conclusory and fail to set forth facts which, if provided, would warrant relief for the Plaintiff, dismissal is appropriate.

---

[4] Meadows objects to Soldavini's initial filing of her claims in the MDL proceeding to the extent it was procedurally improper to do so and reserves the right to assert any applicable defenses relating to Soldavini's initial filing in the MDL.

*American Ass'n of People with Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1280 (M.D. Fla. 2002).

**IV. Arguments in Support of Motion to Dismiss.**

    **A. Florida's Economic Loss Rule Bars All of Soldavini's Tort Claims Against Meadows For Economic Damages.**

        **1. The Contractual Privity Economic Loss Rule Applies Because the Parties Have A Contract Relating to Soldavini's Purchase of the Unit.**

In 2004, in *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, the Florida Supreme Court clarified the circumstances in which Florida's Economic Loss Rule bars tort claims seeking economic damages. *Indemnity Insurance*, 891 So.2d 532 (Fla. 2004). The Court held that the Economic Loss Rule bars tort claims to recover solely economic damages where the parties are in contractual privity or the defendant is a manufacturer or distributor of a product and no established exception to the application of the rule applies. *Id. at* 534. "Economic damages" are disappointed economic expectations, including "damages for inadequate value, costs of repair, and replacement of the defective product." *Id*. at 536, fn. 1.

The Court stated that the "Contractual Privity Economic Loss Rule" prevents parties to a contract from "circumventing the allocation of losses set forth in the contract by bringing an action for economic losses in tort." *Id*. at 536. The Court explained that the rule is based upon the assumption that parties to a contract have allocated the risks of nonperformance through the bargaining process. A party to a contract who asserts a tort claim seeking economic damages is generally seeking to obtain a better bargain than was originally made. The Court stated that when parties are in privity, "contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, <u>or could have</u>, addressed through their contractual agreement." *Id*. at 536-37 (emphasis added).

4

In *Indemnity Insurance*, the Court analyzed multiple Florida court opinions that applied the Economic Loss Rule and "reiterated" that "when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." The Court's ruling in *Indemnity Insurance* clearly reflects that the Economic Loss Rule bars tort claims for economic damages between parties who are in privity unless there is a breach of duty or an injury distinct from the breach of contract.

The Economic Loss Rule described by the Supreme Court in *Indemnity Insurance* applies to tort claims seeking to recover for damage to houses. *See Casa Clara Condominium Ass'n. v. Charley Toppino and Sons, Inc.,* 620 So.2d 1244 (Fla. 1993). In *Casa Clara*, several homeowners asserted a negligence claim (among other claims) against a concrete company that supplied concrete used to construct their homes. Defects in the concrete caused it to crack and break off the homes. The trial court dismissed the homeowners' negligence claim, and the Third District Court of Appeal affirmed the trial court's decision based upon the application of the Economic Loss Rule.

The Supreme Court affirmed the district court's opinion and held that the Economic Loss Rule applies to home purchases. The Court held that "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." *Id*. at 1247 (*citing East River Steamship Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858, 870 (1986)).

In its decision, the Court also analyzed whether the individual homes or the concrete was the "product" purchased by the homeowners and stated:

> The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes

> themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of loss, one must look to the product purchased by the plaintiff, not the product sold by defendant. *King v. Hilton-Davis*, 855 F.2d 1047 (3d. Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These <u>homeowners bought finished products-dwellings-not the individual components of those dwellings.</u> They bargained for the finished products, not their various components. The property became an integral part of the finished product and, thus, did not injure "other" property.

*Id*. at 1247-1248 (emphasis added).

