ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.

## MEADOWS OF ESTERO, A CONDOMINIUM - PURCHASE CONTRACT

AUG 25 2005

This Contract is made between Meadows of Estero Bonita Springs Limited Partnership, a Florida limited partnership, ("SELLER"), whose address is 6363 N.W. 6th Way, Suite 250, Ft. Lauderdale, Fl 33309, and the below-named BUYER, upon the following terms and conditions.

**CONTRACT INFORMATION.**  DATE Aug 10, 2005

BUYER'S Name (as to appear on Deed): THAT'S RIGHT BABY L.L.C.

Marital Status: _____  Phone - Home: _____  Phone - Business: 5914747  Phone - Cell: 5714747  Email: _____

Street Address: 5455 YEAGER RD.  City: NAPLES  State/Zip Code: FL 34109  Social Security No.: 20-3309377

Local address and phone, if different: _____

Unit No. 101, Building No. 41, of Meadows of Estero, a Condominium,  Model FALCON (corner)

Estimated Completion Date TBD, 200__. This is an estimate and is subject to delays pursuant to Paragraph 2.4.

M. LATHAM

Cooperating Broker, if any (see Paragraph 7): PATRICK TAYLOR Amerivest Realty Bonita Springs R. DUNHAM

**PURCHASE PRICE**
- A. Base Price for unit  $ 529,900
- B. Lot Premium  $ 35,000
- C. Corner premium (if applicable)  $ 5,000
- D. Extras, Upgrades and Credits per attached list  $ 4,100
  - TOTAL PURCHASE PRICE  $ 574,000

**PAYMENT TERMS**
- A. Deposit paid upon signing of Contract  $ 56,990
- B. Additional deposit due OPTIONS SCH. A. Aug 25, 05  $ 1,025
- C. Additional deposit due _____  $ —
- D. Balance of purchase price due at closing.  $ 515,985
  - TOTAL PURCHASE PRICE  $ 574,000

IF ANY DEPOSIT IS NOT TIMELY PAID BUYER WILL BE DEEMED IN DEFAULT

The type, thickness, and R-value of the insulation you will install in each part of my Unit is set forth below. Seller will have the right to substitute insulation so long as the R-value is equal to or greater than that set forth. R-values set forth below are supplied by the manufacturer, and Seller will have no liability if the R-value is, in fact, different than that indicated.

| | Type | Thickness | R-Value |
|---|---|---|---|
| Exterior Walls | Foil | | 4.1 |
| Roof | Blown | | 30 |

This Contract includes the Condominium Contract Standard Provisions attached hereto.

**ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.**

Accepted by Seller on _____, 200__  X _____ BUYER

By: _____  BUYER
Authorized Agent

THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER WHICH IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

1. **Agreement To Sell.** Buyer agrees to buy the above-described Unit from Seller upon the terms and conditions set forth herein, which will survive the closing.

2. **Construction.** The following provisions will apply if the construction of the Unit is not substantially complete on the date of this agreement (if the Unit is now completed, Buyer acknowledges Buyer has inspected and approves it, and that Buyer is buying the Unit "As Is" except as indicated on any addendum):

    2.1 **Escrow of Deposits.** All deposits paid by Buyer up to 10% of the total purchase price will be held in escrow with Eric A. Simon, P.A., 6363 N.W. 6th Way, Suite 250, Ft. Lauderdale, Fl 33309, pursuant to the terms of this Contract and the terms of the escrow agreement included in the Condominium Documents. Buyer can obtain a receipt for Buyer's deposits from the Escrow Agent upon request. NOTWITHSTANDING THE FOREGOING, BUYER AGREES THAT SUCH DEPOSITS MAY BE PAID TO AND USED BY SELLER IF SELLER ASSURES THE RETURN OF SUCH DEPOSITS TO BUYER BY A LETTER OF CREDIT PURSUANT TO THE FLORIDA CONDOMINIUM ACT. All payments in excess of 10% of the total purchase price received by Seller prior to completion of construction shall be held in a special escrow account with the Escrow Agent, and Seller may upon written notice to the Escrow Agent withdraw such funds in excess of 10% of the total purchase price when the construction of improvements including Buyer's Unit has begun, and Seller may use such funds in the actual construction and development of the condominium property in which the Unit is located. However, Seller will not use any part of these funds for salaries, commissions, or expenses of salesmen or for advertising purposes. If the construction, furnishing and landscaping of the Unit and the phase of the Condominium in which the Unit is located are substantially complete on the date of this Contract, Buyer agrees the deposits will not be held in escrow but will be paid directly to Seller.

