UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | : | |
| DRYWALL PRODUCTS LIABILITY | : | |
| LITIGATION | : | MDL No. 2047 |
| | : | |
| | : | JUDGE: FALLON |
| | : | |
| | : | MAG: WILKINSON |
| This Document relates to | : | |
| Silva v. Arch Insurance Co., et al | : | |
| (09-8034) | : | |

## ANSWER TO PETITION FOR DECLARATORY JUDGMENT

COMES NOW, National Surety Corporation ("National Surety") incorrectly referred to as Fireman's Fund Insurance Companies, who for answer to the Petition for Declaratory Judgment aver as follows:

## FIRST DEFENSE

Defendant, National Surety issued an excess liability insurance policy (the Policy) to Interior Exterior Building Supply, L.P. ("Interior Exterior") which follows the form of the primary policy issued to Interior Exterior by the North River Insurance Company ("North River"), and as such National Surety adopts and reiterates as if set forth fully herein all limitations, conditions, and/or exclusions as contained in that policy of insurance issued by North River in additional to all terms, limitations and/or exclusions in the Policy issued by National Surety to Interior Exterior.

## SECOND DEFENSE

Defendant, National Surety, avers that plaintiffs' petition fails to state a cause of action upon which relief can be granted.

## THIRD DEFENSE

Defendant affirmatively alleges that Plaintiffs have failed to properly mitigate their damages as required by Louisiana law.

## FOURTH DEFENSE

Defendant affirmatively alleges that the damages sought by Plaintiffs were caused by the fault of third parties over whom Defendant and/or Interior Exterior had no control or responsibility. As such, Defendant pleads the doctrine of comparative responsibility and third party fault as embodied in Louisiana Civil Code Articles 2323 and 2324.

## FIFTH DEFENSE

Defendant, National Surety, avers that the claims alleged herein are prescribed and/or preempted under the statutes referenced in plaintiff's petitions.

## SIXTH DEFENSE

Defendant, National Surety, avers that damages alleged herein were the result of independent superseding and/or intervening causes for which Defendant is not responsible.

## SEVENTH DEFENSE

Defendant, National Surety, avers that Interior Exteriors is not a manufacturer under the Louisiana Product Liability Act (La R.S. 9:2800.53), and thus Defendant, National Surety, can have no liability under that act.

{L0080694.2}

## EIGHTH DEFENSE

And now, responding to the individual allegations of the Petition, Defendant National Surety states:

### I.

Defendant admits that it is a foreign insurance company and that Plaintiffs have sued it pursuant to the Louisiana Direct Action Statute in its capacity as one of the insurance carriers for Defendant Interior Exterior.  The remaining allegations of Paragraph I are denied for lack of sufficient information to justify a belief herein.

### II.

The allegations of Paragraph II are denied for lack of sufficient information to justify a belief herein.

### III.

The allegations of Paragraph III are denied for lack of sufficient information to justify a belief herein.

### IV.

The allegations of Paragraph IV are denied.

### V.

The allegations of Paragraph V are denied.

### VI.

The allegations of Paragraph VI are denied for lack of sufficient information to justify a belief herein.

VII.

For answer to the allegations of Paragraph VII, Defendant admits that Plaintiffs and other property owners within the State of Louisiana have brought suit against Defendant Interior Exterior Building Supply, LP seeking a variety of damages. Defendant denies any implication that Interior Exterior Building Supply LP is liable to Plaintiffs or other property owners who have brought suit against it.

VIII.

The allegations of Paragraph VIII are denied for lack of sufficient information to justify a belief herein.

IX.

The allegations of Paragraph IX are denied for lack of sufficient information to justify a belief herein.

X.

Defendant believes North River Insurance Company did issue a commercial umbrella policy to Interior Exterior Building Supply, L.P., but state that those policies are the best evidence of their terms, conditions and limitations and speak for themselves.

XI.

