# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | MDL NO. 2047 |
| | * | |
| | * | SECTION: "L" |
| | * | |
| | * | |
| This document relates to: | * | JUDGE FALLON |
| | * | |
| *CA No. 10-0052* | * | MAGISTRATE JUDGE WILKINSON |
| (*Bourgeois v. Allstate Indemnity Co., et al*) | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION'S MOTION TO DISMISS

MAY IT PLEASE THE COURT:

Defendant, Louisiana Citizens Property Insurance Corporation ("LCPIC") submits this supplemental memorandum in support of its Rule 12(b)(6) Motion to Dismiss providing additional support to show that LCPIC's policy did not provide coverage for the loss or damages alleged in Plaintiffs' Petition for Damages. LCPIC's Original Memorandum in Support of the instant Motion and Exhibits are incorporated herein by reference. For the reasons set forth in the Original Memorandum and below, Plaintiffs' claims against LCPIC should be dismissed.

## LAW AND ANALYSIS

### II. The LCPIC policy was not in effect on the date the property damage was discovered by Plaintiffs.

The manifestation theory has been applied in numerous property damage cases and is properly applied in this case to determine whether the property damage occurred during the LCPIC policy period. *See Korossy v. Sunrise Homes, Inc.,* 94-473 (La. App. 5 Cir. 3/15/95), 653 So.2d 1215, *writ denied,* 660 So.2d 878 (9/29/95); *Alberti v. Welco Mfg. of Texas,* 560 So.2d 964

(La. App. 4 Cir. 1990), *writ denied,* 565 So.2d 945 (La. 1990); *New Orleans Assets, L.L.C. v. Travelers Prop. Cas. Co.,* 2002 WL 32121257, (E.D. La. 2002) (Feldman, J.); *Liberty Mut. Ins. Co. v. Jotun Paints, Inc.,* 555 F. Supp. 2d 686, 697 (E.D. La. 2008) (Africk, J.) (In a lawsuit arising out of a barge owner's claim that the application of the defendant's coating product damaged barges by accelerating the corrosive process, the court applied the manifestation theory to determine that property damage occurred when said damage to the barges manifested); *St. Paul Fire and Marine Insurance Company v. Valentine,* 95, 0649 (La. App. 1 Cir. 11/9/95), 665 So. 2d 43 (finding that there was no coverage where faulty electrical wiring installed during the policy period caused a fire after the policy expired.)

In *Alberti v. Welco Mfg. of Texas,* plaintiffs filed suit after noticing wall discoloration which was caused by defective sheetrock mud manufactured by the defendant. 560 So.2d at 964. The sheetrock was installed in plaintiffs' home in April 1985 and the plaintiffs noticed the discoloration in late December of 1986. *Id.* at 964. The insurance policy insuring the defendant and at issue in the case expired on December 3, 1986. *Id.* at 965. In determining whether the loss occurred during the policy period, the court found that even if the "chemical reaction" that caused the discoloration began immediately upon placement of the sheetrock mud, the "property damage" as defined by the policy did not occur until the plaintiffs discovered the wall discoloration. *Id.* at 965.

In *Korossy v. Sunrise Homes, Inc.*, plaintiffs - homeowners claimed that excessive uneven settling of foundations due to faulty construction and defective building materials caused damage to their homes. 94-473 at p. 1, 653 So.2d at 1219. Although the damage to the foundations was due to "continuous or repeated exposure to injurious conditions over a course of time," the court applied the manifestation theory because "the effects of the excessive settlement

did not become 'damage' until it was discovered by the homeowners." *Id.,* 94-473 at p. 17, 653 So.2d at 1226.

Applying the foregoing law to the facts and circumstances of this case, no coverage can be afforded under the LCPIC policy because the property damage did not become manifest until it was discovered by the Plaintiffs in 2009, nearly two years after the LCPIC policy expired. (*See* Petition for Damages at ¶ 20; *see also* LCPIC's Original Memorandum in Support of this Motion at p. 3.)  Accordingly, Plaintiffs have failed to state a claim against LCPIC upon which relief may be granted and LCPIC should be dismissed from this suit.

