**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

NORTHSTAR HOLDINGS, INC.,
NORTHSTAR HOMES, INC., AND
NORTHSTAR HOLDINGS AT B & A, LLC,

Case No: 2:10-cv-00384

        Plaintiffs,

Judge: Fallon

v.

Magistrate: Wilkinson

GENERAL FIDELITY INSURANCE
COMPANY, QUANTA INDEMNITY
COMPANY, MID-CONTINENT CASUALTY
COMPANY, AXIS SURPLUS INSURANCE,
AND ESSEX INSURANCE COMPANY,

        Defendants.

_____/

## DEFENDANT GENERAL FIDELITY INSURANCE COMPANY'S MOTION TO DISMISS FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE AND MEMORANDUM OF LAW IN SUPPORT

Defendant General Fidelity Insurance Company ("General Fidelity"), by and through

undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(2) and

12(b)(3) and Local Rule for the Eastern District of Louisiana 7.1, moves this Court for the

dismissal of all claims against General Fidelity, or in the alternative, the transfer of all

1

claims against General Fidelity to the Southern District of Florida pursuant to 28 U.S.C. §

1404(a) or 28 U.S.C. § 1406(a). Plaintiffs, Northstar Holdings, Inc., Northstar Homes, Inc.,

and Northstar Holdings at B & A, LLC, ("Northstar"), fail to assert a proper basis for venue

in their Complaint. Northstar also fails to allege a sufficient basis for this Court to assert

personal jurisdiction over General Fidelity. Finally, this action should be transferred to the

Southern District of Florida, where an almost identical case is pending and where Northstar

filed a counterclaim against General Fidelity for declaratory relief. The grounds upon which

this Motion is based and the substantial matters of law are discussed below.[1]

## I.    **Statement of Facts**

On April 3, 2009, Katherine Foster ("Ms. Foster") filed a putative class action lawsuit

in the Southern District of Florida, case number 9:09-cv-80535-JIC ("the underlying

lawsuit"), alleging that her home in Boynton Beach, Florida, was built in 2006 with defective

drywall. Foster Compl., attached as Exhibit A. Ms. Foster sued Northstar Homes, Inc.,

and Northstar Holdings, Inc., along with other defendants, for bodily injuries, property

damage, and other damages she allegedly sustained as a result of the drywall in her

Florida home. Foster Compl. at ¶¶ 1-223. Ms. Foster alleged that her lawsuit is a putative

class action because: (1) she believes that Class Members from her community in Boynton

Beach, Florida, number in at least the thousands; (2) common questions of fact and law

exist as to all members of the Class; (3) her claims are typical of the claims of the Class;

and (4) she is an adequate representative of the Class because she is a member of the

Class and her interests do not conflict with the interests of the Class members she seeks

---

[1]  General Fidelity's Notice of Hearing for this Motion is attached as Exhibit 1.

2

to represent. Foster Compl. at ¶¶ 106-109. In response to the underlying lawsuit, on May 15, 2009, General Fidelity filed a suit for declaratory relief in the Southern District of Florida ("Southern District of Florida coverage case"), seeking a ruling that it owes no duty to defend or indemnify Northstar in the underlying lawsuit. General Fidelity Compl., attached as Exhibit B.

On June 15, 2009, the Multidistrict Litigation Panel ("MDL Panel") issued a transfer order in MDL number 2047 regarding "Chinese-manufactured drywall products liability litigation," thereby transferring nine cases from Florida and Ohio to the Eastern District of Louisiana. MDL Transfer Order, attached as Exhibit C. A tenth case already in the Eastern District of Louisiana was also transferred to the MDL. *Id.* On July 16, 2009, the Southern District of Florida transferred the underlying lawsuit to the Eastern District of Louisiana in compliance with the transfer order. Southern District of Florida Transfer Order, attached as Exhibit D. On September 8, 2009, the MDL Panel entered Conditional Transfer Order (CTO-6), conditionally transferring six "tag-along" actions, including the Southern District of Florida coverage case. CTO-6, attached as Exhibit E. However, on December 2, 2009, the MDL Panel vacated CTO-6 and determined that the Southern District of Florida coverage case should remain in Florida because it "raises distinctly different factual and legal questions from the core allegations at issue in MDL No. 2047, and transfer would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation." Order vacating CTO-6, attached as Exhibit F.

