# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

GENERAL FIDELITY INSURANCE COMPANY,

      Plaintiff,

v.

KATHERINE L. FOSTER, an individual,
NORTHSTAR HOLDINGS, INC., a Florida
Corporation, NORTHSTAR HOMES, INC., A
Florida corporation; and NORTHSTAR
HOLDINGS AT B & A, LLC, a Florida Corporation,

      Defendants.

CASE NO.: 09-cv-80743
JUDGE: K. Michael Moore
MAGISTRATE: Judge Andrea M. Simonton

## ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF

Defendants, NORTHSTAR HOLDINGS, INC., NORTHSTAR HOMES, INC., and

NORTHSTAR. HOLDINGS AT B & A, LLC (collectively, "Northstar"), by and through their

undersigned attorneys, for their Answer to the Complaint filed by Plaintiff, GENERAL

FIDELITY INSURANCE COMPANY ("Plaintiff"), respond as follows:

### Parties, Jurisdiction, Applicable Law and Venue

1.     Admitted.

2.     The allegations set forth in paragraph 2 of the Complaint amount to legal

conclusions to which a response is not required. To the extent that a response is required, Northstar

does not contest venue in the United States District Court, for the Southern District of Florida,

West Palm Beach Division.

3.     Northstar admits that Plaintiff is a corporation organized and existing under the

laws of the State of California. Northstar is without knowledge as to Plaintiff's principal places of

1

business in North Carolina, or as to whether Plaintiff is a citizen of the State of California and North Carolina, and therefore denies same.

4.      Northstar admits that Plaintiff has submitted itself to the jurisdiction and venue of this Court. However, Northstar is without knowledge as to whether Plaintiff was authorized to transact business in the State of Florida at all times material to this action, and therefore denies same.

5.      Northstar is without knowledge as to whether Defendant, KATHERINE FOSTER ("Foster") is an individual domiciled in Palm Beach County, Florida and a citizen of Florida, and therefore denies same. Plaintiff's allegation that Defendant, Foster, is subject to the jurisdiction and venue of this court is a legal conclusion to which a response is not required.

6.      Northstar admits that Defendant, Northstar Holdings, Inc. is a Florida for-profit corporation with its principal place of business in Palm Beach County, Florida. The allegation that Defendant, Northstar Holdings, Inc. is subject to the jurisdiction and venue of this court is a legal conclusion to which no response is required.

7.      Northstar admits that Defendant, Northstar Homes, Inc. is a Florida for-profit corporation with its principal place of business in Palm Beach County, Florida. The allegation that Defendant, Northstar Homes, Inc. is subject to the jurisdiction and venue of this court is a legal conclusion to which no response is required.

8.      Northstar admits that Defendant, Northstar Holdings at B & A, LLC, is a Florida for-profit corporation with its principal place of business in Palm Beach County, Florida. The allegation that Defendant, Northstar Holdings at B & A, LLC is subject to the jurisdiction and venue of this court is a legal conclusion to which no response is required.

9.      The allegations set forth in paragraph 9 of the Complaint amount to legal

2

conclusions to which a response is not required. To the extent that a response is required, Northstar does not contest jurisdiction.

     10.     Admitted.

## Dispute at Issue

     11.     Admitted.

     12.     Admitted that Defendant, Foster, alleges her lawsuit is a punitive class action because 1) she believes the Class Members number in at least thousands; 2) common questions of fact and law exist as to all members of the Class; 3) her claims are typical of the claims of the Class; and 4) she is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the member of the Class she seeks to represent. Northstar however, does not admit the truth of any of the foregoing allegations and otherwise states that the class action complaint filed by Defendant, Foster, speaks for itself.

     13.     Admitted.

     14.     Admitted.

     15.     Admitted.

     16.     Admitted that Defendant, Foster, is suing Defendant, Northstar Homes, Inc. and Northstar Holdings, Inc., and other defendants for bodily injuries, property damage and other damages she allegedly sustained as a result of defective drywall. However, Northstar lacks sufficient information to admit or deny the allegation that the drywall in Defendant, Foster's home was defective. To the extent a response is required to such allegation, Northstar denies the allegation that the drywall in Defendant, Foster's home was defective.

     17.     Northstar admits that Defendant, Foster, alleges that the defective drywall emitted various sulfide gases and/or other chemicals through "off-gasing". However, Northstar lacks

3

sufficient information to admit or deny such allegation.  To the extent a response is required, Northstar denies such allegations.

18.     Northstar admits that Plaintiff has accurately quoted an excerpt of the class action complaint filed by Defendant, Foster.  Northstar lacks sufficient information to admit or deny the veracity of such allegations quoted from the class action complaint.  To the extent a response is required, Northstar denies such allegations.

