# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURING DRYWALL :     MDL NO. 2047
          PRODUCTS LIABILITY LITIGATION      :     SECTION: L
                                                  :
                                                  :     JUDGE FALLON
                                                  :     MAG. JUDGE WILKENSON
                                                  :
THIS DOCUMENT RELATES TO:           :
Ledford, et al. v. Knauf GIPS KB, et al.      :
No. 2:09cv04292                                :

---

## PLAINTIFF, SAMUEL LEDFORD'S, ANSWERS & RESPONSES
## MAZER SUPER DISCOUNT STORE'S FIRST SET OF
## INTERROGATORIES and REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW the Plaintiff, Samuel Ledford, and files this, his Answers and Responses to the Defendant, Mazer Super Discount Store's, First Set of Interrogatories and Requests for Production of Documents and would answer and respond as follows, to-wit:

## INTERROGATORIES

1.     Identify each and every person or entity that holds legal title to the property in which the Chinese Drywall at issue was installed, and identify the type of interest each owns (i.e., joint tenancy, tenancy in common, etc.).

**ANSWER:  I, Samuel Ledford, and my son, Lacortney Ledford, own the home in question; it was purchased from Jim Walter Homes on 5/25/07.**

2.     State with Particularity, list and describe any and all problems, complaints or defects or deficiencies which you allegedly have with: (a) your Drywall; (b) your home or any structure containing the Drywall for which you are seeking damages; and, (c) any property or items for which you are claiming damage; and, Identify each individual that will support these facts. This interrogatory includes, but is not limited to, those items which may not be specifically listed in your complaint.

**ANSWER: Plaintiff objects** to this Interrogatory as this information is known to this Defendant and is contained in the Complaint in this MDL. However, without waiving said objection, Plaintiff would state that the drywall in question emits a sulfuric odor which is believed to be causing headaches and respiratory problems to Plaintiff and his family, as well as causing corrosion throughout the home. There is a smell of black soot. The exact nature can be determined by a visual inspection. Plaintiff has claimed damages for proper remediation and removal of the Chinese Drywall as established by Judge Fallon in the trial to occur next month, as well as any and all damages for electrical items which are unknown at this time, replacement of the HVAC system, storage and living expenses during the reconstruction phase, as well as any and all remittance for any reduction in the value of the home as being contaminated with Chinese drywall, aw well as any and all other claims they may be entitled to under state, federal and common law.

3.     Enumerate, list and describe each and every item of monetary loss or expense for which you seek recovery in this suit, giving the amount of each item or, if you do not know the exact amount, your best estimate of each and a description of the items for which you seek recovery.

**ANSWER: Items of monetary loss** or expense are unknown at this time other than that the Plaintiff wishes his home to be properly remediated according to the remediation protocol as established by Judge Fallon in the trial which is to occur next month, and for any all out-of-pocket expenses such as storage costs, attorney's fees and expenses, replacement of any electrical appliances and remittance for personal injuries suffered, and any and all other relief which Plaintiff may be entitled to.

4.    State with particularity, list and describe the details of any estimates for repair, replacement, work or remediation that you have obtained related to or allegedly related to the Drywall.

**ANSWER: There are no estimates for repair or remediation at this time. These will provided upon the determination of remediation protocol by the Court.**

5.    Provide an itemization of all medical bills and expenses you have incurred as a result of your exposure to Chinese drywall, as well as the amount you have paid out of pocket for your alleged injuries.

**ANSWER: Medical bills have been minimal to date as I and my family have treated ourselves with over-the-counter medications. My wife has a prescription for Nasonex which may be related to the emissions from the subject drywall. My son, Markey, has been hospitalized one time for migraine headaches which may also be related to the Chinese drywall. These bills are not in my possession at this time but will be supplemented.**

6.    If you purchased, obtained or acquired the Drywall directly from Mazer, Identify and list: (a) the date when the Drywall was purchased; (b) the total amount of the purchase; and, (c) whether you purchased the Drywall yourself directly or whether it was purchased or obtained by someone else.

**ANSWER: The drywall in question was purchased directly from Mazer by the Plaintiff for his own personal use on January 29, 2008. The total amount of the purchase was $870.90 initially, and then Plaintiff purchased additional sheets of drywall from Mazer on February 11, 2008, for $255.68. The total sheets which were purchased on January 29, 2008, was 100 sheets; the total on February 11th, was 32 sheets.**

7.    If you did not purchase, obtain or acquire the Drywall directly from Mazer identify:   (a) the person or entity from whom the Drywall was purchased, obtained or acquired; and, (b) describe how you obtained, acquired or came to possess the Drywall.

**ANSWER:  N/A**

8.    Identify any Document or Documents related to the purchase, obtaining or acquisition of the Drywall by you and the purchase or acquisition of the structure containing the Drywall.

**ANSWER:   2 receipts from Mazer; financing agreement with Jim Walter Homes; both of which are attached.**

9.    If you are seeking damages for property or items that you claim were damaged from or due to the Drywall or because of any acts or omissions of Mazer, then provide: (a) a complete description of the items including type, age, brand and model; (b) the date when the item was purchased, acquired or obtained; (c) the amount for which the item was purchased acquired or obtained; (d) the entity from whom the item was purchased, acquired or obtained; (e) the age of the item; (f) the fair market value of the item; and, (g) all methods used by you to obtain the fair market value.

**ANSWER:  Unknown to Plaintiff until such time as a remediation protocol has been established by the Court.**

10.    List and Identify any contractor, laborer or other person or entity that worked with, installed or was otherwise involved with your Drywall and include in your answer a complete description of the nature of their work or involvement with your Drywall.

**ANSWER:  Plaintiff installed the subject drywall, together with his brother, Stan Ledford, and his sons.**

11.    State with Particularity and describe the results of any testing related to your Drywall and, include in your answer the materials or elements (including, but not limited to, strontium, sulfur, and iron) that were tested and the results of the testing.

**ANSWER:  Plaintiffs drywall tested positive for strontium with a level of 3,480.  The subject drywall also tested positive for carbonyl sulfide and carbonal disulfide.  Testing was performed by Unified Engineering, Inc. in Aurora, IL.**

12.    If you are claiming that you have suffered personal injury as a result of your exposure to Chinese drywall, please give a complete description of your injury or injuries.

**ANSWER:   The following problems may or may not be related to the Chinese drywall but are being provided on a good faith basis at this time.  I have been diagnosed with significant back disorder and sarcoidosis which are unrelated to this but may leave me more vulnerable to other medical problems; I have trouble sleeping, nose bleeds, dizziness, as well as upper respiratory congestion.  My wife has also had similar conditions; her medical records will be provided upon receipt.   My son, Markey, has runny nose and congestion problems; he recently had severe headaches which required hospitalization; his medical records will be provided upon receipt.  My other son, LeCortney, simply has some upper respiratory problems and congestion.  Whether these conditions are related to exposure to the subject Chinese drywall will be determined during the course of discovery and will depend upon the diagnoses of the treating physicians or any experts which may be employed in this case.**

13.   Identify each person you expect to call as a witness in the trial of this cause by name, address, telephone number, occupation, and employer.

**ANSWER: Plaintiff, Samuel Ledford, and his wife Lacortney Ledford; my brother, my children and any and all witnesses listed by the Defendants.**

14.   Identify each document which you intend to introduce as evidence at the trial of this cause.

**ANSWER:  Plaintiff is not sure at this time what all documents will be introduced at the trial of this matter, but anything attached to these discovery responses may be used, as well as any documents provided by Defendants in this suit or any party in this MDL.**

15.   State the name, address, and qualifications of each and every expert witness or person you expect to call as an expert witness at trial.

**ANSWER:  Any and all expert witnesses which have been provided to the this Defendant thus far by the PSC may be called at the trial of this matter.  All names, addresses and qualifications have been provided.   Plaintiff may supplement this Answer upon completion of further discovery.**

16.   State the subject matter on which each expert witness is expected to testify.

**ANSWER:  This information has also been provided to this Defendant by the PSC, however, Plaintiff may supplement this Answer upon completion of further discovery.**

17.   State the substance of the facts and opinions to which each and every expert is expected to testify.

**ANSWER: This information has also been provided to this Defendant by the PSC, however, Plaintiff may supplement this Answer upon completion of further discovery.**

18.    State a summary of the grounds of each opinion held by each and every said expert.

ANSWER: **This information has also been provided to this Defendant by the PSC, however, Plaintiff may supplement this Answer upon completion of further discovery.**

19.    State the conclusions or opinions of each and every expert you expect to call as a witness at the trial of this lawsuit.

ANSWER: **This information has also been provided to this Defendant by the PSC, however, Plaintiff may supplement this Answer upon completion of further discovery.**

20.    Have you or anyone acting on your behalf or with your knowledge, made a claim for benefits relating to your exposure to or damages from Chinese drywall under any medical paid coverage or policy of insurance?  If so, state:

a.  The name, street address, city and state of the insurance company or organization with whom you have made the claims; and,

b.  The claim number and policy number.

**ANSWER: No.**

21.    State the name and address of each hospital where you have been treated concerning your exposure to Chinese drywall, and the dates that you were treated at/confined in each hospital.

**ANSWER:  My son, Markey, was recently had to go to the emergency room at Coosa Valley Baptist Hospital for a severe migraine headache which may be related to the Chinese drywall.   A CAT scan was performed, but there is no preliminary diagnosis at this time.   His medical records will be provided upon receipt.**

22.    Identify by name, address, phone number, occupation, and employer, each person having knowledge of discoverable facts relating to the subject matter of this lawsuit and State with Particularity and describe all facts known by each person.

**ANSWER:  1)  The Plaintiff, Samuel Ledford; 2) His wife, Sarah Ledford; 3) His son, Lacortney Ledford; 4) Dr. Lori Streit, Unified Engineering, Inc.; 5) Isaac, salesperson with Mazer.**

23.    Are you currently employed?  If so, please provide the following for each and every job you hold:

  a.  Your employer's name and address;

  b.  Your immediate supervisor's full name, street address, city and state;

  c.  If you are self-employed, the proper name and business address of your employer;

  d.  The length of time you have been employed with your current employer; and,

  e.  Your current income.

**ANSWER:  I am currently receiving SSDI which I have received for about 13 or 14 years stemming from my sarcoidosis and back injury.**

24.   Identify each and every instance in which you have been arrested or convicted of a criminal offense by providing the offense charged, date of the offense, case number, and disposition of the matter.

**ANSWER:  Plaintiff objects to this Interrogatory as it seeks information which is not likely to lead to the discovery of admissible evidence.  However, without waiving said objection, I have never been convicted of a felony.**

25.   Identify each and every automobile accident in which you have been involved.

**ANSWER:  Plaintiff objects to this Interrogatory as it seeks information which is not likely to lead to the discovery of admissible evidence.  However, without waiving said objection, I was hit by a Coca Cola truck about 4 years ago. My case was handled by Forstman & Cutchen, 2554 – 18th St., Birmingham, AL, and it has been resolved.**

26.   Identify each and every on-the-job injury you have received, and indicate whether you received worker's compensation benefits and/or treatment as a result of each and every injury.

ANSWER:  **Plaintiff objects to this Interrogatory as it seeks information which is not likely to lead to the discovery of admissible evidence.  However, without waiving said objection, I have not been employed for the last 13 or 14 years.**

27.   Are you claiming any lost wages or income as a result of your exposure to Chinese drywall?  If so, please state:

a.  The name and address of any and all employers or other sources of income from whom or which you claim you have not received

> income as a result of the incident made the basis of your
> complaint;
>
> b.  Please state the number of days at work you have lost, and the
>     dates of those lost days at work;
>
> c.  The amount of any wages or income you claim to have lost; and,
>
> d.  Name and address of the person, firm, corporation, or other entity
>     have any custody of any documents pertaining to your income.

**ANSWER:  No.**

28.    Provide the name, area of specialty, business address, and telephone number of each and every doctor, psychiatrist, psychologist, counselor, healthcare provider, or other person from whom you have sought treatment as a result of your exposure to Chinese drywall.

