IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

In re Chinese Manufactured Drywall     MDL NO. 2047
Products Liability Litigation     SECTION: L

LISA LEBRON, ET AL.

      Plaintiffs,

vs.

BREEZES AT GALLOWAY, INC.; ET,     Case No. 09-6741
AL.

      Defendant.

## DEFENDANT KNAUF PLASTERBOARD (TIANJIN) CO. LTD.'S ANSWER TO COMPLAINT

Defendant Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT"), pursuant to Rule 12(a)(1) of the Federal Rules of Civil Procedure, hereby responds to the corresponding paragraphs of Plaintiffs' Complaint (the "Complaint"),[1] and as to each numbered paragraph state as follows:

### INTRODUCTION

1.    This is a class action suit brought on behalf of Plaintiffs and others similarly situated who own homes in the State of Florida that contain defective drywall supplied by Banner, Knauf Gips, Knauf Plasterboard, Knauf Wuhu, Knauf Dongguan and USG installed in homes by Breezes, Galloway Sunset, and GHB. On behalf of themselves and the proposed class, Plaintiffs assert three counts: (a) a strict products liability claim; (b) a negligence claim; and (c) a breach of the implied warranty of habitability claim. These claims arise out of the Defendants' supply and installation of defective drywall in homes and structures, and the marketing and sale of homes and structures containing defective drywall, all within the State of Florida, to Plaintiffs and members of the proposed class, more than two-thirds of whom are residents of the State of Florida.

**ANSWER:**  KPT answers that Plaintiffs purport to be representatives of a class of similarly situated homeowners in the State of Florida. KPT denies all other allegations of

---

[1] Plaintiffs originally filed this Complaint in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.

Paragraph 1 regarding the supply and installation of allegedly defective drywall.   Further

answering, KPT has no personal knowledge upon which to form a belief as to the truth or falsity

of the residential status of members of the proposed class and therefore denies those allegations.

2.    Drywall is a common manufactured building material used globally for the construction of interior walls and ceilings.  On information and belief, during the proposed class period, a substantial quantity of defective drywall was designed, tested, manufactured, marketed, wholesaled, supplied and/or sold by Banner, USG, Knauf, Knauf Wuhu, Knauf Dongguan, Knauf Gips and Rothchilt.  The use of drywall is extensive.  Reporting indicates that over 10 million square feet of the defective drywall have been used in construction in the State of Florida alone, and that as many as 60,000 average-sized homes may have been built in the State of Florida with the defective drywall.  The same defective drywall is reported to have been installed in homes in at least twelve other states.

**ANSWER**:  KPT answers that drywall is a common manufactured building material used

globally for the construction of interior walls and ceilings.  KPT denies that it designed, tested,

manufactured, marketed, wholesaled, supplied and/or sold defective drywall.  Further answering,

KPT states it has no personal knowledge upon which to form a belief as to the truth or falsity of

the remaining allegations of Paragraph 2 and, therefore, denies those allegations.

3.    The drywall designed, tested, manufactured, marketed, wholesaled, supplied and/or sold for use in the construction of homes and structures by Defendants was and is defective because toxic chemicals emanate from the drywall.  When certain chemical compounds in the drywall, including but not limited to sulphur, are exposed to moisture or react with other chemicals found in the houses, they create noxious chemicals that volatilize into the homes. These chemicals that are released into the homes damage the houses, fixtures attached thereto, and personal property contained therein, and render the homes unsafe and/or uninhabitable.

**ANSWER**:  KPT denies the allegations of Paragraph 3.

## PARTIES

4.    Plaintiffs were and are residents of Miami-Dade County, Florida, who, within the applicable statute of limitations period(s), purchased a home with defective drywall that was supplied by Banner, Knauf Gips, Knauf Plasterboard, Knauf Wuhu, Knauf Dongguan and USG and installed and/or sold and/or marketed by Breezes, Galloway Sunset, and GHB.

**ANSWER**:  KPT answers that it has no knowledge upon which to form a belief as to the

truth or falsity of the allegations of Paragraph 4 that are not directed to it and, therefore, denies

those allegations.

5.      Galloway Sunset was and is a Florida corporation with its principal place of business in Miami-Dade County, Florida.  Galloway Sunset caused the installation of defective drywall into the homes it developed and caused to be constructed and, with GHB and Breezes marketed and sold homes containing defective drywall to Plaintiffs and those similarly situated.

**ANSWER**:  The allegations of Paragraph 5 are not directed to KPT and, therefore, it

denies those allegations.

6.      GHB and/or Galloway Sunset were and are Florida corporations doing business in Miami Dade County, Florida.  GHB and/or Galloway Sunset are the exclusive or captive real estate broker(s) controlled by those principals of Galloway Sunset and/or Breezes who sold homes to Plaintiffs and those similarly situated.

**ANSWER**:  The allegations of Paragraph 6 are not directed to KPT and, therefore, it

denies those allegations.

7.      Banner was and is a Florida corporation with its principal place of business in Miami-Dade County, Florida.  Banner marketed, supplied, wholesaled, and/or sold defective drywall to Breezes, Galloway Sunset, and GHB for installation in homes marketed and sold to Plaintiffs and those similarly situated.

**ANSWER**:  The allegations of Paragraph 7 are not directed to KPT and, therefore, it

denies those allegations.

