IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

**IN RE: CHINESE MANUFACTURED DRYWALL**
**PRODUCTS LIABILITY LITIGATION**

MDL NO. 2047
SECTION: L

**THIS DOCUMENT RELATES TO:**
**09-cv-4119 (MORRIS–CHIN)**

JUDGE FALLON
MAG. JUDGE WILKINSON

JANET MORRIS–CHIN and DAJAN
GREEN, individually and on behalf of all
others similarly situated,

  Plaintiffs,

     v.

KNAUF PLASTERBOARD TIANJIN CO.
LTD., KNAUF GIPS KG, KNAUF PLASTERBOARD
(WUHU) CO. LTD., KNAUF PLASTERBOARD
(DONGGUAN) CO. LTD., and ROTHCHILT INT'L.,
LTD.,

  Defendants.


**DEFENDANTS KNAUF PLASTERBOARD (TIANJIN) CO. LTD., KNAUF**
**PLASTERBOARD (WUHU) CO, LTD. AND KNAUF GIPS KG'S**
**<u>MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ...................................................................................................... 3

        A.      Plaintiffs Fail To State A Cause Of Action For Breach Of Implied
                Warranty Of Fitness (Count III)............................................................ 3

                1.      Plaintiffs' claim for Breach of an Implied Warranty is preempted
                        by the CISG and otherwise barred as a matter of law........................... 3

                2.      Plaintiffs do not, and cannot, allege privity, which is required to
                        sustain a claim for Breach of an Implied Warranty of Fitness ................. 4

                3.      To the extent Plaintiffs' claims is governed by the UCC, recovery
                        is barred because the drywall is not a "good" within the meaning of
                        the UCC............................................................................................ 6

                4.      Plaintiffs fail to state a claim for breach of the Implied Warranty of
                        Fitness for a Particular Purpose because no non-ordinary purpose
                        is alleged........................................................................................... 10

        B.      Plaintiffs Fail To State A Cause Of Action For Unjust Enrichment (Count
                IV) ...................................................................................................... 10

        C.      Plaintiffs Fail To State A Cause Of Action For Private Nuisance (Count
                V)........................................................................................................ 13

                1.      "Same-property private nuisance" claims are not recognized under
                        Florida law....................................................................................... 14

                2.      Plaintiffs fail to allege the necessary facts to bring a claim for
                        private nuisance ............................................................................... 15

        D.      Plaintiffs Fail To State A Cause Of Action For Medical Monitoring
                (Count VI)............................................................................................ 20

III.    CONCLUSION.................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C ASES

*Allmond v. Bank of Am.*,
    No. 3:07-cv-186-J-33JRK, 2008 U.S. Dist. LEXIS 4788 (M.D. Fla. Jan. 23, 2008)............. 23

*Ames v. Winnebago Indus., Inc.*,
    5:04-cv-359-Oc-10GRJ, 2005 U.S. Dist. LEXIS 35226 (M.D. Fla. Oct. 14, 2005)............... 9

*Ashley Square, Ltd. v. Contractors Supply of Orlando, Inc.*,
    532 So. 2d 710 (Fla. Ct. App. 1988)................................................................................. 6

*Bailey v. Janssen Pharm., Inc.*,
    288 Fed. Appx. 597 (11th Cir. (Fla.) 2008) ...................................................................... 10

*Beckman v. Marshall*,
    85 So. 2d 552 (Fla. 1956).............................................................................................14, 16

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)..............................................................................................passim

*Borchardt v. Mako Marine Int'l, Inc.*,
    No. 08-61199, 2009 U.S. Dist. LEXIS 107192 (S.D. Fla. Nov. 17, 2009) ........................ 4, 5

*Brophy v. DaimlerChrysler Corp.*,
    932 So.2d 272 (Fla. Ct. App. 2005)................................................................................. 4

*Brown v. United States Postal Svc.*,
    338 Fed. Appx. 438 (5th Cir. Tex. 2009)............................................................................ 2

*Chase Manhattan Mortg. Corp. v. Padgett*,
    268 B.R. 309 (S.D. Fla. 2001).......................................................................................... 3

*City of St. Petersburg v. Dayco Prods., Inc.*,
    06-20953, 2008 U.S. Dist. LEXIS 104765 (S.D. Fla. Dec. 30, 2008).................................. 12

*Clear Lake City Water Auth. v. Friendswood Dev. Co.*,
    256 S.W.3d 735 (Tex. Ct. App. 2008) ............................................................................... 8

*Cruz v. Mylan, Inc.*,
    8:09-CV-1106-T17-EAJ, 2010 U.S. Dist. LEXIS 13563 (M.D. Fla. Feb. 17, 2010) ............. 4

*Durrance v. Sanders*,
    329 So. 2d 26 (Fla. Ct. App. 1976)........................................................................16, 18, 19

*Feheley v. LAI Games Sales, Inc.*,
    08-23060, 2009 U.S. Dist. LEXIS 70430 (S.D. Fla. Aug. 10, 2009) .................................. 11

*Florida v. Tenet Healthcare Corp.*,
    420 F. Supp. 2d 1288 (S.D. Fla. 2005) .................................................................. 11, 12, 13

*Gates v. W.R. Grace & Co.*,
    No. 08-cv-2560-T-27TBM, 2009 U.S. Dist. LEXIS 47612 (M.D. Fla. May 20, 2009)....16, 17

*Gordon v. Acrocrete, Inc.*,
    05-0329-WS-M, 2006 U.S. Dist. LEXIS 31015 (S.D. Ala. Apr. 24, 2006) ........................... 8

*Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*,
    329 F.3d 1241 (11th Cir. 2003) ..................................................................................... 11, 13

*Hibbets v. Lexington Ins. Co.*,
    No. 07-5169, 2009 U.S. Dist. LEXIS 54777 (E.D. La. June 12, 2009) .................................. 2

*Hoyte v. Stauffer Chem. Co.*,
    No. 98-3024-CI-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002) .............................21, 22

*Italiano v. Jones Chems., Inc.*,
    908 F. Supp. 904 (M.D. Fla. 1995) ..................................................................................... 20

*Jacobs v. Osmose*,
    No. 01-944-CIV, 2002 U.S. Dist. LEXIS 1926 (S.D. Fla. 2002) ...................................21, 22

*Jebaco Inc. v. Harrah's Operating Co. Inc.*,
    587 F.3d 314 (5th Cir. (La.) 2009) ....................................................................................... 2

*Jones v. Trawick*,
    75 So. 2d 785 (Fla. 1954) .................................................................................................. 16

*Keck v. Dryvit Sys., Inc.*,
    830 So. 2d 1 (Ala. 2002) ................................................................................................7, 8, 9

*Kramer v. Piper Aircraft Corp.*,
    520 So. 2d 37 (Fla. 1988) .................................................................................................... 4

*Kramer v. Piper Aircraft Corp.*,
    868 F.2d 1538 (11th Cir. (Fla.) 1989) .................................................................................. 9

