IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | MDL NO. 2047<br>SECTION: L |
| **THIS DOCUMENT RELATES TO:**<br>**09-cv-7628 (PAYTON)** | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

SEAN AND BETH PAYTON, and ADDITIONAL
PLAINTIFFS AS LISTED ON EXHIBIT "A" TO
CLASS ACTION COMPLAINT

    Plaintiffs,

      v.

KNAUF GIPS KG, KNAUF PLASTERBOARD
(TIANJIN) CO. LTD., KNAUF PLASTERBOARD
(WUHU) CO. LTD., KNAUF PLASTERBOARD
(DONGGUAN) CO. LTD., *et al.*

    Defendants.

**DEFENDANT KNAUF PLASTERBOARD (TIANJIN) CO. LTD.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR
<u>FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................... 1

    A.    Plaintiffs Are Barred From Bringing Suit On Behalf Of Claimants Who Are Not Named In The Omnibus Complaint ........................................ 1

    B.    Plaintiffs Fail To State A Claim On Which Relief Can Be Granted, As Their Claims Fall Far Short Of Stating A Claim That Is Plausible On Its Face ..................................................................................................... 2

        1.    The Omnibus Complaint is subject to the federal pleading standards ..................................................................................... 2

        2.    The Complaint fails to meet federal pleading standards ......................... 4

II.    CHOICE OF LAW ANALYSIS ............................................................. 5

III.    ARGUMENT ........................................................................................ 10

    A.    Plaintiffs Fail To State Common-Law Claims Under Louisiana Law And Fail To State A Claim Under The Louisiana Unfair Trade Practices and Consumer Protection Law ................................................................ 10

    B.    Plaintiffs Fail To State A Claim For Negligence Per Se (Count II) ................. 12

        1.    Plaintiffs fail to state a claim for Negligence Per Se under Alabama, Florida, Mississippi or Texas law because no statutory violation is alleged and because the federal pleading standard is unmet ........................................................................................... 12

        2.    Plaintiffs fail to state a claim for Negligence Per Se under Louisiana law because the LPLA preempts claims for Negligence Per Se and, alternatively, because no such cause of action is recognized by Louisiana courts ........................................................ 15

    C.    Plaintiffs' Claims for Breach of Express and/or Implied Warranties Are Preempted by the United Nations Convention on Contracts for the International Sale of Goods ("CISG") and Otherwise Are Barred As A Matter of Law ................................................................................... 16

        1.    The warranty claims are preempted by the CISG .................................. 16

        2.    The warranty claims are also barred under the various states' laws ........ 17

# TABLE OF CONTENTS
(continued)

Page

    a.    Plaintiffs fail to state a claim for breach of express and/or implied warranty under Louisiana law because the LPLA and redhibition statute provide the exclusive remedies against alleged manufacturers of products, and no separate warranty claims may exist. ........................................................ 18

    b.    Plaintiffs fail to claim an express warranty existed and thus cannot state a claim for breach of such warranty ........................ 19

    c.    To the extent Plaintiffs' claims are governed by the Uniform Commercial Code, recovery is barred because the drywall is not a "good" within the meaning of the UCC ............ 21

    d.    Plaintiffs fail to state a claim for Breach of Express and/or Implied Warranties under Alabama or Florida law because Plaintiffs cannot allege direct privity ......................................... 24

    e.    Plaintiffs fail to state a claim for breach of the Implied Warranty of Fitness for a Particular Purpose because no non-ordinary purpose is alleged. ................................................ 26

D.    Plaintiffs Fail To State A Claim For Private Nuisance (Count XI) ................... 28

    1.    Plaintiffs fail to state a claim for Private Nuisance under Alabama law because Plaintiffs can show no activity KPT directed toward them nor a neighboring relationship. ................................................. 28

    2.    Plaintiffs fail to state a claim for Private Nuisance under Florida law because same-property nuisance claims are not recognized............ 29

        a.    "Same-property Private Nuisance" claims are not recognized under Florida law.................................................... 29

        b.    Plaintiffs fail to allege the necessary facts to bring a claim for Private Nuisance ................................................. 31

    3.    Plaintiffs fail to state a claim for Private Nuisance under Louisiana law.................................................................................... 34

    4.    Plaintiffs fail to state a claim for Private Nuisance under Mississippi law because they cannot establish a neighboring relationship. .......................................................................... 36

    5.    Plaintiffs fail to state a claim for Private Nuisance under Texas law because they cannot establish a neighboring relationship....................... 37

# TABLE OF CONTENTS
(continued)

**Page**

E.  Plaintiffs Fail To State A Claim For Negligent Discharge Of A Corrosive
    Substance (Count XII) ................................................................... 38

    1.  Plaintiffs fail to state a claim for Negligent Discharge of a
        Corrosive Substance under Alabama Law. ............................... 39

    2.  Plaintiffs Fail to state a claim for Negligent Discharge of A
        Corrosive Substance under Florida Law. ................................. 39

    3.  Plaintiffs fail to state a claim for Negligent Discharge of A
        Corrosive Substance under Louisiana Law. ............................. 40

    4.  Plaintiffs fail to state a claim for Negligent Discharge of A
        Corrosive Substance under Mississippi Law. ........................... 40

    5.  Plaintiffs fail to state A Claim For Negligent Discharge of A
        Corrosive Substance Under Texas Law. .................................. 41

F.  Plaintiffs Fail To State A Claim For Unjust Enrichment (Count XIII) ............... 41

    1.  Plaintiffs fail to state a claim for Unjust Enrichment under
        Alabama law because they cannot allege that payment for the
        drywall was not voluntary or that they lack an adequate remedy at
        law. ................................................................................ 41

    2.  Plaintiffs fail to state a claim for Unjust Enrichment under Florida
        law because they did not confer a direct benefit on KPT and fail to
        allege that they lack an adequate remedy at law ...................... 42

    3.  Plaintiffs fail to state a claim for Unjust Enrichment under
        Louisiana Law because the claim is subsumed by the LPLA and
        because Plaintiffs fail to allege lack of an adequate remedy at law. ....... 45

    4.  Plaintiffs fail to state a claim for Unjust Enrichment under
        Mississippi law because no such cause of action exists ..................... 46

    5.  Plaintiffs fail to state a claim for Unjust Enrichment under Texas
        law because no such cause of action exists, because plaintiffs
        cannot establish that KPT incurred a benefit through fraud, duress,
        or unfair advantage, and because plaintiffs cannot allege that they
        lack an adequate remedy at law .......................................... 47

G.  Plaintiffs Fail To State A Claim For Violation Of Consumer Protection
    Acts (Count XIV) ........................................................................ 48

# TABLE OF CONTENTS
(continued)

Page

1.   Plaintiffs are barred from bringing class actions under four of the seven statutes they invoke (Count XIV) .................................. 49

2.   Plaintiffs fail to state a claim under the Alabama Deceptive Trade Practices Act because they have failed to make written demand and have impermissibly filed concurrent common law claims (Count XIV) ............................................................................................ 50

    a.   Plaintiffs did not make a written demand in compliance with ADPTA and thus have failed to state a claim .................... 50

    b.   Plaintiffs are barred from filing an action under the ADPTA because the ADPTA's mutual exclusivity provision prohibits concurrent statutory and common law claims ................................................................................... 52

3.   Plaintiffs fail to state a cause of action for violation of the Florida Deceptive and Unfair Trade Practices Act (Count XIV). ...................... 53

    a.   Plaintiffs fail to allege any facts to allege KPT committed any "unfair or deceptive acts" under the FDUTPA .................. 54

    b.   Plaintiffs seek damages that are not recoverable under the FDUTPA. ............................................................................... 55

4.   The LPLA sets forth the exclusive theories of liability against manufacturers and thus Plaintiffs' claims under LUTPA fail as a matter of law (Count XIV) .................................................................. 57

5.   Plaintiffs fail to state a claim under the Mississippi Consumer Protection Act because they have failed to attempt resolution and fail to meet the requisite pleading standards (Count XIV)..................... 58

    a.   Plaintiffs have failed to attempt resolution through informal dispute resolution and thus have failed to meet a prerequisite to filing a private action under the MCPA. ............. 58

    b.   Plaintiffs' MCPA claim fails to allege sufficient facts to meet the requisite pleading standards......................................... 59

6.   Plaintiffs have failed to state a claim  under the Texas Deceptive Trade Practices–Consumer Protection Act because they have failed to provide written notice to KPT and the Texas consumer protection agency (Count XIV). .......................................................... 61

# TABLE OF CONTENTS
(continued)

Page

7.    Plaintiffs Fail To State A Claim Under The North Carolina Consumer Protection Act Because The Sole North Carolina Resident Cannot Bring A Class Action And Because Plaintiffs Fail To Show The Requisite Nexus To North Carolina (Count XIV)............ 64

8.    Plaintiffs Fail To State A Claim Under the Virginia Consumer Protection Act Because They Fail To Show A Nexus Between The Purported Claim And The Commonwealth Of Virginia (Count XIV) ................................................................................................ 66

H.    Plaintiffs Fail To State A Claim For Equitable And Injunctive Relief And Medical Monitoring (Count XV) ........................................................................ 68

1.     Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring, under Alabama law. ............................................. 68

2.    Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring, under Florida law. ................................................. 70

3.    Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring, under Louisiana law. ............................................. 73

4.    Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring under Mississippi law. .......................................... 75

5.    Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring, under Texas law. .................................................. 77

IV.    CONCLUSION.................................................................................................. 78

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">Cases</span>

*America Online, Inc. v. Superior Ct. of Alameda County,*
    90 Cal. App. 4th 1 (Cal. App. 1st Dist. 2001) ..................................................................... 50

*Ames v. Winnebago Indus., Inc.,*
    5:04-cv-359-Oc-10GRJ, 2005 U.S. Dist. LEXIS 35226 (M.D. Fla. Oct. 14, 2005) ............. 25

*Andrus v. Agrevo USA Co.,*
    1998 U.S. Dist. LEXIS 15580 (N.D. Miss. Sept. 17, 1998) ................................................. 27

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ................................................................................................. passim

*Avondale Indus., Inc. v. Tyco Valves and Controls, Inc.,*
    2:06cv2126, 2007 U.S. Dist. LEXIS 20329 (E.D. La. 2003) ............................................... 57

*Bailey v. Janssen Pharm., Inc.,*
    288 Fed. Appx. 597 (11th Cir. (Fla.) 2008) ....................................................................... 27

*Barasich v. Columbia Gulf Transmission Co.,* ("*Barasich I*")
    467 F. Supp. 2d 676 (E.D. La. 2006) ................................................................................ 35

*Barasich v. Shell Pipeline Co.,* ("*Barasich II*")
    2006 U.S. Dist. LEXIS 84389 (E.D. La. Nov. 20, 2006) .................................................... 35

*Bartolomeo v. S.B. Thomas, Inc.,*
    889 F.2d 530 (4th Cir. (N.C.) 1989) .................................................................................. 66

*Beam v. Birmingham Slag Co.,*
    243 Ala. 313 (Ala. 1942) ................................................................................................. 28

*Beckman v. Marshall,*
    85 So. 2d 552 (Fla. 1956) ........................................................................................... 30, 31

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................... passim

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
    343 F.3d 719 (5th Cir. 2003) ...................................................................................... 58, 61

*Bily v. Omni Equities, Inc.,*
    731 S.W.2d 606 (Tex. Ct. App. 1987) ............................................................................... 38

*Bladen v. C.B. Fleet Holding Co.*,
    487 F. Supp. 2d 759 (W.D. La. 2007) .................................................................12, 57

*Board of Supervisors of La. State Univ. v. Louisiana Agricultural Fin. Auth.*,
    984 So. 2d 72 (La. Ct. App. 2008) ....................................................................45, 46

*Borchardt v. Mako Marine Int'l, Inc.*,
    No. 08-61199, 2009 U.S. Dist. LEXIS 107192 (S.D. Fla. Nov. 17, 2009) ........................ 20

*Bostow v. Bank of Am.*,
    No. 14-04-00256, 2006 Tex. App. LEXIS 377 (Tex. Ct. App. Jan. 17, 2006).................... 78

*Brophy v. DaimlerChrysler Corp.*,
    932 So. 2d 272 (Fla. Ct. App. 2005)........................................................................ 25

*Brown v. R.J. Reynolds Tobacco Co.*,
    52 F.3d 524 (5th Cir. 1995)................................................................................. 11

*Butler v. Baber*,
    529 So. 2d 374 (La. 1988).................................................................................. 35

*Cambridge Toxicology Group v. Exnicios*,
    495 F.3d 169 (5th Cir. (La.) 2007) ......................................................................... 8

*Cheminova Am. Corp. v. Corker*,
    779 So. 2d 1175 (Ala. 2000) ............................................................................... 53

*Childs v. GMC*,
    73 F. Supp. 2d 669 (N.D. Miss. 1999)..................................................................... 20

*City of St. Petersburg v. Dayco Prods., Inc.*,
    2008 U.S. Dist. LEXIS 104765 (S.D. Fla. Dec. 30, 2008) ................................................ 44

*City of Tyler v. Likes*,
    962 S.W. 2d (Tex. 1997)................................................................................... 37

*Clear Lake City Water Auth. v. Friendswood Dev. Co.*,
    256 S.W.3d 735 (Tex. Ct. App. 2008) ..................................................................... 22

*Cole v. Chevron USA, Inc.*,
    554 F. Supp. 2d 655 (S.D. Miss. 2007) .............................................................46, 49, 59

*Cole v. GMC*,
    484 F.3d 717 (5th Cir. (La.) 2007) ......................................................................... 9

*Coleman v. Conseco, Inc.*,
    238 F. Supp. 2d 804 (S.D. Miss. 2002) ................................................................... 47

*Collins v. DaimlerChrysler Corp.*,
  894 So. 2d 988 (Fla. Ct. App. 2004)....................................................................... 56

*Columbian Carbon Co. v. Tholen*,
  199 S.W.2d 825 (Tex. Ct. Civ. App. 1947) ............................................................ 38

*Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*,
  521 So. 2d 857 (Miss. 1988) ................................................................................... 36

*Cook Indus., Inc. v. Carlson*,
  334 F. Supp. 809 (N.D. Miss. 1971) ....................................................................... 37

*County of El Paso v. Jones*,
  EP-09-CV-00119-KC, 2009 U.S. Dist. LEXIS 113149 (W.D. Tex. Dec. 4, 2009).............. 47

*Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*,
  369 F. Supp. 2d 848 (E.D. Tex. 2004) .................................................................... 24

*Crum v. Johns Manville, Inc.*,
  19 So. 3d 208 (Ala. Civ. App. 2009) ...................................................................... 19

*Cruz v. Mylan, Inc.*,
  2010 U.S. Dist. LEXIS 13563 (M.D. Fla. Feb. 17, 2010) ...................................... 24

*D & J Tire Inc. v. Rubber Co.*,
  No. 09-30275, U.S. App. LEXIS (5th Cir. (La.) 2010) ............................................. 7

*Deerman v. Federal Home Loan Mortgage Corp.*,
  955 F. Supp. 1393 (N.D. Ala. 1997).................................................................51, 52

*Desouza v. Lauderdale*,
  928 So. 2d 1035 (Ala. Civ. App. 2005) ................................................................. 19

*Dodson v. Javelina, Co.*,
  No. 13-95-481-CV, 1997 Tex. App. LEXIS 1708 (Tex. Ct. App. Apr. 3, 1997) ................ 37

*Durrance v. Sanders*,
  329 So. 2d 26 (Fla. Ct. App. 1976)...........................................................31, 32, 33

*E.S. Robbins v. Eastman Chem. Co.*,
  912 F. Supp. 1476 (N.D. Ala. 1995)........................................................................ 29

*Ellis v. Anderson Tully Co.*,
  727 So. 2d 716 (Miss. 1998) ................................................................................... 46

*Ellis v. Georgia-Pacific Corp.*,
  550 So. 2d 1310 (La. Ct. App. 1989)...................................................................... 40

*Estate of Johnson v. Adkins,*
   513 So. 2d 922 (Miss. 1987) ................................................................... 46

*Ex parte Exxon Corp.,*
   725 So. 2d 930 (Ala. 1998) ..................................................................... 49

*Feheley v. LAI Games Sales, Inc.,*
   08-23060, 2009 U.S. Dist. LEXIS 70430 (S.D. Fla. Aug. 10, 2009) .................................... 43

*Ferrari v. Kohler Co.,*
   H-05-2612, 2006 U.S. Dist. LEXIS 75303 (S.D. Tex. Oct. 17, 2006) ................................. 19

*Florida Digital Network v. Northern Telecom, Inc.,*
   2006 U.S. Dist. LEXIS 61983 (M.D. Fla. Aug. 30, 2006) ................................... 54

*Florida Specialty, Inc. v. H2 Ology, Inc.,*
   742 So. 2d 523 (Fla. Ct. App. 1999) ................................................. 39

*Florida v. Tenet Healthcare Corp.,*
   420 F. Supp. 2d 1288 (S.D. Fla. 2005) ................................................. 43, 44, 45

*Ford Motor Co. v. Sperau,*
   708 So. 2d 111 at n.7 (Ala. 1997) ................................................. 52

*Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,*
   715 So.2d 311 (Fla. Ct. App. 1998) ................................................. 56

*Franceschini v. Allstate Floridian Ins. Co.,*
   6:06-CV-1283-ORL-31JGG, 2007 U.S. Dist. LEXIS 13268 (M.D. Fla. Feb. 27, 2007) ....... 72

*Franklin v. Gwinnett County Public Sch.,*
   503 U.S. 60 (1991) ................................................. 69

*Gallagher Bassett Servs., Inc. v. Jeffcoat,*
   887 So. 2d 777 (Miss. 2004) ................................................. 14

*Gallien v. P&G Pharms.,*
   2010 U.S. Dist. LEXIS 21051 (S.D.N.Y. Mar. 4, 2010) ................................... 12

*Galloway v. State of La.,*
   654 So. 2d 1345 (La. 1995) ................................................. 16

*Garcia v. Santa Maria Resort, Inc.,*
   528 F. Supp. 2d 1283 (S.D. Fla. 2007) ................................................. 54

*Gates v. W.R. Grace & Co.,*
   No. 08-cv-2560-T-27TBM, 2009 U.S. Dist. LEXIS 47612 (M.D. Fla. May 20, 2009) .... 31, 32

*Givens v. Rent-a-Center, Inc.*,
   720 F. Supp. 160 (S.D. Ala. 1988) ...............................................................................51, 52

*Gordon v. Acrocrete, Inc.*,
   05-0329-WS-M, 2006 U.S. Dist. LEXIS 31015 (S.D. Ala. Apr. 24, 2006) ........................ 22

*Gorran v. Atkins Nutritionals, Inc.*,
   464 F. Supp. 2d 315 (S.D.N.Y. 2006) ................................................................................ 55

*Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd.*,
   329 F.3d 1241 (11th Cir. 2003) ......................................................................................43, 45

*Hancock-Hazlett General Constr. Co. v. Trane Co.*,
   499 So. 2d 1385 (Ala. 1986) .............................................................................................. 42

*Hans v. Hans*,
   482 So. 2d 1117 (Miss. 1986) ............................................................................................ 47

*Hargrave v. GE Aviation Systems, LLC*,
   2009 U.S. Dist. LEXIS 65456 (M.D. Fla. July 29, 2009) ................................................... 14

*Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*,
   261 F.3d 466 (5th Cir. (Tex.) 2001) .................................................................................39, 41

*Hillard v. United States*,
   2007 U.S. Dist. LEXIS 13610 (E.D. La. Feb. 28, 2007) ...........................................9, 73, 74

*Hines v. Hash*,
   843 S.W.2d 464 (Tex. 1992) ...........................................................................................62, 63

*Hines v. Riverside Chevrolet-Olds, Inc.*,
   655 So. 2d 909 (Ala. 1994) ................................................................................................ 53

*Hinton v. Monsanto County*,
   813 So. 827 (Ala. 2001).................................................................................................... 68

*Holubec v. Brandenberger*,
   111 S.W. 3d 32 (Tex. 2003)............................................................................................... 37

*Hoyte v. Stauffer Chem. Co.*,
   No. 98-3024-CI-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002).............................71, 72

*Hume v. Evanston Ins. Co.*,
   2008 U.S. Dist. LEXIS 100369 (S.D. Miss. Dec. 10, 2008)............................................... 13

*In re Bayer Corp. Combination Aspiration Prods. Mktg. & Sales Practices Litig.*,
   09 Md. 2023 (BMC) (JMA), 2010 U.S. Dist. LEXIS 31021 (E.D.N.Y. Mar. 30, 2010)......... 6

*In Re Behr*,
  2006 Tex. App. LEXIS 1588 (Tex. App. Mar. 1, 2006) ...................................................... 62

*In re Bridgestone/Firestone, Inc. ATX, ATX II and Wilderness Tires Prods. Liab. Litig.*
  (MDL No. 1373), 155 F. Supp. 2d 1069 (S.D. Ind. 2001) ...................................................... 6

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  (MDL No. 1873), 2008 U.S. Dist. LEXIS 103249 (E.D. La. Dec. 12, 2008) ........................ 27

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  2008 U.S. Dist. LEXIS 107688 (E.D. La. Dec. 29, 2008) .............................................. 6, 75

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  2009 U.S. Dist. LEXIS 64631 (E.D. La. July 23, 2009) ...................................................... 4

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*,
  Nos. 96-3125, 96-181496-3198, 1997 U.S. Dist. LEXIS 24064, (D.N.J. 1997) .................. 61

*In re Jones*,
  77 B.R. 541 (N.D. Tex. 1987) ........................................................................................ 77

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ............................................................................................ 4

*In re Medtronic Polyurethane Insulated Pacing Lead Prod. Liab. Litig.*,
  1999 U.S. Dist. LEXIS 21976 (E.D. Tex. Mar. 31, 1999) .................................................. 19

*In re Nuvaring Prods. Liab. Litig.*,
  2009 U.S. Dist. LEXIS 70614 (E.D. Mo. Aug. 6, 2009) ...................................................... 3

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005) ...................................................................................... 50

*In re: Chinese-Manufactured Drywall Prods. Liab. Action*,
  MDL Docket No. 2047 Order, Nov. 2, 2009 (Pretrial Order #17), at 2 ............................ 2, 7

*In re: Conagra Peanut Butter Prods. Liab. Litig.*,
  1:07-MD-1845-TWT, 2008 U.S. Dist. LEXIS 40753 (N.D. Ga. May 21, 2008) .................. 7

*In re: Propulsid Prods. Liab. Litig.*,
  208 F.R.D. 133 (E.D. La. 2002) ...................................................................................... 3

*Jackson v. National Semi-Conductor Data Checker/DTS, Inc.*,
  660 F. Supp. 65 (S.D. Miss. 1986) .................................................................................. 24

*Jacobs v. Central Trans., Inc.*
  891 F. Supp. 1088 (E.D.N.C. 1995) ...................................................................... 64, 66, 71

*Jacobs v. Osmose*,
   No. 01-944-CIV, 2002 U.S. Dist. LEXIS 1926 (S.D. Fla. 2002)..........................................70

*Jefferson v. Lead Indus. Ass'n, Inc.*,
   106 F.3d 1245 (5th Cir. 1997)..............................................................................11, 16, 18

