


Apr 22 2010
4:39PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

**CHINESE DRYWALL DIVISION**
CASE NO.: 09-200,000 (42)

IN RE: CHINESE DRYWALL LITIGATION

THIS DOCUMENT RELATES TO ALL CASES

_____/

JASON HARRELL and MELISSA HARRELL, individually and on behalf of their minor children and on behalf of all others similarly situated,

  Plaintiffs,

vs.            CASE NO.: 09-08401 CA (42)

SOUTH KENDALL CONSTRUCTION CORP., a Florida corporation; PALM ISLES HOLDINGS, LLC, a Florida limited liability company; KEYS GATE REALTY, INC., a Florida corporation; and BANNER SUPPLY CO., a Florida corporation,

  Defendants.

_____/

**PLAINTIFFS' NOTICE OF TAKING VIDEOTAPED DEPOSITION DUCES TECUM**

  PLEASE TAKE NOTICE that, pursuant to rule 1.310(b)(6), Florida Rules of Civil Procedure, Plaintiffs will take the deposition of

**DEPONENT:**   Scott Giering, as an individual and as the corporate representative of Defendant Banner Supply Co. who is most knowledgeable of the subject matters set forth in Exhibit "A" attached hereto.

**DATE & TIME:**   May 6, 2010 beginning at 10:00 AM

**PLACE:**   Adorno & Yoss
2525 Ponce de Leon, Suite 400
Coral Gables, FL 33134

**CALL-IN INFORMATION:**      **DIAL IN: 888-337-8218**
                                                 **PASSCODE: 769758**

upon oral examination. The deposition will be videotaped in accordance with rule 1.310(b)(4), Florida Rules of Civil Procedure, by Video Court Reporting, Inc. or another person authorized by to record depositions and will be recorded stenographically by Linda Golkow or another officer authorized to record depositions. Pursuant to rule 1.310(b)(6), the deponent shall designate one or more officers, directors, or managing agents, or other persons who consent to do so, to testify on its behalf and may state the matters on which each person designated will testify. The persons so designated shall testify about matters known or reasonably available to the organization. The matters on which examination is requested are those listed in **Exhibit "A"** attached hereto.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was served on **Robert Fitzsimmons, Esq., Defendants' Liaison Counsel,** and upon all parties by electronically uploading the same to Lexis Nexis File & Serve, which will send a notice of electronic filing to all interested parties, and that the foregoing was filed with the Miami-Dade Clerk of Court by paper on this _____ day of April, 2010.

HIGER LICHTER & GIVNER, LLP
Bank of America Building
18305 Biscayne Blvd., Suite 402
Aventura, Florida 33160
Tel: (305) 933-9970
Fax: (305) 933-0998
David H. Lichter, Esq
Florida Bar No. 359122
dlichter@hlglawyers.com
J. Joseph Givner, Esq.
Florida Bar No.850705
jgivner@hlglawyers.com

*Counsel for Plaintiffs*

THE BLUMSTEIN LAW FIRM
One Turnberry Place, Suite 400
19495 Biscayne Boulevard
Aventura, Florida 33180
Tel: (305) 356-7547
Fax: (305) 356-7539
Mark Blumstein, Esq.
Florida Bar No. 0090700
Mark@BlumsteinLaw.com

*Counsel for Plaintiffs*

PODHURST ORSECK, P.A.
25 W. Flagler Street, Suite 800
Miami, Florida 33130
Tel: (305) 358-2800
Fax: (305) 358-2382

By: _____
Victor M. Diaz, Jr., Esq.
Florida Bar No. 503800
vdiaz@podhurst.com

*Counsel for Plaintiffs*

## EXHIBIT A – MATTERS ON WHICH EXAMINATION IS REQUESTED

1. Your relationship with the third party defendant ATCO Int. Corp., including but not limited to contracts, agreements, letters, correspondence, emails, and any other business document of any kind of label.

2. Your relationship with the third party defendant La Suprema Enterprise, Inc., including but not limited to contracts, agreements, letters, correspondence, emails, and any other business document of any kind of label.

3. Your relationship with the third party defendant La Suprema Trading, Inc., including but not limited to contracts, agreements, letters, correspondence, emails, and any other business document of any kind of label.

