IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

**IN RE: CHINESE MANUFACTURED DRYWALL**
**PRODUCTS LIABILITY LITIGATION**

MDL NO. 2047
SECTION: L

**THIS DOCUMENT RELATES TO:**
**09-cv-6690 (GROSS)**

JUDGE FALLON
MAG. JUDGE WILKINSON

DAVID GROSS, CHERYL GROSS, AND LOUIS
VELEZ, individually, and on behalf of all others
similarly situated,

    Plaintiffs,

        v.

KNAUF GIPS KG, KNAUF PLASTERBOARD
(TIANJIN) CO., LTD., KNAUF PLASTERBOARD
(WUHU) CO., LTD., KNAUF PLASTERBOARD
(DONGGUAN) CO. LTD., KNAUF INSULATION
GmbH a/k/a KNAUF USA, *et al.*

    Defendants.

**DEFENDANT KNAUF PLASTERBOARD (TIANJIN) CO. LTD.'S, KNAUF**
**INSULATION GmbH a/k/a KNAUF USA'S, AND KNAUF GIPS KG'S**
**MEMORANDUM IN SUPPORT OF THEIR**
**JOINT MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 2

    A.   Plaintiffs Fail To State A Claim On Which Relief Can Be Granted, As Their Claims Fall Far Short Of Stating A Claim That Is Plausible On Its Face.................................................................................................................. 2

II.  ARGUMENT...................................................................................................... 4

    A.   Plaintiffs' Complaint Must Be Dismissed As To The Moving Defendants Because Claims Based On Market Share Liability Are Not Viable And Not Applicable To The Moving Defendants ........................................... 4

        1.   The Gross Complaint Must Be Dismissed Because Market Share Liability Is Not A Viable Claim Or Theory Of Recovery In Louisiana, Mississippi, Alabama and Florida (All Counts)..................... 5

            a.   Market share liability claims are not recognized under Louisiana law ............................................................................. 6

            b.   Market share liability claims are not recognized under Alabama law ............................................................................. 6

            c.   Market share liability claims are not recognized under Mississippi law............................................................................ 7

            d.   Market share liability claims are not recognized under Florida law except under limited circumstances that are not applicable here (all Counts) ......................................................... 8

        2.   Even If This Court Considers A Market Share Theory Of Liability To Be Viable, The Complaint Should Be Dismissed Against Moving Defendants Because KPT, Knauf Wuhu, and Knauf Dongguan Mark Their Drywall (All Counts)........................................... 9

    B.   Plaintiffs Fail To State Claims Against KPT And Knauf Gips Under Louisiana Common Law And Under The Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA")........................................................ 9

    C.   Plaintiffs Fail To State A Claim Against Moving Defendants For Negligence Per Se Under Louisiana law (Count II)........................................... 11

    D.   Plaintiffs' Claims for Breach of Express and/or Implied Warranties Are Preempted By the United Nations Convention On Contracts For The International Sale of Goods ("CISG") And Otherwise Are Barred As A Matter Of Law (Count III) ................................................................................ 12

# TABLE OF CONTENTS
(continued)

Page

1. The Warranty Claims Are Preempted By The CISG............................ 12

2. The Warranty Claims Fail Under State Law ........................................... 13

    a. Plaintiffs fail to state a claim for breach of Express and/or Implied Warranty against KPT and Knauf Gips under Louisiana law because the LPLA and redhibition statute provide the exclusive remedies against alleged manufacturers of products, and no separate warranty claims may exist. ................................................................................. 13

    b. Plaintiffs fail to meet the pleading requirements for the claim in redhibition and thus cannot state a claim for breach of Express and/or Implied Warranty ......................................... 14

    c. Plaintiffs fail to state a claim for breach of the implied warranty of fitness for a particular purpose. ............................... 15

E. Plaintiffs Fail To State A Claim For Private Nuisance (Count IV) ................... 16

F. Plaintiffs Fail To State A Claim For Negligent Discharge Of A Corrosive Substance (Count V)........................................................................ 19

G. Plaintiffs Fail To State A Claim For Unjust Enrichment (Count VI) ............... 20

H. Plaintiffs Fail To State A Claim For Violation Of Consumer Protection Acts (Count VII) ........................................................................... 21

    1. Plaintiffs Are Barred From Bringing Class Actions Under The Alabama, Louisiana, Mississippi, And Virginia Statutes (Count VII)................................................................................... 22

    2. Plaintiffs Fail To State A Claim Under The Alabama Deceptive Trade Practices Act Because They Have Failed to Make Written Demand And Have Impermissibly Filed Concurrent Common Law Claims (Count VII) ................................................................... 23

        a. Plaintiffs did not make a written demand in compliance with ADPTA and thus have failed to state a claim ................... 23

        b. Plaintiffs are barred from filing an action under the ADPTA because the ADPTA's mutual exclusivity provision prohibits concurrent statutory and common law claims........................................................................ 25

# TABLE OF CONTENTS
(continued)

**Page**

3.    Plaintiffs Fail To State A Cause Of Action For Violation Of The Florida Deceptive And Unfair Trade Practices Act (Count VII) ............. 26

    a.    Plaintiffs Fail To Allege Any Facts To Support An Inference That Moving Defendants Committed Any "Unfair Or Deceptive Acts" Under The FDUTPA .................... 27

    b.    Plaintiffs seek damages that are not recoverable under the FDUTPA. ................................................................................. 28

4.    The LPLA Sets Forth The Exclusive Theories Of Liability Against Manufacturers, And Thus Plaintiffs' Claims Under LUTPA As To KPT And Knauf Gips Fail As A Matter Of Law (Count VII) ............... 30

5.    Plaintiffs Fail To State A Claim Under The Mississippi Consumer Protection Act Because They Have Failed To Attempt Resolution And Fail To Meet The Requisite Pleading Standards (Count VII). ........ 31

    a.    Plaintiffs have failed to attempt resolution through informal dispute resolution and thus have failed to meet a prerequisite to filing a private action under the MCPA. ............. 31

    b.    Plaintiffs' MCPA claim fails to allege sufficient facts to meet the requisite pleading standards. ........................................ 32

6.    Plaintiffs Fail To State A Claim Under the Texas Deceptive Trade Practices–Consumer Protection Act Because They Have Failed To Provide Written Notice To The Moving Defendants And The Texas Consumer Protection Agency (Count VII). .................................. 34

7.    Plaintiffs Fail To State A Claim Under The North Carolina Consumer Protection Act Because The Sole North Carolina Resident Cannot Bring A Class Action And Because Plaintiffs Fail To Show The Requisite Nexus To North Carolina (Count VII) ............. 36

8.    Plaintiffs Fail To State A Claim Under the Virginia Consumer Protection Act Because They Fail To Show A Nexus Between The Purported Claim And The Commonwealth Of Virginia (Count VII)...... 39

I.    Plaintiffs Fail To State A Claim For Equitable And Injunctive Relief And Medical Monitoring (Count VIII) .................................................... 40

III.    CONCLUSION ........................................................................................ 43

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*America Online, Inc. v. Superior Ct. of Alameda County,*
  90 Cal. App. 4th 1 (Cal. Ct. App. 2001) ............................................................. 23

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ........................................................................... 2, 3

*Avondale Indus., Inc. v. Tyco Valves and Controls, Inc.,*
  2:06cv2126, 2007 U.S. Dist. LEXIS 20329 (E.D. La. 2003).................................. 30

*Barasich v. Columbia Gulf Transmission Co.,*
  467 F. Supp. 2d 676 (E.D. La. 2006) ("*Barasich I*")........................................... 17

*Barasich v. Shell Pipeline Co.,*
  2006 U.S. Dist. LEXIS 84389 (E.D. La. Nov. 20, 2006) ("*Barasich II*")....................17, 18

*Bartolomeo v. S.B. Thomas, Inc.,*
  889 F.2d 530 (4th Cir. (N.C.) 1989)................................................................ 38

*Bateman v. Johns-Manville Sales Corp.,*
  781 F.2d 1132 (5th Cir. 1986)..................................................................... 6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..........................................................................2, 41, 42

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
  343 F.3d 719 (5th Cir. 2003)....................................................................31, 33

*Bladen v. C.B. Fleet Holding Co.,*
  487 F. Supp. 2d 759 (W.D. La. 2007) ..........................................................11, 30

*Board of Supervisors of La. State Univ. v. Louisiana Agricultural Fin. Auth.,*
  984 So. 2d 72 (La. Ct. App. 2008) ................................................................ 21

*Brown v. R.J. Reynolds Tobacco Co.,*
  52 F.3d 524 (5th Cir. 1995)........................................................................ 10

*Butler v. Baber,*
  529 So. 2d 374 (La. 1988).......................................................................... 18

*Cheminova Am. Corp. v. Corker,*
  779 So. 2d 1175 (Ala. 2000) ...................................................................... 26

*Cole v. Chevron USA, Inc.,*
    554 F. Supp. 2d 655 (S.D. Miss. 2007) ...................................................22, 32

*Collins v. DaimlerChrysler Corp.,*
    894 So. 2d 988 (Fla. Ct. App. 2004) ............................................................ 29

*David v. American Suzuki Motor Corp.,*
    629 F. Supp. 2d 1309 (S.D. Fla. 2009) .......................................................... 4

*De Atley v. Victoria's Secret Catalogue, LLC,*
    876 So. 2d 112 (La. Ct. App. 2004) ............................................................ 14

*Deerman v. Federal Home Loan Mortgage Corp.,*
    955 F. Supp. 1393 (N.D. Ala. 1997)........................................................24, 25

*Downs v. Hammett Props.,*
    899 So. 2d 792 (La. Ct. App. 2005) ............................................................ 16

*Easterling v. Royal Manufactured Hous.,*
    LLC, 963 So. 2d 399 (La. Ct. App. 2007) .................................................... 14

*Ellis v. Georgia-Pacific Corp.,*
    550 So. 2d 1310 (La. Ct. App. 1989).......................................................... 20

*Ex parte Exxon Corp.,*
    725 So. 2d 930 (Ala. 1998) ........................................................................ 22

*Florida Digital Network v. Northern Telecom, Inc.,*
    2006 U.S. Dist. LEXIS 61983 (M.D. Fla. Aug. 30, 2006) ............................ 27

*Florida Specialty, Inc. v. H2 Ology, Inc.,*
    742 So. 2d 523 (Fla. Ct. App. 1999).......................................................19, 20

*Fontenot v. Saxby,*
    No. 09-1210, 2010 La. App. LEXIS 495 (La. Ct. App. Apr. 7, 2010)................ 16

*Ford Motor Co. v. Sperau,*
    708 So. 2d 111 at n.7 (Ala. 1997)................................................................ 25

*Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,*
    715 So.2d 311 (Fla. Ct. App. 1998)............................................................ 29

*Franklin City Sch. Bd. v. Lake Asbestos of Quebec,*
    1986 U.S. Dist. LEXIS 29306 (N.D. Ala. Feb. 13, 1986) ................................ 6, 7

*Gallien v. P&G Pharms.,*
    2010 U.S. Dist. LEXIS 21051 (S.D.N.Y. Mar. 4, 2010) ................................ 11

*Galloway v. State of La.*,
654 So. 2d 1345 (La. 1995) .................................................................................. 12

*Garcia v. Santa Maria Resort, Inc.*,
528 F. Supp. 2d 1283 (S.D. Fla. 2007) ................................................................ 27

*Givens v. Rent-a-Center, Inc.*,
720 F. Supp. 160 (S.D. Ala. 1988) .................................................................24, 25

*Gorran v. Atkins Nutritionals, Inc.*,
464 F. Supp. 2d 315 (S.D.N.Y. 2006) ................................................................. 28

*Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*,
261 F.3d 466 (5th Cir. (Tex.) 2001) .................................................................... 19

*Hillard v. United States*,
06-02576, 2007 U.S. Dist. LEXIS 13610 (E.D. La. Feb. 28, 2007) ...............41, 42

*Hines v. Hash*,
843 S.W.2d 464 (Tex. 1992) ............................................................................35, 36

*Hines v. Riverside Chevrolet-Olds, Inc.*,
655 So. 2d 909 (Ala. 1994) .................................................................................. 25

*In Re Behr*,
2006 Tex. App. LEXIS 1588 (Tex. App. Mar. 1, 2006) ...................................... 35

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
2008 U.S. Dist. LEXIS 107688 (E.D. La. Dec. 29, 2008) ................................... 42

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
2009 U.S. Dist. LEXIS 64631 (E.D. La. July 23, 2009) ........................................ 2

