UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | * | MDL NO. 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| THIS DOCUMENT RELATES TO: | * | MAG. JUDGE WILKINSON |
| | * | |
| *Timothy and Ashley Francis* | * | |
| *v. Colony Insurance Company, et al.,* | * | |
| Case No. 10-0720 (E.D. La.) | * | |

### THIRD PARTY COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes defendant and third party complainant, Hal Collums Construction, L.L.C. ("Collums"), who has answered the complaint filed by the plaintiffs, Timothy and Ashley Francis, denying liability and asserting its affirmative defenses.  Collums avers that the incident that is subject of this litigation, which allegedly has given rise to the damages sought by the plaintiffs, was caused in whole or part by the negligence, fault, and/or liability of the third party defendants, the Knauf Entities and Interior/Exterior.  By way of this third party demand, and only in the event that Collums is held liable to the plaintiffs for their alleged damages, which liability is denied, Collums is entitled to be fully indemnified by the third party defendants.  Collums is also entitled to recover from the third party defendants its costs and attorney's fees incurred in defending this lawsuit and prosecuting this third party demand.

## PARTIES

1.

**Hal Collums Construction, L.L.C. ("Collums")**, is a Louisiana limited liability company with its principal place of business located at 2610 Second Street, New Orleans, Louisiana 70113.

2.

Made defendants herein are:

A. **Interior/Exterior Building Supply, Limited Partnership** ("Interior/Exterior LP"), a Louisiana limited partnership with its principal place of business located at 727 S. Cortez Street, New Orleans, Louisiana 70119;

B. **Interior/Exterior Enterprises, L.L.C.** ("Interior/Exterior LLC"), a Louisiana limited liability company whose registered office is located at 727 S. Cortez Street, New Orleans, Louisiana 70119;

C. **Knauf Gips KG** ("Knauf Gips"), upon information and belief, a corporation organized under the laws of Germany doing business internationally, including the State of Louisiana, with its principal place of business located at Am Bahnhof 7, D-97343 Iphofen, Germany;

D. **Knauf International, GmbH** ("Knauf International"), upon information and belief, a corporation organized under the laws of Germany doing business internationally, including the State of Louisiana, with its principal place of business located at Am Bahnhof 7, D-97343, Iphofen, Germany;

E. **Knauf Plasterboard Tianjin Co., Ltd.** ("Knauf (Tianjin)"), upon information and belief, a corporation organized under the laws of China doing business

2

internationally, including the State of Louisiana, with its principal place of business located at North Yinhe Bridge, East Jingjin Road, RC-300400, Tianjin, P.R. China; and

F. **Knauf Insulation GmbH** ("Knauf (USA)"), upon information and belief, a corporation organized under the laws of Germany doing business internationally, including the state of Louisiana, from its headquarters located at One Knauf Drive in Shelbyville, Indiana. At all times relevant hereto, Knauf (USA) held a Certificate of Admission to conduct business in Indiana, which Certificate affords Knauf (USA) with the same rights and restrictions as a domestic corporation. In addition, upon information and belief, Knauf (USA) has had a registered agent for service of legal process in the United States at all times relevant hereto.

3.

Upon information and belief, Knauf Gips and Knauf International are closely affiliated by common ownership, common control or otherwise such that each of them is the mere alter ego of the other and/or are a single business enterprise with respect to all causes of action asserted herein.

4.

Upon information and belief, Knauf (Tianjin) and Knauf (USA) are each direct or indirect subsidiaries of Knauf Gips and/or Knauf International, or they are each otherwise controlled by Knauf Gips and/or Knauf International.

5.

Upon information and belief, Knauf Gips, Knauf International, Knauf (Tianjin), and Knauf (USA) (collectively known as "the Knauf Entities") are mere alter egos of each other

and/or are operating as a single business enterprise and are each liable for the actions of each other.

6.

Interior/Exterior LLC is the general partner of Interior/Exterior LP; therefore, Interior/Exterior LLC is liable to parties, such as Collums, that transacted business with Interior/Exterior LP. For ease of reference, Interior/Exterior LP and Interior/Exterior LLC will be collectively referred to as "Interior/Exterior."

7.

This Court has ancillary and/or pendent jurisdiction over this Third Party Demand.

## GENERAL FACTS

8.

