# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**KENNETH AND BARBARA WILTZ,**
**individually, and on behalf of all others**
**similarly situated, [ADDITIONAL**
**PLAINTIFFS LISTED ON SCHEDULE OF**
**PLAINTIFFS, ATTACHED HERETO AS**
**EXHIBIT "A"],**

        **Plaintiffs,**

**v.**

**BEIJING NEW BUILDING MATERIALS**
**PUBLIC LIMITED CO., [ADDITIONAL**
**DEFENDATNS LISTED ON SCHEDULE OF**
**DEFENDANTS, ATTACHED HERETO AS**
**EXHIBIT "B"],**

        **Defendants.**

_____/

**CASE NO.: 10-361**
**SECT. L MAG 2**

### MOTION AND INCORPORATED MEMORANDUM OF LAW OF PLAINTIFFS ALAN AND ANNETTE GODDARD SEEKING PERMISSIVE INTERVENTION AS NAMED CLASS PLAINTIFFS WITHIN OMNIBUS CLASS ACTION II INCLUDED WITHIN MDL DOCKET NO. 2047 -- IN RE CHINESE  MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION PENDING  IN THE EASTERN DISTRICT OF LOUISIANA

Intervenors, ALAN and ANNETTE GODDARD ("Goddard"), hereby submit the

following Motion and incorporated Memorandum of Law, pursuant to Federal Rule of Civil

Procedure 24(b)(2), seeking permissive intervention in the omnibus class action styled Wiltz, et

al. v. Beijing New Building Materials Public Limited Co., Case No. 10-932, Sec. L, Mag. 2

("Omni II") which is part of In re: Chinese Manufactured Drywall Products Liability Litigation,

Case No.: MDL Docket No. 2047 (the "MDL Litigation") pending in the Eastern District of

Louisiana, and, in support thereof, state as follows:

## A.       INTRODUCTION AND FACTUAL BACKGROUND

Alan and Annette Goddard are named plaintiffs in a Chinese drywall class action lawsuit pending before the 15th Judicial Circuit in and for Palm Beach County, Florida styled Alan Goddard, et al., v. Albanese-Popkin The Oaks Development, L.P., et al., Case No. 502009 CA 020475 5XXXX ME (hereafter, the "Underlying Action").  A copy of the extant complaint in the Underlying Action (the "Underlying Complaint") is annexed hereto as "**Exhibit A.**"

The Underlying Complaint alleges that the Goddards and their builder, Albanese-Popkin The Oaks Development, L.P. ("Albanese"), entered into a purchase and sale agreement for the construction of the Goddards' residence located at 17865 Monte Vista Drive, Boca Raton, Florida 33496 (the "Residence").  Underlying Complaint, Exhibit A hereto, at ¶¶ 5, 9.  The Underlying Complaint alleges that the Goddards and Albanese "entered into an 'Agreement of Purchase and Sale' [] for the construction and sale of the Residence on or about November 23, 2004."  Underlying Complaint, Exhibit A hereto, at ¶ 9.  The Underlying Complaint alleges that the Goddards moved into the Residence on or about October 6, 2006.  Underlying Complaint, Exhibit A hereto, at ¶ 26. The Underlying Complaint alleges that, during construction of the Residence, "Chinese drywall" was installed by Albanese's drywall subcontractor.  Underlying Complaint, Exhibit A hereto, at ¶¶ 27-28.

The Underlying Complaint makes the following specific allegations with respect to the Chinese drywall installed in the Residence:

> 26. On or about October 6, 2006, Plaintiffs moved into their newly-constructed home in the Albanese development known as "The Oaks of Boca Raton" in Boca Raton.

> 27.  OCD [Ocean Coast Drywall] performed all the drywall installation in the Building.

28.  OCD installed what is commonly referred to as Chinese drywall in the Building.

29.  Chinese drywall is universally regarded as being defective, either by its composition, manufacturing process, or both.

30.  OCD purchased the Chinese drywall either directly or indirectly from various suppliers, including, but without limitation, from Defendants Banner, Cemex and Seacoast (collectively referred to herein as the "Suppliers").

31.  The Suppliers purchased, directly and/or indirectly, Chinese drywall that was manufactured in China.

32.  After OCD purchased the Chinese drywall from one or more of the Suppliers, it was in possession of such product until it installed same in the Building.

33.  Property damage was sustained to and within the Building and caused by the release of gases, fumes, and/or vapors from the Chinese drywall brought into the Building in connection with operations being performed on behalf of Albanese by its subcontractor, OCD.

34.  Specifically, OCD brought Chinese drywall into the Building in connection with its operations as the installer of the drywall on behalf of Albanese.

