IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

ALAN GODDARD and ANNETTE
GODDARD,

          Plaintiffs,

-against-

ALBANESE-POPKIN THE OAKS
DEVELOPMENT, L.P., a Florida
Corporation, OCEAN COAST
DRYWALL, INC., a Florida Corporation,
BANNER SUPPLY COMPANY
POMPANO, LLC, a Florida Limited
Liability Company,  CEMEX CONSTRUCTION
MATERIALS FLORIDA, LLC, a Delaware
Limited Liability Company, and  L&W
SUPPLY CORPORATION d/b/a
SEACOAST SUPPLY, a Delaware Corporation,

          Defendants.

_____/

Case No.:  50 2009 CA 20475  (AO)

**CLASS REPRESENTATION**

**CHINESE DRYWALL CASE**

## SECOND AMENDED COMPLAINT

       The Plaintiffs, ALAN GODDARD and ANNETTE GODDARD ("Plaintiffs"), on

behalf of themselves and all others similarly situated, by and through undersigned counsel, hereby

sue the Defendants, ALBANESE-POPKIN THE OAKS DEVELOPMENT, L.P. ("Albanese"), a

Florida Corporation, OCEAN COAST DRYWALL, INC. ("OCD"), a Florida Corporation,

BANNER SUPPLY COMPANY POMPANO, LLC ("Banner"), a Florida Limited Liability

Company, CEMEX CONSTRUCTION MATERIALS FLORIDA, LLC, a Delaware Limited

Liability Company ("Cemex"), and   L&W SUPPLY CORPORATION d/b/a SEACOAST

SUPPLY ("Seacoast"), a Delaware Corporation, and, in support thereof, state as follows:

## NATURE OF THE ACTION

1.      This is an action for damages arising from the installation of Chinese drywall in a single family home in Boca Raton brought against the builder of the home, Albanese, its drywall subcontractor, OCD, and one or more of the distributors of the drywall, Banner, Cemex, and Seacoast.

2.      As a result of the Defendants' conduct, the Plaintiffs' home has endured systemic property damage.

3.      Plaintiffs bring this action to remedy the damage to the home and their belongings caused and created by the conduct of the Defendants.

## PARTIES, JURISDICTION & VENUE

4.      This is an action for monetary damages in excess of $15,000.00, exclusive of interest, costs and attorney's fees, and this Court otherwise has jurisdiction over the subject matter hereof.

5.      Plaintiffs are residents of Palm Beach County, Florida, and are otherwise *sui juris*.  Plaintiffs are the owners of a single family home located at 17865 Monte Vista Drive, Boca Raton, FL 33496 (the "Building").

6.      Defendant Albanese-Popkin The Oaks Development Group, L.P. is a for profit limited partnership, organized under the laws of the State of Florida, whose principal place of business is located in Palm Beach County, Florida with an address of 1200 S. Rogers Circle, Suite #11, Boca Raton, FL 33487.

7.      At all times mentioned herein, Albanese was, and remains today, engaged in the business of designing and constructing building sites, mass production of lots and attendant improvements and the sale of finished single-family homes and attendant improvements.

8. Albanese designed and constructed building sites, engaged in mass production of lots and attendant improvements, and sold finished single-family homes and attendant improvements within the development known as "The Oaks at Boca Raton" in Boca Raton, Florida.

9. Plaintiffs and Albanese, entered into an "Agreement of Purchase and Sale" (the "Agreement") for the construction and sale of the Building on or about November 23, 2004. A copy of that contract is annexed hereto as **"Exhibit A."**

10. The Building is located within the development known as "The Oaks at Boca Raton."

11. Defendant, OCD, is a for-profit corporation, organized under the laws of the State of Florida, whose principal place of business is located in Broward County, Florida with an address of 3431 S.W. 11th Street, Deerfield Beach, FL 33442.

12. At all times mentioned herein, Defendant OCD was, and, upon information and belief, remains today, engaged in the business of performing drywall installation and related construction.

13. Albanese entered into a contract with OCD, pursuant to which OCD was responsible for the installation and related construction of drywall within all single family homes in the development known as The Oaks at Boca Raton.

14. Pursuant to its contract with Albanese, OCD installed the drywall and performed related construction at the Building.

15. At all times mentioned herein and material hereto, Defendant OCD, in performing such work as it did in connection with the Building, knew and intended that Plaintiffs' home and attendant fixtures and/or improvements would be utilized as a primary residence.

