UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**This document relates to:**<br>**Northstar Holdings, Inc. v General Fidelity, et al.**<br>**2:10-cv-00384-EEF-JCW** | MDL NO. 2047<br><br>SECTION:  L<br><br>JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |

**QUANTA INDEMNITY COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER ACTION TO THE SOUTHERN DISTRICT OF FLORIDA**

Defendant, Quanta Indemnity Company ("Quanta"), files this memorandum in support of its Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue or, in the Alternative, to Transfer Action to the Southern District of Florida.  This Court cannot exercise general jurisdiction over Quanta and venue does not lie in this district.  Accordingly, the Court should dismiss the action under Rule 12(b)(2), 12(b)(3) or, in the alternative, transfer the action to the Southern District of Florida, where it originally should have been brought.

**INTRODUCTION AND BACKGROUND**

*Northstar's Florida Litigation*

Northstar Homes, Inc. and Northstar Holdings, Inc., among others, were named as defendants in a putative class action filed by Katherine Foster in the Southern District of Florida on April 3, 2009.[1]  On behalf of fellow community members in Boynton Beach, Florida, Foster alleged that she had sustained bodily injuries, property damage, and other damages because of drywall in her Florida home.[2]

In response to *Foster*, General Fidelity Insurance Company, which insured Northstar Homes, Inc. and Northstar Holdings, Inc., filed a declaratory judgment action in the Southern District of Florida seeking a ruling that it owed no duty to defend or indemnify Northstar in *Foster*.[3]

Eventually, the Judicial Panel on Multidistrict Litigation ("JPML") transferred nine cases from Florida and Ohio to this Court to be consolidated with the Chinese-Manufactured Drywall Products Liability Litigation, including *Foster*.[4]  The Southern District of Florida complied with the JPML Order and transferred *Foster* to this Court.[5]

Then, on September 8, 2009, the JPML entered a Conditional Transfer Order, conditionally transferring six "tag-along" actions, including General Fidelity's declaratory judgment action.[6]  But, the JPML later vacated that transfer order, determining that General Fidelity's declaratory judgment action should remain in Florida because it "raises distinctly

---

[1] *See* Foster Complaint, attached as Exhibit A.

[2] *See id.* at ¶¶ 1-223.

[3] *See* General Fidelity Complaint, attached as Exhibit B.

[4] *See* JPML Transfer Order dated June 15, 2009, attached as Exhibit C.

[5] *See* Southern District of Florida Transfer Order, attached as Exhibit D.

[6] *See* JPML CTO-6, attached as Exhibit E.

different factual and legal questions from the core allegations at issue in MDL No. 2047, and transfer would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation."[7]

Northstar eventually answered General Fidelity's declaratory judgment action and asserted a counterclaim for declaratory relief.  Nevertheless, on February 11, 2010, Northstar filed another Motion to Transfer with the JPML.[8]  General Fidelity opposed this motion.

***Northstar's Louisiana Lawsuit***

A day later, and in lieu of amending its counterclaim against General Fidelity in Florida to add each of the defendants here, Northstar Holdings, Inc. and Northstar Homes, Inc., along with Northstar Holdings at B & A, LLC (collectively, "Northstar"), filed this insurance coverage lawsuit for declaratory judgment and breach of contract against General Fidelity, Quanta, Mid-Continent Casualty Company and Essex Insurance Company seeking coverage for claims and suits brought against Northstar over the use of Chinese drywall in Northstar's development of homes in Palm Beach County, Florida.[9]

The complaint does not allege any nexus between Louisiana and this insurance coverage dispute.  The complaint alleges that each plaintiff is a Florida citizen.[10]  Northstar allegedly built or sold homes containing Chinese drywall to homeowners in Palm Beach County, Florida between 2005 and 2007.[11]  These Florida homeowners allegedly suffered personal injury,

---

[7] *See* JPML Order Vacating CTO-6, attached as Exhibit F.

[8] *See* Northstar Motion to Transfer, attached as Exhibit G.

