# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

CASE NO. _____

KATHERINE L. FOSTER, on behalf of
herself individually and all others
similarly situated,

      Plaintiffs,

v.

NORTHSTAR HOLDINGS, INC., a
Florida corporation; NORTHSTAR
HOMES, INC., a Florida corporation;
KNAUF GIPS KG, a German corporation;
KNAUF PLASTERBOARD
(TIANJIN) CO., LTD., a Chinese limited
liability corporation; KNAUF
PLASTERBOARD (WUHU) CO. LTD.;
KNAUF PLASTERBOARD
(DONGGUAN) CO. LTD.;
USG CORPORATION, a foreign
corporation; BANNER SUPPLY
CO., a Florida corporation; ROTHCHILT
INTERNATIONAL LTD., a foreign
corporation; Developer/Builder Does 1-100;
Supplier Does 1-100; Installer Does 1-100;
and Distributer Does 1-100;

      Defendants.

**09-80535**

**CIV-COHN**

CIVIL ACTION
JURY TRIAL DEMANDED

MAGISTRATE JUDGE
SELTZER

FILED by ___ D.C.

APR – 3 2009

STEVEN M. LARIMORE
CLERK U S DIST CT
S. D. of FLA. – MIAMI

## CLASS ACTION COMPLAINT

Plaintiff, Katherine L. Foster, brings this action on behalf of herself and on behalf of a

Class of persons described below.  Plaintiff brings this action against Northstar Holdings, Inc.

and Northstar Homes, Inc.; Knauf Gips KG, Knauf Plasterboard (Tianjin) Co., Ltd., and Knauf

Plasterboard (Donguuan) (collectively referred to herein as "Knauf"); USG Corporation, Banner

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

Exhibit A

Supply Company, Rothchilt International Ltd.("Rothchilt"), Supplier Does 1-100 (collectively referred to herein as "Suppliers"); Installer Does 1-100 (collectively referred to herein as "Installers"); and Distributer Does 1-100 (collectively referred to herein as "Distributers"). All facts contained in this complaint are alleged upon information and belief and based upon the investigation of counsel.

## INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of all other similarly situated owners of homes in the United States built using the defective drywall described herein. Alternatively, Plaintiff brings this action individually and on behalf of all other similarly situated owners of homes in the State of Florida built using the defective drywall described herein.

2.      Defendants' drywall used in the homes of Plaintiff and the Plaintiff Class Members is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors, and causes damage and corrosion ("the Defect") to home structure and mechanical systems such as air-conditioner and refrigerator coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and other property such as microwaves, utensils, personal property, electronic appliances, jewelry, and other household items ("Other Property"). The compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure. These chemical compounds cause and have caused dangerous health consequences including, among other things, respiratory problems, sinus problems, eye irritation and nose bleeds.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

3.     This Defect is latent and existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted.  There is no repair that will correct the Defect.

4.     As a result of Defendants' conduct as alleged herein, Plaintiff and thousands of other Class Members have suffered economic losses by owning homes containing inherently defective drywall that has caused damage to their homes and Other Property.

5.     Plaintiff and Class Members have incurred or will incur tens of thousands of dollars in damages including, but not limited to:  repair/replacement of homes, Other Property, any materials contaminated or corroded by the drywall as a result of "off-gassing," incidental and consequential damages.

6.     Further, as a result of Defendants' conduct as alleged herein, Plaintiff and thousands of others Class Members have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical monitoring.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one plaintiff is diverse from at least one defendant.

8.     Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c). Defendants are incorporated and headquartered within this Federal Judicial District, advertise in this District, build homes in this District, have made material omissions and misrepresentations

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

and breaches of warranties emanating from this District, or are otherwise subject to personal jurisdiction in this District.

## THE PARTIES

### PLAINTIFF

9.      Plaintiff, Katherine L. Foster, lives and resides in Palm Beach County, and owns and resides in a home located at 8777 Cobblestone Preserve Court, Boynton Beach, Florida 33472. Plaintiff's home was built by the Northstar Defendants using defective drywall in approximately 2006. Plaintiff has had substantial problems with the home, including but not limited to the corrosive effects of the sulfur and/or other compounds in the drywall, has suffered adverse medical effects and personal injury, and has suffered injury to personal and real property as a result of Defendants' conduct as further described herein.

### DEFENDANTS

**Developer/Builder Defendants:  Northstar Holdings, Inc. and Northstar Homes, Inc.**

10.      Defendant Northstar Holdings, Inc. is a Florida for Profit Corporation with its principal place of business in Palm Beach County, Florida.

11.      Defendant Northstar Homes, Inc. is a Florida for Profit Corporation with its principal place of business in Palm Beach County, Florida.

12.      Defendants Northstar Holdings, Inc. and Northstar Homes, Inc. are affiliated companies located at the same address and having the same principal officers and directors. The Northstar Defendants operate under the trade name of "Northstar Homes" (collectively referred to as "the Northstar Defendants," "Northstar Homes," or "Builder"). Northstar Homes is a leading South Florida home builder and since its inception it has built thousands of homes in

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

numerous communities in the State of Florida.   Northstar Homes developed and built "Cobblestone Creek," the community where the Plaintiff's home is situated.

13.    Upon information and belief, the Northstar Defendants, and John Doe Builder/Developer Defendants, installed defective drywall in the Plaintiff's and Class Members' homes located in the State of Florida.   Defendants' acts or omissions, directly or indirectly through its agents, employees, or affiliates, with respect to the defective drywall have injured Plaintiff and Class Members as alleged herein.

**Manufacturer Defendants:  Knauf Entities**

14.    Defendant Knauf Gips is a German corporation doing business in the State of Florida with its principal place of business located at Postfach 10, D-97343 Iphofen, Germany. Knauf Gips is a leading manufacturer of building materials and systems.  Knauf Gips, together with its affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan), provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin, and its agents, apparent agents, and employees.

