# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED | * | MDL No. 2:09-md-02047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to:** | * | |
| | * | |
| ROBERT C. PATE, as Trustee for the | * | |
| Chinese Drywall Trust | * | MAGISTRATE WILKINSON |
| v. | * | |
| AMERICAN INTERNATIONAL SPECIALTY | * | |
| LINES INSURANCE COMPANY, ET AL | * | |
| **(2:09-cv-07791)** (E.D. La.) | * | |
| | * | |

*********************************************

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
## CHARTIS CLAIMS, INC. TO DISMISS THE FIRST AMENDED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come CHARTIS CLAIMS, INC.

("Chartis Claims"), and moves this Court under Fed. R. Civ. P. 12(b)(3), (b)(6) and 28 U.S.C.

§ 1406(a) for an order dismissing the claims against Chartis Claims in the first amended

complaint of Robert C. Pate ("Pate") in his alleged capacity as Trustee for the Chinese Drywall

Trust.  The Eastern District of Louisiana is an improper venue for this action under 28 U.S.C.

§ 1391.  For that reason, this action should be dismissed or transferred to the Middle District of Florida.  In addition, Count III of the first amended complaint - - the only count alleged against Chartis Claims - - fails to state a claim against Chartis Claims on which relief can be granted.  On that basis, Count III should be dismissed and Chartis Claims should be dismissed from this lawsuit.

## I.   BACKGROUND

This is an insurance coverage dispute involving houses constructed in Florida.   On December 23, 2009, Pate, filed this lawsuit in his alleged capacity as the Trustee for the Chinese Drywall Trust (the "Trust").   Pate seeks a declaration that the certain insurers are obligated to indemnify the Trust for alleged losses arising from claims that may be brought against the Trust related to houses constructed by WCI Communities, Inc. ("WCI") and its subcontractors.   In response, on February 24, 2010, certain defendants filed motions to dismiss the complaint under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).   On March 15, 2010, Pate filed a first amended complaint that added Chartis Claims as a defendant.

In the first amended complaint Pate alleges that on August 4, 2008 and July 1, 2009, WCI and its affiliates filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[1] *In re WCI Communities, Inc., et al.*, No. 08-11643 (Bankr. D. Del.).  The debtors filed a Second Amended Joint Chapter 11 Plan of Reorganization on July 17, 2009 (the "Plan").[2]   The Plan reportedly created the Trust to assume the debtors' liability for losses suffered by claimants due to allegedly defective drywall installed in Florida homes the debtors constructed.[3]   Pate alleges that WCI received complaints of alleged property damage, bodily injury or both arising from the

---

[1] Amd. Complaint at ¶ 30.
[2] Amd. Complaint at ¶ 31.
[3] Amd. Complaint at ¶ 32.

drywall.[4]  Pate further contends that the Bankruptcy Court confirmed the Plan by Order dated August 26, 2009.[5]

Under the Plan, WCI purportedly transferred to the Trust the right to pursue and recover from insurers that issued insurance policies under which WCI may be entitled to coverage.[6]  Pate alleges that the insurers issued liability insurance policies directly to WCI or to its subcontractors.[7]  Pate further contends that WCI is a named or additional insured under the policies issued to the subcontractors, who allegedly supplied or installed the defective drywall.[8]  Pate asserts that WCI is entitled to coverage under the policies for the drywall claims that may be asserted against the Trust.  He seeks a declaration that the insurers must indemnify the Trust in connection with such claims.[9]  Further, Pate alleges that the insurers breached their obligations under the policies by failing to acknowledge coverage for the claims.[10]

According to Pate, Chartis Claims tortiously interfered with policies issued by Lexington Insurance Company ("Lexington") to WCI.  He alleges that Lexington sold WCI three excess liability policies.[11]  He further alleges that Chartis Claims is the claims administrator for Lexington, which knows of Lexington's alleged indemnity obligations to WCI.[12]  Chartis Claims, according to Pate, has failed to "acknowledge coverage in connection with Lexington's indemnity obligations under the Lexington Policies."[13]  As a result, Pate claims that Chartis Claims caused Lexington to breach the policies resulting in damages to the Trust.[14]

---

[4]  Amd. Complaint at ¶ 27, 29, 36.
[5]  Amd. Complaint at ¶ 35.
[6]  Amd. Complaint at ¶ 33.
[7]  Amd. Complaint at ¶¶ 37-50.
[8]  Amd. Complaint at ¶ 49.
[9]  Amd. Complaint at ¶¶ 36, 56-60.
[10]  Amd. Complaint at ¶¶ 36, 61-63.
[11]  Amd. Complaint at ¶ 65.
[12]  Amd. Complaint at ¶ 66.
[13]  Amd. Complaint at ¶ 67.
[14]  Amd. Complaint at ¶ 68.

