UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOYCE W. ROGERS, individually, and on behalf of all others similarly situated, [ADDITIONAL PLAINTIFFS LISTED ON SCHEDULE OF PLAINTIFFS, ATTACHED HERETO AS EXHIBIT "A"],** | **CASE NO.: 10-362** <br> **SECT L. MAG 2** |
| Plaintiffs, | |
| v. | |
| **KNAUF GIPS KG; KNAUF PLASTERBOARD (TIANJIN) CO., LTD.; KNAUF PLASTERBOARD (WUHU), CO., LTD.; GUANGDONG KNAUF NEW BUILDING MATERIAL PRODUCTS CO., LTD. [ADDITIONAL DEFENDATNS LISTED ON SCHEDULE OF DEFENDATNS, ATTACHED HERETO AS EXHIBIT "B"],** | |
| Defendants. | |

_____/

**AMENDED MOTION OF PLAINTIFFS ALAN AND ANNETTE GODDARD
SEEKING PERMISSIVE INTERVENTION AS NAMED CLASS
PLAINTIFFS WITHIN OMNIBUS CLASS ACTION IV
INCLUDED WITHIN MDL DOCKET NO. 2047 -- IN RE
CHINESE  MANUFACTURED DRYWALL PRODUCTS LIABILITY
<u>LITIGATION PENDING  IN THE EASTERN DISTRICT OF LOUISIANA</u>**

Intervenors, ALAN and ANNETTE GODDARD ("Goddard"), hereby submit the following Amended Motion, pursuant to Federal Rule of Civil Procedure 24(b)(2), seeking permissive intervention in the omnibus class action styled <u>Rogers, et al. v. Knaupf Gips KG, et al.</u>, Case No. 10-362, Sec. L, Mag. 2 ("Omni IV") which is part of <u>In re: Chinese Manufactured Drywall Products Liability Litigation</u>, Case No.: MDL Docket No. 2047 (the "MDL Litigation") pending in the Eastern District of Louisiana, and, in support thereof, state as follows:

A.     **INTRODUCTION AND FACTUAL BACKGROUND**

Alan and Annette Goddard are named plaintiffs in a Chinese drywall class action lawsuit pending before the 15th Judicial Circuit in and for Palm Beach County, Florida styled <u>Alan Goddard, et al., v. Albanese-Popkin The Oaks Development, L.P., et al.</u>, Case No. 502009 CA 020475 5XXXX ME (hereafter, the "Underlying Action").  A copy of the extant complaint in the Underlying Action (the "Underlying Complaint") is annexed hereto as "**Exhibit A.**"

The Underlying Complaint alleges that the Goddards and their builder, Albanese-Popkin The Oaks Development, L.P. ("Albanese"), entered into a purchase and sale agreement for the construction of the Goddards' residence located at 17865 Monte Vista Drive, Boca Raton, Florida 33496 (the "Residence").  Underlying Complaint, Exhibit A hereto, at ¶¶ 5, 9.  The Underlying Complaint alleges that the Goddards and Albanese "entered into an 'Agreement of Purchase and Sale' [] for the construction and sale of the Residence on or about November 23, 2004."  Underlying Complaint, Exhibit A hereto, at ¶ 9.  The Underlying Complaint alleges that the Goddards moved into the Residence on or about October 6, 2006.  Underlying Complaint, Exhibit A hereto, at ¶ 26. The Underlying Complaint alleges that, during construction of the Residence, "Chinese drywall" was installed by Albanese's drywall subcontractor.  Underlying Complaint, Exhibit A hereto, at ¶¶ 27-28.

The Underlying Complaint makes the following specific allegations with respect to the Chinese drywall installed in the Residence:

> 26. On or about October 6, 2006, Plaintiffs moved into their newly-constructed home in the Albanese development known as "The Oaks of Boca Raton" in Boca Raton.
>
> 27.  OCD [Ocean Coast Drywall] performed all the drywall installation in the Building.

28. OCD installed what is commonly referred to as Chinese drywall in the Building.

29. Chinese drywall is universally regarded as being defective, either by its composition, manufacturing process, or both.

30. OCD purchased the Chinese drywall either directly or indirectly from various suppliers, including, but without limitation, from Defendants Banner, Cemex and Seacoast (collectively referred to herein as the "Suppliers").

