UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>Payton, et al. v. Knauf GIPS KG, et. al.,<br>Case No. 2:09-cv-07628 (E.D.La.) | |

## ORDER
(Supplement to Class Action Complaint (I))

AND NOW, on this __18th__ Day of __May__, 2010, upon consideration of the Plaintiffs' Joint Motion to Dismiss Certain Defendants, Without Prejudice, Under Fed.R.Civ.P. 41(a) and to Amend the Plaintiffs' Omnibus Class Action Complaint (I), it is hereby ORDERED, ADJUDGED AND DECREED that said motion is GRANTED.

The claims against the plaintiffs and defendants listed in Exhibit "G" hereto are hereby DISMISSED without prejudice.

The schedules attached hereto as Schedules 1 through 4 shall amend, replace, and be substituted for Schedules 1 through 4 that were attached to the Complaint at the time of filing. The alignment of plaintiffs and defendants shall be modified consistent with what is reflected in the attached Schedules 1 through 4, that are redlined to reflect such realignment, as well as the correction of typographical and other errors. Those plaintiffs whose names are stricken through on the attached schedules are deemed to have their subclass claims DISMISSED without prejudice. For those plaintiffs whose subclass claims are dismissed but do not appear on Exhibit

1

G, their remaining claims are unchanged and will not be affected except for the dismissal of the subclass claims.

The Complaint is to be deemed amended as set forth below. All other unamended averments in the Complaint remain in effect as if re-alleged and averred in this Supplemental Amendment which by this ORDER should be hereinafter referred to as "Supplement to Class Action Complaint (I)."

A. **Amendments to Exhibits and Signature Block**

The attached Exhibits A, B, and D shall amend, replace, and be substituted for Exhibits A, B, and D that were attached to the Complaint at the time of filing. Exhibit C is not being amended.

The attached valediction and signature block, Exhibit "F" hereto, shall amend, replace, and be substituted for the valediction and signature block in the Complaint.

B. **Amendments to Specific Allegations**

1. **Amendments to Existing Allegations**

The existing allegations in the Complaint are hereby deemed to be amended as set forth in the attached chart. *See* Exhibit "E" hereto.

2. **Additional Allegations to be Deemed Part of this Amended Complaint**

The Complaint is deemed amended by adding the following paragraphs:

4(a).   For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named plaintiffs.

2617(a).    Defendants also willingly facilitated the manufacture, exporting, importing, distribution, delivery, supply, inspection, marketing, and/or sale of the defective drywall in the United States since they knew or should have known that the testing performed abroad was inherently unreliable.

2617(b).    By way of example, Defendants knew or should have known that the government sponsored inspections and/or certifications of the defective Chinese manufactured drywall were unreliable and never should have been relied upon for purposes of determining whether the drywall was in compliance with American regulatory standards.  Many of these government sponsored inspections and certifications were performed at the behest of entities that were either directly or indirectly owned by the Chinese government.  This conflict of interest by the entities and individuals performing the inspections/certifications was known to Defendants and, therefore, Defendants were reckless in relying upon such inspections and certifications.

2617(c).    Defendants also knew or should have known that the testing performed abroad was inherently unreliable based on recent experiences involving the distribution and sale of defective products from China.  At or around the time the defective Chinese drywall at issue in this litigation was being imported to the United States, there were several recent controversies involving defective products imported from China.  Examples include:  Chinese pet food containing melamine, toothpaste tainted with antifreeze, Chinese seafood laced with chemicals, counterfeit glycerin found in cough syrup, defective Heparin, salmonella found in spices used to season snack foods, children's toys and jewelry contaminated with lead paint, and tires that were manufactured without gum strip (*i.e.*, increasing the risk of tread separation and vehicle rollovers).  Since these controversies and others were being reported at or around the time the

defective drywall at issue in this litigation was being imported to the United States, the Defendants knew or should have known that the testing of the Chinese manufactured drywall was inherently unreliable. Thus, Defendants were reckless and/or grossly negligent in relying upon such testing for purposes of determining compliance with American regulatory standards.

2620(a). Defendants engaged in a course of conduct, individually and/or collectively, that caused the Plaintiffs' and Class Members' exposure to the defective drywall at issue in this litigation by virtue of their interdependent conscious parallel conduct in the manufacture, exporting, importing, distribution, delivery, supply, inspection, marketing, and/or sale of the defective drywall at issue in this litigation. Defendants' parallel conduct suggests their common behavior was not the result of idiosyncratic decision making.

2620(b). The United States has been invaded by defective Chinese-manufactured drywall that is being produced by over one hundred Chinese manufacturers, many of which are partially state-owned entities related to the Peoples Republic of China through byzantine corporate structures. Although the Knauf entities are not wholly state-owned, they operate through such a byzantine corporate structure with interrelated corporate entities organized under the laws of Asia, Europe, and the United States. This family of interrelated corporate entities have numerous subsidiaries or other related entities with whom they engaged in interdependent parallel conduct in the manufacture, exporting, importing, distribution, delivery, supply, inspection, marketing, and/or sale of the defective drywall at issue in this litigation.

2620©. Knauf has attempted to use its byzantine corporate structure to shield itself from liability. As was noted above, Knauf has a complex corporate structure with interrelated corporate entities located in Europe, Asia, the United States, and elsewhere. Knauf has

attempted to use this complex corporate structure to profit through the distribution and sale of the defective Chinese manufactured drywall while at the same time attempting to shield itself from liability to Plaintiffs and Class Members.

2620(d).  The distributors, suppliers, importers, exporters, and brokers have also aided, abetted, and/or otherwise assisted the defendant manufacturers whose defective products were imported into the United States.  These defendants engaged in a course of conduct, individually and/or collectively, that caused the Plaintiffs' and Class Members' exposure to the defective drywall at issue in this litigation by virtue of their interdependent parallel conduct in the exporting, importing, distribution, delivery, supply, inspection, marketing, and/or sale of the defective drywall at issue in this litigation.

2620(e).  By information and belief, certain of the foreign defendants have positioned themselves in a manner designed to avoid or evade liability for their role in causing the manufacture, exporting, importing, distribution, delivery, supply, marketing, and/or sale of the defective drywall at issue in this litigation by making it difficult for injured consumers (located in the United States) to accomplish service on them.  Such foreign defendants are seemingly attempting to avoid responsibility for their tortious conduct.

*   *   *

WHEREFORE, the Complaint is deemed amended as set forth above.  All other unamended averments in the Complaint remain in effect as if re-alleged and averred in this Supplement to Class Action Complaint.  Since the Court is aware that Plaintiffs have incurred considerable delay and cost in interpreting the Complaint for service on the foreign defendants, the Court does not wish to disrupt or further delay Plaintiffs' efforts to serve the foreign

defendants. For this reason, Plaintiffs are directed to promptly mail each of the domestic defendants a copy of this ORDER and within ten days of learning that any foreign defendant has been served with a copy of the translated Complaint, Plaintiffs are to likewise mail a copy of this ORDER to that defendant.

    New Orleans, Louisiana, this 18th day of May, 2010.

*Eldon E. Fallon*
U.S. District Judge