CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

No. 09—11583

DIVISION "H"

DAVID BRONAUGH AND HEATHER BRONAUGH

-VERSUS-

SECTION 12

SAVOIE CONSTRUCTION, INC; CLARENDON AMERICA INSURANCE COMPANY; PRAETORIAN SPECIALTY INSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; INTERIOR EXTERIOR BUILDING SUPPLY, L.P.; INTERIOR EXTERIOR ENTERPRISES, L.L.C.; XYZ INSURANCE COMPANY; SEALS DRYWALL; AND HERMITAGE INSURANCE COMPANY



FILED: _____   _____
                                              DEPUTY CLERK

### PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come PLAINTIFFS, David Bronaugh and Heather Bronaugh, who are domiciled in the Parish of St Tammany and the State of Louisiana and bring this action as defined below against Defendants, SAVOIE CONSTRUCTION, INC.; CLARENDON AMERICA INSURANCE COMPANY; PRAETORIAN SPECIALTY INSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; INTERIOR EXTERIOR BUILDING SUPPLY, L.P.; INTERIOR EXTERIOR ENTERPRISES, L.L.C.; XYZ INSURANCE COMPANY; SEALS DRYWALL; AND HERMITAGE INSURANCE COMPANY for their complaint allege, upon information and belief and based on the investigation to date of their counsel, as follows:

### THE PARTIES

1. Plaintiffs David and Heather Bronaugh are persons of full age and majority, domiciled in the Parish of St. Tammany, State of Louisiana.

2. Plaintiffs bring this claim as owners of a residence located on 232 Sunset Boulevard, Slidell, Louisiana 70461 (referred to herein as "Plaintiffs' home" or the "Property"), which was built using drywall designed, manufactured and processed in China.

3. Defendant SAVOIE CONSTRUCTION, INC., is a Louisiana corporation, authorized to do business in the state of Louisiana.

4. Defendant Savoie Construction, Inc. ("Savoie") designed and constructed Plaintiffs'

**EXHIBIT "2"**

Page 1 of Exhibit "1"

home. Savoie served as builder, developer and/or general contractor of the Property.

5. Defendant, CLARENDON AMERICA INSURANCE COMPANY ("Clarendon") is an insurance company authorized to do business in Louisiana. Clarendon issued a commercial general liability policy of insurance to Savoie, policy number DSA017746, for the policy period of March 28, 2006 to March 28, 2007.

6. As insurer for Savoie, Defendant Clarendon is liable for the acts of its insured as alleged herein.

7. Defendant PRAETORIAN SPECIALTY INSURANCE COMPANY ("Praetorian") is an insurance company authorized to do business in Louisiana. Praetorian issued two commercial general liability policies of insurance to Savoie. The first policy, policy number PSILA0001502 had a policy period of March 28, 2007 to March 28, 2008. The second policy, policy number PSILA0005136 had a policy period of March 28, 2008 to March 28, 2009.

8. As insurer for Savoie, Defendant Praetorian is liable for the acts of its insured as alleged herein.

9. Defendant QBE SPECIALTY INSURANCE COMPANY ("QBE") is an insurance company authorized to do business in Louisiana. QBE issued a commercial general liability policy of insurance to Savoie, policy number QSILA0003971, for the policy period of March 28, 2009 to March 28, 2010.

10. As insurer for Savoie, Defendant QBE is liable for the acts of its insured as alleged herein.

11. Defendant INTERIOR EXTERIOR BUILDING SUPPLY, L.P.; INTERIOR EXTERIOR ENTERPRISES, L.L.C. ("Interior Exterior") is a company authorized to do business in Louisiana. Defendant Interior Exterior supplied the drywall system to Savoie that was used in the construction of Plaintiffs' home and caused damage to the Property.

12. Defendant XYZ Insurance Company is an insurance company authorized to conduct business in Louisiana. Defendant XYZ Insurance Company is an entity or entities providing insurance to Defendant Interior Exterior.

