**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:  Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al., Case No. 2:09-cv-6687 (E.D.La.) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

**I.       INTRODUCTION**

This matter involves the claims of thousands of homeowners who have suffered property damages from the use of Taishan[1] drywall in their homes.  At present, the Plaintiffs' Steering Committee (PSC) represents Taishan drywall homeowners in six states:  Virginia, Florida, Louisiana, Mississippi, Alabama, and North Carolina.  The overwhelming majority of the Taishan claims that have been filed in the MDL, however, have been filed by homeowners in Virginia and Florida.  Given the present state of the *Germano* action, proposed class counsel and the PSC submit that the MDL will best be served by a class action proceeding seeking an award of class-wide property damages for all similarly situated Virginia residents.

Such claims, specifically against Taishan are ripe for class certification for several

---

[1] The Chinese Drywall at issue in the present case was manufactured by Shandong Taihe Dongxin Co., Ltd. which on September 10, 2007, changed its name to Taishan Gypsum Co. Ltd.  Germano Findings of Fact and Conclusions of Law (Docket #2380) (hereinafter "FOFCOL") at 8.  Hereafter, Shandong Taihe Dongxin, Ltd. and Taishan

procedural and substantive reasons.  The *Germano* proposed class representatives (Michelle Germano, Dennis and Sharon Jackson, Jason and Lisa Dunaway), have obtained a preliminary default judgment against Taishan (Docket #487); furthermore, the seven Plaintiff Intervenors in *Germano*, who are also Virginia homeowners with Taishan drywall, have also obtained a default judgment against Taishan (Docket #3013).  The court has made judicial findings as to a multitude of factual and legal issues pertaining to Virginia property damage claims caused by defective Taishan Chinese drywall, as a result of the February 19-22 scope of remediation and property damages  proceedings before this court, (Docket #2380) (Germano Findings of Fact and Conclusions of Law, hereinafter "FOFCOL").  Indeed, this court has acknowledged that the seven intervenor Plaintiffs were selected as a fair cross-section of Chinese drywall homeowners in Virginia.  FOFCOL at 63-64.  This court is not only extremely familiar with the factual evidence and governing Virginia law, but the court may give preclusive effect to the FOFCOL which will greatly simplify this class proceeding.  The only unresolved issue for the Virginia class as it relates to their claims against Taishan is a factual determination of the amount of recoverable property damages.[2]  The determination of this issue can be readily managed under a Federal Rule 23(b)(3) class or subclass certification,[3] given the limited scope of this issue, the record developed in the February proceeding and the extensive level of familiarity of the court

---

Gypsum Co., Ltd. shall be referred to as "Taishan."

[2]  The claims asserted against those Defendants who did answer the complaint, and who did not participate in the Taishan remediation and property damage proceeding for the seven Intervener Plaintiffs as set forth in Consent Order (Docket #546), are not the subject of this motion for class certification.  The Consent Order states that the remediation proceeding is without prejudice to the answering Defendants' ability to defend itself in a later proceeding.

[3]  If the court prefers, or otherwise does not wish to certify a "subclass," Fed. R. Civ. P. 23(c)(5),without first addressing certification of the "class," it can refer to the Virginia claims as a "class," provided Plaintiffs' right to later seek certification of a national class and/or other State "subclasses" is expressly reserved.  The fact is that, whether called a "class" or a "subclass," the stand-alone Fed. R. Civ. P. 23 analysis for Virginia remains unchanged.

with the relevant evidence, having served as the fact finder in the *Germano* proceedings.[4]

Virginia subclass representatives hereby move for class certification on behalf of themselves and all similarly situated persons pursuant to Fed. R. Civ. P. 23(b)(3) and Fed. R. Civ. R. 23(c)(5).  Plaintiffs seek certification of a Virginia subclass of all owners of residential real properties containing Chinese drywall manufactured by Taishan[5] on their claims for remediation and property damages.[6]

The Virginia subclass claim against Taishan readily meets the Fed. R. Civ. P. 23(a)(1-4) requirements of numerosity, commonality, typicality, and adequacy.  As to numerosity, available delivery records indicate that the number of Virginia homeowners who own homes containing Taishan drywall (homes that are either all Taishan drywall or "mixed" Taishan and U.S. drywall), and who could qualify as members of the subclass is estimated to be approximately 300.  Declaration of Ronald E. Wright, P.E. (5/21/10) ("Wright Dec.") at ¶¶3, 10; Declaration of Richard Serpe (5/21/10) ("Serpe Dec.") at ¶11.  This is more than enough to establish

