Plaintiff Profile Form - Residential Properties

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

**For Internal Use Only**

_____

File Number

_____

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

**Section I. Property Information**

Name Property Owner: M. MICHELLE GERMANO
Address of Affected Property: 8171 N. VIEW BLVD. NORFOLK, VA 23518

Is this Property:* (Residential) Commercial Governmental

Name of Person Completing this Form: MICHELLE GERMANO

Is above your primary residence? (Yes) No

Mailing Address (if different): 4518 PLEASANT AVE UNIT 1 NORFOLK, VA 23518

Phone: (860) 324-7777

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Circle one: (Owner-Occupant) Owner Only Renter-Occupant

Represented By: RICHARD SERPE
Address: 580 E. MAIN STREET SUITE 310 NORFOLK, VA 23518

Phone: (757) 233-0009

Case No. /Docket Info:

**Section II. Insurance Information**

Homeowner/ Renter Insurer: USAA

Policy #: 005560613

Agent:

Address: 9800 FREDRICKSBURG RD. SAN ANTONIO, TX 78288

Phone: (800) 531-8111

+ Attach Copy of Insurance Declaration Page

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries?* Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| | Move-in | Leave | | | | |
| M. MICHELLE GERMANO | 6/1/06 | 4/9/09 | M (F) | 3/6/50 | (Yes) No | OWNER/OCCUPANT |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |

* Personal injuries include claims for mental anguish and medical monitoring.

Case 2:09-md-02047-EEF-MBN Document 3293-10 Filed 05/26/10 Page 2 of 29
Case 2:09-md-02047-EEF-JCW Document 168-1 Filed 08/17/2009 Page 27 of 28
Plaintiff Profile Form - Residential Properties

**Section IV. Inspection Information**

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home? (Yes) No

1.1, If "Yes" to Question 1.0 Section IV. Who conducted the inspection? *ART GREASON*

1.2. When did the inspection take place? `4/19/09`

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home? (Yes) No

2.1. If "Yes" to Question 2.0. Section IV. Who made this determination? *DRYWALL WITH "VENTURE" "MADE IN CHINA" &*

2.2. When was this determination made? `4/19/09`  *ESI test DATA (RB)*

**Section V. Drywall Information**

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| VENTURE | MADE IN CHINA | ALL 3 STORIES |
| └ MANUFACTURED BY TAISHAN (RB) | | |

**Section VI. Home Information**

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 2600 | | | |
| Estimated Sq. Ft. of Drywall | 2600 | Occupied | ✓ | |
| Height of interior Walls | | Year-round | X | |
| Number of Bedrooms: | 3 | Summer | ✓ | |
| Number of Bathrooms: | 3.5 | Winter | ✓ | |

**Plumbing System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | *mg* | (X) | |
| Copper Piping | X | | |
| Copper Fixtures | X | | |
| Other Fixtures | X | | |
| Were repairs made to the plumbing system? | | X | |
| Dates: | | | |

**Electrical System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | | | |
| Switches | | X | |
| Main Panel | | | |
| 2nd Panel | | | |
| Exposed Copper Wires | | X | |
| Were repairs made to the electrical system? | | X | |
| Dates: | ~~AUG 200~~ 8 NOV 2008 | | |
| + Attach Copy of Floor Plan on 8 1/2" X 11" paper | | | |

**Section VII. Construction/Renovation Information**

Date Range for New Home Construction: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | 2/23/06 | Completion Date | 5/31/06 |
| Move In Date: | 6/1/09 | Date Acquired Home | 6/1/06 |

Date Range for Renovations: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | / / | Completion Date | / / |
| Move In Date: | / / | | |

| Renovation(s): | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | |
| First Floor: Full Wall of drywall replaced | | | |
| Second Floor: Any drywall replaced | | | |

**Section VIII. Homebuilder/ General Contractor/ Developer Information**

Homebuilder/ General Contractor/ Developer's Name: HARBOR WALK LLC (RB)

Address: WERNER DEVELOPMENT
404 OAKMEARS CRES.
SUITE 101
VA BEACH VA. 23462

Phone: (757) 227-6912

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

**Section IX. Drywall Installer**

Drywall Installer's Name: FORTEZ - BLANE CORP (RB)
CLARK WHITEHILL

Address: CLARK WHITEHILL ENTERPRISES
4224 HOLLAND RD SUITE 104
VA. BEACH VA 23452

Phone: (757) 431-9758

**Section X. Drywall Supplier**

Drywall Supplier's Name: VENTURE SUPPLY

Address: 1140 AZALEA GARDEN RD
NORFOLK VA 23502

Phone: (757) 855-5433

Case 2:09-md-02047-EEF-MBN Document 3393-10 Filed 05/26/10 Page 3 of 29
Case 2:09-md-02047-EEF-JCW Document 188-3 Filed 08/17/2009 Page 28 of 28
Plaintiff Profile Form - Residential Properties

| Section XI. Verification of Plaintiff Profile Form |
| --- |

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

_M Michelle Germano_    _Aug 21, 2009_ _____    _____,
Claimant's Signature          Date Signed          Claimant's Signature          Date Signed

_____    _____,    _____    _____,
Claimant's Signature          Date Signed          Claimant's Signature          Date Signed

_____    _____,    _____    _____,
Claimant's Signature          Date Signed          Claimant's Signature          Date Signed

# The Augustine

## TOWNHOME MODELS - C2-C3-C4







Areas indicated vary per plan.

**The Condominium Townhomes at Harbor Walk**

**The Augustine Building 16**
**8140 North View Blvd.**
3 bedrooms | 3.5 baths
2426 square feet
**$348,000**

**The Augustine Building 16**
**8160 North View Blvd.**
3 bedrooms | 3.5 baths
2426 square feet
**$349,000**

**The Augustine Building 17**
**8141 North View Blvd.**
3 bedrooms | 3.5 baths
2426 square feet
**$349,000**

**The Augustine Building 17**
**8151 North View Blvd.**
3 bedrooms | 3.5 baths
2426 square feet
**$345,000**

**Located on Shore Drive at the south side of Little Creek Bridge on the banks of Pretty Lake in Norfolk, Virginia.**









**HARBOR WALK**
at East Beach

**8300 North View Blvd**
**Norfolk, VA 23518**

**757.531.8500 | phone**
**www.harborwalk.net**

Builder reserves the right to change prices, plans and specifications, and withdraw any plan, special offer, and incentive without notice. Illustrations are artist's concepts and accuracy is not guaranteed. Individual homes may differ from the models or from each other depending on field conditions.

