UNITED STATES DISTRICT COURT

EASTERN OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON |
| JACQUES SENAC AND DARA SENAC | * * | MAG. WILKINSON |
| Versus | * * | 10-1594 |
| STATE FARM FIRE AND CASUALTY COMPANY | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT STATE FARM FIRE & CASUALTY COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>RULE 12(b)(6) MOTION TO DISMISS</u>**

**I. <u>INTRODUCTION</u>**

The question in this case is whether Plaintiffs' homeowners insurance policy with State Farm covers losses that Plaintiffs allege were caused by the installation in their home of defective drywall. As is explained below, Plaintiffs' homeowners policy does not cover any of the alleged losses from defective drywall, and the Petition should be dismissed with prejudice.

**First**, the presence of defective drywall in the dwelling is not an accidental direct physical loss as required by the policy. **Second**, the policy unambiguously excludes loss to the dwelling itself, including drywall, consisting of defective or faulty workmanship, construction, and materials used in construction or repair. **Third**, the policy unambiguously excludes losses to the dwelling that consist of or are directly and immediately caused by "wear, tear, marring, . . . deterioration, inherent vice, latent defect," "corrosion, electrolysis . . . rust," or "contamination," regardless of whether faulty workmanship or materials directly or indirectly cause, contribute to or aggravate any of those conditions. **Fourth**, the policy only covers losses to personal property that are caused by certain enumerated perils (such as fire, windstorm or hail), none of which applies to Plaintiffs' alleged losses. Thus, there are no covered losses to the dwelling itself or to personal property within the dwelling.

**Fifth**, the policy does not cover first-party bodily injury at all, and so Plaintiffs' allegation that fumes from the drywall have made them ill is not a covered loss. **Sixth**, the policy does not cover Plaintiffs' alleged loss of use (such as additional living expenses and fair rental value), because there is no underlying insured loss as is required under the policy. **Finally**, Plaintiffs' first-party claim for diminished value is not a covered loss because it is neither an accidental direct physical loss nor is it otherwise covered in the first-party context. For these reasons, the Petition should be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. FACTS

Plaintiffs filed two related lawsuits against State Farm twenty days apart. On April 9, 2010, Plaintiffs filed the above-captioned action in Louisiana state court, and State Farm timely removed the action to this Court. (*See* Dkt. 1, Notice of Removal.) On April 29, 2010, Plaintiffs filed a

separate action in this Court, captioned *Jacques Senac Individually and on Behalf of Courtney Senac, Dara Senac Individually and on Behalf of Courtney Senac, and Jennifer Senac v. State Farm Fire & Casualty Company*, Case No. 10-cv-1242 ("*Senac II*").  In both actions, Plaintiffs seek insurance coverage and damages from State Farm for its alleged failure to provide coverage under their homeowners insurance policy for losses they claim to have suffered from having allegedly defective Chinese-manufactured drywall in their home.[1]  In the Petition in the present action, Plaintiffs request that State Farm be ordered "to provide the applicable coverage for any and all expenses covered under the Plaintiffs' policy of insurance . . . due to the defective condition of their home."  (Pet. ¶ 4.)

Plaintiffs' allegations in *Senac II* are judicial admissions and are properly considered in this motion to dismiss.  *See* LA. CIV. CODE. art. 1853 ("A judicial confession is a declaration made by a party in a judicial proceeding.  That confession constitutes full proof against the party who made it."); *cf. Ikossi-Anastasiou v. Bd. of Supervisors of La. State. Univ.*, 579 F.3d 546, 550 (5th Cir. 2009) ("Factual assertions in the complaint are 'judicial admissions conclusively binding' on the plaintiff.") (quoting *Morales v. Dep't of Army*, 947 F.2d 766, 769 (5th Cir. 1991)).  Accordingly, State Farm incorporates Plaintiffs' allegations in *Senac II* to supplement the very limited allegations asserted in their Petition in the above-captioned action.[2]

Plaintiffs allege that they moved into their newly constructed home in May 2006.  (*See Senac II* Pet. ¶ 5.)  Plaintiffs allege that their home was constructed using defective Chinese-manufactured drywall that causes "a sulfur-like odor" and "equipment and appliance failures

---

[1] Upon removing the present action to this Court, State Farm notified the Court that the two actions are related and suggested that both actions be consolidated as they arise out of the same claim under Plaintiffs' homeowners policy.  (*See* Dkt. 4, Notice of Related Filing/Lawsuit.)

