# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

In re: **CHINESE-MANUFACTURED**
**DRYWALL PRODUCTS LIABILITY**
**LITIGATION**

**This documents relates to**
**Case No. 09-6690 (Gross)**

**MDL Docket No. 2047**

**SECTION L**

**DISTRICT JUDGE FALLON**

**MAGISTRATE JUDGE WILKINSON**

## MEMORANDUM IN SUPPORT OF DEFENDANT J.W. ALLEN & CO., INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant J.W. Allen & Co., Inc., ("J.W. Allen") respectfully submits this memorandum in support of its motion for summary judgment in the above captioned case.

J.W. Allen is neither a manufacturer or a supplier of drywall, nor a builder or contractor of any kind. Defendant acted solely as a customs broker and freight forwarder with respect to the entry into the United States of Chinese plasterboard manufactured and exported by Knauf Wuhu and Knauf Tianjin ("Plasterboard") which was purchased and later distributed by Interior/Exterior Building Supply, L.P. ("Interior/Exterior").

As a matter of law, customs brokers and freight forwarders are not liable for defects in products and materials they forward.[1]  It is undisputed that J.W. Allen did not design, manufacture, modify, inspect, test, distribute, supply, market, or install the Plasterboard.  It had no knowledge of any defects in the Plasterboard and no reason to know of any defects.  J.W. Allen did no more than perform the administrative duties necessary to allow the Plasterboard to reach its importer, purchaser and distributor, Interior/Exterior.  Because J.W. Allen did not have a duty to ascertain and guarantee the nature or quality of the Plasterboard, J.W. Allen is entitled to a summary judgment as a matter of law.

## INTRODUCTION

Plaintiffs claim that their homes contain defective Plasterboard allegedly "designed, manufactured, exported, imported, distributed, delivered, supplied, marketed, or sold" by defendants.  Plaintiffs specifically allege that J.W. Allen is a supplier of drywall and related building products and, "by information and belief, [that J.W. Allen] . . . supplied the drywall at issue in this litigation in certain of the affected states."[2]  Plaintiffs are mistaken.

The following facts are not disputed.  J.W. Allen is a Louisiana business incorporated in 1958[3] that has operated as a licensed customs broker since 1987 and a licensed freight forwarder since 1963.[4]  As a customs broker, J.W. Allen handles the necessary paperwork and record keeping to facilitate shipments into and out of the U.S., always "transact[ing] customs business

---

[1] *See, e.g.*, Am. L. Prod. Liab. 3d § 5:24 (citing *Ahrens v. TPLC, Inc.*, 955 F. Supp. 54 (E.D. La. 1997) (applying Louisiana  law)); *cf. Josephs v. Austin*, 420 So. 2d 1181, 1183 (La. App. 5 Cir. 1982) (real estate broker not responsible for redhibitory defects in house).

[2] Amended Class Action Complaint ¶ 129.

[3] Louisiana Secretary of State Website, *available at* http://www.sos.louisiana.gov/tabid/819/default.aspx (listing J.W. Allen registration date as 1/3/1958) (Affidavit of William S. App, Jr., attached as Exhibit 1 thereto).

[4] Affidavit of William S. App, Jr. ¶¶ 5-6 (licenses attached as Exhibits 2-3 thereto).

2

on behalf of others."[5]  As a freight forwarder, J.W. Allen "dispatch[es] shipments in foreign commerce between the United States, its territories or possessions, and foreign countries, and handl[es] the formalities incident to such shipments, on behalf of other persons."[6]  By definition, a customs broker and freight forwarder conducts business on behalf of other persons and organizations, and not on its own behalf.[7]

In 2006, J.W. Allen served as customs broker and freight forwarder for four transactions in which drywall supplier Interior/Exterior purchased four shipments of Plasterboard manufactured and exported by Knauf Plasterboard (Wuhu) Co. Ltd. and Knauf Plasterboard (Tianjin) Co. Ltd., (collectively "Knauf").[8]  Interior/Exterior is identified as the importer of record of the Plasterboard[9] and Knauf is identified as the exporter of record for and shipper of the Plasterboard.[10]  J.W. Allen is a separate legal entity—unrelated to both Interior/Exterior and Knauf.[11]  J.W. Allen did not suggest, advocate, or negotiate the importation of the Plasterboard.[12]  J.W. Allen never had physical custody or ownership of the Plasterboard.[13]  J.W. Allen did not design, manufacture, modify, inspect, test, distribute, supply, market, install, or sell the Plasterboard.[14]  J.W. Allen's employee Rudy J. Remont traveled to China to view the packaging of the Plasterboard for shipping purposes and only observed the stowage of the Plasterboard on

---

[5] See 19 C.F.R. § 111.1 (role of a customs broker as defined by the Department of Homeland Security).
[6] Id.
[7] Id.
[8] Affidavit of William S. App, Jr. ¶ 7 (four bills of lading and related documents attached as Exhibits 4-7 thereto, JWA-MSJ4-001; JWA-MSJ5-001; JWA-MSJ6-001; JWA-MSJ7-001).
[9] Id.
[10] Id.
[11] Affidavit of William S. App, Jr. ¶ 12.
[12] 30(b)(6) Deposition of Interior/Exterior p. 88–89 (Attached as Exhibit A hereto).
[13] Affidavit of William S. App, Jr. ¶¶ 13-14.  Affidavit of Rudy J. Remont ¶9.
[14] Id.

the vessel used for transport to the United States.[15]  Knauf provided warranties that the plasterboard was "free from defects in materials and workmanship" and was made in accordance with ASTM C36—the applicable standard of quality for domestic drywall.[16]  J.W. Allen gave no warranties concerning the quality of the Plasterboard.[17]  At the time of the transactions, J.W. Allen did not know or have reason to know of any alleged defects in the Plasterboard.[18]

Customs brokers have no affirmative duty mandated under Federal law or by the Department of Homeland Security to inspect products before or after aiding their entry into the United States.[19]  Customs brokers and freight forwarders "do not inspect the cargo themselves but rely on information provided by the exporter in completing the necessary customs declarations."[20]  Customs brokers and freight forwarders have no duty to inspect the goods themselves unless the contract governing the transaction requires the customs broker to perform an inspection.[21]

## LAW AND ARGUMENT

Summary judgment is appropriate in a case where, as here, "there is no genuine issue as to any material fact."[22]  "The moving party bears the burden of demonstrating that there exists no

---

[15] Affidavit of William S. App, Jr. ¶ 11. Affidavit of Rudy J. Remont ¶ 5.

