UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL ) MDL NO. 2047
PRODUCTS LIABILITY LITIGATION )
) SECTION: L
)
) JUDGE FALLON
) MAG. JUDGE WILKINSON
_____ )

**THIS DOCUMENT RELATES TO ALL CASES**

**PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM
IN SUPPORT OF MOTION CHALLENGING THE ADEQUACY
AND COMPLETENESS OF THE DISCOVERY RESPONSES
OF DEFENDANT, KNAUF GIPS, AND TO COMPEL DISCOVERY
AND PRODUCTION OF DISCOVERY RESPONSES FROM KNAUF GIPS,
KNAUF PLASTERBOARD (TIANJIN), KNAUF PLASTERBOARD (WUHU)
AND KNAUF PLASTERBOARD (DONGGUAN) AND A COMPLETE
PRIVILEGE LOG CONCERNING JURISDICTIONAL AND OTHER
ISSUES FROM THE KNAUF DEFENDANTS**

MAY IT PLEASE THE COURT:

**Background**

Defendants, Knauf Gips Kg, Knauf Plasterboard (TIANJIN) Co., Ltd., Knauf Plasterboard

(WUHU), Co., LTD., and Knauf Plasterboard (DONGGUAN) Co., LTD[1] ("Knauf Defendants")

have made repeated allegations that they are not subject to personal jurisdiction in this Court.  This

issue is hotly contested by the PSC, and has not yet been presented to the Court for determination.

In anticipation of such motions practice, the Court instructed the parties to engage in meaningful

discovery regarding the personal jurisdiction issue.  Accordingly, on October 30, 2009, the

Plaintiffs' Steering Committee ("PSC") propounded upon the Knauf Defendants: a) Plaintiffs' First

---

[1]  Knauf Plasterboard (DONGGUAN) Co., LTD recently changed its name to Guangdong Knauf New
Building Materials Products Co., Ltd.  This motion is intended to apply to both entities.

Set of Interrogatories Concerning Jurisdictional Issues (Exhibit "A"), and b) Plaintiffs' First Request for Production of Documents Concerning Jurisdictional Issues (Exhibit "B"). Also, the Homebuilders' Steering Committee ("HSC") propounded personal jurisdiction interrogatories (Exhibit "E") and requests for production (Exhibit "F") on October 14, 2009, and the PSC adopted this discovery. (Exhibit "I").

Knauf Gips KG ("Knauf Gips") has been the only Knauf Defendant to provide formal discovery responses (Exhibits "C" and "D") to the PSC's aforementioned discovery. However, Knauf Gips' responses are deficient in several respects. Further, there are multiple deficiencies with the document productions made by all Knauf Defendants to date.

The Knauf Defendants' productions can be summarized as follows:

|  | Production Date | Bates Range |
|---|---|---|
| **GIPS** | January 4, 2010 | 0000001-0000032 |
|  | May 21, 2010 | 0000033-0000248 |
|  |  |  |
| **KPT** | October 15, 2009 | 000001-002665 |
|  | January 4, 2010 | 002666-011232 |
|  | March 5, 2010 | 011233-013519 |
|  | May 21, 2010 | 013520-025653 |
|  |  |  |
| **WUHU** | October 15, 2009 | 000001-000005 |
|  | January 4, 2010 | 000006-009848 |
|  | May 21, 2010 | 009849-010062 and 010066-018757[2] |

---

[2]  The PSC is unable to locate production bates number 010063 thru 010065.

Plaintiffs have been substantially impaired due to the deficiencies with Knauf Gips' formal responses as well as the complete absence of formal discovery responses from the other Knauf Defendants. Plaintiffs cannot "pin-down" the respective roles and relationships among the different Knauf Defendants and cannot properly or efficiently analyze the documents produced without formal discovery responses and complete answers. Additionally, there are several substantive problems with the Knauf Defendants' document productions. These problems include a complete lack of document grouping, and production of irrelevant and illegible documents.

