Lenny Davis

| | |
|---|---|
| **From:** | Debbie Murphy [DMurphy@lfsblaw.com] |
| **Sent:** | Tuesday, June 08, 2010 9:33 AM |
| **To:** | Russ Herman; Lenny Davis |
| **Cc:** | Fred Longer |
| **Subject:** | FW: FYI--Unsealed drywall documents show how information was stifled |

From Arnold –

FYI


Debbie Murphy
Levin, Fishbein, Sedran & Berman
Counsellors at Law and Proctors in Admiralty
510 Walnut Street - Suite 500
Philadelphia, PA 19106-3697
Tele: 215-592-1500 - Fax: 215-592-4663
www.lfsblaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Levin, Fishbein, Sedran & Berman and may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, please delete the message and understand that any dissemination, distribution or copying is strictly prohibited.

**From:** Fuson, Jennifer [mailto:jennifer.fuson@justice.org]
**Sent:** Monday, June 07, 2010 3:54 PM
**To:** Chinese Drywall Litigation Group
**Subject:** [chinese_drywall] FYI--Unsealed drywall documents show how information was stifled

# Unsealed drywall documents show how information was stifled

LITIGATION: Suspect board was offered to a supplier for free, the files show

## By Aaron Kessler, Sarasota Herald Tribune and JOAQUIN SAPIEN, ProPublica

Published: Saturday, June 5, 2010 at 1:00 a.m.
Last Modified: Friday, June 4, 2010 at 10:20 p.m.

( page all of 4 )

Once it had replaced the tainted **Chinese drywall** causing a furor among builders and suppliers in South Florida during 2006, Knauf Plasterboard Tianjin Co. Ltd. offered the problematic

6/8/2010

material back to its main supplier with the caveat that it not be sold in the United States.

Donald "Mickey" Coblentz, an executive with Miami-based Banner Supply, said in a sworn deposition unsealed by a judge on Friday that Knauf officials tried to resell the suspect board after taking it back from Banner in 2007, but nobody wanted it.

Knauf subsequently offered the board back to Banner for free, Coblentz said.

"They offered me the drywall for free and I said no. Then they came back and said if we give you the board we want you to sell it overseas," Coblentz said. "I go, you take care of your board. I don't want it."

The stockpile remains in a warehouse under Knauf's control, with the company paying $7,300 each month to house it there.

The exchange between Coblentz and Knauf was revealed Friday in depositions unsealed by a Miami-Dade circuit court judge. The judge also unsealed a January 2007 settlement agreement signed by Knauf and Banner representatives to keep the matter secret.

The documents show that Knauf agreed to replace Banner's remaining supply of Knauf drywall with 54,000 American-made drywall boards worth $557,000.

That amount of drywall was actually more than the supply of Knauf board that remained in Banner's warehouses. In Coblentz's view, the extra board was an added payoff to Banner.

As the Herald-Tribune and ProPublica, a nonprofit journalism organization, reported Sunday, a flurry of activity unfurled across three continents in late 2006 after Florida home builder WCI Communities, which bought some of the Knauf drywall from Banner, reported that noxious odors from the wallboard were keeping some buyers from closing on their sales.

The builder began planning to rip out the drywall and replace it with American brands but never told other customers or government regulators about the problem.

Banner and Knauf took a similar tack and formalized that approach in their confidentiality agreement.

The now-unsealed document makes clear for the first time just how complete Knauf wanted the blackout on information to be.

It contains sweeping confidentiality provisions that prohibited Banner from discussing both the odor problem and any potential health issues related to the Knauf board.

Banner also agreed not to sue Knauf or help others sue the company with claims and liabilities not just for smells, but a host of other issues like "medical monitoring," "personal injury," "stigma" and negligence.

The agreement also barred Banner from disclosing what had happened to "any person, firm, corporation or any entity whatsoever," especially the news media. Banner was prohibited from telling "the press and public media (i.e. any employees or agents of newspapers, television stations, radio stations or other medias), any organization or association, or any internet websites ('home pages' or 'chat rooms'), of the facts and circumstances of their claims."

6/8/2010

The agreement also appears to block Banner from informing any government agency, including health and consumer authorities, only allowing for certain disclosures as required to "governmental taxing authorities."

Knauf claimed that a breach of the confidentiality provisions "could cause irreparable harm to Knauf Tianjin." Any breach would entitle Knauf to cancel further shipments of domestic drywall to Banner under the settlement and impose a penalty of $5,000 per breach, plus attorneys' fees.

Donald Hayden, Knauf's Miami attorney, told the Herald-Tribune and ProPublica last week that the agreement would not have barred Banner from telling its story to the public or informing other customers or industry groups.

But the settlement document itself indicates otherwise.

Knauf did not respond to a request for clarification, but said in a Friday statement that it had "determined that the odor emitted by its drywall was that of natural gypsum," and that it "did not have information from other customers that there were complaints of odor in KPT drywall sold to those customers."

"KPT can only act on complaints filed by its customers, which is why it responded to Banner Supply's request to replace its drywall," the statement said.

In a civil case against Banner set to begin Monday, the plaintiffs' attorneys had asked circuit court Judge Joseph P. Farina to unseal the agreement along with Coblentz's deposition and other documents.

In that deposition, Coblentz describes how Mark Norris, the investigator that Knauf Tianjin assigned to respond to the odor complaints in 2006, initially promised Coblentz that he would help take care of the situation.

But Norris caught Banner executives off-guard when he showed up with an "entourage" of lawyers, environmental consultants and others at the companies' first meeting, Coblentz said. The result was a heated, profanity-laced exchange between the two men in a Broward County parking lot.

Coblentz said Norris told him that he had received a phone call in Hong Kong while he was changing planes en route to the United States: Norris would no longer be going to Florida alone.

"He says, 'Mick, everything's changed,'" Coblentz recounted.

Norris said that the Knauf family itself, in Germany, was "not happy about what's going on here" because their name was "highly respected in the world," Coblentz said. Knauf is a privately held company controlled by the family of the same name.

The Knauf family was "taking this personal" that "someone was badmouthing their product" and that they would "tear apart every house that they want" and "spend every penny it takes" to fix the situation, Norris told Coblentz.

"He said the bottom line is that the Knaufs take these accusations personal and they're going to prove that their product is -- there's nothing wrong with it."

6/8/2010

**Jennifer Fuson**
**Press Secretary**
**American Association for Justice**
*Formerly ATLA*
**777 6th St, NW | Washington, DC 20001**
**Direct: 202-944-2896**
**Cell: 202-834-6209**
**Jennifer.Fuson@justice.org**


+-+-+-+-+-+-+-+-+-+-+ List Instructions +-+-+-+-+-+-+-+-+-+-+-+-+-+
Before replying, *PLEASE*, delete all instruction lines.

If you become aware of a violation of any AAJ listserver policy, please report those violations immediately to us by telephone at 202-965-3500, ext 700 or by email to listmanager@justice.org.

The information posted on this list server is confidential, is protected under the Electronic Communications Privacy Act, 18 USC sections 2510-2521, and may also be protected by attorney-client and/or attorney/work product privileges. It is intended only for the use of the individuals licensed to have access to this list-server and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this information or any other reader of the list server is not a permitted member, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this information in error, please return the original message to us at listmanager@justice.org.


To unsubscribe, forward this message to listmanager@justice.org.


6/8/2010