**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: **CHINESE-MANUFACTURED** | * | **MDL Docket No. 2047** |
| **DRYWALL PRODUCTS** | * | |
| **LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| | * | |
| | * | **MAG. JUDGE WILKINSON** |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THIS DOCUMENT RELATES TO:** *Campbell-Clement/Schexnaydre v. Knauf Plasterboard (Tianjin) Co., Ltd, et al*  Case No. 09-7628

**KNAUF PLASTERBOARD (TIANJIN) CO. LTD'S**
**MEMO IN OPPOSITION TO THE PLAINTIFFS' MOTION IN LIMINE**

Knauf Plasterboard Tianjin Company, Limited ("KPT") submits this memorandum in opposition to the plaintiffs' motion in limine (the "Motion") (Doc. 3701) seeking an order from this Honorable Court "precluding the defense from introducing any evidence about or discussing the property located at 1049 Clairise Court as a 'control house.'" (Motion p. 1). As the Motion expressly states from the outset "[t]his is a problem of plaintiffs' own making" and the plaintiffs now ask the court to correct their mistake. *Id.* In effect, the plaintiffs' "problem" is that their decision to designate the residence at 1049 Clairise Court as a "control house," i.e. a home that does not contain any contaminated drywall, has backfired on them. Plaintiffs are unsatisfied with the results they obtained from samples taken from the "control house" because such results undermine their own experts' opinions and support the arguments of KPT that all homes, even ones without contaminated drywall, have ambient levels of sulfur. The court simply should not grant the plaintiffs' Motion based on nothing more than the plaintiffs' confession that they made

a mistake and their argument that as a result, KPT should be precluded from introducing such evidence.

## **ARGUMENT**

This matter involves residences located at 612 Ridgewood Street, Metairie, Louisiana (the *Clement* residence) and 1032 Clairise Court, Slidell, Louisiana (the *Campbell* homes) that allegedly have contaminated Chinese drywall.   In order to establish a baseline, control level of sulfur present in a non contaminated Chinese drywall residence, the plaintiffs picked the residence located at 1049 Clairise Court, Slidell, Louisiana,[1] which is now at issue in the Motion. It should first be noted that this "control house" was picked by the *plaintiffs* and designated as such in plaintiffs' expert reports.   The Motion argues that "Defendant had many avenues available to it to prove ambient levels of sulfur," yet fails to inform the Court that it was the plaintiffs' choice, and theirs alone, as to which home they wanted to designate as a "control house" in order to support their claim that such a home, without allegedly defective Chinese drywall, would not have any ambient levels of sulfur present. (Motion, p. 1).

The absence of contaminated drywall in the "control house" was confirmed back in May of 2009, when an independent third party contractor performed a drywall assessment and issued its report, a copy of which is attached hereto as Exhibit A.   As part of the drywall assessment, multiple hydrogen sulfide gas readings were taken at various parts of the "control house."   Each and every one of those test readings measured less than 1 part per million for the presence of sulfur.   (*Id.*).   More importantly, "[t]here were no areas of visibly stamped sheetrock observed inside" the control house. (*Id.* p. 10).   Therefore, there was no evidence of contaminated Chinese drywall, and more specifically any KPT manufactured Chinese drywall, in the control house. *Id.*

---

[1]       The control house selected by the plaintiffs is also owned by plaintiff *Campbell* and is located in the same development as 1032 Clairise Court.

Throughout this litigation, the plaintiffs' experts have relied extensively on this "control house" for the basis of their expert opinions. Plaintiffs' expert, Alexis Mallet, originally inspected the "control house" in April 2010 and removed numerous samples that were designated "JC-Control," photographed and made available to plaintiffs' other corrosion and engineering experts for testing and analysis. (Copies of photographs of the samples were attached to Mallet's expert report as part of his reliance materials and are attached hereto as Exhibit B. For example, plaintiffs' corrosion science expert, Donald Galler, was provided certain samples in preparation of his expert report, including one designated as JC-Control-3, which was a light switch taken from the "control house." (See expert report of Donald Galler, attached hereto as Exhibit C, p. 1, 4-5).[2] In his expert report, Mr. Galler states that EDS testing of the sample from the control house, a home without contaminated Chinese drywall, revealed "small, but measurable sulfur on the surface of the contact. The values were above 2% atomic ratio (with respect to silver) and this is well above the detection threshold of the EDS system. . . EDS analysis showed only trace amounts of sulfur, less than 1% but these were still distinguishable from zero levels." (Galler report, pp. 4-5). Mr. Galler summarized the significance of this by noting that "(1) [t]he control sample has small but measurable amounts of sulfur on the silver contact surface of the switch and (2) [t]race amounts of sulfur were found on the copper wire in the control sample." (*Id.* p. 5). Therefore, despite the fact that the "control house" does not contain any contaminated Chinese drywall, Mr. Galler still found trace amounts of sulfur.

