**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED DRYWALL          MDL No. 02047
        PRODUCTS LIABILITY LITIGATION          SECTION L

                                                   JUDGE FALLON
                                                   MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

SEAN and BETH PAYTON, *et al*. v.
KNAUF GIP KG, *et al*.,
Case No. 2:09-cv-07628-EEF-JCW

_____/

**DEFENDANT R. FRY BUILDERS, INC.'S MOTION TO DISMISS THE AMENDED**
**OMNIBUS CLASS ACTION COMPLAINT, WITH PREJUDICE;**
**WITH INCORPORATED MEMORANDUM OF LAW**

      Defendant R. Fry Builders, Inc. ("Fry"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the Amended Omnibus Class Action Complaint (commonly referred to as the "Payton" Complaint) served by Plaintiffs **Michael and Sarah Hary** (the "Harys") and **Juan and Irena Mercado** (the "Mercados") (collectively, the "Plaintiffs"), with prejudice.  This Motion should be granted for the reasons set forth in the following Memorandum of Law.

**MEMORANDUM OF LAW**

      Plaintiffs have added Fry – the Florida builder that constructed their two homes – to the more than 400 defendants named in the Amended Omnibus Class Action Complaint filed May 18, 2010 (the "Omnibus Complaint"),[1] even though there is no evidence, and indeed no allegation, that the construction of their respective homes was in any way deficient.  Plaintiffs want compensation for their drywall, yet it is beyond dispute that Fry had <u>nothing</u> to do with the

---

[1]      This Memorandum cites to the Amended Omnibus Complaint as "Cmplt. ¶ __."

manufacture, marketing or distribution of that drywall.  Fry, in other words, does not belong in this lawsuit.

The futility of the claims asserted against Fry underscores this point.  In a shotgun pleading that makes no effort to distinguish between Fry and the entities actually responsible for the drywall, Plaintiffs have offered a laundry list of generic common law and statutory theories. Every one of these claims against Fry, however, should be dismissed as fatally defective pursuant to Rule 12(b)(6).

## I. BACKGROUND

### A.   Plaintiffs' Allegations Against Fry.

The Omnibus Complaint heedlessly lumps together thousands of parties over more than 500 pages of truly boilerplate allegations.  Specifically, Plaintiffs allege the following eleven claims[2] against Fry:  Negligence (Count I, ¶¶ 2640-47); Negligence Per Se (Count II, ¶¶ 2648-54); Strict Liability (Count III, ¶¶ 2655-72); Breach of Express and/or Implied Warranties (Count IV, ¶¶ 2673-80); Breach of Implied Warranty of Habitability (Count VI, ¶¶ 2693-99); Breach of Contract (Count VII, ¶¶ 2700-03); Private Nuisance (Count XI, ¶¶ 2735-41); Negligent Discharge of Corrosive Substance (Count XII, ¶¶ 2742-48); Unjust Enrichment (Count XIII, ¶¶ 2749-52); Violation of Florida's Deceptive and Unfair Trade Practices Act (Count XIV,

---

[2]     There are fifteen Counts in the Omnibus Complaint, but only eleven of them arguably apply to Fry.  The four remaining Counts do not.  Specifically, Count V (for breach of warranty under Florida's condominium code) does not apply to Fry because Plaintiffs allegedly purchased residential homes, not condominiums.  Cmplt. ¶¶ 2681-92.  Count VIII applies to "Louisiana Home Builders Only," and no one disputes that Fry resides in Florida.  *Id*. ¶¶ 2412 & 2704-10. Count IX ("Redhibition – by Louisiana Plaintiffs") does not apply because Plaintiffs are allegedly residents of Florida, not Louisiana.  *Id*. ¶¶ 378, 381 & 2711-20.  Finally, Count X (Louisiana Products Liability Act) applies solely to "Manufacturing" or "Distributor" Defendants, whereas the Omnibus Complaint identifies Fry as a "Developer/Builder" Defendant. *Id*. ¶¶ 2412 & 2721-34.

