**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *Payton, et al. v. Knauf Gips, KG, et al.* No. 09-7628 (E.D.La) | MAG. JUDGE WILKINSON |
| *Rogers, et al. v. Knauf Gips, KG, et al.*, No. 10-362 (E.D.La.) | |

**PLAINTIFFS' STEERING COMMITTEE'S**
**MEMORANDUM IN SUPPORT OF MOTION RESTRICTING**
**COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS**

## I.    INTRODUCTION

The Plaintiffs Steering Committee (PSC) hereby moves this Honorable Court pursuant to

Federal Rule of Civil Procedure 23(d)(1)(B) to protect the putative class by prohibiting the Knauf

Defendants, *i.e.*, Knauf GIPS KG; Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"); Knauf

Plasterboard (Wuhu), Co., Ltd.; and Guangdong Knauf New Building Materials Products Co.,

Ltd. a/k/a Knauf Plasterboard (Dongguan) Co., Ltd., and any of the builder defendants named in

any of the Omni Complaints in MDL No. 2047[1],  from engaging in improper communications

with putative class members.   Since the inception of this MDL, the Knauf Defendants,

---

[1]A complete list of the builder defendants named in the Omni Complaints is attached as
Exhibit A to the PSC's motion.

particularly KPT, have been engaged in litigation and actively defending themselves.

It has recently come to the PSC's attention through public and private channels, however, that Knauf is engaged in a campaign to settle putative class members' claims through a focused effort to settle with several of the builders of the putative class members' properties. By circumventing the putative class members and negotiating settlements with their builders instead, the fair conduct of the class procedure is being eroded by Knauf with the builders' assistance. Unless Knauf and the builders are required to advise putative class members of the protections afforded by existing class litigation and the empirical value of their claims established by this Court's rulings in *Germano* and *Hernandez*, putative class members will be unfairly treated in the resulting settlements that Knauf may enter into with home builders. Without the class members being fully advised of the true nature and scope of Knauf's and the home builders' liability and the defect in their products, the pendency of this litigation and class members' rights to participate in this litigation, the putative class is being unfairly disadvantaged and harmed by Knauf's conduct and that of the home builders. The PSC therefore respectfully requests that this Court curtail the improper behavior of Knauf and the home builders and approve a curative notice to all putative class members at the expense of Knauf and the home builders to remedy the harm caused by Knauf's improper communications to the putative class through the class members' builders.

## II.   FACTUAL BACKGROUND

The Judicial Panel on Multidistrict Litigation entered its initial Transfer Order establishing this litigation in June 2009. *See In re Chinese Manufacture Products Liability Litig.*, 626 F.Supp.2d 1346 (J.P.M.L. 2009). Since that initial Transfer Order, this Court has

expedited the litigation.  Although the MDL is only at its first anniversary of the initial Transfer

Order, already this Court has presided over eight bench trials resulting in judgments and has

witnessed the settlement of yet two other bellwether cases on the eve of trial.

In the *Germano* case, this Court made numerous findings of fact and conclusions of law

regarding the nature of the product defect in Taishan's drywall and established the parameters

involving the scope of remediation.[2]  In particular, the Court found the cost of repairing the

affected homes was on average $86.00 per square foot.[3]  In the *Hernandez* trial, the Court made

similar findings related to Knauf's defective drywall.[4]  Therein, the Court found the total cost for

remediation of the Hernandez home to be $136,940.46, when divided by the square footage of

the home (1,688) left a result similar to the *Germano* finding, *i.e.*, $81.00 a square foot.[5]

On May 11, 2010, the Court entered judgment against Knauf in connection with its

findings of fact and conclusions of law in the *Hernandez* matter.  Knauf apparently disagrees

with the Court's findings.  Not only has it taken an appeal from the judgment, but it has engaged

in extra-judicial efforts to avoid the result of *Hernandez*.  In particular, Knauf has publicly

engaged in a program of settlement negotiations with home builders of putative class members.

For example, on May 17, 2010, CBS News reported that KPT reached a joint settlement with the

---

[2]*See In re Chinese-Manufactured Drywall Products Liability Litigation*, 2010 WL
1445684 (E.D.La. Apr. 8, 2010)["*Germano*"].

[3]*Id.* at *28.

