## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL      MDL No. 02047
         PRODUCTS LIABILITY LITIGATION      SECTION L

                                           JUDGE FALLON
                                           MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
SEAN and BETH PAYTON, *et al*. v.
KNAUF GIP KG, *et al*.,
Case No. 2:09-cv-07628-EEF-JCW
_____/

**MEMORANDUM OF LAW IN SUPPORT OF PROMENADE DEVELOPERS, LTD.'S, E.N. SUTTIN CONSTRUCTION COMPANY'S AND VINTAGE PROPERTIES, INC.'S MOTION TO DISMISS THE AMENDED OMNIBUS CLASS ACTION COMPLAINT**

       Defendants, Promenade Developers, Ltd.. ("Promenade"), E.N. Suttin Construction Company ("E.N. Suttin") and Vintage Properties, Inc. ("Vintage Properties") (collectively the "Feinberg Defendants"), hereby file this Memorandum of Law in Support of their Motion to Dismiss the claims asserted against them by Plaintiffs Manley Feinberg and Dianne Feinberg (the "Feinbergs" or "Plaintiffs") in the Amended Omnibus Class Action Complaint [D.E 1, 3160], with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6), for the reasons set forth below.

**MEMORANDUM OF LAW**

       The Feinbergs have added Promenade – the Florida builder that constructed their home – to the more than 400 defendants named in the Amended Omnibus Class Action Complaint (the "Omnibus Complaint")[1] even though there is no evidence, and indeed no allegation, that their home construction was in any way deficient.  Plaintiffs have also added Vintage Properties even though

---

[1]      This Memorandum cites to the Omnibus Complaint as "Cmplt. ¶ __."

this defendant was not the builder of the Feinbergs' home.  Plaintiffs want compensation for their drywall, yet it is beyond dispute that Promenade, E.N. Suttin and Vintage Properties had nothing to do with the manufacture, marketing or distribution of that drywall.  Promenade, E.N. Suttin and Vintage Properties, in other words, simply do not belong in this lawsuit, and the claims asserted against them should be dismissed as fatally defective pursuant to Rule 12(b)(6).

## I.  BACKGROUND

**A.     Plaintiffs' Allegations Against the Feinberg Defendants.**

Plaintiffs' allegations mirror those of every other claimant in this lawsuit.  Indeed, Plaintiffs are suing the Feinberg Defendants based on the installation of allegedly defective drywall in their homes.  The home owned by the Feinbergs is located at 1524 Island Boulevard, in Aventura, Florida.  Cmplt. ¶ 836.  A copy of the Purchase and Sale Agreement between Promenade and the Feinbergs is attached to this Memorandum as "**Exhibit A**."  The agreement is dated February 2, 2005, and it lists Manley and Dianne Feinberg as the "Buyers" and Promenade as the "Seller." Neither E.N. Suttin nor Vintage Properties is a party to the agreement.  The Profile Form that the Feinbergs filed with this Court sheds further light on their allegations.  A copy of that form is attached hereto as "**Exhibit B**".  In it, the Feinbergs describe their home as a 6,800 square foot, four bedroom, six and one-half bathroom Florida residence.  *See* Ex. B, pg. 2.  The profile form states that the home was completed on January 15, 2007, and that Plaintiffs moved in that same day.  *Id*. pg. 2.  The Certificate of Occupancy for the Feinbergs' home was issued on November 30, 2006. *See* Certificate of Occupancy attached as "**Exhibit C**".[2]

---

[2]      The fact that Plaintiffs chose not to attach these documents to the Omnibus Complaint does not prevent the Court from considering them now.  The Court can and should consider these instruments because they are undeniably central to Plaintiffs' claims against the Feinberg Defedants and – at least with respect to the Certificate of Occupancy – publicly available.  *See In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp*., No. 09-3835, 2010 WL 334533 *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Federal Ins. Co. v. New Hampshire Ins. Co.*, No.

