# Exhibit "B"

{M2683971;1}

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED DRYWALL          MDL No. 02047
          PRODUCTS LIABILITY LITIGATION          SECTION L

                                           JUDGE FALLON
                                           MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

SEAN and BETH PAYTON, *et al*. v.
KNAUPF GIP KG, *et al.*,
Case No. 2:09-cv-07628-EEF-JCW

_____/

**MEMORANDUM OF LAW IN SUPPORT OF**
**J. HELM CONSTRUCTION, INC.'S MOTION TO DISMISS WITH PREJUDICE**
**THE CLAIMS BROUGHT AGAINST IT IN THE**
**AMENDED PAYTON OMNIBUS CLASS ACTION COMPLAINT**

Defendant J. Helm Construction, Inc. ("J. Helm"), hereby files its Memorandum of Law

in Support of J. Helm Construction, Inc.'s Motion to Dismiss with Prejudice the Claims Brought

Against it in the Amended Payton Omnibus Class Action Complaint (the "Motion").

**MEMORANDUM OF LAW**

In their rush to appoint blame for the allegedly defective drywall in their homes,

Plaintiffs have added J. Helm – the Florida builder that constructed Plaintiffs homes – to the

more than 400 defendants named in the Amended Omnibus Class Action Complaint (the

"Amended Omnibus Complaint").[1]  Plaintiffs have added J. Helm to this lawsuit even though

there is no evidence that J. Helm failed to perform its contractual and professional duties to the

fullest.  This is a products liability action; the very style of the case denotes that fact.  A

_____

[1]      This Memorandum cites to the Amended Omnibus Complaint as "Cmplt. ¶ __."

{M2914875;4}

homebuilder like J. Helm, who had absolutely <u>nothing</u> to do with the manufacture, marketing or distribution of the allegedly defective drywall, simply does not belong in this lawsuit.

The futility of the claims asserted against J. Helm underscores this point. In a shotgun pleading that makes no effort to distinguish between J. Helm and the entities actually responsible for the drywall, Plaintiffs have offered a laundry list of generic common law and statutory theories. Every one of these claims should be stayed, however, because Plaintiffs have not complied with the notice provisions of Chapter 558, Florida Statutes. Alternatively, the claims asserted against J. Helm should be dismissed as fatally defective pursuant to Rule 12(b)(6).

## I. BACKGROUND

**A. Plaintiffs' Allegations Against J. Helm.**

The Amended Omnibus Complaint heedlessly lumps together thousands of parties over more than 500 pages of truly boilerplate allegations. Specifically, Plaintiffs allege the following eleven claims against J. Helm:[2] Negligence (Count I, ¶¶ 2640-47); Negligence Per Se (Count II, ¶¶ 2648-54); Strict Liability (Count III, ¶¶ 2655-72); Breach of Express and/or Implied Warranties (Count IV, ¶¶ 2673-80); Breach of Implied Warranty of Habitability (Count VI, ¶¶ 2693-99); Breach of Contract (Count VII, ¶¶ 2700-03); Private Nuisance (Count XI, ¶¶ 2735-41); Negligent Discharge of Corrosive Substance (Count XII, ¶¶ 2742-48); Unjust Enrichment

---

[2] There are fifteen Counts in the Amended Omnibus Complaint, but only eleven of them arguably apply to J. Helm. The four remaining Counts do not. Specifically, Count V (for breach of warranty under Florida's condominium code) does not apply to J. Helm because Plaintiffs allegedly purchased residential homes, not condominiums. Cmplt. ¶¶ 2681-92. Count VIII applies to "Louisiana Home Builders Only," and no one disputes that J. Helm resides in Florida. *Id.* ¶¶ 2293 & 2704-10. Count IX ("Redhibition – by Louisiana Plaintiffs") does not apply because Plaintiffs are allegedly residents of Florida, not Louisiana. *Id.* ¶¶ 563, 835 & 2711-20. Finally, Count X (Louisiana Products Liability Act) applies solely to "Manufacturing" or "Distributor" Defendants, whereas the Amended Omnibus Complaint identifies J. Helm as a "Developer/Builder" Defendant. *Id.* ¶¶ 2293 & 2721-34.

(Count XIII, ¶¶ 2749-52); Violation of Florida's Deceptive and Unfair Trade Practices Act (Count XIV, ¶¶ 2753-57); and Equitable and Injunctive Relief and Medical Monitoring (Count XV, ¶¶ 2758-70). Each of these claims is governed by and arises under the law of Florida.[3]

**B.      The Governing Legal Standard.**

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the Complaint, even if proven true, would not entitle the plaintiff to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12. Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions." *Id.* at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Furthermore, a complaint should be dismissed if it constitutes nothing more than a "shotgun pleading," in which each count incorporates all preceding paragraphs. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (finding that the complaint was a shotgun pleading, because, *inter alia*, each count incorporated nearly all the preceding paragraphs and as a result "each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.").

