```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA



IN RE:  CHINESE MANUFACTURED        *    MDL 2047
        DRYWALL PRODUCTS            *
        LIABILITY LITIGATION        *    September 24, 2009
                                    *
This Document Relates to All Cases  *    9:00 a.m.
* * * * * * * * * * * * * * * * * * *



                    ORAL ARGUMENT BEFORE THE
                    HONORABLE ELDON E. FALLON
                    UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the PSC:                  Levin Fishbein Sedran & Berman
                              BY:  ARNOLD LEVIN, ESQ.
                              510 Walnut Street, Suite 500
                              Philadelphia, PA 19106

For the HSC:                  Sivyer Barlow & Watson
                              BY:  NEAL A. SIVYER, ESQ.
                              100 S. Ashley Drive, Suite 2150
                              Tampa, Florida 33602

Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
                              500 Poydras Street, Room B-406
                              New Orleans, Louisiana 70130
                              (504) 589-7778



Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

## PROCEEDINGS

### (September 24, 2009)

**THE DEPUTY CLERK:** Everyone rise.

**THE COURT:** Be seated, please. I have before me two motions. The plaintiffs have filed an emergency motion to protect putative class members from communication by the builders. That's the first motion.

In essence, the plaintiffs say that the builders are communicating with property owners who have made claims or intend to make claims against them regarding their installation of Chinese manufactured drywall in their respective properties. The builders, so say the plaintiffs, are repairing the defective drywall and obtaining releases and assignments, which the plaintiffs feel is abusive and also prejudicial.

The builders respond that their communications are not deceptive. They take the position that the plaintiffs have failed to meet their requirements as expressed by the *Gulf Oil* case, that under the Florida Statute 558 they have a right and perhaps a duty to remedy the claims against them, and that the releases they are obtaining are not overreaching and are limited to the property damage.

I'll hear from the parties.

**MR. LEVIN:** Good morning again, Your Honor. Arnold Levin.

This is not as complicated and as prolix as it

1  seems.  We are not soliciting cases as the defendants indicate,
2  the builders.  We are not here to do what two other groups of
3  plaintiffs' counsel attempted to do, to stop remedial repairs
4  to the buildings.  We welcome all of that.  What we are here to
5  do is to see to it that it's done properly and that our
6  fiduciary obligation to the class, our duty as well as the
7  Court's, is upheld.
8             We have given you, Your Honor, several releases
9  that are being utilized.  Some of them, as we read them, are
10 old-time general releases, just like the old days 45 years ago
11 when some of us handled red car versus blue car and property
12 damage releases included personal injury.  Some of them
13 responsibly exclude personal injury, but what they do is take
14 complete releases for every bit of damages that you can think
15 of, general release, and release third parties and assign all
16 claims to the builders.
17            They don't need that.  The law has dealt with
18 joint tortfeasors' releases for as long as I can remember, and
19 that's a long time.  There are some states that have setoffs,
20 some states that have *pro tanto* releases, some states that have
21 pro rata releases.  This buys the settling builder a place in
22 heaven without interfering with the homeowners' rights to
23 recover against third parties.  That's all they need.
24            At the same time, we believe that the Court
25 should approve a statement that is given to these individuals

1  as to what this litigation is.  Several courts have done the
2  same, and they're in our briefs.  I'm not going to go through
3  the whole brief with *Impervious Paint* and *School Asbestos* in
4  the Third Circuit and the *Kleiner* case down in Atlanta, but
5  even the *Burford* case a few miles up the road, in the Western
6  District of Louisiana, took a look at the same situation and
7  approved remedial relief in the form of the releases.  This
8  case was answered by the defendants in their brief the only way
9  they could, in a four-line footnote that basically said it's
10 wrong.
11            Now, the defendants take the position that this
12 Court's inherent authority under Rule 23(d) can only be
13 utilized if the class is certified.  That's not the case.  This
14 Court recognized in Pretrial Order 1(B) that its order, even
15 though withdrawn and now is a guidepost for us to develop a new
16 order, can apply to absent class members, and that's basically
17 all that we ask.
