# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL            MDL No. 02047
      PRODUCTS LIABILITY LITIGATION                    SECTION L

THIS DOCUMENT RELATES TO:                              JUDGE FALLON
GROSS, et al. v.                                                      MAG. JUDGE WILKINSON
KNAUF GIPS KG, et al.,
Case No. 2:09-cv-6690 (E.D.La.)
_____/

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, WOODLAND ENTERPRISES, INC.'S, MOTION TO DISMISS PLAINTIFF'S OMNIBUS CLASS ACTION COMPLAINT IN INTERVENTION, WITH PREJUDICE

Defendant, Woodland Enterprises, Inc. ("Woodland"), hereby files its Memorandum of Law

in Support of its Motion to Dismiss, with Prejudice, the claims asserted against it by plaintiff

**Veronica Purcell** (the "Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for the

reasons set forth below.

## INTRODUCTION

Plaintiff has added Woodland – the Florida builder that constructed the property belonging

to Plaintiff – to the more than 350 defendants named in the Omnibus Class Action Complaint in

Intervention, filed on or about February 10, 2010 (commonly referred to as the "Gross/Benes

Complaint" or "Omni III", and hereinafter, the "Omnibus Complaint"),[1] even though there is no

evidence, and indeed no allegation, that her home construction was in any way deficient.  Plaintiff

wants compensation for her drywall, yet it is beyond dispute that Woodland had <u>nothing</u> to do with

the manufacture, marketing or distribution of that drywall.  Woodland, in other words, does not

belong in this lawsuit.

The futility of the claims asserted against Woodland underscores this point.  In a shotgun

pleading that makes no effort to distinguish between Woodland and the entities actually responsible

---

[1]    This Memorandum cites to the Amended Omnibus Complaint as "Cmplt. ¶ __."

for the drywall, Plaintiff has offered a laundry list of generic common law and statutory theories. Every one of the claims asserted against Woodland should be dismissed as fatally defective pursuant to Rule 12(b)(6).

## I. BACKGROUND

**A.    Plaintiff's Allegations Against Woodland & Background Facts.**

Plaintiff's allegations mirror those of every other claimant in this lawsuit.  Indeed, the Omnibus Complaint heedlessly lumps together thousands of parties over more than 300 pages of boilerplate allegations, before asserting the following eleven claims[2] against Woodland: Negligence (Count I, ¶¶ 1460-1467); Negligence Per Se (Count II, ¶¶ 1468-1474); Strict Liability (Count III, ¶¶ 1475-1492); Breach of Express and/or Implied Warranties (Count IV, ¶¶ 1493-1500); Breach of Implied Warranty of Habitability (Count VI, ¶¶ 1513-1519); Breach of Contract (Count VII, ¶¶ 1520-1523); Private Nuisance (Count XI, ¶¶ 1555-1561); Negligent Discharge of Corrosive Substance (Count XII, ¶¶ 1562-1568); Unjust Enrichment (Count XIII, ¶¶ 1569-1572); Violation of Florida's Deceptive and Unfair Trade Practices Act (Count XIV, ¶¶ 1573-1577); and Equitable and Injunctive Relief and Medical Monitoring (Count XV, ¶¶ 1578-1590).  Each of these claims is governed by and arises under Florida law.[3]

---

[2]    There are fifteen Counts in the Omnibus Complaint, but only eleven of them arguably apply to Woodland.  The four remaining Counts do not.  Specifically, Count V (for breach of warranty under Florida's condominium code) does not apply to Woodland because Plaintiff allegedly purchased a residential home, not a condominium.  *See* **Ex. C** (below), pg. PurcellV0009.  Count VIII applies to "Louisiana Home Builders Only," and no one disputes that Woodland resides and transacts business in Florida.  *Id*. ¶¶ 1335 & 1524-1530.  Count IX ("Redhibition – by Louisiana Plaintiffs") does not apply because Plaintiff is allegedly a residents of Florida, not Louisiana.  *Id*. ¶¶ 968 & 1531-1540.  Finally, Count X (Louisiana Products Liability Act) applies solely to "Manufacturing" or "Distributor" Defendants, whereas the Omnibus Complaint identifies Woodland as a "Developer/Builder" Defendant.  *Id*. ¶¶ 1335 & 1541-1554.

