UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| --- | --- |
| THIS DOCUMENT RELATES TO:<br><br>Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al., Case No. 2:09-cv-6687 (E.D.La.) | |

**REPLY MEMORANDUM IN SUPPORT OF INTERVENING PLAINTIFFS' COUNSEL'S PETITION FOR FEES AND COSTS**

## I. INTRODUCTION

On May 24, 2010, pursuant to court order Counsel for Intervening Plaintiffs Deborah and William Morgan, Jerry and Inez Baldwin, Joe and Cathy Leach, Robert and Lisa Orlando, Fred and Vanessa Michaux, Preston and Rachel McKellar, and Steven and Elizabeth Heischober filed a Petition for Fees and Costs against Defendant Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd. ("Taishan"). Rec. Doc. No. 3248. Taishan has filed a response to the petition (Rec. Doc. No. 4304) arguing that the petition should be denied because: (1) Intervening Plaintiffs did not properly serve their motion to intervene or the Second Amended Complaint on Taishan; (2) Counsel for Intervening Plaintiffs have failed to state a claim under the Virginia Consumer Protection Act; (3) the request for attorneys' fees is not reasonable; and (4) costs should not be taxed against this Defendant. Taishan Opp. at 1-2. For the reasons set forth below and as shown in the Petition for Fees and Costs, Intervening Plaintiffs' Counsel's request for an award of attorneys' fees totaling $919,452.17 is fair and reasonable, and under the law costs may be taxed against Taishan in the amount of $153,423.18.

## II. ARGUMENT

### A. Service Upon Taishan was Accomplished in a Manner Sufficient to Confer Federal Jurisdiction with Regard to the Intervenors

After sitting on its hands for the past year, Taishan suddenly appears to challenge the default judgment that was properly lodged against it. Taishan's argument for avoiding the default judgment is premised upon purported defects in service of the Plaintiffs' motion to intervene and the second amended complaint ("SAC"). Because service of the First Amended Complaint ("FAC") was properly accomplished (a point that is undisputed by Taishan), no such defect exists with regard to the motion to intervene, and any contrived or purported flaw in the service of the SAC is immaterial.

Taishan was served with a summons and the FAC under the Hague Convention on August 3, 2009. The FAC, which was filed on May 26, 2009, asserted a Virginia-only class claim against Taishan and the other defendants named therein. After considerable time, expense and effort, Plaintiffs retained APS International to translate the complaint and attend to service abroad consistent with the Hague Convention and Rule 4 of the Federal Rules of Civil Procedure. The FAC was sent abroad on July 7, 2009. Not until August 3, 2009, was service of the FAC accomplished. An affidavit of service filed with the Court confirms this fact.[1] Despite proper service of this complaint, Taishan took no action to defend itself before this Court.

On October 30, 2009, Plaintiffs moved to amend the FAC to instead assert a national class action against Taishan. On November 17, 2009, the Court granted Plaintiffs leave to file their Second Amended Complaint. Similar claims to those of the FAC were asserted against the remaining defendants on a state-wide basis. Since Taishan failed to respond to the FAC in a timely manner or enter its appearance, Plaintiffs moved for preliminary default against the

---

[1] *See* Affidavit of Service, filed on 9/23/09 in the United States District Court for the Eastern District of Virginia (Norfolk), 2:09-cv-00202 (Rec. Doc. No. 77).

company on November 18, 2009. That motion was granted on November 20, 2009.

In anticipation of default judgment proceedings, this Court entered a Scheduling Order on November 25, 2009, to address the scope and extent of appropriate remediation. Therein, the Court set a deadline of December 4, 2009, for any party to participate in the proceedings by filing a motion to intervene. Plaintiffs, Jerry and Inez Baldwin, Steven and Elizabeth Heischobert, Joseph and Kathy Leach, Preston and Rachael McKellar, J. Frederick and Vannessa Michaux, William and Deborah Morgan, and Robert and Lea Orlando, timely filed their motion to intervene into the action on December 9, 2009. To comply with Fed.R.Civ.P. 24©, Plaintiffs appended to their motion complaints that they had filed in Virginia state court. These complaints asserted claims coinciding with the FAC, except that they did not assert class allegations as no such procedure exists in Virginia.[2] Given this factual premise, Taishan's legal analysis cannot withstand scrutiny.

