IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSHUA PRICE, and KIMBERLEA PRICE | : | |
| | : | |
| Plaintiffs, | : | COMPLAINT |
| | : | |
| v. | : | No. |
| | : | |
| KNAUF GIPS KG, and, | : | JURY TRIAL DEMAND |
| INTERIOR EXTERIOR BUILDING | : | |
| SUPPLY | : | |
| | : | IN RE: CHINESE-MANUFACTURED |
| | : | PRODUCTS LIABILITY |
| | : | LITIGATION |
| Defendants. | : | MDL NO. 2047  Section "L" |
| | : | |

## **COMPLAINT**

Plaintiffs, Joshua Price and Kimberlea Price, bring this action on their behalf against Defendants, KNAUF GIPS KG, and , INTERIOR EXTERIOR BUILDING SUPPLY (collectively "Defendants"), and for their complaint allege, upon information and belief and based on the investigation to date of their counsel, as follows:

## **INTRODUCTION**

1.    Plaintiffs bring this action on their behalf of themselves against the Defendants who were using drywall manufactured, processed, distributed, delivered,

Exhibit "3"

1

supplied, inspected, marketed and/ or sold by Defendants, Knauf Gips KG ("Knauf Gips"), and Interior Exterior Building Supply.

2.  The drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed, and/ or sold by Defendants to build the homes of Plaintiffs is defective and emits levels of sulfur, methane and/ or other volatile organic chemical compounds that cause corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items, as well as create noxious, "rotten egg-like" odors, Defendants' drywall was inherently defective and not suitable for its intended use.

## JURISDICTION AND VENUE

3.  Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

4.  This action is within the original jurisdiction of this Court because the Court maintains subject matter jurisdiction over the dispute based on the object of the demand and the amount in controversy.

5.  Venue for this cause is proper in the Eastern District of Louisiana, pursuant to and in accordance with 28 U.S.C. §1391.

## THE PARTIES

6.  Plaintiffs, Joshua Price and Kimberlea Price, are residents of Abita Springs, Louisiana and own a home located at 117 Rue Merlot, Abita Springs, Louisiana, 70420. Plaintiffs' home was built sometime in 2007 using Defendants' defective drywall.

2

7.      Upon information and belief, Defendant, Knauf Gips, is a German corporation doing business in the State of Louisiana. Knauf Gips is a leading manufacturer of building materials and systems. Defendant Knauf Gips, together with its affiliates, including Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Defendant Knauf Gips supervised, operated, trained and otherwise exercised control and/ or had the right control and/ or had the right to control the operations of Knauf Tianjin, and its agents, apparent agents and employees.

8.      Among other things, in 1995, Defendant Knauf Gips introduced its advanced production techniques and technology into China. Form 1997 through 2001, Defendant Knauf Gips established three plasterboard plants in China located in Wuhu, Tianjin and Dongguan. The product quality of all Defendant Knauf Gips' plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Defendant Knauf Gips' sales and technical support teams support Knauf Gips' business throughout the world, including Knauf Tianjin in China. Knauf Tianjin and its employees are the actual and/ or apparent agents of Defendant Knauf Gips.

9.      Upon information and belief, Defendant Knauf Gips, together with its affiliates and/ or actual or apparent agents, including Defendant Knauf Tianjin, manufactured, sold, distributed, marketed and placed into the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not within the State of Louisiana. Defendants Knauf Tianjin and/ or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in

3

the State of Louisiana and their drywall was installed in numerous homes in Louisiana. Defendants Knauf Tianjin and/ or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Louisiana, including, Interior Exterior Building Supply, defective gypsum drywall that was installed in Plaintiff's home.. Moreover, Defendants Knauf Gips and/ or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

