UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | CASE NO. 2:09-MDL-2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to: Crosby (10-** | * | |
| **1693)** | * | MAGISTRATE WILKINSON |
| | * | |

**FEDERAL INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION
TO DISMISS IN COMPLIANCE WITH COURT'S JULY 1, 2010 ORDER**

Defendant Federal Insurance Company ("Federal") submits this Memorandum in

Support of its Rule 12(b)(6) Motion to Dismiss, seeking dismissal of the claims of Patrick and

Jennifer Crosby ("Crosbys") under their homeowners policy.   As shown below, Federal is

entitled to judgment dismissing Crosbys' claims with prejudice as a matter of law because their

claim for damage caused by defective Chinese drywall is not covered under Federal's

homeowners policy.   Two recent decisions directly addressing the same issues presented here

both held that such damages are not covered under a homeowners policy. *See Travco Ins. Co. v.

Ward*, No. 10-14, 2010 WL 2222255 (E.D. VA. June 3, 2010) (holding homeowners policy's

latent defect, faulty materials, corrosion and pollution exclusions applied to bar coverage for

162471

plaintiff's claim for damage due to defective Chinese drywall); *Ross v. C. Adams Construction & Design, L.L.C.,* No. 676-185 (La. Dist. Ct., Jefferson Parish, Apr. 14, 2010) (granting homeowners insurer's summary judgment finding that policy did not cover damages due to defective Chinese drywall).  Just as in *Travco* and *Ross*, this Court should also find Crosby's' claim for damage due to the presence of Chinese drywall in their home is not covered under their Federal homeowners policy.

## I.    BACKGROUND

### A.    Plaintiffs' Claims.

The Crosbys filed this lawsuit against their homeowners insurer, Federal, seeking recovery for damages to their home caused by Chinese manufactured drywall.  *See* Petition for Damages.  The Crosbys allege beginning in the Spring of 2009, they discovered their home was constructed using Chinese manufactured drywall, which they allege, "has been found to cause physical loss and damage to plaintiffs' home and contents."  *Id.* at ¶ VI.  The Crosbys further allege the "Chinese drywall emits odorous gases <u>that cause corrosion</u> of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items." *Id.*  (emphasis added).  The Crosbys complain Federal breached its obligations under its homeowners insurance policy by denying their claim for damage. *Id.* at ¶ XVI. They also assert claims under La. R.S. 22:1973 and 22:1892 for Federal's alleged failure to properly adjust their claim and for alleged misrepresentation of the policy provisions in denying their claim.  *Id.* at ¶ XIX-XX.  The Crosbys seek damages, penalties, and attorney's fees. *Id.* at Prayer for Relief.

162471

**B.**     **Federal's Homeowners Policy**.

Federal issued a homeowners policy to the Crosbys, providing certain coverage for their residence located at 2 Cardinal Lane, Mandeville, Louisiana, with a policy period of July 26, 2008 though July 26, 2009, Policy No. 13101004-01 ("hereinafter the "Policy"). Exh. 1, Certified Copy of Federal Insurance Company Policy No. 13101004-01.   The Policy provides property coverages including Deluxe House and Deluxe Contents Coverages.   Under Deluxe House Coverage, the Policy covers "against all risk of physical loss to your house unless stated otherwise or an exclusion applies." Exh. 1, Policy, p. B-1.  The Policy further provides that "[I]n Deluxe House Coverage, a 'covered loss' includes all risk of physical loss to your house or other property covered under this part of your Masterpiece Policy, unless stated otherwise or an exclusion applies."  Exh. 1, Policy, p. B-3.  Similarly, the Policy provides Deluxe Contents Coverage, which provides "coverage against all risk of physical loss to your contents anywhere in the world unless stated otherwise or an exclusion applies." Exh. 1, Policy, p. C-1.  Further, the Policy provides that "[I]n Deluxe Contents Coverage, a 'covered loss' includes all risk of physical loss to your contents or other property covered under this part of your Masterpiece Policy, unless stated otherwise or an exclusion applies." Exh. 1, Policy, p. C-3.

The Deluxe House Coverage contains the following relevant exclusions:

**Gradual or sudden loss.**  We do not provide coverage for the presence of wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping, however caused, or any loss caused by wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping.  We also do not cover any loss caused by inherent vice, latent defect or mechanical breakdown. But we do insure ensuing covered loss unless another exclusion applies.

**Contamination.**  We do not cover any loss caused by contamination, pollution, smog, or industrial or agricultural smoke.  Nor do we cover the cost to extract pollutants or contaminants from land or water, or the cost to remove, restore or

- 3 -

replace polluted or contaminated land or water.  A "pollutant" is any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  A "contaminant" is an impurity resulting from the mixture or contact or a substance with a foreign substance. . . .

**Dampness or Temperature.**  We do not cover any loss caused by air dampness, water vapor or temperature extremes.

**Faulty planning, construction or maintenance.**  We do not cover any loss caused by the faulty acts, errors, or omissions of you or any other person in planning, construction or maintenance.  It does not matter whether the faulty acts, errors or omissions take place on or off the insured property.  But we do insure ensuing covered loss unless another exclusion applies. . . .  "Construction" includes materials, workmanship, and parts or equipment used for construction or repair.

