UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAVID & AMANDA KESSLER | * | CIVIL ACTION |
| | * | THIS DOCUMENT RELATES TO |
| VERSUS | * | NO:  09-6072 |
| | * | |
| | * | JUDGE: |
| GMI CONSTRUCTION, INC., ABC | * | ELDON E. FALLON |
| INSURANCE COMPANY, MNO | * | |
| INSURANCE COMPANY, INTERIOR | * | MAGISTRATE: |
| EXTERIOR BUILDING SUPPLY, | * | JOSEPH C. WILKINSON, JR. |
| ASI LLOYDS and HBW INSURANCE | * | |
| SERVICES LLC | * | IN RE: CHINESE-MANUFACTURED |
| | * | PRODUCTS LIABILITY LITIGATION |
| | * | MDL No. 2047 |
| | * | |
| | * | SECTION "L" (2) |

*************************************

## MEMORANDUM IN SUPPORT OF RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

**MAY IT PLEASE THE COURT**:

Defendant, ASI Lloyds ("ASI"), submits this Memorandum in Support of its Rule 12(c) Motion for Judgment on the Pleadings pursuant to this Court's July 1, 2010 Order.  The ASI policy does not provide coverage for the allegations set forth in the Complaint filed by Plaintiffs, David and Amanda Kessler.  Therefore, ASI is entitled to a judgment from the Court in favor of ASI and dismissing Plaintiffs' Complaint.

## SUMMARY OF THE FACTS

This case arises out of the installation of Chinese drywall in Plaintiffs' home, which allegedly caused them to suffer damages.[1]  In their own complaint, Plaintiffs state that the Chinese drywall is "**inherently defective**," and "causes allergic reactions" and other health problems.[2]  Plaintiffs also state that Chinese drywall "emits levels of sulfur, methane and/or other volatile organic chemical compounds,"[3] and that these problems render the home "unsafe, unsanitary" and "otherwise unlivable."[4]  Plaintiffs further allege that "copper pipes installed [in their] [p]roperty have turned the color black, and components of [their] [p]roperty's electrical wiring is covered with black file or soot."  Finally, Plaintiffs allege that the Chinese drywall causes "**corrosion** of HVAC coils and refrigerator units, certain electrical wiring and plumbing components and other household items."[5]

To recover for their alleged damages, Plaintiffs sued their homeowner's insurance company, ASI.[6]  The ASI policy, which is an "H03" homeowner's policy, provides coverage for damage to Plaintiff's dwelling (*i.e.* Coverage A), other structures (*i.e.* Coverage B), contents (*i.e.* Coverage C), and additional living expenses (*i.e.* Coverage D), assuming there is a loss that triggers coverage under the policy.

Nevertheless, the ASI policy does not cover damage to Plaintiffs' dwelling and other structures (Coverages A and B) that is caused by Chinese drywall because there was no sudden and accidental direct physical loss as required by the policy to trigger coverage.  Furthermore, the ASI policy does not provide coverage for contents (Coverage C) damaged by Chinese

---

[1] *See* Plaintiffs' Complaint, which is attached hereto as Exhibit A.
[2] *See* Plaintiffs' Complaint, pp. 12, 14, 17, 18, 19, 20, 22, and 40, which is attached hereto as Exhibit A. Emphasis added.
[3] *See* Plaintiffs' Complaint, pp. 12, 14, 17, 18, 19, 20, 22, and 40, which is attached hereto as Exhibit A.
[4] *See* Plaintiffs' Complaint, pp. 12, 14, 17, 18, 19, 20, 22, and 40, which is attached hereto as Exhibit A.
[5] *See* Plaintiffs' Complaint, pp. 11 and 17, which is attached hereto as Exhibit A.
[6] *Id.*

drywall because Chinese drywall does not fall within any of the listed perils in the policy. Finally, the ASI policy does not provide coverage for Plaintiffs' additional living expenses (Coverage D) incurred due to Chinese drywall because Chinese drywall is not a covered loss under Coverages A and B.  Because there was no event or loss triggering coverage, Plaintiffs' claims against ASI must fail.

Alternatively, even if the Court finds that coverage was triggered, which is vehemently denied, the ASI policy includes various provisions that exclude coverage for damages caused by Chinese drywall.[7]  Specifically, the ASI policy includes a (1) wear and tear, latent defect and inherent vice exclusion, (2) faulty construction exclusion, (3) pollution exclusion, and (4) corrosion exclusion.[8]  All of these exclusions preclude coverage for any and all of Plaintiffs' alleged damages.  Therefore, ASI's Rule 12(c) Motion for Judgment on the Pleadings should be granted, and the Court should enter a judgment in favor of ASI by dismissing Plaintiffs' Complaint.

