IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID KESSLER, and AMANDA KESSLER | |
| Plaintiffs, | 09-6072 |
| v. | No. |
| GMI CONSTRUCTION, INC., ABC INSURANCE COMPANY, MNO INSURANCE COMPANY, INTERIOR EXTERIOR BUILDING SUPPLY, ASI LLOYDS and HBW INSURANCE SERVICES LLC | JURY TRIAL DEMAND<br><br>SECT. L MAG. 2<br><br>IN RE: CHINESE-MANUFACTURED PRODUCTS LIABILITY LITIGATION |
| Defendants. | MDL No. 2047   Section: "L" |

## PETITION FOR BREACH OF CONTRACT, WARRANTY AND FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, respectfully come your Petitioners, **DAVID KESSLER AND AMANDA KESSLER** (hereinafter collectively "Petitioners"), who are both the age of majority and who are domiciled in this State and Parish, who based upon information and belief, respectfully assert as follows:

1.

Made Defendants in this action are the following:

- GMI CONSTRUCTION, INC., a Louisiana Company at all relevant times doing business in this State and Parish (hereinafter "Defendant Seller / Builder" or "Builder");

- ABC Insurance Company, a foreign or domestic insurance carrier who provides general liability insurance to Defendant Seller / Builder, or otherwise insures Defendant Seller / Builder for the damages prayed for herein (Hereinafter "ABC");

EXHIBIT A

- Interior/Exterior Building Supply, is a Louisiana company at all relevant times doing business in this Parish and State, who supplies drywall products to contractors, and supplied drywall to Defendant Builder or to Subcontractors ("Supplier");
- MNO Insurance Company, a foreign or domestic insurance carrier who provides general liability insurance to Subcontractor or Supplier, or otherwise insures Subcontractor and/or Supplier for the damages prayed for herein ("MNO");
- ASI LLOYDS, a company authorized and doing business in Louisiana, who insurers Petitioners for Homeowners insurance that covers subject property for losses such as this. (Collectively with HBW INSURANCE SERVICES LLC, hereinafter Defendant Insurer)
- HBW INSURANCE SERVICES LLC, a company authorized and doing business in Louisiana, who provided home warranty insurance that covers subject property for losses such as this.

Collectively the defendants are referred to herein as "Defendants." With respect to those Defendants who did not contract directly with your Petitioners, the Petitioners are an intended third party beneficiary of the contracts between them and the appropriate party because it was the clear and manifest intent of the Defendants that the contracts were to primarily and directly benefit your petitioners.

2.

Jurisdiction is proper in this Court because the Court maintains subject matter jurisdiction over the dispute based on the object of the demand and the amount in controversy.

3.

Venue is proper in this Court pursuant to Louisiana Code of Civil Procedure Article 76.1 because the contracts in controversy were executed and services were performed in this Parish. Further, the damages were sustained in this Parish.

## BACKGROUND AND FACTS

4.

On or around November, 2008, Petitioners signed an agreement to buy property bearing the municipal address 385 Brown Thrasher Loop No. 5, Madisonville, Louisiana, 70447.

5.

In the Purchase Agreement Defendant Seller / Builder is identified as the seller of the property.   The Purchase Agreement makes mention of a "Builder," but the Builder is not identified therein.

6.

According to the Purchase Agreement, Defendant Seller / Builders, as seller of property, expressly warranted the Property:

> SELLER warrants the premises in accordance with FHA/VA standards, the 2-10 Home Buyer's Warranty and Defendant Seller / Builder, L.L.C.'s limited warranty.  BUYER acknowledges that said warranties exclude certain items and damages including, but not limited to, (1) any damage to the extend it has caused or made worse by dampness or condensation due to BUYER's failure to adequately maintain ventilation, caulking, flashing or gutters; (2) the cost of shelter, transportation, food, moving, storage, or other incidental expenses related to relocation during repair or any other costs due to loss of use, convenience or annoyance; (3) bodily injury or personal injury of any kind (including physical or mental pain and suffering and emotional distress), medial, hospital, rehabilitation or other incidental or consequential expenses,; damages to personal property, or damage to any property other; and (4) any loss or damage which BUYER has not taken appropriate action to minimize as soon as practical.

7.

A builder constructed the Property.  Upon information and belief, that builder was Defendant Seller/ Builder.

8.

