UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | CASE NO. 2:09-MDL-2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to: Vu (10-930)** | * | |
| | * | MAGISTRATE WILKINSON |

**HOMESITE INSURANCE COMPANY'S MEMORANDUM
IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS
IN COMPLIANCE WITH COURT'S JULY 1, 2010 ORDER**

Defendant Homesite Insurance Company ("Homesite") submits this Memorandum in

Support of its Rule 12(b)(6) Motion to Dismiss.  As shown below, Homesite is entitled to

judgment as a matter of law dismissing plaintiffs' claims with prejudice because their claims for

damages caused by defective Chinese drywall are not covered under Homesite's homeowners

policy.  Two recent decisions directly addressing the same issues presented here both held such

damages are not covered under a homeowners policy.  *See Travco Ins. Co.  v. Ward*, No. 10-14,

2010 WL 2222255 (E.D. VA. June 3, 2010) (holding that homeowners policy's latent defect,

faulty materials, corrosion and pollution exclusions applied to bar coverage for plaintiff's claims

for damages due to defective Chinese drywall); *Ross v. C. Adams Construction & Design,

L.L.C.,* No. 676-185 (La. Dist. Ct., Jefferson Parish, Apr. 14, 2010) (granting homeowners

161043

insurer's summary judgment finding that policy did not cover damages due to defective Chinese drywall). Just as in *Travco* and *Ross*, this Court should also find that plaintiffs' claims for damages due to the presence of Chinese drywall in their home are not covered under their Homesite homeowners policy.

## I.     <u>BACKGROUND</u>

### A.    <u>Plaintiffs' Claims</u>.

Jessie Vu and Kristie Mai ("Vu") filed this class action complaint seeking a declaratory judgment that Homesite is obligated to provide coverage under its homeowners policies to insureds who made claims for damages to their homes caused by Chinese manufactured drywall. Rec. Doc. No. 1, Class Action Complaint, Introductory Paragraph. Vu alleges that beginning in the Spring of 2009, Vu and class members became aware of the potential damaging effects of Chinese manufactured drywall and subsequently discovered their properties were constructed using Chinese manufactured drywall, which Vu alleges, caused, and continues to cause, physical loss and damage to their properties and contents. *Id.* at ¶ 19. Vu further alleges the "Chinese drywall emits compounds <u>that cause rapid corrosion</u> of air-conditioner coils, copper tubing, electrical wiring, computer wiring and other household items." *Id.* at ¶20 (emphasis added). Vu complains that Homesite unjustifiably denied their claims based upon three exclusions, citing the policies' pollution exclusion, the wear and tear, inherent vice and/or latent defect exclusion and the materials defect and/or faulty workmanship exclusion (hereinafter referred to as "faulty materials exclusion"). *Id.* at ¶ 31-36. Vu seeks declaratory

relief declaring that these exclusions are inapplicable to damage arising from Chinese drywall. *Id.* at ¶ 37.  Vu also asserts claims for bad faith and seek injunctive relief.  *Id.* at ¶ 38-53.

**B.**   **Homesite's Homeowners Policy**.

Homesite issued a homeowners policy to Vu providing certain coverage for their residence located at 11342 Pressburg Street, in New Orleans, Louisiana, with a policy period of May 23, 2008 through May 23, 2009, Policy No. 30686469 ("hereinafter the "Policy").  Exh. 1, Certified Copy of Homesite Insurance Company Policy No. 30686469.[1]   The Policy provides property coverages consisting of Coverage A—Dwelling, Coverage B—Other Structures, and Coverage C—Personal Property.[2]  The Insuring Agreement of the Policy for Coverages A and B provides in pertinent part:

> **Coverage A-Dwelling and Coverage B-Other Structures**
>
> We insure against risk of direct loss to property described in Coverages A and B **only if that loss is a physical loss** to property.  We do not insure, however, for loss:
>
> 1. . . . .
> 2. Caused by:
>     a. . . .
>     e.  Any of the following:
>         (1) . . . .
>         (2) Inherent vice, **latent defect**, mechanical breakdown;
>         (3) smog, rust or other **corrosion**, mold, wet or dry rot;
>         (4) . . . .

---

[1]   Homesite's Policy issued to the Plaintiffs here is an Insurance Services Office, Inc. ("ISO") Form Policy, Form No. HO 00 03 04 91, 1990.

[2]   Under Coverage A, the Policy covers "the dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling. . . ."  Exh. 1, Policy, p. 2. Coverage B covers "other structures on the 'residence premises' set apart from the dwelling by clear space. . . ."  *Id.*  Under Coverage C, the Policy covers "personal property owned or used by an 'insured' while it is anywhere in the world."  *Id.*

3

(5) **Discharge, dispersal, seepage, migration, or release or escape of pollutants** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. . . .

