TWENTY FOURTH JUDICIAL DISTRICT COURT

PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 676-185

DIVISION: "P"

### TERRENCE M. ROSS AND RHONDA B. ROSS

*VERSUS*

### C. ADAMS CONSTRUCTION & DESIGN, L.L.C, ET AL

FILED: April 14th, 2010          CODED  *[signature]*

**DEPUTY CLERK**

684
P1

### JUDGMENT

This matter came before this court on April 5, 2010, for hearing on a Motion For Partial Summary Judgment filed by plaintiffs, Terrence M. Ross and Rhonda B. Ross and against defendant, Louisiana Citizens Property Insurance Company and a Cross-Motion For Summary Judgment filed by defendant, Louisiana Citizens Property Insurance Company against plaintiffs. Following the hearing, the matter was taken under advisement.

Accordingly, when after having considered the pleadings filed, the law, evidence and argument of counsel:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion For Partial Summary Judgment filed by plaintiffs, Terrence M. Ross and Rhonda B. Ross and against defendant, Louisiana Citizens Property Insurance Company, be and is hereby **DENIED** at plaintiffs' cost.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Cross-Motion For Summary Judgment filed by defendant, Louisiana Citizens Property Insurance Company be and is hereby **GRANTED** at plaintiffs' cost.

**JUDGMENT READ, RENDERED AND SIGNED on this 14th day of April, 2010 at Gretna, Louisiana.**

CODED *[signature]*

**LEE V. FAULKNER, JR.**
**DISTRICT JUDGE**

CODED

ISSUED (3) 305 Not Signed mailed

DATE 4.14.10

KSims

IMAGED APR 1 5 '10

Deputy Clerk

**EXHIBIT**

1

# LEAKE & ANDERSSON, L.L.P.

### ATTORNEYS AT LAW
#### 1100 POYDRAS STREET
#### SUITE 1700
#### NEW ORLEANS, LA 70163-1701

TELEPHONE: (504) 585-7500
FACSIMILE: (504) 585-7775

JASON R. BONNET
jbonnet@leakeandersson.com
REPLY TO NEW ORLEANS OFFICE

P.O. DRAWER Z
LAFAYETTE, LA 70502
TELEPHONE: (337) 233-7430
FACSIMILE: (337) 233-8403

CHASE TOWERS, SUITE 800
600 JEFFERSON STREET
LAFAYETTE, LA 70501-6942

January 25, 2010
**Via Facsimile Only**

John T. Cullotta, Esq.
Hailey, McNamara, Hall,
  Larmann & Papale, LLP
One Galleria Blvd., Suite 1400
New Orleans, LA 70001
Fax: 504/836-6565

Raymond Pelleteri Jr., Esq.
Claudette Bienvenu, Esq.
Pelleteri & Weidorn, LLC
636 Carondolet Street
New Orleans, LA 70130
Fax: 504/523-2141

David A. Strauss, Esq.
Adam P. Massey, Esq.
King, Krebs & Jurgens,
P.L.L.C.
201 St. Charles Avenue,
5th floor
New Orleans, LA 70170
Fax: 504/582-1233

Richard G. Duplantier, Jr., Esq.
Lambert J. Hassigner, Jr., Esq.
Carlina C. Eiselen, Esq.
Jeffrey P. Green, Esq.
Galloway, Johnson, Tompkins, Burr
& Smith
701 Poydras Street, Suite 4040
One Shell Square
New Orleans, LA 70139
Fax: 504/525-2456

RE:     Ross v. C. Adams Construction/State Farm/Citizens Insurance
        24th JDC, No.: 676,185, Division "P"
        L&A File No.: 3670/39555

Dear Counselors:

Please find enclosed Plaintiffs' Motion for Partial Summary Judgment which is being filed today with the Court in the above-captioned matter.

Should you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Jason R. Bonnet

JRB/nn
Cp:/39555/All Counsel 04.doc#226

MEMBER **ALFA** INTERNATIONAL
THE GLOBAL LEGAL NETWORK

24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NUMBER: 676-185                                    DIVISION "P"

TERRENCE M. ROSS AND RHONDA B. ROSS

VERSUS

C. ADAMS CONSTRUCTION & DESIGN, L.L.C.,
STATE FARM MUTUAL INSURANCE COMPANY AND
LOUISIANA CITIZENS PROPERTY INSURANCE COMPANY

MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, come Terrence M. Ross and
Rhonda B. Ross, who hereby move for Partial Summary Judgment against Louisiana Citizens
Insurance Company on the issue of first-party insurance coverage owed by Louisiana Citizens to
Plaintiffs under policy number FH20007361013901-- for damages to Plaintiffs' residence due to
the presence of foreign drywall found in the residence—commonly referred to as Chinese
Drywall—for the reasons more fully stated in the accompanying memorandum in support. No
genuine issues of material fact remain germane to the issue of insurance coverage and Plaintiffs
are entitled to summary judgment as a matter of law.

WHEREFORE, Plaintiffs pray for Partial Summary Judgment in its favor and against
Louisiana Citizens Insurance Company, finding coverage under policy FH2007361013901
issued by Louisiana Citizens to Plaintiffs for the damages sustained to Plaintiffs residence due to
the presence of foreign drywall and for all other just and equitable relief.

Respectfully submitted:

DONALD E. MCKAY, JR. (#14207)
JASON R. BONNET (#28502)
LEAKE & ANDERSSON, LLP
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
Tel:    504-585-7500
Fax:    504-585-7775

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been delivered to all counsel of record by hand delivery, by e-mail, by telephonic facsimile transmission, or by depositing a copy of same in the United States Mail, first class postage prepaid, January 25th, 2010, at their last known addresses of record.

DONALD E. MCKAY, JR.

Cp:/39555/Motion for Summary Judgment.doc#219

JAN-25-2010 MON 05:08 PM LEAKE & ANDERSON LLP FAX NO.

24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NUMBER:  676-185                                    DIVISION "P"

TERRENCE M. ROSS AND RHONDA B. ROSS

VERSUS

C. ADAMS CONSTRUCTION & DESIGN, L.L.C.,
STATE FARM MUTUAL INSURANCE COMPANY AND
LOUISIANA CITIZENS PROPERTY INSURANCE COMPANY

MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

The issue presently before the court is whether Louisiana Citizens Insurance Company owes insurance coverage to its insured, Terrence and Rhonda Ross, for damages sustained to their residence due to the presence of Chinese drywall. Despite being provided with controlling Louisiana law to the contrary, Louisiana Citizens continues to deny Mr. and Mrs. Ross' claim citing the policy's total pollution and defective materials exclusions. As shown below, since the Rosses did not take part in polluting the environment and since they took no part in the selection, purchase or installation of the drywall, these exclusions do not apply and Louisiana Citizens' denial of coverage is in bad faith.

On August 29, 2005, Hurricane Katrina struck the New Orleans area completely destroying the family home of Terrence and Rhonda Ross. After losing everything, the Rosses found a newly renovated home to purchase located at 316 Woodvine Avenue in Metairie, Louisiana. The home was owned by C. Adams Construction & Design, L.L.C. ("C. Adams") which, upon information and belief, purchased the flooded home and performed the repairs subsequent to Hurricane Katrina and before the Rosses purchased the property. Included in those repairs done by C. Adams was installation of Chinese drywall throughout the house. Shortly after moving into and furnishing their new home, the Rosses began to experience repeated problems with the air conditioning systems. A repair man was called out to replace the air conditioning coils on three separate occasions.

Some time around March of 2009, the Rosses began to see media reports of problems caused by Chinese drywall imported in the country and installed in homes after Hurricane Katrina. According to these reports, the Chinese drywall could emit sulfuric gases causing corrosion to metals in the home. The reports further suggested that initial signs of the problem manifested themselves through failed air conditioning coils.

Louisiana Citizens issued a policy of homeowners insurance to the Rosses covering their residence. See Insurance Policy, attached hereto as Exhibit "A." Shortly after hearing these reports, the Rosses contacted their insurance agent seeking help from their insurer with the damages caused by the Chinese Drywall. The Louisiana Department of Health and Hospitals was also called to conduct an inspection of the home. Within the next couple of months, both Louisiana Citizens and DHH conducted inspections of the home. In May of 2009, the DHH issued its report finding the presence of Chinese Drywall and prevalent corrosion of plumbing, electrical wiring and other metals throughout the home. See report from Louisiana Department of Health and Hospitals attached hereto as Exhibit "B."

On March 20, 2009, Louisiana Citizens sent a Reservation of Rights letter denying coverage for faulty workmanship/defective materials. See Reservation of Rights Form attached hereto as Exhibit "C." On April 29, 2009, Louisiana Citizens switched its position this time denying coverage for damage caused, citing the policy's pollution exclusion. See correspondence from Louisiana Citizens dated April 29, 2009, attached hereto as Exhibit "D." After losing everything once during Hurricane Katrina and putting their lives back together, the Rosses were now being told that not only were they losing everything again, but this time the insurance company would not provide the coverage agreed upon in the insurance contract.

After being denying coverage, the Rosses retained the services of undersigned counsel seeking to obtain coverage. On June 23, 2009, undersigned counsel sent Louisiana Citizens a demand for payment citing controlling Louisiana law that the pollution exclusion did not apply. See correspondence to Louisiana Citizens attached hereto as Exhibit "E." On July 23, 2009, undersigned counsel received another coverage denial from Louisiana Citizens, prompting this lawsuit. See correspondence attached hereto as Exhibit "F." As shown below, since the Rosses did not own the home at the time the drywall was installed, the exclusions cited by Louisiana

Citizens do not apply. Coverage, therefore, exists and the Rosses are entitled to partial summary judgment in its favor as a matter of law on the issue of insurance coverage.

