UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | CASE NO. 2:09-MD-2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to: (Canty 10-** | * | |
| **0929)** | * | MAGISTRATE WILKINSON |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS IN COMPLIANCE WITH COURT'S JULY 1, 2010 ORDER**

Judy Y. Barrasso, 2814
Catherine F. Giarrusso, 29875
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

Steven M. Levy
Mark L. Hanover
SONNENSCHEIN NATH &
ROSENTHAL, LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
(312) 876-8000

162447

## INTRODUCTION

All Plaintiffs' claims fail as a matter of law and should be dismissed. Plaintiffs allege Allstate Insurance Company ("Allstate") breached the terms of their homeowners insurance policy and acted in bad faith by failing to pay for losses allegedly due to defective Chinese manufactured drywall installed in Plaintiffs' home.[1]

Initially, it is clear from the face of the Complaint that Plaintiffs cannot show, as they must, that their loss was covered in the first instance.

**Coverage Language**:

- The Policy language granting coverage states, in relevant part: "**We** will cover sudden and accidental direct physical loss to property described in **Coverage A- Dwelling Protection** and **Coverage B – Other Structures Protection** except as limited or excluded in this policy." Exh. A, at All-Canty 40.

- Courts have construed "direct physical loss" to mean either an initial satisfactory state that was physically changed into an unsatisfactory state by an external event or tangible damage to property. Here, Plaintiffs allege the drywall itself is not damaged, so it clearly meets neither of these definitions.

Alternatively, even if coverage applies under the initial language above, Plaintiffs' claims also fail as a matter of law because several policy exclusions preclude coverage here. Each exclusion is separate and distinct, such that only one need apply to preclude coverage for damages resulting from Chinese drywall.

**Corrosion Exclusion**:

- COMPLAINT: Plaintiffs allege their loss includes damages caused by "corrosion of air-conditioner coils, copper tubing, electrical wiring and other household items" due to the Chinese drywall.

- POLICY: The Policy precludes coverage for "loss consisting of or caused by . . . rust or other *corrosion*," and courts have applied corrosion exclusions to Chinese drywall claims. Exh. A, at All-Canty 41.

---

[1] Only Allstate Insurance Company insured Plaintiffs, so the other two Defendants are moving separately for dismissal due to lack of standing. Since Plaintiffs refer to all Defendants as "Allstate," Defendants will do the same herein.

162447

**Latent Defect Exclusion:**

- COMPLAINT:  Plaintiffs allege they did not become "aware of the potential damaging effects of Chinese manufactured drywall" until Spring of 2009, when they learned of it "through various media reports, primarily through local television and print news."

- POLICY:  The Policy precludes coverage for "loss consisting of or caused by . . . .*latent defect*."  Exh. A, at All-Canty 41 (emphasis added).  A latent defect is one that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal, and courts have applied latent defect exclusions to Chinese drywall losses.

**Contamination and Pollution Exclusions:**

- COMPLAINT:  Plaintiffs allege their loss resulted from the Chinese drywall "emit[ting] compounds" that caused corrosion to their property.

- POLICY:  The Policy precludes coverage for losses consisting of or caused by "vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants," and "contamination, including but not limited to the presence of toxic, noxious or hazardous gasses, chemicals, liquids, solids or other substances at the residence premises."  Exh. A, at All-Canty 41.  Courts have applied contamination and/or pollution exclusions in similar circumstances -- including in connection with contaminants or pollutants within an insured's home, and, in particular, in connection with alleged loss due to Chinese drywall in an insured's home.

**Faulty Materials Exclusion**

- COMPLAINT:  Plaintiffs allege their home was "constructed using Chinese manufactured drywall, which caused, and continues to cause, physical loss and damage to their properties and contents."

- POLICY:  The Policy precludes coverage for losses consisting of or caused by "Planning, Construction or Maintenance, meaning faulty, inadequate or defective:  planning, zoning, development, surveying, siting; design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; materials used in repair, construction, renovation or remodeling; or maintenance."  Exh. A, at All-Canty 42.  Courts have applied faulty materials exclusions both in the context of Chinese drywall claims and in analogous situations.[2]

---

[2]  Indeed, if the Court rejects Allstate's initial argument -- *i.e.,* that coverage does not exist here in the first instance -- that would necessarily entail a finding that the drywall is defective.  Such a finding would then clearly bring the alleged loss within this exclusion.

162447

Moreover, because Allstate had a reasonable basis for denying coverage for Plaintiffs' Chinese drywall losses, Plaintiffs' bad faith claim fails. Finally, because Plaintiffs cannot demonstrate any likelihood of success on the merits of their claims, their request for injunctive relief fails as a matter of law.

## BACKGROUND

This case arises from alleged losses due to Chinese drywall in Plaintiffs' home. Plaintiffs, Honore and Elaine Canty, reside at 2785 Highway 39, Braithwaite, Louisiana, and are insureds under an Allstate Insurance Company homeowners insurance policy, No. 095006137. (Compl., ¶¶ 1-2.)[3] According to Plaintiffs, beginning in the Spring of 2009, they and the putative class they seek to represent "became aware of the potential damaging effects of Chinese manufactured drywall through various media reports." (*Id.,* ¶ 18.) Plaintiffs allege that after "these reports and other investigations," they "discovered that their properties were constructed using Chinese manufactured drywall, which caused, and continues to cause, physical loss and damage to their properties and contents. The Chinese drywall emits compounds that cause rapid corrosion of air-conditioner coils, copper tubing, electrical wiring, computer wiring and other household items." (*Id.*)

Plaintiffs contacted Allstate Insurance Company to make a claim on July 7, 2009, which was denied on July 17, 2009. (*Id.,* ¶ 19.) Plaintiffs further allege Allstate has denied or intends to deny putative class members' claims based on their policies' pollution exclusion, wear

---

[3] Plaintiffs fail to attach their insurance policy to their Complaint. However, Allstate has attached Plaintiffs' policy as an exhibit (*see* Policy, attached to the authenticating Declaration of Linda Sisson, which is attached hereto as Exhibit A), and this Court may rely on that policy, which is central to Plaintiffs' claims, in the context of this Rule 12(b) motion. *Kane Enterprises v. MacGregor USA, Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (the "court may review the documents attached to the motion to dismiss, *e.g.*, the contracts in issue here, where the complaint refers to the documents and they are central to the claim").

and tear, inherent vice and/or latent defect exclusion, and materials defect and/or faulty workmanship exclusion.  (*Id.,* ¶¶, 19, 22.)

Plaintiffs assert three causes of action:  Count I-Declaratory Relief, seeking a declaration that the aforementioned policy exclusions do not apply to damages arising from Chinese drywall; Count II-Bad Faith, based on Allstate's alleged misrepresentation of the policy exclusions in denying claims; and Count III-Injunctive Relief, enjoining Allstate from dropping coverage, increasing rates or otherwise deterring putative class members from renewing or retaining their homeowners coverage due to the presence of Chinese drywall.

