# Exhibit B – *in globo*

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
Joseph AGUILAR, III, and Jean and Mackey Cutrer, and Carla Jarius
v.
ALLSTATE FIRE AND CASUALTY INS. COMPANY, et al.
**Civil Action No. 06-4660.**

March 6, 2007.

Jim S. Hall, Jim S. Hall & Associates, Metairie, LA, for Plaintiffs.

Judy Y. Barrasso, Susan Muller Rogge, Barrasso Usdin Kupperman Freeman & Sarver, LLC, New Orleans, LA, Kendra Kekelis Hartman, Natalie J. Spears, Richard L. Fenton, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Defendants.

*ORDER AND REASONS*

MARTIN L.C. FELDMAN, United States District Judge.

*1 Before the Court is the defendants' motion to dismiss and motion to strike the class allegations. For the reasons that follow, the motion to strike the class allegations is GRANTED and the motion to dismiss is GRANTED in part and DENIED in part without prejudice.

*Background*

Joseph Aguilar, III, Jean and Mackey Cutrer, and Carla Jurius all suffered damage to their properties as a result of Hurricane Katrina. On August 24, 2006, they sued Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, and Allstate Property and Casualty Insurance Company, asserting that the defendants breached insurance contracts, adjusted claims in bad faith subjecting them to state law penalty statutes, and "violat[ed] state and federal laws pertaining to unfair trade practices." The plaintiffs assert that defendants "engaged in a wrongful scheme to delay, deny or underpay claims by repeatedly utilizing below market unit pricing and nonpayment or intentional underpayment of industry standard items all in contravention of the terms of the policies issued and the practices of the industry." The plaintiffs style their complaint as a "class action complaint" and identify the proposed class as:

> All immovable property owners in the State of Louisiana who were issued a property, business, commercial and/or flood insurance policy by the named defendants and whose policy was in full force and effect at the time of the covered event and who made a claim for benefits under said policy to address the physical damages to their property which was damaged as a result of Hurricane Katrina and its aftermath. In addition, each class member has been determined by the defendant to have a compensable loss and has either been paid or in the process of being paid by the defendant for the compensable loss of the property. The loss payment to each class member included a below market unit pricing on numerous items and non-payment of industry standard items, resulting in inadequate compensation to the class members.

The defendants now move to dismiss the plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) or, alternatively, to strike class allegations pursuant to Rule 23(d)(4). They contend that the plaintiffs' claims fail because (1) the plaintiffs fail to identify any specific provisions in their policies that the defendants have breached; (2) the plaintiffs' claims under the state law penalty statutes must fail because plaintiffs' breach of insur-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ance contract claims fail; (3) generic allegations that the defendants violated state and federal laws pertaining to unfair trade practices do not state a claim; (4) the plaintiffs' purported flood insurance claims are preempted by federal law; (5) no named plaintiff has standing to assert a claim against Allstate Fire and Casualty or Allstate Property and Casualty. Finally, the defendants contend that plaintiffs' class allegations fail as a matter of law and must be stricken because individualized inquiries predominate.

I.

***2** Rule 23(a) sets forth four prerequisites to any class action: (1) a class "so numerous that joinder of all members is impracticable"; (2) the existence of "questions of law or fact common to the class"; (3) class representatives with claims or defenses "typical ... of the class"; and (4) class representatives that "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In addition to these prerequisites, a party seeking class certification under Rule 23(b)(3) must also demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that the class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The plaintiffs bear the burden of showing that all of these Rule 23 criteria are met. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir.2005). A court may strike class allegations under Rule 23(d)(4) where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate. *See Hedgepeth v. Blue Cross & Blue Shield of Miss.*, 2006 WL 141624 (N.D.Miss. Jan. 18, 2006) (citing *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir.1982) and noting that the Fifth Circuit has upheld the power of district courts to dismiss class allegations prior to any extensive class-related discovery).

The plaintiffs filed their complaint as a class action under Rule 23(b)(3). But even assuming that the plaintiffs have met the four requirements of Rule 23(a), they have not met their burden under Rule 23(b)(3) of proving that common issues of the class predominate over individual issues, and the class certification fails for this reason.

Rule 23(a)(2) instructs that there be issues of law or fact common to the class. The commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members. *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir.2001); *Mullen v. Treasure Chest Casino. LLC*, 186 F.3d 620, 625 (5th Cir.1999). There is a low threshold for commonality, and the fact that some plaintiffs have different claims or require individualized analysis does not defeat commonality. *James*, 254 F.3d at 570. But the analysis continues because Rule 23(b)(3) mandates that common questions of law or fact must also "predominate over any questions affecting only individual [class] members." *Unger*, 401 F.3d at 320. This is the test of cohesion, and it is demanding. To predominate, common issues must form a significant part of individual cases. *Mullen*, 186 F.3d at 626. The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a), because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Unger*, 401 F.3d at 320. Lastly, the cause of action as a whole must satisfy Rule 23(b)(3)' s predominance requirement. *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir.2006).

