UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | CASE NO. 2:09-MD-2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to: (Canty 10-** | * | |
| **0929)** | * | MAGISTRATE WILKINSON |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE OR DISMISS NATIONWIDE CLASS ACTION ALLEGATIONS INTRODUCTION

Plaintiffs purport to represent a putative nationwide class of homeowners insured under a policy issued by any of the Defendants who allegedly sustained damage from defective Chinese manufactured drywall.  The claims of such policyholders, however, cannot possibly be adjudicated on a nationwide, or even a multi-state basis, due to the forum selection clause and choice of law provisions within the policies, and the materially different state laws that apply to the putative class members' claims.  Moreover, this problem cannot be cured with subclasses. Accordingly, the scope of any putative class here should, as a matter of law, be limited to a Louisiana-only class, and Plaintiffs' nationwide class allegations should be stricken or dismissed.

1

162554

## BACKGROUND

This case arises from alleged losses due to Chinese drywall in Plaintiffs' home. Honore and Elaine Canty allege they reside at 2785 Highway 39, Braithwaite, Louisiana, and are insureds under an Allstate Insurance Company homeowners insurance policy, No. 095006137. (Compl., ¶¶ 1-2.)

According to Plaintiffs, beginning in the Spring of 2009, they and the putative class they seek to represent "became aware of the potential damaging effects of Chinese manufactured drywall through various media reports." (*Id.,* ¶ 18.)   Plaintiffs allege that after "these reports and other investigations," they "discovered that their properties were constructed using Chinese manufactured drywall, which caused, and continues to cause, physical loss and damage to their properties and contents.  The Chinese drywall emits compounds that cause rapid corrosion of air-conditioner coils, copper tubing, electrical wiring, computer wiring and other household items." (*Id.*)

Plaintiffs allege they contacted Allstate Insurance Company to make a claim on July 7, 2009, which was denied on July 17, 2009.  (*Id.,* ¶ 19.)  They further allege all the Defendants have denied or intend to deny putative class members' claims based on the pollution exclusion, wear and tear, inherent vice and/or latent defect exclusion, and defective materials and/or faulty workmanship exclusion.  (*Id.,* ¶ 22.)

Plaintiffs assert the following causes of action:   Count I-Declaratory Relief, seeking a declaration that the aforementioned policy exclusions do not apply to damages arising from Chinese drywall; Count II-Bad Faith, based on Defendants' alleged misrepresentation of the policy exclusions in denying claims; and Count III-Injunctive Relief, enjoining Defendants from dropping coverage, increasing rates or otherwise deterring putative class members, due to the presence of Chinese drywall, from renewing or retaining their homeowners coverage with Defendants.

162554

Plaintiffs purport to represent the following class:

All individuals in the United States who purchased a homeowners insurance policy from Allstate,[1] directly or through any agent of Allstate, and who made a claim for insurance coverage for damages to their homes sustained as a result of the presence of Chinese-manufactured drywall with Allstate pursuant to that policy and whose homeowner claim was denied by Allstate.

(*Id.,* ¶¶ 3, 24.)

Plaintiffs' Allstate Insurance Company policy contains a forum selection clause which provides, in relevant part:

**Where Lawsuits May Be Brought**

Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, ***shall be brought, heard and decided only in a state or federal court located in Louisiana***. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in Louisiana, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

(*See* Policy, attached to the Declaration of Todd Goldman, Ex. A hereto.)[2]

Consistent with this forum selection clause, and as set forth in the Declaration of Todd Goldman, Defendants' policyholders currently believed to be in the putative class whose policies were issued outside Louisiana (except in Virginia) are also bound by a similar forum selection clause mandating that any lawsuit in any way related to the policy be brought in that state. (*See* Ex. A, ¶ 4.) For example, Defendants' policies issued in Georgia provide that

---

[1]   Plaintiffs use the term "Allstate" to mean all three Defendants named in their Complaint.

[2]   These choice of law and choice of forum provisions are consistent with L.R.S. § 22:868, which prohibits policies issued in Louisiana from containing provisions requiring the policy to be construed according to the laws of any other state or depriving Louisiana courts of jurisdiction over actions against the insurer.

162554

lawsuits related to the policy shall be brought only in Georgia, and Defendants' policies issued in Mississippi provide that lawsuits related to the policy shall be brought only in Mississippi. (*Id.*)

Plaintiffs' Allstate Insurance Company policy also contains the following choice of law provision:

> **What Law Will Apply**
>
> This policy is issued in accordance with the laws of Louisiana and covers property or risks principally located in Louisiana. Subject to the following paragraph, the laws of Louisiana shall govern any and all claims or disputes in any way related to this policy.
>
> If a covered loss to property, or any other occurrence for which coverage applies under this policy happens outside Louisiana, claims or disputes regarding that covered loss to property, or any other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

(*Id.,* ¶ 5; Policy at All-Canty 39.)

