UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL | * | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION: "L" |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| THIS DOCUMENT RELATES TO: | * | MAG. WILKINSON |
| Civil Action No.:  *Galloway*, 10-CV-688 | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

The plaintiff, James H. Galloway, Jr. ("Galloway"), claims that defective Chinese-made drywall installed in his condominium unit emits gases that caused corrosion of various metallic components and items in his home.  On this motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) and pursuant to the July 1st, 2010 Order of this Court, Defendant Property & Casualty Insurance Company of Hartford ("P&C") seeks a ruling that, as a matter of law, Galloway's claim is not covered by his P&C homeowners' insurance policy (the "Policy").[1]

## I.    PRELIMINARY STATEMENT

The Policy does not insure the quality of the components used to build the Galloway home or the risk that a defective building component will cause the formation of a gas that contaminates the home and impacts other building materials.  Galloway alleges that Chinese-

---

[1] A true and correct copy of the Policy is attached hereto at **Tab A,** including the 33-page HO 00 06 10 00 form as identified in the certified version filed with the Insurer Profile Form. To facilitate the Court's reference, citations to the Policy in this brief refer to the page numbers on the lower right-hand corner of the document.

1

made drywall in his home is emitting gases that cause corrosion of wiring, plumbing and other metallic components of the home.  Galloway's claim falls within the exclusions for losses caused by:  (1) latent defects; (2) faulty materials; (3) acts, errors or omissions in the furnishing of work or materials; (4) corrosion; and (5) pollutants, defined to include gaseous contaminants or irritants.  Accepting Galloway's allegations as true, the losses claimed are caused by a latent defect in the drywall, which is a defective material, and are also caused by corrosion and by gaseous contaminants.  This type of loss is simply not insured.  As to any claim for removing or replacing the drywall itself, the same exclusions apply to prevent coverage but there separately is no coverage because Galloway fails to allege any direct physical loss to the drywall itself.  The claimed damage to Galloway's personal property is also not covered because personal property is only insured against 16 specific perils, none of which is applicable to their losses.  P&C is therefore entitled to judgment on the pleadings.

## II.   APPLICABLE LEGAL STANDARDS

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to the standard for granting a Rule 12(b)(6) motion to dismiss.  The well-pleaded allegations in the complaint are assumed to be true, and the motion will be granted if the plaintiffs cannot recover, as a matter of law, on the facts alleged.  *In re Katrina Canal Breaches Consol. Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007).  The insurance policy at issue is properly considered on this Rule 12 motion because it is central to the plaintiff's claims.  *Katrina Canal Breaches*, 495 F.3d at 205; *Chauvin v. State Farm Fire & Cas. Co.*, 450 F. Supp. 2d 660, 663 (E.D. La. 2006), *aff'd*, 495 F.3d 232 (5th Cir. 2007).

In addition to facts alleged in the pleadings, however, the district court "may also consider matters of which [it] may take judicial notice."  *Lovelace v. Software Spectrum Inc.,* 78

F.3d 1015, 1017-18 (5th Cir. 1996).  And "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007) (considering record in prior state court case); *see also Cinel v. Connick,* 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (considering a consent judgment in other litigation on a Rule 12(b)(6) motion, explaining that "a court may permissibly refer to matters of public record.").  If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper.  *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.,* 20 F.3d 1362, 1366 (5th Cir. 1994).  In addition to facts alleged in the pleadings and facts judicially noticed, a court may also consider documents incorporated into the pleading by reference.  *Henrise v. Horvath*, 2002 U.S. App. LEXIS 28192, *24 n.5 (5th Cir. 2002) ("In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, [the district] court's review is limited to the allegations contained in the pleadings themselves.  [D]ocuments incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all intents and purposes."); *see also Anderson v. T & D Mach. Handling*, 1996 U.S. Dist. LEXIS 13463, *6 (E.D. La. 1996) (same).

    "An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code."  *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 192 (La. 2008).  This Court's role is to determine the parties' common intent from the language used in the Policy.  La. Civ. Code art. 2045.  The words in the Policy must be given their "generally prevailing meaning," and "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."  La. Civ. Code arts. 2047, 2050.  When the words "are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046.

Galloway, as the insured, bears the initial burden to allege adequately, and ultimately prove that the losses he is claiming fall within the Policy's grant of coverage. *See Jones v. Estate of Santiago*, 870 So.2d 1002, 1010 (La. 2004). This means that, with respect to each claimed item of damage, Galloway must demonstrate "direct physical loss." If Galloway satisfies that burden, the burden then shifts to P&C to establish that the claimed loss falls within one of the Policy's exclusions. *Jones*, 870 So. 2d at 1010. Once P&C has established that the claimed loss is excluded, Galloway must prove the applicability of any exception to the exclusion. *See Perrien v. State Farm Ins. Co.*, Civ. No. 06-8087, 2008 U.S. Dist. LEXIS 90617, at *6 (E.D. La. July 9, 2008) (Duval, J.); *Ferguson v. State Farm Ins. Co.*, Civ. No. 06-3936, 2007 U.S. Dist. LEXIS 34030, at *5 (E.D. La. May 9, 2007) (Berrigan, J.).

