# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * | MDL NO.:  2047 |
| | * | JUDGE FALLON |
| | * | MAG. JUDGE WILKINSON |
| This document relates to: | * | |
| JOHN B. BLUE and RACHELLE BLUE | * | |
| VERSUS | * | |
| AUTO CLUB FAMILY INSURANCE COMPANY 2:10-CV-792 | * | |

\*     \*     \*     \*     \*     \*     \*     \*

## DEFENDANT, AUTO CLUB FAMILY INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

This matter is presently before the Court on a Rule 12(b)(6) Motion to Dismiss filed on behalf of the defendant, Auto Club Family Insurance Company (hereinafter sometimes referred to as "Auto Club").  Auto Club respectfully submits that the plaintiffs' claims should be dismissed as the homeowners' insurance policy issued by Auto Club to John and Rachelle Blue does not afford coverage for the claims asserted by the plaintiffs in this litigation.  More particularly, under the terms of Auto Club's policy, the presence of defective Chinese drywall is not a "direct physical loss" that would trigger coverage under the policy.  In addition, the Chinese drywall allegedly present in the plaintiffs' residence contains a latent defect which is excluded from coverage under Auto Club's policy.  Moreover, Auto Club's policy excludes coverage for losses that are caused by faulty or defective building materials, corrosion and the release of pollutants.  Furthermore, any

claims for damage to personal property are excluded as the alleged damages caused by the defective Chinese drywall cannot be categorized as fitting under any of the enumerated covered perils under the personal property coverage portion of Auto Club's policy.  Finally, any first-party claims for personal injury allegedly sustained by any insured or an insured's relatives are specifically excluded under Auto Club's policy.  Accordingly, Auto Club respectfully submits that an application of the plain language of its policy requires that Auto Club's Rule 12(b)(6) Motion to Dismiss should be granted.

## STATEMENT OF THE CASE

John and Rachelle Blue have filed suit seeking damages for breach of contract, "bad faith claims," "breach of duty of good faith and fair dealing," as well as penalties and attorney's fees in connection with property damage and additional living expenses allegedly sustained as a result of the existence of Chinese manufactured drywall which allegedly caused "physical loss and damage" to the plaintiffs' home and contents located at 422 28th Street in New Orleans, Louisiana.  More particularly, the plaintiffs allege that the Chinese drywall present in their residence "emits odorous gases that cause corrosion of air conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items and causes personal injuries to petitioners and their children."  The plaintiffs originally filed suit in the Civil District Court for Orleans Parish, Louisiana against Auto Club Family Insurance Company.  Thereafter, the plaintiffs' suit was removed to this Court and has now been consolidated in the In re: Chinese Manufactured Drywall Products Liability Litigation.

As will be discussed in greater detail below, Auto Club's homeowners' policy does not

(2)

cover any of the alleged losses from defective drywall, and, as such, the plaintiffs' claims against Auto Club should be dismissed with prejudice for the following reasons: (1) the presence of defective drywall in the dwelling is not an accidental direct physical loss as required by the policy; (2) the policy unambiguously precludes coverage for damages caused by faulty materials used in the construction or renovation of property; (3) the policy unambiguously excludes losses caused by an "inherent vice/latent defect, mechanical breakdown;" (4) the policy unambiguously excludes losses "caused by …smog, rust or other corrosion, or mold, wet or dry rot;" (5) the policy precludes coverage for losses caused by the discharge, dispersal, seepage, migration, release or escape of pollutants; (6) the policy only covers losses to personal property that are caused by certain enumerated perils, none of which apply to plaintiffs' alleged losses arising out of the existence of defective drywall; and (7) any claims for personal injury to the plaintiffs or members of their household are excluded under the policy.   Before discussing each of these separate coverage defenses, a brief review of the factual and procedural history of this case appears in order.

## STATEMENT OF FACTS

### The Plaintiffs' Petition

In the plaintiffs' Petition, the plaintiffs allege that in the spring of 2009, they discovered that their home was constructed using Chinese manufactured drywall that has caused physical loss and damage to their home and contents.  More particularly, the plaintiffs allege that "[t]he Chinese drywall emits odorous gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items and causes personal injuries to Petitioners and their children."  Petition at ¶ 6.  (A copy of the plaintiffs'

(3)

Petition is attached hereto as Exhibit "B.")

## **Insurance Coverage**

Auto Club provides homeowners' insurance coverage to John and Rachelle Blue under Auto Club's Premier Homeowners' Policy insuring residential property located at 422 28th St. in New Orleans, Louisiana (hereinafter sometimes referred to as "the Policy"). This policy is identified by policy number P8-261257-1. A certified copy of the Auto Club policy is annexed hereto as Exhibit "A."

