STATE OF MISSOURI      )
                              )    SS
COUNTY OF ST. LOUIS    )

      CARL D. KRAFT, being duly sworn, deposes and says that he is Assistant Secretary of

AUTO CLUB FAMILY INSURANCE COMPANY, and that the attached policy and

Declarations Certificate are true and exact copies of the Premier Homeowners Policy and

Declarations Certificate for the insurance policy of Rachelle Ray Robin and John B Blue which

was in effect on May 20, 2009, Claim No. HO0000993460.

      Witness my hand and seal of the said Corporation this 15th day of January, 2010.



                                      **CARL D. KRAFT**
                                      **Assistant Secretary**

Subscribed and sworn to before me this 15th day of January, 2010.

                                             Notary Public

SHERRY CASTELLO
Notary Public, State of Missouri
St. Charles County
Commission # 07421393
My Commision Expires April 23, 2011



## PAYMENT NOTICE

**AUTO CLUB FAMILY INSURANCE COMPANY**
*12901 North Forty Drive, St. Louis, MO 63141*
**HOMEOWNERS POLICY PAYMENT NOTICE**

AAA Insurance

**AMENDMENT**

**PLEASE MAKE CHECK PAYABLE TO A.C.F.I.C.** RETURN THIS NOTICE WITH PAYMENT `ALLOW 5 DAYS IF PAYING BY MAIL`

POLICY NUMBER: P8-261257-1     DATE PREPARED: 08/05/2008

POLICY PERIOD: 07/25/2008 **TO** 07/25/2009

INSURED: Rachelle Ray Robin
John B Blue

Rachelle Ray Robin
620 Papworth Ave
Metairie, LA 70005-3113

THIS POLICY HAS BEEN
PAID IN FULL.

282612571   07250800000000000002181502091418010308999999

**^ TEAR OFF RECEIPT ABOVE AND SEND IN WITH PAYMENT ^**

## YOUR COPY

**AUTO CLUB FAMILY INSURANCE COMPANY**
*12901 North Forty Drive, St. Louis, MO 63141*
**HOMEOWNERS POLICY PAYMENT NOTICE**

AAA Insurance

**AMENDMENT**

**RETAIN THIS NOTICE FOR YOUR RECORDS • SEE REVERSE SIDE FOR ADDITIONAL INFORMATION**

POLICY NUMBER: P8-261257-1     DATE PREPARED: 08/05/2008

POLICY PERIOD: 07/25/2008 **TO** 07/25/2009

NAMED INSURED: Rachelle Ray Robin
John B Blue

INSURED PROPERTY: 422 28th St
New Orleans, LA 70124

MAILING ADDRESS: Rachelle Ray Robin
620 Papworth Ave
Metairie, LA 70005-3113

THIS POLICY HAS BEEN
PAID IN FULL.

---

**IMPORTANT MESSAGES**

If you have any questions about this billing notice, please contact your agent.

Did you know you get special savings when you insure your home with the Auto Club Family Insurance Company and your vehicles with the Automobile Club Inter-Insurance Exchange?

Your AAA agent will be happy to review all your insurance needs to make sure you and your family are adequately protected.  If you need any additional coverages, we can help identify these areas before a loss occurs.

Call your AAA Agent or your local AAA office to schedule a free review.  We will customize an insurance package with competitive rates to suit your individual needs.

---

**Your Agent:** Lastrapes Insurance Agency     **Agent Phone:** (504) 488-3838

FORM 5613-1 (07/2005)

| ADDITIONAL INFORMATION |
|---|
| <u>Payment</u> - To continue insurance under this policy, your payment is due and payable on or before the date due. Payment is considered as having been made upon receipt at company's home office.  Failure to make your payment by the date due shall constitute your request to terminate the insurance.  Please allow at least 5 days when mailing your payment.<br><br><u>Service Charge</u> - The service charge is based on the quarterly premium or quarterly payment plan deposit, whichever is applicable.<br><br><u>Changes to Your Policy</u> - Changes made to your policy will be reflected in your payment notice.  To assure continuous protection, always pay the minimum amount due even if it does not reflect a recent policy change.  Proper premium credits or charges will be applied to future notices. |

FORM 5613-1 (07/2005)

**AUTO CLUB FAMILY INSURANCE COMPANY**

(A Stock Company)

12901 North Forty Drive,  St. Louis, MO 63141

**AAA Insurance**

**HOMEOWNERS DECLARATIONS**

| AMENDMENT |
| --- |

—— THIS DECLARATIONS CERTIFICATE IS PART OF YOUR POLICY.  PLEASE KEEP IN WITH YOUR POLICY.

| YOUR AGENT INFORMATION: | TO REPORT A CLAIM: | POLICY NUMBER:  P8-261257-1 |
| --- | --- | --- |
| Lastrapes Insurance Agency<br>#0849-I046<br>110 Veteran Memorial Blvd. Suite 110a<br>Metairie, LA 70005<br>(504) 488-3838 | **(800) 222-7623 Ext. 5000** | **PREMIER POLICY**<br><br>**POLICY PERIOD:**<br><br>07/25/2008  **TO**  07/25/2009<br><br>(12:01 A.M. Standard Time) |
| **INSURED NAME AND ADDRESS:**<br><br>Rachelle Ray Robin<br>John B Blue<br>620 Papworth Ave<br>Metairie, LA 70005-3113 | | **AMENDMENT DATE:**<br><br>07/25/2008<br><br>**CHANGE IN PREMIUM:**<br><br><br>DATE PREPARED:  08/05/2008 |

### INSURED PROPERTY INFORMATION

422 28th St, New Orleans, LA  70124

| Primary Residence | Type of Construction:  Frame | Year Built:    1966 |
| --- | --- | --- |

| SECTION I - PROPERTY COVERAGES | | | | SECTION II - LIABILITY COVERAGES | |
| --- | --- | --- | --- | --- | --- |
| **DWELLING**<br>(Coverage A) | **OTHER STRUCTURES**<br>(Coverage B) | **PERSONAL PROPERTY**<br>(Coverage C) | **LOSS OF USE**<br>(Coverage D) | **PERSONAL LIABILITY**<br>Each Occurrence<br>(Coverage E) | **MEDICAL PAYMENTS TO OTHERS**<br>Each Person<br>(Coverage F) |
| $187,500 | $18,750 | $112,500 | $56,250, not to exceed 12 months from the date of loss | $300,000 | $1,000 |

| DEDUCTIBLE SECTION<br>(OTHER DEDUCTIBLES MAY APPLY - REFER TO POLICY) | | TOTAL ANNUAL PREMIUM FOR<br>THE POLICY PERIOD STATED |
| --- | --- | --- |
| **$1,000** | POLICY DEDUCTIBLE  (Applies to Coverages A, B and C ) | |
| **3%** | WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE  (Applies to Coverage A) | **$2,372.00** |

|  | **Total Policy Premium** | $2,372.00 |
| --- | --- | --- |
| 2005 LA FAIR Plan Emergency Assessment | $119.00 | |
| **TOTAL AMOUNT DUE** | | **$2,491.00** |

| FUTURE BILLING INFORMATION | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Date Due | Amount | Date Due | Amount | Date Due | Amount | Date Due | Amount | Date Due | Amount |

FORM 5613-2LA (07/2005)          SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

| DECLARATIONS (CONTINUED) | POLICY #: | P8-261257-1 | EFFECTIVE: | 07/25/2008 TO 07/25/2009 |
|---|---|---|---|---|

### MORTGAGE INFORMATION

| NAME & ADDRESS | | |
|---|---|---|
| | PRIMARY/SECONDARY | LOAN NUMBER |
| U. S. Small Business Administration<br>10737 Gateway West #300<br>El Paso, TX 79935 | Primary | DLH1047406002 |

### MANDATORY FORMS AND ENDORSEMENTS:

| | | |
|---|---|---|
| 5103 | 01/1996 | Premier Homeowners Policy |
| 5933A | 04/2007 | LA Homeowners Policy Coverage Disclosure Summary |
| CO0001 | 07/2005 | Inflation Guard Endorsement |
| CO0007 | 07/2005 | Lock Replacement Endorsement |
| CO0012 | 07/2005 | Limited Fungi, Wet or Dry Rot, or Bacteria Coverage - Louisiana |
| CO0117 | 02/2008 | Special Provisions - Louisiana |
| CO0496 | 07/2005 | No Section II - Liability Coverage For Home Day Care |
| PVYPLH | 07/2001 | Notice of Privacy |

### OPTIONAL FORMS AND ENDORSEMENTS / PREMIUM ADJUSTMENTS

| BASE POLICY PREMIUM | | | | $ 2372 |
|---|---|---|---|---|
| CO0312 | 07/2005 | Windstorm Or Hail Percentage Deductible<br>3% Wind or Hail Percent Deductible | | Included |
| CO0416 | 07/2005 | Premises Alarm or Fire Protection System | 15% Discount | Included |
| | | | | $2,372 |

### THE FOLLOWING HAVE BEEN APPLIED TO YOUR POLICY:

Age of Home Factor

Protection Devices Credit

FORM 5613-2LA (07/2005)

| DECLARATIONS (CONTINUED) | POLICY #: | P8-261257-1 | EFFECTIVE: | 07/25/2008 TO 07/25/2009 |
|---|---|---|---|---|
| | | **IMPORTANT MESSAGES** | | |

A FAIR Plan deficit was created in excess of the amount that was collected through regular assessments from insurance companies to help pay for claims in the FAIR Plan. As a result, the Louisiana Citizens Property Insurance Corporation has levied an emergency assessment against FAIR Plan assessable insureds. This assessment will be included on all Auto Club Family Insurance Company new or renewal policies with effective dates from January 1, 2008 through December 31, 2008. Because your policy effective date falls within this time period, the total amount due on this renewal policy includes this assessment.

Any adjustment in premium made as a result of the recent amendment to your policy will also change the amount of the 2005 LA FAIR Plan Emergency Assessment owed on this policy. If this amendment has resulted in a reduction in premium, the Total Amount Due has been adjusted to reflect the reduction in the 2005 LA FAIR Plan Emergency Assessment. If your policy was paid in full at the time of this amendment, a refund check will be sent to you under separate cover and will include any amounts refunded from the Emergency Assessment amount you have paid.

This policy contains a flood exclusion. Flood coverage may be purchased separately from the National Flood Insurance Program, if available in your area.

Endorsement CO 01 17 02 08, Special Provisions - Louisiana has been revised as follows:

• Section I - Perils Insured Against has been added. For Premier and Premier Plus Policies, we do not insure for loss caused by continuous or repeated seepage or leakage of water or steam over weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system from within a household appliance.
• Under Section I - Exclusions, item 3. has been added which provides information pertaining to the Water Damage Exclusion within the policy. Item 8. Intentional Loss has been added, which modifies the policy language regarding fires that are started intentionally.
• Under Section I - Conditions, item 2. An insured's Duties After Loss has been added. Proof of loss must be sent within 180 days after our request if the loss results from a catastrophic event for which a state of disaster or emergency was declared for specified areas pursuant to law by civil officials. Proof of loss must be sent within 60 days after our request in all other cases.
• Also under Section I - Conditions, item 8. Suit Against Us has been added. No action can be brought unless the policy provisions have been fully complied with and the action is started within two years after the date of loss.

