## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

Case No. 09-8074

GENERAL FIDELITY INSURANCE
COMPANY,

CIV-RYSKAMP

MAGISTRATE JUDGE
VITUNAC

       Plaintiff,

v.

KATHERINE L. FOSTER, an individual;
NORTHSTAR HOLDINGS, INC., a Florida
corporation; NORTHSTAR HOMES, INC.,
a Florida corporation; and NORTHSTAR
HOLDINGS AT B & A, LLC, a Florida
corporation,



       Defendants.

_____/

### COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff, GENERAL FIDELITY INSURANCE COMPANY ("GENERAL FIDELITY"), and hereby files this Complaint for Declaratory Judgment and alleges as follows:

### Parties, Jurisdiction, Applicable Law and Venue

1.    This is an action for declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights surrounding questions of actual controversy that presently exist between Plaintiff and Defendants.

2.    Venue is proper in the West Palm Beach Division of the Southern District of Florida pursuant to 28 U.S.C. § 1391.

**EXHIBIT**

B

Case 2:09-md-02047-EEF-MBN Document 4506-4 Filed 07/19/10 Page 2 of 50
Case 9:09-cv-80743-KMM Document 1 Entered on FLSD Docket 05/18/2009 Page 2 of 18

3.     GENERAL FIDELITY is a corporation organized and existing under the laws of California with its principal place of business in North Carolina, making GENERAL FIDELITY a citizen of the States of California and North Carolina.

4.     At all times material to this action, GENERAL FIDELITY was authorized to transact business in the state of Florida and submits itself to the jurisdiction and venue of this Court.

5.     Defendant Katherine Foster ("FOSTER") is an individual domiciled in Palm Beach County, Florida, and a citizen of Florida. Defendant is subject to the jurisdiction and venue of this Court.

6.     Defendant NORTHSTAR HOLDINGS, INC. is a Florida for-profit corporation with its principal place of business in Palm Beach County, Florida. Defendant is subject to the jurisdiction and venue of this Court.

7.     Defendant NORTHSTAR HOMES, INC. is a Florida for-profit corporation with its principal place of business in Palm Beach County, Florida. Defendant is subject to the jurisdiction and venue of this Court.

8.     Defendant NORTHSTAR HOLDINGS AT B & A, LLC is a Florida for-profit corporation with its principal place of business in Palm Beach County, Florida. Defendant is subject to the jurisdiction and venue of this Court.

9.     The Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332(a) because it is a civil action in which the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

10. The issues in controversy in this action should be determined under the laws of Florida because the parties to the insurance contracts, GENERAL FIDELITY, NORTHSTAR HOLDINGS, INC., and NORTHSTAR HOMES, INC., entered into the insurance contracts in Florida.

## Dispute at issue

11. Defendant FOSTER has filed a putative class action in this Court, case number 9:09-cv-80535-JIC. Complaint attached as EXHIBIT A.

12. Defendant FOSTER alleges her lawsuit is a putative class action because: (1) she believes that Class Members number in at least the thousands; (2) common questions of fact and law exist as to all members of the Class; (3) her claims are typical of the claims of the Class; and (4) she is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the members of the Class she seeks to represent. See EXHIBIT A at ¶¶ 106-109.

13. The proposed claims of the putative class members allegedly exceed the sum or value of $5 million in the aggregate. See EXHIBIT A at ¶ 7.

14. Defendant FOSTER alleges that the NORTHSTAR Defendants built her home in approximately 2006 located at 8777 Cobblestone Preserve Court in Boynton Beach, Florida and used defective drywall. See EXHIBIT A at ¶ 9.

15. Defendant NORTHSTAR HOLDINGS at B & A, LLC. was the general contractor and entered into a subcontract agreement with Precision Drywall, Inc. for that subcontractor to furnish all labor, supervision, tools and equipment with respect to drywall

3

work at Cobblestone Creek. Cobblestone Creek Subcontract Agreement is attached as
EXHIBIT B.

16.    Defendant FOSTER is suing Defendant NORTHSTAR HOMES, INC.,
NORTHSTAR HOLDINGS, INC. and other defendants for bodily injuries, property damage,
and other damages she allegedly sustained as a result of defective drywall in her home.
See EXHIBIT A.

17.    Defendant FOSTER alleges that the defective drywall emitted various sulfide
gases and/or other chemicals through "off-gasing" that created noxious, "rotten egg-like"
odors, causing bodily injury and property damage. See EXHIBIT A at ¶ 2.

18.    Defendant FOSTER alleges in her lawsuit that "[a]s a direct and proximate
result of Defendants' actions and omissions, Plaintiff's and the Class Members' homes and
bodies been exposed to Defendants' drywall and the corrosive and harmful effects of the
sulfide gases and other chemicals being released from these proven hazardous
substances." See EXHIBIT A at ¶ 98.

19.    Defendant FOSTER alleges, among other things, negligence against the
NORTHSTAR Defendants, including that they were negligent and breached their duty to
exercise reasonable care in the supply, inspection, selling, and installation, including a duty
to adequately warn, of the defective drywall. See EXHIBIT A at ¶ 117.

20.    The following counts are in Defendant FOSTER's putative class action suit:

● Count I Negligence (Against All Defendants)
● Count II Negligence Per Se (Against All Defendants)
● Count III Strict Liability (Against All Defendants)
● Count IV Breach of Express Warranty (Against All Defendants)

4

- Count V Breach of Implied Warranties (Against All Defendants)

- Count VI Fraudulent Concealment (Against All Defendants)

- Count VII Fraudulent Misrepresentation (Against All Defendants)

- Count VIII Negligent Misrepresentation (Against all Defendants)

- Count IX Unjust Enrichment (Against All Defendants)

- Count X Breach of Contract (Against Northstar Homes)

- Count XI Private Nuisance (Against All Defendants)

- Count XII Equitable Relief, Injunctive Relief and Medical Monitoring

- Count XIII Violation of the Florida Deceptive and Unfair Trade Practices Act (All Defendants)

- Count XIV Breach of Implied Warranty of Merchantability (All Defendants)

- Count XV Breach of Implied Warranty of Fitness for a Particular Purpose (All Defendants)

*See* EXHIBIT A.

## **The Policies**

21.     Plaintiff GENERAL FIDELITY issued to Defendant NORTHSTAR HOLDINGS, INC. a commercial general liability policy, policy number BAG0002215-00 with effective dates of coverage from October 22, 2006 to October 22, 2007 ("First Policy"). A copy of the policy is attached as EXHIBIT C.

22.     The First Policy lists NORTHSTAR HOLDINGS AT B & A, LLC as a "supplemental – named insured." See EXHIBIT C.

23.     Plaintiff GENERAL FIDELITY issued to Defendant NORTHSTAR HOMES, INC. a commercial general liability policy, policy number BAG0004973-00 with effective

5

dates of coverage from October 22, 2007 to October 22, 2008 ("Second Policy"). A copy of the policy is attached as EXHIBIT D.

24.     The Second Policy lists NORTHSTAR HOLDINGS, INC. and NORTHSTAR HOLDINGS AT B & A, LLC as "supplemental – named insured." See EXHIBIT D.

25.     Plaintiff GENERAL FIDELITY issued to Defendant NORTHSTAR HOMES, INC. a commercial general liability policy, policy number BAG0006227-00, ("Third Policy") with effective dates of coverage from October 22, 2008 to October 22, 2009. A copy of the Policy is attached as EXHIBIT E.

