**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

NORTHSTAR HOLDINGS, INC.,
NORTHSTAR HOMES, INC., AND
NORTHSTAR HOLDINGS AT B & A, LLC,          Case No.: 2:10-cv-00384

        Plaintiffs,                                    **Judge:    EEF**
                                                      **Magistrate:  JCW**

v.

GENERAL FIDELITY INSURANCE
COMPANY, QUANTA INDEMNITY
COMPANY, MID-CONTINENT CASUALTY
COMPANY, AXIS SURPLUS INSURANCE,
AND ESSEX INSURANCE COMPANY,

        Defendants.

_____/

## DEFENDANT ESSEX INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS, IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

      Defendant Essex Insurance Company ("Essex"), by and through undersigned

counsel and pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12 (b)(5),

12(b)(6) and Local Rule for the Eastern District of Louisiana 7.1, moves this Court for the

dismissal of all claims against Essex, or in the alternative, the transfer of the claims against

Essex to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. §

1

1406(a).

Plaintiffs, Northstar Holdings, Inc., Northstar Homes, Inc., and Northstar Holdings at B & A, LLC, ("Northstar" or "Plaintiffs"), have failed to serve Essex within the time prescribed by Federal Rule of Civil Procedure 4(m). However, even if Plaintiffs had properly served Essex with this Complaint, Federal Rule of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6) still requires dismissal of this action.

Northstar fails to allege sufficient facts upon which relief can be granted and fails to assert a proper basis for venue in their Complaint. Northstar also fails to allege a sufficient basis for personal jurisdiction over Essex. Thus, the Complaint is due to be dismissed. Alternatively, this action should be transferred to the Southern District of Florida, the jurisdiction which clearly has the most connection to the claims made in this case. The grounds upon which this motion is based and the substantial matters of law are discussed below.

## I. **STATEMENT OF MATERIAL FACTS**

On April 3, 2009, Katherine Foster ("Ms. Foster") filed a putative class action in the Southern District of Florida, case number 9:09-cv-80535-JIC ("the underlying lawsuit"), alleging that her home in Boynton Beach, Florida, was built in 2006 with defective drywall ("Foster Complaint"). Ms. Foster sued Northstar Homes, Inc., and Northstar Holdings, Inc., along with other defendants, for bodily injuries, property damage, and other damages she allegedly sustained as a result of the drywall in her Florida home. (Foster Complaint at ¶¶ 1-223, attached hereto as Exhibit "A"). In response to this underlying lawsuit, General Fidelity (another insurer and co-defendant in this instant lawsuit) filed a declaratory

2

judgment action in the Southern District of Florida seeking a ruling that it owed no duty to defend or indemnify Northstar in the underlying lawsuit. (General Fidelity Complaint, Exhibit "B"). On or about January 2010, Northstar filed a counterclaim against General Fidelity alleging the exact same issues present in the instant case. (Northstar's Answer and Counterclaim for Declaratory Relief, attached hereto as Exhibit "C").

On June 15, 2009, the Multi-district Litigation Panel ("MDL Panel") issued a transfer order in MDL number 2047 regarding "Chinese-manufactured drywall products liability litigation," thereby transferring nine cases from Florida to the Eastern District of Louisiana where another case was already pending. On July 16, 2009, the Southern District of Florida transferred the underlying lawsuit to the Eastern District of Louisiana in compliance with the transfer order from the Multi-district Litigation Panel. (MDL Transfer Order, Exhibit "D").

The underlying lawsuit was ultimately transferred to the Eastern District in accordance with the Transfer Order. The Southern District of Florida also issued a Conditional Transfer Order transferring six cases (including General Fidelity's declaratory judgment action). (CTO-6, Exhibit "E"). But, on December 2, 2009, the MDL Panel vacated CTO-6 and determined that General Fidelity's coverage action should remain in Florida because, "it raises distinctly different factual and legal questions from the core allegations at issue in MDL NO. 2047, and transfer would not serve the convenience of the parties and witnesses or promote just and efficient conduct of the litigation." (Order vacating CTO-6, Exhibit "F").

