**MARKEL RE**

# ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| ATTACHED TO AND FORMING PART OF POLICY NO. | EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| XMR03371 | 09/14/2005 | PRECISION DRYWALL, INC. |

## THIS ENDORSEMENT CHANGES THE POLICY.
### Please read it carefully

This endorsement modifies insurance provided under the following:

CLAIMS MADE EXCESS LIABILITY POLICY
OCCURRENCE EXCESS LIABILITY POLICY
UMBRELLA LIABILITY POLICY

ENDORSEMENT #1

IN CONSIDERATION OF THE PREMIUM CHARGED, AT INCEPTION OF POLICY, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE POLICY IS AMENDED AS FOLLOWS:

FORM MRE 2002 IS AMENDED AS FOLLOWS:
THE RATE IS HEREBY AMENDED TO READ 1.774 IN LIEU OF 2.07

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Date Issued: 01/13/2005
Agency Name: DAYTONA BEACH, FL
Agency No.: 8-101070

_____
Authorized Representative

MRE 011 (01/05)

**EXHIBIT**
6

Page 1 of 1



Post Office Box 3066 | Tallahassee | Florida | 32315-3066
800.342.0991 | www.premiumassignment.com

January 4, 2006

*Markel Re*

ESSEX INS CO
PO BOX 2010
GLEN ALLEN VA 23058-2010

REQUEST FOR REINSTATEMENT

INSURED: PRECISION DRYWALL INC

POLICY NO: XMR03371
COMPANY: ESSEX INS CO
PAC ACCOUNT NO: 188988
DATE CANCELLED: 1/03/06

TO THE COMPANY:

We recently requested cancellation of the above referenced policy on the
date indicated due to nonpayment of premium by the policyholder.

Your policyholder has now paid us sufficient funds to cover the
delinquency. IF YOU ARE WILLING TO REINSTATE THE POLICY EFFECTIVE AS
OF OUR DATE CANCELLED, PLEASE SEND YOUR FORMAL NOTICE TO ALL PARTIES
IN THE USUAL WAY, WITH A COPY TO US. IF YOU DO NOT REINSTATE THE
COVERAGE, RETURN THIS REQUEST TO US WITH THE APPROPRIATE REMARKS.

TO THE INSURED/POLICYHOLDER:

We received your insurance payment and have applied it to your account.
However, prior to receiving your payment, we mailed a cancellation notice
to your insurance company requesting cancellation of your insurance policy.

*RECEIVE*
*JAN 1 1 2006*
*ESSE:*

This letter notifies your insurance company that your account is now
current and requests that your insurance coverage be reinstated.

A REINSTATEMENT HAS ONLY BEEN REQUESTED. PREMIUM ASSIGNMENT
CORP., AS A LICENSED PREMIUM FINANCE COMPANY, CANNOT REINSTATE
THE POLICY. WE SUGGEST THAT YOU CONTACT YOUR INSURANCE AGENT
IMMEDIATELY TO DETERMINE THE STATUS OF YOUR INSURANCE COVERAGE.

Customer Service Department
Extension 12
CC: PRECISION DRYWALL INC
LRI   C



*A SunTrust Company*



**PREMIUM ASSIGNMENT**
C O R P O R A T I O N

Post Office Box 3066 I Tallahassee I Florida I 32315-3066
850.907.5610 I www.premiumassignment.com

## NOTICE OF CANCELLATION

Markel Re

ESSEX INS CO
PO BOX 2010
GLEN ALLEN VA 23058-2010

01/03/2006

CANCELLATION DATE: 01/03/2006

| ACCOUNT NUMBER: 188988 | INSTALLMENT DUE: 12/09/2005 |
| ACCOUNT BALANCE: $17,614.15 | INSTALLMENT AMT: $5,775.13 |

POLICY NUMBER: XMR03371

You are hereby notified that the policy described above is cancelled for non-payment of an installment in accordance with the conditions and terms of the Premium Finance Agreement, which incorporates a power of attorney. This cancellation is effective one day after the above captioned date, at the hour indicated in the policy as the effective time.

