UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| **This document relates to:** | * | |
| | * | |
| *Joshua C. Price and Kimberlea Price* | * | |
| *v. USAA Casualty Insurance Co.* | * | MAG. JUDGE WILKINSON |
| **Case No. 10-CV-01420 (E.D. La.)** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## BY DEFENDANT, USAA CASUALTY INSURANCE COMPANY

Respectfully submitted,

AMELIA W. KOCH (2186)
STEVEN F. GRIFFITH, JR., T.A. (27232)
JENNIFER McNAMARA (23946)
KATHRYN B. COOPER (32404)
**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
USAA CASUALTY INSURANCE COMPANY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introductory Statement ................................................................................................ 2

I.     Factual and Procedural Background ..................................................... 5

      A.     Allegations of *Price, et al. v. USAA Casualty Insurance Company* ........... 5

      B.     The USAA-CIC Homeowners Policy
           at Issue Does Not Cover Defective Drywall. ................................................ 6

      C.     Allegations of *Price v.Knauf Gips KG* – Plaintiffs Also
           Sued the Manufacturer and Supplier of the Chinese drywall. ..................... 7

II.    Standard Under Rule 12(b)(6) ................................................................. 9

III.   Presence of Defective Drywall Is Not a "Direct,
       Physical Loss" as Required for Coverage Under the Policy. ................................... 10

IV.   The Plain Language of the Policy's
       Exclusions Precludes Coverage for Plaintiffs' Claims. ........................................... 14

      A.     The Damages Plaintiffs Seek Are Caused
           by an "Inherent Vice [or] Latent Defect" in
           the Defective Drywall and, Thus, Are Excluded. ........................................ 14

      B.     The Policy Excludes Losses Consisting of or Resulting from
           "Faulty" or "Defective" Building Materials or Construction. ..................... 15

      C.     The Policy Excludes Corrosion Damage. .................................................... 19

      D.     The Policy Excludes Claims for Damages
           Arising from the Discharge of "Pollutants."................................................ 20

V.     The Policy Does Not Provide Coverage for Any Alleged Losses to Personal
       Property Because They Were Not Caused by an Enumerated Peril. ....................... 21

VI.   Without a Covered Loss, Plaintiffs May Not
       Recover for Loss of Use or Additional Living Expenses. ...................................... 22

VII.  Any Alleged Personal Injuries to Plaintiffs Are Not Covered. ................................ 23

VIII. Because Plaintiffs Have Failed to State a Claim for Coverage,
       All Claims Under §§ 22:1973 and 22:1892 Must Also Be Dismissed. .................. 23

IX.   Conclusion ............................................................................................ 24

i

**MAY IT PLEASE THE COURT:**

Defendant USAA Casualty Insurance Company ("USAA-CIC"), pursuant to this Court's July 1, 2010 Order [R. Doc. 4300] submits this Memorandum of points and authorities in support of its Rule 12(b)(6) Motion to Dismiss Plaintiffs' Petition for Damages and further provides the following information in accordance with the Court's July 1, 2010 Order:

a.    <u>The insured within MDL 2047 for whom USAA-CIC provides homeowners insurance and files **this** motion</u>:

> Insured:      Joshua C. Price and Kimberlea Price
> Case:         *Price, et al. v. USAA-CIC.*, No. 10-1420

b.    <u>Other cases in MDL 2047 in which claims on the same policy form at issue in this motion are pending and whether similar motion has been filed</u>:

> Insured:             David Bronaugh and Heather Bronaugh
> Case:               *Bronaugh, et al. v. USAA-CIC.*, No. 09-7393
> Motion Pending:    Motion to Dismiss [R. Doc. 3251]

c.    <u>Cases in any other jurisdiction where this issue may be related</u>:

> 1.    *Warren Bernard v. United Services Automobile Association*
>       24th Judicial District Court, Parish of Jefferson, Louisiana
>       Case No. 682-412, Division "J"
>              Honorable Stephen J. Windhorst
>              Thomas F. Donelon Courthouse
>              200 Derbigny St., Ste. 4600
>              Gretna, Louisiana 70053
>              Phone (504) 364-3916
>
> 2.    *Andrew Duke Allen and Nicole Taranto Allen individually, and on behalf of their minor child, William Charles Allen v. United Services Automobile Association*
>       24th Judicial District Court, Parish of Jefferson, Louisiana
>       Case No. 685-620, Division "M"
>              Honorable Henry G. Sullivan, Jr.
>              Thomas F. Donelon Courthouse
>              200 Derbigny St., Ste. 4100
>              Gretna, Louisiana 70053
>              Phone (504) 364-3935

3.      *Daniel D. Gammage v. USAA Casualty Insurance Company*
        22nd Judicial District Court, Parish of St. Tammany, Louisiana
        Case No.: 2010-12881, Division "F"
                Honorable Martin E. Coady
                701 N Columbia St, Room 3006
                Covington, LA 70433
                Phone: (985) 809-5330

4.      *Cullen J. Dupuy and Mary E. Dupuy v. USAA Casualty Insurance Company*
        19th Judicial District Court, Parish of East Baton Rouge, Louisiana
        Case No. 590387, Section 22
                Honorable Timothy Kelley
                222 Saint Louis Street, Room 857
                Baton Rouge, LA 70802-5817
                Phone (225) 389-4728

5.      *Steven Etter and Cathy Etter v. United Services Automobile Association*
        Fifteenth Judicial Circuit, Palm Beach County, Florida
        Case No.: 50 2010 CA 001877XXXXMB AH
                Honorable Edward Fine
                Palm Beach County Courthouse
                205 North Dixie Highway, Room 11-C
                West Palm Beach, Florida 33401
                Phone (561) 355-6386

## INTRODUCTORY STATEMENT

Plaintiffs' suit seeks recovery against their homeowners insurance carrier because a third

party installed defective drywall in their house.  The suit should be dismissed because:

- the presence of defective drywall is not a "direct, physical loss" so as to
  trigger coverage;

- the drywall has a latent and inherent defect which is excluded;

- loss as the result of a faulty or defective building materials is excluded;

- the policy excludes coverage for corrosion;

- the policy excludes coverage for damages as the result of a gaseous irritant
  or contaminant; and

- the policy excludes coverage for bodily injury to the insured.

