UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF LOUISIANA
(MDL 2047/Chinese Drywall)

| | |
|---|---|
| David Gross, *et al.* ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 09-6690 |
| ) | |
| v. ) | |
| ) | |
| Knauf Gips, KG, Pulte Home Corp., *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ /. ) | |

**PULTE HOME CORP.'S MOTION TO DISMISS
COMPLAINTS BY ROBERT ADAMS, MARNI KLEIN-ADAMS, ELLEN DECARLO
AND JERALD NELSON; INCORPORATED MEMORANDUM OF LAW
(REGARDING PROPOSED SUBCLASS # 208 ONLY)**

Defendant, Pulte Home Corp. ("Pulte"), by and through its undersigned counsel and pursuant to Fed R. Civ. P. 12(b) and 23, hereby moves to dismiss the lawsuit filed by Intervenor Plaintiffs, Robert Adams, Marni Klein-Adams, Ellen DeCarlo and Jerald Nelson (the "Non-Class Plaintiffs"), in the Mary Anne Benes' Substituted and Amended Omnibus Class Action Complaint in Intervention (III) dated March 18, 2010 (the "Complaint"), and in furtherance thereof, states:

A.   **Summary Of This Motion**.

1.   The Plaintiffs have brought a class action suit against homebuilder Pulte, as well as a plethora of "chain of commerce" drywall suppliers, contractors, installers, manufacturers, importers, etc. ("Responsible Parties"), demanding compensatory and statutory damages for alleged property damage arising out of or related to allegedly defective Chinese drywall installed in the Plaintiffs' homes. (Complaint, ¶¶ 1423-1433). The Plaintiffs, seeking certification as

Subclass # 208, also are demanding injunctive relief requiring Pulte and the Responsible Parties to remediate and repair their homes. (Complaint, ¶¶ 1453-1454, 1456-1459, 1578-1582, closing prayer for relief; Schedule 2). The Plaintiffs' demands for compensatory, statutory and injunctive relief arising out of and related to any and all property damage, relocation and remediation shall be known as the "Plaintiffs' Claims" or "Claims."

2. The Plaintiffs' Claims are not only moot, but they are barred by virtue of the plain waiver language contained within the confidential Limited Release, Assignment and Work Authorization Agreements the Plaintiffs signed with Pulte (the "Agreements").[1] In these Agreements, for receipt of good and valuable consideration, the Plaintiffs waived and released all their Claims against Pulte for any and all forms of property damage arising out of or related to their Chinese drywall claims.[2] The Plaintiffs further assigned to Pulte any and all Claims they may have had against the Responsible Parties for property damage and remediation.

## B. Background Of The Plaintiffs' Claims And Pulte's Remediation.

### Robert Adams and Marni Klein-Adams.

3. On or about August 17, 2009 and as required by Fla. Stat. § 558.004,[3] Robert and Marine Adams served Pulte with a notice of alleged construction defects, claiming their home at 9681 Lago Drive, Boynton Beach, Florida contained defective Chinese drywall.

4. On or about August 20 and September 3, 2009, Pulte, along with its independent consultant, A2L Technologies, Inc. ("A2L"), conducted preliminary investigations of the Adams' residence. Based upon the investigations, Pulte agreed to relocate the Adams and remediate their home.

---

[1] Pulte will agree to file copies of these Agreements under seal.
[2] Claims for personal injury are excluded from the waiver.
[3] A notice of construction defects sent under this statute is typically referred to as a "558 Notice."

2

ORLDOCS 11885458 1

5. On or about November 24, 2009, the Adams entered into the Agreement with Pulte. A true and correct copy of the remediation scope of work which is incorporated by reference into the Agreement is attached hereto as *Exhibit "A."*

6. On or about December 1, 2009, remediation of the Adams' residence commenced. Remediation was completed toward the end of the year. On or about January 14, 2010, a post-remediation inspection concluded that the Adams' home was free of Chinese drywall and its known effects were remedied. The Adams have since moved back into their home.

**Ellen DeCarlo and Jerald Nelson.**

7. On or about November 3, 2009, after they had already filed suit against Pulte, DeCarlo and Nelson served Pulte with a "558 Notice" alleging construction defects, claiming their home at 9651 Lago Drive, Boynton Beach, Florida contained defective Chinese drywall.

8. On or about December 1, 2009, Pulte and A2L conducted a preliminary investigation of the DeCarlo/Nelson residence. Based upon the investigation, Pulte agreed to relocate DeCarlo and Nelson and remediate their home.

