UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) MDL NO. 2047 )  ) SECTION: L ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| ALL CASES | ) JUDGE FALLON ) MAG. JUDGE WILKINSON ) |

**THE PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO ESTABLISH A PLAINTIFFS'
LITIGATION EXPENSE FUND TO COMPENSATE AND REIMBURSE
ATTORNEYS FOR SERVICES PERFORMED AND EXPENSES
INCURRED FOR MDL ADMINISTRATION AND COMMON BENEFIT**

I. **INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") has been actively pursuing litigation on behalf of all of the thousands of plaintiff property owners in this Multidistrict litigation. Based upon recent events described herein, the PSC submits that this MDL is now mature and the circumstances warrant the establishment of a litigation expense fund to sequester available funds for future compensation of the PSC for its MDL administration and common benefit efforts. The motion should be granted for the reasons set forth below.

II. **PROCEDURAL HISTORY AND STATEMENT OF THE FACTS**

This complex multidistrict litigation was begun because of scores of individual and class action lawsuits that were brought in several federal district courts in the Gulf Coast region and East Coast by property owners whose homes or other properties were damaged by drywall manufactured in China and imported into the United States.

The imported drywall is defective. When installed in certain structures and climates, it creates corrosive environments that wreak havoc in the properties by producing obnoxious, foul-smelling odors and damaging other parts of the structures and appliances. Chinese drywall has created such a substantial nuisance that numerous governmental agencies have studied it and found to be defective. Only recently, the Consumer Products Safety Commission (CPSC) has determined that problematic CDW must be replaced as well as electrical wiring and certain other property damaged by the CDW.[1]

On June 15, 2009, the Judicial Panel for Multidistrict Litigation entered an Order transferring all federal cases involving such claims to the United States District Court for the Eastern District of Louisiana for coordinated discovery and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 626 F.Supp.2d 1346 (J.P.M.L 2009).

On April 8, 2005, this Court, as the transferee court, entered Pretrial Order No. 8, which created the Plaintiffs' Steering Committee ("PSC") consisting of Jerrold Seth Parker, Dawn M. Barrios, Victor Manuel Diaz, Ben Gordon, Daniel E. Becnel, Jr., Ervin Amanda Gonzalez, Hugh P. Lambert, Arnold Levin, Christopher Seeger, Scott Weinstein, Gerald E. Meunier, James Robert Reeves, Bruce William Steckler, and Russ M. Herman (as an ex-officio member). In addition, Arnold Levin was selected as lead counsel. Previously, Russ Herman was appointed to serve as Plaintiffs' Liaison Counsel. *See* Pretrial Order No. 3. The Court set forth certain duties and responsibilities of the PSC, including the preparation and completion of pleadings; the filing

---

[1]*See In re Chinese Manufactured Drywall Products Liability Litigation*, 2010 WL 1445684, *7 (E.D. La. Apr. 8, 2010)(referencing the CPSC's "Interim Guidance-Identification of Homes with Corrosion from Problem Drywall (January 28, 2010).").

2

of motions; responding to motions; discovery; pretrial preparation; settlement; docket management; the establishment and administration of a document depository; communication with individual plaintiffs and their counsel; liaison with defendants; and court appearances.  PTO 8 at 3-4.

In contemplation of the fact that the PSC would perform these services on behalf of all plaintiffs in the litigation, the Court provided in Pretrial Order No. 9 a mechanism by which attorneys working for the PSC would report the amount of time expended for such activities, in the expectation of being compensated for their time and reimbursed for expenses incurred on behalf of plaintiffs.

Since the entry of PTO No. 8, the PSC has set up the plaintiffs' document depository, represented the plaintiffs at the Court's status conferences, undertaken the enormous burden and concomitant expense of preparing, filing, translating and serving the several Omni complaints and related complaints in intervention to attract and aggregate thousands of plaintiffs and their associated defendants into this litigation, and all the while undertaking the arduous task of managing this prolix litigation.  Absent the common benefit bestowed upon the several plaintiffs through the provision of these Omni Complaints, few plaintiffs would have paid to perfect service of process under the Hague Convention on their foreign manufacturers.  Thanks to the PSC, this function was done for them.  The several plaintiffs were further benefitted by the PSC's endeavors to involve the comprehensive general liability insurance carriers through the Omni V Complaint, as well as other class actions.  These pleadings of the PSC were intended to close the circle of liability by engaging the insurers and other financiers of the defendants directly in this litigation.   These services performed by the PSC aggregated the "mass" in this mass tort

which is contributing to hopefully resolving this litigation.

