# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOYCE W. ROGERS, individually, and on behalf of all others similarly situated, *et al.*, | CASE NO.: 10-362<br>SECT L. Mag 2<br>AMENDED CLASS ACTION<br>COMPLAINT |
| Plaintiffs, | |
| v. | |
| KNAUF GIPS KG; KNAUF PLASTERBOARD (TIANJIN) CO., LTD.; KNAUF PLASTERBOARD (WUHU), CO., LTD.; GUANGDONG KNAUF NEW BUILDING MATERIAL PRODUCTS CO., LTD., *et al.*, | JURY TRIAL DEMAND |
| Defendants. | |

_____/

## MEMORANDUM OF LAW IN SUPPORT OF ROBERT/CHARLES BUILDERS, INC.'S MOTION TO DISMISS WITH PREJUDICE THE CLAIMS BROUGHT AGAINST IT IN THE ROGERS AMENDED CLASS ACTION COMPLAINT (OMNI IV)

Defendant Robert/Charles Builders, Inc. ("RCB") hereby submits this Memorandum of Law in Support of its Motion to Dismiss with Prejudice the Claims Brought Against it in the Rogers Amended Class Action Complaint (Omni IV) (the "Motion").

## I. INTRODUCTION

Plaintiffs Debra Todd and Frank Smith ("Plaintiffs") have named RCB, a Florida contractor that helped construct their home, as a defendant in the Rogers Amended Omnibus Class Action Complaint ("Omni IV" or the "Amended Omnibus Complaint") even though there is absolutely no evidence that RCB did anything wrong. This is a products liability case. A contractor like RCB, who had nothing to do with the manufacture, marketing or distribution of the product in question, simply does not belong in the lawsuit.

{M2954408;2}

Nonetheless, Plaintiffs have asserted a laundry list of generic common law and statutory claims against RCB in what can best be characterized as an unfocused shotgun pleading. Every one of Plaintiffs' claims against RCB is fatally defective. All of them should be dismissed with prejudice pursuant to Rule 12(b)(6).

## I. BACKGROUND

**A.    Plaintiffs' Allegations Against RCB.**

Plaintiffs have attempted to allege the following nine[1] causes of action against RCB in this lawsuit:  Negligence (Count I, ¶¶ 708-15); Negligence Per Se (Count II, ¶¶ 716-22); Strict Liability (Count III, ¶¶ 723-40); Breach of Express and/or Implied Warranties (Count IV, ¶¶ 741-48); Private Nuisance (Count XI, ¶¶ 803-09); Negligent Discharge of Corrosive Substance (Count XII, ¶¶ 810-16); Unjust Enrichment (Count XIII, ¶¶ 817-20); Violation of Consumer Protection Acts (Count XIV, ¶¶ 821-25); and Equitable and Injunctive Relief and Medical Monitoring (Count XV, ¶¶ 826-38). Each of these claims is governed by and arises under the law of Florida.[2]

---

[1]    There are fifteen Counts in the Omnibus IV, but only nine of them arguably apply to RCB. The six other Counts do not. Specifically, Count V (for breach of warranty under Florida's condominium code) does not apply to RCB because Plaintiffs allegedly purchased a residential home, not a condominium. Counts VI ("Implied Warranty of Habitability") and VII ("Breach of Contract") are asserted against "Builders Only," whereas the Amended Omnibus Complaint identifies RCB as a "Contractor/Installer." Cmplt. ¶ 679. Count VIII is brought against "Louisiana Builders Only," and no one disputes that RCB is a contractor residing in Florida. *Id.* Count IX ("Redhibition") is not applicable to RCB because Plaintiffs are allegedly residents of Florida, not Louisiana. *Id.* ¶ 503. Finally, Count X ("Louisiana Products Liability Act") applies by its terms to "Manufacturing" or "Distributor" Defendants, not to contractors like RCB.

[2]    Because Plaintiffs are asserting their claims against RCB directly in the Eastern District of Louisiana – rather than filing in a Florida court and having the matter transferred to this forum – this Court should apply the choice-of-law rules of Louisiana. *See Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 n.6 (5th Cir. 1981). Under Louisiana's choice-of-law rules, Florida has, by far, the most significant relationship with the dispute. Plaintiffs' alleged drywall injuries

**B.      Legal Standard.**

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the Complaint, even if proven true, would not entitle the plaintiff to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12.  Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555  (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In the same vein, a complaint should be dismissed if it constitutes nothing more than a "shotgun pleading," in which each count incorporates all preceding paragraphs. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

## II. ARGUMENT

**A.      Plaintiffs' various tort claims (Counts I, II, III, XI, XII, XIII and XV) are barred in part by the Economic Loss Rule.**

Florida's Economic Loss Rule ("ELR") precludes Plaintiffs from doing exactly what they are attempting to do here:  sue in tort for purely economic losses.  Florida courts have defined economic loss in this context as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain."  Order & Reasons (January 13, 2010) at 22 (internal marks and citation omitted).[3]

---

occurred in Florida, the subject property is located in Florida, and RCB resides in Florida. *See* Cmplt. ¶ 679; *Gulf States Utilities Co. v. NEI Peebles Elec. Prods., Inc.*, 819 F. Supp. 538, 552-53 (M.D. La. 1993) (discussing Louisiana choice of law factors and statutes).  Florida substantive law therefore governs each of Plaintiffs' claims against RCB.

