United States District Court
Eastern District of Louisiana

| | | |
|---|---|---|
| In re:  Chinese-Manufactured Drywall Products Liability Litigation | : : : : : : : | MDL No. 2047<br><br>Section:  L<br><br>Judge Fallon<br>Mag. Judge Wilkinson |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | : | |

**This document relates to:**

| | | |
|---|---|---|
| Samuel Ledford, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No.  CV-09-4292 |
| v. | ) ) | |
| Knauf Gips KG; Knauf Plasterboard Tianjin Co., Ltd.; and Mazer Super Discount Store et al., | ) ) ) ) ) | |
| Defendants. | ) | |

---

## Mazer's Discount Home Centers, Inc.'s Response to Devon's Motion to Dismiss

---

Mazer's Discount Home Centers, Inc., d/b/a Mazer Discount Superstore ("Mazer's") files this Response to Devon International Industries, Inc.'s ("Devon") Motion to Dismiss Mazer's Third Party Complaint/Cross Claim.   In support thereof, Mazer's states as follows:

## FACTS

1.      In 2006 and 2007, Devon sold drywall to Mazer's to sell in its Alabama stores.  *See*, the Affidavit of Michael Mazer attached hereto as Exhibit A. Devon's agent, Robert Scharf, made several sales calls to Mazer's in Birmingham, Alabama and the parties exchanged correspondence about the transaction.  *Id.* at ¶¶ 7, 9-10.

2.      During these discussions, Mazer's informed Devon that its only locations were in Jefferson County, Alabama.  *Id.* at ¶ 8.

3.      Based upon Devon's representations, Mazer's initially purchased ten (10) truckloads of gypsum drywall from Devon, which is alleged to have been manufactured in China, on August 9, 2006.  *Id.* at ¶ 11.

4.      Devon and Mazer's entered into a purchase agreement for this transaction.  *Id.* at ¶ 12.  A true and correct copy of this purchase order is attached to Exhibit A as Exhibit A-1.

5.      Devon knew that this drywall was to be sold to Alabama consumers through Mazer's Jefferson County, Alabama stores.  *Id.* at ¶ 13.

6.      Devon and Mazer's subsequently entered into negations for the sale of additional Chinese manufactured drywall from Devon to Mazer's.  *Id.* at ¶ 14.

7.      On December 27, 2006, Mazer's purchased an additional ten (10) truckloads of gypsum drywall from Devon.  *Id.* at ¶ 15.

8.   Devon and Mazer's entered into a purchase agreement for this transaction.  *Id.* at ¶ 16.  A true and correct copy of this purchase order is attached as Exhibit A-2 to Exhibit A.

9.   Devon knew that this drywall was to be sold to Alabama consumers through Mazer's Jefferson County, Alabama stores.  *Id.* at ¶ 17.

10.   Devon and Mazer's subsequently entered into negations for the sale of additional Chinese manufactured drywall from Devon to Mazer's.  *Id.* at ¶ 18.

11.   On January 16, 2007, Mazer's purchased an additional twenty (20) truckloads of gypsum drywall from Devon.  *Id.* at ¶ 19.

12.   Devon and Mazer's entered into a purchase agreement for this transaction.  *Id.* at ¶ 20.  A true and correct copy of this purchase order is attached as Exhibit A-3 to Exhibit A.

13.   Devon knew that this drywall was to be sold to Alabama consumers through Mazer's Jefferson County, Alabama stores.  *Id.* at ¶ 22.

14.   On or about January 17, 2007, Devon sent an invoice to Mazer's at its Birmingham, Alabama office in the amount of Eleven Thousand Six Hundred Sixty-Two Dollars ($11,662.00).  *Id.* at ¶ 23.  A true and correct copy of this invoice is attached as Exhibit A-4 to Exhibit A.

15.   On or about January 19, 2007, Devon sent an invoice to Mazer's at its Birmingham, Alabama office in the amount of Sixteen Thousand Six Hundred

Sixty-Six Dollars ($16,660.00). *Id.* at ¶ 24. A true and correct copy of this invoice is attached as Exhibit A-5 to Exhibit A.

16. On or about January 22, 2007, Devon sent an invoice to Mazer's at its Birmingham, Alabama office in the amount of One Hundred Three Thousand Two Hundred Ninety-Two Dollars ($103,292.00). *Id.* at ¶ 25. A true and correct copy of Mazer's payment to Devon is attached as Exhibit A-6 to Exhibit A.

17. That same day, Mazer's purchased an additional one hundred (100) truckloads of gypsum drywall from Devon. *Id.* at ¶ 25.

18. Devon and Mazer's entered into a purchase agreement for this transaction. *Id.* at ¶ 27. A true and correct copy of this purchase order is attached as Exhibit A-7 to Exhibit A. This purchase replaced and superseded Mazer's January 16, 2007 purchase of twenty (20) truckloads. *See*, Exhibit A-7.

19. Devon knew that this drywall was to be sold to Alabama consumers through Mazer's Jefferson County, Alabama stores. *Id.* at ¶ 28.

