agreement to be executed in connection therewith and the transactions contemplated thereby. All such documents, instruments, and agreements will, upon execution, be valid, binding and enforceable against the Debtors, the Reorganized Debtors, and any other person who is a party thereto, and such documents are entered into for good and valuable consideration, including the benefits of the Plan.

(c)     Based upon the record of these Chapter 11 Cases, the New Mercedes Common Stock interests: (a) are legal, valid and enforceable; and (b) do not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable law.

32.     <u>New Loan Documents</u>. Subject to the occurrence of the Effective Date:

(a)     Any and all documents, instruments and agreements necessary and appropriate to document, evidence or otherwise secure the New Senior Credit Facilities to be entered into between the Reorganized Debtors and the First Lien Lenders on the Effective date, including, without limitation, the New Senior Credit Facilities, the New Loan Documents, the New Notes, indemnitees, UCC financing statements and any other documents reasonably requested by the First Lien Lenders and the execution, delivery and performance of such documents are approved.

(b)     The Debtors and, if applicable, the Reorganized Debtors (and any subsidiaries of the Debtors and the Reorganized Debtors), are authorized and empowered to execute and deliver all documents, agreements and instruments and take all actions reasonably necessary to consummate and implement the Plan, including, without limitation, the execution, delivery and performance of the New Loan Documents, and each other document, instrument, and agreement to be executed in connection therewith and the transactions contemplated thereby. All such documents, instruments, and agreements, including, without limitation, the New Loan Documents, will, upon execution, be valid, binding and enforceable against the Debtors, the Reorganized Debtors, and any other person who is a party thereto, and such documents are entered into for good and valuable consideration, including the benefits of the Plan.

(c)     Based upon the record of these Chapter 11 Cases, the New Loan Documents: (a) are legal, valid and enforceable; and (b) do not constitute preferential transfers, fraudulent transfers or conveyances, or any other kinds of transactions avoidable under the Bankruptcy Code or any other applicable law.

33.     <u>Renewed Space Coast Truss Loan Documents</u>.     Subject to the occurrence of the Effective Date:

18

(a) Any and all documents, instruments and agreements necessary and appropriate to document, evidence or otherwise secure the renewed Allowed Space Coast Truss Secured Claims, including without limitation renewal of the Space Coast Truss Loan Documents and any other documents reasonably requested by the holders of the Allowed Space Coast Truss Secured Claims, and the execution, delivery and performance of such documents, are approved.

(b) The Debtors and, if applicable, the Reorganized Debtors (and any subsidiaries of the Debtors and the Reorganized Debtors), are authorized and empowered to execute and deliver all documents, agreements and instruments and take all actions reasonably necessary to consummate and implement the Plan, including, without limitation, the execution, delivery and performance of the renewed Space Coast Truss Loan Documents, and each other document, instrument, and agreement to be executed in connection therewith and the transactions contemplated thereby. All such documents, instruments, and agreements, including, without limitation, the renewed Space Coast Truss Loan Documents, will, upon execution, be valid, binding and enforceable against the Debtors, the Reorganized Debtors, and any other person who is a party thereto, and such documents are entered into for good and valuable consideration, including the benefits of the Plan.

(c) Based upon the record of these Chapter 11 Cases, the renewed Space Coast Truss Loan Documents: (a) are legal, valid and enforceable; and (b) do not constitute preferential transfers, fraudulent transfers or conveyances, or any other kinds of transactions avoidable under the Bankruptcy Code or any other applicable law.

34. <u>Renewed Suntree Loan Documents</u>. Subject to the occurrence of the Effective Date:

(a) Any and all documents, instruments and agreements necessary and appropriate to document, evidence or otherwise secure the renewed Allowed Suntree Secured Claims, including without limitation the renewal of the Suntree Loan Documents and any other documents reasonably requested by the holders of the Allowed Suntree Secured Claims, and the execution, delivery and performance of such documents, are approved.

(b) The Debtors and, if applicable, the Reorganized Debtors (and any subsidiaries of the Debtors and the Reorganized Debtors), are authorized and empowered to execute and deliver all documents, agreements and instruments and take all actions reasonably necessary to consummate and implement the Plan, including, without limitation, the execution, delivery and performance of the renewed Suntree Loan Documents, and each other document, instrument, and agreement to be executed in connection

19

therewith and the transactions contemplated thereby. All such documents, instruments, and agreements, including, without limitation, the renewed Suntree Loan Documents, will, upon execution, be valid, binding and enforceable against the Debtors, the Reorganized Debtors, and any other person who is a party thereto, and such documents are entered into for good and valuable consideration, including the benefits of the Plan.

(c) Based upon the record of these Chapter 11 Cases, the renewed Suntree Loan Documents: (a) are legal, valid and enforceable; and (b) do not constitute preferential transfers, fraudulent transfers or conveyances, or any other kinds of transactions avoidable under the Bankruptcy Code or any other applicable law.

35. <u>Confirmation Date</u>. The Confirmation Date referred to in Article 1.26 of the Plan and as used throughout the Plan and this Order is the date the Court enters this Order on its electronic docket.

