fees and costs incurred by the Reorganized Debtors in connection with the BANS shall be subject to Bankruptcy Court approval in accordance with and governed by the standards of Section 330 of the Bankruptcy Code. The Reorganized Debtors shall keep the Creditor Trustee fully informed of all matters relating to the prosecution of the BANS. The Reorganized Debtors shall not resolve or settle any dispute involving the BANS for any non-monetary consideration without the prior consent of the Creditor Trustee. Any settlement or resolution of any dispute involving the BANS is subject to Bankruptcy Court approval in accordance with Bankruptcy Rule 9019.

### 7.11 Payment of Trustee Fees

The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of the order of confirmation for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the case disbursements for the relevant period. The Reorganized Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements of the Reorganized Debtors for post-confirmation periods within the time periods set forth in 28 U.S.C. § 1930(a)(6), until the earlier of the closing of these cases by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing these cases or converting these cases to another chapter under the Bankruptcy Code, and the parties responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

## ARTICLE VIII
## CREDITOR TRUST

### 8.1 Creation of Creditor Trust and Appointment of Creditor Trustee.

On the Effective Date, the Creditor Trust will be created. The Creditor Trust shall be administered by the Creditor Trustee who shall be selected by the Committee and identified prior to the Confirmation Hearing.

### 8.2 Property of the Creditor Trust.

On the Effective Date the Debtors shall be deemed to have automatically transferred to the Creditor Trust, for the benefit of the holders of Allowed General Unsecured Claims, free and clear of all Liens and Claims of any kind: (i) the Effective Date Cash Payment; (ii) the right to receive the Post Effective Date Cash Payment; (iii) the right to receive the BANS Proceeds Allocation; and (iv) the Transferred Claims.

### 8.3 Power of Creditor Trustee.

The Creditor Trustee shall have the power to administer the assets of the Creditor Trust in a manner consistent with the Creditor Trust Documents. Without limiting the generality of the foregoing, the Creditor Trustee shall, as of the Effective Date, act in a fiduciary capacity for the holders of Allowed General Unsecured Claims hereunder and shall have only those rights, powers and duties conferred to him by the Plan, the Creditor Trust Documents as well as the rights and powers of a trustee under sections 542 through 552 of the Bankruptcy Code, the duties of a trustee under sections 704(a) (1), (2), (5), (7) and (9) of the Bankruptcy Code and as a representative of the respective Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Creditor Trustee shall administer the Creditor Trust subject to the foregoing duties and powers, which shall include the following:

(a) To hold, administer and prosecute the assets of the Creditor Trust and any proceeds thereof;

(b) To prosecute, compromise or settle objections to Claims (disputed or otherwise);

   (c) To make decisions regarding the retention or engagement of Professionals and to pay all reasonable fees and expenses incurred after the Effective Date;

   (d) To make or direct Distributions to Holders of Allowed General Unsecured Claims and to otherwise implement and administer the Creditor Trust;

   (e) To pursue, litigate or settle all Transferred Claims;

   (f) To set off amounts owed to any Debtor against any and all amounts otherwise due to be distributed to the holder of an Allowed Claim hereunder;

   (g) To provide periodic reports and updates regarding the status of the administration of the Creditor Trust; and

   (h) To take all other actions not inconsistent with the provisions of the Creditor Trust Documents and Plan deemed necessary or desirable in connection with administering the Creditor Trust.

  The Creditor Trustee will not need to obtain Bankruptcy Court approval to implement the terms of the Creditor Trust Documents or Plan or to take actions authorized by the Creditor Trust Documents Plan, except for: (i) the settlement of any of the Transferred Claims or (ii) resolving and/or settlement of Disputed Claims.

**8.4 Engagement of Professionals and Compensation.**

  The Creditor Trustee shall be compensated based on the formula set forth in Section 326 of the Bankruptcy Code applicable to a chapter 7 trustee. The Creditor Trustee may engage counsel, financial advisors and other professionals, including counsel, financial advisors and other professionals engaged by the Debtors and/or the Committee during the Chapter 11 Cases, to represent him in connection with his duties hereunder (the "Post Confirmation Professionals").

  The Creditor Trustee and the Post Confirmation Professionals shall be paid 90% of their fees and 100% of their costs on a monthly basis. Post Confirmation Professionals shall file fee applications no less frequently than every 120 days seeking approval of fees and expenses to be awarded by the Bankruptcy Court, including approval of the amounts paid on a monthly basis. A Post Confirmation Professional who fails to file an application seeking approval of compensation and expenses previously paid when such application is due every 120 days shall preclude such Post Confirmation Professional from being paid monthly as provided herein until an interim fee application has been filed and heard by the Bankruptcy Court. Upon the filing of each such application, the Post Confirmation Professionals shall be entitled to request the payment of some or all of any pending holdbacks in fees.

