## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * | MDL NO. 2047 |
| | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| WENDY HUBBELL AND CHRISTY CIMO, | * | MAG. WILKINSON |
| | * | |
| Versus | * | |
| | * | 10-2064 |
| TALLOW CREEK, L.L.C., SOUTHERN HOMES, L.L.C., ABC INSURANCE COMPANY, XYZ INSURANCE COMPANY, INTERIOR EXTERIOR BUILDING SUPPLY, LP, INTERIOR EXTERIOR ENTERPRISES, LLC, SOUTH CORTEZ, LLC, GRAF'S DRYWALL, LLC, FIRST FINANCIAL INSURANCE COMPANY, BANKERS INSURANCE COMPANY, WESTERN WORLD INSURANCE COMPANY, AND STATE FARM FIRE AND CASUALTY COMPANY | * * * * * * * * * * * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS

### I.  INTRODUCTION

The question in this case is whether Plaintiffs' homeowners insurance policy with State

Farm covers losses that Plaintiffs allege were caused by the installation in their home of

defective Chinese-manufactured drywall.  As is explained below, Plaintiffs' homeowners policy does not cover any of the alleged losses from defective drywall, and so Plaintiffs' claim against State Farm should be dismissed with prejudice.

**First**, the presence of defective drywall in the dwelling is not an accidental direct physical loss under the policy's insuring agreement.  **Second**, the policy unambiguously excludes losses to the dwelling itself, including drywall, that consist of defective or faulty workmanship, construction, and materials used in construction or repair.  **Third**, the policy unambiguously excludes losses to the dwelling that consist of or are directly and immediately caused by "inherent vice, latent defect," "corrosion" or "contamination," regardless of whether faulty workmanship or materials directly or indirectly cause, contribute to or aggravate any of those conditions.  **Fourth**, the policy only covers losses to personal property that are caused by certain enumerated perils (such as fire, windstorm or hail), none of which applies to Plaintiffs' alleged losses.  Thus, there are no covered losses to the dwelling itself or to personal property within the dwelling.

**Fifth**, the policy does not cover first-party bodily injury at all, and so Plaintiffs' allegation that fumes from the drywall have made them ill is not a covered loss.  **Sixth**, the policy does not cover Plaintiffs' alleged loss of use (such as additional living expenses), because there is no underlying insured loss as is required under the policy.  **Seventh**, Plaintiffs' first-party claim for diminished value is not a covered loss because it is neither an accidental direct physical loss nor is it otherwise covered in the first-party context.  **Finally**, because the policy does not cover any of Plaintiffs' alleged losses, Plaintiffs have no claim as a matter of law for bad faith, failure to adjust and pay a claim, or attorneys' fees.  For these reasons, Plaintiffs' claim against

State Farm should be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. <u>FACTS</u>

In the Petition, Plaintiffs allege that their home was constructed using defective Chinese-manufactured drywall that "emits levels of sulfur, methane and/or other volatile organic chemical compounds that cause corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items," and that the drywall "creates a noxious 'rotten egg-like' odor." (Pet. ¶ 15; *see also id.* ¶ 11.)[1]  Plaintiffs further assert that the allegedly defective drywall in their home "renders the walls to the Property defective," "causes damage to other building elements, such as . . . 'building studs'" (*id.* ¶ 15), "constitutes a major structural defect to load bearing portions of the home" (*id.* ¶ 21), "is not suitable for its intended use, is inherently defective, and causes physical damage . . . to the extent that the home becomes unsafe, unsanitary or is otherwise unlivable." (*Id.* ¶ 16.)  In addition to such property damage, Plaintiffs allege that the drywall in their home has caused them to suffer "allergic reactions, coughing, sinus and throat infections, nose bleeds, eye irritation, respiratory problems and other health concerns." (*Id.* ¶ 15.)

Plaintiffs purchased a homeowners insurance policy (hereinafter "the Policy") from State Farm Fire and Casualty Company to insure their home.  (*See* First Am. Pet., Sec. I.)  A copy of the Policy, numbered 18-E4-4610-1, is attached hereto as Exhibit A.  Policy Coverage A covers certain accidental direct physical losses to the dwelling itself, but excludes loss consisting of faulty workmanship or faulty materials used in construction or repair. (Ex. A at 10–11.)  Likewise, the

---

[1]  Plaintiffs filed their original Petition on August 27, 2009, but such original Petition has never been served on State Farm.  State Farm was served with the First Amended Petition on July 7, 2010, and filed a timely Notice of Removal on July 22, 2010.  (*See* Dkt. 1.)  State Farm obtained a copy of the original Petition and included that pleading as part of Exhibit A to the Notice of Removal.

Policy also excludes a loss to the dwelling "which consists of, or is directly and immediately caused by" such things as "inherent vice, latent defect," "corrosion" or "contamination," regardless of whether faulty workmanship or faulty materials directly or indirectly cause, contribute to or aggravate any of these applicable exclusions. (*Id.* at 9.)

