## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | **MDL NO. 2047** |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | **JUDGE FALLON** |
| ———————————————— | ) | |
| This document relates to: | ) | |
| | ) | **MAG. JUDGE WILKINSON** |
| *John B. Blue and Rachelle Blue* | ) | |
| *v. Auto Club Family Insurance* | ) | |
| *Company* | ) | |
| Case No. 2:10-CV-792 | ) | |
| ———————————————— | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT, AUTO CLUB FAMILY INSURANCE COMPANY'S, RULE 12(b)(6) MOTION TO DISMISS

Plaintiffs, John B. Blue and Rachelle Blue, submit this Opposition to Defendant, Auto Club Family Insurance Company's ("Auto Club"), Rule 12(b)(6) Motion to Dismiss. Defendant's arguments in support of its Motion to Dismiss rely on the language of its insurance policy which Defendant interprets as not providing coverage for Plaintiffs' alleged damage. As discussed more fully below, the pleadings demonstrate that Plaintiffs stated a claim for relief against Defendant, such that Defendant's Motion to Dismiss must be denied.

## I.    BACKGROUND

Plaintiffs brought this action against their homeowners insurer after Defendant denied Plaintiffs' insurance claim arising out of damage to Plaintiffs' home caused by the presence of Chinese manufactured drywall in Plaintiffs' home. As set forth in Plaintiffs' Petition, Plaintiffs

purchased a homeowners insurance policy from Defendant, providing coverage for Plaintiffs' home. (Petition, ¶4)  In the Spring of 2009, Plaintiffs discovered that their home was constructed using Chinese manufactured drywall which caused and continues to cause damage to their home insured by Defendant. (*Id.*, ¶6)  Plaintiffs notified Defendant of their damage and loss to their covered property caused by the drywall, as required by the policy. (*Id.*, ¶8)  Defendant subsequently denied Plaintiffs' claim, and Plainitffs initiated this litigation, seeking the bargained-for indemnity under their homeowners policy to which they are entitled, as well as penalties and damages for Defendant's bad faith denial of their claim.

While Plaintiffs maintain that, on the merits, Defendant's policy exclusion affirmative defenses do not apply to the facts and circumstances surrounding Plaintiffs' claim, for purposes of its Motion to Dismiss, the pleadings demonstrate that Plaintiffs have properly pled a covered loss, and no policy exclusions are apparent on the face of Plaintiffs' allegations.  As discussed more fully below, Defendant's Motion to Dismiss should be denied.

## II.   ARGUMENT

### A.   Legal Standard for Rule 12(b)(6) Motion to Dismiss

The heavy burden needed to sustain a motion to dismiss is well known, as is the fact that motions to dismiss are viewed with disfavor and are rarely granted. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999); *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780, 788 (E.D. La. 2010).  Here, this heavy burden belongs to Defendant, and it has failed to meet it.

"The purpose of a motion to dismiss, pursuant to FRCP 12(b)(6) is to test the sufficiency of the complaint, not to judge the merits of the case." *First Nat'l Bank of Louisville v. Lustig*, 809

F.Supp. 444, 446 (E.D.La.1992).  In considering a motion to dismiss, the court must accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 285 (5th Cir. 1993).  All ambiguities or doubts regarding the sufficiency of the claim must be resolved in favor of the plaintiff.  *Whetstone v. Jefferson Parish Public School Board*, 2010 WL 1936210 (E.D. La. 5/12/10).  Any reasonable inferences that may be drawn from the complaint are also accepted as true. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face".  *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 788.

Plaintiffs agree with Defendant that the insurance policy at issue in this litigation can be considered by the Court for purposes of Defendant's Motion for Judgment on the Pleadings. *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).  The policy is central to Plaintiffs' claims and is referred to in Plaintiffs' Petition; therefore, it is part of the pleadings.

