# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: CHINESE-MANUFACTURED** | ) | **MDL NO. 2047** |
| **DRYWALL PRODUCTS LIABILITY** | ) | |
| **LITIGATION** | ) | **JUDGE FALLON** |
| ————————————————— | ) | |
| **This document relates to:** | ) | |
| | ) | **MAG. JUDGE WILKINSON** |
| ***James H. Galloway, Jr. v. Property*** | ) | |
| ***& Casualty Ins. Co. of Hartford*** | ) | |
| **Case No. 10-CV-688** | ) | |
| ————————————————— | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT, PROPERTY & CASUALTY COMPANY OF HARTFORD'S, MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff, James Galloway, Jr., submits this Opposition to Defendant, Property & Casualty Company of Hartford's, Motion for Judgment on the Pleadings pursuant to Rule 12(c). Defendant's arguments in support of its Motion for Judgment on the Pleadings rely on the language of its insurance policy which Defendant interprets as not providing coverage for Plaintiff's alleged damage. As discussed more fully below, the pleadings demonstrate that Plaintiff stated a claim for relief against Defendant, such that Defendant's Motion for Judgment on the Pleadings must be denied.

## I.      BACKGROUND

Plaintiff brought this action against its homeowners insurer after Defendant denied Plaintiff's insurance claim arising out of damage to Plaintiff's home caused by the presence of Chinese manufactured drywall in Plaintiff's home. As set forth in Plaintiff's Petition, Plaintiff purchased a

1

homeowners insurance policy from Defendant, providing coverage for Plaintiff's home. (Petition, ¶4)  In the Spring of 2009, Plaintiff discovered his home was constructed using Chinese manufactured drywall which caused and continues to cause damage to his home insured by Defendant. (*Id.*, ¶6)  Plaintiff notified Defendant of his damage and loss to his covered property caused by the drywall, as required by the policy. (*Id.*, ¶11)  Defendant subsequently denied Plaintiff's claim, and Plaintiff initiated this litigation, seeking the bargained-for indemnity under his homeowners policy to which he is entitled, as well as penalties and damages for Defendant's bad faith denial of his claim.

While Plaintiff maintains that, on the merits, Defendant's policy exclusion affirmative defenses do not apply to the facts and circumstances surrounding Plaintiff's claim, for purposes of its Motion for Judgment on the Pleadings, the pleadings demonstrate that Plaintiff has properly pled a covered loss, and no policy exclusions are apparent on the face of Plaintiff's allegations.  As discussed more fully below, Defendant's Motion for Judgment on the Pleadings should be denied.

## II.   ARGUMENT

### A.   Legal Standard for Rule 12(c) Motion for Judgment on the Pleadings

The heavy burden needed to sustain a motion to dismiss is the same burden Defendant must bear for its Motion to Judgment on the Pleadings. *Matthews v. International House of Pancakes, Inc.*, 597 F.Supp.2d 663, 669 (E.D. La. 2009).  Defendant has failed to meet this heavy burden here.

"The purpose of a motion to dismiss, pursuant to FRCP 12(b)(6) is to test the sufficiency of the complaint, not to judge the merits of the case." *First Nat'l Bank of Louisville v. Lustig*, 809 F.Supp. 444, 446 (E.D.La.1992).  In considering a motion to dismiss, the court must accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff.

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 285 (5th Cir. 1993). All ambiguities or doubts regarding the sufficiency of the claim must be resolved in favor of the plaintiff. *Whetstone v. Jefferson Parish Public School Board*, 2010 WL 1936210 (E.D. La. 5/12/10). Any reasonable inferences that may be drawn from the complaint are also accepted as true. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face". *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780, 788 (E.D. La. 2010).

Plaintiff agrees with Defendant that the insurance policy at issue in this litigation can be considered by the Court for purposes of Defendant's Motion for Judgment on the Pleadings. *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000). The policy is central to Plaintiff's claims and is referred to in Plaintiff's Petition; therefore, it is part of the pleadings.

However, allegations from the Omnibus Class Action Complaint, *Amato v. Liberty Mutual Ins. Co.*, *et al.*, No. 10-932 (E.D. La.), referenced and relied upon by Defendant in its Motion, are not part of the pleadings and are not properly considered in conjunction with Defendant's Motion. Defendant's attempts to attribute allegations made in such other pleadings to Plaintiff for purposes of testing the sufficiency of Plaintiff's allegations in the present action should be rejected. At issue here is whether Plaintiff has properly pled a claim against Defendant in this case.

