## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | **MDL NO. 2047** |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | **JUDGE FALLON** |
| ———————————————— | ) | |
| This document relates to: | ) | |
| | ) | **MAG. JUDGE WILKINSON** |
| *Jessie Vu and Kristie Mai, et al.* | ) | |
| *v. Progressive Advanced Insurance Co.,* | ) | |
| *et al.,* **Case No. 10-930** | ) | |
| ———————————————— | ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT, HOMESITE'S, MOTION TO DISMISS

Plaintiffs, Jessie Vu and Kristie Mai, submit this Opposition to Defendant, Homesite Insurance Company's, Motion to Dismiss pursuant to Rule 12(b)(6). Defendant's arguments in support of its Motion to Dismiss rely on the language of its insurance policy which Defendant interprets as not providing coverage for Plaintiffs' alleged damage. As discussed more fully below, the pleadings demonstrate that Plaintiffs stated a claim for relief against Defendant, such that Defendant's Motion to Dismiss must be denied.

### I.    BACKGROUND

Plaintiffs brought this putative class action seeking a declaratory judgment that Defendant's homeowner insurance policy provides coverage for their loss and damage associated with Chinese manufactured drywall. In denying Plaintiffs' claim, Defendant relied on a number of policy provisions and exclusions, including the latent defect exclusion, corrosion exclusion, pollution

1

exclusion and faulty materials exclusion.  Defendant filed this Motion to Dismiss, seeking a determination that its exclusions, affirmative defenses to Plaintiffs' allegations, apply to bar all of Plaintiffs' loss or damage.

While Plaintiffs maintain that, on the merits, Defendant's policy exclusion affirmative defenses do not apply to the facts and circumstances surrounding Plaintiffs' claim, for purposes of its Motion to Dismiss, Plaintiffs' Complaint properly pleads a covered loss and no policy exclusions are apparent on the face of Plaintiffs' allegations.  As discussed more fully below, Defendant's Motion to Dismiss should be denied.

## II.    ARGUMENT

### A.    Legal Standard for Rule 12(b)(6) Motion to Dismiss

The heavy burden needed to sustain a motion to dismiss is well known, as is the fact that motions to dismiss are viewed with disfavor and are rarely granted. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999); *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780, 788 (E.D. La. 2010).  Here, this heavy burden belongs to Defendant, and it has failed to meet it.

"The purpose of a motion to dismiss, pursuant to FRCP 12(b)(6) is to test the sufficiency of the complaint, not to judge the merits of the case." *First Nat'l Bank of Louisville v. Lustig*, 809 F.Supp. 444, 446 (E.D.La.1992).  In considering a motion to dismiss, the court must accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 285 (5th Cir. 1993).  All ambiguities or doubts regarding the sufficiency of the claim must be resolved in favor of the plaintiff.  *Whetstone v. Jefferson Parish Public School Board*, 2010 WL 1936210 (E.D. La. 5/12/10).  Any reasonable

inferences that may be drawn from the complaint are also accepted as true. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face". *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 788.

Plaintiffs agree with Defendant that the insurance policy at issue in this litigation can be considered by the Court for purposes of Defendant's Motion to Dismiss. *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000). The policy is central to Plaintiffs' claims and is referred to in Plaintiffs' Complaint; therefore, it is part of the pleadings.

However, while the policy is properly considered as part of the pleadings for purpose of Defendant's Motion to Dismiss, the policy exclusions raised by Defendant constitute affirmative defenses, which should not be considered at this stage in the litigation. An exception to this rule is if a successful affirmative defense appears on the face of plaintiff's complaint. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1357 (3d ed. 2010); *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."); *see also Builders Mutual Ins. Co. v. Dragas Management Corp.*, 2010 WL 2813397 (E.D. Va. 7/15/10) (considering motion to dismiss by CGL carrier in Chinese drywall declaratory judgment action regarding coverage and finding that the court only needed address whether counterclaim adequately pled facts to support an "occurrence" under the policy, as the "Total Pollution Exclusion" is an affirmative defense to coverage that is not

3

addressed at this time).  As discussed below, the exclusions raised by Defendant should not be considered at this time, as they constitute affirmative defenses not apparent on the face of Plaintiffs' Complaint.

