# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: CHINESE-MANUFACTURED** | ) | **MDL NO. 2047** |
| **DRYWALL PRODUCTS LIABILITY** | ) | |
| **LITIGATION** | ) | **JUDGE FALLON** |
| ————————————————— | ) | |
| **This document relates to:** | ) | |
| | ) | **MAG. JUDGE WILKINSON** |
| ***Honore and Elaine Canty, et al.*** | ) | |
| ***v. Allstate Insurance Company,*** | ) | |
| ***et al.,*  Case No. 10-929** | ) | |
| ————————————————— | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT, ALLSTATE'S, MOTION TO DISMISS

Plaintiffs, Honore and Elaine Canty, submit this Opposition to Defendants, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Indemnity Company's ("Allstate"), Motion to Dismiss pursuant to Rule 12(b)(6). Defendants' arguments in support of their Motion to Dismiss rely on the language of their insurance policy which Defendants interpret as not providing coverage for Plaintiffs' alleged damage. As discussed more fully below, the pleadings demonstrate that Plaintiffs stated a claim for relief against Defendants, such that Defendants' Motion to Dismiss must be denied.

## I.     BACKGROUND

Plaintiffs brought this putative class action seeking a declaratory judgment that Defendants' homeowner insurance policy provides coverage for their loss and damage associated with Chinese manufactured drywall.  In denying Plaintiffs' claim, Defendants relied on a number of policy

provisions and exclusions, including the latent defect exclusion, corrosion exclusion, pollution exclusion and faulty materials exclusion. Defendants filed this Motion to Dismiss, seeking a determination that their exclusions, affirmative defenses to Plaintiffs' allegations, apply to bar all of Plaintiffs' loss or damage.

While Plaintiffs maintain that, on the merits, Defendants' policy exclusion affirmative defenses do not apply to the facts and circumstances surrounding Plaintiffs' claim, for purposes of their Motion to Dismiss, Plaintiffs' Complaint properly pleads a covered loss and no policy exclusions are apparent on the face of Plaintiffs' allegations. As discussed more fully below, Defendants' Motion to Dismiss should be denied.

## II.     ARGUMENT

### A.     Legal Standard for Rule 12(b)(6) Motion to Dismiss

The heavy burden needed to sustain a motion to dismiss is well known, as is the fact that motions to dismiss are viewed with disfavor and are rarely granted. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999); *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780, 788 (E.D. La. 2010). Here, this heavy burden belongs to Defendants, and they have failed to meet it.

"The purpose of a motion to dismiss, pursuant to FRCP 12(b)(6) is to test the sufficiency of the complaint, not to judge the merits of the case." *First Nat'l Bank of Louisville v. Lustig*, 809 F.Supp. 444, 446 (E.D.La.1992). In considering a motion to dismiss, the court must accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 285 (5th Cir. 1993). All ambiguities or doubts regarding the sufficiency of the claim must be resolved in favor of the plaintiff. *Whetstone*

*v. Jefferson Parish Public School Board*, 2010 WL 1936210 (E.D. La. 5/12/10). Any reasonable inferences that may be drawn from the complaint are also accepted as true. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face". *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 788.

Plaintiffs agree with Defendants that the insurance policy at issue in this litigation can be considered by the Court for purposes of Defendants' Motion to Dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The policy is central to Plaintiffs' claims and is referred to in Plaintiffs' Complaint; therefore, it is part of the pleadings.

However, while the policy is properly considered as part of the pleadings for purpose of Defendants' Motion to Dismiss, the policy exclusions raised by Defendants constitute affirmative defenses, which should not be considered at this stage in the litigation. An exception to this rule is if a successful affirmative defense appears on the face of plaintiffs' complaint. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1357 (3d ed. 2010); *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."); *see also Builders Mutual Ins. Co. v. Dragas Management Corp.*, 2010 WL 2813397 (E.D. Va. 7/15/10) (considering motion to dismiss by CGL carrier in Chinese drywall declaratory judgment action regarding coverage and finding that the court only needed address whether counterclaim adequately pled facts to support an "occurrence" under

the policy, as the "Total Pollution Exclusion" is an affirmative defense to coverage that is not addressed at this time). As discussed below, the exclusions raised by Defendants should not be considered at this time, as they constitute affirmative defenses not apparent on the face of Plaintiffs' Complaint.

