# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | JUDGE FALLON |
| This document relates to: | |
| *David Bronaugh and Heather Bronaugh v. USAA Casualty Insurance Co.* Case No. 09-CV-7393 | MAG. JUDGE WILKINSON |

### PLAINTIFFS' OPPOSITION TO DEFENDANT, USAA CASUALTY INSURANCE COMPANY'S, MOTION TO DISMISS

Plaintiffs, David and Heather Bronaugh, submit this Opposition to Defendant, USAA Casualty Insurance Company's, Motion to Dismiss pursuant to Rule 12(b)(6). Defendant's arguments in support of its Motion to Dismiss rely on the language of its homeowners insurance policy which Defendant interprets as not providing coverage for Plaintiffs' alleged damage. As discussed more fully below, Plaintiffs have pled factual allegations sufficient to state a claim for relief against Defendant, such that Defendant's Motion to Dismiss must be denied.

## I.     BACKGROUND

Plaintiffs bring this action following Defendant's denial of their insurance claim for coverage under Plaintiffs' homeowner policy. In denying Plaintiffs' claim, Defendant relied upon a number of policy provisions and exclusions, including the inherent vice or latent defect exclusion, the faulty materials exclusion, the corrosion exclusion and the pollution exclusion. Defendant filed this

1

Motion to Dismiss, seeking a determination that its exclusions, affirmative defenses to Plaintiffs' allegations, apply to bar all of Plaintiffs' loss or damage.

While Plaintiffs maintain that, on the merits, Defendant's policy exclusion affirmative defenses do not apply to the facts and circumstances surrounding Plaintiffs' claim, for purposes of its Motion to Dismiss, Plaintiffs' Petition properly pleads a covered loss and no policy exclusions are apparent on the face of Plaintiffs' allegations.  As discussed more fully below, Defendant's Motion to Dismiss should be denied.

## II.   ARGUMENT

### A.   Legal Standard for Rule 12(b) Motion to Dismiss

The heavy burden needed to sustain a motion to dismiss is well known, as is the fact that motions to dismiss are viewed with disfavor and are rarely granted. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999); *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780, 788 (E.D. La. 2010).  Here, this heavy burden belongs to Defendant, and it has failed to meet it.

"The purpose of a motion to dismiss, pursuant to FRCP 12(b)(6) is to test the sufficiency of the complaint, not to judge the merits of the case." *First Nat'l Bank of Louisville v. Lustig*, 809 F.Supp. 444, 446 (E.D.La. 1992).  In considering a motion to dismiss, the court must accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 285 (5th Cir. 1993).  All ambiguities or doubts regarding the sufficiency of the claim must be resolved in favor of the plaintiff.  *Whetstone v. Jefferson Parish Public School Board*, 2010 WL 1936210 (E.D. La. 5/12/10).  Any reasonable inferences that may be drawn from the complaint are also accepted as true. *Tuchman v. DSC*

*Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face".  *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 788.

Plaintiffs agree with Defendant that the insurance policy at issue in this litigation can be considered by the Court for purposes of Defendant's Motion to Dismiss. *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).  The policy is central to Plaintiffs' claims and is referred to in Plaintiffs' Petition; therefore, it is part of the pleadings.

However, a number of other documents referenced in Defendant's Motion are not part of the pleadings and are not properly considered in conjunction with Defendant's Motion to Dismiss.  This includes Plaintiffs' state court petition and amended petitions against Plaintiffs' contractor and drywall supplier and the pleadings in the Omnibus Class Action Complaint pending in this Court.  Defendant's attempts to attribute allegations made in those pleadings to Plaintiffs for purposes of testing the sufficiency of Plaintiffs' Petition in the present action should be rejected.  At issue here is whether Plaintiffs have properly pled a claim against Defendant in this case.

However, while the policy is properly considered as part of the pleadings for the purpose of Defendant's Motion to Dismiss, the policy exclusions raised by Defendant constitute affirmative defenses, which should not be considered at this stage in the litigation.  An exception to this rule is if a successful affirmative defense appears on the face of the plaintiff's complaint. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1357 (3d ed. 2010); *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although

dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."); *see also Builders Mutual Ins. Co. v. Dragas Management Corp.*, 2010 WL 2813397 (E.D. Va. 7/15/10) (considering motion to dismiss by CGL carrier in Chinese drywall declaratory judgment action regarding coverage and finding that the court only needed address whether counterclaim adequately pled facts to support an "occurrence" under the policy, as the "Total Pollution Exclusion" is an affirmative defense to coverage that is not addressed at this time). As discussed below, the exclusions raised by Defendant should not be considered at this time, as they constitute affirmative defenses not apparent on the face of Plaintiffs' Petition.

