# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL NO. 2047 |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | JUDGE FALLON |
| This document relates to: | ) | |
| | ) | MAG. JUDGE WILKINSON |
| *Gross, et al.* | ) | |
| *v.* | ) | |
| *State Farm Fire & Cas. Co.* | ) | |
| *et al.,*  Case No. 10-931 | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## <u>PLAINTIFFS' OPPOSITION TO STATE FARM'S MOTION TO DISMISS</u>

Plaintiffs, David and Cheryl Gross, submit this Opposition to Defendants, State Farm Fire and Casualty Company and State Farm General Insurance Company's ("State Farm"), Motion to Dismiss pursuant to Rule 12(b)(6).  As discussed more fully below, the Complaint states a claim for relief against State Farm, such that State Farm's Motion to Dismiss must be denied.

## I.      BACKGROUND

Plaintiffs brought this putative class action seeking a declaratory judgment that State Farm's homeowner insurance policy provides coverage for their loss and damage associated with Chinese manufactured drywall.  In denying Plaintiffs' claim, State Farm relied on a number of policy provisions and exclusions, including the latent defect exclusion, corrosion exclusion, pollution exclusion, and faulty materials exclusion.  State Farm filed this Motion to Dismiss, seeking a determination that its exclusions, affirmative defenses to Plaintiffs' allegations, apply to bar all of

1

Plaintiffs' loss or damage.

While Plaintiffs maintain that, on the merits, State Farm's policy exclusion affirmative defenses do not apply to the facts and circumstances surrounding Plaintiffs' claim, for purposes of its Motion to Dismiss, Plaintiffs' Complaint properly pleads a covered loss and no policy exclusions are apparent on the face of Plaintiffs' allegations. As discussed more fully below, State Farm's Motion to Dismiss should be denied.

## II.    ARGUMENT

### A.    Legal Standard for Rule 12(b)(6) Motion to Dismiss

The heavy burden needed to sustain a motion to dismiss is well known, as is the fact that motions to dismiss are viewed with disfavor and are rarely granted. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999); *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780, 788 (E.D. La. 2010). Here, this heavy burden belongs to State Farm, and it has failed to meet it.

"The purpose of a motion to dismiss, pursuant to FRCP 12(b)(6) is to test the sufficiency of the complaint, not to judge the merits of the case." *First Nat'l Bank of Louisville v. Lustig*, 809 F.Supp. 444, 446 (E.D.La.1992). In considering a motion to dismiss, the court must accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 285 (5th Cir.1993). All ambiguities or doubts regarding the sufficiency of the claim must be resolved in favor of the plaintiff. *Whetstone v. Jefferson Parish Public School Board*, 2010 WL 1936210 (E.D. La. 5/12/10). Any reasonable inferences that may be drawn from the complaint are also accepted as true. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). To survive a motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face". *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 788.

Plaintiffs agree with State Farm that the insurance policy at issue in this litigation can be considered by the Court for purposes of State Farm's Motion to Dismiss. *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir.2000). The policy is central to Plaintiffs' claims and is referred to in Plaintiffs' Complaint; therefore, it is part of the pleadings.

However, while the policy is properly considered as part of the pleadings for purpose of State Farm's Motion to Dismiss, the policy exclusions raised by State Farm constitute affirmative defenses, which should not be considered at this stage in the litigation. An exception to this rule is if a successful affirmative defense appears on the face of plaintiff's complaint. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1357 (3d ed. 2010); *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."); *see also Builders Mutual Ins. Co. v. Dragas Management Corp.*, 2010 WL 2813397 (E.D. Va. 7/15/10) (considering motion to dismiss by CGL carrier in Chinese drywall declaratory judgment action regarding coverage and finding that the court only needed address whether counterclaim adequately pled facts to support an "occurrence" under the policy, as the "Total Pollution Exclusion" is an affirmative defense to coverage that is not addressed at this time). As discussed below, the exclusions raised by State Farm should not be considered at this time, as they constitute affirmative defenses not apparent on the face of Plaintiffs'

Complaint.

