# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: CHINESE MANUFACTURED DRYWALL** | * | **MDL NO.2047** |
| **PRODUCTS LIABILITY LITIGATION** | * | |
| | * | **JUDGE FALLON** |
| **THIS DOCUMENT RELATES TO:** | * | |
| | * | |
| MONA BURKE, WIFE OF/AND | * | **MAG. WILKINSON** |
| THOMAS E. BURKE, IV      vs. | * | |
| DAELEN OF TANGIPAHOA, L.L.C., ABC CORP., | * | |
| AND STATE FARM FIR EAND CASUALTY CO. | * | |
| No.  10-1840 | * | |

*      *      *      *      *      *      *      *      *      *      *      *      *

## MEMORANDUM IN OPPOSITION TO THE RULE 12
## MOTION TO DISMISS OF STATE FARM FIRE
## AND CASUALTY COMPANY

MAY IT PLEASE THE COURT:

Plaintiffs, through undersigned counsel, submit this memorandum in opposition to the Rule

12 Motion to Dismiss of State Farm Fire and Casualty Company ("State Farm").  Plaintiffs filed their

complaint seeking to recover losses incurred in their home, as a result of the "off-gassing" of the

Chinese drywall, losses that were covered under a policy issued by Defendant's insurance company.

In response to Plaintiffs' Complaint, State Farm now moves this Court to dismiss Plaintiffs' claims

under Rule 12(b)(6) for failure to state a claim. The instant motion should be denied because Plaintiffs state a claim sufficient to survive 12(b)(6). In addition, Defendant predicates its motion not on the complaint itself, but on facts which have not yet been developed through discovery. As discussed more fully herein, Plaintiffs adequately state a claim in the state court petition, and the dismissal on Defendant's contentions that require the submission of evidence is improper under 12(b)(6).

**I.      This Summary Judgment Motion is Premature**

Defendants' 12(b)(6) motion to dismiss is procedurally incorrect, and should not be granted. Defendant's motion is truly a motion for summary judgment under Rule 56 which requires discovery. As discovery has not yet commenced, the instant motion must be denied.

In support of their motion to dismiss, defendants assert a number of contentions that are based upon contested facts that require discovery for clarification including:

1. Defendants erroneously claim that the off-gassing of the drywall falls within the faulty or defective workmanship exclusion simply because of the presence of off-gassing drywall.

2. Defendants erroneously claim that it is "clear" that the damage caused by the drywall was a "latent defect" due to a gap in time between the date the Burkes moved into the home, and the subsequent claim.

3. Defendants erroneously claim that damage to pipes, metal wiring, and other features of the dwelling are barred by the corrosion exclusion simply because of the presence of corrosion.

4. Defendants erroneously claim that the presence of hydrogen sulfide and sulfur dioxide prohibit recovery under the contamination exclusion, because they are "unwholesome or undesirable elements."

Discovery on the above four issues (off-gassing of drywall, time of damage, extent of damage, and type of damage) is needed prior to a legal decision on the applicability of the exclusions.

On a Rule 12(b)(6) motion if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED.R.CIV.P. 12(B); *See Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980); *Smith v. Tarrant County Hospital Dist.*, 691 F.2d 207, 208 (5th Cir. 1982); *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982) (holding that a court must convert a motion to dismiss into a motion for summary judgment if periphery materials are necessary).   However, when the court converts a motion to dismiss into a motion for summary judgment, the court must give all parties notice and where necessary, allow them the opportunity to conduct discovery and present further materials to support their positions on the motion. *Tarrant County Hospital Dist.*, 691 F.2d at 208.

Here, conversion of the instant motion to a motion for summary judgment would not be appropriate because at this stage of the litigation, Plaintiffs have not had the opportunity to conduct any discovery.   Since no discovery has been conducted on this matter, a Motion for Summary Judgment is premature and should be denied.   In *Celotex Corp. v. Catrett,* the United States Supreme

Court held that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery" if there is no genuine issue of material fact.  477 U.S. 317, 322 (1986). Because discovery has not yet taken place, Plaintiffs respectfully request that the opportunity to obtain all pertinent and supporting material in the event that the Court converts the motion into one for summary judgment under FRCP 56.

