UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL | ) | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: L |
| | ) | |
| | ) | JUDGE FALLON |
| | ) | MAG. JUDGE WILKINSON |
| _____ | ) | |

**THIS DOCUMENT RELATES TO ALL CASES**

**THE PLAINTIFFS' STEERING COMMITTEE'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND TO COMPEL**
**PRODUCTION OF KNAUF DEFENDANT DOCUMENTS**

MAY IT PLEASE THE COURT

The Plaintiffs' Steering Committee ("PSC") moves this Court for an immediate Order imposing Sanctions against defendants, Knauf Gips, KG; Knauf Plasterboard (TIANJIN) Co. LTD.; Knauf Plasterboard (WUHU), Co., LTD.; and Knauf Plasterboard (DONGGUAN) Co., LTD., as well as an Order compelling:

1.    The Knauf defendants to fully produce witnesses for depositions, including:

      a.    Isabel Knauf
      b.    Hans Hummel
      c.    Mark Norris
      d.    Tony Robson
      e.    Martin Grundke

2.    Documents responsive to discovery requests previously issued by the PSC.

3.    Explanations of redactions to documents.

4.    A complete response to discovery.

1

This Court is intimately familiar with the facts of this matter. The Court further is aware of the numerous efforts by the PSC to expedite discovery and to obtain relevant and necessary discovery from the Knauf defendants. Specifically, the PSC seeks to obtain on an expedited basis discovery responses to the PSC discovery requests concerning jurisdictional issues. The PSC brings to the Court's attention its prior efforts to obtain Knauf defendants' discovery responses:

1.    September 11, 2009 - the Plaintiffs' Steering Committee filed a Motion for Expedited Discovery 220. (Rec. Doc. 200.)

2.    November 11, 2009 - PSC files a Motion to Compel Discovery from Defendants. (Rec. Doc. 430.)

3.    December 29, 2009 - the PSC files a Motion to Compel Discovery from Defendants and Establish a uniform format of production. (Rec. Doc. 667.)

4.    May 14, 2010 - the PSC transmits a letter to the Court requesting a Scheduling Order for production of all discovery relating to Knauf jurisdictional issues.

5.    June 9, 2010 - the PSC files a Motion challenging the adequacy and completeness of the Discovery Responses of Defendant Knauf Gips and to compel discovery and production of discovery responses from Knauf Gips, Knauf Plasterboard (TIANJIN), Knauf Plasterboard (WUHU), and Knauf Plasterboard, (DONGGUAN) and a complete privilege log concerning jurisdictional and other issues from the Knauf Defendant's. (Rec. Doc. 3656.)

Needless to say the PSC has brought to the Court's attention numerous times the difficulties and issues surrounding discovery and/or inability to obtain satisfactory responses from the Knauf defendant entities. Each of the foregoing filings and Motions are adopted herein by reference.

As stated previously in submissions to the Court[1], the Knauf defendants have made a document dump in response to the Plaintiffs' discovery requests.   Thus far, the various Knauf defendants have produced the following documents:

---

[1]See May 14, 2010 letter.

|  | Production Date | Bates Range |
|---|---|---|
| **GIPS** | 1.4.10 | 0000001-0000032 |
|  | 5.21.10 | 0000033-0000248 |
|  | 6.22.10 | 0000363-0000767 |
|  |  |  |
| **KPT** | 10.15.09 | 000001-002665 |
|  | 1.4.10 | 002666-011232 |
|  | 3.5.10 | 011233-013519 |
|  | 5.21.10 | 013520-025653 |
|  | 7.8.10 | 025654-074160 |
|  |  |  |
| **WUHU** | 10.15.09 | 000001-000005 |
|  | 1.5.10 | 000006-009848 |
|  | 5.21.10 | 009849-018757 |
|  | 7.8.10 | 018762-051188 |
|  |  |  |
| **DONGGUAN** | 7.8.10 | 0000001-0003753 |

