UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2047 |
| | SECTION: L |
| This Document Relates to: | |
| | Judge Fallon |
| Payton, et al. v Knauf Gips, KG, et al. No. 09-7628 | Mag. Judge Wilkinson |
| Rogers, et al. v. Knauf Gips, KG, et al. Not. 10-362 | |
| _____/ | |

## HOMEBUILDERS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION RESTRICTING COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS

The Homebuilders' Steering Committee ("HSC"), opposes the Plaintiffs' Steering Committee's ("PSC") Motion Restricting Communications with Putative Class, and their supporting memorandum ("PSC's Motion") for the reasons set forth below.

**I.    Introduction**

For the second time in this litigation, the PSC has filed a baseless motion seeking to restrict homebuilders from engaging in settlement talks with other parties. In their first motion, without having any factual basis, the PSC sought to prevent homebuilders from entering into agreements to repair their homeowners' homes. The Court denied the relief sought in the PSC's first motion by order dated September 24, 2009 (while requiring language notifying homeowners of the MDL case) . [D.E. 278]

Now, again with no factual basis, the PSC seeks to prevent homebuilders from settling with one of the manufacturers (Knauf) of the defective drywall at issue in these cases. The ostensible, and patently unfounded, basis for their motion is that the homebuilders are somehow "improperly" communicating with homeowners by engaging in settlement talks with Knauf.

1

15681885.1

However, nowhere in the PSC's motion or brief is there a single piece of evidence that any homebuilder has communicated with any homeowner in connection with any settlement discussions with Knauf, much less any evidence of "improper" communications. Indeed, at no point in their motion or brief does the PSC explain how they arrived at the notion that homebuilders would be communicating with homeowners in seeking reimbursement from Knauf for the considerable costs these homebuilders are incurring in repairing these homeowners' homes and relocating these homeowners during the period of repair. To the contrary, communicating with homeowners is not necessary in this context.

Moreover, even if homebuilder-homeowner communications had occurred in this context, unless the PSC has evidence that those communications ran afoul of the Court's September 24, 2009 order, there is no basis for the motion. Yet, in their brief, the PSC never even mentions the Court's prior order, much less presents evidence that any homebuilder has violated it.

Thus, the entire factual premise of the PSC's motion is missing. In addition, the thrust of the motion is troubling. When one considers the PSC's prior motion in combination with the instant motion, it seems that the PSC does not want putative class members' homes to be repaired, and does not want homebuilders--the only ones who have stepped up to the plate and actually repaired homes--to have any avenue available to recover some portion of their costs expended in doing so. None of this is factually or legally grounded, nor does it appear to be in the interest of homeowners. The PSC's motion should be denied.

## II.   Factual Background

While the facts relating to the individual homebuilders vary somewhat, typically, beginning in 2009, the larger homebuilders notified homeowners of the media reports and

offered to inspect their homes. In some instances, homeowners contacted the homebuilders first. Many homeowners corresponded with the homebuilders through legal counsel. Most homeowners accepted the homebuilders' offer of an inspection.

During the course of the inspections, the homebuilders learned that subcontractors had installed defective Chinese-manufactured drywall in some of their homes. In those instances, the homebuilders offered to pay for temporary relocation expenses, to replace the defective Chinese-manufactured drywall with non-defective domestic drywall, to conduct extensive additional repairs, and in some instances, to warrant the work and to compensate the homeowners for incidental costs. In exchange, the homebuilders requested from homeowners an assignment and a release **for property damage claims only**.

No large homebuilder in the MDL requested a release of personal injury claims. The homebuilders in the MDL made repairs without any monetary contribution from homeowners or others despite the enormous costs involved (although Beazer apparently has now received a settlement payment from Knauf). Some smaller homebuilders have now been added to the MDL who simply do not have sufficient assets to make the repairs.

The plaintiffs' lawyers in at least two putative drywall class actions filed motions virtually identical to the PSC's Motion in federal courts in Florida and Ohio. Both federal courts denied those motions based on *Gulf Oil* and its progeny. The motion, the hearing transcript, and the court's order in *Kristin Culliton v. Taylor Morrison Services, inc., et al.,* U.S. Dist. Court, Middle Dist. of Florida, Case No. 09-cv-00589-JDW-TGW (MDL Case No. 09-4114) was previously filed in opposition to the PSC's original motion to prohibit settlement communications between homebuilders and homeowners. The motion, the hearing transcript,

and the court's order in *Steven Minafri v. M/I Homes, Inc., et al.*, U.S. Dist. Court, Southern Dist. of Ohio, Case No. 2:09-cv-167 (MDL Case No. 09-4120) was also filed.

