UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * | MDL NO. 2047<br>SECTION: L<br><br>JUDGE FALLON |
| THIS DOCUMENT RELATES TO:<br>*Payton v. Knauf Plasterboard (Tianjin) Co., Ltd., et al.*, Case No. 2:09-cv-6050<br><br>*Rogers v. Knauf Plasterboard (Tianjin) Co., Ltd., et al.*, Case No. 2:10-cv-362 | * * * | MAGISTRATE JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * *

## OPPOSITION TO PSC'S MOTION TO RESTRICT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS

Builder-Defendants, Southern Homes, LLC; Tallow Creek, LLC; and Springhill, LLC (collectively "Southern Homes"), oppose the Plaintiffs' Steering Committee's ("PSC") Motion Restricting Settlement Communications with Putative Class Members ("PSC Motion"). The PSC moves this Court for an order restricting builders' communications with putative class members pursuant to Rule 23 of the Federal Rules of Civil Procedure, but the United States Supreme Court, in *Gulf Oil Co. v. Bernard*, counsels against such a restrictive order under Rule 23.[1] *Gulf Oil* requires that the PSC inform the Court of "a clear record and specific findings that reflect . . . the need for limitation [of speech]."[2] A restriction on Southern Homes' speech would also raise First Amendment protections, as the restricting order would be a prior restraint of speech that may not issue–even in the interest of assuring a fair trial–unless there is "an imminent, not merely a likely, threat to the administration of justice."[3]

The PSC has met neither requirement; and, contrary to the representations of the Motion, the order the PSC seeks is a prophylactic measure against potential abuses that was not favored by the United States Supreme Court in *Gulf Oil* and therefore should be denied.[4]

I.      **INTRODUCTION**

Unilateral communications between defendants and putative class members are not *per se* disfavored, as the PSC Motion implies. Neither Rule 23 of the Federal Rules of Civil Procedure nor

---

[1] 452 U.S. 89 (1981).

[2] *Id.* at 101-102.

[3] *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 466-478 (5th Cir. 1980).

[4] Should this Court find the issuance of a "curative notice" appropriate, which Southern Homes denies, that proposed by the PSC is overly broad, misleading, and should not be adopted by this Court.

2

the Manual for Complex Litigation, Fourth ("the Manual"), blanketly prohibit defendant communications–settlement communications included–with putative class members. On the contrary,

> The majority rule is that, while named plaintiffs are clients of class counsel before certification, absent class members are *not* represented parties. Thus, neither the ethical rules governing communications with represented parties nor the attorney-client privilege are applicable and <u>a defendant may direct non-coercive, non-abusive communications to putative class members.</u>[5]

The Manual also allows for unilateral contacts between defendants and putative class members–even settlement negotiations before class certification.

From the inception of the MDL, this Court has directed the parties and their counsel to the Manual–via pre-trial order and by link from the Court's Chinese Drywall MDL webpage.[6] Section 21.12 of the Manual states, in pertinent part:

> <u>Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certifications,</u> but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certification.[7]

In light of the General Rule and the Manual's approbation of such unilateral communications, the PSC turns to *Gulf Oil* and subsequent cases to attempt to anchor the PSC Motion in law. But

---

[5] JOSEPH M. MCLAUGHLIN, 2 *McLaughlin on Class Actions* § 11:1 (emphasis added); *see also Jenifer v. Del. Solid Waste Authority*, 1999 WL 117762, *3 (D. Del. 1999) (citing *In re Winchell's Donut House*, 1988 WL 135503, *1 (D. Del. 1988)); *Cada v. Costa Line, Inc.*, 93 F.R.D. 95, 98 (N.D. Ill. 1981). The PSC's contention to the contrary is wrong, as it is drawn from a case focused on post-class certification communications. *See* The PSC Motion at 10 (citing *Impervious Paint Ind. v. Ashland Oil*, 508 F. Supp. 720, 722 (W.D. Ky. 1981)). Even the PSC's own jurisprudential "support" states the General Rule. *See, e.g., Jenifer*, 1988 WL at *3.

[6] *See* Pre-Trial Order 1, p.3; *see also* www.laed.uscourts.gov/Drywall/Drywall.

[7] MCL, Fourth, § 21.12 (emphasis added); *see also* FED. R. CIV. P. 23. Although the PSC cited the MCL, Fourth, in the PSC Motion, but they did not cite this particular provision.

