| No. | Contract Counterparty | Contract Type | Contract # or Lease # | Amount Due to bring current |
|---|---|---|---|---|
| 1 | Aliana Development Company | Lot Contract | Aliana - As Amended | $ - |
| 2 | Coats, Rose, Yale, Ryman & Lee, P.C. | Lot Contract | Aliana - As Amended | $ - |
| 3 | Edward & Patricia Carroll III | Model Lease Back | Lease for 621 Bismarck Way | $ - |
| 4 | Gary & Theresa Neumann | Model Lease Back | Lease for 331 Cressa Circle | $ - |
| 5 | Richard Fitzgerald | Model Lease Back | Lease for 770 Ventura Drive | $ - |
| 6 | Krukar Family Trust | Model Lease Back | Lease for 1310 Lara Circle, Unit 1 | $ - |
| 7 | Louise Bermudez, LLC | Lot Contract | Back Creek Church - As Amended | $ - |
| 8 | Kirk Palmer & Thigpin, P.A. | Lot Contract | Back Creek Church - As Amended | $ - |

(b) Modifications (shown in bolded italics) to existing contracts on the List of Executory Contracts to be Assumed:

| No. | Contract Counterparty | Contract Type | Contract # or Lease # | Amount Due to bring current |
|---|---|---|---|---|
| 1 | Richard Whitworth | Model Lease-Enchanted Forest | Enchanted Forest Model Lease - *As Amended* | $ - |
| 2 | Symetra Financial | Health Insurance Stop Loss | 16-010956-00 | $ 36,380.60 |

(c) Additions to List of Executory Contracts to be Rejected:

| No. | Contract Counterparty | Contract Type | Contract # or Lease # |
|---|---|---|---|
| 1 | Sprint | Biz Essential | 866128109 |
| 2 | John D Austin | Sign Rental | Sign, CR 200 @ State Hwy 29 |

(d) Deletions from the List of Executory Contracts to be Rejected[2]:

| No. | Contract Counterparty | Contract Type | Contract # or Lease # |
|---|---|---|---|
| 1 | Aliana Development Company | Lot Contract | Aliana |
| 2 | Coats, Rose, Yale, Ryman & Lee, P.C. | Lot Contract | Aliana |
| 3 | Louise Bermudez, LLC | Lot Contract | Back Creek Church |
| 4 | Kirk Palmer & Thigpin, P.A. | Lot Contract | Back Creek Church |

51. **New Loan Document Supplement to the Plan Supplement.** Once finalized, the New Loan Document will be submitted as a supplement to the Plan Supplement and upon such submission shall constitute the "New Loan Documents" as defined in the Plan.

52. **Unclaimed Property.** "Unclaimed Property" means any distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to the Plan that (a) is returned to the Plan Administrator as undeliverable and no appropriate

---

[2] These contracts were removed from the list of executory contracts to be rejected and transferred to the list of executory contracts to be assumed. *See supra*, ¶ 50(a).

38

forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such attempted Distribution by the Plan Administrator is made to such holder or (b) in the case of a distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made. Pursuant to Local Rule 3011-1(B), Unclaimed Property shall be donated to the Bankruptcy Bar Foundation for the Southern District of Florida, a not-for-profit, non-religious organization dedicated to, among other things, promoting the pro bono legal representation of the indigent.

53. <u>Effective Date Occurance</u>. If the Effective Date has not occurred on or before the first business day which is thirty (30) calendar days after the date of entry of this Order, the Court shall hold a status hearing on the earliest available court date thereafter regarding the occurrence of the Effective Date, such that the Court may order appropriate relief pursuant to the Plan, this Order, and/or the applicable provisions of the Bankruptcy Code. Nothing in this retained jurisdiction of the Bankruptcy Court shall affect any rights of any creditor under the Plan, this Order, or agreement with the Debtors and/or the Reorganized Debtors.

###

Submitted by and Copies furnished to:
Tina M. Talarchyk, Esquire*
Squire, Sanders & Dempsey LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Fla. 33401-6198
(*Attorney Talarchyk is hereby directed to serve a conformed copy of this Order upon receipt to all interested parties and file a Certificate of Service.)

