agreements, operating agreements, and similar operational and organizational agreements of each of the Reorganized Debtors, substantially in the form included as an Exhibit to the Plan Supplement.

**1.9  Avoidance Actions.** All statutory causes of action under Bankruptcy Code §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, and 553 that a Debtor or an Estate may have against any Person including, but not limited to, those listed in the Plan Supplement. Failure to list an Avoidance Action in the Plan Supplement does not constitute the waiver or release of that Avoidance Action.

**1.10  Ballot.** Each of the ballot forms that are distributed with the Disclosure Statement to Claimholders included in Classes that are Impaired under this Plan and entitled to vote under Article V of this Plan to accept or reject this Plan.

**1.11  Bankruptcy Code.** Title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

**1.12  Bankruptcy Court.** The United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, or such other court having jurisdiction over the Chapter 11 Cases.

**1.13  Bankruptcy Rules.** The Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

**1.14  BANS.** The bond anticipation note in the face amount of $13,910,596 issued to Mercedes by the Celebration Pointe Community Development District in connection with the Celebration Pointe development.

**1.15  BANS Proceeds Allocation.** An amount equal to 33 and 1/3% of the net Cash proceeds when and as received by the Debtors or the Reorganized Debtors on account of the BANS. The fees and costs for prosecuting the BANS shall be subject to Bankruptcy Court approval in accordance with Article 7.10 of this Plan.

**1.16  Bar Date.** The deadline set by the Bankruptcy Court for filing proofs of claim in the Chapter 11 Cases. For all prepetition Claims, the Bar Date is June 30, 2009, except for Claims of governmental entities, in which case the Bar Date is September 27, 2009.

**1.17  Business Day.** Any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

**1.18  Cash.** Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.19  CDD.** A community development district or other special district established and governed pursuant to applicable state law that have the authority to impose non-ad valorem special assessments on certain property located within its boundaries.

**1.20  CDD Secured Claim.** Any Allowed Secured Claim of a CDD arising from the imposition of non-ad valorem special assessments, or any other assessments, that is secured by a Lien on property of the Estates.

**1.21  Chapter 11 Cases.**  The Chapter 11 Cases of the Debtors pending in the Bankruptcy Court and being jointly administered with one another under Case No. 09-11191-PGH, and the phrase "Chapter 11 Case" when used with reference to a particular Debtor shall mean the particular case under Chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court.

**1.22  Claim.**  A claim against a Debtor or its property as defined in Bankruptcy Code § 101(5), including: (a) any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if the breach gives rise to a right to payment, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.23  Class.**  A category consisting of holders of Claims or Equity Interests substantially similar in nature to the Claims under the Plan.

**1.24  Collateral.**  Any property or interest in property of an Estate subject to a Lien to secure the payment or performance of a Claim, the Lien not being subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.25  Committee.**  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

**1.26  Confirmation Date.**  The date the Bankruptcy Court enters the Confirmation Order.

**1.27  Confirmation Hearing.**  The hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

**1.28  Confirmation Order.**  The order of the Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code. The Confirmation Order need not necessarily be a Final Order.

**1.29  Contingent Claim.**  Any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not been Allowed on or before the Confirmation Date.

**1.30  Creditor.**  Any holder of a Claim, whether or not the Claim is an Allowed Claim, encompassed within the statutory definition set forth in Bankruptcy Code § 101(10).

**1.31  Creditor Trust.**  The trust to be created for the benefit of General Unsecured Creditors under Article VIII of this Plan.

**1.32  Creditor Trust Documents.**  Those documents entered into between the Debtors, the Creditor Trust and the Creditor Trustee necessary to form and implement the Creditor Trust. The Creditor Trust Documents are attached as an Exhibit to the Plan Supplement.

**1.33  Creditor Trust Interests.**  The uncertificated beneficial interests in the Creditor Trust to be issued to holders of Allowed General Unsecured Claims under this Plan.

**1.34  Creditor Trustee.**  The Person selected by the Committee to serve as the initial trustee under the Creditor Trust.

**1.35 Cure.** The payment on the Effective Date of Cash or other property as a condition to the assumption or assumption and assignment by a Debtor of an executory contract or unexpired lease of nonresidential real property, in accordance with Bankruptcy Code § 365(b).

**1.36 Dairy Towns.** Dairy Towns Community Developers, Inc., a Florida corporation and one of the Debtors in these Chapter 11 Cases.

**1.37 Debtor Loan Parties.** Each of: (i) the Debtors; (ii) the Non-Debtor Affiliates that are guarantors under the First Lien Loan Agreement; (iii) each future direct and indirect domestic subsidiary of the foregoing; and (iv) to the extent no material adverse tax consequences would result therefrom, each foreign subsidiary of each of the foregoing.

**1.38 Debtors.** Collectively, Mercedes Homes, Inc., Mercedes Homes of Texas, Ltd., Mercedes Homes of the Carolinas, Inc. d/b/a Mercedes Homes, Space Coast Truss, Inc., Mercedes Homes of Texas Holding Corp., Suntree Office Complex, LLC, Engineering and Drafting Services, Inc., Solid Wall Systems, Inc., MHI Holding Company, LLC, MHI Building Products, L.P., and Dairy Towns Community Developers, Inc.

**1.39 Disallowed.** In reference to a Claim, a Claim or any portion of a Claim that has been disallowed, overruled, withdrawn, or expunged by Final Order.

**1.40 Disclosure Statement.** The written disclosure statement relating to this Plan (including all Exhibits and schedules) in the form approved by the Bankruptcy Court under Bankruptcy Code § 1125 and Bankruptcy Rule 3017.

**1.41 Disputed.** With respect to Claims or Equity Interests, any Claim or Equity Interest: (a) listed in the Schedules as unliquidated, disputed, or contingent, or as to which the Debtors or any other party-in-interest has (i) interposed a timely objection or request for estimation; or (ii) sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, in each instance where such listing, objection, request for estimation, or action to limit recovery has not been withdrawn or determined by a Final Order; or (b) that is a Contingent Claim.

**1.42 Distribution Record Date.** The date, established in the Confirmation Order, by which the identities of the holders of Claims and Equity Interests are determined for purposes of entitlement to receive distributions under this Plan.

**1.43 Distribution Reserve.** The reserve, if any, established and maintained by the Creditor Trust into which the Creditor Trust shall deposit, or shall cause to be deposited, the amount of Cash and/or Creditor Trust Interests that would have been distributed from time to time to holders of Disputed Claims, such amount to be estimated by the Bankruptcy Court or agreed upon by the Creditor Trustee and the holders of Disputed Claims.

