## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>ALL CASES | JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |

### PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ENJOIN CONFLICTING STATE COURT PROCEEDINGS IN MUSCOGEE COUNTY, GEORGIA THAT INTERFERE WITH THIS COURT'S CONTINUING JURISDICTION OVER THIS LITIGATION

## I.    INTRODUCTION

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures.  As a result, drywall manufactured in China ("CDW" or "Chinese Drywall") was imported to the United States. "Sometime after installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses and the corrosion of appliances and certain other components of their homes.  Some homeowners also began to complain of headaches, nosebleeds, difficulty breathing and other physical afflictions believed to be caused by the Chinese drywall."[1]

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from defective Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009) (Rec. Doc. No. 1).  For more than one year, this MDL Court has worked

---

[1] Order appointing Special Master (Rec. Doc. No. 505) at 1.

tirelessly to manage this nationwide litigation and coordinate and oversee pretrial discovery for several class actions and thousands of individual cases.  In addition, the Court, through the vehicle of "Omni" complaints, has assisted the parties in bringing all interested and affected entities into the MDL litigation in a consistent and fair manner.[2]  During this time, the Court has resolved ten bellwether cases in Virginia and Louisiana,[3] which were intended to serve as a useful tool for all plaintiffs and defendants, as well as the Court.[4]

To accomplish these achievements, the Court appointed a Plaintiffs' Liaison Counsel and a Plaintiffs' Steering Committee ("PSC") to prepare and respond to pleadings and motions, engage in discovery, pretrial preparation and settlement, manage the docket, establish and administer a document depository, communicate with individual plaintiffs and their counsel, liaison with defendants and attend court appearances.[5]  The Court also appointed a Defendants'

---

[2] *See* Tr. Status Conf., June 24, 2010, at 4-5 (recognizing that Omni complaints serve as a vehicle to "effectively and efficiently" serve more than 500 defendants and to evaluate the "whole census").

[3] *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 09-6687 (E.D. Va.) (7 cases), Default Judgment (May 11, 2010) (Rec. Doc. No. 3013); *Hernandez v. Knauf Gips KG, et al.*, CA 09-6050 (E.D. La.) (1 case), Judgment (May 11, 2010) (Rec. Doc. No. 3).  Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[4] *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (Jun. 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar....  The reasons for acceptance by bench and bar are apparent.  If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

[5] *See* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel); Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel).

Liaison Counsel[6] and a Homebuilders and Installers Liaison Counsel[7] to assist in these efforts. In November, 2009, the Court appointed a Special Master "to explore opportunities for an ultimate resolution of the instant matter as to any and all interested parties," recognizing that "[i]t is apparent that some or all parties are interested in exploring a global resolution of the matter as it affects them at this stage of the proceeding."[8] In March, 2010, the Court appointed State and Federal Coordination Committees "to assist the Court, litigants and judicial system to facilitate coordination between this MDL and the various state court cases."[9] And, the Court appointed an Insurer Steering Committee as well as Co-Lead Counsel for the First-Party Insurer Subcommitee.[10]

Since the inception of the MDL, the Court has held monthly status conferences, attended by hundreds of counsel, and it has entered 24 Pretrial Orders and scores of other orders and minute entries. To date there have been almost 5,000 record entries in this matter.

In direct contravention of the painstaking and coordinated efforts of this MDL Court, Austin Gower, Esq., Don Barrett of Don Barrett, PA, Patrick W. Pendley of Pendley, Baudin & Coffin, and Dewitt Lovelace of Lovelace Law Firm, PA have filed a competing and conflicting nationwide class action settlement with defendant Lowe's Home Centers, Inc. in state court in Muscogee County, Georgia, entitled *Vereen v. Lowe's Home Centers, Inc.,* Case No. SU10-cv-

---

[6] *See* Pretrial Order No. 4 (appointing Defendants' Liaison Counsel).

[7] *See* Pretrial Order No. 18 (appointing Homebuilders and Installers Liaison Counsel).

[8] Rec. Doc. No. 505 at 4.

[9] *See* Pretrial Order No. 19.

[10] *See* Pretrial Order No. 20.

