UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSIANA

-----------------------------------------------------------------x
IN RE:  CHINESE MANUFACTURED            :      MDL No. 2047
DRYWALL PRODUCTS LIABILITY              :
LITIGATION                              :      SECTION:  L
-----------------------------------------------------------------x
THIS DOCUMENT RELATES TO:               :      JUDGE FALLON
                                        :
09-cv-4115, 09-cv-4117, 09-cv--4119, 09-cv-4324, :   MAG. JUDGE WILKINSON
09-cv-6690, 09-cv-7628, 10-cv-0720      :
-----------------------------------------------------------------x

**OPPOSITION OF KNAUF PLASTERBOARD (TIANJIN) CO., LTD., KNAUF PLASTERBOARD (WUHU) CO., LTD., GUANGDONG KNAUF NEW BUILDING MATERIALS PRODUCTS CO., LTD. AND KNAUF GIPS KG TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION TO COMPEL PRODUCTION OF KNAUF DEFENDANT DOCUMENTS**

Defendants Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd. ("Wuhu"), Guangdong Knauf New Building Materials Products Co., Ltd. ("Dongguan") and Knauf Gips KG ("Gips") (collectively the "Knauf Defendants") submit this opposition to the motion of the Plaintiffs' Steering Committee ("PSC") for sanctions and to compel production of Knauf Defendant documents.[1]

## INTRODUCTION

The PSC raises one issue in the motion to compel that requires this Court's action. The PSC seeks discovery from the custodial files of certain employees of Knauf entities who are not parties to this litigation. We acknowledge that this Court already has held that Gips is subject to

---

[1]  The Knauf Defendants are filing this opposition only in the actions in which they have been served.

32015514.DOCX

discovery under the Federal Rules of Civil Procedure. [MDL Docket No. 404]. Nevertheless because this discovery involves foreign entities that are not parties to the litigation, we have told the PSC that Gips needs to preserve its position that under United States treaty obligations it is impermissible to take discovery of foreign entities other than through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention"). Consequently, Gips objects to discovery of non-party foreign entities other than through the Hague Convention for the reasons previously stated in its memorandum in support of its motion for a protective order to require use of the Hague Evidence Convention. [MDL Docket No. 252]. *See* Point I.

The remainder of the PSC's motion is baseless. As we demonstrate below:

- The PSC did not meet and confer concerning documents that were allegedly redacted by the Knauf Defendants. In fact, the "redactions" were pictures which, due to a technical error in converting the documents to a compact disc for production to the PSC, showed up black. Had the PSC conferred on this issue, it could have been resolved in five minutes without a motion. *See* Point II.

- The PSC's allegations of a "document dump" are unfounded. Federal Rule of Civil Procedure 34 and the agreed Scheduling Order for Jurisdictional Discovery, which this Court approved on July 16, 2010 ("Scheduling Order") [MDL Docket No. 4440] permit the production of documents "as they are kept in the usual course of business" and do not require that documents be segregated according to request. The Knauf

Defendants have fully complied with the Federal Rules and the Scheduling Order. *See* Point III.

- The allegation that the Knauf Defendants have delayed discovery is untrue.  Prior to the *Germano* and *Hernandez* trials, the parties focused their efforts on producing documents from the Chinese Knauf Defendants:  KPT, Wuhu and Dongguan.  After the *Hernandez* trial, the parties focused on document production from Gips.  In this connection, while the PSC agreed to search terms for electronically stored information ("ESI") with respect to the Chinese production in December 2009, the PSC did not reach a corresponding agreement with respect to search terms for Gips until July 16, 2010.  The PSC's attempt to lay blame on Gips for the failure to agree earlier to search terms for the German production is inaccurate.  Moreover, given that the search terms were first agreed upon on July 16, it will take four to five months to complete the new production.  *See* Point IV.

