UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) MDL NO. 2047 ) ) SECTION: L ) |
| THIS DOCUMENT RELATES TO: ALL CASES | ) ) ) JUDGE FALLON ) MAG. JUDE WILKINSON ) ) |

**DEFENDANTS BANNER SUPPLY COMPANY, BANNER SUPPLY COMPANY POMPANO, BANNER FORT MYERS LLC, BANNER SUPPLY COMPANY TAMPA, AND BANNER SUPPLY INTERNATIONAL'S
RESPONSE TO THE PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO ESTABLISH A PLAINTIFFS' LITIGATION EXPENSE FUND TO COMPENSATE AND REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND EXPENSES INCURRED FOR MDL ADMINISTRATION AND COMMON BENEFIT**

Banner Supply Company, Banner Supply Company Pompano, Banner Fort Myers LLC, Banner Supply Company Tampa, and Banner Supply International, LLC (hereinafter collectively referred to as the "Banner Defendants"),[1] through undersigned counsel, hereby file their Response to Plaintiffs' Steering Committee's Memorandum in Support of its Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit and state as follows:

**I.    INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") filed a motion to establish a litigation expense fund drawn from ongoing, pending, and future state and federal lawsuits in this matter to

---

[1] Each of the individual Banner entities responds to this motion as it pertains to the specific actions in which it has been named as a Defendant.

compensate attorneys for services performed.  The PSC's motion centers on its claim that it has performed a number of services that stand to benefit all Plaintiffs (including, based on a reading of its brief, putative members) in the MDL, and could possibly benefit cases that are ongoing, pending or those that are yet to be filed in state court proceedings as well.  Essentially, the PSC expects this Court to impose a burden on Defendants to set aside a percentage of any award or settlement monies anywhere in the United States, regardless of whether obtained in the MDL or state court actions, in a common fund.

While the PSC would burden the Defendants with directing monies from all drywall settlements to the common litigation fund, Plaintiffs' counsel (including the PSC) have completely failed to identify which specific cases are coordinated and benefiting from the PSC's actions.  More specifically, the motion asks for the establishment of a _general_ fund, but fails to provide any specific proposals or agreements regarding who will participate in the fund or how coordination between state and federal actions will take place.  In essence, the PSC's proposed Order, as written, could entangle every drywall claim in the country.  This obvious problem with the PSC's proposed order was accentuated when various Plaintiffs came forth and rebutted the PSC's claim that the state court actions at issue should be subject to the fund - simply because those Plaintiffs were also making different claims in the MDL.  [Doc No. 4958]

Before the Defendants are forced to withhold monies for a litigation fund, the Plaintiffs need to come forth and identify which cases are operating independently and which are coordinated via the PSC.  At least for now, Plaintiffs' counsels' complete failure to identify such crucial details – not to mention Plaintiffs' counsel's open disagreement regarding which claims

would be subject to the fund - necessitates a denial of the PSC's motion, particularly before imposing a burden on the Defendants.

II.  **ARGUMENT**

    A.    <u>Response to PSC's Original Brief</u>.

In its brief, the PSC loosely cites to a correct proposition of law: "In order to protect the right of the common benefit attorneys to receive a fee . . . from the proceeds of the litigation in which they have participated and diligently worked on behalf of plaintiffs . . . it is appropriate to direct that . . . fees . . . in each action which was the subject of coordinated or consolidated proceedings be deposited in an escrow account . . . ." PSC Mem. at p. 8. PSC then proceeds to overreach the scope of this law dramatically by stating that "the responsibility for paying the assessment into the fund established is that of the hundreds of defendants named in any of the Omni Complaints or in a state court action in which a plaintiff is also involved in an Omni [sic] complaint . . . ." PSC Mem. at p. 11. Strikingly, the PSC's proposed order ignores the case law cited in the PSC's own brief and contains no definition or limitation concerning the actions, much less the claims, as to which it applies.

