UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | CASE NO. 2:09-MD-02047 SECTION L JUDGE FALLON |
| (Relates to *Amato v. Liberty Mutual Ins.*, No. 2:10-cv-00932) | ) ) | MAG. JUDGE WILKINSON |

**CERTAIN INSURANCE DEFENDANTS' RESPONSE IN OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION TO ESTABLISH A PLAINTIFFS' LITIGATION EXPENSE FUND TO COMPENSATE AND REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND <u>EXPENSES INCURRED FOR MDL ADMINISTRATION AND COMMON BENEFIT</u>**

<u>INTRODUCTION</u>

The Plaintiffs' Steering Committee's ("PSC") Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit (the "PSC's Motion") is unsupported by law, fact, or even fairness. The PSC's Motion seeks to impose a tax of up to 17% on all parties to this MDL to reimburse the PSC members for supposedly establishing a "common fund" or providing "substantial benefit" that added value to other litigants in these proceedings. But of course the PSC has not successfully created any common fund here. In fact, the PSC seeks to tax the defendants in these cases to create the common fund in the first place, which violates United States Supreme Court precedent and the American Rule. Moreover, the PSC does not identify any task that it performed that provided a "substantial benefit" other than tasks that directly benefit itself (by allowing it to identify additional clients, whom it now represents in the Omnibus Complaints) or its pre-existing clients. Performing these tasks is not providing a "substantial benefit" that entitles one to additional remuneration under the governing law when the only parties benefiting are the attorneys' own clients.

1

Additionally, the order that the PSC seeks to have this Court enter raises significant public policy concerns and issues of a constitutional dimension because it would, in essence, impose a tax on the settlements of private parties who happened to have their cases transferred to these MDL proceedings (by no doing of their own). These private parties were not given notice of this potential tax, and were not afforded the right to opt-out of this arrangement if they did not believe the PSC's efforts somehow are benefiting them. Moreover, the imposition of this involuntary tax would frustrate public policy by discouraging voluntary settlements and needlessly increasing litigation costs.

In sum, the PSC's Motion is without a basis in law, fact, or fairness, and should be denied.[1]

## I. The PSC's Motion Fails To Demonstrate That The PSC's Efforts Have Benefited Any Parties As Required To Justify The Relief Sought.

### A. The PSC's Motion fails to meet the requirements articulated by the United States Supreme Court.

In addition to the requirements discussed below for establishing that the "common fund" or "substantial benefit" doctrines apply in the first instance, the PSC must also meet the following three requirements that have been established by the United States Supreme Court before costs may be shifted:

> (1) The classes of persons benefited by the lawsuits are small in number and easily identifiable.
> (2) The benefits must be traceable with reasonable accuracy.
> (3) The Court must be confident that the costs of litigation can be shifted with exactitude to those benefiting.

*Boeing v. Van Gemert*, 444 U.S. 472, 478-79, 100 S. Ct. 745, 749, 2 L. Ed. 2d 676 (1980) (noting these strict limitations on the common fund doctrine, and that because of these

---

[1] Travelers also adopts and incorporates the points and arguments raised by the Insurance Defense Committee's Response in Opposition to the PSC's Motion.

restrictions the common-fund doctrine does not alter the American Rule "against taxing the losing party with the victor's attorney's fees," because under the common-fund doctrine the defendant no longer has any interest in the fund); *see also Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1319 (10th Cir. 2000) ("[T]he common fund doctrine requires identifiable beneficiaries and circumstances that permit proportionate sharing among the beneficiaries with some exactitude.") (internal citations omitted). As discussed below, the PSC has failed to demonstrate that each of these factors is met.

Here, it is highly questionable whether any of the plaintiffs have benefited in any meaningful way from the PSC's efforts. This is especially so given that there are thousands of plaintiffs pursing claims against hundreds of different manufacturers, distributors, homebuilders, and insurers under the laws of several different jurisdictions. Further, each Plaintiff's claim arises from unique and individualized facts. In light of the large number of factual and legal variations between the claims of each plaintiff it is unclear what benefit each plaintiff would gain (if any) based upon the efforts taken to advance another plaintiff's claims.[2] But even if the Court were to assume that some of the plaintiffs may have gained some collateral, trickle-down advantages from the PSC's litigation activities, there would be no easy way to identify which plaintiffs received any such benefits. Nor would there be any reasonably objective way to trace

