UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | CASE NO. 2:09-MD-02047<br><br>SECTION L<br><br>JUDGE FALLON |
| (This Document Relates to: *Centerline Homes Construction Inc., et al.,* v. *Mid-Continent Casualty Co., et al.* (2:10-cv-00178) (E.D. La.)) | ) ) ) ) ) | <br><br><br><br>MAG. JUDGE WILKINSON |

**DEFENDANT THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA'S RESPONSE IN OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION TO ESTABLISH A PLAINTIFFS' LITIGATION EXPENSE FUND TO COMPENSATE AND REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND EXPENSES INCURRED <u>FOR MDL ADMINISTRATION AND COMMON BENEFIT</u>**

Defendant insurer The Insurance Company of the State of Pennsylvania ("ISOP") by and through undersigned counsel, oppose the Plaintiffs' Steering Committee's Motion To Establish A Plaintiffs' Litigation Expense Fund To Compensate And Reimburse Attorneys For Services Performed And Expenses Incurred For MDL Administration And Common Benefit (Dkt. # 4603) as unsupported by the law, the facts, and basic notions of fairness.[1]

---

[1] ISOP files this opposition without waiving any of its defenses or objections to venue in the underlying action.

The Plaintiffs' Steering Committee (the "PSC") seeks to impose a tax on all defendants in the MDL in order to obtain reimbursement for PSC members for expenses they have incurred allegedly for the "common benefit" of all plaintiffs. Though the PSC invokes the "common fund doctrine," it does not satisfy the clear prerequisites for applying that doctrine to sequester funds obtained through judgments or settlements in the various Chinese drywall actions. First, the PSC does not demonstrate that a "common fund" exists from which it ought to be reimbursed; it simply argues that defendants will obtain recoveries, which "*res*" should be preserved. Such a tax on recoveries in order to create the common fund violates the American Rule and flies in the face of well-established precedent. Second, the PSC does not identify any tasks that it has performed that provide a "substantial benefit" to all plaintiffs above and beyond the tasks which directly benefit the PSC or its pre-existing clients and thus does not establish a basis for remuneration under the "common fund doctrine." Third, and most importantly, the PSC fails to identify clearly the class of persons alleged to be benefited by its actions and thus does not identify with clarity from which judgments or settlements it claims a right to reimbursement. The Chinese drywall MDL is exceedingly complex, involving innumerable cross- and third-party claims. Settlements and judgments obtained by parties other than the plaintiffs thus would not be the proper target of the PSC's proposed fees even if the establishment of a common fund were proper.

I.   BACKGROUND

As this Court is well aware, the Chinese Drywall MDL is a complex amalgamation of hundreds of actions between hundreds of parties, involving diverse factual scenarios and individualized claims of liability, all relating generally to the import, distribution, and installation of defective Chinese drywall in the United States. Because so many of the cross-claims and third party claims seek to reallocate responsibility from the named defendants to others closer on the

distribution chain to the ultimately responsible party—the Chinese manufacturers and their related companies—many issues at play in the litigation require no input from the PSC. For instance, third party claims by a builder alleging that a supplier provided it with defective product are not in any way benefited by the PSC's site visits to individual plaintiffs' homes, nor by the agglomeration of plaintiffs' claims in omnibus complaints, nor by service of process under the Hague Convention on foreign defendants. The PSC's actions also have no bearing on suppliers' contribution claims against those further up the chain. Similarly, the MDL involves at least one third party claim by an insured against ISOP, the resolution of which has no relation to any tasks performed or actions taken by the PSC; rather, it relies exclusively on the scope of insurance coverage under the relevant policy. Notably, Plaintiffs' insurance coverage disputes are expressly excluded from the MDL and are not in coordinated state court proceedings, and thus are even more clearly beyond the reach of the PSC's claims for compensation. Nevertheless, by this motion the PSC seeks a share of any settlements reached by any defendants, including these wholly unrelated to its efforts. Though the PSC has, to date, invested in factual investigation, omnibus complaints, and service of process abroad, allegedly for the "common benefit" of all plaintiffs, Dkt. # 4603 at 3, these actions have no clear benefit for the third-party and cross-plaintiffs that play a huge role in this litigation. Furthermore, even with regard to individual plaintiffs, the PSC sets forth no service or expense incurred for the common benefit that does not redound to the PSC's narrow interests as well.

