UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | CASE NO. 2:09-MDL-2047 SECTION "L" |
| | * | JUDGE FALLON |
| **This document relates to: Crosby (10-1693)** | * * * | MAGISTRATE WILKINSON |

**FEDERAL INSURANCE COMPANY'S
REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION
TO DISMISS IN COMPLIANCE WITH COURT'S JULY 1, 2010 ORDER**

Defendant Federal Insurance Company ("Federal") submits this Reply Memorandum in Support of its Rule 12(b)(6) Motion to Dismiss. The Crosbys concede they have not alleged physical loss to the drywall installed in their homes and thus they cannot meet their burden to establish coverage under Federal's homeowners policy for damage to the drywall itself. Furthermore, the Crosbys have failed to rebut Federal's showing that the plain language of several exclusions contained in the homeowners policy bars coverage for the Crosbys' remaining damage claims. Accordingly, the Court should grant Federal's motion and dismiss the Crosbys' claims under Rule 12(b)(6).

**I. ARGUMENT**

**A. The Policy Exclusions Are Properly Before The Court.**

The Crosbys agree Federal's policy "can be considered by the Court for purposes of defendant's Motion to Dismiss." *See* Opp., at p. 3. Yet, illogically, the Crosbys contend the Court may consider only a limited portion of the policy and must disregard the policy exclusions, because they purportedly constitute affirmative defenses not apparent on the face of the pleadings. To the contrary, the Crosbys' allegations in the Petition do raise the Policy's exclusions. The Crosbys alleged

- 1 -

Federal's homeowners policy is "an all risk policy, providing coverage for all risks of direct physical loss and/or damage to the home, contents and other permanent structures <u>unless an exclusion applies</u>." Petition, ¶ VII (emphasis added).[1]  The Louisiana Supreme Court reviewed a nearly identical allegation and concluded it put the policy exclusions at issue such that the policy exclusions did not constitute an affirmative defense.  *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 204 (La. 2008) (finding that because plaintiff raised policy exclusions by alleging the homeowner policy was an all risk policy providing coverage for all risks unless expressly excluded, the policy exclusions were not new matters and, therefore, did not constitute an affirmative defense).  Just as in *Sher*, the Crosbys' allegation here places the exclusions at issue, with the result that the exclusions are not a new matter raised by Federal and do not constitute affirmative defenses.

Moreover, because the Policy is properly before the Court, the Court necessarily must be able to consider the entire policy, including its exclusions.[2] Following these rules, the Fifth Circuit and numerous district courts have routinely applied policy exclusions in the context of a Rule 12(b)(6) motion, and have not hesitated to dismiss claims where a policy exclusion applies to bar coverage.[3] *See, e.g., In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 220-21 (5th Cir. 2007) (holding motion to dismiss should have been granted in favor of defendant insurers on ground that flood exclusions unambiguously precluded damage resulting from the levee breaches); *Tuepker v. State Farm Fire &*

---

[1] The Crosbys further alleged "defendant misrepresented the policy provision, <u>including the exclusions</u>, in denying plaintiffs' claim under the policy."  Petition, ¶ XIX (emphasis added).

[2] *See, e.g., Millenium Petrochem., Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 342 (5th Cir. 2004) (noting that to determine the intent of the parties, the court should consider *all parts of the contract together*, ensuring that each provision is given effect and none is rendered meaningless).  Interestingly, the Crosbys do ask the Court to consider the ensuing loss language of the Policy, which is contained in the Policy exclusions, even though there are no allegations in the Petition regarding ensuing losses.

[3] *See also Lawrence v. Slidell Welding Service, Inc*., 2010 WL 2653347, \*4 (E.D. La. June 25, 2010) (granting insurer's motion to dismiss based on application of policy exclusion, and stating:  "A review of the allegations made in plaintiff's complaint and the language of the insurance policy, itself, reveals that the plain and unambiguous language of the policy excludes coverage in this matter"); *Palm Hills Properties, L.L.C. v. Continental Ins. Co*., 2008 WL 4303817, \*\*2-3 (M.D. La. July 23, 2008) (noting it is proper to consider insurance contract on motion to dismiss and granting insurer's motion to dismiss based on application of policy exclusion).

