UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * | MDL NO.: 2047 |
| | * | JUDGE FALLON |
| | * | MAG. JUDGE WILKINSON |
| This document relates to: | * | |
| *John B. Blue and Rachelle Blue v. Auto Club Family Insurance Company* Case No. 2:10-CV-792 (E.D. La.) | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*

## AUTO CLUB FAMILY INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

This matter is presently before the Court on the Rule 12(b)(6) Motion to Dismiss filed on behalf of the defendant, Auto Club Family Insurance Company (hereinafter sometimes referred to as "Auto Club"). Auto Club respectfully submits this Reply Memorandum in response to the Plaintiffs' Opposition to Defendant, Auto Club Family Insurance Company's Rule 12(b)(6) Motion to Dismiss.

### I. THE PLAINTIFFS FAIL TO PLEAD AN INSURABLE LOSS.

The plaintiffs have failed to meet the threshold burden of proving a "direct physical loss" as required under Auto Club's policy. The plaintiffs argue that because there was some direct loss to "covered property," they have met their burden. Although the plaintiffs allege that they have sustained direct physical damage to certain property in their residence as a result of the presence of defective Chinese drywall, the mere existence of allegedly defective drywall in the plaintiffs' home does not, by itself, constitute physical loss to the drywall itself sufficient to trigger coverage under the policy's Insuring Agreement.

In addition, the plaintiffs fail to address the United States Fifth Circuit Court of Appeals' decision in *Trinity Industries, Inc. v. Insurance Company of North America,* 916 F.2d 267 (5th Cir. 1990), wherein the Court held that in order to have a "physical loss or damage" to property, the property must have been in "an initial satisfactory state that was changed by some external event into an unsatisfactory state" rather than "faulty initial construction." *Id.* at 270-71. Notwithstanding such a ruling, the plaintiffs have made no allegations of a direct physical loss to the Chinese drywall that allegedly would require remediation and replacement, *i.e.* that the drywall was in "an initial satisfactory state that was changed by some external event into an unsatisfactory state." *See Trinity Indus.,* 916 F.2d at 270-71. Moreover, the drywall has <u>not</u> suffered any direct physical loss that would potentially trigger coverage under Auto Club's policy. The plaintiffs admit such a fact in their Opposition herein when they assert that "the drywall in the Plaintiffs' home was performing the purpose of drywall, *i.e.*, serving as a finishing material, holding paint and art, providing fire protection, providing sound and heat insulation." (Pl. Opposition at 6). As there has been no "physical loss to property" as to the drywall, the cost of repairing or remediating the plaintiffs' home by removing and replacing the defective Chinese drywall is not a covered loss under Auto Club's policy.

## II. THE EXCLUSIONS IN AUTO CLUB'S POLICY PRECLUDE COVERAGE.

As the plaintiffs admit, "the insurance policy at issue in this litigation can be considered by the Court for purposes of Defendant's Motion ...." (Pl. Opposition at 3). However, the plaintiffs argue that this Court is somehow precluded from reviewing the entire insurance contract as the exclusions contained in the subject policy present "affirmative defenses." (*Id.*). Such an argument is contrary to well-settled federal jurisprudence recognizing that a court may consider documents

(2)

that "constitute the core of the parties' contractual relationship." *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-432 (7th Cir. 1993); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 220-21 (5th Cir. 2007) (motion to dismiss granted in favor of insurers as flood exclusions unambiguously precluded coverage); *Lawrence v. Slidell Welding Service, Inc.*, 2010 WL 2653347, *4 (E.D. La. June 25, 2010) ( "A review of the allegations made in plaintiff's complaint and the language of the insurance policy, itself, reveals that the plain and unambiguous language of the policy excludes coverage in this matter"); *Mendler v. Derouen*, 2009 WL 411244, *3 (E.D. La. Feb. 18, 2009) ("exclusions unambiguously apply to plaintiffs' claims ... and thus it is clear that plaintiffs have not pleaded a claim to relief that is plausible on its face ...."); *Palm Hills Properties, L.L.C. v. Continental Ins. Co.*, 2008 WL 4303817, **2-3 (M.D. La. July 23, 2008) (proper to consider insurance contract on motion to dismiss and granting insurer's motion to dismiss based on application of policy exclusion). Furthermore, the plaintiffs squarely place the policy's exclusions at issue,[1] and, as such, this Court may consider the entirety of Auto Club's policy, including its limitations and exclusions.

