UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL : MDL No. 2047
PRODUCTS LIABILITY LITIGATION : Section L
_____ :
This Document Relates to:

NORTHSTAR HOLDINGS, INC., : JUDGE FALLON
NORTHSTAR HOMES, INC., AND : MAG. JUDGE WILKINSON
NORTHSTAR HOLDINGS AT B & A, LLC,

vs.

GENERAL FIDELITY INSURANCE
COMPANY, QUANTA INDEMNITY
COMPANY, MID-CONTINENT CASUALTY
COMPANY, AXIS SURPLUS INSURANCE,
AND ESSEX INSURANCE COMPANY.

Case no.: 2:10-cv-00384
_____

### DEFENDANT ESSEX INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Defendant ESSEX INSURANCE COMPANY ("ESSEX"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12 and Local Rule for the Eastern District of Louisiana 7.4, hereby files the following Memorandum of Law in support of its Motion for Protective Order.

1

## I. The discovery is premature

Essex will not repeat in detail the various arguments and support therefor as advanced in its Motion to Dismiss. It is the very status of that Motion that makes the requested discovery inappropriate and premature. In that motion, Essex raised the following arguments:

- The Complaint must be dismissed against Defendant Essex due to Plaintiffs' failure to serve Essex within 120 days as required by Fed. R. Civ. P. 4(m).

- Plaintiffs have no cause of action for benefits under Policy No. 04SX147476 because such policy does not exist;

- Plaintiffs have failed to meet their burden of showing that Venue in the Eastern District of Louisiana is proper;

- Plaintiffs have not established that the Eastern District of Louisiana may exercise personal jurisdiction over Defendant Essex; and

- The Southern District of Florida is the most convenient forum with the most interest in the outcome of this litigation.

The discovery contained in the Interrogatories, Requests for Production and Notice of Deposition relates to whether Essex (or any possibly related entity) has ever done any act in Louisiana, and the nature of that act. In fact, Document Requests 14 - 23 don't even relate to Louisiana, Interrogatories 21 - 23 are irrelevant to jurisdiction, and topics 12 - 15 are irrelevant. Further, to the extent the discovery requests purportedly are directed to companies other than Essex, such as affiliates, parents or subsidiaries, they are totally irrelevant as those entities have nothing to do with this case.

## II. No present litigation exists due to Plaintiffs' failure to serve Essex within 120 days as required by Fed. R. Civ. P. 4(m).

It goes without saying that Northstar cannot serve discovery in a nonexistent case. Essex has not been served within 120 days of the issuance of service of process as required by Fed. R. Civ. P. 4(m). Essex has contested this Court's jurisdiction over Essex based on lack of service in its Motion to Dismiss. In the absence of jurisdiction, Essex is not amenable to interrogatories, requests for admissions, or notices of deposition.

## III. Plaintiffs have not established that the Eastern District of Louisiana may exercise personal jurisdiction over Defendant Essex

Essex does not dispute that it is an Approved Unauthorized Surplus Lines Carrier that has supplied surplus lines insurance to policyholders in Louisiana. What Essex is arguing is that such contact does not meet the minimum requirements for personal jurisdiction as detailed in the motion to dismiss, and that even if the contact was otherwise sufficient, personal jurisdiction still does not exist with respect to the issue in this case, that is, the application of an insurance policy issued in Florida to a claim against an alleged insured in Florida arising out of construction in Florida. Therefore, this Court could never have personal jurisdiction over Essex in this case.

Even if the Louisiana secretary of state had been served as required by Louisiana law relating to surplus lines carriers, such service would not confer jurisdiction on this Court. This statutory agency was created to facilitate obtaining jurisdiction over surplus lines carriers only with respect to policies written in Louisiana. It is undisputed that the subject matter of this litigation has nothing to do with Louisiana. The Louisiana statute relating to surplus lines carriers limits the jurisdiction of Louisiana courts over surplus lines

carriers to policies covering Louisiana risks.

