UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL NO. 2047 |
| | * | JUDGE FALLON |
| **This document relates to:** | * * | |
| *Joshua C. Price and Kimberlea Price v. USAA Casualty Insurance Co.*     Case No. 10-CV-01420 (E.D. La.) | * * * * | MAG. JUDGE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**USAA CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS**

Defendant USAA Casualty Insurance Company ("USAA-CIC") submits this reply memorandum in further support of its Rule 12(b)(6) Motion to Dismiss Plaintiffs' Petition for Damages [R. Doc. 4515] and in response to Plaintiffs' Opposition to Defendant, USAA Casualty Insurance Company's Motion to Dismiss ("Opposition") [R. Doc. 4731].

**Introductory Statement**

The Court should grant USAA-CIC's Motion to Dismiss because the Opposition filed by Plaintiffs fails to address meaningfully the following issues:

- The Opposition fails to address the consistent line of Louisiana cases finding that no direct, physical loss can occur absent an external force changing what is satisfactory into something that is unsatisfactory.

- The jurisprudence uniformly supports a finding that the claims are excluded by the "latent defect," "inherent vice," and "faulty" or "defective" building material exclusions.

- The Policy expressly excludes loss "caused by" or "consisting of" corrosion. Plaintiffs have misread the Policy language and ignored the broad "consisting of" language in USAA-CIC's policy.

- The plain language of the Policy excludes loss consisting of faulty or defective design or construction, and the cases support such a finding here.

- The Policy expressly excludes loss caused by or consisting of an inherent vice or latent defect, such as drywall.

- The Policy excludes coverage for damages as the result of a gaseous irritant or contaminant.

Further, if the court were to adopt plaintiffs' arguments, it would have the effect of eviscerating the Policy exclusions and opening up these insurance policies to countless claims previously not covered. This would effectively convert homeowner's policies into construction warranties. Premiums will skyrocket if carriers are now the warrantors of the residential and commercial building industry. For these reasons, the Court should dismiss the Petition with prejudice and in its entirety pursuant to Rule 12(b)(6).

**I.     The Policy Does Not Provide Coverage for the Cost
of Removing and Replacing the Defective Drywall.**

    A.    *The Drywall Has Not Sustained a "Direct,
Physical Loss" as Required for Policy Coverage.*

Plaintiffs seek to recover from USAA-CIC the cost of remediating the defective drywall, specifically its removal and replacement, but they do not present any support for a finding that the defective drywall for which Plaintiffs seek to recover the cost of remediation has sustained a

"direct physical loss."  Nor do they address (much less attempt to distinguish) the <u>binding precedent</u> requiring some external event to have caused the damage claimed to be a "physical loss."  *See Trinity Indus. v. Insur. Co. of N. Am*, 916 F.2d 267, 270-71 (5th Cir. 1990) (holding that use of faulty construction did not constitute physical loss, and, thus, the cost of repair was not covered under the policy).  In fact, according to Plaintiffs, the drywall is "performing the purpose of drywall," and has sustained no visible or tangible damage. (Opposition, p. 11).  Thus, under *Trinity*, the cost of removing and replacing the undamaged but defective drywall in Plaintiffs' house is not covered under the Policy because there was no "direct, physical loss."[1]

### B. The Cost of Removing and Replacing Defective Drywall is Excluded Under the Policy.

Even if the defective drywall were deemed to have sustained a "direct physical loss," the cost of removing and replacing the defective drywall is excluded by the "latent defect," "inherent vice," and "faulty" or "defective" building materials exclusions.  Plaintiffs' argument that the Policy's exclusions cannot be considered by the Court in deciding the pending motion to dismiss is incorrect.  If an insurance policy is attached to either the complaint or the motion to dismiss, is referenced in the complaint, and is central to a plaintiff's claims, a court may consider the terms of the insurance policy – including the exclusions – in deciding a motion to dismiss.[2]

---

[1] Although the Court in *Travco Ins. Co. v. Ward*, 2010 WL 2222255 (E.D. Va. June 3, 2010) held that there had been a direct physical loss sustained such that coverage was triggered, the Court's analysis relied on Virginia law.  The Court did not consider or address *Trinity's* holding, which is controlling, that there is no "direct physical loss" unless the property was "in an initial satisfactory state that was changed by some external event into an unsatisfactory state."  *Trinity*, 916 F.2d at 270-77.

