UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * MDL NO. 2047 |
| THIS DOCUMENT RELATES TO: | * JUDGE FALLON |
| DAVID AND CHERYL GROSS, INDIVIDUALLY AND AS REPRESENTATIVES OF ALL SIMILARLY SITUATED INDIVIDUALS, | * MAG. WILKINSON |
| | * 10-931 |
| Versus | * |
| STATE FARM FIRE AND CASUALTY COMPANY AND STATE FARM GENERAL INSURANCE COMPANY | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANTS STATE FARM FIRE AND CASUALTY COMPANY AND STATE FARM GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF THEIR RULE 12(b)(6) MOTION TO DISMISS IN COMPLIANCE WITH THE COURT'S JULY 1, 2010 ORDER [DKT. 4300]**

Plaintiffs' opposition to Defendants State Farm Fire and Casualty Company ("State Farm") and State Farm General Insurance Company's motion to dismiss is notable for what it fails to do. First, Plaintiffs ignore the allegations in their own complaint filed against various manufacturers, importers, and suppliers of allegedly defective Chinese-manufactured drywall (*Gross I*). Next, Plaintiffs fail to address either the detailed homeowner insurance policy analysis by the district court in the *Travco* case or this Court's findings in *Hernandez* regarding the nature of alleged damage from Chinese-manufactured drywall, each of which mandates

application of the exclusions contained in Plaintiffs' homeowners policy ("the Policy").  Finally, Plaintiffs fail to address the weight of case law that demonstrates that the Policy exclusions are unambiguous, enforceable, and exclude coverage for Plaintiffs' alleged losses.

Instead, Plaintiffs incorrectly argue that considering policy exclusions at the motion to dismiss stage would be inappropriate because the exclusions are affirmative defenses.  On the contrary, courts regularly grant insurers' motions to dismiss on the basis of policy exclusions. *See, e.g.*, *In re: Katrina Canal Breaches Litig.*, 495 F.3d 191, 224 (5th Cir. 2007); *Mendler v. Derouen*, Civil Action No. 08-4217, 2009 WL 411244, at *3 (E.D. La. Feb. 18, 2009).

Plaintiffs contend that their allegations do not call the Policy's exclusions into play, yet even the lone paragraph in the Complaint in which Plaintiffs address the nature of their damages shows that their alleged losses fall within Policy exclusions:

> Plaintiffs . . . discovered that their properties were *constructed using Chinese manufactured drywall*, which caused, and continues to cause, physical loss and damage to their properties and contents.  The Chinese drywall *emits compounds* that *cause rapid corrosion* of air-conditioner coils, copper tubing, electrical wiring, computer wiring, and other household items.

(Compl. ¶ 16 (emphasis added).)  These allegations bring Plaintiffs' alleged losses within the faulty materials and latent defect exclusions ("constructed using Chinese manufactured drywall, which caused . . . physical loss"), the contamination exclusion ("drywall emits compounds that cause rapid corrosion"), and the corrosion exclusion ("cause rapid corrosion").  And these allegations, together with these same Plaintiffs' very own allegations in the *Gross I* complaint, make clear that such exclusions bar coverage for Plaintiffs' losses.

Moreover, Plaintiffs themselves have raised all but one of these very exclusions explicitly in their Complaint, albeit in an attempt to argue that the exclusions should not apply.  (*See* Compl. ¶¶ 31 (pollution, incorrectly equated with contamination), 32 (latent defect), 33 (faulty materials).)  The legal conclusions pled in the Complaint must be disregarded for purposes of

2

deciding the motion to dismiss, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009); *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007), but both the insuring clause and the exclusions are ripe for the Court's consideration and bar coverage for Plaintiffs' alleged losses.[1]

A.     **Plaintiffs Cannot Avoid the Unambiguous Language of the Policy.**

Plaintiffs argue at length that purported historical underpinnings and intent behind the various exclusions render them inapplicable or ambiguous in this case. State Farm disagrees with Plaintiffs' assertions regarding the intent of certain exclusions, as discussed below. Critical to the coverage dispute before the Court, however, is the fact that the language in Plaintiffs' homeowners insurance policy is *unambiguous*. Thus, Plaintiffs' discussion of history and intent is entirely irrelevant. "'When the words of a contract are clear and explicit and lead to no absurd consequences, *no further interpretation may be made* in search of the parties' intent.'" LA. CIV. CODE ANN. art. 2046 (1985), *quoted in In re: Katrina Canal Breaches Litig.*, 495 F.3d at 207 (emphasis added). "'Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.'" *In re: Katrina Canal Breaches Litig.*, 495 F.3d at 208 (quoting *Cadwallader v. Allstate Ins. Co.*, 2002-1637, p. 4 (La. 6/27/03); 848 So. 2d 577, 580).

