UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | CASE NO. 2:09-MD-2047<br><br>SECTION "L" |
| | * | JUDGE FALLON |
| This document relates to: (Canty 10-0929) | * * | MAGISTRATE WILKINSON |

**REPLY IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Judy Y. Barrasso, 2814
Catherine F. Giarrusso, 29875
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

Steven M. Levy
Mark L. Hanover
SONNENSCHEIN NATH &
ROSENTHAL, LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

164041

**ARGUMENT**

I. **PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THEIR PROPERTY DAMAGE FALLS WITHIN THE TERMS OF THEIR POLICY'S COVERAGE GRANT.**

Plaintiffs completely fail to respond to Defendants' (collectively, "Allstate") substantive arguments regarding the failure of their claims on the ground that the property damage they allegedly suffered does not fall within the terms of their Policy's coverage grant. Instead, Plaintiffs merely cite the general rule that they, as insureds, have the burden of proving any property damage they have suffered falls within the terms of their Policy's coverage grant,[1] then baldly argue they have met this burden by alleging "Chinese drywall emits compounds that cause rapid corrosion of [various] household items." (Pl. Br. at 5.) Plaintiffs cannot avoid the plain language of their Policy, their own Complaint allegations or the relevant case law, however, which show the presence of the drywall in Plaintiffs' home is *not* an "accidental direct physical loss," as their Policy expressly requires to trigger coverage.

Notably, Plaintiffs fail to address, let alone distinguish, the cases Allstate cited in its initial brief (at pp. 5-7) in which courts have construed the terms "accidental direct physical loss" to mean an initial satisfactory state that was physically changed into an unsatisfactory state by an external event. Yet, Plaintiffs' own Complaint allegations clearly indicate the drywall in Plaintiffs' home was *not*, as contemplated in *Trinity Industries, Inc. v. Insurance Co. of N. America*, 916 F.2d 267, 270-71 (5th Cir. 1990), "in an initial satisfactory state that was changed by some external event into an unsatisfactory state." Specifically, Plaintiffs allege the "drywall itself is not damaged or defective relative to the expected performance of drywall," and that it "performs satisfactorily all the functions of non-defective drywall." (Compl., ¶¶ 34, 35.) As that allegation makes clear, there was no "accidental direct physical loss" to the drywall itself, so the cost of repairing or replacing the drywall is not, as matter of law, a covered loss.

---

[1] *See, e.g., Tunstall v. Stierwald*, 809 So. 2d 916, 919 (La. 2002).

Plaintiffs also ignore the case law, cited in Allstate's initial brief (at pp. 6-7), construing the term "direct physical loss" to mean tangible damage to the insured property. From the face of the Complaint, however, it is clear this definition is not met. Plaintiffs allege the drywall itself is not damaged, which is the antithesis of "tangible damage" or "physical loss." So, Plaintiffs have in fact failed to allege the existence of coverage in the first instance. For that reason alone, dismissal is warranted here.[2]

## II. SEVERAL EXCLUSIONS ALSO PLAINLY PRECLUDE COVERAGE UNDER PLAINTIFFS' POLICY.

Plaintiffs erroneously argue the Court should not consider any exclusions at all at this time, because they raise "affirmative defenses" that should not be considered on a motion to dismiss. In fact, the Fifth Circuit and Louisiana district courts routinely consider coverage exclusions in granting motions to dismiss in favor of insurance companies.[3] And Plaintiffs themselves have pled the exclusions and their alleged inapplicability. (Compl., ¶¶ 22, 33-36.)

Plaintiffs' arguments as to why the exclusions, in their view, do not substantively apply are equally unavailing. Particularly inapposite are Plaintiffs' attempts to raise issues of history and intent of these exclusions, since such interpretations, which are wrong in all events, cannot

---

[2] To the extent Plaintiffs are attempting to argue that even if damage to the drywall itself is not covered, which their silence on the point concedes, damage to certain components caused by the drywall is, that argument would fail because such damages would not be "direct physical loss," as required by the Policy for coverage to apply.