In *Fishman v Boldt*, 666 So.2d 273 (Fla. 4th DCA 1996), Florida's Fourth District Court of Appeal held that the Economic Loss Rule barred a tort claim seeking damages caused by a home's exterior components. In *Fishman*, the purchasers of a home brought a negligent construction action against the builder of a seawall which failed and caused damages to the adjoining home, pool, and patio. The builder asserted that the Economic Loss Rule barred the purchaser's negligent construction claim. The trial court entered summary judgment for the builder based on the *Casa Clara* opinion. The Fourth District affirmed the trial court's order and stated:

> In the instant case, the "product" purchased by the appellants was the home with all of its component parts, including the seawall, pool, and patio. Therefore, the pool, patio, and home were not "other property" which would exclude the application of the economic loss rule.

*Id.* at 274.

The *Indemnity Insurance*, *Casa Clara*, and *Fishman* decisions establish that the Economic Loss Rule limits tort claims between parties in privity and also applies to home purchase transactions. Furthermore, these cases establish that the product purchased by a home buyer is the home itself, not the home's components. The Court must apply these principles to

6

evaluate whether Soldavini's tort claims against Meadows are barred by the Economic Loss Rule.

### 2. In Response to Motions To Dismiss Filed by Chinese Drywall Manufacturers and Distributors, the Court Evaluated How the Economic Loss Rule Applies to the Payton Plaintiffs' Claims for Economic Damages.

In the instant MDL proceeding, the Court has already ruled on two Motions to Dismiss filed by drywall Distributors and Manufacturers which asserted that the Economic Loss Rule barred certain economic damages claims alleged by the Payton Plaintiffs. Order and Reasons, MDL Doc. 704 (hereinafter "Order and Reasons"). The Court also considered the Homebuilder Steering Committee's Response to the Distributor Defendants' Motion to Dismiss. MDL Doc. 381. The Court held that the Economic Loss Rule does not bar the Plaintiffs' economic damage claims against the Distributors and Manufacturers. Although the Court did not decide whether the Economic Loss Rule bars the Plaintiffs' tort claims for economic damages against the Homebuilder Defendants in the Payton Action, the Court stated:

> In their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity ELR established by the Florida Supreme Court in *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004). The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contract breach, and in other limited circumstances. *Id*. at 536-37. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs. This issue is not presently before the Court and thus it declines to draw any further conclusions with regard to Plaintiffs' claims against Homebuilders.

MDL Doc. 704 at p. 30.

Meadows respectfully requests that the Court now determine whether Florida's Economic Loss Rule bars the Plaintiffs' tort claims against Homebuilder Defendants, such as Meadows, for

7

economic damages. As the Court alluded to in its Order and Reasons, the Homebuilders for the most part sold completed structures to the Plaintiffs (not components) and they are in privity with the Plaintiffs. Thus, the Court's analysis of how the Economic Loss Rule applies to tort claims against Homebuilders differs from the analysis of how the rule applies to tort claims against the Manufacturers and Distributors. The Court should follow the line of reasoning in the above excerpt from its Order and Reasons and should hold that the Contractual Privity Economic Loss Rule bars Plaintiffs' tort claims against Homebuilders for economic damages.

### 3. The Contractual Privity Economic Loss Rule Bars Soldavini's Tort Claims Against Meadows in the Instant Case.

Since Soldavini and Meadows entered into a written contract relating to the purchase of the Unit, the Contractual Privity Economic Loss Rule prevents Soldavini from asserting tort claims against Meadows to recover economic damages unless she alleged some personal injury or damage to separate property that would qualify as an exception to the Economic Loss Rule. Soldavini did not make any allegations in the Complaint which would qualify as exceptions to the Economic Loss Rule. In fact, the Complaint does not include any specific allegations of fact relating to Soldavini's purchase of the Unit or any actions or conduct by Meadows.

There is no allegation in the Complaint that Soldavini suffered any specific personal injury. Instead, the Complaint alleges generally that the numerous Plaintiffs "have incurred damages and/or personal injuries" without identifying which Plaintiff (if any) suffered personal injury. Moreover, Soldavini does not identify any specific property damage she suffered. Soldavini purchased the completed Unit from Meadows, not component parts of a condominium. Thus, as in *Casa Clara*, the completed home is the "product" for purposes of the Court's Economic Loss Rule analysis, and there is no allegation that Soldavini suffered any damages to property other than the Unit.