    2.2 **Construction.** Seller agrees to construct the Unit in substantial conformance with Seller's plans and specifications on file in Seller's office which Buyer can inspect upon reasonable notice. Dimensions shown in Seller's plans and in any sales brochures are approximate and may change due to field conditions. Any existing model may contain items or special features which are not included in the purchase, such as furnishings, decorations, window treatments, wallpaper, upgraded lighting fixtures, upgraded landscaping and the like. The total price only includes the construction of the Unit pursuant to Seller's plans and specifications, standard items listed in Seller's sales brochures or a standard feature sheet attached hereto, and items or extras contained in an addendum to this agreement, if any. Seller may make changes to the Unit required by any governmental authority or to conform to any building code, and may make other minor non-material modifications, changes or omissions to the Unit as long as they do not materially affect the floor plan of the Unit or otherwise materially and adversely affect Buyer. With the consent of Buyer which shall not be unreasonably withheld, Seller may substitute materials, equipment, cabinets, fixtures, appliances, and/or floor coverings with items of equal or greater quality, utility, and value. The location of utility outlets, doors, windows, air conditioning components, light fixtures, equipment and fixtures are subject to non-material change. Materials such as brick, wood, wood grain, carpeting, paint, cabinets, cultured marble, tile, mica, and the like, are subject to shading and gradation and may vary from samples, models or color charts, and from piece to piece. Buyer agrees Seller may make changes to the elevation of the buildings required by the applicable governmental authority or the master developer of the community in which the Unit is located.

    2.3 **Selections and Extras.** Buyer will make all color, material, appliance, or other selections for the Unit within 7 days after Seller's request, and if Buyer fails to do so Seller may make the selections for Buyer. If the Unit is partially or fully completed, Buyer accepts all selections which Seller has made. Seller will not be required to make or provide any change, extra or upgrade (collectively a "change") unless Seller agrees to same in writing and Buyer pays Seller's charges for same in full when ordered or as otherwise agreed by Seller. After Buyer's initial selections are made, additional changes or extras requested by Buyer and agreed to by Seller may be subject to administrative, architectural, and delay charges determined by Seller. If Seller omits any change which would not be feasible to install when the omission is discovered, Seller will only have to refund to Buyer the amount paid by Buyer for the item omitted, or Seller's cost if Buyer was not charged separately for such item. If any materials to be installed in the Unit are unavailable when same are ordered or to be installed by Seller, and if such unavailability would delay construction of the Unit, then within 5 days after request by Seller, Buyer will make a substitute selection and pay any increased cost (or receive a credit) if the materials ordered are more (or less) expensive than the original. If any change ordered by Buyer cannot be completed by Seller without delaying the closing and Seller so notifies Buyer when the change is ordered, Buyer agrees to close without such change being completed, and Seller agrees to complete same within a reasonable time after the closing.

    2.4 **Completion.**

        2.4.1 Seller presently estimates the Unit will be completed on or about the estimated completion date set forth on Page 1, but cannot guarantee completion by that date. Seller will not be liable to Buyer if the Unit is completed before or after such date, or for any delays in construction or in obtaining a certificate of occupancy for the Unit, and Seller will not have to make, provide or compensate Buyer for any accommodations or costs as a result of any delay or earlier completion, and same will not permit Buyer to cancel, amend, or diminish any of Buyer's obligations, except as hereafter set forth. From time to time during construction Seller may provide Buyer with estimated time frames for completion, but no such time frames will be binding on Seller until after the certificate of occupancy for the Unit has been issued and a closing date is set by Seller. Buyer will be obligated to close when a certificate of occupancy is issued for the Unit; all cabinets, floor coverings, and plumbing and electric fixtures have been installed (subject to minor corrections that do not materially affect Buyer's ability to reside on the Unit); all systems are working; the landscaping and any pool are substantially complete; and the Unit is reasonably habitable.