For answer to the allegations of Paragraph XI, Defendant denies that it was properly named.  National Surety admits that it issued an excess liability insurance policy to Defendant, Interior Exterior Building Supply, L.P., however, but state that those policies are the best evidence of their terms, conditions and limitations and speak for themselves

XII.

The allegations of Paragraph XII are denied for lack of sufficient information to justify a belief herein.

XIII.

Defendant denies that Plaintiffs are entitled to the declarations they seek in Paragraph XIII.

XIV.

Defendant denies that Plaintiffs are entitled to the declarations they seek in Paragraph XIV.

## NINTH DEFENSE

AND NOW, FURTHER ANSWERING, Defendant National Surety expressly denies that National Surety provides any coverage for the Plaintiffs' various claims that form the subject of this litigation. The claims made by the Plaintiffs do no allege "bodily injury" or "property damage" caused by an "occurrence" that occurred during the policy period(s). Under the policies issued by National Surety, "bodily injury," "property damage," and "occurrence" are defined as follows:

> "Bodily Injury" means bodily injury, sickness, disease, disability, shock mental anguish, mental injury or humiliation sustain by a person, including death resulting from any of these at any time.
>
> "Property Damage" means:
>
> 1.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.      Loss of use of tangible property that is not physically injured.  All such loss of use be deemed to occur at the time of the "Occurrence" that caused it.

For purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

"Occurrence" means:

1.      with respect to "Bodily Injury" or "Property Damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions that results in "Bodily Injury" or "Property Damage" that is not expected or intended by the "Insured".

All damages, or damages and "Covered Pollution Cost or Expense", that arise from continuous or repeated exposure to substantially the same general conditions are considered to arise from one "Occurrence".

Defendant affirmatively alleges that under the policy language quote above, Plaintiffs' claims are not covered under the policies because they do not qualify as "bodily injury" or "property damage" caused by an "occurrence" that occurred during the policy periods. Defendant further affirmatively alleges that under the definition of "occurrence" quoted above, the claims made in this lawsuit may constitute multiple "occurrences."  Defendant affirmatively alleges that there is no coverage under the policies issued by National Surety for any injunctive relief that may be awarded or for any other relief that does not constitute "damages" under applicable law.

## TENTH DEFENSE

Defendant, National Surety expressly denies that National Surety provides any coverage for the Plaintiff's various claims that form the subject of this litigation.

## ELEVENTH DEFENSE

Defendant affirmatively alleges that the applicable "Other Insurance" and "Underlying Insurance" available to Defendant Interior Exterior Building Supply, L.P. has not been exhausted by payment of judgments or settlements and, accordingly, that Defendant National Surety has no present duty to defend or indemnify Defendant Interior Exterior Building Supply, L.P. as a result.

## TWELFTH DEFENSE

Defendant affirmatively alleges that in the event Defendant Interior Exterior Building Supply, L.P. is unable to show that is maintained the underlying insurance required by the National Surety policies, National Surety has no duty to "drop down" or provide primary coverage for the Plaintiffs' claims.

## THIRTEENTH DEFENSE

Additionally, Defendant affirmatively alleges that the policies do not provide coverage for property damage arising out of the insured's product. Specifically, the policies issued by National Surety and/or North River state, in relevant part:

This policy does not apply to:

**E.    DAMAGE TO YOUR PRODUCT**

"Property Damage" to "Your Product" arising out of it or any part of it.

Under certain of the National Surety Corporation policies, "Your Product" is defined as:

1.   any goods or products, other than real property, manufactured sold, handled, distributed or disposed of by:

     (a)   you;

     (b)   others trading under your name; or

     (c)   a person or organization whose business or assets you have acquired; and

2.   containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Further, "Your Product" includes:

1.   warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Product"; and

2.   the providing of or failure to provide warnings or instructions.

"Your Product" does not include vending machines or other property rented to or located for the use of others but not sold.