**III.    Alternatively, even if it is determined that the loss occurred within the LCPIC policy period, the damages alleged in Plaintiffs' Petition for Damages are not covered under the LCPIC policy.**

Plaintiffs' are claiming that "complete replacement of the drywall in the entire home" is necessary.  (*See* Petition for Damages at ¶ 21.)  There is no coverage under the LCPIC policy for the cost of removing and replacing the drywall because the policy covers only a "risk of direct physical loss" that is not excluded, and the drywall itself did not sustain a "direct physical loss."

Additionally, Plaintiffs' are also claiming that that the Chinese manufactured drywall "emits odorous gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items."  There is also no coverage for any losses caused by the defects in the drywall and/or the gases it emits because these losses are specifically excluded by four exclusions in the policy for losses caused by:  (1) a latent defect; (2) defective materials; (3) corrosion; and (4) a pollutant, defined to include gaseous contaminants or irritants.  If *any* of these four exclusions are applicable there is no coverage, but *all four* apply here.  *See Terrebonne v. Charamie*, 06-843, p. 7 (La. App. 5 Cir. 2/27/07), 952 So.2d 833, 836.  There is also no coverage for any damage to the contents of the Plaintiffs' home

because the policy covers only losses to personal property that are caused by 16 specified perils, and any claimed damage to the contents was not caused by any of those covered perils.

Finally, there is no coverage for the alleged physical injuries suffered by the plaintiffs and their family as a result of the Chinese manufactured drywall because the policy does not cover bodily injury to an insured.  (*See* LCPIC Exhibit 1 at 16-19 of 22.)

### A. The Cost of Removing And Replacing the Defective Drywall Is Not Covered Because The Defective Drywall Has Not Sustained A "Direct Physical Loss"

The Policy insures "against risk of direct physical loss to property described in Coverages A and B" that is not excluded.  (LCPIC Exhibit 1 at 8 of 22.)  There is no coverage for property that has not experienced a "direct physical loss."  Here, Plaintiffs have not alleged that there was any visible or tangible damage to the Chinese-manufactured drywall installed in their home. (*See* Petition for Damages at ¶¶ 16-28.)  The only reason given for removing and replacing the "defective" drywall is that it "caused and continues to cause physical loss and damage to Plaintiffs in the form of, but not limited to nose bleeds, headaches, [and] respiratory problems."[1] (*Id.* at ¶¶ 17, 19, & 21.)  The drywall itself has not suffered any direct physical loss, as is required in order to potentially trigger coverage under the Policy.

The U.S. Fifth Circuit has concluded under Louisiana law that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state – for example, the car was undamaged before the collision dented the bumper."  *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990).  In *Trinity*, the court considered whether a policy covering "all risks of physical loss or of damage to the subject matter" would cover the cost incurred to correct a shipbuilder's

---

[1] Plaintiffs' first party claims for alleged bodily injury resulting from the drywall are not covered under the LCPIC policy as is more fully explained herein.

faulty workmanship in misaligning two sections of the ship's hull during construction. *Id.* at 267-68. The U.S. Fifth Circuit held that "the parties, by their language 'physical loss or damage', did not intend to cover the cost of repairing faulty initial construction." *Id.* at 272. It explained that coverage would potentially exist for "accidents resulting from defective design or workmanship," if not excluded, "but not the cost of repairing the defect itself." *Id.* at 271.[2]

The reasoning of the U.S. Fifth Circuit in *Trinity Industries* applies in the instant case. Plaintiffs have alleged that the drywall was defective since it was purchased and installed in April 2007. *(See* Petition for Damages at ¶ 18.) As such, the drywall was never in an "initial satisfactory state that was changed by some external event into an unsatisfactory state." Therefore, the cost of removing and replacing the undamaged but defective drywall in the Plaintiffs' Residence is not covered because there was no "direct physical loss."