After a stay on the case was vacated, on January 11, 2010, Northstar filed its Answer and Counterclaim for Declaratory Relief in the Southern District of Florida coverage case. Northstar Answer, attached as Exhibit G. On January 29, 2010, General Fidelity

3

filed its Answer and Affirmative Defense to Northstar's Counterclaim.  General Fidelity Answer, attached as Exhibit H.  On February 24, 2010, General Fidelity filed a Motion for Summary Judgment, asking the Court to declare, as a matter of law, that General Fidelity has no duty to defend or indemnify Northstar in the underlying lawsuit.  General Fidelity Motion, attached as Exhibit I.

Despite the MDL Panel already determining the Southern District of Florida case should remain in Florida, on February 11, 2010, Northstar filed a Motion to Transfer with the MDL Panel.  Northstar Motion, attached as Exhibit J.  On March 11, 2010, General Fidelity filed a Response to Northstar's Motion to Transfer, asking the MDL Panel to conclude for a second time that the Southern District of Florida should remain in Florida. General Fidelity Response, attached as Exhibit K.

On February 12 2010, Northstar filed the instant action with this Court.  This Court should dismiss or transfer this case to the Southern District of Florida for the following reasons: (1) Northstar's asserted bases for venue are insufficient; (2) this Court is an improper venue because General Fidelity filed a case with substantially similar issues first in the Southern District of Florida; (3) Northstar has not sufficiently alleged that this Court has general personal jurisdiction over General Fidelity; (4) exercising personal jurisdiction over General Fidelity would violate the "traditional notions of fair play and substantial justice;" and (5) the Southern District of Florida is a more convenient forum.

## II.    **Memorandum of Law**

### A.    **Improper Venue**

In its Complaint, Northstar alleges two bases for venue: (1) 28 U.S.C. § 1391(a)(3)

4

and (2) 28 U.S.C. § 1407. Dismissal is warranted because neither of these bases is proper. Dismissal is also warranted under the first-to-file rule.

Under Federal Rule of Civil Procedure 12(b)(3), a district court may dismiss a complaint for improper venue. The plaintiff has the burden to establish that venue is proper in the chosen district. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Am. Pipe*, 2005 WL 1155858 (E.D. La. 2005) (citing *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619 (5th Cir. 1999)).

1.      Venue is improper under 28 U.S.C. § 1391(a)(3)

Northstar first asserts that venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(a)(3). Section 1391 (titled "Venue generally") provides in relevant part:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) *a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.*

(Emphasis added).

As the statute makes clear, venue is proper under section 1391(a)(3) *only if* there is no other judicial district in which the case may be properly brought. Section 1391(a)(3) is inapplicable in the instant case because this action could have been brought in other districts, including the Southern District of Florida, where a substantially similar action is currently pending. In that action, Northstar filed a counterclaim against General Fidelity seeking declaratory relief. Under section 1391(a)(2), the Southern District of Florida is a proper forum because that is where "a substantial part of property that is the subject of the

5

action is situated." Indeed, this case involves defective drywall in residences located within the Southern District of Florida. Northstar also previously acknowledged that the Southern District of Florida was a proper venue by stating, "Northstar does not contest venue in the United States District Court, for the Southern District of Florida, West Palm Beach Division." Northstar Answer at ¶ 2, attached as Exhibit G.

Because there is another judicial district in which this case could have been brought, venue is not appropriate in this district pursuant to 28 U.S.C. § 1391(a)(3). *See also Timber Source, LLC v. Cahaba Valley Timber Co., Inc.*, No. 06-9239, 2007 WL 891883, *6 (E.D. La. 2007) (finding § 1391(a)(3) inapplicable because the suit could have been brought in an Alabama judicial district).

### 2. Venue is improper under 28 U.S.C. § 1407

Northstar next asserts that the Eastern District of Louisiana is a proper venue under 28 U.S.C. § 1407. However, section 1407 is also unavailable because it involves multidistrict litigation, which is controlled by the judicial panel on multidistrict litigation ("MDL Panel").

Section 1407 (titled "Multidistrict Litigation") provides in relevant part:

(a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers *shall be made by the judicial panel on multidistrict litigation* authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred *shall be remanded by the panel* at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

6

(Emphasis added).