19.     Northstar admits that Defendant, Foster alleges negligence against Northstar, including that Northstar was negligent and breached a duty to exercise reasonable care in the supply, inspection, selling, and installation of drywall.  However, Northstar denies the veracity of such allegations.

20.     Admitted.

21.     Northstar admits that Plaintiff issued to Defendant, Northstar Holdings, Inc., a commercial liability policy, policy number BAG0002215-00 with effective dates of coverage from October 22, 2006 to October 22, 2007 (the "First Policy").  Northstar denies any other allegations in paragraph 21 of the complaint.

22.     Northstar admits that the First Policy lists Northstar Holdings at B & A, LLC as a "supplemental named insured."

23.     Northstar admits that Plaintiff issued to Defendant, Northstar Homes, Inc., a commercial general liability policy, policy number BAG0004973-00 with effective dates of coverage from October 22, 2007 to October 22, 2008 (the "Second Policy").  Northstar denies any other allegations of paragraph 23 of the complaint.

24.     Northstar admits that the Second Policy lists Northstar Holdings, Inc., Northstar Holdings at B & A, LLC, as "supplemental named insured".  Northstar denies the other allegations

4

4828-6200-8581.1_

of paragraph 24 of the complaint.

25.     Northstar admits that Plaintiff issued to Defendant, Northstar Homes, Inc., a commercial general liability policy, policy number BAD0006227-00 the "Third Policy"; with effective dates of coverage from October 22, 2008 to October 22, 2009 the First Policy, the Second Policy and the Third Policy are sometimes collectively hereinafter referred to as "the Policies"). Northstar denies any other allegations of paragraph 25 of the complaint.

26.     Northstar admits that the Third Policy lists Northstar Holdings, Inc. and Northstar Holdings at B & A, LLC as "supplemental named insureds." Northstar denies any other allegations contained in paragraph 26 of the Complaint.

27.     Denied.

28.     Denied.

29.     Admitted:

30.     Paragraph 30 of the Complaint does not allege a statement of ultimate facts to which a response is required. Paragraph 30 merely quotes a purported select section of the Policies and does not allege a statement of ultimate facts to which a response is required.

31.     Paragraph 31 of the Complaint does not allege a statement of ultimate facts to which a response is required. Paragraph 31 merely quotes a purported select section of the Policies and does not allege a statement of ultimate facts to which a response is required.

32.     Paragraph 32 of the Complaint does not allege a statement of ultimate facts to which a response is required. Paragraph 32 merely quotes a purported select section of the Policies and does not allege a statement of ultimate facts to which a response is required.

33.     Paragraph 33 of the Complaint merely quotes a purported select section of the Policies and does not allege a statement of ultimate facts to which a response is required. Northstar

5

further states that the Policies speak for themselves, and denies any allegation of quotation that is inconsistent with the express verbiage set forth in the Policies.

34.     Denied.

35.     Denied.

36.     Denied.

## Declaratory Judgment

37.     Northstar repeats and incorporates its responses paragraphs 1 through 36 of the Complaint.

38.     Northstar admits only that such an actual controversy, as alleged by Plaintiff, does in fact exist.

39.     Admitted.

40.     The allegations set forth in paragraph 40 of the Complaint amount to legal conclusions to which a response is not required.  Further to the extent that a response is required, Northstar denies such allegations.

41.     Northstar is without knowledge as to whether Plaintiff has satisfied all (unspecified) conditions precedent, and therefore denies same.

42.     Northstar is without knowledge as to whether Plaintiff has joined all parties in this action who do or may claim an interest in the subject matter hereof, and therefore denies same.

43.     Denied.

44.     Paragraph 44 of the Complaint is a legal conclusion to which no response is required.

6

## COUNTERCLAIM FOR DECLARATORY RELIEF

Defendants/Counter-Plaintiffs, NORTHSTAR HOLDINGS, INC., NORTHSTAR HOMES, INC., and NORTHSTAR HOLDINGS AT B & A, LLC (collectively "Northstar"), by and through their undersigned counsel, hereby countersue Plaintiff, GENERAL FIDELITY INSURANCE COMPANY ("General Fidelity"), and in support thereof specifically aver as follows:

1.  The foregoing is a Counterclaim for Declaratory Relief under the auspices of 28 USC §2201 and §2202, for the purpose of determining a question of actual controversy between the parties.

2.  Venue is proper in the West Palm Beach Division of the Southern District of Florida pursuant to 28 USC §1391, as the insurance policies that are the subject of the foregoing action for declaratory relief were issued in Palm Beach County, Florida.

3.  Plaintiff, Northstar Holdings, Inc., is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Palm Beach County, Florida.