**ANSWER:  My family has mostly treated themselves with over-the-counter medications, with the exception of my wife's prescription for Nasonex and my son's recent hospitalization for severe headaches.  Those records will be provided upon receipt.**

29.    Identify by name, address, area of specialty, and hospital affiliation each and every doctor, psychiatrist, psychologist, chiropractor, or other healthcare provider who has treated you for any injury, ailment, disease, addiction, or problem within the last ten (10) years.

**ANSWER:  My family has mostly treated themselves with over-the-counter medications, with the exception of my wife's prescription for Nasonex and my son's recent hospitalization for severe headaches.  Those records will be provided upon receipt.**

30.   Identify each and every way you claim to have been damaged or harmed as a result of this Defendant's acts or omissions.

**ANSWER:   Please refer to Plaintiffs Complaint.**

31.   Identify each and every person, company, or entity that is in possession of documents or evidence relating to any damages or harm you claim to have incurred as a result of this Defendant's acts or omissions.

**ANSWER:   Plaintiff and his counsel, together with other members of the PSC.**

32.   Identify each and every injury, ailment, disease, addiction, or problem for which you have been treated in the last ten (10) years.

**ANSWER:   Plaintiff objects to this Interrogatory as it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.**

33.   Do you contend that this Defendant has violated any codes, standards, laws, guidelines or regulations with regard to the Drywall or any of the allegations in the complaint?  If so, state:

> a. The correct name of each code, standard, law, guideline or regulation you allege it violated;
>
> b. The section number and page number of all codes, standards, laws, manufacturer's guidelines or requirements or regulations that you allege were violated or not followed;
>
> c. All facts which you claim constitute a violation of the codes, standards, laws, guidelines, requirements or regulations;
>
> d. How the violation of such codes, standards, laws, guidelines, requirements or regulations caused or contributed to the accident or incident alleged in your complaint; and,

e. The name, street address, city, and state of all persons providing the answers to subsections (a)-(d) above.

**ANSWER: Yes, Mazer has violated numerous standards in selling dry wall that was not properly labeled or tested and selling drywall that emits gases that cause corrosion, all in violation of ISA 71.04, ISO 4000.1, 4000.2, 4000.3, 4000.4 and ICE 64 (because the corrosion in question exceeds the minimum thickness of corrosion that is allowed by that standard) and the Pattell standard as expressed by the CPSC/Sandia on electrical components.   Plaintiff will supplement this Answer upon completion of further discovery.**

34.    Identify all of the Plaintiffs' homeowner's insurance company or companies since the date the Plaintiffs first purchased or obtained the Drywall and include in your answer the name and address of your homeowner's insurance agent, and the policy number and any information regarding claims filed by you since you obtained the Drywall.

**ANSWER:  This information is provided in the Plaintiffs Profile form which was required by the Court, but for easy reference, Plaintiffs homeowner's insurance was with Best Insurors, Inc., 4211 W. Boy Scout Blvd., Tampa, FL 33548.**

35.    Are you aware that your answers to these interrogatories are given under oath, that you have an obligation to conduct a diligent search to locate and produce the documents and things responsive to the requests for production, and that you have a continuing obligation to seasonably supplement your responses to the interrogatories and requests for production if you should discover that any of your responses are inaccurate, incomplete, or misleading in any way?

**ANSWER:   Plaintiff objects to this misstatement of the law; however, Plaintiff has attempted to comply with these discovery requests to the best of his ability.**

36.   Identify each and every person who is providing information or Document or Documents for the responses to these Interrogatories and Requests for Production.

**ANSWER:  Plaintiff and his attorney.**

37.   Identify each and every person who has told you that the Drywall to which you have been exposed is responsible for the damages you are claiming in this lawsuit.

**ANSWER:   Plaintiff objects to this Interrogatory as it seeks information that is protected by the attorney work product rule.**

38.   Identify each and every lawsuit in which you have been a party, whether you were a plaintiff or a defendant, the facts giving rise to that action, whether the action was concluded in your favor, and the amount of any recovery:

        a.  Provide the same information for each and every claim you have made against an insurance company;

        b.  Provide the same information for each and every claim you have made against a governmental agency; and,

        c.  Provide the same information for each and every claim you have made against a private individual or business.

**ANSWER:   Plaintiff objects to this Interrogatory as it seeks information which is not likely to lead to the discovery of admissible evidence.**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Produce a complete copy of your income tax returns (state and federal), and any amendments thereto, for the past five (5) years.

**RESPONSE:  Plaintiff objects to this Request as he is not making a lost wages claim.**

2.      If the drywall at issue has been installed into a building or structure, produce a copy of any and all documents reflecting the ownership of the real property in which the drywall has been installed.

**RESPONSE:   Please see financing agreement with Jim Walters Homes attached.**

3.      Produce a copy of any and all photographs, videos, or electronic or digital recordings of any kind which reflect, relate to, refer to, or pertain to the Drywall or this defendant's product, or any other product you allege caused the injuries and/or damages at issue in this lawsuit.

**RESPONSE:  Please see photos of drywall attached.**

4.      Produce a copy of any and all Documents you received, obtained or provided when you purchased the Drywall at issue including, but not limited to, any brochures, advertisements, bills, invoices, purchase orders or checks.

**RESPONSE:  Please see receipts from Mazer's attached.**

5.      Produce a copy of any and all Documents reflecting, relating, or pertaining to any and all out-of-pocket expenses you claim to have incurred as a result of the claims at issue in this lawsuit.

**RESPONSE:  Plaintiff's expenses have not yet been calculated and will be supplemented.**

6.     Produce a copy of any and all Documents reflecting medical damages (including, but not limited to, medical expenses or bills) you claim to have incurred as a result of the accident at issue in this lawsuit.

**RESPONSE:  Plaintiff is not in possession of any medical records at this time but will provide same upon receipt.**

7.     Produce a copy of any and all Documents reflecting any and all items of damage you are claiming in this lawsuit.  This request includes, but is not limited to invoices, repair bills, appraisals, medical bills, medical records, insurance claims, bids, estimates, complaints, diaries, photographs, videos, recordings, or any other written or electronic documents whatsoever.

**RESPONSE:  Plaintiff does not have this yet but will supplement.**

8.     Produce a copy of any and all photographs, videos, or other digital or electronic recordings of the Drywall or the location/site/work station where the Drywall at issue in this lawsuit is located.

**RESPONSE:  Please see photos attached.**

9.     Produce a copy of the résumé or *curriculum vitae* of each and every expert that you have or retained, identified in your interrogatory answers, or who will testify at the trial of this case.

**RESPONSE:  This information has been provided to Defendant in the MDL.**

10.     Produce any and all reports, documents, billing records, correspondence, notes, calculations, or interim drafts or memoranda given to, or prepared by, each and every expert you intend to call as a witness at the trial of this case.

**RESPONSE:  This information has been provided to the Defendant in the MDL.**

11.    Produce each and every letter, correspondence, electronic mail, memoranda, document, report, record, medical record, or correspondence which you allege supports your claims for damages in this case or relates to the Drywall.

**RESPONSE:  This information has been provided to the Defendant in the MDL.**

12.    Produce each and every appraisal of your house or any structure containing your Drywall and each and every appraisal for any property or item which you are claiming was damaged because of or by the Drywall.

**RESPONSE: Please see attached.**

13.    Produce a copy of each and every Document identified in any interrogatories above.

**RESPONSE:  Please see attached.**

14.    Produce any and all medical records, reports, and bills from the medical providers identified in responses to the interrogatories above.

**RESPONSE:  None at this time.**

15.    Produce a copy of any and all accident/incident reports, medical records, medical bills, Employer's First Report of Injury forms, records of payment, and/or documents relating to the accidents and/or injuries identified in response to the interrogatories above.

**RESPONSE:  Plaintiff objects to this Request as it seeks information that is not likely to lead to the discovery of admissible evidence.**

16.    Produce all invoices, receipts, sales tickets, cancelled checks, credit card receipts or statements or other documents related to any item or property for which you are seeking damages in this case.

**RESPONSE:   Please   see   attached.   Plaintiff will supplement upon** **completion of the remediation protocol trial.**

17.    Your   complete   file   in   reference   to   any   home,   residence,   structure   or property containing the Drywall that is the subject of your lawsuit including but not limited to any plans, specifications, drawings, blueprints or contracts.

**RESPONSE:  Plaintiff objects to this Request as it seeks information that** **is protected by the Attorney-Client privilege and attorney work product rule.** **However, assuming that you are not requesting Plaintiffs attorney's work** **product, please see attached.**

18.    Your complete file and all documents related to any work involving the Drywall.

**RESPONSE:  Plaintiff objects to this Request as it seeks information that** **is protected by the Attorney-Client privilege and attorney work product rule.** **However, assuming that you are not requesting Plaintiffs attorney's work** **product, please see attached.**

19.    Any   contracts,   subcontracts,   purchase   orders,   work   orders,   change orders, invoices, plans, specifications, schedules related to any work by you or any third party utilizing, installing or working with the Drywall.

**RESPONSE:  Plaintiff objects to this Request as it seeks information that** **is protected by the Attorney-Client privilege and attorney work product rule.** **However, assuming that you are not requesting Plaintiffs attorney's work** **product, please see attached.**

20.    Each and every Document related to testing or analysis of the Drywall, or any item or property allegedly damaged due to the Drywall.

**RESPONSE: Plaintiff objects to this Request as it seeks information that is protected by the Attorney-Client privilege and attorney work product rule. However, assuming that you are not requesting Plaintiff's attorney's work product, please see attached.**

21.    Each and every agreement, correspondence, memorandum, or any other such writing between you and Mazer.

**RESPONSE: Please see attached.**

22.    Any and all advertisements, brochures, sales literature related to the Drywall.

**RESPONSE: Plaintiff objects to this Request as it seeks information that is protected by the attorney work product rule. However, without waiving said objection, Plaintiff is not aware of any.**

23.    Any and all documents which substantiate your claims for damages against Mazer.

**RESPONSE: Plaintiff objects to this Request as it seeks information that is protected by the attorney work product rule. However, without waiving said objection, please see attached. Plaintiff will supplement his Response to this Request.**

24.    Each and every report, memorandum, correspondence, or other such document by whatever designation pertaining to any evaluation, estimate, analysis, or review of any work, remediation, or repair costs claimed to be necessary because of the Drywall.

**RESPONSE: This information has been provided to the Defendant in the MDL.**

25. Each and every contract, agreement, correspondence, or any other such document related to the use or purchase of the Drywall.

**RESPONSE: Please see attached.**

26. Copies of any inspections done by or on behalf of the plaintiff to the residence, home or structure containing the Drywall.

**RESPONSE: Please see attached.**

27. Copies of any materials relating to Chinese drywall, whether related to your Chinese Drywall or not, that is in the Plaintiff's possession. (This will include any pamphlets, brochures, media publications, or other forms of communication.)

**RESPONSE: Plaintiff objects to this Request as it seeks information that is protected by the attorney work product rule and attorney-client privilege.**

28. Copies of any and all invoices and/or billings which pertain to any repair, restoration or remediation work related to the Drywall.

**RESPONSE: Plaintiff will supplement his Response to this Request.**

29. Any correspondence between the Plaintiff or his representatives and any other party to this action.

**RESPONSE: Plaintiff will supplement his Response to this Request.**

30. Any and all Documents, correspondence or records between Plaintiffs and any non-party to the above-referenced action (excluding those correspondence between the plaintiff and the plaintiff's attorney) which relate to this lawsuit or the filing thereof.

**RESPONSE: Plaintiff objects to this Request as it seeks information that is protected by the attorney work product rule.**

31. Any Documents received pursuant to a non-party subpoena or request pursuant to the Freedom of Information Act related to the Drywall or this lawsuit.

**RESPONSE:  This matter must be addressed by the MDL but no documents have been subpoenaed in this specific lawsuit to Plaintiffs knowledge.**

32.    Copies of all estimates for repair to, or replacement of, an item because of the Drywall.

**RESPONSE:  Plaintiff does not have any estimates.**

33.    Each and every homeowner's insurance policy and declarations page from the last five (5) years and any claim(s) made to said insurance company during the last five years or related to the Drywall.