8.      Knauf was and is a company organized under the laws of the People's Republic of China and carries on a business that has directed its activities, including the manufacture and sale of drywall, to residents of the State of Florida, including Miami-Dade County, and from which it has derived pecuniary gain.  Knauf's principal place of business is located at North Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400, China, Upon information and belief Knauf is a wholly-owned subsidiary of Knauf Gips.

**ANSWER**:  KPT answers that it is a Chinese limited company organized under the laws

of the People's Republic of China and that its principal place of business is located at North

Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400, China.  KPT denies the

remaining allegations of Paragraph 8.

9.      Knauf Wuhu was and is a company organized under the laws of the People's Republic of China and carries on a business that has directed its activities, including the manufacture and sale of drywall, to residents of the State of Florida, including Miami-Dade

County and from which it has derived pecuniary gain.  Knauf Wuhu's principal place of business is located at 2 Gang Wan Road, RC-241009, Wuhu Anhui, China.  Upon information and belief Knauf Wuhu is a wholly-owned subsidiary of Knauf Gips.

> **ANSWER**:  The allegations of Paragraph 9 are not directed to KPT and, therefore, it denies those allegations.

10.    Knauf Dongguan was and is a company organized under the laws of the People's Republic of China and carries on a business that has directed its activities, including the manufacture and sale of drywall, to residents of the State of Florida, including Miami-Dade County and from which it has derived pecuniary gain.  Knauf Dongguan's principal place of business is located at No. 2 Xinsha Development Zone RC-523147, Guangdong, China.  Upon information and belief Knauf Dongguan is a wholly-owned subsidiary of Knauf Gips.

> **ANSWER**:  The allegations of Paragraph 10 are not directed to KPT and, therefore, it denies those allegations.

11.    Knauf Gips was and is a corporation organized under the laws of Germany and carries on a business that has directed its activities, including the manufacture and sale of drywall, to residents of the State of Florida, including Miami-Dade County and from which it has derived pecuniary gain.  Knauf Gips is an international leading manufacturer of building materials and systems.  Knauf Gips, together with its affiliates, including Knauf has over 130 plants worldwide and has annual sales exceeding 4.8 billion Euros.  Knauf Gips, in conjunction with its subsidiaries and affiliates, does business in over 50 countries and employs approximately 20,000 individuals worldwide.  Knauf Gips does substantial business in the United States of America generally, and in the State of Florida specifically.  Since the late 1990's Knauf Gips built three plants for the manufacture of drywall in China.  These plants are located in Wuhu, Tianjin and Dongguan.  Upon information and belief, Knauf Gips exercises strict control over the manufacture and sale of drywall by its Chinese subsidiaries and affiliates, including Knauf, Knauf Wuhu and Knauf Dongguan.  Upon information and belief, at all material times hereto, Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf, Knauf Wuhu, Knauf Dongguan and their agents, apparent agents, and employees.   Knauf Gips also established the quality control criteria for the production of drywall and monitored the production of drywall according to these criteria by its subsidiaries, including Knauf, Knauf Wuhu, and Knauf Dongguan.

> **ANSWER**:  The allegations of Paragraph 11 relating to other corporate entities are not directed to KPT and, therefore, it denies those allegations.  KPT denies the remaining allegations of Paragraph 11.

12.    Rothchilt was and is a company organized in Taiwan and carried on a business that has directed its activities, including the distribution or importation of the defective drywall, to residents of Miami-Dade County and the State of Florida and from which it has derived

pecuniary gain.  Rothchilt's principal place of business is located at N-510 Chia Hsin Bld. Annex 96 Chung Shan N. Rd. Sec. 2, Tapei, Taiwan.  Rothchilt is the distributor and/or importer of the defective drywall manufactured by Knauf, Knauf Gips, Knauf Wuhu and Knauf Dongguan, and placed in Plaintiffs' home and the homes of those similarly situated.

**ANSWER**:  The allegations of Paragraph 12 relating to other corporate entities are not directed to KPT and, therefore, it denies those allegations.  KPT denies the remaining allegations of Paragraph 12.

13.    USG is a domestic corporation which supplies drywall throughout Florida.

**ANSWER**:  The allegations of Paragraph 13 are not directed to KPT and, therefore, it denies those allegations.

**JURISDICTION AND VENUE**

14.    This action is brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.  More than two-thirds of the members of the proposed class, as defined below, are residents and citizens of Florida.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 14 to the extent they are improper allegations and legal conclusions.  Further answering, KPT states it has no personal knowledge upon which to form a belief as to the truth or falsity of Paragraph 14 with regard to the residential status or citizenship of the members of the proposed class and therefore denies those allegations.

15.    The damages suffered and sought to be recovered herein total, in the aggregate, in excess of One-Hundred and Fifty Thousand Dollars ($150,000.00), exclusive of interest, costs and attorney's fees.

**ANSWER**:  KPT answers that Plaintiffs purport to claim damages in excess of $150,000.00, exclusive of interest, costs and attorney's fees.  KPT denies the remaining allegations of Paragraph 15.

16.    This Court has subject matter jurisdiction pursuant to § 26.012, Fla. Stat.  This Court also has jurisdiction pursuant to § 48.193, Fla. Stat., because all of the Defendants, either individually or collectively, or through an agent, conduct business in Florida, committed tortious

5

acts within Florida, own, use or possess real property in Florida, and/or caused injury to persons and property within Florida arising from acts committed both in Florida and outside Florida. Defendants are further subject to the jurisdiction of this Court because, at or about the time of the injuries alleged herein, products and materials manufactured and processed by Defendants were used within the State of Florida in the ordinary course of commerce, trade or use.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 16 of the Complaint because they are improper and contain legal conclusions.  KPT denies the remaining factual allegations of Paragraph 16.