*Lantz v. Am. Honda Motor Co.*,
    No. 06 C 5982, 2007 U.S. Dist. LEXIS 34948 (N.D. Ill. May 14 2007 ................................ 6

*Media Servs. Group, Inc. v. Bay Cities Communs., Inc.*,
    237 F.3d 1326 (11th Cir. 2001) .......................................................................................... 10

*Morgan v. W.R. Grace & Co.*,
    779 So. 2d 503 (Fla. 2d Dist. Ct. App. 2000) ...............................................................passim

*Nitram Chems., Inc. v. Parker*,
    200 So. 2d 220 (Fla. Ct. App. 1967)..................................................................... 17

*Nova Info. Sys., Inc. v. Greenwich Ins. Co.*,
    365 F.3d 996 (11th Cir. 2004).............................................................................. 11

*Perez v. Metabolife Int'l, Inc.*,
    218 F.R.D. 262 (S.D. Fla. 2003) .......................................................................... 22

*Petito v. A.H. Robins Co., Inc.*,
    750 So. 2d 103 (Fla. Ct. App. 1999)..........................................................20, 21, 22

*Philadelphia Elec. Co. v. Hercules, Inc.*,
    762 F.2d 303 (3d Cir. 1985).................................................................................. 14

*Price v. Housing Auth. of New Orleans*,
    No. 07-9741, 2008 U.S. Dist. LEXIS 75125 (E.D. La. Sept. 29, 2008)................................ 2

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...........................................................11, 12

*Rae v. Flynn*,
    690 So. 2d 1341 (Fla. 3d Dist. Ct. App. 1997)..................................................... 13

*Rentas v. DaimlerChrysler Corp.*,
    936 So.2d 747 (Fla. Ct. App. 2006).................................................................... 4

*Rink v. Cheminova, Inc.*,
    203 F.R.D. 648 (M.D. Fla. 2001) ........................................................................ 22

*Roe v. Aware Women Ctr. for Choice, Inc.*,
    253 F.3d 678 (11th Cir. 2001).............................................................................. 15

*Rose v. General Motors Corp.*,
    323 F. Supp. 2d 1244 (N.D. Ala. 2004)................................................................ 9

*Sunray Oil Corp. v. Sharpe*,
    209 F.2d 937 (5th Cir. 1954)................................................................................ 18

*T.W.M. v. American Medical Sys., Inc.*,
    886 F. Supp. 842 (N.D. Fla. 1995) .................................................................. 4, 5

*Wyeth, Inc. v. Gottlieb*,
    930 So. 2d 635 (Fla. Ct. App. 2006)................................................................... 21

**STATUTES**

1429 U.N.T.S. 3. ........................................................................................................... 3

FLA. STAT. ANN. § 672.105(1) ...................................................................................... 7

FLA. STAT. ANN. 672.107(2) ......................................................................................... 7

FLA. STAT. ANN. § 672.314 ........................................................................................... 6

FLA. STAT. ANN. § 672.315 ...................................................................................... 6, 10

FLA. STAT. ANN. § 672.318 ........................................................................................... 6

UCC § 2-103(1)(k) ........................................................................................................ 7

UCC § 2-107(2) ............................................................................................................. 7

UCC § 2-314 .................................................................................................................. 6

UCC § 2-315 .................................................................................................................. 6

UCC § 2-318 .................................................................................................................. 6

**OTHER AUTHORITIES**

Dan B. Dobbs, *The Law of Torts*, § 463 (2001) ...................................................... 14

Richard R. Powell, *Powell on Real Property,* §64.02[3] (Michael Allan Wolf ed., 2000) .......... 14

PROSSER AND KEETON ON TORTS, § 87 (5th ed. 1984) ............................................. 16

**RULES**

FED. R. CIV. P. 12(b)(2) ................................................................................................ 1

FED. R. CIV. P. 12(b)(6) .................................................................................. 1, 2, 13, 20

FED. R. CIV. P. 9(g) ..................................................................................................... 20

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd. and Knauf Gips KG ("Knauf Gips"),[1] hereby moves this Court for an Order dismissing Counts III–VI of the Amended Class Action Complaint ("Complaint" or "Compl.") of Janet Morris–Chin and Dajan Green, individually and on behalf of all others similarly situated. As set forth more fully herein, Plaintiffs' Class Action Complaint fails to set forth causes of action against Defendants, under the applicable law of the State of Florida,[2] for: (i) breach of implied warranty of fitness (Count III); (ii) unjust enrichment (Count IV); (iii) private nuisance (Count V); and (iv) medical monitoring as a form of "[e]quitable [r]elief" (Count VI).[3]

## I.   INTRODUCTION

With respect to each of the Counts III, IV, V, and VI of the Complaint, Plaintiffs fail to state a claim against Defendants upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6). A court may grant a motion to dismiss pursuant to a motion under Rule 12(b)(6) if the complaint lacks "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

---

[1] Knauf Gips KG has filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that this Court does not have no personal jurisdiction over it.  Knauf Gips joins this motion as a matter of judicial economy but is not waiving its objection to jurisdiction.

[2] Plaintiff purports to bring a class action lawsuit on behalf of "[a]ll natural persons and business entities residing in the United States whose homes contain the defective drywall" (Compl. at ¶ 32), but representative plaintiffs reside only from Florida. In the event this class is ever certified, KPT will apply the law of the other respective states at issue to determine whether the named Plaintiffs have stated viable causes of action under the laws of those states.

[3] On September 30, 2009, KPT, Knauf Wuhu and Knauf Gips joined in a Motion to Dismiss Or, Alternatively, To Strike Plaintiffs' Claims for Economic Damages, which was brought as a global motion in the MDL seeking to bar Plaintiffs' tort claims based on the application of the economic loss doctrine. On January 13, 2009, this Court denied the Motion.  KPT, Knauf Wuhu and Knauf Gips filed a request that the Court's order be certified for interlocutory appeal.   This Court denied the request on March 23, 2010.  KPT had filed a similar interlocutory appeal in Florida state court, which was granted and is currently before the Florida Third District Court of Appeals.  In light of this Court's prior ruling and in an effort to further judicial economy and to preserve its rights with regard to the arguments made in the Economic Loss Doctrine Motion to Dismiss, Moving Defendants incorporate and renew (without additional briefing) the arguments made previously in their Economic Loss Doctrine Motion to Dismiss.

*Twombly,* 127 S. Ct. 1955, 1974 (2007); *Jebaco Inc. v. Harrah's Operating Co. Inc*., 587 F.3d 314, 318 (5th Cir. (La.) 2009) (affirming motion to dismiss on alternate ground that complaint failed to allege sufficient facts to support allegations therein).   A motion to dismiss tests the sufficiency of a complaint, which, to survive a motion to dismiss pursuant to Rule 12(b)(6), must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 127 S. Ct. at 1964-65; *Brown v. United States Postal Svc.*, 338 Fed. Appx. 438, 440 (5th Cir. Tex. 2009) ("The court can[] accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations.") ((internal quotations omitted)).