*Jones v. Trawick*,
   75 So. 2d 785 (Fla. 1954)................................................................................................30, 31

*Kadlec Medical Ctr. v. Lakeview Anesthesia Ass'n*,
   No. 04-0997, 2006 U.S. Dist. LEXIS 27440 (E.D. La. May 9, 2006) ..................................16

*Kappa Sigma Fraternity v. Price-Williams*,
   2009 Ala. LEXIS 294 (Ala. Dec. 19, 2009)....................................................................69, 70

*Keck v. Dryvit Sys., Inc.*,
   830 So. 2d 1 (Ala. 2002)..................................................................................................22, 23

*Keith v. Stoelting, Inc.*,
   915 F.2d 996 (5th Cir. 1990).............................................................................................58, 61

*King v. Bayer Pharms. Corp.*,
   09-0465, 2009 U.S. Dist. LEXIS 125802 (W.D. La. June 8, 2009)......................................45

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)...........................................................................................................5, 6

*Kramer v. Piper Aircraft Corp.*,
   868 F.2d 1538 (11th Cir. (Fla.) 1989)..................................................................................24

*Lantz v. American Honda Motor Co.*,
   2007 U.S. Dist. LEXIS 34948 (N.D. Ill. May 14, 2007) ......................................................54

*Laurel Equip. Co. v. Matthews*,
   218 Miss. 718 (Miss. 1953)..................................................................................................37

*Leaf River Forest Prods., Inc. v. Ferguson*,
   662 So. 2d 648 (Miss. 1995) ..........................................................................................36, 37

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. (La.) 2009) ....................................................................................5, 26

*Maldonado v. Ochsner*,
   237 F.R.D. 145 (E.D. La. 2006) ...........................................................................................49

*Market Am. Inc. v. Rossi*,
   1:97-CV-00891, 1999 U.S. Dist. LEXIS 9793 (M.D.N.C. 1999)..............................64, 65, 66

*Mayberry v. Bristol-Myers Squibb Co.*,
    07-942, 07-1099, 2009 U.S. Dist. LEXIS 121115 (D.N.J. Dec. 30, 2009) ...............58, 59, 60

*McNeil v. Hester*,
    753 So. 2d 1057 (Miss. 2000) ............................................................................ 47

*Media Servs. Group, Inc. v. Bay Cities Commc'ns, Inc.*,
    237 F.3d 1326 (11th Cir. (Fla.) 2001)................................................................ 42

*Miller v. Kossey*,
    802 S.W.2d 873 (Tex. App. 1991) ...................................................................... 62

*Montalto v. Viacom Int'l, Inc.*,
    545 F. Supp. 2d 556 (S.D. Miss. 2008) .............................................................. 59

*Morgan v. W.R. Grace & Co.*,
    779 So. 2d 503 (Fla. Ct. App. 2000)....................................................... 30, 32, 33

*Morris v. Sears, Roebuck & Co.*,
    765 So. 2d 419 (La. App. 4th Cir. 2000) ............................................................ 49

*Murungi v. Tex. Guar. Sallie Mae*,
    646 F. Supp. 2d 804 (E.D. La. 2009)................................................................... 17

*Nationwide Mut. Ins. Co. v. Housing Opportunities Made Equal, Inc.*,
    259 Va. 8 (Va. 2000) .......................................................................................... 50

*Neyland v. Schneider*,
    615 S.W.2d 285 (Tex. Ct. Civ. App. 1981) ........................................................ 38

*Nimbus Technols., Inc. v. Sunndata Prods., Inc.*,
    No. 04-CO00312-W, U.S. Dist. LEXIS 46509 (N.D. Ala. 2005)........................ 51

*Norwood v. Raytheon Co.*,
    414 F. Supp. 2d 659 (W.D. Tex. 2006) .............................................................. 77

*Nova Info. Sys., Inc. v. Greenwich Ins. Co.*,
    365 F.3d 996 (11th Cir. (Fla.) 2004) .................................................................. 43

*Orkin Exterminating Co., Inc. v. DelGuidice*,
    790 So. 2d 1158 (Fla. App. 2001) ...................................................................... 56

*Parker Bldg. Servs. Co. v. Lightsey*,
    925 So. 2d 927 (Ala. 2005).......................................................................... 14, 15

*Paz v. Brush Eng'd Materials, Inc.*,
    555 F.3d 383 (5th Cir. 2009)............................................................................. 75

*Perez v. Metabolife Int'l, Inc.*,
   218 F.R.D. 262 (S.D. Fla. 2003) .................................................... 72

*Petito v. A.H. Robins Co., Inc.*,
   750 So. 2d 103 (Fla. Ct. App. 1999)........................................70, 71

*Philadelphia Elec. Co. v. Hercules, Inc.*,
   762 F.2d 303 (3d Cir. 1985)......................................................... 30

*Phillips v. Kmart Corp.*,
   588 So. 2d 142 ............................................................................ 16

*PNR, Inc. v. Beacon Prop. Mgmt.*,
   842 So. 2d 773 (Fla. 2003).......................................................... 54

*Popeyes, Inc. v. Tokita*,
   1993 U.S. Dist. LEXIS 13295 (E.D. La. Sept. 21, 1993) ............... 7

*Prohias v. Pfizer, Inc.*,
   490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...................................43, 44

*Prophet Capital Mgmt. v. Prophet Equity, LLC*,
   A-09-CA-316 LY, 2009 U.S. Dist. LEXIS 88474 (W.D. Tex. Sept. 25, 2009) ................... 48

*Rae v. Flynn*,
   690 So. 2d 1341 (Fla. Ct. App. 1997).......................................... 29

*Ramirez v. Am. Home Prods.*,
   No. 3-03-155, 2005 U.S. Dist. LEXIS 40577 (S.D. Tex. Sept. 16, 2005)........................... 62

*Redwood Resort Props., LLC v. Holmes Co.*,
   3:06-CV-1022-D, 2006 U.S. Dist. LEXIS 85996 (N.D. Tex. Nov. 27, 2006)...................... 47

*Rhodes v. General Motors Corp.*,
   621 So. 2d 945 (Ala. 1993) .......................................................... 24

*Richards v. Lesaffre Yeast Corp.*,
   No. 07-cv-163, 2009 U.S. Dist. LEXIS 70401 (M.D. Ala. Aug. 11, 2009) ........................ 28

*Rink v. Cheminova, Inc.*,
   203 F.R.D. 648 (M.D. Fla. 2001) ................................................. 72

*Rodrigue v. Copeland*,
   475 So. 2d 1071 (La. 1985)........................................................... 34

*Rollins, Inc. v. Butland*,
   932 So. 2d 1172 (Fla. Ct. App. 2006).......................................... 53

*Rollins, Inc. v. Butland,*
  951 So. 2d 860 (Fla. Ct. App. 2006)................................................................55, 56, 57

*Rollins, Inc. v. Heller,*
  454 So. 2d 580 (Fla. Ct. App. 1984)....................................................................55, 56

*Rose v. General Motors Corp.,*
  323 F. Supp. 2d 1244 (N.D. Ala. 2004)................................................................ 25

*Russ v. Wollheim,*
  915 So. 2d 1285 (Fla. Ct. App. 2d Dist. 2005)................................................... 15

*Schauer v. Morse Operations, Inc.,*
  5 So. 3d 2 ...........................................................................................................55, 56

*Scott v. American Tobacco Co.,*
  949 So. 2d 1266 (La. Ct. App. 2007).................................................................... 75

*Simon v. Philip Morris, Inc.,*
  124 F. Supp. 2d 46 (E.D.N.Y. 2000) .................................................................... 6

*Singer v. City of Waco,*
  324 F.3d 813 (5th Cir. (Tex.) 2003) .................................................................... 47

*Sivori v. Epps,*
  4:09-cv-434-TCM, 2009 U.S. Dist. LEXIS 24231 (S.D. Miss. Mar. 24, 2009)..............76, 77

*Smith v. 2001 S. Dixie Hwy., Inc.,*
  872 So. 2d 992 (Fla. Ct. App. 2004).....................................................................56, 61

*Southwestern Bell Tel. Co. v. DeLanney,*
  809 S.W.2d 493 (Tex. 1991) ................................................................................ 62

*Spain v. Brown & Williamson Tobacco Corp.,*
  872 So. 2d 101 (Ala. 2003) .................................................................................. 23

*Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.,*
  125 F. Supp. 2d 1093 (S.D. Fla. 2000) ................................................................ 73

*Spence v. Glock, GES.m.b.H.,*
  227 F.3d 308 (5th Cir. (Tex.) 2000) .................................................................... 6

*St. Cyr v. Flying J Inc.,*
  2006 U.S. Dist. LEXIS 52239 (M.D. Fla. July 31, 2006)................................... 14

*St. Martin v. Jones,*
  2008 U.S. Dist. LEXIS 70896 (E.D. La. Sept. 17, 2008) ................................... 4

*Stires v. Carnival Corp.*,
  243 F. Supp. 2d 1313 (M.D. Fla. 2002) ............................................................... 54

*Strauss v. Ford Motor Co.*,
  439 F. Supp. 2d 680 (N.D. Tex. 2006) ................................................................. 27

*Sunray Oil Corp. v. Sharpe*,
  209 F.2d 937 (5th Cir. 1954) ............................................................................... 32

*Superior Energy Servs., LLC v. Bonconco, Inc.*,
  2010 U.S. Dist. LEXIS 30196 (S.D. Ala. Mar. 26, 2010) .................................... 13

*Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*,
  662 F. Supp. 2d 623 (S.D. Tex. 2009) ................................................................. 14

*Sweeney v. Sherwin Williams Co.*,
  304 F. Supp. 2d 868 (S.D. Miss. 2004) ............................................................... 46

*T.W.M. v. American Medical Sys., Inc.*,
  886 F. Supp. 842 (N.D. Fla. 1995) ...................................................................... 25

*Taylor v. Southern Farm Bureau Cas. Co.*,
  954 So. 2d 1045 (Miss. Ct. App. 2007) ..........................................................59, 60

*Texas Carpenters Health Benefit Fund, IBEW-NECA v. Philip Morris, Inc.*,
  21 F. Supp. 2d 664 (E.D. Tex. 1998) ................................................................... 48

*Todd v. Am. Multi-Cinema, Inc.*,
  222 F.R.D. 118 (S.D. Tex. 2003) ......................................................................... 13

*Transocean Offshore Deepwater Drilling, Inc. v. Global Santa Fe Corp.*,
  H-03-2910, 2006 U.S. Dist. LEXIS 93408 (S.D. Tex. Dec. 26, 2006) ................. 78

*Turner v. Murphy Oil USA, Inc.*,
  234 F.R.D. 597 (E.D. La. 2006) ......................................................................34, 35

*Union Cemetery Co. v. Harrison*,
  101 So. 517 (Ala. Ct. App. 1924) ........................................................................ 28

*University Fed. Credit Union v. Grayson*,
  878 So. 2d 280 at n.2 (Ala. 2003) ....................................................................... 49

*Uptown Garden Ctr. v. American First Ins.*,
  2008 U.S. Dist. LEXIS 110859 (E.D. La. Sept. 9, 2008) .................................. 9, 13

*Urling v. Helms Exterminators, Inc.*,
  468 So. 2d 451 (Fla. Ct. App. 1985) .................................................................... 56

*Waters v. School Bd. of Broward County,*
    401 So. 2d 997 (Fla. App. Ct. 1986)..................................................................... 73

*Wellcraft Marine v. Zarzour,*
    577 So. 2d 414 (Ala. 1990) ................................................................................. 25

*White v. Microsoft Corp.,*
    454 F. Supp. 2d 1118 (S.D. Ala. 2006) ............................................................... 42

*Whitson v. Bumbo, Ltd.,*
    No. C-07-05597 MHP, 2008 U.S. Dist. LEXIS 39062 (N.D. Cal. May 14, 2008).................. 6

*Wilson v. Scruggs,*
    371 F. Supp. 2d 837 (S.D. Miss. 2005) ............................................................... 76

*Winchester Homes, Inc. v. Hoover Universal, Inc.,*
    27 Va. Cir. 62 (Va. Cir. Ct. 1992) .................................................................66, 67

*Wyeth, Inc. v. Gottlieb,*
    930 So. 2d 635 (Fla. Ct. App. 2006)................................................................... 60

*Wynn v. Davison Design & Dev., Inc.,*
    CA 09-0790-CG-C, 2010 U.S. Dist. LEXIS 21413 (S.D. Ala. Feb. 19, 2010) .................... 41

**STATUTES**

15 U.S.C. App. Arts. 35-36............................................................................... 17

28 U.S.C. § 1407 ............................................................................................... 3

ALA. CODE 1975 § 7-2-105(1)........................................................................... 22

ALA. CODE 1975 § 7-2-107(1)........................................................................... 22

ALA. CODE 1975 § 7-2-313 ............................................................................... 19

ALA. CODE 1975 §§ 7-2-314 ............................................................................. 21

ALA. CODE 1975 § 7-2-315................................................................................21, 26

ALA. CODE 1975 § 7-2-318 ............................................................................... 21

ALA. CODE 1975 § 8-19-10 ............................................................................... 50

ALA. CODE 1975 § 8-19-15(a)........................................................................... 52

ALA. CODE § 6-5-120 ....................................................................................... 29

FLA. STAT. ANN. § 672.105(1) .......................................................................... 22

FLA. STAT. ANN. § 672.107(2) ........................................................................ 22

FLA. STAT. ANN. § 672.314 ............................................................................. 21

FLA. STAT. ANN. § 672.315 .........................................................................21, 27

FLA. STAT. ANN. § 672.318 ............................................................................. 21

FLA. STAT. § 501.201 ..................................................................................... 53

FLA. STAT. § 501.203(3) ................................................................................. 54

FLA. STAT. § 501.204(1) ................................................................................. 53

FLA. STAT. § 501.211(2) .............................................................................53, 55

FLA. STAT. § 501.212(3) ................................................................................. 55

La. Acts No. 64, § 2 ..................................................................................... 11

LA. CIV. CODE ANN. art. 2315 .....................................................................74, 75

LA. CIV. CODE ANN. art. 2520 *et seq.* .............................................................. 18

LA. CIV. CODE ANN. art. 3515 ....................................................................... 7, 8

LA. CIV. CODE ANN. art. 3537 ....................................................................... 8, 9

LA. CIV. CODE ANN. art. 3542 ....................................................................... 8, 9

LA. CIV. CODE ANN. art. 3545 ......................................................................... 9

LA. REV. STAT. ANN. art. 9:2800.52 ...........................................................passim

LA. REV. STAT. ANN. arts. 51:1401 *et seq.* ...................................................12, 57

LA. REV. STAT. art. 51:1409 ........................................................................... 59

MISS. CODE ANN. § 75-24-1 ........................................................................... 58

MISS. CODE ANN. § 75-24-5 ........................................................................... 58

MISS. CODE ANN. § 75-24-5(2)(b), (g) .............................................................. 60

MISS. CODE ANN. § 75-24-9 ........................................................................... 60

MISS. CODE ANN. 75-24-15(2) .....................................................................58, 59

MISS. CODE ANN. § 75-2-105(1) ...................................................................... 22

MISS. CODE ANN. § 75-2-107(2) ........................................................ 22

MISS. CODE ANN. §§ 75-2-314 .......................................................... 21

MISS. CODE ANN. § 75-2-315 ........................................................ 21, 27

MISS. CODE ANN. § 75-2-318 ............................................................ 21

MISS. CODE ANN. § 75-24-15 .......................................................... 59, 60

MISS. CODE ANN. § 75-24-15(4) ......................................................... 49

N.C. GEN. STAT. § 75-1.1 .............................................................. 64, 66

N.C. GEN. STAT. § 75-1, *et seq* ........................................................ 64

TEX. BUS. & COM. CODE ANN. § 2.105(a) ................................................ 22

TEX. BUS. & COM. CODE ANN. § 2.107(b) ................................................ 22

TEX. BUS. & COM. CODE ANN. § 2.315 ................................................... 27

TEX. BUS. & COM. CODE ANN. § 17.501 .................................................. 63

TEX. BUS. & COM. CODE ANN. § 17.505(a), (d) .......................................... 52

TEX. BUS. COM. CODE ANN. § 17.41, *et seq.* ........................................... 51

UCC § 2-103(1)(k) ...................................................................... 21

UCC § 2-107(2) ......................................................................... 21

UCC § 2-314 ............................................................................ 21

UCC § 2-315 ............................................................................ 21

UCC § 2-318 ............................................................................ 21

VA. CODE ANN. §§ 59.1-196 .......................................................... 40, 66

**OTHER AUTHORITIES**

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004) .............. 74

Dan B. Dobbs, *The Law of Torts*, § 463 (2001) ....................................... 28, 38

9 *Powell on Real Property*, § 64.02[3] (Michael Allan Wolf ed., 2000) .................... 30

FED. R. CIV. P. 8 ...................................................................... 13

FED. R. CIV. P. 9(b) ...................................................................................... 53, 54, 58, 60

MISS. R. CIV. P. 9(b) ........................................................................................... 60

PROSSER AND KEETON ON TORTS, § 87 (5th ed. 1984) ............................................. 31

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT") hereby moves this Court for an Order dismissing the Omnibus Class Action Complaint I ("Complaint" or  "Compl.") of Sean and Beth Payton and those Plaintiffs listed on Exhibit "A" to the Complaint (collectively, "Plaintiffs").  As set forth more fully herein, the Complaint fails to set forth causes of action against KPT under the applicable laws for: (i) Negligence *Per Se* (Count II); (ii) Breach of Express and/or Implied Warranties (Count IV); (v) Private Nuisance (Count XI); (vii) Negligent Discharge of a Corrosive Substance (Count XII); (vii) Unjust Enrichment (Count XIII); (viii) Violation of Consumer Protection Acts (Count XIV); and (ix) Equitable and Injunctive Relief and Medical Monitoring (Count XV).  Moreover, with respect to the "Louisiana Plaintiffs" (or any Plaintiff to whom Louisiana law applies), the Complaint fails to set forth causes of action for Negligence (Count I) and Strict Liability (Count III).  In addition, because the present lawsuit is not a class action, any claims that purport to be class claims or any claims brought on behalf of parties not named in the Complaint should be dismissed.[1]

## I.   INTRODUCTION

### A.   Plaintiffs Are Barred From Bringing Suit On Behalf Of Claimants Who Are Not Named In The Omnibus Complaint.

As an initial matter, Plaintiffs improperly purport to bring a class action against KPT and other Defendants on behalf of themselves and those "similarly situated" despite being barred

---

[1] On September 30, 2009, KPT, Knauf Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu") and Knauf Gips KG joined in a Motion to Dismiss Or, Alternatively, To Strike Plaintiffs' Claims for Economic Damages, which was brought as a global motion in the MDL seeking to bar Plaintiffs' tort claims based on the application of the economic loss doctrine.  On January 13, 2009, this Court denied the Motion.  KPT, Knauf Wuhu and Knauf Gips filed a request that the Court's order be certified for interlocutory appeal.  This Court denied the request on March 23, 2010.  KPT had filed a similar interlocutory appeal in Florida state court, which was granted and is currently before the Florida Third District Court of Appeals.  In light of this Court's prior ruling and in an effort to further judicial economy and to preserve its rights with regard to the arguments made in the Economic Loss Doctrine Motion to Dismiss, KPT incorporates and renews (without additional briefing) the arguments made previously in their Economic Loss Doctrine Motion to Dismiss.

from representing persons who failed to file their claims against KPT by December 9, 2009. (*See, e.g.*, Compl. at 1). Plaintiffs here style themselves as "class representatives" but have no basis for representing additional persons who are not named as parties in the Complaint. (*Id.* at ¶ 5). As Plaintiffs well know, KPT agreed to waive formal service of process pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Service Convention") only for those property-owner plaintiffs named in an "Omnibus Class Action Complaint" to be filed by December 9, 2009. This Court acknowledged that KPT's waiver of its right to formal service of process was subject to this express limitation:

> This agreement to accept service of the Omnibus Class Action Complaint is only available to those who become parties to the Omnibus Class Action Complaint who meet the eligibility and notice requirements … . KPT will not agree to waive its right to effectuate service through the Hague Convention in any civil action other than the PSC's Omnibus Class Action Complaint. The Omnibus Class Action Complaint may not be amended to add additional claimants at a later date. If a claimant does not participate in the Omnibus Class Action Complaint and seeks to proceed in another action against KPT, this Court will not consider any requests for extensions of time to effectuate service against KPT and dismissals for want of prosecution or for failure to effectuate service against KPT will be entered in other actions, where appropriate and upon proper notice and opportunity to be heard.

*In re: Chinese-Manufactured Drywall Prods. Liab. Action,* MDL Docket No. 2047 Order, Nov. 2, 2009 (Pretrial Order #17), at 2.

**B.   Plaintiffs Fail To State A Claim On Which Relief Can Be Granted, As Their Claims Fall Far Short Of Stating A Claim That Is Plausible On Its Face.**

**1.   The Omnibus Complaint is subject to the federal pleading standards.**

The present Complaint is an omnibus action that represents the original claims of the Plaintiffs, who agreed to file their claims in this Court in the first instance. In this regard, the

present Omnibus Complaint is distinguished from "master complaints," which have been deemed to be mere "administrative" devices employed by courts to streamline proceedings and motion practice in the multi-district litigation setting. *See, e.g.*, *In re: Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 142 (E.D. La. 2002) (characterizing master complaint as "an administrative device to aid efficiency and economy"); *In re Nuvaring Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 70614, *17-18 (E.D. Mo. Aug. 6, 2009) (denying motion to dismiss on grounds that when court entered the order directing the filing of the master complaint, defendant "had already filed answers in the individual lawsuits which precluded any 12(b) motion practice").

In contrast, the Omnibus Complaint at issue here was specifically filed within this Court and represents each Plaintiff's original case filing. There is no basis here for treating this Complaint merely as an "administrative tool" and thereby excusing Plaintiffs for inadequately pleading their causes of action under the standards mandated by federal law. The Court did not direct the filing of the Omnibus Complaint as a mere administrative tool for case management purposes; rather, Plaintiffs voluntarily filed their claims against KPT in the present forum in the first instance. Thus, none of the concerns other courts have voiced about subjecting "master complaints" to ordinary federal pleading standards is implicated here.

Because no prior, "transferor" court has alternative jurisdiction to hear Plaintiffs' claims, the Louisiana choice of law principles can, do, and must apply, without any concern for violation of due process. *Id.* at 141. For the same reason, there is no cause for concern that the remand requirement of 28 U.S.C. § 1407 will be circumvented. *Id.* Nor has the litigation proceeded past the point at which a Rule 12(b)(6) motion can properly be raised. *In re Nuvaring Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 70614, at *17-18.

For these reasons, the Omnibus Complaint is, unlike a master complaint, an "ordinary complaint." As such, the Court should hold the Complaint to the ordinary standards of federal pleading.