4. All records or documents in your possession, custody or control that in any way relate to your relationship or dealings with ATCO Int. Corp.

5. All records or documents in your possession, custody or control that in any way relate to your relationship or dealings with La Suprema Trading, Inc.

6. All records or documents in your possession, custody or control that in any way relate to your relationship or dealings with La Suprema Enterprise, Inc.

7. All records or documents in your possession that in any way relate to any drywall that ATCO Int. Corp. purchased from you from January 1, 2001 through the present.

8. All records or documents in your possession that in any way relate to any drywall that you purchased from La Suprema Trading, Inc. from January 1, 2001 through the present.

9. All records or documents in your possession that in any way relate to any drywall that you purchased from La Suprema Enterprise, Inc. from January 1, 2001 through the present.

10. Your relationship with South Kendall Construction Corp., including but not limited to contracts, agreements, letters, correspondence, emails, and any other business document of any kind or label.

11. Your relationship with Palm Isles Holdings, LLC, including but not limited to contracts, agreements, letters, correspondence, emails, and any other business document of any kind or label.

12. Your relationship with Keys Gate Realty, Inc., including but not limited to contracts, agreements, letters, correspondence, emails, and any other business document of any kind or label.

13. The process you generally undertake, as a matter of general business practice, to select a manufacturer or importer of drywall from which to purchase drywall that you later sell or distribute to general contractors, developers, builders, installers or subcontractors for use and installation in homes.

14. The process you followed to select a manufacturer or importer of drywall from which to purchase drywall that you later sold or distributed and/or caused to be installed in the Plaintiffs' home at 1926 SE 23 Court, Homestead, FL 33035.

15. All records in your possession, custody or control that in any way relate to or reflect Chinese-manufactured drywall.

16. The full extent of your knowledge concerning Chinese drywall or Chinese-manufactured drywall or suspected Chinese-manufactured drywall sold, supplied, or distributed by you that was installed in any home between 2001 and the present.

17. Any and all contracts between you and Keys Gate Realty, Inc. pursuant to which you were to sell, supply or distribute drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

18. Any and all contracts between you and South Kendall Construction Corp. pursuant to which you were to sell, supply or distribute drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

19. Any and all contracts between you and Palm Isles Holdings, LLC pursuant to which you were to sell, supply or distribute drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

20. Any and all contracts between you and ATCO Int. Corp., from January 1, 2001 through the present, pursuant to which you were to sell, supply or distribute drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

21. Any and all contracts between you and La Suprema Enterprise, Inc., from January 1, 2001 through the present, pursuant to which you were to purchase drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

22. Any and all contracts between you and La Suprema Trading, Inc., from January 1, 2001 through the present, pursuant to which you were to purchase drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

23. Any and all correspondence between you and Keys Gate Realty, Inc. concerning your agreement to sell, supply, or distribute drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

24. Any and all correspondence between you and South Kendall Construction Corp. concerning your agreement to sell, supply, or distribute drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

25. Any and all correspondence between you and Palm Isles Holdings, LLC concerning your agreement to sell, supply, or distribute drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

26. Any and all correspondence between you and ATCO Int. Corp. concerning your agreement to sell, supply, or distribute drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

27. Any and all correspondence between you and La Suprema Trading, Inc. concerning your agreement to purchase drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

28. Any and all correspondence between you and La Suprema Enterprise, Inc. concerning your agreement to purchase drywall that was to be installed in any homes constructed or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

29. Any and all correspondence concerning your agreement to sell, supply, or distribute drywall, to any person or entity, including but not limited to ATCO Int. Corp., concerning drywall that was to be installed in any home in the Palm Isles, Augusta Greens or Arbor Park communities.

30. Any and all contracts, correspondence, or other documents concerning your agreement to purchase, from La Suprema Enterprise, Inc., drywall that was to be installed in any home in the Palm Isles, Augusta Greens or Arbor Park communities.

31. Any and all contracts, correspondence, or other documents concerning your agreement to purchase, from La Suprema Trading, Inc., drywall that was to be installed in any home in the Palm Isles, Augusta Greens or Arbor Park communities.

32. Any and all contracts, correspondence, or other documents concerning your agreement to purchase, from any entity, drywall that was to be installed in any home in the Palm Isles, Augusta Greens or Arbor Park communities.