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*,
Nos. 96-3125, 96-1814 ........................................................................................ 34

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ................................................................................. 2

*In re Pharm. Indus. Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005) ........................................................................... 22

*Ivory v. Pfizer Inc.*,
2009 U.S. Dist. LEXIS 90735 (W.D. La. Sept. 30, 2009) ................................... 14

*Jacobs v. Central Trans., Inc.*
891 F. Supp. 1088 (E.D.N.C. 1995) .................................................................37, 38

*Jefferson v. Lead Indus. Ass'n, Inc.*,
    106 F.3d 1245 (5th Cir. 1997) ........................................................................6, 10, 11, 13

*Jones v. NL Indus.*,
    2006 U.S. Dist. LEXIS 33714 (N.D. Miss. May 24, 2006) .................................................... 7

*Kadlec Medical Ctr. v. Lakeview Anesthesia Ass'n*,
    No. 04-0997, 2006 U.S. Dist. LEXIS 27440 (E.D. La. May 9, 2006) ................................. 11

*Keith v. Stoelting, Inc.*,
    915 F.2d 996 (5th Cir. 1990) ........................................................................................31, 33

*King v. Bayer Pharms. Corp.*,
    No. 09-0465, 2009 U.S. Dist. LEXIS 125802 (W.D. La. June 8, 2009) ............................. 20

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) .......................................................................................................... 4

*Lantz v. American Honda Motor Co.*,
    2007 U.S. Dist. LEXIS 34948 (N.D. Ill. May 14, 2007) .................................................... 27

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. (La.) 2009) .............................................................................. 2, 3

*Maldonado v. Ochsner*,
    237 F.R.D. 145 (E.D. La. 2006) .................................................................................... 22

*Market Am. Inc. v. Rossi*,
    1:97-CV-00891, 1999 U.S. Dist. LEXIS 9793 (M.D.N.C. 1999) ...................................37, 38

*Mayberry v. Bristol-Myers Squibb Co.*,
    07-942, 07-1099, 2009 U.S. Dist. LEXIS 121115 (D.N.J. Dec. 30, 2009) ...............31, 33, 34

*Miller v. Kossey*,
    802 S.W.2d 873 (Tex. App. 1991) ................................................................................. 35

*Montalto v. Viacom Int'l, Inc.*,
    545 F. Supp. 2d 556 (S.D. Miss. 2008) ......................................................................... 32

*Morris v. Sears, Roebuck & Co.*,
    765 So. 2d 419 (La. Ct. App. 2000) .............................................................................. 22

*Murungi v. Tex. Guar. Sallie Mae*,
    646 F. Supp. 2d 804 (E.D. La. 2009) ............................................................................ 12

*Nationwide Mut. Ins. Co. v. Housing Opportunities Made Equal, Inc.*,
    259 Va. 8 (Va. 2000) ................................................................................................... 23

*Nimbus Technols., Inc. v. Sunndata Prods., Inc.*,
  No. 04-CO00312-W, U.S. Dist. LEXIS 46509 (N.D. Ala. 2005) ........................ 24

*Orkin Exterminating Co., Inc. v. DelGuidice*,
  790 So. 2d 1158 (Fla. App. 2001) ...................................................... 29

*Phillips v. Kmart Corp.*,
  588 So. 2d 142 .............................................................................. 12

*PNR, Inc. v. Beacon Prop. Mgmt.*,
  842 So. 2d 773 (Fla. 2003) ............................................................... 27

*PPG Indus., Inc. v. Industrial Laminates Corp.*,
  664 F.2d 1332 (5th Cir. (La.) 1982) .................................................... 14

*Ramirez v. Am. Home Prods.*,
  No. 3-03-155, 2005 U.S. Dist. LEXIS 40577 (S.D. Tex. Sept. 16, 2005) ............ 35

*Rodrigue v. Copeland*,
  475 So. 2d 1071 (La. 1985) ............................................................... 17

*Rollins, Inc. v. Butland*,
  932 So. 2d 1172 (Fla. Ct. App. 2006) .............................................. 26, 30

*Rollins, Inc. v. Butland*,
  951 So. 2d 860 (Fla. Ct. App. 2006) ................................................... 29

*Rollins, Inc. v. Heller*,
  454 So. 2d 580 (Fla. 3d Ct. App. 1984) ........................................... 28, 29

*Schauer v. Morse Operations, Inc.*,
  5 So. 3d 2 (Fla. Ct. App. 2009) ..................................................... 28, 29

*Scott v. American Tobacco Co.*,
  949 So. 2d 1266 (La. Ct. App. 2007) ................................................... 42

*Seafoam, Inc. v. Barrier Systems, Inc.*,
  1987 U.S. Dist. LEXIS 2610 (E.D. La. Apr. 1, 1987) ................................ 14

*Smith v. 2001 S. Dixie Hwy., Inc.*,
  872 So. 2d 992 (Fla. Ct. App. 2004) ............................................... 29, 34

*Southwestern Bell Tel. Co. v. DeLanney*,
  809 S.W.2d 493 (Tex. 1991) .............................................................. 35

*St. Martin v. Jones*,
  2008 U.S. Dist. LEXIS 70896 (E.D. La. Sept. 17, 2008) .......................... 2, 7

*Stires v. Carnival Corp.*,
   243 F. Supp. 2d 1313 (M.D. Fla. 2002) .................................................................. 27

*Taylor v. Southern Farm Bureau Cas. Co.*,
   954 So. 2d 1045 (Miss. Ct. App. 2007) .............................................................. 32, 33

*Thompson v. Johns-Manville Sales Corp.*,
   714 F.2d 581 (5th Cir. 1983) ................................................................................. 6

*Turner v. Murphy Oil USA, Inc.*,
   234 F.R.D. 597 (E.D. La. 2006) ........................................................................ 17, 18

*University Fed. Credit Union v. Grayson*,
   878 So. 2d 280 at n.2 (Ala. 2003) ........................................................................ 22

*Urling v. Helms Exterminators, Inc.*,
   468 So. 2d 451 (Fla. Ct. App. 1985) ..................................................................... 29

*Winchester Homes, Inc. v. Hoover Universal, Inc.*,
   27 Va. Cir. 62 (Va. Cir. Ct. 1992) ...................................................................... 39, 40

**TREATY**

United Nations Convention on Contracts for the International Sale of Goods, Apr. 11,
   1980, 1489 U.N.T.S. 3, 15 U.S.C. App. arts. 35-36 ............................................. 12

**STATUTES**

FED. R. CIV. P. 9(b) ............................................................................... 26, 27, 31, 33

FED. R. CIV. P. 12(b)(2) ........................................................................................ 1

FED. R. CIV. P. 12(b)(6) ................................................................................. passim

ALA. CODE 1975 § 8-19-10(e) ............................................................................. 23

ALA. CODE 1975 § 8-19-10(f) ............................................................................. 22

ALA. CODE 1975 § 8-19-15(a) ............................................................................. 25

Fla. Stat. §§ 501.201 *et seq.* .............................................................................. 26

FLA. STAT. § 501.203(3) ...................................................................................... 27

FLA. STAT. § 501.204(1) ...................................................................................... 26

FLA. STAT. § 501.211(2) ........................................................................... 26, 28, 29

FLA. STAT. § 501.212(3) ...................................................................................... 28

LA. ACTS NO. 64, § 2 ........................................................................................ 10

LA. CIV. CODE ANN. art. 4 ............................................................................... 42

LA. CIV. CODE ANN. art. 667 ........................................................................17, 18

LA. CIV. CODE ANN. art. 2298 .......................................................................... 20

LA. CIV. CODE ANN. art. 2315 (1998) ............................................................... 42

LA. CIV. CODE ANN. art. 2520 .......................................................................... 15

LA. CIV. CODE ANN. art. 2524 .......................................................................15, 16

LA. CIV. CODE ANN. art. 2529 .......................................................................... 14

LA. CIV. CODE arts. 2520 *et seq.* .................................................................... 13

LA. REV. STAT. ANN. art. 9:2800.52 ..........................................................passim

LA. REV. STAT. ANN. art. 51:1401 *et seq.* ..................................................11, 30

LA. REV. STAT. ANN. art. 51:1409 ..................................................................... 22

MISS. CODE ANN. § 75-24-15(2) ....................................................................31, 32

MISS. CODE ANN. § 75-24-15 ............................................................................ 32

MISS. CODE ANN. § 75-24-15(4) ........................................................................ 22

MISS. CODE. ANN. § 75-24-1 ............................................................................. 31

MISS. CODE. ANN. § 75-24-5 ..........................................................................31, 33

MISS. CODE. ANN. § 75-24-9 ............................................................................. 33

MISS. R. CIV. P. 9(b) ........................................................................................ 33

N.C. GEN. STAT. § 75-1, *et seq.* ..................................................................37, 38

TEX. BUS. & COM. CODE ANN. § 17.501 .......................................................... 36

TEX. BUS. & COM. CODE ANN. § 17.505 .......................................................... 35

TEX. BUS. COM. CODE ANN. § 17.41, *et seq.* ................................................. 34

VA. CODE ANN. §§ 59.1-196 *et seq.* ............................................................23, 39

**OTHER AUTHORITY**

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004)................ 41

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Insulation GmbH, a/k/a Knauf USA ("Knauf USA"), and Knauf Gips KG ("Knauf Gips")[1] (collectively, "Moving Defendants") hereby move this Court for an Order dismissing the Class Action Complaint ("Complaint" or "Compl.") of David Gross, Cheryl Gross, and Louis Velez, individually, and on behalf of all others similarly situated (collectively, "Plaintiffs").  As set forth more fully herein, the Complaint fails, under the applicable law of Louisiana, to set forth any cause of action against KPT or Knauf Gips, and likewise fails, under the applicable law of Louisiana, to set forth any cause of action against Knauf USA for:  (i) Negligence *Per Se* (Count II); (ii) Breach of Express and/or Implied Warranties (Count III); (iii) Private Nuisance (Count IV); (iv) Negligent Discharge of a Corrosive Substance (Count V); (v) Unjust Enrichment (Count VI); (vi) Violation of Consumer Protection Acts (Count VII); and (vii) Equitable and Injunctive Relief and Medical Monitoring (Count VIII).[2]

---

[1] Knauf Gips KG has filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that this Court does not have personal jurisdiction over it.  Knauf Gips joins this motion as a matter of judicial economy but is not waiving its objection to jurisdiction.

[2] On September 30, 2009, KPT, Knauf Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu") and Knauf Gips KG ("Knauf Gips") joined in a Motion to Dismiss Or, Alternatively, To Strike Plaintiffs' Claims for Economic Damages, which was brought as a global motion in the MDL seeking to bar Plaintiffs' tort claims based on the application of the economic loss doctrine.  On January 13, 2009, this Court denied the Motion.  KPT, Knauf Wuhu, and Knauf Gips filed a request that the Court's order be certified for interlocutory appeal.  This Court denied the request on March 23, 2010.  KPT had filed a similar interlocutory appeal in Florida state court, which was granted and is currently before the Florida Third District Court of Appeals.  In light of this Court's prior ruling and in an effort to further judicial economy and to preserve its rights with regard to the arguments made in the Economic Loss Doctrine Motion to Dismiss, KPT incorporates and renews (without additional briefing) the arguments made previously in the Economic Loss Doctrine Motion to Dismiss.

## I.    INTRODUCTION

### A.    Plaintiffs Fail To State A Claim On Which Relief Can Be Granted, As Their Claims Fall Far Short Of Stating A Claim That Is Plausible On Its Face.

As a general matter, Plaintiffs fail to state a claim against the Moving Defendants upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss tests the sufficiency of a complaint which, to survive a motion to dismiss pursuant to Rule 12(b)(6), must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The complaint must state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The complaint must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Mere "conclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient to state a claim. *St. Martin v. Jones*, 2008 U.S. Dist. LEXIS 70896, *6-7  (E.D. La. Sept. 17, 2008). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court construes all reasonable factual inferences in the plaintiff's favor, but it need not accept such inferences if they are unsupported by any facts. *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The factual allegations made must "be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555; *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 2009 U.S. Dist. LEXIS 64631, *4 (E.D. La. July 23, 2009). To survive a motion to dismiss, the complaint "(1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. (La.) 2009)

(citing *Twombly*, 550 U.S. at 555-56).  The standard "'calls for enough facts to raise a reasonable expectation that discovery will reveal that the elements of the claim existed.'"  *Lormand*, 565 F.3d at 257 (quoting *Twombly*, 550 U.S. at 555-56).