In the fall of 2005, Collums, a general contractor, was engaged by complainants, Timothy and Ashley Francis, to perform certain construction work at their home located at 1015 Peniston Street in New Orleans, Louisiana (the "House").

9.

Timothy Francis, as owner, and Collums, as general contractor, entered into a contract to construct an addition to the House and to repair and/or remodel portions of the existing House damaged by Hurricane Katrina. Collums' scope of work included the installation of drywall supplied by and purchased from third party defendant, Interior/Exterior.

10.

Upon information and belief, all of the defective drywall supplied by Interior/Exterior to Collums was manufactured, sold, distributed, and marketed to Interior/Exterior by the Knauf Entities.

4

11.

The Knauf Entities provide building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Knauf Gips and/or Knauf International supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf (Tianjin) and/or Knauf (USA) and their agents, apparent agents, and employees.

12.

From 1997 through 2001, Knauf Gips and/or Knauf International invested in China and established three drywall/plasterboard plants that are located in Wuhu, Tianjin, and Dongguan. The product quality of all of the Knauf plants in China, including Knauf (Tianjin) are strictly controlled by one of the Knauf Entities and/or controlled by the requirements of Knauf Gips' headquarters in Germany. Moreover, Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Knauf (Tianjin) in China. Knauf (Tianjin) and Knauf (USA) and their employees are the actual and/or apparent agents of Knauf Gips and/or Knauf International.

13.

Upon information and belief, Knauf Gips and/or Knauf International, together with other Knauf Entities and/or actual or apparent agents, including Knauf (Tianjin) and Knauf (USA), manufactured, sold, distributed, marketed, and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana.

14.

Specifically, the Knauf Entities manufactured and sold, directly and indirectly, to a Louisiana supplier, Interior/Exterior, defective gypsum drywall that was installed in the House by Collums in Louisiana, thereby causing substantial damage to Collums.  Moreover, the Knauf Entities purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

15.

Knauf Gips and/or Knauf International individually participated, ratified, approved, and directed the improper or tortious acts and omissions of Knauf (Tianjin) and/or Knauf (USA) described herein.

16.

Knauf (Tianjin), Knauf (USA), and their employees, are all the actual or apparent agents of Knauf Gips and/or Knauf International.

17.

Knauf Gips, Knauf International, Knauf (Tianjin), and Knauf (USA) also acted in a single business enterprise, joint venture, and as each other's agent within the course and scope of said agency.  The Knauf Entities are alter egos of each other and/or are operating as a single business enterprise and are liable for the actions of each other.

18.

Upon information and belief, Interior/Exterior historically purchased its drywall from domestic sources; however, after Hurricanes Katrina and Rita, domestic drywall manufacturers

could not keep up with the demand. As a result, Interior/Exterior purchased drywall manufactured in China from the Knauf Entities beginning in October 2005.

19.

Upon information and belief, in 2005, an executive of Knauf (USA) named Jeff Brisley, acting as an agent of the Knauf Entities, contacted Interior/Exterior about the prospect of importing drywall from Knauf facilities in China. Seeking to profit from people in Louisiana harmed by Hurricanes Katrina and Rita, Knauf (USA) urged Interior/Exterior to purchase drywall manufactured at the Knauf facilities in China.

20.

In October 2005, Interior/Exterior entered into its first contract with Knauf (Tianjin), and ultimately entered into additional contracts with Knauf (Tianjin) for the purchase of drywall manufactured in China. This would not have occurred but for the actions of Knauf (USA). If not for Knauf (USA)'s conduct, the defective drywall from the Knauf Entities would not have entered the State of Louisiana through Interior/Exterior and would not have harmed Collums and its customers.

21.

The drywall supplied by Interior/Exterior to Collums, and manufactured by the Knauf Entities, was defective because it was designed, manufactured, exported, imported, delivered, supplied, marketed, and/or sold such that the gypsum components of the drywall released, emitted, and off-gassed sulfides, sulfur, methane, and/or other volatile organic chemical compounds that caused corrosion of and to the HVAC coils, refrigerator units, certain electrical wiring and plumbing components, and other household items. The drywall caused damage to

various components of the homes other than the drywall itself.   The corrosion causing characteristics of this drywall renders the drywall unsuitable for installation in single family homes.   As a result of these characteristics, the drywall supplied by Interior/Exterior and manufactured by the Knauf Entities, which was installed in the House by Collums, was inherently defective.

22.