35.  In reaction to the humidity indigenous to the South Florida climate, sulfuric compounds contained within the Chinese drywall (including one or more of hydrogen sulfide, carbonyl sulfide, and carbon disulfide) released gases, fumes, and/or vapors from the Chinese drywall into the indoor air of the Building.

36.  This resulted in a sulfur odor, which could be smelled by the occupants variously throughout the Building and eventually permeated the Building.

37.  The release of gases, fumes, and/or vapors from the Chinese drywall brought into the Building in connection with operations being performed on behalf of Albanese by its subcontractor, OCD, caused and created property damage and/or structure damage to the Building including corrosion on outlet boxes, air conditioning coils, electrical wiring, metals,  plumbing fixtures, and the aforementioned sulfur odor which permeated the Building.

38.  Plaintiffs initially discovered damage to the air conditioning coils in one of the seven air handling units ("AHUs") in the Building and first began

to notice a periodic sulfur odor in the Building as early as December, 2006. The periodic sulfur odor continued unabated.

39.  Throughout 2008, damage was discovered to certain other AHUs in the Building.  By Summer, 2009, all seven AHUs had failed due to coil damage.

40.  Plaintiffs did not discover the damage to electrical wiring, metals, and plumbing fixtures until some time between April and May, 2009.

41.  Also in or about April to May, 2009, the sulfur odor in the Building became dramatically more pronounced.  So much so that, from that point forward, it permeated the Building on an ongoing basis and could be smelled on clothing and skin after leaving the Building.

42.  Not until some time between April to May, 2009 was Albanese first notified of the property damage to the Building, including the failure of all seven AHUs, the damage to electrical wiring, metals, and plumbing fixtures, and the sulfur odor that permeated the Building.

43.  Soon thereafter, the Building was inspected for the presence of Chinese Drywall.

44.  Not until the Summer of 2009 did the Plaintiffs discover the cause of the property damage referenced above – namely, the Chinese Drywall installed within the Building.

45.  The Chinese drywall installed in the Building was, at the time it left the Suppliers' hands, in a condition not intended or expected by OCD, Albanese, or the Plaintiffs, and was defective and unreasonably dangerous to the Plaintiffs and to the Plaintiffs' property.

46.  The release of gases, fumes and/or vapors from the Chinese drywall brought into the Building in connection with operations being performed on behalf of Albanese by its sub-contractor, OCD, has been a continuous occurrence and/or repeated exposure to substantially the same generally harmful conditions since such drywall was brought into the Building and/or installed.

Underlying Complaint, Exhibit A hereto, at ¶¶ 26-46.

Goddard's Underlying Action was consolidated for pre-trial purposes with all other Chinese drywall actions pending in Palm Beach County, Florida.  The Judge presiding over

the consolidated Palm Beach County Chinese drywall actions recently issued an Order indicating

that he is of a mind to stay all Palm Beach County proceedings in favor of such claims being

prosecuted within MDL No. 2047 instead:

> The final issue is whether this case, and other like cases pending in this circuit, should be stayed because duplicative actions are currently pending in the MDL. Here the issue is not the location of the first filed case, but more broadly does it make any sense for the parties to be litigating the same issues in multiple courts. Clearly it does not. Plaintiffs' counsel acknowledged at the case management conference that judicial economy is not served by litigating in parallel forums. Nevertheless, the plaintiffs assert that it is premature to make an election between pursuing individual state court claims and claims pending in the MDL. The court is mindful of the plaintiffs' right to proceed in a chosen state court forum. However, judicial economy is not being served by the current state of affairs. Not only are judicial resources being Unnecessarily duplicated, the parties are expending resources which could be better utilized in indentifying and correcting the problem apparently created by the use of Chinese manufactured drywall. While the court is not inclined to enter an immediate stay of duplicative cases pending here, the court is also not willing to take an indefinite "wait and see" approach to the efficient prosecution of those claims pending here which are also duplicated in the MDL. Therefore, at the June 2010 case management conference, the plaintiffs shall be prepared to show good cause why the court should not stay all actions pending in this circuit which are duplicative of claims currently pending in the MDL.

April 22, 2010 Order by Hon. Glenn D. Kelley on Case Management Conference pp. 3-4 (emphasis

supplied), a copy of which is annexed hereto as "**Exhibit B**."

Accordingly, the MDL will soon be the only forum in which Goddard will be able to

assert their claims.