16.     Defendant, Banner, is a for-profit limited liability company, organized under the laws of the State of Florida, whose principal place of business is located in Broward County, Florida with an address of 1660 S.W 13th Court, Pompano Beach, FL 33069.

17.     At all times mentioned herein, Defendant Banner was engaged in the business of purchasing, selling and/or distributing drywall throughout the South Florida area, including Palm Beach County, Florida.

18.     Defendant, Cemex, is a for-profit limited liability company, organized under the laws of the State of Delaware, who is licensed to do business in the State of Florida, and maintains a principal place of business located in Palm Beach County, Florida with an address of 1501 Belvedere Road, West Palm Beach, FL 33406.

19.     At all times mentioned herein, Defendant Cemex was engaged in the business of purchasing, selling, and/or distributing drywall throughout the South Florida area, including Palm Beach County, Florida.

20.     Defendant, Seacoast, is a for-profit corporation, organized under the laws of the State of Delaware, who is licensed to do business in the State of Florida, and maintains a principal place of business located in Cook County, Illinois with an address of 550 West Adams Street, Department 174, Chicago, IL 60661.

21.     At all times mentioned herein, Defendant Seacoast was engaged in the business of purchasing, selling, and/or distributing drywall and has supply centers in the State of Florida, including Palm Beach County, Florida.

22.     One or more of Defendants Banner, Cemex, and Seacoast supplied the Chinese drywall to Defendant OCD which was installed within the Plaintiffs' Building.

23.     The real property which is the subject of this Action is located in Palm Beach County, with an address of 17865 Monte Vista Drive, Boca Raton, FL 33496.

24.     Venue is proper in Palm Beach County, Florida since Palm Beach County is: (a) the domicile of the Plaintiffs and (b) the situs of the real property at issue and the location of the Defendants' negligent conduct.

25.     All conditions precedent to the filing of this Action have occurred or have otherwise been waived.

## FACTUAL ALLEGATIONS COMMON
## TO ALL CAUSES OF ACTION

### The Defects at the Building

26.     On or about October 6, 2006, Plaintiffs moved into their newly-constructed home in the Albanese development known as "The Oaks of Boca Raton" in Boca Raton.

27.     OCD performed all the drywall installation in the Building.

28.     OCD installed what is commonly referred to as Chinese drywall in the Building.

29.     Chinese drywall is universally regarded as being defective, either by its composition, manufacturing process, or both.

30.     OCD purchased the Chinese drywall either directly or indirectly from various suppliers, including, but without limitation, from Defendants Banner, Cemex and Seacoast (collectively referred to herein as the "Suppliers").

31.     The Suppliers purchased, directly and/or indirectly, Chinese drywall that was manufactured in China.

32.     After OCD purchased the Chinese drywall from one or more of the Suppliers, it was in possession of such product until it installed same in the Building.

33.     Property damage was sustained to and within the Building and caused by the release of gases, fumes, and/or vapors from the Chinese drywall brought into the Building in connection with operations being performed on behalf of Albanese by its subcontractor, OCD.

34.     Specifically, OCD brought Chinese drywall into the Building in connection with its operations as the installer of the drywall on behalf of Albanese.

35.     In reaction to the humidity indigenous to the South Florida climate, sulfuric compounds contained within the Chinese drywall (including one or more of hydrogen sulfide, carbonyl sulfide, and carbon disulfide) released gases, fumes, and/or vapors from the Chinese drywall into the indoor air of the Building.

36.     This resulted in a sulfur odor, which could be smelled by the occupants variously throughout the Building and eventually permeated the Building.

37.     The release of gases, fumes, and/or vapors from the Chinese drywall brought into the Building in connection with operations being performed on behalf of Albanese by its subcontractor, OCD, caused and created property damage and/or structure damage to the Building including corrosion on outlet boxes, air conditioning coils, electrical wiring, metals, plumbing fixtures, and the aforementioned sulfur odor which permeated the Building.

38.     Plaintiffs initially discovered damage to the air conditioning coils in one of the seven air handling units ("AHUs") in the Building and first began to notice a periodic sulfur odor in the Building as early as December, 2006.   The periodic sulfur odor continued unabated.

39.     Throughout 2008, damage was discovered to certain other AHUs in the Building.  By Summer, 2009, all seven AHUs had failed due to coil damage.