[9] *See* Complaint (Rec. Doc. No. 1), ¶ 13.

[10] *See id.*, ¶¶ 1-4.

[11] *See id.*, ¶¶ 13-14.

property damage, or both.[12]  Importantly, however, Northstar does not allege that they built or sold any home in Louisiana or that any homeowner suffered injury in Louisiana.

Nor does Northstar allege that Quanta (or any other defendant) is a Louisiana corporation or maintains its principal place of business in Louisiana.[13]  And although the complaint alleges that Quanta is authorized to conduct business in Louisiana and has issued policies in the state,[14] Northstar does not allege that Quanta sold any insurance policy to Northstar in Louisiana.

### Mid-Continent's Declaratory Judgment Action

These are not the only insurance coverage actions involving Northstar and the homes it built and sold in Florida.  On April 1, 2010, a new declaratory judgment action was filed in the Southern District of Florida.  In that action, Mid-Continent brought suit against, *inter alia*, Northstar, seeking a declaration that it had no duty to defend or indemnify Northstar for claims arising from the use of Chinese drywall in homes built and sold by Northstar in Palm Beach County, Florida.[15]  This declaratory judgment action, like that filed first by General Fidelity and the later one filed by Northstar here, involves similar policy provisions and claims.

## LAW AND ARGUMENT

### I.    This Court Lacks Personal Jurisdiction Over Quanta

Northstar bears the burden of demonstrating that this Court may exercise personal jurisdiction over Quanta.[16]  In making its determination, the Court accepts the allegations of the

---

[12] *See id.*, ¶ 15.

[13] *See id.*, ¶¶ 5-9.

[14] *See id.*, ¶ 7.

[15] *See* Mid-Continent Complaint, attached as Exhibit H.  This Complaint is filed without its attached exhibits which are voluminous and unnecessary for purposes of this motion.

[16] *See, e.g.*, *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994), *cert. denied*, 513 U.S. 930.

complaint as true except to the extent that the defendant's affidavits contradict those allegations.[17]  Further, the Court may also consider pleadings, interrogatories, depositions, oral testimony, exhibits, and any part of the record.[18]

When it sits in diversity, a federal court must determine whether it has personal jurisdiction over a nonresident defendant by examining the state long-arm statute and concluding that the exercise of jurisdiction comports with due process under the United States Constitution.[19]  Recently, this analysis has focused less on presence in the forum state as a means to establish jurisdiction and more on whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum.[20]

Since Louisiana's long-arm statute permits jurisdiction over nonresidents to the fullest limits under the Due Process Clause of the Fourteenth Amendment, "the sole inquiry into jurisdiction is a one-step analysis of the constitutional due process requirements."[21]

The requirements imposed by due process differ according to the type of jurisdiction exercised over the nonresident defendant.  A court's exercise of personal jurisdiction may be

---

[17] *See Wyatt v. Kaplan*, 686 F.2d 276, 282-83 n.13 (5th Cir. 1982) (citing *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977)).

[18] *See Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992).

[19] *See, e.g.*, *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[20] *See Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) ("[T]he Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'").

[21] *See Ruppert v. Geo. Kellett & Sons*, 996 So. 2d 501, 505-06 (La. App. 5th Cir. 2008) (citing *Superior Supply Co. v. Assoc. Pipe & Supply Co.*, 515 So. 2d 790, 792 (La. 1987)).

"specific" or "general".[22]  Where the cause of action relates to the defendant's contact with the forum, the court may exercise "specific" jurisdiction "so long as the contact resulted from the defendant's purposeful conduct."[23]  On the other hand, when the cause of action does not arise from or relate to the defendant's conduct within the forum, the court may exercise "general" jurisdiction *only if* the Court finds "continuous and systematic contacts between the State and the foreign corporation."[24]

### A.    This Court Lacks Specific Personal Jurisdiction Over Quanta

This Court cannot assert *specific* jurisdiction over Quanta since Northstar's suit neither arises out of nor is related to any contacts of Quanta (or any other defendant) with Louisiana.