15.    Among other things, in 1995, Knauf Gips introduced its advanced production techniques and technology into China.  From 1997 through 2001, Knauf Gips invested in China and established three plasterboard plants which are located in Wuhu, Tianjin and Dongguan. The product quality of all Knauf Gips' plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany.  Moreover, Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

world, including Knauf Tianjin in China.  Knauf Tianjin and its employees are the actual and/or apparent agents in Knauf Gips.

16.     Upon information and belief, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the United States, including Florida.  Upon information and belief, Knauf Gips and/or Knauf Tianjin has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and throughout the United States, and their drywall is installed in numerous homes in the United States, including Florida.  As discussed more fully below, Knauf Gips and/or Knauf Tianjin manufactured and sold, directly or indirectly, to certain suppliers in the United States and Florida, including Defendants USG Corporation, Banner Supply, Rothchilt, and Does 1-100, defective gypsum drywall that was installed in homes being built by Northstar Homes and others, thereby causing substantial damage to Plaintiff and the Class.  Moreover, Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the United States and the State of Florida and by hiring agents within the State of Florida to investigate the very allegations at issue in this lawsuit.

17.     Knauf Gips employs approximately 20,000 employees worldwide, with more than 130 production plants, and generates annual sales in excess of €4.8 billion.

18.     Knauf Gips provided defective drywall to one or more of the Plaintiffs' homes.

19.     Knauf Gips improperly manufactured, marketed, and later distributed the subject defective drywall in the United States, including Florida.  Defendant also failed to provide

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

adequate warnings regarding the hazardous and defective nature of Chinese drywall in the United States, including Florida.

20.    The quality of all Knauf Gips' Chinese drywall plants in China is supervised, overseen, and controlled according to the requirements of Knauf Gips' headquarters in Germany.

21.    Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan and their employees are the actual and/or apparent agents of Knauf Gips.

22.    Upon information and belief, Knauf Gips by itself and/or through its agents, subsidiaries, and/or affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) has continuously and systematically distributed and sold drywall to numerous purchasers in the United States, including Florida, with the knowledge that its drywall would be and is installed in numerous homes in the United States, including Florida.

23.    As discussed more fully below, Knauf Gips by itself and/or through its agents, subsidiaries and affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold, directly and indirectly, to certain suppliers in the United States and Florida, including Defendants USG Corporation, Banner Supply, Rothchilt, and Supplier/Installer/Distributer Does 1-100, defective Chinese drywall that was installed in homes being built in the United States, including Florida, thereby causing substantial damage to Plaintiff and Class Members in the United States, including Florida.

24.    Knauf Gips and each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) participated in the wrongful acts herein.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

25.     Knauf Gips and each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) also acted in joint enterprise, joint venture and as each other's agent within the course and scope of said agency.

26.     At all times relevant hereto, Defendant Knauf Gips and each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) acted by and through their employees, agents, apparent agents and representatives, who were acting within the course and scope of their employment, agency, apparent agency and representation and in the furtherance of Defendants' interests.

27.     Defendant Knauf Gips is the parent corporation of the Knauf Entities (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan). Knauf Gips individually participated, ratified, approved and directed the improper or illegal acts and omissions described herein.

**Knauf Gips' Chinese Drywall Distribution**

28.     Upon information and belief, tens of millions of square feet of Defendant Knauf Gips defective drywall was used in the construction of United States homes, including Florida homes, between 2004 and the present.

29.     Because of a shortage of construction materials from a booming housing market and massive damage in the United States in 2005 caused by Hurricanes Katrina and Wilma, domestic builders, suppliers, and importers began bringing significant stocks of foreign manufactured drywall into the United States.

30.     At least 550 million pounds of Chinese drywall came into the United States from approximately 2004 to 2006 -- enough to construct 60,000 average-size homes.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

31.     Nearly 60 percent of the Chinese drywall that came into the United States came in through Florida ports, as well as ports located in other U.S. States, including Louisiana, Texas, and ports along the east coast of the United States.

32.     Miami's port received the largest number of shipments of Chinese drywall. Public records show that more than 100 million pounds of Chinese drywall were off-loaded in Miami. Other ports with significant Chinese drywall off-loading include Port Everglades (80 million pounds), Tampa (50 million pounds), as well as Port Manatee, Pensacola, Port Canaveral, and Jacksonville.

33.     At least 37 million pounds of Knauf drywall was shipped directly from three sites in China to Florida through Tampa and Port Canaveral. Knauf Tianjin sent an additional amount (characterized by company officials as "most" of its drywall) into Miami.

34.     In March 2006, Knauf Dongguan shipped 11 million pounds of Chinese drywall aboard the cargo ship *Afra*. This shipment was unloaded in Port Canaveral.

35.     In the spring of 2006, the cargo ship *Great Immensity* unloaded one shipment of more than 16 million pounds of Chinese drywall manufactured by Knauf Tianjin -- enough to make approximately 1,700 homes. The *Great Immensity* unloaded shipments at more than two dozen ports throughout the United States, including seven in Florida.

36.     Shipping records show coordination between Knauf's Chinese subsidiaries, such as sharing the same vessel to transport their product to the U.S. In April 2006, the *Yong An Cheng* took three shipments from Knauf Wuhu and a fourth from Knauf Dongguan to the U.S. All were imported by United States Gypsum Corporation, one of the largest manufacturers of domestic drywall in the U.S. market.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

37.     Knauf Tianjin, one of three Knauf Gips Chinese subsidiaries, admits that it manufactured and imported at least 20 percent of the imported Chinese drywall that came into the United States.

38.     Shipping information indicates that Knauf Tianjin sent at least 38.7 million pounds Chinese drywall to the United States in 2006 and Knauf Wuhu sent at least 28.6 million pounds of Chinese drywall.  Based on U.S. Customs and Census information, these figures would indicate that 78 percent of Chinese drywall imports in 2006 came from these two Knauf plants.

39.     Many builders in the United States and Florida have admitted using Knauf Chinese drywall in communities throughout the United States and Florida.

**Knauf Gips' Subsidiary-Knauf Tianjin**

40.     Upon information and belief, Defendant Knauf Tianjin, is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at North Yinhe Bridge, East Jingjin Road, RC-300400, Tianjin, China.

41.     Defendant Knauf Tianjin manufactured and distributed defective drywall that is in one or more of Plaintiffs' homes.