Pate alleges that the Eastern District of Louisiana is the proper venue for this action. Specifically, Pate asserts that venue is appropriate under 28 U.S.C. § 1391(a)(3) because "the Defendants are subject to personal jurisdiction in this judicial district."[15]  With the exception of defendants FCCI Commercial Insurance Company, FCCI Insurance Company, NGM Insurance Company, Owners Insurance Company, and Chartis Claims Claims, Inc., the amended complaint alleges that the defendants are "authorized to sell insurance in Louisiana."[16]  Further, the amended complaint asserts that venue is otherwise appropriate in this district pursuant to 28 U.S.C. § 1407 and the June 15, 2009 Transfer Order of the Judicial Panel on Multidistrict Litigation.[17]

The amended complaint contains no allegation suggesting any nexus between Louisiana and the insurance coverage dispute at issue.  Pate alleges that he is a Texas resident.[18]  He does not allege that any defendant is a Louisiana corporation or maintains its principal place of business in Louisiana.[19]  Further, Pate does not allege that WCI or any of its subcontractors, the alleged insureds, is a Louisiana corporation or maintains a principal place of business in Louisiana.  No underlying claims for property damage or personal injury allegedly arise from defective drywall WCI and its subcontractors installed in homes in Louisiana.  All such claims arise from alleged defective drywall installed in homes in Florida.[20]  The amended complaint contains no allegation that any claimant resides in Louisiana.  Pate claims that some, but not all, defendants are authorized to sell insurance or conduct business in Louisiana.[21]  There is no

---

[15] Amd. Complaint at ¶ 24.
[16] Amd. Complaint at ¶ 24,
[17] Amd. Complaint at ¶ 24.
[18] Amd. Complaint at ¶ 1.
[19] Amd. Complaint at ¶¶ 2-22.
[20] Amd. Complaint at ¶ 27.
[21] Amd. Complaint at ¶ 24.

allegation that any insurer sold an insurance policy at issue to WCI or a subcontractor in Louisiana.

## II.     ARGUMENT

### A.     Venue is not Proper in the Eastern District of Louisiana

Venue is not proper in the Eastern District of Louisiana, and the amended complaint should be dismissed under Fed. R. Civ. P. 12(b)(3), 28 U.S.C § 1391(a), and 28 U.S.C § 1406(a). Alternatively, this action should be transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1406(a).

#### 1.     Venue is not Proper Under § 1391(a) and the Amended Complaint Should be Dismissed

The amended complaint alleges that the Eastern District of Louisiana is the proper venue under 28 U.S.C. § 1391(a)(3).[22]  This district, however, is not the proper venue for this diversity action because none of the conditions set forth in 28 U.S.C. § 1391(a) is satisfied. Section § 1391(a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, *if there is no district in which the action may otherwise be brought*. (emphasis added)

The burden is on plaintiff to demonstrate that this district is the proper venue under the statute. *See Smith v. Fortenberry*, 903 F. Supp. 1018, 1019-1020 (E.D. La. 1995).  "The general rule is that venue must be established for each separate cause of action and for each defendant." *Burkitt*

---

[22] Amd. Complaint at ¶ 24.

*v. Flawless Records, Inc.*, No. 03-2483, 2005 U.S. Dist. LEXIS 11986 at *14 (E.D. La. June 13, 2005).

**(a)     All defendants do not reside in Louisiana.**

Under § 1391(a)(1), a diversity action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." For the purposes of venue under the statue, a corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). This court lacks personal jurisdiction over several defendants in this action, including FCCI Commercial Insurance Company, FCCI Insurance Company, and Mid-Continent Casualty Company. They have filed motions to dismiss for lack of personal jurisdiction.[23] As this Court lacks personal jurisdiction over one or more of the defendants, all defendants do not reside in Louisiana. Accordingly, this district is not the proper venue under § 1391(a)(1). *See Francis v. E-Z Bus, Inc.*, No. 05-6905, 2006 U.S. Dist. LEXIS 17565 at *3 (E.D. La. Apr. 7, 2006) (venue is improper under § 1391(a)(1) where one defendant did not reside in the state); *Joseph v. Emmons*, No. 04-2843, 2005 U.S. Dist. LEXIS 5528 at *5 (E.D. La. Mar. 22, 2005) (same).