31. The Suppliers purchased, directly and/or indirectly, Chinese drywall that was manufactured in China.

32. After OCD purchased the Chinese drywall from one or more of the Suppliers, it was in possession of such product until it installed same in the Building.

33. Property damage was sustained to and within the Building and caused by the release of gases, fumes, and/or vapors from the Chinese drywall brought into the Building in connection with operations being performed on behalf of Albanese by its subcontractor, OCD.

34. Specifically, OCD brought Chinese drywall into the Building in connection with its operations as the installer of the drywall on behalf of Albanese.

35. In reaction to the humidity indigenous to the South Florida climate, sulfuric compounds contained within the Chinese drywall (including one or more of hydrogen sulfide, carbonyl sulfide, and carbon disulfide) released gases, fumes, and/or vapors from the Chinese drywall into the indoor air of the Building.

36. This resulted in a sulfur odor, which could be smelled by the occupants variously throughout the Building and eventually permeated the Building.

37. The release of gases, fumes, and/or vapors from the Chinese drywall brought into the Building in connection with operations being performed on behalf of Albanese by its subcontractor, OCD, caused and created property damage and/or structure damage to the Building including corrosion on outlet boxes, air conditioning coils, electrical wiring, metals, plumbing fixtures, and the aforementioned sulfur odor which permeated the Building.

38. Plaintiffs initially discovered damage to the air conditioning coils in one of the seven air handling units ("AHUs") in the Building and first began

>  to notice a periodic sulfur odor in the Building as early as December, 2006. The periodic sulfur odor continued unabated.
>
>  39. Throughout 2008, damage was discovered to certain other AHUs in the Building. By Summer, 2009, all seven AHUs had failed due to coil damage.
>
>  40. Plaintiffs did not discover the damage to electrical wiring, metals, and plumbing fixtures until some time between April and May, 2009.
>
>  41. Also in or about April to May, 2009, the sulfur odor in the Building became dramatically more pronounced. So much so that, from that point forward, it permeated the Building on an ongoing basis and could be smelled on clothing and skin after leaving the Building.
>
>  42. Not until some time between April to May, 2009 was Albanese first notified of the property damage to the Building, including the failure of all seven AHUs, the damage to electrical wiring, metals, and plumbing fixtures, and the sulfur odor that permeated the Building.
>
>  43. Soon thereafter, the Building was inspected for the presence of Chinese Drywall.
>
>  44. Not until the Summer of 2009 did the Plaintiffs discover the cause of the property damage referenced above – namely, the Chinese Drywall installed within the Building.
>
>  45. The Chinese drywall installed in the Building was, at the time it left the Suppliers' hands, in a condition not intended or expected by OCD, Albanese, or the Plaintiffs, and was defective and unreasonably dangerous to the Plaintiffs and to the Plaintiffs' property.
>
>  46. The release of gases, fumes and/or vapors from the Chinese drywall brought into the Building in connection with operations being performed on behalf of Albanese by its sub-contractor, OCD, has been a continuous occurrence and/or repeated exposure to substantially the same generally harmful conditions since such drywall was brought into the Building and/or installed.

Underlying Complaint, Exhibit A hereto, at ¶¶ 26-46.

Goddard's Underlying Action was consolidated for pre-trial purposes with all other Chinese drywall actions pending in Palm Beach County, Florida. The Judge presiding over

the consolidated Palm Beach County Chinese drywall actions recently issued an Order indicating that he is of a mind to stay all Palm Beach County proceedings in favor of such claims being prosecuted within MDL No. 2047 instead:

> The final issue is whether this case, and other like cases pending in this circuit, should be stayed because duplicative actions are currently pending in the MDL. Here the issue is not the location of the first filed case, but more broadly does it make any sense for the parties to be litigating the same issues in multiple courts. Clearly it does not. Plaintiffs' counsel acknowledged at the case management conference that judicial economy is not served by litigating in parallel forums. Nevertheless, the plaintiffs assert that it is premature to make an election between pursuing individual state court claims and claims pending in the MDL. The court is mindful of the plaintiffs' right to proceed in a chosen state court forum. However, judicial economy is not being served by the current state of affairs. Not only are judicial resources being Unnecessarily duplicated, the parties are expending resources which could be better utilized in indentifying and correcting the problem apparently created by the use of Chinese manufactured drywall. While the court is not inclined to enter an immediate stay of duplicative cases pending here, the court is also not willing to take an indefinite "wait and see" approach to the efficient prosecution of those claims pending here which are also duplicated in the MDL. Therefore, at the June 2010 case management conference, the plaintiffs shall be prepared to show good cause why the court should not stay all actions pending in this circuit which are duplicative of claims currently pending in the MDL.