13. As insurer for Interior Exterior, Defendant XYZ Insurance Company is liable for the acts of its insured as alleged herein.

14. Defendant SEALS DRYWALL ("Seals") is a company authorized to do business in

2

purchaser in August 200( )

22. The drywall used to construct Plaintiffs' home emits harmful gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items, as well as creates noxious, "rotten egg-like" odors. The drywall is not suitable for its intended use.

23. Defendant Savoie designed and constructed Plaintiffs' home. Savoie selected and obtained drywall used in Plaintiff's home from Defendant Interior Exterior. Upon information and belief, the drywall and related components that were supplied by Interior Exterior to Savoie were designed, manufactured and processed in China.

24. Plaintiffs are informed and believe and thereon allege that the drywall system which was used to build Plaintiffs' residence contains harmful components including but not limited to iron disulfide, fly ash and industrial waste products which are harmful to health and property.

25. Plaintiffs are informed and believe and thereon allege that the drywall was manufactured using waste products and consequently emits harmful gases including but not limited to hydrogen sulfide, carbonyl sulfide, sulfur dioxide, cordon disulfide, methane and/or other volatile organic compounds that cause damage to property and physical injury.

26. Plaintiffs are informed and believe and thereon allege that the drywall system and the gases that it emits, causes and contributes to contamination of Plaintiffs' residence and to problems including, but not limited to, corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, exposed metals, pipes, fixtures, framing and rough carpentry hardware, nails and other household items and building materials, as well as creates noxious, "rotten egg-like" odors.

27. Plaintiffs are informed and believe and thereon allege that the drywall system and the gases that it emits, causes and contributes to physical injuries including but not limited to shortness of breath, dizziness, headaches, fatigue, insomnia, eye irritations and respiratory difficulties as well as many other symptoms for anyone exposed to breathing these gases.

28. Defendant Interior Exterior and Seals negligently supplied, delivered, inspected, sold and/or installed the drywall to Plaintiffs that was utilized by Savoie in the construction of Plaintiff's Property, which was unreasonably dangerous in its normal intended use in that it caused corrosion to air conditioning and refrigerator units, electrical wires and copper tubes, and caused allergic

4

reactions, coughing, sinus and throat infection, eye irritation, breathing hazards and other health concerns.

29. Plaintiffs relied on Defendant Savoie for its expertise in selecting the drywall that would be utilized in the construction of Plaintiffs' Property. Defendant Savoie chose to utilize unsuitable drywall obtained from Defendant Interior Exterior and Seals. Plaintiffs had no role in selecting the type of drywall to be utilized in the renovation of Plaintiffs' Property.

30. The dry wall used in construction of the Property was made with waste material from scrubbers on coal-fired power plants, also called "fly ash." These materials can leak into the air and emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

31. When combined with moisture in the air, these sulfur compounds create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing - creating leaks, blackening coils, and causing air conditioners and refrigerators to fail. Sulfuric acid has also been shown to corrode copper electrical wiring. Not only does it blacken and corrode coils, it can harm metals such as chrome, brass and silver.

32. The drywall can not only affect air conditioners and refrigerators, but can affect and require replacement of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware.

33. In addition, the dry wall has a noxious odor, akin to the smell of rotten eggs.

34. Defendants' actions will require Plaintiffs to remedy all Chinese drywall, performing extensive remedial repairs to the Property, including tearing down and rebuilding the property, and replacing wiring, appliances and fixtures.

35. As a result, Plaintiffs have suffered, and continue to suffer damages as a result of Defendants' use of drywall and its corrosive effects of the sulfur compounds. These damages include, but are not limited to, the cost of inspection, costs and expenses necessary to replace and remove the unsuitable drywall, adjoining components, electrical wiring, interior finishes, appliances and personal property, temporary housing expenses, mental anguish, emotional distress, and physical injury.