---

[4] Plaintiffs are only moving at this time for certification of the Virginia subclass for its claims against Taishan, the default judgment Defendant.  Plaintiffs specifically reserve the right to move for certification for the national class or any other state subclass at a time deemed appropriate following additional discovery and other proceedings.  The Virginia subclass, as opposed to the potential subclasses from other states known to have Taishan Drywall, is uniquely situated in that the other answering Defendants have consented to the Plaintiff Intervenor remediation and property damages proceeding against Taishan.  The agreed to December 2, 2009 Consent Order states that the scope of remediation and property damages proceeding is without prejudice to their defenses.  (Docket #546).  A final judgment against the default judgment Defendant will not prejudice the answering Defendants.  In addition, under Virginia law, there is no risk to the Plaintiffs that an unsatisfied judgment against Taishan can be set off against a judgment obtained against the answering Defendants in a separate proceeding.  Va. Code §8.01-443.  Furthermore, Virginia  recognizes joint and several liability. *Sullivan v. Robertson Drug Co., Inc.,* 639 S.E.2d 250, 255 (Va. 2007) (citing *Maroulis v. Elliott,* 207 151 S.E.3d 339, 345 (Va. 1966); *Murray v. Smithson,* 48 S.E.2d 239, 241 (Va. 1948)).  Therefore, there is no risk that in a later proceeding against the answering Defendants, an allocation of fault to Taishan could reduce the judgment against these answering Defendants.  Thus, proceeding at this time with the Virginia subclass claim against Taishan will not prejudice the Plaintiffs or the answering Defendants.

[5] The class (or subclass) definition is: "All owners of residential real properties in the Commonwealth of Virginia containing Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by Taishan Gypsum Co. Ltd., who have not released or assigned their property damage claims to a third party."

[6] The proposed Virginia subclass does not seek to certify personal injury (or medical monitoring) claims in this motion. To the extent any subclass member seeks to bring those claims, they will be brought on an individual basis.

numerosity.

As a result of this court having held the evidentiary hearing to determine the scope of remediation, cost of remediation and other property damages caused by Taishan drywall to the seven Plaintiff Intervenors, (February 19, 2010, February 22, 2010), the court issued Findings of Fact and Conclusions of Law on April 8, 2010 (Docket # 2380).  These findings resolved a multitude of factual and legal issues for the seven Plaintiff Intervenors' claims against Taishan (such as scope and cost of remediation and the right to recover remediation damages),[7] and further found that these homeowners "represent a broad cross-section … and the general principles found applicable to them will have relevance, if not in total, at least partially, to all homes contaminated by defective Chinese drywall."  FOFCOL at 63-64.  Thus, the Plaintiffs will be able to readily demonstrate that the relevant factual and legal determinations already made, as well as the need to quantify damages for the subclass, are common issues for the Virginia subclass; and that the commonality requirement is satisfied.

The claims of the Virginia subclass representatives are also typical of the subclass.  Each subclass representative, as well as each subclass member, is a homeowner seeking tort damages caused by defective Taishan drywall under Virginia law.  The subclass representatives possess the same interest and have suffered the same injury as subclass members.

The subclass representatives will fairly and adequately protect the interests of the subclass.  The representatives have already undergone a screening inspection of their home to verify the presence of defective Taishan drywall and corrosion damage, as well as completing the court-mandated Plaintiffs Fact Sheet (PFS).  Serpe Dec. at ¶¶4-9.  In addition, subclass counsel (Russ Herman, Arnold Levin, Richard Serpe, Ervin Gonzalez, and Richard Lewis, as

4

well as their law firms) are experienced and competent counsel, as demonstrated by their participation in the Plaintiff Intervenor trial of this matter, as well as several other complex proceedings before this court.

As to predominance, since this is a default judgment proceeding against Taishan, liability and the fact of damage are already established. FOFCOL at 5, 106-108. The determination of the amount of damages will be made by the court pursuant to Fed. R. Civ. P. 55(b)(2)(B). Thus trial is not necessary to resolve this case. The primary remaining unresolved issue in this case is the fact issue of the amount of subclass-wide damages. Plaintiffs will establish herein that the subclass-wide damages can be determined using a formulaic method.

Plaintiffs will show that the class action mechanism is a superior mechanism to resolve these claims compared to a mechanism utilizing individual proceedings. The applicable law and the type of recoverable damages are uniform and have already been established and subjected to a formulaic method of calculation. Furthermore it would be grossly inefficient and time-wasting for different courts to resolve this identical issue on an individual basis, and it would unnecessarily create a risk of inconsistent adjudications. In sum, if the subclass is certified the court will be obligated only to resolve the fact issue of the amount of subclass-wide damages. This issue is thoroughly within the expertise and competence of the court, particularly after the court has presided as the finder of fact in the *Germano* remediation and property damages trial.

## II.     FACTUAL STATEMENT AND PROCEDURAL HISTORY

The court's Findings of Fact and Conclusions of Law establish and set forth the majority of the facts relevant to this case, and specifically relevant to this class motion, with extensive citation to record evidence. (Docket #2380). This Factual Statement will highlight those facts

---

[7] FOFCOL at 26-59, 64-69.

most relevant to class certification.