# HARBOR WALK CONDOMINIUM
## Binding Purchase Agreement
### ("Agreement")

NANCY CHANDLER ASSOCIATES, INC. ("Listing Broker")
Address:
701 W. 21st Street
Norfolk, VA 23517
Facsimile: (757) 623-2004
E-mail: lisa@nancychandler.com;

and _Judy Boone Realty, Inc._ (4950) ("Selling Broker"),
Address: _809 E. Ocean View Vic Yurkovic (13042)_
_Norfolk, VA 23503_

Facsimile: _587-9226_
E-mail: _yurkovic3@cox.net_

THIS PURCHASE AGREEMENT ("Agreement") is made this _2nd_ day of _March_ _2006_ by and between

HARBOR WALK DEVELOPMENT, LLC, a Virginia limited liability company ("Seller"),

ADDRESS:     404 Oakmears Crescent Suite 101
                       Virginia Beach, VA 23462

and

NAME(S): _M. Michelle Germano_

ADDRESS: _501 Slaters Ln. Apt. 219_
                    _Alexandria, VA 22314_

PHONE: _(860) 324-7777_

FACSIMILE: (____) _____          E-MAIL: _____

("Purchaser", whether one or more) recites as follows:

Seller's Initials  _____                Purchaser's Initials _____

1

AFFIDAVIT AND AGREEMENT

DATE: May 25, 2006

BUYER/BORROWER:  M. Michelle Germano

SELLER:  Harbor Walk Developement, LLC

PROPERTY ADDRESS:  8171 North View Blvd., Norfolk, Virginia 23518

We, the undersigned, for and in consideration of the closing on our real estate transaction this date, and for other good and valuable considerations, the receipt whereof is hereby acknowledged to covenant and agree for ourselves, our heirs, successors assigns as follows:

## CORRECTION OF DOCUMENTS-LIMITED POWER OF ATTORNEY

We agree to fully cooperate in the adjustment or correction of any documents executed by us in connection with this transaction as may be deemed necessary or desirable by the lender or closing agent to enable the lender to sell, convey, seek guaranty, or market any loan involved in this transaction to any person or entity, including, but not limited to, an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Housing Authority, or the Veterans Administration or to correct or remove any defect of title, or to allow the closing agent to properly disburse funds on this transaction.

The undersigned Purchaser/Borrower and/or Seller, for and in consideration of the Lender funding the closing of the loan on the above property, agree that if requested by Lender, to fully cooperate, adjust and correct all typographical or clerical errors discovered in any or all of the closing documentation executed by the undersigned at settlement.

The undersigned appoint TitleQuest Settlements, LLC, its designee as their attorney-in-fact to correct any such errors, place our initials on documents where changes are made, and/or sign our names to and acknowledge any modification agreement or other document or form adjusting or correcting such errors. In the event this procedure is utilized, the party(ies) involved shall be notified and receive a corrected copy of the changed document(s).

This Power of Attorney is coupled with an interest and shall be irrevocable until the loan is satisfied and shall survive the disability of the undersigned.

## LIABILITY FOR PAYOFFS

We understand and agree that with regard to any payoff (or, in the case of an assumption, the principal balance and escrow figures), shown on the Settlement Statement, the title company TitleQuest Settlements, LLC is relying upon figures furnished by others. We understand and agree that the party or parties who are jointly and severally liable for payment on the Note or other obligation being paid off are and remain liable for payment in full as required to have any security instrument constituting a lien against the real property which is the subject of this transaction released of record; and such party or parties agree to fully cooperate with the closing agent as may be necessary to cause such lien to be released, including, but not limited to, immediately paying any additional funds necessary to pay their obligation in full.   The undersigned further grants to TitleQuest Settlements, LLC their specific power of attorney to act on their behalf as a lien obligor pursuant to Section 55-66.3, of the Code of Virginia, 1950, as amended to compel release of any such Deed of Trust or other lien. We further represent that the property is free and clear of all liens, judgments or other encumbrances except those that have been listed on the HUD-1 Settlement Statement to be paid off at closing.

(06050074TQS.PFD/06050074TQS/13)

AFFIDAVIT AND AGREEMENT

(Continued)

INSPECTION AND CONDITION OF PROPERTY

Buyers hereby confirm that they have conducted a thorough inspection of the property they are purchasing, that they have exercised care to discover any defects in the property, and that they understand that any defects discovered after closing will be their responsibility to correct unless they have a written agreement providing otherwise or, in the case of new construction, unless the defect is covered by a statutory warranty.  Buyers acknowledge that neither the closing agent nor any member of her company has made a physical inspection of the property and that they make no warranties of any kind as to its condition.  Buyers also acknowledge that they have received a copy of the report of the exterminating company that inspected the property for wood destroying insects and/or moisture damage (if required by the contract) and that they are fully satisfied with such report and desire to conclude settlement of this transaction.  Further, Purchasers and Sellers agree that all conditions and contingencies of the Contract have been met.

PRIVACY POLICY

We have included with this letter a copy of our Privacy Policy for your information.  You should be aware that we may share some of the information we gather in connection with the closing with other parties involved in the transaction such as the buyer's lender, the seller's attorney or settlement company and both the buyers and sellers agent or broker, in order to provide a confirmation, statement or other record of the transaction, or to provide information on the status or value of the products or services provided to you.

  _____          _____          _____          _____
  initial          initial          initial          initial


WITNESS, the following signatures and seals this _____ day of _____ JUN 0 1 2006 _____.




_____
M. Michelle Germano




Harbor Walk Developement, LLC
a Virginia limited liability company

By: Genesis Group, Inc., a Virginia Corporation
Its Manager

BY: _____
     Jeffrey J. Wermers, Vice President




ACKNOWLEDGED, SUBSCRIBED AND SWORN TO

AFFIDAVIT AND AGREEMENT

(Continued)

before me this _____ day of _____ JUN 0 1 2006 , _____ by M. Michelle Germano

_____ Notary Public

My Commission Expires:

ACKNOWLEDGED, SUBSCRIBED AND SWORN TO

before me this _____ day of _____ JUN 0 1 2006 _____ by Harbor Walk Developement, LLC

Notary Public

My Commission Expires: 5/3/09

Loan ID # 1844463579

<div style="border:1px solid">

### NOTICE OF ASSIGNMENT, SALE OR TRANSFER
### OF SERVICING RIGHTS

</div>

Date: June 1st, 2006
Borrower(s): Michelle Germano

You are hereby notified* that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred as follows:

From:  ENTERPRISE MORTGAGE CORPORATION
       525 VIKING DRIVE
       VIRGINIA BEACH, VIRGINIA 23452

You may contact our loan servicing department at  757-486-4111     to answer any inquiries you may have regarding this matter.  (If this is not a Toll Free number, you may call Collect.)