[2] State Farm also has filed a Motion to Dismiss the *Senac II* Petition on the same grounds set forth herein.

affecting their air-conditioning evaporator coils, dishwasher, television, bathroom heater, and surround sound system." (*Id.* ¶ 8.) Plaintiffs further assert that the allegedly defective drywall in their home is "structurally defective because of crumbling, dust generation, and chemical composition causing off gassing of toxic emission as a result of the defective structure and chemical composition." (*Id.* ¶ 9.) In addition to such property damage, Plaintiffs allege that the drywall in their home has caused them "personal injury" and has had adverse effects on their health. (*Id.* ¶¶ 8, 10.)

Plaintiffs purchased a homeowners insurance policy (hereinafter "the Policy") from State Farm to insure their home. (*See id.* ¶ 6.) A copy of the Policy, numbered 18-E4-2174-2, is attached hereto as Exhibit A. Policy Coverage A covers certain accidental direct physical losses to the dwelling itself, but excludes loss consisting of faulty workmanship or faulty materials used in construction or repair. (Ex. A at 10–11.) Likewise, the Policy also excludes a loss to the dwelling "which consists of, or is directly and immediately caused by" such things as "wear, tear, marring, . . . deterioration, inherent vice, latent defect," "corrosion, electrolysis . . . rust," or "contamination," regardless of whether faulty workmanship or faulty materials directly or indirectly cause, contribute to or aggravate any of these applicable exclusions. (*Id.* at 9.)

Coverage B under the Policy affords certain coverage for losses to personal property, but only losses caused by sixteen enumerated perils: (1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling objects; (11) weight of ice, snow or sleet; (12) sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system, etc.; (13) sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, etc.; (14) freezing; (15) sudden and accidental

damage to electrical appliances, etc., from change in artificially generated electrical current; and (16) breakage of glass.  (*Id.* at 7–9.)  Coverage C of the Policy, "Loss of Use," provides certain coverage for living expenses, but only when an insured loss causes the residence to become uninhabitable.

As will be explained below, none of these coverages applies to the losses alleged here.

## III. ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard Applicable to This Motion

The Supreme Court has prescribed a two-step process for evaluating the sufficiency of a complaint:  (1) identify and disregard all legal conclusions in the complaint; and (2) determine whether the remaining factual allegations plausibly suggest the defendant's liability.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n.5 (2007).  This procedure is intended to expose and weed out deficient complaints at the point of minimum expenditure of time and money by the parties and the district court.  *Twombly*, 550 U.S. at 558.  In addition, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (*quoting Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

In ruling on a Rule 12(b)(6) motion, the Court may consider documents referred to in the complaint or central to its claims.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998); *see also Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004), *aff'd*, 129 Fed. App'x. 874 (5th Cir. 2005) (unpublished).  Here, the Policy is central to the claims alleged against State Farm in the Petition and is properly considered without converting this motion to dismiss into one for summary judgment.  *See, e.g.*, *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir.

2007) (approving defendants' attachment of insurance contracts to their motions to dismiss noting that where "the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss") (citation omitted); *cert. denied*, 128 S. Ct. 1230, and *cert. denied*, 128 S. Ct. 1231 (2008).

In ruling on coverage questions, Louisiana courts adhere to the general principle that "[w]hen the language in an insurance contract is clear and unambiguous the agreement must be enforced as written." *Cent. La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991). Furthermore, "[w]ords and phrases used in insurance policies are to be construed in their plain, ordinary and popular sense." *Id.* at 986; *see also Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766, 770 (M.D. La. 2008), *on reconsideration in part*, No. 06-504, 2008 WL 1885326 (M.D. La. Apr. 8, 2008) (unpublished).

### B. The Presence of Defective Drywall in the Dwelling Is Not a "Loss Insured" Under the Policy's Insuring Agreement.

Although Plaintiffs allege that they have sustained property damage to their home due to the installation of allegedly defective drywall, the presence of defective drywall in the home is not an accidental direct physical loss within the insuring agreement of the Policy. As to coverage for the dwelling itself, the insuring agreement portion of the Policy provides as follows:

> **SECTION I – LOSSES INSURED**
> **COVERAGE A – DWELLING**
>
> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I – LOSSES NOT INSURED**.