[16] Affidavit of William S. App, Jr. ¶ 7 (four bills of lading and related documents attached as Exhibits 4-7 thereto, JWA-MSJ5-010–13; JWA-MSJ6-011–14, 023–27; JWA-MSJ7-012–16).

[17] Affidavit of William S. App, Jr. ¶ 16.  Affidavit of Rudy J. Remont ¶ 12.

[18] Affidavit of William S. App, Jr. ¶ 15.  Affidavit of Rudy J. Remont ¶ 11.

[19] *See* 19 U.S.C 1641(b)(4); 19 C.F.R. § 111.21–111.42 (Department of Homeland Security Code of Federal Regulations listing duties of a federally licensed customs broker).

[20] *United States v. Chmielewski*, 218 F.3d 840, 841 (8th Cir. 2000).

[21] *See United States v. Gaviria*, 805 F.2d 1108, 1114 (2d Cir. 1986) (customs broker did not inspect materials imported but arranged for them to be inspected by customs); *Jinan Yipan Corp., Ltd., v. United States*, 526 F. Supp. 2d 1347, 1366 (Ct. Int'l Trade 2007) (customs broker giving advice concerning inspections but not inspecting product); *Wausau Tile, Inc. v. Navigators Ins. Co.*, No. 05-C-600-S, 2006 WL 278856, at *1 (W.D. Wis. Feb. 2, 2006) (customs broker undertook contractual obligation to inspect shipment).

[22] Fed. R. Civ. P. 56(c).

4

genuine issue of material fact."[23]  In determining whether a genuine issue of material fact exists, the Court must review the facts drawing all inferences most favorable to the non-moving party.[24] But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted."[25]  "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."[26]

As to issues with respect to which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim.[27]  Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[28]  The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[29]

The Plaintiffs assert the following claims against J.W. Allen: negligence, negligent discharge of a corrosive substance, strict liability, negligence *per se*, violations of the Louisiana Products Liabilities Act, violation of consumer protection acts, breach of express or implied warranties, redhibition, private nuisance, unjust enrichment, and equitable and

---

[23] *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 776, 781 (E.D. La. 2007) (Fallon, J.).
[24] *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 141 (5th Cir. 2004).
[25] *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987).
[26] *Racko Props., Inc. v. Ala. Great S. R R. Co.*, No. 07-2898, 2008 WL 754684, *2 (E.D. La. March 19, 2008).
[27] *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).
[28] *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).
[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

PD.3969771.6

injunctive relief and medical monitoring. Each of these should be dismissed as a matter of law.

This brief first examines Louisiana law, which should control the causes of action pleaded against J.W. Allen. In anticipation of Plaintiff's argument that the laws of other states in which individual plaintiffs reside—namely, Alabama, Florida, Mississippi, North Carolina, Texas, and Virginia—should apply, this brief examines the laws of those states, where appropriate.

## I)   J.W. ALLEN IS NOT LIABLE TO PLAINTIFFS UNDER APPLICABLE LOUISIANA LAW.

Those Plaintiffs who are residents of Louisiana admit that Louisiana law applies to their claims.[30] Louisiana law should govern all claims against J.W. Allen as Louisiana is the forum state, J.W. Allen is a Louisiana corporation, Interior/Exterior is a Louisiana limited partnership, and applying Louisiana law is "neither arbitrary nor fundamentally unfair."[31]

Louisiana law is by definition the law applicable to any claims for redhibition and violations of the Louisiana Products Liability Act, both of which are exclusively Louisiana causes of action.[32]

### 1)   *J.W. Allen is Not Liable for Negligence or Negligent Discharge of a Corrosive Substance.*

Louisiana employs a duty/risk analysis for determining negligence under Louisiana Civil Code article 2315.[33] There is no independent cause of action for negligent discharge of a corrosive substance in Louisiana. The duty/risk analysis is described as:

---

[30] Amended Class Action Complaint ¶ 228.

[31] *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 818 (1985).

[32] *See* Shael Herman, *Apologia for a Footnote*, 6 & 7 Tul. Civ. L.F. 187, 188 (stating that redhibition is a uniquely Roman or civil law remedy and not available in English common law jurisdictions).

[This] consists of the following four-prong inquiry: (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, . . . (2) Did the Defendant(s) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? Under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).[34]

"Whether a duty is owed is a question of law."[35]  "A broker who has no ownership interest in the product is not liable for a defect . . . [and] has no duty to discover latent defects in the product, in the absence of knowledge or notice of facts that would put a prudent person on inquiry."[36]  A broker who aids in the sale of a product but never has physical control or custody over the product, is not liable for the product's defects under a negligence theory.[37]  This Court held in *Ankum v. White Consolidated Industries*,[38] that brokers can only be held liable for negligence "for either misrepresentation or omission of information about the product" at issue in the transaction when "the seller knows of the vice of the thing."[39]  Similarly the Louisiana Fourth Circuit Court of Appeal held, "[w]e know of no possible basis . . . for a determination of

---

[33] *Rando v. Anco Insulations Inc.*, 2008-1163, p. 26 (La. 5/22/09); 16 So. 3d 1065, 1085.

[34] *Id.* at 26–27.

[35] *Id.* at 27.

[36] Am. L. Prod. Liab. 3d § 5:24 (citing *Ahrens v. TPLC, Inc.*, 955 F. Supp. 54 (E.D. La. 1997) (applying Louisiana law)); *cf. Josephs v. Austin*, 420 So. 2d 1181, 1183 (La. App. 5 Cir. 1982) (real estate broker not responsible for redhibitory defects in house).

[37] *Ankum v. White Consol. Indus.*, No. 91-2990, 1992 WL 185705, at *3 (E.D. La. July 30, 1992); *Home Ins. Co. v. A.J. Warehouse Inc.*, 210 So. 2d 544, 551 (La. App. 4 Cir. 1968).