In summary, the problems which have arisen relative to the personal jurisdiction discovery propounded upon the Knauf Defendants include:

A) Knauf Plasterboard (TIANJIN) Co., Ltd., Knauf Plasterboard (WUHU), Co., LTD., and Knauf Plasterboard (DONGGUAN) Co., LTD have not formally responded to interrogatories or requests for production of documents;

B) Answers to Interrogatories by Knauf Gips were non-responsive, incomplete, evasive and/or contradict documents which have been produced;

C) Responses to Requests for Production by Knauf Gips are either non-responsive or do not identify with particularity any documents or bates numbers. The responses must identify the particular documents and/or bates numbers which correspond to the individual plaintiffs' requests/responses;

D) Documents were not produced by the Knauf Defendants in the ordinary course of business and were not produced in any organized manner (i.e., documents were not produced by subject or custodial file), irrelevant documents were produced (i.e., it was a "document dump") and many documents were illegible or made no sense; and

E) Incomplete privilege logs have been produced and/or the privilege logs are deficient.

The parties have met and conferred on multiple occasions. The Court is very familiar with the prior attempts by the PSC to get discovery responses from the Knauf Defendants, as well as a discovery document production protocol. The amount of time it has taken just to receive an initial production of documents from the Knauf Defendants is frustrating and has delayed the plaintiffs

3

from proceeding with taking jurisdictional depositions and having the issue of jurisdiction over the

Knauf Defendants addressed by this Court.

A.    **KNAUF PLASTERBOARD (TIANJIN) CO., LTD., KNAUF PLASTERBOARD (WUHU), CO., LTD., AND KNAUF PLASTERBOARD (DONGGUAN) CO., LTD HAVE NOT FORMALLY RESPONDED TO INTERROGATORIES OR REQUESTS FOR PRODUCTION OF DOCUMENTS**

On October 30, 2009, the Plaintiffs' Steering Committee ("PSC") propounded the above

mentioned discovery upon Knauf Gips, Knauf Plasterboard (TIANJIN) Co., Ltd., Knauf

Plasterboard (WUHU), Co., LTD., and Knauf Plasterboard (DONGGUAN) Co., LTD: a) Plaintiffs'

First Set of Interrogatories Concerning Jurisdictional Issues (Exhibit "A"), and b) Plaintiffs' First

Request for Production of Documents Concerning Jurisdictional Issues. (Exhibit "B").   Knauf

Plasterboard (TIANJIN) Co., Ltd., Knauf Plasterboard (WUHU), Co., LTD., and Knauf Plasterboard

(DONGGUAN) Co., LTD, have each failed to provide any formal discovery responses.[3]

Accordingly, the PSC requests that this Court order the non-responsive Knauf defendants to

formally respond to the attached discovery propounded by the PSC on October 30, 2009.  (Exhibits

"A" & "B").  Similarly, the PSC adopted the discovery issued by and sent out by the Homebuilders'

Steering Committee ("HSC") (Rec. Doc. No. 3048, Exhibit I) and no formal responses have been

provided to the HSC discovery by defendants Knauf Plasterboard (Tianjin) Co., Ltd., Knauf

Plasterboard (Wuhu) Co., Ltd., and Knauf Plasterboard (Dongguan) Co., Ltd.  The PSC requests that

this Court order the non-responsive Knauf defendants to formally respond to the attached discovery

_____

[3]   The PSC acknowledges that Knauf Gips KG, Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., and Knauf Plasterboard (Dongguan) Co., Ltd. jointly provided objections and answers to Plaintiffs' First Set of Interrogatories and that the responses were provided "under penalty of perjury" and certified to be "true to the best knowledge and belief" by an authorized representative of Knauf Gips KG.

propounded by the HSC and adopted by the PSC.  (See Exhibits "E" and "F".)

**B.     ANSWERS TO INTERROGATORIES BY KNAUF GIPS ARE NON-RESPONSIVE, INCOMPLETE, EVASIVE AND/OR CONTRADICTORY**

On December 4, 2009, Knauf Gips provided its Objections and Answers to Plaintiffs' First Set of Interrogatories Concerning Jurisdictional Issues.  (Exhibit "C").  However, these answers were deficient in that they were non-responsive, incomplete, evasive and/or contradictory to documented facts.  The PSC lists the following interrogatories and responses (with specific arguments/reasoning following each interrogatory and response) to illustrate the deficiencies with Knauf Gips' discovery responses.