---

[2]     Similarly, plaintiffs' expert, Bradley Krantz, noted in his report that he had been provided with a sample duplex receptacle and wires (designated as JC-control-5) taken from a "Control (Non-CDW) Campbell Rental Property" located at 1049 Clairise Court. A copy of the relevant pages from Mr. Krantz's report is attached hereto as Exhibit D.

Plaintiffs' motion is nothing more than an attempt by the plaintiffs to distance themselves from these test results, which run counter to the plaintiffs' theory of the case. There is absolutely no evidence presented in the plaintiffs' Motion to support this conclusion. As noted above, the third party independent contractor who conducted a drywall assessment in May, 2009 found no evidence of any contaminated Chinese drywall. None of the plaintiffs' experts have even issued a report stating that they now believe that the "control house" does in fact contain Chinese drywall. In fact, Mr. Galler testified that he did not know, one way or the other, whether there was any Chinese drywall in the control house. (See deposition of Donald Galler, attached hereto as Exhibit E, p. 87).

Plaintiffs assert that testing has now "confirmed that there is contaminated drywall in" the control house." (Motion p. 2). Curiously absent from the motion is any specific information regarding such testing. No specific test results are identified or attached to the Motion. No photographs of the samples taken and tested are attached to the Motion. KPT is unaware of any testing conducted on any samples of the drywall from the control house other than that performed by First Environmental Laboratories on June 7, 2010.[3] The results of such testing merely provided the levels of Strontium present in samples allegedly taken from the control house. (A copy of the First Environmental Laboratories Report is attached hereto as Exhibit F). These test results have never been interpreted by any of plaintiffs' experts and there is no evidence in the record to suggest that the mere fact that the samples have levels of Strontium necessarily indicates that there must be contaminated Chinese drywall in the home. In fact, Strontium is present in domestic drywall, and it has long been plaintiffs' position that Strontium levels do not accurately predict the presence of problematic Chinese drywall. Plaintiffs' Motion

---

[3]       KPT is not aware of any testing conducted on May 7, 2010 and believes this may have been a typographical error in the Motion.

is therefore based entirely on testing that is not presented to the Court and which has never been interpreted or analyzed by even their own experts to support their argument (much less KPT's experts).  There simply is no evidence before this Court to show that the control house contains contaminated Chinese drywall.  Moreover, on June 14, 2010, KPT's experts, Dr. Robert Sproles and Dr. Matt Perricone, inspected the control house.  Dr. Sproles performed the visual inspection of electrical wiring, switches and receptacles set forth in his expert report.  Dr. Perricone, a corrosion engineer, inspected the HVAC and electrical system.  Neither found any evidence that Chinese drywall is present in the control house.  Dr. Sproles and Dr. Perricone will issue supplemental reports setting forth their findings.

Plaintiffs designated the control house as such, tested it, and plaintiffs' experts rely on those test results.  The fact that plaintiffs have now figured out that they do not like the results is no basis for excluding their own evidence.  The evidence at issue is directly probative of a key issue – whether there are ambient levels of sulfur in non-contaminated homes.  This evidence should be allowed to be put before the jury and, for the reasons set forth herein, the plaintiffs' Motion should be denied.

Respectfully submitted,


BY:  s/Kerry J. Miller_____
MILES P. CLEMENTS (#4184)
PETER E. SPERLING (#17812)
KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
PAUL C. THIBODEAUX (#29446)
FRILOT L. L. C.
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504)599-8194
Facsimile:  (504)599-8145
Email: kmiller@frilot.com

-AND-

DONALD J. HAYDEN (FL Bar No. 0097136)
BAKER & MCKENZIE LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, FL  33131
Telephone:    (305) 789-8966
Facsimile:    (305) 789-8953
Email:  donald.j.hayden@bakernet.com

DOUGLAS B. SANDERS (IL Bar No. 6256621)
RICHARD M. FRANKLIN (IL Bar No. 0864390)
BAKER & MCKENZIE LLP
130 E. Randolph Drive
One Prudential Plaza
Chicago, IL  60601
Telephone:    (312) 861-8075
Facsimile:    (312) 698-2375
Email:  douglas.b.sanders@bakernet.com

Counsel for Defendant, Knauf Plasterboard
(Tianjin) Co., Ltd

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Plaintiffs'
Liaison Counsel, by email, and to all parties in the *Campbell and Clement* proceeding by email
and by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-
Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States
District Court for the Eastern District of Louisiana under seal, on this 15th day of June, 2010.

_____ s/Kerry J. Miller _____