¶¶ 2753-57); and Equitable and Injunctive Relief and Medical Monitoring (Count XV, ¶¶ 2758-70).  Each of these claims is governed by and arises under the law of Florida.[3]

**B.      The Governing Legal Standard.**

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the Complaint, even if proven true, would not entitle the plaintiff to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12.  Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions."  *Id*. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## II. ARGUMENT

Each of the causes of action asserted against Fry should be dismissed pursuant to Civil Rule 12(b)(6) because none of them state a claim for relief.  The balance of this Memorandum addresses the incurable defects in each of Plaintiffs' eleven claims against Fry.

**A.      Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII and XV) are barred in whole or in part by the Economic Loss Rule.**

The Harys and the Mercados are both indisputably in privity of contract with Fry with regard to the construction of their respective homes.  Cmplt. ¶ 2701.

---

[3]      Because Plaintiffs filed their claims against Fry directly in the Eastern District of Louisiana – rather than filing in a Florida court and having the matter transferred to this forum – this Court should apply the choice-of-law rules of Louisiana.  *See Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 n.6 (5th Cir. 1981).  Under Louisiana's choice-of-law rules, Florida has, by far, the most significant relationship with the dispute.  Plaintiffs' alleged drywall injuries occurred in Florida, the subject properties are located in Florida, and both the Plaintiffs and Fry reside in Florida.  *See* Cmplt. ¶¶ 378, 381 & 2412; *Gulf States Utilities Co. v. NEI Peebles Elec. Prods., Inc*., 819 F. Supp. 538, 552-53 (M.D. La. 1993) (discussing Louisiana choice of law factors and statutes).  Florida substantive law therefore governs each of Plaintiffs' claims against Fry.

The home owned by the Harys is located at 1922 SW 30th Street, Cape Coral, Florida.  Cmplt. ¶ 378.  A copy of the Construction Agreement between the Harys and Fry is attached to this Memorandum as "**Exhibit A**."  The agreement is dated March 14, 2005, and it lists Michael and Sarah Hary as the "Owners / Purchasers" and Fry as the "Builder." The Profile Form that the Harys filed with this Court sheds further light on their allegations.  A copy of that form is attached hereto as "**Exhibit B**."  In it, the Harys describe their home as a 3,069 square foot, four-bedroom, three-bathroom Florida residence.  *See* Exh. B, pg. 2.  The form states that the home was completed in August 2006, and that Plaintiffs moved in August 2006.  *Id*. pg. 3.  The Certificate of Occupancy for the Harys' home was issued on August 8, 2006.  *See* Certificate of Occupancy (attached as "**Exhibit C**").[4]

The home owned by the Mercados is located at 1226 NE 10th Lane, Cape Coral, Florida. Cmplt. ¶ 381.  A copy of the Construction Agreement between the Mercados and Fry is attached to this Memorandum as "**Exhibit D**."  The agreement is dated April 26, 2005, and it lists Juan and Irena Mercado as the "Owners / Purchasers" and Fry as the "Builder."  The Profile Form that the Mercados filed with this Court sheds further light on their allegations.  A copy of that form is attached hereto as "**Exhibit E**."  In it, the Mercados describe their home as a 2,626 square foot, three-bedroom, two-bathroom Florida residence.  *See* Exh. E, pg. 2.  The form states that the

---

[4]      The fact that Plaintiffs chose not to attach these documents to the Omnibus Complaint does not prevent the Court from considering them now.  The Court can and should consider these instruments because they are undeniably central to Plaintiffs' claims against Fry and – at least with respect to the Certificate of Occupancy – publicly available.  *See In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp*., No. 09-3835, 2010 WL 334533 *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Federal Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint.").

home was completed on December 22, 2006, and that Plaintiffs moved in on December 30, 2006. *Id.* pg. 3. The Certificate of Occupancy for the Mercados' home was issued on December 26, 2006. *See* Certificate of Occupancy (attached as "**Exhibit F**").

Because both of the Plaintiffs are in privity of contract with Fry, the Economic Loss Rule (or "ELR") bars Plaintiffs from circumventing their contractual arrangements through allegations in tort. *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 & n.1 (Fla. 2004). Florida law applies the ELR in two contexts: "(1) the contractual privity ELR where two parties are in privity of contract, and (2) the products liability ELR where a defective product causes damage, but only to itself." Order & Reasons (January 13, 2010) at 22.[5] This Court has explained how the contractual privity ELR applies to homebuilders like Fry:

> The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contractor breach, and in other limited circumstances. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.