[4]*See In re Chinese-Manufactured Drywall Products Liability Litigation*, 2010 WL
1710434 (E.D.La. Apr. 27, 2010)["*Hernandez*"].

[5]*Id.* at *3 & *20.

Atlanta-based home builder Beazer Homes USA, Inc. *See Chinese Drywall Maker Settles its First Lawsuit*, available at http://www.cbsnews.com/8301-31727_162-20005167-10391695.html.[6] News of Knauf's settlement efforts spread rapidly over the internet. *See, e.g., Knauf Plasterboard's Chinese Drywall Settlement Offers Starting Low*, available at http://www.newsinferno.com/archives/20045.[7] Knauf's notorious efforts to resolve claims with home builders necessarily implicates the rights of putative class members. Knauf's settlement with home builders will not result in putative class members receiving the scope of remedial work deemed appropriate by this Court in both *Germano* and *Hernandez*. Nor will the reported settlements result in recoveries for homeowners at the average per square foot rates determined by this Court as necessary to accomplish full remedial work. And more importantly, the putative class members whose rights will be affected by the settlement with home builders, will not be informed of this Court's findings of fact and conclusions of law in either *Germano* or *Hernandez*. Thus, the putative class members will be distinctly disadvantaged by not being fully apprised of the nature of the damages to their home and the appropriate scope of remediation judicially determined by this Court. *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 2010 WL 1445684 (E.D.La. Apr. 8, 2010).

As a consequence, the PSC is compelled to move this Court to require a curative notice for the putative class so that putative class members can meaningfully decide whether to accept any remediation program proposed to them by their home builders.

---

[6]Attached hereto as Exhibit "A".

[7]Attached hereto as Exhibit "B".

### III.   ARGUMENT

**A.   This Court Has Broad Authority to Prohibit and Regulate Knauf's and the Home Builders' Improper Communication and Solicitation Campaign to Settle Putative Class Members' Claims Pursuant to Federal Rule of Civil Procedure 23(d)(1)(B)**

District courts have broad discretionary powers under Fed.R.Civ.P. 23(d) to supervise communications with class members.  Rule 23(d), in relevant part, states:

> **Conducting the Action**.  In conducting an action under this rule, the court may issue orders that: . . . require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of . . . any step in the action.

Fed. R. Civ. P. 23(d)(1)(B)(I).  Many courts have found that this regulatory power is adjunct to the authority of the courts themselves.  In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Supreme Court explained these plenary powers:

> [A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.

*Id.* at 100.  *See also Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) and *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D.Mo. 1983).  Rule 23(d) provides this Court broad authority to manage the conduct of class actions at "any step in the action,"  not only after class certification.  *See Hoffman-LaRoche Inc. v. Sperling*, 110 S.Ct. 482, 486 (1989); *See also Gulf Oil Co.*, 452 U.S. at 101.

Courts have long recognized the potential for abuse that may occur when a defendant or its counsel communicate with members of a class or proposed class.  *See Gulf Oil Co.*, 452 U.S. at 99-100; *In re School Asbestos Litig.*, 842 F.d 671, 679 -80 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601-02 (2d Cir. 1986); *Kleiner*, 751 F.2d at 101-03.  Specifically,

misleading communications to class members or putative class members regarding the litigation

pose a significant threat to the fairness of the proceedings, the fundamental rights of parties, the

adequacy of representation and the general administration of justice generally. *In re School*

*Asbestos Litig.*, 842 F.2d at 680; *See Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 783, 790-91

(E.D. La. 1977), *appeal dismissed*, 579 F.2d 642 (5ᵗʰ Cir. 1978) ("Unapproved communications

to class members that misrepresent the status or effect of the pending action also have an obvious

potential for confusion and/or adversely affecting the administration of justice."). "Unsupervised,

unilateral communications with the plaintiff class sabotage the goal of informed consent by

urging exclusion on the basis of one-sided presentation of the facts, without opportunity for

rebuttal.  The damage from misstatements could be irreparable." *Kleiner*, 751 F.2d at 1203.