The Omnibus Complaint heedlessly lumps together thousands of parties over more than 500 pages of truly boilerplate allegations.  Specifically, Plaintiffs allege the following eleven claims[3] against the Feinberg Defendants:  Negligence (Count I, ¶¶ 2640-47); Negligence Per Se (Count II, ¶¶ 2648-54); Strict Liability (Count III, ¶¶ 2655-72); Breach of Express and/or Implied Warranties (Count IV, ¶¶ 2673-80); Breach of Implied Warranty of Habitability (Count VI, ¶¶ 2693-99); Breach of Contract (Count VII, ¶¶ 2700-03); Private Nuisance (Count XI, ¶¶ 2735-41); Negligent Discharge of Corrosive Substance (Count XII, ¶¶ 2742-48); Unjust Enrichment (Count XIII, ¶¶ 2749-52); Violation of Florida's Deceptive and Unfair Trade Practices Act (Count XIV, ¶¶ 2753-57); and Equitable and Injunctive Relief and Medical Monitoring (Count XV, ¶¶ 2758-70).  Each of these claims is governed by and arises under Florida law.[4]

## B.      The Governing Legal Standard.

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the

---

03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint.").

[3]     There are fifteen Counts in the Omnibus Complaint, but only eleven of them arguably apply to the Feinberg Defendants.  The four remaining Counts do not.  Specifically, Count V (for breach of warranty under Florida's condominium code) does not apply to the Feinberg Defendants because Plaintiffs allegedly purchased a residential home, not a condominium.  Cmplt. ¶¶ 2681-92.  Count VIII applies to "Louisiana Home Builders Only," and no one disputes that the Feinberg Defendants are Florida builders.  *Id.* ¶¶ 2408-10.  Count IX ("Redhibition – by Louisiana Plaintiffs") does not apply because Plaintiffs are not residents of Louisiana.  *Id.* ¶ 836.  Finally, Count X (Louisiana Products Liability Act) applies solely to "Manufacturing" or "Distributor" Defendants, whereas the Omnibus Complaint identifies Promenade, E.N. Suttin and Vintage Properties as  "Developer/Builder" Defendants.  *Id.* ¶¶ 2408-10.

[4]     Because Plaintiffs filed their claims against the Feinberg Defendants directly in the Eastern District of Louisiana – rather than filing in a Florida court and having the matter transferred to this forum – this Court should apply the choice-of-law rules of Louisiana.  *See Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 n.6 (5th Cir. 1981).  Under Louisiana's choice-of-law rules, Florida has, by far, the most significant relationship with the dispute.  Plaintiffs' alleged drywall injuries occurred in Florida, the subject property is located in Florida, and Promenade, E.N. Suttin and Vintage Properties all reside in Florida.  *See* Cmplt. ¶ 2395; *Gulf States Utilities Co. v. NEI Peebles Elec. Prods., Inc*., 819 F. Supp. 538, 552-53 (M.D. La. 1993) (discussing Louisiana choice of law factors and statutes).  Additionally, the Purchase and Sale Agreement executed by the Feinbergs and Promenade specifies that Florida law should govern the agreement.  Exh. A ¶ 17(e).  Florida substantive law therefore governs each of Plaintiffs' claims against the Feinberg Defendants.

Complaint, even if proven true, would not entitle the plaintiff to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 and 570 (2007); Fed. R. Civ. P. 12.  Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions."  *Id*. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## II. ARGUMENT

**A.**     **Each of Plaintiffs' Causes of Action Against the Feinberg Defendants Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.**

Each of the causes of action asserted against the Feinberg Defendants should be dismissed pursuant to Civil Rule 12(b)(6) because none of them states a claim for relief.   The balance of this Memorandum addresses the incurable defects in each of Plaintiffs' eleven claims against the Feinberg Defendants.

**1.**     **Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII and XV) are barred in whole or in part by the Economic Loss Rule.**

The Economic Loss Rule (or "ELR") bars Plaintiffs from circumventing their contractual arrangements through allegations in tort.  *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc*., 891 So. 2d 532, 536 n.1 (Fla. 2004).   Florida law applies the ELR in two contexts: "(1) The contractual privity ELR where two parties are in privity of contract, and (2) The products liability ELR where a defective product causes damage, but only to itself."   Order & Reasons (January 13, 2010) at 22.[5]   This Court has explained how the contractual privity ELR applies to homebuilders like Promenade:

> The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contractor breach, and in other limited circumstances.   The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese

---

[5]     The Court's January 13, 2010 "Order & Reasons" (MDL No. 2047, Section L) applies by its terms to all drywall MDL cases pending before the Court, including this one.

drywall.   Accordingly, <u>under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.</u>

*Id.* at 30 (citation omitted) (emphasis added).   Underlying the contractual privity ELR is the common-sense notion that "contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement."   *Indemnity Ins. Co.*, 891 So. 2d at 536-537.