---

[3]     Because Plaintiffs filed their claims against J. Helm directly in the Eastern District of Louisiana – rather than filing in a Florida court and having the matter transferred to this forum – this Court should apply the choice-of-law rules of Louisiana. *See Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 n.6 (5th Cir. 1981). Under Louisiana's choice-of-law rules, Florida has, by far, the most significant relationship with the dispute. Plaintiffs' alleged drywall injuries occurred in Florida, the subject properties are located in Florida, and J. Helm resides in Florida. *See* Cmplt. ¶ 2293; *Gulf States Utilities Co. v. NEI Peebles Elec. Prods., Inc.*, 819 F. Supp. 538, 552-53 (M.D. La. 1993) (discussing Louisiana choice of law factors and statutes). Florida substantive law therefore governs each of Plaintiffs' claims against J. Helm.

## II. ARGUMENT

**A.     The Court Should Stay This Action Pending Plaintiffs' Compliance With Chapter 558, Florida Statutes.**

This lawsuit cannot go forward against J. Helm until Plaintiffs have complied with the notice provisions of Chapter 558, Florida Statutes.  Chapter 558 requires a homeowner alleging a construction defect to serve a "written notice of claim" on the builder "at least 60 days before filing any action."  *See* Fla. Stat. § 558.004.  The failure to follow this mandatory notice provision means the action "shall" be stayed:

> A claimant may not file an action subject to this chapter without first complying with the requirements of this chapter.  If a claimant files an action alleging a construction defect without first complying with the requirements of this chapter, on timely motion by a party to the action <u>the court shall stay the action</u>, without prejudice, and <u>the action may not proceed until the claimant has complied with such requirements</u>.

*Id.* § 558.003 (emphasis added); *see id.* § 558.002(5) (defining a "construction defect" as, among other things, a deficiency in construction resulting from defective material).

Plaintiffs have indisputably failed to comply with Chapter 558.  Neither Etter nor Wagner have supplied J. Helm with a written notice of claim, as required by the plain language of the statute.  They do not allege otherwise.  The proper remedy, therefore, is to stay or abate this action with respect to J. Helm until Plaintiffs have demonstrated full compliance with Chapter 558. Until then, Plaintiffs' claims cannot go forward. *See Hebden v. Roy A. Kunnemann Const., Inc.*, 3 So. 3d 417, 419 (Fla. 4th DCA 2009) ("The one remedy specified for noncompliance with [Chapter 558] is abatement, upon a timely motion, until the offending party complies with the statutory procedures.").

**B.    Each of Plaintiffs' Causes of Action Against J. Helm Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.**

As an initial matter, the entire Complaint should be dismissed as a shotgun pleading, because, *inter alia*, each count incorporates all preceding paragraphs. *Magluta*, 256 F.3d at 1284; *see also Greif v. Jupiter Med. Center*, Case No.: 08-80070-CIV; 2008 WL 2705436, *4 (S.D.Fla. 2008) (dismissing shotgun complaint and instructing that "[a]lthough other numbered paragraphs may be incorporated by reference, this must be done with particular care so that only relevant paragraphs are referenced."). Further, the causes of action should also be dismissed for the reasons set forth below.

**1.    Plaintiffs' tort claims (Counts I, II, III, XI, XII, XIII and XV) are barred in whole or in part by the Economic Loss Rule.**

The Economic Loss Rule (or "ELR") bars plaintiffs from circumventing their contractual arrangements through allegations in tort. *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 & n.1 (Fla. 2004). Florida law applies the ELR in two contexts: "(1) The contractual privity ELR where two parties are in privity of contract, and (2) The products liability ELR where a defective product causes damage, but only to itself." Order & Reasons (January 13, 2010) at 22.[4] This Court has explained how the contractual privity ELR applies to homebuilders like J. Helm:

> The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contractor breach, and in other limited circumstances. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.

---

[4]    The Court's January 13, 2010 "Order & Reasons" (MDL No. 2047, Section L) applies by its terms to all drywall MDL cases pending before the Court, including this one.

*Id.* at 30 (citation omitted) (emphasis added).   Underlying the contractual privity ELR is the common-sense notion that "contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." *Indemnity Ins. Co.*, 891 So. 2d at 536-37.