18            We have analyzed many of the releases that we
19 have.  They are subject to confidentiality orders; therefore,
20 we have filed them under seal.  We have asked for a 60-day
21 moratorium.  We don't need 60 days.  We assumed we needed 60
22 days because it takes 60 days to get a plaintiff's profile form
23 resolved.  We could do it in two days or three days.
24            We do not want to stop the process of fixing our
25 class members' homes.  What we want to do is improve the

1   process so that they don't give up their rights, they know
2   about this litigation, they know about their ability to have a
3   lawyer look at what's given to them, but we don't even know
4   that the lawyers that look at what's given to them, from the
5   affidavits they filed two days ago, even know that this
6   litigation exists.
7            We would suggest, Your Honor, that we be
8   permitted to take some discovery against at least the affiants
9   that they provided to see what's going on and that we take some
10  of the discovery from the builders, the major builders and
11  other builders, to determine what their protocols are with
12  regard to their programs with regard to the remediation.
13           We have been stonewalled with regard to
14  obtaining protocols with regard to inspections.  Perhaps this
15  is the vehicle where we can get all of this, find out what
16  happened in the thousands of homes that they have already
17  inspected, how they obtained the releases, what they said, what
18  was said to the residents when they obtained these releases,
19  but we want to put some sort of orderly process in place so
20  that class members are not abused.
21           **THE COURT:**  You're asking, in addition, some seven
22  areas.  You want, first, to require curative notice approved by
23  the Court, prepared and sent to all putative class members at
24  the expense of the homebuilders, to remedy the harm caused by
25  the homebuilders.  You want, second, the putative class action

1  defendant builders to cease and desist contacting or soliciting
2  any putative class members about releasing their claims.
3         You are also asking that any proposed releases
4  of any putative class defendant shall also contain a
5  Court-approved statement and that no putative class action
6  defendant builder shall initiate contact with any individual
7  who has previously contacted the builder.
8         It seems that you're asking for broader
9  information and broader action than you're saying now.  Which
10 is it?
11        **MR. LEVIN:**  What I'm saying now, Your Honor.  The
12 notice can be effectuated very easily by builders giving notice
13 to their customers and the Mitchell defendant, who is a --
14 Mitchell plaintiff, who has a class of builders, can give the
15 notice to their builders so their builders, in turn, can get it
16 to the plaintiffs.  We just have to get the word out and level
17 this playing field and remedy what we perceive to be an
18 injustice and a wrong.
19        **THE COURT:**  Let me hear from the respondent.  Thank
20 you.
21        **MR. SIVYER:**  Good morning, Your Honor.  Neal Sivyer
22 from Tampa representing the homebuilders committee.  I
23 represent Taylor Morrison specifically in this action,
24 Your Honor.
25        Are the state court judges still on the phone?

1      **THE COURT:**  No.
2      **MR. SIVYER:**  Okay.  I was going to say "good morning"
3 to them as well.
4           Your Honor, as you pointed out, Mr. Levin, for
5 lack of a better term, is backing and filling this morning.
6 The relief which he seeks today is completely different and not
7 even mentioned in their materials.
8           Your Honor, it is clear as day that Rule 23, as
9 it now stands, permits us to contact and negotiate settlements
10 with putative class members that are not MDL plaintiffs.  No
11 question about it.  The only settlements that have to be
12 approved have to be approved in a class-wide basis.  That rule
13 was amended in 2003.
14           The same thing with the *Manual for Complex*
15 *Litigation*, which Your Honor has referenced in your first
16 Pretrial Order.  We absolutely have the right to negotiate
17 settlements with putative class members and we are doing so.
18 In the *Gulf Oil* case, the U.S. Supreme Court said exactly that.
19           Your Honor, in addition, you mentioned under
20 Florida Statute 558 it is our responsibility to inspect the
21 homes, to fix the homes, to communicate regarding the homes.