[3]    Because Plaintiff filed her claims against Woodland directly in the Eastern District of Louisiana – rather than filing in a Florida court and having the matter transferred to this forum – this Court should apply the choice-of-law rules of Louisiana.  *See Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 n. 6 (5th Cir. 1981).  Under Louisiana's choice-of-law rules, Florida has, by far, the most significant relationship with the dispute.  Plaintiff's alleged drywall injuries occurred in Florida, the subject property is located in Florida, and Woodland resides in Florida.  *See* Cmplt. ¶¶ 968 & 1335; *Gulf States Utilities Co. v. NEI Peebles Elec.*

Although Woodland built the Plaintiff's home, Plaintiff did not purchase that home directly from Woodland nor was she in contractual privity with Woodland as to the construction of that home.  Indeed, Plaintiff acquired the home at issue from a third party, Luv It Homes & Villas, LLC ("Luv It") following completion of construction.  A copy of the February 23, 2005 Construction Agreement between Woodland and Luv It is attached hereto as "**Exhibit A**."  A copy of the later-executed Warranty Deed from Luv It to Plaintiff is attached as composite "**Exhibit B**."  Plaintiff's home is located at 6845 Mitchell Street, Jupiter, Florida.  Cmplt. ¶ 968.  The Profile Form that Plaintiff filed in this case sheds further light on her allegations.  A copy of that form is attached hereto as "**Exhibit C**."  In it, Plaintiff describes her home as a 1,218 square foot, three-bedroom, two bathroom Florida residence.  *See* **Ex. C** pg. 3.  The Certificate of Occupancy, attached hereto as "**Exhibit D**", for the home was issued on June 30, 2006.[4]

### B.     The Governing Legal Standard.

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the complaint, even if proven true, would not entitle the plaintiff to relief.  *See Bell Atlantic Corp. v.*

---

*Prods., Inc.*, 819 F. Supp. 538, 552-53 (M.D. La. 1993) (discussing Louisiana choice of law factors and statutes). Florida substantive law therefore governs each of Plaintiff's claims against Woodland.

[4]     The fact that Plaintiff chose not to attach these documents to the Omnibus Complaint does not prevent the Court from considering them now.  The Court can and should consider these instruments because they are undeniably central to Plaintiff's claims (especially her breach of contract and breach of warranty claims) against Woodland, and because the documents are publicly available.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp.*, No. 09-3835, 2010 WL 334533, *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Federal Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint."); Fla. Stat. §§ 90.202(5), (11) & (12) (setting forth matters that may be "judicially noticed," including "[f]acts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned"); *e.g.*, *Cardona v. City of Tampa*, No. 96-5194, 1998 WL 34201850, at *1 n.1 (Fla. 13th Jud. Cir. Mar. 9, 1998) (granting motion to dismiss with prejudice while taking "judicial notice" of certain public records filed at city council proceeding).

*Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12.  Plaintiff's obligation "to provide the 'grounds' of [her] 'entitlement to relief' requires more than labels and conclusions."  *Id*. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## II. ARGUMENT

Each of Plaintiff's causes of action asserted against Woodland should be dismissed pursuant to Civil Rule 12(b)(6) because none of them state a claim for relief.    The balance of this Memorandum addresses the incurable defects in each of Plaintiff's eleven claims against Woodland.

**A.      Plaintiff's negligence allegations (Count I) are false, improperly pled and are barred by the Economic Loss Rule.**

Plaintiff's negligence claim (Count I) really illustrates why Woodland does not belong in this lawsuit.  The Omnibus Complaint alleges that Woodland somehow owed Plaintiff a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question.  Cmplt. ¶ 1461.  The Complaint further alleges that Woodland had a duty to provide Plaintiff with certain warnings about the drywall.  *Id*. ¶ 1464.