Taishan premises its motion upon Fed.R.Civ.P. 5(a)(2), which states: "No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." On its face, this Rule does not apply to Plaintiffs' motion to intervene, as the motion is not a pleading. *See* Fed.R.Civ.P. 8 (pleadings include complaints, answers, cross-claims, etc.). Additionally, Rule

---

[2] The Fifth Circuit observes Rule 24(c) leniently and allows intervenors simply to adopt the existing pleadings of the parties. *See S.E.C. v. Funding Resource Group*, 233 F.3d 575 (5th Cir. 2000) ("Although the filing of a complaint in intervention is clearly required by the language of the rule, this court has traditionally 'been lenient in hearing the appeals of parties who have failed to fulfill the provisions of Rule 24©.'"), *citing, International Marine Towing, Inc. v. Southern Leasing Partners, Ltd.*, 722 F.2d 126, 129 (5th Cir. 1983); 7C Wright, Miller, Kane, *Federal Practice and Procedure* §1914 at 517 (2007). In their motion, the Intervenors adopted the claims of the SAC, but obviously this adoption did not include the SAC's class allegations as the Plaintiffs never asserted that they were acting as representative plaintiffs and went on to only pursue their individual claims. As a consequence, the claims pursued by the Intervening Plaintiffs were identical to those alleged in the FAC, since the only material difference between the FAC and SAC was the assertion of a national, rather than a Virginia class. As discussed *infra*, if service of the SAC was insufficient then the FAC remains the operative complaint, and Taishan does not dispute that jurisdiction under the FAC was obtained.

5(a)(2) only contemplates service of pleadings asserting *new claims* for relief pursuant to Rule 4. The Intervenors' motion only intended to have the Intervenors participate in the claims already existing in the action. They asserted no claims other than those present in the case. Thus, service of the motion to intervene by means of ordinary service like that employed by the Plaintiffs was certainly sufficient under the rules.

Taishan's contention that it was improperly served with the SAC has no effect on the Intervenors' judgment against the Chinese manufacturer. Substantial compliance with Rule 4's requirements was met as Taishan had actual notice of the SAC. *See Anunciation v. West Capital Financial Services, Corp.*, 1996 WL 534049, *2 (9th Cir. Sept. 19, 1996); *Bricklayers & Allied Craftworkers Local Union No. 8 v. Palomino*, 2010 WL 2219595, *5 n.7 (N.D. Cal. June 2, 2010) (describing substantial compliance). Taishan was physically served with the SAC via Federal Express. The only material difference between the FAC and SAC is the switch from a Virginia state class to a national class. Since no class relief was sought during the Intervenors' trial, Taishan cannot argue that it suffered any prejudice whatsoever in the matter. Further, Plaintiffs have undertaken enormous efforts to effect service upon the foreign defendants in this litigation. The PSC has retained APS International to conduct its foreign service of this case, as well as the major actions in this MDL, including the several Omni complaints. Service under the Hague Convention is time-consuming and inordinately expensive, as translation and foreign court peccadilloes present substantial impediments to prompt service.[3] Thus, the Plaintiffs were

---

[3] The PSC has undertaken the burden and expense of having APS serve complaints overseas. In contrast to the ~$2,000 spent to have APS translate and serve the *Germano* FAC, the PSC has had to expend as much as ten times that amount for similar efforts with regard to the Omni complaints. The Omni complaints have proven themselves to be effective tools for purposes of aggregating claims in the MDL. This process of aggregation, however, has only been procured at great expense. Not only has the effort been costly, but it has also proven itself to be time-consuming. For example, the indeterminate defendant complaint of *Gross v. Knauf Gips, KG*, No. 09-6690, was filed on October 7, 2009, but it took two months for it to be translated and sent abroad, and even today there are some foreign defendants for

justifiably excused from serving Taishan with the SAC under the Hague Convention.

Moreover, even if service of the SAC was ineffective, the result is simply that the FAC remains the operative complaint. Ironically, Taishan relies upon the Ninth Circuit opinion in *Anunciation*, which case fully supports the Intervening Plaintiffs proceeding under the FAC. *Anunciation* states:

> Anunciation argues that if the district court had no jurisdiction over the amended complaint, then the amended complaint could not have superseded the initial complaint. The initial complaint was therefore still viable and service of process with regard to the initial complaint is not contested. We agree.
>
> ***
>
> The initial complaint in the present case remained viable because the amended complaint was never effectively served.