10.     Upon information and belief, Knauf Plasterboard Tianjin Co., Ltd., is a Chinese corporation with its principal place of business located at North Yinhe Bridge, East Jingin Road, Beichen District, Tianjin 300400 P.R.C., and at all times material, conducted business in the State of Louisiana. Knauf Tianjin is the actual and/ or apparent agent of Defendant Knauf Gips. Upon information and belief, Knauf Tianjin, individually and/ or together with and at the direction and control of its principal Defendant Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the state of Louisiana. Knauf Tianjin and/ or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and their drywall was installed in numerous homes in Louisiana. Knauf Tianjin and/ or Knauf Gips manufactured and sold directly to certain suppliers in the State of Louisiana, including Defendant Interior Exterior Building Supply defective gypsum drywall that was installed in Plaintiff's home and the homes of the Plaintiff Class Members. Moreover, Defendants Knauf Gips and/ or Knauf Tianjin

4

purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

11.    This Court has personal jurisdiction over the Defendants Knauf Gips because they are "engaged in substantial and not isolated activity within this state." Additionally, Plaintiffs' causes of action arise from the Defendants Knauf Gips personally or through their agents, causing injury to property within the State of Louisiana arising out of acts of omissions of Defendants Knauf Gips, outside the State of Louisiana, and at the time of injury, products, materials, or things manufactured by Defendants Knauf Gips were used and consumed within the State of Louisiana in the ordinary course of commerce, trade or use.

12.    Defendant Interior Exterior Building Supply is a Louisiana partnership with its principal place of business located at 727 S. Cortez, New Orleans, Louisiana 70119.

## GENERAL ALLEGATIONS

13.    In connection with the construction of homes in the State of Louisiana, consumers purchased gypsum drywall, either directly or indirectly, from various suppliers, including, but not necessarily limited to, Defendant Interior Exterior Building Supply (hereinafter "Suppliers").

14.    Upon information and belief, the Suppliers purchased, directly and/ or indirectly gypsum drywall that was manufactured in China by defendant Knauf Gips, Knauf Tianjin and Taishan, and possibly other unknown Chinese manufacturers.

15.     Defendants negligently manufactured, processed, distributed, delivered, supplied, inspected, marketed and/ or sold defective gypsum drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

16.     Defendants' drywall was made with waste material from scrubbers on coal-fired power plants, also called "fly ash." These materials can leak into the air and emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

17.     When combined with moisture in the air, these sulfur compounds create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing – creating leaks, blackening coils and causing HVAC systems and refrigerators to fail. Sulfuric acid has also been shown to corrode copper electrical wiring and plumbing components. Not only does it blacken and corrode coils it can harm metals such as chrome, brass and silver.

18.     Defendants' defective drywall can not only affect HVAC systems and refrigerators, but can effect and require replacement of all sorts of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware. In addition, the defective drywall has a noxious odor, akin to the smell of rotten eggs.

19.     Upon information and belief, over 10 million square feet of Defendants' defective drywall was used in the construction of Louisiana homes between 2004 and 2006.

20.     Upon information and belief, Defendants Knauf Gips and/ or Knauf Tianjin themselves have engaged experts and consultants in the State of Louisiana to investigate

6

claims regarding the effective drywall. Among other things, Defendants Knauf Gips and/ or Knauf Tianjin have inspected several affected homes and have witnessed firsthand the effects of its defective drywall on, among other things, HVAC coils, electrical wiring and plumbing. Defendants Knauf Gips and/ or Knauf Tianjin have failed and refused to take responsibility for their defective product and agree to repair or replace the defective drywall.

21.     Defendants' actions will require Plaintiffs to remedy all defective drywall, perform extensive remedial repairs to the homes, and then repair the damaged property made visible during the performance of these repairs.

22.     As a result, the Plaintiffs have suffered, and continue to suffer damages as a result of the Defendants' defective drywall and the corrosive effects of the sulfur compounds. These damages include, but are not limited to, the costs of inspection, costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property. Plaintiffs have also suffered and continue to suffer personal injuries as a result of Defendants' defective drywall including, but not limited to, allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

23.     Defendants' actions also resulted in substantial diminution in the value of Plaintiffs' homes.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

24.     The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose a known defect to Plaintiffs or the Plaintiff Class Members, and misrepresenting their product as safe for its intended use, actively concealed from Plaintiff and the Plaintiff Class the true risks associated with their drywall.