Exh. 1, Policy, pp. B-7-B-9 (emphasis added).  If any of these exclusions apply, there is no coverage under the Policy.

The Deluxe Contents Coverage portion of the Policy also contains the identical exclusions for **Gradual or sudden loss, Contamination, and Faulty planning, construction or maintenance.**  Exh. 1, Policy, pp. C-4-C-7.

## II.   LAW AND ARGUMENT

### A.   Standard Under Rule 12(b)(6).

In reviewing a Rule 12(b)(6) motion to dismiss, courts are required to follow a two-step process: (1) identify and disregard all legal conclusions in the plaintiff's complaint; and (2) determine whether the factual allegations plausibly suggest a defendant's liability.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n. 5 (2007).  In addition, courts "do not accept as true conclusory allegations, unwarranted factual inferences or legal conclusions."  *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (*quoting Poltkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider documents referred to in the

petition or any document central to its claim. Because the insurance policy is referenced in Crosbys' Complaint here and central to their claim, this court may properly consider and apply the Policy under Rule 12(b)(6). *Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 205 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (approving defendants' attachment of insurance contracts to their motions to dismiss noting that where "the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contract in assessing the motions to dismiss.")

In analyzing insurance coverage issues, Louisiana courts recognize that an insurance policy is a contract between the parties and should be construed employing the general rules of contract interpretation as set forth in the Louisiana Civil Code. *See, e.g., Comeaux v. State Farm Fire & Cas. Co.*, 986 So. 2d 153, 157 (La. App. 5 Cir. 2008). Interpretation of a contract is the determination of the common intent of the parties. *See Radcliffe v. Zip Tube Sys. of La., Inc.*, No. 2007 CA 1801, 2008 WL 4003273, at *6 (La. App. 1 Cir. 2008); La. Civ. Code art. 2045. To determine the parties' intent, the court should consider all parts of the contract together, ensuring that each provision is given effect and none is rendered meaningless. *See Millenium Petrochem., Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 342 (5th Cir. 2004). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. *See Radcliffe*, 2008 WL 4003273, at *6; *Naquin*, 943 So. 2d at 1161; La. Civ. Code art. 2046. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *In re Katrina Canal Breaches*, 495 F.3d 191, 208 (5th Cir. 2007).

162471

**B.**       **Federal's Policy Does Not Cover the Crosbys' Claim for Losses To Their Dwelling.**

        The Crosbys have the burden of proving any property damage they suffered falls within the terms of their policy's coverage grant.  *See, e.g., Tunstall v. Stierwald*, 809 So. 2d 916, 919 (La. 2002); *Whitham v. Louisiana Farm Bureau Cas. Ins. Co.*, -- So. 3d --, 2010 WL 1462946, *2 (La. App. 2 Cir. Apr. 14, 2010); *Lamar Advertising Co. v. Continental Cas. Co.,* 396 F.3d 654, 665 n. 10 (5th Cir. 2005).  The insurer bears the burden of proving exclusions from coverage. *Tunstall v. Stierwald,* 809 So.2d 916, 921 (La.2002).   Once the insurer has established that the claimed loss is excluded, the insured bears the burden of proving the applicability of any exception to the exclusion.  *See Perrien v. State Farm Ins. Co.*, Civ. No. 06-8087, 2008 WL 2705455, at *6 (E.D. La. July 9, 2008) (Duval, J.); *Broussard v. State Farm Fire & Cas. Co.*, Civ. No. 06-8084, 2007 WL 2264535, at *7-8 (E.D. La. Aug. 2, 2007) (Vance, J.); *Ferguson v. State Farm Ins. Co.*, Civ. No. 06-3936, 2007 WL 1378507, at *5 (E.D. La. May 9, 2007) (Berrigan, J.).

        Here, to the extent the Crosbys seek to recover for the cost of repairing and replacing the drywall itself, the Crosbys fail to meet their burden to show that this alleged property damage falls within the terms of the Policy's coverage because they cannot show a "physical loss" to the drywall as required by the Policy.  In any event, all of the Crosbys' claim for damage is excluded from coverage under the Policy's exclusions for damage caused by (1) latent defects; (2) corrosion; (3) contamination; (4) faulty materials; and (5) dampness or temperature.  Accordingly, Federal's Policy does not provide coverage for the Crosbys' claim.

162471

     **i.**       **The Crosbys' Alleged Damage To the Drywall Itself Does Not Constitute A Physical Loss To Property.**

Despite the Crosbys' general allegations the Chinese drywall caused physical loss and damage to their home and contents, the Crosbys have not alleged the drywall itself is damaged in any way.  Accordingly, to the extent the Crosbys seek damages for the repair and replacement of the Chinese drywall, there is no physical loss to property as required by the Policy and, therefore, any claim the Crosbys would have for repair and replacement of the defective drywall would not trigger coverage under the Policy.

Under the Policy's Insuring Agreement, coverage is only provided for physical losses:

> This part of your Masterpiece Policy provides you with coverage against all risk of physical loss to your house unless stated otherwise or an exclusion applies.