## LAW AND ARGUMENT

### A.      Standard for Rule 12(c) Motion for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is very similar to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.[9]  The only difference between the two Motions is that a Rule 12(b)(6) motion to dismiss is filed before pleadings are closed, and a Rule 12(c) motion is filed after pleadings are closed.[10]  Nevertheless, while the timing may be different, the standard and purpose for each Motion is the same.[11]  The

---

[7] *See* ASI Policy No. LAL6054, a certified copy of which is attached hereto as Exhibit B.
[8] *Id.*
[9] *Morrison v. Amway Corporation*, 421 B.R. 381, 388 (S.D. Texas 2009); *U.S. v. U.S. Currency*, No. 07-2067, 2007 WL 3224535 (W.D. Ark. 2007).
[10] *Morrison*, 421 B.R. at 381; *U.S.*, 2007 WL 3224535.
[11] *Morrison*, 421 B.R. at 381; *U.S.*, 2007 WL 3224535.

3

purpose is to serve as an "auxiliary or supplementary procedural device to determine [the] sufficiency of the case before proceeding any further and investing additional resources in it."[12]

A Rule 12(c) will be granted if, taking the allegations in the complaint as true, the plaintiff cannot recover as a matter of law.[13]  When considering a Rule 12(c) motion, the court may consider the pleadings and all documents expressly incorporated into the pleadings or referred to in the complaint.[14]  Plaintiffs' claim is for breach of contract; therefore, the ASI policy is part of Plaintiffs' claim.  Moreover, ASI's homeowners policy and its exclusions are referred to in Plaintiffs' Complaint and are the basis for Plaintiffs' claim against ASI.  As such ASI's homeowners policy is properly considered in this Rule 12(c) Motion.

### B.    Interpretation of Insurance Policies

The pivotal issue in this Motion involves the interpretation of the ASI insurance policy. Because the interpretation of an insurance policy is a substantive area of the law, Louisiana law governs this Motion.[15]  Pursuant to Louisiana substantive law, **insurance policies are contracts between the parties and have the effect of law between them.**[16]  The intent of the parties is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the agreement and by giving consideration on a practical basis to the instrument in its entirety.[17] If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written.[18]

---

[12] *Morrison*, 421 B.R. at 381; *U.S.*, 2007 WL 3224535.
[13] *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).
[14] *In re Ford Motor Co. Bronco II Products Liability Litigation,* 909 F.Supp 400, 403 (E.D.La. 1995); *See also Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).
[15] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1939).
[16] *Bryant v. United Service Auto Association*, 03-3491 (La. 9/9/04), 881 So.2d 1214.
[17] *Fleniken v. Energy Corporation*, 99-3023, 99-3024 (La. App. 1 Cir. 2/16/01), 790 So. 2d 64, 68, *writ denied*, 01-1269, 01-1295 (La. 6/15/01), 793 So.2d 1250, 1252.
[18] *Pareti v. Sentry Indemnity Company*, 536 So.2d 417, 420 (La. 1988).

Insurance companies have the right to limit coverage in any manner they desire, but the limitations cannot conflict with statutory provisions or public policy.[19]   As the Louisiana Supreme Court recently explained in *LeBlanc v. Aysenne*,[20] in analyzing an insurance contract, courts must remain mindful that it should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.[21]

### C.    Coverage is not triggered under the policy

As demonstrated below, the losses allegedly related to the installation of Chinese drywall are not covered because there is no loss or event triggering coverage under the terms of the ASI policy.

#### 1.    *Coverage is not triggered under the ASI Policy for damage to Plaintiffs' dwelling and other structures because there was no "sudden and accidental" direct physical loss as required by the policy.*

The "Special Provisions – Louisiana" section of Plaintiffs' policy (Form No. ASI HO LA SP 07 08) amends the original policy language in this HO3 insurance policy to state, in pertinent part, "We insure for sudden and accidental direct physical loss to property described in

---

[19] *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180.
[20] 2005-0297 (La. 1/19/06), 921 So.2d 85, 89,
[21] *Id.*

Coverages A and B;"[22]   The key phrase as it relates to the instant litigation is "sudden and accidental."

The Plaintiffs' Complaint alleges that "various electrical problems have *arisen*"; that "copper pipes installed at the Property have *turned* the color black"; and that "the Property's electrical wiring is covered with black file or soot." (emphasis added).[23]   The Plaintiffs further allege that the Chinese Drywall "emits" sulfur methane and/or other chemicals that "cause *corrosion* of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items." (emphasis added).[24]   The language in the Plaintiffs' Complaint clearly denote a condition(s) that occur(s) over a period of time, such as corrosion, *i.e.* not "sudden" at all.