During the construction of the Property, the builder either installed or hired an unknown Subcontractor to install and supply the drywall to the Property.  Upon information and belief either Seller/Builder or Unknown Subcontractor purchased the drywall from Supplier.

9.

Upon information and belief, Defendant Seller / Builder, and Suppliers all maintained insurance policies at the times in controversy, and these insurance companies are made defendants to this action.

**10.**

In or around November, 2008 after construction on the Property was substantially complete, Petitioners closed on the Property and moved into the home making it their permanent residence.

**11.**

Since moving into the property, various electrical problems have arisen.
Further, it has been discovered that copper pipes installed at the Property have turned the color black, and components of the Property's electrical wiring is covered with black file or soot.

**12.**

"Chinese Drywall" installed in the Property by Defendants is the cause for the aforementioned physical damages to the Property. Petitioners discovered that Chinese Drywall was used in the construction of the Property on or around June 22, 2009.

**13.**

On July 23, 2009, Petitioners sent a certified letter to its builder, Defendant Seller/Builder. The certified letter was received by Defendant Builder.

**14.**

The July 23, 2009 notice advised Defendant Builder of the defects with the Property's construction, and provided Defendant Builder with a reasonable opportunity to remedy the noted defects. The July 23, 2009, notice satisfied the requirements of Louisiana R.S. 9:3145.

15.

On August 10, 2009, Defendant Seller/Builder sent a representative from its home warranty department to inspect the Property. A Defendant Seller/Builder representative walked through the Property with Petitioners and took photographs of the Property and damages.

16.

On August 24, 2009, Defendant Seller / Builder responded to Petitioners certified letter with written correspondence, also sent via certified mail. The letter confirmed that the Property was installed with Chinese Drywall, and advised that Defendant Seller / Builder "is not responsible for any condition which does not result in actual physical damage to the home." There was no indication that Defendant Seller / Builder would make any efforts to remedy the defect.

17.

The drywall installed in Petitioner's home is commonly referred to as "Chinese Drywall" because it was imported for use into the United States from China. The Chinese Drywall installed into Petitioner's Property is defective. It emits levels of sulfur, methane and/or other volatile organic chemical compounds that cause corrosion of HVAC coils and refrigerator units, certain electrical writing and plumbing components, and other household items. The drywall itself is defective, and thereby renders the walls to the Property defective. Further, the drywall causes damage to other building elements, such as what is commonly referred to as the "building studs." The defective drywall also creates a noxious "rotten egg-like" odor, causes allergic reactions, coughing, sinus and throat infections, nose bleeds, eye irritation, respiratory problems and other health concerns.

18.

The Chinese Drywall is not suitable for its intended use, is inherently defective, and causes actual physical damage to the walls and partitions of the Petitioner's Property, affecting the function of the walls and partitions to the extent that the home becomes unsafe, unsanitary or is otherwise unlivable.

**19.**

To remedy the defective drywall, the Petitioners must remove all defective drywall, perform extensive remedial repairs to the Property, and then repair the damaged property made visible during the performance of said repairs. Essentially to remedy this problem the property will need to be rebuilt from the ground up

**20.**

The Chinese Drywall's presence in the Property has caused your Petitioners' damage, including, but not limited to: (i) Costs of inspection; (ii) Costs and expenses necessary to remove and replace the defective drywall and adjoining components; (iii) Cost and expenses to remove, replace and remedy the electrical wiring, internal finishes, HVAC coils, damaged building elements, plumbing fixtures and tubing, other affected appliances and fixtures, and other personal property; (iv) Cost of relocation during the remedial process; (v) Personal injuries and future health concerns; and (vi) Substantial diminution in the value of the Property.

## CAUSES OF ACTION

### NEW HOME WARRANTY ACT

**21.**

The New Home Warranty Act is codified in Louisiana Rev. Stat. 9:3141 *et seq.* The Petitioners claim that the installed Chinese Drywall, and the effects of the defective materials, are a defect in the builder's workmanship or materials within the meaning of the Act.

**22.**

Notice has been provided to the builder as per La. R.S. 9:3145, and the builder has been provided a reasonable opportunity to inspect the alleged defect. The builder has also been provided a reasonable opportunity to undertake the repair of the defects itself. The builder did in fact inspect the property, but it refuses to remedy the defects, and is therefore in breach of the New Home Warranty Act.