3. Excluded under Section I –Exclusions.

Under items 1. And 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

Exh. 1, Policy, p. 6 (emphasis added).

The Policy also provides under Section I-Exclusions:

2. We do not insure for loss to property described in Coverages A and B caused by any of the following.  However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.
a. . . . .
c. **Faulty, inadequate or defective**:
(1) . . . .
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) **Materials used in repair, construction**, renovation or remodeling; or
(4) . . .
of part or all of any property whether on or off the "residence premises."

Exh. 1, Policy, p. 8 (emphasis added).

The Policy provides personal property coverage under Coverage C, limited to damage

caused by certain enumerated named perils only:

**Coverage C-Personal Property**

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in Section I-Exclusions:

1. Fire and lightning.

4

2. Windstorm or hail. . . .
3. Explosion.
4. Riot or civil commotion.
5. Aircraft . . . .
6. Vehicles.
7. Smoke . . . .
8. Vandalism or malicious mischief.
9. Theft . . . .
10. Falling objects. . . .
11. Weight of ice, snow or sleet. . . .
12. Accidental discharge or overflow of water or steam. . . .
13. Sudden and accidental tearing apart, cracking, burning or bulging. . . .
14. Freezing. . . .
15. Sudden and accidental discharge from artificially generated electrical current. . . .
16. Volcanic eruption . . . .
17. By earthquake . . . .

Exh. 1, Policy, p. 7.

## II.  LAW AND ARGUMENT

### A.    Standard Under Rule 12(b)(6).

In reviewing a Rule 12(b)(6) motion to dismiss, courts are required to follow a two-step process: (1) identify and disregard all legal conclusions in the plaintiff's complaint; and (2) determine whether the factual allegations plausibly suggest a defendant's liability. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n. 5 (2007).  In addition, courts "do not accept as true conclusory allegations, unwarranted factual inferences or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (*quoting Poltkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider documents referred to in the petition or any document central to its claim. Because the insurance policy is referred to in Vu's Complaint here and central to their claim, this court may properly consider and apply the Policy

under Rule 12(b)(6).  *Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 205 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (approving defendants' attachment of insurance contracts to their motions to dismiss noting that where "the contracts were referred to in the complaints, and the contracts are central to the plaintiff's claims, we may consider the terms of the contract in assessing the motions to dismiss.")

In analyzing insurance coverage issues, Louisiana courts recognize that an insurance policy is a contract between the parties and should be construed employing the general rules of contract interpretation as set forth in the Louisiana Civil Code.  *See, e.g., Comeaux v. State Farm Fire & Cas. Co.*, 986 So. 2d 153, 157 (La. App. 5 Cir. 2008).  Interpretation of a contract is the determination of the common intent of the parties.  *See Radcliffe v. Zip Tube Sys. of La., Inc.*, No. 2007 CA 1801, 2008 WL 4003273, at *6 (La. App. 1 Cir. 2008); La. Civ. Code art. 2045.  To determine the parties' intent, the court should consider all parts of the contract together, ensuring that each provision is given effect and none is rendered meaningless.  *See Millenium Petrochem., Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 342 (5th Cir. 2004). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.  *See Radcliffe*, 2008 WL 4003273, at *6; *Naquin*, 943 So. 2d at 1161; La. Civ. Code art. 2046.  If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *In re Katrina Canal Breaches*, 495 F.3d 191, 208 (5th Cir. 2007).

**B.      Homesite's Policy Does Not Cover Vu's Claim for Losses To Their Dwelling.**

Vu has the burden of proving any property damage they suffered falls within the terms of their policy's coverage grant.  *See, e.g., Tunstall v. Stierwald*, 809 So. 2d 916, 919 (La. 2002).[3] The insurer bears the burden of proving exclusions from coverage. *Id.* Once the insurer has established that the claimed loss is excluded, the insured bears the burden of proving the applicability of any exception to the exclusion.  *See Perrien v. State Farm Ins. Co.*, Civ. No. 06-8087, 2008 WL 2705455, at *6 (E.D. La. July 9, 2008) (Duval, J.).[4]

Here, to the extent VU seeks to recover the cost to repair and replace the drywall itself, Vu fails to meet their burden to show that this alleged property damage falls within the terms of the Policy's coverage because they cannot show a physical loss to the drywall itself as required by the Policy.  In any event, Vu's claims for damage are excluded from coverage under four different Policy exclusions: (1) the latent defect exclusion; (2) the corrosion exclusion; (3) the pollution exclusion; and (4) the faulty materials exclusion.  Accordingly, Homesite's Policy does not provide coverage for Vu's claims.