## LAW

It is well settled in Louisiana law that once an insured shows that coverage is afforded under a policy, the insurer bears the burden of proving the applicability of any exclusionary clause within the policy. *Doerr v. Mobile Oil Company*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124. Importantly, when making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage." *Id.*

Louisiana Citizens issued an "all-risk" policy to the Rosses for any direct physical loss to the property not otherwise excluded therein. It states-

Section I- PERILS INSURED AGAINST
A.   Coverage A- Dwelling And Coverage B – Other Structures
   1.   We insure against risk of direct physical loss to property
   described in Coverages A and B.

To its credit, Louisiana Citizens has never argued that the Rosses have did not suffer a direct physical loss to the property. As shown in the Louisiana Department of Health and Hospitals report—and confirmed by Citizens during their own independent inspections-- the Rosses' home exhibited substantial evidence of metal corrosion caused by the presence of foreign Chinese drywall.

Louisiana Citizens has denied coverage citing various ambiguous exclusions in the policy. As shown below, Louisiana Citizen's reliance on these exclusions smacks of bad faith as controlling appellate courts have already found that the exclusions do not apply under the facts presented in this case.

**A.   Pollution Exclusion does not apply since the Rosses did not "pollute" the property.**

Louisiana Citizens first denies the Rosses' valid claim based on the "total pollution exclusion" contained in the policy. It reads as follows:

2.   We do not insurer, however, for loss:
   c.   Caused by:
      (6)   Any of the following:
         (e)   Discharge, dispersal, seepage, migration,
         release or escape of pollutants unless the
         discharge, dispersal, seepage, migration,

3

> release or escape is itself caused by a Peril Insured Against named under Coverage C.
>
> Pollutants mean any solid, liquid, gaseous or thermal irritant of contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The total pollution exclusion has been well litigated in Louisiana. In 2000, the Louisiana Supreme Court issued its well-known seminal ruling substantially limiting the scope of the pollution exclusion. *Doerr v. Mobile Oil Company*, 2000-0947 (La. 12/19/00), 774 So. 2d 119. In short, the court in *Doeer* limited the exclusion's application to "professional polluters" who actually caused the pollution to occur. According to the court's holding in *Doerr*, the applicability of a total pollution exclusion in any given case must necessarily turn on several considerations:

> (1) Whether the insured is a "polluter" within the meaning of the exclusion;
>
> (2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and
>
> (3) Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.
>
> First, the determination of whether an insured is a "polluter" is a fact-based conclusion that should encompass consideration of a wide variety of factors. In making this determination, the trier of fact should consider the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read [sic] of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy, and any other factor the trier of fact deems relevant to this conclusion.
>
> Second, the determination of whether the injury-causing substance is a "pollutant" is also a fact-based conclusion that should encompass a wide variety of factors. .... Consequently, when making this determination, the trier of fact should consider the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion.
>
> Finally, the determination of whether there was "discharge, dispersal, seepage, migration, release or escape" is likewise a fact-based conclusion that must result after a consideration of all relevant circumstances. Specifically, the trier of fact should consider whether the pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, whether the actions of the alleged polluter were *active or passive, and any other factor the trier of fact deems relevant. These factual conclusions should be made to assist a court in determining whether the total pollution exclusion in any particular case will exclude coverage for a claim. [footnotes omitted]*

*Id.* at 135

In deciding to substantially limit the scope of the pollution exclusion, the Supreme Court looked to the public policy considerations of discouraging environmental pollution by

companies. States have an interest in "strengthening environmental protection standards by imposing the full risk of loss due to personal injury or property damage from pollution upon the polluter by eliminating the option of spreading that risk through and insurance company...there is no history in the development of this exclusion to suggest that it was ever intended to apply to anyone other than an active polluter of the environment." *Id.* at 127. The court further noted that "it is appropriate to construe a pollution exclusion clause in light of its general purpose, which is to exclude coverage for **environmental pollution**, and under such interpretation, the clause will not be applied to all contact with substances that may be classified as pollutants." *Id.* at 135.

The Rosses claim fails to meet the first and third requisites listed by the Supreme Court in *Doerr*. Although not specifically included in the pollution exclusion language, the Supreme Court decided to write into the exclusion the requirement that the pollution be caused by a professional polluter. This requirement was put in place by the Supreme Court for public policy reasons- to discourage active polluters from spreading their risk through insurance, thereby minimizing their motivation to stop polluting. The Rosses are not professional polluters. They are simply homeowners who purchased and paid premiums for insurance to protect their home from damages. None of the public policy rationale for including a pollution exclusion applies to a homeowners claim. In contrast, public policy encourages the remediation of pollutants and the spreading the risk of homeowners' losses through insurance.

Similarly, the Rosses did not participate in actively polluting the property as required under the third prong of the *Doerr* test. In fact, the Rosses played no part in the manufacture, selection or installation of the Chinese drywall in the home. This requirement was put in place for the same policy reasons discussed above and public policy mandates a finding of coverage.

In past denials, Louisiana Citizens has attempted to avoid coverage by distinguishing *Doerr* since that case involved third party liability claims rather than first party insurance claims. However, the public policy rationale cited therein applies equally to both types of claims. If an environmental polluter purchases insurance on its own property, actively and negligently pollutes that property and then seeks reimbursement from its insurance company for the remediation of the property, then public policy considerations would warrant the application of the exclusion to

discourage this behavior. These public policy considerations are not present for an innocent homeowner who purchases property with a hidden defect that causes damage to their home. Rather, this is the very reason homeowner's insurance exists, to spread the risk of loss. At the very least, the exclusion is ambiguous as its application relates to Chinese drywall claims. If an insurance company wishes to exclude coverage for Chinese drywall, it could have easily written an exclusion into the policy. No doubt Louisiana Citizens will consider inclusion of an express drywall exclusion in the next version of its policy. If Louisiana Citizens intended to exclude coverage for damages caused by drywall, a pollution exclusion is an odd place to hide the exclusion.

According to the U.S. Consumer Product Safety Commission, it has already received 2360 complaints from homeowners for damages caused by Chinese drywall and some estimates put potential effected homes at 100,000. See U.S. CPSC Status Update, December 2009, attached hereto as Exhibit "G." Public policy considerations clearly warrant spreading this risk through insurance rather than excluding coverage under an ambiguous and loosely related exclusion meant to discourage pollution by companies. A finding to the contrary would place a countless number of homeowners independently footing this bill, especially homeowners in Louisiana (like the Rosses) who, after Hurricane Katrina, are attempting to put their lives back together for the second time in 5 years. Consequently, coverage must be afforded under the policy.

    **B.**    **Faulty Workmanship/Defective Materials Exclusion does not apply since the Rosses did not control the work performed.**

Citizens recently switched back to its original argument seeking to avoid payment based on the faulty workmanship/defective materials exclusion. Louisiana law mandates that the faulty work performed must be directed by the insured. Since the Rosses did not own the property when the Chinese drywall was installed, they did not have control over the work and the exclusion is inapplicable.

    The exclusion states

> **B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.**

6

3.   Faulty, inadequate or defective:
      a.     Planning, zoning, development,
      surveying, siting;
      b.     Design, specifications, workmanship,
      repair, construction, renovation,
      remodeling, grading, compaction;
      c.     Materials used in repair, construction,
      renovation or remodeling; or
      d.     Maintenance;

      of part or all of any property whether on or of
      the "residence premises."

See Exhibit A, Coverage Form HO 00 03 10 00, p. 12 of 22.

In *Husband v. Lafayette Insurance Company*, 93-815 (La. App. 5 Cir. 3/16/94), 635 So.2d
309, the Louisiana Fifth Circuit was faced with interpreting this identical provision under a
homeowner's "all risk policy." The homeowner's tenants performed "disastrous" alterations causing
damage to the property. The homeowner sought financial assistance from its insurance company to
repair the damage. The insurer denied the claim citing the policy's faulty workmanship and defective
materials exclusion. The trial court disagreed with the insurer's interpretation finding coverage was
afforded since the homeowner did not initiate or approve the renovations. The Fifth Circuit agreed,
stating the following:

> This court interprets the exclusion contained in the pertinent policy provisions to apply to
> situations where the insured or someone authorized by the insured contracts for
> alterations to the property and is dissatisfied with the quality of the performance under
> that contract. The insurer by this exclusion intended to prevent the expansion of coverage
> under the policy to insuring the quality of a contractual undertaking by the insured or
> someone authorized by him.

Since the alterations were not performed at the direction of the insured, the court held that
the damages fell outside of the exclusion in the policy. The court also found the language of the
exclusion to be ambiguous stating:

> Additionally, the language in the exclusion is patently ambiguous. Would the qualifying
> sentence "However, any ensuing loss not excluded is covered." mean that there is no
> coverage, for instance, for loss of the wallpaper upon which the mirrored tiles were glued,
> but the "ensuing loss" of the wallpaper where the glued tiles caused the paper to peel
> would be covered or that there is no coverage for the re-installation of a leaky window
> replacement, but there is coverage for carpet damaged by the leaky window? This
> ambiguous language, if construed in favor of the insured, writes out the exclusion relied
> upon by defendant.

In the present matter, the Rosses neither requested nor authorized the alterations
performed on the property by C. Adams. In fact, the Rosses did not even own the property at the
time the renovations were performed. If, as in the *Husband* case, coverage is afforded to an
insured who was the actual owner of the property during repairs, but did not authorize the

7

repairs, then, *a fortiori*, coverage should be afforded to the Rosses who certainly had no control over the materials selected or work performed on the property.

This result makes sense from a public policy standpoint as well. Louisiana law has an interest in excluding coverage to homeowners who select faulty or inadequate materials or fail to perform their due diligence when selecting a contractor to perform repairs. But this is not the case when a homeowner does not have control over either the selection of materials or hiring of the builder. The public policy of discouraging negligence on the part of the homeowner is simply absent when the homeowner does not own the property during the repairs.