## ARGUMENT

## I.   PLAINTIFFS' POLICY IS A CONTRACT TO BE CONSTRUED UNDER THE GENERAL RULES OF CONTRACT INTERPRETATION.

Louisiana law requires the Court to enforce the unambiguous terms of the plaintiffs' insurance policy as written.[4]  An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation as set forth in the Louisiana Civil Code.[5]  Interpretation of a contract is the determination of the common intent of the parties.[6]  To determine the parties' intent, the court should consider all parts of the contract together, ensuring that each provision is given effect and none is rendered meaningless.[7]  When the words of a contract are clear and explicit and lead to no absurd consequences, no further

---

[4]  *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003); La. Civ. Code art. 2046.

[5]  *See, e.g., Comeaux v. State Farm Fire & Cas. Co.*, 986 So. 2d 153, 157 (La. App. 5 Cir. 2008).

[6]  *See Radcliffe v. Zip Tube Sys. of La., Inc.*, 998 So.2d 107 (La. App. 1 Cir. 2008); *Naquin v. Louisiana Power & Light Co.*, 943 So. 2d 1156, 1161 (La. App. 1 Cir. 2006); La. Civ. Code art. 2045.   Copies of unpublished decisions cited herein are attached hereto, in order of citation, as Group Exhibit B.

[7]  *See Millenium Petrochem., Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 342 (5th Cir. 2004); *Makofsky v. Cunningham*, 576 F.2d 1223, 1230 (5th Cir. 1978).

162447

interpretation may be made in search of the parties' intent.[8]   It is well settled that insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.[9]

## II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO ALLEGE THEIR PROPERTY DAMAGE FALLS WITHIN THE TERMS OF THEIR POLICY'S COVERAGE GRANT.

Initially, Plaintiffs' claims fail as a matter of law because the property damage they allegedly suffered does not fall within the terms of their Policy's coverage grant (cited *supra* at p. 1).  Plaintiffs have the burden of proving any property damage they have suffered falls within the terms of their Policy's coverage grant.[10]   Here, Plaintiffs' alleged loss from defective Chinese drywall does not fall within the coverage grant, because the presence of the drywall in Plaintiffs' home is not an "accidental direct physical loss," as their Policy expressly requires to trigger coverage.

Courts have construed the terms "accidental direct physical loss" to mean an initial satisfactory state that was physically changed into an unsatisfactory state by an external event.  For example, in *Trinity Industries, Inc. v. Insurance Co. of N. America,* 916 F.2d 267 (5th Cir. 1990) (applying Louisiana law), the plaintiff sought coverage based on defective workmanship.  The Fifth Circuit held the insured's faulty construction in itself did not constitute property damage, so the cost of repair did not fall within the policy's coverage grant:

> The language "physical loss or damage" strongly implies that there was an initial
> satisfactory state that was changed by some external event into an unsatisfactory

---

[8]   *See Cadwallader,* 848 So. 2d at 580; La. Civ. Code art. 2046; *Radcliffe,* 998 So. 2d 107; *Naquin,* 943 So. 2d at 1161.

[9]   *See Reynolds v. Select Prop., Ltd.,* 634 So. 2d 1180, 1183 (La. 1994) (citing *Oceanonics, Inc. v. Petroleum Distrib. Co.,* 292 So. 2d 190 (La. 1974)).

[10]   *See, e.g., Tunstall v. Stierwald,* 809 So. 2d 916, 919 (La. 2002); *Whitham v. Louisiana Farm Bureau Cas. Ins. Co.,* 34 So. 3d 1104 (La. App. 2 Cir. 2010); *Lamar Advertising Co. v. Continental Cas. Co.,* 396 F.3d 654, 665 n. 10 (5th Cir. 2005).

162447

state – for example, the car was undamaged before the collision dented the bumper.  It would not ordinarily be thought to encompass faulty initial construction.

*Id.* at 270-71.[11]

Here, from the face of the Complaint, it is clear that the drywall in Plaintiffs' home was never, as contemplated in *Trinity*, "in an initial satisfactory state that was changed by some external event into an unsatisfactory state."  916 F.2d at 270-71.  To the contrary, Plaintiffs allege the "drywall itself is not damaged or defective relative to the expected performance of drywall," and that it "performs satisfactorily all the functions of non-defective drywall." (Compl., ¶¶ 34, 35.)  Accordingly, there was no "accidental direct physical loss" to the drywall itself, so the cost of repairing or replacing the drywall is not a covered loss.

Courts have also construed the term "direct physical loss" to mean tangible damage to the insured property.  Recently, in *Universal Image Productions, Inc. v. Chubb Corp.*, 2010 WL 1257770 (E.D. Mich. Mar. 29, 2010), the court held that neither mold contamination nor the threat thereof constituted a "direct physical loss" under a policy's express language.[12]

---

[11]   *See also Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 Fed. Appx. 465, 2006 WL 1489249 (5th Cir. May 25, 2006) (insured gas company sought coverage under property insurance policies covering natural gas produced by certain designated wells.  Insured learned that some of the gas had been diverted so that it was reinjected into the gas stream and that, as a result of this recirculation, gas which had already been metered and purchased by the insured gas company was recirculated and hence remetered and resold to the insured.  Court found that no coverage existed because, *inter alia,* the policies' "direct physical loss" requirement was not met since the covered property was not returned in a damaged state); *Maister Assocs. v. State Farm Fire & Cas. Co.*, 2009 WL 926981, *3 (E.D. La. Mar. 31, 2009), *aff'd,* 350 Fed. Appx. 978 (5th Cir. 2009) ("To be entitled to recover insurance proceeds for damage to the premises, there must be an accidental event that results in a direct physical loss that is not otherwise excluded by the policy").

[12]   Specifically, the court stated:   "After reviewing the authority presented by both parties, the Court finds Federal's argument to be more persuasive.  *Universal has not shown that it suffered any structural or any other tangible damage to the insured property.  .  .*  Although Universal cites testimony which indicates that the entire first floor of its insured premises had been engulfed by an appalling odor, there is no evidence that this stench was so pervasive as to render the premises uninhabitable."   *Id.,* *4 (emphasis added).  *See also Whitaker v. Nationwide Mut. Ins. Co.*, 115 F. Supp. 2d 612, 617 (E.D. Va. 1999) ("Plaintiff's claims for repair of construction defects . . . are not covered by the policy because they do not allege claims for direct physical loss"); *Tocci Bldg. Corp. v. Zurich Am. Ins. Co.*, 659 F. Supp. 2d 251, 259-60 (D. Mass. 1991) (cost of grouting undamaged portion of insured's wall, which had not collapsed during rainstorm, was not covered because it did not sustain "direct physical loss").

From the face of the Complaint, it is clear this definition is not met either.  As noted, Plaintiffs allege the drywall itself is not damaged.  That is the antithesis of "tangible damage" or "physical loss."[13]

## III.   SEVERAL EXCLUSIONS ALSO PLAINLY PRECLUDE COVERAGE UNDER PLAINTIFFS' POLICY

Even if Plaintiffs could satisfy their burden of establishing that coverage exists in the first instance, their claims still fail as a matter of law based on numerous clear and unambiguous policy exclusions -- although only one of these need apply to preclude any coverage for Plaintiffs' damages.