***3** Recently, this Court struck similar class allegations against an insurer based on its alleged "corporate scheme and pattern and practice of bad faith and improper claims handling." *See Spiers v. Liberty Mut. Fire Ins. Co.*, C.A. No. 06-4493 (E.D.La. Nov. 21, 2006). The similarity of the allegations here compels the same result. While Allstate's general internal policies for adjusting claims may arguably be one common issue of fact, demon-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

strating a wrongful pattern and practice of failing to adjust claims will require an intensive review of the individual facts of each class member's damage claim, including the nature and extent of damage, the timing and adjustment of each class member's claim, how much each class member was paid for his claim and for what damage, and whether that amount was sufficient and timely. On the face of the pleading, it is clear that those individualized and highly personal issues pertaining to each class member patently overwhelm any arguably common issues, rendering the claims inappropriate for class treatment. *See Pollet v. Travelers Prop. Cas. Ins. Co.,* 2001 WL 1471724 (E.D.La. Nov. 16, 2001) (Clement, C.J.)(holding that class certification was inappropriate in an action alleging that the insurer failed to adequately compensate policyholders because of the need for individualized proof on thousands of separate insurance claims).

II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in the plaintiff's favor and all facts pleaded in the complaint must be taken as true. *See Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir.1986). The Court cannot dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

The plaintiffs' complaint purports to assert claims against the Allstate defendants for breach of contract and violation of state law penalty statutes, and violation of state and federal law unfair trade practices.

A.

The Fifth Circuit has explained, "[t]o state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision." *Louque v. Allstate Insurance Company,* 314 F.3d 776, 782 (2003)(citing *Bergeron v. Pan Am. Assurance Co.,* 731 So.2d 1037, 1045 (La.App.1999). The plaintiffs point to no specific policy provisions in their complaint that would prohibit anything Allstate did in the settlement of these claims. The plaintiffs argue that Allstate incorrectly interprets *Bergeron;* but if this is the case, then the Fifth Circuit is also misguided in its interpretation of *Bergeron,* and this Court does not find this to be the case. While the plaintiffs' complaint for breach of contract is vaguely and inartfully crafted, this Court must resolve all doubts regarding the sufficiency of the claim in the plaintiffs' favor. Considering the *Lowrey* standard for dismissing a plaintiff's claim, the Court declines to dismiss the breach of contract complaint, but instead will allow the plaintiffs the opportunity to amend their complaint to correct the *Bergeron* deficiencies.

B.

***4** Louisiana Revised Statutes 22:658 and 22:1220 announce statutory penalties that may be imposed on insurance companies for improper handling of first-party property insurance claims. Section B of La. R.S. 22:1220 outlines five causes of action against an insurer: misrepresenting insurance policy provisions relating to coverage, failing to pay a settlement timely after an agreement is reduced to writing, denying coverage or attempting to settle a claim on an altered application without the insured's consent, misleading a claimant as to the prescriptive period, and arbitrarily failing to settle claims timely after receiving satisfactory proof of loss. Louisiana courts have held that "because R.S. 22:1220 is penal in nature, strict construction of the statute is required and that the five instances specified in section B are exclusive." *Armstrong v. Rabito,* 669 So.2d 512, 514 (La.App.1995)(citing

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Hernandez v. Continental Casualty Co.*, 615 So.2d 484 (La.App.1993)); *see also Hart v. Allstate Ins. Co.*, 437 So.2d 823 (La.1983). Louisiana courts have also held that unless one of the proscribed acts in 12:1220 are asserted by the plaintiff, then the claims must be dismissed. *Armstrong*, 669 So.2d at 514; *Boatner v. State Farm Mutual*, No. 92-C-1248 (La.App. Sept. 28, 1992).

The plaintiffs make no argument whatsoever in support for sustaining their claims under the state penalty statutes. In their complaint, the plaintiffs describe Allstate's infraction as underpaying them by "calculat[ing] using below market unit price figures for various items damaged and/or destroyed...." This assertion does not implicate La. R.S. 12:1220. Further, the plaintiffs do not dispute that each of their bad faith claims are contingent upon properly alleging breach of insurance contract claims. Thus, because the Court will allow the plaintiffs an attempt to cure their breach of contract pleading deficiencies, the Court leaves open the possibility that the plaintiffs will attempt to cure their bad faith claims deficiencies as well.

C.

The plaintiffs also purport to assert claims for defendants' "violation[s] of both State and Federal Law concerning Unfair Business Practices." Such "bare bones" allegations are insufficiently conclusory and fail to put Allstate on notice as to what conduct supports the plaintiffs' claims. Thus, the plaintiffs have failed to state a claim upon which relief may be granted. *See Beanal v. Freeport-McMoran, Inc.* 197 F.3d 161, 164 (5th Cir.1999). Thus, the claims must be dismissed.

D.

The defendants urge the Court to dismiss the plaintiffs' flood insurance claims because such claims are preempted by federal law. The plaintiffs concede that any state law claim under flood insurance policies would be preempted but they say that they have not attempted to plead any state law flood claims.

But Allstate further contends that any federal flood claims must also be dismissed. The Court agrees. It is not clear on which basis the plaintiffs may be attempting to assert a claim under their flood policies. (The plaintiffs suggest that Paragraph 5 of the complaint, which asserts that the Court has federal question jurisdiction because "a significant number of the claims are made under the National Flood Insurance Program," is "simply a jurisdictional statement.") However, to the extent the plaintiffs seek to state a claim for breach of flood insurance policies, the plaintiffs have failed to allege any of the prerequisites applicable to such claims. *See, e.g.*, 44 C.F.R. pt. 61, App. A(1), articles VII(R) and VII(J).

***5** To the extent the plaintiffs have purported to assert flood insurance claims, they are dismissed.

E.