Plaintiffs' policy references "Louisiana" as the applicable governing law for the claims they assert in this case because their policy was issued in Louisiana. For other states with policyholders currently believed to be in the putative class in which Defendants issue homeowners policies (except Virginia), Defendants have implemented the choice of law provision above (or a choice of law provision with materially similar language) in their policies mandating that any lawsuit in any way related to the policy shall be governed by the laws of the state in which the policy was issued. For example, Defendants' policies issued in Georgia provide that lawsuits related to the policy shall be governed by Georgia law, and Defendants' policies issued in Mississippi provide that lawsuits related to the policy shall be governed by Mississippi law. (*Id.,* ¶ 6.)[3]

---

[3]    The examples of state law given herein come from the states with policyholders currently believed to be in the class as defined -- Alabama, Georgia, Louisiana, Mississippi and

4

## ARGUMENT

## I.   THE SCOPE OF PLAINTIFFS' PUTATIVE CLASS CAN AND SHOULD BE LIMITED.

The Fifth Circuit has expressly reaffirmed the power of this Court to strike or limit class action allegations in cases such as this, where the complaint fails to meet the requirements of Rule 23 on its face. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). A class action proponent must plead and establish that all four requirements of Rule 23(a) and at least one part of Rule 23(b) are met, *Pederson v. La. State Univ.*, 213 F.3d 858, 866 n. 7 (5th Cir. 2000), and bears the burden of proving that the proposed class should be certified, *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982); *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).[4]

When a plaintiff cannot satisfy the basic prerequisites under Rule 23, courts will issue an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons" even before a plaintiff has filed a motion for class certification. Fed. R. Civ. P. 23(d)(1)(D). Courts routinely limit class action allegations at the pleading stage.

---

Virginia. In addition to Plaintiffs' Louisiana policy referenced above, copies of the relevant provisions from Defendants' policies issued in Alabama, Georgia and Mississippi are attached as Exhibit 2 to the Declaration of Todd Goldman. As noted, at present Defendants believe these are the only states with policyholders in the putative class. However, the analysis in this memorandum would apply even if there were additional states with policyholders in the putative class.

[4]   Under Rule 23(a), a plaintiff must establish that the proposed class satisfies the requirements of (1) numerosity; (2) commonality; (3) typicality; and (4) that the representative plaintiffs can adequately protect the interests of the class. Rule 23(b)(3) adds requirements that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(2) permits class actions for declaratory or injunctive relief when the party opposing the class has acted or refused to act on grounds generally applicable to the class.

162554

*John,* 501 F.3d at 445 (affirming dismissal of class action allegations based on faulty class definition).[5]  In addition, courts routinely limit class definitions in order to vigilantly ensure that the class is constituted with precision.  *See, e.g., In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) (noting courts have broad discretion to limit or redefine scope of putative class); *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions") (citing *Monumental*); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("litigants and judges regularly modify class definitions").  Significantly, courts have granted motions to limit the scope of class action allegations in similar situations, where the court determined that the law limited putative plaintiffs to those in the forum state.  *See, e.g., Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 9-12 (D. Mass. 2003) (striking claims of nationwide putative class members whose bankruptcies were discharged outside the District of Massachusetts as only Massachusetts debtors could proceed in the case).

## II.  PLAINTIFFS' NATIONWIDE CLASS ACTION ALLEGATIONS SHOULD BE STRICKEN OR DISMISSED.

Plaintiffs' class definition purports to include policyholders throughout the country.  (Compl., ¶¶ 3, 24.)  The claims of such policyholders, however, cannot possibly be adjudicated on a nationwide, or even a multi-state basis, due to the forum selection clauses and choice of law provisions within Defendants' policies, and the materially different state laws that apply to the putative class members' claims.  For these reasons, the Court should limit the scope of the putative class to a Louisiana-only class.

### A.  Forum Selection Clauses Are Prima Facie Valid And Enforceable.

---

[5]  *See also Nguyen v. St. Paul Travelers Ins. Co.*, 2009 WL 23677, *2 (E.D. La. Jan. 5, 2009) (noting that courts routinely apply Rule 23(d)(1)(D) or its predecessor, Rule 23(d)(4), to motions to limit the scope of class action allegations and collecting cases).

162554

Courts have favored the enforcement of forum selection clauses since the United States Supreme Court deemed them "prima facie valid" in the landmark case of *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). *See, e.g., Shaw Group, Inc. v. Natkin & Co.,* 907 F. Supp. 201, 204-05 (M.D. La. 1995) ("*Bremen* supports the prima facie validity of forum choice clauses and indicates that such provisions are to be given significant weight as a legitimate expression of the parties' forum selection"). The Fifth Circuit has followed suit, stating a "forum selection provision in a written contract is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank,* 46 F.3d 13, 15 (5th Cir. 1995). *See also Schwegmann Giant Supermarkets v. National Holdings, Inc.*, 1996 WL 225017, *2 (E.D. La. April 30, 1996) (same principle);[6] *CA One/Pampy's v. Brown*, 982 So. 2d 909, 917 (La. App. 4 Cir. 2008) ("Generally, forum selection clauses are legal and binding in Louisiana, except as specifically prohibited by law, and are *prima facia* valid") (*citing Pique'-Weinstein-Pique' Architects, Inc., v. New Orleans Aviation Bd.*, 762 So. 2d 76, 78 (La. App. 5 Cir. 2000)).