## III.   SUMMARY OF ALLEGATIONS

The following are the pertinent allegations in the Petition that are material to this motion, and which P&C accepts as true for purposes of this motion only: Galloway owns a condominium unit in Slidell, Louisiana (the "Unit") that is insured by P&C. (Petition, ¶¶ 1, 4.) He alleges that "[i]n the Spring of 2009, Plaintiff discovered that his home was constructed using Chinese manufactured drywall," and "[t]he Chinese drywall emits odorous gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items." (*Id.*, ¶ 6.) The plaintiff further alleges that "[t]he contaminated Chinese Drywall also causes physical injuries to Plaintiff and his tenants who inhaled such noxious gases," including "nose bleeds, headaches, respiratory problems . . . ." (*Id.*, ¶¶ 8, 9.) The plaintiff also alleges that "[t]he damage and loss sustained by Plaintiff was caused by the presence of Chinese drywall in Plaintiff's home." (*Id.*, ¶ 18.)

The plaintiff claims that P&C's failure to pay for the claimed damages constitutes a breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of

the Louisiana insurance bad faith statutes, La. R.S. 22:1973 and La. R.S. 22:1892.  (*Id.*, ¶¶ 19, 21-23.)

Galloway's factual allegations as a named plaintiff in the putative Omnibus Class Action Complaint (hereinafter "Amato Action"),[2] pending before this Court, provide finer detail of what allegedly caused the damage to the Unit, for which recovery is sought under the Policy here. The complaint in the Amato Action is well over 100-pages in length, whereas the instant complaint consists of five pages.  Both pleadings concern exactly the same premises (the Unit), seek money for alleged damage to the same property caused by the same Chinese-made drywall, and constitute admissions of Galloway.[3]  As a result, the determination of the instant motion should be informed by the allegations of fact made by Galloway as a named plaintiff in the Amato Action.[4]

In pertinent part, Galloway contends in the Amato Action that:

> 627.    As a direct and proximate result of the Insured Defendants' action and omissions, Plaintiffs' and Class Members structures, personal property, and bodies have been exposed to Defendants' Chinese Drywall and the corrosive and harmful effects of hydrogen sulfide and other compounds being released from Defendants' Chinese Drywall.
>
> 628.    The Insured Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold Chinese drywall, which caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures…

---

[2] *Dean and Dawn Amato v. Liberty Mut. Ins. Co*., et al., Case No. 10-932, E.D. La. (Fallon, J.).  This putative class action seeks damages and declaratory relief against numerous alleged manufacturers, distributers, contractors and their respective liability insurers arising from Chinese-made drywall.  (6th Am. Amato Compl. at *passim*)(True and correct copy attached **Tab B** hereto).

[3] *Compare* Petition at ¶¶ 1, 6-9 (identifying the Unit and Chinese-made drywall as the cause of the claimed harm) *with* 6th Am. Amato Compl. at ¶¶ 159, 623-36)(same).  Allegations in a party's complaint are considered evidentiary admissions when used by an adverse party in a separate case.  *See, e.g.*, *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000); *Eastern Natural Gas Corp. v. Aluminum Co. of Am.*, 126 F.3d 996, 1001 (7th Cir. 1997).

[4] The factual allegations are only a sample of those in the Amato Action, and are not an exhaustive listing of those allegations that support and establish the policy-based defenses raise by P&C, and other similarly situated carriers. As demonstrated by those allegations, Galloway's contentions are unequivocal: the drywall in the Unit is defective and was negligently and defectively manufactured, designed, inspected, supplied, and delivered.

629.   The Insured Defendants negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed and/or sold the Chinese drywall…

(6th Am. Amato Complaint, **Tab B** hereto.)

## IV.   THERE IS NO COVERAGE FOR THE CLAIMED LOSSES TO GALLOWAY'S DWELLING OR PERSONAL PROPERTY.

Galloway's claim implicates both the dwelling and personal property coverages in the Policy, which operate differently.  The potential coverage for the dwelling (i.e., drywall, pipes, wiring, etc.) is under Coverage A, and is covered on an open peril basis, insuring against "risk[s] of direct physical loss" that are not excluded.  (*See* Policy at 16.)  Personal property, under Coverage C, is covered only against losses caused by 16 specified named perils.  (*See* Policy at 16, 41-44.)  As a result, Galloway's claim for alleged damage to his dwelling under Coverage A is addressed below separately from the claim for personal property loss under Coverage B.

### A.   The Claimed Damage Caused By A Defect In The Drywall Or The Gases Emitted By the Drywall Is Excluded Under Coverage A.

Even if the defective drywall were deemed to have sustained a "direct physical loss," the cost of removing and replacing the defective drywall, as well as any claim for damage to the building, its components or its contents (including air conditioning equipment, electrical wires, plumbing fixtures and other metallic surfaces), is excluded by four exclusions.  These exclusions apply to loss caused by:  (1) latent defects; (2) faulty materials; (3) acts, errors or omissions in the furnishing of work or materials; (4) corrosion; and (5) pollutants (including gaseous contaminants or irritants).

#### 1.   Latent Defect Exclusion

All of Galloway's claimed property damage falls within the following exclusion from coverage:

2.   We do not insure, however, for loss: . . .

- 6 -

>>c.   Caused by: . . .
>>
>>>(6) Any of the following: . . .
>>>
>>>>(b) Mechanical breakdown, *latent defect*, inherent vice, *or any quality in property that causes it to damage or destroy itself.*
>>>
>>>. . .
>>
>>Under 2.b. and c. above, any ensuing loss to property described in Coverage A not precluded by any other provision in this policy is covered.

(Policy at 16-17 (emphasis added).)