Of some note, Auto Club's policy contains several provisions and/or exclusions that preclude coverage for the subject loss. More particularly, the Insuring Agreement contained in Auto Club's policy provides that it insures against "risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property." In addition, SECTION I-PERILS INSURED AGAINST provides, in pertinent part, as follows:

We do not, however, insure for loss:

• • •

2.      Caused by:

• • •

e.      Any of the following:

1.      Wear and tear, marring, deterioration;

2.      Inherent vice, latent defect, mechanical breakdown;

3.      Smog, rust or other corrosion, mold, wet or dry rot;

4.      Smoke from agricultural smudging or industrial operations;

5.      Discharge, dispersal, seepage, migration, release or escape

(4)

of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against Under Coverage C of the policy.

Pollutants means any solids, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

In addition, under Section I-Exclusions of Auto Club's policy, the following exclusions are set forth:

• • •

2.      We do not insure for loss to property described in Coverages A and B, caused by any of the following:

c.      Faulty, inadequate or defective:

1.      Planning, zoning, development, surveying, siting;

2.      Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

3.      Materials used in repair, construction, renovation or remodeling; or

4.      Maintenance;

of part or all of any property whether on or off the residence premises.

Under Coverage C, Auto Club's policy covers damage to the insured's personal property "for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I –EXCLUSIONS."  The specified perils are as follows:

1.      Fire or lightning;

(5)

    2.       Windstorm or hail;

    3.       Explosion;

    4.       Riot or civil commotion;

    5.       Aircraft;

    6.       Vehicles;

    7.       Smoke;

    8.       Vandalism or malicious mischief;

    9.       Theft;

    10.     Falling objects;

    11.     Weight of ice, snow or sleet;

    12.     Accidental discharge or overflow of water or steam;

    13.     Sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system;

    14.     Freezing;

    15.     Sudden and accidental damage from artificially generated electric current; and

    16.     Volcanic eruption.

With respect to liability and medical payments coverage, Auto Club's policy provides as follows:

### SECTION II-EXCLUSIONS

• • •

    2.     **Coverage E-Personal Liability**, does not apply to

• • •

          f.  **Bodily injury** to **you** or an **insured** within the meaning of part a. or b. of **insured** as defined.

    3.     **Coverage F-Medical Payments to Others**, does not apply to **bodily injury:**

(6)

• • •

      d.      To any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## LAW AND ARGUMENT

### LEGAL STANDARD FOR RULE 12 MOTION TO DISMISS

The Supreme Court has set forth a two-step process for evaluating the sufficiency of a complaint: (1) identify and disregard all legal conclusions in the complaint; and (2) determine whether the remaining factual allegations plausibly suggest the defendant's liability. *Ashcroft v. Iqbal, 556* U.S., 129 S.Ct. 1937, 1949-50 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 n.5 (2007). This procedure is intended to expose and weed out deficient complaints at the point of minimum expenditure of time and money by the parties and the district court. *Twombly*, 550 U.S. at 558. In addition, Courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.,* 495 F.3d 228, 230 (5th Cir. 2007) (*quoting Plotkin v. IF Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

In ruling on a Rule 12(b)(6) motion, it has been held that a Court may consider documents referred to in the complaint or central to its claims. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998); *see also Keane v. Fox Television Stations, Inc.,* 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004), *aff'd*, 129 Fed. App'x. 874 (5th Cir. 2005) (unpublished). Here, the Auto Club policy issued to Rachelle and John Blue is specifically referenced in the Petition and is central to the claims alleged against Auto Club in the plaintiffs' Petition. As such, Auto Club's policy is properly considered without converting the instant Motion to Dismiss into a Motion for Summary Judgment. *See Vanderbrook v. Unitrin Preferred Ins. Co. (In re*

*Katrina Canal Breaches Litig.),* 495 F.3d 191, 205 (5th Cir. 2007) (approving defendants' attachment of insurance contracts to motions to dismiss noting that where "the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss") (citation omitted); *cert. denied,* 128 S. Ct. 1230, and *cert. denied,* 128 S. Ct. 1231 (2008).

In ruling on coverage issues, Louisiana courts adhere to the general principle that "[w]hen the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written." *Cent. La. Elec. Co. v. Westinghouse Elec. Corp.,* 579 So. 2d 981, 985 (La. 1991). Furthermore, "[w]ords and phrases used in insurance policies are to be construed in their plain, ordinary and popular sense." *Id.* at 986; *see also In re Katrina,* 495 F.3d at 207. Moreover, the Louisiana Supreme Court has consistently held that in analyzing an insurance contract, Courts must "remain mindful that it should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Leblanc v. Aysenne,* 921 So.2d 85 (La. 2006); *Reynolds v. Select Properties, Ltd.,* 634 So.2d 1180 (La. 1994).

### AUTO CLUB'S POLICY DOES NOT PROVIDE COVERAGE FOR PLAINTIFFS' CLAIMS

**A.      Presence of Chinese Drywall Not a "Direct Physical Loss."**

At the outset, it should be noted that the plaintiffs must meet the threshold burden of proving a "direct physical loss to the insured property." *Hyatt v. State Farm Ins. Co.,* 2008 WL

(8)

544 182 (E.D. La. 2008); *Doerr v. Mobil Oil Corp.*, 774 So.2d 119 (La. 2000).  Although the plaintiffs allege that they have sustained direct physical damage to certain property in their residence as a result of the presence of defective Chinese drywall, the mere presence of such drywall in the residence and damage to other property is not a direct physical loss to the drywall itself sufficient to trigger coverage under the policy's Insuring Agreement, which provides, in pertinent part, as follows:

### SECTION I- PERILS INSURED AGAINST

### COVERAGE A – DWELLING and
### COVERAGE B – OTHER STRUCTURES

> We insure against risk of direct loss to the property described in Coverages A and B only if that loss is a physical loss to property.