The descriptions of changes above do not replace the actual policy language and are intended to highlight material changes only. Please refer to your enclosed Special Provisions Endorsement for more details.



# AUTO CLUB FAMILY INSURANCE COMPANY
# IMPORTANT INFORMATION REQUIRED BY THE
# LOUISIANA DEPARTMENT OF INSURANCE

### Homeowners Insurance Policy Coverage Disclosure Summary
This form was promulgated pursuant to LSA-R.S. 22:1477.

**THIS IS ONLY A SUMMARY OF YOUR COVERAGE AND DOES NOT CHANGE, EXPAND, OR REDUCE THE COVERAGES OR ANY OTHER PROVISIONS CONTAINED IN YOUR POLICY. INSURANCE IS A CONTRACT. THE LANGUAGE IN YOUR POLICY CONTROLS YOUR LEGAL RIGHTS.**

**\*\*READ YOUR INSURANCE POLICY FOR COMPLETE
POLICY TERMS AND PROVISIONS\*\***

## COVERAGE(S) FOR WHICH PREMIUM WAS PAID

| | | |
|---|---|---|
| **Coverage A** | - | **Dwelling** |
| **Coverage B** | - | **Other Structures** |
| **Coverage C** | - | **Personal Property** |
| **Coverage D** | - | **Loss of Use** |
| **Coverage E** | - | **Personal Liability** |
| **Coverage F** | - | **Medical Payments To Others** |

## DEDUCTIBLES

This policy sets forth certain deductibles that will be applied to claims for damages. When applicable, a deductible will be subtracted from your total claim and you will be paid the balance subject to applicable coverage limits.

**NOTICE:** This policy does set forth a deductible for covered losses caused by *windstorm or hail* as defined in the policy. Look at the Declaration Page of your policy to determine the amount of the deductible that will apply to any claim for damage caused by *windstorm or hail*.

**\*\* You may be able to reduce your premium by increasing your deductible(s). Contact your producer/agent or insurer for more details. \*\***

## LIMITATIONS OR EXCLUSIONS UNDER THIS POLICY

**FLOOD** - Flood damage is not covered, regardless of how caused, when flood is the peril that causes the loss.  Flood water includes, but is not limited to, storm surge, waves, tidal water, overflow of a body of water, whether driven by wind or not.  This policy does not provide coverage for any flood damage, whether due to natural or man-made causes.

**Flood Insurance** may be available through the National Flood Insurance Program (NFIP).  NFIP flood insurance may provide coverage for damage to your dwelling and/or contents subject to the coverage limits and terms of the policy.

**Excess Flood Insurance** may be available under a separate policy, from this or another insurer, if the amount of the primary flood insurance is not enough to cover the value of your property.

- You may contact your producer or insurer for more information on the National Flood Insurance Program and Excess Flood Insurance.

**MOLD** - Damage caused solely by Mold is not covered under this policy.

**\*\*FOR ALL OTHER LIMITATIONS OR EXCLUSIONS REFER TO YOUR POLICY FOR COMPLETE DETAILS ON TERMS AND PROVISIONS\*\***


**THE ABOVE LIMITATIONS OR EXCLUSIONS ARE SUMMARIES AND ARE NOT MEANT TO CHANGE YOUR POLICY TERMS OR PROVISIONS.**


**CLAIM FILING PROCESS**   There may be time limitations for filing a claim and filing of a satisfactory proof of loss.  There may also be time limitations for repairing and replacing damaged property that could  cause you to not recover the replacement cost of your property, if applicable.

**PAYMENT
OF CLAIMS**

Depending on the terms of the insurance policy, some losses may be paid based on actual cash value (ACV) and others based on replacement cost (RC).

———
———
———

- · **ACV** is the amount needed to repair or replace the damaged or destroyed property, minus the depreciation.

- · **RC** involves the initial payment of actual cash value (ACV) of a loss, and the subsequent payment of the additional amount that is actually and necessarily expended to repair or replace the damaged or destroyed property.

** Refer to your policy for the terms and conditions describing how a particular loss is to be paid.   **

**PAYMENT AND
ADJUSTMENT OF
CLAIMS**

Pursuant to LSA R.S. 22:658 and 22:1220, except in the case of catastrophic loss, the insurer shall initiate loss adjustment  of a property damage claim and/or a claim for reasonable medical expenses within fourteen (<u>14</u>) days after notification of loss by the claimant.

In the case of a <u>catastrophic loss</u>, the insurer shall initiate loss adjustment of a property damage claim within thirty (<u>30</u>) days after notification of loss by the claimant.

All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty (<u>30</u>) days after the receipt of satisfactory proof of loss of that claim.

Failure to make such payment within thirty (<u>30</u>) days after receipt of such satisfactory written proofs and demand therefore or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty (<u>30</u>) days after receipt of a satisfactory proof of loss of that claim may result in a late penalty against the insurer in addition to the payment of the claim.

If the insurer is found to be arbitrary, capricious or without probable cause in settling any property damage claim, the insurer must pay the insured, in addition to the amount of the loss, fifty percent (<u>50%</u>) damages on the amount found to be due from the insurer to the insured, or one thousand ($1,000.00) dollars, whichever is greater, as well as reasonable attorney fees and costs, if applicable.

EFFECTIVE APRIL 1, 2007

CO 01 17 02 08



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SPECIAL PROVISIONS - LOUISIANA

**DEFINITIONS**

The following definitions are added as follows:

9.  **"Motorized vehicle"** means a self-propelled land or amphibious vehicle regardless of method of surface contact. This includes parts and equipment.  This does not include vehicles that are designed and used to assist the handicapped or are not required to be licensed for road use.

10.  **"Motorized vehicle registration"** means any licensing, fees, registration or other process that must be completed with any governmental entity that is required by any ordinance, statute, or regulation.  **Motorized vehicle registration** is not limited to registration of **motorized vehicles** for use on the public highways, and includes any and all fees, licensing and/or registration of **motorized vehicles** pursuant to applicable law.

**SECTION I - PROPERTY COVERAGES**

**COVERAGE C - Personal Property**

**Property Not Covered**

Under item 3., paragraph 3 is deleted and replaced by the following:

**We** do cover vehicles or conveyances not subject to **motor vehicle registration** which are:
    a.   Used solely to service an **insured's** residence; or
    b.   Designed for assisting the handicapped.

**COVERAGE D - Loss of Use**

The first paragraph is deleted and replaced by the following:

The limit of liability for Coverage D is the actual loss sustained within 12 months from the date of the loss for 1. and 2. below and shall not exceed 30% of the Coverage A amount for Premier, Premier Plus and Premier Select Policies and 30% of Coverage C for Premier Condominium Owners and Premier Renters Policies.

Item 1. is deleted and replaced by the following:

1.   If a loss covered under this Section makes that part of the **residence premises** where **you** reside not fit to live in, **we** cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by **you** so that **your** household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if **you** permanently relocate, the shortest time required for **your** household to settle elsewhere.

Item 3. is deleted and the following paragraph is added:

If a civil authority prohibits **you** from the use of the **residence premises** as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, **we** cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The paragraph "The periods of time under 1., 2. and 3. above are not limited by expiration of this policy." is deleted and replaced by the following:

The periods of time for all the above are not limited by expiration of this policy.

**ADDITIONAL COVERAGES**

2.   **Reasonable Repairs** is deleted and replaced by the following:

2.   **Reasonable Repairs. We** will pay the reasonable cost incurred by **you** for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applied to the property being repaired.

4.   **Fire Department Service Charge.**  The first sentence is deleted and replaced by the following:

**We** will pay up to $2,500 for **your** liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against.

**CO 01 17 02 08**

Rachelle Ray Robin                          P82612571 5

CO 01 17 02 08

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money**

Item a. under Defense is deleted and replaced by the following:
  a.  **We** may investigate and settle any claim or suit that **we** decide is appropriate.  **Our** duty to defend a claim or suit ends when **our** limit of liability for the coverage has been exhausted by payment of a judgment or a settlement.

## SECTION I - PERILS INSURED AGAINST

For Premier and Premier Plus Homeowners Policies, under **Coverage A - Dwelling and Coverage B - Other Structures**, item 2.e.(9) is added:

**We** do not, however, insure for loss:
2. Caused by:
  e.  Any of the following:
     (9) Continuous or repeated seepage or leakage of water or steam over weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

For Premier and Premier Plus Homeowners Policies, the last paragraph on item 2.e. is deleted and replaced with the following:

  If a loss excluded under 2.e. above causes or results in water to escape suddenly and accidentally from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, **we** do cover the direct physical loss caused by the water, including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.  **We** do not cover loss to the system or appliance from which this water escaped.

## SECTION I - EXCLUSIONS

The first paragraph is deleted and replaced by the following:

**We** do not insure for any loss caused directly or indirectly by any of the following exclusions, regardless of the cause of the excluded event or damage; other causes of the loss; whether any other cause or event acts concurrently or in any sequence with the excluded event to produce the loss; whether the loss or event occurs suddenly or gradually, involves isolated or widespread damage or occurs as a result of any combination of these; or whether the loss is caused by, results from, consists of, involves or is contributed to by a natural, human, animal or plant forces.

(This is item 1. in **our** Premier and Premier Plus Homeowners Policies.)

For Premier and Premier Plus Homeowners Policies, the first paragraph under item 2. is deleted and replaced with the following:

2.  **We** do not insure for loss to property described in Coverages A and B caused directly or indirectly by any of the following regardless of whether any other cause or event contributes or acts concurrently or in any sequence with the excluded event to produce the loss.

3.  **Water Damage** is deleted and replaced by the following:
3.  **Water Damage**, meaning loss caused by or consisting of:
  a.  Flood, surface water, waves, tidal water, tsunami, seiche, storm surge, breach or overflow or failure of levees or dikes, overflow of a body of water, or spray from any of these, whether or not driven by wind;
  b.  Water or water-borne material or any liquid or semi-liquid substance which backs up through sewers or drains or which overflows from a sump pump, sump pump well or any other device designed to remove water or water-borne material or any liquid or semi-liquid substance from the **residence premises**;
  c.  Water below the surface of the ground including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;
  d.  Water which is released, overflows or escapes from a dam, levee or other structure designed to contain surface water; or
  e.  Damage to the interior of a building from rain, snow or sleet, unless the wall or roof of the building has first sustained a loss from a cause of loss covered in Section I, that created an opening through which the rain, snow or sleet entered;
whether caused by or resulting from human, animal, plant or naturally occurring forces, or however caused.

Direct loss by fire, explosion or theft resulting from water damage is covered.
(This is Exclusion 1.c. in **our** Premier and Premier Plus Homeowners Policies.)

8. **Intentional Loss** is deleted and replaced by the following:

8. **Intentional Loss**.
   a. **We** will not pay for loss or damage arising out of any act committed:
      (1) By or at the direction of an **insured**, and
      (2) With the intent to cause a loss.
   b. However, with regard to loss by a fire that is set intentionally, this exclusion will not apply to deny payment to an innocent co-**insured** who did not set the fire or otherwise participate in the cause of loss.
   c. If **we** pay a claim pursuant to Paragraph 8.b., **our** payment to the **insured** shall be reduced by the proper interest attributable to the **insured** that set the fire or otherwise participated in the cause of loss,  less any payments **we** first made to a mortgagee or other party with a legal secured interest in the property.  In the case of multiple named **insureds**, an innocent **insured** shall receive his proportionate share of the policy proceeds.  In no event will **we** pay more than the limit of liability.