26.     The Third Policy lists NORTHSTAR HOLDINGS, INC. and NORTHSTAR HOLDINGS AT B & A, LLC as "supplemental – named insured." See EXHIBIT C.

27.     The First, Second and Third Policy ("the Policies" collectively) do not cover bodily injuries, property damage, or other damages caused by emissions of gases or fumes from the defective drywall.

28.     The Policies also do not cover any costs to repair or replace the defective drywall.

29.     The First Policy, effective from October 22, 2006 to October 22, 2007, and the Second Policy, effective from October 22, 2007 to October 22, 2008, use insuring form CG 00 01 12 04, while the Third Policy, effective from October 22, 2008 to October 22, 2009, uses insuring form CG 00 01 12 07. (Differences in language in the insuring forms are noted below).

30.     The Policies that GENERAL FIDELITY issued to NORTHSTAR HOLDINGS, INC. and NORTHSTAR HOMES, INC. provide coverage under Section - COVERAGES, COVERAGE A  BODILY INJURY AND PROPERTY DAMAGE LIABILITY, as follows:

6

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result....

                            * * *

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph I. Of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorize "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any contribution, change or resumption of such "bodily injury" or

7

"property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

31.  The Policies contain the following exclusions:

**2.  Exclusions**

This insurance does not apply to:

* * *

f.  **Pollution** [replaced by Florida Total Pollution Exclusion Endorsement, see below]

(1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

(i)  "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii)  "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or

8

rented or loaned to, any insured, other
than that additional insured; or

(iii)   "Bodily injury" or "property damage"
arising out of heat, smoke or fumes from
a "hostile fire";

(b)   At or from any premises, site or location which is
or was at any time used by or for any insured or
others for the handling, storage, disposal,
processing or treatment of waste;

(c)   Which are or were at any time transported,
handled, stored, treated, disposed of, or
processed as waste by or for:

(i)    Any insured; or

(ii)   Any person or organization for whom you
may be legally responsible; or

(d)   At or from any premises, site or location on
which any insured or any contractors or
subcontractors working directly or indirectly on
any insured's behalf are performing operations if
the "pollutants" are brought on or to the
premises, site or location in connection with such
operations by such insured, contractor or
subcontractor.   However, this subparagraph
does not apply to:

(i)    "Bodily injury" or "property damage"
arising out of the escape of fuels,
lubricants or other operating fluids which
are needed to perform the normal
electrical, hydraulic or mechanical
functions necessary for the operation of
"mobile equipment" or its parts, if such
fuels, lubricants or other operating fluids
escape from a vehicle part designed to
hold, store or receive them.   This
exception does not apply if the "bodily
injury" or "property damage" arises out of
the intentional discharge, dispersal or
release of the fuels, lubricants or other
operating fluids, of if such fuels, lubricants
or other operating fluids are brought on or

9

                                    to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

        (ii)    "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

        (iii)   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

    (e)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2)    Any loss, cost or expense arising out of any:

    (a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b)    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

***

10

**m.    Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

### FLORIDA TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

I.    For purposes of this endorsement only, exclusion f. under paragraph 2., Exclusions of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

11

This insurance does not apply to:

**f.      Pollution**

(1)    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2)    Any loss, cost or expense arising out of any:

(a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)    Claim or "suit" by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

II.    For purposes of this endorsement only, definition 15 of SECTION V - DEFINITIONS is deleted and replaced by the following:

15.    "Pollutants" mean any solid, liquid, gaseous, thermal, acoustic, electric, magnetic or electromagnetic irritant or contaminant. "Pollutants" include, but are not limited to, smoke, vapor, soot, dusts, fumes, fibers, radiation, acid(s), alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms and conditions of this policy remain unchanged.

32.    The Policies have the following relevant definitions:

**SECTION V - DEFINITIONS**

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

12

8.    "Impaired property" means tangible property, other than
"your product" or "your work", that cannot be used or is
less useful because:

    a.    It incorporates "your product" or "your work" that
is known or thought to be defective, deficient,
inadequate or dangerous; or

    b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    a.    The repair, replacement, adjustment or removal of "your
product" or "your work"; or

    b.    Your fulfilling the terms of the contract or agreement.
**[insuring form CG 00 01 12 04]**

8.    "Impaired property" means tangible property, other than
"your product" or "your work", that cannot be used or is
less useful because:

    a.    It incorporates "your product" or "your work" that
is known or thought to be known to be defective,
deficient, inadequate or dangerous; or

    b.    You have failed to fulfill the terms of a contract or
agreement;

if such property can be restored to use by the
repair, replacement, adjustment or removal of
"your product" or "your work" or your fulfilling the
terms of the contract or agreement.
**[insuring form CG 00 01 12 07]**

\* \* \*

13.    "Occurrence" means an accident, including continuous
or repeated exposure to substantially the same general
harmful conditions.

\* \* \*

15.    "Pollutants" mean any solid, liquid, gaseous or thermal

irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. [Replaced by Florida Total Pollution Exclusion Endorsement]

* * *

17.   "Property damage" means:

    a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence' that caused it.

* * *

22.   "Your work":

    a.   Means:

        (1)   Work or operations performed by you or on your behalf; and

        (2)   Materials, parts or equipment furnished in connection with such work or operations.

    b.   Includes

        (1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        (2)   The providing of or failure to provide warnings or instructions.

* * *

33.   The "Florida Total Pollution Exclusion Endorsement" endorsement excludes

14

any "bodily injury" or "property damage" caused in whole or in part by the "discharge, dispersal, seepage, migration, release or escape of 'pollutants.'"

34.    The "Florida Total Pollution Exclusion Endorsement" excludes any loss, cost or expense arising out of the removal and replacement of the allegedly defective drywall.

35.    Exclusion (n) excludes damages, including, but not limited to, the loss of use Defendant FOSTER's home as a result of the defective drywall.

36.    Exclusion (m) excludes any damages for any loss, cost or expense incurred for the loss of use of "your work" if it is withdrawn from the market or from use by any person so that the policy excludes damages for the removal and replacement of the defective drywall.

**DECLARATORY JUDGMENT**

37.    GENERAL FIDELITY re-alleges paragraphs 1 through 36 above as if fully set forth herein.

38.    There exists a bona fide, actual, present and practical need for a legal determination by this Court of the duties, rights and obligations, if any, of GENERAL FIDELITY with regard to injuries and damages arising out of the defective drywall.

39.    GENERAL FIDELITY, FOSTER, NORTHSTAR HOMES, INC., NORTHSTAR HOLDINGS, INC., and NORTHSTAR HOLDINGS AT B & A, LLC have an actual, present, adverse and antagonistic interest in the subject matter described herein.

40.    The rights and obligations of GENERAL FIDELITY under the insurance contract are dependent upon the facts referenced herein and the law applicable to such facts.

41.    All conditions precedent to the maintenance of this action have been

15

complied with, have occurred, or otherwise have been waived.

42. All parties who do or may claim an interest in the subject matter hereof have been joined herein as parties.

43. The insurance contracts do not provide coverage for any bodily injuries, property damage or other damages arising out of the alleged release, emissions, or "off-gassing" from the defective drywall.

44. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, GENERAL FIDELITY is entitled to a declaration that the Policies provide no coverage available for any claims with respect to the allegedly defective drywall.