On February 12, 2010, Northstar filed the instant action in the Eastern District of Louisiana against five of its alleged insurance carriers, including General Fidelity (alleging

3

identical claims at issue in the action in the Southern District of Florida) and against Defendant Essex, a Delaware Corporation with its principal place of business in Virginia. (*Complaint* at ¶ 8.) As to Essex, Plaintiffs erroneously assert that one or more of the Northstar Plaintiffs is/are named as additional insured(s) under an Essex insurance policy no. 04SX147476, in effect from 9/9/06 to 9/9/07, issued to Plaintiffs' drywall subcontractor, Precision Drywall, Inc., who supplied and/or installed Chinese Drywall in the various claimants' homes. (*Complaint* at ¶¶ 21-22). Essex, in fact did not issue policy no. 04SX147476 to Precision Drywall, Inc., but instead issued policy no. XMR03371, effective dates 9/14/05 to 9/09/06. (Essex Policy No. XMR03371, attached as Exhibit "G").

Northstar, instead of including the additional insurer defendants in the action already pending in the Southern District of Florida against General Fidelity, has filed this second declaratory judgment action in the Eastern District of Louisiana seeking a declaration, nearly identical to that in the Southern District of Florida action, that the insurer defendants provide coverage to Northstar for the Foster Complaint.

A summons was issued to Essex on February 22, 2010. (Summons, attached as Exhibit "H"). Essex has no record of service of the Complaint in this action and no affidavit of service has been filed by the Plaintiffs. Because Essex has not been served in accordance with the 120-day time period allowed by Fed. R. Civ. P. 4(m), the Complaint must be dismissed without prejudice. Additionally, however, Northstar fails to state a claim upon which relief can be granted as to coverage under non-existent Essex Policy No. 04SX147476; and erroneously alleges that Venue is proper in the Eastern District of Louisiana based on 28 U.S.C. § 1391(1)(3) and 28 U.S.C. § 1407. As will be shown below,

·        ***The Complaint must be dismissed against***

4

> ***Defendant Essex due to Plaintiffs' failure to serve Essex within 120 days as required by Fed. R. Civ. P. 4(m).***

- ***Plaintiffs have no cause of action for benefits under Policy No. 04SX147476 because such policy does not exist;***

- ***Plaintiffs have failed to meet their burden of showing that Venue in the Eastern District of Louisiana is proper;***

- ***Plaintiffs have not established that the Eastern District of Louisiana may exercise personal jurisdiction over Defendant Essex; and***

- ***The Southern District of Florida is the most convenient forum with the most interest in the outcome of this litigation.***

## II. LEGAL ANALYSIS

### A. The Complaint Is Due to Be Dismissed Pursuant to Rule 12(b)(5) Because Plaintiffs Failed to Serve Essex as Required Under Rule 4(m)

Federal Rule of Civil Procedure 12(b) permits dismissal for insufficient service of process. Fed.R.Civ.P. 12(b)(5). Federal Rule of Civil Procedure 4(c) requires that the plaintiff have "the summons and complaint served within the time allowed by Rule 4(m)." Fed. R. Civ. P. 4(c)(1).

Rule 4(m) (titled "Time Limit for Service") provides:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–**must dismiss the action without prejudice** against that defendant or order that service be made within a specified time. ...

(Emphasis added.)

5

The Complaint in this matter was filed on February 12, 2010 and a summons was issued addressed to Essex on February 22, 2010. The time within which Plaintiffs could properly serve Essex expired no later than June 22, 2010. As of the date of filing of this motion, Essex still has not been served.

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whom such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed without prejudice, upon the Court's own initiative with notice to such party or upon motion. *Davis-Wilson v. Hilton Hotels Corp.*, 106 F.R.D. 505, 507 (E.D. La. 1985).

Where a plaintiff can show good cause why service was not effected within 120 days, dismissal is not mandated and the deadline can be extended. *Id.* However, "'good cause' ... is a stringent standard requiring diligence and is not satisfied by a showing of inadvertence by counsel or like excuses; absent adequate showing of good cause, dismissal without prejudice is mandated." *Davis-Wilson*, 106 F.R.D. at 509 (citation omitted).

Obviously in this case, Essex has obtained a copy of this Complaint. However, absent service in accordance with the Federal Rules, this court has no personal jurisdiction over Essex. "A defendant must be served in accordance with Rule 4's requirement or there is no personal jurisdiction; neither actual notice nor simply naming the defendant in the complaint's caption will subject the defendant to personal jurisdiction if service is not made in substantial compliance with Rule 4." ‾ *Davis-Wilson*, 106 F.R.D. at 508 (*citing Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir.1982)).