The Florida Insurance Code, Part XV of Chapter 627, recognizes this as valid notice of cancellation and provides that the gross unearned premium be returned to the premium finance company.

If the policy or any statute requires the insurer to give notice to a mortgagee, governmental agency, or other third party before the policy can be cancelled, the insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation.

Agent:
ADVANCED INS UNDWTRS/FT LA
3250 N 29TH AVE
HOLLYWOOD FL 33020

Insured:
PRECISION DRYWALL INC
601 N CONGRESS AVE #501
DELRAY BCH FL 33445



JAN 1 1 2006
ESSEX INSURANCE



**Any payment received after mailing of this Notice of Cancellation
to the insurance company will not reinstate the policy.**

**WARNING: See other side of page for important notice if your address
is in Florida, New York, North Carolina or South Carolina.**

INSURANCE COMPANY COPY



**MARKEL RE**

**ESSEX INSURANCE COMPANY**
Home Office: 1209 Orange Street, Wilmington, DE 19801
Administrative Office: 4521 Highwoods Parkway, Glen Allen, VA 23060

| POLICY NUMBER |
|---|
| XMR03371 |

RENEWAL OF: __NEW__

### DECLARATIONS

### EXCESS LIABILITY POLICY OCCURRENCE FORM

POLICY PERIOD:   FROM 09/14/2005   TO 09/09/2006
(12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN)

| ITEM 1.   NAMED INSURED AND MAILING ADDRESS:<br>PRECISION DRYWALL, INC.<br><br>601 N CONGRESS AVE, #501<br>DELRAY BEACH, FL 33445 | PRODUCER NAME AND MAILING ADDRESS:<br>MACDUFF UNDERWRITERS, INC.<br>PO BOX 2427<br>DAYTONA BEACH, FL 32115<br><br>PRODUCER NUMBER: 8-101070 |
|---|---|

BUSINESS DESCRIPTION: DRYWALL INSTALLATION

FORM OF BUSINESS:      [ ] Individual      [ ] Partnership      [ ] Corporation      [X] Other _____

| PREMIUM | | |
|---|---|---|
| ITEM 2.   POLICY MINIMUM AND DEPOSIT PREMIUM | | MINIMUM EARNED PREMIUM |
| $ 10,641.00<br>TRIA $ REJECTED | | $ 10,641.00 |
| BASIS OF PREMIUM | UNITS OF EXPOSURE | RATE |
| [ ] Flat<br>[X] Per $1,000 gross receipts<br>[ ] Per MRE 037 | $ 6,000,000 | $ 2.07 |

ITEM 3.                           POLICY LIMIT

Limits of Liability $ 2,000,000      EACH OCCURRENCE AND AGGREGATE

ITEM 4.                           SCHEDULE OF PRIMARY INSURANCE

SEE MRE 003 WHICH FORMS A PART OF THIS POLICY'S DECLARATIONS.

ITEM 5.   ENDORSEMENTS ATTACHED TO AND FORMING A PART OF THIS POLICY AT INCEPTION:

Endorsements attached:   SEE MRE 001 SCHEDULE OF FORMS AND ENDORSEMENTS

| DATE OF ISSUE: 10/17/2005 | COUNTERSIGNATURE OF AUTHORIZED AGENT:<br>*Mark Lowe* |
|---|---|

THIS DECLARATIONS PAGE IS ISSUED IN CONJUNCTION WITH AND FORMS A PART OF THE POLICY FORM MRE 2000.

MRE 2002 (01/05)                                                                 Page 1 of 1

 **MARKEL RE**

# SCHEDULE OF UNDERLYING INSURANCE

The limits shown below reflect your underlying limits. We attach over only those lines of coverage (A, B, C, D or E) where underlying limits are shown. Coverage afforded under this policy is subject to all forms, endorsements, exclusions, definitions, terms and conditions of this policy.