2

Through this Motion, USAA-CIC asks the Court to apply the plain language of its policy.

The Fifth Circuit holds that a homeowner's insurance carrier is not responsible for "making good" defective construction.[1]   Nevertheless, Plaintiffs are attempting to have this Court conclude otherwise.   This attempt ignores unambiguous policy language, and inappropriately attempts to shift liability from the responsible parties that profited from the construction (like builders and manufacturers) to third parties (like USAA-CIC) that bear no responsibility for the loss.  Such a ruling would cause a devastating avalanche of claims and suits by forcing insurers to pay for non-covered claims regarding drywall and any other defective items installed in a house.

Plaintiffs Joshua and Kimberlea Price ("Plaintiffs") filed this lawsuit against USAA-CIC seeking coverage under their homeowners insurance policy for losses that they allege were caused by defective drywall installed in their house.[2]   According to Plaintiffs, "[t]he Chinese drywall emits odorous gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items and causes personal injury to Plaintiffs and their family."[3]   Even assuming Plaintiffs' allegations are true, Plaintiffs' homeowners policy does not cover any of the alleged losses from defective drywall.

For there to be coverage for defective drywall, there first must be a direct physical loss to the dwelling.  Louisiana courts recognize that a direct, physical loss cannot occur absent an external force changing what initially was in a satisfactory state into an unsatisfactory state (like

---

[1] *Alton Ochsner Med. Found. v. Allendale Metro. Ins. Co.*, 219 F.3d 501, 507 (5th Cir. 2000).

[2] Plaintiffs' Petition for Damages ("Petition") [E.D. La. No. 10-1420, R. Doc. 1], attached as Ex. "1," ¶ 6.

[3] Petition ("Ex. 1") at ¶ 6.

a car crashing into a previously undamaged home).  In the case of defective drywall, an external force did not change what initially was in a satisfactory state into an unsatisfactory state.  The drywall was never in a satisfactory state.  A direct, physical loss did not occur.

Moreover, several exclusions under the homeowners policy preclude coverage for Plaintiffs' alleged losses.

- First, the policy excludes loss caused by or consisting of an inherent vice or latent defect.

- Second, the policy excludes loss from faulty or defective building materials, construction, or workmanship.

- Third, the policy excludes loss caused by or consisting of corrosion.

- Fourth, the policy excludes loss arising from the discharge of pollutants, defined as including any gaseous irritant or contaminant.

All of these exclusions preclude coverage, but if any one of them applies, then Plaintiffs' claims should be dismissed as a matter of law.

In addition, to the extent that Plaintiffs seek to recover for any loss to personal property attributable to the installation of defective drywall, such loss is not covered because the policy only covers losses to personal property that are caused by certain enumerated perils (such as fire, windstorm or hail).  Defective drywall is not one of the listed perils.

Further, to the extent that Plaintiffs seek to recover for any bodily injury, such injury is not covered because the policy excludes "bodily injury to you or an insured within the meaning of part a or b of 'Insured' as defined."[4]  Insured is defined as "you and residents of your

---

[4] Policy, attached as Exhibit "2," at p. 40 (There are several internal page numberings within the policy. Thus, for ease of reference, the exhibit itself has been sequentially numbered Page 1 through 52. It is these page numbers that are referenced herein.)

household who are: a. your relatives; or b. other persons under the age of 21 and in the care of any person named above."[5]

Finally, because the policy does not cover any of Plaintiffs' alleged losses, Plaintiffs cannot recover for any alleged loss of use (such as additional living expenses), nor do they have a claim as a matter of law for bad faith, failure to properly adjust and pay a claim, or attorneys' fees.  For these reasons, the Court should dismiss the Petition with prejudice and in its entirety pursuant to Rule 12(b)(6).

## I.      Factual and Procedural Background

### A.      *Allegations of* Price, et al. v. USAA Casualty Insurance Company

Plaintiffs filed their Petition against USAA-CIC in Louisiana state court on March 18, 2010.  According to the Petition, in the Fall of 2009, Plaintiffs "discovered that their home was constructed using Chinese manufactured drywall that caused and continues to cause physical loss and damages to Plaintiffs' home and contents."[6]  Plaintiffs further allege "[t]he Chinese drywall emits odorous gases that cause ***corrosion*** of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items and causes personal injury to Plaintiffs and their family"[7]  On May 6, 2010, USAA-CIC removed Plaintiffs' lawsuit to this Court and filed its Answer and Affirmative Defenses.[8]

---

[5] Policy (Ex. "2") at p. 27.

[6] Petition (Ex. "1") at ¶ 6.

[7] Petition (Ex. "1") at ¶ 6 (emphasis added)

[8] *See* Notice of Removal [E.D. La. No. 10-1420, R. Doc. 1]; Answer and Affirmative Defenses [E.D. La. No. 10-1420, R. Doc. 2].