9. On or about March 17, 2010, DeCarlo and Nelson entered in their Agreement with Pulte. A true and correct copy of the remediation scope of work which is incorporated by reference into the Agreement is attached hereto as *Exhibit "B."*

10. Remediation commenced shortly thereafter. On or about April 12, 2010, a post-remediation inspection concluded that the DeCarlo/Nelson home was free of Chinese drywall and its known effects were remedied. Nelson and DeCarlo have since moved back into their home.

**The Lawsuit.**

11. In or about August 2009, Nelson and DeCarlo initiated their lawsuit in the United States District Court for the Southern District of Florida. They filed this suit before giving Pulte the requisite "558 Notice." On or about September 9, 2009, the case was transferred to the Chinese drywall MDL before the Honorable Judge Fallon.

12. On October 28, 2009, Pulte filed a Motion to Vacate the Conditional Transfer Order and Incorporated Memorandum of Law. This Motion was denied by the Court on November 4, 2009.

13. To the best of Pulte's knowledge, the Adams never filed suit against Pulte until intervening in the class action MDL.

14. On or about March 18, 2010 and despite having had their homes remediated, the Plaintiffs' joined in the filing of the operative "Substituted and Amended Omnibus Class Action Complaint In Intervention III."

15. On April 2, 2010, Pulte emailed counsel for DeCarlo and Nelson requesting that their complaint be dismissed. On April 5, 2010, Pulte again asked DeCarlo and Nelson's counsel to dismiss their complaint.

16. On April 6, 2010, a paralegal with the Plaintiffs' law firm advised that they had submitted the dismissal of Gerald Nelson and Ellen DeCarlo's claims in the MDL (including their claims against Pulte) to the Plaintiff's Steering Committee the week prior. A copy of this dismissal has never been provided to Pulte.

17. Pulte was served with the Complaint on May 24, 2010. On June 14, 2010, counsel for the Plaintiffs granted Pulte a two-week extension through June 28, 2010 to serve its response to the Complaint.

18. On June 24, 2010, Pulte's counsel again requested that the Plaintiffs dismiss their Lawsuit. To date, the Plaintiffs' Claims have not been dismissed.

### C. The Plaintiffs' Claims Are Waived, Assigned Or Otherwise Moot.

19. In their confidential Agreements, which are governed by Florida law, the Plaintiffs waived all rights to pursue Pulte for their Claims. Under Florida law, absent a showing of fraud, undue influence or a violation of public policy, an express waiver of claims contained within a settlement agreement is decisive of the rights of the parties thereto and operates as a bar to prosecution of those claims contemplated by that settlement agreement. See generally, Peralta v. Peralta Food Corp., 506 F. Supp. 2d 1274, 1279 (S.D. Fla. 2007) (internal citations omitted); Banfield v. Louis, 589 So. 2d 441 (Fla. 4th DCA 1991); EEOC v. Cosmair, Inc., L'Oreal Hair Care Division, 821 F. 2d 1085 (5th Cir. 1987); and Kappelmann v. Brown & Brown, Inc., 2008 WL 638089 (S.D. Fla. 2008).

20. The Plaintiffs have made absolutely no allegations seeking to avoid the terms of the Agreements so the waiver much be enforced.

21. Moreover, the Plaintiffs lack standing to bring Claims against the Responsible Parties because the Plaintiffs have assigned those Claims to Pulte. Once the assignor assigns his rights to pursue a claim against a third party, the assignor retains no rights to sue the third party. Hansen v. Wheaton Van Lines, Inc., 486 F. Supp. 2d 1339, 1346 (S.D. Fla. 2006), citing, Lawyers Title Ins. Co., Inc. v. Novastar Mortgage, Inc., 862 So.2d 793 (Fla. 4th DCA 2004); also see, Tucker v. Phyfer, 819 F. 2d 1030, 1033 (11th Cir. 1987).

22. Because of their waiver and assignment of Claims, the Plaintiffs' Claims are not typical of the claims for which they are seeking class certification.

> Under Rule 23(a), the named Plaintiffs must present claims that are typical of the claims of the class...To meet the typicality

5

requirement, the named Plaintiffs must demonstrate that the members of the class have the same or similar grievances as themselves.

Walco Investments, Inc. v. Thenen, 168 F.R.D. 315, 326 (S.D. Fla. 1996), citing Belles v. Schweiker, 720 F.2d. 509, 515 (8th Cir. 1983).