Amongst the several significant accomplishments already demonstrated by the PSC, perhaps the most crowning achievements were the assembly of a highly regarded expert team within less than a year that contributed to the successful conclusion of two major bench trials, the settlement of yet another case on the eve of trial, and the support of yet another successful jury trial in a coordinated state jurisdiction.

As a consequence of these milestones, the PSC is aware that certain defendants and other entities are now interested in exploring settlement of their liability exposure. Some defendants are actively engaged in settlement discussions and the potential for resolution of litigation in this maturing atmosphere suggests that now is the time to protect the *res* that would provide compensation to this Court's appointed steering committee. Under these circumstances where the litigation has matured to the point that settlements are imminent, an immediate sequestration of funds is appropriate to preserve those assets and to avoid dissipation thereof.

Accordingly, the purpose of this motion is to seek an Order creating a "fund" consisting of the recoveries in the federal court cases and claim payments to plaintiffs in state courts that agree to coordination, from which the PSC and other attorneys performing "common benefit work" for plaintiffs may obtain compensation for the benefits that they confer on plaintiffs, to provide that the benefits of the PSC arrangement will be available to litigants in other state courts who elect to avail themselves of the opportunity for state and federal coordination, and to provide a mechanism to protect against the misappropriation of the work-product created by the PSC and coordinating state counsel.

For the reasons which follow, such relief is appropriate.

### III.  ARGUMENT

#### A. Securing an Equitable Allocation of Fees and Costs for the PSC and the Attorneys it Designates to Administer the MDL Docket and Perform Common Benefit Work is Necessary and Appropriate at This Time.

The common fund doctrine is a principle of equity designed to prevent unjust enrichment by providing that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939); *Trustees v. Greenough*, 105 U.S. 527, 534-536 (1881); *In re SmithKline Beckman Corp. Securities Litigation*, 751 F. Supp. 525, 530 (E.D. Pa. 1990). As the Third Circuit stated in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 165 (3d Cir. 1973):

> These equitable powers, may, under the equitable fund doctrine, be used to compensate individuals whose actions in commencing, pursuing or settling litigation, even if taken solely in their own name and for their own interest, benefit a class of persons not participating in the litigation.  See Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S. Ct. 777, 83 L.Ed. 1184 (1939).
>
> \* \* \*
>
> The award of fees under the equitable doctrine fund is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed.

*See also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *Strong v. Bell South Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998).

In order for the common fund doctrine to apply, the beneficiaries of the fund need not be members of a class and the benefit need not have been conferred in the context of a class action

because the common fund principle is a long-standing principle of equity which predates modern class actions. *See Trustees v. Greenough*, 105 U.S. 527 (1881). As the court stated in *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977):

> The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees. The doctrine is "employed to realize the broadly defined purpose of recapturing unjust enrichment." I Dawson 1597. That is, the doctrine is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the "stranger" beneficiaries do not receive their benefits at no cost to themselves.

*Id.* at 769. *See also In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977) (court awarded fees to lead counsel by ordering each other attorney representing a plaintiff to pay to lead counsel part of his fee from his client); *City of Klawock v. Gustafson*, 585 F.2d 428, 431 (9th Cir. 1978) (court held that attorneys whose litigation efforts benefited their client as well as other native towns may be entitled to attorneys' fees under the common benefit theory); *In re MGM Grand Hotel Fire Litigation*, 660 F. Supp. 522 (D. Nev. 1987)(same).