[3]      The Court's January 13, 2010 "Order & Reasons" (MDL No. 2047, Section L) applies by its terms to all drywall MDL cases pending before the Court, including this one.

In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking only such economic damages, the ELR barred their tort claims against the supplier. *Id.* at 1246-48.

*Casa Clara* has since been applied by a Florida state court to a drywall dispute very much like this one. The court in *Henderson v. Douglas B. Francis et al.*, Case No. 09-CA-001280 (Fla. 20th Jud. Cir., Sept. 9, 2009) (decision attached as "Exhibit 1"), granted a subcontractor's motion to dismiss the plaintiff-homeowners' negligence claim pursuant to the ELR. Although the plaintiffs had allegedly purchased a home containing defective Chinese-manufactured drywall, the court held that they could not recover economic losses resulting from that drywall – that is, they could not recover for damages to the home itself, "including, but not limited to, portions of the HVAC system and copper wiring throughout the subject residence." Order ¶ 1 (Sept. 9, 2009) (Exh. 1). Rather, the court in *Henderson* held the plaintiffs were limited to pursuing damages to "other property" that had not been integrated into their home. *Id.*

The same reasoning applies here. Plaintiffs cannot recover purely economic losses in tort based on their allegedly defective drywall. As a matter of law, the ELR limits them to recovering non-economic losses (e.g., for personal injury) and damages to property other than the drywall (or the house) itself.[4] *See Casa Clara*, 620 So. 2d at 1247-48. Plaintiffs must

---

[4]    Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses. The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." Order & Reasons at 19-20.

therefore replead their tort claims to seek only non-economic losses. *Cf.* Cmplt. ¶ 715 (seeking general "damages" on negligence count).

**B.     Plaintiffs' negligence allegations (Count I) are demonstrably false and improperly pleaded.**

Plaintiffs' negligence claim (Count I) illustrates why RCB does not belong in this lawsuit. The Amended Omnibus Complaint alleges that RCB somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling" the drywall in question. Cmplt. ¶ 709. The Complaint further alleges that RCB had a duty to provide Plaintiffs with certain warnings about the drywall. *Id.* ¶ 710.

Besides being intercepted by the ELR (*see* discussion, *supra*), these allegations are blatantly false. RCB, for example, did not "design," "manufacture," or "import" any drywall, and Plaintiffs know it. Yet even assuming the truth of these specious allegations, they do not state a claim for relief. Under Florida law, a negligence claim requires the plaintiff to plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (applying Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiffs can allege neither prerequisite.

To begin with, RCB owed no duty of care with respect to Plaintiffs' drywall. Under Florida law, even manufacturers, retailers and distributors – all of whom arguably bear a *greater* responsibility toward their products than a mere contractor like RCB – have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous." *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-

84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Amended Omnibus Complaint does not allege otherwise.[5]

In the same vein, RCB cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects. *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991). The alleged defects in the drywall are plainly latent, and Plaintiffs have not alleged actual or implied knowledge by RCB.

The bottom line is that these Plaintiffs cannot bring a negligence claim against RCB based on the drywall. Absent an "inherently dangerous" product or actual or implied knowledge – neither of which Plaintiffs can allege in good faith – the first Count fails as a matter of law. The boilerplate, and wholly unsupported assertion that RCB "knew or should have known" that the drywall would "harm" Plaintiffs (Cmplt. ¶ 714) is really a legal conclusion. That conclusory allegation cannot possibly salvage a negligence claim, particularly one that flies in the face of such basic principles of Florida law.

---

[5]      "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of illustration, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are not "inherently dangerous."  Drywall would certainly not be an "inherently dangerous" product under Florida law.

**C.** **Plaintiffs have not stated a claim for negligence per se (Count II).**

Besides being barred by the ELR, Plaintiffs' negligence per se claim (Count II) must be dismissed because the Amended Omnibus Complaint does not set forth the essential elements of this tort. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se for two reasons. First, they have not identified a statute that RCB allegedly violated, much less explained how that violation occurred. Rather, the Amended Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes." Cmplt. ¶ 719. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that RCB allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, Plaintiffs' negligence per se claim appears to be nothing more than a repackaged negligence claim.[6] It should be summarily dismissed for that reason as well.