20. Mazer's remitted payment to Devon in the amount of Fifty Thousand Dollars ($50,000.00) from an Alabama bank via bank wire, on or about January 23, 2007. *Id.* at ¶ 29. A true and correct copy of Mazer's payment to Devon is attached as Exhibit A-8 to Exhibit A.

21. Mazer's remitted payment to Devon in the amount of Twenty-Eight Thousand Seven Hundred Ninety-Eight Dollars ($28,798.00) from an Alabama

bank via bank wire, on or about February 13, 2007.  *Id.* at ¶ 30.  A true and correct copy of Mazer's payment to Devon is attached as Exhibit A-9 to Exhibit A.

22.   On or about March 5, 2007, Devon faxed invoices to Mazer's Birmingham, Alabama office for pick-ups of the drywall for the period of February 21, 2007 to February 26, 2007.  *Id.* at ¶ 31.  A true and correct copy of Devon's Fax is attached at Exhibit A-10 to Exhibit A.

23.   Mazer's remitted payment to Devon in the amount of Twenty-Eight Thousand Three Hundreds Twenty-Two Dollars ($28,322.00) from an Alabama bank via bank wire, on or about March 6, 2007.  *Id.* at ¶ 32.  A true and correct copy of Mazer's payment to Devon is attached as Exhibit A-11 to Exhibit A.

24.   On or about March 9, 2007, Devon faxed additional invoice/pick up information to Mazer's Birmingham, Alabama office for these transactions.  *Id.* at ¶ 33.  A true and correct copy of Devon's Fax is attached at Exhibit A-12 to Exhibit A.

25.   Each of Devon's purchase agreements with Mazer's stated that the freight terms were "F.O.B. B'ham".  *See* Exhibits A1-A3, A7.  The Purchase Orders were filled out by Mazer's in Jefferson County, Alabama and signed by a Mazer's representative in Birmingham, Alabama.

26.   Throughout these four (4) separate sales transactions over approximately six (6) months, Devon repeatedly initiated contact with Mazer's in

Alabama via telephone, electronic mail, and the postal service.  *See*, Exhibit A at ¶ 34.

27.     Devon's sales of gypsum drywall to Mazer's were substantial.  Devon sold Mazer's approximately 57,120 sheets of drywall (120 truckloads at 476 sheets per truck) over a six (6) month period with knowledge that Mazer's would re-sell the drywall to Alabama customers.  *See*, Exhibit A at ¶ 35.  Devon received One Hundred Seven Thousand One Hundred Twenty Dollars ($107,120.00) in revenue from its four (4) sales to Mazer's in Alabama.  *Id*.

28.     When Devon entered into the purchase agreement with Mazer's, it knew that Mazer's only operated retail outlets within the State of Alabama.  *See*, Exhibit A; Mazer's Compliant ¶¶ 8-9.  Portions of the deposition transcript of Michael Mazer are attached hereto as Exhibit B.  *See*, Exhibit B at p.42.

29.     Mazer's has never purchased or sold any Chinese-manufactured drywall other than what it purchased from Devon.  *See*, Mazer's Complaint at ¶ 8; Exhibit A at ¶ 36; Exhibit B at 103-104. Mazer's sold the drywall it purchased from Devon to customers from its retail stores in Birmingham, Alabama.  *See*, Mazer's Complaint at ¶¶ 4, 9; Exhibit A at ¶ 37.

30.     Plaintiff Samuel Ledford, on behalf of himself and a proposed class of similarly situated persons, initiated this action claiming that the drywall he purchased from Mazer's Birmingham, Alabama stores was defective and caused

him to suffer property damage and/or personal injury.  *See*, Mazer's Complaint at ¶¶ 10-14.

31.     Mazer's denied Plaintiffs' material allegations and denied any liability for the alleged damages and injuries Plaintiffs' sustained, if any.  *See*, Mazer's Answer to Plaintiff's Complaint.

32.     Mazer's subsequently filed a Third-Party Complaint against Devon. *See*, Mazer's Complaint.  Mazer's Complaint demands indemnification and alleges breaches of the implied warranties of merchantability and fitness for a particular purpose, breach of contract, and negligent and/or wanton misconduct.  *Id.*

33.     Devon filed a Motion to Dismiss Mazer's Complaint (the "Motion"). In the Motion, Devon claims it "is not subject to the jurisdiction of the Northern District of Alabama Court because it has not established minimum contacts with the State of Alabama" and "has not purposefully availed itself of the privilege of conducting business in Alabama."  *See*, Motion ¶ 10.  Devon additionally claims it is entitled to dismissal, because it alleges Mazer's "is not entitled to recover against Devon under a theory of common-law indemnity or contribution."  *Id.* at ¶¶ 15-18.