36. <u>Correction of Errors and Inconsistencies</u>. After the Confirmation Date and before substantial consummation of the Plan as defined in Bankruptcy Code § 1101(2), the Debtors and/or the Reorganized Debtors may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or this Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan.

37. <u>Resolution of Plan Objections</u>. As set forth below, the objections filed to the Plan have either been resolved, withdrawn, or otherwise overruled.

38. <u>Resolution of Tax Objections</u>. The following taxing authorities filed substantially similar objections (collectively, the "Tax Objections") addressing the treatment of Secured Tax Claims under the Plan: (i) Texas Comptroller of Public Accounts (D.E. #1149); (ii) Travis County Tax Assessor, *et al.* (D.E. ##1190, 1193); (iii)

20

Lewisville Independent School District, et al. (D.E. ##1243, 1266); (iv) Miami-Dade Tax Collector (D.E. #1227); (v) County of Denton, Texas, et al. (D.E. #1216); (vi) Brevard County Tax Collector (D.E. ##1235, 1269); (vii) Orange County Tax Collector (D.E. ##1236, 1270); (viii) Fort Bend Independent School District, et al. (D.E. ##1247, 1273); and (ix) Dallas County, et al. (D.E. ##1250, 1274). The Tax Objections have been resolved by way of incorporating certain agreed language regarding treatment of Class 2 and the vesting of assets set forth in paragraph 49(a) of this Order.

39. <u>Resolution of BAN Objections.</u> Celebration Point Community Development District ("Celebration Point") (D.E. #1261) and Lo Land Assets, LP ("Lo Land") (D.E. #1224) (collectively, the "BAN Objections") objected to the Plan. Lo Land filed a supplemental objection (D.E. #1305) objecting to the non-debtor release provisions to the extent the release provisions relate conduct that is subject of the Adversary or the related state court actions. The BAN Objections have been resolved by way of incorporating the agreed language set forth in paragraphs 49(b) and 49(e) of this Order.

40. <u>Resolution of ESOP Objections</u>. Two objections were received on behalf of ESOP participants by Jeffrey Macik (the "Macik Objection") (D.E. #1211) and Brett Alexander and Audrey Gillett (D.E. #1246, 1271) (the "Alexander & Gillett Objection"). The Alexander & Gillett Objection has been resolved by incorporating certain agreed language into paragraph 49(e) of this Order. In exchange for incorporating the agreed language into paragraph 49(e) of this Order and as condition of resolution of the Alexander & Gillett Objection, the Adversary Proceeding 09-01927-PGH ("Gillett Adversary Proceeding") is to be withdrawn with prejudice. The Court has overruled the

21

Macik Objection and held that the form of language included in paragraph 49(e) of this Order resolves the Macik Objection as set forth in the Release Related Findings and Conclusions.

41. <u>Resolution of Removables Objections</u>. Seven objections were filed by certain operational lien claimants assert priming liens under the Texas law "removables" doctrine (the "Removables Objections"). The Removables Objections were filed by: (i) Park Row Lighting, LLC (D.E. #1169); (ii) Fashion Glass & Mirror, LLC (D.E. #1170); (iii) Fashion Door & Window, Ltd. (D.E. #1171); (iv) Calvin's Electric, Ltd. (D.E. #1172]; (v) Casa Mechanical Services, Ltd. (D.E. #1173); (vi) Christianson Air Conditioning and Plumbing, LLC (D.E. #1174); and (vii) ABC Fence Co. dba Builders Fence Co. (D.E. # 1175). The Removables Objections were resolved by way of settlement agreement between the objecting parties and the Debtors and have been, or will be, withdrawn.

42. <u>Resolution of Operational Lien Claimant Objections</u>. Operational lien claimants TNT Builders (D.E. #1225), Tri-County Drywall (D.E. #1252), and Potter Concrete (D.E. #1256) (collectively, the "Operational Lien Claimant Objections") objected to confirmation. The Operational Lien Claimant Objections were resolved prior to the Confirmation Hearing.

43. <u>Resolution of Ace American Insurance Objection</u>. The Ace American Insurance Co. (D.E. ##1251, 1296) (the "Ace Objection") was resolved by way of incorporating the agreed language set forth in paragraphs 49(c) and 49(d) of this Order.

44. <u>Resolution of the Symetra Objection</u>. The Debtors and Symetra Life Insurance ("Symetra") have resolved the objection filed by Symetra (D.E. ##1244, 1267) by consensually determining that the requisite cure payment for Symetra contract 16-

010956-00 is $36,380.60 ("Symetra Cure Payment"), which is equal to $99,019.15, less $62,638.55 of applicable offsets and credits. Pursuant to Article 9.3 of the Plan, the Debtors shall remit the Symetra Cure Payment to Symetra on the Effective Date or as soon after that date as is practicable.

45. <u>Resolution of Bond Safeguard and Lexon Objection</u>. The objection filed by Bond Safeguard Insurance Company and Lexon Insurance Company (D.E. #1254) (the "Bond Objection") was resolved by way of incorporating in this Order the agreed language set forth in this paragraph.