  Reorganized Mercedes shall pay an amount not to exceed $300,000.00 to the Creditor Trust to compensate it for its actual and reasonable legal fees and expenses incurred in discharging its duties, provided, however, that (i) the amount of any fees and expenses payable to the Creditor Trust for the first 12 months following the Effective Date shall not exceed $175,000.00, and (ii) Reorganized Mercedes will not be required to fund any professional fees or other costs incurred by the Creditor Trust or the holders of Allowed General Unsecured Claims in pursuing any Transferred Claims. The Creditor Trust shall submit monthly invoices to Reorganized Mercedes for costs and fees incurred during the prior month, and Reorganized Mercedes shall pay 90% of the fees and 100% of the costs of such invoices (plus any holdbacks awarded by the Bankruptcy Court) within 15 calendar days of receipt of such invoice (or order awarding holdbacks). Reorganized Mercedes shall have the right to object to the fee applications filed in connection with this Article.

**8.5  Indemnification.**

The Creditor Trust shall indemnify and hold the Creditor Trustee and the Post Confirmation Professionals harmless from and against any damages, costs, claims and other liabilities incurred in connection with their respective duties and responsibilities hereunder, other than those damages, costs, claims and other liabilities that result from such party's gross negligence or willful misconduct. Any fees and expenses actually and reasonably incurred by the Creditor Trustee in connection with the defense or settlement of any action or suit against the Creditor Trustee in connection with his duties and responsibilities hereunder not covered by any applicable insurance policy, shall be paid by the Creditor Trust Assets, if any, except that no indemnification shall be made in respect of any claim, issue or matter as to which the Creditor Trustee or Post Confirmation Professionals shall have been adjudged by a court of competent jurisdiction to be liable for bad faith, gross negligence, self dealing, breach of fiduciary duty or willful misconduct

**8.6  Termination of Creditor Trust.**

The Creditor Trust shall terminate as soon as practicable, but in no event later than the fourth anniversary of the Effective Date; except that, on or prior to the date of such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Creditor Trust for a finite period, if such an extension is necessary to liquidate the assets of the Creditor Trust or for other good cause.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1  Rejection of Executory Contracts and Unexpired Leases.**

The executory contracts and unexpired leases between a Debtor and any Person are dealt with as follows:

**A. Assumption of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases set forth on the schedule of assumed executory contracts and unexpired leases filed with the Bankruptcy Court as part of the Plan Supplement shall be deemed assumed and assigned (as indicated in the Plan Supplement) as of the Effective Date, except for any executory contract or unexpired lease: (i) that has been rejected in accordance with a Final Order entered before the Confirmation Date; or (ii) as to which a motion to reject has been filed with the Bankruptcy Court before the Confirmation Date.

**B. Rejection of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases either (i) set forth on the schedule of rejected executory contracts and unexpired leases filed with the Bankruptcy Court as part of the Plan Supplement or (ii) existing but not listed on the schedule of assumed executory contracts and unexpired leases filed with the Bankruptcy Court as part of the Plan Supplement, shall be deemed rejected as of the Effective Date, except for any executory contract or unexpired lease that has been assumed or rejected in accordance with a Final Order entered on or before the Confirmation Date.

**9.2  Approval of Assumption or Rejection.**

Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code § 365 of the assumption or assumption and assignment of the executory contracts and unexpired leases assumed or assumed and assigned under this Plan or otherwise during the Chapter 11 Cases; and (b) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under this Plan or otherwise during the Chapter 11 Cases. Notwithstanding anything contained in this Section 9.2 to the contrary, the Debtors retain the right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease in the schedules filed with the Bankruptcy Court as part of the Plan Supplement, thus changing the treatment of the contract or lease under this Plan, at any time within 30 days after the Effective Date. Notwithstanding anything herein to the contrary, the

Debtors shall not change the treatment of any assumed executory contract or unexpired lease which would result in impacting Allowed General Unsecured Claims without first obtaining the written consent of the Committee or the Creditor Trustee, as applicable.

**9.3   Cure of Defaults.**
On the Effective Date or as soon after that date as practicable, the Reorganized Debtors shall Cure any defaults under any executory contract or unexpired lease assumed or assumed and assigned under this Plan in accordance with Bankruptcy Code § 365(b)(1). The Reorganized Debtors shall not, and need not as a condition to assuming or assuming and assigning any executory contract or unexpired lease under this Plan, Cure any default relating to a Debtor's failure to perform a nonmonetary obligation under any executory contract or unexpired lease.