Coverage B under the Policy affords certain coverage for losses to personal property, but only losses caused by sixteen enumerated perils:  (1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling objects; (11) weight of ice, snow or sleet; (12) sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system, etc.; (13) sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, etc.; (14) freezing; (15) sudden and accidental damage to electrical appliances, etc., from change in artificially generated electrical current; and (16) breakage of glass.  (*Id.* at 7–9.)  Coverage C of the Policy, "Loss of Use," provides certain coverage for living expenses, but only when an insured loss causes the residence premises to become uninhabitable. (*Id.* at 4.)

As will be explained below, none of these coverages applies to the losses alleged here.

## III. ARGUMENT AND CITATION OF AUTHORITY

### A.  Legal Standard Applicable to This Motion

The Supreme Court has prescribed a two-step process for evaluating the sufficiency of a complaint:  (1) identify and disregard all legal conclusions in the complaint; and (2) determine whether the remaining factual allegations plausibly suggest the defendant's liability.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n.5 (2007).  This procedure is intended to expose and weed out deficient complaints at the

point of minimum expenditure of time and money by the parties and the district court. *Twombly*, 550 U.S. at 558. In addition, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (*quoting Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

In ruling on a Rule 12(b)(6) motion, the Court may consider documents referred to in the complaint or central to its claims. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998); *see also Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004), *aff'd*, 129 F. App'x 874 (5th Cir. 2005) (unpublished). Here, the Policy is central to the claims alleged against State Farm in the First Amended Petition and is properly considered without converting this motion to dismiss into one for summary judgment. *See, e.g.*, *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007) (approving defendants' attachment of insurance contracts to their motions to dismiss noting that where "the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss") (citation omitted); *cert. denied*, 128 S. Ct. 1230, and *cert. denied*, 128 S. Ct. 1231 (2008).

In ruling on coverage questions, Louisiana courts adhere to the general principle that "[w]hen the language in an insurance contract is clear and unambiguous the agreement must be enforced as written." *Cent. La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991). Furthermore, "[w]ords and phrases used in insurance policies are to be construed in their plain, ordinary and popular sense." *Id.* at 986; *see also Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766, 770 (M.D. La. 2008), *on reconsideration in part*, No. 06-504, 2008 WL 1885326 (M.D. La. Apr. 8, 2008) (unpublished).

**B.**   **The Presence of Defective Drywall in the Dwelling Is Not a "Loss Insured" Under the Policy's Insuring Agreement.**

Although Plaintiffs allege that they have sustained property damage to their home due to the installation of allegedly defective drywall, the presence of defective drywall in the home is not an accidental direct physical loss within the insuring agreement of the Policy.   As to coverage for the dwelling itself, the insuring agreement portion of the Policy provides as follows:

**SECTION I – LOSSES INSURED**

**COVERAGE A – DWELLING**

> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I – LOSSES NOT INSURED**.

(Ex. A at 7.)  Plaintiffs bear the burden of proving that any property damage they have suffered to their dwelling falls within the terms of the Policy's insuring agreement.  *See Davidson v. United Fire & Cas. Co.*, 576 So. 2d 586, 590 (La. App. 1991).

The mere existence of allegedly defective drywall in Plaintiffs' home does not, by itself, constitute an accidental direct physical loss.  In *Trinity Industries, Inc. v. Insurance Co. of North America*, 916 F.2d 267 (5th Cir. 1990), the Fifth Circuit applied Louisiana law to interpret a builder's risk policy that "insure[d] against all risks of physical loss of or damage to the subject matter here insured."  *Id.* at 269.  In that case, the insured sought coverage under its builder's risk policy for an arbitration award rendered against it.  The insured argued that the award was based on the insured's defective workmanship and that such defective workmanship was a risk covered by the policy.

The Fifth Circuit disagreed, holding that the insured's faulty construction itself did not constitute property damage, and thus, the cost of repair did not fall within the coverage of the policy.  *Id.* at 271.  The court reasoned as follows:

> The language "physical loss or damage" strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper. It would not ordinarily be thought to encompass faulty initial construction.

*Id.* at 270–71 (noting interpretation of similar policies "to cover accidents resulting from defective design or workmanship, but not the cost of repairing the defect itself").

The Fifth Circuit's reasoning in *Trinity Industries* applies equally to the alleged presence of defective drywall in Plaintiffs' home. Taking Plaintiffs' allegations as true, when the drywall in their home was supplied, it was "inherently defective" (Pet. ¶ 16)—in other words, from the time the drywall was installed, it was never in "an initial satisfactory state that was changed by some external event into an unsatisfactory state."[2] *Trinity Indus.*, 916 F.2d at 270–71. Therefore, there cannot have been any "accidental direct physical loss" to the drywall itself, as required by the Policy's insuring agreement (Ex. A at 7), and the cost of removing, repairing or replacing the drywall to eliminate the alleged defect is not a covered loss.