However, while the policy is properly considered as part of the pleadings for the purpose of Defendant's Motion to Dismiss, the policy exclusions raised by Defendant constitute affirmative defenses, which should not be considered at this stage in the litigation.  An exception to this rule is if a successful affirmative defense appears on the face of plaintiff's complaint. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1357 (3d ed. 2010); *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, that

defense must appear on the face of the complaint."); *see also Builders Mutual Ins. Co. v. Dragas Management Corp.*, 2010 WL 2813397 (E.D. Va. 7/15/10) (considering motion to dismiss by CGL carrier in Chinese drywall declaratory judgment action regarding coverage and finding that the court only needed address whether counterclaim adequately pled facts to support an "occurrence" under the policy, as the "Total Pollution Exclusion" is an affirmative defense to coverage that is not addressed at this time).  As discussed below, the exclusions raised by Defendant should not be considered at this time, as they constitute affirmative defenses not apparent on the face of Plaintiffs' Petition

### B.    Plaintiffs Have Triggered Coverage and Alleged a Covered Loss

The insuring agreement in Plaintiffs' policy states, "We insure against risk of direct physical loss to property described in Coverage A." (Defendant's Motion, Ex. A, p.16)  Coverage A is the dwelling coverage in the policy.  Plaintiffs allege in their Petition that "their home was constructed using Chinese manufactured drywall, which caused and continues to cause physical loss and damage to Plaintiffs' home and contents." (Petition, ¶6)  Plaintiffs' allegations must be taken as true for purposes of this Motion; therefore, Plaintiffs have alleged a direct, physical loss to covered property.

Plaintiffs have the initial burden of establishing that their claim is a direct physical loss to covered property.  Plaintiffs have met this burden, as they have alleged the Chinese manufactured drywall caused physical loss and damage to their home and contents.[1] (Petition, ¶6)  Specifically, Plaintiffs alleged that the "Chinese drywall emits odorous gases that cause corrosion of air-

---

[1]Plaintiffs believe their allegations relating to their damage are satisfactory and meet the requirements of Rule 8.  However, if the Court requires more specificity as to the nature of Plaintiffs' loss and damage, Plaintiffs requests permission to amend their Petition to elaborate on their claim for damage or loss under the policy.

conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items." (Petition, ¶6)  The burden then shifts to Defendant to establish what portions, if any, of the damage was caused by an excluded peril or perils as defined by the policy. *Blackburn v. National Union Fire Ins. Co. of Pittsburgh*, 2000-2668 (La. 2001), 784 So.2d 637, 641; *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 1/21/09); *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 1/8/09).  Plaintiffs have sufficiently alleged a covered loss under the policy and have therefore stated a claim.  Defendant's Motion to Dismiss should be denied.[2]

### C.      Defendant's Policy Language Defense Does Not Support Its Motion

In support of its Motion to Dismiss, Defendant relies solely on the language of its policy, arguing that its policy does not provide coverage for Plaintiffs' claim arising from the presence of Chinese manufactured drywall in Plaintiffs' home.  Defendant raises five specific provisions and/or exclusions in its policy that it contends defeats coverage for Plaintiffs' claim.  As discussed below, Plaintiffs' claim is not excluded by these policy provisions.  Defendant has failed to carry its burden, and its Motion must be denied.

### 1.      The faulty materials exclusion does not bar Plaintiffs' claim.

As its first affirmative defense, Defendant argues that its policy does not provide coverage for Plaintiffs' claim, as it excludes loss or damage caused by faulty building materials.  The pertinent language in Defendant's policy relating to the faulty materials exclusion provides as follows:

---

[2]As noted above, the remainder of Defendant's arguments in support of its Motion are affirmative defenses and should not be considered in the context of Defendant's Motion for Judgment on the Pleadings.  The legal analysis should end here, with the conclusion that Plaintiffs' Petition contains sufficient allegations of coverage under the policy.

> We do not insure for loss to property described in Coverage A caused by any of the following.  However, any ensuing loss to property described in Coverage A not precluded by any other provision in this policy covered.
>
> \* \* \*
>
> c.  **Faulty, inadequate or defective:**
>
> \* \* \*
>
> (3)    Materials used in repair, construction, renovation or remodeling;
>
> \* \* \*
>
> of part or all of any property whether on or off the **residence premises**.