Moreover, while the policy is properly considered as part of the pleadings for the purpose of Defendant's Motion for Judgment on the Pleadings, the policy exclusions raised by Defendant constitute affirmative defenses, which should not be considered at this stage in the litigation. An exception to this rule is if a successful affirmative defense appears on the face of plaintiff's

complaint. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1357 (3d ed. 2010); *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."); *see also Builders Mutual Ins. Co. v. Dragas Management Corp.*, 2010 WL 2813397 (E.D. Va. 7/15/10) (considering motion to dismiss by CGL carrier in Chinese drywall declaratory judgment action regarding coverage and finding that the court only needed address whether counterclaim adequately pled facts to support an "occurrence" under the policy, as the "Total Pollution Exclusion" is an affirmative defense to coverage that is not addressed at this time).  As discussed below, the exclusions raised by Defendant should not be considered at this time, as they constitute affirmative defenses not apparent on the face of Plaintiff's Petition.

### B.    Plaintiff Has Triggered Coverage and Alleged a Covered Loss to Dwelling.

The insuring agreement in Plaintiff's policy states, "We insure against risk of direct physical loss to property described in Coverage A." (Defendant's Motion, Ex. A, p.16)  Coverage A is the dwelling coverage in the policy.  Plaintiff alleges in his Petition that "his home was constructed using Chinese manufactured drywall, which caused and continues to cause physical loss and damage to Plaintiff's home and contents." (Petition, ¶6)  Plaintiff's allegations must be taken as true for purposes of this Motion; therefore, Plaintiff has alleged a direct, physical loss to covered property.

Plaintiff has the initial burden of establishing that his claim is a direct physical loss to covered property.  Plaintiff has met this burden, as he has alleged the Chinese manufactured drywall

caused physical loss and damage to his home and contents.[1] (Petition, ¶6)  Specifically, Plaintiff alleged that the "Chinese drywall emits odorous gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items." (Petition, ¶7)  The burden then shifts to Defendant to establish what portions, if any, of the damage was caused by an excluded peril or perils as defined by the policy. *Blackburn v. National Union Fire Ins. Co. of Pittsburgh*, 2000-2668 (La. 2001), 784 So.2d 637, 641; *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 1/21/09); *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 1/8/09).  Plaintiff has sufficiently alleged a covered loss under the policy and has therefore stated a claim.  Defendant's Motion for Judgment on the Pleadings should be denied.[2]

### C.  Defendant's Policy Language Defense Does Not Support Its Motion

In support of its Motion for Judgment on the Pleadings, Defendant relies solely on the language of its policy, arguing that its policy does not provide coverage for Plaintiff's claim arising from the presence of Chinese manufactured drywall in Plaintiff's home.  Defendant raises five specific provisions and/or exclusions in its policy that it contends defeat coverage for Plaintiff's claim.  As discussed below, Plaintiff's claim is not excluded by these policy provisions.  Defendant has failed to carry its burden, and its Motion must be denied.

---

[1]Plaintiff believes his allegations relating to his damage are satisfactory and meet the requirements of Rule 8.  However, if the Court requires more specificity as to the nature of Plaintiff's loss and damage, Plaintiff requests permission to amend his Petition to elaborate on his claim for damage or loss under the policy.

[2]As noted above, the remainder of Defendant's arguments in support of its Motion are affirmative defenses and should not be considered in the context of Defendant's Motion for Judgment on the Pleadings.  The legal analysis should end here, with the conclusion that Plaintiff's Petition contains sufficient allegations of coverage under the policy.

### 1.    The latent defect exclusion does not bar Plaintiff's claim

For one of its affirmative defenses, Defendant argues that its policy does not provide coverage for Plaintiff's claim, as it excludes loss or damage caused by a latent defect. The pertinent language in Defendant's policy relating to the latent defect exclusion provides as follows:

> 2.  We do not insure, however, for loss:
> * * *
> c.  caused by:
> * * *
> (6)  Any of the following:
> * * *
> (b)  Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
> * * *
> Under 2.b. and c. above, any ensuing loss to property described in Coverage A not precluded by any other provision in this policy is covered.