**B.      Plaintiffs Have Triggered Coverage and Alleged a Covered Loss to Dwellings.**

The insuring agreement in Defendant's policy relating to Plaintiffs' dwelling provides, "We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property." (Defendant's Motion, Ex. 1, p.11 of 16)  In their Complaint, Plaintiffs allege that the drywall has caused  physical loss and damage to their property. (Complaint, ¶19). Plaintiffs further alleged that the Chinese manufactured drywall emits compounds that cause rapid corrosion of air-conditioner coils, copper tubing, electrical wiring, computer wiring and other household items. (Complaint, ¶19)  Plaintiffs' allegations must be taken as true for purposes of this Motion; therefore, Plaintiffs have alleged a covered loss.

Defendant's argument on this point misconstrues, confuses and in some cases, ignores Plaintiffs' allegations in this matter.  Plaintiffs' allegations clearly state that their claim under Defendant's policy is for the damage to their home, *i.e.*, covered property, caused by Chinese manufactured drywall.  Plaintiffs do not allege a claim for faulty construction, for defective material or for the cost to eliminate a defect.

Plaintiffs have the initial burden of establishing that their claim is a direct physical loss to covered property.  Plaintiffs have met this burden, as they have alleged the Chinese manufactured drywall caused physical loss and damage to their home and contents.[1] (Complaint, ¶19) Specifically,

---

[1]Plaintiffs believe their allegations relating to their damage are satisfactory and meet the requirements of Rule 8.  However, if the Court requires more specificity as to the nature of

Plaintiffs alleged that the "Chinese drywall emits compounds that cause rapid corrosion of air-conditioning coils, copper tubing, electrical wiring, computer wiring and other household items." (*Id.*)  The burden then shifts to Defendant to establish what portions, if any, of the damage was caused by an excluded peril or perils as defined by the policy. *Blackburn v. National Union Fire Ins. Co. of Pittsburgh*, 2000-2668 (La. 2001), 784 So.2d 637, 641; *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 1/21/09); *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 1/8/09).

Plaintiffs' have sufficiently alleged a covered loss under the policy and have therefore stated a claim.  Defendant's Motion to Dismiss should be denied.[2]

### C.    Defendant's Policy Language Defense Does Not Support Its Motion

In support of its Motion to Dismiss, Defendant relies solely on the language of its policy, arguing that its policy does not provide coverage for Plaintiffs' claim arising from the presence of Chinese manufactured drywall in Plaintiffs' home.  Defendant raises four specific provisions and/or exclusions in its policy that it contends defeat coverage for Plaintiffs' claim.  As discussed below, Plaintiffs' claim is not excluded by these policy provisions.  Defendant has failed to carry its burden, and its Motion to Dismiss must be denied.[3]

---

Plaintiffs' loss and damage, Plaintiffs request permission to amend their Complaint to elaborate on their claim for damage or loss under the policy.

[2]As noted above, the remainder of Defendant's arguments in support of its Motion to Dismiss are affirmative defenses and should not be considered in the context of Defendant's Motion to Dismiss.  A review of the cases cited by Defendant in support of its Motion to Dismiss reveals that those cases were not decided on the pleadings, but were instead decided on motions for summary judgment or were judgments on the merits following trial.  The legal analysis should end here, with the conclusion that Plaintiffs' Complaint contains sufficient allegations of coverage under the policy.

[3]Also as discussed below, Defendant asks the Court to follow rulings of courts in other jurisdictions that are applying substantive law from states other than Louisiana.  Defendant

### 1.    The latent defect exclusion does not bar Plaintiffs' claim.

For one of its affirmative defenses, Defendant argues that its policy does not provide coverage for Plaintiffs' claim, as it excludes loss or damage caused by a latent defect.  The pertinent language in Defendant's policy relating to latent defect exclusion provides as follows:

> We do not insure, however, for loss:
>                               *   *   *
>  2.  Caused by:
>                               *   *   *
>      (e) Any of the following:
>                               *   *   *
>          (2)   Inherent vice, latent defect, mechanical breakdown;
>                               *   *   *
> Under items 1. and 2., any ensuing loss to property described in Coverages
> A and B not excluded or excepted in this policy is covered.