     **B.**    **Plaintiffs Have Triggered Coverage and Alleged a Covered Loss to Dwellings.**

The insuring agreement in Defendants' policy relating to Plaintiffs' dwelling provides, "We will cover sudden and accidental direct physical loss to property described in **Coverage A- Dwelling Protection** and **Coverage B - Other Structures Protection** except as limited or excluded in this policy." (Defendants' Motion, Ex. A, p. All-Canty 40). In their Complaint, Plaintiffs allege that the drywall has caused physical loss and damage to their property. (Complaint, ¶18). Plaintiffs further alleged that the Chinese manufactured drywall emits compounds that cause rapid corrosion of air-conditioner coils, copper tubing, electrical wiring, computer wiring and other household items. (Complaint, ¶18) Plaintiffs' allegations must be taken as true for purposes of this Motion; therefore, Plaintiffs have alleged a covered loss.

Defendants' argument on this point misconstrues, confuses and in some cases, ignores Plaintiffs' allegations in this matter. Plaintiffs' allegations clearly state that their claim under Defendants' policy is for the damage to their home, *i.e.*, covered property, caused by Chinese manufactured drywall. Plaintiffs do not allege a claim for faulty construction, for defective material or for the cost to eliminate a defect.

Plaintiffs have the initial burden of establishing that their claim is a direct physical loss to covered property. Plaintiffs have met this burden, as they have alleged the Chinese manufactured

drywall caused physical loss and damage to their home and contents.[1] (Complaint, ¶18) Specifically, Plaintiffs alleged that the "Chinese drywall emits compounds that cause rapid corrosion of air-conditioning coils, copper tubing, electrical wiring, computer wiring and other household items." (*Id.*) The burden then shifts to Defendants to establish what portions, if any, of the damage was caused by an excluded peril or perils as defined by the policy. *Blackburn v. National Union Fire Ins. Co. of Pittsburgh*, 2000-2668 (La. 2001), 784 So.2d 637, 641; *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 1/21/09); *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 1/8/09).

Plaintiffs' have sufficiently alleged a covered loss under the policy and have therefore stated a claim. Defendants' Motion to Dismiss should be denied.[2]

### C.    Defendants' Policy Language Defense Does Not Support Their Motion

In support of their Motion to Dismiss, Defendants rely solely on the language of their policy, arguing that their policy does not provide coverage for Plaintiffs' claim arising from the presence of Chinese manufactured drywall in Plaintiffs' home. Defendants raise four specific provisions and/or exclusions in their policy that they contend defeat coverage for Plaintiffs' claim. As discussed below, Plaintiffs' claim is not excluded by these policy provisions. Defendants have failed

---

[1] Plaintiffs believe their allegations relating to their damage are satisfactory and meet the requirements of Rule 8. However, if the Court requires more specificity as to the nature of Plaintiffs' loss and damage, Plaintiffs request permission to amend their Complaint to elaborate on their claim for damage or loss under the policy.

[2] As noted above, the remainder of Defendants' arguments in support of their Motion to Dismiss are affirmative defenses and should not be considered in the context of Defendants' Motion to Dismiss. A review of the cases cited by Defendants in support of their Motion to Dismiss reveals that those cases were not decided on the pleadings, but were instead decided on motions for summary judgment or were judgments on the merits following trial. The legal analysis should end here, with the conclusion that Plaintiffs' Complaint contains sufficient allegations of coverage under the policy.

to carry their burden, and their Motion to Dismiss must be denied.[3]

> **1.     The corrosion exclusion does not bar Plaintiffs' claims.**

The first affirmative defense Defendants points to in support of their Motion to Dismiss is the corrosion exclusion. As with any exclusion, the burden of proof to establish that this exclusion applies is on Defendants. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364. Further, policies should be construed to effect, not deny, coverage. *Yount*, 627 So.2d at 151. Any ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

Defendants argue that Plaintiffs' loss is loss caused by corrosion and is consequently excluded. As an initial matter, the exclusion speaks to loss "caused by" corrosion. Here, the damage is not caused by corrosion. The damage is caused by the sulphur compounds being emitted from the drywall. This distinction has been recognized by at least one Louisiana court.[4]