**B.      Plaintiffs Have Alleged a Breach of Contract Claim Against Defendant**

Plaintiffs allege a breach of contract claim against Defendant resulting from Defendant's denial of Plaintiffs' insurance claim made pursuant to the homeowners insurance policy issued to Plaintiffs by Defendant. Plaintiffs' Petition, originally filed in state court, contains the following material allegations:

- Plaintiffs' policy issued by Defendant is an all-risk policy, providing coverage for all risks of direct physical loss or damage to the home, contents and other permanent structures unless an exclusion applies. (Petition, ¶7)

- A valid contract of insurance exists between Plaintiffs and Defendant providing coverage for the loss and damage caused by the Chinese drywall. (Petition, ¶13)

- On June 22, 2009, Plaintiffs provided notice of their claim relating to the presence of Chinese drywall in Plaintiffs' home to Defendant by phone to Defendant's claims department.... (Petition, ¶8)

- On June 24, 2009, Defendant notified Plaintiffs by letter that it was denying coverage for damage caused by the Chinese drywall. (Petition, ¶11)

- The damage and loss sustained by Plaintiffs was caused by the presence of Chinese

drywall in Plaintiffs' home; yet, Defendant has failed to meet its obligations under the policy of insurance and has failed and/or refused to cover the loss sustained by Plaintiffs. (Petition, ¶15)

• Defendant has breached its policy by unjustifiably denying Plaintiffs' claim for covered damages. (Petition, ¶16)

• As a direct and proximate result of the breach by Defendant, Plaintiffs were deprived of the benefit of insurance coverage for which Defendant was paid substantial premiums, and, accordingly, Plaintiffs have suffered and will suffer substantial economic damage, particularly associated with their remediation efforts. (Petition ¶17).

Thus, Plaintiffs' have properly alleged a claim for breach of contract against Defendant.

## C.   Plaintiffs Have Triggered Coverage and Alleged a Covered Loss to Dwelling

The insuring agreement in Plaintiffs' policy states, "We insure against risks of direct physical loss to property described in Coverages A and B...." (Defendant's Motion to Dismiss, Ex. 1, p.28) Coverage A is the dwelling coverage for Plaintiffs' home. (Defendant's Motion to Dismiss, Ex. 1, pp.10, 24)  Plaintiffs allege in their Petition that "their home was constructed using Chinese manufactured drywall, which caused and continues to cause physical loss and damage to Plaintiffs' home and contents." (Petition, ¶6)  Plaintiffs' allegations must be taken as true for purposes of this Motion; therefore, Plaintiffs have alleged a covered loss.

Defendant's argument on this point misconstrues, confuses and in some cases, ignores Plaintiffs' allegations in this matter.  Defendant argues that Plaintiffs have not alleged a covered loss because Plaintiffs' allegations that they have sustained property damage to their house arising from the installation of defective drywall does not present a "direct, physical loss" within the terms of the Policy. (Memorandum in Support of Motion to Dismiss ("Defendant's Memorandum"), p.9) Defendant further construes Plaintiffs' Petition as containing allegations of alleging inherently

5

defective drywall that is completely useless and has never been in an initial satisfactory state. (*Id.*, p.10)  Finally, Defendant suggests that Plaintiffs' claim concerns the cost of repairing or replacing the drywall to eliminate an alleged defect, which Defendant contends is not a covered loss. (*Id.*, p.11)

Contrary to Defendant's assertions, Plaintiffs' allegations clearly state that their claim under Defendant's policy is for the damage to their home, *i.e.*, covered property, caused by Chinese manufactured drywall.  Plaintiffs do not allege a claim for faulty construction, for defective material or for the cost to eliminate a defect.  The words "defective", "inherently defective" or "completely useless" are not found anywhere in Plaintiffs' Petition, which is what is considered in Defendant's Motion to Dismiss.  Furthermore, since Defendant issued the homeowners policy of insurance to Plaintiffs, Defendant cannot serious contend that Plaintiffs' home was not in a satisfactory state at the time it made the decision to provide homeowners' coverage for that property.