**B.     The Complaint Alleges a Covered Loss to Dwellings, Triggering Coverage.**

The insuring agreement in State Farm's policy relating to Plaintiffs' dwelling provides, "We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I –LOSSES NOT INSURED." (State Farm's Motion, Ex. A, at 7.)  In their Complaint, Plaintiffs allege as follows:

> [P]laintiffs discovered that their properties were constructed using Chinese manufactured drywall, <u>which caused, and continues to cause, physical loss and damage</u> to their properties and contents.  The Chinese drywall emits compounds that <u>cause rapid corrosion</u> of air conditioner coils, copper tubing, electrical wiring, computer wiring, and other household items.

<u>Complaint</u>, ¶ 16 (Rec. Doc. 1 in No. 10-931) (emphasis supplied).  The Complaint, therefore, includes allegations that there is physical loss to the Property and that the loss was "rapid." Plaintiffs' allegations must be taken as true for purposes of this Motion and provide for coverage.

**1.     As an All-Risk Policy, Plaintiffs' Burden to State a Viable Claim Triggering Coverage is Very Light.**

It needs to be remembered that this (like the vast majority of all homeowners policies) is an "all-risk" policy.  Under Louisiana law, insureds who own an all-risks (open perils) insurance policy, have a "very light" burden and must only show that damage to the insured property occurred. <u>Walker v. Travelers Indem. Co.</u>, 289 So.2d 864, 872 (La. App. 4 Cir.1974) <u>citing</u> Couch on Insurance 2d., Vol.13, Section 48:139, p. 596; <u>Dawson Farms, L.L.C. v. Millers Mutual Fire Ins. Co.</u>, 794 So.2d 949, 951 (La. App. 2 Cir. 2001) (holding the trial court committed legal error by submitting a jury interrogatory that required the plaintiff/insured as holder of an all risks policy, to prove the nature of its covered losses as opposed to requiring State Farm, the all risks insurer, to

prove its exclusion by establishing the nature and value of the damage excluded from coverage); Cochran v. Travelers Ins. Co., 606 So.2d 22 (La. App. 5 Cir.1992).

Once the property owner establishes that a loss occurred, the burden shifts to the insurer to establish an applicable exclusion under the terms of the policy. Veade v. Louisiana Citizens Property Ins. Corp., 985 So.2d 1275, 1279 (La. App. 4 Cir.2008) (holding that Citizens must prove that waves and storm surge caused much of the damage to the Veades' home); Dawson Farms, L.L.C., 794 So.2d at 951; Walker, 289 So.2d at 872; See also Congressional Research Service Report for Congress, Post-Katrina Insurance Issues Surrounding Water Damage Exclusions in Homeowners' Insurance Policies, pp. 16-17, February 27, 2006 ("the distinction between open peril policies and named peril policies becomes especially important in litigation.  Under an open perils policy the policyholder must prove that damage occurred to the property.  Insurers must establish that an excluded risk caused the loss.").

Stated another way, Louisiana state and federal courts have repeatedly held that homeowner's insurers who sell all risks insurance policies bear the burden of proving an applicable exclusion when an insured's home and dwelling extensions sustain an accidental, direct physical loss (damage that occurs as the result of a hurricane undisputedly constitutes "an accidental, direct physical loss"). Dickerson v. Lexington Insurance Co., 556 F.3d 290, 295 (5th Cir. 2009); Grilleta v. Lexington Ins. Co., 558 F.3d 359, 364 (5th Cir. 2009) (citing Veade supra and La.R.S. 22:658.2 infra and holding the State Farm insurer did not meet its burden of proving that all of the damage to plaintiffs' immovable property was caused by the excluded peril of flood); Pontchartrain Gardens, Inc. v. State Farm General Ins. Co., 2009 WL 86671, *11 (E.D. La.2009) (Vance, J. presiding) (citing Dickerson and holding that "State Farm has the burden of proving which pieces of business personal property

were damaged by flood"); <u>Landry v. Louisiana Citizens Property Insurance, Inc.</u>, 964 So.2d 463, 477 (La.App. 3 Cir.2007) <u>reversed on other grounds</u>, 983 So.2d 66 (La.2008) <u>citing</u> <u>Garcia v. St. Bernard Parish Sch. Bd.</u>, 576 So.2d 975 (La.1991).

Finally, the Louisiana legislature recognized that homeowner's insurers bear the burden of any exclusion.  La. Rev. Stat. 22:658.2 provides in pertinent part as follows:

> B.  If damage to immovable property is covered, in whole or in part, under the terms of the policy of insurance, the burden is on the insurer to establish an exclusion under the terms of the policy.
>
> C.  Any clause, condition, term, or other provision contained in any policy of insurance which alters or attempts to alter the burden on an insurer as provided in Subsection B of this Section shall be null and void and of no effect.
>
> D.  Any insurer determined to be in violation of the provisions of this Section shall be liable pursuant to R.S. 22:1973.