**II.      12(b)(6) Motion Must be Denied**

State Farm's 12(b)(6) motion must be denied because Plaintiff's Complaint contains precise factual allegations, rather than mere legal conclusions, that are sufficient to survive a 12(b)(6) motion.  In addition, State Farm's cited exclusions, which serve as the foundation for their motion to dismiss, do not apply to limit Plaintiff's insurance claims in the present case.  Because the very basis for State Farm's 12(b)(6) motion does not apply to preclude coverage for Plaintiffs, the motion must be denied.

**A.      12(b)(6) Standard**

In *Ashcroft v. Iqbal*, the United States Supreme Court held that a court may not dismiss a complaint under F.R.C.P. 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. (2007)).  The Court in *Iqbal* continued by explaining that the idea "that a court must accept as true all of the allegations continued in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  129 S.Ct. At 1949.  In addition, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and facial plausibility is

established where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50.

Generally, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum and Chemical Sales v. Avondale Shipyard*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980).

"The issue is not whether a plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims." *Doe v. Hillsborough Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996). Dismissal under Rule 12(b)(6) is not warranted even if the district court believes the plaintiff is unlikely to prevail on the merits. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed. 2d 1974. Even if it seems "almost a certainty to the court that the facts alleged cannot be proved to support the legal claim", the claim may not be dismissed as long as the complaint states a claim. *Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir. 1984).

Here, granting defendant's motion to dismiss would be improper. First, plaintiffs need only show that the stated claim is plausible on its face in order to survive the motion, which they do here. Plaintiff's complaint contains allegations that were neither "threadbare" nor were they "mere conclusory statements." For example, Plaintiffs alleged that their electrical wiring, metal furniture fixtures, and other metals in the home were tarnished and were destroyed by gases emitting from the

defective drywall. (Second Am. & Supp. Pet. ¶ 6) Plaintiffs' Complaint is full of precise factual allegations that do not rest merely on legal conclusions.

In addition, defendant's motion to dismiss is inappropriate because discovery has not yet taken place.  This factor is particularly relevant because defendant raises a number of exclusions in its motion to dismiss, in an attempt to demonstrate that coverage did not apply to Plaintiffs' claims. These exclusions serve as the sole foundation for Defendant's motion to dismiss.  However, these exclusions should not and do not apply to Plaintiff's case, a fact which Plaintiff points out below and will continue to demonstrate through discovery.  Granting Defendant's motion to dismiss would undermine Plaintiff's opportunity to demonstrate that the exclusions do not apply in the present case, and would unduly prejudice Plaintiff's case.   This Court is in its best position to make a determination on the claim once sufficient discovery has been completed.  This issue is more appropriately decided by a motion for summary judgment.

**III.    The Presence of Defective Drywall in the Dwelling is a "Loss Insured" Under the Policy's Insuring Agreement**

Plaintiffs have sustained property damage to their home due to the installation of defective drywall. Such damage is an accidental direct physical loss covered under the insuring agreement of the Policy.[1]  To contradict this proposition, defendants cite *Trinity Industries, Inc. v. Insurance Company of North America* 916 F.2d 267 (5th Cir. 1990).  (Defendant's memo, p. 6).  However,

---

[1]        Defendant's insurance policy provides that "[W]e insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I- LOSSES NOT INSURED**.  (Defendant's Memo,  State Farm Insurance Policy, p.7).  Section I provides that "[W]e do insurance for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this section."  (Defendant's Memo State Farm Insurance Policy, p.10).  Damage to Plaintiffs' property is not excluded anywhere under Section I, as analyzed thoroughly in memorandum below, and therefore is direct physical loss that is covered by Defendant's insurance policy.