The volume of documents produced by Knauf Plasterboard (Tianjin), Knauf Plasterboard (Wuhu), and Knauf Plasterboard (Dongguan) is voluminous.  Volume alone, however, does not satisfy the parties' obligations.  Notably absent from the production was any effort on the Knauf defendants' part to identify those documents they produced that are responsive to the specific October 30, 2009 jurisdictional discovery request.  Fed.R.Civ.P. 34 (b)(2)(E)(i) states that "a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the requests."  This issue was previously addressed in the letter sent to the Court on May 14, 2010.  The issue was further addressed in the Scheduling Order for Jurisdictional Discovery (Rec. Doc. 4440) entered on July 16, 2010.  Despite this, the Knauf defendants have taken the position that merely providing an index listing bates numbers to custodian

3

files is sufficient to meet its burden under Rule 34(b)(2)(E)(i). The Knauf defendant entities cannot be allowed to intermix documents responsive to jurisdictional discovery and merits discovery into one document dump and force the Plaintiffs to engage in a "search and find" or "pick-up sticks." This is not a game.  The document dump by the Knauf defendants includes approximately 130,000 pages of documents.   Without knowing which documents are responsive to each parties' jurisdictional discovery request leaves, the PSC with a despicable dump of documents designed to make plaintiffs guess at their purpose of production.

Many of the documents produced are completely irrelevant to both jurisdictional and general merits discovery requests.  This places even greater burdens on the PSC to review more documents in the dump.  Just one example is the approximate 1,000 pages of material produced in bates range KPT0026664-KPT0027653 which contain  documents, written in Chinese and have nothing to do with this case. The PSC spent substantial hours translating these documents and many other foreign documents produced only to find that the majority of the documents have no relationship nor are they responsive to the discovery requests.[2]  In essence Knauf has said to the PSC that the PSC should speculate as to the location of the documents among the defendants massive files.  Plaintiffs cannot verify for themselves this information as only the defendants can.  Given the impossibility of such a task of  hunting through the documents "amounts to nothing more than a gigantic 'do it yourself kit'." *See e.g. Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 77 (D. Mass. 1976).  This type of production cannot occur when the Court has placed this docket on such a fast paced mode with trials being set and jurisdictional alter ego motions to be heard in just a few months.  Further, this wholly

---

[2]     Many are irrelevant documents buried within the Knauf document dump. (See also, for example, those found at bates range KPT0027783-KPT0027787, Exhibit "A" attached hereto).

inadequate production has greatly prejudiced the PSC's ability to conduct effective depositions of Knauf witnesses concerning jurisdictional issues.

Following the last monthly status conference with the Court and a telephone conference with the Court relating to the PSC's effort to reach agreement with Knauf for a scheduling order regarding jurisdictional discovery, numerous meet and confers have taken place. The PSC addresses the following issues relating solely to jurisdictional discovery which require the Court's attention at the present time:

1. The Knauf defendants did not communicate with the PSC or solicit the PSC's input regarding individual custodian files and search terms to be searched and important items were not included. As a result, Knauf should immediately produce documents relating to individuals that are in the care, custody and control of Knauf Gips, as well as produce certain individuals for discovery.

2. The Knauf defendants produced many "partially" and "fully" redacted documents but provided no explanation or basis for the redactions.

3. Knauf has delayed and the delay must stop. NOW!

## ARGUMENT

1. **The Knauf defendants did not communicate with the PSC or solicit the PSC's input regarding individual custodian files and search terms to be searched and important items were not included. As a result, Knauf should immediately produce documents relating to individuals that are in the care, custody and control of Knauf Gips, as well as produce certain individuals for discovery.**

On July 1, 2010, the PSC communicated with Knauf and advised that the search terms Knauf Gips used for jurisdictional discovery had not been agreed to and were unilaterally undertaken by Knauf without any input or consultation with the PSC. Furthermore, the PSC advised that only two years of the agreed upon time frame for production had been provided by Knauf. On July 5, 2010,

Knauf agreed with this statement.[3]   (See Exhibit "B" attached hereto.)   Furthermore, the PSC

identified five (5) individuals who it desired to depose and receive documents on a priority basis.