Thereafter, the PSC filed an almost identical motion in this MDL proceeding seeking to restrict the homebuilders from discussing settlements with homeowners. During the hearing on September 24, 2009, this Court held:

> I look to the *Gulf Oil* case. In *Gulf Oil v. Bernard*, the United States Supreme Court indicated that the order limiting communication should be based on a clear record and specific findings, weighing the need for restrictions against the interference with the parties' first amendment rights.
>
> I have a small record before me. I have all of the releases given to me by the plaintiffs and also some affidavits given to me by defendants of individuals who have signed the releases. The releases that I have looked at, all but perhaps three specifically say that personal injury claims are excluded. The three don't specifically that, but they dwell on only property damage.
>
> A review of the material indicates that at the present time there's no clear record demonstrating misleading information or coercive or abusive communication. Also, I note that under 558, the builders have a right and perhaps even a duty to seek and to remedy the conditions caused by their installation of the defective Chinese drywall.
>
> At the present time, I have no record of showing that there's any abuses. As I read the law, that's what's necessary. I'm going to deny the motion, but I do also advise the parties that I expect them to tell the clients that the parties who have signed the releases have a right to counsel before they sign the releases. Henceforth, I also want you to advise them of the MDL proceeding and give them the Court's website to that particular proceeding. I also mention to the parties that this does not mean that they can't move on specific releases to set aside the releases, for various reasons, if they have good reason."

9/24/09 Hearing Transcript at p. 15 (3-25) to p. 16 (1-7)

The PSC never followed up with any motion directed to a specific home or specific release and nearly a year has passed. The current motion by the PSC is even more far reaching, as it extends to settlement discussions to which the PSC and the homeowners are not even parties.

4

### III. Legal Argument

The PSC argues, and the HSC agrees, that the Court has "broad discretionary powers…to supervise communications [by defense counsel] with class members." *See PSC's Motion, citing Fed. R. Civ. P. 23(d)*. It is uncontradicted, however, that the homebuilders' customers are not "class members" because no class has been certified in this MDL or in any case transferred to it. The PSC also ignores the First Amendment limitations that circumscribe the Court's "broad discretionary powers" in this context. Contrary to the PSC's argument, federal courts generally hold that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive, and that this outweighs the infringement of the parties' right to communicate with non-parties. *See Section III.A. below*. Indeed, as demonstrated in section III.C. below, cases on which the PSC relies emphasize courts' limited authority to restrict parties' rights to communicate with putative class members.

### A.   The Homebuilders are legally permitted to communicate with Knauf or homeowners to negotiate settlements prior to certification of a class, so long as their communications are not misleading or coercive

The starting point for this analysis is the Supreme Court's decision in *Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981). In *Gulf Oil*, the Court struck down a district court order prohibiting communications between the plaintiffs' counsel in an uncertified class action and putative class members. The Supreme Court found that "the order was an abuse of discretion," explaining:

> [A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited…. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order….[T]he order involved serious restrains on expression. This fact, at minimum, counsels caution on a part of a district court in

5

> drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses.

452 U.S. at 100, 103-04. Although the Court recognized that parties' communications with putative class members might result in abuses in some circumstances, it held that "the mere possibility of abuses does not justify routine adoption of a communications ban." *Id.* at 104. A court may enter "a carefully drawn order that limits speech as little as possible" but it can do so only on the basis of a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101-02.