3

instead of showing "a clear record of specific findings" of bad conduct by Knauf or homebuilder-defendants –which *Gulf Oil* requires– or inherent coercion between any Defendants and the putative class members–which the PSC's other "supporting" jurisprudence requires–the PSC is content to rest on only two news articles which indicate no more than that Knauf has settled with *a* builder and would like to settle claims with homeowners and other builders: the *News Inferno* report and the CBS report.[8]

On May 3, 2010, News Inferno reported that Knauf Plasterboard Tianjin Co. "has reportedly been offering some builder settlement offers," but did not confirm that any such settlements had been reached or describe any settlement terms.[9] On May 17, 2010, CBS reported that "Knauf Plasterboard Tianjin Co. reached a joint settlement Friday with the Atlanta-based builder Beazer Homes, USA" and further indicated that Knauf "is in confidential settlement talks with 6 to 10 other builders."[10] CBS's source for the May 17, 2010, report was an email from Knauf's own counsel.[11]

Despite the reports' lack of specific bad acts by Knauf or homebuilder-defendants, the PSC Motion relies on them, and them alone, to support bold allegations, such as "Knauf's settlement with home builders will not result in putative class members receiving the scope of remedial work deemed appropriate by this Court in both *Germano* and *Hernandez*."[12]

---

[8] *See* Ex. A and B to the PSC Motion.

[9] *See* Ex. A to the PSC Motion.

[10] *See* Ex. B to the PSC Motion.

[11] *Id.*

[12] *See* PSC Motion at p. 4.

## II. ARGUMENT

The PSC relies on *Gulf Oil* as the jurisprudential foundation for the PSC Motion, but *Gulf Oil* shows that the PSC has not met its burden of proof and that the PSC Motion should be denied. The PSC Motion should also be denied to the extent it requests limits on Southern Homes' ability to communicate with putative class members, as it would be an unconstitutional prior restraint on Southern Homes' speech.

Much of the PSC's secondary jurisprudential "support" is simply inapposite because it relates to defendants with an inherently coercive relationship with putative class members, for example, banks to the bank's borrowers. Much of the PSC's remaining jurisprudential "support" is even further removed from the facts of the instant matter, as they focus on post-class action certification notice.

### A. The Standard for Relief Set in *Gulf Oil* Has Not Been Met.

This Court's authority to restrict the speech of class action parties is not unfettered nor is it even triggered unless this Court receives ***"a specific record showing by the moving party of the particular abuses by which it is threatened."***[13] Unsubstantiated allegations of misconduct, such as those made in *Gulf Oil*, are insufficient.

In *Gulf Oil*, defendant filed a motion in the district court seeking an order limiting communications by parties and their counsel with putative class members.[14] Defendant's allegations

---

[13] *Gulf Oil Co. v. Bernard*, 452 US 89, 102 (1981) (citing *Coles v. Marsh*, 560 F.2d 186 (3d Cir. 1977)) (emphasis added).

[14] *Id.* at 89.

were unsworn and were unsupported by evidence of specific bad acts.[15] Nonetheless, defendant asserted that plaintiffs' counsel attended a meeting of 75 class members, where he discussed the case and recommended that they not settle their claims against Gulf.[16] Plaintiffs' counsel also allegedly recommended to the class members who had already settled with Gulf to return their settlement checks because they could receive at least double the amount of settlement through the class action.[17] In response, the trial court granted defendant's motion, blanketly restricting parties' communication with putative class members to only those pre-approved by the court.[18] The appeals court, on *en banc* review, reversed the district court–vacating the protective order–for lack of specific findings of abuse, and the United States Supreme Court affirmed the *en banc* panel, reasoning much the same:

> We can assume that the district court did not ground its order on a conclusion that the charges of misconduct made by Gulf were true. Nothing in its order indicates that it did, and, <u>if it did, such a conclusion would have been procedurally improper without evidentiary support. Rather the court appears to have acted upon the rationale of the *Manual* that the court has the power to enter a ban on communications in any actual or potential class action as a prophylactic measure against potential abuses envisioned by the *Manual*.</u>[19]

The same rationale applied by the Supreme Court, and the *en banc* panel of the Fifth Circuit before them, should also be applied in the instant matter to deny the PSC Motion.

---

[15] *Id.* at 98.

[16] *Id.* at 93.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 104 (emphasis added).