**EXHIBIT "A"**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re<br><br>**MERCEDES HOMES, INC.,** *et al.*<br><br>Debtors. | **Case No. 09-11191-PGH**<br><br>**Chapter 11 Cases**<br>**(Jointly Administered)** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEBTORS' JOINT PLAN OF REORGANIZATION (D.E. #1020)

THIS CAUSE came to be heard in West Palm Beach, Florida, on August 31, 2009 at 1:00 p.m. ("Confirmation Hearing") on the the *Debtors' Memorandum In Support of Confirmation of Joint Plan of Reorganization* dated August 27, 2009 (the "Confirmation Brief") (D.E. #1311), filed by MERCEDES HOMES, INC. ("MHI") and certain of its subsidiaries (together with MHI, the "Debtors"),[1] debtors and debtors-in-possession in the above-captioned Chapter 11 Cases, seeking entry of an order (the "Confirmation Order") under Section 1129 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") confirming the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* ("Plan")[2] (D.E. #1020), which along with the "Plan Supplement to the Debtors' Joint Plan of Reorganization" (the "Plan Supplement") (D.E. #1096) are attached hereto as *Exhibit "A"* and incorporated herein by reference, and based upon the Court's review of: (i) the

---

[1] The debtor subsidiaries of MHI include: i) Space Coast Truss, Inc. ("Space Coast Truss"); ii) Mercedes Homes of Texas Holding Corp. ("MH Texas"); iii) Suntree Office Complex, LLC ("Suntree"); iv) Engineering and Drafting Services, Inc. ("Engineering Services"); v) Mercedes Homes of the Carolinas, Inc. dba Mercedes Homes ("MH Carolinas"); vi) Solid Wall Systems, Inc.; vii) MHI Holding Company, LLC ("MHI Holding"); viii) Mercedes Homes of Texas, Ltd. ("MH Texas"); ix) MHI Building Products, L.P. ("MHI Building"); and x) Dairy Towns Community Developers, Inc. ("Dairy Towns").

[2] Capitalized terms not defined in this Brief have the same meaning ascribed to them under the Plan.

2

Confirmation Brief; (ii) "Amended Order: (A) Conditionally Approving Disclosure Statement; (B) Authorizing Solicitation of Votes on the Plan (C) Approving Solicitation Procedures; (D) Scheduling Combined Hearing for Final Approval of Disclosure Statement and Evidentiary Hearing on Confirmation of the Plan; (E) Approving Form, Manner and Sufficiency of Notice; and (F) Scheduling the Bar Date to File Claims Under Section 503(b)(9) of the Bankruptcy Code (the "Solicitation Order") (D.E. #1033); (iii) the Disclosure Statement Concerning the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code ("Disclosure Statement") (D.E. #1021); (iv) the Declaration of Richard M. Williamson in Support of Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Williamson Declaration") (D.E. #1306); (v) the Declaration of Grant Lyon in Support of Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code ("Lyon Declaration") (D.E. #1307); (vi) the Supplemental Declaration of G. Grant Lyon in Support of Class 7 Treatment of Suntree Secured Claims Under Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Supplemental Lyon Declaration") (D.E. #1334); (vii) the Declaration of Voting Agent Regarding Tabulation of Votes in Connection with Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code and the Ballot Report for Debtors' Joint Plan of Reorganization ("Ballot Report")[3] [D.E. 1310]; (vii) the Debtors' Supplemental Brief Regarding Unspecified Shareholder Derivative Actions by ESOP Participants (the "Supplemental Brief") (D.E. #1390); (viii)

---

[3] The Ballot Report indicates that Class 7 - Suntree Secured Claims voted to reject the Plan; however, subsequent to filing the Ballot Report, the Debtors and Sun Trust Bank, the holder of the Class 7 Suntree Secured Claims reached a resolution regarding treatment of the Class 7 - Suntree Secured Claims. As part of that resolution, Sun Trust Bank changed its vote to a vote accepting the Plan. Thus, all Classes entitled to vote under the Plan voted to accept the Plan.

3

the *Findings of Fact and Conclusions of Law Overruling Objection of Jeffrey Macik to the Debtors' Joint Plan of Reorganization* (the "Release Related Findings of Fact") (D.E. #1446); (ix) all of the evidence offered or adduced at, objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing (as defined below); and (x) the entire record in these Chapter 11 cases; and after due deliberation and good and sufficient cause having been shown, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Court does::

**FIND AND CONCLUDES as follows:**

1. <u>Confirmation Hearing</u>. On August 31, 2009 the Court, pursuant to Bankruptcy Code § 1128 and Bankruptcy Rule 3020(b)(2), conducted a hearing to consider confirmation of the Plan ("Confirmation Hearing").