**1.44 Effective Date.** The first Business Day that is eleven days after the Confirmation Date and on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions to effectiveness set forth in Article XIV of this Plan have been satisfied or waived in accordance with the terms of this Plan.

**1.45 Effective Date Cash Payment.** Cash in the amount of $5,000,000.00 to be paid on the Effective Date to the Creditor Trust for the benefit of the holders of Allowed General Unsecured Claims.

**1.46 Engineering.** Engineering & Drafting Services, Inc., a Florida corporation and one of the Debtors in these Chapter 11 Cases.

**1.47** **Equity Interest**. The legal, equitable, contractual and other rights of any Person with respect to membership or ownership interests in any of the Debtors, or any other equity securities of or ownership interests in the Debtors, including, but not limited to, any Equity Related Claims.

**1.48** **Equity Related Claim**. Any Equity Interest or any Claim by any Person other than a Debtor: (a) arising from the rescission of a purchase or sale of an Equity Interest; or (b) for damages arising from the purchase or sale of an Equity Interest; or (c) that asserts equitable or contractual rights of reimbursement, contribution, or indemnification arising from such a Claim; including any Claim that has been or may be asserted by any Person other than a Debtor against a Debtor or its officers and directors, asserting violations of federal securities laws including actions under Sections 11 and 15 of the Securities Act and Sections 10(b) and 20 of the Exchange Act, and Rule 10b-5 promulgated by the SEC under the Exchange Act, and any applicable non-federal law; or (d) arising out of or related to the Debtors' employee stock ownership plan, including the termination thereof.

**1.49** **Estate or Estates**. The bankruptcy estates for each Debtor created by virtue of Bankruptcy Code § 541 upon commencement of the Chapter 11 cases.

**1.50** **Exchange Act**. The Securities Exchange Act of 1934, as amended, and the regulations promulgated under that act.

**1.51** **Exhibit**. An exhibit annexed to either this Plan, the Plan Supplement or as an appendix to the Disclosure Statement.

**1.52** **Final Order**. An order or judgment of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, or as to which any right to appeal, petition for certiorari, reargue, or rehear has been waived in writing in form and substance satisfactory to the Debtors; and (b) if an appeal, writ of certiorari, or reargument or rehearing has been sought, as to which the highest court to which the order was appealed, or certiorari, reargument or rehearing was sought, has determined or denied the appeal, writ of certiorari, reargument, or rehearing, and the time to take any further appeal, petition for writ of certiorari, or move for reargument or rehearing has expired; but the filing of a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, with respect to the order does not prevent the order from being a Final Order.

**1.53** **First Lien Lender Secured Claim**. All Allowed Secured Claims arising under the First Lien Loan Agreement, which shall consist of outstanding principal and accrued but unpaid interest at the non-default rate, whether accrued before of after the Petition Date, and all fees, charges and costs arising thereunder, whether accrued before or after the Petition Date.

**1.54** **First Lien Lenders**. The lenders under the First Lien Loan Agreement.

**1.55** **First Lien Loan Agreement**. That certain Third Amended and Restated Revolving Borrowing Base Loan Agreement dated May 15, 2008, as amended from time to time, between certain of the Debtors as borrowers and/or co-borrowers and Bank of America, N.A., as administrative agent and letter of credit issuing lender, Wachoiva Bank, N.A., KeyBank National Association, Wells Fargo Bank, N.A., Suntrust Bank, Guaranty Bank, Regions Bank (successor by merger to Amsouth Bank), Comerica Bank, RBC Bank (USA), f/k/a RBC Centura Bank, Branch Banking and Trust Company, Bank of America, N.A. as successor to LaSalle Bank, Franklin Bank, and any other lenders from time to time party thereto, and all security agreements, mortgages, deeds of trust, and all other loan documents related thereto.

**1.56   First Lien Release Parties.** Each of the Administrative Agent, each Lead Arranger, the L/C Issuer, each First Lien Lender, their respective affiliates and each of their respective officers, employees, representatives, affiliates, agents, counsel, advisors and directors.

**1.57   General Unsecured Claim.** Any Claim against the Debtors that is unsecured and not subject of any Lien or priority or administrative status under the Bankruptcy Code, provided that a General Unsecured Claim shall not include: (a) a Secured Claim, including a First Lien Lender Secured Claim and REIV Secured Claim; (b) an Administrative Claim; (c) an Administrative Vendor Claim; (d) a Reclamation Claim or a Claim under Section 546 of the Bankruptcy Code; (e) an Intercompany Claim; (f) the REIV Deficiency Claim; (g) the REIV Secured Claim; (h) a Secured Tax Claim; (i) a Miscellaneous Secured Claim; (j) a Priority Tax Claim; (k) a Priority Claim; (l) a Subordinated Debt Securities Claim; or (m) an Equity Related Claim.

**1.58   Impaired.** Any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.59   Initial Distribution Date.** The first Business Day after the Effective Date or as soon thereafter as is practical on which distributions are made to holders of Allowed Claims under the Plan.

**1.60   Intercompany Claim.** Any Claim held by one Debtor against another Debtor arising at any time before the Effective Date.

**1.61   IRS.** The Internal Revenue Service.

**1.62   Land Ventures.** Non-Debtor related parties that have entered into land option contracts with the Debtors. A list of the Land Ventures is attached as an Exhibit to the Plan Supplement.

**1.63   L/C Issuer.** Bank of America, N.A., as letter of credit issuer under the First Lien Loan Agreement.

**1.64   Lead Arranger.** Banc of America Securities LLC and Wachovia Capital Markets, LLC, each of whom will act as sole and exclusive co-lead arrangers and co-book managers under the New Senior Credit Facilities.

**1.65   Lien.** A lien as defined in Bankruptcy Code § 101(37), except a lien that has been avoided in accordance with Bankruptcy Code §§ 544, 545, 546, 547, 548, or 549.

**1.66   List of Reorganized Officers.** A schedule identifying the officers of the Reorganized Debtors as of the Effective Date. The List of Reorganized Officers is attached as an Exhibit to the Plan Supplement.

**1.67   Mercedes.** Mercedes Homes, Inc., a Florida corporation and one of the Debtors in these Chapter 11 Cases.

**1.68   MH Carolina.** Mercedes Homes of the Carolinas, Inc., d/b/a Mercedes Homes, a North Carolina corporation and one of the Debtors in these Chapter 11 Cases.