3

2267B (Super. Ct. Muscogee Cty.) (the "Georgia action" or "*Vereen*").[11]  The Georgia action

encompasses potentially tens of millions of class members who since the beginning of time

purchased, installed or had installed domestic or foreign-manufactured drywall, including

Chinese-manufactured drywall, on real property or who owned or resided on property where said

drywall was installed.  This sprawling class is comprised of all homeowners, tenants, builders,

suppliers and installers who have had any connection to any type of drywall, regardless of where

the drywall was manufactured.  Importantly, this class includes and overlaps with all of the

putative class members in the various Omni class actions already pending before this Court and it

interferes with the Court's jurisdiction.[12]

The state court class settlement in *Vereen* was filed in Muscogee County, Georgia as an

end-run around this MDL Court's jurisdiction and supervision over the Chinese Drywall

litigation, without proper notice to any of the putative class members in MDL 2047.  On July 27,

2010, the Muscogee County court preliminarily approved the class settlement with Lowe's,

certified a settlement class and scheduled a final fairness hearing.[13]

Attorneys Don Barrett and Dewitt Lovelace are class counsel in *Vereen* and they are also

counsel of record for at least 30 named representative plaintiffs in the *Gross* Omnibus action

pending before this MDL Court.  On August 3, 2010, Mr. Barrett filed notices of voluntary

dismissal of 30 plaintiffs' claims against Lowe's in light of the overlapping and conflicting

---

[11]  *See* Class Action Settlement Agreement and Release in *Vereen v. Lowe's Home Centers, Inc.*,Case No. SU-10-CV-2267B (Super. Ct. Muscogee Cty.), attached hereto as Exhibit "A."

[12]  *See* Omni Complaints:  *Payton, et al. v. Knauf Gips, KG, et al.*, No.09-7628; *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, No. 10-361; *Gross, et al. v. Knauf Gips, KG, et al.*, No. 09-6690; *Rogers, et al. v. Knauf Gips, KG, et al.*, No. 10-362; *Amato, et al. v. Liberty Mutual Insurance Company, et. al.*, Case No. 2:10-cv-932 (E.D.La.).

[13]  *See* Preliminary Approval Order in *Vereen*, attached hereto as Exhibit "B."

proposed class action settlement in *Vereen* in Muscogee County, Georgia.[14]  Neither Mr. Barrett

nor Mr. Lovelace sought court approval to dismiss their clients' claims against Lowe's in this

case.  On August 9, 2010, Mr. Barrett requested that PLC Russ Herman file similar notices of

voluntary dismissal of Lowe's for additional clients.[15]

Attorney Patrick W. Pendley, who is class counsel in *Vereen* and also serves on PSC

committees and has performed common benefit work in this MDL, requested that PLC Russ

Herman file similar notices of voluntary dismissal of Lowe's for four of his clients in *Gross, et

al. v. Knauf Gips, KG, et al.*, Case No. 09-5845:  Catherine Avant, Jefferey & Ella Engel, and

Marynell Green.[16]

Similarly, Attorney David P. Matthews asked PLC Russ Herman on August 4, 2010, to

file notices of voluntary dismissal of Lowe's for 15 of his clients in *Gross, et al. v. Knauf Gips,

KG, et al.*, Case No. 09-5845:  Marilyn D. Brand, Alice Carter, Antione C. Carter, Anthony &

Sherrie Foreston, Emily & Gregg Harris, Irene Jackson, Gilletto & Donna Leverette, Monica

Malone, Janretta C. Odoms-Lewis, Gretta Rogers, Penny Simmons, and Jessie Sylvester.[17]

---

[14]  *See* Notices of Voluntary Dismissal Without Prejudice of Defendant, Lowe's Home Centers, Inc. for plaintiffs Janice Alfred (Rec. Doc. No. 4770), Larry & Gwendolyn Bennett (Rec. Doc. No. 4771), Wayne G. Clark (Rec. Doc. No. 4772), Charles Coleman (Rec. Doc. No. 4773), Perry & Deborah Dixon (Rec. Doc. No. 4774), Geraldine Galloway (Rec. Doc. No. 4775), Patricia Stevens Green (Rec. Doc. No. 4776), Jeffrey & Lauren King (Rec. Doc. No. 4777), Lee & Terri Maranoci (Rec. Doc. No. 4778), David & Betty Martin (Rec. Doc. No. 4780), Virgil & Rosetta Mitchell (Rec. Doc. No. 4779), Valerie Sherrod (Rec. Doc. No. 4781), Robert & Sandra Taylor (Rec. Doc. No. 4782), Freddie & Glenda Thiroux (Rec. Doc. No. 4783), John Volland (Rec. Doc. No. 4784), Curtis & Monsue Walley (Rec. Doc. No. 4785), Eugene & Yvonne Washington (Rec. Doc. No. 4786), Samuel L. Webster (Rec. Doc. No. 4787), and William & Joan Wiley (Rec. Doc. No. 4788).