- The PSC's assertion that the Knauf Defendants are unwilling to provide witnesses for depositions also is inaccurate.  Actually, the Knauf Defendants have said the following:  (1) they are willing to produce 30(b)(6) witnesses prior to completion of document production; (2) with respect to such 30(b)(6) witnesses, the Knauf Defendants are willing to undertake the risk that, for good cause shown, the PSC or HSC may be able to take a second deposition if later produced documents require in fairness a second opportunity to depose the witness; (3) for non-30(b)(6) witnesses, the Knauf Defendants are not willing to expose the witnesses to multiple depositions

and, for that reason, they will offer those witnesses after production of their files are complete, and (4) given that the search terms were just agreed on July 16, it will take some time before we can schedule non-30(b)(6) witnesses. In the meantime the depositions of three 30(b)(6) witnesses are scheduled for August 18-19 (Gips), September 20-21 (Gips), and September 27-28 (Knauf Insulation GmbH), and Gips has just offered a fourth witness on October 19-20. *See* Point V.

As the Court knows, the undersigned counsel (Kaye Scholer LLP) was recently retained in this litigation in mid-May. As the Court also knows – and we think the PSC knows – the undersigned counsel have done much to change the direction of the litigation, including a more proactive approach both to discovery and to exploring the potential for resolution. The undersigned counsel respectfully suggest that the hyperbole and rhetorical excesses in the PSC's brief, including the unwarranted request for sanctions, is counterproductive. We are and have been working with the PSC to reach common ground. To be sure, there will be good faith disputes. Those disputes should be presented to the Court in a dignified fashion.

I.  **THE PSC SHOULD BE REQUIRED TO OBTAIN DISCOVERY FROM NON-PARTY FOREIGN KNAUF ALLIATES THROUGH THE HAGUE EVIDENCE CONVENTION**

Contrary to the PSC's suggestion (PSC Mem. at 8, 15), the Knauf Defendants have agreed to search their files for documents responsive to the PSC's document requests. The Knauf Defendants have only objected to the PSC's attempt to require non-party foreign affiliates of the Knauf Defendants to produce documents on the ground that such discovery should proceed through the Hague Evidence Convention. This arises in two situations.

First, the PSC has asked for the custodial file of an individual who is employed by Knauf Insulation GmbH ("Insulation"), a Germany company. While the Knauf Defendants mistakenly believed that Insulation had not been served in the MDL, the PSC states that Insulation is a party to one case. Consequently, if the PSC wants documents from Insulation, the PSC should serve a discovery request on it. Currently, there are no discovery requests to Insulation pending in the MDL. We note, however, that when Insulation receives a discovery request it will respond. Insulation has been served with discovery in Alabama state court and has agreed to produce documents relating to Chinese drywall in advance of Insulation's 30(b)(6) deposition on September 27-28, 2010.

Second, the PSC has demanded that the Knauf Defendants produce the custodial file of three witnesses whose custodial files are in maintained in Knauf entities that are not defendants in the litigation and whose files are in Turkey, France and the United Kingdom. Gips acknowledges that this Court already has ordered that it is subject to discovery under the Federal Rules of Civil Procedure. [MDL Docket No. 404]. Moreover, Gips does not deny that it can obtain the documents upon request of the non-parties if it is ordered to do that.[2] Nevertheless,

---

[2] Gips's ability to obtain documents has no bearing on the alter-ego issues that are raised in this litigation. As the PSC's cases make clear, "[t]here is a crucial distinction between ability to compel production of documents [from another company] and liability for [that company's] acts. The latter may require [the party] to actually control or manage [the other company], but the former does not." *Ferber v. Sharp Electronics Corp.*, 1984 WL 912479, at *2 (S.D.N.Y. Nov. 28, 1984) (quoting *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1153 (N.D. Ill. 1979)). For that reason, it is not necessary for the Knauf Defendants to provide a point-by-point rebuttal to the materials that the PSC cites. Suffice it to say that a full record on alter-ego issues will show that Gips is not the parent or a direct or indirect shareholder of KPT, Wuhu or Dongguan. Nor does it control the day-to-day operations of

Gips must preserve its position that discovery of non-party foreign entities should proceed under the Hague Evidence Convention to preserve defenses in Germany to enforcement of any judgments that plaintiffs might obtain. For these reasons, Gips incorporates by reference its prior briefing in support of its motion for a protective order. [MDL Docket No. 252].

## II. THE KNAUF DEFENDANTS HAVE NOT PRODUCED REDACTED DOCUMENTS

The PSC contends (without having raised it in the parties' meet and confer) that the Knauf Defendants' document productions include "many … fully redacted documents with no explanations for the redactions." PSC Mem. at 15. In fact, none of the documents identified by the PSC have been redacted – there was simply a technical error in converting pictures from documents to a compact disc. The PSC could have learned this by addressing their concerns to the Knauf Defendants before filing their motion. Now that the PSC has raised the issue, the Knauf Defendants have provided the PSC with copies of the documents which correct the technical error.