In the pre-trial orders cited by the PSC, the order establishing the fund identified the cases to which an obligation to set aside funds applied. For instance, in *In re Vioxx Products Liability Litigation*, MDL No. 1657, PTO No. 19 (E.D. La. Aug. 4, 2005), the court's order establishing a common fund was accompanied by documents provided by Plaintiffs' counsel identifying which plaintiffs were part of the coordinated effort between MDL and other actions. Similarly, in *In re Propulsid Products Liability Litigation*, MDL No. 1355, 2001 WL 34134864 (PTO No. 16) (E.D. La. Dec. 26, 2001), the order establishing common fund set forth the

categories of cases as to which an obligation was imposed and required plaintiffs' steering committee to provide defense counsel with a list of cases and/or plaintiffs who had entered into written agreements with the committee for participation in the fund before any obligation to set aside monies for the fund was imposed on the defendants.[2]  *See also In re Diet Drugs Products Liability Litigation*, 1999 WL 124414, MDL No. 1203, PTO No. 467 (E.D. Pa. Feb. 10, 1999) (order establishing fund also set forth detailed procedures for coordination with state-court diet drug litigation).

Here, the PSC offers a proposed order to set up a fund and impose a burden on the Defendants without even attempting to make a reasonable delineation of which cases or claims are at issue.  The motion now pending before the Court only fleetingly mentions that a fund consisting of the recoveries in the federal court cases, as well as the "plaintiffs in state courts that agree to coordination," should be created.[3]  PSC Mem. at p. 4.  The proposed order omits this supposed limitation and, importantly, makes no distinction for Plaintiffs that have claims in both the MDL and state court.  PSC claims that this plan of sequestering funds is designed to facilitate state and federal coordination.

However, not only does it fail to identify which cases, outside of the MDL, will be eligible for participation in the fund but, it also fails to provide even a means for identifying which cases outside of the MDL will be eligible.  PSC further fails to establish any method of coordination between concurrent state and federal lawsuits.  PSC is attempting to put the

---

[2] The *Vioxx* and *Propulsid* matters are particularly instructive, as they come out of the same jurisdiction as the Drywall MDL.

[3] The PSC's motion is contradictory and inconsistent.  On page 4 it suggests [correctly] that the fund ought to include monies solely from plaintiffs in state court that agree to coordination but on p. 11 suggests otherwise.

proverbial cart before the horse by requesting the fund - not to mention an obligation on the part of the Defendants - even before: (1) some form of coordination between the federal MDL actions and the state court actions is even established, and (2) a disclosure of written agreements with Plaintiffs as to which actions and claims are the subject of coordination.

PSC's failure to formulate any sort of coordination between federal and state courts comes as no surprise to these Defendants, as evidenced by the unnecessary expansion of litigation imposed upon them. In one example, Plaintiffs who have brought either individual actions or class actions in state courts have also filed federal class actions (now part of the MDL), involving the same issues, and litigating substantially the same claims, as those pending in state court. Some Plaintiffs have split their cases – state cases against domestic builders, suppliers and contractors and federal cases against foreign manufacturers – and/or filed individual actions in state court in order to avoid jurisdiction in this Court under the Class Action Fairness Act of 2005 ("CAFA"), while other Plaintiffs have filed individual cases in state court, yet are named as putative class representatives in federal court. Compounding matters further, there are numerous duplicative actions proceeding simultaneously that were filed by the identical Plaintiffs against Banner entities, in both state and federal court.

While Banner has made every effort to reduce chaos and increase coordination/efficiency by filing motions to stay or enjoin duplicative actions, Plaintiffs' counsel have done nothing to help streamline or coordinate what has become, from at least these Defendants' perspective, an

utterly byzantine set of proceedings.[4]  In spite of this Court's efforts to streamline the litigation, it is Plaintiffs' lack of coordination that has caused chaos and delay.[5]