---

[2] In contrast to the claims here, most of the cases the PSC relies upon in its motion arose from a specific and common accident, such as a hotel fire, plane crash, or the like, or a specific medical drug that is manufactured by one defendant. Clearly such incidents where every plaintiff was exposed to essentially the exact same harm, at the exact same time, or from the exact same defendant is different than here where the product at issue was manufactured by different foreign entities at different times, imported to this country at different times, and then distributed and used in each plaintiff's home in a different manner. (PSC Mem. at 8-9 (collecting cases).) Here, unlike in those cases, each plaintiff's claim will require unique and independent proof to establish liability, which undermines any benefit derived from work that benefits a different plaintiff. At a minimum, the factual disparities in these claims will greatly increase the level of evidentiary support required by the PSC to demonstrate it provided an actual and tangible benefit to any other plaintiff under the *Boeing* standards. The PSC's Motion clearly does not meet that burden.

those hypothetical benefits to any particular activities on the part of the PSC. As a result, the Court could not be "confident" that it was shifting the costs of the PSC's efforts to the appropriate plaintiffs with the degree of "exactitude" required under *Boeing*, 444 U.S. at 478-479. In any event, the PSC's Motion certainly fails to meets its burden of setting forth facts that demonstrate these requirements are met here and, as such, the PSC's Motion should be denied.

> **B.    The PSC's Motion violates the American Rule by improperly seeking to shift plaintiffs' costs and attorneys' fees to defendants through a taxing mechanism.**

The relief sought by the PSC's Motion would also violate the American Rule. *Boeing*, 444 U.S. at 481-82. As the *Boeing* court stated, the common fund doctrine does not allow the shifting of plaintiffs' attorneys' fees and costs to the defendant, and therefore, does not violate the American Rule. Here, however, the relief sought by the PSC's Motion would violate the American Rule by imposing a de facto tax on the Defendants. *Id.*; *Knight v. United States*, 982 F.2d 1573, 1579 (Fed. Cir. 1993) ("[T]he common fund theory does not impose additional liability on the losing defendant.").

Specifically, if this Court grants the PSC's Motion, the cost of settling an individual plaintiff's claim will increase by up to 17%. To pay for this additional cost, one of three things would need to occur: (1) the individual plaintiff would have to accept up to 17% less in the total settlement; (2) the individual plaintiff's attorney would have to reduce his or her contingency fee

by 17%;[3] or (3) the defendant would have to pay up to 17% more on the claim (or most likely some combination thereof).  As a practical matter then, the Defendants will be forced to pay more than they otherwise would have under the order sought, which is a de facto taxing of costs onto the Defendants that is not allowed under *Boeing*.

### C. The PSC has also failed to successfully establish any "common fund."

Beyond the threshold failures to satisfy the *Boeing* requirements, the PSC's Motion also fails because there is no "common fund" and, accordingly, the "common fund" doctrine cannot apply.  The "common fund" doctrine *only* applies when the litigation produces an actual monetary fund under the Court's jurisdiction, from which the attorneys' fees can be drawn.  The doctrine cannot be used to impose additional liability on the defendants or the fund beneficiaries. *See, e.g., Boeing*, 444 U.S. at 478-479; *Knight*, 982 F.2d at 1579 ("[T]he common fund theory does not impose additional liability on the losing defendant.") *Morganroth & Morganroth*, 213 F.3d at 1319 ("[T]he dispositive fact is that this action did not result in the creation of a fund from which others would benefit.  Thus, we find no legal basis on which the award of attorney's fees can be sustained."); *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984) (litigation requiring HUD to make subsidy payments to individual landlords did not create a "fund" from which fees could be recovered).

---

[3] In this regard, the order sought by the PSC also seeks, in essence, to force plaintiffs' counsel who are not members of the PSC to engage in fee splitting with the PSC.  Such an order implicates the governing Rules of Professional Conduct, which preclude such fee splitting without client consent.  LR83.2.4E; Louisiana Rules of Professional Conduct Rule 1.5(e).  The PSC's Supplemental Brief (Docket Entry 4995) makes clear that a fee splitting and cost splitting arrangement has been reached, yet there is no evidence in the record that any of the plaintiffs themselves were advised of this proposed arrangement, much less that they consented to it.  In any event, the issue here is not whether the PSC and other plaintiffs' attorneys can agree to share costs when they are co-counsel in a case, the issue is whether they can obtain payment for that fee and cost sharing arrangement by taxing the Defendants. Under *Boeing* and the American Rule, they cannot.