     Additionally, the PSC has not yet obtained judgments or settlements for the lion's share of the plaintiffs it purports to represent in the MDL. ISOP opposes the PSC's current motion as unsupported by the relevant law and, at a minimum, premature and overly broad because the

MDL proceedings remain in their infancy. Besides the *Germano* and *Hernandez* cases[2], the PSC's efforts have not yet led to any resolution as to which the PSC may have a right to compensation. The PSC has only recently served the Omnibus complaints, jurisdictional discovery is ongoing, and trials as to other plaintiffs' claims have not even been scheduled. While the MDL is lumbering forward as to plaintiffs' claims, *defendants*--homebuilders and suppliers—have been paying to remediate plaintiffs' homes. These defendants, not the PSC, have been negotiating with the manufacturers of the defective drywall for settlements to cover those remediation costs.[3] Those same defendants, and not the PSC, have been negotiating insurance coverage disputes with defendant insurers, including ISOP. Paradoxically, the PSC proposal to impose an assessment upon such settlements (ostensibly and ironically based on the provision of common benefit) would further impede the settlements and remediation.[4]

The PSC has neither reached broad-based resolution of plaintiffs' claims, nor has it demonstrated in its motion that any such resolution is imminent. In short, the MDL is moving forward but is far from "mature," as the PSC suggests.

II. THE PSC'S COMMON FUND WOULD IMPOSE ADDITIONAL COSTS ON DEFENDANTS AND INTERFERE WITH SETTLEMENT NEGOTIATIONS

Though the common fund doctrine does provide an exception to the American Rule against fee- and cost-shifting, it is not intended to impose additional liability on defendants. *Boeing v. Gemert*, 444 U.S. 472, 481-82 (1980); *Knight v. U.S.*, 982 F.2d 1573, 1579 (Fed. Cir. 1993). The PSC's 17% fee demand would, however, force an increase in the cost to defendants

---

[2] The PSC itself would be best-situated to ensure that it obtains recovery of its costs and fees with respect to *Germano* and *Hernandez* as the PSC tried those cases to judgment.

[3] Notably, the PSC's current motion seeks to impose an assessment upon such settlements in which it has not even been involved. The PSC's broadly worded request would seek to assess "the recoveries in the federal court cases and claim payments to plaintiffs in state courts that agree to coordination," without specifically limiting the assessments to those cases in which Plaintiffs recover

[4] The PSC has also moved to preclude these settlement negotiations through its pending Motion Restricting Communications With the Putative Class. (Dkt. # 4338-2)

of settling any individual plaintiff's claim. In order to cover the added cost of the PSC's fee, either plaintiffs would have to accept lower recoveries, or defendants would have to pay more to settle claims to accommodate the fee. Alternatively, the individual plaintiff's counsel would have to reduce his or her own fee to satisfy the PSC's fee. As a practical matter, and because the entire effort in these cases is to remunerate plaintiffs for their legitimate damages from defective drywall, the PSC is effectively seeking to impose the very type of tax on the defendants that *Boeing* precludes.