*Cas. Co.*, 507 F.3d 346 (5th Cir. 2007) (affirming dismissal under Rule 12(b)(6) of claims for damage caused by storm surge finding that policy exclusion unambiguously barred coverage).[4]

    **B.  The Crosbys Admit They Have No Claim For Repair of The Drywall Itself and Fail to Overcome the Overwhelming Authority Supporting Application of the Policy Exclusions to the Remaining Damage Claims.**

The Crosbys do not dispute they fail to state a claim for repair and replacement of the drywall because they did not allege a physical loss to the drywall itself. Opposition, p. 5. Moreover, the weight of authority compels the conclusion that the Crosbys' claim for other damage is nevertheless excluded under numerous Policy exclusions.

    **1.  The Crosbys Misconstrue the Latent Defect Exclusion.**

Tellingly, the Crosbys do not and cannot distinguish Federal's authorities directly on point on the latent defect exclusion. The Crosbys entirely ignore the Louisiana Third Circuit's decision in *Nida*, in which the court defined the term "latent defect" in the context of a homeowners policy's latent defect exclusion in a manner that precisely fits the Crosbys' allegations here.[5] Hoping to avoid application of the exclusion, the Crosbys argue for a different definition of "latent defect," conflating it into the definition of inherent vice by citing sources that define and discuss the term "inherent vice."[6] For example, the only case the Crosbys could cite to support their proposed definition of "latent defect" <u>does not even mention the terms "latent" or "latent defect" in the decision</u>, but instead

---

[4] Despite the Crosbys' reliance on the decision in *Builders Mut. Ins. Co. v. Dragas Management Corp.*, No. 09-185, 2010 WL 2813397 (E.D. Va. July 15, 2010), the *Dragas* decision does not stand for the proposition that policy exclusions cannot be considered on a motion to dismiss. In fact, in *Dragas*, the parties did not argue any policy exclusion as a basis for their Rule 12(b)(6) motions before the court. *See Builders Mut. Ins. Co. v. Dragas Management Corp.*, (E.D. Va.) Rec. Doc. Nos. 83 and 85. Policy exclusions were simply not an issue in *Dragas*.

[5] The *Nida* court defined "latent defect" as "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." *Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328, 335 (La. App. 3d Cir. 1984) (quoting *Walker v. Travelers Indemnity Co.*, 289 So.2d 864, 870 (La. App. 4th Cir. 1974)).

[6] Although the Crosbys suggest "[T]he insurance industry has defined the latent defect or inherent vice exclusion as 'a quality within an object which makes it tend to destroy itself,'" a review <u>of the complete quote</u> as it appears in the publication makes clear that this "destroy itself" language refers to the inherent vice exclusion and not the term latent defect: "[T]he term 'inherent vice' appears in many inland marine insurance policy exclusions. . . . **Inherent vice** may be defined as a quality within an object which makes it tend to destroy itself." William H. Rodda, Fire and Property Insurance 298 (Prentice-Hall, Inc. 1956). Similarly, the Crosbys conveniently gloss over the distinction made in the FC&S Bulletin between the definition of inherent vice and latent defect, erroneously suggesting the two terms have the same meaning.

- 3 -

discusses an "inherent vice" exclusion only.[7]  Under the Crosbys' interpretation, the term "latent defect" would have the same meaning as "inherent vice," rendering the Policy's use of "latent defect" in the exclusion superfluous and meaningless.

The Crosbys' theory that the latent defect exclusion is intended to apply only to expected losses has been specifically rejected by the court in *Travco* in a detailed, thorough decision, in which the court concluded exactly the opposite: "[T]he latent defect exclusion is intended to remove the risk for losses that result from flaws in property that are undetectable, and hence unexpected." *Travco*, 2010 WL 2222255, at *12.  For these reasons, the Crosbys' proposed interpretation of the latent defect exclusion must be rejected—the fact the Crosbys have not alleged the drywall is damaging or destroying itself is irrelevant.  Applying the definition of the latent defects exclusion as established under Louisiana law, the Crosbys' allegations are unambiguously barred from coverage because the alleged problem with the drywall—"emission of odorous gases that cause corrosion"—was hidden and concealed from knowledge and sight.  Petition, ¶ VI.