A.  **Faulty Workmanship Exclusion Applies**

With respect to the faulty workmanship exclusion, the plaintiffs contend that Auto Club has failed to meet its burden of proof that the drywall installed in the plaintiffs' home was "faulty," "inadequate," or "defective." As these terms are not defined in the policy, the plaintiffs assert that Auto Club cannot show that the drywall is "imperfect in form or function" or "falling

---

[1] The plaintiffs' Petition specifically states that the subject policy "is an all-risk policy, ***providing coverage*** for all risks of direct physical loss or damage to the home, contents and other permanent structures ***unless an exclusion applies***." (Petition at ¶ 7; emphasis added). As such, it is clear from the face of the pleadings that the question of coverage (and therefore the coverage exclusions) is at issue.

(3)

below the norm in structure or in mental or physical function" as "the drywall in the Plaintiffs' home was performing the purpose of drywall, *i.e.*, serving as a finishing material, holding paint and art, providing fire protection, providing sound and heat insulation." (Pl. Opposition at 6, citing *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 789 (E.D. La. 2010) (Fallon, J.)). In addition, the plaintiffs contend that "nothing on the face of the Plaintiffs' Petition" supports the application of the exclusion.

Such an argument ignores the fact that the plaintiffs' allegations in another lawsuit filed in this Court support the application of such an exclusion. More particularly, in *Amato v. Liberty Mut. Ins. Co.*, Case No. 10-932, a class action in which John and Rachelle Blue are named plaintiffs, the Plaintiffs' Omnibus Class Action Complaint makes it clear that the drywall in the plaintiffs' home is "defective."[2] Specifically, the Omnibus Class Action Complaint alleges that "the 'defective drywall' is not reasonably fit for its intended purpose and is otherwise unreasonably dangerous and defective...." *See* Plaintiffs' Omnibus Class Action Complaint ¶ 543, annexed hereto as Exhibit "A." Such allegations are judicial confessions that "constitute full proof against the party who made it." La. CODE CIV. P. art. 1853; *Lakeshore Prop. Owners Ass'n v. Delatte*, 524 So. 2d 126, 130 (La. App. 4th Cir. 1988) (an allegation in a pleading in separate lawsuit suit is an extra-judicial admission and admissible). In sum, the plaintiffs have already alleged that the drywall at issue is defective.

Moreover, the plaintiffs' misplaced reliance on this Court's opinion in *In re Chinese Manufactured Drywall Prods. Liab. Litig.* ignores the full scope of the Court's ruling. More

---

[2] This Court may take judicial notice of such matters of public record. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996); *Hicks v. Lingle*, 370 Fed.Appx. 497 (5th Cir. 2010).

particularly, this Court did not conclude that the Chinese drywall was not defective when it stated that "[t]he Chinese drywall is not structurally inferior drywall, nor does it fail to serve its intended structural purpose." *Id.* at 793. Rather, this Court specifically held that such Chinese drywall contained "***defects*** [that] *go beyond disappointed economic expectations*, causing harm which justifies access to tort remedies." *Id.* at 793 (emphasis added). Accordingly, such an attempt by the plaintiffs to rely on this Court's ruling misstates this Court's express holding.

### B. Coverage Excluded by Latent Defect Exclusion

The plaintiffs claim that the latent defect exclusion is inapplicable because "[t]here is no evidence that the problems with the Chinese manufactured drywall were latent, as the term is commonly understood," and "there are no allegations of latency or of a defect in Plaintiff's Petition." (Pl. Opposition at 8.) Despite such a contention, the plaintiffs ignore the fact that they previously alleged in their Petition that they did not discover the problem with the drywall until Spring 2009. (Petition ¶ 6.)

In addition, the plaintiffs attempt to rely on general legal reference materials that analyze the inherent vice exclusion as opposed to the latent defect exclusion. More particularly, the plaintiffs contend that the latent defect exclusion applies only to "a quality within an object which makes it tend to destroy itself," citing a definition of "inherent vice" – not latent defect – from a book published in 1956. (Pl. Opposition at 8 (quoting William H. Rodda, FIRE AND PROPERTY INSURANCE 298 (Prentice Hall, Inc. 1956)). However, the only case the plaintiffs cite in support of such a contention is a Texas state court decision that addressed a different exclusion for an inherent vice. *See Employers Casualty Co. v. Holm*, 393 S.W.2d 363, 367 (Tex. Civ. App. 1965). In short, the authorities cited by the plaintiffs do not limit the latent defect exclusion in

(5)

the manner suggested by the plaintiffs.