Essex is an approved unauthorized surplus lines insurer. The following information comes from the website of the Louisiana Department of Insurance:

> ESSEX INSURANCE COMPANY
> NAIC: 39020
> Status: Active
> Domicile: DE  License Types: Surplus Lines - 06/10/1981
>
> Classification: Surplus Lines
>
> Coverage Lines:
> Address: 4521 Highwoods Parkway
> Glen Allen, VA 23060
> Click here for additional addresses
> Phone: (804) 273-1400
>
> Click here for additional phones
> Agent For Service of Process: LOUISIANA SECRETARY OF STATE
> Agent Address: 8585 Archives Ave.
> BATON ROUGE, LA 70809

The pertinent Louisiana statutes pertaining to surplus lines carriers ("approved unauthorized insurers") state as follows:

> §22:5. General definitions
>
> In this Code, unless the context otherwise requires, the following definitions shall be applicable:
>
> (2) "Approved unauthorized insurer" means an insurer without a certificate of authority, or otherwise qualified under the provisions of this Code, and which is on the list of approved unauthorized insurers under the provisions of R.S. 22:1262.1, and from which a licensed surplus lines broker may procure insurance under provisions of R.S. 22:1257.
>
> (10) "Insurer" includes every person engaged in the business of making contracts of insurance, other than a fraternal benefit society. A reciprocal, an inter-insurance exchange, insurance exchange syndicate, or a Lloyds organization is an "insurer". Any person who provides an employee benefit trust as specified in Subparagraph (9)(a) of this Section is an insurer. A health maintenance organization is an insurer but only for the purposes

4

enumerated in R.S. 22:2002(7).

(17) "Surplus lines insurance" means any property and casualty insurance in this state on properties, risks, or exposures, located or to be performed in this state, permitted to be placed through a licensed surplus lines broker with an approved unauthorized insurer.

(18) "Unauthorized insurer" means an insurer which does not possess a certificate of authority to do business in the state.

§1257. Surplus line insurance from unauthorized insurers

If certain insurance coverages cannot be procured from authorized insurers, such coverages, hereinafter designated as "surplus lines", may be procured from approved unauthorized insurers provided that the insurance is procured through a licensed surplus line broker.

§1268. Legal process against surplus line insurer

A. An unauthorized insurer shall be sued, upon any cause of action arising in this state under any contract issued by it as a surplus line contract, pursuant to this Part, in the district court of the parish in which the cause of action arose.

B. Service of legal process against the insurer may be made in any such action by service upon the secretary of state or some other person in his office whom he may designate during his absence. The secretary of state shall forthwith mail the documents of process served, or a true copy thereof, to the person designated by the insurer in the policy for the purpose by prepaid registered mail with return receipt requested. The insurer shall have forty days from the date of service upon the secretary of state within which to plead, answer, or otherwise defend the action. Upon service of process upon the secretary of state in accordance with this provision, the court shall be deemed to have jurisdiction in personam over the insurer.

C. An unauthorized insurer issuing such policy shall be deemed thereby to have authorized service of process against it in the manner and to the effect as provided in this Section. Any such policy shall contain a provision stating the substance of this Section, and designating the person to whom the secretary of state shall mail process as provided in Subsection B of this Section.

It is black letter law that in diversity cases, federal courts look to the state law of the jurisdiction in which an action is brought to determine personal jurisdiction. *See, e.g.,*

*Burger King Corporation v. Rudzewicz,* 471 U.S. 462 (1985) (Supreme court upheld Florida's long-arm statute in establishing jurisdiction over an out-of-state defendant in a diversity suit brought in a Florida federal district court.)

As can be seen, the Louisiana statute is structured so that "unauthorized" insurers, such as Essex, cannot directly write insurance in Louisiana, but that their policies must be supplied by a licensed surplus lines broker in Louisiana. Under this scheme, the "unauthorized" insurer, like Essex, is not actually conducting business in the state, even though its policies may insure risks in Louisiana.

The statutory provision dealing with *in personam* jurisdiction and service of process specifically only relates to policies issued in Louisiana insuring Louisiana risks. In other words, unauthorized insurers who choose to supply surplus lines policies in Louisiana must agree to *in personam* jurisdiction for disputes involving those policies.

Here, no such policy is involved. The alleged policy insures a Florida risk, and was issued in Florida pursuant to Florida law. The Louisiana consent to suit statute does not apply by its own terms. Certainly, Essex had no reason to think it could be haled into a Louisiana court for a claim unrelated to Louisiana, since the statute regulating Essex in Louisiana specifically provides otherwise.

In determining the scope of this law, Louisiana courts are bound to follow Article 21 of the Civil Code, which instructs the judge: "In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent." It is simply not equitable that Essex be compelled to litigate this Florida case in Louisiana.

6

In following this rule, the Louisiana Supreme Court has stated:

> We begin as we must with the words of the statute at issue. Although interpretation of LSA-R.S. 32:900(L) as rewritten in 2001 is *res nova*, our inquiry is guided by well-established principles of statutory interpretation. The starting point in the interpretation of any statute is the language of the statute itself. Words and phrases shall be read in context and shall be construed according to the common and approved usage of the language. LSA-R.S. 1:3. The meaning and intent of a law is determined by considering the law in its entirety and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. *See Kinchen v. Livingston Parish Council*, 07-0478, p. 5 (La.10/16/07), 967 So.2d 1137, 1140, quoting *State v. Dick*, 06-2223 (La.1/26/07), 951 So.2d 124.