[2] *See In re: Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007) (insurer's motion to dismiss should have been granted because the flood exclusion unambiguously preclude damage resulting from levee breaches); *Mendler v. Derouen*, 2009 WL 411244 (E.D. La. 2/18/09) (Vance, J.) (granting insurer's motion to dismiss because policy "exclusions unambiguously apply to plaintiffs' claims against ACA") (internal quotation omitted); *Palm Hills Properties, LLC v. Continental Ins. Co*., 2008 WL 4303817 (M.D. La. 7/23/08) (Tyson, J.) (granting insurer's motion to dismiss based on application of policy exclusion).

### 1. The "Faulty" or "Defective" Building Materials Exclusion Precludes Coverage for the Cost of Replacing the Drywall.

Plaintiffs admit the policy excludes coverage for any "loss consisting of . . . [f]aulty, . . . or defective . . . materials used in repair, construction, renovation or remodeling."[3] (Opposition, p. 10). However, to avoid the consequence of the exclusion, and without dealing with the Fifth Circuit's caution that a homeowner's policy "does not cover the costs of 'making good' defective construction,"[4] Plaintiffs argue that USAA-CIC "has not shown that the drywall at issue is faulty, inadequate or defective," and "there are no such allegations on the face of Plaintiffs' Complaint." (Opposition, pp. 10-11). Of course, the Petition does contain allegations that the drywall is defective.[5] And, if the drywall is not defective, why do Plaintiffs want it replaced?

Further, Plaintiffs claim the drywall is not defective because it "was performing the purpose of drywall, i.e., serving as a finishing material, holding paint and art, providing fire protection, providing sound and heat insulation." (Opposition at p. 11 (citing *In re Chinese Manufactured Drywall*, 680 F.Supp.2d 780, 798 (E.D. La. 2010) (Fallon, J.)). At the outset,

---

The three cases Plaintiffs cite, *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *EPCO Carbon Dioxide Products, Inc., v. JP Morgan Chase Bank, NA.*, 467 F.3d 466, 470 (5th Cir. 2006); and *Builders Mutual Ins. Co. v. Dragas Management Corp.*, 2010 WL 2813397 (E.D. Va. 7/15/10), do not support their argument. Two of the cases cited by plaintiffs deal with the affirmative defense of presumed lost deeds, laches, and the statutes of frauds. These affirmative defenses are irrelevant and are in no way similar to exclusions in an insurance policy. The third case cited by plaintiffs, a Virginia district court case, contains no explanation or discussion regarding the propriety of considering exclusion in a motion to dismiss.

[3] Policy [R. Doc. 4515-3] at p. 35.

[4] *Alton Ochsner Medical Foundation v. Allendale Mutual Insurance*, 219 F.3d 501, 507 (5th Cir. 2000).

[5] Even if Plaintiffs did not use the specific word "defective," Plaintiffs have clearly made the allegation. *See* Petition, attached as Exhibit "A," at ¶ 6, pp. 1-2. Additionally, Plaintiffs' specifically allege that defendants manufactured, sold, processed, distributed, supplied, and marketed "*defective* gypsum drywall that was installed in Plaintiff's home" in their lawsuit against the builder and related entities. *See* Complaint in *Price v. Knauf Petition* [R. Doc. 4515-4] at ¶ 2, ¶ 9, and ¶ 14 *(emphasis added)*. Although Plaintiffs argue (without any authority) that their allegations in their other lawsuit should not be considered, Plaintiffs' allegations are judicial confessions that "constitute full proof against the party who made it." LA. CODE CIV. P. art. 1853; *Lakeshore Prop. Owners Ass'n v. Delatte*, 524 So. 2d 126, 130 (La. App. 4th Cir. 1988) (an allegation, admission, or confession in a pleading in another suit is an extra judicial admission and admissible).