B.     **Plaintiffs Concede that the Policy Does Not Cover Loss to the Defective Drywall.**

Plaintiffs' response fails to address the opinion in *Trinity Industries, Inc. v. Insurance Co. of North America*, 916 F.2d 267 (5th Cir. 1991), which holds that there can be no physical loss or damage under an insuring agreement where the product or property itself was defective and,

---

[1] The decision of the court in *Builders Mutual Insurance Co. v. Dragas Management Corp.*, Civil Action No. 2:09cv185, 2010 WL 2813397 (E.D. Va. July 15, 2010), to defer analysis of the pollution exclusion in a commercial general liability policy is inapplicable here, because the insurers did not move to dismiss on that ground. (*See id.*, docket entries 83 and 85.)

3

therefore, never in an "initial satisfactory state that was changed by some external event into an unsatisfactory state." *Id.* at 270–71. Plaintiffs do not dispute, and thus have conceded, that there has been no "accidental, direct physical loss" (Defs.' Br., Ex. A at 7) to the drywall itself and that the cost of removing, repairing or replacing the drywall is not a covered loss.

C. **The Drywall in Plaintiffs' Home Is a Defective and Faulty Material Within the Meaning of the Faulty Materials Exclusion.**

In arguing against the faulty materials exclusion, Plaintiffs speak out of both sides of their mouths. On one hand, Plaintiffs cite this Court's finding that Chinese-manufactured drywall "'is different from typical benign drywall'" due to its chemical composition and the fact that "'it releases odious gases which are corrosive to metals, particularly copper and silver' . . . *necessitating removal*." (Pls.' Br. at 7 n.2 (emphasis added) (quoting *Hernandez* Findings of Fact & Conclusions of Law p. 16).) Yet, on the other hand, Plaintiffs claim that the drywall in their home was not faulty or defective because it "was performing the purpose of drywall, *i.e.*, serving as a finishing material, holding paint and art, providing fire protection, providing sound and heat insulation." (*Id.* at 9.) Plaintiffs cannot have it both ways.

The Policy excludes losses consisting of "defect, weakness, inadequacy, fault or unsoundness in . . . materials used in construction or repair." (Defs.' Br., Ex. A at 9–11.) Plaintiffs selectively, and perfunctorily, cite a definition of the term "faulty" to mean "marked by fault or defect" (Pls.' Br. at 9), but they fail to take the analysis one step further by defining "fault" or "defect." As defined in the Merriam-Webster Online Dictionary, "fault" means "a physical or intellectual imperfection or impairment," *see* http://www.merriam-webster.com/dictionary/fault, and "defect" means "a: an imperfection that impairs worth or utility . . . b: an imperfection." *See* http://www.merriam-webster.com/dictionary/defect. Furthermore, "imperfect" is defined as simply "not perfect." *See* http://www.merriam-

4

webster.com/dictionary/imperfect.  Nowhere do these definitions require that such fault, defect, or imperfection render the item—here, the drywall—*completely useless*.  Such a definition would be contrary to ordinary usage.  In this case, the fact that the drywall at issue emits odorous gases that corrode metal, *necessitating its removal from Plaintiffs' home*, renders the drywall *imperfect* in its use in a dwelling, regardless of whether it is capable of holding up paint or pictures.  *See Travco Ins. Co. v. Ward*, No. 2:10cv14, 2010 WL 2222255, at *13 (E.D. Va. June 3, 2010) (defective drywall "certainly not serving its purpose as a component of a livable residence").[2]  The faulty materials exclusion unambiguously bars coverage for damage to Plaintiffs' dwelling.

### D. The Latent Defect Exclusion Applies.

Plaintiffs' argument that the latent defect exclusion should not apply because that exclusion is intended only to exclude losses due to "a quality within an object which makes it tend to destroy itself" is contrary to the plain language of the exclusion and Louisiana law.