[3] *See, e.g., In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 220-21 (5th Cir. 2007) (holding motion to dismiss should have been granted in favor of defendant insurers on ground that flood exclusions unambiguously precluded damage resulting from the levee breaches in the aftermath of Hurricane Katrina); *Lawrence v. Slidell Welding Service, Inc.*, 2010 WL 2653347, *4 (E.D. La. June 25, 2010) (granting insurer's motion to dismiss based on application of policy exclusion, and stating: "A review of the allegations made in plaintiff's complaint and the language of the insurance policy, itself, reveals that the plain and unambiguous language of the policy excludes coverage in this matter"); *Mendler v. Derouen*, 2009 WL 411244, *3 (E.D. La. Feb. 18, 2009) (granting insurer's motion to dismiss because the policy "exclusions unambiguously apply to plaintiffs' claims against ACA, and thus it is clear that plaintiffs have not pleaded a claim to relief that is plausible on its face against ACA") (internal quotation omitted); *Palm Hills Properties, L.L.C. v. Continental Ins. Co.*, 2008 WL 4303817, **2-3 (M.D. La. July 23, 2008) (noting it is proper to consider insurance contract on motion to dismiss and granting insurer's motion to dismiss based on application of policy exclusion).

be used to alter the clear and unambiguous terms of Plaintiffs' Allstate policy. *See In re Katrina*, 495 F.3d at 207 (*citing* La. Civ. Code Ann. Art. 2046).

### A. The Corrosion Exclusion Precludes Coverage.

Plaintiffs argue the corrosion exclusion does not apply because it "speaks to loss 'caused by' corrosion," and their damage is not "caused by corrosion," but instead is caused by sulphur compounds being emitted from the drywall. (Pl. Br. at 6.) As Plaintiffs ultimately concede (*id.* at 10), however, Allstate's corrosion exclusion broadly excludes coverage for "loss *consisting of* or caused by" corrosion. Allstate's language therefore clearly excludes loss of corroded property *or* loss caused by corrosion -- *i.e.*, the exclusion applies whether corrosion is the cause of the property damage or the damage itself. Indeed, Allstate's policy language is substantively similar to that in *Kay v. United Pacific Ins. Co.*, 902 F. Supp. 656 (D. Md. 1995), a case Plaintiffs fail to address, where the court rejected this very argument -- *i.e.*, that a corrosion exclusion applies only where the corrosion is the cause of the damage, not the damage itself.[4]

Plaintiffs' contention that there are no allegations in their Complaint that their loss was caused by or consisted of corrosion is also wrong. Plaintiffs specifically allege the Chinese drywall in their homes "*caused, and continues to cause, physical loss and damage to their properties and contents.* The Chinese drywall emits compounds that *cause rapid corrosion* of air-conditioner coils, copper tubing, electrical wiring, computer wiring and other household items." (Compl., ¶ 18 (emphasis added).) Plaintiffs disingenuously argue they have alleged only that the Chinese drywall emits gases causing corrosion, not that their damage is or was caused by corrosion. (Pl. Br. at 10.) But the above-quoted allegations make clear that Plaintiffs are indeed complaining of damage due to corrosion.[5]

---

[4] Plaintiffs cite *Trus Joist v. MacMillan v. Neeb Kearney & Co.*, 2000 WL 306654 (E.D. La. Mar. 23, 2000), for the proposition that corrosion must be the cause of the loss, not the damage itself. However, as discussed in Allstate's opening brief (at p. 11), *Trus Joist* is dispositively distinguishable because, unlike the policy language at issue there, Allstate's corrosion exclusion is broader, precluding "loss consisting of or caused by" corrosion.

[5] The same is true of the Plaintiffs' allegations in the applicable Omnibus Complaint against the Chinese drywall manufacturers and distributors. *See, e.g.,* Group Exhibit C to Allstate's opening brief, which includes, *inter alia,* the relevant pages from Plaintiffs' Amended

4

Plaintiffs assert *Travco Ins. Co. v. Ward*, 2010 WL 2222255 (E.D. Va. June 3, 2010), where the court held a corrosion exclusion similar to Allstate's precluded coverage for alleged Chinese drywall losses, is distinguishable since it was decided on a motion for summary judgment. Yet, it is clear the *Travco* court did *not* rely on any summary judgment evidence in concluding the corrosion exclusion applies. Rather, that court relied on the insured's description of his loss in the pleadings, which was substantively identical to Plaintiffs' allegations regarding "corrosion" here, and the *Travco* court rejected the insured's contention, similar to Plaintiffs' here, that the loss was not caused by corrosion, but instead was caused by gasses emitted from the drywall. *Id.*, **14-15 (since the insured's loss was "caused by the action or process of corroding," the corrosion exclusion "unambiguously applies") (internal quotation omitted).