Since no exception to the Economic Loss Rule applies, Soldavini's tort claims against Meadows should be dismissed because the allegedly wrongful conduct underlying Soldavini's claims is indistinguishable from the facts that support her breach of contract claim. *See Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So.2d 490, 494 (Fla. 3d DCA 1994) ("where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort"); *Weimar v. Yacht Club Point Estates, Inc.*, 223 So.2d 100, 103 (Fla. 4th DCA 1969) ("no cause of action in tort can arise from a breach of a duty existing by virtue of contract"); *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So.2d 518, 519 (Fla. 3d. DCA 1986) ("breach of contract, alone, cannot constitute a cause of action in tort . . . [and] [i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence").

Soldavini's tort claims are set forth in Counts I (Negligence), II (Negligence Per Se), III (Strict Liability), XI (Private Nuisance) and XII (Negligent Discharge of a Corrosive Substance). In each of these tort claims, Soldavini seeks to recover only economic damages from Meadows, and therefore, the Court should dismiss all such claims pursuant to the Contractual Privity Economic Loss Rule.

### B. Soldavini's Breach of Implied Warranty Claims Should be Dismissed Because Meadows Disclaimed Such Implied Warranties in the Parties' Contract.

The Complaint asserts claims against all of the named defendants, including Meadows, for "Breach of Express and/or Implied Warranties" (Count IV) and Breach of the Implied Warranties of Habitability (Count VI). Count IV improperly combines causes of action for express and implied warranties such that the claim being asserted by Soldavini against Meadows is unclear and should be dismissed. Furthermore, neither of the implied warranty claims include any factual allegations regarding the creation of any implied warranties relating to the Unit or

9

how such warranties were allegedly breached by Meadows.  Since the claims do not specify what warranties exist or how such alleged warranties were breached, both counts should be dismissed.

Soldavini's Count IV and VI claims against Meadows should also be dismissed because Meadows effectively disclaimed all non-statutory implied warranties in Section 5 of the Standard Terms and Conditions of the Contract which states:

> Seller makes no express warranty with respect to the Unit or the condominium property, and Seller's only warranty obligation will be the implied warranty contained in Section 718.203, Florida Statutes, as same exists as of the date of closing.  Seller's sole liability in the event of any defect which is covered by the implied warranty will be to correct or replace same as Seller deems appropriate in Seller's sole discretion.  Any other implied warranties, including but not limited to, implied warranties of fitness for a particular purpose, merchantability, or that the Unit or the Condominium Property will be constructed in accordance with the plans and specifications on file with any governmental authority are hereby excluded.  Notwithstanding the foregoing, Seller will give Buyer at closing or within a reasonable time thereafter all warranties received by Seller from the manufacturers of any new appliances, equipment or fixtures in the Unit.  In no event will Seller be liable for any consequential damages including, but not limited to, inability to possess the unit, inconvenience, loss of time, personal injury, or damage to any improvements Buyer makes in the Unit, or to Buyer's personal property, due to any defects.  Seller's warranty does not include any defect or damage that has or could have been caused, in whole or in part, by Buyer or by anyone other than Seller and Seller's agents and contractors, or by ordinary wear and tear or misuse, or by an accident or casualty, or by the elements, and in any event Seller's warranty is conditioned upon routine maintenance being performed unless such maintenance is an obligation of Seller or the Condominium Association while under Seller's control.

Moreover, the following provision contained in an Addendum to the Contract further disclaimed any implied warranties for the Unit:[5]

> PURCHASER UNDERSTANDS AND AGREES THAT THE LIMITED WARRANTY SHALL BE THE SOLE AND EXCLUSIVE WARRANTY GIVEN TO PURCHASER IN CONNECTION WITH THE UNIT AND THE CONDOMINIUM, AND, EXCEPT AS SET FORTH IN THE LIMITED WARRANTY, THIS SALE IS "AS IS" AND "WHERE IS."  DEVELOPER HEREBY EXCLUDES AND DISCLAIMS (AND PURCHASER HEREBY ACKNOWLEDGES AND ACCEPTS SUCH EXCLUSION AND DISCLAIMER) ANY AND ALL REPRESENTATIONS OR WARRANTIES OF

---

[5] The Addendum is attached hereto as Exhibit "2."