        2.4.2 Seller agrees the Unit will be completed within 2 years of the date of this agreement, which date may be extended only by acts recognized as constituting justification for legal impossibility under the laws of the State of Florida. In addition, subject to delays caused by Buyer, acts of god and other matters beyond Seller's control constituting force majeure, if a certificate of occupancy is not issued for the Unit within 11 months after a building permit for the building in which the Unit is located is issued, then Buyer may give Seller written notice that Buyer will elect to terminate this agreement if the certificate of occupancy is not issued within 30 days after such notice is delivered to Seller. If a certificate of occupancy is still not issued within such 30 day period, Buyer may elect to terminate this Contact by written notice to Seller, in which event all monies paid by Buyer shall be returned.

    2.5 **Inspection Prior to Closing and Service.** Prior to closing Buyer will be given the opportunity to inspect the Unit with Seller and make a list of any work which is defective or has not been completed. Seller will complete the items set forth on the list within 30 days after the closing, except for reasons beyond Seller's control. If Buyer fails or refuses to inspect the Unit Seller will not be responsible for any damage, defects or missing items that could have been caused by Buyer. The fact that such work may need to be performed after the closing will not entitle Buyer to delay the closing, reduce the purchase price, or hold back or escrow any funds, provided the Unit is in the condition described above.

    2.6 **Interference with Construction.** Before the closing Buyer may not put any property in the Unit, interfere with the progress of construction or with workmen, or perform any work in the Unit. Seller will not be liable or responsible for any injury, loss or damage resulting from Buyer's violation of this paragraph.

    2.7 **Radon Disclosure.** The following disclosure is required by Florida Statutes, Section 404.056: "RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of Radon that exceed Federal and state guidelines have been found in buildings in Florida. Additional information regarding Radon and Radon testing may be obtained from your county public health unit."

    2.8 **Additional Costs.** If after the date of this agreement Seller determines in its sole discretion that Seller has or will incur any additional or increased costs relating to the Unit due to (i) any new or modified statute, ordinance, building code, or governmental regulation, or any changes in the interpretation or enforcement policies of any governmental authority relating to same; or due to any new or increased fees or charges imposed by any governmental authority or utility company; or due to any increases in labor or materials which are beyond Seller's reasonable control and which are generally applicable in the area where the Unit is located, Seller may notify Buyer of such additional or increased cost, and Buyer agrees to pay for same at the time of closing. However, Buyer may reject any such increases totaling more than 3% of the total purchase price by written notice to Seller within 3 business days after Buyer is notified of a price increase, and in any event prior to the closing, and if Buyer does so Seller will have the right to terminate this contract, in which event Seller shall return all deposits to Buyer and thereafter the parties shall be relieved of all obligations hereunder.





REV 5/18/05 — 2 — BUYER's INITIALS

3. Closing.

3.1 **Date and Place of Closing.** Seller will notify Buyer of the time, place and date of closing, which will be at least 7 days from the date of Seller's notification unless Buyer agrees to appear at an earlier closing date. Seller will have the right to delay the closing if Seller deems it necessary. Buyer will be required to appear at the closing as set by Seller, with any other persons required to execute the closing documents.