Under other of the National Surety policies, the definition of "Your Product" is the same, except that the phrase "other than real property" is deleted in subsection 1.

Defendant affirmatively alleges that Plaintiff's claims are excluded from coverage under the Your Product Exclusion set forth above.

## FOURTEENTH DEFENSE

In addition, Defendant affirmatively alleges that the policies do not provide coverage for property damage to impaired property or property not physically injured. Specifically, the policies issued by National Surety and/or North River state, in relevant part:

This policy does not apply to:

**G.     DAMAGE TO IMPAIRED PROPERTY OR PROPERTY NOT PHYSICALLY INJURED**

"Property Damage" to "Impaired Property" or property that has not been physically injured, arising out of:

1.     a defect, deficiency, inadequacy, or dangerous condition in "Your Product" or "Your Work"; or

2.     a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "Your Product" or "Your Work" after it has been put to its intended use.

The National Surety policies define "Impaired Property" as:

[T]angible property, other than "Your Property" or "Your Work", that cannot be used or is less than useful because:

1.     it incorporates "Your Product" or "Your Work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

2.     you have failed to fulfill the terms of a contract or agreement:

if such property can be restored to use by:

1.     the repair, replacement, adjustment or removal of "Your Product" or "Your Work"; or

2.     your fulfilling the terms of the contract or agreement.

The policies define "Your Work" as:

1.     work or operations performed by you or on your behalf; and

2.      materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes:

1.      warranties or representations made at the time with respect to the fitness, quality, durability, performance or use of "Your Work"; and

2.      the providing of or failure to provide warnings or instructions.

Defendant affirmatively alleges that Plaintiffs' claims are excluded from coverage under the Damage to Impaired Property or Property Not Physically Injured Exclusion set forth above.

## FIFTEENTH DEFENSE

Furthermore, Defendant affirmatively alleges that the policies do not provide coverage for damage due to the recall or withdrawal of the insured's work from the market. Specifically, the policies issued by National Surety and/or North River state, in relevant part:

This policy does not apply to:

**H.    RECALL OF PRODUCTS, WORK OR IMPAIRED PROPERTY**

Damages claimed for any loss, cost or expense incurred by your or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.      "Your Product";

2.      "Your Work"; or

3.      "Impaired Property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a

known or suspended defect, deficiency, inadequacy or dangerous condition in it.

Defendant affirmatively alleges that Plaintiffs' claims are excluded from coverage under the Recall of Products, Work or Impaired Property Exclusion set forth above.

## SIXTEENTH DEFENSE

Additionally, Defendant affirmatively alleges that the policies do not provide coverage for damage done by "pollutants." Specifically, certain of the policies issued by National Surety and/or North River state, in relevant part:

This policy does not apply to:

(1)    "Bodily Injury", "Property Damage" or "Personal and Advertising Injury" which would not have occurred in whole or in part but for the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants" at any time.

(2)    Any loss, cost or expense arising out of any:

(a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants"; or

(b)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "Pollutants".

Other of National Surety and/or North River policies state, in relevant part:

This policy does not apply to:

**POLLUTION EXCLUSION APPLICABLE TO OTHER THAN AUTOMOBILE AND MOBILE EQUIPMENT**

1. "Bodily Injury", "Property Damage", "Personal and Advertising Injury", arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants" into or upon the land, atmosphere, watercourse or any body of water:

  a. at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "Insured";

  b. at or from any premises, site or location which is or was at any time used by or for any "Insured" or others for the handling, storage, disposal, processing or treatment of waste;

  c. which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom you may be legally responsible; or

  d. at or from any premises, site or location on which any "Insured" or any contractors subcontractors working on any "Insured's" behalf are performing operations:

   (i) to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of the "Pollutants"; or

   (ii) if the "Pollutants" are brought on or to the premises, site or location in connection with such operations by such "Insured", contractor or subcontractor.