### B. The Claimed Damage Caused By A Defect In The Drywall Or The Gases Emitted By the Drywall Is Excluded By Several Policy Exclusions

Even if the defective drywall were deemed to have sustained a "direct physical loss," the cost of removing and replacing the defective drywall, as well as any claim for damage to the building, its components or its contents (including air conditioning and refrigeration equipment, copper tubing, electrical and computer wires, and other metallic surfaces or household items), is excluded by four exclusions.

#### 1. Latent Defect Exclusion

All of the Plaintiffs' claimed property damage falls within the "latent defect" exclusion from coverage. *(See* Latent Defect Exclusion set forth in LCPIC's Original Memorandum in

---

[2] Courts in other jurisdictions have reached the same conclusion. *See, e.g., Great Northern Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan. Ass'n,* 793 F. Supp. 259, 261 (D. Or. 1999), *aff'd,* 953 F.2d 1387 (9th Cir. 1992) (holding that there was no "physical loss" to a tenant occupied building containing non-friable asbestos because the building "remained physically intact and undamaged."); *Bethesda Place Ltd. P'ship v. Reliance Ins. Co.,* Civ. No. HAR 91-1719, 1992 U.S. Dist. LEXIS 6522, at *9 (D. Md. Apr. 22, 1992) ("[C]ase law does not support the argument that a design defect in and of itself constitutes physical injury or damage to property from an external cause"); *Wyoming Sawmills, Inc. v. Transportation Ins. Co.,* 578 P.2d 1253, 1256 (Or. 1978); *Whitaker v. Nationwide Mut. Fire Ins. Co.,* 115 F. Supp. 2d 612, 614-15, 617 (E.D. Va. 1999).

Support of the instant Motion at 4; *see also* LCPIC Exhibit 1 at 9 of 22)  Louisiana courts interpreting the term "latent defect" in insurance policies have given the term its plain and ordinary meaning.  For example, the Louisiana Third Circuit has held that a "latent defect" is "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal."  *Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328, 335 (La. App. 3d Cir. 1984) (quoting *Walker v. Travelers Indemnity Co.*, 289 So.2d 864, 870 (La. App. 4th Cir. 1974)); *accord Barbier v. Wade*, 517 So.2d 321, 325 (La. App. 1st Cir. 1987); *Shields v. Penn. Gen. Ins. Co.*, 488 So.2d 1252, 1255 (La. App. 4th Cir. 1986); *Harris v. Bardwell*, 373 So.2d 777, 780 (La. App. 2d Cir. 1979).  In *Nida*, soil movement caused cracking of the foundation and the interior and exterior walls of the insured's house.  *Id.* at 329.  Because the foundation had not been built to withstand ordinary soil movement, the Third Circuit held that the damage was excluded from coverage under a latent defect exclusion.  *Id.* at 335.  The court explained that "the defendant-insurer simply was not a guarantor of the constructor's building performance."  *Id.*

The weight of authority nationwide also supports this interpretation of latent defect. Applying a similar definition of latent defect to facts similar to the case at bar, the Illinois Appellate Court has held that the latent defect exclusion precludes coverage of claims relating to asbestos-containing construction materials.  In *Board of Educ. v. Int'l Ins. Co.*, 684 N.E.2d 978 (Ill. App. 1997), the plaintiff school board sought coverage for the cost of removing paint, ceiling tile, floor tile, insulation and other materials made using asbestos fibers, claiming that these building materials were releasing hazardous substances into the air.  *Id.* at 979-80. Rejecting the school board's arguments for coverage, the court explained that "because the presence of asbestos material in the school buildings is not detectable by the naked eye and is not

apparent to any but the most searching analysis, it is a latent defect subject to the latent defect exclusion." *Id.* at 983.[3]