Under the plain language of the statute, venue under section 1407 is determined solely by the MDL Panel. In the instant case, Northstar filed its complaint with this Court. This case does not involve a transfer by the MDL panel to this Court. As a result, section 1407 is not a proper basis to assert venue.[2]

### 3. Dismissal or Transfer under section 1406(a)

As illustrated above, the Eastern District of Louisiana is an improper venue for this proceeding under sections 1391(a)(3) and 1407. When venue is improper, Congress has provided federal courts with a remedy to either dismiss the case or transfer to a proper venue. See 28 U.S.C. § 1406(a). Under section 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Because venue is not proper under sections 1391(a)(3) and 1407, this Court should dismiss the instant action or transfer this case to the Southern District of Florida. See Francis v. E-Z Bus, Inc., No. Civ.A. 05-6905, 2006 WL 901761, *2 (E.D. La. 2006) (granting motion and transferring case to another jurisdiction).

### 4. Dismissal or transfer pursuant to the first-to-file rule

A nearly identical lawsuit was filed in Southern District of Florida approximately nine

---

[2] The MDL Panel has already ruled once that the Southern District of Florida coverage case should remain in Florida. See Order Vacating CTO-6, attached as Exhibit F. Nonetheless, on February 11, 2010, Northstar filed a Motion to Transfer, asking the MDL Panel to, in essence, reconsider its prior ruling. The parties are awaiting the MDL Panel's second ruling on the matter.

7

months before Northstar filed the instant case. Under the first-to-file rule, this Court should dismiss or transfer this case to the Southern District of Florida.

When there are parallel proceedings in two federal district courts, the Fifth Circuit follows the"first-to-file" rule, whereby the court in which an action is first filed has priority. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir.1999) (vacating judgment of second-to-file court and remanding with instructions to transfer); *see also Davis v. Hartford Ins. Co. of Midwest*, No. 09-5852, 2009 WL 3347090, *2 (E.D. La. 2009) (dismissing the second-filed case under the first-to-file rule). Under the first-to-file rule, "a district court may dismiss, stay, or transfer an action where the issues presented can be resolved in an earlier-filed action pending in another federal court." *Davis*, 2009 WL 3347090, *1 (quoting *Burger v. Am. Mar. Officers Union*, Nos. 97-31099, et seq., 1999 WL 46962, at *1 (5th Cir. 1999)). The rule seeks to avoid: (1) the waste of duplication, (2) rulings that may trench upon the authority of sister courts, and (3) piecemeal resolution of issues that call for a uniform result. *Davis*, 2009 WL 3347090, *1

District courts consider two factors when determining whether to apply the first-to-file rule: (1) are the pending actions so duplicative or involve substantially similar issues that one court should decide the issues; and (2) which of the two courts should decide the case? *Murray v. Wilson*, No. 08-2005, 2008 WL 3498226, *2 (E.D. La. 2008) (citing *Excel Music, Inc. v. Simone*, No. 95-3626, 1996 WL 5708, *5 (E.D. La. 1996)). The first question should be answered affirmatively when there is a "substantial overlap" between the two cases. *Murray v. Wilson*, 2008 WL 3498226, *2 . On the second question, deference should be given to the first-filed suit absent "compelling circumstances" such as bad faith,

8

anticipatory litigation, or forum shopping. *Id.* at *3.

The complaint of the first-filed lawsuit in the Southern District of Florida involves substantially similar issues that are raised in the instant case. In the Southern District of Florida coverage case, General Fidelity filed a complaint seeking a declaration that it has no duty to defend or indemnify Northstar for the underlying claims asserted against Northstar. In response, Northstar answered and filed a counterclaim for declaratory relief that General Fidelity has a duty to defend and indemnify Northstar for claims asserted against Northstar.

In the instant case, Northstar filed an almost identical complaint for declaratory relief to the counterclaim it filed in the Southern District of Florida. Northstar also now alleges a second count for breach of contract and adds additional defendants (other insurers) to this matter. Hence, the only difference between the Southern District of Florida coverage case and the instant case is there are more parties brought in by Northstar and Northstar added one additional count. The breach of contract claim and the additional defendants could certainly be added to Northstar's counterclaim in the Southern District of Florida if it so chooses. Notably, the two cases involve the same insurance policy between General Fidelity and Northstar (executed and delivered in Florida), the same defective drywall claims against Northstar, and the same Florida residences. Because there is a "substantial overlap" between the two cases, the first prong of the first-to-file inquiry is met.