4.  Plaintiff, Northstar Homes, Inc., is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Palm Beach County, Florida.

5.  Plaintiff, Northstar Holdings at B & A, LLC, is a Florida corporation with its principal place of business in Palm Beach County, Florida.

6.  Defendant, General Fidelity, alleges to be a corporation organized and existing under the laws of the State of California with its principal place of business in North Carolina.

7.  Plaintiff, Northstar Holdings at B & A, LLC is the general contractor of a project known as Cobblestone Creek located in Palm Beach County, Florida. Plaintiff, Northstar Holdings at B & A, LLC, built 134 homes between 2005 and 2007 in Cobblestone Creek.

7

4828-6200-8581.1_

8.      Plaintiff, Northstar Holdings at B & A, LLC, entered into a subcontract with Precision Drywall, Inc. pursuant to which Precision Drywall, Inc. was to install drywall and wall furnishings in homes located within Cobblestone Creek.

9.      All drywall installed within Cobblestone Creek in homes built by Northstar was furnished by Precision Drywall, Inc. which was responsible for purchasing the drywall as part of their subcontract.

10.     Upon discovering in the beginning of 2009, that drywall imported from China was installed in homes built by Northstar Holdings at B & A, LLC at the Cobblestone Creek project, Northstar started a process of inspecting the homes within the community.

11.     During April, May and June of 2009, a large quantity of homes were inspected and determined to contain Chinese drywall.

12.     Upon confirming that Chinese drywall was installed in homes built by Northstar Holdings at B & A, LLC, Northstar immediately filed a claim with its and Precision Drywall, Inc.'s insurance carriers.

13.     Defendant, General Fidelity, issued to Plaintiff, Northstar Holdings, Inc., a commercial general liability policy, policy number BAG0002215-00 with effective dates of coverage from October 22, 2006 to October 22, 2007 (hereinafter "First Policy"). A copy of the Policy is attached as Exhibit "C" to the complaint filed by General Fidelity (the "Complaint").

14.     First Policy lists Northstar Holdings at B & A, LLC as a "supplemental-named insured".

15.     Defendant, General Fidelity, issued to Plaintiff, Northstar Homes, Inc., a commercial general liability policy, policy number BAG0004973-00 with effective dates of coverage from October 22, 2007 to October 22, 2008 ("Second Policy"). A copy of the Second

8

4828-6200-8581.1_

Policy is attached to the General Fidelity's Complaint as Exhibit "D".

16.     The Second Policy lists Northstar Holdings, Inc. and Northstar Holdings at B & A, LLC as "supplemental-named insureds".

17.     Defendant, General Fidelity, issued to Plaintiff, Northstar Homes, Inc., a commercial general liability policy, policy number BAG0006227-00, (the "Third Policy") with effective dates of coverage from October 22, 2008 to October 22, 2009. A copy of the Third Policy is attached as Exhibit "E" to the Complaint.

18.     The Third Policy lists Northstar Holdings, Inc. and Northstar Holdings at B & A, LLC as "supplemental-named insureds".

19.     The Policies promised to cover "those sums that the insured becomes legal obligated to pay as damages because of bodily injury or property damage to which the insurance applies..." and further state that General Fidelity "will have the right and duty to defend any suit seeking those damages."

20.     The Policies state that the coverage applies to "'bodily injury' or 'property damage' that is caused by an 'occurrence' within the 'coverage territory' during the policy period."

21.     "Occurrence" is defined in the Policies as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

22.     Defendant, Foster, has filed a punitive class action in this court, Case Number 09-cv-80535-JIC. The class action complaint filed by Defendant, Foster, is attached to the Complaint as Exhibit "A".

23.     Defendant, Foster, is suing Plaintiffs, Northstar Homes, Inc. and Northstar Holdings, Inc., for bodily injuries, property damage, and other damages she allegedly sustained as a result of drywall installed in homes built by Northstar Holdings at B & A, LLC.

9

24.     Defendant, Foster, alleges that the defective drywall emitted various sulfite gases and/or chemicals through "off-gasing" that created noxious, "rotten egg-like" odors, causing bodily injury and property damage. See Exhibit "A" to the Complaint, at paragraph 2.

25.     Defendant, Foster further alleges that "[a]s a direct and proximate result of Defendants actions and omissions, Plaintiffs and the Class Members' homes and bodies have been exposed to Defendants' drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances. See Exhibit "A" to the Complaint, at paragraph 98.