**RESPONSE:  Please see attached homeowners' policy.**

RESPECTFULLY SUBMITTED this, the ___9___ day of February, 2010

SAMUEL LEDFORD, Plaintiff

As to Objections:

LUCKEY & MULLINS, PLLC

BY: _____
STEPHEN W. MULLINS, His Attorney

ATTORNEYS FOR PLAINTIFFS:

STEPHEN W. MULLINS (LA Bar No. 22124)
LUCKEY & MULLINS, PLLC
2016 Bienville Blvd., Suite 102  (39564)
Post Office Box 990
Ocean Springs, MS  39566
(228) 875-3175
(228) 872-4719  (fax)

Daniel A. Bryson
North Carolina State Bar No. 15781
LEWIS & ROBERTS, PLLC
3700 Glenwood Avenue, Suite 410
Raleigh, North Carolina 27612
Telephone: (919) 981-0191
Facsimile: (919) 981-0431
Email: dkb@lewis-roberts.com

Gary E. Mason
The District of Columbia Bar No. 418073
Mason, LLP
1625 Massachusetts Avenue, Suite 605
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: gmason@masonlawdc.com

Joel R. Rhine (NC Bar No. 16028)
Lea, Rhine, & Rosbrugh, PLLC
314 Walnut Street
Wilmington, NC 28401
Fax: (910) 772-9062
Email: jrr@lrlawfirm.com

Christopher L. Coffin
24110 Eden Street
Plaquemine, LA 70765
(252) 687-6396
Fax: (225) 687-6398
Email: ccoffin@pbclawfirm.com

STATE OF ALABAMA

COUNTY OF _TALLADEGA_____

PERSONALLY CAME AND APPEARED BEFORE ME, the undersigned authority in and for the aforesaid County and State, the within named, SAMUEL LEDFORD, who, after having been by me first duly sworn, states on his oath that he signed the above and foregoing Answers and Responses to First Set of Interrogatories and Requests for Production of Documents, and that the matters and facts contained therein are true and correct as therein stated.

_____
SAMUEL LEDFORD, Plaintiff

Sworn to and subscribed before me this the _8__ day of February, 2010.

_____
**NOTARY PUBLIC**

My Commission Expires:

_6-15-2010_____

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Answers and Responses to First Set of Interrogatories and Requests for Production of Documents has been served on Plaintiffs' Liaison Counsel, Russ Herman, Defendants' Liaison Counsel, Kerry Miller, and Mazer's counsel, Larry Logsdon, by email delivery on this, the _16th_ day of February, 2010.

_____
STEPHEN W. MULLINS

CUSTOMER COPY

# MAZER
DISCOUNT HOME CENTERS

## BUILDING SUPPLY, FLOORING AND APPLIANCE CENTER
2 South 41st Street
Birmingham, AL 35222
(205) 591-6565 • Fax (205) 595-5521

## FURNITURE, BEDDING, FLOORING AND APPLIANCE CENTER
816 Green Springs Hwy.
Homewood, AL 35209-4897
(205) 942-2744 • Fax (205) 986-0229

| | |
|---|---|
| S/O DATE | 2009 ... A 11: 23 |
| S/O NUMBER | 011999 |

**LAST NAME** _____   **FIRST NAME** _____

**STREET ADDRESS**

**CITY** _____   **STATE** _____   **ZIP CODE**

**BUSINESS PHONE** _____   **CELL PHONE** _____   **HOME PHONE**

**CARRIER** _____   **SALESPERSON 1** JAE 467   **SALESPERSON 2**

**SPECIAL INSTRUCTIONS**

**CUST. ID** 192720

### TRANSACTION TYPE
- ☑ SALE
- ☐ - CHANGE ORDER

**ORIGINAL SALES ORDER #** _____   CM #

- ☐ - EVEN EXCHANGE

### TENDER TYPE - CHECK ALL THAT APPLY
- ☐ CASH ........ $ .19
- ☐ CHECK # .... $ 80.71
- ☐ - FINANCE COMPANY ... $
- ☐ - MC / VISA / ATM ..... $
- ☐ - AMEX ................ $
- ☐ - DISCOVER
- ☐ - GIFT CARD
- ☐ - MAZER CHARGE
  ACCT #
  PO OR JOB NAME _____   CREDIT OK ___

### DELIVERY TYPE
- ☑ - CUSTOMER PICKUP
- ☐ - DELIVERY

**DELIVERY DATE**
- ☐ - WILL CALL

**P/U DEADLINE**

| QUANTITY ORDERED | LOADED/OUT TO BE P/U | VENDOR | DESCRIPTION/SKU | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 1 | 100 | MO | 4 x 12 x 1/2  Sheetrock | 7.99 | 799 00 |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |

### ATTENTION CUSTOMER AT PURCHASE    INITIAL ____
- PURCHASES MUST BE PICKED UP OR DELIVERED WITHIN 10 DAYS.
- TENT MERCHANDISE MUST BE PICKED UP WHEN PURCHASED.
- RECEIPT REQUIRED FOR REFUNDS.
- ALL ACCEPTED RETURNS OR EXCHANGES 10 DAYS FROM RECEIPT OF PURCHASE INCLUDING FURNITURE, APPLIANCES, CONSUMER ELECTRONICS, POWER TOOLS, GENERATORS & ACS.
- ALL OTHER RETURNS ACCEPTED 30 DAYS FROM RECEIPT OF PURCHASE.
- NON RETURNABLE ITEMS: TENT SALE MERCHANDISE, LABOR, CUSTOM MADE PRODUCTS, STORE MIXED PAINT & MAZER GIFT CARDS.
- A RESTOCKING FEE OF 25% WILL BE CHARGED ON ASSEMBLED CABINETS, CUT FLOORING & SPECIAL ORDER PRODUCTS, INCLUDING APPLIANCES & FURNITURE UNLESS DEFECTIVE OR PROHIBITED BY LAW. CANCELLATIONS OF SPECIAL ORDER PRODUCTS NOT YET RECEIVED MAY ALSO BE SUBJECT TO A 25% RESTOCKING FEE IF THE PRODUCT HAS BEEN SHIPPED.

### ATTENTION CUSTOMER AT PICKUP / DELIVERY
- Do not exceed 40 MPH when carrying bulky items.
- Inspection of tied down merchandise is customer's responsibility.
- I hereby acknowledge receipt in good condition and correct quantity of the above listed merchandise (with below exceptions if any).

**SIGNED** _____   **DATE** _____

**EXCEPTIONS**

| MAZER DEL/LOADER | CUST. VEHICLE | CUST. TAG | GUARD |
|---|---|---|---|

| | AMOUNT |
|---|---|
| DELIVERY | 891 00 |
| SUB TOTAL | 891 00 |
| SALES TAX | |
| TOTAL | 81690 |

☐ - ORDER COMPLETE _____   DATE

**MAZER**
DISCOUNT HOME CENTERS

BUILDING SUPPLY, FLOORING
AND APPLIANCE CENTER
2 South 41st Street
Birmingham, AL 35222
(205) 591-6565 • Fax (205) 595-5521

FURNITURE, BEDDING, FLOORING
AND APPLIANCE CENTER
816 Green Springs Hwy.
Homewood, AL 35209-4806
(205) 942-2744 • Fax (205) 986-0229

SALE COPY

S/O NUMBER

DELIVERY TYPE - CHECK ALL THAT APPLY
- [ ] CUSTOMER PICKUP
- [ ] DELIVERY
- [ ] WILL CALL

S/O DATE

TENDER TYPE - CHECK ALL THAT APPLY
- [ ] CASH
- [ ] CHECK #
- [ ] FINANCE COMPANY
- [ ] MC / VISA / ATM
- [ ] AMEX
- [ ] DISCOVER
- [ ] GIFT CARD
- [ ] MAZER CHARGE
  ACCT #
  CREDIT OK
  PO OR JOB NAME

LAST NAME    FIRST NAME

STREET ADDRESS

CITY    STATE    ZIP CODE

BUSINESS PHONE    HOME PHONE    CELL PHONE

CASHIER    SALESPERSON 1    SALESPERSON 2

SPECIAL INSTRUCTIONS

TRANSACTION TYPE
- [ ] SALE
- [ ] CHANGE ORDER
- [ ] ORIGINAL SALES ORDER #
- [ ] EVEN EXCHANGE
  CM #

| QUANTITY ORDERED / LOADED OUT TO BE P/U | VENDOR | DESCRIPTION/SKU | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | | 4 x 12 x 11 | 799 | 799 00 |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |

SUB TOTAL
SALES TAX
TOTAL

- [ ] ORDER COMPLETE

ATTENTION CUSTOMER AT PURCHASE    INITIAL
- PURCHASES MUST BE PICKED UP OR DELIVERED WITHIN 10 DAYS.
- TENT MERCHANDISE MUST BE PICKED UP WHEN PURCHASED.
  RECEIPT REQUIRED FOR REFUNDS.
- WE ACCEPT RETURNS OR EXCHANGES 10 DAYS FROM RECEIPT OF PURCHASE INCLUDING FURNITURE, APPLIANCES, CONSUMER ELECTRONICS, POWER EQUIP, GENERATORS & A/C'S.
- ALL OTHER RETURNS ACCEPTED 30 DAYS FROM RECEIPT OF PURCHASE.
  NO RETURNS OR REFUNDS ON SPECIAL ORDER MERCHANDISE, LABOR, CUSTOM MADE PRODUCTS, STORE MIXED PAINT & MAZER GIFT CARDS.
- A RESTOCKING FEE OF 25% WILL BE CHARGED ON ASSEMBLED CABINETS, CUT FLOORING & SPECIAL ORDER PRODUCTS, INCLUDING APPLIANCES & FURNITURE UNLESS DEFECTIVE OR PROHIBITED BY LAW. CANCELLATIONS OF SPECIAL ORDER PRODUCTS NOT YET RECEIVED, MAY ALSO BE SUBJECT TO A 25% RESTOCKING FEE IF THE PRODUCT HAS BEEN SHIPPED.

ATTENTION CUSTOMER AT PICKUP / DELIVERY
- Do not exceed 40 MPH when carrying bulky items.
- Inspection of tied down merchandise is customer's responsibility.
- I hereby acknowledge receipt in good condition and correct quantity of the above listed merchandise (with below exceptions if any).

SIGNED    DATE

EXCEPTIONS

MAZER DEL/LOADER    CUST/VEHICLE    CUST/TAG    GUARD

CUSTOMER COPY

**MAZER**
DISCOUNT HOME CENTERS

**BUILDING SUPPLY CENTER**
2 South 41st Street
Birmingham, AL 35222
Phone (205) 591-8565
Fax (205) 595-8521

**FURNITURE CENTER**
816 Green Springs Highway
Homewood, AL 35209-4887
Phone (205) 942-2744
Fax (205) 942-9892

CM NUMBER
CM DATE    '11 A 10 15

LAST NAME Safford
FIRST NAME Sample

STREET ADDRESS

CITY          STATE          ZIP CODE

BUSINESS PHONE          HOME PHONE

SALESPERSON 1  1167
SALESPERSON 2

CARRIER  Jazzy

ORIGINAL SO DATE  1/24/08
ORIGINAL SO NUMBER  0193224
18670

RETURNED BY
☐ - MAZER PICKUP
DATE
☑ - CUSTOMER RETURN
DATE  2/11/08

TRANSACTION TYPE
☐ - CANCEL SALE
☐ - CANCEL ITEM
☐ - CUSTOMER SATISFY
☑ - RETURN GOODS
☐ - EXCHANGE GOODS
NEW SO #

DISBURSEMENT TYPE
CHECK ALL THAT APPLY
☐ - CASH
☑ - REFUND CHECK #  273.25
☐ - FINANCE COMPANY
☐ - MAZER CHARGE
☐ - MC / VISA / ATM
☐ - DISCOVER
☐ - AMEX
☐ - APPLY TO SO #
☐ - GIFT CARD
ACCT #

| | QUANTITY | STOCK NUMBER | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 1 | 32 | 1/2 4X12 | Sheetrock | 7.99 | 255 68 |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |

CR customer 1 am picking up now
CR - Full REFUND

PICKED UP BY          RECEIVED BY          CHECKED BY

RESTOCKING CHARGE          CONDITION OF MERCHANDISE

DELIVERY

SUB TOTAL  255 68

TAX
17.57

TOTAL  273.25

MGR APPROVAL

SPECIAL INSTRUCTIONS  do not need

• I HAVE RETURNED MERCHANDISE

• REFUND CHECKS WILL BE AVAILABLE FOR PICKUP OR MAILING IN 7 WORKING DAYS

• A RESTOCKING FEE OF 25% WILL BE CHARGED ON ASSEMBLED CABINETS, CUT FLOORING AND SPECIAL ORDER PRODUCTS, INCLUDING APPLIANCES AND FURNITURE UNLESS DEFECTIVE OR PROHIBITED BY LAW. CANCELLATION OF SPECIAL ORDER PRODUCTS NOT YET RECEIVED MAY ALSO BE SUBJECT TO A 25% RESTOCKING FEE IF THE PRODUCT HAS BEEN SHIPPED.