17.    Venue is proper pursuant In Chapter 47 of Florida Statutes, including §§ 47.011, 47.025 and 47.051, Fla. Stat., because the transactions, acts and occurrences that give rise to this action occurred and/or accrued, among other places, in Miami-Dade County, Florida, and Defendants' wrongful conduct occurred in, and/or resulted in injury in among other places, Miami-Dade County, Florida.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 17 of the Complaint because they are improper and contain legal conclusions.  KPT denies the remaining factual allegations of Paragraph 17.

### SUBSTANTIVE ALLEGATIONS
### Factual Allegations Related to Defendants

18.    Galloway Sunset engages in a for-profit business as a developer/builder to develop, improve and sell real property, including single-family residences.

**ANSWER**:  The allegations of Paragraph 18 are not directed to KPT and, therefore, it denies those allegations.

19.    Galloway Sunset developed, among others, a community, including those in Miami-Dade County, Florida commonly known as Breezes at Galloway, Inc.

**ANSWER**:  The allegations of Paragraph 19 are not directed to KPT and, therefore, it denies those allegations.

20.    Banner, in the course of engaging in a for-profit business, procured drywall for supply in the State of Florida, from Knauf Gips and/or Knauf Plasterboard, and/or Knauf-Wuhu, and/or Knauf Dongguen, and/or Rothchilt, and/or USG.

**ANSWER**:  KPT answers that at least some of its drywall was purchased by Banner

6

Supply Company.   KPT was not involved in that transaction.   KPT denies the remaining allegations of Paragraph 20.

21.    The drywall procured by Banner for supply in construction in the State of Florida was and is defective because it contains and emits toxins, including sulphur and sulphur compounds such as carbon disulfide, carbonyl sulfide and hydrogen sulfide, which damage homes, fixtures attached thereto, and personal property contained therein, in many ways, including, but not limited to: (a) eroding, corroding and/or tarnishing various metals within residences, including plumbing and interior electrical wiring; (b) disrupting and/or interfering with the operation of electric and electronic equipment and appliances within said residences, including but not limited to microwaves, computers, air conditioning and refrigerator coils; and (c) creating a noxious rotten egg-like odor that renders the homes uninhabitable.  The defect in the drywall was latent and existed at the time of manufacture, supply, installation and sale of the defective drywall.   The defect exists irrespective of the manner in which the drywall was installed, maintained, or painted.  The defect cannot be repaired.

**ANSWER**:  KPT denies the allegations of Paragraph 21.

22.    Banner supplied defective drywall to Galloway Sunset, GHB, and Breezes who caused the defective drywall to be installed in houses in Breezes at Galloway.

**ANSWER**:  KPT answers it has no personal knowledge upon which to form a belief as to the truth or falsity of the allegations of Paragraph 22 and, therefore, denies those allegations.

## FACTUAL ALLEGATIONS RELATED TO PLAINTIFFS

23.    On or about May 5, 2005, Plaintiffs, through Galloway Sunset purchased a residence built by GHB.  Plaintiffs agreed to pay Galloway Sunset and/or its assigns $850,895.00 for their new residence.

**ANSWER**:  KPT answers it has no personal knowledge upon which to form a belief as to the truth or falsity of the allegations of Paragraph 23 and, therefore, denies those allegations.

24.    On or about November 2006, Plaintiffs closed on their new residence.  On or about December 2006, Plaintiffs moved into their new home, which – unbeknownst to them – was built with defective drywall that was supplied by Banner in the State of Florida and used by GHB and/or Galloway Sunset and/or Breezes in the construction of Plaintiffs' newly-purchased home.

**ANSWER**:  KPT answers it has no personal knowledge upon which to form a belief as to the truth or falsity of the allegations of Paragraph 24 and, therefore, denies those allegations.  To the extent the allegations of Paragraph 24 imply that KPT supplied defective drywall to Banner,

they are denied.

25.    The defective drywall supplied by Banner and installed by GHB, and/or Galloway Sunset and/or Breezes in the home sold to Plaintiffs by Galloway Sunset and/or GHB caused damages to Plaintiffs and putative class members because they have experienced personal injury damage as well as damage to their homes, fixtures attached thereto, and personal property contained therein as a direct result of the sulphuric toxins emitted by the defective drywall. Consequently, the homes of Plaintiffs and members of the putative class in which defective drywall has been installed are in need of costly remediation.  The Plaintiffs have also required medical treatment and incurred costs for such treatment.

**ANSWER**:  KPT denies the allegations of Paragraph 25.

26.    Plaintiffs' home was supposed to be habitable and free from defects but, in reality, it fails to meet ordinary, normal standards that are reasonably to be expected of living quarters of comparable kind because of the defective drywall installed therein.

**ANSWER**:  KPT denies the allegations of Paragraph 26.

27.    Pursuant to § 558.003, Fla. Stat., and like notice provisions in contracts signed in connection with the purchase of their home, Plaintiffs have provided to Banner, GHB and/or Galloway Sunset and/or Breezes and/or its assigns written notices of the defects relating to their home or same will be provided.  Alternatively, Banner, GHB, Galloway Sunset, and Breezes have actual knowledge from one or more of the residents of Breezes.  Banner, GHB and/or Galloway Sunset, and/or Breezes, and/or its assigns have so far failed to repair these defects, replace the property damaged thereby or reimburse Plaintiffs for medical expenses. Alternatively, the defects are not curable.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 27 of the Complaint

because they are improper and contain legal conclusions.  KPT denies any remaining factual

allegations of Paragraph 27.