Pursuant to Rule 12(b)(6), although the court construes all reasonable factual inferences in Plaintiffs' favor, it need not accept the Plaintiffs' inferences if they are unsupported by the facts set forth in the complaint.  Twombly*, 127 S. Ct. at 1965 (quoting *Papasan* v. *Allain*, 106 S. Ct. 2932, 2944 (1986)).  Moreover, the factual allegations made must "be enough to raise a right to relief above a speculative level." *Twombly*, 127 S. Ct. at 1965; *Price v. Housing Auth. of New Orleans*, No. 07-9741, 2008 U.S. Dist. LEXIS 75125, at *12 (E.D. La. Sept. 29, 2008) (granting motion to dismiss pursuant to Rule 12(b)(6) motion and noting that where allegations do not meet the standard, "the plaintiff pleads itself out of court").  Furthermore, the complaint "must allege facts sufficiently setting forth the essential elements of cause of action" in order for that cause of action to survive the motion.  *Hibbets v. Lexington Ins. Co.*, No. 07-5169, 2009 U.S. Dist. LEXIS 54777, at *14 (E.D. La. June 12, 2009) (dismissing claims where complaint merely identified elements of claims but "provided no factual allegations to connect the plaintiffs to those causes of action and an entitlement to relief").  Here, each of Plaintiffs' Counts III, IV, V,

and VI fail to meet the *Twombly* standard, requiring dismissal of the claims with respect to Defendants.

## II.     ARGUMENT

### A.     Plaintiffs Fail To State A Cause Of Action For Breach Of Implied Warranty Of Fitness (Count III).

Plaintiffs' claim for Breach of Implied Warranty of Fitness is fatally flawed for several reasons.  As a threshold matter, the claim is preempted by the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), which governs the sale of the products in this action and also requires privity.  Moreover, Florida jurisprudence requires privity, which the Plaintiffs do not have and do not allege.  For that reason alone, the claim fails.  Alternatively, the UCC does not apply because drywall is not a "good" under the UCC.  Because no privity exists, the Plaintiffs cannot maintain an action under any common-law theory of implied warranty.

#### 1.     Plaintiffs' claim for Breach of an Implied Warranty is preempted by the CISG and otherwise barred as a matter of law.

Warranty claims are quasi-contractual, and therefore arise out of the underlying sales contract of the product at issue.  The underlying sales contract or contracts for KPT drywall sold into the United States involve contracting parties from different nations that are signatories to the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, 1489 U.N.T.S. 3 ("CISG") (reprinted in 15 U.S.C. App.).  Articles 35 and 36 of the CISG permit what are, in essence, warranty claims, but such claims require privity of contract.  15 U.S.C. App. Arts. 35-36.  Because the CISG is federal law, its provisions preempt inconsistent state law claims.  *See Chase Manhattan Mortg. Corp. v. Padgett*, 268 B.R. 309, 314, n. 6 (S.D. Fla. 2001).  As Florida requires privity for Plaintiffs to state an action for breach of implied warranty, the result under the CISG and state law is the same, and dismissal is required.

2.     **Plaintiffs do not, and cannot, allege privity, which is required to sustain a claim for Breach of an Implied Warranty of Fitness.**

Plaintiffs have not, and indeed cannot, make out a claim for breach of the implied warranty of fitness under Florida law because there is no privity between Defendants and any Plaintiffs or Class Members.  (Compl. at ¶¶ 68-79).  Under Florida law, privity is required in order to bring a cause of action for breach of implied warranty against a manufacturer.  *Cruz v. Mylan, Inc.*, 8:09-CV-1106-T17-EAJ, 2010 U.S. Dist. LEXIS 13563, at *4 (M.D. Fla. Feb. 17, 2010) (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988));  *Borchardt v. Mako Marine Int'l, Inc.*, No. 08-61199, 2009 U.S. Dist. LEXIS 107192, *12-13 (S.D. Fla. Nov. 17, 2009) (citing *Ocana v. Ford Motor Co.*, 992 So.2d 319, 325 (Fla. Ct. App. 2008) (internal citations omitted)); *T.W.M. v. American Medical Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (quoting *Intergraph Corp. v. Stearman*, 555 So.2d 1282, 1283 (Fla. Ct. App. 1990)) ("'Privity is required in order to recover damages from the seller of a product for breach of … implied warranties.'").[4]

A plaintiff who purchases a product from a party other than the defendant is not in privity with that defendant.  *Cruz*, 2010 U.S. Dist. LEXIS 13563, at *4 (citing *T.W.M.*, 886 F. Supp. at 844) (dismissing claim for lack of privity where plaintiff had purchased allegedly defective drug from pharmacy rather than from defendant manufacturer); *Rentas v. DaimlerChrysler Corp.*, 936 So.2d 747, 751 (Fla. Ct. App. 2006) (holding that lack of privity between buyers and manufacturer precluded claim for breach of implied warranty); *Brophy v. DaimlerChrysler*

---

[4] Florida courts have unequivocally held that the doctrine of strict liability in tort displaced all claims for breach of implied warranty where privity was absent – and in fact that strict liability doctrine was developed specifically to address such claims.  *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) (quoting *Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.*, 500 So. 2d 688, 692 (Fla. Ct. App. 1987)).

*Corp.*, 932 So.2d 272, 275 (Fla. Ct. App. 2005)) (affirming dismissal of claim for implied warranty because complaint "did not allege the requisite privity of contract")).

In *Borchardt*, the plaintiffs purchased vessels in "used" condition from a third-party non-defendant or an from an unidentified person. *Borchardt*, 2009 U.S. Dist. LEXIS 107192, at *12-13. However, "[t]here [was] no allegation in the Complaint to establish that there is privity of contract" between the plaintiffs and the defendant. *Id.* (citing *T.W.M.*, 886 F. Supp. at 844; *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007)). Accordingly, the court dismissed the breach of implied warranty of merchantability claim "with leave to amend to allege privity, if [the plaintiffs could] do so in good faith." *Borchardt*, 2009 U.S. Dist. LEXIS 10792, at *13.

Here, the requisite privity for a claim of breach of implied warranty cannot be found. Each Plaintiff is alleged to have "purchased a home containing defective drywall," rather than to have purchased the allegedly defective drywall itself. (Compl. at ¶ 7 (defining "Plaintiffs"); *see also Id.* at ¶¶ 28-29 ("… Plaintiffs purchased a new residence … Plaintiffs closed on and moved into their new home, which – unbeknownst to them – was built with defective drywall manufactured and supplied by Defendants.")). To the extent Plaintiffs allege to have indirectly purchased drywall from Defendants, such an allegation does not satisfy the privity requirement of a claim for breach of implied warranty. *T.W.M.*, 886 F. Supp. at 844. Thus, like the claim in *Borchardt*, this claim merits dismissal on this ground alone. However, unlike the *Borchardt* claimants, Plaintiffs here cannot amend their Complaint to allege privity, because Defendants not entered into a contract with Plaintiffs.