### 2. The Complaint fails to meet federal pleading standards.

As a general matter, Plaintiffs fail to state a claim against KPT upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss tests the sufficiency of a complaint which, to survive a motion to dismiss pursuant to Rule 12(b)(6), must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The complaint must state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The complaint must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Mere "conclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient to state a claim. *St. Martin v. Jones*, 2008 U.S. Dist. LEXIS 70896, *6-7 (E.D. La. Sept. 17, 2008). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court construes all reasonable factual inferences in the plaintiff's favor, but it need not accept such inferences if they are unsupported by any facts. *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The factual allegations made must "be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555; *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 2009 U.S. Dist. LEXIS 64631, *4 (E.D. La. July 23, 2009). To survive a motion to dismiss, the complaint "(1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each

4

element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. (La.) 2009) (citing *Twombly*, 550 U.S. at 555-56). The standard "'calls for enough facts to raise a reasonable expectation that discovery will reveal that the elements of the claim existed.'" *Lormand*, 565 F.3d at 257 (quoting *Twombly*, 550 U.S. at 555-56).

The present Complaint is a study in vagueness. Far from meeting this standard under the *Twombly/Iqbal* test, the Complaint merely "tenders naked assertions devoid of further factual enhancement" and therefore cannot suffice. *Iqbal*, 129 S. Ct. at 1949. Rather than providing factual statements in support of the causes of action alleged, Plaintiffs offer the Court "threadbare recitals of each cause of action's elements, supported by mere conclusory statements." *Id.* at 1940. For example, in 2,770 paragraphs, Plaintiffs allege not a single year, or range of years, during which any Plaintiff purchased property containing the allegedly affected drywall, nor do they allege any time frame during which KPT (or any Defendant) has been "doing business" in any of the several states listed by Plaintiffs. (*See Compl*. at ¶ 2077). Despite purporting to bring a claim for breach of "express" warranty, Plaintiffs provide no hint as to whether KPT issued any express warranty to any Plaintiff or nonparty, let alone what such warranties may have stated. (*Id.* at ¶ 2675). In claiming "medical monitoring" as a form of injunctive relief, Plaintiffs fail to allege that even a single one of them has suffered any specific personal injury, nor any particular disease or adverse health condition that may be caused in the future by the drywall at issue. (*Id.* at ¶¶ 2763-2767). In sum, Plaintiffs' claims fail to meet the standard under *Twombly/Iqbal*, and thus these causes of action should be dismissed with respect to KPT.

## II.    CHOICE OF LAW ANALYSIS

A district court generally must apply the choice of law rules of the state in which the district court is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). In the

context of multi-district class action litigation, a district court is not required to undertake a substantive choice of law analysis upon consideration of a motion to dismiss pursuant to Rule 12(b)(6), and courts have traditionally reserved the choice of law analysis until the class certification stage.[2] *In re Bayer Corp. Combination Aspiration Prods. Mktg. & Sales Practices Litig.*, 09 Md. 2023 (BMC) (JMA), 2010 U.S. Dist. LEXIS 31021, *57 (E.D.N.Y. Mar. 30, 2010) ("[I]t is widely acknowledged that choice of law is determined at class certification"); *Whitson v. Bumbo, Ltd.*, No. C-07-05597 MHP, 2008 U.S. Dist. LEXIS 39062, *2 (N.D. Cal. May 14, 2008) (ruling that the defendant's Rule 12(b)(6) motion to dismiss on choice of law grounds was "raised prematurely" and would "be more timely and appropriately addressed at a later date if and when plaintiff moves for class certification").

On the other hand, a few courts have conducted at least a partial choice of law analysis upon consideration of a motion to dismiss pursuant to Rule 12(b)(6). *See In re Bridgestone/Firestone, Inc. ATX, ATX II and Wilderness Tires Prods. Liab. Litig. (MDL No. 1373)*, 155 F. Supp. 2d 1069, 1076-1116 (S.D. Ind. 2001) (applying Indiana's choice of law rule and ruling on motions to dismiss directed at the MDL plaintiffs' Indiana-filed master complaint); *Simon v. Philip Morris, Inc.*, 124 F. Supp. 2d 46, 71-78 (E.D.N.Y. 2000) (applying New York's

---

[2] Indeed, undertaking a rigorous choice of law analysis is the plaintiff's burden at the class certification stage:

> "The choice of law determination is a function of the individual defendant, plaintiff, and the circumstances of the claim. What is required is a comparative analysis of [the law of the state advocated by plaintiffs] and the law and policies of each state with which the claim has contacts. As far as can be discerned at this time, all 51 jurisdictions have some contact with the claims…. The policies of each state with contacts must be examined. Plaintiff has not undertaken this analysis."

*Spence v. Glock, GES.m.b.H.*, 227 F.3d 308, 313 (5th Cir. (Tex.) 2000) (quoting I*n re Ford Motor Co. Bronco II Product Liab. Litig.*, 177 F.R.D. 360 (E.D. La. 1997)) (noting that "Louisiana follows similar comparative choice of law principles to those in the Restatement [(Second) Conflict of Laws].”); *see also In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 107688, *75 (E.D. La. Dec. 29, 2008) (noting plaintiffs' failure to conduct complete choice of law analysis at class certification stage).

choice of law rule prior to class certification stage and selecting New York law to govern a proposed nationwide plaintiffs' fraud-based claims).   Because this Complaint is not properly pleaded as a class action, at least a rudimentary look at choice of law issues may be required at the motion to dismiss stage, particularly where there is disagreement as to the potentially applicable law.   *See In re: Conagra Peanut Butter Prods. Liab. Litig.*, 1:07-MD-1845-TWT, 2008 U.S. Dist. LEXIS 40753, *35-36 (N.D. Ga. May 21, 2008) (conducting survey-type choice of law analysis of potentially relevant jurisdictions and concluding that, "[a]lthough … it is appropriate to wait until the class certification to fully explore the choice of law issues, it is obvious … that this case implicates more than Georgia law").[3]

Under *Klaxon*, Louisiana choice of law rules apply to the present claims against KPT because Plaintiffs filed their Omnibus Complaint in a district court in Louisiana.   *D & J Tire Inc. v. Rubber Co.*, No. 09-30275, U.S. App. LEXIS at *7 (5th Cir. (La.) 2010) (citing *Klaxon*, 313 U.S. at 496).   A Louisiana choice of law analysis is governed by Articles 3515 *et seq.* of the Louisiana Civil Code.   The Louisiana Civil Code applies the principle of *depecage*, such that "[w]hen a conflict exists with regard to more than one issue, each issue should be analyzed separately, since each may implicate different states."   LA. CIV. CODE ANN. art. 3515, revision cmt. (d).   The general choice of law principle under Louisiana law provides that the court should apply "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."   LA. CIV. CODE ANN. art. 3515; *see also Popeyes, Inc. v. Tokita*, 1993 U.S. Dist. LEXIS 13295, *5 (E.D. La. Sept. 21, 1993) (citing *Ashland Oil, Inc. v. Miller Oil*

---

[3] *In re: Conagra Peanut Butter Products Liability Litigation* was a multi-district litigation in which several hundred named plaintiffs purported to sue on behalf of a class of unnamed plaintiffs. 2008 U.S. Dist. LEXIS 40753, *1-32 (naming plaintiffs). In the present case, however, the purported "class" is closed because KPT's agreement to waive service was conditional on the individual Plaintiffs' filing their claims by December 2, 2009. *In re: Chinese-Manufactured Drywall Prods. Liab. Action,* MDL Docket No. 2047 Order, Nov. 2, 2009 (Pretrial Order #17), at 2.

*Purchasing Co.,* 678 F.2d 1293 (5th Cir. (La.) 1982)) ("Louisiana applies the interest analysis approach of the Restatement Second …").

Two primary factors bear on the analysis of the general choice of law principle under Louisiana law:

> (1)    the relationship of each state to the parties and the dispute; and
>
> (2)    the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

LA. CIV. CODE ANN. art. 3515.  Additional provisions require consideration of specific factors in choice of law analyses in disputes over conventional and delictual or quasi-delictual obligations. *See* LA. CIV. CODE ANN. art. 3537, 3542.[4]  However, "[t]he substance of both choice-of-law articles, respectively governing torts and contracts, require substantially the same determination by the district court."  *Cambridge Toxicology Group v. Exnicios*, 495 F.3d 169, 176 (5th Cir.

---

[4] Factors weighed in determining the state whose policies would be "most seriously impaired" by the failure to apply that state's law in cases involving delictual and quasi-delictual obligations are as follows:

> (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

LA. CIV. CODE ANN. art. 3542.  The factors in contractual disputes are as follows:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties, and (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

LA. CIV. CODE ANN. art. 3537.

(La.) 2007) (affirming district court's application of Louisiana law notwithstanding its possible misapplication of article 3537 in lieu of article 3542).

In the present case, the scanty factual allegations in the Complaint provide little basis for undertaking the Louisiana choice of law analysis to determine which states' laws may or could apply to the common-law claims purportedly pleaded therein.[5]  Given the number of Plaintiffs, the complexity and number of the claims, and inability of certain claims to coexist under the laws of individual states whose policies are implicated by the alleged and by the known facts, Plaintiffs would be unlikely to meet the requirements for class certification under any provision of Rule 23 of the Federal Rules of Civil Procedure.

Nevertheless, only a handful of states' laws are potentially implicated in this case.  *First*, Plaintiffs (albeit without a shred of factual support) allege that KPT does business in Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina and Virginia.  (Compl. at ¶ 2077).  *Second*, Plaintiffs also allege that the properties containing the allegedly defective drywall are located *only* in Alabama, Florida, Louisiana, Mississippi or Texas, with one Plaintiff allegedly owning a single property in Arkansas containing the allegedly defective drywall.  (*Id.* at ¶¶ 5-2072, 330).[6] *Third*, Plaintiffs allege that the vast majority of them reside in Alabama, Florida, Louisiana, Mississippi or Texas.  (*Id.*).  *Fourth*, Plaintiffs limit their statutory claims to Alabama, Florida,

---

[5] Based on Louisiana's choice of law principles, KPT anticipates that this Court will determine that the strict liability claims will be governed by the law of the Louisiana for all claims of Louisiana residents and of residents of other states who "acquired" the allegedly defective drywall in Louisiana.  La. Civ. Code art. 3545; *Hillard v. United States*, 2007 U.S. Dist. LEXIS 13610, *11 (E.D. La. Feb. 28, 2007). Quasi-contractual claims (e.g., unjust enrichment and breach of express and/or implied warranties) may be governed by the law of the states in which the properties are located, which would also be the state in which repairs, if any, would be performed.  *See, e.g., Cole v. GMC*, 484 F.3d 717, 724 (5th Cir. (La.) 2007) (noting, in class action for breach of express and implied warranties, that under Louisiana choice of law principles the district court applied the laws of the states where personal property was used and where contract of repair would be performed).

[6] Plaintiffs fail to name the state of residence of Plaintiff Oceanique Development Company but allege that it owns properties in Florida. (Compl. at ¶ 2072).

Mississippi, Texas, North Carolina (wherein one Plaintiff is alleged to reside but **not** to own affected property, *see* Compl. at ¶ 422)) and Virginia (wherein a few Plaintiffs are alleged to reside but **not** to own affected property, *see* Compl. at ¶¶ 250, 950, 1224, 1238, 1285, 1327, 1509, 2030)) (Count XIV).   (Compl. at ¶¶ 2753-2757).   Finally, the "Louisiana Plaintiffs" (a term undefined by the Complaint)[7] also purport to plead causes of action under Louisiana's product liability act, the LPLA (Count X) and redhibition statute (Count XI)).   (Compl. at ¶¶ 2711-2734).   These allegations suggest that the only states whose policies are likely to be implicated are those of Alabama, Florida, Louisiana, Mississippi and Texas.

Given that the states whose policies would most likely be implicated by the Plaintiffs' allegations and common-law claims are limited to Alabama, Florida, Louisiana, Mississippi, and Texas, the present Motion considers those claim under the laws of each of those states.[8]   Should this Court deem it appropriate to provide further guidance as to choice-of-law issues and determines that an analyses of other states' laws are necessary, KPT requests that it be provided with an opportunity to brief those issues.

## III.   ARGUMENT

### A.   Plaintiffs Fail To State Common-Law Claims Under Louisiana Law And Fail To State A Claim Under The Louisiana Unfair Trade Practices and Consumer Protection Law.

Plaintiffs' Complaint fails to properly allege, under Louisiana law, causes of action under the common law of Louisiana, including but not limited to negligence (Count I) and strict liability (Count III).   The Louisiana Products Liability Act ("LPLA") "establishes the **exclusive**

---

[7] Plaintiffs fail to define this term, nor does their Complaint allege which states' laws should govern each Plaintiff's claim.   For purposes of this Motion, "Louisiana Plaintiffs" is presumed to include, at a minimum, all Plaintiffs who allege that they own property in the State of Louisiana that contains defective drywall.

[8] Nothing in the present Motion is intended as a waiver of KPT's right to argue that the law of any jurisdiction either is or is not applicable to any claim.

theories of liability for manufacturers for damages caused by their products." LA. REV. STAT. ANN. art. 9:2800.52 (emphasis added).[9] The "Louisiana Plaintiffs" have already conceded that their sole remedy rests in the LPLA by stating a claim under the Act. (Compl. at ¶¶ 2721-2734). Because the "Louisiana Plaintiffs," including the lead Plaintiffs Sean and Beth Payton,[10] cannot possibly recover for causes of action not recognized in their home state (because of the LPLA's exclusivity provision), their common law claims against KPT fail as a matter of law.

Under Louisiana law, a plaintiff may not recover from a manufacturer for damages caused by a product on the basis of any theory of liability not set forth in the LPLA. LA. REV. STAT. ANN. art. 9:2800.52. The LPLA provides that a manufacturer of a product is liable to a claimant for damage proximately caused by a characteristic of the product that rendered it unreasonably dangerous. *Id.* at art. 9:2800.54(A). The means for claiming and proving that a product was "unreasonably dangerous" are limited to those specifically provided by the LPLA. A plaintiff may plead that a product is unreasonably dangerous owing either to (1) its "construction or composition," (2) its "design," (3) failure to provide "adequate warning," or (4) nonconformance of the product with an "express warranty." *Id.* at art. 9:2800.54(B)(1-4).

Although the LPLA is predicated on principles of strict liability, negligence, or warranty, such common law causes of action are no longer viable as independent theories of recovery against a manufacturer of an allegedly defective product. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997) (citing *Automatique New Orleans, Inc. v. U-Select-It, Inc.,* 1995 U.S. Dist LEXIS 12391 (E.D. La. Aug. 15, 1995); *Hopkins v. NCR Corp.,* 1994 U.S. Dist.

---

[9] The LPLA became effective on September 1, 1988, and applies to those causes of action, such as those here, that accrued on or after September 1, 1988. *See* La. Acts No. 64, § 2; *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995).

[10] The lead named Plaintiffs, Sean and Beth Payton, are public figures and are alleged to own property at 53 Preserve Lane, Mandeville, Louisiana, 70471. (Compl. at ¶ 5). KPT requests that this Court take judicial notice of the fact that Sean and Beth Payton are Louisiana residents.

LEXIS 17273 (M.D. La. Nov. 17, 1994); J. Kennedy, *A Primer on the Louisiana Products Liability Act,* 49 La. L. Rev. 565 (1989)); *see also Gallien v. P&G Pharms.*, 2010 U.S. Dist. LEXIS 21051, *6-7 (S.D.N.Y. Mar. 4, 2010) (citing *King v. Bayer Pharms. Corp.*, 2009 U.S. Dist. LEXIS 65208, *4 (W.D. La. July 13, 2009); *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 770-71 (W.D. La. 2007)) (ruling, in product liability case, that claims for "negligence per se, ... breach of implied warranty, ... and violation of consumer protection statute claims fall outside the scope of the LPLA and therefore fail to state a claim").

The "Louisiana Plaintiffs" and any other Plaintiffs bound by the LPLA also cannot bring claims under the Louisiana Unfair Trade Practices and Consumer Protection Law (the "LUTPA"), LA. REV. STAT. ANN. arts. 51:1401 *et seq*. (Compl. at ¶ 2754). Like the common law claims, a claim under the LUTPA is precluded when the LPLA applies. *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 767 (W.D. La. 2007)

As such, with respect to the "Louisiana Plaintiffs," who have purported to plead a cause of action under the LPLA (Compl. at ¶¶ 2721-2734), and to the extent Louisiana law applies to any other Plaintiffs, those Plaintiffs' common law and Louisiana Unfair Trade Practices Act ("LUTPA") claims against KPT must be dismissed as a matter of law.

**B.     Plaintiffs Fail To State A Claim For Negligence *Per Se* (Count II).**

Plaintiffs' purported cause of action for negligence per se fails to state a claim on which relief can be granted and therefore should be dismissed as a matter of law. (Compl. at ¶¶ 2648-2654).

**1.     Plaintiffs fail to state a claim for Negligence *Per Se* under Alabama, Florida, Mississippi or Texas law because no statutory violation is alleged and because the federal pleading standard is unmet.**

Count II of the Complaint fails to identify any statutes upon which the claim for Negligence *Per Se* may be based. Instead, it vaguely alleges that "Defendants breached their

statutory duties to the Plaintiffs and Class Members … ." (Compl. at ¶ 2650). The only "statutory duties" specifically alleged to have been breached are not clearly statutory duties at all. Rather, the Complaint contains vague allegations that Defendants breached the duties "imposed under the International Building Code ("IBC") and other [unidentified] State and local Building Codes." (*Id.* at ¶ 2651). The only specific standard cited by the Complaint is a **standard** promulgated by the American Society for Testing and Materials ("ASTM"). The ASTM **standard** is not a statute or ordinance subject to a negligence *per se* claim.

Plaintiffs have failed to satisfy the pleading standards required under Fed. R. Civ. P. 8. *Twombly*, 550 U.S. at 555 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."); *Uptown Garden Ctr. v. Am. First Ins.*, 2008 U.S. Dist. LEXIS 110859, at *6-7 (E.D. La. Sept. 9, 2008) ("The mere statement of the desired legal conclusion, without any supporting facts at all, is insufficient to survive a motion to dismiss."); *Superior Energy Servs., LLC v. Bonconco, Inc.*, 2010 U.S. Dist. LEXIS 30196, at *10-11 (S.D. Ala. Mar. 26, 2010); *Todd v. Am. Multi-Cinema, Inc.*, 222 F.R.D. 118 , 122 (S.D. Tex. 2003) ("[T]o survive a 12(b)(6) motion to dismiss, the plaintiff must plead specific facts, not mere conclusory allegations."); *Hume v. Evanston Ins. Co.*, 2008 U.S. Dist. LEXIS 100369, at *3 (S.D. Miss. Dec. 10, 2008). As currently pleaded, Count II of the Complaint should be dismissed for its failure to allege any of the facts necessary to support a claim for Negligence *Per Se*.

Not only does the Complaint not identify any statutes allegedly violated by Defendants, absent from the Complaint are any allegations as to what sections of the IBC have been violated and whether those sections were codified by any of the States where the purported Plaintiffs allegedly own property. A negligence *per se* cause of action is premised on the violation of a

statute. *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 787 (Miss. 2004) ("The principle that violation of a statute constitutes negligence *per se* is so elementary that it does not require citation of authority." ); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 652 (S.D. Tex. 2009); *Hargrave v. GE Aviation Systems, LLC*, 2009 U.S. Dist. LEXIS 65456, at *11-12 (M.D. Fla. July 29, 2009); *Parker Bldg. Servs. Co. v. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005). Without any allegation that a particular statute has been violated, the claim must be dismissed.

Even if the Plaintiffs were able to overcome their failure to identify an actual statute that has been violated, they must also allege that they belong to the class of persons the statute was intended to protect. That class of persons must be distinguishable from the public generally. *Parker*, 925 So. 2d at 931; *St. Cyr v. Flying J Inc.*, 2006 U.S. Dist. LEXIS 52239, at *16-17 (M.D. Fla. July 31, 2006) ("A statute that does not purport to establish civil liability but merely makes a provision to secure the safety or welfare of the general public as an entity, will not be construed as a establishing civil liability.") (citing *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 986 (Fla. 1994)); *Gallagher*, 997 So. 2d at 787 ("To prevail in an action for negligence *per se*, a party must prove he was a member of the class sought to be protected under the statute…"); *Suzlon Wind*, 662 F. Supp. 2d at 652 ("The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent.") (citing *Perry v. S.N.*, 973 S.W. 2d 301, 305 (Tex. 1998)). The Complaint contains no allegations that the statutes allegedly violated by Defendants were intended to protect the class of plaintiffs to which the Plaintiffs belong. It cannot do so. The intent of the IBC is, by its express terms, to protect the public, not

a particular class of persons: "The purpose of this code is to establish the minimum requirements to safeguard the public health, safety and general welfare." IBC at § 1.03 ("Intent").

At least two jurisdictions have cited to similar language to support a ruling that building codes are intended to protect the public at large and alleged violations of such codes do not form a basis for a negligence *per se* cause of action. In *Parker*, the Alabama Supreme Court held that a building code violation does not give rise to a claim for negligence *per se* for the reason that the stated purpose of a building code in that case was to protect the general public, not a defined class of persons. 925 So. 2d at 931. Similarly, Florida rejected claims that an alleged violation of a building code gives rise to a claim for negligence *per se*: "A building code is designed to protect the general public rather than a particular class of individuals, and therefore, violation of a building code is merely evidence of negligence." *Russ v. Wollheim*, 915 So. 2d 1285, 1286 (Fla. Ct. App. 2d Dist. 2005) (citing *Grand Union Co. v. Rocker*, 454 So. 2d 14 (Fla. Ct. App. 3d Dist. 1984). The reasoning of the courts in Florida and Alabama is sound. Even if the IBC and ASTM standards can be construed as "statutes" subject to a negligence *per se* analysis, they are designed to protect the general public, ***not*** a specific class of persons. Nothing in the Complaint suggests the contrary and the IBC expressly forecloses such an argument. The negligence *per se* claims of those plaintiffs from Florida, Alabama, Mississippi and Texas should be dismissed with prejudice.

> **2.    Plaintiffs fail to state a claim for Negligence *Per Se* under Louisiana law because the LPLA preempts claims for Negligence *Per Se* and, alternatively, because no such cause of action is recognized by Louisiana courts.**

The "Louisiana Plaintiffs," as well as other Plaintiffs to whose claims Louisiana law may apply, are barred from bringing a Negligence *Per Se* claim, given that the LPLA provides their

exclusive remedy.  LA. REV. STAT. ANN. art. 9:2800.52; *Jefferson*, 106 F.3d at 1251; (Compl. at ¶¶ 2721-2734).

Louisiana courts have unambiguously rejected negligence *per se* as a cause of action. *Kadlec Medical Ctr. v. Lakeview Anesthesia Ass'n*, No. 04-0997, 2006 U.S. Dist. LEXIS 27440, *8-9 (E.D. La. May 9, 2006) ("Louisiana courts have repudiated the common law concept of negligence *per se*, *i.e.,* that the violation of a statute automatically constitutes negligence"); *Galloway v. State of La.*, 654 So. 2d 1345, 1346 (La. 1995) ("The doctrine of negligence per se has been rejected in Louisiana") (citing *Boyer v. Johnson,* 360 So. 2d 1164 (La. 1978)); *Phillips v. Kmart Corp.*, 588 So. 2d 142, 143 ("The doctrine of 'negligence per se' has been repudiated in this state") (citing *Weber v. Phoenix Assurance Co. of N.Y.*, 273 So. 2d 30 (La. 1973)). Plaintiff's claim of negligence *per se* is not recognized as a claim in Louisiana and must be dismissed.