33. Any and all notes, memoranda, field notes, photographs, videotapes, or samples concerning any Chinese-manufactured drywall you sold, supplied or distributed that was installed at the direction of or pursuant to a contract with Keys Gate Realty, Inc.; South Kendall Construction Corp.; Palm Isles Holdings, LLC; ATCO Int. Corp.; La Suprema Enterprise, Inc.; and/or La Suprema Trading, Inc.

34. Any and all notes, memoranda, field notes, photographs, videotapes, or samples concerning any drywall you sold, supplied or distributed that was installed in the Palm Isles, Augusta Greens or Arbor Park communities.

35. Any and all documents concerning any drywall you sold, supplied or distributed that was installed in any home built or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc. nationwide.

36. Any and all written notices concerning any alleged problem or issue relating to alleged "Chinese drywall" in any homes regarding for which you supplied the drywall that was installed.

37. Any and all documents related to any averment in any pleading filed by you in this action.

38. Any and all documents that are "distribution records" or records showing in which properties (by address) for which you sold, supplied or distributed Chinese-manufactured drywall that was installed or caused to be installed in homes built or sold by South Kendall Construction Corp.; Palm Isles Holdings, LLC; and/or Keys Gate Realty, Inc.

39. Any and all documents that are "purchase records" or records showing from whom, when, where, and how you purchased the Chinese-manufactured drywall you sold, supplied or distributed that was then installed in the Plaintiffs' home.

40. Any and all policies, procedures, documents, memoranda, or other information internal to you that in any way relates to quality control or testing of the product you use or sell, supply or distribute to your customers.

41. Any and all policies, procedures, documents, memoranda, or other information internal to you that in any way relates to quality control or testing of the product you supplied for use in the Plaintiffs' home.

42. Any and all documents or policies in any way relating to how you obtain the information regarding or keep track of the specifications or quality evaluations from the manufacturer concerning the drywall that you sell, supply or distribute for use in homes.

43. Any and all information you have concerning the product you sold, supplied or distributed for use in the Plaintiffs' home in the instant action, that in any way relates to product specifications or quality evaluations from the manufacturer of the drywall.

44. Any and all matters at issue as set forth in any pleading filed in this action.

45. Your position in these consolidated actions as to whether the drywall you sold, supplied or distributed for installation in the Plaintiffs' home was and is defective or unreasonably dangerous.

46. Your position in these consolidated actions as to whether the drywall you procured for supply in construction in the State of Florida was and is defective because it contains and emits toxins, including sulphur and sulphur compounds such as carbon disulfide, carbonyl sulfide and hydrogen sulfide, which damage homes, fixtures attached thereto, and personal property contained therein, in many ways, including, but not limited to: (a) eroding, corroding and/or tarnishing various metals within residences, including plumbing and interior electrical wiring; (b) disrupting and/or interfering with the operation of electric and electronic equipment and appliances within said residences, including but not limited to microwaves, computers, air conditioning and refrigerator coils; and (c) creating a noxious rotten egg-like odor that renders the homes uninhabitable.

47. Your position in these consolidated actions as to whether the alleged defect exists and, if so, whether the defect can or should be repaired or remediated.

48. Your position in this action as to whether Plaintiffs have actually sustained damage to their homes, fixtures attached thereto, and personal property contained therein as a direct result of the sulphuric toxins emitted by defective drywall sold, supplied or distributed by you.

49. Your position in this action as to whether the homes of Plaintiffs and members of the putative class in which defective drywall has been installed are in need of remediation.

50. Your position in this action as to the specifics of what would constitute a remediation protocol that would acceptably remedy all problems caused by the defective Chinese-manufactured drywall.

51. Your position in this action as to whether the home sold to Plaintiffs is habitable or fit for its intended purpose.

52. As to any entity with which you are affiliated that is involved in the ordering, purchase, use, sale, or distribution of Chinese drywall, the responsibilities that each such entity has in regard to Chinese drywall.

53. The steps taken by or on behalf of you to preserve documents that are or may be potentially discoverable in this action.

54. Your knowledge regarding any affirmative defenses or demands included in any responsive pleading filed by any party in these consolidated proceedings.