The present Complaint does not meet the standard under the *Twombly/Iqbal* test, but merely "tenders naked assertions devoid of further factual enhancement" and therefore cannot suffice.  *Iqbal*, 129 S. Ct. at 1949.  Rather than providing factual statements in support of the causes of action alleged, Plaintiffs offer the Court "threadbare recitals of each cause of action's elements, supported by mere conclusory statements."  *Id.* at 1940.  For example, in their fifty-eight–page Complaint, Plaintiffs allege not a single year, or range of years, during which any Plaintiff purchased property containing the allegedly affected drywall, nor do they allege any time frame during which the Moving Defendants (or any Defendant) has been "doing business" in any of the several states listed by Plaintiffs.  (*See Compl.* at ¶¶ 17, 18, 21).  Despite purporting to bring a claim for breach of "express" warranty, Plaintiffs provide no hint as to whether the Moving Defendants issued any express warranty to any Plaintiff or nonparty, let alone what such warranties may have stated.  (*Id.* at ¶ 256).  In claiming "medical monitoring" as a form of injunctive relief, Plaintiffs fail to allege that even a single one of them has suffered any specific personal injury, nor any particular disease or adverse health condition that may be caused in the future by the drywall at issue.  (*Id.* at ¶¶ 285-297).  In sum, Plaintiffs' claims fail to meet the standard under *Twombly/Iqbal*, and thus these causes of action should be dismissed with respect to the Moving Defendants.

## II.    ARGUMENT[3]

### A.    Plaintiffs' Complaint Must Be Dismissed As To The Moving Defendants Because Claims Based On Market Share Liability Are Not Viable And Not Applicable To The Moving Defendants.

The Complaint is based entirely on market share liability theory – that defendants concealed their identity by not marking their board; therefore, liability should be assessed based on the defendants' market share.  (*See* Compl. at 5 & ¶¶ 147-152.)  The Complaint should be dismissed in its entirety as to the Moving Defendants because (1) market share liability is not recognized;[4] and (2) such a theory is not applicable in these circumstances where plaintiffs have not specifically alleged, and cannot allege, that KPT, Knauf Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu") and Guangdong Knauf New Building Material Products Co. Ltd. ("Knauf Dongguan") are indeterminate defendants (or transitively the alleged parent company, Knauf Gips, or the alleged supplier, Knauf USA) because KPT, Knauf Wuhu, and Knauf Dongguan

---

[3] A choice of law analysis for all potential class plaintiffs is generally conducted at the class certification stage and not upon consideration of a motion to dismiss.  *See, e.g., David v. American Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1314 & n.2 (S.D. Fla. 2009).  Nevertheless, to properly evaluate a Motion to Dismiss pursuant to Rule 12(b)(6), the Court should determine which state's law applies to the named Plaintiff's claims.  *Id.* at 1314 n.2.  Generally, a district court generally must apply the choice of law rules of the state in which the district court is located, in this case Louisiana, where the claim was originally filed.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  Plaintiffs' allegations, however, do not inform this analysis except to the extent that they allege KPT does business in Louisiana.  Accordingly, KPT relies on Louisiana law for its Motion to Dismiss in this case and reserves its right to address other applicable state laws if necessary on reply or as otherwise directed by this Court.  Furthermore, to the extent that other states' laws applies, KPT refers the Court to its separate Motion to Dismiss the Omnibus Class Action Complaint I, in which KPT addresses choice of law principles and the various causes of action under the laws of Louisiana as well as Alabama, Florida, Mississippi, and Texas.  The allegations against KPT in the present Complaint are nearly identical to those in the Omnibus Class Action Complaint I.

[4] The Complaint is a purported class action bringing claims on behalf of named Plaintiffs who reside in Louisiana, and it is anticipated that as this Court will consider Louisiana law in the first instance. However, because Plaintiffs purport to bring a nationwide class action, and the Moving Defendants have not addressed market share liability in any other briefs filed to date, the Moving Defendants have included sections on Alabama, Mississippi and Florida law for this Court's consideration.

marked every board sold to the United States with their name.[5]   (*See* Compl., ¶¶ 18-20; Declaration of Mark Norris on Behalf of KPT, ¶ 9, attached as Ex. A; Declaration of David Gregory on Behalf of Knauf Wuhu, ¶ 9, attached as Ex. C; Declaration of David Gregory on Behalf of Knauf Dongguan, ¶ 9, attached as Ex. D).

1.   **The *Gross* Complaint Must Be Dismissed Because Market Share Liability Is Not A Viable Claim Or Theory Of Recovery In Louisiana, Mississippi, Alabama and Florida (All Counts).**

Plaintiffs assert a market share liability theory against all defendants, including the Moving Defendants.   Plaintiffs alleged that they have not succeeded in identifying the manufacturer of the products that caused them harm and that certain manufacturers concealed their products origin by not marking the manufacturer on the drywall.   (Compl. at ¶¶ 149-150.) Plaintiffs allege that "since the drywall at issue in this litigation is a fungible product that is difficult to trace, in the absence of such identifying characteristics, all Defendants are liable to Plaintiffs in ratio to their proportionate share of the relevant market."   (*Id.* at ¶ 151.)   Plaintiffs further allege that the burden of proving causation should shift from Plaintiffs to the Defendants "consistent with Restatement (Second) of Torts Section 433(B)."   (Compl. at ¶ 152.)   Plaintiffs' allegations fail as to Moving Defendants because neither the law of the Fifth Circuit nor the law of the States of Alabama, Mississippi, or Louisiana recognizes market share liability as either a cause of action or alternative theory of causation.   Florida does not recognize such a theory under these circumstances.

---

[5] Dismissal applies equally to Knauf Gips KG and Knauf USA as to the Chinese Knauf entities under these circumstances because Plaintiffs allegations against Knauf Gips and Knauf USA are based solely on their underlying claims against the Chinese companies.   Plaintiffs allege that Knauf Gips controlled production and is the alter ego of the Chinese entities.   (*See* Compl. at ¶¶ 15-20.)   Plaintiffs allege that Knauf USA supplied and marketed the drywall.   (*Id.* at ¶¶ 21-22.)   Because market share liability is not viable and cannot be applied against an alleged manufacturer of an identifiable product, it cannot be applied to an alleged parent or supplier of the identifiable product.

a.      **Market share liability claims are not recognized under Louisiana law.**

Market share liability claims are not available under Louisiana law.  The Fifth Circuit Court of Appeals, applying Louisiana law in a case based on diversity jurisdiction in which the claimants alleged manufacturer liability for lead paint poisoning, explicitly declined to recognize market share liability as a possible theory for recovery for products liability actions in Louisiana. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997).  Prior to the adoption of the LPLA, Louisiana courts considered and rejected market share liability.  *Id.*; *Thompson v. Johns-Manville Sales Corp.*, 714 F.2d 581, 583 (5th Cir. 1983), *cert. denied,* 465 U.S. 1102 (1984); *Bateman v. Johns-Manville Sales Corp.*, 781 F.2d 1132, 1133 (5th Cir. 1986).  The "failure of the Louisiana legislature to embrace market share liability when it confected the LPLA or by subsequent amendment implies continued rejection of that theory by Louisiana." *Jefferson*, 106 F.3d at 1248.

Market share liability cannot be an alternative to the requirement that a plaintiff prove causation, and "no Louisiana decision has ever applied this theory to supplant proof of proximate causation."  *Id.* at 1252.  Because market share liability has been rejected in Louisiana, the allegations in the Complaint should be dismissed pursuant to Rule 12(b)(6) with respect to the Moving Defendants.

b.      **Market share liability claims are not recognized under Alabama law.**

Plaintiffs do not state a claim for which relief can be granted under the laws of Alabama. The state and federal courts of Alabama have explored market share liability in the context of plaintiffs seeking recovery for damages allegedly sustained due to the use of asbestos.  The result in Alabama is the same as Louisiana – plaintiff's "[e]nterprise [l]iability/[c]ollective [l]iability/[m]arket [s]hare [l]iability theory" as a "bad case of wishful thinking."  *Franklin City*

*Sch. Bd. v. Lake Asbestos of Quebec*, 1986 U.S. Dist. LEXIS 29306, *14-15 (N.D. Ala. Feb. 13, 1986). The *Franklin* court held that "[t]hese ideas as substitutes for the traditional negligence concepts … have already been rejected by the Fifth Circuit and the Eleventh Circuit." *Id.* (citing *Thompson v. Johns-Manville Sales Corp.,* 714 F.2d 581 (5th Cir. 1983); *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480 (11th Cir. 1985)). Because Alabama does not permit the use of the market share liability theory, the Complaint should be dismissed pursuant to Rule 12(b)(6) with respect to the Moving Defendants.

> **c.    Market share liability claims are not recognized under Mississippi law.**

No state court of Mississippi has recognized a market share liability theory. In a lead paint case, the U.S. District Court for the Northern District of Mississippi declined to address whether Mississippi state courts would permit a plaintiff to substitute causation with a theory of market share liability because the plaintiffs were able to identify at least one brand of paint that had been used during the relevant time period. *See Jones v. NL Indus.*, 2006 U.S. Dist. LEXIS 33714 (N.D. Miss. May 24, 2006), *reconsid. denied*, 2006 U.S. Dist. LEXIS 38936 (N.D. Miss. June 12, 2006). The court noted that for a claim to survive summary judgment, the plaintiff had to "present evidence establishing fact issues as to whether the unreasonably dangerous condition of defendant's Dutch Boy lead paint was a proximate cause" of the damages sustained by plaintiffs. *Id.* at *9. Thus, *Jones* is not supportive of negating the requirement for proximate cause.

Because there is no indication that a court in Mississippi or one applying Mississippi law would make the radical deviation from common principles of proximate causation, this Court should not adopt such a theory nor apply market share liability to any claims to be determined

under Mississippi law.   The Complaint should be dismissed pursuant to Rule 12(b)(6) with respect to the Moving Defendants.

> **d.     Market share liability claims are not recognized under Florida law except under limited circumstances that are not applicable here (all Counts).**

In the limited context of a case involving diethylstilbestrol ("DES") ingested by women during pregnancy, the Florida courts have recognized market share liability where the product truly was unidentifiable.   In *Conley v. Boyle Drug Co.*, the Supreme Court of Florida adopted market share liability for the adult daughters of women who had consumed DES during pregnancy.   570 So. 2d 273 (1990).   The Florida Supreme Court agreed to recognize this approach of liability in a situation in which "the manufacturing and marketing practices involved and the delayed harmful effect on the nonconsuming plaintiff make ***identification impossible*.**"   *Id.* at 283 (emphasis added).   Market share liability is only a "theory of last resort, 'developed to provide a remedy where there is an inherent inability to identify the manufacturer of the product that caused the injury.'"   *Id.* at 285 (quoting *Celotex Corp. v. Copeland*, 471 So. 2d 533, 537 (Fla. 1985)) (declining to apply market share liability in asbestos litigation).

Market share liability is not applicable to the Moving Defendants in the present case because KPT, Knauf Wuhu, and Knauf Dongguan – the Chinese entities that allegedly manufactured the drywall that was imported into the United States – clearly mark the drywall with their names.   (*See* Norris KPT Decl. at ¶ 9; Gregory Wuhu Decl. at ¶ 9; Gregory Dongguan Decl. at ¶ 9).   As such, no plaintiff with a claim against KPT, Knauf Wuhu, or Knauf Dongguan can be said to have a potential "inherent inability" to identify the drywall manufactured by those Defendants.   The clear labels on the back of each piece of drywall defeat any allegations that identification of the manufacturer is difficult, much less "impossible," as would be required before a Florida court would consider applying market share liability.   The "last resort" of

market share liability is not appropriate here, and the Complaint should be dismissed as to the Moving Defendants.

> **2.    Even If This Court Considers A Market Share Theory Of Liability To Be Viable, The Complaint Should Be Dismissed Against Moving Defendants Because KPT, Knauf Wuhu, and Knauf Dongguan Mark Their Drywall (All Counts).**

Contrary to the allegations that form the bases of Plaintiffs market share liability theory, KPT, Knauf Wuhu, and Knauf Dongguan did not attempt to conceal the origins of the drywall and are not "indeterminate defendants." (*See* Compl., ¶¶ 147-152). KPT, Knauf Wuhu, and Knauf Dongguan marked with their names each piece of drywall that was manufactured and ultimately sold to persons in the United States. (*See* Norris KPT Decl. at ¶ 9; Gregory Wuhu Decl. at ¶ 9; Gregory Dongguan Decl. at ¶ 9). The entire purpose of an alternative theory such as market share liability is negated because a Plaintiff can easily identify whether it has drywall manufactured by those defendants. Thus, even if this Court were to hold that market share liability might be a viable cause of action or theory of liability under some circumstances, it does not apply to the Moving Defendants, who clearly marked the back of each piece of drywall. There simply is no need to shift the burden under a typical proximate causation analysis.