Additionally, the sulfides, sulfur, methane and/or other noxious gases emitted from the defective drywall supplied by Interior/Exterior and manufactured by the Knauf Entities, which was installed in the affected homes, resulted in unpleasant and offensive odors within the homes. The odor emitted is similar to the smell of "rotten eggs." This unpleasant odor is not typical with gypsum drywall of proper and reasonable quality.   Such odors made living in the homes undesirable.   Such offensive odor emitted from the defective drywall also made it inherently defective.

23.

The defective drywall supplied by Interior/Exterior, manufactured by the Knauf Entities and installed in the affected homes was not fit for ordinary use; such defective drywall did not meet standards for goods of its kind due to the corrosive causing characteristics and the objectionable odors emitted from it.  The defective drywall was not free from defects and did not meet the standards of acceptable residential construction industry trade practices.

24.

The Knauf Entities failed to provide adequate warnings in the United States regarding the hazardous and defective nature of their drywall.

8

25.

All of the Knauf Entities participated in and profited from the wrongful acts described herein.

26.

Upon information and belief, the Knauf Entities failed to conduct adequate inspection and/or testing of their raw materials as part of the manufacturing process.

27.

With each sale to Interior/Exterior, Knauf (Tianjin), and/or one of the Knauf Entities, provided a Certificate of Warranty, which warranted in writing, "THE GYPSUM BOARDS MANUFACTURED AND SOLD TO INTERIOR/EXTERIOR BUILDING SUPPLY, L.P. ARE WARRANTED TO BE FREE FROM DEFECTS IN MATERIALS AND WORKMANSHIP."

28.

Contrary to their written warranties, the drywall provided by the Knauf Entities was not free from defects in materials and/or workmanship.

29.

With each sale to Interior/Exterior, Knauf (Tianjin), and/or one of the Knauf Entities, provided a Certificate of Quantity, Quality, and Condition, which warranted in writing that its drywall was "IN GOOD CONDITION."

30.

Contrary to their written warranties, the drywall provided by the Knauf Entities was not in good condition.

31.

With each sale to Interior/Exterior, Knauf (Tianjin), and/or one of the Knauf Entities, provided a Mill Certificate, which warranted in writing, "GYPSUM BOARDS WERE MANUFACTURED IN ACCORDANCE TO ASTM C36."

32.

Upon information and belief, the Knauf Entities also provided with their drywall a CGIC (Chinese Government Inspection Certificate), which purported to "show these cargos quality meet with ASTM C36 standard."

33.

American Society for Testing and Materials ("ASTM") specification standard ASTM C36 requires gypsum wallboard to be made of "noncombustible core, essentially gypsum, surfaced with paper bonded to the core."

34.

Upon information and belief, the defective drywall manufactured by Knauf (Tianjin), and/or the Knauf Entities, did not meet standard ASTM C36.

35.

The Knauf Entities have failed and refused to take responsibility for their defective product and to agree to repair or replace the defective drywall.

36.

Collums was not initially aware that Interior/Exterior had supplied defective drywall, and Collums was not in a position such that it should have known that Interior/Exterior had supplied defective drywall.

37.

Upon information and belief, Interior/Exterior knew or should have known that the drywall products manufactured by the Knauf Entities in China were defective and would cause harm and damage to the homes. Interior/Exterior has failed and refused to take responsibility for the defective drywall it sold to Collums or agree to repair or replace the defective drywall.

38.

Upon information and belief, the Knauf Entities knew or should have known that their substandard materials and their inferior manufacturing and inadequate or non-existent quality control processes would result in defective, noxious, and toxic drywall which emits a variety of dangerous chemicals.

39.

After investigating complaints by the Francises, it became apparent to Collums that the only way to remedy the defective drywall was to completely remove and replace it along with any damaged metal and electric components, and other damaged property within the affected House.

40.

In order to perform the necessary and reasonable repairs, Collums provided the Francises with a repair cost estimate totaling $217,762.46. The Francises, however, did not allow Collums to perform the repairs. Instead, the Francises sent Collums a demand letter and subsequently filed suit against Collums for indemnity, seeking recovery of all of their damages, including, but not limited to, the cost of repairing the home and its components, additional living expenses, attorney's fees, etc.

41.