B.     <u>MDL NO. 2047 PENDING IN THE EASTERN DISTRICT OF LOUISIANA</u>

On or about June 15, 2009, the Judicial Panel on Multidistrict Litigation

determined that coordinated or consolidated pretrial proceedings were appropriate in multiple

lawsuits which shared "factual questions concerning drywall manufactured in China, imported to

and distributed in the United States, and used in the construction of houses; plaintiffs in all

actions allege that the drywall emits smelly, corrosive gases." <u>In Re: Chinese-Manufactured</u>

<u>Drywall Prod. Liab. Litig.</u>, 626 F. Supp. 2d 1346 (J.P.M.L. June 15, 2009).  Pursuant to that ruling, such proceedings were consolidated before this Court and MDL No. 2047 was established.

Included among the consolidated actions pending before the Court as part of MDL No. 2047 are two separate omnibus class actions within the MDL styled <u>Wiltz, et al. v. Beijing New Building Materials Public Limited Co.</u>, Case No. 10-932, Sec. L, Mag. 2 ("Omni II") and <u>Rogers, et al. v. Knauf Gips KG, et al.</u>, Case No. 10-362, Sec. L, Mag. 2 ("Omni IV"). The allegations of <u>Wiltz</u> and <u>Rogers</u> are almost identical to the allegations made by Goddard in their Palm Beach County action and, as importantly, the primary defendant in the Goddard's Palm Beach County action – their builder, Albanese -- is already a party defendant in <u>Wiltz</u> and <u>Rogers</u>.

### <u>ARGUMENT</u>

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24(B),
GODDARD SHOULD BE PERMITTED TO INTERVENE IN
THE <u>WILTZ</u> OMNIBUS CLASS ACTIONS PENDING
BEFORE THIS COURT AS PART OF MDL NO. 2047 SINCE THIS
MOTION IS TIMELY AS THE OMNIBUS ACTION HAS NOT
YET PROGRESSED AND GODDARD'S CLAIMS HAVE ISSUES
<u>OF LAW AND FACT COMMON TO THE OMNIBUS CLASS ACTIONS</u>**

Federal Rule of Civil Procedure 24(b) establishes the parameters for permissive intervention: "[u]pon timely application anyone may be permitted to intervene in an action: 1) when a statute of the United States confers a conditional right to intervene; or 2) when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b).  "Under that rule, permissive intervention is appropriate in circumstances in which (1) the application is timely; (2) the moving party's claim or defense and the main action have a common question of law or fact; and (3) the proposed intervention will not unduly

delay or prejudice the adjudication of the original parties' rights." Capacchione v. Charlotte-Mecklenburg Bd. of Educ., 179 F.R.D. 505, 507 (W.D.N.C.1998) (citing Hill v. Western Elec. Co., 672 F.2d 381, 385-86 (4th Cir.1982) and 6 James W. Moore et al., Moore's Fed. Prac. § 24.10 (3d ed. 1997)).

"Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir.1995) (quoting McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1074 (5th Cir.1970)) (internal quotations omitted).  Intervention is especially favored in the class action context when intervention can help to strengthen representation of the class. See Bromley v. Mich. Educ. Ass'n, 178 F.R.D. 148, 153 (E.D.Mich.1998); In re Enron Sec., Derivative & ERISA, 2004 WL 405886, at *33 (S.D. Tex. 2004).

Generally courts are "particularly amenable to permissive intervention when no additional issues are presented to the case, when the intervenor's claims are 'virtually identical' to class claims, and when intervention would strengthen the adequacy of class representation." 3 Herbert Newberg & Alba Conta, Newberg on Class Actions, §§ 16.08-.09 (3d ed.1992). Indeed, unlike Rule 24(a), intervention as of right, which allows a party to intervene only where its interests are not adequately represented by current parties, Rule 24(b) contains no such restriction. In re Lutheran Broth. Variable Ins. Products Co. Sales Practices Litig., 2002 WL 31371945, *4 (D. Minn. Oct.7, 2002) ("intervention under Rule 24(b) is allowable in the context of class action to enhance or strengthen the representation of the class").

The Fifth Circuit Court of Appeals has approved of the addition of plaintiffs to better represent potential subclasses even where the named plaintiffs were not inadequate representatives. Vuyanich, 82 F.R.D. at 437, citing Oatis v. Crown Zellerbach, 398 F.2d 496 (5th

Cir.1968). The Fifth Circuit also pointed out that it has "extended the Oatis rule, which technically applied only to co-plaintiffs, to intervenors . . . ." Id. (citing Wheeler v. American Home Products Corp., 563 F.2d 1233 (5th Cir.1977)); Olivares v. Martin, 555 F.2d 1192 (5th Cir.1977).