40.     Plaintiffs did not discover the damage to electrical wiring, metals, and plumbing fixtures until some time between April and May, 2009.

41.     Also in or about April to May, 2009, the sulfur odor in the Building became dramatically more pronounced.  So much so that, from that point forward, it permeated the Building on an ongoing basis and could be smelled on clothing and skin after leaving the Building.

42.     Not until some time between April to May, 2009 was Albanese first notified of the property damage to the Building, including the failure of all seven AHUs, the damage to electrical wiring, metals, and plumbing fixtures, and the sulfur odor that permeated the Building.

43.     Soon thereafter, the Building was inspected for the presence of Chinese Drywall.

44.     Not until the Summer of 2009 did the Plaintiffs discover the cause of the property damage referenced above – namely, the Chinese Drywall installed within the Building.

45.     The Chinese drywall installed in the Building was, at the time it left the Suppliers' hands, in a condition not intended or expected by OCD, Albanese, or the Plaintiffs, and was defective and unreasonably dangerous to the Plaintiffs and to the Plaintiffs' property.

46.     The release of gases, fumes and/or vapors from the Chinese drywall brought into the Building in connection with operations being performed on behalf of Albanese by its sub-contractor, OCD, has been a continuous occurrence and/or repeated exposure to substantially the same generally harmful conditions since such drywall was brought into the Building and/or installed.

**The Consequent Property Damage and**
**Consequences Endured by Plaintiffs**

       47.    The extent of the Chinese drywall in Plaintiffs' home has caused property damage and/or structure damage to the home including corrosion on outlet boxes, air conditioning coils, electrical wiring, metals, plumbing fixtures, and a sulfur odor that permeated the Building on an ongoing basis and could be smelled on clothing and skin after leaving the Building, and damage to certain of Plaintiffs' personal property.

       48.    The property damage cannot be remedied simply by removing and repairing the Chinese drywall in light of the additional damage it has caused to other parts of the Building such as outlet boxes, air conditioning coils, electrical wiring, metals, and plumbing fixtures.  Moreover, the sulfur odor cannot be rectified by repairing or replacing the Chinese Drywall, and requires wholesale remediation and indoor air quality measures to eliminate the odor from the Building.

       49.    Upon information and belief, the cost of completely removing, replacing and remediating the foregoing property damage is, at minimum, in the hundreds of thousands of dollars.

       50.    As a direct and proximate result of the conduct set forth above, Plaintiffs' home is defective, damaged, and not reasonably fit for continued habitation.

       51.    As a proximate result of the defects and conduct set forth above, Plaintiffs have been damaged in other ways which include, but are not limited to, destruction, in whole or in material part, of the Building, the loss of use of said property, and personal injury to the occupants.

       52.    As a further and proximate result of the above, Plaintiffs have been and will be required to employ engineers, contractors, and environmental specialists in an effort to repair, maintain, remediate and/or replace the defects in the home and, as a further and proximate result of the above, Plaintiffs may also be required to employ medical and microbiological experts in the testing, clean-up and replacement of the Chinese Drywall in the Building and the HVAC, elimination

of the sulfur odor, electrical and plumbing materials it has damaged, therein requiring the evacuation and relocation of all of its occupants, replacement and/or proper microbial cleaning of all of the occupants' personal property, including furniture, clothing, books, papers, moving and storage of the occupants' personal property, temporary housing for the occupants and sale and salvage expenses of the Building if the replacement and repair process can not be safely completed.

53.     In the alternative, should it not be possible to salvage the Building using conventional replacement methods, or should the cost of such replacement be too expensive to be worthwhile, the proximate result of the Defendants' conduct will be the cost of employing engineers, contractors and/or architects to destroy and then rebuild Plaintiffs' home.

54.     As a result of the Defendants' conduct, Plaintiffs have been required to retain the services of the undersigned counsel to represent his interests in this action and are obligated to pay a reasonable fee for such services.

## CLASS REPRESENTATION ALLEGATIONS

55.     This Action is brought on behalf of a class.  The class consists of all persons who entered into a purchase and sale agreement as did the Class Plaintiffs pursuant to which Albanese designed and constructed a single family Building in the development known as "The Oaks at Boca Raton" in Boca Raton, Florida and/or at any other development or location within Palm Beach County and pursuant to which OCD (or any other drywall subcontractor) installed Chinese drywall in the Building and one or more of the Suppliers, Banner, Cemex, and Seacoast, supplied the Chinese drywall to OCD.