A defendant's contacts with the forum state may give rise to specific jurisdiction when "(1) ***the defendant purposely directed its activities toward the forum state*** or purposely availed itself of the privileges of conducting activities there; ***and*** (2) ***the controversy arises out of*** or is related to ***the defendant's contacts*** with the forum state."[25]  In other words, "[w]hen the cause of action relates to the defendant's contact with the forum, the 'minimum contacts' requirement is satisfied, and 'specific' jurisdiction is proper, ***so long as that contact resulted from the defendant's purposeful conduct*** and not the unilateral activity of the plaintiff."[26]

---

[22] *Cf. Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (discussing both "specific" and "general" jurisdiction), and cases cited therein.

[23] *See id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)).

[24] *See id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)).

[25] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (emphasis added).

[26] *Bearry v. Beech Aricraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)) (emphasis added).

The allegations made by Northstar fail to satisfy the test for specific personal jurisdiction in Louisiana.  In particular, Northstar, a Florida corporation with its principal place of business in Palm Beach County, Florida,[27] alleges that it is "involved in building homes and residential communities *in Florida*."[28]  Likewise, it alleges that "[t]his action arises from alleged property damage and/or bodily injury allegedly occurring as a result of the use of Chinese drywall in homes that one or more of the Northstar entities sold to homeowners … *in Palm Beach County, Florida*."[29]

Northstar's allegations confirm that a Florida insured seeks coverage for claims arising out of its business activities in Florida and alleged injuries in Florida.  Nowhere is it alleged that any of the underlying facts of this dispute or any of Quanta's activities were directed towards Louisiana.  Absent any contacts with Louisiana by Quanta relating to Northstar's claims, this Court cannot assert specific personal jurisdiction over Quanta.

**B.     This Court Lacks General Personal Jurisdiction Over Quanta**

Since specific personal jurisdiction over Quanta cannot be established, Northstar must instead persuade this Court that it may exercise *general* personal jurisdiction over Quanta. General jurisdiction is present only when the defendant has engaged in "substantial, continuous, and systematic" activities in the forum state.[30]  That is, the non-resident's contacts with the forum must be "so substantial and of such a nature as to justify suit against it on causes of action

---

[27] Compl. ¶¶ 1-4

[28] Compl. ¶ 12 (emphasis added)

[29] Compl. ¶ 13 (emphasis added).

[30] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984); *Wilson*, 20 F.3d at 647.

arising from dealings entirely distinct from those activities."[31]  "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'"[32]

The Fifth Circuit has rejected general personal jurisdiction where "[defendant] was not licensed to do business in Louisiana; did not solicit business there; did not maintain an office there; and did not own property or employ personnel in the state."[33]  More recently, the Fifth Circuit rejected general personal jurisdiction over a defendant, stating that

> APA has never registered to do business in the state, has never maintained any kind of business office or records in the state, and has never paid franchise taxes in the state.  Likewise, even though APA routinely arranges and receives interline shipments to and from Texas and apparently sends sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts, APA has never actually operated any trucks or picked up or delivered any freight in Texas.  Even if APA's contacts with the state of Texas have been, in some sense, "continuous and systematic," APA's activities, *in toto*, are clearly not substantial enough to justify subjecting APA to suit in the Western District of Texas based on a theory of general personal jurisdiction.[34]

### 1.      Quanta Does Not Have Substantial, Continuous Or Systematic Contacts With Louisiana

The only Louisiana contact alleged against Quanta by Northstar is that "Quanta is authorized to conduct business in the state of Louisiana and has issued insurance policies in the

---

[31] *International Shoe*, 326 U.S. at 318.

[32] *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001)); *see also Bearry*,  818 F.2d at 374 ("More contact is required with the forum state because the state has no direct interest in the cause of action."); *Dalton*, 897 F.2d at 1361-62 (5th Cir. 1990) ("[C]ontacts of a more extensive quality and nature are required.").

[33]  *ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990).