42.     Knauf Tianjin improperly manufactured, marketed, and distributed the subject defective drywall in the United States.  Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Knauf Gips' Subsidiary-Knauf Wuhu**

43.     Upon information and belief, Defendant, Knauf Wuhu, is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at No. 2 Gang Wan Road, RC-241009, Wuhu Anhui, China.

44.     Defendant Knauf Wuhu manufactured and distributed defective drywall that is in one or more of Plaintiffs' homes.

45.     Knauf Wuhu improperly manufactured, marketed, and distributed the subject defective drywall in the United States.   Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Knauf Gips' Subsidiary-Knauf Dongguan**

46.     Upon information and belief, Defendant Knauf Dongguan, is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at No.2 Xinsha Development Zone, RC-523147, Guangdong, China.

47.     Defendant Knauf Dongguan manufactured and distributed defective drywall that is in one or more of Plaintiffs' homes.

48.     Knauf Dongguan improperly manufactured, marketed, and distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

**Defendant Distributors/Suppliers**

**Defendant USG Corporation**

49.      Defendant USG Corporation is a Delaware corporation authorized to do and doing business in the State of Florida.  USG, together with its various affiliates, is the nation's largest distributor of drywall and related building products.

50.      Defendant USG Corporation exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the United States, including Florida.  Directly or indirectly through agents, affiliates or co-conspirators, Defendant USG Corporation's acts or omissions related to defective Drywall have injured Plaintiff and Class Members as alleged herein.

**Defendant Banner Supply**

51.      Defendant Banner Supply is a Florida corporation with its principal place of business located in the Southern District of Florida at 7195 N.W. 30th Street, Miami, Miami-Dade County, Florida  33122.

52.      Defendant Banner Supply exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the State of Florida.  Directly or indirectly through agents, affiliates or co-conspirators, Defendant Banner Supply's acts or omissions related to defective Drywall have injured Plaintiff and Class Members as alleged herein.

**Defendant Rothchilt International Ltd.**

53.      Defendant Rothchilt is a foreign corporation doing business in the State of Florida with its principal place of business located at N-510 Chia Hsin Bld., Annex 96 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan R.O.C.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

12

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

54.     Defendant Rothchilt exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the United States, including Florida.   Directly or indirectly through agents, affiliates or co-conspirators, Defendant Rothchilt's acts or omissions related to defective Drywall have injured Plaintiff and Class Members as alleged herein.

55.     Defendant Distributor/Suppliers USG Corporation, Banner Supply and Rothchilt also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall in the United States.

56.     The identities of Distributor Does 1-100, Supplier Does 1-100, and Installer Does 1-100 are unknown to Plaintiff at this time.   These John Doe Defendants are builders, installers, and suppliers of defective drywall whom Plaintiff has not yet been able to identify.   When the identities of these individuals and/or entities are discovered, undersigned counsel will amend the Complaint to specifically name the Defendants referred to as Distributor Does 1-100, Supplier Does 1-100, and Installer Does 1-100.

## GENERAL ALLEGATIONS

**A.     Drywall Background**

57.     Drywall is also commonly known as gypsum board, wallboard, plasterboard, rock lath, sheetrock, gyproc, or simply, board.

58.     A drywall panel is made of a paper liner wrapped around an inner core made primarily from hardened gypsum plaster.

59.     Drywall is typically available in 4 feet (1219 mm) wide sheets of various lengths. Newly formed sheets are cut from a belt, the result of a continuous manufacturing process.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550  Fax: 305-571-8558 · www.abbrclaw.com

60.     The most commonly used drywall is ½ inch thick but can range from ¼ inch (6.35 mm) to one inch (25.4 mm) thick.

61.     The core material of drywall, gypsum, is available in two forms, pure gypsum, which is naturally occurring, and synthetic gypsum, which is manmade.

62.     Pure gypsum is a white to transparent mineral, but sometimes impurities color it grey, brown, or pink.

63.     Synthetic gypsum is generally manufactured with byproducts of coal-fired power plants.

64.     Coal combustion byproducts ("CCBs") or coal combustion products ("CCPs") are the inorganic residues that remain after pulverized coal is burned.

65.     The primary CCBs used in drywall are byproducts resulting from a utility's attempts to remove sulfur from flue gases.

66.     In order to meet emission standards, many utilities have installed flue gas desulfurization ("FGD") equipment.  Flue gas desulfurization is a chemical process to remove sulfur oxides from the flue gas at coal-burning power plants.

67.     Various FGD methods have been developed that chemically combine the sulfur gases released in coal combustion by reacting them with a sorbent, such as limestone or lime.

68.     As the flue gas comes in contact with the slurry of calcium salts, sulfur dioxide reacts with the calcium to form hydrous calcium sulfate, otherwise known as gypsum.

**B.     How Drywall Is Created**

69.     In order to form drywall, gypsum must be "calcined," or partially dehydrated by heating.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

70.     When gypsum is heated, it loses about three quarters of its water and becomes hemihydrate gypsum which is soft and can be easily ground to a powder called hemihydrate gypsum plaster.

71.     The gypsum powder is then mixed with water to form a paste or slurry.

72.     While the hemihydrate gypsum plaster is in slurry form, it is poured between two paper layers to make drywall.

73.     Drywall is formed by sandwiching a core of wet gypsum between two sheets of heavy paper or fiberglass mats.  When the core sets and is dried in a large drying chamber, the "sandwich" becomes rigid and strong enough for use as a building material.

74.     The paste or slurry is typically mixed with fiber (usually paper and/or fiberglass), plasticizer, foaming agent, potash as an accelerator, starch or other chelate as a retarder, various additives that increase mildew and fire resistance (fiberglass or vermiculite), and water.

75.     Drywall may consist of two other materials with sulfur content: alkyl ethoxy sulfates as foaming agents and lignin or napthalene sulfonates as dispersing agents.

**C.     The Defective Drywall Emits Noxious and Corrosive Levels of Sulfur**

76.     Upon information and belief, Defendants' drywall contained naturally mined gypsum and synthetic gypsum manufactured from CCBs.