**(b)     A substantial part of the events or omissions giving rise to the claim did not occur in Louisiana.**

Alternatively, venue may be proper under § 1391(a)(2) in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Under this provision, a court evaluates whether any events that occurred in the venue gave rise to the litigation. *Factory Girl, LLC v. Wiersma*, No. 06-2159, 2006 U.S. Dist. LEXIS 47497 at *4 (E.D. La. July 12, 2006). With

---

[23] See D.E. 2147 (FCCI Commercial Insurance Company & FCCI Insurance filed jointly) and D.E. 2156 (Mid-Continent Casualty Company). Upon information and belief, the Court also lacks personnel jurisdiction over defendant Owners Insurance Company ("Owners"). The time for Owners to respond to the first amended complaint is subsequent to the filing of this motion, and Chartis Claims reserves the right to supplement its motion to dismiss to include as an additional ground in support the fact that the Court lacks personal jurisdiction over Owners.

respect to contracts, the place where a contract is made or performed can establish proper venue. *Id. See also American Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. 1981) (holding that under an earlier version of § 1391 venue is proper at the place of performance in an action for breach of contract). In the context of insurance contracts, the insured's principal place of business, the place the policy was negotiated and delivered, the place from which the insurance premiums were paid, and location of the underlying claim are significant to the venue determination. *Starnet Ins. Co. v. Fueltrac, Inc.*, No. 08-1644, 2009 WL 1210508 at *2 (W.D. La. May 1, 2009); *PIC Group, Inc. v. Landcoast Insulation, Inc.*, No. 09-461, 2009 U.S. Dist. LEXIS 81234 at *3-*4 (W.D. La. Sept. 8, 2009) (venue was improper under § 1391(a)(2) where the insurance policy was issued in Louisiana but the accident for which coverage was sought occurred outside Louisiana); *Orleans Limousines & Transp. v. Hurd Ins. Agency*, No. 02-2742, 2003 U.S. Dist. LEXIS 3899 at *5-*6 (E.D. La. Mar. 13, 2003) (venue was improper under § 1391(a)(2) where contract claims had no connection with Louisiana).

Venue is not proper under § 1391(a)(2) because Pate does not allege that any insured's principal place of business is in Louisiana, the insurance policies were negotiated or delivered in Louisiana, or the insurance premiums were paid in Louisiana. With respect to Chartis Claims the first amended complaint alleges no activity in Louisiana by that company with respect to any policy or underlying claim. Further, Pate does not allege the underlying claims upon which the instant coverage action are founded occurred in Louisiana. In fact, Pate alleges that individuals have made claims for injuries "arising from Chinese Drywall installed in homes that WCI sold in Florida, including areas such as Fort Lauderdale, Fort Myers, and Bradenton."[24] Pate seeks coverage for those claims under policies issued to WCI or its subcontractors.[25] There are no

---

[24] Complaint at ¶¶ 27.
[25] Complaint at ¶¶ 38-50.

allegations that any individual has made claims with respect to houses WCI built in Louisiana. There are no allegations that any insurer issued a policy to WCI or an alleged subcontractor in Louisiana. Moreover, plaintiff does not allege that WCI or any alleged subcontractor is located in Louisiana. There is no claim that WCI or any subcontractor conducted any activities in Louisiana related to the Florida houses at issue. Nothing in the complaint suggests that any defendant handled WCI's claim for coverage in Louisiana. There are no allegations that WCI has dealt with any underlying claim or made a request for coverage while in Louisiana. For these reasons, a substantial part of the events or omissions giving rise to this coverage dispute has not occurred in Louisiana, and venue is not proper under § 1391(a)(2).