April 22, 2010 Order by Hon. Glenn D. Kelley on Case Management Conference pp. 3-4 (emphasis supplied), a copy of which is annexed hereto as "**Exhibit B**."

Accordingly, the MDL will soon be the only forum in which Goddard will be able to assert their claims.

**B.      MDL NO. 2047 PENDING IN THE EASTERN DISTRICT OF LOUISIANA**

On or about June 15, 2009, the Judicial Panel on Multidistrict Litigation determined that coordinated or consolidated pretrial proceedings were appropriate in multiple lawsuits which shared "factual questions concerning drywall manufactured in China, imported to and distributed in the United States, and used in the construction of houses; plaintiffs in all actions allege that the drywall emits smelly, corrosive gases." In Re: Chinese-Manufactured

Drywall Prod. Liab. Litig., 626 F. Supp. 2d 1346 (J.P.M.L. June 15, 2009).  Pursuant to that ruling, such proceedings were consolidated before this Court and MDL No. 2047 was established.

Included among the consolidated actions pending before the Court as part of MDL No. 2047 are two separate omnibus class actions within the MDL styled Wiltz, et al. v. Beijing New Building Materials Public Limited Co., Case No. 10-932, Sec. L, Mag. 2 ("Omni II") and Rogers, et al. v. Knaupf Gips KG, et al., Case No. 10-362, Sec. L, Mag. 2 ("Omni IV"). The allegations of Wiltz and Rogers are almost identical to the allegations made by Goddard in their Palm Beach County action and, as importantly, the primary defendant in the Goddard's Palm Beach County action – their builder, Albanese -- is already a party defendant in Wiltz and Rogers.

Since the Rogers action has remained in relative abeyance pending the Court's hearing and determination of the two bellwether trials, this Intervention Motion is timely and will not cause any delay or prejudice.  The Intervenors can simply be folded into the omnibus class action along with all other named plaintiffs therein.  Intervention would eliminate the risk of inconsistent rulings by competing courts throughout the nation, as well as allow for centralization within the forum that has been designated as the national forum for resolution of Chinese drywall cases.  It would also allow for coordinated pretrial proceedings, including discovery, and avoid unnecessary waste and duplication of judicial resources.

The Defendant in the Intervenors' state court action is already a party to the Rogers action, as are other Plaintiffs within the very development where the Intervenors' home is located.  Therefore, the Intervenors seek to intervene in an action which involves the identical relief and involves the identical underlying issues.

Finally, the Plaintiffs' Steering Committee and Defendants' Steering Committee in MDL No. 2047 have indicated that they do not oppose the within Motion for Intervention.

WHEREFORE, for the reasons cited herein, Goddard respectfully requests the Court to issue an Order pursuant Fed. R. Civ. P. 24(b)(2) permitting Goddard to intervene in the action styled <u>Rogers, et al. v. Knaupf Gips KG, et al.</u>, Case No. 10-362, Sec. L, Mag. 2 ("Omni IV"), and for such other and further relief that this Court deems just and proper.

Dated this 17th day of May, 2010.

> Respectfully submitted,
>
> **SCOTT N. GELFAND, P.A.**
>
> /s/ Scott N. Gelfand
> Scott N. Gelfand, Esq.
> Florida Bar No. 0538711
> scott@gelfandpa.com
> 5501 University Drive, Suite 101
> Coral Springs, FL 33067
> Telephone: 954-255-7900
> Facsimile: 954-255-7905
> *Attorney for Alan and Annette Goddard*

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was served via Lexis/Nexis file and serve on this 17th day of May, 2010.

> By: /s/ Scott N. Gelfand
> Florida Bar No. 0538711