36. Defendants' actions also resulted in a substantial diminution in the value of Plaintiffs' Property.

## CLAIMS FOR RELIEF

### Count 1
### (Breach of Warranty of Redhibition, La. C. C. Art. 2520, Against All Defendants)

37. Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

38. Defendants sold and installed defective drywall in the construction of Plaintiffs' home.

39. Defendants warranted that the drywall was free of any redhibitory defects.

40. Defendants sold and installed the drywall in Plaintiffs' home that contained redhibitory defects unknown and undiscoverable to Plaintiffs at the time of the sale such that it rendered the drywall useless.

41. Plaintiffs would not have purchased the Property had Plaintiffs known about the redhibitory defects of the drywall.

42. Defendants knew or should have known that the drywall sold to Plaintiffs and used in the construction of the Property contained redhibitory defects that rendered the drywall completely useless.

43. Defendants knew or should have known that the drywall sold to Plaintiffs and used in the construction of the Property contained redhibitory defects that rendered the use of the drywall so inconvenient that the Plaintiffs would not have purchased the drywall had Plaintiffs known about the redhibitory defects.

44. Plaintiffs are entitled to enforce the warranty of redhibition, La. C.C. Art. 2520, because the defects in the drywall existed at the time that Plaintiffs purchased the drywall, and Plaintiffs, as reasonably prudent buyers, had no knowledge of the defects when Plaintiffs purchased the drywall, and could not have reasonably discovered the hidden defects in the drywall.

45. Plaintiffs gave Defendants adequate notice and opportunity to repair the redhibitory defects in Plaintiffs' drywall, pursuant to La. C. C. Art. 2522.

46. Upon information and belief, Defendant Savoie, as builder of the Property, knew that the drywall contained redhibitory defects that rendered the drywall completely useless and Defendant Savoie failed to remedy, repair or correct the defect in the drywall after receiving adequate notice of the defects in the drywall from Plaintiffs.

47. Upon information and belief, Defendant Interior Exterior, as supplier and distributor of the drywall, knew that the drywall contained redhibitory defects that rendered the drywall completely useless, and Defendant Interior Exterior failed to remedy, repair, or correct the defect in the drywall after receiving adequate notice of the defects in the drywall from Plaintiffs.

48. Upon information and belief, Defendant Seals, as subcontractor and installer of the drywall, knew that the drywall contained redhibitory defects that rendered the drywall completely useless, and Defendant Seals failed to remedy, repair, or correct the defect in the drywall after receiving adequate notice of the defects in the drywall from Plaintiffs.

49. Defendants breached the warranty of redhibition, La. C. C. Art. 2520, *et. seq.*

50. As a direct and proximate result of the breach of the warranty of redhibition that is present in every contract, Plaintiffs have sustained, and continue to sustain, significant monetary damages as a result of having to replace the unsuitable drywall, all appliances and other fixtures in the house that have been corrupted by the drywall and having to obtain temporary housing while Plaintiffs' Property is being repaired and/or replaced.

51. As a direct and proximate result of the breach of the warranty of redhibition that is present in every contract, Plaintiffs have sustained, and/or will continue to sustain, and/or are at an increased risk of sustaining personal injuries and/or harm along with damages due to emotional distress and mental anguish.

52. Defendants are liable to Plaintiffs, jointly, severally and in solido, for reasonable damages, together with legal interest thereon, from date of demand, until paid for all costs of these proceedings, and for all general and equitable relief as the nature of the case may demand.

<u>**Count 2**</u>

**(Breach of Implied Warranties, La. C. C. Art. 2475, *et. seq.*
Against All Defendants)**

53. Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

54. Defendants impliedly warranted that the drywall that Defendants sold which was utilized in the construction of the Property was safe and of acceptable quality and standards.

55. Defendants did not conform to this implied representation because the drywall used in the construction of the Property was unsafe, unacceptable and is associated with numerous adverse

7

side effects.

56. Defendants impliedly warranted to Plaintiffs that the drywall used in construction of the Property was safe, efficacious, and fit for use for the purposes intended, that the drywall used in the construction of the Property was of merchantable quality, did not produce any dangerous side effects, was adequately tested and was fit for its intended use.