From 2004 through 2006, the housing boom and rebuilding efforts necessitated by various hurricanes lead to a shortage of construction materials, including drywall.  As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast states including Virginia.  After the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.  Many of these homeowners also began to complain of experiencing symptoms of irritant effects such as respiratory irritation, headaches and fatigue, which would often dissipate when away from the home. FOFCOL at 12-13.

The present matter commenced when Plaintiffs, on behalf of themselves and all other similarly situated owners brought a class action against Defendants Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Tobin Trading, Inc.; Venture Supply, Inc.; Harbor Walk Development, LLC; and the Porter-Blaine Corp.  Plaintiffs filed their initial complaint in the Eastern District of Virginia on May 1, 2009.  Thereafter, on May 26, 2009, Plaintiffs filed their First Amended Complaint.  On August 3, 2009, Plaintiffs received notice that service of process of the First Amended Complaint was perfected on Defendant Taishan. Plaintiffs' case was then transferred to the Eastern District of Louisiana on October 13, 2009. Subsequent to transfer, Plaintiffs moved to amend the First Amended Compliant to assert a national class against Taishan.  Plaintiffs' motion to amend was granted.  FOFCOL at 5-6.

The Second Amended Class Action Complaint asserts claims against Taishan for

negligence, negligence per se, breach of express and/or implied warranties, private nuisance, unjust enrichment, violation of the Consumer Protection Acts and for equitable injunctive and medical monitoring.  Since Taishan did not timely respond to the Complaint or enter its appearance in this litigation, Plaintiffs moved for a default judgment.  On November 20, 2009, the court granted a preliminary default against Taishan.  (Docket #487).  The court held an evidentiary hearing on February 19 and 22, and issued Findings of Fact and Conclusions of Law on April 8, 2010.  (Docket #2380).  The court entered a final default judgment with awards to the seven Plaintiff Intervenors on May 10, 2010.  (Docket #3013).

On November 9, 2005, Venture Supply, Inc., a company in Norfolk, Virginia, provided an original letter of credit in the amount of $429,600.00 to the order of Shandong Taihe Dongxin Co. for 120,000 sheets of drywall to meet all USA ASTM ratings and fire rating standards.  *Id*. at 8.  On November 14, 2005, Frank Clem, manager of Venture Supply, was advised to remove U.S. ASTM requirements from the letter of credit and rely solely upon Chinese ratings.  *Id.* at 8.  Venture Supply then contracted with Taishan to purchase drywall.  *Id.* at 8.  Although it originally contracted to meet United States' ASTM standards, Taishan insisted that the drywall it sold to Venture Supply, Inc. would not be required to meet these standards.  *Id.* at 9.  Accordingly, on November 15, 2005, Venture Supply directed its bank to remove the U.S. ASTM requirement from the letter of credit to Taishan.  *Id.* at 9.  The Taishan drywall was never tested for compliance with the ASTM standards.  *Id.* at 10.  Pursuant to contract, on December 25, 2005, Taishan had 2,000 pallets of drywall shipped aboard the M/V Glykofillousa from the Chinese Port of Loading, Lianyungang.  *Id.* at 9.  The shipment arrived in the United States in February, 2006.  *Id.* at 9.

On December 16, 2005, a second contract was signed between Venture Supply and Shandong Taihe Dongxin Co. for 100,000 sheets on 2,000 pallets to be shipped to Norfolk, Virginia. *Id.* at 9. However, the second shipment of drywall was reduced to 53,912 sheets on 586 pallets, which was shipped onboard the M/V Atlantic Fortune from the Chinese Port of Loading, Lianyungang. *Id.* at 9. This shipment was off-loaded in Camden, New Jersey. *Id.* at 9.

All of Taishan's drywall sold to Venture Supply bore the following legend on end binding label tape: "4'x12'x1/2" Gypsum Board Distributed by Venture Supply, Inc." and on the back of the board: "Venture Supply, Inc. MGF. Shandong Taihe Dongxin, Co., Ltd., China." *Id.* at 9.

The Porter-Blaine Corporation, a company related to Venture Supply, Inc., purchased Taishan drywall from Venture Supply, Inc. *Id.* at 9. Venture Supply, Inc. shipped Taishan drywall to each of the seven intervening Plaintiffs' (hereinafter "Plaintiff" or "Plaintiff Intervenor") homes and the drywall was thereupon installed by the Porter-Blaine Corporation in the homes. *Id.* at 9.

On March 19, 2005, BNBM became the largest shareholder of Taihe Dongxin by purchasing sixty-five percent (65%) of the equity of Taishan Dongxin. *Id.* at 10. CNBM's Gypsum Board business production on December 321, 2008 from its wholly owned subsidiary, Taishan Gypsum Co., was $262.3 million yuan. *Id.* at 11.