To:    JPMORGAN CHASE BANK, N.A.
       P O BOX 79046
       PHOENIX, AZ 85034-9700

You may contact their loan servicing department at 800-848-9136     to answer any inquiries you may have regarding this matter.  (If this is not a Toll Free number, you may call Collect.)

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

This action is effective:

Therefore, as of this effective date  ENTERPRISE MORTGAGE CORPORATION
              will cease to accept payments relating to your loan and  JPMORGAN CHASE BANK, N.A.
                                will begin to accept the payments relating to your loan.

The transfer of servicing rights may affect the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance in the following manner: _____
                                     Not Applicable
_____

and you should take the following action to maintain coverage: _____
                                     Not Applicable
_____

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2605):

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing.  Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.  In this case, all necessary information is combined in this one notice.  During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. §2605) gives you certain consumer rights.  If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20-Business Days of receipt of your request.  A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.  If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:  JPMORGAN CHASE BANK, N.A. , P O BOX 79046, PHOENIX, AZ 85034-9700

Not later than 60-Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute.  During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.  However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.  You should seek legal advice if you believe your rights have been violated.

We, the borrowers, hereby acknowledge receipt of this notice and fully understand and accept the conditions and stipulations set forth herein.



PAGE   1
MAIL MACH-I
20419

07/10/09

# HOMEOWNERS  POLICY  PACKET

EFFECTIVE: 07-10-09 TO: 05-31-10

M MICHELLE GERMANO
4518 PLEASANT AVE APT D
NORFOLK VA 23518-1720

USAA    00556 06 13    91A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs.  Required information forms are also enclosed for your review.

This is not a bill.  Any premium charge or return for this policy will be reflected on your next regular monthly statement.
**To receive this document and others electronically or view your policy summary online, go to usaa.com.**
For U.S. Calls:  Policy Service (800) 531-8111.  Claims (800) 531-8222.
HOCS1                                                                              49709-0406

THIS PAGE INTENTIONALLY LEFT BLANK



PAGE   3
MAIL MACH-I

UNITED SERVICES AUTOMOBILE ASSOCIATION

**9800 Fredericksburg Road - San Antonio, Texas  78288**
AMENDED  DECLARATIONS  PAGE -  EFFECTIVE  07/10/09

Named Insured and Residence Premises

Policy   Number

M  MICHELLE  GERMANO

USAA   00556 06 13 91A

8171  N  VIEW  BLVD
NORFOLK,,  VA   23518-3570

POLICY PERIOD From:  05/31/09    To:   05/31/10
              (12:01 A.M. standard time at location of the residence premises)

| COVERAGES AND LIMITS OF LIABILITY | |
|---|---|
| SECTION I   A.  Dwelling | $115,100 |
|             C.  Personal Property | $80,000 |
|             D.  Loss of Use | $32,000 |
| SECTION II  E.  Personal Liability - Each Occurrence | $500,000 |
|             F.  Medical Payments to Others - Each Person | $1,000 |

Your premium has already been reduced by the following:
FIRE/BURGLARY CREDIT                               $16.94 CR

**BASIC PREMIUM**     $335.07

| OTHER COVERAGES AND ENDORSEMENTS | |
|---|---|
| Form and Endorsements are printed on the following page. | $307.66 |

| DEDUCTIBLES (SECTION I ONLY) | |
|---|---|
| We cover only that part of the loss over the deductible stated. | |
| WIND AND HAIL        $1,600     (2%) | |
| ALL OTHER PERILS       $500 | |
| DEDUCTIBLE CREDIT     $13.55 | |

**TOTAL POLICY PREMIUM**     $629.18

THIS IS  NOT A BILL.

**FIRST MORTGAGEE:**
M & T BANK
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 5738
SPRINGFIELD, OH 45501-5738

In Witness Whereof, this policy is signed on 07/09/09

*Laura Bishop*

Laura Bishop
President, USAA Reciprocal Attorney-in-Fact, Inc.

REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.

HO-D1  (04-93)               ATTACH THIS DECLARATION TO PREVIOUS POLICY



**UNITED SERVICES AUTOMOBILE ASSOCIATION**
**AMENDED DECLARATIONS PAGE - EFFECTIVE 07/10/09**

|  | **Policy Number** | **Policy Term:** | 05/31/09 | 05/31/10 |
|---|---|---|---|---|
| USAA | 00556 06 13  91A | | Inception | Expiration |

SPECIFICALLY LISTED BELOW ARE THE DECLARATIONS AND PREMIUMS FOR ENDORSEMENTS MADE A
PART OF THIS POLICY AT THE TIME OF ISSUE.  THE ENDORSEMENTS ARE ATTACHED STATING
TERMS AND CONDITIONS.

```
IN FORCE  QR6VA      (04-93) QUICK REFERENCE-UNIT-OWNERS
IN FORCE  HO-6RVA    (04-93) UNIT-OWNERS FORM
IN FORCE  ESA        (02-05) SPOUSE ACCESS ENDORSEMENT
IN FORCE  HO-IDF     (07-01) IDENTITY AND FINANCIAL FRAUD COVERAGE
IN FORCE  HO-VA      (01-06) VIRGINIA SPECIAL PROVISIONS
IN FORCE  HO-18      (04-93) ADJUSTED CONTENTS ENDORSEMENT
IN FORCE  HO-19      (07-00) ADJUSTED BUILDING COST ENDORSEMENT
IN FORCE  HO-216     (04-93) FIRE/BURGLARY PROTECTION CREDIT
IN FORCE  HO-208VA   (11-00) WATER BACKUP OR SUMP PUMP OVERFLOW       $40.00
IN FORCE  HO-32VA    (04-93) UNIT-OWNERS SPECIAL COVERAGE A          $228.93
IN FORCE  HO-35      (03-97) LOSS ASSESSMENT COVERAGE                  $2.50
IN FORCE  HO-513     (04-93) PERSONAL COMPUTER COVERAGE                $8.00
IN FORCE  HO-728VA   (06-97) REPLACEMENT COST COVERAGE                $28.23
```

REASON(S) FOR CHANGE:

CHANGE  BILLING

**HO-D2** (04-93)                      07/09/09

 **HOME PROTECTION POLICY DECLARATIONS PAGE**

Service and Security since 1984 ℠

**2117 Smith Avenue•Chesapeake, Va. 23320•757/424-6523•FAX 757/424-5954**

AMT OF HOME PROTECTION COVERAGE (SALES PRICE): ___$200,000.00___  POLICY NUMBER: 127344

POLICYHOLDER'S NAME:

M MICHELLE GERMANO

ADDRESS OF PROTECTED HOME:

8171 NORTH VIEW BLVD,.
NORFOLK, VA  23501

POLICYHOLDER'S MAILING ADDRESS:

SAME

BUILDER NAME:

HARBOR WALK DEVELOPMENT LLC

BUILDER ADDRESS:

404 OAK MEARS CRESCENT
VA. BEACH, VA  23462

BUILDER PHONE NUMBER:

7575473893

BUILDER REGISTRATION NUMBER:

535

| | Commencement Date: 6/1/2006 | Time: 12:01 PM | Premium Amount: | $360.00 |
|---|---|---|---|---|
| **POLICY TERM:** | | **COMMENCEMENT** | | **EXPIRATION** |
| FIRST YEAR COVERAGE | .................... | 6/1/2006 | ........................ | 6/1/2007 |
| SECOND YEAR COVERAGE | .................... | 6/1/2007 | ........................ | 6/1/2008 |
| MAJOR STRUCTURAL COVERAGE | .................... | 6/1/2006 | ........................ | 6/1/2016 |

NOTE: THIS POLICY PROVIDES THE COVERAGE AND IS SUBJECT TO ALL OF THE PROVISIONS OF THE ATTACHED HOME PROTECTION POLICY AND CONSTRUCTION STANDARDS.

**CONSEQUENTIAL DAMAGES**
Consequential damages are excluded from the policy coverage.

In witness whereof, HW10 executes this policy by the signature of its President and Secretary.

Edward R. Sadler
President

Charles J. MIller
Secretary

# Agreement

In return for payment of premium and subject to all the terms of this Insurance Policy, we will provide the coverage outlined in Sections II, III, and IV.

# Section I - Definitions

**Actual physical damage** means a visually observable, deficiency evidenced by distortion, cracking or crushing in a portion of the Home.

**Builder** means the builder that constructed or had the components of the Home constructed on its behalf.

**Common element** means any portion of the structure in which enrolled units are located which is defined as a common element in either the state condominium law or in Your Condominium documents.

**Common element stairways and landings** mean areas that are maintained by the Condominium association or someone other than the owner/occupant of the particular unit.

**Condominium** means a multifamily residential dwelling, where each title holder of which has 100% ownership of his own unit and partial ownership of Common elements such as hallways, walkways, elevators, and owns the land wholly in common.

**Condominium association** means the entity to which the owners of individual units in a Condominium belong and which is responsible for the operation of the business of the Condominium.

**Declaration page** means the document which provides proof of insurance coverage for a certain address.

**Deficiency** means non-compliance with the Performance guidelines.

**Designated Load-Bearing Members** are:
1. Beams, girders, joists, lintels, headers, rafters;
2. Trusses;
3. Columns and piers;
4. Load-Bearing walls and partitions;
5. Footings and foundation systems
6. Roof framing and sheathing

**Effective Date of Insurance Policy** means the date of closing on Your newly built Home or the date You or anyone else first occupied the Home or the Home was used as a model, whichever was earliest.

**EIFS** (commonly referred to as synthetic stucco) means any non-load bearing exterior wall cladding system consisting of an insulation board, an adhesive and/or mechanical attachment of the insulation board to the substrate, and an integrally reinforced base coat on the face of the insulation board, a protective finish applied to the surface of the base coat and applicable accessories, flashings, coatings, caulking and sealants that interact to form an energy efficient wall.

**Fungus** means any form or type of mold, mushroom or mildew and the term **spore(s)** means any reproductive body produced by or arising out of any Fungus(s)

**Home** means the dwelling, attached garage and detached garage with heated and air-conditioned living space as identified on the Declaration page. It does not include additions or improvements made to the Home after the Effective Date of the Insurance Policy.

**Individual Unit** means a portion of a condominium designed for individual ownership and use.

**Insurer** means Building Industry Insurance Association, Inc. t/a HW10.
Building Industry Insurance Association, Inc., trading as HW10, is the Insurer.

**Performance guidelines** are the construction guidelines that have been developed and accepted by the residential construction industry in general as outlined in the *Residential Construction Performance Guidelines for Professional Builders & Remodelers* published by the National Association of Home Builders (NAHB), and in effect at the time the Home was constructed. In the absence of an applicable guideline in the *Residential Construction Performance Guidelines for Professional Builders & Remodelers* the standards of the state and local building code will apply. They apply to the 1-Year Workmanship Coverage and 2-Year Systems Coverage.

**Policy** means this insurance contract, together with all endorsements

**Policy limit** means the original sales price of the Home as set forth in the Declaration page or a maximum limit of $200,000, whichever is less.

**Policy term** means the period during which insurance coverage is provided. Workmanship coverage is provided for a Policy term of one year from the Effective Date of the Insurance Policy, Systems coverage is provided for a Policy term of two years from the Effective Date of the Insurance Policy, and Structural coverage is provided for a Policy term of ten years from the Effective Date of the Insurance Policy.

**Structural failure** means Actual physical damage to the Home as a result of one or more of the Designated Load-Bearing Members meeting the Failure Criteria specified in Section IV.

**Systems** mean the wiring, switches, outlets, electrical boxes, ductwork and piping in the electrical, heating, cooling, plumbing, ventilating, and mechanical Systems; excluding Heating, Ventilation & air Conditioning condensation lines and drain lines.

**Workmanship** means only the site work, concrete, masonry, carpentry, moisture protection, doors, windows, finishes, specialties, cabinets, counter tops, mechanical, and electrical components of the Home.

**You** or **Your** mean the person(s) who holds title to the Home.

# Section II – Workmanship Coverage
## 1-Year Policy Term



For illustration purposes only, Drawing may be different from the design and construction of Your Home. Only a few items covered under the one-year Workmanship coverage are shown. For a more detailed listing read the Policy.

Unless one or more of the Exclusions contained in Section VI apply, for a period of one (1) year from the Effective Date of Insurance Policy, Your Insurer warrants that the Workmanship of Your Home will conform to the *Performance Guidelines*.