(Ex. A at 7.) Plaintiffs bear the burden of proving that any property damage they have suffered to their dwelling falls within the terms of the insuring agreement language of the Policy. *See*

*Davidson v. United Fire & Cas. Co.*, 576 So. 2d 586, 590 (La. Ct. App. 1991). They cannot do that in this case.

The mere existence of allegedly defective drywall in Plaintiffs' home does not, by itself, constitute physical loss. In *Trinity Industries, Inc. v. Insurance Company of North America*, 916 F.2d 267 (5th Cir. 1990), the Fifth Circuit applied Louisiana law to interpret a builder's risk policy that "insure[d] against all risks of physical loss of or damage to the subject matter here insured." *Id.* at 269. In that case, the insured sought coverage under its builder's risk policy for an arbitration award rendered against it. The insured argued that the award was based on the insured's defective workmanship and that such defective workmanship was a risk covered by the policy.

The Fifth Circuit disagreed, holding that the insured's faulty construction itself did not constitute property damage, and thus, the cost of repair did not fall within the coverage of the policy. *Id.* at 271. The court reasoned as follows:

> The language "physical loss or damage" strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper. It would not ordinarily be thought to encompass faulty initial construction.

*Id.* at 270–71 (noting interpretation of similar policies "to cover accidents resulting from defective design or workmanship, but not the cost of repairing the defect itself").

The Fifth Circuit's reasoning in *Trinity Industries* applies equally to the alleged presence of defective drywall in Plaintiffs' home. Taking Plaintiffs' allegations as true, when the drywall in their home was supplied, it was inherently "structurally defective" (*Senac II* Pet. ¶ 9)—in other words, from the time the drywall was installed, it was never in "an initial satisfactory state that was changed by some external event into an unsatisfactory state." *Trinity Indus*., 916 F.2d at 270–71. Therefore, there cannot have been any "accidental direct physical loss" to the drywall

itself, as required by the Policy's insuring agreement (Ex. A at 7), and the cost of repairing or replacing the drywall to eliminate the alleged defect is not a covered loss.

Furthermore, as discussed below, because any other losses purportedly suffered by Plaintiffs due to defective drywall are excluded under the express terms of the Policy, Plaintiffs have failed to state a claim upon which relief can be granted.

### C. Loss to the Dwelling, Including Drywall, Is Excluded Under the Policy.

Although Plaintiffs allege that they have sustained property damage to their dwelling resulting from the installation of allegedly defective drywall, the Policy contains several exclusions that preclude coverage for the losses alleged. Specifically, the purported loss to the dwelling itself, including drywall, is expressly excluded from coverage by the faulty workmanship and faulty materials exclusions. (Ex. A at 10–11.) The Policy also excludes loss to the dwelling "which consists of, or is directly and immediately caused by" such things as "wear, tear, marring, . . . deterioration, inherent vice, latent defect," "corrosion, electrolysis . . . rust," or "contamination," regardless of whether faulty workmanship or materials directly or indirectly cause, contribute to or aggravate any of these applicable exclusions. (*Id.* at 9–10.)

#### 1. The Faulty or Defective Workmanship, Construction and Materials Exclusions Apply.

The Policy excludes losses to the dwelling itself, including drywall, that consist of faulty workmanship or construction, or defective or faulty materials used in construction or repair. The operative Policy language is as follows:

> **SECTION I – LOSSES NOT INSURED**
>
> . . .
>
> 3.  We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following:  (a) directly or indirectly cause, contribute to or

>aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:
>
>. . .
>
>b.  *defect, weakness, inadequacy, fault or unsoundness in*:
>
>. . .
>
>>(2)  design, specifications, workmanship, *construction*, grading, compaction; [or]
>>
>>(3)  *materials used in construction or repair*; . . .
>
>. . .
>
>of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**;
>
>. . .
>
>However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

(Ex. A at 9–11 (italics added).)

Courts considering faulty workmanship or materials exclusions have found these clauses unambiguous under Louisiana law. In *Alton Ochsner Medical Foundation v. Allendale Mutual Insurance Co.*, 219 F.3d 501 (5th Cir. 2000), the Fifth Circuit considered an insured's claim that defective workmanship caused cracking in the foundation of an office tower under construction. The insured attempted to distinguish the faulty workmanship from the property damage that ensued. Applying Louisiana law, the court described "faulty workmanship" as "'a defect in the way some part of the (insured property) is constructed.' In other words, 'it is the *quality of the product* which is excluded from coverage, and not damage *to* the product caused by negligence during the construction process.'" *Id.* at 506 (quoting *U.S. Indus., Inc. v. Aetna Cas. & Surety Co.*, 690 F.2d 459, 463 (5th Cir. 1982)).