[38] *Ankum v. White Consol. Indus.*, No. 91-2990, 1992 WL 185705 (E.D. La. July 30, 1992).

[39] *Ankum v. White Consol. Indus.*, No. 91-2990, 1992 WL 185705, at *3 (E.D. La. July 30, 1992).

liability on [a broker-distributor's] part" when the broker is not a manufacturer or seller and "simply got the parties together."[40]

The Louisiana Supreme Court examined whether brokers may be held liable for negligence in *Oceaneering International, Inc. v. Black Towing Inc.*[41] In *Oceaneering*, a vessel named the MISS SHELLY struck and damaged an underwater pipeline. The vessel was owned by Cheramie Towing Corporation chartered by Oceaneering and operated by a captain and crew employed by Oceaneering. Defendant Black Towing's role was limited to arranging the charter of the Cheramie vessel by Oceaneering. The MISS SHELLY was never manned by a Black Towing captain or crew. Because Black Towing did not own the vessel, maintain the vessel, operate the vessel, or use the vessel, the court found that Black Towing acted only as a broker. The trial court further found that Black Towing could not be held liable for negligence because it acted only as a broker and on those grounds dismissed Black Towing from the case. The Third Circuit Court of Appeal reversed. The Louisiana Supreme Court reversed the Third Circuit and reinstated the trial court's judgment holding that Black Towing could not be held liable for negligence or other tort when it had no control or ownership over the vessel causing the damage.

Neither is there a duty to inspect under Federal law. Customs brokers and freight forwarders have no affirmative duty mandated by Federal law or by the Department of Homeland Security to inspect products before or after aiding the entry of the products into the United States.[42] Customs brokers and freight forwarders "do not inspect the cargo themselves but rely on information provided by the exporter in completing the necessary customs

---

[40] *Home Ins. Co. v. A.J. Warehouse Inc.*, 210 So. 2d 544, 551 (La. App. 4 Cir. 1968).

[41] *Oceaneering Int'l, Inc. v. Black Towing Inc.*, 491 So. 2d 1 (La. 1982).

[42] *See* 19 U.S.C 1641(b)(4); 19 C.F.R. § 111.21–111.42 (listing duties imposed on federally licensed customs broker by the Department of Homeland Security).

declarations."[43]   Customs brokers and freight forwarders have no duty to inspect the goods themselves unless the contract governing the transaction requires the customs broker to perform an inspection.[44]

In this case, J.W. Allen served as a customs broker and freight forwarder in the sale from Knauf to Interior/Exterior.[45]   J.W. Allen did not select the Plasterboard and never held title to the Plasterboard purchased by Interior/Exterior.[46]   There was nothing about the Plasterboard that would place J.W. Allen on notice as to any alleged defects.[47]   Knauf warranted that the Plasterboard was made to ASTM C36 standards—the same standard required of American drywall—and were free of defects in materials and workmanship.[48]   J.W. Allen did not inspect, ensure the suitability of, or warrant the Plasterboard, and it had no duty to do so.[49]   Therefore, J.W. Allen cannot be held liable for breach of duty.

J.W. Allen is also not liable for negligent discharge of a corrosive substance.  This has never been pleaded in Louisiana as an independent cause of action.  Instead, such a cause of action would have the same elements as any other negligence claim.  Even assuming this is a validly pleaded cause of action, J.W. Allen had no duty to inspect, warn, or otherwise take action concerning the Plasterboard other than their duties as a customs broker and freight forwarder

---

[43] *United States v. Chmielewski*, 218 F.3d 840, 841 (8th Cir. 2000).

[44] *See United States v. Gaviria*, 805 F.2d 1108, 1114 (2d Cir. 1986) (customs broker did not inspect materials imported but arranged for them to be inspected by customs); *Jinan Yipan Corp., Ltd., v. United States*, 526 F. Supp. 2d 1347, 1366 (Ct. Int'l Trade 2007) (customs broker giving advice concerning inspections but not inspecting product); *Wausau Tile, Inc. v. Navigators Ins. Co.*, No. 05-C-600-S, 2006 WL 278856, at *1 (W.D. Wis. Feb. 2, 2006) (customs broker undertook contractual obligation to inspect shipment).

[45] Affidavit of William S. App, Jr. ¶ 7 (four bills of lading and related documents attached as Exhibits 4-7 thereto).

[46] Affidavit of William S. App, Jr. ¶ 14.  Affidavit of Rudy J. Remont ¶ 10.

[47] Affidavit of William S. App, Jr. ¶ 15; Affidavit of Rudy J. Remont ¶ 11.

[48] Affidavit of William S. App, Jr. ¶ 7 (four bills of lading and related documents attached as Exhibits 4-7 thereto, JWA-MSJ5-010–13; JWA-MSJ6-011–14, 023–27; JWA-MSJ7-012–16).

[49] Affidavit of William S. App, Jr. ¶ 16.  Affidavit of Rudy J. Remont ¶ 12.

9

mandated by contract.[50]   J.W. Allen did not have actual or constructive knowledge of the allegedly corrosive and dangerous properties of the Plasterboard which could create a duty to warn Plaintiffs.   Even if it existed as a cause of action, J.W. Allen could not be held liable for negligent discharge of a corrosive substance under Louisiana law.

> 2.   *J.W. Allen is Not Liable Under Louisiana's Strict Liability Law.*

The Louisiana Civil Code limits strict liability to dog owners, blasting, pile drivers, and a few other, narrowly defined, high risk areas.[51]   J.W. Allen's actions do not fall within one of the statutorily defined high risk areas.   While in the past Louisiana recognized, in limited circumstances, strict products liability, Louisiana never applied it against entities that "did not manufacture, install, or sell the component part alleged to be defective."[52]   J.W. Allen served only as a customs broker and freight forwarder and never had custody over the Plasterboard.[53]   J.W. Allen cannot be held liable to the Plaintiffs under Louisiana's narrow formulation of strict liability.[54]

> 3.   *J.W. Allen Is Not Liable for Negligence Per Se.*

Plaintiffs also allege a unique type of strict liability, negligence *per se*.   Under the theory of negligence *per se*, liability is imposed for violation of a statute.   "The doctrine of negligence

---

[50] Am. L. Prod. Liab. 3d § 5:24 (citing *Ahrens v. TPLC, Inc.*, 955 F. Supp. 54 (E.D. La. 1997) (applying Louisiana law)); *cf. Josephs v. Austin*, 420 So. 2d 1181, 1183 (La. App. 5 Cir. 1982) (real estate broker not responsible for redhibitory defects in house).