**Interrogatory No. 2**:

Has any company located in the United States served as an agent, affiliate or representative for You with regard to sales of Your Chinese drywall to United States purchasers?  If so, identify the company, along with any parents, subsidiaries, affiliates or agents of the company and describe the business in which the company and any of its parents, subsidiaries, affiliates or agents are or were engaged.

**Knauf's Objection and Answer**:

Knauf Gips objects on the grounds that Interrogatory No. 2 is overly broad and seeks information that is not relevant to the claim or defense of any party or likely to lead to the discovery of admissible evidence.  Knauf Gips further objects that the terms "served," "agent," "affiliate," and "representative" are vague.  Subject to its general and specific objections, Knauf Gips answers no.

**The PSC's Argument Regarding Interrogatory No. 2**:

First, it is not reasonable that Knauf Gips objects based upon relevance.  Whether or not a foreign company has agents, affiliates or representatives located in the United States is directly relevant to the issue of minimum contacts.  Knauf Gips' objection to certain words is equally

unreasonable.  The terms  "agent" ("a person or business authorized to act on another's behalf"),[4] "affiliate" ("a branch organization; a business concern owned or controlled in whole or in part by another concern;  a subsidiary"),[5]  and "representative" ("a person or thing that represents another or others; an agent or deputy: *a legal representative*"),[6] are standard business terms, well within the average business person's vocabulary, easily referenced, and certainly known by the average attorney.

Second, the substance of the answer - "no" - appears to be directly contrary to documents produced in this and/or related litigation.  In a March 2006 e-mail string, Knauf Plasterboard (Tianjin) Co., LTD ("KPT") confirms that it entered into a sole agent agreement with "Salomon" [the La Suprema Enterprise, Inc. and La Suprema Trading, Inc. representative] for Salomon to be KPT's sole agent in Florida for one year.[7] Knauf has also acknowledged entering into a 2006 "Sole Agent Contract" which KPT had with Rothchilt International Limited ("Rothchilt") in the amount of $8,505,000.00, making Rothchilt their "sole agent" buyers/distributors in "FLORIDA, USA."[8] According to the e-mail "The seller [Knauf  Plasterboard (Tianjin) Co., Ltd.] appoints buyer [Rothchilt International Limited] as sole agent of above plasterboard in Florida, USA."  Notably, the final version of this "Sole Agent Contract" has not been produced in this litigation.  Thus, the substance of the answer to the interrogatory is highly suspect and/or misleading (due to the fact that

---

[4] www.dictionary.com

[5] *Id.*

[6] *Id.*

[7] See Exhibit "J" at pp. 1 - 2.

[8] *See* Exhibit "K" at pp. 1 - 2.

6

not all Knauf Defendants have formally answered the interrogatory).

Third, since Knauf Gips' response to Interrogatory No. 2 is either wrong or misleading, it taints the other responses where Knauf Gips "refers the PSC to its answer to Interrogatory Nos. 1 and 2." Specifically, this reference to Interrogatory No. 2 was made in the responses to Interrogatory Nos. 3, 7 and 8.[9]

**Interrogatory No. 4**:

During the relevant time period, have any of your officers, directors, employees, representatives or agents visited the United States for the purpose of conducting business or engaging in any business activity relating to Chinese drywall? If so, identify the relevant officers, directors, employees, representatives or agents, the dates and length of their visit(s) to the United States, any persons or corporations they met with during their visit(s) and describe briefly the purpose of their visit(s).

**Knauf's Objection and Answer**:

Knauf Gips objects on the grounds that Interrogatory No. 4 is overly broad and seeks information that is not relevant to the claim or defense of any party or likely to lead to the discovery of admissible evidence. Knauf Gips further objects that the term "visited" is vague. Over its general and specific, Knauf Gips responds that as a defendant of claims relating to "Chinese drywall," employees and representatives of Knauf Gips have visited the United States to consult with Knauf Gips attorneys in defense of the claim.

Knauf Gips further responds that in November 2006, an employee of Knauf Gips, Prof. Hans Ulrich Hummel, was in the the United States unrelated to "Chinese drywall." At the request of KPT, Prof. Hummel met in Miami with several suppliers, contractors and homebuilders regarding odor complaints from KPT's drywall, including La Suprema Enterprise, Banner Supply Co., Coscan, GL Homes, Simonique LLC, WCI Communities, Inc. and S.D. & Associates Inc. Prof. Hummel visited two or three homes which were identified as being constructed with KPT drywall and conveyed the complaints to KPT.