*Id.* at 30 (citation omitted) (emphasis added). Underlying the contractual privity ELR is the common-sense notion that "contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." *Indemnity Ins. Co.*, 891 So. 2d at 536-37.

The Harys and Mercados assert numerous tort claims in the Omnibus Complaint, including Negligence (Count I), Negligence Per Se (Count II), Strict Liability (Count III), Private Nuisance (Count XI), Negligent Discharge of a Corrosive Substance (Count XII), Unjust Enrichment (Count XIII) and Medical Monitoring (Count XV). The ELR intercepts each of

---

[5]     The Court's January 13, 2010 "Order & Reasons" (MDL No. 2047, Section L) applies by its terms to all drywall MDL cases pending before the Court, including this one.

these claims, however, because "the alleged duty breached is derived from the contractual relationship" between the parties. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co*., 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (internal marks omitted). The central conceit of every one of the Harys' and Mercados' tort claims is that Fry built their homes with defective Chinese-manufactured drywall. *E.g.,* Cmplt. ¶ 2702. Because that alleged wrong is derived from the parties' contractual relationships, it cannot give rise to their tort claims.

Furthermore, and aside from the question of privity, neither the Harys nor the Mercados can sue in tort for economic losses. Florida courts have defined economic loss in this context as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain." Order & Reasons at 22 (internal marks and citation omitted). In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc*., 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id*. at 1247. Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier. *Id*. at 1246-48.

The same reasoning applies here. Regardless of whether they are in privity with Fry, Plaintiffs cannot sue Fry in tort for purely economic losses. As a matter of law, the economic loss rule limits them to recovering non-economic losses (e.g., for personal injury) and damages

to property other than the houses themselves.[6]  *See Casa Clara*, 620 So. 2d at 1247-48.  Plaintiffs must therefore replead their tort claims to seek only non-economic losses.  *Cf.* Cmplt. ¶ 2647 (seeking general "damages" on negligence count).

**B.     Plaintiffs' negligence allegations (Count I) are false and improperly pleaded.**

Plaintiffs' negligence claims (Count I) really illustrates why Fry does not belong in this lawsuit.  The Omnibus Complaint alleges that Fry somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question.  Cmplt. ¶ 2641.  The Complaint further alleges that Fry had a duty to provide Plaintiffs with certain warnings about the drywall.  *Id.* ¶ 2644.

Besides being intercepted by the economic loss rule (*see* discussion, *supra*), these allegations are indisputably false.  Fry, for example, did not "design," "manufacture," or "import" any drywall.  Yet even assuming the truth of these specious allegations, Plaintiffs do not state a claim for relief.  Under Florida law, a negligence claim requires the plaintiff to plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached.  *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case.").  Plaintiffs can allege neither prerequisite.

To begin with, Fry owed no duty of care with respect to Plaintiffs' drywall.  Under Florida law, even manufacturers, retailers and distributors – all of whom arguably bear a *greater* responsibility toward their products than a contractor like Fry – have a duty to inspect or warn

---

[6]     Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses. The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  Order & Reasons at 19-20.

only when the product is considered "inherently dangerous."  *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[7]

In the same vein, Fry cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects.  *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991).  The alleged defects in the drywall are plainly "latent" (*e.g.,* Cmplt. ¶ 2611), and Plaintiffs have not alleged actual or implied knowledge by Fry.

The result is that these Plaintiffs cannot parlay their allegedly defective drywall into a negligence claim against Fry.  Absent an "inherently dangerous" product or actual or implied knowledge – neither of which Plaintiffs can allege in good faith – the first Count fails as a matter of law.  The boilerplate, and wholly unsupported assertion that Fry "knew or should have known" that the drywall would "harm" Plaintiffs (*id.* ¶ 2646) is really a legal conclusion.  That

---

[7]     "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs….  In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself."  *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of illustration, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are not "inherently dangerous."  Drywall would certainly not be an "inherently dangerous" product under Florida law.

conclusory allegation cannot possibly salvage a negligence claim, particularly one that flies in the face of such basic principle of Florida law.