Because of the potential for abuse, district courts have "both the duty and the broad

authority to...enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*

*Co.*, 452 U.S. at 100; *In re School Asbestos Litig.*, 842 F.2d at 679-80.  In *Gulf Oil v. Bernard*,

the Supreme Court advised courts that any order regulating communications with putative class

members should be "based on a clear record and specific findings that reflect a weighing of the

need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452

U.S. at 101.[8]

In discussing the requirements for an order regulating communications with potential

class members, the Supreme Court in *Gulf Oil* quoted *Coles v. Marsh*, 560 F.2d 186 (3d Cir.

1977), *cert. denied*, 434 U.S. 985 (1977):

---

[8]     In *Gulf Oil*, the Court ultimately found invalid an order that imposed a <u>complete</u> ban on all communications concerning the class action between the parties or their counsel and any actual or potential class member not a party without prior approval of a court. *Gulf Oil*, 452 U.S. at 102-04.

> [T]o the extent that the district court is empowered...to restrict
> certain communications in order to prevent frustration of the
> policies of Rule 23, it may not exercise the power without a
> specific record showing by the moving party of the particular
> abuses by which it is threatened.  Moreover, the district court must
> find that the showing provides a satisfactory basis for relief and
> that the relief sought would be consistent with the policies of Rule
> 23 giving explicit consideration to the narrowest possible relief
> which would protect the respected parties.

*Coles*, 560 F.2d at 189 (quoted in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981)).[9]  In seeking

an order limiting defendants' communications with putative Class Members, plaintiffs must

show that a restricting order would guard against the likelihood of serious abuses.  *Gulf Oil*, 452

U.S. at 104.  Plaintiffs do not have to show actual harm.  *See Jennifer v. Delaware Sold Waste*

*Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999).  Showing that the "interests embodied in

Rule 23 might be hindered is a sufficient finding upon which to base an order limiting contacts."

*See Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994).

Following *Gulf Oil*, many courts have been confronted with the need to supervise

inherently coercive communications with absent class members.  That is the issue before the

Court now.  In these situations, courts, almost uniformly order limitations on such

communications, if not curtailing the communications altogether.  *In re School Asbestos Litig.*,

842 F.2d 671 (3d Cir. 1988); *In re Community Bank of Northern Virginia*,  418 F.3d 277 (3d Cir.

2005); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478 (E.D. PA. 1995); *Haffer v. Temple*

---

[9]        *See also* D.F. Herr, *Manual for Complex Litig. Fourth*, ¶ 21.33 (2006) ("The judge has
ultimate control over communications among the parties, third parties, or their agents and Class Members
on the subject matter of the litigation to ensure the integrity of the proceedings and protection of the
class. . . .  If improper communication occur, curative action might be necessary, such as extending
deadlines for opting out, intervening or responding to a proposed settlement, or voiding improperly
solicitated opt-out and providing new opportunity to opt-out.")

*University*, 115 F.R.D. 506, 512 (E.D. PA. 1987);  *Kleiner v. First National Bank of Atlanta*, 751.2d 1193 (11th Cir. 1985); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 845 (2d Cir. 1980); *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D. Mo. 1983); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F.Supp. 720, 722-24 (W.D. Ky. ) *appeal dismissed without opinion*, 659 F. 1081 (6th Cir. 1981); *Tedesco v. Mishkin*, 629 F.Supp. 1474, 1484 (S.D.N.Y. 1986); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1982); *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033-34 (E.D. Wash. 1985); *Zarate v. Younglove*, 86 F.R.D. 80 (C.D. Cal. 1982); *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132, *2 (S.D. N.Y. Sept. 7, 2001); *Jennifer v. Delaware Solid Waste Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999); *Burrell v. Crown Ent. Petroleum, Inc.*, 176 F.R.D. 239, 242-43 (E.D. Tex. 1997). *See also Turner v. Murphy Oil USA, Inc.*, 2006 WL 286009 (E.D.La. Feb. 6, 2006).

　　　In *Murphy Oil*, this Court was confronted with the unusual situation where after certifying a class action that became  the subject of an interlocutory appeal, a settlement program was instituted by the defendant while the appeal was ongoing.  The defendant was desirous of obtaining opt-outs during the appeal, while class counsel were concerned about the effect such exclusions might have prior to the official notice of the pendency of the class..  The court determined that "class members who wish to participate in the Murphy settlement program should be notified of the consequences of such participation."  *Id*. at *2.   The court ordered that notice should issue to the class as a protective measure.  Citing *Kleiner*, the court reasoned that "[p]art of the Court's role in class action litigation is to protect the class and to provide neutral information to class members such that their decisions to opt-out of the class are fully informed, and are not based upon any economic coercion."  *Id.*  A judicially crafted notice was

subsequently approved for the class.