The Feinbergs – who were indisputably in privity of contract with Promenade (Exh. A) – assert numerous tort claims in the Omnibus Complaint, including Negligence (Count I), Negligence Per Se (Count II), Strict Liability (Count III), Private Nuisance (Count XI), Negligence Discharge of a Corrosive Substance (Count XII), Unjust Enrichment (Count XIII) and Medical Monitoring (Count XV).   The ELR intercepts each of these claims, however, because "the alleged duty breached is derived from the contractual relationship" between the parties.   *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co*., 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (internal marks omitted).   The central conceit of every one of the Feinbergs' tort claims is that Promenade built a home with defective Chinese-manufactured drywall.   *E.g.,* Cmplt. ¶ 2702.   Because that alleged wrong is derived from the parties' contractual relationship, it cannot give rise to a tort claim.

Furthermore, and aside from the question of privity, the Feinbergs cannot sue any of the Feinberg Defendants in tort for economic losses.   Florida courts have defined economic loss in this context as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain."   Order & Reasons at 22 (internal marks and citation omitted).   In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc*., 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties.   The Court  held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not

caused them any non-economic damages. *Id*. at 1247. Because the plaintiffs were seeking *only* such non-economic damages, the economic loss rule barred their tort claims against the supplier. *Id*. at 1246-48.

The same reasoning applies here. Regardless of whether they are in privity with E.N. Suttin and Vintage Properties, Plaintiffs cannot sue any of the Feinberg Defendants in tort for purely economic losses. As a matter of law, the economic loss rule limits them to recovering non-economic losses (e.g., for personal injury) and damages to property other than the houses themselves.[6] *See Casa Clara*, 620 So. 2d at 1247-48. Plaintiffs must therefore replead their tort claims to seek only non-economic losses. *Cf*. Cmplt. ¶ 2647 (seeking general "damages" on negligence count).

**2.      Plaintiffs' negligence allegations (Count I) are false and improperly pled.**

Plaintiffs' negligence claim (Count I) really illustrates why the Feinberg Defendants do not belong in this lawsuit. The Omnibus Complaint alleges that the Feinberg Defendants somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Cmplt. ¶ 2641. The Complaint further alleges that the Feinberg Defendants had a duty to provide Plaintiffs with certain warnings about the drywall. *Id*. ¶ 2644.

Besides being intercepted by the economic loss rule (*see* discussion, *supra*), these allegations are indisputably false. The Feinberg Defendants, for example, did not "design," "manufacture," or "import" any drywall, and Plaintiffs know it. Yet even assuming the truth of these specious allegations, they do not state a claim for relief. Under Florida law, a negligence claim requires the plaintiff to plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61

---

[6]      Plaintiffs also cannot recover non-economic losses because they have <u>suffered</u> no such losses. The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." Order & Reasons at 19-20.

(11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case.").  Plaintiffs can allege neither prerequisite.

To begin with, the Feinberg Defendants owed no duty of care with respect to Plaintiffs' drywall.  Under Florida law, even manufacturers, retailers and distributors – all of whom arguably bear a *greater* responsibility toward their products than a contractor like Promenade – have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous."  *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[7]

In the same vein, the Feinberg Defendants cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects.  *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991).  The alleged defects in the drywall are plainly "latent" (*e.g.,* Cmplt. ¶ 2611), and Plaintiffs have not alleged actual or implied knowledge by the Feinberg Defendants.

The result is that these Plaintiffs cannot parlay their allegedly defective drywall into a negligence claim against the Feinberg Defendants.  Absent an "inherently dangerous" product or

---

[7]      "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs….  In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of illustration, Florida courts have ruled that jet skis (*id*. at 1543), motorcycles (*Byrnes v. Honda Motor Co.*., 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are <u>not</u> "inherently dangerous."  Drywall would certainly not be an "inherently dangerous" product under Florida law.

actual or implied knowledge – neither of which Plaintiffs can allege in good faith – the first Count fails as a matter of law.  The boilerplate, and wholly unsupported assertion that the Feinberg Defendants "knew or should have known" that the drywall would "harm" Plaintiffs (*id*. ¶ 2646) is really a legal conclusion.  That conclusory allegation cannot possibly salvage a negligence claim, particularly one that flies in the face of such basic principle of Florida law.