The Plaintiffs – who were indisputably in privity of contract with J. Helm (Comp. Exh. A to Motion)– assert numerous tort claims in the Amended Omnibus Complaint, including Negligence (Count I), Negligence Per Se (Count II), Strict Liability (Count III), Private Nuisance (Count XI), Negligent Discharge of a Corrosive Substance (Count XII), Unjust Enrichment (Count XIII) and Medical Monitoring (Count XV).   The ELR intercepts each of these claims, however, because "the alleged duty breached is derived from the contractual relationship" between the parties. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (internal marks omitted).   The central conceit of every one of the Plaintiffs' tort claims is that J. Helm built a home with defective Chinese-manufactured drywall. *E.g.*, Cmplt. ¶ 2702.   Because that alleged wrong is derived from the parties' contractual relationship, it cannot give rise to a tort claim.   For this reason, Plaintiffs' tort claims must be dismissed.

Furthermore, and aside from the question of privity, Plaintiffs cannot sue in tort for economic losses.   Florida courts have defined economic loss in this context as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain."   Order & Reasons at 22 (internal marks and citation omitted).   In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier

notwithstanding the lack of privity between the parties.   The Court  held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages.  *Id.* at 1247.  Because the plaintiffs were seeking only such economic damages, the ELR barred their tort claims against the supplier.  *Id.* at 1246-48.

The same reasoning applies here.  Regardless of whether they are in privity with J. Helm, Plaintiffs cannot sue J. Helm in tort for purely economic losses.  As a matter of law, the ELR limits them to recovering non-economic losses (e.g., for personal injury) and damages to property other than the houses themselves.[5]  *See Casa Clara*, 620 So. 2d at 1247-48.  Plaintiffs must therefore replead their tort claims to seek only non-economic losses.  *Cf.* Cmplt. ¶ 2647 (seeking general "damages" on negligence count).

## 2.     Plaintiffs' negligence allegations (Count I) are false and improperly pleaded.

Plaintiffs' negligence claim (Count I) really illustrates why J. Helm does not belong in this lawsuit.  The Amended Omnibus Complaint alleges that J. Helm somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question.  Cmplt. ¶ 2641.  The Complaint further alleges that J. Helm had a duty to provide Plaintiffs with certain warnings about the drywall.  *Id.* ¶ 2644.

Besides being intercepted by the ELR (*see* discussion, *supra*), these allegations are indisputably false.   J. Helm, for example, did not "design," "manufacture," or "import" any drywall, and Plaintiffs know it.   Yet even assuming the truth of these specious allegations, they

---

[5]     Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses. The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  Order & Reasons at 19-20.

do not state a claim for relief.  Under Florida law, a negligence claim requires the plaintiff to plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached.  *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (applying Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case.").  Plaintiffs can allege neither prerequisite.

To begin with, J. Helm owed no duty of care with respect to Plaintiffs' drywall.  Under Florida law, even manufacturers, retailers and distributors – all of whom arguably bear a *greater* responsibility toward their products than a contractor like J. Helm – have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous."  *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Amended Omnibus Complaint does not allege otherwise.[6]

In the same vein, J. Helm cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects.  *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action ... only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also*

---

[6]    "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs....  In other words ... a commodity burdened with a latent danger which derives from the very nature of the article itself."  *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of illustration, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are <u>not</u> "inherently dangerous."  Drywall would certainly not be an "inherently dangerous" product under Florida law.

*Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991).  The alleged defects in the drywall are plainly "latent" (*e.g.,* Cmplt. ¶ 2611), and Plaintiffs have not alleged actual or implied knowledge by J. Helm.

The result is that these Plaintiffs cannot parlay their allegedly defective drywall into a negligence claim against J. Helm.  Absent an "inherently dangerous" product or actual or implied knowledge – neither of which Plaintiffs can allege in good faith – the first Count fails as a matter of law.  The boilerplate, and wholly unsupported assertion that J. Helm "knew or should have known" that the drywall would "harm" Plaintiffs (*id.* ¶ 2646) is really a legal conclusion.  That conclusory allegation cannot possibly salvage a negligence claim, particularly one that flies in the face of such basic principle of Florida law.

### 3.    Plaintiffs have not stated a claim for negligence per se (Count II).

Besides being barred by the ELR, Plaintiffs' negligence per se claim (Count II) is poised for dismissal because the Amended Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se for two reasons.  First, they have not identified a statute that J. Helm allegedly violated, much less explained how that violation occurred.  Rather, the Amended Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes."  Cmplt. ¶ 2651. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that J. Helm allegedly violated are "designed to protect the general public rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, Plaintiffs' negligence per se claim appears to be nothing more than a repackaged negligence claim.[7] It should be summarily dismissed for that reason as well.