22 How in the world are we going to do that if we can't even
23 contact the homeowner?
24           Your Honor, we are doing the right thing.  I'm
25 proud to tell you that the homebuilders are the only one in

1  this proceeding who are spending a nickel to fix the problem.
2  In perhaps the worst economic time the homebuilders have faced
3  in the last 50 years, we are spending millions of dollars to
4  fix the bad houses.  I know that hurts the plaintiffs'
5  attorneys' fee claim because some of their damages go away, but
6  we are doing the right thing.
7           You know what?  We are not just fixing the
8  houses.  We are giving relocation reimbursement.  We are giving
9  a storage fee.  We are giving a new warranty for the work that
10 we are doing.  We are giving essentially everything that anyone
11 could ever hope for in a property damage claim.
12          I think it's telling, Your Honor, that you have
13 no evidence in front of you, one bit, from the PSC.  There is
14 not a single pending motion from a homeowner that wants to set
15 aside their release or repair agreement.  While I realize that
16 there is now an argument that somehow that 558 doesn't apply to
17 personal injury claims, personal injury claims are excluded.
18 Those claims go to the back of the line.
19          Your Honor, what Mr. Levin said, with all due
20 respect to him, is completely wrong.  Every MDL release -- and
21 I have them in a book, and I'll be glad to hand them to you --
22 exclude personal injury claims from MDL plaintiffs.
23          Let me give you an example.  They have a little
24 summary before each release.  Beazer Homes, they are an MDL
25 defendant.  The summary says that their release includes a

```
 1   release of personal injury claims.  That's absolutely wrong.
 2   Every MDL defendant's release excludes personal injury claims.
 3   That may be one of the reasons why we don't have a single
 4   homeowner in America that's filed a motion to set aside a
 5   release.  We don't have an affidavit.  We don't have one piece
 6   of evidence submitted by the PSC saying that there's something
 7   coercive or misleading.
 8              Your Honor, the only thing that the PSC has
 9   asserted is that "It is well known that the releases given
10   exceed the benefits," not a citation, not a reference.  Of
11   course, all the releases and all the communications are
12   somewhat different.  Their blanket request is that every
13   homeowner in America not be contacted by the builder, every
14   release that's ever been given be set aside or modified.  That
15   completely flies in the face of the *Gulf Oil* ruling.
16              Your Honor, five or six months ago, two federal
17   judges in these proceedings had exactly the same motions filed
18   in front of them, one in my case, and I filed the transcript.
19   Basically, the federal judges were having none of this.  They
20   said there is nothing misleading in these releases.  None of
21   the remedies sought, which included stopping communications and
22   stopping repairs, would be given by those federal judges.
23              For five or six months now, the homebuilders
24   have been relying on those rulings and moving forward.
25   Your Honor, when we had the last MDL hearing three weeks ago,
```

1  the plaintiffs asked to have town hall meetings.  Your Honor
2  referenced and said either party can contact these putative
3  plaintiffs, and that's consistent with your ruling, Your Honor,
4  in the *Murphy Oil* case, where you said anybody who wants to set
5  aside a release has to do it on a case-by-case basis.  You
6  refused to stop communications between putative class members
7  and the defendants.
8        Your Honor, the cases that are cited by the PSC,
9  most of them are not even good law.  A number of them are
10 before the *Gulf Oil* case was decided.  Almost every one of them
11 was before Rule 23 was amended to not require the court's
12 intervention in settlement with putative class members.
13       Your Honor, the one case that was referenced
14 earlier today, this *Burford* case, which was an interlocutory
15 order that was entered by a Louisiana court, gave no relief at
16 all other than to simply reference in the release that there's
17 a case pending.  That was the only relief given.  Not one case
18 cited in their materials set aside a release.  Not one case
19 cited stopped this procedure from going forward.