Besides being intercepted by the economic loss rule (*see* discussion, *infra* at Sections II.A and II.E.1), these allegations are indisputably false.  Woodland, for example, did not "design," "manufacture," or "import" any drywall, and Plaintiff knows it.  Yet even assuming the truth of these specious allegations, they do not state a claim for relief.  Under Florida law, a negligence claim requires the plaintiff to plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached.  *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case.").  Plaintiff can allege neither prerequisite.

To begin with, Woodland owed no duty of care with respect to Plaintiff's drywall.  Under Florida law, even manufacturers, retailers and distributors – all of whom arguably bear a *greater* responsibility toward their products than a contractor like Woodland – have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous."  *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co*., 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[5]

In the same vein, Woodland cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects.  *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991).  The alleged defects in the drywall are plainly "latent" (*e.g.,* Cmplt. ¶ 1424), and Plaintiff has not alleged actual or implied knowledge by Woodland.

The result is that Plaintiff cannot parlay her allegedly defective drywall into a negligence claim against Woodland.  Absent an "inherently dangerous" product or actual or implied knowledge – neither of which Plaintiff can allege in good faith – the first Count fails as a matter of law.  The

---

[5]	"[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A*., 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of illustration, Florida courts have ruled that jet skis (*id*. at 1543), motorcycles (*Byrnes v. Honda Motor Co..*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id*.) are <u>not</u> "inherently dangerous."  Drywall would certainly not be an "inherently dangerous" product under Florida law.

boilerplate, and wholly unsupported assertion that Woodland "knew or should have known" that the drywall would "harm" Plaintiff (*id*. ¶ 1464) is really a legal conclusion.  That conclusory allegation cannot possibly salvage a negligence claim, particularly one that flies in the face of such basic principles of Florida law.

But the problem here is not just one of pleading.  Even assuming Plaintiff had properly alleged a negligence claim against Woodland (which she did not), the economic loss rule (or "ELR") precludes her from suing in tort for <u>economic</u> losses.  Florida law applies the ELR in two contexts: "(1) the contractual privity ELR where two parties are in privity of contract, and (2) the products liability ELR where a defective product causes damage, but only to itself."  Order & Reasons (January 13, 2010) at 22.[6]  Florida courts have defined the products liability ELR as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain."  Order & Reasons at 22 (internal marks and citation omitted).  In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc*., 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties.  The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages.  *Id*. at 1247.  Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier.  *Id*. at 1246-48.

The same reasoning applies here.  Regardless of whether she is in privity with Woodland or not, the products liability strand of the ELR bars Plaintiff from suing Woodland in tort for purely economic losses.  As a matter of law, the rule limits her to recovering in tort only *non*-economic

---

[6]     The Court's January 13, 2010 "Order & Reasons" (MDL No. 2047, Section L) applies by its terms to all drywall MDL cases pending before the Court, including this one.

losses (e.g., for personal injury) and damages to property other than the house itself.[7]  *See Casa Clara*, 620 So. 2d at 1247-48.  Plaintiff must therefore, at a minimum replead her tort claims to seek only non-economic losses (if such claims are not otherwise dismissed for the other reasons set forth herein).  *Cf.* Cmplt. ¶ 1467 (seeking general "damages" on negligence count).[8]

**B.     Plaintiff has not stated a claim for negligence per se (Count II).**

Besides being barred by the economic loss rule, Plaintiff's negligence per se claim (Count II) is poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>."  *DeJesus v. Seaboard Coast Line R.R. Co*., 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiff has not stated a claim for negligence per se for two reasons.  First, she has not identified a statute that Woodland allegedly violated, much less explained how that violation occurred.  Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes."  Cmplt. ¶ 1471.  Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage.  *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Woodland allegedly violated are "designed to protect the <u>general</u> <u>public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se.  *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added).  In other

---

[7]     Plaintiff also cannot recover economic losses because she has <u>suffered</u> no such losses.  The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  Order & Reasons at 19-20.