*Anunciation*, 1996 WL 534049 at *2. Here, Taishan does not contest that the initial Virginia class claims of the FAC are effective because Taishan was served with the FAC under Rule 4. As the Intervenors were all Virginia home owners, they presented no "new claim" distinct from the FAC. Because service was accomplished upon Taishan through summons and the FAC, this Court obtained jurisdiction over Taishan. Thus, the judgment obtained by the Intervening Plaintiffs is equally effective against Taishan irrespective of service of the SAC.

---

whom no response has been received. Likewise, the Omni I case of *Payton v. Knauf Gips, KG*, No. 09-7628, was filed on December 9, 2009, but it took over five months for it to be translated and sent abroad for service on May 28, 2010, and as of today no response has been received from any of the Knauf entities named therein. The remaining Omni and other operable complaints and the *Germano* SAC are still in the process of being translated for service abroad. The Court has recognized on numerous occasions the utility of this prolix process, which has brought numerous foreign defendants into this forum wherein over 500 defendants are participating in the MDL. *See, e.g.*, Tr. of 2/11/10 Status Conf. at 31-32; Tr. of 4/8/10 Status Conf. at 20. The tardy Taishan interests cannot deny this.

## B. Intervening Plaintiffs' Counsel Are Entitled to Attorneys' Fees Under the Virginia Consumer Protection Act

### 1. *Taishan Admitted the Plaintiffs' Factual Allegations as a Consequence of its Default*

A default judgment is a final judgment, and in its brief Taishan overlooks the fact that its default in this case establishes the factual allegations of the claims at issue. Taishan by its default admitted the Plaintiffs' well-pleaded allegations of fact, is concluded on those facts by the judgment and is barred from contesting on appeal the facts thus established. 55 MOORE'S FEDERAL PRACTICE CIVIL ¶55.60. In fact, the very case cited by Taishan in connection with its objection to Plaintiffs' claim under the Virginia Consumer Protection Act, ¶ 59.1-196, *et seq.* (hereinafter the "VCPA") actually reaffirms well settled law:

> ... attempts by a defendant to escape the effects of his default should be strictly circumscribed; he should not be given the opportunity to litigate what has already been considered admitted in law. *See Trans World Airlines, Inc. v. Hughes*, S.D.N.Y., 38 F.R.D. 499, 501, *aff'd*, 2 Cir., 449 F.2d 51, *rev'd on other grounds*, 405 U.S. 915, 92 S. Ct. 960, 30 L. Ed. 2d 785. The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. *Ohio Central Railroad Company v. Central Trust Company of New York*, 1889, 133 U.S. 83, 10 S. Ct. 235, 33 L. Ed. 561; *Thomson v. Wooster*, 1884, 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105; *Trans World Airlines, Inc. v. Hughes*, 2 Cir. 1971, 449 F.2d 51, 63-64, *rev'd on other grounds*, 1973, 409 U.S. 363, 93 S. Ct. 647, 34 L. Ed. 2d 577. A default judgment is unassailable on the merits but only so far as it is supported by *well-pleaded* allegations, assumed to be true. *Thomson v. Wooster*, 1884, 114 U.S. 105, 5 S. Ct. 788, 29 L. Ed. 105.

*Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1207 (5th Cir. 1975).

In the First Amended Complaint, Plaintiffs alleged that Defendant Taishan was a supplier of the defective drywall (FAC ¶ 10); that the drywall that it supplied was defective and contained