25.     As a result of Defendants' actions, Plaintiffs could not reasonably know or have learned through reasonable diligence of the manufacturing defect and that Plaintiffs had been exposed to the risks alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

26.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had, and continue to have, exclusive control, and because Defendants knew that this information was not available to the Plaintiffs and the Plaintiff Class Members. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

27.     Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiffs could not have been reasonably discovered the wrongdoing at any time.

8

## COUNT I
## VICARIOUS LIABILITY
## (Against Defendant Knauf Gips)

28.    Plaintiffs, Joshua Price and Kimberlea Price,  repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

29.    This is an action for vicarious liability against Defendant Knauf Gips for the negligent and wrongful acts of its actual and/ or apparent agent, Defendant Knauf Tianjin.

30.    Defendant Knauf Gips established Defendant Knauf Tianjin in China and at all times material, exercised strict control over Defendant Knauf Tianjin's operations in accordance with the requirements of Defendant Knauf Gips' headquarters in Germany. Defendant Knauf Gips is, and at all times materially was, responsible for implementing and supervising the quality control measures to be used by Defendant Knauf Tianjin.

31.    By establishing Defendant Knauf Tianjin in China, and by exercising strict control over Defendant Knauf Tianjin's conduct and operations, Defendant Knauf Gips acknowledged that Defendant Knauf Tianjin would act on its behalf as its actual and/ or apparent agent.

32.    Defendant Knauf Tianjin accepted the undertaking to act on Defendant Knauf Gips' behalf.

33.    Upon information and belief, Defendant Knauf Gips supervises, monitors, and controls Defendant Knauf Tiannjin's daily conduct and operations, including the manufacturing, distribution, marketing and sales of Defendant Knauf Tianjin's drywall products.  Furthermore, upon information and belief, Defendant Knauf Gips is

9

responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Defendant Knauf Tianjin.

34.     As such, Defendant Knauf Gips is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/ or apparent agent, Defendant Knauf Tianjin.

35.     As a result of Defendants Knauf Gips' and/ or Knauf Tianjin's wrongful conduct, Plaintiffs have suffered and will continue to suffer damages.

36.     As a result of the foregoing acts and omissions, Plaintiffs and Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/ or replacement costs, and/ or medical are, attention, and services.

## COUNT II
## NEGLIGENCE AND NEGLIGENCE *PER SE*
## (Against Defendant Knauf Gips)

37.     Plaintiffs, Joshua Price and Kimberlea Price, repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

38.     Defendants Knauf Gips and Knauf Tianjin breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/ or selling drywall the Defendants placed into the

10

stream of commerce, including a duty to assure that the product would perform as intended and would not cause, did not cause damage as described herein.

39.     Defendants Knauf Gips and Knauf Tianjin breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and/ or selling drywall Defendants placed into the stream of commerce in that Defendants knew or should have known that the product was defective, did not function as intended and/ or created a high risk of unreasonable, dangerous side effects, including but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

40.     The negligence of the Defendants, their agents, servants, and/ or employees, included, but was not limited to, the following acts and/ or omissions:

        a.     manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/ or selling drywall without thoroughly testing it;

        b.     manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/ or selling drywall without adequately testing it;

        c.     selling drywall without performing proper and sufficient tests to determine the dangers to its users;

        d.     negligently failing to adequately and correctly warn the Plaintiffs and Plaintiffs and the public, of the dangers of Defendants' drywall;

        e.     negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

11

        f.      negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

        g.      negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

        h.      negligently manufacturing drywall in a manner which was dangerous to its users;

        i.      negligently processing drywall in a manner which is dangerous to its users;

        j.      negligently distributing drywall in a manner which was dangerous to its users;

        k.      negligently delivering drywall in a manner which was dangerous to its users;

        l.      concealing information concerning reports of adverse effects from the Plaintiff and Plaintiffs while knowing that Defendants drywall were unsafe, dangerous and non-conforming with accepted industry standards; and

        m.      improperly concealing and/ or misrepresenting information from the Plaintiff and the Plaintiffs and/ or the public, concerning the severity of risks and dangers of Defendants' drywall and/ or the manufacturing defect.