Exh. 1, Policy, p. B-1.  Because the phrase "physical loss" is not defined in the Policy, this Court must interpret the words according to their "generally prevailing meaning."  La. Civ. Code art. 2047; *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 193 (La. 2008).  A leading insurance treatise explains that "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."  10 Couch on Insurance § 148:46 (3d ed. 1998).

Consistent with this understanding, the United States Fifth Circuit has held, under Louisiana law, "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state – for

- 7 -

example, the car was undamaged before the collision dented the bumper." *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990). In *Trinity*, the court considered whether a policy covering "all risks of physical loss or of damage to the subject matter" would cover the cost incurred to correct a shipbuilder's faulty workmanship in misaligning two sections of the ship's hull during construction. *Id.* at 267-68. The Fifth Circuit held "the parties, by their language 'physical loss or damage', did not intend to cover the cost of repairing faulty initial construction." *Id.* at 272. It explained that coverage would potentially exist for "accidents resulting from defective design or workmanship," if not excluded, "but not the cost of repairing the defect itself." *Id.* at 271.

More recently, applying the same analysis, the Fifth Circuit again refused to find coverage where the insured's claim for damages lacked the requisite "physical loss" to property. *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 Fed. Appx. 465, 2006 WL 1489249 (5th Cir. May 25, 2006). In *Hartford*, the insured gas company sought coverage under property insurance policies covering natural gas produced by certain designated wells. The insured learned some of the gas had been diverted so that it was reinjected into the gas stream and, as a result of this recirculation, gas which had already been metered and purchased by the insured gas company was recirculated and hence remetered and resold to the insured. The insured submitted a proof of loss in the amount of $557,919 to recoup a portion of this loss under its Hartford policies. The court found no coverage existed because, *inter alia,* the policies' "direct physical loss" requirement was not met:

> [T]he gas from the Watson Wells was not physically lost or damaged in any way before it was eventually returned to MVG after multiple passes through the meter.

> In this sense, . . . the covered property was not returned to the insured party in a damaged state.   Therefore, MVG's proof of loss claim lacked the requisite "direct physical loss of or damage to" the covered property under the insurance policies.

*Id.* at 470-71.  *See also Maister Assocs. v. State Farm Fire & Cas. Co.,* 2009 WL 926981, *3 (E.D. La. Mar. 31, 2009), *aff'd,* 350 Fed. Appx. 978 (5th Cir. 2009) ("To be entitled to recover insurance proceeds for damage to the premises, there must be an accidental event that results in a direct physical loss that is not otherwise excluded by the policy").

Courts across the nation have reached the same conclusion.  *See Whitaker v. Nationwide Mut. Fire Ins. Co.*, 115 F. Supp. 2d 612 (E.D. Va. 1999) (holding "plaintiff's claims for repair of the construction defects themselves are not covered by the policy because they do not allege claims for direct physical loss," and noting that collateral damage to non-defective property caused by the construction defects could potentially be covered "as direct physical loss under the policy, absent the applicability of any exclusions.");[1] *Tocci Bldg. Corp. v. Zurich Am. Ins. Co.,* 659 F. Supp. 2d 251, 259-60 (D. Mass. 1991) (cost of grouting undamaged portion of insured's wall, which had not collapsed during rainstorm, was not covered because it did not sustain "direct physical loss"); *see also Wyoming Sawmills, Inc. v. Transportation Ins. Co.*, 578 P.2d 1253, 1256 (Or. 1978) (holding that, under a liability insurance policy, insurance company did not have duty to defend insured for expenses incurred in removing defective studs from the building because use of the word "physical" in definition of "property damage" negated "any possibility that the policy was intended to include 'consequential or intangible damage . . . .'").

---

[1]     Although the court in *Travco, supra,* p. 1, found plaintiff's allegations of damage due to Chinese drywall constituted direct physical loss under the policy at issue, the court did not address the line of authority from the Fifth Circuit detailed above which is binding in this case.

Here, it is undisputed the drywall in the Crosbys' home sustained no visible or tangible damage, and it did not change state from an initial satisfactory condition to an unsatisfactory condition due to an external cause as required to constitute "physical loss" as defined by the Fifth Circuit.  Thus, to the extent the Crosbys seek to recover the cost of removing and replacing the drywall, such costs are not covered because there is no "physical loss."

ii.     **The Policy Exclusions Bar Coverage For the Crosbys' Damages Caused By Defective Chinese Drywall.**

Even if the Crosbys' claim for damage to the defective drywall itself constituted "physical loss," five exclusions apply to bar coverage for the Crosbys' loss caused to their home and contents.  These exclusions are: (1) latent defects; (2) corrosion; (3) contamination; (4) faulty materials; and (5) dampness or temperature.  As noted above, two recent decisions established that some of the same exclusions barred coverage in similar Chinese drywall cases.  *See Travco Ins. Co.  v. Ward*, No. 10-14, 2010 WL 2222255 (E.D. Va. June 3, 2010) (holding that homeowners policy's latent defect, faulty materials, corrosion and pollution exclusions applied to bar coverage for plaintiff's claim for damage due to defective Chinese drywall); *Ross v. C. Adams Construction & Design, L.L.C.,* No. 676-185 (La. Dist. Ct., Jefferson Parish, Apr. 14, 2010) (granting homeowners insurer's summary judgment finding that policy did not cover damage due to defective Chinese drywall).