In *Gulf Metals Industries, Inc. v. Chicago Insurance Company*, 993 S.W.2d 800 (Tex.App-Austin 1999), the court considered whether the phrase "sudden and accidental" in an insurance policy contained two separate requirements, *i.e.* a temporal element (sudden) and unexpected event (accidental).  Significantly, the insurance policy provision at issue in the *Gulf Metals* case was a pollution exclusion in a CGL policy.  The *Gulf Metals* court held:

> We hold as a matter of law that "sudden and accidental" clearly and unambiguously imparts a sense of temporal urgency requiring the release of pollutants to be swift, rapid, or abrupt to trigger the exception to the qualified polluter's exclusion clause and afford Gulf Metals coverage under the policies under consideration here.[25]

In doing so, the *Gulf Metals* court analyzed the fact that it would be redundant and meaningless to make the words "sudden" and "accidental" connote the exact same thing, *i.e.* an unexpected or unforeseen event.   Accordingly, when those two words are used together in an insurance

---

[22] See ASI Policy No. LAL6054, "Special Provisions – Louisiana" p. 2 of 7, a certified copy of which is attached hereto as Exhibit B.
[23] See Plaintiffs' Complaint, paragraph 11, which is attached hereto as Exhibit A.
[24] See Plaintiffs' Complaint, paragraph 17, which is attached hereto as Exhibit A.
[25] *Gulf Metals Industries, Inc. v. Chicago Insurance Company*, 993 S.W.2d 800, 809 (Tex.App.-Austin 1999).

contract, a proper interpretation necessarily requires that the word "sudden" must contain a temporal element meaning "abrupt or brief." [26]

One Louisiana case also directly addresses a "corrosion" related claim in an insurance policy. In *Central Louisiana Electric Co., Inc. v. Westinghouse Electric Corporation*, 569 So.2d 120 (La. App. 1 Cir. 1991), the court held that there was no coverage under a boiler and machinery policy for damages caused by corrosion. In that case, the policy at issue specifically defined "accident" as a "sudden and accidental" occurrence and specifically stated that "accident" did not include "corrosion."[27] Significantly, the court stated in footnote 2:

> Having already found that the cracks were caused by corrosion and reversed based on the clear provisions of the policy, it is not necessary to address CLECO'S argument that the cracks themselves are **sudden accidental** damage. However, it is unlikely that the pitting and stress corrosion cracking, which are generic problems that have plagued the old blade design and which are caused by the ***slow process of corrosion***, fit with the definition of accident as a **sudden accidental** occurrence. (emphasis added).[28]

The clear meaning of the court's interpretation of "sudden and accidental" from the *Central Louisiana Electric Co., Inc.* case is that the "slow" process of corrosion, which is exactly what effect Chinese Drywall had on the Plaintiffs' home, cannot be considered sudden and accidental. Similar to the court in *Gulf Metals*, the Louisiana First Circuit emphasizes a temporal element to the words "sudden and accidental" when used together as a phrase in an insurance policy.

In the case at bar, Plaintiffs' have alleged in no uncertain terms, and without dispute, that the alleged damage to their property was the result of "emissions" and "corrosion" that occurred over time. In fact, Plaintiffs were forced to "discover" that the problem resulted from the installation of inherently defective drywall, rather than having the problem made apparent by an

---

[26] *Gulf Metals Industries, Inc. v. Chicago Insurance Company*, 993 S.W.2d 800 at 805.
[27] *Central Louisiana Electric Co., Inc. v. Westinghouse Electric Corporation*, 569 So.2d 120, 122 (La. App. 1 Cir. 1991).
[28] *Central Louisiana Electric Co., Inc. v. Westinghouse Electric Corporation*, 569 So.2d 120, 123 (La. App. 1 Cir. 1991).

abrupt or brief occurrence that resulted in damages. Accordingly, the ASI policy does not provide coverage in this case for damages caused by Chinese Drywall because the corrosion and other alleged physical damage to the property was not "sudden and accidental."

2. ***Coverage is also not triggered for damage to Plaintiffs' contents and Plaintiffs' additional living expenses.***

As explained above, the ASI policy does not provide coverage for damage to Plaintiffs' dwelling and other structures resulting from Chinese drywall. Additionally, damages to Plaintiffs' contents and additional living expenses are also not covered. The ASI policy clearly denotes that coverage for content damage is only provided if it is caused by (1) fire or lightning, (2) windstorm or hail, (3) explosion, (4) riot or civil commotion, (5) aircraft, (6) vehicles, (7) smoke, (8) vandalism or malicious mischief, (9) theft, (10) falling objects, (11) ice, snow, or sleet, (12) accidental discharge, (13) sudden and accidental tearing apart, cracking, burning, or bulging, (14) freezing, (15) sudden and accidental damage from artificially generated electrical current, or (16) volcanic eruption.[29] This list is exclusive; therefore, any peril not listed is not covered. It is clear that damage caused by Chinese drywall does not fall within any of aforementioned categories. Therefore, the ASI policy does not provide coverage for damage to Plaintiffs' contents resulting from Chinese drywall.

Moreover, the policy does not provide coverage for Plaintiffs' additional living expenses. The ASI policy only provides coverage for additional living expenses if the damage is caused by a covered loss.[30] For the reasons explained herein, Chinese drywall is not a covered loss. Therefore, there is no coverage for additional living expenses incurred due to Chinese drywall.

---

[29] *See* ASI Policy No. LAL6054, p. 10, a certified copy of which is attached hereto as Exhibit B.
[30] *See* ASI Policy No. LAL6054, p. 5, a certified copy of which is attached hereto as Exhibit B.