23.

Since the builder has violated the New Home Warranty Act by failing to perform as required by the statutory warranties, the Petitioners are bringing this cause of action against it for its actual damages, including attorneys fees and court costs, that arise out of the violation. This cause of action is brought pursuant to La. R.S. 9:3149.

24.

For the purposes of this Section labeled "NEW HOME WARRANTY ACT," the term "builder" shall refer to Defendant Seller / Builder, . and/or any other name builder operates

as appropriate under the facts.   Because of the relationship between Defendant

Seller / Builder and Defendant Builder, the terminology used in the Purchase Agreement,

the relationship between the Petitioners and these two parties, and other facts,

information and belief, it is uncertain as to which of these parties acted as the actual

builder as contemplated by the New Home Warranty Act.   The cause of action under the

New Home Warranty Act is asserted against both Defendant Builder and Defendant

Seller / Builder, alternative to one another where appropriate, and together where

appropriate.

**NEGLIGENT OR FRAUDULENT MISREPRESENTATION**

25.

Article 2315 provides Petitioners a cause of action against the Defendant Seller / Builder and Defendant Builder for negligent or fraudulent misrepresentations.

26.

On or around July or August, 2009, the Petitioners were informed verbally by Defendant Seller / Builder and/or Defendant Builder "the drywall was nothing to worry about and it was mainly about people trying to get out of overly expensive homes."

27.

Upon information and belief, this is an intentional or negligent misrepresentation to your Petitioners.   Defendant Seller / Builder and Defendant Builder did have reason to know it was using Chinese Drywall at the Petitioner's property, and its representation to the contrary is made with the intent of obtaining an unjust advantage over your Petitioners, causing your Petitioner's injury.

28.

Further, upon information and belief, from February 2009 through July 2009, Defendant Seller / Builder and Defendant Builder intentionally or negligently misrepresented the presence of Chinese Drywall in the Petitioner's home and/or in the Petitioner's subdivision when it did in fact know that defective drywall was used in the community. These misrepresentations were made with the intent of obtaining an unjust advantage over your Petitioners, causing your Petitioner's injury.

29.

After learning of the use of Chinese Drywall in the Petitioner's subdivision and home, Defendant Seller / Builder and/or Defendant Builder fraudulently concealed and/or intentionally omitted the fact to Petitioners. These concealments were made with the intent of obtaining an unjust advantage over your Petitioners, causing your Petitioner's injury.

**FAILURE TO WARN**

30.

All Defendants had a duty to warn the Petitioners about the presence of contaminated drywall in the Petitioner's home. The Defendants breached this duty by failing to warn the Petitioners of the defective product at the time of its installation, and thereafter, and specifically did not warn the Petitioners of the contaminated drywall and its negative effects after Defendants learned of supplying and/or installing the drywall into Petitioner's home or community.

31.

Petitioners suffered damages as a result of the Defendants' failure to warn, and Petitioners assert a cause of action for breach of this duty under La. C.C. art 2315, and any other applicable statute.

**BREACH OF EXPRESS WARRANTY BY DEFENDANT SELLER / BUILDER LLC**

32.

Paragraph 6 of this Petition sets forth the express warranties made by Defendant Seller / Builder,. to the Petitioner. The Petitioner avers that Defendant Seller /

Builder breached these express warranties, that Petitioner has been damaged for the same, and asserts a cause of action for recovery of its damages related to this breach.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

33.

Defendants are all merchants of gypsum drywall, and an action is asserted against them for breach of implied warranty of merchantability under Louisiana law.

34.

Pursuant to Louisiana law, Defendants warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used. Defendants breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used. As a result of the breach of this implied warranty of merchantability, the Petitioners have suffered damages.

**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

35.

Defendants are all merchants of gypsum drywall, and an action is asserted against them for breach of implied warranty of fitness for a particular purpose under Louisiana law.

36.

At the time Defendants entered into their applicable contracts, they had reason to know that the gypsum drywall was being purchased and/or supplied for the particular purpose of being installed in residential homes owned by your Petitioners, and that

homebuilders and Petitioners were relying on Defendants' skill and judgment to select and furnish gypsum drywall that was suitable for this particular purpose.