**i.      Vu's Alleged Damage To the Drywall Itself Does Not Constitute A Physical Loss To Property.**

Despite Vu's general allegations that the Chinese drywall caused and continues to cause physical loss and damage to their property and contents, Vu themselves admit that "the <u>drywall itself is not damaged</u> or defective relative to the expected performance of non-defective drywall."

---

[3]      See also *Whitham v. Louisiana Farm Bureau Cas. Ins. Co.*, -- So. 3d --, 2010 WL 1462946, *2 (La. App. 2 Cir. Apr. 14, 2010); *Lamar Advertising Co. v. Continental Cas. Co.*, 396 F.3d 654, 665 n. 10 (5th Cir. 2005).

[4]      *See also Broussard v. State Farm Fire & Cas. Co.*, Civ. No. 06-8084, 2007 WL 2264535, at *7-8 (E.D. La. Aug. 2, 2007) (Vance, J.); *Ferguson v. State Farm Ins. Co.*, Civ. No. 06-3936, 2007 WL 1378507, at *5 (E.D. La. May 9, 2007) (Berrigan, J.).

161043

Class Action Complaint, ¶ 36, Rec. Doc. 1. (emphasis added).  Vu further concedes that "Chinese manufactured drywall causes damage to other items but is itself undamaged."  *Id.* (emphasis added). Because it is undisputed that the drywall is not damaged, there is no physical loss to property as required by the Policy and, therefore, any claim Vu would have for repair and replacement of the defective drywall would not trigger coverage under the Policy.

Under the Policy's Insuring Agreement, coverage is only provided for physical losses:

> We insure against risk of direct loss to property described in Coverages A and B **only if that loss is a physical loss to property**.

Exh. 1, Policy, p. 6.  Because the phrase "physical loss" is not defined in the Policy, this Court must interpret the words according to their "generally prevailing meaning."  La. Civ. Code art. 2047; *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 193 (La. 2008).  A leading insurance treatise explains that "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."  10 Couch on Insurance § 148:46 (3d ed. 1998).

Consistent with this understanding, the United States Fifth Circuit has held, under Louisiana law, "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state – for example, the car was undamaged before the collision dented the bumper."  *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990).  In *Trinity*, the court considered whether a policy covering "all risks of physical loss or of damage to the subject matter" would

8

cover the cost incurred to correct a shipbuilder's faulty workmanship in misaligning two sections of the ship's hull during construction.  *Id.* at 267-68.  The Fifth Circuit held that "the parties, by their language 'physical loss or damage', did not intend to cover the cost of repairing faulty initial construction."  *Id.* at 272.  It explained that coverage would potentially exist for "accidents resulting from defective design or workmanship," if not excluded, "but not the cost of repairing the defect itself."  *Id.* at 271.

More recently, applying the same analysis, the Fifth Circuit again refused to find coverage where the insured's claim for damages lacked the requisite "physical loss" to property. *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co*., 181 Fed. Appx. 465, 2006 WL 1489249 (5th Cir. May 25, 2006).  In *Hartford*, the insured gas company sought coverage under property insurance policies covering natural gas produced by certain designated wells.  The insured learned some of the gas had been diverted so that it was reinjected into the gas stream and, as a result of this recirculation, gas which had already been metered and purchased by the insured gas company was recirculated and hence remetered and resold to the insured.  The insured submitted a proof of loss in the amount of $557,919 to recoup a portion of this loss under its Hartford policies.  The court found that no coverage existed because, *inter alia,* the policies' "direct physical loss" requirement was not met:

> [T]he gas from the Watson Wells was not physically lost or damaged in any way before it was eventually returned to MVG after multiple passes through the meter.   In this sense, . . . the covered property was not returned to the insured party in a damaged state.   Therefore, MVG's proof of loss claim lacked the

161043

requisite "direct physical loss of or damage to" the covered property under the insurance policies.

*Id.* at 470-71.[5]

Courts across the nation have reached the same conclusion. *See Whitaker v. Nationwide Mut. Fire Ins. Co.*, 115 F. Supp. 2d 612 (E.D. Va. 1999) (holding "plaintiff's claims for repair of the construction defects themselves are not covered by the policy because they do not allege claims for direct physical loss," and noting that collateral damage to non-defective property that was caused by the construction defects could potentially be covered "as direct physical loss under the policy, absent the applicability of any exclusions.");[6] *Tocci Bldg. Corp. v. Zurich Am. Ins. Co.,* 659 F. Supp. 2d 251, 259-60 (D. Mass. 1991) (cost of grouting undamaged portion of insured's wall, which had not collapsed during rainstorm, was not covered because it did not sustain "direct physical loss").[7]

Here, it cannot be disputed based on Vu's allegations that the drywall sustained no visible or tangible damage, and it did not change state from an initial satisfactory condition to an unsatisfactory condition due to an external cause as required to constitute "physical loss" as

---

[5]   *See also Maister Assocs. v. State Farm Fire & Cas. Co.,* 2009 WL 926981, *3 (E.D. La. Mar. 31, 2009), *aff'd,* 350 Fed. Appx. 978 (5th Cir. 2009) ("To be entitled to recover insurance proceeds for damage to the premises, there must be an accidental event that results in a direct physical loss that is not otherwise excluded by the policy").