Furthermore, the Fifth Circuit has already held this identical provision to be "patently ambiguous" and written out of the policy. *Id.* at 312. Consequently, Louisiana Citizen's reliance on this exclusion to avoid its contractual obligations to the Rosses is in bad faith and the Rosses are entitled to summary judgment as a matter of law.

### C. Corrosion Exclusion does not apply since the damage was not caused by corrosion.

Finally, Louisiana Citizens recently cited yet another new exclusion seeking to avoid coverage, the rust/corrosion exclusion. It states-

> 2.  We do not insure, however, for loss:
>     c.  **Caused by:**
>         (6)  Any of the following:
>             (c)  Smog, rust or other corrosion, or dry rot;

Louisiana Citizens is claiming that this exclusion bars coverage for damages to the corroded metal in the Rosses' home. However, expressly cited within the exclusion is the requisite that the damage to property must be **"caused by"** the rust or other corrosion. In the present case, the rust or corrosion did not cause damage to property. Rather, sulfuric gases emitted from the Chinese Drywall caused the actual damage, corroded pipes, wiring and other metal. Thus, the damages were not caused by the corrosion, rather the damage is the corrosion itself.

A similar result was reached in *Trus Joist Macmillan v. Neeb Kearney and Co. Inc.*, 2000 WL 306654 (E.D. La., March 23, 2000). In *Trus Joist*, plaintiff sought to recover from a third-party insurance company for damages to metal bed-plates stored in the defendant-insured's warehouse. While in the warehouse, the bed-plates were allowed to stand in water and rusted.

8

The defendant insurance company denied coverage under an identical rust/corrosion exclusion. The court rejected this argument holding:

> [The insurer] apparently suggests that merely because the bedplates are rusted, the rust exclusion precludes coverage. Clearly, however, the exclusion is designed to apply where corrosion, rust, or the like is the *cause* of property damage. It is not designed to preclude coverage when rust is the damage itself, as opposed to the cause of the damage.

According to the language of the exclusion, the damage must be caused by the corrosion for it to apply. As was the case in *Trus Joist*, the damage in the case was not caused by corrosion, but the corrosion is the damage. At the very least, the exclusion is ambiguous and coverage must be afforded to the Rosses.

## SUMMARY JUDGMENT STANDARD

The purpose of a motion for summary judgment "is to pierce behind the allegations in the petition which may set up a cause of action but upon which the plaintiff cannot produce any proof whatever in support of same," thereby minimizing and discouraging "the judicial urging of well pleaded but factually frivolous claims." *Burrell v. Baton Rouge Securities Co.*, 169 So.2d 668, 669 (La. App. 1 Cir. 1964); *Landry v. E.A. Caldwell, Inc.*, 280 So.2d 231, 235 (La. App. 1 Cir. 1973). It is a procedural device to avoid a full-scale trial when there is no genuine factual dispute. *Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc.*, 579 So.2d 1115, 1120 (La. App. 2 Cir. 1991). The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. Art. 966; *Thompson v. South Central Bell Telephone Co.*, 411 So.2d 26, 27 (La. 1982). Additionally, the most recent amendment to the summary judgment article, La. C.C.P. Art. 966, adds the following language:

A. (1)  * * *

(2) the summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by Article 969. **The procedure is favored and shall be construed to accomplish these ends.**

* * *

9

C.    After adequate discovery or after a case is set for trial, a
motion which shows that there is no genuine issue as to
material fact and that the mover is entitled to judgment as a
matter of law shall be granted against an adverse party who
fails to make a showing sufficient to establish the existence
of proof of an element essential to his claim, action, or
defense and on which he will bear the burden of proof at
trial.

\* \* \*

Accordingly, if the moving party establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, it is incumbent on the opponent to set forth specific facts showing that there is a genuine issue for trial. *Williams v. State*, 93-0278 (La. App. 1 Cir. 03/11/94); 640 So.2d 365, 367. Thereafter, the opposing party may no longer rest on the allegations and denials contained in his pleadings, but must present evidence of a material fact issue. *Herman v. Rome*, 95-666 (La. App. 5 Cir. 01/17/96); 668 So.2d 1202, 1204. Moreover, the mere possibility that an opponent **could** raise a factual issue is not sufficient to defeat a motion for summary judgment. *Efferson v. Link Belt, Corp.*, 476 So.2d 528, 531 (La. App. 1 Cir. 1985).

## CONCLUSION

Louisiana Citizens Insurance Company owes insurance coverage to its insured, Terrence and Rhonda Ross, for damages sustained to their residence due to the presence of Chinese drywall. Despite being provided with Louisiana controlling law to the contrary, Louisiana Citizens continues to deny Mr. and Mrs. Ross' claim citing the policy's total pollution and defective materials exclusion. Since the Ross' did not take part in professionally polluting the environment and since they took no part in the selection, purchase or installation of the drywall, these exclusions do not apply and Louisiana Citizens' denial of coverage is in bad faith. A finding to the contrary would place the Rosses and countless other innocent homeowners in the impossible position of rebuilding their homes without the protections they purchased through

their insurance companies.

Respectfully submitted:

DONALD E. MCKAY, JR. (#14207)
JASON R. BONNET (#28502)
LEAKE & ANDERSSON, LLP
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
Tel:    504-585-7500
Fax:    504-585-7775

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record by hand delivery, by e-mail, by telephonic facsimile transmission, or by depositing a copy of same in the United States Mail, first class postage prepaid, January 25th, 2010, at their last known addresses of record.

DONALD E. MCKAY, JR.

Cp: /39555/MSJ – Memo in Support.doc#220

24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NUMBER: 676-185                                          DIVISION "P"

TERRENCE M. ROSS AND RHONDA B. ROSS

VERSUS

C. ADAMS CONSTRUCTION & DESIGN, L.L.C.,
STATE FARM MUTUAL INSURANCE COMPANY AND
LOUISIANA CITIZENS PROPERTY INSURANCE COMPANY

LIST OF ESSENTIAL LEGAL ELEMENTS

NOW INTO COURT, through undersigned counsel, come Terrence M. Ross and

Rhonda B. Ross, who, pursuant to Rule 9.10(a)(1) of Louisiana Rules for Civil Proceedings in

District Court, submits the following list of Essential Legal Elements:

1.      It is well settled in Louisiana law that once an insured shows that coverage is

afforded under a policy, the insurer bears the burden of proving the applicability of any

exclusionary clause within the policy. *Doerr v. Mobile Oil Company*, 2000-0947 (La. 12/19/00),

774 So. 2d 119, 124. Importantly, when making this determination, any ambiguities within the

policy must be construed in favor of the insured to effect, not deny, coverage." *Id.*

2.      According to the Supreme Court's holding in *Doerr*, the applicability of a total

pollution exclusion in any given case must necessarily turn on three pre-requisites:

(1) Whether the insured is a "polluter" within the meaning of the exclusion;

(2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and

(3) Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

*Doerr v. Mobile Oil Company*, 2000-0947 (La. 12/19/00), 774 So. 2d 119.

3.      An insurance policy's faulty workmanship/defective materials exclusion only

applies if the homeowner authorizes and directs the repairs. *Husband v. Lafayette Insurance*

*Company*, 93-815 (La. App. 5 Cir. 3/16/94), 635 So.2d 309.

4.      An insurance policy's rust/corrosion exclusion only applies to damages caused by

the rust or corrosion. *Trus Joist Macmillan v. Neeb Kearney and Co. Inc.*, 2000 WL 306654

(E.D. La. March 23, 2000)

5.    The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. Art. 966.

Respectfully submitted:

_[signature]_

**DONALD E. MCKAY, JR. (#14207)**
**JASON R. BONNET (#28502)**
**LEAKE & ANDERSSON, LLP**
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
Tel:    504-585-7500
Fax:    504-585-7775

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record by hand delivery, by e-mail, by telephonic facsimile transmission, or by depositing a copy of same in the United States Mail, first class postage prepaid, January 25th, 2010, at their last known addresses of record.

_[signature]_

DONALD E. MCKAY, JR.

Cp:/39555/MSJ-Legal Elements.doc#223

24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NUMBER: 676-185                                    DIVISION "P"

TERRENCE M. ROSS AND RHONDA B. ROSS

VERSUS

C. ADAMS CONSTRUCTION & DESIGN, L.L.C.,
STATE FARM MUTUAL INSURANCE COMPANY AND
LOUISIANA CITIZENS PROPERTY INSURANCE COMPANY

STATEMENT OF UNCONTESTED FACTS

NOW INTO COURT, through undersigned counsel, come Terrence M. Ross and

Rhonda B. Ross, who, through its undersigned counsel, submits the following Statement of

Uncontested Material Facts in support of its Motion for Summary Judgment:

1.      In January of 2007, Plaintiffs, Terrence and Rhonda Ross, purchased a newly

renovated residence located at 316 Woodvine Ave, in Metairie, Louisiana from C. Adams

Construction Company.

2.      Unbeknownst to Plaintiffs, C. Adams Construction Company had installed

Chinese drywall in the home. See Exhibit "B."

3.      The Chinese drywall exuded sulfuric gases that corroded the plumbing, electrical

wiring and other metal components in the home. See Exhibit "B."

4.      Louisiana Citizens Insurance Company issued Plaintiffs a policy of homeowner's

insurance covering the property located at 316 Woodvine Ave. See Exhibit "A."

5.      Plaintiffs reported a claim for damages caused by the Chinese drywall to

Louisiana Citizens in March of 2009. See Exhibit "C."

6.      Louisiana Citizens is in bad faith in denying Plaintiffs' insurance claim. See, e.g.,

Exhibits "D, E & F."