### A.   The Corrosion Exclusion Precludes Coverage.

The corrosion exclusion (*see supra* at p. 1) contained in Plaintiffs' policy plainly precludes coverage here.   Courts inside and outside Louisiana have enforced the corrosion exclusion under similar circumstances.   In *Transcontinental Ins. Co. v. Guico Machine Works, Inc.,* 2008 WL 4286538 (E.D. La. Sept. 17, 2008), Judge Englehardt applied a similar exclusion to preclude coverage for rust where the insured's equipment rusted after the insured building sustained roof damage during Hurricane Katrina.   Judge Englehardt held:    "Although these

---

[13]    It should be noted that one court recently held, in the context of a Chinese drywall claim, that while various policy exclusions (to be discussed *infra*) precluded coverage for that claim, the applicable policy's "direct physical loss" requirement was met in that case.   *See Travco Ins. Co. v. Ward,* 2010 WL 2222255 (E.D. Va. June 3, 2010). Allstate respectfully submits that the *Travco* decision is readily distinguishable. Initially, the *Travco* court did not address or consider the Fifth Circuit's decision in *Trinity, supra,* which is controlling here, where, as noted, the Court held there is no "direct physical loss" unless the property, unlike the drywall here, is in "in an initial satisfactory state that was changed by some external event into an unsatisfactory state." *Trinity,* 916 F.2d at 270-71.   That is precisely the situation with Plaintiffs' alleged drywall loss.   In addition, in finding the "direct physical loss" requirement was met, the *Travco* court noted the plaintiff there alleged he was forced to vacate his home, and cited cases in which a direct physical loss was found to occur where the insured building became uninhabitable or unusable.    *Travco,* 2010 WL 2222255, **8-9.   Here, unlike in *Travco,* Plaintiffs have not alleged their home has been rendered completely uninhabitable or unusable; indeed, as noted, they have expressly alleged the drywall is intact and performing as drywall.   It should also be noted that in *Ross v. C. Adams Construction & Design, L.L.C.,* No. 676-185 (La. Dist. Ct., Jefferson Parish, Apr. 14, 2010), another Chinese drywall case, the court granted summary judgment to the defendant homeowners insurer, Louisiana Citizens, albeit with no express findings, where, as here, the insurer argued the plaintiff's loss did not meet the "direct physical loss" requirement.

exclusions clearly would apply to an insured's failure to maintain and protect its property from rain and humidity under ordinary circumstances, the language of the exclusion is not so limited. Nor is it ambiguous.  Rather, it simply excludes *all* loss or damage from rust or dampness of atmosphere." *Id.*, *1 (emphasis in original).  *See also Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, 2008 WL 687184, *3 (E.D. La. Mar. 10, 2008) (court found a "rust/corrosion" exclusion substantively similar to Allstate's here precluded coverage for rust damage to plaintiff's property which was discovered after he experienced water intrusion from Hurricane Katrina: "The words of the Policy at issue are clear and explicit and, if enforced, will lead to no absurd consequence.  As this Court must enforce the contract as written, evidence of rust and mold to Plaintiff's equipment is immaterial, as the Policy expressly excludes rust and mold"); *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 984-86 (La. 1991) (boiler and machinery policy at issue provided coverage for loss directly caused by an "accident," but stated an accident "shall not mean . . . corrosion."  Louisiana Supreme Court found that "corrosion" included cracks resulting from corrosion pitting, which was not covered by the policy).[14]

---

[14] Other courts have likewise applied the corrosion exclusion in similar circumstances. *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 2009 WL 4855484 (S.D. Fla. Dec. 9, 2009), involved a marine insurance policy which contained a similar corrosion exclusion:  "We will not provide Property Damage Coverage for any loss or damage caused by or resulting from . . . corrosion." *Id.*, *3.  After the insured's yacht partially sank while undergoing repairs, St. Paul sought a declaration that it owed no coverage for the loss.  The court found that the proximate cause of the loss was the failure of a brass hose barb, which resulted from corrosion. *Id.*, *7.  Because "the proximate cause of the loss was corrosion, and corrosion is a cause of loss excluded under the Policy," the court held there was no coverage for the loss. *Id. See also Resorts Intern. v. Amer. Home Assur. Co.*, 311 So. 2d 806, 807 (Fla. 3d DCA 1975) (enforcing corrosion exclusion where air-conditioning failure indisputably was caused by corrosion); *Church of the Palms-Presbyterian, Inc. v. Cincinnati Ins. Co.*, 404 F. Supp. 2d 1339, 1342 (M.D. Fla. 2005) (holding that rust, corrosion and fungus exclusion unambiguously excluded damage caused by mold).  Similarly, courts have enforced the corrosion exclusion to preclude coverage for corrosion to metal surfaces of equipment, switch plates and copper piping, which had to be replaced. *Gilbane Building Co. v. Altman Co.*, 2005 WL 534906 (Ohio App. – Franklin Cty. Mar. 8, 2005).  There, the insured argued that given the nature of the corrosion, which was a "fast-acting, acid-based chemical reaction," the court should apply the "common sense" understanding of the term "corrosion," and find this was not the type of corrosion intended to be excluded under the policy. *Id.*  The court rejected this argument, stating the policy excluded loss due to corrosion,

8

Notably, in *Travco*, which also involved the applicability of the corrosion exclusion to corrosion caused by defective Chinese drywall, the court held a corrosion exclusion similar to Allstate's precluded coverage for alleged Chinese drywall losses, correctly noting: "Most jurisdictions hold that an exclusion for damages caused by corrosion precludes recovery for damages caused by corrosion regardless of what caused the corrosion or how suddenly the corrosion occurred." *Travco*, 2010 WL 2222255, *14 (citations omitted).[15]   *See also Ross* (granting summary judgment for the defendant homeowners insurer and denying summary judgment to the insureds, where the insurer argued that a corrosion exclusion similar to Allstate's barred coverage for losses caused by Chinese drywall).

Here, Plaintiffs specifically allege that their loss includes damages caused by corrosion, stating that "Chinese drywall emits compounds that cause rapid corrosion of air-conditioner coils, copper tubing, electrical wiring, computer wiring and other household items." (Compl., ¶ 18.)   This allegation alone amply demonstrates the applicability of the corrosion exclusion.   Plaintiffs' allegations regarding damage due to corrosion are consistent with this Court's detailed discussion, in lawsuits against Chinese drywall manufacturers and/or distributors, regarding the corrosive nature of the damages allegedly caused by the drywall.   *See Germano, et al. v. Taishan Gypsum Co. Ltd., et al.*, No. 09-6687, Rec. Doc. No. 2380 (E.D. La.

---

and did "not qualify the exclusion by limiting its application only to long-term rust or corrosion as opposed to rust or corrosion that forms quickly." *Id.*, *4.  Because the loss was due to corrosion and rust on the metal surfaces of the equipment and piping, the court found the corrosion exclusion barred coverage. *Id.*, *5. *See also Heban v. Auto-Owners Ins. Co.*, 2003 WL 21862170 (Ohio App. – Wood Cty. Aug. 8, 2003) (enforcing corrosion exclusion to preclude coverage for damage to glass panes which had become discolored due to corrosion); *Kay v. United Pacific Ins. Co.*, 902 F. Supp. 656 (D. Md. 1995) (applying corrosion exclusion to preclude coverage for corroded rebar).