The plaintiffs name four defendants in their complaint: Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, and Allstate Property and Casualty Insurance Company. The defendants urge that the plaintiffs lack standing against Allstate Fire and Casualty and Allstate Property and Casualty because none of the named plaintiffs have or had policies with either of these companies. The plaintiffs do not dispute this; rather they say that the policies issued by these two defendants are similar to the policies issued by the other defendants and named plaintiffs will "adequately represent the contentions of class members that may have been insured by Allstate related companies...." This, again, is strikingly inartful and inadequate.

Any claims plaintiffs purport to allege against Allstate Fire and Casualty and Allstate Property and Casualty must be dismissed for lack of standing. *Grant v. Gilbert*, 324 F.3d 383, 386 (5th Cir.2003)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(citing *Lujan v. Defendants of Wildlife,* 504 U.S. 555, 560 (1992)). The plaintiffs' concession that none of the named plaintiffs were insured by either Allstate Fire and Casualty or Allstate Property and Casualty is a concession that they lack standing to sue those defendants. And their attempts to establish Article III standing "through the backdoor of a class action" is unavailing. *See Henry v. Circus Circus Casinos,* 223 F.R.D. 541, 544 (D. Nev 2004) (quoting *Alle v. Medrano,* 416 U.S. 802 (1974) (Burger, C.J., concurring in part and dissenting in part)); *see also In re Franlin Mut. Funds Fee Litig.,* 388 F.Supp.2d 451, (D.N.J.2005) ( "a named plaintiff can bring suit against a party only if the plaintiff personally suffered an injury and that injury is traceable to that party ... [i]f a plaintiff cannot trace an injury to a defendant, the plaintiff lacks standing with regard to that defendant").

Accordingly, the defendants' motion to strike class allegations is GRANTED. The defendants' motion to dismiss is GRANTED in part and DENIED in part without prejudice. The plaintiffs are granted leave to amend their claims for breach of contract and bad faith penalties within 14 days. Their claims for violations of state and federal unfair trade practices are dismissed, as are their claims against Allstate Fire and Casualty and Allstate Property and Casualty.

E.D.La.,2007.
Aguilar v. Allstate Fire and Cas. Ins. Co.
Not Reported in F.Supp.2d, 2007 WL 734809 (E.D.La.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Page 1

Not Reported in F.Supp., 1993 WL 302619 (E.D.La.), Fed. Sec. L. Rep. P 97,742
**(Cite as: 1993 WL 302619 (E.D.La.))**

H

United States District Court,
E.D. Louisiana.

In re TAXABLE MUNICIPAL BONDS LITIGATION.
**Civ. A. No. MDL 863.**

Aug. 5, 1993.

MINUTE ENTRY

SEAR, District Judge.

MEMORANDUM AND ORDER

***1** By order entered April 30, 1993 (Discovery Scheduling Order Supplement # 1, Doc. No. 920), I ordered plaintiffs to file any class certification motions not later than May 3, 1993. Plaintiffs have filed a class certification motion pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure seeking to certify a plaintiff class defined as follows:

All persons [FN1] who purchased any of the taxable municipal bonds [at issue] [FN2] from the date of their issuance up to and including April 9, 1990, and were damaged thereby.[FN3]

The underwriter defendants, issuer defendants, indenture trustee defendants, and certain other defendants (collectively, "defendants," *see* Exhibit A attached to Memorandum in Support) have filed a joint opposition to plaintiffs' motion. NationsBank of Texas, N.A. ("Nationsbank"), a indenture trustee defendant, has filed a supplemental memorandum in opposition to plaintiffs' motion for class certification.

The Federal Rules of Civil Procedure require that four conditions be met in order for a proposed class of plaintiffs or defendants to be certified:

1) Numerosity-The proposed class must be so numerous that joinder of all members is impracticable,

2) Commonality-There must be questions of law or fact common to the proposed class,

3) Typicality-The claims or defenses of the proposed class representatives must be typical of the claims or defenses of the proposed class, and

4) Adequacy-The proposed class representatives must fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

In addition to the above four criteria, Rule 23(b) defines three different types of class actions whose separate criteria also must be met. Plaintiffs allege that class certification is proper under Rule 23(b)(3) :

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(3) the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Defendants oppose plaintiffs' motion on virtually every point. First, defendants contend that the pro-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

posed class representatives lack standing to seek certification of a global class of plaintiffs representing all eight bond issues. Second, defendants argue that individual issues predominate over common issues in that the issue of reliance will hinge on individualized determinations for each plaintiff and proposed class member rather than the two classwide reliance theories advanced by plaintiffs.[FN4] Third, defendants argue that the proposed class representatives are neither typical nor adequate. Finally, defendants allege that the number of related arbitrations and cases filed either in state or federal court demonstrate that class action treatment is not the superior means of handling this litigation. [FN5]

***2** After consideration of plaintiffs' motion for class certification, I conclude that the motion is premature and should be continued until after the determination of a summary judgment motion confined solely to the issue of reliance.

*Factual and Procedural History*

The taxable municipal bond was created in response to the Tax Reform Act of 1986, which limited the availability of the tax-free status previously afforded municipal bonds. Drexel Burnham Lambert Inc. ("Drexel Burnham") played a significant role in promoting the taxable municipal bond. From July through October 1986, Drexel Burnham underwrote seven substantial bond issues offered by six different municipal authorities.[FN6] The offering materials stated that the bond proceeds would be used to raise money for public purposes, such as financing the construction or acquisition of low to moderate income housing or multifamily housing or providing funds for agricultural purposes.