The following factors are used by courts to address arguments against the applicability of forum selection clauses: (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Haynsworth v. The Corp.,* 121 F.3d 956, 963 (5th Cir. 1997). *See also CA One/Pampy's*, 982 So. 2d at 917 (forum selection clauses

---

[6]    All unpublished opinions cited herein are attached hereto, in order of citation, as Group Exhibit B.

"should be enforced unless the resisting party clearly proves that enforcement would be unreasonable and unjust, or that enforcement would contravene a strong public policy for the forum where the suit is brought").

As set forth above, there is no dispute here that non-Louisiana putative class members (except in Virginia) have policies specifying a state other than Louisiana as the proper forum. The Complaint pleads no basis for avoiding or defeating this clause. Indeed, such a clause would not be susceptible to attack, since it merely requires policyholders to bring lawsuits in their own states.[7] Obviously, no inconvenience or deprivation of legal remedies is implicated. Further, there can be no dispute that the allegations in the Complaint directly "*relate*" to those policies, since Plaintiffs are seeking to avoid enforcement of certain policy provisions. (*See, e.g.,* Compl., ¶¶ 30-37, 39-41, 43.)

Requiring putative class members to bring suit in the states in which their policies were issued, subject to those states' comprehensive legal frameworks, is also consistent with the requirements in several states that the insurance policy forms must be approved by the state insurance department before use. *See, e.g.,* ALA. CODE. § 27-14-8 (requiring policy forms to be filed with and approved by insurance commissioner); MISS. ADMIN. CODE. § 19-1-FR 68-1:1.1

---

[7]   Indeed, this provision is consistent with the fact that insurers are regulated on a state-by-state basis under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, which vests authority in the respective departments of insurance of each state. The insurance regulatory system of each state provides exhaustive avenues of redress, allowing allegedly aggrieved policyholders to challenge an alleged unfair practice that is regulated by the department of insurance. *See, e.g.,* ALA. CODE § 27-13-42 (insurance commissioner may conduct investigations, hold hearings, make examinations, and has the power to institute legal proceedings). An insurance commissioner's decision typically may be appealed to the courts. *See, e.g.,* ALA. CODE § 27-13-43 (2009). Moreover, the state laws governing insurance apply expressly to insurance policies issued and covering risks in those states. *See, e.g.,* ALA. CODE § 27-13-21 ("The provisions of this article shall apply to insurance against loss to property located in this state…"); GA. CODE ANN. § 33-9-3 ("This chapter shall apply to all insurance on risks or on operations in this state…").

162554

(same).  It is entirely appropriate to require putative class members to challenge aspects of their policies in and under the laws of the states in which those polices were issued and the forms comprising those policies were legally approved.

Accordingly, the Court should enforce the forum selection clause in the Defendants' policies.  This would result in the limitation of the putative class to one for Louisiana only.

**B.      The Choice Of Law Provisions Must Be Applied As Written In Putative Plaintiffs' Policies.**

As noted above, Defendants' insurance policies also contain a binding agreement to apply the law of the state in which the policy was issued.  When the parties have agreed on which law to apply, and such a provision does not violate public policy, courts must honor the parties' choice.  *See, e.g., Curtis Callais Welding, Inc. v. Stolt Comex Seaway Holdings, Inc.*, 129 Fed. Appx. 45, 51-52, 2005 WL 408144 (5th Cir. Feb. 22, 2005) ("Louisiana generally allows parties to select the law that will determine the outcome of the disputes arising from a contract," and such provisions are "presumed valid and enforceable"); *Lafayette Stabilizer Repair, Inc. v. Machinery Wholesalers Corp.,* 750 F.2d 1290, 1294 (5th Cir. 1985) (enforcing choice of law provision indicating Florida law would apply); *Burbank v. Ford Motor Co.*, 703 F.2d 865 (5th Cir. 1983) (affirming trial court's enforcement of choice-of-law provision of an employment agreement, despite plaintiff's arguments that he occupied a weak bargaining position when he agreed to be bound by Michigan law).

For example, in *Curtis,* the Fifth Circuit noted that "Louisiana courts typically will not invalidate a choice-of-law provision agreed upon between parties, unless the chosen law violates a strong public policy of the state."  129 Fed. Appx. at 52.  Because the provision at issue did not violate any strong public policy of Louisiana, the court enforced it.  *Id.*  Similarly, in *Lafayette,* the Fifth Circuit held a provision which stated the "parties acknowledge that this

9

Contract was entered into in Florida and that Florida law shall govern the terms thereof" applied, particularly where Florida had significant relationship to the contract.   750 F.2d at 1294.