Louisiana courts interpreting the term "latent defect" in insurance policies have given the term its plain and ordinary meaning.  For example, the Louisiana Third Circuit has held that a "latent defect" is "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal."  *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328, 335 (La. App. 3d Cir. 1984) (quoting *Walker v. Travelers Indemnity Co.*, 289 So. 2d 864, 870 (La. App. 4th Cir. 1974)); *accord Barbier v. Wade*, 517 So.2d 321, 325 (La. App. 1st Cir. 1987); *Shields v. Penn. Gen. Ins. Co.*, 488 So. 2d 1252, 1255 (La. App. 4th Cir. 1986); *Harris v. Bardwell*, 373 So. 2d 777, 780 (La. App. 2d Cir. 1979).  In *Nida*, soil movement caused cracking of the foundation and the interior and exterior walls of the insured's house.  *Id.* at 329.  Because the foundation had not been built to withstand ordinary soil movement, the Third Circuit held that the damage was excluded from coverage under a latent defect exclusion. *Id.* at 335.  The court explained that "the [insurer] simply was not a guarantor of the constructor's building performance."  *Id.*

The weight of authority nationwide also supports this interpretation of latent defect.  *See, e.g., City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co.*, 190 F. Supp. 2d 663, 688 (D. Vt. 2002), *aff'd* 346 F.3d 70 (2d Cir. 2003) (surveying authority and concluding that "[i]n the ordinary sense of the term, 'latent defect' means a defect that is hidden, or which could not have been discovered by any known or customary test or examination"); *U.S. West v. Aetna Cas. &*

*Sur. Co.*, 117 F.3d 1415 (table), 1997 U.S. App. LEXIS 17747, at *14-15 (4th Cir. 1997) ("[A]s a matter of the literal language of this term, 'latent defects' are only those which are not readily discoverable and integral to the damaged property by reason of *its* design or manufacture or construction.").  Applying a similar definition of latent defect to facts similar to the case at bar, the Illinois Appellate Court has held that the latent defect exclusion precludes coverage of claims relating to asbestos-containing construction materials.  In *Board of Educ. v. Int'l Ins. Co.*, 684 N.E.2d 978 (Ill. App. 1997), the plaintiff school board sought coverage for the cost of removing paint, ceiling tile, floor tile, insulation and other materials made using asbestos fibers, claiming that these building materials were releasing hazardous substances into the air.  *Id.* at 979-80. Rejecting the school board's arguments for coverage, the court explained that "because the presence of asbestos material in the school buildings is not detectable by the naked eye and is not apparent to any but the most searching analysis, it is a latent defect subject to the latent defect exclusion." *Id.* at 983.

In a very recent decision in the Eastern District of Virginia, Judge Robert Doumar determined under identical policy language that the latent defect exclusion prevented coverage for the cost of removal and replacement of Chinese-made drywall and damage to air conditioning equipment and a garage door allegedly caused by the drywall, explaining that:

> There is no question that the Ward Residence contains defective drywall that is off-gassing and damaging other components of the Residence.  The Drywall is plainly integral to the Residence's manufacture and construction.  Accordingly, the Court finds that the damage to the Ward Residence is a loss caused by a latent defect.
> …
> The latent defect exclusion is intended to remove the risk for losses that result from flaws in property that are undetectable, and hence unexpected. *See Glen Falls Ins. Co. v. Long*, 77 S.E. 457, 459 (Va. 1953)(defining latent defects as "defect which reasonably careful inspection will not reveal" (quotation omitted). Losses from Chinese Drywall fit squarely into this category.

*TRAVCO Ins. Co, v. Ward*, Civ. No. 2:10cv14 at 23 (June 3, 2010)(footnote omitted) (**Tab C**).

Here, the damage to the Galloway residence plainly constitutes a loss caused by a "latent defect" because the problem with the Chinese-made drywall (*i.e.*, its gas emitting characteristic) is not visible or readily discoverable.  The Policy reflects that the Galloway residence was built in 2006, and the Policy was issued on October 11, 2008.  (Policy at 2.)  Galloway alleges that he did not discover the problem with the drywall until the Spring of 2009.   (Petition, ¶ 6.) Accepting that as true, it took several years for Galloway to discover the defect in the drywall causing the emission of the corrosive gases.  Because the latent defect in the drywall was the cause of any need to remove and replace the drywall as well as the claimed losses to the air conditioning equipment, the electrical wiring, the plumbing components, and the other metallic surfaces in the Galloway residence (*see* Petition, ¶ 18), the claim is excluded under the Policy's latent defect exclusion.[5]

### 2.      Faulty Materials Exclusions

The Policy has an exclusion for faulty materials that also precludes coverage for the losses that Galloway has claimed.  The exclusion provides as follows:

> B.  We do not insure for loss to property described in Coverage A caused by any of the following.  However, any ensuing loss to property described in Coverage A not precluded by any other provision in this policy is covered.
>
> . . .
>
> 3.  Faulty, inadequate or defective: . . .
>
>> c.  Materials used in repair, construction renovation or remodeling; . . . of part or all of any property whether on or off the "residence premises".

(Policy at 17-18.)