(Ex. A at 16.)

In this regard, the mere existence of allegedly defective drywall in the plaintiffs' home does not, by itself, constitute physical loss.  As a leading insurance treatise explains, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer merely suffers a detrimental economic impact unaccompanied by a ***distinct, demonstrable, physical alteration of the property***."  10 Couch on Insurance § 148:46 (3d ed. 1998) (emphasis added).

The United States Fifth Circuit Court of Appeals has held that under Louisiana law, faulty construction did not constitute property damage.  *Trinity Industries, Inc. v. Insurance Company of North America*, 916 F.2d 267 (5th Cir. 1990).  In *Trinity Industries*, an insured under a builder's risk policy sought coverage under the policy for damages arising out the

(9)

insured's defective workmanship in misaligning a ship's hull during construction. *Trinity Industries, Inc. v. Insurance Company of North America,* 916 F.2d 267 (5th Cir. 1990). In ruling that no coverage existed under the builder's risk policy, the Fifth Circuit reasoned as follows:

> The language "physical loss or damage" strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper. It would not ordinarily be thought to encompass faulty initial construction.

*Id.* at 270-71.

The Fifth Circuit's ruling in *Trinity* is clearly applicable to the plaintiffs' claims for coverage for the repair and remediation expenses of the allegedly defective Chinese drywall sought in the instant case. Although the plaintiffs' Petition alleges damage to property other than the drywall itself, there are no allegations that would constitute a direct physical loss to the Chinese drywall that the plaintiffs allege requires remediation and replacement, i.e. that the drywall was in "an initial satisfactory state that was changed by some external event into an unsatisfactory state." *See Trinity Indus.,* 916 F.2d at 270-71. Moreover, the drywall has not suffered any direct physical loss that would potentially trigger coverage under Auto Club's policy. As there has been no "physical loss to property" as to the drywall, the cost of repairing or remediating the plaintiffs' home by removing and replacing the defective Chinese drywall is not a covered loss under Auto Club's policy.

**B.      Coverage Excluded for Alleged Damages Caused by Chinese Drywall**

In addition to the removal and replacement of the Chinese drywall, the plaintiffs also seek coverage for damage allegedly caused by the Chinese drywall to other building components and personal property. More particularly, the plaintiffs allege that the gases emitted by the

(10)

defective Chinese drywall damaged "air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items." *See* Exhibit "B" Petition ¶ 6. However, Auto Club's policy contains several exclusions that preclude coverage for such alleged damages.  More particularly, Auto Club's policy unambiguously precludes coverage for losses caused by faulty materials used in the construction or renovation of property; "inherent vice/latent defect, mechanical breakdown;" "smog, rust or other corrosion, or mold, wet or dry rot;" and the discharge, dispersal, seepage, migration, release or escape of pollutants.   In addition, Auto Club's policy only covers losses to personal property that are caused by certain enumerated perils, none of which apply to the plaintiffs' alleged losses arising out of the existence of defective drywall.

In a case involving nearly identical issues to those presented by the instant case, a Virginia federal district court recently held that a homeowners' policy containing substantially similar exclusions as those in Auto Club's policy did not provide coverage for property damage to the plaintiffs' residence and personal property allegedly caused by the emission of gases from defective Chinese drywall. *Travco Ins. Co. v. Ward*, 2010 WL 2222255 (E.D. Va. June 3, 2010). In *Travco*, a homeowners' insurance company filed a declaratory judgment action seeking a determination that its homeowners' policy issued to the insured did not provide coverage for property damages allegedly sustained by the insured as a result of the presence of Chinese drywall in the insured premises.  More particularly, in a companion state court lawsuit, Travco's insured, Larry Ward, alleged that the Chinese drywall present in his residence "emits various sulfide gasses and/or other toxic chemicals through 'off-gassing' that create noxious odors and cause damage and corrosion." *Travco*, 2010 WL 2222255 at *3.  In addition, Ward asserted that

(11)

"the "compounds emitted by the drywall at issue are also capable of ... harming the health of individuals." Following a hearing on Travco's Motion for Summary Judgment, the Court issued a Judgment ruling that:

1.  The Policy does not provide coverage for the cost of removing and/or replacing the Drywall in the Ward Residence;

2.  The Policy does not provide coverage for the damage claimed by Mr. Ward to the air conditioning equipment at the Ward Residence, which resulted from corrosion;

3.  The Policy does not provide coverage for the damage claimed by Mr. Ward to the garage door at the Ward Residence, which resulted from corrosion;

4.  The Policy does not provide coverage for the damage claimed by Mr. Ward to the flat screen televisions; and

5.  The Policy does not provide coverage for any presently claimed damages caused by the Drywall in the Ward Residence or for any presently claimed damage caused by the discharge of gas from the Drywall, including but not limited to any damage to wiring and copper components of the home.