(This is exclusion 1.h. in **our** Premier and Premier Plus Homeowners Policies.)

Item 9. is added as follows:

9.  **We** do not insure for loss, by a covered peril, that alters the physical appearance of the **metal roof covering** but does not result in the penetration of water through the **metal roof covering** or does not result in the failure of the **metal roof covering** to perform its intended function of keeping out the elements over an extended period of time.

**Metal roof covering** means the metal roof material exposed to the weather, the underlayments applied for moisture protection and all flashings required in the replacement of a **metal roof covering**.

**We** do insure for loss, by a covered peril, to **metal roof coverings** that will allow the penetration of water through the **metal roof covering** or that results in the failure of the **metal roof covering** to perform its intended function of keeping out the elements over an extended period of time.

(This is Exclusion 3. in **our** Premier and Premier Plus Policies.)

Item 10. is added as follows:

## SECTION I - CONDITIONS

2.  **An Insured's Duties After Loss**

The first paragraph of Item g. is deleted and replaced by the following:

Send to **us your** signed, sworn proof of loss, using the form **we** provide, which sets forth, to the best of **your** knowledge and belief:

The following paragraph has been added to Item g.:

This proof of loss must be sent within:
   (1) 180 days after **our** request, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, for those areas within the declaration; however, this 180 day period does not commence until the state of emergency or disaster has ended and **you** have access to **your** property; or
   (2) 60 days after **our** request in all other cases.

3.  **Loss Settlement**

For Premier and Premier Plus Policies, Item b.(1)(b) is deleted and replaced by the following:
   (b) The replacement cost of that part of the building damaged with material of like kind and quality and use on the same premises; or

8.  **Suit Against Us** is deleted and replaced by the following:

8.  **Suit Against Us**.  No action can be brought unless the policy provisions have been fully complied with and the action is started within two years after the date of loss.

9.  **Our Option** is deleted and replaced by the following:

9.  **Our Option**.  If **we** give **you** written notice within 30 days after **we** receive **your** signed, sworn proof of loss, **we** may repair or replace any part of the damaged property with like kind and quality, at **our** option.

CO 01 17 02 08

10. **Loss Payment** is deleted and replaced by the following:

10. **Loss Payment**. **We** will adjust all losses with **you**. **We** will pay **you** unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable within 30 days on all undisputed claims after **we** receive satisfactory proof of loss. In the event of a dispute, loss will be payable within 30 days on any undisputed portion of the claim after **we** receive satisfactory proof of loss.

12. **Mortgage Clause**

Item b. is deleted and replaced by the following:
    b.   Pays any premium due under this policy when notified if **you** have neglected to pay the premium; and

The sentence "If **we** decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect." is deleted and replaced by the following:

If this policy is cancelled by **us**, the mortgagee will be notified:
    a.   At least 10 days before the date cancellation takes effect if **we** cancel for nonpayment of premium; or
    b.   At least 30 days before the date cancellation takes effect if **we** cancel for any other reason.

If the policy is not renewed by **us**; the mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur, shall be mailed like notice.

## SECTION II - LIABILITY COVERAGES

Under **COVERAGE E - PERSONAL LIABILITY** items 1. and 2. are deleted and replaced by the following:

1.   Pay up to **our** limit of liability for damages, other than punitive or exemplary damages, for which the **insured** is legally liable; and
2.   Provide a defense at **our** expense by counsel of **our** choice, even if the suit is groundless, false and fraudulent. **We** may investigate and settle any claim or suit that **we** decide is appropriate. **Our** duty to defend ends when **our** limit of liability for the coverage has been exhausted by a payment of a judgment or a settlement.

## SECTION II - EXCLUSIONS

Item 1.a. is deleted and replaced by the following:

1.a.(1) With respect to loss caused by fire:
    (a)  Which is expected or intended by the **insured** even if the **bodily injury** or **property damage**:
        (i)  Is of a different kind, quality, or degree than initially expected or intended; or
        (ii)  Is sustained by a different person, entity, real or personal property, than initially expected or intended.
    However, this Exclusion 1.a.(1)(a) does not apply to **bodily injury** resulting from the use of reasonable force by the **insured** to protect persons or property.
   (2) With respect to a loss caused by a peril other than fire and with respect to all **insureds** covered under this policy:
    (a)  Which is expected or intended by one or more **insureds** even if the **bodily injury** or **property damage**:
        (i)  Is of a different kind, quality, or degree than initially expected or intended; or
        (ii)  Is sustained by a different person, entity, real or personal property, than initially expected or intended.
    However, this Exclusion 1.a.(2)(a) does not apply to **bodily injury** resulting from the use of reasonable force by one or more **insureds** to protect persons or property.

Item 1. f. is deleted and replaced by the following:

1.f. Arising out of:
   (1) The ownership, maintenance, use, loading or unloading of any **motorized vehicles** or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured.**
   (2) The entrustment by an **insured** of any **motorized vehicles** or any other motorized land conveyance to any person.
This exclusion does not apply to:
   (1) A trailer not towed by or carried on a motorized land conveyance.
   (2) A motorized land conveyance designed for recreational use off public roads that is not subject to any **motorized vehicle registration** and;
    (a)  Not owned by an **insured**; or
    (b)  Owned by an **insured** and on an **insured location**;
   (3) A motorized golf cart when used to play golf on a golf course;
   (4) A vehicle or conveyance that is not subject to any **motorized vehicle registration** which is:
    (a)  Used to service an **insured's** residence;
    (b)  Designed for assisting the handicapped; or
    (c)  In dead storage on an **insured location**;

Item 1. g. (3) is deleted in its entirety.
Item 1. h. (3) is deleted in its entirety.

CO 01 17 02 08

Exclusions 1.m., 1.n. and 1.o. are added as follows:

1.m.    Arising out of the liability assumed by the **insured** under any contract or agreement except any indemnity obligation assumed by the **insured** under a written contract directly relating to the ownership, maintenance or use of the premises.

1.n.    Arising out of the liability for claims made against the **insured** arising out of the sale or transfer of the insured premises or other real estate including but not limited to any claims made against the **insured** for fraud, misrepresentation, failure to disclose or any other claim made against the **insured** arising out of the sale or transfer of real estate.

1.o.    Arising out of the liability imposed for **punitive damages**, and/or attorney's fees, and/or exemplary damages, and/or damages for aggravating circumstances as may be described in the Wrongful Death Statute. **Punitive damages** are amounts of money awarded or imposed to punish or to make an example of a wrongdoer.

## SECTION II - CONDITIONS

Item 1. **Limit of Liability** is deleted and replaced by the following:

1.    **Limit of Liability.** Except as noted in the special limit below, **our** total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations.

**Our** applicable limit of liability is the same regardless of the number of **insureds,** claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence.**

**Our** total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

Item 6. **Suit Against Us** is deleted and replaced by the following:

6.    **Suit Against Us.**

a.    No action can be brought against **us** by an **insured** unless there has been compliance with the policy provisions.
b.    A person or organization may bring a suit against **us** including, but not limited to a suit to recover on an agreed settlement or on a final judgment against an **insured**; but **we** will not be liable for damages that are not payable under the terms of the Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by **us**, the **insured** and the claimant or the claimant's legal representative.

## SECTIONS I AND II - CONDITIONS

2.    **Concealment or Misrepresentation** is deleted and replaced by the following:

2.    **Concealment or Fraud.**

a.    Under **SECTION I - PROPERTY COVERAGES**, with respect to the **insured** covered under this policy, **we** provide no coverage for loss under **SECTION I - PROPERTY COVERAGES** if, whether before or after a loss, the **insured** has:
    (1) Intentionally concealed or misrepresented any material fact or circumstance with intent to deceive;
    (2) Engaged in fraudulent conduct with intent to deceive; or
    (3) Made false statements in the negotiation of this contract with intent to deceive;
relating to this insurance.
b.    Under **SECTION II - LIABILITY COVERAGE**, **we** do not provide coverage to the **insured** who, whether before or after a loss, has:
    (1) Intentionally concealed or misrepresented any material fact or circumstance with intent to deceive;
    (2) Engaged in fraudulent conduct with intent to deceive; or
    (3) Made false statements in the negotiation of this contract with intent to deceive;
relating to this insurance.

5.    **Cancellation.**  Paragraphs b. and d. are deleted and replaced by the following:

b.    **We** may cancel this policy only for the reasons stated below by letting **you** know in writing of the date cancellation takes effect.  This cancellation notice may be delivered to **you**, or mailed to **you** at **your** mailing address shown in the Declarations.  Proof of mailing will be sufficient proof of notice.

(1) When **you** have not paid the premium, regardless of the period of time this policy has been in effect, **we** may cancel at any time by letting **you** know at least 10 days before the date cancellation takes effect.

Rachelle Ray Robin                          P82612571  5

CO 01 17 02 08

(2)  When this policy has been in effect for less than 60 days and is not a renewal with **us**, **we** may cancel for any reason by letting **you** know at least 30 days before the date cancellation takes effect.

(3)  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with **us** except as provided in item b.(5) below, **we** may cancel:

(a)  If there has been a material misrepresentation of fact which if known to **us** would have caused **us** not to issue the policy; or

(b)  If the risk has changed substantially since the policy was issued.

This can be done by letting **you** know at least 30 days before the date cancellation takes effect.

(4)  When this policy is written for a period of:

(a)  More than one year; or

(b)  Three years or less;

**we** may cancel for any reason at anniversary by letting **you** know at least 30 days before the date cancellation takes effect.

(5)  When this policy has been in effect and renewed for more than three years, **we** may cancel for any one of the following:

(a)  If **you** have committed fraud;

(b)  If the insured risk has undergone a material change;

(c)  If the continuation of this policy endangers **our** solvency; or

(d)  If **you** have filed two or more claims within three years.  This does not include claims filed as a result of any loss incurred or arising from an Act of God, which is due directly to forces of nature and exclusively without human intervention.

This can be done by letting **you** know at least 30 days before the date cancellation takes effect.

**We** will not, however, cancel this policy, regardless of the period of time this policy has been in effect, based solely upon a loss caused by an Act of God.  An Act of God means an incident due directly to natural causes and exclusively without human intervention.

d.   If this policy is cancelled, **we** will return any premium refund due, subject to Paragraphs (1) and (2) below.  The cancellation will be effective even if **we** have not made or offered a refund.

(1)  If **you** cancel this policy, **we** will refund the return premium, if any, within 30 days after the date cancellation takes effect.  The return premium shall be computed on a pro rata basis, subject to the minimum premium requirements.  After 30 days from written notice of cancellation, any appropriate return premium will be accompanied with interest at the rate of one and one-half percent per month of the amount of the refund.

(2)  If **we** cancel this policy, and the return premium is not refunded with the notice of cancellation, **we** will refund it within 30 days after the date cancellation takes effect.  The return premium shall be computed on a pro rata basis.  After 30 days from written notice of cancellation, any appropriate return premium will be accompanied with interest at the rate of one and one-half percent per month of the amount of the refund.