WHEREFORE, GENERAL FIDELITY requests entry of final judgment in its favor as against Defendants, declaring that the Policies provide no coverage for "bodily injury," "property damage," or other damages arising out of the alleged release, emission, or "off-gasing" from the defective drywall so that GENERAL FIDELITY has no duty to defend or indemnify for the losses complained.

Dated: May 13, 2009
Tampa, Florida

16

Respectfully submitted,

LOUIS SCHULMAN, ESQ.
Florida Bar No.: 377244
lschulman@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
777 S. Harbour Island Boulevard, Suite 500
Tampa, FL 33602
Tel. 813-281-1900
Fax. 813-281-0900
Attorneys for Plaintiff, GENERAL FIDELITY INSURANCE
COMPANY

17

‰JS 44   (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| General Fidelity Insurance Company | Katherine L. Foster; Northstar Holdings, Inc.; Northstar Homes, Inc.; Northstar Holdings at B and A, LLC |
| (b)  County of Residence of First Listed Plaintiff  **Mecklenburg, NC**<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant **Palm Beach, FL**<br>(IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT<br>LAND INVOLVED.  **MAY 15 2009** |
| (c)  Attorney's (Firm Name, Address, and Telephone Number)<br><br>Louis Schulman  Butler Pappas Weihmuller Katz Craig, LLP<br>777 S. Harbour Island Blvd., Suite 500, Tampa, FL 33602<br>813-281-1900 | Attorneys (If Known)<br><br>STEVEN M. LARIMORE<br>CLERK U. S. DIST. CT.<br>S. D. OF FLA. – MIAMI |

(d) Check County Where Action Arose:  ☐ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☑ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE / HIGHLANDS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question (U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☑ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

WPB09CV80743-Ryskamp/Vernace

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ■ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus-Alien Detainee<br>☐ 465 Other Immigration Actions<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS – Third Party 26 USC 7609 | ☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN   (Place an "X" in One Box Only)

☑ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Re-filed- (see VI below)
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES  ☐ NO        b) Related Cases  ☑ YES  ☐ NO

JUDGE  K. Michael Moore        DOCKET NUMBER 9:09CV80535

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC1322(a) Declaratory action involving diversity - Plaintiff is diverse from all Defendants.

LENGTH OF TRIAL via **5** days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   May 13, 2009

FOR OFFICE USE ONLY

AMOUNT $350.00   RECEIPT # 100104472

05/18/09

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

CASE NO. _____

| | |
|---|---|
| KATHERINE L. FOSTER, on behalf of<br>herself individually and all others<br>similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NORTHSTAR HOLDINGS, INC., a<br>Florida corporation; NORTHSTAR<br>HOMES, INC., a Florida corporation;<br>KNAUF GIPS KG, a German corporation;<br>KNAUF PLASTERBOARD<br>(TIANJIN) CO., LTD., a Chinese limited<br>liability corporation; KNAUF<br>PLASTERBOARD (WUHU) CO. LTD.;<br>KNAUF PLASTERBOARD<br>(DONGGUAN) CO. LTD.;<br>USG CORPORATION, a foreign<br>corporation; BANNER SUPPLY<br>CO., a Florida corporation; ROTHCHILT<br>INTERNATIONAL LTD., a foreign<br>corporation; Developer/Builder Does 1-100;<br>Supplier Does 1-100; Installer Does 1-100;<br>and Distributer Does 1-100;<br><br>    Defendants. | **09-80535**<br><br>**CIV-COHN**<br><br>CIVIL ACTION<br>JURY TRIAL DEMANDED<br>MAGISTRATE JUDGE<br>SELTZER<br><br>FILED by _____ D.C.<br><br>APR - 3 2009<br><br>STEVEN M. LARIMORE<br>CLERK U. S. DIST. CT<br>S. D. of FLA. - MIAMI |

## CLASS ACTION COMPLAINT

Plaintiff, Katherine L. Foster, brings this action on behalf of herself and on behalf of a

Class of persons described below. Plaintiff brings this action against Northstar Holdings, Inc.

and Northstar Homes, Inc.; Knauf Gips KG, Knauf Plasterboard (Tianjin) Co., Ltd., and Knauf

Plasterboard (Dongguan) (collectively referred to herein as "Knauf"); USG Corporation, Banner



ALTER     **EXHIBIT**     ULMO

**A**

Miami Design District, 4141 Northeast 2nd Avenue · Su     : 305-571-8550  Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN  Document 4506-4  Filed 07/19/10  Page 20 of 50
Case 9:09-cv-80743-KMM  Document 1-1  Entered on FLSD Docket 05/18/2009  Page 2 of 49

Case 9:09-cv-80535-JIC    Document 1    Entered on FLSD Docket 04/06/2009    Page 2 of 49

Supply Company, Rothchilt International Ltd.("Rothchilt"), Supplier Does 1-100 (collectively referred to herein as "Suppliers"); Installer Does 1-100 (collectively referred to herein as "Installers"); and Distributer Does 1-100 (collectively referred to herein as "Distributers"). All facts contained in this complaint are alleged upon information and belief and based upon the investigation of counsel.

## INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of all other similarly situated owners of homes in the United States built using the defective drywall described herein. Alternatively, Plaintiff brings this action individually and on behalf of all other similarly situated owners of homes in the State of Florida built using the defective drywall described herein.

2.      Defendants' drywall used in the homes of Plaintiff and the Plaintiff Class Members is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors, and causes damage and corrosion ("the Defect") to home structure and mechanical systems such as air-conditioner and refrigerator coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and other property such as microwaves, utensils, personal property, electronic appliances, jewelry, and other household items ("Other Property"). The compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure. These chemical compounds cause and have caused dangerous health consequences including, among other things, respiratory problems, sinus problems, eye irritation and nose bleeds.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550  Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN  Document 4506-4  Filed 07/19/10  Page 21 of 50
Case 9:09-cv-80743-KMM  Document 1-1  Entered on FLSD Docket 05/18/2009  Page 3 of 49

Case 9:09-cv-80535-JIC    Document 1    Entered on FLSD Docket 04/06/2009    Page 3 of 49

3.    This Defect is latent and existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted. There is no repair that will correct the Defect.

4.    As a result of Defendants' conduct as alleged herein, Plaintiff and thousands of other Class Members have suffered economic losses by owning homes containing inherently defective drywall that has caused damage to their homes and Other Property.

5.    Plaintiff and Class Members have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of homes, Other Property, any materials contaminated or corroded by the drywall as a result of "off-gassing," incidental and consequential damages.

6.    Further, as a result of Defendants' conduct as alleged herein, Plaintiff and thousands of others Class Members have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical monitoring.

## JURISDICTION AND VENUE

7.    The Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one plaintiff is diverse from at least one defendant.

8.    Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c). Defendants are incorporated and headquartered within this Federal Judicial District, advertise in this District, build homes in this District, have made material omissions and misrepresentations

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

and breaches of warranties emanating from this District, or are otherwise subject to personal
jurisdiction in this District.

## THE PARTIES

### PLAINTIFF

9.     Plaintiff, Katherine L. Foster, lives and resides in Palm Beach County, and owns
and resides in a home located at 8777 Cobblestone Preserve Court, Boynton Beach, Florida
33472. Plaintiff's home was built by the Northstar Defendants using defective drywall in
approximately 2006. Plaintiff has had substantial problems with the home, including but not
limited to the corrosive effects of the sulfur and/or other compounds in the drywall, has suffered
adverse medical effects and personal injury, and has suffered injury to personal and real property
as a result of Defendants' conduct as further described herein.