6

However, as will be discussed below, even if service of the Complaint at issue is properly effected, this Complaint is still subject to dismissal as to Essex for failure to state a claim, lack of personal jurisdiction pursuant to Rule 12(b)(2) and improper venue.

## B.   The Complaint Is Due to Be Dismissed Pursuant to Rule 12(b)(6) Because There Is No Contract of Insurance Policy No. 04SX147476 Issued by Essex to Precision Drywall, Inc.

Federal Rule of Civil Procedure 12(b) permits dismissal where the claimant fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "[W]hen the allegations in a Complaint . . . could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court'." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1966 (2007) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, 234)). In the instant case, Plaintiffs allege they are entitled coverage under Essex Policy No. 04SX147476. However, as will be shown below, no such policy has been issued to Precision Drywall, Inc. and/or Plaintiffs by Essex. Thus, because the Complaint states no claim upon which relief can be granted, the Complaint is due to be dismissed.

In evaluating a motion to dismiss, "the District Court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Association,* 987 F.2d 278 (5th Cir.1993) (citation omitted). The factual allegations must be more than labels, conclusions, or a recitation of the elements of the claim. *Twombly,* 127 S.Ct. 1955. Moreover, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the

7

complaint are true (even if doubtful in fact)' and the non-moving party must plead 'enough facts to state a claim to relief that is plausible on its face.' This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re Southern Scrap Material Co., LLC,* 541 F.3d 584 (5th Cir. 2008) (internal citation omitted) (emphasis added).

In the instant case, Plaintiffs have alleged that Essex issued insurance policies to subcontractor, Precision Drywall, Inc., under which one or more of the Northstar entities either were a named insured and/or an additional insured. (Complaint, ¶¶s 21-22). Specifically, per the Complaint, Plaintiffs allege that Essex Policy No. 04SX147476, with effective dates of 9/09/06 to 9/09/07, provides coverage for the underlying claims and Essex breached the provisions of Policy No. 04SX147476 by denying coverage to Plaintiffs. However, there is no such Essex policy insuring either Northstar or Precision Drywall, Inc. Instead, the only policy issued by Essex to precision Drywall, Inc. is Policy No. XMR03371 which was in effect between 9/14/05 and 9/14/06.[1] (Essex Policy XMR03371, Exhibit "G").

While it is true that, generally, a court ruling on a motion to dismiss may rely only on the complaint and its proper attachments[2], it is well recognized that, on a Rule 12(b)(6) motion to dismiss, courts may properly consider documents the defendant attaches as "part of the pleadings ... if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000);

---

[1]By filing of this Motion, Essex does not waive any defenses against Northstar including but not limited to the application of all relevant policy provisions and exclusions and that Northstar may not qualify as an additional insured under Policy No. XMR03371.

[2]*Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir.2006).

*see also Carrier v. Balboa Ins. Co.*, Slip Copy, 2009 WL 666962, *1 (W.D. La. 2009)(the Court agreed to consider an insurance policy referenced in the original Complaint and correspondence with the mortgage lender supplied by the Defendant on a Motion to Dismiss, determining both were central to the claim). In the instant case, because the Plaintiffs bring suit to recover pursuant to an insurance policy, and the insurance policy issued by Essex is central to the claim, the Court should consider the attached policy in deciding this motion.

Based on the attached insurance policy, there is no question that, even when taking all the allegations in the light most favorable to the Plaintiffs, they have failed to state a claim against Essex for proceeds under a valid contract of insurance issued to Plaintiffs and/or to Precision Drywall, Inc., and Essex is, therefore, entitled to dismissal. In alternative to dismissal, Essex requests this Court order Plaintiffs to amend the Complaint to allege facts properly supporting a claim against Essex for benefits under a valid policy of insurance, or be subject to dismissal of all claims.

## C.    The Complaint Is Due to Be Dismissed Pursuant to 12(b)(3) Because Venue Is Improper

Federal Rule of Civil Procedure 12(b)(3) states that a district court may dismiss a complaint for improper venue. The plaintiff has the burden to establish that venue is proper in the chosen district. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Am. Pipe*, 2005 WL 1155858 (E.D. La. 2005) (citing *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619 (5th Cir.1999)). In its Complaint, Northstar alleges two bases for venue: (1) 28 U.S.C. § 1407 and (2) 28 U.S.C. § 1391(a)(3). Dismissal is warranted because Plaintiff has failed to establish that the Eastern District of Louisiana is a proper venue for this action under either

9

§ 1391(a)(3) or § 1407.