| Type of Policy | | Limits of Liability | |
|---|---|---|---|
| **A.    COMMERCIAL GENERAL LIABILITY** | | | |
| Company: OLD DOMINION INS CO | General Aggregate Limit (Other than Products-Completed Operations) | $ 2,000,000 | |
| Policy No.: MSG24989 | | | |
| Expiration Date: 09/09/2006 | Products-Completed Operations Aggregate | $ 2,000,000 | |
| | Personal & Advertising Injury Limit | $ 1,000,000 | |
| | Each Occurrence Limit | $ 1,000,000 | |
| **B.    AUTOMOBILE LIABILITY** | | | |
| Company: PROGRESSIVE COMPANY | Bodily Injury and Property Damage Combined Single Limit | $ 1,000 $ 1,000 | ,000 Each Accident ,000 Each Accident |
| Policy No.: TO FOLLOW | Bodily Injury | $ | ,000 Each Person |
| Expiration Date: 03/10/2006 | Property Damage | $ | ,000 Accident |
| | Hired/Non-Owned Limit | $ | ,000 Each Accident |
| **C.    EMPLOYER'S LIABILITY** | | | |
| Company: AMERICAN INTERNATIONAL | Bodily Injury by Accident | $ 1,000 | ,000 Each Accident |
| Policy No.: WC7691453 | Bodily Injury by Disease | $ 1,000 | ,000 Each Policy Limit |
| Expiration Date: 05/31/2006 | Bodily Injury by Disease | $ 1,000 | ,000 Each Employee |
| **D.    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY** | | | |
| Company: EXCLUDED | Aggregate Limit | $ | |
| Policy No.: | Each Occurrence Limit | $ | |
| Expiration Date: | | | |
| **E.    OTHER (Specify type):** | | | |
| Company: | | $ | ,000 Each Claim |
| Policy No.: | | $ | ,000 Annual Aggregate |
| Expiration Date: | | | |

MRE 003 (01/05)

 **MARKEL RE**

Insured: PRECISION DRYWALL, INC.

Policy Number: XMR03371

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of Issuance:

| FORM NUMBER/ EDITION DATE | TITLE |
|---|---|
| MRE 2002 (01/05) | ESSEX EXCESS LIABILITY DEC |
| MRE 2000 (01/05) | OCCURRENCE EXCESS LIABILITY POLICY |
| MRE 003 (01/05) | SCHEDULE OF UNDERLYING INS |
| MRE 004 (01/05) | TERRORISM EXCL |
| MRE 005 (01/05) | AMENDATORY ENDT SERVICE OF SUIT |
| MRE 008 (01/05) | PRIVACY NOTICE |
| MRE 009 (01/05) | POLICYHOLDER DISCLOSURE TERRORISM FORM |
| MRE 024 (01/05) | ASSAULT & BATTERY EXCL |
| MRE 265 (01/05) | CONTRACTORS COMBINATION EXCL |
| MRE 273 (01/05) | INTELLECTUAL PROP INFRINGEMENT EXCL |

MRE 001 (01/05)

Page 1 of 1

 **MARKEL RE**

# TERRORISM EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY.
### Please read it carefully.

This policy does not insure any loss, damage, claims, cost or expense, or any other sum either directly or indirectly arising out of, or relating to:

1. Any act of "Terrorism", or
2. Any action authorized by a government authority or agency for the purpose of preventing, terminating, countering or responding to any act of terrorism or for the purpose of preventing or minimizing the consequences of any act or threat of terrorism.

This exclusion applies regardless of whether there is: (a) any physical loss or damage to insured property; (b) any insured peril or cause whether or not contributing concurrently or in any sequence; (c) any loss of use, occupancy or functionality; or (d) any action required, including but not limited to, repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

An act of "terrorism" means an activity that involves any violent act, including the threat of an activity or preparation for any activity, that:

1. Causes either:
    (a) Damage to property; or
    (b) Injury to person(s) and

2. Appears to be intended to:
    (a) Intimidate or coerce a civilian population; or
    (b) Disrupt any segment of an economy; or
    (c) Influence the policy of a government by intimidation or coercion; or
    (d) Affect the conduct of a government by destruction, assassination, kidnapping or hostage taking; or
    (e) Advance a political, religious or ideological cause.

An act of "Terrorism" shall also include any incident determined to be such by an official department or agency that has been specifically authorized by federal statute to make such a determination.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

 **MARKEL RE**

# AMENDATORY ENDORSEMENT
## SERVICE OF SUIT

THIS ENDORSEMENT CHANGES THE POLICY.
Please read it carefully.