B.      *The USAA-CIC Homeowners Policy at*
        *Issue Does Not Cover Defective Drywall.*

The homeowners insurance policy Plaintiffs purchased from USAA-CIC to insure their house in Abita Springs, Louisiana from December 13, 2008, through December 13, 2009, is numbered CIC 01216 49 35 91A and attached as Exhibit "2" (the "Policy").  Under Coverage A, the Policy provides coverage for "Perils Insured Against," agreeing to "insure against risks of direct, physical loss" to the dwelling, but expressly excluding any loss "caused by or consisting of . . . inherent vice, latent defect, . . . corrosion . . .," or the "discharge, dispersal, seepage, migration, release or escape of pollutants," which are defined as including any "gaseous . . . contaminant . . . ."[9]  The Policy also excludes any loss from "faulty" or "defective" building materials, construction, or workmanship.[10]

Under Coverage C, USAA-CIC agrees to provide coverage for losses to personal property, but only if one of sixteen enumerated perils causes the loss, *none* of which even arguably applies to the losses alleged in the Petition.[11]  Coverage D of the Policy, "Loss of Use," provides certain coverage for living expenses, but only when a covered loss causes the residence to become uninhabitable because of a covered loss.[12]   And, under Coverage F "Personal

---

[9] Policy (Ex. "2") at p. 32.

[10] Policy (Ex. "2") at p. 35.

[11] The sixteen enumerated perils include: (1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling objects; (11) weight of ice, snow or sleet; (12) accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system, etc.; (13) sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, etc.; (14) freezing; (15) sudden and accidental damage from artificially generated electrical current; and (16) volcanic eruption.  Policy (Ex. "2") at pp. 33-52.

[12] Policy (Ex. "2") at p. 29.

Liability," USAA-CIC specifically excludes coverage for bodily injury to the insured, as defined in the policy.[13]

C.     *Allegations of* Price v. Knauf Gips KG – *Plaintiffs*
*Also Sued the Manufacturer and Supplier of Chinese drywall.*

Although Plaintiffs filed this action solely against USAA-CIC in Louisiana state court, just a few months before, these same Plaintiffs filed a lawsuit concerning the manufacture and supply of the same Chinese drywall against Knauf Gips KG and Interior Exterior Building Supply in this Court (*Price, et al. v. Knauf Gips KG, et al.*, E.D. La., No. 09-07170). This case is also pending in the MDL.[14]

Plaintiffs' allegations in the *Price v. Knauf Gips KG* matter are judicial confessions that "constitute full proof against the party who made it."[15] First, they allege that the *Knauf* defendants manufactured, sold, processed, distributed, supplied, and marketed "***defective*** gypsum drywall that was installed in Plaintiff's home."[16] More importantly, they admit:

- the drywall "emits levels of sulfur, methane and/or other volatile organic chemical compounds that ***cause corrosion*** . . ."

- the drywall is "***not suitable for its intended use***"; and

- the drywall "was made with waste material from scrubbers on coal-fired power plants, also called 'fly ash.' These materials leak into the air and

---

[13] Policy (Ex. "2") at p. 40.

[14] A copy of Plaintiffs' Petition for Damages in *Price, et al. v. Knauf Gips KG* (the "*Price v. Knauf* Petition") is attached as Exhibit "3."

[15] LA. CIV. CODE. art. 1853 ("A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it."); *Lakeshore Prop. Owners Ass'n v. Delatte*, 524 So. 2d 126, 130 (La. App. 4th Cir. 1988) (an allegation, admission or confession in a pleading in another suit is an extrajudicial admission and is admissible).

[16] *Price v. Knauf* Petition (Ex. "3") at ¶ 2, ¶ 9, and ¶ 14 (emphasis added).

7

emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide."[17]

These allegations and admissions directly impact Plaintiffs' claims in this forum.

It also bears noting that the Plaintiffs, Joshua and Kimberlea Price, are also named plaintiffs in *Sean and Beth Payton, et al. v. Knauf Gips KG, et al.* (Plaintiffs Omnibus Class Action Complaint (I)) No. 09-7628, which is pending in this Multi District Litigation.[18]  Just a small sampling of the allegations contained in this lawsuit demonstrate the impact on Plaintiffs' claims against USAA-CIC in this forum:

- ***Sulfides and other noxious gases***, such as those emitted from Defendants' drywall, cause ***corrosion*** . . .;[19] and

- the defective drywall . . . [is] ***unfit for its intended purpose*** and unreasonable dangerous in its normal use in that the drywall caused ***corrosion*** and damage to personal property in Plaintiffs' and Class Members' homes, residence or structures . . . .[20]

## II.    Standard Under Rule 12(b)(6)

The United States Supreme Court mandates that complaints in which the allegations "however true, [cannot] raise a claim of entitlement or relief" should be dismissed for failure to state a claim at a point at which there is a "'minimum expenditure of time and money by the parties and the court.'"  That rule is of particular import where defendants are required to expend substantial resources to monitor and participate in the complexities of a multidistrict litigation

---

[17] *Id.* at ¶¶ 2 & 16.

[18] *See* Plaintiffs Omnibus Class Action Complaint (the "*Payton* Complaint"), No. 09-7628 [R. Doc. 1] at p. 122; ¶ 654.  Because of its length, a copy of the *Payton* Complaint has not been attached to this memorandum.

[19] *Id.* at p. 506, ¶ 2612 (emphasis added).

[20] *Id.* at p. 507, ¶ 2615 (emphasis added).

when the issues presented in the particular defendant's case can be easily dispensed with on legal grounds.  Indeed, just as important, if not more so, is the pursuit of judicial expediency and efficiency in narrowing the focus of a Court's multidistrict litigation docket.