23. The Plaintiffs no longer have grievances that are the same or similar to the other purported class members. There are two other named plaintiffs, Amy Bloom and Benjamin Greenberg, who are identified in the Complaint as also seeking to represent Subclass # 208 against Pulte. However, neither of them have entered into waiver and assignment agreements with Pulte and neither of them have had their homes remediated.[4] Based on this court's Judgments, Findings of Fact and Conclusions of Law in the Germano, et al. v. Taishan Gypsum Co., Ltd., et al., Case No. 09-6687, et al. and Hernandez v. Knauf Gips KG, et al., Case No. 09-6050, the great majority of the damages being awarded to the plaintiffs have been remediation costs associated with property damage.

24. The Plaintiffs in this case no longer have any grievance against Pulte or the Responsible Parties for those damages.

25. These substantial and critical differences between the Plaintiffs' Claims and the Bloom/Greenberg claims negate the Plaintiffs' assertion that their claims are "typical" of the claims being made for Subclass # 208. (Complaint, ¶ 1453 and Sch. 2). The Plaintiffs simply no longer have anywhere near the same financial stake in the outcome as the others.

> In a class action, the claim of the named plaintiff, who seeks to represent the class, ***must be live both at the time he brings suit and when the district court determines whether to certify the putative class***. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot.

---

[4] In fact, evidence has shown that Bloom's residence does not have Chinese drywall while Greenberg has refused to allow Pulte to inspect his home despite requests to do so.

6

Tucker at 1033 (emphasis added).

26. The Plaintiffs' claims are not live and the district court has not yet certified the class action. Though the DeCarlo/Nelson class action lawsuit was filed in August 2009, Pulte was not served with process of the Substituted and Amended Omnibus Class Action Complaint until May 24, 2010. During the interim, the Plaintiffs' entered into the Agreements and their homes have been completely remediated. "[I]f developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of the suit, then a federal court must dismiss the case as moot." Rosetti v. Shalala, 12 F.3d 1216, 1224 (3rd Cir. 1993).

27. The Plaintiffs have no personal stake in the outcome of any adjudication of the Claims. Though the Plaintiffs may initially have had standing when the original class action suit was commenced, their requisite personal interest must continue throughout the lawsuit. Rosetti at 1229, fn 19. It has not.

28. Therefore, the court must dismiss the Plaintiffs' Claims for being moot. Id.

WHEREFORE, Defendant, Pulte Home Corporation, hereby respectfully requests that this Court GRANT its Motion to Dismiss the claims of Robert Adams, Marni Klein-Adams, Ellen DeCarlo and Jerald Nelson, for its attorneys' fees and costs in having to bring this Motion, and for such other relief as this Court deems just and proper.

CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion To Dismiss Complaints By Robert Adams, Marni Klein-Adams, Ellen Decarlo And Jerald Nelson; Incorporated Memorandum Of Law (Regarding Proposed Subclass # 208 Only) has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by

hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047; and U.S. Mail and facsimile to: Jeremy Alters, Esq., *counsel for Subclass #208* and Phillip A. Whittmann, *Liaison Counsel for Homebuilder and Installers*, on this 28th day of June, 2010.

/s/ John H. Dannecker
<u>ORIGINAL SIGNED DOCUMENT ON FILE WITH THE COURT</u>
**JOHN H. DANNECKER, ESQ.**
Florida Bar No. 0745030
**AMANDA G. SIMMONS, ESQ.**
Florida Bar No. 0728020
SHUTTS & BOWEN, LLP
300 South Orange Avenue, Suite 1000
Orlando, Florida 32801-5403
Telephone: (407) 423-3200
Facsimile: (407) 849-7291
Email: jdannecker@shutts.com
   asimmons@shutts.com
*Attorneys for Pulte Home Corp.*

ORLDOCS 11885458 1

**II.   Scope of Work**

The Repair Work at the Home will include and be limited to the following:

- Removing and replacing all of the Defective Drywall in your Home.
- ~~Repairing or~~ replacing other Affected Materials in your Home, including affected HVAC systems, plumbing components, and affected electrical components, including affected wiring, switches, and receptacles.
- Finishing and painting all new drywall.
- Installation and painting of all casing, baseboard, interior door slabs, and interior door hardware.
- Replacing or removing and reinstalling cabinets and/or counter-tops.
- Replacing cultured marble lavatory tops.
- Replacing bath tubs, shower pans, mirrors, and shower enclosures.
- Replacing shelving in all closets.
- ~~Repairing or~~ replacing, as necessary, all materials affected by the repair process in your Home.
- Homebuilder will ~~repair or~~ replace the Affected Materials and any materials affected by the repair process to the same or reasonably similar level as was present in your Home on the date of closing of your purchase of the Home, using the same or similar materials or fixtures as were present in your Home on the date of closing of your purchase of the Home.
- Homebuilder may, in its sole discretion, ~~repair or~~ replace any Affected Materials and any materials affected by the repair process that you may have added to your Home after the date of closing of your purchase of the Home (collectively, the "Affected Upgrades"). However, if Homebuilder does not repair or replace the Affected Upgrades, Homeowner will compensate you for the Affected Upgrades based on their reasonable market value, as determined and agreed to at the Preconstruction Meeting. You understand and agree that these are the sole remedies that Homebuilder will provide with respect to the Affected Upgrades and that you will not seek any other remedy or relief with respect to the Affected Upgrades. Should you nevertheless fail to agree to either of these two remedies, you release and forever discharge Homebuilder of and from all debts, demands, actions, causes of action, suits, damages, losses, fees, sums of money, controversies, agreements, promises, implied or express warranties, claims, and all liabilities whatsoever, past, present or future, vested or contingent, both at law and in equity, whether direct or indirect, foreseen or unforeseen, known or unknown, which you had, now have, or in the future may have for property damage, and any consequential damages arising therefrom, associated directly or indirectly in any manner whatsoever arising from or caused by the Affected Upgrades.
- Upon the completion of the HEPA cleaning or other remediation of the Defective Drywall and the Affected Materials, to be performed by a contractor that is licensed in Florida and that holds a certification in HEPA cleaning or remediation that is generally recognized and accepted throughout that industry, Homebuilder

Page 6 of 13                                    Initials: _JWJ_ / _MK_
                                                        Pulte       Homeowner

(*) See attached scope of work ex A¹, A²



EXHIBIT "A"

will have an appropriate third-party confirm in writing that the Defective Drywall has been removed and that the Affected Materials have been properly remediated.

A more detailed description of the Repair Work may be provided in the Preconstruction Meeting Documentation, which, if provided, is incorporated herein.

**[Remainder of page intentionally left blank]**

Initials: JW / *signature*
Pulte / Homeowner

## Scope of Work

- **General Scope of Construction:**

  - The following items will be replaced:
    - All gypsum wall boards, with the exception of the fire protection that is placed over the party wall (this drywall, which is a different thickness, has been found not to have the same corrosive effects as the other drywall that is being removed).
    - The electrical system, including all wiring, switches, recessed can lights, outlets, low voltage and the electrical panel.
    - The HVAC system, including all supply cans, returns, compressor, ductwork, and air handler.
    - ~~All accessible~~ components of the plumbing system that have been ~~affected~~, including fixtures, lines, tubs, shower pan, toilets, and hot water heater. Replace all — *ML* MD 11-24-09
    - Cabinets and countertops (unless the homeowner requests that we remove, clean, store, and re-install).
    - Interior trim material including, interior doors, base, casing, hardware, railings, etc...
    - Flooring, both upstairs and downstairs (sub flooring not included)

- **Remediation protocol:**

  - The following actions will be applied as per A2L Technologies request:
    - During demolition the appropriate safety precautions will be followed to protect the environment, and the workers. This will include but not be limited to containment protocol, air scrubbing and monitoring, evidence preservation etc...
    - Upon completion of demolition, existing masonry, trusses, roof interior sheathing, interior framing, furring strips, sub-jambs, and sub-floor will be HEPA vacuumed.
    - All remaining building materials will be sprayed with an encapsulant product.
    - Prior to installation of the new building materials, A2L will perform an inspection of the environment to ensure that their recommended remediation protocol has been executed in accordance with their recommendations, and a certificate will be issued to the homeowner in care of the builder.