      Apart from application of the common fund doctrine as an equitable principle governing the payment of counsel fees and litigation expenses, it has consistently been recognized that federal courts possess the inherent power to appoint counsel to coordinate and manage complex multiparty litigation and to require that such counsel be paid for discharging these duties out of the proceeds of the litigation generally. *See, e.g., In re Vioxx Products Liability Litigation,* MDL No. 1657, PTO No. 19 (E.D. La. Aug. 4, 2005); *In re Propulsid Products Liability Litigation*, MDL No. 1355, PTO No. 16 (E.D.La. Dec. 26, 2001); *In re Rezulin Products Liability Litigation*, MDL No. 1348, PTO No. 67 (S.D.N.Y. March 20, 2002); *In re Diet Drugs Products*

*Liability Litigation*, 1999 WL 124414 (E.D. Pa. Feb. 10, 1999) (PTO No. 467); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014, 1996 WL 900349 (PTO 402) (E.D. Pa. June 17, 1996); *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 982 F.2d 603, 606-07 (1st Cir. 1992); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1011-17; *In re MGM Grand Hotel Fire Litigation*, 660 F. Supp. at 522, 524-26. Collectively, these courts imposed set asides ranging from 3% to 17% of the recoveries obtained.

Thus, in mass tort cases involving consolidated MDL proceedings, counsel who have been appointed by the Court to manage the litigation for the benefit of all plaintiffs should receive reimbursement for the costs expended in that effort and compensation for their services from all of the plaintiffs on a ratable basis. *In re Diet Drugs Products Liability Litigation, supra*; *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014; *In re Nineteen Appeals*, 982 F.2d at 606-07; *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992); *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985); *aff'd in part, rev'd in part*, 818 F.2d 226 (2d Cir. 1987); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1019-21.

> These principles were articulated in Nineteen Appeals as follows:
>
> Under standard American rule practice, each litigant pays his or her own attorneys' fees. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245, 95 S. Ct. 1612, 1615, 44 L.Ed.2d 141 (1975). Yet, there are times when the rule must give way. For example, when a court consolidates a large number of cases, stony adherence to the American rule invites a serious free-rider problem. *See generally* Mancus Olson, *The Logic of Collective Action* (1071). If a court hews woodenly to the American rule under such circumstances, each attorney, rather than toiling for the common good and bearing the cost alone, will have an incentive to rely on others to do the needed work, letting those others bear all the costs of attaining the parties' congruent goals.

> A court supervising mass disaster litigation may intervene to prevent or minimize an incipient free-rider problem and to that end, may employ measures reasonably calculated to avoid "unjust enrichment of persons who benefit from a lawsuit without shouldering its costs." *Catullo v. Metzner*, 834 F.2d 1075, 1083 (1st Cir. 1987). Such courts will most often address the problem by specially compensating those who work for the collective good, chiefly through invocation of the so-called common fund doctrine.
>
> \* \* \*
>
> Here, [the District Court's] decision to use a steering committee [to manage consolidated mass tort litigation on behalf of all plaintiffs] created an occasion for departure from the American rule. In apparent recognition of the free-rider problem, the judge served notice from the beginning that he would eventually make what he, relying in part one appellees' counsel, *see Fees Op.*, 768 F. Supp. at 924 n. 42, later termed a "common fund fee award" to remunerate PSC members for their efforts on behalf of communal interests. This was a proper exercise of judicial power. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 90 S. Ct. 616, 625, 24 L.Ed.2d 563 (1970); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 240 (2d Cir. 1987) (upholding a fee award to a plaintiffs' steering committee under the equitable fund doctrine); *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 402 (D.C. Cir. 1986) (collecting cases); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 526 (D. Nev. 1987).

*In re Nineteen Appeals*, 982 F.2d at 606-07.

In order to protect the right of common benefit attorneys to receive a fee and reimbursement of expenses from the proceeds of the litigation in which they have participated and diligently worked on behalf of plaintiffs, courts have consistently ruled that it is appropriate to direct that all or part of the counsel fees which may become payable in each action which was the subject of coordinated or consolidated proceedings be deposited in an escrow account for allocation by the Court in accordance with appropriate legal standards. *In re Diet Drugs Products Liability Litigation, supra; In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 300 (1st Cir. 1995); *Smiley v. Sincoff*, 958 F.2d 498, 499 (2d Cir. 1992); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014,

8

*In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985); *In re Silicone Gel Breast Implant Product Liability Litigation*, MDL 926, Pretrial Order Nos. 13 & 23 (N.D. Ala. July 23, 1993 and July 28, 1995).  Thus, this Court should properly enter an Order requiring that some portion of the fees earned in each individual action which is the subject of these consolidated MDL 1355 proceedings be withheld for distribution to counsel acting for the benefit of all litigants.