---

[6]     Plaintiffs' claim for "Negligent Discharge of a Corrosive Substance" (Count XII) is similarly duplicative of their garden-variety negligence claim. Besides, Florida law does not appear to recognize an independent cause of action for Negligent Discharge.

**D.     Plaintiffs cannot sue RCB in strict liability (Count III).**

Plaintiffs' strict liability claim  (Count III) is premised on the patently false assertion that RCB was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Cmplt. ¶ 724.  This theory is foreclosed in part by the ELR (*supra* II.A) and by at least two established principles of Florida law.

First and foremost, RCB cannot be sued in strict liability because it did not manufacturer or distribute the allegedly defective drywall.   The Complaint itself identifies RCB as an "Contractor/Installer."   Cmplt. ¶ 679.   Strict products liability, however, does not apply to contractors like RCB.  *See Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if contractors could be sued in strict liability (and they cannot), the allegedly defective drywall is not a "product" for purposes of applying this tort.  Rather, the drywall is considered a structural improvement to Plaintiffs' home, and "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc*. No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008); *see Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 924 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water and Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

**E.**     **Plaintiffs cannot maintain a warranty claim against RCB (Counts IV & VI).**

Plaintiffs attempt to allege causes of action based on various express and implied warranties in Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability).[7]  The Amended Omnibus Complaint, however, does not identify the source of those purported warranties – let alone explain how RCB might have breached them. That failure warrants dismissal of Counts IV and VI all by itself.

Furthermore, and as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by RCB.  That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant."  *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

RCB is not bound by any implied warranties because it is not considered a merchant under Florida warranty law.  RCB contracts with its builder and developer clients to provide a contracting *service*. Because the inclusion of drywall in Plaintiffs' home was incidental to the contracting services that RCB provided, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances. *See In re Sunshine-Jr. Stores, Inc.*, 240 B.R. at 794 ("[A]lthough construction contracts … typically involve materials that qualify as

---

[7]     The Amended Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but Plaintiffs do not reside in Louisiana.  *See* Cmplt. ¶ 503. Moreover, redhibition requires a showing that the allegedly defective product – here, drywall – failed for its intended purpose. *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This showing is unavailable in light of the Court's determination that the drywall is "serving its intended structural purpose."  Order & Reasons at 23.

goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the implied warranty of fitness for a particular purpose claim (Cmplt. ¶ 746) cannot survive because Plaintiffs have not – and indeed cannot – allege that the drywall in their home was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used. The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose.</u>" Order & Reasons at 23 (emphasis added); *id.* at 18 ("[T]he Chinese drywall in the instant matter is operating as intended[.]"). This adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[8]

## F.  Plaintiffs cannot state a claim for private nuisance (Count XI).

Plaintiffs' private nuisance claim (Count XI) would fail even if it were not barred by the ELR. *See supra* II.A. An action for private nuisance requires the claimant to establish an injury to his or her own property <u>in connection with the use of the real property of someone else</u>. *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.").

The Amended Omnibus Complaint does not allege that Plaintiffs' purported injuries

---

[8]      *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

resulted from real property owned by RCB.  On the contrary, the nuisance claim is predicated

entirely on the allegation that "structures owned by Plaintiffs" are to blame.  Cmplt. ¶ 804.  That

allegation simply does not state a claim for private nuisance.  *See, e.g., Morgan v. W.R. Grace &*

*Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim

"based upon an alleged condition on [the plaintiff's] own property, which existed at the time she

purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992)

("A defendant may not be found liable for a nuisance in the absence of the right to possession or

control of the land on which the nuisance is located[.]").

**G.    Plaintiffs cannot bring a claim for unjust enrichment (Count XIII).**

Plaintiffs cannot maintain a claim for unjust enrichment.  Under Florida law, the elements

of unjust enrichment are that "(1) the plaintiff has conferred a benefit on the defendant; (2) the

defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit

conferred and (4) the circumstances are such that it would be inequitable for the defendant to

retain the benefit without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity*

*Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching*

*Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

Plaintiffs' unjust enrichment claim stumbles on the first and fourth of these elements.

The first element can never be satisfied because Plaintiffs did not "confer a benefit" of any kind

on RCB.  In fact, **Plaintiffs never contracted with RCB, and never paid RCB a single dime**

**to build their house.**  Rather, Plaintiffs dealt with a builder[9] who, in turn, retained and paid RCB

to provide contracting services.  These homeowners did not "enrich" RCB in any sense.

---

[9]      Plaintiffs have inexplicably failed to name the homebuilder as a defendant in the
Amended Omnibus Complaint (Omni IV).