## STANDARD OF REVIEW

Devon's motion to dismiss is not well founded and must be denied.  Devon has incorrectly asserted that it should be dismissed because it is not subject to

personal jurisdiction in Alabama.  When evaluating a motion to dismiss for lack of

personal jurisdiction,

> a court must consider as true the allegations of the
> plaintiff's complaint not controverted by the defendant's
> affidavits. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d
> 253 (11th Cir.1996), and *Cable/Home Communication
> Corp. v. Network Productions, Inc.,* 902 F.2d 829 (11th
> Cir.1990), and 'where the plaintiff's complaint and the
> defendant's affidavits conflict, the ... court must construe
> all reasonable inferences in favor of the plaintiff.'
> *Robinson,* 74 F.3d at 255 (quoting *Madara v. Hall,* 916
> F.2d 1510, 1514 (11th Cir.1990)). 'For purposes of this
> appeal [on the issue of *in personam* jurisdiction] the facts
> as alleged by the ... plaintiff will be considered in a light
> most favorable to him [or her].' *Duke v. Young,* 496
> So.2d 37, 38 (Ala.1986).

*Ex parte McInnis,* 820 So. 2d 795, 798 (Ala. 2001).

The appropriate standard of review for a motion to dismiss for failure to

state a claim is well-settled under Eleventh Circuit law.  A motion to dismiss

should be granted only when "it appears beyond a doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *Marsh v.

Butler County, Ala.,* 268 F.3d 1014, 1022 (11th Cir. 2001) (quoting *Conley v.

Gibson,* 355 U.S. 41 (1957).  *See, also, White v. Lemacks*, 183 F.3d 1253,

1255 (11th Cir. 1999)).  The Supreme Court has held that

> [w]hile a complaint attacked by a Rule 12(b) (6) motion
> to dismiss does not need detailed factual allegations, a
> plaintiff's obligation to provide the 'grounds' of his
> 'entitlement to relief' requires more than labels and

> conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted).  Finally, when considering a motion to dismiss, "a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiff[]."  *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999).

Dismissal of Mazer's complaint is not proper.  Mazer's has plead sufficient facts to establish that Devon is subject to personal jurisdiction in Alabama and Mazer's has stated viable causes of action against Devon.  *See*, Mazer's Complaint. Taking the allegations of Mazer's Complaint as true, as this Court is required to do, Mazer's has presented sufficient evidence to overcome Devon's Motion. Mazer's has shown through its pleadings that Devon knew at the time it sold Mazer's the drywall at issue that  Mazer's operated retail outlets only in the State of Alabama.  Mazer's has shown that Devon purposefully availed itself of the benefits of conducting business in Alabama by repeatedly soliciting business in Alabama, consummating four (4) separate sales transactions with Mazer's in Alabama over a period of six (6) months, and that Devon was fully aware that is products would be sold to Alabama customers.  Further, Mazer's has additionally shown that Devon is liable to Mazer's for any damage Mazer's may incur as a result of its purchase of the drywall from Devon.  Accordingly, this Court should

deny Devon's Motion to Dismiss.

## ARGUMENT

Devon is not entitled to be dismissed from this action. Devon is subject to personal jurisdiction in Alabama, and Mazer's has stated a cause of action against Devon. *See*, Mazer's Complaint. Devon sold the drywall at issue to Mazer's and is responsible for reimbursing Mazer's for its liability, if any is found, to any Plaintiff based on Devon's breaches of warranty on the drywall it supplied to Mazer's and based upon Devon's negligence and/or wantonness, which caused damage to Mazer's.

### A. Devon is subject to general, personal jurisdiction in Alabama.

A "federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits . . . ." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Alabama's long arm statute provides:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . . .

ALA. R. CIV. P. 4.2(b). With regard to this rule, Alabama courts have stated that:

> 'The extent of an Alabama court's personal jurisdiction over a person or corporation is governed by Rule 4.2,

Ala. R. Civ. P ., Alabama's 'long-arm rule,' bounded by the limits of due process under the federal and state constitutions.' *Ex parte DBI, Inc.*, --- So.3d ----, 2009 WL 1164959, 7 (Ala. May 1, 2009) (citing *Sieber v. Campbell,* 810 So.2d 641, 644 (Ala.2001)); *Hiller Investments Inc. v. Insultech Group, Inc.*, 957 So.2d 1111, 1115 (Ala.2006) ('Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of the Alabama courts to the limit of due process under the federal and state constitutions.').   The Alabama Supreme Court further explained that it has 'interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution.' *Ex parte DBI, Inc.* at *7 (quoting E*lliott v. Van Kleef,* 830 So.2d 726, 730 (Ala.2002)). The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient 'minimum contacts' with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant 'should reasonably anticipate being haled into court' in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

*Atlantic Marine Ala. LLC v C&M Marine Servs. (USA), Inc.*, 2010 WL 94241, at

*2-3 (S.D. Ala. Jan. 5, 2010).