> (a) Nothing in the Plan, Plan Supplement, or the Confirmation Order shall release the rights and remedies of Bond Safeguard Insurance Company and/or Lexon Insurance Company ("Bond/Lexon") in respect to bonds issued in connection with the Debtors' projects, except to the extent such rights and remedies constitute debts or claims (in each case as defined in section 101 of the Bankruptcy Code) that are subject to discharge under section 1141(d) of the Bankruptcy Code. In particular, any releases granted to the Released Parties, either in the Plan, Plan Supplement or Confirmation Order shall not constitute a release, waiver or discharge of any claim, obligation, suit, judgment, damages, demand, debt, right, Cause of Action, or liability whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, of any non-Debtor Released Party to Bond/Lexon, including but not limited to any liability arising under a General Agreement of Indemnity. Notwithstanding this paragraph, any obligations of the Debtors arising under any indemnity agreement are discharged pursuant to Article 12.2 of the Plan.
>
> (b) Further, any claims or defenses that Bond/Lexon may have against any third-party, including but not limited to any and all Obligees, that assert a claim against a bond issued by Bond/Lexon on behalf of one or more of the Debtors, are expressly preserved in favor of Bond/Lexon.
>
> (c) Finally, the terms of the Plan, Plan Supplement, and Confirmation Order shall not affect or otherwise impact bonds issued by Bond/Lexon in favor of any non-Debtor entity, or the rights of Bond/Lexon relating to such bonds.

46. <u>Resolution of National City Bank and Satellite Beach Objections.</u> With respect to (1) Unsecured Creditor, National City Bank's ("National City") Objection (D.E. #1232) to Debtors' Second Amended Joint Chapter 11 Plan of Reorganization (D.E. #1020) and Disclosure Statement Concerning the Debtors' Joint Plan of Reorganization (D.E. #1021), and (2) the Objection by Satellite Beach Partners, LLC ("Satellite") to Confirmation of Debtor's Plan (D.E. #1234), those Objections are settled and resolved by the entry of this Order which shall hereby exclude from the Releases, and the definition of Released Parties, contained in Article I(B) Sec. 1.107, the first full paragraph of Article V, Section 5.9(B), and Article 12.4 of the Plan:

    (a) the Land Ventures listed on Exhibit M (D.E. #1096-6, pg. 1-2) of the Plan Supplement

    (b) any transferee of real property (or holder of an option to acquire real property) from any such Land Ventures, unless such transferee (or option holder) was:

        (i) a bona fide good faith purchaser for value, who was not an affiliate (as defined in §101(2) of the Bankruptcy Code, as if applied to these individuals and entities rather then as applied to Debtor as set forth in that definition) of the Land Ventures, any member of the Buescher family or REIV or

        (ii) an affiliate of the Land Ventures, any member of the Buescher family or REIV who received such transfer (or option) in connection with its acquisition of a spec home, (provided that notwithstanding this clause, no affiliates of the Land Ventures, any member of the Buescher family or REIV will be released from any Claim (whether or not in connection with the acquisition of a spec home) resulting from their receipt of a fraudulent conveyance from any Land Ventures, if any); and

    (c) each of the Land Ventures' and transferees' (to the extent set forth above in (a) and (b)) and the Montecito CDD's respective current and former directors, officers, employees, representatives, members, agents, counsel, financial advisors, and professionals,

24

as to any Claims, if any, that either National City or Satellite may have against them, as *those* Claims relate to either Phoenix Community Developers, Inc. ("Phoenix"), the Montecito Community Development District ("Montecito CDD"), or all property encompassed therein.

47. Nothing contained within this Order shall (i) preclude National City or Satellite's rights to pursue the allowance of their Proofs of Claims filed within these cases; provided, however, the recovery, if any, by each of National City or Satellite on account of its respective Proof of Claim shall be solely against the assets of the Creditor Trust and neither of them shall have any right to assert a Claim against the Debtors or the Reorganized Debtors, as applicable, (ii) preclude or impair National City or Satellite's rights to pursue any Claims against any non-Debtors; provided, however, that none of the Releases provided for under the Plan and this Order in favor of the Released Parties shall be affected, modified or abridged, except as provided herein with respect to National City and Satellite, (iii) be construed as an admission on the part of any Debtors, the Committee, Land Ventures, REIV or the Creditor Trust, as to the validity of National City or Satellite's Proofs of Claims or their standing to assert such Claims, (iv) limit, impair or modify in any way the discharge granted to any of the Debtors under the Plan and this Confirmation Order, or (v) be construed that the inclusion of any party as a Released Party for any other purposes shall in any way impair or restrict the exclusion of such party as a Released Party for the purposes set forth in paragraph 46 above.