**9.4   Rejection Claims Bar Date.**
All Rejection Claims arising from the rejection of any executory contract or unexpired lease under this Plan are required to be filed with the Bankruptcy Court no later than the Rejection Claims Bar Date. Any such Claim not filed within that time shall be forever barred. With respect to any executory contract or unexpired lease rejected by a Debtor before the Confirmation Date, the deadline for filing a Rejection Claim remains the deadline set forth in the order of the Bankruptcy Court authorizing that rejection. If such an order did not contain such a deadline, the deadline for filing a Rejection Claim arising from that rejection is the Rejection Claims Bar Date.

## ARTICLE X
## SECURITIES TO BE ISSUED IN CONNECTION WITH THE PLAN

**10.1   New Mercedes Common Stock.**
On the Effective Date, Reorganized Mercedes shall issue the New Mercedes Common Stock to the holders of Allowed REIV Secured Claims in Class 4A.

**10.2   New Notes.**
On the Effective Date, the Reorganized Debtors shall issue the New Notes to the holders of Allowed First Lien Lender Secured Claims in Class 3.

**10.3   Creditor Trust Interests.**
On the Effective Date, the holders of Allowed Claims in Class 8 shall receive a Pro Rata share of uncertificated beneficial interests in the Creditor Trust.

**10.4   Section 1145 Exemption.**
In accordance with Section 1145 of the Bankruptcy Code, the issuance of the New Mercedes Common Stock, the New Notes and Creditor Trust Interests in accordance with the Plan is exempt from the registration requirements of Section 5 of the Securities Act, and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is deemed to be a public offer of such securities.

## ARTICLE XI
## DETERMINATION OF CLAIMS

**11.1   Objections to Claims.**
Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date, the Reorganized Debtors may object to the allowance of any Claim against the Debtors or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code, provided that such objections are filed on or before the Effective Date. The Debtors or the Reorganized

Debtors, as applicable, shall consult with the Committee and/or Creditor Trustee before settling or resolving any objection to a Claim which has the effect of impacting General Unsecured Claims, and any such settlement or resolution must be approved by the Bankruptcy Court. After the Effective Date, the Creditor Trust may object to the allowance of any General Unsecured Claim on any grounds permitted by the Bankruptcy Code. Any Claim objections filed by the Debtors that remain pending as of the Effective Date shall be transferred to the Creditor Trust for prosecution, and the Creditor Trust shall have all of the rights, claims, counterclaims and defenses as the Debtors with respect to such transferred Claim objections. The Debtors or the Reorganized Debtors, as applicable, shall cooperate with the Creditor Trustee in the review of Claims and prosecution of objections thereto, including providing documents and testimony as required. All objections to Claims filed by the Creditor Trust must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 180 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Creditor Trust's motion filed (but not necessarily heard) before the first Business Day that is 180 days after the Effective Date.

11.2   **Distributions on Allowance or Disallowance of Disputed Claims.**

No distributions shall be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim shall commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

11.3   **Contingent Claims.**

Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim shall be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim shall be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with a Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

11.4   **Delivery of Distributions; Undeliverable Distributions.**

Distributions to holders of Allowed Claims shall be made by the Reorganized Debtors and/or Creditor Trust, as applicable: (a) at the addresses set forth on any proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if the Reorganized Debtors or Creditor Trust, as applicable, have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or Creditor Trust, as applicable, after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Reorganized Debtors or Creditor Trust, as applicable, have not received a written notice of a change of address, or (d) at the addresses contained in the official records of the Reorganized Debtors or Creditor Trust, as applicable. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtors or Creditor Trust, as applicable, are notified of such holder's then current address. Claims held by holders whose distributions are returned as undeliverable and who fail to notify the Reorganized Debtors or Creditor Trust, as applicable, of their respective correct addresses within 90 days after such distributions are returned to the Reorganized Debtors or Creditor Trust, as applicable, as undeliverable shall be expunged, after which date all unclaimed property shall revert to the Reorganized Debtors or Creditor Trust, as applicable, free of any restrictions thereon and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Debtors, the Reorganized Debtors, the Creditor Trust or their respective property,

notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Reorganized Debtors or Creditor Trust to attempt to locate any holder of an Allowed Claim.