Furthermore, as explained below, even if the losses Plaintiffs allegedly experienced from defective drywall fell within the insuring agreement, each one of those alleged losses (including the drywall itself) is specifically and unambiguously excluded under the express terms of the Policy. Accordingly, Plaintiffs have failed to state any claim upon which relief can be granted.

---

[2] *Cf. Travco Ins. Co. v. Ward*, Civ. No. 2:10cv14, 2010 WL 2222255 at *13 (E.D. Va. June 3, 2010) (holding that Chinese drywall in residence is direct physical loss under Travco policy). That particular holding in *Travco* is distinguishable in that the court (a) did not consider the Fifth Circuit's decision in *Trinity Industries*, and (b) did not address the State Farm "Losses Insured" provision that covers "accidental direct physical loss," which has been held to require "an accidental event that results in a direct physical loss that is not otherwise excluded by the policy." *See Maister Assoc. v. State Farm Fire & Cas. Co.*, Civil Action No. 06-0589, 2009 WL 926981, at *3 (E.D. La. March 31, 2009).

C.      **The Alleged Loss to the Dwelling, Including Drywall, Is Excluded Under the Policy.**

Although Plaintiffs allege that they have sustained property damage to their dwelling resulting from the installation of allegedly defective drywall, the Policy contains several exclusions that preclude coverage for the losses alleged.  Specifically, the purported loss to the dwelling itself, including drywall, is expressly excluded from coverage by the faulty workmanship and faulty materials exclusions.  (Ex. A at 10–11.)  The Policy also excludes loss to the dwelling "which consists of, or is directly and immediately caused by" such things as "inherent vice, latent defect," "corrosion" or "contamination," regardless of whether faulty workmanship or materials directly or indirectly cause, contribute to or aggravate any of these applicable exclusions.  (*Id.* at 9–10.)  Those exclusions dispose of Plaintiffs' claims for damages to the dwelling.

1.      **The Faulty or Defective Workmanship, Construction and Materials Exclusions Apply.**

The Policy excludes losses to the dwelling itself, including drywall, that consist of faulty workmanship or construction, or defective or faulty materials used in construction or repair.  The operative Policy language is as follows:

**SECTION I – LOSSES NOT INSURED**

. . .

      3.      We do not insure under any coverage for any loss consisting of one or more of the items below.  Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following:   (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

. . .

      b.      *defect, weakness, inadequacy, fault or unsoundness in*:

. . .

> (2) design, specifications, workmanship, *construction*, grading, compaction; [or]
>
> (3) *materials used in construction or repair*; . . .
>
> . . .
>
> of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**;
>
> . . .
>
> However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

(Ex. A at 9–11 (italics added).)

Courts considering faulty workmanship or materials exclusions have found these clauses unambiguous under Louisiana law.  In *Alton Ochsner Medical Foundation v. Allendale Mutual Insurance Co.*, 219 F.3d 501 (5th Cir. 2000), the Fifth Circuit considered an insured's claim that defective workmanship caused cracking in the foundation of an office tower under construction. The insured attempted to distinguish the faulty workmanship from the property damage that ensued.  Applying Louisiana law, the court described "faulty workmanship" as "'a defect in the way some part of the (insured property) is constructed.'  In other words, '[i]t is the *quality of the product* which is excluded from coverage, and not damage *to* the product caused by negligence during the construction process.'"  *Id.* at 506 (quoting *U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.*, 690 F.2d 459, 463 (5th Cir. 1982)).

To demonstrate the distinction between the quality of the product and negligent damage to the product, the *Alton Ochsner* court gave the example of an employee negligently driving a truck into an office tower, knocking it over.  Such a loss would be covered, the court reasoned, because it "would not bear directly on the *quality* of the product (the tower) but would cause damage *to* it."  *Id.*  The Fifth Circuit also has "noted the importance of an event 'extraneous' to the construction process bringing about the loss" in explaining the distinction between faulty

workmanship, which is excluded, and covered property damage. *Id.* at 507 (quoting *U.S. Indus.*, 690 F.2d at 462). Thus, when the insured sought to recover the costs of repairing the cracking in the building's foundation to restore the structural integrity, the court held that the exclusion applied and that the damage was not covered. In so doing, the court stated, "we must remain mindful that the policy does not cover the costs of 'making good' defective construction." *Id.*

Likewise, in *Holland v. Breaux*, No. Civ. A. 04-3028, 2005 WL 3542899, at *1 (E.D. La. Nov. 22, 2005) (unpublished), the court applied Louisiana law and held that a homeowners insurance policy did not cover cracking, sagging, and rotting damage to a home resulting from "faulty planning, construction and maintenance," which included the improper use of untreated lumber. *See also Morgan v. Auto Club Family Ins. Co.*, 04-1562, pp. 3, 5 (La. App. 3 Cir. 4/6/05); 899 So. 2d 135, 137 (faulty workmanship in installing new roof was excluded from coverage).[3]