(Defendant's Motion, Ex. A, pp.50-51)

With respect to the drywall itself, Defendant has not met its burden of proof that this exclusion is applicable.  The terms "faulty", "inadequate" and "defective" are not defined in Defendant's policy; thus, they are interpreted according to their ordinary meaning.  According to Merriam-Webster's online dictionary, "faulty" means "marked by fault or defect." Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/faulty.  "Inadequate" means "not adequate" or "insufficient".  Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/inadequate.  "Defective" means "imperfect in form or function" or "falling below the norm in structure or in mental or physical function". Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/defective.  Defendant has not shown that the drywall at issue is faulty, inadequate or defective, as defined above, and there are no such allegations on the face of Plaintiffs' Petition.

Indeed, the drywall in Plaintiffs' home was performing the purpose of drywall, *i.e.*, serving as a finishing material, holding paint and art, providing fire protection, providing sound and heat insulation. *See In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780, 798 (E.D. La. 2010) (in discussing the application of the economic loss rule and analogizing the facts in the Chinese drywall litigation to those of asbestos cases, the Court stated, "[t]he Chinese

6

drywall has been installed in numerous homes and in each instance is functioning as drywall.").  The damage caused by the drywall was based on a quality of the drywall distinct from these roles.[3]

There is nothing on the face of Plaintiffs' Petition to support an application of the faulty materials exclusion.  Defendant's Motion should be denied.

## 2.    The latent defect exclusion does not bar Plaintiffs' claim.

For one of its affirmative defenses, Defendant argues that its policy does not provide coverage for Plaintiffs' claim, as it excludes loss or damage caused by a latent defect.  The pertinent language in Defendant's policy relating to the latent defect exclusion provides as follows:

> We do not insure, however, for loss:
>             * * *
>   2.  Caused by:
>             * * *
>     (E)  Any of the following:
>             * * *
>       (1)   Wear and tear, marring, deterioration;
>       (2)   Inherent vice, latent defect, mechanical breakdown;
>             * * *
> Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or expected in this policy is covered.

(Defendant's Motion, Ex. A, p. 45)

The burden of proof to establish that this exclusion applies is on Defendant. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364.  Further, policies should be construed to effect, not deny, coverage. *Yount v. Maisano*, 627 So.2d 148, 151 (La. 1993).  Any ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

It should be noted that the term "latent defect" is not defined in Defendant's policy.  "Latent"

---

[3]Defendant again relies heavily on *Travco* and cases from other jurisdictions interpreting and applying a faulty materials exclusion using law other than Louisiana law, in non-homeowner insurance policies and in different context, *i.e.*, motions for summary judgment or judgment following trial.

is defined as "present and capable of becoming though not now visible, obvious, active, or symptomatic". Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/latent. There is no evidence that the problems with the Chinese manufactured drywall were latent, as the term is commonly understood.[4] The Chinese manufactured drywall was emitting the sulfurous compounds from the time of its installation in Plaintiffs' home. There are no allegations of latency or of a defect in Plaintiffs' Petition. Plaintiffs simply alleged that they discovered that their home was constructed using Chinese manufactured drywall in the Spring of 2009, and that the drywall caused and continues to cause physical loss and damage to their home. (Petition, ¶6)

The insurance industry has defined the latent defect or inherent vice exclusion as "a quality within an object which makes it tend to destroy Itself." WILLIAM H. RODDA, FIRE AND PROPERTY INSURANCE 298 (Prentice-Hall, Inc. 1956). For example, the tendency of rubber to destroy itself whether or not it is in use is an inherent vice. *Id.* The Fire, Casualty and Surety (FC&S) Bulletin noted that the inherent vice or latent defect exclusion applies to "a loss due to any quality in the property that causes property to damage or destroy itself that results from something within the property itself as opposed to some outside force." FC&S Online, Processors Coverage Form, Insurance Services Office Non-filed IM Coverage, December 2005, http://www.nationalunderwriterpc.com.

The exclusion originated in maritime law and speaks to the reasonable expectations of the parties to the contract.

---

[4]Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. La. C.C. art. 2047; *Peterson v. Schimek*, 729 So.2d 1024, 1028-1029 (La. 1999).

> The underwriter is not liable for that loss or deterioration which arises solely from a principle of decay or corruption in the subject insured, or, as the phrase is, from its proper vice; as when fruit becomes rotten, or flour heats, or wine turns sour, not from external damage, but entirely from internal decomposition.

ARNOULD ON MARINE INSURANCE (11th ed) §778.