(Defendant's Motion, Ex. A, pp.16-17)

The burden of proof to establish that this exclusion applies is on Defendant. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364. Further, policies should be construed to effect, not deny, coverage. *Yount v. Maisano*, 627 So.2d 148, 151 (La. 1993). Any ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

It should be noted that the term "latent defect" is not defined in Defendant's policy.[3] "Latent" is defined as "present and capable of becoming though not now visible, obvious, active, or symptomatic". Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/latent. There is no evidence that the problems with the Chinese manufactured drywall were latent, as the term is commonly understood. The scientific evidence

---

[3]Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. La. C.C. art. 2047; *Peterson v. Schimek*, 729 So.2d 1024, 1028-1029 (La. 1999).

indicates the Chinese manufactured drywall began emitting sulphur compounds immediately. Further, there are no allegations of latency or of a defect in Plaintiff's Petition.  Plaintiff simply alleged that he discovered that his home was constructed using Chinese manufactured drywall in the Spring of 2009, and that the drywall caused and continues to cause physical loss and damage to his home. (Petition, ¶6)

The insurance industry has defined the latent defect or inherent vice exclusion as "a quality within an object which makes it tend to destroy itself." WILLIAM H. RODDA, FIRE AND PROPERTY INSURANCE 298 (Prentice-Hall, Inc. 1956).  For example, the tendency of rubber to destroy itself whether or not it is in use is an inherent vice. *Id*.   The Fire, Casualty and Surety (FC&S) Bulletin, used by the insurance industry to interpret and apply insurance policies, noted that the inherent vice or latent defect exclusion applies to "a loss due to any quality in the property that causes property to damage or destroy itself... that results from something within the property itself as opposed to some outside force." FC&S Online, Processors Coverage Form, Insurance Services Office Non-filed IM Coverage, December 2005, http://www.nationalunderwriterpc.com.

The exclusion originated in maritime law and speaks to the reasonable expectations of the parties to the contract.

> The underwriter is not liable for that loss or deterioration which arises solely from a principle of decay or corruption in the subject insured, or, as the phrase is, from its proper vice; as when fruit becomes rotten, or flour heats, or wine turns sour, not from external damage, but entirely from internal decomposition.

ARNOULD ON MARINE INSURANCE (11th ed) §778.

First party policies typically exclude damages due to an inherent vice or latent defect in order to prevent the insurer from having to compensate the insured for property that has its own shelf life

7

and will eventually wear out or break down because of intrinsic quality or nature. Eugene Wollan, *Risks Not Taken*, JOHN LINER REVIEW 86 (Fall 2006). This exclusion is meant to apply to maintenance type damage claims or claims that relate to the property itself breaking down in some way, or to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction. *See Employers Cas. Co. v. Holm*, 393 S.W. 2d 363 (Tex. Civ. App. Houston 1965). The loss excluded by this exclusion is an expected loss, for which property insurance does not apply.

Here, there is no evidence that the Chinese drywall that is installed in Plaintiff's home is damaging or destroying itself. Plaintiff's Petition certainly does not contain any such allegations. Plaintiff's claim relates to the damage to his home caused by the Chinese manufactured drywall, which was an unexpected risk. (*See* Petition, ¶6) Plaintiff's loss or damage, as alleged in Plaintiff's Petition, was not caused by a latent defect within the meaning of the above-quoted provision. The damage to Plaintiff's air conditioner, for example, was not caused by a latent defect in the air conditioner, or in the drywall, or in the home. Defendant can cite to no allegations made by Plaintiff to the contrary. The same is true for Plaintiff's refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items that have been damaged. Plaintiff's loss was unexpected, fortuitous and extraneous – the type of event for which Plaintiff purchased insurance coverage. There is nothing on the face of Plaintiff's Petition to support an application of the latent defect exclusion. Defendant's Motion should be denied.[4]

---

[4]In support of its argument that its latent defect exclusion supports its Motion for Judgment on the Pleadings, Defendant cites a number of cases – none that are binding on this Court. Notably, none of these cases found the latent defect exclusion to be applicable to a claim on a motion for judgment on the pleadings, and many discuss the term "latent defect" in a context other than the latent defect exclusion in a homeowners insurance policy. *See, e.g., Nida v.*