(Defendant's Motion, Ex. 1, p.11 of 16)

The burden of proof to establish that this exclusion applies is on Defendant. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364.  Further, policies should be construed to effect, not deny, coverage. *Yount v. Maisano*, 627 So.2d 148, 151 (La. 1993).  Any ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

It should be noted that the term "latent defect" is not defined in Defendant's policy.[4]  "Latent"

---

primarily relies on *Travco Ins. Co. v. Ward*, No. 10-14, 2010 WL 2222255 (E.D. Va. 6/3/10), applying Virginia law in the context of a motion for summary judgment.  The *Travco* court acknowledged *Finger v. Audubon Ins. Co.*, No. 09-8071, 2010 WL 1222273 (La. Civ. Dist. Ct. Mar. 22, 1010), which applied Louisiana law and reached the opposite conclusions.  The *Travco* court declined to follow *Finger*, citing instead, *Ross v. C. Adams Const. & Design, L.L.C.*, No. 676-185 (La. 24th Jud.Dist.Ct. April 14, 2010), which granted the insurer's summary judgment motion without any reasons for judgment.  Defendant cites the *Ross* summary judgment ruling (which supplied no reasons for its ruling) to this Court to follow, as well.  Defendant failed to mention the *Finger* opinion.

[4]Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. La. C.C. art. 2047; *Peterson v. Schimek*, 729 So.2d 1024, 1028-1029 (La. 1999).

is defined as "present and capable of becoming though not now visible, obvious, active, or symptomatic". Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/latent. There is no evidence that the problems with the Chinese manufactured drywall were latent, as the term is commonly understood. The scientific evidence indicates the Chinese manufactured drywall began emitting sulphur compounds immediately. Further, there are no allegations of latency or of a defect in Plaintiffs' Complaint. Plaintiffs simply alleged that they discovered that their home was constructed using Chinese manufactured drywall in the Spring of 2009, and that the drywall caused and continues to cause physical loss and damage to the home. (Complaint, ¶19)

The insurance industry has defined the latent defect or inherent vice exclusion as "a quality within an object which makes it tend to destroy itself." WILLIAM H. RODDA, FIRE AND PROPERTY INSURANCE 298 (Prentice-Hall, Inc. 1956). For example, the tendency of rubber to destroy itself whether or not it is in use is an inherent vice. *Id*. The Fire, Casualty and Surety (FC&S) Bulletin, used by the insurance industry to interpret and apply insurance policies, noted that the inherent vice or latent defect exclusion applies to "a loss due to any quality in the property that causes property to damage or destroy itself... that results from something within the property itself as opposed to some outside force." FC&S Online, Processors Coverage Form, Insurance Services Office Non-filed IM Coverage, December 2005, http://www.nationalunderwriterpc.com.

The exclusion originated in maritime law and speaks to the reasonable expectations of the parties to the contract.

> The underwriter is not liable for that loss or deterioration which arises solely from a principle of decay or corruption in the subject insured, or, as the phrase is, from its proper vice; as when fruit becomes rotten, or flour heats, or wine turns sour, not from

external damage, but entirely from internal decomposition.

ARNOULD ON MARINE INSURANCE (11th ed) §778.

First party policies typically exclude damages due to an inherent vice or latent defect in order to prevent the insurer from having to compensate the insured for property that has its own shelf life and will eventually wear out or break down because of intrinsic quality or nature. Eugene Wollan, *Risks Not Taken*, JOHN LINER REVIEW 86 (Fall 2006).  This exclusion is meant to apply to maintenance type damage claims or claims that relate to the property itself breaking down in some way, or to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction.  *See Employers Cas. Co. v. Holm*, 393 S.W. 2d 363 (Tex. Civ. App. Houston 1965).  The loss excluded by this exclusion is an expected loss, for which property insurance does not apply.