---

[3] Also as discussed below, Defendants ask the Court to follow rulings of courts which were operating in the context of summary judgments. Defendants primarily rely on *Travco Ins. Co. v. Ward*, No. 10-14, 2010 WL 2222255 (E.D. Va. 6/3/10), applying Virginia law in the context of a motion for summary judgment. The *Travco* court acknowledged *Finger v. Audubon Ins. Co.*, No. 09-8071, 2010 WL 1222273 (La. Civ. Dist. Ct. Mar. 22, 1010), which applied Louisiana law and reached the opposite conclusions. The *Travco* court declined to follow *Finger*, citing instead, *Ross v. C. Adams Const. & Design, L.L.C.*, No. 676-185 (La. 24th Jud.Dist.Ct. April 14, 2010), which granted the insurer's summary judgment motion without any reasons for judgment. Defendants cite the *Ross* summary judgment ruling (which supplied no reasons for its ruling) to this Court to follow, as well. Defendants mention the *Finger* ruling only in passing, stating that it is distinguishable due to differences in the wording of the relative policies.

[4] Notably, the cases cited by Defendants in support of their construction of the corrosion exclusion were decided at the summary judgment stage of the litigation or after trial, not the pleadings stage like Defendants' Motion. Moreover, these cases are generally distinguishable, as well. *See, e.g., Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-664, 2005 Ohio App. LEXIS 981, at *17 (Ohio Ct. App. Mar. 8, 2005) (applying Ohio law and affirming application of a rust and corrosion exclusion in a builder's risk policy where parties stipulated that the cause of the loss was rust and corrosion);

In *Trus Joint MacMillan v. Neeb Kearney and Co., Inc.*, 2000 WL 306654, *2 (E.D. La. 3/23/00), the plaintiff contracted with defendant to store plaintiffs' steel bedplates in a warehouse. While the bedplates were in the warehouse, they became wet due to standing water and suffered extensive damages. Plaintiff filed a claim with the warehouse's insurer, who claimed the deterioration exclusion excluded coverage due to the corrosion, which read, "we do not pay for loss caused by contamination or deterioration, including corrosion." Finding coverage for the loss, the court stated as follows:

> Clearly, however, the exclusion is designed to apply where corrosion is the *cause* of property damage. It is not designed to preclude coverage when rust is the damage itself, as opposed to the cause of damage. Even if there were some ambiguity about the meaning of this exclusion, for purposes of summary judgment any doubts should be resolved against the exclusion.

*Id*. at *2. The same is true of Plaintiffs' claim.

Defendants cite to *Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, 2008 WL 4286538 (E.D. La. Sept. 17, 2008), in which Judge Englehardt applied the corrosion exclusion, as intended, to corrosion damage caused by gradual processes which occur naturally over time and are the foreseeable result of exposure to atmospheric moisture and outside elements. In *Transcontinental*, Hurricane Katrina blew cinder blocks from a neighboring building onto the roof of the insured's building. The damage to the roof exposed the insured's equipment to the outside elements and caused rust and deterioration over time. Judge Englehardt upheld the exclusion holding that the exclusion "simply excludes *all* loss or damage from rust or dampness of atmosphere." (*Id.* at p. 1) Judge Englehardt went on to hold that:

---

*Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So.2d 981 (La. 1991) (construing a boiler and machinery policy following trial on the merits); *Travco,* 2010 WL 2222255 (applying Virginia law in the context of a summary judgment motion).

> Given the value and nature of Guico's equipment that was exposed to outside elements following the damage to its building, it reasonably could have sought out an insurance policy that either did not contain these exclusions, or included an exception when these particular causes of loss occurred **as a natural and foreseeable result of a covered cause of loss**. (*Emphasis added*).

(*Id.*). The losses to the insured in *Transcontinental* were **foreseeable** after the insured's roof had been damaged, and as Judge Englehardt held, the insured could have and should have either taken steps to insure against such a foreseeable loss or taken steps to protect his valuable equipment which was exposed to the outside environment. The *Transcontinental* decision, therefore, is wholly distinguishable from the case at bar, where a rapid sulfidation reaction caused unforeseeable damages of which Plaintiffs were unable to prevent and is the reason Plaintiffs chose to protect themselves from such unanticipated losses by purchasing the insurance policy made the basis of this litigation.