Plaintiffs have the initial burden of establishing that their claim is a direct physical loss to covered property.  Plaintiffs have met this burden, as they have alleged the Chinese manufactured drywall caused physical loss and damage to their home and contents.[1] (Petition, ¶6)  Specifically, Plaintiffs alleged that the "Chinese drywall emits odorous gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items." (*Id.*)  The burden then shifts to Defendant to establish what portions, if any, of the damage was caused by an excluded peril or perils as defined by the policy. *Blackburn v. National Union Fire Ins. Co. of Pittsburgh*, 2000-2668 (La. 2001), 784 So.2d 637, 641; *Dickerson v.*

---

[1]Plaintiffs believe their allegations relating to their damage are satisfactory and meet the requirements of Rule 8.  However, if the Court requires more specificity as to the nature of Plaintiffs' loss and damage, Plaintiffs request permission to amend their Petition to elaborate on their claim for damage or loss under the policy.

*Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 1/21/09); *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 1/8/09).

Plaintiffs' have sufficiently alleged a covered loss under the policy and have therefore stated a claim.  Defendant's Motion to Dismiss should be denied.[2]

**D.     Defendant's Policy Language Defense Does Not Support Its Motion to Dismiss**

In support of its Motion to Dismiss, Defendant relies solely on the language of its policy, arguing that its policy does not provide coverage for Plaintiffs' claim arising from the presence of Chinese manufactured drywall in Plaintiffs' home.  Defendant raises five specific provisions and/or exclusions in its policy that it contends defeat coverage for Plaintiffs' claim.  As discussed below, Plaintiffs' claim is not excluded by these policy provisions.  Defendant has failed to carry its burden, and its Motion to Dismiss must be denied.

**1.     The inherent vice or latent defect exclusion does not bar Plaintiffs' claim**

For one of its affirmative defenses, Defendant argues that its policy does not provide coverage for  Plaintiffs' claim, as it excludes loss or damage caused by an inherent vice or a latent defect.  The pertinent language in Defendant's policy relating to the inherent vice or latent defect exclusion provides as follows:

> We insure against risk of direct, physical loss to property described in Coverages A and B; however, we do not insure loss:
>
> *   *   *
>
> 3.  caused by or consisting of:

_____

[2]As noted above, the remainder of Defendant's arguments in support of its Motion to Dismiss are affirmative defenses and should not be considered in the context of Defendant's Motion to Dismiss.  The legal analysis should end here, with the conclusion that Plaintiffs' Petition contains sufficient allegations of coverage under the policy.

* * *

b.  inherent vice, latent defect, mechanical breakdown;

* * *

Under items 2 and 3, any ensuing loss to property described in Coverages
A and B not excluded or excepted in this policy is covered.

(Defendant's Motion to Dismiss, Ex. 1, pp.28-29)

The burden of proof to establish that this exclusion applies is on Defendant. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364.  Further, policies should be construed to effect, not deny, coverage. *Yount v. Maisano*, 627 So.2d 148, 151 (La. 1993).  Any ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

It should be noted that the term "latent defect" is not defined in Defendant's policy.[3]  "Latent" is defined as "present and capable of becoming though not now visible, obvious, active, or symptomatic".  Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/latent.  There is no evidence that the problems with the Chinese manufactured drywall were latent, as the term is commonly understood.   The scientific evidence indicates the Chinese manufactured drywall began emitting sulphur compounds immediately.  Further, there are no allegations of latency or of a defect in Plaintiffs' Petition.  Plaintiffs simply alleged that they discovered that their  home was constructed using Chinese manufactured drywall in the Spring of 2009, and that the drywall caused physical loss and damage to the home and contents. (Petition, ¶6)

The insurance industry has defined the latent defect or inherent vice exclusion as "a quality

---

[3]Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. La. C.C. art. 2047; *Peterson v. Schimek*, 729 So.2d 1024, 1028-1029 (La. 1999).

within an object which makes it tend to destroy itself." WILLIAM H. RODDA, FIRE AND PROPERTY INSURANCE 298 (Prentice-Hall, Inc. 1956). For example, the tendency of rubber to destroy itself whether or not it is in use is an inherent vice. *Id*. The Fire, Casualty and Surety (FC&S) Bulletin, used by the insurance industry to interpret and apply insurance policies, noted that the inherent vice or latent defect exclusion applies to "a loss due to any quality in the property that causes property to damage or destroy itself... that results from something within the property itself as opposed to some outside force." FC&S Online, Processors Coverage Form, Insurance Services Office Non-filed IM Coverage, December 2005, http://www.nationalunderwriterpc.com.