In a Rule 12(b) motion, Plaintiffs have the initial burden of establishing that they have stated a claim in their Complaint for direct physical loss to covered property.  Plaintiffs have met this burden, as they have alleged the Chinese manufactured drywall caused physical loss and damage to their home and contents.[1]  <u>Complaint</u>, ¶16.

This Court is well aware that Chinese drywall is capable of "direct physical harm to the Property" as alleged in the Complaint.  Any argument that the effects of drywall is not a "loss

---

[1] Plaintiffs believe their allegations relating to their damage are satisfactory and meet the requirements of Rule 8.  However, if the Court requires more specificity as to the nature of Plaintiffs' loss and damage, Plaintiffs request permission to amend their Complaint to elaborate on their claim for damage or loss under the policy.

insured" fails on Louisiana law, the science, and this Court's <u>Hernandez</u> decision.[2]

    **C.**    **Each one of State Farm's Exclusion Arguments Fail Based Upon (1) the Allegations in the Complaint, (2) the Plain Language, Intent, and History of the Exclusions, and (3) the Improper Scientific Dispute Raised by the Motion – improper because they are brought in a Motion to Dismiss.**

    In support of its Motion to Dismiss, State Farm relies solely on the language of its policy, arguing that its policy does not provide coverage for Plaintiffs' claim arising from the presence of Chinese manufactured drywall in Plaintiffs' home. State Farm raises four specific provisions and/or exclusions in its policy that it contends defeats coverage for Plaintiffs' claim. As discussed below, Plaintiffs' claim is not excluded by these policy provisions. State Farm has failed to carry its burden, and its Motion to Dismiss must be denied.

    **1.**    **On the Face of the Complaint, the Faulty Materials Exclusion Does Not Bar Plaintiffs' Claims.**

    As an affirmative defense, State Farm argues that its policy does not provide coverage for Plaintiffs' claims, as it excludes loss or damage caused by faulty building materials. The pertinent language in State Farm's policy relating to the faulty materials exclusion provides as follows:

> We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the

---

[2] In <u>Hernandez v. Knauf Gips KG</u>, 09-MD-2047, this Court presided over a trial to determine, among other things, the remediation protocol. <u>Id.</u> (Rec. Doc. 2713) To that end, this Court made numerous "scientific findings regarding the corrosion caused by the Chinese drywall." <u>Id.</u> at 15-19.

    This Court ultimately found that the Chinese drywall "is different from typical benign drywall for the following reasons; it has significantly higher average concentration of strontium and more detectable levels of elemental sulfur, and it releases odious gases which are corrosive to metals, particularly copper and silver." <u>Id.</u> at 16. Because of its chemical composition, this Court found that it damaged the Hernandez's copper and silver components of the home, necessitating removal. <u>Id.</u> at 17-19.

following: (a) directly or indirectly cause, contribute, to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

* * * *

(b)    defect, weakness, inadequacy, fault or unsoundness in:

* * * *

(2)    Design specifications, workmanship, construction, grading, compaction;

(3)    Materials used in construction or repair

* * * *

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises;

* * * *

However, we do insure for **any resulting loss** from items a., b., and c. unless the resulting loss is itself a Loss Not Insured by this Section.

Policy, at 9-11 (emphasis supplied).

The Complaint provides adequate allegations that this exclusion does not apply and states as follows:

> The Materials Defect and/or Faulty Workmanship Exclusion does not apply to Chinese manufactured drywall because the drywall itself performs satisfactorily all of the functions of non-defective drywall and because the drywall was installed properly. Chinese manufactured drywall is fit for its intended use for hanging wall-mounted effects, of painting, as a sound barrier, for heat insulation and as a partition between areas in a home and, consequently, is non-defective relative to the intended function of typical drywall in a home. Furthermore, the damages caused by Chinese manufactured drywall do not involve how the drywall was hung and, therefore, do not involve workmanship issues.

Complaint, ¶ 33.