*Trinity Industries* is distinguishable from the present case because it involved a defect that was a result of defective workmanship and was therefore not a recoverable "loss insured." *Trinity Industries*, 916 F.2d at 271.   In the instant case against State Farm there is no allegation that defective workmanship in the Burke's home has played any role in the harm that they suffered.   The drywall was installed correctly, and is still operating under its function as drywall, despite the "off-gassing" that has damaged the majority of the rest of the house.   Plaintiffs would concede a link between *Trinity Industries* and the present case if the drywall had been defectively installed, causing the damages to the home (if for example panels were missing, causing damage to the home whenever it rained) but that is simply not the case here.   In *Trinity Industries*, the Fifth Circuit reasoned that,

> "The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state- for example, the car was undamaged before the collision dented the bumper."

*Id.* at 271.   Defendants use the cited passage to support their proposition that "there cannot have been any 'accidental direct physical loss' to the drywall itself" because the drywall was inherently defective and was never in an "initial satisfactory state."   (Ex. C, Defendant's memo, p.6-7).   However, following the logic of this argument, the rest of the Burke house that was damaged, including the metal appliances, copper tubing, air conditioner coils, and other household fixtures, would be categorized as "accidental direct physical loss" and therefore would be covered under the policy.   *Trinity Industries*, 916 F.2d at 271.   These items were all in an "initial satisfactory state" until they were damaged by the presence of the Chinese drywall.

Because losses due to the defective drywall are included within the terms of the Policy, Plaintiffs have stated a claim upon which relief can be granted, meriting a denial of defendant's motion to dismiss.

## IV.   In the Alternative, Defendants' Motion to Dismiss Fails on its Face Because Defendant's Exclusions do not Preclude Coverage Under Louisiana Law

### A.   The Faulty or Defective Workmanship, Construction and Materials Exclusions do not Apply

In Defendant's memorandum, they argue that losses to the dwelling itself, including drywall, are not covered under the faulty or defective workmanship, construction and materials exclusions. (Defendant's memo, p.7-8). They assert that because the drywall was a defective material used in construction, it is not covered under Section 3(b). *Id.* at 9.  Even assuming that Defendants are correct and the drywall is excluded by the policy, the remainder of the losses to the Burke house are covered under the policy.  The resulting loss clause that follows the section, and reads, "However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section." (Ex. A, State Farm Insurance Policy, p.10).   This clause provides for coverage for all resulting loss that is not expressly excluded by any other provision in the policy. Because the resulting loss to the metal fixtures, piping, wiring, and other household losses are not expressly excluded, they are covered under the resulting loss provision.

In their memo, Defendants cite *Alton Ochsner Medical Foundation v. Allendale Mutual Insurance Co.*, 219 F.3d 501 (5th Cir. 2000) to support the proposition that no damage to the Burke home is covered under the insurance policy because of the faulty workmanship exclusion.  (Ex. C, Defendant's memo p.8-10).  In *Alton Ochsner*, Plaintiffs sued their insurance company for damages

after initial cracks in pile caps of a new hospital's foundation widened over time, causing significant structural damage.  219 F.3d 501 (5th Cir. 2000).  Although, defendant denied coverage based upon the faulty workmanship exclusion, plaintiffs' suit contended that the enlarged cracks constituted "resulting physical damage" and   was covered under the "resulting damage" portion of the policy. *Id.*  The court ultimately held that the damage was not covered because in order to "fall back within coverage as 'resulting physical damage,' the policy contemplates damage that is different in kind, not merely different in degree." *Id.* at 506.  Because the widened cracks were merely different in degree than the initial smaller cracks, the court found that the damage lacked the sufficient difference in kind to fall under the policy's "resulting damage" provision.  *Id.*  They reasoned that "the minor damage to the foundation [did] not 'cause' the more severe structural impairment.  The cracking is the impairment; they are synonymous." *Id.*

This case is distinguishable from *Alton Ochsner* because even if the court concludes that the damage to the drywall is not recoverable under the faulty workmanship exclusion, the damage done to the rest of the Burke's home, including the corrosion of wiring, copper pipes, metal appliances, and other household items is certainly recoverable as a "resulting loss."  Unlike the widening of the crack in *Alton Ochsner* which represented harm that was the same "in kind" as the initial harm, the damage to the remainder of the Burke's home was disparate both in time and "in kind" to the off-gassing drywall.  Defendant's insurance policy covers "resulting loss", which is the exact type of loss that occurred here, and therefore further supports denial of Defendant's motion to dismiss.