These included :

    1.    Isabel Knauf
    2.    Hans Hummel
    3.    Mark Norris
    4.    Tony Robson
    5.    Martin Grundke

The PSC requested these witnesses' depositions "as soon as possible" and asked Knauf to advise

regarding their availability, as well as when their documents would be produced.  Thus far, Knauf

has refused to provide dates when the individuals can be deposed and the documents from these

individuals have not been provided.  Specifically, on July 21, 2010, Knauf advised (see Exhibit "C"

attached hereto) that it will be "searching for the first time pursuant to plaintiffs' July 1 request" the

files of Martin Grundke, and that it will not be searching the files of Tony Robson since Knauf

Insulation (his purported employer) is not a defendant in the MDL.  Knauf also advised that it will

not be searching the custodial file of Isabel Knauf, as well as other individuals for whom the PSC

requested documents be produced.  (Specifically, the PSC also asked for documents from Thies

Knauf and Barry Topple.)  The PSC requests that the Court order Knauf to produce complete

documents responsive to the discovery requests and to immediately require Knauf to produce for

deposition and the custodial files for the five (5) Knauf individuals requested on a expedited basis.

    Fed.R.Civ.P. 34(a) sets forth the process that governs document production in discovery. It

provides: "Any party may serve on any other party a request (1) to produce and permit the party

_____

[3]        To date, the Knauf defendant entities have not made a complete production for the
entire time frame 2000 to date, and even after an agreement that the PSC would first accept 2005
to date, with a full reservation of rights, Knauf has only produced two years of those documents.

making the request, or someone acting on the requestor's behalf, to inspect and copy, an designated documents, ... or to inspect and copy, test or sample any tangible things which constitute or contain matters within the scope fo Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served ..." The Rule makes a clear distinction between the terms "possession," "custody" and "control" in determining whether or not a party exercises "control". Courts ask whether a party has a legal right to obtain the documents requested upon demand; actual physical possession is not required.

On July 1, 2010, a press release and ruling in case C-407-08P, *Knauf Gips KG v. Commission* in the Court of Justice of the European Union, was rendered in connection with fines totally €478 million for the undertakings of Lafarge, Giproc, BPB and Knauf Gips KG for their anti-competitive conduct on the plasterboard market. (See Exhibit "D" attached hereto.) The European Court of Justice is the highest court in the European Union in matters of European Union Law and is tasked with interpreting EU Law. (See http://en.wikipedia.org/wiki/European_Court_of_Justice.) The Court noted that "The Knauf Group is composed, in particular, of Knauf Gips KG and Gebruder Knauf Verwaltungsgesellschaft KG ('GKV') which owns, directly or indirectly, ten or a dozen companies which operate on the plasterboard market." The Court, after analyzing all the evidence concluded "**that the companies belonging to Knauf family constitute an economic unit**" and decided that "**the Commission made no error of assessment in holding the Knauf Gips KG should be considered to be responsible for all the activities in the Knauf Group**." (See Exhibit "E" attached hereto.) This finding makes it abundantly clear that Knauf Gips <u>controls</u> all of the Knauf entities and is sufficient authority for this Court to order Knauf to make the documents and individuals available to the PSC.

Knauf Gips, KG has asserted that the Hague convention should be applicable and that this MDL Court does not have the authority to allow discovery to proceed under the Federal Rules of Civil Procedure. On October 27, 2009 the Court issued an Order and Reasons [Rec. Doc. 404] denying Knauf Gips KG's Motion for Protective Order to Require Use of the Hague Evidence Convention and ordered that the Federal Rules, and not the Hague Convention, apply to the discovery of Knauf in the instant matter. The other Knauf defendant entities, Knauf Plasterboard (Tianjin) Co, LTD, Knauf Plasterboard (Wuhu) Co, Ltd and Knauf Plasterboard (Dongguan) Co, LTD have all made an appearance in the MDL and are parties to the litigation[4]. Furthermore, despite Knauf's position that Knauf Insulation is not a party in the MDL, a review of the Court's record reveals that Knauf Insulation was named as a defendant in the MDL and was served in the *Gross v. Knauf Gips, et al*, Case No. 2:09-cv-06690 (E.D. La.), and the *Mary Anne Benes v. Knauf Gips, et al*, Omnibus Complaint in Intervention (III), Case No. 2:09-cv-06690 (E.D. La.) cases.