After *Gulf Oil*, the federal courts have generally agreed that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive and that this outweighs the infringement of the parties' right to communicate with non-parties. For example, in *Payne v. Goodyear Tire & Rubber Co.,* 207 F.R.D. 16 (D. Mass. 2002), homeowners brought a putative class action case against the manufacturer of allegedly defective floor heating hoses. The homeowners moved to prevent the manufacturer from communicating with putative class members and inspecting homes. The court denied the request and refused to order the manufacturer to modify its website. It explained: "Considering all of the evidence put forth by the plaintiffs, an order barring ex parte communication with absent plaintiffs is not justified by the record currently before the court." *Id.* at 20. "What remains on Goodyear's website regarding Entran II hose is, in essence, the company's opinion on the hose's functionality." *Id.*

Even cases predating *Gulf Oil* generally allowed communications to "putative" class members. In *Weight Watchers of Philadelphia, Inc., v. Weight Watchers International, Inc.,* 455 F.2d 770 (2d Cir. 1972), a franchisee brought a class action alleging antitrust violations. The chairman of the defendant's board of directors sent a letter to all putative class member

6

franchisees stating, among other things, that the lawsuit would have a detrimental affect on the image of the parent company. The plaintiff moved to preclude the defendant from communicating with any potential member of the class and attempting to settle the claims of potential class members. The court held:

> Indeed, we are unable to perceive any legal theory that would endow a plaintiff who has brought what would have been a "spurious" class action under former Rule 23 with a right to prevent negotiation of settlements between the defendant and other potential members of the class who are of the mind to do this; it is only the settlement of the class action itself without court approval that Fed.R.Civ.P. 23(e) prohibits.

*Id.* at 773.

The *Weight Watchers* court further held that "even if defendant should succeed in settling with so many franchisees that the court will be forced to deny class action status, plaintiff's complaint will remain untouched." *Id.* at 775. Similarly, here, the named plaintiffs' claims will not be impacted by settlements that may be reached between homebuilders and Knauf.

As stated in the current version of the Manual for Complex Litigation: "Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Manual for Complex Litigation (4th Ed.), §21.12 - Precertification Communications with the Proposed Class.* The Manual adds that "[m]ost judges are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." *Id.*

This Court made a similar ruling in *Patrick Turner v. Murphy Oil*, Civil Action No. 05-4206, U.S. Dist. Court, Eastern Dist. of Louisiana, when it denied the plaintiffs' motion to

preclude *ex parte* communications between Murphy Oil and putative class members, and required that such issues be raised on a case by case basis. *See October 4, 2005, Minute Entry.*

The PSC must make an evidentiary showing of two kinds of proof. First, it must show that a particular form of communication has occurred or is threatened to occur. Second, the PSC must show that the particular form of communication at issue is abusive and that it threatens the proper functioning of the litigation. *Cox Nuclear Medicine v. Gold Cup Coffee Svcs., Inc.,* 214 F.R.D. 696, 697-98 (S.D. Ala. 2003). The PSC has provided **no** actual evidence of a single misleading or abusive communication. Evidence that one or more homebuilders have repaired their customers' homes and are now attempting to negotiate with Knauf for reimbursement of their considerable repair, relocation and other associated expenses can hardly be deemed *per se* abusive. "Claims that the defendant merely communicated a settlement offer to a putative plaintiff will not provide the basis for a limitation. Absent any specific evidence that the communication is abusive, a limitation is in appropriate." *The Kay Co. v. Equitable Production Co.,* 246 F.R.D. 260, 263 (S.D.W.Va. 2007) (finding defendant contact with putative class members regarding settlement was not abusive).

The PSC's only "evidence" is a copy of a newspaper article indicating that Knauf is attempting to settle with builders. The article is not admissible evidence and does not show any misleading or abusive communications. Frankly, the article fails to even address the alleged communications **with the plaintiffs** about which the PSC complains.

B. **The Homebuilders' communications with Knauf are not misleading or coercive to the homeowners**

The only materials the PSC filed in support of the PSC's Motion are articles discussing a settlement reached between Knauf and Beazer. There is no evidence that homebuilders are providing misleading or coercive information to their customers. Tellingly, the PSC fails to

8

identify any misleading or coercive information **to the homeowners**. The PSC merely asserts, without evidentiary support, that the homebuilders' failure to advise homeowners of results in two trials is somehow inherently misleading.

The PSC also contends that it has authority to control settlement discussions and opine on the fairness of settlement negotiations between Knauf and the homebuilders. Notably, it cites no authority for this novel proposition. The PSC further fails to explain how the homeowners' claims could possibly be affected by settlement discussions between Knauf and the homebuilders.