**B.     The PSC Has Also Failed to Show Justification for a Prior Restraint Against Defendants' First Amendment Rights.**

The Supreme Court did not reach the question of what requirements the First Amendment may impose in this context because "consideration of the constitutional issue should await a case with a fully developed record concerning possible abuses of the class-action device."[20] However, the Fifth Circuit, in its *en banc* review of the *Gulf Oil* case, made such a First Amendment review.[21] The *en banc* opinion defined the speech-restricting order entered by the district court as a prior restraint on the parties' speech.[22] As such, the district court's order was subject to the following level of scrutiny:

> In general, <u>a prior restraint may be justified only if the expression sought to be restrained "surely (will) result in direct, immediate, and irreparable damage."</u> At least three justices may have rejected even that standard as overly lenient, without explicitly defining the test.[23]

The court further stated that such a speech-restricting order "is not brought within any exception permitting prior restraints merely because it arises in the general context of the administration of justice and the particular context of Rule 23."[24]

The PSC has not even met the requirements of *Gulf Oil*, much less the strictures of causing a prior restraint of speech to issue. It has merely brought two news items to the Court's attention,

---

[20] *Id.* at 102.

[21] *Bernard*, 619 F.2d at 466-478.

[22] *Id.* at 467.

[23] *Id.* at 473 (emphasis added).

[24] *Id.* at 474.

7

neither of which detail specific bad acts or the real threat of imminent harm to the class action.[25] Accordingly, the PSC Motion should be denied.

### C. Inherently Coercion Does Not Exist Between Plaintiffs *Vis-A-Vis* Knauf or Homebuilder-Defendants, Unlike Many Parties in Cases the PSC Has Cited.

Much of the PSC's jurisprudential "support" is built around an inherently coercive relationship that the class defendant in those cases used to its advantage over the putative class members. But no such relationship exists regarding Plaintiffs here, as their claims are built around the one-time purchase of an allegedly defective product–Chinese drywall. There is, therefore, no continuing relationship between defendants and the putative class members (homeowners), such as there is between a bank and its borrowers–the scenario in question in *Kleiner v. First National Bank*,[26] for example. The PSC does not–because it cannot–allege to the contrary.

#### 1. *Kleiner* is inapposite to the facts here.

The class in *Kleiner* consisted of "[b]ank borrowers, many of whom were dependent on the [defendant bank] for future financing."[27] The bank-defendant used its leverage over eligible class members to secure opt-outs *after* class certification and before the opt-out period had elapsed, as is described below.[28]

One month after class certification was granted in *Kleiner* (another distinction from the instant

---

[25] Tellingly, the later of the two reports were released on **May 17, 2010**, but the PSC Motion was not filed until **July 7, 2010**. If Knauf's behavior was such a concern, the PSC could have acted more quickly and requested an expedited hearing of the Motion.

[26] *Kleiner*, 751 F.2d 1193, 1202 (11th Cir. 1985).

[27] *Id.*

[28] *Id.* at 1197-1198.

matter), counsel for the bank served notices of deposition and subpoena duces tecum to over 20 prospective class members.[29] Plaintiffs' counsel, in turn, applied for a protective order to prevent the bank-defendant from badgering class members and to restrict the bank-defendant's unilateral contacts with eligible class members before the class opt-out period had elapsed.[30] Plaintiffs argued that unilateral contacts by the bank-defendant would "intimidate eligible members, many of whom would be very worried about their credit ratings and their ability to borrow in the future."[31]

After a protracted hearing, the district court granted the protective order, but with the condition that the issue of unsupervised, unilateral communications would be taken under advisement.[32] The district court specifically directed bank-defendant that "if you can get me some law that convinces me that it is all right for you to otherwise be able to contact class members, then I will permit you to contact additional people informally."[33]

The bank-defendant submitted briefing on the issue, but rather than waiting for the district court's ruling engaged in a full-bore telephone campaign to solicit as many opt-outs as it could.[34] In so doing, the bank-defendant had its loan officers "do the best selling job they had ever done" to persuade the bank's borrowers to opt out of the class.[35] Neither the court nor opposing counsel were

---

[29] *Id.* at 1196-1197.

[30] *Id.*

[31] *Id.* at 1196.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 1197.

[35] *Id.* at 1198.

alerted to the bank's telephone campaign, and the bank's campaign just happened to coincide with the district judge's vacation.[36]

The district judge, just back from vacation, held a hearing at plaintiffs' request[37]. When appraised of the campaign, she immediately cited the bank's counsel for contempt because it had violated her earlier orders.[38] She also restricted communications to class members to pre-approved responses to individual inquiries only.[39] The Eleventh Circuit affirmed.[40]

The continuing inherently unequal relationship between the bank-defendant and its borrowers was a critical component of the Eleventh Circuit's decision, which is evidenced by the court's conclusion "if the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive."[41] The court's finding that "the high number of [opt-outs] was witness to the inherent coercion of the [bank's] machinations" is also informative as to the Eleventh Circuit's focus.[42]

### 2. *Hampton Hardware, Ralph Oldsmobile,* and *Jennifer* are similarly inapposite.

Citing *Kleiner*, the respective courts in each of these cases found inherent coercion in the relationships between the defendant and their class members. Contrary to the PSC's representation,

---

[36] *Id.* at 1197.