2. <u>Defined Terms</u>. All capitalized terms used in these findings of fact and conclusions of law that are not defined herein shall have the same meaning ascribed to them in the Plan.

3. <u>Solicitation Order</u>. On July 24, 2009, the Court entered the Solicitation Order which, among other things, approved the Disclosure Statement. The Debtors used the Disclosure Statement to solicit votes to accept or reject the Plan from those creditors who are impaired and entitled to vote under the Plan—(i) Classes 4 First Lien Lender Secured Claims; (ii) Class 5A Allowed REIV Secured Claims; (iii) Class 5B Allowed REIV Deficiency Claims; (iv) Class 6 Space Coast Truss Secured Claims; (v) Class 7 Suntree Secured Claims; and (vi) Class 9 General Unsecured Claims. The Solicitation Order: (i) set July 25, 2009 as the deadline for submission of Ballots to accept or reject the Plan (the "Voting Deadline"); (ii) approved the form and method of

4

notice of the Confirmation Hearing (the "Confirmation Hearing Notice"); (iii) set August 25, 2009 as the deadline for submitting objections to confirmation of the Plan (the "Confirmation Objection Deadline"); and (iv) established certain procedures for soliciting and tabulating votes with respect to the Plan.

4. <u>Transmittal of Solicitation Packages</u>. The Debtors mailed Solicitation Packages, which included, among other things: 1) copies of the Disclosure Statement and Plan; 2) notice of the final, evidentiary confirmation hearing to be held on August 31, 2009; 3) the Solicitation Order; and 4) appropriate class ballots ("Ballots") in the form approved in the Solicitation Order to Classes 4, 5A, 5B, 6, 7, and 9. Additionally, the *Notice to Non-Voting Parties of Evidentiary Hearing on Confirmation of Chapter 11 Joint Plan of Reorganization* ("Nonvoting Party Notice") only was transmitted to holders of claims not entitled to vote under the Plan. The transmittal of the foregoing materials was conducted in accordance with Bankruptcy Rule 3017(d) and the Solicitation Order.

5. <u>Ballot Report</u>. The Debtors filed the Ballot Report on August 27, 2009, which certifies the method and results of the ballot tabulation for each Class entitled to vote to accept or reject the Plan. As noted above, the Ballot Report indicates that Class 7 - Suntree Secured Claims voted to reject the Plan; however, subsequent to filing the Ballot Report, the Debtors and Sun Trust Bank, the holder of the Class 7 Suntree Secured Claims reached a resolution regarding treatment of the Class 7 - Suntree Secured Claims. As part of that resolution, Sun Trust Bank changed its vote to a vote accepting the Plan. Thus, all Classes entitled to vote under the Plan voted to accept the Plan

6. <u>Jurisdiction and Venue</u>. The Court has jurisdiction over these Chapter 11 Cases under 18 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

7. <u>Judicial Notice</u>. The Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at, the hearings held before the Court during the pendency of these Chapter 11 Cases.

8. <u>Oral Findings of Fact Incorporated</u>. All oral findings of fact and conclusions of law entered by the Court at the Confirmation Hearing are incorporated herein by this reference, in accordance with Bankruptcy Rule 7052(a).

9. <u>Declarants Available for Examination</u>. Richard Williamson and G. Grant Lyon, as declarants in the Williamson Declaration, Lyon Declaration and Supplemental Lyon Declaration, were present in the courtroom during the Confirmation Hearing and provided testimony on direct and cross examination at the Confirmation Hearing.

10. <u>Transmittal and Mailing of Materials; Notice</u>. In accordance with Bankruptcy Rule 2002, the Court finds and concludes that adequate and sufficient notice of the time for filing objections to the Disclosure Statement and Plan was provided to the holders of claims and equity interests in accordance with the procedures set forth in the Solicitation Order. The Disclosure Statement, Plan, Ballots, Solicitation Order, Confirmation Hearing Notice, and Nonvoting Party Notice were transmitted and served in substantial compliance with the Solicitation Order and the Bankruptcy Rules,

and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing, the Voting Deadline, and the Confirmation Objection Deadline was given in compliance with the Solicitation Order and the Bankruptcy Rules, and no other or further notice is required.