**1.69   MH Texas.** Mercedes Homes of Texas, Ltd., a Florida limited partnership and one of the Debtors in these Chapter 11 Cases.

1.70    **MHI Building.** MHI Building Products, L.P., a Texas limited partnership and one of the Debtors in these Chapter 11 Cases.

1.71    **MHI Holding.** MHI Holding Company, LLC, a Florida limited liability company and one of the Debtors in these Chapter 11 Cases.

1.72    **New Discount Note.** A discount note in the face amount of $10,000,000.00. The New Discount Note will be forgiven if (i) the New Term A Note is repaid in full in cash on or prior to July 31, 2011, and (ii) the New Term B Note and the New Term C Note are repaid in full in cash on or prior to the fourth anniversary of the Effective Date. The New Discount Note shall not bear interest prior to a default or event of default. Upon the occurrence and during the continuance of a default or an event of default, the New Discount Note shall bear interest at a fixed rate of 10% and shall be payable quarterly in arrears

1.73    **New Loan Documents.** All documents, agreements, guarantees, security agreements, pledges, mortgages, deeds of trust, and similar documents necessary to execute and implement the transactions contemplated in the New Senior Credit Facilities, including, without limitation, the New Notes, substantially in the form included as an Exhibit to the Plan Supplement.

1.74    **New Mercedes By-Laws.** As applicable, the amended and restated By-Laws of Reorganized Mercedes, substantially in the form included as an Exhibit to the Plan Supplement.

1.75    **New Mercedes Certificate.** As applicable, the Certificate of Incorporation of Reorganized Mercedes, substantially in the form included as an Exhibit to the Plan Supplement.

1.76    **New Mercedes Common Stock.** The shares of common stock to be issued by Reorganized Mercedes on or after the Effective Date pursuant to this Plan.

1.77    **New Notes.** Collectively, the New Term A Note, the New Term B Note, the New Term C Note, and the New Discount Note, substantially in the form included as an Exhibit to the Plan Supplement.

1.78    **New Senior Credit Facilities.** The new senior, secured credit facilities to be entered into between the Reorganized Debtors and the First Lien Lenders on the Effective Date, pursuant to which the New Notes shall be issued to the holders of Allowed First Lien Lender Secured Claims. Obligations arising under the New Senior Credit Facilities shall be secured by first priority, valid and perfected Liens on substantially all of the Reorganized Debtors' assets.

1.79    **New Term A Note.** A term note in the face amount of $80,000,000.00. The New Term A Note matures on July 31, 2011. The New Term A Note shall not bear interest prior to a default or event of default. Upon the occurrence and during the continuance of a default or an event of default, the New Term A Note shall bear PIK Interest equal to LIBOR + 7%, with a LIBOR floor of 3%.

1.80    **New Term B Note.** A term note in the face amount of $30,000,000.00. The New Term B Note matures on the fourth anniversary of the Effective Date. The New Term B Note shall bear interest at a rate of LIBOR + 6%, with a LIBOR floor of 3%, which interest shall be payable monthly in arrears.

1.81    **New Term C Note.** A term note in the face amount of $20,000,000.00. The New Term C Note matures on the fourth anniversary of the Effective Date. The New Term C Note shall not bear interest prior to a default or event of default or, absent a default or event of default, shall not bear interest through and including the second anniversary of the Effective Date. Upon the earlier of (i) the occurrence and during the continuance of a default or an event of default and (ii) from and after the next day after the

second anniversary of the Effective Date, the New Term C Note shall bear interest at a fixed rate of 10% and shall be payable quarterly in arrears.

**1.82   Non-Debtor Affiliates.** The Affiliates of the Debtors that have not commenced cases under Chapter 11 of the Bankruptcy Code, which are identified on an Exhibit to the Plan Supplement.

**1.83   Person.** Any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

**1.84   Petition Date.** The date on which each Debtor filed its voluntary petition for relief in the Bankruptcy Court, which date is January 26, 2009.

**1.85   Plan.** This Plan, either in its present form or as it may be amended, supplemented, or modified from time to time in accordance with the terms of this Plan, including, except where the context otherwise requires, all its annexed exhibits.

**1.86   Plan Documents.** Collectively: (a) the Reorganized Mercedes By-Laws; (b) the Reorganized Mercedes Certificate; (c) the Amended and Restated Organizational Documents; (d) the New Senior Credit Facilities; (e) the New Notes; (f) the New Loan Documents; (g) the Creditor Trust Documents; and (h) the list of Avoidance Actions, copies of which shall be filed with the Bankruptcy Court as part of the Plan Supplement, and any other contracts, instruments, releases and other agreements or documents to be executed in order to consummate the transactions contemplated under this Plan or otherwise necessary to effect and further evidence the terms and conditions of this Plan.

**1.87   Plan Supplement.** The compilation of documents and form of documents, exhibits and schedules necessary and appropriate to implement the terms of the Plan.

**1.88   Plan Supplement Filing Date.** The date that is no later than 15 days prior to the Voting Deadline or such other date that may be approved by the Bankruptcy Court on notice to parties in interest.

**1.89   Post Effective Date Cash Payment.** Cash in the amount of $1,000,000.00 to be paid to the Creditor Trust by Reorganized Mercedes on or before December 31, 2009. Reorganized Mercedes shall have the right to defer payment of the Post Effective Date Cash Payment for a period not to exceed 30 days, <u>provided, however,</u> in the event that Reorganized Mercedes elects such deferral right, then Reorganized Mercedes shall pay an additional $50,000.00 to the Creditor Trust for the right to defer such payment, which additional amount shall be considered part of the Post Effective Date Cash Payment. In the event of a default hereunder (the failure to make the Post Effective Date Cash Payment by January 31, 2010), the Creditor Trustee shall deliver written notice of same to Reorganized Mercedes which shall have 7 calendar days to cure such default. If the default is not cured within such period, then interest shall accrue at the rate of 5% per annum until the Post Effective Date Cash Payment is made and Reorganized Mercedes shall be liable for the fees and costs incurred by the Creditor Trustee in enforcing this provision (which amounts shall not count towards the $300,000 cap set forth in Article 8.4 herein).