[15]  *See* Proposed Notices of Voluntary Dismissal and Letters to Russ Herman authorizing the filing of same, collectively attached hereto as Exhibit "C."

[16]  *See* Proposed Notices of Voluntary Dismissal and Letters to Russ Herman authorizing the filing of same, collectively attached hereto as Exhibit "D."

[17]  *See* Proposed Notices of Voluntary Dismissal and Letters to Russ Herman authorizing the filing of same, collectively attached hereto as Exhibit "E."

The PSC has filed herewith a Rule to Show Cause why Messrs. Barrett, Lovelace, Pendley, Matthews and any other class counsel in *Vereen*, as well as counsel for Lowe's, William B. Gaudet of Adams and Reese, LLP, should not appear before this Court to explain why the actions against Lowe's were dismissed in this MDL and why these attorneys should not be enjoined from interfering with this Court's jurisdiction. In conjunction with the requested Order to Show Cause, the PSC is moving the Court for the entry of an Order enjoining the Georgia state court class action settlement because it interferes with and erodes this MDL Court's coordinated and consistent supervision over and management of the Chinese Drywall litigation.

## II.   PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.   MDL Proceedings and Settlement Efforts

The impetus for this complex multidistrict litigation began 18 months ago when scores of individual and class action lawsuits were brought in several federal district courts in the Gulf Coast and mid-Atlantic regions of the United States by property owners whose homes or other properties were damaged by defective drywall manufactured in China and imported into this country.

When Chinese Drywall is installed in certain structures and climates, it creates corrosive environments that wreak havoc on homes and properties by producing obnoxious, foul-smelling odors and damaging electrical and other parts of the structures, appliances and home furnishings.[18] Numerous governmental agencies have studied this drywall and found it to be defective. Recently, the Consumer Products Safety Commission ("CPSC") determined that CDW must be replaced along with affected electrical wiring and certain other damaged

---

[18] Findings of Fact and Conclusions of Law in *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 09-6687 (E.D. Va.) (Rec. Doc. No. 2380) at 12-17 and *Hernandez v. Knauf Gips KG, et al.*, CA 09-6050 (E.D. La.) (Rec. Doc. No. 2713) at 8-15.

property.[19]  The bellwether trials before this Court have similarly found that CDW "has to be remediated" since "by any recognized standard, high levels of corrosive gases are present in the representative homes.  This condition is clearly irritating and harmful to residents and destructive to property."[20]

In order to bring all interested parties into this litigation in a fair and consistent manner, the PSC has undertaken the enormous burden and concomitant expense of preparing, filing, translating and serving the various Omni and related complaints in intervention to attract and aggregate thousands of plaintiffs and their associated defendants and insurers into this MDL. Absent the Omni complaints, few plaintiffs, if any, would have paid to perfect service of process on their foreign manufacturers under the Hague Convention.  These pleadings were intended to close the circle of liability by engaging the insurers and other financiers of the defendants directly in this litigation.  These efforts aggregated the "mass" in this mass tort which is contributing to resolve this litigation.

As a consequence of these tremendous efforts, the PSC and the Court are aware that certain defendants and other entities are now interested in exploring settlement of their liability exposure.   Some defendants are actively engaged in settlement discussions.

**B.**     **Conflicting Georgia State Court Action**

Attorneys Barrett and Pendley and others negotiated and filed a problematic class action settlement agreement in the Superior Court of Georgia, Muscogee County, proposing to release all claims against Lowe's Home Centers, Inc. of any persons who, since the beginning of time

---

[19] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2010 WL 1445684, *7 (E.D. La. Apr. 8, 2010) (referencing the CPSC's "Interim Guidance-Identification of Homes with Corrosion from Problem Drywall (January 28, 2010).").