## III. THE KNAUF DEFENDANTS HAVE COMPLIED AND WILL CONTINUE TO COMPLY WITH THEIR OBLIGATIONS TO PRODUCE DOCUMENTS AS THEY ARE KEPT IN THE USUAL COURSE OF BUSINESS

Federal Rule of Civil Procedure 34 states that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the

---

those companies. Moreover, the decision of the European Court of Justice, upon which the PSC primarily relies, is not relevant to the issues in this litigation. That decision relates to activity in Europe between 1992 and 1998 and addresses whether certain entities constitute an economic unit under European Union competition law. It does not involve the business operations of KPT, Wuhu or Dongguan, much less their sale of drywall to the United States.

categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Consistent with their obligations under Rule 34 and the Scheduling Order, the Knauf Defendants have been and will continue to produce documents "as they are kept in the usual course of business by identifying the custodians of the documents by bates range." Scheduling Order ¶ 4.

The PSC nevertheless contends that the Knauf Defendants must identify which documents are responsive to the Jurisdictional Document Requests and which are responsive to the Merits Document Requests. The PSC's request is surprising in light of the fact that, to date, the Knauf Defendants have done precisely that. With each production of documents, KPT, Wuhu, Dongguan and Gips have served notices on the PSC that identify by bates range the request (Jurisdictional or Merits Document Requests) to which the documents have been produced. *See* Ex. 1 (KPT Notices of Document Production to PSC); Ex. 2 (Wuhu Notices of Document Production to PSC); Ex. 3 (Dongguan Notice of Document Production to PSC); Ex. 4 (Gips Notices of Document Production to PSC).

The real dispute concerns whether, on a going-forward basis, the Knauf Defendants must continue to identify whether discovery is provided in response to Merits or Jurisdictional Document Requests. That is not practical because there is significant overlap between the Jurisdictional Document Requests and the Merits Document Requests. Both sets of Requests seek documents concerning corporate structure (*see*, *e.g.*, Jurisdictional Document Requests 1-2; Merits Document Requests 1, 3), filings with governmental agencies (*see*, *e.g.*, Jurisdictional Document Request 8; Merits Document Request 7), sale of Chinese drywall (*see*, *e.g.*, Jurisdictional Document Requests 14-15; 22-25; Merits Document Requests 27-34, 38-39), and

communications and/or agreements among Defendants and with customers or others regarding Chinese drywall (*see*, *e.g.*, Jurisdictional Document Requests 17-20; Merits Document Requests 35-37, 41-42).

Neither the Federal Rules of Civil Procedure nor the Scheduling Order imposes an obligation on the Knauf Defendants to identify documents as responsive to either the Jurisdictional or Merits Document Requests when they may be responsive to both. Nor are the Knauf Defendants obligated to review documents already produced to the PSC in connection with the Merits Document Requests and determine whether they might also be responsive to the PSC's Jurisdictional Document Requests. The Knauf Defendants also are not obligated to produce documents anew that already have been produced in response to the PSC's Merits Document Requests that might also be responsive to duplicative Jurisdictional Document Requests. Such make-work would only further delay production of relevant documents and lead to additional disputes when, inevitably, the Knauf Defendants characterized one or more documents as responsive to one set of requests while the PSC insisted that they were responsive to the other. There is no basis in law or logic for the relief that the PSC seeks.[3]

---

[3] Plaintiffs' reliance on *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D. Mass. 1976) is misplaced. In that case, a party sought to "absolve itself of [the] responsibility" to produce certain relevant documents "by alleging the herculean effort which would be necessary to locate the documents" in light of the manner in which it maintained its files. *Id.* at 76. Instead, the party offered to provide access to the facility where the records were maintained to "the plaintiff's attorney so that he may either attempt to locate the desired documents among the defendant's massive files, or else verify for himself the impossibility of such a task." *Id.* Nothing comparable is at issue here.