In perhaps the most vivid illustration of the lack of coordination between the PSC and various state court actions, the PSC and Plaintiffs' counsel in the state court proceedings have taken exact opposite positions as to how the litigation should proceed.  While the PSC in the MDL has endeavored to bring the manufacturer of certain drywall at issue in the litigation as a party Defendant, numerous Plaintiffs in the state court actions have refused to name them and, instead, have actively (at times successfully) sought to exclude that same manufacturer from the proceedings in the state court cases.  In its papers, PSC seeks credit for bringing the foreign manufacturer in the MDL proceedings; however, it is unclear how PSC's actions provide "common benefit work" to those Plaintiffs in the state court actions, whose strategy has been to keep the manufacturer out of the state litigation.  PSC Mem. at p. 3.  The differing tactics and strategies employed in the various cases have simply served to confuse and complicate this already uncoordinated litigation.

Moreover, there are numerous examples where the PSC's work product is not sought or utilized in a number of the state actions.  This is evident, for example, by the fact that certain Plaintiffs have themselves opposed the PSC's motion to establish a litigation fund.[6]  As pointed out by those Plaintiffs, the PSC's proposed order would require that Defendants withhold funds

---

[4]  Defendant Banner has filed a Motion for Preliminary Injunction to Enjoin Duplicative State Actions, or, in the alternative, Motion to Dismiss Certain Duplicative Federal Cases and a Motion to Stay Certain Duplicative Federal Cases in numerous cases.
[5]  In yet another example of lack of coordination, certain Plaintiffs in a state court action disavowed any personal injuries;  those same Plaintiffs have also filed pleadings in the MDL claiming they suffered personal injuries.
[6]  *See* Response to the Plaintiffs' (Simon Finger, Rebecca Finger, James Butler, Joycelyn Butler, Carolyn Cathcart, Jason Niemann and Renee Niemann) Steering Committee's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit filed on August 6, 2010. [Doc No. 4958].

for the benefit of the PSC for the Plaintiffs that have pursued claims in state courts and never agreed to coordinate those particular claims with the PSC. The PSC's motion lumps all those claims together. The issue brought up by the various Plaintiffs that filed the brief opposing the PSC's motion is but one example of the issues the PSC overlooks in its rush to get paid.

There are countless other examples where the PSC's proposed Order would hamper state court actions and settlement discussions because Defendants would be required to withhold money for the benefit of the PSC in cases where the PSC never coordinated with or conferred a benefit to Plaintiffs' counsel. Respectfully, this Court does not have jurisdiction to impose obligations on Defendants concerning claims that are not pending before this Court or which are not subject to a coordination agreement. *See In re Showa Denko K.K. L-Tryptophan Prods. Liability Litigation – II*, 953 F. 2d 162 (4th Cir. 1992) (holding that a district court order to reimburse the members of plaintiffs' steering committee exceeded the jurisdiction of the district court by requiring the plaintiffs in cases not transferred to the multidistrict litigation but pending in other federal and state courts, as well as the plaintiffs before the court, to pay a base amount plus a percentage of settlement or verdict amounts to an escrow account); *Hartland v. Alaska Airlines, Inc.*, 544 F.2d 992, 1002, 1004 (9th Cir. 1976) (ordering district court to return funds deposited by settling defendants into an escrow account in cases not formally transferred to district court and in state cases arising out of same operative facts as multidistrict litigation).

At this juncture, without a framework for coordination between these cases, Banner will have no knowledge of – and no way of predicting – which cases will be a part of the fund. Yet, the PSC is demanding that this Court issue an order that would impose an obligation on the Defendants to retain funds for the benefit of the PSC without any representation from Plaintiffs'

counsel in the state court cases that they are part of a team effort with the PSC or that those cases are coordinated in any manner whatsoever. With all due respect to the PSC, it cannot feasibly be the Defendants' obligation to determine what the Plaintiffs should have figured out for themselves before filing the motion at issue.