Here, the PSC's litigation efforts have *not* created an actual monetary fund from which attorneys' fees could be deducted. There is no global judgment or settlement representing the combined value of all the claims unlike most of the cases relied upon in the PSC's Motion. Indeed, the PSC's proposed order does not even contemplate the creation of any such global fund. Instead, in the guise of a "common fund," it purports to assess an additional fee of up to 17% on the settlement of each individual plaintiff's claim. (*See* PSC's Proposed Order.) That these individual attorneys' fees awards might ultimately be deposited into a single registry with the Court does not make them a "common fund," given that they are not intended for the claimants, but rather solely for the attorneys. To hold otherwise would allow attorneys in any complex proceeding to undermine the American Rule or in a class action to forego the formalities that accompany a successful fee award, and shift their costs and fees to other parties by simply filing such a motion asking the Court to tax each individual judgment or settlement with an additional fee. Such a fund, however, is not a "common fund" that triggers the "common fund' doctrine where the litigation resulted in no lump-sum judgment or settlement. Indeed, the request to create such a fund is contrary to the controlling case law discussed above that prohibits taxing the defendants with any such additional liability. *See, e.g., Boeing*, 444 U.S. at 478-479; *Knight*, 982 F.2d at 1579.

### D. The PSC has *not* conferred a "substantial benefit" to the individual plaintiffs.

Nor has the PSC demonstrated that it has successfully conferred *any* benefit on the plaintiffs, much less a "substantial" one. To recover fees under the "substantial benefit" or "common fund" doctrine, an attorney must show that his or her efforts (1) were successful, *and* (2) conferred a substantial benefit on others. In the words of the Fifth Circuit, "[a]ttorney's fees may . . . be awarded to a *successful litigant* whose success confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of

6

the suit makes possible an award that will operate to spread the costs proportionately among them." *Rogers v. Air Line Pilots Ass'n., Int'l*, 988 F.2d 607, 616 (5th Cir. 1993) (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94, 90 S. Ct. 616, 626, 24 L. Ed. 2d 593 (1970)) (emphasis added).

Conceptually, this equitable fee-spreading rule is premised on the notion that "persons who obtain the benefit of a lawsuit without contributing to its costs are *unjustly enriched at the successful litigant's expense*." *Boeing*, 444 U.S. at 478 (emphasis added); *accord Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 360 (5th Cir. 2003). To avoid this unjust result, when appropriate, the Court can "'assess[] attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.'" *Boeing*, 444 U.S. at 478 (emphasis added) (quotation omitted).[4]

Here, the PSC claims that its efforts have benefited the plaintiffs through "several significant accomplishments," including "the assembly of a highly regarded expert team within less than a year that contributed to the successful conclusion of two major bench trials, the settlement of yet another case on the eve of trial, and the support of yet another successful jury trial in a *coordinated state jurisdiction*." (PSC Mem. at 4 (emphasis added))  But as a threshold issue, the PSC's duties do not extend to proceedings in a state court jurisdiction, and even as to

---

[4] As this Court knows, these MDL proceedings were created at the request of certain plaintiffs who were represented by many of the attorneys that subsequently were appointed to the PSC. (Docket Entry 1; see also In re Chinese-Manufactured Drywall Prods. Liab. Litig., 626 F. Supp. 2d 1346 (J.P.M.L. 2009).)  Thus, these attorneys sought to establish these MDL proceedings, and the PSC itself, presumably for the benefit of their private clients.  This Court then solicited applications for the PSC from members of the bar.  (Pretrial Order 1, ¶ 17.)  This Court's Order specifically stated that "[t]he main criteria for membership in the PSC will be: (a) willingness and availability to commit to a time-consuming project; . . . (d) willingness to commit the necessary resources to pursue this matter.  (Id.)  The PSC members submitted applications that stated they were willing to expend time and financial resources to fund this litigation in the hopes of ultimately recovering for their efforts if they succeeded in obtaining a global settlement or judgment.  (See, e.g., Docket Entries: 10 at 4; 17 at 1; 93 at 2, 4; and 120 at 1.)

activities within this MDL, the trial activities fall outside of the scope of the PSC's responsibilities, which are limited to ***discovery*** issues.[5] (*See generally* Pretrial Order 1, ¶ 17 at 10 (creating the PSC "to conduct and coordinate the discovery stage of this litigation"); Pretrial Order 8 (outlining the responsibilities of the PSC).)  Moreover, the PSC provides no evidence that any of these activities provided a benefit to any of the individual plaintiffs beyond those involved in those specific cases.  The PSC merely conclusorily states without any support that its actions have somehow created interest in settlements (settlements that, ironically, the PSC is actually affirmatively trying to stonewall in other motions, see Docket Entries 4824, 5011-12). (PSC Mem. at 4.)  In any event, the fact that the PSC claims to have expended substantial effort on certain issues does not mean that its efforts were beneficial to the plaintiffs in general, and certainly the PSC's Motion fails to demonstrate any such benefit.