### III. THE PSC'S MOTION DOES NOT SATISFY THE STANDARDS FOR APPLYING THE COMMON FUND DOCTRINE

#### A. The PSC Has Neither Conferred A Substantial Benefit On Plaintiffs Nor Obtained Success

Plaintiffs seek to establish a common fund in recognition of purported "common benefits" provided by the PSC. Motion, at 4 ("[T]he purpose of this motion is to seek an Order creating a 'fund' … from which the PSC and other attorneys performing 'common benefit work' for plaintiffs may obtain compensation for the benefits that they confer on plaintiffs…."). However, in the Fifth Circuit, the "common benefit" exception applies for the benefit of "successful litigant[s] whose success confers a 'substantial benefit' on the members of an ascertainable class, and where the court's jurisdiction over the subject matter makes possible an award that will operate to spread the costs proportionately among them." *Rogers v. Air Line Pilots Assoc., Int'l*, 988 F.2d 607, 616 (5th Cir. 1993).[5] Here, the PSC has not achieved such success (indeed, the litigation has only just begun), and points to no *substantial* benefit its efforts has conferred on plaintiffs (much less on settling cross-claimants or third-party plaintiffs). The PSC do cite various *efforts* expended in the course of this litigation—undertaking discovery,

---

[5] Similarly, the Louisiana Supreme Court has recognized that the common benefit doctrine applies where an attorney shows, *inter alia*, "that he maintained a successful suit for the preservation, protection, or increase of a common fund." *Kirkpatrick v. Young*, 456 So.2d 622, 625 (La. 1984).

- 5 -

filing, translating, and serving complaints. None of these, however, would qualify as *accomplishments* that would be a legitimate predicate for a common fund. Furthermore, neither the class of plaintiffs nor defendants is ascertainable as the motion and proposed order are decidedly vague with regard to which settlements between which parties would be covered and which costs or recoveries are in play. As such, there is no feasible way to ensure that the litigation fund will spread the costs proportionately among parties meriting any involvement in a common fund.[6]

IV.  THE PSC'S MOTION REQUESTS RELIEF FAR BEYOND THE COURT'S EQUITABLE POWER

Perhaps aware that the Motion falls short of the common fund mark, the PSC next argues that the Court should impose the assessments as part of "its inherent power to appoint counsel to coordinate and manage complex multiparty litigation and to require that such counsel be paid for discharging these duties out of the proceeds of the litigation generally." (Motion, at 6.) However, the requested relief orbits far beyond the Court's equitable power and well outside any of the cases cited by the PSC. As discussed above, the PSC does not pin down which recoveries would be included within the ostensible common fund, and does not exclude recoveries unrelated to the PSC's efforts or cases outside of the MDL.[7] Indeed, given the paucity of recoveries in the

---

[6] For similar reasons, the proposed litigation fund also runs afoul of the factors that the Boeing court found distinguished "common-fund cases from cases where the shifting of fees was inappropriate." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980) ("First, the classes of persons benefited by the lawsuits were small in number and easily identifiable …. Second, the benefits could be traced with some accuracy….. Finally, there was reason for confidence that the costs [of litigation] could indeed be shifted with some exactitude to those benefiting.").

[7] Another defect in the PSC's motion is the failure to identify a common fund in the first place. *See Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1319 (10th Cir. 2000) ("[T]he dispositive fact is that this action did not result in the creation of a fund from which others would benefit. Thus, we find no legal basis on which the award of attorney's fees can be sustained."); *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984) (litigation requiring HUD to make subsidy payments to individual landlords did not create a "common fund," therefore common fund doctrine did not apply.). In *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1018 (5th Cir. 1977), the court held that "[d]etermination of whether a fund exists is a combination of traditional and pragmatic concepts centering around the power of the court to control the alleged fund." In that case, lead counsel had obtained a concession of liability by defendant ten days before trial, and the only issues remaining to be litigated were damages and enforcement. Thus, though the common fund had not yet been generated, it was imminent.

MDL so far, it seems likely that the Motion is actually motivated by and directed at the recent non-MDL settlements. Plaintiff can cite no caselaw to support such a wide-ranging imposition of assessments. *See Turner v. Murphy Oil,* 422 F.Supp.2d 676, (E.D. La. 2006) (The PSC's motion "is not aimed at individuals who accept a settlement offer that would have been made regardless of class certification") (quotations omitted); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1010 ("[W]e accordingly do not specifically consider the authority of the district court to assess a fee in cases not formally before it.").