Finally, the Crosbys argue there is no evidence that the drywall installed in their home contains a latent defect and they have alleged the opposite.  While the Crosbys carefully have avoided in this insurance coverage suit expressly alleging that the drywall is defective, recognizing that such allegations might trigger various policy exclusions, they have alleged just the opposite in their suit against the drywall manufacturer.  In that lawsuit, the same plaintiffs alleged that the same drywall is "inherently defective" and "not reasonably fit for its ordinary and intended purpose." *See* Complaint in *Payton, et al. v. Knauf Gips, et al.*, No. 09-7628, Rec. Doc. No. 1, at ¶¶ 2702, 2712.[8]  These statements contained in other pleadings constitute admissions that bind the Crosbys in this suit.  *See Sinclair*

---

[7] *See Employes Cas. Co. v. Holm*, 393 S.W. 2d 363 (Tex. Civ. App. Houston 1965).

[8] The Court can consider the Crosbys' pleadings in other lawsuits, which are a matter of public record, in connection with a 12(b)(6) motion.  *See, e.g., Burns v. Mayes*, No. 09-20126, 2010 WL 445629, at *1 (5th Cir. 2010) (relying on court records in deciding a Rule 12(b)(6) motion); *Hall v. Hodgkins*, 305 Fed. Appx. 224, 226 (5th Cir. 2008) (taking judicial notice of publicly available pleadings filed by the plaintiff in earlier cases and holding that it is appropriate to take judicial notice of matters of public record when deciding a 12(b)(6) motion to dismiss); *Xavier v. Belfor USA Group, Inc.*, Nos. 06-491, 06-7084, 2007 WL 4224320, at *2 (E.D. La. Nov. 26, 2007) (taking judicial notice of pleadings filed in other courts and reasoning that "[b]ecause these pleadings are matters of public record, . . . the Court may take judicial notice of these documents in connection with Defendant's Rule 12(b)(6) Motion to Dismiss").

*Refining Co. v. Tompkins*, 117 F.2d 596, 598 (5th Cir. 1941) ("Pleadings are for the purpose of accurately stating the pleader's version of the case, and they bind unless withdrawn or altered by amendment."). The Court should take judicial notice and find that the Crosbys' allegations in the manufacturer suit demonstrate that the latent defect exclusion bars coverage for the Crosbys' alleged loss.

### 2. The Corrosion Exclusion Bars Coverage.

The broad language of the Policy's corrosion exclusion, which applies to "the presence of . . . corrosion . . . however caused,"[9] in addition to "any loss caused by . . . corrosion," plainly bars coverage for the Crosbys' allegation that "[t]he Chinese drywall emits odorous compounds **that cause corrosion of** air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items." Petition, ¶ VI (emphasis added).

The Crosbys contend the corrosion exclusion does not apply because the damage is not "caused by" corrosion; instead, the damage is caused by sulphur compounds emitted by the drywall. Opposition, pp.9-10. This is simply a distinction without a difference under the plain and unambiguous language of the Federal corrosion exclusion, which applies regardless of the cause of the corrosion— because it excludes coverage for "the presence of . . . corrosion . . . however caused" in addition to "any loss caused by . . . corrosion." (emphasis added).[10] Furthermore, the *Travco* court rejected this precise argument, finding that the ordinary meaning of corrosion – "the action or process of corroding" – supported application of an identical exclusion to bar coverage for damage caused by Chinese drywall. *Travco*, 2010 WL 2222255, at *14-15. The *Travco* court reasoned that because the damage to structural, mechanical, and plumbing components indisputably resulted from "the action or process of corroding," the exclusion applied. *Id.*[11]

---

[9] (Emphasis added).

[10] The *Trus Joint Macmillan* decision cited by the Crosbys is entirely distinguishable because it did not involve a corrosion exclusion with the same language as that in Federal's Policy, that is, specifically excluding loss for the presence of corrosion, however caused.

[11] Although *Travco* was decided on summary judgment, the court did not consider evidence beyond the pleadings in determining that the corrosion exclusion applied.

- 5 -

The *Travco* court's reasoning is equally applicable here and should be followed. The damage or loss of which the Crosbys complain is damage to HVAC systems, refrigerators, electrical wiring and plumbing from the corrosion. Petition, ¶VI. The Crosbys' argument renders the exclusion meaningless because corrosion always is caused by something.