The plaintiffs ignore the long-standing jurisprudence recognizing that a latent defect is "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." *Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328, 335 (La. App. 3d Cir. 1984); *Walker v. Travelers Indemnity Co.*, 289 So.2d 864, 870 (La. App. 4th Cir. 1974). This exclusion "remove[s] the risk for losses that result from flaws in property that are undetectable, and hence unexpected." As was previously discussed in Auto Club's Memorandum in Support, "[l]osses from defective Chinese Drywall fit squarely within this category." *Travco Ins. Co. v. Ward*, 2010 WL 2222255, at *12 (E.D. Va. June 3, 2010).

C.  **Coverage Excluded by Corrosion Exclusion**

In attempting to challenge the application of the corrosion exclusion, the plaintiffs argue that "the damage is not caused by corrosion," but rather that the damage consists of corrosion that was "caused by the compounds being emitted from the drywall." (Pl. Opposition at 1.) To the extent the sulfuric gases were a cause of the corrosion, they are excluded by the pollution exclusion. In addition, as this Court has previously recognized, "corrosion" is "the chemical or electrochemical reaction between a material, usually a metal, and its environment that produces a deterioration of the materials and its properties." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 2010 WL 1445684, at *6 (E.D. La. Apr. 8, 2010) (quoting ASTM definition). According to the plaintiffs' Petition, that is precisely the cause of the alleged damage to metals in the plaintiffs' home. (Petition ¶ 6) As noted in Auto Club's Memorandum in Support, courts have consistently rejected such an argument. *See Kay v. United Pac. Ins. Co.*, 902 F. Supp. 656, 658 (D. Md. 1995) (in corrosion exclusion, "corrosion is being used in its sense of a process, not

in its sense of a completed state," and that the exclusion applies to "losses and damages, such as the loss of required structural strength, that are the effects of corrosion").

The plaintiffs' reliance on dicta in *Trus Joist Macmillan v. Neeb Kearney & Co.*, 2000 WL 306654 (E.D. La. Mar. 23, 2000) (Sear, J.), is also misplaced as such a decision merely recognized that simply because bedplates were rusted, such a condition would not necessarily establish that rust was the cause of the damage. *Id.* at *6-7. Moreover, the plaintiffs overlook two later decisions by judges of this Court that were contrary to the plaintiffs' argument. *See Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, Civ. Nos. 06-2516 & 06-3184, 2008 U.S. Dist. LEXIS 69972, at *4-5 (E.D. La. Sept. 17, 2008); *Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, Civ. No. 06-8710, 2008 U.S. Dist. LEXIS 18335, at *8 (E.D. La. March 10, 2008) (Porteous, J.).

### D. Coverage Excluded by Pollutant Exclusion

In an attempt to challenge the plain language of the policy's pollutant exclusion, the plaintiffs argue that the Louisiana Supreme Court's ruling in *Doerr v. Mobil Oil Corp.*, 774 So.2d 119 (La. 2000) should govern this Court's interpretation of Auto Club's pollutant exclusion in its *homeowners'* policy. Such a contention ignores the clear differences in the policy at hand and the policy at issue in *Doerr*. As was discussed in detail in Auto Club's Memorandum in Support, *Doerr* involved commercial liability insurance coverage for a business, not first-party property insurance coverage of a home. In addition, the pollution exclusion in the instant case is significantly narrower than the exclusion in *Doerr* and serves a different purpose. Moreover, the Court's decision in *Doerr* relied heavily on the historical rationale for the pollution exclusion in liability policies, which is clearly inapposite to property

insurance. Furthermore, and perhaps most importantly, applying the test enunciated in *Doerr* to first-party property insurance claims under a homeowners' policy would completely eliminate the exclusion from the policy.

Instead of addressing these points, the plaintiffs attempt to apply the factors articulated in *Doerr* – involving "the nature of the insured's ***business***, whether that type of ***business*** presents a risk of pollution," and whether that business is a "polluter," to the present situation. (Pl. Opposition at 14-15) Ironically, the plaintiffs' analysis clearly illustrates how the *Doerr* decision is inapplicable to the case at hand. A homeowner is never a "professional polluter" in the sense that a commercial business can be. Moreover, it is difficult to envision a scenario in which the plaintiffs' interpretation of the exclusion would apply to a homeowner.

The plaintiffs further contend that *Thompson v. Temple*, 580 So.2d 1133 (La. App. 4 Cir. 1991) requires application of the *Doerr* decision to a homeowners' policy. Quite notably, *Thompson* involved ***liability*** insurance coverage for claims made against a homeowner by third parties who were tenants in the home who sued the homeowner for personal injuries caused by carbon monoxide released from a heater. *Id.* at 1134. It should be noted that the liability insurance section of Auto Club's policy, which provides coverage for certain types of claims made by third parties *against* the Blues, does *not* contain pollution exclusion. The present issue is the exclusion for damage to the insured's own property caused by a pollutant, to which such an exclusion has been enforced in property insurance policies for decades. Moreover, *Thompson* provides no guidance as to how the *Doerr* decision could be applied to a homeowner without completely eviscerating the pollution exclusion in a homeowners' policy.