*Hawkins v. Redmon*, 09-C-2417 (La. 7/6/10); 2010 WL 2724077.

What Louisiana law on surplus lines carriers makes clear is that "unauthorized insurers" are submitting to personal jurisdiction for a very limited purpose: that they may be sued with respect to policies they issue insuring risks in Louisiana. The present litigation is no such case, and Essex has not voluntarily submitted to *in personam* jurisdiction in Louisiana regarding policies issued in Florida insuring Florida risks.

The existence of the statute regulating personal jurisdiction over surplus lines carriers implicitly limits jurisdiction to those stated situations. Louisiana's long-arm statute asserts personal jurisdiction to the limit allowed under the U. S. Constitution. Since this level of jurisdiction cannot be made greater, the only possible use of the surplus lines statute is to serve as a limitation on jurisdiction.

In this same vein, although ironically in a case extending jurisdiction over a foreign insurance carrier, the Louisiana Supreme Court stated:

> Finally, the power to legislate in terms of both substance and procedure has traditionally been left to the legislature. This principle guides us in part in reaching this decision. By authorizing *forum non conveniens* dismissal in only limited circumstances, it can be said that the legislature intended that this

7

procedural device not be available in circumstances not specified in Article 123.

*Fox v. Board of Supervisors of Louisiana State University*, 90-C-1200 (La. 5/11/91); 576 So. 2d 978, 990-1.

Here, the legislature authorized jurisdiction over surplus lines carriers only under specific circumstances which do not apply here. With respect to this motion, since jurisdiction does not exist, or at least has not been resolved by this Court, Essex is entitled to a protective order that it need not respond to discovery.

## IV.     The policy is not properly identified

As pointed out in Essex' motion to dismiss, Northstar has not even correctly identified any policy issued by Essex which is pertinent to this case. Essex should not be required to respond to discovery unless and until the identity of a policy potentially applicable to this claim is at least alleged. Essex cannot frame responses to discovery without knowing the subject matter of this case.

## V.     A more convenient venue exists in the Southern District of Florida

As also pointed out in Essex' motion to dismiss, a litigation brought by co-defendant General Fidelity already exists in the Southern District of Florida regarding the very issue of coverage for the same underlying claim. Not only are both the subject of this suit and the parties located in Florida, even Northstar's counsel is located in Florida, and has demanded that discovery materials be produced at its office in Florida. Northstar's draft Notice of Deposition states that the depositions will be taken by a person "authorized by law to take depositions in the State of Florida." Certainly, Essex should not be required to respond to discovery requests for a case in Louisiana where all the responses are to be

8

made in Florida, the proper forum for this litigation.

## VI.     Conclusion

Defendant Essex has filed a Motion to Dismiss which raises the issue of this Court's jurisdiction over Essex. Louisiana specifically provides by statute that Essex is not amenable to personal jurisdiction in Louisiana for policies and risks located outside Louisiana. The discovery propounded by Northstar is burdensome and unnecessary to a determination of the jurisdictional issues. The discovery is intended to be conducted in Florida, not Louisiana. Therefore, this Court should enter a Protective Order stating that Essex not be required to respond to any discovery propounded by Northstar unless and until this Court determines that personal jurisdiction over Essex exists in Louisiana.

The undersigned certifies that our office, in good faith, has conferred or attempted to confer with the person or party propounding this discovery in an effort to resolve this dispute without court action, but has been unsuccessful in doing so.

Respectfully submitted:

s/ Rebecca C. Appelbaum
REBECCA C. APPELBAUM
FL Bar No. 0179043
rappelbaum@butlerpappas.com
Butler Pappas Weihmuller Katz Craig LLP
777 S. Harbour Island Boulevard, Suite 500
Tampa, Florida 33602
(813) 281-1900
(fax)(813) 281-0900

CARIN DORMAN BROCK , ESQ.
LA Bar. No. 28339
cbrock@butlerpappas.com
Butler Pappas Weihmuller Katz Craig LLP
Post Office Box 16328
Mobile, Alabama 36616
(251) 338-3801
(fax)(251) 338-3805
Attorneys for Defendant, Essex Insurance Co.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum of Law in Support of Essex Insurance Company's Motion for Protective Order has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 16th day of August, 2010.

Respectfully submitted,

s/ Rebecca C. Appelbaum
REBECCA C. APPELBAUM, ESQ.