USAA-CIC notes that the argument was rejected in *Travco*. *Travco*, 2010 WL 2222255, *13. More importantly, Plaintiffs selectively cited only one sentence of this Court's opinion, ignoring the following relevant excerpt:

> The Chinese drywall is not structurally inferior drywall, nor does it fail to serve its intended structural purpose; <u>rather, its defects go beyond disappointed economic expectations</u>, causing harm which justifies access to tort remedies.

*Id.* at 793 (emphasis added). Simply, the Court could <u>not</u> have concluded that the drywall was not defective – such a holding would have been fatal to the plaintiffs' claims in their entirety.

## 2. The "Inherent Vice" or "Latent Defect" Exclusion Precludes Coverage for the Cost of Removing and Replacing the Drywall.

The Policy excludes any "loss . . . caused by or consisting of . . .[an] ***inherent vice*** [or] ***latent defect*** . . . ." (Policy [R. Doc. 4515-3] at p. 32) (emphasis added). Plaintiffs focus solely on the term "latent defect," and argue that it should not be given its plain, ordinary meaning as required under Louisiana law. *See Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328, 335 (La. App. 3d Cir. 1984) (a "latent defect" is a "defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal"). Instead, Plaintiffs cite a trade journal bulletin (which they do not attach) regarding an inapplicable "Processors Coverage Form." (Opposition at 7). That bulletin is not properly before the Court[6] and irrelevant because there is no ambiguity in the term "latent defect."

But, if the Court were to consider such a bulletin, a second FC&S bulletin Plaintiffs cited (FC&S, Chinese Drywall: The Next Big Issue, September 2009) specifically concludes:

> Another applicable exclusion is hidden or latent defect. The chemicals in the drywall that are causing the problem vapors are not visible and they are an

---

[6] The bulletin is third party testimony not subject to consideration in a Rule 12(b)(6) motion.

integral part of the product. Therefore, they are a latent defect; the drywall itself is defective.

The reasoning from this second FC&S bulletin is exactly in line with Louisiana law and the *Travco* decision. *See Nida*, 454 So.2d at 335 (La. App. 3d Cir. 1984); *Travco*, 2010 WL 2222255, *12 ("The latent defect exclusion is intended to remove the risk for losses that result from flaws in property that are undetectable, and hence unexpected. . . . Losses from Chinese Drywall fit squarely into this category.").

## II. The Policy Excludes the Claimed Damage from Defective Drywall.

The Policy excludes coverage for the damages Plaintiffs claim to the electrical wiring, copper tubing, and air conditioning equipment in their residence. Although Plaintiffs also claimed damages to computer wiring, other household items, and personal injuries, Plaintiffs now concede there is no coverage for loss or damage to their personal property under the policy and there is no coverage for personal injury claims.

### A. The "Corrosion" Exclusion Precludes Coverage for the Claimed Damage from Defective Drywall.

Although Plaintiffs allege in their Petition that the drywall "emits odorous gases that cause **_corrosion_** of air-conditioner and refrigerator coils, copper tubing, [and] electrical wiring,"[7] they argue that the Policy's exclusion does not apply: "the exclusion speaks to loss 'caused by' corrosion. Here, the damage is not caused by corrosion. The damage is caused by the sulfur compounds being emitted from the drywall." (Opposition, p. 12). However, USAA-CIC's

---

[7] Petition (Ex. "A"), ¶ 6 (emphasis added).

Policy excludes any loss "caused by **_or consisting_** of . . . corrosion."[8]  Plaintiffs simply have misread the Policy language.[9]

Plaintiffs also argue that the claimed corrosion damage is not "natural," and, therefore, not excluded.  Plaintiffs cite no legal authority in support of this contention, citing once again to an inadmissible bulletin.  But, "[w]ords and phrases used in insurance policies are to be construed in their plain, ordinary and popular sense." *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991).  For example, in *Travco*, the court relied on "the ordinary meaning of corrosion [as] includ[ing] the 'action or process of corroding,'" to hold that "the corrosion exclusion unambiguously appl[ied]" to the insured's damage to the structural, mechanical, and plumbing systems of his residence stemming from the installation of Chinese made drywall.  *Travco*, 210 WL 2222255, *15.  This Court should reach the same conclusion.