Notably, Plaintiffs conflate "latent defect" with "inherent vice," which are two separate concepts under the exclusion.  (*See* Pls.' Br. at 11.)  "Latent defect" is defined by Louisiana courts as "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable and customary inspection would not reveal."[3]  *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328, 335 (La. App. 1984).  Nothing in this definition requires any kind of self-destructive quality within a product.  *See also* 11 Lee R. Russ, et al., *Couch on Insurance* § 153.77 (3d ed. 2005 & Supp. 2010) ("A 'latent defect' has been defined as 'an imperfection in

---

[2]  Plaintiffs all but ignore the rulings of the *Travco* court, arguing only that because that case was decided on a motion for summary judgment, it should be disregarded.  The court's interpretation of the pertinent exclusions, however, is a matter of law, and because Plaintiffs have conceded the nature of the damage caused by the drywall in their home (*see, e.g.*, Pls.' Br. at 7 n.2; Compl. ¶ 16; *Gross I*, passim), the *Travco* decision is directly on point.

[3]  Plaintiffs fail to address the *Nida* decision, in which the latent defect exclusion applied to bar coverage where an improperly prepared foundation caused damage to the rest of the home.  *See Nida*, 454 So. 2d at 335.

5

the materials used which could not be discovered by any known and customary test'" and more recently "as referring to defects that would not be discovered by a reasonable inspection."); *compare Employers Cas. Co. v. Holm*, 393 S.W.2d 363, 364, 366–67 (Tex. App. 1965) (cited by Plaintiffs, policy excluded only "inherent vice," not "latent defect"); 11 *Couch on Insurance* § 153.77 ("An exclusion for 'inherent vice' relates to a loss stemming entirely from some quality within the insured property that renders damage inevitable.").[4]

The latent defect exclusion is unambiguous, and Plaintiffs' citations to additional secondary sources concerning the purported intent behind the exclusion are irrelevant. *See In re: Katrina Canal Breaches Litig.*, 495 F.3d at 207. Nevertheless, it is worth noting that the FC&S Bulletin cited by Plaintiffs is inapposite. That bulletin, describing "latent defect" as "any quality in the property that causes property to damage or destroy itself" is specifically directed to a "Processors Coverage Form," which provides liability coverage for insureds who "receive[] the property of others in order to perform some work on that property" and thus "become[] legally liable for the safety of that property." (FC&S Online, Porcessors Coverage Form, Insurance Services Office Non-filed IM Coverage, Dec. 2005 (attached as Ex. 1).) In that context, the policy may well be intended to cover damage to the entrusted property, and so it might make sense that the insurer would exclude only damage to the property caused by the property itself. On the other hand, in a separate bulletin directed specifically to the question of first-party coverage for drywall-related damage, Plaintiffs' own source states that the latent defect exclusion bars coverage: "The chemicals in the drywall that are causing the problem vapors are not visible and they are an integral part of the product. Therefore, they are a latent defect; the

---

[4] The other three sources cited by Plaintiffs all address the definition of inherent vice, *not* latent defect. *See* Eugene Wollan, *Risks Not Taken*, John Liner Rev. 86 (Fall 2006); William H. Rodda, *Fire & Property Insurance* 298 (Prentice-Hall 1956); Edward L. DeHart, *et al.*, *Arnould on the Law of Marine Insurance and Average* vol. II § 778 (11th ed. 1924).

drywall itself is defective. There is no coverage provided on this [commercial property] policy form." (FC&S Online, Chinese Drywall: The Next Big Issue, Sept. 2009 (attached as Ex. 2).)

Even if Plaintiffs were correct in their interpretation that the latent defect exclusion applies only to a "quality within an object which makes it tend to destroy itself" (and they are not), such a requirement would not render the exclusion inapplicable in this case, because the exclusion would apply to the home as a whole. The "covered property" under the Policy is the dwelling, of which the drywall is a component. Therefore, the damage claimed by Plaintiffs is due to a quality in the *home* that causes it to damage or destroy itself that results from something *within the home*, namely the defective drywall. *See Travco*, 2010 WL 2222255, at *11 (latent defect exclusion applies to drywall-related losses because the residence "suffers from defects 'that [] are integral to the damaged property's design or manufacture or construction'") (quoting *U.S. West v. Aetna Cas. & Sur. Co.*, No. 96-1698, 1997 WL 400081 (4th Cir. July 16, 1997) (unpub. table op.)). Thus, even under Plaintiffs' counter-intuitive and unduly narrow interpretation of "latent defect," that exclusion still applies.