Plaintiffs claim *Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, 2008 WL 4286538 (E.D. La. Sept. 17, 2008), is distinguishable because, unlike Plaintiffs' damages, the corrosion/rust losses there were "foreseeable." But Judge Englehardt's ruling applying the corrosion/rust exclusion in that case did *not* turn on the foreseeabilty of the loss. Rather, Judge Englehardt held: "Although these exclusions clearly would apply to an insured's failure to maintain and protect its property from rain and humidity under ordinary circumstances, the language of the exclusion is not so limited. Nor is it ambiguous. Rather, it simply excludes *all* loss or damage from rust or dampness of atmosphere." *Id.*, *1 (emphasis in original).[6]

---

Omnibus Class Action Complaint (V) in *Amato v. Liberty Mut. Ins. Co., et al.*, No. 10-932 (E.D. La. May 11, 2010), ¶¶ 14, 627, in which Plaintiffs are named parties (referring to "corrosive" effects of Chinese drywall).

[6] Plaintiffs' attempt to distinguish *Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, 2008 WL 687184, *3 (E.D. La. Mar. 10, 2008), and *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 2009 WL 4855484, *7 (S.D. Fla. Dec. 9, 2009), on the ground that the corrosion/rust at issue in those cases was part of a predictable, natural process, also fails. The courts in these cases found corrosion/rust exclusions similar to Allstate's applied without reference to predictability or foreseeability. Plaintiffs' contention that *Gilbane Building Co. v. Altman Co.*, 2005 WL 534906 (Ohio App. – Franklin Cty. Mar. 8, 2005), is distinguishable because the parties stipulated that the cause of the loss was rust and corrosion is also wrong. The parties in that case in fact disagreed whether the rust/corrosion was of the type meant to be excluded, and the court ruled in favor of the insurer, rejecting the insured's argument that the exclusion was meant to apply only to rust/corrosion that forms gradually. *Id.*, *4. Further, Plaintiffs' reliance (Pl. Br. at 8) on a Fire, Casualty & Surety ("FC&S") Bulletin for the proposition that the intent of the corrosion exclusion is to exclude corrosion that is "part of the

Plaintiffs cryptically argue their Complaint does not set forth the specific items of loss or damage, and that they will rely on experts to determine the cause of their damage. (Pl. Br. at 10.) But Plaintiffs cannot avoid that their Complaint expressly refers to damage caused by corrosion, which alone is sufficient to invoke the corrosion exclusion.

### B.     The Latent Defect Exclusion Applies.

Plaintiffs devote the bulk of their "latent defect" argument to a recitation of dictionary and treatise definitions of the term "latent," but they essentially concede, as they must, that word means a "defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal."[7] Plaintiffs' contention that their Complaint contains no allegations that would bring their loss within the latent defect exclusion is wrong. Plaintiffs cannot avoid their specific allegation that they did not learn of the problem with the drywall until Spring, 2009, when they heard about it on the news. (Compl., ¶ 18.) This allegation, ignored in Plaintiffs' response, clearly establishes that the defect was hidden or concealed, which brings the alleged cause of the loss squarely within the meaning of "latent defect."

Plaintiffs argue the latent defect exclusion does not apply because there is no evidence that the drywall was damaging or destroying itself. (Pl. Br. at 12.) That was the court's conclusion in *Finger v. Audubon Ins. Co.*, No. 09-8071 (Civ. Dist. Ct., Parish of New Orleans Mar. 23, 2010), but, as Allstate pointed out in its initial brief (at p. 14), *Finger* is dispositively distinguishable. Unlike the exclusion in that case, the exclusion here broadly states it covers losses "*consisting of or caused by*" latent defects. Given this broad language, the exclusion here

---

normal aging process," which would not include corrosion due to Chinese drywall, is misplaced. Plaintiffs quote only part of the one-paragraph Q&A, which goes on to state: "However, we're just beginning to get into court cases on this, so it'll be interesting to see what courts decide on a number of drywall issues." http:/www.nationalunderwriterpc.com (published in an online Question & Answer of the Week in December 2009). Accordingly, the FC&S answer expressly leaves open the possibility that, as held by *Travco,* the corrosion exclusion does apply in the drywall context. And, in any event, the FC&S Bulletin is not "authority" of any type, and certainly cannot be used to alter the clear meaning and applicability of this exclusion.