10

ANY KIND RELATING IN ANY MANNER TO THE UNIT, THE COMMON ELEMENTS, THE CONDOMINIUM AND THE PROPERTY, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THOSE OF WORKMANLIKE CONSTRUCTION, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY, DESIGN, CONDITION, QUALITY OR OTHERWISE. PURCHASER WAIVES AND COVENANTS NOT TO ASSERT ANY CLAIM FOR ANY EXPRESS OR IMPLIED WARANTIES, OTHER THAN AS EXPRESSLY PERMITTED UNDER THE LIMITED WARRANTY, AND THEN, AND ONLY THEN, IN ACCORDANCE WITH THE STRICT LIMITATIONS OF THE TERMS AND PROVISIONS OF SUCH LIMITED WARRANTY. PURCHASER WAIVES, COVENANTS AND HEREBY AGREES TO SAVE AND HOLD HARMLESS DEVELOPER FROM AND AGAINST ANY AND ALL CLAIMS ASSERTED OR BASED UPON ANY EXPRESS OR IMPLIED WARRANTY, INCLUDING, BUT NOT LIMITED TO, THOSE OF WORKMANLIKE CONSTRUCTION, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY, DESIGN, CONDITION, QUALITY OR OTHERWISE RELATING TO THE UNIT, THE PROPERTY, THE COMMON ELEMENTS AND THE CONDOMINIUM. IT IS EXPRESSLY AGREED AND UNDERSTOOD THAT THE TERMS HEREOF SHALL BE DEEMED EXCULPATORY AND SHALL SERVE AS A FULL AND COMPLETE BAR AND RELEASE OF ANY CLAIM AGAINST DEVELOPER, PURCHASER, FOR HIMSELF, HIS HEIRS, SUCCESSORS AND ASSIGNS HEREBY AGREES, COVENANTS, AND ACKNOWLEDGES THAT PURCHASER'S SOLE AND ONLY REMEDY FOR ANY CLAIM RELATING TO THE UNIT, THE COMMON ELEMENTS, THE CONDOMINIUM AND THE PROPERTY SHALL BE THOSE CONTAINED WITHIN THE TERMS AND PROVISIONS OF THE LIMITED WARRANTY. AS TO ANY PERSONAL PROPERTY AND AS TO ANY CONSUMER PRODUCT (AS THAT TERM MAY BE DEFINED UNDER APPLICABLE FEDERAL, STATE OR LOCAL LAWS OR THEIR IMPLEMENTING REGULATIONS) WHICH MAY BE A PART OF OR LOCATED IN THE UNIT OR THE CONDOMINIUM (INCLUDING, WITHOUT LIMITATION, APPLIANCES, UTILITY SYSTEMS [INCLUDING AIR CONDITIONING AND HEATING SYSTEMS] AND ANY PERSONAL PROPERTY OR FIXTURES WITHIN THE UNIT AND THE CONDOMINIUM), DEVELOPER NEITHER MAKES NOT ADOPTS ANY WARRANTY WHATSOEVER AND SPECIFICALLY EXCLUDES EXPRESS OR IMPLIED WARRANTIES OF ANY NATURE, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THESE TERMS AND PROVISIONS OF THIS AGREEMENT SHALL BE DEEMED TO BE EXPANSIVE AND SHALL NOT BE DEEMED TO BE READ AS WORDS OF LIMITATION AND SHALL BE DEEMED TO INCLUDE ALL CLAIMS FOR NEGLIGENCE, STATUTORY VIOLATIONS, CLAIMS ARISING UNDER STATE CONSUMER PROTECTION LAWS, OR OTHER LAWS RELATING TO CONSTRUCTION DEFECTS, CLAIMS RELATING TO THE ENVIRONMENTAL CONDITION