3.2 **Title.** At least 10 day prior to closing, at the request of Buyer, Seller's closing agent will provide a title commitment to Buyer, and Seller will provide copies of any title exceptions requested by Buyer. No exception contained in the title commitment will prevent the Unit from being used or occupied for residential purposes, or render title unmarketable. Notwithstanding the foregoing, Buyer acknowledges that title to the Unit may be subject to canal, mineral, oil, or similar reservations, and Buyer agrees to accept title subject to same. At the closing Seller's closing agent will mark-up the commitment to delete all Schedule B-1 requirements, including the requirement of releasing any existing mortgage, and to delete the standard exceptions except for taxes for the year of closing not then due and payable. At the closing Seller will convey title to the Unit by warranty deed, subject only to the following: conditions, restrictions, limitations, reservations, agreements, declarations, dedications and easements of record, and existing zoning, as of the date of the closing; taxes and assessments for the year in which the closing occurs and all subsequent years; and facts that an accurate survey or personal inspection would disclose.

3.3 **Closing Documents and Costs.** At the closing the parties will execute any documents required to effectuate the closing of this agreement and the release of any escrowed deposits to Seller. At the closing, Buyer will pay the following in cash or by cashier's check:

3.3.1 The balance of the total purchase price, as it may be adjusted pursuant to this agreement or any addendum.

3.3.2 At the closing real estate taxes will be appropriately prorated. If the tax bill for the year of closing has not been issued for the lot, such proration will be based upon the prior years taxes if the lot was separately assessed during the prior year, or if not based on Seller's estimate of the taxes. If real estate taxes are prorated prior to the issuance of the actual tax bill, then upon the issuance of the actual tax bill both parties will reprorate taxes if either party so requests, based upon the maximum discount for early payment. "Taxes" as used in this paragraph include any special assessments payable in annual installments and included in the tax bill for the Unit. Buyer will also pay the amount of any interim or municipal service fees for the Unit at the closing.

3.3.3 Any deposits, installation charges, or hook-up fees for utilities for the Unit.

3.3.4 A prorated portion of the then existing periodic assessment of the condominium association and any other applicable homeowners association, and a working capital contribution to such association equal to 2 months' assessments for the Unit.

3.3.5 A closing charge of 2% of the total purchase price (out of which Seller will pay the documentary stamps and recording costs for Buyer's deed, and the cost of a title insurance policy to be issued to Buyer), plus any abstracting or title update charges. If at closing Buyer obtains a first mortgage from Home Banc Mortgage Company to finance Buyer's purchase, the closing charge will be reduced to 1.5%.

3.3.6 If Buyer obtains a mortgage to finance Buyer's purchase, any mortgage loan closing costs or other amounts required by Buyer's lender to be paid at the closing. Buyer acknowledges the closing charge referred to above does not include any mortgage loan closing costs, or the cost of title insurance for Buyer's lender. Seller agrees the title company selected by Seller will provide title insurance to Buyer's lender for the lowest amount permitted by law, and will coordinate the closing of Buyer's mortgage for the sum of $250.00 per mortgage, which shall be paid by Buyer at the closing.

All prorations will be made as of the closing date originally set by Seller, except that if the closing date is extended by Seller, the prorations will be as of the extended closing date. If Buyer delays the closing, Buyer shall pay an amount equal to 18% percent per year calculated on a daily basis on the total purchase price less any deposits received by Seller, from the date Seller originally set for closing to the actual date of closing, however, this will not modify Seller's right to declare Buyer in default if Buyer fails to close on the date set by Seller.

3.4 **Title Insurance.** Within a reasonable time after the closing, Seller will cause a title insurance policy to be issued to Buyer in the amount of the total purchase price. The title insurance policy will be subject to the exceptions set forth above, and all standard exceptions will be deleted.

4. **Default.** If Buyer defaults Buyer understands Seller's damages will be incapable of ascertainment, and Buyer agrees Seller may terminate this agreement and keep Buyer's deposits as liquidated damages, which both parties agree is fair and reasonable compensation to Seller for removing the Unit from the market and having to resell it. If Seller defaults Buyer shall have any remedy available by law or in equity