2. Any loss, cost or expense arising out of any:

  a. request, demand, order, or statutory or regulator requirement that any "Insured" or others, test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "Pollutants"; or

  b. "Claim" or "Suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "Pollutants".

{L0080694.2}

However, this paragraph does not apply to liability for damages because of "Property Damage" that the "Insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such "Claim" or "Suit" by on behalf of a governmental authority.

Paragraph 1a. and 1d.ii do not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke or fumes from a "Hostile" Fire [sic]; or a release of "Pollutants" caused by lightning or "Explosion", Paragraph 1a. also does not apply to "Bodily Injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

All of the National Surety policies state:

"Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Defendant affirmative alleges that Plaintiffs' claims are excluded from coverage under the pollution exclusions set forth above.

## SEVENTEENTH DEFENSE

Furthermore, Defendant affirmatively alleges that the policies do not provide coverage for damage caused by "fungi," bacteria, or mold. Specifically, certain of the policies issued by National Surety and/or North River state, in relevant part:

This insurance does not apply to:

a.    "Bodily Injury", "Property Damage" or "Personal and Advertising Injury" which would not have occurred or taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "Fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

     b.      Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "Fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "Fungi" or bacteria that are, are on, or are contained in a good or product intended for consumption.

Defendant affirmatively alleges that Plaintiffs' claims are excluded from coverage under the Fungi and Bacteria and Mold Exclusions set forth above.

## EIGHTEENTH DEFENSE

Additionally, Defendant affirmatively alleges that the policies do not provide coverage for damage caused by chromated copper arsenate. Specifically, certain of the policies issued by National Surety and/or North River state, in relevant part:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of:

1.     the manufacture, sale, distribution, application, use or presence of: (a) Chromated Copper Arsenate; or (b) any product or material which contains Chromated Copper Arsenate; or (c) any product or material to which Chromated Copper Arsenate has been applied by any party, including but not limited to, any manufacturer, processor or distributor of such products or materials.

2.     the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Chromated Copper Arsenate at any time.

3.     any loss, cost or expense arising out of any:

     a.      request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or

        neutralize, or in any way respond to, [sic] assess the effects of Chromated Copper Arsenate; or

    b.    claim or suit by [sic] on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effect of Chromated Copper Aresenate.

Defendant affirmatively alleges that Plaintiffs' claims are excluded from coverage under the Chromated Copper Arsenate Exclusion set forth above.

## NINETEENTH DEFENSE

Defendant affirmatively alleges that the policies do not provide coverage for damage caused by lead. Specifically, certain of the policies issued by National Surety and/or North River state, in relevant part:

This policy does not apply to:

1.    "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" in any way or to any extent arising out of the actual, alleged or threatened exposure to lead or any substance containing lead.

2.    "Economic Loss", "Diminution of Property", "Abatement Costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving lead or any substance containing lead.

3.    Any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any "Claim" or "Suit" arising out of or involving lead or any substance containing lead.

For the purpose of this exclusion, the following additional terms are defined:

"Abatement Costs" mean [sic] any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal, replacement, or treatment.

"Diminution of Property" means the diminishing or lessening in value of property.

"Economic Loss" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

Defendant affirmatively alleges that Plaintiffs' claims are excluded from coverage under the Lead Exclusion set forth above.

## TWENTIETH DEFENSE

Defendant affirmatively alleges that the Policy will not apply until Interior Exterior and/or North River is obligated to pay the full amount of the underlying policy limits referenced in the excess liability insurance policy issued by National Surety to Interior Exterior.

## TWENTY-FIRST DEFENSE

Defendant affirmatively alleges that the Policy issued by National Surety will not apply until Interior Exterior and/or North River is obligated to pay the full amount of the primary policy insurance limits.

## TWENTY-SECOND DEFENSE

Defendant affirmatively alleges that the excess policy does not apply to any liability arising out of any claim or suit by any insured against any other insured pursuant to the cross-suit exclusion contained in the Policy.