Here, the damage to the Plaintiffs' Residence plainly constitutes a loss caused by a "latent defect" because the problem with the Chinese-made drywall (*i.e.*, its gas emitting characteristic) is not visible or readily discoverable. Indeed, the Plaintiffs themselves allege that the defect in the drywall was not known to them at the time of purchase or installation and did not become apparent until almost two years thereafter. (*See* Petition for Damages at ¶¶ 17,19, 20.) Because the latent defect in the drywall was the cause of any need to remove and replace the drywall as well as the claimed losses to the air conditioner and refrigerator coils, copper tubing, electrical and computer wiring, and other household items in the Plaintiffs' residence, the Plaintiffs' claim is excluded under the Policy's latent defect exclusion. If there were "direct physical loss" to the drywall itself, it would also be excluded as a loss caused by a "quality in property that causes it to damage or destroy itself," which is separately excluded. (LCPIC Exhibit 1 at 9 of 22.)

### 2.   Faulty Materials Exclusion

The policy exclusion for faulty or defective materials also precludes coverage for the losses that the Plaintiffs have claimed. (*See* Faulty Materials Exclusion set forth in LCPIC's Original Memorandum in Support of the instant Motion at 5; *see also* LCPIC Exhibit 1 at 12 of 22.) The Chinese-made drywall installed in the Plaintiffs' home undoubtedly qualifies as a material that is "faulty" and "defective" within the plain meaning of the terms of the exclusion.

---

[3] *See also, e.g., City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co.*, 190 F. Supp. 2d 663, 688 (D. Vt. 2002), *aff'd* 346 F.3d 70 (2d Cir. 2003) (surveying authority and concluding that "[i]n the ordinary sense of the term, 'latent defect' means a defect that is hidden, or which could not have been discovered by any known or customary test or examination"); *U.S. West v. Aetna Cas. & Sur. Co.*, 117 F.3d 1415 (table), 1997 U.S. App. LEXIS 17747, at *14-15 (4th Cir. 1997) ("[A]s a matter of the literal language of this term, 'latent defects' are only those which are not readily discoverable and integral to the damaged property by reason of *its* design or manufacture or construction.")

Courts across the country have recognized that construction materials are defective in factual scenarios similar to what occurred here.  Courts have applied the defective materials exclusion to preclude coverage for losses caused by the use of construction materials that had been contaminated by exposure to radioactive materials, *Falcon Prods., Inc. v. Ins. Co. of Penn.*, 615 F. Supp. 37,39 (E.D. Mo. 1985), *aff'd* 782 F.2d 779 (8th Cir. 1986), the installation of an improper lining and insulation product, *Tom Harrison Tennis Ctr. Ltd. v. Indoor Courts of Am., Inc.*, No CA2002-03-034, 2002 WL 31859462, at *4 (Ohio App. Dec. 23, 2002),  the use of improperly treated cedar siding and shingles, *Carney v. Assurance Company of America*, Civ. No. 04-3434, 2005 WL 899843 (D. Md. Apr. 19, 2005), *aff'd* 177 F.App'x 282 (4th Cir. 2006) (per curiam), the installation of substandard residential piping, *Rogers v. Unitrim Auto & Home Ins. Co.*, 388 F. Supp. 2d 638 (W.D.N.C. 2005), and the use of lumber infested with dry rot, *Sapiro v. Encompass Ins.*, No. C03-4587, 2003 WL 2496090, at *5 (N.D. Cal. Nov. 2, 2004).

Here, the Plaintiffs' have alleged that, unbeknownst to them, "[t]he drywall was contaminated and *defective* at the time of purchase" and "at the time it was installed in the premises." (*See* Petition for Damages at ¶¶ 17 & 19 (emphasis added); *see also id.* at ¶ 22 (again using the term "defective" in describing the drywall.)  All of the Plaintiffs' claimed losses are the result of the installation of the defective Chinese drywall in their house.  (*See* Petition for Damages at ¶ 26.)  Taking the plaintiffs' allegations as true, there is no dispute that the Chinese-manufactured drywall installed in the Plaintiffs' home is faulty or defective.  Thus, the exclusion for loss caused by defective materials clearly applies to preclude coverage of all damage resulting from the defect in the drywall.