The second prong is also met because there are no "compelling circumstances" justifying this Court from not giving deference to the first-filed suit. In contrast, there are "compelling circumstances" for this Court *to dismiss or transfer* this case. Northstar has engaged in forum shopping by filing the instant action for declaratory relief, despite already

9

filing a counterclaim for declaratory relief in the Southern District of Florida. Such actions by litigants are improper and should not be condoned by this Court, as it wastes the precious resources of the federal judiciary, causes unnecessary delay, and needlessly increases the cost of litigation for the parties involved. See Fed. R. Civ. P. 11(b).

Because both prongs of the first-to-file inquiry are met, this Court should dismiss or transfer the instant case to the Southern District of Florida.

**B.    Lack of Personal Jurisdiction**

Based on the allegations in Northstar's Complaint, this Court does not have general personal jurisdiction over General Fidelity. Furthermore, requiring General Fidelity to litigate this case in Louisiana would violate traditional notions of fair play and substantial justice.

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a suit for lack of personal jurisdiction. With regard to personal jurisdiction, " 'the plaintiff bears the burden of establishing the district court's jurisdiction' over a nonresident defendant." Watch Sys. LLC v. Sys. Design Solutions, Inc., No. 09-5821, 2009 WL 5217085, *5 (E.D. La. 2009) (quoting Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 204 (5th Cir. 1996)).

Federal personal jurisdiction over a nonresident defendant may be asserted if: (1) the law of the forum state provides for the assertion of such jurisdiction; and (2) the exercise of jurisdiction under state law comports with the dictates of the Fourteenth Amendment Due Process Clause. PPD Ship, L.L.C. v. Enos, No. Civ.A.03-0976, 2003 WL 22038517, *3 (E.D. La. 2003) (citing Job v. ATR Mktg., Inc., 87 F.3d 751 (5th Cir. 1996)).

Section 13:3201(B), Louisiana Revised Statutes, states that "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." Therefore, the Louisiana Long-Arm Statute provides that Louisiana courts may assert personal jurisdiction to the extent legally permitted under the Due Process Clause. *See also Nuovo Pignone, SPA v. Stroman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (stating Louisiana long-arm statute and Due Process Clause inquiry "merge into one").

The Due Process inquiry has two prongs. First, the nonresident defendant must have "minimum contacts" with the forum State. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Holt Oil & Gas Corp. v.. Harvey*, 801 F.2d 773, 777 (5th Cir.1986). Second, a court's exercise of personal jurisdiction over an out-of-state defendant must not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 107 (1987); *Gulf Consol. Srvs. v. Corinth Pipeworks*, S.A., 898 F.2d 1071, 1073 (5th Cir.1990).

The "minimum contacts" prong may be satisfied through contacts sufficient to assert either specific jurisdiction or general jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994)). Specific jurisdiction over a nonresident corporation is appropriate when the corporation has purposefully directed its activities at the forum State and the "litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Thus, the defendant must purposefully avail itself to the privilege of

11

conducting activities within the forum State, which invokes the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

On the other hand, general jurisdiction is proper where a nonresident defendant's contacts with the forum State, although not related to the plaintiff's cause of action, are "continuous and systematic." *Helicopteros*, 466 U.S. at 415-16. Conduct incident to general personal jurisdiction that may indicate a non-resident defendant's intent to purposefully avail itself to the forum State could include: (1) designing a product specifically for the State's market, (2) advertising in the forum State, (3) establishing channels for providing regular advertising to customers in the forum State, or (4) marketing a product through a distributor who agrees to serve as a sales agent in the forum State. *Asahi Metal*, 480 U.S. at 112.

With respect to the second prong of the due process inquiry, a court must consider the following factors to determine whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice": (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Asahi Metal*, 480 U.S. at 113.

In the instant case, Northstar alleges that General Fidelity has only limited contacts with Louisiana, which is insufficient to establish the "minimum contacts" prong for general jurisdiction. Specifically, Northstar alleges that "General Fidelity is authorized to conduct business in the state of Louisiana and has issued insurance policies in the state of Louisiana, including to individuals and entities located in the eastern district of Louisiana."