26.     The following counts are contained within Defendant, Foster's punitive class action suit:

Count I – Negligence

Count II – Negligence Per Se

Count III – Strict Liability

Count IV – Breach of Express Warranty

Count V – Breach of Implied Warranties

Count VI – Fraudulent Concealment

Count VII – Fraudulent Misrepresentation

Count VIII – Negligent Misrepresentation

Count IX – Unjust Enrichment

Count X – Breach of Contract

Count XI – Private Nuisance

Count XII – Equitable Relief, Injunctive Relief and Medical Monitoring

Count XIII – Violation of the Florida Deceptive and Unfair Trade Practices Act

10

4828-6200-8581.1_

Count XIV – Breach of Implied Warranty of Merchantability

Count XV – Breach of Implied Warranty Fitness for a Particular Purpose

See Exhibit "A" to Complaint filed by General Fidelity.

27.    Northstar's claims for damages plainly fall within the coverage afforded by the Policies. The installation of the allegedly defective drywall occurred during the policy periods of one or more of the Policies.

28.    Northstar's claims for insurance coverage of damages arising from third party bodily injury, property damage and personal injury in homes containing imported drywall are not precluded by any provisions contained in the Policies. General Fidelity has the burden of proof on all coverage exclusions. General Fidelity has not and cannot meet its burden that any exclusions apply to bar coverage of Northstar's claims.

29.    The "Florida Total Pollution Exclusion Endorsement" to the Policies does not bar recovery of the costs and expenses incurred by Northstar in connection with removing and replacing the allegedly defective drywall. The aforementioned endorsement provides that no coverage is afforded for "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time. The purported emissions of various sulfide gases and/or other chemicals that Defendant Foster alleges emanated from the drywall do not bar coverage for the cost of replacing the drywall itself.

30.    Exclusion "n." of the Policies (i.e., "Recall of Products, Work or Impaired Property") does not bar Northstar from recovering damages incurred as a result of Defendant Foster's and the other class members' loss of use of their homes. This endorsement bars recovery of damages where the harm is caused by "your product," "your work" or "impaired property."

11

4828-6200-8581.1_

"Your work" is defined in the Policies to mean (1) "work or operations performed by you or on your behalf; and (2) materials, parts or equipment furnished in connection with such work or operations." "Your Product" means (1) any goods or products, other than real property, manufactured, sold handled distributed or disposed of by, *inter alia,* you or others trading under your name. Because the allegedly defective drywall was neither manufactured nor installed by Northstar, this exclusion cannot apply on the basis that the drywall is Northstar's product or that the installation of the drywall was Northstar's work. Similarly, the drywall is not "impaired property" within the meaning of the Policies. Under the Policies, "impaired property" means "tangible property, other than "your product" or "your work" that cannot be used or is less useful" because, *inter alia,* "it incorporates 'your product' or 'your work' that is known or thought to be known to be defective, deficient, inadequate or dangerous." As noted above, Defendant Foster alleges that the source of her alleged bodily injuries and property damage derives from the drywall. Because the drywall is not Northstar's product, nor was it installed by Northstar, this exclusion cannot apply on the basis that damages were caused by "impaired property."

31.     Northstar does not have an adequate remedy at law.

30.     An actual and justicable controversy exists between Northstar and General Fidelity as to General Fidelity's duties to defend Northstar against claims for damages brought against Northstar by homeowners within the Cobblestone Community including those in the class action lawsuit brought by Defendant, Foster, and as to General Fidelity's duty to indemnify Northstar for any losses sustained by Northstar in connection with the such third party claims.

WHEREFORE, Northstar respectfully requests this Honorable Court to:

A.     Find and declare that Northstar is entitled to a defense against claims or suits by homeowners and occupants of the Cobblestone Creek Community for allegations of bodily injury

12

4828-6200-8581.1_

and property damage that is alleged to be related to imported drywall.

      B.      General Fidelity owes Northstar a duty to indemnify Northstar against losses resulting from third-party claims or suits brought by the homeowners and occupants within the Cobblestone Creek Community related to imported drywall.

      C.      Award any other and further relief as this Court deems appropriate.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 11th day of January, 2010, I electronically filed the foregoing with the Clerk of the Courts by using the ECF system which will send an email notice of electronic filing (NEF) to Plaintiff's counsel, Ryan Kent Hilton, Esquire, Butler, Pappas, Weihmuller, Katz, Craig, LLP, 777 S. Harbour Island Boulevard, Suite 500, Tampa, FL 33602.

               **BROAD AND CASSEL**

               **Attorneys for Defendants,**
               **Northstar Holdings, Inc., Northstar Homes, Inc.**
               **and Northstar Holdings at B & A, LLC**

               By:  /S/ Michael K. Wilson, P.A.
               Michael K. Wilson, P.A.
               Florida Bar No.: 0657069
               *mkwilson@broadandcassel.com*
               390 N. Orange Avenue
               Suite 1400
               Orlando, FL 32801
               Tel: (407) 839-4200
               Fax: (407) 425-8377

4828-6200-8581.1_