CUSTOMER





**First
Environmental
Laboratories, Inc.**

IL ELAP / NELAC Accreditation # 100292

1600 Shore Road • Naperville, Illinois 60563 • Phone (630) 778-1200 • Fax (630) 778-1233

July 17, 2009

Ms. Lori Streit
**UNIFIED ENGINEERING, INC.**
3056 Weber Drive
Aurora, IL   60504

Project ID:   Ledford  4120
First Environmental File ID: 9-2716
Date Received: July 09,  2009

Dear Ms. Lori Streit:

The above referenced project was analyzed as directed on the enclosed chain of custody record.

All Quality Control criteria as outlined in the methods and current IL ELAP/NELAP have been met unless otherwise noted.  QA/QC documentation and raw data will remain on file for future reference. Our accreditation number is 100292 and our current certificate is number 002205: effective 02/06/09 through 02/28/10.

I thank you for the opportunity to be of service to you and look forward to working with you again in the future.  Should  you  have  any  questions  regarding any of the enclosed analytical  data  or  need additional  information,  please  contact me at (630) 778-1200 or neal@firstenv.com.

Sincerely,

Neal Cleghorn
Project Manager

Page  1 of 3



**First**
**Environmental**
**Laboratories, Inc.**

IL ELAP / NELAC Accreditation # 100292

1600 Shore Road • Naperville, Illinois 60563 • Phone (630) 778-1200 • Fax (630) 778-1233

## Case Narrative

**UNIFIED ENGINEERING, INC.**

Project ID:       **Ledford  4120**

First Environmental File ID:    **9-2716**

Date Received:    **July 09, 2009**

| Flag | Description | Flag | Description |
|---|---|---|---|
| < | Analyte not detected at or above the reporting limit. | L+ | LCS recovery outside control limits; high bias. |
| B | Analyte detected in associated method blank. | L- | LCS recovery outside control limits; low bias. |
| C | Identification confirmed by GC/MS. | M | MS recovery outside control limits; LCS acceptable. |
| D | Surrogates diluted out; recovery not available. | M+ | MS recovery outside control limits high bias; LCS acceptable. |
| E | Estimated result; concentration exceeds calibration range. | M- | MS recovery outside control limits low bias; LCS acceptable. |
| F | Field measurement. | N | Analyte is not part of our NELAC accreditation. |
|  |  | ND | Analyte was not detected using a library search routine; No calibration standard was analyzed. |
| G | Surrogate recovery outside control limits; matrix effect. | P | Chemical preservation pH adjusted in lab. |
| H | Analysis or extraction holding time exceeded. | Q | The analyte was determined by a GC/MS database search. |
| J | Estimated result; concentration is less than calib range. | S | Analyte was sub-contracted to another laboratory for analysis. |
| K | RPD outside control limits. | T | Sample temperature upon receipt exceeded 0-6°C |
| RL | Routine Reporting Limit (Lowest amount that can be detected when routine weights/volumes are used without dilution.) | W | Reporting limit elevated due to sample matrix. |

All quality control criteria, as outlined in the methods, have been met except as noted below or on the following analytical report.

**Sample Batch Comments:**

Date and time of sample collection was not provided.



**First**
**Environmental**
**Laboratories, Inc.**

IL ELAP / NELAC Accreditation # 100292

1600 Shore Road • Naperville, Illinois 60563 • Phone (630) 778-1200 • Fax (630) 778-1233

## Analytical Report

| | | | |
|---|---|---|---|
| ·Client: | UNIFIED ENGINEERING, INC. | Date Collected: | |
| Project ID: | Ledford  4120 | Time Collected: | |
| Sample ID: | 4120 | Date Received: | 07/09/09 |
| Sample No: | 9-2716-001 | Date Reported: | 07/17/09 |

Results are reported on an "as received" basis.

| Analyte | | Result | R.L. | Units | Flags |
|---|---|---|---|---|---|
| **Total Metals** | **Method: 6020A** | | **Preparation Method 3050B** | | |
| Analysis Date: 07/16/09 | | | Preparation Date: 07/09/09 | | |
| Strontium | | 3,480 | 2.0 | mg/kg | N |

Page 3 of 3



**Unified Engineering Inc.**

3056 Weber Drive
Aurora, Illinois 60502

Phone: 630/851-4214
Fax: 630/851-5957

www.unified-eng.com

## Chain of Custody Form

Project Name: _Ledford_
Project Number: _4120_
Date: _7/9/09_

Description of each sample:
_ICP for Sr_
_normal turnaround_

_Sample 4120_      _G-2716-001_

Released by:

**UNIFIED ENGINEERING, INC.**
**3056 WEBER DRIVE**
**AURORA, IL 60504**

Company

Address  AURORA, IL 60504 2

Phone   630  851  5363
Name   C. Strei t

Signature   _Streit_

Form of shipment   _hand del._
Date   _7/9/09_

Received by:

Company

Address

Phone
Name

Signature

Date   _7/9/09_   _1155_

Plaintiff Profile Form - Residential Properties

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

<table>
<tr><td>IN RE: CHINESE MANUFACTURED DRYWALL<br>PRODUCTS LIABILITY LITIGATION<br>THIS DOCUMENT RELATES TO: ALL CASES</td><td>MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON</td></tr>
</table>

**For Internal Use Only**

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

### Section I. Property Information

| | |
|---|---|
| Name Property Owner | Samuel R. Ledford |
| Address of Affected Property | 10308 Renfroe Road |
| | City: Alpine    State: AL    Zip: 35014 |
| Is this Property:* | Residential ☑   Commercial ☐   Governmental ☐ |
| Name of Person Completing this Form | Samuel R. Ledford |
| Is above your primary residence? | Yes ☑ No ☐ |
| Mailing Address (if different) | |
| | City:    State:    Zip: |
| Phone: | 256-239-0401 |

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Check one:   Owner-Occupant ☑   Owner Only ☐   Renter-Occupant ☐

Represented By:
Address:
Daniel K. Bryson *
Lewis & Roberts, PLLC
PO Box 17529
Raleigh, NC 27619
Phone: 919-981-0191
Case No. /Docket Info:    MDL Case No.: 2:09-cv-04292

### Section II. Insurance Information

| | |
|---|---|
| Homeowner/ Renter Insurer: | Best Insurors, Inc. |
| Policy #: | 077ATK7034769 |
| Agent: | n/a |
| Address: | 4211 W. Boy Scourt Blvd. |
| | City: Tampa    State: FL    Zip: 33548 |
| Phone: | 866-465-9634 |

**+ Attach Copy of Insurance Declaration Page**

### Section III. Claimant Information

| Name of Claimant | Dates Occupied Move-in | Dates Occupied Leave | Gender | Date of Birth | Are you claiming personal injuries?* Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| Samuel R. Ledford | 12-10-2008 | | M☑ F☐ | 06-28-1967 | Yes☑ No☐ | Owner-Occupant |
| Sarah J. Ledford | 12-10-2008 | | M☐ F☑ | 06-15-1969 | Yes☑ No☐ | Occupant |
| Lacortney L. Ledford | 12-10-2008 | | M☑ F☐ | 05-03-1987 | Yes☑ No☐ | Occupant |
| Markeyia R. Ledford | 12-10-2008 | | M☐ F☑ | 11-30-1990 | Yes☑ No☐ | Occupant |
| | | | M☐ F☐ | | Yes☐ No☐ | |
| | | | M☐ F☐ | | Yes☐ No☐ | |
| | | | M☐ F☐ | | Yes☐ No☐ | |
| | | | M☐ F☐ | | Yes☐ No☐ | |
| | | | M☐ F☐ | | Yes☐ No☐ | |

* Personal injuries include claims for mental anguish and medical monitoring.

Plaintiff Profile Form - Residential Properties

**Section IV. Inspection Information**

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?   Yes ☑ No ☐

    1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?

        1.2. When did the inspection take place?

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   Yes ☑ No ☐

    2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Lori Streit with Unified Engineering, Inc.

        2.2. When was this determination made?   `07-16-2009`

**Section V. Drywall Information**

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| unknown | Made in China | Drywall throughout house |
|  |  |  |
|  |  |  |
|  |  |  |

1.0. Have you, or has anyone on your behalf, sent written notice to your homebuilder, drywall contractor, drywall supplier/ distributor, drywall manufacturer or any other person or entity of your claim that your home contains Chinese-manufactured drywall?   Yes ☐ No ☑

    1.1. If "Yes" to question 1.0 Section V. to whom has any such notice been sent?

        1.2. When was notice sent?

        + Attach copy of notice Sent

2.0. Have you, or has anyone on your behalf, made a request to anyone that your home be repaired as a result of the presence of Chinese-manufactured drywall in your home?   Yes ☐ No ☑

    2.1. If "Yes" to Question 2.0. Section V. to whom has the request been made?

        2.2. When was the request made?

        + Attach copy of written request

3.0. Has your home been repaired in any way as a result of the presence of Chinese-manufactured drywall?   Yes ☐ No ☑

    3.1. If "No" to question 3.0. Section V. Have any such repairs to your home been offered?   Yes ☐ No ☑

        3.1.a. If "Yes" to question 3.1. Section V. When was the offer made?

        3.1.b. Who made the offer?

    3.2. If "Yes" to question 3.0. Section V. Have any such repairs to your home been initiated?   Yes ☐ No ☑

        3.2.a. Have any such repairs to your home been completed?   Yes ☐ No ☑

        3.2.b. Who paid or is paying for the repairs?

        3.2.c. What was/is the total cost?

        3.2.d. Have samples of the Chinese-manufactured drywall been kept?   Yes ☑ No ☐

        3.2.e. Who possesses the samples?   Samuel Ledford-can get from house

**Section VI. Questions for Florida Residents Only***

1.0. Have you, or anyone on your behalf, sent any notices under Chapter 558 of the Florida Statutes regarding the presence of Chinese-manufactured drywall in your home?   Yes ☐ No ☑

    1.1. If "Yes" to Question 1.0., Section VI. To whom has any such notice been sent?

        1.2. When was notice sent?

        + Attach copy of notice

2.0. Have you received any responses to your notice under Chapter 558?   Yes ☐ No ☑

    2.1. If "Yes" to Question 2.0., Section VI. From whom did you receive such notice?

        2.2. When was it received?

3.0. Has anyone inspected your home in response to your notice under Chapter 558?   Yes ☐ No ☑

    3.1. If "Yes" to Question 3.0., Section VI. Who inspected your home?

4.0. Have you received a written offer to repair your home in response to your notice under Chapter 558?   Yes ☐ No ☑

    4.1. If "Yes" to Question 4.0., Section VI. From whom did you receive this written offer?

        4.2. When was it received?

5.0. Have any repairs been performed in your home in response to your notice under Chapter 558?   Yes ☐ No ☑

    5.1. If "Yes" to Question 5.0., Section VI. Who performed these repairs?

        5.2. What repairs were performed?

        5.3. When were the repairs performed?

*By completing this section, plaintiffs neither agree with the applicability of Chapter 558 of the Florida Statutes to this action or plaintiffs' claims, nor do plaintiffs waive any righs or agree that such notice is required.  Defendants contend that plaintiffs are not relieved of any obligations they may or may not have arising under Chapter 558 of the Florida Statutes, and defendants are not waiving any rights they may have under said statute.