## CLASS REPRESENTATION ALLEGATIONS

28.    Plaintiffs bring this action on their own behalf and as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.  The class Plaintiffs propose to represent is defined as follows:  "All natural persons and business entities residing in the State of Florida who purchased homes from GHB, and/or Galloway Sunset, and/or Breezes and/or assigns or affiliated companies between January 2004 and the present and whose homes contain the defective drywall" supplied by Banner (the "Class").  Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, their directors and officers, and members of their immediate families.  Also excluded from the Class are the Court, the Court's spouse or partner, if applicable, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.

**ANSWER**: KPT makes no answer to the allegations of Paragraph 28 of the Complaint because they are improper and contain legal conclusions.

29.     The prerequisites to class representation pursuant to Rule 1.220(a) are present in this action as follows:

A.     **Numerosity**.     The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable.  While the exact number and identities of members of the Class are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe and therefore aver that there are hundreds if not thousands of Class members in the State of Florida because, upon information and belief, hundreds of people have purchased homes from ORB, and/or Galloway Sunset and/or Breezes, some or all of which contain the defective drywall.

B.     **Commonality**:  There are questions of fact and law common to the claims of the Plaintiffs and the members of the Class that predominate over any questions affecting any individual members including, among others, the following questions:

1.     Whether the drywall was defective;

2.     Whether the defective drywall was supplied by Banner, Knauf Gips, Knauf Plasterboard, Knauf Wuhu, Knauf Dongguen and USG;

3.     Whether the defective drywall was negligently supplied by Banner;

4.     Whether the defective drywall was installed in homes of Plaintiffs and members of the putative class;

5.     Whether the defective drywall was installed in homes of Plaintiffs and members of the putative class negligently by GHB, Galloway Sunset, or Breezes;

6.     Whether GHB, Galloway Sunset, or Breezes marketed and/or sold homes containing defective drywall;

7.     Whether Banner, Knauf Gips, Knauf Plasterboard, Knauf-Wuhu, Knauf Dongguen and USG breached duties of care to Plaintiffs and members of the class by supplying defective drywall that was in violation of applicable laws, codes, regulations and standards applicable to its industry and intended to protect Plaintiffs and members of the putative class;

8.     Whether defendants failed to disclose that the drywall was defective;

9.     Whether the homes with defective drywall that were sold by GHB, and/or Galloway Sunset, and/or Breezes failed to meet ordinary, normal standards that are reasonably to be expected of living quarters of comparable kind; and

10.     Whether the defective drywall caused personal injury damages and damages to the homes, fixtures attached thereto, and personal property contained therein belonging to Plaintiffs and members of the Class.

C.     **Typicality**.  Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs allege a common course of conduct by Defendants towards members of the Class.  Plaintiffs, like other members of the respective Class, have purchased homes containing defective drywall that was supplied and installed in a home that was marketed and sold to Plaintiffs.  Plaintiffs and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiffs' claims and those of the Class.

D.     **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiffs have retained competent counsel experienced in litigation of this nature.

**ANSWER**:  KPT denies the allegations of Paragraph 29.

30.     Plaintiffs bring this action under Rule 1.220(b)(3) of the Florida Rules of Civil Procedure because common questions of law and fact predominate over questions of law and fact affecting individual members of the Class.  Indeed, the predominant issues in this action are whether Defendants are violating and have violated the law by supplying defective drywall in the State of Florida, installing defective drywall in homes constructed in the State of Florida, and selling homes constructed with defective drywall in the State of Florida.  In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy.  Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by this Court.  Certification under Rule 1.220 of the Florida Rules of Civil Procedure is therefore appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiffs envision no unusual difficulty in the management of this action as a class action.

**ANSWER**:  KPT denies the allegations of Paragraph 30.

## EQUITABLE TOLLING

31.     The running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.  Defendants, by failing to disclose a known defect to Plaintiffs and the Class, and failing to disclose the defective nature of their product, concealed from Plaintiffs and the Class the risks associated with the drywall.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 31 to the extent they are improper allegations and legal conclusions.  KPT denies the remaining factual allegations of Paragraph 31.

32.    As a result of Defendants' actions, Plaintiffs and the Class could not reasonably know or have learned of the defect in the drywall through the exercise of reasonable diligence.

**ANSWER**:  Knauf Plasterboard denies the allegations of Paragraph 32.

33.    Defendants must be estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of the drywall installed in the homes of Plaintiffs and the Class.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 33 to the extent they are improper allegations and legal conclusions.  KPT denies the remaining factual allegations of Paragraph 33.

34.    Plaintiffs and the Class had no knowledge that Defendants were engaged in wrongdoing and, because of Defendants' concealment thereof, any applicable statute of limitations must be tolled.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 34 to the extent they are improper allegations and legal conclusions.  KPT denies the remaining factual allegations of Paragraph 34.

**COUNT I**
**PRODUCTS LIABILITY**
**Strict Liability (Defective Product)**
**All Defendants**

35.    Plaintiffs hereby adopt and incorporate by reference paragraphs 1 to 34 as if fully set forth herein.

**ANSWER**:  KPT adopts and incorporates by reference its responses to Paragraphs 1 to 34, inclusive, as if fully set forth herein.