In fact, the allegation of one or more "distributor[s]" defeats any implication of privity between Plaintiffs and Defendants here. (*Id.* at ¶ 12 ("Rothchilt is the distributor and/or importer

of the defective drywall … placed in Plaintiffs' home and the homes of those similarly situated.")) Nor is there any alleged assignment to Plaintiffs of any potential claims by such distributors. *Ashley Square, Ltd. v. Contractors Supply of Orlando, Inc.*, 532 So. 2d 710, 711 n.4 (Fla. Dist. Ct. App. 5th Dist. 1988) (noting that claims for breach of implied warranty cannot exist absent privity and finding privity between the parties where Plaintiff had received an assignment of all claims of a stucco distributor who had directly purchased allegedly defective stucco from the defendant manufacturer)). Nor, finally, do Plaintiffs allege that any such distributor had an agency relationship with Defendants so as to potentially overcome the privity bar. (Compl. at ¶ 12); *Lantz v. Am. Honda Motor Co.*, No. 06 C 5932, 2007 U.S. Dist. LEXIS 34948 (N.D. Ill. May 14 2007) (dismissing claims for implied breach of warranty for lack of privity where plaintiffs had purchased allegedly defective motorcycles from distributor–dealers but had failed to sufficiently allege that an agency relationship existed between the dealers and the manufacturer), *dismissed without prejudice in part*, 2008 U.S. Dist. LEXIS 3556 (N.D. Ill. Jan. 17, 2008)).

3.  **To the extent Plaintiffs' claims is governed by the UCC, recovery is barred because the drywall is not a "good" within the meaning of the UCC.**

The implied warranty claim must fail because the UCC does not apply with respect to Defendants' sales of drywall. As codified by the states, the UCC, where applicable, implies a warranty of fitness for a particular purpose. UCC §§ 2-314, 2-315; Fla. Stat. Ann. §§ 672.314, 672.315. A separate provision permits "third party beneficiaries" of express or implied warranties to recover for certain losses when those implied warranties are breached. UCC § 2-318 (providing three model statutes for states to adopt); Fla. Stat. Ann. § 672.318 (same).

However, those UCC remedies apply only to the sale of "goods," and drywall is not a "good." Under the UCC, the term "goods":

> means all things that are movable at the time of identification to a
> contract for sale. The term includes future goods, specially
> manufactured goods, the unborn young of animals, growing crops,
> and other identified things attached to realty as described in
> Section 2-107.  The term does not include information, the money
> in which the price is to be paid, investment securities under Article
> 8, the subject matter of foreign exchange transactions, or choses in
> action.

UCC §§ 2-103(1)(k).  Although something is affixed to realty may still be a "good," it ceases to

be a good if its removal would result in material harm:    "Article [2,] in including within its

scope 'things attached to realty[,]' adds the further test that they must **be capable of severance**

**without material harm thereto**."  UCC §§ 2-107(2); 2-105 official cmt. ¶ 1 (emphasis added);

*see also* FLA. STAT. ANN. §§ 672.105(1), 672.107(2).

Several courts have found that construction materials similar to drywall that are

integrated into a home are not "goods" under the UCC.  *See, e.g.*, *Keck v. Dryvit Sys., Inc.*, 830

So. 2d 1, 8-9 (Ala. 2002) (citing ALA. CODE 1975 § 7-2-105, official cmt. ¶ 1).  In *Keck*, the

Supreme Court of Alabama considered whether an exterior insulation finishing system ("EIFS")

– a multilayer system composing home's exterior wall – was a "good" under the UCC.  *Keck*,

830 So. 2d at 8-9.  The court found that EIFS was **not** a "good" because it was incorporated into

the realty and could not be removed without causing material harm to the home:

> [T]o be considered a product within the meaning of the UCC, the
> EIFS must be capable of severance from the Kecks' home without
> causing material harm to the home.  Because of the nature and
> character of the EIFS, we cannot say that the EIFS can be detached
> from the house without causing significant harm to the house. The
> EIFS is a multilayer system that composes the exterior wall of the
> Kecks' home. The EIFS was attached to the underlying sheathing
> of the Kecks' home during construction of the home. Once
> incorporated into realty, the EIFS loses its distinct characteristic as
> a "good" and becomes an integral part of the structure of a home.
> Removing the EIFS from the Kecks' home would damage the
> underlying sheathing of the house and the overall structural
> integrity of the house, leaving the house exposed to the elements.
> Because removal of the EIFS would unquestionably result in

material harm to the Kecks' home, the EIFS cannot be considered a "good" within the meaning of the UCC.

Id. at 8 (emphasis added); *see also Gordon v. Acrocrete, Inc.*, 05-0329-WS-M, 2006 U.S. Dist. LEXIS 31015, *23 (S.D. Ala. Apr. 24, 2006) (citing *Keck*, 830 So. 2d 1) (finding that stucco system used on home's exterior was not a "good" for UCC purposes); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 750 (Tex. Ct. App. 2008) (citing Tex. Bus. & Com. Code Ann. § 2.105(a)) (finding that "the potential sale to the [water a]uthority of fixtures that have become part of the real property does not involve the provision of goods" under the UCC).

The *Keck* court noted the conformity of its conclusion with a Virginia opinion, wherein the court had concluded that, notwithstanding the absence of a privity requirement under Virginia law, EIFS was not a "good":

> "The EIFS at issue in this case was a good at one time, but once it was incorporated into the walls of the units it ceased to be a 'good' in that it lost any distinctive characteristic it once had. To hold otherwise would be to hold that any 'building component' used in the construction of any building contains a manufacturer's warranty applicable to remote plaintiffs simply because it was a good at some time. If this was the intent of the legislature in enacting the anti-privity statute then the General Assembly is the proper forum to specifically address the issue regarding building components incorporated into realty."

Keck, 830 So. 2d at 9 (quoting *BayPoint Condominium Ass'n, Inc. v. Dryvit Sys.*, CL99-475, Apr. 3, 2001 (unpublished)) (emphasis in *Keck*).[5]

Here, the allegedly defective drywall, like the allegedly defective EIFS in *Keck* and *BayPoint Condominium*, is incorporated into property, and its removal would materially harm Plaintiffs' homes. In fact, Plaintiffs concede that the drywall cannot be removed from Plaintiffs'

---

[5] The court also concluded that the EIFS was not a "product" under the Alabama Extended Manufacturer's Liability Doctrine. *Keck*, 830 So. 2d at 7.

homes without causing harm, as their damages claim includes replacement of the drywall.  (*See,
e.g.*, Compl. at ¶ 2619).  Furthermore, the fact that the drywall at issue may have been a good at
one time is unavailing.  *Keck*, 830 So. 2d at 8. Given the failure of the drywall to meet the UCC
test for "goods," the statute cannot apply, and thus the state's UCC provisions afford no avenue
of relief with respect to KPT.