Thus, with respect to the "Louisiana Plaintiffs," and to the extent Louisiana law applies to any other Plaintiffs, Count II must be dismissed with prejudice.

C.    **Plaintiffs' Claims for Breach of Express and/or Implied Warranties Are Preempted by the United Nations Convention on Contracts for the International Sale of Goods ("CISG") and Otherwise Are Barred As A Matter of Law.  (Count IV).**

Plaintiffs' claims for breach of "Express and/or Implied" Warranties are preempted by the CISG, which is federal law.  Alternatively, even if Plaintiffs' claims are not preempted, they are unable to sustain the cause of action under the applicable states' laws.  (Compl. at ¶¶ 2673-2680).

1.    **The warranty claims are preempted by the CISG.**

Warranty claims are quasi-contractual, and therefore arise out of the underlying sales contract of the product at issue. The underlying sales contract or contracts for KPT drywall sold

16

into the United States involve contracting parties from different nations that are signatories to the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, 1489 U.N.T.S. 3 ("CISG") (reprinted in 15 U.S.C. App.). Articles 35 and 36 of the CISG permit what are, in essence, warranty claims, but such claims require privity of contract. 15 U.S.C. App. Arts. 35-36. Because the CISG is federal law, its provisions preempt inconsistent state law claims. *See Murungi v. Tex. Guar. Sallie Mae*, 646 F. Supp. 2d 804, 808 (E.D. La. 2009).

As the law in three of the five implicated states either requires privity for Plaintiffs to state an action for breach of implied warranty or bars such claims entirely (such as under the LPLA), the result under the CISG and state law is the same, and dismissal is required. In Mississippi and Texas, where contractual privity is not required to assert a warranty claim against a manufacturer for economic damages, KPT asserts that the CISG's Articles 35 and 36 provide the sole bases for asserting warranty claims against KPT. Because contractual privity is required to assert claims under the CISG, and because there is no contractual privity between KPT and the Plaintiffs, any warranty claims that might otherwise arise under Mississippi and Texas law pursuant to a choice of law analysis should be dismissed for failure to state a claim on which relief can be granted.

### 2.     The warranty claims are also barred under the various states' laws.

To the extent that state law claims are being made, and to the extent that state law applies, Plaintiffs claims must fail. Under Louisiana law, both express and implied warranty claims against an alleged manufacturer are barred because the LPLA provides the exclusive remedy. As to the other jurisdictions, Plaintiffs' conclusory allegations do not even amount to a claim that any "express warranty" existed. Plaintiffs' claims for breach of "implied" warranties and for injuries incurred as "third party beneficiaries" fare no better. Such causes of action arise under the Uniform Commercial Code ("UCC"), which governs the sale of "goods" as defined

therein.  The drywall at issue is not a "good" under the UCC, and therefore the UCC does not apply to the claims against KPT.  The claim for breach of the implied warranty of fitness for a particular purpose is also inadequately pleaded, given Plaintiffs' failure to allege, as they are required to do, that the drywall at issue was intended to be used for a non-ordinary purpose of which KPT was aware, or that any party relied on KPT's representations of fitness of its drywall for that purpose.

For these reasons, Plaintiffs fail to state a claim under either any express or implied warranty theory alleged.  Accordingly, Count IV must be dismissed with respect to KPT.

> **a.    Plaintiffs fail to state a claim for breach of express and/or implied warranty under Louisiana law because the LPLA and redhibition statute provide the exclusive remedies against alleged manufacturers of products, and no separate warranty claims may exist.**

The "Louisiana Plaintiffs," as well as other Plaintiffs to whose claims Louisiana law may apply, are barred from bringing claims for economic loss or personal injury damages against KPT, an alleged "Manufacturing Defendant[]," pursuant to a breach of express and/or implied warranty claim.  The LPLA or the redhibition statute provides these exclusive remedies against a manufacturer.  LA. REV. STAT. ANN. art. 9:2800.52; 9:2800.54(B); LA. CIV. CODE art. 2520 *et seq.*; (Compl. at  387).  Thus, the separate warranty claims must be dismissed.  *Jefferson v. Lead Indus. Ass'n*, 106 F.3d at 1251 (dismissing warranty claims and noting that implied warranty theories are unavailable as a theory of recovery for personal injury); *Grenier*, 99 F. Supp. 2d at 763 (citing *Jefferson v. Lead Indus. Ass'n*, 930 F. Supp. at 244) (dismissing implied warranty claims upon a finding that the LPLA provided claimants' exclusive remedy).

Thus, with respect to the "Louisiana Plaintiffs," and all other Plaintiffs bound by Louisiana law, the warranty claims are subsumed by statute and must be dismissed.

**b.      Plaintiffs fail to claim an express warranty existed and thus cannot state a claim for breach of such warranty.**

Plaintiffs' claim for breach of express warranty, if permitted under a state's law, against KPT fails because Plaintiffs do not allege that such a warranty exists.  Express warranties are generally viewed as being created when a seller makes affirmations of fact or promise relating to the goods that become part of the basis of the bargain or when a seller's description of the goods is made part of the basis of the bargain.  *See, e.g.*, ALA. CODE § 7-2-313 (UCC claim); *Crum v. Johns Manville, Inc.*, 19 So. 3d 208, 221 (Ala. Civ. App. 2009) (affirming dismissal of claim where complaint, on its face, did not allege the existence of express warranty between plaintiff and defendant).  It is axiomatic that the claimants, at a minimum, must allege that such a warranty exists.  *Desouza v. Lauderdale*, 928 So. 2d 1035, 1044 (Ala. Civ. App. 2005) (permitting claim where basic terms of the warranty, i.e., coverage for the first ten years following purchase, was "undisputed" ); *Ferrari v. Kohler Co.*, H-05-2612, 2006 U.S. Dist. LEXIS 75303, *6 (S.D. Tex. Oct. 17, 2006) (listing first the among elements of common law express warranty claim the fact "that a warranty was made"); *In re Medtronic Polyurethane Insulated Pacing Lead Prod. Liab. Litig.*, 1999 U.S. Dist. LEXIS 21976, *20 (E.D. Tex. Mar. 31, 1999) (dismissing claim on summary judgment for failure to "show[ ]or cite to, … specific language of express warranties for this Court to examine" beyond what was in the complaint).

On a motion to dismiss, at a minimum, Plaintiffs should at least identify facts tending to show the existence of an "express" warranty.  For instance, in Florida, a claim for breach of express warranty, under the governing UCC provision, requires identification of the following:

> 1) Facts in respect to the sale of the goods; 2) Identification of the types of warranties created … 3) Facts in respect to the creation of the particular warranty … 4) Facts in respect to the breach of the warranty; 5) Notice to seller of breach … 6) The injuries sustained by the buyer as a result of the breach of warranty.

*14250 Realty Assocs.*, 2008 U.S. Dist. LEXIS 93194, at *14 (quoting *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. Ct. App. 1977)) (ellipses in *14250 Realty*).  In *14250 Realty*, the court granted a motion to dismiss claims for "breach of express guarantee" where the plaintiff failed to identify any guarantees breached.  2008 U.S. Dist. LEXIS 93194, at *10-12.  The "sparse" allegations underlying the claim included only an averment that the plaintiff "was a known and intended beneficiary of the warranty" and that the defendants had breached that warranty.  *Id.* at *14. The court deemed the allegations "plainly deficient" for breach of express warranty under the UCC, noting that the plaintiff "fails to identify the origin of this warranty, fails to identify the terms of the warranty, and fails to describe how it was breached."  *Id.*  (citing *Dunham-Bush*, 351 So. 2d at 353;[11] *see also Borchardt v. Mako Marine Int'l, Inc.*, No. 08-61199, 2009 U.S. Dist. LEXIS 107192, *10-11 (S.D. Fla. Nov. 17, 2009) (deeming allegations of express warranty "too vague to meet the pleading requirements" where plaintiffs "allege[d] language and terms of express warranties, but fail[ed] to cite when and where those warranties were expressed [or] what language and terms those express warranties provided. …"); *Childs v. GMC*, 73 F. Supp. 2d 669, 673 (N.D. Miss. 1999) (dismissing vehicle owner's claim on summary judgment where claimant failed to "indicate that the used Suburban was expressly warranted, or what those express warranties were").

In the present case, the allegations are even more sparse than those rejected in the cases cited above.  The Complaint provides no factual allegations as to what the "express" warranty expressed or the circumstances of the warranty.  Therefore, the claim against KPT for breach of express warranty fails as a matter of law.

---

[11] To the extent the plaintiff sought to allege a separate breach of contract, that claim likewise failed because the complaint did not identify "the relevant portion of the contract breached." *14250 Realty Assocs.*, 2008 U.S. Dist. LEXIS 93194, at *14 (citing *Wood-Hopkins Contracting Co. v. Masonry Contractors, Inc.*, 235 So. 2d 548, 552 (Fla. Ct. App. 1970)).

      **c.**    **To the extent Plaintiffs' claims are governed by the Uniform Commercial Code, recovery is barred because the drywall is not a "good" within the meaning of the UCC.**

In states other than Louisiana, the express and implied warranty claims likewise must fail because the UCC does not apply with respect to KPT's sales of drywall.  As codified by the states, the UCC, where applicable, implies a warranty of merchantability, and, where criteria are met, also a warranty of fitness for a particular purpose.  UCC §§ 2-314, 2-315; ALA. CODE 1975 §§ 7-2-314, 7-2-315; FLA. STAT. ANN. §§ 672.314, 672.315; MISS. CODE ANN. §§ 75-2-314, 75-2-315; TEX. BUS. & COM. CODE ANN. §§ 2.314, 2.315.  A separate provision permits "third party beneficiaries" of express or implied warranties to recover for certain losses when those express or implied warranties are breached.  UCC § 2-318 (providing three model statutes for states to adopt); ALA. CODE 1975 § 7-2-318 (permitting recovery only for personal injury); FLA. STAT. ANN. § 672.318 (same); MISS. CODE ANN. § 75-2-318 (same); TEX. BUS. & COM. CODE ANN. § 2.318 (leaving for judiciary to identify losses recoverable and privity requirements).

However, those UCC remedies apply only to the sale of "goods," and drywall is not a "good."  Under the UCC, the term "goods":

> means all things that are movable at the time of identification to a contract for sale. The term includes future goods, specially manufactured goods, the unborn young of animals, growing crops, and other identified things attached to realty as described in Section 2-107.  The term does not include information, the money in which the price is to be paid, investment securities under Article 8, the subject matter of foreign exchange transactions, or choses in action.

UCC §§ 2-103(1)(k).  Although something is affixed to realty may still be a "good," it ceases to be a good if its removal would result in material harm:  "Article [2,] in including within its scope 'things attached to realty[,]' adds the further test that they ***must be capable of severance without material harm thereto***."  UCC §§ 2-107(2); 2-105 official cmt. ¶ 1 (emphasis added); *see also*

ALA. CODE 1975 §§ 7-2-105(1), 7-2-107(1); FLA. STAT. ANN. §§ 672.105(1), 672.107(2); MISS. CODE ANN. §§ 75-2-105(1), 75-2-107(2); TEX. BUS. & COM. CODE ANN. §§ 2.105(a), 2.107(b).

Several courts have found that construction materials similar to drywall that are integrated into a home are not "goods" under the UCC. *See, e.g.*, *Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 8-9 (Ala. 2002) (citing ALA. CODE 1975 § 7-2-105, official cmt. ¶ 1). In *Keck*, the Supreme Court of Alabama considered whether an exterior insulation finishing system ("EIFS") – a multilayer system composing home's exterior wall – was a "good" under the UCC. *Keck*, 830 So. 2d at 8-9. The court found that EIFS was *not* a "good" because it was incorporated into the realty and could not be removed without causing material harm to the home:

> *[T]o be considered a product within the meaning of the UCC, the EIFS must be capable of severance from the Kecks' home without causing material harm to the home.* Because of the nature and character of the EIFS, we cannot say that the EIFS can be detached from the house without causing significant harm to the house. The EIFS is a multilayer system that composes the exterior wall of the Kecks' home. The EIFS was attached to the underlying sheathing of the Kecks' home during construction of the home. Once incorporated into realty, the EIFS loses its distinct characteristic as a "good" and becomes an integral part of the structure of a home. Removing the EIFS from the Kecks' home would damage the underlying sheathing of the house and the overall structural integrity of the house, leaving the house exposed to the elements. Because removal of the EIFS would unquestionably result in material harm to the Kecks' home, the EIFS cannot be considered a "good" within the meaning of the UCC.

*Id.* at 8 (emphasis added); *see also Gordon v. Acrocrete, Inc.*, 05-0329-WS-M, 2006 U.S. Dist. LEXIS 31015, *23 (S.D. Ala. Apr. 24, 2006) (citing *Keck*, 830 So. 2d 1) (finding that stucco system used on home's exterior was not a "good" for UCC purposes); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 750 (Tex. Ct. App. 2008) (citing TEX. BUS. & COM. CODE ANN. § 2.105(a)) (finding that "the potential sale to the [water a]uthority of fixtures that have become part of the real property does not involve the provision of goods" under the UCC).

The *Keck* court noted the conformity of its conclusion with a Virginia opinion, wherein the court had concluded that, notwithstanding the absence of a privity requirement under Virginia law, EIFS was not a "good":

> "***The EIFS at issue in this case was a good at one time, but once it was incorporated into the walls of the units it ceased to be a 'good' in that it lost any distinctive characteristic it once had***.  To hold otherwise would be to hold that any 'building component' used in the construction of any building contains a manufacturer's warranty applicable to remote plaintiffs simply because it was a good at some time.  If this was the intent of the legislature in enacting the anti-privity statute then the General Assembly is the proper forum to specifically address the issue regarding building components incorporated into realty."

*Keck*, 830 So. 2d at 9 (quoting *BayPoint Condominium Ass'n, Inc. v. Dryvit Sys.*, CL99-475, Apr. 3, 2001 (unpublished)) (emphasis in *Keck*).[12]

Here, the allegedly defective drywall, like the allegedly defective EIFS in *Keck* and *BayPoint Condominium*, is incorporated into property, and its removal would materially harm Plaintiffs' homes.  In fact, Plaintiffs concede that the drywall cannot be removed from Plaintiffs' homes without causing harm, as their damages claim includes replacement of the drywall.  (*See, e.g.*, Compl. at ¶ 2619).  Furthermore, the fact that the drywall at issue may have been a good at one time is unavailing.  *Keck*, 830 So. 2d at 8. Given the failure of the drywall to meet the UCC test for "goods," the statute cannot apply, and thus the state's UCC provisions afford no avenue of relief with respect to KPT.

Furthermore, the common law affords no recourse equivalent to the implied warranties of merchantability or fitness for a particular purpose, nor for "third party beneficiaries," against a manufacturer where direct privity is lacking.  See *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 111 (Ala. 2003) (distinguishing between a breach of warranty claim under the

---

[12] The court also concluded that the EIFS was not a "product" under the Alabama Extended Manufacturer's Liability Doctrine.  *Keck*, 830 So. 2d at 7.

UCC and a claim under the Alabama Extended Manufacturer's Liability Doctrine and stating that "a claim alleging breach of an implied warranty of merchantability is separate and distinct from an AEMLD claim … ."); *Kramer v. Piper Aircraft Corp.*, 868 F.2d 1538, 1540 (11th Cir. (Fla.) 1989) (citing *Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976)) (per curiam) (noting that "strict liability in tort … in effect abolished the cause of action for violation of implied warranty in a non-privity situation"); *Jackson v. National Semi-Conductor Data Checker/DTS, Inc.*, 660 F. Supp. 65, 69-70 (S.D. Miss. 1986) (noting that warranty claims for economic loss and physical injury arise under the UCC and not under a general tort theory); *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848, 856 (E.D. Tex. 2004) (citations omitted) (discussing implied warranties that arise by application of law under the UCC, and explaining parties' ability to disclaim same).

Therefore, Plaintiffs cannot maintain claims for the implied warranties of merchantability and fitness, nor for recovery as "third party beneficiaries," because those warranties and rights arise solely under UCC provisions governing the sale of "goods."

> **d.     Plaintiffs fail to state a claim for Breach of Express and/or Implied Warranties under Alabama or Florida law because Plaintiffs cannot allege direct privity.**

Even if the UCC were to apply to Plaintiffs' claims against KPT and even if the express warranty claims were properly pleaded, all express and implied warranty claims governed by the Alabama and Florida UCC would fail.  Under the laws of those states, claims for breach of warranty, whether express or implied, require direct privity of contract between the plaintiff and defendant for recovery of economic damages.  *Rhodes v. General Motors Corp.*, 621 So. 2d 945, 947 (Ala. 1993) ("[W]ithout privity of contract, there is no right of action against a manufacturer for direct economic loss"); *Cruz v. Mylan, Inc.*, 2010 U.S. Dist. LEXIS 13563, *4 (M.D. Fla. Feb. 17, 2010) (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988)) ("With

respect to claims for breach of the implied warranty of fitness and the implied warranty of merchantability, Florida law requires privity between the contracting parties for an action to proceed"); *Brophy v. DaimlerChrysler Corp.*, 932 So. 2d 272, 275 (Fla. Ct. App. 2005)) (affirming dismissal of claim for implied warranty because complaint "did not allege the requisite privity of contract"); *T.W.M. v. American Medical Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (quoting *Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. Ct. App. 1990)).

Relatedly, the courts of Alabama and Florida do not consider a manufacturer who has not sold goods directly to the plaintiff to be a "seller" within the meaning for purposes of the implied warranties of merchantability or fitness for a particular purpose; thus, plaintiffs cannot, under Alabama or Florida law, state claims for breach of those implied warranties. *Wellcraft Marine v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990) ("There is no right of action on an implied warranty theory against a *manufacturer* for property damage without privity of contract. … [B]y their very language the [UCC's] implied warranty sections apply to the seller of the product.") (emphasis in original); *accord*, *Ames v. Winnebago Indus., Inc.*, 5:04-cv-359-Oc-10GRJ, 2005 U.S. Dist. LEXIS 35226, *14 (M.D. Fla. Oct. 14, 2005) (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37) (rejecting plaintiff's contention that manufacturer was a "seller" as being contrary to Florida law).[13]

In the present case, it is indisputable that KPT never entered into a contract with any Plaintiff and therefore that no privity exists – as Plaintiffs concede in alleging that KPT is a

---

[13] Alabama law does not permit recovery of economic losses resulting from breach of implied warranties where privity is absent and appears not to permit recovery for *personal injury* for "third party beneficiaries" where privity is lacking. *Rose v. General Motors Corp.*, 323 F. Supp. 2d 1244, 1247-48 (N.D. Ala. 2004) (citing *Ex parte General Motors Corp.*, 769 So. 2d 903 (Ala. 1999); ALA. CODE § 7-2-318) (ruling that under Alabama law consumer could not assert claims for personal injury against an automobile manufacturer).

"Manufacturing Defendant[]" that sold drywall to "certain suppliers." (Compl. at ¶¶ 2076-2077). Plaintiffs provide no factual information whatsoever that would tend to support a reasonable inference of direct privity between themselves and KPT, and indeed it would be unreasonable for the Court to infer that the homeowner Plaintiffs here took the highly unusual step of selecting and purchasing, directly from the manufacturer, the drywall that was used to construct their homes. *See Lormand*, 565 F.3d at 257 (quoting *Twombly*, 550 U.S. at 555-56). Plaintiffs make no attempt to define any relationship, contractual or otherwise, that might have given rise to direct privity between themselves and KPT. A single instance of the word "privity" in the Complaint surely cannot support a claim for breach of warranty under federal pleading standards. (Compl. at ¶ 2674).

<blockquote>

e.      **Plaintiffs fail to state a claim for breach of the Implied Warranty of Fitness for a Particular Purpose because no non-ordinary purpose is alleged.**

</blockquote>

Furthermore, even if the UCC applied, which it does not, the claim for breach of the implied warranty of fitness for a particular purpose should be dismissed for failure to state a claim. (*See* Compl. at ¶ 2677). Plaintiffs fail to allege that KPT knew of any particular or non-ordinary purpose on which a buyer relied. (*See* Compl. at ¶ 2678 ("The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) … .")). An allegation of reliance on the seller's skill or judgment is essential to the claim under the laws of each state at issue. *See, e.g.*, ALA. CODE 1975 § 7-2-315 ("Where the seller at the time of contracting has ***reason to know any particular purpose*** for which the goods are required and that the buyer is *relying* on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.") (emphasis added).

Actual reliance on the defendant's skill or knowledge is essential to the claim for breach of implied warranty of fitness. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, (MDL No. 1873), 2008 U.S. Dist. LEXIS 103249, *44-45 (E.D. La. Dec. 12, 2008) (dismissing claim where plaintiffs "fail[ed] to allege [they] actually relied on the Manufacturing Defendants' particular skill or knowledge in selecting" the goods); *accord* FLA. STAT. ANN. § 672.315; *Bailey v. Janssen Pharm., Inc.*, 288 Fed. Appx. 597, 610 (11th Cir. (Fla.) 2008); MISS. CODE ANN. § 75-2-315; *Andrus v. Agrevo USA Co.*, 1998 U.S. Dist. LEXIS 15580 (N.D. Miss. Sept. 17, 1998) (citing *Curry v. Sile Distribs.*, 727 F. Supp. 1052 (N.D. Miss. 1990)); TEX. BUS. & COM. CODE ANN. § 2.315; *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 686 (N.D. Tex. 2006).

Nowhere in the Complaint do Plaintiffs allege that KPT was made aware of Plaintiffs', or any buyer's, intent that the drywall at issue be used for a "particular purpose," nor that Plaintiffs relied upon any buyer's expertise to purchase such drywall for that specific and non-ordinary use. Thus, Plaintiffs have failed to plead a claim for breach of the warranty of fitness for a particular purpose.

### D. Plaintiffs Fail To State A Claim For Private Nuisance (Count XI).

Plaintiffs purport to bring a common law nuisance action against Defendants, a claim that is completely inappropriate and that merely repackages the negligence and strict liability claims against KPT. (Compl. at ¶¶ 2735-2741). KPT is aware of no jurisdiction that permits a private nuisance claim to be brought by a consumer against a manufacturer for recovery of injury caused by an allegedly defective building material or other product. As an initial matter, the private nuisance claim fails to meet the requisite pleading standard, as the Complaint alleges only legal conclusions and lacks the necessary factual allegations to support each element of the claim. (*See id.*); *Twombly,* 550 U.S. at 555. Furthermore, in most jurisdictions, including those at issue here, a neighboring property relationship between plaintiff and defendant is the essence of the claim.

"Private nuisance is traditionally a claim based upon activities outside the land by a stranger to the title, for instance, based upon a neighbor's noise or pollution."  2 Dan B. Dobbs, *The Law of Torts*, § 463 (2001).

Plaintiffs have already conceded that all of the properties at issue that are alleged to contain defective drywall are in the United States and that KPT is a "foreign corporation," and thus such a "neighboring" relationship is obviously lacking.  (Compl. at ¶¶ 5-2072; 2077).  There is no allegation that KPT's property neighbors that of any Plaintiff or that KPT owns or operates any property near any of Plaintiffs' allegedly affected properties.  (*Id.*)  Nor do Plaintiffs allege that their properties neighbor one another and interfere with one another's use or enjoyment of their properties as a result of the allegedly defective drywall.  Thus, Plaintiffs' description of the nuisance, i.e., "sulfide gas and/or other chemical leaching into structures owned by Plaintiffs and Class Members," is disingenuous and factually wrong.  (Compl. at ¶ 2736).  In short, Plaintiffs fail to allege the type of property invasion or neighboring landowner relationship that provide the basis for a nuisance claim, and the factual allegations in the Complaint are insufficient to support the elements of private nuisance.  For these reasons, the Court should dismiss the private nuisance claim against KPT.