This Court should dismiss the Complaint as to the Moving Defendants because market share liability is not a viable cause of action and does not apply to drywall manufactured by KPT, Knauf Wuhu, or Knauf Dongguan.

> **B.    Plaintiffs Fail To State Claims Against KPT And Knauf Gips Under Louisiana Common Law And Under The Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA").**

Plaintiffs' Complaint fails to properly allege, under Louisiana common law, causes of action against KPT and Knauf Gips. The Louisiana Products Liability Act ("LPLA") "establishes the **exclusive** theories of liability for manufacturers for damages caused by their

products."  LA. REV. STAT. ANN. art. 9:2800.52 (emphasis added).[6]   Here, Plaintiffs have not attempted to plead a cause of action under the LPLA.  Because Plaintiffs cannot possibly recover for causes of action against KPT and Knauf Gips not recognized in their home state (because of the LPLA's exclusivity provision), and because they have failed to plead any claim under the LPLA (which provides their sole avenue of relief against KPT and Knauf Gips), their common law claims against KPT and Knauf Gips fail as a matter of law, as does their purported class action with respect to KPT and Knauf Gips.

Under Louisiana law, a plaintiff may not recover from a manufacturer for damages caused by a product on the basis of any theory of liability not set forth in the LPLA.  LA. REV. STAT. ANN. art. 9:2800.52.  The LPLA provides that a manufacturer of a product is liable to a claimant for damage proximately caused by a characteristic of the product that rendered it unreasonably dangerous.  *Id.* at art. 9:2800.54(A).  The means for claiming and proving that a product was "unreasonably dangerous" are limited to those specifically provided by the LPLA. A plaintiff may plead that a product is unreasonably dangerous owing either to (1) its "construction or composition," (2) its "design," (3) failure to provide "adequate warning," or (4) nonconformance of the product with an "express warranty."  *Id.* at art. 9:2800.54(B)(1-4).

Although the LPLA is predicated on principles of strict liability, negligence, or warranty, such common law causes of action are no longer viable as independent theories of recovery against a manufacturer of an allegedly defective product.  *Jefferson*, 106 F.3d at 1251 (citing *Automatique New Orleans, Inc. v. U-Select-It, Inc.,* 1995 U.S. Dist LEXIS 12391 (E.D. La. Aug. 15, 1995); *Hopkins v. NCR Corp.,* 1994 U.S. Dist. LEXIS 17273 (M.D. La. Nov. 17, 1994); J.

---

[6] The LPLA became effective on September 1, 1988, and applies to those causes of action, such as those here, that accrued on or after September 1, 1988. *See* La. Acts No. 64, § 2; *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995).

Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565 (1989)); *see also Gallien v. P&G Pharms.*, 2010 U.S. Dist. LEXIS 21051, *6-7 (S.D.N.Y. Mar. 4, 2010) (citing *King v. Bayer Pharms. Corp.*, 2009 U.S. Dist. LEXIS 65208, *4 (W.D. La. July 13, 2009); *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 770-71 (W.D. La. 2007)) (ruling, in product liability case, that claims for "negligence per se, … breach of implied warranty, … and violation of consumer protection statute claims fall outside the scope of the LPLA and therefore fail to state a claim").

Plaintiffs also cannot bring claims against KPT under the Louisiana Unfair Trade Practices and Consumer Protection Law (the "LUTPA"), LA. REV. STAT. ANN. art. 51:1401 *et seq.* (Compl. at ¶ 281). Like the common law claims, a claim under the LUTPA is precluded when the LPLA applies. *Bladen*, 487 F. Supp. 2d at 767.

Therefore, Plaintiffs' common law and LUTPA claims against KPT must be dismissed as a matter of law.

C.    **Plaintiffs Fail To State A Claim Against Moving Defendants For Negligence *Per Se* Under Louisiana Law (Count II).**

Plaintiffs' purported cause of action for negligence *per se* fails to state a claim on which relief can be granted and therefore should be dismissed as a matter of law. (Compl. at ¶¶ 248-253). Plaintiffs are barred from bringing a negligence *per se* claim against KPT and Knauf Gips, given that the LPLA provides their exclusive remedy. LA. REV. STAT. ANN. art. 9:2800.52; *Jefferson*, 106 F.3d at 1251.

Furthermore, Plaintiffs' claim likewise fails against the Moving Defendants because Louisiana courts have unambiguously rejected negligence *per se* as a cause of action. *Kadlec Medical Ctr. v. Lakeview Anesthesia Ass'n*, No. 04-0997, 2006 U.S. Dist. LEXIS 27440, *8-9 (E.D. La. May 9, 2006) ("Louisiana courts have repudiated the common law concept of

negligence *per se, i.e.,* that the violation of a statute automatically constitutes negligence"); *Galloway v. State of La.*, 654 So. 2d 1345, 1346 (La. 1995) ("The doctrine of negligence per se has been rejected in Louisiana") (citing *Boyer v. Johnson,* 360 So. 2d 1164 (La. 1978)); *Phillips v. Kmart Corp.*, 588 So. 2d 142, 143 ("The doctrine of 'negligence per se' has been repudiated in this state") (citing *Weber v. Phoenix Assurance Co. of N.Y.*, 273 So. 2d 30 (La. 1973)). Plaintiff's claim of negligence *per se* is not recognized as a claim in Louisiana and must be dismissed.

Thus, Count II must be dismissed with prejudice with respect to the Moving Defendants.

**D.    Plaintiffs' Claims For Breach of Express And/Or Implied Warranties Are Preempted by the United Nations Convention On Contracts For The International Sale of Goods ("CISG") And Otherwise Are Barred As A Matter of Law (Count III).**

Plaintiffs' claims for breach of "Express and/or Implied" Warranties against the Moving Defendants are preempted by the CISG.   Alternatively, even if the warranty claims are not preempted, Plaintiffs are unable to sustain claims for breach of warranty.   (Compl. at ¶¶ 254-261).

### 1.    The Warranty Claims Are Preempted By The CISG.

Warranty claims are quasi-contractual and therefore arise out of the underlying sales contract of the product at issue.   The underlying sales contract or contracts for the Moving Defendants' drywall sold into the United States involve contracting parties from different nations that are signatories to the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, 1489 U.N.T.S. 3 ("CISG") (reprinted in 15 U.S.C. App.).   Articles 35 and 36 of the CISG permit what are, in essence, warranty claims, but such claims require privity of contract.   15 U.S.C. App. arts. 35-36.   Because the CISG is federal law, its provisions preempt inconsistent state law claims. *See Murungi v. Tex. Guar. Sallie Mae*, 646 F. Supp. 2d 804, 808

(E.D. La. 2009).  As the law of Louisiana bars Plaintiffs' action for breach of warranty, the result under the CISG and state law is the same, and dismissal is required.

### 2.    The Warranty Claims Fail Under State Law.

To the extent that claims are being made under state law, and to the extent that Louisiana law applies, Plaintiffs' claims must fail.  Plaintiffs fail to allege the existence of any "express" warranty.  Furthermore, under Louisiana law, both express and implied warranty claims against an alleged manufacturer, such as KPT or Knauf Gips, are barred because the exclusive remedies arise under the LPLA or the redhibition statute, neither of which has been pleaded.  As to the warranty claims against Knauf USA, Plaintiffs' relief (*i.e.*, economic damages only) would arise under a claim for redhibition, which Plaintiffs have not pleaded.

#### a.    Plaintiffs fail to state a claim for breach of Express and/or Implied Warranty against KPT and Knauf Gips under Louisiana law because the LPLA and redhibition statute provide the exclusive remedies against alleged manufacturers of products, and no separate warranty claims may exist.

Plaintiffs are barred from bringing claims against KPT for breach of any express and/or implied warranties.  The LPLA provides their exclusive remedy against KPT and Knauf Gips as alleged manufacturers.  LA. REV. STAT. ANN. art. 9:2800.52; 9:2800.54(B); LA. CIV. CODE arts. 2520 *et seq.*  Thus, the separate warranty claims must be dismissed.  *Jefferson*, 106 F.3d at 1251 (dismissing warranty claims and noting that implied warranty theories are unavailable as a theory of recovery for personal injury); *Grenier*, 99 F. Supp. 2d at 763 (citing *Jefferson v. Lead Indus. Ass'n*, 930 F. Supp. 241, 244 (E.D. La. 1996)) (dismissing implied warranty claims upon a finding that the LPLA provided claimants' exclusive remedy).

Thus, the warranty claims are subsumed by the LPLA and must be dismissed with respect to KPT and Knauf Gips.

          **b.**     **Plaintiffs fail to meet the pleading requirements for the claim in redhibition and thus cannot state a claim for breach of Express and/or Implied Warranty.**

With respect to a supplier, actions based on a breach of warranty theory arise from the Louisiana redhibition statute and therefore are subject to its one-year period of prescription. *PPG Indus., Inc. v. Industrial Laminates Corp.*, 664 F.2d 1332, 1335 (5th Cir. (La.) 1982) (citing *Molbert Bros. Poultry & Egg Co. v. Montgomery*, 261 So.2d 311, 314 (La. App. 1972); La. Civ. Code Ann. art. 2529) (noting that Section 2529 of the Louisiana Civil Code explicitly recognizes that breach of an express warranty gives rise to an action in redhibition where the declaration by the seller as to the product's qualities forms the primary motive for the purchase); *Seafoam, Inc. v. Barrier Systems, Inc.*, 1987 U.S. Dist. LEXIS 2610 (E.D. La. Apr. 1, 1987) (ruling that claimants are foreclosed from bringing "express warranty" claims outside of redhibition); *Easterling v. Royal Manufactured Hous.*, LLC, 963 So. 2d 399, 405 (La. Ct. App. 2007) (citing *PPG Indus.*, 664 F.2d at 1335). Likewise, a claim for breach of *implied* warranty "'arises under the Redhibition chapter [of the Louisiana Civil Code] and allows recovery for damage to the product itself and economic loss.'" *Ivory v. Pfizer Inc.*, 2009 U.S. Dist. LEXIS 90735, *22 (W.D. La. Sept. 30, 2009) (*Dawson Farms, LLC v. BASF Corp.*, 2008 U.S. Dist. LEXIS 100784, *2 (W.D. La. Dec. 12, 2008)) (emphasis added).

The redhibition provisions permit recovery for ***economic*** damages only. *Ivory*, 2009 U.S. Dist. LEXIS 90735, at *22; *De Atley v. Victoria's Secret Catalogue, LLC*, 876 So. 2d 112, 115 (La. Ct. App. 2004) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002)). The redhibition statute provides for recovery against "redhibitory defects" as follows:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not

have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

LA. CIV. CODE ANN. art. 2520.

Plaintiffs here have failed to bring their express and implied warranty claims against the Moving Defendants under the LPLA (in the case of KPT and Knauf Gips) or the redhibition provisions of the Louisiana Civil Code.[7]   Therefore, the claim against the Moving Defendants for breach of express and/or implied warranties fails as a matter of law.

> **c.    Plaintiffs fail to state a claim for breach of the implied warranty of fitness for a particular purpose.**

Under Louisiana law, the implied warranty of fitness for a particular purpose likewise arises under the state's redhibition provisions, which permit recovery for pecuniary damages and not for personal injury damages as are claimed here.  (*See* Compl. at ¶ 268); LA. CIV. CODE ANN. art. 2524 ("When the seller *has reason to know* the *particular use* the buyer intends for the thing, or the buyer's *particular purpose* for buying the thing, and that the buyer is *relying* on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose") (emphasis added).  Plaintiffs fail to plead a claim for breach of fitness under redhibition.  (*See* Compl. at ¶ 259).

Not only have Plaintiffs failed to state a cause of action under the redhibition provisions, as required to obtain economic damages against Moving Defendants, but they have also failed to plead the required elements of a claim of breach of the implied warranty of fitness under the

---

[7] The Louisiana legislature has not adopted Article 2 of the Uniform Commercial Code, governing the sale of "goods" as defined therein.