Because of the defective drywall, Collums has suffered, and will suffer, general and special damages as follows:

    A.  The costs and expenses to investigate the complaints relating to the defective drywall;

    B.  Legal costs including attorneys' fees incurred to reasonably protect Collums' interests with respect to the Francises' claim because Collums installed defective drywall in the House that was supplied by Interior/Exterior and manufactured by the Knauf Entities.

    C.  Other costs, expenses and damages incurred as a result or consequence of the defective drywall supplied by Interior/Exterior, manufactured by the Knauf Entities and installed in the affected homes.

## CAUSES OF ACTION

### COUNT I – REDHIBITION

**La. Civ. Code art. 2520, *et seq.* – Against all Defendants**

42.

Defendants are liable for manufacturing, inspecting, distributing and/or selling drywall that contains a vice or defect which renders it useless or its use so inconvenient that buyers would not have purchased it had they known of the vice or defect.

43.

Defendants' drywall possessed a redhibitory defect because it was not manufactured and marketed in accordance with industry standards and/or was unreasonably dangerous, as described above, which renders the drywall useless or so inconvenient that it must be presumed

that a buyer would not have bought the drywall had the buyer known of the defect. Collums is therefore entitled to the remedies of rescission of the sale of Defendants' drywall and restitution of the price paid therefor. Due to the nature of drywall and the manner of its installation, it is impossible to return Defendants' drywall in the form received, and tender of the defective drywall to Defendants should be excused.

44.

Alternatively, the drywall at issue possesses a redhibitory defect because it was not manufactured and marketed in accordance with industry standards and/or was unreasonably dangerous, as described above, which diminished the value of the drywall so that it must be presumed that a buyer would only have bought it for a lesser price, if at all. In this alternative, Collums is entitled to the reduction of the purchase price.

45.

The defects existed at the time of delivery; however, because of the very nature of the defects, they were not known at the time of the sale nor were the defects readily apparent or readily discoverable by Collums.

46.

All Defendants are jointly liable as bad faith sellers for selling a defective product with actual or personal knowledge of the defect, and thus, are liable for the purchase price of the drywall with interest from the purchase date, reimbursement for reasonable expenses occasioned by the purchase of the defective drywall and those incurred for the preservation of the thing, damages, and attorneys' fees under La. Civ. Code art. 2545.

47.

As the manufacturers of the drywall, the Knauf Entities are deemed to know that the drywall possessed a redhibitory defect; therefore, they are bad faith sellers under La. Civ. Code art. 2545.

48.

In the alternative, if Interior/Exterior is deemed a good faith seller, Interior/Exterior is liable to Collums for its damages.

## COUNT II – BREACH OF IMPLIED WARRANTY

**La. Civ. Code art. 2524, *et seq.* - Against all Defendants**

49.

When Defendants manufactured, distributed, and/or sold the defective drywall, Defendants implicitly warranted that the product was safe, well tested, of high quality, free of defects and reasonably fit for its ordinary use. Defendants also knew that Collums intended to install the defective drywall in residential homes, and Collums relied on Defendants' judgment and skill in manufacturing and selecting the drywall for such use.

50.

By manufacturing, distributing, and/or selling a defective, unsafe, unfit, and poorly manufactured drywall product, Defendants have breached their implied warranties.

51.

Collums and its customers relied on these implied warranties.

52.

As a direct result of the Defendants' breach of implied warranty, Collums has incurred damages, and continues to incur damages. The Defendants are jointly liable to Collums for these damages.

## COUNT III – BREACH OF EXPRESS WARRANTY

### Against the Knauf Entities

53.

As fully set forth above, the Knauf Entities expressly warranted that the drywall they manufactured, distributed, and/or sold was in good condition, safe, free from defects in materials and workmanship, and complied with relevant ASTM standards. Such express warranties induced purchasers, including Collums, to use their drywall.

54.

By manufacturing, distributing, and/or selling defective, unsafe, and poorly manufactured drywall, the Knauf Entities have breached their express warranty.

55.

Purchasers of the drywall manufactured by the Knauf Entities, including Collums, relied on these express warranties to their detriment.

56.

As a direct result of this breach of express warranty, Collums has incurred damages, and continues to incur damages. The Knauf Entities are jointly liable to Collums for these damages.

## COUNT IV – BREACH OF LOUISIANA PRODUCTS LIABILITY ACT

### La. R.S. 9:2800.51, *et seq.* - Against the Knauf Entities

57.