"[T]imeliness is not limited to chronological considerations, but is to be determined from all the circumstances. United States v. United States Steel Corp., 548 F.2d 1232, 1235 (5th Cir.1977). "Timeliness" is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice. McDonald v. E.J. Lavino Co., 430 F.3d 1065, 1074 (5th Cir.1970). Knowledge of the pendency of the litigation is not sufficient by itself to require an immediate motion to intervene; "scarce judicial resources would be squandered, and the litigation costs of the parties would be increased" if such were the rule, causing premature filing, while "many individuals who excusably failed to appreciate the significance of a suit at the time it was filed would be barred from intervening to protect their interests when its importance became apparent to them later on." Stallworth, 558 F.2d at 265. Rather than the date when the would-be intervenor became aware of the litigation, the relevant circumstance would be when it became aware that its interest would no longer be adequately protected by the parties. *Legal Aid Soc. of Alameda Co. v. Dunlop,* 618 F.2d 48, 50 (9th Cir.1980).

As for the matter of prejudice, the Fifth Circuit observed "the relevant issue is not how much prejudice would result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest in the case." Stallworth, 558 F.3d at 267.

When the preceding factors are applied to the within Motion, it is clear that intervention is appropriate in this action under Fed. R. Civ. P. 24(b)(2).  Here: (1) the application is timely; (2) the intervenors' claims and the main action have common if not completely identical questions of law and fact; and (3) the proposed intervention will not unduly delay or prejudice the adjudication of the original parties' rights.  See, e.g., Bussian v. Daimlerchrysler Corporation, 411 F.Supp.2d 614, 631 (M.D.N.C. 2006).

Since the Wiltz action has remained in relative abeyance pending the Court's hearing and determination of the two bellwether trials, this Intervention Motion is timely and will not cause any delay or prejudice.  The Intervenors can simply be folded into the omnibus class action along with all other named plaintiffs therein.   As for the commonality of the Intervenors' claims, the Judicial Panel on Multidistrict Litigation recognized the commonality of Chinese drywall claims as well as the benefits of centralizing such claims in one forum before Judge Fallon – exactly what the Intervenors seek to do here:

> [W]e find that these ten actions involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Louisiana will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All actions share factual questions concerning drywall manufactured in China, imported to and distributed in the United States, and used in the construction of houses; plaintiffs in all actions allege that the drywall emits smelly, corrosive gases. Centralization under Section 1407 will eliminate duplicative discovery, including any discovery on international parties; prevent inconsistent pretrial rulings, particularly those with respect to class certification issues; and conserve the resources of the parties, their counsel and the judiciary. . . . Centralization in this district permits the Panel to effect the Section 1407 assignment to a judge who has extensive experience in multidistrict litigation as well as the ability and temperament to steer this complex litigation on a steady and expeditious course.

<u>In Re: Chinese-Manufactured Drywall Prod. Liab. Litig.</u>, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. June 15, 2009).

The same considerations which led to the Panel's preceding Order in MDL No. 2047 apply on this Motion as well.  Intervention would eliminate the risk of inconsistent rulings by competing courts throughout the nation, as well as allow for centralization within the forum that has been designated as the national forum for resolution of Chinese drywall cases.  It would also allow for coordinated pretrial proceedings, including discovery, and avoid unnecessary waste and duplication of judicial resources.

The Defendant in the Intervenors' state court action is already a party to the <u>Wiltz</u> action, as are other Plaintiffs within the very development where the Intervenors' home is located.  Therefore, the Intervenors seek to intervene in an action which involves the <u>identical</u> relief and involves the <u>identical</u> underlying issues.

Finally, the Plaintiffs' Steering Committee in MDL No. 2047 has indicated that they fully-support the within Motion for Intervention.

## CONCLUSION

For the reasons cited herein, Goddard respectfully requests the Court to issue an Order pursuant Fed. R. Civ. P. 24(b)(2) permitting Goddard to intervene in the action styled <u>Wiltz, et al. v. Beijing New Building Materials Public Limited Co.</u>, Case No. 10-932, Sec. L, Mag. 2 ("Omni II"), and for such other and further relief that this Court deems just and proper.

Dated this 7th day of May, 2010.

Respectfully submitted,

**SCOTT N. GELFAND, P.A.**

/s/ Scott N. Gelfand
Scott N. Gelfand, Esq.
Florida Bar No. 0538711
scott@gelfandpa.com
5501 University Drive, Suite 101
Coral Springs, FL 33067
Telephone: 954-255-7900
Facsimile: 954-255-7905
*Attorney for Alan and Annette Goddard*

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was served via Lexis/Nexis file and serve on this 7th day of May, 2010.

By: /s/ Scott N. Gelfand
Florida Bar No. 0538711

-11-