56.     The class is believed to consist of dozens of members and is therefore so numerous that joinder of all members is impractical.

57.     Plaintiffs' claims are typical of those of the class members.  All claims are based on the same factual and legal theories involving the same form contract, the same

-9-

developer, the same subcontractor, the same suppliers, the same construction practices including the installation of the same Chinese drywall, and the same ultimate relief.

58.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs are well-educated, sophisticated business persons who have retained counsel experienced in construction and real estate litigation and in bringing class actions.

59.     This action should be maintained as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(B) in that the prosecution of separate claims would create a risk of inconsistent adjudications affecting class members in the identical situations which the Defendant would contend are dispositive of the interests of other class members or would substantially impair the ability of other, non-party potential class members to protect their interests.

60.     In particular, there are, upon information and belief, individual actions of similarly situated purchasers pending in this Court which are, also upon information and belief, predicated upon different and legally-incorrect theories of liability which, absent class treatment, would be used by the Defendant to impair the interests of all other similarly-situated class members.

61.     Alternatively, this action should be maintained as a class pursuant to Florida Rule of Civil Procedure 1.220(b)(3).  There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. The principal questions presented are: (1) whether the Defendants violated the law and/or Plaintiffs' rights by installing Chinese drywall in their Buildings; and (2) whether the Defendants are liable for damages as a result of the installation of Chinese drywall in the Buildings and others like it.

-10-

62.     Each specific common question is enumerated above.

63.     The only individual, as opposed to common, issue is the identification of the class members, a matter capable of determination by minimal discovery.

64.     A class action is superior for the fair and efficient adjudication of the class members' claims.  The class members are in an economically disadvantaged position by virtue of the effect the Defendants' actions have had on their residences as well as by the state of the local real estate economy and their rights may not likely be vindicated in the absence of a class action.

## COUNT I.

### NEGLIGENCE
### (Against Defendant OCD)

65.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-64 as if fully set forth herein.

66.     Defendant owed to Plaintiffs the duty to use due care, and to perform in a competent and workmanlike manner all of the work and activity which they agreed to, were required to, and undertook to perform.

67.     Defendant breached their duty of due care to the Plaintiffs by performing their work in a faulty and negligent manner; by performing such work in a manner which fell below accepted standards in their area of practice; by performing work which was inadequate and inappropriate for the purposes for which it was intended; causing and/or contributing to damage to the property of the Plaintiffs and/or personal injury to the occupants thereof; and that such breaches contributed to and/or caused the defects and damages described herein.

68.     At the time Plaintiffs took possession of their home, it was negligently constructed, defective and otherwise incomplete and/or not reasonably fit for its intended purpose.

69.     Plaintiffs' home was not erected in a workmanlike manner and was and/or otherwise became defective in that, among other things, the following defects existed:

(a)      negligent and/or inappropriate installation of Chinese drywall and related construction and/or components which was defective, hazardous, and not suitable for its intended purposes.

70.      All the defects and conditions were latent and in existence at the time of completion of the home.  Said damages are continuous and progressive over time.

71.      The above recital is not exhaustive. Plaintiffs are continuing their investigation.  Additional defects may exist and Plaintiffs will amend this Complaint at such time as additional defects become known.

72.      As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' home, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Building which includes removing and replacing the defective gypsum drywall,  storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or  replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Building.

73.      The foregoing breaches of duty were both the legal and factual cause of the aforementioned damages.

74.      No contractual limitation exists which, under the terms of any contract or under the economic loss rule, would preclude the assertion of the foregoing claim with respect to Plaintiffs' home.

75.     To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiffs with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

WHEREFORE, Plaintiffs ALAN GODDARD and ANNETTE GODDARD respectfully request that this honorable Court enter a judgment against Defendant OCD DRYWALL COMPANY for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## COUNT II.

### NEGLIGENCE
(Against Albanese)
(Vicarious Liability for the Conduct of OCD)

76.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-64 as if fully set forth herein.

77.     Albanese is vicariously liable under principles of respondeat superior for the conduct of any other Defendant whom Albanese hired, and delegated responsibility to, for purposes of performing work in connection with the Building (a "Subcontractor Defendant") and Albanese is therefore responsible for the breach by any Subcontractor Defendant of its duties of due care to the Plaintiffs.