[34]  *Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003)

state of Louisiana."[35] This allegation, standing alone, would fail to pass muster under the Fifth Circuit's analysis in *Johnston* and *Central Freight Lines.* Beyond this lone allegation, it becomes even more apparent that Quanta's minimal contacts with Louisiana do not support general personal jurisdiction.

Quanta is a Colorado corporation with its principal place of business in New York.[36] Quanta does not have any insurance agents in Louisiana to write insurance business on its behalf nor does it have any employees in Louisiana, maintain any offices in Louisiana, own real property in Louisiana, or maintain bank accounts in Louisiana.[37] While Quanta has issued policies in Louisiana (although not to the plaintiffs in this lawsuit), these policies accounted for only 1.04% of Quanta's premium revenues in the last seven years.[38] This minimal amount of revenue derived from the forum state does not support general personal jurisdiction.[39]

This record confirms that Quanta does not have the substantial, continuous or systematic contacts with Louisiana that would support a finding of general personal jurisdiction.

---

[35] Compl. ¶ 7.

[36] Miszner Decl. ¶ 3, attached as Exhibit I.

[37] Miszner Decl. ¶ 4-6.

[38] Miszner Decl. ¶ 8.

[39] *See generally Bearry*, 818 F.2d 370 (finding no personal jurisdiction where nonresident defendant had no employees in the forum state even though Beech sold $250 million of goods in the forum through contracts entered into and executed in other states, and purchased $195 million of products from Texas companies); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359 (5th Cir. 1990) (holding that general jurisdiction did not exist even though 12.9% of the company's charter boat revenues were generated in Louisiana, the defendant engaged in advertising that reached Louisiana, and purchased vessels in Louisiana).

**2.      The Traditional Notions Of Fair Play and Substantial Justice Do Not Support General Personal Jurisdiction Over Quanta**

In addition to assessing the number and significance of a defendant's contacts with the forum state, the Court must also determine whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice", which requires consideration of several factors:  (1) the burden on the defendant in defending the lawsuit; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiffs' interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, (5) the shared interest of the states in furthering fundamental substantive social policies.[40]

None of these factors favors the exercise of personal jurisdiction over Quanta by this Court.  First, Quanta will incur a significant burden in defending this suit in Louisiana.  All of the underlying events took place in Florida.  All of the witnesses are located in Florida.  The alleged defective drywall is located in Florida.  Litigating a Florida dispute in Louisiana will needlessly force Quanta to expend time and resources moving between the two states.

Moreover, Northstar's complaint implicates no distinct interest of Louisiana.  Louisiana has no interest in adjudicating a dispute that solely involves Florida plaintiffs for their alleged conduct and any resulting damages in Florida, as well as claims for coverage under policies issued in Florida.

Third, Northstar interest in receiving convenient and effective relief is better served litigating in Florida than Louisiana.  As stated above, the homes at issue, potential witnesses, and all of the underlying events took place in Florida.  In addition, it is likely that the insurance

---

[40] *See Asahi Metal Indus. Co.*, 480 U.S. at 113.

policies issued by Quanta would be interpreted under Florida law.  Having a Florida court apply Florida law is likely more effective than having a Louisiana court apply Florida law.

Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of controversies is not served by exercising general personal jurisdiction over Quanta in Louisiana.  Florida has an interest in having insurance coverage disputes arising in Florida and under Florida law decided by a Florida federal court.  In fact, two actions involving the precise issues presented (and two of the defendants named) by Northstar's complaint here are already pending before the Southern District of Florida.[41]  Therefore, not only does litigation in the Southern District of Florida present the most efficient resolution to this controversy, as that court will be able to address coverage issues for Northstar conclusively in a single forum, but it also ensures consistent, uniform policy interpretation and results.  Litigating the same issues between the same parties in two different forums runs the risk of conflicting rulings.