77.     When gypsum, mined or synthetic, is subjected to certain environmental conditions, the product breaks down into sulfate ions which in turn can be chemically transformed into hydrogen sulfide gas and other sulfide gases.

78.     The problem of sulfide emissions from drywall is well understood in the drywall industry and has been studied for many years.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

79.     The level of sulfides emitted from drywall may depend, in part, on contamination of the drywall with sulfur materials or the use of contaminated gypsum materials.

80.     Sulfide emissions from drywall have been a particular problem in landfills and, as such, many landfills refuse to accept drywall or place strict limitations on the amounts and on the ways in which drywall can be disposed. An independent consulting firm, hired by a Miami-based builder, has concluded there is little doubt that the drywall manufactured by Defendants is the cause of the corrosion in many residents' homes.

81.     One of the managing principles of the independent testing firm stated that: "We have definitely identified that a combination of sulfide gases are the cause of the corrosion of the coils. The substances we've found are well known to cause that kind of corrosion."

82.     The firm's December 2008 results found three sulfide gases: carbon disulfide, carbonyl sulfide and dimethyl sulfide.

83.     Hydrogen sulfide was found in previous testing that the company conducted on the Defendants' drywall: "Our previous studies indicate, however, that carbon disulfide, carbonyl sulfide, and hydrogen sulfide are gases that can be associated with emissions from Chinese drywall."

84.     According to a Knauf statement, the company "is doing its own investigation, and believes the problem drywall came from a specific [gypsum] mine, which also supplied other manufacturers." According to Knauf, the company stopped using the questionable mine in 2006.

85.     According to published reports, however, some independent environmental testing firms and building experts have said the source of the drywall problem is waste materials from the scrubbers of coal-fired power plants used to make the drywall in China.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

86.     Knauf's 2009 statement also noted: "Until last year in Florida, no complaint had been raised and no product had been rejected because of odor or impacts to copper in the nine years of [Knauf Tianjin's] operation."

87.     Knauf received complaints from builders and contractors about "rotten egg" smells coming from its Chinese-manufactured drywall as far back as 2006.

88.     In November 2006, in response to reports of odors associated with its drywall, Knauf hired the Center for Toxicology and Environmental Health, L.L.C. (CTEH) to conduct an air quality investigation in five homes in Florida.

89.     Knauf's 2009 statement also declared: "The sulfur compounds detected in testing in homes have been found at no greater levels than air outside homes or in soil, marshes or the ocean."

90.     Knauf's 2006 testing revealed, however, that its product released detectable, above-background levels of various sulfur containing compounds. In particular, Knauf's testing revealed the presence of iron disulfide from its Chinese Drywall as the likely source of the sulfur smells. Knauf's testing agency declared: "These data indicate that certain naturally-occurring sulfur-containing compounds can be emitted from the Knauf Tianjin product at concentrations higher than present in background air."

91.     One importer acknowledged in published reports that the defective Chinese Drywall was "well known in the industry" by 2007.

92.     No member of the Class could have discovered the existence of the defect in the Chinese-manufactured drywall until press reports about the defects were released in December 2008.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

**D.      The Need for Medical Monitoring for the Health Effects of Sulfur Emitting Drywall**

93.      Hydrogen sulfide ("H2S"), one of the chemicals found to have been released from drywall, is considered a broad-spectrum poison, meaning that it can poison several different systems in the body, although the nervous system is most affected.

94.      The toxicity of H2S is comparable with that of hydrogen cyanide. It forms a complex bond with iron in the mitochondrial cytochrome enzymes, thereby blocking oxygen from binding and stopping cellular respiration.

95.      Exposure to lower concentrations of sulfides can result in eye irritation, a sore throat and cough, nausea, shortness of breath, and fluid in the lungs.

96.      Long-term, low-level exposure to sulfides has been associated with fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness. Chronic exposure to low levels of sulfides has also been implicated in increased miscarriage and reproductive health issues.

97.      Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall, which was unreasonably dangerous in its normal use, in that the drywall caused corrosion and damage to the structure and mechanical systems of homes, as well as Other Property in Plaintiff's and Class Members' homes, and it caused medical ailments, including allergic reactions, coughing, sinus and throat infection, eye irritation, breathing disorders, other health problems, and/or significantly increased the risk of contracting a serious latent disease.

98.      As a direct and proximate result of Defendants' actions and omissions, Plaintiff's and the Class Members' homes and bodies have been exposed to Defendants' drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

99.     As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the Plaintiff and the Class Members have suffered, and continue to suffer damages.  These damages include, but are not limited to, costs of inspection as well as the costs and expenses necessary to remedy, replace and remove the defective drywall and Other Property that has been affected.

100.    As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the Plaintiff and the Class Members have suffered, and continue to suffer damages for injuries from medical ailments.

101.    As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, Plaintiff and Class Members have been exposed to above-background levels of sulfides and other harmful chemicals, have been placed at an increased risk of disease, and have need for injunctive relief in the form of emergency notice, environmental testing and monitoring, and medical monitoring.

**E.     The Sulfur Emitting Drywall Injures the Health of Affected Homeowners**

102.    This defective drywall causes adverse health consequences such as respiratory problems, sinus problems, eye irritation and nosebleeds, in addition to the creation of noxious odors, which smell like "rotten eggs."

<strong>Conditions Precedent</strong>

103.    All notice required by Chapter 558, Florida Statutes, and conditions precedent to bringing this action have been met or will have been met or were waived by Defendants.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

19

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

## CLASS ACTION ALLEGATIONS

104.    Plaintiff brings this case as a Class Action pursuant to Fed. R. Civ. P. 23 individually and on behalf of a class defined as:

> All owners and residents of homes in the United States, which contain drywall manufactured, sold or installed by Defendants that emits excessive amounts of sulfur as well as any individual or entity that paid for or performed repairs of damage caused by the drywall. Defendants, their officers, directors, subsidiaries, or any person or other entity related to, affiliated with or employed by Defendants are excluded from the Class Definition.