> **(c)     Not all defendants are subject to personal jurisdiction in the Eastern District of Louisiana and this action could have been brought in another district.**

Finally, 28 U.S.C. § 1391(a)(3) provides that venue may be proper in a "judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, *if there is no district in which the action may otherwise be brought*." (emphasis added)  Notably, Pate cites this section as the basis for venue in this district. The section applies, however, only where venue is not proper in any other district under § 1391(a)(1) or (a)(2).  Section 1391(a)(3) "operates only in the instance that there is no district in which the action may otherwise be brought." *Waldron v. Freightliner Corp.*, No. 96-2530, 1996 U.S. Dist. LEXIS 19147 at *9 (E.D. La. Dec. 19, 1996). *See also Smith*, 903 F.Supp. at 1021; *Hogue v. State Farm Fire & Cas. Co.*, No. 08-5000, 2009 U.S. Dist. LEXIS 79572 at *21-*22  (E.D. La. Aug. 13, 2009); *Labranche v. Embassy Suites, Inc.*, No. 97-3721, 1999 U.S. Dist. LEXIS 1495 at *4 (E.D. La. Feb. 3, 1999); *Norton Packaging Inc. v. Industrial Packaging Corp.*, No. 95-1179, 1995 U.S. Dist. LEXIS 12336 at *4-*5 (E.D. La. Aug. 23, 1995).

- 8 -

This action could have been brought in the Middle District of Florida.  For purposes of this lawsuit, all defendants reside in the Middle District of Florida because they are subject to personal jurisdiction in that district.  They all have sufficient contacts with that district to support the exercise of personal jurisdiction over them.  In addition, the amended complaint alleges the underlying claims against WCI involve homes in three areas of Florida, two of which, Fort Myers and Bradenton, are located in the Middle District of Florida.[26]  Because there is another district in which Pate could have filed this action, venue is not proper in this district under Section 1391(a)(3).

### 2.      Venue is Not Proper Under 28 U.S.C. § 1407 or the Transfer Order

Pate also asserts that venue is proper under 28 U.S.C. § 1407 and the June 15, 2009, Transfer Order of the Judicial Panel on Multidistrict Litigation.[27]  Neither the statute nor the Order makes this district a proper venue for this action.  On its face, § 1407 does not apply.  It provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings."  28 U.S.C. § 1407(a).  The statute does not designate a venue where a party may bring a civil action in the first instance.  Instead, it permits a civil action filed in the proper venue to be transferred into another district under certain circumstances.  Similarly, on its face, the Transfer Order does not make this district the proper venue for Pate to file this action.  *In re Chinese Drywall Products Liability Litigation*, 626 F. Supp. 2d 1346 (U.S. Jud. Pan. Mult. Lit. 2009).  The Order transferred ten pending underlying homeowner lawsuits to this district for coordinated pretrial proceedings as permitted under § 1407.  *Id.* at 1346.  The Order provides that other pending actions may be treated as "tag-along" actions subject to transfer after

---

[26]  Amd. Complaint at ¶ 27
[27]  Amd. Complaint at ¶ 24

the parties have been provided an opportunity to object.  *Id.* at 1346 n.1 (citing R.P.J.P.M.L. 7.4-7.5).  Nothing in the Order provides that a party may commence an action in the Eastern District of Louisiana simply because the Judicial Panel on Multidistrict Litigation consolidated some cases in the district.

Moreover, the JPML has twice considered and rejected transfer of insurance coverage actions involving Chinese drywall to MDL No. 2047.  In both instances, the JPML determined that the provisions of 28 U.S.C. §1407(a) did not support transfer of the coverage disputes to MDL No. 2047, stating that transfer of the coverage actions to the MDL would not serve of the convenience of parties and witnesses, nor promote the just and efficient conduct of the litigation. *See* Order Vacating Conditional Transfer Order of *General Fid. Ins. Co. v. Foster*,  No. 9:09-80743 (S.D. Fla. Dec. 2, 2009); Order Denying Transfer of *Builders Mut. Ins. Co. v. Dragas Mgt. Corp.*, No. 2:09-185 (E.D. Va. Feb. 5, 2010).

   **3.     In the Alternative to Dismissing the Amended Complaint, This Action Should be Transferred to the Middle District of Florida Pursuant to 28 U.S.C. § 1406**

As an alternative to dismissal, the Court may transfer this action to any district in which plaintiff could have filed this action.  Under 28 U.S.C. § 1406(a), the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  As discussed above, Pate could have brought this action in the Middle District of Florida.  Accordingly, the Court may transfer this action to the Middle District of Florida under 28 U.S.C. § 1406 instead of dismissing it.  *See Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1107 (5th Cir. 1981) (transfer to a district in which personal jurisdiction over the defendant may be obtained may properly be made under § 1406(a)); *Starnet Ins.*, 2009 WL 1210508 at *2

(transferring the case to a district where insured resides and a substantial part of the events giving rise to the litigation occurred).