57. Defendants knew or should have known that the aforesaid representations and warranties were false, misleading and untrue in that the Property with the drywall used therein, was not reasonably fit for the use intended and, in fact, produced severe and extensive damage to Plaintiffs' Property.

58. Plaintiffs are entitled to enforce the implied warranties of fitness for a particular purpose and merchantable quality because the drywall that was sold to Plaintiffs is unfit for its intended use, and Defendants knew that the drywall would be used in construction of Plaintiffs' residence, and the drywall was not appropriate for that use.

59. Savoie knew that the drywall was being purchased for the particular purpose of being installed in Plaintiffs' residence, and that Plaintiffs were relying on Savoie's skill and judgment in selecting and furnishing the drywall that was being utilized for this particular purpose.

60. Upon information and belief, Defendants breached the warranties of fitness for particular purpose and merchantability, and Plaintiffs hereby assert any and all claims for breach of the implied warranties of fitness for particular purpose and merchantability.

61. As a direct and proximate result of the breach of the warranties of fitness for particular purpose and merchantability that are present in every contract, Plaintiffs have sustained, and continue to sustain, significant monetary damages as a result of having to replace the drywall, and all appliances and other fixtures in the house that have been corrupted by the drywall and having to obtain temporary housing while Plaintiffs' Property is being repaired and/or replaced. As a direct and proximate result of the breach of the warranties of fitness for particular purpose and merchantability that are present in every contract, Plaintiffs have sustained, and/or will continue to sustain, and/or are at an increased risk of sustaining personal injuries and/or harm along with damages due to emotional distress and mental anguish.

62. Defendants are liable to Plaintiffs, jointly, severally and in solido, for reasonable damages, together with legal interest thereon, from date of demand, until paid for all costs of these

proceedings, and for all general and equitable relief as the nature of the case may demand.

### Count 3

(Strict Products Liability, LA. REV. STAT. ANN. § 9:2800, *et. seq.*,
Against All Defendants)

63. Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

64. Defendant Savoie, at all times herein mentioned, was in the business of constructing and selling residences in and within the parish where the Property is located.

65. Defendant Interior Exterior, at all times herein mentioned, was in the business of distributing and supplying drywall to contractors for use in construction and/or renovation of residences within the parish where the Property is located.

66. Defendant Seals, at all times herein mentioned, was in the business of installing drywall in residences in and within the parish where the Property is located.

67. At all times mentioned herein, Defendants knew and intended that the Property would be utilized by Plaintiffs without further inspection for defects.

68. The drywall sold by Defendants and used in the construction of Plaintiffs' home is defective and unfit for its intended purpose because the drywall is an unreasonably dangerous product in construction, composition and design, which has resulted in damage to the Property and its component parts.

69. The drywall used in the construction of Plaintiffs' Property is an unsafe, defective, and inherently dangerous condition which is hazardous to the occupants residing in the Property.

70. The drywall was so defective in design, formulation and manufacture that when it left Defendants control and was utilized by Defendants in the construction of the Property, the foreseeable risks greatly exceeded the benefits associated with the drywall.

71. At all times mentioned herein, the drywall utilized by Defendants was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that the drywall was defective and unsafe, especially when used in the form and manner in the Plaintiffs' Property.

72. Defendants knew, or should have known, that at all times herein mentioned the drywall used by Defendants was and is inherently dangerous and unsafe and failed to adequately warn

9

Louisiana. Defendant Seals was retained by Savoie to install the drywall system in Plaintiffs' home and caused damage to the Property.

15. Defendant HERMITAGE INSURANCE COMPANY ("Hermitage") is an insurance company authorized to conduct business in Louisiana. Defendant Hermitage is an entity providing insurance to Defendant Seals.

16. Plaintiffs reserve the right to allege a cause of action against all insurers for Defendants Savoie, Interior Exterior and Seals.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over this civil action as Defendants are doing business or have done business in Louisiana and have sufficient contact with the State of Louisiana to meet due process requirements.