It has been established by the Consumer Product Safety Commission ("CPSC") and in this proceeding that Chinese drywall, including Taishan drywall, releases reduced sulfur gases. *Id.* at 12. The three main gases that are released from CDW are hydrogen sulfide ($H_2S$), carbonyl sulfide (COS), and carbon disulfide ($CS_2$). *Id.* at 12. The CPSC and Plaintiffs' experts

have detected reduced sulfur gas emissions by conducting laboratory tests on samples of Chinese drywall. *Id.* at 12. These emissions are often associated with strong odors. *Id.* at 12. The fact that Chinese drywall emits sulfur gases has been reported by the CPSC, the Florida Department of Health, and other investigatory agencies and firms. *Id.* at 13.

The sulfur gases released by Chinese drywall cause respiratory, eye, throat and skin irritation, cause offending odors in homes, making them hard if not impossible to live in, and are corrosive to metals, particularly copper and silver. *Id.* at 13.

The corrosion of metals caused by the sulfur gases emitted by Chinese drywall causes premature failure of electrical and mechanical devices. *Id.* at 14. Like Plaintiff Intervenors, the subclass representatives and absent subclass members have reported premature failures of major appliances and consumer electronics in their homes during their first three years of use of these homes. FOFCOL at p. 15; Wright Dec. at ¶8. Laboratory analysis of these copper and silver components from the Virginia homes identified the corrosion as the cause of HVAC coil failure and severe deposits at the operative connections in the appliances and in consumer electronics. *Id. at* 15. Mechanical, electrical, and electronic failures have been shown to have occurred prematurely due to the severe industrial corrosive environments in these Chinese drywall homes. *Id. at* 15; Wright Dec. at ¶8. Evaluation of comparable HVAC systems, appliances, and electronics in *control* homes (e.g., similar homes without Chinese drywall) do not show premature failures of HVAC systems, appliances, and electronics, and the wires do not have corrosion product thicknesses that would predict premature failures. *Id.* at 16. The corrosion on metals caused by the sulfur gases emitted by Chinese drywall poses a fire risk. *Id.* at 16. The level of corrosive sulfur gases emitted by Chinese drywall in the Plaintiff-Intervenors' homes

exceed the safe level established by recognized standards, peer reviewed literature, and expert opinions; and cause a corrosive environment in the home that has a significant impact on the exposed property. FOFCOL at 17-25.

The wires and HVAC coils that were removed from the Plaintiff Intervenors' homes demonstrated both pore corrosion and creep corrosion. *Id.* at 21. Based solely on these qualitative Battelle corrosivity criteria, the homes of the Plaintiff Intervenors are classified as severe industrial corrosive environments. *Id.* at 21. The homes of the subclass representatives and absent class members demonstrate similar corrosive effects. Wright Dec. at ¶¶6 and 7.

The scientific evidence has demonstrated that corrosion has damaged many components in the home. FOFCOL at 34-49. Consequently, in these homes all drywall needs to be removed and replaced. Removal of all drywall in a mixed home is efficient and cost effective. All electrical wires need to be replaced. The insulation jackets on electrical wires do not adequately protect them from corrosive attack. *Id.* at 36. It is not feasible to clean the wires of corrosion product to render them free of risk of future failure. *Id.* at 37. All copper pipes need to be replaced. The HVAC units need to be replaced. Selective electrical devices and appliances need to be replaced. Carpet must be replaced. Hardwood or vinyl flooring must be replaced. Cabinets and countertops must be replaced. Trim, crown molding, baseboards, bathroom fixtures and insulation must be replaced. FOFCOL at 50-52.

In sum, the evidence supports the conclusion that the appropriate remediation for Virginia Taishan homes includes the removal of all drywall, all electrical wiring, the entire HVAC system, and many other items such as appliances, carpet, cabinetry, trim work and flooring. *Id.* at 27. The scope of this remediation is supported by both the scientific and

practical evidence presented.  *Id. at* 27.This remediation is also appropriate for the Virginia

subclass representatives and absent subclass members.  Wright Dec. at ¶¶4-10.  As part of the

remediation, homes will need to be cleaned with a HEPA vacuum, wet-wiped or power-washed,

and allowed to air-out after remediation.  After remediation, an independent, qualified

engineering company should inspect and certify that the homes are safe for occupation.

FOFCOL at 53; Wright Dec. at ¶8.

    This remediation scope of work is consistent with Chinese drywall remediation being

performed by national homebuilders.  FOFCOL at 54.  The CPSC remediation protocol is also

largely consistent with this scope of work.  *Id.* at 56.

    The evidence reviewed by this court indicates that the better and more realistic approach

to drywall removal dictates the removal of all drywall in those homes in which there is a

substantial mixture, as opposed to selective removal of Chinese drywall on a board-by-board

basis.  This is necessary in order to remove and replace wires, pipes, and insulation, and to

adequately clean the home.  Furthermore, the evidence indicates that it is virtually impossible to

detect with reasonable accuracy which is and which is not Chinese drywall.  FOFCOL at 27-33.