The 1-Year Workmanship Coverage does not apply to any manufactured item of equipment, appliances, or other item whether covered by a manufacturer's warranty or not. Examples of non-covered items under this warranty include, but are not limited to: air-conditioning and heating units, air purifiers, bath tubs and showers, boilers, central vacuum systems, circuit breakers, dishwashers, dryers, electric meters, exhaust fans, furnaces, heat pumps, humidifiers, garage door openers, garbage disposals, lighting fixtures, oil tanks, ranges, range hoods, refrigerators, sinks, sump pumps, thermostats, toilets, trash compactors, washers, water heaters, and whirlpool baths. Manufacturer warranties are assigned and passed through to You by Your Builder at closing and are separate from this Policy. Should You find defects in any item of equipment, appliance, or any other item covered by a manufacturers warranty, You must follow the procedures set forth in that manufacturer's warranty.

During the Policy term for Workmanship coverage, Insurer will meet its obligations subject to a $250.00 per occurrence deductible.

# Section III – Systems Coverage
## 2-Year Policy term



For illustration purposes only. Drawing may be different from the design and construction of Your Home. Only a few items covered under the two-year Systems coverage are shown. For a more detailed listing read the Policy.

Unless one or more of the Exclusions contained in Section VI apply, for a period of two (2) years from the Effective Date of Insurance Policy, Your Insurer warrants that the Systems of Your Home will conform to the *Performance Guidelines.*

The 2-Year Systems Coverage does not apply to any manufactured item of equipment, appliances, or other item whether covered by a manufacturer's warranty or not. Examples of non-covered items under this warranty include, but not limited to: air-conditioning units, boilers, central vacuum systems, dishwashers, dryers, electric meters, exhaust fans, furnaces, heat pumps, garage door openers, ranges, range hoods, refrigerators, sump pumps, thermostats, trash compactors, washers, water heaters, and whirlpool baths. Manufacturer warranties are assigned and passed through to You by Your Builder at closing and are separate from this Policy. Should You find defects in any item of equipment, appliance, or any other item covered by a manufacturers warranty, You must follow the procedures set forth in that manufacturer's warranty.

During the Policy term for Systems coverage, Insurer will meet its obligations subject to a $250.00 per occurrence deductible.

4

# Section IV – Structural Coverage
## 10-Year Policy term



For illustration purposes only. Drawing may be different from the design and construction of Your Home. Drawing shows some of the Designated Load-Bearing Members covered under the ten-year Structural failure coverage. For more information read the Policy.

Unless one or more of the Exclusions contained in Section VI apply, for a period of ten (10) years from the Effective Date of Policy, Your Insurer warrants Your Home against Structural failure. Structural failure means Actual physical damage to the Home as a result of one or more of the Designated Load-Bearing Members meeting the Failure Criteria specified in this Section.

Some examples of portions, but not inclusive of all portions, of the Home that are not Designated Load-Bearing Members and are not insured by this Structural failure coverage:

1. Non-load bearing walls and partitions;
2. Appliances, fixtures, and items of equipment;
3. Finish Flooring material, and sub flooring;
4. Roof shingles, roof tiles, and tar paper;
5. Wall tile and wall paper
6. Plaster, laths and drywall;
7. Doors, trims, cabinets, hardware, insulation, paint and stains;
8. Brick, stone veneers and stucco
9. Any type of exterior siding or cladding;
10. Heating, cooling, ventilating, plumbing, electrical, and mechanical Systems;
11. Basement and garage concrete slabs.

The Failure Criteria for the Designated Load-Bearing Members are:

1. Whenever the stress in the Designated Load-Bearing Member or its connections, due to design dead loads and live loads, is more than one and one half times the stress allowed in the state building code in effect at the time of construction, provided that such condition exists to the extent that the sanitation of the Home or the safety of the occupants of the Home are materially endangered, or

2. Whenever a vertical structural Designated Load-Bearing Member leans or buckles where such condition is caused by lateral movement of the column and not by differential elevation of the foundation, and such movement results in the distance between a face of the base of the member and a plumb line dropped from the corresponding face of the point of maximum movement exceeding one sixth of the corresponding width of the member, provided that such condition exists to the extent that the sanitation of the Home or the safety of the occupants of the Home are materially endangered, or

3. Whenever the deterioration or inadequacy of a foundation causes a condition to exist to the extent that the sanitation of the Home or the safety of the occupants of the Home are materially endangered, or

4. Whenever the differential elevation of the finished floor surface of a room in the Home exceeds one inch in a ten foot measurement and there is evidence of Actual physical damage that is consistent with the measured differential elevation, provided that the differential did not exist at the time of the original construction or,

5. Whenever the differential elevation of the finished floor surface of the Home exceeds four inches in a twenty-foot measurement provided that the differential did not exist at the time of the original construction.

During the Policy term for Structural coverage, Insurer will meet its obligations subject to a $250.00 per occurrence deductible.

# Section V
# SPECIAL PROVISIONS FOR CONDOMINIUMS

**INCEPTION AND TERMINATION OF COVERAGE RELATING TO COMMON ELEMENTS**
Coverage for Common Elements shall commence on the date of first occupancy of an Individual Unit in the Condominium building or the settlement date for the first Homeowner, whichever first occurs.

**CLAIMS ON COMMON ELEMENTS**
Where a Common Element defect affects one or more Condominium Unit(s) in the condominium structure, any portion of a claim involving Common Elements may only be made by a representative designated by the condominium association to file such claim.

**LIMITS OF LIABILITY**
For claims involving Common Element(s), Insurer liability shall be limited to that amount which exceeds the lesser of (i) $250.00 times the number of Individual Units affected by the Common Element defect, or (ii) $5,000.00 per Condominium project.

# Section VI - EXCLUSIONS

This Insurance Policy does not provide any coverage for the following items, which are specifically excluded

1. Damage to land and other real property, which is not part of Your Home, or any property, which was not included in the purchase price, stated on the enrollment form supplied to HW10 by Your Builder.

2. Damage to swimming pools and other recreational facilities or any improvement(s) which are not a part of the Home itself; driveways; walkways; sidewalks; boundary walls, retaining walls and bulkheads (except where boundary walls, retaining walls and bulkheads are necessary for the structural stability of the Home); fences; landscaping (including sodding, seeding, shrubs, trees, and plantings); sprinkler Systems; patios, decks, stoops, steps and porches, balconies, outbuildings, detached garages or carports, or any other appurtenant structure or attachment to the dwelling; or other additions or improvements not a part of Your Home;

3. Loss or damage which arises while Your Home is being used primarily for nonresidential purposes.

4. Changes in the level of underground water table which was not reasonably foreseeable at the time of construction of Your Home.