To demonstrate the distinction between the quality of the product and damage to the product, the *Alton Ochsner* court gave the example of an employee negligently driving a truck into the office tower, knocking it over. Such a loss would be covered, the court reasoned,

because it "would not bear directly on the *quality* of the product (the tower) but would cause damage *to* it." *Id.* The Fifth Circuit also has "noted the importance of an event 'extraneous' to the construction process bringing about the loss" in explaining the distinction between faulty workmanship, which is excluded, and covered property damage. *Id.* at 507 (quoting *U.S. Indus.*, 690 F.2d at 462). Because the only costs the insured sought to recover in that case were the costs of repairing the cracking in the building's foundation to restore the structural integrity, the court held that the exclusion applied and that the damage was not covered. In so doing, the court stated, "we must remain mindful that the policy does not cover the costs of 'making good' defective construction." *Id.*

Likewise, in *Holland v. Breaux*, No. Civ. A. 04-3028, 2005 WL 3542899 (E.D. La. Nov. 22, 2005) (unpublished), the court applied Louisiana law and held that a homeowners insurance policy did not cover cracking, sagging, and rotting damage to a home resulting from "faulty planning, construction and maintenance," which included the improper use of untreated lumber. *See also Morgan v. Auto Club Family Ins. Co.*, 04-1562, pp. 3, 5 (La. App. 3 Cir. 4/6/05); 899 So. 2d 135, 137 (faulty workmanship in installing new roof was excluded from coverage).[3]

In this case, Plaintiffs have alleged that defective drywall in their home has caused them property damage. Applying the logic of the *Alton Ochsner* and *Holland* decisions, to the extent Plaintiffs allege that the use of defective drywall in the construction of their home constitutes direct physical loss, that loss falls squarely within the exclusions for faulty workmanship and

---

[3] On facts distinguishable from this case, one court held that this exclusion did not apply to *unauthorized* work done on an insured's home. *See Husband v. Lafayette Ins. Co.*, 93-815 (La. App. 5 Cir. 3/16/94); 635 So. 2d 309. The court held that to fall within the exclusion, the work must be performed by the insured or by someone authorized by the insured. Because the tenant undertook to alter the home without authorization and in violation of the lease, the exclusion did not apply. Even accepting that condition, however, the *Husband* court's rationale does not apply here, because Plaintiffs allege that their home was built in the first instance with allegedly defective drywall. (*See Senac II* Pet. ¶¶ 4–5, 7.)

materials.  (*See, e.g.*, *Senac II* Pet. ¶ 9 (drywall was "structurally defective").)  Put simply, the Policy does not cover property damage consisting of faulty or defective workmanship or construction, or faulty or defective materials used in construction and repair.

### 2. The Latent Defect, Corrosion, and Contamination Exclusions Apply.

The operative Policy language is as follows:

**SECTION I – LOSSES NOT INSURED**

1. We do not insure for any loss to the property described in Coverage A which ***consists of, or is directly and immediately caused by***, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    . . .

    g.  wear, tear, marring, scratching, deterioration, inherent vice, ***latent defect*** or mechanical breakdown;

    h.  ***corrosion***, electrolysis or rust;

    . . .

    j.  ***contamination***;

    . . .

    However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

(Ex. A at 9–10 (emphasis added).)

#### a. The Latent Defect Exclusion Applies.

The Policy does not cover a loss to the dwelling ***consisting of or caused by a latent defect***.  Louisiana courts have defined "latent defect" to be "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal."  *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328, 335 (La. Ct. App. 1984) (quoting *Walker v. Travelers Indem. Co.*, 289 So. 2d 864, 870 (La. Ct. App. 1974)).  The *Nida* court considered a homeowner's insurance claim for a loss caused by an improper preparation of his

home's foundation for the type of soil on which it was built. The natural shrinking and swelling of the soil caused damage to the foundation and to the rest of the home. In addition to an "earth movement" exclusion, the court applied the definition of "latent defect" set forth above and agreed with the insurer that the poorly constructed foundation was a latent defect, which was excluded from coverage. *Id.* In doing so, the court specifically noted that the insurer "was not a guarantor of the constructor's building performance." *Id.*

In this case, the Policy's "latent defect" exclusion is unambiguous. Plaintiffs' allegations make clear that the alleged defect in the drywall was latent. Indeed, Plaintiffs allege that they moved into their home in May 2006 (*see Senac II* Pet. ¶ 5) but did not discover that purportedly defective drywall was used in the construction of the home until June 2009. (*See id.* ¶ 7; *see also* Pet. ¶ 2 (April 2009).) Thus, the latent defect exclusion applies to Plaintiffs' alleged losses.