[51] *See, e.g.*, La. Civ. Code art. 667 (strict liability for damage to adjacent property owners for blasting and pile driving); La. Civ. Code art. 2321 (strict liability for dog owners); *See generally* Joseph S. Piacun, *The Abolition of Strict Liability in Louisiana: A Return to a Fairer Standard of an Impossible Burden for Plaintiffs?* 43 Loy. L. Rev. 215 (1997) ("[W]hat is clear is that, except in several limited instances, strict liability has been abolished" in Louisiana).

[52] *Home Ins. Co. of Ill. V. Nat'l Tea Co.*, 577 So. 2d 65, 74 (La. App. 1 Cir. 1990) *rev'd in part on other grounds*, *Home Ins. Co. of Ill. V. Nat'l Tea Co.*, 588 So. 2d 361 (La. 1991).

[53] Affidavit of William S. App, Jr. ¶¶ 7, 13.  Affidavit of Rudy J. Remont ¶ 9.

[54] La. Civ. Code art. 2317.1; *Vinccinelli v. Musso*, 2001-0557, p. 4 (La. App. 1 Cir. 2/27/02); 818 So. 2d 163, 165.

10

*per se* has been rejected in Louisiana" for civil cases.[55]   Statutory violations give rise to civil liability only if the statute violated was criminal.[56]   To succeed on a claim of negligence *per se*, a plaintiff must show that the defendant violated a criminal statute designed to protect individuals or classes of which plaintiff is a member, and that the plaintiff suffered the type of ill envisioned by the statute.[57]   The Plaintiffs do not allege that J.W. Allen violated any criminal statute designed to protect the Plaintiffs.   A violation of a building code, as cited by Plaintiffs in support of their cause of action for negligence *per se*, is insufficient to support their claim under Louisiana law.   Therefore, J.W. Allen cannot be held liable under Louisiana's limited theory of negligence *per se*.

       *4.*    *J.W. Allen Cannot be Held Liable under the Louisiana Unfair Trade Practices and Consumer Protection Law.*

      In order to prevail under the Louisiana Unfair Trade Practices and Consumer Protection Law,[58] a plaintiff must prove that the defendant engaged in fraud, misrepresentation, deception or other unethical conduct.[59]   Plaintiffs have not alleged that J.W. Allen engaged in fraud, misrepresentation, deception or other unethical conduct.   Moreover, J.W. Allen made no warranties concerning the quality or condition of the Plasterboard and had no actual or constructive knowledge of any alleged defects in the Plasterboard.[60]   J.W. Allen cannot be held liable under the Louisiana Unfair Trade Practices and Consumer Protection Law.

---

[55] *Galloway v. State of La.* ex rel. *Dep't of Transp. and Dev.*, 94-2747 (La. 5/22/95); 654 So. 2d 1345, 1347 (Internal citations omitted).

[56] *See Black v. First City Bank*, 94-0426 (La. 9/6/94); 642 So. 2d 151, 153.

[57] *Boyer v. Johnson*, 360 So. 2d 1164 (La. 1978).

[58] La. Rev. Stat. §§ 51:1401–1426.

[59] *See, e.g., Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp., Inc.*, 292 F.3d 471, 480 (5th Cir. 2002).

[60] Affidavit of William S. App, Jr. ¶ 15–16.   Affidavit of Rudy J. Remont ¶ 11.

11

5.    *Private Nuisance*

The Plaintiffs charge that J.W. Allen is liable for creating a private nuisance. The nuisance articles in the Louisiana Civil Code, 667-69, deal exclusively with the rights of landowners against their neighbors.[61] Plaintiffs do not allege that J.W. Allen's actions in this case caused damage to any property adjoining property owned by J.W. Allen.

6.    *Unjust Enrichment*

The Plaintiffs allege that J.W. Allen has been unjustly enriched by its involvement in the four transactions referenced above. In order to recover under a theory of unjust enrichment under Louisiana law, a plaintiff must show that:

1)   there has been an enrichment;

2)   there has been an impoverishment;

3)   there is a causal connection between the enrichment and the impoverishment;

4)   there is an absence of justification or cause for the enrichment and impoverishment; and

5)   there is no other remedy at law available to the plaintiff.[62]

If the enrichment was justified or caused by a valid juridical act, such as a contract, the enrichment is not unjust.[63]

J.W. Allen was paid according to the terms of a valid juridical act—its Customs Power of Attorney with Interior/Exterior.[64] Any enrichment J.W. Allen received was commensurate with the services rendered in its role as a customs broker and freight forwarder. J.W. Allen was not

---

[61] La. Civ. Code arts. 667–69; *Inabnet v. Exxon Corp.*, 93-0861 (La. 9/6/94); 642 So. 2d 1243, 1250–52.

[62] *Baker v. Maclay Props. Co.*, 94-1529 (La. 1/17/95); 648 So. 2d 888, 897.

[63] *SMP Sales Mgmt., Inc. v. Fleet Credit Corp*, 960 F.2d 557, 560 (5th Cir. 1992); *Edmonston v. A-Second Mortgage Co. of Slidell, Inc.*, 289 So.2d 116, 122 (La. 1974).

unjustly enriched at the expense of the Plaintiffs because it was paid by Interior/Exterior for acts it performed pursuant to a valid, arms length contract.

### 7. Injunctive Relief/Medical Monitoring

The Plaintiffs may not obtain injunctive relief against J.W. Allen or force J.W. Allen to pay for medical monitoring. Medical monitoring may only be granted as relief if the Plaintiffs have already become sick due to their exposure to Chinese drywall.[65] The Plaintiffs' Omnibus Class Action Complaint does not allege that any of the plaintiffs have become sick, only that they may become sick.[66] This makes their request for medical monitoring inappropriate under Louisiana law.