**The PSC's Argument Regarding Interrogatory No. 4**:

First, it is not reasonable that Knauf Gips objects based upon relevance. Whether or not a

---

[9] *See* Exhibit "C" at pp. 9 - 11 (In response to other inquiries about U.S. contacts in Interrogatory Nos. 3, 7 & 8, Knauf Gips responded with objections and the following statement: "Subject to its general and specific objections, Knauf Gips refers the PSC to its answer to Interrogatory Nos. 1 and 2.").

foreign company's officers, directors, employees, representatives or agents visited the United States for the purpose of conducting business or engaging in any business activity relating to Chinese drywall is directly relevant to the issue of minimum contacts.  Knauf Gips' objection to certain terminology is equally unreasonable.  The term "visited" is well within any layperson's knowledge.

Second, the substance of the answer - "... Prof. Hans Ulrich Hummel, was in the United States unrelated to 'Chinese drywall...'" - is opposed to documents produced in this litigation as well as the remainder of the answer.  Contrary to Knauf Gips' claim, Prof. Hummel was clearly in the United States related to Chinese drywall.  In an e-mail string from November 2006, Prof. Hummel himself states: "...on the westcoast of US together with people from USG ... "[o]f course I am aware of big problems with Knauf boards from China."[10]  Moreover, he states that "[w]hat I have done so far is to forward board samples to Germany were we will investigate very quick the natur of the odour by gas chromatography."[11]  Prof. Hummel, the head of the RND for Knauf Germany, was in the United States, aware of the drywall problems, and directly was involved in addressing drywall issues in the United States.    Clearly, he was an "officer(s), director(s), employee(s), representative(s), or agent(s)" visiting "the United States for the purpose of conducting business or engaging in any business activity relating to Chinese drywall."

Third, the answer does not provide any of the requested information, including the dates or length of the visit, who met or the purpose of the visit, and continues to misstate facts by not including all of the different cities which Prof. Hummel visited during his trip.  As stated in the e-mails, Prof. Hummel was in Chicago, Dallas, "on the westcoast of the US" and was going to

---

[10] *See* Exhibit "L" at p. 3.

[11] *Id.*  Notably, no samples and no reports of any of the investigations have been provided, despite requests from the PSC for such samples and investigative reports relative to Chinese Drywall.

Miami.[12]  Nonetheless, the above formal answer only references Miami.  This begs the questions of:

- What other US cities did Prof. Hummel visit during this trip?

- What other people did Prof. Hummel meet with during this trip?

- Were other trips made to the US by Prof. Hummel or any other Knauf representative which were not included in the answer?

- Are there more communications?

Moreover, these inaccuracies and failures to fully and completely answer interrogatories that are very straight forward draws into question all of the other answers given by Knauf Gips, particularly those answers listed herein which are evasive, non-responsive and/or contradictory.

Fourth, this answer is inconsistent with the response which Knauf Gips provided to the Homebuilders' Steering Committee relative to the same issue.  Specifically, in response to a nearly identical question, Knauf Gips merely provided objections.[13]

**Interrogatory No. 11**:
Identify all United States patents you hold and all licensing agreements with United States companies, including any of Your subsidiaries, affiliates or agents.

**Knauf's Objection and Answer**:

Knauf Gips objects on the grounds that Interrogatory No. 11 is overbroad and seeks information that is not relevant to the claim or defense of any party or likely to lead to the discovery of admissible evidence.

---

[12] *Id.* at pp. 1 & 3.

[13] *See* Exhibit "G" at p. 4 ("HSC **Interrogatory No. 3**: Did Defendant have any officer, director, employee, agent, representative, servant or attorney present in the United States at any time during the Relevant Time Period? If so, please: a) identify each such person; and b) describe, in detail, the conduct engaged in by each such person ... **OBJECTION AND ANSWER**: Knauf Gips objects on the grounds that Interrogatory No. 3 is overly broad and seeks information that is not relevant to the claim or defense of any party or likely to lead to the discovery of admissible evidence.  Knauf Gips further objects to the extent Interrogatory No. 3 seeks information protected by the attorney-client privilege, attorney-work product, joint defense or any other applicable privilege, or confidentiality, governmental investigation, state secret or privacy laws.").