## C.     Plaintiffs have not stated a claim for negligence per se (Count II).

Besides being barred by the economic loss rule, Plaintiffs' negligence per se claims (Count II) are poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>."  *DeJesus v. Seaboard Coast Line R.R. Co*., 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se for two reasons.  First, they have not identified a statute that Fry allegedly violated, much less explained how that violation occurred.  Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes."  Cmplt. ¶ 2651.  Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage.  *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Fry allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se.  *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added).  In other words,

Plaintiffs' negligence per se claim appears to be nothing more than repackaged negligence claim.[8]  It should be summarily dismissed for that reason as well.

### D.    Plaintiffs cannot sue Fry in strict liability (Count III).

Plaintiffs' strict liability claims (Count III) are premised on the sweeping and patently false assertion that Fry was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public."  Cmplt. ¶ 2656.  This theory is foreclosed by the economic loss rule (*supra*. at Section II.A) and by at least two established principles of Florida law.

First and foremost, Fry cannot be sued in strict liability because it did not manufacture or distribute the allegedly defective drywall.   The Complaint itself identifies Fry as a "Developer/Builder."  Cmplt. ¶ 2412.  Strict products liability, however, is reserved for product manufactures and distributors; it does not apply to a homebuilder like Fry.  *See Ugaz v. American Airlines, Inc*., 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiffs could sue a contractor in strict liability (and they cannot), the allegedly defective drywall is not a "product" for purposes of this particular tort.  Rather, under Florida strict liability law the drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' homes. *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla.

---

[8]     Plaintiffs' claim for "Negligent Discharge of a Corrosive Substance" (Count XII) is similarly duplicative of their garden-variety negligence claim.  Regardless, Florida law does not appear to recognize an independent cause of action for Negligent Discharge.

3d DCA 2007).  "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate."  *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); *see Plaza*, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water and Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

**E.      Plaintiffs cannot maintain their warranty claims (Counts IV & VI)**.

In Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.[9]  Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Fry might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

a.      *The Harys' and Mercados' express warranty claims are foreclosed by the plain language of the Hary Agreement and the Mercado Agreement, respectively*.

The Harys' and Mercados' express warranty claims should be dismissed as a matter of law because their respective contracts with Fry expressly limit the duration of any express warranties to, at most, one (1) year from the date of the Certificate of Occupancy.  *See* Exhs. A and D, Addendum, ¶ 2 (warranting that "the construction of the building from defects of

---

[9]      The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but the Plaintiffs do not reside in Louisiana.  *See* Cmplt. ¶¶ 378 & 381. Besides, redhibition requires a showing that the allegedly defective product – here, drywall – failed for its intended purpose.  *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This showing is unavailable in light of the Court's determination that the drywall is "serving its intended structural purpose."  Order & Reasons at 23.

materials or workmanship for a period of twelve months from the date of the Certificate of Occupancy"). The Harys– who signed the Hary Agreement with Fry on March 14, 2005 and whose Certificate of Occupancy was issued on August 8, 2006 – have not alleged that they experienced a defect within the limited warranty period. Similarly, the Mercados – who signed the Mercado Agreement with Fry on April 26, 2005 and whose Certificate of Occupancy was issued on December 26, 2006 – have not alleged that they experienced a defect within their respective limited warranty periods. Their express warranty claims, in other words, are barred by the terms of the warranties themselves. "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects-defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *see also Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date").; *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did

not comply with the limited express warranty's terms."); *see also Bland v. Freightliner, LLC*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002) ("A warranty, whether express or implied, is fundamentally a contract.").