In *Erhardt*, the court recognized that it was the responsibility of the district court to prevent any unauthorized notices to class members:

> It is the responsibility of the court to direct the "best notices practicable" to class members, Rule 23(c)(2), and to safeguard them from unauthorized, misleading communications from the parties or their counsel. Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice. To prevent abusive practices in the absence of a local rule, the court should include in its order of notice a provision limiting within constitutional parameters any unauthorized correspondence by parties and their counsel with class members.

*Erhardt*, 629 F.2d at 846.

Of particular concern are communications by defendants with putative class members that are misleading as to the status of pending class action, or that induce class members to opt-out or not cooperate with class counsel. *In re School Asbestos Litigation*, 842 F.2d at 682, *In re Community Bank of Northern* Virginia, 418 F.3d at 311-312; *Georgine*, 160 F.R.D. at 490; *Haffer*, 115 F.R.D. at 512-513; See *Kleiner*, 751 A.2d at 1202; *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *4-6; *Jennifer*, 1999 WL 117762 at *2; *Hampton Hardware*, 156 F.R.D. at 633, *Impervious Paint*, 508 F. Supp. at 721-723.

In *Impervious Paint Industries*, an antitrust class action where one defendant improperly contacted absent class members, the court noted that plaintiffs' counsel's relation to the absent class members is unusual during the period between the filing of the class action complaint and the opt-out period, similar to the posture of the case here. *Impervious Paint Industries*, 508 F.Supp. at 722. The court found that class counsel must treat absent class members as clients and

avoid "compromising the rights of the class members," while at the same time avoid unethical

solicitation by treating class members as non-clients. *Id.* Significantly, the court held that

defendants' counsel's role is likewise restricted during this same period:

> However, we cannot conclude that the corollary of this peculiar
> circumstance is that the class counsel's adversary has diminished
> responsibilities. While it is technically correct that a class member
> does not abandon its claim by opting out of the class, it is beyond
> cavil that it is in defendants' interest for class members to elect to
> remove themselves from the action. Reading DR 7-104 as a
> whole, we believe the implicating is unavoidable that defendants'
> counsel must treat plaintiff class members as represented by
> counsel, and must conduct themselves in accordance with both
> sections of DR 7-104.

*Id.* at 723 (emphasis added). Thus, even before the class is certified, defense counsel are

obligated to treat absent class members as represented by class counsel in accordance with ethical

restraints and the Federal Rules of Civil Procedure. *Id.*; *See also Resnick*, 95 F.R.D. at 378-79

("[Defendant] cannot lift language from *Gulf Oil* out of context to insulate communications from

its counsel to actual class members."). The rationale for this treatment is that "the imbalance in

knowledge and skill which exists between class members and defense counsel presents an

extreme potential for prejudice to class members' rights." *Bower*, 698 F.Supp. at 1034.

In *Jennifer,* plaintiffs sought to enjoin defendants from communicating with putative

class members where defendants were attempting to coerce putative class members not to

participate in litigation and/or settle their claims by executing a release. *Jennifer*, 1999 WL

117762 at *2. The court held that there was potential that certain members of the putative class

would be completely unaware of the litigation and by signing a release would waive their right to

participate in the class action. *Id.* at *7. The court stated in pertinent part:

-10-

> While the defendant may seek to settle individual claims prior to certification, the putative class member should know the essence of the claim they would be giving up in response tot he solicitation of DSWA. Those who sign the DSWA three-year contract may be completely unaware of this litigation and by signing the contract would waive their right to participate in the class action. Some potential plaintiffs may wish to participate in the action and, therefore, should be given the necessary information and opportunity to choose between signing the contract and participating in the differential pricing program or not participating, but have the right to ship waste out of the state.