3.      **Plaintiffs have not stated a claim for negligence per se (Count II).**

Besides being barred by the economic loss rule, Plaintiffs' negligence per se claim (Count II) is poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>."  *DeJesus v. Seaboard Coast Line R.R. Co*., 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se for two reasons.  First, they have not identified a statute that any of the Feinberg Defendants allegedly violated, much less explained how that violation occurred.  Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes."  Cmplt. ¶ 2651. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage.  *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that the Feinberg Defendants allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se.  *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added).  In

other words, Plaintiffs' negligence per se claim appears to be nothing more than repackaged negligence claim.[8]  It should be summarily dismissed for that reason as well.

    **4.**      **Plaintiffs cannot sue the Feinberg Defendants in strict liability (Count III).**

Plaintiffs' strict liability claim  (Count III) is premised on the sweeping and patently false assertion that the Feinberg Defendants were "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public."  Cmplt. ¶ 2656.  This theory is foreclosed by the economic loss rule (*supra.* at section A.1) and by at least two established principles of Florida law.

First and foremost, the Feinberg Defendants cannot be sued in strict liability because they did not manufacture or distribute the allegedly defective drywall.  The Complaint itself identifies each of the Feinberg Defendants as a "Developer/Builder."  Cmplt. ¶¶ 2408-2410.  Strict products liability, however, is reserved for product manufacturers and distributors; it does not apply to homebuilders like the Feinberg Defendants.  *See Ugaz v. American Airlines, Inc*., 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiffs could sue contractors in strict liability (and they cannot), the allegedly defective drywall is not a "product" for purposes of this particular tort.  Rather, under Florida strict liability law the drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' home.  *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007).  "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural

---

[8]     Plaintiffs' claim for "Negligent Discharge of a Corrosive Substance" (Count XII) is similarly duplicative of their garden-variety negligence claim.  Regardless, Florida law does not appear to recognize an independent cause of action for Negligent Discharge.

improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Sys., Inc.* No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); *see Plaza*, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water and Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

     **5.**     **Plaintiffs cannot maintain a warranty claim (Counts IV & VI)**.

In Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.[9] Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how the Feinberg Defendants might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

     a.     *The Feinbergs cannot maintain a warranty claim of any kind against E.N. Suttin and Vintage Properties because the Feinbergs were not in privity of contract with either of those entities.*

The Feinbergs' lack of privity with E.N. Suttin and Vintage Properties dooms any warranty claim they might assert.  It is axiomatic that a plaintiff suing in warranty "must be in privity of contract with the defendant." *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v. Mylan, Inc*., No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, *2 (M.D. Fla. Feb. 17, 2010) (same).  The Feinbergs, however, never contracted with E.N. Suttin or Vintage Properties; their contract was with Promenade. *T.W.M. v. Am. Med. Systems, Inc*., 886 F. Supp. 842, 844 (N.D. Fla. 1995) (explaining concept of privity).  Without a showing of contractual privity with E.N. Suttin or

---

[9]     The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but the Feinbergs do not reside in Louisiana. *See* Cmplt. ¶ 836.  Besides, redhibition requires a showing that the allegedly defective product – here, drywall – failed for its intended purpose. *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This showing is unavailable in light of the Court's determination that the drywall is "serving its intended structural purpose." Order & Reasons at 23.

Vintage Properties, the Feinbergs' express and implied warranty claims against those entities cannot survive.[10]   *See, e.g., Borchardt v. Mako Marine Intern., Inc.*, No. 08-61199-CIV, 2009 WL 3856678, *4 (S.D. Fla. Nov. 17 2009) (dismissing warranty claims where there was "no allegation … to establish that there [was] privity of contract").