### 4.    Plaintiffs cannot sue J. Helm  in strict liability (Count III).

Plaintiffs' strict liability claim  (Count III) is premised on the sweeping and patently false assertion that J. Helm was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public."  Cmplt. ¶ 2656.  This theory is foreclosed by the ELR (*supra* at II(B)(1)) and by at least two established principles of Florida law.

First and foremost, J. Helm cannot be sued in strict liability because it did not manufacturer or distribute the allegedly defective drywall.  The Complaint itself identifies J. Helm as a "Developer/Builder."  Cmplt. ¶ 2293.  Strict products liability, however, does not apply to homebuilders like J. Helm. *See Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DA 1986) (distinguishing between

---

[7]    Plaintiffs' claim for "Negligent Discharge of a Corrosive Substance" (Count XII) is similarly duplicative of their garden-variety negligence claim.  Florida law does not appear to recognize an independent cause of action for Negligent Discharge.

manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiffs could sue a contractor in strict liability (and they cannot), the allegedly defective drywall is not a "product" for purposes of applying this tort. Rather, the drywall is considered a structural improvement to Plaintiffs' homes, and "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008); *see Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 924 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water and Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

### 5. Plaintiffs cannot maintain a warranty claim (Counts IV & VI).

In Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.[8] An initial ground for dismissal is the fact that the Amended Omnibus Complaint does not identify the source of those purported warranties – let alone explain how J. Helm might have breached them. In addition, the warranty claims should be dismissed for the reasons stated below.

---

[8]    The Amended Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but the Plaintiffs do not reside in Louisiana. *See* Cmplt. ¶¶563 & 835. Besides, redhibition requires a showing that the allegedly defective product – here, drywall – failed for its intended purpose. *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This showing is unavailable in light of the Court's determination that the drywall is "serving its intended structural purpose." Order & Reasons at 23.

As a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by J. Helm. That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

J. Helm is not bound by any implied warranties because it is not considered a merchant under Florida warranty law. J. Helm contracts with its clients to provide a service: home construction. That is why the Plaintiffs' contract is called a "Construction Agreement" and not a "purchase agreement." Because the inclusion of drywall in Plaintiffs' homes was incidental to the construction services that J. Helm rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances. *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the implied warranty of fitness for a particular purpose claim (Cmplt. ¶ 2678) cannot survive because Plaintiffs have not – and indeed cannot – allege that the drywall in their homes was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used. The Court has already determined that "[t]he Chinese drywall stands just as any

other functioning drywall, <u>serving its intended structural purpose</u>."   Order & Reasons at 23 (emphasis added); *id.* at 18 ("[T]he Chinese drywall in the instant matter is operating as intended[.]").   This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[9]

### 6.   Plaintiffs' breach of contract claim (Count VII) must be dismissed.

Plaintiffs have failed to allege a viable claim for breach of contract.   The Amended Omnibus Complaint states only that J. Helm "contracted with the [Plaintiffs] to construct homes that would be free from defects."   Cmplt. ¶ 2701.   This assertion is insufficient on its face, because it fails to identify the source of J. Helm's alleged duty to construct a home "free from defects."   If Plaintiffs hope to salvage their contract claim, they must, at the very least, "identify the relevant portion of the contract breached."   *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc.*, 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiffs will undoubtedly try to justify their skeletal allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiffs from satisfying basic pleading standards.   It does not cloak them with immunity from due process.   For these reasons, Plaintiffs breach of contract claim cannot survive.

---

[9]   *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

7.     **Plaintiffs cannot state a claim for private nuisance (Count XI).**

Plaintiffs' private nuisance claim (Count XII) would fail even if it were not barred by the ELR.  *See supra* at II(B)(1).  An action for private nuisance requires the claimant to establish an injury to his or her own property in connection with the use of the real property of someone else. *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Amended Omnibus Complaint does not allege that Plaintiffs' purported injuries resulted from real property owned by J. Helm.  On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame.  Cmplt. ¶ 2736. That allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

8.     **Plaintiffs cannot bring a claim for unjust enrichment (Count XIII).**

Plaintiffs' unjust enrichment claim (Count XIII) fails because the Plaintiffs' Construction Agreement with J. Helm forecloses a quasi-contractual theory.  "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Where (as here) the plaintiff admits to the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust

enrichment." *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d  1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").[10]

### 9.    The Amended Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIV).

In the overbroad style that is the hallmark of the Amended Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA").   Cmplt. ¶ 2754.   A FDUTPA claim comprises three distinct elements:  (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."   *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).   *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").   "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).   At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible

---

[10]     Even if the existence of an express contract did not bar the Plaintiffs' unjust enrichment claim against J. Helm, the ELR would. *Supra* at II(B)(1).