20       Your Honor, the cases that they cite and rely
21 on, in large part the *Kleiner* case, *Federal Skywalk*, *Resnick*
22 *Impervious Paint*, all involve post-certification contact with
23 plaintiffs trying to get them to opt out of the class.  That's
24 a completely different situation.  Rule 23 applies at that
25 standpoint.  The *Manual for Complex Litigation* specifically

1  says you can't contact class members after class certification,
2  and the court is required to approve any settlement under those
3  circumstances.
4          So, Your Honor, in summary, there is no
5  evidence, not one lick of evidence presented here by the PSC
6  that would require the Court to enter what *Gulf Oil* has
7  determined to be an extraordinary remedy that has to be based
8  upon a clear record of misleading information or coercive
9  communications, it has to limit speech as little as possible,
10 and there is no such evidence in this proceeding.
11         You can't run into court at this point,
12 Your Honor, and say, "We would like to stop this process to
13 allow us to do discovery."  That's inappropriate.  The goal
14 here is to have the builders finish repairing the homes.
15 There's nothing wrong, inappropriate, or unusual about getting
16 an assignment of the claims for property damage.  If you're
17 fixing the house, you ought to get an assignment of those
18 claims so you can go against the manufacturers.  We are
19 innocent parties here, too, Your Honor.  We had no idea that we
20 were putting bad drywall in these homes, and we are fixing it.
21 We ought to get an assignment.
22         Your Honor, one thing that Mr. Herman said, I
23 think, privately in session before this is that here we have
24 problems with people only fixing one or two boards.  That is
25 absolutely false.  Every single piece of drywall in a home is

1  removed for every home that we fix.  Every piece.  Every piece
2  of wiring is taken out.  So it's not true that somebody is
3  doing an inadequate fix.  And you know what?  If we are, they
4  have a new warranty.  So we should not be punished by a lack of
5  record evidence for doing the right thing in getting the homes
6  fixed even if it means that the plaintiffs' attorneys' fees are
7  going to be affected.
8             **THE COURT:**  Let me hear a response.
9             **MR. LEVIN:**  We were all born, but not yesterday.
10 When somebody says "honestly speaking," your antennas go up
11 because why would they say "honestly speaking"?  We all speak
12 honestly.  When a defense counsel comes in and says what this
13 is all about is plaintiffs' attorneys' fees, that's stepping
14 forward with the wrong foot, and it shows that their argument
15 is weak because the first one you attack is the plaintiffs'
16 attorneys with their attorneys' fees.  We sitting at this
17 table, in the jury box, and out there resent that.
18             Now, what this defendants' counsel spoke to was
19 maybe what his builder is doing, but we have classes pending.
20 When he comes up here on a Rule 23(d) motion, he has to answer
21 for the entire array of builders that are involved, and we
22 didn't hear that.
23             When he says the rule has been amended, he
24 confuses Rule 23(e) that deals with settlements with
25 Rule 23(d), which deals with the inherent power of a federal

1  court in a class action to see to it that the class is noticed
2  properly of what's going on in the litigation, and we brought
3  this motion under 23(d).
4      When he cites *Murphy Oil*, I wasn't there, I
5  don't know that he was there --
6      **THE COURT:**  I was.
7      **MR. LEVIN:**  -- but Your Honor was there.  And we knew
8  Your Honor was there because sometimes in *Vioxx* we waited for
9  *Murphy Oil* to get with *Vioxx*.  That was a different case.
10 There wasn't this vast amount of absent class members that
11 nobody knew who they were.  Everybody was local.  Everybody
12 knew.  That was mostly retained.  It was a different situation.
13     I think even in *Murphy Oil*, Your Honor, in a
14 case where everybody was aware of what was going on -- it was
15 in the newspapers, there was local counsel here involved in the
16 case representing the plaintiffs -- you still did grant some
17 therapeutic relief and, I'll call it*, Miranda* warnings.