[8]     To the extent that this Court finds that Plaintiff is in contractual privity with Woodland, Plaintiffs tort claim are further barred by the contractual privity ELR.  *See* argument *intra* at Section II.E.1, *infra*.

words, Plaintiff's negligence per se claim appears to be nothing more than a repackaged negligence claim.[9]  It should be summarily dismissed for that reason as well.

**C.      Plaintiffs cannot sue Woodland in strict liability (Count III).**

Plaintiff's strict liability claim (Count III) is premised on the sweeping and patently false assertion that Woodland was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public."  Cmplt. ¶ 1476.  This theory is foreclosed by the economic loss rule (*supra*. at Section II.A and *infra* at II.E.1) and by at least two established principles of Florida law.

First and foremost, Woodland cannot be sued in strict liability because it did not manufacturer or distribute the allegedly defective drywall.   The Complaint itself identifies Woodland as a "Developer/Builder."  Cmplt. ¶ 1335.  Strict products liability, however, is reserved for product manufactures and distributors; it does not apply to a homebuilder.  *See Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiff could sue a contractor in strict liability (and she cannot), the allegedly defective drywall is not a "product" for purposes of this particular tort.  Rather, under Florida strict liability law the drywall is considered a "structural improvement," as it was an integral part of Plaintiff's home.  *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007).  "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural

---

[9]      Plaintiff's claim for "Negligent Discharge of a Corrosive Substance" (Count XII) is similarly duplicative of her garden-variety negligence claim.  Florida law does not appear to recognize an independent cause of action for Negligent Discharge.

improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); *see Plaza*, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water and Waste, Inc*., 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

**D.      Plaintiff's breach of contract claim (Count VII) must be dismissed.**

To the extent that Plaintiff seeks to maintain a breach of contract action with respect to the Construction Agreement itself, Plaintiff cannot maintain a claim for breach of contract for the simple reason that she was not in privity of contract with Woodland as to the Construction Agreement, and the plain language of the Construction Agreement between Woodland and Luv It does not establish the parties' clear or manifest intent to primarily and directly benefit Plaintiff (nor does Plaintiff so allege). *See Biscayne Investment Group v. Guarantee Management Servs., Inc.,* 903 So. 2d 251, 254 (holding that "a non-party to a contract is [deemed] the specifically intended beneficiary <u>only</u> if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs … [t]o find the requisite intent, it must be established that the parties to the contract <u>actually</u> and <u>expressly</u> intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party") (emphasis added).  Plaintiff acquired her home from a third party, Luv It, leaving her only contractual remedy with that party.  *See* **Ex. A**.  "It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach." *Cibran Enters., Inc. v. BP Prods. N.A., Inc*., 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks and citation

omitted); *Banco Ficohsa v. Aseguradora Hondurena*, *S.A.,* 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle). [10]

Moreover, even if Plaintiff had contracted with Woodland as to the Construction Agreement, she has still failed to allege a viable claim for breach. The Omnibus Complaint states only that Woodland contracted with the Plaintiffs to construct homes that would be "free from defects." Cmplt. ¶ 1527. This assertion is insufficient on its face, because it fails to identify the source of Woodland' alleged duty to construct a home "free from defects." Plaintiff has failed to (because she quite simply cannot) "identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc.*, 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiff will undoubtedly try to justify her skeletal allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiff from satisfying basic pleading standards. It does not cloak her with immunity from the requirements of due process. The concern is not merely academic, either. Contrary to the boilerplate allegation in the Omnibus Complaint, Woodland did not agree to build a home "free from defects." Cmplt. ¶ 1527. Rather, the Construction Agreement (**Ex. A**) states that Woodland will "furnish all materials, labor, building permit and services necessary to construct a single family residence on the property … in a workman like manner in accordance with all applicable building codes and in substantial compliance with those plans and specifications." **Ex. A**, ¶ 1.