components and compounds that broke down and released sulfides and noxious gases (FAC ¶¶ 23, 24); that the defective characteristics of the supplied product by Taishan proximately caused both property damage and personal injuries (FAC ¶ 30); that Taishan, among other defendants, knew that its product would cause harm (FAC ¶¶ 47, 48, 53, 54); that Taishan's actions, among other defendants, were deliberate (FAC ¶ 78); that the sale of the defective drywall was a consumer transaction in a good (FAC ¶ 81); and that such transaction took place by Taishan as a supplier (FAC ¶ 82). Finally, by incorporating and restating all preceding paragraphs of the complaint (FAC ¶ 79), Plaintiffs alleged that Defendant Taishan, among others, *knowingly* misrepresented the source, affiliation, origin, characteristics, ingredients, standards of quality of the defective drywall causing the Plaintiffs' actual damage (¶¶ 84, 85). With the complaint taken as a whole, these allegations of fact are deemed admitted. With the VCPA allegations, the Plaintiffs alleged that the drywall contained toxic substances which created significant property damage and risk of personal injury. The factual allegation that Taishan knowing and deliberately failed to so set forth the characteristics of this product known to Taishan certainly constitutes misrepresentations of fact (¶¶ 83, 84). These allegations were compliant with Fed.R.Civ.P. 8(a)(2) requiring a "short and plain statement of the claim showing that the pleader is entitled to relief."

A Fed.R.Civ.P. 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding a motion to dismiss the material allegations of the complaint are taken as admitted. *Jenkins v. McKeefen*, 395 U.S. 411, 421 (1969). Moreover, the complaint is to be liberally construed in favor of the Plaintiffs. *Id.* Recently in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), relied upon by Taishan herein, the Supreme Court held that "to survive a motion to dismiss, a complaint must contain sufficient factual matter accepted to be true to state a claim to relief that is plausible on its face." A claim

has factual plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. This has been further interpreted to require that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and finally *Iqbal* has defined "plausible on his face" as more than the sheer possibility of the defendant's liability. *Iqbal*, *supra*, at 129 S. Ct. at 1949. The Intervenors certainly exceeded these standards given the allegations previously cited.

As will be discussed below the question of whether or not the sale of this particular product under these particular circumstances is a "consumer transaction" pursuant to VCPA would be considered under Virginia law as a question of fact, which question was *admitted* in connection with the Defendant's default. Taishan should not now be heard to say that the claim would not be amenable to legal relief. An allegation is admitted if a responsive pleading is required and the allegation is not denied. Fed.R.Civ.P. 8(b)(6). *See also GlobalSantaFe Corp. v. Globalsantafe.Com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003), wherein the court stated "upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." The FAC alleged as a fact that a consumer transaction in a good by a supplier took place consistent with the purposes of the Act and these factual admissions are the law of the case. *See Trans World Airlines, supra.*

**2. *The Subject Transaction Was in Fact Covered by the Virginia Consumer Protection Act***

The VCPA claims in the FAC were all properly pled factually as a consumer transaction as contemplated by the Act. The Code of Virginia at §59.1-198 indeed defines "consumer transaction" as:

> ... the advertisement, sale, lease, license or offering for sale, lease or license of goods or services to be used primarily for personal, family or household purposes.

A "supplier" is defined as:

> ... a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or manufacturer, distributor or licensor who advertises and sells leases or licenses, goods or services to be resold, leased or sub-licensed by other persons in consumer transactions.

These terms must be read in connection with the expressly stated legislative intent of the General Assembly of Virginia at §59.1-197, namely

> ... it is the intent of the General Assembly that this chapter shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public.

It should be noted at the outset that the Supreme Court of Virginia has never specifically weighed in on a definitive explanation of what is a "commercial" or "consumer" transaction in the context of materials used for the building or repair of a home. It is submitted that the nature of the good and the nature of the transaction control this factual issue. The cases cited by Judge Hall in holding that VCPA did not cover the sale of drywall by the supplier defendants relied upon a series of cases involving a synthetic stucco surface preparation known as ("EFIS") that needed several professional and commercial steps to mix, prepare and finally apply the material.[4] *See In re: Chinese Drywall Cases*, 2010 Va. Cir. LEXIS 43 at page 10. Such a material is not readily available for purchase by the general consuming public without intervention of a construction professional. However, drywall sheets are in a family of materials that could be purchased and are routinely purchased in "Home Depot"-type retail stores throughout the

[4] This ruling will be appealed to the Virginia Supreme Court.