    41.    Defendants were negligent in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/ or selling of Defendants' drywall in that they:

        a.      failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purposes

b.      failing to conduct adequate testing to determine the safety of their drywall; and

c.      failing to warn Plaintiffs and Plaintiff Class Members, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

42.      Upon information and belief, despite the fact that Defendants knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defect, Defendants continued to manufacture, process, distribute, deliver, supply, market and/ or sell drywall to the Plaintiffs, the Plaintiffs and/ or the consuming public.

43.      Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer damages and injury, both physical and economic, and/ or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth herein.

44.      Defendants' actions and/ or inactions, as set forth herein, by virtue of violating statutes, ordinances and/ or rules and/ or regulations, constitutes negligence per se.

45.      Defendants knew or should have known that homeowners such as the Plaintiff would foreseeably suffer injury, and/ or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

46.     Defendants' negligence was the proximate cause of Plaintiffs' and Plaintiff Class Members' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

47.     By reason of the foregoing, Plaintiffs experienced and/ or at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

48.     As a result of the foregoing acts and omissions, Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and placement costs, repairs for appliances, medical expenses, incidental and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs and Plaintiffs will in the future be required to pay for the additional repairs and/ or replacement costs, and/ or medical care, attention and services.

## COUNT III
## STRICT PRODUCTS LIABILITY
### (Against Defendant Knauf Gips)

49.     Plaintiffs, Joshua Price and Kimberlea Price,  repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

50.     At all times herein mentioned, Defendants Knauf Gips and Knauf Tianjin manufactured, processed, distributed, delivered, supplied, inspected, marketed and/ or sold drywall used in the construction of Plaintiffs' homes.

51.     Defendants' drywall was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in

the condition which it was manufactured, processed, distributed, delivered, supplied, inspected and/ or sold by the Defendants.

52. At those times, the Defendants' drywall was in an unsafe, defective, and inherently dangerous condition, which was unreasonably dangerous to homes and, in particular, Plaintiffs' home and the homes of the Plaintiff Class members.

53. Defendants' drywall were so defective in design or formulation or manufacture that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants drywall.

54. At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendants knew, had a reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

55. Defendants knew, or should have known, that at all ties herein mentioned Defendants' drywall was/ is inherently dangerous and unsafe.

56. At the time of use of Defendants' drywall by Plaintiffs, Plaintiffs and members of the Plaintiff Class utilized the drywall for the purposes and manner normally intended.

57. Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

58. Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/ or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiffs and members of the Plaintiff Class.

59.    Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/ or sold a defective product which created an unreasonable risk to the Plaintiffs' home ant the homes of the Plaintiffs as well as to the health of the Plaintiffs and members of the Plaintiff Class. Defendants are, therefore, strictly liable for the damages and injuries sustained by Plaintiffs and Plaintiff Class Members.

60.    Neither the Plaintiffs nor the members of the Plaintiff Class, acting as a reasonably prudent person, could discover that Defendants' drywall was defective as herein mentioned.

61.    By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiffs and members of the Plaintiff Class for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/ or selling of a defective product, Defendants' drywall.

62.    Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/ or reckless conduct by Defendants.

63.    Said defects in Defendants' drywall were a substantial factor in causing Plaintiffs' and Plaintiff Class members' injuries and/ or placing Plaintiffs and members of the Plaintiff Class at increased risk of damage and/ or harm.

64.    As a direct and proximate result of the defective condition of Defendants' drywall as manufactured and sold by Defendants, Plaintiffs and members of the Plaintiff Class suffered, and will continue to suffer damages.

65.    By reason of the foregoing, Plaintiffs experienced, and/ or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

66.    As a result of the foregoing acts and omissions, Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/ or replacement costs, and/ or medical care, attention, and services.