a.      **The Latent Defect Exclusion Applies to Bar Coverage**

Crosbys' claim for damage to their dwelling and contents caused by the Chinese drywall is barred by the Policy's latent defect exclusion, which excludes coverage for loss caused by "inherent vice, latent defect, or mechanical breakdown." Exh. 1, Policy, pp. B-7 and C-4.[2]

In *Travco,* the court addressed the application of the same latent defect exclusion to an insured's claim for damage due to Chinese drywall, and held that the latent defect exclusion barred coverage for the insured's claims. *Travco*, 2010 WL 2222255, at *11.  In interpreting the latent defect exclusion, the court noted that a latent defect must be "integral to the damaged property by reason of *its* design or manufacture or construction." *Id.*  The court reasoned the insured's residence "contains defective drywall that is off-gassing and damaging other components of the Residence," and "[t]he drywall is plainly integral to the Residence's manufacture and construction." *Id.* Accordingly, the court found "that the damage to the Ward Residence is a loss caused by a latent defect." *Id.*

Louisiana law likewise enforces a "latent defect" exclusion to exclude coverage for hidden defects.  Louisiana courts interpreting the term "latent defect" have defined it as "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." *Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328, 335 (La. App. 3d Cir. 1984) (quoting *Walker v. Travelers Indemnity Co.*, 289 So.2d 864, 870 (La. App. 4th Cir. 1974)); *accord Barbier v. Wade*, 517 So.2d 321, 325 (La. App. 1st Cir. 1987);

---

[2]     The Policy's exclusion for loss caused by latent defects appears in the exclusion titled "**Gradual or sudden loss**."  For ease of reference, this particular provision of the exclusion will be referred to as the latent defect exclusion.

*Shields v. Penn. Gen. Ins. Co.*, 488 So.2d 1252, 1255 (La. App. 4th Cir. 1986).  In *Nida*, soil movement caused cracking of the foundation and the interior and exterior walls of the insured's house.  *Id.* at 329.  Because the foundation had not been built to withstand ordinary soil movement, the Third Circuit found the vice in the construction of the foundation fell within the definition of latent defect and held the damage was excluded from coverage under a latent defect exclusion.  *Id.* at 335.  The court explained that "the defendant-insurer simply was not a guarantor of the constructor's building performance." *Id.*

Jurisprudential authority nationwide also supports a similar interpretation of the latent defect exclusion.  *See, e.g., City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co.*, 190 F. Supp. 2d 663, 688 (D. Vt. 2002), *aff'd* 346 F.3d 70 (2d Cir. 2003) (surveying authority and concluding "[i]n the ordinary sense of the term, 'latent defect' means a defect that is hidden, or which could not have been discovered by any known or customary test or examination"); *U.S. West v. Aetna Cas. & Sur. Co.*, 117 F.3d 1415 (table), 1997 U.S. App. LEXIS 17747, at *14-15 (4th Cir. 1997) ("[A]s a matter of the literal language of this term, 'latent defects' are only those which are not readily discoverable and integral to the damaged property by reason of *its* design or manufacture or construction.").

Applying a similar definition of latent defects, the Illinois Appellate Court held the latent defect exclusion precluded coverage of claims relating to asbestos-containing construction materials.  In *Board of Educ. v. Int'l Ins. Co.*, 684 N.E.2d 978 (Ill. App. 1997), the plaintiff school board sought coverage for the cost of removing paint, ceiling tile, floor tile, insulation and other materials made using asbestos fibers, claiming these building materials were

- 12 -

releasing hazardous substances into the air.  *Id.* at 979-80.   Rejecting the school board's arguments for coverage, the court explained that "because the presence of asbestos material in the school buildings is not detectable by the naked eye and is not apparent to any but the most searching analysis, it is a latent defect subject to the latent defect exclusion."  *Id.* at 983.

Here, the damage to the Crosbys' home and contents resulting from the emission of gas from the Chinese drywall is excluded by the latent defect exclusion because the defect in the Chinese drywall—its emission of gas—is concealed from knowledge and sight and would not be revealed by a reasonable, customary inspection.  The Crosbys themselves allege they only discovered their home was constructed using Chinese drywall in the Spring of 2009, years after the home was built.  Petition, ¶ VI. Accordingly, under Louisiana's definition of the latent defect exclusion and as the court in *Travco* concluded, the latent defect exclusion applies to bar coverage for the Crosbys' claim for damage to their dwelling and contents due to Chinese drywall.

### b.      <u>The Corrosion Exclusion Applies to Bar Coverage</u>

The Crosbys' claim for damage to their dwelling and contents caused by the Chinese drywall is also barred by the Policy's corrosion exclusion, which broadly excludes coverage for "<u>the presence of</u>  . . . <u>corrosion</u>, dry or wet rot, or warping, <u>however caused, or any loss caused by . . . corrosion</u>. . . ." Exh. 1,  Policy, p. B-7. (emphasis added).[3]

---

[3]      The Policy's exclusion for loss caused by corrosion appears in the exclusion titled "**Gradual or sudden loss**," and it applies regardless of whether the corrosion occurred gradually or suddenly.  For ease of reference, this particular provision of the exclusion will be referred to as the corrosion exclusion.