In short, the ASI policy does not provide coverage for Plaintiffs' dwelling and other structures because there was no sudden and accidental direct physical loss to property. Furthermore, the ASI policy does not provide coverage for Plaintiffs' contents because Chinese drywall does not fall within one of the categories listed in the policy. Finally, the ASI policy does not provide coverage for Plaintiffs' additional living expenses because Chinese drywall is not a covered loss. Because coverage is not triggered under the ASI policy, Plaintiffs' claims must fail.

### D.   Alternatively, the ASI policy excludes coverage for Chinese drywall

Even if the Court finds that coverage is triggered under the ASI policy, *i.e.* that there was a sudden and accidental direct physical loss, which is vehemently denied, judgment should still be entered in favor of ASI because there are four exclusions in the ASI policy that apply to damage caused by Chinese drywall, any one of which warrants a ruling in favor of ASI. From the outset, it is important to note that similar arguments have been made by Louisiana Citizens Property Insurance Corporation in the *Ross v. C. Adams Construction & Design, LLC* case.[31] In that case, Citizens argued that

> There is also no coverage for any losses caused by the defects in the drywall and/or the gases it emits because these losses are specifically excluded by four exclusions in the policy for losses caused by: (1) a latent defect; (2) defective materials; (3) corrosion; and (4) a pollutant, defined to include gaseous contaminants or irritants. If *any* of these four exclusions are applicable there is no coverage, but *all four* apply here.[32]

After considering Citizens' Motion, Memorandum in Support, and the arguments of all counsel, the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, granted Citizens' Motion and ruled that the Citizens policy did not provide coverage for damage caused by

---

[31] *See* Citizens' Motion for Summary Judgment and Memorandum in Support and the 24th Judicial District Court ruling, attached hereto, *in globo*, as Exhibit C.
[32] *Id.*

Chinese drywall.[33]    As the arguments made in this Motion are virtually identical, it is respectfully submitted that the same ruling should be entered in the case at bar.

### 1.    *Wear and Tear, Latent Defect and Inherent Vice Exclusion*

In their Complaint, Plaintiffs allege that the drywall installed in their home is "inherently defective" and "not suitable for its intended use."[34]  The ASI policy includes a wear and tear, latent defect and inherent vice exclusion that precludes coverage for loss caused by:

> **(a)**    **Wear and tear**, marring, deterioration;
> **(b)**    Mechanical breakdown, **latent defect, inherent vice**, or any quality in property that causes it to damage or destroy itself;[35]

The Eastern District of Virginia recently ruled on the application of this exclusion to Chinese drywall in *Travco Ins. Co. vs. Larry Ward*.[36]  While this Court may not be bound by precedent established in Virginia, due to the lack of jurisprudence governing Chinese drywall issues, the *Travco* decision is extremely persuasive authority in the present situation.   The plaintiff in *Travco* was a homeowners insurance company, Travco, who filed a declaratory judgment action against the defendant, Larry Ward, to determine whether Chinese drywall was covered under Travco's policy.

Relying on the wear and tear, latent defect and inherent vice exclusion in its policy, Travco argued the defect in the chemical composition of the Chinese drywall was "not visible or readily discoverable, and did not manifest itself until sometime after installation."[37]  Accordingly, Travco argued that Chinese drywall constituted a latent defect for which the Travco policy did not provide coverage.  The Court agreed that Chinese drywall contained a latent defect

---

[33] *Id.*
[34] *See* Plaintiffs' Complaint, pp. 12, 14, 17, 18, 19, 20, 22, and 40, which is attached hereto as Exhibit A.
[35] *See* ASI Policy No. LAL6054, p. 9, a certified copy of which is attached hereto as Exhibit B.  Emphasis added.
[36] *Travco vs. Ins. Co. vs. Larry Ward*, No. 2:10cv14, 2010 WL2222255 (E.D. VA 6/3/10).  Because this is an unpublished opinion, a copy of the decision is attached hereto as Exhibit D.
[37] *Travco*, 2010 WL2222255.

because the drywall was integral to the construction of the home and its defect could not be detected from a reasonable inspection. Accordingly, the Court ruled that this exclusion precluded recovery for Chinese drywall.

This exclusion is also illustrated in *Holland v. Breaux*,[38] wherein Judge Lance Africk granted an insurers' motion for summary judgment based on a similar exclusion, in combination with a faulty planning and/or design exclusion. The plaintiff in *Holland* sustained structural damage to his home caused by untreated lumber used in constructing the house. The plaintiff's homeowner's insurer, Great Northern Insurance Company, argued that his damages were not covered under the policy. Great Northern relied on a similar "wear and tear, gradual deterioration, inherent vice and/or latent defect exclusion" to deny coverage. After applying the facts of the case to the language in the policy, Judge Africk ruled that the exclusion was unambiguous and could be enforced as written. Moreover, Judge Africk ruled that not only was the damage to the foundation of the house excluded, but so was all damage resulting therefrom. Accordingly, summary judgment was granted in favor of Great Northern.