### 37.

Pursuant to Louisiana Law, Defendants warranted that the gypsum drywall was fit for the particular purpose of being installed in residential homes owned by the Petitioner, and Defendants breached this warranty by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential homes owed by Petitioner. As a result of the breach of this implied warranty of fitness for a particular purpose, the Petitioners have suffered damages.

## ACTION IN REDHIBITION

### 38.

Defendants are all merchants of gypsum drywall, and an action is asserted against them in redhibition.

### 39.

Louisiana C.C. art 2520 provides that a seller warrants the buyer against redhibitory defects, or vices, in the thing sold.

### 40.

The thing sold and/or supplied and/or installed by the Defendants has a defect that renders the gypsum drywall useless, or so inconvenient that it must be presumed that a buyer would not have brought the thing had he known of the defect.

### 41.

The Petitioners assert that the gypsum drywall at controversy is defective, and it is entitled to bring a cause of action and recover for its damages related to the defect as per La. C.C. art 2520.

## BREACH OF STATUTORY WARRANTIES

**42.**

Petitioners assert a cause of action against the Defendants for breach of statutory warranties codified in La. C.C. art 2762, which provides for liability of a contractor for damages due to badness of its workmanship.

**43.**

Petitioners aver that its property has fallen to ruin in whole, or in part, on account of the badness of workmanship of the Defendant.   Petitioner asserts a cause of action against Defendants under their statutory liability as codified in La. C.C. art 2762.

## BREACH OF CONTRACT

**44.**

Petitioners had a contract with Defendant Seller / Builder and/or Defendant Builder, and Petitioners assert that these parties have breached its contract by supplying and installing Chinese Drywall.

**45.**

La. C.C. art 769 provide that "if an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."

**46.**

The Petitioners aver that by supplying and installing Chinese Drywall, Defendant Seller / Builder and/or Defendant Builder failed to execute its contract in the manner agreed. Accordingly, Petitioners assert that they are in breach of contract, and bring this cause of action for injuries sustained as a result of Defendant Seller / Builder's breaches.

## NEGLIGENCE

**47.**

Petitioners assert that the Defendants owed them a duty of care, and by supplying, installing, selling or otherwise being responsible for the installation of Chinese Drywall into Petitioner's home, the Defendants breached this duty. The Petitioners aver that the breach of the duty was negligence, and assert a cause of action against Defendants under La. C.C. art 2315 et seq.

## INSURER'S LIABILITY

**48.**

All causes of action against the Defendants are asserted against each's insurer.

## HOMEOWNER'S AND HOME WARRANTY INSURANCE LIABILITY

**49.**

Plaintiffs adopt and re-allege each and every allegation set forth in Paragraphs 1 through 46 as if fully set forth herein.

**50.**

Defendant Insurers was notified of a covered cause of loss, namely the damage from the Chinese drywall. Defendant Insurer verbally denied the claim and failed to remit payments owed to Plaintiff under the prescribed times lines set forth in 22:1892 and 22:1973.

**51.**

ASI LLOYDS AND HBW INSURANCE SERVICES LLC  have failed to pay for the covered damages suffered by the plaintiffs despite amicable demand.

52.

Defendant ASI LLOYDS is also liable for the full value of Plaintiff's immovable property under the policy pursuant to Louisiana's Valued Policy Clause, La. R.S. 22:695, as Plaintiff's property was a total loss caused by a covered peril.

53.

ASI LLOYDS AND HBW INSURANCE SERVICES LLC have failed to pay, within the appropriate time limits, failed to adjust certain losses, and has misrepresented facts and provisions of the policy relating to coverages and has been arbitrary, capricious and refused to pay without probable cause, and accordingly for the penalties set forth in Louisiana Revised Statutes 22:1892 and 22:1973. Defendant Insurer further committed the below;

## CAUSES OF ACTION AGAINST DEFENDANT INSURER- ASI LLOYDS AND HBW INSURANCE SERVICES LLC

A. **Bad faith: La. Rev. Stat. § 22:1973.**

54.

Petitioner repeats and re-alleges all foregoing paragraphs.

55.

Petitioner maintains that Defendant Insurer's aforementioned conduct breached the following duties to Petitioner: (1) the duty of "good faith and fair dealing;" (2) the "affirmative duty to adjust claims fairly and promptly"; and (3) the "affirmative duty" to "make a reasonable effort to settle claims with the insured or the claimant, or both."

56.