[6]   Although the court in *Travco* found plaintiff's allegations of damage due to Chinese drywall constituted direct physical loss under the policy at issue, the court did not address the line of authority from the Fifth Circuit detailed above which is binding in this case.

[7]   *See also Wyoming Sawmills, Inc. v. Transportation Ins. Co.*, 578 P.2d 1253, 1256 (Or. 1978) (holding that, under a liability insurance policy, insurance company did not have duty to defend insured for expenses incurred in removing defective studs from the building because use of the word "physical" in definition of "property damage" negated "any possibility that the policy was intended to include 'consequential or intangible damage . . . .'")

10

defined by the Fifth Circuit.  Thus, to the extent Vu seeks to recover the cost of removing and replacing the drywall, such costs are not covered because there is no "physical loss."

    **ii.**    **The Policy Exclusions Bar Coverage For Vu's Damages Caused By Defective Chinese Drywall.**

    Even if Vu's claims for damages due to the defective drywall constituted "physical loss" as required to trigger coverage under the Policy, four different exclusions apply to bar coverage for Vu's claims, any one of which requires the granting of this motion: (1) the latent defect exclusion; (2) the corrosion exclusion (3) the pollution exclusion; and (4) the faulty materials exclusion.  As noted above, two recent decisions enforced similar exclusions to bar coverage in similar Chinese drywall cases.  *See Travco*, 2010 WL 2222255 (holding that homeowners policy's latent defect, faulty materials, corrosion and pollution exclusions applied to bar coverage for plaintiff's claims for damages due to defective Chinese drywall); *Ross.,* No. 676-185 (La. Dist. Ct., Jefferson Parish, Apr. 14, 2010) (granting homeowners insurer's summary judgment finding that policy did not cover damages due to defective Chinese drywall).  This Court should reach the same result.

    **a.**    **The Latent Defect Exclusion Applies to Bar Coverage**:

    Vu's claims for damages caused by the Chinese drywall are barred by the Policy's latent defect exclusion, which excludes coverage for loss caused by "inherent vice, latent defect, mechanical breakdown." Exh. 1, Policy, p. 6.

    In *Travco,* the court addressed the application of the same latent defect exclusion to an insured's claim for damages due to Chinese drywall, and held the latent defect exclusion barred coverage for the insured's claims.  *Travco*, 2010 WL 2222255, at *11.  In interpreting the latent

defect exclusion, the court noted that a latent defect must be "integral to the damaged property by reason of its design or manufacture or construction." *Id.* The court reasoned that the insured's residence "contains defective drywall that is off-gassing and damaging other components" of the residence, and the drywall is "plainly integral to the Residence's manufacture and construction." *Id.* Accordingly, the Court found "the damage to the Ward Residence is a loss caused by a latent defect." *Travco,* 2010 WL 2222255, *11. Similarly, in *Ross,* where, as noted, the court granted summary judgment to Louisiana Citizens in connection with a Chinese drywall coverage litigation, Louisiana Citizens relied on a latent defect exclusion similar to Homesite's, arguing the problem with Chinese drywall (*i.e.,* its gas emitting characteristic) is not visible or readily discoverable, hence falls within the latent defect exclusion.

The result in *Travco* and *Ross* is supported by Louisiana law. Louisiana courts interpreting the term "latent defect" have defined it as "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." *Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328, 335 (La. App. 3d Cir. 1984) (quoting *Walker v. Travelers Indemnity Co.*, 289 So.2d 864, 870 (La. App. 4th Cir. 1974)).[8] In *Nida*, soil movement caused cracking of the foundation and the interior and exterior walls of the insured's house. *Id.* at 329. Because the foundation had not been built to withstand ordinary soil movement, the Third Circuit found that the vice in the construction of the foundation fell within

---

[8]     *Accord Barbier v. Wade*, 517 So.2d 321, 325 (La. App. 1st Cir. 1987); *Shields v. Penn. Gen. Ins. Co.*, 488 So.2d 1252, 1255 (La. App. 4th Cir. 1986).

the definition of latent defect and held the damage was excluded from coverage under a latent defect exclusion.  *Id.* at 335.  The court explained "the defendant-insurer simply was not a guarantor of the constructor's building performance."  *Id.*