Respectfully submitted:

DONALD E. MCKAY, JR. (#14207)
JASON R. BONNET (#28502)
LEAKE & ANDERSSON, LLP
1100 Poydras Street, Suite 1700

New Orleans, LA 70163
Tel:    504-585-7500
Fax:    504-585-7775

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record by

hand delivery, by e-mail, by telephonic facsimile transmission, or by depositing a copy of same

in the United States Mail, first class postage prepaid, January 25th, 2010, at their last known

addresses of record.

_____
DONALD E. MCKAY, JR.

Cp:/39555/Uncontested facts.doc#224

2

## 24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

**NUMBER:  676-185**                                        **DIVISION "P"**

### TERRENCE M. ROSS AND RHONDA B. ROSS

### VERSUS

### C. ADAMS CONSTRUCTION & DESIGN, L.L.C., STATE FARM MUTUAL INSURANCE COMPANY AND LOUISIANA CITIZENS PROPERTY INSURANCE COMPANY

#### RULE TO SHOW CAUSE

Considering the Motion for Partial Summary Judgment and Memorandum in Support

filed by Plaintiffs, Terrence and Rhonda Ross, and based upon the allegations contained therein,

IT IS HEREBY ORDERED that Defendant, Louisiana Citizens Insurance Company

show cause on the _____ day of _____, 2010, at the hour of _____ why

Plaintiffs' motion should not be granted.

. Jefferson, Louisiana, this _____ day of _____, 2008.

_____

#### J U D G E

**PLEASE SERVE:**
John T. Cullotta, Esq.
Hailey, McNamara, Hall, Larmann & Papale, LLP
One Galleria Blvd., Suite 1400
New Orleans, LA  70001
*Counsel for Louisiana Citizens*

Mr. Raymond Pelleteri Jr., Esq.
Pelleteri & Weidorn, LLC
636 Carondolet Street
New Orleans, LA  70130
*Counsel for C. Adams Construction, LLC*

David A. Strauss, Esq.
King, Krebs & Jurgens, P.L.L.C.
201 St. Charles Avenue, 45th floor
New Orleans, LA  70170
*Counsel for State Farm Mutual Insurance Company*

Richard G. Duplantier, Jr., Esq.
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040, One Shell Square
New Orleans, LA  70139
*Counsel for Interior Exterior Building Supply, L.P.*

Cp;/39555/Rule to Show Cause.doc#225

# Homeowners Policy

## LOUISIANA CITIZENS COASTAL PLAN
(COASTAL PLAN)

## LOUISIANA CITIZENS FAIR PLAN
(FAIR PLAN)

OF
LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION
NEW ORLEANS, LOUISIANA 70160

**THIS POLICY DOES NOT PROVIDE FLOOD INSURANCE**

INSURANCE IS PROVIDED BY



THIS POLICY JACKET TOGETHER WITH HOMEOWNERS FORM, DECLARATIONS AND ENDORSEMENTS, IF ANY,
ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.

CTZ-U-0329 (01/05)

EXHIBIT
" A "

The provisions of the Standard Fire Policy are stated below. State law still requires that they be attached to all policies. If any conditions of this form are construed to be more liberal than any other policy conditions relating to the perils of fire, lightning or removal, the conditions of this form will apply.

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED in the Declarations or in endorsements made a part hereof, this Company, for the term of *years specified in the Declarations* from *inception date shown in the Declarations* at 12:01 A.M. (Standard Time) to *expiration date shown in the Declarations* at 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the limit of liability specified in the Declarations, does insure *the insured named in the Declarations* and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of the like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

CTZ-U-0329 (01/05)

LOUISIANA NUMBERED LINE CONDITIONS AMENDMENTS

CANCELLATION OF POLICY Lines 56 to 67 are replaced by the following: This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon surrender of the policy, refund the excess of paid premium above the customary rates for the expired time. This policy may be cancelled at any time by the insured a twenty days' written notice of cancellation, or ten days' written notice when cancellation is for nonpayment of premium, above the pro rata premium for the expired time which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said cancellation shall provide to the insured in writing the reasons for cancellation of the policy. There shall be no liability on the part or and no cause of action of any nature shall arise against any insurer of its agents, employees, or representatives for any action taken in connection with the issuance of cancellation. MORTGAGEE INTEREST AND OBLIGATIONS Lines 58 to 73 are replaced by the following: If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a twenty days' written notice of cancellation, or ten days' written notice of cancellation when cancellation is for nonpayment of premium.

<table>
<tr><td>1</td><td>Concealment,<br>fraud.</td><td>This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.</td></tr>
</table>

1 Concealment, fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

6 Uninsurable and excepted property. This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts.

11 Perils not included. This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this Company be liable for loss by theft.

25 Other insurance. Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

28 Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring
31 (a) while the hazard is increased by any means within the control or knowledge of the insured; or
33 (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; or
36 (c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.

38 Other perils or subjects. Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing thereon or added hereto.

42 Added provisions. The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is a subject to change.

49 Waiver provisions. No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

56 Cancellation of policy. This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of the policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a thirty days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.

65 Mortgagee interests and obligations. If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.
73 If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions

64 relating to the interest and obligations of such mortgagee may be added hereto by agreement in writing.

66 Pro rata liability. This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

90 Requirements in case loss occurs. The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following; the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building therein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representatives, and shall permit extracts and copies thereof to be made.

123 Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

140 Company's options. It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required.

147 Abandonment. There can be no abandonment to this Company of any property.

150 When loss payable. The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or the filing with this Company of an award as herein provided.

157 Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

162 Subrogation. This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

Secretary                    President

CTZ-U-0329 (01/05)

HOMEOWNERS
HO 00 03 10 00

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a person described in a.(1) above; or

c. Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b. above. "Insured" does not mean a person or organization using or having custody of those animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person included in a. or b. above; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in a. and b. above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

     Copyright, Insurance Services Office, Inc., 1999     HO 00 03 10 00

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### C. Coverage C – Personal Property

1. Covered Property

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. Limit For Property At Other Residences

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. Special Limits Of Liability

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

      This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

   Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

   Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

4. **Property Not Covered**

   We do not cover:

   a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

   (1) This includes:

      (a) Their accessories, equipment and parts; or

      (b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

      The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

   (2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

      (a) Used solely to service an "insured's" residence; or

      (b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

   We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

   (1) Books of account, drawings or other paper records; or

   (2) Computers and related equipment.

   We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

   Copyright, Insurance Services Office, Inc., 1999   HO 00 03 10 00

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.

1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in 1. Additional Living Expense and 2. Fair Rental Value above for no more than two weeks.

4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

2. Reasonable Repairs

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

   (1) Increase the limit of liability that applies to the covered property; or

   (2) Relieve you of your duties, in case of a loss to covered property, described in B.4. under Section I – Conditions.

3. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. Fire Department Service Charge

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. Property Removed

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money

a. We will pay up to $500 for:

   (1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   (2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   (3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   (4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

   All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

   This coverage is additional insurance. No deductible applies to this coverage.

b. We do not cover:

   (1) Use of a credit card, electronic fund transfer card or access device:

      (a) By a resident of your household;

      (b) By a person who has been entrusted with either type of card or access device; or

      (c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

   (2) Loss arising out of "business" use or dishonesty of an "insured".

c. If the coverage in a. above applies, the following defense provisions also apply:

   (1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   (2) If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

   (3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

7. Loss Assessment

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph P. Policy Period under Section I – Conditions does not apply to this coverage.

This coverage is additional insurance.

8. Collapse

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage C;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. Glass Or Safety Glazing Material

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

   (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

   (2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in a.(2) above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

11. **Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

   (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

   (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

   (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

   (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   (2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

12. **Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

A. Coverage A – Dwelling And Coverage B – Other Structures

   1. We insure against risk of direct physical loss to property described in Coverages A and B.

   2. We do not insure, however, for loss:

      a. Excluded under Section I – Exclusions;

      b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or

      c. Caused by:

         (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

            (a) Maintain heat in the building; or

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   (a) Fence, pavement, patio or swimming pool;

   (b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

   (c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

   (d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

   (a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

(b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

(6) Any of the following:

   (a) Wear and tear, marring, deterioration;

   (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

   (c) Smog, rust or other corrosion, or dry rot;

   (d) Smoke from agricultural smudging or industrial operations;

   (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

     Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

   (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

   (g) Birds, vermin, rodents, or insects; or

   (h) Animals owned or kept by an "insured".

Exception To c.(6)

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.

Under 2.b. and c. above, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

B. Coverage C – Personal Property

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

1. Fire Or Lightning

2. Windstorm Or Hail

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. Explosion

4. Riot Or Civil Commotion

5. Aircraft

This peril includes self-propelled missiles and spacecraft.

6. Vehicles

7. Smoke

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism Or Malicious Mischief

9. Theft

a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

b. This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

(4) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

(c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

10. Falling Objects

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. Weight Of Ice, Snow Or Sleet

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

12. Accidental Discharge Or Overflow Of Water Or Steam

a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

b. This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

(4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

d. Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging

This peril means sudden and accidental tearing, apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. Freezing

a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.

SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. Ordinance Or Law

Ordinance Or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I – Property Coverages;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion A.1. applies whether or not the property has been physically damaged.

2. Earth Movement

Earth Movement means:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion A.2. does not apply to loss by theft.

3. Water Damage

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

4. Power Failure

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

5. Neglect

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. War

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. Nuclear Hazard

This Exclusion A.7. pertains to Nuclear Hazard to the extent set forth in M. Nuclear Hazard Clause under Section I – Conditions.

8. Intentional Loss

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

9. Governmental Action

Governmental Action means the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

     Copyright, Insurance Services Office, Inc., 1999     HO 00 03 10 00

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in 6. above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

D. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

E. Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

F. Other Insurance And Service Agreement

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

G. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

### H. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

### I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

### J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

### K. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs E. Appraisal, G. Suit Against Us and I. Loss Payment under Section I — Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

### L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

### M. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

### N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

### O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

### P. Policy Period

This policy applies only to loss which occurs during the policy period.

### Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

R. Loss Payable Clause

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

a. Is registered for use on public roads or property;

b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

c. Is being:

(1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(2) Rented to others;

(3) Used to carry persons or cargo for a charge; or

(4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

a. In dead storage on an "insured location";

b. Used solely to service an "insured's" residence;

c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

(1) Being used to assist a handicapped person; or

(2) Parked on an "insured location";

d. Designed for recreational use off public roads and:

(1) Not owned by an "insured"; or

(2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h.; or

e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

(1) A golfing facility and is parked or stored there, or being used by an "insured" to:

(a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

B. "Watercraft Liability"

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

b. Rented to others;

c. Used to carry persons or cargo for a charge; or

d. Used for any "business" purpose.

2. If Exclusion B.1. does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

a. Is stored;

b. Is a sailing vessel, with or without auxiliary power, that is:

(1) Less than 26 feet in overall length; or

(2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

c. Is not a sailing vessel and is powered by:

(1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

(a) 50 horsepower or less and not owned by an "insured"; or

(b) More than 50 horsepower and not owned by or rented to an "insured"; or

(2) One or more outboard engines or motors with:

(a) 25 total horsepower or less;

(b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

(c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

(i) You declare them at policy inception; or

(ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in (c) and (d) above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

C. "Aircraft Liability"

This policy does not cover "aircraft liability".

D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others

Coverages E and F do not apply to the following:

1. Expected Or Intended Injury

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. "Business"

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b. This Exclusion E.2. does not apply to:

(1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. Professional Services

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. "Insured's" Premises Not An "Insured Location"

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

5. War

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. Communicable Disease

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. Controlled Substance

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions A. "Motor Vehicle Liability", B. "Watercraft Liability", C. "Aircraft Liability", D. "Hovercraft Liability" and E.4. "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

F. Coverage E – Personal Liability

Coverage E does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in D. Loss Assessment under Section II – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

  a. Is also an insured under a nuclear energy liability policy issued by the:

    (1) Nuclear Energy Liability Insurance Association;

    (2) Mutual Atomic Energy Liability Underwriters;

    (3) Nuclear Insurance Association of Canada;

    or any of their successors; or

  b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured":

  a. To repay; or

  b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

G. Coverage F – Medical Payments To Others

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

  a. Occurs off the "insured location"; and

  b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

  a. Workers' compensation law;

  b. Non-occupational disability law; or

  c. Occupational disease law;

3. From any:

  a. Nuclear reaction;

  b. Nuclear radiation; or

  c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

  d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

  a. To the extent of any amount recoverable under Section I;

  b. Caused intentionally by an "insured" who is 13 years of age or older;

  c. To property owned by an "insured";

  d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

  e. Arising out of:

    (1) A "business" engaged in by an "insured";

    (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

    (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion e.(3) does not apply to a "motor vehicle" that:

(a) Is designed for recreational use off public roads;

(b) Is not owned by an "insured"; and

(c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

(1) Is elected by the members of a corporation or association of property owners; and

(2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

SECTION II – CONDITIONS

A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

a. The identity of the policy and the "named insured" shown in the Declarations;

b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

a. To make settlement;

b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

          Copyright, Insurance Services Office, Inc., 1999          HO 00 03 10 00

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to C. Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

D. Duties Of An Injured Person – Coverage F – Medical Payments To Others

1. The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

E. Payment Of Claim – Coverage F – Medical Payments To Others

Payment under this coverage is not an admission of liability by an "insured" or us.

F. Suit Against Us

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

G. Bankruptcy Of An "Insured"

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

H. Other Insurance

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

I. Policy Period

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

J. Concealment Or Fraud

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## SECTIONS I AND II – CONDITIONS

A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

(2) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph C, Damage To Property Of Others under Section II – Additional Coverages.

G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

    Copyright, Insurance Services Office, Inc., 1999    HO 00 03 10 00

POLICY NUMBER: FH 20073610139 00

**HOMEOWNERS**
**HO 04 46 10 00**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INFLATION GUARD

### SCHEDULE*

Percentage Amount: 4%

*Entry may be left blank if shown elsewhere in this policy for this coverage.

The limits of liability for Coverages **A, B, C** and **D** will
be increased annually by the percentage amount that
is:

1. Shown in the Schedule above; and
2. Applied pro rata during the policy period.

POLICY NUMBER: FH 20073610139 00

HOMEOWNERS<br>HO 04 96 10 00

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE

**A.**

"Business", as defined in the policy, means:

1. A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

2. Any other activity engaged in for money or other compensation, except the following:

    a. One or more activities:

    (1)

    Not described in b. through d. below; and

    (2) For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

    b. Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    c. Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    d. The rendering of home day care services to a relative of an "insured".

**B.**

If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

1. That an "insured" engages in for money or other compensation; and

2. From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to C. above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

1. Described in A.2. above, and

2. Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to A. through D. above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

1. Does not provide:

    a. Section II coverages. This is because a "business" of an "insured" is excluded under E.2. of Section II – Exclusions;

    b. Coverage, under Section I, for other structures from which any "business" is conducted; and

2. Limits Section I coverage, under Coverage C – Special Limits of Liability, for "business" property:

    a. On the "residence premises" for the home day care "business" to $2,500. This is because Category h. (e. in Form HO 00 08) imposes that limit on "business" property on the "residence premises";

    b. Away from the "residence premises" for the home day care "business" to $500. This is because Category i. (f. in Form HO 00 08) imposes that limit on "business" property away from the "residence premises". Category i. does not apply to property described in Categories j. and k. (g. and h. respectively in Form HO 00 08).

# Louisiana Citizens Property Insurance Corporation

## Privacy Policy

Louisiana Citizens Property Insurance Corporation provides insurance and believes that protecting your privacy is of critical importance. We feel that you should understand what *nonpublic personal information* we collect, how we use the information, and how we safeguard it. This statement describes the types of nonpublic personal information we collect and use to provide insurance products and services to our customers.

## COLLECTING INFORMATION

We collect nonpublic personal information to perform the services you have requested from the following sources:

- Information we receive from you on applications or other forms
- Information about your transactions with us, our affiliates, or others
- Information from consumer reporting agencies, such as credit, property inspection, and claims activity reports
- Information received in handling claims

## CUSTOMER INFORMATION WE SHARE WITH OTHERS

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

## HOW DO WE PROTECT YOUR NONPUBLIC PERSONAL INFORMATION

We value your trust and handle information about you with care. We restrict access to nonpublic personal information about you to employees, affiliates, or non-affiliates who need to know such information in order to provide products and services to you. We maintain physical, procedural, and electronic safeguards to protect our current and former customers' nonpublic information.

## CHANGES TO OUR PRIVACY POLICY

This privacy policy applies to products or services provided for personal, family, or household purposes in the United States by Louisiana Citizens Property Insurance Corporation. Although we may change this policy at any time, please rest assured that you will be notified of any changes as required by law.

## MAINTAINING ACCURATE INFORMATION

We also maintain procedures to ensure that the information we collect is accurate, up-to-date, and as complete as possible. If you believe the information we have about you in our records or files is incomplete or inaccurate, you may request that we make additions or corrections, or if it is feasible, that we delete this information from our files. Your request must be in writing, and you should mail your request to us, addressed as follows *(be sure to include your policy number, name, address, and phone number with your request)*: Privacy Services, Louisiana Citizens Property Insurance Corporation, P.O. Box 60730, New Orleans, LA 70160.

Thank you for allowing us to serve you. As described in our Privacy Policy, we aim to continually protect your nonpublic information. Please realize that because we value our customer relationship, we endeavor to provide you with excellent products and service.

POLICY NUMBER: FH 20073610139 00

HOMEOWNERS<br>HO 01 17 04 05

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – LOUISIANA

**SECTION I – PROPERTY COVERAGES**

**C. Coverage C – Personal Property**

Paragraph 4.c.(2)(a) is replaced by the following:

**4. Property Not Covered**

  **c. "Motor vehicles"**

    **(2)** We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

      **(a)** Used to service an "insured's" residence; or

(This is Paragraph A.4.c.(2)(a) in Form HO 00 04 and B.4.c.(2)(a) in Form HO 00 06.)

**E. Additional Coverages**

  **2.** Reasonable Repairs is replaced by the following:

  **2. Reasonable Repairs**

We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

(This is Paragraph C.2. in Form HO 00 04 and D.2. in Form HO 00 06.)

  **6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money** is replaced by the following:

  **6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

    **a.** We will pay up to $500 for:

      **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

      **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

      **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

      **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

    **b.** We do not cover:

      **(1)** Use of a credit card, electronic fund transfer card or access device:

        **(a)** By a resident of your household;

        **(b)** By a person who has been entrusted with either type of card or access device; or

        **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed.

      **(2)** Loss arising out of "business" use or dishonesty of an "insured".

    **c.** If the coverage in a. applies, the following defense provisions also apply:

      **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when our limit of liability for the loss has been exhausted by payment of a judgment or settlement.

      **(2)** If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

      **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

(This is Paragraph C.6. in Form HO 00 04 and D.6. in Form HO 00 06.)

© ISO Properties, Inc., 2004

## SECTION I – EXCLUSIONS

**8. Intentional Loss** is replaced by the following:

**8. Intentional Loss**, meaning any loss arising out of any act committed:

  **a.** With respect to loss caused by fire;

   **(1)** By or at the direction of the "insured"; and

   **(2)** With the intent to cause a loss.

  **b.** With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy;

   **(1)** By you or at your direction; and

   **(2)** With the intent to cause a loss.

(This is Exclusion A.8. in Form HO 00 03 and HO 00 05.)