[15]   The court further reasoned that the ordinary meaning of corrosion includes the "action or process of corroding," which is what occurred in connection with the insured's Chinese drywall losses. *Id.*, *15.  In addition, the court noted the insured's position that the loss was not caused by corrosion, but instead was caused by gases emitted by the drywall, "would tend to render the corrosion exception meaningless." *Id.*

162447

Apr. 8, 2010) and *Hernandez v. Knauf Gips KG, et al.,* No. 09-6060, Rec. Doc. No. 2713 (E.D. La. Apr. 27, 2010).[16]  For example, this Court concluded the *Germano* plaintiffs' homes were exposed to a corrosive environment produced by Chinese drywall, finding the level of corrosive sulfur gases in plaintiffs' homes exceeded the safe levels established by various recognized standards.   *Germano,* slip. op. at 17-26.   This Court made similar damages findings in *Hernandez,* again discussing the corrosion caused by the Chinese drywall due to its higher concentration of strontium and levels of elemental sulfur, and the corrosive effects of sulfur on copper and silver, which are prevalent in most homes and buildings.  *Hernandez,* slip op. at 15-16.  This Court noted the evidence was "conclusive that the corrosion in the Hernandez home was proximately caused by exposure to Chinese drywall," and explained that corrosion on copper and silver conducting surfaces increases the resistance of the electrical current, which causes either complete failure or excessive heating in the connection.  *Id.* at 17.[17]

Notwithstanding the mountain of authority supporting enforcement of the exclusion here, and Plaintiffs' and their counsels' own Complaint allegations, Plaintiffs likely will argue the corrosion exclusion does not apply, citing Judge Medley's decision in *Finger,* and

---

[16]  Allstate submits that this Court may take judicial notice of its findings in *Germano* and *Hernandez,* and respectfully requests that it do so.  *See, e.g., In re Beef Industry Antitrust Litig.,* 607 F.2d 167, 170 (5th Cir. 1979) (noting district court had taken judicial notice of matters submitted in another case in the multidistrict litigation); *In re Agent Orange Product Liability Litigation,* 611 F. Supp. 1223, 1230 (E.D.N.Y. 1985) (noting that court had considered numerous "documents in all the related MDL cases").

[17]  The plaintiffs'. allegations in the Omnibus Complaints against the Chinese drywall manufacturers, distributors and others ("Omnibus Complaints"), of which this Court may take judicial notice (*see* n. 16), also support this conclusion. *See, e.g.,* Group Exhibit C, which includes the relevant pages from Plaintiffs' Amended Omnibus Class Action Complaint (V) in *Amato v. Liberty Mut. Ins. Co., et al.,* No. 10-932 (E.D. La. May 11, 2010), ¶ 627, of which Plaintiffs are a part (referring to "corrosive" effects of Chinese drywall); Class Action Complaint in *Payton v. Knauf Gips KG,* No. 09-cv-07628 (E.D. La. Dec. 9, 2009); ¶¶ 14, 2615, of which Plaintiffs are a part (same).  *See also* Plaintiffs' Amended Omnibus Class Action Complaint (IV) in *Rogers v. Knauf Gips KG.,* No. 10-362 (E.D. La. Mar. 15, 2010), ¶ 684 (same); and Plaintiffs' Amended Omnibus Class Action Complaint (II) in *Wiltz v. Beijing New Building Materials Public Ltd. Co., et al.,* No. 10-361 (E.D. La. Mar 15, 2010), ¶ 743 (same).

162447

*Trus Joist v. MacMillan v. Neeb Kearney & Co.,* 2000 WL 306654 (E.D. La. Mar. 23, 2000). Neither case compels the conclusion that the corrosion exclusion does not apply.

Both *Finger* and *Trus Joist* are distinguishable because, unlike the policy language at issue in those cases, Allstate's corrosion exclusion is broader, precluding "loss *consisting of* or caused by" corrosion. Allstate's language clearly excludes loss of corroded property or loss caused by corrosion. That is, the non-covered corrosion can be both the cause of the property damage and the damage itself. Indeed, Allstate's policy language is substantively similar to that in *Kay,* where the court rejected this very argument -- *i.e.,* that a corrosion exclusion applies only where the corrosion is the cause of the damage, not the damage itself.[18]

**B.     The Latent Defect Exclusion Applies.**

The latent defect exclusion (*see supra* at p. 2) also applies to preclude coverage here. Louisiana courts have defined a "latent defect" as a "defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not

---

[18]   Specifically, the *Kay* court rejected the plaintiffs' argument that "corrosion" has two meanings -- the process of corrosion and the product of corrosion -- and that the corrosion exclusion was intended to cover only the latter, *i.e.,* the corrosion itself, not an effect of the process of corrosion such as the loss of required structural strength. In so ruling, the court stated, in language equally applicable here:

There are three fallacies in this argument. First, plaintiffs have not presented one shred of evidence to suggest that the parties did not intend that the word "corrosion" as used in Exclusion 2.g. was not intended to encompass both aspects of its commonly understood meaning. Second, although there are two definitions given to "corrosion" in Webster's Third International Dictionary, and although the second definition is "a product of corrosion," the first definition itself includes both of the meanings ascribed by plaintiffs: "the action, process or effect of corroding." Third, when Exclusion 2.g. is read in its entirety, *i.e.* beginning at the start of the exclusions section on page 1 rather than with the alphabetical heading g., it seems apparent that as a matter of grammatical structure corrosion is being used in its sense of a process, not in its sense of a completed state. Beginning at the beginning, the Exclusion states: "[w]e will not pay for loss, expense or damage ... caused by or resulting from ... corrosion." Thus read, that which is being excluded is precisely that which plaintiffs seek to include: losses and damages, such as the loss of required structural strength, that are the effects of corrosion.

902 F. Supp. at 658. *See also Hayley v. Allstate Ins. Co.,* 262 Mich. App. 571, 575-76, 686 N.W.2d 273, 276 (2004), *app. denied,* 472 Mich. 923, 697 N.W.2d 155 (2005) (holding exclusion precluding coverage for "loss consisting of or caused by" mold "clearly excludes both losses caused by mold and losses consisting of mold damage").

reveal."[19]  In *Nida,* State Farm argued that damage to the insured's home was caused by a "latent defect" resulting from an improperly designed foundation.  454 So. 2d at 335.  The court agreed, finding "the vice in the construction of the foundation falls within . . . [the] definition [of 'latent defect'] and such a construction is reasonable as concerns both parties.  As noted by the trial judge . . . 'the foundation of the home was not constructed to withstand this movement of the earth which occurs in this area.'  The defendant-insurer simply was not a guarantor of the constructor's building performance."  *Id.*

Another federal district court has held the latent defect exclusion applies to loss caused by Chinese drywall.  In *Travco,* the court, considering similar policy language, found the insured's residence "contains defective drywall that is off-gassing and damaging other components" of the residence, and is "plainly integral to the Residence's manufacture and construction.  Accordingly, the court finds that the damage to the Ward Residence is a loss caused by a latent defect," hence was excluded from coverage.  *Travco,* 2010 WL 2222255, *11. *See also Ross* (granting summary judgment to homeowners insurer where the insurer argued that a latent defect exclusion similar to Allstate's precluded coverage for loss caused by Chinese drywall because it was not visible or readily discernable).