The bond trustees used a substantial portion of the proceeds to purchase Guaranteed Investment Contracts ("GICs") issued by Executive Life Insurance Company ("Executive Life"). Executive Life then invested the proceeds from the sale of the GICs in "junk" bonds, an "industry expression for bonds with a credit rating of BB or lower." [FN7] Junk bonds generally offer high rates of return as compensation for the high risk. The junk bond market collapsed in the early months of 1989. Standard & Poors, Inc. then downgraded Executive Life's rating and the rating of the taxable municipal bond, which caused the value of the municipal bonds to decline. [FN8]

Numerous purchasers of these bonds, most of whom are individual investors or small community banks, filed lawsuits seeking relief for alleged violations of federal and state law in connection with the issuance of these taxable municipal bonds. The federal court actions were consolidated for pretrial proceedings by the Judicial Panel on Multidistrict Litigation and transferred to the Eastern District of Louisiana. By order entered April 26, 1991 (Pretrial Order No. 1, Doc. No. 50), I directed plaintiffs in the sixteen actions then consolidated [FN9] to file no more than one amended complaint ("master complaint") for each of the eight bond issues.[FN10]

The eight master complaints (Doc. Nos. 54-59, 62-63, and as later amended) [FN11] are substantially similar. *See, e.g.,* First Amended Memphis Complaint, Doc. No. 69 ("Memphis Complaint"). For example, the Memphis complaint names as class defendants the issuer of the Memphis bonds, the lead underwriters, Executive Life and its parent, the indentured trustee, members of the underwriting syndicate, and certain individual defendants such as officers of certain of the defendants. Memphis Complaint ¶¶ 22-61. Certain other defendants, not named as class defendants, are also included.

The Memphis Complaint contains twenty seven counts, of which the first eleven are class claims. [FN12] Counts one, two and three allege federal securities claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Count four alleges claims against certain individual class defendants [FN13] under § 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t. Counts five and six allege claims under the Investment Company Act, 15 U.S.C. § 80a, and the

Page 3

Not Reported in F.Supp., 1993 WL 302619 (E.D.La.), Fed. Sec. L. Rep. P 97,742
**(Cite as: 1993 WL 302619 (E.D.La.))**

Investment Advisors Act, 15 U.S.C. § 80b; these claims have been dismissed. *See* Memorandum and Order entered June 4, 1992, Doc. No. 533. Counts seven through eleven allege various state law claims and claims for declaratory relief.

***3** Defendants have filed numerous, and exhaustive, motions to dismiss which are not discussed here. *See, e.g.,* Docs. Nos. 488, 499, 553, 563, and 599. Discovery, which has been governed by a Discovery Scheduling Order (Doc. No. 742),[FN14] has been extensive and far reaching. Over 500,000 documents have been produced, and well over thirty fact witnesses have been deposed. The parties are presently engaged in discovery of expert witnesses. *See* Discovery Scheduling Order Supplements # 1 and # 2, Docs. No. 920, 979. All discovery-including discovery of third-party, cross-claims, and permissive counterclaims, admissions, and remaining interrogatories-will be completed by the end of November 1993. Thereafter, any remaining discovery for individual claims, including claims asserted in the many "tag-along" actions, will take place.[FN15]

*Discussion*

A. Standing

Class-claim defendants first challenge named plaintiffs' standing to represent a *global* class of plaintiffs who purchased the bonds at issue during the relevant time period. Defendants contend that this class cannot be maintained since no proposed class representative has a claim against *every* named class-claim defendant.[FN16]

A proposed class representative's standing to bring suit is a threshold issue to whether that class representative has satisfied the requirements of Rule 23. *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 734 (3rd Cir.), *cert. denied,* 91 S.Ct. 1190 (1971); *see also Brown v. Sibley,* 650 F.2d 760, 771 (5th Cir. Unit A 1981) ("This constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Fed.R.Civ.P. 23."). It is settled law that a single plaintiff lacks standing to assert class claims against defendants with whom the plaintiff has not dealt, even though unnamed individuals that the plaintiff seeks to represent may have direct claims against those defendants.[FN17] *Brown, supra.*[FN18] *See also Simon v. Eastern Kentucky Welfare Rights Organization,* 96 S.Ct. 1917 (1976);[FN19] *O'Shea v. Littleton,* 94 S.Ct. 669 (1974); *Chevalier v. Baird Savs. Ass'n,* 66 F.R.D. 105 (D.C.Pa.1975), *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684 (D.C.Pa.1973). *See generally* 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure ("Wright & Miller") § 1785.1 (1986).[FN20]

The issue of standing is clouded when there is more than one named plaintiff seeking to serve as a class representative. Here no named plaintiff has a claim against every class-claim defendant, but every class-claim defendant has claims asserted against it by one or more named plaintiffs. Defendants assert that every named plaintiff must have individual standing to assert a claim against every class-claim defendant. Although the jurisprudence discussing this specific issue is rather thin, I conclude that defendants overstate the standing requirement for these types of class actions: all that is required is that each class-claim defendant be subject to the claims of at least one named plaintiff.