Here, there can be no argument that the choice of law provisions in Defendants' policies violate any Louisiana public policy.   Moreover, the home states of the putative class members clearly have significant relationships to the policies which were issued in those states. Accordingly, as in the above cases, Defendants' choice of law provisions should be enforced according to their terms.   This too requires striking or dismissing the nationwide class action allegations here.

### C.   Common Law Choice of Law and Choice of Forum Rules Also Require Application of the Laws of the Putative Class Members'Home States.

In any event, the same result would apply were a choice of law and/or choice of forum analysis undertaken under common and/or Louisiana law.   Courts have a constitutional obligation to determine what law would apply to putative class members' claims in deciding whether a multi-state class is appropriate, and to examine variations in state laws.[8]   State law variations affect predominance and superiority, because those variations may "swamp any common issues and defeat predominance."[9]   Where the laws of numerous states must be applied, and there are even slight differences among those laws, individualized issues necessarily predominate and make the class unmanageable.[10]

---

[8]   *Phillips Petroleum v. Shutts*, 472 U.S. 797, 821-24 (1985); *Cole v. General Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996); *In re Masonite Corp. Hardboard Siding Products Liability Litig.*, 170 F.R.D. 417, 421-22 (E.D. La. 1997).

[9]   *Castano*, 84 F.2d at 741; *Masonite*, 170 F.R.D. at 422-24 (finding class certification inappropriate because the plaintiffs' claims could not proceed under the law of a single state, differences among the various states' laws overwhelmed the common elements of plaintiffs' claims, and the use of subclasses would not cure this problem).

[10]   *Id; In re Baycol Prods. Litig.*, 218 F.R.D. 197, 208-210 (D. Minn. 2003).

Under Louisiana choice of law rules, the laws of the fifty states apply here, as those are the states which contained the principal locations of the insured risks (*i.e.,* the putative class members' homes), where the putative class members' alleged injuries occurred, and where their policies were delivered. *See, e.g., Abraham v. State Farm Mut. Auto. Ins. Co.,* 465 F.3d 609, 613-14 (5th Cir. 2006) (under Louisiana choice of law rules, Mississippi law applied in insured's bad faith action against automobile insurer arising from insured's Louisiana collision with uninsured motorist, where insured was dual resident of Louisiana and Mississippi, insured's vehicle was licensed and garaged in Mississippi, and insurance policy had been issued in Mississippi). Virginia applies a similar test. *See, e.g., Buchanan v. Doe,* 246 Va. 67, 74, 431 S.E.2d 289, 293 (1993) (same principle).

Choice of forum principles also weigh in favor of limiting the putative class to a Louisiana-only class. *See, e.g., Brumley v. Akzona, Inc.,* -- So. 3 d --, 2010 WL 395614, **2-3 (La. App. 4 Cir. Jan. 13, 2010) (stating the "bias toward the plaintiff's choice of forum applies only when the plaintiff is a resident of the forum," and holding that, as "Texas residents, neither the plaintiff nor the decedent has an entitlement to the resources of the court in Orleans Parish"). *See also In re McDonnell-Douglas Corp.,* 647 F.2d 515, 517 (5th Cir. 1981) (finding Texas was appropriate forum, particularly where plaintiffs were Texas residents); *Norfolk and Western Ry. Co. v. Williams,* 239 Va. 390, 394-95, 389 S.E.2d 714, 716 (1990) (same principle). Accordingly, even though Virginia policies issued by Defendants do not contain the aforementioned choice of law/choice of forum provisions, the result would be the same for Virginia policyholders -- their forum and applicable law would be Virginia, not Louisiana.

**D.    Application of Louisiana Law To Non-Louisiana Policyholders' Claims Would Violate the Constitution.**

Given the conflicts of law outlined below, even if choice of law rules permitted it, applying Louisiana law to claims of non-resident putative class members would be

11

unconstitutional.   The Due Process and Full Faith and Credit Clauses of the United States Constitution forbid applying a state's substantive law extraterritorially unless the state has significant contacts with the claim creating state interests "such that choice of its law is neither arbitrary nor fundamentally unfair." *Shutts*, 472 U.S. at 818 (citation omitted).   In particular, a state may not apply its own law to all class action claims where, as here, the bulk of the non-residents' claims relate to property or transactions having no contact with the forum.   *Id.* at 821-23.   Further, the Constitution bars a single state from imposing economic sanctions, by legislative or judicial means, with the intent to control conduct that is lawful in other states.[11]

### E.   Conflicts Among State Laws Create Individualized Issues That Preclude Nationwide or Multi-State Class Action Treatment Here.