The Chinese-made drywall installed in the Galloway home undoubtedly qualifies as a material that is "faulty" and "defective" within the plain meaning of those terms.  Courts across the country have recognized that construction materials are defective in factual scenarios similar

---

[5] If there were "direct physical loss" to the drywall itself, it would also be excluded as a loss caused by a "quality in property that causes it to damage or destroy itself," which is separately excluded.  (*See* Policy at 16-17.)

to what occurred here. Courts have applied the defective materials exclusion, for example, to preclude coverage for losses caused by the use of raw materials that had been contaminated by exposure to radioactive materials in manufacturing table bases, *Falcon Prods., Inc. v. Ins. Co. of Penn.*, 615 F. Supp. 37, 39 (E.D. Mo. 1985), *aff'd* 782 F.2d 779 (8th Cir. 1986), the installation of an improper lining and insulation product, *Tom Harrison Tennis Ctr. Ltd. v. Indoor Courts of Am., Inc.*, No CA2002-03-034, 2002 WL 31859462, at *4 (Ohio App. Dec. 23, 2002), the use of improperly treated cedar siding and shingles, *Carney v. Assurance Company of America*, Civ. No. 04-3434, 2005 WL 899843 (D. Md. Apr. 19, 2005), *aff'd* 177 F.App'x 282 (4th Cir. 2006) (per curiam), the installation of substandard residential piping, *Rogers v. Unitrim Auto & Home Ins. Co.*, 388 F. Supp. 2d 638 (W.D.N.C. 2005), the use of lumber infested with dry rot, *Sapiro v. Encompass Ins.*, No. C03-4587, 2003 WL 2496090, at *5 (N.D. Cal. Nov. 2, 2004), and the use of a roofing asphalt that "was entirely unsuitable for the purpose" and necessitated the removal and replacement of the entire roof, *Biebel Bros., Inc. v. United States Fid. & Guar. Co.*, 522 F.2d 1207, 1211 (8th Cir. 1975).

In *TRAVCO*, United States District Judge Doumar held that the identical faulty materials exclusion precluded coverage for the Chinese-made drywall claimed loss there. *TRAVCO*, at 23-24. Judge Doumar was persuaded by the fact that Ward had "repeatedly" described in a separate lawsuit the same drywall as defective, just as Galloway has done in the Amato Action. *Id*. at 24; 6th Am. Amato Compl., ¶¶ 588, 595-596 (**Tab B**).

Here, there can be no dispute that the Chinese-made drywall installed in the Galloway residence is a defective material. The plaintiff himself alleges that the Chinese-made drywall emits odorous gases that cause corrosion of various metal components of the home, and also causes physical injuries. (Petition, ¶¶ 7-9.) A building component that emits gases that cause an odor, corrosion of metals, and physical injuries is "faulty" and "defective" within the ordinary

- 10 -

meaning of those terms.  This exclusion applies to all of the plaintiff's claimed losses—he alleges that all of the damage he claims "was caused by the presence of Chinese drywall in Plaintiff's home . . . ."  (*Id.*, ¶ 18.)

### 3.    Furnishing of Work or Materials

The P&C Policy also contains an endorsement entitled "Amendatory Endorsement – Specifically Excepted Perils," which provides, in pertinent part, as follows:

> As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.  Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY.  WE WILL NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:
> A.  ACTS, ERRORS OR OMISSIONS by you or others in:
>      . . .
>      4.  **The furnishing of work**, **materials**, parts or equipment in connection with the **design**, specifications, **workmanship**, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; . . .
>
>      This exception A. applies whether or not the property or facilities described above are:
>      1.  Covered under this policy; or
>      2.  On or away from the covered premises.
>
> This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.
>      As used in this endorsement:
>       1.  If this policy is written to cover the risk of loss from specifically named cause, "Covered Peril" means any Peril specifically named as covered; or
>       2.  If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this Policy.

(Policy at 6-7 (emphasis added).)

Galloway's claimed losses also fall within this exclusion because his Petition alleges that his losses were "caused by, resulting from, contributed to, or aggravated by . . . or would not have occurred but for . . . acts, errors or omissions by . . . others in . . . [t]he furnishing of . . . materials . . . in connection with the . . . design .. workmanship, repair, construction, renovation, [or] remodeling . . . of any of the above property or facilities . . . ." (*Id.* (capitalization removed).)  These claimed defects in the Chinese drywall constitute "acts, errors or omissions" in the "furnishing of work, materials . . . ."  Galloway's factual allegations in the Amato Action reinforce the application of this P&C-specific exclusion.   P&C will not reprint here all the applicable allegations, as the point is made with reference to paragraph 627-29, in which Galloway alleges that the defendants there "tortiously" and "negligently" "delivered" and "supplied" the drywall used in his home.  (**Tab B** hereto.)

It is clear the "acts and omissions" of the defendants in the Amato Action in the "designing, … exporting, importing, distributing, delivering, supplying, inspecting…", according to Mr. Galloway himself, were the "direct and proximate cause" of the alleged damage for which he seeks coverage under the Policy.  The Policy unambiguously excludes coverage for such claimed damage.

Judge Duval previously applied the very same exclusion and held it to be applicable to the flooding of New Orleans at the time of Hurricane Katrina which resulted from alleged defects in the construction and maintenance of levees.  As Judge Duval explained:

> [This exclusion's] "lead-in" clause leaves nothing to the imagination.  It states unequivocally that "[e]ven if any of the terms of this policy might be construed otherwise," the Acts, Errors or Omission of the insured or others are specifically excepted from the policy.  It continues, parsing the exclusion, to declare that Hartford specifically excludes loss or damage directly or indirectly caused by acts, errors or omissions by others in the design specifications, workmanship, repair, construction renovation, of levees, dams or other facilities or the maintenance of any such property.  Such a clear statement of exclusion from coverage likewise must be enforced.