*Travco*, 2010 WL 2222255 at *1-2.

In denying coverage for such claims, the *Travco* Court specifically held that each of the policy's exclusions for "latent defect," "faulty materials," "corrosion," and "pollution" contained in Travco's policy excluded coverage for the insured's claims. More particularly, in granting Travco's Motion for Summary Judgment, the Court held that the "latent defect" exclusion "is intended to remove the risk for losses that result from flaws in property that are undetectable, and hence unexpected.... Losses from defective Chinese Drywall fit squarely within this category." *Id.* at 21.

In addition, the Court reasoned that the "faulty materials" exclusion also precluded coverage for the homeowner's claims. As the Court stated:

(12)

>   Although the Drywall has not collapsed or otherwise physically
>   deteriorated, it is certainly not serving its purpose as a component
>   of a livable residence. …In common parlance, the word 'faulty' is
>   not limited to faults that prevent an entity from accomplishing its
>   intended purpose and itself. … Consistent with the ordinary
>   meaning of the words 'faulty' and 'defective,' …the faulty
>   materials exclusion can apply even when the property in question
>   may be serving its intended purpose.

*Id.* at 23.

Furthermore, the *Travco* Court ruled that the policy's "corrosion" exclusion precluded coverage for the insured's claims.  In holding that the "corrosion" exclusion applied, the Court noted that "the ordinary meaning of corrosion includes the 'action or process of corroding.' As it is undisputed that the damage to the 'structural, mechanical and plumbing systems' of the [insured property] was caused by the 'action or process of corroding,' the corrosion exclusion unambiguously applies." *Id.* at 26.

Finally, as to the "pollution" exclusion, the Court stated as follows: "It is obvious that the relevant dispersal or discharge in this case is the discharge and dispersal of sulfuric gas from the Drywall.  It is an undisputed fact that the Chinese Drywall in [the insured's] home has 'off-gassed,' dispersing and discharging sulfuric gases into the [insured residence]. …Under any reasonable definition of these terms, the gases released into the [insured residence] qualify as irritants and contaminants."  As such, the Court held that the insured's claims were barred by the application of the "pollution" exclusion.

As the policy exclusions relied upon in *Travco* are essentially identical to those provisions and exclusions contained in Auto Club's policy, it is clear that consistent with the reasoning in *Travco*, Auto Club's policy exclusions preclude coverage for the plaintiffs' claims for damages resulting from alleged defective Chinese Drywall.  A review of the relevant

(13)

jurisprudence applying Louisiana law further establishes that the plaintiff's claims asserted in this lawsuit are <u>not</u> covered under Auto Club's homeowners' policy.  The application of these exclusions will be discussed separately below.

     **1.   Faulty Workmanship Exclusion Applies**

Auto Club's policy excludes losses to the dwelling itself, including drywall, that are due to faulty workmanship or construction, or defective or faulty materials used in construction or repair.  More particularly, Auto Club's policy contains the following exclusion:

**SECTION I – EXCLUSIONS**

● ● ●

2.      We do not insure for loss to property described in Coverages A and B, caused by any of the following:

    c.     Faulty, inadequate or defective:

        1.     Planning, zoning, development, surveying, siting;

        2.     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        3.     Materials used in repair, construction, renovation or remodeling; or

        4.     Maintenance;

of part or all of any property whether on or off the residence premises.

(Ex. A at 21-22.)

Courts considering faulty workmanship or materials exclusions have found these clauses unambiguous, and, therefore, enforceable, under Louisiana law.  *Morgan v. Auto Club Ins. Co.,* 899 So.2d 135 (La. App. 3d Cir. 2005); *Dawson Farms, LLC v. Miller's Mut. Fire Ins. Co.,* 794

(14)

So.2d 949 (La. App. 2d Cir. 2001).   In addition, the Fifth Circuit and this Court have also found such exclusions enforceable.  *Alton Oschner Medical Foundation v. Allendale Mut. Ins. Co.*, 219 F.3d. 501 (5th Cir. 2000); *Holland v. Breaux*, 2005 WL 3542899 (E.D. La. Nov. 22, 2005).