6.   **Nonrenewal** is deleted and replaced by the following:

6.   **Nonrenewal.**

a.   **We** may elect not to renew this policy, subject to the provisions of paragraphs b. and c. below.  **We** may do so by delivering to **you** or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy.  Proof of mailing will be sufficient proof of notice.

b.   If this policy has been in effect and renewed with **us** for more than three years, **we** will not exercise **our** right of nonrenewal except:

(1)  When  **you** have not paid the premium;

(2)  If **you** have committed fraud;

(3)  If the insured risk has undergone a substantial change;

(4)  If the continuation of this policy endangers **our** solvency; or

(5)  If **you** have filed two or more claims within three years.  This does not include claims filed as a result of any loss incurred or arising from an Act of God, which is due directly to forces of nature and exclusively without human intervention.

c.   **We** will not, however, exercise **our** right of nonrenewal, regardless of the period of time this policy has been in effect with **us**, based solely upon a loss caused by an Act of God.  An Act of God means an incident due directly to natural causes and exclusively without human intervention.

**CO 01 17 02 08**

CO 01 17 02 08

8. **Subrogation**.  The following paragraph is added:

If **we** pay an **insured** for a loss caused by another **insured** who intentionally commits, or directs another to commit, any act that results in loss by fire, the rights of the **insured** to recover damages from the **insured** who intentionally committed, or directed another to commit, such an act are transferred to **us** to the extent of **our** payment.  The **insured** may not waive such rights.

10. **Terms of Policy Conformed to Statutes** is added as follows:

10. **Terms of Policy Conformed to Statutes**.

Terms of this policy which are in conflict with the statutes of the state in which this policy is issued are hereby amended to conform to the statutes.

All other provisions of this policy apply.

**AUTO CLUB FAMILY INSURANCE COMPANY**

_____
Secretary

_____
President

**Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 2007**

CO 01 17 02 08

Rachelle Ray Robin

P82612571 5

Page 7 of 7

CO 04 96 07 05



## <u>NO</u> SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS

## <u>LIMITED</u> SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

If an **insured** regularly provides home day care services to a person or persons other than **insureds** and receives monetary or other compensation for such services, that enterprise is a **business.** Mutual exchange of home day care services, however, is not considered compensation.   The rendering of home day care services by an **insured** to a relative of an **insured** is not considered a **business.**

Therefore, with respect to a home day care enterprise which is considered to be a **business,** this policy:

1.  Does not provide **Section II - Liability Coverages** because a **business** of an **insured** is excluded under exclusion 1.b. of **Section II - Exclusions**;

2.  Does not provide **Section I - Coverage B** coverage where other structures are used in whole or in part for **business;**

3.  Limits coverage for property used on the **residence premises** for the home day care enterprise to $2,500, because **Coverage C - Special Limits of Liability** - item 8. imposes that limit on **business** property on the **residence premises.** (Item 8. corresponds to item 7. in **our** Premier Select Policy.);

4.  Limits coverage for property used away from the **residence premises** for the home day care enterprise to $250, because **Coverage C - Special Limits of Liability** item 9. imposes that limit on **business** property away from the **residence premises.** Special Limit of Liability item 9. does not apply to adaptable electronic apparatus as described in Special Limit of Liability items 10. and 11. (Items 9., 10. and 11. correspond to items 8., 9. and 10. respectively in **our** Premier Select Policy.)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

**AUTO CLUB FAMILY INSURANCE COMPANY**

_____
Secretary

_____
President

**Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1990**

CO 04 96 07 05



# Notice of Privacy Policy

**Automobile Club of Missouri**
**Automobile Club Inter-Insurance Exchange**
**Auto Club Family Insurance Company**
**Club Insurance Agency, Inc.**

AAA Missouri serves AAA members in Missouri, Arkansas, Louisiana, Mississippi, Eastern Kansas, Southern Illinois, Southern Indiana, Oklahoma and Alabama.

This notice will explain AAA's policies for collecting, using, securing and sharing nonpublic personal information ("customer information") that you have provided to us or that we have acquired from other sources. After you read this notice, if you have any questions or comments, please contact us by mail, telephone or e-mail.

## Our Privacy Principles

- We do not sell customer information.

- We value you as a customer and take your personal privacy very seriously.

- We respect your right to privacy. If you notify us of your decision to opt out of receiving AAA solicitations and having your personal information shared with non-affiliated companies, we will gladly honor your request.

- We share customer information within our family of companies (including other affiliates of the American Automobile Association) to improve our service to you.

- We sometimes share customer information with other reputable organizations (non-affiliated companies) with whom AAA has a contractual relationship or joint marketing agreement and whose products and services we believe may suit your needs.

- We do not provide customer information directly to such organizations but to third party processors (service bureaus).

- We have a contractual agreement with third party processors that stipulates that they cannot use your personal information for any other purpose than to process solicitations approved by AAA.

- We afford prospective and former customers the same protections as existing customers with respect to use of personal information.

## Information we may collect

We collect and use information we believe is necessary to administer our business, to advise you about our products and services and to provide you with customer service. We may collect and maintain several types of customer information needed for these purposes. The types of information we may collect and how we gather it include:

- From you, we gather such information as your address, telephone number and e-mail address (from applications for AAA membership, AAA insurance or on other forms, through telephone interviews, your AAA agent and our Customer Care Center).

- From your transactions with us, we gather such information as your payment history, underwriting and claim documents.

- From non-AAA companies, we gather such information as your age, vehicles you own, your driving record and claim history. And from consumer reporting agencies, we gather such information as your credit history.

## How we use the information

We use customer information to provide your membership benefits, underwrite your policies, process your claims, ensure proper billing, service your accounts and offer you other AAA products.

**(over)**

**Information disclosure**

We share information about our transactions and experiences with you within our AAA family of companies and with AAA agents to better serve you and to assist in meeting your current product and service needs. We may also disclose customer information about you to persons or organizations inside or outside our family of companies as permitted or required by law, including companies that perform marketing services for us or with whom we have joint marketing agreements. These agreements allow us to provide a broader selection of insurance and financial products to you. We share customer information as necessary to provide service to you and to protect you against fraud and unauthorized transactions.

**Your choice to share information**

There are two types of information sharing--information sharing within AAA's family of companies and information sharing outside of AAA. The choice in the Special Notice, which follows, applies only to sharing your personal information outside AAA. If you request that your information not be shared, we will discontinue sharing your information with non-affiliated companies. We may continue to share your information within the AAA family of companies.

**Special notice regarding sharing your personal information**

This notice does not apply to sharing of information within AAA that involves your transactions or experiences with us.

What information we share: Unless you tell us not to, we may share information such as your name, address, phone number or date of birth that was obtained from your AAA membership or insurance application or other forms we use within our AAA family of companies; or information obtained from outside companies such as your driving records.

Why we share: We may share information about you within the AAA family of companies to enhance our service to you, to underwrite your policies, to measure your interest in our products and services, to improve existing products and develop new ones, and to monitor customer trends. We may share information outside AAA in order to offer AAA-endorsed products and services that we believe may suit your needs.

Who we share with: We may share information within the AAA family of companies and with AAA agents, as well as certain non-affiliated companies that process offers of AAA-endorsed products and services to you.

If you prefer that we not share information, please contact us by mail, telephone or e-mail at the address or phone number below. Your choice also will apply to your associate members and joint account and policy holders.

**How we protect customer information**

We maintain physical, electronic and organizational safeguards to protect customer information. We continually review our policies and practices, monitor our computer networks and test the strength of our security in order to help us ensure the safety of customer information.

If you have questions or comments about our Privacy Policy, please contact us at the following address or phone number:

- Write us at: Privacy Policy Inquiries, AAA Missouri, 12901 N. Forty Drive, St. Louis, MO 63141.
- Phone us at: 1-800-222-7623 ext. 7950.
- Send e-mail to: customercare@aaamissouri.com.

POLICY NUMBER: P82612571

CO 03 12 07 05



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE
**(All Forms Except Premier Renters and Premier Condominium Owners Policies)**

For the premium charged, **we** will pay only that part of the total of the loss for all **Section I - Property Coverages** that exceeds the windstorm or hail percentage deductible stated in this endorsement. This deductible applies in the event of direct physical loss to property covered under this policy caused directly or indirectly by windstorm or hail. Such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss. No other deductible provision in the policy applies to direct physical loss caused by windstorm or hail.

In determining the amount, if any, that **we** will pay for loss or damage, **we** will deduct an amount equal to   3%      * of the limit of liability that applies to **Coverage A - Dwelling**, in the policy to which this endorsement is attached.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

**AUTO CLUB FAMILY INSURANCE COMPANY**

_____
Secretary

_____
President

**Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1993**

CO 03 12 07 05

Rachelle Ray Robin                    P82612571  5

CO 04 16 07 05



# PREMISES ALARM OR FIRE PROTECTION SYSTEM

For a premium credit, **we** acknowledge the installation of an alarm system or automatic sprinkler system approved by **us** on the **residence premises**. **You** agree to maintain this system in working order and to let **us** know promptly of any change made to the system or if it is removed.

**AUTO CLUB FAMILY INSURANCE COMPANY**

_____
Secretary

_____
President

**Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1990**

CO 04 16 07 05

CO 00 12 07 05



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, WET OR DRY ROT, OR
# BACTERIA COVERAGE - LOUISIANA

**DEFINITIONS**

The following definitions are added:

**"Fungi"**

a. **Fungi** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by **fungi**.

b. Under Section II, this does not include any **fungi** that are, are on, or are contained in, products or goods intended for consumption.

**"Bacteria"**

**Bacteria** means any type, kind or form of bacterium.

**SECTION I - PROPERTY COVERAGES**

**COVERAGE D - Loss of Use**

The following is added to Paragraph 1.

However, any expense due to **fungi,** wet or dry rot, or **bacteria** will not be paid in addition to any amount paid or payable under the Additional Coverage **Fungi, Wet or Dry Rot, or Bacteria**.

The following is added to Paragraph 2.

However, **Fair Rental Value** due to **fungi,** wet or dry rot, or **bacteria** will not be paid in addition to any amount paid or payable under the Additional Coverage **Fungi, Wet or Dry Rot, or Bacteria**.

**ADDITIONAL COVERAGES**

The following additional coverage is added:

12. **Fungi, Wet or Dry Rot, or Bacteria.** If a loss caused by a Peril Insured Against under Section I results in **fungi,** wet or dry rot, or **bacteria, we** will pay for:

a.  Remediation of the **fungi,** wet or dry rot, or **bacteria.** This includes payment for the reasonable and necessary cost to:

(1) Remove the **fungi,** wet or dry rot, or **bacteria** from covered property or to repair, restore or replace that property; and

(2) Tear out and replace any part of the building as needed to gain access to the **fungi,** wet or dry rot, or **bacteria.**

b   Any reasonable and necessary increase in living expense **you** incur so that **your** household can maintain its normal standard of living or loss of fair rental value if the **fungi,** wet or dry rot, or **bacteria** makes the **residence premises** not fit to live in. **We** do not cover loss or expense due to cancellation of a lease or agreement; and

c.  Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the **fungi,** wet or dry rot, or **bacteria**, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is reason to believe that there is the presence of  **fungi,** wet or dry rot, or **bacteria**.