### DEFENDANTS

**Developer/Builder Defendants: Northstar Holdings, Inc. and Northstar Homes, Inc.**

10.    Defendant Northstar Holdings, Inc. is a Florida for Profit Corporation with its
principal place of business in Palm Beach County, Florida.

11.    Defendant Northstar Homes, Inc. is a Florida for Profit Corporation with its
principal place of business in Palm Beach County, Florida.

12.    Defendants Northstar Holdings, Inc. and Northstar Homes, Inc. are affiliated
companies located at the same address and having the same principal officers and directors. The
Northstar Defendants operate under the trade name of "Northstar Homes" (collectively referred
to as "the Northstar Defendants," "Northstar Homes," or "Builder"). Northstar Homes is a
leading South Florida home builder and since its inception it has built thousands of homes in

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305.571.8550  Fax: 305.571.8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN Document 4506-4 Filed 07/19/10 Page 23 of 50
Case 9:09-cv-80743-KMM Document 1-1 Entered on FLSD Docket 05/18/2009 Page 5 of 49

Case 9:09-cv-80535-JIC Document 1 Entered on FLSD Docket 04/06/2009 Page 5 of 49

numerous communities in the State of Florida. Northstar Homes developed and built "Cobblestone Creek," the community where the Plaintiff's home is situated.

13. Upon information and belief, the Northstar Defendants, and John Doe Builder/Developer Defendants, installed defective drywall in the Plaintiff's and Class Members' homes located in the State of Florida. Defendants' acts or omissions, directly or indirectly through its agents, employees, or affiliates, with respect to the defective drywall have injured Plaintiff and Class Members as alleged herein.

**Manufacturer Defendants: Knauf Entities**

14. Defendant Knauf Gips is a German corporation doing business in the State of Florida with its principal place of business located at Postfach 10, D-97343 Iphofen, Germany. Knauf Gips is a leading manufacturer of building materials and systems. Knauf Gips, together with its affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan), provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin, and its agents, apparent agents, and employees.

15. Among other things, in 1995, Knauf Gips introduced its advanced production techniques and technology into China. From 1997 through 2001, Knauf Gips invested in China and established three plasterboard plants which are located in Wuhu, Tianjin and Dongguan. The product quality of all Knauf Gips' plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Moreover, Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN   Document 4506-4   Filed 07/19/10   Page 24 of 50
Case 9:09-cv-80743-KMM   Document 1-1   Entered on FLSD Docket 05/18/2009   Page 6 of 49

Case 9:09-cv-80535-JIC   Document 1   Entered on FLSD Docket 04/06/2009   Page 6 of 49

world, including Knauf Tianjin in China. Knauf Tianjin and its employees are the actual and/or apparent agents in Knauf Gips.

16.    Upon information and belief, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the United States, including Florida. Upon information and belief, Knauf Gips and/or Knauf Tianjin has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and throughout the United States, and their drywall is installed in numerous homes in the United States, including Florida. As discussed more fully below, Knauf Gips and/or Knauf Tianjin manufactured and sold, directly or indirectly, to certain suppliers in the United States and Florida, including Defendants USG Corporation, Banner Supply, Rothchilt, and Does 1-100, defective gypsum drywall that was installed in homes being built by Northstar Homes and others, thereby causing substantial damage to Plaintiff and the Class. Moreover, Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the United States and the State of Florida and by hiring agents within the State of Florida to investigate the very allegations at issue in this lawsuit.

17.    Knauf Gips employs approximately 20,000 employees worldwide, with more than 130 production plants, and generates annual sales in excess of €4.8 billion.

18.    Knauf Gips provided defective drywall to one or more of the Plaintiffs' homes.

19.    Knauf Gips improperly manufactured, marketed, and later distributed the subject defective drywall in the United States, including Florida. Defendant also failed to provide

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District. 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN  Document 4506-4  Filed 07/19/10  Page 25 of 50
Case 9:09-cv-80743-KMM  Document 1-1  Entered on FLSD Docket 05/18/2009  Page 7 of 49

Case 9:09-cv-80535-JIC    Document 1    Entered on FLSD Docket 04/06/2009    Page 7 of 49

adequate warnings regarding the hazardous and defective nature of Chinese drywall in the United States, including Florida.

20.    The quality of all Knauf Gips' Chinese drywall plants in China is supervised, overseen, and controlled according to the requirements of Knauf Gips' headquarters in Germany.

21.    Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan and their employees are the actual and/or apparent agents of Knauf Gips.

22.    Upon information and belief, Knauf Gips by itself and/or through its agents, subsidiaries, and/or affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) has continuously and systematically distributed and sold drywall to numerous purchasers in the United States, including Florida, with the knowledge that its drywall would be and is installed in numerous homes in the United States, including Florida.

23.    As discussed more fully below, Knauf Gips by itself and/or through its agents, subsidiaries and affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold, directly and indirectly, to certain suppliers in the United States and Florida, including Defendants USG Corporation, Banner Supply, Rothchilt, and Supplier/Installer/Distributer Does 1-100, defective Chinese drywall that was installed in homes being built in the United States, including Florida, thereby causing substantial damage to Plaintiff and Class Members in the United States, including Florida.

24.    Knauf Gips and each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) participated in the wrongful acts herein.

ALTERS | BOLDT | BRQWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550  Fax: 305-571-8558 • www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN   Document 4506-4   Filed 07/19/10   Page 26 of 50
Case 9:09-cv-80743-KMM   Document 1-1   Entered on FLSD Docket 05/18/2009   Page 8 of 49

Case 9:09-cv-80535-JIC   Document 1   Entered on FLSD Docket 04/06/2009   Page 8 of 49

25. Knauf Gips and each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) also acted in joint enterprise, joint venture and as each other's agent within the course and scope of said agency.

26. At all times relevant hereto, Defendant Knauf Gips and each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) acted by and through their employees, agents, apparent agents and representatives, who were acting within the course and scope of their employment, agency, apparent agency and representation and in the furtherance of Defendants' interests.

27. Defendant Knauf Gips is the parent corporation of the Knauf Entities (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan). Knauf Gips individually participated, ratified, approved and directed the improper or illegal acts and omissions described herein.

**Knauf Gips' Chinese Drywall Distribution**

28. Upon information and belief, tens of millions of square feet of Defendant Knauf Gips defective drywall was used in the construction of United States homes, including Florida homes, between 2004 and the present.

29. Because of a shortage of construction materials from a booming housing market and massive damage in the United States in 2005 caused by Hurricanes Katrina and Wilma, domestic builders, suppliers, and importers began bringing significant stocks of foreign manufactured drywall into the United States.

30. At least 550 million pounds of Chinese drywall came into the United States from approximately 2004 to 2006 -- enough to construct 60,000 average-size homes.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550  Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN  Document 4506-4  Filed 07/19/10  Page 27 of 50
Case 9:09-cv-80743-KMM  Document 1-1  Entered on FLSD Docket 05/18/2009  Page 9 of 49

Case 9:09-cv-80535-JIC  Document 1  Entered on FLSD Docket 04/06/2009  Page 9 of 49

31.     Nearly 60 percent of the Chinese drywall that came into the United States came in through Florida ports, as well as ports located in other U.S. States, including Louisiana, Texas, and ports along the east coast of the United States.