## 1. 28 U.S.C. § 1407 is not a Proper Basis for Venue in the Eastern District of Louisiana

28 U.S.C. § 1407 is not a venue provision, but instead, addresses multi-district

litigation. Specifically, this section provides that transfers of civil actions with common

question of fact **shall be made by the judicial panel on multidistrict litigation.**

Specifically, 1407(a) provides that:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, that the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

The rule then goes on to provide the procedure by which the multi-district panel may

transfer an action, either on its own motion or motion by a party. § 1407(c). The word

"venue" is not found anywhere in § 1407(a). Nonetheless, Northstar argues that § 1407

is a venue provision and that, based on § 1407 venue is proper in the Eastern District.

Clearly, while this rule provides for a transfer by the multi-district panel and pursuant to the

multi-district litigation from a court of proper original venue (assuming it is warranted), §

1407 is not a *primary basis* for venue when filing a complaint. This is made quite clear by

the fact that district courts have held that a party can only initiate proceedings for transfer

of action for consolidated pretrial proceedings with similar action by filing a motion with the

10

multi-district panel and by filing a copy of such motion with the district court *in which the action is pending. Tim W. Koerner & Associates, Inc. v. Aspen Labs, Inc.*, S.D.Tex.1980, 492 F.Supp. 294, *affirmed* 683 F.2d 416, *rehearing denied* 685 F.2d 1385. (Emphasis added.) Instead, venue is controlled by 28 U.S.C. § 1406.

The Plaintiff has not met its burden of establishing proper venue pursuant to 28 U.S.C. § 1407, as § 1407 is not a basis for venue, it is merely a vehicle by which the MDL panel may transfer actions to the MDL which were previously filed in a proper venue.

## 2. 28 U.S.C. § 1391(a)(3) is Inapplicable to this Matter and Does Not Provide for Venue in the Eastern District of Louisiana

Northstar asserts in its Complaint, without explanation, that by virtue of § 1391(a)(3), the Eastern District is a proper venue for this Complaint. However, that is simply untrue, as § 1391(a)(3) applies only where there is <u>no other judicial district where the case may be brought</u>. That is simply not the case here because this claim could have been brought in the Southern District of Florida.

Specifically, § 1391 (titled "Venue generally") provides in relevant part:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) <u>a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, **if there is no district in which the action may otherwise be brought.**</u>

(Emphasis added).

As the statute makes clear, venue is proper under § 1391(a)(3) <u>only if there is no other judicial district in which the case may be properly brought</u>. This subsection is

11

inapplicable in the instant case because this action could have been brought in other districts, including the Southern District of Florida, where a similar action is *currently pending*. In fact, Northstar previously acquiesced to the Southern District of Florida being a proper venue by stating, "Northstar does not contest venue in the United States District Court, for the Southern District of Florida, West Palm Beach Division." (Northstar's Answer and Counterclaim for Declaratory Relief, attached hereto as Exhibit "C"). Moreover, all of the events giving rise to the underlying Foster Complaint occurred in Palm Beach County, Florida and the underlying property at issue is located in Palm Beach County, Florida. (*Complaint* at ¶¶ 1-4, 12 and 13).

Plaintiffs have failed to establish that venue is proper in the Eastern District of Louisiana pursuant to § 1391 because it is clear that this action could have been brought in another district, and specifically, could have been brought, and should have been brought, in the Southern District of Florida. Accordingly, Northstar has failed to satisfy its burden to prove that venue is proper in the Eastern District of Louisiana and pursuant to Fed. R. Civ. P. 12(b)(3), the Complaint should be dismissed.