This endorsement modifies insurance provided under the following:

CLAIMS MADE EXCESS LIABILITY POLICY
OCCURRENCE EXCESS LIABILITY POLICY
UMBRELLA LIABILITY POLICY

It is agreed that in the event of the failure of this Company hereon to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's Vice President of Claims, or his nominee, at 4521 Highwoods Parkway, Glen Allen, VA 23060 and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the Statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said Officer is authorized to mail such process or a true copy thereof.

 **MARKEL RE**

# PRIVACY NOTICE

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms; and/or
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from a consumer reporting agency; and/or
- Information we receive from inspection reports.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Financial service providers, such as insurance agents and/or brokers.

We may also disclose nonpublic personal information about you to non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

NOV-03-2005(THU) 14:68                                                      P. 002/002

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Date:

Policyholder/Applicant Name:

Policy Number (if applicable):

Dear Policyholder:

We are required to send you this notice pursuant to federal legislation concerning terrorism insurance.

You are hereby notified that under the Terrorism Risk Insurance Act of 2002 (the "Act"), effective November 26, 2002, that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act ("Terrorism Coverage"). The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States— to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT TERRORISM COVERAGE REQUIRED TO BE OFFERED BY THE ACT FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES PAYS 90% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS TERRORISM COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE
WHAT YOU NEED TO DO NOW:
PLEASE "X" ONE OF THE BOXES BELOW AND TAKE THE ACTION INDICATED.

|   | |
|---|---|
|   | I hereby elect to purchase the Terrorism Coverage required to be offered under the Act for a premium of $ ____ / (This coverage must be purchased at time of binding and is not available anytime after policy is bound) Action: Please sign and return this form with your payment for premium to your insurance agent. |
| X | I decline to purchase the Terrorism Coverage required to be offered under the Act. Action: Please sign and return this form to your insurance agent. |

X _Jose J Baras_
Policyholder/Applicant's Signature

_Jose J. Barajas._     X 11-3-05
Print Name                    Date

MKL TERR 3 (03/31/03)
New or Renewal Policies

Precission Drywall   Umbrella

 **MARKEL RE**

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE

Date: 09/14/2005
Policyholder/Applicant Name: PRECISION DRYWALL, INC.
Policy Number (if applicable): XMR03371

Dear Policyholder:

We are required to send you this notice pursuant to federal legislation concerning terrorism insurance.

You are hereby notified that under the Terrorism Risk Insurance Act of 2002 (the "Act"), effective November 26, 2002, that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as *defined in Section 102(1) of the Act* ("Terrorism Coverage"): The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT TERRORISM COVERAGE REQUIRED TO BE OFFERED BY THE ACT FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES PAYS 90% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS TERRORISM COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE
WHAT YOU NEED TO DO NOW:
PLEASE "X" ONE OF THE BOXES BELOW AND TAKE THE ACTION INDICATED.

| | |
|---|---|
| | I hereby elect to purchase the Terrorism Coverage required to be offered under the Act for a premium of $_____ / (This coverage must be purchased at time of binding and is not available anytime after policy is bound) Action: Please sign and return this form with your payment for premium to your insurance agent. |
| X | I decline to purchase the Terrorism Coverage required to be offered under the Act. Action: Please sign and return this form to your insurance agent. |

_____
Policyholder/Applicant Signature

_____        _____
Print Name                                                        Date

MRE 009 (01/05)                                                      Page 1 of 1

 **MARKEL RE**

# ASSAULT AND/OR BATTERY EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY.
### Please read it carefully.

This endorsement modifies insurance provided under the following:

CLAIMS MADE EXCESS LIABILITY POLICY
OCCURRENCE EXCESS LIABILITY POLICY
UMBRELLA LIABILITY POLICY

The Exclusions section of the policy is amended and the following is added:

The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

MRE 024 (01/05)                                                    Page 1 of 1

 **MARKEL RE**

# CONTRACTORS COMBINATION EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY.
### Please read it carefully.

This endorsement modifies insurance provided under the following:

CLAIMS MADE EXCESS LIABILITY POLICY
OCCURRENCE EXCESS LIABILITY POLICY
UMBRELLA LIABILITY POLICY

The exclusions section of the policy is amended and the following is added:

## 1.    BREACH OF CONTRACT

This insurance does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury," "property damage," "advertising injury," "personal injury" or an "occurrence" or damages of any type is alleged; this exclusion also applies to any additional insureds under this policy.