Courts are required to follow a two-step process in considering Rule 12(b)(6) motions: (i) identify and disregard all legal conclusions in the plaintiff's complaint; and (ii) determine whether the factual allegations plausibly suggest the defendant's liability.[21]   In determining whether the law affords Plaintiffs a cause of action, the Court may consider documents referred to in the Petition or any document central to its claims.  Plaintiffs have referenced the Policy and it is central to the claims alleged.  Therefore, the Court may properly consider and apply the Policy under Rule 12(b)(6).[22]

### III. Presence of Defective Drywall Is Not a "Direct, Physical Loss" as Required for Coverage Under the Policy.

The threshold question this Court must consider is whether there was a "direct physical loss" such that coverage might exist.  Only if the Court finds that there is coverage does the Court turn to whether any policy exclusions apply to preclude coverage.  It is elementary under Louisiana law that "[w]hen the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written."[23]   When the words of a contract are clear, explicit and

---

[21] *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

[22] *See, e.g., Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 205 (5th Cir. 2007).

[23] *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991).  An insurance policy is a contract subject to the same interpretative rules set forth in our Civil Code for any contract:

> An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship.  As such, courts are guided by certain principles of construction and should interpret insurance policies the same way they do other contracts by using the general rules of contract interpretation as set forth in our Civil Code.

lead to no absurd consequences, no further interpretation may be made in search of the parties'

intent."[24]   Moreover, "[w]ords and phrases used in insurance policies are to be construed in their

plain, ordinary and popular sense."[25]   Here, the applicable language of the Policy at issue is

"clear and unambiguous;" therefore, there may be no further search of intent beyond the four

corners of the Policy.

Under the plain language of the Policy contained in "Section I – Perils Insured Against,"

USAA-CIC agrees to "insure against risk of **direct, physical loss** to [Plaintiffs' dwelling]."[26]   The

words of the Policy are clear and explicit.   Accordingly, "no further interpretation" of the Policy

may be made in search of the parties' intent.   Importantly, Plaintiffs bear the burden of proving

---

*Lemarie v. Lone Star Life Ins.*, 2000 WL 1678009, *3 (E.D. La. Nov. 7, 2000) (Duval., J.); *see, e.g., Vanderbrook*, 495 F.3d at 205 (quoting *Peterson v. Schimek*, 729 So. 2d 1024, 1028-29 (La. 1999)) (internal citations omitted).

[24] LA. CIV. CODE arts. 2045 & 2046 (2009).

[25] *Central La. Elec. Co.*, 579 So. 2d at 985; *see also* LA. CIV. CODE art. 2047 (2009) ("The words of a contract must be given their generally prevailing meaning.").

[26] Policy (Ex. "2") at p. 32 (emphasis added).   The relevant portions of the insuring agreement portion of the Policy provide as follows:

> SECTION I – PERILS INSURED AGAINST
> COVERAGE A – DWELLING and
> COVERAGE B – OTHER STRUCTURES
> We insure against risks of **direct, physical loss** to property described in Coverages A and B; however *we do not insure loss*:
>
> * * *
>
> 3.   caused by or consisting of:
>   a.   wear and tear, marring, deterioration;
>   b.   **inherent vice**, **latent defect**, mechanical breakdown;
>   c.   . . .rust or other **corrosion** . . .;
>
> * * *
>
>   e.   *discharge, dispersal, seepage, migration, release or escape of* **pollutants** . . . . **Pollutants means any solid liquid, gaseous or thermal irritant or contaminant**, including, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled reconditioned or reclaimed . . . .

*Id.* (emphasis added).

10

that any property damage they have alleged to their dwelling falls within the terms of the Policy.[27]  Plaintiffs cannot meet this burden because their allegation that they have sustained property damage to their house arising from the installation of defective drywall does not present a "direct, physical loss" within the terms of the Policy.

Under Louisiana law, a "direct physical loss" requires some external event to cause the damage claimed.[28]  As explained by this Court in *Maister*:

> To be entitled to recover insurance proceeds for damage to the premises, there must be an accidental event that results in a direct physical loss that is not otherwise excluded by the policy.[29]

In *Trinity Industries v. Insurance Company of North America*, 916 F.2d 267, 269-71 (5th Cir. 1990), the Fifth Circuit applied Louisiana law to interpret a policy that "insure[d] against all risks of *physical loss of or damage* to the subject matter here insured."[30]  In that case, the insured sought coverage claiming defective workmanship was a risk covered by the policy.  The Fifth Circuit, however, rejected the argument, holding that faulty construction did not constitute property damage, and, thus, the cost of repair did not fall within the coverage of the policy.[31] The Fifth Circuit's analysis is particularly relevant:

---

[27] *See Davidson v. United Fire & Cas. Co.*, 576 So. 2d 586, 590 (La. App. 4th Cir. 1991) ("A party seeking to recover under an insurance policy has the burden of pleading and proving that his claim falls within the terms and conditions of the policy.") (citations omitted).

[28] *See, e.g., Trinity Indus. v. Insurance Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990); *Maister Assocs. v. State Farm Fire & Cas. Co.*, 2009 WL 926981, *3 (E.D. La. 3/31/09) (Chasez, M.J.).

[29] *Maister*, 2008 WL 926981, *3.  For instance, if a truck crashes through the wall of a previously undamaged house, the house would have sustained a direct, physical loss caused by the crash.  *See Weintraub v. State Farm Fire & Cas. Co.*, 996 So. 2d 1195, (La. App. 4th Cir. 2008).

[30] *Trinity Indus.*, 916 F.2d at 270-71 (emphasis added).