- **Specfications:**

  - The following items will be current specifications as listed in the provided diagrams:
    - Cabinet selections – Maple wood
    - Entry level granite
    - Electrical components (ceiling fan protocol will be listed below)
    - Plumbing fixtures
    - HVAC- Lennox
    - Trim molding- Colonial
    - Hardware - Schlage
    - Mirrors, shower enclosures, and shelving
    - Paint- Sherman Williams

- **Upgrades and additional specifications:**

  - Flooring:

JM 11-24-09

ex: A'
ML

- The closest available flooring will be provided based on what currently exists in the unit today.
- If custom carpet, tile, or wood has been added, the closest available comparison of equal or greater quality will be installed at the discretion of Pulte Homes.
- There will be no other options granted.

o Custom Painting:
- Each bedroom will be granted one full room color choice based on available Sherman Williams color selections.
- There will be no color choices for living areas.
- The compensation package will include $600 for custom painting in the living areas as needed.

o Custom Trim Moldings:
- If upgrades have been added, Pulte will consult with a trim/labor provider to establish an estimate of cost.
- A dollar amount based upon the estimate will be part of the one time compensation offer.

o Ceiling Fans and custom light fixtures:
- Custom fixtures will be taken down, stored, and re-installed. *[handwritten: Do not want reinstalled -me]*
- If homeowner doesn't want the fixture a compensation amount will be offered.

o Window treatments:
- Flooring contractor will manage process.
- Window treatments will be taken to a storage facility.
- They will then be cleaned and stored, or replaced (if damaged). *[handwritten: Replace!]*
- Upon completion of unit, they will be re-installed. *[handwritten: Do not want reinstalled! -me]*

o HVAC:
- If the homeowner has purchased an upgraded HVAC system, the comparable quality will be offered through Lennox.
- There will be no additional considerations offered.

> **All others:**
- Work will not commence without the Pulte signed agreement.
- Compensation will not be issued without the Pulte signed agreement.

*[handwritten signature: 11-24-09]*

*[handwritten: ex = A2]*

## II. Scope of Work

The Repair Work at the Home will include and be limited to the following:

- Removing and replacing all of the Defective Drywall in your Home.
- ~~Repairing~~ or replacing other Affected Materials in your Home, including affected HVAC systems, plumbing components, and affected electrical components, including affected wiring, switches, and receptacles.
- Finishing and painting all new drywall.
- Installation and painting of all casing, baseboard, interior door slabs, and interior door hardware.
- ~~Replacing or~~ removing and reinstalling cabinets and/or counter-tops.
- Replacing cultured marble lavatory tops.
- Replacing bath tubs, shower pans, mirrors, and shower enclosures.
- Replacing shelving in all closets.
- ~~Repairing or~~ replacing, as necessary, all materials affected by the repair process in your Home.
- Homebuilder will ~~repair~~ or replace the Affected Materials and any materials affected by the repair process to the same or reasonably similar level as was present in your Home on the date of closing of your purchase of the Home, using the same or similar materials or fixtures as were present in your Home on the date of closing of your purchase of the Home.
- Homebuilder may, in its sole discretion, repair or replace any Affected Materials and any materials affected by the repair process that you may have added to your Home after the date of closing of your purchase of the Home (collectively, the "Affected Upgrades"). However, if Homebuilder does not repair or replace the Affected Upgrades, Homebuilder will compensate you for the Affected Upgrades based on their reasonable market value, as determined and agreed to at the Preconstruction Meeting. You understand and agree that these are the sole remedies that Homebuilder will provide with respect to the Affected Upgrades and that you will not seek any other remedy or relief with respect to the Affected Upgrades. Should you nevertheless fail to agree to either of these two remedies, you release and forever discharge Homebuilder of and from all debts, demands, actions, causes of action, suits, damages, losses, fees, sums of money, controversies, agreements, promises, implied or express warranties, claims, and all liabilities whatsoever, past, present or future, vested or contingent, both at law and in equity, whether direct or indirect, foreseen or unforeseen, known or unknown, which you had, now have, or in the future may have for property damage, and any consequential damages arising therefrom, associated directly or indirectly in any manner whatsoever arising from or caused by the Affected Upgrades.
- Upon the completion of the HEPA cleaning or other remediation of the Defective Drywall and the Affected Materials, to be performed by a contractor that is licensed in Florida and that holds a certification in HEPA cleaning or remediation that is generally recognized and accepted throughout that industry, Homebuilder

Page 6 of 13

Initials: ____ / ____
       Pulte   Homeowner



EXHIBIT "B"

will have an appropriate third-party confirm in writing that the Defective Drywall has been removed and that the Affected Materials have been properly remediated.

A more detailed description of the Repair Work may be provided in the Preconstruction Meeting Documentation, which, if provided, is incorporated herein.

**[Remainder of page intentionally left blank]**