A question then remains as to the proportion of plaintiffs' recoveries which should be subject to such sequestration.  Ultimately, the amount of the fee to be awarded must be determined either under the lodestar approach recognized by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) or under the percentage of the fund approach based upon a judicial assessment of the amount and quality of work performed by the common benefit lawyers in relation to the size of the recoveries and the expenses incurred to produce the recoveries which have been generated.  *See, e.g., In re Diet Drugs Products Liability Litigation, supra; In re Orthopedic Bone Screw Product Liability Litigation*, MDL 1014, PTO 402 (12% for fees and 5% for costs sequestered); *Johnson*, 488 F.2d at 717-19; *In re Thirteen Appeals*, 56 F.3d at 304-07; *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1295 (9th Cir. 1994), *aff'd in part*, 19 F.3d 1306 (9th Cir. 1994); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir.), *cert. denied*, 488 U.S. 822 (1988).

Because the instant action is ongoing, it is impossible to ascertain the total amount of time and expenses which will have been expended by the PSC and associated counsel for the

common benefit or to ascertain the amounts which will be generated for the plaintiffs as a whole. Thus, it is impossible to determine the precise percentage of plaintiffs' recoveries which should be subject to an Order requiring payment to the Common Benefit Attorneys under the equitable principles set forth above. Because this is a products liability case and not a pharmaceutical case recent precedents are not precisely accurate markers for the appropriate assessment. Indeed, unlike recent pharmaceutical cases where the assessment was imposed early on in the litigation, here the litigation has significantly matured thanks to the PSC processing the thousands of individual cases through the use of the Omni Complaints. Accordingly, the most analogous case is the *Orthopedic Bone Screw* litigation where numerous defendants were selling unique devices and other supporting and related defendants like medical societies were also brought into the litigation through Omni Complaints. Because of the enormity and breadth of the litigation that did not simply target one defendant, the Court recognized the need to establish a large assessment to compensate counsel for their extraordinary time commitments and outlay of cash to support the litigation. As evidenced to date, there is every reason to believe that this PSC and its associated counsel will perform more work than the Plaintiffs' Legal Committee (PLC) in *Bone Screws* and incur even greater expenses in service of the Omni Complaints due to the scores of foreign manufacturers involved here, and the fact that counsel have already expended a substantial outlay of money for property inspections (which expenditures it is submitted. should be considered a common benefit expense)[2]. The constellation of these factors suggest that a substantial assessment be imposed now, to avoid later increases based on recalculations of

---

[2]To date, the PSC has outlayed hundreds of thousands of dollars for service, and millions of dollars in total costs. The costs of property inspections which the PSC seeks to reimburse individual counsel are also in the realm of hundreds of thousands of dollars.

10

circumstances as other courts have done[3].

The PSC will be guided by this Court's advices as to the appropriate percentage to be applied as an assessment. Irrespective of the value, the assessment is intended to act only to preserve a *res* until an opportune time arrives when the court can make a determination of any appropriate award of either fees or costs. To assure that the *res* is preserved, the responsibility for paying the assessment into the fund established is that of the hundreds of defendants named in any of the Omni Complaints or in a state court action in which a plaintiff is also involved in an Omni complaint, since these defendants alone will have the intimate knowledge of sometimes confidential settlements and initial access to the funds themselves. All PSC members and "of counsel" members of the PSC have already agreed to contribute all state and federal recoveries to the fund.

This plan of sequestering funds is designed to facilitate state and federal coordination. Under the unique circumstances of this litigation, it seems more than fair, particularly when viewed in light of the *Propulsid* and *Vioxx* experience. *See generally*, Francis McGovern,