As to the fourth element, there is nothing inequitable or unjust about permitting RCB to retain whatever benefit it received for constructing Plaintiffs' home. After all, it cannot be disputed that RCB paid a third party (i.e., a subcontractor or distributor) for the drywall in question. As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, <u>if the [defendant] has given any consideration to any person</u> <u>for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>." 636 So. 2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by, Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

Thus, not only is the unjust enrichment claim barred because these homeowners did not "enrich" RCB, it is precluded because whatever compensation RCB received was not retained "unjustly."

**H.    The Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIV).**

In the overbroad style that is the hallmark of the Amended Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"). Cmplt. ¶ 822. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this

trend, <u>claims arising under the FDUTPA must be pled with particularity</u>." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities). At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Amended Omnibus Complaint falls far short of this heightened standard. Indeed, it alleges <u>no specific facts</u> in support of Plaintiffs' FDUTPA claim. *See* Cmplt. ¶ 823. It does not identify a single instance in which RCB – by its words or conduct – deceived Plaintiffs or treated them unfairly. **Nor can the Complaint make these indispensable allegations: RCB never contracted with or made any promises to Plaintiffs.** The skeletal allegations in the Complaint do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b). *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA

claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[10]

Plaintiffs' failure, however, is not merely one of pleading. Their FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to them. *See Rollins v. Butland*, 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because RCB provided a service – namely, contracting work on a home – Plaintiffs can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that RCB actually provided and the services that RCB was required to provide.[11]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties") (citation omitted).

As a matter of law, Plaintiffs cannot make this showing. There is zero evidence – and Plaintiffs do not appear to suggest – that the manner in which RCB helped <u>construct</u> their home

---

[10]   Plaintiffs' FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

[11]   The same would hold true if RCB had delivered a "product" – i.e., a completed home – rather than providing a "service." To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

was in any way responsible for the allegedly defective drywall. The quality of RCB's contracting services is simply not an issue in this lawsuit, particularly in light of the Court's finding that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." Order & Reasons at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of this claim. Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fla. 1995). Count XIV must be dismissed for that reason as well.

## I. Plaintiffs' claim for equitable relief and medical monitoring (Count XV) cannot go forward against RCB.

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XV). This hybrid, catchall-type claim seeks, among other things, an order that RCB "buy back, rescind and/or repair" Plaintiffs' home and "create, fund, and support a medical monitoring program." Cmplt. ¶ 829. This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Since each of Plaintiffs' substantive claims is due for dismissal, so too is their derivative claim for injunctive relief. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically

available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support to their request for an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm. Injunctions under both federal and Florida law require these elements. *See, e.g., Tucker v. Citigroup Global Mkts Inc*., No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Amended Omnibus Complaint – including, most notably, for compensatory and statutory damages – are inadequate and entitle them to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc*., 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action.  The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring.  It is hardly clear, then, that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Amended Omnibus Complaint do not state an actionable claim.  At the very least, and as articulated by the Third District Court of

Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999).  The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm.  *Id.*

The Amended Omnibus Complaint does not even attempt to properly allege these elements.  Instead, Count XV sets forth a series of legal conclusions – e.g., "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" (Cmplt. ¶ 833) – without a shred of factual detail.  Plaintiffs fail to identify, for example, any medical condition (latent or otherwise) supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition.  Plaintiffs do not even claim to be ill.  They would have this Court speculate about their imaginary ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those "do not suffice."  *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal now, on the pleadings.  *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a

separate cause of action with seven specific elements the plaintiffs must establish ..., including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

## III. CONCLUSION

WHEREFORE, for the reasons stated in the Motion and the foregoing Memorandum of Law, Defendant Robert/Charles Builders, Inc. respectfully requests that the Court enter an order dismissing the claims against it with prejudice, and awarding RCB its fees in defending this action pursuant to Florida's Deceptive and Unfair Trade Practices Act.

Dated:  July 27, 2010

Respectfully submitted,

**AKERMAN SENTERFITT**

BY:  /s/ Michael A. Sayre
Valerie B. Greenberg, Esq. (Fla. Bar No. 026514)
Samantha Kavanaugh, Esq. (Fla. Bar No.0194662)
Michael Sayre, Esq. (Fla. Bar No. 17607)
One Southeast Third Avenue, 25th Floor
Miami, FL  33131-1714
Phone:  (305) 374-5600
Fax:  (305) 374-5095
Email:  valerie.greenberg@akerman.com
samantha.kavanaugh@akerman.com
michael.sayre@akerman.com

*Attorneys for Robert/Charles Builders, Inc.*

Co-Counsel for Robert/Charles Builders, Inc.
Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 18133)
D. Skylar Rosenbloom (La. Bar No. 31309)
Canal Place
365 Canal Street · Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
Susie.morgan@phelps.com
Skylar.rosenbloom@phelps.com

{M2954408;2}

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Memorandum of Law* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 27th day of July, 2010.

/s/ Michael A. Sayre _____