The Supreme Court of Alabama has explained:

General jurisdiction applies where a defendant's activities in the forum state are substantial or continuous and systematic, regardless of whether those activities gave rise to the lawsuit. . . . A court has specific jurisdiction

> when a defendant has had few contacts with the forum
> state, but those contacts gave rise to the lawsuit.
> [R]egardless of whether jurisdiction is alleged to be
> general or specific, the nexus between the defendant and
> the forum state must arise out of an action of the
> defendant [that was] purposefully directed toward the
> forum State. This purposeful-availment requirement
> assures that a defendant will not be haled into a
> jurisdiction as a result of the unilateral activity of another
> person or a third person.

*Ex parte Barton,* 976 So. 2d 438, 443 (Ala. 2007).

Devon maintained continuous and systematic contacts with the State of Alabama such that it is subject to general personal jurisdiction. *See, e.g., Atlantic Marine*, 2010 WL 94241 at *3 (citing *Ex parte Barton*, 976 So. 2d 438, 443 (Ala. 2007)) ("General jurisdiction applies where a defendant's activities in the forum state are "substantial" or "continuous and systematic," regardless of whether those activities gave rise to the lawsuit. . . ."). Devon specifically targeted the state of Alabama when it contracted with Mazer's in the state for Alabama for the express purpose of soliciting business from Mazer's. *See*, Exhibit A ¶¶ 12, 16, 20, 27. Devon conducted economic activity within the state by executing a contract with Mazer's, a business located solely in Alabama. *Id.; see also, Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479 (1985) ("While merely entering into a contract with a party does not provide sufficient minimum contacts to allow the party to bring a lawsuit in the party's home state, prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of

dealing are considered when determining whether jurisdiction should be exercised."). At the time Devon entered into the contract with Mazer's, it knew that Mazer's did not operate any stores outside of Alabama. *Id.* at ¶¶ 8, 13, 17, 22, 28. Any assertion that Devon did not expect or even anticipate that its products would be sold to Alabama customers is not credible.

Devon purposefully availed itself of the benefits of conducting business in Alabama by repeatedly soliciting business in Alabama and by consummating four (4) sales transactions with Mazer's in Alabama over a period of six (6) months. *See*, Exhibit A, ¶¶ 12, 16, 20, 27. Thus, Devon should have anticipated being hauled into court in the State of Alabama.

Further, Devon had numerous contacts with Alabama through it use of interstate facilities. *See, e.g.,* Exhibit A at ¶¶ 9, 10, 23, 24, 29, 30, 31, 32, 33; Exhibit B at pp. 58-59; 128; 200; 203-204. While "the use of interstate facilities (telephone, the mail) . . . is a secondary or ancillary factor and cannot *alone* provide the 'minimum contacts' required by due process," telephone calls and mail "in conjunction with other contacts, . . . can constitute contacts that can be considered to determine whether a party has subjected itself to general jurisdiction of the courts of this State." *Leithead,* 926 So. 2d at 1031 (citing *Steel Processors, Inc. v. Sue's Pumps, Inc.,* 622 So. 2d 910, 913 (Ala. 1993)). Devon made several telephone calls to Mazer's in Alabama and it utilized the postal service as a method

for communicating Mazer's.  *See*, *e.g.*, Exhibit B at 128; Exhibit A ¶ 9-10.  Devon sent approximately five (5) separate invoices to Mazer's in Alabama.  *See*, Exhibit A at ¶¶ 23, 24, 35, 31, 33.  Devon also sent numerous electronic communications to Mazer's in Alabama.  *Id.* at ¶ 9, 34.  Therefore, Devon's use of the interstate facilities, combined with its economic activity in Alabama, consummating four (4) sales transactions with Mazer's over a period of six (6) months, establishes sufficient minimum contacts with the state for the exercise of jurisdiction.  *See*, *Leithead v. Banyan Corp.*, 926 So. 2d 1025, 1032 (Ala. 2005); *Investors Guaranty Fund, Ltd. v. Compass Bank,* 779 So. 2d 185, 190  (Ala. 2000) (finding trial court had jurisdiction over out-of-state defendant based on numerous contacts between the defendant and Alabama and referencing "repeated telephone and written communication" as "further" evidence of those contacts.).  Accordingly, Devon maintained sufficient systematic contacts with the State of Alabama to establish general personal jurisdiction.

**B. Even if this Court were to find that Devon's numerous, persistent contacts with Alabama are not sufficient to establish general jurisdiction, Devon is still subject to specific, personal jurisdiction in Alabama.**

Devon's conduct in the instant action gives rise to specific jurisdiction under Alabama law.  Mazer's claims against Devon arise directly out of Devon's sales of drywall to Mazer's.  *See*, Mazer's Complaint.  Devon contracted with Mazer's for Mazer's purchase of this drywall to re-sell in Alabama.  *See*, Exhibit A ¶ 6, 37.  By

consummating four (4) sales transactions with Mazer's in Alabama over a period of six (6) months, Devon took advantage of the privilege of engaging in economic activity within the State of Alabama and should have anticipated that it would be haled into court in the State.  *Id.* at ¶ 35.  By purposefully availing itself of the privilege of conducting business in Alabama by soliciting business from, and by consummating a sale with Mazer's, Devon cannot now avoid judicial action that arises directly out of its Alabama business activities.