48. <u>Resolution of Norpak Objection</u>. On June 5, 2009, the Debtors filed their *Second Motion for an Order Under 11 U.S.C. § 365(a) Authorizing Debtors to Reject*

25

*Certain Executory Contracts* ("Second Executory Contract Rejection Motion") (D.E. #812), seeking entry of an order authorizing the rejection of certain executory contracts including that certain "Contract for Sale and Purchase" dated May 16, 2002 with Norpak Corporation ("Norpak") ("Purchase Contract"). On June 25, 2009, Norpak filed its *Objection to Debtors' Second Motion for an Order Under 11 U.S.C. § 365(a) Authorizing Debtors to Reject Certain Executory Contracts* (D.E. #881), which, among other things, (i) asserted that Norpak did not receive proper notice of the Second Executory Contract Rejection Motion, (ii) asserted that the Purchase Contract was not executory, and (iii) contained as an exhibit, a recorded "Memorandum of Agreement between the Debtor and Norpak dated February 11, 2003" (the "Memorandum of Agreement"), which is related to the transaction subject of the Purchase Contract and which contains certain restrictive covenants. On August 25, 2009, Norpak filed its *Limited Objection to Confirmation of Debtors Joint Plan of Reorganization* ("Norpak Objection") (D.E. ## 1233 & 1268), which objected to the Plan to the extent that the Plan sought to vest the real property subject of the Purchase Contract and/or Memorandum of Agreement in the Reorganized Debtors free and clear of the restrictive covenants set forth in the Memorandum of Agreement. The Debtors and Norpak have resolved the Norpak Objection and have agreed that (i) as set forth in the revisions to Article 12.1 of the Plan, the real property subject of the Memorandum of Agreement will vest in the Reorganized Debtors subject to the restrictive covenants contained in the Memorandum of Agreement, (ii) the Memorandum of Agreement will remain of public record and enforceable by Norpak, and (iii) neither the Purchase Contract nor the Memorandum of Agreement are executory contracts, and are therefore not subject to rejection under

Bankruptcy Code § 365. Therefore, the Second Executory Contract Rejection Motion is denied solely to the extent the Second Executory Contract Rejection Motion contemplated rejection of the Purchase Contract and/or Memorandum of Agreement. Accordingly, as agreed by the Debtors and Norpak, any claims arising under the Purchase Contract and/or Memorandum of Agreement and existing as of the Effective Date shall be deemed prepetition Class 9 General Unsecured Claims in these Chapter 11 Cases. Norpak shall have thirty (30) days from the entry of this Order to file any such claim. Nothing herein shall prejudice the right of the Creditor Trustee to object to any claim that may be filed by Norpak.

49. <u>Modifications to the Plan</u>. At the request of the Debtors, the Plan is hereby modified pursuant to Bankruptcy Code § 1127(a) to clarify the impact of the Plan and its provisions. The following clarifying language resolves the vast majority of the Plan objections. Additions to the Plan are indicated in bold with a double underline, and deletions are indicated with a strike-through. The modifications to the Plan are as follows:

(a) <u>Article 5.2.B - Class 2 Secured Tax Claims Treatment</u>

Each Allowed Secured Tax Claim shall be paid in full in Cash by the Debtors and/or the Reorganized Debtors upon the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date on which (i) an Allowed Secured Tax Claim, or (ii) taxes payable pursuant to statutory liens securing the payment of ad valorem real property and personal property taxes, become due under applicable non-bankruptcy law; (c) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (d) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (e) such date as the holder of such Claim and the Debtors and/or the Reorganized Debtors may agree. For avoidance of doubt, (i) Allowed Secured Tax Claims, and (ii) taxes payable pursuant to statutory liens securing the payment of ad valorem real property and personal property taxes, shall include interest, including post-petition and post-Effective Date interest, to the extent such interest becomes due and owing under applicable non-bankruptcy law.

Also, for the avoidance of doubt, notwithstanding anything herein to the contrary, (but without modifying any obligations, if any, of the Reorganized Debtors to pay any such taxes sooner pursuant to the New Loan Documents), upon the sale of any particular piece of real property, any undisputed taxes on said property shall be paid at the time of sale. With regard to disputed taxes, a lien will attach to the proceeds of the sale in the disputed amount and shall remain attached to the proceeds until such dispute is resolved and the taxes paid accordingly.

Any Liens either (i) securing an Allowed Secured Tax Claim, or (ii) arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes, shall remain on the respective property until such Claim or tax is paid pursuant to the Plan or applicable non-bankruptcy law. The Reorganized Debtors shall not sell or otherwise transfer any real property free and clear of any (i) Allowed Secured Tax Claims, or (ii) liens arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes, and confirmation of the Plan shall not affect in any way any (i) Liens securing current or future Allowed Secured Tax Claims, or the rights of the holders of Allowed Secured Tax Claims to enforce such Liens in accordance with applicable non-bankruptcy law, or (ii) liens arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes, or the rights of the holders of liens arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes to enforce such Liens in accordance with applicable non-bankruptcy law.