**11.5   Failure to Negotiate Checks.**

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within 120 days after the date of issuance. Any amounts returned to the Reorganized Debtors or Creditor Trust in respect of such non-negotiated checks shall be held by the Reorganized Debtors or Creditor Trust, as applicable. Requests for reissuance of any such check shall be made directly to the Reorganized Debtors or Creditor Trust, as applicable, by the holder of the Allowed Claim with respect to which such check originally was issued. All amounts represented by any voided check will be held until the later to occur of: (i) nine months after the Effective Date and (ii) nine months after such voided check was issued, and all requests for reissuance by the holder of the Allowed Claim in respect of a voided check are required to be made prior to such date. Thereafter, all such amounts shall revest in the Reorganized Debtors or Creditor Trust, as applicable, free of any restrictions thereon, and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Debtors, the Reorganized Debtors, the Creditor Trust or their respective property.

## ARTICLE XII
## TITLE TO PROPERTY; VESTING OF ASSETS

**12.1   Vesting of Assets.**

Except as provided in this Plan, the Confirmation Order, or the Plan Documents, all property of the Estates shall vest in the Reorganized Debtors on the Effective Date free and clear of all Liens and Claims of all kinds existing before the Effective Date, <u>provided, however,</u> that all assets of the Reorganized Debtors, except for the Collateral securing the Space Coast Truss Secured Claims and Suntree Secured Claims, shall be subject to the senior, perfected Liens granted to the holders of Allowed First Lien Lender Secured Claims, with such Liens being senior to any and all other Liens, Claims and interests. From and after the Effective Date, the Reorganized Debtors may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in this Plan, the Amended Operating Agreement or the Confirmation Order. On the Effective Date, the assets of the Creditor Trust shall be vested, for the benefit of the holders of Allowed General Unsecured Claims, free and clear of all Liens and Claims of all kinds: (i) the Effective Date Cash Payment; (ii) the right to receive the Post Effective Date Cash Payment; (iii) the right to receive the BANS Proceeds Allocation; and (iv) the Transferred Claims.

**12.2   Discharge.**

Except as provided in this Plan or the Confirmation Order, the rights granted under this Plan and the treatment of Claims and Equity Interests under this Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims including any interest accrued on General Unsecured Claims from the Petition Date and termination of all Equity Interests. Except as provided in this Plan or the Confirmation Order, confirmation of this Plan: (a) discharges the Debtors and the Reorganized Debtors from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i), whether or not: (i) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code § 501; (ii) a Claim based on such debt is Allowed under Bankruptcy Code § 502; or (iii) the holder of a Claim based on such debt has accepted this Plan; and (b) terminates all Equity Interests and other rights of Equity Interests in the Debtors except as expressly provided in this Plan. Without limiting the foregoing, the discharge granted under this Plan is granted to the fullest extent allowed under Bankruptcy Code §§ 1141(a), 1141(b), 1141(c), and 1141(d)(1).

**12.3   Injunction.**

*Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is unclassified by this Plan or that is classified by Article IV of this Plan or is subject to a distribution under this Plan, or an Equity Interest or other right of an equity security holder that is canceled or terminated under this Plan are permanently enjoined from taking any of the following actions on account of any such Claims, debts, liabilities, Equity Related Claims, or terminated Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtors or the Reorganized Debtors (including any officer or director or other Person acting as a representative or otherwise on behalf of the Debtors or the Reorganized Debtors); (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, or their respective property; (c) creating, perfecting, or enforcing any Lien or encumbrance against the Debtors, the Reorganized Debtors, or their respective property; (d) asserting a right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, the Reorganized Debtors, or their respective property; and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code. Nothing in this Section 12.3 or elsewhere in this Plan is to be construed or is to have the effect of extinguishing, prohibiting, or otherwise limiting, the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under this Plan.*

**12.4   Releases, Exculpation and Related Matters**

    **A.   Releases by the Debtors.**  Pursuant to Section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, the Debtors, in their individual capacity for and on behalf of their Estates, shall be deemed to forever release, waive, and discharge all Released Parties from all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the Debtors, (ii) the Chapter 11 Cases and the conduct thereof, and (iii) the Plan. The Reorganized Debtors shall be bound, to the same extent the Debtors are bound, by all of the releases set forth in this Section 12.4.A of this Plan. Notwithstanding the foregoing, nothing in this Article 12.4, the Plan, or the Confirmation Order shall release any Transferred Claims or Preserved Litigation Claims.