In this case, Plaintiffs have alleged that defective drywall in their home has caused them property damage and that the "inherently defective drywall" was "not suitable for its intended use" (Pet. ¶ 16), and "constitutes a major structural defect." (*Id.* ¶ 21; *see also, e.g.*, *id.* ¶¶ 19 ("defective materials" and "defect in the builder's workmanship or materials"), 31 ("inferior product, not fit for ordinary use"), 41 (drywall "has a defect that renders [it] useless"), 43 ("inferior drywall"), 47–48 ("badness of workmanship").) On virtually identical facts, another federal court recently held that a faulty materials and construction exclusion in a homeowners

---

[3]   On facts distinguishable from this case, one court held that this exclusion did not apply to *unauthorized* work done on an insured's home. *See Husband v. Lafayette Ins. Co.*, 93-815, p. 5 (La. App. 5 Cir. 3/16/94); 635 So. 2d 309, 311. The court held that to fall within the exclusion, the work must be performed by the insured or by someone authorized by the insured. Because the tenant undertook to alter the home without authorization and in violation of the lease, the court opined that the exclusion did not apply. Even if one accepts the limited exception articulated by the *Husband* court, the rationale does not apply here, because Plaintiffs allege that their home was built in the first instance with allegedly defective drywall. (*See* Pet. ¶ 12.)

policy precluded coverage of loss to a plaintiff's residence caused by Chinese-manufactured drywall. *See Travco Ins. Co. v. Ward*, Civ. No. 2:10cv14, 2010 WL 2222255, at *13 (E.D. Va. June 3, 2010). In so ruling, the *Travco* court found that "[a]lthough the Drywall has not collapsed or is otherwise physically deteriorated, it is certainly not serving its purpose as a component of a livable residence." *Id.*[4] And one cannot help but observe that, consistent with the *Travco* decision, this Court already has found that Chinese-manufactured drywall similar to the drywall in Plaintiffs' home "is *different from typical benign drywall*" based on its chemical make-up and off-gassing, corrosive properties.[5] Findings of Fact & Conclusions of Law p. 16, *In re: Chinese-Manufactured Drywall Prod. Liab. Litig.*, MDL No. 2047, Dkt. 2713 (E.D. La. Apr. 27, 2010) (relates to *Hernandez v. Knauf GIPS KG, et al.*, Case No. 09-6050) (hereinafter referred to as ("*Hernandez*").

Applying the analyses of the *Alton Ochsner*, *Holland*, and *Travco* decisions to this case, even if the Court accepts that the use of defective drywall in the construction of Plaintiffs' home constitutes direct physical loss (which State Farm disputes), that loss still falls squarely within

---

[4] The *Travco* court is the first federal court anywhere to have analyzed whether losses from defective Chinese drywall are covered under a homeowners insurance policy. No appellate court in Louisiana has addressed this question. Recently, two Louisiana trial courts considered this issue and reached different conclusions. *See Ross v. C. Adams Constr. & Design, L.L.C.*, No. 676-185 (24th Jud. Dist. Ct., Jefferson Parish, Apr. 14, 2010) (granting summary judgment in favor of homeowners insurer); *Finger v. Audubon Ins. Co.*, No. 09-8071 (Civ. Dist. Ct., Orleans Parish, Mar. 22, 2010) (holding that exclusions did not bar coverage for drywall-related losses).

[5] The Court is "entitled to take judicial notice in the present case of the evidence that [it has] heard and the findings that [it has] made as part of the trial over which [it] presided." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 240 (5th Cir. 1997). Furthermore, "[a] court may take judicial notice of related proceedings and records in cases before the same court." *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985); *see also Cadle Co. v. Pratt*, Civil Action No. 3:06-CV-257-L, 2007 WL 824117, at *3 n.1 (N.D. Tex. Mar. 16, 2007) (taking judicial notice of findings of fact in a related prior case). State Farm cites *Hernandez* only for the undisputed facts set forth herein, and even those findings are not prerequisites for a favorable ruling on the pending motion. State Farm expressly does not adopt disputed conclusions, such as the appropriate scope of remediation or repair, which are not at issue in this motion.

the exclusions for faulty workmanship and materials.  Put simply, the Policy does not cover property damage consisting of faulty or defective workmanship or construction, or faulty or defective materials used in construction and repair.

**2.     The Latent Defect, Corrosion, and Contamination Exclusions Apply.**

The operative Policy language is as follows:

**SECTION I – LOSSES NOT INSURED**

1.     We do not insure for any loss to the property described in Coverage A which ***consists of, or is directly and immediately caused by***, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

g.     wear, tear, marring, scratching, deterioration, inherent vice, ***latent defect*** or mechanical breakdown;

h.     ***corrosion***, electrolysis or rust;

. . .

j.     ***contamination***;

. . .

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

(Ex. A at 9–10 (emphasis added).)