First party policies typically exclude damages due to an inherent vice or latent defect in order to prevent the insurer from having to compensate the insured for property that "has its own shelf life and will eventually wear out or break down because of intrinsic quality or nature."  Eugene Wollan, *Risks Not Taken*, JOHN LINER REVIEW 86, (Fall 2006).  This exclusion is meant to apply to maintenance type damage claims or claims that relate to the property itself breaking down in some way, or to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction.  *See Employers Cas. Co. v. Holm*, 393 S.W. 2d 363 (Tex. Civ. App. Houston 1965).  The loss excluded by this exclusion is an expected loss, for which property insurance does not apply.

Here, there is no evidence that the Chinese drywall that is installed in Plaintiffs' home is damaging or destroying itself.  Plaintiffs' Petition certainly does not contain any such allegations.  Plaintiffs' claim relates to the damage to their home caused by the Chinese manufactured drywall, which was an unexpected risk. (*See* Petition, ¶6).  Plaintiffs' loss or damage, as alleged in Plaintiffs' Petition, was not caused by a latent defect within the meaning of the above-quoted provision.  The damage to Plaintiffs' air conditioner, for example, was not caused by a latent defect in the air conditioner, or in the drywall, or in the home.  Defendant can cite to no allegations made by Plainitffs to the contrary.  The same is true for Plaintiffs'  refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items that have been damaged.  Plaintiffs' loss was

9

unexpected, fortuitous and extraneous – the type of event for which Plainitffs purchased insurance

coverage.  There is nothing on the face of Plaintiffs' Petition to support an application of the latent

defect exclusion.  Defendant's Motion should be denied.[5]

**3.    The corrosion exclusion does not bar Plaintiffs' claim.**

The next affirmative defense Defendant points to in support of its Motion is the corrosion

exclusion.  The pertinent language in Defendant's policy relating to the corrosion exclusion provides

as follows:

> We do not insure, however, for loss:
>          * * *
>  2. Caused by:
>          * * *
>   (E)  Any of the following:
>          * * *
>    (3)   Smog, rust or other corrosion, mold, wet or dry rot;
>          * * *
> Under items 1. and 2., any ensuing loss to property described in Coverages
> A and B not excluded or expected in this policy is covered.

(Defendant's Motion, Ex. A, p. 45)

As with any exclusion, the burden of proof to establish that this exclusion applies is on

Defendant. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364.

Further, policies should be construed to effect, not deny, coverage. *Yount*, 627 So.2d at 151.  Any

---

[5]In support of its argument that its latent defect exclusion supports its Motion to
Dismiss, Defendant cites a number of cases – none that are binding on this Court.
Notably, none of these cases found the latent defect exclusion to be applicable to a
claim on a motion to dismiss, and many discuss the term "latent defect" in a context
other than the latent defect exclusion in a homeowners insurance policy. *See, e.g.,
Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328 (La. App. 3d Cir. 1984) (discussing
latent defect on appeal following judgment); *Harris v. Bardwell*, 373 So.2d 777 (La. App.
2d Cir. 1979) (discussing latent defect in the context of a tort and redhibition claim);
*Travco Inc. Co. v. Ward*, 2010 WL 2222255 (E.D. Va. June 3, 2010) (construing
exclusions in accordance with Virginia law on a motion for summary judgment).

ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

Defendant argues that Plaintiffs' loss is loss caused by corrosion. As an initial matter, the exclusion speaks to loss "caused by" corrosion. Here, the damage is not caused by corrosion. The damage is caused by the compounds being emitted from the drywall. This distinction has been recognized by at least one Louisiana court.[6]

In *Trus Joint MacMillan v. Neeb Kearney and Co., Inc.*, 2000 WL 306654, *2 (E.D. La. 3/23/00), the plaintiff contracted with defendant to store plaintiffs' steel bedplates in a warehouse. While the bedplates were in the warehouse, they became wet due to standing water and suffered extensive damages. Plaintiff filed a claim with the warehouse's insurer, who claimed the deterioration exclusion excluded coverage due to the corrosion, which read, "we do not pay for loss caused by contamination or deterioration, including corrosion." Finding coverage for the loss, the court stated as follows:

> Clearly, however, the exclusion is designed to apply where corrosion is the *cause* of property damage. It is not designed to preclude coverage when rust is the damage itself, as opposed to the cause of damage. Even if there were some ambiguity about the meaning of this exclusion, for purposes of summary judgment any doubts should be resolved against the exclusion.