### 2.      The faulty materials exclusion does not bar Plaintiff's claim

As another affirmative defense, Defendant argues that its policy does not provide coverage for  Plaintiff's claim, as it excludes loss or damage caused by faulty building materials.  The pertinent language in Defendant's policy relating to the faulty materials exclusion provides as follows:

> We do not insure for loss to property described in Coverage A caused by any of the following.  However, any ensuing loss to property described in Coverage A not precluded by any other provision in this policy covered.
>                                    *   *   *
> 3.  Faulty, inadequate or defective:
>                                    *   *   *
>        c. materials used in repair, construction, renovation or remodeling;
>                                    *   *   *
> of part or all of any property whether on or off the "residence premises".

(Defendant's Motion, Ex. A, pp.17-18)

With respect to the drywall itself, Defendant has not met its burden of proof that this exclusion is applicable.  The terms "faulty", "inadequate" and "defective" are not defined in Defendant's policy; thus, they are interpreted according to their ordinary meaning.  According to Merriam-Webster's online dictionary, "faulty" means "marked by fault or defect." Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/faulty.  "Inadequate" means "not adequate" or "insufficient".  Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/inadequate.  "Defective" means "imperfect in form or function" or "falling below the norm in structure or in mental or physical function". Merriam-Webster Online Dictionary,

---

*State Farm Fire & Cas. Co.*, 454 So.2d 328 (La. App. 3d Cir. 1984) (discussing latent defect on appeal following judgment); *Harris v. Bardwell*, 373 So.2d 777 (La. App. 2d Cir. 1979) (discussing latent defect in the context of a tort and redhibition claim); *Travco Inc. Co. v. Ward*, 2010 WL 2222255 (E.D. Va. 6/3/10) (construing exclusions in accordance with Virginia law on a motion for summary judgment).

2010, http://www.merriam-webster.com/dictionary/defective.  Defendant has not shown that the drywall at issue is faulty, inadequate or defective, as defined above, and there are no such allegations on the face of Plaintiff's Petition.

Indeed, the drywall in Plaintiff's home was performing the purpose of drywall, *i.e.*, serving as a finishing material, holding paint and art, providing fire protection, providing sound and heat insulation. *See In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 798 (in discussing the application of the economic loss rule and analogizing the facts in the Chinese drywall litigation to those of asbestos cases, the Court stated, "[t]he Chinese drywall has been installed in numerous homes and in each instance is functioning as drywall.").  The damage caused by the drywall was based on a quality of the drywall distinct from these roles.[5]

There is nothing on the face of Plaintiff's Petition to support an application of the faulty materials exclusion.  Defendant's Motion should be denied.

> **3.      The furnishing of work or materials endorsement does not apply.**

Defendant next asserts an affirmative defense found in its Amendatory Endorsement - Specifically Excepted Perils.  The portion of this endorsement invoked by Defendant states as follows:

> [T]he following Perils...are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE WILL NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:
>
> *      *      *

---

[5]Defendant again relies heavily on *Travco* and cases from other jurisdictions interpreting and applying a faulty materials exclusion using law other than Louisiana law, in non-homeowner insurance policies and in different context, *i.e.*, motions for summary judgment or judgment following trial.

      A.     ACTS, ERRORS OR OMISSIONS by you or others in:

                    *  *  *

        4.   The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or

                    *  *  *

This exception A does not reduce the insurance for loss or damage caused directly by a Covered Peril.

      As used in this endorsement:

                    *  *  *

      2.  If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

(Defendant's Motion, Ex. A, p.6)

In order for this exclusion to apply, Defendant must show that Plaintiff's loss was caused by, aggravated by, resulted from or would not have occurred but for the acts of someone else in furnishing the drywall and installing it in Plaintiff's home.  While this is trivially true, the cause of Plaintiff's loss is the emissions from the drywall.  Plaintiff's loss was not caused by the supplying or installation of the drywall, other than the fact that this was done.  If this endorsement is applied in such a broad manner, all coverage afforded under Plaintiff's policy, not purely caused by acts of God, is written out.