Here, there is no evidence that the Chinese drywall that is installed in Plaintiffs' home is damaging or destroying itself.  Indeed, Plaintiffs' allegations clearly state just the opposite.  Plaintiffs allege that this exclusion

> was intended to apply to expected losses relating to the longevity of a given material and intended to exclude losses which must inevitably happen over time and/or will inevitably occur due to a defect within the item.  In either case the defect or the passage of time causes damage to the item itself, not to other items.  In homes containing Chinese manufactured drywall, the drywall itself is not damaged or defective relative to the expected performance of non-defective drywall.  Instead, Chinese manufactured drywall causes damage to other items but is itself undamaged.

(Complaint, ¶35)  Plaintiffs' claim relates to the damage to their home caused by the Chinese manufactured drywall, which was an unexpected risk. Plaintiffs' loss or damage, as alleged in Plaintiffs' Complaint, was not caused by a latent defect within the meaning of the above-quoted provision.  The damage to Plaintiffs' air conditioner, for example, was not caused by a latent defect

in the air conditioner, or in the drywall, or in the home.  Defendant can cite to no allegations made

by Plaintiffs to the contrary.  The same is true the other alleged items of Plaintiffs' damage.

Plaintiffs' loss was unexpected, fortuitous and extraneous – the type of event for which Plaintiffs

purchased insurance coverage.  There is nothing on the face of Plaintiffs' Complaint to support an

application of the latent defect exclusion.  Defendant's Motion to Dismiss should be denied.[5]

**2.      The corrosion exclusion does not bar Plaintiffs' claims.**

The next affirmative defense Defendant points to in support of its Motion to Dismiss is the

corrosion exclusion.   The pertinent language in Defendant's policy relating to the corrosion

exclusion provides as follows:

> We do not insure, however, for loss:
> * * *
>  2.  Caused by:
> * * *
>     (e) Any of the following:
> * * *
>        (3)   Smog, rust or other corrosion, mold, wet or dry rot;
> * * *
> Under items 1. and 2., any ensuing loss to property described in Coverages
> A and B not excluded or excepted in this policy is covered.

(Defendant's Motion, Ex. 1, p.11 of 16)

As with any exclusion, the burden of proof to establish that this exclusion applies is on

Defendant. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364.

Further, policies should be construed to effect, not deny, coverage. *Yount*, 627 So.2d at 151.  Any

ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

---

[5]In support of its argument that its latent defect exclusion supports its Motion to Dismiss,
Defendant cites a number of cases – none that are binding on this Court.  Notably, none of these
cases found the latent defect exclusion to be applicable to a claim on a motion to dismiss, and
many discuss the term "latent defect" in a context other than the latent defect exclusion in a
homeowners insurance policy.

Defendant argues that Plaintiffs' loss is loss caused by corrosion and is consequently excluded. As an initial matter, the exclusion speaks to loss "caused by" corrosion. Here, the damage is not caused by corrosion. The damage is caused by the sulphur compounds being emitted from the drywall. This distinction has been recognized by at least one Louisiana court.[6]

In *Trus Joint MacMillan v. Neeb Kearney and Co., Inc.*, 2000 WL 306654, *2 (E.D. La. 3/23/00), the plaintiff contracted with defendant to store plaintiffs' steel bedplates in a warehouse. While the bedplates were in the warehouse, they became wet due to standing water and suffered extensive damages. Plaintiff filed a claim with the warehouse's insurer, who claimed the deterioration exclusion excluded coverage due to the corrosion, which read, "we do not pay for loss caused by contamination or deterioration, including corrosion." Finding coverage for the loss, the court stated as follows:

> Clearly, however, the exclusion is designed to apply where corrosion is the *cause* of property damage. It is not designed to preclude coverage when rust is the damage itself, as opposed to the cause of damage. Even if there were some ambiguity about the meaning of this exclusion, for purposes of summary judgment any doubts should be resolved against the exclusion.