Moreover, as discussed below with respect to the latent defect exclusion, these exclusions were meant to apply to maintenance-type losses, such as the expected and natural occurrence of corrosion, which causes damage to property over time. The Fire, Casualty and Surety (FC&S) Bulletin states that "[t]he intent of the corrosion exclusion is to exclude corrosion that is part of the normal aging process. The corrosion that results from the [Chinese] drywall is not part of a normal process and is directly related to the vapors emitted from the drywall. Therefore, in our opinion, it would still be covered." FC&S, "Chinese Drywall and Corrosion". The chemical reaction resulting from the Chinese manufactured drywall emissions which caused Plaintiffs' damage is not the normal anticipated corrosion. The reaction causing damage to Plaintiffs' property is a sulfidation reaction which occurs rapidly and begins immediately upon exposure of the metal to the sulfurous compounds and moisture. The types of damages excluded under the "corrosion" exclusion are

damages that occur naturally, are expected, and take years to substantiate into actual damage. Because the sulfidation reaction caused by the sulfurous compounds emitted by the Chinese manufactured drywall in Plaintiffs' home is wholly different from the type of oxidation reaction which occurs naturally to copper and silver over many years, the damages to Plaintiffs' home caused by the sulfidation reaction are unanticipated and wholly outside of the scope of this exclusion.

The cases cited by Defendants were decided at the summary judgment stage of the litigation, not the pleadings stage like Defendants' Motion.  Moreover, these cases are not binding on this Court and are generally distinguishable, as well. *See, e.g., Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-664, 2005 Ohio App. LEXIS 981, at *17 (Ohio Ct. App. Mar. 8, 2005) (applying Ohio law and affirming application of a rust and corrosion exclusion in a builder's risk policy where parties stipulated that the cause of the loss was rust and corrosion). *Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, 2008 WL 687184, *3 (E.D. La. Mar. 10, 2008) dealt with a situation where coverage was correctly excluded due to rust damage which, again, is a predictable and natural process caused by exposure to oxygen and moisture. *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 2009 WL 4855484 (S.D. Fla. Dec. 9, 2009) involved a insurance claim over a sunken yacht which sank due to a corroded, defective hose barb that took seven years to crack. (*Id.* at p. 4).  Another case cited by Defendants involved a mold claim, completely unrelated to the case at bar. *Church of the Palms-Presbyterian, Inc. v. Cincinnati Inc. Co.*, 4. Supp 2d 1339, 1342 (M.D. Fla. 2005). These cases are distinguishable from the case at bar and grant no support for Defendants' arguments.

The exclusion also includes loss "consisting of corrosion".  Even assuming this Court determines that the term "corrosion" applies to conditions other than naturally occurring corrosion, Defendants cannot meet their burden, in a Motion to Dismiss, of proving that the exclusion applies

to Plaintiffs' loss.  There are no allegations in Plaintiffs' Complaint that their loss or damage was "caused by" or is a loss "consisting of" corrosion.  Plaintiffs allege that their damage was caused by Chinese manufactured drywall. (Complaint, ¶18).  Plaintiffs further allege that Chinese drywall emits odorous gases that cause corrosion, *id.*; however, Plaintiffs never allege that their damage is or was caused by corrosion.  Plaintiffs' Complaint does not set forth Plaintiffs' specific items of loss or damage, as the pleading requirements of the Federal Rules do not require Plaintiffs to do so.  Further, Plaintiffs will rely on experts to determine the specific cause or mechanism of their damage.  Thus, the application of the corrosion exclusion is not apparent on the face of Plaintiffs' Complaint. Defendants' Motion to Dismiss should be denied.

## 2.      The latent defect exclusion does not bar Plaintiffs' claim.

For one of their affirmative defenses, Defendants argue that their policy does not provide coverage for Plaintiffs' claim, as it excludes loss or damage caused by a latent defect.  The pertinent language in Defendants' policy relating to the latent defect exclusion provides as follows:

> In addition, we do not cover loss consisting of or caused by any of the following:
>
> 15.   a)      wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;

 (Defendants' Motion, Ex. A, p. All-Canty 41)

The burden of proof to establish that this exclusion applies is on Defendants. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364.  Further, policies should be construed to effect, not deny, coverage. *Yount v. Maisano*, 627 So.2d 148, 151 (La. 1993).  Any ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

10

It should be noted that the term "latent defect" is not defined in Defendants' policy.[5] "Latent" is defined as "present and capable of becoming though not now visible, obvious, active, or symptomatic". Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/latent. There is no evidence that the problems with the Chinese manufactured drywall were latent, as the term is commonly understood. Chinese manufactured drywall began emitting sulphur compounds immediately upon installation. Further, there are no allegations of latency or of a defect in Plaintiffs' Complaint. Plaintiffs simply alleged that they discovered that their home was constructed using Chinese manufactured drywall in the Spring of 2009, and that the drywall caused and continues to cause physical loss and damage to the home. (Complaint, ¶19)