The exclusion originated in maritime law and speaks to the reasonable expectations of the parties to the contract.

> The underwriter is not liable for that loss or deterioration which arises solely from a principle of decay or corruption in the subject insured, or, as the phrase is, from its proper vice; as when fruit becomes rotten, or flour heats, or wine turns sour, not from external damage, but entirely from internal decomposition.

ARNOULD ON MARINE INSURANCE (11th ed) §778.

First party policies typically exclude damages due to an inherent vice or latent defect in order to prevent the insurer from having to compensate the insured for property that has its own shelf life and will eventually wear out or break down because of intrinsic quality or nature. Eugene Wollan, *Risks Not Taken*, JOHN LINER REVIEW 86 (Fall 2006). This exclusion is meant to apply to maintenance type damage claims or claims that relate to the property itself breaking down in some way, or to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction. *See Employers Cas. Co. v. Holm*, 393 S.W. 2d 363 (Tex. Civ. App. Houston 1965). The loss excluded by this exclusion is an expected loss, for which property insurance does

not apply.

Here, there is no evidence that the Chinese drywall that is installed in Plaintiffs' home is damaging or destroying itself.  Plaintiffs' Petition certainly does not contain any such allegations. Plaintiffs' claim relates to the damage to their home caused by the Chinese manufactured drywall, which was an unexpected risk. (*See* <u>Petition</u>, ¶6)  Plaintiffs' loss or damage, as alleged in Plaintiffs' Petition, was not caused by a latent defect or inherent vice within the meaning of the above-quoted provision.  The damage to Plaintiffs' air conditioner, for example, was not caused by an inherent vice or latent defect in the air conditioner, or in the drywall, or in the home.  Defendant can cite to no allegations made by Plaintiffs to the contrary.  The same is true for Plaintiffs'  refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items that have been damaged.  Plaintiffs' loss was unexpected, fortuitous and extraneous – the type of event for which Plaintiffs purchased insurance coverage.

In support of its Motion, Defendant represents that Plaintiffs' Petition alleges that "the alleged defect in the drywall was latent (not discovered until the Spring of 2009) and that there is an inherent vice in the defective drywall (the emission of odorous gases that cause corrosion.)" (<u>Defendant's Memorandum</u>, p.13)  This is not true and misrepresents Plaintiffs' allegations.

Plaintiffs' allege that in the Spring of 2009 they discovered that their home was constructed using Chinese manufactured drywall. (<u>Petition</u>, ¶6).  "Latent" is defined as "present and capable of becoming though not now visible, obvious, active, or symptomatic".  <u>Merriam-Webster Online Dictionary</u>, 2010, <u>http://www.merriam-webster.com/dictionary/latent.</u>  There is no evidence that the problems with the Chinese manufactured drywall were latent, as the term is commonly understood. The scientific evidence indicates the Chinese manufactured drywall began emitting sulphur

compounds immediately.  Further, there are no allegations of latency or of a defect in Plaintiffs'

Petition.  Finally, as discussed above, there are no allegations in Plaintiffs' Petition of an inherent

vice.  There is nothing on the face of Plaintiffs' Petition to support an application of the inherent vice

or latent defect exclusion.  Defendant's Motion to Dismiss should be denied.[4]

### 2. The faulty or defective building materials exclusion does not bar Plaintiffs' claim

As another affirmative defense, Defendant argues that its policy does not provide coverage

for  Plaintiffs' claim, as it excludes loss or damage consisting of faulty or defective building

materials, construction or workmanship.  The pertinent language in Defendant's policy relating to

the faulty or defective materials exclusion provides as follows:

> We do not insure against loss consisting of any of the following.  Nor do we insure for loss that results when one or more of the following combines with other causes, events or conditions that are also excluded or excepted in this policy.  However, any loss that ensues from the following, that is not otherwise excluded or excepted is covered.
>
> \* \* \*
>
> c.  Faulty, negligent, inadequate or defective:
>
> \* \* \*
>
> (3) materials used in repair, construction, renovation or remodeling;
>
> \* \* \*
>
> of part or all of any property whether on or off the residence premises.