With respect to the drywall itself, State Farm has not met its burden of proof that this

8

exclusion is applicable.  None of the terms "defect," "weakness," "inadequacy," "fault," or "unsoundness" are defined in State Farm's policy; thus, it is interpreted according to its ordinary meaning.  According to Merriam-Webster's online dictionary, "faulty" means "marked by fault or defect."  Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/faulty.  State Farm has not shown that the drywall at issue is faulty or defective and there are no such allegations on the face of Plaintiffs' Complaint.

Indeed, the drywall in Plaintiff's home was performing the purpose of drywall, *i.e.*, serving as a finishing material, holding paint and art, providing fire protection, providing sound and heat insulation. *See  In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d at 798 (in discussing the application of the economic loss rule and analogizing the facts in the Chinese drywall litigation to those of asbestos cases, the Court stated, "[t]he Chinese drywall has been installed in numerous homes and in each instance is functioning as drywall.").  The damage caused by the drywall was based on a quality of the drywall distinct from these roles.

There is nothing on the face of Plaintiffs' Complaint to support an application of the faulty materials exclusion.  State Farm's Motion to Dismiss should be denied.

### 2. On the Face of the Complaint, The Latent Defect Exclusion Does Not Bar Plaintiffs' claim.

For another of its affirmative defenses, State Farm argues that its policy does not provide coverage for Plaintiffs' claim, as it excludes loss or damage caused by a latent defect.  The pertinent language in State Farm's policy relating to latent defect exclusion provides that it does not provide coverage for damage caused by "wear, tear, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown."  Policy, at 9-10.

9

The Complaint provides adequate allegations that this exclusion does not apply and states as follows:

> The Wear and Tear, Inherent Vice, and/or Latent Defect Exclusion was intended to apply to expected losses relating to the longevity of a given material and intended to exclude losses which must inevitably happen over time and/or will inevitably occur due to a defect within the item.  In either case, the defect or the passage of time causes damage to the item itself, not to other items.  In homes containing Chinese manufactured drywall, the drywall itself is not damaged or defective relative to the expected performance of non-defective drywall.  Instead, Chinese manufactured drywall causes damage to other items but is itself undamaged.

Complaint, ¶ 32.

The burden of proof to establish that this exclusion applies is on State Farm. *Blackburn*, 784 So.2d at 641; *Dickerson*, 556 F.3d at 295; *Grilletta*, 558 F.3d at 364.  Further, policies should be construed to effect, not deny, coverage. *Yount v. Maisano*, 627 So.2d 148, 151 (La. 1993).  Any ambiguity in an exclusion should be narrowly construed in favor of coverage. *Id.*

It should be noted (yet again) that the term "latent defect" is not defined in State Farm's policy.  "Latent" is defined as "present and capable of becoming though not now visible, obvious, active, or symptomatic". Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/latent.  There is no evidence that the problems with the Chinese manufactured drywall were latent, as the term is commonly understood.   The scientific evidence indicates the Chinese manufactured drywall began emitting sulphur compounds immediately.  Further, there are no allegations of latency or of a defect in Plaintiffs' Complaint.  Plaintiffs simply alleged that they discovered that their  home was constructed using Chinese manufactured drywall in the Spring of 2009, and that the drywall caused physical loss and damage to the home and

contents.  Complaint, ¶16.

The insurance industry has defined the latent defect or inherent vice exclusion as "a quality within an object which makes it tend to destroy itself." WILLIAM H. RODDA, FIRE AND PROPERTY INSURANCE 298 (Prentice-Hall, Inc. 1956).  For example, the tendency of rubber to destroy itself whether or not it is in use is an inherent vice. *Id.*  The Fire, Casualty and Surety (FC&S) Bulletin, used by the insurance industry to interpret and apply insurance policies, noted that the inherent vice or latent defect exclusion applies to "a loss due to any quality in the property that causes property to damage or destroy itself... that results from something within the property itself as opposed to some outside force." FC&S Online, Processors Coverage Form, Insurance Services Office Non-filed IM Coverage, December 2005, http://www.nationalunderwriterpc.com.[3]

The exclusion originated in maritime law and speaks to the reasonable expectations of the parties to the contract.

> The underwriter is not liable for that loss or deterioration which arises solely from a principle of decay or corruption in the subject insured, or, as the phrase is, from its proper vice; as when fruit becomes rotten, or flour heats, or wine turns sour, not from external damage, but entirely from internal decomposition.

ARNOULD ON MARINE INSURANCE (11th ed) §778.