**B.     The Latent Defect Exclusion Does Not Apply**

State Farm contends that the insurance contract at issue here provides for an exclusion for any latent defect in an attempt to bar the Burke's claim.  Typically, property protection policies exclude coverage for losses attributable to a "latent defect," which is a vice that renders damage inevitable because of deterioration.  *Perzy v. Intercargo Corp.*, 827 F.Supp. 1365 (N.D.Ill. 1993). The exclusion originated in maritime law and speaks to the reasonable expectations of the parties to the contract.  Arnold Couch on Marine Insurance (11th ed.) § 778 states:

> "The underwriter is not liable for that loss or deterioration which arises solely from a principle of decay or corruption in the subject insured, or, as the phrase is, from its proper vice; as when fruit becomes rotten, or flour heats, or wine turns sour, not from external damage, but entirely from internal decomposition."

ARNOLD COUCH ON MARITIME INSURANCE (11th ed.) § 778.  The insurance industry has defined the latent defect or inherent vice exclusion as "a quality within an object which makes it tend to destroy itself."  RODDA, WILLIAM H., FIRE AND PROPERTY INSURANCE 298 (Prentice-Hall, Inc. 1956).  An example of an inherent vice is rubber's tendency to destroy itself whether or not it is in use.  *Id.*  The Fire, Casualty and Surety (FC&S) Bulletin noted that the inherent vice or latent defect exclusion applies to "a loss due to any quality in the property that causes property to damage or destroy itself that results from something within the property itself as opposed to some outside force."  FC&S Online, *Processors Coverage Form, Insurance Services Office Non-filed IM Coverage*, December 2005, http://www.nationalunderwriterpc.com.  First party policies typically exclude damages due to an inherent vice or latent defect in order to prevent the insurer from having to compensate the insured for property that "has its own shelf life and will eventually wear out or break down because

of intrinsic quality or nature." Eugene Wollan, *Risks Not Taken*, John Liner Review 86, (Fall 2006). The "latent defect" exclusion is meant to apply to maintenance type damage claims or claims that relate to the property itself breaking down in some way, or to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction. *See Employers Cas. Co. v. Holm*, 393 S.W.2d 363 (Tex. Civ. App. Houston 1965).

Here, there is no evidence that the Chinese drywall that is installed in the Burke's home is damaging or destroying itself. Therefore, the Chinese drywall does not contain a "latent defect" within the meaning of the exclusion. Coverage is required here because "the purpose of the policy is to secure an indemnity against accidents which may happen, not against events which must happen." *Gulf Transp. Co. v. Fireman's Fund Ins. Col.*, 83 So. 730, 733 (Miss. 1920). As alleged by the Burkes, either accident or mistake (but certainly unexpected events) caused the defects present in the Chinese-manufactured drywall and the subsequent sale of the drywall in the hot and humid climate of Louisiana. The Burkes purchased the insurance, and State Farm provided indemnity against loss or damages from this fortuitous and extraneous circumstance.

Furthermore, this is not a case where the Burkes have made claims for the cost of the substandard Chinese-manufactured drywall. Instead, the sulfur compounds that are released from Chinese-manufactured drywall are no less ruinous to a home than a fire that originated from flammable or untreated woods. Because these compounds corrode wiring, damage electronics, and infested carpets, drapes and bedding, the claim is to restore the damaged home and not to pay for the cost of the Chinese-manufactured drywall itself. Accordingly, where, as here, the Burkes purchased

all-risk coverage, the "latent defect" element of the exclusion does not operate to bar the Burkes'
claim.