The discovery issued by the Plaintiff Steering Committee on October 30, 2009 concerning jurisdictional issues was addressed to all of the aforementioned Knauf defendants, namely Knauf Gips, KG, Knauf Plasterboard (Tianjin) Co, LTD, Knauf Plasterboard (Wuhu) Co, LTD and Knauf Plasterboard (Dongguan) Co, LTD. The Knauf defendants cannot be allowed to shield crucial documents from discovery merely by storing them in an affiliate abroad. *See, e.g., Cooper Industries, Inc. V. British Aerospace, Inc.*, 102 F.R.D. 918 (S.D.N.Y. 1984).

The Knauf defendant entities began producing documents to the PSC but refused to meet and confer with the PSC to address an appropriate protocol. The PSC attempted to address these issues

---

[4] Knauf Gips has also been served but continues to assert a jurisdictional defense.

8

with Knauf but was rebuffed even after the filing of motions[5]. Not until mid July 2010, after the Scheduling Order for Jurisdictional Discovery was in place, did the Knauf defendant entities even share with the PSC the search terms and custodian files that Knauf unilaterally chose to use in its attempts to respond to the jurisdictional discovery (See July 25, 2010 e-mail attached as Exhibit "F"). Promptly thereafter, the PSC provided suggested search terms that Knauf had not considered and reiterated that it had provided names of individuals that the PSC considered relevant to this litigation. As early as June 25, 2010, even before the entry of the Scheduling Order on Jurisdictional Discovery, the PSC forwarded to Knauf a listing of various names that the PSC believed were relevant and important to the jurisdictional discovery (See Exhibit "G" attached hereto). Despite Knauf's delays in providing search terms and working with the PSC, the PSC has communicated with Knauf on a timely basis and suggested additional search terms that ultimately were agreed upon on July 13, 2010 (see Exhibit "F" attached hereto). Knauf's refusal to cooperate with the PSC early on in the discovery process should not be grounds for allowing the Knauf defendant entities additional delays.

There should be no doubt as to Knauf Gips KG's control as the parent company to its various subsidiaries. Common sense dictates that the information sought by the PSC is in the care, custody and control of defendants who are named parties before this Court and that the information requested by the PSC specifically as to the 5 individuals identified in the June 25, 2010 email should be produced immediately. This is certainly in line with the European Union Court of Justice decision.

---

[5] See motions filed September 11, 2009, November 11, 2009 and December 29, 2009.

A party is generally considered to have "control" over documents under Rule 34(a) if it can likely obtain such documents upon demand. Under the Rule 34(a) control analysis employed in *Afros S.P.A. v. Krauss-Maffei Corp.,* 113 F.R.D. 127, 129 (D.Del.1986), and its progeny, a sufficiently close corporate relationship exists between a domestic subsidiary and a foreign parent to compel the former to produce documents held by the latter if their degree of interrelation is evidenced by (1) adequate ownership share in the subsidiary by the parent; (2) interlocking management structures; (3) sufficient control exercised by the foreign parent over the subsidiary's directors, officers, and employees; and/or (4) a "connection to the transaction" at issue.

A motion for the production of documents is entitled to broad and liberal treatment. *See, e.g. M.L.C., Inc. v. North American Philips Corp.,* 109 F.R.D. 134 (S.D.N.Y. 1986). Documents need not be in a party's possession to be discoverable; they need only be in the party's custody or control (it is well settled that a party need not have actual possession of documents to be deemed in control of them). Control includes the legal right of the producing party to obtain documents from another source upon demand. A party may be ordered to produce documents where that party has the legal right to obtain the documents, even though that party retains no copy, and regardless of whether the documents are beyond the jurisdiction of the court. *See, e.g. M.L.C., Inc. V. North American Philips Corp.,* 109 F.R.D. 134 (S.D.N.Y. 1986). The issue is whether the Knauf defendant entities have the requisite degree of control over the documents sought. *See, e.g., Afros S.P.A. v. Krauss-Maffei Corp.,* 113 F.R.D. 127, 129 (D.Del.1986); *In re Uranium Antitrust Litigation,* 480 F.Supp. 1138, 1145-53 (N.D.Ill.1979). Somebody within the Knauf family group of entities has "control" over the documents.