The PSC seeks to prohibit future settlement agreements **to which their clients are not even a party**. The PSC also presumptuously seeks to substitute its intentions and desires with regard to the issues presented in this action for homeowners that are not even represented by the PSC (several of whom have their own attorneys). In fact, many of the homeowners who have had contact with the homebuilders, some of whom are represented by counsel in these proceedings, have contacted the homebuilders directly and have expressed a desire to have their homes repaired. Third, many homebuilders are providing a new warranty for the repairs. Thus, if the repairs are insufficient or incorrect, the homeowners have a legal remedy. Fourth, most homebuilders, in response to the homeowners' requests that they repair their homes, have delivered or mailed the applicable agreement to the homeowners and provided them the opportunity to review the agreement and confer with whomever they like, including legal counsel.

In sum, the homebuilders have not made any misleading or coercive communications – regarding the nature and extent of the releases, the repairs offered, or otherwise. And the PSC

has not provided any evidence to the contrary.  Moreover, the homebuilders cannot release the claims of the homeowners by settling with Knauf.

### C.      The PSC's Motion is not supported by law

The PSC's Motion is not supported by federal case law in general or by the cases upon which the PSC relies in particular.  Courts have agreed that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive, and that this outweighs the infringement of the parties' right to communicate with non-parties.   After losing this argument previously, and ignoring the Court's prior ruling on this issue, the PSC now attempts to prohibit negotiations between parties the PSC does not even represent: Knauf and the homebuilders.

Most of the cases the PSC cites address the very different question of whether defense counsel can be prohibited from communicating with parties, *i.e.,* members of a class that has been certified and who therefore are represented by counsel.  *See, e.g., Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), where the court found that it was improper for defendant to conduct a massive telephone campaign to convince members of a certified class "to withdraw from the class" so that the defendant could reduce its potential liability.  The telephone calls violated two previous court orders, but the Court's ruling was based upon the "ethical duty" that "a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter."  *Id*. at 1207.  That rule does not apply here because no class has been certified and the PSC does not represent putative class members, much less the homebuilders or Knauf.

As noted, the PSC is relying on cases that involved communications with actual members of certified classes who were parties to the litigation and thus were represented by class counsel.

10

*See, e.g., Resnick v. American Dental Association*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1984) ("unnamed class members, once the class has been certified, are represented by the class counsel", and therefore "the reasons for the prohibition of a lawyer's direct dealing with an adverse party represented by counsel . . . apply here") (citation and internal punctuation omitted); and *In re Federal Skywalk Cases*, 97 F.R.D. 370, 376 (W.D. Mo. 1983) (finding that communications between defense counsel and class members were improper because "this Court expressly created an attorney-client relationship between the counsel appointed to represent the class and those class members" when it certified the class). Other cases the PSC cites or cited previously that involve post-certification communication with parties include *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032 (E.D. Wash. 1985); *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D. N.Y. 1986); *In re School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986); *Haffer v. Temple University*, 115 F.R.D. 506 (E.D. Pa. 1987); *Erhardt v. Prudential Group, Inc.* 629 F.2d 843 (2d Cir. 1980); *Georgine v. Amchem Products*, 160 F.R.D. 478 (E.D. Pa. 1995); *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005); and *Impervious Paint Industries, Inc. v. Ashland Oil Co.*, 508 F. Supp. 720 (W.D. Ky. 1981).

In addition, most of the cases the PSC cites, including those that address pre-certification communications with putative class members, were decided *before* the Supreme Court changed the rule in *Gulf Oil, supra*, and held that prohibitions on pre-certification communications between parties and putative class members should be ordered with "caution" and must be based upon a clear record showing that the communications are misleading, coercive, or otherwise threaten the fairness of the proceedings, and that this outweighs the resulting infringement of the parties' rights to communicate with non parties. 452 U.S. at 104. Many of these courts

expressly relied upon a previous provision in the Manual for Complex Litigation that had allowed similar prohibitions, before the *Gulf Oil* ruling. At that time, the Manual recommended "that the court at pretrial enter an order 'forbidding unapproved direct or indirect written and oral communications by formal parties or their counsel with potential and actual class members.'" *See Erhardt,* 629 F.2d at 845.