[37] *Id.* at 1198.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 1202.

[41] *Id.*

[42] *Id.*

however, communications by defendant to putative class members is not *per se* coercive.[43] On the contrary, the following cases show that the peculiar relationship between defendant and its class–an on-going business relationship–gave rise to the presumption of "inherent coercion" in all unilateral communications between defendant and putative class members. Most importantly, the findings of inherently coercive relationships guided the following courts to issue or uphold restrictions on communications. Just as *Kleiner* is inapposite to the facts here, these cases are also inapposite and also rely on *Kleiner* for their protective orders.

### a.  *Hampton Hardware, Inc. v. Cotter & Co.*–Inherent Coercion Found

Plaintiff filed this suit as a class action on behalf of all owners of True Value hardware stores in Texas, alleging that they were overcharged service charge by defendant, Cotter & Co.[44] Cotter & Co. is a member-owned wholesaler of hardware, and True Value hardware stores are its members-owners.[45] Plaintiff sought a protective order after Cotter & Co. sent letters denigrating the class action, claiming it would cost the wholesaler (and therefore its members-owners) substantial sums, and asked potential class members not to participate.[46] Citing *Kleiner*, the court found the on-going business relationship between Cotter & Co. and the class "underscored the potential for coercion."[47] The court noted that the potential class members relied upon defendant for information and for low

---

[43] *See, e.g.*, the PSC Motion at p. 7 (alleging that the issue before the Court now is a need to supervise inherently coercive communications).

[44] *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 631 (N.D. Tex. 1994).

[45] *Id.*

[46] *Id.*

[47] *Id.* at 633.

prices on hardware.[48] As such the court found the potential class members "particularly susceptible to believing defendant's comments that the lawsuit [would] cost them money."[49]

### b. *Ralph Oldsmobile Inc. v. General Motors Corp.*–Inherent Coercion Found

Plaintiff filed this suit as a class action on behalf of all franchised General Motors ("GM") dealers in New York State, alleging that GM violated New York vehicle and traffic law by failing to reimburse plaintiffs for warranty repairs.[50] Before a class was certified, GM sought to obtain as many release agreements as it could from its franchisees, and the plaintiffs, in turn, sought a protective order from the district court to protect against GM coercing putative class members into signing release agreements.[51] The court granted plaintiffs' request, focusing its reasoning on the inherently coercive relationship between GM and the putative class members, as follows:

> Here, as in *Kleiner* and *Hampton Hardware*, the potential class members depend upon the defendant for information, supplies, and credit. . . . Like the borrowers in *Kleiner* who had no other source of credit, the GM dealers have no other source of GM vehicles. This is important because some of the dealers who have already signed releases sell not only Oldsmobiles, but other GM lines as well. . . . Their continued success and, indeed, existence may depend upon GM's good will. The record, therefore, presents the clear potential for abuse.[52]

---

[48] *Id.*

[49] *Id.*

[50] *Ralph Oldsmobile Inc. v. Gen'l Motors Corp.*, No. 2001 WL 1035132, *1 (S.D. N.Y. 2001).

[51] *Id.*

[52] *Id.* at 4.

### c. *Jenifer v. Delaware Solid Waste Authority*–Inherent Coercion Found

Plaintiffs filed this suit as a class action on behalf of solid waste haulers in Delaware, challenging regulations implemented by the defendant.[53] The regulations required plaintiffs to dispose of waste in Delaware, where disposal fees were higher.[54] After the suit was filed, defendants contacted putative class members and offered them a new pricing plan.[55] Under this plan, the regulations would be eliminated, and fees in Delaware would remain at then-current rates.[56] However, potential class members who agreed to these terms would have to agree to release defendant from all claims alleged in the class action suit.[57]

Plaintiffs moved for a protective order against further unilateral communications by defendant, and the district court granted the order.[58] Citing *Kleiner*, the district court reasoned that the on-going business relationship between the parties may give rise to coercion.[59]

### D. The PSC Confuses Post-Certification Class Notice with Pre-Certification Communications to Putative Class Members.

Certain other of the PSC jurisprudential "support" shows a fundamental confusion between pre- and post- class certification. The PSC Motion cites quotations and paraphrases from those cases

---

[53] *Jenifer v. Del. Solid Waste Authority*, 1999 WL 117762, *1 (D. Del. 1999).

[54] *Id.* at 1-3.