11. <u>Solicitation</u>. In accordance with Bankruptcy Code § 1126(b), the Court finds and concludes that: (a) the solicitation of votes to accept or reject the Plan complied with all applicable non-bankruptcy law, rules and regulations governing the adequacy of disclosure in connection with the solicitation; and (b) the solicitation was conducted after disclosure of adequate information, as defined in Bankruptcy Code § 1125(a).

12. <u>Ballots</u>. All procedures used to distribute Solicitation Packages to the holders of claims and to tabulate Ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court for the Southern District of Florida, and all other applicable laws, rules, and regulations.

13. <u>Impaired Classes under the Plan</u>. As set forth more fully in the Solicitation Order, Classes 4, 5A, 5B, 6, 7, 9, 10, and 11 (collectively, the "Impaired Classes") are impaired under the Plan as that term is defined in Bankruptcy Code § 1124. Classes 4, 5A, 5B, 6, 7, and 9 are entitled to submit votes to accept or reject the Plan; Classes 10 and 11 are not entitled to vote on the Plan and are deemed to reject the Plan because Class 10 and Class 11 shall not receive or retain any rights, property or distributions under the Plan.

7

14. <u>Unimpaired Classes under the Plan</u>. As set forth more fully in the Solicitation Order, Classes 1, 2, 3, and 8 (collectively, the "Unimpaired Classes") are unimpaired under the Plan as that term is defined in Bankruptcy Code § 1124. Accordingly, the Unimpaired Classes are deemed to accept the Plan, and are not entitled to vote on the Plan.

15. <u>Impaired Classes That Have Voted to Accept the Plan</u>. The Ballot Report indicates that Classes 4, 5A, 5B, 6, and 9 voted to accept the Plan and Class 7 - Suntree Secured Claims voted to reject the Plan; however, subsequent to filing the Ballot Report, the Debtors and Sun Trust Bank, the holder of the Class 7 Suntree Secured Claim reached an agreement regarding modification of the treatment of the Class 7 - Suntree Secured Claims. As part of that resolution, Sun Trust Bank changed its vote to a vote accepting the Plan. Thus, all Classes entitled to vote under the Plan voted to accept the Plan. Thus, at least one impaired class of claims, determined without including any acceptance by an insider of any of the Debtors, has voted to accept the Plan.

16. <u>Impaired Class That Voted to Reject the Plan</u>. Although the Ballot Report indicates that Class 7 voted to reject the Plan, as discussed above, the Debtors and Sun Trust Bank, the holder of the Class 7 Suntree Secured Claim reached a resolution regarding treatment of the Class 7 - Suntree Secured Claims and as part of that resolution, Sun Trust Bank changed its vote to a vote accepting the Plan. Because Class 11 is impaired and deemed to reject the Plan, however, the Court finds that the provisions of Bankruptcy Code § 1129(b) must be satisfied to confirm the Plan.

8

17. <u>Burden of Proof</u>. The Debtors, as proponents of the Plan, have met their burden of proving all elements of Bankruptcy Code § 1129(b). First, as set forth below, the Plan complies with the provisions of Bankruptcy Code § 1129(a) other than the provisions of § 1129(a)(8).

18. <u>The Plan Complies with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. As detailed below, the Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(1).

    a. <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Claims, Preserved Ordinary Course Administrative Claims, Professional Claims, and Priority Tax Claims (which are not required to be classified), Article IV of the Plan designates ten Classes of Claims and one Class of Equity Interests in the Debtors. The Claims and Interests placed in each Class are substantially similar to other Claims or Interests in such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests. Accordingly, the Plan satisfies Bankruptcy Code § 1122 and 1123(a)(1).

    b. <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article 6.2 of the Plan specifies the Classes of Claims and Interests that are Unimpaired under the Plan. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(2).

    c. <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article VI of the Plan specifies the Classes of Claims that are Impaired under the Plan. Article V of the Plan specifies the treatment of Claims in all such Classes. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(3).

    d. <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment for each Claim in each respective Class unless the holder of a particular Claim has agreed to less favorable treatment with respect to such Claim. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(4).

    e. <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provides adequate and proper means for implementation of the Plan, including, without limitation: (a) the reconstitution of each of the Debtors as of the Effective Date ("Reorganized Debtors"); (b) issuance of the New