**1.90   Preserved Litigation Claims.** Subject to the releases provided for in Section 12.4 of this Plan, all rights, claims, torts, liens, actions, causes of action, avoiding powers, proceedings, debts, contracts, judgments, offsets, damages, and demands in law or in equity, whether known or unknown, contingent or otherwise, that a Debtor or an Estate (through an official committee or otherwise) has brought or may have against any Person, including, without limitation, those listed in the Plan Supplement. Failure to list a Preserved Litigation Claim in the Plan Supplement does not constitute any Debtor's, any Estate's, or any Reorganized Debtor's waiver or release of that Preserved Litigation Claim.

Preserved Litigation Claims shall not include any of the Transferred Claims or any Claims against any of the Released Parties.

     **1.91**    **Preserved Ordinary Course Administrative Claim.** Any Administrative Claim based on liabilities incurred by a Debtor in the purchase, lease, or use of goods and services in the ordinary course of its business including Administrative Claims on account of services provided after the Petition Date to a Debtor by its employees, and Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of that contract or lease, but excluding Professional Claims.

     **1.92**    **Priority Claim.** Any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code § 507(a) other than Priority Tax Claims and Administrative Claims.

     **1.93**    **Priority Tax Claim.** Any Claim of a governmental unit entitled to priority under Bankruptcy Code § 507(a)(8).

     **1.94**    **Professional.** A Person: (a) employed in the Chapter 11 Cases in accordance with an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328, 363, or 1103 and to be compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

     **1.95**    **Professional Claim.** An Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

     **1.96**    **Professional Claim Bar Date.** The first Business Day that is 60 days after the Effective Date.

     **1.97**    **Pro Rata.** A proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in that Class to the amount of all Allowed Claims or Equity Interests in that Class.

     **1.98**    **REIV.** Real Estate Investment Ventures, LLC.

     **1.99**    **REIV Deficiency Claim.** Any Allowed Unsecured Deficiency Claim of REIV.

     **1.100**    **REIV Secured Claim.** All Allowed Secured Claims arising under the REIV Loan Agreement, which shall include principal, accrued but unpaid interest at the non-default rate, and all fees and costs arising thereunder.

     **1.101**    **REIV Loan Agreement.** That certain Consolidated and Renewal Promissory Note, dated January 31, 2006, as amended from time to time, between Mercedes, as borrower, and REIV as lender, and all security agreements, mortgages, deeds of trust, and all other loan documents related thereto.

     **1.102**    **Rejection Claims.** All Claims arising from a Debtor's rejection of an executory contract or unexpired lease of nonresidential real property either during the Chapter 11 Cases or in connection with this Plan, including Claims for future rents under Bankruptcy Code § 502(b)(6) or future contract payments and General Unsecured Claims for unpaid rent or contract payments accruing before the

Petition Date. Rejection Claims do not include Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of such contract or lease.

    **1.103  Rejection Claims Bar Date.** The earlier of: (a) 30 Business Days following the entry of the order of the Bankruptcy Court approving such rejection, provided the effectiveness of such order has not been stayed; and (b) 30 Business Days following the Effective Date of the Plan.

    **1.104  Reorganized Debtor.** Each of the Debtors, on and after the Effective Date.

    **1.105  Reorganized Debtor Equity Interests.** Collectively, 100% of the common stock, membership interests, and partnership interests, as applicable, of each of the Reorganized Debtors, but not including the New Mercedes Common Stock.

    **1.106  Reorganized Mercedes.** Mercedes Homes, Inc., on and after the Effective Date.

    **1.107  Released Parties.** Each of the Administrative Agent, the First Lien Lenders, REIV, insiders of REIV, the Debtors, insiders of the Debtors, the Committee, the Land Ventures, insiders of the Land Ventures, and each of their respective current and former directors, officers, employees, representatives, members, affiliates, agents, counsel, financial advisors, and professionals. The term "insider" as used herein shall have the same meaning as set forth in Section 101(31) of the Bankruptcy Code.

    **1.108  Schedules.** The schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by a Debtor under Bankruptcy Code § 521 and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be supplemented or amended from time to time.

    **1.109  Secured Claim.** Any Claim (a) listed in the Schedules as a liquidated, noncontingent, and undisputed secured Claim, or (b) reflected in a proof of claim as a secured Claim, secured by a Lien on Collateral to the extent of the value of the Collateral, as determined in accordance with Bankruptcy Code § 506(a), or, if the Claim is subject to setoff under Bankruptcy Code § 553, net of the setoff.

    **1.110  Secured Tax Claim.** Any Claim of any governmental unit or associated political subdivision, including property taxes and accrued and unpaid interest under applicable law from the Petition Date, that is secured by a Lien on property of an Estate by operation of applicable law including every Claim for unpaid real, personal property, or *ad valorem* taxes.

    **1.111  Solid Wall.** Solid Wall Systems, Inc., a Florida corporation and one of the Debtors in these Chapter 11 Cases.

    **1.112  Space Coast.** Space Coast Truss, Inc., a Florida corporation and one of the Debtors in these Chapter 11 Cases.

    **1.113  Space Coast Truss Loan Documents.** That certain First Amended and Restated Master Loan Agreement (as amended, modified and supplemented from time to time) entered into on December 4, 1997, between Space Coast, as borrower and Bank of America, N.A., as lender, and all security agreements, mortgages and deeds of trust executed in connection therewith.

    **1.114  Space Coast Truss Secured Claims.** All Allowed Secured Claims arising under the Space Coast Truss Loan Documents, which shall consist of outstanding principal and accrued but unpaid

interest at the non-default rate, whether accrued before of after the Petition Date, and all fees, charges and costs arising thereunder, whether accrued before or after the Petition Date.

**1.115   Subordinated Debt Securities Claim.** Any Claim of the type described in and subject to subordination pursuant to § 510(b) of the Bankruptcy Code relating to Equity Interests or Equity Related Claims, and any Claim of the IRS arising out of or related to the Debtors' employee stock ownership plan, including the termination thereof.

**1.116   Suntree.** Suntree Office Complex, LLC, a Florida limited liability company and one of the Debtors in these Chapter 11 Cases.

**1.117   Suntree Loan Documents.** That certain Loan Agreement (as amended, modified and supplemented from time to time) dated April 28, 2006, between Suntree, as borrower and Sun Trust Bank, as lender, and all security agreements, mortgages and deeds of trust executed in connection therewith.