[20] Findings of Fact and Conclusions of Law in *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 09-6687 (E.D. Va.) at 26.

until preliminary approval of the settlement, "purchased, installed or had installed on real property" any defective drywall manufactured "domestically, in China or in any other country" or any related product "manufactured, imported, distributed, delivered, supplied, inspected, marketed, installed and/or sold" by Lowe's, or of any persons who "were owners and/or residents on such real property" (the "Georgia action").[21] This sprawling class encompasses potentially tens of millions of class members, and yet the proposed settlement provides very few benefits and only a maximum aggregate "fund" of $6,500,000 that will be distributed to class members in the form of Lowe's gift cards having values ranging from $50 - $2,000 (which may be reduced depending on the number of claimants). The form of the benefit alone is suspect.[22] In some cases a cash payment not to exceed $2,500 may be provided, but only where costs of remediation or personal injury can be shown.[23] Again, the payment is not necessarily tied to the loss or injury.

Another serious problem with the *Vereen* settlement is that the agreement generously

---

[21] *See* Class Action Settlement Agreement in *Vereen,* Exhibit "A" hereto, at 3 & 6.

[22] In the Class Action Fairness Act of 2005 ("CAFA"), "Congress required heightened judicial scrutiny of coupon-based settlements based on its concern that in many cases 'counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value.'" *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006); *Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998, at *1 (N.D. Cal. Nov. 21, 2005) (CAFA "put significant limits on so-called 'coupon settlements' which produce hardly any tangible benefits for the members of the plaintiff class, but generate huge fees for class attorneys."); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007) (coupon settlements problematic because "they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation."), *citing* Christopher R. Leslie, "The Need to Study Coupon Settlements in Class Action Litigation," 18 GEO. J. LEGAL ETHICS 1395, 1396-97 (Fall 2005); *see also Fleury v. Richemont North America, Inc.*, 2008 WL 3287154, *2 (N.D. Cal. Aug. 6, 2008) (describing coupon-based settlements); Steven B. Hantler and Robert E. Norton, "Coupon Settlements: The Emperor's Clothes of Class Actions," 18 GEO. J. LEGAL ETHICS 1343, 1348 (Fall 2005) ("the value of the coupons generally has no relationship to the alleged injury.").

[23] *Vereen* Settlement Agreement and Release, Exhibit "A" at 8-10.

allows for attorneys' fees of 30%, up to the amount of $2.166 million,[24] and provides class counsel with a $1 million administrative fund to use however counsel sees fit (except that counsel is responsible for the cost of notice), with no reversion to class members.[25] The Georgia action includes all of the plaintiffs before this Court in MDL 2047 and serves as an interference with and a roadblock to this Court's management of and supervision over the resolution of CDW cases.

Class counsel in the Georgia action are also counsel to named class representatives in the *Gross* action and clearly have a conflict of interest. They have attempted to dismiss the cases of their clients who agreed to serve as class representatives in this MDL. The improper attempts of these counsel to impede the purpose of the MDL Court should be enjoined.

## II.   ARGUMENT

### A.   This MDL Court May Properly Enjoin the State Court Proceedings in *Vereen v. Lowe's Home Centers, Inc.* as Necessary in Aid of its Jurisdiction Over this Complex Litigation

The MDL Court's fundamental authority vis-à-vis state courts derives from the Supremacy Clause of the United States Constitution, which provides that: "This Constitution, and the laws of the United States which shall be made in Pursuance thereof. . .shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Congress has since provided statutory constructs delimiting the ability of the federal district courts to protect their authority over competing state court rulings.

---

[24] This provision of the settlement violates CAFA, 28 U.S.C. § 1712(a), which provides that: "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed."

[25] *Vereen* Settlement Agreement and Release, Exhibit "A" at 19-20.

Pursuant to the All Writs Act, 28 U.S.C. § 1651, the MDL Court has the authority to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." Under the All Writs Act, the MDL Court has the power to protect its continuing jurisdiction over complex litigation and ongoing global settlement efforts from competing state court litigation that threatens to derail the achievements of the Court and that infringes upon the rights of class members before the Court.

The Anti-Injunction Act, 28 U.S.C. §2283, a complement to the All Writs Act, also empowers the MDL Court to enjoin state court proceedings where "necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Courts liberally invoke the "necessary in aid of its jurisdiction" exception "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2nd Cir. 1985) (same); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982) (same); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.&S.D.N.Y. 1990) (same); Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U. Chi. L. Rev. 717, 754 (1977) ("necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory."); *In re Diet Drugs*, 282 F.3d 220, 235 (3rd Cir. 2002) (recognizing "a category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court"—namely, where "a federal court [is] entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts....").