## IV. THE KNAUF DEFENDANTS HAVE COOPERATED WITH THE PSC REGARDING JURISDICTIONAL DISCOVERY REQUESTS

There is no basis for the PSC's contention that "production has been delayed due to dilatory tactics by Knauf and Knauf's refusal to cooperate with the PSC." PSC Mem. at 16. Prior to the *Germano* and *Hernandez* trials, both the PSC and the Knauf Defendants focused on merits discovery germane to those trials. Since those trials, the parties have refocused on the discovery that the PSC served in response to Gips's jurisdictional defense and the Knauf Defendants have cooperated with the PSC regarding that discovery. On July 16, 2002, the parties agreed to search terms for ESI relating to the jurisdictional discovery. PSC Mem. Ex. F. Since that time, the Knauf Defendants have been working as expeditiously as possible to produce documents responsive to the PSC's Jurisdictional Document Requests.

The facts are as follows:

- On October 30, 2009, the PSC served Jurisdictional Document Requests and Jurisdictional Interrogatories. On December 4, 2009, in response to the Jurisdictional Document Requests,[4] Gips objected to the Requests to the extent that they would "require retrieval of ESI that is not reasonably accessible or, its production would violate German law" and expressly and repeatedly requested "a specific meet and

---

[4] KPT, Wuhu and Dongguan have not challenged the Court's jurisdiction and, therefore, did not respond to Jurisdictional Discovery ostensibly designed to test such a jurisdictional defense. In addition, Dongguan was not served in any case until May 12, 2010. It did not respond to the PSC's discovery requests until after it had been served and made a party to this litigation.

32015514.DOCX                      9

confer with respect to production of ESI in order to define and narrow the production of ESI, pursuant to Rule 23(f)(3)(C)." Ex. 5 [Gips Response at 5-12].[5]

- The PSC did not take Gips up on its offer to meet and confer regarding ESI. Instead, during the fall of 2009 through early 2010, in connection with the initially scheduled bellwether trials, the parties focused on merits discovery of the Chinese Knauf Defendants: KPT, Wuhu and Dongguan, including the PSC's Merits Document Requests, which had been served on September 2.

- Pursuant to the parties' focus on China, in December 2009, KPT and Wuhu agreed with the PSC on search terms and format for production of ESI regarding the Merits Document Requests. Ex. 6 [E-mail from Jeff Grand to Kerry Miller dated December 7, 2009]. Thereafter, KPT and Wuhu and, more recently, Dongguan have produced approximately 130,000 pages of documents in response to the Merits Document Requests.[6]

---

[5] Gips also objected to the PSC's definition of the "relevant time period" and specifically stated that it would "produce documents from 2005 to 2006," which is the period during which Chinese drywall was imported into the United States by KPT, Wuhu and Dongguan. Ex. 5 [Gips's Response at 6.]

[6] In light of the Knauf Defendants' cooperation with the PSC regarding the Merits Document Requests, it is disingenuous for the PSC to refer to its motions to compel in connection with those Requests that were directed generally to "defendants" as "prior efforts to obtain Knauf defendants' discovery responses." PSC Mem. at 2. *See* Ex. 7 [Letter from Douglas B. Sanders to Russ Herman, dated Nov. 12, 2009]; KPT's Opposition Memorandum to PSC's Motion to Compel [MDL Docket No. 640]. Indeed, at a telephone status conference held on December 22, 2009, the PSC acknowledged that it had reached an agreement regarding the production of ESI with KPT and Wuhu as distinct from other defendants with which it had no such agreement. Minute Entry, December 22, 2009 [MDL Docket No. 677] (PSC raised

- While the parties were focused on merits discovery against the Chinese entities, they did not meet and confer regarding search terms for ESI in connection with the Gips Jurisdictional Document Requests. The PSC was fully aware of the fact that, unlike with Chinese ESI, there were no agreed upon search terms for Gips ESI. Nevertheless, in the absence of an agreement with the PSC on search terms for ESI, Gips made a good faith effort to collect and produce documents responsive to the Jurisdictional Document Requests and produced 767 pages of documents.