Banner opposes the PSC's motion due to the complete lack of coordination by the Plaintiffs in the state actions and for the Plaintiffs' failure to put forth a viable proposal, providing either a reasonable list, or even a means of populating a list, of cases that would participate in its proposed fund. Without such a proposal for coordination between the state court actions and the MDL a common fund ought not be established or, at the very least, there ought to be no obligation on the Defendants until Plaintiffs provide a sufficiently detailed agreement from those Plaintiffs that have agreed to coordination of their state court actions and this court accepts such proposal. Finally, the proposed order submitted with the PSC's motion is overly broad and could be read to impose on Defendants a burden to withhold funds from every action in the United States involving drywall without regard to whether those other actions are coordinated. Accordingly, at this time, the PSC's motion should be denied.

B.  <u>Response to PSC's Supplemental Brief</u>.

After drafting the foregoing brief, a few hours ago Respondents received the PSC's Supplemental Brief. In its Supplemental Brief, the PSC acknowledges that the cases filed in state courts case are not obligated to any fund unless state court counsel expressly agree. PSC Supp. Mem. at p. 3. Nevertheless, the PSC's proposed order contains no such limitation and is misleading, particularly in light of the PSC's concessions. In addition, Plaintiffs' counsel

(including the PSC) still need to get their house in order before any order is issued. Otherwise, it is inevitable that there will be disputes as to Plaintiffs that filed suit in the MDL and state courts.

The PSC's other recent filing, seeking to enjoin one state court action *after* a reported settlement, is further evidence of the chaos that exists in the "drywall" litigation. *See* PSC's Memorandum of Law in Support of its Motion to Enjoin Conflicting State Court Proceedings in Muscogee County, Georgia That Interfere With This Court's Continuing Jurisdiction Over This Litigation. Doc. No. 5011-1. The PSC and other Plaintiffs' counsel sit idly by for years while duplicative litigation proceeds in numerous state courts (the case in Muscogee County being one among many) and, only after the PSC's golden calf is purportedly threatened, does the PSC protest.

Plaintiffs and their counsel have caused this mess and their lack of coordination continues to cause significant problems and unnecessary expense. As a result of these uncoordinated proceedings, Defendants are often forced to litigate actions arising out of the exact same set of facts multiple times. Rather than waiting until after the cases are over years after being initiated, perhaps the Plaintiffs will now consider taking action to coordinate and avoid redundant litigation. Perhaps the PSC can start by agreeing to the various motions filed by the Defendants long ago to avoid duplicative litigation. (*See e.g.,* motions referenced in footnote number 4).

All parties would be better served if this Court issued an order related to an expense fund *after* Plaintiffs submit, and this Court accepts, a proposal reflecting agreement amongst Plaintiffs as to how they wish for this litigation to proceed, hopefully without the countless redundancies that exist now.

### III. CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny the PSC's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit. Should the PSC or Plaintiffs' counsel come forth with an identification of the cases all interested Plaintiffs' counsel agree are part of a coordinated effort and a proposal reflecting agreement as to how to streamline the ongoing redundant and unnecessary actions, Defendants can address a re-filed motion from the PSC at that time.

Respectfully submitted this 10th day of August, 2010,

        **WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

        */s/ Nicholas P. Panayotopoulos*
        **TODD R. EHRENREICH, ESQUIRE**
        Florida Bar Number: 945900
        tehrenreich@wwhgd.com
        **NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**
        Georgia Bar Number: 560679
        npanayo@wwhgd.com
        **MICHAEL A. SEXTON, ESQUIRE**
        Florida Bar No. 0131520
        msexton@wwhgd.com
        **SHUBHRA R. MASHELKAR, ESQUIRE**
        Georgia Bar Number: 475388
        smashelkar@wwhgd.com
        2601 S. Bayshore Drive
        Suite 850
        Miami, Florida 33130
        Telephone (305)455-9500
            **and**
        3344 Peachtree Road
        Suite 2400
        Atlanta, GA 30326
        Telephone (404)876-2700

                Counsel for Banner Supply Company, Banner Supply Company Pompano, Banner Fort Myers LLC, Banner Supply Company Tampa, and Banner Supply International, LLC.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion in Response has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail; and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 10th day of August, 2010.

                                              **WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

                                              */s/ Nicholas P. Panayotopoulos*
                                              **NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**