This is particularly so given that the attorneys who are serving on the PSC typically represent hundreds of individual plaintiffs, including the plaintiffs in the Omnibus Complaints which purport to cover essentially all Chinese Drywall-related claims in the universe.  The time and efforts of the PSC is required to be performed as part of the representation of these private clients and the putative classes.  Indeed, the PSC's Motion demonstrates that the large bulk of the PSC's time and efforts have been devoted to these Omnibus Complaints.  (PSC Mem. at 3 (stating the PSC has "undertaken the enormous burden and concomitant expense of preparing, filing, translating and serving the several Omni complaints and related complaints in intervention to attract and aggregate thousands of plaintiffs and their associated defendants into this

---

[5]  Indeed, this MDL itself is limited to pre-trial issues under 28 U.S.C. § 1407.  The MDL Panel did not consolidate any actions for trial.  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009) ("It is therefore ordered that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A" are transferred "for coordinated or consolidated *pretrial proceedings*.") (emphasis added): *see also In re Showa Denko K.K.*, 953 F.2d 162, 165 (4th Cir. 1992) (noting that the MDL procedure does not expand the Court's jurisdiction).

litigation.").)  But, of course, the PSC members are counsel of record in those cases and were required to perform these tasks for the named clients they represent and the putative classes that they purport to represent in the future.  To shift these costs to other parties would undermine, not promote, the equitable underpinnings of the "common fund" and "substantial benefit" doctrines. *See Boeing*, 444 U.S. at 478.

Furthermore, the "substantial benefit" doctrine only applies when the attorney's efforts were successful.  While the PSC claims to have spent a considerable number of hours on its tasks, the fact of the matter is that the litigation is still at the pleading stage and the PSC is facing several dispositive motions.  Given that the PSC has not even survived the pleadings stage of many of these cases, there is no basis to conclude that it somehow has successfully achieved a substantial benefit for the plaintiffs when the defendants may ultimately prevail.  To the extent the PSC successfully litigates these cases to settlement or judgment, the PSC might be handsomely rewarded, and the attorneys working on a contingency basis might receive sizeable contingency fees.[6]

Thus, there might well be no need for a "common benefit" fund in these proceedings, because typical class recoveries would compensate the PSC for their efforts (to the extent they are ever successful).  However, even if that is not the case, there is no law that permits the PSC to "hedge" their losses, as they are seeking here, by shifting costs to other parties.  Indeed, the PSC's Motion would appear to be seeking a windfall recovery by compensating the PSC

---

[6] To this end, this Court's Pretrial Order requiring PSC members to submit time and expense records at regular intervals is a reasonable and prudent measure to ensure that, when and if the time comes to allocate such a global judgment or settlement, the Court has the information it needs to determine the appropriate amounts to allocate from that fund under the governing standards articulated by the United States Supreme Court and Fifth Circuit.  The mere fact that this Court has required such records to be submitted, however, does not mean that the PSC members have met their burden of establishing they are entitled to such reimbursement. (*Compare* PSC Mem. at 3 (discussing these orders regarding time and expense records).)

members for time and efforts they undertook for their private clients, including in the Omnibus Complaints, in the guise of performing PSC tasks. But at the same time, one would only assume if those cases ultimately lead to a favorable settlement or judgment the PSC will also seek to obtain their contingent share of that recovery as well. Such a result would be a clear double recovery, which demonstrates that the relief being sought in the PSC's Motion is premature and not warranted.

In short, "substantial benefit" attorneys' fees are not available simply because an attorney claims to have invested a significant amount of time or money on a case. Rather, such fees are *only* available when the attorney's efforts were (1) successful, *and* (2) conferred a substantial benefit on other claimants who did not contribute to the costs of the litigation. The PSC has failed to demonstrate both of these requirements, and has not demonstrated that its work on this matter provided the plaintiffs with any benefit, let alone a substantial benefit. If anything, the PSC's efforts thus far have only delayed the resolution of individual plaintiffs' cases as demonstrated by the proceedings in state courts that are significantly more advanced than those here.