The context and timing of the PSC's request in fact weigh against the establishment of a common fund for the PSC's litigation expenses at this juncture. In this regard, the cases cited by the PSC are clearly distinguishable. For example, in *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606-07 (1st Cir. 1992), the plaintiffs' counsel sought a distribution from an already-established fund <u>after</u> liability had been determined and <u>after</u> global settlement was reached as to all plaintiffs. In *In re MGM Grand Fire Litig.*, 660 F. Supp. 522, 524-36 (D. Nev. 1987), the court permitted distributions from a common fund that had been established pursuant to a pre-trial order that expressly established which plaintiffs were presumed to be relying on work performed by the PSC for the "common benefit."

Establishment of a common fund at this juncture, before liability issues have been addressed in the MDL and before any PSC efforts towards global resolution have achieved even a modicum of success, would be premature and inappropriate under the clear standards set forth by state and federal courts in Louisiana. *See Rogers*, 988 F.2d at 616; *Kirkpatrick*, 456 So.2d at 625.

V.    THE PSC IS NOT ENTITLED TO COLLECT ASSESSMENTS FROM INSURANCE COVERAGE DISPUTES THAT HAVE NOT BEEN TRANSFERRED TO THE MDL

The PSC's request for an order "creating a 'fund' consisting of the recoveries in the federal court cases and claim payments to plaintiffs in state courts that agree to coordination," Dkt. # 4603 at 4, is overly broad in that it would impose assessments on the resolution of any insurance coverage decisions and/or settlements related to Chinese Drywall involving all insurers named as defendants in *Amato v. Liberty Mut. Ins. Co.*, No. 10-932. But on June 15, 2010, the Judicial Panel on Multidistrict Litigation (the "JMPL") refused to transfer three declaratory judgment actions against ISOP and other insurers relating to insurance coverage for drywall damage. The insurance coverage disputes address whether ISOP has a duty to indemnify or defend its insureds under the specific language of each insurance policy. The JPML held that the insurance coverage disputes involved strictly legal questions that did not demand centralized administration through the MDL. Thus, because such insurance coverage cases are not part of the MDL, no recoveries out of these disputes should be assessed for the PSC's litigation expense fund. This is all the more so given that the PSC's efforts here are unrelated to the predominant legal issues to be resolved in those actions.

VI.    CONCLUSION

For the foregoing reasons, ISOP respectfully requests that this Court deny Plaintiffs' Steering Committee's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit.

Respectfully submitted:

s/Erin Fury Parkinson
**ERIN FURY PARKINSON, T.A.  (# 22549)**
**JOSE L. BARRO, III   (# 30857)**
**SARAH J. MURPHY  (#31893)**
MCGLINCHEY STAFFORD, PLLC
601 Poydras Street, 12th Floor
New Orleans, Louisiana  70130
Telephone:  (504) 586-1200
Facsimile:  (504) 910-9539
E-mail:   eparkinson@mcglinchey.com
              jbarro@mcglinchey.com
              smurphy@mcglinchey.com

**WARREN LUTZ**
**PAUL D. SMOLINSKY**
JACKSON & CAMPBELL, P.C.
1120 20th Street, N.W.
Suite 300 South
Washington, D.C.   20036
Phone:  (202) 457-1600
Facsimile:  (202) 457-1678
E-mail:   wlutz@jackscamp.com
              psmolinsky@jackscamp.com

**Attorneys for Defendant:**
**THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing "*Defendant The Insurance Company of the State Of Pennsylvania's Response in Opposition to the Plaintiffs' Steering Committee's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit*" has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United states District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 10th day of August, 2010.

s/Erin Fury Parkinson
**ERIN FURY PARKINSON, T.A.  (# 22549)**
**JOSE L. BARRO, III   (# 30857)**
**SARAH J. MURPHY  (#31893)**
MCGLINCHEY STAFFORD, PLLC
601 Poydras Street, 12th Floor
New Orleans, Louisiana  70130
Telephone:  (504) 586-1200
Facsimile:  (504) 910-9539
E-mail:  eparkinson@mcglinchey.com
            jbarro@mcglinchey.com
            smurphy@mcglinchey.com