The Crosbys also contend that the corrosion exclusion does not apply because the language of the exclusion contemplates only "normal anticipated corrosion" due to the natural aging process and not corrosion resulting from a sulfidation reaction. They have failed to cite a single case supporting this proposition, instead relying only on the Fire Casualty & Surety ("FC&S") Bulletin, a dubious authority at best.[12] Moreover, the Crosbys' argument neglects the many decisions cited by Federal demonstrating that courts in Louisiana and beyond interpret similar corrosion exclusions broadly, to exclude coverage for all types of corrosion, however formed.[13] The Crosbys' attempt to distinguish these cases fails, because they did not turn on the foreseeability of the loss. Rather, as Judge Engelhardt observed, "[T]he language of the exclusion is not so limited. Nor is it ambiguous. Rather, it simply excludes *all* loss or damage from rust or dampness of atmosphere." *Transcontinental Ins. Co. v. Guico Mach. Works, Inc.*, Nos. 06-2516 & 06-3184, 2008 WL 4286538, at *1 (E.D. La. 2008).[14] As in *Travco* and *Transcontinental*, this Court should enforce the unambiguous provisions of the corrosion exclusion and bar coverage for the Crosbys' loss consisting of the presence of corrosion, however caused, or loss caused by corrosion.

---

[12] To the extent the Crosbys cited the FC&S Bulletin as extrinsic evidence of the parties' intent, such evidence cannot be considered absent a threshold finding that the policy is ambiguous. *See Sanchez v. Verio, Inc.*, No. 03-11341, 2004 WL 2980781, at * (5th Cir. 2004) ("'Extrinsic evidence of intent is relevant only if, after examination of the entire instrument, the terms are ambiguous.'"). Moreover, resort to such extrinsic evidence is not proper in the context of a Rule 12(b)(6) motion. *See, e.g., Mingo v. Meritplan Ins. Co.*, No. 06-1914, 2007 WL 4292026, at *2 (W.D. La. 2007) ("Ordinarily, a court cannot consider extrinsic evidence in a motion to dismiss, or else the motion is converted to a motion for summary judgment under Rule 56.").

[13] *See* Federal's Memorandum in Support of Rule 12(b)(6) Motion to Dismiss, pp. 14-15.

[14] *See also Travco*, 2010 WL 2222255, at *14 ("'Most jurisdictions hold that an exclusion for damages caused by corrosion precludes recovery for damages caused by corrosion regardless of what caused the corrosion or how suddenly the corrosion occurred.'") (quoting 11 Couch on Ins. § 153:80).

### 3. The Contamination Exclusion Plainly Bars Coverage and *Doerr* Does Not Mandate Otherwise.

The Crosbys do not dispute that the broad language of the Policy's contamination exclusion clearly encompasses the alleged damage caused by sulfuric gases emitted by Chinese drywall, as the *Travco* court found, because these gases constitute "irritants" and "contaminants" and qualify as "pollutants" under the Policy's definition. Not only do the Crosbys fail to address the *Travco* court's analysis, but the Crosbys also fail to address any of the cases cited by Federal in its original brief enforcing contamination exclusions in analogous contexts. Instead, the Crosbys heavily rely on the *Doerr* decision in support of their contention that the contamination exclusion does not apply. 774 So. 2d 119 (La. 2000). But applying the *Doerr* test, fashioned for a commercial liability policy, in the context of a homeowners policy renders the pollution exclusion completely meaningless, contrary to settled precepts of insurance policy interpretation. *See, e.g., Aubris Resources, LP v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 483, 486 (5th Cir. 2009) ("'We cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable.'"). *Doerr* involved a third-party claim for bodily injury under a commercial general liability policy, which bears no resemblance to the first-party claim for property damage under a homeowners policy asserted here. The analytical framework the *Doerr* court articulated to determine whether a pollution exclusion contained in a commercial general liability policy precluded coverage for third-party losses cannot logically apply to a first-party homeowners claim such as this one. For example, *Doerr* requires a court to determine, among other things, whether the <u>insured</u> is an active "polluter" by considering "the nature of the *insured's business*," "whether that type of *business* presents a risk of pollution," and "whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary *for the insured's business*." 774 So. 2d at 135. It is impossible to imagine a scenario in which an individual homeowner, as opposed to the business at issue in *Doerr*, would ever qualify as an active "polluter" under the factors identified in *Doerr*. *Doerr* is simply inapplicable here.[15]