(8)

Finally, the plaintiffs argue that "[t]he 'pollutant' at issue here is contained within drywall" (Pl. Opposition at 17); and that the Petition does not adequately allege that there is a "pollutant." However, Auto Club notes that it is the sulfuric gas that is the "pollutant." The plaintiffs clearly allege that these "odorous" and "noxious" gases "cause corrosion" of metals and "physical injuries to Petitioners and their children." (Petition, ¶ 6.) Auto Club's policy defines "pollutants" as "irritants" and "contaminants," and "[u]nder any reasonable definition of these terms, the gases released [by Chinese drywall] qualify as irritants and contaminants." *Travco*, 2010 WL 2222255, at *18. As this Court has previously held, "by any recognized standard, high levels of corrosive gases are present in the representative homes. This condition is clearly irritating and harmful to residents and destructive to property." (Opinion in *Germano v. Taishan Gypsum Co. Ltd.*, Rec. Doc. 2380, at 26; quoted by PSC in Doc. 5011-1, at 7).

E.  **No Coverage for Damage to Personal Property and Personal Injury**

As the plaintiffs have conceded that there is no coverage under Auto Club's policy for damage to any personal property or for any alleged personal injuries to members of the household, such claims should be dismissed as a matter of law.

F.  **Ensuing Loss Provision Does Not Restore Coverage**

The plaintiffs assert that any discussion of the policy's ensuing loss provision is "notably absent" from Auto Club's Motion. Auto Club did not discuss the ensuing loss clauses of the applicable exclusions as the ensuing loss provision only provides coverage for "any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy." (Policy at 17.) As more fully discussed in Auto Club's Memorandum in Support, the plaintiffs' claims are all excluded by the policy's various applicable provisions and exclusions. Moreover, the

allegations contained in the plaintiffs' Petition do not assert an ensuing loss. The alleged damages to the electrical wiring, copper tubing, and air conditioning equipment in their residence are all derived from a single source, *i.e.* the alleged off-gassing of the drywall. The *Travco* Court rejected such an argument for the same reasons. As the Court stated:

> First, none of the losses claimed qualify as "ensuing" losses. An ensuing loss is a loss that occurs subsequent in time to an initial loss. In the present case, only a single claimed loss has occurred. The Chinese Drywall released reduced sulfur gases which harmed Defendant, members of his family, and items of personal property inside the Ward Residence. Although this damage occurred gradually over a period of time, it still represents a single discrete loss from a single discrete injury, namely the off-gassing of defective Chinese Drywall.
>
> Second, even if the losses to the components of the Ward Residence could somehow be characterized as "ensuing losses," they would still be losses "excluded by any other provision" in the Policy - specifically, the corrosion exclusion. However the chain of events is structured, the damage to the metallic components of Defendant's Residence is a loss caused by the "action or process of corroding." Thus, this loss is subject to the corrosion exclusion even if the other exclusions - pollutant, faulty materials, or latent defect - are set aside under the ensuing loss provision.

*Travco*, 2010 WL 2222255 at *19 (citations omitted).

### G. <u>Bad Faith Claims Fail</u>

Finally, the plaintiffs allege that their bad faith claims under the Louisiana Insurance Code are dependent on "whether or not Plaintiffs have alleged a claim for coverage under the policy." Such an allegation ignores the well-settled law in Louisiana that an insurer does not act in bad faith when it denies a claim based upon a reasonable defense to coverage or has legitimate doubts regarding coverage. *Rogers v. Samedan Oil Corp.*, 308 F.3d 477 (5th Cir. 2002); *Matter of Hanover Corp.*, 67 F.3d 2003 (5th Cir. 1995).

Respectfully submitted:

_/s/ Alan J. Yacoubian_

ALAN J. YACOUBIAN – T.A. (#17213)
NEAL J. FAVRET (#24412)
GENEVIEVE K. JACQUES (#27818)
JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
701 Poydras Street - Suite 4700
New Orleans, Louisiana 70139-7708
Telephone: (504) 528-3001
Facsimile: (504) 528-3030
Attorneys for defendant, Auto Club Family
Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service. I further certify that I have served a copy of the foregoing pleading on all parties to this proceeding not registered for electronic service, if any, by e-mail, fax and/or mailing the same by United States mail, properly addressed and first class postage prepaid.

_/s/ Alan J. Yacoubian_

397294/0179-10071