> B. The "Faulty" or "Defective" Building Materials or Construction Exclusion Precludes Coverage for the Claimed Damage from the Drywall.

The Policy not only excludes coverage for any "loss consisting of . . . [f]aulty, . . . or defective . . . materials used in repair, construction, renovation or remodeling . . .," but it also excludes coverage for any "loss consisting of . . . [f]aulty, . . . or defective . . . design, or . . . construction . . . ."[10]  As set forth *supra,* Plaintiffs' arguments that this exclusion does not apply

---

[8] Policy [R. Doc. 4515-3] at p. 32 (emphasis added).  Accordingly, *Trus Joint MacMilan v. Neeb Kearney and Co., Inc.*, 2000 WL 306654 (E.D. La. 3/23/00), wherein the exclusion did not include the word "consisting," is inapposite, and Plaintiffs' claim for coverage for loss of their electrical wiring, copper tubing, and air conditioning equipment is excluded.

[9] No provision of a contract should be construed as superfluous. *See* LA. CIV. CODE art. 2049.  Further, "the words of a contract must be given their generally prevailing meaning."  LA. CIV. CODE art. 2047.  As defined in the Merriam-Webster Online Dictionary, "consist" means "to be composed or made up," see http://www.merriam-webster.com/dictionary/consisting and "cause" means "to serve as a cause or occasion of," see http://www.merriam-webster.com/dictionary/caused.  Accordingly, "consisting of" clearly broadens the policy exclusion to include damage composed or made up of corrosion.

[10] Policy [R. Doc. 4515-3] at p. 35.  Again, the use of the term "consisting of" intentionally broadens the exclusion beyond damage only "caused by" faulty or defective design, construction, and materials.

are unavailing, and, accordingly, there is no coverage for the damages to Plaintiffs' electrical wiring, copper tubing, and air conditioning equipment caused by defective drywall.

### C. The "Inherent Vice" or "Latent Defect" Exclusion Precludes Coverage for the Claimed Damage from Defective Drywall.

Plaintiffs' Petition is fatal to their claim for damage to electrical wiring, copper tubing, and air conditioning equipment in their house: "The Chinese drywall emits odorous gases ***that cause*** corrosion of air conditioner and refrigerator coils, copper tubing, [and] electrical wiring." *See* Petition (Ex. "A"), ¶ 6 (emphasis added).  The Policy excludes any loss "***caused by*** or consisting of . . .[an] ***inherent vice*** [or] ***latent defect***." (Policy [R. Doc. 4515-3] at p. 32) (emphasis added).  As noted above, Plaintiffs ignore the fact that the Policy excludes losses caused by an "inherent vice," and arguments that the drywall is not "defective" are unavailing. Thus, the Policy excludes coverage for damages claimed by Plaintiffs to electrical wiring, copper tubing, and air conditioning equipment.

### D. The Policy Excludes Claims for Damages Arising from the Discharge of "Pollutants."

In arguing that the pollution exclusion does not apply, Plaintiffs rely on *Doerr v. Mobil Oil Co.*, which involved a commercial general liability (CGL) policy.  *Doerr*, 774 So. 2d 119, 122 (La. 2000).  However, *Doerr* is inapplicable here because its reasoning was based on the history of the pollution exclusion in CGL policies.  Further, the *Doerr* test – which the Supreme Court cautioned should be used "within the meaning of the exclusion" – requires a finding that the insurer is a professional polluter. *Id.* at 135.  As such, extending *Doerr* to the pollution exclusion in the property insurance section of a homeowner's policy would eviscerate the exclusion because a homeowner is never a professional polluter like a commercial business can

8

be.[11]  This Court should find *Doerr* inapplicable and enforce the plain language of the pollution exclusion in the Policy as written.[12]

### III.     The Ensuing Loss Clauses Do Not Apply.

Plaintiffs take aim at the fact that USAA-CIC did not discuss the ensuing loss clauses of the applicable exclusions, but this is because Plaintiffs' argument that the damages claimed by Plaintiffs to the electrical wiring, copper tubing, and air conditioning equipment in their residence are covered as an "ensuing loss" is without merit.  The *Travco* court rejected the same argument, and its analysis is both succinct and directly on point:

> First, none of the losses claimed qualify as "ensuing" losses.  An ensuing loss is a loss that occurs subsequent in time to an initial loss.  In the present case, only a single claimed loss has occurred.  The Chinese Drywall released reduced sulfur gases which harmed Defendant, members of his family, and items of personal property inside the Ward Residence.  Although this damage occurred gradually over a period of time, it still represents a single discrete loss from a single discrete injury, namely the off-gassing of defective Chinese Drywall.
>
> Second, even if the losses to the components of the Ward Residence could somehow be characterized as "ensuing losses," they would still be losses "excluded by any other provision" in the Policy – specifically, the corrosion exclusion.  However the chain of events is structured, the damage to the metallic components of Defendant's Residence is a loss caused by the "action or process of corroding."  Thus, this loss is subject to the corrosion exclusion even if the other exclusions - pollutant, faulty materials, or latent defect - are set aside under the ensuing loss provision.

*Travco*, 210 WL 2222255, *19 (citations omitted).

---

[11] LA. CIV. CODE art. 2049 states "a provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."  Accordingly, the courts are not allowed to render policy language ineffective.  To do so would violate Louisiana law.

[12] Plaintiffs also cite *Thompson v. Temple*, 580 So. 2d 1133 (La. App. 4th Cir. 1991), which admittedly refused to apply a pollution exclusion in a homeowner's policy, concluding that pollution exclusions were purportedly intended to exclude coverage for "active industrial polluters."  But, the court failed to address the fact that the policy at issue was a homeowner's policy, as opposed to a commercial property policy (as in the cases cited therein), and further failed to explain how a homeowner could ever be considered an "active industrial polluter."

Further, in the non-drywall context, courts from across the country have consistently construed the ensuing loss clause in a similar manner and rejected the interpretation suggested by plaintiffs here. *See Fiess v. State Farm*, 202 S.W.3d 744 (Tex. 2006) (*citing see e.g. Souza v. Corvick*, 441 F.2d 1013, 1016 (D.C. Cir. 1970); *N.Z. Ins. v. Lenoff*, 315 F.2d 95, 95 n. 1 (9th Cir. 1963); *Beach v. Middlesex Mut. Ass. Co.*, 532 A.2d 1297, 1298 n. 1 (Conn. 1987); *Phoenix Ins. Co. v. Branch*, 234 So. 2d 396, 398 (Fla. Dist. Ct. App. 1970); *Nationwide Ins. Co. v. Warren*, 675 S.W.2d 402, 403 (Ky. Ct. App. 1984); *Cantrell v. Farm Bureau Town & Country Ins. Co. of Mo.*, 876 S.W.2d 660, 662 (Mo. Ct. App. 1994); *Umanoff v. Nationwide Mut. Fire Ins.*, 442 N.Y.S.2d 892, 893 (N.Y. Civ. Ct. 1981)). This Court should adopt the reasoning in *Travco*, which is supported by the preceding jurisprudence and the cases cited by the *Travco* court.

## CONCLUSION

As difficult as Plaintiffs' situation may be, Plaintiffs' alleged losses consisting of or resulting from allegedly defective drywall are not covered under their Policy with USAA-CIC. The Court should dismiss the Petition with prejudice and in its entirety for failure to state a claim upon which relief may be granted.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By:     *s/Jennifer McNamara*
       AMELIA W. KOCH (2186)
       STEVEN F. GRIFFITH, JR., T.A. (27232)
       JENNIFER McNAMARA (23946)
       KATHRYN B. COOPER (32404)
       201 St. Charles Ave., Suite 3600
       New Orleans, Louisiana 70170
       Telephone: (504) 566-5200
       Facsimile: (504) 636-4000
       E-mail: akoch@bakerdonelson.com
              sgriffith@bakerdonelson.com
              jmcnamara@bakerdonelson.com
              kcooper@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT,
USAA CASUALTY INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by United States mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 16th day of August, 2010.

                                                   *s/Jennifer McNamara.*
                                                   JENNIFER MCNAMARA