Finally, Plaintiffs' argument that "[t]here is no evidence that the problems with Chinese manufactured drywall were latent" is contradicted by their own allegations. (Pls.' Br. at 10.) Plaintiffs have alleged that they moved into their home in December 2006 (*see Gross I* ¶ 10), and that they only discovered that the home was constructed with Chinese-manufactured drywall in the Spring of 2009. (*See* Compl. ¶ 16.) The latent defect exclusion unambiguously applies to bar coverage of the purported losses to Plaintiffs' home.

### E. The Corrosion Exclusion Applies.

Despite Plaintiffs' argument to the contrary, the Policy excludes coverage for loss "which *consists of, or is directly and immediately caused by*" corrosion, regardless of whether or not

such corrosion is "naturally occurring."[5]  (Defs.' Br., Ex. A at 9 (emphasis added).)  First, Plaintiffs ignore the language in the Policy that excludes coverage of loss that "consists of" corrosion, instead focusing solely on whether their loss was "caused by" corrosion.  Accordingly, Plaintiffs' reliance on *Trus Joist Macmillian v. Neeb Kearney & Co.*, No.Civ.A.99-2964, 2000 WL 306654, at *2 (E.D. La. Mar. 23, 2000) (unpublished), is misplaced.  The corrosion exclusion in that case only excluded losses *caused by* corrosion or rust, from which the court opined that the exclusion "is not designed to preclude coverage when rust is the damage itself." *Id.*  Here, by contrast, the Policy explicitly excludes loss *consisting of* corrosion (in addition to loss *caused by* corrosion), and so it applies to Plaintiffs' alleged loss.

Furthermore, corrosion exclusions are widely recognized to "preclude[] recovery for any damage caused to property because of contact with *any* corrosive agent . . . regardless of what caused the corrosion or how suddenly the corrosion occurred.  Thus, exclusions for damages caused by corrosion are normally not limited to naturally caused corrosion."  11 Lee R. Russ, *et al.*, *Couch on Insurance* § 153.80 (3d ed. 2005 & Supp. 2010) (citations omitted).

The fact that an exclusion does not explicitly state that it bars coverage for a risk that occurs either naturally or due to some other external force does not render the exclusion ambiguous.  In fact, the Fifth Circuit, applying Louisiana law, rejected a similar argument with respect to an undefined yet equally unambiguous flood exclusion.  *See In re: Katrina Canal Breaches Litig.*, 495 F.3d at 215 ("we disagree that the term 'flood' in this context is limited to natural events").  Moreover, in the same case, the Fifth Circuit denied the plaintiffs' attempts to recast the nature of their injuries, stating that "'[a]n insured may not avoid a contractual

---

[5]  Once again, Plaintiffs' reliance on an FC&S Bulletin is unavailing, as the corrosion exclusion, on its face, clearly and unambiguously excludes loss consisting of or caused by *any* corrosion.  Plaintiffs' resort to a publication by unidentified persons, about the intent of the writers of a policy other than the policy here, is wholly improper. (*See* Pls.' Br. at 13.)

exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss.'" *Id.* at 223 (rejecting argument that cause of loss was negligent design, construction or maintenance of levees rather than water damage from flood) (quoting *Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 311 (Wash. 1994)). Here, Plaintiffs' argument that their "damage is caused by the sulphur compounds being emitted from the drywall" must similarly be rejected. No matter how Plaintiffs attempt to characterize the facts, they admit that the drywall in their home emits gases that, in turn, cause corrosion. Thus, it is undisputable that Plaintiffs' damage consists of corrosion, and the corrosion exclusion must be applied according to its plain and unambiguous language.