[7] *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328, 335 (La. App. 3 Cir. 1984) (*quoting Walker v. Travelers Indem. Co.*, 289 So. 2d 864, 860 (La. App. 4 Cir. 1974)).

would clearly apply to damage to the drywall itself *and* damage caused by the drywall -- *i.e.*, the latent defect is not covered whether it is the cause of the property damage or the damage itself. Moreover, the *Travco* court expressly declined to follow *Finger* on this point and rejected the very argument Plaintiffs make here. *Travco,* 2010 WL 2222255, *11.[8]

### C.  The Contamination and Pollution Exclusions Apply.

Plaintiffs' arguments as to why the contamination and pollution exclusions do not apply are also unavailing. Initially, Plaintiffs erroneously claim Allstate has argued that because the pollution exclusion contains the word contamination, that means Plaintiffs' claims are excluded. (Pl. Br. at 18.) To the contrary, in addition to its pollution exclusion, Allstate has relied on a completely separate contamination exclusion. And Plaintiffs have failed to even address all the cases cited in Allstate's initial brief (at pp. 15-17) which have upheld contamination exclusions in analogous contexts.

With regard to the pollution exclusion, Plaintiffs devote the bulk of their argument to a discussion of *Doerr v. Mobil Oil Corp.,* 774 So. 2d 119 (La. 2000). However, *Doerr* is inapposite for all the reasons discussed in Allstate's initial brief (at pp. 18-19) -- *i.e.*, it involved a CGL policy, which provides coverage for certain types of harm caused by insureds to third parties, whereas property coverage under a homeowners insurance policy insures the property against risk of direct physical loss caused by specified perils or non-excluded perils. So, by contrast to a CGL policy, such as the one at issue in *Doerr*, the identity of the person who caused the harm -- *i.e.*, an "active polluter" -- is irrelevant in the homeowners policy context.

Plaintiffs make much of the fact that *Doerr* cited *Thompson v. Temple,* 580 So. 2d 1133 (La. App. 4 Cir. 1991), where the court held a pollution exclusion in a homeowners policy did not apply since the insured was not an active industrial polluter. Notably, however, *Temple,* like

---

[8]  Plaintiffs rely heavily on an FC&S Bulletin and a treatise from the 1930s, Arnould on Marine Insurance (11th ed.). However, the treatise refers to an inherent vice exclusion, not a latent defect exclusion, neither document limits the latent defect exclusion in the manner Plaintiffs suggest and, again, any attempt at historical interpretation by Plaintiffs cannot alter the clear and unambiguous applicability of this exclusion.

*Doerr* (but unlike the instant case), arose in the third-party context. *Temple* involved a third-party action by renters who sued their landlord after suffering bodily injuries when carbon monoxide leaked from a heater. Unlike the instant case, *Temple* did not involve a homeowner seeking coverage for damage to his or her house -- a context in which the "active industrial polluter" requirement would be nonsensical.[9] Additionally, as demonstrated in Allstate's initial brief (at 15-17), courts before and after *Temple* have repeatedly enforced pollution or contamination exclusions even where the insureds were not "polluters," and in the context of homeowners policies/losses inside the home.[10]

In all events, by contrast to the pollution exclusion in *Temple,* Allstate's contamination exclusion expressly refers to "contamination . . . *at the residence premises* or in the air, land or water *serving the residence premises."* (Emphasis added.) This clearly contemplates damage due to contamination in the home, so *Temple* and *Doerr,* whatever their application to Allstate's pollution exclusion, certainly do not impact the clear applicability of Allstate's contamination exclusion in this case.

### D. The Faulty Planning, Construction or Maintenance Exclusion Also Precludes Coverage Here.

With regard to the "faulty planning, construction or maintenance" exclusion, Plaintiffs merely cite a few dictionary definitions, and argue these definitions are not met since they have alleged the "drywall is performing the purpose of drywall." (Pl. Br. at 19.) As discussed in Allstate's initial brief (at p. 22), however, if the Court rejects Allstate's initial argument -- *i.e.,* that coverage does not exist here in the first instance because there has been no "direct physical loss" -- that would *a fortiori* entail a finding that the drywall is defective, which would then bring

---

[9] Further, the *Temple* court expressly noted it was aware of only one other case involving a home, *Grinnell Mut. Reins. Co. v. Wasmuth,* 432 N.W.2d 495 (Minn. App. 1988), and the *Grinnell* court held the pollution exclusion in that case was intended only for polluters who knew they were polluting. Notably, however, *Grinnell* was overruled by *Board of Regents of University of Minnesota v. Royal Ins. Co. of America,* 517 N.W.2d 888 (Minn. 1994).

[10] *See, e.g., Travco,* 2010 WL 2222255, **17-18; *Sperling v. Allstate Indem. Co.,* 182 Vt. 521, 944 A.2d 210 (2007); *Ho v. State Farm Fire & Cas. Co.,* 2005 WL 2600651 (Ohio App. -- Cuyahoga Cty. Oct. 13, 2005); *McQuade v. Nationwide Mut. Fire Ins. Co.,* 587 F. Supp. 67 (D. Mass. 1984).