>OF THE CONDOMINIUM OR THE UNIT, CLAIMS RELATING TO THE COMPLIANCE OF THE CONDOMINIUM, THE UNIT AND THE COMMON ELEMENTS WITH FEDERAL, STATE, LOCAL LAWS, STATUTES, ORDINANCES, RULES AND REGULATIONS AFFECTING THE UNIT OR THE CONDOMINIUM, CLAIMS RELATING TOANY REPRESENTATION BY ANY PARTY, WHETHER WRITTEN OR VERBAL, EXPRESS OR IMPLIED, REGARDING THE CONDOMINIUM, THE UNIT, OR THE COMMON ELEMENTS AND ANY EQUIVALENT CLAIM.  IT IS EXPRESSLY AGREED AND UNDERSTOOD THAT PURCHASER'S SOLE AND ONLY REMEDY OR REMEDIES SHALL BE THAT CONTAINED WITHIN THE LIMITED WARRANTY.  PURCHASER INTENDS THAT THIS ADDENDUM SHALL BIND ANY PERSON OR ENTITY, INCLUDING, BUT NOT LMITED TO ANY ASSOCIATION, WHICH SEEKS THE BENEFIT OF THIS AGREEMENT OR SEEKS TO ENFORCE PURCHASER'S RIGHTS. THIS SECTION SURVIVES CLOSING (AND SHALL NOT MERGE WITH TITLE), TERMINATION OR EXPIRATION OF THIS AGREEMENT.

Section 5 of the Contract and the Addendum provision absolutely preclude Soldavini's breach of implied warranty claims in Counts IV and VI.  A detailed agreement relative to items covered by warranty and those that are excluded is enforceable.  *See McGuire v. Ryland Group, Inc.*, 497 F. Supp. 2d 1356 (M.D. Fla. 2007)(upholding disclaimer of implied warranties); *see also Saunders Leasing System, Inc. v. Gulf Central Distribution Center,* 513 So.2d 1303 (Fla. 2d DCA 1987).  An implied warranty claim is subject to dismissal when implied warranties are disclaimed in the contract.  *See generally, Belle Plaza Condominium Ass'n, Inc. v. B.C.E. Development, Inc.*, 543 So.2d 239, 240-41 (Fla. 3d DCA 1989).  Pursuant to Meadows' disclaimers of implied warranties, Counts IV and VI should be dismissed with prejudice because Soldavini cannot amend her pleadings to assert any viable cause of action for breach of any implied warranties.

Counts IV and VI should also be dismissed because a breach of implied warranty of fitness for an intended purpose, by definition, requires that the purported defective product, here the drywall, fail its intended purpose.  This Court has already ruled in its Order and Reasons that

the subject drywall does not fail its intended purpose. The Court stated that "[t]he Chinese drywall in the instant matter is operating as intended – as an interior wall and/or ceiling, a room divider, a shell for insulation and wiring, and a base for hanging various items, such as lighting fixtures and decorative items." MDL Doc. 704 at p. 18-19. "It is not crumbling, deteriorating or failing to serve its intended purpose." *Id.*

### C. Soldavini's Breach of Implied Condominium Warranty Claim Should be Dismissed Because It Does Not Allege Any Underlying Facts.

Count V of the Complaint for Breach of Implied Warranty asserts a claim pursuant to Chapter 718, Fla. Stat. (the Florida Condominium Act). However, Count V simply contains a laundry list of each of the warranties provided under the Florida Condominium Act without identifying which statutory warranty allegedly applies, why it applies to Soldavini's Unit, and how it was allegedly breached.

A party must state its claims with sufficient specificity to allow a defense to be prepared. *Viterra Energy Services, Inc. v. Gateway GP Sawgrass Mills, Inc.*, 858 So.2d 1208, 1209 (Fla. 4th DCA 2003). In cases involving warranty claims under Section 718.203, at a minimum, a plaintiff should allege the specific warranty provision that is applicable and how such warranty was breached. Since Soldavini did not provide sufficient factual support for her purported Condominium Act claim, the Court should dismiss the claim.