5. **Warranty.** Seller makes no express warranty with respect to the Unit or the condominium property, and Seller's only warranty obligation will be the implied warranty contained in Section 718.203, Florida Statutes, as same exists as of the date of closing. Seller's sole liability in the event of any defect which is covered by the implied warranty will be to correct or replace same as Seller deems appropriate in Seller's sole discretion. **Any other implied warranties, including but not limited to, implied warranties of fitness for a particular purpose, merchantability, or that the Unit or the Condominium Property will be constructed in accordance with the plans and specifications on file with any governmental authority, are hereby excluded.** Notwithstanding the foregoing, Seller will give Buyer at closing or within a reasonable time thereafter all warranties received by Seller from the manufacturers of any new appliances, equipment or fixtures in the Unit. In no event will Seller be liable for any consequential damages including, but not limited to, inability to possess the unit, inconvenience, loss of time, personal injury, or damage to any improvements Buyer makes in the Unit, or to Buyer's personal property, due to any defects. Seller's warranty does not include any defect or damage that has or could have been caused, in whole or in part, by Buyer or by anyone other than Seller and Seller's agents and contractors, or by ordinary wear and tear or misuse, or by an accident or casualty, or by the elements, and in any event Seller's warranty is conditioned upon routine maintenance being performed unless such maintenance is an obligation of Seller or the Condominium Association while under Seller's control. **FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSTRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU FILE YOUR LAWSUIT YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS THE OPPORTUNITY TOO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW.**

6. Condominium Documents.

6.1 Buyer acknowledges receipt of a prospectus for the Condominium, which includes various documents required by Florida Statutes, Section 718.504 (the "Condominium Documents"). Buyer agrees this Contract is subject to all of the terms, conditions and disclosures set forth in the Condominium Documents. All definitions and terminology used in the Condominium Documents apply to this Contract to the extent applicable. Seller will have the right, in Seller' sole discretion, to modify the Condominium Documents. Seller will send Buyer a copy of all amendments to the Condominium Documents. If any amendment materially alters or modifies the offering in a manner which is adverse to Buyer, Buyer can terminate this Contract by written notice to Seller within 15 days after Seller's notification and upon such termination all deposits shall be refunded to me; otherwise Buyer will be deemed to have accepted the amendment. Buyer agrees any changes required by the Division of Florida Land Sales, Condominiums and Mobile Homes, or required to conform the Condominium Documents to any statute or rule promulgated there under, or any amendments thereto, will be deemed not to be adverse. Buyer specifically authorizes Seller to record all documents required to legally create the Condominium, including the Declaration of Condominium and where applicable any amendment adding any phase of the condominium, without Buyer's joinder.

6.2 Buyer understands that title to the Unit will be subject to the Declaration of Condominium, and may be subject to one or more declarations of covenants and restrictions, or similar declarations, and all exhibits thereto, copies of which are contained in the Condominium Documents. Buyer acknowledges any applicable declaration may contain various use and maintenance restrictions which Buyer will be required to comply with. Pursuant to the Declaration of Condominium, Buyer will be required to be a member of and pay assessments to a condominium association, and Buyer or the condominium association may also be required to be a member of and pay assessments to one or more additional homeowners or property owners associations, and any applicable association will have a lien against the Unit to secure the payment of the assessments. Except as otherwise provided in the Condominium Documents, Buyer agrees that any information Seller has given Buyer

 

regarding the amount of any assessments is merely an estimate, and the actual assessments may be changed at any time to reflect the actual expenses to be incurred by any applicable association. Buyer agrees Seller will have the right to make amendments to any declaration before or after the closing which are required by any lender or governmental authority, or which are otherwise desired by Seller.

7. **Brokers.** Other than any cooperating broker identified on page 1 of this agreement, Buyer promises Buyer has not employed, and will indemnify and hold Seller harmless from the claims of, any real estate broker claiming the right to any fee as a result of having represented Buyer. Buyer understands the person procuring this sale on Seller's behalf is Seller's agent and may be paid by Seller upon completion of the sale.

8. **Miscellaneous.**

   8.1 If after the closing it is determined there is an error or omission in any closing document including any mortgage document, or in the amounts credited or charged to Buyer, the parties agree to forthwith execute any additional or corrective documents and to pay any amount required in order to correct the error.