{L0080694.2}

## TWENTY-THIRD DEFENSE

Defendant affirmatively alleges that the Policy does not apply fungi or bacteria exclusions which states in relevant part:

### Fungi or Bacteria Exclusion

    A.    The policy does not apply to:

        1.    Any claims or liability arising, in whole or in part, out of, resulting from, caused by, or in any way related to "fungi" or "bacteria"; or

        2.    The cost to test for, monitor, abate, mitigate, remove, dispose of or remediate "fungi" or "bacteria."

        This exclusion applies regardless of any other cause, event, material, product or building component that contributed concurrently or in any sequence to such liability.  However, this exclusion does not apply to "fungi" or "bacteria" that is, is on, or contained in, a good or product intended for human ingestion.

    B.    As used in this exclusion:

        1.    "Bacteria" means any type, kind or form of bacterium.

        2.    "Fungi" is defined to include but is not limited to fungus, mildew, mold or resulting spores and byproducts, including mycotoxins or allergens.

Defendant affirmatively alleges that the plaintiffs' claims are excluded from coverage of the fungi or bacteria exclusion.

## TWENTY-FOURTH DEFENSE

Defendant affirmatively alleges that payments under the Policy are subject to the Excess Insuring Agreement Section I which in relevant parts states:

A.    We will pay on behalf of any **Insured** those sums in excess of all **Underlying insurance** that any **Insured** becomes legally obligated to pay as damages provided that:

    1.    Such damages are insured by all of the policies shown as **Underlying Insurance** in our Schedule of Underlying Insurance; and

    2.    Such damages arise from injury or damage that occurs, or from an offense committed, during our Policy Period; and

    3.    All **Underlying Insurance** has been exhausted by payment of their limits of insurance; and

    4.    If any **Underlying Insurance** does not pay damages, for reasons other than exhaustion or any aggregate limit of insurance, then we shall not pay for such damages.

B.    The terms and conditions of the **First Underlying Insurance** policy in effect at the inception date of this policy apply to this policy unless they are inconsistent with any provision of this policy or relate to any renewal agreement.

C.    The amount we will pay is limited as described in SECTION II.B. and SECTION III – LIMITS OF INSURANCE.

Defendant affirmatively alleges that the plaintiffs' claims are excluded from coverage by the Excess Insuring Agreement as set for herein.

## TWENTY-FIFTH DEFENSE

Defendant affirmatively alleges, to the extent it is ever obligated to pay any expenses, which at all times is denied, those expenses are subject to Section II Subpart B - Payment of Expense in the Policy.

{L0080694.2}

## **TWENTY-SIXTH DEFENSE**

Defendant affirmatively alleges that to the extent that duty to defend is alleged, that defense of any claim and or suit is limited and subject to Section II Subpart A - Defense as stated in the Policy.

## **TWENTY-SEVENTH DEFENSE**

Defendant affirmatively alleges that any and all payments ultimately owed as a result of this claim (which is at all times denied) are subject to the limits of insurance and specifically those provisions in Section III - Limits of Insurance in the Policy which in relevant part provides:

A.  The Limits of Insurance shown in the Declarations and the terms below fix the most we will pay regardless of the number of:

1.  Coverage provided by this policy;

2.  **Insureds;**

3.  Claims made or **Suits** brought; or

4.  Persons or organizations making claims or bringing **Suits.**

B.  **Occurrence Limit** – The "each occurrence" limit shown in our Declarations is the most we will pay under this policy for the sum of damages arising out of any one **Occurrence**.

C.  **Aggregate Limit** – The limit of Insurance shown in our Declarations as "aggregate" is the most we will pay under the policy for the sum of damages.  However, our aggregate Limit of Insurance:

1.  Will not apply when **First Underlying Insurance** does not apply an aggregate limit, provided all other **Underlying Insurance** also does not apply an aggregate limit.