### 3.  Corrosion Exclusion

The Policy also excludes loss caused by corrosion.  (*See* Corrosion Exclusion set forth in LCPIC's Original Memorandum in Support of the instant Motion at 4; *see also* LCPIC Exhibit 1

at 9 of 22.)  The claimed damage to metals and metallic surfaces (including, but not limited to, air conditioning coils, refrigerator coils, copper tubing, electric and computer wiring, household items) falls within the exclusion for loss caused by "corrosion."  Corrosion is, of course, the process by which the surface of a metal or other material wears away or deteriorates.  *See*, *e.g.*, *Reliance Ins. Co. v. Cooper/T. Smith Corp.*, Civ. Nos. 00-0251 & 00-0280, 2001 WL 530438, at *2 n.4 (S.D. Ala. Apr. 24, 2001); *Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.*, 863 F. Supp. 1226, 1235 (D. Nev. 1994).

Similar exclusions have recently been applied to preclude coverage for equipment that rusted as a result of Hurricane Katrina.  In *Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, Civ. Nos. 06-2516 & 06-3184, 2008 U.S. Dist. LEXIS 69972 (E.D. La. Sept. 17, 2008) (Englehardt, J.), roof damage due to Hurricane Katrina left the equipment inside the home exposed to the elements.  Judge Englehardt held that, under an exclusion for "loss or damage caused by or resulting from rust," there was no coverage for rust damage resulting from water infiltration through the damaged roof.  *Id.* at *4-5.  The policy language unambiguously "exclude[d] *all* loss or damage from rust or dampness of atmosphere." *Id.* (emphasis added).[4]

Courts in other jurisdictions similarly have held that corrosion exclusions preclude coverage for losses similar to the Plaintiffs' loss.  The Ohio Court of Appeals enforced a corrosion exclusion where the claimed damage consisted of "discoloration of the stainless steel door hardware, switch plates and copper piping" in rooms where concrete floors had been treated with chemical agents during construction to etch them in preparation for their final sealing. *Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-664, 2005 Ohio App. LEXIS 981 (Ohio Ct. App.

---

[4]  *See also Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, Civ. No. 06-8710, 2008 U.S. Dist. LEXIS 18335, at *8 (E.D. La. March 10, 2008) (Porteous, J.) (policy excluded "loss or damage caused by or resulting from . . . rust, corrosion"; court granted summary judgment to insurer on claim for rust and mold damage, holding that "evidence of rust and mold to Plaintiff's equipment is immaterial, as the Policy expressly excludes rust and mold").

Mar. 8, 2005) (unpub.).   The etching chemicals were improperly diluted by the construction contractor, causing an acid vapor to form and react with metal surfaces in those rooms that were treated.  *Id.* at \*2-3.  The discoloration complained of was the result of a reaction between the acid vapor and the metal surfaces and was excluded under the corrosion exclusion.  *Id.* at \*2-3.[5]

The corrosion exclusion was plainly intended to apply in this case.  The Plaintiffs allege that the Chinese drywall in their home emits "odorous gases that ***cause corrosion*** of air conditioner coils and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items . . . ."  (*See* Petition for Damages at ¶ 20 (emphasis added.))  The losses being claimed by the Plaintiffs clearly include damage caused by corrosion and said damage is excluded.