12

Northstar Compl. at ¶ 6. These limited contacts may be sufficient for "specific jurisdiction."

However, this Court does not have specific jurisdiction over this case, because Louisiana has no direct interest in the specific cause of action asserted. Indeed, this action does not arise out of an occurrence in Louisiana or property located in Louisiana. Northstar has failed its burden of establishing general jurisdiction because General Fidelity's alleged limited contacts "are not sufficiently systematic and continuous to constitute a general presence" in Louisiana. *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362-63 (5th Cir. 1990) (affirming the dismissal for lack of general jurisdiction because of the small amount of contacts the defendant had with Louisiana).

The second prong of personal jurisdiction also cannot be met because requiring General Fidelity to litigate this case in Louisiana would violate "traditional notions of fair play and substantial justice." First, litigating this case in Louisiana would be unfair to General Fidelity and violate the first-to-file rule because General Fidelity filed an almost identical lawsuit in Florida. General Fidelity would be burdened by having to litigate the same case in two different forums. Next, Northstar's interest in obtaining relief is minimal, as Northstar could obtain the same relief in the Southern District of Florida by amending its counterclaim against General Fidelity *that it already filed* by merely adding additional counts and additional parties. Further, this forum has minimal interest in this case, which involves a Florida plaintiff asking the Court to interpret Florida insurance policies with relation to Florida residences. Moreover, having this Court decide insurance coverage issues for a Florida corporation involving Florida homeowners does not further Louisiana social policies. Finally, it would be most efficient if the Southern District of Florida determines the issues in this case, as a dispositive summary judgment motion on General

Fidelity's duty to defend and indemnify Northstar has already been filed by General Fidelity in that case.[3]  Therefore, allowing Northstar to proceed with this suit and subjecting General Fidelity to this Court's jurisdiction would offend "traditional notions of fair play and substantial justice." *See Todd v. State Farm Lloyds Ins. Co.*, No. Civ. A. 02-1029, 2002 WL 31255415, *4 (E.D. La. 2002) (dismissing for lack of personal jurisdiction because subjecting the nonresident insurance company to jurisdiction was not consistent with traditional notions of fair play).

A dismissal for lack of personal jurisdiction is warranted because Northstar has failed to allege sufficient contacts for general jurisdiction and exercising personal jurisdiction over General Fidelity would violate the "traditional notions of fair play and substantial justice."

## C.   Transfer pursuant to 28 U.S.C § 1404(a)

If this Court determines that Northstar has properly alleged venue and that this Court possesses general personal jurisdiction over General Fidelity, transferring this case to the Southern District of Florida under section 1404(a) would still be prudent.

A motion to transfer to a more convenient forum is governed by 28 U.S.C. § 1404(a), which states, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The purpose of section 1404(a) is to prevent plaintiffs from abusing their privilege under section 1391 by subjecting defendants to venues that are inconvenient. *BLB Aviation South Carolina, LLC v. Jet Linx Aviation Corp.*, No. 09-66-C,

---

[3]   The Southern District has stayed the case until the MDL Panel rules on Northstar's Motion to Transfer.

2010 WL 370342, *3 (M.D. La. Jan. 29, 2010). Northstar has abused its privilege by filing the instant suit.

The Fifth Circuit in *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008), set forth the legal standard that district courts should apply in deciding a motion to transfer. In *In re Volkswagen of America*, the Fifth Circuit stated that "the burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal." *Id.* at 314; *cf. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."). The Fifth Circuit further stated that the moving party bears the burden of showing "good cause," which is satisfied if the transferee venue is "clearly more convenient." *Id.* at 315.

In determining whether the transferee venue is clearly more convenient, courts consider the private and public interest factors articulated in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *In Re Volkswagen*, 545 F.3d at 315. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.* The

15

plaintiff's choice of forum is also a factor to be considered, although it is neither conclusive nor determinative. *Shull v. United Barge Lines*, No. 09-5515, 2010 WL 745006, *5 (E.D. La. Feb. 26, 2010) (citing *In re Horseshoe Entm't.*, 337 F.3d 429, 434-35 (5th Cir. 2003)).