Plaintiff Profile Form - Residential Properties

## Section VII. Home Information

| Approx. Sq. Ft. of House: | 1957 | | Yes | No |
|---|---|---|---|---|
| Estimated Sq. Ft. of Drywall | 3264 | Occupied | ✓ | |
| Height of Interior Walls | 8 & 10 ft | Year-round | ✓ | |
| Number of Bedrooms: | 3 | Summer | | ✓ |
| Number of Bathrooms: | 2 | Winter | ✓ | |

### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | ✓ | |
| Copper Piping | | | |
| Copper Fixtures | ✓ | | |
| Other Fixtures | ✓ | | |
| Were repairs made to the plumbing system? | | ✓ | |
| Dates: | | | |

### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | | | |
| Switches | | | |
| Main Panel | | | |
| 2nd Panel | | | |
| Exposed Copper Wires | ✓ | | |
| Were repairs made to the electrical system? | | ✓ | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

## Section VIII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | 06-08-2007 | Completion Date | 07-15-2007 |
|---|---|---|---|
| Move In Date: | 12-10-2008 | Date Acquired Home | 05-25-2007 |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | | Completion Date | |
|---|---|---|---|
| Move In Date: | | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | ✓ |
| First Floor: Full Wall of drywall replaced | | | ✓ |
| Second Floor: Any drywall replaced | | | ✓ |

## Section IX. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

Jim Walter Homes, Inc.

Address:   c/o The Corporation Company
2000 Interstate Drive, Suite 204

City:   Montgomery   State:   AL   Zip:   36109

Phone:   000-000-0000

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

## Section X. Drywall Installer

Drywall Installer's Name:

homeowner, family and friends

Address:   n/a

City: n/a   State: AL   Zip: 00000

Phone:   000-000-0000

## Section XI. Drywall Supplier

Drywall Supplier's Name:

Mazer's Discounty Home Centers, Inc.

Address:   c/o Michael Mazer-Registered Agent
2 South 41st Street

City:   Birmingham   State: AL   Zip: 35222

Phone:   205-942-2744

## Section XII. Verification of Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| _Samuel Ledford_ | 11-16-09 | _Lavetanie Ledford_ | 11-16-09 |
|---|---|---|---|
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| _MarKeyia Ledford_ | 11-16-09 | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| _Darah Ledford_ | 11-16-09 | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

POL                                    DECLARATIO  AGE          228



**AMERICAN MODERN HOME INSURANCE COMPANY**

**CERTIFICATE OF INSURANCE**                    **POLICY NUMBER:  077ATK7034769**

---

**NAMED INSURED:**
WALTER MORTGAGE COMPANY
PO BOX 505
AMELIA OH 45102

**AGENT 052114:**
BEST INSURORS INC
4211 W BOY SCOUT BLVD
TAMPA FL 33548
PHONE: (866)465-9634

**MAIL TO:**  N077 052114 ATK7034769 01
SAMUEL LEDFORD
10308 RENFROE RD
ALPINE AL 35014

**BROKER 000000:**

**POLICY PERIOD:**
**FROM:** APR 21, 2009        **TO:** APR 21, 2010
12:01 A.M. STANDARD TIME
AT INSURED PROPERTY ADDRESS

**INSURED PROPERTY:**
1030 RENFROE RD
ALPINE AL 35014

**LIENHOLDER 1 ACCT:** 2011220000
WALTER MORTGAGE COMPANY
PO BOX 505
AMELIA OH 45102

THIS CERTIFICATE OF INSURANCE IS ISSUED PURSUANT TO THE MORTGAGEE'S MASTER POLICY.

THIS POLICY PROVIDES ONLY THE FOLLOWING COVERAGES FOR THIS UNIT:

| SECTION | ITEM | COVERAGE | LIMIT | PREMIUM |
|---------|------|----------|-------|---------|
| 1 | COVERAGE A | DWELLING (DP-1),FIRE & EXT. COV. | $73,634 | $1,892.00 |
| 1 | DEDUCTIBLE | SUBJECT TO ALL PERILS | $500 | |
| 1 | DEDUCTIBLE | SUBJECT TO HURRICANE | $1,473 | |

MINIMUM WRITTEN AND/OR EARNED MAY APPLY     TOTAL PREMIUM        $1,892.00

****THIS POLICY DOES NOT INCLUDE VANDALISM AND MALICIOUS MISCHIEF COVERAGE.***
****THIS POLICY DOES NOT INCLUDE FLOOD COVERAGE.****
****THIS POLICY DOES NOT INCLUDE EARTH MOVEMENT AND EARTHQUAKE COVERAGE.****
IF YOU CANCEL THIS POLICY EARLY, A MINIMUM EARNED PREMIUM OF $100 MAY APPLY.

**(CONTINUED ON REVERSE SIDE)**

ENDORSEMENT FORMS APPLICABLE TO THIS POLICY:
BMS01     09/90;

**INSURED NAME:** WALTER MORTGAGE COMPANY          **POLICY NUMBER:**  077ATK703476!

**ADDITIONAL INSURED:**                    **LIENHOLDER 2:**
  SAMUEL LEDFORD                           NONE
  10308 RENFROE RD
  ALPINE AL 35014

PLEASE REVIEW THE INFORMATION CONTAINED IN THIS POLICY
IF ANY INFORMATION IS INCORRECT, PLEASE CONTACT CUSTOMER SERVICE:

AMERICAN MODERN HOME INSURANCE COMPANY
(800) 543-2644

CLAIMS TELEPHONE NUMBER: 1-800-543-2644
HOURS: 8:00 A.M. - 7:00 P.M. EST/EDT

AMERICAN MODERN INSURANCE GROUP
P.O. BOX 5323
CINCINNATI, OHIO 45201-5323

ALABAMA
FINANCIN AGREEMENT                                          JIM WALTER HOMES, INC.

THIS AGREEMENT made this ___25 th___ day of _____MAY_____ , 20_07_
between SAMUEL LEDFORD & LACORTNEY LEDFORD
hereinafter referred to as "Buyer",
whose address is 10308 RENFROE ROAD, ALPINE, AL, 35014
and JIM WALTER HOMES, INC., a Florida corporation, State Contractor's License File No. 523, having its principal office
at 4211 W. Boy Scout Boulevard, Tampa, Florida 33607 and its local place of business at
201 Highway 78 East, Oxford, AL, 36203                                                    hereinafter referred to as
"Seller."

WITNESSETH:

1. Description of Property. Seller agrees to build a house, as set forth in that certain Construction Agreement and
including the plans and specifications, and Exhibits A, B, C, and D according to the standards as set forth in the Limited
Warranty (the "House"), all of which are incorporated herein by reference, on the property of Buyer, located at:
___TBD RENFROE RD, ALPINE, AL___
and having a legal description, as provided by Buyer, as follows:

PLEASE SEE LEGAL DESCRIPTION ATTACHED.

### FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br>The cost of your credit at a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled (not including any down payment). | TOTAL SALES PRICE<br>The total cost of your purchase on credit, including your down payment of $0.00 |
|---|---|---|---|---|
| 11.25  % | $ 183,827.20 | $ 73,634.00 | $ 257,461.20 | $ 257,461.20 |

Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT . | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 360 | 715.17 | monthly, beginning the 5th day of the month following the 45th day after release of the House to the Buyer. |

You may obtain property insurance from anyone you want that is acceptable to Creditor. If you get insurance through
Best Insurors, Inc. your annual premium is estimated to be $ 661.00 _____ for the one year term of the policy.
Security: You are giving a security interest in real property together with all improvements now or hereafter placed on
the property located at:
Street address or Rural Route: TBD RENFROE RD _____ City ALPINE ____ State AL.
Late Charge: If a payment is late, you will be charged 5% of the unpaid portion of the installment in default or $.50,
whichever is greater, not to exceed $100.
Prepayment: If you pay off early, you will not have to pay a penalty and you will be entitled to a refund of part of the
Finance Charge.
Assumption: This indebtedness cannot be assumed.
An itemization of the amount financed is provided below.
See the remainder of this contract and the documents signed in conjunction with it for any additional information about
nonpayment, default, any required payment in full before the scheduled date, and prepayment refunds and penalties.

| Itemization of Amount Financed: | | |
|---|---|---|
| Cash Price $ 73,634.00 | Less Down Payment of $ 0.00 | Amount Financed $ 73,634.00 |

2. Time Price; Payment. Buyer acknowledges that Buyer has been offered the opportunity to pay for the House in
full immediately upon its completion, in which case Buyer would pay a cash price of $_____73,634.00_____
However, Buyer has made a down payment of $_____0.00_____ and has elected and agrees to purchase
said House on credit over time for a Time Price of $_____$ 257,461.20_____ which includes a Finance Charge of
$_____183,827.20_____ calculated at an Annual Percentage Rate of _____11.25____ % per annum. The Finance
Charge begins to accrue thirty (30) days prior to the due date of the first scheduled installment.

5.  Soi  ting. Seller assumes no responsibility or obligation fo... nd in fact disclaims any responsibility or obligation for any testing, study or knowledge with respect to whether Buyer's site is suitable or proper for the construction of the House. Buyer hereby expressly warrants to Seller that Buyer has made and performed any and all reasonable or necessary testing, study, and investigation, or that Buyer has knowingly elected to forego any such testing, study and investigation and that Buyer's site is in fact, or deemed by Buyer to be, suitable and proper for the construction of the House to be built by Seller. Buyer acknowledges, understands and agrees that, in agreeing to build the House on the site selected by Buyer, Seller is relying upon Buyer's representation and warranty that the site is in fact suitable and proper for the construction of the House, including but not limited to the suitability and propriety of the foundation option selected by Buyer.

6.  Footings and Foundation. Seller will be responsible for constructing any concrete footings for walls and piers as described in the Exhibit "B" incorporated herein. Any additional labor and/or materials required by reason of deficiencies in soil conditions not known to Seller until after excavation is completed, which would require extra footings, reinforcing, piers, concrete block or concrete walls, will be paid for by Buyer in addition to the Purchase Price.

7.  Pilings. Unless pilings are specified for this House, either in the plans attached hereto or in Exhibit "A" attached hereto, they are not a part of this contract, will not be provided by Seller and are not included in the price contained in this contract. Unless otherwise required by locally-adopted code, regulation or the like, or unless otherwise agreed in writing by the parties hereto, if pilings are so specified, they shall be set into the ground. The depth into the ground they are to be set will be determined by any relevant, locally-adopted code; if there is no such code, they will be set to the depth established by Seller. In the event Buyer requires that they be set to a depth greater than that determined by code or by Seller, as the case may be, this contract and all related documents, at Seller's option, may be cancelled and rendered null and void, with any downpayment, less expenses actually incurred by Seller, being returned to Buyer. Commencement of construction shall not be deemed a waiver of Seller's right to cancel pursuant to this paragraph.

Unless otherwise specified in writing in this contract and/or the documents relating to it, Seller will install the specified pilings so that the maximum height of the building from the grade as measured from the bottom of the floor joists to the ground surface shall be eight (8) feet. The height of the remainder of the building from the grade is dependent upon the contour, slope or elevation of the ground at the point of installation of each remaining piling and unlevel sites may significantly reduce this eight (8) foot maximum clearance.

8.  Site Preparation; Locating the House on Lot. Buyer is responsible for ensuring the suitability of and preparing the building site for construction. Such preparation includes, but is not limited to, grading and removal of trees, bushes, shrubs, debris and other such material. Buyer is responsible for precisely locating and situating by use of stakes the desired and proper location and position of the House on the building site and in the event Buyer fails to promptly do so, Seller is entitled to do so on Buyer's behalf; however, Seller's doing so shall not relieve Buyer's responsibility for staking the desired and proper location and situation of the House and in the event Seller does so, it shall be conclusively presumed that the location and position of the House are as instructed and desired by Buyer. Buyer is responsible for all clean-up work to the House and the property after Seller has performed its obligations hereunder.

9.  Buyer's Responsibilities. Unless the Buyer has opted on Exhibit "A" for a turnkey stage of completion, this contract between Buyer and Seller is for the construction and sale of a partially-completed House. Seller is required to provide or perform only those items, duties and obligations specifically set forth herein. Any items or work necessary or desirable beyond or in addition to those specifically set forth herein shall be the responsibility of the Buyer. Some such items may include, but are not limited to, the availability, permitting, and installation of a septic system, water, electricity, gas, telephone and other utilities. Buyer is also responsible for obtaining the final Certificate of Occupancy, or its equivalent, for the House unless Buyer has opted for the turnkey stage of completion.