36.    This Count addresses the unlawful practice of placing a defective product – defective drywall – into the stream of commerce through the supply by Banner, Knauf Gips, Knauf Plasterboard, Knauf-Wuhu, Knauf Dongguen and USG of defective drywall in the State of Florida, through the installation of defective drywall in homes in Florida caused to be

constructed by GHB, and/or Galloway Sunset and/or Breezes, and through the marketing and sale of homes containing defective drywall by GHB, Galloway Sunset, and Breezes.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 36 to the extent they

are improper allegations and legal conclusions.  KPT denies the remaining factual allegations of

Paragraph 36.

37.    Banner, Knauf Gips, Knauf Plasterboard, Knauf-Wuhu, Knauf Dongguen and USG are in the for-profit business of supplying drywall in the State of Florida and placed defective drywall into the stream of commerce in the State of Florida by supplying defective drywall to GHB, and/or Galloway Sunset, and/or Breezes, an expected consumer and/or handler of drywall.  The drywall was defective at the time it was supplied.

**ANSWER**:  KPT denies the allegations of Paragraph 37.

38.    GHB and/or Galloway Sunset, and/or Breezes is in the for-profit business of developing and constructing homes and placed defective drywall into the stream of commerce in Florida by installing or causing to be installed defective drywall into homes and structures it constructed or caused to be constructed.  The drywall was defective at the time it was installed or caused it to be installed in the homes at Breezes.

**ANSWER**:  The allegations of Paragraph 38 are not directed to KPT and, therefore, it

denies those allegations.

39.    GHB and/or Galloway Sunset and/or Breezes are in the for-profit business of selling homes and placed defective drywall into the stream of commerce in Florida by marketing and/or selling or causing to be sold to Plaintiffs and the Class homes and structures constructed or caused to be constructed which contained defective drywall.  The drywall was defective at the time of the sale of the homes.  Plaintiffs and the Class were expected consumers of homes containing drywall.

**ANSWER**:  The allegations of Paragraph 39 are not directed to KPT and, therefore, it

denies those allegations.

40.    The defective drywall and homes or structures containing defective drywall were used for their intended purposes and the defective drywall was installed in the normal course of construction without any known changes or alterations to its condition.

**ANSWER**:  KPT answers it has no personal knowledge upon which to form a belief as to

the truth or falsity of the allegations of Paragraph 40 related to the use and installation of the

drywall and, therefore, denies those allegations.  KPT denies the remaining allegations of

Paragraph 40.

41.    The defective drywall was incorporated into the homes and structures sold to Plaintiffs and the Class before the damages to Plaintiffs and the Class were caused.

**ANSWER**:  KPT answers it has no personal knowledge upon which to form a belief as to the truth or falsity of the allegations of Paragraph 41 related to the incorporation of the drywall and, therefore, denies those allegations.  KPT denies the remaining allegations of Paragraph 41.

42.    Unknown to and hidden from Plaintiffs and the Class, the drywall installed in their homes was defective because it contained toxins like sulphur and sulphuric compounds that caused personal injury and damaged homes, fixtures attached thereto, and personal property contained therein, in many ways, including, but not limited to:  (a) eroding, corroding and/or tarnishing various metals within residences, including plumbing and interior electrical wiring; (b) disrupting and/or interfering with the operation of electric and electronic equipment and appliances within said residences, including but not limited to microwaves, computers, air conditioning and refrigerator coils; and (c) creating a noxious rotten egg-like odor that renders the homes uninhabitable.  The drywall also did not conform to applicable building standards, guidelines and/or codes intended to protect Plaintiffs and the Class.

**ANSWER**:  KPT denies the allegations of Paragraph 42.

43.    As a result of the supply of defective drywall in the State of Florida, the installation of defective drywall in homes and structures in the State of Florida, and the marketing and sale of homes and other structures containing defective drywall in the State of Florida, Plaintiffs and members of the Class suffered damages, including, but not limited to, personal injury, property damage to their homes, fixtures attached thereto and property contained therein.

**ANSWER**:  KPT denies the allegations of Paragraph 43.

44.    If Defendants had exercised that degree of care that a prudent or reasonably cautious person acting under the same circumstances would exert, the Defendants could have foreseen that the drywall was defective and that damages to Plaintiffs and the Class would reasonably be expected to ensue as a result of the supply and installation of defective drywall and the marketing and sale of homes containing defective drywall.

**ANSWER:** KPT denies the allegations of Paragraph 44.

45.    As a result of the foregoing acts and omissions of the Defendants, the homes of Plaintiffs and the Class have required, require or will require extensive reconstruction and repairs and will incur inspection, repair and replacement costs to repair their homes, fixtures attached thereto, personal property contained therein, and medical expenses.

**ANSWER**:  KPT denies the allegations of Paragraph 45.  KPT denies the remaining

allegations of Paragraph 45 or that Plaintiffs are entitled to the relief they seek.

46.     Plaintiffs seek to obtain a pecuniary benefit for the Class in the form of all actual and consequential damages from Defendants.  Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of conferring a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 46 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 46 or that Plaintiffs are entitled to the relief they seek.

**COUNT II**
**NEGLIGENCE**
**Banner, Knauf Gips, Knauf Plasterboard, Knauf-Wuhu, Knauf Dongguen and USG**

47.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1 to 34 as if fully set forth herein.

**ANSWER**:   KPT hereby adopts and incorporates by reference its responses to Paragraphs 1 to 34 inclusive, as if fully set forth herein.