The common law affords no recourse equivalent to the implied warranty of fitness for a
particular purpose, nor for "third party beneficiaries," against a manufacturer where direct privity
is lacking; other remedies are found in tort.  *Kramer v. Piper Aircraft Corp.*, 868 F.2d 1538,
1540 (11th Cir. (Fla.) 1989) (citing *Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976)) (per
curiam) (noting that "strict liability in tort … in effect abolished the cause of action for violation
of implied warranty in a non-privity situation").  Therefore, Plaintiffs cannot maintain a claim for
the implied warranty of fitness, nor for recovery as "third party beneficiaries," because that
warranty and attendant rights arise solely under UCC provisions governing the sale of "goods."

Relatedly, Florida courts do not consider a manufacturer who has not sold goods directly
to the plaintiff to be a "seller" within the meaning for purposes of the implied warranty of fitness
for a particular purpose; thus, plaintiffs cannot, under Florida law, state claims for breach of
those implied warranties.  *Ames v. Winnebago Indus., Inc.*, 5:04-cv-359-Oc-10GRJ, 2005 U.S.
Dist. LEXIS 35226, *14 (M.D. Fla. Oct. 14, 2005) (citing *Kramer v. Piper Aircraft Corp.*, 520
So. 2d 37) (rejecting plaintiff's contention that manufacturer was a "seller" as being contrary to
Florida law).[6]

---

[6] Alabama law does not permit recovery of economic losses resulting from breach of implied warranties
where privity is absent and appears not to permit recovery for *personal injury* for "third party
beneficiaries" where privity is lacking.  *Rose v. General Motors Corp.*, 323 F. Supp. 2d 1244, 1247-48
(N.D. Ala. 2004) (citing *Ex parte General Motors Corp.*, 769 So. 2d 903 (Ala. 1999); ALA. CODE § 7-2-
318) (ruling that under Alabama law consumer could not assert claims for personal injury against an
automobile manufacturer).

      **4.**    **Plaintiffs fail to state a claim for breach of the Implied Warranty of Fitness for a Particular Purpose because no non-ordinary purpose is alleged.**

Furthermore, even if the UCC applied, which it does not, the claim for breach of the implied warranty of fitness for a particular purpose fails as a matter of law.  (*See* Compl. at ¶ 2677).  Plaintiffs fail to allege that Defendants knew of any particular or non-ordinary purpose on which a buyer relied.  (*See* Compl. at ¶¶ 72-73).  Actual reliance on the defendant's skill or knowledge is essential to the claim for breach of implied warranty of fitness for a particular purpose.  FLA. STAT. ANN. § 672.315; *Bailey v. Janssen Pharm., Inc.*, 288 Fed. Appx. 597, 610 (11th Cir. (Fla.) 2008).  Nowhere in the Complaint do Plaintiffs allege that KPT was made aware of Plaintiffs', or any buyer's, intent that the drywall at issue be used for a "particular purpose," nor that Plaintiffs relied upon any buyer's expertise to purchase such drywall for that specific and non-ordinary use.  Thus, Plaintiffs have failed to plead a claim for breach of the warranty of fitness for a particular purpose.  In sum, to the extent Plaintiffs purport to bring a claim for breach of an implied warranty, the claim must fail.  Accordingly, the Court should dismiss Count IV with respect to Defendants.

      **B.**    **Plaintiffs Fail To State A Cause Of Action For Unjust Enrichment (Count IV).**

Plaintiffs cannot make out the equitable claim of unjust enrichment because they fail to allege having had any contact whatsoever with Defendants and because they allege no basis for stating how payment to Defendants (by Plaintiffs or by others) for the drywall, if any, would give rise to the claim that Defendants were unjustly enriched.  (*See* Compl. at ¶¶ 80-87).  Plaintiffs claiming unjust enrichment must prove that: (1) they conferred a benefit upon the named defendants; (2) the defendants appreciated this benefit; and (3) the defendants accepted and retained the benefit under inequitable circumstances and ought to pay the value thereof.  *Media*

*Servs. Group, Inc. v. Bay Cities Communs., Inc.*, 237 F.3d 1326, 1330-31 (11th Cir. 2001) (citing *Swindell v. Crowson*, 712 So. 2d 1162, 1163 (Fla. Ct. App. 1998)); *Feheley v. LAI Games Sales, Inc.*, 08-23060, 2009 U.S. Dist. LEXIS 70430, *19 (S.D. Fla. Aug. 10, 2009) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Ct. App. 2006)).   Compensation under the equitable doctrine of unjust enrichment is not appropriate where a plaintiff conferred merely "an indirect or incidental benefit on" the defendant.   *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1007 (11th Cir. 2004) (applying Florida law).

Furthermore, a claim for unjust enrichment should be dismissed where the plaintiff fails to plead that it lacks a legal remedy.   *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236-37 (S.D. Fla. 2007) (quoting *American Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).   The claimant's reliance on an alleged wrongdoing by the defendant defeats the claim of unjust enrichment in that "'the law of unjust enrichment is concerned solely with enrichments that are unjust independently of [alleged] wrongs.'"   *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (quoting *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003)) (noting that when the plaintiff relies on a wrong to supply the unjust factor, "the causative event is a wrongful enrichment rather than an unjust enrichment")) (alteration in *Tenet Healthcare Corp.*).   In fact, liability in unjust enrichment is not concerned with "fault" but with wealth being in one party's hands when it should be in another party's.   *Tenet Healthcare*, 420 F. Supp. 2d at 1309 (quoting *Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003)).   Mere allegations that it would be "unjust" for a defendant to retain a benefit obtained through the commission of an alleged wrong does not mean that the basis of the restitutionary obligation arises from an unjust enrichment.   *Guyana Tel.*, 329 F.3d at 1245 n.3.

11

Moreover, as a matter of law, Plaintiffs cannot have conferred a benefit on the Defendants that they knowingly accepted and appreciated so as to satisfy the elements of an unjust enrichment claim.  A theory of unjust enrichment is "untenable" where, as here,

> Plaintiffs had no dealing with the Defendants or even knew of their existence until after this litigation ensued; Plaintiffs have failed to present any evidence of prior dealings with [] Defendants, including evidence of any oral or written communication between Plaintiffs and [] Defendants; and Plaintiffs have also failed to point to any evidence that Defendants knew who purchased the [allegedly defective goods]. Under these undisputed circumstances, Plaintiffs cannot establish [] Defendants knowingly and voluntarily accepted any benefits conferred upon them by Plaintiffs as required to state a claim for unjust enrichment under Florida law.

*City of St. Petersburg v. Dayco Prods., Inc.*, 06-20953, 2008 U.S. Dist. LEXIS 104765, at *27-28 (S.D. Fla. Dec. 30, 2008) (dismissing claim for unjust enrichment).  The reasoning of the court in *Dayco* applies equally in this case, where the Plaintiffs conferred zero benefit on Defendants because the Plaintiffs purchased built homes and had no dealings whatsoever with Defendants.