> **1.    Plaintiffs fail to state a claim for Private Nuisance under Alabama law because Plaintiffs can show no activity KPT directed toward them nor a neighboring relationship.**

The doctrine of private nuisance in Alabama "rests on the ancient maxim … to so use your own as not to work hurt to another."  *Beam v. Birmingham Slag Co.*, 243 Ala. 313, 317-18 (Ala. 1942).  Nuisance law is premised on the theory that "every man must so use his own property as not to interfere with ***that of his neighbor*.**"  *Union Cemetery Co. v. Harrison*, 101 So. 517, 519 (Ala. Ct. App. 1924) (emphasis added); *see also Richards v. Lesaffre Yeast Corp.*, No. 07-cv-163, 2009 U.S. Dist. LEXIS 70401, *8 (M.D. Ala. Aug. 11, 2009) (same).  Under

Alabama law, a nuisance "is anything that works hurt, inconvenience or damage to another." ALA. CODE § 6-5-120 (2010).   To establish a statutory nuisance claim, the plaintiff must establish the elements of: (1) legal duty and (2) causation between the activity or conduct complained of and the hurt, inconvenience, or damages alleged.  *E.S. Robbins v. Eastman Chem. Co.*, 912 F. Supp. 1476, 1494 (N.D. Ala. 1995).

Here, Plaintiffs fail to allege a legal duty at all, and their allegations regarding causation are wholly conclusory.  (Compl. at ¶ 2736).  As an alleged manufacturer (and not a contractor who installed the drywall) that "sold, directly and indirectly, to certain suppliers in the United States," and "manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall," KPT has performed no "activity" with respect to Plaintiffs, nor directed any "conduct" toward them that would support a nuisance theory.  (Compl. at ¶ 2076-2077).  The "neighbor" relationship, which is fundamental to a private nuisance claim under Alabama law, is likewise lacking.  As Plaintiffs have failed to adequately allege the elements of a nuisance claim under Alabama law, as set forth above, Plaintiffs claim should be dismissed.

### 2.   Plaintiffs fail to state a claim for Private Nuisance under Florida law because same-property nuisance claims are not recognized.

Florida does not recognize private nuisance claims where the nuisance complained of emanates from the very objects creating it – in this case, Plaintiffs' homes.  Private nuisance law is "bottomed on the fundamental rule that every person should so use his own property as ***not to injure that of another***."  *Id.* (citing *Reaver v. Martin Theatres of Fla., Inc.*, 52 So. 2d 682 (Fla. 1951); *Rae v. Flynn*, 690 So. 2d 1341 (Fla. Ct. App. 1997).

### a.   "Same-property Private Nuisance" claims are not recognized under Florida law.

The Florida Supreme Court defined a "nuisance" as "[a]nything which annoys or disturbs one in the free use, possession, or enjoyment of his property, or which renders its ordinary use or

occupation physically uncomfortable … ." *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) (holding that proposed cemetery located in a residential area is a private nuisance since the constant reminder of death would functionally deprive the home of the comfort that its owner is entitled to under the law).   A neighbor–proprietor relationship is the essence of the claim: Nuisance, in law, consists in "so using one's property as to injure the land or some incorporeal right of one's neighbor." *Beckman v. Marshall*, 85 So. 2d 552, 554 (Fla. 1956) (quoting *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio App. 1947)).

In fact, same-property private nuisance claims are explicitly disallowed under Florida law, which follows the majority rule and restricts private nuisance actions to disputes between neighboring landowners.   *Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. Ct. App. 2000) (ruling that plaintiff failed to allege a theory of nuisance based upon condition on her own property that existed at time of purchase).[14]   In *Morgan*, the court rejected the private-nuisance claim of a plaintiff who alleged that her home was unsafe owing to radiation from uranium and other radioactive materials in the soil and that this condition existed at the time she purchased the property.   779 So. 2d at 505.   The court's rationale was supported by the Third Circuit Court if Appeals' decision in *Philadelphia Electric Co.*, wherein the court stated, "We believe that this result is consonant with the historical role of private nuisance law as a means of efficiently resolving conflicts between **neighboring, contemporaneous land uses**."   762 F.2d 303, 314 (3d Cir. 1985) (emphasis added).

Likewise, here, Plaintiffs fail to allege an actionable claim for private nuisance given that the claim does not involve a dispute between adjacent properties.   Plaintiffs impermissibly seek

---

[14] *See also Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir. 1985); 9, *Powell on Real Property*, § 64.02[3] (Michael Allan Wolf ed., 2000) ("The conclusion of 'unreasonableness' depends then upon liability inviting conduct of the defendant plus a finding that this conduct *violates a protected interest of the neighbor-plaintiff*.") (emphasis added).

to expand the application of private nuisance to include same-property nuisance, which allegedly stems from the drywall causing "sulfide gas and/or other chemical leaching into structures owned by Plaintiffs and Class Members [*sic*] which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' [*sic*] use and enjoyment of their properties and caused them harm and damage as discussed herein." (Compl. at ¶ 2736). Florida law simply does not provide redress for such allegations of same-property private nuisance. For this reason alone, the private-nuisance claim fails under Florida law.

> **b.    Plaintiffs fail to allege the necessary facts to bring a claim for Private Nuisance.**

Nor can Plaintiffs plead the elements for private nuisance under Florida law, namely, that (1) the defendant's activity interfered with a property interest used and enjoyed by the plaintiffs; (2) the defendant's invasion with the plaintiffs' use and enjoyment of their land resulted in unreasonable and substantial harm; and (3) the defendant's maintenance of the nuisance was the natural and proximate cause of the injury to the plaintiffs' persons or real properties. *Jones*, 75 So. 2d at 787; *Beckman v. Marshall*, 85 So. 2d 552, 555 (Fla. 1956); *Durrance v. Sanders*, 329 So. 2d 26, 29 (Fla. Ct. App. 1976); W. Page Keeton et al., PROSSER AND KEETON ON TORTS, § 87 (5th ed. 1984).

As to the first element, the Plaintiffs fail to allege facts to support their conclusory allegation of the element of interference with the Plaintiffs' use and enjoyment of their property. (Compl. at ¶ 2736). In *Gates v. W.R. Grace & Co.*, No. 08-cv-2560-T-27TBM, 2009 U.S. Dist. LEXIS 47612 (M.D. Fla. May 20, 2009), property owners brought a nuisance claim against operators of a neighboring chemical fertilizer plant that allegedly contaminated the groundwater

aquifer system by discharging toxic contaminants that spread into plaintiffs' well.[15]   The court

ruled that the plaintiffs failed to allege facts suggesting annoyance or disturbance in the use or

enjoyment of the property or that the occupation of the claimants' home was physically

uncomfortable.  *Id.*  The nuisance claim failed because the facts alleging an injury arising from

the nuisance were not pleaded.  *Id.* at *9-10 ("Plaintiff has not … alleged what the 'nuisance'

itself was, in terms of the interest invaded").  Here, Plaintiffs have likewise failed to allege facts

suggesting annoyance or disturbance.  *Id.*; *Nitram Chems., Inc.* 200 So. 2d 220, 225 (Fla. Ct.

App. 1967) (injury arising from a nuisance is annoyance, discomfort, inconvenience, or

sickness).

Plaintiffs also fail to plead facts sufficient to establish that the interference resulted in

unreasonable or substantial harm, the second element of the claim.  If the second element of a

nuisance action fails, there can be no liability in damages on that ground.  *Sunray Oil Corp. v.*

*Sharpe*, 209 F.2d 937, 939 (5th Cir. 1954) ("liability in damages for a nuisance begins only when

the interference causes substantial harm.")  Plaintiffs allege that chemicals are released into the

Plaintiffs' homes and unreasonably interfered and continue to interfere with the Plaintiffs' "use

and enjoyment of their properties and caused them harm and damage as discussed herein."

(Compl. at ¶ 2736).  However, merely assigning labels, such as "noxious chemicals," without

alleging facts in support of those labels, amounts to mere speculation.  *Morgan*, 779 So. 2d at

504, 507.

As to the third element, causation and injury, Plaintiffs fail to allege how the nuisance,

the alleged chemicals released into the Plaintiffs' home(s), is the direct and proximate cause of

the harm alleged.  In *Durrance v. Sanders*, 329 So. 2d 26 (Fla. Ct. App. 1976) the defendants had

---

[15] Additionally, the *Gates* plaintiffs alleged that defendants released toxic contaminants into the air and soil around the plant, including plaintiffs' property. *Gates*, 2009 U.S. Dist. LEXIS 47612, at *3.

dumped compost onto the property of one defendant; the compost inexplicably caught fire and burned for a week. *Id*. at 28-29. Plaintiff property-owners alleged that the burning compost caused the plaintiff property-owners' well water to become contaminated. *Id*. However, the nuisance alleged was the smoke and odors from the fire. *Id*. at 29. The court's examination of the pleadings (as well as the evidence adduced at trial) led to the "inescapable conclusion that the nuisance maintained by appellants (the piles of compost) was not proved to have proximately caused the injuries suffered by appellees as a result of the fire" and that the claims therefore fell "far short of a showing that the fire, and the smoke and odors associated therewith, were proximately caused by some activity on the part of the defendants." *Id*.

Similarly, here, Plaintiffs likewise fail to plead sufficient facts that further the causation element, alleging only (and without supportive facts) that the "invasions were intentional and unreasonable and/or unintentional but otherwise negligent or reckless" and that "[t]he interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and ongoing." (Compl. at ¶ 2739-2740). Plaintiffs bear the burden of showing that the nuisance alleged proximately caused the injuries.

Plaintiffs provide no factual detail concerning the relationship of the alleged "leaching" to the alleged harm. *Morgan*, 779 So. 2d at 504, 507. While claiming damages, Plaintiffs make no attempt whatsoever to link the alleged nuisance to the injury, as is required by Florida law. (Compl. at ¶ 2741 ("As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.")). As a result, the third element of the Plaintiffs' private nuisance claim fails as a matter of law owing to the failure to establish, through the allegations in the pleading,

that the chemicals "leaching" into Plaintiffs' homes are the proximate cause of the injuries alleged.

For the reasons set forth above, Plaintiffs' claim for private nuisance is barred under Florida law, as the alleged nuisance arises from the very property at issue and otherwise is improperly pleaded against KPT.

>    3.    **Plaintiffs fail to state a claim for Private Nuisance under Louisiana law.**

The "Louisiana Plaintiffs," as well as other Plaintiffs to whose claims Louisiana law may apply, are barred from bringing an action for private nuisance, given that the LPLA provides their exclusive remedy for harm resulting from an allegedly defective product of a manufacturer defendant.  LA. REV. STAT. ANN. art. 9:2800.52; (Compl. at ¶¶ 2721-2734).

Furthermore, even if Plaintiffs somehow could circumvent the LPLA, the claim would fail.  The common law of nuisance has no binding, precedential value in the courts of Louisiana. *Rodrigue v. Copeland*, 475 So. 2d 1071, 1078 (La. 1985).  Nuisance law does, "to some extent," correspond with the obligations of "neighborhood" established by Louisiana Civil Code sections 667 through 669, in which the tort of nuisance is typically grounded.  *Rodrigue*, 475 So. 2d at 1078; *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 609 (E.D. La. 2006).  Article 667 of the Louisiana Civil Code provides, in part:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his ***neighbor*** of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his ***neighbor*** of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. …

LA. CIV. CODE art. 667 (LEXIS 2010) (emphasis added).

Courts interpreting Article 667 have established beyond a doubt that "[t]he statute applies only in the case of damage done to **neighbors**." *Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 690 (E.D. La. 2006) ("*Barasich I*") (dismissing claims brought by parties who owned land that was not in "proximity" to the source of the alleged nuisance because they could not demonstrate that "neighbor" under Article 667 could encompass a party whose property is physically remote from that of the defendants); *Barasich v. Shell Pipeline Co.*, 2006 U.S. Dist. LEXIS 84389, *26 (E.D. La. Nov. 20, 2006) ("*Barasich II*") (quoting *Inabnett v. Exxon Corp.*, 642 So.2d 1243, 1251-52 (La. 1994)) (holding that liability under Article 667 arises only "when activity by one party holding a right to immovable property has caused damages to a party holding a right to a **neighboring property**'"); *Turner*, 234 F.R.D. at 608 (Article 667 thus "provides that a landowner [i.e., proprietor[16]] is liable for any activity **on his property** that would deprive his *neighbor* of enjoyment of his property or cause damage to him, when the [proprietor] knew or reasonably should have known of the potential for damage, when that damage could have been avoided by the exercise of  reasonable care, and when the [proprietor] failed to exercise reasonable care.")

Thus, where the plaintiff (or class) fails to allege a neighbor–proprietor relationship, dismissal of the private nuisance claim is appropriate. *Barasich II*, 2006 U.S. Dist. LEXIS 84389, at *26 (interpreting "private nuisance" claims under article 667 and dismissing property owners' claims for alleged resulting from rupture of defendant's crude oil pipeline for private nuisance because, "[w]hile it may be conceivable that some property owners might be able to show they were in fact 'neighbors' within the meaning of article 667, that is not what the putative class has pled in this case.").

---

[16] The term "proprietor" include lessees as well as landowners. *Butler v. Baber*, 529 So. 2d 374, 379 (La. 1988).

Here, Plaintiffs are barred from making a claim against KPT under section 667. Plaintiffs do not allege the cause of action against a "neighbor" or proprietor of a neighboring property. *See* LA. CIV. CODE art. 667. Furthermore, even if a neighboring relationship could be established, the elements of an action under Article 667 are similar to those for a private nuisance action in Florida, and Plaintiffs cannot meet the requisite pleading standard because the Complaint is devoid of support for the conclusory allegations listing the elements of a nuisance claim.

Thus, with respect to the "Louisiana Plaintiffs" and all other Plaintiffs to the extent that Louisiana law applies, the private nuisance claims are subsumed by the LPLA and otherwise are not actionable under Louisiana law.

### 4.   Plaintiffs fail to state a claim for Private Nuisance under Mississippi law because they cannot establish a neighboring relationship.

Plaintiffs' private nuisance claim also fails under Mississippi law. A private nuisance in Mississippi is "a nontrespassory invasion of another's interest in the use and enjoyment of his property." *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 662 (Miss. 1995). A defendant can be subject to liability for a private nuisance "only if[] his conduct is a legal cause of an ***invasion*** of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct or for abnormally dangerous conditions or activities." *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 859-60 (Miss. 1988) (citing Rest. (2d) of Torts § 822).

Although Plaintiffs conclusorily allege that "Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless" (Compl. at ¶ 2738), they fail to state how KPT's "involve[ment] in the manufacturing and sale of gypsum drywall"

36

constituted an "invasion." (*Id.* at ¶ 2077). Like the courts of the other jurisdictions addressed *infra*, Mississippi courts upholding nuisance claims have consistently considered the claim only with respect to landowners in the same vicinity. *See, e.g.*, *Leaf River*, 662 So. 2d at 660-64 (reversing finding of private nuisance where contaminant allegedly released from defendant's paper mill was not found on plaintiff's property); *Laurel Equip. Co. v. Matthews*, 218 Miss. 718, 720-22 (Miss. 1953) (affirming award of actual damages to homeowners for private nuisance resulting from emission of adjacent paint shop's emission of fumes and odors that were nauseating and offensive); *Cook Indus., Inc. v. Carlson*, 334 F. Supp. 809, 817-18 (N.D. Miss. 1971) (offensive odors and appearance produced by contaminated water released by agricultural chemical processing plant onto adjoining property constituted private nuisance and went beyond terms of easement).

For these reasons, Plaintiffs' claim for private nuisance fails to state a claim on which relief can be granted under Mississippi law.

### 5. Plaintiffs fail to state a claim for Private Nuisance under Texas law because they cannot establish a neighboring relationship.

The private nuisance claim fares no better under Texas law. A nuisance is a "condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Holubec v. Brandenberger*, 111 S.W. 3d 32, 37 (Tex. 2003). Private nuisance claims in Texas fall into one of three categories: (1) negligent invasion of another's interests; (2) intentional invasion of another's interests; or (3) other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests." *City of Tyler v. Likes*, 962 S.W. 2d, 489, 503 (Tex. 1997). The interference from the alleged nuisance must be "substantial." *Dodson v. Javelina, Co.*, No. 13-95-481-CV, 1997 Tex. App. LEXIS 1708, *6 (Tex. Ct. App. Apr. 3, 1997).

Plaintiffs have failed to adequately plead under any of the three types of nuisance recognized under Texas law.  Again, Plaintiffs provide no basis for an inference that KPT's alleged conduct as a manufacturer or seller constituted an "invasion" causing a private nuisance. Like the Mississippi courts, Texas courts have considered nuisance claims only with respect to defendants "outside the land by a stranger to the title."  2 Dan B. Dobbs, *The Law of Torts*, § 463 (2001); *see, e.g.*, *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606, 611-12 (Tex. Ct. App. 1987) (finding actionable nuisance arising from impoundment of water on defendant's land and defendant's failure to make provision for drainage from plaintiff's land); *Columbian Carbon Co. v. Tholen*, 199 S.W.2d 825, 828-29 (Tex. Ct. Civ. App. 1947) (affirming award of damages where soot from defendant's plant fell onto plaintiff's land); *Neyland v. Schneider*, 615 S.W.2d 285, 285-86 (Tex. Ct. Civ. App. 1981) (affirming judgment in favor of defendant landowner where neighbor had sought to enjoin use of defendant's unpaved roadway that resulted in dusty conditions, as plaintiff failed to present evidence showing that defendant's use of his roadway was unreasonable).  Here, in contrast, Plaintiffs allege a "nuisance" resulting from a feature of their own property, without any allegation of any invasion or conduct on a neighboring property. Such a "nuisance" claim is without remedy under Texas law.

Because Plaintiffs cannot properly plead private nuisance against KPT, or otherwise are barred from making the claim, the Court should dismiss Count XI with respect to KPT.

### E.   Plaintiffs Fail To State A Claim For Negligent Discharge Of A Corrosive Substance (Count XII).

Once again, Plaintiffs hope that by clever wordplay and novel repackaging, their bare and conclusory allegations of negligence and strict liability will garner the force of a cognizable claim.  (Compl. at ¶¶ 2742-2748).  Plaintiffs here purport to plead "negligent discharge of a corrosive substance" as a cause of action in addition to their negligence claim.  The claim is

duplicative.  *See Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 469 (5th Cir. (Tex.) 2001) (noting that plaintiffs pleaded "negligence, ***including*** negligent discharge of saltwater") (emphasis added).  Furthermore, such a claim would appear to apply only where a manufacturer releases a "corrosive substance" from its premises into the surrounding area.  *Id.* (noting that plaintiffs alleged that defendant operated an oil facility on Big Creek Ranch and that "various lines, tanks, and wells have ruptured, leaked, and overflowed releasing pollutants, including saline substances" onto Big Creel Ranch); *Florida Specialty, Inc. v. H2 Ology, Inc.*, 742 So. 2d 523, 527 (Fla. Ct. App. 1999).  Such facts are not alleged here.  The negligent discharge claim is unrecognized, has been inadequately pleaded, or is otherwise duplicative of the negligence claim (Count I).  As such, the Court should dismiss the Count XII.

### 1. Plaintiffs fail to state a claim for Negligent Discharge of a Corrosive Substance under Alabama Law.

Because Alabama does not appear to recognize an independent cause of action for negligent discharge of a corrosive substance, the Court should dismiss the claim.  Alternatively, to the extent the allegations are sufficient to state a claim, it is duplicative of the negligence claim (Count I) and should therefore be stricken.

### 2. Plaintiffs Fail to state a claim for Negligent Discharge of A Corrosive Substance under Florida Law.

Plaintiffs have failed to state a cause of action for negligent discharge of a corrosive substance under Florida law, which appears to be indistinguishable from a pure negligence claim.  The single published judicial opinion in any jurisdiction recognizing this claim suggests that, in addition to showing the elements of a negligence action, the plaintiffs must also allege that the defendant–manufacturer released a corrosive substance from its premises and thereby caused injury to personal property of another.  *Florida Specialty,* 742 So. 2d 523.  Because the

Plaintiffs' claim rests on the allegation that the "negligent discharge" emanated from Plaintiffs' own property, the claim cannot be sustained.

Alternatively, to the extent the allegations are sufficient to state a claim, it is duplicative of the negligence claim (Count I) and should therefore be stricken.

### 3. Plaintiffs fail to state a claim for Negligent Discharge of A Corrosive Substance under Louisiana Law.

The "Louisiana Plaintiffs," as well as other Plaintiffs to whose claims Louisiana law may apply, are barred from bringing negligence claims, given that the LPLA provides their exclusive remedy. LA. REV. STAT. ANN. art. 9:2800.52; (Compl. at ¶¶ 2721-2734). Thus, with respect to the "Louisiana Plaintiffs" and all other Plaintiffs to the extent that Louisiana law applies, the negligent discharge claim is subsumed by the LPLA or otherwise is not actionable and therefore must be dismissed.

However, even if such Plaintiffs somehow could plead causes of action sounding in negligence despite the LPLA, Louisiana does not appear to recognize an independent cause of action for negligent discharge of a corrosive substance. Alternatively, to the extent the allegations are sufficient to state a claim, it is duplicative of the negligence claim (Count I) and should therefore be stricken. *See Ellis v. Georgia-Pacific Corp.*, 550 So. 2d 1310, 1316 (La. Ct. App. 1989) (equating a claim of negligent discharge of a pollutant into a river to a "negligence" claim).

### 4. Plaintiffs fail to state a claim for Negligent Discharge of A Corrosive Substance under Mississippi Law.

Because Mississippi also does not appear to recognize an independent cause of action for negligent discharge of a corrosive substance, the Court should dismiss the claim. Alternatively, to the extent the allegations are sufficient to state a claim, it is duplicative of the negligence claim (Count I) and should therefore be stricken.

### 5. Plaintiffs fail to state A Claim For Negligent Discharge of A Corrosive Substance Under Texas Law.

Because Texas does not appear to recognize an independent cause of action for negligent discharge of a corrosive substance, the Court should dismiss the claim. Alternatively, to the extent the allegations are sufficient to state a claim, it is duplicative of the negligence claim (Count I) and should therefore be stricken. *See Harken Exploration Co.*, 261 F.3d at 469 (noting that plaintiff claimed negligence, "including negligent discharge of saltwater").

### F. Plaintiffs Fail To State A Claim For Unjust Enrichment (Count XIII).

Plaintiffs cannot make out the equitable claim of unjust enrichment which, in some jurisdictions, is not an independent cause of action but only an equitable doctrine for awarding damages. (Compl. at ¶¶ 2749-2752). Plaintiffs also fail to allege any contact whatsoever with KPT and allege no basis for stating how payment to KPT (by Plaintiffs or others) for drywall, assuming such payment occurred, would give rise to the claim that KPT was thereby unjustly enriched. (Compl. at ¶¶ 2749-2752). Plaintiffs provide no allegations of mistake, wrongdoing, or fraud that gave rise to KPT's supposed "enrichment," nor any facts to support an inference of such. Thus, the Court should dismiss the unjust enrichment claim with respect to KPT.