- 15 -

redhibition statute.  LA. CIV. CODE ANN. art. 2524; (*see* Compl. at ¶ 259 ("The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) … .")).  Thus, no claim for breach of the implied warranty of fitness under the redhibition statute can be inferred.  Indeed, nowhere in the Complaint do Plaintiffs allege that the Moving Defendants were made aware of Plaintiffs', or any buyer's, intent that the drywall at issue be used for a "particular purpose," nor that Plaintiffs relied upon any buyer's expertise to purchase such drywall for that specific and non-ordinary use.  An allegation of reliance on the seller's skill or judgment is essential to the claim under the redhibition statute, and that, too, is lacking here.  *Downs v. Hammett Props.*, 899 So. 2d 792, 796 (La. Ct. App. 2005) (affirming trial court's dismissal, without leave to amend petition, of redhibition claim under 2524 where plaintiff failed to allege reliance on skill or judgment of the seller or its agent); *Fontenot v. Saxby*, No. 09-1210, 2010 La. App. LEXIS 495, *14 (La. Ct. App. Apr. 7, 2010) (same on summary judgment). Thus, Plaintiffs have failed to plead a claim for breach of the warranty of fitness for a particular purpose.

For these reasons, the Court should dismiss Count III with respect to the Moving Defendants.

### E.     Plaintiffs Fail To State A Claim For Private Nuisance (Count IV).

Plaintiffs purport to bring a common law nuisance action against the Moving Defendants, a claim that is completely inappropriate and that merely repackages the negligence claim (Count I) against the Moving Defendants.  (Compl. at ¶¶ 269-275).

Plaintiffs are barred from bringing an action for private nuisance against KPT and Knauf Gips, given that the LPLA provides their exclusive remedy for harm resulting from an allegedly

defective product of a manufacturer defendant.  LA. REV. STAT. ANN. art. 9:2800.52; (Compl. at ¶¶ 262-268).

Furthermore, the common law of nuisance has no binding, precedential value in the courts of Louisiana, and thus the claim likewise fails with respect to the Moving Defendants. *Rodrigue v. Copeland*, 475 So. 2d 1071, 1078 (La. 1985).  Nuisance law does, "to some extent," correspond with the obligations of "neighborhood" established by Louisiana Civil Code sections 667 through 669, in which the tort of nuisance is typically grounded.  *Rodrigue*, 475 So. 2d at 1078; *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 609 (E.D. La. 2006).  The Code provides, in part:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his **neighbor** of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his **neighbor** of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. …

LA. CIV. CODE ANN. art. 667 (emphasis added).

Courts interpreting Article 667 have established beyond a doubt that "[t]he statute applies only in the case of damage done to **neighbors**."  *Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 690 (E.D. La. 2006) ("*Barasich I*") (dismissing claims brought by parties who owned land that was not in "proximity" to the source of the alleged nuisance because they could not demonstrate that "neighbor" under Article 667 could encompass a party whose property is physically remote from that of the defendants); *Barasich v. Shell Pipeline Co.*, 2006 U.S. Dist. LEXIS 84389, *26 (E.D. La. Nov. 20, 2006) ("*Barasich II*") (quoting *Inabnett v. Exxon Corp.*, 642 So.2d 1243, 1251-52 (La. 1994)) (holding that liability under Article 667

arises only "when activity by one party holding a right to immovable property has caused damages to a party holding a right to a ***neighboring property***'"); *Turner*, 234 F.R.D. at 608 (Article 667 thus "provides that a landowner [i.e., proprietor[8]] is liable for any activity ***on his property*** that would deprive his ***neighbor*** of enjoyment of his property or cause damage to him, when the [proprietor] knew or reasonably should have known of the potential for damage, when that damage could have been avoided by the exercise of  reasonable care, and when the [proprietor] failed to exercise reasonable care.") (emphasis added).

Thus, where the plaintiff (or class) fails to allege a neighbor–proprietor relationship, dismissal of the private nuisance claim is appropriate.  *Barasich II*, 2006 U.S. Dist. LEXIS 84389, at *26 (interpreting "private nuisance" claims under Article 667 and dismissing property owners' claims for alleged resulting from rupture of defendant's crude oil pipeline for private nuisance because, "[w]hile it may be conceivable that some property owners might be able to show they were in fact 'neighbors' within the meaning of article 667, that is not what the putative class has pled in this case.").

Here, even if the LPLA did not bar the private nuisance claim with respect to KPT and Knauf Gips, Plaintiffs could not make out a claim against Moving Defendants under Article 667. Plaintiffs do not allege the cause of action against a "neighbor" or proprietor of a neighboring property.  *See* LA. CIV. CODE ANN. art. 667.  Furthermore, even if a neighboring relationship could be established, Plaintiffs cannot meet the requisite pleading standard because the Complaint is devoid of support for the conclusory allegations that barely list the elements of a nuisance claim.

---

[8] The term "proprietor" include lessees as well as landowners. *Butler v. Baber*, 529 So. 2d 374, 379 (La. 1988).

Thus, the private nuisance claims are subsumed by the LPLA and otherwise are not actionable under Louisiana law.  The Court should therefore dismiss Count IV with respect to the Moving Defendants.

F.   **Plaintiffs Fail To State A Claim For Negligent Discharge Of A Corrosive Substance (Count V).**

Once again, Plaintiffs hope that by clever wordplay and novel repackaging, their bare and conclusory allegations of negligence and strict liability will garner the force of a cognizable claim.  (Compl. at ¶¶ 269-275).  Plaintiffs here purport to plead "negligent discharge of a corrosive substance" as a cause of action in addition to their negligence claim (Count I).  The claim is duplicative.  *See Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 469 (5th Cir. (Tex.) 2001) (noting that plaintiffs pleaded "negligence, ***including*** negligent discharge of saltwater") (emphasis added).  Furthermore, such a claim would appear to apply only where a manufacturer releases a "corrosive substance" from its premises into the surrounding area.  *Id.* (noting that plaintiffs alleged that defendant operated an oil facility on Big Creek Ranch and that "various lines, tanks, and wells have ruptured, leaked, and overflowed releasing pollutants, including saline substances" onto Big Creel Ranch); *Florida Specialty, Inc. v. H2 Ology, Inc.*, 742 So. 2d 523, 527 (Fla. Ct. App. 1999).  Such facts are not alleged here.  The negligent discharge claim is unrecognized, has been inadequately pleaded, and duplicative of the negligence claim (Count I).  As such, the Court should dismiss the Count V with respect to KPT.

Plaintiffs are barred from bringing negligence claims, given that the LPLA provides their exclusive remedy against a manufacturer.  La. Rev. Stat. Ann. art. 9:2800.52.  Thus, the negligent discharge claim is subsumed by the LPLA or otherwise is not actionable and therefore must be dismissed.  However, even if such Plaintiffs somehow could plead around the LPLA to state causes of action sounding in negligence, Louisiana does not appear to recognize an

independent cause of action for negligent discharge of a corrosive substance.   The single published judicial opinion (in any jurisdiction) recognizing a common law claim for "negligent discharge of a corrosive substance" came from a Florida court and suggests that, in addition to showing the elements of a negligence action, the plaintiffs must also allege that the defendant–manufacturer released a corrosive substance from its premises and thereby caused injury to personal property of another.  *Florida Specialty,* 742 So. 2d 523.  Thus, even if the cause were otherwise viable, and even if Louisiana courts were to recognize the negligent discharge claim, the claim could not be sustained against the Moving Defendants because it rests on the allegation that the "negligent discharge" emanated from Plaintiffs' own property.

Alternatively, to the extent the allegations are sufficient to state a claim, it is duplicative of the negligence claim (Count I) and should therefore be stricken.  *See Ellis v. Georgia-Pacific Corp.*, 550 So. 2d 1310, 1316 (La. Ct. App. 1989) (equating a claim of negligent discharge of a pollutant into a river to a "negligence" claim).  The Court should therefore dismiss Count V with respect to the Moving Defendants.

### G.    Plaintiffs Fail To State A Claim For Unjust Enrichment (Count VI).

Plaintiffs are barred from bringing a claim for unjust enrichment against KPT and Knauf Gips under Louisiana law, given that the LPLA provides their exclusive remedy.  LA. REV. STAT. ANN. art. 9:2800.52; (Compl. at ¶¶ 276-279); *King v. Bayer Pharms. Corp.*, No. 09-0465, 2009 U.S. Dist. LEXIS 125802, *12 (W.D. La. June 8, 2009) ("The LPLA's exclusivity provision further precludes Plaintiffs' claims for unjust enrichment.") (citing *Hilton v. Atlas Roofing Corp.*, 05-4204, 2006 U.S. Dist. LEXIS 30284, *6 (E.D. La. May 17, 2006).

Furthermore, with respect to Knauf USA (and KPT and Knauf Gips n the event Plaintiffs could somehow circumvent the LPLA's exclusivity provision), the unjust enrichment claim would fail.  Codified as Louisiana Civil Code article 2298, unjust enrichment is a remedy of last

resort and "is only applicable to fill a gap in the law where no express remedy is provided." *Board of Supervisors of La. State Univ. v. Louisiana Agricultural Fin. Auth.*, 984 So. 2d 72, 81 (La. Ct. App. 2008) (citing *Louisiana Natl. Bank of Baton Rouge v. Belello*, 577 So. 2d 1099, 1102 (La. Ct. App. 1991); LA. CIV. CODE ANN. art. 2298). Failure to exercise available remedies will not give rise to the claim. *Louisiana Agriculture*, 984 So. 2d at 81 (concluding that an unjust enrichment remedy was barred because plaintiff had had statutory remedies through which it could "could have pursued collection of the monies owed to it" and that plaintiff's failure to pursue such remedies did not give rise to recovery in unjust enrichment).

Given the allegations in the present case, an unjust enrichment theory affords Plaintiffs no relief under Louisiana law. Far from claiming they lack an adequate legal remedy, Plaintiffs have filed a multitude of statutory and common law claims against the Moving Defendants. Unjust enrichment will not stand as a failsafe for Plaintiffs in the event that they cannot prevail on those claims. Thus, the unjust enrichment claims are subsumed by the LPLA or are otherwise not actionable and therefore must be dismissed.

Given Plaintiffs' inability to state a claim for unjust enrichment, the Court should dismiss Count VI with respect to Moving Defendants.

### H. Plaintiffs Fail To State A Claim For Violation Of Consumer Protection Acts (Count VII).

Plaintiffs attempt to invoke state statutes designed to protect consumers from fraud and unfair trade practices without making the requisite specific factual allegations. (*See* Compl. at ¶¶ 280-284). Plaintiffs, as already explained, are barred from bringing a class action here in any case but are specifically barred from bringing class actions under four of the seven state statutes they invoke in Count VII, namely, those of Alabama, Louisiana, Mississippi, and Virginia. Furthermore, Plaintiffs flagrantly ignore additional bars to individual and class action suits under

these statutes and fail to allege they have met the prerequisites mandated by the respective state legislature and courts. Finally, Plaintiffs fail to allege a sufficient (or indeed any) nexus between their claims and the states so as to justify application of the statutes. For these reasons, the Court should dismiss the claims with respect to the Moving Defendants.

      1.      **Plaintiffs Are barred From Bringing Class Actions Under The Alabama, Louisiana, Mississippi, And Virginia statutes (Count VII).**

Plaintiffs each purport to "bring this class action on behalf of themselves and all other similarly situated individuals and entities that have owned, own, or acquired homes, residences, or other structures physically located in the United States containing defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, marketed, or sold by Defendants … ." (*See, e.g.*, Compl. at 3). However, four of the seven statutes Plaintiffs invoke in this purported class action at issue will not permit a class action lawsuit. (*Id.* at ¶ 281).