Collums brings this cause of action under Louisiana's Products Liability Act against the Knauf Entities.

58.

The Knauf Entities are "manufacturers" as defined by La. R. S. 9:2800.53(1).

59.

The drywall manufactured by the Knauf Entities as described herein is unreasonably dangerous in construction, manufacture and/or composition under La. Rev. Stat. 9:2800.55, and/or is unreasonably dangerous in design under La. R.S. 9:2800.56, and/or is unreasonably dangerous because of inadequate warnings under La. R. S. 9:2800.57, and/or is unreasonably dangerous because it does not conform to the manufacturer's express warranty under La. R. S. 9:2800.58.

60.

The drywall is unreasonably dangerous in composition or construction in that, at the time it left the control of the Knauf Entities, it deviated in a material way from the Knauf Entities' own specifications or performance standards and/or it failed to conform to the manufacturer's express warranty.

61.

In addition, at the time the drywall left the control of the Knauf Entities, an alternative design and/or manufacturing process was available that would not have caused the damages

complained described herein. This alternative design was not only feasible but well known to the Knauf Entities.

62.

In addition, and in the alternative, the Knauf Entities' drywall is unreasonably dangerous due to an inadequate warning because at the time the drywall left the control of the Knauf Entities, the drywall possessed a characteristic that might cause damage. However, the Knauf Entities failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall or upon subsequently learning that their products contain dangerous characteristics. Instead, the Knauf Entities misrepresented that their drywall was safe, efficacious, well tested, of high quality, and free of defects.

63.

At all times pertinent and material hereto, the Knauf Entities knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

64.

In the alternative, the Knauf Entities knew or should have known of the harmful nature of their products.

65.

The Knauf Entities' violations of the Louisiana Products Liability Act directly and proximately caused damages to Collums and its customers and the Knauf Entities are liable for all damages caused by the unreasonable characteristics of the drywall they manufactured, distributed, and/or sold.

17

## COUNT VI – NEGLIGENCE

### Against all Defendants

66.

Defendants owed a duty to Collums, and its customers, to exercise reasonable care in the

(1) design, (2) manufacturing, (3) exporting, (4) importing, (5) distributing, (6) delivering, (7)

supplying, (8) inspecting, (9) testing, (10) marketing, and/or (11) selling of drywall, including a

duty to adequately warn of its failure to do the same.  Defendants' duties include, but are not

limited to the following:

a. using reasonable care in the design of the drywall to prevent it from containing defects as set forth herein;

b. using reasonable care in the manufacturing of the drywall to prevent it from containing defects as set forth herein;

c. using reasonable care in the exporting and/or importing of the drywall to prevent it from containing defects as set forth herein;

d. using reasonable care in the distributing, delivering, and/or supplying of the drywall to prevent it from containing defects as set forth herein;

e. using reasonable care in the inspection and testing of the drywall to prevent it from containing defects as set forth herein;

f. using reasonable care in the marketing of the drywall to prevent it from containing defects as set forth herein;

g. using reasonable care in the selling of the drywall to prevent it from containing defects as set forth herein;

h. adequately warning and instructing its customers of the defects associated with the drywall;

i. recalling or otherwise notifying users at the earliest date that it became known that the drywall was dangerous and defective;

j. advertising and recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;

k.      not misrepresenting that the drywall was safe for its intended purpose when, in fact, it was not;

l.      not manufacturing drywall in a manner that was dangerous to its intended and foreseeable users;

m.      not exporting and/or importing drywall in a manner that was dangerous to its intended and foreseeable users;

n.      not distributing, delivering, and/or supplying drywall in a manner that was dangerous to its intended and foreseeable users;

o.      not concealing information from its customers and consumers regarding reports of adverse effects associated with drywall;

p.      not improperly concealing and/or misrepresenting information from its customers and consumers concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing defects; and

q.      otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, testing, marketing, and/or selling drywall to prevent it from containing defects as set forth herein.

67.

Defendants were negligent and breached their duties set forth in the previous paragraph.

68.

Defendants knew or should have known that their wrongful acts and omissions would result in damages in the manner set forth herein.

69.

As a direct and proximate cause of Defendants' acts and omissions, Collums and its customers have incurred, and are still incurring, economic and other damages and are entitled to recover monetary damages from the Defendants. In addition, the Defendants are jointly liable to Collums for its damages.