78.     By virtue of the conduct set forth in Paragraphs 1-63 above, Albanese is liable to the Plaintiffs under principles of respondeat superior for OCD's breach of their duty of due care to the Plaintiffs by: performing their work in a faulty and negligent manner; performing such work in a manner which fell below accepted construction standards in their area of practice; performing work which was inadequate and inappropriate for the purposes for which it was intended; causing and/or contributing to damage to the property of the Plaintiffs and/or personal injury to the

occupants thereof; and that such breaches contributed to and/or caused the defects and damages described herein.

79.   At the time Plaintiffs took possession of their home, it was negligently designed, constructed, defective and otherwise incomplete and/or not reasonably fit for continued habitation or for its intended purpose.

80.   Plaintiffs' home was not erected in a workmanlike manner and was and/or otherwise became defective in that, among other things, the following defects existed:

(a)   negligent and/or inappropriate installation of Chinese drywall and related construction and/or components which was defective, hazardous, and not suitable for its intended purposes.

81.   All the defects and conditions were latent and in existence at the time of completion of the home.  Said damages are continuous and progressive over time.

82.   The above recital is not exhaustive.   Plaintiffs are continuing their investigation.  Additional defects may exist and Plaintiffs will amend this Complaint at such time as additional defects become known.

83.   As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' home, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Building which includes removing and replacing the defective gypsum drywall,  storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting,

-14-

84.     The foregoing breaches of duty were both the legal and factual cause of the aforementioned damages.

85.     No contractual limitation exists which, under the terms of any contract or under the economic loss rule, would preclude the assertion of the foregoing claim with respect to Plaintiffs' home.

86.     To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiffs with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

87.     Pursuant to Paragraph 21 of the Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

88.     Plaintiffs are therefore entitled to recover their reasonable attorney's fees and costs incurred should they prevail on this negligence claim.

**WHEREFORE**, Plaintiffs ALAN GODDARD and ANNETTE GODDARD respectfully request that this honorable Court enter a judgment against Defendant ALBANESE-POPKIN THE OAKS DEVELOPMENT GROUP, L.P. for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

## COUNT III.

### BREACH OF IMPLIED WARRANTY
### (Against Albanese and OCD)

89.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-64 as if fully set forth herein.

90.     There exists an implied warranty of merchantability and implied warranty of fitness with respect to the Plaintiffs' home.

91.     This warranty cannot be waived by Defendant Albanese as a matter of law.

92.     The implied warranty associated with the work performed by Albanese' subcontractors was expressly assigned to the Plaintiffs under the terms of the purchase and sale Agreement between Plaintiffs and Albanese.

93.     By virtue of the foregoing recitation of facts, Plaintiffs' home did not meet ordinary standards reasonably to be expected of homes of comparable kind and quality.

94.     No contractual limitation exists which, under the terms of any contract or under the economic loss rule, would preclude the assertion of the foregoing claim with respect to Plaintiffs' home.

95.     To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiff with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

96.     As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' home, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property.

97.     The foregoing breaches were both the legal and factual cause of the aforementioned damages.

98.     Pursuant to Paragraph 21 of the Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

99.     Plaintiffs are therefore entitled to recover their reasonable attorney's fees and costs incurred against Albanese should they prevail on this implied warranty claim.

-16-

**WHEREFORE**, Plaintiffs ALAN GODDARD and ANNETTE GODDARD respectfully request that this honorable Court enter a judgment against Defendants ALBANESE-POPKIN THE OAKS DEVELOPMENT GROUP, L.P. and OCD DRYWALL COMPANY for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

**COUNT IV.**

**BREACH OF CONTRACT**
<u>**(Against Albanese)**</u>

100.    Plaintiffs repeat and reallege the allegations of Paragraphs 1-64 as if fully set forth herein.

101.    Plaintiffs and Albanese, entered into an "Agreement of Purchase and Sale" (the "Agreement") for the construction and sale of the subject home on or about November 23, 2004.

102.    Pursuant to Paragraph 5 of the Agreement entitled "Materials And Color Selections," Albanese expressly provided that "[i]f circumstances arise which warrant changes of suppliers, manufacturers, brand names or other items, Seller may substitute equipment, material, appliances, etc. which are of equal or better quality to that designated on Seller's Plans and Specifications."