Northstar will no doubt argue that adjudication of these insurance coverage disputes in the multidistrict litigation pending before this Court will provide the most efficient resolution. This suggestion, however, ignores the weight of the factors discussed above.  First, having Florida insurance coverage disputes adjudicated in Florida will also serve the goal of efficiency sought by multidistrict litigation.  Further, the insurance coverage disputes involve matters distinct from those presented by homeowners' claims in the MDL.  Additionally, Northstar's claims against the various insurers arise out of conduct in Florida.  As two cases arising out of these claims are already pending in the Southern District of Florida, the balance of efficiencies, as well as the combined weight of the other factors considered in the due process analysis, favors a finding that this Court lacks general jurisdiction over Quanta.

---

[41] That is, General Fidelity's declaratory judgment action and Mid-Continent's declaratory judgment action.

Finally, litigation in a federal district court in Florida will advance Florida's fundamental substantive social policies. Florida desires to protect Florida citizens, just as Louisiana desires to protect Louisiana citizens. But this action implicates no distinctly Louisiana interest. On the other hand, the involvement of a Florida citizen, Florida homeowners, and insurance policies issued in Florida directly implicates Florida's substantive social policies of protecting its businesses and homeowners while regulating insurance companies operating in that state. Since Louisiana possesses little, if any, interest in this dispute, the significance of Florida's interest weighs in favor of concluding that this Court's exercise of general jurisdiction over Quanta would not comport with traditional notions of fair play and substantial justice.

In sum, exercise of general jurisdiction over Quanta here would offend "traditional notions of fair play and substantial justice."[42] Because the true interest in this dispute lies in Florida, the Court cannot exercise personal jurisdiction over Quanta consistent with the limits of due process and should dismiss Northstar's claims against Quanta under Federal Rule of Civil Procedure 12(b)(2).

## II.     Venue In This District Is Not Proper Under 28 U.S.C. § 1391(a)

In an action where the Court's jurisdiction is founded upon diversity, a plaintiff must file the action in an appropriate venue identified in 28 U.S.C. § 1391(a):

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is

---

[42] *See generally LeBlanc v. Patton-Tully Transp., LLC*, 138 F. Supp. 2d 817, 819 (S.D. Tex. 2001) (concluding that exercise of jurisdiction in Texas offended traditional notions of fair play, even though defendant derived 13% of its revenue in Texas, as accident involved a Louisiana resident and the cause of action arose in Mississippi).

> subject to personal jurisdiction at the time the action is
> commenced, if there is no district in which the action may
> otherwise be brought.[43]

Northstar bears the burden of demonstrating the satisfaction of one of these three bases, *i.e.*, that

this district is a proper venue under the statute.[44]  And, in general, Northstar must establish venue

"for each separate cause of action and for each defendant."[45]

Here, Northstar alleges that venue in this district is proper under section 1391(a)(3).[46]

Contrary to this allegation, section 1391(a)(3) does not support venue in the Eastern District of

Louisiana.  Indeed, none of the three alternatives for venue under section 1391(a) support venue

in the Eastern District of Louisiana.  Therefore, this Court should dismiss the complaint under

Federal Rule of Civil Procedure 12(b)(3).

A.    **Venue Is Not Proper Under Section 1391(a)(1) Because All Defendants Do Not Reside In The Same State**

Under 28 U.S.C. § 1391(a)(1), a diversity action may be brought in "a judicial district

where any defendant resides, *if all defendants reside in the same State*."[47]  In determining

residence for purposes of venue, section 1391(c) guides this Court, providing that a corporation

is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the

---

[43] 28 U.S.C. § 1391(a) (2010).

[44] *See, e.g.*, *Smith v. Fortenberry*, 903 F. Supp. 1018, 1019-1020 (E.D. La. 1995).

[45] *See Burkitt v. Flawless Records, Inc.*, No. 03-2483, 2005 WL 6225822, *3 (E.D. La. June 13, 2005), and cases cited therein.

[46] *See* Complaint (Rec. Doc. No. 1), ¶ 11.  Northstar also alleges that venue in this district is proper under 28 U.S.C. § 1407.  Quanta addresses this allegation in section III, *infra*.

[47] 28 U.S.C. § 1391(a)(1) (emphasis added).

time the action is commenced."[48]  In light of this special definition, this Court must determine

that it may exercise personal jurisdiction over every defendant.