Expressly excluded from the Classes defined above are:

A.    Defendants and any entities in which Defendants have a controlling interest;

B.    Any entities in which Defendants officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

C.    The Judge and Magistrate to whom this case is assigned and any member of the Judge's or Magistrate's immediate family; and

D.    All persons or entities that properly execute and timely file a request for exclusion from the Class.

105.    In the alternative, Plaintiff brings this case as a Class Action pursuant to Fed. R. Civ. P. 23 individually and on behalf of a class of all others similarly situated in the State of Florida, defined as:

> All owners and residents of homes in the State of Florida, which contain drywall manufactured, sold or installed by Defendants that emits excessive amounts of sulfur as well as any individual or entity that paid for or performed repairs of damage caused by the drywall. Defendants, their officers, directors, subsidiaries, or any person or other entity related to, affiliated with or employed by Defendants are excluded from the Class Definition.

Expressly excluded from the Classes defined above are:

A.      Defendants and any entities in which Defendants have a controlling interest;

B.      Any entities in which Defendants officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

C.      The Judge and Magistrate to whom this case is assigned and any member of the Judge's or Magistrate's immediate family; and

D.      All persons or entities that properly execute and timely file a request for exclusion from the Class.

**NUMEROSITY**

106.    The Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable.  The exact number or identification of Class members is presently unknown to Plaintiff, but it is believed that Class members number at least in the thousands.  The identity of Class members is ascertainable.  Class members may be informed of the pendency of this Class action by a combination of direct mail and public notice, or other means.

**COMMONALITY**

107.    Common questions of fact and law exist as to all members of the Class, which predominate over questions affecting only individual members of the Class.  These include, but are not limited to, the following:

a.      Whether Defendants manufactured and sold defective drywall;

b.      Whether Defendants are liable for the repair and replacement of all defective drywall;

c.      Whether Defendants are liable for the repair and replacement of all

damaged items in the affected homes;

d.      Whether Defendants are liable for the adverse medical consequences of the defective drywall;

e.      Whether Defendants deliberately concealed information about the defective drywall from the Class;

f.      Whether Defendants negligently, recklessly or intentionally concealed information about the defective drywall;

g.      Whether Defendants breached express warranties;

h.      Whether Defendants breached implied warranties;

i.      Whether Plaintiffs are entitled to compensatory, punitive, and other damages as a result of Defendants acts and/or omissions;

j.      Whether Defendants are guilty of fraudulent misrepresentation;

k.      Whether Defendants are guilty of fraudulent concealment;

l.      Whether Defendants are guilty of negligence;

**TYPICALITY**

108.    Plaintiff's claims are typical of the claims of the Class and all such claims arise out of the wrongful course of conduct engaged in by Defendants.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

22

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

**ADEQUACY OF REPRESENTATION**

109.    Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the members of the Class she seeks to represent.  Plaintiff is represented by experienced and able counsel who have litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiff and her counsel can fairly and adequately protect the interests of the members of the Class.

**RULE 23(B) CERTIFICATION**

110.    Class certification is also appropriate in this action because:

a.    Pursuant to Fed.R.Civ.P. 23(b)(1)(A), the prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible duties for Defendants under the law alleged herein.

b.    In seeking declaratory relief from Defendants' conduct alleged herein, pursuant to Fed.R.Civ.P. 23(b)(2), Defendants have acted or refused to act on grounds that apply generally to the Class, such that declaratory relief would be appropriate to the Class as a whole.

c.    Pursuant to Fed.R.Civ.P. 23(b)(3) the questions of law and fact common to all Class Members predominate over any questions that might arise as to an individual member, such that a Class Action is the superior, fair and efficient method of adjudicating this controversy where, as here, individual claims would be identical or nearly identical.

ALTERS | BOLDT | BROWN | RASH | CULMO
23

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

111.    The running of any statute of limitations has been tolled due to Defendants' fraudulent concealment.  By failing to disclose a known defect to Plaintiff and the Class, and misrepresenting the nature of their product as safe for its intended use, actively concealed from Plaintiff and the Class the true risks associated with their drywall.

112.    Plaintiff and the Class could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

113.    In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true information about their product and they failed in that duty to Plaintiff and the Class.

114.    Plaintiff and the Class had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein.

## COUNT I

### NEGLIGENCE
(Against All Defendants)

115.    Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

116.    Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in the a) design, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installation, j) marketing, and/or

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

k) selling drywall, including a duty to adequately warn of its failure to do the same.

Defendants' duties include, but are not limited to the following:

a.   using reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

b.   using reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein;

c.   using reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

d.   using reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

e.   using reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

f.   using reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g.   using reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h.   using reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i.   using reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j.   using reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

ALTERS │ BOLDT │ BROWN │ RASH │ CULMO
25

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

k.     using reasonable care in the installation of the drywall to prevent it from containing Defects as set forth herein;

l.     adequately warning and instructing the Plaintiff and Class Members of the Defects associated with drywall;

m.    properly manufacturing the drywall to prevent it from containing the Defects as set forth herein;

n.     properly selecting the gypsum that did not contain excessive levels of sulfur;

o.     recalling or otherwise notifying users at the earliest date that it became known that the drywall was dangerous and Defective;

p.     advertising and recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;

q.     not misrepresenting that the drywall was safe for its intended purpose when, in fact, it was not;

r.     not manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

s.     not exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

t.     not distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

u.     not concealing information from Plaintiff and Class Members regarding reports of adverse effects associated with drywall;

     v.     not improperly concealing and/or misrepresenting information from the Plaintiff and Plaintiff Class Members and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

     w.    otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing Defects as set forth herein.