**B.      Count III Does not State a Claim Against Chartis Claims for which Relief can be Granted**

Count III (tortious interference) of the first amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Pate fails to state a claim against Chartis Claims on which relief can be granted.   Pate does not allege the requisite facts comprising elements of tortious interference, and alleges no facts from which it can be reasonably inferred that Chartis Claims has taken any action to cause Lexington to breach the insurance policies at issue. Because Count III is the only count directed at Chartis Claims, this defendant should be dismissed from this action.

**1.      Standard for Dismissal Under Rule 12(b)(6)**

To survive motion to dismiss under Fed. R. Civ. P. 12(b)(6), plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).   A claim is facially plausible only when the plaintiff pleads facts from which the court can reasonably infer that the defendant is liable for the alleged misconduct.  *Iqbal*, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully.  Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it stops short of the line
> between possibility and plausibility of "entitlement to relief."

*Id.*  (quoting *Twombly*, 550 U.S. at 556, 557) (internal quotes omitted).   Although a court must treat all well-pleaded facts as true, it is not required to accept legal conclusions couched as factual allegations.  *Iqbal*, 129 S.Ct. at 1949-50.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.*   On its face, the

complaint must "contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim." *Pinero v. Jackson Hewitt Tax Serv.*, 638 F. Supp. 2d 632, 636 (E.D. La. 2009).

**2.      Pate Fails to State a Claim for Tortious Interference with Contract**

The first amended complaint contains one count regarding Chartis Claims.  In Count III, Pate alleges that Chartis Claims tortiously interfered with Lexington's excess insurance policies issued to WCI by causing Lexington to breach those policies by failing to acknowledge that the Trust is entitled to coverage for the drywall claims.[28]  Pate, however, does not plead sufficient facts to state a claim for tortious interference.  Further, he offers only conclusory statements that roughly correspond to some, but not all, elements for tortious interference with contract.  For these reasons, Count III fails to state a claim, and should be dismissed.

**(a)      Elements of Tortious Interference with Contract.**

The claim for tortious interference with contract is most likely governed by either Texas or Delaware law.  Because subject matter jurisdiction in this action is based on 28 U.S.C. § 1332(a), the Court applies Louisiana conflict of law rules to determine what law may govern Pate's claim.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (U.S. 1941).  Under Louisiana law, the court determines what law applies to a tort claim by examining the pertinent contacts of each state to the parties and the events giving rise to the dispute.  *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 487 (5th Cir. 2001) (discussing La. Civ. Code art. 3542). This determination includes examining where the conduct and injury took place, the parties' domicile, residence, or place of business, and the state in which the relationship, if any, between the parties was centered.  *Id.*  Pate alleges that the Trust was created under a reorganization plan

---

[28] Amd. Complaint at ¶¶ 64-68.

the Delaware Bankruptcy Court proceeding involving WCI.[29]  He further alleges that he is the Trustee and that he resides in Texas.[30]  Under these facts, it is possible that either Delaware or Texas law may govern the tortious interference with contract claim.[31]

The elements of a cause of action under Delaware and Texas law are similar.  Under Texas law, a plaintiff must allege:  (1) a contract subject to interference exists; (2) a willful and intentional act interfering with the contract; (3) the act was a proximate cause of the plaintiff's damage; and (4) actual damage or loss.  *Ray Mart, Inc. v. Stock Bldg. Supply of Tex. L.P.*, 302 Fed. Appx. 232, 240 (5th Cir. 2008) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995)).  In general, a person may be liable under this standard only if that person is a stranger to the contract.  *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998); *Guardian Life Ins. Co. v. Kinder*, 663 F. Supp. 2d 544, 557 (S.D. Tex. 2009).  For that reason, an agent of a contracting party may be liable only if the agent acted for its own benefit and clearly contrary to the interests of the contracting party.  *Benningfield*, 157 F.3d at 379; *Guardian Life*, 663 F. Supp. 2d at 557.