18. This Court has jurisdiction over Defendant Seals as a non-resident defendant pursuant to the Louisiana "Long Arm Statute" or LA. REV. STAT. ANN. § 13:3201. Service can be perfected on Defendant Seals pursuant to LA. REV. STAT. ANN. § 13:3204 or LA. REV. 18. STAT. ANN. 13:3471. Defendant Seals installed drywall in numerous homes across Louisiana, indicating that Defendant Seals is doing business or has done business in Louisiana and has sufficient contact with the State of Louisiana, rendering jurisdiction over Defendant Seals proper.

19. This action is founded upon Louisiana state law, including, but not limited to, violations of Louisiana Civil Code Articles 2475 and 2520, the warranty against redhibitory defects, the warranty of fitness for a particular purpose and fitness for ordinary use and the warranty of merchantable quality; violations of the Louisiana Products Liability Act, LA. REV. STAT. ANN. § 9:2800, et seq.; violations of LA. REV. STAT. ANN. § 51:1401, et. seq., or the Louisiana Unfair Trade Practices and Consumer Protection Law; violations of the New Home Warranty Act, LA. REV. STAT. ANN. § 9:3143, et. seq.; fraudulent concealment and principles of negligence which are subject to the jurisdiction of this Court.

20. Venue is proper in this Court pursuant to articles 42 and 74 of the Louisiana Code of Civil Procedure.

## BACKGROUND

21. Savoie built the Property following Hurricane Katrina in 2005. Savoie initially sold the Property to another couple in August 2006. Plaintiffs purchased the Property from the original

3

Plaintiffs of the drywall's inherently dangerous condition.

73. Plaintiffs utilized the drywall for the purposes and manner normally intended.

74. Defendants had a duty to utilize a product that was not unreasonably dangerous for its normal and intended use.

75. The drywall utilized by Defendants was designed, constructed, delivered, inspected and/or sold in a defective condition and was unreasonably dangerous to its intended users, including Plaintiffs.

76. Plaintiffs, acting as reasonably prudent persons, could not and did not discover that the drywall utilized by Defendants was defective as mentioned herein or perceive of its danger.

77. The defects in the drywall utilized by Defendants were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at an increased risk of damage and/or harm.

78. The defects alleged herein and above are defects that were not apparent by reasonable inspection of the Property. The defects thereafter manifested.

79. Defendant Savoie, as a builder of the Property, is liable as a manufacturer under the builder/vendor rule for the redhibitory defects in the drywall and for all damages caused by the defect, including attorney's fees and costs.

80. Upon information and belief, Defendant Interior Exterior, as supplier of the drywall used in the construction of the Property, knew that the drywall contained redhibitory defects that rendered the drywall completely useless and failed to repair, remedy, or correct the defect in the drywall, rendering Interior Exterior liable as a manufacturer under LA. REV. STAT. ANN. § 9:2800, *et. seq.*

81. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs are entitled to receive full reimbursement for monies paid for the drywall plus interest from the time of sale, plus full compensation for all monetary damages sustained as a result of Defendants' conduct, including any physical damages suffered by Plaintiffs, damages based on the nature and duration of the inconveniences suffered by Plaintiffs and attorney's fees.

82. Defendants, as developers, contractors, suppliers, distributors, builders, installers and sellers and/or otherwise within the stream of commerce are strictly liable and responsible to Plaintiffs for all damage suffered as a result of the above described damage, defects and deficiencies in the Property.

10

83. As a direct and proximate result of the defective condition of the drywall used by Defendants in the Property, Plaintiffs are suffering, have suffered, and will continue to suffer damages, including damages due to personal injury and/or harm along with damages due to mental anguish.

84. Defendants are liable to Plaintiffs, jointly, severally and in solido, for reasonable damages, together with legal interest thereon, from date of demand, until paid for all costs of these proceedings, and for all general and equitable relief as the nature of the case may demand.