    To accomplish the remediation, homeowners will be out of their home for 4-6 months

during remediation.  The families are entitled to alternate living expenses during the remediation

process.  *Id. at* 57.  The costs of repairing Virginia homes that have Taishan drywall is on

average $86/square foot.  The need for this sort of repair and remediation is fully applicable to

the subclass representatives and absent classmembers.  Wright Dec. at ¶¶4-10.

    The Virginia subclass representatives are Michelle Germano, a resident of Virginia who

owns a home located at 8171 Northview Blvd, Norfolk, VA 23518; Dennis and Sharon Jackson

11

(husband and wife), residents of Virginia who own a home located at 8151 Northview Blvd., Norfolk, VA 23518; and Jason and Lisa Dunaway (husband and wife), residents of Virginia who own a home located at 27037 Flaggy Run Road, Courtland, VA 23837.  Each of the subclass representatives has subjected his or her home to a screening inspection which determined product identification of Taishan drywall and corrosion of metal surfaces in the home, characteristic of Chinese drywall.  Wright Dec. at ¶3-6.  In addition, each of the subclass representatives has completed the Plaintiffs Fact Sheet, as required by court order.  Serpe Dec. at ¶4.  The presence of Taishan drywall in the homes of the subclass representatives and approximately 100 absent class members is documented by photographs and delivery and installation records.[8]  Wright Dec. at ¶¶4-10.  Available records indicate that there are approximately 400 homes in Virginia that were built with Taishan drywall.  Serpe Dec. at ¶11.

## III.    ARGUMENT

### A.    Standard of Review

The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001).  Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry.  *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502-03 (5th Cir. 2004).  The class certification decision should not reach the merits of the Plaintiffs' claims.  *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996).  However, in some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and

---

[8] The evidence shows that these records are not accurate at a precise level to identify specific numbers of Taishan Drywall boards and locations of boards in the home, FOFCOL at 28-29; however they do provide product identification data and gross estimates of the quantities of Taishan Drywall used in the construction of absent class members' homes.

relevant facts in order to make a meaningful certification decision. *Id.* The district court must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Vizena,* F.3d at 503.

### 1. Numerosity – Rule 23(a)(1)

To demonstrate numerosity, Plaintiffs must establish that joinder in impracticable through "some evidence or reasonable estimate of the number of purposed class members." *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000). "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir. 1999).

Analysis of available records indicates the best estimate of the number of Virginia homeowners with Taishan drywall who would qualify as a class member is approximately 300. Wright Dec. at ¶¶3, 10; Serpe Dec. at ¶11. The subclass representatives and absent members of the subclass all seek remediation and property damages for their homes as the primary form of relief in their claims. Second Amended Complaint – Class Action at ¶¶27, 29, 30, 31, 35 (Docket #470). Joinder of approximately 300 class members is impracticable and would lead to a squandering of judicial economy and the resources of the parties. The evidence demonstrating that there are approximately 300 subclass members meets the numerosity requirement.

### 2. Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that there be issues of law or fact common to the class. The commonality requirement is satisfied if resolution of at least one issue will affect all or a significant number of class members. *James v. City of Dallas,* 254 F.3d 551, 570 (5th Cir. 2001);

13

*Mullen,* 186 F.3d at 625.  There is a low threshold for commonality, and the fact that some Plaintiffs have different claims or require individualized analysis does not defeat commonality. *James,* 254 F.3d at 570.

The proposed subclass representatives and the proposed subclass have obtained a preliminary default.  The factual and legal issues in the case are common to the proposed subclass members, and will all be resolved under Virginia law.  FOFCOL at 64-69.  The need for a determination of proposed subclass-wide damages is also common to the members of the subclass.  Thus, the commonality requirement is satisfied.

### a.    Collateral Estoppel Effect of Germano Findings of Fact and Conclusions of Law

The Declaration of Ronald Wright, P.E. amply demonstrates that the factual determination of subclass-wide property damages is common to the subclass representatives and absent subclass members.  Wright Dec. at ¶¶4-10. However in this case, under the doctrine of collateral estoppel, the court may also rely on the extensive findings already made as to the facts relevant to the scope and cost of remediation and other property damages in Virginia homes containing Taishan drywall.  (Docket #2380).  The Supreme Court has approved the use of offensive, non-mutual collateral estoppel under certain circumstances.

> Generally stated, the doctrine of collateral estoppel … bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979); *see also U.S. v. Davenport*, 484 F. 3d 321, 326 (5th Cir. 2007).  The *Parklane* court noted that certain circumstances might exist in

a case which might justify a court's refusal to apply collateral estoppels, including where: (a) a Defendant has little incentive to defend vigorously, (b) the second action affords the Defendant procedural opportunities not available in the first action that could cause a different result, and (c) "if the judgment relied upon as a basis for the estoppels is itself inconsistent with one or more previous judgments in favor of the Defendant. *Parklane,* 439 U.S. at 330-31; *In re Plunk*, 481 F. 3d 302, 308 (5th Cir. 2007).