5. Failure of Your Builder to complete construction;

6. Noncompliance with plans and specifications; violations of local, state or national building codes, ordinances or standards; however, this exclusion does not apply if the noncompliance or violation results in a Deficiency or Structural failure covered under this Policy;

7. Any pest or insect activity or intrusion.

8. Any condition which has not resulted in Actual physical damage to Your Home.

9. Any loss or damage which is caused or made worse by any of the following causes, whether acting alone or in sequence or concurrence with any other cause or causes whatsoever:

    a. Negligence, improper maintenance, defective material or work supplied by, or improper operation by, anyone other than Your Builder or its employees, agents or subcontractors, including failure to comply with the warranty requirements of manufacturers of appliances, equipment or fixtures;

    b. Your failure to give timely and proper notice to the Insurer In accordance with Section VIII of any Deficiency or Structural failure problem;

    c. Change of the grading of the ground that does not comply with accepted grading practices, or failure to maintain the original grade;

    d. Riot or civil commotion, war, vandalism, damage caused by acts of God, hurricane, tornado or other windstorm, fire, explosion, blasting, smoke, water, rainwater, moisture penetration, wind driven water, groundwater, flood, dampness, condensation, hail, snow, ice storm, lightning, falling trees or other objects, aircraft, vehicles, or intentional acts of others, mudslide, avalanche, earthquake, or volcanic eruption;

    e. Abuse or use of Your Home, or any part thereof, beyond the reasonable capacity of such part for such use;

    f. Microorganisms, Fungus or spore(s), any substance vapor or gas arising out of or produced by any Fungus(s) or spore(s) decay, wet rot, dry rot, soft rot, rotting of any

kind, mold, mildew, vermin, termites, insects, rodents, birds, wild or domestic animals, plants, corrosion, rust, radon, radiation, formaldehyde, asbestos, any solid, liquid or gaseous pollutant, contaminant, toxin, irritant or carcinogenic substance, whether organic or inorganic, and electromagnetic field or emission, including any claim of health risk or un-inhabitability based on any of the foregoing.   Any material, product, building component, equipment, or system that contains, harbors, nurtures or acts as a medium for any Fungus(s) or spore(s);

g. Condensation and dampness problems caused by Homeowner neglect in maintaining proper ventilation in the Home; and

h. Your failure to minimize or mitigate any defect, conditions, loss or damage as soon as practicable.

10. Any loss or damage caused by buried debris, underground springs, sinkholes, mineshafts or other anomalies, which were not reasonably foreseeable in a building site provided by You.

11. Any request for insurance coverage submitted to the Insurer after the expiration of the applicable Policy term.

12. Loss caused, in whole or in part, by any peril or occurrence for which state legislation or public funds provide compensation.

13. Any loss or damage to the extent the loss or damage is covered by any other insurance, whether primary, excess, pro-rata or contingent.

14. Costs of shelter, transportation, food, moving, storage, or other incidental expenses related to relocation during repair, or any other costs due to loss of use, inconvenience, or annoyance.

15.   All consequential damages which may result from a claim filed pursuant to this Policy are expressly excluded from the terms of this Policy;

16. Diminished market value of Your Home.

17. Any and all consequential loss or damage, including without limitation, any damage to property not covered by this Policy, any damage to personal property, any damage to property which You do not own, any bodily damage or personal injury of any kind, including physical or mental pain and suffering and emotional distress, and any medical or hospital expenses, or lost profits.

18. Normal wear and tear/deterioration.

19. Cracked or broken glass or mirrors.

20. Any problem associated with any material or work not supplied or done by or on the behalf of the BUILDER prior to the effective date of coverage under this Policy.  Any change or addition or alteration to the Home after the commencement date of the Policy term.

21. Any damage caused by soil subsidence.

22. Loss or damage due to abnormal or excessive loading on floors which exceeds the design loads mandated by any government code.

23. Any Loss or damage caused by, or resulting from, water leaks, water seeps, or from high humidity.

24. Loss or damage caused by, or resulting from, in whole or in part, any defect in EIFS exterior cladding system, or any part thereof, or any substantially similar system or any part thereof, including, without limitation, any defect in any conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such system.

## Section VII - Conditions

**THIS POLICY IS AN INSURANCE CONTRACT OFFERED BY YOUR INSURER. THIS POLICY IS THE ONLY POLICY PROVIDED BY THE INSURER WITH RESPECT TO THE HOME AND ITS CONSTRUCTION.   IF ANY PROVISION OF THIS POLICY IS DETERMINED BY AN ARBITRATOR OR A JUDGE TO BE UNENFORCEABLE, THAT DETERMINATION WILL NOT AFFECT THE VALIDITY OF THE REMAINING PROVISIONS.**

THIS IS AN INSURANCE POLICY. The Insurer can not cancel this Policy.

CANCELLATION BY YOU: You may cancel this Policy at any time by providing written notice to Insurer.  On cancellation, all unearned premium shall be deemed earned, and shall be forfeited by You.

POLICY TRANSFERABLE: All of Your rights and obligations hereunder shall fully transfer to each successor in title to the Home, including any mortgagee in possession, at no cost to You, for the remainder of the Policy term and such transfer shall in no way affect or reduce the coverage under this Policy for its unexpired term.  While the Policy is transferable to subsequent buyers, Insurer is not responsible for any representation or misrepresentation made by You to any subsequent buyer of the Home.

This Policy is excess over any other insurance or warranty coverage, whether primary, excess, contingent or any other basis.

ACCESS TO YOUR HOME: For Your Insurer to carry out its responsibility under this Policy, it will require access to Your Home from time to time. You must grant access to Your Insurer and its agents and contractors during normal business hours to inspect, repair and conduct tests in Your Home as in their judgment may be required.