### b.     The Corrosion Exclusion Applies.

The Policy also excludes losses to the dwelling ***consisting of or caused by corrosion***. (Ex. A at 9.) So, to the extent Plaintiffs seek recovery from State Farm for losses to their home in the nature of corroded wiring, piping, and fixtures, those losses are excluded by the corrosion exclusion.

The Louisiana Supreme Court has upheld the application of a "corrosion" exclusion in a boiler and machinery insurance policy. *See Cent. La. Elec. Co. [CLECO] v. Westinghouse Elec. Corp.*, 579 So. 2d 981 (La. 1991). The policy in *CLECO* provided coverage for "loss or damage to property of the Insured directly caused by [an] accident to an Object . . . ." *Id.* at 984. After an accident occurred damaging several blades in a turbine (causing damages within the deductible), the insured had the remaining blades inspected and discovered that they exhibited signs of "corrosion pitting" and cracks resulting from corrosion. The insured replaced all of the blades and sought indemnity from its insurer. The court held that the corrosion of the blades was

not an "accident," which was defined as "any sudden or accidental occurrence . . . ; but Accident shall not mean . . . corrosion." *Id.* Putting aside the blades that were undisputedly damaged by the first "accident," the court found that the later-discovered damage to the remaining blades was not covered by the policy because corrosion was explicitly excluded from the definition of "accident." *Id.*

The same principle applies here. Any claim that the dwelling has been damaged because the drywall allegedly emits sulfuric gases that corrode metal wiring, piping, or other features of the dwelling, is barred by the corrosion exclusion.

### c. The Contamination Exclusion Applies.

The Policy also excludes loss to the dwelling that ***consists of or is caused by contamination***. (Ex. A at 9.) A similar contamination exclusion was at issue in *Barry Concrete*, 531 F. Supp. 2d 766. In that case, a load of concrete aggregate was transported by the insured in a truck that contained sugar from a prior load, and the left-over sugar prevented the concrete from curing or hardening when poured. The insurer argued that the cargo policy would not cover any potential liability to the third-party buyer, because the loss resulted from "contamination," which was excluded. The court held that contamination "is commonly understood to mean: 'to make unfit for use by introduction of unwholesome or undesirable elements' or 'to soil, stain, or infect by contact or association.'" *Id.* at 770. Applying that definition, the court held that the alleged losses fell squarely within the contamination exclusion and so were not covered. *Id.*

As was the case in *Barry Concrete*, the Policy's contamination exclusion is unambiguous. Allegations that "unwholesome or undesirable elements" in the drywall—such as noxious or toxic sulfuric compounds (*see Senac II* Pet. ¶¶ 8–9)—are causing damage to the dwelling fall

squarely within the contamination exclusion. Such losses are not covered under Plaintiffs' homeowners policy.

> **d.     The Latent Defect, Corrosion and Contamination Exclusions Apply Even if Latent Defect, Corrosion and Contamination Are Alleged to Have Been Caused by Faulty or Defective Workmanship, Construction or Materials.**

To the extent that Plaintiffs might argue that fault or defect in the workmanship or materials (*i.e.*, the drywall) used in the construction of the dwelling caused latent defect, corrosion, or contamination of property other than the drywall itself, those alleged losses also would be excluded by the plain language of the Policy. The policy unambiguously excludes losses consisting of or caused by latent defect, corrosion and contamination (Ex. A at 9), even if faulty or defective workmanship, construction or materials "directly or indirectly cause, contribute to or aggravate" the latent defect, corrosion and contamination. (*Id.* at 10.)

Even were Plaintiffs to argue that corrosion and contamination of items other than the drywall are somehow covered as "resulting losses" from the defective drywall, the plain language of the Policy proves otherwise. The "resulting loss" clause of Section I – Losses Not Insured states that, "we do insure for any resulting loss from items a., b., and c., **unless the resulting loss is itself a Loss Not Insured by this Section**." (*Id.* at 11) (emphasis added). Because corrosion and contamination each is a "Loss Not Insured" by Section 1, corrosion and contamination are not covered resulting losses. Thus, the Policy does not cover property damage consisting of or caused by latent defect, corrosion, or contamination, even if those losses were allegedly caused by faulty or defective workmanship or construction, or faulty or defective materials used in construction and repair.