### 8. Louisiana Products Liability Act

The Louisiana Products Liability Act[67] establishes "the exclusive theories of liability for manufacturers for damage caused by their products."[68] Liability under the Louisiana Products Liability Act attaches against manufacturers[69] and against non-manufacturer sellers who "exercise[] control over or influence[] a characteristic of the design, construction or quality of the product that causes the damage" or are "the alter ego of [an] alien manufacturer."[70] Non-manufacturer sellers are not required to inspect a product prior to sale to discover latent defects.[71]

---

[64] Affidavit of William S. App, Jr, ¶ 8 (Customs Power of Attorney Attached as Exhibit 8 thereto).
[65] La. Civ. Code art 2315; *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371, p. 23–24 (La. 7/1/08); 998 So.2d 16, 32.
[66] Plaintiffs' Ominubus Class Action Complaint ¶¶ 1586, 1588.
[67] La. Rev. Stat. §§ 9:2800.51–2800.60.
[68] La. Rev. Stat. § 9:2800.52.
[69] La. Rev. Stat. § 9:2800.52; *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250–51 (5th Cir. 1997); *Walker v Gen. Motors Corp.*, 353 F. Supp. 2d 729, 730 (E.D. La. 2004).
[70] La. Rev. Stat § 9:2800.53.
[71] *See, e.g., Haley v. Wellington Specialty Ins. Co.*, 44,014 (La. App. 2 Cir. 2/25/09); 4 So.3d 307; *Landry v. Universal Furniture House Inc.*, No. 97-580, 1997 WL 162014, at *1 (E.D. La. Apr. 3. 1997).

The Plaintiffs do not allege—nor can they prove—that J.W. Allen manufactured or sold the Plasterboard.  J.W. Allen never had custody or physical control over or title to the Plasterboard and did not design, manufacture, modify, inspect, test, distribute, supply, market, install, or sell the Plasterboard.[72]  It is undisputed that J.W. Allen did not manufacture or sell the Plasterboard.[73]  J.W. Allen is not the alter ego of either Knauf or Interior/Exterior.[74]  As a result, J.W. Allen cannot be held liable under the Louisiana Products Liability Act.

9.    Redhibition

"The seller warrants the buyer against redhibitory defects, or vices, in the thing sold."[75]  Brokers are not liable for redhibitory defects or other implied-warranty causes of action because these causes of action create liability only for sellers.[76]  Brokers are not sellers for the purposes of redhibition because they have no ownership or control over the products they broker.[77]  J.W. Allen never had title to, custody or physical control over the Plasterboard and did not design, manufacture, modify, inspect, test, distribute, supply, market, install, or sell the Plasterboard.[78]

**II)    J.W. ALLEN IS NOT LIABLE UNDER THE LAW OF OTHER STATES IN WHICH PLAINTIFFS MAY RESIDE.**

J.W. Allen firmly believes that Louisiana law applies to all claims.  J.W. Allen is a Louisiana company that contracted to act as freight forwarder and customs broker for another Louisiana company, and was named originally in a lawsuit brought by Louisiana plaintiffs.

---

[72] Affidavit of William S. App, Jr. ¶¶ 13–14.

[73] Affidavit of William S. App, Jr. ¶¶ 13-14.  Affidavit of Rudy J. Remont ¶9.

[74] Affidavit of William S. App, Jr. ¶ 12.

[75] La. Civ. Code art 2520.

[76] La. Civ. Code arts. 2520–22, 2524, 2529–32, 2534 (Louisiana redhibition statutes); *see also Josephs v. Austin*, 420 So.2d 1181, 1183 (La. App. 5 Cir. 1982) (real estate broker not responsible for redhibitory defects in house).

[77] *Josephs v. Austin*, 420 So.2d 1181, 1183 (La. App. 5 Cir. 1982) (real estate broker not responsible for redhibitory defects in house).

[78] Affidavit of William S. App, Jr. ¶¶ 13–14.

Plaintiffs have amended their complaint to include other potential claimants in Alabama, Florida, Mississippi, North Carolina, Texas, and Virginia.   Notably, the amended complaint does not appear to assert that J.W. Allen has any connection, direct or indirect, to any non-Louisiana plaintiff.  Even if this Court decides to apply the law of these other states in which Plaintiffs may reside, J.W. Allen cannot be liable to Plaintiffs.

   *1) Negligence*

   In other states in which Plaintiffs may reside, Alabama, Florida, Mississippi, North Carolina, Texas, and Virginia, proof of negligence requires an analysis quite similar to the one used in Louisiana.  The Plaintiffs must prove that:

1)   J.W. Allen owed Plaintiffs a duty;

2)   J.W. Allen breached that duty;

3)   Plaintiffs suffered a loss or injury; and

4)   J.W. Allen's breach was the actual and proximate cause of Plaintiffs' loss or injury.[79]

   Plaintiffs' causes of action for negligence also fail under the laws of these states.  The jurisprudence of these states also holds that sales brokers who arrange sales, but do not design, manufacture, distribute, supply, market, install, buy or sell the product or item being sold, have no duty to inspect the product or item for latent defects unknown to the broker or of which, the

---

[79] *See, e.g., Qore, Inc., d/b/a Qore Prop. Scis. v. Bradford Bldg. Co., Inc.*, 25 So.3d 1116, 1123 (Ala. 2009); *Williams v. Davis*, 974 So.2d 1052, 1056 (Fla. 2007); *Todd v. First Baptist Church of West Point*, 993 So.2d 827, 829 (Miss. 2008); *Estate of Mullis v. Monroe Oil Co., Inc.*, 505 S.E.2d 131, 135 (N.C. 1998); *HIS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006).