9

**The PSC's Argument Regarding Interrogatory No. 11:**

This response from Knauf Gips contains no substantive information.  Rather, it objects based upon relevance.  The PSC respectfully suggests that information relating to patents and/or licensing agreements are relevant to personal jurisdiction issues, including but not limited to the "minimum contacts" test.  Knauf Gips' response is inadequate, and a substantive response should be compelled.

**Interrogatory No. 15**:

Identify all of your marketing efforts in the United States or directed to the United States, including catalogs, brochures, samples, internet advertisements URLs, etc.

**Knauf's Objection and Answer:**

Knauf Gips objects on the grounds that Interrogatory. 15 is overbroad and seeks information that is not relevant to the claim or defense of any party or likely to lead to the discovery of admissible evidence.  Knauf Gips objects that the term "marketing efforts" is vague.  Subject to its general and specific objections, Knauf Gips responds that it does not direct marketing materials or advertisement to the United States.

**The PSC's Argument Regarding Interrogatory No. 15:**

First, it is not reasonable that Knauf Gips objects based upon relevance.  Whether or not a foreign company markets in or to the United States for the purpose of conducting business or engaging in any business activity relating to Chinese drywall is directly relevant to the issue of minimum contacts.  Knauf Gips' objection to certain terminology is equally unreasonable. The term "marketing" ("the act of buying or selling in a market; the total activities involved in the transfer of goods from the producer or seller to the consumer or buyer, including advertising, shipping, storing and selling."),[14] is well within any layperson's knowledge, easily referenced, and certainly within that of the average business person.

---

[14] www.dictionary.com

Second, the substance of the answer - "[Knauf Gips] ...does not direct marketing materials or advertisement to the United States" - is contrary to documents produced in this litigation.  For example, an October/November 2006 e-mail string shows Cecilia Wang (KPT) marketing to a construction company in Las Vegas, NV.[15]  Ms. Wang specifically states that KPT does "...export boards to USA both by bulk and containers..." and that KPT has "...exported to many US ports with a large variety of freight configurations for some years now...[16]  Ms. Wang also provides the potential U.S. customer with an "attached file" and a "certificate for gypsum plasterboard" (not included and/or not easily identifiable in Knauf's discovery responses).[17]  Ms. Wang also states that "...Knauf's certification of ISO and ASTM tests are authentic and are supported by a company with over 80 years of international experience."[18]

Third, this answer, that Knauf does not direct marketing to the U.S., is also contrary to the response which Knauf Gips made to the Homebuilders' Steering Committee relative to the same marketing issue.  Specifically, in response to a nearly identical question, Knauf Gips stated that "... Knauf Gips will produce documents responsive to Request No. 13 [regarding marketing or advertising in the U.S.]."[19]  The PSC asks, where are the documents?

**Interrogatory No. 16**:

During the relevant time period did You communicate with any person within the United States regarding the manufacture, sale, promotion, solicitation, warranty, or performance of

---

[15] *See* Exhibit "M" at pp. 2 - 6.

[16] *Id.* at pp. 3, 4 & 6.

[17] *Id.* at pp. 2, 3 & 4.

[18] *Id.* at p. 4.

[19] *See* Exhibit "H" at p. 9.

Chinese drywall?  If so, as to each communication:

      a.      Identify each person making the communication;
      b.      Identify to whom the communication was made;
      c.      Identify the type of communication;
      d.      Identify the substance or nature of the communication.

**Knauf's Objection and Answer:**

Knauf Gips objects on the grounds that Interrogatory. 16 is overbroad and seeks information that is not relevant to the claim or defense of any party or likely to lead to the discovery of admissible evidence.  Knauf Gips further objects to the extent the definition would require the production of documents protected by the attorney-client privilege, attorney-work product, joint defense or any other applicable privilege, state secret, governmental investigation or privacy laws.  Knauf Gips objects that the term "performance" is vague. Subject to its general and specific objections, Knauf Gips refers the PSC to its response to Interrogatory No. 4.