> ii.     *Plaintiffs also cannot maintain their claims for breach of warranty of merchantability or of fitness for a particular purpose.*

Plaintiffs' implied warranty claims similarly must fail.  First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Fry.  That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Fry is not bound by any implied warranties because it is not considered a merchant under Florida warranty law.  Fry contracts with its clients to provide a service: home construction. Because the inclusion of drywall in Plaintiffs' homes was incidental to the construction services that Fry rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances.  *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose (Cmplt. ¶ 2678) cannot survive because Plaintiffs have not – and indeed cannot – allege that the drywall in their homes was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used.  The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>."  Order & Reasons at 23 (emphasis added); *id*. at 18 ("[T]he Chinese drywall in the instant matter is operating as intended[.]").  This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[10]

## F.    Plaintiffs' breach of contract claim (Count VII) must be dismissed.

The Omnibus Complaint states only that Fry "contracted with the [Plaintiffs] to construct homes that would be free from defects."  Cmplt. ¶ 2701.  This assertion is insufficient on its face, because it fails to identify the source of Fry's alleged duty to construct a home "free from defects."  If the Harys and the Mercados hope to salvage their contract claims, they must, at the very least, "identify the relevant portion of the contract breached."  *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co*., No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc*., 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiffs will undoubtedly try to justify their skeletal allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiffs

---

[10]     *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

from satisfying basic pleading standards.  It does not cloak them with immunity from the requirements of due process.  The concern is not merely academic, either.  Contrary to the boilerplate allegation in the Omnibus Complaint, Fry did not agree to build a home "free from defects."  Cmplt. ¶ 2701.  Rather, the Hary Agreement (Exh. A) and the Mercado Agreement (Exh. D) both state that Fry will "construct upon the building site a building in accordance with the plans and specifications hereto attached … [t]he Builder shall provide all materials and perform all work of the construction provided for in the plans and specifications in a good and workmanlike manner."  Exhs. A and D, Addendum ¶ 2.

Whatever the meaning of this language – and there is good authority that it absolves Fry from liability for the allegedly defective drywall[11] – it certainly does not mean a home "free from defects."  *See Lonnie D. Adams*, 714 So. 2d at 1179 (holding that although contractor had a duty to perform contract in a "workmanlike" manner, there was no implied duty to deliver defect-free windows to the homeowner-plaintiffs).  To put it another way, Plaintiffs must base their breach of contract claim on an actual contract between the parties.  Unless and until they do that, their breach of contract claim cannot survive.

**G.      Plaintiffs cannot state a claim for private nuisance (Count XI).**

Plaintiffs' private nuisance claims (Count XII) would fail even if they were not barred by the economic loss rule.  *See supra*. at Section II.A.  An action for private nuisance requires the claimant to establish an injury to his or her own property <u>in connection with the use of the real property of someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law

---

[11]      Indeed, regardless of whether they can ever allege the elements of a breach of contract claim, Plaintiffs will be hard-pressed to show that Fry did not construct their homes in a workmanlike manner.  The Court has determined that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  Order & Reasons at 19.

of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Omnibus Complaint does not allege that Plaintiffs' purported injuries resulted from real property owned by Fry. On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame. Cmplt. ¶ 2736. That allegation simply does not state a claim for private nuisance. *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

**H.      Plaintiffs cannot bring a claim for unjust enrichment (Count XIII).**

Plaintiffs' unjust enrichment claims (Count XIII) fail for multiple reasons. For one, the Hary Agreement and the Mercado Agreement both foreclose a quasi-contractual theory. "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). Where (as here) the plaintiff admits to the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust enrichment." *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").[12]

---

[12]      Even if the existence of an express contract did not bar the Harys' and Mercados' unjust enrichment claims against Fry, the economic loss rule would. *Supra*. at Section II.A.

Even absent the foregoing, Plaintiffs still cannot maintain their unjust enrichment claims as a matter of law.  The elements of unjust enrichment are that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred, and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

The Harys' and Mercados' unjust enrichment claims stumble on the fourth of these elements.  There is nothing inequitable or unjust about permitting Fry to retain whatever benefit it received for constructing the Harys' and Mercados' homes.  After all, it cannot be disputed that Fry paid a third party (i.e., a subcontractor or distributor) for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit." 636 So. 2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by*, *Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).  Thus, the Harys' and Mercados' unjust enrichment claims are barred because whatever compensation Fry received for the drywall was not retained "unjustly."