*Id.* at *7. The same concerns apply to this matter. The court in *Jennifer* required defendants to properly notify each class member at the time it seeks a signing of the release so that they have sufficient notice of the pendency of the action. *Id.* In addition, the court required that a similar notification must be provided to those putative class members who already received settlement information." *Id.*

Similarly, in *Ralph Oldsmobile, Inc.,* the court addressed the potential abuse of defendant's settlement communications and obtaining releases from unknowing putative class members. The class representative plaintiff moved, pursuant to Fed. R. Civ. P. 23, for an order requiring defendant "to seek and desist his practice of obtaining *ex parte* releases from putative class members," voiding those releases already obtained, and requiring defendant "to send a court-approved corrected notice" that any such releases had been voided. *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *1. This is the same scenario before this Court. The district court in *Ralph Oldsmobile, Inc.* found that the record supported findings of <u>potential</u> <u>abuse</u> in defendants' communications with putative class members resulting from the potentially unknowing waivers of rights or claims by the execution of a release by putative class members. *Id.* at *3. The court specifically pointed out the release purported to waive claims, but failed to mention the class

-11-

action, which resulted in risk that class members may sign a release without knowing what they were releasing. *Id.* The same concerns apply to this matter. The court determined that an unknowing release is abusive and ordered relief in the form of curative notice be given in future settlements and releases. *Id.*[10]

In the instant matter, Knauf's settlements with builders obfuscates or avoids informing putative class members of the pendency of this action and the results obtained by the PSC in the bellwether trials to date. This behavior will obstruct the PSC and this Court's duty to protect class members and otherwise protect the integrity of the class action process.

**B.  Neither Knauf Nor the Homebuilders Have an Untrammeled Right to Communicate With Putative Class Members. Non-commercial Speech May be Limited to Meet the Requirements of Rule 23.**

An order restricting communications between parties and putative class member must take into account the rights of the parties under the First Amendment. *In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988). However, misleading, false or deceptive speech has no protection under the First Amendment.[11]   Indeed, Knauf's rights to engage in commercial speech may be regulated further than the right to pure speech. *See Friedman v. Rogers*, 440 U.S. 1, 11

---

[10]       The Court declined to void the releases that already had been executed. *Id.* at *7. Rather the Court decided that it would consider an application to void a release made by any class member who signed such a releases prior to receiving notice. Such a statement would be included in the notice to all potential class members and it would advise the class members of their rights. *Id.*

[11]       *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 556, 566 (1980) ("For commercial speech to come within [the First Amendment], it at least must...not be misleading."); *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading..."); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 949 (3d Cir. 1993) ("[F]alse commercial speech is not protected by the First Amendment and may be banned entirely.").

n.9 (1979)(*quoting Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)):

> When dealing with restrictions on commercial speech we frame
> our decisions narrowly "allowing modes of regulations [of
> commercial speech] that might be impermissible in the realm of
> non-commercial expression."

*See also Virginia Pharmacy Board v. Virginia Citizens Consumers Council*, 425 U.S. 748, 771-

72 (1976)( "the first amendment, as we construe it today, does not prohibit the state from

insuring that the stream of commercial information flow cleanly as well as freely").

   In the case at bar, there can be no serious question that defendants' proposed speech is

commercial and therefore can be prohibited by this Court.  *See Kliener v. First National Bank of*

*Atlanta*, 751 F.2d 1193 (11th Cir. 1985)(District Court's order protected class members against

possible one-sided, unsupervised, unreviewable communications was upheld under the

commercial speech standard).  The Court of Appeals in *Kleiner* with respect to the defendant's

commercial speech stated:

> The Bank's entreaties indubitably amounted to speech of a
> commercial bent.  Commercial Speech consists of expression
> related largely or solely to the economic interests of the speaker
> and the audience.  Commercial speech encompasses not merely
> direct invitations to trade, but also communications designed to
> advance business interests, exclusive of beliefs and ideas.

*Id*. at 1203 n. 22 (citations omitted).  Clearly, the defendants' settlement efforts result in

inaccurate communications with class members that involve commercial speech.