> b.   *The Feinbergs' express and implied warranty claims are foreclosed by the plain language of the Purchase and Sale Agreement.*

Although the Feinbergs were in contractual privity with Promenade, the warranty claims against Promenade fare no better.  The implied warranty claims must be dismissed because the Purchase and Sale Agreement between the parties disclaimed all such warranties:

> SELLER'S LIMITED WARRANTY IS THE ONLY EXPRESS WARRANTY GIVEN.   SELLER'S LIMITED WARRANTY IS GIVEN IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, AND MERCHANTABILITY AS TO THE PROPERTY, COMMON PROPERTIES AND ALL FIXTURES OR ITEMS OF PERSONAL PROPERTY SOLD PURSUANT TO THIS AGREEMENT OR ANY OTHER REAL OR PERSONAL PROPERTY WHATSOEVER CONVEYED HEREBY, WHETHER ARISING FROM CUSTOM, USAGE OR TRADE, COURSE OF DEALING, CASE LAW OR OTHERWISE, ANY AND ALL OF WHICH SELLER HEREBY DISCLAIMS.

Exh. A ¶ 15.  A copy of Seller's Limited Warranty is identified as Exhibit II to the Second Addendum to the Purchase and Sale Agreement attached hereto as **Exhibit "A"**.

Contractual exclusions of implied warranties like the one at bar are valid and enforceable under Florida law.  *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v.*

---

[10]   To be sure, the Omnibus Complaint asserts – without a shred of detail – that the Feinbergs (along with every other plaintiff in this lawsuit) "were in privity" with the Feinberg Defendants or were "foreseeable third party beneficiaries of any warranties."  Cmplt. ¶ 2674.  These are classic unsupported legal conclusions that this Circuit has long classified as inadequate to survive a motion to dismiss.  *See Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (reaffirming that Fifth Circuit does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in resolving Rule 12(b)(6) challenges) (internal marks and citation omitted); *see also Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc.*, No. 07-80767-CIV, 2008 WL 5111260, *7 (S.D. Fla. Dec. 3, 2008) (dismissing third-party-beneficiary claim where complaint failed to allege that contracting parties intended contract to benefit third party).

*B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (condominium developer properly disclaimed any and all express and implied warranties); *Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties).

The Feinbergs' express warranty claims should be dismissed as well. The limited warranty expressly limits the duration of any express warranties for non-structural defects to, at most, two years from the date the home was delivered. *See* Exh. A, Second Addendum, ¶ 3, Exhibit II (guaranteeing only major structural defects, defined as "actual physical damage" to certain "load-bearing" portions of the home, which the drywall is not, for five years and limiting other warranty coverage to at most two years). The Feinbergs – who signed their Construction Agreement with Promenade on February 2, 2005 – have not alleged that they experienced a defect within the limited warranty period. Their express warranty claims, in other words, are barred by the terms of the warranties themselves. "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects-defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *see also Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage

beyond this date").; *Ocana v. Ford Motor Co*., 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms."); *see also Bland v. Freightliner, LLC*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002) ("A warranty, whether express or implied, is fundamentally a contract.").

      c.     *In any event, Plaintiffs cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose*.

There are two more reasons to dismiss Plaintiffs' implied warranty claims. First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Promenade or the other Feinberg Defendants, even if E.N. Suttin and Vintage Properties had participated in the construction of the Feinbergs' home. That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc*., 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

The Feinberg Defendants are not bound by any implied warranties because they are not considered merchants under Florida warranty law. The Feinberg Defendants contract with their clients to provide a service: home construction. Because the inclusion of drywall in Plaintiffs' homes was incidental to the construction services that Promenade – and allegedly E.N. Suttin and Vintage Properties - rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances. *See In re Sunshine-Jr*., 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc*., 160 F.3d 1322,

1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose (Cmplt. ¶ 2678) cannot survive because Plaintiffs have not – and indeed cannot – allege that the drywall in their homes was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used.  The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>."   Order & Reasons at 23 (emphasis added); *id*. at 18 ("[T]he Chinese drywall in the instant matter is operating as intended[.]").  This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[11]

### 6.      Plaintiffs' breach of contract claim (Count VII) must be dismissed.

The Feinbergs cannot maintain a claim for breach of contract (Count VII) against E.N. Suttin or Vintage Properties for the simple reason that they never contracted with E.N. Suttin or Vintage Properties.[12]  They only contracted with Promenade, leaving their only contractual remedy with that party.  *See* Exh. A.  "It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach."  *Cibran Enters., Inc. v. BP Prods. N.A., Inc*., 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks and citation omitted); *Banco Ficohsa v. Aseguradora Hondurena, S.A.*, 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle).