for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Amended Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges <u>no specific facts</u> in support of Plaintiffs' FDUTPA claim.  *See* Cmplt. ¶ 2755.  It does not identify a single instance in which J. Helm – by its words or conduct – deceived Plaintiffs or treated them unfairly.   Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[11]

Plaintiffs' failure, however, is not merely one of pleading.  Their FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to them.  *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury).  Because J. Helm provided services – namely, the construction of two houses – Plaintiffs can establish "actual damages" <u>only</u> by showing a

---

[11]     Plaintiffs' FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'"  *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

difference between the "market value" of the services that J. Helm actually provided and the services that J. Helm was required to provide.[12]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties") (citation omitted).

As a matter of law, Plaintiffs cannot make this showing.  There is zero evidence – and Plaintiffs do not appear to suggest – that the manner in which J. Helm <u>constructed</u> the homes was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." Order & Reasons at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of that claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIV must be dismissed for that reason as well.

---

[12]     The same would hold true if J. Helm had delivered a "product" – i.e., a completed home – rather than providing a "service."  To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

**10.    Plaintiffs' claim for equitable relief and medical monitoring (Count XV) cannot go forward against J. Helm.**

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XV).  This hybrid, catchall-type claim seeks, among other things, an order that J. Helm "buy back or rescind" its contracts and "create, fund, and support a medical monitoring program." Cmplt. ¶ 2761.  This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Since each of Plaintiffs' substantive claims is due for dismissal, so too is their derivative claim for injunctive relief.  *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support to their request for an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm. Injunctions under both federal and Florida law require these elements.  *See, e.g., Tucker v. Citigroup Global Mkts Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Amended Omnibus Complaint –

including, most notably, for "compensatory and statutory damages" – are inadequate and entitle them to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring. It is hardly clear, then, that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Amended Omnibus Complaint do not state an actionable claim. At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Amended Omnibus Complaint does not even attempt to properly allege these elements. Instead, Count XV sets for a series of legal conclusions – e.g., "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of factual detail. Plaintiffs fail to identify, for example, any medical condition

(latent or otherwise) supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition. <u>Plaintiffs do not even claim to be ill</u>. They would have this Court speculate about their imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring. It states a series of legal conclusions, and those "do not suffice." *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate). The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings. *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

Finally, the Plaintiffs' claim for medical monitoring is intercepted by the ELR, as they were in direct privity with J. Helm. In fact, the allegedly hazardous "exposure" upon which the Plaintiffs' medical monitoring claim is based was caused, according to the Amended Omnibus Complaint, by J. Helm's "negligent and otherwise tortious conduct." Cmplt. ¶ 2765. However,

as explained above, the contractual privity ELR precludes the Plaintiffs from circumventing their contract through allegations in tort. *See supra* at II(B)(1).

### III. CONCLUSION

WHEREFORE, for the reasons stated in the Motion and the foregoing Memorandum of Law, Defendant J. Helm Construction, Inc. respectfully requests that the Court enter an order dismissing the claims against it with prejudice pursuant to Fed. R. Civ. Pro. 12(b)(6), and awarding J. Helm its fees in defending this action against the Plaintiffs pursuant to the Construction Agreements and pursuant to Florida's Deceptive and Unfair Trade Practices Act.

Dated:  July 12, 2010

Respectfully submitted,

**AKERMAN SENTERFITT**

BY:  /s/ Michael A. Sayre
     Valerie B. Greenberg, Esq. (Fla. Bar No. 026514)
     Samantha Kavanaugh, Esq. (Fla. Bar No.0194662)
     Michael Sayre, Esq. (Fla. Bar No. 17607)
     One Southeast Third Avenue, 25th Floor
     Miami, FL  33131-1714
     Phone:  (305) 374-5600
     Fax:  (305) 374-5095
     Email:  valerie.greenberg@akerman.com
           samantha.kavanaugh@akerman.com
           michael.sayre@akerman.com

     *Attorneys for J. Helm Construction, Inc.*

Co-Counsel for J. Helm Construction, Inc.
Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 18133)
D. Skylar Rosenbloom (La. Bar No. 31309)
Canal Place
365 Canal Street · Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
       Susie.morgan@phelps.com
       Skylar.rosenbloom@phelps.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum of Law in Support of J. Helm Construction, Inc.'s Motion to Dismiss With Prejudice the Claims Brought Against it in the Amended Payton Omnibus Class Action Complaint* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113, rherman@hhke.com, and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163, kmiller@frilot.com, by U.S. Mail and email upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 12th day of July 2010.

/s/ Michael A. Sayre _____