18     The fact that the defense counsel says that you
19 can only obtain this kind of relief in a certified class is
20 plain wrong.  23(d) applies before and after a class because as
21 long as there are absent members of the class and there is a
22 putative class, this Court has the power to level the playing
23 field.
24     We appreciate the fact that some of them have
25 repaired all homes.  If you look at the releases that we have

1  given you, all the homebuilders didn't do it that way.  We want
2  to protect those homebuilders so that they don't have to pay
3  again.  We want to protect them from indemnity, contribution,
4  and any other theory whereby money will pass from them to the
5  manufacturers.  But what we don't want them to do is take the
6  rights of the plaintiffs away for items of damages that are not
7  compensated for by the homebuilders, and at the same time
8  protect them so that they are held harmless for -- if they do
9  the right thing, they are entitled to be held harmless, but
10 they are not entitled to take the damage actions of our clients
11 away from our clients.
12            These individuals who own the home, who do not
13 know about the class action, whose lawyers may not know about
14 this class action, who already suffered damages from Katrina
15 and Rita and hurricanes in Florida, deserve better.
16            **THE COURT:**  Okay.  Thank you very much.  I understand
17 it.  I appreciate the briefs that you all have given to me and
18 the citations that you have given.  I have had an opportunity
19 to review all of them and read the cases.
20            Under Federal Rule 23, the federal court has, in
21 my opinion, a duty, responsibility, and also authority to
22 exercise control over a class action -- whether the class
23 action is certified or putative -- and to enter appropriate
24 orders, for that matter, governing conduct of the parties.
25            It's clear to me that miscommunication poses a

1   serious issue, but orders regulating communication always pose
2   a serious and significant challenge to the First Amendment.
3   　　　　　I look to the *Gulf Oil* case.  In *Gulf Oil v.*
4   *Bernard*, the United States Supreme Court indicated that the
5   order limiting communication should be based on a clear record
6   and specific findings, weighing the need for restrictions
7   against the interference with the parties' first amendment
8   rights.
9   　　　　　I have a small record before me.  I have all of
10  the releases given to me by the plaintiffs and also some
11  affidavits given to me by the defendants of individuals who
12  have signed the releases.  The releases that I have looked at,
13  all but perhaps three specifically say that personal injury
14  claims are excluded.  The three don't specifically say that,
15  but they dwell on only property damage.
16  　　　　　A review of the material indicates that at the
17  present time there's no clear record demonstrating misleading
18  information or coercive or abusive communication.  Also, I note
19  that under 558, the builders have a right and perhaps even a
20  duty to seek and to remedy the conditions caused by their
21  installation of defective Chinese drywall.
22  　　　　　At the present time, I have no record of showing
23  that there's any abuses.  As I read the law, that's what's
24  necessary.  I'm going to deny the motion, but I do also advise
25  the parties that I expect them to tell the clients that the

1  parties who have signed the releases have a right to counsel
2  before they sign the releases.  Henceforth, I also want you to
3  advise them of the MDL proceeding and give them the Court's Web
4  site to that particular proceeding.  I also mention to the
5  parties that this does not mean that they can't move on
6  specific releases to set aside the releases, for various
7  reasons, if they have good reasons.
8          In a matter of this sort, frankly, I do think
9  that it's helpful for the builders who are getting these
10 releases to meet and confer with counsel to avoid any future
11 matters.  I don't see any present matters, but it seems to me
12 that if ever there's a community of interests, there's probably
13 a community of interests in this situation, particularly
14 heading off any particular problems with releases if you have
15 no difficulty meeting some aspects of their requests.
16         I'm going to deny the motion at this time,
17 reserving your right to refile it if it's necessary to look at.
18 Also, I ask that in future releases, in addition to telling the
19 people that they have a right to an attorney, also advise them
20 that there is an MDL proceeding and give them the Court's Web
21 site.
22         * * *
23
24
25

## CERTIFICATE

I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

s/ Toni Doyle Tusa
Toni Doyle Tusa, CCR, FCRR
Official Court Reporter