---

[10]   What is more, the Construction Agreement prohibited Luv It from assigning the contract without Woodland's express written prior consent. *See* **Ex. A**, ¶ 37. The Omnibus Complaint nowhere alleges that Luv It – the entity that conveyed Plaintiffs property to her – ever sought or obtained such consent.

Whatever the meaning of this language – and there is good authority that it absolves Woodland from liability for the allegedly defective drywall[11] – Woodland did not agree to build a home "free from defects."   *Cf. Lonnie D. Adams*, 714 So. 2d at 1179 (holding that although contractor had a duty to perform contract in a "workmanlike" manner, there was no implied duty to deliver defect-free windows to the homeowner-plaintiffs).   To put it another way, Plaintiff must base her breach of contract claim (if she had one, which she does not) on an actual contract between the parties.   Unless and until she does that, her breach of contract claim cannot survive.

**E.**   **Plaintiff cannot maintain her warranty claims (Counts IV & VI)**.

In Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiff alleges causes of action based on various express and implied warranties.[12] Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Woodland might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

1.   *The express warranty claims asserted by Plaintiff are foreclosed by the plain language of the warranties themselves.*

Woodland issued two express warranties with respect to the home at issue: (1) a limited warranty (the "Limited Warranty") in favor of "Luv It Homes and Villas, LLC and/or its' first purchaser, for one year after certificate of occupancy" [*See* **Ex. A**, "Limited Warranty" attached thereto as Exhibit C, ¶ 3]; and (2) a "Residential Home Limited Warranty" (the "Residential

---

[11]     Indeed, regardless of whether she can ever allege the elements of a breach of contract claim, Plaintiff will be hard-pressed to show that Woodland did not construct her home in a workmanlike manner or that it deviated from standard building practices.   The Court has determined that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." Order & Reasons at 19.

[12]     The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but Plaintiff does not reside in Louisiana.   *See* Cmplt. ¶¶ 968.   Besides, redhibition requires a showing that the allegedly defective product – here, drywall – failed for its intended purpose.   *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This showing is unavailable in light of the Court's determination that the drywall is "serving its intended structural purpose." Order & Reasons at 23.

Warranty") in favor of "only the original purchaser of the [home] from Luv It Homes and Villas, LLC … [f]or a period of one (1) year from the date of Closing"[13] [*See* **Ex. A.**, Residential Warranty attached without designation, ¶¶ 1 & 7].  The Limited Warranty and Residential Warranty are collectively referred to as "the Warranties".

　　Whereas Plaintiff was clearly not in privity of contract with respect to the terms and conditions of the Construction Agreement itself, even if Plaintiff could establish (for the sake of argument) that she is a third party beneficiary of the Warranties, her express warranty claims should nonetheless be dismissed because she has not alleged (nor can she) that she experienced a defect within the applicable limited warranty periods.  "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects-defects that may exist before, but typically are not discovered until after, the expiration of the warranty period."  *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *see also Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date").; *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. 3d

---

[13]　　"Closing" is defined in the Residential Warranty as "the date on which title to your [home] is conveyed to you" (i.e., the date that the Warranty Deed [**Ex. B**] was recorded).  *See* **Ex. A**, Residential Warranty, ¶1)

DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms.").

In the instant case, the Certificate of Occupancy was issued on June 30, 2006.  *See* **Ex. C**. Thus, the Limited Warranty expired by its very own terms, no later than June 30, 2007  (one year later).  The Warranty Deed establishing conveyance of the home to Plaintiff was recorded on July 19, 2006.  *See* **Ex. B**.  As such, the "Closing" for purposes of the Residential Warranty occurred, at the latest, on that date and, thus, the expiration of the one year Residential Warranty occurred no later than July 19, 2007.  Plaintiff cannot (and has not) alleged that she experienced the defect alleged in the Omnibus Complaint within either of the applicable warranty periods, nor can she (or has she) alleged that she notified Woodland of such alleged defects (as required by the plain language of both Warranties) within the applicable warranty periods.  As such, Plaintiffs express warranty claims must be dismissed as a matter of law. [14]