country.[5] In a case involving a similar building material, namely plywood, another Virginia Circuit Court felt that in light of the expressed remedial intent of the General Assembly to promote fair and ethical standards of dealing between suppliers and the consuming public, and given the broad definition of "supplier," that at the demurrer stage of the proceedings the court could not so rule and held the matter was a factual issue. *See Providence Village Townhouse Condominium Ass'n v. Amurcon-Loudoun Corp., et al.*, 33 Va. Cir. 165, 1994 WL 1031006 (Jan. 18, 1994). The foregoing case also establishes the position of the Plaintiffs herein that a "consumer transaction" involves a significant question of fact, which, as alleged in the subject FAC, led to an admission of that fact by the defaulting party. Explaining its reasoning, the court in *Providence Village*, *supra*, stated:

> ... persons who suffer a loss as a result of a violation of ¶ 59.1-200 are entitled to recover damages, attorneys fees, and costs in an action against the offender. ¶ 59.1-204 of the Code of Virginia. *The legislation has placed no limitation on recovery to those found in privity with the offending party consistent with the broad remedial nature of the act and the focus on promoting fair and ethical standards for suppliers, each case must be judged on its own merits. Accordingly, this . . . must await a further factual inquiry....*

1994 WL 1031006 at *5 (emphasis added).

Taishan conveniently omits that Judge Hall, *at no time*, faulted similar specific VCPA allegations advanced in state court claims finding that the plaintiffs had indeed alleged violations of the VCPA by misrepresenting the source, affiliation, origin, characteristics, ingredients, standards and quality of the drywall and that the VCPA was further implicated by a mislabeling

---

[5] In fact, a simple websearch for "Home Depot" revealed several varieties and manufacturers of drywall sheets available to the general consuming public for household use. *See* www.homedepot.com. Search term "drywall."

of the drywall as Venture Supply drywall.[6] *See Chinese Drywall Cases*, at 10.

Even had the Taishan Defendant not admitted the well-pleaded facts (specifically that a consumer transaction involving a supplied good was involved), the VCPA would certainly apply to the circumstances of the action.

Taishan's allegation that Plaintiffs failed to allege plausible facts alleging the elements of a VCPA claim is simply wrong. Plaintiffs' allegations of misrepresentation of fact certainly do include the elements of fraud, namely a false misrepresentation, of a material fact, made intentionally and knowingly, and with intent to mislead, reliance by the party misled, and resulting damage. *Richmond Metro Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 557-58, 507 S.E.2d 344 (1988). (FAC ¶ 83). *Weiss v. Cassidy Development Corporation*, 63 Va. Cir. 76 (2003), relied upon by Taishan herein, is inapposite under the instant facts inasmuch as that case involved a claim of a specific misrepresentation of fact in connection with a breach of a specific contract. In stark contrast, this case involves a section of the VCPA involving deliberate misrepresentations regarding the character, quality and origin of a product which was delivered for use in the home and which contained significant defects in the nature of toxins. Specific allegations of the Plaintiffs meet the requirements of misrepresentation in the context of that *specific* portion of the VCPA at Section 59.1-200A, (a-e). It is respectfully submitted that the allegations of the FAC were therefore more than sufficient to establish those elements.

---

[6] It is also respectfully suggested that Judge Hall's finding that there was no direct contact between the supplier defendants and the plaintiffs is also a bar to recovery is in error when privity is certainly no defense in these actions and the term supplier is not so limited to those circumstances for recovery. *See Merriman v. Auto Excellence Inc.*, 55 Va. Cir. 330 (2001) (in a claim brought under the Virginia Consumer Protection Act, the Court found that because plaintiff's claim was brought under the Act the lack of privity was not available as a defense and that the language of the statute certainly does not seem to limit protection only to those transactions that occur directly between a supplier and the ultimate consumer inasmuch as the General Assembly stated expressly that its intent is to apply the Act as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public.").