## COUNT IV
## NEGLIGENCE AND NEGLIGENCE *PER SE*
## (Against Defendant Knauf Gips)

67.    Plaintiffs, Joshua Price and Kimberlea Price,  repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

68.    Defendant Knauf Gips had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/ or selling drywall the Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause, did not cause damage as described herein.

69.    Defendant Knauf Gips breached its duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and/ or selling drywall into the stream of commerce in that Defendant knew or should

17

have known that the product was defective, did not function as intended and/ or created a

high risk of unreasonable, dangerous side effects, including but not limited to, corrosion

to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic

reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and

other health concerns.

70.    The negligence of the Defendant, their agents, servants, and/ or employees,

included, but was not limited to, the following acts and/ or omissions:

        a.    manufacturing, processing, distributing, delivering, supplying,

inspecting, marketing and/ or selling drywall without thoroughly testing it;

        b.    manufacturing, processing, distributing, delivering, supplying,

inspecting, marketing and/ or selling drywall without adequately testing it;

        c.    selling drywall without performing proper and sufficient tests to

determine the dangers to its users;

        d.    negligently failing to adequately and correctly warn the Plaintiffs

and Plaintiffs and the public, of the dangers of Defendants' drywall;

        e.    negligently failing to recall or otherwise notify users at the earliest

date that it became known that said product was, in fact, dangerous and defective;

        f.    negligently advertising and recommending the use of the aforesaid

without sufficient knowledge as to its manufacturing defect and dangerous propensities;

        g.    negligently representing that Defendants' drywall was safe for its

intended purpose when, in fact, its safety is questionable;

        h.    negligently manufacturing drywall in a manner which was

dangerous to its users;

i.      negligently processing drywall in a manner which is dangerous to its users;

j.      negligently distributing drywall in a manner which was dangerous to its users;

k.      negligently delivering drywall in a manner which was dangerous to its users;

l.      concealing information concerning reports of adverse effects from the Plaintiff and Plaintiffs while knowing that Defendants drywall were unsafe, dangerous and non-conforming with accepted industry standards; and

m.      improperly concealing and/ or misrepresenting information from the Plaintiff and the Plaintiffs and/ or the public, concerning the severity of risks and dangers of Defendants' drywall and/ or the manufacturing defect.

71.     Defendants were negligent in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/ or selling of Defendants' drywall in that they:

a.      failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purposes

b.      failing to conduct adequate testing to determine the safety of their drywall; and

c.      failing to warn Plaintiffs and Plaintiff Class Members, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

19

72.     Upon information and belief, despite the fact that Defendant knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defect, Defendant continued to manufacture, process, distribute, deliver, supply, market and/ or sell drywall to the Plaintiffs, the Plaintiffs and/ or the consuming public.

73.     Defendant knew or should have known that consumers such as Plaintiffs would foreseeably suffer damages and injury, both physical and economic, and/ or be at an increased risk of suffering damage and injury as a result of Defendant's failure to exercise ordinary care, as well as Defendant's negligent manufacturing process, as set forth herein.

74.     Defendant's actions and/ or inactions, as set forth herein, by virtue of violating statutes, ordinances and/ or rules and/ or regulations, constitutes negligence per se.

75.     Defendant knew or should have known that homeowners such as the Plaintiff would foreseeably suffer injury, and/ or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendant's failure to exercise ordinary care, as well as Defendant's negligent manufacturing process, as set forth above.

76.     Defendant's negligence was the proximate cause of Plaintiffs' and Plaintiff Class Members' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

77.     By reason of the foregoing, Plaintiffs experienced and/ or at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

78.     As a result of the foregoing acts and omissions, Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and placement costs, repairs for appliances, medical expenses, incidental and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs and Plaintiffs will in the future be required to pay for the additional repairs and/ or replacement costs, and/ or medical care, attention and services.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Defendants Interior Exterior Building Supply)

79.     Plaintiffs, Joshua Price and Kimberlea Price,  repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

80.     This is an action against Defendant Interior Exterior Building Supply for breach of the implied warranty of merchantability under Louisiana Law.