162471

The court in *Travco* held that the corrosion exclusion unambiguously applied to exclude coverage for the insured's claims for losses to the structural, mechanical, and plumbing components of the residence due to Chinese drywall. *Travco*, 2010 WL 2222255, at *14-15.[4]  In support of its holding, the court noted that most jurisdictions enforce corrosion exclusions regardless of what caused the corrosion or how suddenly it occurred. *Id.*  The court also relied on the ordinary meaning of corrosion—"the action or process of corroding." *Id.*   Applying this definition, the court found that because it was undisputed that the damage to the structural, mechanical and plumbing components of the residence was caused by the "action or process of corroding," the corrosion exclusion applied.  *Id.*

As the *Travco* court recognized, most courts, including those in Louisiana, interpret similar corrosion exclusions broadly, to exclude coverage for all types of corrosion, however formed. For example, in *Central La. Elec. Co. v. Westinghouse Elec. Corp.,* 579 So. 2d 981 (La. 1991), the boiler and machinery policy at issue provided coverage for loss directly caused by an "accident," but stated an accident "shall not mean . . . corrosion." *Id.* at 984.  The court held, based on this provision, that the policy did not cover damaged turbine blades that had cracks resulting from corrosion.  *Id.* at 985-86 (further stating "the cracks would not have occurred had the blades not been weakened by the existence of pitting corrosion," and that "corrosion pitting is simply one of many forms of corrosion," which was expressly excluded from the definition of "accident"); *See also  Gilbane v. Altman Co.*, 04AP-664, 2005 WL 534906

---

[4]        In fact, the language in Federal's exclusion more specifically excludes coverage for the presence of or any loss caused by corrosion. Exh. 1,  Policy, p. B-7.

(Ohio App 10 Dist. Mar. 8, 2005) (holding that the rust and corrosion exclusion in a builder's risk policy barred coverage for property damage to the building's metal surfaces that was caused by the negligence of a contractor in failing to properly dilute acid product used in an etching process, which acid vapor reacted with the metal surfaces and formed corrosive reactions)*; St. Paul Fire & Mar. Ins. Co. v. Lago Canyon, Inc.*, 06-60889, 2009 WL 4855484 (S.D. Fla. Dec. 9, 2009) (holding no coverage existed for loss of vessel where the proximate cause of the loss was failure of a hose barb that resulted from corrosion where corrosion was a cause of loss excluded under the policy); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 594-95 (7th Cir. 1987) (holding that corrosion exclusion precluded coverage for repairing holes in a steel reactor used for separating chemicals that resulted from the condensation of sulfuric acid on the inner shell of the reactor).

Two recent federal court decisions applying Louisiana law enforced similar exclusions to preclude coverage for equipment that rusted as a result of Hurricane Katrina.  In *Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, Civ. Nos. 06-2516 & 06-3184, 2008 U.S. Dist. LEXIS 69972 (E.D. La. Sept. 17, 2008), the insured's roof was damaged during the hurricane, leaving its equipment exposed to the elements.  Judge Englehardt granted summary judgment to the insurer, holding that, under an exclusion for "loss or damage caused by or resulting from rust," there was no coverage for rust damage resulting from water infiltration through the damaged roof.  *Id.* at *4-5.  Judge Englehardt emphasized that the policy language unambiguously "excludes *all* loss or damage from rust or dampness of atmosphere."  *Id.* (emphasis added).  *See also Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, Civ. No. 06-

- 15 -

8710, 2008 U.S. Dist. LEXIS 18335, at *8 (E.D. La. March 10, 2008) (Porteous, J.) (policy excluded "loss or damage caused by or resulting from . . . rust, corrosion"; court granted summary judgment to insurer on claim for rust and mold damage to second floor of building caused by moist environment from flooding on first floor, holding that "evidence of rust and mold to Plaintiff's equipment is immaterial, as the Policy expressly excludes rust and mold").

Here, Crosbys' own allegations allege corrosion as the cause of loss or damage to various components of their residence: "[t]he Chinese drywall emits odorous gases **that cause corrosion** of air-conditioner coils and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items."   Petition, ¶ VI (emphasis added).   Moreover, Crosbys' allegations regarding loss or damage due to corrosion are consistent with this Court's decisions in lawsuits against Chinese drywall manufacturers and/or distributors, regarding the corrosive nature of the damages allegedly caused by the drywall.   *See Germano, et al. v. Taishan Gypsum Co. Ltd., et al.,* No. 09-6687 (E.D. La. Apr. 8, 2010) and *Hernandez v. Knauf Gips KG, et al.,* No. 09-6060 (E.D. La. Apr. 27, 2010).   For example, this Court concluded the *Germano* plaintiffs' homes were exposed to a corrosive environment produced by Chinese drywall, finding the level of corrosive sulfur gases in the plaintiffs' homes exceeded the safe levels established by various recognized standards.   *Germano,* slip. op. at 17-26.   This Court made similar damages findings in *Hernandez,* again discussing the corrosion caused by the Chinese drywall due to its higher concentration of strontium and levels of elemental sulfur, and the corrosive effects of sulfur on copper and silver, which are prevalent in most homes and buildings.   *Hernandez,* slip op. at 15-16.   This Court noted the evidence was "conclusive that the corrosion in the Hernandez

162471

home was proximately caused by exposure to Chinese drywall," and explained corrosion on copper and silver conducting surfaces increases the resistance of the electrical current, which causes either complete failure or excessive heating in the connection.  *Id.* at 17.