A similar exclusion was also applied in *Nida v. State Farm Fire and Casualty Company*,[39] wherein the concrete slab of the plaintiff's home cracked due to earth movement. The plaintiff sued her homeowner's insurance company, State Farm, to recover the cost of making the necessary repairs. State Farm answered the plaintiff's suit by arguing that the policy at issue did not provide coverage. State Farm relied on multiple exclusions in the policy to deny coverage, one of which was a "latent defect" exclusion very similar to the exclusion in the present case.

---

[38] *Holland v. Breaux*, 2005 WL 3542899 (E.D. La. 2005)
[39] *Nida v. State Farm Fire and Casualty Company*, 454 So.2d 328 (La. App. 3 Cir. 1984).

To make a decision on whether coverage was provided, the *Nida* court specifically examined the latent defect language in a homeowners insurance policy.   Citing multiple legal sources, including prior jurisprudence, Black's Law Dictionary, and other reliable authorities, the court essentially concluded that a "latent defect" is <u>commonly</u> and <u>reasonably</u> understood to be a defect that is not apparent and would not be easily discoverable on inspection.   Using this definition, the court determined that the vice or defect in the foundation was a latent defect and coverage was excluded.   Significantly, the court stated, "The defendant-insurer simply was not a guarantor of the constructors building performance."[40]

The rulings in *Travco*, *Holland* and *Nida* are directly applicable to the present situation. The ASI policy does not provide coverage for damage caused by a latent defect or inherent vice. Plaintiffs candidly admitted in their Complaint that their damages were caused by drywall that is "inherently defective."   Additionally, the defect was clearly a latent defect or inherent vice since it was not reasonably discoverable during an ordinary inspection.   Finally, as Judge Africk reasoned in *Holland*, all of the damage resulting from the Chinese drywall (*i.e.* deterioration, corrosion, and other mechanical breakdown of fixtures and appliances in the home) is also excluded under the terms of the wear and tear and latent defect exclusion.

### 2.   *Faulty Construction*

Plaintiffs further alleged that a "defective" material (*i.e.* Chinese drywall) was "installed" in their home, and this installation caused their damages.[41]   A second exclusion in the policy that unambiguously excludes coverage in this case is the faulty construction exclusion, which excludes coverage for:

> **3.**     Faulty, inadequate or <u>defective</u>:
> **a.**     Planning, zoning, development, surveying and siting;

---

[40] *Nida*, 454 So.2d at 334.
[41] *See* Plaintiffs' Complaint, pp. 12, 14, 17, 18, 19, 20, 22, and 40, which is attached hereto as Exhibit A.

**b.**    Design, specifications, **workmanship**, repair, **construction**, renovation, remodeling, grading, compaction;

**c.**    **Materials** used in repair, construction, renovation or remodeling; or

**d.**    Maintenance;

of part or all of any property whether on or off the "residence premises".[42]

The Court in *Travco Ins. Co. vs. Larry Ward* [43] also addressed the application of the faulty construction exclusion to Chinese drywall damages. Again, Travco (the insurer) argued that this exclusion precluded recovery for Ward's (the plaintiff) damages. Ward attempted to argue that Chinese drywall did not fall under this exclusion because it had not collapsed or physically deteriorated. The Court did not agree with Ward's argument. Instead, the Court opined that "although the Drywall has not collapsed or otherwise physically deteriorated, it [was] certainly not serving its purpose as a component of a livable residence."[44] The Court further noted that Ward had repeatedly described the Chinese drywall as "defective" in his pleadings (similar to the language used by the Plaintiffs in the instant suit). Therefore, it was contradictory for Ward to alleged otherwise in connection with Travco's declaratory judgment action. In short, the Court found that Chinese drywall fell under this exclusion because it emitted "various sulfide gases and/or other toxic chemicals through 'off-gassing' that [created] noxious odors and [caused] damage and corrosion."[45]

This Court also recently considered a similar exclusion in *Mendler v. Derouen*.[46] The plaintiffs in *Mendler* contracted with Leroy Derouen to repair their home. Because they were not satisfied with the work performed, the plaintiffs sued, among other defendants, their builder's risk insurer, Assurance Company of America. Assurance answered the plaintiffs' suit by arguing

---

[42] *See* ASI Policy No. LAL6054, p. 12, a certified copy of which is attached hereto as Exhibit B. Emphasis added.

[43] *Travco vs. Ins. Co. vs. Larry Ward*, No. 2:10cv14, 2010 WL2222255 (E.D. VA 6/3/10).

[44] *Travco*, 2010 WL2222255.

[45] *Travco*, 2010 WL2222255.

[46] *Mendler v. Derouen*, No. 08-4217 (E.D. La. 2/18/09), slip opinion, 2009 WL 411244.

that the policy it issued to the plaintiffs did not provide coverage for the damages alleged in the plaintiffs' complaint. Specifically, Assurance relied on the exclusion in its policy that stated "we will not pay for loss caused by or resulting from...faulty, inadequate, or defective...design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction." Based on this exclusion, this Court dismissed Assurance on summary judgment. The Court explained that under Louisiana law, an insurance policy is a contract and constitutes the law between the parties. Because the exclusion was <u>unambiguous</u>, it had to be applied. Therefore, summary judgment was proper because the exclusion unambiguously excluded coverage for the damages outlined in the plaintiffs' petition.