Petitioner further maintains that Defendant Insurer "knowingly committed or performed "the following acts, thereby constituting a breach of the insurer's duties: (1) failing to pay a settlement within thirty days after an agreement is reduced to writing; (2) denying coverage or

attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured; and (3) failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant and such failure was arbitrary, capricious, and/or without probable cause.

57.

As a result of Defendant Insurer's aforementioned conduct, the Defendant Insurer is liable for any damages sustained as a result of the breach, including, but not limited to specific and general damages (i.e. for mental anguish and/or inconvenience), attorneys' fees, and penalties. Such penalties include an amount not to exceed two times the damages sustained or five thousand dollars, which ever is greater.

**B. Bad Faith: La. Civil Code art. 1997.**

58.

Petitioner repeats and re-alleges all preceding paragraphs.

59.

Petitioner maintains that Defendant Insurer's aforementioned conduct violates La. Civil Code art. 1997.

60.

As a result of its bad faith, Defendant Insurer is liable to Petitioner for all damages, foreseeable or not, that are a direct consequence of its failure to perform.

**C. La. Rev. Stat. § 22:1892.**

61.

Petitioner repeats and re-alleges all preceding paragraphs.

62.

Petitioner maintains that Defendant Insurer's aforementioned conduct violated La. Rev. Stat. § 22:1892 by Defendant Insurer's failure to initiate loss adjustment within thirty (30) days of being notified of the claim by Petitioner.

63.

Petitioner maintains that Defendant Insurer's aforementioned conduct violated La. Rev. Stat. § 22:1892 by Defendant Insurer's failure to provide Petitioner payment within thirty (30) days after being provided satisfactory proof of loss by Petitioner.

64.

As a result of its misconduct, Defendant Insurer is liable to Petitioner for all damages occasioned by the breach, specific and general, as well as attorneys' fees, costs, interests, penalties as provided in Section 1892.

**D. Breach of Contract.**

65.

Petitioner repeats and re-alleges all preceding paragraphs.

66.

Petitioner maintains that defendant Insurer's preceding conduct constitutes a breach of contract as embodied by the aforementioned insurance policies.

67.

As a result of its misconduct, Defendant Insurer is liable to Plaintiff for all damages resulting from the breach.

### E. Unconscionable Contractual Provision.

**68.**

Petitioner repeats and re-alleges all preceding paragraphs.

**69.**

The aforementioned residential property policy excludes coverage for damage caused by pollution.

**70.**

Petitioner's damage is caused by Chinese drywall. The pollution exclusion is not applicable to the cause of loss complained of herein.

**71.**

Petitioner maintains that the enforcement of the pollution exclusion in this circumstance would be unconscionable and violative of public policy. Defendant Insurer should be prohibited from "splitting" the damaging effects from the same source. As a result, the residential property policy should cover all damage as comtemplated by the parties.

### F. Total Loss: La. Rev. Stat. § 22:695.

**72.**

Petitioner repeats and re-alleges all preceding paragraphs.

**73.**

Petitioner's policies are known under the law as a "valued policy" in that Defendant Insurer placed a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy.

**74.**

Petitioner's properties sustained a total loss as defined by Section 695

## JURY DEMAND

75.

Petitioners demand a trial by jury.

## PRAYER

**WHEREFORE,** Petitioners pray that the Defendants be served with process, and that after due proceedings are had, a judgment be entered in favor of the Petitioners and against the Defendants, jointly and severally, for (i) damages, (ii) attorneys fees, (iii) costs, (iv) post-judgment and pre-judgment interest at the maximum rate allowable at law, (v) treble and/or punitive damages in an amount to be determined at trial, (vi) all statutory damages, (vii) disgorgement of Defendants' profits from the sale of the drywall, (vii) reimbursement for all costs and expenses insured in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal and equitable relief to which Plaintiffs may be entitled; (ix) diminution in value of the home; (x) pain and suffering, inconvenience, additional living expenses, and emotional distress; (xi) any and all other just and equitable relief that this Court determines just and equitable under state and federal law.

Respectfully Submitted,

*[signature]*

Berniard Law Firm
Jeffrey P. Berniard (29088)
625 Baronne St.
New Orleans, La. 70113
Phone :504-527-6225
Fax 504-617-6300
Email: Jeffberniard@laclaim.com
Attorneys for Petitioners