Jurisprudential authority nationwide also supports a similar interpretation of the latent defect exclusion.  *See, e.g., City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co.*, 190 F. Supp. 2d 663, 688 (D. Vt. 2002), *aff'd* 346 F.3d 70 (2d Cir. 2003) (surveying authority and concluding that "[i]n the ordinary sense of the term, 'latent defect' means a defect that is hidden, or which could not have been discovered by any known or customary test or examination"); *U.S. West v. Aetna Cas. & Sur. Co.*, 117 F.3d 1415 (table), 1997 U.S. App. LEXIS 17747, at *14-15 (4th Cir. 1997) ("[A]s a matter of the literal language of this term, 'latent defects' are only those which are not readily discoverable and integral to the damaged property by reason of *its* design or manufacture or construction.").  Applying a similar definition of latent defects, the Illinois Appellate Court has held that the latent defect exclusion precludes coverage of claims relating to asbestos-containing construction materials.  In *Board of Educ. v. Int'l Ins. Co.*, 684 N.E.2d 978 (Ill. App. 1997), the plaintiff school board sought coverage for the cost of removing paint, ceiling tile, floor tile, insulation and other materials made using asbestos fibers, claiming that these building materials were releasing hazardous substances into the air.  *Id.* at 979-80.  Rejecting the school board's arguments for coverage, the court explained that "because the presence of asbestos material in the school buildings is not detectable by the naked eye and is not apparent to any but the most searching analysis, it is a latent defect subject to the latent defect exclusion."  *Id.* at 983.

161043

Here, the damage to the Vu's home resulting from the "off-gassing" of the Chinese drywall is excluded by the latent defect exclusion because the defect in the Chinese drywall—its emission of gas—is concealed from knowledge and sight and would not be revealed by a reasonable, customary inspection. Vu themselves allege that they only "became aware of the potential damaging effects of Chinese manufactured drywall through various media reports, primarily through local television and print news" and later discovered their properties were constructed using Chinese manufactured drywall. Class Action Complaint, ¶ 19-20. Accordingly, under Louisiana's definition of the latent defect exclusion and as the court in *Travco* concluded, the latent defect exclusion applies to bar coverage for Vu's claims for damage due to Chinese drywall.

In an attempt to avoid application of the latent defect exclusion, Vu alleges the exclusion was "intended to apply to expected losses relating to the longevity of a given material and intended to exclude losses which must inevitably happen over time and/or will inevitably occur due to a defect with the item." Class Action Complaint, ¶ 35. Although Vu asserts they suffered direct physical loss (¶19), for purposes of the latent defect exclusion, they also assert just the opposite by alleging that "the drywall itself is not damaged" and "the Chinese manufactured drywall causes damage to other items but is itself undamaged." *Id.* The *Travco* court rejected this same flip-flop argument on the latent defect exclusion, noting the "inherent contradiction in arguing that property has suffered a 'direct physical loss' while simultaneously maintaining that the property is not damaged." *Travco*, 2010 WL 2222255, at *12. The *Travco* court also disagreed with the insured's proposed interpretation of the latent defect exclusion as applying to

14

expected losses, finding instead that the latent defect exclusion is "intended to remove the risk for losses that result from flaws in property that are undetectable, and hence unexpected." *Id.* Just as in *Travco*, Vu's arguments here regarding the intent of the latent defect exclusion are likewise without merit and should be disregarded.

### b.   The Corrosion Exclusion Applies to Bar Coverage

Vu's claims for damages caused by the Chinese drywall are also barred by the Policy's corrosion exclusion, which excludes coverage for loss caused by "smog, rust or other corrosion, mold, wet or dry rot." Exh. 1, Policy, p. 6.

Applying an identical corrosion exclusion, the court in *Travco* held that the corrosion exclusion unambiguously applied to exclude coverage for the insured's claims for losses to the structural, mechanical, and plumbing components of the residence due to Chinese drywall. *Travco*, 2010 WL 2222255, at *14-15.  In support of its holding, the court noted that most jurisdictions enforce corrosion exclusions regardless of what caused the corrosion or how suddenly it occurred.  *Id.*  The court also relied on the ordinary meaning of corrosion—"the action or process of corroding."  *Id.*   Applying this definition, the court found that because it was undisputed that the damage to the structural, mechanical and plumbing components of the residence was caused by the "action or process of corroding," the corrosion exclusion applied. *Id.*

As the *Travco* court recognized, most courts, including those in Louisiana, interpret similar corrosion exclusions broadly, to exclude coverage for all types of corrosion, however formed. For example, in *Central La. Elec. Co. v. Westinghouse Elec. Corp.,* 579 So. 2d 981 (La.