## SECTION I – CONDITIONS

**C. Loss Settlement**

Under Forms HO 00 02, HO 00 03 and HO 00 05, Paragraph 2.a.(2) is replaced by the following:

   **(2)** The replacement cost of that part of the building damaged with material of like kind and quality; or

**I. Loss Payment** is replaced by the following;

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss,

**K. Mortgage Clause**

Paragraph 3. is replaced by the following:

**3.** If this policy is cancelled by us, the mortgagee will be notified:

  **a.** At least 10 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

  **b.** At least 30 days before the date cancellation takes effect if we cancel for any other reason.

If the policy is not renewed by us, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

(This Condition does not apply to Form HO 00 04.)

**Q. Concealment Or Fraud** is replaced by the following:

**Q. Concealment Or Fraud**

  **1.** With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after a loss, has:

   **a.** Intentionally concealed or misrepresented any material fact or circumstance;

   **b.** Engaged in fraudulent conduct; or

   **c.** Made false statements;

   relating to this insurance.

  **2.** With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:

   **a.** Intentionally concealed or misrepresented any material fact or circumstance;

   **b.** Engaged in fraudulent conduct; or

   **c.** Made false statements;

   relating to this insurance.

  **3.** However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

(This is Condition P. in Form HO 00 04.)

## SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability, Paragraph 1.** is replaced by the following:

  **1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable; and

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

Paragraph 2.b. is replaced by the following:

  **2.** If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is;

   **b.** Used to service an "insured's" residence;

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph 1. is replaced by the following in all forms and Endorsement HO 24 73;

**1. Expected Or Intended Injury**

With respect to loss:

a. Caused by fire; which is expected or intended by the "insured" even if the "bodily injury" or "property damage":

(1) Is of a different kind, quality, or degree than initially expected or intended; or

(2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion E.1.a. does not apply to "bodily injury" resulting from the use of reasonable force by the "insured" to protect persons or property.

b. Caused by a peril other than fire and with respect to all "insureds" covered under this policy which is expected or intended by one or more "insureds" even if the "bodily injury" or "property damage":

(1) Is of a different kind, quality, or degree than initially expected or intended; or

(2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion E.1.b. does not apply to "bodily injury" resulting from the use of reasonable force by one or more "insureds" to protect persons or property.

**F. Coverage E – Personal Liability**

Paragraph 6. does not apply in all forms and Endorsement HO 24 73.

**SECTION II – CONDITIONS**

**F. Suit Against Us** does not apply.

**J. Concealment Or Fraud** is replaced by the following:

**J. Concealment Or Fraud**

1. We do not provide coverage to one or more "insured" who, whether before or after a loss, have:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

2. However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

**SECTIONS I AND II – CONDITIONS**

**C. Cancellation**

Paragraphs 2., 3. and 4. are replaced by the following:

2. The following applies with respect to premium payments due on new and renewal policies, including installment payments:

a. If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs b. and c. below.

b. We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

c. The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

3. The following applies if 2. above does not apply.

We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

a. When you have not paid the premium, regardless of the period of time this policy has been in effect, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us except as provided in Item 3.e. below, we may cancel:

(1) If there has been a material misrepresentation of fact with the intent to deceive:

(a) In the procurement of the contract; or

(b) At any other time since the policy was issued;

which if known to us would have caused us not to issue the policy; or

(2) If the risk has changed substantially since the policy was issued.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of:

(1) More than one year; or

(2) Three years or less;

we may cancel for any reason at anniversary by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

e. When this policy has been in effect and renewed for more than three years, we may cancel for any one of the following:

(1) If you have committed fraud with the intent to deceive:

(a) In the procurement of the contract; or

(b) At any other time since the policy was issued;

(2) If the insured risk has undergone a material change;

(3) If you have filed two or more claims within three years; or

(4) If the continuation of this policy endangers our solvency.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

We will not, however, cancel this policy, regardless of the period of time this policy has been in effect, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

4. If this policy is cancelled, we will return any premium refund due, subject to Paragraphs a., b. and c. below. The cancellation will be effective even if we have not made or offered a refund.

a. If you cancel this policy, we will refund the return premium, if any, within 30 days after the date cancellation takes effect. The return premium shall be computed on a pro rata basis, subject to the minimum premium requirements.

b. If we cancel this policy, and the return premium is not refunded with the notice of cancellation, we will refund it within a reasonable time after the date cancellation takes effect. We will send the refund to you, or your agent unless c. below applies. If the premium is refunded to your agent, we will notify you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

c. If we cancel based on Paragraph 2. above, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in 2.c. If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

D. Nonrenewal is replaced by the following:

D. Nonrenewal

1. We may elect not to renew this policy, subject to the provisions of Paragraphs 2. and 3. below. We may do so by delivering to you and any other known person shown by the policy to have an interest in any loss which may occur thereunder or mailing to you at your mailing address shown in the Declaration and to any other known person shown by the policy to have an interest in any loss which may occur thereunder, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

2. If this policy has been in effect and renewed with us for more than three years, we will not exercise our right of nonrenewal except:

   a. When you have not paid the premium;

   b. If you have committed fraud;

   c. If the insured risk has undergone a substantial change;

   d. If you have filed two or more claims within three years; or

   e. If the continuation of this policy endangers our solvency.

3. We will not, however, exercise our right of nonrenewal, regardless of the period of time this policy has been in effect with us, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

**F. Subrogation**

The following paragraph is added:

If we pay an "insured" for a loss caused by another "insured" who intentionally commits, or directs another to commit, any act that results in loss by fire, the rights of the "insured" to recover damages from the "insured" who intentionally committed, or directed another to commit, such an act are transferred to us to the extent of our payment. The "insured" may not waive such rights.

All other provisions of this policy apply.

POLICY NUMBER: FH 20073610139 00

**HOMEOWNERS**
HO 03 42 01 05

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA
# COVERAGE – LOUISIANA
### FOR USE WITH FORMS HO 00 03 AND HO 00 05

#### SCHEDULE

| | These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|---|
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or "Bacteria" | $10,000 |
| 2. | Section II – Coverage E Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or "Bacteria" | $50,000 |

Entries may be left blank if shown elsewhere in this policy for this coverage.

**DEFINITIONS**

The following definitions are added:

"Fungi"

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or re-leased by fungi.

b. Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

"Bacteria"

"Bacteria" means any type, kind or form of bacte-rium.

**SECTION I – PROPERTY COVERAGES**

**E. Additional Coverages**

Paragraph 10.k.(2)(d) is deleted in Form HO 00 05 only.

The following Additional Coverage is added:

**13. "Fungi", Wet Or Dry Rot, Or "Bacteria"**

a. The amount shown in the Schedule above is the most we will pay for:

(1) The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or "bacteria";

(2) The cost to remove "fungi", wet or dry rot, or "bacteria" from property covered under Sec-tion I – Property Coverages;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or "bacteria"; and

(4) The cost of testing of air or property to con-firm the absence, presence or level of "fungi", wet or dry rot, or "bacteria" whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or "bacteria".

b. The coverage described in 13.a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

POLICY NUMBER: FH 20073610139 00

c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

(1) Number of locations Insured under this endorsement; or

(2) Number of claims made.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

In Form HO 00 03:

A. Coverage A – Dwelling And Coverage B – Other Structures

Paragraph 2.c.(5) is replaced by the following:

(5) Caused by constant or repeated seepage or leakage of water or the presence or con-densation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.c.(6)(c) is replaced by the following:

(c) Smog, rust or other corrosion;

B. Coverage C – Personal Property

12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph b.(4) is replaced by the following:

(4) Caused by constant or repeated seepage or leakage of water or the presence or con-densation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form HO 00 05:

A. Under Coverages A, B and C:

Paragraph 2.d. is replaced by the following:

d. Caused by constant or repeated seepage or leakage of water or the presence or con-densation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.e.(3) is replaced by the following:

(3) Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

Exclusion A.10. is added:

10. "Fungi", Wet Or Dry Rot, Or "Bacteria"

"Fungi", Wet Or Dry Rot, Or "Bacteria" meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or "bacte-ria".

This exclusion does not apply:

a. When "fungi", wet or dry rot, or "bacteria" results from fire or lightning;

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or "Bacteria" Addi-tional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or light-ning; or

c. With respect to "fungi", wet or dry rot, or "bacteria" that is located on the portion of the covered property that must be repaired or replaced because of direct physical dam-age caused by a Peril Insured Against.

However, the exclusion shall continue to apply to:

(1) The cost to treat, contain, remove or dispose of "Fungi", Wet Or Dry Rot, or "Bacteria" beyond that which is required to repair or replace the covered property physically damaged by a Peril Insured Against;

POLICY NUMBER: FH 20073610139 00

HOMEOWNERS<br>HO 03 42 01 05

(2) The cost of any testing of air or property to confirm the absence, presence or level of "Fungi", Wet Or Dry Rot or "Bac-teria" whether performed prior to, during or after removal, repair, restoration or replacement; and

(3) Any increase in loss under Coverage D -- Loss of Use and Additional Coverage 1. Debris Removal resulting from c.(1) and (2).

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or "bacteria" is cov-ered.

## SECTION I – CONDITIONS

Condition P. Policy Period is replaced by the follow-ing:

### P. Policy Period

This policy applies to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition A. Limit Of Liability is replaced by the following:

### A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or per-sons injured. All "bodily injury" and "property dam-age" resulting from any one accident or from con-tinuous or repeated exposure to substantially the same general harmful conditions will be consid-ered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Decla-rations.