These cases are in step with cases from other jurisdictions applying the latent defect exclusion.  In *Merz v. Allstate Ins. Co.,* 677 F. Supp. 388 (W.D. Pa. 1988), the plaintiffs sued Allstate for coverage for damage to their home and personal property following a torrential rainstorm which resulted in their basement wall collapsing.  The court found the latent defect exclusion applied, because the "defects which plaintiffs' expert describes are all undeniably

---

[19]  *Nida v. State Farm Fire & Cas. Co.,* 454 So. 2d 328, 335 (La. App. 3 Cir. 1984) (*quoting Walker v. Travelers Indem. Co.,* 289 So. 2d 864, 860 (La. App. 4 Cir. 1974)).

162447

latent defects. The width of the wall, the presence or absence of reinforcement, the nature of the backfill, the presence or absence of a French drain, were all unknowable, concealed by the ground." *Id.* at 389-90.[20]

Plaintiffs allege they became aware of the problem with Chinese drywall primarily through the news, and discovered it thereafter. (Compl., ¶ 18.) This allegation establishes that the defect was hidden or concealed -- traits that bring the alleged loss squarely within the meaning of "latent defect," as the above cases demonstrate. Since Plaintiffs did not learn of the problems with Chinese drywall until after they had heard about it on the news, as in *Nida* it clearly was a "defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." *Nida,* 454 So. 2d at 335.

Plaintiffs allege the latent defect exclusion does not apply because the drywall itself is not damaged or defective; rather, it causes damage to other items in the home. (Compl., ¶ 34.) Plaintiffs will again likely cite *Finger* to support this argument, since the *Finger* court held the latent defect exclusion at issue in that case did not apply because there was no evidence that the drywall was damaging or destroying itself. *Finger,* slip op. at 7. *Finger* is again distinguishable, however, because, unlike the exclusion in that case, the exclusion here broadly states it covers losses "*consisting of or caused by*" latent defects. Given this broad language, the

---

[20]    In *City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co.,* 190 F. Supp. 2d 663 (D. Vt. 2002), *aff'd,* 346 F.3d 70 (2d Cir. 2003), the relevant policy contained a latent defect exclusion which precluded coverage for "delay; loss of market; ... deterioration; latent defect; wear; tear." *Id.* at 678. Consistent with the above case law, the court noted "latent defect" means a "defect that is hidden, or which could not have been discovered by any known or customary test or examination." *Id.* at 688. The court found the latent defect exclusion unambiguously precluded coverage for damage to the insured's boiler, because welding failures in the boiler could not have been discovered through an ordinary inspection, thus fell within the exclusion. *Id.* at 689-90. *See also Board of Educ. of Maine Tp. High School Dist. 207 v. Int'l Ins. Co.,* 292 Ill. App. 3d 14, 20, 684 N.E.2d 978, 983 (2d Dist. 1997) ("because the presence of asbestos material in the school buildings is not detectable by the naked eye and is not apparent to any but the most searching analysis, it is a latent defect subject to the latent defect exclusion").

162447

exclusion here would clearly apply to damage to the drywall itself *and* damage caused by the drywall -- *i.e.,* the non-covered latent defect can be both the cause of the property damage and the damage itself.[21]

Moreover, as noted, the *Travco* court expressly declined to follow *Finger* on this point. *Travco*, 2010 WL 2222255, *12.[22] That the Chinese drywall losses fall within the latent defect exclusion is further supported by this Court's analysis in *Germano* and *Hernandez,* where the Court discussed the damaging sulfur gases (which obviously cannot be seen) that are emitted from the drywall. *See Germano,* slip. op. at 12-17; *Hernandez,* slip op. at 15-16.

### C.   The Contamination and Pollution Exclusions Apply.

Plaintiffs' policy also contains provisions excluding coverage for "pollution" and, separately, for "contamination" (*see supra* at p. 2).   The contamination exclusion broadly excludes all loss consisting of or caused by contamination.   "Contamination" merely is "a condition of impurity resulting from mixture or contact with a foreign substance."[23]

In *American Cas. Co. of Reading, Pa. v. Myrick*, 304 F.2d 179 (5th Cir. 1962), the Fifth Circuit considered whether a contamination exclusion barred coverage for the loss of eggs

---

[21]   *See, e.g., Kay,* 902 F. Supp. at 658 (rejecting similar argument where exclusion broadly precluded coverage "caused by or resulting from" excluded loss); *Hayley,* 262 Mich. App. at 575-76, 686 N.W.2d at 276 (holding exclusion precluding coverage for "loss consisting of or caused by" mold "clearly excludes both losses caused by mold and losses consisting of mold damage").

[22]   In so ruling, the *Travco* court stated:  "Although *Finger* did indeed reject a latent defect exclusion under strikingly similar facts, the Court finds it to be unpersuasive.  As discussed above, there is an inherent contradiction in arguing that property has suffered a 'direct physical loss' while simultaneously maintaining that the property is not damaged." *Id.*

[23]   *American Cas. Co. of Reading, Pa. v. Myrick,* 304 F.2d 179 (5th Cir. 1962).  *See also Barry Concrete., Inc. v. Martin Marietta Materials, Inc.,* 531 F. Supp. 2d 766, 770 (M.D. La. 2008), *reconsid. granted in part on other grounds,* 2008 WL 1885326 (M.D. La. Apr. 28, 2008) (observing that "contamination" means "to make unfit for use by introduction of unwholesome or undesirable elements," or "to soil, stain, or infect by contact or association") (citing Webster's Dictionary); *United Nat'l Ins. Co. v. Motiva Enterprises, LLC,* No. H04-2924, 2006 WL 83482, *11 (S.D. Tex. 2006) (defining "to contaminate" as "to soil, stain, corrupt or infect by contact or association ... to render unfit for use by the introduction of unwholesome or undesirable elements").

14

162447

and other products contaminated by release of ammonia.  The contamination exclusion provided that:

> This policy does not insure against loss or damage caused by or resulting from:
> b. * * * contamination * * * unless caused by or resulting from loss of . . . the property covered by * * * explosion

The court held the contamination exclusion applicable, explaining that the term contamination excluded a condition just like the contaminated eggs and products at issue there.  *See also Barry*, 531 F. Supp. 2d at, 769-70;[24]  *Sperling v. Allstate Indem. Co.,* 182 Vt. 521, 944 A.2d 210 (2007) (holding "contamination" exclusion identical to Allstate's here precluded coverage for a home-heating oil spill in the insureds' residence.  Allstate denied coverage under the insureds' homeowners policy based on the "contamination" and "pollution" exclusions.  As did the trial court, the Vermont Supreme Court rejected the insureds' argument that these exclusions did not apply because the predominant cause of the loss was the falling suitcase, not the release of oil).[25]

---

[24]    In so holding, the court explained, in language equally applicable here:

> Although the term "contamination" is not defined in the Cargo Policy, contamination is commonly understood to mean: "to make unfit for use by introduction of unwholesome or undesirable elements" or "to soil, stain, or infect by contact or association."  In this case, the introduction of the undesirable element of sugar rendered the aggregate "unfit for use."  Furthermore, Barry Concrete alleges that the aggregate "was contaminated with sugar," and the Cargo Policy expressly excludes coverage of losses caused by "contamination" of the cargo.  Clearly, Barry understood the plain meaning of "contamination" in making its allegations, and as such, the court finds the parties' ambiguity arguments to be without merit.  Barry's alleged losses are plainly excluded from coverage under the Cargo Policy pursuant to the contamination exclusion.