***4** In *Griffin v. Dugger,* 823 F.2d 1476 (11th Cir.) (Tjoflat, C.J.), *cert. denied,* 108 S.Ct. 1729 (1988), a case cited by defendants, the Eleventh Circuit elaborated on the standing requirement for class actions involving multiple plaintiffs:

A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone-not for himself, and not for any other member of the class. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). Moreover, it is not enough that a named plaintiff can establish a case or controversy

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp., 1993 WL 302619 (E.D.La.), Fed. Sec. L. Rep. P 97,742
**(Cite as: 1993 WL 302619 (E.D.La.))**

between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. *Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.*

*Id.* at 1483 (emphasis added). The court's analysis of the standing requirement is consistent with the rule that a class has standing against multiple defendants so long as each defendant is subject to the claims of at least one named class representative. *See, e.g., id.* at 1483 n. 15 ("Our analysis of the standing and Rule 23 issues presented by this case focuses first on Peners L. Griffin as a sole named plaintiff. We then examine whether the addition of Henry L. Dejerinett and Alvin Smith as named plaintiffs affected the class certification.").

Similarly, in *Ramos v. Patrician Equities Corp.,* 765 F.Supp. 1196, 1199 (S.D.N.Y.1991), another case cited by plaintiffs, the court did state that a "plaintiff, including one who is seeking to act as class representative, must have individual standing to assert the claims in the complaint against each defendant being sued by him." However, rather than simply dismissing outright the class claims asserted by the two named plaintiffs against forty-eight partnerships and other defendants because it was uncontested that none of the named plaintiffs had direct claims against every defendant, the court examined each named plaintiff separately to determine which defendants were subject to claims by that plaintiff. *Id.* at 1198-1199.

Finally, in *Haas v. Pittsburgh National Bank,* 526 F.2d 1083 (3rd Cir.1975), the district court originally certified a class action brought by holders of certain bankcards even though no named plaintiff had an account with one of the defendants, Equibank, N.A. In light of the Supreme Court's ruling in *O'Shea, supra,* the district court ordered summary judgment in favor of Equibank "unless a nominal plaintiff was added who held or had held a Master Charge card issued by Equibank within the last two years." *Haas,* 526 F.2d at 1095. Because a nominal plaintiff was added, the district court then turned to the issue of whether that nominal plaintiff's claim related back to the original filing; the Third Circuit determined that it did.[FN21] *Id.* at 1098.

***5** It is uncontested that every named class-claim defendant has claims asserted against it by at least one named plaintiff. I conclude that this is sufficient to withstand a standing challenge to the proposed class. The cases cited by defendants simply do not support their argument that every plaintiff must have individual standing against every class-claim defendant in order for the standing requirement to be satisfied.[FN22] Nevertheless, defendants' argument raises questions as to whether the proposed global class meets the requirements of Rule 23.[FN23] It is to those requirements that I now turn.

B. Rule 23 of the Federal Rules of Civil Procedure

It is firmly established that,

[i]n order to prevail on a motion for class certification, the movant has the burden of proving *each* of four prerequisites set forth in Fed.R.Civ.P. 23(a), and in addition, at least one of the factors included in sub-section (b) of Rule 23.

*Warren v. Reserve Fund, Inc.,* 728 F.2d 741, 747 (5th Cir.1984). A district court must rigorously analyze a motion for class certification to insure that the requirements of Rule 23 are met, *General Telephone Co. of Southwest v. Falcon,* 102 S.Ct. 2364, 2372 (1982). The decision to grant or deny certification is initially committed to the sound discretion of the district judge and will not be overturned except for abuse of discretion. *Redditt v. Mississippi Extended Care Centers, Inc.,* 718 F.2d 1381, 1387 (5th Cir.1983).

Plaintiffs seek to certify a class pursuant to Rule 23(b)(3). Accordingly, they must demonstrate numerosity, commonality, typicality, adequacy as well as the predominance of issues of law and fact common to all members of the class over any ques-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp., 1993 WL 302619 (E.D.La.), Fed. Sec. L. Rep. P 97,742
**(Cite as: 1993 WL 302619 (E.D.La.))**

tions affecting only individual members. Fed.R.Civ.P. 23(a) and (b). Numerosity is not an issue; the parties agree that there are potentially *thousands* of class members. Furthermore, commonality in the Rule 23(a) sense likewise is not at issue. Because of the similarity of the alleged schemes with each other and the similarity of the class-claims alleged in the eight master complaints (excluding the RICO complaint), Rule 23(a) commonality is satisfied. *See generally* 7A Wright & Miller § 1763. Commonality in the Rule 23(b)(3) sense, however, is more problematic.[FN24]

Plaintiffs' class-claims for securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, require that plaintiffs must establish by a preponderance of the evidence,

(1) a misstatement or an omission (2) of a material fact (3) made with scienter (4) on which the plaintiff[s] relied (5) that proximately caused [their] injury.

*Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1115 (5th Cir.), *cert. denied sub. nom., Abell v. Wright, Lindsey & Jennings*, 109 S.Ct. 3242, *vacated on other grounds sub. nom., Fryar v. Abell*, 109 S.Ct. 3236 (1989). I have ruled that plaintiffs have sufficiently pled two theories of class reliance: “fraud-on-the-market” presumption of reliance for those proposed class members who purchased on the secondary market, and “fraud-created-the-market” presumption of reliance for those proposed class members who purchased during the initial offering.[FN25] *See generally* Memorandum and Order entered July 1, 1992, Doc. No. 560.

***6** Defendants contend that plaintiffs cannot rely on either theory of reliance and that therefore each class member will be required to establish his subjective reliance on any alleged misrepresentation or omission. Accordingly, defendants argue, any class action would result ultimately in a series of mini-trials in which each class member would be required to demonstrate reliance.