#### 1.   The Laws Vary From State to State Regarding Bad Faith.

Plaintiffs' allegations regarding bad faith involve substantial variations in state law.  In Louisiana, when an insurer has a reasonable defense to coverage or has legitimate doubts regarding coverage, the insurer "has the right to litigate these questionable claims without being subjected to damages and penalties." *Clark v. McNabb*, 878 So. 2d 677, 684 (La. App. 3 Cir. 2004) (citation omitted).  Applying this principle, the Fifth Circuit reversed an award of statutory bad faith damages in a Katrina case, finding that an insurer does not act in bad faith when the insurer has a fairly debatable basis for denying a claim. *Kodrin v. State Farm Fire & Cas. Co.*, 314 Fed. Appx. 671, 2009 WL 614521 (5th Cir. Mar. 11, 2009).

Mississippi has a different standard for bad faith.  There, "in order to recover punitive damages for an insurer's bad faith refusal to pay a claim, the plaintiff must prove two things: (1) that the insurer had no legitimate or arguable reason to deny payment on the claim,

---

[11]     *BMW of North Am. Inc. v. Gore*, 517 U.S. 559, 572-73 (1996).  *See also Edgar v. MITE Corp.*, 457 U.S. 624, 642 (1982) (the Commerce Clause precludes the application of a state statute to commerce wholly outside of the State's borders).

162554

*and* (2) that the insurer acted with gross and reckless disregard for the insured's rights so that it becomes a heightened tort." *Dial v. Hartford Accident & Indemnity Co.*, 1996 WL 33370649, *4 (N.D. Miss. Jan. 25, 1996) (emphasis in original). *See also Moore v. United Services Auto. Ass'n*, 819 F.2d 101, 104 (5th Cir. 1987) ("To establish bad faith in Mississippi, the plaintiff must show (1) the insurer had no arguable basis to deny the claim and (2) the insurer acted with either malice or gross negligence").

There "is no separate tort of bad faith involving insurance coverage disputes in Virginia," but there is a " a statutorily created remedy that allows a court to award attorney's fees and costs to the insured if the insurer acted in bad faith." *Styles v. Liberty Mut. Fire Ins. Co.*, 2006 WL 1890104, *1 (W.D. Va. July 7, 2006). An award of fees and costs under this statute cannot be adjudicated until a decision has been issued on the breach of contract claim. *Id.* Further, in Virginia evidence related to the defendant's actions subsequent to the loss claim filed by the plaintiff is material for the issues of bad faith and whether coverage should have been denied. *Id.*

Alabama's standard for bad faith also differs. Under Alabama law, the following elements must be established to prevail on a bad faith claim: "(a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 960 (Ala. 2001) (citation omitted).

Georgia has yet a different standard. There, an insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer

13

within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith, and a "proper demand for payment is essential to recovery." *See, e.g., BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19, 648 S.E.2d 433, 435 (2007).

These differences are just a sample of the many material conflicts among the laws of the states in the putative class that apply just to Plaintiffs' bad faith claims.

### 2. State Laws Also Vary With Regard To Whether An Occurrence Results in Property Damage During a Particular Policy Period.

The laws among the various states also differ with regard to coverage triggers for determining whether a loss has occurred during a particular policy period.    For example, Louisiana courts have applied the "manifestation" trigger in resolving whether an occurrence results in property damage during a particular policy period. *See, e.g., Liberty Mut. Ins. Co. v. Jotun Paints, Inc.,* 555 F. Supp. 2d 686, 697 (E.D. La. 2008) (citations omitted); *New Orleans Assets, L.L.C. v. Travelers Prop. Cas. Co.,* 2002 WL 32121257, *2 (E.D. La. Sept. 12, 2002); *James Pest Control, Inc. v. Scottsdale Ins. Co.,* 765 So. 2d 485, 490-92 (La. App. 5 Cir. 2000), *writ denied,* 777 So. 2d 474 (La. 2000).   Under the manifestation trigger, property damage is deemed to occur "at the point *when it becomes manifest, or when it is discovered,*" rather than at the time of the act causing the damage. *New Orleans Assets,* 2002 WL 32121257, *2 (emphasis added).   So, if the property damage does not first manifest itself within the policy period for the applicable insurance policy, no coverage is afforded under that policy.

It appears that Georgia courts would apply either an injury-in-fact or a continuous coverage trigger, but not a manifestation trigger. *See, e.g., Plantation Pipe Line Co. v. Continental Cas. Co.,* 2006 WL 6106248, *8 (N.D. Ga. Sept. 25, 2006) (applying injury-in-fact coverage trigger); *Arrow Exterminators, Inc. v. Zurich American Ins. Co.,* 136 F. Supp. 2d 1340, 1349 (N.D. Ga. 2001) (adopting continuous trigger approach, under which coverage was

162554

provided if property damage occurred during the policy period," and rejecting manifestation trigger approach.