- 12 -

*In re Katrina Canal Breaches Consol. Litig.*, 466 F. Supp. 2d 728, 764-65 (E.D. La. 2006), *vacated in part on other grounds*, 495 F.3d 191 (5th Cir. 2007).  Similarly here, the exclusion quoted above specifically excludes a loss caused by acts, errors or omissions in the furnishing of materials, etc., such as the furnishing (*i.e.,* supplying, delivering, etc.) of defective drywall.

### 4.    Corrosion Exclusion

The Policy also excludes loss caused by corrosion, as follows:

> 2.  We do not insure, however, for loss: . . .
>
> >   c.  Caused by: . . .
> >
> > >   (6)  Any of the following: . . .
> > >
> > > >   (c)  Smog, rust or other corrosion, or dry rot.
> > >
> > >   . . .
> >
> >   Under 2.b. and c. above, any ensuing loss to property described in Coverage A not precluded by any other provision in this policy is covered.

(Policy at 16-17.)

The claimed damage to metals and metallic surfaces (including, but not limited to, air conditioner coils, copper tubing and electrical wiring) falls within the exclusion for loss caused by "corrosion."  Corrosion is, of course, the process by which the surface of a metal or other material wears away or deteriorates.  *See*, *e.g.*, *Reliance Ins. Co. v. Cooper/T. Smith Corp.*, Civ. Nos. 00-0251 & 00-0280, 2001 WL 530438, at *2 n.4 (S.D. Ala. Apr. 24, 2001).  The losses being claimed by Galloway include damage caused by corrosion.  He alleges that "[t]he Chinese drywall emits odorous gases that cause **corrosion** of air conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items."  (Petition, ¶ 7 (emphasis added).)

Two judges in this District have recently applied similar exclusions to preclude coverage for equipment that rusted as a result of Hurricane Katrina.  In *Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, Civ. Nos. 06-2516 & 06-3184, 2008 U.S. Dist. LEXIS 69972 (E.D. La.

Sept. 17, 2008), the insured's roof was damaged during the hurricane, leaving its equipment exposed to the elements. Judge Englehardt granted summary judgment to the insurer, holding that, under an exclusion for "loss or damage caused by or resulting from rust," there was no coverage for rust damage resulting from water infiltration through the damaged roof. *Id.* at *4-5. Judge Englehardt emphasized that the policy language unambiguously "excludes *all* loss or damage from rust or dampness of atmosphere." *Id.* (emphasis added). *See also Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, Civ. No. 06-8710, 2008 U.S. Dist. LEXIS 18335, at *8 (E.D. La. March 10, 2008) (Porteous, J.) (policy excluded "loss or damage caused by or resulting from . . . rust, corrosion"; court granted summary judgment to insurer on claim for rust and mold damage to second floor of building caused by moist environment from flooding on first floor, holding that "evidence of rust and mold to Plaintiff's equipment is immaterial, as the Policy expressly excludes rust and mold").

Courts in other jurisdictions similarly have held that corrosion exclusions preclude coverage for losses similar to Galloway's loss. *See*, *e.g.*, *Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-664, 2005 Ohio App. LEXIS 981, at *17 (Ohio Ct. App. Mar. 8, 2005) (unpub.) (holding that discoloration of metal components in building due to chemical agents used during construction was excluded by an exclusion for loss caused by corrosion); *Heban v. Auto-Owners Ins. Co.*, No. WD-02-064, 2003 WL 21862170, at *2 (Ohio Ct. App. Aug. 8, 2003) (holding that corrosion exclusion precluded coverage for discoloration of glass panes caused by corrosion from rain water entering between the stacked panes).

The court in *TRAVCO* held that an exclusion for loss caused by corrosion precluded coverage for the losses to the structural, mechanical and plumbing components of the insured residence resulting from gases released by Chinese-made drywall. *TRAVCO* at 26-27. The court explained that the "the ordinary meaning of corrosion includes the 'action or process of

corroding,'" and that was plainly what had caused the damage.  *Id.* at 26.  The court rejected the insured's argument that the loss itself was the corrosion, and therefore the loss was not caused by corrosion because that would "render the corrosion exception meaningless." *Id.*  Similarly here, the damage to the metal components of the Galloway residence was caused by corrosion, and therefore is excluded.

### 5.  Pollution Exclusion

The pollution exclusion in the Policy provides as follows:

2.  We do not insure, however, for loss: . . .

    c.  Caused by: . . .

        (6) Any of the following: . . .

            (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C of this policy.

            Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed;

        . . .

    Under 2.b. and c. above, any ensuing loss to property described in Coverage A not precluded by any other provision in this policy is covered.

(Policy at 16-17).

The plain language of this exclusion clearly applies to Galloway's claim.  He alleges that "[t]he Chinese drywall emits odorous gases that cause corrosion" of metal components," and that the "noxious gases" also "cause[] physical injuries to Plaintiff and his tenants," including "nose bleeds, headaches, [and] respiratory problems . . . ."  (Petition, ¶¶ 7-9.)  The gases described in the Petition plainly qualify as "pollutants" under the Policy because they are "gaseous . . . irritant[s] or contaminant[s]," as well as "fumes," and they were "discharge[d], dispers[ed] . . . [or] release[d]" from the drywall.  (Policy at 17.)   Gases that cause corrosion of building

components and create "noxious" odors plainly constitute "gaseous . . . contaminants."  Damage
caused by these gases is therefore excluded.