The Fifth Circuit has held that damages caused by defective workmanship and materials which caused cracking to the foundation of an office building under construction were excluded by a policy's "faulty workmanship" exclusion.  *Alton Oschner Medical Foundation v. Allendale Mut. Ins. Co.*, 219 F.3d. 501 (5th Cir. 2000).  In *Ochsner*, the Court held that damages caused by faulty workmanship and materials used in constructing the building's foundation were excluded under the policy.   In reaching its decision, the Fifth Circuit noted "the importance of an event extraneous to the construction process bringing about the loss in order to bring such a claim within the coverage provided by the policy."  *Oschner*, 219 F.3d at 506.   Because the only costs that the insured sought to recover were the costs of repairing the cracking in the building's foundation to restore the structural integrity, the Fifth Circuit held that the "faulty workmanship" exclusion applied to preclude coverage for such damages.   In support of this ruling, the Fifth Circuit noted that, "we must remain mindful that the policy does not cover the costs of 'making good' defective construction." *Id.*

In a similar case involving faulty workmanship and materials, United States District Court Judge Lance Africk held that under Louisiana law, a homeowners' insurance policy did not cover cracking, sagging, and rotting damage to a home resulting from "faulty planning, construction and maintenance," which included the improper use of untreated lumber.  *Holland v. Breaux*, 2005 WL 3542899 (E.D. La. 2005).  *See also Morgan v. Auto Club Family Ins. Co.*, 899 So. 2d 135, 137 (La. App. 3d Cir. 2005) (faulty workmanship in installing new roof was

excluded from coverage).

Here, the plaintiffs have alleged that defective drywall in their home has caused property damage to their residence. Based upon the Court's rulings in *Ochsner* and *Holland*, the plaintiffs' claims for property damage allegedly caused by defective drywall in their homes are clearly excluded under the faulty workmanship and materials exclusion contained in Auto Club's policy.

## 2. **Coverage Excluded by Latent Defect Exclusion**

In addition, Auto Club's policy contains a wear and tear, latent defect and inherent vice exclusion that precludes coverage for loss caused by:

(a)   Wear and tear, marring, deterioration;

(b)   Inherent vice, latent defect, or mechanical breakdown;

Louisiana courts have defined "latent defect" to be "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." *Nida v. State Farm Fire & Cas. Co.,* 454 So.2d 328 (La. App. 3d Cir. 1984); *see also Barbier v. Wade,* 517 So.2d 321 (La. App. 1st Cir. 1987). In *Nida,* soil movement caused cracking of the foundation as well as the interior and exterior walls of the insured's house. The natural shrinking and swelling of the soil caused damage to the foundation and to the rest of the home. Because the foundation had not been built to withstand ordinary soil movement, the Louisiana Third Circuit Court of Appeal held that the damage was excluded from coverage under a latent defect exclusion. *Nida,* 454 So.2d at 335. In reaching its decision, the Court noted that "the defendant-insurer simply was not a guarantor of the constructor's building performance." *Id.*

In the case at hand, the alleged damage to the plaintiffs' property clearly constitutes a loss caused by a "latent defect" as any alleged problem with the Chinese drywall, *i.e.* its gas emitting characteristic, is not visible or readily discoverable. Because the latent defect in the drywall is the cause of any need to remove and replace the drywall as well as any claimed losses to the building components and the other metallic surfaces in the plaintiffs' homes, the plaintiffs' claims are excluded under the "latent defect" exclusion contained in Auto Club's policy.

### 3.    Coverage Excluded by Corrosion Exclusion

Auto Club's policy also excludes losses to the dwelling "caused by ...smog, rust or other corrosion, or mold, wet or dry rot." (Ex. A at 16.) To the extent that the plaintiffs seek recovery from Auto Club for such losses to their homes, those losses are excluded by the corrosion exclusion.

The Louisiana Supreme Court has upheld the application of a "corrosion" exclusion in a boiler and machinery insurance policy. *Cent. La. Elec. Co. [CLECO] v. Westinghouse Elec. Corp.,* 579 So. 2d 981 (La. 1991). The insurance policy reviewed in *CLECO* provided coverage for "loss or damage to property of the Insured directly caused by [an] accident to an Object. . . ." *Id.* at 984. After an accident occurred damaging several blades in a turbine (causing damages within the deductible), the insured had the remaining blades inspected and discovered that they exhibited signs of "corrosion pitting" and cracks resulting from corrosion. The insured replaced all of the blades and sought reimbursement from its insurer. The Court held that the corrosion of the blades was not an "accident," which was defined as "any sudden or accidental occurrence . . .; but Accident shall not mean . . . corrosion." *Id.* Putting aside the blades that were undisputedly damaged by the first "accident," the court found that the later-discovered damage to the

(17)

remaining blades was not covered by the policy because corrosion was explicitly excluded from the definition of "accident." *Id.*

The same principle set forth in *CLECO* applies here. Any claim that the dwelling has been damaged because the drywall allegedly emits sulfuric gases that corrode metal wiring, piping, or other features of the dwelling, is barred by the corrosion exclusion.

### 4.   <u>Coverage Excluded by Pollution Exclusion</u>

As noted above, the plaintiffs' Petition specifically states that the Chinese drywall is emitting gases that are causing the alleged damage. Such claims are excluded from coverage by Auto Club's policy. More particularly, Auto Club's policy contains a provision that precludes coverage if the loss is:

> 2.     Caused by:
>
>> e. Any of the following:
>>
>>> (5)   Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, disbursal, seepage, migration, release or escape is itself caused by Peril insured against under coverage C of this policy.
>>>
>>>      Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The plain language of this exclusion clearly applies to the plaintiffs' claims for damages arising out of the existence of Chinese drywall. Courts have consistently enforced pollution exclusions in the context of first-party property policies as applied to losses similar to the losses claimed by the plaintiffs in the instant case. *See, e.g., Great Northern Ins. Co. v. Benjamin*

*Franklin Fed. Sav & Loan Ass'n*, 793 F. Supp. 259 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992) (enforcing pollution exclusion and holding that costs to remove asbestos from insured building are expressly barred from coverage); *Brown v. Am. Motorists Ins. Co.*, 930 F. Supp. 207, 208-209 (E.D. Pa. 1996) (enforcing unambiguous pollution exclusion and holding that alleged damage to house from fumes from sealant that migrated into insured's house was excluded), *aff'd*, 111 F.3d 125 (3d Cir. 1997).