**We** will pay under this additional coverage only if:

a.  The covered loss occurs during the policy period;

b.  All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

c.  **We** receive prompt notice of the covered cause of loss that is alleged to have resulted in **fungi,** wet or dry rot, or **bacteria**.

CO 00 01 07 05



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INFLATION GUARD ENDORSEMENT
### (AMENDS PREMIER HOMEOWNERS AND PREMIER PLUS HOMEOWNERS POLICIES)

It is agreed that the Limits of Liability specified in the Declarations of this policy for Coverages A, B and C shall be increased based on revisions in the Boeckh Residential Percent Change Factors.

To determine the limits of liability on a particular date, the latest available Factor level will be divided by the Factor level as of the effective date of this inflation coverage provision and the resulting factor multiplied by the limits of liability for Coverage A, Coverage B and Coverage C separately. In no event will limits of liability be reduced to less than shown in the policy or most recent renewal notice, whichever is greater.

All other provisions of this policy apply.

**AUTO CLUB FAMILY INSURANCE COMPANY**

_____
Secretary

_____
President

CO 00 01 07 05

CO 00 07 07 05



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## LOCK REPLACEMENT ENDORSEMENT

**We** will pay up to $200 to replace the exterior door lock or lock cylinder of the **residence premises** with a lock of like kind and quality when a key to the lock has been stolen during a theft of other personal property for which coverage is provided by this policy. The $200 limit is the most **we** will pay in any one loss regardless of the number of exterior door locks or lock cylinders.

**You** must report the theft to **us** and to the police within 72 hours after discovery.

The policy deductible does not apply to this coverage.

All other provisions of this policy apply.

**AUTO CLUB FAMILY INSURANCE COMPANY**

_____
Secretary

_____
President

**CO 00 07 07 05**

THIS POLICY BOOKLET, WITH T
DECLARATIONS CERTIFICATE A
ENDORSEMENTS, IF ANY, ISSUED TO FORM
PART THEREOF, COMPLETES THIS POLICY.

## READ YOUR POLICY CAREFULLY

This policy is a legal contract between you and us.

# YOUR PREMIER HOMEOWNERS POLICY -
## QUICK REFERENCE

DECLARATIONS CERTIFICATE
> Your Name
> Location of Your Residence
> Policy Period
> Coverages
> Amounts of Insurance
> Deductible

|  | Beginning On Page |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| SECTION I - PROPERTY COVERAGES | 3 |
| COVERAGE A - Dwelling | 3 |
| COVERAGE B - Other Structures | 3 |
| COVERAGE C - Personal Property | 4 |
| Special Limits of Liability | 4 |
| Property Not Covered | 6 |
| COVERAGE D - Loss Of Use | 7 |
| ADDITIONAL COVERAGES | 8 |
| Debris Removal | 8 |
| Reasonable Repairs | 9 |
| Trees, Shrubs and Other Plants | 9 |
| Fire Department Service Charge | 9 |
| Property Removed | 10 |
| Credit Card, Fund Transfer Card, Forgery and Counterfeit Money | 10 |
| Loss Assessment | 11 |
| Collapse | 11 |
| Glass or Safety Glazing Material | 12 |
| Landlord's Furnishings | 13 |
| Ordinance or Law | 15 |
| SECTION I - PERILS INSURED AGAINST | 16 |
| COVERAGE A - Dwelling and | 16 |
| COVERAGE B - Other Structures | 16 |
| COVERAGE C - Personal Property | 17 |
| SECTION I - EXCLUSIONS | 20 |

SECTION I - CONDITIONS                                22
   Insurable Interest and Limit of
     Liability                                      22
   An Insured's Duties After Loss                 22
   Loss Settlement                                24
   Loss to a Pair or Set                          25
   Glass Replacement                              25
   Appraisal                                      26
   Other Insurance                                26
   Suit Against Us                                26
   Our Option                                     26
   Loss Payment                                   26
   Abandonment of Property                        27
   Mortgage Clause                                27
   No Benefit to Bailee                           28
   Nuclear Hazard Clause                          28
   Recovered Property                             28
   Volcanic Eruption Period                       28

SECTION II - LIABILITY COVERAGES                      28
   COVERAGE E - Personal Liability                28
   COVERAGE F - Medical Payments to Others        29

SECTION II - EXCLUSIONS                               29

SECTION II - ADDITIONAL COVERAGES                     34
   Claim Expenses                                 34
   First Aid Expenses                             35
   Damage to Property of Others                   35
   Loss Assessment                                35

SECTION II - CONDITIONS                               36
   Limit of Liability                             36
   Severability of Insurance                      37
   Duties After Loss                              37
   Duties of an Injured Person -
     Coverage F - Medical Payments to Others    38
   Payment of Claim - Coverage F
     Medical Payments to Others                 38
   Suit Against Us                                38
   Bankruptcy of an Insured                       38
   Other Insurance - Coverage E -
     Personal Liability                         38

SECTION I AND II - CONDITIONS                    38
    Policy Period                            38
    Concealment or Misrepresentation         39
    Liberalization Clause                    39
    Waiver or Change of Policy
     Provisions                              39
    Cancellation                             39
    Nonrenewal                               40
    Assignment                               40
    Subrogation                              40
    Death                                    41

# HOMEOWNERS 3 — SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, **"you"** and **"your"** refer to the named insured shown in the Declarations and the spouse if a resident of the same household. **"We"**, **"us"** and **"our"** refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1.   **"Bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

2.   **"Business"** includes trade, profession or occupation.

3.   **"Insured"** means **you** and residents of **your** household who are:
   a.   **Your** relatives; or
   b.   Other persons under the age of 21 and in the care of any person named above.

Under Section II, **"insured"** also means:

   c.   With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by **you** or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without consent of the owner is not an **insured**;
   d.   With respect to any vehicle to which this policy applies:
      (1)   Persons while engaged in **your** employ or that of any person included in 3.a. or 3.b. above;

1

or

(2) Other persons using the vehicle on an **insured location** with **your** expressed consent.

4. **"Insured location"** means:

a. The **residence premises;**

b. The part of other premises, other structures and grounds used by **you** as a residence and:

(1) Which is shown in the Declarations; or

(2) Which is acquired by **you** during the policy period for **your** use as a residence;

c. Any premises used by **you** in connection with a premises in 4.a. and 4.b. above;

d. Any part of a premises:

(1) Not owned by an **insured;** and

(2) Where an **insured** is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an **insured;**

f. Land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured;**

g. Individual or family cemetery plots or burial vaults of an **insured;** or

h. Any part of a premises occasionally rented to an **insured** for other than **business** use.

5. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. **Bodily injury;** or

b. **Property damage.**

6. **"Property damage"** means physical injury to, destruction of or loss of use of tangible property.

7. **"Residence employee"** means:

a. An employee of an **insured** whose duties are related to the maintenance or use of the **residence premises,** including household or domestic services; or

b. One who performs similar duties elsewhere not related to the **business** of an **insured.**

8.    **"Residence premises"** means:

    a.    The one family dwelling, other structures, and grounds where **you** reside and which is shown as the **residence premises** in the Declarations; or

    b.    That part of any other building where **you** reside and which is shown as the **residence premises** in the Declarations.

**"Residence premises"** also means a two family dwelling where **you** reside in at least one of the family units and which is shown as the **residence premises** in the Declarations.

The term **reside**, as used in this definition, means continuous day-to-day occupancy.

# SECTION I - PROPERTY COVERAGES

## COVERAGE A — Dwelling
**We** cover:

1.    The dwelling on the **residence premises** shown in the Declarations, where **you** reside on a continuous day-to-day basis, including structures attached to the dwelling; and

2.    Materials and supplies located on or next to the **residence premises** used to construct, alter or repair the dwelling or other structures on the **residence premises**.

This coverage does not apply to land, including land on which the dwelling is located.

## COVERAGE B — Other Structures
**We** cover other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

**We** do not cover other structures:

1.    Used in whole or in part for **business**; or

3

2.    Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C — Personal Property

We cover personal property owned or used by an **insured** while it is anywhere in the world. At **your** written request, **we** will cover personal property owned by:

1.    Others while the property is on the part of the **residence premises** occupied by an **insured**; or

2.    A guest or a **residence employee**, while the property is in any residence occupied by an **insured**.

**Our** limit of liability for personal property usually located at an **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time **you** begin to move the property there.

## Special Limits of Liability

These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1.    $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2.    $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

4

This limit includes the cost to research, replace or resto
the information from the lost or damaged material.

3.    $1000 on watercraft, including their trailer
coverings, furnishings, equipment and outboard engines
motors.

4.    $1000 on trailers not used with watercraft.

5.    $1000 for loss by theft of jewelry, watches, fur
precious and semi-precious stones.

6.    $2000 for loss by theft of firearms.

7.    $2500 for loss by theft of silverware, silver-plate
ware, goldware, gold-plated ware and pewterware. Th
includes flatware, hollowware, tea sets, trays and trophie
made of or including silver, gold or pewter.

8.    $2500 on property, on the **residence premises**, use
at any time or in any manner for any **business** purpose.

9.    $250 on property, away from the **residence premise:**
used at any time or in any manner for any **busine:**
purpose. However, this limit does not apply to loss
adaptable electronic apparatus as described in Special Limi
10. and 11. below.

10.   $1000 for loss to electronic apparatus, while in
upon a motor vehicle or other motorized land conveyance
if the electronic apparatus is equipped to be operated t
power from the electrical system of the vehicle
conveyance while retaining its capability of being operate
by other sources of power. Electronic apparatus includes
        a.    Accessories and antennas; or
        b.    Tapes, wires, records, discs or other media;
for use with any electronic apparatus described in this iter
10.

11.   $1000 for loss to electronic apparatus, while not in
upon a motor vehicle or other motorized land conveyance
if the electronic apparatus:
        a.    Is equipped to be operated by power from th
        electrical system of the vehicle or conveyance whil
        retaining its capability of being operated by othe

sources of power;

b.    Is away from the **residence premises**; and

c.    Is used at any time or in any manner for any **business** purpose.

Electronic apparatus includes:

a.    Accessories and antennas; or

b.    Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item 11.

## Property Not Covered

**We** do not cover:

1.    Articles separately described and specifically insured in this or other insurance;

2.    Animals, birds or fish;

3.    Motor vehicles or all other motorized land conveyances. This includes:

a.    Their equipment and accessories; or

b.    Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

(1)    Accessories or antennas; or

(2)    Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item 3.b.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

**We** do cover vehicles or conveyances not subject to motor vehicle registration which are:

a.    Used to service an **insured's** residence; or

b.    Designed for assisting the handicapped;

4.    Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5.    Property of roomers, boarders and other tenants,

except property of roomers and boarders related to a **insured**;

6.   Property in an apartment regularly rented or held fc rental to others by an **insured**, except as provided i Additional Coverages 10.;

7.   Property rented or held for rental to others off th **residence premises**;

8.   **Business** data, including such data stored in:
      a.   Books of account, drawings or other pap records; or
      b.   Electronic data processing tapes, wires, record discs or other software media;
However, **we** do cover the cost of blank recording c storage media and of pre-recorded computer progran available on the retail market; or

9.   Credit cards or fund transfer cards except as provide in Additional Coverages 6.

**COVERAGE D — Loss Of Use**
The limit of liability for Coverage D is the total limit for a the coverages that follow.

1.   If a loss covered under this Section makes that part c the **residence premises** where **you** reside not fit to live ii **we** cover, at your choice, either of the following. Howeve if the **residence premises** is not **your** principal place c residence, **we** will not provide the option under paragrap b. below.
      a.   **Additional Living Expense**, meaning an necessary increase in living expenses incurred by yc so that **your** household can maintain its norm: standard of living; or
      b.   **Fair Rental Value**, meaning the fair rental valu of that part of the **residence premises** where yc reside less any expenses that do not continue while th premises is not fit to live in.