32.     Miami's port received the largest number of shipments of Chinese drywall. Public records show that more than 100 million pounds of Chinese drywall were off-loaded in Miami. Other ports with significant Chinese drywall off-loading include Port Everglades (80 million pounds), Tampa (50 million pounds), as well as Port Manatee, Pensacola, Port Canaveral, and Jacksonville.

33.     At least 37 million pounds of Knauf drywall was shipped directly from three sites in China to Florida through Tampa and Port Canaveral. Knauf Tianjin sent an additional amount (characterized by company officials as "most" of its drywall) into Miami.

34.     In March 2006, Knauf Dongguan shipped 11 million pounds of Chinese drywall aboard the cargo ship *Afra*. This shipment was unloaded in Port Canaveral.

35.     In the spring of 2006, the cargo ship *Great Immensity* unloaded one shipment of more than 16 million pounds of Chinese drywall manufactured by Knauf Tianjin -- enough to make approximately 1,700 homes. The *Great Immensity* unloaded shipments at more than two dozen ports throughout the United States, including seven in Florida.

36.     Shipping records show coordination between Knauf's Chinese subsidiaries, such as sharing the same vessel to transport their product to the U.S. In April 2006, the *Yong An Cheng* took three shipments from Knauf Wuhu and a fourth from Knauf Dongguan to the U.S. All were imported by United States Gypsum Corporation, one of the largest manufacturers of domestic drywall in the U.S. market.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN Document 4506-4 Filed 07/19/10 Page 28 of 50
Case 9:09-cv-80743-KMM Document 1-1 Entered on FLSD Docket 05/18/2009 Page 10 of 49

Case 9:09-cv-80535-JIC    Document 1    Entered on FLSD Docket 04/06/2009    Page 10 of 49

37.    Knauf Tianjin, one of three Knauf Gips Chinese subsidiaries, admits that it manufactured and imported at least 20 percent of the imported Chinese drywall that came into the United States.

38.    Shipping information indicates that Knauf Tianjin sent at least 38.7 million pounds Chinese drywall to the United States in 2006 and Knauf Wuhu sent at least 28.6 million pounds of Chinese drywall. Based on U.S. Customs and Census information, these figures would indicate that 78 percent of Chinese drywall imports in 2006 came from these two Knauf plants.

39.    Many builders in the United States and Florida have admitted using Knauf Chinese drywall in communities throughout the United States and Florida.

**Knauf Gips' Subsidiary-Knauf Tianjin**

40.    Upon information and belief, Defendant Knauf Tianjin, is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at North Yinhe Bridge, East Jingjin Road, RC-300400, Tianjin, China.

41.    Defendant Knauf Tianjin manufactured and distributed defective drywall that is in one or more of Plaintiffs' homes.

42.    Knauf Tianjin improperly manufactured, marketed, and distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN  Document 4506-4  Filed 07/19/10  Page 29 of 50
Case 9:09-cv-80743-KMM  Document 1-1  Entered on FLSD Docket 05/18/2009  Page 11 of 49

Case 9:09-cv-80535-JIC   Document 1   Entered on FLSD Docket 04/06/2009   Page 11 of 49

**Knauf Gips' Subsidiary-Knauf Wuhu**

43.     Upon information and belief, Defendant, Knauf Wuhu, is an international
corporation organized under the laws of China doing business in the State of Florida with its
principal place of business located at No. 2 Gang Wan Road. RC-241009, Wuhu Anhui, China.

44.     Defendant Knauf Wuhu manufactured and distributed defective drywall that is in
one or more of Plaintiffs' homes.

45.     Knauf Wuhu improperly manufactured, marketed, and distributed the subject
defective drywall in the United States. Defendant also failed to provide adequate warnings
regarding the hazardous and defective nature of its defective drywall in the United States.

**Knauf Gips' Subsidiary-Knauf Dongguan**

46.     Upon information and belief, Defendant Knauf Dongguan, is an international
corporation organized under the laws of China doing business in the State of Florida with its
principal place of business located at No.2 Xinsha Development Zone, RC-523147, Guangdong,
China.

47.     Defendant Knauf Dongguan manufactured and distributed defective drywall that
is in one or more of Plaintiffs' homes.

48.     Knauf Dongguan improperly manufactured, marketed, and distributed the subject
defective drywall in the United States. Defendant also failed to provide adequate warnings
regarding the hazardous and defective nature of its defective drywall in the United States.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN  Document 4506-4  Filed 07/19/10  Page 30 of 50
Case 9:09-cv-80743-KMM  Document 1-1  Entered on FLSD Docket 05/18/2009  Page 12 of 49

Case 9:09-cv-80535-JIC    Document 1    Entered on FLSD Docket 04/06/2009    Page 12 of 49

.    .

### Defendant Distributors/Suppliers

### Defendant USG Corporation

49.    Defendant USG Corporation is a Delaware corporation authorized to do and doing business in the State of Florida  USG, together with its various affiliates, is the nation's largest distributor of drywall and related building products.

50.    Defendant USG Corporation exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the United States, including Florida. Directly or indirectly through agents, affiliates or co-conspirators, Defendant USG Corporation's acts or omissions related to defective Drywall have injured Plaintiff and Class Members as alleged herein.

### Defendant Banner Supply

51.    Defendant Banner Supply is a Florida corporation with its principal place of business located in the Southern District of Florida at 7195 N.W. 30th Street, Miami, Miami-Dade County, Florida 33122.

52.    Defendant Banner Supply exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the State of Florida. Directly or indirectly through agents, affiliates or co-conspirators, Defendant Banner Supply's acts or omissions related to defective Drywall have injured Plaintiff and Class Members as alleged herein.

### Defendant Rothchilt International Ltd.

53.    Defendant Rothchilt is a foreign corporation doing business in the State of Florida with its principal place of business located at N-510 Chia Hsin Bld., Annex 96 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan R.O.C.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305·571·8550  Fax: 305·571·8558 · www.abbrclaw.com

54.    Defendant Rothchilt exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the United States, including Florida. Directly or indirectly through agents, affiliates or co-conspirators, Defendant Rothchilt's acts or omissions related to defective Drywall have injured Plaintiff and Class Members as alleged herein.

55.    Defendant Distributor/Suppliers USG Corporation, Banner Supply and Rothchilt also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall in the United States.

56.    The identities of Distributor Does 1-100, Supplier Does 1-100, and Installer Does 1-100 are unknown to Plaintiff at this time. These John Doe Defendants are builders, installers, and suppliers of defective drywall whom Plaintiff has not yet been able to identify. When the identities of these individuals and/or entities are discovered, undersigned counsel will amend the Complaint to specifically name the Defendants referred to as Distributor Does 1-100, Supplier Does 1-100, and Installer Does 1-100.

## GENERAL ALLEGATIONS

### A.    Drywall Background

57.    Drywall is also commonly known as gypsum board, wallboard, plasterboard, rock lath, sheetrock, gyproc, or simply, board.

58.    A drywall panel is made of a paper liner wrapped around an inner core made primarily from hardened gypsum plaster.