## D.   The Complaint Is Due to Be Dismissed Because the Court Lacks Personal Jurisdiction over Essex

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a suit for lack of personal jurisdiction. With regard to personal jurisdiction, "'the plaintiff bears the burden of establishing the district court's jurisdiction' over a nonresident defendant." *Watch Systems LLC v. Sys. Design Solutions, Inc.*, 2009 WL 5217085 (E.D. La. 2009)(quoting *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996). Where a Court's personal jurisdiction over a defendant is contested, the plaintiff

has the burden of showing that such jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673 (4th Cir. 1989). Plaintiffs have not met their burden because the instant case does not arise out of an occurrence in Louisiana nor property located in Louisiana and Northstar has failed to allege sufficient "minimum contacts" with the State of Louisiana.

Federal personal jurisdiction over a nonresident defendant may be asserted if the following two prongs are met: (1) the law of the forum state provides for the assertion of such jurisdiction; and (2) the exercise of jurisdiction under state law comports with the dictates of the Fourteenth Amendment Due Process Clause. *PPD Ship, L.L.C. v. Enos*, 2003 WL 22038517, * 3 (E.D. La. 2003) (citing *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751 (5th Cir. 1996)). Louisiana's Long Arm Statute allows for the exercise of personal jurisdiction over a non-resident with any manner consistent under the Constitution. Thus, to exercise jurisdiction over a non-resident of Louisiana, the requirements of due process must be met. La. R.S. § 13:3201(B); *Nuovo Pignone, SpA v. Storman Asia M/V, etc.*, 310 F.3d 374, 378 (5th Cir. 2002)(stating that the Louisiana Long Arm Statute and Due Process Clause inquiry "merge into one").

## 1. Northstar Has Failed to Allege Facts Sufficient to Show That Exercise of Jurisdiction over Essex Comports with Due Process Requirements

The due process inquiry has two prongs. First, for personal jurisdiction to exist the non-resident defendant must have "minimum contacts" with the forum state. *Int'l Shoe Co. Ltd. v. Washington*, 326 U.S. 310, 316 (1945); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). Second, any exercise of personal jurisdiction over an out-of-state defendant must not offend "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 105 (1987)(citing

13

*International Shoe, supra)*; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks*, S.A., 898 F.2d 1071 (5th Cir.1990).

### (a)   **"Minimum Contacts" Has Not Been Satisfied**

The "minimum contacts" prong can be satisfied **through contacts sufficient to assert either specific jurisdiction *or* general jurisdiction**. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, (5th Cir. 2000). In the instant case, Northstar alleges that Essex has limited contacts with Louisiana. Specifically, Northstar alleges only that "Essex is authorized to conduct business in the state of Louisiana and has issued insurance policies in the state of Louisiana, including to individuals and entities located in the Eastern District of Louisiana." (*Complaint*, ¶ 8). Plaintiffs do not allege that any of the events giving rise this lawsuit occurred in Louisiana. Thus, "minimum contacts" sufficient to show personal jurisdiction over Essex may only be established through the Court's general jurisdiction, if it so exists.[3]

General jurisdiction is proper where a non-resident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are "continuous and systematic." *Helicopteros*, 466 U.S. at 415-16. In regard to general jurisdiction, "[m]ore contact is required with the forum state because the state has no direct interest in the cause of action." *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir. 1987).

---

[3]Specific jurisdiction over a non-resident corporation is *only applicable* when the corporation has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). There is no question that this lawsuit does not arise from injuries as a result of Essex's purposefully directed activities in the state of Louisiana. To the contrary, Plaintiffs have alleged only that Essex issues policies in Louisiana and has not alleged that the policy at issue was issued  in Louisiana nor that the events giving rise to this lawsuit occurred in Louisiana. Thus, whether this Court has general jurisdiction is the focus in a legal analysis of the issue.

Conduct incident to general personal jurisdiction that may indicate a non-resident defendant's intent to purposefully avail itself to the forum state's market could include: (1) designing a product specifically for the market, (2) advertising in the forum state, (3) establishing channels for providing regular advertising to customers in the forum state, or (4) marketing a product through a distributor who agrees to serve as a sales agent in the forum state. *See Asahi Metal*, 480 U.S. at 112.

The only "contact" with the Eastern District of Louisiana alleged in Plaintiffs' Complaint is that Essex is authorized to conduct business in the State of Louisiana, including within the Eastern District. (*Complaint*, ¶ 8). Arguably, this very limited contact may be sufficient for "specific jurisdiction" applicable where the Plaintiff's lawsuit arises from injuries related to Essex's conduct within the State of Louisiana. However, there is no question that the lawsuit does not arise from Essex's conduct within the State of Louisiana.