## 2.    CONTRACTUAL LIABILITY LIMITATION

Coverage under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damage arising out of:

1.    That part of any contract or agreement that indemnifies any person or organization for damage by fire to premises rented or loaned to you.
2.    That part of any contract or agreement under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

## 3.    CONTRACTOR LIMITATION

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of inadequate, improper, faulty or defective construction:

1.    Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process or occurring to any degree, as of the inception date of this policy;

2.    Causing incremental, continuous or progressive damage arising from an occurrence, which first occurred, began to occur or is alleged to have occurred prior to the inception date of this policy;

3.    Of any apartment or condominium or any single-family or tract homes where the total project or development exceeds 6 homes and/or units;

4.    Caused by the invasion or existence of water or moisture including but not limited to mold, mildew, rot and deterioration of the property;

 **MARKEL RE**

5.   In the event that our ability to defend a claim or suit is impaired or diminished by an insured's lack of good standing with all local, state and federal authorities or an insured's legal inability to answer in the civil proceedings involved.

## 4.   EXTERIOR INSULATION AND FINISH SYSTEMS

This insurance does not apply to "bodily injury" or "property damage" included in the "products - completed operations hazard" and arising out of "your work" as classified in any applicable underlying policy arising out of:

1.   The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

2.   Any work or operations with respect to any exterior component, fixture or feature of any structure if any "exterior insulation and finish system" is used on any part of that structure.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of:

a)   a rigid or semi-rigid insulation board made of expanded polystyrene or other materials, and

b)   the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, and

c)   a reinforced base coat, and

d)   a finish coat providing surface texture and color.

## 5.   EMPLOYEES OF INDEPENDENT CONTRACTORS

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage sustained by any employee of an independent contractor contracted by you or on your behalf.

This exclusion also applies to any liabilities assumed under an "insured contract." Further, where there is no coverage for the named insured, there is no coverage for additional insured as may be included in any underlying policy.

## 6.   INDEPENDENT CONTRACTORS

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of acts of independent contractors and/or subcontractors unless you obtain Certificates of Insurance from all independent contractors and/or subcontractors providing evidence of Limits of Liability equal to or greater than the limits provided by underlying general liability policies.

 **MARKEL RE**

7.    PROFESSIONAL SERVICE

The coverage under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or any injury, loss or damage arising out of the rendering or failure to render any professional service.

8.    ROOFING LIMITATION

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

1.    Your failure to take prudent steps in advance of any job or work commencing to determine the weather expected by your local weather bureau for that period of time you will be working on any given day, in order to preclude any open roof during any wind, hail, snow, rain, ice or any combination of these; and

2.    Your having any "open roof" when any weather in 1 above occurs; any "open roof" must be covered in advance of any precipitation and in advance of your leaving the job for any period of time. You must provide appropriate temporary covering, able to withstand the normal elements; and/or

3.    Any operations involving any hot tar, wand, open flame, torch or heat applications, or membrane roofing;

The term "open roof" as used here shall include any roof or section of roof where shingles, tar, felt paper, and any other protective covering has been removed, thereby leaving exposed any supporting structure, decking, building interior or contents of any building to the elements;

The term "appropriate", as used in this endorsement, means actions customarily and normally taken/used by contractors in your area to protect or prevent damage, or by contractors in the same field under similar circumstances.

9.    SUBSIDENCE

This insurance does not apply to any claim for injury or damage arising out of; resulting from; contributed to; or aggravated by "subsidence."