[31] *Id.* at 271; *see also Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 793 F. Supp 259 (D. Or. 1999), *aff'd*, 953 F.2d 1387 (9th Cir. 1992); *Whitaker v. Nationwide Mut. Fire Ins. Co.*, 115 F. Supp. 2d 612

> The language "physical loss or damage" strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state – for example, the car was undamaged before the collision dented the bumper.  It would not ordinarily be thought to encompass faulty initial construction.[32]

This rule of law is clear, applicable, and binding.

Taking Plaintiffs' allegations as true, the drywall in their house is inherently defective – in other words, from the time the drywall was installed, it was never in "an initial satisfactory state"[33] – it was "**_not suitable for its intended use_**."[34]  Nor did the drywall itself sustain any "physical loss."  Rather, as Plaintiffs allege, the drywall was unsuitable for use because it was manufactured using contaminated materials.[35]  Accordingly, the cost of repairing or replacing the drywall to eliminate the alleged defect is not a covered loss.  However, to the extent Plaintiffs argue Chinese drywall is a direct physical loss, "the cost of removing and replacing the Chinese drywall is excluded by the policy's latent defect exclusion."[36]

---

(E.D. Va. Sept. 19, 1999); *Wyoming Sawmills, Inc. v. Transportation  Ins. Co*., 578 P.2d 1253, 1256 (Ore. 1978); *Tocci Bldg. Corp. v. Zurich Am. Ins. Co*., 659 F. Supp. 2d 251 (D. Mass. Sept. 25, 2009).

[32] *Trinity Indus.*, 916 F.2d at 270-71.

[33] *Id.*

[34] *Price v. Knauf* Petition (Ex. "3") at ¶ 2 (emphasis added).

[35] *See* Petition (Ex. "1") at ¶ 6.  The Plaintiffs further allege in *Price, et al.  v. Knauf Gips KG* that the manufacturers and distributors "manufactured, processed, distributed, delivered, supplied, inspected, marketed, and/or sold" defective drywall and that the "Defendants' drywall was inherently defective and not suitable for its intended use."  *Price v. Knauf* Petition (Ex. "3") at ¶ 2.

[36] *See Travco Ins. Co. v. Ward*, 2010 WL 2222255, *12 (E.D. Va. June 3, 2010) (The court, applying Virginia law, held that "the cost of removing and replacing the Chinese Drywall is excluded by the Policy's latent defect exclusion.").  Although the *Travco* court held, in the context of a Chinese drywall claim, that various policy exclusions (to be discussed *infra*) precluded coverage, it also held that the policy's "direct physical loss" requirement was met in that case.  *See id.* at *10.  However, the *Travco* case is readily distinguishable.

Moreover, none of the other losses to the dwelling Plaintiffs purportedly sustained from the defective drywall (alleged "corrosion of air conditioner and refrigerator coil, copper tubing, electrical wiring"),[37] are covered losses because there has been no "direct physical loss," but to the extent Plaintiffs argue otherwise, these alleged losses are expressly excluded under the Policy as set forth below. Because Plaintiffs have failed to state any viable claim, their Petition must be dismissed in its entirety.

IV.     **The Plain Language of the Policy's
        Exclusions Precludes Coverage for Plaintiffs' Claims.**

If there were coverage under the Policy for damages arising from the installation of defective drywall (which there is not), the Court would proceed to determine whether the Policy otherwise excludes coverage for Plaintiffs' alleged losses. While several Policy exclusions preclude Plaintiffs' recovery, the applicability of any one of the exclusions is sufficient to exclude coverage for Plaintiffs' alleged losses from the installation of defective drywall.

A.     *The Damages Plaintiffs Seek Are Caused by an "Inherent
        Vice [or] Latent Defect" in the Defective Drywall and, Thus, Excluded.*

The Policy specifically excludes any "loss . . . caused by or consisting of . . . [an] ***inherent vice*** [or] ***latent defect*** . . . ."[38] Here, Plaintiffs' alleged losses are precluded under both

---

First, the *Travco* court did not address or consider the Fifth Circuit's decision in *Trinity*, which is controlling here. The Fifth Circuit in *Trinity* specifically held that there is no "direct physical loss" unless the property, unlike the drywall here, is "in an initial satisfactory state that was changed by some external event into an unsatisfactory state." *Trinity*, 916 F.2d at 270-77. That is precisely the situation with Plaintiffs' alleged drywall loss here. It should also be noted that in *Ross C. Adams Construction & Design, L.L.C.*, No. 676-185 (La. Dist. Ct., Jefferson Parish, Apr. 14, 2010), another Chinese drywall case, the court granted summary judgment to the defendant homeowners insurer, Louisiana Citizens, albeit with no express findings, where, as here, the insurer argued the plaintiff's loss did not meet the "direct physical loss" requirement.

[37] Petition (Ex. "1") at ¶ 6.

[38] Policy (Ex. "2") at p. 32.

13

exclusions, mandating dismissal of Plaintiffs' Complaint in its entirety.  Louisiana courts have expressly addressed the meaning of "latent defect," explaining that it is "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal."[39]

*Nida* involved a homeowner's claim for losses caused by the improper preparation of the house's foundation for the type of soil on which it was built.  The natural shrinking and swelling of the soil caused damage to the foundation and the rest of the house.  The court focused on State Farm's argument that the damage "was caused by a 'latent defect' resulting from an improperly designed foundation":[40]

> We find that the ***vice*** in the construction of the foundation falls within this definition [of ***latent defect***] and such a construction is reasonable as concerns both parties. . . . ***The defendant-insurer simply was not a guarantor of the constructor's building performance***.[41]

The same analysis and result apply here.  USAA-CIC is not the guarantor of the constructor's performance.  Louisiana contract and tort law provides remedies against the responsible builders, manufacturers and distributors of the defective building materials.[42]

---

[39] *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328, 335 (La. App. 3d Cir. 1984) (quoting *Walker v. Travelers Indem. Co.*, 289 So. 2d 864, 870 (La. App. 4th Cir. 1974)); *see also Board of Educ. v. International Ins. Co.*, 684 N.E.2d 978 (Ill. App. 1997).