---

[3] It is not uncommon, therefore, for courts to revisit common benefit assessments when circumstances warrant, especially in light of a global settlement. *See*, *e.g.*, *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 2008 WL 682174 at *12 (increasing assessment from 4% to 15% of fund award); *In re Bextra and Celebrex Marketing Sales Practices and Prod. Liab. Litig.*, Pretrial Order No. 8A: Amendment to Order Establishing Common Benefit Fund (N.D. Cal. July 7, 2008) (court allowed assessment to be increased between 8% fees/2% costs and 10% fees/2% costs: "[g]iven the extensive work, including discovery, expert, and bellwether trial preparation, that has been conducted by Court-designated counsel, including Plaintiffs' Liaison Counsel and the members of the PSC (including its subcommittees), and given the size and length of the litigation, the Court finds that the current 2% costs and 2% fees assessment is inadequate to properly reimburse members of the PSC for their out-of-pocket costs and to pay for appropriate and necessary common benefit work."); *Turner v. Murphy Oil*, 422 F. Supp. 2d 676, 683 (E.D. La. 2006) (PTO No. 8) (12% assessment in a local consolidated property damage litigation that later became a 17% award).

*Toward a Cooperative Strategy for Federal and State Judges In Mass Tort Litigation*, 148 U.Pa.L.Rev. 1867 (2000); William Schwarzer, *Judicial Federalism in Action: Coordination of Litigation in State and Federal Courts*, 78 Va.L.Rev. 1689 (1992).

We respectfully submit that it is imperative that the Court immediately enter an order which we provides for an assessment that recognizes the significant efforts and expenses already paid for by the PSC that have benefitted this litigation, *e.g.*, the Omni Complaints which have brought thousands of plaintiffs, defendants, and their insurers into the MDL.

For all counsel, distribution of any funds sequestered will be pursuant to a subsequent order by the Court in accordance with applicable principles of law governing fee awards. At an appropriate time, when the Court enters an award on the MDL assessments, it will apportion costs and fees.

It is anticipated that in support of any award of fees and costs to the PSC and common benefit attorneys, a petition in conformity with Fifth Circuit jurisprudence will be presented. *See Johnson, supra.*

### III.    **CONCLUSION**

For the foregoing reasons, the PSC requests that its Petition be granted and the proposed Order entered by the Court.

Dated: July 26, 2010

Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman, Esquire (LA Bar No. 6819)
Leonard A. Davis, Esquire (LA Bar No. 14190)
Stephen J. Herman, Esquire (LA Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

| | |
|---|---|
| Christopher Seeger | Scott Wm. Weinstein |
| Seeger Weiss, LLP | Morgan & Morgan |
| One William Street | 12800 University Drive, Suite 600 |
| New York, NY 10004 | Ft. Meyers, FL 33907 |
| Phone: (212) 584-0700 | Phone: (239) 433-6880 |
| Fax: (212) 584-0799 | Fax: (239) 433-6836 |
| cseeger@seegerweiss.com | sweinstein@forthepeople.com |

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Richard S. Lewis | Jeremy W. Alters |
| HAUSFELD LLP | Alters, Boldt, Brown, Rash & Culmo, P.A. |
| 1700 K Street, N.W | 4141 N.E. 2nd Avenue |
| Suite 650 | Suite 201 |
| Washington, DC 20006 | Miami, FL 33137 |
| Phone: (202) 540-7200 | Phone: (305) 571-8550 |
| Fax: (202) 540-7201 | Fax: (305) 571-8559 |
| rlewis@hausfeldllp.com | jeremy@abbrclaw.com |
| | |
| Daniel K. Bryson | Richard J. Serpe, Esquire |
| Lewis & Roberts | Law Offices of Richard J. Serpe |
| 3700 Glenwood Avenue, Suite 410 | Crown Center, Ste. 310 |
| Raleigh, NC 27612 | 580 East Main Street |
| Phone: (919) 981-0191 | Norfolk, VA 23510-2322 |
| Fax: (919) 981-0431 | rserpe@serpefirm.com |
| dkb@lewis-roberts.com | |

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing The Plaintiffs' Steering Committee's Motion For An Award Establishing Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys For Services Performed and Expenses Incurred for MDL Administration and Common Benefit has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 26th day of July, 2010.

      /s/ Leonard A. Davis
      Leonard A. Davis, Esquire
      Herman, Herman, Katz & Cotlar, LLP
      820 O'Keefe Avenue
      New Orleans, Louisiana 70113
      Phone: (504) 581-4892
      Fax: (504) 561-6024
      LDavis@hhkc.com
      Plaintiffs' Liaison Counsel
      MDL 2047