When Devon made the four (4) sales to Mazer's, it knew that Mazer's only operated retail outlets within the State of Alabama.  *See*, Mazer's Complaint ¶¶ 8-9; Exhibit A at ¶¶ 8, 13, 17, 22, 28; Exhibit B at p.42.  Therefore, Devon knew that its products would be sold exclusively in Alabama and should have reasonably expected its actions and products to have an impact on Alabama citizens.  Devon sent five (5) invoices to Mazer's at its Birmingham, Alabama office (*see*, Exhibit A at ¶¶  23, 24, 35, 30, 31, 32) and accepted numerous payments from Mazer's, which were drawn on an Alabama bank account.  *See*, Exhibit A at ¶ 29, 30, 32; Exhibit B at p.128.  Devon conducted economic activity within this State, profited from its sales to an Alabama business with knowledge that those products would be sold to Alabama customers, and should have expected to be haled into Court in this State.  Consequently, its Motion to Dismiss is due to be denied.

Much of Devon's Motion and Ms. Wu's affidavit focus of Devon's physical

location. *See, e.g.*, Motion ¶ 10. However, "being physically present in a state is not required in order for a state court to have personal jurisdiction over a defendant." *Ex parte DBI, Inc.*, 23 So. 3d 6365 (Ala. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). *See also*, *Wenger Tree Service*, 853 So. 2d at 888 ("Jurisdiction may not be avoided merely because the defendant did not physically enter the forum State."); *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001). In *DBI*, the Supreme Court of Alabama examined the purposeful availment prong of the due process analysis. *See, id.* DBI is a Korean corporation which manufacturers seatbelts for Kia Motors. *Id.* at 637. Leytham sued DBI in Alabama state court after her daughter, who was driving an automobile manufactured by Kia and equipped with a DBI seatbelt, was killed in an automobile accident. *Id.* DBI argued that it was not subject to jurisdiction in Alabama, because, among other things, it was a foreign corporation with no physical presence in Alabama and it had never directly sold products in Alabama. *Id.*

Like Devon, DBI contested jurisdiction by offering an affidavit purporting to show its lack of contacts with the state.[1] *Id.* at 639. The Court disregarded DBI's

---

[1] Each fact offered in Ms. Wu's affidavit regarding Devon's alleged lack of presence in Alabama was disregarded by the Supreme Court of Alabama in *DBI. See, id.* at 639-40 ("DBI . . . maintains no agents, physical presence, or property within Alabama"; "DBI is not authorized . . . or registered to do business in Alabama": "DBI does not now own. . . any real . . . property in Alabama"; "DBI . . . has never maintained a telephone . . . number or address in Alabama;" "DBI does not advertise, and has never advertised in Alabama"; "DBI has never marketed any product in Alabama"; "DBI has never maintained any . . . bank accounts . . in Alabama.").

assertions and found that it had purposefully availed itself of doing business in Alabama. *Id.* at 654. Specifically, the Court found:

> DBI knew that its seat belts were incorporated into automobiles sold by Kia Motors in the United States. It is not subject to reasonable dispute that it is generally known that a product such as a mass-produced automobile is marketed on a broad spectrum and is not a boutique product fit for only a narrow class of consumers. Likewise, an automobile manufacturer is involved in the sales of its products on a national as opposed to a regional basis. Perhaps the supplier of a part to a snow-plow manufacturer could reasonably say it did not anticipate that its product would be sold in Alabama, but, clearly, moderately priced, fuel-efficient automobiles, such as those manufactured by Kia Motors, are destined for sale in all 50 states in this country. Kia Motors has nine dealerships in Alabama. DBI, by choosing to enter into a contractual relationship with Kia Motors pursuant to which DBI would turn a profit by supplying an essential component part vital to the safety of passengers for such automobiles under the circumstances here described, cannot reasonably assert ignorance of these realities of the marketplace.

*Id.* at 654-55. *See also, Atlantic Marine*, 2010 WL 94241 at *3 (finding out-of-state corporation conducted "economic activity" in Alabama and thus was subject to specific jurisdiction in Alabama because it entered into an agreement for repair of a vessel with a company whose place of business is in Alabama, performed the work in Alabama, and received an invoice requiring payment to an Alabama bank). In so holding, the *DBI* Court relied on the stream-of-commerce test articulated in *Burger King* and *World-Wide Volkswagen* which provides:

> [t]he forum State does not exceed its powers under the
> Due Process Clause if it asserts personal jurisdiction over
> a corporation that delivers its products into the stream of
> commerce with the expectation that they will be
> purchased by consumers in the forum State' and those
> products subsequently injure forum consumers.

*DBI*, 23 So. 3d at 655 (quoting *Burger King*, 471 U.S. at 473; *World-Wide*

*Volkswagen* 444 U.S. at 297-98)) (emphasis added).