**Nothing in the Plan or any Confirmation Order shall be deemed to waive any rights of setoff the holder of (i) an Allowed Secured Tax Claim, or (ii) liens arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes, may have against the Debtors, the Reorganized Debtors, or to any tax refund owing to the Debtors or Reorganized Debtors.**

**Nothing provided in the Plan or Confirmation Order shall be construed to affect or impair any rights of setoff of the Texas Comptroller of Public Accounts, the Orange County Tax Collector or the Brevard County Tax Collector.**

(b) <u>Article 12.1 - Vesting of Assets</u>

Except as provided in this Plan, the Confirmation Order, or the Plan Documents, all property of the Estates shall vest in the Reorganized Debtors on the Effective Date free and clear of all Liens and Claims of all kinds existing before the Effective Date, provided, however, that all assets of the Reorganized Debtors, except for the Collateral securing the Space Coast Truss Secured Claims and Suntree Secured Claims, shall be

28

subject to the senior, perfected Liens granted to the holders of Allowed First Lien Lender Secured Claims, with such Liens being senior to any and all other Liens, Claims and interests, including any Liens or Claims of creditors asserting mechanics liens or similar operational liens, other than Liens securing (i) Allowed Secured Tax Claims, (ii) Allowed CDD Secured Claims, and (iii) statutory ad valorem real property and personal property taxes arising under applicable non-bankruptcy law that have priority to the Liens securing Allowed First Lien Lender Secured Claims as of the Effective Date. Real property which vests in the Reorganized Debtors shall remain subject to any easements, rights-of-way, zoning, covenants, conditions and restrictions and other similar land-use restrictions in existence as of the Effective Date. From and after the Effective Date, the Reorganized Debtors may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in this Plan, the Amended Operating Agreement or the Confirmation Order. On the Effective Date, the assets of the Creditor Trust shall be vested, for the benefit of the holders of Allowed General Unsecured Claims, free and clear of all Liens and Claims of all kinds: (i) the Effective Date Cash Payment; (ii) the right to receive the Post Effective Date Cash Payment; (iii) the right to receive the BANS Proceeds Allocation; and (iv) the Transferred Claims.

(c)  Article 9.2 - Approval of Assumption or Rejection

Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code § 365 of the assumption or assumption and assignment of the executory contracts and unexpired leases assumed or assumed and assigned under this Plan or otherwise during the Chapter 11 Cases; and (b) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under this Plan or otherwise during the Chapter 11 Cases. Notwithstanding anything contained in this Section 9.2 to the contrary, the Debtors retain the right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease in the schedules filed with the Bankruptcy Court as part of the Plan Supplement, thus changing the treatment of the contract or lease under this Plan, at any time within 30 days after the Effective Date. Notwithstanding anything herein to the contrary, the Debtors shall not change the treatment of any assumed executory contract or unexpired lease which would result in impacting Allowed General Unsecured Claims without first obtaining the written consent of the Committee or the Creditor Trustee, as applicable. Nothing contained in the Disclosure Statement, the Plan, the Confirmation Order, or any Plan Document shall alter the Order granting the Motion to Purchase and Assume Workers Compensation and Automobile Liability Insurance (the ACE Order) (D.E. #631) and related Agreements.

(d) <u>Article 12.5 - Preservation of Insurance</u>

The discharge and release from Claims as provided in this Plan, except as necessary to be consistent with this Plan, do not diminish or impair the enforceability of any insurance policy that may cover Claims against a Debtor or any other Person. Nothing contained in the Disclosure Statement, Plan, the Confirmation Order, any exhibit to the Plan, the Plan Supplement, or any other Plan document (including any provision that purports to be peremptory or supervening) shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers with respect to any ACE insurance policies issued to or on behalf of the Debtors and any related agreements. The rights and obligations of the insureds and insurers under the ACE insurance policies and related agreements shall be determined under such policies and related agreements, including the terms, conditions, limitations, exclusions and endorsements thereof, which shall remain in full force and effect, and under any applicable non-bankruptcy law. Regardless of whether the ACE insurance policies and related agreements are considered to be executory or not, the Reorganized Debtors will perform the Debtors' obligations under the ACE insurance policies and related agreements including any that remain unperformed as of the Effective Date of the Plan.

(e) <u>Article 12.4 - Releases, Exculpation and Related Matters</u>

Nothing contained in the Plan or Confirmation Order, including Article 12.4 of the Plan, shall be construed as a release of claims of current or former participants, beneficiaries of current or former participants, fiduciaries (including, without limitation, any claim of contribution against another fiduciary other than the Debtors or Reorganized Debtors, but shall specifically include the officers and directors of the Debtors as specifically set forth below) or any other person (collectively, the "ESOP Claimants") in or with respect to the Mercedes Homes, Inc. Employee Stock Ownership Plan and its related trust, as amended from time to time (the "ESOP"), nor shall anything contained in the Plan or Confirmation Order constitute an injunction preventing any ESOP Claimant from pursuing any such claims. For purposes of the preceding sentence, "claims" include any and all claims and/or causes of action, whether legal or administrative, against (i) the ESOP, (ii) current or former fiduciaries of the ESOP (as defined under Section 3(21) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")), or (iii) any provider of goods or services to the ESOP or any person who entered into any non-exempt transaction with the ESOP that is alleged to be prohibited under the prohibited transaction rules under ERISA (collectively, all such persons described in (i), (ii) and (iii) shall be referred to as "ESOP Persons") on account of any act or omission by any ESOP Person arising from or related to (a) the formation of the ESOP, (b)