    **B.   Release by Holders of Certain Impaired Claims.**  *This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against and Equity Interests in the Debtors may have against any of the Released Parties pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019. As of the date on which all payments required to be made by the Debtors or Reorganized Mercedes on account of the Effective Date Cash Payment and the Post Effective Date Cash Payment have been made, in consideration for the distributions and other treatment afforded under this Plan, the obligations of the Debtors and the Reorganized Debtors under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, and REIV's agreement to waive the REIV Deficiency Claim, each holder of a Claim against or Equity Interest in the Debtors shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtors' or the Reorganized Debtors' obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated,*

*fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in this Article 12.4, the Plan, or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct, or any Avoidance Actions or Preserved Litigation Claims.*

C. **First Lien Releases.** *As of the Effective Date, in consideration of the Administrative Agent's, the L/C Issuer's and the First Lien Lenders' willingness to enter into loan documentation for the Senior Credit Facilities and the distributions and obligations of the Debtors made under this Plan, each holder of a Claim against or Equity Interest in the Debtors, exclusive of the First Lien Release Parties, shall be deemed to waive and discharge all claims, demands, causes of action and the like (including, without limitation, Avoidance Actions, and claims regarding the validity, priority, perfection or avoidability of the First Lien Lender Secured Claims (held in any capacity) of the Administrative Agent and the First Lien Lenders (in their capacities as agent or lenders under the First Lien Loan Agreements)), whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, subject to a limited carve-out solely for criminal acts and fraud, against or relating to (i) the First Lien Release Parties; (ii) the Debtor Loan Parties and each of their respective current and former officers, employees, representatives, agents, counsel, advisors and directors (in their capacities as such); provided that this clause (ii) shall not be deemed to release the Debtor Loan Parties or the First Lien Release Parties from any obligations under the Senior Credit Facilities or any other indebtedness owed to a First Lien Lender or any affiliate thereof; or (iii) the trustees for the Employee Stock Purchase Plan of Mercedes Homes, Inc.*

*As of the Effective Date, in consideration of the obligations of the Debtor Loan Parties under the New Loan Documents and this Plan, the Administrative Agent, the L/C Issuer and the First Lien Lenders will release the Debtor Loan Parties and each of their respective current and former officers, employees, representatives, agents, counsel, advisors and directors (in their respective capacities as such) together with the trustees for the Employee Stock Purchase Plan of Mercedes Homes, Inc., from any and all actions, causes of action, claims, demands, damages and liabilities of whatever kind or nature, in law or in equity, now known or unknown, suspected or unsuspected to the extent that any of the foregoing arises from any action or failure to act in connection with the First Lien Loan Agreement and related loan documents on or prior to the Effective Date. This paragraph shall not be deemed to release the Debtor Loan Parties from any obligations under the Senior Credit Facilities or any other indebtedness owed to a First Lien Lender or any affiliate thereof.*

D. **Injunction.** *Confirmation of this Plan shall act as an injunction against any Person commencing or continuing against Reorganized Mercedes, the Reorganized Debtors or any of their assets, any action, employment of process, or act to collect, offset, or recover any Claim or cause of action such Person may possess against any of the Debtors.*

**12.5   Preservation of Insurance.**
The discharge and release from Claims as provided in this Plan, except as necessary to be consistent with this Plan, do not diminish or impair the enforceability of any insurance policy that may cover Claims against a Debtor or any other Person.

## ARTICLE XIII
## PRESERVATION OF LITIGATION CLAIMS

**13.1  Retention and Reservation.**

In accordance with Bankruptcy Code § 1123(b)(3), all Preserved Litigation Claims are retained and reserved for each of the Reorganized Debtors, which are designated as the respective Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Preserved Litigation Claims. In accordance with Bankruptcy Code § 1123(b)(3), all Transferred Claims are retained and reserved for the Creditor Trust, and the Creditor Trustee is designated as the respective Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Transferred Claims.

**13.2  Prosecution.**

The Reorganized Debtors shall have the authority to prosecute, defend, compromise, settle, and otherwise deal with any Preserved Litigation Claims, and each Reorganized Debtor shall do so in its capacity as a representative of the respective Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Reorganized Debtors shall pay the fees and costs associated with litigating the Preserved Litigation Claims in the ordinary course of business. Each Reorganized Debtor shall have sole discretion to determine in its business judgment which Preserved Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements. The Creditor Trustee shall have the authority to prosecute, defend, compromise, settle, and otherwise deal with any Transferred Claims, and the Creditor Trustee shall do so in his capacity as a representative of the respective Estate in accordance with Bankruptcy Code § 1123(b)(3)(B).

## ARTICLE XIV
## CONDITIONS PRECEDENT

**14.1  Conditions to Confirmation.**

The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 14.3 of this Plan:

(a)  The Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to this Plan in form and substance acceptable to the Debtors in their sole and absolute discretion.

(b)  The Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtors, the Administrative Agent, REIV and the Committee.