**a.     The Latent Defect Exclusion Applies.**

The Policy does not cover a loss to the dwelling ***consisting of or caused by a latent defect***.  Louisiana courts have defined "latent defect" to be "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal."  *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328, 335 (La. App. 1984) (quoting *Walker v. Travelers Indem. Co.*, 289 So. 2d 864, 870 (La. App. 1974)).  The *Nida* court considered a homeowner's insurance claim for a loss caused by an improper preparation of his

home's foundation for the type of soil on which it was built.  The natural shrinking and swelling of the soil caused damage to the foundation and to the rest of the home.  In addition to an "earth movement" exclusion, the court applied the definition of "latent defect" set forth above and agreed with the insurer that the poorly constructed foundation was a latent defect, which was excluded from coverage.  *Id.*  In doing so, the court specifically noted that the homeowner insurer "was not a guarantor of the constructor's building performance."  *Id.*

In this case, the Policy's "latent defect" exclusion is unambiguous.  Plaintiffs' allegations make clear that the alleged defect in the drywall was latent.  Indeed, Plaintiffs allege that they moved into their home in June 2006 (*see* Pet. ¶ 10) but did not discover that purportedly defective drywall was used in the construction of the home until June 2009.  (*See id.* ¶ 12; *see also id.* ¶ 44 ("The defect and/or vice i[n] the Property existed at the time of sale, and was not apparent to the Petitioners.").)

Plaintiffs allege that the drywall in their home "is not suitable for its intended use, is inherently defective," and "affect[s] the function of the walls and partitions" of the home.  (*Id.* ¶ 16; *see also, e.g.*, *id.* ¶¶ 15 (drywall "renders the walls to the Property defective"), 21 ("presence of inferior drywall in the home constitutes a major structural defect to load bearing portions of the home"), 43 ("use of inferior drywall in the home constitutes a defect and/or vice in the Property").)  These allegations are consistent with this Court's findings that defective Chinese-manufactured drywall "is different from typical benign drywall."  *Hernandez*, at 16.  Moreover, the *Travco* court held that a similar latent-defect exclusion applied to bar coverage of the drywall-related losses to the plaintiff's home, finding that the residence in that case "suffers from defects 'that . . . are integral to the damaged property's design or manufacture or construction.'"  *See Travco*, 2010 WL 2222255, at *11 (quoting *U.S. West v. Aetna Cas. & Sur.*

*Co.*, 117 F.3d 1415 (4th Cir. July 16, 1997) (unpub. table op.)).   The latent defect exclusion

applies to Plaintiffs' alleged losses.

**b.**      **The Corrosion Exclusion Applies.**

The Policy also excludes losses to the dwelling ***consisting of or caused by corrosion***.

(Ex. A at 9.)  Plaintiffs allege in the Petition that the drywall in their home "emits levels of sulfur,

methane and/or other volatile organic chemical compounds that cause corrosion of HVAC coils and

refrigerator units, certain electrical wiring and plumbing components, and other household items."

(Pet. ¶ 15.)   And this Court has found that Chinese-manufactured drywall creates a corrosive

environment.  *See Hernandez*, at 17 ("evidence is conclusive that the corrosion in the Hernandez

home was proximately caused by exposure to Chinese drywall"), 21 (sulfuric gases from the

drywall "have corroded the wires in the electrical system"), 22 (wiring in home "demonstrates

corrosion indicative of the most severe corrosive environment").   To the extent Plaintiffs seek

recovery from State Farm for such losses to their home, those losses are excluded by the

corrosion exclusion.

First, in the context of Chinese-manufactured drywall, the *Travco* court held that a

similar exclusion applied to bar coverage for drywall-related corrosion.  *See* 2010 WL 2222255,

at *14–*15.   Furthermore, the Louisiana Supreme Court has upheld the application of a

"corrosion" exclusion.  *See Cent. La. Elec. Co. [CLECO] v. Westinghouse Elec. Corp.*, 579 So.

2d 981 (La. 1991).  The boiler and machinery insurance policy in *CLECO* provided coverage for

"loss or damage to property of the Insured directly caused by [an] accident to an Object . . . ."

*Id.* at 984.  After an accident occurred damaging several blades in a turbine (causing damages

within the deductible), the insured had the remaining blades inspected and discovered that they

exhibited signs of "corrosion pitting" and cracks resulting from corrosion.  *Id.* at 983.  The

insured replaced all of the blades and sought indemnity from its insurer for the corrosion-

14

damaged blades.  The court held that the corrosion of the blades was not an "accident," which was defined as "any sudden or accidental occurrence . . . ; but Accident shall not mean . . . corrosion."  *Id.* at 984.  Putting aside the blades that were undisputedly damaged by the first "accident," the court found that the later-discovered damage to the remaining blades was not covered by the policy because corrosion was explicitly excluded from the definition of "accident."  *Id.*

The same principle applies here.  Any claim that the dwelling has been damaged because the drywall allegedly emits sulfuric gases that corrode metal wiring, piping, or other features of the dwelling, is barred by the corrosion exclusion.