*Id*. at *2. The same is true of Plaintiffs' claim.

Moreover, as discussed above with respect to the latent defect exclusion, these exclusions were meant to apply to maintenance-type losses, such as the expected and natural occurrence of

---

[6]Notably, the cases cited by Defendant were decided at the summary judgment stage of the litigation, not the pleadings stage like Defendant's Motion. Moreover, these cases are not binding on this Court and/or are generally distinguishable, as well. *See, e.g., Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-664, 2005 Ohio App. LEXIS 981, at *17 (Ohio Ct. App. Mar. 8, 2005) (applying Ohio law and affirming application of a rust and corrosion exclusion in a builder's risk policy where parties stipulated that the cause of the loss was rust and corrosion).

corrosion, which causes damage to property over time.[7]  The exclusion was not meant to apply to the unexpected, fortuitous event of drywall emitting compounds that react with various metals ,chosen for their corrosive resistivity, to cause corrosion.  In the *Hernandez* ruling, this Honorable Court stated that with regard to silver and copper, "[t]hese metals are selected because they generally resist corrosion." *In re: Chinese-Manufactured Drywall Products Liability Litigation MDL No. 2047, Hernandez v. Knauf Gips KG, et al., case no. 09-6050,* Document 2713*,* Findings of Fact & Conclusions of Law, p. 16.  The reaction causing damage to Plaintiffs' home is a sulfidation reaction which occurs rapidly and begins immediately upon exposure of the metal to the sulfurous compounds and moisture.  The types of damages excluded under the "corrosion"exclusion are damages that occur naturally, are expected, and take years to substantiate into actual damage. Because the sulfidation reaction caused by the sulfurous compounds emitted by the Chinese manufactured drywall in Plaintiffs' home is wholly different from the type of oxidation reaction which occurs naturally to copper and silver over many years, the damages to Plaintiffs' home caused by the sulfidation reaction are unanticipated and wholly outside of the scope of this exclusion.

There are no allegations in Plaintiffs' Petition that their loss or damage was "caused by" corrosion.  Plainitffs alleges that their damage was caused by Chinese manufactured drywall. (Petition, ¶6).  Further, the damages to Plaintiffs' home are outside the scope of the "corrosion" exclusion and are, instead, completely unanticipated and uncontemplated by the language of the "corrosion" exclusion.  Plaintiffs have pled no facts which cause their claims to fall within the realm

---

[7]While not binding on this Court, one of Defendant's cases acknowledges the interpretation of these exclusions as relating to maintenance type losses.  *See Heban v. Auto-Owners, Inc.*, 2003 WL 21862170 (Ohio Ct. App. Aug. 8, 2003) (affirming the exclusion of damage caused by insured's own improper storage and maintenance as maintenance type corrosion under the policy).

of the "corrosion" exclusion.  Defendant cannot meet its burden, and it Motion should be denied.

   **4.     The pollution exclusion does not bar Plaintiffs' claim.**

   As another affirmative defense supporting its Motion, Defendant cites the pollution exclusion

in its policy.  The pertinent language in Defendant's policy relating to the pollution exclusion

provides as follows:

> We do not insure, however, for loss:
>                                 *   *   *
>    2.  Caused by:
>                                 *   *   *
>       (E)  Any of the following:
>                                 *   *   *
>          (3)  Discharge, dispersal, seepage, migration, release or escape
>               of pollutants unless the discharge, dispersal, seepage,
>               migration, release or escape is itself caused by a Peril
>               Insured Against named under Coverage C of this policy.
>
>               Pollutants means any solid, liquid, gaseous or thermal
>               irritant or contaminant, including smoke, vapor, soot,
>               fumes, acids, alkalis, chemicals and waste.  Waste includes
>               materials to be recycled, reconditioned or reclaimed.
>
>                                 *   *   *
>    Under items 1. and 2., any ensuing loss to property described in Coverages
>    A and B not excluded or expected in this policy is covered.