There is nothing in Plaintiff's Petition to support the application of this endorsement. Defendant cites to the allegations in the *Amato* class action; however, those allegations are not relevant for the purposes of Defendant's Motion for Judgment on the Pleadings.  Defendant has not met its burden with respect to the application of this endorsement, and its Motion should be denied.

11

###     4.      The corrosion exclusion does not bar Plaintiff's claim

The next affirmative defense Defendant points to in support of its Motion is the corrosion exclusion. The pertinent language in Defendant's policy relating to the corrosion exclusion provides as follows:

> 2. We do not insure, however, for loss:
> * * *
>    c. caused by:
> * * *
>      (6) Any of the following:
> * * *
>       (c) Smog, rust or other corrosion or dry rot;
> * * *
> Under 2.b. and c. above, any ensuing loss to property described in Coverage A not precluded by any other provision in this policy is covered.

(Defendant's Motion, Ex. A, pp.16-17)

As with any exclusion, the burden of proof to establish that this exclusion applies is on Defendant. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364. Further, policies should be construed to effect, not deny, coverage. *Yount*, 627 So.2d at 151. Any ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

Defendant argues that Plaintiff's loss is loss caused by corrosion. As an initial matter, the exclusion speaks to loss "caused by" corrosion. Here, the damage is not caused by corrosion. The damage is caused by the sulphur compounds being emitted from the drywall. This distinction has been recognized by at least one Louisiana court.[6]

---

[6]Notably, the cases cited by Defendant were decided at the summary judgment stage of the litigation, not the pleadings stage like Defendant's Motion. Moreover, these cases are not binding on this Court and are generally distinguishable, as well. *See, e.g., Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-664, 2005 Ohio App. LEXIS 981, at *17 (Ohio Ct. App. Mar. 8, 2005) (applying Ohio law and affirming application of a rust and corrosion exclusion in a builder's risk policy where parties stipulated that the cause of the loss was rust and corrosion).

In *Trus Joint MacMillan v. Neeb Kearney and Co., Inc.*, 2000 WL 306654, *2 (E.D. La. 3/23/00), the plaintiff contracted with defendant to store plaintiffs' steel bedplates in a warehouse. While the bedplates were in the warehouse, they became wet due to standing water and suffered extensive damages.   Plaintiff filed a claim with the warehouse's insurer, who claimed the deterioration exclusion excluded coverage due to the corrosion, which read, "we do not pay for loss caused by contamination or deterioration, including corrosion."  Finding coverage for the loss, the court stated as follows:

> Clearly, however, the exclusion is designed to apply where corrosion is the *cause* of property damage.  It is not designed to preclude coverage when rust is the damage itself, as opposed to the cause of damage.  Even if there were some ambiguity about the meaning of this exclusion, for purposes of summary judgment any doubts should be resolved against the exclusion.

*Id*. at *2.  The same is true of Plaintiff's claim.

Moreover, as discussed above with respect to the latent defect exclusion, these exclusions were meant to apply to maintenance-type losses, such as the expected and natural occurrence of corrosion, which causes damage to property over time.  The FC&S Bulletin also states that "[t]he intent of the corrosion exclusion is to exclude corrosion that is part of the normal aging process.  The corrosion that results from the [Chinese] drywall is not part of a normal process and is directly related to the vapors emitted from the drywall.  Therefore, in our opinion, it would still be covered."  FC&S, "Chinese Drywall and Corrosion.  The chemical reaction resulting from the Chinese manufactured drywall emissions which caused Plaintiff's damage is not the normal anticipated corrosion.  The reaction causing damage to Plaintiff's property is a sulfidation reaction which occurs rapidly and begins immediately upon exposure of the metal to the sulfurous compounds and moisture.  The types of damages excluded under the "corrosion"exclusion are damages that occur

13

naturally, are expected, and take years to substantiate into actual damage.  Because the sulfidation reaction caused by the sulfurous compounds emitted by the Chinese manufactured drywall in Plaintiff's home is wholly different from the type of oxidation reaction which occurs naturally to copper and silver over many years, the damages to Plaintiff's home caused by the sulfidation reaction are unanticipated and wholly outside of the scope of this exclusion.

There are no allegations in Plaintiff's Petition that his loss or damage was "caused by" corrosion.  Plaintiff alleges that his damage was caused by Chinese manufactured drywall. (Petition, ¶6).  Defendant cannot meet its burden, and it Motion should be denied.