*Id.* at *2. The same is true of Plaintiffs' claim.

Moreover, as discussed above with respect to the latent defect exclusion, these exclusions

---

[6]Notably, the cases cited by Defendant in support of its construction of the corrosion exclusion were decided at the summary judgment stage of the litigation or after trial, not the pleadings stage like Defendant's Motion. Moreover, these cases are not binding on this Court and/or are generally distinguishable, as well. *See, e.g., Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-664, 2005 Ohio App. LEXIS 981, at *17 (Ohio Ct. App. Mar. 8, 2005) (applying Ohio law and affirming application of a rust and corrosion exclusion in a builder's risk policy where parties stipulated that the cause of the loss was rust and corrosion); *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So.2d 981 (La. 1991) (construing a boiler and machinery policy following trial on the merits); *Travco,* 2010 WL 2222255 (applying Virginia law in the context of a summary judgment motion).

were meant to apply to maintenance-type losses, such as the expected and natural occurrence of corrosion, which causes damage to property over time.  The FC&S Bulletin also states that "[t]he intent of the corrosion exclusion is to exclude corrosion that is part of the normal aging process.  The corrosion that results from the [Chinese] drywall is not part of a normal process and is directly related to the vapors emitted from the drywall.  Therefore, in our opinion, it would still be covered." FC&S, "Chinese Drywall and Corrosion".  The chemical reaction resulting from the Chinese manufactured drywall emissions which caused Plaintiffs' damage is not the normal anticipated corrosion.  The reaction causing damage to Plaintiffs' property is a sulfidation reaction which occurs rapidly and begins immediately upon exposure of the metal to the sulfurous compounds and moisture.  The types of damages excluded under the "corrosion"exclusion are damages that occur naturally, are expected, and take years to substantiate into actual damage.  Because the sulfidation reaction caused by the sulfurous compounds emitted by the Chinese manufactured drywall in Plaintiffs' home is wholly different from the type of oxidation reaction which occurs naturally to copper and silver over many years, the damages to Plaintiffs' home caused by the sulfidation reaction are unanticipated and wholly outside of the scope of this exclusion.

There are no allegations in Plaintiffs' Complaint that their loss or damage was "caused by" corrosion.  Plaintiffs allege that their damage was caused by Chinese manufactured drywall. (Complaint, ¶19).  Defendant cannot meet its burden, and its Motion to Dismiss should be denied.

### 3.    The pollution exclusion does not bar Plaintiffs' claim.

For another affirmative defense supporting its Motion, Defendant cites the pollution exclusion in its policy.  The pertinent language in Defendant's policy relating to the pollution exclusion provides as follows:

11

We do not insure, however, for loss:

               \*    \*    \*

 2.  Caused by:

               \*    \*    \*

   (e) Any of the following:

               \*    \*    \*

     (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

     Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed;

               \*    \*    \*

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

(Defendant's Motion, Ex. 1, p.11of 16)

The pollution exclusion will not operate to deny coverage in Louisiana.  (*See* Ex.  In *Doerr v. Mobil Oil Corp*., 00-0947 (La. 12/19/00), 774 So. 2d 119, 127, Chief Justice Calogero examined the history of the pollution exclusion in insurance contracts to conclude that "there is no history in the development of the exclusion to suggest it was ever intended to apply to anyone other than an active polluter of the environment."  The Court found that a literal interpretation of the pollution exclusion would lead to absurd results, and that the pollution exclusion is designed to exclude coverage for environmental pollution only and not for all interactions with irritants or contaminants of any kind. *Id.* at 135. *See also Thompson v. Temple*, 580 So.2d 1133 (La. App. 4 Cir. 1991) (pollution exclusions are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time; finding that the pollution exclusion clause in a homeowner's policy does not operate to exclude injuries caused by a leaking gas heater); *West v. Board of Commissioners of the Port of New Orleans*, 591 So.2d 1358 (La. App.