The insurance industry has defined the latent defect or inherent vice exclusion as "a quality within an object which makes it tend to destroy itself." WILLIAM H. RODDA, FIRE AND PROPERTY INSURANCE 298 (Prentice-Hall, Inc. 1956). For example, the tendency of rubber to destroy itself whether or not it is in use is an inherent vice. Id. The FC&S bulletin, used by the insurance industry to interpret and apply insurance policies, noted that the inherent vice or latent defect exclusion applies to "a loss due to any quality in the property that causes property to damage or destroy itself... that results from something within the property itself as opposed to some outside force." FC&S Online, Processors Coverage Form, Insurance Services Office Non-filed IM Coverage, December 2005, http://www.nationalunderwriterpc.com.

The exclusion originated in maritime law and speaks to the reasonable expectations of the

---

[5] Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. La. C.C. art. 2047; *Peterson v. Schimek*, 729 So.2d 1024, 1028-1029 (La. 1999).

parties to the contract.

> The underwriter is not liable for that loss or deterioration which arises solely from a principle of decay or corruption in the subject insured, or, as the phrase is, from its proper vice; as when fruit becomes rotten, or flour heats, or wine turns sour, not from external damage, but entirely from internal decomposition.

ARNOULD ON MARINE INSURANCE (11th ed) §778.

First party policies typically exclude damages due to an inherent vice or latent defect in order to prevent the insurer from having to compensate the insured for property that has its own shelf life and will eventually wear out or break down because of intrinsic quality or nature. Eugene Wollan, *Risks Not Taken*, JOHN LINER REVIEW 86 (Fall 2006).   This exclusion is meant to apply to maintenance type damage claims or claims that relate to the property itself breaking down in some way, or to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction.  *See Employers Cas. Co. v. Holm*, 393 S.W. 2d 363 (Tex. Civ. App. Houston 1965).  The loss excluded by this exclusion is an expected loss, for which property insurance does not apply.

Here, there is no evidence that the Chinese drywall that is installed in Plaintiffs' home is damaging or destroying itself.  Indeed, Plaintiffs' allegations clearly state just the opposite.  Plaintiffs allege that this exclusion

> was intended to apply to expected losses relating to the longevity of a given material and intended to exclude losses which must inevitably happen over time and/or will inevitably occur due to a defect within the item.  In either case the defect or the passage of time causes damage to the item itself, not to other items.  In homes containing Chinese manufactured drywall, the drywall itself is not damaged or defective relative to the expected performance of non-defective drywall.  Instead, Chinese manufactured drywall causes damage to other items but is itself undamaged.

(Complaint, ¶34)  Plaintiffs' claim relates to the damage to their home caused by the Chinese

manufactured drywall, which was an unexpected risk.  Plaintiffs' loss or damage, as alleged in Plaintiffs' Complaint, was not caused by a latent defect within the meaning of the above-quoted provision.  The damage to Plaintiffs' air conditioner, for example, was not caused by a latent defect in the air conditioner, or in the drywall, or in the home.  Defendants can cite to no allegations made by Plaintiffs to the contrary.  The same is true the other alleged items of Plaintiffs' damage. Plaintiffs' loss was unexpected, fortuitous and extraneous – the type of event for which Plaintiffs purchased insurance coverage.  There is nothing on the face of Plaintiffs' Complaint to support an application of the latent defect exclusion.  Defendants' Motion to Dismiss should be denied.[6]

### 3.      The pollution exclusion does not bar Plaintiffs' claim.

For another affirmative defense supporting their Motion, Defendants cite the pollution exclusion in their policy.  The pertinent language in Defendants' policy relating to the pollution exclusion provides as follows:

> We do not cover loss to the property described in **Coverage A–Dwelling Protection or Coverage B–Other Structures Protection** consisting of or caused by:
>
> *          *          *
>
> 14.      Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

(Defendants' Motion, Ex. A, pp. All-Canty 40-41)

The pollution exclusion will not operate to deny coverage in Louisiana.  (*See* Ex.  In *Doerr*

---

[6]In support of their argument that their latent defect exclusion supports their Motion to Dismiss, Defendants cite a number of cases, most of which are not binding on this Court. Notably, none of these cases found the latent defect exclusion to be applicable to a claim on a motion to dismiss, and many discuss the term "latent defect" in a context other than the latent defect exclusion in a homeowners insurance policy.