(Defendant's Motion to Dismiss, Ex. 1, p.31)

Defendant's argument here is based on a faulty premise.  Plaintiffs' claim or loss under their

---

[4]In support of its argument that its inherent vice or latent defect exclusion supports its Motion to Dismiss, Defendant cites a number of cases – none that are binding on this Court. Notably, none of these cases found the latent defect exclusion to be applicable to a claim on a motion to dismiss, and many discuss the term "latent defect" in a context other than the latent defect exclusion in a homeowners insurance policy.

homeowners policy is not that Chinese manufactured drywall was used in their home, as Defendant contends.[5] *See, e.g.,* Defendant's Memorandum, p.15.  Plaintiffs' claim is for the loss or damage to Plaintiffs' home that resulted from the Chinese manufactured drywall.

By its very terms, the faulty or defective materials exclusion does not apply to Plaintiffs' claim.  This provision excludes loss "consisting of" faulty or defective material.  Plaintiffs' loss or damage includes failed appliances and air conditioner units, damaged wiring and plumbing, damaged fixtures and the like.  There are no allegations in Plaintiffs' Petition that any of these items consist of faulty or defective material.

With respect to the drywall itself, Defendant has not met its burden of proof that this exclusion is applicable.  The terms "faulty", "inadequate", "negligent" and "defective" are not defined in Defendant's policy; thus, they are interpreted according to their ordinary meaning. According to Merriam-Webster's online dictionary, "faulty" means "marked by fault or defect." Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/faulty. "Inadequate" means "not adequate" or "insufficient".  Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/inadequate.  "Negligent" means "marked by or given to neglect especially habitually or culpably; failing to exercise the care expected of a reasonably prudent person in like circumstances."  Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/negligent.  "Defective" means "imperfect in form or function" or "falling below the norm in structure or in mental or physical function".  Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/defective.  Defendant

---

[5] Plaintiffs' Petition likewise contains no allegations relating to the construction or workmanship associated with Plaintiffs' home.

has not shown that the drywall at issue is faulty, inadequate, negligent or defective, as defined above, and there are no such allegations on the face of Plaintiffs' Petition.

Indeed, the drywall in Plaintiffs' home was performing the purpose of drywall, *i.e.*, serving as a finishing material, holding paint and art, providing fire protection, providing sound and heat insulation. *See In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 798 (in discussing the application of the economic loss rule and analogizing the facts in the Chinese drywall litigation to those of asbestos cases, the Court stated, "[t]he Chinese drywall has been installed in numerous homes and in each instance is functioning as drywall."). The damage caused by the drywall was based on a quality of the drywall distinct from these roles.

There is nothing on the face of Plaintiffs' Petition to support an application of the faulty or defective material exclusion. Defendant's Motion to Dismiss should be denied.

**3.    The corrosion exclusion does not bar Plaintiffs' claim.**

The next affirmative defense Defendant points to in support of its Motion to Dismiss is the corrosion exclusion. The pertinent language in Defendant's policy relating to the corrosion exclusion provides as follows:

> We insure against risk of direct, physical loss to property described in Coverages A and B; however, we do not insure loss:
>
> \* \* \*
>
> 3.  caused by or consisting of:
>
> \* \* \*
>
> c.  smog, rust, or other corrosion, mold, wet or dry rot;
>
> \* \* \*
>
> Under items 2 and 3, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

(Defendant's Motion to Dismiss, Ex. 1, pp.28-29)

13

As with any exclusion, the burden of proof to establish that this exclusion applies is on Defendant. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364. Further, policies should be construed to effect, not deny, coverage. *Yount*, 627 So.2d at 151. Any ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

Defendant argues that Plaintiffs' loss is loss caused by corrosion and is consequently excluded. As an initial matter, the exclusion speaks to loss "caused by" corrosion. Here, the damage is not caused by corrosion. The damage is caused by the drywall. This distinction has been recognized by at least one Louisiana court.[6]

In *Trus Joint MacMillan v. Neeb Kearney and Co., Inc.*, 2000 WL 306654, *2 (E.D. La. 3/23/00), the plaintiff contracted with defendant to store plaintiffs' steel bedplates in a warehouse. While the bedplates were in the warehouse, they became wet due to standing water and suffered extensive damages. Plaintiff filed a claim with the warehouse's insurer, who claimed the deterioration exclusion excluded coverage due to the corrosion, which read, "we do not pay for loss caused by contamination or deterioration, including corrosion." Finding coverage for the loss, the court stated as follows:

> Clearly, however, the exclusion is designed to apply where corrosion is the *cause* of property damage. It is not designed to preclude coverage when rust is the damage itself, as opposed to the cause of damage. Even if there were some ambiguity about