First party policies typically exclude damages due to an inherent vice or latent defect in order to prevent the insurer from having to compensate the insured for property that has its own shelf life and will eventually wear out or break down because of intrinsic quality or nature. Eugene Wollan,

---

[3] The FC&S Bulletins have been published by the National Underwriter for over 50 years to assist insurance companies in the interpretation and application of a wide variety of insurance policy provisions.  See Golden Eagle Ins. Co. v. Ins. Co. of the West, 99 Cal. App. 4th 837, 838 (Cal. App. 2002) ("[I]nsurance industry publications are particularly pursuasive as interpretative aids where they support coverage on behalf of the insured.  Ultimately, the test is whether coverage is 'consistent with the insured's objectively reasonable expectations.'").

*Risks Not Taken*, JOHN LINER REVIEW 86 (Fall 2006).  This exclusion is meant to apply to maintenance type damage claims or claims that relate to the property itself breaking down in some way, or to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction.  *See Employers Cas. Co. v. Holm*, 393 S.W. 2d 363 (Tex. Civ. App. Houston 1965).  The loss excluded by this exclusion is an expected loss, for which property insurance does not apply.

Here, there is no evidence that the Chinese drywall that is installed in Plaintiffs' home is damaging or destroying itself.  Plaintiffs' Complaint certainly contains no such allegations. Plaintiffs' claim relates to the damage to their property caused by the Chinese manufactured drywall, which was an unexpected risk. Plaintiffs' loss or damage, as alleged in Plaintiffs' Complaint, was not caused by a latent defect within the meaning of the above-quoted provision.  The damage to Plaintiffs' air conditioner, for example, was not caused by a latent defect in the air conditioner, or in the drywall, or in the home.  State Farm can cite to no allegations made by Plaintiffs to the contrary.  The same is true the other alleged items of Plaintiffs' damage. Plaintiffs' loss was unexpected, fortuitous and extraneous – the type of event for which Plaintiffs purchased insurance coverage.  There is nothing on the face of Plaintiffs' Complaint to support an application of the latent defect exclusion.  State Farm's Motion to Dismiss should be denied.

    **3.**    **On the Face of the Complaint, the Corrosion Exclusion does not Bar Plaintiffs' Claims.**

The next affirmative defense State Farm points to in support of its Motion to Dismiss is the corrosion exclusion which does not provide for coverage of damage caused by corrosion.  Policy, at 9.  State Farm argues that Plaintiffs' loss is loss caused by corrosion and is consequently excluded.

First and foremost, "corrosion" is not defined.  This is important because the intent of the exclusion is to exclude coverage from "naturally occurring" corrosion.  As discussed above with respect to the latent defect exclusion, these exclusions were meant to apply to maintenance-type losses, such as the expected and natural occurrence of corrosion, which causes damage to property over time.  The FC&S Bulletin states:

> The intent of the corrosion exclusion is to exclude corrosion that is part of the normal aging process.  The corrosion that results from the [Chinese] drywall is not part of a normal process and is directly related to the vapors emitted from the drywall.  Therefore, in our opinion, it would still be covered.

FC&S, "Chinese Drywall and Corrosion."

The chemical reaction resulting from the Chinese manufactured drywall emissions which caused Plaintiffs' damage is not the normal anticipated corrosion.  The reaction causing damage to Plaintiffs' property is a sulfidation reaction which occurs rapidly and begins immediately upon exposure of the metal to the sulfurous compounds and moisture.  The types of damages excluded under the "corrosion"exclusion are damages that occur naturally, are expected, and take years to substantiate into actual damage.  Because the sulfidation reaction caused by the sulfurous compounds emitted by the Chinese manufactured drywall in Plaintiffs' home is wholly different from the type of oxidation reaction which occurs naturally to copper and silver over many years, the damages to Plaintiffs' home caused by the sulfidation reaction are unanticipated and wholly outside of the scope of this exclusion.

This very important distinction was at the core of the Hernandez decision.  This Court recognized that the corrosion caused by Chinese drywall was of a completely different nature than corrosion caused naturally.  In this context, the corrosion was caused by the sulphur emissions

damaging both copper and silver components in the home. <u>Hernandez</u>, at 16. Obviously, if the corrosion at issue was caused "naturally" by normal environmental conditions, then this Court would not have created the remediation protocol.