## C.    The Corrosion Exclusion Does Not Apply

When language in a policy is ambiguous, the language must be interpreted in favor of
perfecting coverage. *Carney v. America Fire & Indemnity Co.*, 371 So. 2d 815, 818 (La. 1979).
State Farm's relevant corrosion exclusion is ambiguous, and therefore must be read in favor of
perfecting coverage. The policy reads,

> "1. We do not insure for any loss to the property described in Coverage A which consists of,
> or is directly and immediately caused by, one or more of the perils listed in items a. through
> n. below...
>
>        h. corrosion, electrolysis or rust;"

(Ex. A, State Farm Insurance Policy, p.9). This clause is ambiguous, creating confusion over what
is actually excluded. Words like "directly" and "immediately" are not defined, and jeopardize the
coverage of the insured because they allow insurance companies to apply the broadest of meanings
to exclude as much as possible. "If a term ... is not defined in the policy, then the term has no
absolute or precise meaning." *Smith v. Rocks*, 957 So. 2d 886, 888 (La. App. 2nd Cir. 2007). State
Farm's use of the undefined terms, "directly" and "immediately" cause them to have no absolute
meaning, and should be interpreted narrowly, in favor of providing coverage. *See Smith v. Rocks*,
957 So. 2d 886, 888 (La. App. 2nd Cir. 2007) (construing ambiguous language in its most inclusive
sense to favor coverage); *Calcasieu Parish Scho. Bd. v. Lewing Const. Co., Inc.*, 931 So. 2d 492, 501
(La. App. 3rd Cir. 2006) (interpreting ambiguous terms in favor of perfecting coverage).

In addition, the ambiguous phrase "immediately caused by" is particularly troublesome for an insured member under the State Farm policy.  *See* Adam Scales, *A Nation of Policyholders: Governmental and Market Failure in Flood Insurance*, 26 Miss. C.L. Rev. 3, 26 (2006-2007) (observing that a comparable phrase, "'arising out of' which can appear in several places within an insurance policy, does not have a stable meaning").  Because an insurance policy is a contract, the words contained within must be given their generally understood meaning.  *Coates v. Northlake Oil Co., Inc.*, 499 So. 2d 252, 255 (La. App. 1st Cir. 1986); LSA-C.C. art. 2047. The dictionary is a source that can provide the ordinary meaning of a term.  *Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Continental Ins. Co.*, 891 F.2d 772, 776 (10th Cir. 1989) (*citing Kane v. Royal Ins. Co.*, 768 P.2d 678, 680-81 (Colo. 1989); *United Bank of Pueblo v. Hartford Accident & Indem. Co.*, 529 F.2d 490, 493 (10th Cir. 1976).  According to *Merriam-Webster*, "immediately" means either 1) in direct connection or relation, or 2) without interval of time.  http://www.merriam-webster.com.  Each of these meanings comport with the "generally understood meaning" for the word "immediately." However, the two meanings have very different effects upon whether the exclusion would apply.

A homeowner, when reading the policy could read "immediately" as having the temporal meaning.   Thus, the exclusion clearly does not apply because the corrosion and subsequent damage was not "without interval of time."  The Burkes purchased their home in the fall of 2006, and the damage from the drywall's "off-gassing" became apparent only after an interval of time; it was not immediately apparent.

In determining which meaning to choose, Plaintiffs respectfully point back to the exclusion and the use of the phrase "directly *and* immediately" (emphasis added).  Because State Farm used

-13-

the word "directly" in conjunction with the word "immediately" it would stand to reason that these words would have different meanings.[2]  "Directly" in this case would refer to a causal relationship between the corrosion and the subsequent damage, while immediately would refer to the lack of an "interval of time" between the corrosion and damage.  Additionally, because the words are linked by the conjunction "and," the exclusion would only apply if the damage was *both* "directly" and without any interval of time, caused by corrosion.  Even conceding that the damage was "directly" caused by corrosion, the exclusion does not apply because there was clearly a significant gap of time between the corrosion, and the subsequent damage to the metal fixtures, wiring, and piping within the Burke home.