In deciding whether a subsidiary has "control" over documents held by its parent corporation courts focus on the closeness of the relationship between the entities. If the requisite degree of closeness is found production of the documents even if in the possession of foreign parent or affiliates, irrespective of whether they are subject to personal jurisdiction of the Court is required. *See, e.g., Flavel v. Svedala Industries, Inc.*, 63 Fair Empl.Prac.Cas. (BNA) 1199, 64 Empl. Prac. Dec. P 43,027 (E.D. Wis. 1993); *Cooper Inds., Inc. V. British Aerospace, Inc.,* 102 F.R.D. 918, 919 (S.D.N.Y.1984); *Johnson v. Cloos Int'l. Inc.* 1990 WL 106560, at *1-2 (N.D.Ill.1990); *In re Uranium Antitrust Litigation,* 480 F.Supp. at 1145-53.

If a party "can obtain the information from sources under its control, it may not avoid answering by alleging ignorance." *See, e.g., Ferber v. Sharp Electronics Corp.,* 40 Fed.R.Serv.2d 950 (S.D.N.Y. 1984). Furthermore, a party may be required to produce documents even if they belong to a third person who is not a party to the action and even though the documents and things are themselves beyond the jurisdiction of the Court. *See, e.g. Japan Halon Co. Ltd. v. Great Lakes Chemical Corp.,* 155 F.R.D. 626 (N.D. Ind.1993).

In the instant matter, the parties are before the Court and, therefore, must respond to the PSC's discovery requests.

Analyzing documents produced thus far and reviewing each of the 4 criteria as set forth in the test for "control" the PSC states as follows:

1.    <u>Adequate ownership share in the subsidiary by the parent.</u>

The documents produced thus far support the July 1, 2010 European Union Court of Justice

Opinion holding that the companies belonging to Knauf family constitute an economic unit. According to a Knauf brochure relating to "The Knauf Group":

> Knauf was founded in 1939 by the brothers Karl and Alfons N. Knauf. Today their sons, managing partners Nikolaus and Baldwin Knauf, steer the success of the corporation's numerous enterprises in close coordination with the other family members. (See Exhibit "H" attached hereto, Bates Number KPT0025748.)

The brochure identifies Knauf as a family name and a corporate group of global dimensions.

In an e-mail dated October 16, 2005 enclosing a memo on the "Knauf Restructure", discussion concerning the Knauf "family enterprises" takes place and an acknowledgment that the enterprises are "subordinated to partners and partially managed" supports the European Union Opinion. Knauf is referenced as a "single company in a country as well as in different countries in a large economy region" and confirms that Knauf is "managed...by two partners, who rotate yearly as company speaker..." referencing Nikolas Knauf and Baldwin Knauf. (See Exhibit "I" attached hereto, Bates Number WUHU014089.) Furthermore, this acknowledgment of a family company or one single company/economic unit is further confirmed by David Gregory in his Resume where he acknowledges that "the Knauf Group is the third largest plasterboard producer in the world and remains a private family company." (See Exhibit "J" attached hereto, Bates Number WUHU15918.)

    2.    Interlocking management structures.

The interlocking management structure was addressed in the European Union Opinion. Once again, the documents produced thus far support the position that the various Knauf enterprises have interlocking management structures. These interlocking relationships range from banking, to divisions within the organization and other centralized management features. A few examples are as follows:

12

(a)     According to Martin Stuermer, there were a number of questions concerning the Knauf bank situation of the Chinese companies. Apparently, "no company shows bank loans, Knauf used back to back financing, i.e. Wuhu makes a deposit with a bank to secure a loan given to a sister company" and there are "intercompany loans paid back at year end." Further, financing for projects in Europe is done by collecting "money from our subsidiaries all over the world". (See Exhibit "K" attached hereto, Bates Number KNAUFGIPS0000363.)

(b)     According to Tony Robson, in an e-mail to multiple Knauf employees, "overall responsibility for our [Knauf Gypsum] activities in Asia" transferred to Isabel Knauf who assumed control of the Asia region. Once again, Baldwin Knauf is involved in such activities.   (See Exhibit "L" attached hereto, Bates Number KNAUFGIPS0000655.)