This is precisely the type of blanket prohibition that the Supreme Court struck down in *Gulf Oil*, and the Manual was radically changed after *Gulf Oil*. The Manual now provides that "[d]efendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Manual for Complex Litigation (4th Ed.), § 21.12 - Precertification Communications with the Proposed Class.* The Manual observes that "[m]ost judges are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." *Id.*

Significantly, many of the cases the PSC cites involved communications that occurred after formal class *notice* was approved. Courts are particularly concerned about misleading attempts to influence class members during the "opt-out" period when they must decide whether to exclude themselves from a class. The fact that the communications occurred after class notice was also significant to the courts in *Kleiner,* 751 F.2d at 1201-02; *Georgine,* 160 F.R.D. at 490; *Impervious Paint,* 508 F. Supp. at 723; and *Erhardt,* 629 F.2d at 845.

Most importantly, many courts have expressly recognized that a defendant may properly engage in communications with putative class members, including settlement discussions, before

a class is certified. For example, in *Cada v. Costa Line, Inc.,* 93 F.R.D. 95, 98 (N.D.Ill. 1981), the court held that "[i]ndividual class members who choose to settle (or to litigate or indeed just to forget about) their claims are simply opting out of the class, an opportunity available to them until there has been a class determination under Rule 23(c) and the date specified in the class notice in accordance with Rule 23 (c)(2)(A)..has passed. Rule 23(e) is aimed at a different target. It requires court approval of settlement of the class action itself, not of individual claims."

> D. **Two federal courts and this court have already rejected the PSC's arguments in Chinese Drywall cases that settlement discussions should be prohibited.**

Two federal courts have already denied motions almost identical to the PSC's Motion. In *Kristin Culliton v. Taylor Morrison Services, inc., et al.,* U.S. Dist. Court, Middle Dist. of Florida, Case No. 09-cv-00589-JDW-TGW (MDL Case No. 09-4114), a putative class action, Magistrate Judge Thomas Wilson conducted a hearing on May 12, 2009, on the plaintiff's Motion for Protective Order. There, the plaintiff sought, among other things, to prohibit Taylor Morrison from enforcing the releases, to declare the release and assignments void, to require the homebuilder to distribute a court-approved notice or information sheet, and to require the homebuilder to identify any homes to which repairs and relocation agreements have been sought. Judge Wilson denied all of the above stated relief requested by the plaintiff.[1] During the proceedings, counsel for the Culliton (Mr. Casper) stated as follows:

\*   \*   \*   \*

> MR. CASPER: Well, Your Honor, one side has lawyers. A lot of people on the other side don't. That's not a fair situation.

---

[1] Judge Wilson did require the homebuilder to notify homeowners that they have the right to have an attorney review the release, if they choose to retain one. This insert was included in all future packets provided by the homebuilder.

15681885.1

> THE COURT: Well, why? Why? Because they want their house fixed. If their house gets fixed, then what - - why would they need a lawyer?
>
> MR. CASPER: The way the agreements are written, there's no assurance the house is going to be fixed and put in the condition it would have been absent the defective drywall that was installed. The agreement says they'll put it back - -
>
> THE COURT: Well, then you have the warranty, the old one as well as the new one.
>
> MR. CASPER: The release releases any claims related to the defective Chinese drywall, right in Paragraph 15.
>
> THE COURT: Well, of course. They are taking up that old drywall and putting in new drywall; then you get a year warranty.

*See* Hearing transcript at p. 32-33, attached hereto as Exhibit A.

\*   \*   \*   \*

The court also addressed the plaintiff's contention that the release and assignments were misleading:

\*   \*   \*   \*

> THE COURT: I've read all this stuff. I didn't find it particularly misleading. The only thing I find that's - - that has some persuasiveness is some statement to contact a lawyer, period, not you guys, not the other guys, not anybody, but a statement in their facts that there should be some - - that you may wish to contact a lawyer before you sign this document.
>
> MR. CASPER: **But, Your Honor, why not clearer language on the assignment and release issue as well? I don't think it's clear to a lot of people in reading this that this means you're done; this is all you're going to get.**
>
> THE COURT: No. That's why you contact a lawyer. **I don't think there's anything misleading about that, so I'm not going to say, yeah, you ought to change that. If I'm reading that, I understand what it means. If you don't want to do that, okay, then fine. Then you don't accept their deal.** You get a lawyer; you bring your own lawsuit - - not necessarily yours but their own lawsuit, and they can ask for a class. So I'm not changing that one because I don't see anything wrong with that one. And I don't see anything wrong with the other stuff. I didn't find this a misleading statement at all.