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at 4.

out of context. Cases like *Erhardt v. Prudential Group*[60] and *Turner v. Murphy Oil USA, Inc.*[61] focus on formal notice of class certification orders pursuant to Rule 23(b)(2), and the duties of the court to ensure those procedurally unique notices are accurate, neutral, and the "best notice that is practicable."[62] These cases have no bearing here because no class has been certified in the Chinese Drywall MDL.

In *Murphy Oil*, before the Court were plaintiffs' and defendants' proposed notices to class members.[63] The class had already been certified, and there were only two legal questions the court would address.[64] First, "the parties disagree[d] that class members should be provided the opportunity to opt-out of this litigation at this stage" because an appeal was pending and because the class definition was not yet final.[65] Second, "the parties appear to disagree regarding what type of notice is required at this stage": a formal notice under Rule 23(c)(2) or and informal notice under Rule 23(d)(2).[66]

This Court ultimately chose to allow class members to opt-out during the pendency of the appeal via formal notice pursuant to Rule 23(c)(2).[67] Rule 23(c)(2) is not even referenced in the PSC

---

[60] 629 F.2d 843 (2d Cir. 1980).

[61] No. 05-4207, 2006 WL 286009 (E.D. La. 1006).

[62] *Kleiner* also addresses the post-class-certification phase of a class action.

[63] *Murphy Oil*, 2006 WL at * 1.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.* at *3.

Motion.[68] But regardless of the opt-out or even the form of notice issued, the Court was concerned with notifying the class of its due-process right to opt-out under the Fourteenth Amendment—not with punishing a party for coercing opt-outs or to suppress a party's communications.[69] ***Interestingly, however, this Court charged the plaintiffs with the cost of distributing the notice.***[70]

Similarly, in *Erhardt*, the United States Court of Appeals for the Second Circuit addressed an issue relating to notice of class certification.[71] Specifically, the court addressed a defendant who had issued its own unapproved (and self-serving) notice along with the court-approved 23(c)(2) notice to class members.[72] The *Erhardt* court, like the *Murphy Oil* court, stressed the unique importance of a 23(c)(2) notice, as it is grounded in the due process rights of the class members under the Fourteenth Amendment.[73] Although the *Erhardt* court was concerned with the proper remedial measure to correct defendant's additional 23(c)(2) notice, it was so concerned because "[it] is the responsibility of the court to direct the 'best notice practicable' to class members" pursuant to Rule 23(b)(2).[74]

---

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Erhardt*, 629 F.2d 843, 843-845.

[72] *Id.* at 845.

[73] *Id.* at 846

[74] *Id*; *see also* FED. R. CIV. P. 23(c)(2)(B) (stating "[for] any class certified under Rule 23(b)(3), the court must direct to class members the <u>best notice</u> that is practicable under the circumstances") (emphasis added).

15

## III. CONCLUSION

The PSC Motion should be denied for several reasons, the most fundamental of which is that the PSC has brought the Court no factual cause to issue an order limiting Southern Homes' (or Knauf's) ability to communicate with putative class members. For that very reason, the PSC Motion does not pass muster under either the *Gulf Oil* standard or the First Amendment prior restraint standard.

Perhaps because of the apparent lack of factual support here, the PSC Motion attempts to shoehorn the facts in question here into a line of case law addressing inherently coercive relationships between defendants and their respective class members–like the bank and its loan customers in *Kleiner*. The transactions and occurrences at issue in the Chinese Drywall MDL simply do not support such an attempt. The MDL is built around homeowner complaints regarding the one-time purchase of an allegedly defective product–Chinese drywall. The PSC has shown no continuing relationship–business or otherwise–between the Defendants whose communications it seeks to limit and the putative class members that would give rise to idea of inherent coercion.

The PSC Motion alternatively tries to force the facts in question here into a line of case law focusing on post-class-certification notice. The attempt is like trying to fit a round peg into a square hole, and should be disregarded.

In sum, the PSC Motion shows no reason to restrict Southern Homes' (or Knauf's) ability to communicate with putative class members, as long as those communications follow the rules already contained in the Manual and the General Rule quoted above. And to the extent that this Court finds a notice to putative class members necessary, Plaintiffs–not Defendants–should pay for it.

Respectfully submitted,

/s/ James M. Garner
JAMES M. GARNER, T.A. (# 19589)
MARTHA Y. CURTIS (# 20446)
MATTHEW C. CLARK (#31102)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice electronic filing in accordance with the procedures established in MDL 2047, on this 4th day of August, 2010.

/s/ James M. Garner
JAMES M. GARNER