9

Mercedes Common Stock; (d) issuance of the New Loan Documents; (e) creation of the Creditor Trust for the benefit of the holders of Allowed General Unsecured Claims and transfer to the Creditor Trust of the (i) the Effective Date Cash Payment, (ii) right to receive the Post-Effective Date Cash Payment, (iii) the right to receive the BANS Proceeds Allocation, and (iv) the Transferred Claims which, in turn, include the Avoidance Actions; (f) procedures for making distributions; and (g) the execution, delivery, filing or recording of all contracts, instruments, releases, indentures, and other agreements or documents relating to the foregoing. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(5).

f. <u>Prohibition Against Issuance of Non-Voting Equity Securities and Provisions for Voting Power of Classes of Securities (11 U.S.C. § 1123(a)(6))</u>. Article 7.2.B of the Plan prohibits the issuance of non-voting equity securities as of the Effective Date. After the Effective Date, each of the Reorganized Debtors may amend their respective organizational documents as permitted by applicable law. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(6).

g. <u>Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))</u>. The Plan Supplement properly and adequately discloses the identity and affiliations of all individuals proposed to serve on or after the Effective Date as Officers and Directors of the Reorganized Debtors. The appointment of such Officers and Directors are consistent with the interests of the holders of Claims against and Interests in the Debtors, and with public policy. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(7).

h. <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for: (a) distributions to holders of Claims; (b) the disposition of executory contracts and unexpired non-residential real property leases; (c) the retention and/or transfer of, and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing) certain claims or causes of action against third parties, to the extent not waived or released under the Plan; (d) resolution of Disputed Claims; (e) resolution of indemnification obligations; and (f) certain releases by the Debtors and holders of certain Claims.

i. <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

19. <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(2). The Debtors have complied with the

10

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices, and in soliciting and tabulating votes on the Plan.

20. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Bankruptcy Code § 1129(a)(3). In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases and the formulation of the Plan. The Plan was proposed, with the legitimate and honest purpose of maximizing the value of each of the Debtors and the recovery to Claim holders under the circumstances of these Chapter 11 Cases.

21. <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors for services or for costs and expenses in connection with these Chapter 11 Cases, including all administrative expense claims under Bankruptcy Code § 503, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying Bankruptcy Code § 1129(a)(4).

22. <u>Directors and Officers (11 U.S.C. § 1129(a)(5))</u>. The Debtors, as proponent of the Plan, have complied with Bankruptcy Code § 1129(a)(5) by disclosing in the Plan Supplement the identity and affiliations of all individuals and entities proposed to serve, after confirmation of the Plan, as the Officers and Directors of Reorganized Debtors. Such appointment is consistent with the interests of the creditors and with public policy, thereby satisfying Bankruptcy Code § 1129(a)(5).

11

23. <u>No Government Regulation of Rates (11 U.S.C. § 1129(a)(6))</u>. Bankruptcy Code § 1129(a)(6) is satisfied because the business of the Debtors is not subject to governmental regulation of rates.

24. <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies Bankruptcy Code § 1129(a)(7). The Disclosure Statement, the Williamson Declaration, the Lyon Declaration, the Supplemental Lyon Declaration and evidence adduced at the Confirmation Hearing: (a) are persuasive, credible and accurate as of the dates they were prepared, presented, or proffered; (b) either have not been controverted by other persuasive evidence or have not been challenged; (c) are based upon reasonable and sound assumptions; and (d) establish that each holder of a Claim in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

25. <u>Bankruptcy Code § 1129(a)(8) Need Not Be Satisfied under § 1129(b)</u>. Because the Plan is being confirmed under Bankruptcy Code § 1129(b), the requirements of § 1129(a)(8) need not be satisfied.

26. <u>Treatment of Administrative and Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Claims and Other Priority Claims under the Plan satisfies the requirements of Bankruptcy Code §§ 1129(a)(9)(A) and (B), and the treatment of Priority Tax Claims under the Plan satisfies Bankruptcy Code § 1129(a)(9)(C).

12

27. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Classes 4, 5A, 5B, 6, 7, 9, 10, and 11 are Impaired Classes. As described with particularity in the Ballot Report and in this Findings of Fact, Classes 4, 5A, 5B, 6, 7 and 9 voted to accept the Plan. Classes 10 and 11 are deemed to reject the Plan in accordance with Bankruptcy Code § 1126(e) because Classes 10 and 11 shall not receive or retain any property under the Plan. The Impaired Classes do not contain "insiders" of any significant magnitude. Accordingly, the Plan satisfies Bankruptcy Code § 1129(a)(10).

28. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan satisfies Bankruptcy Code § 1129(a)(11). The Plan implements a reorganization of the Debtors. The Disclosure Statement, the Lyon Declaration, and evidence adduced or proffered at the Confirmation Hearing: (a) are persuasive, credible and accurate as of the dates they were prepared, presented, or proffered; (b) either have not been controverted by other persuasive evidence or have not been challenged; (c) are based upon reasonable and sound assumptions; and (d) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by further financial reorganization of the Reorganized Debtors.

29. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. To the extent that all fees payable to the United States Trustee under 28 U.S.C.§ 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date. Accordingly, the Plan satisfies Bankruptcy Code § 1129(a)(12).

30. <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. No retiree benefits, as that term is defined in Bankruptcy Code § 1114, exist in these Chapter 11 Cases, making

13

Bankruptcy Code § 1129(a)(13) inapplicable. The Plan thus satisfies Bankruptcy Code § 1129(a)(13).

31. <u>Domestic Support Obligation (11 U.S.C. § 1129(a)(14))</u>. The Debtors are not subject to any judicial or administrative order, or by statute, to pay any domestic support obligation. The Plan thus satisfies Bankruptcy Code § 1129(a)(14).

32. <u>Individual Debtors (11 U.S.C. § 1129(a)(15))</u>. None of the Debtors is an individual. The Plan thus satisfies Bankruptcy Code § 1129(a)(15).

33. <u>Transfers Under Nonbankruptcy Law (11 U.S.C. § 1129(a)(16))</u>. There are no provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust that apply to any of the Debtors since the Debtors are commercial businesses. The Plan thus satisfies Bankruptcy Code § 1129(a)(16).

34. <u>Fair and Equitable (11 U.S.C. § 1129(b)(2))</u>. The Plan provides "fair and equitable" treatment to Classes 10 and 11 which are deemed to reject. Under Bankruptcy Code § 1129(b)(2)(C), a plan is fair and equitable to a class of class of equity interests who did not vote to accept the plan if the plan provides that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on any property on account of such junior interest. Under the Plan, there will be no recovery to any interest or claim junior to Classes 10 or 11—which are respectively comprised of equity interests and claims arising from the purchase or sale of securities which subordinated under Bankruptcy Code § 510(b). Therefore, the Court finds Classes 10 and 11 are treated fairly and equitably under Bankruptcy Code § 1129(b)(2).

35. <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance. Accordingly, the Plan complies with Bankruptcy Code § 1129(d).

36. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. The Debtors and their respective attorneys, accountants and advisers have solicited votes to accept or reject the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, and are, therefore, entitled to the protections afforded by Bankruptcy Code § 1125(e) of the Bankruptcy Code and the release provisions contained in Article XII of the Plan.

37. <u>Executory Contracts</u>. The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts and unexpired non-residential real property leases as set forth in the Plan Supplement.

38. <u>Releases</u>. As further described in the Release Related Findings of Fact, all of the releases in Article 12.4 of the Plan (as modified in the Confirmation Order, the "Releases") constitute good faith compromises and settlements of the matters covered thereby. The Releases are in the best interests of the Debtors, Reorganized Debtors and their estates, and are fair, equitable and reasonable. The non-debtors released under Article 12.4 have contributed to the Debtors' reorganization by compromising their claims against the estate in furtherance of the global settlement that the Plan effectuates as negotiated between the Debtors, the First Lien Lenders, REIV and the Committee. The Releases are essential to the reorganization, as these parties agreed

15

to compromise these claims in exchange for receiving the releases. All of the Releases described in Article 12.4 of the Plan: (a) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1134(a), (b), and (d); (b) are important to the overall objectives of the Plan to finally resolve all Claims among or against parties in interest in these Chapter 11 Cases with respect to the Debtors; and (c) are consistent with Bankruptcy Code §§ 105, 524, 1123, and 1129.

39. <u>Conditions to Confirmation</u>. The conditions to confirmation set forth in Article 14.1 of the Plan have been satisfied, waived, or will be satisfied by entry of the Confirmation Order, *provided, however,* that the occurrence of the Effective Date is subject to satisfaction or waiver, as applicable, of the conditions to the Effective Date set forth in the Plan and the Confirmation Order.