**1.118   Suntree Secured Claims.** All Allowed Secured Claims arising under the Suntree Loan Documents, which shall consist of outstanding principal and accrued but unpaid interest at the non-default rate, whether accrued before of after the Petition Date, and all fees, charges and costs arising thereunder, whether accrued before or after the Petition Date

**1.119   Texas Holding.** Mercedes Homes of Texas Holding Corp., a Florida corporation and one of the Debtors in these Chapter 11 Cases.

**1.120   Transferred Claims.** All Avoidance Actions of the Debtors, provided, however, that Transferred Claims shall not include any Avoidance Actions the Debtors or the Estates may have against any Released Party, and each of their respective current and former directors, officers, employees, representatives, affiliates, agents, counsel, financial advisors, and professionals. All Transferred Claims are preserved for the benefit of General Unsecured Claims and shall be transferred to the Creditor Trust in accordance with this Plan.

**1.121   Unsecured Deficiency Claim.** Any Claim by a Person holding a Secured Claim to the extent the value of such Creditor's Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, is less than the Allowed amount of such Creditor's Claims as of the Petition Date, after taking into account any elections made pursuant to Section 1111(b) of the Bankruptcy Code.

**1.122   Voting Deadline.** The date established by the Bankruptcy Court by which holders of Allowed Claims and Interests are determined for purposes of such holders' right to submit Ballots.

**C.     Rules of Interpretation.**
For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to

Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the holders of First Lien Lender Secured Claims, the holders of REIV Secured Claims, the Committee, and certain other creditors and constituencies. Each of the foregoing was represented by counsel who either: (a) participated in the formulation and documentation of, or (b) was afforded the opportunity to review and provide comments on, the Plan, Disclosure Statement, and the documents ancillary thereto. Accordingly, the general rule of contract construction known as "*contra preferentem*" shall not apply to the construction or interpretation of any provision of this Plan, Disclosure Statement, or any contract, instrument, release, indenture, exhibit, or other agreement or document generated in connection herewith.

**D.  Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. If a date on which a transaction may occur pursuant to the Plan or the Amended Operating Agreement shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**E.  Reference to Monetary Figures.**

All references in this Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

**F.  Exhibits.**

All Exhibits and the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date. After the Plan Supplement Filing Date, copies of Exhibits can be obtained upon written request to either: (a) Squire, Sanders & Dempsey L.L.P., Two Renaissance Square, 40 North Central Avenue, Suite 2700, Phoenix, Arizona 85004-4498 (*Attn: Brad A. Cosman, Esq., bcosman@ssd.com*), counsel to the Debtors; or (b) Mercedes Homes Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, www.kccllc.net/MercedesHomes, claims and noticing agent. To the extent any Exhibits and the Plan Supplement are inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of this Plan shall control.

## ARTICLE II
## CONSOLIDATION FOR VOTING AND DISTRIBUTION

**2.1  Consolidation for Voting and Distribution Purposes.**

In settlement and compromise of certain existing and potential disputes regarding Intercompany Claims and related matters, pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan treats the Debtors as comprising a single Estate solely for the purposes of classification of Claims, voting on the Plan, confirmation of the Plan, and making distributions under the Plan with respect to Allowed Claims against and Equity Interests in the Debtors. Such treatment shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or

consolidation of any legal entities, cause the transfer of any assets, nor result in the substantive consolidation of the Debtors; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities. Such treatment shall also not effect any cause of action available to any Debtor or the Debtors' estates, including without limitation the Transferred Claims. The above-described treatment serves only as a mechanism to effect a fair distribution of value to the creditors.

**2.2     Treatment of Guaranty Claims Against a Debtor.**

Any holder of a Claim against a Debtor and a Claim based on a guaranty of such base Claim given by a Debtor shall receive only a single recovery in respect of such Claims.

**2.3     Intercompany Claims.**

Except as otherwise provided in the Plan, Intercompany Claims and Administrative Claims between and among the Debtors shall, solely for purposes of receiving distributions under the Plan, be deemed resolved, and therefore not entitled to any distributions under the Plan, and shall not be entitled to vote on the Plan.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

**3.1     Unclassified Claims.**

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in accordance with Section 3.2 of this Plan and under Bankruptcy Code § 1129(a)(9)(A).

**3.2     Allowed Administrative Claims.**

**A. Generally.** Each Allowed Administrative Claim, including each Allowed Administrative Vendor Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Claim) shall be paid in full in Cash (or otherwise satisfied in accordance with its terms) on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (c) 30 days after the Claim is Allowed; and (d) any date on which the holder of the Claim and the Reorganized Debtors agree.

**B. Requests for Payment.** All requests for payment of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Claim) must be served on the Reorganized Debtors and filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. Any holder of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Claim) that fails to file and serve its request by the Administrative Claims Bar Date shall be forever barred from asserting its Administrative Claim against any of the Debtors or the Reorganized Debtors.

**3.3     Preserved Ordinary Course Administrative Claims.**

Each Allowed Preserved Ordinary Course Administrative Claim shall be paid in full in Cash at the Reorganized Debtors' election either: (a) in accordance with the terms and conditions under which the Claim arose; or (b) on such date on which the holder of the Claim and the Reorganized Debtors agree. Payments shall be made without further action by the holder of the Preserved Ordinary Course Administrative Claim.

**3.4     Allowed Priority Tax Claims.**

Any Allowed Priority Tax Claim shall be paid in full in Cash on the later of the Effective Date (or as soon after that date as practicable) and 30 days after the Claim is Allowed, but the Debtors or the Reorganized Debtors may elect to pay any Allowed Priority Tax Claim through regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of the Claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored General Unsecured Claim provided for by this Plan.  If the Debtors or the Reorganized Debtors so elect, the installment payments shall be made in equal quarterly installments of principal plus simple interest on the unpaid portion of the Allowed Priority Tax Claim accruing from the Effective Date at the rate of six percent per year. The first payment shall be made on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) 30 days after the Claim is Allowed, or as soon after than date as practicable; and (c) another date on which the holder of the Claim and the Debtors or the Reorganized Debtors agree. The Reorganized Debtors retain the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

**3.5     Professional Claims.**

Each Allowed Professional Claim shall be paid in full in Cash: (a) no later than three days after the Professional Claim is Allowed; (b) on any other terms the holder of an Allowed Professional Claim and the Debtors or the Reorganized Debtors may agree; or (c) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.  Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Reorganized Debtors its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within 60 days after the Effective Date.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in the Debtors.  A Claim or Equity Interest is placed in a particular Class for the purposes of voting on this Plan and of receiving distributions pursuant to this Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled prior to the Effective Date.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in Sections 507(a)(l) and 507(a)(8) of the Bankruptcy Code have not been classified and their treatment is set forth in Article III above.