An injunction against competing state court proceedings is appropriate to allow the

10

federal court to "legitimately assert comprehensive control over complex litigation," *United States v. International Brotherhood of Teamsters*, 907 F.2d 277, 281 (2nd Cir. 1990), especially "where a federal court is on the verge of settling a complex matter, and state court proceedings undermine its ability to achieve that objective," *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2nd Cir. 1990). *See Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 204 (3rd Cir. 1993) (in complex class action that was also an MDL where the court had expended substantial time and resources and global settlement was imminent, injunction prohibiting the prosecution of a competing state class action was affirmed, noting that foreign action "would be disruptive to the district court's ongoing settlement management[,]" "would jeopardize the settlement's fruition[,]" and would "present[] a likelihood that [class] members ... [would] be confused as to their membership status in the dueling law suits."); *Diet Drugs*, 282 F.3d at 235 (finding "the complexity of the case to be a substantial factor in justifying the injunction"); *Corrugated Container*, 659 F.2d at 1334 (upholding validity of injunction issued by district court overseeing multidistrict litigation against actions by same plaintiffs in state court, as necessary in aid of district court's jurisdiction); *Newbe v. Enron Corp.*, 338 F.3d 467, 474-75 (5th Cir. 2003) (where "injunctions sought in state court threatened to interfere with the federal court's orderly handling of the massive federal litigation," All Writs Act properly invoked); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (to protect its discovery orders, federal court has "power under the All Writs Act" to enjoin state court litigation and "'to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction'"), *quoting United States v. New York Telephone*, 434 U.S. 159, 173 (1977); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992) (approving settlement barring competing actions in state court alleging claims similar to those in the federal action); *White v. National Football League*,

11

41 F.3d 402, 409 (8th Cir. 1994) ("the ability to facilitate ... settlement by enjoining related suits of absent class members is ancillary to jurisdiction over the class action itself"), *cert. denied*, 515 U.S.1137 (1995); *James v. Bellotti*, 733 F.2d 989, 994 (1st Cir. 1984) (provisionally approved settlement justifies injunction against competing state court cases); *In re Granada Partnership Sec. Litig.*, 803 F.Supp. 1236, 1246 (S.D. Tex. 1992) (enjoining "commencement, continuance and/or prosecution of any and all proceedings in federal or state court" by class members in connection with preliminary and final approval of class settlement); *Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. at 37 ("An injunction of all proceedings is necessary to implement the terms of the settlement and to protect the court's jurisdiction over the class action.").

In *Baldwin-United*, a consolidated, multidistrict, class action involving more than 100 federal lawsuits, the Second Circuit upheld an injunction issued by the MDL court that prohibited any person with knowledge of the court's order from "commencing any action or proceeding" against any of the defendants in the MDL that might "in any way affect the right of any plaintiff or purported class member in any proceeding under" the MDL. *Baldwin-United*, 770 F.2d at 331. Competing state actions were found to "frustrate the district court's efforts to craft a settlement" in that litigation. *Id.* at 337. Thus, in recognition of the "utility of the multidistrict forum [as] ideally suited to resolving ... broad claims," and in order to protect its ability to settle complex litigation, the court held that the All-Writs Act empowers an MDL court to issue an injunction against actions in state court "even before a federal judgment is reached...." *Id.* at 335, 337 & 338. *See also In re School Asbestos Litig.*, 1991 WL 61156, *1-*2 (E.D. Pa. Apr. 16, 1991), *aff'd mem.*, 950 F.2d 723 (3rd Cir. 1991) ("[W]here the potential for resolution is gaining momentum ... this court's ability to oversee a possible settlement would be 'seriously impaired' by the continuing litigation of parallel state actions....").

Courts have recognized that the jurisdiction of a multidistrict court or a class action

proceeding is "analogous to *in rem* actions given their magnitude and complexity." *Joint E. & S. Dist. Asbestos*, 134 F.R.D. at 38; *Baldwin-United*, 770 F.2d at 337 (class action proceeding was "so far advanced that it was the virtual equivalent of a res over which the district judge required full control."); *Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered"); *Corrugated Container*, 659 F.2d at 1334-35 (injunction proper because "complicated antitrust action ... required a great deal of the district court's time and necessitate[d] its ability to maintain a flexible approach in resolving the various claims of the many parties.").   Under these circumstances, an injunction against parallel or conflicting state court proceedings would be proper, "because the 'exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached,' [and] the federal court is empowered to enjoin any state court proceeding affecting that res." *Baldwin-United*, 770 F.2d at 336, *quoting Kline v. Burke Construction Co.*, 260 U.S. 226, 229 (1922).