- On April 15, 2010, the HSC wrote to the Knauf Defendants on behalf of itself and the PSC: "Now that the *Hernandez* trial is complete, the HSC and PSC would like to move forward with jurisdictional discovery of the Knauf entities." Ex. 8 [Letter from Phillip Wittman to Kerry Miller, dated April 15, 2010]. At the same time, the HSC and PSC requested a meet and confer on issues relating to jurisdictional discovery. On April 23, 2010, the Knauf Defendants responded that, in addition to issues identified by the PSC, other significant open issues, included "narrowing scope and cost of electronic discovery." Ex. 9 [Letter from Doug Sanders to Phillip A. Wittman, dated April 23, 2010]. Since that time, the Knauf Defendants have cooperated with the PSC to address their concerns regarding responses to Jurisdictional Discovery. As a result: (i) KPT, Wuhu and Dongguan have responded

---

issue "that it had not reached agreements with Defendants, *other than Knauf* and the Homebuilder Defendants, on a protocol for production of electronically stored information …." ) (emphasis added).

to Jurisdictional Discovery even though none of them has raised a personal jurisdiction defense;[7] (ii) Gips has supplemented its answers to the Jurisdictional Interrogatories and has supplemented its responses to the Jurisdictional Document Requests with additional information to address specific concerns raised by the PSC; and (iii) the Knauf Defendants also agreed to extend the period for which they would produce documents responsive to the Jurisdictional Document Requests beyond 2006: "Knauf Gips, KPT, Wuhu and Dongguan will produce hard copies of documents and ESI from January 1, 2005 to September 30, 2009 …." Scheduling Order ¶ 1.

- The Scheduling Order, approved by this Court on July 16, 2010, states: "ESI relating to jurisdictional discovery shall be produced according to mutually agreeable search terms and from mutually agreeable custodians. The parties shall meet and confer regarding the search terms and custodians for collection of ESI on or before July 9, 2010." Scheduling Order ¶ 3. Pursuant to the Scheduling Order, the parties met and conferred and agreed to search terms on July 16, 2010. PSC Mem. Ex. F. In addition, the parties agreed upon an expanded list of custodians (41) whose files

---

[7]  The PSC's complaints about answers to Jurisdictional Interrogatories by KPT, Wuhu and Dongguan are misguided. First, there was no basis to serve Jurisdictional Discovery on KPT, Wuhu and Dongguan, none of which have contested personal jurisdiction. Second, the PSC did not make "multiple repeated requests" for responses from KPT, Wuhu and Dongguan until recently when those parties agreed to respond to Jurisdictional Discovery. Third, KPT's answer to Jurisdictional Interrogatory No. 16 about which the PSC complains plainly provides "basic information about communications with persons within the United States regarding" Chinese drywall as requested. PSC Mem. at 16; *see* PSC Mem. Ex. Z.

should be searched in Germany and China.  Ex. 10 [Email from Steve Glickstein to Lenny Davis dated July 21, 2010].

- Despite the fact that the search terms and custodian lists were first agreed upon on July 16, 2010, the PSC began pressing the Knauf Defendants to produce documents by August 2010.  The Knauf Defendants informed the PSC *before* the Scheduling Order was submitted that it would be impossible to meet that schedule.  The Knauf Defendants stated: "reflecting upon what will be required to expand the production – expanded time frame, an expanded list of custodians and for Knauf Gips expanded search terms – realistically it will not [be] possible to complete the expanded production by the middle of August" and "a realistic estimate for completion of the expanded production" would need to wait until an "agree[ment] on the search terms and custodian list, after which it would take some time to assess the magnitude of the additional task."  PSC Mem. Ex. B [E-mail from Steve Glickstein to Lenny Davis dated July 5, 2010].  Consequently, the expedited deadline which the PSC seeks in this motion was not included in the stipulated Scheduling Order.

Given this factual history – with search terms and additional custodians first agreed upon on July 16 – the PSC's motion to compel (served only three weeks after that agreement was reached) is not well taken.  As the Knauf Defendants informed the PSC, and as is typical in any complex litigation, the production cannot be accomplished overnight.  The Knauf Defendants are in the process of collecting potentially responsive documents and reviewing them for relevancy, responsiveness and privilege, which will take time given the volume of documents that are likely

to be captured by the agreed search terms.  In addition, prior to production, documents must undergo additional review in light of Chinese and German law.  Documents from KPT, Wuhu and Dongguan must be reviewed in China to ensure compliance with China's state secrets law, the violation of which could expose the companies or their employees to criminal sanctions.[8]  Documents from Gips must be reviewed to ensure compliance with German privacy laws, the violation of which could subject Gips or its employees to criminal sanctions.[9]  Moreover, many documents are in German and Chinese rather than in English, which makes production more time-consuming.