## II.     The Relief Sought By The PSC's Motion Raises Additional Serious Issues That Warrant Further Briefing.

The undersigned respectfully submit that the PSC's Motion should be denied for the reasons set forth in the prior sections. To the extent this Court disagrees, the undersigned respectfully submit that additional briefing, and potentially an evidentiary hearing,[7] should be

---

[7] *See generally In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, (5th Cir. 1977) (vacating in part fee award that derived from the fees of other counsel, and remanding for further proceedings in which the district court was required to "set and conduct a hearing in the full sense of the word and must address the fee issue under the *Johnson Standards*. The Committee and its counsel must offer relevant evidence and must be available for cross-examination. The court should enter findings of fact and conclusions of law setting out the basis for the fee award and adequately presenting the issue for further appellate review should this be necessary.").

ordered on the following issues before this Court enters the order sought by the PSC given that these additional arguments implicate serious public policy and constitutional questions.

### A. The PSC's Motion Raises Significant Due Process And Constitutional Concerns.

If this Court grants the PSC's Motion, it will be entering an order that imposes what amounts to a tax on the private and voluntary settlements of all parties in these MDL proceedings. As discussed above, this tax would be imposed upon all parties to this MDL without any factual showing that those specific parties received any benefit from the PSC's efforts. The tax will also be imposed upon these parties without adequate notice, and regardless of whether they sought to be transferred into these proceedings. This would include any Chinese Drywall-related case filed in the Eastern District of Louisiana, which are being consolidated into this MDL without motion or request by any party as a matter of course by the Clerk's Office. The imposition of such costs in the absence of any evidence that a benefit was conferred, and without notice or the opportunity to opt-out raises significant due process and potentially other constitutional issues.[8] *Cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, (1985) (noting that in the class action context the "Due Process Clause requires notice, an opportunity to appear in person or by counsel, an opportunity to 'opt-out,' and adequate representation").

The reasoning of these cases, including *Shutts*, applies here. Indeed, at least one of the cases relied upon by the PSC in its Motion only approved such a common benefit fund because the judge in that case "served notice ***from the beginning*** that he would eventually make what he

---

[8]  *See generally Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980) (noting that the inherent powers of the judiciary are subject to the limitations of the Due Process Clause); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948) ("[T]he action of state courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment."); *see also Dahl v. Akin*, 630 F.2d 277, 280 (5th Cir. 1980) (discussing the complexity of the constitutional issues raised when a court order implicates constitutional due process concerns).

later termed a 'common fund fee award' to remunerate PSC members for their efforts on behalf of communal interests." *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606-07 (1st Cir. 1992) (affirming an award from a global settlement fund) (emphasis added); *see also In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1020 (noting that the objecting plaintiff counsel "elected not to participate in the pre-trial activities and accepted the benefit of the Committee's work impliedly consented to the fact and the manner of payment"). Here, no such notice was ever provided to the parties advising them by continuing to proceed in this MDL they may be subject to such a tax, and accordingly the litigants have not been given a due process opportunity to opt-out of these proceedings as the above cases suggest is required.

**B. Granting the relief sought by the PSC's Motion would undermine the strong public policy favoring private settlements.**

Imposing such a tax also would undermine public policy by creating a disincentive to settle. *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985) ("[P]ublic policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation"); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ("Settlement agreements are 'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits'").

As noted above, imposing tax of up to 17% on all settlements will necessarily change settlement dynamics by either requiring defendants to pay more, or forcing plaintiffs to accept less, or some combination thereof. Adding this extra layer of added cost to the settlement process would clearly be disruptive, and reduce the likelihood of any settlements being reached in this litigation. This is particularly so when there is absolutely no factual basis for justifying the imposition of this added layer of costs on these proceedings. Indeed, the likely result of such

a tax will be to encourage the parties to find ways to avoid the MDL altogether in resolving their claims, or simply wait until the MDL is deconsolidated and settle their claims at that point.

### C.  The imposition of a "tax" on insurance payments likely violates federal law.

The undersigned insurer defendants do not believe they are liable for any of the claims at issue in this MDL. But to the extent that any insurance proceeds are ever paid subject to the tax sought by the PSC, such a result would be in conflict with federal law. The business of insurance is highly regulated by the states. Indeed, Congress passed the McCarran-Ferguson Act, which specifically vests the power to regulate *and* "tax" insurers to the states. The Act provides that:

> The business of insurance . . . shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
> (b)  Federal regulation.  No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, *or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance*.