---

[15]   *Thompson v. Temple*, 580 So. 2d 1133, 1134 (La. App. 4 Cir. 1991), cited by the Crosbys, also involved a third-party claim for liability coverage, not a first-party claim like plaintiffs have asserted here, and the court's holding depended in part on its understanding of the purpose of liability policies. *Id.* at 1134 (reasoning that "[t]he purpose of a liability policy is to 'shield the insured from being required to make any payment on' a claim for which she may be held liable'"). As in *Doerr*, the *Thomson* court held that the pollution exclusion did not apply, reasoning that the exclusion was "intended to exclude coverage for active industrial polluters." *Id.* at 1134. Because an

### 4. The Faulty Materials Exclusion Applies Because, As The Crosbys Pleaded in Another Suit, the Drywall is "Inherently Defective."

The Crosbys ignored the cases cited by Federal showing that the faulty materials exclusion precludes coverage for the Crosbys' alleged loss. Instead, the Crosbys claim merely that the faulty materials exclusion does not bar coverage for their loss because Federal "has not shown that the drywall at issue is faulty or defective and there are no such allegations on the face of plaintiffs' Petition." Opp., at p. 16. To the contrary, the Crosbys contend because "the drywall in their homes was performing the purpose of drywall," it is not defective. *Id.* This argument fails for at least two reasons.

First, based on the Crosbys' allegations, the drywall installed in their homes is "faulty" under the Crosbys' own proposed definition-- "marked by fault or defect." The Crosbys have alleged the drywall emits odorous gases that damaged their home and contents and they have suffered "substantial economic damages, particularly associated with their remediation efforts." *See* Petition, at ¶¶ VI and XVII. Where the drywall allegedly has caused such significant damage, it is nonsensical to claim that it is not defective merely because it was adequately "serving as a finishing material." *See Travco*, 2010 WL 2222255, at **12-13 ("In common parlance, the word 'faulty' is not limited to faults that prevent an entity from accomplishing its intended purpose and [sic] itself."). The normal function of drywall is to serve as a finishing material *without* destroying the entire house and its contents in the process. Measured against this standard, the drywall in the Crosbys' home was clearly "marked by fault or defect."[16]

Moreover, directly contrary to their representations in this suit, the Crosbys specifically have alleged in another lawsuit filed in this court against the manufacturer of the drywall installed in their homes that it is "inherently defective" and "not reasonably fit for its ordinary and intended purpose."

---

individual homeowner could never be an "active industrial polluter," engrafting this requirement onto the exclusion would render it meaningless in the context of a first-party homeowners claim. The Crosbys also cite the Commissioner of Insurance Advisory Letter Number 97-01, which raises concerns specific to commercial policies, not homeowners policies like the one at issue here.

[16] Plaintiffs also fail to mention that the FC&S Bulletin, which they cite in connection with the corrosion and latent defect exclusions, concludes the faulty materials exclusion bars coverage for loss caused by defective Chinese drywall. *See* FC&S Bulletin, Chinese Drywall: The Next Big Issue? March 1, 2010, www.nationalunderwriterpc.com

*See* Complaint in *Payton, et al. v. Knauf Gips, et al.*, No. 09-7628, Rec. Doc. No. 1, at ¶¶ 2702, 2712.[17] The Court should take judicial notice of the Crosbys' allegations in other suits and not permit them to avoid dismissal through evasiveness and wordplay.

### 5. The Ensuing Loss Provisions Do Not Restore Coverage.

The Crosbys contend that the "ensuing loss" exception to the latent defect, corrosion, and faulty materials exclusions applies to restore coverage for their alleged loss caused by the drywall's emission of sulfur compounds.[18] None of the Crosbys' claims qualify as an ensuing loss such that they can show they meet an exception to the exclusions. The *Travco* court addressed application of similar ensuing loss provisions and concluded that none of the insureds' claims for damages from the Chinese drywall constituted ensuing losses such that they were entitled to coverage under the policy despite the applicable exclusions. *Travco*, 2010 WL 2222255 at *19. The court explained that "an ensuing loss is a loss that occurs subsequent in time to an initial loss." *Id.* The court found in the insured's case over damage from the Chinese drywall, "only a single claimed loss had occurred." *Id.* The court explained, although the loss occurred gradually over time, it still represented a single discreet loss from a single discreet injury—namely, the off-gassing of defective Chinese drywall. *Id.*