### F. The Contamination Exclusion, Which Is Not Synonymous with the Pollution Exclusion, Applies.

The State Farm policy contains a "contamination" exclusion, but not a "pollution" exclusion, and so Plaintiffs' arguments about the pollution exclusion are irrelevant to this motion.[6] Plaintiffs ignore altogether *Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766 (M.D. La. 2008). Not only did the *Barry Concrete* court hold that the contamination exclusion was unambiguous and barred coverage, the court separately considered a pollution exclusion contained in another policy and held that judgment on the pollution exclusion was not yet warranted. *Id.* at 772. In other words, the contamination exclusion and the pollution exclusion are *not* identical and are *not* synonymous. Any policy considerations that might apply to the pollution exclusion do not apply to the contamination exclusion contained in the Policy in this case, and under *Barry Concrete*, the contamination exclusion bars coverage.

---

[6] Plaintiffs state that the pollution and contamination exclusions "are identical," (Pls.' Br. at 15 n.5), but a review of any of the pollution exclusions contained in other homeowners policies at issue in this MDL disproves that. To the extent the Court considers the two exclusions to be related, Defendants adopt the other homeowners insurers' arguments on the pollution exclusion.

### G. The Losses Alleged Are Not Covered Ensuing Losses.

Plaintiffs once again avoid the plain language of the Policy by arguing that "there is a distinct separation between what State Farm argues is the excluded loss, the Chinese drywall itself, and the ensuing losses, which are the damages caused by the sulphur compounds that the Chinese drywall emits." (Pls.' Br. at 19.) Defendants do not contend that the only excluded loss is the presence of the drywall itself—as discussed above and in their opening brief, the very damages allegedly caused by compounds emitting from the drywall, which Plaintiffs now characterize as "ensuing losses," are excluded under the unambiguous language of the faulty materials, latent defect, corrosion, and contamination exclusions. Plaintiffs have not alleged a single loss that has "resulted from" the presence of defective drywall in their home that is *not otherwise excluded* under the terms of the Policy.[7] (*See* Defs.' Br., Ex. A at 11 (covering "resulting loss . . . unless the resulting loss is itself a Loss Not Insured by this Section").) None of Plaintiffs' alleged losses are covered ensuing losses.

### CONCLUSION

All of Plaintiffs' alleged losses are excluded under the unambiguous terms of the Policy, and Plaintiffs have conceded that the Policy does not cover any other alleged losses, including personal property, bodily injury, or diminished value.[8] For these reasons and those set forth in Defendants' opening brief, the Complaint should be dismissed with prejudice.

---

[7] Plaintiffs rely on another FC&S Bulletin to support their "ensuing loss" argument; however, the "bulletin" they cite is no more than an online "Q&A" that consists of a 3-line answer, provides no legal analysis, and fails to consider the specific language at issue in State Farm's policy. (FC&S Online, Chinese Drywall, June 2009 (attached as Ex. 3).) This does not even rise to the level of persuasive authority.

[8] Because there is no coverage under the Policy, Plaintiffs' claims of bad faith and misrepresentation, and for injunctive relief, are without merit and also should be dismissed.

This 16th day of August, 2010.

|  |  |
|---|---|
| **WAYNE J. LEE, T.A. (#7916)** | /s/ Adrianne L. Baumgartner<br>**ADRIANNE L. BAUMGARTNER, T.A. (#2861)** |
| STONE PIGMAN WALTHER WITTMANN L.L.C. | PORTEOUS, HAINKEL & JOHNSON, LLP |
| 546 Carondelet Street | 408 North Columbia Street |
| New Orleans, Louisiana 70130 | Covington, Louisiana 70434 |
| Telephone: (504) 581-3200 | Telephone: (985) 893-4790 |
| wlee@stonepigman.com | abaumgartner@phjlaw.com |

**THOMAS W. CURVIN (Ga. 202740)**
**AMY K. AVERILL (Ga. 029359)**
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3996
Telephone: (404) 853-8000
tom.curvin@sutherland.com
amy.averill@sutherland.com

**Attorneys for State Farm Fire and Casualty Company and**
**State Farm General Insurance Company**

## **CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the foregoing Defendants State Farm Fire and Casualty Company and State Farm General Insurance Company's Reply in Support of Their Rule 12(b)(6) Motion to Dismiss has been served upon counsel for Plaintiffs David and Cheryl Gross, Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel Kerry Miller by U.S. Mail and email <u>or</u> by hand-delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on the 16th day of August, 2010.

                                                /s/ Adrianne L. Baumgartner
                                                **ADRIANNE L. BAUMGARTNER**