8

this exclusion into play. Moreover, Allstate's exclusion applies to losses both consisting of and caused by defective drywall, since it expressly refers to losses "consisting of *or* caused by" defective materials. Put simply, if the Court concludes that coverage exists for the defective drywall in the first instance, then the drywall cannot possibly be performing as it should.[11] In addition, the *Travco* court persuasively ruled in favor of the insurer on this exclusion.[12]

### III. PLAINTIFFS' BAD FAITH AND INJUNCTIVE RELIEF CLAIMS FAIL.

Citing no case law, Plaintiffs erroneously argue they have sufficiently stated a claim for coverage, so they have also properly alleged a bad faith claim. (Pl. Br. at 20.) Regardless of the Court's ultimate coverage ruling, however, Plaintiffs' bad faith claim fails as a matter of law. That is because, under Louisiana law, when an insurer has a reasonable defense to coverage or has legitimate doubts regarding coverage, the insurer does not act in bad faith when it denies a claim.[13] Here, based on all the aforementioned arguments, Allstate at the very least had, as a matter of law, a reasonable basis for denying coverage for Plaintiffs' Chinese drywall losses. Plaintiffs completely ignore this point, but it is dispositive on this issue.

Plaintiffs' claim for injunctive relief also fails as a matter of law. Again citing no case law, Plaintiffs argue they have demonstrated a likelihood of success on the merits by virtue of their allegations and the arguments in their brief. (Pl. Br. at 20.) Plaintiffs' fleeting reference to their allegations and arguments is insufficient. A preliminary injunction "is *an extraordinary*

---

[11] Indeed, the Class Action Complaints in *Payton v. Knauf Gips KG*, No. 09-cv-07628 (E.D. La. Dec. 9, 2009), at p. 506 and ¶ 2611 (included in Ex. C to Allstate's opening brief), and *Gritter v. Knauf Gips KG*, No. 09-cv-4273 (E.D. La. July 6, 2009), at ¶¶ 19, 56-58, 62-68 (Ex. A hereto), in both of which Plaintiffs are named parties, specifically refer to the Chinese drywall as a "product defect" and "defective."

[12] Plaintiffs again argue *Travco* was decided on summary judgment. As discussed above, however, the *Travco* court did not rely on summary judgment evidence, and, in any event, Plaintiffs' contention that a court may not consider coverage exclusions on a motion to dismiss is wrong. Plaintiffs' assertion that *Holland v. Breaux*, 2005 WL 3542899, *3 (E.D. La. Nov. 22, 2005) and *Husband v. Lafayette*, 635 So. 2d 309, 311 (La. App. 5 Cir. 1994), are inapposite because they involved faulty workmanship, not faulty material, exclusions is also misplaced. The two exclusions are substantively indistinguishable.

[13] *Kodrin v. State Farm Fire & Cas. Co.*, 314 Fed. Appx. 671, 2009 WL 614521 (5th Cir. Mar. 11, 2009); *Clark v. McNabb*, 878 So. 2d 677, 684 (La. App. 3 Cir. 2004).

9

*remedy that should only issue if the movant shows*: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest."[14] Given the extraordinary nature of the remedy, an "injunction ... should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements."[15] Plaintiffs do not even mention three of the four requirements. Moreover, as demonstrated above and in Allstate's initial brief (at 24-25), even if Allstate's motion to dismiss fails, it is clear Plaintiffs do not have a "likelihood of success" on the merits of their claims, because they certainly cannot "clearly carry the burden of persuasion" on that issue. And, in all events, there is already a statute in force preventing insurers from cancelling policies based on the presence of Chinese drywall in an insured's home (L.R.S. § 22:1338), so Plaintiffs cannot show any irreparable injury.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in their initial brief, Defendants respectfully requests this Court enter an Order granting the Motion to Dismiss and dismissing all Plaintiffs' claims with prejudice and without leave to amend.

Respectfully submitted,

_/s/ Catherine F. Giarrusso_
Judy Y. Barrasso, 2814
Catherine F. Giarrusso, 29875
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

---

[14] *Ridgely v. Federal Emergency Management Agency*, 512 F.3d 727, 734 (5th Cir. 2008) (emphasis added).
[15] *Ferrellgas, L.P. v. McConathy*, 2010 WL 1010831, *2 (W.D. La. Mar. 15, 2010) (citations and internal quotations omitted).

164041

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail *or* by hand delivery and e-mail *and* upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 16th day of August, 2010.



*/s/ Catherine F. Giarrusso*