### D. The Complaint Fails to State a Claim for Breach of Contract.

The elements of a breach of contract claim in Florida are: (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach. *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006). Soldavini does not identify any terms of the Contract that were materially breached or any resulting damages. It is not possible to determine what breach of contract claims Soldavini is asserting against Meadows. Since Soldavini failed to

13

properly allege the elements of a breach of contract cause of action, the Court should dismiss Count VII.

### E. The Complaint Fails to State a Claim Under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

The Court should dismiss Soldavini's claim under FDUTPA (Count XIV) because she fails to allege any facts in support of her claim and she clearly seeks damages that are not recoverable under FDUTPA as a matter of law. To state a claim under FDUTPA, a plaintiff must allege the following: (1) a deceptive or unfair trade practice, (ii) causation, and (iii) actual damages. *See e.g., Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006). To allege a proper FDUTPA claim, "a plaintiff must do more than merely allege in a conclusory fashion that a defendant's actions constitute an 'unfair or deceptive act' or that the defendant acted 'wrongfully, unreasonably and unjustly' and for a deceptive and improper purpose." *Infinity Global, LLC v. Resort at Singer Island, Inc.*, 2008 WL 1711535 at *4 (S.D. Fla. 2008) (finding that plaintiff failed to state a claim under FDUTPA).

As the basis for her FDUTPA claim, Soldavini merely alleges that all of the "Defendants" acts and omissions, as well as their failure to use reasonable care, constitute a violation of the provisions of the Consumer Protection Acts of the "Relevant States." Complaint, ¶ 2755. Soldavini does not identify the specific conduct of Meadows that was allegedly deceptive or unfair or how this unidentified conduct constituted an unfair or deceptive act. Instead, Soldavini's allegations are nothing more that bare legal conclusions, which are insufficient to state a claim under FDUTPA. *See Infinity Global, LLC*, 2008 WL 1711535, at *4.

Moreover, even if Soldavini alleged sufficient facts to support a FDUTPA claim, Soldavini fails to allege any damages that are recoverable under FDUTPA. FDUTPA is "intended to protect a consumer from unfair or deceptive acts or practices which diminish the

14

value or worth of the goods or services purchased by the consumer" and authorizes a consumer to recover actual damages for a FDUTPA violation.  *See Urling v. Helms Exterminators, Inc.,* 468 So.2d 451, 454 (Fla. 1st DCA 1985); *see also* Fla. Stat. §501.211(2).  The measure of actual damages is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Urling*, 468 So 2d at 454.

Where a plaintiff has failed to allege a recoverable loss under FDUTPA (i.e., actual damages), the claim is subject to dismissal.  *See Smith v. 2001 South Dixie Highway, Inc.,* 872 So.2d 992, 994 (Fla. 4th DCA 2004) ("we conclude that the trial court was correct in dismissing appellant's complaint [for FDUTPA] because appellant did not allege a recoverable loss under the statute and, therefore, failed to state a cause of action").

In this case, Soldavini does not seek actual damages resulting from a deceptive or unfair trade practice.  Rather, Soldavini seeks only special and consequential damages, including the costs to repair the Unit and replace the other property allegedly damaged by the defective drywall, and diminution in value damages.  Complaint, ¶ 2632.  These damages are not recoverable under FDUTPA.  *See Urling,* 468 So.2d at 454 (denying cost spent repairing damages caused by termites because it "constitutes special or consequential damages which fall outside the statutory concept as defined in Section 501.211, Fla. Stat."); *see also Kia Motors America Corp. v. Butler*, 985 So.2d 1133, 1140 (Fla. 3rd DCA 2008) (noting that under FDUTPA "actual damages" do not include consequential damages, such as repair damages or resale damages); and *Rollins,* 951 So.2d at 869-70 (the recovery afforded under FDUTPA does not include diminution in value or stigma damages).