   8.2 This agreement is binding upon the parties and their respective successors and assigns. However, Buyer may not assign this agreement without Seller's written consent, which if granted will be subject to an assignment fee.

   8.3 This agreement constitutes the entire agreement, and no promises, representations or inducements made by sales persons or otherwise, which are not contained in this agreement are binding on Seller. This agreement may not be amended or modified except by an instrument in writing signed by both parties. Brochures and advertising representations and illustrations constitute general concepts only, and are subject to change and modification at Seller's discretion.

   8.4 Time is of the essence insofar as Buyer's obligations are concerned, including Buyer's obligation to make deposits and to close.

   8.5 Buyer will not record this agreement or any notice or memorandum thereof in any public records, and any recording by Buyer shall be a default.

   8.6 All notices and demands shall be in writing at the parties' addresses as indicated in this agreement, unless a party notifies the other of another address. Notice to Buyer may be given by fax or by email. However, Buyer agrees that any notice to Buyer of a closing or any extension of a closing may be given orally or by any other means provided Buyer actually receives such notice. Seller will not be responsible if Buyer does not receive or pick up any written notice properly sent to Buyer.

   8.7 Buyer acknowledges that Seller has made no representation or warranty as to the manner in which Seller or any other builder or developer may develop any other property.

   8.8 The closing fee set forth in Paragraph 3.3.5 is based upon the present documentary stamp tax rate of $.70 per $100.00 of consideration, and the present minimum rate for title insurance as established by Florida law. If either of such rates are increased or if any additional tax is imposed upon the transfer of title of the Unit, Buyer agrees to pay the increased or additional tax.

   8.9 If 2 or more persons are named herein as Buyer or if any person named herein as Buyer is married, any selections, change orders, modifications, or other actions hereunder taken by, and any notice to, any one person named as Buyer, or any spouse of same whether or not named as a Buyer, will be binding on Buyer.

   8.10 Buyer acknowledges the Condominium located is being developed as a phase condominium. Buyer agrees Seller has no obligation to add any phase to the Condominium. Buyer acknowledge that Seller has made no representation or warranty as to the manner in which Seller or any other builder or developer may develop any phase which is not added to the Condominium, or any other property near the Unit, and that the type, size, location and nature of other units and improvements that may be constructed in the future are subject to change and may be substantially different from the units and improvements presently planned.

   8.11 If Buyer terminates this Contract, Buyer will be liable for any amount charged by the escrow agent in connection with the receipt and disbursement of Buyer's deposits, and the printing costs of the Condominium Documents delivered to Buyer, which will be deducted from Buyer's deposit.

   8.12 If hereafter Buyer informs Seller in writing that Buyer intends to terminate this agreement, or may be unable or unwilling to close, Seller may treat same as an anticipatory breach by Buyer unless Buyer provides assurances reasonably satisfactory to Seller that Buyer has the financial ability to close and will close, and, if required by Seller, pays an additional 10% deposit plus the balance of all extras ordered by Buyer. If Buyer fails to do so within 10 days after written request by Seller, Buyer shall be deemed in default. Furthermore, if the parties become involved in a dispute whereby Buyer attempts to terminate this agreement or fails to close, Seller shall have the absolute right to terminate Buyer's right to purchase the Unit upon written notice to Buyer, and may complete construction of the Unit without installing changes, extras or colors selected by Buyer which in Seller's opinion would adversely affect the marketability of the Unit, and Seller may resell the Unit to another purchaser. If after any such sale it is determined that Seller improperly terminated Buyer's right to purchase the Unit, Seller will be liable for any actual damages incurred by Buyer, excluding consequential damages, but Buyer will have no rights with respect to the Unit. The provisions of this paragraph shall not apply in the event Buyer seeks to terminate this agreement due to a right granted Buyer to do so or due to a bone-fide claim that Seller has materially defaulted hereunder.