2. Will apply in the same manner as the aggregate limit **First Underlying Insurance** applies, provided all other **Underlying Insurance** also applies an aggregate limit in the same manner as **First Underlying Insurance.**..

D. This insurance applies only in excess of the Underlying Insurance Limits shown in our Declarations.  If the Underlying Insurance Limit shown in our Declarations has been reduced or exhausted by payment of judgments or settlements arising out of **Occurrences**, our policy will apply in excess of such reduced or exhausted limit of insurance.

E. **Policy Period Extensions** – If we extend our Policy Period after this policy is issued, we will consider the additional period as part of the last preceding annual period for purposes of determining the Limits of Insurance.

F. **Same Basis Defense Expenses** – With respect to any claim or **Suit** to which this policy applies and for which we assume charge of the settlement or defense, if the limits of insurance of any **Underlying Insurance** are reduced by defense expenses by the terms of that policy then any defense expense payments we make will reduce our applicable Limits of Insurance in the same manner.

Defendant affirmatively alleges that plaintiffs' claims are subject to the limits of insurance clause as set forth herein.

## <u>TWENTY-EIGHTH DEFENSE</u>

Defendant affirmatively alleges that the Policy does not apply to property damage to real or personal property in the care, custody or control of any Insured including any costs or expenses incurred by the Insured or person or organization for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property as set in Section IV. Subpart C - Exclusions.

## TWENTY-NINTH DEFENSE

Defendant affirmatively alleges that the policy does not provide coverage for damages associated with pollution, as set forth herein in relevant part:

G.   **Pollution**

1.   To any liability arising

a.   Directly;

b.   Indirectly;

c.   In concurrence, or in any sequence with a cause for which coverage may be afforded by this policy;

Out of the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of **Pollutants**.

2.   To any loss, cost or expense arising out of any:

a.   Request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**; or

b.   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing the effects of, **Pollutants.**

It is the intent and effect of this exclusion G. to exclude any or all coverage afforded by this policy for any claim, action, judgment, liability, settlement, defense, or expense in any way arising out of the existence, discharge, dispersal, seepage, migration, release or escape of **Pollutants**.

This exclusion applies:

1.    Whether the existence, discharge, dispersal, seepage, migration, release or escape of **Pollutants:**

        a.    Results from any **Insured's** activities or the activities of others; or

        b.    Is sudden, gradual, accidental, intended, foreseeable, expected, fortuitous, or inevitable; and

2.    Wherever or however the existence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** occurs.

## THIRTIETH DEFENSE

Defendant affirmatively alleges that the excess liability insurance policy will only apply after all underlying insurance have been exhausted by payment of their limits of insurance.

## RESERVATION OF RIGHTS

To the extent permitted by law, Defendant National Surety Corporation reserves its rights to supplement and amend this Answer and to assert additional Affirmative Defenses as future discovery may warrant and require.

WHEREFORE, Defendant National Surety Corporation prays that this answer be deemed good and sufficient, and that after all legal delays and due proceedings, there be judgment herein in favor of said Defendant, rejecting the demands of the Plaintiffs.

AND FOR ALL JUST AND EQUITABLE RELIEF.

Respectfully submitted,

/S/ Gary J. Russo
GARY J. RUSSO (La. Bar #10828)
MEGAN E. DONOHUE (La. Bar #32429)
*Attorneys for Interstate Fire & Casualty Company*
Jones, Walker, Waechter, Poitevent,
   Carrère & Denègre, L.L.P.
Post Office Drawer 3408
Lafayette, LA  70502-3408
Telephone: (337) 262-9000
Facsimile: (337) 262-9001
Email: grusso@joneswalker.com
Email: mdonohue@joneswaker.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *"Answer" of National Surety Corporation* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United states District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 7th day of April, 2010.

/S/ Gary J. Russo
GARY J. RUSSO

{L0080694.2}