### 4.  Pollution Exclusion

While the Court need not reach this issue because the three other exclusions plainly apply, the plain language of the pollution exclusion clearly applies in this case.  (*See* Pollution Exclusion Language set forth in LCPIC's Original Memorandum in Support of the instant Motion at 4; *see also* LCPIC Exhibit 1 at 9 of 22).  Plaintiffs' Petition alleges that "the drywall was **contaminated**" and emitted "**odorous**" or "**noxious**" gases.   (*See* Petition for Damages at ¶¶ 17, 19, 20 (emphasis added).) These gases plainly qualify as "pollutants" under the Policy because they are "gaseous . . . irritant[s] or contaminant[s]," as well as "fumes," and they were "discharge[d], dispers[ed] . . . [or] release[d]" from the drywall.  (LCPIC Exhibit 1 at 9 of 22.) Gases that cause corrosion of building components and create noxious odors plainly constitute "gaseous . . . contaminants."  Damage caused by these gases is therefore excluded.  In addition to being contaminants, the gases released by the drywall also constitute "irritants" and "fumes."

---

[5] *See also Heban v. Auto-Owners Ins. Co.*, No. WD-02-064, 2003 WL 21862170, at \*2 (Ohio Ct. App. Aug. 8, 2003) (holding that corrosion exclusion precluded coverage for discoloration of glass panes caused by corrosion from rain water entering between the stacked panes).

Gases that are "noxious" or "odorous" (*see* Petition for Damages at ¶ 20) are clearly irritants—they provoke displeasure and annoyance.[6]

Courts have repeatedly enforced pollution exclusions in the context of first-party property policies as applied to losses similar to the Plaintiffs' loss.  *See, e.g.*, *Great Northern Ins. Co. v. Benjamin Franklin Fed. Sav & Loan Ass'n*, 793 F. Supp. 259 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992) (enforcing pollution exclusion and holding that costs to remove asbestos from insured building are expressly barred from coverage); *Brown v. Am. Motorists Ins. Co.*, 930 F. Supp. 207, 208-209 (E.D. Pa. 1996) (enforcing unambiguous pollution exclusion and holding that alleged damage to house from fumes from sealant that migrated into insured's house was excluded), *aff'd*, 111 F.3d 125 (3d Cir. 1997).

Because the gases emitted from the drywall constitute "pollutants," coverage for the damage they cause is excluded "unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C."  (LCPIC Exhibit 1 at 9 of 22.)  The discharge of gases from the Plaintiffs' drywall was not caused by any of the named perils in Coverage C.[7]  Thus, the Plaintiffs' claim for damage caused by these gases falls squarely within the plain language of the Policy's pollution exclusion.

### C.  There Is No Coverage For The Plaintiffs' Personal Property Losses

In addition to the dwelling damage discussed above, the Plaintiffs' have alleged damage to personal property described as "household items."  (*See* Petition for Damages at *¶* 20)  Under

---

[6] *See Wakefield Pork, Inc. v. RAM Mut. Ins. Co.*, 731 N.W.2d 154, 161 (Minn. App. 2007) (holding that a complaint alleging "harm from the '[g]ases, hydrogen sulfide among others,' and the 'noxious and offensive odors' that emanated from appellant's pig farm . . . alleged damage from a substance that is plainly covered by the insurance policy's pollution exclusion").  The emissions from the drywall also constitute "fumes."

[7] The sixteen perils named in Coverage C are: (1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling objects; (11) weight of ice, snow or sleet; (12) accidental discharge or overflow of water or steam; (13) sudden or accidental tearing apart, cracking, burning or bulging of certain types of building systems; (14) freezing; (15) sudden and accidental damage from artificially generated electrical current; and (16) volcanic eruption.  (Policy, Form HO 00 30 10 00, at 10-11.)

Coverage C, the Policy covers damage to "personal property owned or used by an 'insured' while it is anywhere in the world" if that damage is caused by any of the 16 perils that are named in the Policy.[8]  (*See* LCPIC Exhibit 1 at 3 of 22, 10-11 of 22.)  The Plaintiffs' claim that odorous gas released from the drywall damaged household items does not fall within any of these named perils.  This claim is therefore not covered.  Even if the damage to the Plaintiffs' personal property had been caused by one of the named perils, however, coverage would nevertheless be barred by the faulty or defective materials exclusion, as discussed above, which applies to Coverage C.  (*See id.* at 10-12 of 22.)