Before weighing the private and public interest factors, this Court should consider how much deference to give to Northstar's choice of forum–the Eastern District of Louisiana. Northstar's choice of forum deserves no deference in this case because Northstar is engaging in improper forum shopping. *See Axa Re-Property and Cas. Ins. Co. v. Tetra Technologies, Inc.*, No. Civ.A. 02-1968, 2002 WL 31738816, *4 (E.D. La. 2002) (citing *Thurmond v. Compaq Computer Corp.*, 1:99 CV 711, 2000 WL 33795090, *7 (E.D. Tex. March, 1 2000)) ("When the plaintiff engages in blatant forum shopping with little or no factual justification for his choice of forum, the Court should closely scrutinize his choice."). Northstar filed this action despite a nearly identical proceeding in the Southern District of Florida filed on May 15, 2009. Furthermore, Northstar–a Florida corporation with little or no contacts with Louisiana–filed this lawsuit despite filing a counterclaim in the Southern District of Florida seeking similar relief (i.e., declaratory relief). While the instant case includes one additional count and additional parties, Northstar is certainly free to amend its counterclaim to add a breach of contract claim and more parties. Because Northstar is engaging in improper forum shopping, Northstar's choice of forum is entitled to no deference.

        1.      Private interest factors weigh in favor of transfer

              a.      The relative ease of access to sources of proof

Most of the relevant records and documents of the parties are located where the parties are located (Northstar - Florida and General Fidelity - North Carolina). Therefore,

if this Court does not dismiss or transfer this case, both parties will be forced to transport

its records and documents to Louisiana.  However, if this case were in Florida, only one

party, General Fidelity, would be required to transport its records and documents to Florida.

General Fidelity filed its declaratory relief action knowing that it would be required to bring

documents to Florida.  This factor therefore weighs in favor of transferring the case to the

Southern District of Florida.

> b.   The availability of compulsory process to secure the attendance of witnesses

Federal Rule of Civil Procedure 45(b)(2) governs the places where a subpoena

issued by a United States district court may be served.  A district court's subpoena power

is subject to Rule 45(c)(3)(A)(ii), which protects nonparty witnesses who work or reside

more than 100 miles from the courthouse. *See In re Volkswagen*, 545 F.3d at 316.  Similar

to the sources of proof, any potential witnesses will likely be located outside of Louisiana.

These possible witnesses who are not parties to this case, such as the potential class

members in the underlying suit, would therefore not be within the subpoena power of a

Louisiana district court.  This factor weighs in favor of transferring to the Southern District

of Florida.

> c.   The cost of attendance for willing witnesses

The Fifth Circuit has established a threshold of 100 miles when giving substantial

weight to this factor. *See In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004).  The

court in *In re Volkswagen* reasoned that "[a]dditional distance means additional travel time;

additional travel time increases the probability for meal and lodging expenses; and

additional travel time with overnight stays increases the time which these fact witnesses

17

must be away from their regular employment." *Id.* Most of the possible witnesses in this case would be in Florida, as this is where the impaired properties are located and where the potential class members of the underlying action reside. As a result, it would be significantly more costly for witnesses to travel to Louisiana rather than the witnesses staying in Florida. This factor weighs in favor of transferring to the Southern District of Florida.

              d.      All other practical problems that make trial of a case easy, expeditious, and inexpensive

A nearly identical lawsuit is currently pending in the Southern District of Florida, where General Fidelity has already filed a dispositive motion for summary judgment. It would therefore be easier, more expeditious, and less expensive for Northstar, General Fidelity, and all other potential insurers to have this case proceed in the Southern District of Florida, rather than confronting the same issues in the Eastern District of Louisiana. As discussed above, Northstar could amend its counterclaim to add claims and parties. This factor weighs in favor of transferring to the Southern District of Florida.

              2.      Public interest factors also weigh in favor of a transfer

                  a.      The local interest in having localized interests decided at home

This case involves insurance policies executed and delivered in Florida to Florida companies. Moreover, the damaged properties giving rise to the current dispute are located in Florida. Louisiana's interest in this matter relates to regulating insurance companies that conduct business in Louisiana. (Florida also has an interest in regulating insurance companies in Florida.) Florida's interest in resolving conflicts arising out of insurance policies issued in Florida, involving Florida corporations and Florida homeowners

outweighs Louisiana's interest in this case.  Thus, this factor weighs in favor of transfer.

        b.    <u>The familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws of the application of foreign law</u>

Although this Court is undoubtedly capable of deciphering Florida law, the Southern

District of Florida would be more familiar with the nuances of Florida law and this Court

would avoid having to apply Florida law by transferring this case.