10.  Limited Warranty. In conjunction with and as a part of the transaction evidenced by this Construction Agreement, Seller is extending to Buyer a Limited Warranty setting forth the standards pursuant to which the House will be constructed and agreeing to remedy certain items should they become defective during the applicable warranty period. The Limited Warranty is a part of the transaction whereby Buyer has contracted with Seller to construct and sell the House, however, with respect to all matters addressed therein, the Limited Warranty supersedes and controls all other contract documents, discussions and representations. Neither any of the contract documents nor any discussions or representations can change, modify or override the Limited Warranty. The Limited Warranty cannot be changed or altered in any way and neither Buyer nor Seller's agents or employees have any authority to do so.

11.  DISCLAIMER OF ALL OTHER WARRANTIES. TO THE EXTENT SELLER CAN LAWFULLY DO SO, SELLER DISCLAIMS ENTIRELY ANY AND ALL WARRANTIES INCLUDING WARRANTIES OF MERCHANTABILITY, SUITABILITY, HABITABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. SELLER MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, BEYOND THE EXPRESS TERMS AND PROVISIONS OF SAID LIMITED WARRANTY.

12.  Indemnification. Buyer hereby indemnifies Seller for any action(s) taken by Seller in reliance upon the statements made by Buyer herein or directions and instructions given by Buyer to Seller in performing the work contemplated hereunder.

13.  Cancellation of Contract. In the event Buyer fails to perform any activities or duties required of Buyer (e.g., failure of Buyer to prepare site for construction or, where applicable, failure of Buyer to complete construction of Buyer's own foundation, failure to obtain financing from third-party lender or fails to provide land suitable for building, failure to clear up all title or contract issues), which failure prevents Seller from commencing construction for a period of sixty (60) days from the date hereof, Seller, at its option, may cancel this contract and retain or recover from Buyer the costs incurred up to the date notice of such cancellation is given to Buyer. In the event the contract is cancelled for any other reason, Seller retains the right to recover from Buyer the Seller's cost incurred such as the costs of survey, permitting, title search, perk test, recording fees and Seller's lost profits incurred up to the date of cancellation. Thereafter, neither Buyer nor Seller shall have any further claim against the other.

**THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY REGARDLESS OF ANY REPRESENTATION OR STATEMENT TO THE CONTRARY. NEITHER BUYER NOR BUILDER'S AGENT OR REPRESENTATIVE HAS THE AUTHORITY TO CHANGE, ALTER, OR MODIFY ANY OF THE TERMS OR PROVISIONS OF THIS WARRANTY.**

BUYER HEREBY ACKNOWLEDGES AND CONFIRMS TO BUILDER (1) THAT THE FOREGOING WARRANTY (WHICH INCLUDES THE "AGREED STANDARDS") IS THE ONLY WARRANTY MADE OR GIVEN BY BUILDER CONCERNING OR APPLICABLE TO THE HOUSE TO BE BUILT BY BUILDER; (2) THAT NO ONE HAS MADE OR GIVEN TO BUYER ANY STATEMENTS OR REPRESENTATIONS THAT ARE IN ANY WAY CONTRARY TO THE TERMS AND PROVISIONS OF THE WARRANTY; (3) THAT BUYER HAS READ AND UNDERSTANDS THE WARRANTY; (4) THAT NO ONE HAS THE AUTHORITY TO VARY OR CONTRADICT ANY OF THE TERMS OR PROVISIONS OF THE WARRANTY; (5) THAT BEFORE ENTERING INTO THE CONTRACT WITH BUILDER, BUILDER HAS REQUESTED THAT BUYER FULLY EXAMINE THE MODELS AND BUYER HAS EXAMINED THE MODELS AT BUILDER'S NEW HOME GALLERY AS FULLY AS BUYER DESIRED OR BUYER HAS KNOWINGLY ELECTED NOT TO EXAMINE SAID MODELS; (6) THAT THE QUALITY AND PERFORMANCE OF THE HOUSE AND ITS CONSTRUCTION SHALL BE PURSUANT TO THE AGREED STANDARDS CONTAINED IN THIS WARRANTY.

The following acknowledgment to be completed in **ILLINOIS** and **MISSOURI** only:

BUILDER HEREBY EXPRESSLY DISCLAIMS THE IMPLIED WARRANTY OF HABITABILITY CREATED BY CASE LAW IN THE STATE IN WHICH THE HOUSE WILL BE BUILT, AND ANY OTHER STATUTORY IMPLIED WARRANTY OF HABITABILITY. THE CONSEQUENCE OF SUCH DISCLAIMER BY BUILDER IS THAT, EXCEPT AS EXPLICITLY STATED IN THIS LIMITED WARRANTY DOCUMENT, BUILDER WILL NOT BE LIABLE IF THE HOUSE IS NOT OF REASONABLE STRUCTURAL QUALITY AND IS NOT REASONABLY FIT FOR USE AS A RESIDENCE. BUILDER'S SOLE AND EXCLUSIVE WARRANTY GIVEN TO BUYER IN CONNECTION WITH THIS AGREEMENT IS THE LIMITED WARRANTY EXPRESSLY SET FORTH HEREIN. BUYER'S INITIALS ADJACENT TO THIS PARAGRAPH ARE INTENDED AS AND SHALL BE EVIDENCE OF (1) BUYER'S ACKNOWLEDGMENT OF BUILDER'S DISCLAIMER OF SUCH IMPLIED WARRANTY OF HABITABILITY AND OF BUYER'S ACCEPTANCE OF THE LIMITED WARRANTY SET FORTH HEREIN AS THE SOLE AND EXCLUSIVE WARRANTY OFFERED BY BUILDER IN CONNECTION WITH THE SALE OF THE HOUSE, AND (2) BUYER'S KNOWING RELINQUISHMENT OF THE PROTECTION OF THE IMPLIED WARRANTY OF HABITABILITY AND ALL OTHER IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, SUITABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

______ (Buyer's Initials)

______ (Buyer's Initials)

I hereby acknowledge that I received Jim Walter Homes, Inc. and Neatherlin Homes, Inc., Limited Warranty Booklet and have read and understand the above statements concerning my warranty on this ______ day of ______________, 20____.

Samuel R Ledford
Buyer

Lelorthay Ledford
Buyer

HBG 1205 (REV. 6/05)

# JIM WALTER HOMES, INC.

Branch __Jim Walter - Oxford__

## RECEIPT

I/we hereby acknowledge receipt of a copy of the Construction Agreement; Financing Agreement; promissory note (not applicable in TX); the mortgage, deed of trust, deed to secure debt or mechanic's lien contract; Exhibit "A" entitled Package, Option and Additions; Exhibit "B" entitled Specifications and Data Rider; Exhibit "C" entitled New Construction Insurance Disclosure; Exhibit "D" entitled Arbitration Agreement; Notice of Cancellation; Limited Warranty (not applicable IN, LA, MD); the Escrow Account Designation Form; the building plans of the house to be constructed by Jim Walter Homes, Inc.; *Your Jim Walter Home: An Information Manual for the New Homeowner*; and *Our Policy Regarding Your Privacy.*

I/we certify that all these documents were in complete form at the time I/we signed them.

I/we certify that no representations or guarantees other than set forth in the above described documents have been made. I/we understand that any changes in design, specifications, or materials to be furnished must appear in the contract; that any changes or modifications thereto must be in writing and signed by the parties; and that the Limited Warranty cannot be changed or altered in any way.

I/we certify that prior to entering into this contract I/we have not received as an inducement to entering into said contract any promise of any rebate, discount, commission or other valuable consideration for referral of sales to Jim Walter Homes, Inc.

Dated this ___25___ day of _____May_____, 20_07_.

_Samuel L. Ledford_
Buyer        SAMUEL LEDFORD

_Lacortney Ledford_
Witness _____    Buyer        LACORTNEY LEDFORD

JW 321 (Rev.5/07)        Page 1 of 1    1 Original - Home Office/1 Original - Customer



# LIMITED WARRANTY



**Jim Walter HOMES**

The nation's largest builder of on-your-lot, single-family homes.

**NEATHERLIN HOMES**

JIM WALTER HOMEBUILDING GROUP
JIM WALTER HOMES, INC.
NEATHERLIN HOMES, INC.
LIMITED WARRANTY

We at Jim Walter Homes, Inc. and Neatherlin Homes, Inc., (the "Builder" or "Seller"), are pleased to extend to you (sometimes referred to as the "Buyer") this Limited Warranty, which includes the Code Standards and Performance Standards (the "Agreed Standards"), (all of which comprise and is hereafter referred to as the "Warranty"), which is subject to the conditions and limitations described herein below. The following paragraphs specify who may take advantage of this Warranty, how to take advantage of it, the time limitations imposed under the Warranty, the extent of and items covered by the Warranty, the quality and performance standards applicable to the Warranty, exclusions from coverage by the Warranty, ways in which Builder may remedy claims and a variety of other items of information important to you. THIS WARRANTY IS A PART OF YOUR CONTRACT WITH BUILDER, WHICH CONTRACT IS HEREBY INCORPORATED BY REFERENCE, AND YOU ARE AGREEING THAT YOUR HOUSE WILL BE BUILT ACCORDING TO THE PERFORMANCE STANDARDS AND OTHER STANDARDS SET FORTH IN THE WARRANTY. YOU MUST FULFILL THE CONDITIONS OF THIS WARRANTY IN ORDER TO TAKE ADVANTAGE OF THIS WARRANTY, AND WE STRONGLY SUGGEST THAT YOU KEEP IT WITH YOUR PERMANENT RECORDS.

DISCLAIMER OF ALL OTHER WARRANTIES (EXCEPT IN TENNESSEE, MISSISSIPPI, KANSAS, VIRGINIA AND WEST VIRGINIA)
THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS ENTIRELY ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, SUITABILITY, HABITABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.  SELLER MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, BEYOND THE EXPRESS TERMS AND PROVISIONS OF THIS WARRANTY.

DISCLAIMER OF ALL OTHER WARRANTIES (TENNESSEE ONLY)
THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS ENTIRELY ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, SUITABILITY, HABITABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, WORKMANSHIP AND/OR MATERIALS.  SELLER MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, BEYOND THE EXPRESS TERMS AND PROVISIONS OF THIS WARRANTY.

DISCLAIMER OF ALL OTHER WARRANTIES (MISSISSIPPI ONLY)
THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS ENTIRELY ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF SUITABILITY AND HABITABILITY.  SELLER MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, BEYOND THE EXPRESS TERMS AND PROVISIONS OF THIS WARRANTY.

DISCLAIMER OF ALL OTHER WARRANTIES (VIRGINIA ONLY)
TO THE EXTENT SELLER CAN LAWFULLY DO SO, SELLER DISCLAIMS ENTIRELY ANY AND ALL WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY, SUITABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.  SELLER MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, BEYOND THE EXPRESS TERMS AND PROVISIONS OF THIS WARRANTY.

HBG 1205 (REV. 6/05)

THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY

MOLD DISCLAIMER. WHETHER OR NOT BUYER AS A HOMEOWNER EXPERIENCES MOLD GROWTH DEPENDS LARGELY UPON HOW BUYER MANAGES AND MAINTAINS THE HOUSE. BUILDER'S RESPONSIBILITY IS LIMITED TO CONDITIONS BUILDER CAN CONTROL. AS EXPLAINED THROUGHOUT THIS WARRANTY, BUILDER WILL REMEDY DEFECTS IN BUILDER'S WORK. HOWEVER, BECAUSE MOLD ITSELF IS NOT A DEFECT, BUILDER WILL NOT BE RESPONSIBLE FOR DAMAGES ASSOCIATED WITH THE FORMATION OR CONTINUED EXISTENCE OF MOLD IN THE HOUSE, WHETHER THE FORMATION OR CONTINUED EXISTENCE OF MOLD RESULTS FROM DEFECTIVE CONSTRUCTION OR NOT. THE DAMAGES FOR WHICH BUILDER DISCLAIMS LIABILITY INCLUDE BUT ARE NOT LIMITED TO (I) PROPERTY DAMAGE, (II) PERSONAL INJURY, (III) LOSS OF INCOME, (IV) EMOTIONAL DISTRESS, (V) DEATH, (VI) LOSS OF USE OF THE HOUSE, (VII) LOSS OF VALUE FROM THE HOUSE AND (VIII) ANY OTHER ADVERSE HEALTH EFFECTS.