48.     Plaintiffs bring this claim for the unlawful practice of breaching a duty to supply materials that are free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 48 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 48.

49.     These Defendants owed duties of care to Plaintiffs and the Class to supply materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to the industry.  These Defendants were also under duties to disclose any defects in the materials supplied.  These duties were independent of any duty to perform under any written contract or warranty.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 49 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 49.

50. At the time these Defendants supplied the drywall in the United States and the State of Florida, the drywall was defective and not in compliance with applicable laws, codes, regulations and standards applicable to the drywall industry and intended to protect Plaintiffs and the Class.

**ANSWER:** KPT makes no answer to the allegations of Paragraph 50 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 50.

51. These Defendants breached their duty of care to Plaintiffs and the Class by one or more of the following means:

A. Acquiring, procuring, marketing, distributing, wholesaling and/or selling defective drywall that was likely to cause personal injury, property and other damage to the intended user through exposure to sulphur and sulphur compounds;

B. Failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturers or distributer of the drywall it supplied in the State of Florida;

C. Failing to exercise reasonable care in the inspection and testing of the drywall supplied in the State of Florida;

D. Failing to comply with applicable laws, codes, regulations and standards applicable to its industry and intended to protect Plaintiffs and the Class;

E. Failing to adequately warn foreseeable users of the defective nature of the drywall it supplied in the State of Florida;

F. Supplying defective drywall in the United States and State of Florida and/or failing to disclose its defects; and

G. Failing to initiate a timely recall of the defective drywall it supplied in the United States and State of Florida.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 51 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 51.

52. If these Defendants had exercised that degree of care that a prudent or reasonably cautious person acting under the same circumstances would exert, they could have foreseen that the drywall was defective and that damages to Plaintiffs and the Class would reasonably be expected to ensue as a result of the supply and installation of defective drywall.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 52 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 52.

53.     Plaintiffs and the Class were damaged by these Defendants' breaches of their duties of care, which caused property damage to Plaintiffs' homes, to fixtures attached thereto and to property contained therein.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 53 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 53.

54.     The damages suffered by Plaintiffs and the Class, which are separate and apart from those damages resulting from any breach of contract or warranty, were directly and proximately caused by these Defendants.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 54 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 54.

55.     As a result of the foregoing acts and omissions of these Defendants, the homes of Plaintiffs and the Class require or will require extensive reconstruction and repairs and will incur inspection, repair and replacement costs to repair their homes, fixtures attached thereto, personal property contained therein, and medical costs reimbursement.

**ANSWER**:  KPT denies the allegations of Paragraph 55.

56.     Plaintiffs seek to obtain a pecuniary benefit for the Class in the form of all actual and consequential damages recoverable from these Defendants.  Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of conferring of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 56 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 56 or that Plaintiffs are entitled to the relief they seek.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF HABITABILITY
## GHB, GALLOWAY SUNSET, BREEZES

57.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1 to 28 as if fully set forth herein.

**ANSWER**:   KPT hereby adopts and incorporates by reference its responses to Paragraphs 1 to 28, inclusive, as if fully set forth herein.

58.     This count addresses the un1awful practice of selling homes that fail to meet the ordinary, normal standards that are reasonably to be expected of living quarters of comparable kind.

**ANSWER**:  KPT makes no answer to the allegations of Paragraph 58 to the extent they are improper allegations and legal conclusions.   KPT denies the remaining allegations of Paragraph 58.

59.     GHB, Galloway Sunset, and Breezes, and their assigns and/or affiliates sold Plaintiffs a new home constructed or caused to be constructed by GHB and/or Galloway Sunset, and/or Breezes.  The sale of the home carried an implied warranty of habitability from GHB, and/or Galloway Sunset, and/or Breezes and their assigns and/or affiliates that the home was reasonably habitable and free of defects.

**ANSWER**:  The allegations of Paragraph 59 are not directed to KPT and, therefore, it denies those allegations.

60.     These Defendants, their assigns and/or affiliates sold new homes to members of the Class that carried the same warranty of habitability.  The homes sold by these Defendants and their assigns and/or affiliates contained defective drywall at the time of the sale.

**ANSWER**:  The allegations of Paragraph 60 are not directed to KPT and, therefore, it denies those allegations.

61.     Plaintiffs and the Class used and/or occupied the homes sold by these Defendants and their affiliates and assigns consistent with the intended manner.

**ANSWER**:  The allegations of Paragraph 61 are not directed to KPT and, therefore, it denies those allegations.

62.     Plaintiffs have provided notice of the breach of warranty but as yet no repairs have been made.  Alternatively, these Defendants have actual knowledge of their breach.

**ANSWER**:  The allegations of Paragraph 62 are not directed to KPT and, therefore, it denies those allegations.

63.     These Defendants and their assigns and/or affiliates sold homes that failed to meet the ordinary, normal standards that are reasonably to be expected of living quarters of comparable kind by selling homes containing defective drywall that emitted toxins, including sulphur and sulphur compounds such as carbon disulfide, carbonyl sulfide and hydrogen sulfide, which sulphuric compounds damage homes, fixtures attached thereto, and personal property contained therein, in many ways, including, but not limited to:  (a) eroding, corroding and/or tarnishing various metals within residences, including plumbing and interior electrical wiring; (b) disrupting and/or interfering with the operation of electric and electronic equipment and appliances within said residences including but not limited to microwaves, computers, air conditioning and refrigerator coils; and (c) creating a noxious rotten egg-like odor that renders the homes uninhabitable.