Furthermore, even if Plaintiffs were able to state the elements of an unjust enrichment claim under the present facts, the claim would fail because it is predicated solely on the alleged wrongdoing.  Plaintiffs fail to allege that they lack an adequate legal remedy, and thus dismissal is warranted.  *See Prohias*, 490 F. Supp. 2d at 1236.  In *Prohias*, the court dismissed an action for unjust enrichment where the unjust enrichment claim was supported by the same alleged conduct as in their Consumer Fraud Act claim.  *Id.* at 1236-37.  The court reasoned that if the defendant, Pfizer, had misled the plaintiffs with its pharmaceutical marketing scheme and the plaintiffs had been damaged thereby, plaintiffs had a properly pleaded claim under the Consumer Fraud Act or a claim for negligent misrepresentation.  *Id.*  Similarly, in *Tenet Healthcare Corp.*, the court dismissed the unjust enrichment claim because it was "premised on [defendant's]

purported RICO violations and theft of outlier funds," allegations of wrongdoing for which had legal remedies were readily available.  420 F. Supp. 2d at 1309.

Similarly, here, in support of their unjust enrichment claim, Plaintiffs allege only that "Defendants knew or should have known of the damages their defective drywall would cause as described herein."  (Compl. at ¶ 83).  This allegation simply recasts the Plaintiffs' purported products liability and negligence counts and thus cannot support a claim for unjust enrichment. (*See Id.* at ¶¶ 50, 57-60).  The allegation that "Defendants' receipt and retention of the profits … is unjust and inequitable" is unavailing.  (Compl. at ¶¶ 80-87); *Guyana Tel.*, 329 F.3d at 1245 n.3.  Because the law of unjust enrichment is concerned solely with enrichments that are unjust independently of alleged wrongs, Plaintiffs' unjust enrichment claims, which are based on wrongdoing for which an adequate legal remedy exists, "must be dismissed."  *Tenet Healthcare Corp.*, 420 F. Supp. 2d at 1309  (quoting *Flint*, 337 F.3d at 1330 n.2).

For these reasons, the unjust enrichment claim of the Complaint should be dismissed with respect to Defendants.

### C.    Plaintiffs Fail To State A Cause Of Action For Private Nuisance (Count V).

Plaintiffs' claim for private nuisance also should be dismissed pursuant to Rule 12(b)(6). (Compl. at ¶¶ 88-96).  Florida does not recognize the claim where the nuisance complained of emanates from the very objects creating it – in this case, Plaintiffs' homes.  Private nuisance law is "bottomed on the fundamental rule that every person should so use his own property as not to injure that of another."  *Id.* (citing *Reaver v. Martin Theatres of Fla., Inc.*, 52 So. 2d 682 (Fla. 1951) ("a property owner may put his own property to any reasonable and lawful use, so long as he does not thereby deprive the adjoining landowner of any right of enjoyment of his property")); *Rae v. Flynn*, 690 So. 2d 1341 (Fla. 3d Dist. Ct. App. 1997).

13

### 1. "Same-property private nuisance" claims are not recognized under Florida law.

Plaintiffs seek to extend the concept of private nuisance to include those involving the same property. Such claims are explicitly disallowed under Florida law, which follows the majority rule and restricts private nuisance actions to disputes between neighboring landowners. *Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d Dist. Ct. App. 2000) (ruling that plaintiff failed to allege a theory of nuisance based upon condition on her own property that existed at time of purchase).[7] "Private nuisance is traditionally a claim based upon activities outside the land by a stranger to the title, for instance, based upon a neighbor's noise or pollution." 2 Dan B. Dobbs, *The Law of Torts*, § 463 (2001). A neighbor–proprietor relationship is the essence of the claim: "Nuisance, in law, for the most part consists in so using one's property as to injure the land or some incorporeal right of one's neighbor." *Beckman v. Marshall*, 85 So. 2d 552, 554 (Fla. 1956) (quoting *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio App. 1947)).

In *Morgan*, the court determined that plaintiff's claim for a same-property private nuisance was properly dismissed with prejudice. 779 So. 2d at 505. The court's rationale was supported by the Third Circuit Court if Appeals' decision in *Philadelphia Electric Co.*, wherein the court stated, "We believe that this result is consonant with the historical role of private nuisance law as a means of efficiently resolving conflicts between *neighboring, contemporaneous land uses.*" 762 F. 2d 303, 314 (3d Cir. 1985) (emphasis added). In *Morgan*, the court rejected the private-nuisance claim of a plaintiff who alleged that her home was unsafe

---

[7] *See also Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir. 1985); 9 Richard R. Powell, *Powell on Real Property,* §64.02[3] (Michael Allan Wolf ed., 2000) ("The conclusion of 'unreasonableness' depends then upon liability inviting conduct of the defendant plus a finding that this conduct *violates a protected interest of the neighbor-plaintiff.*") (emphasis added).

owing to radiation from uranium and other radioactive materials in the soil and that this condition existed at the time she purchased the property.  779 So. 2d at 504, 507.

Likewise, here, Plaintiffs fail to allege an actionable claim for private nuisance given that the claim does not involve a dispute between adjacent properties.  Plaintiffs impermissibly seek to expand the application of private nuisance to include same-property nuisance, which allegedly stems from the drywall causing "toxic chemicals to be released into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them potential health problems." (Compl. at ¶ 89). That Plaintiffs allege same-property private nuisance, an invalid claim under Florida law, is apparent by the relief they seek:

> replacement/repair of their homes; the removal and replacement of all of the drywall contained *in their homes*; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

(*Id.* at ¶ 94 (emphasis added)).

Florida law simply does not provide redress for such allegations of same-property private nuisance.  For this reason alone, the private-nuisance claim warrants dismissal.

## 2.    Plaintiffs fail to allege the necessary facts to bring a claim for private nuisance.

Even if Florida's long-standing and explicit same-property nuisance rule did not bar the private nuisance claim, Count VII would fail to state such a claim, for it alleges only legal conclusions and lacks the necessary factual allegations to support each element of the claim.  *See Twombly,* 550 U.S. at 555; *Roe v. Aware Women Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (even notice pleading requires that the complaint contain either direct or inferential

allegations respecting all the material elements necessary to sustain a recovery under some viable theory).   An action for private nuisance under Florida law requires plaintiffs to plead the following elements:   (1) the defendant's activity interfered with a property interest used and enjoyed by the plaintiffs; (2) the defendant's invasion with the plaintiffs' use and enjoyment of their land resulted in unreasonable and substantial harm; and (3) the defendant's maintenance of the nuisance was the natural and proximate cause of the injury to the plaintiffs' persons or real properties.  *Jones*, 75 So. 2d at 787; *Beckman v. Marshall*, 85 So. 2d 552, 555 (Fla. 1956); *Durrance v. Sanders*, 329 So. 2d 26, 29 (Fla. Ct. App. 1976); W. Page Keeton et al., PROSSER AND KEETON ON TORTS, § 87 (5th ed. 1984).