### 1. Plaintiffs fail to state a claim for Unjust Enrichment under Alabama law because they cannot allege that payment for the drywall was not voluntary or that they lack an adequate remedy at law.

Under Alabama law, Plaintiffs could not succeed in their unjust enrichment claim against KPT. Recovery on an unjust enrichment claim is not available where Plaintiffs have an adequate remedy at law, provided they succeed in proving the defendant liable. *Wynn v. Davison Design & Dev., Inc.*, CA 09-0790-CG-C, 2010 U.S. Dist. LEXIS 21413, at *24 (S.D. Ala. Feb. 19, 2010); *Northern Assurance Co.*, CA 08-222-KD-B, 2009 U.S. Dist. LEXIS 4033, at *14-15 (dismissing claim on a Rule 12(b)(6) motion as "precluded, as there [wa]s an adequate remedy

at law for damages under [alternative] theories of recovery" alleged in the complaint).  Here, the Plaintiffs, by their own admission, have an adequate remedy at law.  The damages sought pursuant to their tort claims, including negligence, encompass those sought in Count XIII. (*See* Compl. at ¶ 2749 (adopting and restating negligence and strict liability claims)).

Further, a plaintiff can sustain a claim for unjust enrichment under Alabama law only if the defendant against whom the claim is asserted "holds money which, in equity and good conscience, belongs to the plaintiff[,] or holds money which was improperly paid to defendant because of mistake or fraud."  *White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 1132 (S.D. Ala. 2006).  In this instance, KPT never held any money from the Plaintiffs or even the builders from whom the Plaintiffs purchased their respective properties.  KPT's products were allegedly sold to third-party suppliers, from whom Plaintiffs did not purchase their homes.  (Compl. at ¶¶ 2076).  Payments to KPT by suppliers have no relation to or bearing on the subsequent sale between distributors and builders or other third parties from whom the builders may have purchased the products at issue.  There is no basis upon which to allege any facts that might give rise to a claim for unjust enrichment.  *Hancock-Hazlett General Constr. Co. v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986) (dismissing unjust enrichment claim when defendant did not "hold" money that would otherwise belong to the plaintiff).

2.    **Plaintiffs fail to state a claim for Unjust Enrichment under Florida law because they did not confer a direct benefit on KPT and fail to allege that they lack an adequate remedy at law.**

Nor do Plaintiffs make out a claim for unjust enrichment under Florida law.  The claim requires the plaintiff to establish that (1) the plaintiff conferred a benefit upon the named defendants; (2) the defendants appreciated this benefit; and (3) the defendants accepted and retained the benefit under inequitable circumstances and ought to pay the value thereof. *Media Servs. Group, Inc. v. Bay Cities Commc'ns, Inc.*, 237 F.3d 1326, 1330-31 (11th Cir. (Fla.) 2001)

(citing *Swindell v. Crowson*, 712 So. 2d 1162, 1163 (Fla. Ct. App. 1998)); *Feheley v. LAI Games Sales, Inc.*, 08-23060, 2009 U.S. Dist. LEXIS 70430, at *19 (S.D. Fla. Aug. 10, 2009) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Ct. App. 2006)).  Compensation under the equitable doctrine of unjust enrichment is not appropriate where a plaintiff conferred merely "an indirect or incidental benefit on" the defendant.  *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1007 (11th Cir. (Fla.) 2004).

A claim for unjust enrichment should also be dismissed where the plaintiff fails to plead that it lacks a legal remedy.  *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236-37 (S.D. Fla. 2007) (quoting *American Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.,* 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  The claimant's reliance on an alleged wrongdoing by the defendant defeats the claim, as "'the law of unjust enrichment is concerned solely with enrichments that are unjust independently of [alleged] wrongs.'"  *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (quoting *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003)) (noting that when the plaintiff relies on a wrong to supply the unjust factor, "the causative event is a wrongful enrichment rather than an unjust enrichment")) (alteration in *Tenet Healthcare Corp.*).  In fact, liability in unjust enrichment is not concerned with "fault" but with wealth being in one party's hands when it should be in another party's. *Tenet Healthcare*, 420 F. Supp. 2d at 1309 (quoting *Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003)).  Mere allegations that it would be "unjust" for a defendant to retain a benefit obtained through the commission of an alleged wrong does not mean that the basis of the restitutionary obligation arises from an unjust enrichment. *Guyana Tel.*, 329 F.3d at 1245 n.3.

As a matter of Florida law, Plaintiffs cannot have conferred a direct benefit on the Defendants that they knowingly accepted and appreciated so as to satisfy the elements of an unjust enrichment claim under Florida law. The claim is "untenable" where, as here,

> Plaintiffs had no dealing with the Defendants or even knew of their existence until after this litigation ensued; Plaintiffs have failed to present any evidence of prior dealings with [] Defendants, including evidence of any oral or written communication between Plaintiffs and [] Defendants; and Plaintiffs have also failed to point to any evidence that Defendants knew who purchased the [allegedly defective goods]. Under these undisputed circumstances, Plaintiffs cannot establish [] Defendants knowingly and voluntarily accepted any benefits conferred upon them by Plaintiffs as required to state a claim for unjust enrichment under Florida law.

*City of St. Petersburg v. Dayco Prods., Inc.*, 2008 U.S. Dist. LEXIS 104765, *27-28 (S.D. Fla. Dec. 30, 2008) (dismissing claim for unjust enrichment). The reasoning of the court in *Dayco* applies equally here, where Plaintiffs conferred zero benefit on KPT because they purchased built homes and allege that KPT sold drywall not to them but to "certain suppliers." (Compl. at ¶ 2076).

Even if Plaintiffs were able to state the required elements, the claim would fail because Plaintiffs do not allege that they lack an adequate legal remedy. *See Prohias*, 490 F. Supp. 2d at 1236. In *Prohias*, the court dismissed an action for unjust enrichment where the unjust enrichment claim was supported by the same alleged conduct as in their claim under the consumer fraud statute. *Id.* at 1236-37. The court reasoned that if the defendant, Pfizer, had misled the plaintiffs with its pharmaceutical marketing scheme and the plaintiffs had been damaged thereby, plaintiffs had pleaded claims either under the statute or for negligent misrepresentation. *Id.* Similarly, in *Tenet Healthcare*, the court dismissed the unjust enrichment claim because it was "premised on [defendant's] purported RICO violations and theft of outlier funds," allegations of wrongdoing for which had legal remedies were readily available.

Likewise, here, Plaintiffs fail to allege that other legal remedies are unavailable.  (Compl. at ¶ 2749).   The allegation that KPT's "acceptance and retention of these benefits under the circumstances make it inequitable and unjust for [KPT] to retain the benefit" is conclusory and unavailing.  (*Id.* at ¶ 2751); *see Guyana Tel.*, 329 F.3d at 1245 n.3.

In sum, because the law of unjust enrichment is concerned solely with enrichments that are unjust and independent of alleged wrongs, Plaintiffs' unjust enrichment claims, which are based solely on wrongdoing for which an adequate legal remedy exists, "must be dismissed" under Florida law.  *Tenet Healthcare*, 420 F. Supp. 2d at 1309 (quoting *Flint*, 337 F.3d at 1330 n.2).

### 3.    Plaintiffs fail to state a claim for Unjust Enrichment under Louisiana Law because the claim is subsumed by the LPLA and because Plaintiffs fail to allege lack of an adequate remedy at law.

The "Louisiana Plaintiffs," as well as other Plaintiffs to whose claims Louisiana law may apply, are barred from bringing a claim for unjust enrichment, given that the LPLA provides their exclusive remedy.  LA. REV. STAT. ANN. art. 9:2800.52; (Compl. at ¶¶ 2721-2734); *King v. Bayer Pharms. Corp.*, 09-0465, 2009 U.S. Dist. LEXIS 125802, at *12 (W.D. La. June 8, 2009) ("The LPLA's exclusivity provision further precludes Plaintiffs' claims for unjust enrichment.") (citing *Hilton v. Atlas Roofing Corp.*, 05-4204, 2006 U.S. Dist. LEXIS 30284, at *6 (E.D. La. May 17, 2006).

Furthermore, even if the "Louisiana Plaintiffs" or other Plaintiffs whose claims are governed by the LPLA were to somehow circumvent its requirements, Louisiana law would still bar an unjust enrichment claim.   Codified as Louisiana Civil Code article 2298,  unjust enrichment is a remedy of last resort and "is only applicable to fill a gap in the law where no express remedy is provided." *Board of Supervisors of La. State Univ. v. Louisiana Agricultural Fin. Auth.*, 984 So. 2d 72, 81 (La. Ct. App. 2008) (citing *Louisiana Natl. Bank of Baton Rouge v.*

*Belello*, 577 So. 2d 1099, 1102 (La. Ct. App. 1991)).  Failure to exercise available remedies will not give rise to the claim.  *Louisiana Agriculture,* 984 So. 2d at 81 (concluding that an unjust enrichment remedy was barred because plaintiff had had statutory remedies through which it could "could have pursued collection of the monies owed to it" and that plaintiff's failure to pursue such remedies did not give rise to recovery in unjust enrichment).

Given the allegations in the present case, an unjust enrichment theory affords no relief under Louisiana law.  Far from claiming they lack an adequate legal remedy, Plaintiffs have filed a multitude of statutory and common law claims in what is, at its core, a negligence or product liability action with respect to KPT.  Unjust enrichment will not stand as a failsafe for Plaintiffs in the event that they cannot prevail on those claims.  Thus, with respect to the "Louisiana Plaintiffs" and all other Plaintiffs to the extent that Louisiana law applies, the unjust enrichment claims are subsumed by the LPLA and otherwise are not actionable and therefore must be dismissed.

### 4.    Plaintiffs fail to state a claim for Unjust Enrichment under Mississippi law because no such cause of action exists.

Under Mississippi law, unjust enrichment is not an independent theory of recovery.  *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 671 (S.D. Miss. 2007) (citing *Coleman v. Conseco, Inc.*, 238 F. Supp. 2d 804, 813 (S.D. Miss. 2002)) (partially abrogated on other grounds, *Sweeney v. Sherwin Williams Co.*, 304 F. Supp. 2d 868 (S.D. Miss. 2004)); *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987) (discussing the doctrine of unjust enrichment as a measure of damages as opposed to an independent theory of recovery)).[17]   Plaintiffs' claim for unjust

---

[17] To collect under an unjust enrichment theory under Mississippi law, a plaintiff must show that "'there is no legal contract but … the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.'"  *Ellis v. Anderson Tully Co.*, 727 So. 2d 716, 719 (Miss. 1998) (quoting *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987) (internal citation omitted)).  Plaintiffs would not be entitled to unjust enrichment as a damages

enrichment thus fails as a matter of Mississippi law. *Coleman*, 238 F. Supp. 2d at 813 ("Plaintiffs have cited no case law establishing "unjust enrichment" as an independent compensable tort, and the Court is aware of none. Therefore, Plaintiffs' claim for unjust enrichment against the individual Defendants should be dismissed.").

> **5. Plaintiffs fail to state a claim for Unjust Enrichment under Texas law because no such cause of action exists, because plaintiffs cannot establish that KPT incurred a benefit through fraud, duress, or unfair advantage, and because plaintiffs cannot allege that they lack an adequate remedy at law.**

Under Texas state law, "'[u]njust enrichment, itself, is not an independent cause of action.'" *County of El Paso v. Jones*, EP-09-CV-00119-KC, 2009 U.S. Dist. LEXIS 113149, at *44 (W.D. Tex. Dec. 4, 2009) (quoting *Dudley Constr. v. Dawson*, 258 S.W.3d 694, 703 (Tex. Ct. App. 2008)). Rather, unjust enrichment "'belongs to the measure of damages known as quasi-contract or restitution … 'to place an aggrieved plaintiff in the position he occupied prior to his dealings with the defendant.'" *Jones*, 2009 U.S. Dist. LEXIS 113149, at *44 (quoting *Burlington N. R.R. v. Southwest Elec. Power*, 925 S.W.2d 92, 96-97 (Tex. Ct. App. 1996)).[18] As such, the claim should be dismissed. *Redwood Resort Props., LLC v. Holmes Co.*, 3:06-CV-

---

remedy, however. The "best way to determine the question [of whether unjust enrichment may apply] is to view the obvious and see whether a resulting or constructive trust may be implied under the facts of this case." *Hans v. Hans*, 482 So. 2d 1117, 1122 (Miss. 1986). Proof of facts necessary to establish a trust by implication of law, i.e., a constructive or resulting trust, must be clear and convincing. *Id.* Furthermore, to impose a constructive trust under Mississippi law, a court must find abuse of a confidential relationship resulting in unjust enrichment. *McNeil v. Hester*, 753 So. 2d 1057, 1064 (Miss. 2000). There is no basis for a "constructive trust" in the present case.

[18] Under Texas law, unjust enrichment is a "narrow remedy," and will not be applied "merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss … or because the benefits to the person sought to be charged amount to a windfall.'" *Singer v. City of Waco*, 324 F.3d 813, 826 (5th Cir. (Tex.) 2003) (citation omitted) (reversing district court's application of unjust enrichment doctrine to firefighters' compensation); *see also HECI Exploration Co.*, 982 S.W.2d at 891 (affirming trial court's finding that unjust enrichment did not apply where plaintiff failed to exercise legal remedy).

1022-D, 2006 U.S. Dist. LEXIS 85996, at *9 (N.D. Tex. Nov. 27, 2006) (dismissing unjust enrichment claim and holding that it is not an independent cause of action.)

Furthermore, Plaintiffs do not allege that KPT "was unjustly enriched by a benefit obtained from [Plaintiffs] by fraud, duress, or undue advantage," nor do they "allege any facts capable of proving this aspect of a claim for unjust enrichment." *Prophet Capital Mgmt. v. Prophet Equity, LLC*, A-09-CA-316 LY, 2009 U.S. Dist. LEXIS 88474, at *4-5 (W.D. Tex. Sept. 25, 2009) (dismissing "unjust enrichment" claim on this ground on not reaching issue of whether automatic dismissal was warranted because Texas does not recognize unjust enrichment as independent cause of action).  Without pleading fraud, duress, or undue advantage or facts to support an inference thereof, the claim, even if it were cognizable as a separate cause of action, would necessarily fail under Texas law.

Unjust enrichment under Texas law also is not available where an adequate remedy at law exists. *Texas Carpenters Health Benefit Fund, IBEW-NECA v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998) (citing *Hoarel Sign Co. v. Dominion Equity Corp.*, 910 S.W.2d 140, 143 (Tex. Ct. App. 1995), *writ denied*) (dismissing unjust enrichment claim where plaintiffs would have a remedy in subrogation).  Plaintiffs cannot allege lack of an adequate legal remedy here.

Given Plaintiffs' inability to state a claim for unjust enrichment with respect to KPT under the laws of any jurisdiction, the Court should dismiss Count XIII with respect to KPT with prejudice.

**G.    Plaintiffs Fail To State A Claim For Violation Of Consumer Protection Acts (Count XIV).**

Plaintiffs attempt to invoke state statutes designed to protect consumers from fraud and unfair trade practices without making the requisite specific factual allegations.  (*See* Compl. at ¶¶

48

2753-2757).  Plaintiffs, as already explained, are barred from bringing a class action here in any case but are specifically barred from bringing class actions under four of the seven state statutes they invoke in Count XIV, namely, those of Alabama, Louisiana, Mississippi, and Virginia. Furthermore, Plaintiffs flagrantly ignore additional bars to individual and class action suits under these statutes and fail to allege they have met the prerequisites mandated by the respective state legislature and courts.  Finally, Plaintiffs fail to allege a sufficient (or indeed any) nexus between their claims and at least two of the states (North Carolina and Virginia) so as to justify application of the statutes.  For these reasons, the Court should dismiss the claims.

    **1.**       **Plaintiffs are barred from bringing class actions under four of the seven statutes they invoke (Count XIV).**

Plaintiffs each purport to be "participating as class representatives in the class and subclasses as set forth" in materials supplementing the Complaint.  (*See, e.g.*, Compl. at ¶ 5).  As already noted, Plaintiffs cannot bring claims on behalf of claimants other than those listed in the Complaint, pursuant to this Court's prior order.  Furthermore, to the extent a "class action" is intended, four of the seven statutes at issue will not permit a class action.

Class actions are not permitted under the ***Alabama Deceptive Trade Practices Act*** ("ADPTA").  ALA. CODE 1975 § 8-19-10(f); *University Fed. Credit Union v. Grayson*, 878 So. 2d 280, 285 at n.2 (Ala. 2003); *Ex parte Exxon Corp.*, 725 So. 2d 930, 933 (Ala. 1998).  Nor are class actions permitted under the ***Louisiana Unfair Trade Practices Act*** ("LUTPA").  LA. REV. STAT. art. 51:1409; *Morris v. Sears, Roebuck & Co.*, 765 So. 2d 419 (La. App. 4th Cir. 2000); *Maldonado v. Ochsner*, 237 F.R.D. 145 (E.D. La. 2006), *aff'd* 493 F.3d 521 (5th Cir. (La.) 2007). Likewise, the ***Mississippi Consumer Protection Act*** ("MCPA") prohibits class actions. MISS. CODE ANN. § 75-24-15(4); *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655 (S.D. Miss. 2007) (barring consumers' purported class action, ruling that "because Section 75-24-15(4) is a

substantive rather than procedural rule, it must be applied under the *Erie* doctrine to bar the plaintiffs' class action claim"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005). Finally, the **Virginia Consumer Protection Act** ("VCPA") does not expressly authorize a class action, as would be required under Virginia law. VA. CODE ANN. §§ 59.1-196 *et seq.*; *Nationwide Mut. Ins. Co. v. Housing Opportunities Made Equal, Inc.*, 259 Va. 8, 23 (Va. 2000) ("Virginia is not a class-action state, and an individual or entity does not acquire standing to sue in a representative capacity by asserting the rights of another, *unless authorized by statute to do so*.") (emphasis added); *see also America Online, Inc. v. Superior Ct. of Alameda County*, 90 Cal. App. 4th 1, 17 (Cal. App. 1st Dist. 2001) (noting Virginia consumer law's "hostility to class actions"). Thus, Plaintiffs, to the extent they style themselves a "Class," cannot bring a class action under those states' laws.

> **2.** **Plaintiffs fail to state a claim under the Alabama Deceptive Trade Practices Act because they have failed to make written demand and have impermissibly filed concurrent common law claims (Count XIV).**

Plaintiffs' claims under the ADTPA must fail. Plaintiffs (1) have not satisfied ADPTA's fifteen-day pre-filing writing requirement; and (2) are barred from filing concurrent ADPTA and common law claims under ADPTA's mutual exclusivity provision.

> **a.** **Plaintiffs did not make a written demand in compliance with ADPTA and thus have failed to state a claim.**

Plaintiffs have failed to state a claim under the ADPTA because they have ignored the requirement to make written demand on KPT for relief at least fifteen days before filing their Complaint. *See* ALA. CODE 1975 § 8-19-10(e) (requiring plaintiff to make "written demand for relief" on defendant "at least 15 days prior to the filing of any action under this section"). Such written demand additionally required Plaintiffs to "identify[] the claimant and reasonably describ[e] the unfair or deceptive act or practice *relied upon* and injury suffered." *Id.* Needless

to say, Plaintiffs have failed to allege that they made such written notice in their Complaint or reasonably describe their reliance on any unfair or deceptive act, let alone describe the "unfair or deceptive act or practice."  (*See* Compl. at ¶ 2755).

Plaintiffs make no representation of having made a written demand to Knauf at least fifteen days before they filed their Complaint on December 9, 2009.  Alabama courts have consistently dismissed claims of plaintiffs for failure to comply with the  notice requirement. *See*, *e.g.*, *Nimbus Technols., Inc. v. Sunndata Prods., Inc.*, No. 04-CO00312-W, U.S. Dist. LEXIS 46509, at *61 (N.D. Ala. 2005) (holding that plaintiff "procedurally waived its right to pursue a claim" because "prior to filing suit, [the plaintiff] failed to send the written demand … which is condition precedent to filing suit under the Alabama Deceptive Trade Practice Act"); *Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997) (finding that plaintiffs "failed to state a claim under the Alabama DTPA" because "[t]hey have not complied with the pre-filing demand requirement imposed by the statute"); *Givens v. Rent-a-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988) (granting defendant's motion to dismiss because "plaintiff failed to communicate to defendants a written demand for relief, as is required by § 8-19-10(e) of the [ADPTA]").  Accordingly, the Court should dismiss the ADPTA claim for this reason alone.

Furthermore, Plaintiffs make no representation that they "reasonably describe[d]" the alleged deceptive practice and injury under the ADPTA.  The Complaint, which cannot be the separate statutory notice that Plaintiffs were required but failed to provide, does not even attempt to cure that defect merely alleging a two-line description of the claims under the ADPTA and several other state statutes.  (Compl. at ¶ 2756).  Plaintiffs only "actual damages" as a result of an unspecified "violation" of the several state statutes.  (*Id.*)  Such a description, even had it been

separately provided before the suit was filed, would not be "reasonable" as a matter of law.  In

*Givens*, a letter expressing the plaintiff's intent to institute civil proceedings against the

defendant if no settlement could be reached was deemed insufficient to meet the reasonableness

requirement of § 8-19-10(e) where it "fail[ed] to reasonably describe the unfair or deceptive

trade practice, or the injury suffered."  720 F. Supp. 160, 162 (S.D. Ala. 1988); *see also*

*Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997)

(noting that the plaintiffs' "failure to reasonably describe the unfair or deceptive practice in a

timely letter is fatal to their claim under the Alabama law").

In sum, given that Plaintiffs make no allegations that they complied with the ADPTA's

pre-filing demand requirement or reasonably described the purported unfair or deceptive acts,

any claims under the ADPTA should be dismissed.

> **b.**  **Plaintiffs are barred from filing an action under the ADPTA because the ADPTA's mutual exclusivity provision prohibits concurrent statutory and common law claims.**

Plaintiffs' claim under ADPTA should also be dismissed because Plaintiffs have

impermissibly filed concurrent common law claims.  Section 8-19-15(a) ("Civil Remedies;

mutually exclusive") requires that a plaintiff choose between statutory and common law claims:

> The civil remedies provided [in the ADPTA] and the civil remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts, or fraudulent concealment are ***mutually exclusive***.  An election to pursue the civil remedies prescribed by [the ADPTA] ***shall exclude and be a surrender of all other rights and remedies available at common law, by statute or otherwise***[.]

ALA. CODE 1975 § 8-19-15(a) (emphasis added).  As the Alabama Supreme Court has

confirmed, this "mutual exclusivity" provision prohibits a party from filing concurrent claims

under ADPTA and the common law, as Plaintiffs have done here.  *Ford Motor Co. v. Sperau*,

708 So. 2d 111, 122 at n.7 (Ala. 1997) ("the remedies under the [ADPTA] and those otherwise

available are mutually exclusive"); *Hines v. Riverside Chevrolet-Olds, Inc.*, 655 So. 2d 909, 917 (Ala. 1994) ("[Section] 8-19-15 … makes it clear that the remedies available under that Act and the remedies available under the common law or other statutory law are 'mutually exclusive'"); *see also Cheminova Am. Corp. v. Corker*, 779 So. 2d 1175, 1183 (Ala. 2000) (noting that under section 8-19-15, "a plaintiff can elect whether to sue for the remedies provided under the Act *or* to sue for remedies allowed by the common law") (emphasis added).