Class actions are not permitted under the ***Alabama Deceptive Trade Practices Act*** ("ADPTA"). ALA. CODE 1975 § 8-19-10(f); *University Fed. Credit Union v. Grayson*, 878 So. 2d 280, 285 at n.2 (Ala. 2003); *Ex parte Exxon Corp.*, 725 So. 2d 930, 933 (Ala. 1998). Nor are class actions permitted under the ***Louisiana Unfair Trade Practices Act*** ("LUTPA"). LA. REV. STAT. art. 51:1409; *Morris v. Sears, Roebuck & Co.*, 765 So. 2d 419 (La. Ct. App. 2000); *Maldonado v. Ochsner*, 237 F.R.D. 145 (E.D. La. 2006), *aff'd* 493 F.3d 521 (5th Cir. (La.) 2007). Likewise, the ***Mississippi Consumer Protection Act*** ("MCPA") prohibits class actions. MISS. CODE ANN. § 75-24-15(4); *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655 (S.D. Miss. 2007) (barring consumers' purported class action, ruling that "because Section 75-24-15(4) is a substantive rather than procedural rule, it must be applied under the *Erie* doctrine to bar the plaintiffs' class action claim"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005). Finally, the ***Virginia Consumer Protection Act*** ("VCPA") does not

expressly authorize a class action, as would be required under Virginia law.  VA. CODE ANN. §§ 59.1-196 *et seq.*; *Nationwide Mut. Ins. Co. v. Housing Opportunities Made Equal, Inc.*, 259 Va. 8, 23 (Va. 2000) ("Virginia is not a class-action state, and an individual or entity does not acquire standing to sue in a representative capacity by asserting the rights of another, *unless authorized by statute to do so*.") (emphasis added); *see also America Online, Inc. v. Superior Ct. of Alameda County*, 90 Cal. App. 4th 1, 17 (Cal. Ct. App. 2001) (noting Virginia consumer law's "hostility to class actions").  Thus, Plaintiffs, to the extent they style themselves a "class," cannot bring a class action under those states' laws.

**2.      Plaintiffs Fail To State A Claim Under The Alabama Deceptive Trade Practices Act Because They Have Failed To Make Written Demand And Have Impermissibly Filed Concurrent Common Law Claims (Count VII).**

Plaintiffs' claims under the ADTPA must fail.  (Compl. at ¶ 281).  As already noted, the statute bars class actions.  Further, Plaintiffs (1) have not satisfied ADPTA's fifteen-day pre-filing writing requirement; and (2) are barred from filing concurrent ADPTA and common law claims under ADPTA's mutual exclusivity provision.

**a.      Plaintiffs did not make a written demand in compliance with ADPTA and thus have failed to state a claim.**

Plaintiffs have failed to state a claim under the ADTPA because they have ignored the requirement to make written demand on KPT for relief at least fifteen days before filing their Complaint.  *See* ALA. CODE 1975 § 8-19-10(e) (requiring plaintiff to make "written demand for relief" on defendant "at least 15 days prior to the filing of any action under this section").  Such written demand additionally required Plaintiffs to "identify[] the claimant and reasonably describe[e] the unfair or deceptive act or practice *relied upon* and injury suffered."  *Id*.  Plaintiffs have failed to allege that they made such written notice in their Complaint or reasonably describe

their reliance on any unfair or deceptive act, let alone describe the "unfair or deceptive act or practice." (*See* Compl. at ¶ 282).

Plaintiffs make no representation of having made a written demand to Knauf at least fifteen days before they filed their Complaint on December 9, 2009. Alabama courts have consistently dismissed claims of plaintiffs for failure to comply with the notice requirement. *See*, *e.g.*, *Nimbus Technols., Inc. v. Sunndata Prods., Inc.*, No. 04-CO00312-W, U.S. Dist. LEXIS 46509, *61 (N.D. Ala. 2005) (holding that plaintiff "procedurally waived its right to pursue a claim" because "prior to filing suit, [the plaintiff] failed to send the written demand … which is condition precedent to filing suit under the Alabama Deceptive Trade Practice Act"); *Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997) (finding that plaintiffs "failed to state a claim under the Alabama DTPA" because "[t]hey have not complied with the pre-filing demand requirement imposed by the statute"); *Givens v. Rent-a-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988) (granting defendant's motion to dismiss because "plaintiff failed to communicate to defendants a written demand for relief, as is required by § 8-19-10(e) of the [ADPTA]"). Accordingly, the Court should dismiss the ADPTA claim for this reason alone.

Furthermore, Plaintiffs make no representation that they "reasonably describe[d]" the alleged deceptive practice and injury under the ADPTA. The Complaint, which cannot be the separate statutory notice that Plaintiffs were required but failed to provide, does not even attempt to cure that defect merely alleging a two-line description of the claims under the ADPTA and several other state statutes. (Compl. at ¶ 282). Plaintiffs only "actual damages" as a result of an unspecified "violation" of the several state statutes. (*Id.* at ¶ 283). Such a description, even had it been separately provided before the suit was filed, would not be "reasonable" as a matter of

law.  In *Givens*, a letter expressing the plaintiff's intent to institute civil proceedings against the defendant if no settlement could be reached was deemed insufficient to meet the reasonableness requirement of § 8-19-10(e) where it "fail[ed] to reasonably describe the unfair or deceptive trade practice, or the injury suffered."   720 F. Supp. 160, 162 (S.D. Ala. 1988); *see also Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997) (noting that the plaintiffs' "failure to reasonably describe the unfair or deceptive practice in a timely letter is fatal to their claim under the Alabama law").

In sum, given that Plaintiffs make no allegations that they complied with the ADPTA's pre-filing demand requirement or reasonably described the purported unfair or deceptive acts, the claim under the ADPTA should be dismissed.

> **b.**      **Plaintiffs are barred from filing an action under the ADPTA because the ADPTA's mutual exclusivity provision prohibits concurrent statutory and common law claims.**

Plaintiffs' claim under ADPTA should also be dismissed because Plaintiffs have impermissibly filed concurrent common law claims.   Section 8-19-15(a) ("Civil Remedies; mutually exclusive") requires that a plaintiff choose between statutory and common law claims:

> The civil remedies provided [in the ADPTA] and the civil remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts, or fraudulent concealment are ***mutually exclusive***.   An election to pursue the civil remedies prescribed by [the ADPTA] ***shall exclude and be a surrender of all other rights and remedies available at common law, by statute or otherwise***[.]

ALA. CODE 1975 § 8-19-15(a) (emphasis added).   As the Alabama Supreme Court has confirmed, this "mutual exclusivity" provision prohibits a party from filing concurrent claims under ADPTA and the common law, as Plaintiffs have done here.  *Ford Motor Co. v. Sperau*, 708 So. 2d 111, 122 at n.7 (Ala. 1997) ("the remedies under the [ADPTA] and those otherwise available are mutually exclusive"); *Hines v. Riverside Chevrolet-Olds, Inc.*, 655 So. 2d 909, 917

(Ala. 1994) ("[Section] 8-19-15 … makes it clear that the remedies available under that Act and the remedies available under the common law or other statutory law are 'mutually exclusive'"); *see also Cheminova Am. Corp. v. Corker*, 779 So. 2d 1175, 1183 (Ala. 2000) (noting that under section 8-19-15, "a plaintiff can elect whether to sue for the remedies provided under the Act *or* to sue for remedies allowed by the common law") (emphasis added).

Plaintiffs' claims under the ADPTA, and/or the common law claims alleged herein to the extent that Alabama law applies thereto, should be dismissed with respect to the Moving Defendants.

### 3. Plaintiffs Fail To State A Cause Of Action For Violation Of The Florida Deceptive And Unfair Trade Practices Act (Count VII).

Plaintiffs purport to bring a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*   (Compl. at ¶ 281).   This claim also fails as a matter of law.   The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade of commerce," FLA. STAT. § 501.204(1).   To state a claim under FDUTPA, a plaintiff must allege:   (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.   *Rollins, Inc. v. Butland*, 932 So. 2d 1172, 1180 (Fla. Ct. App. 2006).

Claims brought under the FDUTPA must be pled "'with the level of particularity required under FED. R. CIV. P. 9(b).'"   Furthermore, the damages under FDUTPA must be limited to the actual damages relating to the property which was the subject of the consumer transaction.   *See* FLA. STAT. § 501.211(2).   Accordingly, courts interpreting the FDUTPA have consistently dismissed incidental or consequential recovery for a FDUTPA violation.

Here, Plaintiffs fail to state facts with particularity that give rise to a reasonable inference that Moving Defendants committed any unfair or deceptive acts by which the Plaintiffs were

aggrieved.   Furthermore, Plaintiffs impermissibly claim damages to property other than that which is the subject of the relevant consumer transaction, *i.e.*, the alleged sale or distribution of drywall by Moving Defendants.  Plaintiffs instead allege incidental and consequential damages, which are not recoverable under the FDUTPA.  Accordingly, Plaintiffs' claims under FDUTPA should be dismissed.

> **a.      Plaintiffs Fail To Allege Any Facts To Support An Inference That Moving Defendants Committed Any "Unfair Or Deceptive Acts" Under The FDUTPA.**

As an initial matter, Plaintiffs fail to allege an "unconscionable" or an "unfair" or "deceptive" act or practice as defined by the FDUTPA.  FLA. STAT. § 501.203(3).  A deceptive act or practice under FDUTPA is a representation, omission, or other act or practice that is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment. *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773 (Fla. 2003).  It is well settled that a fraud claim under the FDUTPA must be pled "'with the level of particularity required under FED. R. CIV. P. 9(b).'"  *See, e.g., Lantz v. American Honda Motor Co.*, 2007 U.S. Dist. LEXIS 34948 (N.D. Ill. May 14, 2007) (quoting *Zlotnick v. Premier Sales Group, Inc.*, 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006)) (applying the FDUTPA); *Stires v. Carnival Corp.,* 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002); *Florida Digital Network v. Northern Telecom, Inc.*, 2006 U.S. Dist. LEXIS 61983, *2 (M.D. Fla. Aug. 30, 2006).

To comply with the requirement of Rule 9(b), Plaintiffs must further set forth what statements were made, when they were made, the content and manner in which they misled plaintiff, and what defendants obtained as a result.  *See e.g., Garcia v. Santa Maria Resort, Inc.,* 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007) (citing *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

Here, Plaintiffs fail to satisfy these requirements.  Again, Plaintiffs only ambiguously assert that they "have suffered actual damages" as a result of Defendants' acts and omissions including "the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall." (Compl. ¶ 282). Plaintiffs only summarily assert that Moving Defendants made "knowing misrepresentations" in a manner that was misleading.  (*Id*.)  Plaintiffs' claims add up, at most, to a claim for negligence rather than "unconscionable" or "unfair" or "deceptive" acts or practices.  Plaintiffs have thus failed to meet the applicable particularity requirements.  Because Plaintiffs have failed to allege the first element of an FDUTPA claim, the claim fails as a matter of law.

### b. Plaintiffs seek damages that are not recoverable under the FDUTPA.

Plaintiffs' FDUTPA claim also fails to the extent that it seeks damages for which the statute affords no relief.  Though acknowledging that Plaintiffs only qualify for actual damage under FDUTPA, Plaintiffs nonetheless primarily claim consequential and incidental damages, rather than actual damages as required under the FDUTPA.  (Compl. ¶ 281).

The damages under FDUTPA must be limited to the actual damages relating to the property which was the subject of the consumer transaction.  *See* FLA. STAT. § 501.211(2) ("[i]n an action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover *actual damages*…") (emphasis added); FLA. STAT. § 501.212(3) ("This part *does not* apply to: … a claim for *damage to property* other than the property that is the subject of the consumer transaction.") (emphasis added).  *Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. 3d Ct. App. 1984); *see also Gorran v. Atkins Nutritionals, Inc*., 464 F. Supp. 2d 315, 328-29 (S.D.N.Y. 2006), *aff'd on other grounds*, 279 F. Appx. 40 (2d Cir. 2008) (applying the FDUTPA), *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 7 (Fla. Ct. App. 2009).  In *Rollins,*

*Inc. v. Heller*, the Court expressly held that the "actual damages" provision of the FDUTPA, Section 501.211(2), permits a consumer to recover only the difference between the market value of the product or service as contracted for and the market value of the product or service as received. *Rollins, Inc. v. Heller*, 454 So. 2d 580 at 584-595; *see also Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. Ct. App. 2004) ("In the context of FDUTPA, 'actual damages' have long been defined as "'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'") Even "when the product is rendered valueless as a result of the defect – then the purchase price is the appropriate measure of actual damages." *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So.2d 311, 314 (Fla. Ct. App. 1998).

Florida courts have consistently awarded actual damages under the FDUTPA while denying claims for consequential, incidental or punitive damages to other property attributable to the consumer's use of such goods or services. *See, e.g.*, *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Ct. App. 2006); *Schauer*, 5 So. 3d at 7; *see also, e.g.*, *Smith v. 2001 S. Dixie Hwy., Inc.*, 872 So. 2d 992, 994 (Fla. Ct. App. 2004) ("Actual damages, as pertaining to FDUTPA, does not include 'actual consequential' damages"); *Orkin Exterminating Co., Inc. v. DelGuidice*, 790 So. 2d 1158, 1162 (Fla. App. 2001) (same); *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. Ct. App. 1985) (holding that the FDUTPA allows recovery for diminished value of goods received but does not authorize recovery of special or consequential damages), *Fort Lauderdale Lincoln Mercury*, 715 So. 2d at 314.