## COUNT VII – UNJUST ENRICHMENT

### Against all Defendants

70.

In addition, or in the alternative, all Defendants, individually and collectively, received money as a result of Collums' purchases of defective drywall, either directly or through an agent, and Defendants have retained those sums at the detriment of Collums.

71.

Defendants' receipt and retention of the profits gained by the sale of their defective drywall to Collums is unjust and inequitable.

72.

Defendants, by the conduct complained of herein, have been unjustly enriched in a manner that warrants restitution.

73.

As a direct and proximate cause of Defendants' acts and omissions, Collums has incurred damages, and continues to incur damages. The Defendants are jointly liable to Collums for these damages.

## COUNT VIII – INDEMNITY

### Against all Defendants

74.

As previously pled herein, Collums, through no fault of its own, has incurred damages in remediating and repairing the affected homes. The legal responsibility of Collums, if any at all, is merely technical, derivative, or passive.

75.

If the subject Knauf drywall is an unreasonably dangerous or defective product which resulting damages, as Francis contends, then Collums is entitled to defense and indemnity from the Defendants.  Alternatively, Collums is entitled to recover all defense fees, expenses and costs and full indemnity from the Defendants.

76.

Alternatively, the Defendants are liable to Collums for indemnification of all settlements and/or judgments, as well as indemnification for all attorney's fees, expenses and costs incurred, including but not limited to, those attorney's fees, expenses and costs incurred defending the claims against Collums, past and future.

77.

Collums, by this Third Party Complaint, hereby tenders to the Knauf Entities and to Interior/Exterior the defense and indemnity of Collums.  In addition to the damages incurred relating to the repair and remediation of the affected homes, Collums has incurred, and is incurring, damages relating to the costs associated with defending claims and/or lawsuits as a direct result the defective drywall furnished by the Defendants.

78.

Collums pleads that its damages are the direct and foreseeable result of the Defendants' acts and omissions as pled herein.

79.

Collums is entitled to indemnity from the Defendants for all damages caused by the defective drywall, plus attorneys' fees, expert fees and costs incurred.

## COUNT IX – UNFAIR TRADE PRACTICES

### La. Rev. Stat. 51:1401, *et seq.* – Against all Defendants

80.

Collums asserts a cause of action for relief under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, *et seq.*

81.

As further explained below, Defendants fundamentally misrepresented material facts regarding the characteristics of the drywall and omitted other material facts that should have been disclosed. These misrepresentations and omissions were made recklessly and with the intent of defrauding members of the public for profit.

82.

Defendants fraudulently represented to the public that their drywall was safe, efficacious, well tested, of high quality, and free of defects.

83.

Defendants' drywall was installed in reliance on the veracity of the above-mentioned fraudulent representations.

84.

The Defendants' acts and omissions constitute unfair, deceptive, unethical, oppressive, unscrupulous acts and practices in violation of La. R.S. 51:1401, *et seq.* These acts and/or practices have caused, and may continue to cause, substantial damage to Collums.

85.

Defendants' drywall was unreasonably dangerous at the time it left their control, subsequently causing damage upon installation.   The damage arose from a reasonable, anticipated use of the drywall.

86.

Defendants' drywall deviated in a material way from their specification or performance standards or from identical products manufactured by Defendants.

87.

The acts and omissions of the Defendants, which were substantially injurious to Collums, were done with fraud and deceit and constitute unfair and deceptive trade practices.

88.

The Defendants' violations of LUTPA have caused actual damages to Collums for which it is entitled to relief, including treble damages, attorneys' fees, and costs.

## COUNT X – FRAUDULENT CONCEALMENT

### Against the Knauf Entities

89.

In connection with its sale and shipment of Chinese drywall to Interior/Exterior in Louisiana, Knauf (Tianjin) falsely stated in Certificates of Warranty dated November 23, 2005, December 23, 2005, March 3, 2006, and March 3, 2006 that the drywall/gypsum boards were "free from defects in materials and workmanship."

90.

In connection with its sale and shipment of Chinese drywall to Interior/Exterior in Louisiana, Knauf (Tianjin) falsely stated in Certificates of Quantity, Quality, and Condition

dated November 23, 2005, December 23, 2005, March 3, 2006, and March 3, 2006 that the drywall/gypsum boards were "in good condition" and "in accordance to ASTM C36."

91.