103.    The Chinese drywall installed at the Building constituted substitute equipment, material, appliances, etc. yet was not of equal or better quality to the American-produced drywall customarily used by Albanese in connection with its residential construction and set forth in its plans and specifications.

104.    Accordingly, Albanese breached Paragraph 5 of the Agreement.

105.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs'

-17-

home, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Building which includes removing and replacing the defective gypsum drywall,  storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or  replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Building.

106.    The foregoing breach of contract was both the legal and factual cause of the aforementioned damages.

107.    To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiffs with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

108.    Pursuant to Paragraph 21 of the Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

109.    Plaintiffs are therefore entitled to recover their reasonable attorney's fees and costs incurred should they prevail on this breach of contract claim.

**WHEREFORE**, Plaintiffs ALAN GODDARD and ANNETTE GODDARD respectfully request that this honorable Court enter a judgment against Defendant ALBANESE-POPKIN THE OAKS DEVELOPMENT GROUP, L.P. for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

-18-

**COUNT V.**

**BREACH OF CONTRACT/EXPRESS WARRANTY**
**(Against Albanese)**

110. Plaintiffs repeat and reallege the allegations of Paragraphs 1-64 as if fully set forth herein.

111. Plaintiffs and Albanese, entered into an "Agreement of Purchase and Sale" for the construction and sale of the subject home on or about November 23, 2004.

112. Pursuant to Paragraph 39 of the Agreement, Albanese expressly provided to the Plaintiffs a Limited Warranty intended to survive closing (the "Warranty").

113. Upon information and belief, the installation of Chinese drywall and the resultant defects and damages set forth above constitute a breach of the Warranty.

114. Accordingly, Albanese breached the aforementioned Warranty and the contract within which the Warranty is contained.

115. As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' home, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Building which includes removing and replacing the defective gypsum drywall,  storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or  replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Building.

-19-

116.    The foregoing breach of contract was both the legal and factual cause of the aforementioned damages.

117.    To the extent any contractual limitation purported to limit, or preclude altogether, Plaintiffs' ability to assert the foregoing claim, any such limitation would be voidable for failing to leave the Plaintiffs with a cognizable remedy pursuant to Article I, Section 21 of the Florida Constitution and governing common law.

118.    Pursuant to Paragraph 21 of the Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

119.    Plaintiffs are therefore entitled to recover their reasonable attorney's fees and costs incurred should they prevail on this breach of contract claim.

**WHEREFORE**, Plaintiffs ALAN GODDARD and  ANNETTE  GODDARD respectfully request that this honorable Court enter a judgment against Defendant ALBANESE-POPKIN THE OAKS DEVELOPMENT GROUP, L.P. for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

### COUNT VI.

### STRICT PRODUCTS LIABILITY
### (Against Banner, Cemex, and Seacoast)

120.    Plaintiffs repeat and reallege the allegations of Paragraphs 1-64 as if fully set forth herein.

121.    Defendants Banner, Cemex, and Seacoast are each merchants, sellers, and/or distributors of gypsum drywall.

122.    The Chinese drywall installed in the Building was purchased and/or supplied by one or more of Defendants Banner, Cemex, and Seacoast.

123.   The defects causing the damages set forth above existed within the Chinese drywall both at the time of installation of such drywall and while such drywall was within the possession of one or more of Defendants Banner, Cemex, and Seacoast prior to the time it was delivered to OCD to ultimately be installed in the Building.

124.   One or more of Defendants Banner, Cemex, and Seacoast expected the Chinese drywall to reach the Building without substantial change affecting its condition, and the Chinese drywall did, in fact, reach the Building without substantial change affecting its condition.

125.   The Chinese drywall installed in the Building left the hands of one or more of Defendants Banner, Cemex, and Seacoast in a condition not contemplated by Albanese, OCD, or the Plaintiffs and was and remains unreasonably dangerous to the Plaintiffs.

126.   The Chinese drywall installed in the Building and supplied by one or more of Defendants Banner, Cemex, and Seacoast was and remains unreasonably defective because it has caused damage to other property in the Building.

127.   The damages set forth above caused by the Chinese drywall occurred as a result of normal usage of the drywall.

128.   The Chinese drywall installed in the Building and supplied by one or more of Defendants Banner, Cemex, and Seacoast directly and proximately caused damage to other property in the Building including, but not limited to, HVAC system/coils, electrical and plumbing components, metal surfaces/hardware, and other items.