As discussed above, this Court lacks personal jurisdiction over Quanta.  Therefore, since

not all of the defendants named reside in Louisiana, this district cannot be a proper venue under

section 1391(a)(1).[49]

**B.      Venue Is Not Proper Under 1391(a)(2) Since None Of The Events Or
          Omissions Giving Rise To Northstar's Claims Occurred In Louisiana.**

Alternatively, venue is proper under section 1391(a)(2) in a "judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of property that is the subject of the action is situated."[50]  Under this section, a court evaluates

whether any events that occurred in the district gave rise to the litigation.[51]  In a contractual

context, venue is proper at the location of contracting or where the contract is to be performed.[52]

When this context involves an insurance contract, the insured's principal place of business, the

place where the policy was negotiated and delivered, the place from which the insurance

---

[48] 28 U.S.C. § 1391(c).

[49] *See, e.g.*, *Francis v. E-Z Bus, Inc.*, No. 05-6905, 2006 WL 901761, *1 (E.D. La. April 7, 2006).

[50] 28 U.S.C. § 1391(a)(2).

[51] *See, e.g.*, *Factory Girl, LLC v. Wiersma*, No. 06-2159, 2006 WL 1984649, *1 (E.D. La. July 12, 2006).

[52] *See id.  See also Am. Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. 1981) (holding that under an earlier version of section 1391, venue is proper at the place of performance in an action for breach of contract).

premiums were paid, and the location of the underlying claim become significant to determining proper venue.[53]

        None of these events points to the Eastern District of Louisiana as being the location where a substantial part of the events or omissions occurred.  Northstar alleges no facts suggesting that its principal place of business is in Louisiana, that the insurance policies were negotiated or delivered in Louisiana, or that Northstar paid the insurance premiums in Louisiana. Further, Northstar does not allege that the underlying claims upon which the instant coverage action are founded occurred in Louisiana.  Instead, Northstar alleges that individuals have made claims for property damage, bodily injury, or both arising from "the use of Chinese drywall in homes that one or more of the Northstar entities sold to homeowners . . . in Palm Beach County, Florida."[54]

        A review of Northstar's complaint reveals that none of the events giving rise to Northstar's claims for coverage occurred in Louisiana; all of the significant events, however, did occur in Florida.  For these reasons, venue in this district is not proper under section 1391(a)(2).

---

[53] *See, e.g.*, *Starnet Ins. Co. v. Fueltrac, Inc.*, No. 08-1644, 2009 WL 1210508, *2 (W.D. La. May 1, 2009).  *See also Orleans Limousines & Transp. v. Hurd Ins. Agency*, No. 02-2742, 2003 WL 1193681, *2 (E.D. La. Mar. 13, 2003) (noting venue improper under section 1391(a)(2) where contract claims had no connection with Louisiana); *PIC Group, Inc. v. Landcoast Insulation, Inc.*, No. 09-461, 2009 WL 2912780, *1-2 (W.D. La. Sept. 8, 2009) (noting venue improper under section 1391(a)(2) where the insurance policy was issued in Louisiana, but the accident for which coverage was sought occurred outside Louisiana).

[54] *See* Complaint (Rec. Doc. No. 1), ¶ 13.

**C.      Venue Is Not Proper Under Section 1391(a)(3) Since The Action Could Have Been Brought In Another District**

Finally, section 1391(a)(3) supplies a "catch-all" provision applicable only where venue is not proper in any other district under sections 1391(a)(1) and 1391(a)(2).[55]  Section 1391(a)(3) permits venue in a "judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, *if there is no district in which the action may otherwise be brought*."[56]  Thus, even if this Court could exercise personal jurisdiction over at least one defendant here, Northstar must still demonstrate that it could not have brought suit in any other district.