117.    Defendants were negligent and breached their duty to exercise reasonable care in the design, manufacture, export, import, distribution, delivery, supply, inspection, installation, marketing, and/or sale of drywall, including a duty to adequately warn of its failure to do the same. Defendants' negligence included, but was not limited to the following:

     a.    failing to use reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

     b.    failing to use reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein:

     c.    failing to use reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

     d.    failing to use reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

     e.    failing to use reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

f.   failing to use reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g.   failing to use reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h.   failing to use reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i.   failing to use reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j.   failing to use reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k.   failing to use reasonable care n the installation of the drywall to prevent it from containing Defects as set forth herein;

l.   failing to adequately warn and instruct the Plaintiff and Class Members of the Defects associated with drywall;

m.   failing to properly manufacture the drywall to prevent it from containing the Defects as set forth herein;

n.   failing to properly select the gypsum that did not contain excessive levels of sulfur;

o.   failing to recall or otherwise notify users at the earliest date that it became known that drywall was dangerous and Defective;

p.   advertising and recommending the use of drywall without sufficient knowledge as to its manufacturing Defect and dangerous propensities;

q.   misrepresenting that drywall was safe for its intended purpose when, in fact, it was not;

r.   manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

s.   exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

t.   distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

u.   concealing information from Plaintiff and Class Members regarding reports of adverse effects associated with drywall;

v.   improperly concealing and/or misrepresenting information from the Plaintiff and Class Members and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

w.   failing to otherwise exercise reasonable care in the design, manufacture, export, import, distribution, delivery, supply, inspection, market, installation and/or sale of drywall to prevent it from containing Defects as set forth herein.

118.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic and other damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical

**ALTERS | BOLDT | BROWN | RASH | CULMO**

29

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

119.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

120.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

121.    Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT II

### NEGLIGENCE PER SE
(Against all Defendants)

122.    Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

123.    Defendants breached their duties to Plaintiff and the proposed class by failing to exercise reasonable care in manufacturing, inspecting, distributing, selling and installing the drywall.

124.    Defendants likewise breached their duties to Plaintiff and the proposed class by failing to warn Plaintiff and the proposed class about the defective nature of the drywall, which both malfunctioned and generated untoward side-effects.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the drywall and the adverse effects that it could have on the health of the homes it was used to build and the individuals within them.

125.    Given the defects of the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause both economic and physical damage to the members of the class.

126.    Economic damages include, but are not limited to, substantial reconstruction and repair of Plaintiff's and proposed Class Members' homes, as well as any medical expenses incurred as a result of Defendants' drywall, which are in many instances considerable.

127.    Defendants' drywall was the proximate cause of both economic and physical damage brought upon the Plaintiff and members of the class.

128.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

129.    Due to Defendants' negligence, Plaintiff, members of the Class and the public at large will continue to suffer economic and physical damages.

ALTERS | BOLDT | BROWN | RASH | CULMO

31

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

130.    Although Defendants knew or should have known about the defects of their drywall product, Defendants nevertheless continued to manufacture the product and sell it to Plaintiff, members of the class and the public at large.

## COUNT III

### STRICT LIABILITY
(Against all Defendants)

131.    Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

132.    Defendants were responsible for the manufacturing, inspecting, distributing, selling and installing of the drywall at issue.

133.    By the time Defendants' drywall left Defendants' hands, the risks associated with the product far outweighed its benefits.

134.    Further, by the time Defendants' drywall left Defendants' hands, they knew, or should have known, the product was unsafe, defective, and could cause serious physical and economic harm to Plaintiff and members of the proposed class.

135.    Defendants had a duty to provide Plaintiff, the proposed class and the general public with a safe and properly functioning product.  This is a duty Defendants failed to uphold.

136.    Because Defendants' product created an unreasonable risk to Plaintiff's and proposed class members' homes and persons, Defendants are strictly liable for economic and physical injuries to Plaintiff and members of the proposed Class.

137.    No prudent buyer of Defendants' product could be expected to determine on his or her own that Defendants' product was dangerous and defective.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

32

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

138. Defendants not only manufactured, inspected, distributed, sold and/or installed a poorly designed and defective drywall, but also failed to give Plaintiff and the proposed class adequate warning regarding the risks associated with Defendants' product.

139. Defendants' drywall was a substantial factor in the economic and physical losses that have been, and continue to be, incurred by the Plaintiff and proposed class.

140. As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

141. Economic losses include, but are not limited to, substantial reconstruction and repair of Plaintiff's and proposed Class Members' homes, damage to property other than the Plaintiff's and Class Members' homes, as well as any medical expenses incurred as a result of Defendants' drywall, which are in many instances considerable.

## COUNT IV

### BREACH OF EXPRESS WARRANTY
(Against all Defendants)

142. Plaintiff incorporates and restates paragraphs 1-121 as if fully set forth herein.

143. Defendants expressly warranted that the drywall they manufactured, distributed, and/or installed was safe, efficacious, well tested and of high quality.

144. By manufacturing, distributing, selling and/or installing a defective, unsafe, and poorly manufactured drywall product, Defendants have breached their express warranty.

145. Defendants knew or should have known that their warranties were specious.

146. Plaintiff and the proposed Class and/or their representatives relied on these express warranties to their detriment.

147. As a direct result of this breach of expressed warranty, physical and economic damages have been, and continue to be, incurred by Plaintiff and the proposed Class.

## COUNT V

### BREACH OF IMPLIED WARRANTIES
(Against all Defendants)

148. Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

149. When Defendants manufactured, distributed, sold, and/or installed their drywall to Plaintiff and the proposed class, Defendants implicitly warranted that the product was safe, efficacious, well tested and of high quality. Plaintiff and members of the proposed class are beneficiaries of these warranties.

150. By manufacturing, distributing, selling, and/or installing a defective, unsafe, and poorly manufactured drywall product, Defendants have breached their implied warranties.

151. These implied warranties were relied on by Plaintiff and the proposed class and/or their representatives, because it is understood that Defendants have knowledge as to the quality, safety and efficacy of the drywall they manufacture, distribute, sell, and/or install.

152. As a direct result of this breach of implied warranty, physical and economic damages have been, and continue to be, incurred by Plaintiff and the proposed class.

## COUNT VI

### FRAUDULENT CONCEALMENT
(Against all Defendants)

153.   Plaintiff incorporates and restates paragraphs 1-121 as if fully set forth herein.

154.   Defendants knew or should have known that Defendants' drywall was defective, unsafe and poorly manufactured.

155.   Defendants fraudulently concealed that Defendants' drywall was defective, unsafe and poorly manufactured.

156.   Defendants knew or should have known that their drywall would cause corrosion of, among other things, electrical wiring, air conditioner coils, plumbing and other personal property throughout the effected homes.