To state a claim for tortious interference with contract under Delaware law, the plaintiff must allege that there is a contract about which the defendant knew and an injury due to an intentional act that is a significant factor in causing a breach of the contract without justification. *Aspen Advisors LLC v. UA Theatre Co.*, 861 A.2d 1251, 1265-1266 (Del. 2004).  Absent a breach of contract, a claim for tortious interference cannot succeed.  *Id.*  Finally, as under Texas law, the defendant must be a stranger to the contract, and therefore, an agent of the contracting party agent cannot interfere with the contract.  *See Grunstein v. Silva*, No. 3932, 2009 Del. Ch. LEXIS 206 at *64 (Del. Ch. Dec. 8, 2009).

---

[29] Amd. Complaint at ¶¶ 30-36.
[30] Amd. Complaint at ¶ 1.
[31] Chartis Claims does not concede that either Texas or Delaware law applies to the tortious interference claim.

**(b)**     **Pate does not Plead Facts Giving Rise to a Claim for Tortious Interference with Contract**

The first amended complaint does not plead any willful or intentional act by Chartis Claims, and fails to allege facts giving rise to a plausible claim for tortious interference with contract under either Texas or Delaware law.   Pate offers only conclusory statements that amount to no more than a threadbare recital of some, but not all, elements of the tort.   In the first amended complaint, Pate alleges that the Trust suffered damages because Chartis Claims  caused Lexington to breach the policies without justification by failing to acknowledge coverage under the polices.[32]   He alleges no facts to support these bare conclusions.

At a minimum Pate's tortious interference claim should be dismissed because the first amended complaint does not allege any willful or intentional act by Charits Claims.   Under Texas law tortious interference requires that the defendant commit a willful and intentional act that interferes with a contract.   Similarly, Delaware law requires that the defendant engage in an intentional act that causes a breach.   Pate makes not such allegations.   Under either Texas or Delaware law, the first amended complaint lacks the requisite allegations of fact necessary to state a claim for tortious interference.

In addition, the Pate's conclusory allegations do not permit the Court to reasonably conclude that Chartis Claims tortiously interfered with the Lexington policies.   According to Pate, WCI timely notified Lexington, about underlying homeowner claims, yet Lexington has not acknowledged coverage, and therefore breached the policies as a result.[33]   According to Pate,

---

[32] Amd. Complaint at ¶¶ 64-68.

[33] Amd. Complaint at ¶¶ 51-55, 62.  Notably, Pate claims that the insurers have "either denied coverage, reserved their rights, failed to reply to WCI's notice letters, or otherwise failed to acknowledge coverage."  Amd. Compl. at ¶ 55.  In other words, Pate treats a denial, reservation and failure to respond as a failure to acknowledge coverage in breach of the policies.  Pate does not state what action Lexington has taken.  In fact, Lexington has reserved its rights and communicated its position to Pate.  Under applicable law, Lexington's reservation of rights does not constitute a breach of contract.  Indeed, an insurer is permitted under Florida law, which governs the policies, to

Chartis Claims allegedly induced or caused Lexington to commit this alleged breach, thereby causing the Trust to suffer damages.[34]

The bare assertion that a breach occurred due to Chartis Claims' tortious interference is not supported by the factual allegations. There are no allegations from which it can be reasonably inferred that the underlying claims might be covered under Lexington excess policies. Pate does not allege any of the policy terms or any facts regarding the underlying claims from which one may reasonably conclude that those claims fall within the coverage provided by any Lexington policy. Without such allegations, there is no basis to infer that the underlying drywall claims are covered. Further, the first amended complaint contains no allegation that the underlying limits of the Lexington policies have been exhausted, a *prerequisite* to any coverage obligation under the policies. Each Lexington policy provides that subject to the policy terms, Lexington is obligated to pay only the portion of loss that the insured becomes legally obligated to pay due to the *exhaustion* of the underlying limits, which are no less than $25 million for each policy.[35] Pate does not allege any facts from which it can be reasonably inferred that the underlying limits for any Lexington policy have been exhausted by payment of losses for which a Lexington policy may also provide coverage. In fact, Pate does not allege that the Trust has paid or must pay any claimant any sum with respect to any underlying claim. There is no allegation that the Trust has any current liability to any claimant. Without any factual basis to infer that the Trust has any liability or that Lexington has any current obligation to provide coverage, it cannot be reasonably inferred that Lexington has breached its insurance policies or

---

[34] reserve its rights to deny coverage without breaching its obligations under an insurance policy. *Roger Kennedy Constr., Inc. v. Amerisure Ins. Co.*, 506 F. Supp. 2d 1185, 1193 (M.D. Fla. 2007).