<u>Count 4</u>

(Negligence and Negligence Per Se Against All Defendants)

85. Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

86. Defendants had a duty to exercise reasonable care in inspecting, supplying and/or utilizing the drywall sold to Plaintiffs and used in the construction of Plaintiffs' Property, including a duty to assure that the drywall would perform as intended when utilized in the construction of Plaintiffs' Property and would not cause and did not cause the damages as described herein.

87. Defendants breached their duty by failing to exercise ordinary care in the inspecting, supplying and/or utilizing the drywall sold to Plaintiffs and used in the construction of Plaintiffs' Property in that Defendants knew or should have known that the drywall used did not function as intended, and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to air-conditioning and refrigerator units, wires, tubes, pipes, and caused allergic reactions, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

88. The negligence of Defendants, their agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

   a. negligently representing to Plaintiffs that the drywall was safe, fit for its intended use and contained no hidden defects;

   b. negligently failing to inspect the drywall for any potential hidden defects that would limit the drywall's performance;

   c. negligently supplying the drywall for the construction of Plaintiffs' Property when Defendants knew it was unfit for its intended use and contained hidden defects; and

   d. negligently utilizing the drywall in the construction of the Plaintiffs' property when Defendants knew it was unfit for its intended use and contained hidden defects.

89. Defendants were negligent in the delivery, inspection and/or sale of the drywall in that they:

   a. failed to inspect the drywall for any potential redhibitory defects that would limit the drywall's performance or render the drywall useless;

   b. failed to use due care in constructing the Property with adequate drywall so as to avoid the aforementioned risks;

   c. failed to supply Plaintiffs with drywall that was fit for its intended use, of merchantable quality, and contained no hidden defects; and

   d. failed to utilize drywall when renovating Plaintiffs' Property that was fit for its intended use, of merchantable quality and contained no hidden defects.

90. Upon information and belief, despite the fact that Defendants knew or should have known that the drywall used in the Property caused unreasonably dangerous side effects, Defendants continued to deliver, sell and/or construct Plaintiffs' Property with the drywall.

91. Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent use of the drywall, as set forth herein.

92. Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances, and/or rules and/or regulations, constitutes negligence per se.

93. Defendants' negligence was the proximate cause of Plaintiffs' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

94. Plaintiffs did not and could not reasonably have discovered the true condition of the drywall until Spring 2009.

95. As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, replacement costs for appliances, copper wiring and plumbing, insulation, fixtures, contents, incidental, and other related expenses.

96. Defendants are liable to Plaintiffs, jointly, severally and in solido, for reasonable damages, together with legal interest thereon, from date of demand, until paid for all costs of these proceedings, and for all general and equitable relief as the nature of the case may demand.

## Count 6

### (Fraudulent Concealment Against All Defendants)

97. Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

98. At all times material hereto, Defendants misrepresented the safety of the Property and the drywall sold by Defendants and used in Plaintiffs' home.

99. Defendants knew, or were reckless in not knowing, that their representations to Plaintiffs that the drywall was safe were false.

100. Upon information and belief, Defendants fraudulently concealed, and/or intentionally omitted the fact that the drywall sold and used in the construction of Plaintiffs' Property caused corrosion to the air-conditioning and refrigerator units, electrical wiring and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

101. Upon information and belief, Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants were aware of the unsuitable nature of the drywall sold and utilized in the construction of Plaintiffs' Property.

102. Defendants were under a duty to disclose to Plaintiffs the unsuitable nature of the drywall and the potential dangerous effects of the drywall and failed to do so.

103. Defendants were under a duty to intervene to inspect Plaintiffs' Property when notified of the unsuitable nature of the drywall and the potential dangerous side effects of the drywall, and to cure the defects in the Plaintiffs' Property and failed to do so.

104. Upon information and belief, Defendants' concealment and omissions of material facts concerning, *inter alia*, the use of the unsuitable drywall in the construction of Plaintiffs' Property was made purposefully, wilfully, wantonly, and/or recklessly to mislead Plaintiffs.