Under the *Parklane* standards, it is clear that it is appropriate to give the Findings of Fact and Conclusions of Law a preclusive effect in this class proceeding. The Defendant has had a full opportunity to litigate, but chose not to respond to process.[9] FOFCOL at 5. It is also clear that the court's findings on the scope and cost of remediation and property damages were "necessary to support a valid and final judgment on the merits." *Parklane*, 439 U.S. at 330-31. Furthermore, none of the *Parklane* factors which would justify a court's refusal to apply collateral estoppel are present on the *Germano* record. Therefore under *Parklane* and *Plunk*, Plaintiffs request that the court find that the Findings of Fact and Conclusions of Law (Docket #2380) are entitled to be given a preclusive effect in this class proceeding.

In sum, the commonality of the factual determination of subclass-wide property damages is amply supported either by the Declaration of Ronald Wright, P.E., or the Findings of Fact and Conclusions of Law from the proceeding for the seven Plaintiff Intervenors which are entitled to be given a preclusive effect under the *Parklane* standards, or both.

### 3.       Typicality – Rule 23(a)(3).

Rule 23(a)(3) requires that the claims of the class representatives are typical of the class's

---

[9] It is noteworthy that intervenor Knauf vigorously contested Plaintiffs' evidence on the scope of remediation and cost of remediation through the process of filing expert reports, cross-examining Plaintiffs' experts, and filing

claims or defenses.  Again, the threshold for typicality is low:  class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen,* 186 F.3d at 625.  Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics – a similar course of conduct, or the same legal theory.  *James,* 254 F.3d at 571 (*quoting* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

The property damage claims of the subclass representatives are the same as those of the absent subclass members.  The determination of these damages depends on the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring in subclass members' homes, the need for remediation, and the square footage costs of accomplishing the remediation.  Wright Dec. at ¶¶2-10.  Further, the establishment of damages is governed by the identical Virginia law for all subclass members.  Thus, the typicality requirement is readily met.

### 4.    Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members.  There can be differences between the class representatives and other class members so long as these differences do not "create conflicts between the named Plaintiffs' interests and the class members' interests."  *Mullen,* 186 F.3d at 626.  A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members.  *Id.* (*citing Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir. 1971)).  In addition, the district court should inquire into the zeal and competence of the class

---

*Daubert* challenges against Plaintiffs' remediation and damages experts (which were denied).  FOFCOL at 5-6.

representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001).

Under Rule Fed. R. Civ. P. 23(g), a district court must appoint class counsel at the time the class is certified, unless otherwise provided by statute. The class counsel must fairly and adequately represent the interests of the class, and the court must review the counsel's work in investigating claims, experience in handling class action litigation, knowledge of the applicable law, and the resources counsel will commit to representing the class. Rule 23(g)(1)(B),(C).

The three subclass representatives have the same interest as absent subclass members in obtaining property damage relief from Taishan. They also all share the same interest in the enforcement of a subclass judgment and the collection of that judgment against Taishan. The subclass representatives have demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the fact of corrosion damage. Further, these subclass representatives have timely completed the court ordered Plaintiffs Fact Sheets. Serpe Dec. at ¶¶4-6, 12. Finally, each subclass representative has provided a sworn Declaration stating that he or she will vigorously prosecute the claims on behalf of the proposed subclass and will cooperate with requests to assist this court and counsel as needed.

The proposed subclass counsel are experienced in class action practice, well respected, and competent lawyers. Serpe Dec. at ¶13 (attaching Curriculum Vitae of proposed subclass counsel). This court has already had the opportunity to work extensively with each of the proposed subclass counsel and their firms in proceedings related to the default judgment against

Taishan and the evidentiary hearing and associated legal briefing relevant to this court's Findings of Fact and Conclusions of Law as to the seven Intervenor Plaintiffs.  Thus, the court should find that the proposed subclass representatives, (Michelle Germano, Denis and Sharon Jackson, and Jason and Lisa Dunaway), as well as the proposed subclass counsel (Russ Herman, Arnold Levin, Richard Serpe, Ervin Gonzalez, and Richard Lewis, with the PSC as of counsel) are adequate.

It should be noted that various courts consider *ascertainability* to be a requirement under Rule 23.  Ascertainability pertains to the ability of the court based on record evidence to utilize objective criteria to determine who is a subclass member (and who is not).  The Fifth Circuit has referred to ascertainability as an "implied perquisite of Rule 23."  *National Security Fire and Casualty Company*, 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981); 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist.").  Here, the subclass is ascertainable.  Membership in the subclass is based on two key objective criteria: (1) ownership of a Virginia residence; and (2) the identification of Taishan drywall in that residence.   Thus, the proposed subclass meets the ascertainability requirement.