PRE-ARBITRATION CONCILIATION: In the event of a dispute under the Policy, the Insurer will offer pre-arbitration conciliation at no cost to You. If You are dissatisfied with the outcome of pre-arbitration conciliation or You elect not to use the pre-arbitration conciliation provision, then binding arbitration is available to You during the entire term of this Policy

---

**YOUR OBLIGATIONS: The insurance coverage pays for the cost of labor and materials to correct a covered defect.  Your obligations are to care for the Home in such a way as to rule out or minimize damage to it.  You should be aware that all new Homes go through a period of settlement and movement.  During this period Your Home may experience some minor material shrinkage, cracking and other events that are normal and customary.  Remember that You are responsible for proper maintenance of Your Home including maintaining Builder-set grades around the Home, planting trees and shrubs at the proper distance, and conforming to generally accepted landscape practices for Your region.**

**Any damage caused or made worse by Your negligence, improper maintenance or changes, alterations or additions, performed by anyone other than Your Insurer or its agents, is excluded from coverage under this Policy.**

---

REPAIRS:

## 1st Year Workmanship Coverage

The Insurer shall repair, replace, or pay You the reasonable cost of repair of any covered item in Your Home in accordance with Section II. The choice as to the scope of repair, the repair technique, replacement, or payment in lieu of repair or replacement is the sole discretion of Your Insurer.  The Insurer shall have the sole right to select the contractors, subcontractors or trades people used in the repair or replacement process.

Repairs will meet locally accepted Building Codes in effect at the time of Your Home's construction.  The Insurer is not obligated for any additional cost of repairs due to changes in the Building Codes, which were implemented subsequent to the original construction of Your Home.

Your Insurer will try, to its reasonable ability, to match colors, materials, and finishes.  The Insurer cannot be responsible for fading, discontinued patterns, or changes in dye lot.

Your Insurer shall not be responsible for unauthorized repairs or replacement done by others or for the costs of such unauthorized repairs or replacement.

## 2nd Year Systems Coverage

The Insurer shall repair, replace, or pay You the reasonable cost of repair of the Systems of Your Home in accordance with Section III.

The choice as to the scope of repair, the repair technique, replacement, or payment in lieu of

repair or replacement is the sole discretion of Your Insurer.  The Insurer shall have the sole right to select the contractors, subcontractors or trades people, used in the repair or replacement process.

Repairs will meet locally accepted Building Codes in effect at the time of Your Home's Construction.  The Insurer is not obligated for any additional cost of repairs due to changes in the Building Codes, which were implemented subsequent to the original construction of Your Home.

Your Insurer will try to its reasonable ability to match colors, materials, and finishes.  The Insurer cannot be responsible for fading, discontinued patterns, or changes in dye lot.

Your Insurer shall not be responsible for unauthorized repairs or replacement done by others or for the costs of such unauthorized repairs or replacement.

## 10 Year Structural Coverage

The Insurer shall repair, replace, or pay You the reasonable cost of repair of a Structural failure in accordance with Section IV.

10

The choice as to the scope of repair, the repair technique, replacement, or payment in lieu of repair or replacement is the sole discretion of Your Insurer. The Insurer shall have the sole right to select the contractors, subcontractors or trades people used in the repair or replacement process.

The repair of a Structural failure is limited to:

1. The repair of damage to Designated Load-Bearing Members of the Home, which is necessary to restore their load-bearing function;
2. The repair of non-load-bearing portions, items or Systems of the Home damaged by the Structural failure; and
3. The repair and cosmetic correction of only those surfaces, finishes, and coverings that were original with the Home, damaged by the Structural failure or which require removal and replacement to repair the Structural failure.

Repairs will meet locally accepted building codes in effect at the time of Your Home's construction. The Insurer is not obligated for any additional cost of repairs due to changes in the building codes, which were implemented subsequent to the original construction of Your Home.

Repairs are intended to restore the Home to approximately the condition just prior to the Structural failure, but not necessarily to a like-new condition. The Insurer will try to its reasonable ability to match colors, materials, and finishes. The Insurer cannot be responsible for fading, discontinued patterns, or changes in dye lot.

The Insurer shall not be responsible for unauthorized repairs or replacement done by others or for the costs of such unauthorized repairs or replacement.

# Section VIII – Arbitration

## BINDING ARBITRATION

   **A.    Arbitration.** Any dispute or claim (a "**Claim**") arising out of or in connection with this Policy may be resolved by arbitration. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16, and conducted by one or more independent arbitrators who are experienced in residential construction and Home warranty matters and have no past or present relationship with either party, appointed as set forth in this Section. If proper notice of any hearing has been given, the arbitrator(s) will have full power to proceed to take evidence or to perform any other acts necessary to arbitrate the matter in the absence of any party who fails to appear. The Homeowner waives any rights the Homeowner may have to demand trial by jury or to seek punitive damages from the Insurer. The arbitrator(s) will have no power to (a) stay the effectiveness of any pending termination of this Policy; (b) assess punitive damages; or (c) make any award that modifies or suspends any lawful provision of this Policy. All expenses of arbitration must be paid by the party against whom the arbitrator(s) render a decision. The award made by the arbitrator(s) shall be final, binding and conclusive on all parties to the arbitration for all purposes. Judgment on any award and/or enforcing any order of the arbitrator may be entered by any court of competent jurisdiction.

   **1.    Initiation of Arbitration.** To initiate an arbitration hereunder, the party wishing to make a Claim (the "**Initiator**") shall give a written notice of demand for arbitration hereunder (the "**Initial Notice**") to the other party (the "**Respondent**") and provide the name of the Initial Arbitrator (as hereinafter defined).

   **2.    Initial Notice.** To be valid, the Initial Notice must include the following: (a) a statement of the Claim; (b) a proposed resolution ("**Initial Resolution**") of the Claim; (c) the name of the arbitrator proposed by the Initiator (the "**Initial Arbitrator**"); (d) the address and phone and facsimile numbers of both the Initiator and the Initial Arbitrator, (e) the date of the Initial Notice; and (f) the signature of the Initiator. The Initial Notice may include other matters as shall be deemed appropriate by the Initiator, but it may not contain any conditions to the effectiveness of the Initial Notice nor any other matter which affects the validity of the Initial Notice.

   **3.    Response.** The Respondent is bound to respond to the Initial Notice in writing within 30 days of the date the Respondent receives the Initial Notice (the "**Response**") or suffer the consequences described in this Section. If the Respondent fails to timely respond with a valid Response, the Initial Resolution shall become effective as an arbitration award hereunder. A valid Response must be one of the following (as described more fully below): (a) a Second Notice; (b) Dispute of the Initial Resolution; or (c) Acceptance.