### D. Alleged Losses to Plaintiffs' Personal Property Are Not Covered, Because They Were Not Caused by an Enumerated Peril.

To the extent that Plaintiffs intend to pursue coverage under the Policy for damage to any personal property—that is, any contents of their home that are "not permanently attached to or otherwise forming a part of the realty" (Ex. A at 3)—such losses are not within the terms of the insuring agreement and so are not covered.

The Policy provides certain coverage for personal property under Coverage B. However, personal property is insured against loss only from those perils specifically enumerated in the Policy. (*Id.* at 7–8; *see also, e.g.*, *Arias-Benn*, 495 F.3d at 230–32 (applying Louisiana law, recognizing that personal property loss was restricted to perils listed in policy under Coverage B).) There are sixteen enumerated perils under Coverage B, Personal Property: (1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling objects; (11) weight of ice, snow or sleet; (12) sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system, etc.; (13) sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, etc.; (14) freezing; (15) sudden and accidental damage to electrical appliances, etc., from change in artificially generated electrical current; and (16) breakage of glass. (Ex. A at 7–8.)

None of these enumerated perils even arguably applies to the losses alleged in the Petition. This means that, as a matter of law, there is no coverage under the Policy for the losses to personal property alleged in the Petition.

### E. The Policy Does Not Cover Bodily Injury to Plaintiffs Themselves.

Plaintiffs allege that they have suffered medical illnesses, purportedly caused by the presence of defective drywall in their home. (*See, e.g.*, *Senac II* Pet. ¶¶ 8, 10, 25.) The Policy,

however, does not cover bodily injury to Plaintiffs themselves (in contrast to liability coverage for bodily injury to third-parties). The Policy provides the following coverage for bodily injury:

> **SECTION II – LIABILITY COVERAGES**
>
> **COVERAGE L – PERSONAL LIABILITY**
>
>> If a claim is made or a suit is brought *against an* **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>>
>> 1. pay up to our limit of liability for the damages *for which the* **insured** *is legally liable* . . . .
>
> **COVERAGE M – MEDICAL PAYMENT TO OTHERS**
>
>> We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. . . .

(Ex. A at 15 (italics added).)

> **SECTION II – EXCLUSIONS**
>
>> 1. Coverage L and Coverage M do not apply to:
>>
>> . . .
>>
>> h. **bodily injury** to *you or any* **insured** within the meaning of part a. or b. of the definition of **insured**.

(*Id.* at 16–17 (italics added).) "Insured" is defined by the Policy as follows:

> **DEFINITIONS**
>
>> "You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.
>
>> Certain words and phrases are defined as follows:
>
>> . . .
>
>> 4. "**insured**" means you and, if residents of your household:
>>
>>> a. your relatives; and
>>>
>>> b. any other person under the age of 21 who is in the care of a person described above.

(*Id.* at 1.)

Thus, the Policy only provides coverage for "bodily injury" suffered by individuals who are unrelated to those insured by the Policy—in other words, where Plaintiffs become liable to

*others* for bodily injury.  Under the clear terms of the Policy, therefore, any illness Plaintiffs—who are insureds—claim to have suffered from drywall fumes is not a covered loss.

>  F. **Because There Is No "Loss Insured" to the "Residence Premises," There Is No Coverage for Loss of Use, Rents or Other Consequential Damages.**

Plaintiffs allege that their "home is not suitable to reside in" (Pet. ¶ 2) and that they have suffered the loss of the use of their property, loss of rents, and additional living expenses.  (*See, e.g.*, Pet. ¶¶ 3–4; *Senac II* Pet. ¶¶ 10, 25, 27.)  Such items are not covered unless there is an underlying covered loss to the dwelling itself.  The operative Policy language is as follows:

> **COVERAGE C – LOSS OF USE**
> 1. **Additional Living Expense**.  When a *Loss Insured* causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. . . .
> 2. **Fair Rental Value**.  When a *Loss Insured* causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. . . .

(Ex. A at 4–5 (italics added).)