15

broker has no reason to be aware. Those who act as "a 'mere conduit' of the product . . . ha[ve] no affirmative duty to inspect and test a product made by a reputable manufacturer."[80]

None of the above-mentioned states recognizes negligent discharge of a corrosive substance as actionable absent proof of negligence.[81]

### 2)   Strict Liability

J.W. Allen is not liable for strict liability under the laws of any state in which various Plaintiffs reside. Alabama restricts strict liability to ultrahazardous or abnormally dangerous activities in which the following factors are present:

1) a high degree of risk of some harm to the person, land or chattels of others;

2) likelihood that the harm that results will be great;

3) an inability to eliminate the risk by the exercise of reasonable care;

4) the extent to which the activity is not a matter of common usage;

5) inappropriateness of the activity to the place where it is carried on; and

6) extent to which its value to the community is outweighed by its dangerous attributes.[82]

---

[80] *Nicholson v. Am. Safety Util. Corp.*, 476 S.E.2d 672, 676 (N.C. App. 1996); *See Kroger Co. v. Goodhew*, 206 So.2d 882, 885 (Ala. 1968) (retailer has no duty to inspect contents of packages from reputable wholesalers absent knowledge the product may be defective); *K-Mart Corp. v. Chairs, Inc.*, 506 So.2d 7, 9 n.3 (Fla. App. 1987) (retailers have no duty to inspect products for latent defects) (citing *Carter v. Hector*, 128 So.2d 390 (Fla. 1961)); *Sam Shainberg Co. of Jackson v. Barlow*, 258 So.2d 242, 244–45 (Miss. 1972) (neither wholesaler, distributor, nor retailer have duty to inspect products for latent defects when purchased from a reputable manufacturer); *Cf Blackmon v. First Real Estate Corp.*, 529 So.2d 955, 958–59 (Ala. 1988) (in absence of confidential relationship, brokers have no duty to inspect for latent defects); *Rosas v. Hatz*, 147 S.W.3d 560, 564 (Tex. App. 2004).

[81] Florida had one case in which a corrosive substance was negligently discharged, but the court defined the elements of this tort as being the same as any other negligence claim. *Florida Specialty, Inc. v. H 2 Ology, Inc.*, 742 So.2d 523, 525–27 (Fla. App 1999).

[82] *Birmingham Coal & Coke Co., Inc. v. Johnson*, 10 So.3d 993, 996–97 (Ala. 2008) (quoting Restatement (Second) Torts § 520).

PD.3969771.6

Florida also applies strict liability to ultrahazardous activity.[83]   Mississippi, North Carolina, and Virginia impose strict liability for ultrahazardous activity but limit recovery under this theory to cases involving blasting.[84]   Texas does not recognize strict liability for ultrahazardous activity.[85]

Alabama, Florida, and Texas recognize a cause of action against sellers for strict products liability based on the Restatement (Second) of Torts § 402A:

> [O]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if:
>
> 1)   the seller is engaged in the business of selling such a product, and
>
> 2)   it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.[86]

In Florida strict liability may be attached to manufacturers or distributors.[87]   But, in Florida, "it has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate" such as the Plasterboard.[88]   Under Florida law, a structural improvement is something that forms an integral part of the home, like the Plasterboard is an integral part of Plaintiffs' homes.[89]

---

[83] *Old Island Fumigation, Inc v. Barbee*, 604 So.2d 1246, 1247–48 (Fla. Dist. Ct. App. 1992).

[84] *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 171–72 (Miss. 1999) (citing Restatement (Second) Torts § 519–20) (refusing, as a matter of first impression, to extend strict liability to transporting and disposing of radioactive waste); *Woodson v. Rowland*, 407 S.E.2d 222 (N.C. 1991); 350–51 *Phillip Morris Inc. v. Emerson*, 368 S.E.2d 268, 282 (Va. 1988) (citing Restatement (Second) Torts § 519–20) (refusing to extend strict liability to disposing of radioactive waste).

[85] *Prather v. Brandt*, 981 S.W.2d 801, 804 (Tex. App. 1998).

[86] *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (quoting Restatement (Second) Torts § 402A); *Hicks v. Commercial Union Ins. Co*, 652 So. 2d 211, 220 (Ala. 1994); *Plaza v. Fisher Dev., Inc.* 971 So.2d 918, 920–21 (Fla. App. 2007).

[87] *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374–75 (S.D. Fla. 2008); *Jackson v. L.A.W.. Contracting Corp*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

[88] *Easterday v. Masiello*, 518 So.2d 260, 261 (Fla. 1988).

[89] *See Plaza v. Fisher Dev., Inc.*, 971 So.2d 918, 922-24 (Fla. 3d DCA 2007).

Mississippi codified its version of strict products liability and provided that it applies only to manufacturers or sellers.[90] Neither North Carolina nor Virginia recognizes strict products liability.[91]

The laws of Alabama, Florida, Mississippi, North Carolina, Texas, and Virginia, provide that strict liability applies only to sellers, and in some cases manufacturers, of products. J.W. Allen is neither and, thus, cannot be held liable for strict products liability under any relevant state law.

### 3)    Negligence Per Se

J.W. Allen is not liable for negligence *per se* in any state in which Plaintiffs reside. Most states impose liability for negligence *per se* only if a defendant violates a statute designed to protect individuals or classes of which the plaintiff is a member, and the plaintiff suffers the type of ill envisioned by the statute.[92] Proof of this violation goes only to prove the duty and breach elements of the negligence analysis. A plaintiff must still prove causation and damages.[93]

Violations of building codes are not sufficient to support charges of negligence *per se* in Alabama or Florida because "the Building Code is to protect the general public" "and not for the benefit of a class of persons."[94] Likewise, Mississippi, North Carolina, Texas, and Virginia do permit charges of negligence *per se* based on building code violations. However, because of

---

[90] Miss. Code § 11-1-63.

[91] *DeWitt v. Eveready Battery Co., Inc.*, 565 S.E.2d 140, 150 (N.C. 2002); Peter Nash Swisher, *Proposed Legislation: A Second Modest Proposal to Protect Virginia Consumers Against Defective Products*, 43 U. Rich. L. Rev. 19 (2008).

[92] *See, e.g., DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So.2d 198, 201 (Fla. 1973).