**The PSC's Argument Regarding Interrogatory No. 16:**

First, for the reasons previously listed relative to Interrogatory No. 4 above, this response is inadequate and/or misleading.  Moreover, the PSC specifically challenges Knauf Gips to fully answer this interrogatory or identify the specific bates numbered documents that are produced in response to this interrogatory.

Second, the substance of the answer - referring only to Answer to Interrogatory No. 4 (which references Prof. Hummell's November 2006 trip to the United States that was alleged by Knauf Gips to be "unrelated" to Chinese drywall) - is contrary to the documents produced in connection with this litigation.  Several documents show many different communications with people in the United States regarding the manufacture, sale, promotion, solicitation, warranty, or performance of Chinese drywall.  As just one of many examples of this, there is an e-mail string from October and November of 2006 between Cecilia Wang (Head of Export for the Knauf Tianjin plant) and Gordon Yeh (Marnell Corrao Associates - Las Vegas, NV Construction Company) where Ms. Wang: a) states

that Knauf "...exported to many US ports with a large variety of freight configurations for some years now...;" b) provided product certificates and testing reports for Knauf Chinese drywall; and c) provides performance information regarding Knauf Chinese drywall.[20] However, notably missing are documents relating to the "warranty or performance of Chinese drywall."

As shown above, there are several problems with Knauf Gips' formal responses to the PSC's October 30, 2009 Personal Jurisdiction Interrogatories, such that the responses do not provide the information requested. Moreover, in several instances, the responses contradict other documentation and/or responses provided to other parties, leaving the PSC without the proper and/or complete information as requested. These problems are magnified by the fact that the other Knauf Defendants did not provide any formal responses Interrogatories. Accordingly, the PSC seeks an order compelling Knauf Gips to provide accurate and complete responses to the PSC's October 30, 2009 Personal Jurisdiction Interrogatories, and for the other Knauf Defendants to provide formal responses immediately. Also, the PSC seeks complete responses to the discovery issued by the HSC and adopted by the PSC.

## C.   RESPONSES TO REQUESTS FOR PRODUCTION BY KNAUF GIPS ARE EITHER NON-RESPONSIVE OR DO NOT IDENTIFY WITH PARTICULARITY ANY SPECIFIC DOCUMENTS OR BATES NUMBERS.

Knauf Gips formally responded to the PSC's Personal Jurisdiction Requests For Production of Documents on December 4, 2009. (Exhibit "D"). In all, there were twenty eight (28) requests for production and responses. Knauf Gips' formal responses to requests for production can be separated into three (3) different categories: 1) Responses where they agree to produce documents

---

[20] *See* Exhibit "M" at pp. 2 - 6.

but do not specify, or identify in any way, the documents responsive to the particular request, 2) Objections where they will "consider" producing documents, and 3) Objections where they refuse to produce documents. The following is a category analysis of each of the above types of responses.

**1)    Responses where Knauf Gips Agrees to Produce Documents but does not Specify, or Identify in any way, the Documents Responsive to the Particular Request**.

The vast majority of Knauf Gips' responses fall into this category. The typical response includes an objection and then a statement that "Knauf Gips will produce documents responsive to this request."[21] The following is an exemplar request and Knauf Gips objection/response:

**Request No. 1**:

Documents sufficient to show Your ownership interest in, or affiliation with any Related Entity.

**Knauf's Objection and Response**:

Knauf Gips objects to Request No. 1 on the grounds that it is overly broad, vague and seeks information that is not relevant to the claim or defense of any party or likely to lead to the discovery of admissible evidence, in particular with respect to its objection to the term "Related Entity." Subject to its general and specific objections, Knauf Gips will produce documents responsive to this request.

**The PSC's Argument Regarding Request No. 1**:

The problem the PSC has with a response such as this, is that it provides absolutely no identification of specific documents or bates numbers/ranges which relate to this request and response. Thus, the PSC is left to guess as to which documents Knauf Gips is basing its response upon and results in an undue burden of trying to "read Knauf Gips' mind" relative to the documents produced. This significantly diminishes the value of the discovery responses and prejudices the PSC

---

[21] See Exhibit "D" at pp. 12 - 24.

in responding to the personal jurisdiction issue.