I.      **The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIV).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA").  Cmplt. ¶ 2754.  A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."  *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, <u>claims arising under the FDUTPA must be pled with particularity</u>."  *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges <u>no specific facts</u> in support of Plaintiffs' FDUTPA claims.  *See* Cmplt. ¶ 2755.  It does not identify a

single instance in which Fry – by its words or conduct – deceived Plaintiffs or treated them unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[13]

Plaintiffs' failure, however, is not merely one of pleading.  Their FDUTPA claims must be dismissed with prejudice because "actual damages" are simply not available to them.  *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co*., No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury).  Because Fry provided services – namely, the construction of two houses – Plaintiffs can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Fry actually provided and the services that Fry was required to provide.[14]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its

---

[13]     Plaintiffs' FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc*., No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

[14]     The same would hold true if Fry had delivered a "product" – i.e., a completed home – rather than providing a "service."  To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiffs cannot make this showing.  There is zero evidence – and Plaintiffs do not appear to suggest – that the manner in which Fry <u>constructed</u> the homes was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." Order & Reasons at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claims with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of those claims.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc*., 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIV must be dismissed for this reason as well.

**J.      Plaintiffs' claim for equitable relief and medical monitoring (Count XV) cannot go forward against Fry.**

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XV).  This hybrid, catchall-type claim seeks, among other things, an order that Fry "buy back or rescind" its contracts and "create, fund, and support a medical monitoring program." Cmplt. ¶ 2761.  This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Since each of Plaintiffs' substantive claims is due for dismissal, so too is their derivative claim for

injunctive relief.  *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements.  *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate and entitle them to the extraordinary remedy of an injunction.  *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc*., 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action.  The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly

recognized a right to medical monitoring.  It is hardly clear, then, that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id.*

The Omnibus Complaint does not even attempt to properly allege these elements. Instead, Count XV sets for a series of legal conclusions – e.g., "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of factual detail.  Plaintiffs fail to identify, for example, any medical condition (latent or otherwise) supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition.  <u>Plaintiffs do not even claim to be ill</u>.  They would have this Court speculate about their imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings.  *See Jacobs*

*v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

Finally, the Plaintiffs' claims for medical monitoring are intercepted by the economic loss rule, as they were in direct privity with Fry. The allegedly hazardous "exposure" upon which the Harys' and Mercados' medical monitoring claims are based were caused, according to the Omnibus Complaint, by Fry's "negligent and otherwise tortious conduct." Cmplt. ¶ 2765. But the contractual privity ELR precludes the Harys and Mercados from circumventing their contract through allegations in tort. *See supra.* at Section II.A.

### III.  CONCLUSION

For all of the foregoing reasons, Defendant R. Fry Builders, Inc. respectfully requests an

order dismissing the Amended Omnibus Class Action Complaint with prejudice.

 Dated:  June 16, 2010

<div style="margin-left:40%">

Respectfully submitted,

**AKERMAN SENTERFITT**

BY:    _____/s/ Leslie Miller Tomczak_____
Stacy Bercun Bohm (Fla. Bar No. 022462)
Valerie B. Greenberg. (Fla. Bar No. 26514
Leslie Miller Tomczak (Fla. Bar No. 126489)
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Telecopier: (954) 463-2224
Email:  stacy.bohm@akerman.com
            valerie.greenberg@akerman.com
            leslie.tomczak@akerman.com

**ATTORNEYS FOR DEFENDANT
R. FRY BUILDERS, INC.**

**PHELPS DUNBAR LLP**

BY:    _____/s/ Susie Morgan_____
Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La Bar No. 31309)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
Email: Brent.barriere@phelps.com
            Susie.morgan@phelps.com
            Skylar.rosenbloom@phelps.com

**LOCAL COUNSEL FOR DEFENDANT,
R. FRY BUILDERS, INC.**

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing *Defendant R. Fry Builders, Inc.'s Motion to Dismiss, with Prejudice, with Incorporated Memorandum of Law* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 16th day of June, 2010.

<div style="text-align:right">      /s/ Leslie Miller Tomczak   </div>