   Knauf or the home builders may argue that the First Amendment provides them the right

to engage in alleged accurate but one-sided commercial speech, irrespective of the potential

harmful effects on the class and individual Class Members.  The Supreme Court, however, has

rejected such an argument.  For example, in *Posadas de Puerto Rico Associates v. Tourism Co.*

*of Puerto Rico*, 478 U.S. 328 (1986), the Supreme Court upheld a Puerto Rican statute prohibiting local casinos from advertising their gambling facilities to residents of Puerto Rico, but allowing them to advertise to potential tourists in the continental United States and elsewhere. The Supreme Court held that Puerto Rico could curtail commercial speech where its legislative body reasonably found that such speech could potentially have a harmful effect on its audience. The Supreme Court found that the legislation was not overly restrictive since such regulation would reduce gambling more than "promulgating additional speech designed to discourage gambling." *Id.* at 344.

In *Kleiner*, the court recognized that restrictions on commercial speech are not entitled to the strict prior restraint doctrine applied to pure speech. *Kleiner*, 751 F.2d at 1205. As the court there held:

> In the domain of commercial speech, as discussed, the Supreme Court had issued repeated admonitions against the wholesale incorporation of the law of prior restraint. *Athena Products*, 654 F.2d at 367. We therefore judge petitioner's prior restraint argument under a relaxed standard of scrutiny better suited to the hardiness of commercial speech. *Cf. In re San Juan Star Co.*, 662 F.2d 108, 116 (1st Cir. 1981) (relaxed standard for review of order prohibiting dissemination to press of communications produced during discovery).

*Id.*  Thus, the court in *Kleiner*, under a "heightened sensitivity" approach, upheld the district court's ban on exclusion solicitations through the end of the exclusion period.

Additionally, it has long been recognized that even the right of pure speech can be abridged in the litigation process. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 18 (1984), the Supreme Court held:

> Although litigants do not "surrender their First Amendment rights

-14-

at the courthouse door," *In re Halkin*, 194 U.S. App. D.C., at 268, 598 F.2d at 186, those rights may be subordinated to other interests that arise in this setting. For instance, on several occasions this Court has approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant. . . . In the conduct of a case, a court often finds it necessary to restrict the free expression of participants, including counsel, witnesses, and jurors.

*Id.* (footnotes omitted). *See also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 n. 21 (1981).

Based on the above, Knauf's settlement overtures to builders is misleading speech viz. putative class members. Therefore, any order regulating such speech does not pose any First Amendment concerns.

### C.    Knauf's and the Homebuilders' Misleading Settlement Communications Requires Appropriate Relief, Including Curative Notice.

An injunction-like order may be issued by this Court pursuant to Rule 23(d), without regard to the requirements for a preliminary injunction under Rule 65. In *Kleiner*, the court upheld just such an order which did not satisfy the requirements of Rule 65:

[W]e do not fault the orders for perceived procedural defects under Fed.R.Civ.P. 65(d). Rule 65(d) states that injunctions and restraining orders must set forth the reasons for their issuance and identify, with reasonable detail, the acts to be restrained. The orders at issue, however, are of a different ilk. The lower court correctly characterized the rulings as directives to counsel in their capacity as officers of the court, pursuant to the court's inherent power to manage its cases. *See* Fed.R.Civ.P. 23(d)(2). The more relaxed prerequisites of Rule 23(d)(2) *therefore* [are] applied, as the district court noted:

Findings of fact and technical precision are unnecessary for such direction to be valid; rather the direction must only be (a) within the Court's power and (b) specific enough so that counsel may understand what conduct or action is required.

Opinion of the district court at 34.  The trial court justifiably found
that both criteria were "amply met in the instant case."

*Kleiner*, 751 F.d at 1201.  Thus, to ban settlements between Knauf and builders that fail to

inform putative class members of their rights and curative notice sought by Plaintiffs may be

issued pursuant to this Court's inherent authority under Rule 23(d)(2) to protect the integrity of

the Rule 23 class action device and to protect class members; it is not an injunction sought

pursuant to Rule 65.  However, like any injunction issued by this Court, a violation of this

Court's order may be punished by this Court regardless of where the violation occurs.  *See*

*United States Steel Corp. v. Multistate Tax Comm'n*, 367 F.Supp. 107, 117 (S.D.N.Y. 1973).