Though the Feinbergs did contract with Promenade, they too have failed to allege a viable claim for breach.  The Omnibus Complaint states only that Promenade "contracted with the

---

[11]       *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc*., No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

[12]       Although the limited warranty provided with the Purchase and Sale Agreement lists the name and address of "Vintage Properties V, Ltd.," that entity did not sign the limited warranty, nor has that entity been sued in this case.  The contract was executed by Promenade, and the limited warranty was incorporated by reference into the Purchase and Sale Agreement executed by Promenade.  Exh A ¶ 15.

[Plaintiffs] to construct homes that would be free from defects." Cmplt. ¶ 2701. This assertion is insufficient on its face, because it fails to identify the source of Promenade's alleged duty to construct a home "free from defects." If the Feinbergs hope to salvage their contract claim, they must, at the very least, "identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co*., No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Ins. Concepts & Design, Inc. v. Healthplan Serv., Inc*., 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiffs will undoubtedly try to justify their skeletal allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiffs from satisfying basic pleading standards. It does not cloak them with immunity from the requirements of due process. The concern is not merely academic, either. Contrary to the boilerplate allegation in the Omnibus Complaint, Promenade did not agree to build a home "free from defects." Cmplt. ¶ 2701. Rather, the Purchase and Sale Agreement (Exh. A) states that Promenade would construct the home in accordance with construction standards, plans and specifications agreed to by the parties  Exh. A ¶ 6.

### 7.    Plaintiffs cannot state a claim for private nuisance (Count XI).

Plaintiffs' private nuisance claim (Count XII) would fail even if it were not barred by the economic loss rule. *See supra*. at section A.1. An action for private nuisance requires the claimant to establish an injury to his or her own property in connection with the use of the real property of someone else. *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Omnibus Complaint does not allege that Plaintiffs' purported injuries resulted from real property owned by the Feinberg Defendants. On the contrary, the nuisance claim is predicated

entirely on the allegation that "structures owned by Plaintiffs" are to blame.  Cmplt. ¶ 2736.  That

allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace &*

*Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based

upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased

the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant

may not be found liable for a nuisance in the absence of the right to possession or control of the

land on which the nuisance is located[.]").

### 8.      Plaintiffs cannot bring a claim for unjust enrichment (Count XIII).

Plaintiffs' unjust enrichment claim (Count XIII) fails for multiple reasons.  For one, the

Feinbergs' Purchase and Sale Agreement with Promenade forecloses a quasi-contractual theory.  "It

is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not

available where there is an adequate legal remedy."  *American Honda Motor Co. v. Motorcycle*

*Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Where (as here) the plaintiff admits to

the existence of a contract, "claims arising out of that contractual relationship will not support a

claim for unjust enrichment."  *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa,*

*Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d  1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim

where parties "admitted to the existence of express contracts").[13]

The Feinbergs cannot maintain an unjust enrichment claim against E.N. Suttin and Vintage

Properties either.  The elements of unjust enrichment are that "(1) the plaintiff has conferred a

benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has

accepted or retained the benefit conferred and (4) the circumstances are such that it would be

inequitable for the defendant to retain the benefit without paying fair value for it."  *Commerce*

*Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997)

---

[13]      Even if the existence of an express contract did not bar the Feinbergs' unjust enrichment claim
against Promenade, the economic loss rule would.  *Supra*. at section A.1.

(emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

The Feinbergs' unjust enrichment claim stumbles on the first and fourth of these elements. The first element is not satisfied because the Feinbergs cannot show that they "conferred a benefit" on E.N. Suttin or Vintage Properties.  As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Promenade to retain whatever benefit it received for constructing the Feinberg home.  After all, it cannot be disputed that Promenade paid a third party (i.e., a subcontractor or distributor) for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Industries*, 636 So. 2d 767, 770 (Fla 4th DCA 1994), "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>." Overruled on other grounds by *Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

Thus, not only is the Feinbergs' unjust enrichment claim barred because those homeowners did not "enrich" E.N. Suttin or Vintage Properties, it is precluded because whatever compensation Promenade received for the drywall was not retained "unjustly."