As an aside, to the extent that this Court finds that Plaintiff was in privity of contract with Woodland as to the Warranties (or even the Construction Agreement), then the contractual privity ELR bars Plaintiff from circumventing her contractual arrangements through allegations in tort.  *See Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536, & n.1 (Fla. 2004).  This Court has explained how the contractual privity ELR applies to homebuilders like Woodland:

> The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contractor breach, and in other limited circumstances.  The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall.  Accordingly, <u>under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.</u>

---

[14]     Moreover, Plaintiff's demand for consequential or other incidental damages under Counts V and VI of the Omnibus Complaint must be dismissed because such damages are specifically excluded by the Warranties.  *See* Limited Warranty, ¶8; Residential Warranty, ¶ 12.

*Id.* at 30 (citation omitted) (emphasis added).   Underlying the contractual privity ELR is the common-sense notion that "contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." *Indemnity Ins. Co.*, 891 So. 2d at 536-37.

Thus, to the extent that this Court finds that Plaintiff was in contractual privity (as a third party beneficiary) with Woodland with respect to the Warranties (or otherwise), then the tort claims asserted by Plaintiff in the Omnibus Complaint are intercepted by (and must be dismissed because of) the contractual privity ELR, including her claims for Negligence (Count I), Negligence Per Se (Count II), Strict Liability (Count III), Private Nuisance (Count XI), Negligent Discharge of a Corrosive Substance (Count XII), Unjust Enrichment (Count XIII) and Medical Monitoring (Count XV), because "the alleged duty breached is derived from the contractual relationship" between the parties. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (internal marks omitted).

2.    *The implied warranty claims asserted by Plaintiff are foreclosed by the plain language of the warranties themselves.*

Plaintiff's implied warranty claims must be dismissed as well because the Warranties expressly disclaim all such implied warranties.  Indeed, the Limited Warranty states that:

> There are no warranties that extend beyond the description of the face hereof. This Limited Warranty is the only expressed warranty given.  This Limited Warranty is in lieu of all other warranties, express or implied, including but not limited to, implied warranties of fitness for a particular purpose, merchantability, or that the home will be constructed in accordance with the plans and specifications on file with any governmental authority, whether arising from custom, usage, course of trade, statutes, case law or otherwise, and shall be limited to the warranty periods set forth above.  The undersigned disclaims any liability for incidental or consequential damages including, but not limited to, inability to possess the unit, inconvenience, storage costs, loss of time, personal injury, damage to improvements made by you, or any of your personal property.

*See* **Ex. A,** Limited Warranty attached as Ex. C, ¶ 8.

Likewise, the Residential Warranty, similarly states that:

> This limited warranty is the only express warranty given by the undersigned warrantor. This limited express warranty is given in lieu of any other warranties, express or implied.  Except for this limited warranty, the undersigned warrantor disclaims any and all implied warranties of merchantability and fitness, whether arising from custom, usage or trade, course of dealing, case law or otherwise.  The undersigned warrantor disclaims any liability for incidental or consequential damages.

*See* **Ex. A**, Residential Warranty, ¶ 12.

Contractual exclusions of implied warranties like the ones at bar are valid and enforceable under Florida law.  *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (condominium developer properly disclaimed any and all express and implied warranties); *Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties).  As such, Plaintiff's implied warranty claims are without merit.

3.  *In any event, Plaintiff cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose.*

There are two more reasons to dismiss Plaintiff's implied warranty claims.  First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Woodland.  That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant."  *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Woodland is not bound by any implied warranties because it is not considered a merchant under Florida warranty law.  Woodland contracts with its clients to provide a service:  home

{FT693780;2}

construction. That is why the agreement between Woodland and Luv It Homes and Villas, LLC is called a "Construction Agreement" and not a "purchase agreement." Because the inclusion of drywall in Plaintiff's home was incidental to the construction services that Woodland rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in this circumstance. *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claim for implied warranty of fitness for a particular purpose (Cmplt. ¶ 1513) cannot survive because Plaintiff has not – and indeed cannot – allege that the drywall in her property was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used. The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>." Order & Reasons at 23 (emphasis added); *id.* at 18 ("[T]he Chinese drywall in the instant matter is operating as intended[.]"). This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[15]