### C. The Fee Request is Reasonable

Counsel for Intervening Plaintiffs are seeking an award of attorneys' fees based on the success they achieved for their clients following evidentiary hearings in this matter that took place on February 19, 2010, and culminated on February 22, 2010. The requested fee equals one third of the judgments entered in this case, in conformity with the contingency fee agreements signed by the Plaintiffs. Their request is considered reasonable under Virginia law. *See Richendollar v. Bertini*, 27 F.3d 563 (Table), 1994 WL 266081 (4th Cir. 1994); *Adamick v. Maher*, 23 Vir. Cir. 370, 1991 WL 834907 (Vir. Cir. Ct. 1991); *Phillips v. Day*, 861 F.2d 265 (Table) (4th Cir. 1988); *Morris Law Office, PC v. Tatum*, — F. Supp. 2d —, 2004 WL 3523515 (W.D. Va. Nov. 10, 2004). Moreover, as set forth in the Affidavit of Plaintiffs' Liaison Counsel Russ Herman (Exhibit "8" to the Fee Petition), trial counsel for the *Germano* Intervenors expended in the aggregate in excess of 6,000 hours of attorney time not including other professional time such as non-core trial counsel, paralegal and law clerk time from November, 2009 through February, 2010, litigating Plaintiffs' claims pertaining to defective Chinese-manufactured drywall installed in seven different homes, each with its own factual scenario and proof of damages, against Taishan and the other Intervenor Defendants. Herman Aff. at ¶ 4. Thus, even if the Court awards Intervening Plaintiffs' Counsel the requested amount of $919,452.17, representing one-third of the Intervening Plaintiffs' recoveries, the attorneys will receive, at best, what amounts to no more than approximately $150.00 per core trial counsel attorney hour, which is low by any standard, and certainly "reasonable" under the circumstances. Taishan would be hard-pressed to demonstrate that it has expended less than $150.00 per hour for its attorneys' time in this case.

Furthermore, the nature of this suit is inherently complex. In order to prove that Chinese-manufactured drywall is defective, Plaintiffs' counsel engaged numerous scientific and

engineering experts in the fields of corrosion, metallurgy, electrical and mechanical devices and other building materials. The prosecution of Plaintiffs' claims involved detailed scientific analyses and/or testing of released sulfur gases, including hydrogen sulfide (HS), carbonyl sulfide (COS), and carbon disulfide (CS), ongoing scientific research and an assessment and understanding of complex federal, state and local governmental rules and regulations. Germano Findings of Fact at 12-13 (Rec. Doc. No. 2380). The sheer volume of documents exchanged by the parties during discovery in this complex litigation, the large number of experts designated and deposed by each side, the numerous *Daubert* motions, briefs and oral argument on the scientific experts' admissibility, and the numerous motions *in limine* in addition to the efforts spent to successfully try these seven cases validate the number of hours expended by Plaintiffs' counsel during the relevant time period.[7] Plaintiffs' petition is reasonable on its face when considering the procedural posture of this action and the nature and complexity of the claims tried.[8] The Court's Findings of Fact alone comprise 108 pages.

Unable to seriously refute the reasonableness of counsel's petition for fees, Taishan disingenuously cites *Peter Farrell Supercars, Inc. v. Monsen*, 82 Fed. Appx. 293, 2003 WL 22852654 (4th Cir. Dec. 3, 2003), *cert. denied*, 541 U.S. 1064 (2004), for the proposition that "Virginia law bars recovery of attorneys' fees for the activities of more than one attorney." Taishan Opp. at 9-10. In *Peter Farrell*, the court held that under Virginia law "counsel must 'establish, as an element of the attorney's *prima facie* case, that the fees charged ... are reasonable.'" *Id.*, 82 Fed. Appx. at 300, 2003 WL 22852654 at *6, *citing*, *Seyfarth, Shaw,*

---

[7] As pointed out in the Fee Petition (at pp. 2-3), these cases were intended to serve as bellwether trials for the benefit of all parties and the Court. *See* Germano Findings of Fact at 57 ("average cost per square foot to repair the *Germano* homes is $86.").

[8] Plaintiffs have served the Intervening Defendant Knauf Plasterboard Tianjin Co., Ltd. ("Knauf") with interrogatories seeking to elicit the amount of money that party spent on legal services to defend this action. *See* Exhibit "A" hereto.