81.     Defendants Interior Exterior Building Supply is a merchant of gypsum drywall.

82.     Plaintiffs and Plaintiffs are an intended third party beneficiary of those contracts because it was the clear and manifest intent of Defendant Interior Exterior Building Supply that the contracts were to primarily and directly benefit Plaintiffs and the Plaintiff Class Members.

21

83. Pursuant to Louisiana Law, Defendant Interior Exterior Building Supply warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

84. Defendant Interior Exterior Building Supply breached the implied warranty of the merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

85. The drywall supplied and sold by Defendant Interior Exterior Building Supply and installed in Plaintiff's home and the homes of the Plaintiffs is defective because it caused the damage as described more fully herein.

86. As a result of Defendant Interior Exterior Building Supply breaches of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

87. As a result of the foregoing acts and omissions, Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/ or replacement costs, and/ or medical care, attention and services.

## COUNT VI
## BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE
## (Against Defendant Interior Exterior Building Supply)

88. Plaintiffs, Joshua Price and Kimberlea Price, repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

89.     This is an action against Defendant Interior Exterior Building Supply for breach of the implied warranty of fitness for a particular purpose under Louisiana Law.

90.     Defendant Interior Exterior Building Supply is a supplier of gypsum drywall.

91.     Homebuilders and/ or their agents or employees entered into contracts with Defendant Interior Exterior Building Supply to purchase gypsum drywall that was to be installed in the Plaintiffs' and Plaintiff Class Members' homes.

92.     Plaintiff and Plaintiffs are an intended third party beneficiary of those contracts because it was the clear and manifest intent of Defendant Interior Exterior Building Supply that the contracts were to primarily and directly benefit Plaintiffs and Plaintiff Class Members.

93.     At the time Defendant Interior Exterior Building Supply entered into the contracts with the homebuilders, Defendant Interior Exterior Building Supply had reason to know that the gypsum drywall was being purchased for the particular purpose of being installed in residential homes owned by Plaintiffs and the Plaintiff Class Members, and that homebuilders were relying on Defendant Interior Exterior Building Supply's skill and judgment to select and furnish gypsum drywall that was suitable for this particular purpose.

94.     Plaintiffs and the Plaintiff Class members, directly and/ or indirectly, relied on Defendant Interior Exterior Building Supply's judgment in supplying and selling gypsum drywall that was suitable for the particular purpose of being installed in residential homes owned by the Plaintiffs and the Plaintiff Class Members.

95.     Pursuant to Louisiana Law, Defendant Interior Exterior Building Supply warranted that the gypsum drywall was fit for the particular purpose of being installed in residential homes owned by Plaintiffs and the Plaintiff Class Members.

96.     Defendant Interior Exterior Building Supply breached the implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential homes by Plaintiffs and the Plaintiff Class Members.

97.     The drywall supplied and sold by Defendant Interior Exterior Building Supply and installed in Plaintiffs' home and in homes of the Plaintiffs is defective because it caused damage as described more fully herein.

98.     As a result of Defendant Interior Exterior Building Supply's breaches of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

99.     As a result of the foregoing acts and omissions, Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be require to pay for additional repairs and/ or replacement costs, and/ or medical care, attention and services.

## COUNT VII
## STRICT PRODUCTS LIABILITY
### (Against Defendant Interior Exterior Building Supply)

100.   Plaintiffs, Joshua Price and Kimberlea Price, repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

101.   This is an action for products liability against Defendant Interior Exterior Building Supply.

102.   The defective gypsum drywall installed in Plaintiffs' home and the homes of the Plaintiffs was supplied by, among other suppliers, Defendant Interior Exterior Building Supply.  Upon information and belief, some of the defective drywall installed in Plaintiff's home and the homes of the Plaintiffs was sent from the Manufacturers to Defendant Interior Exterior Building Supply.

103.   The defective gypsum drywall distributed, supplied and/ or sold by Defendant Interior Exterior Building Supply is unreasonably defective because it causes damages and injury to Plaintiffs as described more fully herein.