      The Crosbys allege the loss or damage to their air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items was caused by corrosion.  Accordingly, under the great weight of authority detailed above and the precise language of the Policy, however the corrosion was formed or whatever caused it, the Crosbys' loss or damage results from corrosion and are plainly and unambiguously excluded from coverage by the corrosion exclusion.

      **c.**      **The Contamination Exclusion Applies to Bar Coverage.**

      The Crosbys' claims for damages to their dwelling and contents are also barred by the Policy's contamination exclusion, which broadly excludes loss caused by "contamination, pollution, smog, or industrial or agricultural smoke."  The Policy defines a "contaminant" as "an impurity resulting from the mixture or contact of a substance with a foreign substance" and defines a "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  Exh. 1, Policy, p. B-7.

      Consistent with the Policy's definition of "contamination," numerous courts have also broadly interpreted the term, noting that "contamination" merely is "a condition of impurity resulting from mixture or contact with a foreign substance."  *American Cas. Co. of Reading, Pa. v. Myrick*, 304 F.2d 179 (5th Cir. 1962); *see also Barry Concrete., Inc. v. Martin Marietta Materials, Inc.*, 531 F.Supp.2d 766, 770 (M.D. La. 2008) (observing that "contamination" means

- 17 -

"to make unfit for use by introduction of unwholesome or undesirable elements" or "to soil, stain, or infect by contact or association") (citing Webster's Dictionary); *United Nat'l Ins. Co. v. Motiva Enterprises, LLC*, No. H04-2924, 2006 WL 83482 (S.D. Tex. 2006) (defining "to contaminate" as "to soil, stain, corrupt or infect by contact or association ... to render unfit for use by the introduction of unwholesome or undesirable elements"). Courts routinely enforce contamination exclusions to bar property damage claims similar to Crosbys' claims here.  In *Myrick*, the court considered whether a contamination exclusion barred coverage for the loss of eggs and other products contaminated by release of ammonia.  *Myrick*, 304 F.2d at 180.  The contamination exclusion provided:

> This policy does not insure against loss or damage caused by or resulting from:

>> b. * * * contamination * * * unless caused by or resulting from loss of or the property covered by * * * explosion***.

The Fifth Circuit held the contamination exclusion applicable, explaining that the term contamination excludes a condition just like the contaminated eggs and other products at issue.  In *Barry Concrete Inc. v. Martin Marietta Materials, Inc*., 531 F. Supp. 2d 766 (M.D. La. 2008), *reconsid. granted in part on other grounds*, 2008 WL 1885326 (M.D. La. Apr. 28, 2008), the court enforced a contamination exclusion to bar coverage for losses incurred in removing and replacing concrete that was contaminated with sugar.

> The contamination exclusion provided:

> This insurance does not apply to: ... (12) "Loss" caused by or resulting from any of the following: (a) Poor or insufficient packaging or packing of the "cargo"; or poor packing of "cargo" in or on a covered "auto ... (d) Rust, corrosion, contamination, leakage, breakage, marring, or scratching."

*Id.* at 769-70.   The court held this exclusion barred coverage under Western's cargo policy, explaining:

> Although the term "contamination" is not defined in the Cargo Policy, contamination is commonly understood to mean: "to make unfit for use by introduction of unwholesome or undesirable elements" or "to soil, stain, or infect by contact or association."   In this case, the introduction of the undesirable element of sugar rendered the aggregate "unfit for use."   Furthermore, Barry Concrete alleges that the aggregate "was contaminated with sugar," and the Cargo Policy expressly excludes coverage of losses caused by "contamination" of the cargo.   Clearly, Barry understood the plain meaning of "contamination" in making its allegations, and as such, the court finds the parties' ambiguity arguments to be without merit.   Barry's alleged losses are plainly excluded from coverage under the Cargo Policy pursuant to the contamination exclusion.

*Id.* at 770 (footnotes omitted).

Likewise, in *Sperling v. Allstate Indem. Co.,* 182 Vt. 521, 944 A.2d 210 (2007), the Vermont Supreme Court held that a "contamination" exclusion similar to Federal's exclusion here precluded coverage for a home-heating oil spill in the insureds' residence.   *See also Ho v. State Farm Fire & Cas. Co.,* 2005 WL 2600651 (Ohio App. --  Cuyahoga Cty. Oct. 13, 2005) (holding that an exclusion for "contamination" in a homeowners insurance policy precluded coverage for chemical contamination from chemicals used to eliminate smoke odors from a fire in the insureds' home).