Another case that involves this exclusion is *Morgan v. Auto Club Family Ins. Co.*[47] The plaintiff in *Morgan* sued her homeowner's insurance company to recover for mold damage that resulted from an inadequate ventilation system in her metal roof.[48] Auto Club argued that her damages were not covered under the policy because it excluded coverage for "faulty, inadequate, or defective...design, specifications, workmanship, repair, construction, renovation, remodeling, grading..."[49] The court agreed with Auto Club's argument and explained that based on the foregoing language, the resulting mold damage was not caused by a peril insured under the policy because the inadequate ventilation system constituted faulty and/or ineffective construction. Therefore, the policy unambiguously excluded coverage and Auto Club was dismissed from the case on summary judgment.

The reasoning set forth in *Travco*, *Mendler* and *Morgan* provides clear guidance in the present situation. Improperly manufactured Chinese drywall falls within the definition of faulty, inadequate or defective "materials" and/or inadequate or defective "specifications or design,"

---

[47] *Morgan v. Auto Club Family Ins. Co.*, 04-1562 (La. App. 3 Cir. 4/6/05), 899 So.2d 135.
[48] *Morgan*, 899 So.2d 135.
[49] *Morgan*, 899 So.2d at 137.

"workmanship," "construction," etc... used in the construction of Plaintiffs' home.  As admitted in Plaintiffs' own Petition,[50] and in their own unambiguous terminology, the Chinese drywall itself is "defective" in design and Plaintiffs' loss is directly caused by that defect.  Moreover, the defective materials were installed in Plaintiffs' home during its construction.  Based on these facts, the only reasonable interpretation of the ASI policy is that it excludes coverage for Plaintiffs' damages under the faulty construction exclusion.

### 3.    *The Pollution Exclusion*

Plaintiffs also allege that the Chinese drywall "emits levels of sulfur, methane and/or other **volatile organic chemical compounds**," and these problems render the home "unsafe, unsanitary" and "otherwise unlivable."[51]  The ASI policy includes a pollution exclusion that specifically denies coverage for loss caused by:

> **(e)**    Discharge, dispersal, seepage, migration, release or escape of **pollutants** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.[52]

In short, this language excludes coverage for damage caused by a pollutant.[53]  Chinese drywall is allegedly dangerous because it contains hydrogen sulfide gas that damages appliances, etc....[54]  Jurisprudence has defined hydrogen sulfide gas as a pollutant.  In *United National*

---

[50] *See* Plaintiffs' Complaint, pp. 12, 14, 17, 18, 19, 20, 22, and 40, which is attached hereto as Exhibit A.

[51] *See* Plaintiffs' Complaint, pp. 12, 14, 17, 18, 19, 20, 22, and 40, which is attached hereto as Exhibit A.

[52] *See* ASI Policy No. LAL6054, p. 9, a certified copy of which is attached hereto as Exhibit "B". Emphasis added.

[53] ASI is mindful of the decision reached by the La. Supreme Court in *Doerr v. Mobil Oil Corporation*, 00-0947 (La. 12/19/00), 774 So.2d 119, but it is ASI's position that *Doerr* is not applicable to the present situation because *Doerr* involved a commercial general liability policy whereas the present situation involves a homeowners policy. However, it should be noted that even if by some stretch Doerr is applied to a standard homeowners' pollution exclusion, ASI submits that the manufacturer of the Chinese Drywall (Knauff or one of the other related entities) would seemingly qualify as a commercial polluter and trigger the exclusion anyway.

[54] *Travco vs. Ins. Co. vs. Larry Ward*, No. 2:10cv14, 2010 WL2222255 (E.D. VA 6/3/10).

*Insurance Company v. Hydrotank, Inc.*,[55] the U.S. Fifth Circuit dealt with two workers' exposure to hydrogen sulfide at a plant. In that case, it was noted that the defendant did not even dispute that hydrogen sulfide is *per se* a pollutant within the meaning of the policy. The emission of hydrogen sulfide gas from Chinese drywall is also "per se" pollution. Chinese drywall contains hydrogen sulfide; therefore, it too is a pollutant.