1991), the boiler and machinery policy at issue provided coverage for loss directly caused by an "accident," but stated an accident "shall not mean . . . corrosion." *Id.* at 984. The court held, based on this provision, that the policy did not cover damaged turbine blades that had cracks resulting from corrosion. *Id.* at 985-86 (further stating "the cracks would not have occurred had the blades not been weakened by the existence of pitting corrosion," and that "corrosion pitting is simply one of many forms of corrosion," which was expressly excluded from the definition of "accident"); *See also Gilbane v. Altman Co.*, 04AP-664, 2005 WL 534906 (Ohio App 10 Dist. Mar. 8, 2005) (holding the rust and corrosion exclusion in a builder's risk policy barred coverage for property damage to the building's metal surfaces that was caused by the negligence of a contractor in failing to properly dilute acid product used in an etching process, which acid vapor reacted with the metal surfaces and formed corrosive reactions)*; St. Paul Fire & Mar. Ins. Co. v. Lago Canyon, Inc.*, 06-60889, 2009 WL 4855484 (S.D. Fla. Dec. 9, 2009) (holding no coverage existed for loss of vessel where the proximate cause of the loss was failure of hose barb that resulted from corrosion when corrosion was a cause of loss excluded under the policy); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 594-95 (7th Cir. 1987) (holding corrosion exclusion precluded coverage for repairing holes in a steel reactor used for separating chemicals that resulted from the condensation of sulfuric acid on the inner shell of the reactor).

Two recent federal court decisions applying Louisiana law enforced similar exclusions to preclude coverage for equipment that rusted as a result of Hurricane Katrina. In *Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, Civ. Nos. 06-2516 & 06-3184, 2008

U.S. Dist. LEXIS 69972 (E.D. La. Sept. 17, 2008), the insured's roof was damaged during the hurricane, leaving its equipment exposed to the elements.  Judge Englehardt granted summary judgment to the insurer, holding that, under an exclusion for "loss or damage caused by or resulting from rust," there was no coverage for rust damage resulting from water infiltration through the damaged roof.  *Id.* at *4-5.  Judge Englehardt emphasized that the policy language unambiguously "excludes *all* loss or damage from rust or dampness of atmosphere."  *Id.* (emphasis added).  *See also Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, Civ. No. 06-8710, 2008 U.S. Dist. LEXIS 18335, at *8 (E.D. La. March 10, 2008) (Porteous, J.) (policy excluded "loss or damage caused by or resulting from . . . rust, corrosion"; court granted summary judgment to insurer on claim for rust and mold damage to second floor of building caused by moist environment from flooding on first floor, holding that "evidence of rust and mold to Plaintiff's equipment is immaterial, as the Policy expressly excludes rust and mold").

Here, Vu's own allegations allege corrosion as the cause of damage to various components of their residence: "[t]he Chinese drywall emits compounds **that cause rapid corrosion** to air-conditioner coils, copper tubing, electrical wiring, computer wiring, and other household items."  Class Action Complaint, ¶ 19 (emphasis added).  Moreover, Vu's allegations regarding damage due to corrosion are consistent with this Court's detailed discussion, in lawsuits against Chinese drywall manufacturers and/or distributors, regarding the corrosive nature of the damages allegedly caused by Chinese drywall.  *See Germano, et al. v. Taishan Gypsum Co. Ltd., et al.,* No. 09-6687 (E.D. La. Apr. 8, 2010) and *Hernandez v. Knauf Gips KG, et al.,* No. 09-6060 (E.D. La. Apr. 27, 2010). For example, this Court concluded the *Germano* plaintffs' homes were exposed to a corrosive environment produced by Chinese drywall, finding

17

the level of corrosive sulfur gases in plaintiffs' homes exceeded the safe levels established by various recognized standards. *Germano,* slip. op. at 17-26. This Court made similar damages findings in *Hernandez,* again discussing the corrosion caused by the Chinese drywall due to its higher concentration of strontium and levels of elemental sulfur, and the corrosive effects of sulfur on copper and silver, which are prevalent in most homes and buildings. *Hernandez,* slip op. at 15-16. This Court noted the evidence was "conclusive that the corrosion in the Hernandez home was proximately caused by exposure to Chinese drywall," and explained that corrosion on copper and silver conducting surfaces increases the resistance of the electrical current, which causes either complete failure or excessive heating in the connection. *Id.* at 17.

It cannot be disputed based on Vu's allegations and this Court's prior findings regarding the nature of Chinese drywall that the alleged damage to Vu's air-conditioner coils, copper tubing, electrical wiring, computer wiring, and other household items was said to be caused by corrosion formed as a result of the sulphur emissions from the Chinese drywall. Accordingly, under the great weight of authority detailed above, however the corrosion was formed or whatever caused it, Vu's damages result from corrosion and are plainly and unambiguously excluded from coverage by the corrosion exclusion.

### c.      The Pollution Exclusion Applies to Bar Coverage

Vu's claims are also barred by the Policy's pollution exclusion, which excludes loss caused by "discharge, dispersal, seepage, migration, or release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy." The Policy defines "pollutants" as "any solid, liquid,

gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. . . ." Exh. 1, Policy, p. 6.