However, our total liability under Coverage E for the total of all damages arising directly or indi-rectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or "bacteria" will not be more than the Section II – Coverage E Aggregate Sub-limit Of Liability for "Fungi", Wet Or Dry Rot, Or "Bacteria". That sublimit is the amount shown in the Schedule. This is the most we will pay regard- less of the:

1. Number of locations insured under the policy to which this endorsement is attached;

2. Number of persons injured;

3. Number of persons whose property is dam-aged;

4. Number of "insureds"; or

5. Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any re-maining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or "bacteria" described in A. Limit Of Liability of this endorsement, Condition B. Severability Of Insurance is replaced by the following:

### B. Severability Of Insurance

This insurance applies separately to each "in-sured" except with respect to the Aggregate Sub-limit of Liability described in this endorsement un-der Section II – Conditions A. Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

© ISO Properties, Inc., 2004

Policy Number: FH 20073610139 00

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL HURRICANE DEDUCTIBLE - LOUISIANA
### Forms HO 00 02, HO 00 03, and HO 00 08 Only

#### SCHEDULE

Hurricane Deductible Percentage Amount: 2   %

Insured's Signature:                                        Date:

Entries may be left blank if shown elsewhere in this policy for this coverage.

**A. Definitions**

The following definition, as defined by the National Hurricane Center of the National Weather Service, is added for the deductible provided by this endorsement:

"Hurricane" means a warm-core tropical cyclone in which the maximum sustained surface wind is 74 miles per hour or more.

**B. Special Hurricane Deductible**

1. We will pay only that part of the total of all loss payable under Section I – Property Coverages that exceeds the hurricane percentage deductible stated in this endorsement.

2. The dollar amount of the hurricane deductible is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown above.

3. The Hurricane deductible described above shall apply during the period:

   a. Beginning at the time a Hurricane watch or Hurricane warning is issued for any part of the state of Louisiana by the National Hurricane Center of the National Weather Service;

   b. Continuing for the time period which the Hurricane conditions exist anywhere in the state; and

   c. Ending 24 hours following the termination of the last Hurricane watch or Hurricane warning for any part of the state of Louisiana by the National Hurricane Center of the National Weather Service.

4. This deductible does not apply to Coverage D – Loss of Use.

**C. Loss by Windstorm That Is Not A Declared Hurricane**

Refer to the policy deductible shown on the Declarations page for the deductible that applies if the loss is caused by a windstorm loss that is not a declared hurricane.

All other provisions of this policy apply.

This endorsement forms part of the policy.

CTZ-U-0267 (04/05)
Copyright, Property Insurance Association of Louisiana, includes copyrighted material of ISO Properties, Inc. with its permission, 2001
Page 1 of 1

 

POLICY NUMBER: FH 20073610139 00

HOMEOWNERS
HO 04 90 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

**A. Eligible Property**

1.

Covered losses to the following property are settled at replacement cost at the time of the loss:

a. Coverage C; and

b. If covered in this policy:

(1) Awnings, outdoor antennas and outdoor equipment; and

(2) Carpeting and household appliances;

whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

a. Jewelry;

b. Furs and garments:

(1) Trimmed with fur; or

(2) Consisting principally of fur;

c. Cameras, projection machines, films and related articles of equipment;

d. Musical equipment and related articles of equipment;

e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

(1) Pens or pencils;

(2) Flasks;

(3) Smoking implements; or

(3) Jewelry; and

f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in A. above:

1. We will pay no more than the least of the following amounts:

a. Replacement cost at the time of loss without deduction for depreciation;

b. The full cost of repair at the time of loss;

c. The limit of liability that applies to Coverage C, if applicable;

d. Any applicable special limits of liability stated in this policy; or

e. For loss to any item described in A.2.a. - f. above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

HO 04 90 10 00          Copyright, Insurance Services Office, Inc., 1999          Page 1 of 1

POLICY NUMBER: FH 20073610139 00

**HOMEOWNERS**
**HO 04 16 10 00**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system
and/or automatic sprinkler system approved by us on
the "residence premises". You agree to maintain this
system or systems, for which we have granted a
credit, in working order and to let us know promptly of
any change, including removal, made to the
system(s).

Case 2:09-md-02047-EEF-MBN   Document 4467-6   Filed 07/19/10   Page 60 of 71



**Darcie Olexia, MSPH**
Environmental Health Scientist Coordinator
Section of Environmental Epidemiology & Toxicology
Office of Public Health
Department of Health & Hospitals

P.O. Box 60630
New Orleans LA 70160
Toll Free: 1-888-293-7020

Phone: 504-219-4579
Fax 504-219-4626
dolexia@dhh.la.gov



**EXHIBIT**

"$B$"



**STATE OF LOUISIANA**
**DEPARTMENT OF HEALTH AND HOSPITALS**



Bobby Jindal
GOVERNOR

Alan Levine
SECRETARY

May 28, 2009

Mr. and Mrs. Ross
316 Woodvine Ave.
Metairie, LA 70005

Dear Mr. and Mrs. Ross,

Thank you for allowing the Louisiana Department of Health and Hospitals to visit your home.
As you know, we conducted a visual assessment of your home and its surroundings in order to
document the conditions that you reported to us related to foreign drywall.

Our visual assessment supports a conclusion of the presence of foreign drywall in your home. A
summary of the information we collected while at your home is provided for your records.

This assessment will help us to better define the extent of the foreign drywall problem
throughout the State of Louisiana, and our observations will be shared with our federal partners
who are investigating this issue on a national level.

The Louisiana Department of Health and Hospitals is working with the US Centers for Disease
Control and Prevention to develop foreign drywall fact sheets for residents and medical
professionals. This information will be finalized soon and will be sent to your home address.

Thank you again for your cooperation in this investigation. If you have any questions or
concerns, please do not hesitate to call us at 1-888-293-7020.

Sincerely,

Darcie Olexia

Darcie Olexia, M.S.P.H.
Environmental Health Scientist
Louisiana Department of Health and Hospitals, Office of Public Health
Section of Environmental Epidemiology and Toxicology

Walk-through Checklist for Foreign Drywall                    (ver 5/12/09)

Name Mr. and Mrs. Ross
Address 316 Woodvine Ave, Metairie, LA 70005
Phone 504-883-5764
Date: 5/13/09
Time In: 10:40 am
Time Out: 11:40 am

## ODORS

☐ Sulfur (match strike)    ☐ Rotten egg/sewer gas
☐ Other                    ☐ Location of odor _____
☐ Dissipation of odor during visit? _____
☐ When do you smell the odor most often? _____

Staff did not detect a distinct odor in the home. Mrs. Ross stated that she did not notice
that the odor was prevalent during any time of the day. She stated that the smell was
worse during hot and humid weather.

## EVALUATION OF AIR CONDITIONING UNIT & COMPRESSED FREON LINE

☒ Age of A/C evaporator coil in air handling unit fall 2008 ____
☒ Replacement of A/C evaporator coil  ☒ How many times? 3  (3 units = 9 coils)
☐ Black corrosion of the coil (attach photos)
☒ Replacement of Freon ☒ How often? 3 _____
☒ Black corrosion on the compressed Freon line (attach photos)
   *This copper line is approximately ¼ inch in diameter and can be easily viewed without opening the
   air handling unit or removing any panels. If the air handler is in an interior closet or garage, go to it
   and look at the un-insulated copper line going into the air handler. If the air handler is located in the
   attic or crawlspace, it is less common to find corrosion on the un-insulated Freon line.

## EVALUATION OF ELECTRICAL WIRING

☐ Black corrosion of un-insulated ground wires in main breaker panel (attach photos)
    ☐ Location_____

☒ Black corrosion at light switches (attach photos)
    ☒ Location  upstairs office_____

☐ Black corrosion of electrical outlets (attach photos)
    ☐ Location_____

☐ Professional inspector or licensed electrician/technician to confirm corrosion

## EVALUATION OF OTHER METAL SURFACES

☐ Corrosion of copper, brass or metallic surfaces in kitchen: (attach photos)
    ☐ sinks ☐ faucets ☐ plumbing/valves
☐ Corrosion of copper, brass or metallic surfaces in bath: (attach photos)
    ☐ sinks ☐ faucets ☐ plumbing/valves ☐ mirror trim
☒ Corrosion of copper, brass or metallic surfaces at water heater (attach photos)
☒ Corrosion of metal jewelry, ornamental fixtures (attach photos)
    ☒ Location Walk-in closet in master bedroom.

*Staff also noticed corrosion of silverware that was located in dining room, and pitting on light fixture in master bedroom.

* Nails on roof are corroding. The nails are galvanized. The corrosion was identified during when the roofers came to check for leaks. The homeowners have not replaced the nails because they continue to corrode. The sprayer in the kitchen had to be replaced.

## EVALUATION OF DRYWALL

☒ Imported drywall with "Made in China" markings (attach photos)
    ☒ Location Attic

☐ Imported drywall with "Knauff" markings (attach photos)
    ☐ Location_____

☐ Imported drywall with "Knauff Tianjin" markings (attach photos)
    ☐ Location_____

☐ Other markings (attach photos)
    ☐ Location_____

*Identifying drywall made in China may be the most difficult and possibly inconclusive. This requires cutting holes in walls and finding those markings are not guaranteed. Homes can have drywall from multiple manufacturers, American and imported. It is possible that the imported drywall was installed on the ceiling. Markings may be located under the insulation in the attic space. Some drywall has no marking at all.

## EVALUATION OF FAILURE OF ELECTRONIC DEVICES/SMOKE ALARM

☒ Failure of electronic devices (attach photos)
    ☒ television ☐ computer ☒ microwave ☒ other appliance (dishwasher (motor went out) , CD player)
☐ Failure of smoke alarm (attach photos)

**COMMENTS:**

*Health Problems:* Mrs. Ross' mother was living in the home and died on May 2, 2009. She had heart disease and COPD. Her mother's physician stated that Mrs. Ross' mother's condition may have been worsened due to dry wall exposure. Mrs. Ross stated that she has allergies and has been experiencing burning eye sensations. She is currently using eye drops. Mrs. Ross also stated that her symptoms are more noticeable when it is humid. She also stated that her dog is having respiratory problems and is currently taking Atopicia.