> *Id.* at 770 (footnotes omitted).

[25]    In so ruling, the court stated:

> We agree with the trial court's analysis foremost because it is required by the language of the policy.  As the court emphasized, the language of the exclusions includes not only "loss ... caused by" listed events but also "loss consisting of" listed conditions.  Although contamination or pollution can be a cause of loss, it is most often an effect of other causes, that is, a "loss consisting of" rather than a cause.  At least in the instances where it is the effect of other causes, it is not, under the language of the policy, subject to a causation analysis.

> *Id.* at 526, 944 A.2d at 214.  *See also Ho v. State Farm Fire & Cas. Co.,* 2005 WL 2600651 (Ohio App. -- Cuyahoga Cty. Oct. 13, 2005) (holding that an exclusion for "contamination" in a homeowners insurance policy precluded coverage for chemical contamination from chemicals used to eliminate smoke odors from a fire in the insureds' home); *McQuade v. Nationwide Mut. Fire Ins. Co.,* 587 F. Supp. 67, 68 (D. Mass. 1984) (enforcing contamination exclusion in homeowners policy to preclude coverage when home was

This case is no different.  Just as the chemicals and oil constituted contaminants in the above cases, the Chinese drywall, which has allegedly made Plaintiffs' property "unfit for use by introduction of unwholesome or undesirable elements," is also a contaminant for purposes of the contamination exclusion.

The pollution exclusion also applies to bar coverage as found by the *Travco* court. There, the court enforced a similar exclusion to bar coverage for losses caused by Chinese drywall.  The court specifically rejected the insured's argument that the drywall was not a "contaminant" or "pollutant," because the "gases it releases are." *Travco*, 2010 WL 2222255, *18. The *Travco* court also rejected the insured's argument that the pollution exclusion did not apply because the drywall was a "household pollutant," not a "traditional environmental pollutant," noting that courts have "applied pollutant exclusions to the release of household pollutants." *Id.,* *17.   In addition, Louisiana Citizens asserted that a pollution exclusion precluded coverage in *Ross,* where, as noted, the court found no coverage was owed for the plaintiffs' Chinese drywall losses. *See also Wakefield Pork, Inc. v. RAM Mut. Ins. Co.,* 731 N.W.2d 154, 160-61 (Minn. App. 2007), *rev. denied* (Aug. 7, 2007) (enforcing pollution exclusion to bar coverage for losses allegedly caused by gasses and odors from the insured's pig farm, and stating the "basis of the Wendinger complaint was harm from the '[g]ases, hydrogen sulfide among others,' and the 'noxious and offensive odors' that emanated from appellant's pig farm.   Based on the plain meaning of the language in the contract, we conclude that the Wendinger complaint alleged damage from a substance that is plainly covered by the insurance policy's pollution exclusion").

---

rendered uninhabitable after termite exterminator applied excessive amounts of chlordane, and stating: "Because the policy, by its plain and unambiguous terms, excludes losses due to contamination, I rule that the complaint fails to state a cause of action and should be dismissed").

162447

Here, it is clear from Plaintiffs' allegations that the introduction of the undesirable element of Chinese drywall has rendered Plaintiffs' property "unfit for use."   Plaintiffs themselves allege the Chinese drywall has "caused, and continues to cause, physical loss and damage to their properties and contents," including "corrosion of air-conditioner coils, copper tubing, electrical wiring, computer wiring and other household items."  (Compl., ¶ 18.)  These allegations also clearly describe a "condition of impurity."   As in the above cases, these alleged losses are therefore excluded pursuant to Allstate's contamination and/or pollution exclusions.

Plaintiffs contend the pollution exclusion was "never intended to apply to residential homeowners' claims for damages caused by substances emitted from building materials, but was only intended to apply to incidents which would otherwise cause environmental damage and/or otherwise originate from a source outside the home."  (Compl., ¶ 33.)  As noted, the court in *Travco* expressly rejected this argument.   And, as cases such as *Ho, McQuade* and *Sperling* also show, courts have repeatedly applied these exclusions in the context of homeowners policies and with respect to losses inside the home.

Plaintiffs will again likely cite *Finger,* where the court held that an exclusion for "Pollution or Contamination" in Audubon's policy did not apply to a Chinese drywall claim. The *Finger* court held the exclusion did not apply because the pollution exclusion "does not, and was never intended, to apply to residential homeowners claims for damages caused by substandard building materials," and the Chinese drywall that releases gases into the home is not "sufficient to qualify as a 'pollutant' under the pollution exclusion."   *Id.* at 5 (*citing Doerr v. Mobil Oil Corp.,* 774 So. 2d 119 (La. 2000)).

However, *Doerr,* which the *Finger* court cited with no discussion, involved the application of a pollution exclusion in a Commercial General Liability ("CGL") policy to

17

162447

damage caused when a discharge of hydrocarbons from Mobil Oil's refinery was drawn into the

water system and distributed to users throughout St. Bernard Parish. The Court discussed the

history of the pollution exclusion in connection with CGL policies, noting the general purpose of

such exclusions has been to exclude coverage for environmental pollution, not to apply to all

contact with substances that may be classified as pollutants. *Id.* at 126-27. The *Doerr* Court

further noted that a broad reading of the exclusion would "contravene the *very purpose of a CGL*

*policy*, without regard to the realities which precipitated the need for the pollution exclusion-the

federal government's war on active polluters." *Id.* at 127 (emphasis added). Because Genesis

failed to show there were no genuine issues of material fact as to whether St. Bernard Parish was

a "polluter," the hydrocarbons were "pollutants," or that there was a "discharge, dispersal,

seepage, migration, release or escape" of the hydrocarbons, the Court denied Genesis' summary

judgment motion. *Id.* at 136.

Nothing in *Doerr,* however, holds or even suggests that a "contamination" or

"pollution" exclusion such as Allstate's would be inapplicable to a residential homeowners claim

for contamination due to Chinese drywall. Initially, *Doerr* is inapposite because it involved a

CGL policy, which provides coverage for certain types of harm caused by insureds to third

parties whereas, in contrast, property coverage under a homeowners insurance policy insures the

property against risk of direct physical loss caused by specified perils or non-excluded perils.

So, by contrast to a CGL policy, such as the one at issue in *Doerr*, the identity of the person who

caused the harm is irrelevant in the homeowners policy context. While *Doerr's* discussion of

whether a commercial insured qualified as a professional polluter may have made sense in the

context of a CGL policy, since the exclusion in that context was developed in response to "the

162447

federal government's war on active polluters," *Doerr,* 774 So. 2d at 126, it makes no sense in the context of a homeowner seeking coverage for damage to his house.