The Supreme Court has held that a preliminary hearing on the merits prior to or as part of the class certification determination is not authorized by Rule 23. *Eisen v. Carlisle & Jacquelin*, 94 S.Ct. 2140, 2152 (1974). If the inquiry whether common issues predominate over individual issues hinges on the merits of a particular element or claim, the rule stated in *Falcon* is somewhat in tension with the rule stated in *Eisen*. However,

In appropriate cases the court may use an accelerated summary judgment procedure prior to class certification to test plaintiffs right to proceed to trial.... [t]he court is not assessing whether there is a substantial possibility that plaintiff will prevail for purposes of deciding whether class certification is appropriate, but is determining that there are no genuine issues of material fact and that defendant is entitled to prevail as a matter of law on the underlying dispute.... [t]he court always is empowered to make a determination on the merits irrespective of the denomination of the suit as a class action ... the propriety of that inquiry is limited only by concerns of whether the class determination should be postponed until after the merits determination.

7B Wright & Miller § 1785 at 128. *See Floyd v. Bowen*, 833 F.2d 529, 534-35 (5th Cir.1987). *See also In Re Control Data Corp. Securities Litigation*, 116 F.R.D. 216, 221 (D.Minn.1986) (“When the requirements of commonality and typicality are brought into question, it may be necessary that the court analyze the substantive claims and defenses of the parties.”).

Fraud on the market reliance requires that there be an active, well-developed and efficient market. *See* Memorandum and Order entered July 1 1992, p. 11 n. 32, Doc. No. 560. *See also In Re Bexar Cty. Health Fac. Dev. Corp. Sec. Lit.*, 130 F.R.D. 602, 606-607 (E.D.Pa.1990) (discussion efficient capital market hypothesis). Defendants argue that the fraud on the market theory of reliance is inapplicable to this litigation because the true nature of bonds had

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp., 1993 WL 302619 (E.D.La.), Fed. Sec. L. Rep. P 97,742
**(Cite as: 1993 WL 302619 (E.D.La.))**

been widely reported in the industry even prior to the first issuance of the bonds and therefore had been taken into account by the market.[FN26] *See generally* Memorandum in Opposition, pp. 7-8; Exhibit F attached to Memorandum in Opposition (timeline of relevant industry articles and attached articles). Indeed, plaintiffs themselves have argued in opposing the indentured trustees motion for summary judgment that much of the allegedly withheld or misstated information had been known to the market before and during the issuance of the bonds. *See* Plaintiffs' Joint Memorandum in Opposition to Motions for Summary Judgment by the Indentured Trustee Defendants, Doc. No. 442, attached as Exhibit E to Memorandum in Opposition.

*7 Fraud created the market reliance requires that the evidence show that the securities at issue were unmarketable but for the alleged fraud. *See* Memorandum and Order entered July 1, 1992, pp. 14-16. *See also In Re Bexar,* 130 F.R.D. at 609 (discussing recent developments in fraud created market doctrine since *Shores v. Sklar,* 647 F.2d 462 (5th Cir.) (en banc), *cert. denied,* 103 S.Ct. 722 (1983)). Defendants argue that the evidence demonstrates that they did in fact intend to use the bond proceeds for their stated purposes and that the bonds are not patently worthless.[FN27] Defendants have represented to this Court on several prior occasions that one outcome of the ELIC conservatorship proceedings in California is that current bondholders will receive at least $.75 on the dollar; plaintiffs have not contested this assertion.[FN28]

The absence of class reliance is, I believe, a significant, although not necessarily dispositive, factor in determining the propriety of allowing this litigation to proceed in a class-action format under Rule 23(b)(3). *See Zimmerman v. Bell,* 800 F.2d 386, 390 (4th Cir.1986) ("The possibility of such individualized determinations [on the issue of reliance] would impose an excessive managerial burden upon the district court. Fed.R.Civ.P. 23(b)(3)(D). When added to the different injuries suffered or avoided by putative class members, the potential for variance in shareholder circumstances becomes significant."); *In Re Storage Technologies Corp.,* 113 F.R.D. 113, 117 (D.Colo.1986) ("The cases in which courts denied class certification all cite the varying factual or legal issues within the proposed class. However, these cases do not appear to accept the fraud on the market theory."). *Compare In Re Control Data,* 116 F.R.D. at 221 ("reliance is an issue lurking behind every securities fraud claim, and to require that it first be proven, would effectively negate the concept of a 10b-5 class action") (*quoting Vernon J. Rocker & Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 221 (D.Minn.1971)).[FN29]

I conclude that it is appropriate to require defendants to move for summary judgment on the narrow issue of the presence of class reliance (i.e. fraud on the market and fraud created the market) as opposed to individual reliance.[FN30] I recognize that this perhaps is not the most efficient manner of determining the inevitable motions for summary judgment.[FN31] Nevertheless, discovery for the class claims is all but complete. Whether defendants as a matter of law should be required to continue to defend against the class reliance theories alleged in the master complaints is material to the class certification issue. *Cf. Richardson v. Byrd,* 709 F.2d 1016 (5th Cir.), *cert. denied,* 104 S.Ct. 527 (1983) (district court has continuing obligation to monitor its class decision in light of the evidentiary development of the case).

Accordingly,

IT IS ORDERED that defendants shall file a joint motion for summary judgment on the issue of reliance not later than August 20, 1993. Plaintiffs may file an opposition not later September 1, 1993. Memoranda in support or in opposition to the motion shall not exceed fifteen (15) pages in length, excluding any attached exhibits.