It appears either an actual injury or a manifestation trigger might apply in Mississippi. *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 Fed. Appx. 465, 470, 2006 WL 1489249 (5th Cir. May 25, 2006) (referring to coverage triggers in terms of both actual harm and manifestation). And it appears to be an open question in Virginia regarding which coverage trigger would apply. *See, e.g., Morrow Corp. v. Harleysville Mut. Ins. Co.*, 110 F. Supp. 2d 441, 448 (E.D. Va. 2000) (discussing various coverage triggers and indicating Virginia Supreme Court has not signaled which approach it might adopt).

### 3. State Laws Vary Regarding The Interpretation of the Policy Exclusions at Issue.

The states' laws also vary with regard to the interpretation of the policy exclusions at issue. For example, Louisiana courts have construed a latent defect exclusion to apply to losses resulting from improper materials used in construction. *See, e.g., Puckett v. State Farm Fire & Cas. Co.*, 546 So. 2d 354, 355 (La. App. 3 Cir. 1989) (coverage for damage to home caused when roof leaked due to improper use of staples in roof installation was precluded under latent defect exclusion). Louisiana courts have also stated a "latent defect" means "a defect which is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." *Shields v. Pennsylvania General Ins. Co.*, 488 So. 2d 1252, 1254-55 (La. App. 4 Cir. 1986).

Alabama courts have defined a latent defect differently -- *i.e.*, "one which is not apparent and which would not be discoverable upon reasonable inspection." *Sony Magnetic Products, Inc. of America v. Merivienti O/Y*, 668 F. Supp. 1505, 1514 (S.D. Ala. 1987). And in Virginia, courts have defined a "latent defect" as being "integral to the damaged property by

reason of its design or manufacture or construction." *United States West, Inc. v. Aetna Casualty & Surety Co.*, 117 F.3d 1415, 1997 WL 400081, *5 (4th Cir. July 16, 1997).

Courts in different states have also applied pollution and/or contamination exclusions differently. For example, it appears that Georgia courts look strictly to the policy language of the pollution exclusion to determine whether it applies. *See, e.g., Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co.*, 231 Ga. App. 89, 90, 498 S.E.2d 572, 574 (1998). The Fifth Circuit stated whether "the policy definition comports with this court's notion of the usual meaning of 'pollutants' is not the issue; this court has no special expertise in writing insurance policies. Our judgment about the reasonable scope of a pollution exclusion-in the absence of ambiguity-must be tied to the language of the policy," but also noted Mississippi is a "decision-poor" state with regard to interpreting pollution exclusions, leaving open the possibility that some other approach might apply in that state. *American States Ins. Co. v. Nethery*, 79 F.3d 473, 475-76 (5th Cir. 1996).

### 4.    State Laws Vary Regarding The Standard for Injunctive Relief.

The states also apply different standards for injunctive relief -- a remedy Plaintiffs seek in their putative class action. For example, in Louisiana, a preliminary injunction "is an extraordinary remedy that should issue only if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest." *Ridgely v. Federal Emergency Management Agency*, 512 F.3d 727, 734 (5th Cir. 2008). Given the extraordinary nature of the remedy, an "injunction ... should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Ferrellgas,*

16

*L.P. v. McConathy*, 2010 WL 1010831, *2 (W.D. La. Mar. 15, 2010) (citations and internal quotations omitted).

Alabama requires the following: "(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction]." *Holiday Isle, LLC v. Adkins*, 12 So. 3d 1173, 1176 (Ala. 2008) (citation and internal quotations omitted).

Virginia courts have focused on the following elements: "(1) the likelihood of irreparable harm to the plaintiff if preliminary injunctive relief is denied; (2) the likelihood of harm to the defendant if such relief is granted; (3) the likelihood of the plaintiff's success upon the merits of the case; and (4) the public interest stake in the litigation." *Owens v. City Council of City of Norfolk*, 75 Va. Cir. 91, 2008 WL 6745386, *7 (Va. Cir .Ct. Mar. 7, 2009) (citations omitted). Moreover, in "balancing the interests of the plaintiff and the defendant, should it appear that the plaintiff stands to suffer the most significant hardship, then the examination of plaintiff's likelihood of success on the merits diminishes in importance to the court's decisionmaking." *Id.*

The above are just a few examples, but they plainly illustrate the different state law analysis that will apply to putative class members in each of the states with policyholders in the putative class. These differences in state laws also counsel in favor of limiting this to a Louisiana-only class.

**The Use of Subclasses Would Not Obviate The Above Issues.**

Obviously aware of the problem that variations in state law poses with regard to class action treatment, Plaintiffs baldly state "sub-classes are contemplated based upon the 50

states and the District of Columbia to the extent the laws of the various states differ." (Compl., ¶ 5.) However, the use of subclasses will not solve the problem.

Initially, Plaintiffs focus solely on the purported predominance of common issues in their sub-classes (*id.*), and completely ignore the other Rule 23 requirements that they must independently satisfy for any subclass, including the glaring fact that they do not have representative plaintiffs for any subclass for any state other than Louisiana. That alone precludes the use of subclasses here based on inadequacy of representation.