In addition to being contaminants, the gases released by the drywall also constitute
"irritants."   Gases that produce "noxious" odors and cause  "nose bleeds, headaches, [and]
respiratory problems " (Petition, ¶¶ 7-9) are clearly irritants—they provoke displeasure and
annoyance.  *See also Wakefield Pork, Inc. v. RAM Mut. Ins. Co.*, 731 N.W.2d 154, 161 (Minn.
App. 2007) (holding that a complaint alleging "harm from the '[g]ases, hydrogen sulfide among
others,' and the 'noxious and offensive odors' that emanated from appellant's pig farm . . .
alleged damage from a substance that is plainly covered by the insurance policy's pollution
exclusion").  As one court put it in applying the pollution exclusion in a similar context, "[w]e
would be doing a disservice to the English language if we were to say that asbestos fibers, which
are a health hazard because of their irritant effects on the human body, are not an irritant."
*Board of Regents v. Royal Ins. Co.*, 517 N.W.2d 888, 892 (Minn. 1994).  The emissions from the
drywall similarly constitute an "irritant", therefore a "pollutant".

Because the gases emitted from the drywall constitute "pollutants," coverage for the
damage they cause is excluded "unless the discharge, dispersal, seepage, migration, release or
escape is itself caused by a Peril Insured Against named under Coverage C of this policy."
(Policy at 17.)  Galloway does not allege that the discharge of gases from the drywall in his
home was  caused by any of the named perils.[6]  His claim for damage caused by these gases thus
falls squarely within the plain language of the Policy's pollution exclusion.

---

[6] The sixteen perils named in Coverage C are:  (1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or
civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling
objects; (11) weight of ice, snow or sleet; (12) accidental discharge or overflow of water or steam; (13) sudden and
accidental tearing apart, cracking, burning or bulging of certain types of building systems; (14) freezing; (15) sudden
and accidental damage from artificially generated electrical current; and (16) volcanic eruption.  (*See* Policy at 41-
44.)

Courts have repeatedly enforced pollution exclusions in the context of first-party property policies as applied to losses similar to the Galloway loss. *See, e.g.*, *Great Northern Ins. Co. v. Benjamin Franklin Fed. Sav & Loan Ass'n*, 793 F. Supp. 259 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992) (enforcing pollution exclusion and holding that costs to remove asbestos from insured building are expressly barred from coverage); *Brown v. Am. Motorists Ins. Co.*, 930 F. Supp. 207, 208-209 (E.D. Pa. 1996) (enforcing unambiguous pollution exclusion and holding that alleged damage to house from fumes from sealant that migrated into insured's house was excluded), *aff'd*, 111 F.3d 125 (3d Cir. 1997).

In opposing this motion, Galloway will no doubt rely heavily on the Louisiana Supreme Court decision in *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119 (La. 2000), so P&C will address it briefly here. *Doerr* involved a commercial general liability ("CGL") policy and is inapplicable here on numerous grounds. Unlike Galloway's homeowners' policy, which provides coverage for physical damage to his home, the CGL policy in *Doerr* provided coverage for the insured's liabilities to third parties if the insured was alleged to be legally liable for causing bodily injury or property damage.[7] The "total" pollution exclusion in *Doerr* provided that the insurer would not be responsible for defending or indemnifying an insured if the insured were alleged to have caused bodily injury or property damage and pollution was a contributing cause of the insured's liability. Id. at 122. In interpreting this exclusion, *Doerr* found the exclusion to be overly broad, and limited its scope by holding that the insurer was obligated to defend and indemnify its

---

[7] The *Doerr* opinion does not quote or explain the CGL policy's grant of coverage. A typical CGL policy provides that the insurer "will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of  A. bodily injury or  B. property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage …." *Ricks v. Kentwood Oil Co.*, 2010 La. App. LEXIS 237, at *7 (La. App. 1 Cir. Feb. 23, 2010). A typical definition of "bodily injury" is "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* at *9. A typical definition of "property damage" is "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." *Id.*

insured, unless the insured was alleged to have caused bodily injury or property damage **and** the allegedly responsible insured was in the business of polluting. *Id.* at 135.[8]

*Doerr* is inapplicable here for several reasons. First, there is a fundamental difference between the purpose of a liability policy and the purpose of a property policy. A liability policy provides coverage for certain types of harm caused by the insured to third parties. In contrast, a property policy insures the insured's own property. The inquiry that *Doerr* prescribed for determining whether a business insured qualifies as a professional polluter – including "the nature of the insured's **business**" and "whether that type of **business** presents a risk of pollution," *id.* at 135 -- makes no sense in the context of a homeowner making claim for damage to his or her house.