   In examining the enforceability under Louisiana law of the pollution exclusion contained in Auto Club's policy, it should be noted that the Louisiana Supreme Court's decision in *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 122 (La. 2000), held that a pollution exclusion in a commercial general liability ("CGL") policy applies only to "professional polluters." However, *Doerr* involved a CGL policy and has no application to the instant case. Unlike Auto Club's homeowners' policy, which provides coverage for physical damage to the insured property, the CGL policy in *Doerr* provided coverage for the insured's legal liability to third parties for bodily injury or property damage.[1] The "total" pollution exclusion in *Doerr* provided that the insurer would not be responsible for defending or indemnifying an insured if the insured was alleged to have caused bodily injury or property damage and pollution was a contributing cause

---

[1] The *Doerr* opinion does not quote or explain the CGL policy's basis for coverage. A typical CGL policy provides that the insurer "will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage ...." *Ricks v. Kentwood Oil Co.*, 2010 La. App. LEXIS 237, at *7 (La. App. 1 Cir. Feb. 23, 2010). A standard definition of "bodily injury" is "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* at *9. A typical definition of "property damage" is "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." *Id.* The liability insurance coverage portion of the Rosses' Policy has a similar grant of coverage, and does not contain any pollution exclusion. (*See* Policy, Form HO 00 03 10 00, at 1-2, 16-19.)

of the insured's liability.  More particularly, the *Doerr* policy provided that  "[t]his insurance does not apply to . . . 'Bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time."  *Id.*  As such, the policy required the insurer to defend and indemnify the insured for claims by third parties asserting that the insured was legally responsible for "bodily injury" or "property damage," but excluded any obligation to defend or indemnify if the insured's liability was alleged to have been caused in whole or part by the release or discharge of "pollutants."

In interpreting this exclusion, the *Doerr* Court found the exclusion to be overly broad, and limited its scope by holding that the insurer was obligated to defend and indemnify its insured, unless the insured was alleged to have caused bodily injury or property damage ***and*** the allegedly responsible insured was in the business of polluting.  The Court noted that a broad interpretation of the exclusion could "exclude coverage for anything from the release of chlorine gases by a conglomerate chemical plant to the release of carbon monoxide from a small business owner's delivery truck.  It could be read to exclude injuries resulting from a slip and fall on an oil-slicked beach to a slip and fall on spilled gasoline at a corner service station."  *Id.* at 124. The Court noted that Louisiana law did not require enforcing the exclusion as written because applying the exclusion to circumstances like these would constitute "absurd results."  *Id.*  The Court then reviewed the history and purpose of the pollution exclusion in liability insurance policies, finding that the exclusion was developed in the 1970s and broadened in the 1980s, in response to an increase in environmental enforcement by the federal government, and that the

purpose was to exclude any obligation to defend or indemnify a business for causing environmental pollution. *Id.* at 126-27. The Court concluded that "[g]iving these pollution exclusions a strictly literal reading without regard to the limited purpose behind their post-CERCLA [Comprehensive Environmental Response, Compensation, and Liability Act of 1980] formation would thwart the very purpose of a comprehensive general liability policy." *Id.* at 127.

The *Doerr* Court set forth the following test to determine whether the exclusion would apply: "(1) Whether the insured is a 'polluter' within the meaning of the exclusion; (2) Whether the injury-causing substance is a 'pollutant' within the meaning of the exclusion; and (3) Whether there was a 'discharge, dispersal, seepage, migration, release or escape' of a pollutant by the insured within the meaning of the policy." *Id.* at 135. The Court further noted that the following factors should be considered in determining whether the insured is a "polluter": "the nature of the insured's **business**, whether that type of **business** presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's **business**, who the insurer typically insures, any other claims made under the policy," and any other factor deemed relevant. *Id.* (Emphasis added).

As is apparent from the foregoing review of the facts and issues in the *Doerr* case, the *Doerr* decision is inapplicable to the case at hand for several reasons. First, a fundamental difference exists between the purpose of a liability policy and the purpose of a property policy. While a liability policy provides coverage for certain types of harm caused by the insured to third

(21)

parties, a property policy insures the insured's own property against risk of direct physical loss caused by any non-excluded cause. Property policies cover acts of God, negligence of third parties, and negligence of the insured, whenever the cause is not excluded. The identity of the person who caused the harm is not relevant. Consequently, it would make no sense to focus on whether the insured caused the "pollution" or was a "polluter" in interpreting the scope of coverage under a property policy.