Payment under a. or b. will be for the shortest tim required to repair or replace the damage or, if yc permanently relocate, the shortest time required for yo household to permanently relocate elsewhere.

2.    If a loss covered under this Section makes that part of the **residence premises** rented to others or held for rental by **you** not fit to live in, **we** cover the:

> **Fair Rental Value**, meaning the fair rental value of that part of the **residence premises** rented to others or held for rental by **you** less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3.    If a civil authority prohibits **you** from use of the **residence premises** as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, **we** cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

**We** do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1.    **Debris Removal. We** will pay **your** reasonable expense for the removal of:

    a.    Debris of covered property if a Peril Insured Against, that applies to the damaged property, causes the loss; or

    b.    Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

**We** will also pay **your** reasonable expense, up to $500, for the removal from the **residence premises** of:

8

a.   **Your** tree(s) felled by the peril of Windstorm or Hail;

b.   **Your** tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

c.   A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most **we** will pay in any one loss regardless of the number of fallen trees.

2.   **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, **we** will pay the reasonable cost incurred by **you** for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, **we** will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a.   Does not increase the limit of liability that applies to the covered property;

b.   Does not relieve **you** of **your** duties, in case of a loss to covered property, as set forth in **SECTION I — CONDITION 2.d.**

3.   **Trees, Shrubs and Other Plants. We** cover trees, shrubs, plants or lawns, on the **residence premises,** for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises,** Vandalism or malicious mischief or Theft.

**We** will pay up to 5 % of the limit of liability that applies to the dwelling, for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. **We** do not cover property grown for **business** purposes.

This coverage is additional insurance.

4.   **Fire Department Service Charge. We** will pay up to $500 for **your** liability assumed by contract or agreement

for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. **We** do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5.    **Property Removed. We** insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6.    **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**
**We** will pay up to $500 for:
    a.    The legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;
    b.    Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name;
    c.    Loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and
    d.    Loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

**We** do not cover use of a credit card or fund transfer card:
    a.    By a resident of **your** household;
    b.    By a person who has been entrusted with either type of card; or
    c.    If an **insured** has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

**We** do not cover loss arising out of **business** use or

dishonesty of an **insured** or an employee of an **insured**.

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a.   **We** may investigate and settle any claim or suit that **we** decide is appropriate. **Our** duty to defend a claim or suit ends when the amount **we** pay for the loss equals **our** limit of liability.

b.   If a suit is brought against an **insured** for liability under the Credit Card or Fund Transfer Card coverage, **we** will provide a defense at **our** expense by counsel of **our** choice, subject to a. above.

c.   **We** have the option to defend at **our** expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage

7.   **Loss Assessment. We** will pay up to $1000 for your share of loss assessment charged during the policy period against **you** by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under **COVERAGE A – DWELLING**, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against **you** as owner or tenant of the **residence premises**

**We** do not cover loss assessments charged against **you** or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most **we** will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under **SECTIONS I AND II CONDITIONS**, does not apply to this coverage.

8.   **Collapse. We** insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a.   Perils Insured Against in **COVERAGE C – PERSONAL PROPERTY**. These perils apply to cov-

11

ered buildings and personal property for loss insure
by this additional coverage;

b.     Hidden decay;

c.     Hidden insect or vermin damage;

d.     Weight of contents, equipment, animals o
people;

e.     Weight of rain which collects on a roof; or

f.     Use of defective material or methods i
construction, remodeling or renovation if the collaps
occurs during the course of the constructior
remodeling or renovation.

Loss to an awning, fence, patio, pavemen , swimming poo
underground pipe, flue, drain, cesspool, septic tanl
foundation, retaining wall, bulkhead, pier, wharf or dock
not included under items b., c., d., e. and f. unless the los
is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinkin;
bulging or expansion.

This coverage does not increase the limit of liabilit
applying to the damaged covered property.

9.    **Glass or Safety Glazing Material.**

a.     We cover:

(1)    The breakage of glass or safety glazin
material which is part of a covered buildin;
storm door or storm window;

(2)    The breakage, caused directly by Ear
Movement, of glass or safety glazing materia
which is part of a covered building, storm doe
or storm window; and

(3)    The direct physical loss to covered proper
caused solely by the pieces, fragments o
splinters of broken glass or safety glazir
material which is part of a building, storm doe
or storm window.

b.     This coverage does not include loss:

(1)    To covered property which results becau;
the glass or safety glazing material has bee
broken, except as provided in a.(3) above; or

(2)    On the **residence premises** if the dwellir
has been vacant or unoccupied for more than i
consecutive days immediately before the los

except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this **ADDITIONAL COVERAGE 9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

10.   **Landlord's Furnishings. We** will pay up to $2500 for **your** appliances, carpeting and other household furnishings, in an apartment on the **residence premises** regularly rented or held for rental to others by an **insured**, for loss caused only by the following Perils Insured Against:

    a.   **Fire or lightning.**

    b.   **Windstorm or hail.** This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

    c.   **Explosion.**

    d.   **Riot or civil commotion.**

    e.   **Aircraft,** including self-propelled missiles and spacecraft.

    f.   **Vehicles.**

    g.   **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

    h.   **Vandalism or malicious mischief.**

    i.   **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

j.   **Weight of ice, snow or sleet** which causes damage to property contained in a building.

k.   **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:
>   (1)   To the system or appliance from which the water or steam escaped;
>   (2)   Caused by or resulting from freezing except as provided in the peril of freezing below; or
>   (3)   On the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises**.

In this peril, **a** plumbing system does not include a sump, sump pump or related equipment.

l.   **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system or an appliance for heating water.

**We** do not cover loss caused by or resulting from freezing under this peril.

m.   **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is unoccupied, unless **you** have used reasonable care to:
>   (1)   Maintain heat in the building; or
>   (2)   Shut off the water supply and drain the system and appliances of water.

n.   **Sudden and accidental damage from artificially generated electrical current.** This peril does not include loss to a tube, transistor or similar electronic component.

o.   **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most **we** will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

11. **Ordinance or Law.**

a. **You** may use up to 10% of the limit of liability that applies to COVERAGE A for the increased costs **you** incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. **You** may use all or part of this ordinance or law coverage to pay for the increased costs **you** incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. **We** do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

# SECTION I - PERILS INSURED AGAINST

## COVERAGE A — DWELLING and
## COVERAGE B — OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

   a.  Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless **you** have used reasonable care to:

      (1)  Maintain heat in the building; or
      (2)  Shut off the water supply and drain the system and appliances of water;

   b.  Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1)  Fence, pavement, patio or swimming pool;
      (2)  Foundation, retaining wall or bulkhead; or
      (3)  Pier, wharf or dock;

   c.  Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   d.  Vandalism and malicious mischief if the dwelling has been vacant or unoccupied for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   e.  Any of the following:

      (1)  Wear and tear, marring, deterioration;
      (2)  Inherent vice, latent defect, mechanical breakdown;
      (3)  Smog, rust or other corrosion, mold, wet or dry rot;
      (4)  Smoke from agricultural smudging or industrial operations;
      (5)  Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or

16

escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6)   Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7)   Birds, vermin, rodents or insects; or

(8)   Animals owned or kept by an **insured**.

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, **we** cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which this water escaped.

3.   Excluded under **SECTION I — EXCLUSIONS**.

4.   Which occurs at a time when the **residence premises** has been vacant or unoccupied by **you** for a period of time in excess of 60 consecutive days before the loss.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## COVERAGE C — PERSONAL PROPERTY

**We** insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in **SECTION I — EXCLUSIONS**.

1.   **Fire or lightning.**

2.   **Windstorm or hail.** This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through

this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors only while inside a fully enclosed building.

3.   **Explosion.**

4.   **Riot or civil commotion.**

5.   **Aircraft,** including self-propelled missiles an spacecraft.

6.   **Vehicles.**

7.   **Smoke,** meaning sudden and accidental damage fron smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8.   **Vandalism or malicious mischief.**

9.   **Theft,** including attempted theft and loss of propert from a known place when it is likely that the property ha been stolen.

This peril does not include loss caused by theft:
    a.   Committed by an **insured;**
    b.   In or to a dwelling under construction, or c materials and supplies for use in the construction unt the dwelling is finished and occupied; or
    c.   From that part of a **residence premises** rented b an **insured** to other than an **insured.**

This peril does not include loss caused by theft that occu off the **residence premises** of:
    a.   Property while at any other residence owned by rented to or occupied by an **insured,** except while a **insured** is temporarily living there.   Property of student who is an **insured** is covered while livin away from home if the student has been there at an time during the 45 days immediately before the los
    b.   Watercraft, and their furnishings, equipment an outboard engines or motors; or

c.   Trailers and campers.

**10.   Falling objects.** This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11.   Weight of ice, snow or sleet** which causes damage to property contained in a building.

**12.   Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a.   To the system or appliance from which the water or steam escaped;

b.   Caused by or resulting from freezing except as provided in the peril of freezing below; or

c.   On the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises.**

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

**13.   Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

**We** do not cover loss caused by or resulting from freezing under this peril.

**14.   Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is unoccupied, unless **you** have used reasonable care to:

a.   Maintain heat in the building; or

b.   Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.** This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

# SECTION I - EXCLUSIONS

1.   **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

    a.   **Ordinance or Law,** meaning any ordinance or law:

        (1)   Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion 1.a.(1) does not apply to the amount of coverage that may be provided for under ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

        (2)   The requirements of which result in a loss in value to property; or

        (3)   Requiring any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

        Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

    b.   **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; or any earth movement caused by man or man-made forces unless direct loss by:

        (1)   Fire; or

        (2)   Explosion;

ensues and then **we** will pay only for the ensuing loss
This exclusion does not apply to loss by theft.

c.   **Water Damage,** meaning:

(1)   Flood, surface water, waves, tidal water
overflow of a body of water, or spray from any
of these, whether or not driven by wind;

(2)   Water which backs up through sewers o
drains or which overflows from a sump; or

(3)   Water below the surface of the ground
including water which exerts pressure on o
seeps or leaks through a building, sidewalk
driveway, foundation, swimming pool or othe
structure.

Direct loss by fire, explosion or theft resulting fror
water damage is covered.

d.   **Power Failure,** meaning the failure of power o
other utility service if the failure takes place off th
**residence premises.** But, if the failure of power c
other utility service results in a loss, from a Per
Insured Against on the **residence premises, we** wi
pay for the loss or damage caused by that Per
Insured Against.

e.   **Neglect,** meaning neglect of the **insured** to us
all reasonable means to save and preserve property a
and after the time of a loss.

f.   **War,** including the following and an
consequence of any of the following:

(1)   Undeclared war, civil war, insurrection
rebellion or revolution;

(2)   Warlike act by a military force or militar
personnel; or

(3)   Destruction, seizure or use for a militar
purpose.