59.    Drywall is typically available in 4 feet (1219 mm) wide sheets of various lengths. Newly formed sheets are cut from a belt, the result of a continuous manufacturing process.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

60.     The most commonly used drywall is ½ inch thick but can range from ¼ inch (6.35 mm) to one inch (25.4 mm) thick.

61.     The core material of drywall, gypsum, is available in two forms, pure gypsum, which is naturally occurring, and synthetic gypsum, which is manmade.

62.     Pure gypsum is a white to transparent mineral, but sometimes impurities color it grey, brown, or pink.

63.     Synthetic gypsum is generally manufactured with byproducts of coal-fired power plants.

64.     Coal combustion byproducts ("CCBs") or coal combustion products ("CCPs") are the inorganic residues that remain after pulverized coal is burned.

65.     The primary CCBs used in drywall are byproducts resulting from a utility's attempts to remove sulfur from flue gases.

66.     In order to meet emission standards, many utilities have installed flue gas desulfurization ("FGD") equipment. Flue gas desulfurization is a chemical process to remove sulfur oxides from the flue gas at coal-burning power plants.

67.     Various FGD methods have been developed that chemically combine the sulfur gases released in coal combustion by reacting them with a sorbent, such as limestone or lime.

68.     As the flue gas comes in contact with the slurry of calcium salts, sulfur dioxide reacts with the calcium to form hydrous calcium sulfate, otherwise known as gypsum.

B.      How Drywall Is Created

69.     In order to form drywall, gypsum must be "calcined," or partially dehydrated by heating.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 414: Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN  Document 4506-4  Filed 07/19/10  Page 33 of 50
Case 9:09-cv-80743-KMM  Document 1-1  Entered on FLSD Docket 05/18/2009  Page 15 of 49

Case 9:09-cv-80535-JIC    Document 1      Entered on FLSD Docket 04/06/2009    Page 15 of 49

70.    When gypsum is heated, it loses about three quarters of its water and becomes hemihydrate gypsum which is soft and can be easily ground to a powder called hemihydrate gypsum plaster.

71.    The gypsum powder is then mixed with water to form a paste or slurry.

72.    While the hemihydrate gypsum plaster is in slurry form, it is poured between two paper layers to make drywall.

73.    Drywall is formed by sandwiching a core of wet gypsum between two sheets of heavy paper or fiberglass mats. When the core sets and is dried in a large drying chamber, the "sandwich" becomes rigid and strong enough for use as a building material.

74.    The paste or slurry is typically mixed with fiber (usually paper and/or fiberglass), plasticizer, foaming agent, potash as an accelerator, starch or other chelate as a retarder, various additives that increase mildew and fire resistance (fiberglass or vermiculite), and water.

75.    Drywall may consist of two other materials with sulfur content: alkyl ethoxy sulfates as foaming agents and lignin or napthalene sulfonates as dispersing agents.

C.    The Defective Drywall Emits Noxious and Corrosive Levels of Sulfur

76.    Upon information and belief, Defendants' drywall contained naturally mined gypsum and synthetic gypsum manufactured from CCBs.

77.    When gypsum, mined or synthetic, is subjected to certain environmental conditions, the product breaks down into sulfate ions which in turn can be chemically transformed into hydrogen sulfide gas and other sulfide gases.

78.    The problem of sulfide emissions from drywall is well understood in the drywall industry and has been studied for many years.

ALTERS | BOLDT | BRQWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550  Fax: 305-571-8558 · www.abbiclaw.com

Case 2:09-md-02047-EEF-MBN   Document 4506-4   Filed 07/19/10   Page 34 of 50
Case 9:09-cv-80743-KMM   Document 1-1   Entered on FLSD Docket 05/18/2009   Page 16 of 49

Case 9:09-cv-80535-JIC   Document 1   Entered on FLSD Docket 04/06/2009   Page 16 of 49

79.     The level of sulfides emitted from drywall may depend, in part, on contamination of the drywall with sulfur materials or the use of contaminated gypsum materials.

80.     Sulfide emissions from drywall have been a particular problem in landfills and, as such, many landfills refuse to accept drywall or place strict limitations on the amounts and on the ways in which drywall can be disposed. An independent consulting firm, hired by a Miami-based builder, has concluded there is little doubt that the drywall manufactured by Defendants is the cause of the corrosion in many residents' homes.

81.     One of the managing principles of the independent testing firm stated that: "We have definitely identified that a combination of sulfide gases are the cause of the corrosion of the coils. The substances we've found are well known to cause that kind of corrosion."

82.     The firm's December 2008 results found three sulfide gases: carbon disulfide, carbonyl sulfide and dimethyl sulfide.

83.     Hydrogen sulfide was found in previous testing that the company conducted on the Defendants' drywall: "Our previous studies indicate, however, that carbon disulfide, carbonyl sulfide, and hydrogen sulfide are gases that can be associated with emissions from Chinese drywall."

84.     According to a Knauf statement, the company "is doing its own investigation, and believes the problem drywall came from a specific [gypsum] mine, which also supplied other manufacturers." According to Knauf, the company stopped using the questionable mine in 2006.

85.     According to published reports, however, some independent environmental testing firms and building experts have said the source of the drywall problem is waste materials from the scrubbers of coal-fired power plants used to make the drywall in China.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550  Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN Document 4506-4 Filed 07/19/10 Page 35 of 50
Case 9:09-cv-80743-KMM Document 1-1 Entered on FLSD Docket 05/18/2009 Page 17 of 49

Case 9:09-cv-80535-JIC Document 1 Entered on FLSD Docket 04/06/2009 Page 17 of 49

86. Knauf's 2009 statement also noted: "Until last year in Florida, no complaint had been raised and no product had been rejected because of odor or impacts to copper in the nine years of [Knauf Tianjin's] operation."

87. Knauf received complaints from builders and contractors about "rotten egg" smells coming from its Chinese-manufactured drywall as far back as 2006.

88. In November 2006, in response to reports of odors associated with its drywall, Knauf hired the Center for Toxicology and Environmental Health, L.L.C. (CTEH) to conduct an air quality investigation in five homes in Florida.

89. Knauf's 2009 statement also declared: "The sulfur compounds detected in testing in homes have been found at no greater levels than air outside homes or in soil, marshes or the ocean."

90. Knauf's 2006 testing revealed, however, that its product released detectable, above-background levels of various sulfur containing compounds. In particular, Knauf's testing revealed the presence of iron disulfide from its Chinese Drywall as the likely source of the sulfur smells. Knauf's testing agency declared: "These data indicate that certain naturally-occurring sulfur-containing compounds can be emitted from the Knauf Tianjin product at concentrations higher than present in background air."

91. One importer acknowledged in published reports that the defective Chinese Drywall was "well known in the industry" by 2007.

92. No member of the Class could have discovered the existence of the defect in the Chinese-manufactured drywall until press reports about the defects were released in December 2008.

ALTERS | BOLDT | BRQWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbiclaw.com

## D. The Need for Medical Monitoring for the Health Effects of Sulfur Emitting Drywall

93.     Hydrogen sulfide ("H2S"), one of the chemicals found to have been released from drywall, is considered a broad-spectrum poison, meaning that it can poison several different systems in the body, although the nervous system is most affected.

94.     The toxicity of H2S is comparable with that of hydrogen cyanide. It forms a complex bond with iron in the mitochondrial cytochrome enzymes, thereby blocking oxygen from binding and stopping cellular respiration.