Merely contracting with a resident of the forum state is insufficient to subject the non-resident to the forum's jurisdiction. *Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986)(citations omitted). In fact, this District has previously held that the insurer's contacts with Louisiana were too attenuated to support jurisdiction where an additional named insured was a resident of the state of Louisiana, because "an insurance contract standing alone is insufficient to support jurisdiction." *Louis Dreyfus Corp. v. McShares, Inc.*, 723 F. Supp. 375 (E.D. La. 1989), *reh'g granted* 1989 WL 147535 (E.D. La. 1989)(finding jurisdiction over the insurer based upon products liability/stream of commerce rationale where the insured was located in and

15

doing business in Louisiana). Here, Northstar is neither a resident of the state of Louisiana
nor is it doing business in the State.

Minimum contacts can only be satisfied where the "general jurisdiction" is satisfied.
Northstar has failed to allege sufficient contacts to warrant general jurisdiction, and
therefore, the Complaint should be dismissed.

## (b) The Exercise of Personal Jurisdiction over Essex Offends Traditional Notions of Fair Play and Substantial Justice

A dismissal is also warranted because the burdens on Essex to litigate this case in
Louisiana would violate the "traditional notions of fair play and substantial justice."
Specifically, with respect to second prong of the due process inquiry, "traditional notions
of fair play and substantial justice," the Supreme Court articulated the relevant factors in
*Asahi*:

> A court must consider the burden on the defendant, the interests of the
> forum State, and the plaintiff's interest in obtaining relief. It must also weigh
> in its determination the interstate judicial system's interest in obtaining the
> most efficient resolution of controversies; and the shared interest of the
> several States in furthering fundamental substantive social policies.

480 U.S. at 113 (internal citation and quotation marks omitted).

Louisiana has no interest in this litigation because this case relates to properties
located in Florida, involving Florida insurance policies, and would require this Court to
interpret Florida law. Thus, this case would be most efficiently resolved in the Southern
District of Florida. Moreover, Northstar could obtain relief in the Southern District of Florida
by amending its pending counterclaim against General Fidelity to add additional parties.

A dismissal for lack of personal jurisdiction is warranted because exercising
personal jurisdiction over Essex would violate the "traditional notions of fair play and

16

substantial justice."

## E. Alternatively, Venue Should be Transferred Pursuant 28 U.S.C. 1404(a) & 1406(a)

Even if this Court determines that the Complaint is not subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(2), this matter should be transferred to the Southern District of Florida. Specifically, a district court has the authority to transfer a case in the interest of justice to another district in which the action might have been brought, regardless of whether venue exists in the original forum. *See* 28 U.S.C. §§ 1404(a) and § 1406(a).

Assuming venue is proper in the original forum, the transfer may be made pursuant to § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." If venue is improper in the original forum, the transfer **must be** made under § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The first step in analysis of forum non conveniens dismissal is to determine whether there exists an adequate and available alternative forum for resolution of the dispute. Once the court has determined that such a forum exists, "the next step is to proceed to a balancing of the public and private interest factors." *Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, 796 F.2d 821, 828 (5th Cir. 1986)(internal citations omitted). In determining whether the transferee venue is clearly more convenient, courts consider the private and public interest factors articulated in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235

17

(1981) and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See also In Re Volkswagen of*

*America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). The private interest factors include:

(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of witnesses;

(3) the cost of attendance for willing witnesses; and

(4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.*

The public interest factors include:

(1) the administrative difficulties flowing from court congestion;

(2) the local interest in having localized interests decided at home;

(3) the familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.*

While a plaintiff's choice of forum is an important consideration in determining

whether a motion to transfer should be granted, it is *not absolute* and will not defeat a well-

founded motion to transfer. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.,* 42

F.Supp.2d 821, 833 (N.D. Ill. 1999) (emphasis added). A plaintiff's choice of forum is given

less deference where the operative facts underlying the cause of action did not occur in

the forum chosen by the Plaintiff. *Mason v. Smithkline Beecham Clinical Laboratories,* 146

F.Supp. 2d 1355 (S.D. Fla. 2001). *See also Ratner v. Hecht*, 621 F. Supp. 378 (D.C. Ill.