"Subsidence" means ground movement caused by soil conditions including but not limited to:

(1)  Soil erosion, settling, sinking, shifting, slipping or other movement,
(2)  Freezing or thawing,
(3)  Improperly compacted soil or construction defects,
(4)  Roots of trees or shrubs
(5)  Collapse of storm or sewer drains,
(6)  Natural occurring shrink or swell soil

10.    UNDERGROUND

This insurance does not apply to bodily injury, property damage, personal injury, advertising injury, or any injury, loss or damage, or consequential damages, arising out of any underground work.

However, this exclusion does not apply if an underground utility locating service has located and marked all underground lines, pipes, cables, and utilities at the job site, prior to your undertaking any work.

 **MARKEL RE**

There is no coverage under this policy for loss or damage as a result of back up or overflow of any water, sewer, drains, ditches, pipes however caused, nor from consequential damages as a result thereof.

### 11.    ABSORPTION INHALATION

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", disease or illness including death resulting from such disease or illness, alleged disease or illness, property damage, or any other damages, for past, present, or future claims arising in whole or in part, directly or indirectly out of any form of inhalation or absorption.

This applies whether damages result from an insured's act or failure to act, as well as allegations of an insured's act or failure to act in:

1. Hiring, training or supervising any person or controlling, monitoring or supervising the care of any person in the custody of any insured; or
2. Testing, screening, segregating or obtaining medical treatment for any person in the custody of any insured; or
3. Disposing of contaminated substances or materials.

### 12.    COMMUNICABLE DISEASE

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the:

1. transmission of a communicable disease; or
2. failure to perform services which were either intended to or assumed to prevent communicable diseases or their transmission to others.

This applies whether damages result from an insured's act or failure to act, as well as allegations of an insured's act or failure to act in:

1. Hiring, training or supervising any person or controlling, monitoring or supervising the care of any person in the custody of any insured; or
2. Testing, screening, segregating or obtaining medical treatment for any person in the custody of any insured; or
3. Disposing of contaminated substances or materials.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

 **MARKEL RE**

# INTELLECTUAL PROPERTY INFRINGEMENT EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY.
### Please read it carefully.

This endorsement modifies insurance provided under the following:

CLAIMS MADE EXCESS LIABILITY POLICY
OCCURRENCE EXCESS LIABILITY POLICY
UMBRELLA LIABILITY POLICY

The Exclusions section of the policy is amended and the following is added:

The coverage under this policy does not apply to:

1. Deceptive, false, fraudulent, misleading, unfair, unlawful, or untrue business act or practice with respect to advertising, and/or
2. Infringement of copyright, title, slogan, trademark or patent;
3. Misappropriation of advertising ideas, style of doing business, trade secret and or practice, piracy or other intellectual property

whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



# OCCURRENCE EXCESS LIABILITY POLICY

---
## PROVISIONS
---

Various provisions of this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered.

In consideration of the payment of the premium, and in reliance upon the statements and representations made in the Application, and subject to mutual agreements set forth herein and in the DECLARATIONS, and subject to all the terms and conditions of this policy, the COMPANY hereby agrees with the Insured as follows:

---
## SECTION A – INSURING AGREEMENTS
---

1.  The Company hereby agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance as shown in Item 4. of the Declarations, but only up to an amount not exceeding the Company's Limit of Liability as shown in Item 3. of the Declarations.  Except for the Terms, Definitions, Conditions and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4. of the Declarations.

2.  The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's Limit of Liability beyond that set forth in Item 3. of the Declarations.

3.  If an amount is shown in Item 3.b. of the Declarations, it is agreed that the Company's Limit of Liability as shown in Item 3.a. of the Declarations is limited to the Company's quota-share participation for that portion of Ultimate Net Loss as it applies as part the larger Limit of Liability shown in Item 3.b. of the Declarations. Under no circumstances will the Company's Limit of Liability exceed the policy limits shown under Item 3.a. of the Declarations.

---
## SECTION B – DEFINITIONS
---

1.  **Each Annual Period.**
    The term "Each Annual Period" shall mean consecutive period of one year commencing from the inception date of this policy.