[40] *Id.* at 334-35.

[41] *Id.* at 335 (emphasis added).

[42] *See also Travco*, 2010 WL 2222255, *10 (holding that "the cost of removing and replacing the Chinese Drywall is excluded by the Policy's latent defect exclusion").  In *Travco*, the insured cited the recent Louisiana state court decision *Finger v. Audubon Ins. Co.*, No. 09-8071 (La. Civ. Dist. Ct. Mar. 22, 2010) in support of his argument that the latent defect exclusion is inapplicable.  In response, the court stated the *Finger* decision was unpersuasive and noted that another Louisiana district court ruled contrary to *Finger*, granting summary judgment to an insurer on similar facts.  *Id.* at * 12 (citing *Ross v. C. Adams Const. & Design, L.L.C.*, No. 676-185 (La. 24th Jud. Dist. Ct. Apr. 14, 2010)).

While no Louisiana case discusses the meaning of "inherent vice" in the context of an insurance contract, the plain language of the exclusion precludes coverage.   "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent,"[43] and the term "inherent vice" is both clear and explicit.   A vice is generally understood to be a fault, defect, or shortcoming, and the term inherent is understood to mean existing within.   Plaintiffs' allegations concerning the *defects* contained *within* the Chinese drywall clearly invoke the general meaning of "inherent vice."[44]

The Policy's "latent defect" and "inherent vice" exclusions are both unambiguous. Plaintiffs' Petition alleges that the alleged defect in the drywall was latent (not discovered until the Fall of 2009), and that there is an inherent vice in the defective drywall (the emission of "odorous gases that cause corrosion").[45]   USAA-CIC was not and is not the guarantor of the construction of Plaintiffs' house, and Plaintiffs' alleged losses resulting from the use of defective drywall in the construction of their property is not a covered loss.[46]

---

[43] LA. CIV. CODE art. 2046.

[44] *See* Petition (Ex. "1")  at ¶ 6 ("The Chinese drywall emits odorous gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items."); *see also* Ex. 2, Petition at p.6, ¶ 16, p. 7, ¶ 22 (stating that the drywall was made with waste material called "fly ash" which is harmful to health and property.).

[45] Petition (Ex. "1") at ¶ 6.

[46] In *Travco*, the court held that "the cost of removing and replacing the Chinese Drywall [was] excluded by the Policy's latent defect exclusion," but found that the damage to the insured's air conditioner and garage door was not caused by a latent defect on grounds that neither the air conditioner nor garage doors were defective themselves.   *Travco*, 2010 WL 2222255 at *11.   USAA respectfully submits that this decision in *Travco* is distinguishable because the policy language therein contained a limitation on the terms latent defect and inherent vice. The policy in *Travco* excluded loss "[c]aused by . . . [m]echanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself . . . ." *Id.* at * 10.   The USAA-CIC Policy, however, does not contain such limiting language, but broadly excludes loss "caused by or consisting of . . . inherent vice, latent defect, mechanical breakdown."  Policy (Ex. "2") at p. 32.   Accordingly, the USAA-CIC Policy not only excludes coverage for the cost of removing or replacing the defective drywall, but it excludes coverage for the cost

B.      The Policy Excludes Losses Consisting of or Resulting from
        "Faulty" or "Defective" Building Materials or Construction.

The Policy also expressly excludes any losses to the dwelling consisting of faulty or defective building materials, construction or workmanship.  Moreover, the Policy excludes any loss that results when faulty or defective building materials, construction or workmanship combines with any other causes, events, or conditions excluded under the Policy (i.e., corrosion).[47]  The pertinent portions of the Policy providing for these exclusions are as follows:

> We do not insure against loss consisting of any of the following. Nor do we insure for loss that results when one or more of the following combines with other causes, events or conditions that are also excluded or excepted in this policy.
>
> ***
>
> c.  **Faulty, negligent, inadequate or defective:**
>
>   (1) planning, zoning, development, surveying, siting;
>
>   (2) design, specifications, **workmanship**, repair, **construction**, renovation, remodeling, grading, compaction;
>
>   (3) **materials** used in repair, construction, renovation or remodeling; or
>
>   (4) maintenance;
>
> of part or all of any property whether on or off the residence premises.[48]

Courts applying Louisiana law have found these exclusions for faulty or defective materials, construction, and workmanship to exclude coverage.

In *Alton Ochsner Medical Foundation v. Allendale Mutual Insurance Co.*, 219 F.3d 501 (5th Cir. 2000), the Fifth Circuit considered an insured's claim that defective workmanship

---

of repairing any losses caused by the defective drywall (i.e., corrosion of copper tubing).  In any event, the *Travco* court ultimately held that the insured's losses to structural, mechanical, and plumbing components of the house were excluded, as they are here, under the policy's corrosion exclusion.  *See Travco*, 2010 WL 2222255 at *15.

[47] Policy (Ex. "2") at p. 35; *see infra* Part IV.C.