Devon sold its products directly to Mazer's, a business located exclusively

in Alabama, whose only retail outlets are located within the state. *See*, Mazer's

Complaint ¶¶ 6-9; Exhibit A at ¶¶ 8, 13, 17, 22, 28. At the time Devon made these

sales, it was aware that Mazer's only operated in Alabama. *Id.* Devon should have

expected that its products would be purchased by Alabama consumers. Devon's

products reached Alabama consumers, who were allegedly injured within this

state. *See,* Mazer's Complaint at ¶¶ 11-13; *See, also*, Plaintiff's Complaint.

Alabama courts have found sufficient minimum contacts to establish

personal jurisdiction in situations where, such as the case at hand, a defendant sells

products to an Alabama plaintiff. In *Wenger Tree Service v. Royal Truck &*

*Equipment, Inc.,* 853 So. 2d 888 (Ala. 2002), the Supreme Court of Alabama stated

as follows:

> In four cases substantially similar to case now before us,
> *Knowles v. Modglin*, 553 So.2d 563 (Ala.1989), *Ex parte*
> *Pope Chevrolet, Inc.*, 555 So.2d 109 (Ala.1989), *Atlanta*
> *Auto Auction, Inc. v. G & G Auto Sales, Inc.*, 512 So.2d
> 1334 (Ala.1987), and *Garrett v. Key Ford, Inc.*, 403

So.2d 923 (Ala.Civ.App.1981), Alabama appellate courts held that nonresident defendant companies which had sold goods directly to Alabama plaintiffs had sufficient minimum contacts with Alabama to justify personal jurisdiction in our courts.  While each of the four differs in some respect from the case before us, the four together bespeak the importance of a direct sale by a nonresident seller to an Alabama plaintiff as a contact by the nonresident with the state of Alabama.  These four seem to be all of the Alabama appellate decisions addressing the issue of whether our courts can exercise personal jurisdiction over a nonresident who or which has sold a product directly to an Alabama plaintiff.

*Id.* at 896.  Likewise, in the instant situation, jurisdiction over Devon is proper in Alabama, because Devon sold its products to Mazer's with the knowledge that they would be re-sold in the state of Alabama.  Devon cannot now escape liability for the harm it has caused to Alabama consumers by making the outlandish claim that it was unaware that the drywall would be consumed in Alabama.

In its Motion, Devon merely claims that the exercise of jurisdiction by the Alabama courts "does not comply with traditional notions of fair play and substantial justice."  *See*, Motion ¶ 11.  However, Devon fails to identify a single factor to substantiate this claim.  *Id.*  As the Supreme Court has held that "[t]he limits imposed on state jurisdiction by the Due Process Clause, in its role as a guarantor against inconvenient litigation, have been substantially relaxed over the years. . . [M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in

economic activity." *World-Wide Volkswagen*, 444 U.S. at 293. Conversely, Alabama "will always have an interest in 'providing an effective means of recovery for a resident who has been damaged.'" *Leithead v. Banyan Corp.*, 926 So. 2d 1025, 1032 (Ala. 2005) (quoting *Shrout v. Thorsen*, 470 So. 2d 1222, 1225 (Ala. 1985)).

Devon is subject to personal jurisdiction in Alabama by virtue of its sale of goods to an Alabama business, which subsequently distributed those goods within the State. Alabama's exercise of personal jurisdiction does not offend the traditional notions of fair play and substantial justice, because Devon engaged in purposeful economic activity directed at Alabama and profited from its transactions with an Alabama business with the expectation that those products would be sold to Alabama customers. Therefore, Devon's Motion to Dismiss for lack of jurisdiction is due to be denied.

## C. Venue is proper in the Northern District of Alabama.

Devon also incorrectly asserts that Venue is not proper in Alabama. *See* Motion at ¶¶ 12-13. As established above, Devon is subject to personal jurisdiction in the Northern District of Alabama, because Devon intentionally sold its products to Mazer's, a business located within that district. As such, venue is proper in that district. *See* 28 U.S.C. 1391(a)(3) (Venue is proper in "a judicial district in which any defendant is subject to personal jurisdiction. . . ").

Venue is also proper in the Northern District of Alabama, because it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is subject of the action is situated." *See* 28 U.S.C. 1391(a) (2).   As set out above and in the affidavit of Michael Mazer a substantial part of the events or alleged omissions occurred in this district.  *See, e.g.,* Exhibit B.   The proper venue need not be the "venue with the *most* substantial nexus to the dispute," so long as a "substantial part of the events giving rise to the claim occurred" within the chosen venue.  *Morgan v. North Mississippi Medical Center, Inc.*, 403 F. Supp. 2d 1115 (S.D. Ala. 2005) (emphasis in original).   Certainly, a substantial part of the events giving rise to Plaintiffs' claims occurred within this district.   *See, generally*, Plaintiffs' Complaint and Amended Complaint.   As such, venue is proper in the Northern District of Alabama.  *See* 28 U.S.C. 1391(a) (2)

Moreover, Mazer's did not select the venue.   Plaintiffs chose this forum when they initiated this action against Mazer's.  *See*, Plaintiffs' Complaint.  Devon is responsible for any liability that Mazer's may incur in this action; therefore, Mazer's joined Devon as a third-party to this action.   Mazer's claims against Devon arise out of the same transaction as Plaintiffs' claims against Mazer's. Allowing Mazer's to maintain its claim against Devon in this forum will conserve judicial resources and avoid piecemeal litigation.   Therefore, venue is proper.