the operation and administration of the ESOP, (c) the termination of the ESOP, (d) the tax qualification of the ESOP, and (e) the alleged breach of any fiduciary duty by any person (other than the Debtors or Reorganized Debtors but shall specifically include the officers and directors of the Debtors, to the extent they are or were fiduciaries of the ESOP, with regard to any action related to or arising out of the ESOP) with respect to the ESOP; provided, however, subclauses (a) through (e) shall not include any act or omission arising from or related to the operation and administration (other than in respect of the ESOP) of the Debtors, the Reorganized Debtors, or their assets. Notwithstanding the foregoing, nothing in this paragraph shall: (1) affect any defenses or counterclaims available to the ESOP or any ESOP Person; (2) affect any of the releases given to the First Lien Release Parties under Article 12.4 of the Plan; or (3) affect the release of any of the Released Parties under Article 12.4 of the Plan. The term "Released Parties", as defined in the Plan, excludes any ESOP Person in its capacity as an ESOP Person, but shall include such individual or entity in all other capacities. For the avoidance of doubt, the term "ESOP Person" shall exclude: (i) the Debtors; (ii) the Reorganized Debtors; (iii) REIV; (iv) the Land Ventures; or (v) the directors and officers of any of the foregoing in their capacity as such, but shall include such directors or officers in their capacity as fiduciaries under ERISA, if applicable. Nothing in this paragraph shall in any way be deemed to: (i) impair, alter or nullify the discharge of the Debtors from any and all claims granted under the Plan or Confirmation Order or any injunction with respect thereto; (ii) result in the creation or assumption of any claims against the Reorganized Debtors or their assets; or (iii) impair, alter or nullify any ruling or determination by the Bankruptcy Court concerning the validity, priority, extent or allowance of any of the claims, liens or security interests of REIV against the Debtors.

Notwithstanding the provisions of the preceding paragraph, nothing in the Plan or Confirmation Order, including Article 7.7.C of the Plan, shall (1) exculpate or release officers, directors and employees of the Debtors or Reorganized Debtors other than in their capacity as officers, directors, and employees of the Debtors or Reorganized Debtors or, (2) as to Land Lo Assets, LP ("Lo") or Celebration Pointe Community Development District ("CDD"), constitute a bar to any defenses that Lo or the CDD may have against any claim of any of the Debtors or Reorganized Debtors or their successors and assigns or constitute a determination or adjudication as to the validity, enforceability, legality, or appropriateness of any conduct by any officer, director or employee of the Debtors or Reorganized Debtors while serving as a "supervisor" of the CDD or create any defense or avoidance, whether based in waiver, estoppel or otherwise, to any assertion of Lo or the CDD that such conduct was not valid, legal, enforceable or appropriate, including positions asserted in (i) this Case (either the main case or adv proc case no.09-ap-01860), (ii) the case pending in St. Lucie County Circuit Court, Case No. 56-2008-CA-007298,

or (iii) the case pending in St.Lucie Circuit Court, Case No. 56-2008-CA-005453 (the "Lo/CDD Exception"); provided, however, that the Lo Exception shall not permit Lo or the CDD to obtain any "Claim" against the Debtors or Reorganized Debtors except pursuant to the Bankruptcy Code, the Plan, or an order of this Court.

(A) <u>Releases by the Debtors</u>. Pursuant to Section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, the Debtors, in their individual capacity for and on behalf of their Estates, shall be deemed to forever release, waive, and discharge all Released Parties from all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the Debtors, (ii) the Chapter 11 Cases and the conduct thereof, and (iii) the Plan. The Reorganized Debtors shall be bound, to the same extent the Debtors are bound, by all of the releases set forth in this Section 12.4.A of this Plan. Notwithstanding the foregoing, nothing in this Article 12.4, the Plan, or the Confirmation Order shall release any Transferred Claims or Preserved Litigation Claims, it being understood and agreed that the Transferred Claims and Preserved Litigation Claims that are preserved by this sentence do not include any Avoidance Actions or other Claims against any Released Party.

(B) <u>Release by Holders of Certain Impaired Claims.</u> This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against and Equity Interests in the Debtors, exclusive of holders of First Lien Lender Secured Claims, may have against any of the Released Parties pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019. As of the date on which all payments required to be made by the Debtors or Reorganized Mercedes on account of the Effective Date Cash Payment and the Post Effective Date Cash Payment have been made, in consideration for the distributions and other treatment afforded under this Plan, the obligations of the Debtors and the Reorganized Debtors under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, and REIV's agreement to waive the REIV Deficiency Claim, and except as otherwise provided in the Plan, Plan Supplement or Confirmation Order, particularly paragraph 45(a) of this Order, each holder of a Claim against or Equity Interest in the Debtors, exclusive of holders of First Lien Lender Secured Claims, shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the

32

Debtors' or the Reorganized Debtors' obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in this Article 12.4, the Plan, or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct, or any Avoidance Actions or Preserved Litigation Claims.