(c)  The Confirmation Order approves the Releases contained in Article 12.4 of this Plan.

(d)  The Creditor Trust Documents shall be in form and substance acceptable to the Debtors and the Committee.

(e)  The New Loan Documents shall be in form and substance acceptable to the Debtors and the Administrative Agent.

(f)  The Confirmation Order shall provide that the First Lien Lenders shall be granted valid, perfected, senior Liens on all of the Reorganized Debtors' assets, except for any assets that are excluded from such Liens in the New Loan Documents, with such

Liens to be senior to any other Liens, Claims or interests, including any Liens or Claims of creditors asserting mechanics liens or similar operational liens. The Transferred Assets shall be free and clear of all Liens and Claims of every kind, including those of the First Lien Lenders.

**14.2   Conditions to the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 14.3 of this Plan:

(a)   The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption and rejection of unexpired leases and executory contracts by the Debtors as contemplated by Article IX of this Plan.

(b)   The Confirmation Order shall have been entered by the Bankruptcy Court and shall be a Final Order, the Confirmation Date shall have occurred, and no request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

(c)   Each Exhibit, document or agreement to be executed in connection with this Plan shall be in form and substance reasonably acceptable to the Debtors.

**14.3   Waiver of Conditions.**

The Debtors may waive any condition to confirmation or the Effective Date, in whole or in part, upon order of the Bankruptcy Court for cause.

**ARTICLE XV**
**RETENTION OF JURISDICTION**

**15.1   Retention of Jurisdiction.**

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including, among others, the following matters:

(a)   to hear and determine motions for (i) the assumption or rejection or (ii) the assumption and assignment of executory contracts or unexpired leases to which any of the Debtors are a party or with respect to which any of the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid;

(b)   to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests and all controversies and issues arising from or relating to any of the foregoing;

(c)   to ensure that distributions to Allowed Claimholders are accomplished as provided herein;

(d)   to hear and determine any and all objections to the allowance or estimation of Claims and Equity Interests filed, both before and after the Confirmation

Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim or Equity Interest, in whole or in part;

(e) to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

(f) to issue orders in aid of execution, implementation, or consummation of this Plan;

(g) to consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h) to hear and determine all applications for allowance of compensation and reimbursement of Professional Claims under this Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(i) to determine requests for the payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

(j) to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(k) to hear and determine all suits or adversary proceedings to recover assets of any of the Debtors and property of their Estates, wherever located;

(l) to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(m) to enable the Creditor Trustee to prosecute, resolve or otherwise dispose of any of the Transferred Claims or any objections to Claims;

(n) to hear and determine matters or disputes concerning the BANS, including the prosecution or settlement thereof;

(o) to hear and determine matters or disputes arising in connection with the interpretation, implementation or enforcement of the Creditor Trust;

(p) to hear any other matter not inconsistent with the Bankruptcy Code;

(q) to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(r) to enter a final decree closing the Chapter 11 Cases; and

(s) to enforce all orders previously entered by the Bankruptcy Court.

# ARTICLE XVI
## MISCELLANEOUS PROVISIONS

**16.1  Effecting Documents; Further Transactions; Timing**

The Debtors, the Reorganized Debtors, the First Lien Lenders, REIV, the Creditor Trust, and all other parties to the Plan Documents are authorized and directed as of the Effective Date, and without further order of the Bankruptcy Court, to execute, deliver, file, or record all Plan Documents and other contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of this Plan. All transactions required to occur on the Effective Date under the terms of this Plan are deemed to have occurred simultaneously.

**16.2  Exemption from Transfer Taxes**

In accordance with Bankruptcy Code § 1146: (a) the issuance, distribution, transfer and exchange of any of the New Notes, the New Mercedes Common Stock or Creditor Trust Interests; (b) the execution and filing of any deed of trust, security agreement or other document or instrument necessary to create, attach, perfect or record any Lien, mortgage, deed of trust or security interest granted under this Plan; (c) the issuance, distribution, transfer, and exchange of assets or property of the Reorganized Debtors, including, without limitation, all real property owned by the Debtors; (d) the execution, assignment, modification, or recording of any lease or sublease; and (e) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**16.3  Binding Effect**

This Plan is binding on, and inures to the benefit of, the Debtors and the holders of all Claims and Interests, including the holders of Equity Related Claims, and their respective successors and assigns.

**16.4  Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any document entered into in connection with this Plan, the rights, duties and obligations of the Debtors and any other Person arising under this Plan are governed by, and construed and enforced in accordance with, the internal laws of the State of Florida, without giving effect to Florida's choice of law provisions.