### c.     The Contamination Exclusion Applies.

The Policy also excludes loss to the dwelling that ***consists of or is caused by contamination***.  (Ex. A at 9.)  A similar contamination exclusion was at issue in *Barry Concrete v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766 (M.D. La. 2008).  In that case, a load of concrete aggregate was transported by the insured in a truck that contained sugar from a prior load, and the left-over sugar prevented the concrete from curing or hardening when poured.  The insurer argued that the cargo policy would not cover any potential liability to the third-party buyer, because the loss resulted from "contamination," which was excluded.  The court held that contamination "is commonly understood to mean: 'to make unfit for use by introduction of unwholesome or undesirable elements' or 'to soil, stain, or infect by contact or association.'"  *Id.* at 770.  Applying that definition, the court held that the alleged losses fell squarely within the contamination exclusion and so were not covered.  *Id.*; *see also Am. Cas. Co. of Reading, Pa. v. Myrick*, 304 F.2d 179, 183–84 (5th Cir. 1962) (applying contamination exclusion to bar coverage for damage to foodstuffs rendered worthless by contact with escaped ammonia gas).

As was the case in *Barry Concrete*, the Policy's contamination exclusion is unambiguous. Allegations that "unwholesome or undesirable elements" in the drywall—such as "sulfur, methane and/or other volatile organic chemical compounds" (Pet. ¶ 15; *see also id.* ¶ 16 (drywall has caused the home to "become[] unsafe, unsanitary or . . . otherwise unlivable"), ¶ 29 ("contaminated drywall"))—are causing damage to the dwelling fall squarely within the contamination exclusion. *See also Hernandez*, at 13 (finding home to be "contaminated"), 16 (Chinese-manufactured drywall at issue "has a significantly higher concentration of strontium and more detectible levels of elemental sulfur, and it releases odious sulfur gases which are corrosive to metals").  Such losses are not covered under Plaintiffs' homeowners policy.

> **d.**    **The Latent Defect, Corrosion and Contamination Exclusions Apply Even if Latent Defect, Corrosion and Contamination Are Alleged to Have Been Caused by Faulty or Defective Workmanship, Construction or Materials.**

To the extent that Plaintiffs might argue that fault or defect in the workmanship or materials (*i.e.*, the drywall) used in the construction of the dwelling caused latent defect, corrosion, or contamination of property other than the drywall itself, those alleged losses also would be excluded by the plain language of the Policy.  The policy unambiguously excludes losses consisting of or caused by latent defect, corrosion and contamination (Ex. A at 9), even if faulty or defective workmanship, construction or materials "directly or indirectly cause, contribute to or aggravate" the latent defect, corrosion and contamination.  (*Id.* at 10.)

Even were Plaintiffs to argue that corrosion and contamination of items other than the drywall are "resulting losses" from the defective drywall, they would not be covered under the plain language of the Policy.  The "resulting loss" clause of Section I – Losses Not Insured states that, "we do insure for any resulting loss from items a., b., and c., **unless the resulting loss is itself a Loss Not Insured by this Section**."  (*Id.* at 11 (emphasis added).)  Because corrosion

and contamination each is a "Loss Not Insured" by Section 1, corrosion and contamination are not covered resulting losses.  Thus, the Policy does not cover property damage consisting of or caused by latent defect, corrosion, or contamination, even if those losses were allegedly caused by faulty or defective workmanship or construction, or faulty or defective materials used in construction and repair.[6]

**D.   Alleged Losses to Plaintiffs' Personal Property Are Not Covered, Because They Were Not Caused by an Enumerated Peril.**

To the extent that Plaintiffs intend to pursue coverage under the Policy for damage to any personal property—that is, any contents of their home that are "not permanently attached to or otherwise forming a part of the realty" (Ex. A at 3)—such losses are not within the terms of the insuring agreement and so are not covered.

The Policy provides certain coverage for personal property under Coverage B.  However, personal property is insured against loss only from those perils specifically enumerated in the Policy.  (*Id.* at 7–8; *see also, e.g.*, *Arias-Benn*, 495 F.3d at 230–32 (applying Louisiana law, recognizing that personal property loss was restricted to perils listed in policy under Coverage B).)   There are sixteen enumerated perils under Coverage B, Personal Property:  (1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism or malicious mischief; (9) theft; (10) falling objects; (11) weight of ice, snow or sleet; (12) sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system, etc.; (13) sudden and

---

[6]  In addition, the losses alleged by Plaintiffs are not "resulting losses" at all.  As stated by the court in *Travco*, "[t]he Chinese Drywall released reduced sulfur gases which harmed [the homeowner], members of his family, and items of personal property inside the . . . Residence.  Although this damage occurred gradually over a period of time, it still represents a single discrete loss from a single discrete injury, namely the off-gassing of defective Chinese Drywall."  *Travco*, 2010 WL 2222255, at *19 (citing cases).

accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, etc.; (14) freezing; (15) sudden and accidental damage to electrical appliances, etc., from change in artificially generated electrical current; and (16) breakage of glass.  (Ex. A at 7–8.)