 (Defendant's Motion, Ex. A, pp. 45-46)

   The pollution exclusion will not operate to deny coverage in Louisiana.  In *Doerr v. Mobil

Oil Corp.*, 00-0947 (La. 12/19/00), 774 So. 2d 119, 127 Chief Justice Calogero examined the history

of the pollution exclusion in insurance contracts to conclude that "there is no history in the

development of the exclusion to suggest it was ever intended to apply to anyone other than an active

polluter of the environment."  The Court found that a literal interpretation of the pollution exclusion

would lead to absurd results, and that the pollution exclusion is designed to exclude coverage for

environmental pollution only and not for all interactions with irritants or contaminants of any kind.

13

*Id.* at 135.  *See also Thompson v. Temple*, 580 So.2d 1133 (La. App. 4 Cir. 1991) (pollution exclusions are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time; finding that the pollution exclusion clause in a homeowner's policy does not operate to exclude injuries caused by a leaking gas heater); *West v. Board of Commissioners of the Port of New Orleans*, 591 So.2d 1358 (La. App. 4 Cir. 1991) (finding that the pollution exclusion is applicable to polluters - those who indifferently pollute the environment - and not those who only incidentally possess the pollutant in the course of their other business; application of the exclusion is a question of fact for the finder of fact).

The Louisiana Supreme Court provided three considerations for determining whether a "total pollution exclusion" in a commercial liability policy will preclude coverage:

1.     Whether the insured is a "polluter" within the meaning of the exclusion;

2.     Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and

3.     Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

*Id*. at 135-136.

Applying these considerations to this case in the homeowner context confirms the inapplicability of the pollution exclusion.

With respect to the first factor - whether Plaintiffs are "polluters" - the Court noted that this fact-based conclusion should be made with consideration of a variety of factors, such as the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, or whether the insured should have known from reading the exclusion that a separate policy covering pollution damages would be necessary

14

for the insured's business. *Doerr*, 774 So.2d at 135.  Obviously, Plaintiffs are not "polluters".

Whether the substance is a "pollutant" is also a fact-based conclusion, which according to

the Louisiana Supreme Court involves the following analysis:

> [T]he determination of whether the injury-causing substance is a "pollutant" is also
> a fact-based conclusion that should encompass a wide variety of factors . . . .
> Consequently, when making this determination, the trier of fact should consider the
> nature of the injury-causing substance, its typical usage, the quantity of the discharge,
> whether the substance was being used for its intended purpose when the injury took
> place, whether the substance is one that would be viewed as a pollutant as the term
> is generally understood, and any other factor the trier of fact deems relevant to that
> conclusion.

*Id.* at 136.

These factors are the result of long-standing policy and case law finding that the term

"pollutant" is often too broadly interpreted and subject to abuse in the claims handling process.  For

example, the Louisiana Commissioner of Insurance has described this State's ongoing concern over

the broad interpretation of a qualifying "pollutant" under the exclusion:

> We are concerned that the broad definition given the term "pollutant" creates an
> opportunity for abuse. This is a particular concern as regards commercial enterprises
> whose ongoing business activities do not present a risk to the environment.  For
> example, we have found instances where it has been argued that any thing and/or
> matter that harms a person, whether or not it has toxic or hazardous properties is, de
> facto an irritant and therefore a pollutant, thereby triggering the pollution
> exclusion…The appropriate use of the pollution exclusion in claims handling is an
> issue of grave concern.

(Advisory Letter Number 97-01, Commissioner of Insurance, State of Louisiana (June 4, 1997)).

The "pollutant" at issue here is contained within drywall – a material not known to commonly

contain any dangerous substances.

As for the final consideration, whether there was a discharge or seepage of the alleged

pollutant, the Louisiana Supreme Court identified the inquiry as follows:

15

Finally, the determination of whether there was "discharge, dispersal, seepage, migration, release or escape" is likewise a fact-based conclusion that must result after a consideration of all relevant circumstances. Specifically, the trier of fact should consider whether the pollutant was intentionally or negligently charged, the amount of the injury-causing substance discharged, whether the actions of the alleged polluter were active or passive, and any other factor the trier of fact deems relevant. These factual conclusions should be made to assist a court in determining whether the total pollution exclusion in any particular case will exclude coverage for a claim.