### 5.    The pollution exclusion does not bar Plaintiff's claim

As its final affirmative defense supporting its Motion, Defendant cites the pollution exclusion in its policy.  The pertinent language in Defendant's policy relating to the pollution exclusion provides as follows:

> 2.  We do not insure, however, for loss:
> * * *
>   c.  caused by:
> * * *
>     (6)  Any of the following:
> * * *
>       (e)  Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C of this policy.
>
>       Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.
> * * *
> Under 2.b. and c. above, any ensuing loss to property described in Coverage A not precluded by any other provision in this policy is covered.

(Defendant's Motion, Ex. A, pp.16-17)

14

The pollution exclusion will not operate to deny coverage in Louisiana.  In *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So. 2d 119, 127 Chief Justice Calogero examined the history of the pollution exclusion in insurance contracts to conclude that "there is no history in the development of the exclusion to suggest it was ever intended to apply to anyone other than an active polluter of the environment."  The Court found that a literal interpretation of the pollution exclusion would lead to absurd results, and that the pollution exclusion is designed to exclude coverage for environmental pollution only and not for all interactions with irritants or contaminants of any kind *Id.* at 135.  *See also Thompson v. Temple*, 580 So.2d 1133 (La. App. 4 Cir. 1991) (pollution exclusions are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time; finding that the pollution exclusion clause in a homeowner's policy does not operate to exclude injuries caused by a leaking gas heater); *West v. Board of Commissioners of the Port of New Orleans*, 591 So.2d 1358 (La. App. 4 Cir. 1991) (finding that the pollution exclusion is applicable to polluters - those who indifferently pollute the environment - and not those who only incidentally possess the pollutant in the course of their other business; application of the exclusion is a question of fact for the finder of fact).

The Louisiana Supreme Court provided three considerations for determining whether a "total pollution exclusion" in a commercial liability policy will preclude coverage:

1.  Whether the insured is a "polluter" within the meaning of the exclusion;

2.  Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and

3.  Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

*Id.* at 135-136.

15

Applying these considerations to this case in the homeowner context confirms the inapplicability of the pollution exclusion.

With respect to the first factor - whether Plaintiff is a "polluter" - the Court noted that this fact-based conclusion should be made with consideration of a variety of factors, such as the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, or whether the insured should have known from reading the exclusion that a separate policy covering pollution damages would be necessary for the insured's business. *Doerr*, 774 So.2d at 135. Obviously, Plaintiff is not a "polluter".

Whether the substance is a "pollutant" is also a fact-based conclusion, which according to the Louisiana Supreme Court involves the following analysis:

> [T]he determination of whether the injury-causing substance is a "pollutant" is also a fact-based conclusion that should encompass a wide variety of factors . . . . Consequently, when making this determination, the trier of fact should consider the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion.

*Id.* at 136.

These factors are the result of long-standing policy and case law finding that the term "pollutant" is often too broadly interpreted and subject to abuse in the claims handling process. For example, the Louisiana Commissioner of Insurance has described this State's ongoing concern over the broad interpretation of a qualifying "pollutant" under the exclusion:

> We are concerned that the broad definition given the term "pollutant" creates an opportunity for abuse. This is a particular concern as regards commercial enterprises whose ongoing business activities do not present a risk to the environment. For example, we have found instances where it has been argued that any thing and/or

16

> matter that harms a person, whether or not it has toxic or hazardous properties is, de
> facto an irritant and therefore a pollutant, thereby triggering the pollution
> exclusion…The appropriate use of the pollution exclusion in claims handling is an
> issue of grave concern.

Advisory Letter Number 97-01, Commissioner of Insurance, State of Louisiana (June 4, 1997).  The

"pollutant" at issue here is contained within drywall – a material not known to commonly contain

any dangerous substances.

As for the final consideration, whether there was a discharge or seepage of the alleged

pollutant, the Louisiana Supreme Court identified the inquiry as follows:

> Finally, the determination of whether there was "discharge, dispersal, seepage,
> migration, release or escape" is likewise a fact-based conclusion that must result after
> a consideration of all relevant circumstances.  Specifically, the trier of fact should
> consider whether the pollutant was intentionally or negligently charged, the amount
> of the injury-causing substance discharged, whether the actions of the alleged polluter
> were active or passive, and any other factor the trier of fact deems relevant.  These
> factual conclusions should be made to assist a court in determining whether the total
> pollution exclusion in any particular case will exclude coverage for a claim.