4 Cir. 1991) (finding that the pollution exclusion is applicable to polluters - those who indifferently pollute the environment - and not those who only incidentally possess the pollutant in the course of their other business; application of the exclusion is a question of fact for the finder of fact).

The Louisiana Supreme Court provided three considerations for determining whether a "total pollution exclusion" in a commercial liability policy will preclude coverage:

1.   Whether the insured is a "polluter" within the meaning of the exclusion;

2.   Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and

3.   Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

*Id*. at 135-136.

Applying these considerations to this case in the homeowner context confirms the inapplicability of the pollution exclusion.

With respect to the first factor - whether Plaintiffs are "polluters" - the Court noted that this fact-based conclusion should be made with consideration of a variety of factors, such as the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, or whether the insured should have known from reading the exclusion that a separate policy covering pollution damages would be necessary for the insured's business. *Doerr*, 774 So.2d at 135.  Obviously, Plaintiffs are not "polluters".

Whether the substance is a "pollutant" is also a fact-based conclusion, which according to the Louisiana Supreme Court involves the following analysis:

[T]he determination of whether the injury-causing substance is a "pollutant" is also a fact-based conclusion that should encompass a wide variety of factors . . . . Consequently, when making this determination, the trier of fact should consider the

13

> nature of the injury-causing substance, its typical usage, the quantity of the discharge,
> whether the substance was being used for its intended purpose when the injury took
> place, whether the substance is one that would be viewed as a pollutant as the term
> is generally understood, and any other factor the trier of fact deems relevant to that
> conclusion.

*Id.* at 136.

These factors are the result of long-standing policy and case law finding that the term

"pollutant" is often too broadly interpreted and subject to abuse in the claims handling process.  For

example, the Louisiana Commissioner of Insurance has described this State's ongoing concern over

the broad interpretation of a qualifying "pollutant" in standard pollution exclusions for commercial

lines:

> We are concerned that the broad definition given the term "pollutant" creates an
> opportunity for abuse. This is a particular concern as regards commercial enterprises
> whose ongoing business activities do not present a risk to the environment.  For
> example, we have found instances where it has been argued that any thing and/or
> matter that harms a person, whether or not it has toxic or hazardous properties is, de
> facto an irritant and therefore a pollutant, thereby triggering the pollution
> exclusion…The appropriate use of the pollution exclusion in claims handling is an
> issue of grave concern.

Advisory Letter Number 97-01, Commissioner of Insurance, State of Louisiana (June 4, 1997). The

"pollutant" at issue here is contained within drywall – a material not known to commonly contain

any dangerous substances.

As for the final consideration, whether there was a discharge or seepage of the alleged

pollutant, the Louisiana Supreme Court identified the inquiry as follows:

> Finally, the determination of whether there was "discharge, dispersal, seepage,
> migration, release or escape" is likewise a fact-based conclusion that must result after
> a consideration of all relevant circumstances.  Specifically, the trier of fact should
> consider whether the pollutant was intentionally or negligently charged, the amount
> of the injury-causing substance discharged, whether the actions of the alleged polluter
> were active or passive, and any other factor the trier of fact deems relevant.  These

> factual conclusions should be made to assist a court in determining whether the total
> pollution exclusion in any particular case will exclude coverage for a claim.

*Id*. at 135-136.  Defendant cannot reasonably content that there was an intentional discharge, as

Plaintiffs had no knowledge that the drywall was anything other than drywall.  Further, the amount

of the discharge – while possibly significant to the homeowner – is likely not of an amount that

would be dangerous to an entire community.

Defendant's analysis of its contamination exclusion omits any discussion of the *Doerr* case.