*v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So. 2d 119, 127, Chief Justice Calogero examined the history of the pollution exclusion in insurance contracts to conclude that "there is no history in the development of the exclusion to suggest it was ever intended to apply to anyone other than an active polluter of the environment." The Court found that a literal interpretation of the pollution exclusion would lead to absurd results, and that the pollution exclusion is designed to exclude coverage for environmental pollution only and not for all interactions with irritants or contaminants of any kind. *Id.* at 135. *See also Thompson v. Temple*, 580 So.2d 1133 (La. App. 4 Cir. 1991) (pollution exclusions are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time; finding that the pollution exclusion clause in a homeowner's policy does not operate to exclude injuries caused by a leaking gas heater); *West v. Board of Commissioners of the Port of New Orleans*, 591 So.2d 1358 (La. App. 4 Cir. 1991) (finding that the pollution exclusion is applicable to polluters - those who indifferently pollute the environment - and not those who only incidentally possess the pollutant in the course of their other business; application of the exclusion is a question of fact for the finder of fact).

The Louisiana Supreme Court provided three considerations for determining whether a "total pollution exclusion" in a commercial liability policy will preclude coverage:

1.    Whether the insured is a "polluter" within the meaning of the exclusion;

2.    Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and

3.    Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

*Id.* at 135-136.

Applying these considerations to this case in the homeowner context confirms the

14

inapplicability of the pollution exclusion.

With respect to the first factor - whether Plaintiffs are "polluters" - the Court noted that this fact-based conclusion should be made with consideration of a variety of factors, such as the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, or whether the insured should have known from reading the exclusion that a separate policy covering pollution damages would be necessary for the insured's business. *Doerr*, 774 So.2d at 135.  Obviously, Plaintiffs are not "polluters".

Whether the substance is a "pollutant" is also a fact-based conclusion, which according to the Louisiana Supreme Court involves the following analysis:

> [T]he determination of whether the injury-causing substance is a "pollutant" is also a fact-based conclusion that should encompass a wide variety of factors . . . . Consequently, when making this determination, the trier of fact should consider the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion.

*Id.* at 136.

These factors are the result of long-standing policy and case law finding that the term "pollutant" is often too broadly interpreted and subject to abuse in the claims handling process.  For example, the Louisiana Commissioner of Insurance has described this State's ongoing concern over the broad interpretation of a qualifying "pollutant" in standard pollution exclusions for commercial lines:

> We are concerned that the broad definition given the term "pollutant" creates an opportunity for abuse. This is a particular concern as regards commercial enterprises whose ongoing business activities do not present a risk to the environment.  For example, we have found instances where it has been argued that any thing and/or

15

> matter that harms a person, whether or not it has toxic or hazardous properties is, de
> facto an irritant and therefore a pollutant, thereby triggering the pollution
> exclusion…The appropriate use of the pollution exclusion in claims handling is an
> issue of grave concern.

Advisory Letter Number 97-01, Commissioner of Insurance, State of Louisiana (June 4, 1997). The

"pollutant" at issue here is contained within drywall – a material not known to commonly contain

any dangerous substances.

As for the final consideration, whether there was a discharge or seepage of the alleged

pollutant, the Louisiana Supreme Court identified the inquiry as follows:

> Finally, the determination of whether there was "discharge, dispersal, seepage,
> migration, release or escape" is likewise a fact-based conclusion that must result after
> a consideration of all relevant circumstances.  Specifically, the trier of fact should
> consider whether the pollutant was intentionally or negligently charged, the amount
> of the injury-causing substance discharged, whether the actions of the alleged polluter
> were active or passive, and any other factor the trier of fact deems relevant.  These
> factual conclusions should be made to assist a court in determining whether the total
> pollution exclusion in any particular case will exclude coverage for a claim.

*Id*. at 135-136.  Defendants cannot reasonably content that there was an intentional discharge, as

Plaintiffs had no knowledge that the drywall was anything other than drywall.  Further, the amount

of the discharge – while possibly significant to the homeowner – is likely not of an amount that

would be dangerous to an entire community.