---

[6]Notably, the cases cited by Defendant in support of its construction of the corrosion exclusion were decided at the summary judgment stage of the litigation or after trial, not the pleadings stage like Defendant's Motion. *See, e.g., Gilbane Bldg. Co. v. Altman Co.*, No. 04AP-664, 2005 Ohio App. LEXIS 981, at *17 (Ohio Ct. App. Mar. 8, 2005) (applying Ohio law and affirming application of a rust and corrosion exclusion in a builder's risk policy where parties stipulated that the cause of the loss was rust and corrosion); *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So.2d 981 (La. 1991) (construing a boiler and machinery policy following trial on the merits).

the meaning of this exclusion, for purposes of summary judgment any doubts should be resolved against the exclusion.

*Id*. at *2.  The same is true of Plaintiffs' claim.

Moreover, as discussed above with respect to the latent defect exclusion, these exclusions were meant to apply to maintenance-type losses, such as the expected and natural occurrence of corrosion, which causes damage to property over time.  The FC&S Bulletin also states that "[t]he intent of the corrosion exclusion is to exclude corrosion that is part of the normal aging process.  The corrosion that results from the [Chinese] drywall is not part of a normal process and is directly related to the vapors emitted from the drywall.  Therefore, in our opinion, it would still be covered."  FC&S, "Chinese Drywall and Corrosion".  The chemical reaction resulting from the Chinese manufactured drywall emissions which caused Plaintiffs' damage is not the normal anticipated corrosion.  The reaction causing damage to Plaintiffs' property is a sulfidation reaction which occurs rapidly and begins immediately upon exposure of the metal to the sulfurous compounds and moisture.  The types of damages excluded under the "corrosion" exclusion are damages that occur naturally, are expected, and take years to substantiate into actual damage.  Because the sulfidation reaction caused by the sulfurous compounds emitted by the Chinese manufactured drywall in Plaintiffs' home is wholly different from the type of oxidation reaction which occurs naturally to copper and silver over many years, the damages to Plaintiffs' home caused by the sulfidation reaction are unanticipated and wholly outside of the scope of this exclusion.

The exclusion also includes loss "consisting of corrosion".  Even assuming this Court determines that the term "corrosion" applies to conditions other than naturally occurring corrosion, Defendant cannot meet its burden, in a Motion to Dismiss, of proving that the exclusion applies to

Plaintiffs' loss.  There are no allegations in Plaintiffs' Petition that their loss or damage was "caused by" or is a loss "consisting of" corrosion.  Plaintiffs allege that their damage was caused by Chinese manufactured drywall.  (Petition, ¶6).  Plaintiffs further allege that Chinese drywall emits odorous gases that cause corrosion, *id.*; however, Plaintiffs never allege that their damage is or was caused by corrosion.  Plaintiffs' Petition does not set forth Plaintiffs' specific items of loss or damage, as the pleading requirements of the Federal Rules do not require Plaintiffs to do so.  Further, Plaintiffs will rely on experts to determine the specific cause or mechanism of their damage.  Thus, the application of the corrosion exclusion is not apparent on the face of Plaintiffs' Petition.  Defendant's Motion to Dismiss should be denied.

### 4.  The pollution exclusion does not bar Plaintiffs' claim

As its final affirmative defense supporting its Motion to Dismiss, Defendant cites the pollution exclusion in its policy.  The pertinent language in Defendant's policy relating to the pollution exclusion provides as follows:

> We insure against risk of direct, physical loss to property described in Coverages A and B; however, we do not insure loss:
>
> \* \* \*
>
> 3.  caused by or consisting of:
>
> \* \* \*
>
> e. discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed;
>
> \* \* \*
>
> Under items 2 and 3, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

16

(Defendant's Motion to Dismiss, Ex. 1, pp.28-29)

The pollution exclusion will not operate to deny coverage in Louisiana.  In *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So. 2d 119, 127, Chief Justice Calogero examined the history of the pollution exclusion in insurance contracts to conclude that "there is no history in the development of the exclusion to suggest it was ever intended to apply to anyone other than an active polluter of the environment."  The Court found that a literal interpretation of the pollution exclusion would lead to absurd results, and that the pollution exclusion is designed to exclude coverage for environmental pollution only and not for all interactions with irritants or contaminants of any kind *Id.* at 135..  *See also Thompson v. Temple*, 580 So.2d 1133 (La. App. 4 Cir. 1991) (pollution exclusions are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time; finding that the pollution exclusion clause in a homeowner's policy does not operate to exclude injuries caused by a leaking gas heater); *West v. Board of Commissioners of the Port of New Orleans*, 591 So.2d 1358 (La. App. 4 Cir. 1991) (finding that the pollution exclusion is applicable to polluters - those who indifferently pollute the environment - and not those who only incidentally possess the pollutant in the course of their other business; application of the exclusion is a question of fact for the finder of fact).