Second, the exclusion speaks to loss "caused by" corrosion. Here, the damage is not caused by corrosion. The damage is caused by the sulphur compounds being emitted from the drywall. This distinction has been recognized by at least one Louisiana court.[4]

In *Trus Joint MacMillan v. Neeb Kearney and Co., Inc.*, 2000 WL 306654, *2 (E.D. La. 3/23/00), the plaintiff contracted with State Farm to store plaintiffs' steel bedplates in a warehouse. While the bedplates were in the warehouse, they became wet due to standing water and suffered extensive damages. Plaintiff filed a claim with the warehouse's insurer, who claimed the deterioration exclusion excluded coverage due to the corrosion, which read, "we do not pay for loss caused by contamination or deterioration, including corrosion." Finding coverage for the loss, the court stated as follows:

> Clearly, however, the exclusion is designed to apply where corrosion is the *cause* of property damage. It is not designed to preclude coverage when rust is the damage itself, as opposed to the cause of damage. Even if there were some ambiguity about the meaning of this exclusion, for purposes of summary judgment any doubts should be resolved against the exclusion.

*Id.* at *2. The same is true of Plaintiffs' claim.

There are no allegations in Plaintiffs' Complaint that their loss or damage was caused by

---

[4]Notably, the cases cited by State Farm in support of its construction of the corrosion exclusion were decided at the summary judgment stage of the litigation or after trial, not the pleadings stage like State Farm's Motion. Moreover, these cases are not binding on this Court and/or are generally distinguishable, as well. *See, e.g., Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So.2d 981 (La. 1991) (construing a boiler and machinery policy following trial on the merits); *Travco,* 2010 WL 2222255 (applying Virginia law in the context of a summary judgment motion).

corrosion.  Plaintiffs allege that their damage was caused by Chinese manufactured drywall. (Complaint, ¶16).  State Farm cannot meet its burden, and its Motion to Dismiss should be denied.

### 4.    On the Face of the Complaint, the Contamination Exclusion Does Not Bar Plaintiffs' Claim.

For another affirmative defense supporting its Motion, State Farm cites the contamination exclusion in its policy which excludes coverage for damage caused by contamination.  Policy, at 9. The Complaint provides adequate allegations that this exclusion does not apply and states as follows:[5]

> The Pollution Exclusion was never intended to apply to residential homeowner's claims for damages caused by substances emitted from building materials.  The Pollution Exclusion was intended to apply only to those incidents which would otherwise cause environmental damage and/or otherwise originate from a source outside of the home.

Complaint, ¶ 31.

The contamination or pollution exclusion will not operate to deny coverage in Louisiana. In *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So. 2d 119, 127, Chief Justice Calogero examined the history of the pollution exclusion in insurance contracts to conclude that "there is no history in the development of the exclusion to suggest it was ever intended to apply to anyone other than an active polluter of the environment."  The Court found that a literal interpretation of the pollution exclusion would lead to absurd results, and that the pollution exclusion is designed to exclude coverage for environmental pollution only and not for all interactions with irritants or contaminants of any kind. *Id.* at 135. *See also Thompson v. Temple*, 580 So.2d 1133 (La. App. 4 Cir. 1991) (pollution exclusions are intended to exclude coverage for active industrial polluters, when

---

[5] Although the Complaint refers to the "pollution" exclusion, it applies to the "contamination" exclusion as well, since they are identical.

businesses knowingly emitted pollutants over extended periods of time; finding that the pollution exclusion clause in a homeowner's policy does not operate to exclude injuries caused by a leaking gas heater); *West v. Board of Commissioners of the Port of New Orleans*, 591 So.2d 1358 (La. App. 4 Cir. 1991) (finding that the pollution exclusion is applicable to polluters - those who indifferently pollute the environment - and not those who only incidentally possess the pollutant in the course of their other business; application of the exclusion is a question of fact for the finder of fact).

Whether the substance is a "contaminant" or "pollutant" is also a fact-based conclusion, which according to the Louisiana Supreme Court involves the following analysis:

> [T]he determination of whether the injury-causing substance is a "pollutant" is also a fact-based conclusion that should encompass a wide variety of factors . . . . Consequently, when making this determination, the trier of fact should consider the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion.

*Id.* at 136.