Further, the damage to the Burke home did not "consist of corrosion", because the damage was not the corrosion itself.  Instead the damage was the loss of functionality of the metal fixtures, wiring, piping and other losses within the house.  Because these are covered damages not excluded by the State Farm insurance policy, the motion to dismiss must be denied.

**D.     The Contamination Exclusion Does Not Apply**

As previously cited, when language in a policy is ambiguous, the language must be interpreted in favor of perfecting coverage.  *Carney*, 371 So. 2d at 818.  Courts have found that the term "contamination" is ambiguous.  *See Parks Real Estate Purchasing Group v. St. Paul Fire and*

---

[2]     The use of "directly *and* immediately" also distinguishes *Arkwright-Boston Manufacturers Mutual Insurance Co. V. Wausau Paper Mills Co.* where the court held that a corrosion exclusion applied to all types of corrosion, whether they were sudden or gradual.  818 F.2d 591, 594-95 (7th Cir. 1987). Different from the present case, the corrosion exclusion in *Arkwright* contained no language requiring that the damage be "directly and immediately" caused by corrosion.

*Marine Ins. Co.*, 472 F.3d 33, 47 (2nd Cir. 2006); *Ocean Partners, LLC v. North River Ins. Co.*, 546 F.Supp. 2d 101, 114 (S.D.N.Y. 2008); *First Realty LTD v. Frontier Ins. Co.*, 378 F.3d 729, 733 (8th Cir. 2005).   In *Parks*, the court stated that "because of the virtually boundless' array of possible applications of the term contamination in the contamination exclusion provision, we think that the parties should be allowed to introduce evidence of what was intended by the use of this ambiguous term." 472 F.3d at 48.   Additionally, in this case the term "contaminant" is undefined by the State Farm policy.   As an exclusion, it must be interpreted narrowly.   Courts have disagreed over the definition of contaminant as it applies to the contamination exclusion of an insurance policy.   Some have defined the word as closely as possible, while others have looked to the contextual definition of the word.   *See Hi-G, Inc. v. St. Paul Fire & Marine Ins. Co.*, 391 F.2d 924, 925 (1st Cir. 1968) (defining "contamination" as occurring when a "foreign substance merely injures its usefulness without affecting the original physical characteristics"); *Auten v. Employers Nat. Ins. Co.*, 722 S.W.2d 468, 269 (Tex.App. 1986) (finding that "[c]ontamination occurs when a condition of impairment or impurity results from mixture or contact with a foreign substance"); *But see Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (examining the policy's exclusion clause to determine the meaning of the term "contaminant").

A definition of contamination offered in Defendant's motion is "to make unfit for use by introduction of unwholesome or undesirable elements or to 'to soil, stain, or infect by contact or association.'" (Defendant's memo, citing *Barry Concrete v. Martin Marietta Materials, Inc.*, 531 F.Supp. 2d 766 (M.D.La. 2008)).   Under this definition the exclusion would not apply because the drywall was not "unfit for use."   Although the drywall that was installed in the Burke's home is

defective in that it off-gases sulphuric compounds, the drywall itself is not "unfit" as it is doing its job in holding up the walls of the Burke's home.  The drywall complies with applicable ASTM standards, therefore, the drywall is arguably not "unfit" within the meaning of the exclusion.

In addition, the exclusion does not apply because the drywall's off-gassing does not release "unwholesome or undesirable elements."  The drywall releases hydrogen sulfide and sulfur dioxide, which are both compounds that are present in the environment at all times.  Hydrogen sulfide and sulfur dioxide are not considered "unwholesome or undesirable."  The exclusion should not apply because it is not the presence of the elements that is "unwholesome or undesirable."  Instead, it is the *level* of the presence of these compounds that creates the problem, especially in a warm, humid area such as New Orleans.  Too much sulfur dioxide and hydrogen sulfide is "unwholesome or undesirable" but because State Farm failed to include that type of language in their exclusion, the contamination exclusion does not serve to bar Plaintiff's claims.