3.     Sufficient control exercised by the foreign parent over the subsidiary's directors, officers, and employees.

Once again the documents produced thus far support the European Union Opinion that Knauf Gips is the controlling parent company. Some examples include:

(a)     Shareholder resolutions to change directors for the Indonesia entity were sent to Baldwin Knauf (BK) for signature by Isabel Knauf. Further, Isabel Knauf is directly involved in setting up boards and other Knaufs are appointed managing directors. (See Exhibit "M" attached hereto, Bates Number WUHU015550.)

(b)     Financial forecast for the Knauf Group are requested and obtained by the parent Knauf Gips entity in a format directed by Knauf Gips (see Exhibit "N" attached hereto, Bates Number WUHU015595), as well as for shareholder meetings. (See Exhibit "O" attached hereto, Bates Number WUHU015647.)

(c)     Regular reports regarding ongoing activities throughout the Knauf organization are reported routinely to Baldwin Knauf. (See Exhibit "P" attached hereto, Bates Number WUHU015752.)

(d)     Standardized quality control is implemented throughout the Knauf enterprise. (See Exhibit "Q" attached hereto, Bates Number KNAUFGIPS0000571 and KPT0023972).

4.     A connection to the transaction at issue.

It cannot be disputed that Knauf Gips was directly involved in the "smelly" Chinese drywall problem. Just a few examples include:

13

(a)    In October, 2006 when Florida homeowners raised issues concerning smelly Chinese drywall, the issue was brought to the attention of Knauf. Knauf's response was that professor Hans Hummell would handle the matter. Professor Hummell, on his business card, identifies himself as an employee of Knauf Gips KG (see Exhibit "R"). He also advises that he is "working for Knauf in Germany as head of R & D and recommended that analysis be performed when he visits homes in Florida (see email of November 7, 2006, Banner-MDL00007335, Exhibit "S").

(b)    According to trial testimony in the *Seifart v. Knauf Gips KG*, Case No. 09-38887 in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Mickey Coblentz, the Banner representative testified that he met with professor Hummel who said that he worked for the Knauf German company and was investigating for the Knauf companies. He also confirmed that samples of the defective drywall were sent to Germany for sampling. (See Trial transcript p.1464-1469, Exhibit "T").

(c)    Salomon H. Abadi testified in his deposition taken October 19, 2009 that Hans Ulrich Hummell, the Knauf representative, from Knauf Gips KG of Germany was sent to meet with him to investigate Banner problems with smelly drywall. Substantial testing was done under Dr. Hummel's supervision and as far as he understood Dr. Hummel was in charge of the Knauf Tianjin factory. During the visit, Dr. Hummel received calls from Mr. Knauf on a daily basis to get an update as to "what was going on" and there were regular conference calls with Mr. Knauf in Germany who was "the orchestra director." In addition, other representatives of Knauf came to Florida to investigate the smelly drywall problem including Mark Norris, an Australian, and Don from Chicago. Finally, Mr. Abadi testified that it was routine for different Knauf production facilities elsewhere in the world to provide drywall if the Knauf Tianjin facility could not supply drywall timely. In essence, it did not matter whether drywall was purchased from Knauf Tianjin, Knauf Gips, Knauf Indonesia, Knauf Brazil or others because he "believe[d] them to be all interrelated.

(d)    Germany was slow in reacting to requests by Mark Norris with respect to the complaints concerning Knauf drywall. (See Exhibit "U" attached hereto, Bates Number KPT0024157.) However, Dr. Hummel certainly was involved and was familiar with other Knauf Insulation problems, including lawsuits in the U.S. and as a result became directly involved in addressing the smelly drywall problem for Knauf. (See Exhibit "V" attached hereto, Bates Number KPT0024285; and Exhibit "W" attached hereto, Bates Number KPT0024323.)

(e)    Dr. Hummel works for Knauf in Germany heading up their R & D and made specific recommendations concerning the problem. (See Exhibit "X" attached hereto, Bates Number KPT0024367; and Exhibit "Y" attached hereto, Bates Number KNAUFGIPS0000503.)

It is essential that the Knauf entities produce relevant discovery for individuals that they

"control" and that a complete production of all Knauf documents requested be forthcoming to the

14

PSC.  It is irrelevant whether the individuals identified in the June 25, 2010 e-mail and subsequent e-mails requesting discovery by the PSC are employed by Knauf Gips, KPT, Wuhu or Dongguan since the Federal Rules require that the Knauf defendant entities undertake a search and make a production of any such documents relating to these identified individuals that are in the possession, custody or control of the party to whom the request has been served and that the individuals identified by the PSC for initial depositions be made available immediately.[6]  Presumably, Knauf Gips has total control over each potential witness and their related documents.  Accordingly, production is essential.