\*   \*   \*   \*

14

*Id at p. 39-40.*

Similarly, in *Steven Minafri v. M/I Homes, Inc., et al.*, U.S. Dist. Court, Southern Dist. of Ohio, Case No. 2:09-cv-167 (MDL Case No. 09-4120), a putative class action, after a hearing, Judge Algenon Marbley denied the plaintiff's motion for temporary restraining order to prevent M/I Homes from contacting homeowners, repairing homes, and settling potential property damage claims.  At the hearing, Judge Marbley ruled that "precertification communications to potential class members by both parties generally are permitted and are also considered to constitute constitutionally-protected speech."  *See Hearing Transcript at p. 45, attached hereto as Exhibit B.*  Importantly, Judge Marbley found "nothing coercive" and "nothing false" about M/I Homes' communication.  *Id*. at 46.  And Judge Marbley found "compelling the fact that the putative class members, should they enter into [the] agreement, would not give up any of their personal injury claims and they can still remain members of the class."  *Id.*  In his order denying the plaintiff's motion, Judge Marbley found "there is no clear record demonstrating misleading information in the Letter or inherently coercive behavior on the part of Defendant M/I Homes."  *See Order denying motion for temporary restraining order, attached hereto as Exhibit B.*  This Court should be persuaded by the decisions in *Culliton* and *Minafri*.

The current motion by the PSC is even broader.  It would prohibit settlement discussions **between Knauf and the homebuilders**.

### E.     Florida Homebuilders have a statutory right to make repairs and settle potential claims

Chapter 558, Florida Statutes, provides the homebuilders the right to make repairs or payment that would result in resolution of potential claims.  Chapter 558 requires claimants to advise a potentially responsible defendant of any construction defect and bars any claims upon acceptable repair or payment.  Section 558.004, Fla. Stat., provides:

15

Notice and opportunity to repair –

(1) " In actions brought alleging a construction defect, the claimant shall, at least 60 days before filing any action, or at least 120 days before filing an action involving an association representing more than 20 parcels, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter. If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted. The notice of claim must describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect, if known.

*   *   *   *

(5) "Within 45 days after receiving the notice of claim, or within 75 days after receipt of a copy of the notice of claim involving an association representing more than 20 parcels, the person who received notice under subsection (1) must serve a written response to the claimant. The response shall be served to the attention of the person who signed the notice of claim, unless otherwise designated in the notice of claim. The written response must provide:

(a)  A written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed repairs necessary to remedy the defect, and a timetable for the completion of such repairs;

(b) A written offer to compromise and settle the claim by monetary payment, that will not obligate the person's insurer, and a timetable for making payment;

(c) A written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payment;"

*   *   *   *

 (8) "…..**If the offeror makes payment or repairs the defect within the agreed time and in the agreed manner, the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer."**

Therefore, the homebuilders are permitted to communicate with both represented and

unrepresented homeowners pursuant to Chapter 558, which is intended to facilitate resolution of

16

15681885.1

claimed construction defects directly between claimants (homeowners) and builders to avoid the expenditure of judicial resources. Larry R. Leiby and Steven B. Lesser, *How to Comply with Chapter 558 Florida Statutes: Current Challenges and Future Changes*, 83 FLA. B.J. 42 (February 2009), provides:

> ….F.S. Ch. 558 requires an owner (claimant) to give notice and an opportunity to cure with respect to a building defect(s). The statute sets forth its purpose as to create "**an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of the property owners**". **In more practical terms, it is intended to allow both claimants and participants to design and construction to resolve alleged defects before both sides run to the courthouse and spend a pile of money on lawyers…**

Nothing in Chapter 558 prevents the homebuilders from requesting a release and assignment. Most of the releases do not release future personal injury claims, and most contain a new warranty for repair work, as well as cash payments for certain items.