40. <u>Conditions to Effectiveness</u>. Each of the conditions to the Effective Date, as set forth in Article 14.2 of the Plan, is reasonably likely to be satisfied, and the Reorganized Debtors shall file a notice when substantial consummation of the Plan (within the meaning of Bankruptcy Code § 1127) has occurred.

41. <u>Retention of Jurisdiction</u>. The Court's retention of jurisdiction as set forth in Article 13 of the Plan comports with the parameters contained in 28 U.S.C. § 157.

42. <u>Agreements and other Documents</u>. The Debtors have made adequate and sufficient disclosure of: (a) the distributions to be made under the Plan; (b) the issuance of the New Mercedes Common Stock, New Loan Documents, Renewed Space Coast Truss Loan Documents, and Renewed Suntree Loan Documents to holders of certain Claims, in accordance with the terms of the Plan; and (c) the adoption, execution, delivery, and implementation of all contracts, leases, instruments,

indentures, releases, and other agreements or documents related to the any of the foregoing.

43. <u>Preservation of Causes of Action</u>. It is in the best interests of Claim holders and Interest holders that causes of action not expressly released under the Plan be retained by the Reorganized Debtors pursuant to Article 13 of the Plan, in order to maximize the value of the Debtors' estates.

44. <u>Election Pursuant to 11 U.S.C. § 1111(b)</u>. No secured creditor has elected the treatment provided by Bankruptcy Code § 1111(b).

45. <u>New Securities under 11 U.S.C. § 1145</u>. In accordance with Bankruptcy Code § 1145, the issuances of the New Mercedes Common Stock are exempt from the registration requirements of Section 5 of the Securities Act and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of or broker dealer in such securities.

46. <u>Status of Objections</u>. As set forth below, and described more fully in the Confirmation Order, the objections filed to the Plan have either been resolved or otherwise overruled.

47. <u>Tax Objections</u>. The following taxing authorities filed substantially similar objections (collectively, the "Tax Objections") addressing the treatment of Secured Tax Claims under the Plan: (i) Texas Comptroller of Public Accounts (D.E. #1149); (ii) Travis County Tax Assessor, *et al.* (D.E. ##1190, 1193); (iii) Lewisville Independent School District, *et al.* (D.E. ##1243, 1266); (iv) Miami-Dade Tax Collector (D.E. #1227); (v) County of Denton, Texas, *et al.* (D.E. #1216); (vi) Brevard County Tax Collector (D.E. ##1235, 1269); (vii) Orange County Tax Collector (D.E. ##1236, 1270); (viii) Fort Bend

17

Independent School District, et al. (D.E. ##1247, 1273); and (ix) Dallas County, et al. (D.E. ##1250, 1274). The Tax Objections have been resolved by way of incorporating certain agreed language regarding treatment of Class 2 and the vesting of assets into the Confirmation Order.

48. <u>BAN Objections</u>. Celebration Point Community Development District ("Celebration Point") (D.E. ##1261) and Lo Land Assets, LP ("Lo Land") (D.E. #1224) (collectively, the "BAN Objections") objected to the Plan, arguing that the Plan grants independent jurisdiction to the Bankruptcy Court over adversary proceeding 09-AP-01860-PGH (the "Adversary"), which seeks a declaratory judgment relating to certain bond anticipation notes issued by the defendants in the Adversary. Lo Land filed a supplemental objection (D.E. #1305) objecting to the non-debtor release provisions to the extent the release provisions relate conduct that is subject of the Adversary or the related state court actions. The BAN Objections have been resolved by way of incorporating certain agreed language regarding this Court's retention of jurisdiction and the release provisions into the Confirmation Order.

49. <u>ESOP Objections</u>. Two objections were received on behalf of ESOP participants by Jeffrey Macik (the "Macik Objection") (D.E. #1211) and Brett Alexander and Audrey Gillett (D.E. ##1246, 1271) ("Alexander & Gillett Objection"). The Alexander & Gillett Objection has been resolved by incorporating certain agreed language into the Confirmation Order. In exchange for incorporating the agreed language into paragraph the Confirmation Order and as condition of resolution of the Alexander & Gillett Objection, the Adversary Proceeding 09-01927-PGH ("Gillett Adversary Proceeding") is *to be withdrawn with prejudice.* The Court overruled the Macik Objection in the