**4.1     Class 1 – Priority Claims.**

Class 1 consists of all unsecured Claims entitled to priority under Section 507(a) of the Bankruptcy Code.

**4.2     Class 2 – Secured Tax Claims.**

Class 2 consists of all Secured Tax Claims.  Each holder of a Secured Tax Claim is considered to be in its own separate subclass within Class 2, and each such subclass is deemed to be a separate Class for purposes of the Plan.

**4.3     Class 3 – CDD Secured Claims.**

Class 3 consists of all CDD Secured Claims.

**4.4     Class 4 – First Lien Lender Secured Claims.**

Class 4 consists of all First Lien Lender Secured Claims.

**4.5     Class 5 – REIV Claims.**
Class 5 consists of two subclasses, and each such subclass is deemed to be a separate Class for purposes of the Plan. Subclass 5.A. consists of all REIV Secured Claims. Subclass 5.B. consists of all REIV Deficiency Claims.

**4.6     Class 6 – Space Coast Truss Secured Claims.**
Class 6 consists of all Space Coast Truss Secured Claims.

**4.7     Class 7 – Suntree Secured Claims.**
Class 7 consists of all Suntree Secured Claims.

**4.8     Class 8 – Miscellaneous Secured Claims.**
Class 8 consists of all Secured Claims, other than the Secured Claims in Classes 2, 3, and 4. Each holder of a miscellaneous Secured Claim is considered to be in its own separate subclass within Class 5, and each such subclass is deemed to be a separate Class for purposes of the Plan.

**4.9     Class 9 – General Unsecured Claims.**
Class 9 consists of all General Unsecured Claims.

**4.10    Class 10 – Subordinated Debt Securities Claim.**
Class 10 consists of all Subordinated Debt Securities Claims.

**4.11    Class 11 – Equity Related Claims.**
Class 11 consists of all Equity Related Claims.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

The treatment of Claims and Equity Interests as provided in this Article IV represents a compromise and full and final settlement, pursuant to Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, of the various Claims and Equity Interests of parties in interest in the Chapter 11 Cases.

**5.1     Class 1 – Priority Claims.**

**A. Impairment and Voting.** Class 1 is unimpaired by this Plan. All holders of Allowed Priority Claims in Class 1 are deemed to have accepted this Plan and shall not be entitled to vote on this Plan.

**B. Treatment.** Upon the later to occur of: (a) the Effective Date; (b) the date on which a Priority Claim is Allowed; or (c) the date on which such Priority Claim becomes due and payable according to its ordinary payment terms, each holder of an Allowed Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Priority Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Claim; or (b) such other treatment as to which the Debtors (or the Reorganized Debtors) and such Claimholder shall have agreed upon in writing, provided that such treatment is not more favorable than the treatment in clause (a) above. The Debtors' failure to object to any Priority Claim in the Chapter 11 Cases shall be without prejudice to the Reorganized Debtors' right to contest or otherwise defend against such Claim in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of the Reorganized Debtors) when and if such Claim is sought to be enforced by the Priority Claimholder.

5.2   **Class 2 – Secured Tax Claims.**

   **A. Impairment and Voting.** Class 2 is unimpaired by this Plan. All holders of Allowed Secured Tax Claims in Class 2 are deemed to have accepted this Plan and shall not be entitled to vote on this Plan.

   **B. Treatment.** Each Allowed Secured Tax Claim shall be paid in full in Cash by the Debtors and/or the Reorganized Debtors upon the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date on which an Allowed Secured Tax Claim becomes due under applicable non-bankruptcy law; (c) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (d) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (e) such date as the holder of such Claim and the Debtors and/or the Reorganized Debtors may agree.

5.3   **Class 3 – CDD Secured Claims.**

   **A. Impairment and Voting.** Class 3 is unimpaired by this Plan. All holders of Allowed CDD Claims in Class 3 are deemed to have accepted this Plan and shall not be entitled to vote on this Plan.

   **B. Treatment.** Any and all taxes and/or assessments that are levied and/or imposed by a CDD prior to the Effective Date and that are delinquent or due as of the Effective Date shall be paid in Cash on the Effective Date, consistent with the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law. Except as stated in the preceding sentence, and notwithstanding any other language contained herein, any and all taxes and/or assessments levied and/or imposed by a CDD at any time shall be paid when due under the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law; provided however, that the Debtor shall not be responsible for payment of any delinquent taxes of assessments for which they are not responsible under CDD resolution or other directives, and applicable non-bankruptcy law.

   Notwithstanding any language contained herein, any and all Liens for taxes and/or assessments levied and/or imposed by a CDD at any time constitute, and will at all relevant times in the future constitute, legal, valid, and binding first liens on the land against which levied and/or imposed until paid; shall continue to represent first priority governmental liens *pari passu* with ad valorem taxes and superior to any other lien; and shall run with the land. Also notwithstanding any language contained herein, all Liens for taxes and/or assessments levied and/or imposed by a CDD at any time are not disturbed or otherwise affected by this Disclosure Statement, the Plan, any order confirming the Plan, or any other order entered in this case or affiliated cases.

   To the extent the Debtors seek to sell or dispose of any real property prior to the Effective Date, and notwithstanding any language contained herein, such sale or disposition shall continue to be governed by this Court's April 30, 2009 "Final Order (A) Authorizing the Debtors to Sell Homes Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Establishing Escrow for Post-Petition Customer Deposits to Purchase Homes, and (C) Establishing Procedures for the Resolution and Payment of Lien Claims (D.E. #17)" (Doc. 593).

5.4   **Class 4 – First Lien Lender Secured Claims.**

   **A. Impairment and Voting.** Class 4 is Impaired by this Plan. All holders of Allowed First Lien Lender Secured Claims in Class 4 are entitled to vote and shall be solicited to vote on this Plan.

**B. Retention of Liens.** Holders of Allowed First Lien Lender Secured Claims in Class 4 shall retain their respective Liens on their respective Collateral, which Liens shall be senior to all other Liens and Claims.