## B.   This MDL Court Has a Duty to Act as Efficiently as Possible and Prohibit Duplicative Efforts That Impede the Court's Management of the Litigation

In consideration of the fact that the districts court's power to control multidistrict litigation is derived by statute, 28 U.S.C. § 1407, courts have held that "with that power comes the duty to exercise it as efficiently as possible." *Winkler*, 101 F.3d at 1202; *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1161 (7th Cir. 1984) (en banc), *rev'd in part on other grounds*, 470 U.S. 373 (1985).  "Indeed, an express purpose of consolidating multidistrict litigation for discovery is to conserve judicial resources by avoiding duplicative rulings." *Winkler*, 101 F.3d at 1202; *Matter of Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir. 1996).  Thus, "[w]here a litigant's success in a parallel state court

13

action would make a nullity of the district court's ruling[s], and render ineffective its efforts effectively to manage the complex litigation at hand, injunctive relief is proper." *Winkler*, 101 F.3d at 1202.

### C.   In the Context of a Class Action the Court has Authority to Enjoin Parties Before it

In the context of a class action the court also has authority under Fed.R.Civ.P. 23(d)(2) to enjoin parties before it from proceeding with actions that are in derogation of the court's orders. "A district court has both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).  The operative consideration in issuing Rule 23(d)(2) corrective and injunctive orders[26] is the court's unique fiduciary role to protect the legal rights and interests of class members, and its institutional interest in controlling "the fair conduct of the action."  For example, in *Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir. 1985), the court approved the restriction on defendant's telephone campaign to solicit opt-outs.  In *Impervious Paint Indus. Inc. v. Ashland Oil*, 508 F. Supp. 720 (W.D. Ky. 1981), *appeal dismissed without op.*, 659 F.2d 1081 (6th Cir. 1981), defendant's efforts to sabotage the class notice through direct communications with class members were held to be precisely the "exceptional circumstances" which would justify the imposition of a prior restraint on communications with class members.

Thus, this Court has ample authority to properly prohibit the *Vereen* class counsel from undertaking an effort to improperly interfere with this Court's supervision over the Omni class

---

[26] Rule 23(d)(2) orders are typically issued as case management orders, not as classic injunctions under Rule 65. They can thus be requested and obtained expeditiously, without the full evidentiary panoply that attends injunction practice. As recognized by the Eleventh Circuit in *Kleiner, supra*, a more relaxed standard applies with respect to findings where a court issues an order pursuant to Rule 23(d) rather than on a Rule 65 injunction motion, and where the order takes the form of a directive to counsel as party's agent, and binds the party in his or her capacity as counsel's principal. *See id.*, 751 F.2d at 1201.

14

actions. *See Phillips Petroleum co. v. Shutts*, 472 U.S. 797, 810-813 (1985) (due process rights of class members include "the right to intelligently and individually choose whether to continue in a suit as class members"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) ("the right to participate, or to opt-out, is an individual one and should not be made by the class representative or the class counsel"); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 412 (2nd Cir. 1975) ("opting out of the class, like the decision to participate in it, must be an individual decision"). *See also* William B. Rubenstein, Alba Conte and Herbert B. Newberg, 5 NEWBERG ON CLASS ACTIONS, §16.16 (4th ed. updated June 2010) ("The decision to exercise the right of exclusion in a Rule 23(b)(3) action is an individual decision on each class member and may not be usurped by the class representative or class counsel.").

As this Court is aware, ongoing global settlement negotiations have been proceeding. Where counsel, such as Barrett and Pendley and others for class representatives in this MDL litigation, seek to engage in "satellite" litigation interfering with the MDL Court's disposition of the case, this Court has more than ample authority to act. *See Arjomand v. Metropolitan Life Ins. Co.*, 77 Fed. Appx. 121, 122, 2003 WL 22300867, *1 (3rd Cir. Oct. 8, 2003); *Newbe v. Enron*, 338 F.3d at 473-74 (All Writs Acts applied to proceedings, including ex parte state court proceedings, that threatened to interfere with federal court's pretrial orders or determinations in multidistrict securities fraud action).