The Knauf Defendants have been working diligently to collect potentially responsive documents, complete the necessary reviews, and ultimately produce documents.  We anticipate that production will be completed in four to five months.  That is reasonable given the substantial work involved.

## V. DEPOSITIONS OF NON-30(b)(6) WITNESSES SHOULD PROCEED AFTER DOCUMENT PRODUCTION IS COMPLETE

---

[8] *See e.g.*, Sky Canaves, *Murky State Secrets Laws At Issue In Rio Tinto Case*, Wall St. K. July 9, 200 (attached as Ex. 11).

[9] Germany's Federal Data Protection Act prohibits the disclosure of "personal data," which is defined as "any information relating to an identified or identifiable person."  James M. Sullivan, *IADC International Law Committee Survey of Electronic Discovery and Data Privacy Law*, 77 Def. Couns. J. 396, 407 (2010).  Under German law, "the following information would be protected:  the name, position, and email address of an employee; that an employee sent or received a certain email, wrote a certain document or had a certain file stored on his/her computer (each irrespective of the contents of the email or file); and that he/she attended a certain meeting."  *Id.*  As a result, "effectively all emails and, as a rule, all electronic documents are … protected by German privacy laws."  Such information cannot be disclosed without the consent of "all affected individuals" or if a statutory exception applies, such as for police investigations.  *Id.*

The Knauf Defendants already have scheduled the 30(b)(6) deposition of Gips through two witnesses on August 18-19 and September 20-21. In addition, Gips has just offered a third witness for October 19-20. Furthermore, the 30(b)(6) deposition of Knauf Insulation has been scheduled for September 27-28. With respect to those 30(b)(6) depositions, the Knauf Defendants have agreed to accept that risk that, upon good cause shown, they might have to produce the witnesses for renewed depositions if plaintiffs can show prejudice arising from the production of later-produced documents. Thus, the Knauf Defendants agreed to the following in the Scheduling Order: "The PSC and HSC shall have the right, for good cause shown, to re-open the 30(b)(6) deposition of Knauf Gips." Scheduling Order ¶ 9.

The PSC's motion concerns five *non*-30(b)(6) witnesses for deposition. The motion should be moot as to one of the five, as we have offered that individual for October 19-20 as an additional 30(b)(6) witness. As to the other four, the Knauf Defendants have agreed to produce the witnesses for deposition, but not to expose them to the risk of multiple depositions by commencing their depositions before document production is complete.

The issue thus raised by the PSC's motion is whether the witnesses will be produced once after the document production is complete or whether, as the PSC insists, witnesses must be produced prior to completion of the document production. If such depositions are scheduled now, plaintiffs surely will seek to reopen them after document discovery is completed. It makes no sense to adopt such a procedure for these non-30(b)(6) witnesses especially in light of the fact

that the witnesses are all located outside the United States.  Multiple depositions of the same witnesses would cause substantial inconvenience and cost to the witnesses and parties.

The parties should complete the currently scheduled 30(b)(6) depositions while the Knauf Defendants complete their document productions.  After those productions are complete, the parties can schedule non-30(b)(6) witnesses for deposition.  Alternatively, if the PSC insists that depositions must go forward prior to completion of document production, the Court should order that the depositions cannot be reopened to examine the witnesses with respect to later-produced documents.

## CONCLUSION

For the reasons set forth above, this Court should deny the PSC's motion for sanctions and to compel production of Knauf Defendant documents.

Dated: August 10, 2010                     Respectfully submitted,


By: /s/ Kyle A. Spaulding
STEVEN GLICKSTEIN (NY Bar No. 1038157)
JAY P. MAYESH (NY Bar No. 1081603)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8485
Facsimile: (212) 836-6485
Email: sglickstein@kayescholer.com

- AND -

MILES P. CLEMENTS (#4184)
PETER E. SPERLING (#17812)
KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
PAUL C. THIBODEAUX (#29446)
FRILOT L.L.C.
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8194
Facsimile: (504) 599-8145
Email: kmiller@frilot.com

Counsel for Defendants Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Materials Products Co., Ltd and Knauf Gips KG

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served upon Plaintiffs' Liaison Counsel by email and by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, on this 10th day of August, 2010.

/s/ Kyle A. Spaulding