15 U.S.C. § 1012 (emphasis added). These MDL proceedings are based upon an Act of Congress, 28 U.S.C. § 1407, which does *not* specifically relate to the business of insurance. The PSC's Motion specifically states that the fact that these proceedings arise under the MDL justifies the tax they are seeking to impose on the parties, which includes over one hundred insurers who are regulated by the various States. (PSC Mem. at 1-2, 6-7.) But construing the MDL statute to allow the imposition of a tax on insurers is expressly prohibited by the McCarran-Ferguson Act as quoted above.

Here, as discussed above, the relief sought by the PSC would essentially impose a tax of up to 17% on any insurance settlements in these MDL proceedings. *Cf. Wagner v. AmWest Ins. Group*, 285 B.R. 447, (Bankr. C.D. Cal. 2002) (holding that the bankruptcy court was reverse preempted from addressing a tax allocation agreement between insurers under the McCarran-

13

Ferguson Act because it would "impair state law," and therefore the federal court was obligated to abstain from exercising its authority on that issue). The tax sought by the PSC would apply to payments made by insurers of their own accord, without any finding of liability or wrongdoing. Accordingly, the imposition of the tax by this Court is not, and cannot be, justified based upon some inherent authority to regulate the parties because by definition the payments would be made as a result of the voluntary agreement between private parties. Thus, entering an order that imposes a tax on insurers that voluntarily make such payments would directly impair the ability of the States to regulate the business of insurance within their borders by unnecessarily increasing costs without any justification. As such, the relief sought by the PSC with regard to insurer defendants is prohibited by the McCarran-Ferguson Act.

### III. This Court's Prior Entry Of Nearly Identical Orders In Two Previous MDLs Is Distinguishable Because No Oppositions Were Filed In Those Cases.

As this Court is aware, many of the PSC members have previously served in that same capacity in prior MDLs in this Court, including MDL 1355 the Propulsid Product Liability Litigation, and MDL 1657, the Vioxx-related litigation. The PSC in this MDL cites to and relies on orders entered in those two prior MDLs to support the PSC's Fund Motion.[9] (PSC Mem. at 6.) Those prior orders, however, were entered by this Court in the *absence* of any objections or opposition briefs being filed. Thus, the defendants and other interested parties in those cases waived the fatal legal defects in the relief sought by the PSC. Here, however, those issues have not been waived, but are being timely presented to this Court. In light of the overwhelming weight of legal authorities demonstrating that the relief being sought by the PSC is completely

---

[9] The PSC's Memo filed in this MDL is identical in many respects to the same motion papers filed in those MDLs. (*Compare* MDL 1344 Docket Number 442 *with* MDL 1657 Docket Number 486 *with* PSC's Mem.)

14

inappropriate, there is no reason for this Court to enter a similar order in this MDL now that these legal authorities have been presented to this Court.

**WHEREFORE**, for all the foregoing reasons, Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Fire & Marine Insurance Company, and The Standard Fire Insurance Company, respectfully request that this Court deny Plaintiffs' Steering Committee's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit; and grant such other relief this Court deems necessary and proper.

August 10, 2010

/s/Ralph S. Hubbard_____
**Ralph S. Hubbard III, La. Bar No. 7040**
**Seth A. Schmeeckle, La. Bar No. 27076**
**LaDonna G. Wilson, La. Bar No. 29102**
Lugenbuhl, Wheaton, Peck
 Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
e-mail: rhubbard@lawla.com
 sschmeeckle@lawla.com
 lwilson@lawla.com

And

**Donna J. Vobornik**
**Daniel E. Feinberg**
**Anthony T. Eliseuson**
SONNENSCHEIN NATH & ROSENTHAL LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606-6404
Phone: (312) 876-8000
Fax: (312) 876-7934
dvobornik@sonnenschein.com
dfeinberg@sonnenschein.com
aeliseuson@sonnenschein.com

*Attorneys for Defendants The Travelers Indemnity Company of Connecticut, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Fire & Marine Insurance Company, and The Standard Fire Insurance Company*

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this <u>10th</u> day of August, 2010.

                 _/s//Ralph S. Hubbard_____
                 **Ralph S. Hubbard, La. Bar No. 7040**