The *Travco* court's analysis is in step with cases in the Fifth Circuit that have examined the same ensuing loss provision and specifically held that it only provided coverage for loss that is separate and extraneous from the original damages. *Holland v. Breaux*, No. 04-3028, 2005 WL 3542899, at *6 (E.D. La. Nov. 22, 2005). In *Holland*, the court found that the floor of the house, which sagged because of the rotting foundation, was not covered by the ensuing loss provision because the floor damage was not separable from the damage to the house's foundation. *Id.* Likewise, the court found that the damaged walls and door frames that sagged because of the rotting foundation were also not covered under the ensuing loss provision because they could not be analyzed separately from the damaged foundation. *Id. See also Alton Ochsner Medical Foundation v. Allendale Mut. Ins. Co.*, 219

---

[17]  In addition, the Plaintiffs' Steering Committee has represented in its recent submission to this Court that "[t]he imported drywall is defective." *See* Plaintiffs' Steering Committee's Memorandum in Support of Motion to Establish a Plaintiffs' Litigation Expense Fund, 09-MDL-2047, Rec. Doc. No. 4603-1, p.2, 7/26/10.

[18]  The Crosbys erroneously state that the Policy's contamination exclusion contains an ensuing loss provision. The contamination exclusion does not contain any ensuing loss language.

163564

F.3d 501 (5th Cir. 2000) (holding ensuing loss provision of all risk policy contemplates damage that is different in kind, not merely different in degree); *Morgan v. Auto Family Ins. Co.*, 899 So. 2d 135 (La. App. 3d Cir. 2005) (holding ensuing loss provision did not operate to provide coverage where cause of loss was specifically excluded).[19]

Under the reasoning of the *Holland* and *Alton Ochsner* decisions, none of the Crosbys' damages are covered as ensuing losses, because all of the damages arise directly from the excluded loss—defective drywall that emits gas. As in *Holland*, there is simply no separate and extraneous loss that can be distinguished or analyzed separately from the excluded losses caused by the defective nature of the drywall such that the ensuing loss provision would provide coverage. Accordingly, the ensuing loss provision does not provide coverage for the Crosbys' claims.

## CONCLUSION

Because the Crosbys concede they have not alleged a claim for physical loss to the drywall itself and have failed to overcome the weight of authority showing that numerous policy exclusions bar coverage for their other damage claims, the Court should grant Federal's Motion to Dismiss under Rule 12(b)(6).

Respectfully submitted,

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
John W. Joyce, 27525
Madeline M. Chimento, 32390
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400

---

[19] The Crosbys acknowledge that there must be two separate losses, an excluded loss and an ensuing loss, and there must be a "distinct separation" between the two losses, for the exception to apply. Opp., at p. 19. The cases the Crosbys cited support this proposition. See, e.g., *Dawson*, 794 So. 2d 949, 951 (La. App. 2 Cir. 2001) (applying the policy's "resulting loss" exception based on the finding there were "two distinct losses or accidents"); *Lake Charles Harbor & Terminal Dist. v. Imperial Cas. & Indem. Co.*, 857 F.2d 286 (5 Cir. 1988) (finding where two distinct events occurred – cable snapped and then heavy shuttle crashed into interior of shiploader-- exception to exclusion providing coverage where "an insured peril ensues" restored coverage for second event only); *Holden v. Connex Metalna*, No. 98-3326, 2000 WL 1876338, *6 (E.D. La. 2000) ("[T]he damage that falls under the exclusion and the ensuing damage must be separable events in that the damage and the ensuing loss must be different in kind, not just degree."). The Crosbys here cannot show two distinct losses, because they have represented elsewhere that there was no loss to the drywall itself; rather, they contend, it is not defective and is performing its intended purpose.

163564

            New Orleans, Louisiana  70112
            Telephone:  504-589-9700
            Telefax:  504-589-9701

            *Attorneys for Federal Insurance Company*

## CERTIFICATE OF SERVICE

 I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 16th day of August, 2010.

              */s/ Judy Y. Barrasso*
              Judy Y. Barrasso, 2814