Moreover, a FDUTPA claimant cannot recover damages to "property other than the property that is the subject of the consumer transaction." *See* Fla. Stat. § 501.212(3); *see also Rollins, Inc. v. Heller*, 454 So.2d 580, 584-85 (Fla. 3rd DCA 1984) (denying recovery for items stolen due to defective burglary alarm system because FDUTPA "only allows recovery of damages related to the property which was the subject of the consumer transaction").

Since Soldavini failed to properly plead a FDUTPA claim and seeks damages that are not recoverable under FDUTPA, the Court should dismiss Soldavini's FDUTPA claim. *Smith*, 872 So.2d at 994.

### F. Soldavini Cannot State A Claim For Unjust Enrichment Because She Has Adequate Remedies At Law.

Soldavini's unjust enrichment claim against Meadows (Count XIII) fails as a matter of law. It is well settled in Florida that "unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. 3d DCA 1987). Claims for unjust enrichment are subject to dismissal when there is no dispute that there is an express contract between the parties. *See Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998); *see also Garcia v. Cosicher*, 504 So.2d 462, 463 at fn. 2 (Fla. 3d DCA 1987)(action based on quantum merit theory failed "in light of express contract between the parties").

Here, Soldavini's claim for unjust enrichment fails because Soldavini has alleged and it is not disputed that an express contract exists between the parties. Moreover, Soldavini has adequate remedies at law and is pursuing those remedies in this case. Soldavini seeks the same relief in her unjust enrichment count as she seeks in the other counts in the Complaint, namely economic damages as a result of the allegedly defective drywall. Since Soldavini has adequate remedies at law, her claim for unjust enrichment fails as a matter of law and should be dismissed.

### G. Soldavini Fails to State a Claim for Equitable And Injunctive Relief and Medical Monitoring.

In Count XV of the Complaint, Soldavini seeks equitable and injunctive relief, including requiring Meadows to "create, fund and support a medical monitoring program." Complaint, ¶ 2761. Medical monitoring is an equitable remedy that is available in only limited circumstances that are not applicable in the instant case. *See generally, Petito v. A.H. Robins Co., Inc.*, 750 So.2d 103, 108 (Fla. 3d DCA 1999); *see also Wyeth, Inc. v. Gottlieb*, 930 So.2d 635 (Fla. 3d DCA 2006). Since Soldavini has an adequate remedy at law, there is no basis for "equitable and injunctive relief."

In addition, Soldavini failed to allege the elements necessary to state a claim for medical monitoring. For instance, Soldavini does not allege that: (1) a monitoring procedure exists that makes the early detection of the alleged disease possible or what the "disease" is, (2) how the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; or (3) why the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. Accordingly, Soldavini's claims against Meadows in Count XV of the Complaint should be dismissed.

## V. Conclusion.

For the reasons set forth herein, the Court should dismiss Counts I, II, III, IV, V, VI, VII, XI, XII, XIII, XIV, and XV which Soldavini asserted against Meadows in the Complaint. To the extent the Soldavini asserts tort claims for personal injury or damage to property other than the Unit, Soldavini should be required to amend the Complaint to specifically plead such damages.

Dated: April 2, 2010.

                                     <u>s/ Adam C. King</u>
                                     JEFFREY M. PASKERT
                                     Florida Bar No. 846041
                                     jpaskert@mpdlegal.com
                                     ADAM C. KING
                                     Florida Bar No. 156892
                                     aking@mpdlegal.com
                                     MILLS PASKERT DIVERS
                                     100 N. Tampa Street, Suite 2010
                                     Tampa, Florida 33602
                                     (813) 229-3500 − Telephone
                                     (813) 229-3502 − Facsimile
                                     *Attorneys for Meadows of Estero-Bonita Springs Limited Partnership*

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on April 2, 2010, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

                                       <u>s/ Adam C. King</u>
                                       Attorney