   8.13 **Approvals.** If any approval is required of Buyer in connection with the Unit, such approval shall not be unreasonably withheld or delayed, and shall be deemed given if Buyer does not disapprove of the matter by written notice to Seller within 5 working days after such approval is requested in writing. Any disapproval shall state the basis of same, so that Seller will be able to eliminate any valid objections and subsequently obtain Buyer's approval.

   8.14 **Meetings.** If any decision regarding the Unit is required, including but not limited to the preparation or modification of the plans, selections, or changes, Buyer shall meet with Seller regarding same and make the required decision within 5 working days after request by Seller. If Buyer fails to timely meet with Seller or provide any approval, at the option of Seller, Buyer will be in default, or Seller may charge Buyer a delay fee of 12% percent per year calculated on a daily basis on the total purchase price for the period of the delay.

   8.15 The Condominium is subject to the River Ridge Community Development District, and the Units may be subject to assessment by the District.

   8.16 ARBITRATION OF DISPUTES. WITHOUT LIMITING ANY RIGHTS SET FORTH IN OTHER SECTIONS OF THIS AGREEMENT, ANY AND ALL DISPUTES ARISING HEREUNDER, INCLUDING WITHOUT LIMITATION, THOSE DISPUTES CONCERNING DEPOSITS PAID BY PURCHASER, SHALL BE SUBMITTED TO BINDING ARBITRATION AND NOT TO A COURT FOR DETERMINATION. ARBITRATION SHALL COMMENCE AFTER WRITTEN NOTICE IS GIVEN FROM EITHER PARTY TO THE OTHER, SUCH ARBITRATION SHALL BE ACCOMPLISHED EXPEDITIOUSLY IN BROWARD COUNTY AND SHALL BE CONDUCTED IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION (AAAA@). THE ARBITRATION SHALL BE CONDUCTED BY THREE (3) ARBITRATORS, ONE (1) OF WHOM SHALL BE APPOINTED BY SELLER AND ONE (1) OF WHOM SHALL BE APPOINTED BY PURCHASER. THE THIRD (3rd) ARBITRATOR SHALL BE APPOINTED BY THE FIRST TWO (2) ARBITRATORS. THE ARBITRATORS SHALL BE SELECTED FROM A LIST OF ARBITRATORS SUBMITTED BY THE AAA. JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATORS MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. ARBITRATION SHALL NOT COMMENCE UNTIL THE PARTY REQUESTING IT HAS DEPOSITED ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($1,500.00) WITH THE ARBITRATORS AS A RETAINER FOR THE ARBITRATORS= FEES AND COSTS. THE PARTY REQUESTING ARBITRATION SHALL ADVANCE SUCH SUMS AS ARE REQUIRED FROM TIME TO TIME BY THE ARBITRATORS TO PAY THE ARBITRATORS FEES AND COSTS. EACH PARTY SHALL PAY HIS OR HER OWN LEGAL FEES AND COSTS AND ANY OTHER FEES INCURRED IN CONNECTION WITH AN ARBITRATION PROCEEDING WHICH ARISES OUT OF OR RELATES IN ANY WAY TO THIS AGREEMENT; PROVIDED, HOWEVER, THAT THE ARBITRATION PANEL SHALL AWARD THE ARBITRATORS= FEES AND COSTS TO THE PREVAILING PARTY IN ITS ARBITRATION JUDGMENT.

BY SIGNING THIS AGREEMENT, PURCHASER AGREES TO HAVE ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER DOCUMENT SIGNED OR INITIALED IN CONNECTION WITH THIS AGREEMENT OR RELATING TO THE UNIT DETERMINED BY BINDING ARBITRATION AND HEREBY ACKNOWLEDGES GIVING UP ANY RIGHT PURCHASER MAY HAVE POSSESSED TO HAVE DISPUTES LITIGATED IN A COURT TRIAL. If for any reason the foregoing provision is deemed unenforceable, any litigation between the parties arising out of this agreement will be in the County where the Unit is located, and each party waives the right to a jury trial in any litigation.

REV 5/18/05        -4-                    BUYER's INITIALS