> ### D.  Plaintiffs' claims for their own bodily or physical injuries are not covered by the LCPIC policy.

Plaintiffs allege that the "odorous gases" emitted by the Chinese manufactured drywall in their home has caused "physical injuries to Plaintiffs and their families who inhaled such noxious gases."  *See* Petition for Damages at ¶ 20.  Plaintiffs further allege that the "Chinese Drywall which caused and continues to cause physical loss and damage to Plaintiffs in the form of, but not limited to nose bleeds, headaches, respiratory problems necessitating complete replacement of the drywall in the entire home."  *See* Petition for Damages at ¶ 21.  These claims are specifically excluded from coverage by the LCPIC policy, which provides in pertinent part:

**SECTION II – LIABILITY COVERAGES**

**A.     Coverage E – Personal Liability**

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

---

[8] Those named perils are: (1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling objects; (11) weight of ice, snow or sleet; (12) accidental discharge or overflow of water or steam; (13) sudden or accidental tearing apart, cracking, burning or bulging of certain types of building systems; (14) freezing; (15) sudden and accidental damage from artificially generated electrical current; and (16) volcanic eruption.  (*Id.* at 10-11.)

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable.

**B.        Coverage F – Medical Payments to Others**

. . . This coverage does not apply to you or regular residents of your household except "residence employees."

## SECTION II – EXCLUSIONS

**E.        Coverage E – Personal Liability**

Coverage **E** does not apply to:

**6.    "**Bodily injury" to you or an "insured as defined under Definitions **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured":

    a.   To repay; or
    b.   Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured."

## DEFINITIONS

**A.**    In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse of a resident of the same household.

**B. 5.**  "Insured" means:
        a.      You and residents of your household who are:
                (1) Your relatives; or

                (2) Other persons under the age of 21 and in the care of any person named above;

        b.      A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

                (1) 24 and your relative; or

                (2) 21 and in your care or the care of a person described in **a.(1)** above

(LCPIC Exhibit 1, at 16 of 22, 19 of 22, & 1 of 22.)

The policy clearly does not provide coverage for bodily injury to 1) the named insureds, Patricia and Glenn Bourgeois, 2) any relative of Patricia and Glenn Bourgeois residing at 409 Sable Drive, Arabi, LA 70032, or 3) any other "insured" as defined above.  Thus, Plaintiffs' claims for "physical loss and damage" to themselves and "their families" are clearly excluded by the policy and should be dismissed.

## <u>CONCLUSION</u>

For all of the foregoing reasons and the reasons set forth in LCPIC's Original Memorandum in Support of this Motion to Dismiss, LCPIC's Rule 12(b)(6) Motion to Dismiss should be granted in all respects, and the Plaintiffs' claims against Louisiana Citizens Property Insurance Corporation should be dismissed.

Respectfully submitted:

**DYSART & TABARY, L.L.P.**


BY:  *s/Lacey Tabary*
PAUL A. TABARY, III (#12623)
LACEY TABARY (#31982)
#3 Courthouse Square
Chalmette, Louisiana 70043
Telephone: (504) 271-8011
*Counsel for Defendant, Louisiana Citizens Property
Insurance Corporation*


AND

14

**HAILEY, McNAMARA, HALL,**
**LARMAN & PAPALE**

BY:_____
**JOHN T. CULOTTA (#17272)**
**JOSEPH L. SPILMAN, III (#17813)**
**DARREN A. PATIN (#23244)**
One Galleria Boulevard – Suite 1400
Post Office Box 8288
Metairie, LA 70011 – 8288
Telephone: (504) 836-6500
*Counsel for Defendant, Louisiana Citizens Property Insurance Corporation*

## C E R T I F I C A T E OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this **5th** day of **April,** 2010.

*/s/ Lacey Tabary*
Lacey Tabary, #31982
Attorney for Defendant, LCPIC
Dysart & Tabary, LLP
Three Courthouse Square
Chalmette, LA 70043
Telephone: (504) 271-8011