Federal courts sitting in diversity must apply the choice of law rules of the forum

state in which the court sits.  *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352

F.3d 254, 260 (5th Cir. 2003) (citing *Klason Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,

496 (1941)).  Louisiana conflicts of laws principles are codified in Book IV of the Civil Code.

Civil Code Article 3515 provides:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Civil Code Article 3537, which establishes the approach for selecting the law

applicable to conventional obligations, such as an insurance policy, states:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type and purpose of the contract; and (3) the policies

19

referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

Articles 3515 and 3537 are intended to be read together, the objective being to identify the State, in light of its connections to the parties, and the transaction and its interests implicated in the conflict, would bear the most serious consequences if its law were not applied to the issue at hand. *See* La. Civ. Code Art. 3537, comment (c). Applying these principles, Louisiana courts generally find that the law of the State in which the insurance policy was issued governs the interpretation of the policy's terms. *See* *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999) (citing *Anderson v. Oliver*, 705 So. 2d 301, 305 (La. App. 3d Cir. 1998) and *Holcomb v. Universal Ins. Co.*, 640 So. 2d 718, 722 (La. App. 3d Cir. 1994)); *see also Cleveland Constr., Inc. v. Whitehouse Hotel Ltd. P'ship*, No. 01-2666, 2004 WL 1460047, *2 (E.D. La. 2004) (holding that Ohio law governs the interpretation of a commercial general liability policy issued in Ohio, by an Ohio insurer, to an Ohio insured); *Williams v. Brown's Dairy*, No. 02-2062, 2003 WL 21634951, *2-*3 (E.D. La. 2003) (applying Texas law to a commercial general liability policy issued to a Texas corporation).

This case presents no reason for deviation from the general rule that the interpretation of an insurance policy is governed by the law of the State in which the policy was issued. First, Florida has a significant interest in the interpretation of the insurance policies at issue, which were executed and delivered in Florida, issued to Florida companies, and involves Florida properties. Further, none of the events that give rise to this dispute took place in Louisiana. Finally, Northstar previously admitted that Florida law

20

applies to the interpretation of the insurance policies.  *See* Northstar's Answer at ¶ 10.
Thus, these factors weigh in favor of transfer.

General Fidelity has met its burden of demonstrating that another forum is "clearly
more convenient." As such, this Court should transfer this case to the Southern District of
Florida.

## III.   **Conclusion**

Northstar failed to assert a proper basis for venue and personal jurisdiction over
General Fidelity. This case involves substantially similar issues to a first-filed case in the
Southern District of Florida. It is more convenient for the parties and any potential
witnesses for this case to be in the Southern District of Florida. As a result, this Court
should either dismiss all claims against General Fidelity or transfer such claims to the
Southern District of Florida.

Dated: April 13, 2010

Respectfully submitted,

/s/ R. Steven Rawls
R. STEVEN RAWLS, ESQ.
Florida Bar No.: 938254
srawls@butlerpappas.com
RYAN K HILTON, ESQ.
Florida Bar No.: 0304610
rhilton@butlerpappas.com
ROBERT J. WITMEYER, ESQ.
Florida Bar No.: 10249
rwitmeyer@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
777 S. Harbour Island Boulevard, Suite 500
Tampa, FL 33602
Tel. 813-281-1900
Fax. 813-281-0900
Trial Counsel for General Fidelity Insurance Company

and

ANDREW L. PLAUCHÉ, JR., ESQ.
Louisiana Bar No.: 11023
aplauche@pmpllp.com
PLAUCHÉ MASELLI PARKERSON LLP
701 Poydras Street, Suite 3800
New Orleans, LA 70139-3800
Tel: 504-582-1142
Fax: 504-582-1172

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction, or in the Alternative, Motion to Transfer Venue and Memorandum of Law in Support has been served on Plaintiff's Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 13th day of April, 2010.

/s/ R. Steven Rawls
R. STEVEN RAWLS, ESQ