THIS WARRANTY IS A PART OF THE TRANSACTION WHEREBY YOU HAVE CONTRACTED WITH BUILDER TO CONSTRUCT AND SELL THE HOUSE TO YOU; HOWEVER WITH RESPECT TO ALL MATTERS ADDRESSED HEREIN, THIS WARRANTY SUPERSEDES AND CONTROLS ALL OTHER CONTRACT DOCUMENTS, DISCUSSIONS AND REPRESENTATIONS. NEITHER ANY OF THE CONTRACT DOCUMENTS NOR ANY DISCUSSIONS OR REPRESENTATIONS CAN CHANGE, MODIFY OR OVERRIDE THIS WARRANTY.

Who may take advantage of this Warranty

The Warranty applies only to the house that is built pursuant to the contract of which this Warranty is a part (the "House"). This Warranty is extended to you, Buyer, as the first owner to occupy the House as a residence. The coverage applies whether Buyer occupies the House as his/her primary or a secondary residence. However, all warranty coverage shall automatically cease if Buyer stops occupying the House as his/her residence - that is, if Buyer lets someone else occupy the House while Buyer owns it or rents the House to tenants. All warranty coverage provided herein, to the extent that it is not expired pursuant to the provisions of this Warranty, shall be available to any subsequent owner of the House who occupies the House as a primary or secondary residence, and to any mortgage lender or similar creditor who acquires title to the House; except that the warranty coverage otherwise remaining hereunder shall automatically terminate if Builder or any affiliate or subsidiary of Builder, or any assignee thereof, acquires title to the House.

How to take advantage of this Warranty

If Buyer notes defects covered by this Warranty and wishes to make a claim hereunder, **Buyer must notify Builder in writing** as soon as possible after the occurrence and, in any event, in the time period(s) specified below. If the Warranty Period (as said term is hereinafter defined) is one (1) year or five (5) years, Buyer has (i) 90 days after the occurrence of the defect or condition requiring remedy or (ii) the end of the applicable Warranty Period, whichever occurs first, in which to provide written notice to the Builder. Thus, if the amount of time remaining in the applicable Warranty period is less than 90 days, Buyer must notify Builder in writing of a claim prior to the end of the Warranty Period. As explained later, the Warranty Period for some items is 30 days and in that situation, Buyer has only until the end of the 30 day period to notify Builder in writing of a claim. Written notice must be given to Builder at the following address and if mailed must be postmarked in accordance with the just-stated time periods: **JIM WALTER HOMES, INC., POST OFFICE BOX 31601, TAMPA, FLORIDA 33631-3601, ATTENTION: HOME WARRANTY DEPARTMENT.** For Buyer's convenience in filing a claim, Builder is including in this Warranty two Warranty Claim Forms. Builder prefers that Buyer use the enclosed forms but any form which contains the same information and adequately describes the claim is acceptable. BUYER'S COMPLIANCE WITH THE FOREGOING WARRANTY CLAIM PROVISIONS IS A REQUIREMENT AND CONDITION PRECEDENT TO BUYER'S ENTITLEMENT TO AND/OR OBTAINING OF ANY REMEDY.

THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY

3

Time Limitations for Warranty Coverage

Commencement/Release

Coverage under this Warranty generally begins on the date Builder substantially completes its contract obligations and releases the House to Buyer. Such date shall have no relationship to the date of governmental inspections, if any, performed or to be performed in the future; or to the issuance of a certificate of occupancy, if appropriate; and failure of Buyer to seek or obtain either of these actions shall not preclude such release. Such release of the House shall be effected by and shall be evidenced by the earliest of the following:

1.   After Builder believes that it has substantially performed its contract obligations, Buyer will be asked to sign a "Tender Acknowledgment/Completion Certificate" (the "Acknowledgment") and, in Texas, an additional document titled Certificate of Completion. When Buyer signs the Acknowledgment and, in Texas, the Certificate of Completion, release of the House shall be at that time; or

2.   After Builder believes that it has substantially performed its contract obligations, but Buyer is unavailable or unwilling to sign the Acknowledgement and, in Texas, the Certificate of Completion, Builder will deliver to Buyer a completion notice to the most recent address of Buyer provided by Buyer to Builder. The date appearing on such completion notice shall be the day of release of the House to Buyer; or

3.   Buyer's occupancy of the House.  Occupancy shall include but not be limited to Buyer's commencement of non-Builder work on the House and Buyer's prevention of Builder from finishing Builder's construction obligations under the building contract.

Note: Substantial performance shall not be precluded by those occasions on which Builder is delayed in completing one or more of the interior finishing options until Buyer completes his/her own work in the part of the House where Builder is delayed.  Additionally, substantial performance shall not be precluded by those occasions on which climatic conditions delay Builder from painting the exterior of the House.

Duration

Under this Warranty, Builder promises to remedy (as said term is hereinafter defined) in accordance with the following time periods (the "Warranty Period"):

1.   The defects and conditions described in Section XIX of the Agreed Standards for a period of thirty (30) days from the commencement of the Warranty;

2.   Any condition in the House with respect to the quality and performance of the materials and workmanship provided by Builder which does not meet or exceed the standards set forth in the Agreed Standards, except as described in Section XIX, for a period of one (1) year from the commencement of the Warranty; and

3.   Major Structural Defects (as said term is hereinafter defined) for a period of five (5)* years from the commencement of the Warranty.
     * In Mississippi, six (6) years

**The remedy of any defect or condition shall not extend or enlarge the original Warranty Period applicable to the item, defect or condition so remedied.**

This Warranty does not address or extend to the future performance of the House (or any appliances, equipment, materials or workmanship used therein or therewith). Builder does not warrant or represent that defects will not exist at the time of release of the House to Buyer or develop during the applicable Warranty Period; however, in that event, Builder's obligation is to remedy (as defined herein) any existing or developing defect (as determined by the terms and conditions set forth herein).

THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY

## Definitions

### "Major Structural Defect"

A "Major Structural Defect" is defined as actual damage to the load-bearing portion of the House due to faulty workmanship on the part of Builder, faulty materials used by Builder, and/or faulty design by Builder, which (1) affects its load-bearing function and (2) which precludes (or is imminently likely to preclude) the use of the House for residential purposes by rendering same unsafe, unsanitary or unlivable. However, since Builder will build the House on land selected and owned by Buyer, such defect does not include damage caused by or in any way related to (in whole or in part) subsidence, expansion or lateral movement of the soil or any other condition of or upon the land. Damage to non-load-bearing elements of construction does not constitute a Major Structural Defect. Examples of non-load-bearing elements of construction include but are not limited to: non-load-bearing walls and partitions, wall coverings, sub floor and flooring materials and coverings, exterior siding, gypsum wallboard and shingles.

### "Remedy"

If a defect or condition occurs which is covered by this Warranty during the applicable Warranty Period and if Buyer timely and properly notifies Builder of same, Builder will remedy same. "Remedy" as used herein means and is defined as Builder's repair, replacement, or payment to the Buyer of the reasonable cost of repairing or replacing, or any combination thereof, the defective item. The choice among repair, replacement or payment is Builder's and lies exclusively within Builder's discretion. The method of making repairs shall be selected pursuant to generally-accepted construction practices, the selection of which shall be solely within the discretion of Builder and the quality and performance of the repairs shall meet or exceed the standards set forth in this Warranty.

Replacement may include the complete removal of the entire structure from Buyer's property and either a re-commencement of construction or, with Buyer's agreement, a cancellation of the contract, in which instance Buyer's total damages shall be limited to those sums Buyer has paid Builder. Remedy involving payment may be in the form of a reduction of Buyer's contract indebtedness to Builder.

Remedy of a Major Structural Defect shall consist of only (1) remedy of damage to the actual load-bearing elements to the extent necessary for them to properly perform their load-bearing functions and (2) remedy of the conditions caused by the Major Structural Defects which make the House unsafe, unsanitary or unlivable. With the exception of Major Structural Defects, the unsafe, unsanitary or unlivable conditions are limited to and confined to only remedy of plumbing, duct work, oil, gas, electric and waste lines, and heating, ventilating and cooling systems that directly impact upon and significantly affect the safe, healthy and sanitary occupancy of the House. Remedy of a Major Structural Defect occurring within the first year of warranty coverage shall include remedy of other items necessary to bring the House into compliance with the Agreed Standards.

## Insurance

In the event Builder remedies any defect covered by this Warranty for which Buyer is covered by insurance, Buyer must notify Builder as soon as possible of such insurance and must, upon request by Builder, assign to Builder the right to the proceeds of such insurance to the extent of the cost to Builder of any such remedy performed or furnished by Builder.

## Other Rights

This warranty gives you (Buyer) specific legal rights and you (Buyer) may also have other rights, which vary from state to state.

Any dispute arising out of the terms of this Warranty shall be resolved in accordance with the terms and conditions contained in the Arbitration Agreement shown on Exhibit D to Buyer's contract with Builder.

THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY

Exclusions from Warranty Coverage

The following are not covered by this Warranty and Builder disclaims any liability or obligation with respect to the following:

1. Bodily injury, damage to personal property, damage to real property which is not part of the House Buyer is purchasing and any other incidental or consequential damages. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you (Buyer).

2. Defects in outbuildings, swimming pools and other recreational facilities; driveways; walkways; patios; boundary walls; retaining walls and the like which are not constructed by Builder; fences; landscaping (including sodding, seeding, shrubs, trees and plantings); offsite improvements; or any other improvements not a part of the House itself and not constructed by Builder.

3. Damages to the House, "Systems", and/or "Appliances, Fixtures, and Equipment" to the extent they are caused or made worse in whole or in part by the negligence of, willful misconduct of, improper operation by, improper installation of materials, apparatus or devices by, improper maintenance by or improper condition caused by anyone other than Builder or its agents, employees or subcontractors.

4. Damages to the House, "Systems", and /or "Appliances, Fixtures, and Equipment" to the extent they are caused or made worse by failure of anyone other than Builder, or its agents, employees or subcontractors, to comply with the warranty requirements of manufacturers of appliances, equipment or fixtures.

5. Damages to the House "Systems", and/or "Appliances, Fixtures, and Equipment" to the extent they are caused or made worse by grading or failure to grade the ground or any other site preparation or condition. Builder, its agents, employees and subcontractors have not assumed, and in fact disclaim, any responsibility or obligation for grading the ground or otherwise for preparing the ground, including access for construction-related vehicles to the building site, for construction. Further, Builder assumes no responsibility or obligation for, and in fact disclaims any responsibility or obligation for, any testing, study or knowledge with respect to whether Buyer's site is suitable or proper for the construction of the House or suitable or proper at all for residential purposes.   Buyer hereby expressly warrants to Builder that Buyer has made and performed any and all reasonable or necessary testing, study and investigation, or that Buyer has knowingly elected to forego any such testing, study and investigation and that Buyer's site is in fact, or deemed by Buyer to be, suitable and proper for the construction of the House to be constructed by Builder.

6. Damages to the House "Systems", and/or "Appliances, Fixtures, and Equipment" to the extent they are caused or made worse by the failure of Buyer to give written notice to Builder, as soon as possible, of any warrantable defect. Builder is not responsible for any additional costs to remedy a defect or condition. If such additional costs are due to or caused by Buyer's failure to notify Builder of said condition or defect as soon as possible and therefore deprive Builder of an opportunity to remedy same, or Buyer proceeds with construction or completion prior to notifying Builder of the defect or condition and, again depriving Builder of the opportunity to remedy same.

7. Any defect or other condition caused by wear and tear, aging or deterioration, contraction, shrinkage or expansion of the House and/or its components.