**ANSWER**:  The allegations of Paragraph 63 are not directed to KPT and, therefore, it denies those allegations.

64.     These Defendants, their assigns and affiliates therefore breached the implied warranty of habitability in connection with the sale of homes containing defective drywall to Plaintiffs and the Class.

**ANSWER**:  The allegations of Paragraph 64 are not directed to KPT and, therefore, it denies those allegations.

65.     The breach existed at the time of the sale of the homes to Plaintiffs and to the Class.

**ANSWER**:  The allegations of Paragraph 65 are not directed to KPT and, therefore, it denies those allegations.

66.     As a result of the breach, Plaintiffs and members of the Class have suffered damages, including, but not limited to, personal injury, property damage to Plaintiffs' homes, to fixtures attached thereto, and to property contained therein, and costs of medical expenses.

**ANSWER**:  The allegations of Paragraph 66 are not directed to KPT and, therefore, it denies those allegations.

67.     As a result of the foregoing acts and omissions of the Defendants, the homes of Plaintiffs and the Class require or will require extensive reconstruction and repairs and will incur inspection, repair and replacement costs to repair their homes, fixtures attached thereto, and personal property contained therein.

**ANSWER**:  The allegations of Paragraph 67 are not directed to KPT and, therefore, it denies those allegations.

68.     Plaintiffs seek to obtain a pecuniary benefit for the Class in the form of all actual and consequential damages recoverable.   Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of conferring a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

**ANSWER**:  The allegations of Paragraph 68 are not directed to KPT and, therefore, it denies those allegations.


## AFFIRMATIVE DEFENSES

Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT") by and through its attorneys, Baker & McKenzie, LLP, hereby asserts the following affirmative defenses to Plaintiffs' Complaint as follows:

## FIRST AFFIRMATIVE DEFENSE

The claims asserted by Plaintiffs in Count I and Count II against KPT may be barred, in whole or in part, due to Plaintiffs' lack of standing and/or lack of procedural capacity to prosecute such claims.

## SECOND AFFIRMATIVE DEFENSE

The claims asserted by Plaintiffs in Count I and Count II may be barred, in whole or in part, due to the absence of personal jurisdiction over KPT.  KPT is a nonresident defendant with no contact or ties with the State of Florida that would subject KPT to this Court's jurisdiction. For the Court to exercise jurisdiction over a nonresident defendant, that defendant must have sufficient "minimum contacts" with the forum state, such that maintenance of the suit does not

offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). KPT denies that it has engaged in substantial or continuous and systematic activities in Florida such as to subject KPT to the jurisdiction of this Court.

**THIRD AFFIRMATIVE DEFENSE**

The Plaintiffs fails to state a claim upon which relief can be granted as it fails to allege requisite facts substantiating each element of the causes of action in Count I and Count II against KPT.

**FOURTH AFFIRMATIVE DEFENSE**

The Plaintiffs fail to state a claim upon which relief can be granted for products liability, as the doctrine of strict products liability does not apply to structural improvement to real estate.

**FIFTH AFFIRMATIVE DEFENSE**

This action is barred by Plaintiffs' failure to join indispensable parties.

**SIXTH AFFIRMATIVE DEFENSE**

The Plaintiffs fail to properly mitigate their damages and such failure to mitigate bars or reduces, in whole or in part, any damages which otherwise may be awarded to Plaintiffs, which liability is denied by KPT.

**SEVENTH AFFIRMATIVE DEFENSE**

The Plaintiffs' claims are barred by the doctrine of voluntary assumption of risk as Plaintiffs did not inspect the drywall at issue upon delivery.

**EIGHTH AFFIRMATIVE DEFENSE**

KPT pleads all defenses and affirmative defenses as may be sustained by the evidence, including but not limited to: (1) that any drywall manufactured or sold by KPT was not defective

20

or substandard at the time it left the control of KPT; (2) that the drywall was not unreasonably dangerous in any way; (3) that the drywall was not unfit for its intended purpose or use; (4) that the drywall was placed in an unreasonable and/or unanticipated use; (5) that the drywall was sold to a sophisticated user and/or purchaser of the product; (6) that the drywall was state-of-the-art; (7) that KPT did not know and could not know of any alleged design characteristic that caused any alleged damage or the danger of such alleged characteristic; (8) that KPT did not know and could not have known of any alternative design; (9) that any alternative design identified was not feasible in light of then-existing reasonably available scientific and technological knowledge or the then-existing economic practicality; and (10) that no additional warnings were feasible or required.

## NINTH AFFIRMATIVE DEFENSE

The alleged condition of the drywall, if any, was open, obvious, discoverable, and/or known to Plaintiffs and/or should have been known to Plaintiffs upon reasonable inspection and, as a result, Plaintiffs' negligence claims against KPT are barred, in whole or in part.

## TENTH AFFIRMATIVE DEFENSE

The Plaintiffs have failed to properly give notice of any breach of a contract for sale of the affected drywall and therefore any warranty or nonconformance claims are barred.

## ELEVENTH AFFIRMATIVE DEFENSE

KPT drywall at issue was designed, manufactured, assembled, distributed, and sold in compliance with applicable industry and governmental standards and regulations, and a rebuttable presumption exists pursuant to §768.1256, Florida Statutes, with respect to the safety of the drywall.

## TWELFTH AFFIRMATIVE DEFENSE

KPT is entitled to all benefits and protections afforded by §768.1257, Florida Statutes.