As to the first element of a cognizable claim, the Plaintiffs must plead that KPT interfered with the Plaintiffs' use and enjoyment of their property and must also allege the requisite facts to support that element.   *Twombly,* 550 U.S. at 555.   The Florida Supreme Court defined a "nuisance" as "[a]nything which annoys or disturbs one in the free use, possession, or enjoyment of his property, or which renders its ordinary use or occupation physically uncomfortable … ." *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) (holding that proposed cemetery located in a residential area is a private nuisance since the constant reminder of death would functionally deprive the home of the comfort that its owner is entitled to under the law).

In *Gates v. W.R. Grace & Co.*, No. 08-cv-2560-T-27TBM, 2009 U.S. Dist. LEXIS 47612 (M.D. Fla. May 20, 2009), the court addressed whether plaintiffs, who had owned property in Bartow, Florida, could maintain a nuisance claim against the defendants, who operated a chemical fertilizer plant adjacent to the plaintiffs' property and who had allegedly contaminated the groundwater aquifer system by releasing and discharging toxic contaminants that had

ultimately spread into plaintiffs' well.[8]   The court ruled that the plaintiffs failed to allege facts suggesting annoyance or disturbance in the use or enjoyment of the property or that the occupation of the home was physically uncomfortable.   *Id.*; *see also Nitram Chems., Inc. v. Parker,* 200 So. 2d 220, 225 (Fla. Ct. App. 1967) (injury arising from a nuisance is annoyance, discomfort, inconvenience, or sickness).   Therefore, in *Gates,* the nuisance claim failed because the facts alleging an injury arising from the nuisance were not pleaded.   *Gates*, 2009 U.S. Dist. LEXIS 47612 at \*9-10 ("Plaintiff has not … alleged what the 'nuisance' itself was, in terms of the interest invaded").

Here, other than blanket allegations, Plaintiffs do not allege sufficient facts as to their annoyance, discomfort, or disturbance that would support the first element of a private nuisance claim.   Plaintiffs argue that a nuisance exists on their property as a result of drywall allegedly manufactured or distributed by KPT which "is inherently defective because it emits various sulfide gases and/or other chemicals."  (Compl. at ¶ 1).   Applying the reasoning of *Gates* here, the court should dismiss Count V for failure to allege an actionable nuisance.

Plaintiffs also fail to meet the second element of the claim, as they fail to plead facts sufficient to establish that the interference resulted in unreasonable or substantial harm. Plaintiffs allege that chemicals are released into the Plaintiffs' homes and unreasonably interfered and continue to interfere with the Plaintiffs' "use and enjoyment of their properties and caused them potential health problems."  (Compl. at ¶ 256).   However, merely assigning labels, such as "noxious chemicals," without alleging facts in support of those labels, amounts to mere speculation.   As in *Morgan,* factual detail, other than conclusory statements, is missing concerning the level of the alleged toxic chemicals present in the respective homes and the

---

[8] Apart from this, the plaintiffs alleged that defendants released toxic contaminants into the air and soil around the plant, including plaintiffs' property. *Gates*, 2009 U.S. Dist. LEXIS 47612, at \*3.

correlation as to how these chemicals are toxic. *See Morgan*, 779 So. 2d at 504, 507. Factual allegations in a pleading must rise above a speculative level. *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp 235-236 (3d ed. 2004). Accordingly, Plaintiffs' blanket allegations are insufficient as they fail to identify how the alleged "toxic" chemicals, if deemed a nuisance, affect the interest invaded. Without supportive facts, Plaintiffs state that the "invasions were intentional and unreasonable and/or unintentional but otherwise negligent or reckless" and that "[t]he interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and ongoing." (Compl. at ¶¶ 91-92). Such statements are conclusory, mere iterations of elements of the claim without facts to substantiate the alleged substantial harm resulting from the alleged  chemicals released by the alleged defective drywall. If the second element of a nuisance action fails, there can be no liability in damages on that ground. *Sunray Oil Corp. v. Sharpe*, 209 F.2d 937 (5th Cir. 1954) ("liability in damages for a nuisance begins only when the interference causes substantial harm.").

As to the third element, causation and injury,[9] Plaintiffs fail to allege how the nuisance, the alleged "toxic" chemicals released into the Plaintiffs' home(s), is the direct and proximate cause of the harm alleged. The First District Court of Appeal considered the issue of causation in the context of a private nuisance in *Durrance v. Sanders*, 329 So. 2d 26 (Fla. 1st Dist. Ct. App. 1976). In *Durrance*, the defendants had dumped compost onto the property of one defendant; the compost inexplicably caught fire and burned for a week. *Id.* at 28-29. Plaintiff property-

---

[9] Plaintiffs' allegations as to personal injury are contradictory. The general allegations state that as a result of Defendants' alleged conduct Plaintiffs have suffered harm. (Compl. at ¶ 5). However, Count XII makes only the blanket allegation that the toxic chemicals released have caused Plaintiffs "*potential* health problems." (*Id.* at ¶ 89 (emphasis added)). Furthermore, Plaintiffs have not pleaded personal injury as an element of damages. These contradictory statements in the Complaint cast doubt on the veracity of these and other allegations in the Complaint.

owners alleged that the burning compost caused the plaintiff property-owners' well water to become contaminated. *Id.* However, the nuisance alleged was the smoke and odors from the fire. *Id.* at 29. The court's examination of the pleadings (as well as the evidence adduced at trial) led to the "inescapable conclusion that the nuisance maintained by appellants (the piles of compost) was not proved to have proximately caused the injuries suffered by appellees as a result of the fire" and that the claims therefore fell "far short of a showing that the fire, and the smoke and odors associated therewith, were proximately caused by some activity on the part of the defendants." *Id.*

Similarly, here, Plaintiffs likewise fail to plead sufficient facts that further the causation element. Plaintiffs bear the burden of showing that the nuisance alleged – "sulfide gases and/or other chemical leaching" – proximately caused the alleged injuries. Plaintiffs, rather than alleging causation, claim only that this "nuisance" "interfered with" their use and enjoyment of their property and state in conclusory fashion that this "nuisance" "caused them potential health problems." (Compl. at ¶¶ 89-90). The alleged nuisance is the chemicals released into the Plaintiffs' homes as a result of the allegedly defective drywall in those homes, but the allegation is conclusory. As in *Morgan*, factual detail, other than conclusory statements, is missing concerning the level of the alleged toxic chemicals present in the respective homes and the correlation as to how these chemicals are toxic. *See Morgan*, 779 So. 2d at 504, 507. While claiming monetary damages, Plaintiffs fail to link the alleged nuisance to the injury. (*Id.* at ¶ 94 ("As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages … .")). Nor have the Plaintiffs linked their claims for incidental and consequential damages to any acts of the Defendants in such a way as to allege

causation. (Compl. at ¶¶ 95).[10]  As a result, the third element of the Plaintiffs' private nuisance claim fails as a matter of law owing to the failure to establish, through the allegations in the pleading, that the "toxic" chemicals that are allegedly being released in Plaintiffs' homes are the proximate and natural cause of the injuries.