Plaintiffs' claims under the ADPTA, and/or the common law claims alleged herein to the extent that Alabama law applies thereto, should be dismissed accordingly.

> **3.      Plaintiffs fail to state a cause of action for violation of the Florida Deceptive and Unfair Trade Practices Act (Count XIV).**

Plaintiffs purport to bring a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.* (Compl. at ¶ 2754). This claim also fails as a matter of law. The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade of commerce," FLA. STAT. § 501.204(1). To state a claim under FDUTPA, a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 932 So. 2d 1172, 1180 (Fla. Ct. App. 2006).

Claims brought under the FDUTPA must be pled "'with the level of particularity required under FED. R. CIV. P. 9(b).'" Furthermore, the damages under FDUTPA must be limited to the actual damages relating to the property which was the subject of the consumer transaction. *See* FLA. STAT. § 501.211(2). Accordingly, courts interpreting the FDUPTA have consistently dismissed incidental or consequential recovery for a FDUTPA violation.

Here, Plaintiffs fail to state facts with particularity that give rise to a reasonable inference that KPT committed any unfair or deceptive acts by which the Plaintiffs were aggrieved.

Furthermore, Plaintiffs impermissibly claim damages to property other than that which is the subject of the relevant consumer transaction, *i.e.*, the alleged sale or distribution of drywall by KPT. Plaintiffs instead allege incidental and consequential damages, which are not recoverable under the FDUTPA. Accordingly, Plaintiffs' claims under FDUTPA should be dismissed.

### a. Plaintiffs fail to allege any facts to allege KPT committed any "unfair or deceptive acts" under the FDUTPA.

As an initial matter, Plaintiffs fail to allege an "unconscionable" or an "unfair" or "deceptive" act or practice as defined by the FDUTPA. FLA. STAT. § 501.203(3). A deceptive act or practice under FDUTPA is a representation, omission, or other act or practice that is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment. *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773 (Fla. 2003). It is well settled that a fraud claim under the FDUTPA must be pled "'with the level of particularity required under FED. R. CIV. P. 9(b).'" *See, e.g., Lantz v. American Honda Motor Co.*, 2007 U.S. Dist. LEXIS 34948 (N.D. Ill. May 14, 2007) (quoting *Zlotnick v. Premier Sales Group, Inc.*, 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006)) (applying the FDUTPA); *Stires v. Carnival Corp.,* 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002); *Florida Digital Network v. Northern Telecom, Inc.*, 2006 U.S. Dist. LEXIS 61983, *2 (M.D. Fla. Aug. 30, 2006).

To comply with the requirement of Rule 9(b), Plaintiffs must further set forth what statements were made, when they were made, the content and manner in which they misled plaintiff, and what defendants obtained as a result. *See e.g., Garcia v. Santa Maria Resort, Inc.,* 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007) (citing *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

Here, Plaintiffs fail to satisfy these requirements. Again, Plaintiffs only ambiguously assert that they "have suffered actual damages" as a result of Defendants' acts and omissions

including "the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall," which consists of a few lines out of the whole 590-page Omnibus Complaint. (Compl. ¶ 2755).   Plaintiffs only summarily assert that KPT made "knowing misrepresentations" in a manner that was misleading. (*Id*.)  Plaintiffs' claims add up, at most, to a claim for negligence rather than "unconscionable" or "unfair" or "deceptive" acts or practices.   Plaintiffs have thus failed to meet the applicable particularity requirements. Because Plaintiffs have failed to allege the first element of an FDUTPA claim, the claim fails as a matter of law.

> **b.   Plaintiffs seek damages that are not recoverable under the FDUTPA.**

Plaintiffs' FDUTPA claim also fails to the extent that it seeks damages for which the statute affords no relief.  Though acknowledging that Plaintiffs only qualify for actual damage under FDUTPA, Plaintiffs nonetheless primarily claim consequential and incidental damages, rather than actual damages as required under the FDUTPA.  (Compl. ¶ 2755).

The damages under FDUTPA must be limited to the actual damages relating to the property which was the subject of the consumer transaction.  *See* FLA. STAT. § 501.211(2) ("[i]n an action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover *actual damages…*") (emphasis added); FLA. STAT. § 501.212(3) ("This part *does not* apply to: … a claim for *damage to property* other than the property that is the subject of the consumer transaction.") (emphasis added).  *Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. Ct. App. 1984); *see also Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 328-29 (S.D.N.Y. 2006), *aff'd on other grounds*, 279 F. App'x 40 (2d Cir. 2008) (applying the FDUTPA), *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 7 (Fla. Ct. App. 2009).   In *Rollins*, the Court expressly held that the "actual damages" provision of the FDUTPA, Section 501.211(2), permits a

consumer to recover only the difference between the market value of the product or service as contracted for and the market value of the product or service as received. *Rollins, Inc. v. Heller*, 454 So. 2d 580 at 584-595; *see also Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. Ct. App. 2004) ("In the context of FDUTPA, 'actual damages' have long been defined as "'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."') Even "when the product is rendered valueless as a result of the defect – then the purchase price is the appropriate measure of actual damages." *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So.2d 311, 314 (Fla. Ct. App. 1998).

Florida courts have consistently awarded actual damages under the FDUTPA while denying claims for consequential, incidental or punitive damages to other property attributable to the consumer's use of such goods or services. *See, e.g., Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Ct. App. 2006); *Schauer*, 5 So. 3d at 2, 7; *see also, e.g., Smith v. 2001 S. Dixie Hwy., Inc.*, 872 So. 2d 992, 994 (Fla. Ct. App. 2004) ("Actual damages, as pertaining to FDUTPA, does not include 'actual consequential' damages"); *Orkin Exterminating Co., Inc. v. DelGuidice*, 790 So. 2d 1158, 1162 (Fla. App. 2001) (same); *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. Ct. App. 1985) (holding that the FDUTPA allows recovery for diminished value of goods received but does not authorize recovery of special or consequential damages), *Fort Lauderdale Lincoln Mercury*, 715 So. 2d at 314.

Here, Plaintiffs impermissibly seek relief for a myriad of other personal and real property damage, which go far beyond the "actual damages" as measured by these established precedents. Specifically, Plaintiffs seek damages for the following:

> costs of inspection; costs and expenses necessary to remedy, replace and remove …other property that has been impacted; lost

> value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

(Compl. at ¶ 2619).  These claims for damages directly contravene the plain language of the FDUTPA and the precedents cited above, which limit compensation to actual damages, which here, at most, amount to the fair market value of the drywall for which the purchaser contracted. As in *Rollins,* there is no basis for holding the defendants liable for the entire contents of the house where they never undertook to guarantee the protection of such items and where the statute does not afford a remedy for consequential damages.

For these reasons, Plaintiffs cannot make out a claim for violation of the FDUTPA, and thus the Court should dismiss this claim with respect to KPT pursuant to Rule 12(b)(6).

### 4. The LPLA sets forth the exclusive theories of liability against manufacturers and thus Plaintiffs' claims under LUTPA fail as a matter of law (Count XIV).

Plaintiffs purport to bring a claim under the LUTPA, LA. REV. STAT. ANN. arts. 51:1401 *et seq.* (Compl. at ¶ 2754).  As already noted, this claim fails as a matter of law under the LPLA's exclusivity provision.  La Rev. Stat. art. 9:2800.52; *Bladen*, 487 F. Supp. 2d at 767 ( "[t]he legislature, with full knowledge of the LUTPA, unquestionably enacted the LPLA statutory declaration of exclusive liability in the LPLA and ***made no exception for the LUTPA***") (emphasis added); *Avondale Indus., Inc. v. Tyco Valves and Controls, Inc.*, 2:06cv2126, 2007 U.S. Dist. LEXIS 20329 at *4-5 (E.D. La. 2003) (dismissing LUTPA claims because it is precluded by the LPLA).

Because Louisiana law clearly prohibits Plaintiffs from asserting the claims as an independent cause of action beyond the scope of the LPLA, Plaintiffs' claims against KPT under the LUTPA fail as a matter of law.

**5.      Plaintiffs fail to state a claim under the Mississippi Consumer Protection Act because they have failed to attempt resolution and fail to meet the requisite pleading standards (Count XIV).**

Plaintiffs fail to state a claim for violation of the MCPA, MISS. CODE. ANN. §§ 75-24-1, *et seq.* (*See* Compl. at ¶ 2754). The MCPA prohibits "unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce." MISS. CODE. ANN. § 75-24-5. To the extent that Plaintiffs purport to plead individual causes of action under the MCPA, they have failed to meet the statutory prerequisite of "first" making "a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." *Id.*

Moreover, Plaintiffs have failed to state a claim under the requisite pleading standard. "To state a claim under the MCPA … Plaintiffs must plead with particularity pursuant to Rule 9(b)." *Mayberry v. Bristol-Myers Squibb Co.*, 07-942, 07-1099, 2009 U.S. Dist. LEXIS 121115, at *21 (D.N.J. Dec. 30, 2009). To meet this heightened pleading requirement under Rule 9(b) in accord with the Fifth Circuit precedent, "[a]t a minimum, … requires that the plaintiff allege the time, place and contents of the alleged misrepresentation, as well as the identity of the person making [it]." *Keith v. Stoelting, Inc.*, 915 F.2d 996, 1000 (5th Cir. 1990); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citations omitted) ("… Rule 9(b) requires 'the who, what, when, where, and how' to be laid out").

**a.      Plaintiffs have failed to attempt resolution through informal dispute resolution and thus have failed to meet a prerequisite to filing a private action under the MCPA.**

Plaintiffs also fail to state an individual cause of action under the MCPA because, contrary to statutory requirements, Plaintiffs purport to bring the cause of action without first attempting to resolve the dispute. *See* MISS. CODE ANN. 75-24-15(2). The MCPA requires that "[i]n any private action brought under this chapter, the plaintiff must have first made a

reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." *Id.* Plaintiffs make no allegations that they attempted any form of dispute resolution whatsoever with respect to KPT.

Automatic dismissal of a claim under the MCPA is warranted where plaintiffs have failed to allege that they meet this prerequisite. *Taylor v. Southern Farm Bureau Cas. Co.*, 954 So. 2d 1045 (Miss. Ct. App. 2007). In *Taylor*, the Mississippi Court of Appeals enforced this procedural requirement and affirmed the dismissal of an insured's claim under the MCPA for failure to allege any attempt to satisfy the informal dispute settlement requirement of Section 75-24-15(2). *Id.* at 1049 ("The record in this case is devoid of any reference to [plaintiff's] attempting to resolve this issue through an informal settlement program, and we can only conclude that no such attempt was made."); *see also Montalto v. Viacom Int'l, Inc.*, 545 F. Supp. 2d 556 (S.D. Miss. 2008) *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 668 (S.D. Miss. 2007) (enforcing the informal dispute settlement requirement of Section 75-24-15(2)).

Here, Plaintiffs purport to assert a private cause of action based on violation of the MCPA. (Compl. at ¶¶ 2754-2757). The Complaint alleges no attempt by Plaintiffs to resolve such a claim through any informal dispute settlement program under the auspices of the Attorney General's office prior to filing as is required by Section 75-24-15(2). Accordingly, the claim should be dismissed.

### b. Plaintiffs' MCPA claim fails to allege sufficient facts to meet the requisite pleading standards.

The MCPA clearly authorizes private rights of action only to remedy certain violations. *See* Miss. Code Ann. §§ 75-24-15. The statute provides that "any person who … suffers any ascertainable loss … as a result of the use of [*sic*] employment … of a method, act or practice prohibited by Section 75-24-5 may bring an action at law … to recover such loss of money or

damages for the loss of such property … ."  *Id.* at § 75-24-15(1) (emphasis added).  However, Section of 75-24-5 MCPA does not allow for private causes of action to remedy all manner of allegedly unfair methods of competition or unfair or deceptive trade practices.[19]  Section 75-24-5(2) identifies a specific list of prohibited acts and prohibits persons from acts such as "[m]isrepresent[ing] the source, sponsorship, approval, or certification of goods or services" and "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  MISS. CODE. ANN. § 75-24-5(2)(b), (g); *see also Taylor*, 954 So. 2d at 1048 (describing allegations brought under subsections (g) and (h) of section 75-24-5(2) as "fraud by omission" but finding that an insurance policy is not "merchandise" within the meaning of the MCPA).  Here, Plaintiffs barely even list the elements of the claim, and their conclusory statements fail to allege what "acts and omissions" or "misrepresentations" KPT made, let alone how the drywall at issue differed from what it was represented to be. (*See* Compl. at ¶ 2755).

Even if Plaintiff could meet the prerequisite of MCPA for bringing a private cause of action, dismissal would be warranted for failure to state a claim.  "To state a claim under the MCPA … Plaintiffs must plead with particularity pursuant to Rule 9(b)."  *Mayberry*, 2009 U.S. Dist. LEXIS 121115, at *21.  The specificity requirement of the MCPA is underscored by the fact that the language of Rule 9(b) of the Mississippi Rules of Civil Procedure precisely mirrors its federal counterpart.  *See* MISS. R. CIV. P. 9(b).  Furthermore, Plaintiffs have failed to make the minimum required allegations as to the time, place and contents of the alleged misrepresentation.

---

[19] Under the MCPA, the Mississippi Attorney General may bring an action in the name of the State against a defendant for unfair methods of competition or unfair or deceptive trade practices. MISS. CODE. ANN. § 75-24-9. "Unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited. Action may be brought under Section 75-24-5(1) only under the provisions of Section 75-24-9." *Id.* at § 75-24-5(1).

*Keith*, 915 F.2d at 1000; *Benchmark Elecs., Inc.*, 343 F.3d at 724.  "[E]lements of common law fraud – namely intentional misrepresentation, detrimental reliance and resultant damages – are also necessary elements of a private action under the consumer protection statutes under which plaintiffs bring their statutory fraud claims."  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*, Nos. 96-3125, 96-1814, 96-3198, 1997 U.S. Dist. LEXIS 24064, *29 (D.N.J. 1997) (citing MISS. CODE ANN. § 75-24-5(2)(g), § 75-24-15(1)) (dismissing Plaintiffs' product liability claims for failure to state reliance on alleged Defendants' misrepresentation); *see also Mayberry*, 2009 U.S. Dist. LEXIS 121115, at *21.

Here, Plaintiffs fail to allege with particularity any violation specified under Section 75-24-5.  The conclusory allegation that "Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States" is a catch-all allegation that is unsupported by any specific facts set forth with the required particularity.  (Compl. at ¶ 2755).  For example, the Complaint fails to provide any facts that would support when, where, how, by whom and to whom the drywall was touted.  Conclusory allegations of fraud are not sufficient to survive dismissal for failure to state a claim.  *Smith*, 845 F.2d at 1365.  For these reasons, Plaintiffs' claim under the MCPA should be dismissed.

> **6.      Plaintiffs have failed to state a claim  under the Texas Deceptive Trade Practices–Consumer Protection Act because they have failed to provide written notice to KPT and the Texas consumer protection agency (Count XIV).**

Plaintiffs purport to bring a claim under the Texas Deceptive Trade Practices–Consumer Protection Act, ("DTPA"), TEX. BUS. COM. CODE ANN. § 17.41, *et seq*.  (Compl. at ¶ 2754).

This claim fails as a matter of law owing to Plaintiffs' noncompliance with the notice requirement under the DTPA, and thus the court must abate or dismiss Plaintiffs' action under the DTPA.  (*See* Compl. ¶¶2753-2757).

Under the DTPA, Plaintiffs were required to send notice to KPT before filing the cause of action:

> As a prerequisite to filing a suit seeking damages…a consumer *shall give written notice* to the person at least *60 days before filing the suit* advising the person in *reasonable detail* of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses…

TEX. BUS. & COM. CODE ANN. § 17.505(a) (emphasis added).  The purpose of the DTPA's notice provision is "to discourage litigation and encourage settlements of consumer complaints," and, thus, written notice pursuant to 17.505(a) is a mandatory "prerequisite to filing a suit seeking damages" under the DTPA.  *Hines v. Hash,* 843 S.W.2d 464, 468 (Tex. 1992); *see also In Re Behr*, 2006 Tex. App. LEXIS 1588 at *7 (Tex. App. Mar. 1, 2006) (noting that a plaintiff's failure to provide pre-suit notice deprives the defendant of its "right to limit [its] damage exposure through an offer of settlement …"); *Ramirez v. Am. Home Prods.*, No. 3-03-155, 2005 U.S. Dist. LEXIS 40577, at *10 (S.D. Tex. Sept. 16, 2005) (noting that pre-suit notice is mandatory).  Such notice to the defendant must "comply with the statutory insistence upon reasonably certain specificity" by advising it "in reasonable detail of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant."  *Hines*, 843 S.W.2d 464, at 469; *see also* TEX. BUS. & COM. CODE § 17.505(a).

The DTPA further requires that, in the event of the plaintiff's failure to provide pre-suit notice, the court shall abate the case and may dismiss the action.  TEX. BUS. & COM. CODE ANN. § 17.505(d); *Miller v. Kossey*, 802 S.W.2d 873 (Tex. App. 1991); *Southwestern Bell Tel. Co. v.*

*DeLanney,* 809 S.W.2d 493, 495 (Tex. 1991) ("Because of his failure to comply with the notice requirements of the DTPA … [the] entire cause of action under the DTPA … was dismissed …"); *Hines*, 843 S.W.2d at 469 ("If a plaintiff fails to give notice while the action is abated for that purpose, it should be dismissed.").

As already noted, Plaintiffs here are barred from representing claimants who are not already named in the Complaint.  However, to the extent Plaintiffs style themselves as a "class," they were required to send to Texas's consumer protection division a copy of pre-suit notice. TEX. BUS. & COM. CODE ANN. § 17.501 ("A consumer filing an action under Section 17.50 that is *to be maintained as a class action* shall send to the consumer protection division … a copy of the notice … and … a copy of the petition … .") (emphasis added).

Here, Plaintiffs do not allege that they complied with the prerequisites of providing timely written notice to KPT or sending a copy of such notice and the petition to the Texas consumer protection division as required to maintain a private class action.  Nowhere does the Complaint itself provide a level of detail to meet the formality and substance required for pre-suit notice to the defendant under the DTPA. Plaintiffs' entire description of their DTPA claims consists of a summary assertion that they "have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts."  (Compl. at ¶ 2755-2756).

Because Plaintiffs have not complied with the DTPA's mandatory pre-filing notice requirements, the claim under the DTPA fails as a matter of law.  The Court should therefore dismiss the claim with respect to KPT.

7.    **Plaintiffs Fail To State A Claim Under The North Carolina Consumer Protection Act Because The Sole North Carolina Resident Cannot Bring A Class Action And Because Plaintiffs Fail To Show The Requisite Nexus To North Carolina (Count XIV).**

Plaintiffs make the puzzling claim that they are entitled to relief under a North Carolina statute despite stating no facts whatsoever that would implicate the protections of North Carolina law.   Plaintiffs purport to bring a claim under the North Carolina Consumer Protection Act ("NCCPA"), N.C. GEN. STAT. § 75-1, *et seq*.   (Compl. at ¶ 2754).   However, not a single Plaintiff is alleged to own property in North Carolina, let alone property in North Carolina containing the allegedly defective drywall.   (*Id.* at ¶¶ 5-2072).   The sole Plaintiff who even alleges North Carolina residency, Dominic Ciaramitaro, is alleged to own affected property only in Florida.   (*Id.* at ¶ 422).   Plaintiffs do not allege the date on which Mr. Ciaramitaro became a North Carolina resident.   As a single Plaintiff (who cannot represent "similarly situated" Plaintiffs who did not file their claims by December 9, 2009), Mr. Ciaramitaro cannot bring a class action under the NCCPA.

However, regardless of whether Mr. Ciaramitaro were to bring an individual claim or a class action, the NCCPA claim must fail as a matter of law because such a cause of action lacks a sufficient nexus with North Carolina.   By its plain language, the statute is inapplicable, for it affords relief only where the plaintiff alleges "conspiracy in restraint of trade or commerce ***in the State of North Carolina.***"   N.C. GEN. STAT. § 75-1.1 (emphasis added); *see Market Am. Inc. v. Rossi*, 1:97-CV-00891, 1999 U.S. Dist. LEXIS 9793, *56-57 (M.D.N.C. 1999) (discussing nexus requirement);   *Jacobs v. Central Trans., Inc.* 891 F. Supp. 1088, 1111 (E.D.N.C. 1995), *rev'd in part on other grounds*, 83 F.3d 415 (4th Cir. 1996) (same).

Plaintiffs allege no facts that would tie a claim of faulty drywall in Mr. Ciaramitaro's Florida property with the State of North Carolina so as to make the statute applicable.   Likewise,

Plaintiffs allege no trade or commerce in North Carolina in which KPT may have partaken and that led to a conspiracy in restraint of trade or commerce. To bring a cause of action under Section 75-1, plaintiffs must establish a sufficient "nexus" between the claim and the State of North Carolina. *Market Am.*, 1999 U.S. Dist. LEXIS 9793, at *57. "Under North Carolina law, in order for … § 75-1 to apply, North Carolina must have a substantial relationship to the particular conduct giving rise to the unfair and deceptive trade practices claim." *Id*. In *Market America*, the court applied the "significant relationship" test to determine whether the cause of action had sufficient nexus with North Carolina and concluded it did because (1) "the agreement [was] issued from North Carolina," (2) the alleged deceptive conduct "occurred in North Carolina," and (3) the defendants, with whom the plaintiffs directly did business, "were headquartered in North Carolina." *Id*.

No such nexus whatsoever is alleged here. Plaintiffs cannot point to an agreement executed in North Carolina, nor is there any basis from which the Court could reasonably infer that KPT engaged in any deceptive conduct in North Carolina. Indeed, a contrary conclusion is reasonable, given the location of the North Carolina Plaintiff's property in Florida – namely, that any drywall used in Mr. Ciaramitaro's Florida home was purchased in Florida. Nor is KPT alleged to have any "headquarters" or, indeed, any business presence whatsoever in North Carolina. Simply put, Plaintiffs allege no facts from which the Court could reasonably infer that the drywall used in Ciaramitaro's Florida home, or the transaction in which that drywall was acquired, or the locus of KPT's business activities, bears any relationship to North Carolina. Rather, Plaintiffs appear to rest their claim solely on the happenstance of Mr. Ciaramitaro's current residence in North Carolina. (Compl. at ¶ 422). A single Plaintiff's allegation of current residency in North Carolina cannot constitute a sufficient "nexus" with that state to justify

bringing a claim under the NCCPA.  *See Market Am.*, U.S. Dist. LEXIS 9793 at *57;  *Jacobs*, 891 F. Supp. 1088 at 1111.

Given the lack of alleged content of any "misrepresentations" by KPT, the claim bears no resemblance to the type of injury the North Carolina statute was designed to prevent.  (Compl. at ¶ 2755).  Importantly, "[a] simple breach of contract, even if intentional, does not amount to a violation of [N.C. GEN. STAT. § 75-1.1]; a plaintiff must show **substantial aggravating circumstances** attending the breach to recover under the Act … ."  *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. (N.C.) 1989) (emphasis added).  Here, Plaintiffs do not even attempt to make such a showing.  (*See* Compl. at ¶ 422).