Here, Plaintiffs impermissibly seek relief for a myriad of other personal and real property damage, which go far beyond the "actual damages" as measured by these established precedents. Specifically, Plaintiffs seek damages for the damages "including, but not limited to":

> costs of inspection; costs and expenses necessary to remedy, replace and remove … other property that has been impacted; lost value or devaluation of their homes, residences or structures and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

(Compl. at ¶ 162). These claims for damages directly contravene the plain language of the FDUTPA and the precedents cited above, which limit compensation to actual damages, which here, at most, amount to the fair market value of the drywall for which the purchaser contracted. As in *Rollins,* there is no basis for holding the defendants liable for the entire contents of the house where they never undertook to guarantee the protection of such items and where the statute does not afford a remedy for consequential damages.

For these reasons, Plaintiffs cannot make out a claim for violation of the FDUTPA, and thus the Court should dismiss this claim with respect to the Moving Defendants.

### 4. The LPLA Sets Forth The Exclusive Theories Of liability Against Manufacturers And Thus Plaintiffs' Claims Under LUTPA As To KPT and Knauf Gips fail As A Matter Of Law (Count VII).

Plaintiffs purport to bring a claim under the LUTPA, LA. REV. STAT. ANN. arts. 51:1401 *et seq*. (Compl. at ¶ 281). As already noted, the statute bars class actions and, with respect to KPT and Knauf Gips, this claim is barred under the LPLA's exclusivity provision. LA REV. STAT. ANN. art. 9:2800.52; *Bladen*, 487 F. Supp. 2d at 767 ("[t]he legislature, with full knowledge of the LUTPA, unquestionably enacted the LPLA statutory declaration of exclusive liability in the LPLA and ***made no exception for the LUTPA***") (emphasis added); *Avondale Indus., Inc. v. Tyco Valves and Controls, Inc.*, 2:06cv2126, 2007 U.S. Dist. LEXIS 20329, *4-5 (E.D. La. 2003) (dismissing LUTPA claims because it is precluded by the LPLA).

Thus, Count VII fails as a matter of law as to KPT and Knauf Gips.

> **5.     Plaintiffs Fail To State A Claim Under The Mississippi Consumer Protection Act Because They Have Failed To Attempt Resolution And Fail To Meet The Requisite Pleading Standards (Count VII).**

Plaintiffs fail to state a claim for violation of the MCPA, MISS. CODE. ANN. §§ 75-24-1, *et seq.* (Compl. at ¶ 281). Class actions are not permitted under the MCPA, which prohibits "unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce." MISS. CODE. ANN. § 75-24-5. Plaintiffs have failed to meet the statutory prerequisite of "first" making "a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." *Id.*

Moreover, Plaintiffs have failed to state a claim under the requisite pleading standard. "To state a claim under the MCPA … Plaintiffs must plead **with particularity** pursuant to Rule 9(b)." *Mayberry v. Bristol-Myers Squibb Co.*, 07-942, 07-1099, 2009 U.S. Dist. LEXIS 121115, *21 (D.N.J. Dec. 30, 2009). To meet this heightened pleading requirement under Rule 9(b) in accord with the Fifth Circuit precedent, "[a]t a minimum, … requires that the plaintiff allege the time, place and contents of the alleged misrepresentation, as well as the identity of the person making [it]." *Keith v. Stoelting, Inc.*, 915 F.2d 996, 1000 (5th Cir. 1990); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citations omitted) ("… Rule 9(b) requires 'the who, what, when, where, and how' to be laid out").

> **a.     Plaintiffs have failed to attempt resolution through informal dispute resolution and thus have failed to meet a prerequisite to filing a private action under the MCPA.**

Plaintiffs also fail to state an individual cause of action under the MCPA. (Compl. at ¶ 281). Contrary to statutory requirements, Plaintiffs purport to bring the cause of action without first attempting to resolve the dispute. *See* MISS. CODE ANN. § 75-24-15(2). The MCPA requires that "[i]n any private action brought under this chapter, the plaintiff must have first made a

reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." *Id.* Plaintiffs make no allegations that they attempted any form of dispute resolution whatsoever.

Automatic dismissal of a claim under the MCPA is warranted where plaintiffs have failed to allege that they meet this prerequisite. *Taylor v. Southern Farm Bureau Cas. Co.*, 954 So. 2d 1045 (Miss. Ct. App. 2007). In *Taylor*, court enforced this procedural requirement and affirmed the dismissal of an insured's MCPA claim for failure to allege any attempt to satisfy the informal dispute settlement requirement of Section 75-24-15(2). *Id.* at 1049 ("The record in this case is devoid of any reference to [plaintiff's] attempting to resolve this issue through an informal settlement program, and we can only conclude that no such attempt was made."); *see also Montalto v. Viacom Int'l, Inc.*, 545 F. Supp. 2d 556 (S.D. Miss. 2008) *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 668 (S.D. Miss. 2007) (enforcing the informal dispute settlement requirement of Section 75-24-15(2)).

Here, Plaintiffs purport to assert a private cause of action based on violation of the MCPA. The Complaint alleges no attempt by Plaintiffs to resolve such a claim through any informal dispute settlement program under the auspices of the Attorney General's office prior to filing as is required by Section 75-24-15(2). Accordingly, the claim should be dismissed.

### b.    Plaintiffs' MCPA claim fails to allege sufficient facts to meet the requisite pleading standards.

The MCPA clearly authorizes private rights of action only to remedy certain violations. *See* MISS. CODE ANN. §§ 75-24-15. The statute provides that "any person who … suffers any ascertainable loss … as a result of the use of [*sic*] employment … of a method, act or practice prohibited by Section 75-24-5 may bring an action at law … to recover such loss of money or damages for the loss of such property … ." *Id.* at § 75-24-15(1) (emphasis added). However,

Section of 75-24-5 MCPA does not allow for private causes of action to remedy all manner of allegedly unfair methods of competition or unfair or deceptive trade practices.[9]  Section 75-24-5(2) identifies a specific list of prohibited acts and prohibits persons from acts such as "[m]isrepresent[ing] the source, sponsorship, approval, or certification of goods or services" and "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  MISS. CODE. ANN. § 75-24-5(2)(b), (g); *see also Taylor*, 954 So. 2d at 1048 (describing allegations brought under subsections (g) and (h) of section 75-24-5(2) as "fraud by omission" but finding that an insurance policy is not "merchandise" within the meaning of the MCPA).  Here, Plaintiffs barely list the elements of the claim, and their conclusory statements fail to allege what "acts and omissions" or "misrepresentations" the Moving Defendants made, let alone how the drywall at issue differed from what it was represented to be. (*See* Compl. at ¶ 282).

Even if Plaintiff could meet the prerequisite of MCPA for bringing a private cause of action, dismissal would be warranted for failure to state a claim.  "To state a claim under the MCPA[,] … Plaintiffs must plead with particularity pursuant to Rule 9(b)."  *Mayberry*, 2009 U.S. Dist. LEXIS 121115, at *21.  The specificity requirement of the MCPA is underscored by the fact that the language of Rule 9(b) of the Mississippi Rules of Civil Procedure precisely mirrors its federal counterpart.  *See* MISS. R. CIV. P. 9(b).  Furthermore, Plaintiffs have failed to make the minimum required allegations as to the time, place, and contents of the alleged misrepresentation.  *Keith*, 915 F.2d at 1000; *Benchmark Elecs., Inc.*, 343 F.3d at 724.

---

[9] Under the MCPA, the Mississippi Attorney General may bring an action in the name of the State against a defendant for unfair methods of competition or unfair or deceptive trade practices. MISS. CODE. ANN. § 75-24-9. "Unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited. Action may be brought under Section 75-24-5(1) only under the provisions of Section 75-24-9." *Id.* at § 75-24-5(1).

"[E]lements of common law fraud – namely intentional misrepresentation, detrimental reliance and resultant damages – are also necessary elements of a private action under the consumer protection statutes under which plaintiffs bring their statutory fraud claims." *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*, Nos. 96-3125, 96-1814, 96-3198, 1997 U.S. Dist. LEXIS 24064, *29 (D.N.J. 1997) (citing MISS. CODE ANN. §§ 75-24-5(2)(g), 75-24-15(1)) (dismissing Plaintiffs' product liability claims for failure to state reliance on alleged Defendants' misrepresentation); *see also Mayberry*, 2009 U.S. Dist. LEXIS 121115, at *21.

Here, Plaintiffs fail to allege with particularity any violation specified under Section 75-24-5. The conclusory allegation that "Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States" is a catch-all allegation that is unsupported by any specific facts set forth with the required particularity. (Compl. at ¶ 282). For example, the Complaint fails to provide any facts that would support when, where, how, by whom and to whom the drywall was touted. Conclusory allegations of fraud are not sufficient to survive dismissal for failure to state a claim. *Smith*, 845 F.2d at 1365.

For these reasons, Plaintiffs' claim under the MCPA should be dismissed with respect to the Moving Defendants.

> **6. Plaintiffs Have Failed To State A Claim Under The Texas Deceptive Trade Practices–Consumer Protection Act Because They Have Failed To Provide Written Notice To The Moving Defendants And The Texas Consumer Protection Agency (Count VII).**

Plaintiffs purport to bring a claim under the Texas Deceptive Trade Practices–Consumer Protection Act, ("DTPA"), TEX. BUS. COM. CODE ANN. § 17.41, *et seq.* (Compl. at ¶ 281).

- 34 -

This claim fails as a matter of law owing to Plaintiffs' noncompliance with the notice requirement under the DTPA, and thus the court must abate or dismiss Plaintiffs' action under the DTPA.  (*See* Compl. ¶¶ 280-284).

Under the DTPA, Plaintiffs were required to send notice to the Moving Defendants before filing the cause of action:

> As a prerequisite to filing a suit seeking damages…a consumer *shall give written notice* to the person at least *60 days before filing the suit* advising the person in *reasonable detail* of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses …

TEX. BUS. & COM. CODE ANN. § 17.505(a) (emphasis added).  The purpose of the DTPA's notice provision is "to discourage litigation and encourage settlements of consumer complaints," and, thus, written notice pursuant to 17.505(a) is a mandatory "prerequisite to filing a suit seeking damages" under the DTPA.  *Hines v. Hash,* 843 S.W.2d 464, 468 (Tex. 1992); *see also In Re Behr*, 2006 Tex. App. LEXIS 1588, *7 (Tex. App. Mar. 1, 2006) (noting that a plaintiff's failure to provide pre-suit notice deprives the defendant of its "right to limit [its] damage exposure through an offer of settlement …"); *Ramirez v. Am. Home Prods.*, No. 3-03-155, 2005 U.S. Dist. LEXIS 40577, *10 (S.D. Tex. Sept. 16, 2005) (noting that pre-suit notice is mandatory).  Such notice to the defendant must "comply with the statutory insistence upon reasonably certain specificity" by advising it "in reasonable detail of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant."  *Hines*, 843 S.W.2d 464, at 469; *see also* TEX. BUS. & COM. CODE § 17.505(a).

The DTPA further requires that, in the event of the plaintiff's failure to provide pre-suit notice, the court shall abate the case and may dismiss the action.  TEX. BUS. & COM. CODE ANN. § 17.505(d); *Miller v. Kossey*, 802 S.W.2d 873 (Tex. App. 1991); *Southwestern Bell Tel. Co. v.*

*DeLanney,* 809 S.W.2d 493, 495 (Tex. 1991) ("Because of his failure to comply with the notice requirements of the DTPA … [the] entire cause of action under the DTPA … was dismissed …"); *Hines*, 843 S.W.2d at 469 ("If a plaintiff fails to give notice while the action is abated for that purpose, it should be dismissed.").

As a prerequisite to the "class action" here, Plaintiffs were required to send to Texas's consumer protection division a copy of pre-suit notice. TEX. BUS. & COM. CODE ANN. § 17.501 ("A consumer filing an action under Section 17.50 that is *to be maintained as a class action* shall send to the consumer protection division … a copy of the notice … and … a copy of the petition … .") (emphasis added).

Here, Plaintiffs do not allege that they complied with the prerequisites of providing timely written notice to the Moving Defendants or sending a copy of such notice and the petition to the Texas consumer protection division as required to maintain a private class action. Nowhere does the Complaint itself provide a level of detail to meet the formality and substance required for pre-suit notice to the defendant under the DTPA. Plaintiffs' entire description of their DTPA claims consists of a summary assertion that they "have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts."  (Compl. at ¶¶ 282-283).