In connection with its sale and shipment of Chinese drywall to Interior/Exterior in Louisiana, Knauf (Tianjin) falsely stated in Mill Certificates dated November 23, 2005, December 23, 2005, March 3, 2006, and March 3, 2006 that the "gypsum boards were manufactured in accordance to ASTM C36."

92.

The entry of defective drywall from the Knauf Entities into Louisiana would not have occurred but for the affirmative actions of Knauf (USA) who, acting as an agent of the Knauf Entities, induced Interior/Exterior to purchase drywall manufactured by the Knauf Entities.

93.

At all relevant times, the Knauf Entities knew that the above-mentioned representations made to members of the public were specious, false, misleading, and fraudulent. These representations were made recklessly and with the intent of defrauding members of the public for profit.

94.

At all relevant times, the Knauf Entities knew or should have known that their drywall was defective, unsafe, and poorly manufactured.

95.

The Knauf Entities fraudulently concealed that their drywall was defective, unsafe, and poorly manufactured. The concealments were made with the intent of defrauding members of the public for profit.

96.

The Knauf Entities knew or should have known that their drywall would cause corrosion of, among other things, certain electrical wiring/components, air conditioner coils, plumbing, and other personal property throughout the affected homes.

97.

The Knauf Entities fraudulently concealed that their drywall caused damage to, among other things, certain electrical wiring/components, air conditioner coils, plumbing, and other personal property throughout the affected homes.

98.

The Knauf Entities fraudulently concealed that they had received and/or otherwise learned of complaints regarding their drywall.

99.

The Knauf Entities fraudulently concealed from the public the results of testing of their drywall by the Fraunhofer Institute.

100.

The above-mentioned concealments of key facts by the Knauf Entities regarding their drywall resulted in Collums incurring damages.

101.

As a result of the fraudulent concealments by the Knauf Entities, Collums has incurred, and continues to incur, damages.

## COUNT XI – FRAUDULENT MISREPRESENTATION

### Against the Knauf Entities

102.

The Knauf Entities fraudulently represented to the public, including Collums, that their drywall was safe, efficacious, well tested, of high quality, and free of defects.

103.

Drywall manufactured by the Knauf Entities was installed in the House by Collums in reliance on the veracity of the above-mentioned fraudulent representations.

104.

As a result of the fraudulent representations by the Knauf Entities regarding their drywall, damages have been, and continue to be, incurred by Collums. The Knauf Entities are jointly liable to Collums for these damages.

## XII – NEGLIGENT MISREPRESENTATION

### Against All Defendants

105.

All Defendants fundamentally misrepresented material facts regarding the characteristics of the defective drywall and omitted other material facts that should have been disclosed.

106.

In disseminating information regarding their drywall, all Defendants negligently caused statements to be made which they knew or should have known were inaccurate and untrue.

107.

Defendants' drywall was installed in the House by Collums in reliance on the veracity of these negligent misrepresentations.

108.

As a direct consequence of Defendants' negligent misrepresentations and omissions of material facts regarding their defective drywall, Collums has incurred, and will continue to incur, damages. The Defendants are jointly liable to Collums for its damages.

## DEMAND FOR TRIAL BY JURY

109.

Collums hereby demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Hal Collums Construction, L.L.C. requests a trial by jury, requests judgment against all Defendants in accordance with the several Counts of this Complaint, and requests that this Honorable Court grant the following relief on its claims asserted herein:

1.  All actual and/or incidental damages to which Collums may be entitled, in an amount to be determined at trial;

2.  Reimbursement and/or restitution of profits and all other equitable relief to which Collums may be entitled;

3.  Costs and expenses of this litigation and other litigation arising from Defendants' defective drywall, including, but not limited to, attorneys' fees, expert fees, filing fees, and costs;

4.  Pre-judgment and post-judgment interest; and

5.  Such other and further relief at law or in equity to which Collums may show itself justly entitled.

WHEREFORE, third party complainant, Hal Collums Construction, L.L.C., prays that after due proceedings had, there be judgment in its favor and against third party defendants, the Knauf Entities and/or Interior/Exterior, for full defense and indemnity.

Respectfully submitted,

BY: _____

AMOS H. DAVIS, #4718
Attorney at Law
7932 Wrenwood Blvd., Suite B
Baton Rouge, LA 70809
Telephone: (225) 248-1400

**Attorney for Hal Collums Construction, L.L.C.**