129.   As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' home, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property

including, but not limited to, the cost of fully repairing the Building which includes removing and replacing the defective gypsum drywall, storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or  replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Building.

**WHEREFORE**, Plaintiffs ALAN GODDARD and ANNETTE GODDARD respectfully request that this honorable Court enter a judgment against Defendants BANNER SUPPLY COMPANY POMPANO, LLC, CEMEX CONSTRUCTION MATERIALS FLORIDA, LLC, and  L&W SUPPLY CORPORATION d/b/a SEACOAST SUPPLY for damages, Court costs, and such further and additional relief as the Court deems just, fair and proper.

**COUNT VII.**

**VIOLATION OF THE FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT
(FL. STAT. 501.201-501.213)
<u>(Against Banner, Cemex, and Seacoast)</u>**

130.   Plaintiffs repeat and reallege the allegations of Paragraphs 1-64 as if fully set forth herein.

131.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

132.    An unfair practice under the FDUPTA is a practice that is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

133.    The practice of supplying Chinese drywall for installation in single family residences such as that of the Plaintiffs is an unfair practice under the FDUPTA.

134.    The defects causing the damages set forth above existed within the Chinese drywall both at the time of installation of such drywall and while such drywall was within the possession of one or more of Defendants Banner, Cemex, and Seacoast prior to the time it was delivered to OCD to ultimately be installed in the Building.

135.    The Chinese drywall installed in the Building and supplied by one or more of Defendants Banner, Cemex, and Seacoast directly and proximately caused damage to other property in the Building including, but not limited to, HVAC system/coils, electrical and plumbing components, metal surfaces/hardware, and other items.

136.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, damages to the Plaintiffs' home, personal injury to the Plaintiffs, and damages to the Plaintiffs' personal property including, but not limited to, the cost of fully repairing the Building which includes removing and replacing the defective gypsum drywall, storage of the Plaintiffs' belongings, relocation of the Plaintiffs to suitable housing during such repairs, removal and replacement of metal, plumbing, HVAC, and electrical systems, re-installation or re-application of wall coverings such as wallpaper, plastering, and/or paint, removal, storage, and replacement of fixed items such as cabinets, counter-tops, window coverings, moldings, vanities, toilets, flooring, carpeting, appliances, light fixtures, fans, oven-hoods, and/or  replacement of air conditioning units and/or condensers, as well as damages for stigmatization of the Building.

137.    Pursuant to Fl. Stat. § 501.211(2), the Plaintiffs are entitled to actual damages, plus attorney's fees and court costs as provided in Fl. Stat. § 501.2105.

**WHEREFORE**, Plaintiffs ALAN GODDARD and ANNETTE GODDARD respectfully request that this honorable Court enter a judgment against Defendants BANNER SUPPLY COMPANY POMPANO, LLC, CEMEX CONSTRUCTION MATERIALS FLORIDA, LLC, and  L&W SUPPLY CORPORATION d/b/a SEACOAST SUPPLY for damages, attorney's fees, Court costs, and such further and additional relief as the Court deems just, fair and proper.

DATED this ___ day of December, 2009.

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by U.S. Mail to **LYSA M. FRIEDLIEB, ESQ.**, Sachs Sax Caplan, 6111 Broken Sound Parkway NW, Suite 200, Boca Raton, FL 33487, **BENJAMIN L. BEDARD, ESQ.,** Roberts, Reynolds, Bedard & Tuzzio, P.A., 470 Columbia Drive, Bldg. C101, West Palm Beach, FL 33409**, SARAH M. VAZQUEZ, ESQ.,** Peterson Bernard, 416 Flamingo Ave., Stuart, FL 34996, **SUSAN J. COLE, ESQ.**, Bice Cole Law Firm, 999 Ponce de Leon Boulevard, Suite 710, Coral Gables, FL 33134, **JEFFREY A. BACKMAN, ESQ.,** Adorno & Yoss LLP, 350 East Las Olas Boulevard, Suite 1700, Fort Lauderdale, FL 33301 on this ___ day of December, 2009.

> **SCOTT N. GELFAND, P.A.**
> 5501 University Drive, Suite 101
> Coral Springs, FL 33067
> (954) 255-7900
> (954) 255-7905 (Facsimile)
>
>
> By:_____
>       Scott N. Gelfand
>       Florida Bar No. 0538711

-24-