Northstar relies only on section 1391(a)(3) as the basis for venue in this district.[57]  However, Northstar only focuses on the first half of this section – alleging that "[v]enue is appropriate in this district pursuant to 28 U.S.C. § 1391(a)(3) because the Defendants are subject to personal jurisdiction in this judicial district."[58]  Northstar ignores the second requirement of section 1391(a)(3), namely that there must not be any other judicial district in which the action could be brought.  It is apparent from the face of the complaint that, at a minimum, this action could have been brought in the Southern District of Florida.

The lawsuit makes clear that Northstar, a Florida corporation, is suing over insurance policies, issued to it in Florida, in order to obtain liability coverage for alleged defects relating to

---

[55] *See, e.g.*, *Waldron v. Freightliner Corp.*, No. 96-2530, 1996 WL 737005, *2-3 (E.D. La. Dec. 19, 1996).

[56] 28 U.S.C. § 1391(a)(3) (emphasis added).

[57] Compl. ¶ 11.

[58] *Id.*

homes built in Palm Beach County, Florida.  Under section 1391(a)(2), venue would be proper in the Southern District of Florida.

Therefore, because Northstar could have brought this action in another district – the Southern District of Florida – venue is not proper in this district under section 1391(a)(3).

## III.    Venue in This District is Not Proper Under 28 U.S.C. § 1407

Northstar further alleges that venue in this district is proper according to 28 U.S.C. § 1407, the multidistrict litigation statute.  Section 1407, however, does not create venue.  Rather, it allows the JPML to override venue and transfer matters to a single district in the interests of convenience and efficiency.  The multidistrict litigation statute provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be *transferred* to any district for coordinated or pretrial proceedings."[59]  On its face, section 1407 does not apply here as it does not supply the locus where a party may institute an action.[60]

This case is an original proceeding brought in this district.  It is not subject to any transfer orders by the JPML.  Accordingly, section 1407 does not provide Northstar with a basis for venue in this district.

## IV.    In The Alternative, The Court Should Transfer This Action To The Southern District Of Florida Under 28 U.S.C. § 1406

As an alternative to dismissal, the Court may transfer this action to any district in which Northstar could have filed suit.  Under 28 U.S.C. § 1406(a), the "district court of a district in

---

[59] 28 U.S.C. § 1407(a) (emphasis added).

[60] *Cf.* Order on Motion for Change of Venue dated March 29, 2010 (Rec. Doc. No. 24) in *Travco Ins. Co. v. Ward*, No. 10-cv-00014-RGD-TEM (E.D. Va. Mar. 30, 2010) (denying transfer of insurance coverage dispute to the Eastern District of Louisiana under 28 U.S.C. § 1391(a) and 28 U.S.C. § 1407 where the defendant is a resident of Virginia and the home at issue is located in Virginia), attached as Exhibit J.

which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[61]

As noted above, Northstar's complaint alleges that the claims for defective drywall have been made in Palm Beach County, which is located in the Southern District of Florida. Thus, Northstar could have brought this action in the Southern District of Florida, where the entities are currently involved in litigation with homeowners, General Fidelity, and Mid-Continent, and where, with respect to the coverage claims at issue here, all defendants reside for purposes of section 1391(a)(1). And because venue cannot lie in this district under either section 1391 or section 1407, this Court may, in lieu of dismissal, transfer this action to the Southern District of Florida under section 1406.[62]

**V.    In The Further Alternative, This Court Should Transfer This Action To The Southern District Of Florida Under 28 U.S.C. § 1404(a)**

Assuming, *arguendo*, that this action is properly brought in this district (which it is not), transfer to the Southern District of Florida is still warranted under 28 U.S.C. § 1404(a). Section 1404(a) states "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have

---

[61] 28 U.S.C. § 1406(a) (2010).