157.   Defendants fraudulently concealed that their drywall caused damage to, among other things, electrical wiring, air conditioner coils, plumbing and other personal property throughout the effected homes.

158.   Defendants fraudulently concealed that they had received and/or otherwise learned of complaints regarding their drywall product.

159.   Defendants' above-mentioned concealments of key facts regarding the Defendants' drywall resulted in physical and economic damages that have been, and continue to be, incurred by Plaintiff and the proposed class.

160.   As a result of the Defendants' fraudulent concealments regarding their drywall product, physical and economic damages have been, and continue to be, incurred by Plaintiffs and the proposed class.

161.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects

## COUNT VII

### FRAUDULENT MISREPRESENTATION
(Against all Defendants)

162.    Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

163.    Defendants fraudulently alleged to the Plaintiff, the proposed class, and the public that the Defendants' drywall was safe, efficacious, well tested and of high quality.

164.    Defendants knew the above-mentioned representations made to Plaintiff, the proposed class, and the public were specious and fraudulent.  These representations were made recklessly and with the intent of defrauding Plaintiff, the proposed Class and the public.

165.    Defendants' drywall was installed in Plaintiff's and proposed class members' homes in reliance of the veracity of the above-mentioned fraudulent representations.

166.    As a result of Defendants' fraudulent representations regarding their drywall product, physical and economic damages have been, and continue to be, incurred by Plaintiff and the proposed Class.

167.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

## COUNT VIII

### NEGLIGENT MISREPRESENTATION
(Against All Defendants)

168.   Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

169.   As discussed herein, Defendants fundamentally misrepresented material facts regarding the characteristics of the drywall and omitted other material facts that should have been disclosed to Plaintiff and the Class.

170.   In disseminating information regarding the drywall Defendants negligently caused statements to be made, which they knew or should have known were inaccurate and untrue.

171.   As a direct consequence of the Defendants' negligent misrepresentations and omissions of material facts regarding the defective drywall, Plaintiff and the class will be irreparably harmed and otherwise damaged in an amount which cannot presently be calculated.

172.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

## COUNT IX

## UNJUST ENRICHMENT
(Against all Defendants)

173.   Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

174.   Each Defendant individually and collectively profited from the sale of the defective drywall to Plaintiff and the Class, receiving payment themselves or through an agent.   Defendants received payment for the defective drywall and have retained those sums to the detriment of Plaintiff and the Class.

175.   Defendants' receipt and retention of the profits gained by sale of the defective drywall to Plaintiff and the proposed Class is unjust and inequitable.

176.   As a direct and proximate result of Defendants conduct complained of herein Plaintiff and the Class have sustained substantial damages, including, but not limited to: the removal and replacement of the defective drywall and/or the homes, replacement of any and mechanical and structural systems damaged in the homes, replacement of personal and other property damaged, costs of moving to alternative housing while repairs are made, costs of comparable alternative housing, loss of use and enjoyment of their homes and compensation for the reduced value of the homes as the result of perception of the homes as tainted by the defective drywall.

177.   Defendants knew or should have known of the damages their defective drywall would cause as described herein.

**ALTERS | BOLDT | BROWN | RASH | CULMO**

38

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

## COUNT X

### BREACH OF CONTRACT
(Against Northstar Homes)

178.   Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

179.   Plaintiff and the Class offered and the Northstar Defendants accepted sums of money in exchange for an agreement to build homes.

180.   Upon information and belief each agreement entered into by Plaintiff and the Class for construction of their homes warranted that the homes would be free from defects.

181.   The presence of the defective drywall, which "off-gases" sulfur is a violation of Plaintiff's agreement, and upon information and belief, the contracts of each and every member of the Class.

182.   As a direct consequence of the breaches of contract described above, Plaintiff and the Class have sustained substantial damages, including, but not limited to: the removal and replacement of the defective drywall and/or the homes, replacement of any and mechanical and structural systems damaged in the homes, replacement of personal and other property damaged, costs of moving to alternative housing while repairs are made, costs of comparable alternative housing, loss of use and enjoyment of their homes and compensation for the reduced value of the homes as the result of perception of the homes as tainted by the defective drywall.

### COUNT XI

**PRIVATE NUISANCE**
(Against all Defendants)

183.    Plaintiff adopts and restates the preceding paragraphs 1-114 as if fully set forth herein.

184.    The acts and/or omissions of Defendants have caused injury to Plaintiff and the Class by, among other things, depriving Plaintiff and the Class of the quiet enjoyment of their property.

185.    Defendants' acts and/or omissions are wrongful and/or tortious, jeopardizing the health, wellbeing and safety of Plaintiff and the Class.  Defendants knew their acts and/or omissions were wrongful or they should have known and the harm to Plaintiff and Class is ongoing.

186.    As a direct consequence of Defendants' private nuisance Plaintiff and the Class have suffered, and continue to suffer, substantial damages to their property and to themselves as described herein.

187.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

### COUNT XII

**EQUITABLE RELIEF, INJUNCTIVE RELIEF AND MEDICAL MONITORING**
(Against All Defendants)

188.    Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

189.   Because no adequate remedy exists for the conduct of Defendants, equitable and injunctive relief is appropriate.

190.   Plaintiff and the Class will suffer irreparable injury if the Court does not order injunctive relief and medical monitoring.

191.   Plaintiff on behalf of herself and the Class demands that Defendants: (A) recall, repurchase and/or repair Plaintiff's and the Class Members' homes; (B) initiate and pay for a medical monitoring program under Florida law; (C) identify, at their own expense, each and every home with the defective drywall, if necessary, testing every home in which the defective drywall may potentially be found.

192.   Medical monitoring is a necessary component of the relief the Court should order because some of the sulfur compounds being emitted from the defective drywall are very hazardous.  For example, Hydrogen Sulfide ("H2S"), one of the compounds found in the drywall is a broad-spectrum poison – meaning it can attack more than one system of the body simultaneously.   H2S most commonly affects the central nervous system. Through a complex reaction the H2S prevents oxygen from reaching cells in the body, essentially preventing them from "breathing."