[34] Amd. Complaint at ¶¶ 67-68.

[35] A copy of each policy is attached as Exhibits A, B and C to this motion. "In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

that the Trust has suffered damages as a result.  Having failed to allege facts supporting a breach, Pate does not state a claim for tortious interference with contract based on a breach.

Pate also fails to allege any facts from which it might be inferred that Chartis Claims interfered with Lexington fulfilling any obligation under a policy.  Pate only alleges the *result* of Chartis Claims' alleged interference:  Lexington allegedly beached its obligations under the Lexington policies to indemnify the Trust for the underlying drywall claims.  There are no allegations, however, regarding any act, intentional or otherwise, by Chartis Claims to bring about the alleged breach.  Pate alleges nothing more than Chartis Claims "serves as the claims administrator for Lexington."[36]  It cannot reasonably be inferred from this allegation that Chartis Claims interfered with the policies causing Lexington to breach its obligations.  Without an alleged act of interference by Chartis Claims, Pate has not alleged a plausible claim for tortious interference.

Finally, the allegation that Chartis Claims serves as the claims administrator implies that Chartis Claims acts as Lexington's agent.  Under both Delaware and Texas law, a person must be a stranger to the contract in order to interfere with it.  An agent is not a stranger to the contract, and for that reason, it cannot interfere with the contract.  *Benningfield*, 157 F.3d at 379; *Grunstein*, 2009 Del. Ch. LEXIS 206 at *64.  Texas law provides that an agent interferes with a contract only if the agent acts for its own benefit contrary to the principal's interests.  Pate makes no allegation that Chartis Claims did anything for its own benefit at the expense of Lexington.  Absent any allegations supporting intentional interference and resulting injury, Pate does not state a claim for tortious interference with contract on which relief can be granted under either Delaware or Texas law.

---

[36] Amd. Complaint at ¶ 66.

## III.    CONCLUSION

For the reasons stated above, the Chartis Claims respectfully requests that the Court grant

this motion, dismiss this action under Fed. R. Civ. P. 12(b)(3) or transfer it under 28 U.S.C.

§ 1406, and dismiss Count III and Chartis Claims from this action under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted:


s/Erin Fury Parkinson
**ERIN FURY PARKINSON, T.A.  (# 22549)**
**JOSE L. BARRO, III   (# 30857)**
**SARAH J. MURPHY  (#31893)**
MCGLINCHEY STAFFORD, PLLC
601 Poydras Street, 12th Floor
New Orleans, Louisiana  70130
Telephone:  (504) 586-1200
Facsimile:  (504) 910-9539
E-mail:   eparkinson@mcglinchey.com
             jbarro@mcglinchey.com
             smurphy@mcglinchey.com

**WARREN LUTZ**
**PAUL D. SMOLINSKY**
JACKSON & CAMPBELL, P.C.
1120 20th Street, N.W.
Suite 300 South
Washington, D.C.   20036
Phone:  (202) 457-1600
Facsimile:  (202) 457-1678
E-mail:   wlutz@jackscamp.com
             psmolinsky@jackscamp.com

**Attorneys for Defendants:**
**CHARTIS CLAIMS SPECIALTY INSURANCE**
**COMPANY (**formerly known as American
International Specialty Lines Insurance Company),
**LEXINGTON INSURANCE COMPANY  AND CHARTIS**
**CLAIMS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing "*Memorandum of Law in Support of Motion of Chartis Claims, Inc. to Dismiss the First Amended Complaint*" has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United states District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 13th day of May, 2010.

s/Erin Fury Parkinson

**ERIN FURY PARKINSON, T.A.  (# 22549)**
**JOSE L. BARRO, III   (# 30857)**
**SARAH J. MURPHY  (#31893)**
MCGLINCHEY STAFFORD, PLLC
601 Poydras Street, 12th Floor
New Orleans, Louisiana  70130
Telephone:  (504) 586-1200
Facsimile:  (504) 910-9539
E-mail:   eparkinson@mcglinchey.com
             jbarro@mcglinchey.com
             smurphy@mcglinchey.com