105. Upon information and belief, Defendants knew that Plaintiffs had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of fact surrounding Defendants' use of the unsuitable drywall as alleged herein.

106. Plaintiffs reasonably relied on the facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

107. Plaintiffs did not have actual or constructive knowledge of the unsuitable nature of

13

the drywall and could not be learned about the unsuitable effects of the drywall and its adverse effects through the exercise of due diligence.

108. As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, replacement costs of appliances, replacement costs of all copper wiring and plumbing, replacement costs of all insulation, replacement costs of contents, incidental, and all other related expenses. Plaintiffs are informed and believe, and further allege that Plaintiffs will be required in the future to pay for additional repairs and/or replacement costs.

109. As a result of the foregoing acts and omissions, Plaintiffs have sustained, and/or will continue to sustain, and/or are at an increased risk of sustaining personal injuries and/or harm along with damages due to mental anguish and will in the future be required to pay for medical care, medical expenses and/or attention and services.

110. Defendants are liable to Plaintiffs, jointly, severally and in solido, for reasonable damages, together with legal interest thereon, from date of demand, until paid for all costs of these proceedings, and for all general and equitable relief as the nature of the case may demand.

### Count 6

**(Violation of the Louisiana Unfair Trade Practices Act,
LA. REV. STAT. ANN. § 51:1401, *et. seq.*
Against All Defendants)**

111. Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

112. This action is brought to secure redress against Defendants and Defendants' insurer(s), for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

113. Plaintiffs are "consumers" and the subject transactions are "trade or commerce" as defined by LA. REV. STAT. ANN. § 51:1402.

114. Defendants' actions and/or omissions as described herein violate LA. REV. STAT. ANN. § 51:1401, *et. seq.*, the Louisiana Unfair Trade Practices and Consumer Law, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

115. Specifically, Defendants misrepresented and omitted material information regarding the drywall that Defendants supplied to Plaintiffs and by failing to disclose known risks regarding

14

the drywall.

116. Defendants' misrepresentations and concealment of material facts constitutes unconscionable commercial practices, which offend established public policy and are unethical, oppressive, unscrupulous, and substantially injurious to consumers and other business competitors in violation of LA. REV. STAT. ANN. § 51:1401, *et. seq*, the Louisiana Unfair Trade Practices and Consumer Law.

117. Defendants violated LA. REV. STAT. ANN. § 51:1401, *et. seq*, by knowingly and falsely representing that the drywall used in construction of the Property was fit to be used for the purpose for which the drywall was intended, was of merchantable quality and contained no hidden defects, when Defendants knew the drywall was dangerous, ineffective and unsafe.

118. Defendants engaged in the deceptive acts and practices alleged herein in order to sell more drywall to the public, including to Plaintiffs.

119. The acts of Defendants were and are illegal and unlawful pursuant to LA. REV. STAT. ANN. § 51:1401, *et. seq.*, the Louisiana Unfair Trade Practices and Consumer Law.

120. As a direct and proximate result of Defendants' violation of LA. REV. STAT. ANN. § 51:1401, *et. seq*, Plaintiffs have suffered damages. Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

121. Defendants are liable to Plaintiffs, jointly, severally and in solido, for reasonable damages, together with legal interest thereon, from date of demand, until paid for all costs of these proceedings, and for all general and equitable relief as the nature of the case may demand.

<u>Count 7</u>

**(New Home Warranty Act, LA. REV. STAT. ANN. § 9:3143, *et. seq.*,
Against Defendants Savoie, Clarendon, Praetorian and QBE)**

122. Plaintiffs hereby re-allege and incorporate herein by reference the preceding paragraphs of this Petition.

123. Defendant Savoie is a "builder" as defined by LA. REV. STAT. ANN. § 9:3143 as "any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto."

124. Plaintiffs are "owners" as defined by LA. REV. STAT. ANN. § 9:3143 as "the initial

15

purchaser of a home and of its successors in title, heirs, invitees or assigns to a home during the time the warranties are provided under this Chapter are in effect."