### Predominance – Rule 23(b)(3)

Rule 23(b)(3) requires that the class share common issues of law or fact that predominate

over the questions affecting individual class members.  In general, in order to predominate, common issues must form a significant part of the individual cases.  *Mullen,* 186 F.3d at 626.  Specifically, a district court should consider how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues.  *See Castano,* 84 F.3d at 744-45 (finding that certification was inappropriate where individual trials would be necessary to determine an element of the Plaintiffs' fraud claims).

The dual demands of Rule 23(b)(3) are that common issues are significant and will resolve substantial aspects of the case, and that the case will be manageable for trial purposes.  *Id.*  Here, only the first demand is applicable.  Because the only claims at issue here are against a default judgment Defendant, and because the court has already found sufficient facts to establish the fact of damage associated with these types of claims and determined the applicable law, a full trial will not be necessary.  Rather, if this subclass is certified, the court can establish subclass-wide damages pursuant to a Rule 55(b)(2)(B) hearing.[10]  Given that the court has already found that the average cost of remediation in Virginia is $86/per square foot and that the court has already determined what other property damages are recoverable, subclass-wide damages can be established in an efficient manner without the need for a trial.[11]

The Plaintiffs' ability to demonstrate a methodology to calculate class-wide damages should be demonstrated at the certification stage.  *Monumental Life Insurance Co. v. National Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a classwide

---

[10] Under Fed. Civ. P. 54(c) and 60(b), the court has the ultimate authority to modify a default judgment, if the default judgment Defendant brings an appropriate motion to justify such relief.

[11] There will be a need during claims processing for each claimant to prove up basic facts to establish property damages: (1) product identification; (2) homeownership; and (3) square footage of owned home to recover on a claim.  In order to obtain the ordered home-wide remedy established by the court's Findings, FOFCOL at 27-56, a claimant will  also have the burden of establishing that his or her home does not contain Chinese Drywall that can be specifically located and identified as limited  to one " stand alone " room , that can be remediated in  isolation .

basis and, when sorted, are capable of determining damages for individual policyowners; none of these variables is unique to particular Plaintiffs.  The prevalence of variables common to the class makes damages computation 'virtually a mechanical task.'").

As the Eleventh Circuit noted in the *Klay v. Humana*:

> In assessing whether to certify a class, the court's inquiry is limited to whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all . . . . Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis. Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).[12]  As such, damages can be proven on a class-wide basis and allocation and claims processing issues will not defeat class certification.  *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004) ("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter accomplished pursuant to a court-approved plan of allocation, and such individual damages allocation issues are insufficient to defeat class certification."); *In re NASDAQ*, 169 F.R.D. at 525 ("Aggregate computation of class monetary relief is lawful and proper.").

Ronald Wright, Plaintiffs' expert, a Civil Engineer who specializes in the assessment and repair and remediation for home construction has inspected many Chinese drywall homes in Virginia and elsewhere, and has developed a methodology to estimate damages for the remediation of such homes and the replacement of damaged components including appliances,

---

FOFCOL at 82-83.

[12]  Courts routinely have used class-wide, formula-based techniques to calculate individual damages in various types of class actions.  *See, e.g.*, *Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) (approving aggregate damages judgment), *aff'd*, 444 U.S. 472 (1980); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) (approving of the use of objective data extracted from the Defendant's computer system and analyzed through a "mechanical process" in a case involving charging

flooring, cabinetry and other items.  FOFCOL at 57-60; Wright Dec. at ¶8.  He has considered national databases that estimate such costs including RJ Means and more specifically he has reviewed the real world repair bids of two Virginia home construction companies to perform the necessary remediation for a cross-section of Virginia homes.  FOFCOL at 57-60; Wright Dec. at ¶¶2, 8.  Based on this Virginia data, Mr. Wright offered the expert opinion in the *Germano* proceeding that the cost of repair for a fair cross-section of Virginia homes would be on average $86 per square foot, which was accepted by the court.  FOFCOL at 57-60.  The court also made findings as to the costs of a post-remediation professional environmental inspection to assure the efficacy of the remediation, alternative living costs during remediation, personal property damage and loss of use and enjoyment of the home.  FOFCOL at 53.  These findings are entitled to a preclusive effect in this class proceeding.  *Parklane,* 439 U.S. at 330-31; *Plunk,* 481 F.3d at 308.

Mr. Wright has also reviewed the Venture Supply delivery records for Virginia.  As a result of this review, he will be able to estimate the size of the subclass.  Based upon this information, and available statistical databases in the housing and construction industry, Mr. Wright will be able to estimate: (1) the number of homes in Virginia likely to contain defective Taishan drywall and thus require remediation, and (2) the estimate of square footage that these homes constitute.  With these estimates, combined with the known price of repair per square foot; Mr. Wright can then reasonably estimate subclass-wide remediation damages.  Wright Dec. at ¶¶8-9.  Additional forms of property damage found in the prior proceeding including the post remediation environmental inspections, alternative living costs, and personal property losses,

---

customers for incoming cellular telephone calls.); *see also* 3 Newberg on Class Actions § 10:8.