   **a.    Dispute of Resolution and Additional Arbitrators.** If the Respondent wishes to dispute the Initial Resolution and have a panel of three arbitrators, the Respondent must timely deliver a written notice (the "**Second Notice**") to the Initiator and the Initial Arbitrator, which to be valid, must include the following: (a) a statement of the Response, including the factual disputes with the Initial Notice, and other facts supporting the Respondent's position; (b) a proposed resolution ("**Second Resolution**") of the Claim, such as alternative amounts of damages or alternative resolutions of the Claim; (c) the name of the arbitrator proposed by the Respondent (the "**Second Arbitrator**"); (d) the address and phone and facsimile numbers of both the Respondent and the Second Arbitrator, (e) the date of the Response; and (f) the signature of the Respondent. The Response may include other matters as shall be deemed appropriate by the Respondent, including Counterclaims (defined below) of the Respondent, but it

may not contain any conditions to the effectiveness of the Response nor any other matter which affects the validity of the Response. If a valid Second Notice is timely given, the Second Arbitrator and the Initial Arbitrator shall meet and agree on a third arbitrator. If they do not or cannot within 30 days following the Response, then the Initiator, the Respondent and/or either Arbitrator may request to have the Circuit Court for the City of Virginia Beach, Virginia name the third arbitrator. Upon completing the panel of arbitrators, the panel shall commence the arbitration process. The Arbitrators shall make an award of the Initial Resolution or the Second Resolution or such other award as the Arbitrators decide is just under the facts and applicable law, subject to the terms of this Policy.

        **b.**        **Dispute of Resolution and Acceptance of Single Arbitrator.** The Respondent may choose to accept the Initial Arbitrator as the sole Arbitrator and only dispute the initial Resolution. If the Respondent selects this alternative, the Respondent must timely file a Response including the following: (a) a statement that the Respondent accepts the Initial Arbitrator as the sole arbitrator; (b) a statement of the Response, including the factual disputes with the Initial Notice and other facts supporting the Respondent's position; (c) a proposed Second Resolution of the Claim, such as alternative amounts of damages or alternative resolutions of the Claim; (d) the address and phone and facsimile numbers of the Respondent; (e) the date of the Response; and (f) the signature of the Respondent. The Response may include other matters as shall be deemed appropriate by the Respondent, including Counterclaims of the Respondent, but it may not contain any conditions to the effectiveness of the Response nor any other matter which affects the validity of the Response. If a Response does not name the Second Arbitrator, the Initial Arbitrator shall make an award of the Initial Resolution or the Second Resolution or may schedule a hearing on the issues and make such award as the Initial Arbitrator deems just under the facts and applicable law, subject to the terms of this Policy.

        **c.**        **Award**. If the Respondent fails to timely give a valid Response, as provided above, or if the Respondent gives a notice of Acceptance of the Initial Resolution, the Initial Arbitrator shall enter the award adopting the Initial Resolution.

        **4.**        **Counterclaims**. The Respondent may include a counterclaim with Respondent's claims (a "**Counterclaim**") in the Response. If the Respondent makes a Counterclaim, the Initiator shall be obligated to respond in the same time and in the same fashion as required of the Respondent, except that the Initial Arbitrator shall be the Initiator's Arbitrator for both the initial Claim and the Counterclaim. In connection with any arbitration proceeding, any compulsory Counterclaim (as defined by Rule 13 of the Federal Rules of Civil Procedure) must be filed within the same proceeding as the Claim to which it relates. Any such compulsory Counterclaim which is not submitted or filed as described above will be forever barred.

        **B.**        **Attorneys' Fees**. Should either party be required to enforce its rights hereunder, the prevailing party shall be entitled to recover its reasonable costs and expenses, including without limitation attorneys' fees and costs, and such expenses on any appeal, to be determined by the arbitrator, or by the court and not a jury.

        **C.**        **Time Limits**. Nothing in this Section shall modify the obligation of the Homeowner to notify the Insurer, pursuant to Section VIII, of a claim for coverage under Sections III, IV or V within the time limits set forth in Sections III, IV or V.

## Section IX – How To File a Claim

**TO FILE A CLAIM UNDER THIS POLICY, AND TO HAVE SUCH CLAIM CONSIDERED FOR COVERAGE UNDER THIS POLICY, YOU MUST NOTIFY THE INSURER IN WRITING OR BY TELEPHONE WITHIN THE POLICY TERM.**

DELIVERY OF SERVICES: HW 10 will initiate adjustment of your claim within seventy-two hours of the homeowner's telephonic or written request, and will cause the completion of covered services as soon as reasonably possible. HW10 will arrange for the immediate initiation of covered services in the case of heating system or furnace malfunction during the winter months.

**To resolve an emergency-heating claim, you should first contact the contractor identified in the documents supplied by the builder of your home.**

If you are unable to reach the Insurer or the HVAC contractor that installed your system due to their unavailability you may contact the contractor below to initiate immediate services:

Emergency-heating contractor:  Chuck's Mechanical Appliance Service, Inc.
Contact phone #:                          757-548-6811

**Your insurer will only be liable for reimbursement of expenses related to covered items under Section III of this policy, less your $250 deductible.**

The homeowner has the responsibility to contact the HVAC contractor that installed your heating system before contacting the above named emergency heating-contractor. Refer to the contractor list supplied by your builder. Only in the event they are unavailable should the home owner contact the emergency HVAC contractor.

You may request arbitration by notifying the Insurer in writing. Request for arbitration must be made in compliance with instructions outlined in Section VII above. You will be required to send the arbitration fee with Your request.

Pre-arbitration conciliation is available to You if You disagree with the decision of Insurer at no cost to You. To initiate pre-arbitration conciliation You must notify Insurer in writing on the prescribed form within 30 days of the settlement offer by Insurer.

## Important Information

**Claims should be mailed to:**

Building Industry Insurance Association, Inc.
2117 Smith Avenue
Chesapeake, Virginia 23320
Phone: 757-424-6523

**Claims can be delivered via facsimile:**

757-420-8021 or 757-420-8130

**Or by e-mail:** pkyle@tbaonline.org

If You have been unable to contact or obtain satisfaction from the Insurer, You may contact the Virginia Bureau of Insurance at:

State Corporation Commission
Bureau of Insurance
1300 E. Main Street
P.O. Box 1157
Richmond, Virginia  23209
1-800-552-7945 (within Virginia)
757-371-9741 (outside Virginia)

The Performance Guidelines as defined in the *Residential Construction Performance Guidelines for Professional Builders & Remodelers* published by the National Association of Home Builders (NAHB) may be purchased from NAHB as shown below:

www.Builderbooks.com
1-800-223-2665.

**Important Notice:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**#422564 V2 – INSURANCE POLICY – 2005**
Edition 12/01/2007