Coverage for loss of use, including living expenses and loss of rental income, is expressly conditioned on an underlying loss to the residence premises *that is otherwise insured* under the Policy.  As explained above, Plaintiffs have not sustained a *Loss Insured* to the residence premises.  Accordingly, Plaintiffs' claims for loss of use, living expenses, and rental income are not covered, as a matter of law.

>  G. **The Policy Does Not Cover First-Party Diminished Value Claims.**

The Petition also seeks recovery for alleged "depreciation" of their property.  (*Senac II* Pet. ¶ 27.)  This claim fails as a matter of law for two reasons.  First, diminished value is not an "accidental direct physical loss" under the Policy's insuring agreement (Ex. A at 7), because diminished value by its nature is a purely economic loss, not a physical loss.  *See* 10A Lee R. Russ, *et al.*, *Couch on Insurance* § 148:46 (3d ed. 2005 & Supp. 2009) (citations omitted).

Second, absent a specific policy term providing coverage for diminished value, Louisiana courts have held that first-party diminished value is not a covered loss:

> [C]ases recognizing diminished value as an item of damage also involve third party liability claims based on the basic tort principle set forth in La. C.C. art. 2315. . . . Allowing damages for diminution in value, when such damages are established, fulfills the tortfeasor's obligation to "make whole" his victim.
>
> In contrast, the obligation between State Farm and Townsend is contractual. State Farm's obligation to indemnify Townsend when a first-party claim is submitted due to a collision is limited by the terms of the contract. It is not governed by tort principles. Bootstrapping the standards for measuring damages when property is damaged through the fault of another to the contractual coverage provided by an insurer for first-party collision claims would result in a new contract, one enlarged beyond what is reasonably contemplated by the clear terms set forth therein, and would ignore the principle that insurance companies may limit coverage so long as such limitations do not conflict with statutory provisions or public policy.

*Townsend v. State Farm Mut. Auto. Ins. Co.*, 34,901-CA, p. 11 (La. App. 2 Cir. 8/22/01); 793 So. 2d 473, 479–80 (holding that diminished value is not covered by automobile policy) *writ denied* 804 So. 2d 634 (La. 2001) (citations and footnotes omitted); *see also Campbell v. Markel Am. Ins. Co.*, 2000 CA 1448, pp. 6–8, 18 (La. App. 1 Cir. 9/21/01); 822 So. 2d 617, 622–23, 628 (same).

Like the plaintiffs in *Townsend* and *Campbell*, Plaintiffs' coverage claim is strictly a first-party insurance contract claim. Yet, nowhere in the Policy is there any provision of coverage for diminished value. Under the rule of *Townsend* and *Campbell*, Plaintiffs' claim for diminished value under the Policy should be dismissed with prejudice.

## **CONCLUSION**

Plaintiffs' alleged losses consisting of or resulting from allegedly defective drywall are not covered under their State Farm homeowners policy. For these reasons, the Petition should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

This 3rd day of June, 2010.

/s/ Adrianne L. Baumgartner
**ADRIANNE L. BAUMGARTNER, T.A. (#2861)**
**DARRIN M. O'CONNOR (#24582)**
**EMILY S. MORRISON  (#18351**)
PORTEOUS, HAINKEL & JOHNSON
408 North Columbia Street
Covington, LA 70434
Telephone: (985) 893-4790
abaumgartner@phjlaw.com
doconnor@phjlaw.com
emorrison@phjlaw.com


**CHARLES L. CHASSAIGNAC, IV (#20746)**
Porteous, Hainkel & Johnson, L.L.P.
343 Third Street, Suite 202
Baton Rouge, LA  70801-1309
Telephone:  (225) 383-8900
cchassaignac@phjlaw.com


**JAMES R. NIESET, JR. (#24856)**
PORTEOUS, HAINKEL & JOHNSON, LLP
704 Carondelet Street
New Orleans, LA 70130
Telephone: (504) 581-3838
jnieset@phjlaw.com

**Attorneys for State Farm Fire & Casualty Company**


**CERTIFICATE OF SERVICE**


I hereby certify that a copy of the foregoing Defendant State Farm Fire & Casualty Company's Rule 12(b)(6) Motion to Dismiss has been served upon Jaques Bezou and Christine Voelkel, counsel for Plaintiffs Jacques  and Dara Senac, by mail and email pending counsel's registration with Lexis/Nexis File & Serve, Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel Kerry Miller by U.S. Mail and email or by hand-delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using

the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on the 3rd day of June, 2010.

/s/ Adrianne L. Baumgartner