[93] *Van Voorst v. Fed. Express Corp.*, 16 So.3d 86, 94 (Ala. 2008); *Eckelbarger v. Frank*, 732 So.2d 433, 436 (Fla. App. 1999); *Ill. Cent. Gulf R.R. Co. v. Milward*, 905 So.2d 575, 582 (Miss. 2005); *Ward v. Thompson Heights Swimming Club, Inc.*, 219 S.E.2d 73, 75 (N.C. App. 1975); *Thomas v. Uzoka*, 290 S.W.3d 437, 444–45 (Tex. App. 2009); *Schlimmer v. Poverty Hunt Club, Inc.*, 597 S.E.2d 43, 46 (Va. 2004).

[94] *Parker Bldg. Servs. Co. v. Lightsey*, 925 So. 2d 927, 931–32 (Ala. 2005); *Russ v. Wollheim*, 915 So.2d 1285, 1286 n.1 (Fla. App. 2005).

18

their own limited purpose, building codes impose liability only on those "who construct[], supervise[] construction, or design[] a building or alteration thereto."[95]   J.W. Allen did not construct, supervise construction of, or design the Plaintiffs homes or the Chinese drywall contained in the homes.   Without proof that J.W. Allen violated a specific statute or building code—or a convincing theory as to how a customs broker can be capable of violating a building code—Plaintiffs cannot succeed on a claim of negligence *per se* under any formulation of liability.

### 4)   *Consumer Protection Laws*

J.W. Allen is also not liable under the consumer protection laws of other states in which Plaintiffs reside.   While there are many nuances unique to each state's consumer protection laws, all such laws prohibit misrepresenting; deceiving; causing confusion or misunderstanding; or falsely advertising; a good, product, or service.[96]   Most have exceptions for those who unintentionally disseminate false information, such as media outlets or distributors relaying the representations and warranties of others.[97]   Under Florida and Virginia law, these claims must be pleaded with particularity.[98]

J.W. Allen made no representations regarding the Plasterboard.   J.W. Allen performed its duties as defined by federal law and its contract with Interior/Exterior.   J.W. Allen did not, by action or omission, deceive consumers, falsely advertise a product, harm competitors, or

---

[95] *See, e.g., Olympic Prods. Co., A Div of Cone Mills Corp., v. Roof Sys , Inc.*, 363 S.E.2d 367, 375 (N.C. App. 1988).
[96] *See* Ala. Code § 8-19-5; Fla. Stat. § 501.204; Miss. Code §75-24-5; N.C. Stat. § 75-1.1; Tex. Bus. Code § 17.46; Va. Stat. § 59.1-200.
[97] *Id.*
[98] *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008); *Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 782 (Va. 1996).

otherwise engage in proscribed behavior.  J.W. Allen did not violate the consumer protection laws of any state in which Plaintiffs reside.

### 5)   Nuisance

Generally, nuisance is a "condition, activity, or situation . . . that interferes with the use or enjoyment of property."[99]  The states in which Plaintiffs may reside have different definitions of nuisance. Virginia and Florida's formulation of nuisance is similar to Louisiana's in that it applies only to damage which "obstructs the reasonable and comfortable use of" neighboring properties.[100]  Because Plaintiffs cannot claim that J.W. Allen caused damage to adjacent or neighboring property in Virginia, J.W. Allen cannot be held liable under Virginia's formulation of nuisance.

Florida, Mississippi, North Carolina, and Texas follow the Restatement (Second) of Torts § 822 which requires that the nuisance be either intentional, negligent, reckless, or in the course of an abnormally dangerous activity.[101]  Similarly, in Alabama, a plaintiff must show the traditional tort elements of breach of duty and causation to succeed on a nuisance claim.[102] Plaintiffs cannot succeed in these states without showing negligence, or worse.  As discussed more fully above, J.W. Allen was not negligent in its actions.  It owed no legal duty to Plaintiffs to inspect the Plasterboard for defects.  Plaintiffs cannot succeed on a nuisance claim in these states.

---

[99] Black's Law Dictionary 1097 (8th ed. 2004).
[100] *See, e.g., Fancher v. Fagella*, 650 S.E.2d 519 (Va. 2007); *Martin v. Moore*, 561 S.E.2d 672, 678 (Va. 2002); *Nat'l Energy Corp. v. O'Quinn*, 286 S.E.2d 181, 182 (Va. 1982); *Jones v. J.B. Trawick*, 75 So.2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").
[101] *Rumbough v. City of Tampa*, 403 So.2d 1139, 1141 (Fla. App. 1981); *Biglane v. Under the Hill Corp.*, 949 So.2d 9, 14 (Miss. 2006); *Pendergrast v. Aiken*, 236 S.E.2d 787, 796 (N.C. 1977); *City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997).

*6)      Unjust Enrichment*

Plaintiffs allege that J.W. Allen was unjustly enriched by its actions as a customs broker. In the other states in which Plaintiffs may reside, unjust enrichment has many formulations but the basic elements remain the same:

> 1)  A party confers upon another a benefit which is not owed;
>
> 2)  Which would be inequitable for the receiving party to keep; and
>
> 3)  There is no other remedy available at law.[103]

Plaintiffs in these states would not be able to show that it would be inequitable for J.W. Allen to keep this benefit.  J.W. Allen was paid by Interior/Exterior according to the terms of a Customs Power of Attorney with Interior/Exterior.[104]  Interior/Exterior conferred the benefit upon J.W. Allen for its duties defined by this contract.  J.W. Allen was paid an amount commensurate with its duties.  Therefore, it is not inequitable for J.W. Allen to keep the money it was owed under the contract and plaintiffs' claims of unjust enrichment must fail.

Additionally, in order to apply, Alabama, Florida, and Texas law regarding unjust enrichment require that the party receiving the benefit act through fraud, coercion, affirmative misrepresentation or deception or other bad faith motive or action to recover under the theory of unjust enrichment.[105]  Plaintiffs in Alabama, Florida, and Texas cannot show a wrongful act J.W.

---

[102] *Tipler v. McKenzie Tank Lines*, 547 So.2d 438, 440 (Ala. 1989).