To put matters into further context, Knauf Gips was hyper-specific in its general objections to the point of objecting to words such as "Defendant," "Communication," "Meeting," and "Document."[22]   Nonetheless, Knauf Gips fails to provide any specificity with respect to the documents which it produced.  The PSC respectfully suggests that Knauf Gips should not be allowed to have it both ways.  Knauf Gips' requires hyper-specificity relative to words commonly used in the English language, and yet fails to identify specific documents or bates numbers/ranges which correlate to its individual production responses.

The PSC respectfully suggests that an appropriate response must include reference to specific documents and/or bates numbers/ranges.

### 2. Objections where Knauf Gips will "Consider" Producing Documents.

Two of Knauf Gips' responses fall into this category (Response Nos. 8 & 9).  The following is an exemplar request and Knauf Gips objection/response:

**Request No. 8**:

All documents submitted by or on behalf of You or any persons currently or formerly in Your employ to any department or agency of the United States government including, without limitation, any applications for visas, import, export or disposal authorizations or licenses, or currency, monetary or other financial transfers or transactions, or patents.

**Knauf's Objection and Response**:

Knauf Gips objects to Request No. 8 on the grounds that it seeks information that is not relevant to the claim or defense of any party or likely to lead to the discovery of admissible evidence.  Knauf Gips further objects to the extent it seeks documents protected by the attorney-client privilege and work product doctrine, joint defense or any other applicable privilege or limitation imposed on production by state secret, confidentiality, government investigation or privacy laws.  To the extent the PSC narrows this request to relevant

---

[22] *Id.* at pp. 1, 3 & 4.

documents, Knauf Gips will consider producing documents responsive to Request No. 8 that are not otherwise protected.

Request No. 9 and Knauf Gips' Objection/Response is substantially similar.

**The PSC's Argument Regarding Request No. 8:**

First,  it is not reasonable that Knauf Gips objects based upon relevance.  Whether or not a foreign company has any applications to a U.S. agency for visas, import, export or disposal authorizations or licenses, or currency, monetary or other financial transfers or transactions, is directly relevant to the issue of minimum contacts.  At the very least, this documentation may lead to further relevant information regarding personal jurisdiction factors.

Second, Knauf Gips' objection and response seems to suggest that the PSC's request should be more narrow.  However, it did not object in any way to the form of the request or that the request was too vague or overbroad.

Third, Knauf Gips improperly fails to produce documents and puts the burden on the PSC to change or narrow its request by stating that it will "consider" producing documents if the PSC "narrows this request to relevant documents."  The contradiction with the objection and response is that Knauf Gips claims that the documentation sought is irrelevant while at the same time requesting that the request be "narrowed."  The proper response is for Knauf Gips to produce the documents which are responsive to this request and/or state that it does not have documents responsive to this request.  Once the PSC has an opportunity to view the Knauf Gips production, it will determine if an additional inquiry is needed, and propound further discovery accordingly.  In fact, this was explained by the PSC in prior meet and confers.

     **3.**     **Objections where Knauf Gips Refuses to Produce Documents.**

Two of Knauf Gips' responses fall into this category (Response Nos. 7 & 10).  The PSC will address the objections relative to this category in connection with the privilege log matter once it is ripe.

**D.**     **DOCUMENTS WERE NOT PRODUCED BY THE KNAUF DEFENDANTS IN ACCORDANCE WITH THE FEDERAL RULES OF CIVIL PROCEDURE AND WERE NOT PRODUCED IN AN ORGANIZED MANNER.**

It is apparent that the document productions to date from the various Knauf Defendants were a "document dump."  The documents were not produced by subject or custodial file, irrelevant documents were produced, and many documents were illegible or made no sense.  This has caused significant prejudice to the PSC in attempting to review said documents.  The document productions are even more problematic in the context of the defendants not providing formal responses and/or providing only generic responses.

Rule 34(B)(2)(E) sets forth the format by which a producing party is to provide documents or electronically stored information.  The Rule states that:

> **"(E)**   *Producing the Documents or Electronically Stored Information.* **Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:**
>
>      **(i)**     **A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request; . . ."**

As stated previously, the production made by the Knauf Defendants were merely a "document dump."  The PSC has had no alternative but to fish through all of the production on a page by page basis.  The documents were not produced as they are kept in the usual course of

business.  The documents were not organized and labeled to correspond to the categories in the request which is what is required by the Federal Rules.  The Knauf Defendants must identify the specific bates ranges of their production that correspond to the PSC's specific document request.