The dangers of Knauf's settlement communications with homebuilders is that the

communications are directed to putative Class Members and that they are inaccurate, one-sided,

coercive, and misleading.  *See In re Community Back of Northern Virginia*, 418 F.3d at 310-311;

*Georgine*, 160 F.R.D. at 498; *Haffer*, 115 F.R.D. at 512; *Kleiner*, 751 A. 2d at 1202; *Ralph*

*Oldsmobile, Inc.*, 2000 WL 1035132 at *3-4; *Jennifer*, 1999 WL 117762 at *7; *Hampton*

*Hardware*, 156 F.R.D. at 633; *Impervious Paint Industries*, 528 F.Supp. at 721-723.  The

settlement communications also raise the potential abuse of unknowing waivers of claims and

rights by putative class members.  *See Ralph Oldsmobile, Inc.*, 2000 WL 1035132 at *3-4;

*Jennifer*, 1999 WL 117762 at *7.

Knauf's unsupervised communications to settle with Class Members create "possibilities

for deception" and therefore threaten Rule 23.  Such communications should not be sanctioned

by this Court.  *See Impervious Paint Industries v. Ashland Oil*, 508 F.Supp. 720 (W.D. Ky.),

*appeal dismissed without opinion*, 659 F.2d 1081 (6th Cir. 1981)(the court enjoined defendants

-16-

from seeking class member exclusions).   In *Impervious Paint Industries*, the court discussed the

importance of the independence of the class member's decision to participate in class litigation

and the responsibility of the court to assure this independent participation:

> It is essential that the class member's decision to participate or to
> withdraw be made on the basis of an independent analysis of its
> own self-interest.  It is the responsibility of the court as a neutral
> arbiter and of the attorneys in their adversarial capacity, to ensure
> this type of free and unfettered decision.  The mechanism selected
> for accomplishing this is the class notice, which is designed to
> present the relevant facts in an unbiased format.

*Id.* at 723 (emphasis added).  And here, as in *Impervious Paint Industries*, the Court must protect

the Class Members' right to make an independent, uncoerced decision with respect to

participating in the class action or settling their claims with home builders on their own:

> In this type of case, both sides are subject to tremendous pressure
> to step over the thin line between vigorous advocacy and
> overreaching.  It is essential that the class member's decision to
> participate or to withdraw be made on the basis of an independent
> analysis of its own self-interest.  It is the responsibility of the court
> as a neutral arbiter, and of the attorneys in their adversarial
> capacity to insure this type of free and unfettered decision.
>
> The mechanism selected for accomplishing this is the class notice,
> which is designed to present the relevant facts in an unbiased
> format.

*Id.*

Of particular concern is Knauf's attempt to have putative class members unknowingly

release rights or claims by the signing of a release by not disclosing the significant findings of

fact by this Court in both *Germano* and *Hernandez* regarding the value of their claims, as well as

holdings from state court trials.  *See Jennifer*, 1999 WL 117762 at *7; *Ralph Oldsmobile, Inc.*,

2001 WL 1035132 at *3-4.  Courts have prohibited such attempts by defendants and ordered

-17-

curative notices be sent to putative Class Members who have received a release and to all potential Class Members in the future when defendant seeks a signing of a release. *Id.* The court in *Ralph Oldsmobile, Inc.*, stressed the importance that the putative Class Members have sufficient information to make an informed decision and not unknowingly waive rights or claims by executing a release. *Ralph Oldsmobile*, 2001 WL 1035132 at *4-6. Such an unknowing release would be abusive and warrants relief in the form of curative notice. *Id.* This is a point made in the Manual for Complex Litigation Fourth ¶ 21:33 (2006), where the authors note:

> The judge has ultimate control over communications among the parties, third parties, or their agents and Class Members on the subject matter of the litigation to ensure the integrity of the proceedings and protection of the class. . . If improper communication occur, curative action might be necessary, such as extending deadlines for opting out, intervening or responding to a proposed settlement, or voiding improperly solicited opt-out and providing new opportunity to opt-out.

Plainly, this Court has authority to enjoin Knauf's and home builders' conduct and approve a curative notice to rectify the harm caused by withholding material information from putative class members pursuant to Rule 23(d). In light of the aforementioned reasons, plaintiffs request that the Court issue an appropriate order directing the conduct of this action and approve a curative notice.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the PSC's motion. A proposed form of notice is attached hereto as Exhibit "C".

Dated: July 7, 2010

Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

-19-

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Steering Committee's Memorandum in Support of Motion Restricting Communications with Putative Class Members has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 7th day of July, 2010.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047