### 9.     The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIV).

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA").  Cmplt. ¶ 2754.  A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2)

causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc*., No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each statement and the person responsible for making each statement; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202, (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges no specific facts in support of Plaintiffs' FDUTPA claim.  *See* Cmplt. ¶ 2755.  It does not identify a single instance in which the Feinberg Defendants – by their words or conduct – deceived Plaintiffs or treated them unfairly.   Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5

(M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[14]

Plaintiffs' failure, however, is not merely one of pleading.  Their FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to them.  *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co*., No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury).  Because Promenade provided services[15] – namely, the construction of a house – Plaintiffs can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Promenade actually provided and the services that Promenade was required to provide.[16]   *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties") (citations omitted).

As a matter of law, Plaintiffs cannot make this showing.  There is zero evidence – and Plaintiffs do not appear to suggest – that the manner in which Promenade <u>constructed</u> the home was in any way responsible for the allegedly defective drywall.  The quality of construction is simply

---

[14]     Plaintiffs' FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'"  *Infinity Global, LLC v. Resort at Singer Island, Inc*., No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

[15]     As noted above, neither E.N. Suttin nor Vintage Properties provided any services to the Feinbergs.

[16]     The same would hold true if Promenade had delivered a "product" – i.e., a completed home – rather than providing a "service."  To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered.  *See Collins*, 894 So. 2d at 990.

not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." Order & Reasons at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of that claim. Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995). Count XIV must be dismissed for that reason as well.

## 10. Plaintiffs' claim for equitable relief and medical monitoring (Count XV) cannot go forward against the Feinberg Defendants.

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XV). This hybrid, catchall-type claim seeks, among other things, an order that Promenade and the other Feinberg Defendants "buy back or rescind" their contracts and "create, fund, and support a medical monitoring program." Cmplt. ¶ 2761. This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Since each of Plaintiffs' substantive claims is due for dismissal, so too is their derivative claim for injunctive relief. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because

Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements.  *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate and entitle them to the extraordinary remedy of an injunction.  *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action.  The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring.  It is hardly clear, then, that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id.*

The Omnibus Complaint does not even attempt to properly allege these elements.  Instead, Count XV sets for a series of legal conclusions – e.g., "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of factual detail.  Plaintiffs fail to identify, for example, any medical condition (latent or otherwise) supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition.  <u>Plaintiffs do not even claim to be ill</u>.  They would have this Court speculate about their imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings.  *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc*., 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is

itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

Finally, the Feinbergs' claim for medical monitoring is intercepted by the economic loss rule, as they were in direct privity with Promenade.   In fact, the allegedly hazardous "exposure" upon which the Feinbergs' medical monitoring claim is based was caused, according to the Omnibus Complaint, by Promenade's "negligent and otherwise tortious conduct."  Cmplt. ¶ 2765. However, as explained above, the contractual privity ELR precludes the Feinbergs from circumventing their contract through allegations in tort.  *See supra*. at section A.1.[17]

### III. CONCLUSION

For all of the foregoing reasons, Defendants Promenade Developers, Ltd.., E.N. Suttin Construction Company and Vintage Properties, Inc. respectfully request an order dismissing the Amended Omnibus Class Action Complaint with prejudice, and awarding them their attorneys' fees and costs in defending this action pursuant to Florida's Deceptive and Unfair Trade Practices Act..

---

[17]      While Plaintiffs have mechanically alleged the basic elements of a claim for medical monitoring, the Feinberg Defendants vigorously dispute the availability of this unusual form of relief, particularly because the Omnibus Complaint does not name a single medical condition caused by the allegedly defective drywall, let alone identify a medical procedure that could monitor or treat such condition.  *See Petito v. A.H. Robins Co., Inc*., 750 So. 2d 103, 106 (Fla. 3d DCA 1999) (setting forth seven elements for cause of action for medical monitoring).

{FT660809;3}

Dated:  July 9th, 2010

Respectfully submitted,

**AKERMAN SENTERFITT**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224

By: /s/ _Stacy Bercun Bohm_____
    Hugh J. Turner Jr., Esq**.**
    Florida Bar Number:  203033
    Email:  hugh.turner@akerman.com
    Stacy Bercun Bohm, Esq.
    Florida Bar Number:  022462
    Email:  stacy.bohm@akerman.com

*Attorneys for Defendants, Promenade Developers, Ltd.,
E.N. Suttin Construction Co., and Vintage Properties,
Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July  9th, 2010, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller by U.S. Mail and email or by hand delivery and email upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

/s/   Stacy Bercun Bohm_____