## F.    Plaintiff cannot state a claim for private nuisance (Count XI).

Plaintiff's private nuisance claim (Count XII) would fail even if it were not barred by the economic loss rule. *See supra*. at Sections II.A and II.E.1. An action for private nuisance requires

---

[15]    *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

the claimant to establish an injury to his or her own property in connection with the use of the real property of <u>someone else</u>.  *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Omnibus Complaint does not allege that Plaintiff's purported injuries resulted from real property owned by Woodland.  On the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame.  Cmplt. ¶ 1556.  That allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

**G.    Plaintiff cannot bring a claim for unjust enrichment (Count XIII).**

Plaintiff's unjust enrichment claim (Count XIII) fails for multiple reasons.  For one, to the extent that this Court finds that Plaintiff was in privity of contract with respect to the Warranties, such privity forecloses a quasi-contractual theory.   "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy."  *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).   Where the plaintiff alleges the existence of a contract [i.e., the written Warranties], "claims arising out of that contractual relationship will not support a claim for unjust enrichment."  *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d  1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties

"admitted to the existence of express contracts").[16]

Moreover, the elements of unjust enrichment are that "(1) <u>the plaintiff has conferred a benefit on the defendant</u>; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co*., 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp*., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

The Plaintiff's unjust enrichment claim stumbles on the first and fourth of these elements. The first element is not satisfied because the Plaintiff cannot show that she "conferred a benefit" on Woodland.  In fact, the Plaintiff did not pay Woodland a single dime to build her house or to issue the Warranties, as she obtained the home from a third party.  *See* **Exh. A**.  The Plaintiff, in other words, did not "enrich" Woodland in any sense.

As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Woodland to retain whatever benefit it received for constructing the Plaintiff's home. After all, it cannot be disputed that Woodland paid a third party (*i.e*., a subcontractor or distributor) for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.,* 636 So. 2d 767, 770 (Fla. 4th DCA 1994), "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>."  *Id. overruled on other grounds by, Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has

---

[16]    Even if the existence of an express contract did not bar the unjust enrichment claims of the Plaintiff against Woodland, the economic loss rule would.  *Supra*. at Section II.A.

been made for the benefit conferred") (internal marks omitted) (citing authorities). Thus, not only is the Plaintiff's unjust enrichment claim barred because she did not "enrich" Woodland, it is precluded because whatever compensation Woodland received for the drywall was not retained "unjustly."

**H.      The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIV).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiff also alleges a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"). Cmplt. ¶ 1574. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities). At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade*

*Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges <u>no specific facts</u> in support of Plaintiffs' FDUTPA claim.  *See* Cmplt. ¶¶ 1574-1577.  It does not identify a single instance in which Woodland – by its words or conduct – deceived Plaintiffs or treated them unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[17]  Moreover, Plaintiff cannot possibly replead this Count to allege deception by Woodland to Plaintiff because of the simple fact that Woodland did not sell Plaintiff the home at issue.

Plaintiff's failure, however, is not merely one of pleading.  Her FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to her.  *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury).  Because Woodland provided services – namely, the construction of a single home – Plaintiff can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Woodland actually provided and the services that Woodland was

---

[17]     Plaintiff's FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.'"  *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

required to provide.[18]   *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiff cannot make this showing.  There is zero evidence – and Plaintiff does not appear to suggest – that the manner in which Woodland underlined constructed the house was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." Order & Reasons at 18-19.

So even if Plaintiff could conceivably replead her FDUTPA claim with the particularity demanded by Rule 9(b), she has no hope of establishing the "actual damages" component of her claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995).  Count XIV must be dismissed for this reason as well.