*Fairweather & Geraldson v. Lake Fairfax Seven Ltd.*, 253 Va. 93, 480 S.E.2d 471, 473 (1997). In making that determination, the court should consider "the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances." *Id., citing Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 403 S.E.2d 334, 335 (1991). As part of this process, the court "should 'weigh the testimony of attorneys as to the value of the services, by reference to their nature, the time occupied in their performance, and other attending circumstances, and by applying to it their own experience and knowledge of the character of such services.'" *Id., citing Tazewell Oil Co. v. United Va. Bank*, 243 Va. 94, 413 S.E.2d 611 (1992) (holding affidavit and billing records sufficient); *Seyfarth, Shaw*, 480 S.E.2d at 473 (holding testimony regarding complexity of the work sufficient). In upholding the district court's fee award in *Peter Farrell*, the Fourth Circuit Court of Appeals noted that the lower court appropriately "relied on its own experience" with the litigation and with regard to the reasonableness of attorney billing rates in the relevant area. *Id.* Because the district court eliminated "duplicative fees from the lodestar when calculating the award," the fee award to more than one attorney did not violate Virginia law. *Id.*, 82 Fed. Appx. at 300-01, 2003 WL 22852654 at *6 (noting that "Virginia courts have yet to rule on the meaning of [Va. Code Ann. §17.1-625]").

Counsel for Intervening Plaintiffs believe their fee request is more than reasonable under the circumstances and in compliance with the law.

**D. The Costs Requested Are Appropriate and Taxable Under the Law**

Taishan's principal argument against Intervening Plaintiffs' request for costs is that said costs have not been verified and cannot be effectively challenged. Taishan Opp. at 11. However, PLC Russ Herman testified in his affidavit in support of the fee petition that the expenses itemized in the Bill of Costs (which do not include all of the costs incurred by the Plaintiffs in this case) are "fair and reasonable" and he attached detailed, back-up support documentation for

those expenses. Herman Aff. at ¶¶ 5-6. Further, as set forth in the fee petition, all of these costs were necessary to the prosecution of Plaintiffs' claims and they comport with governing law. With regard to travel costs, for example, counsel are seeking reimbursement of expenses only "at the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1).

The Court has "great latitude" in deciding whether costs are taxable. *Fogleman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir. 1991). "There is no requirement under Rule 54 that a district court provide a detailed review or analysis of every item of cost it awards; rather, '[a] prevailing party is presumptively entitled to recover all of its costs.'" *See Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 896-97 (8th Cir. 2009). Taishan contests specific items of costs including videotaped deposition transcripts, service costs, daily trial transcripts and trial exhibits.

Numerous courts have held, however, that costs associated with videotaped depositions may properly be taxed to the losing party under 28 U.S.C. § 1920. *See Craftsmen Limousine*, 579 F.3d at 897-98 ("costs of video depositions are included under § 1920"); *Little v. Mitsubishi Motors N. Am.*, 514 F.3d 699, 701 (7th Cir. 2008) (per curiam) (stating that courts may tax video-deposition expenses as costs under § 1920); *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1477 (10th Cir. 1997) ("[W]e hold section 1920(2) implicitly permits taxation of the costs of video depositions."); *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 464-65 (11th Cir. 1996) ("[W]e hold that, when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time ... it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed."); *Meredith v. Schreiner Transport, Inc.*, 814 F. Supp. 1004, 1006 (D. Kan. 1993) ("this court believes the better practice is to allow the costs of both videotaped and stenographic depositions, absent some good reason not to do so."); *see also* 28 U.S.C.A. § 1920(2) (2008) ("A judge or

clerk ... may tax as costs ... [f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."). The cases relied upon by Taishan to deny expenses for videotaped depositions are distinguishable because they were decided prior to 2008 when the statute was amended to include fees "for printed or electronically recorded transcripts." Previously the law specified only fees "of the court reporter for all or any part of the stenographic transcript." 28 U.S.C. § 1920(2) (historical and statutory notes).

The cost to perfect service of the complaint on Taishan in China should also be recoverable. *HEI Resources East OMG Joint Venture v. S. Lavon Evans, Jr. Operating Co.*, 2010 WL 536997, *3-*4 (S.D. Tex. Feb. 20, 2010) (allowing filing fees and private process server fees).

With regard to daily trial transcripts, courts have allowed those costs especially in complex matters. *See, e.g., In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 687 F.2d 626, 632 (2nd Cir. 1982) (upholding "district judge's findings that 'the length and complexity of the consolidated liability trial warranted the use of overnight transcripts' and that in view of the large number of parties and special problems supplying an original and a copy of the expedited transcripts was 'not a convenience or a luxury, but a compelling necessity.'").