104.   Defendant Interior Exterior Building Supply expected the defective gypsum drywall to reach the usual consumers, handlers, and persons coming into contact with said product without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the usual customers, handlers and persons coming into contact with said product without substantial change affecting that condition.

105.   The defective gypsum drywall distributed, supplied and/ or sold by Defendant Interior Exterior Building Supply directly and proximately caused damage and injury to Plaintiffs' and the Plaintiff Class Members, including, but not limited to,

25

corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

106. By reasons of the foregoing, Plaintiffs experienced, and/ or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury as described more fully herein.

107. As a result of the foregoing acts and omissions, Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs, and/ or replacement costs, and/ or medical care, attention, and services.

### COUNT VIII
### BREACH OF EXPRESS WARRANTY
#### (Against All Defendants)

108. Plaintiffs, Joshua Price and Kimberlea Price, repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

109. Defendants expressly warranted that Defendants' drywall was safe and well accepted by homebuilders.

110. Defendants' drywall did not conform to these express representations because Defendants' defective drywall is defective and unsafe, and is associated with numerous side effects. As a direct and proximate result of the breach of said warranties,

26

Plaintiffs suffered, and/ or will continue to suffer, and/ or are at risk to suffer, extensive damage, economic loss, personal injuries and/ or other harm.

111. Plaintiffs and Plaintiffs did rely on the express warranties of the defendants herein.

112. The Defendants herein breached the aforesaid express warranties, as Defendants' drywall was defective.

113. Defendants expressly represented to Plaintiffs that Defendants' are safe, efficacious, and fit for the purposes intended, that the Defendants' drywall are merchantable quality, that Defendant's drywall did not produce any dangerous side effects, and that Defendants' drywall were adequately tested and fit for its intended use.

114. Defendants knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that Defendants' drywall are not fit for the use intended and, in fact, produced severe and extensive damage to Plaintiffs' home and the homes of the Plaintiffs because Defendants' drywall was negligently manufactured.

115. Defendants expressly represented to Plaintiffs that Defendants' drywall are safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall are merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall were adequately tested and fit for its intended use.

116. As a result of the foregoing acts and omissions, Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses.

Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs, and/ or replacement costs, and/ or medical care, attention, and services.

## COUNT IX
## FRAUDULENT MISREPRESENTATION
### (Against Defendant Knauf Gips)

117.    Plaintiffs, Joshua Price and Kimberlea Price, repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

118.    Defendants falsely and fraudulently represented to Plaintiffs and Plaintiffs and/ or the consuming public in general that Defendants' drywall and had been tested and were found to be safe and/ or effective for use.

119.    The representation made by Defendants was, in fact, false.

120.    When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

121.    These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs, the Plaintiffs and/ or the consuming public, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiffs herein.

122.    At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiffs and the Plaintiff Class members, Defendants' drywall, the Plaintiffs and Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

28

123.    In reliance upon said representations, the Plaintiffs' and Plaintiff Class Members' homes were built using Defendants' drywall thereby sustaining damage and injury and/ or being at increased risk of sustaining damage and injury in the future.

124.    Said Defendants knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/ or lacked adequate and/ or sufficient warnings.

125.    Defendants knew, or should have known, that Defendants' drywall had a potential to, could, and would cause severe damage and injury to homeowners.

126.    Defendants brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs and the Plaintiff Class Members.

127.    By reason of the foregoing, Plaintiffs experienced, and/ or are at the risk of experiencing, financial damage and injury.

128.    As a result of the foregoing acts and omissions, Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs, and/ or replacement costs, and/ or medical care, attention, and services.