Federal's contamination exclusion also excludes coverage for loss caused by pollution.   The *Travco* court applied a similar pollution exclusion to facts just like those presented here.   It concluded that the gas emitted by Chinese drywall constituted a pollutant under the pollution exclusion. *Travco*, 2010 WL 2222255 at *18.   In doing so, the court relied upon both state and federal authorities that recognize sulphuric gases as pollutants.   *Id.* (citations

omitted).  Moreover, the court found that under any reasonable definition of the broad terms used in the policy's definition of "pollutants," the gases released into the insured's home qualify as irritants and contaminants.  *Id.*  at *18.  Accordingly, the court held that the pollution exclusion barred the insured's claims for damages caused by discharge of gas from the drywall.  *Id.* at *21.

In addition to the *Travco* decision, numerous courts have enforced contamination and/or pollution exclusions in homeowners policies for claims similar to the Crosbys' claims here.  For example, a federal court applying Pennsylvania law enforced an unambiguous pollution exclusion and held that alleged damage to the house from fumes from sealant that migrated into insured's house was excluded. *Brown v. Am. Motorists Ins. Co.*, 930 F. Supp. 207, 208-209 (E.D. Pa. 1996), *aff'd*, 111 F.3d 125 (3d Cir. 1997).  Similarly, an Ohio court held a homeowners' claim for loss of use caused by raw sewerage discharge that contaminated groundwater was excluded under contamination/pollution exclusion of homeowners policy. *Siemientkowski v. State Farm Ins. Co.*, No. 85323, 2005 WL 1994486 (Ohio Ct. App. Aug. 18, 2005); *see also  Wakefield Pork, Inc. v. RAM Mut. Ins. Co.*, 731 N.W.2d 154, 161 (Minn. App. 2007) (holding that a complaint alleging "harm from the '[g]ases, hydrogen sulfide among others,' and the 'noxious and offensive odors' that emanated from appellant's pig farm . . . alleged damage from a substance that is plainly covered by the insurance policy's pollution exclusion"); *McQuade v. Nationwide Mut. Fire Ins. Co.*, 587 F. Supp. 67, 68 (D. Mass. 1984) (applying exclusion to homeowner's loss caused by chemicals sprayed by exterminator); *Hartory v. State Auto. Mut. Ins. Co.*, 552 N.E.2d 223, 225 (Ohio App. 1988) (applying exclusion to homeowners' loss caused by methane gas from neighboring landfill).

- 20 -

Here, the Crosbys allege that "the Chinese drywall emits odorous gases that cause corrosion." Petition, ¶ VI.  Just as the *Travco* court concluded, the gaseous compounds emitted from the Chinese drywall in the Crosbys' home meets the definition of a contaminant or a pollutant under the Policy because they are a gaseous irritant or contaminant.  Therefore, the Policy's contamination/pollution exclusion bars coverage because the Crosbys' damage was caused by contamination or by a pollutant, i.e., sulphuric gas.

  **d.**  <u>**The Faulty Materials Exclusion Applies to Bar Coverage.**</u>

The Crosbys' claims for damages caused by the Chinese drywall, including any claim for contents, are also barred by the faulty materials exclusion of the Policy, which excludes loss caused by faulty, inadequate or defective materials:

> **Faulty planning, construction or maintenance.**  We do not cover any loss <u>caused by the faulty acts, errors, or omissions of you or any other person in planning, construction</u> or maintenance.  It does not matter whether the faulty acts, errors or omissions take place on or off the insured property.  But we do insure ensuing covered loss unless another exclusion applies. . . . <u>"Construction" includes materials,</u> workmanship, and parts or equipment used for construction or repair.

Exh. 1, Policy, p. B-9.

Once again, the *Travco* court considered a similar faulty materials exclusion and held that it applied to bar coverage for the insured's damages due to Chinese drywall.  *Travco*, 2010 WL 2222255, at *12-13. In *Travco*, the court rejected the contention that the faulty materials exclusion does not apply because the drywall is fit for its intended use—explaining "that an item cannot be faulty or defective 'if it is serving its intended purpose' is contrary to ordinary English usage."  The court further explained that "[I]n common parlance, the word 'faulty' is not limited to faults that prevent an entity from accomplishing its intended purpose and

162471

[sic] itself." *Id.*  The court reasoned that the same principle applied to the word "defective."  *Id.* The *Travco* court supported its analysis with a plethora of state and federal decisions in which courts have held that the faulty materials exclusion can apply even when the property in question may be serving its intended purpose.  *Id.*  (citations omitted).