The clear and unambiguous language of the ASI policy excludes coverage for pollutants. Because Plaintiffs' damages were caused by Chinese drywall, which undeniably emits a pollutant, the ASI policy does not provide coverage. The Court in *Travco Ins. Co. vs. Larry Ward*[56] also considered whether the pollution exclusion applies to Chinese drywall, and again, ruled that it precluded recovery for damages resulting from Chinese drywall.[57] Ward attempted to argue that Chinese drywall was not a pollutant, and, therefore, it did not fall under the pollution exclusion. The Court gave Ward points for creativity, but ultimately ruled that "although the [d]rywall itself may not be a pollutant, the gases it releases are."[58] The Court explained that "**[t]here is no dispute** that the Chinese [d]rywall has released reduced sulfur gases into the Ward Residence" and "**[b]oth state and federal authorities recognize reduced sulfur gases as pollutants**."[59] Moreover, the Travco policy defined a pollutant as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."[60] Therefore, "[u]nder any reasonable definition of these terms, the gases released into the Ward Residence qualify as irritants and contaminants."[61] Accordingly, the

---

[55] *United National Insurance Company v. Hydrotank, Inc.*, 497 F.3d 445 (5th Cir. 8/15/07).
[56] *Travco vs. Ins. Co. vs. Larry Ward*, No. 2:10cv14, 2010 WL2222255 (E.D. VA 6/3/10).
[57] *Travco*, 2010 WL2222255.
[58] *Travco*, 2010 WL2222255.
[59] *Travco*, 2010 WL2222255. Emphasis added.
[60] *Travco*, 2010 WL2222255.
[61] *Travco*, 2010 WL2222255.

Court found that Chinese drywall was excluded from coverage pursuant to the pollution exclusion.

A strikingly similar situation was also discussed by a Federal Court in Pennsylvania in the case of *Brown v. American Motorist Insurance Company*, 930 F.Supp. 207 (E.D. Pa. 1996). The plaintiffs in *Brown* sustained damages when they applied a chemical waterproofing sealant to the exterior of their home. The sealant fumes caused "intense physical discomfort" and forced them to vacate their home. To recover for their damages, the plaintiffs sued their homeowner's insurance company, American Motorist Insurance Company.

In response, American Motorist argued that the plaintiffs' damages were not covered under the policy because it excluded coverage for "discharge, dispersal, seepage, migration, release or escape of pollutants." The plaintiffs argued that the exclusion only applied to people who intentionally pollute the environment and not to "every day acts of homeowners". Nevertheless, the Court disagreed and explained that the exclusion was *not* limited to intentional acts of polluters causing harm to the environment. Instead, the fumes "seeped or migrated" into the house; therefore, the plaintiffs' claim fell "within the clear language of the pollution exclusion and outside the coverage provided by" American Motorist.

The same result should be reached in the present situation. The ASI policy unambiguously excludes coverage for damages caused by pollution. Plaintiffs do not dispute that their damages were caused by a "volatile organic chemical" (*i.e.* hydrogen sulfide gas) in Chinese drywall. Jurisprudence has already determined that hydrogen sulfide gas is a pollutant. According to the authority set forth by the Federal Courts in *Brown* and *Travco*, the exclusion in the ASI policy is unambiguous and not limited to intentional acts of polluters. Accordingly, Plaintiffs' damages fall within the pollution exclusion.

### 4. Corrosion

Finally, Plaintiffs allege that "copper pipes installed [in their] [p]roperty have turned the color black, and components of [their] [p]roperty's electrical wiring is covered with black file or soot." Plaintiffs further allege that the Chinese drywall causes "**corrosion** of HVAC coils and refrigerator units, certain electrical wiring and plumbing components and other household items."[62]  The ASI policy includes a corrosion exclusion that specifically denies coverage for loss caused by:

**(c)**     Smog, rust or other **corrosion**, or dry rot;[63]

This language in the ASI policy excludes coverage for all damages caused by corrosion. Corrosion is the process by which the surface of a metal or other material wears away or deteriorates.[64]  Once again, the Court in *Travco Ins. Co. vs. Larry Ward* considered the corrosion exclusion and ruled that it excluded coverage for any and all damages caused by corrosion.[65] Ward attempted to argue that the exclusion did not apply because his damages were caused by Chinese drywall and not corrosion.  The Court disagreed with Ward and ruled that

> As a general rule, exclusions for damages caused by corrosion preclude recovery for any damage caused to property because of contact with any corrosive agent. Most jurisdictions hold that an exclusion for damages caused by corrosion precludes recovery for damages caused by corrosion regardless of what caused the corrosion or how suddenly the corrosion occurred.  The ordinary meaning of corrosion includes the action or process of corroding.  As it is undisputed that the damage to the structural, mechanical and plumbing systems of the Ward Residence was caused by the action or process of corroding, the corrosion exclusion unambiguously applies.[66]

---

[62] *See* Plaintiffs' Complaint, pp. 11 and 17, which is attached hereto as Exhibit A.
[63] *See* ASI Policy No. LAL6054, p. 9, a certified copy of which is attached hereto as Exhibit B. Emphasis added.
[64] *See, e.g., Reliance Ins. Co. v. Cooper/T. Smith Corp.*, Civ. Nos. 00-0251 & 00-0280, 2001 WL 530438, at *2 n.4 (S.D. Ala. Apr. 24, 2001); *Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.*, 863 F. Supp. 1226, 1235 (D. Nev. 1994).
[65] *Travco vs. Ins. Co. vs. Larry Ward*, No. 2:10cv14, 2010 WL2222255 (E.D. VA 6/3/10).
[66] *Travco vs. Ins. Co. vs. Larry Ward*, No. 2:10cv14, 2010 WL2222255 (E.D. VA 6/3/10).