The *Travco* court ruled on this exact issue and held the gas emitted by Chinese drywall constituted a pollutant under a pollution exclusion identical to the one in Homesite's Policy. *Travco*, 2010 WL 2222255 at *18. In doing so, the court relied upon both state and federal authorities that recognize sulphuric gases as pollutants. *Id.* (citations omitted). Moreover, the court found that under any reasonable definition of the broad terms used in the Policy's definition of "pollutants," the gases released into the insured's home qualify as irritants and contaminants. *Id.* at *18. The *Travco* court equated the Chinese drywall's "off-gassing" to dispersing and discharging of sulfuric gases. *Id.* Accordingly, the court held that the pollution exclusion barred the insured's claims for damages caused by discharge of gas from the drywall. *Id*. at *21.

In addition to the *Travco* decision, numerous courts have enforced contamination and/or pollution exclusions in homeowners policies for claims similar to Vu's claims here. For example, a federal court applying Pennsylvania law enforced an unambiguous pollution exclusion and held that alleged damage to the house from fumes from sealant that migrated into insured's house was excluded. *Brown v. Am. Motorists Ins. Co.*, 930 F. Supp. 207, 208-209 (E.D. Pa. 1996), *aff'd*, 111 F.3d 125 (3d Cir. 1997). Similarly, an Ohio court held a homeowners' claim for loss of use caused by raw sewerage discharge that contaminated groundwater was excluded under contamination/pollution exclusion of homeowners policy. *Siemientkowski v. State Farm Ins. Co.*, No. 85323, 2005 WL 1994486 (Ohio Ct. App. Aug. 18, 2005); *see also*

161043

*Wakefield Pork, Inc. v. RAM Mut. Ins. Co.*, 731 N.W.2d 154, 161 (Minn. App. 2007) (holding that a complaint alleging "harm from the '[g]ases, hydrogen sulfide among others,' and the 'noxious and offensive odors' that emanated from appellant's pig farm . . . alleged damage from a substance that is plainly covered by the insurance policy's pollution exclusion").[9]

Here, Vu alleges that the Chinese drywall "emits compounds that cause rapid corrosion." Class Action Complaint, ¶ 19.  Just as the *Travco* court concluded, the sulphur-containing gaseous compounds emitted from the Chinese drywall in Vu's home, likewise, meets the definition of pollutants under the Policy because they are a gaseous irritant or contaminant.  In addition, in line with the *Travco* court's finding, the "off-gassing" or emission of sulphur compounds from the Chinese drywall plainly constitutes a discharge, dispersal, seepage, migration, or release or escape under the pollution exclusion.  Therefore, the Policy's pollution exclusion bars coverage because the Vu's damage was caused by the release or discharge or a pollutant, *i.e.*, sulphuric gas.

### d.        The Faulty Materials Exclusion Applies to Bar Coverage

Vu's claims for damages caused by the Chinese drywall are also barred by the faulty materials exclusion of the Policy, which excludes loss caused by faulty, inadequate or defective materials:

---

[9]        *See also McQuade v. Nationwide Mut. Fire Ins. Co.*, 587 F. Supp. 67, 68 (D. Mass. 1984) (applying exclusion to homeowner's loss caused by chemicals sprayed by exterminator); *Hartory v. State Auto. Mut. Ins. Co.*, 552 N.E.2d 223, 225 (Ohio App. 1988) (applying exclusion to homeowners' loss caused by methane gas from neighboring landfill).

161043

**Faulty, inadequate or defective**:

> (1) . . . .
>
> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>
> (3) Materials used in repair, construction, renovation or remodeling; or
>
> (4) . . .
>
> of part or all of any property whether on or off the "residence premises."

Exh. 1, Policy, p. 8.

Once again, the *Travco* court considered the identical faulty materials exclusion and held that it applied to bar coverage for the insured's damages due to Chinese drywall.  *Travco*, 2010 WL 2222255, at *12-13. In *Travco*, the court rejected the same arguments Vu alleges here—that the faulty materials exclusion does not apply because the drywall is fit for its intended use— explaining "that an item cannot be faulty or defective if it is serving its intended purpose is contrary to ordinary English usage."  Class Action Complaint, ¶ 36. The court further explained that "[I]n common parlance, the word 'faulty' is not limited to faults that prevent an entity from accomplishing its intended purpose and [sic] itself."  *Id.*   The court reasoned that the same principle applied to the word "defective."  *Id.*   The *Travco* court supported its analysis with a plethora of state and federal decisions in which courts have held that the faulty materials exclusion can apply even when the property in question may be serving its intended purpose.  *Id.* (citations omitted).