*Relocation:* The family is having the home gutted completely in 30-40 days. The family will be moving from the home until the home is completely renovated.

*Dry wall Distributor:* Homeowner informed the staff that the drywall was purchased from Interiors/Exteriors.

*Sampling:* Citizens insurance company collected a drywall sample for their analysis/records.



**Louisiana**
**Citizens**

Property Insurance
Corporation

FIRST PREMIUM INSURANCE GROUP
P.O. BOX 77
COVINGTON, LA 70434

PHONE (800) 258-2171
FAX (800) 269-2171
www.lacitizens.com

03/20/2009

Terrence M Ross
316 Woodvine Ave
Metairie, LA 70005

Re: Louisiana Citizens Property Insurance Corporation
    Policy Number:   FH 20073610139 01
    Claim Number:   2009OT001355
    Insured(s):     Terrence M Ross
    Claimant(s):
    Date of Loss:    03/19/2009

Dear Terrence Ross:

This follows our telephone conversation regarding the above referenced claim. In that conversation
I advised you that I am the adjuster handling this claim. Therefore, I would appreciate you
forwarding any and all future correspondence to my attention, referencing the above claim number.

Enclosed is a **Reservation of Rights Agreement** form. Please complete this form in detail,
have your signature notarized where indicated, and return it to us via the US Postal Service
along with a copy of this letter.

Should you have any questions, do not hesitate to contact me at 1-888-741-0088, ext 4413. If I am
unavailable when you call, please leave your name, phone number, and claim number on my voice
mail or with our operator.

Your prompt response will be most appreciated.

Sincerely,

LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION
**Jessica Charles**
Claims Adjuster

**EXHIBIT**

"_C_"

**\*CZ023300P1\***

CTZ-C-0233 (01/05)

**\*CZ226057\***

Page 1 of 3

## Louisiana Citizens Property Insurance Corporation
### Reservation of Rights Agreement

Claim Number: 2009OT001355

It is hereby agreed between *TERRENCE & RHONDA ROSS* herein after called Insured, and **Louisiana Citizens Property Insurance Corporation**, hereinafter called the Company, which has heretofore issued to the Insured its policy number FH 20073610139 01 that any action taken by the Company in investigating that certain accident alleged to have occurred on the __19__ day of __March__, __2009__, and all facts pertaining thereto, including the cause, injuries, loss, and damages, shall not in any way change, waive, invalidate, or forfeit any of the terms, conditions, and requirements of said policy or any of the rights of either of the parties hereto under said policy; and in the event any suit has been or shall be filed against the Insured growing out of said accident, should the Company elect to defend said suit or participate therein, including participation in discovery and settlement negotiations, said defense or participation therein by it shall not be construed to change, waive, invalidate, or forfeit any of the terms and conditions of said policy or any of its rights thereunder. No act of the Company done by way of the terms and conditions shall be construed as any admission of coverage under said policy.

The Insured understands that the Company is obtaining this agreement in order to preserve its right to assert against the Insured a defense to the Company's liability under said policy, based on the following policy clause and circumstances, should the Company subsequently determine that such policy defense would be proper:

### SECTION I – EXCLUSIONS
**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**B.** We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:
   a. Planning, zoning, development, surveying, siting;
   b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c. Materials used in repair, construction, renovation or remodeling; or
   d. Maintenance; of part or all of any property whether on or off the "residence premises".

It is the intention of this agreement to permit a full investigation of said accident and a defense of any suit brought on account of said accident, should the Company elect to defend or participate therein, without in any way affecting, impairing, or waiving any of the rights of either party hereto except that the Insured waives the right to insist that such investigation or defense by the Company shall constitute an admission of liability under said policy.

Any person who knowingly presents a false or fraudulent claim for payment of loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

EXECUTED THIS _____ day of _____, _____.

Witness(es):                                    Insured(s):

# *CZ004600P2*                    *CZ226057*

CTZ-C-0046 (01/05)                                              Page 2 of 3

LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION

By: _____
     Claims Department

*CZ004600P2*

CTZ-C-0046 (01/05)

*CZ226057*

Page 3 of 3

**Louisiana**
**Citizens**

FIRST PREMIUM INSURANCE GROUP
P.O. BOX 77
COVINGTON, LA 70434

PHONE (800) 256-2171
FAX (800) 258-2171
www.lacitizens.com

04/29/2009

Terrence M Ross
316 Woodvine Ave
Metairie, LA 70005

Re:    Louisiana Citizens Property Insurance Corporation
       Policy Number:      FH 20073610139 01
       Claim Number:       2009OT001355
       Insured:            Terrence M Ross
       Insured Location:   316 Woodvine Ave  Metairie, LA 70005
       Date of Loss:       03/19/2009

Dear Terrence M Ross:

You notified Louisiana Citizens Property Insurance Corporation that you had sustained losses due to Other. As we told you when you made the claim, Louisiana Citizens would undertake to investigate your claim under full reservation of its rights to deny coverage for all or any part of the claim which was determined not to be covered.

Our adjuster's inspection revealed water damage to the ceilings of the living room and master bathroom along with rotten wood on the exterior patio. The adjuster's observation indicated these damages are not related to the Chinese Drywall. A plumber would need to be hired by you to determine if there is a water leak somewhere that is causing these damages. Your Homeowner's 3 policy does not cover for damages resulting from discharge of pollutants, therefore any ensuing loss to the property from Chinese Drywall would not be covered.

### SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling And Coverage B –
Other Structures**
1. We insure against risk of direct physical loss to property described in Coverages **A** and **B**.
2. We do not insure, however, for loss:
c. Caused by:
(6) Any of the following:
(e) Discharge, dispersal, seepage,
migration, release or escape of pollutants
unless the discharge, dispersal,
seepage, migration, release or
escape is itself caused by a Peril Insured
Against named under Coverage C.

CTZ-C-0417 (01/05)


EXHIBIT
"D"

Terrence M Ross
04/29/2009
Page 2
Pollutants means any solid, liquid,
gaseous or thermal irritant or contaminant,
including smoke, vapor,
soot, fumes, acids, alkalis, chemicals
and waste. Waste includes materials
to be recycled, reconditioned
or reclaimed;

Because damages resulting from Chinese Drywall are not covered on your Homeowner's
3 policy, we must respectfully deny coverage for your claim.

If you believe our determination is incorrect, we will be happy to review whatever
additional information you care to submit. Should you have any questions, please do not
hesitate to contact the undersigned.

Sincerely,

LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION

Jessica Charles/JCC
Claims Department

LEAKE & ANDERSSON, L.L.P.
ATTORNEYS AT LAW
1100 POYDRAS STREET
SUITE 1700
NEW ORLEANS, LA 70163-1701

TELEPHONE: (504) 585-7800
FACSIMILE: (504) 585-7775

JASON R. BONNET
jbonnet@leakeandersson.com
REPLY TO NEW ORLEANS OFFICE

P.O. DRAWER Z
LAFAYETTE, LA 70502
TELEPHONE: (337) 233-7430
FACSIMILE: (337) 233-8403

CHASE TOWERS, SUITE 800
600 JEFFERSON STREET
LAFAYETTE, LA 70501-6942

June 23, 2009

**VIA FACSIMILE & U.S. MAIL**
504/247-0224 (32 pages)

C. Adams Construction, LLC
Attn: Chris Adams
1500 Woodland Hwy.
Belle Chasse, LA 70037

RE:  Ross v. C. Adams Construction/State Farm/Citizens Insurance
L&A File No.: 3670/39555

Dear Mr. Adams:

Please be advised that our office has been retained by Mr. and Mrs. Terrance Ross in connection with several defects in the property located at 316 Woodvine Avenue, Metairie, LA 70005. According to our information, this property was previously owned and renovated by C. Adams Construction & Design, LLC and sold to Mr. and Mrs. Ross in January of 2007. Our clients recently discovered that during the construction and/or remodeling by C. Adams Construction & Design, LLC, "Chinese drywall" was selected by you to be used in the property. The use of this "Chinese drywall" has caused substantial damage to Mr. Ross' property including damage to the walls, finishes, and several components of the heating, ventilation and air conditioning systems.

Below you will find a breakdown of costs associated with the necessary repairs to the Ross' property. The total cost to repair the home amounts to $307,204.15. This includes the cost of construction, moving costs, storage costs and living expenses. A breakdown of the costs is as follows:

| | | |
|---|---|---|
| a. | Repair Estimate- J.W. Drennan, L.L.C. | $256,015.15 |
| b. | Piano Moving Estimate- Hall Piano | $725.00 |
| c. | Moving Expenses- Johnson United Van Lines | $12,694.00 |
| d. | Portable Storage costs- PODS | $1,500 |
| e. | Loss of use | $36,000 |

Total cost breakdown        $307,204.15

MEMBER ALFA INTERNATIONAL
THE GLOBAL LEGAL NETWORK

EXHIBIT
" E "

LEAKE & ANDERSSON, L.L.P.

C. Adams Construction
June 23, 2009
Page 2


Pursuant to Louisiana Civil Code Article 2531, formal notice is hereby made demanding that you repair, remedy, and/or correct the defects itemized in the attached invoice. If you fail to agree to repair these defects within the next fifteen (15) days, we will have no choice but to file suit demanding a partial return of the purchase price in the amount of $307,204.15 so that he can have another contractor repair these damages.

Please feel free to contact my office as soon as possible to coordinate the repairs to the property or in reference to any questions you may have.

Sincerely,

Donald E. McKay, Jr.
Jason R. Bonnet

DEMjr/JRB/nn
Enclosures
CP;39555/C. Adams 01.doc#3