Indeed, as cases such as *Travco, Myrick, McQuade* and *Sperling* show, courts have applied pollution or contamination exclusions even where the insureds were not "polluters." And as *Travco, Ho, McQuade* and *Sperling* show, courts have applied these exclusions in the context of homeowners policies/losses inside the home. Moreover, the "pollution" exclusion at issue in *Finger* is again dispositively distinguishable from Allstate's contamination exclusion. Unlike the "pollution or contamination" exclusion in *Finger,* Allstate's "contamination" exclusion expressly refers to "contamination . . . *at the residence premises* or in the air, land or water *serving the residence premises.*" (Emphasis added). This clearly and unambiguously contemplates damage due to contamination in the home.

In any event, the *Finger* court noted an endorsement in the Fingers' policy deleted the pollution exclusion in its entirety, *Finger* at 5, so that court's comments regarding this exclusion were merely dicta. And, as noted, courts in two other Chinese drywall cases, *Travco* and *Ross,* reached the opposite conclusion.[26]

---

[26] The conclusion that the pollution exclusion applies here is further strengthened by this Court's detailed discussion, in *Germano* and *Hernandez,* of the damages from Chinese drywall. This Court expressly noted that these damages include the release of sulfur gases that are irritating to the human body, cause offending odors that make homes difficult or impossible to live in, and are corrosive to metals which, in turn, results in premature failure of electrical and mechanical devices. *Germano* at 12-17; *Hernandez* at 15-20. These are exactly the types of damages expressly barred from coverage by Allstate's pollution and contamination exclusions. *See also* Allegations in Plaintiffs' Omnibus Complaints -- Plaintiffs' Amended Omnibus Class Action Complaint (V) in *Amato v. Liberty Mut. Ins. Co., et al.,* No. 10-932 (E.D. La. May 11, 2010), ¶¶ 624-26 (referring to off-gassing and noxious gases emitted from drywall); Class Action Complaint in *Payton v. Knauf Gips KG,* No. 09-cv-07628 (E.D. La. Dec. 9, 2009), ¶¶ 2611-20 (same); Plaintiffs' Amended Omnibus Class Action Complaint (II) in *Wiltz v. Beijing New Building Materials Public Ltd. Co., et al.,* No. 10-361 (E.D. La. Mar 15, 2010), ¶¶ 742-44 (same); Plaintiffs' Amended Omnibus Class Action Complaint (IV) in *Rogers v. Knauf Gips KG.,* No. 10-362 (E.D. La. Mar. 15, 2010), ¶¶ 681-82 (same).

162447

**D.      The Faulty Planning, Construction or Maintenance Exclusion Also Precludes Coverage Here.**

Plaintiffs' Policy contains a "faulty planning, construction or maintenance" exclusion (*see supra* at p. 2) which also precludes coverage here.  Notably, in *Travco,* the court held a similar exclusion precluded coverage for alleged Chinese drywall losses.  In so holding, the court found that the terms "faulty" and "defective" plainly applied to the drywall -- "Consistent with the ordinary meaning of the words 'faulty' and 'defective,' courts have held that the faulty materials exclusion can apply even when the property in question may be serving its intended purpose." *Travco,* 2010 WL 2222255, *13  (citations omitted). *See also Holland v. Breaux,* 2005 WL 3542899, *3 (E.D. La. Nov. 22, 2005) (where plaintiff alleged that, because of construction defects, dryer exhaust was venting hot moist air into the crawl space below the house, court held that "faulty planning, construction or maintenance" exclusion applied: "Because plaintiff has failed to allege any specific facts as to why damage from the dryer exhaust should not be excluded as a design defect, the Court finds plaintiff has created no genuine issue of material fact"); *Husband v. Lafayette,* 635 So. 2d 309, 311 (La. App. 5 Cir. 1994) (although the court found a similar exclusion inapplicable for reasons irrelevant here,[27] the court stated: "the exclusion contained in the pertinent policy provisions [applies] to situations where the insured or someone authorized by the insured contracts for alterations to the property and is dissatisfied with the quality of the performance under that contract.  The insurer by this exclusion intended to prevent the expansion of coverage under the policy to insuring the quality of a contractual undertaking by the insured or someone authorized by him").[28]

---

[27]   There, the court found the alterations were undertaken without authorization of the insured, which is not the case here, and that an "ensuing loss" provision, which plaintiffs' policy here does not have, created an ambiguity with respect to the exclusion.  635 So. 2d at 311-12.

[28]   *See also Alton Ochsner Medical Foundation v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 506-07 (5th Cir. 2000) (holding costs to repair cracks in foundation of insured's building were excluded from coverage

Here, Plaintiffs are obviously dissatisfied with the quality of the drywall, which brings the "faulty planning, construction or maintenance" exclusion into play under *Husband*. Moreover, just as the dryer exhaust that caused the damage to the floor joists was a defect, such that the exclusion applied in *Holland,* the installation of Chinese drywall that allegedly caused damage to Plaintiffs' property is a defect for purposes of triggering the exclusion here.

Plaintiffs will again no doubt cite *Finger* (at p. 8), where the court held that a similar exclusion did not apply because "Chinese drywall is not defective within the meaning" of the exclusion since the "defect" is "not one that renders the drywall unable to perform the purpose of drywall."   However, if the Court rejects Allstate's initial argument -- *i.e.,* that coverage does not exist here in the first instance for all the reasons discussed *supra* at pp. 5-7 -- that would obviously entail a finding that the drywall is defective.  Such a finding would then bring this exclusion squarely into play.  Moreover, unlike Audubon's policy in *Finger,* Allstate's exclusion applies to losses both consisting of and caused by defective drywall, since it expressly refers to losses "consisting of *or* caused by" defective materials.

In any event, even if the language were identical -- and particularly if the Court concludes that coverage exists for the defective drywall in the first instance -- it makes no sense to say that the Chinese drywall is performing as it should, given all the damage it has allegedly

---

under faulty workmanship exclusion, and noting that "the cracking of the pile caps is damage to the quality of the product itself; the cracking did not cause damage *to* the product," and "no extraneous event has occurred; neither has the Tower been damaged by an external force"); *Falcon Prods., Inc. v. Insurance Co. of Penn.,* 615 F. Supp. 37, 39 (E.D. Mo. 1985), *aff'd,* 782 F.2d 779 (8th Cir. 1986) (faulty materials exclusion precluded coverage for losses caused by use of construction materials contaminated by exposure to radioactive substances); *Carney v. Assurance Co. of America,* 2005 WL 899843 (D. Md. Apr. 19, 2005), *aff'd,* 177 Fed. Appx. 282 (4th Cir. 2006) (applying exclusion to preclude coverage for losses caused by improperly treated siding and shingles); *Rogers v. Unitrin Auto & Home Ins. Co.,* 388 F. Supp. 2d 638, 643 (W.D.N.C. 2005) (exclusion applied to preclude coverage for losses due to installation of faulty residential piping).

162447

caused.[29]   And again, the court in *Ross* granted judgment in favor of the insurer, which also relied on a faulty materials exclusion as a ground for precluding coverage.   Moreover, although the *Travco* court did not specifically discuss *Finger* on this issue, it obviously rejected the *Finger* court's holding since it expressly reached the opposite conclusion.   *Travco,* 2010 WL 2222255, *13.