*8 IT IS FURTHER ORDERED that plaintiffs' motion for class certification is CONTINUED pending determination of defendants' motion for summary judgment.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Not Reported in F.Supp., 1993 WL 302619 (E.D.La.), Fed. Sec. L. Rep. P 97,742
**(Cite as: 1993 WL 302619 (E.D.La.))**

FN1. The term "person" includes any individual, corporation, partnership, trust or other business or legal entity.

FN2. Eight different issues of taxable municipal bonds by seven different issuers (date of official statement in parenthesis) are involved in this litigation:

1) Louisiana Housing Finance Agency (July 31, 1986) ("LHFA"),

2) Southeast Texas Housing Finance Corporation (August 25, 1986) ("SETHFCO"),

3) Louisiana Agricultural Finance Authority (September 17, 1986; October 10, 1986) ("LAFA"),

4) Health, Education and Housing Facility Board of the City of Memphis, Tennessee (September 30, 1986) ("Memphis"),

5) Adams County, Colorado (October 24, 1986) ("Adams County"),

6) Nebraska Investment Finance Authority (October 27, 1986) ("NIFA"), and

7) El Paso Housing Finance Corporation (October 30, 1986) ("El Paso").

FN3. Excluded from the class are the defendants, the parents, subsidiaries and affiliates of the corporate defendants, and their respective officers and directors, the partnership defendants, and their respective partners and affiliates, the members of the immediate families of the individual defendants, and the heirs, successors and assigns of any excluded party.

FN4. This litigation is, broadly speaking, a securities fraud action in which plaintiffs assert, *inter alia,* federal securities claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. In order to establish a claim under § 10(b), plaintiffs must establish:

1) A misstatement or an omission,

2) Of a material fact,

3) Made with scienter,

4) On which plaintiffs relied,

5) That proximately caused their injury.

*Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1115 (5th Cir.), *cert. denied sub. nom., Abell v. Wright, Lindsey & Jennings,* 109 S.Ct. 3242, *vacated on other grounds sub. nom., Fryar v. Abell,* 109 S.Ct. 3236 (1989).

FN5. Nationsbank, the successor indenture trustee for the SETHFCO issue, alleges that a global class cannot be certified as to the claims asserted against it due to lack of standing and the absence of common issues. *See generally* Nationsbank's Memorandum in Support.

FN6. The eighth bond issue challenged in this litigation was not underwritten by Drexel Burnham, though the bond was structured in the same manner as those underwritten by Drexel Burnham.

FN7. A. Pessin, J. Ross, *Words of Wall Street: 2000 Investment Terms Defined* 117 (1983).

FN8. The Memphis complaint, which is typical of the other master complaints, states that, as a result of the collapse of the junk bond market and the proliferation of junk bonds in Executive Life's investment portfolio, Standard & Poors downgraded

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Not Reported in F.Supp., 1993 WL 302619 (E.D.La.), Fed. Sec. L. Rep. P 97,742
**(Cite as: 1993 WL 302619 (E.D.La.))**

Executive Life's rating. Then Standard & Poors downgraded the taxable municipal bonds backed by Executive Life GICs. As this information became known in the market, the trading price of the taxable municipal bond declined. Memphis Complaint ¶¶ 116-118. Defendants state that after the collapse of the junk bond market, the bonds continued to meet their interest payment obligations. However, in April 1991, the Commissioner of Insurance of the State of California initiated conservatorship proceedings for Executive Life and obtained a moratorium that precluded further payments on the GICs. As a result, a number of the bonds defaulted.

More recently, the California courts have ruled that the GICs are annuities under California law and that they therefore are entitled to policyholder insolvency priority. *Texas Commerce Bank v. Garamendi,* 14 Cal.Rptr.2d 854 (1992), *review denied,* (Jan. 28, 1993). Defendants have represented to the Court that the bonds at issue presently are valued at approximately $.75 on the dollar. I note, however, that it appears that many plaintiffs no longer are in possession of the bonds. *See, e.g.,* Nationsbank Memorandum in Opposition, p. 3.

FN9. Since Pretrial Order No. 1, at least twenty "tag-along" actions have been transferred here by the Judicial Panel on Multidistrict Litigation.

FN10. Plaintiffs, in their discretion, had leave to file a separate amended complaint directed to claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

FN11. The RICO master complaint is document number 53.

FN12. Not all class claims are asserted against all class defendants. *See, e.g.,* Memphis Complaint, Count Ten (¶¶ 232-236). The non-class claims are asserted by individual plaintiffs against individual defendants, who typically were the retail sellers (i.e. broker-dealers) of the bonds.

FN13. Count four of the Memphis complaint names as defendants First Executive Corporation, the parent company of Executive Life; Fred Carr; Michael Milken; Peter Avalone; and Alan Arnold.

FN14. The Discovery Scheduling Order sets out procedures and timetables designed to allow the discovery necessary to determine the issues presented in this litigation while tightly controlling the expenditure of resources and time by all parties.

FN15. The date for filing motions for summary judgment has not yet been set.