For example, in *Wagner v. Central Louisiana Elec. Co., Inc.*, 99 F.R.D. 279, 283 (E.D. La. 1983), the named plaintiff brought an antitrust action seeking to certify a putative class of past and present customers of the defendant electric company who were located in certain geographic areas. The plaintiff proposed five different subclasses consisting of members living in a particular geographic area. The court held the plaintiff's proposal was deficient, because he failed to demonstrate his membership in any of the five proposed subclasses, which precluded a finding that representation would be fair and adequate. *See also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (affirming the district court's denial of motion for certification of subclasses because, as here, "Plaintiff has not presented representative plaintiffs for those subclasses, nor has she demonstrated that each subclass meets the Rule 23 requirements"); *Whittum v. Saginaw County*, 2004 WL 768901, ** 4-6 (E.D. Mich. Apr. 1, 2004) (denying motion to certify class where "none of the named plaintiffs fall within either of the subclasses that they propose").

This case is no different. The named Plaintiffs here are Louisiana residents, but they purport to bring a class on behalf of Defendants' policyholders throughout the country. Plaintiffs have not identified any particular subclass from any other state but, even if they did, they have not presented any representative plaintiffs for any such subclass. Accordingly, as in

18

the above cases, Plaintiffs' proposed use of subclasses should be rejected, and the putative class should be limited to Louisiana only.

Similarly, Plaintiffs fail to meet their burden to show, as they must, that the differences in the laws of the multiple jurisdictions in their subclasses would not defeat certification. *See, e.g., Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance").

As Judge Feldman stated, in language equally applicable here:

> [Plaintiffs] boldly contend, "The variations among the jurisdictions for each count of the Complaint may be subclassed into, at most, five subclasses," and "the requirements for proving a *prima facie* case of negligence are almost uniform throughout all jurisdictions." The Court does not agree. After a careful review of the parties' submissions on state law differences, the Court is not persuaded by plaintiffs' position. As *Castano* admonishes, this Court cannot imagine managing a trial under the law of 51 jurisdictions on the defectiveness of Masonite siding.

*In re Masonite Corp. Hardboard Siding Products Liability Litig.*, 170 F.R.D. 417, 422 (E.D. La. 1997). As Judge Feldman further stated:

> Adjudicating the claims of a national class on strict liability "defect" would require not only more than five subclasses, but also several juries. Within a given plaintiff-defined doctrinal group, states have different definitions of defectiveness. Some of these instructions could not possibly be given to the same jury. States employ presumptions based on different triggering conditions. States have different formulations of the burden of proof. Even in a liability-only trial, composite instructions accounting for all of these differences would hazard a chaos that seems counterintuitive to the spirit of Rule 23.

*Id.* at 423-24 (footnotes omitted).

Indeed, courts have repeatedly found class action treatment inappropriate -- despite the plaintiffs' suggestions that subclasses can be used to solve the problem -- where, as here, there are significant variations among the states' laws. For example, in *Xavier v. Belfor*

19

*USA Group, Inc.,* 2009 WL 411559 (E.D. La. Feb. 13, 2009), Judge Zainey dismissed the plaintiff's state law class action allegations because the "nuances in each respective state's law [related to the employer/employee relationship at issue] requires an individualized analysis as to each class member." *Id.,* *4. In so ruling, Judge Zainey further stated: "the foregoing problems are not solved by the . . . plaintiffs' attempt to create four separate state law subclasses. It remains that for each member of each of the four subclasses the 'employer' determination must be made individually." *Id,* *5.

In *Carpenter v. BMW of North America, Inc.,* 1999 WL 415390 (E.D. Pa. June 21, 1999), after explaining that state law variations in connection with plaintiff's various legal theories precluded nationwide class action treatment, the court rejected the suggestion that subclasses could cure this problem:

> Plaintiff suggests having 51 subclasses, *i.e.,* a subclass for each jurisdiction, with no plan as to how the jury could meaningfully be instructed on the laws of each jurisdiction with respect to plaintiff's multiple claims, each of which contains numerous elements, multiplied by thousands of class members. Next, Plaintiff proposes only three subclasses for the Consumer Fraud Count, despite the numerous individual issues presented by the variations in state statutes. Similarly, Plaintiff disregards the state law variances that will need to be addressed to prove a breach of contract, having boldly stated that no subclasses are needed. As for negligent misrepresentation, BMW correctly charges that Plaintiff has apparently ignored her own Exhibit N, indicating that the elements needed to establish negligent misrepresentation will vary among the 50 states, with some states not even recognizing such a claim. And Plaintiff's assertion that only three sub-classes will be necessary to cover all of the state law variations regarding Plaintiff's fraud and punitive damage claims is not supported by Exhibits M and O to Plaintiff's Brief.