Second, the pollution exclusion in the Galloway Policy is different from the "total" pollution exclusion in the CGL policy in *Doerr*. Unlike the CGL policy in *Doerr,* which attempted to exclude coverage when the insured became legally liable for causing or contributing to pollution damage, the pollution exclusion in the Galloway Policy expressly provides coverage for damage to the home when "the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C of this policy," which include 16 named perils. (*See* Policy at 17.) Thus, if the release of the pollutant is caused by a fire, explosion, a vehicle or any of the other named perils, the loss is covered. What is excluded is

---

[8] *Doerr* constructed the following test to determine whether the exclusion would apply: "(1) Whether the insured is a 'polluter' within the meaning of the exclusion; (2) Whether the injury-causing substance is a 'pollutant' within the meaning of the exclusion; and (3) Whether there was a 'discharge, dispersal, seepage, migration, release or escape' of a pollutant by the insured within the meaning of the policy." *Id.* at 135. The court further instructed that the following factors should be considered in determining whether the insured is a "polluter": "the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy," and any other factor deemed relevant. *Id.*

where a pollutant is released by a non-specified peril, such as a defective building material, and causes property damage.[9]

Third, the rationale of *Doerr*, which was heavily based on the history of the pollution exclusion in CGL policies, is inapplicable to property policies. Property policies contained exclusions for loss caused by contamination long before the environmental movement that led to the broader pollution exclusion in liability policies. *See, e.g.*, *Aetna Cas. & Surety Co. v. Yates*, 344 F.2d 939, 940-41 (5th Cir. 1965) (quoting policy that excluded "loss caused by . . . contamination"); *Am. Cas. Co. of Reading, Penn. v. Myrick*, 304 F.2d 179, 181 (5th Cir. 1962) (policy excluded "loss or damage caused by or resulting from . . . contamination" unless caused by explosion). And, significantly, the contamination exclusion was enforced where the insureds were not "polluters." *See, e.g.*, *Myrick*, 304 F.2d at 183 (applying contamination exclusion where pipe broke, releasing ammonia); *McQuade v. Nationwide Mut. Fire Ins. Co.*, 587 F. Supp. 67, 68 (D. Mass. 1984) (applying exclusion to homeowner's loss caused by chemicals sprayed by exterminator); *Hartory v. State Auto. Mut. Ins. Co.*, 552 N.E.2d 223, 225 (Ohio App. 1988) (applying exclusion to homeowners' loss caused by methane gas from neighboring landfill). The *Doerr* court's historical rationale for interpreting the total pollution exclusion in CGL policies is thus inapplicable here.

Fourth, extending *Doerr* to the pollution exclusion in the property insurance section of a homeowners' policy would eviscerate the exclusion because a homeowner is never a "professional polluter" in the sense that a commercial business can be. This Court should find *Doerr* inapplicable and enforce the pollution exclusion in the Policy as written.

---

[9] It is also worth noting that the liability insurance coverage in the Galloway Policy (Section II), which provides coverage for certain types of claims made by third parties against Galloway, has no pollution exclusion. (*See* Policy, at 51-56.) Thus, contrary to the "absurd results" the court found in *Doerr*, the Galloway Policy would provide liability coverage for "the release of carbon monoxide from [a] truck," and "a slip and fall on spilled gasoline" on their property, as well as "bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine . . . ." *See Doerr*, 774 So. 2d at 124.

The only first-party decision concerning the application of the pollution exclusion to Chinese-made drywall claims found that the exclusion prevented coverage, holding that Chinese-made drywall is a "contaminant" or "pollutant." *TRAVCO* at 27-32.  "Under any reasonable definition of these terms, the gases released into the Ward Residence qualify as irritants and contaminants." *Id*. at 32.[10]

### B.     The Cost of Removing And Replacing the Defective Drywall Is Not Covered Because The Defective Drywall Has Not Sustained A "Direct Physical Loss"

The Policy insures "against risk of direct physical loss to property described in Coverage A" that is not excluded.  (*See* Policy at 16-18.)  There is no coverage for property that has not experienced a "direct physical loss."  Here, there is no allegation of any physical loss to the drywall.  Rather, Galloway alleges that the drywall emits gases that cause damage to other building components and items of personal property, and causes personal injuries.  (Petition, ¶¶ 6-9.)  The drywall itself has not suffered any direct physical loss, as is required in order to potentially trigger coverage under the Policy.

Because the phrase "direct physical loss" is not defined in the Policy, this Court must interpret the words according to their "generally prevailing meaning."  La. Civ. Code art. 2047; *Sher*, 988 So. 2d at 193.  As a leading insurance treatise explains, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer

---

[10] There are two Louisiana trial court decisions concerning first-party claims for losses caused by Chinese-made drywall.  In *Ross v. C. Adams Construction & Design, L.L.C.*, No. 676-185 (La. 24th. Jud. Dist. Ct. Apr. 14, 2010) (**Tab D**), the court, without articulating detailed reasons, granted the insurer's motion for summary judgment, which raised the same arguments raised herein except for the P&C-specific exclusion.  In *Finger v. Audobon Ins. Co*., 2010 WL 1222273 (La. Civ. Dist. Ct. Mar. 22, 2010) (**Tab E**), a New Orleans Civil District Court judge initially denied the insureds' motion for summary judgment. The insureds then filed a motion to strike the insurer's affirmative defenses, making arguments virtually identical to its prior arguments in the summary judgment motion.  The state court orally granted the motion to strike and invited the insureds' attorney to provide him with a draft decision, which he signed without making any modifications.  *Finger* was cited to and rejected by the judge in *Ross*.  *Finger* was also rejected in *TRAVCO* as unpersuasive, unsupported by the case law, and contrary to the "clear weight of authority."  *See TRAVO*, at 22-24.

merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."  10 Couch on Insurance § 148:46 (3d ed. 1998).