In this regard, the *Doerr* Court's focus clearly was on liability insurance coverage for business insurance as opposed to homeowners' property insurance. As such, any inquiry that *Doerr* set forth for determining whether a business qualifies as a professional polluter makes no sense in the context of a homeowner asserting a claim for damage to his or her house. Because the issue in *Doerr* was whether the policy covered the insured business' liabilities for causing pollution, the Court found it important to determine whether the insured was in the business of polluting, and held that the pollution exclusion would only apply if the insured was engaged in the business of polluting. *Doerr*, 774 So. 2d at 135 (emphasis added). The relevant factors cited by the Court in *Doerr,* therefore, included "the nature of the insured's **business**," "whether that type of **business** presents a risk of pollution," and "whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's **business**." *Id.* (Emphasis added). These criteria, which are directed to whether a CGL policy protects a business from liability for pollution, are not transferable to a case involving a homeowners' claim to recover the cost of repairing damage to his or her house.

In addition, the rationale of *Doerr*, which was heavily influenced by the history of the pollution exclusion in **CGL policies**, does not apply to property insurance policies. Property

(22)

policies contained exclusions for loss caused by contamination long before the environmental movement that led to the broader pollution exclusion in liability policies. *See, e.g., Aetna Cas. & Surety Co. v. Yates*, 344 F.2d 939, 940-41 (5th Cir. 1965) (quoting policy that excluded "loss caused by . . . contamination"); *Am. Cas. Co. of Reading, Penn. v. Myrick*, 304 F.2d 179, 181 (5th Cir. 1962) (policy excluded "loss or damage caused by or resulting from . . . contamination" unless caused by explosion). This exclusion was not created in response to a changing risk created by new legislation. Nor was it intended to "shift coverage away" from traditional property insurance policies to specialized policies that would insure against environmental contamination. *See Doerr*, 774 So.2d at 126. Quite notably, the contamination exclusion was enforced where the insureds were not "polluters." *See, e.g., Myrick*, 304 F.2d at 183 (applying contamination exclusion where pipe broke, releasing ammonia); *McQuade v. Nationwide Mut. Fire Ins. Co.*, 587 F. Supp. 67, 68 (D. Mass. 1984) (applying exclusion to homeowner's loss caused by chemicals sprayed by exterminator); *Hartory v. State Auto. Mut. Ins. Co.*, 552 N.E.2d 223, 225 (Ohio App. 1988) (applying exclusion to homeowners' loss caused by methane gas from neighboring landfill).

The longstanding "contamination" exclusion in first-party property policies later became a pollution exclusion in which "pollutants" are defined to include "contaminants." However, nothing in the language or history of this exclusion suggests that it was precipitated by "the federal government's war on active polluters." *Doerr*, 774 So. 2d at 126. As such, the *Doerr* Court's historical rationale for interpreting the total pollution exclusion in CGL policies is inapplicable to the case at hand.

Moreover, extending *Doerr* to the pollution exclusion in the property insurance section of a homeowners' policy would eviscerate the exclusion. If the *Doerr* test was the test for applying the pollution exclusion in a homeowners' policy, the exclusion would become meaningless. A homeowner can <u>never</u> be a "professional polluter" unlike a commercial business. As such, it is difficult to envision any situation in which an insured under a homeowners' policy would fit the *Doerr* test, except perhaps where a homeowner intentionally uses his or her property as a waste dump. There is no need for a pollution exclusion to address such a scenario because a homeowners' policy does not cover land, and it excludes intentional acts (*see id.* at 12).

Accordingly, applying *Doerr* to the pollution exclusion in Auto Club's homeowners' policy would lead to the very sort of "absurd consequences" that the *Doerr* Court sought to prevent. As such, it is respectfully submitted that the *Doerr* decision is inapplicable to the case at hand, and the plain language of the pollution exclusion in Auto Club's policy should be enforced as written.

## NO COVERAGE FOR DAMAGE TO PERSONAL PROPERTY NOT COVERED

To the extent that the plaintiffs intend to pursue coverage under the policy for damage to any personal property, such losses are not specifically enumerated within the terms of the Insuring Agreement and so are not covered.

Auto Club's policy provides certain coverage for personal property under Coverage C. However, personal property is insured against loss only from those perils specifically enumerated in the policy. (Ex. A at 17.) Under a named peril policy, the plaintiffs are required to prove by a preponderance of the evidence that their personal property was lost or damaged due to a specified covered risk named in the policy. *Opera Boats, Inc. v. La Reunion Francaise*, 893

(24)

F.2d 103, 105 (5th Cir.1990); *Broussard v. State Farm Fire & Cas. Co.*, 2007 WL 2264535 (E.D. La. Aug. 2, 2007). There are sixteen enumerated perils under Coverage C, Personal Property: (1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling objects; (11) weight of ice, snow or sleet; (12) accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system, etc.; (13) sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, etc.; (14) freezing; (15) sudden and accidental damage from artificially generated electrical current; and (16) volcanic eruption. (Ex. A at 17-19.)