Discharge of a nuclear weapon will be deemed
warlike act even if accidental.

g.   **Nuclear Hazard,** to the extent set forth in th
Nuclear Hazard Clause of **SECTION I** -
**CONDITIONS.**

h.   **Intentional Loss,** meaning any loss arising out o
any act committed:

(1)   By or at the expressed or implied directic
of any **insured**; and

(2)   With the intent to cause a loss.

2.   **We** do not insure for loss to property described

Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

    a.   **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

    b.   **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

    c.   **Faulty, inadequate or defective:**

        (1)  Planning, zoning, development, surveying, siting;

        (2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        (3)  Materials used in repair, construction, renovation or remodeling; or

        (4)  Maintenance;

of part or all of any property whether on or off the **residence premises.**

## SECTION I - CONDITIONS

1.   **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, **we** will not be liable in any one loss:

    a.   To any **insured** for more than the amount of the **insured's** interest at the time of loss; or

    b.   For more than the applicable limit of liability.

2.   **An Insured's Duties After Loss.** In case of a loss to covered property, **you** must see that the following duties are complied with. We have no duty or obligation to provide any coverage under this policy unless **you** or any **insured** making a claim under this policy have fully complied with the following conditions and duties.

    a.   Give prompt notice to **us;**

    b.   Notify the police in case of loss by theft;

    c.   Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

    d.   Protect the property from further damage. I

repairs to the property are required, **you** must:

    (1)  Make reasonable and necessary repairs to protect the property; and

    (2)  Keep an accurate record of repair expenses;

e.    Prepare and submit to **us** within 60 days of the loss an inventory of damaged personal property using the forms **we** provide showing the quantity, description, place of purchase, date of purchase, original cost, actual cash value, replacement cost and amount **you** are claiming as a loss. **You** must attach all bills, receipts and related documents that justify the figures in the inventory;

f.    As often as **we** reasonably require:

    (1)  Show the damaged property;

    (2)  Provide **us** with records and documents **we** request and permit **us** to make copies; and

    (3)  Any **insured** must submit to examination under oath, as often as **we** may reasonably request, while not in the presence of any other **insured,** and sign the same;

g.    Send to **us,** within 60 days after **our** request, **your** signed, sworn proof of loss, using the form **we** provide, which sets forth, to the best of **your** knowledge and belief:

    (1)  The time and cause of loss;

    (2)  The interest of the **insured** and all others in the property involved and all liens on the property;

    (3)  Other insurance which may cover the loss;

    (4)  Changes in title or occupancy of the property during the term of the policy;

    (5)  Specifications of damaged buildings and detailed repair estimates;

    (6)  The inventory of damaged personal property described in 2.e. above;

    (7)  Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    (8)  Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

h.    All **insureds** must help **us** and cooperate with **us** in the investigation of any claim presented under this policy.

3.   **Loss Settlement.** Covered property losses are settled as follows:

    a.   Property of the following types:

      (1)  Personal property;

      (2)  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

      (3)  Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

    b.   Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

      (1)  If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, **we** will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the lesser of the following amounts:

         (a)  The limit of liability under this policy that applies to the building;

         (b)  The replacement cost of that part of the building damaged for like construction and use on the same premises; or

         (c)  The necessary amount actually spent to repair or replace the damaged building.

      (2)  If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, **we** will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

         (a)  The actual cash value of that part of the building damaged; or

         (b)  That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

      (3)  To determine the amount of insurance

required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

>   (a)   Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;
>
>   (b)   Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and
>
>   (c)   Underground flues, pipes, wiring and drains.

(4)   **We** will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, **we** will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

>   (a)   Less than 5% of the amount of insurance in this policy on the building; and
>
>   (b)   Less than $2500;

**we** will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5)   **you** may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. **You** may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4.   **Loss to a Pair or Set.** In case of loss to a pair or set **we** may elect to:

>   a.   Repair or replace any part to restore the pair or set to its value before the loss; or
>
>   b.   Pay the difference between actual cash value of the property before and after the loss.

5.   **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by

ordinance or law.

6.   **Appraisal.** If **you** and **we** fail to agree on the amount of loss, and any **insured** claiming coverage has complied with all other conditions of the policy, either may demand an appraisal of the loss in writing. If both parties agree in writing to appraisal, and to be bound by the results, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other. The two appraisers will choose a disinterested and impartial umpire. If they cannot agree upon an umpire within 15 days, **you** or **we**, upon written notice to the other, may request that the choice be made by a judge of a court of record in the state where the **residence premises** is located. The appraisers shall separately set the amount of the loss as defined in the policy. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:
  a.   Pay its own appraiser; and
  b.   Bear the other expenses of the appraisal and umpire equally.

7.   **Other Insurance.** If a loss covered by this policy is also covered by other insurance, **we** will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8.   **Suit Against Us.** No action can be brought unless the policy provisions have been fully complied with and the action is started within one year after the date of loss.

9.   **Our Option.** If **we** give **you** written notice within 30 days after **we** receive **your** signed, sworn proof of loss, **we** may repair or replace any part of the damaged property with like property, at **our** option.

10.  **Loss Payment. We** will adjust all losses with **you. We** will pay **you** unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after **we** receive **your** proof of loss, all

conditions of the policy of insurance have been compli
with and:

    a.    **We** reach an agreement with **you**;

    b.    There is an entry of a final judgment; or

    c.    There is a filing of an appraisal award with ι

11.  **Abandonment of Property. We** need not accept a
property abandoned by an **insured**.

12.  **Mortgage Clause.** The word mortgagee incluc
trustee.

If a mortgagee is named in this policy, any loss payat
under Coverage A or B will be paid to the mortgagee a
**you**, as interests appear. If more than one mortgagee
named, the order of payment will be the same as the orc
of precedence of the mortgages.

If **we** deny **your** claim, that denial will not apply to a va
claim of the mortgagee, if the mortgagee:

    a.    Notifies **us** in writing of any change
ownership, occupancy or substantial change in risk
which the mortgagee is aware;

    b.    Pays any premium due under this policy
demand if **you** have neglected to pay the premiu
and

    c.    Submits a signed, sworn statement of loss witl
60 days after receiving notice from **us** of **your** failι
to do so. Policy conditions relating to An Insureι
Duties After Loss, Appraisal, Suit Against Us a
Loss Payment apply to the mortgagee.

If **we** decide to cancel or not to renew this policy, ι
mortgagee will be notified at least 10 days before the dι
cancellation or nonrenewal takes effect.

If **we** pay the mortgagee for any loss and deny payment
**you**:

    a.    **We** are subrogated to all the rights of ι
mortgagee granted under the mortgage on ι
property; or

    b.    At **our** option, **we** may pay to the mortgagee ι
whole principal on the mortgage plus any accrు
interest. In this event, **we** will receive a f
assignment and transfer of the mortgage and

securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee t recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee. We** will not recognize an assignment or grant any coverage that benefits a person c organization holding, storing or moving property for a fe regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**
    a.   **Nuclear Hazard** means any nuclear reactior radiation or radioactive contamination, all whethe controlled or uncontrolled or however caused, or an consequence of any of these.
    b.   Loss caused by the nuclear hazard will not t considered loss caused by fire, explosion or smoke whether these perils are specifically named in c otherwise included within the Perils Insured Against i Section I.
    c.   This policy does not apply under Section I to lo: caused directly or indirectly by nuclear hazard, excep that direct loss by fire resulting from the nuclea hazard is covered.

15. **Recovered Property.** If **you** or **we** recover an property for which **we** have made payment under th policy, **you** or **we** will notify the other of the recovery.  / **your** option, the property will be returned to or retained b **you** or it will become **our** property. If the recovere property is returned to or retained by **you**, the loss paymer will be adjusted based on the amount **you** received for th recovered property.

16. **Volcanic Eruption Period.** One or more volcani eruptions that occur within a 72-hour period will t considered as one volcanic eruption.

# SECTION II - LIABILITY COVERAGES

## COVERAGE E—Personal Liability
If a claim is made or a suit is brought against an **insure** for damages because of **bodily injury** or **property damag** caused by an **occurrence** to which this coverage applies, w will:

28

1.    Pay up to **our** limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

2.    Provide a defense at **our** expense by counsel of our choice, even if the suit is groundless, false or fraudulent. **We** may investigate and settle any claim or suit that we decide is appropriate. **Our** duty to settle or defend ends when the amount **we** pay for damages resulting from the **occurrence** equals **our** limit of liability.

## COVERAGE F—Medical Payments to Others

**We** will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical x-ray, dental, ambulance, hospital, professional nursing prosthetic devices and funeral services. This coverage does not apply to **you** or regular residents of **your** household except **residence employee**s. As to others, this coverage applies only:

1.    To a person on the **insured location** with the permission of an **insured**; or

2.    To a person off the **insured location**, if the **bodily injury**:

    a.    Arises out of a condition on the **insured location** or the ways immediately adjoining;

    b.    Is caused by the activities of an **insured**;

    c.    Is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

    d.    Is caused by an animal owned by or in the care of an **insured**.

# SECTION II - EXCLUSIONS

1.    **Coverage E—Personal Liability** and **Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

    a.    Which is expected or intended by one or more **insureds**;

    b.    Arising out of or in connection with a **business**

29

engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business**;

c.    Arising out of the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply to the rental or holding for rental of an **insured location**:

> (1)   On an occasional basis if used only as a residence;
>
> (2)   In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or
>
> (3)   In part, as an office, school, studio or private garage;

d.    Arising out of the rendering of or failure to render professional services;

e.    Arising out of a premises:

> (1)   Owned by an **insured**;
>
> (2)   Rented to an **insured**; or
>
> (3)   Rented to others by an **insured**;
>
> that is not an **insured location**;

f.    Arising out of:

> (1)   The ownership, maintenance, use, loading or unloading of any motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured**;
>
> (2)   The entrustment by an **insured** of any motor vehicle or any other motorized land conveyance to any person; or
>
> (3)   Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a vehicle or conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

> (1)   A trailer not towed by or carried on a motorized land conveyance.
>
> (2)   A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
>
> > (a)   Not owned by an **insured**; or

(b)   Owned by an **insured** and on an **insured location**;

(3)   A motorized golf cart when used to play golf on a golf course;

(4)   A vehicle or conveyance not subject to motor vehicle registration which is:

> (a)   Used to service an **insured's** residence;
>
> (b)   Designed for assisting the handicapped; or
>
> (c)   In dead storage on an **insured location**;

g.   Arising out of:

(1)   The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2)   The entrustment by an **insured** of an excluded watercraft described below to any person; or

(3)   Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor or are sailing vessels, whether owned by or rented to an **insured**. This exclusion does not apply to watercraft:

(1)   That are not sailing vessels and are powered by:

> (a)   Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an **insured**;
>
> (b)   Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an **insured**;
>
> (c)   One or more outboard engines or motors with 25 total horsepower or less;
>
> (d)   One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an **insured**;
>
> (e)   Outboard engines or motors of more than 25 total horsepower owned by an

31

insured if:

    (i)    **You** acquire them prior to the policy period; and

        (a)    **You** declare them at policy inception; or

        (b)   **Your** intention to insure is reported to **us** in writing within 45 days after **you** acquire the outboard engines or motors.

    (ii)   **You** acquire them during the policy period.