95.     Exposure to lower concentrations of sulfides can result in eye irritation, a sore throat and cough, nausea, shortness of breath, and fluid in the lungs.

96.     Long-term, low-level exposure to sulfides has been associated with fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness. Chronic exposure to low levels of sulfides has also been implicated in increased miscarriage and reproductive health issues.

97.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall, which was unreasonably dangerous in its normal use, in that the drywall caused corrosion and damage to the structure and mechanical systems of homes, as well as Other Property in Plaintiff's and Class Members' homes, and it caused medical ailments, including allergic reactions, coughing, sinus and throat infection, eye irritation, breathing disorders, other health problems, and/or significantly increased the risk of contracting a serious latent disease.

98.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff's and the Class Members' homes and bodies have been exposed to Defendants' drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN Document 4506-4 Filed 07/19/10 Page 37 of 50
Case 9:09-cv-80743-KMM Document 1-1 Entered on FLSD Docket 05/18/2009 Page 19 of 49

Case 9:09-cv-80535-JIC Document 1 Entered on FLSD Docket 04/06/2009 Page 19 of 49

99. As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the Plaintiff and the Class Members have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection as well as the costs and expenses necessary to remedy, replace and remove the defective drywall and Other Property that has been affected.

100. As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the Plaintiff and the Class Members have suffered, and continue to suffer damages for injuries from medical ailments.

101. As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, Plaintiff and Class Members have been exposed to above-background levels of sulfides and other harmful chemicals, have been placed at an increased risk of disease, and have need for injunctive relief in the form of emergency notice, environmental testing and monitoring, and medical monitoring.

E. The Sulfur Emitting Drywall Injures the Health of Affected Homeowners

102. This defective drywall causes adverse health consequences such as respiratory problems, sinus problems, eye irritation and nosebleeds, in addition to the creation of noxious odors, which smell like "rotten eggs."

**Conditions Precedent**

103. All notice required by Chapter 558, Florida Statutes, and conditions precedent to bringing this action have been met or will have been met or were waived by Defendants.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

## CLASS ACTION ALLEGATIONS

104.   Plaintiff brings this case as a Class Action pursuant to Fed. R. Civ. P. 23

individually and on behalf of a class defined as:

> All owners and residents of homes in the United States, which contain drywall
> manufactured, sold or installed by Defendants that emits excessive amounts of
> sulfur as well as any individual or entity that paid for or performed repairs of
> damage caused by the drywall. Defendants, their officers, directors, subsidiaries,
> or any person or other entity related to, affiliated with or employed by Defendants
> are excluded from the Class Definition.

Expressly excluded from the Classes defined above are:

A.   Defendants and any entities in which Defendants have a controlling

interest;

B.   Any entities in which Defendants officers, directors, or employees are

employed and any of the legal representatives, heirs, successors or assigns of Defendants;

C.   The Judge and Magistrate to whom this case is assigned and any member

of the Judge's or Magistrate's immediate family; and

D.   All persons or entities that properly execute and timely file a request for

exclusion from the Class.

105.   In the alternative, Plaintiff brings this case as a Class Action pursuant to Fed. R.

Civ. P. 23 individually and on behalf of a class of all others similarly situated in the State of

Florida, defined as:

> All owners and residents of homes in the State of Florida, which contain drywall
> manufactured, sold or installed by Defendants that emits excessive amounts of
> sulfur as well as any individual or entity that paid for or performed repairs of
> damage caused by the drywall. Defendants, their officers, directors, subsidiaries,
> or any person or other entity related to, affiliated with or employed by Defendants
> are excluded from the Class Definition.

Expressly excluded from the Classes defined above are:

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550  Fax: 305-571-8558 · www.abbrclaw.com

    A.     Defendants and any entities in which Defendants have a controlling interest;

    B.     Any entities in which Defendants officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

    C.     The Judge and Magistrate to whom this case is assigned and any member of the Judge's or Magistrate's immediate family; and

    D.     All persons or entities that properly execute and timely file a request for exclusion from the Class.

## NUMEROSITY

106.    The Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of Class members is presently unknown to Plaintiff, but it is believed that Class members number at least in the thousands. The identity of Class members is ascertainable. Class members may be informed of the pendency of this Class action by a combination of direct mail and public notice, or other means.

## COMMONALITY

107.    Common questions of fact and law exist as to all members of the Class, which predominate over questions affecting only individual members of the Class. These include, but are not limited to, the following:

    a.     Whether Defendants manufactured and sold defective drywall;

    b.     Whether Defendants are liable for the repair and replacement of all defective drywall;

    c.     Whether Defendants are liable for the repair and replacement of all

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

damaged items in the affected homes;

d. Whether Defendants are liable for the adverse medical consequences of the defective drywall;

e. Whether Defendants deliberately concealed information about the defective drywall from the Class;

f. Whether Defendants negligently, recklessly or intentionally concealed information about the defective drywall;

g. Whether Defendants breached express warranties;

h. Whether Defendants breached implied warranties;

i. Whether Plaintiffs are entitled to compensatory, punitive, and other damages as a result of Defendants acts and/or omissions;

j. Whether Defendants are guilty of fraudulent misrepresentation;

k. Whether Defendants are guilty of fraudulent concealment;

l. Whether Defendants are guilty of negligence;

**TYPICALITY**

108. Plaintiff's claims are typical of the claims of the Class and all such claims arise out of the wrongful course of conduct engaged in by Defendants.

ALTERS | BOLDT | BROWN · RASH | CULMO

22

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN  Document 4506-4  Filed 07/19/10  Page 41 of 50
Case 9:09-cv-80743-KMM  Document 1-1  Entered on FLSD Docket 05/18/2009  Page 23 of 49

Case 9:09-cv-80535-JIC    Document 1    Entered on FLSD Docket 04/06/2009    Page 23 of 49

### ADEQUACY OF REPRESENTATION

109.    Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the members of the Class she seeks to represent. Plaintiff is represented by experienced and able counsel who have litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and her counsel can fairly and adequately protect the interests of the members of the Class.

### RULE 23(B) CERTIFICATION

110.    Class certification is also appropriate in this action because:

   a. Pursuant to Fed.R.Civ.P. 23(b)(1)(A), the prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible duties for Defendants under the law alleged herein.

   b. In seeking declaratory relief from Defendants' conduct alleged herein, pursuant to Fed.R.Civ.P. 23(b)(2), Defendants have acted or refused to act on grounds that apply generally to the Class, such that declaratory relief would be appropriate to the Class as a whole.

   c. Pursuant to Fed.R.Civ.P. 23(b)(3) the questions of law and fact common to all Class Members predominate over any questions that might arise as to an individual member, such that a Class Action is the superior, fair and efficient method of adjudicating this controversy where, as here, individual claims would be identical or nearly identical.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN Document 4506-4 Filed 07/19/10 Page 42 of 50
Case 9:09-cv-80743-KMM Document 1-1 Entered on FLSD Docket 05/18/2009 Page 24 of 49

Case 9:09-cv-80535-JIC Document 1 Entered on FLSD Docket 04/06/2009 Page 24 of 49

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

111. The running of any statute of limitations has been tolled due to Defendants' fraudulent concealment. By failing to disclose a known defect to Plaintiff and the Class, and misrepresenting the nature of their product as safe for its intended use, actively concealed from Plaintiff and the Class the true risks associated with their drywall.