1985) (rev'd on other grounds) where the District Court explained that transfer of venue

18

was proper and the Plaintiff's choice of forum was to be given little weight because the Plaintiff's choice was based largely on convenience to the Plaintiff instead of any significant connection of the action to the forum.

In this case, the Eastern District of Louisiana is not convenient for any party, the material events did not occur in the state of Louisiana and no witnesses or parties are located in the state of Louisiana. Specifically, Plaintiffs are a Florida Corporation; the homes at issue in the underlying lawsuit are located in the State of Florida; Precision Drywall, Inc. (the drywall subcontractor) is located in the State of Florida; and the Essex insurance policy was delivered in the State of Florida. (*Complaint*, ¶ 1; Florida Department of State Division of Corporations Detail Precision Drywall, Inc., Exhibit "I"). Further, Northstar - a Florida corporation with little or no contacts with Louisiana - filed this lawsuit despite filing a counterclaim in the Southern District of Florida seeking similar relief against Essex's co-defendant in the instant case, General Fidelity. Plaintiffs are free to amend their Counterclaim and allege the counts in this instant case in the existing coverage action pending the Southern District of Florida. Thus, regardless of Plaintiffs' choice of venue in the State of Louisiana, the claim has a much stronger nexus to the State of Florida.

## 1. **Private Interest Factors Weigh in Favor of Transfer**

### (a) **The Relative Ease of Access to Sources of Proof**

Most of the relevant records and documents of the parties are located where the parties are located (Northstar - Florida and Essex -Virginia). Therefore, if this Court does not dismiss or transfer this case, both parties will be forced to transport its records and documents to Louisiana. However, if this case were in Florida, only one party, Essex,

19

would be required to transport its records and documents to Florida. This factor therefore weighs in favor of transferring the case to the Southern District of Florida.

### (b)    The Availability of Compulsory Process to Secure the Attendance of Witnesses

Federal Rule of Civil Procedure 45(b)(2) governs the places where a subpoena issued by a United States district court may be served. A district court's subpoena power is subject to Rule 45(c)(3)(A)(ii), which protects non-party witnesses who work or reside more than 100 miles from the courthouse. *See In re Volkswagen*, 545 F.3d at 316. Similar to the sources of proof, any potential witnesses will likely be located outside of Louisiana. These possible witnesses who are not parties to this case, such as the potential class members in the underlying suit, would therefore not be within the subpoena power of a Louisiana district court. This factor weighs in favor of transferring to the Southern District of Florida.

### (c)    The Cost of Attendance for Willing Witnesses

The Fifth Circuit has established a threshold of 100 miles when giving substantial weight to this factor. *See In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004). The court in *In re Volkswagen* reasoned that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* Most of the possible witnesses in this case would be in Florida, as this is where the impaired properties are located and where the potential class members of the underlying action reside. As a result, it would be significantly more costly for witnesses to travel to Louisiana rather than the witnesses

20

staying in Florida. This factor weighs in favor of transferring to the Southern District of Florida.

### (d) All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

A nearly identical lawsuit against Essex's co-defendant is currently pending in the Southern District of Florida. It would therefore be easier, more expeditious, and less expensive for Northstar as well as all other potential insurers to have this case proceed in the Southern District of Florida, rather than confronting the same issues in the Eastern District of Louisiana. As discussed above, Northstar could amend its Counterclaim to add claims and parties. This factor weighs in favor of transferring this action to the Southern District of Florida.

### 2. Public Interest Factors Also Weigh in Favor of a Transfer

### (a) Local Interest in Having Localized Interests Decided at Home

This case involves insurance policies executed and delivered in Florida to Florida companies. Moreover, the damaged properties giving rise to the current dispute are located in Florida. Louisiana's interest in this matter relates to regulating insurance companies that conduct business in Louisiana. (Florida also has an interest in regulating insurance companies conducting business in Florida.) Florida's interest in resolving conflicts arising out of insurance policies issued in Florida, involving Florida corporations and Florida homeowners outweighs Louisiana's interest in this case. Thus, this factor weighs in favor of transfer.

21

### (b) Familiarity of the Forum with the Law That Will Govern the Case and the Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law

Although this Court is undoubtedly capable of deciphering Florida law, the Southern

District of Florida would be more familiar with the nuances of Florida law and this Court

would avoid having to apply Florida law by transferring this case.