2.  **Ultimate Net Loss.**
    The term "Ultimate Net Loss" shall mean all sums which the Insured shall become legally obligated to pay as damages (including interest thereon) whether by reason of adjudication or settlement because of injury or damage, after making deductions for all recoveries and for other insurance, excepting however the policy(ies) of the Underlying Insurer(s).  Ultimate Net Loss shall exclude all interest accruing after entry of Judgment except with the consent of the Company.

3.  **Underlying Insurance.**
    The term "Underlying Insurance" shall mean the policy or policies listed in Item 4. of the Declarations.

MRE 2000 (01/05)

## SECTION C – CONDITIONS

1. **Changes.**
   The Company shall be promptly notified of any coverage or limit change(s) made to the Underlying Insurance after the inception date of this policy.

2. **Premium.**
   The Insured shall pay premium to the Company as specified in the Declarations.

   For policies issued on an adjustable basis (not a flat basis), upon expiration of this policy or its termination during the policy period, the earned premium shall be computed on the basis of units of exposure times the rate. If the earned premium thus computed is more than the advanced premium paid, the Insured shall immediately pay the excess to the Company; if less, the Company shall retain the Minimum and Deposit Premium as stated in the declarations.

3. **Duties in the Event of Accident, Occurrence, Claim or Suit.**
   You must see to it that we or our authorized representative and your underlying insurers:

   a. are notified as soon as practicable of any accident or occurrence which may result in a claim if the claim may involve this policy or any underlying insurance;

   b. receive notice of the claim or suit as soon as practicable.  Notice shall include:

      1) How, when and where the accident or occurrence took place;
      2) The Insured's name and address;
      3) The names and addresses of any injured persons and witnesses; and
      4) The nature and location of any injury or damage arising out of the accident or occurrence.

   c. are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to you or any other Insured because of injury or damage to which this insurance may apply; and

   d. receive the Insured's full cooperation in the investigation, adjustment, settlement or defense of any claim or suit.

   In addition, it is a requirement of this policy that:

   a. the Insured not make any admission of liability;

   b. no Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid without our written consent;

   c. you immediately send us copies of any demands, notices, summonses or legal paper received in connection with a claim or suit involving you or any other Insured.

4. **Defense.**
   The Company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceedings instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claim, suit or proceeding relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy.  If the Company avails itself of such right and opportunity the Company shall do so at its own expense.

   Court costs and interest, if incurred with the consent of the Company, shall be borne by the Company and other interested parties in the proportion that each party's share of the Ultimate Net Loss bears to the total amount of Ultimate Net Loss sustained by all interested parties.

5. **Cancellation.**

This policy may be canceled by the Named Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy, written notice stating when not less than ten (10) days for non-payment of the premium or thirty (30) days for other than non-payment of the premium thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice, either by the Named Insured or by the Company, shall be equivalent to mailing.

The Insured first named in the Declarations is authorized to act on behalf of all Named Insureds and other Insureds with respect to the giving and receiving of notice of cancellation and to the receiving of any return premium that may become payable under this policy.

If the Named Insured cancels, earned premium shall be computed in accordance with the short rate table and procedure in use for this policy. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation become effective, but payment or tender of unearned premium is not a condition of cancellation. In the event of cancellation by the Named Insured, earned premium shall in no case be less than the Policy Minimum Premium stated in the Declarations.

6. **Maintenance of Underlying Insurance.**

The limits of the Underlying Insurance shall be maintained in full effect during the currency of this policy except for reduction of such limits by exhaustion of aggregate limits (if any) contained therein by paying or by having been held liable to pay for damages for accident(s) or occurrence(s), whichever is applicable, during Each Annual Period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Company shall be liable only to the extent that it would have been held liable had the Insured complied therewith. In the event of the Insolvency of the Underlying Insurer, the Company shall only be liable to the same extent as it would have been liable had the limits of the Underlying Insurance been maintained and were fully collectible.

## SECTION D – EXCLUSIONS

**It is agreed that the aggregate limits shown in Item 4. Schedule of Underlying Insurance, shall neither be reduced or exhausted by reason of any paid losses caused by, or arising out of the Exclusions listed below:**

This policy shall not apply:

1. To "Ultimate Net Loss":

    a. arising out of or contributed to in any way by the actual, alleged or threatened discharge, dispersal, release, migration, escape, or seepage of pollutants; or

    b. any loss, cost or expense arising out of any:

        1) request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

        2) claim or suit whether by or on behalf of any governmental authority or any other entity for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

    As used in this exclusion, pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes material, to be recycled, reconditioned, reclaimed or disposed of.