[48] Policy (Ex. "2") at p. 35 (emphasis added).

caused cracking in the foundation of an office tower under construction.  The insured attempted to distinguish the faulty workmanship from the property damage that ensued, but the court described "faulty workmanship" as:

> A defect in the way some part of the (insured property) is constructed.  In other words, it is the *quality of the product* which is excluded from coverage, and not damage *to* the product caused by negligence during the construction process.[49]

To demonstrate the distinction between the quality of the product and damage to the product, the *Alton Ochsner* court gave the example of an employee negligently driving a truck into an office tower, knocking it over.  The court reasoned such a loss would be covered, because it "would not bear directly on the quality of the product (the tower) but would cause damage to it."  To further emphasize its point, the Fifth Circuit cautioned courts to "**remain mindful that the policy does not cover the costs of 'making good' defective construction**."[50]  Likewise, this Court in *Holland v. Breaux* held that a homeowners insurance policy did not cover cracking, sagging, and rotting damage to a house resulting from "faulty planning, construction and maintenance," which included the improper use of untreated lumber.[51]

Under this jurisprudence, even if Plaintiffs could meet their burden of proving that the use of defective drywall in the construction of their house constitutes a "direct, physical loss" as required to establish coverage under the Policy, that loss is specifically excluded by the

---

[49] *Alton Ochsner,* 219 F.3d at 506 (quoting *U.S. Indus. v. Aetna Cas. & Surety Co.*, 690 F.2d 459, 463 (5th Cir. 1982)) (emphasis in original).

[50] *Id.* at 507 (emphasis added).

[51] *Holland v. Breaux*, 2005 WL 3542899 (E.D. La. Nov. 22, 2005) (Africk, J.); *see also Morgan v. Auto Club Family Ins. Co.*, 899 So. 2d 135, 137 (La. App. 3rd Cir. 2005) (faulty workmanship in installing new roof was excluded from coverage).

exclusions for defective and faulty workmanship, construction, and materials.[52]   As the *Nida* court expressly noted in considering a policy's latent defect exclusion, the insurer simply is <u>not</u> the guarantor of a homeowner's construction or building supplies.[53]   In other words, a homeowners policy is not designed, nor intended to be, a home warranty contract or a substitute for proper care in construction and the use of building materials.

C.   *The Policy Excludes Corrosion Damage.*

Plaintiffs allege they have incurred purported damages because the defective drywall in their house "emits odorous gases that cause ***corrosion*** of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items."[54]   The Policy, however, specifically excludes any "loss . . . caused by or consisting of . . . ***corrosion***."[55]

In *Central Louisiana Electric Co. v. Westinghouse Electric Corporation*, an accident occurred that damaged several blades in a turbine, and, after inspection, the insured discovered that the blades exhibited signs of "corrosion pitting" and cracks resulting from corrosion.[56]   The policy at issue provided coverage for "loss or damage to property of the Insured directly caused by [an] accident to an Object," and it defined "accident" as "any sudden or accidental occurrence . . . ."[57]   But, the insurance policy also provided as follows:  "[B]ut Accident shall not mean . . .

---

[52] *See Travco*, 2010 WL 2222255, *13 (holding that faulty materials exclusion in homeowners policy barred coverage for damage to insured's residence caused by defective drywall).

[53] *Nida*, 454 So. 2d at 335.

[54] Petition (Ex. "1") at ¶ 6 (emphasis added).

[55] Policy (Ex. "2") at p. 32 (emphasis added).

[56] *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 983-84 (La. 1991).

[57] *Id.* at 985, 984.

18

corrosion."[58]  Putting aside the blades undisputedly damaged by the first "accident," the Supreme

Court found that the replacement of the remaining corroded blades was not covered by the policy

because corrosion was explicitly excluded from the definition of "accident."[59]

The same analysis applies here.  Plaintiffs claim in their Petition that their dwelling was

damaged by "gases that cause corrosion . . . ."[60]  That damage, assuming for 12(b)(6) purposes

that it is true, is expressly barred by the Policy's exclusion of coverage for any "loss caused by or

consisting of corrosion."[61]  The claim must be dismissed.[62]

> D.     *The Policy Excludes Claims for Damages*
> *Arising from the Discharge of "Pollutants."*

The Policy also excludes any loss that is "caused by or consisting of" the discharge of

"pollutants" as follows:

> *we do not insure loss*:
>
> * * *
>
> 3.     caused by or consisting of:
>
> e.   *discharge, dispersal, seepage, migration, release or escape of* **pollutants**.…  **Pollutants means any solid liquid, gaseous or thermal irritant or contaminant**, including, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled reconditioned or reclaimed;[63]

---

[58] *Id.* at 984.

[59] *Id.* at 986; *see Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, Nos. 06-2516 & 06-3184, 2008 WL 4286538 (E.D. La. 9/17/08) (Englehardt, J.); *Orthopedic Practice LLC v. Hartford Cas. Ins. Co.*, No. 06-8710, 2008 WL 687184 (E.D. La. 3/10/08) (Porteous, J.); *Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-644, 2005 WL 534906 (Ohio Ct. App. 3/8/05).

[60] Petition (Ex. "1") at ¶ 6.

[61] Policy (Ex. "2") at p. 32.

[62] *See Travco*, 2010 WL 2222255, *15 (holding that corrosion exclusion in homeowners policy barred coverage for damage to insured's residence caused by defective drywall).

[63] *Id.* (emphasis added).

Thus, the term "pollutants" under the Policy includes any gaseous irritant or contaminant.[64]

Plaintiffs' allegations fall well within the definition of either a gaseous irritant or contaminant. Plaintiffs specifically state that "[t]he Chinese drywall emits odorous gases that cause corrosion . . . ."[65] Further supporting denial of coverage under this exclusion is Plaintiffs' allegation in *Price v. Knauf Gips KG* that the drywall emits gases and was made with waste material called "fly ash" which is harmful to health and property.[66]

Contamination "is commonly understood to mean: 'to make unfit for use by introduction of unwholesome or undesirable elements' or 'to soil, stain, or infect by contact or association.'"[67] Therefore, taking Plaintiffs' allegations as true, the pollution exclusion bars the alleged losses.[68]

> ### V. The Policy Does Not Provide Coverage for Any Alleged Losses to Personal Property Because Chinese Drywall Is Not an Enumerated Peril.