**D. Mazer's breach of warranty claims against Devon are not barred by Alabama's prohibition against contribution and/or indemnification among joint tortfeasors, because those claims are contractual in nature.**

In the Third-Party Complaint, Mazer's seeks indemnification and alleges, among other things, that Devon has breached the implied warranties of merchantability and fitness for a particular purpose. *See*, Mazer's Complaint ¶¶ 20-26. These warranties arise under the Uniform Commercial Code; therefore, the rule precluding common law contribution and indemnity among joint tortfeasors does not apply to the situation at hand. *See, e.g.*, ALA. CODE §§ 7-2-314; 7-2-315 (1975). *See, e.g., Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 122-23 (Ala. 2003) (noting that there is a "clear distinction between causes of action arising under tort law and those arising under the Uniform Commercial Code as adopted in Alabama.").

Furthermore, Mazer's claims against Devon also arise from Devon's breach of the purchase agreements. *See*, Mazer's Complaint ¶¶ 27-30. Devon cannot avoid its <u>contractual obligations</u> by simply contending that it is not subject to the common law rule precluding contribution and indemnity from <u>joint tortfeasors</u>. *See Matthews Bros. Const. Co., Inc. v. Stonebrook Development, L.L.C.*, 854 So. 2d 573, 580 (Ala. Civ. App. 2001) ("Its liability, if any, to Stonebrook arises from its breach of its contractual obligation to timely perform the construction at issue. Accordingly, Alabama's rule barring contribution among joint tortfeasors is not at

issue."); *Price v. CTB, Inc.,* 168 F. Supp. 2d 1299, 1302 (M.D. Ala. 2001) (allowing seller's claim against manufacturer and noting that "[t]he equitable doctrine of implied indemnity has been applied to such factual scenarios as a means of alleviating the harshness surrounding rules prohibiting contribution among joint tortfeasors.").

Taking the allegations of Mazer's Complaint as true, Mazer's has stated viable causes of action for breach of warranty and breach of contract against Devon. Accordingly, Devon's Motion to Dismiss is due to be denied.

### E. Mazer's negligence and wantonness claims fall within the active/passive exception to Alabama's prohibition against contribution and/or indemnification among joint tortfeasors.

In its Complaint, Mazer's alleges that Devon breached the implied warranties of merchantability and fitness for a particular purpose. *See*, Compliant ¶¶ 20-26. Mazer's claims of breaches of the implied warranties are sufficient to state a cause of action for common law indemnification. *See, Coates v. CTB, Inc.,* 173 F. Supp. 2d 1200, 1203 (M.D. Ala. 2001) (citing *Mallory SS Co.*, 84 So. at 877) ("The breach of implied warranties of merchantability and fitness for particular purpose supported plaintiff's suit for indemnity.").

Devon must indemnify Mazer's for any damage Mazer's may incur as a result of its purchase of the drywall from Devon. Any liability Mazer's may incur to Plaintiffs for unknowingly selling allegedly defective products would constitute,

at best, "passive negligence" under Alabama law.[2]   When determining indemnity disputes between two putative tortfeasors, Alabama courts distinguish between active and passive negligence.[3]   *See, e.g., SouthTrust Bank v. Jones, Morrison, Womack & Dearing, P.C.*, 939 So. 2d 885, 902 (Ala. Civ. App. 2005) ("Alabama law analyzes problems involving two putative tort-feasors involved in an indemnification dispute arising out of a personal injury cause of action in terms of active versus passive negligence."); *Crigler v. Salac*, 438 So. 2d 1375, 1385 (Ala. 1983).

  With regards to this distinction, the Alabama Court of Civil Appeals has provided:

> The active-versus-passive-negligence analysis used in *Mallory Steamship Co. v. Druham,* 17 Ala.App. 365, 84 So. 874 (1920), is a well-established exception to the rule that joint tortfeasors may not claim indemnity against each other. The Alabama Supreme Court has indicated that the term "passive negligence" may be equivalent to "vicarious liability," 'i.e., liability that the law imposes on one party for the wrongful conduct of another, as opposed to 'active negligence,' which refer[s] to that form of liability based on one's own wrongful conduct. The exceptions to the rule that indemnity will not be allowed among joint wrongdoers are that a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively,

---

[2]    Mazer's denies that it breached any duty allegedly owed to any Plaintiff.

[3]    Mazer's denies that it committed any tort or violated any law and/or that it is liable for any damages alleged by Plaintiffs.

> or where both parties are at fault, but the fault of the
> party from whom indemnity is claimed was the efficient
> cause of the injury. Where an injury results from a
> violation of a duty which one owes to another, the parties
> are not in pari delicto.