(C) <u>First Lien Releases</u>. As of the Effective Date, in consideration of the obligations of the Debtor Loan Parties under the New Senior Credit Facilities and this Plan, the Administrative Agent, the L/C Issuer and the First Lien Lenders will release the Debtor Loan Parties and each of their respective current and former officers, employees, representatives, agents, counsel, advisors and directors (in their respective capacities as such) together with the trustees for the Employee Stock Purchase Plan of Mercedes Homes, Inc., from any and all actions, causes of action, claims, demands, damages and liabilities of whatever kind or nature, in law or in equity, now known or unknown, suspected or unsuspected to the extent that any of the foregoing arises from any action or failure to act in connection with the First Lien Loan Agreement and related loan documents on or prior to the Effective Date. This paragraph shall not be deemed to release the Debtor Loan Parties from any obligations under the New Senior Credit Facilities or any other indebtedness owed to a First Lien Lender or any affiliate thereof.

(f) <u>Article 15.1 - Retention of Jurisdiction</u>

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including, among others, the following matters;

. . .

(b) to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests and all controversies and issues arising from or relating to any of the foregoing;

Nothing in the Plan or Confirmation Order shall prejudice, limit, impair or waive any rights, claims, defenses, or counterclaims of any party to that certain Adversary Complaint filed by the Debtors against Lo Land Assets LP and Celebration Pointe Community Development District, Adversary Case No. 09-01860-PGH (the "Adversary Proceeding"), including, without limitation, any claims that the Bankruptcy Court has no jurisdiction over the Adversary Proceeding or should abstain from exercising jurisdiction over the Adversary Proceeding. Neither the Plan nor this Order shall be deemed to create jurisdiction over the Adversary Proceeding.

(g) Article 5.7.C - Class 7 Suntree Secured Claims

In full and final satisfaction of Allowed Suntree Secured Claims, the Reorganized Debtors shall: (1) pay all accrued and unpaid interest in full within 30 days of entry of the Confirmation Order; (2) renew the note to the holders of Allowed Suntree Secured Claims ("Renewed Suntree Note"). The Renewed Suntree Note will have a face amount equal to the amount of the Allowed Suntree Secured Claim less the accrued and unpaid interest paid and discussed immediately above. The Renewed Suntree Note shall provide for monthly interest only payments at a rate of monthly libor plus 400 basis points until maturity. The Renewed Suntree Note shall mature 12 months following the Effective Date, but can be renewed by the Reorganized Debtors for an additional 6 months if the Reorganized Debtors are current on payment obligations under the Renewed Suntree Note. The Reorganized Debtors will use commercially reasonable efforts to sell the Collateral securing the Suntree Secured Claims after the Effective Date, and any proceeds generated by such sale shall first be applied to satisfy in full any outstanding amount of the Allowed Suntree Secured Claim.

(h) Article 1.55 - First Lien Loan Agreement.

That certain Third Amended and Restated Revolving Borrowing Base Loan Agreement dated May 15, 2008, as amended from time to time, between certain of the Debtors as borrowers and/or co borrowers and Bank of America, N.A., as administrative agent and letter of credit issuing lender, Wachoiva Bank, N.A. National Association, KeyBank National Association, Wells Fargo Bank, N.A., Suntrust Bank, Guaranty Bank, Regions Bank (successor by merger to Amsouth Bank), Comerica Bank, RBC Bank (USA), f/k/a RBC Centura Bank, Branch Banking and Trust Company, Bank of America, N.A. as successor to LaSalle Bank, Franklin Bank, and any other lenders from time to time party thereto, and all guaranty agreements, security agreements, mortgages, deeds of trust, and all other loan documents related thereto.

34

(i)     Article 1.57 - General Unsecured Claim.

Any Claim against the Debtors that is unsecured and not subject of any Lien or priority or administrative status under the Bankruptcy Code, provided that a General Unsecured Claim shall not include: (a) a Secured Claim, including without limitation a First Lien Lender Secured Claim and REIV Secured Claim; (b) an Administrative Claim; (c) an Administrative Vendor Claim; (d) a Reclamation Claim or a Claim under Section 546 of the Bankruptcy Code; (e) an Intercompany Claim; (f) the REIV Deficiency Claim; (g) a Secured Tax Claim; (h) a CDD Secured ~~Tax~~ Claim; (i) a Space Coast Truss Secured Claim; (j) a Suntree Secured Claim; (k) a Miscellaneous Secured Claim; (l) a Priority Tax Claim; (m) a Priority Claim; (n) a Subordinated Debt Securities Claim; or (o) an Equity Related Claim.

(j)     Article 1.64 - Lead Arranger.

Banc of America Securities LLC and Wells Fargo Securities, LLC, each of whom will act as sole and exclusive co-lead arrangers and co-book managers under the New Senior Credit Facilities.

(k)     Article 1.107 - Definition of Released Parties.

Each of the Administrative Agent, the First Lien Lenders, L/C Issuer, Lead Arranger, REIV, insiders of REIV, the Debtors, insiders of the Debtors, the Committee, the Land Ventures, insiders of the Land Ventures, and each of their respective current and former directors, officers, employees, representatives, members, affiliates, agents, counsel, financial advisors, and professionals. The term "insider" as used herein shall have the same meaning as set forth in Section 101(31) of the Bankruptcy Code.