**16.5  Modification of Treatment of Claims**

The Reorganized Debtors reserve the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of that Claim at any time after the Effective Date on that holder's prior written consent. Notwithstanding anything herein to the contrary, the Reorganized Debtors may not modify the treatment of any Allowed Claim in any manner which impacts General Unsecured Claims without first obtaining the written consent of the Creditor Trustee.

**16.6  Setoffs and Recoupment**

The Debtors, the Reorganized Debtors and the Creditor Trustee may, but are not required to, set off or recoup against any Claim or Equity Interest and the payments or other distributions to be made under this Plan in respect of such Claim, Claims of any nature that arose before the Petition Date that any Debtor may have against the holder of such Claim or Equity Interest to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the fact of any Claim or Equity

Interest under this Plan becoming Allowed constitutes a waiver or release by any Debtor or the Reorganized Debtors of any such claim that they may have against such holder.

**16.7   Notices**

Any notice required or permitted to be provided under this Plan must be in writing and served by one of the following: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; (c) reputable overnight courier service, freight prepaid; (d) e-mail; or (e) fax; addressed as follows:

To the Debtors:   Attn:   Craig D. Hansen, Esq.
                          Sean T. Cork, Esq.
                  c/o SQUIRE, SANDERS & DEMPSEY, L.L.P.
                  40 North Central Avenue, Suite 2700
                  Phoenix, Arizona 85004
                  Fax:    602.253.8129
                  E-mail: chansen@ssd.com
                          scork@ssd.com

To the First Lien Lenders:   Attn:   David L. Eades, Esq.
                                     Stephen E. Gruendel, Esq.
                             MOORE & VAN ALLEN PLLC
                             100 North Tryon Street, Suite 4700
                             Charlotte, North Carolina 28202-4003
                             Fax:    704.378.1968
                             E-mail: stevegruendel@mvalaw.com
                                     davideades@mvalaw.com

To REIV:   Attn:   Jay M. Sakalo, Esq.
           BILZIN SUMBERG BAENA PRICE & AXELROD LLP
           200 South Biscayne Boulevard, Suite 2500
           Miami, Florida 33131-5340
           Fax:    305.351.2253
           E-mail: jsakalo@bilzin.com

To the Committee:   Attn:   Paul J. Battista, Esq.
                            Glenn D. Moses, Esq.
                    GENOVESE, JOBLOVE & BATTISTA, P.A.
                    Bank of America Tower
                    100 S.E. Second Street, 44th Floor
                    Miami, Florida 33131
                    Fax:    305.349.2310
                    E-Mail: pbattista@gjb-law.com
                            gmoses@gjb-law.com

To the United States Trustee   Attn: Heidi A. Feinman, Esq.
                               OFFICE OF THE UNITED STATES TRUSTEE
                               51 S.W. First Avenue, Suite 1204
                               Miami, Florida 33130
                               E-Mail: heidi.a.feinman@usdoj.gov

**16.8   Delivery of Notices**

If personally delivered, notice is deemed delivered on actual receipt; if faxed or e-mailed in accordance with this Plan, notice is deemed delivered noon of the first Business Day following transmission; if sent by overnight courier in accordance with this Plan, notice is deemed delivered noon of the first Business Day following deposit with such courier; and if sent by U.S. mail in accordance with this Plan, notice is deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service; or, if the addressee fails or refuses to accept delivery, as of the date of that failure or refusal. Any party to this Plan may change its address for the purposes of this Plan by giving notice of the change.

**16.9   Severability**

If the Bankruptcy Court finds this Plan or any provision of this Plan to be invalid, illegal or unenforceable, or if the Bankruptcy Court cannot confirm this Plan under Bankruptcy Code § 1129, the Bankruptcy Court, at the request of the Debtors or the Reorganized Debtors, may retain the power to alter and interpret this Plan or any such provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the provision held to be invalid or unenforceable, and such provision shall then become applicable as altered or interpreted. The Confirmation Order constitutes a judicial determination and provides that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**16.10   Plan Documents**

Notwithstanding anything to the contrary contained in this Plan, including any reference in this Plan to documents in the forms annexed to this Plan as exhibits, the Debtors may revise any Plan Document (a) by filing such revised Plan Document with the Bankruptcy Court more than ten days before the deadline for voting on this Plan, or (b) with the written consent of all parties in interest that are entitled to vote on this Plan and are materially and adversely affected by such revision.

**16.11   Inconsistency**

If any inconsistency between this Plan and the Disclosure Statement exists, the provisions of this Plan govern. If any inconsistency between this Plan and any Plan Document exists, the provisions of the Plan Document govern.

**16.12   Subordination**

The distributions under this Plan take into account the relative priority of each Claim in connection with any contractual subordination provisions relating to such Claim. Accordingly, distributions under this Plan are not and may not be subject to levy, garnishment, attachment, or other legal process by any holder of a Claim or Equity Interest purporting to be entitled to the benefits of such contractual subordination, and all such holders are deemed to have waived all contractual subordination rights they otherwise may have had.

**16.13   Withholding and Reporting Requirements**

In connection with this Plan and all instruments issued in connection with this Plan, the Debtors or the Reorganized Debtors, as the case may be, must comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under this Plan remain subject to any such withholding and reporting requirements. The Debtors and the Reorganized Debtors, as the case may be, may take all actions necessary to comply with such withholding and reporting requirements. Notwithstanding any other provision of this Plan, each holder of an Allowed Claim or Allowed Equity Interest that has received a distribution under this Plan has sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such distribution.

**16.14  Post-Effective Date Fees; Final Decree**

The Reorganized Debtors shall be responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which shall be as soon as practicable after distributions under this Plan have commenced. Notice of application for a final decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

**16.15  De Minimis Distributions**

No distributions of less than $10 shall be made on account of any Claim or Equity Interest. If the holder of an Allowed Claim or Allowed Equity Interest does not receive a distribution owing to the provisions of this Section 16.15 on the Effective Date or any subsequent date, the Allowed Claim or Allowed Equity Interest remains eligible for distributions on the first date set for distributions when such distribution exceeds $10.

**16.16  IRS Circular 230 Notice.**

Any U.S. federal tax descriptions or advice included in this Plan is not intended or written to be used, and cannot be used, to avoid any U.S. federal tax penalties, or to promote, market or recommend to another party any transaction or matter.

**16.17  Method of Payment; Payments, Filings and Notices Only on Business Days**

Payments of Cash under this Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

**16.18  Cooperation.**

Reorganized Debtors or Reorganized Mercedes, as applicable, shall cooperate with the Creditor Trustee in connection with his duties and responsibilities to the Creditor Trust, including in the prosecution of the Transferred Actions and objections to Claims, by providing documents and testimony as reasonably required and requested by the Creditor Trustee.

Dated: July 10, 2009

MERCEDES HOMES, INC., Debtor

By: ___/s/ Keith Buescher___
    Keith Buescher
    Its:  President, Corporate Operations

MERCEDES HOMES OF TEXAS, LTD., Debtor

By: MHI HOLDING COMPANY, LLC
Its: General Partner

By: ___/s/ Keith Buescher___
    Keith Buescher
    Its:  Manager

**MERCEDES HOMES OF THE CAROLINAS, INC., D/B/A MERCEDES HOMES,** Debtor

By: ___/s/ Keith Buescher___
    Keith Buescher
    Its: Vice President

**MERCEDES HOMES OF TEXAS HOLDING CORP.,** Debtor

By: ___/s/ Keith Buescher___
    Keith Buescher
    Its: President

**SPACE COAST TRUSS, INC.,** Debtor

By: ___/s/ Keith Buescher___
    Keith Buescher
    Its: Vice President

**SUNTREE OFFICE COMPLEX, LLC,** Debtor

By: ___/s/ Keith Buescher___
    Keith Buescher
    Its: Manager

**ENGINEERING AND DRAFTING SERVICES, INC.,** Debtor

By: ___/s/ Keith Buescher___
    Keith Buescher
    Its: Vice President

**MHI HOLDING COMPANY, LLC,** Debtor

By: ___/s/ Keith Buescher___
    Keith Buescher
    Its: Manager

**SOLID WALL SYSTEMS, INC.,** Debtor

By: ___/s/ Keith Buescher___
    Keith Buescher
    Its: Vice President

        **MHI BUILDING PRODUCTS, LP**, Debtor

        By:  **MHI HOLDING COMPANY, LLC**
        Its: General Partner

          By:  _/s/ Keith Buescher_
             Keith Buescher
             Its:  Manager

        **DAIRY TOWNS COMMUNITY DEVELOPERS, INC.**, Debtor

        By:  _/s/ Keith Buescher_
          Keith Buescher
         Its:  Vice President

**SQUIRE, SANDERS & DEMPSEY L.L.P.**

By:  _/s/ Craig D. Hansen_
   Craig D. Hansen
   Sean T. Cork
Two Renaissance Square, Suite 2700
40 North Central Avenue
Phoenix, Arizona 85004

and

   Tina M. Talarchyk
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198

Counsel for the Debtors and Debtors-In-Possession