None of these enumerated perils even arguably applies to the losses alleged in the Petition.  This means that, as a matter of law, there is no coverage under the Policy for the losses to personal property alleged in the Petition.

### E.        The Policy Does Not Cover Bodily Injury to Plaintiffs Themselves.

Plaintiffs allege that they have suffered medical illnesses, purportedly caused by the presence of defective drywall in their home.  (*See, e.g.*, Pet. ¶¶ 15, 18.)  The Policy, however, does not cover bodily injury to Plaintiffs themselves (in contrast to liability coverage for bodily injury to third-parties).  The Policy provides the following coverage for bodily injury:

**SECTION II – LIABILITY COVERAGES**

**COVERAGE L – PERSONAL LIABILITY**

If a claim is made or a suit is brought *against an **insured*** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1.        pay up to our limit of liability for the damages *for which the **insured** is legally liable . . . .*

**COVERAGE M – MEDICAL PAYMENT TO OTHERS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. . . .

(Ex. A at 15 (italics added).)

**SECTION II – EXCLUSIONS**

1.        Coverage L and Coverage M do not apply to:

. . .

h.        **bodily injury** to *you or any **insured*** within the meaning of part a. or b. of the definition of **insured**.

(*Id.* at 16–17 (italics added).)  "Insured" is defined by the Policy as follows:

**DEFINITIONS**

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

. . .

4.  "**insured**" means you and, if residents of your household:

    a.  your relatives; and

    b.  any other person under the age of 21 who is in the care of a person described above.

(*Id.* at 1.)

Thus, the Policy only provides coverage for "bodily injury" suffered by individuals who are unrelated to those insured by the Policy—in other words, where Plaintiffs become liable to *others* for bodily injury. Under the clear terms of the Policy, therefore, any illness Plaintiffs— who are insureds—claim to have suffered from drywall fumes is not a covered loss.

**F.    Because There Is No "Loss Insured" to the "Residence Premises," There Is No Coverage for Loss of Use or Other Consequential Damages.**

Plaintiffs allege that they have suffered "[c]ost of relocation during the remedial process" (Pet. ¶ 18), and seek damages for "inconvenience [and] additional living expenses." (*Id.*, Prayer for Relief.) Such items are not covered under the Policy unless there is an underlying covered loss to the dwelling itself. The operative Policy language is as follows:

**COVERAGE C – LOSS OF USE**

1.  **Additional Living Expense**. When a *Loss Insured* causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. . . .

(Ex. A at 4 (italics added).)

Coverage for loss of use, including living expenses, is expressly conditioned on an underlying loss to the residence premises *that is otherwise insured* under the Policy. As explained above, Plaintiffs have not sustained a *Loss Insured* to the residence premises.

Accordingly, Plaintiffs' claims for loss of use, living expenses, and rental income are not covered, as a matter of law.

### G.     The Policy Does Not Cover First-Party Diminished Value Claims.

Plaintiffs also have alleged that they have suffered "[s]ubstantial diminution in the value of the Property." (Pet. ¶ 18; *see also id.*, Prayer for Relief.)  This claim fails as a matter of law for two reasons.  First, diminished value is not an "accidental direct physical loss" under the Policy's insuring agreement (Ex. A at 7), because diminished value by its nature is a purely economic loss, not a physical loss.  *See* 10A Lee R. Russ, *et al.*, *Couch on Insurance* § 148:46 (3d ed. 2005 & Supp. 2009) (citations omitted).

Second, absent a specific policy term providing coverage for diminished value, Louisiana courts have held that first-party diminished value is not a covered loss:

> [C]ases recognizing diminished value as an item of damage also involve third party liability claims based on the basic tort principle set forth in La. C.C. art. 2315. . . . Allowing damages for diminution in value, when such damages are established, fulfills the tortfeasor's obligation to "make whole" his victim.
>
> In contrast, the obligation between State Farm and Townsend is contractual.  State Farm's obligation to indemnify Townsend when a first-party claim is submitted due to a collision is limited by the terms of the contract.  It is not governed by tort principles.  Bootstrapping the standards for measuring damages when property is damaged through the fault of another to the contractual coverage provided by an insurer for first-party collision claims would result in a new contract, one enlarged beyond what is reasonably contemplated by the clear terms set forth therein, and would ignore the principle that insurance companies may limit coverage so long as such limitations do not conflict with statutory provisions or public policy.

*Townsend v. State Farm Mut. Auto. Ins. Co.*, 34,901-CA, p. 11 (La. App. 2 Cir. 8/22/01); 793 So. 2d 473, 479–80 (holding that diminished value is not covered by automobile policy) *writ denied* 804 So. 2d 634 (La. 2001) (citations and footnotes omitted); *see also Campbell v. Markel Am. Ins. Co.*, 2000 CA 1448, pp. 6–8, 18 (La. App. 1 Cir. 9/21/01); 822 So. 2d 617, 621–23, 628 (same).

Like the plaintiffs in *Townsend* and *Campbell*, Plaintiffs' coverage claim is strictly a first-party insurance contract claim. And as in those cases, nowhere in the Policy is there any provision of coverage for diminished value. Under the rule of *Townsend* and *Campbell*, Plaintiffs' claim for diminished value under the Policy should be dismissed with prejudice.

### H.  Because Plaintiffs Have Failed to State a Claim for Coverage Under the Policy, Their Claims of Bad Faith Adjusting, Breach of Duty of Good Faith and Fair Dealing, and Misrepresentation of Policy Provisions Also Fail.

The Petition asserts claims under La. R.S. §§ 22:1892 and 22:1973, and La. Civil Code Arts. 1994 and 1997, alleging that State Farm breached its duty to adjust Plaintiffs' claim in good faith, breached its duty of good faith and fair dealing, and misrepresented provisions of the Policy. (*See* First Am. Pet., ¶¶ 60a–60k.)

As explained above, the Policy does not cover any of Plaintiffs' alleged losses. As a matter of law, when an insurer shows that no coverage exists, the insured has no claim for bad faith, attorneys' fees or costs. *See, e.g.*, *Block v. St. Paul Fire & Marine Ins. Co.*, 32,306-CA, p. 9 (La. App. 2 Cir. 9/22/99); 742 So. 2d 746, 754 ("Since R.S. 22:1220 and 22:658[7] are not applicable when an insurer has a reasonable basis to defend the claim, and that defense was presented in good faith, the assessment of attorney fees and statutory penalties is inappropriate . . . . Obviously, since St. Paul ultimately prevailed on this issue [application of an exclusion], its defense was meritorious."); *see also Kodrin v. State Farm Fire & Cas. Co.*, 314 F. App'x 671, 679–80 (5th Cir. 2009) (insurer entitled to judgment as a matter of law on plaintiffs' claims of bad faith where insurer reasonably denied coverage based on "'serious dispute as to the nature of the loss, thus leaving the question of coverage in doubt'") (quoting *Icklone v. Travelers Indem.*

---

[7] Sections 22:658 and 22:1220 have been renumbered to 22:1892 and 22:1973, respectively. *See* 2008 La. Acts 415 (approved June 21, 2008).

*Co.*, 345 So. 2d 202, 203 (La. App. 1977)).  Since there has been no wrongful denial of coverage, Plaintiffs' "derivative" claims should be dismissed with prejudice.

## CONCLUSION

Plaintiffs' alleged losses consisting of or resulting from allegedly defective drywall are not covered under their State Farm homeowners policy.  For these reasons, Plaintiffs' claim against State Farm should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

This 29th day of July, 2010.

/s/ Adrianne L. Baumgartner
**ADRIANNE L. BAUMGARTNER, T.A. (#2861)**
**DARRIN M. O'CONNOR (#24582)**
**EMILY S. MORRISON  (#18351**)
PORTEOUS, HAINKEL & JOHNSON, LLP
408 North Columbia Street
Covington, Louisiana  70434
Telephone: (985) 893-4790
abaumgartner@phjlaw.com
doconnor@phjlaw.com
emorrison@phjlaw.com

**CHARLES L. CHASSAIGNAC (#20746)**
PORTEOUS, HAINKEL & JOHNSON, LLP
343 Third Street, Suite 202
Baton Rouge, Louisiana  70801-1309
Telephone: (225) 383-8900
cchassaignac@phjlaw.com

**JAMES R. NIESET, JR. (#24856)**
PORTEOUS, HAINKEL & JOHNSON, LLP
704 Carondelet Street
New Orleans, LA 70130
Telephone: (504) 581-3838
jnieset@phjlaw.com

 **Attorneys for State Farm Fire and Casualty Company**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum in Support of Rule 12 (b) (6) Motion to Dismiss Petition for Damages of Defendant State Farm Fire and Casualty Company has been served upon counsel for Plaintiffs Wendy Hubbell and Christy Cimo, counsel for Defendants' Interior Exterior Building Supply, LP; Interior Exterior Enterprises, LLC; South Cortez, LLC; Graf's Drywall LLC; Tallow Creek LLC; and Southern Homes, LLC through Lexis/Nexis File and Serve and upon counsel for Defendants' First Financial Insurance Company, Western World Insurance Company and Bankers Insurance Company by U.S. mail and e-mail pending counsels' registration with Lexis/Nexis File & Serve and upon Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel Kerry Miller by U.S. Mail and email <u>or</u> by hand-delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on the 29th day of July, 2010.

/s/ Adrianne L. Baumgartner
**ADRIANNE L. BAUMGARTNER**