*Id.* at 135-136. Defendant cannot reasonably contend that there was an intentional discharge, as Plainitffs had no knowledge that the drywall was anything other than drywall. Further, the amount of the discharge – while possibly significant to the homeowner – is likely not of an amount that would be dangerous to an entire community.

Defendant argues that *Doerr* is inapplicable to this case, as it relates to the pollution exclusion in the context of a CGL policy. Instead, Defendant cites to a number of cases in other jurisdictions, none of which are binding on this Court, for the proposition that its pollution exclusion should be enforced in the context of a homeowners policy. Notably, the majority of cases cited by Defendant are CGL or liability policies, not homeowner policies, and these cases also do not decide the application of the pollution exclusion at the pleadings stage, as Defendant seeks here. *See Wakefield Pork, Inc. v. RAM Mutl Ins. Co.*, 731 N.W.2d 154, 161 (Minn. App. 2007) (addressing liability coverage on a summary judgment motion); *Board of Regents v. Royal Ins. Co.*, 517 N.W.2d 288, 892 (Minn. 1994) (construing exclusion of a CGL policy for purposes of summary judgment motion); *Great Northern Ins. Co. v. Benjamin Franklin Fed. Sav & Loan Ass'n*, 793 F.Supp. 259 (D. Or. 1990) (property and liability policy construed in the context of a Rule 52 judgment); and *Brown v. Am. Motorist Ins. Co.*, 930 F.Supp. 207, 208-209 (E.D. Pa. 1996) (homeowners policy construed in context of a motion for summary judgment).

16

Defendant ignores the detailed discussion and analysis of the Louisiana Supreme Court in *Doerr* and asks this Court to ignore it, as well.  Further, Defendant ignores a relevant Louisiana case discussing a similar pollution exclusion in the context of a homeowners policy, although, again, in the context of a summary judgment motion.

In *Thompson v. Temple*, 580 So.2d 1133 (La. App. 4 Cir. 1991) plaintiffs were "overcome" by carbon monoxide gas which allegedly leaked from a bathroom heater.  Allstate filed a motion for summary judgment on the issue of coverage invoking the "pollution exclusion."   The court held that "[p]ollution exclusion clauses are intended to exclude coverage for active industrial pollutants over extended periods of time."  *Id.* at 1135 (citations omitted).  Not being able to find any case law directly on point, the court looked to the intent of the industry in placing these clauses into the policy:

> It seems that the intent of the insurance industry in adding pollution exclusion clauses to their policies was to exclude coverage for entities which knowingly pollute the environment over a substantial period of time.  That situation is totally different from a leaking gas heater within the home.  It is unlikely that the insurance industry intended such an exclusion clause to apply to this situation.  We find that, on the basis of the parties, a pollution exclusion clause in a homeowner's insurance policy does not operate to exclude injuries caused by a leaking gas heater.

*Id.*  The appellate court affirmed the trial court's denial of the motion for summary judgment.

Plaintiffs' Petition merely alleges that the drywall emits "odorous gases that cause corrosion." (Petition, ¶6).  The fact-based determination of the application of the pollution exclusion cannot be made in Defendant's Motion for Judgment on the Pleadings, and certainly not on the basis of this simple allegation.  Defendant's Motion should be denied.

5.    **Ensuing Loss**

17

Notably absent from discussion in Defendant's Motion is the ensuing loss provision of the policy, which restores coverage for ensuing losses not otherwise excluded by the policy. The latent defect exclusion, the corrosion exclusion and the pollution exclusion contain a clause providing that "any ensuing loss to property described in Coverages A not precluded by any other provision in this policy is covered." (Defendant's Motion, Ex. A, pp.45-46) The faulty materials exclusion contains a similar provision (Defendant's Motion, Ex. A, pp.50-51)

The FC&S Bulletin noted that any ensuing loss "as a result of the faulty drywall would be covered, for example if the drywall caused corrosion damage to wires or pipes." FC&S Online, Chinese Drywall, June 2009, http://www.nationalunderwriterpc.com. The FC&S Bulletin regarding Chinese drywall states that there "is coverage for ensuing losses from faulty workmanship." FC&S Online, Chinese Drywall: The Next Big Issue September 2009, http://www.nationalunderwriterpc.com.

Louisiana courts have applied the ensuing loss provision and allowed coverage for damages resulting from a previous excluded loss. *See, e.g., Dawson Farms, L.L.C. v. Millers Mutual Fire Insurance Co.*, 34, 801 (La. App. 2nd Cir. 8/1/01), 794 So.2d 949, 952 (faulty design and/or workmanship exclusion did not exclude damages due to the resulting loss, therefore the insured was entitled to coverage for losses associated with the damages to the contents of the building); *Lake Charles Harbor & Terminal District v. Imperial Casualty & Indemnity Co.*, 857 F.2d 286, 288 (5th Cir. 1988) (policy excluded damages caused by a mechanical or machinery breakdown but covered losses due to ensuing perils, indicating damages caused by the mechanical breakdown were covered under the policy); *Holden v. Connex-Metalna*, 2000 WL 1876338, *7-8 (E.D. La. 12/12/00) (court

permitted the insured to recover damages based on the ensuing loss exception to the exclusion for machinery breakdown and faulty workmanship).

In *Holden*, the court found that the faulty workmanship exclusion applied to the specific components of a crane which were identified as being faulty but found coverage for the damage caused by the crane when it fell, including the loss of the crane itself, pursuant to the ensuing loss provision of the property policy.  *Holden*, 2000 WL 1876338.

> The exclusions at issue here are designed to ensure that the property insurers do not become warrantors of the crane's quality.  As such, the property policies do not cover worn or broken parts, pay for repairs when a mechanical system or process breaks down, or fix a design problem.  In this case, to the extent that there was a flaw or defect in the quality of the crane it would have been that the boom and trolley were significantly heavier than intended in the design of the unloader.  Thus had it remained standing, any of the exclusions, if applicable, would have barred from coverage any costs to rebalance or redesign the crane.  However, in this case, the unbalance triggered a series of ensuing events that lead to the complete destruction of the crane and other property….All damages caused by the falling crane, including the total loss of the crane itself are excepted under the "ensuing loss" proviso.

*Id*. at *8-9.   Here, there is a distinct separation between what Defendant argues is the excluded loss, the Chinese drywall itself, and the ensuing losses, which are the damages caused by the compounds that the Chinese drywall emits.  Defendant's Motion should be denied.

## D.    Plaintiffs' Personal Property Claims

Plaintiffs recognize that the policy provides coverage for personal property only if the loss to that personal property was caused by a listed peril.  The listed perils do not include the cause of Plaintiffs' loss; accordingly, Plaintiffs agree that the policy provides no coverage for the loss or damage to their personal property.

## E.    Plaintiffs' Personal Injury Claims

19

Plaintiffs recognize that the policy provides coverage for personal injury only to third parties. Because neither Plaintiffs nor their children are third parties, Plaintiffs agree that the policy provides no coverage for personal injury.

### F.   Plaintiffs' Loss of Use Claims

Plaintiffs agree with Defendants that loss of use, including living expenses, is conditioned upon an underlying loss covered by the insurance policy. Plaintiffs made a claim for a covered loss and were and are entitled to coverage for loss of use, including living expenses. Defendant's Motion should be denied.

### G.   Plaintiffs Have Stated a Claim for Bad Faith

The validity of Plaintiffs' bad faith claims rests on whether or not Plaintiffs have alleged a claim for coverage under the policy. As set forth above, Plaintiffs have sufficiently stated a claim for coverage under the policy; therefore, Plaintiffs have also properly alleged a bad faith claim.

## III.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion to Dismiss.

Respectfully submitted,
Dated: August 2, 2010

/s/ Russ M. Herman
Russ M. Herman, Esq.
Leonard A. Davis, Esq.
Stephen J. Herman, Esq.
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
   Matthews, Martinez, Gonzales,
   Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400

21

Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020   bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055   Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com


Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com


Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com


**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Defendants'
Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same
to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was
electronically filed with the Clerk of Court of the United States District Court for the Eastern District
of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in
accordance with the procedures established in MDL 2047 on this 2nd day of August, 2010.


/s/  Leonard  A.  Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com

23