*Id*. at 135-136.  Defendant cannot reasonably content that there was an intentional discharge, as

Plaintiff had no knowledge that the drywall was anything other than drywall.  Further, the amount

of the discharge – while possibly significant to the homeowner – is likely not of an amount that

would be dangerous to an entire community.

Defendant argues that *Doerr* is inapplicable to this case, as it relates to the pollution

exclusion in the context of a CGL policy.  Instead, Defendant cites to a number of cases in other

jurisdictions, none of which are binding on this Court, for the proposition that its pollution exclusion

should be enforced in the context of a homeowners policy.  Notably, the majority of cases cited by

Defendant are CGL or liability policies, not homeowner policies, and these cases also do not decide

the application of the pollution exclusion at the pleadings stage, as Defendant seeks here.  *See*

17

*Wakefield Pork, Inc. v. RAM Mut. Ins. Co.*, 731 N.W.2d 154, 161 (Minn. App. 2007) (addressing

liability coverage on a summary judgment motion); *Board of Regents v. Royal Ins. Co.*, 517 N.W.2d

288, 892 (Minn. 1994) (construing exclusion of a CGL policy for purposes of summary judgment

motion); *Great Northern Ins. Co. v. Benjamin Franklin Fed. Sav & Loan Ass'n*, 793 F.Supp. 259 (D.

Or. 1990) (property and liability policy construed in the context of a Rule 52 judgment); and *Brown*

*v. Am. Motorist Ins. Co.*, 930 F.Supp. 207, 208-209 (E.D. Pa. 1996) (homeowners policy construed

in context of a motion for summary judgment).

     Defendant ignores the detailed discussion and analysis of the Louisiana Supreme Court in

*Doerr* and asks this Court to ignore it, as well.  Further, Defendant ignores a relevant Louisiana case

discussing a similar pollution exclusion in the context of a homeowners policy, although, again, in

the context of a summary judgment motion.

     In *Thompson v. Temple*, 580 So.2d 1133 (La. App. 4 Cir. 1991) plaintiffs were "overcome"

by carbon monoxide gas which allegedly leaked from a bathroom heater.  Allstate filed a motion for

summary judgment on the issue of coverage invoking the "pollution exclusion."   The court held

that "[p]ollution exclusion clauses are intended to exclude coverage for active industrial pollutants

over extended periods of time."  *Id.* at 1135 (citations omitted).  Not being able to find any case law

directly on point, the court looked to the intent of the industry in placing these clauses into the

policy:

> It seems that the intent of the insurance industry in adding pollution exclusion clauses
> to their policies was to exclude coverage for entities which knowingly pollute the
> environment over a substantial period of time.  That situation is totally different from
> a leaking gas heater within the home.  It is unlikely that the insurance industry
> intended such an exclusion clause to apply to this situation.  We find that, on the
> basis of the parties, a pollution exclusion clause in a homeowner's insurance policy
> does not operate to exclude injuries caused by a leaking gas heater.

*Id.*  The appellate court affirmed the trial court's denial of the motion for summary judgment.

Plaintiff's Petition merely alleges that the drywall emits "odorous gases that cause corrosion." (Petition, ¶6).  The fact-based determination of the application of the pollution exclusion cannot be made in Defendant's Motion for Judgment on the Pleadings, and certainly not on the basis of this simple allegation.  Defendant's Motion should be denied.

### 6.    Ensuing Loss

Notably absent from discussion in Defendant's Motion is the ensuing loss provision of the policy, which restores coverage for ensuing losses not otherwise excluded by the policy.  The latent defect exclusion, the corrosion exclusion and the pollution exclusion contain a clause providing that "any ensuing loss to property described in Coverages A not precluded by any other provision in this policy is covered." (Defendant's Motion, Ex. A, p.17)  The faulty materials exclusion contains a similar provision (Defendant's Motion, Ex. A, pp.17-18)

The industry FC&S Bulletin noted that any ensuing loss "as a result of the faulty drywall would be covered, for example if the drywall caused corrosion damage to wires or pipes."  FC&S Online, Chinese Drywall, June 2009, http://www.nationalunderwriterpc.com.  The FC&S Bulletin regarding Chinese drywall states that there "is coverage for ensuing losses from faulty workmanship."   FC&S Online, Chinese Drywall: The Next Big Issue September 2009, http://www.nationalunderwriterpc.com.

 Louisiana courts have applied the ensuing loss provision and allowed coverage for damages resulting from a previous excluded loss.  *See, e.g.,  Dawson Farms, L.L.C. v. Millers Mutual Fire Insurance Co.*, 34, 801 (La. App. 2nd Cir. 8/1/01), 794 So.2d 949, 952 (faulty design and/or workmanship exclusion did not exclude damages due to the resulting loss, therefore the insured was

entitled to coverage for losses associated with the damages to the contents of the building); *Lake Charles Harbor & Terminal District v. Imperial Casualty & Indemnity Co.*, 857 F.2d 286, 288 (5th Cir. 1988) (policy excluded damages caused by a mechanical or machinery breakdown but covered losses due to ensuing perils, indicating damages caused by the mechanical breakdown were covered under the policy); *Holden v. Connex-Metalna*, 2000 WL 1876338, *7-8 (E.D. La. 12/12/00) (court permitted the insured to recover damages based on the ensuing loss exception to the exclusion for machinery breakdown and faulty workmanship).

In *Holden*, the court found that the faulty workmanship exclusion applied to the specific components of a crane which were identified as being faulty but found coverage for the damage caused by the crane when it fell, including the loss of the crane itself, pursuant to the ensuing loss provision of the property policy. *Holden*, 2000 WL 1876338.

> The exclusions at issue here are designed to ensure that the property insurers do not become warrantors of the crane's quality. As such, the property policies do not cover worn or broken parts, pay for repairs when a mechanical system or process breaks down, or fix a design problem. In this case, to the extent that there was a flaw or defect in the quality of the crane it would have been that the boom and trolley were significantly heavier than intended in the design of the unloader. Thus had it remained standing, any of the exclusions, if applicable, would have barred from coverage any costs to rebalance or redesign the crane. However, in this case, the unbalance triggered a series of ensuing events that lead to the complete destruction of the crane and other property….All damages caused by the falling crane, including the total loss of the crane itself are excepted under the "ensuing loss" proviso.

*Id.* at *8-9. Here, there is a distinct separation between what Defendant argues is the excluded loss, the Chinese drywall itself, and the ensuing losses, which are the damages caused by the gases that the Chinese drywall emits. Defendant's Motion should be denied.

### D.      Plaintiff's Personal Property Claims

Plaintiff recognizes that while the policy provides "all risk" coverage for Plaintiff's home, the policy provides coverage for personal property only if the loss to that personal property was caused by a listed peril.  The listed perils do not include the cause of Plaintiff's loss; accordingly, Plaintiff agree that the policy provides no coverage for the loss or damage to his personal property.

### E.      Plaintiff Has Stated a Claim for Bad Faith

As recognized by Defendant in its Motion, the validity of Plaintiff's bad faith claims rests on whether or not Plaintiff has alleged a claim for coverage under the policy.  (Defendant's Memorandum, pp.22-23)  As set forth above, Plaintiff has sufficiently stated a claim for coverage under the policy; therefore, Plaintiff has also properly alleged a bad faith claim.

## III.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion for Judgment on the Pleadings.

Dated: August 2, 2010                    Respectfully submitted,

                                         /s/ Russ M. Herman
                                         Russ M. Herman, Esq.
                                         Leonard A. Davis, Esq.
                                         Stephen J. Herman, Esq.
                                         HERMAN, HERMAN, KATZ & COTLAR, LLP
                                         820 O'Keefe Avenue
                                         New Orleans, Louisiana 70113
                                         Phone: (504) 581-4892
                                         Fax: (504) 561-6024
                                         LDavis@hhkc.com
                                         *Plaintiffs' Liaison Counsel MDL 2047*

                                         Arnold Levin
                                         Fred S. Longer
                                         Levin, Fishbein, Sedran & Berman

510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com


Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020   bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055   Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP

One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 2nd day of August, 2010.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com