Instead, Defendant cites to a number of cases in other jurisdictions, none of which are binding on

this Court, for the proposition that its pollution exclusion should be enforced in the context of a

homeowners policy.  Notably, the majority of cases cited by Defendant are CGL or liability policies,

not homeowner policies, and these cases also do not decide the application of the pollution exclusion

at the pleadings stage, as Defendant seeks here.  *See Wakefield Pork, Inc. v. RAM Mut. Ins. Co.*, 731

N.W.2d 154, 161 (Minn. App. 2007) (addressing liability coverage on a summary judgment motion);

*Brown v. Am. Motorist Ins. Co.*, 930 F.Supp. 207, 208-209 (E.D. Pa. 1996) (homeowners policy

construed in context of a motion for summary judgment); *Travco*, 2010 WL 2222255 (applying

Virginia law on motions for summary judgment).  Defendant ignores the detailed discussion and

analysis of the Louisiana Supreme Court in *Doerr* and asks this Court to ignore it, as well.

Plaintiffs' Complaint contains specific allegations relating to the inapplicability of the

pollution exclusion to their claim:

> The Pollution Exclusion was never intended to apply to residential homeowner's
> claims for damages caused by substances emitted from building materials.  The
> Pollution Exclusion was intended to apply only to those incidents which would
> otherwise cause environmental damage and/or otherwise originate from a source
> outside of the home.

(<u>Complaint</u>, ¶34)  Plaintiffs' Complaint does not support the application of the pollution exclusion.

Defendant's Motion to Dismiss should be denied.

### 4.    The faulty materials exclusion does not bar Plaintiffs' claims.

As another affirmative defense, Defendant argues that its policy does not provide coverage

for  Plaintiffs' claims, as it excludes loss or damage caused by faulty building materials.  The

pertinent language in Defendant's policy relating to the faulty materials exclusion provides as

follows:

> 2.    We do not insure for loss to property described in Coverages A and
> B caused by any of the following.  However, any ensuing loss to
> property described in Coverages A and B not excluded or excepted
> in this policy is covered.
> *   *   *
> c.  Faulty, inadequate or defective:
> *   *   *
> 3.    Materials used in repair, construction, renovation
> or remodeling;
> *   *   *
> of part or all of any property whether on or off the "residence premises".

(Defendant's Motion, Ex. 1, p.13 of 16)

With respect to the drywall itself, Defendant has not met its burden of proof that this

exclusion is applicable.  The terms "faulty", "inadequate" and "defective" are not defined in

Defendant's policy; thus, they are interpreted according to their ordinary meaning.  According to

Merriam-Webster's online dictionary, "faulty" means "marked by fault or defect." <u>Merriam-Webster</u>

<u>Online Dictionary</u>, 2010, <u>http://www.merriam-webster.com/dictionary/faulty</u>.  "Inadequate" means

"not adequate" or "insufficient".  <u>Merriam-Webster Online Dictionary</u>, 2010, <u>http://www.merriam-</u>

<u>webster.com/dictionary/inadequate</u>.  "Defective" means "imperfect in form or function" or "falling

below the norm in structure or in mental or physical function". <u>Merriam-Webster Online Dictionary</u>,

16

2010, http://www.merriam-webster.com/dictionary/defective.  Defendant has not shown that the drywall at issue is faulty, inadequate or defective, as defined above, and there are no such allegations on the face of Plaintiffs' Complaint.

Indeed, as alleged by Plaintiffs', the drywall in their homes was performing the purpose of drywall, *i.e.*, serving as a finishing material, holding paint and art, providing fire protection, providing sound and heat insulation. (Complaint, ¶36); *see also, In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 798 (in discussing the application of the economic loss rule and analogizing the facts in the Chinese drywall litigation to those of asbestos cases, the Court stated, "[t]he Chinese drywall has been installed in numerous homes and in each instance is functioning as drywall.").  The damage caused by the drywall was based on a quality of the drywall distinct from these roles.[7]

There is nothing on the face of Plaintiffs' Complaint to support an application of the faulty materials exclusion.  Defendant's Motion to Dismiss should be denied.

### 5.    Ensuing Loss

Notably absent from discussion in Defendant's Motion is the ensuing loss provision of the policy, which restores coverage for ensuing losses not otherwise excluded by the policy.  The latent defect exclusion, the corrosion exclusion and the pollution exclusion contain a clause providing that "any ensuing loss to property described in Coverages A not precluded by any other provision in this policy is covered." (Defendant's Motion, Ex. 1, p.11 of 16)  The faulty materials exclusion contains a similar provision. (Defendant's Motion, Ex. 1, p.13 of 16)

---

[7]Defendant again relies heavily on *Travco* and cases from other jurisdictions interpreting and applying a faulty materials exclusion using law other than Louisiana law and in different context, *i.e.*, motions for summary judgment or judgment following trial.

The industry FC&S Bulletin noted that any ensuing loss "as a result of the faulty drywall would be covered, for example if the drywall caused corrosion damage to wires or pipes." FC&S Online, Chinese Drywall, June 2009, http://www.nationalunderwriterpc.com. The FC&S Bulletin regarding Chinese drywall states that there "is coverage for ensuing losses from faulty workmanship." FC&S Online, Chinese Drywall: The Next Big Issue September 2009, http://www.nationalunderwriterpc.com.

Louisiana courts have applied the ensuing loss provision and allowed coverage for damages resulting from a previous excluded loss. *See, e.g., Dawson Farms, L.L.C. v. Millers Mutual Fire Insurance Co.*, 34, 801 (La. App. 2nd Cir. 8/1/01), 794 So.2d 949, 952 (faulty design and/or workmanship exclusion did not exclude damages due to the resulting loss, therefore the insured was entitled to coverage for losses associated with the damages to the contents of the building); *Lake Charles Harbor & Terminal District v. Imperial Casualty & Indemnity Co.*, 857 F.2d 286, 288 (5th Cir. 1988) (policy excluded damages caused by a mechanical or machinery breakdown but covered losses due to ensuing perils, indicating damages caused by the mechanical breakdown were covered under the policy); *Holden v. Connex-Metalna*, 2000 WL 1876338, *7-8 (E.D. La. 12/12/00) (court permitted the insured to recover damages based on the ensuing loss exception to the exclusion for machinery breakdown and faulty workmanship).

In *Holden*, the court found that the faulty workmanship exclusion applied to the specific components of a crane which were identified as being faulty but found coverage for the damage caused by the crane when it fell, including the loss of the crane itself, pursuant to the ensuing loss provision of the property policy. *Holden*, 2000 WL 1876338.

> The exclusions at issue here are designed to ensure that the property insurers do not become warrantors of the crane's quality.  As such, the property policies do not cover worn or broken parts, pay for repairs when a mechanical system or process breaks down, or fix a design problem.  In this case, to the extent that there was a flaw or defect in the quality of the crane it would have been that the boom and trolley were significantly heavier than intended in the design of the unloader.  Thus had it remained standing, any of the exclusions, if applicable, would have barred from coverage any costs to rebalance or redesign the crane. However, in this case, the unbalance triggered a series of ensuing events that lead to the complete destruction of the crane and other property….All damages caused by the falling crane, including the total loss of the crane itself are excepted under the "ensuing loss" proviso.

*Id*. at \*8-9.  Here, there is a distinct separation between what Defendant argues is the excluded loss, the Chinese drywall itself, and the ensuing losses, which are the damages caused by the sulphur compounds that the Chinese drywall emits.  Defendant's Motion to Dismiss should be denied.

### D.      Plaintiffs' Personal Property Claims

Plaintiffs recognize that while the policy provides "all risk" coverage for Plaintiffs' home, the policy provides coverage for personal property only if the loss to that personal property was caused by a listed peril.  (Defendant's Motion, Ex. 1, p.12 of 16)  The listed perils do not include the cause of Plaintiffs' loss; accordingly, Plaintiffs agree that the policy provides no coverage for the loss or damage to their personal property.

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

Dated: August 2, 2010                          Respectfully submitted,

                                               /s/ Russ M. Herman
                                               Russ M. Herman, Esq.

Leonard A. Davis, Esq.
Stephen J. Herman, Esq.
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor

Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
 Matthews, Martinez, Gonzales,
 Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000

Fax: (850) 435-7020   bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road

Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055   Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson

Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 2nd day of August, 2010.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com