Defendants cite several cases in support of their contention that their pollution exclusion

operates effectively to exclude coverage.  As an initial matter, all of these cases address the issue on

a summary judgment standard or, alternatively, are distinguishable.[7]  Further, Defendants ignore the

---

[7] *See Wakefield Pork, Inc. v. RAM Mut. Ins. Co.*, 731 N.W.2d 154, 161 (Minn. App.
2007) (addressing liability coverage on a summary judgment motion); *Barry Concrete, Inc. v.
Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766, 770 (M.D. La. 2008) (homeowners policy
construed in context of a motion for summary judgment); *American Cas. Co. Of Reading, Pa. v.
Myrick*, 304 F.2d 179 (5th Cir. 1962) (commercial policy appealed after jury verdict); *Sperling v.*

entirety of the *Doerr* decision by the Louisiana Supreme Court, stating that the decision "makes no sense in the context of a homeowner seeking coverage for damage to his house." (Defendants' Motion,  p. 20 of 27).   What Defendants fail to bring to this Honorable Court's attention is the analysis in *Doerr* by the Louisiana Supreme Court wherein it based its ruling in part on prior pollution exclusion case against Allstate Insurance Company in the context of a homeowners suit. The Court's analysis was as follows:

> In *Thompson v. Temple*, 580 So.2d 1133 (La.App. 4th Cir. 1991), the court of appeal established the first true "test" in Louisiana to determine whether or not a pollution exclusion would prevent coverage to an insured. In *Thompson*, the plaintiffs were overcome one evening by carbon monoxide leaking from a bathroom heater in the home they rented from Katie Temple. *See id.* at 1134.  Plaintiffs filed suit against Temple and her homeowner's insurance carrier, Allstate Insurance Company. *See id.* Allstate moved for summary judgment based on a pollution exclusion within the policy similar to the one in this case.  *See id.*  After the trial court granted the motion for summary judgment, the Fourth Circuit reversed and found that the exclusion did not apply to the facts of the case.  *See id.* at 1134.  More specifically, the court enunciated a test by reasoning that "[p]ollution exclusions are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time." *Id.* at 1134.  As the homeowner in this case was surely not an "active polluter," the court found that the pollution exclusion was inapplicable.  *See id.*

*Doerr*, 774 So. 2d at 130.  Clearly, the *Doerr* court contemplated the pollution exclusion in the context of a homeowner's policy as well as a CGL policy.  Consequently, Defendants attempt to distinguish *Doerr* fails, as do their arguments in favor of their Motion to Dismiss.

---

*Allstate Inem. Co.*, 182 Vt. 521, 944 A.2d 210 (2007) (homeowners policy construed in context of a motion for summary judgment); *Ho v. State Farm Fire & Cas. Co.*, 2005 WL 2600651 (Ohio App. – Cuyahoga City. Oct. 13, 2005) (homeowners policy construed in context of a motion for summary judgment); *McQuade v. Nationwide Mut. Fire Ins. Co.*, 587 F. Supp. 67 (D. Mass. 1984) (Plaintiff did not even file a timely opposition to defendant's motion to dismiss); *Travco*, 2010 WL 2222255 (applying Virginia law on motions for summary judgment).

Defendants also contend that because their pollution exclusion contains the word "contamination," Plaintiffs claims are excluded.  Defendants' policy contains no definition or guide to interpret the meaning of such broad terms as "irritant" or "contamination."  Courts have held that such terms as "irritant" and "contaminant" in the context of the pollution exclusion in insurance policies "are virtually boundless, for 'there is no substance or chemical in existence that would not irritate or damage some person or property.'" *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Inc. Co.*, 472 F.3d 33, at 47 (2nd Cir. 2006) (quoting *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir. 1992); *Herald Square Loft Corp. v. Merrimack Mut. Fire Ins. Co.*, 344 F.Supp. 2d915, 919-20 (S.D.N.Y. 2004).  The term "contamination" as used in the insurance policy made the basis of this litigation, is likewise "boundless" in its interpretation and therefore must be construed to effect, not deny, coverage.  Defendants' Motion to Dismiss must therefore fail.

Plaintiffs' Complaint contains specific allegations relating to the inapplicability of the pollution exclusion to their claim:

> The Pollution Exclusion was never intended to apply to residential homeowner's claims for damages caused by substances emitted from building materials.  The Pollution Exclusion was intended to apply only to those incidents which would otherwise cause environmental damage and/or otherwise originate from a source outside of the home.

(Complaint, ¶34)  Plaintiffs' Complaint does not support the application of the pollution exclusion. Defendants' Motion to Dismiss should be denied.

### 4.    The faulty materials exclusion does not bar Plaintiffs' claims.

As another affirmative defense, Defendants argue that their policy does not provide coverage for  Plaintiffs' claims, as it excludes loss or damage caused by faulty building materials.

With respect to the drywall itself, Defendants have not met their burden of proof that this exclusion is applicable.   The terms "faulty", "inadequate" and "defective" are not defined in Defendants' policy; thus, they are interpreted according to their ordinary meaning.  According to Merriam-Webster's online dictionary, "faulty" means "marked by fault or defect." Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/faulty.  "Inadequate" means "not adequate" or "insufficient".  Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/inadequate.  "Defective" means "imperfect in form or function" or "falling below the norm in structure or in mental or physical function". Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/defective.  Defendants have not shown that the drywall at issue is faulty, inadequate or defective, as defined above, and there are no such allegations on the face of Plaintiffs' Complaint.

Indeed, as alleged by Plaintiffs', the drywall in their home was performing the purpose of drywall, *i.e.*, for hanging wall-mounted effects, for painting, for heat insulation, as a sound barrier and as a partition between areas in the home.   (Complaint, ¶35); *see also, In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 798 (in discussing the application of the economic loss rule and analogizing the facts in the Chinese drywall litigation to those of asbestos cases, the Court stated, "[t]he Chinese drywall has been installed in numerous homes and in each instance is functioning as drywall.").  The damage caused by the drywall was based on a quality of the drywall distinct from these roles.[8]

---

[8] Defendants again rely heavily on *Travco*, which applies Virginia law in the context of a summary judgment motion.  In *Travco*, the court looked outside of the pleadings in that case and  found the insured's allegations of "defect" in documents in another proceeding to "certainly weigh[] in favor of the application of the exclusion". *Travco*, 2010 WL at *13.  The other cases on which Defendants rely are also distinguishable in

There is nothing on the face of Plaintiffs' Complaint to support an application of the faulty materials exclusion.  Defendants' Motion to Dismiss should be denied.

**D.      Plaintiffs' Personal Property Claims**

Plaintiffs recognize that while the policy provides "all risk" coverage for Plaintiffs' home, the policy provides coverage for personal property only if the loss to that personal property was caused by a listed peril.  The listed perils do not include the cause of Plaintiffs' loss; accordingly, Plaintiffs agree that the policy provides no coverage for the loss or damage to their personal property.

**E.      Plaintiffs Have Stated a Claim for Bad Faith**

The validity of Plaintiffs' bad faith claims rests on whether or not Plaintiffs have alleged a claim for coverage under the policy.  As set forth above, Plaintiffs have sufficiently stated a claim for coverage under the policy; therefore, Plaintiffs have also properly alleged a bad faith claim.

**G.      Plaintiffs Have Stated Sufficient Grounds for Injunctive Relief**

Defendants contest Plaintiffs' request for injunctive relief by stating that Plaintiffs "cannot succeed on the merits of their claims."  (Defendants' Motion, p. 25 of 27).  In so far as Plaintiffs have demonstrated a likelihood of success on the merits by virtue of their allegations and arguments contained within this memorandum, Plaintiffs request for injunctive relief should be granted.

---

a number of respects.  None of the decisions in those cases were based solely on the pleadings.  Instead, these cases were decided on motions for summary judgement or following trial on the merits.  Further, while some of these cases applied the faulty materials exclusion, the cases dealt with faulty workmanship, as opposed to faulty material. *See, e.g., Holland v. Breaux*, 2005 WL 3542899 (E.D. La. 11/22/05); *Husband v. Lafayette*, 635 So.2d 309 (La. App. 5 Cir. 1994) (exclusion found to be inapplicable); and *Carney v. Assurance Co. of America*, 2005 WL 899843 (D. Md. 4/19/05) (construing a builders risk policy).

III.    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Dated: August 2, 2010                         Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman, Esq.
Leonard A. Davis, Esq.
Stephen J. Herman, Esq.
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Dawn M. Barrios | Daniel E. Becnel, Jr. |
| Barrios, Kingsdorf & Casteix, LLP | Becnel Law Firm. LLC |
| 701 Poydras Street, Suite 3650 | P.O. Drawer H |
| New Orleans, LA 70139 | 106 W. Seventh Street |
| Phone: (504) 524-3300 | Reserve, LA 70084 |
| Fax: (504) 524-3313 | Phone: (985) 536-1186 |
| Barrios@bkc-law.com | Fax: (985) 536-6445 |
| | dbecnel@becnellaw.com |

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 2nd day of August, 2010.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com