The Louisiana Supreme Court provided three considerations for determining whether a "total pollution exclusion" in a commercial liability policy will preclude coverage:

1.  Whether the insured is a "polluter" within the meaning of the exclusion;

2.  Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and

3.  Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

*Id*. at 135-136.

Applying these considerations to this case in the homeowner context confirms the inapplicability of the pollution exclusion.

With respect to the first factor - whether Plaintiffs' are "polluters" - the Court noted that this fact-based conclusion should be made with consideration of a variety of factors, such as the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, or whether the insured should have known from reading the exclusion that a separate policy covering pollution damages would be necessary for the insured's business. *Doerr*, 774 So.2d at 135.  Obviously, Plaintiffs are not "polluters".

Whether the substance is a "pollutant" is also a fact-based conclusion, which according to the Louisiana Supreme Court involves the following analysis:

> [T]he determination of whether the injury-causing substance is a "pollutant" is also a fact-based conclusion that should encompass a wide variety of factors . . . . Consequently, when making this determination, the trier of fact should consider the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion.

*Id.* at 136.

These factors are the result of long-standing policy and case law finding that the term "pollutant" is often too broadly interpreted and subject to abuse in the claims handling process.  For example, the Louisiana Commissioner of Insurance has described this State's ongoing concern over the broad interpretation of a qualifying "pollutant" under the exclusion:

> We are concerned that the broad definition given the term "pollutant" creates an opportunity for abuse. This is a particular concern as regards commercial enterprises

18

> whose ongoing business activities do not present a risk to the environment.  For example, we have found instances where it has been argued that any thing and/or matter that harms a person, whether or not it has toxic or hazardous properties is, de facto an irritant and therefore a pollutant, thereby triggering the pollution exclusion…The appropriate use of the pollution exclusion in claims handling is an issue of grave concern.

Advisory Letter Number 97-01, Commissioner of Insurance, State of Louisiana (June 4, 1997).  The "pollutant" at issue here is contained within drywall – a material not known to commonly contain any dangerous substances.

As for the final consideration, whether there was a discharge or seepage of the alleged pollutant, the Louisiana Supreme Court identified the inquiries as follows:

> Finally, the determination of whether there was "discharge, dispersal, seepage, migration, release or escape" is likewise a fact-based conclusion that must result after a consideration of all relevant circumstances.  Specifically, the trier of fact should consider whether the pollutant was intentionally or negligently charged, the amount of the injury-causing substance discharged, whether the actions of the alleged polluter were active or passive, and any other factor the trier of fact deems relevant.  These factual conclusions should be made to assist a court in determining whether the total pollution exclusion in any particular case will exclude coverage for a claim.

*Id*. at 135-136.  Defendant cannot reasonably content that there was an intentional discharge, as Plaintiffs had no knowledge that the drywall was anything other than drywall.  Further, the amount of the discharge – while possibly significant to the homeowner – is likely not of an amount that would be dangerous to an entire community.

Plaintiffs' Petition merely alleges that the drywall emits "odorous gases that cause corrosion." (Petition, ¶6).  The fact-based determination of the application of the pollution exclusion cannot be made in Defendant's Motion to Dismiss, and certainly not on the basis of this simple allegation. Defendant's Motion to Dismiss should be denied.

19

### 5.      Ensuing Loss

Notably absent from discussion in Defendant's Motion is the ensuing loss provision of the policy, which restores coverage for ensuing losses not otherwise excluded by the policy.  The inherent vice or latent defect exclusion, the corrosion exclusion and the pollution exclusion contain a clause providing that "any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered." (Defendant's Motion to Dismiss, Ex. 1, p.29)  The faulty materials exclusion contains a similar provision.

The industry FC&S Bulletin noted that any ensuing loss "as a result of the faulty drywall would be covered, for example if the drywall caused corrosion damage to wires or pipes."  FC&S Online, Chinese Drywall, June 2009, http://www.nationalunderwriterpc.com.  The FC&S Bulletin regarding Chinese drywall states that there "is coverage for ensuing losses from faulty workmanship."   FC&S Online, Chinese Drywall: The Next Big Issue September 2009, http://www.nationalunderwriterpc.com.

 Louisiana courts have applied the ensuing loss provision and allowed coverage for damages resulting from a previous excluded loss.  *See, e.g.,  Dawson Farms, L.L.C. v. Millers Mutual Fire Insurance Co.*, 34, 801 (La. App. 2nd Cir. 8/1/01), 794 So.2d 949, 952 (faulty design and/or workmanship exclusion did not exclude damages due to the resulting loss, therefore the insured was entitled to coverage for losses associated with the damages to the contents of the building); *Lake Charles Harbor & Terminal District v. Imperial Casualty & Indemnity Co.*, 857 F.2d 286, 288 (5th Cir. 1988) (policy excluded damages caused by a mechanical or machinery breakdown but covered losses due to ensuing perils, indicating damages caused by the mechanical breakdown were covered under the policy); *Holden v. Connex-Metalna*, 2000 WL 1876338, *7-8 (E.D. La. 12/12/00) (court

permitted the insured to recover damages based on the ensuing loss exception to the exclusion for machinery breakdown and faulty workmanship).

In *Holden*, the court found that the faulty workmanship exclusion applied to the specific components of a crane which were identified as being faulty but found coverage for the damage caused by the crane when it fell, including the loss of the crane itself, pursuant to the ensuing loss provision of the property policy. *Holden*, 2000 WL 1876338.

> The exclusions at issue here are designed to ensure that the property insurers do not become warrantors of the crane's quality. As such, the property policies do not cover worn or broken parts, pay for repairs when a mechanical system or process breaks down, or fix a design problem. In this case, to the extent that there was a flaw or defect in the quality of the crane it would have been that the boom and trolley were significantly heavier than intended in the design of the unloader. Thus had it remained standing, any of the exclusions, if applicable, would have barred from coverage any costs to rebalance or redesign the crane. However, in this case, the unbalance triggered a series of ensuing events that lead to the complete destruction of the crane and other property....All damages caused by the falling crane, including the total loss of the crane itself are excepted under the "ensuing loss" proviso.

*Id*. at *8-9. Here, there is a distinct separation between what Defendant argues is the excluded loss, the Chinese drywall itself, and the ensuing losses, which are the damages caused by the sulphur compounds that the Chinese drywall emits.

### E.    Plaintiffs' Personal Property Claims

Plaintiffs recognize that while the policy provides "all risk" coverage for Plaintiffs' home, the policy provides coverage for personal property only if the loss to that personal property was caused by a listed peril. The listed perils do not include the cause of Plaintiffs' loss; accordingly, Plaintiffs agree that the policy provides no coverage for the loss or damage to their personal property.

F.      **Plaintiffs Have Stated Claims for Loss of Use and Bad Faith**

As recognized by Defendant in its Motion, the validity of Plaintiffs' loss of use and bad faith claims rests on whether or not Plaintiffs have alleged a claim for coverage under the policy. (Defendant's Memorandum, pp.19-20)  As set forth above, Plaintiffs have sufficiently stated a claim for coverage under the policy; therefore, Plaintiffs have also properly alleged claims for loss of use and bad faith.

III.    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.


Dated: August 2, 2010                              Respectfully submitted,

                                                    /s/ Russ M. Herman
                                                    Russ M. Herman, Esq.
                                                    Leonard A. Davis, Esq.
                                                    Stephen J. Herman, Esq.
                                                    HERMAN, HERMAN, KATZ & COTLAR, LLP
                                                    820 O'Keefe Avenue
                                                    New Orleans, Louisiana 70113
                                                    Phone: (504) 581-4892
                                                    Fax: (504) 561-6024
                                                    LDavis@hhkc.com
                                                    *Plaintiffs' Liaison Counsel MDL 2047*

                                                    Arnold Levin
                                                    Fred S. Longer
                                                    Levin, Fishbein, Sedran & Berman
                                                    510 Walnut Street, Suite 500
                                                    Philadelphia, PA 19106
                                                    215-592-1500 (phone)
                                                    215-592-4663 (fax)
                                                    Alevin@lfsblaw.com
                                                    *Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502

Phone: (850) 435-7000
Fax: (850) 435-7020   bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055   Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630

jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

### OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 2nd day of August, 2010.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com