These factors are the result of long-standing policy and case law finding that the term "pollutant" is often too broadly interpreted and subject to abuse in the claims handling process. For example, the Louisiana Commissioner of Insurance has described this State's ongoing concern over the broad interpretation of a qualifying "pollutant" in standard pollution exclusions for commercial lines:

> We are concerned that the broad definition given the term "pollutant" creates an opportunity for abuse. This is a particular concern as regards commercial enterprises whose ongoing business activities do not present a risk to the environment. For example, we have found instances where it has been argued that any thing and/or matter that harms a person, whether or not it has toxic or hazardous properties is, de facto an irritant and therefore a pollutant, thereby triggering the pollution

> exclusion…The appropriate use of the pollution exclusion in claims handling is an issue of grave concern.

Advisory Letter Number 97-01, Commissioner of Insurance, State of Louisiana (June 4, 1997).  The "pollutant" at issue here is contained within drywall – a material not known to commonly contain any dangerous substances.

Defendants contend that because their pollution exclusion contains the word "contamination," Plaintiffs claims are excluded.  Defendants' policy contains no definition or guide to interpret the meaning of such a broad terms as "contamination."  Courts have held that such terms as "irritant" and "contaminant" in the context of the pollution exclusion in insurance policies "are virtually boundless, for 'there is no substance or chemical in existence that would not irritate or damage some person or property.'" *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Inc. Co.*, 472 F.3d 33, at 47 (2nd Cir. 2006) (quoting *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir. 1992); *Herald Square Loft Corp. v. Merrimack Mut. Fire Ins. Co.*, 344 F.Supp. 2d915, 919-20 (S.D.N.Y. 2004).  The term "contamination" as used in the insurance policy made the basis of this litigation, is likewise "boundless" in its interpretation and therefore must be construed to effect, not deny, coverage.  Defendants' Motion to Dismiss must therefore fail.

Plaintiffs' Complaint adequately alleges that the drywall emits odorous gases that cause damage.  Complaint, ¶16.  The fact-based determination of the application of the pollution exclusion cannot be made in State Farm's Motion to Dismiss, and certainly not on the basis of this simple allegation.  State Farm's Motion to Dismiss should be denied.

**D.    In the Alternative, the Ensuing Loss Clause Provides Coverage Where Otherwise Excluded.**

Even if this Court should find that any of the previous exclusions apply, coverage would still be available for the ensuing loss. The latent defect exclusion, the corrosion exclusion, the contamination exclusion, and the faulty materials exclusion contain a clause providing, "**we do insure for any resulting loss from items a., b., and c.**, unless the resulting loss is itself a loss not insured by this section." Policy, at 11 (emphasis supplied).

The industry FC&S Bulletin noted that any ensuing loss "as a result of the faulty drywall would be covered, for example if the drywall caused corrosion damage to wires or pipes." FC&S Online, Chinese Drywall, June 2009, http://www.nationalunderwriterpc.com. The FC&S Bulletin regarding Chinese drywall states that there "is coverage for ensuing losses from faulty workmanship." FC&S Online, Chinese Drywall: The Next Big Issue September 2009, http://www.nationalunderwriterpc.com.

Louisiana courts have applied the ensuing loss provision and allowed coverage for damages resulting from a previous excluded loss. *See, e.g., Dawson Farms, L.L.C. v. Millers Mutual Fire Insurance Co.*, 34, 801 (La. App. 2nd Cir. 8/1/01), 794 So.2d 949, 952 (faulty design and/or workmanship exclusion did not exclude damages due to the resulting loss, therefore the insured was entitled to coverage for losses associated with the damages to the contents of the building); *Lake Charles Harbor & Terminal District v. Imperial Casualty & Indemnity Co.*, 857 F.2d 286, 288 (5th Cir. 1988) (policy excluded damages caused by a mechanical or machinery breakdown but covered losses due to ensuing perils, indicating damages caused by the mechanical breakdown were covered under the policy); *Holden v. Connex-Metalna*, 2000 WL 1876338, *7-8 (E.D. La. 12/12/00) (court permitted the insured to recover damages based on the ensuing loss exception to the exclusion for machinery breakdown and faulty workmanship).

18

In *Holden*, the court found that the faulty workmanship exclusion applied to the specific components of a crane which were identified as being faulty but found coverage for the damage caused by the crane when it fell, including the loss of the crane itself, pursuant to the ensuing loss provision of the property policy.  *Holden*, 2000 WL 1876338.

> The exclusions at issue here are designed to ensure that the property insurers do not become warrantors of the crane's quality.  As such, the property policies do not cover worn or broken parts, pay for repairs when a mechanical system or process breaks down, or fix a design problem.  In this case, to the extent that there was a flaw or defect in the quality of the crane it would have been that the boom and trolley were significantly heavier than intended in the design of the unloader.  Thus had it remained standing, any of the exclusions, if applicable, would have barred from coverage any costs to rebalance or redesign the crane. However, in this case, the unbalance triggered a series of ensuing events that lead to the complete destruction of the crane and other property….All damages caused by the falling crane, including the total loss of the crane itself are excepted under the "ensuing loss" proviso.

*Id*. at *8-9.  Here, there is a distinct separation between what State Farm argues is the excluded loss, the Chinese drywall itself, and the ensuing losses, which are the damages caused by the sulphur compounds that the Chinese drywall emits.

In <u>Hernandez</u>, this Court identified a remediation protocol including the repair and replacement of numerous items that were "ensuing loss."  These items include the following: (1) replacing the entire electrical system; (2) all copper and silver plumbing components; (3) the entire HVAC system; (4) appliances; (5) everything in front of drywall; and (6) comprehensive cleaning of the premises.

### E.     Loss of Use and Bad Faith Claims Are Dependent Exclusively on the Court's Decision on Coverage.

The issues of whether Pplaintiffs can recover ALE or whether State Farm engaged in bad faith are directly dependent upon whether there is coverage in the first instance.  For all of the

previous reasons, Plaintiffs maintain that coverage is provided under the policy.  Bad faith can be found directly and with nothing more than a misinterpretation of the policy or inappropriate denial of coverage.  Louisiana Bag Co. v. Audubon Indem. Co., 999 So.2d 1104, 1116 (La. 2008) ("[I]nsurer bears the risk of misinterpreting its own policy.").  As such, however the Court rules on the issues above will dictate the decision here.

### F.      Personal Property, Bodily Injury, and Diminished Value Claims are Not Covered by this Policy.

The very reasons that the policy does not cover this type of damage to contents, bodily injury, or diminished value actually provide support for coverage to the damage to the dwelling.  Personal Property is not covered because coverage is limited to named perils – in stark contrast to the all-risk portion of building coverage.  Bodily injury is not covered because of the very specific manner in which the policy defines "You" to only include the named insured and the spouse – in stark contrast to the lack of any definition of "direct physical loss," "faulty," "latent defect," "corrosion," or "contamination."  Diminished value claims are not covered because the loss is economic – in stark contrast to the very physical damage caused by the Chinese drywall.

### G.      Plaintiffs Have Stated Sufficient Grounds for Injunctive Relief

Defendants contest Plaintiffs' request for injunctive relief by stating that Plaintiffs claims are only upon information and belief.  In so far as Plaintiffs have demonstrated a likelihood of success on the merits by virtue of their allegations and arguments contained within this memorandum, Plaintiffs request for injunctive relief should be granted.  If Defendants are not performing the acts upon which Plaintiffs are informed and believe them to be performing, then Defendants will not be harmed by the requested injunctive relief.

F.     **Plaintiffs' Bodily Injury**

To the extent that putative class members fall within the exclusions and definitions defined in the policy regarding, the insured, the insured's spouse, the insured's residents residing at the insured address and anyone under the age of 21 who is in the care of any person mentioned in this statement, Plaintiffs agree that damages for bodily injury are not covered by this insurance policy.

G.     **Plaintiffs' Diminished Value Claims**

To the extent that physical damages to Plaintiffs' dwelling caused by Chinese manufactured drywall has diminished the value of Plaintiffs' property, Plaintiffs are clearly allowed to recover for such damages.

III.   **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny State Farm's Motion to Dismiss.

Dated: August 2, 2010                    Respectfully submitted,

                                         /s/ Russ M. Herman
                                         Russ M. Herman, Esq.
                                         Leonard A. Davis, Esq.
                                         Stephen J. Herman, Esq.
                                         HERMAN, HERMAN, KATZ & COTLAR, LLP
                                         820 O'Keefe Avenue
                                         New Orleans, Louisiana 70113
                                         Phone: (504) 581-4892
                                         Fax: (504) 561-6024
                                         LDavis@hhkc.com
                                         *Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020   bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com


Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055    Jerry@yourlawyer.com


James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 2nd day of August, 2010.


/s/  Leonard  A.  Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com