The contamination exclusion also should not apply to Plaintiff's claims because nowhere does Plaintiff allege, nor Defendant cite, a situation where the off-gassing has proceeded to "soil, stain, or infect by contact or association."  "Soil" carries with it the connotation that the gas has somehow made the house "dirty" which Plaintiffs never allege, and for which there is no evidence.  Staining something typically involves leaving it with a visible, physical mark, which again is not the case here.

Further, case law does not support the use of the contamination exclusion for the present set of facts.  In *McConnell Constr. Co. v. Insurance Co. of St. Louis*, the court held that the

contamination exclusion did not preclude coverage of an insured's claim for damage that consisted of corrosion to metal parts of the house including window frames, doorknobs, and other metal fixtures. 428 SW. 2d 659 (Tex. 1968). There, muriatic acid was used on the brick and mortar of the home's floor, causing a chemical reaction that led to the corrosion of much of the house's metal. *Id.* As a result, the court found that the damage could not be excluded under a contamination exclusion because the damage that had occurred was the result of corrosion. *Id.*

The facts in the present case are strikingly similar to *McConnell Constr. Co.* Due to the chemical "off gassing" process in the Chinese drywall, much of the metal in the Burke's home *corroded*, including the air conditioner and refrigerator coils, copper tubing, electrical wiring, and other household items. Although Defendants somehow attribute the damage to contamination, it is actually a result of corrosion. As a result, the contamination exclusion is entirely irrelevant and should not apply to determining whether or not there was a covered loss. The only way that such a loss would not be covered would be if the Court found that the corrosion exclusion applied. However, as previously mentioned above, the corrosion exclusion does not serve to bar Plaintiffs' claim for covered damages. Because neither the corrosion exclusion nor the contamination exclusion serves to limit Defendant's coverage of Plaintiff's damages under Defendant's all risk policy, the losses are recoverable.

**E.     There is Coverage for Loss of Use, Living Expenses, and Rental Income Because There Was a Loss Insured to the Residential Premises**

Because none of the exclusions in Defendant's insurance policy apply, Plaintiffs' home is covered. Therefore, Plaintiffs have sustained a Loss Insured to the residence premises, and the

claims for loss of use, living expenses, and rental income are recoverable. Because discovery has yet to take place, it is premature for Defendants to attempt to dismiss Plaintiffs' claims in this matter. Defendants admit that claims for loss of use, living expenses, and rental income are recoverable where there is a loss insured. Through discovery, Plaintiffs will show that the damage to the residential dwelling was a loss insured, which therefore makes the claims for loss of use, living expenses, and rental income entirely recoverable.

F.     **Because Plaintiffs Have Stated a Claim for Coverage Under the Policy, Claims of Bad Faith Adjusting, Breach of Duty of Good Faith and Fair Dealing, and Misrepresentation of Policy Provisions Do Not Fail**

Plaintiffs' claims of bad faith adjusting, breach of duty of good faith and fair dealing, and misrepresentation of policy provisions do not fail because plaintiffs have stated a claim for coverage. Because discovery has not yet taken place, defendants erroneously assert that plaintiffs have failed to state a claim for which defendants' insurance policy would cover them. Operating under this erroneous conclusion, defendants attempt to dismiss all related claims under the premise that plaintiffs have absolutely no coverage, and therefore, no claim. Because plaintiffs are covered under defendants' insurance policy, these ancillary claims are not only relevant, but are grounds for recovery, and the claims do not fail on their face.

III.    **If State Farm has its Way, What is an "All Risk Policy?"**

The question over what an "all risk" policy actually covers is a highly relevant one in the United States today. Currently, insurance companies routinely shirk responsibility by pointing to vague and ambiguous policy exclusions that strip an American homeowner's attempt at responsibly obtaining protection down to nothing more than a glorified, overpriced, fire insurance policy.

Nowhere is this trend more evident than in the Gulf Coast Region, where in the wake of Hurricane Katrina, many citizens who believed that they had coverage for flood insurance were informed that their coverage was either insufficient, or nonexistent.  Mitchell F. Crusto, *The Katrina Fund: Repairing Breaches in Gulf Coast Insurance Levees*, 43 Harv. J. on Legis. 329, 333-34 (2006).  Only a small portion of the over $200 billion in damage due to Hurricane Katrina was actually covered by insurance companies, leaving mistaken, and in some cases misled, homeowners without options. Adam Scales, *A Nation of Policyholders: Governmental and Market Failure in Flood Insurance*, 26 Miss. C. L. Rev. 3 (2006-2007).

However, the trend is not limited to the Gulf Coast, as many "all risk" insurance policies leave homeowners wondering what their policy actually covers.  *See generally Why Your Homeowners Policy Might Not Be There When You Need It Most,* CONSUMER REPORTS, Sept. 2005, *available at* http://www.consumerreports.org/cro/personal-finance/flood-insurance-905.htm (stating that insurance policies contain gaps in coverage, particularly concerning environmental flooding); *See also* Rob Risley, *Landslide Peril and Homeowners' Insurance in California*, 40 UCLA L. Rev. 1145 (1993) (recovery for loss due to landslides in California nearly impossible without proof of "multiple causation"); Randy L. Arthur and James L. Knoll, *Property Insurance: No Solution for Pollution*, 17 B.C. Envtl. Aff. L. Rev. 231 (1990) (identifying the lack of coverage for pollution damage under standard property and homeowner's insurance policies).

The State Farm's of the world are doing a disservice to the public by selling misleading "all-risk" policies.  Responsible homeowners are spending thousands of dollars on "all risk" insurance policies in order to protect their families should a problem with their home arise.  These homeowners

are paying top dollar for coverage, that they, if State Farm has their way, are under the erroneous belief will protect them should they need coverage. In actuality, State Farm has sold the Burkes, and thousands of homeowners like them, what is little more than an expensive fire policy. Hidden within pages of small font are ambiguous terms couching language that is impossible for the average, responsible homeowner to comprehend. If State Farm has their way, such language not only confuses and misleads homeowners, but effectively serves to strip an "all risk" policy down to little more than expensive fire insurance.

As a matter of public policy, courts need to favor a narrow interpretation of insurance exclusions so that consumers are afforded the adequate level of protection that they believe they are receiving when they pay their premiums each year. Public policy considerations provide support for favoring coverage and denying Defendant's motion to dismiss.

## IV.    Conclusion

Plaintiffs' Complaint has a simple, concise and direct claim for damages and loss caused by the presence of Chinese drywall in Plaintiffs' home and covered by Defendant under the policy of insurance. State Farm's instant motion should be denied because Plaintiffs have adequately pled each claim. State Farm has been provided with fair notice of each of Plaintiffs' legitimate claims and Plaintiffs should be permitted to focus discovery issues on Defendant's use of policy exclusions to fully examine the validity of each claim. Therefore, the instant Rule 12 motion to dismiss of State Farm should be denied.

Respectfully submitted,

**MARTZELL & BICKFORD**

_/s/ Lawrence J. Centola, III_
**SCOTT R. BICKFORD, T. A. (#1165)**
**LAWRENCE J. CENTOLA, III (#27402)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 - FACSIMILE

**ATTORNEYS FOR PLAINTIFFS**

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion in Opposition to the Rule 12 Motion to

Dismiss of State Farm Fire and Casualty Company has been served on Plaintiffs' Liaison Counsel,

Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail _or_ by hand

delivery and email _and_ upon all parties by electronically uploading the same to Lexis Nexis File &

Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with

the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using

the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures

established in MDL 2047, on this __3rd__ day of __August__, 2010.

*Original signed document filed with the Court.*

*/s/ Lawrence J. Centola, III*

-21-