2.      **The Knauf defendants produced many "partially" and "fully" redacted documents but provided no explanation or basis for the redactions.**

Of the documents produced to date from the various Knauf entities, many include fully redacted documents with no explanation for the redactions.  Some examples of these fully redacted documents include the following:

- KPT 0025910 - 0025913          - KPT 0025915 - 0025918

- KPT 0025920 - 0025923          - KPT 0025923

- KPT 0026140 - 0026144          - KPT 0026215 - 0026218

- KPT 0026226                          - KPT 0026310

- KPT 0026335 - 0026338          - KPT 0026436 - 0026442

- KPT 0026503 - 0026506          - KPT 0026551 - 0026554

- KPT 0027295 - 0027298          - KPT 0027629 - 0027631

- KPT 0027809 - 0027813          - KPT 0027951 - 0027953

- KPT 0028618 - 0028619

Moreover, because these documents contain no explanation for the redaction, the PSC is unable to

---

[6] Counsel for Knauf agreed to accept service of a deposition notice on behalf of Knauf employees without the need for formal service of subpoena (see Exhibit "B" attached hereto).

determine what, if any, relevance can be attributed to them. As such, the PSC requests an order directing the Knauf entities to immediately produce these documents without their redactions, and/or provide a detailed explanation as to why each of these documents have been redacted in full. Alternatively, the PSC requests that there be a negative presumption attached to each fully redacted document for which no explanation of the redaction has been provided.

**3.    Knauf has delayed and the delay must stop.  NOW!**

The plaintiffs issued discovery requests to the Knauf defendant entities in October 2009. Ten months have gone by and not until this year have documents been produced. The production has been delayed due to dilatory tactics by Knauf and Knauf's refusal to cooperate with the PSC. As an example, not until July 30, 2010 did Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., and Guangdong Knauf New Building Material Products Co., Ltd., provide responses to the jurisdictional discovery, despite multiple repeated requests by the PSC. Amazingly enough in the Knauf Plasterboard (Tianjin) Co., Ltd. responses, in the Objection and Answer to Interrogatory No. 16, which request basic information about communications with persons within the United States regarding the manufacture, sale, promotion, solicitation, warranty or performance of Chinese drywall, Knauf KPT responded, after objecting that "Non-privilege documents reflecting communications between KPT and persons in the United States that are responsive will be produced in response to this Interrogatory." (See Exhibit "Z" attached hereto.) This response is amazing! The delay must stop NOW! The Court issued its Scheduling Order [Rec. Doc. 4440] on July 16, 2010, and scheduled Rule 30(b)(6) depositions of Knauf Gips to occur on August 18 and 19 and September 20 and 21, 2010. Certainly this information requested relating to persons within the United States regarding Chinese drywall should have been produced already and the PSC should not have to wait

16

for the "gold nuggets" at the end of production. The delay must stop and the Knauf defendant entities must be ordered to make timely productions of discovery.

## CONCLUSION

The tactics by the Knauf defendants in this case have the distinct odor of an effort to prolong the discovery disputes so as to undermine an ultimate hearing on jurisdictional issues in this case. The Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.*, and the scheduling order issued by this Court places heavy burdens on the parties in this case and the judiciary should not tolerate efforts to improperly undermine same. *See, e.g. Japan Halon Co. Ltd. v. Great Lakes Chemical Corp.,* 155 F.R.D. 626 (N.D. Ind. 1993). Knauf must be ordered to produce the five (5) individuals immediately for depositions and for each of those deponents, produce all documents relating to the individuals identified by the PSC, in advance. Knauf should also provide full explanations regarding any redactions, and further promptly provide discovery responses relating to jurisdictional discovery. Knauf should be sanctioned for its dilatory actions.

Respectfully submitted,

Dated: August 3, 2010

/s/ Leonard A. Davis
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

17

Arnold Levin, Esquire
Fred S. Longer, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

18

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 3rd day of August, 2010.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com

21