### IV.   Conclusion

The Court should deny the PSC's Motion because the homebuilders are free to negotiate with Knauf to resolve any claims the homebuilders may have against Knauf. These negotiations do not involve homeowners, whose claims could not possibly be released by homebuilders. Even if the negotiations did involve homeowners, the homebuilders are permitted by law to communicate with homeowners regarding inspections, repairs, releases and assignments, and otherwise, so long as their communications are not misleading or coercive, and there is no evidence, let alone a clear record, of misleading or coercive communications. This Court should follow its prior ruling and deny the PSC's Motion.

Respectfully submitted,


By: <u>Neal A. Sivyer</u>
    NEAL A. SIVYER
    Fla. Bar No. 373745
    E-mail:  NSivyer@sbwlegal.com
    Sivyer Barlow & Watson, P.A.
    Suntrust Financial Center
    401 E. Jackson Street
    Suite 2225
    Tampa, Florida  33602
    Tel. 813-221-4242
    Fax. 813-227-8598

| | |
|---|---|
| **STONE PIGMAN WALTHER WITTMANN**<br>*Local Lead Counsel of the HSC*<br>*Local Counsel for several homebuilders*<br>546 Carondelet Street<br>New Orleans, LA  70130<br>Telephone: (504) 593-0804<br>Facsimile: (504) 593-0804<br>E-mail: pwittmann@stonepigman.com<br><br>By:   /s/ Phillip A. Wittmann<br>       PHILLIP A. WITTMANN<br>       Louisiana Bar No. 13625 | **GREENBERG TRAURIG, P.A.**<br>*Lead Counsel for the HSC*<br>*Counsel for Lennar Corporation, Lennar Homes, LLC, and U.S. Home Corporation*<br>1221 Brickell Avenue<br>Miami, Florida 33131<br>Telephone: (305) 579-0500<br>Facsimile: (305) 579-0717<br>Email: bassh@gtlaw.com<br><br>By:   /s/ Hilarie Bass<br>       HILARIE BASS<br>       Florida Bar No. 334323 |
| **SIVYER BARLOW & WATSON**<br>*Counsel for Taylor Woodrow Communities at Vasari, LLC and Taylor Morrison Services, Inc.*<br>100 S Ashley Drive, Suite 2150<br>Tampa, FL 33602<br>Telephone: (813) 221-4242<br>Facsimile: (813) 227-8598<br>Email: nsivyer@sbwlegal.com<br><br>By:   /s/ Neal Allen Sivyer<br>       NEAL A. SIVYER<br>       Florida Bar No. 373745 | **KING & SPALDING LLP**<br>*Counsel for Beazer Homes Corp.*<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309<br>Telephone: (404) 572-4600<br>Facsimile: (404) 572-5100<br>Email: kbuster@kslaw.com<br><br>By:   /s/ J Kevin Buster<br>       J. KEVIN BUSTER<br>       Georgia Bar No. 099267 |
| | |

15681885.1

| | |
|---|---|
| **LEIFF CABRASER HEIMANN & BERNSTEIN, LLP**<br>*Counsel for The Mitchell Company, Inc.*<br>Embarcadero Center West<br>275 Battery Street. Suite 3000<br>San Francisco, California 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br>Email: ecabraser@lchb.com<br><br>By:   /s/ Elizabeth J. Cabraser<br>        ELIZABETH J. CABRASER<br>        California Bar No. 83151 | **CUNNINGHAM BOUNDS, LLC**<br>*Counsel for The Mitchell Company, Inc.*<br>Post Office Box 66705<br>Mobile, Alabama  36660<br>Telephone: (251) 471-6191<br>Facsimile:  (251) 479-1031<br>Email: sln@cunninghambounds.com<br><br>By:   /s/ Steven L. Nicholas<br>        STEVEN L. NICHOLAS<br>        Alabama Bar No. ASB-2021-N35S |

## CERTIFICATE OF SERVICE

I HEREBY certify that on August 4, 2010, this document has been served on Plaintiffs' Liaison Counsel, Hugh P. Lambert, Esq., and Russ Herman, Esq., and Defendants' Liaison Counsel, Kerry Miller, Esq., and Homebuilders' Steering Committee Dorothy Wimberly and Richard S. Lewis, Insurer Defendants' Liaison Counsel, Judy Y. Barrasso, Esq. by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No.: 6.

/s/ Neal A. Sivyer

15681885.1