**C. Treatment.** The First Lien Lender Secured Claims are Allowed in an amount of $140,000,000.00 plus interest, fees and charges accruing post-petition. On the Effective Date, in full and final satisfaction of Allowed First Lien Lender Secured Claims, the Reorganized Debtors shall execute and enter into the New Loan Documents and issue the New Notes to the holders of Allowed First Lien Lender Secured Claims.

**5.5   Class 5 – REIV Claims.**

**A. Impairment and Voting.** Class 5 is Impaired by this Plan. All holders of Allowed REIV Secured Claims and REIV Deficiency Claims in Class 5 are entitled to vote and shall be solicited to vote on this Plan.

**B. Treatment.**

Class 5A – Allowed REIV Secured Claims. On the Effective Date, holders of Allowed REIV Secured Claims shall receive, in full and final satisfaction of such Claims, 100% of the New Mercedes Common Stock.

Class 5B – Allowed REIV Deficiency Claims. In Consideration for the treatment of the Allowed REIV Secured Claims under this Plan and for the Releases of Claims against REIV set forth in Article 12.4 of this Plan, the holders of Allowed REIV Deficiency Claims shall waive such Claims on the Effective Date.

**5.6   Class 6 – Space Coast Truss Secured Claims.**

**A. Impairment and Voting.** Class 6 is Impaired by this Plan. All holders of Allowed Space Coast Truss Secured Claims in Class 6 are entitled to vote and shall be solicited to vote on this Plan.

**B. Retention of Liens.** Holders of Allowed Space Coast Truss Secured Claims in Class 6 shall retain their respective Liens on their respective Collateral, which Liens shall be senior to all other Liens and Claims.

**C. Treatment.** On the Effective Date, in full and final satisfaction of Allowed Space Coast Truss Secured Claims, the Reorganized Debtors shall (i) reinstate the Space Coast Truss Loan Documents(ii) use their commercially reasonable efforts to liquidate the Collateral securing the Allowed Space Coast Truss Secured Claims, (iii) remit all proceeds arising from such liquidation to the holders of Allowed Space Coast Truss Secured Claims in accordance with the terms of the Space Coast Truss Loan Documents, and (iv) grant a senior perfected Lien on all proceeds arising from such liquidation to the holders of Allowed Space Coast Truss Secured Claims.

**5.7   Class 7 – Suntree Secured Claims.**

**A. Impairment and Voting.** Class 7 is Impaired by this Plan. All holders of Allowed Suntree Secured Claims in Class 7 are entitled to vote and shall be solicited to vote on this Plan.

**B. Retention of Liens.** Holders of Allowed Suntree Secured Claims in Class 7 shall retain their respective Liens on their respective Collateral, which Liens shall be senior to all other Liens and Claims.

C. **Treatment.** On the Effective Date, in full and final satisfaction of Allowed Suntree Secured Claims, the Reorganized Debtors shall issue a new note to the holders of Allowed Suntree Secured Claims, which note having a face amount equal to the amount of the Allowed Suntree Secured Claim, shall bear a market rate of interest, and shall mature 18 months following the Effective Date. The Reorganized Debtors will use commercially reasonable efforts to sell the Collateral securing the Suntree Secured Claims after the Effective Date, and any proceeds generated by such sale shall first be applied to satisfy in full any outstanding amount of the Allowed Suntree Secured Claim.

**5.8    Class 8 – Miscellaneous Secured Claims.**

A. **Impairment and Voting.** Class 8 is unimpaired by this Plan. All holders of Allowed Miscellaneous Secured Claims in Class 8 are deemed to have accepted this Plan and shall not be entitled to vote on this Plan.

B. **Treatment.** Each holder of an Allowed Miscellaneous Secured Claim shall be paid in full and in Cash by the Debtors and/or the Reorganized Debtors upon the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such date as the holder of such Claim and the Debtors and/or the Reorganized Debtors may agree.

**5.9    Class 9 –General Unsecured Claims.**

A. **Impairment and Voting.** Class 9 is Impaired by this Plan. All holders of Allowed General Unsecured Claims in Class 9 are entitled to vote and shall be solicited to vote on this Plan.

B. **Treatment.** On the Effective Date, each holder of an Allowed General Unsecured Claims shall receive, in full and final satisfaction of its Claims against the Debtors, *and in full and final settlement and release of any Claims or causes of action against the Released Parties as set forth in Article 12.4 of this Plan*, its Pro Rata share of the Creditor Trust Interests.

In addition, on the Effective Date the Debtors shall transfer to the Creditor Trust, for the benefit of the holders of Allowed General Unsecured Claims, free and clear of any Liens or Claims: (i) the Effective Date Cash Payment; (ii) the right to receive the Post Effective Date Cash Payment; (iii) the right to receive the BANS Proceeds Allocation, and (iv) the Transferred Claims.

None of the Debtors, including their insiders (as that term is defined in the Bankruptcy Code), officers or directors, REIV, Non-Debtor Affiliates or Land Ventures, including without limitation Cambridge Community Developers, Inc., Cascades Community Developers, Inc., Christie Ranch Community Developers, L.P., Fern Meadows, L.L.C., Garden Community Developers, Inc., Harpers Mill Community Developers, LLC, Meadow Pointe Community Developers, Inc., Silver Leaf Community Developers, Inc., Strokes Community Developers, Inc., Sweetwater Community Developers, Inc., Swiss Pointe Community Developers, Inc., Tivoli Community Developers, Inc., Toulon Community Developers, Inc., and Windsor Lakes Community Developers, Inc., shall be entitled to receive a distribution as an Allowed General Unsecured Claimant.

**5.10   Class 10 – Subordinated Debt Securities Claims.**

   **A. Impairment and Voting.** Class 10 shall not receive or retain any property under this Plan. All holders of Allowed Subordinated Debt Securities Claims in Class 10 are deemed to have rejected this Plan and shall not be entitled to vote on this Plan.

   **B. Treatment.** Under Bankruptcy Code § 510(b), each Subordinated Debt Securities Claim is subordinated to all Claims senior or equal to the Claim represented by the Subordinated Debt Securities Claim. Holders of Subordinated Debt Securities Claims shall not receive or retain any rights, property or distributions on account of such Subordinated Debt Securities Claims under this Plan.

**5.11   Class 11 – Equity Related Claims.**

   **A. Impairment and Voting.** Class 11 shall not receive or retain any property under this Plan. All holders of Allowed Equity Related Claims in Class 11 are deemed to have rejected this Plan and shall not be entitled to vote on this Plan.

   **B. Treatment.** As of the Effective Date, all Equity Interests in the Debtors shall be canceled and extinguished without further action under any applicable law, regulation, order or rule. Holders of Equity Interests shall not receive or retain any rights, property or distributions on account of their Equity Interests under this Plan. Under Bankruptcy Code § 510(b), each Equity Related Claim is subordinated to all Claims or Equity Interests senior or equal to the Claim or Equity Interest represented by the Equity Related Claim. Holders of Equity Related Claims shall not receive or retain any rights, property or distributions on account of such Equity Related Claims under this Plan.

**ARTICLE VI**
**ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS OR EQUITY INTERESTS**

**6.1   Impaired Classes of Claims Entitled to Vote.**
Except as otherwise provided in any Final Order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan and Sections 6.3 and 6.5 of this Plan, holders of Claims in each Impaired Class are entitled to vote in their respective classes as a class to accept or reject this Plan.

**6.2   Classes Deemed to Accept the Plan.**
Classes 1, 2, 3 and 8 are Unimpaired by this Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted this Plan, and the votes of holders of Claims in such Classes therefore shall not be solicited.

**6.3   Acceptance By Impaired Classes.**
Classes 4, 5A, 5B, 6, 7 and 9 are impaired under this Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**6.4   Classes Deemed to Reject the Plan.**
Pursuant to Section 1126(g) of the Bankruptcy Code, Classes 10 and 11 are conclusively presumed to have rejected this Plan, and the votes of holders of Claims and Equity Interests in such Classes shall therefore not be solicited.

**6.5  Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**

If any impaired Class of Claims entitled to vote should not accept this Plan by the requisite statutory majorities provided in Section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm this Plan under Section 1129(b) of the Bankruptcy Code.

ARTICLE VII
<u>IMPLEMENTATION OF THE PLAN</u>

**7.1  Funding of the Plan.**

Funds to be used to make Cash payments under the Plan shall derive from the operation of the Debtors' business in the ordinary course prior to and after the Effective Date.

**7.2  Continued Corporate Existence.**

**A. The Debtors.** From and after the Effective Date, each of the Debtors will continue to exist as separate entities, with all the powers of a corporation, limited liability company, limited partnership or partnership, as applicable, under applicable law in the jurisdiction in which each applicable Debtor is incorporated or otherwise formed and pursuant to its articles of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws or other organizational documents are amended by this Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

**B. Amended and Restated Organizational Documents.** As of the Effective Date and without any further action by the stockholders, directors or members of the Debtors or the Reorganized Debtors, each of the Reorganized Debtors' respective certificates of incorporation, by-laws, limited liability company agreements, partnership agreements, operating agreements, and any similar agreements, as applicable, will be amended and restated substantially in the forms of the Amended and Restated Organizational Documents. The Amended and Restated Organizational Documents will also prohibit (to the extent required by Bankruptcy Code § 1123(a) and (b)) the issuance of non-voting equity securities. After the Effective Date, each of the Reorganized Debtors may amend their respective Amended and Restated Organizational Documents as permitted by applicable law.

**C. Non-Debtors.** There are certain Affiliates of the Debtors that are not Debtors in the Chapter 11 Cases. The continued existence, operation and ownership of such Non-Debtor Affiliates is a material component of the Debtors' businesses, and, as set forth in Article 12.1 of this Plan, all of the Debtors' equity interests and other property interests in such Non-Debtor Affiliates shall revest in the applicable Reorganized Debtor or its successor on the Effective Date.

**7.3  Reorganized Mercedes.**

On the Effective Date, Reorganized Mercedes shall execute the Reorganized Mercedes Bylaws and Reorganized Mercedes Certificate and shall authorize the issuance of the New Mercedes Common Stock to the holders of Allowed REIV Secured Claims without further order of the Bankruptcy Court. Immediately thereafter, Reorganized Mercedes shall be vested with all of the Reorganized Debtors' Equity Interests.

**7.4  Cancellation of Securities, Instruments and Agreements.**

On the Effective Date, except to the extent provided otherwise in this Plan, all securities, and all agreements, instruments, and other documents evidencing or governing any Equity Interests, will be automatically deemed terminated, canceled, and extinguished with respect to the Debtors and the Chapter

11 Cases (all without further action by any Person), and all obligations of the Debtors and their Estates under such instruments and agreements will be deemed fully and finally waived, released, canceled, extinguished, and discharged. Without limiting the foregoing, all prior existing management services agreements will be rejected and any rights arising under any such agreement will be waived, released, canceled, extinguished, and discharged, and treated as Equity Interests under Bankruptcy Code § 510(c) for all purposes under this Plan.

**7.5    Effectiveness of New Securities, Instruments, Agreements and Documents.**

On the Effective Date, all securities, instruments, agreements, and documents issued, entered into, delivered, or filed under this Plan, including, without limitation, the New Mercedes Common Stock, the New Notes, the New Loan Documents, the Plan Documents, and any security, instrument, agreement or document entered into, delivered, or filed in connection with any of the foregoing, will be deemed to become effective, binding, and enforceable in accordance with its respective terms and conditions.

**7.6    No Corporate Action Required.**

As of the Effective Date: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (b) the other matters provided for under, or in furtherance of, this Plan involving corporate action required of the Debtors, will be deemed to have occurred and become effective as provided in this Plan, and will be deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by the stockholders or directors of the Debtors.

**7.7    Officers and Directors.**

  **A.    Initial Board of Directors.** The initial board of directors of each of the Reorganized Debtors as of the Effective Date shall consist of those persons identified in the Plan Supplement.

  **B.    Initial Officers.** The officers of each of the Reorganized Debtors as of the Effective Date shall consist of those Persons identified in the List of Reorganized Officers to be filed with the Plan Supplement.

  **C.    Indemnification and Insurance.** The Reorganized Debtors will assume any pre-Petition Date indemnification obligations to any current or former directors and officers employed with the Debtors as of the Effective Date.

**7.8    Operations Pending Effective Date.**

Until the Effective Date, the Debtors will continue to operate their businesses, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

**7.9.    Dissolution of Committee.**

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (a) applications for Professional Claims or reimbursement of expenses incurred as a member of the Committee; and (b) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

**7.10.    BANS.**

From and after the Effective Date, the Reorganized Debtors shall use their best efforts to prosecute and monetize the commercially reasonable value of the BANS for the equal benefit of the Reorganized Debtors, the First Lien Lenders and the holders of Allowed General Unsecured Claims. The