**D.     This MDL Court Has Inherent Authority to Manage its Affairs and Control its Docket Expeditiously**

Even beyond the All Writs Act, "[t]he concept that district courts exercise procedural authority outside the explicit language of the rules of civil procedure is not frequently documented, but valid nevertheless." *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 651 (7th Cir. 1989). Indeed, "a district court's ability to take action in a procedural

context may be grounded in 'inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *G. Heileman*, 871 F.2d at 651, *quoting Link v. Wabash R.R.*, 370 U.S. 626 (1962). Certainly, this Court is vested with the power to manage the resolution of this litigation.

"The Supreme Court has long held that 'the inherent powers of federal courts are those which 'are necessary to the exercise of all others.'" *G. Heileman*, 871 F.2d at 651 n.3, *quoting Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980). "Inherent authority remains the means by which district judges deal with circumstances not proscribed or specifically addressed by rule or statute, but which must be addressed to promote the just, speedy, and inexpensive determination of every action." *G. Heileman*, 871 F.2d at 653. In *G. Heileman*, the district court sanctioned the corporate defendant for failing to send a corporate representative to settlement conference as ordered. The Seventh Circuit held that the district court did not abuse its discretion by ordering a represented litigant to appear before it in person at the pretrial conference to discuss the posture and settlement of the case. *Id.* at 655.

Federal Rule of Civil Procedure 83 provides:

> (b) Procedures When There is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district....

Fed.R.Civ.P. 83(b). Thus, Rule 83 also provides authority for the Court to issue the order sought here.

"A federal court certainly has the power to issue any order necessary to preserve its ability to manage and adjudicate a case or controversy properly before it. Without such power, the federal judiciary would be crippled." *In re Novak*, 932 F.2d 1397, 1403 (11th Cir. 1991). The

16

Eleventh Circuit in *Novak*, explained "inherent power" as "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 1406, *quoting Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962). "Such powers are 'essential to the administration of justice.'" *Novak*, 932 F.2d at 1406, *quoting Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987).

In the present case, the Court's inherent power and control over the litigation and the settlement process has been, and will continue to be, crippled by the proceedings in the Georgia action. As such, this Court <u>must</u> maintain control over the parties, their counsel, the class actions and absent class members.

**IV      CONCLUSION**

The PSC's limited request is well established. The facts supporting the request are beyond dispute. The Georgia action encompasses all of the plaintiffs before this Court and interferes with this MDL Court's supervision over the Chinese Drywall litigation, forcing the PSC to seek relief under the All Writs Acts and under this Court's inherent authority as a Federal Court. As such, this Court must invoke its authority under the All Writs Act and enjoin the Georgia action from continuing.

<div style="margin-left: 40%;">

Respectfully submitted,

</div>

Dated: August 9, 2010

<div style="margin-left: 40%;">

/s Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

</div>

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Steering Committee's Memorandum of Law in Support of its Motion to Enjoin Conflicting State Court Proceedings in Muscogee County, Georgia That Interfere With this Court's Continuing Jurisdiction over this Litigation has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 9th day of August, 2010.

Additionally, a copy of the foregoing Plaintiffs' Steering Committee's Memorandum of Law in Support of its Motion to Enjoin Conflicting State Court Proceedings in Muscogee County, Georgia That Interfere With this Court's Continuing Jurisdiction over this Litigation will be served via FedEx to the following parties, on the 10th of August, 2010:

The Honorable Bobby Peters
Superior Court Judge
100 10th Street
Columbus, GA 31901

Austin Gower, Esquire
1425 Wynnton Road
Columbus, GA 31906

Don Barrett, Esquire
Don Barrett, PA
404 Court Square
Lexington, MS 39095

Patrick W. Pendley, Esquire
Pendley, Baudin & Coffin, LLP
24110 Eden Street
Plaquemine, LA 70764

Witt Lovelace, Esquire
Lovelace Law Firm, PA
12870 US Hwy. 98 West
Miramar Beach, FL 32550

Jannea S. Rogers, Esquire
Adams and Reese, LLP
11 N. Water Street, Ste. 23200
Mobile, AL 36602

William B. Gaudet, Esquire
Francis V. Liantonio, Jr., Esquire
Adams and Reese, LLP
701 Poydras Street, Ste. 4500
New Orleans, LA 70139

David P. Matthews, Esquire
Matthews & Associates
2905 Sackett Street
Houston, TX 77098

/s/ _____
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*