8. Damage caused by insects, birds, reptiles or other animals or mold and mildew.

9. Loss or damage from any cause or event other than Builder conduct, such as, but not limited to: fire, explosion, smoke, water escape, changes in the level of the underground water table, glass breakage, wind storm, hail, lightning, falling trees, aircraft, vehicles, rising water, flood, earthquake, war, riot, civil disturbance, revolution and any other cause or thing for which Builder has not expressly, in writing, assumed responsibility and agreed to remedy.

THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY

6

10. Any loss, damage, defect or condition which arises while the House, or any part thereof, or of the premises, is being used in whole or in part for nonresidential purposes, purposes for which it was not designed, or any unlawful activity.

11. Any defect, which does not result in actual monetary loss or damage directly in or to the fair market value to the House.

12. Any construction, work, or modification done or performed by anyone other than Builder or its agents, employees or subcontractors.

13. Work or construction done or performed by any agent, employee or subcontractor of Builder at the request of Buyer and in addition to or different from the written contract entered into by and between Buyer and Builder.

14. Any loss or damage caused in whole or in part by the intentional or unintentional act of anyone (including Buyer) other than Builder, its agents, employees or subcontractors.

15. Any loss or damage caused or worsened in whole or in part by either the failure of Buyer to timely and properly conduct or perform reasonable and necessary maintenance or care of the House or failure of Buyer to timely and properly do or perform any act, the timely and proper performance of which would have avoided or lessened the loss or damage.

16. Squeaking floors and other floor noises.

17. Noises caused by expansion, contraction or other movement of the House or any of its components.

18. Any damage to the building site caused or made worse by normal construction vehicle traffic during the construction process.

19. Any damage to Buyer's septic or water systems not properly identified or protected by Buyer in advance of Builder's construction activities.

20. Anything not specifically covered by this Warranty.

21. The quality and potability of water unless caused by a construction defect.

22. Use that exceeds the normal design loads prescribed by the applicable code or the engineer of record.

## Miscellaneous Provisions

To the extent Builder can do so and if and to the extent any such warranties exist, Builder hereby assigns to Buyer its interest in any manufacturers' and installers' warranties for mechanical equipment, appliances, and all other manufactured items furnished with the House. (EXCEPT TENNESSEE, MISSISSIPPI, KANSAS, VIRGINIA AND WEST VIRGINIA) BUILDER DOES NOT WARRANT THESE ITEMS AND HEREBY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THESE ITEMS, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY, SUITABILITY, HABITABILITY AND FITNESS FOR ANY PARTICULAR OR INTENDED PURPOSE OR USE. BUILDER MAKES OR GIVES NO WARRANTY, EXPRESS OR IMPLIED, OTHER THAN OR BEYOND THE EXPRESS TERMS AND PROVISIONS OF THIS WARRANTY.

Should any provision of this Warranty be deemed by a court of competent jurisdiction or arbitration to be unenforceable, that determination will not affect the enforceability of the remaining provisions. This Warranty is to be construed in accordance with the laws of the state in which the House is constructed.

The location and wording of headings used in this Warranty are for convenience only and are not intended to change, modify or supplement the terms or provisions hereof.

THIS WARRANTY IS A PART OF THE TRANSACTION WHEREBY YOU HAVE CONTRACTED WITH BUILDER TO HAVE BUILDER CONSTRUCT AND SELL THE HOME

THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY

7

TO YOU; HOWEVER, WITH RESPECT TO ALL MATTERS ADDRESSED HEREIN, THIS WARRANTY SUPERSEDES AND CONTROLS ALL OTHER CONTRACT DOCUMENTS, DISCUSSIONS AND REPRESENTATIONS.   NEITHER ANY OF THE CONTRACT DOCUMENTS NOR ANY DISCUSSIONS OR REPRESENTATIONS CAN CHANGE, MODIFY OR OVERRIDE THIS WARRANTY.

## AGREED STANDARDS

The Agreed Standards are the standards which apply to the construction quality and performance of the House Builder has contracted to build for Buyer. These standards consist of two primary parts and a definitional section.

The two primary parts are as follows:

Part I:  Code Standards for the House and items and/or options therein purchased from Builder by Buyer which are subject to and covered by locally-adopted building, plumbing, electrical, mechanical and/or any other applicable codes; however, any such code shall only be applicable to govern the construction of those items which are expressly and specifically addressed within such code without reference to other documents.

Part II:  Performance Standards for the House and items and/or options therein which is built in a location which has not adopted a local building, plumbing, electrical, mechanical, and/or any other applicable code, and the House and items and/or options therein built in a location which has adopted a local building, plumbing, electrical, mechanical and/or any other applicable code but which code does not expressly and specifically, without reference to other documents, address those items of construction.

Definitions
For purposes of this Warranty, the following definitions apply:

1.  "Appliances, Fixtures and Equipment" (including their fittings, attachments, controls and appurtenances) includes, but is not limited to, water heaters, bathtubs, sinks, mirrors, medicine cabinets, commodes, faucets and fittings, light fixtures, light switches, convenience outlets, circuit breakers, thermostats and controls, heaters, air handlers and condensing units, smoke detectors, kitchen cabinets and vanities, stoves, refrigerators, disposers, washers, dryers, fireplaces, shower stalls, whirlpools, dishwashers, ceiling fans, telephone jacks, television jacks and flood lights.
2.  "Systems" (exclusive of Appliances, Fixtures and Equipment)
    a.  "Plumbing System" includes all pipes and their fittings, as described in Exhibit "A" (Package, Option and Additions) and/or Exhibit "B" (Specifications and Data Rider) of Buyer's contract with Builder.
    b.  "Electrical System" includes all wiring and connections, including electrical boxes, as described in Exhibits "A" and "B" of Buyer's contract with Builder.
    c.  "Mechanical System" includes all refrigeration lines, drain lines, thermostat, air handler, duct work, and condensing unit, as described in Exhibits "A" and "B" of Buyer's contract with Builder.

PART I
CODE STANDARDS

The structural, plumbing, electrical and mechanical construction under this Warranty of item and/or options purchased from Builder by Buyer shall be so as to comply with the standards contained in such Building Code, Plumbing Code, Electrical Code, Mechanical Code and/or other applicable code or

THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY

8

local ordinance which has been adopted in and is in effect at the location where construction will take place. Compliance with such code or ordinance shall also mean and include the use of alternate materials, methods and work which meets or exceeds applicable or acceptable engineering standards. At any time before or after construction of the House, compliance with said codes or ordinances and/or acceptable alternatives shall be conclusively evidenced by either favorable inspection by the individual(s) or group(s) charged with inspection duties or by certification by a registered professional engineer. This Part shall not apply to any items and/or options not provided by Builder.

PART II
PERFORMANCE STANDARDS

These Performance Standards are intended to specify the minimum standards of performance by Builder for construction of the House or portions of the House covered under this Warranty and to set forth a statement of Builder's obligation in the event Builder fails to meet those minimum standards. These Performance Standards contain a description of possible defective conditions, or "defects," which require remedy under this Warranty and also a description of conditions not constituting "defects," for which no remedies are required.

Of course, it is not practical to attempt to describe every deviation from perfection, whether a "defect" or not, which might be encountered in a new house. With respect to defects or conditions not enumerated or addressed in these Performance Standards, Builder shall be held to a standard of quality and performance as specified in the Residential Construction Performance Guidelines promulgated by the National Association of Home Builders, or, if not specifically addressed therein, comparable to that of Builder's display models. Construction meeting the appropriate standard shall be conclusive evidence of Builder's compliance hereunder.

It is the practice of Builder to give buyers of its houses an opportunity to reduce their building costs by allowing, encouraging, and/or requiring them to do some of the work themselves. If a buyer were purchasing a house from a builder who sells only fully-completed houses, all of the work would have been performed by that builder, but the buyer would ultimately bear the cost. Although Builder could also perform all of these tasks and pass along to Buyer the additional costs incurred, Builder has chosen not to do so.

Buyer's Responsibilities
The contract Buyer is signing will specifically identify only those items Builder is obligated to provide and activities Builder is obligated to undertake. Buyer should be aware that any items or activities not specifically included in the contract will not be provided or done by Builder and must be provided or done, if and as necessary or desired, by Buyer or someone under Buyer's direction and in a manner which meets or exceeds the requirements of applicable codes. This warranty does not pertain to those items or activities even though there may be a section or subsection in this warranty which addresses those items or activities.

Items falling into this category include, but are not limited to, the following:
1. In certain Builder's marketing areas, Buyer may/will be required to obtain the permits to build the house in Buyer's own name. In those instances, Buyer will also be responsible for the payment of the fees necessary to obtain such permits.
2. Availability of water, sewer, gas, electricity or other utilities to Buyer's land and any conditions or requirements for obtaining any permits or authorizations for such utilities. It is Buyer's responsibility to ascertain whether or not such utilities are available to and/or suitable for Buyer's land and the House to be built and Buyer must determine and fulfill the requirements for obtaining any such utilities or alternatives and any necessary permits or authorizations.

THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY

9

3. Unless otherwise provided in the contract or exhibits thereto, preparation or grading of the building site for construction, soil testing and any other investigation or preparation pertaining to the site and its use and/or location for the House. (This is Buyer's responsibility and damages caused by lack of proper preparation or grading or any other site testing, investigation or preparation are not covered under this Warranty.)

4. Despite the participation of Builder or Builder's agents(s), precise location and direction of House on the lot and reasonable access to that location. (Buyer must specify abuse of stakes where House is to be built and what direction it should face; Buyer must also remove trees, bushes, shrubs, debris or other material hindering access to construction and provide a clear area not less than twenty feet (20') in width in and around the House site.) To prevent damage to other trees, shrubs, utilities, septic system and other items susceptible to damage which Buyer wishes to preserve, Buyer must clearly mark the same in a manner whereby they can be readily identified and avoided by construction personnel and vehicles. (Builder shall not be responsible for any losses or damage to any such items not so marked.) For slab foundations the building site must be made flat and level to within the tolerances provided in the building contract and/or exhibits thereto.

5. Clean-up work during and after construction. Buyer is responsible for all cleanup. (Builder's subcontractors' contracts do not include cleaning windows, removing drywall compound from window frames or tub surrounds, removing trash and the like. This is something Buyer can easily do or pay someone to do.)

6. Maintenance of House. Buyer is responsible for maintaining the House. After the House has been constructed by Builder to the extent Builder contracted to do so, Buyer then has the responsibility to maintain the House. Buyer must perform regular upkeep or maintenance. Some examples of required homeowner maintenance are cleaning, painting, caulking, adjusting doors and sweeps or thresholds, lubricating metal items such as window springs, hinges and sliding door rollers and many other items or portions of the House which must be protected, adjusted and otherwise maintained from time to time. It shall also include grading and landscaping of the soil and positive drainage of ground water away from House and removing leaves and other debris from roof and valleys.

7. Builder owns any and all building materials left over at the job site and not specifically sold to Buyer.

8. Unless otherwise provided in the contract or exhibits thereto, Buyer is responsible for all post-construction landscaping, including but not limited to plantings, grass, trees, finish grading and flower beds.

9. Unless specifically made Builder's responsibility under and pursuant to the building contract, Buyer is responsible for any type of flatwork required or desired at the building site, such as sidewalks and driveways.

10. Buyer is responsible for any window coverings and treatments, such as blinds, curtains, drapes, etc.

11. Unless specifically made Builder's responsibility under and pursuant to the building contract, Buyer is responsible for any type of interior wall finish, such as paneling, wallpaper, brick veneer, etc.

12. Upon observation of a circumstance that may cause further damage to the House or a component of the House, Buyer shall take reasonable action necessary to prevent further damage to the House.

THIS WARRANTY CANNOT BE CHANGED OR ALTERED IN ANY WAY

10



## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of March, 2010, I served a copy of the foregoing to the following counsel of record:

> *Service Via AlaFile*
> Michael L. Fees, Esq.
> Allen L. Anderson, Esq.
> Stacey L. Moon, Esq.
> FEES & BURGESS, P.C.
> 213 Green Street
> Huntsville, Alabama 35801
> Telephone:     (256) 536-0095
> Facsimile:     (256) 536-4440
> E-mail:court@feesburgess.com
> Attorneys for KBM Enterprises, Inc.
> and Jeff Knight

/s/ Stephen R. Geisler
Of Counsel