## THIRTEENTH AFFIRMATIVE DEFENSE

KPT affirmatively alleges that the drywall was altered and/or otherwise substantively changed by Plaintiffs and/or by third parties.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs or others altered, modified, abused, and/or misused the product at issue and/or failed to follow the product's instructions and warnings regarding the use of the product at issue, Plaintiffs' claims against KPT are barred.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Plaintiffs failed to exercise ordinary care on their own behalf, which negligence and carelessness was a proximate cause of some portion, up to and including the whole thereof, of the injuries and damages complained of in this action.  Plaintiffs' recovery therefore against KPT, if any, should be barred or reduced according to principles of comparative negligence and/or contributory negligence.

## SIXTEENTH AFFIRMATIVE DEFENSE

Persons, corporations or entities, including non-parties, other than KPT failed to exercise ordinary care on their own behalf, which negligence and carelessness was a proximate cause of some portion, up to and including the whole thereof, of the injuries and damages complained of by Plaintiffs in this action. The fault, if any, of KPT should be compared with the fault of the other defendants and damages, if any, should be apportioned among the defendants in direct relation to each defendant's comparative fault.  KPT should be obligated to pay only such damages, if any, which are directly attributable to its percentage of comparative fault. To require KPT to pay any more than its percentage of comparative fault, if any, violates the equal

protection and due process clauses of the Constitution of the United States and similar provisions of the Constitution of the State of Florida.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The damages sustained by Plaintiffs, if any, were caused by intervening forces and/or the negligent acts of Plaintiffs or other parties, including non-parties, over which KPT had not duty or control.  Any damages awarded to Plaintiffs are therefore subject to apportionment pursuant to Florida Statutes § 768.81 and *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993).  However, at this time, all at-fault persons or entities are unknown to KPT.  KPT reserves the right to place on the Jury Verdict Form any parties that may also be culpable for the damages alleged to have been sustained by Plaintiffs in this action, including any non-party *Fabre* defendants.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Evidence in this case, including evidence of damages sustained by Plaintiffs, if any, was willfully and permanently destroyed by Plaintiffs, their agents or others over whom KPT has no control, in violation of KPT's cautious instructions and placing Plaintiffs on notice against the spoliation and/or destruction of evidence and adherence to preservation protocols.  Plaintiffs should be estopped from asserting claims for losses due to Plaintiffs' voluntary and intentional destruction of material evidence.  Plaintiffs' claims should therefore be barred and KPT should be discharged and relieved of liability.  Alternatively, plaintiffs should be disallowed from relying upon such evidence in calculating damages.

## NINETEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred and/or reduced by the negligent destruction of evidence by Plaintiffs, their agents or others over whom KPT has no control.

### TWENTIETH AFFIRMATIVE DEFENSE

KPT is not liable for alleged damages sustained by Plaintiffs arising or resulting from drywall in the alleged Affected Homes that are not manufactured by KPT and over which KPT exercised no control.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

KPT is entitled to a credit and/or set-off for any benefits, collateral source payments, or other sources of set-offs or recoupment, described in §§ 768.31 and/or 768.76, Florida Statutes, that have been paid or are payable to or on behalf of Plaintiffs.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the economic loss doctrine.  Under Florida law, damage to components of homes developed by Plaintiffs are not considered damage to "other property." *Jamco, Inc. v. Polygard, Inc.*, 668 So. 2d 300, 303 (Fla. 4th DCA 1996) (finding that the economic loss rule under Florida law "bars the use of tort remedies to make society as a whole pay for the failure of the purchases to protect his own interests by bargaining for appropriate provisions in his own contract"); *see also Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993) (finding that purchasers of defective products are limited by law to those damages that were or could have been provided by contract between the purchaser and his immediate seller).

### TWENTY-THIRD AFFIRMATIVE DEFENSE

KPT asserts that any award of remediation damages must not exceed the fair market value of the land or property.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs were negligent in the performance of their duties and, therefore, are precluded from recovering damages under its common law indemnity and equitable subrogation claims against KPT.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

The claims asserted in Count I and Count II of the Complaint may be time barred, in whole or in part, due to laches and/or the applicable statute(s) of limitation set forth in §95.11, Florida Statutes.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

KPT affirmatively alleges that this action is duplicative of numerous previously filed actions involving the same parties and substantially similar issues and thus, this action should be stayed and/or abated.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

KPT specifically avers any and all affirmative defenses specifically enumerated in the Florida Rules of Civil Procedure which are applicable in this case and/or any and all affirmative defenses recognized by this jurisprudence, and these are specifically pled herein.

Dated: April 21, 2010

Respectfully submitted,

/s/ Douglas B. Sanders

Douglas B. Sanders
Richard Franklin
BAKER & MCKENZIE LLP
130 E. Randolph Dr.
Chicago, IL 60601
Telephone: (312) 861-8075
Facsimile:  (312) 698-2375
Email: douglas.b.sanders@bakernet.com

Donald J. Hayden
BAKER & MCKENZIE LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8966
Facsimile:  (305) 789-8953
E-mail: Donald.hayden@bakernet.com

Kerry Miller (LA Bar No. 24562)
Kyle A. Spaulding (LA Bar No. 29000)
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone:  (504) 599-8194
Facsimile:  (504) 599-8145
Email: kmiller@frilot.com

*Attorneys for Defendant, Knauf
Plasterboard (Tianjin) Co., Ltd.*

## <u>CERTIFICATE</u>

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 2047, on this 21st day of April, 2010.

s/Douglas B. Sanders