For the reasons set forth above, Plaintiffs' claim for private nuisance is barred under Florida law, as the alleged nuisance arises from the very property at issue and otherwise fails as improperly pleaded.  Count XII for private nuisance should therefore be dismissed pursuant to Rule 12(b)(6) with respect to Defendants.

### D.    Plaintiffs Fail To State A Cause Of Action For Medical Monitoring (Count VI).

Plaintiffs fail to state a claim for medical monitoring as a form of "[e]quitable [r]elief." (*See* Compl. at ¶¶ 97-107).  To survive a motion to dismiss under Florida law, a count for medical monitoring must, at the very minimum, allege that the plaintiffs have been exposed to contaminants through the negligence of the defendants and allege that those exposures have increased the risk of contracting serious latent diseases for which means of early detection are available.  *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106 (Fla. Ct. App. 1999). In particular, the Complaint must allege seven basic elements: (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that

---

[10] As to the claim for special damages, the claim for "other related expenses" cannot be pleaded as special damages since this catch-all phrase is not specific and therefore in direct contravention to Rule 9(g).  *See* FED. R. CIV. P. 9(g); *Italiano v. Jones Chems., Inc.*, 908 F. Supp. 904 (M.D. Fla. 1995).

normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 640 (Fla. Ct. App. 2006).  In addition to pleading these seven *Petito* elements, Plaintiff must provide factual allegations that link Plaintiffs' exposures to the Defendant's conduct, thereby providing the Defendant with sufficient notice of how Plaintiff was exposed to the allegedly hazardous substances. *Jacobs v. Osmose*, No. 01-944-CIV, 2002 U.S. Dist. LEXIS 1926, at *10 (S.D. Fla. 2002) (dismissing plaintiff's medical monitoring claim on the grounds that plaintiff's allegation that his deck was made of treated wood purchased at one of the retail defendants was conclusory and did not identify how the plaintiff was exposed to the allegedly hazardous substances).

Count VI of the Complaint fails to provide the requisite factual allegations that link the *Petito* elements to the Defendants' conduct. *Jacobs*, 2002 U.S. Dist. LEXIS, at *10.  Rather than following the Supreme Court's instruction in *Twombly*, Plaintiffs simply recite these legal elements. *Petito*, 750 So. 2d at 106-107.  Indeed, the Complaint nowhere alleges whether any procedure exists to permit early detection, or any fact to show that any scientific principle necessitates the proposed procedures – let alone identifies the monitoring procedure Plaintiffs seek to have ordered. Once again, Florida law and the Federal Rules of Civil Procedure require more. *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-CI-7, 2002 WL 31892830, at *51 (Fla. Cir. Ct. Nov. 6, 2002) ("Under *Petito*, medical monitoring is not just a form of relief, it is a separate cause of action with seven specific elements the plaintiffs must establish in order to prevail at trial, including three that expressly require proof of a monitoring program that meets particular standards.")

For instance, the Complaint never identifies any type of "serious latent disease" the Plaintiffs have an increased risk of contracting as a result of their alleged exposure, as the fourth *Petito* element requires.  *Petito*, 750 So. 2d at 106-07; (Compl. at ¶ 99).  Indeed, the Complaint states only a number of common "adverse health effects," such as "respiratory problems, sinus problems, [and] headaches, … in addition to the creation of noxious odors, which smell like 'rotten eggs.'"[11]  (Compl. at ¶ 99).  Nor does the Complaint identify any type of monitoring program that would be required to monitor the Plaintiffs' health, as required under the fifth, sixth, and seventh elements of *Petito*, noting instead the fact – universal to all plaintiffs – that they "possess incomplete information regarding the long-term or permanent health effects caused by the toxic chemicals … " as of the time of filing the Complaint.  (*Id.*).  Plaintiffs allege not one symptom that could be associated with any long-term health consequences.  (*Id.*).  The incomplete and conclusory allegations, to the extent they even exist, are not sufficient to support a medical monitoring claim.  *Jacobs*, 2002 U.S. Dist. LEXIS, at *10.  At a minimum, Plaintiffs have improperly pleaded elements (4), (5), (6), and (7) of the *Petito* test, making the Complaint amenable to a motion to dismiss this Count.

Plaintiffs' repeated use the word "exposure" and its cognates does not salvage their claim.  (*See* Compl. at ¶¶ 98-100).  A claim for medical monitoring does not exist for any and every exposure.  *See Hoyte*, 2002 WL 31892830, at *50; *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003); *cf. Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001) (allegation of "exposure" in support of medical monitoring claim was too vague).  Instead, a complaint must allege facts to show that plaintiffs "absorbed a toxicologically sufficient dose to be at a significantly increased risk." *Hoyte*, 2002 WL 31892830, at *50.  Here, Plaintiffs

---

[11] Plaintiffs fail to state why experiencing "noxious odors, which smell like rotten eggs" constitutes an adverse health effect that could give rise to a medical monitoring claim. (*See* Compl. at ¶ 99).

allege only that they have been "exposed" to an unspecified number of unnamed "toxic chemicals" in "quantities sufficient" to cause unspecified "harm." (Compl. at ¶ 107).

In the end, Plaintiffs' claims concerning exposure are at best "merely consistent with the material elements" of a medical monitoring claim – even if such a cause of action exists – and fail to "plausibly suggest the elements" in the way that *Twombly* requires. *Allmond v. Bank of Am.*, No. 3:07-cv-186-J-33JRK, 2008 U.S. Dist. LEXIS 4788 (M.D. Fla. Jan. 23, 2008), at *3 (M.D. Fla. Jan. 23, 2008) (citing *Twombly*, 127 S. Ct. at 1966)).  Plaintiffs' medical monitoring claim therefore should be dismissed.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court grant their Motion to Dismiss Count III (for Breach of Implied Warranty of Fitness); (ii) Count IV (for Unjust Enrichment); (iii) Count V (for Private Nuisance); and (iv) Count VI (Medical Monitoring and other Equitable Relief) for failure to state a claim upon which relief can be granted.

Dated: April 21, 2010

Respectfully submitted,

/s/ Douglas B. Sanders

Douglas B. Sanders
Richard Franklin
BAKER & MCKENZIE LLP
130 E. Randolph Dr.
Chicago, IL 60601
Telephone: (312) 861-8075
Facsimile:  (312) 698-2375
Email: douglas.b.sanders@bakernet.com

Donald J. Hayden
BAKER & MCKENZIE LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8966
Facsimile:  (305) 789-8953
E-mail: Donald.hayden@bakernet.com

Kerry Miller (LA Bar No. 24562)
Kyle A. Spaulding (LA Bar No. 29000)
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone:  (504) 599-8194
Facsimile:   (504) 599-8145
Email: kmiller@frilot.com

*Attorneys for Defendants, Knauf
Plasterboard (Tianjin) Co., Ltd., Knauf
Plasterboard (Wuhu) Co., Ltd. and Knauf
Gips KG*

24

## <u>CERTIFICATE</u>

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 2047, on this 21st day of April, 2010.

s/Douglas B. Sanders