For these reasons, Plaintiffs fail to state a claim under the NCCPA, and this Court should dismiss the claim with respect to KPT.

> **8.    Plaintiffs Fail To State A Claim Under the Virginia Consumer Protection Act Because They Fail To Show A Nexus Between The Purported Claim And The Commonwealth Of Virginia (Count XIV).**

In purporting to bring a claim under the VCPA, VA. CODE ANN. §§ 59.1-196 *et seq.*, Plaintiffs once again invoke legislation of a state in which **none** of them is alleged to own property.  (Compl. at ¶¶ 2754; 5-2072).  The VCPA claim fails as a matter of law.

As a matter of Virginia law, the sale of drywall for the use in homes is not the type of "consumer transaction" contemplated by the VCPA, and thus any individual claim against KPT with respect to the allegedly defective drywall are likewise barred.  *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 27 Va. Cir. 62, 63-64 (Va. Cir. Ct. 1992) (barring claim involving purchase of fire-resistant treated plywood ("FRTP") because it was merely a building material used in homes).  In *Winchester Homes*, the appellate court upheld the lower court's finding that "sales of FRTP between the Defendants and [the home builder] were not consumer transactions as contemplated by the Act":

> The Defendants' commercial transactions with Winchester do not
> fall within the ambit of the Act's restrictions on consumer
> transactions. Specifically, as sold by the Defendants, the **FRTP
> was to be used as component parts in the construction of homes
> and not "primarily for personal, family or household purposes"**
> as envisioned by the Act.

27 Va. Cir. at 63-64 (citing Va. Code Ann. § 59.1-198(A)(i) (1987 & Supp. 1991)) (emphasis added).

Like the FRTP used to construct the homes in *Winchester Homes*, the allegedly defective drywall here "was to be used as component parts in the construction of homes and not 'primarily for personal, family or household purposes'" and thus the sale is not a consumer transaction of the type contemplated by the VCPA. *See Winchester Homes*, 27 Va. Cir. at 63-64 (citing Va. Code Ann. § 59.1-198(A)(i) (1987 & Supp. 1991)). Furthermore, there is no allegation that the few Plaintiffs who are "residents" of Virginia (but whose allegedly affected property is, like that of the other Plaintiffs, located elsewhere) directly purchased any drywall or other product from KPT, such that there is no "consumer transaction" of any kind. (Compl. at ¶¶ 250, 950, 1224, 1238, 1285, 1327, 2030) (listing individual residents of Virginia, none of whom is alleged to own property in Virginia containing defective drywall)). Rather, the drywall at issue was allegedly purchased and installed by individuals or entities other than Plaintiffs. (Compl. at ¶ 2076 ("Knauf Gips and/or Knauf Tianjin manufactured and *sold, directly and indirectly, to certain suppliers* in the United States") (emphasis added)).[20]

Plaintiffs additionally cannot show any nexus to Virginia that would justify invoking the VCPA. Plaintiffs fail to allege that any consumer transaction occurred in Virginia, and the Court

---

[20] Furthermore, the *Winchester Homes* court concluded that actions for misrepresentation under the Act constitute a "personal cause of action which the homeowners could not assign" to the home builder. 27 Va. Cir. at 64. Thus, there is no basis for a claim against KPT by any Plaintiff (or third party) under the VCPA.

has no reasonable basis to infer that such a transaction occurred given that the Virginia-resident Plaintiffs are alleged to own property in other states.  Nor is KPT alleged to have any presence whatsoever in the Commonwealth of Virginia.

For these reasons, the Court should dismiss the VCPA claim against KPT.

### H.     Plaintiffs Fail To State A Claim For Equitable And Injunctive Relief And Medical Monitoring (Count XV).

The Complaint fails to allege with any specificity any *present* injury allegedly suffered by Plaintiffs that would justify medical monitoring or any other form of injunctive relief and claim only to have been "exposed" to harmful substances.  (Compl. at ¶¶ 2763-2766).  Such conclusory allegations fall far short of meeting the federal pleading standard.  The requests for other injunctive relief likewise fail, as they are thinly disguised requests for monetary damages and as Plaintiffs have failed to alleged that they will suffer irreparable injury if the equitable relief is not granted.  For these reasons, Count XV should be dismissed with respect to KPT.

#### 1.     Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring, under Alabama law.

The medical monitoring claim fails under Alabama law.  Alabama courts do not recognize a cause of action for medical monitoring:

> To recognize medical monitoring as a distinct cause of action, under the confines presented by this certified question, would require this Court to completely rewrite Alabama's tort-law system, a task akin to traveling in uncharted waters, without the benefit of a seasoned guide. We are unprepared to embark upon such a voyage.

*Hinton v. Monsanto County*, 813 So. 827, 829 (Ala. 2001); *Houston*, 961 So. 2d 795, 811 (Ala. 2006).  Therefore, the medical monitoring claim fails under Alabama law.

The present claim for injunctive relief is similarly fatally flawed.  To establish a claim for injunctive relief under Alabama law, a plaintiff must allege: (1) success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) that the threatened

injury to the plaintiff outweighs the harm the injunction may cause the defendant, and (4) that granting the injunction will not disserve the public interest. *Kappa Sigma Fraternity v. Price-Williams*, 2009 Ala. LEXIS 294, at *32 (Ala. Dec. 19, 2009). Further, it is axiomatic that "[u]nder the ordinary convention, the proper inquiry would be whether monetary damages provided an adequate remedy, and if not, whether equitable relief would be appropriate." *Franklin v. Gwinnett County Public Sch.*, 503 U.S. 60, 76 (1991).

At least one of Plaintiffs' categories of "equitable relief, *i.e.*, the demand that defendants "buy back … the contracts for Plaintiffs' and Class Members' homes for other structures, or in the alternative, remediate, repair and/or replace the drywall,"[21] is a poorly disguised claim for monetary relief. As such, it is subject to dismissal as an improper request for equitable relief. As for the remaining equitable relief, the allegation that Plaintiffs have no adequate remedy at law but for that equitable relief is without merit. (Compl. at ¶ 2759). Plaintiffs' request for damages pursuant to its tort claims for negligence and strict liability are indisputable indications that it has an adequate remedy at law.

The remaining claims are equally flawed for the reason that the Plaintiffs have not properly alleged that they will suffer irreparable injury if the equitable relief is not granted. As set forth above, allegations that amount to nothing more than "naked assertions devoid of further factual enhancement" are insufficient and subject to dismissal under Rule 12(b)(6). *Iqbal*, 129 S. Ct. at 1949. Like its claim for medical monitoring, the Plaintiffs merely allege that they "will suffer irreparable harm" if the Court does not grant their requested equitable relief. The recitation of irreparable harm is no substitute for supporting factual allegations. Further, absent from Count XV are any of the required allegations that the "threatened injury to the plaintiff

---

[21] Plaintiffs contend that KPT must either buy back or "rescind" the contracts for their respective homes. KPT cannot rescind a contract to which it is not a party, rendering such legal relief impossible.

outweighs the harm the injunction may cause the defendant." *Kappa Sigma Fraternity v. Price-Williams*, 2009 Ala. LEXIS 294, at *32.

>     **2.     Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring, under Florida law.**

Plaintiffs fail to state a claim for medical monitoring as a form of equitable relief.  To survive a motion to dismiss under Florida law, a count for medical monitoring must, at the very minimum, allege that the plaintiffs have been exposed to contaminants through the negligence of the defendants and allege that those exposures have increased the risk of contracting serious latent diseases for which means of early detection are available.  *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106 (Fla. Ct. App. 1999).  In particular, the Complaint must allege seven basic elements: (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.  *Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 640 (Fla. Ct. App. 2006).

In addition to pleading these seven *Petito* elements, Plaintiff must provide factual allegations that link Plaintiffs' exposures to the Defendant's conduct, thereby providing the Defendant with sufficient notice of how Plaintiff was exposed to the allegedly hazardous substances.  *Jacobs v. Osmose*, No. 01-944-CIV, 2002 U.S. Dist. LEXIS 1926, *10 (S.D. Fla. 2002) (dismissing plaintiff's medical monitoring claim on the grounds that plaintiff's allegation that his deck was made of treated wood purchased at one of the retail defendants was conclusory and did not identify how the plaintiff was exposed to the allegedly hazardous substances).

Count XV of the Complaint fails to provide the requisite factual allegations that link the *Petito* elements to the Defendants' conduct. *Jacobs*, 2002 U.S. Dist. LEXIS at *10. Unable to articulate specific facts tending to support a need for medical monitoring, as required by *Twombly/Iqbal*, Plaintiffs simply recite these legal elements. *Iqbal*, 129 S. Ct. at 1949; *Petito*, 750 So. 2d at 106-107. Indeed, the Complaint nowhere alleges whether any procedure exists to permit early detection, or any fact to show that any scientific principle necessitates the proposed procedures – let alone identifies the monitoring procedure Plaintiffs seek to have ordered. Once again, Florida law and the Federal Rules of Civil Procedure require more. *See Hoyte v. Stauffer Chem. Co.*, No. 98-3024-CI-7, 2002 WL 31892830, at *51 (Fla. Cir. Ct. Nov. 6, 2002) ("Under *Petito*, medical monitoring is not just a form of relief, it is a separate cause of action with seven specific elements the plaintiffs must establish in order to prevail at trial, including three that expressly require proof of a monitoring program that meets particular standards.").

For instance, the Complaint never identifies any type of "serious latent disease" the Plaintiffs have an increased risk of contracting as a result of their alleged exposure, as the fourth *Petito* element requires. *Petito*, 750 So. 2d at 106-07; (Compl. at ¶ 2766). Nor does the Complaint identify any type of monitoring program that would be required to monitor the Plaintiffs' health, as required under the fifth, sixth, and seventh elements of *Petito*. (*Id.* at ¶ 2767). Plaintiffs allege not one symptom that could be associated with any long-term health consequences. The incomplete and conclusory allegations, to the extent they even exist, are not sufficient to support a medical monitoring claim. *See Jacobs*, 2002 U.S. Dist. LEXIS at *10. At a minimum, Plaintiffs have improperly pleaded elements (4), (5), (6), and (7) of the *Petito* test, thus warranting dismissal under Florida law.

Plaintiffs' repeated use the word "exposure" and its cognates does not salvage their claim. (*See* Compl. at ¶¶ 2763-2766). A claim for medical monitoring does not exist for any and every exposure. *See Hoyte*, 2002 WL 31892830, at *50; *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003); *cf. Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001) (allegation of "exposure" in support of medical monitoring claim was too vague). Instead, a complaint must allege facts to show that plaintiffs "absorbed a toxicologically sufficient dose to be at a significantly increased risk." *Hoyte*, 2002 WL 31892830, at *50.

In the end, Plaintiffs' claims concerning exposure are at best "merely consistent with the material elements" of a medical monitoring claim – even if such a cause of action exists – and fail to "plausibly suggest the elements" in the way that *the federal pleading standard* requires. *Iqbal*, 129 S. Ct. at 1949. Plaintiffs' medical monitoring claim therefore fails under Florida law.

Plaintiffs' claims for equitable relief are also fatally flawed for the reason that Plaintiffs' alleged loss can be compensated for by a monetary award. Irreparable harm and lack of an adequate remedy at law are both prerequisites to injunctive relief. For injunctive relief purposes, irreparable harm is not established where the potential loss can be adequately compensated for by a monetary award. *Franceschini v. Allstate Floridian Ins. Co.*, 6:06-CV-1283-ORL-31JGG, 2007 U.S. Dist. LEXIS 13268, at *5 (M.D. Fla. Feb. 27, 2007). Plaintiffs' ability to obtain monetary relief is evidenced by their claims for negligence (Count I) and strict liability (Count III), both of which seek monetary damages for the removal and replacement of allegedly defective drywall and attendant repair of Plaintiffs' homes. (Compl. at ¶¶ 2619-2620, 2647, 2672).

For the same reason, Plaintiffs have failed to allege any specific irreparable harm or any facts that would enable this Court to determined that their injuries will, in fact, be irreparable:

"A complainant alleging irreparable injury must state facts which will enable the court to judge whether the injury will in fact be irreparable. Mere general allegations of irreparable injury will not suffice." *Waters v. School Bd. of Broward County*, 401 So. 2d 997, 998 (Fla. App. Ct. 1986). Here, Plaintiffs simply allege that they "will suffer irreparable harm." (Compl. at ¶ 2760). Even if Plaintiffs were able to overcome the initial hurdle of showing an inadequate remedy at law, such conclusory allegations do not meet the standard required by Florida courts.

Finally, Plaintiffs do not, and cannot, allege that they have a "clear legal right" to the equitable relief requested. *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1105 (S.D. Fla. 2000) (setting forth elements necessary to sustain claim for injunctive relief). As part of its equitable relief, Plaintiffs seek a public awareness campaign and that KPT "cease and desist" from alleged misrepresentations regarding its drywall. (Compl. at ¶ 2761). Plaintiffs do not have a "clear legal right" to either of these "remedies" and, as such, cannot properly seek equitable or injunctive relief on those grounds. *Special Purpose Accounts*, 125 F. Supp. 2d at 1105.

### 3. Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring, under Louisiana law.

To the extent Louisiana law applies to the Plaintiffs' claims, the Louisiana Plaintiffs cannot sustain a claim for medical monitoring for future injury as a matter of law. Plaintiffs must allege "actual" injuries to succeed on a medical monitoring claim. *Hillard v. U.S.*, 06-02576, 2007 U.S. Dist. LEXIS 13610, at *15-16 (E.D. La. Feb. 28, 2007). Ambiguous references to injury and potential health problems are not sufficient to justify the judicial resources that underlie a successful claim for medical monitoring.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

> recitation of the elements of a cause of action will not do. Factual allegations must
> be enough to raise a right to relief above the speculative level

*Twombly*, 550 U.S. at 555-56, (internal citations and quotations omitted); *See* 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.").

The Complaint fails to allege with any specificity any ***present*** injury allegedly suffered by the Louisiana Plaintiffs.  Instead, the Complaint merely alleges that "Plaintiffs and Class Members…have suffered personal injuries" as a result of alleged exposure to sulfides and "other hazardous chemicals."  (Compl. at ¶ 2763).  Nor have Plaintiffs even attempted to state what potential health consequences may require "medical monitoring."  The only allegations that speak to such health consequences are impermissibly vague: "Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment."  (*Id.* at ¶ 2766).  Plaintiffs must allege "actual" injuries to succeed on a medical monitoring claim.  *Hillard v. U.S.*, 06-02576, 2007 U.S. Dist. LEXIS 13610, at *15-16 (E.D. La. Feb. 28, 2007).

Furthermore, Louisiana law requires that a party alleging a claim for medical monitoring aver a nexus between the treatment and the claimed injury:

> Damages do not include costs for future medical treatment, surveillance, or procedures of any kind unless such treatment services, surveillance, or procedures are directly related to manifest physical or mental injury or disease.

LA. CIV. CODE ANN. art. 2315 (1998).  This statute has been interpreted by Louisiana courts as warranting dismissal when, as here, "the plaintiffs' complaint refers to possible future injuries or any future increased risk of injuries not yet manifested."  *Hillard*, 2007 U.S. Dist. LEXIS 13610, at *16.

74

Louisiana courts are also hesitant to proceed with medical monitoring of a class when the plaintiffs "lack a ***single common*** injury" and the levels of exposure to the alleged hazardous substance may vary significantly. *In re FEMA*, 2008 U.S. Dist. LEXIS 107688, at *64 (emphasis in original). Plaintiffs' claims concerning exposure are at best "merely consistent with the material elements" of a medical monitoring claim – even if such a cause of action exists – and fail to "plausibly suggest the elements" in the way that *Twombly* and Louisiana jurisprudence requires. Plaintiffs' medical monitoring claim therefore should be dismissed.

The Louisiana Plaintiffs' claim for equitable relief must be dismissed as a matter of law. Under Article 4 of the Louisiana Civil Code, resorts to equity are barred unless "no rule" governs the case that "can be derived from legislation or custom." *Scott v. American Tobacco Co.*, 949 So. 2d 1266, 1275 (La. Ct. App. 2007). Plaintiffs have alleged claims under recognized tort theories, the LPLA and Article 2315 of the Louisiana Civil Code. Because these laws constitute "express law," they preclude plaintiffs' attempt to create new forms of liability in equity. *Id.*

### 4. Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring under Mississippi law.

The medical monitoring claim against KPT also fails under Mississippi law. Mississippi courts do not recognize a cause of action for medical monitoring. "[C]reating a medical monitoring action would be contrary to Mississippi common law, which does not allow recovery for negligence without showing an identifiable injury." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 386 (5th Cir. 2009) (quoting *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 3 (Miss. 2007)). Therefore, the claim for medical monitoring fails under Mississippi law.

The claim for injunctive relief under Mississippi law is similarly fatally flawed. To establish a claim for injunctive relief, a plaintiff must allege: (1) an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Sivori v. Epps*, 4:09-cv-434-TCM, 2009 U.S. Dist. LEXIS 24231, at *30 (S.D. Miss. Mar. 24, 2009). Further, it is axiomatic that, as a general proposition, equitable relief … is unavailable to a party who has an adequate remedy at law. *Wilson v. Scruggs*, 371 F. Supp. 2d 837, 842 (S.D. Miss. 2005).

At least one of Plaintiffs' categories of "equitable relief," the demand that defendants "buy back … the contracts for Plaintiffs' and Class Members' homes for other structures, or in the alternative, remediate, repair and/or replace the drywall," is a poorly disguised claim for monetary relief. As such, it is subject to dismissal as an improper request for equitable relief. As for the remaining equitable relief, the allegation that Plaintiffs have no adequate remedy at law but for that equitable relief is without merit. (Compl. at ¶ 2759). Plaintiffs' request for damages pursuant to its tort claims for negligence and strict liability are indisputable indications that it has an adequate remedy at law.

The remaining claims are equally flawed for the reason that the Plaintiffs have not properly alleged that they will suffer irreparable injury if the equitable relief is not granted. As set forth above, allegations that amount to nothing more than "naked assertions devoid of further factual enhancement" are insufficient and subject to dismissal under Rule 12(b)(6). *Iqbal*, 129 S. Ct. at 1949. As in their claim for medical monitoring, Plaintiffs merely allege that they "will suffer irreparable harm" if the Court does not grant their requested equitable relief. The recitation of irreparable harm is no substitute for supporting factual allegations. Further, absent from Count XV are any of the required allegations that "considering the balance of hardships

between the plaintiff and defendant, a remedy in equity is warranted." *Sivori*, 2009 U.S. Dist. 24231, at *30.

5.     **Plaintiffs fail to state a claim for equitable relief, including Medical Monitoring, under Texas law.**

Texas courts have not recognized a medical monitoring as a valid cause of action; furthermore, a federal district court in Texas has predicted that, if faced with the issue, the Texas Supreme Court would not do so. *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 664-68 (W.D. Tex. 2006) ("The Court's conclusion not to recognize medical monitoring as a cause of action is bolstered by its determination that doing so would constitute an improper substantive innovation of state law.  In fact, it appears that the Fifth Circuit has never expanded state law by recognizing a completely new cause of action.") (internal quotations and citations omitted).  For this reason, to the extent Texas law applies to Plaintiffs, the medical monitoring claims in Count XV must be dismissed.

The claims for equitable relief also fail under Texas law, given that Plaintiffs fail to set forth a legally cognizable claim and are inadequately pleaded.  "It is a basic premise of equity that one does not resort to it when law provides an adequate remedy." *In re Jones*, 77 B.R. 541, 550 (N.D. Tex. 1987).  At least one of Plaintiffs' categories of "equitable relief," the demand that defendants "buy back…the contracts for Plaintiffs' and Class Members' homes for other structures, or in the alternative, remediate, repair and/or replace the drywall…" is a poorly disguised claim for monetary relief.  As such, it is subject to dismissal as an improper request for equitable relief.  As for the remaining equitable relief, the allegation that Plaintiffs have no adequate remedy at law but for that equitable relief is without merit.  (Compl. at ¶ 2759). Plaintiffs' request for damages pursuant to its tort claims for negligence and strict liability are clear indications that it has an adequate remedy at law.

The remaining claims are equally flawed for the reason that Plaintiffs have not properly alleged that they will suffer irreparable injury if the equitable relief is not granted. Texas jurisprudence requires that a party seeking injunctive relief allege: (1) irreparable injury; (2) inadequacy of legal remedies (*i.e.*, monetary damages), (3) hardship, and (4) no disservice to the public interest. *Transocean Offshore Deepwater Drilling, Inc. v. Global Santa Fe Corp.*, H-03-2910, 2006 U.S. Dist. LEXIS 93408, at *9 (S.D. Tex. Dec. 26, 2006); *Bostow v. Bank of Am.*, No. 14-04-00256, 2006 Tex. App. LEXIS 377, at *14 (Tex. Ct. App. Jan. 17, 2006). The Complaint merely recites these elements and fails to provide any factual allegations to support those "bare-bones" legal elements. *See Iqbal*, 129 S. Ct. at 1949.

As in the case of the claim for medical monitoring, Plaintiffs merely allege that they "will suffer irreparable harm" if the Court does not grant their requested equitable relief. The recitation of irreparable harm is no substitute for supporting factual allegations. Further, absent from Count XV are any of the required allegations that "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted." *Transocean*, 2006 U.S. Dist. LEXIS 93408, at *9; *Bostow*, 2006 Tex. App. LEXIS 377, at *14.

## IV.   CONCLUSION

For the foregoing reasons, Knauf Plasterboard (Tianjin) Co., Ltd., respectfully requests that this Court grant its Motion to Dismiss Count II (Negligence Per Se), Count IV (Breach of Express and/or Implied Warranties), Count XI (Private Nuisance), Count XII   (Negligent Discharge of a Corrosive Substance), Count XIII (Unjust Enrichment), Count XIV (Violation of Consumer Protection Acts), and Count XV (Equitable and Injunctive Relief and Medical Monitoring) with respect to all Plaintiffs, as well as Counts I (Negligence) and III (Strict Liability) with respect to all "Louisiana Plaintiffs" and other Plaintiffs to whom Louisiana law applies, of the Omnibus Complaint for failure to state a claim upon which relief can be granted.

Dated: April 21, 2010

Respectfully submitted,

/s/ Douglas B. Sanders

Douglas B. Sanders
Richard Franklin
BAKER & MCKENZIE LLP
130 E. Randolph Dr.
Chicago, IL 60601
Telephone: (312) 861-8075
Facsimile:  (312) 698-2375
Email: douglas.b.sanders@bakernet.com

Donald J. Hayden
BAKER & MCKENZIE LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8966
Facsimile:  (305) 789-8953
E-mail: Donald.hayden@bakernet.com

Kerry Miller (LA Bar No. 24562)
Kyle A. Spaulding (LA Bar No. 29000)
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone:  (504) 599-8194
Facsimile:  (504) 599-8145
Email: kmiller@frilot.com

*Attorneys for Defendants, Knauf
Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 2047, on this 21st day of April, 2010.

s/Douglas B. Sanders

CHIDMS1/2780399.12