Because Plaintiffs have not complied with the DTPA's mandatory pre-filing notice requirements, the claim under the DTPA fails as a matter of law.  The Court should therefore dismiss the claim with respect to the Moving Defendants.

> **7.**   **Plaintiffs Fail To State A Claim Under The North Carolina Consumer Protection Act Because The Sole North Carolina Resident Cannot Bring A Class Action And Because Plaintiffs Fail To Show The Requisite Nexus To North Carolina (Count VII).**

Plaintiffs claim they are entitled to relief under a North Carolina statute despite stating no facts whatsoever that would implicate the protections of North Carolina law.  Plaintiffs purport

to bring a claim under the North Carolina Consumer Protection Act ("NCCPA"), N.C. GEN. STAT. § 75-1, *et seq.* (Compl. at ¶ 281). However, no Plaintiff is alleged to own property in North Carolina, let alone property in North Carolina containing the allegedly defective drywall. (*Id.* at ¶¶ 3, 9).

The NCCPA claim must fail as a matter of law because such a cause of action lacks a sufficient nexus with North Carolina. By its plain language, the statute is inapplicable, for it affords relief only where the plaintiff alleges "conspiracy in restraint of trade or commerce ***in the State of North Carolina.***" N.C. GEN. STAT. § 75-1.1 (emphasis added); *see Market Am. Inc. v. Rossi*, 1:97-CV-00891, 1999 U.S. Dist. LEXIS 9793, *56-57 (M.D.N.C. 1999) (discussing nexus requirement); *Jacobs v. Central Trans., Inc.* 891 F. Supp. 1088, 1111 (E.D.N.C. 1995), *rev'd in part on other grounds*, 83 F.3d 415 (4th Cir. 1996) (same).

Plaintiffs allege no facts that would tie a claim of faulty drywall in their Louisiana homes with the State of North Carolina so as to make the statute applicable. Likewise, Plaintiffs allege no trade or commerce in North Carolina in which the Moving Defendants may have partaken and that led to a conspiracy in restraint of trade or commerce. The claim requires a showing of a sufficient "nexus" with the State of North Carolina. *Market Am.*, 1999 U.S. Dist. LEXIS 9793, at *57. "Under North Carolina law, in order for … § 75-1 to apply, North Carolina must have a ***substantial relationship*** to the particular conduct giving rise to the unfair and deceptive trade practices claim." *Id.* (emphasis added). In *Market America*, the court applied the "significant relationship" test to determine whether the cause of action had sufficient nexus with North Carolina and concluded it did because (1) "the agreement [was] issued from North Carolina," (2) the alleged deceptive conduct "occurred in North Carolina," and (3) the defendants, with whom the plaintiffs directly did business, "were headquartered in North Carolina." *Id.*

- 37 -

No nexus whatsoever is alleged here.  Plaintiffs cannot point to an agreement executed in North Carolina, nor is there any basis from which the Court could reasonably infer that the Moving Defendants engaged in any deceptive conduct in North Carolina.  Indeed, a contrary conclusion is reasonable – namely, that any drywall used in Plaintiffs' homes was purchased in Louisiana.  Nor are the Moving Defendants alleged to have any "headquarters" or, indeed, any business presence whatsoever in North Carolina.  Simply put, Plaintiffs allege no facts from which the Court could reasonably infer that the drywall used in their homes, or the transaction in which that drywall was acquired, or the locus of the Moving Defendants' business activities, bears any relationship to North Carolina.  Thus, Plaintiffs fail to allege a sufficient "nexus" with that state to justify bringing a claim under the NCCPA.  *See Market Am.*, U.S. Dist. LEXIS 9793 at *57; *Jacobs*, 891 F. Supp. 1088 at 1111.

Given the lack of alleged content of any "misrepresentation" by the Moving Defendants, the claim bears no resemblance to the type of injury the North Carolina statute was designed to prevent.  (Compl. at ¶ 282).  Importantly, "[a] simple breach of contract, even if intentional, does not amount to a violation of [N.C. GEN. STAT. § 75-1.1]; a plaintiff must show ***substantial aggravating circumstances*** attending the breach to recover under the Act … ."  *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. (N.C.) 1989) (emphasis added).  Here, Plaintiffs do not even attempt to make such a showing.  (*See* Compl. at ¶ 282).

For these reasons, Plaintiffs fail to state a claim under the NCCPA, and this Court should dismiss the claim with respect to the Moving Defendants.

> **8.**     **Plaintiffs Fail To State A Claim Under the Virginia Consumer Protection Act Because They Fail To Show A Nexus Between The Purported Claim And The Commonwealth Of Virginia (Count VII).**

In purporting to bring a claim under the VCPA, VA. CODE ANN. §§ 59.1-196 *et seq.*, Plaintiffs once again invoke legislation of a state in which *none* of them is alleged to own property or to reside.  (Compl. at ¶¶ 3, 9, 281).  The VCPA claim fails as a matter of law.

As noted above, the statute does not authorize class actions, as would be required for bringing a class action under Virginia law.  Furthermore, the sale of drywall for the use in homes is not the type of "consumer transaction" contemplated by the VCPA, and thus any claim against the Moving Defendants with respect to the allegedly defective drywall is barred.  *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 27 Va. Cir. 62, 63-64 (Va. Cir. Ct. 1992) (barring claim involving purchase of fire-resistant treated plywood ("FRTP") because it was merely a building material used in homes).  In *Winchester Homes*, the appellate court upheld the lower court's finding that "sales of FRTP between the Defendants and [the home builder] were not consumer transactions as contemplated by the Act":

> The Defendants' commercial transactions with Winchester do not fall within the ambit of the Act's restrictions on consumer transactions. Specifically, as sold by the Defendants, the *FRTP was to be used as component parts in the construction of homes and not "primarily for personal, family or household purposes"* as envisioned by the Act.

27 Va. Cir. at 63-64 (citing VA. CODE ANN. § 59.1-198(A)(i) (1987 & Supp. 1991)) (emphasis added).

Like the FRTP used to construct the homes in *Winchester Homes*, the allegedly defective drywall here "was to be used as component parts in the construction of homes and not 'primarily for personal, family or household purposes'" and thus the sale is not a consumer transaction of the type contemplated by the VCPA.  *See Winchester Homes*, 27 Va. Cir. at 63-64 (citing VA.

CODE ANN. § 59.1-198(A)(i) (1987 & Supp. 1991)).  Furthermore, there is no allegation that any Plaintiff directly purchased any drywall from the Moving Defendants, and thus there can be no "transaction" of any kind.  Rather, the drywall at issue was allegedly purchased from the Moving Defendants by individuals or entities other than Plaintiffs.  (Compl. at ¶¶ 18, 22).[10]

Plaintiffs additionally cannot show any nexus to Virginia that would justify invoking the VCPA.  Plaintiffs fail to allege that any consumer transaction occurred in Virginia, and the Court has no reasonable basis for inferring that such a transaction occurred given that Plaintiffs neither reside nor are alleged to own property there.  Nor are the Moving Defendants alleged to have any presence whatsoever in the Commonwealth of Virginia.

For these reasons, the Court should dismiss the VCPA claim against the Moving Defendants.

## I.     Plaintiffs Fail To State A Claim For Equitable And Injunctive Relief And Medical Monitoring (Count VIII).

The Complaint fails to allege with any specificity any ***present*** injury allegedly suffered by Plaintiffs that would justify medical monitoring or any other form of injunctive relief and claim only to have been "exposed" to harmful substances.  (Compl. at ¶¶ 290-293).  Such conclusory allegations fall far short of meeting the federal pleading standard.  The requests for other injunctive relief likewise fail, as they are thinly disguised requests for monetary damages and as Plaintiffs have failed to alleged that they will suffer irreparable injury if the equitable relief is not granted.  Therefore, Count XV should be dismissed.

---

[10] Furthermore, the *Winchester Homes* court concluded that actions for misrepresentation under the Act constitute a "personal cause of action which the homeowners could not assign" to the home builder.  27 Va. Cir. at 64.  Thus, there is no basis for a claim against the Moving Defendants by any Plaintiff (or third party) under the VCPA.

Plaintiffs cannot sustain a claim for medical monitoring for future injury as a matter of Louisiana law.  Plaintiffs must allege "actual" injuries to succeed on a medical monitoring claim. *Hillard v. United States*, 06-02576, 2007 U.S. Dist. LEXIS 13610, *15-16 (E.D. La. Feb. 28, 2007).  Ambiguous references to injury and potential health problems are not sufficient to justify the judicial resources that underlie a successful claim for medical monitoring.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level

*Twombly*, 550 U.S. at 555-56, (internal citations and quotations omitted); *See* 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.").

The Complaint fails to allege with any specificity any ***present*** injury allegedly suffered by Plaintiffs.  Instead, the Complaint merely alleges that "Plaintiffs and Class Members … have suffered personal injuries" as a result of alleged exposure to sulfides and "other hazardous chemicals."  (Compl. at ¶ 290).  Nor have Plaintiffs even attempted to state what potential health consequences may require "medical monitoring."  The only allegations that speak to such health consequences are impermissibly vague: "Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment."  (*Id.* at ¶ 2766).  Plaintiffs must allege "actual" injuries to succeed on a medical monitoring claim.  *Hillard*, 2007 U.S. Dist. LEXIS 13610, at *15-16.

Furthermore, Louisiana law requires that a party alleging a claim for medical monitoring aver a nexus between the treatment and the claimed injury:  "Damages do not include costs for

future medical treatment, surveillance, or procedures of any kind unless such treatment services, surveillance, or procedures are directly related to manifest physical or mental injury or disease." LA. CIV. CODE ANN. art. 2315 (1998).  This statute has been interpreted by Louisiana courts as warranting dismissal when, as here, "the plaintiffs' complaint refers to possible future injuries or any future increased risk of injuries not yet manifested."  *Hillard*, 2007 U.S. Dist. LEXIS 13610, at *16.

Louisiana courts are also hesitant to proceed with medical monitoring of a class when the plaintiffs "lack a ***single common*** injury" and the levels of exposure to the alleged hazardous substance may vary significantly.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 107688, *64 (E.D. La. Dec. 29, 2008) (emphasis in original).  Plaintiffs' claims concerning exposure are at best "merely consistent with the material elements" of a medical monitoring claim – even if such a cause of action exists – and fail to "plausibly suggest the elements" in the way that *Twombly* and Louisiana jurisprudence requires.  Plaintiffs' medical monitoring claim therefore should be dismissed.

The Louisiana Plaintiffs' claim for equitable relief must be dismissed as a matter of law. Resorts to equity are barred unless "no rule" governs the case that "can be derived from legislation or custom."  LA. CIV. CODE ANN. art. 4; *Scott v. American Tobacco Co.*, 949 So. 2d 1266, 1275 (La. Ct. App. 2007).  Plaintiffs have alleged claims under recognized tort theories, the LPLA, and Article 2315 of the Louisiana Civil Code.  Because these laws constitute "express law," they preclude Plaintiffs' attempt to create new forms of liability in equity.  *Id.*

The Court should therefore dismiss Count VIII with respect to the Moving Defendants.

## III.   CONCLUSION

For the foregoing reasons, Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Insulation GmbH, a/k/a Knauf USA, and Knauf Gips KG respectfully request that this Court grant their Motion to Dismiss Plaintiffs' Class Action Complaint for failure to state a claim upon which relief can be granted.

Dated: April 28, 2010

Respectfully submitted,

/s/ Douglas B. Sanders

Douglas B. Sanders
Richard Franklin
BAKER & MCKENZIE LLP
130 E. Randolph Dr.
Chicago, IL 60601
Telephone: (312) 861-8075
Facsimile:  (312) 698-2375
Email:
Douglas.Sanders@bakermckenzie.com

Donald J. Hayden
BAKER & MCKENZIE LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8966
Facsimile:  (305) 789-8953
E-mail: Donald.hayden@bakernet.com

Kerry Miller (LA Bar No. 24562)
Kyle A. Spaulding (LA Bar No. 29000)
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone:  (504) 599-8194
Facsimile:   (504) 599-8145
Email: kmiller@frilot.com

*Attorneys for Defendants, Knauf Plasterboard (Tianjin) Co., Ltd. Knauf Insulation GmbH, a/k/a Knauf USA, and Knauf Gips KG*

- 43 -

## <u>CERTIFICATE</u>

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 2047, on this 28th day of April, 2010.



s/ Douglas B. Sanders