[62] *See Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1107 (5th Cir. 1981) (noting that transfer to a district in which personal jurisdiction over the defendant may be obtained may properly be made under section 1406(a)); *Starnet Ins. Co.*, 2009 WL 1210508 at *2 (transferring the case to a district where insured resides and a substantial part of the events giving rise to the litigation occurred).

been brought."  The purpose of section 1404(a) is to prevent plaintiffs from abusing their privilege under section 1391 by subjecting defendants to venues that are inconvenient.[63]

The Fifth Circuit in *In re Volkswagen of America, Inc.*[64] set forth the legal standard that district courts should apply in deciding a motion to transfer.  The Court stated that "the burden that a moving party must meet to justify a venue transfer is less demanding that that a moving party must meet to warrant a *forum non conveniens* dismissal."[65]  And, although the moving party bears the burden of showing "good cause," this burden is satisfied if the transferee venue is "clearly more convenient."[66]

In determining whether the transferee venue is clearly more convenient, courts consider the private and public interest factors articulated in *Piper Aircraft Co. v. Reyno*[67] and *Gulf Oil Corp. v. Gilbert*.[68]  The private interest factors include:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.[69]  The public interest factors include:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having

---

[63] *BLB Aviation South Carolina, LLC v. Jet Linx Aviation Corp.*, No. 09-66-C, 2010 WL 370342, *3 (M.D. La. Jan. 29, 2010).

[64] 545 F.3d 304 (5th Cir. 2008).

[65] *Id.* at 314.  *Cf. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.").

[66] *In re Volkswagen of America, Inc.*, 545 F.3d at 315.

[67] 454 U.S. 235 (1981).

[68] 330 U.S. 501 (1947).

[69] *See In re Volkswagen of America, Inc.*, 545 F.3d at 315.

localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.[70]  The plaintiff's choice of forum, while a factor to be considered, is neither conclusive nor determinative.[71]

### A.    Private Interest Factors Weigh In Favor Of Transfer.

As discussed above, all events giving rise to this dispute took place in Palm Beach County, Florida.  That is where the insureds reside, where the policies were delivered, where the homes were built, and where the underlying injuries allegedly occurred.  To the extent Northstar has any documents necessary to resolve this dispute, those documents would be located in Palm Beach County, Florida.  The cost of litigating this matter in Florida is lower and the convenience of doing so is higher than it would be in Louisiana.

### B.    Public interest factors also weigh in favor of a transfer.

As the complaint makes clear, this dispute is a Florida dispute.  Louisiana has no interest in protecting Florida corporations or in administering Florida insurance law.  Indeed, a Florida court is much better positioned to opine on Florida law than a Louisiana court.

Quanta has met its burden of demonstrating that another forum is "clearly more convenient."  As such, this Court should transfer this case to the Southern District of Florida under 28 U.S.C. § 1404(a).

### CONCLUSION

This court lacks personal jurisdiction over Quanta because Quanta does not have sufficient contacts with Louisiana to satisfy the tests for either specific or general personal

---

[70] *See id.*

[71] *Shull v. United Barge Lines*, No. 09-5515, 2010 WL 745006, *5 (E.D. La. Feb. 26, 2010) (citing *In re Horseshoe Entm't.*, 337 F.3d 429, 434-35 (5th Cir. 2003)).

jurisdiction.  Additionally, Northstar cannot satisfy its burden of demonstrating that venue is proper in this district under 28 U.S.C. § 1391 or 28 U.S.C. § 1407.  Instead, this dispute, which involves Florida plaintiffs, Florida homeowners, and insurance policies issued in Florida, should be dismissed or, in the alternative, transferred to the Southern District of Florida.

Respectfully submitted,

*Madeleine Fischer*

MADELEINE FISCHER, T.A. (5575)
JOSEPH J. LOWENTHAL JR. (8909)
ERIC MICHAEL LIDDICK (31237)
CHRISTOPHER D. CAZENAVE (32795)
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 51st Floor
New Orleans, Louisiana   70170
Telephone:  (504) 582-8000 / Direct:  582-8208
Direct Facsimile:  (504) 589-8208
E-mail:  mfischer@joneswalker.com
E-mail:  jlowenthal@joneswalker.com
E-mail:  eliddick@joneswalker.com
E-mail:  ccazenave@joneswalker.com

*Attorneys for Quanta Indemnity Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Notice of Appearance has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 7th day of May 2010.

*Madeleine Fischer*
MADELEINE FISCHER