193.   As a direct consequence of the wrongful and/or tortious acts and/or omissions of Defendants' conduct, Plaintiff and the Class (among them, small children and senior citizens) have been exposed to H2S in quantities sufficient to harm them.

194.   Until it has been conclusively established that all defective drywall has been removed and that air quality is safe Defendants should bear the expense of air and environmental monitoring in each and every home with defective drywall.

**ALTERS** | **BOLDT** | **BROWN** | **RASH** | **CULMO**

41

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

## COUNT XIII

### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
#### (All Defendants)

195.   Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

196.   This is an action for relief under section 501.201, et. seq., Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

197.   Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff and Class Members are "Consumers" within the meaning of §501.203(7), Florida Statutes.

198.   Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

[T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

199.   The advertising, soliciting, providing, offering, or distributing of drywall by Defendants to Plaintiff and Class Members is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

200.   Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendants acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint

equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendants' trade or commerce pursuant to section 501.204, Florida Statutes.

201.    The unconscionable, illegal, unfair and deceptive acts and practices of Defendants violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiff and Class Members have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

202.    Plaintiff and Class Members are entitled to recover their reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

203.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

204.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value

of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

## COUNT XIV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(All Defendants)

205.   Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

206.   Defendants were in privity with Plaintiff and Class Members.

207.   At the times Defendants installed, utilized, supplied, inspected, and/or sold drywall for use in the Plaintiff's and Class Members' homes.  Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiff's and Class Members' homes for use as a building material, and impliedly warranted the product to be fit for that use.

208.   Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which they were sold.

209.   The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiff's and Class Members' homes for use as a building material, because it contained defects as set forth herein.

210.   The Defendants breached the implied warranty of merchantability because the drywall was not fit to be installed in Plaintiff's and Class Members' homes as a building material due to the defects set forth herein.

ALTERS │ BOLDT │ BROWN │ RASH │ CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

211.   Defendants had reasonable and adequate notice of the Plaintiff's and the Class Members' claims for breach of implied warranty of merchantability and failed to cure.

212.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

213.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

214.   Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT XV

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
(All Defendants)

215.   Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

216.   Defendants were in privity with Plaintiff and Class Members.

217.   Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it were sold.

218.   The drywall was defective because it was not fit for the specific purpose of installing in the Plaintiff's and Class Members' homes as a building material, for which Plaintiffs and Class Members bought the product in reliance on the judgment of Defendants.

219.   The Defendants breached the implied warranty of fitness for a particular purpose because the drywall was not fit to be installed in Plaintiff's and Class Members' homes as a building material due to the defects set forth herein.

220.   Defendants had reasonable and adequate notice of the Plaintiff's and the Class Members' claims for breach of implied warranty of merchantability and failed to cure.

221.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the

drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

222.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

223.    Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiff, individually and on behalf of the Class Members, hereby demands a trial by jury as to all issues so triable as a matter of right.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff on behalf of herself and on behalf of a class of others similarly situated, requests that this Honorable Court grant the following relief:

a.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate class, finding that Plaintiff is a proper representative of the class and that her counsel is appropriate class counsel;

b.  An order requiring that Defendants pay compensation to Plaintiff and the class members to the full extent permitted by the law;

c.  An order requiring medical monitoring;

d.  Costs and expenses in this litigation, including, but not limited to, expert fees, filing fees, and reasonable attorneys' fees; and

e.  Such other relief as the Court may deem just and appropriate.

Dated: April 3, 2009                              Respectfully submitted,

                                                  Jeremy W. Alters (Fla. Bar No. 111790)
                                                  Kimberly L. Boldt (Fla. Bar No. 957399)
                                                  Beth Tyler Vogelsang (Fla. Bar No. 509401)
                                                  Alters Boldt Brown Rash Culmo
                                                  4141 NE 2nd Avenue
                                                  Suite 201
                                                  Miami, FL  33137
                                                  (305) 571-8550 phone
                                                  (305) 571-8558 fax
                                                  jeremy@abbrclaw.com
                                                  kimberly@abbrclaw.com
                                                  beth@abbrclaw.com

                                                  Ian L. Kleinman (Fla. Bar No. 307490)
                                                  Law Offices of Wolf and Pravato
                                                  2101 W. Commercial Blvd.
                                                  Suite 1500
                                                  Fort Lauderdale, FL  33309
                                                  (954) 522-5800 phone
                                                  (954) 767-0960 fax
                                                  ian@wolfandpravato.com

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

48

%JS 44   (Rev. 2 08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM )   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

KATHERINE L. FOSTER, on behalf of herself individually and all others similarly situated

**DEFENDANTS**

NORTHSTAR HOLDINGS, INC., a Florida corporation; NORTHSTAR HOMES, INC., a Florida corporation, et al.

(b) County of Residence of First Listed Plaintiff   Palm Beach County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Palm Beach County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 NE 2nd Avenue, Suite 201
Miami, FL  33137           (305) 571-8550

09-CV-80535- Cohn/Seltzer

(d) Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

Attorneys (If Known)

FILED by ATS D.C.

APR - 3 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. - MIAMI

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant) | | | | |
|---|---|---|---|---|---|
| | | **PTF** | **DEF** | | **PTF DEF** |
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) | Citizen of This State   ☑ 1  ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4  ☐ 4 |
| ☐ 2  U.S. Government Defendant | ☑ 4  Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State   ☐ 2  ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5  ☐ 5 |
| | | Citizen or Subject of a Foreign Country   ☐ 3  ☐ 3 | Foreign Nation | ☐ 6  ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**   (See instructions second page):

a) Re-filed Case ☐ YES ☑ NO        b) Related Cases ☐ YES ☑ NO

JUDGE                                   DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

28 USC Section 1332.  Products liability action seeking recovery on a class basis for defective drywall.  One (1) Plaintiff is diverse from one Defendant

LENGTH OF TRIAL via  10  days estimated for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**   ☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
April 3, 2009

**FOR OFFICE USE ONLY**

AMOUNT  $ 350.00   RECEIPT #  998579

04/03/09