125. Plaintiffs purchased the Property from the original purchasers within the five year warranty period, therefore, the benefits of the New Home Warranty Act apply to Plaintiffs.

126. Defendant Savoie warranted to Plaintiffs that Plaintiffs' home would be "free from any defect due to noncompliance with building standards or due to other defects in materials or workmanship not regulated by building standards" pursuant to LA. REV. STAT. ANN. § 9:3144.

127. Defendant Savoie warranted to Plaintiffs that the plumbing, electrical, heating, cooling and ventilating systems in Plaintiffs' home would be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

128. Defendant Savoie warranted to Plaintiffs that the Plaintiffs' home would be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

129. Defendant Savoie breached these warranties by constructing Plaintiffs' home with drywall which constitutes a major structural defect in Plaintiffs' home and does not meet the standards set forth in the building code.

130. Plaintiffs are entitled to enforce their rights pursuant to the New Home Warranty Act, LA. REV. STAT. § 9:3143 because Plaintiffs gave adequate notice to Defendant Savoie regarding the existence of major structural defects in Plaintiffs' home, Defendant Savoie failed to inspect Plaintiffs' home within the requisite time period, and Defendant Savoie failed to remedy, repair or correct the defects in Plaintiffs' home.

131. As a result of Defendant Savoie's breach of the New Home Warranty Act, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, replacement costs of appliances, replacement costs of all copper wiring and plumbing, replacement costs of all insulation, replacement costs of contents, incidental, and all other related expenses. Plaintiffs are informed and believe, and further allege that Plaintiffs will be required in the future to pay for additional repairs and/or replacement costs.

132. As a result of Defendant Savoie's breach of the New Home Warranty Act,

Plaintiffs have sustained, and/or will continue to sustain, and/or are at an increased risk of sustaining personal injuries and/or harm along with damages due to mental anguish and will in the future be required to pay for medical care, medical expenses and/or attention and services.

133. Plaintiffs are entitled to actual damages, reasonable attorney's fees and court costs for Defendant Savoie's breach of the New Home Warranty Act, La. Rev. Stat. Ann. § 9:3149.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a. Equitable, injunctive, and declaratory relief;

b. Damages in an amount to be determined by the jury at trial;

c. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d. Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

e. The costs and disbursements incurred by the Plaintiffs in connection with this action, including reasonable attorney's fees;

f. All statutory damages;

h. Disgorgement of Defendants' profits from the sale of drywall;

i. Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorney's fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiffs may be entitled; and

j. Such other and further relief under all applicable Louisiana state laws and any other relief this Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

Plaintiffs, David Bronaugh and Heather Bronaugh, hereby demand a jury trial as to all issues so triable.

Dated: October 29, 2009                    Respectfully Submitted,

By: _____
**KANNER & WHITELEY, L.L.C.**
Allan Kanner – (La. #20580)
a.kanner@kanner-law.com
Cynthia St. Amant – (La. #24439)
c.stamant@kanner-law.com
Melissa M. Fuselier – (La. #31163)

17

Page 17 of Exhibit "1"

m.fuselier@ka...er-law.com
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
Facsimile: (504) 524-5763

**PLEASE SERVE**:

Interior Exterior Building Supply, L.P.
727 South Cortez Street
New Orleans, Louisiana 70119

Interior Exterior Enterprises, L.L.C.
727 South Cortez Street
New Orleans, Louisiana 70119

Savoie Construction, Inc.
3735 Pontchartrain Drive
Slidell, Louisiana 70458

Savoie Construction, Inc.
301 West Honors Point
Slidell, Louisiana 70458

Clarendon America Insurance Company
Through its registered agent
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

Praetorian Specialty Insurance Company
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

QBE Specialty Insurance Company
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

Hermitage Insurance Company
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

Under the Louisiana "long arm statute":

Seals Drywall
125 George Mitchell Road
Carriere, Mississippi 39426