FOFCOL at 56-104, are also amenable to determination on a class-wide basis.[13]  In the case of the post-remediation environmental inspection and certification, the damages amount is a uniform cost of $12,500 per subclass member.  In the case of alternative living costs and personal property losses, average values of the *Germano* Plaintiff Intervenor cross section can be used to determine subclass-wide damages.  The underlying data and methodology for the calculation of subclass-wide damages is set forth in the Wright Declaration.[14]  Thus, Plaintiffs can establish a formulaic method to determine subclass-wide property damages as required by the Rule 23(b)(3) predominance requirement.  *Monumental,* 365 F.3d at 419.

As stated above, the factual determination of subclass-wide property damages is the only unresolved issue pertaining to the claims against Taishan.  The applicable law has already been determined such that Plaintiffs' claims of negligence, negligence *per se*, breach of express and/or implied warranty, private nuisance, and the Virginia Consumer Protection Act do allow for the type of property damages found for the seven Plaintiff Intervenors under Virginia law.  FOFCOL at 64-69.  Thus, there is no variation in the applicable law, and subclass-wide damages can be established on a formulaic basis.  In this context, where a trial will not be necessary, all the requirements of Rule 23(b)(3) predominance are readily established.

**Superiority – Rule 23(b)(3)**

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior t780 other methods of adjudication:  the class members' interest in individually controlling their separate actions, the extent and nature of existing litigation by class

---

[13] Other items of relief awarded in the *Germano* intervenor proceeding and recoverable under Virginia law include loss of use and enjoyment; loss of income; refinancing, foreclosure, and bankruptcy damages; and particular repairs. FOFCOL at 64-69.  Plaintiffs will be able to calculate the amount of these damages based on a sampling of the proposed subclass.  Allocation of these damages to subclass members who prove-up these damages can occur in a court administered claims proceeding.

members concerning the same claims, the desirability of concentrating the litigation in the particular form, and the likely difficulties in class management. Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).[15]

A subclass proceeding is the superior method to adjudicate the remaining claims in this case. This case presents a factual and procedural status that makes certification appropriate as a result of the entry of a default judgment on liability and the fact this court has already made extensive findings that are applicable to a cross-section of Virginia Taishan homeowners. The narrow scope of the factual determination left to be made –the amount of damages for the subclass – and the exhaustive record of the relevant factual evidence already reviewed by and ruled on by this court greatly enhances the manageability of this matter. In addition, the court has already determined that these claims are meritorious. FOFCOL at 17-59. A class proceeding will facilitate an expeditious and streamlined resolution for all impacted Virginia residents. This is desirable and necessary because the Taishan drywall has forced many homeowners to abandon their homes and has placed several homeowners under financial pressure to pay two mortgages. Several homeowners have already lost their credit rating or had to go into foreclosure. FOFCOL at 69-106. For all the reasons stated above, as well as the procedural advantages of avoiding duplicate hearings on identical issues, class adjudication is the superior method to resolve the remaining issues in this dispute.

## IV.   CONCLUSION

In sum, the Plaintiffs can readily establish that the proposed subclass meets the Rule 23

---

[14] FOFCOL at 57-59, 64-69; Wright Dec. at ¶¶8-10.

[15] The Fifth Circuit in *Castano* advised that a district court's superiority analysis should include consideration of the negative impact upon a Defendant of certification of a mass tort. *Castano,* 84 F.3d at 746. The court noted that class certification magnifies unmeritorious claims, increases Plaintiffs' damage awards, and creates "insurmountable pressure" upon Defendants to settle – all of which could be tantamount to "judicial blackmail." *Id.* As noted above

requirements of numerosity, commonality, typicality, adequacy and predominance.  Plaintiffs

respectfully request that the Virginia Taishan homeowner subclass described herein be certified.

### PROPOSED CLASS COUNSEL

Dated: May 26, 2010                          Respectfully submitted,


/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
Stephen J. Herman, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhkc.com
Ldavis@hhkc.com
Sherman@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

---

this court has recognized that these types of claims are meritorious.  FOFCOL at 17-59.

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com


Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com


## PROPOSED OF COUNSEL TO CLASS,
## PLAINTIFFS' STEERING COMMITTEE

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR,
LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
 Matthews, Martinez, Gonzales,
 Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931

hlambert@lambertandnelson.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836

sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630

jrr@lumpkinreeves.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com


Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com


Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum in Support of Plaintiffs' Motion for Class Certification has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of court of the United States District court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 26th day of May, 2010.

/s/  Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*

28