[103] *Wyeth, Inc. v. Blue Cross & Blue Shield of Ala.*, No. 1050926, 2010 WL 152123, at *7–8  (Ala. Jan. 15, 2010); *Golden v. Woodward*, 15 So.3d 664, 670 (Fla. App. 2009); *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005); *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. App. 2009); *1704 21st Ave. Ltd., v. City of Gulfport*, 988 So. 2d 412, 416 (Miss. App. 2008); *Shelter Corp. v. BTU, Inc.*, 572 S.E.2d 200, 206 (N.C. App. 2002); *Heldenfels Bros., Inc., v. City of Corpus Christi*, 832 S.W.2d 39, 43 (Tex. 1992); *Nossen v. Hoy*, 750 F. Supp. 740, 744–45 (E.D. Va. 1990).

[104] Affidavit of William S. App, Jr. ¶ 8.

[105] *Wyeth, Inc., v. Blue Cross & Blue Shield of Ala.*, No. 1050926, 2010 WL 152123, at *7–8 (Ala. Jan. 15, 2010); *Golden v. Woodward*, 15 So. 3d 664, 670 (Fla. App. 2009) (citing *Rinker Materials Corp. v. Palmer First Nat'l Bank & Trust Co. of Sarasota*, 361 So. 2d 156 (Fla. 1978)); *Maloney v. Therm Alum Indus., Corp.*, 636 So.2d 767,

Allen committed against them that rises to the level of fraud, or coercion, misrepresentation, deception, or bad faith.    J.W. Allen gave no warranties regarding the condition of the Plasterboard. J.W. Allen did not defraud or coerce the Plaintiffs.

       *7)     Medical Monitoring/Injunctive Relief*

      Alabama, Mississippi, North Carolina, Texas, and Virginia follow a rule similar to Louisiana's disallowing medical monitoring absent an existing physical injury.[106]

      Florida law only allows for medical monitoring if the defendant was negligent.  Florida allows medical monitoring in absence of a physical injury only when the plaintiff has experienced:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.[107]

      As discussed at length above, J.W. Allen was not negligent under Florida law, or any other law in a state in which Plaintiffs may reside.[108]  Further, the science on the long term effects of Chinese drywall is not sufficiently developed to state that Plaintiffs are at an increased risk of developing a "serious latent disease."[109]  While Florida law does allow for medical monitoring

---

770 (Fla. 4th DCA 1994), *overruled on other grounds by, Commerce P'ship*, 695 So.2d at 388; *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 43 (Tex. 1992).

[106] *Hinton ex rel. Hinton v Monsanto Co.*, 813 So. 2d 827 (Ala. 2001); *Baz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 3 (Miss. 2007); *Curl v. Am. Multimedia, Inc.*, 654 S.E.2d 76, 80–82 (N.C. App. 2007); *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 662–66 (W.D. Tex. 2006); *Ball v. Joy Techs., Inc.*, 958 F.2d 36 (4th Cir. 1991) (discussing Virginia law).

[107] *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106–07 (Fl. App. 1999).

[108] *See supra* discussion Part II.1 and accompanying footnotes.

[109] *Petito v A.H. Robins Co., Inc.*, 750 So. 2d 103, 106–07 (Fl. App. 1999).

absent a present physical injury, Florida law would not allow Plaintiffs to obtain relief against J.W. Allen in this case.

Injunctive relief is extraordinary relief which may be granted if the Plaintiffs possess a clear legal right, an injunction is necessary to prevent an irreparable injury to that right, and there is no other adequate remedy at law.[110] Plaintiffs cannot claim that there is no other remedy available to them at law. All damages alleged by Plaintiffs may be cured by monetary damages. Plaintiffs admit as much by seeking injunctive relief forcing defendants to rescind the contracts on homes or repair and replace the drywall.[111] The only non-monetary claim sought through injunctive relief—that defendants cease and desist from "misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall"[112]—is inapplicable to J.W. Allen as J.W. Allen never gave any representations or warranties concerning the Plasterboard. Further, Plaintiffs cannot show a clear right to relief from J.W. Allen, which acted only as a customs broker and freight forwarder.

## CONCLUSION

J.W. Allen is a customs broker and international freight forwarder. There is no dispute that the transaction which brought the Plasterboard into this Country was between Knauf and Interior/Exterior. Without allegations that J.W. Allen was in any way involved in the manufacture, sale, or installation of the Plasterboard, J.W. Allen cannot be held liable under the theories asserted by Plaintiffs. J.W. Allen is entitled to a summary judgment as a matter of law.

---

[110] *Summerlin v. Summerlin*, 962 So. 2d 170, 173 (Ala. 2007); *Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007); *Ruff v. Estate of Ruff*, 989 So. 2d 366, 369–70 (Miss. 2008); *Porter v. Suburban Sanitation Serv., Inc.*, 283 N.C. 479, 486 (N.C. 1973); *In re Continental Airlines, Inc.*, 988 S.W.2d 733, 737 (Tex. 1998); *Levisa Col Co. v. Consol. Coal Co.*, 276 Va. 44, 61–62 (Va. 2008).

[111] Omnibus Complaint ¶ 1581.

23

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:     /s/ Brent B. Barriere
   Brent B. Barriere, (Bar #2818)
   Susie Morgan, (Bar #9715)
   D. Skylar Rosenbloom, (Bar #31309)
   Canal Place
   365 Canal Street • Suite 2000
   New Orleans, Louisiana 70130-6534
   Telephone: (504) 566-1311
   Telecopier: (504) 568-9130
   Email: barrierb@phelps.com
      susie.morgan@phelps.com
      skylar.rosenbloom@phelps.com


**CHAFFE MCCALL, LLP**

BY:     /s/ J. Dwight LeBlanc, Jr.
   J. Dwight LeBlanc, Jr. (Bar #8195)
   2300 Energy Centre
   1100 Poydras Street
   New Orleans, Louisiana 70163
   Telephone: (504) 585-7013
   Cell: (504) 389-6810
   Telecopier: (504) 585-7075
   Email: leblanc@chaffe.com

ATTORNEYS FOR J. W. ALLEN & CO., INC.

---

[112] Omnibus Complaint ¶ 1581.

PD.3969771.6

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum in Support of Defendant J.W. Allen & Co., Inc.'s Motion for Summary Judgment* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 4th day of June, 2010.

  /s/ Brent B. Barriere

PD 3969771.6