Many different documents were produced by the Knauf Defendants which clearly have nothing to do with this matter.  An example of the irrelevant documents produced is an undated e-mail from an unidentified person to "dear boy" involving checking e-mail, scratching and teeth-marks.[23]  Additionally, many different documents produced were illegible and/or made no sense.  An example of this type of document is the attached Exhibit "O," many lines of which contain the following kind of language: "0MBR4KGxGuEAAAAAAA..."[24]

The irrelevant, illegible and/or non-sensical documents produced by the Knauf Defendants have significantly prejudiced the PSC.  These documents greatly increase the time required to review and analyze the documents.

## E.    INCOMPLETE AND/OR DEFICIENT PRIVILEGE LOGS HAVE BEEN PRODUCED BY THE KNAUF DEFENDANTS

Pretrial Order No. 15 governs the treatment of all privileged or work product materials in this litigation.  This order requires in pertinent part that:

> ...The producing party shall produce a privilege log within seven (7) days after the production of documents for which the privilege is asserted to apply.  For each document for which a Producing Party asserts that a privilege applies, the Producing Party must include in the privilege log the information required by Federal Rule of Civil Procedure 26(b)(5), including the following: ... e. a statement as to whether the entire document has been redacted/withheld or only a portion has been redacted, and

---

[23] *See* Exhibit "N" at p. 1.

[24] *See* Exhibit "O" at p. 2.

the bates number of the document...[25]

The Knauf Defendants make multiple claims of attorney-client privilege in their December 4, 2009 interrogatory answers[26] and responses to requests for production of documents.[27]  However, only recently (May 26, 2010) have Knauf WUHU and Knauf Gips produced privilege logs to the PSC.[28] These privilege logs are deficient in several respects.

First, neither of the privilege logs provide a statement or any information "as to whether the entire document has been redacted/withheld or only a portion has been redacted."  This is in direct violation of Pretrial Order No. 15, Section 1(e).

Second, neither of the privilege logs provide designations of which individuals are attorneys and which are not.

Third, there appear to be documents missing from the privilege logs.  For example, a November 22, 2006 e-mail regarding a "South Florida issue" references Doug Sanders and the upcoming production of written reports.[29]  However, there is no entry in either privilege log relating to Doug Sanders or any such reports.[30]  Thus, it appears that the privilege logs which have been produced are incomplete.  Alternatively, the PSC has received no such reports regarding the "South Florida issue."

----

[25] *See* Pretrial Order #15 at p. 1.

[26] *See* Exhibit C at pp. 13 & 14

[27] *See* Exhibit D at pp. 15, 16, 18, 19, 20, 21 & 23 (RFPD Response Nos. 10, 17, 18, 19, 20, 21, 22, 23, 24

[28] See Exhibit "P" (Knauf WUHU Privilege Log filings) and Exhibit "Q" (Knauf Gips Privilege Log filings).

[29] See Exhibit "R" at p. 1.

[30] See Exhibits "P" and "Q."

Fourth, the PSC is extremely concerned over Knauf's apparent attempts to maintain secrecy and confidentiality over the problematic drywall. Apparently, Banner Supply had a number of dealings with Knauf Plasterboard (Tianjin) over the problematic materials, yet the Knauf entities have failed to make full disclosure of all of its dealings in the United States regarding such matters. As an example, the Sarasota Herald Tribune issued an article on June 5, 2010, Exhibit "S," identifying an "entourage" of lawyers, environmental consultants and others that showed up at meetings, as well as agreements that apparently were reached. This information should either be produced outright or at the very least be contained in a privilege log.

WHEREFORE, the PSC respectfully requests that this Honorable Court set a hearing at the June 24, 2010 Status Conference to address the instant motion to compel and to enter an appropriate Order in connection therewith.

Respectfully submitted,

Dated: June 9, 2010

/s/ Leonard A. Davis
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
Stephen J. Herman, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

20

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of June, 2010.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com