**I.     Plaintiff's claim for equitable relief and medical monitoring (Count XV) cannot go forward against Woodland.**

Plaintiff's final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XV).  This hybrid, catchall-type claim seeks, among other things, an order that Woodland "buy back or rescind" its contract and "create, fund, and support a medical monitoring program."

---

[18]     The same would hold true if Woodland had delivered a "product" – *i.e.*, a completed home – rather than providing a "service."  To recover under FDUTPA, Plaintiff would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

Cmplt. ¶ 1580.  This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based.  Since each of Plaintiff's substantive claims are due for dismissal, so too is her derivative claim for injunctive relief.  *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiff's substantive claims could survive dismissal and lend support to an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiff has failed to allege an inadequate legal remedy or irreparable harm.  Injunctions under both federal and Florida law require these elements.  *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiff does not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate and entitle her to the extraordinary remedy of an injunction.  *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiff's request for "medical monitoring," it is unclear whether Florida law even permits this cause of action.  The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring.  It is hardly clear, then, that Plaintiff can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id*.

The Omnibus Complaint does not even attempt to properly allege these elements.  Instead, Count XV sets forth a series of legal conclusions – *e.g*., "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – without a shred of factual detail.  Plaintiff fails to identify, for example, any medical condition (latent or otherwise) supposedly caused by her drywall; nor does she identify a monitoring procedure for that supposed condition.  <u>Plaintiff does not even claim to be ill</u>.  She would have this Court speculate about her imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those obviously "do not suffice."  *Ashcroft*, 129 S.Ct. at

1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).   The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings. *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case."). [19]

### III. CONCLUSION

Woodland Enterprises, Inc. respectfully requests an order dismissing the claims asserted against it with prejudice, and awarding Woodland its attorneys' fees and costs in defending this action pursuant to Florida's Deceptive and Unfair Trade Practices Act.

---

[19]   While Plaintiff has mechanically alleged the basic elements of a claim for medical monitoring, Woodland vigorously disputes the availability of this unusual form of relief, particularly because the Omnibus Complaint does not name a single medical condition caused by the allegedly defective drywall, let alone identify a medical procedure that could monitor or treat such condition.  *See Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106 (Fla. 3d DCA 1999) (setting forth seven elements for cause of action for medical monitoring).

Dated:  July 16th, 2010

Respectfully submitted,

**PHELPS DUNBAR, LLP**                          **AKERMAN SENTERFITT**
By:_____/s/ Brent B. Barriere_____           By:_____/s/ Stacy Bercun Bohm_____
Brent B. Barriere (La. Bar No. 2818)           Stacy Bercun Bohm (Fla. Bar No. 022462)
Susie Morgan (La. Bar No. 9715)                Valerie B. Greenberg. (Fla. Bar No. 26514
D. Skylar Rosenbloom (La Bar No. 31309)        Leslie Miller Tomczak (Fla. Bar No. 126489)
Canal Place                                    Las Olas Centre II, Suite 1600
365 Canal Street • Suite 2000                  350 East Las Olas Boulevard
New Orleans, Louisiana 70130-6534              Fort Lauderdale, Florida 33301-2229
Telephone: (504) 566-1311                      Telephone: (954) 463-2700
Telecopier: (504) 568-9130                     Telecopier: (954) 463-2224
Email: Brent.barriere@phelps.com               Email:  stacy.bohm@akerman.com
        Susie.morgan@phelps.com                        valerie.greenberg@akerman.com
                                                       leslie.tomczak@akerman.com

**LOCAL COUNSEL FOR DEFENDANT,**               **LEAD COUNSEL FOR DEFENDANT,**
**WOODLAND ENTERPRISES, INC.**                 **WOODLAND ENTERPRISES, INC.**


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing document and exhibits have been served on Plaintiffs'

Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and

e-mail or by hand delivery and email and upon all parties by electronically uploading the same to

Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was

electronically filed with the Clerk of Court of the United States District Court for the Eastern

District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in

accordance with the procedures established in MDL 2047, on this 16th day of July, 2010.

_____/s/ Stacy Bercun Bohm_____