Finally, it is within the Court's discretion whether to allow for the taxation of Plaintiffs' copying costs, which include an animated exhibit. "Under § 1920(4) a prevailing party is entitled to 'the reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats and kindred materials.'" *Air Crash Disaster at John F. Kennedy*, 687 F.2d at 631, *quoting*, 6 MOORE'S FEDERAL PRACTICE P 54.7776[6], at 1739 (2nd ed.). Courts have permitted awards of costs for statistical consulting costs and computer expenses, *e.g.*, *EEOC v. Kenosha Unified School Dist. No. 1*, 620 F.2d 1220, 1227-28 (7th Cir.1980), for demonstration models and exhibits, *e.g.*, *Wahl v. Carrier Manufacturing Co., Inc.*, 511 F.2d 209, 217-18 (7th Cir. 1975), for

maps and aerial photos, *e.g.*, *Mikel v. Kerr*, 499 F.2d 1178, 1182-83 (10th Cir. 1974), for a scientific survey of oil wells, *e.g.*, *Harrington v. Texaco, Inc.*, 339 F.2d 814, 821-22 (5th Cir.), *cert. denied*, 381 U.S. 915 (1965), and for technical drawings, *e.g.*, *Appliance Inv. Co. v. Western Electric Co., Inc.*, 61 F.2d 752, 756-57 (2nd Cir. 1932).

Costs for animated exhibits have been allowed by the courts. *See Marquez v. American Export Lines*, 41 F.R.D. 386 (S.D.N.Y. 1967) (costs of motion picture film recording plaintiff's physical movements taxable); *Victor Talking Machine Co. v. Starr Piano Co.*, 281 F. 60, 66 (2nd Cir. 1922) (costs allowed for "motion pictures and photographs of cutting tools in operation, and of the grooves made by these tools"); *Toyota Electron Arizona, Inc. v. Discreet Industries Corp.*, 215 F.R.D. 60, 67 (E.D.N.Y. 2003) (allowing costs for PowerPoint presentation); *W.F. & John Barnes Co. v. Int'l Harvester Co.*, 145 F.2d 915, 918 (7th Cir. 1944), *cert. denied*, 324 U.S. 850 (1945) ("district court is entrusted with discretionary power to receive in evidence ... [photographs (and duplicating enlargements thereof) and motion picture film], and to tax as ... party costs the reasonable expense of their procurement, if the court reasonably thought they were necessary and helpful to an expeditious and proper trial of the issues"); *Brown v. Pro Football, Inc.*, 839 F. Supp. 905, 917 (D.D.C. 1993) (costs for "litigation graphics" and "litigation supplies" allowed where "plaintiffs' charts (blow-ups, flip-charts, and page-sized color exhibits) were necessary to plaintiffs' presentation of their case to the jury"), *on reconsideration*, 846 F. Supp. 108 (D.D.C. 1994), *rev'd on other grounds*, 50 F.3d 1041 (D.C. Cir. 1995), *aff'd*, 518 U.S. 231 (1996); *Board of Directors, Water's Edge v. Anden Group*, 135 F.R.D. 129, 137-38 (E.D. Va. 1991) (allowing cost of video tape of party's chief expert witness inspecting roof and pointing out evidence establishing liability where the video made the "case more intelligible to the jury, ... thereby saving trial time and aiding the jury."). In this case, the animated exhibit at issue (P1.1885) demonstrated the flow of corrosive gases throughout the

subject house including into spaces not visible to the naked eye. The exhibit demonstrated the scope of damage which supported the scope of the remediation ruling. The exhibit was presented to the Court during the testimony of experts Dean Rutila and Dr. Galler on the subjects of scope of damage and scope of remediation. As such, the cost for the animation should be allowed.

## III. CONCLUSION

For the reasons outlined above and as set forth in the Petition for Fees and Costs, Intervening Plaintiffs' Counsel respectfully request that this Court award them the requested sum of $919,452.17 representing attorneys' fees equal to one-third (1/3) of the Intervening Plaintiffs' recoveries, plus post-judgment interest as appropriate, and recoverable costs of $153,423.18.

Respectfully submitted,

Dated: July 16, 2010

/s/ Leonard A. Davis
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
Stephen J. Herman, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**


Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
Matthews, Martinez, Gonzales,
Kalbac & Kane
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134-5008
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
& Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com