## COUNT X
## FRAUDULENT CONCEALMENT
## (Against Defendants Knauf Gips)

129.     Plaintiffs, Joshua Price and Kimberlea Price,  repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

130.     At all times material hereto, Defendants misrepresented the safety of Defendants' drywall.

131.     Defendants knew, or were reckless in not knowing, that its representations were false.

132.     Defendants fraudulently concealed, and/ or intentionally omitted the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

133.     Defendants fraudulently concealed, and/ or intentionally omitted, the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

134.     Defendants fraudulently concealed, and/ or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

135.     Defendants were under a duty to disclose to Plaintiffs and the Plaintiff Class Members, the aforementioned as it pertains to Defendants' drywall.

136.     Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully,

wantonly, and/ or recklessly to mislead Plaintiffs, the Plaintiffs and/ or the consuming public into reliance and continued use of Defendants' drywall.

137.     Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacturer of Defendants' drywall was made purposefully, willfully, wantonly, and/ or recklessly to mislead Plaintiffs, the Plaintiffs and/ or the consuming public into reliance and continued use of Defendants' drywall.

138.     Defendants' knew that Plaintiffs and/ or the consuming public, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of fact surrounding Defendants' drywall as alleged herein.

139.     Plaintiffs, the Plaintiffs and/ or the consuming public, reasonably relied on facts revealed which negligently, fraudulently and/ or purposefully did not include facts that were concealed and/ or omitted by Defendants

140.     As a result of the foregoing acts and omissions, Plaintiffs require and/ or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs, and/ or replacement costs, and/ or medical care, attention, and services.

**COUNT XI**
**VIOLATION OF THE DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**
**(Against Defendants Knauf Gips.)**

141.    Plaintiffs, Joshua Price and Kimberlea Price, repeat, reiterate, and reallege paragraphs 1 through 40 of this Complaint, with the same force and effect as if fully set forth herein.

142.    This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by Defendants Knauf Gips, Knauf Tianjin and Taishan.

143.    Plaintiffs and Plaintiffs are "consumers" and the subject transactions are "trade or commerce" as defined by Louisiana Law.

144.    Defendants Knauf Gips actions and/ or omissions as described herein violate Louisiana Law, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

145.    Specifically, Defendants Knauf Gips misrepresented and omitted material information regarding their drywall by failing to disclose known risks.

146.    Defendants Knauf Gips misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/ or the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' drywall in violation of Louisiana Law.

147.    Defendants Knauf Gips violated Louisiana Law by knowing and falsely representing that Defendants' drywall was fit to be used for the purpose for which they

32

were intended, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

148.    Defendants Knauf Gips engaged in the deceptive acts and practices alleged herein in order to sell Defendants' drywall to the public, including Plaintiffs and the Plaintiff Class Members.

149.    said acts and practices on the part of Defendants Knauf Gips were and are illegal and unlawful pursuant to Louisiana Law.

150.    As a direct and proximate result of Defendants Knauf Gips violations of Louisiana Law, Plaintiffs have suffered damages.  Plaintiff and the Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Petitioners pray that the Defendants be served with process, and that after due proceedings are had, a judgment be entered in favor of the Petitioners and against the Defendants, jointly and severally, for (i) damages, (ii) attorneys fees, (iii) costs, (iv) post-judgment and pre-judgment interest at the maximum rate allowable at law, (v) treble and/or punitive damages in an amount to be determined at trial, (vi) all statutory damages, (vii) disgorgement of Defendants' profits from the sale of the drywall, (vii) reimbursement for all costs and expenses insured in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any

other legal and equitable relief to which Plaintiffs may be entitled; (ix) diminution in value of the home; (x) pain and suffering, inconvenience, additional living expenses, and emotional distress; (xi) any and all other just and equitable relief that this Court determines just and equitable under state and federal law.

## DEMAND FOR JURY TRIAL

Plaintiffs, Joshua Price and Kimberlea Price, individually and on behalf of the Plaintiff Class Members, hereby demand a trial by jury as to all issues so triable.

By: _____

Jeffrey P. Berniard (La. Bar No. 29088)
Berniard Law Firm, LLC
625 Baronne St.
New Orleans, LA 70113
Telephone: (504) 527-6225
Facsimile: (504) 617-6300
Email: Jeffberniard@laclaim.com
Attorney for Plaintiffs