In addition to the guidance the *Travco* court provided on the application of the faulty materials exclusion to Chinese drywall, one federal court applying Louisiana law granted a homeowners insurer's motion for summary judgment, agreeing that the same faulty construction exclusion as at issue here barred plaintiffs' claim for rotted floor joists and piers caused by the use of untreated lumber and drainage and venting problems in construction of the home. *Holland v. Breaux*, No. 04-3028, 2005 WL 3542899 (E.D. La. Nov. 22, 2005).  The United States Fifth Circuit has also interpreted the faulty construction exclusion in an all risk policy to apply to "a defect in the way some part of the (insured property) is constructed," explaining "it is the *quality of the product* which is excluded from coverage and not damage *to* the product caused by negligence during the construction process."  *Alton Ochsner Medical Foundation v. Allendale Mut. Ins. Co.*, 219 F.3d 501 (5th Cir. 2000) (citations omitted).  Consistent with this authority, courts nationwide have applied the faulty materials exclusion to preclude coverage for losses caused by the use of defective construction materials, such as materials that had been contaminated by exposure to radioactive materials,[5] the installation of an improper lining and

---

[5]     *Falcon Prods., Inc. v. Ins. Co. of Penn.*, 615 F. Supp. 37, 39 (E.D. Mo. 1985), *aff'd* 782 F.2d 779 (8th Cir. 1986).

insulation product,[6]  the use of improperly treated cedar siding and shingles,[7] the installation of substandard residential piping,[8] the use of lumber infested with dry rot,[9] and the use of a roofing asphalt that "was entirely unsuitable for the purpose" and necessitated the removal and replacement of the entire roof.[10]

Under this weight of authority, Chinese drywall that emits sulphuric gas that damages other property can only be considered to be a faulty, defective or inadequate material. As in *Travco*, the Chinese drywall cannot possibly be considered fit for its intended purpose as a component of a livable residence. Under the language of the Policy, the faulty material exclusion applies to bar coverage for the Crosbys' claims because the damage was caused by the faulty act in construction, which included the use of Chinese drywall as a construction material.

e.      __The Policy's Dampness or Temperature Exclusion Bars Coverage.__

The Crosbys' claim for damage to their dwelling caused by the Chinese drywall is also barred by the dampness or temperature exclusion of the Policy, which excludes losses caused by "air dampness, water vapor or temperature extremes." Exh. 1, Policy, p. B-9.[11]  The Crosbys have alleged corrosion resulting from emission of gas from the Chinese drywall.  To the

---

[6]      *Tom Harrison Tennis Ctr. Ltd. v. Indoor Courts of Am., Inc.*, No CA2002-03-034, 2002 WL 31859462, at *4 (Ohio App. Dec. 23, 2002).

[7]      *Carney v. Assurance Company of America*, Civ. No. 04-3434, 2005 WL 899843 (D. Md. Apr. 19, 2005), *aff'd* 177 F.App'x 282 (4th Cir. 2006) (per curiam).

[8]      *Rogers v. Unitrim Auto & Home Ins. Co.*, 388 F. Supp. 2d 638 (W.D.N.C. 2005).

[9]      *Sapiro v. Encompass Ins.*, No. C03-4587, 2003 WL 2496090, at *5 (N.D. Cal. Nov. 2, 2004).

[10]      Biebel Bros., Inc. v. United States Fid. & Guar. Co., 522 F.2d 1207, 1211 (8th Cir. 1975).

[11]      The dampness or temperature exclusion only applies to the Deluxe House Coverage portion of the Policy and not the Deluxe Contents Coverage.

extent the drywall's emission of gas and resultant damages are "caused by air dampness," the exclusion applies.  At least one court applying Louisiana law has enforced a similar dampness exclusion in a property policy as unambiguously excluding coverage for a Katrina property damage claim, noting the exclusion barred <u>all</u> losses resulting from dampness of the atmosphere, including an insured's failure to maintain and protect property from humidity.  *Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, No. 06-2516, 06-3184, 2008 WL 4286538, at *1 (E.D. La. Sept. 17, 2008).  Similarly, here, to the extent humidity in the Crosbys' home caused the emission of the gas from the Chinese drywall and resultant property damage, such losses are excluded under the dampness or temperature exclusion of the Policy.

### III.   <u>CONCLUSION</u>

Federal is entitled to judgment dismissing the Crosbys' claim for coverage for damage caused by the presence of Chinese drywall in their home.  As a threshold matter, to the extent the Crosbys seek coverage for repair and replacement of the drywall itself, they cannot prove they sustained a physical loss so as to trigger coverage, as it is undisputed that the Chinese drywall itself has not sustained a physical loss.  In any event, even if the Crosbys are deemed to have sustained a physical loss triggering coverage for repair and replacement of the drywall itself, the latent defect exclusion, corrosion exclusion, contamination exclusion, and the faulty materials exclusion each individually bar all of the Crosbys' claim for damage to their dwelling and contents caused by defective Chinese drywall, just as the courts in *Travco* and *Ross* concluded. In addition, the Policy's dampness or temperature exclusion also operates to bar coverage for the Crosbys' claim for damage to their dwelling.  For these reasons, Federal's Rule

- 24 -

12(b)(6) Motion to Dismiss should be granted and the Crosbys' claim against it dismissed with prejudice.

Respectfully submitted,

*/s/ Judy Y. Barrasso*

_____

Judy Y. Barrasso, 2814
John W. Joyce, 27525
Madeline M. Chimento, 32390
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: 504-589-9700
Telefax: 504-589-9701

*Attorneys for Federal Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of July, 2010.

*/s/ Judy Y. Barrasso*
_____
Judy Y. Barrasso, 2814

162471