Two judges of the United States District Court for the Eastern District of Louisiana have also recently applied similar exclusions to preclude coverage for equipment that rusted as a result of Hurricane Katrina. In *Transcontinental Ins. Co. v. Guico Machine Works, Inc.*,[67] the insured's roof was damaged during the hurricane, leaving its equipment exposed to the elements. Judge Englehardt granted summary judgment to the insurer, holding that, under an exclusion for "loss or damage caused by or resulting from rust," there was no coverage for rust damage resulting from water infiltration through the damaged roof.[68] Judge Englehardt emphasized that the policy language unambiguously "excludes *all* loss or damage from rust or dampness of atmosphere."[69] Additionally, in *Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*,[70] Judge Porteous ruled that a policy excluding "loss or damage caused by or resulting from . . . rust, corrosion" did not provide coverage for rust and mold damage that was caused by a moist environment from flooding on the first floor.[71]

Courts in other jurisdictions have also reached similar rulings. The Ohio Court of Appeals enforced the corrosion exclusion where the claimed damage consisted of "discoloration of the stainless steel door hardware, switch plates and copper piping" in rooms where concrete floors had been treated with chemical agents during construction to etch them in preparation for their final sealing.[72] The construction contractor had improperly diluted the etching chemicals, which "caused an acid vapor to form in the electrical/mechanical rooms in which the concrete floor etching was performed."[73] The acid vapor reacted with metal surfaces in these rooms,

---

[67] *Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, Civ. Nos. 06-2516 & 06-3184, 2008 U.S. Dist. LEXIS 69972 (E.D. La. Sept. 17, 2008)

[68] *Id.* at *4-5.

[69] *Id.* (emphasis added).

[70] *Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, Civ. No. 06-8710, 2008 U.S. Dist. LEXIS 18335, at *8 (E.D. La. March 10, 2008).

[71] *Orthopedic*, 2008 U.S. Dist. LEXIS 18335, at *8.

[72] *Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-664, 2005 Ohio App. LEXIS 981 (Ohio Ct. App. Mar. 8, 2005).

[73] *Id.* at *2-3.

causing the "discoloration" that was claimed. The court of appeals affirmed the entry of summary judgment in favor of the insurer, concluding that the loss was excluded under an exclusion for loss caused by corrosion.[74]

The ASI policy clearly and unambiguously excludes coverage for damages caused by corrosion. Similar exclusions have been upheld by this Court and by courts of other jurisdictions. Plaintiffs allege and admit that their damages were caused by corrosion. Therefore, their damages fall within the corrosion exclusion.

## CONCLUSION

The ASI policy does not provide coverage for Plaintiffs' damages. Plaintiffs are suing to recover damages allegedly sustained to their dwelling and other structures. The ASI policy does not cover these losses because there was no sudden and accidental direct physical loss as required by the policy. Moreover, the ASI policy does not provide coverage for Plaintiffs' alleged content damage because Chinese drywall does not fall within one of the categories listed in the policy, and there is no coverage for Plaintiffs' additional living expenses because Chinese drywall is not a covered loss. Therefore, ASI's Motion should be granted, and the Court should enter judgment in favor of ASI by dismissing Plaintiffs' Complaint, with prejudice.

The ASI policy also includes four exclusions, any one of which warrants judgment in favor of ASI. First, Plaintiffs' damages are excluded by the wear and tear, latent defect and inherent vice exclusion. Second, Plaintiffs' damages are excluded by the faulty construction exclusion. Third, Plaintiffs' damages are excluded by the pollution exclusion. Finally, Plaintiffs' damages are excluded by the corrosion exclusion. While ASI submits that all four of these exclusions preclude coverage, any one of these exclusions, standing alone, warrants judgment in favor of ASI. Accordingly, ASI's Rule 12(c) Motion for Judgment on the Pleadings

---

[74] *Id.* at *17.

should be granted, and the Court should enter judgment in favor of ASI by dismissing Plaintiffs'

Complaint, with prejudice.

Respectfully submitted,

**CHOPIN, WAGAR, RICHARD & KUTCHER, L.L.P.**

By: _____

JASON P. FOOTE (#25050), T.A.
**BRITTANY M. COURTENAY (#31846)**
3850 N. Causeway Boulevard, Suite 900
Metairie, Louisiana 70002
Telephone: (504) 830-3827
Facsimile: (504) 836-9579
***Attorneys for Defendant, ASI Lloyds***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Support of Rule 12(c)

Motion for Judgment on the Pleadings has been served upon Plaintiffs' Liaison Counsel, Russ

Herman, and Defendants' Liaison Counsel, Kerry Miller, by U. S. Mail and e-mail or by hand

delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File

& Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed

with the Clerk of Court for the United States District Court for the Eastern District of Louisiana

by using the CM/ECF system, which will send a notice of electronic filing in accordance with

the procedures established in MDL 2047, on the 19th day of July ,2010.

_____

JASON P. FOOTE