In addition to the guidance the *Travco* court provided on the application of the faulty materials exclusion to Chinese drywall, the United States Fifth Circuit has interpreted the faulty materials exclusion in an all risk policy, explaining the exclusion applies to "a defect in the way

some part of the (insured property) is constructed," explaining "it is the *quality of the product* which is excluded from coverage and not damage *to* the product caused by negligence during the construction process." *Alton Ochsner Medical Foundation v. Allendale Mut. Ins. Co.*, 219 F.3d 501 (5th Cir. 2000) (citations omitted). In another decision, this Court enforced a faulty materials exclusion to bar plaintiff's claim for rotted floor joists and piers caused by the use of untreated lumber and drainage and venting problems in construction of the home. *Holland v. Breaux*, No. 04-3028, 2005 WL 3542899 (E.D. La. Nov. 22, 2005). Consistent with this authority, courts nationwide have applied the faulty materials exclusion to preclude coverage for losses caused by the use of defective construction materials, such as materials that had been contaminated by exposure to radioactive materials,[10] the installation of an improper lining and insulation product,[11] the use of improperly treated cedar siding and shingles,[12] the installation of substandard residential piping,[13] the use of lumber infested with dry rot,[14] and the use of a

---

[10]   *Falcon Prods., Inc. v. Ins. Co. of Penn.*, 615 F. Supp. 37,39 (E.D. Mo. 1985), *aff'd* 782 F.2d 779 (8th Cir. 1986).

[11]   *Tom Harrison Tennis Ctr. Ltd. v. Indoor Courts of Am., Inc.*, No CA2002-03-034, 2002 WL 31859462, at *4 (Ohio App. Dec. 23, 2002).

[12]   *Carney v. Assurance Company of America*, Civ. No. 04-3434, 2005 WL 899843 (D. Md. Apr. 19, 2005), *aff'd* 177 F.App'x 282 (4th Cir. 2006) (per curiam).

[13]   *Rogers v. Unitrim Auto & Home Ins. Co.*, 388 F. Supp. 2d 638 (W.D.N.C. 2005).

[14]   *Sapiro v. Encompass Ins.*, No. C03-4587, 2003 WL 2496090, at *5 (N.D. Cal. Nov. 2, 2004).

161043

roofing asphalt that "was entirely unsuitable for the purpose" and necessitated the removal and replacement of the entire roof.[15]

Under this weight of authority, Chinese drywall that emits sulphuric gas that damages other property can only be considered to be a faulty, defective or inadequate material. As in *Travco*, the Chinese drywall cannot possibly be considered fit for its intended purpose as a component of a livable residence. Under the plain language of the Policy, the faulty material exclusion applies to bar coverage for Vu's claims.

C.     **Homesite's Policy Does Not Cover Vu's Claims for Losses to Personal Property.**

With respect to any claim for damage to personal property, Vu cannot meet their burden of showing coverage because there is no damage caused by one of the named perils as required by the Policy.  It is undisputed that any damage to Vu's personal property was not caused by any of the named perils listed under Coverage C.  Moreover, even if Vu could show the damage to their personal property was caused by a named peril under Coverage C, the loss would still be excluded under the latent defect, corrosion and pollution exclusions, as Coverage C is also subject to those same exclusions.  Accordingly, Vu cannot meet their burden to show they are entitled to coverage for any damage to their personal property under the plain terms of the Policy.

---

[15]     *Biebel Bros., Inc. v. United States Fid. & Guar. Co.*, 522 F.2d 1207, 1211 (8th Cir. 1975).

161043

## CONCLUSION

Homesite is entitled to judgment dismissing Vu's claims against it for damages due to the presence of Chinese drywall in their home because there is no coverage under its homeowners policy as a matter of law.  As a threshold matter, to the extent Vu seeks to recover for the cost to repair and replace the drywall itself,  Vu cannot prove they sustained a physical loss to the drywall so as to trigger coverage, as Vu themselves concede the Chinese drywall itself is undamaged.  Moreover, even if Vu are deemed to have sustained a physical loss, the pollution exclusion, latent defect exclusion, corrosion exclusion and faulty materials exclusion of the Policy each independently bar Vu's claims for damages caused by defective Chinese drywall, just as the courts in *Travco* and *Ross* concluded.  For these reasons, Homesite's Rule 12(b)(6) Motion to Dismiss should be granted and Vu's claims against it dismissed with prejudice.

Respectfully submitted,


*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Catherine Fornias Giarrusso, 29875
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, LLC
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:    (504) 589-9700
Facsimile:    (504) 589-9701

*Attorneys for Defendant Homesite Insurance
  Company*

161043

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of July, 2010.

/s/ Judy Y. Barrasso

_____

Judy Y. Barrasso, 2814

161043