## IV.   PLAINTIFFS MAY NOT RECOVER FOR LOSSES TO PERSONAL PROPERTY SINCE SUCH PROPERTY WAS NOT DAMAGED DUE TO COVERED PERIL.

To the extent Plaintiffs are pursuing coverage for damage to any personal property resulting from Chinese drywall, any such loss would also not be covered.   Personal property is covered only for perils specifically listed under Coverage C of Plaintiffs' policy, none of which is at issue here.

The policy states, in relevant part, "We will cover sudden and accidental direct physical loss to the property described in Coverage C – Personal Property Protection, except as limited or excluded in this policy, caused by [sixteen specific perils]."   Under a "named peril" policy providing coverage for contents, Plaintiffs carry the burden of proving "by a preponderance of the evidence that their personal property was lost or damaged due to a specified covered risk named in the policy."[30]   Here, Plaintiffs cannot meet this burden because any damage to Plaintiffs' personal property caused by Chinese drywall would not fall into any of

---

[29]   *See also* Allegations in Plaintiffs' Omnibus Complaints -- Plaintiffs' Amended Omnibus Class Action Complaint (V) in *Amato v. Liberty Mut. Ins. Co., et al.,* No. 10-932 (E.D. La. May 11, 2010), ¶¶ 628-31 (referring to faulty, negligent, improper and substandard manufacture of Chinese drywall); Class Action Complaint in *Payton v. Knauf Gips KG,* No. 09-cv-07628 (E.D. La. Dec. 9, 2009), ¶¶ 2610-20 (same); Plaintiffs' Amended Omnibus Class Action Complaint (II) in *Wiltz v. Beijing New Building Materials Public Ltd. Co., et al.,* No. 10-361 (E.D. La. Mar 15, 2010), ¶¶ 746-49 (same); Plaintiffs' Amended Omnibus Class Action Complaint (IV) in *Rogers v. Knauf Gips KG.,* No. 10-362 (E.D. La. Mar. 15, 2010), ¶¶ ¶ 685-88 (same).

[30]   *Broussard v. State Farm Fire and Cas. Co.,* 2007 WL 2264535, *3 (E.D. La. Aug. 2, 2007) (quoting *Ferguson v. State Farm Ins. Co.,* 2007 WL 1378507, *2 (E.D. La. May 9, 2007)). *See also Constitution State Ins. Co. v. Werner Enters., Inc.,* 1987 WL 4978, *1 (E.D. La. June 26, 1987) (under policy insuring against wind loss, insured has burden of proving "that the loss or damage was the direct result of wind").

the specified categories, hence would not be covered.[31]   In all events, like the Dwelling Coverage section, the Personal Property Coverage section contains a pollution exclusion and a faulty planning, construction or maintenance exclusion, which would preclude personal property coverage for the same reasons discussed above with respect to those exclusions.  (Policy at 10-11.)

## V.   PLAINTIFFS CANNOT RECOVER FOR BAD FAITH.

Under Louisiana law, when an insurer has a reasonable defense to coverage or has legitimate doubts regarding coverage, the insurer "has the right to litigate these questionable claims without being subjected to damages and penalties."[32]   Applying this principle, the Fifth Circuit recently reversed an award of bad faith damages in a Hurricane Katrina case, finding that an insurer does not act in bad faith when it has a fairly debatable basis for denying a claim.[33]

Here, Allstate certainly had a reasonable basis for denying coverage for Plaintiffs' Chinese drywall losses for all the reasons discussed above.   Accordingly, Plaintiffs' claim for bad faith fails, as a matter of law, regardless of the Court's ultimate coverage ruling.

## VI.   PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF FAILS AS A MATTER OF LAW.

Plaintiffs' claim for injunctive relief also fails as a matter of law.   A preliminary injunction "is an extraordinary remedy that should only issue if the movant shows: (1) a

---

[31]   *See, e.g., Sperling,* 182 Vt. at 529-31, 944 A.2d at 215-16 (noting "personal property coverage, Coverage C, differs from the structural property coverage, Coverages A and B, in that the loss is covered only if it is caused by one of sixteen specific perils," and finding no coverage where loss due to home-heating oil leak was not caused by one of those perils).

[32]   *Clark v. McNabb,* 878 So. 2d 677, 684 (La. App. 3 Cir. 2004) (citation omitted).

[33]   *Kodrin v. State Farm Fire & Cas. Co.,* 314 Fed. Appx. 671, 2009 WL 614521 (5th Cir. Mar. 11, 2009). *See also Broussard v. State Farm Fire & Cas. Co.,* 523 F.3d 618, 628 (5th Cir. 2008) (trial court erred in submitting the question of bad faith to the jury because the insurer had an arguable basis for denying the claim and, therefore, as a matter of law could not be held liable for bad faith penalties); *Thompson v. State Farm Fire & Cas. Co.,* No. 07-6733, 2009 WL 537149, *5 (E.D. La. Mar. 3, 2009) (this Court granted summary judgment to the insurer based on the existence of a legitimate coverage dispute).

substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest."[34]  Given the extraordinary nature of the remedy, an "injunction ... should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements."[35]

Courts have found injunctive relief inappropriate where the plaintiff cannot show he or she has a substantial likelihood of success of prevailing on the merits.  For example, in *Ridgely,* the Fifth Circuit found the district court improperly granted injunctive relief where plaintiffs could not demonstrate a likelihood of success on the merits.   512 F.3d at 734. Similarly, in *Ferrellgas,* the court denied the plaintiff injunctive relief solely because he could not demonstrate a likelihood of prevailing on the merits of his claims.  2010 WL 1010831, *11.[36]

As demonstrated above, it is clear Plaintiffs cannot succeed on the merits of their claims.  At the very least, they certainly do not have a "likelihood of success" on those claims, which alone precludes injunctive relief here.

---

[34]     *Ridgely v. Federal Emergency Management Agency*, 512 F.3d 727, 734 (5th Cir. 2008).

[35]     *Ferrellgas, L.P. v. McConathy*, 2010 WL 1010831, *2 (W.D. La. Mar. 15, 2010) (citations and internal quotations omitted).

[36]     *See also Allen v. Normand*, 2009 WL 2448253, *15 (E.D. La. Aug. 7, 2009) (claim for injunctive relief failed as a matter of law where court found it could not be concluded that plaintiff's complaint presented a substantial likelihood of success on the merits).

162447

## CONCLUSION

For all the foregoing the reasons, Defendants respectfully request this Court enter an Order granting Defendants' Motion to Dismiss and dismissing all Plaintiffs' claims with prejudice and without leave to amend.

Respectfully submitted,

*/s/Judy Y. Barrasso*

Judy Y. Barrasso, 2814
Catherine F. Giarrusso, 29875
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700
Facsimile: (504) 589-9701

Steven M. Levy
Mark L. Hanover
SONNENSCHEIN NATH &
  ROSENTHAL, LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
(312) 876-8000

*Attorneys for Defendants*

162447

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of July, 2010.


*/s/Judy Y. Barrasso*                    

26

162447