FN16. It is uncontested that each master complaint contains a unique group of plaintiffs and a unique group of class-claim defendants, even though many class-claim defendants are named in more than one master complaint. *See* Exhibit B attached to Memorandum in Opposition. For example, with the exception of the two LAFA complaints, each master complaint names a different issuer defendant. Few of the named plaintiffs are named in more than one master complaint. Defendants do not challenge any individual plaintiff's standing to bring suit against at least some class-claim defendants; indeed, defendants do not challenge the standing of any named plaintiff in a given master complaint to assert class claims against all class-claim defendants named in that complaint.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN17. Plaintiffs contend that there is an "alleged common scheme," Memorandum in Support, p. 2, that ties the eight master complaints together. Nevertheless, it does not appear from the record that plaintiffs are alleging that *all* named defendants, disregarding in which master complaint they are named, acted in concert such that every named plaintiff has a direct claim against every named defendant. *Cf. La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir.1973). Rather, plaintiffs are alleging that the "same misrepresentations and omissions taint each of the bond issues," i.e. that the alleged schemes in the master complaints and the claims arising therefrom are very similar.

FN18. The Fifth Circuit in *Brown* observed,

> Inclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue. If the plaintiff has no standing individually, no case or controversy arises.

650 F.2d at 771.

FN19. The Supreme Court in *Simon* stated:

> The individual respondents sought to maintain this suit as a class action on behalf of all persons similarly situated. That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

96 S.Ct. at 1925 n. 20.

FN20. An illustrative case is *Angel Music Inc. v. ABC Sports, Inc.,* 112 F.R.D. 70 (S.D.N.Y.1986). The named plaintiff, a music publisher, sought to represent a class of music publishers and copyright owners in an action alleging that a defendant class of producers, syndicators and distributors of television programs had failed to obtain synchronization licenses for their use of certain musical compositions owned by one or more members of the plaintiff class. *Id.* at 71. The plaintiff, however, could assert a claim against only the named defendant; the plaintiff apparently did not have dealings with other members of the defendant class. The court granted defendants motion to dismiss the class allegations on grounds that since the named plaintiff lacked "individual standing to asserts claims against all the members of a defendant class," the constitutional threshold to raising the class claims had not been met. *Id.* at 74 (and cases cited therein).

FN21. The Third Circuit was not unmindful of the standing requirement for the maintenance of class claims. *See Haas,* 526 F.2d at 1096 n. 18.

FN22. For instance, at issue in *Jones v. Firestone Tire and Rubber Co., Inc.,* 977 F.2d 527, 531-34 (11th Cir.1992), *cert. denied,* 124 L.Ed.2d 682 (1993), was the named plaintiffs' standing to bring certain types of discrimination claims (i.e. hiring, promotion, transfer, etc.) when only one plaintiff had filed a required EEOC administrative complaint. Under the "single-filing rule," *see, e.g., Jackson v. Seaboard Coast Line R.R.,* 678 F.2d 992, 1011-12 (11th Cir.1982), no named plaintiff would have standing to bring a claim not contained in the EEOC complaint.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

Not Reported in F.Supp., 1993 WL 302619 (E.D.La.), Fed. Sec. L. Rep. P 97,742
**(Cite as: 1993 WL 302619 (E.D.La.))**

FN23. Indeed, standing and typicality, a Rule 23 requirement, are closely related and courts have employed the two as different rubrics for analyzing similar problems. *See* 7B Wright & Miller § 1785.1.

FN24. I do not reach here the issues of adequacy and typicality.

FN25. Plaintiffs also allege that they individually relied on misrepresentations and omissions allegedly made by defendants. *See, e.g.,* Memphis Complaint ¶ 195.

FN26. Defendants argue that the official statements themselves contained much of the information allegedly withheld or omitted. *See* Exhibit Q attached to Memorandum in Opposition.

FN27. In support of their motion, plaintiffs have submitted documentary evidence discovered from defendants which, if uncontroverted, tends to show that some defendants were at least aware of the possibility that proceeds from the bonds were not going to be used for their stated purposes. *See* Exhibit B attached to Memorandum in Support.

FN28. Plaintiffs have stated previously that an undefined majority of proposed class members have since sold their bonds. Consequently, it is not clear how many proposed class members will benefit from any resurrection of the price of the bonds.

FN29. I note that at least one circuit has held that the *presence* of class reliance in securities fraud actions is a significant factor in certifying a class. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 715 (11th Cir.), *cert. denied,* 108 S.Ct. 1221 (1988) ("Moreover, given the numerous and substantial common issues presented by both the fraud-on-the-market and the misrepresentation claims, the common question in these cases cannot legitimately be considered subordinate to the individual questions presented by the different state statute of limitations that may be applicable or by the arbitration agreements contained in some of the purchasers' contracts.").

FN30. I note that to the extent that the master complaints assert state-law claims for fraud or misrepresentation, *see, e.g.,* Memphis Complaint, Counts Seven (¶¶ 218-222) and Ten (¶¶ 232-236), individual determinations of reliance also implicate the propriety of class treatment for these claims. *See, e.g., Kelley v. Mid-America Racing Stables, Inc.,* 139 F.R.D. 405, 411 (W.D.Okla.1990).

FN31. Defendants previously filed numerous motions for summary judgment that were treated as Rule 12(b) motions since discovery had not commenced at the time the motions were filed. Defendants have assured the Court, and I have no reason to doubt them, that the summary judgment motions will be reurged when leave to do so is granted.

E.D.La. 1993
In re Taxable Mun. Bonds Litigation
Not Reported in F.Supp., 1993 WL 302619 (E.D.La.), Fed. Sec. L. Rep. P 97,742

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.