*Id.,* *6.[12]

---

[12] *See also Bowers v. Jefferson Pilot Financial Ins. Co.,* 219 F.R.D. 578, 584 (E.D. Mich. 2004) (rejecting plaintiffs' contention case involved common issues related to the breach of a standardized form policy and that difficulties due to state law variations could be managed through the use of subclasses, and stating: "the Court is satisfied that because

20

Here too, as demonstrated above, the states' laws just on bad faith, coverage triggers and application of the relevant policy exclusions differ substantially, and it would be impossible to create subclasses by state or groups of states (as shown above), or by causes of action, in light of Plaintiffs' theories.   By way of just a few examples of the latter point, while Louisiana and Mississippi might apply a manifestation coverage trigger (although, as noted, this appears to be an open question in Mississippi), these states' laws governing bad faith differ, so putative class members in these states could not be placed into a single subclass.   Also, these states could not be in the same subclass with Georgia, which has adopted a different coverage trigger approach.   Similarly, Louisiana and Virginia putative class members could not be in the same subclass with regard to the application of the latent defect exclusion.    And it appears Alabama and Virginia putative class members could not be in the same subclass with respect to the claim for injunctive relief.   Since Louisiana, Mississippi, Virginia, Alabama and Georgia have different bad faith standards, putative class members from these states also could not be in the same subclass with respect to their bad faith claims.

These are just a few examples, but they demonstrate that, as in the above cases, no amount of "subclassing" can cure the problem with variations among the states' laws.   This is exacerbated by the need for multiple jury instructions addressing the different standards and nuances among those laws.   To paraphrase Judge Feldman, any attempt at composite instructions

---

of the significant variations in the states' laws with respect to the use of extrinsic evidence, class certification is not warranted.   Therefore, upon reconsideration, the Court concludes that because of the difficulties likely to be encountered in the management of this case, this action should not be certified as a class action"); *Veerkamp v. U.S. Security Associates, Inc.*, 2006 WL 2850020, *8 (S.D. Ind. Sept. 29, 2006) ("Assuming for the sake of argument that a class action might be appropriate for state law claims by employees within one state, the proposal for a class action combining claims under 27 different states is a non-starter.    The Seventh Circuit has repeatedly reversed certifications of multi-state class actions asserting claims arising under different states' laws").

21

accounting for all these differences would hazard a chaos that is counterintuitive to the spirit of Rule 23. *Masonite*, 170 F.R.D. at 424.

## III.   A NATIONWIDE CLASS ACTION WOULD BE UNMANAGEABLE.

Even where class certification is theoretically possible, courts highly disfavor multi-state class actions because of the management problems they entail. As Judge Feldman stated, "this Court cannot imagine managing a trial under the law of 51 jurisdictions." *Masonite,* 170 F.R.D. at 423. Similarly, in *Zinser v. Accufix Research Inst.,* 253 F.3d 1180 (9th Cir. 2001), the Ninth Circuit affirmed the district court's decision not to certify the class where the laws of 48 states would apply. The court reasoned that "in this case, where the potential plaintiffs are located across the country and where the witnesses and the particular evidence will also be found across the country, plaintiffs have failed to establish any particular reason why it would be especially efficient for this Court to hear such a massive class action lawsuit." *Id.* at 1191-92 (citation omitted). *See also Kaczmarek v. Int'l Bus. Mach. Corp.*, 186 F.R.D. 307, 312-13 (S.D.N.Y. 1999) ("The prospect of determining the law of all fifty states and then applying the materially different laws that exist for some of the claims in this case would make this class action too complicated and unmanageable"); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679 (S.D. Cal. 1999) ("When individualized determinations must be made, and then applied under the gamut of state law, class certification would provide massive manageability problems for a court").

Legal commentators also caution trial courts against nationwide class actions where, as here, multiple states' laws will apply. *See, e.g.,* Arthur Miller and David Crump, *Jurisdiction and Choice of Law in Multistate Class Actions After Phillips Petroleum Co. v. Shutts*, 96 Yale L.J. 1, 64 (November, 1986) (further stating that a "tempting solution is to group states with apparently similar laws for decisionmaking purposes," but that "it would be illusory

to think that the mere act of classifying can reduce the task to manageable proportions"). The unmanageability of a multi-state class action is yet another reason Plaintiffs' nationwide class allegations should be stricken or dismissed here.

## CONCLUSION

Given all the choice of forum, choice of law and unmanageability problems Plaintiffs' proposed nationwide class action allegations present, Defendants respectfully submit that this Court should limit the putative class in this case to a Louisiana-only class. For all the foregoing reasons, Defendants respectfully request this Court enter an Order striking or dismissing Plaintiffs' nationwide and/or multi-state class action allegations.

Respectfully submitted,

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
Catherine F. Giarrusso, 29875
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

Steven M. Levy
Mark L. Hanover
SONNENSCHEIN NATH &
  ROSENTHAL, LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
(312) 876-8000

*Attorneys for Defendants*

23

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of July, 2010.

*/s/Judy Y. Barrasso*

162554