Consistent with this understanding, the Fifth Circuit has concluded under Louisiana law that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state – for example, the car was undamaged before the collision dented the bumper."  *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990).  In *Trinity*, the court considered whether a policy covering "all risks of physical loss or of damage to the subject matter" would cover the cost incurred to correct a shipbuilder's faulty workmanship in misaligning two sections of the ship's hull during construction.  *Id.* at 267-68.  The Fifth Circuit held that "the parties, by their language 'physical loss or damage', did not intend to cover the cost of repairing faulty initial construction."  *Id.* at 272.  It explained that coverage would potentially exist for "accidents resulting from defective design or workmanship," if not excluded, "but not the cost of repairing the defect itself."  *Id.* at 271.  *See also Great Northern Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1999), *aff'd*, 953 F.2d 1387 (9th Cir. 1992) (holding that where building contained non-friable asbestos, there was no "physical loss" because the building "remained physically intact and undamaged"); *Whitaker v. Nationwide Mut. Fire Ins. Co.*, 115 F. Supp. 2d 612, 617 (E.D. Va. 1999) (holding that claims for repair of construction defects were not claims for "direct physical loss"); *Tocci Bldg. Corp. v. Zurich Am. Ins. Co.*, 659 F. Supp. 2d 251, 259 (D. Mass. 2009) (holding that, because of the lack of "direct physical loss," there was no coverage for the undamaged portion of a retaining wall where the building department required it to be grouted due to the collapse of another portion of the wall); *Bethesda Place Ltd. P'ship v. Reliance Ins. Co.*, Civ. No. HAR 91-1719, 1992 U.S. Dist. LEXIS 6522, at

*9 (D. Md. Apr. 22, 1992) ("[C]ase law does not support the argument that a design defect in and of itself constitutes physical injury or damage to property from an external cause").[11]

As in *Trinity*, *Great Northern*, *Whitaker* and *Tocci*, the cost of removing and replacing the undamaged but defective drywall in the Galloway residence is not covered because there was no "direct physical loss."  There is no allegation that the drywall sustained any visible or tangible damage.

### C.    There Is No Coverage For Galloway's Personal Property Losses

In addition to the dwelling damage discussed above, Galloway has claimed damage to personal property including a refrigerator, computer and "other household items."  (Petition, ¶ 7.) Under Coverage C, the Policy covers damage to "personal property owned or used by an 'insured' while it is anywhere in the world" if that damage is caused by any of the 16 perils that are named in the Policy and listed in footnote 6 above.  (*See* Policy at 41-44.)  Galloway's claimed damage was not caused by any of these named perils.  Even if the damage to Galloway's personal property had been caused by one of the named perils, however, coverage would nevertheless be barred as discussed above and by the exclusion for acts, error or omissions in the furnishing of work, materials, *etc*., which applies to Coverage C.  (*See* Policy at 6-7.)

### V.    BECAUSE THERE IS NO COVERAGE AVAILABLE HERE, GALLOWAY'S CLAIM-HANDLING ALLEGATIONS ALSO FAIL AS A MATTER OF LAW.

In the Petition, Galloway alleges that P&C breached its duty of good faith and fair dealing and violated La. R.S. 22:1973 and La. R.S. 22:1892 by failing to property adjust and pay the claim.  (Petition, ¶¶ 21, 23).  As demonstrated above, the Policy provides no coverage for the

---

[11] *TRAVCO Ins. Co, v. Ward*, Civ. No. 2:10cv14 at 23 (June 3, 2010) (**Tab C**), discussed further herein, reached a contrary result on this point in the course of ruling for the insurer in a Chinese drywall case, but the court was not bound by (and did not acknowledge) the Fifth Circuit precedent in *Trinity*,  which governs this Court's application of Louisiana law.

claimed losses here.  It is well-established that without a valid underlying claim for breach of contract, Plaintiff cannot prevail on statutory bad faith claims.  *See Clausen v. Fid. & Deposit Co. of Md.,* 95-0504 (La. App. 1 Cir. 8/4/95); 660 So. 2d 83, 85 (noting that "a plaintiff attempting to base her theory of recovery against an insurer on these statutes must first have a valid, underlying, substantive claim upon which insurance coverage is based"); *see also Bradley v. Allstate Ins. Co.*, 606 F.3d 215**,** 2010 U.S. App. LEXIS 9510, *37-38 (5th Cir. 2010) (same).

## VI.    CONCLUSION

For all of the foregoing reasons, this Court should hold that the Policy does not provide coverage for the cost of removing or replacing the defective drywall in the Galloway residence and does not cover any damage caused by the drywall or by the discharge of gases from the drywall.  This Court should therefore grant judgment on the pleadings in favor of P&C.

Dated this 19th day of July, 2010.

Respectfully submitted,

/s/ Seth A. Schmeeckle
Ralph S. Hubbard, III (La. Bar #7040)
Seth A. Schmeeckle, Esq. (La. Bar #27076)
**Lugenbuhl, Wheaton, Peck, Rankin**
   **& Hubbard**
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Tel: (504) 568-1990 Ext. 119
Fax: (504) 310-9195
e-mail:       rhubbard@lawla.com
                sschmeeckle@lawla.com

**Counsel for Property & Casualty**
**Insurance Company of Hartford**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing F.R.C.P. 12(c) Memorandum in Support of Motion for Judgment on the Pleadings has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of July, 2010.

_/s/Seth A. Schmeeckle_____
**Seth A. Schmeeckle, La. Bar No. 27076**