None of these enumerated perils even arguably apply to the losses alleged in the Petition as a result of the existence of Chinese drywall. Accordingly, as a matter of law, there is no coverage under the policy for any alleged losses to personal property.

## NO COVERAGE FOR LOSS OF USE AND PERSONAL INJURY

1. **Loss of Use**

Although the Petition does not specifically allege that Auto Club must pay for the plaintiffs' loss of use of the property, the Petition does allege that Auto Club's policy does provide loss of use coverage. Petition ¶¶ 4-5. To the extent that the plaintiffs will seek payment of such alleged loss of use expenses, such expenses and/or damages are not covered unless there is an underlying covered loss to the dwelling itself. The policy language regarding coverage for loss of use states, in pertinent part, as follows:

**COVERAGE D - Loss of Use**

1. If a loss covered under this Section makes that part of the residence premises where you reside to become not fit to live in, we cover, at your choice, either of the following.

    a. **Additional Living Expenses**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

(Ex. A at 7.)

Coverage for loss of use, including living expenses, is expressly conditioned on an underlying loss to the residence premises that is a loss covered under Section I of the Policy. As fully explained above, the plaintiffs have not sustained a loss to the residence premises that is covered by the policy. Accordingly, the plaintiffs' claims for loss of use, and any associated living expenses, are not covered as a matter of law.

## 2. <u>First-Party Personal Injury Claims Are Not Covered</u>

The plaintiffs' Petition also alleges that the defective Chinese drywall has caused "personal injuries to the plaintiffs and their children." Petition ¶ 6. Such claims fail as a matter the plain reading of Auto Club's policy language. Under Coverage E, Auto Club's policy provides liability coverage for liability claims asserted against an insured under the policy. In addition, under Coverage F, Auto Club's policy provides medical payment coverage to injuries sustained by third parties. However, Auto Club's policy clearly and unambiguously precludes coverage for any bodily injuries sustained by any insured or household resident. More particularly, Auto Club's policy provides, in pertinent part, as follows:

(26)

**SECTION II-EXCLUSIONS**

• • •

2.    **Coverage E-Personal Liability**, does not apply to

• • •

f.    **Bodily injury** to **you** or an **insured** within the meaning of part a. or b. of **insured** as defined.

An "insured" is defined to include the named insured and the named insured's spouse and relatives. *See* Exhibit "A" at 1.

In addition, the Insuring Agreement with respect to **Coverage F-Medical Payments to Others**, specifically states that "[t]his coverage does not apply to **you** or regular residents of **your** household except **residence employees**."

In the matter at hand, the alleged personal injuries were purportedly sustained by "the Petitioners," John and Rachelle Blue, and "their children." Petition ¶ 6.    Under the clear terms of Auto Club's policy, such personal injuries are excluded.  John and Rachelle Blue are both named insureds under the policy, and clearly their children qualify as "relatives."  Accordingly, any claims for personal injuries sustained by the plaintiffs are excluded under Auto Club's policy.

**CONCLUSION**

John and Rachelle Blue have filed suit seeking damages in connection with property damage and additional living expenses allegedly sustained as a result of the existence of "Chinese Manufactured Dry Wall" which allegedly caused "physical loss and damage" to the plaintiffs' home and contents located at 422 28th Street in New Orleans, Louisiana.  The plaintiffs' Petition alleges

(27)

that the defective Chinese drywall in question "emits odorous gases that cause corrosion of air conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items and causes personal injuries to petitioners and their children."

Under the clear and unambiguous terms of Auto Club's homeowners' policy issued to John and Rachelle Blue, the plaintiffs' alleged losses resulting from allegedly defective drywall are not covered under Auto Club's homeowners' policy. The presence of defective drywall and any alleged need to remove and remediate the drywall itself is not covered as there was no "direct physical loss" as required under the subject policy's Insuring Agreement to trigger coverage. The plaintiffs have not demonstrated such "direct physical loss," as the Petition fails to allege any direct physical loss to the drywall itself. Moreover, the remaining damages allegedly sustained to the dwelling and personal property are likewise excluded from coverage based upon Auto Club's policy exclusions for faulty workmanship, latent defects, corrosion and losses caused by a pollutant. As these policy provisions and exclusions are clear and unambiguous, they are enforceable as a matter of law. Accordingly, the plaintiffs' claims against Auto Club should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

Respectfully submitted:

_____

ALAN J. YACOUBIAN – T.A. (#17213)
NEAL J. FAVRET (#24412)
GENEVIEVE K. JACQUES (#27818)
JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
701 Poydras Street - Suite 4700
New Orleans, Louisiana 70139-7708
Telephone: (504) 528-3001
Facsimile: (504) 528-3030
Attorneys for defendant, Auto Club Family
Insurance Company

(28)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of July, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service. I further certify that I have served a copy of the foregoing pleading on all parties to this proceeding not registered for electronic service, if any, by e-mail, fax and/or mailing the same by United States mail, properly addressed and first class postage prepaid.

395543//0179-9891

(29)