This coverage applies for the policy period.

(2)   That are sailing vessels, with or without auxiliary power:

    (a)   Less than 26 feet in overall length;

    (b)   26 feet or more in overall length, not owned by or rented to an **insured**.

(3)   That are stored;

h.   Arising out of:

(1)   The ownership, maintenance, use, loading or unloading of an aircraft;

(2)   The entrustment by an **insured** of an aircraft to any person; or

(3)   Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i.   Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1)   Undeclared war, civil war, insurrection, rebellion or revolution;

(2)   Warlike act by a military force or military personnel; or

(3)   Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j.   Which arises out of the transmission of a communicable disease by an **insured**;

k.   Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l.   Arising out of the use, sale, manufacture,

delivery, transfer or possession by any person of
Controlled Substance(s) as defined by the Federal
Food and Drug Law at 21 U.S.C.A. Sections 811 and
812. Controlled Substances include but are not limited
to cocaine, LSD, marijuana and all narcotic drugs.
However, this exclusion does not apply to the
legitimate use of prescription drugs by a person
following the orders of a licensed physician.

Exclusions e., f., g. and h. do not apply to **bodily injury**
to a **residence employee** arising out of and in the course of
the **residence employee's** employment by an **insured**.

2. **Coverage E—Personal Liability,** does not apply to
   a.   Liability:
      (1)  For any loss assessment charged against
      **you** as a member of an association, corporation
      or community of property owners;
      (2)  Under any contract or agreement. However
      this exclusion does not apply to written contracts
         (a)   That directly relate to the ownership
         maintenance or use of an **insured location**
         or
         (b)  Where the liability of others is
         assumed by the **insured** prior to an
         **occurrence**;
      unless excluded in (1) above or elsewhere in the
      policy;
   b.   **Property damage** to property owned by the
**insured**;
   c.   **Property damage** to property rented to, occupied
or used by or in the care of the **insured**. This
exclusion does not apply to **property damage** caused
by fire, smoke or explosion;
   d.   **Bodily injury** to any person eligible to receive
any benefits:
      (1)  Voluntarily provided; or
      (2)  Required to be provided;
by the **insured** under any:
      (1)  Workers' compensation law;
      (2)  Non-occupational disability law; or
      (3)  Occupational disease law;
   e.   **Bodily injury** or **property damage** for which an
**insured** under this policy:
      (1)  Is also an **insured** under a nuclear energy

liability policy; or

(2)   Would be an **insured** under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1)   American Nuclear Insurers;

(2)   Mutual Atomic Energy Liability Underwriters;

(3)   Nuclear Insurance Association of Canada;

or any of their successors; or

f.   **Bodily injury to you** or an **insured** within the meaning of part a. or b. of **insured** as defined.

3.   **Coverage F—Medical Payments to Others**, does not apply to **bodily injury**:

a.   To a **residence employee** if the **bodily injury**:

(1)   Occurs off the **insured location**; and

(2)   Does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b.   To any person eligible to receive benefits:

(1)   Voluntarily provided; or

(2)   Required to be provided;

under any:

(1)   Workers' compensation law;

(2)   Non-occupational disability law; or

(3)   Occupational disease law;

c.   From any:

(1)   Nuclear reaction;

(2)   Nuclear radiation; or

(3)   Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4)   Any consequence of any of these; or

d.   To any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.


# SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1.   **Claim Expenses. We** pay:

a.   Expenses **we** incur and costs taxed against an **insured** in any suit **we** defend;

    b.    Premiums on bonds required in a suit **we** defend, but not for bond amounts more than the limit of liability for Coverage E. **We** need not apply for or furnish any bond;

    c.    Reasonable expenses incurred by an **insured** at **our** request, including actual loss of earnings (but no loss of other income) up to $50 per day, for assisting **us** in the investigation or defense of a claim or suit and

    d.    Interest on the entire judgment which accrues after entry of the judgment and before **we** pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2.    **First Aid Expenses. We** will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured**.

3.    **Damage to Property of Others. We** will pay, at replacement cost, up to $500 per **occurrence** for **property** damage to property of others caused by an **insured**.

**We** will not pay for **property damage**:

    a.    To the extent of any amount recoverable under Section I of this policy;

    b.    Caused intentionally by an **insured** who is 13 years of age or older;

    c.    To property owned by an **insured**;

    d.    To property owned by or rented to a tenant of an **insured** or a resident in **your** household; or

    e.    Arising out of:

        (1)    A **business** engaged in by an **insured**;

        (2)    Any act or omission in connection with premises owned, rented or controlled by an **insured**, other than the **insured location**; or

        (3)    The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

        This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**.

4.    **Loss Assessment. We** will pay up to $1000 for **your** share of loss assessment charged during the policy period against **you** by a corporation or association of property owners, when the assessment is made as a result of:

    a.    **Bodily injury** or **property damage** not excluded under Section II of this policy; or

    b.    Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

        (1)   The director, officer or trustee is elected by the members of a corporation or association of property owners; and

        (2)   The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against **you** as owner or tenant of the **residence premises**.

**We** do not cover loss assessments charged against **you** or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most **we** will pay for loss arising out of:

    a.    One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

    b.    A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1.    Section II—Coverage E—Personal Liability Exclusion 2.a.(1);

2.    Condition 1. Policy Period, under SECTIONS I AND II—CONDITIONS.


# SECTION II - CONDITIONS


1.    **Limit of Liability. Our** total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as

shown in the Declarations. This limit is the same regardless
of the number of **insureds**, claims made or persons injured.
All **bodily injury** and **property damage** resulting from any
one accident or from continuous or repeated exposure to
substantially the same general harmful conditions shall be
considered to be the result of one **occurrence**.

**Our** total liability under Coverage F for all medical expense
payable for **bodily injury** to one person as the result of one
accident will not be more than the limit of liability for
Coverage F as shown in the Declarations.

2.    **Severability of Insurance.** This insurance applies
separately to each **insured**. This condition will not increase
**our** limit of liability for any one **occurrence**.

3.    **Duties After Loss.** In case of an accident or
**occurrence**, the **insured** will perform the following duties
that apply. **You** will help **us** by seeing that these duties are
performed:

    a.    Give written notice to **us** as soon as is practical
which sets forth:

        (1)   The identity of the policy and **insured**;

        (2)   Reasonably available information on the
time, place and circumstances of the accident or
**occurrence**; and

        (3)   Names and addresses of any claimants and
witnesses;

    b.    Promptly forward to **us** every notice, demand,
summons or other process relating to the accident or
**occurrence**;

    c.    At **our** request, help **us**:

        (1)   To make settlement;

        (2)   To enforce any right of contribution or
indemnity against any person or organization who
may be liable to an **insured**;

        (3)   With the conduct of suits and attend
hearings and trials; and

        (4)   To secure and give evidence and obtain the
attendance of witnesses;

    d.    Under the coverage—Damage to Property
Others—submit to **us** within 60 days after the loss, a
sworn statement of loss and show the damaged
property, if in the **insured's** control;

    e.    The **insured** will not, except at the **insured's**

own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person—Coverage F—Medical Payments to Others.** The injured person or someone acting for the injured person will:

    a. Give **us** written proof of claim, under oath if required, as soon as is practical; and

    b. Authorize **us** to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of **our** choice when and as often as **we** reasonably require.

5. **Payment of Claim—Coverage F—Medical Payments to Others.** Payment under this coverage is not an admission of liability by an **insured** or **us**.

6. **Suit Against Us.** No action can be brought against us unless there has been full compliance with the policy provisions.

No one will have the right to join **us** as a party to any action against an **insured**. Also, no action with respect to Coverage E can be brought against **us** until the obligation of the **insured** has been determined by final judgment or agreement signed by **us**.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve **us** of **our** obligations under this policy.

8. **Other Insurance—Coverage E—Personal Liability** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy

# SECTION I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II, which occurs during the policy period.

2.   **Concealment or Misrepresentation.** This enti
policy will be void and all coverages forfeited, and payme
will not be made to any **insured**, if before or after a los
any **insured** has knowingly concealed or misrepresented a
material fact or circumstance relating to this insurance, t
insurance application, the loss, the presentation of the clai
or any other fact or circumstance material to t
investigation and adjustment of the claim.

3.   **Liberalization Clause.** If **we** make a change whi
broadens coverage under this edition of **our** policy witho
additional premium charge, that change will automatica
apply to **your** insurance as of the date **we** implement t
change in **your** state, provided that this implementation da
falls within 60 days prior to or during the policy peri
stated in the Declarations.

This Liberalization Clause does not apply to chang
implemented through introduction of a subsequent edition
**our** policy.

4.   **Waiver or Change of Policy Provisions.** A waiver
change of a provision of this policy must be in writing
**us** to be valid. **Our** request for an appraisal or examinatio
will not waive any of **our** rights.

5.   **Cancellation.**
    a.   **You** may cancel this policy at any time
returning it to **us** or by letting **us** know in writing
the date cancellation is to take effect.
    b.   **We** may cancel this policy only for the reaso
stated below by letting **you** know in writing of the d
cancellation takes effect. This cancellation notice m
be delivered to **you** or mailed to **you** at **your** maili
address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

    (1)   When **you** have not paid the premium,
may cancel at any time by letting **you** know
least 10 days before the date cancellation tak
effect.
    (2)   When this policy has been in effect for l
than 60 days and is not a renewal with **us**,
may cancel for any reason by letting **you** kn

at least 10 days before the date cancellation takes effect.

(3)   When this policy has been in effect for 60 days or more, or at any time if it is a renewal with **us**, **we** may cancel:

(a)   If there has been a material misrepresentation of fact which if known to **us** would have caused **us** not to issue the policy; or

(b)   If the risk has changed substantially since the policy was issued.

This can be done by letting **you** know at least 30 days before the date cancellation takes effect.

(4)   When this policy is written for a period of more than one year, **we** may cancel for any reason at anniversary by letting **you** know at least 30 days before the date cancellation takes effect.

c.   When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d.   If the return premium is not refunded with the notice of cancellation or when this policy is returned to **us**, **we** will refund it within a reasonable time after the date cancellation takes effect.

6.   **Nonrenewal**. **We** may elect not to renew this policy. **We** may do so by delivering to **you**, or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7.   **Assignment**. Assignment of this policy will not be valid unless **we** give **our** written consent.

8.   **Subrogation**. An **insured** may waive in writing before a loss all rights of recovery against any person.   If not waived, **we** may require an assignment of rights of recovery for a loss to the extent that payment is made by **us**.

If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with **us**.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9.    **Death.** If any person named in the Declarations or th
spouse, if a resident of the same household, dies; **we** insu
the legal representative of the deceased, but only wi
respect to the premises and property of the decease
covered under the policy at the time of death.

**Insured** includes:

   a.    Any member of **your** household who is a
   **insured** at the time of **your** death, but only while
   resident of the **residence premises**; and

   b.    With respect to **your** property, the person havin
   proper temporary custody of the property un
   appointment and qualification of a legal representativ

In Witness Whereof, we have caused this policy to l
executed and attested, and, if required by state law, th
policy shall not be valid unless countersigned by o
authorized representative.

_____    Secre

_____    Presi

Please keep your Declarations Certificates and
Endorsements with your policy.

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.

Copyright, Insurance Services Office, Inc. 1995