112. Plaintiff and the Class could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

113. In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true information about their product and they failed in that duty to Plaintiff and the Class.

114. Plaintiff and the Class had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein.

### COUNT I

### NEGLIGENCE
### (Against All Defendants)

115. Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

116. Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in the a) design, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installation, j) marketing, and/or

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

k) selling drywall, including a duty to adequately warn of its failure to do the same.

Defendants' duties include, but are not limited to the following:

    a.     using reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

    b.     using reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein;

    c.     using reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

    d.     using reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

    e.     using reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

    f.     using reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

    g.     using reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

    h.     using reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

    i.     using reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

    j.     using reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbiclaw.com

k.  using reasonable care in the installation of the drywall to prevent it from containing Defects as set forth herein;

l.  adequately warning and instructing the Plaintiff and Class Members of the Defects associated with drywall;

m.  properly manufacturing the drywall to prevent it from containing the Defects as set forth herein;

n.  properly selecting the gypsum that did not contain excessive levels of sulfur;

o.  recalling or otherwise notifying users at the earliest date that it became known that the drywall was dangerous and Defective;

p.  advertising and recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;

q.  not misrepresenting that the drywall was safe for its intended purpose when, in fact, it was not;

r.  not manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

s.  not exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

t.  not distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

u.  not concealing information from Plaintiff and Class Members regarding reports of adverse effects associated with drywall;

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, Fl 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN Document 4506-4 Filed 07/19/10 Page 45 of 50
Case 9:09-cv-80743-KMM Document 1-1 Entered on FLSD Docket 05/18/2009 Page 27 of 49

Case 9:09-cv-80535-JIC Document 1 Entered on FLSD Docket 04/06/2009 Page 27 of 49

     v.     not improperly concealing and/or misrepresenting information from the Plaintiff and Plaintiff Class Members and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

     w.    otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing Defects as set forth herein.

117. Defendants were negligent and breached their duty to exercise reasonable care in the design, manufacture, export, import, distribution, delivery, supply, inspection, installation, marketing, and/or sale of drywall, including a duty to adequately warn of its failure to do the same. Defendants' negligence included, but was not limited to the following:

     a.     failing to use reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

     b.     failing to use reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein:

     c.     failing to use reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

     d.     failing to use reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

     e.     failing to use reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

f.    failing to use reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g.    failing to use reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h.    failing to use reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i.    failing to use reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j.    failing to use reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k.    failing to use reasonable care n the installation of the drywall to prevent it from containing Defects as set forth herein;

l.    failing to adequately warn and instruct the Plaintiff and Class Members of the Defects associated with drywall;

m.    failing to properly manufacture the drywall to prevent it from containing the Defects as set forth herein;

n.    failing to properly select the gypsum that did not contain excessive levels of sulfur;

o.    failing to recall or otherwise notify users at the earliest date that it became known that drywall was dangerous and Defective;

p.    advertising and recommending the use of drywall without sufficient knowledge as to its manufacturing Defect and dangerous propensities;

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN Document 4506-4 Filed 07/19/10 Page 47 of 50
Case 9:09-cv-80743-KMM Document 1-1 Entered on FLSD Docket 05/18/2009 Page 29 of 49

Case 9:09-cv-80535-JIC Document 1 Entered on FLSD Docket 04/06/2009 Page 29 of 49

q. misrepresenting that drywall was safe for its intended purpose when, in fact, it was not;

r. manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

s. exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

t. distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

u. concealing information from Plaintiff and Class Members regarding reports of adverse effects associated with drywall;

v. improperly concealing and/or misrepresenting information from the Plaintiff and Class Members and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

w. failing to otherwise exercise reasonable care in the design, manufacture, export, import, distribution, delivery, supply, inspection, market, installation and/or sale of drywall to prevent it from containing Defects as set forth herein.

118. As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic and other damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550 Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN  Document 4506-4  Filed 07/19/10  Page 48 of 50
Case 9:09-cv-80743-KMM  Document 1-1  Entered on FLSD Docket 05/18/2009  Page 30 of 49

Case 9:09-cv-80535-JIC    Document 1     Entered on FLSD Docket 04/06/2009    Page 30 of 49

wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

119.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

120.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

121.   Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT II

### NEGLIGENCE PER SE
(Against all Defendants)

122.   Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

123.   Defendants breached their duties to Plaintiff and the proposed class by failing to exercise reasonable care in manufacturing, inspecting, distributing, selling and installing the drywall.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550  Fax: 305-571-8558 · www.abbrclaw.com

Case 2:09-md-02047-EEF-MBN Document 4506-4 Filed 07/19/10 Page 49 of 50
Case 9:09-cv-80743-KMM Document 1-1 Entered on FLSD Docket 05/18/2009 Page 31 of 49

Case 9:09-cv-80535-JIC Document 1 Entered on FLSD Docket 04/06/2009 Page 31 of 49

124. Defendants likewise breached their duties to Plaintiff and the proposed class by failing to warn Plaintiff and the proposed class about the defective nature of the drywall, which both malfunctioned and generated untoward side-effects. Defendants, through the exercise of reasonable care, knew or should have known the nature of the drywall and the adverse effects that it could have on the health of the homes it was used to build and the individuals within them.

125. Given the defects of the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause both economic and physical damage to the members of the class.

126. Economic damages include, but are not limited to, substantial reconstruction and repair of Plaintiff's and proposed Class Members' homes, as well as any medical expenses incurred as a result of Defendants' drywall, which are in many instances considerable.

127. Defendants' drywall was the proximate cause of both economic and physical damage brought upon the Plaintiff and members of the class.

128. As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

129. Due to Defendants' negligence, Plaintiff, members of the Class and the public at large will continue to suffer economic and physical damages.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue • Suite 201 • Miami, FL 33137 • Telephone: 305-571-8550 Fax: 305-571-8558 • www.abbrclaw.com

130.   Although Defendants knew or should have known about the defects of their drywall product, Defendants nevertheless continued to manufacture the product and sell it to Plaintiff, members of the class and the public at large.

## COUNT III

### STRICT LIABILITY
(Against all Defendants)

131.   Plaintiff incorporates and restates paragraphs 1-114 as if fully set forth herein.

132.   Defendants were responsible for the manufacturing, inspecting, distributing, selling and installing of the drywall at issue.

133.   By the time Defendants' drywall left Defendants' hands, the risks associated with the product far outweighed its benefits.

134.   Further, by the time Defendants' drywall left Defendants' hands, they knew, or should have known, the product was unsafe, defective, and could cause serious physical and economic harm to Plaintiff and members of the proposed class.

135.   Defendants had a duty to provide Plaintiff, the proposed class and the general public with a safe and properly functioning product.  This is a duty Defendants failed to uphold.

136.   Because Defendants' product created an unreasonable risk to Plaintiff's and proposed class members' homes and persons, Defendants are strictly liable for economic and physical injuries to Plaintiff and members of the proposed Class.

137.   No prudent buyer of Defendants' product could be expected to determine on his or her own that Defendants' product was dangerous and defective.

ALTERS | BOLDT | BROWN | RASH | CULMO

Miami Design District, 4141 Northeast 2nd Avenue · Suite 201 · Miami, FL 33137 · Telephone: 305-571-8550  Fax: 305-571-8558 · www.abbrclaw.com