Federal courts sitting in diversity must apply the choice of law rules of the forum

state in which the court sits. *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352

F.3d 254, 260 (5th Cir. 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,

496 (1941)). Louisiana conflicts of law principles codified in La.Civ.Code, Art. 3515

provides as follows:

Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La.Civ.Code, Art. 3537, which establishes the approach for selecting the law

applicable to conventional obligations, such as an insurance policy, states:

Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly

22

planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

Articles 3515 and 3537 are intended to be read together, the objective being to identify the state, in light of its connections to the parties, and the transaction and its interests implicated in the conflict, which would bear the most serious consequences if its law were not applied to the issue at hand. *See* La.Civ.Code Art. 3537, comment (c). Applying these principles, Louisiana courts generally find that the law of the state in which the insurance policy was issued governs the interpretation of the policy's terms. *See Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999) (citing *Anderson v. Oliver*, 705 So. 2d 301, 305 (La. App. 3d Cir. 1998) and *Holcomb v. Universal Ins. Co.*, 640 So. 2d 718, 722 (La. App. 3d Cir. 1994)); *see also Cleveland Construction, Inc. v. Whitehouse Hotel Ltd. Partnership*, No. 01-2666, 2004 WL 1460047, *2 (E.D. La. 2004) (holding that Ohio law governs the interpretation of a commercial general liability policy issued in Ohio, by an Ohio insurer, to an Ohio insured); *Williams v. Brown's Dairy*, No. 02-2062, 2003 WL 21634951, *2-*3 (E.D. La. 2003) (applying Texas law to a commercial general liability policy issued to a Texas corporation).

There is no reason for deviation from the general rule that the interpretation of an insurance policy is governed by the law of the state in which the policy was issued in the instant case. First, Florida has a significant interest in the interpretation of the insurance policies at issue, which were executed and delivered in Florida, issued to Florida companies, involving Florida properties. Further, none of the events that give rise to this dispute took place in Louisiana. Finally, Northstar previously admitted that Florida law applies to the interpretation of the insurance policies. (Northstar's Answer and

23

Counterclaim for Declaratory Relief at ¶ 10, Exhibit "C"). Thus, these factors weigh in favor of transfer.

Essex has clearly met its burden of demonstrating that another forum is "clearly more convenient." As such, this Court should transfer this case to the Southern District of Florida.

## 3. In the Interest of Justice, this Matter Should be Transferred to the District Court for the Southern District of Florida

The "interest of justice" component of §1404 includes consideration of the speed at which the case will proceed to trial, the court's familiarity with the applicable law, and the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale. *Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc.*, 200 F.Supp.2d 941 (N.D.III. 2002); *see also Irwin v. Zila, Inc.*, 168 F.Supp.2d 1294 (M.D. Ala. 2001).

As detailed above, nearly all material aspects of this matter occurred in the State of Florida. The State of Louisiana has essentially no relation at all to this claim. Additionally, the law of the State of Florida is applicable to this matter. Moreover, Northstar has a very similar action already pending in the Southern District of Florida and could easily amend that action to add these claims against Essex. For these reasons, in the interest of justice, this matter should be transferred to the Southern District of Florida.

## III. CONCLUSION

For the reasons discussed herein, Plaintiffs Complaint against Essex must be dismissed for failure to timely serve Essex. Additionally, even if service of this Complaint had been proper, Plaintiffs fail to allege sufficient facts upon which relief can be granted

and also fail to assert a proper basis for venue in their Complaint. Northstar also fails to allege a sufficient basis for personal jurisdiction over Essex. Thus, the Complaint is due to be dismissed. Alternatively, this action should be transferred to the Southern District of Florida, the jurisdiction which clearly has the most connection to the claims at issue in this action.

Respectfully submitted:

REBECCA C. APPELBAUM
FL Bar No. 0179043
rappelbaum@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
777 S. Harbour Island Boulevard, Suite 500
Tampa, Florida 33602
(813) 281-1900
(813) 281-0900 (fax)

CARIN DORMAN BROCK , ESQ.
LA Bar. No. 28339
cbrock@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
Post Office Box 16328
Mobile, Alabama 36616
(251) 338-3801
(251) 338-3805 (fax)
Attorneys for Defendant, Essex Insurance Co.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Hearing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of July, 2010.

Respectfully submitted,

REBECCA C. APPELBAUM, ESQ.