MRE 2000 (01/05)                                                                                          Page 3 of 6

2. To "Ultimate Net Loss' arising out of or in connection with:

    a. asbestos or asbestos-related material(s) lead, or silica dust, regardless of whether used, manufactured, sold, handled, maintained, repaired, removed, disposed of, transported, distributed, installed by, or in any way connected with the Insured; or

    b. the existence of asbestos or asbestos-related material(s), lead, or silica dust, in any goods, products, materials, storage devices, containers, wrappings, packaging, warehouses, buildings, or other structures of any kind, or any part thereof; or

    c. any goods or products which are damaged, contaminated, or otherwise affected by asbestos or any asbestos-related material(s), lead or silica dust; or

    d. asbestos abatement activities, including clean-up, repair, or any other corrective measures which are occasioned by the existence of asbestos in any land, soil, water or watercourses, the atmosphere and/or building(s), whether voluntarily undertaken or required by any governmental body or other entity to eliminate asbestos or asbestos-related material(s), lead, or silica dust; or

    e. Any supervision, instructions, recommendations, warnings, or advice given or which should have been given, and any obligation to share damages with or repay someone else who must pay damages in connection with a., b., c., or d. above.

3. "Ultimate net loss" arising out of or in connection with:

Mold, Bio-Organic Growth or Mildew, nor are any expenses nor are any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrence arising or alleged to have arisen out of:

    a. "bodily injury", "personal injury", "property damage" or damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, toxic substances from mold, bio-organic growth or mildew in any form, or from any goods, products or structures containing same; or
    b. existence of mold, bio-organic growth or mildew, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or
    c. any supervision, instructions, recommendations, requests, or warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same or in any way respond to assess the effects of same.

4. To "Ultimate Net Loss" arising out of any claim or claims made by or against the Insured with respect to any uninsured/underinsured motorist or automobile no fault or first party personal injury law.

5. To "Ultimate Net Loss" arising out of the Employee Retirement Income Security Act of 1974 (ERISA) as now or hereafter amended or any similar state or other governmental law.

6. To "Ultimate Net Loss" arising out of or that results from any consequence, direct or indirect, due to war, whether or not declared, or an act or condition incident to war. War includes invasion, act of a foreign enemy, hostilities, civil war, insurrection, rebellion, military or usurped power, strike, riot , civil commotion, revolution, or acts of terrorism.

7. To "Ultimate Net Loss" :

    a. with respect to which an Insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    b. arising out of "hazardous properties" of "nuclear material" and with respect to which:

1.   any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

2.   the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

c.  arising out of "hazardous properties" of "nuclear material" if:

    1)  the "nuclear material"

        a.  is at any "nuclear facility" owned by, or operated by or on behalf of an Insured, or

        b.  has been discharged or dispersed therefrom;

    2)  the "nuclear material" is contained in "spent fuel" or "waste" at any time process, handled, used, possessed, stored, transported or disposed of by or on behalf of an Insured; or

    3)  the bodily injury or property damage arises out of the furnishing by an Insured of services, material, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if any such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to Property Damage to such nuclear facility any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means "source material," "special nuclear material" or "byproduct material";

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material:

    a) containing byproduct material, and
    b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph a) or b) below:

"nuclear facility" means:

    a) any nuclear reactor;
    b) any equipment or device designed or used for:

        1) separating the isotopes or uranium or plutonium,
        2) processing or utilizing spent fuel, or
        3) handling, processing or packaging "waste";

    c) any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
    d) any structure, basin, excavation premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

MRE 2000 (01/05)                                               Page 5 of 6

"Nuclear reactor" means many apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property Damage" includes all forms of radioactive contamination of property.

8. To "Ultimate Net Loss" arising out of or in connection with punitive or exemplary damages, in whatever form assessed.