To the extent Plaintiffs intend to pursue coverage under the Policy for alleged damage to any personal property, the Policy does not cover such losses. Coverage C of the Policy provides coverage for losses to personal property only if the loss is caused by one of the following perils:

---

[64] *Id.*

[65] Petition (Ex. "1") at ¶ 6.

[66] *Price v. Knauf* Petition (Ex. "3") at ¶ 16, ¶ 22. Plaintiffs will likely cite *Doerr v. Mahil Oil Corp.*, 774 So. 2d 119, 127-28 (La. 2000), for the proposition that a pollution exclusion is only applicable to environmental pollution. However, *Doerr* dealt with a Commercial General Liability policy (not a homeowners policy), and did so in the context of such a policy alone. The court did not address the exclusion in the context of the policy that exists between a homeowner and his carrier.

[67] *Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766, 770 (M.D. La. 2008), *on reconsideration in part*, No. 06-504, 2008 WL 1885326 (M.D. La. 4/8/08) (unpublished).

[68] *See Travco*, 2010 WL 2222255, *18 (holding that pollution exclusion in homeowners policy barred coverage for damage to insured's residence caused by defective drywall).

(1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling objects; (11) weight of ice, snow or sleet; (12) accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system, etc.; (13) sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, etc.; (14) freezing; (15) sudden and accidental damage from artificially generated electrical current; and (16) volcanic eruption.[69]  *None* of these sixteen enumerated perils even arguably applies to the losses alleged in the Petition – and certainly none is alleged.  Therefore, as a matter of law, there is no coverage under the Policy for any losses to personal property alleged in the Petition.

### VI.    Without a Covered Loss, Plaintiffs May Not Recover for Loss of Use or Additional Living Expenses.

Plaintiffs alleged that they "will suffer substantial economic damage, particularly associated with their remediation efforts."[70]  To the extent that Plaintiffs are asserting a claim for loss of use, Coverage C of the Policy, "Loss of Use," provides certain coverage for living expenses, but only when a <u>covered</u> loss causes the residence to become uninhabitable.[71]  Because Plaintiffs have not sustained a covered loss to their residence, they do not have a claim for loss of use as a matter of law.

---

[69] Policy (Ex. "2") at pp. 33-34.

[70] Petition (Ex. "1") at ¶ 17.

[71] Policy (Ex. "2") at p. 29.

### VII.    Any Alleged Personal Injuries to Plaintiffs Are Not Covered.

Plaintiffs alleged "[t]he Chinese drywall emits odorous gases that . . . cause personal injury to Plaintiffs and their family."[72]   To the extent that Plaintiffs are asserting a claim for personal injuries to themselves, Coverage F of the Policy, "Personal Liability," excludes coverage.   Specifically, the policy provides "<u>Personal Liability</u> does not apply to: . . . "bodily injury to you or an insured within the meaning of part a or b of 'Insured' as defined."[73]   And, "Insured" is defined as "you and residents of your household who are: a. your relatives; or b. other persons under the age of 21 and in the care of any person named above."[74]   Accordingly, any bodily injuries claimed by Plaintiffs are not covered.

### VIII.   Because Plaintiffs Have Failed to State a Claim for Coverage, All Claims Under §§ 22:1973 and 22:1892 Must Also Be Dismissed.

The Petition asserts claims against USAA-CIC for violating LA. REV. STAT. § 22:1973 and LA. REV. STAT. § 22:1892, alleging that USAA-CIC failed to properly adjust and pay Plaintiffs' claim.[75]   But when (as here) an insurer demonstrates that no coverage exists, the insured has no claim for bad faith, attorneys' fees, or costs as a matter of law.[76]   The Court also should dismiss with prejudice Plaintiffs' derivative claims for bad faith because there has been no wrongful denial of coverage.

---

[72] Petition (Ex. "1") at ¶ 6.

[73] Policy (Ex. "2") at p. 40.

[74] Policy (Ex. "2") at p. 27.

[75] Petition (Ex. "1") at ¶ 20.

[76] *See, e.g., Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746, 754 (La. App. 2nd Cir. 1999).

## IX.    Conclusion

Plaintiffs' alleged losses consisting of or resulting from allegedly defective drywall are not covered under their Policy with USAA-CIC.  As difficult and troubling as their situation (and the situation of every other homeowner with defective drywall) may be, their homeowners insurance carrier is not and was not the guarantor of the construction of their house.  For these reasons, the Court should dismiss the Petition with prejudice and in its entirety for failure to state a claim upon which relief may be granted.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By:    _s/Jennifer McNamara_
AMELIA W. KOCH (2186)
STEVEN F. GRIFFITH, JR., T.A. (27232)
JENNIFER McNAMARA (23946)
KATHRYN B. COOPER (32404)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000
E-mail:  akoch@bakerdonelson.com
sgriffith@bakerdonelson.com
jmcnamara@bakerdonelson.com
kcooper@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT,
USAA CASUALTY INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by United States mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, and that the foregoing was electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system.

I further certify that I have served a copy of the above and foregoing on Jeffrey P. Berniard, counsel for the Plaintiffs, Joshua C. Price and Kimberlea Price, by e-mail and/or United States mail.

This 20th day of July, 2010.

*s/Jennifer McNamara*
JENNIFER McNAMARA