*SouthTrust Bank,* 939 So. 2d at 902 (emphasis added).  Therefore, "to be joint tort-

feasors within the rule barring indemnity, there must be joint participation in the

tort, and the parties must be guilty in equal degrees."  *Belcher v. Birmingham Trust*

*Nat. Bank*, 348 F. Supp. 61, 159 (N.D. Ala. 1968).

Mazer's simply sold the products it purchased from Devon, without altering

them in any way.  *See*, Mazer's Complaint ¶ 9.  Mazer's has had no contact with

the drywall manufacturer and has never even traveled to China.  *See*, Exhibit A at ¶

38.  Therefore, Mazer's conduct would fall within the exception to Alabama's

prohibition against contribution and indemnity among joint tortfeasors.  *See,*

*Mallory SS Co.*, 84 So. at 877 (finding employer's failure to inspect faulty

equipment constituted passive negligence); *Ala. Power Co. v. Marine Builders,*

*Inc.*, 475 So. 2d 168, 184 (Ala. 1985) ("Tort-based indemnification is designed to

shift the whole loss upon the more guilty of the two tortfeasors . . . [and] has

usually been available only where the party seeking it was merely passively

negligent while the would-be indemnitor was actively at fault. 'Passive negligence'

has been limited to instances in which the indemnitee was . . . technically liable.");

RESTATEMENT (SECOND) OF TORTS § 886B (indemnity is appropriate where "the

indemnitor supplied a defective chattel . . . as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect," or "the indemnitee was induced to act by a misrepresentation on the part of the indemnitor, on which he justifiably relied").

Conversely, if the Plaintiffs' allegations are correct, Devon was actively negligent.   Its representatives traveled to China, inspected the manufacturing facilities, and were actively involved with the negotiations for the products at issue.   *See*, Exhibit B at p. 58.   Moreover, Devon's representatives repeatedly represented to Mazer's that the drywall it sold Mazer's was of good quality and not defective.   *See*, Exhibit A at ¶ 39; Exhibit B at pp. 58-59; 185; 200; 203-204. Devon cannot escape liability for its actively negligent conduct, if Plaintiffs' allegations are correct.   *See, also, Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 556 (Ala. 1994) (defining active negligence as "that form of liability based on one's own wrongful conduct."); *Mallory SS Co.*, 84 So. at 877 (finding manufacturer actively negligent by breaching its duty to supply safe products). Therefore, Mazer's is entitled to recover against Devon under common law indemnity, and Devon's Motion to Dismiss is due to be denied.   *See Coates v. CTB, Inc.*, 173 F. Supp. 2d 1200, 1203-04  (M.D. Ala. 2001) (denying motion to dismiss and rejecting "no contribution" argument and noting that "[plaintiff builder] could be found to be merely passively liable, in that it negligently failed to

determine independently whether those items were properly used for the construction, while [supplier defendant] could be actively negligent by supplying improper items to [plaintiff builder] in breach of implied warranties.").

## CONCLUSION

Devon is subject to personal jurisdiction in Alabama.  When it contracted to sell the drywall at issue to Mazer's, Devon was aware that Mazer's only operated retail facilities in Birmingham, Alabama.  As such, Devon knew that Mazer's market was confined to the State of Alabama and that the drywall would be purchased by Alabama consumers only.  Therefore, Devon purposefully directed its activities at Alabama and should have expected to be hauled into Court in this State.

Furthermore, Mazer's has plead sufficient facts to state a cause of action against Devon.  Taking the allegations of the Compliant as true, as this Court is required to do, Mazer's has established that it purchased the drywall from Devon and that Devon is liable to Mazer's under both the Uniform Commercial Code and the common law for any damages Mazer's may incur as a result of the alleged defective products from Devon.

WHEREFORE, Mazer's Discount Home Centers, Inc., d/b/a Mazer Discount Superstore respectfully requests that this Court enter an Order denying Devon International Industries Inc.'s Motion to Dismiss.

Respectfully submitted this 29th day of July, 2010.

/s/ *Mary Blanche Hankey*
Christopher A. Bottcher (BOT003)
C. Lee Reeves (REE004)
Mary Blanche Hankey (NEE007)

**OF COUNSEL:**

SIROTE & PERMUTT, P.C.
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel.:   (205) 930-5100
Fax:   (205) 930-5101

/s/ *Larry S. Logsdon*
Larry S. Logsdon
Michael L. Jackson
Attorneys for Defendant
Mazer's Discount Home Centers, Inc.

**OF COUNSEL:**

WALLACE, JORDAN, RATLIFF & BRANDT, L.L.C
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
Tel:   (205) 874-0341
Fax:   (205) 871-7534

## **DEFENDANT RESPECTFULLY REQUESTS ORAL ARGUMENT**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Mazer's Discount Home Centers, Inc.'s Response to Plaintiff Samuel Ledford's Motion for Stay of Discovery has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U. S. Mail and e-mail upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United Stated District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this the 29th day of July

/s/ Mary Blanche Hankey
Of Counsel