(l)     Article 1.113 - Space Coast Truss Loan Documents.

That certain First Amended and Restated Master Loan Agreement (as amended, modified and supplemented from time to time) entered into on December 4, 1997, between Space Coast, as borrower and Bank of America, N.A., as lender, and all related loan documents, promissory notes, security agreements, mortgages and deeds of trust executed in connection therewith.

(m)     Article 4.8 - Class 8 - Miscellaneous Secured Claims.

Class 8 consists of all Secured Claims, other than the Secured Claims in Classes 2, 3, and 4. Each holder of a miscellaneous Secured Claim is considered to be in its own separate subclass within Class ~~5~~ 8.

35

and each such subclass is deemed to be a separate Class for purposes of the Plan

(n) <u>Article 5.3 - Class 3 CDD Secured Claims Treatment</u>.

Any and all taxes and/or assessments that are levied and/or imposed by a CDD prior to the Effective Date and that are delinquent or due as of the Effective Date shall be paid in Cash on the Effective Date, consistent with the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law. Except as stated in the preceding sentence, and notwithstanding any other language contained herein, any and all taxes and/or assessments levied and/or imposed by a CDD at any time shall be paid when due under the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law; provided however, that the Debtor shall not be responsible for payment of any delinquent taxes for assessments for which they are not responsible under CDD resolution or other directives, and applicable non-bankruptcy law.

(o) <u>Article 5.6.C - Class 6 - Space Coast Truss Secured Claims Treatment</u>.

On the Effective Date, in full and final satisfaction of Allowed Space Coast Truss Secured Claims, the Reorganized Debtors shall (i) reinstate the Space Coast Truss Loan Documents with a maturity of one year from the Effective Date and certain other modifications acceptable to the Reorganized Debtors and the holder of the Allowed Space Coast Truss Secured Claims (such modified documents, the "Renewed Space Coast Truss Loan Documents"), (ii) use their commercially reasonable efforts to liquidate the Collateral securing the Allowed Space Coast Truss Secured Claims, (iii) remit all proceeds arising from such liquidation to the holders of Allowed Space Coast Truss Secured Claims in accordance with the terms of the Space Coast Truss Loan Documents, and (iv) grant a senior perfected Lien on all proceeds arising from such liquidation to the holders of Allowed Space Coast Truss Secured Claims.

(p) <u>Article 14.1 - Conditions to Confirmation</u>.

The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 14.3 of this Plan:

(f) The Confirmation Order shall (i) provide that the First Lien Lenders shall be granted valid, perfected (without the need for recording of documents, filing of notices or taking of other action), senior Liens on all of the Reorganized Debtors' assets, except for any assets that are excluded from such Liens in the New Loan Documents, with such Liens to be senior to any other Liens, Claims or interests, including any Liens or Claims of

creditors asserting mechanics liens or similar operational liens, other than Liens Securing Allowed Secured Tax Claims and Allowed CDD Secured Claims that have priority to the Liens securing Allowed First Lien Lender Secured Claims as of the Effective Date, (ii) authorize the Reorganized Debtors and the Administrative Agent to file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate of record the release and/or discharge of any liens not specifically preserved in the Plan, without further notice to or approval of the Court or any other party and (iii) provide that the Transferred Assets shall be free and clear of all Liens and Claims of every kind, including those of the First Lien Lenders.

(q)  <u>Article 1.43 - Distribution Reserve</u>.  The Creditor Trustee shall determine the reserve, if any, to be established and maintained by the Creditor Trust for purposes of making distributions to holders of Disputed Claims if and when such Disputed Claims become Allowed Unsecured Claims.

(r)  <u>5.3.B - Class 3 CDD Secured Claims Treatment</u>

Any and all taxes and/or assessments that are levied and/or *imposed* by a CDD prior to the Effective Date and that are delinquent or due as of the Effective Date shall be paid in Cash on the Effective Date, consistent with the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law. Except as stated in the preceding sentence, and notwithstanding any other language contained herein, any and all taxes and/or assessments levied and/or imposed by a CDD at any time shall be paid when due under the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law; provided however, that the Debtor shall not be responsible for payment of any delinquent taxes of assessments for which they are not responsible under CDD resolution or other directives, and applicable non-bankruptcy law. For avoidance of doubt, any and all taxes and/or assessments that are levied and/or imposed by a CDD at any time shall include interest to the extent such interest becomes due and owing under applicable non-bankruptcy law.

50.  <u>Modifications to the Plan Supplement - Treatment of Certain Executory Contracts</u>.  At the request of the Debtors, the Plan Supplement is hereby modified pursuant to Bankruptcy Code § 1127(a) and Article 9.2 as set forth below. The modified lists of executory contracts to be assumed and rejected—original lists were filed as part of the Plan Supplement—are attached to this Order as *Exhibit "B"* in their entirety.

(a)  Additions to List of Executory Contracts to be Assumed: