# EXHIBIT J

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2047 SECTION: L |
| This Document relates to: *Pate v. American International Specialty Lines Insurance Company, et al (09-7791)* | ) ) ) ) ) | JUDGE FALLON MAG. JUDGE WILKINSON |

_____

**DEFENDANT, NGM INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR THE PRODUCTION OF DOCUMENTS
CONCERNING JURISDICTION AND VENUE**

**GENERAL OBJECTION:** Defendant, NGM Insurance Company objects to the plaintiff's page(s) of instructions and definitions to the extent such instructions and definitions purport to impose an obligation or burden that is greater than or inconsistent with the Federal Rules of Civil Procedure. Subject to and notwithstanding the stated objection, the defendant responds to these interrogatories as required by the Rules of Civil Procedure, giving words their ordinary meaning in the context of this action.

1. Documents sufficient to show all travel to Louisiana by any of Your officers, directors, employees, representatives or agents for the purpose of conducting business or engaging in any business activity regarding the marketing, sale or promotion of insurance policies, including but not limited to expense records, airplane tickets, hotel bills, car rental bills and other travel records, as well as documents sufficient to show the dates and purposes of all such trips.

1

**RESPONSE:**  The defendant objects to Request No. 1 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence.

2.   Documents utilized to solicit, market, or advertise Your services or products in Louisiana, including but not limited to electronic media, brochures, advertisements, news releases, customer service reports, articles, and price lists produced by You for use by You or any Related Entity in Louisiana.

**RESPONSE:**  The defendant objects to Request No. 2 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

3.   Documents regarding actual or prospective purchasers of insurance policies in Louisiana, including reports regarding actual or projected sales of insurance policies in Louisiana, including reports regarding actual or projected sales of insurance policies by You or any Related Entity.

**RESPONSE:**  The defendant objects to Request No. 3 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in

sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

4.  Documents related to any Louisiana state or federal legal proceedings involving You, including but not limited to: (a) claim, complaint, counterclaim or third party claim You filed in any court, administrative agency, or any other governmental entity within Louisiana; (b) discovery responses and answers You filed in any litigation in which jurisdiction over You in Louisiana was or is an issue and any judicial orders, memoranda, or opinions issued thereon; and (c) copies of any judgment, levy or assessment entered in Louisiana against or in Your favor.

    **RESPONSE:** The defendant objects to Request No. 4 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence.

5.  All court orders issued in any action in Louisiana state or federal court wherein the court decided a motion You made to dismiss for lack of personal jurisdiction or improper venue and all briefs submitted by the parties in support of, or in opposition to, such a motion.

3

**RESPONSE:** The defendant objects to Request No. 5 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence.

6. Documents sufficient to identify all agents You authorized to receive service of process or notice of proceedings within Louisiana.

**RESPONSE:** The defendant objects to Request No. 6 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

7. Documents sufficient to identify the locations at which or from which Your services or products are sold in Louisiana and/or are sold to Louisiana residents and entities.

**RESPONSE:** The defendant objects to Request No. 7 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

8.   All documents concerning any tax charged to You by the state of Louisiana.

**RESPONSE:** The defendant objects to Request No. 8 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.  Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

9.   Documents sufficient to show for each of the past ten years, Your annual sales of insurance policies to purchasers in Louisiana (including but not limited to sales of insurance policies by any Related Entity) and the dollar value for all such sales.

**RESPONSE:** The defendant objects to Request No. 9 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.  Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

10.   Documents sufficient to identify the offices You may maintain, own, lease, or occupy in Louisiana.

**RESPONSE:** The defendant objects to Request No. 10 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

11.   Documents that You filed with the Louisiana Department of Insurance in the past ten years.

**RESPONSE:** The defendant objects to Request No. 11 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

12.   Documents that You filed with the Louisiana Secretary of State in the past ten years.

**RESPONSE:** The defendant objects to Request No. 12 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of

admissible evidence.  Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

13.   Documents sufficient to identify for each of the past ten years, your assets, including bank accounts, real estate interests, financial instruments or securities, located in Louisiana and the dollar value of each asset.

**RESPONSE:** The defendant objects to Request No. 13 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence.  The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.

14.   Documents sufficient to show Your corporate structure, including any Related Entities.

**RESPONSE:** The defendant objects to Request No. 14 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving said objections and subject thereto, **copies of responsive documents are produced (Bates Nos.  00001 - 00008).**

15.   Documents sufficient to show Your percent ownership interest in any Related Entities.

7

**RESPONSE:** The defendant objects to Request No. 15 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, the defendant refers to the documents produced in response to Request No. 14.

16.   Documents sufficient to any Related Entities percent ownership interest in You.

**RESPONSE:** The defendant objects to Request 16 on the grounds that the request is unintelligible. The defendant further objects on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, the defendant refers to the documents produced in response to Request No. 14.

17.   Documents sufficient to identify Your board of directors, each corporate officer, and Your organizational structure.

**RESPONSE:** The defendant objects to Request No. 17 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects on the grounds that it seeks

8

information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.

18. Documents sufficient to identify the board of directors, each corporate officer, and the organizational structure of Related Entities.

**RESPONSE:** The defendant objects to Request No. 18 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.

19. Documents sufficient to show each distribution or transfer of cash or assets between You and a Related Entity.

**RESPONSE:** The defendant objects to Request No. 19 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.

20.   Documents sufficient to show the existence of any inter-company loans, advances of funds, or cost sharing between You and a Related Entity.

**RESPONSE:** The defendant objects to Request No. 20 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.

21.   Documents sufficient to show the existence of any guarantees or similar assurances by You to financial institutions on behalf of any Related Entity.

**RESPONSE:** The defendant objects to Request No. 21 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.

22.   Documents that relate to the preparation and approval by You of annual and longer-term business plans, marketing plans, and budgets for any Related Entity.

10

**RESPONSE:** The defendant objects to Request No. 22 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.

23.     Any combined financial statements for You and any Related Entity.

**RESPONSE:** The defendant objects to Request No. 23 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.

24.     Documents sufficient to identify the percentage of Your revenue that originates from Louisiana residents or entities.

**RESPONSE:** The defendant objects to Request No. 24 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of

11

admissible evidence.  The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.  Without waiving said objections and subject thereto, none.

25.   Documents sufficient to identify any of Your employees, independent contractors, or leased personnel whom You employ in Louisiana or who live in Louisiana.

      **RESPONSE:** The defendant objects to Request No. 25 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence.  The defendant further objects on the grounds that it seeks information that is privileged, confidential, proprietary, protected as trade secrets or otherwise non-discoverable.  Without waiving said objections and subject thereto, there are no employees, independent contractors or leased personnel employed by NGM Insurance Company in Louisiana.

26.   Documents concerning any lobbying performed by You on Your behalf in Louisiana.

      **RESPONSE:** The defendant objects to Request No. 26 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence.

27. Documents concerning Your storage or maintenance of any documents or things in Louisiana.

**RESPONSE:** The defendant objects to Request No. 27 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

28. Documents sufficient to identify Your managing general agent in Louisiana.

**RESPONSE:** The defendant objects to Request No. 28 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

29. Documents sufficient to identify Your brokers in Louisiana.

**RESPONSE:** The defendant objects to Request No. 29 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of

13

admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

30.    Documents sufficient to identify the retail agents through which You have sold insurance in Louisiana in the past 10 years.

**RESPONSE:** The defendant objects to Request No. 30 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the present possession, custody or control of the defendant, NGM Insurance Company.

31.    Documents sufficient to identify each year for the last ten years the total amount of premiums You have collected from Louisiana clients.

**RESPONSE:** The defendant objects to Request No. 31 on the grounds that it is overly broad, unduly burdensome, onerous, vague, ambiguous, irrelevant, immaterial, lacking in sufficient specificity, seeks information prepared in anticipation of litigation, violates the attorney client privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections and subject thereto, none in the possession, custody or control of NGM Insurance Company.

Respectfully submitted,


_/s/ David F. Hassett_____
**David F. Hassett, Esquire (MA No. 544443)**
dhassett@hassettanddonnelly.com
**Sarah B. Christie, Esquire (MA No. 566833)**
schristie@hassettanddonnelly.com
**HASSETT & DONNELLY, P.C.**
446 Main Street, 12th Floor
Worcester, MA 01608
(508) 791-6287 (Phone)
(508) 791-2652 (Fax)

**ATTORNEYS FOR DEFENDANT,**
**NGM INSURANCE COMPANY**

Dated:  August 16, 2010

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **NGM INSURANCE COMPANY'S**

**ANSWERS TO PLAINTIFF'S INTERROGATORIES CONCERNING JURISDICTION**

**AND VENUE** have been served upon all parties by electronically uploading the same to Lexis

Nexis File & Serve on this 16th day of  August, 2010, as well as by U.S. Mail and e-mail to:

Robert M. Horkovich, Esquire
Anna Piazza, Esquire
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020

Plaintiffs' Liaison Counsel
Russ Herman
820 O'Keefe Avenue
New Orleans, Louisiana 70113-1116

Defendants' Liaison Counsel
Mr. Kerry J. Miller
Frilot L.L.C.
Energy Centre
1100 Poydras St., Suite 3700
New Orleans, LA 70163-3700

/s/ David F. Hassett_____
David F. Hassett, Esquire

16

Back to Top

# THE MAIN STREET AMERICA GROUP

NGM Insurance Company • Old Dominion Insurance Company
Main Street America Assurance Company • MSA Insurance Company
Great Lakes Casualty Insurance Company
Grain Dealers Mutual Insurance Company

**MAIN STREET AMERICA GROUP MUTUAL HOLDINGS, INC.**

**MAIN STREET AMERICA GROUP**

Jacksonville , Florida

A



A

© 2010 A.M. Best Company, Oldwick, NJ 08858

NGM Resp #14  00001

Back to Top

## Ultimate Parent: Main Street America Grp Mut Hldgs, Inc.
## MAIN STREET AMERICA GROUP MUTUAL HOLDINGS, INC.
4601 Touchton Road East, Suite 3400, Jacksonville, FL 32246
Web: www.ngminsurance.com

AMB#: 051272
Ultimate Parent#: 051272

### CORPORATE OVERVIEW

Main Street America Group Mutual Holdings, Inc. was established October 27, 2005, as a Florida-domiciled holding company that owns 94.2% of Main Street America Group, Inc. (MSAG), a Florida stock intermediate holding company. The remaining shares are owned by the White Mountains Insurance Group (4.9%) and Nebco Financial Holdings (0.9%). MSAG in turn owns 100% of NGM Insurance Company (NGM), a Florida stock insurance company which previously was National Grange Mutual Insurance Company, a Florida mutual insurance company. NGM owns 100% of the outstanding stock of Main Street America Financial Corporation (MSAFC) which in turn owns 100% of MSA Insurance Company, MSA Information Systems and Services Corp., Main Street America Holdings, Inc. (MSAH), Old Dominion Insurance Company, Main Street America Casualty Insurance Company, Main Street America Capital Corporation, Great Lakes Assurance Company, Main Street America Protection Insurance Company. As of November 2009, Grain Dealers Mutual Insurance Company became an affiliated member of MSAG.

### CORPORATE STRUCTURE

| AMB# | COMPANY NAME | DOMICILE | %OWN |
|---|---|---|---|
| 051272 | Main Street America Grp Mut Hldgs | FL | |
| 051271 | Main Street America Group Inc | FL | 94.40 |
| 00678 | NGM Insurance Company | FL | 100.00 |
| 03352 | Main Street America Fin Corp | NH | 100.00 |
| 12080 | Great Lakes Casualty Ins Co | MI | 100.00 |
| 00526 | Main Street America Amer Co | FL | 100.00 |
| 03369 | Main Street America Protection | FL | 100.00 |
| 03037 | MSA Insurance Company | SC | 100.00 |
| 00282 | Old Dominion Insurance Co | FL | 100.00 |
| 02207 | Grain Dealers Mutual Ins Co | IN | 100.00 |

NGM Resp #14  00002



# Associated With: Main Street America Grp Mut Hldgs, Inc.

## MAIN STREET AMERICA GROUP
4601 Touchton Road East, Suite 3400, Jacksonville, FL 32246-4486
Web: www.msagroup.com

Tel: 800-227-8244
AMB#: 018355
Ultimate Parent#: 051272

Fax: 904-380-7244

### BEST'S FINANCIAL STRENGTH RATING

Based on our opinion of the group's Financial Strength, it is assigned a Best's Financial Strength Rating of A (Excellent). The group's Financial Size Category is Class X.

### RATING UNIT MEMBERS

Main Street America Group                                    (AMB # 018355):

| AMB # | COMPANY | BEST'S FSR |
|---|---|---|
| 002207 | Grain Dealers Mutual Ins Co | A |
| 012800 | Great Lakes Casualty Ins Co | A |
| 013917 | MSA Insurance Company | A |
| 000526 | Main Street America Assur Co | A |
| 002822 | Old Dominion Insurance Co | A |
| 006678 | NGM Insurance Company | A |

### RATING RATIONALE

**Rating Rationale:** The rating reflects Main Street America Group's excellent risk-adjusted capitalization, trend of favorable operating performance, susceptibility to weather-related losses and history of fluctuating reserve development.

Somewhat offsetting these positive rating factors are Main Street's elevated underwriting leverage ratio as compared to its composite measure, susceptibility to weather-related losses and history of fluctuating reserve development. The group's operating performance is susceptible to weather-related losses due to its geographic concentration in the Northeast and East Coast. These positive factors are derived from the group's focused marketing and branding strategies, disciplined underwriting philosophy and diversified product offerings and established regional market presence along the East Coast. These positive factors are derived from the group's focused marketing and branding strategies, disciplined underwriting philosophy and pricing segmentation. Main Street America's products are distributed exclusively through independent agents and include small commercial and personal lines of business. The rating also considers the financial flexibility afforded by its mutual holding company, Main Street America Group Holdings, Inc.

Main Street's capital position has benefited from the group's solid operating earnings over the latest five-year period. Over the past two years, the group increased its geographic spread of risk by expanding into six (6) Midwest and Southwestern states. Future capital generation will be slowed due to the payment of dividends upstream to the parent holding company to fulfill the trust preferred note interest and preferred stock dividend requirements. Additionally, regulatory changes in Massachusetts and increased competition within its commercial lines segment will challenge the group's operating performance and ability to maintain market share and profitability.

Main Street America Group's rating is based on the consolidated financial results of its members which are measured through a 100% Quota Share agreement with the lead company of the group, NGM Insurance Company. The following are members of the group: Main Street America Assurance Company, MSA Insurance Company, Grain Dealers Mutual Insurance Company, Great Lakes Casualty Insurance Company and Old Dominion Insurance Company.

### Best's Financial Strength Rating: A

**Outlook: Stable**

### FIVE YEAR RATING HISTORY

| Date | Best's FSR | Date | Best's FSR |
|---|---|---|---|
| 04/01/10 | A | 07/10/07 | A |
| 02/11/09 | A | 11/16/05 | A |
| 01/29/08 | A | | |

© 2010 A.M. Best Company, Oldwick, NJ 08858

Printed June 7, 2010

### KEY FINANCIAL INDICATORS ($000)

| Period Ending | Direct Premium Written | Net Premium Written | Pretax Operating Income | Net Income | Total Admitted Assets | Policy-holders' Surplus |
|---|---|---|---|---|---|---|
| 2005 | 811,428 | 808,360 | 19,600 | 21,342 | 1,539,051 | 508,221 |
| 2006 | 834,285 | 838,630 | 76,633 | 71,755 | 1,664,332 | 564,419 |
| 2007 | 861,064 | 846,335 | 97,369 | 115,241 | 1,843,947 | 623,306 |
| 2008 | 815,680 | 809,276 | 101,373 | -1,862 | 1,889,501 | 607,091 |
| 2009 | 807,133 | 815,500 | 76,174 | 90,680 | 1,901,653 | 691,974 |

| | Profitability | | | | Leverage | | | Liquidity | |
|---|---|---|---|---|---|---|---|---|---|
| Period Ending | Comb. Ratio (%) | Inv. Yield (%) | Pretax ROR (%) | NA Inv Lev | NPW to PHS | Net Lev. | Overall Liq. (%) | Oper. Cash-flow (%) |
| 2005 | 102.1 | 3.6 | 2.5 | 41* | 1.6 | 3.6 | 148.7 | 115.3 |
| 2006 | 96.5 | 3.7 | 9.1 | 41.1 | 1.5 | 3.4 | 151.4 | 114.5 |
| 2007 | 96.1 | 4.2 | 11.5 | 45.1 | 1.4 | 3.3 | 152.1 | 118.2 |
| 2008 | 95.2 | 3.8 | 12.4 | 48.5 | 1.3 | 3.3 | 150.7 | 114.9 |
| 2009 | 97.5 | 4.1 | 9.8 | 19.2 | 1.2 | 2.9 | 157.3 | 112.3 |
| 5-Yr | 97.4 | 4.0 | 9.2 | | | | | |

(*) Data reflected within all ratios of this report has been compiled through the A.M. Best Consolidation of statutory filings. Within several financial tables of this report, this group is compared against the Commercial Casualty Composite.

### BUSINESS REVIEW

Main Street America Group produces and services through five primary insurance companies. The five companies provide personal and commercial insurance that are sold through independent agents. Over 40% of MSAG's business writings are in New York and Massachusetts. Personal automobile coverages comprise approximately 32% of premium volume. Homeowners coverages represent approximately 17% of premiums written. Approximately 77% of the group's automobile premium is in Massachusetts and New York. Commercial multiple peril represents 29% of net premiums, commercial automobile liability 11% and homeowners 14% account for most of the remaining writings of the group.

### 2009 BUSINESS PRODUCTION AND PROFITABILITY ($000)

| Product Line | Premiums Written | | % of Total NPW | Pure Loss Ratio | Loss & LAE Ratio |
|---|---|---|---|---|---|
| | Direct | Net | | | |
| Comm'l MultiPeril | 247,308 | 238,225 | 29.2 | 52.4 | 265.189 |
| Priv Pass Auto Liab | 122,100 | 155,449 | 19.1 | 63.4 | 133,834 |
| Homeowners | 132,970 | 128,528 | 15.8 | 63.4 | 28,164 |
| Auto Physical | 101,996 | 105,555 | 12.9 | 61.8 | 7,446 |
| Comm'l Auto Liab. | 75,218 | 77,833 | 9.5 | 52.6 | 76,311 |
| Workers' Comp. | 56,619 | 56,933 | 7.0 | 55.6 | 56,519 |
| Oth Liab Occur. | 16,165 | 18,633 | 2.2 | 27.0 | 29,966 |
| Surety | 19,265 | 17,280 | 2.1 | 27.5 | 6,469 |
| Allied Lines | 19,740 | 4,933 | 0.6 | 38.9 | 1,517 |
| All Other | 9,312 | 12,386 | 1.5 | 33.7 | 4,040 |
| **Totals** | 807,133 | 815,500 | 100.0 | 53.1 | 667,991 |

**Geographical breakdown of direct premium writings ($000):** New York, $212,875 (26.4%); Massachusetts, $105,984 (13.1%); Florida, $104,422 (12.9%); Connecticut, $68,468 (8.5%); Pennsylvania, $40,526 (5.0%); 40 other jurisdictions, $275,058 (34.1%).

### FINANCIAL PERFORMANCE

**Overall Earnings:** MSA group's growing five-year pre-tax operating income resulted from increased underwriting income, policy issuance fees and service fee income. Over the five-year period, MSAG's five-year average pre-tax returns on revenue and surplus lagged the composite, returns improved during the latest five-year period due to consistent premium increases and enhanced underwriting and pricing over the five-year period. The group reported underwriting losses primarily due to hurricanes in Florida, winter storms in New England and higher than anticipated loss costs in its commercial lines of business.

www.ambest.com

Page 3 of 8

Back to Top

## PROFITABILITY ANALYSIS

| Period Ending | Pretax ROR on PHS (%) | Return on PHS (%) | Comb. Ratio (%) | Oper. Ratio (%) | Pretax ROR (%) | Return on PHS (%) | Comb. Ratio (%) | Oper. Ratio (%) |
|---|---|---|---|---|---|---|---|---|
| 2005 | 2.5 | 5.1 | 102.1 | 96.7 | 9.2 | 7.9 | 100.6 | 95.0 |
| 2006 | 9.3 | 21.2 | 96.6 | 89.2 | 19.1 | 14.5 | 93.9 | 79.3 |
| 2007 | 11.6 | 21.2 | 88.6 | 80.9 | 20.9 | 15.4 | 94.4 | 78.4 |
| 2008 | 12.4 | -4.6 | 93.2 | 83.3 | 2.0 | -1.2 | 99.0 | 83.4 |
| 2009 | 9.8 | 16.8 | 97.5 | 89.7 | | | | |
| 5-Yr | 9.2 | 10.4 | 97.4 | 90.8 | | | | |

**Underwriting Income:** Earlier in the five-year period, rate increases and increased commercial business drove MSA Group's premium growth. As competitive market conditions emerged later in the period, premium growth slowed and turned negative in 2008. In 2009 however, premiums grew with a slight positive increase as a result of MSA Group's geographic expansion into six additional states. The group entered Michigan business with the Great Lakes Casualty acquisition, started writing commercial lines business in Arizona, Nevada, and Utah through a partnership with a large agency network and continued assumed insurance business in Oklahoma and Texas through two MGA partnerships. Although MSA Group's combined ratio rose earlier in the period, over the most recent three years it has reported underwriting profitability and compared favorably by 1.6 points to its five-year average composite ratio. These positive underwriting results were due to underwriting and pricing discipline, reserve strengthening, coastal exposure management and utilization of predictive modeling. Additionally, over this period the group entered into six additional states.

Over the five-year period, increased earned premiums from higher rates, improvements in claim processes and less frequent weather-related losses contribute to the company's favorable loss ratio which was better than its composite by 5 points.

**Underwriting:** The group's underwriting losses that primarily affected the group's property book of business. With over 50% of the group's premium writings in New York, Massachusetts and Florida, underwriting results were impacted by frequent and severe winter storms and hurricanes. In 2005, the group experienced effective catastrophe management program, combined with an adequate reinsurance program, mitigated the potential impact of catastrophe losses.

## UNDERWRITING EXPERIENCE

| Period Ending | Net Under- writing Income ($000) | Loss Ratio | LAE Ratio | Loss & LAE Ratio | Net Comm. Ratio | Other Exp. Ratio | Total Exp. Ratio | Div. Pol. | Comb. Ratio |
|---|---|---|---|---|---|---|---|---|---|
| 2005 | -23,645 | 59.1 | 12.7 | 71.8 | 18.7 | 11.6 | 30.4 | | 102.1 |
| 2006 | 22,939 | 54.1 | 11.1 | 65.2 | 19.1 | 12.4 | 31.4 | | 96.6 |
| 2007 | 30,878 | 49.3 | 13.0 | 63.3 | 19.3 | 12.1 | 31.4 | | 88.6 |
| 2008 | 41,833 | 52.8 | 10.2 | 63.0 | 18.9 | 13.4 | 32.2 | | 93.2 |
| 2009 | 16,411 | 53.1 | 11.2 | 64.2 | 19.5 | 13.8 | 33.3 | | 97.5 |
| 5-Yr | 54.4 | 11.1 | 65.4 | 19.1 | 13.9 | 32.0 | | 97.4 |

**Investment Income:** The group's strong investment income during the five-year period was generated primarily from its high quality bond holdings. Investment yields declined over the five-year period as interest rates dropped and the group allocated more of its investments to tax-preferred bonds. This resulted in the group's five-year average yield to be lower than its composite. The bond portfolio represents 86% of the group's invested assets and was comprised of 54% tax-preferred, 42% corporates and the remainder in governments. The bond portfolio's average maturity approximates 8 years with a duration of 5 years that approximates the liability tail of its loss reserves.

Prior to 2008, the level of invested assets increased primarily due to the 20% of its common stock portfolio which represented approximately 20% of invested assets during the period. Total return on invested assets was supplemented by capital gains. However, due to the economic downturn in 2008, the company sold almost all of its stock portfolio by year-end and

reported investment losses of approximately $111 million. In 2009 the group reported increased net investment income from its bond investments and positive capital gains as a result of its decision in late 2008 to significantly reduce its equity holdings and reallocate its investable assets to fixed income securities.

## INVESTMENT INCOME ANALYSIS ($000)

| Period Ending | Net Invest Income | Realized Capital Gains | Unrealized Capital Gains | Inv Inc Growth (%) | Total Inv Return (%) | Industry Composite Total Inv Yield (%) |
|---|---|---|---|---|---|---|
| 2005 | 42,484 | 3,935 | 4.5 | 2.6 | | |
| 2006 | 46,970 | 12,973 | -6,264 | 10.6 | 3.7 | 4.1 |
| 2007 | 62,573 | 40,640 | -21,761 | 9.6 | 3.3 | 4.9 |
| 2008 | 56,522 | 44,041 | -26,691 | 10.2 | 4.1 | -3.5 |
| 2009 | 62,506 | 16,500 | 18,550 | 11.8 | 4.1 | 6.5 |
| 5-Yr | | | | 8.8 | 4.0 | 3.9 |

## INVESTMENT PORTFOLIO ANALYSIS

| Asset Class | 2009 Inv Assets ($000) | % of Total Inv Assets | Ann Pct Chng (% Inv Assets) | Inv Mkt Val to Stmt (%) | Class 1-2 (%) | Class 3-6 (%) | Struc Secur. (%) | Struc Secur. (% of PHS) |
|---|---|---|---|---|---|---|---|---|
| Long-term bonds | 1,396,983 | 88.0 | 85.8 | 9.1 | | | | |
| Stocks | 103,659 | 6.5 | 3.7 | 88.5 | | | | |
| Affiliated Investment | 44,283 | 2.8 | 7.5 | -1.0 | | | | |
| Other Inv Assets | 42,317 | 2.7 | | -62.4 | | | | |
| **Total** | **1,587,242** | **100.0** | **100.0** | | | | | |

## 2009 BOND PORTFOLIO ANALYSIS

| Asset Class | % of Total Bonds | Mkt Val to Stmt (%) | Avg. Maturity (%) | Class 1-2 (%) | Class 3-6 (%) | Struc Secur. (%) | Struc Secur. (% of PHS) |
|---|---|---|---|---|---|---|---|
| Government | 3.3 | 100.0 | 6.9 | | | | |
| State, ht & pub. | 3.0 | 100.0 | 16.9 | 16.5 | 13.9 | | |
| Corporate | 41.4 | 0.1 | 6.7 | 100.0 | 34 | 35.8 | |
| Special Revenue | | | | | | | |
| **Total all bonds** | **100.0** | **1.6** | **8.1** | **98.6** | **1.4** | **24.4** | **49.7** |

## CAPITALIZATION

**Capital Generation:** The group's capital growth over the latest five-year period was attained by overall underwriting profitability, strong net investment income and capital gains. In 2009 capital rebounded from the decline in 2008 as the group added $94.5 million to policyholders' surplus due to strong pre-tax operating profitability and solid investment gains. After reporting underwriting losses earlier in the period, the group generated four consecutive years of underwriting profits that contributed to the growth in policyholders' surplus.

Net negative capital contributions during the latest five-year period include $35.1 million of dividends paid to MSAG Inc., an upstream holding company, for debt service on trust-preferred securities and for the repayment of a note. These instruments were issued in 2006 to finance the buyout of the 50% equity interest that White Mountains Insurance Group owned in Main Street America Holdings, Inc., in exchange for a 4.9% interest MSAG Inc. In 2005, the group received a $5 million contribution to capitalize MSA Insurance Company. The parent holding company MSAG Inc. also capitalized the internal generation of capital. In 2008, NGM, the lead member of the MSA Group, received a $34.3 million capital contribution from its parent holding company MSAG Inc.

NGM Resp #14  00004



## CAPITAL GENERATION ANALYSIS ($000)

| Period Ending | Pretax Operating Income | Total Net Inv. Gain | Net Contrib. | Other, Net of Tax | Change in PHS | PHS Growth (%) |
|---|---|---|---|---|---|---|
| 2005 | 373,689 | -4,677 | -45,383 | -110,694 | 210,834 | |
| 2005 | 104,100 | 3,933 | -1,781 | -10,270 | 26,881 | 14.9 |
| 2006 | 76,633 | 6,109 | -52,313 | -24,763 | 56,198 | 11.1 |
| 2007 | 51,364 | 3,504 | -37,470 | 58,887 | 38,845 | 10.4 |
| 2008 | 101,333 | 33,201 | -29,657 | -15,815 | 84,483 | -2.5 |
| 2009 | 78,714 | 34,709 | -20,606 | -8,354 | | 13.9 |

## LOSS & ALAE RESERVE DEVELOP.: CALENDAR YEAR ($000)

| Calendar Year | Orig. Loss Reserves | Developed Thru '09 | Develop. to Orig. (%) | Develop. to PHS (%) | Unpaid Reserves @'09 | Unpaid Reserves to Develop. (%) |
|---|---|---|---|---|---|---|
| 2004 | 441,975 | 523,345 | 18.4 | 16.9 | 71.3 | 58,235 | 11.1 |
| 2005 | 517,786 | 558,031 | 7.8 | 7.9 | 71.0 | 87,189 | 15.6 |
| 2006 | 562,778 | 555,179 | -1.4 | -1.4 | 67.4 | 135,732 | 24.4 |
| 2007 | 620,010 | 594,522 | -4.1 | -4.1 | 69.2 | 226,864 | 39.4 |
| 2008 | 644,573 | 611,139 | -5.2 | -5.3 | 74.8 | 385,342 | 63.1 |
| 2009 | 651,295 | 651,295 | | | 81.0 | 651,295 | 100.0 |

## LOSS & ALAE RESERVE DEVELOP.: ACCIDENT YEAR ($000)

| Accident Year | Orig. Loss Reserves | Developed Thru '09 | Develop. to Orig. (%) | Unpaid Reserves @'09 | Acc. Yr. Loss Ratio | Acc. Yr. Comb. Ratio |
|---|---|---|---|---|---|---|
| 2004 | 232,459 | 214,751 | -7.6 | | 54.4 | |
| 2005 | 248,419 | 248,346 | 0.0 | | 55.7 | |
| 2006 | 272,879 | 273,302 | 0.2 | | 57.2 | |
| 2007 | 268,371 | 224,171 | -13.8 | 48,533 | 59.0 | 90.4 |
| 2008 | 259,101 | 237,018 | -8.6 | 91,132 | 57.8 | 90.6 |
| 2009 | 268,604 | 262,689 | -2.4 | 158,678 | 64.2 | 96.5 |
| | 651,295 | 265,953 | | 265,953 | 67.4 | 100.7 |

## ASBESTOS & ENVIRONMENTAL (A&E) RESERVE ANALYSIS

| Year | Net A&E Reserves ($000) | Reserve Ret. (%) | Net IBNR Mix (%) | Surviv. Ratio (3yr) | Comb. Ratio Impact (1yr) | Comb. Ratio Impact (3yr) |
|---|---|---|---|---|---|---|
| 2004 | 3,676 | 100.0 | 24.1 | | | |
| 2005 | 2,495 | 99.9 | | 4.2 | 0.0 | |
| 2006 | 2,475 | 100.0 | | 4.2 | 0.0 | 0.0 |
| 2007 | 2,685 | 100.0 | | 4.2 | 0.0 | 0.0 |
| 2008 | 2,589 | 100.0 | 22.8 | 7.4 | 0.1 | 0.0 |
| 2009 | 2,475 | 100.0 | 24.2 | 5.4 | 0.0 | 0.1 |

## QUALITY OF SURPLUS ($000)

| Year-End | % of PHS — Cap. Stk/ Contrib. Cap. | Other | Unassigned Surplus | Dividend Requirements — Stock- holder Divs | Div. to Net Inc. (%) | Div. to Net P/E (%) |
|---|---|---|---|---|---|---|
| 2005 | 14.2 | 6.0 | 79.8 | ... | ... | ... |
| 2005 | 8.4 | 8.3 | 86.3 | -26,799 | 35.0 | 36.3 |
| 2006 | 564,419 | 7.4 | 81.8 | -11,318 | 53.9 | 49.9 |
| 2007 | 568,386 | 12.3 | 81.8 | -11,318 | 11.2 | 49.9 |
| 2008 | 607,491 | 13.1 | 83.6 | -20,606 | 26.2 | 22.8 |
| 2009 | 691,974 | 10.8 | 82.6 | | | |

## LEVERAGE ANALYSIS

| Period Ending | Company — NPW to PHS | Net Lev. | Gross Lev. | Industry Composite — NPW to PHS | Net Lev. | Gross Lev. |
|---|---|---|---|---|---|---|
| 2005 | 1.5 | 3.3 | 3.5 | 0.9 | 1.5 | 3.0 |
| 2006 | 1.5 | 3.0 | 3.3 | 0.8 | 1.5 | 3.0 |
| 2007 | 1.4 | 3.0 | 3.3 | 0.8 | 1.5 | 3.0 |
| 2008 | 1.3 | 3.5 | 4.0 | 0.9 | 1.6 | 3.3 |
| 2009 | 1.2 | 2.9 | 3.1 | ... | ... | ... |

Current BCAR: 296.0

## CEDED REINSURANCE ANALYSIS ($000)

| Year | Ceded Reins. Total | Bus. Ret. (%) | Reins. Recov. (%) | Ceded Reins. to PHS (%) |
|---|---|---|---|---|
| 2005 | 134,841 | 95.5 | 16.1 | 24.5 |
| 2006 | 112,767 | 96.6 | 13.0 | 21.8 |
| 2007 | 126,655 | 95.3 | 14.1 | 21.1 |
| 2008 | 117,633 | 92.8 | 9.1 | 20.4 |
| 2009 | 119,220 | 92.3 | 7.4 | 18.3 |

| Industry Composite — Ceded Reins. to PHS (%) | Bus. Ret. (%) | Reins. Recov. (%) |
|---|---|---|
| 73.3 | | |
| 80.1 | | |
| 92.2 | 64.5 | 124.5 |
| 93.1 | 64.5 | 100.1 |
| 81.1 | 63.1 | 98.2 |
| 82.6 | 72.5 | 101.0 |

## PREMIUM COMPOSITION & GROWTH ANALYSIS

| Period Ending | DPW ($000) | DPW (% Chg) | GPW ($000) | GPW (% Chg) | NPW ($000) | NPW (% Chg) | NPE ($000) | NPE (% Chg) |
|---|---|---|---|---|---|---|---|---|
| 2005 | 813,428 | 5.6 | 861,289 | 5.9 | 808,360 | 5.5 | 783,156 | 7.5 |
| 2006 | 854,285 | 5.0 | 896,229 | 4.1 | 838,330 | 3.7 | 823,531 | 4.3 |
| 2007 | 861,664 | 0.9 | 915,857 | 2.2 | 846,351 | 0.9 | 840,163 | 2.0 |
| 2008 | 816,480 | -5.2 | 871,360 | -4.8 | 809,276 | -4.4 | 817,109 | -2.8 |
| 2009 | 803,333 | -1.1 | 883,770 | 1.4 | 815,500 | 0.8 | 803,703 | -1.6 |
| 5-Yr CAGR | | 0.9 | | ... | | 0.7 | | 1.9 |
| 5-Yr Chg | | 4.8 | | 8.7 | | 6.6 | | 9.5 |

## Narrative

Overall Capitalization: Main Street America Group's current rating level is supported by Best's Capital Adequacy Ratio (BCAR) that reflects its excellent capitalization. The group's capitalization is derived from its modest credit, investment and underwriting risk offset somewhat by the increasing reserve development over the past five years. Capitalization is insulated from catastrophic losses through a comprehensive reinsurance program and close management of the coastal exposures that reduced to the probable maximum loss ...

Reinsurance Utilization: MSA Group maintains modest reinsurance utilization as it consistently retained over 90% of its premiums and liabilities. MSA Group's ratio of ceded reinsurance relative to its surplus declined during the latest five-year period and compares favorably to the composite. The group utilizes a diverse mix of catastrophic reinsurers, as well as to mitigate the impact of weather-related losses, primarily catastrophe reinsurance ...

Reserve Quality: Prior to 2000, Main Street America Group maintained favorable loss reserve development. However, in 2000, adverse development on both a calendar and accident year basis began. Management's corrective actions for accident years 2000 to 2003 were implemented in 2003. Salvage and subrogation are included in the reserves. In 2003 claim file and reserve audits were conducted and claim processes revised as a result of ...

NGM Resp #14  00005



Back to Top

### 2009 REINSURANCE RECOVERABLES ($000)

| | Paid & Unpaid Losses | IBNR | Unearned Premiums | Other Recov* | Total Reins Recov |
|---|---|---|---|---|---|
| US Affiliates | 49,902 | 58,622 | 111,366 | ... | 219,890 |
| US Insurers | 16,106 | 11,269 | 2,973 | -2,783 | 27,565 |
| Pools/Associations | 4,073 | 5,957 | 8,266 | ... | 18,296 |
| Other Non-US | 2,391 | 2,495 | 491 | -288 | 5,089 |
| Total (ex US Affils) | 22,570 | 19,721 | 11,730 | -3,071 | 50,950 |
| Grand Total | 72,472 | 78,343 | 123,096 | -3,071 | 270,840 |

* Includes Commissions less Funds Withheld

### INVESTMENT LEVERAGE ANALYSIS (% OF PHS)

| | Company | | | | | | Industry Composite | |
|---|---|---|---|---|---|---|---|---|
| Period Ending | Class 3-6 Bonds | Real Estate/ Mtg. | Other Invested Assets | Common Stocks | Non-Affil. Inv. Lev. | Affil. Inv. | Class 3-6 Bonds | Common Stocks |
| 2005 | 2.0 | 0.6 | 1.4 | 37.1 | 41.1 | 8.2 | 7.1 | 15.7 |
| 2006 | 1.5 | 0.3 | 1.3 | 48.4 | 51.5 | 4.3 | 6.2 | 16.4 |
| 2007 | 2.3 | 0.3 | 1.2 | 44.9 | 48.7 | 9.2 | 5.8 | 15.3 |
| 2008 | 2.4 | 0.3 | 1.8 | 6.5 | 11.0 | 7.4 | 5.2 | 9.7 |
| 2009 | 2.9 | 0.2 | 1.9 | 14.2 | 19.2 | 6.4 | ... | ... |

### LIQUIDITY

MSA Group's current and overall liquidity measures compared favorably to the composite during the latest five year period. Quick liquidity declined in 2008 as a result of the group reducing a significant portion of its equity portfolio due to the unprecedented turmoil in the capital markets. Overall liquidity was consistently maintained as current assets outpaced growth in current liabilities due to steady underwriting and operating cash flows. Current invested assets include government agencies and corporate bonds with maturities greater than one year. During the period, premium and policy count growth contributed to positive underwriting cash flows. Further, the establishment of the group's holding company structure in the period provided additional liquidity and financial flexibility through access to capital markets. In late 2008, the group's upstream parent holding company contributed $34.3 million to the group.

### LIQUIDITY ANALYSIS

| | Company | | | | Industry Composite | | | |
|---|---|---|---|---|---|---|---|---|
| Period Ending | Quick Liq. (%) | Current Liq. (%) | Overall Liq. (%) | Gross Agents Bal. to PHS (%) | Quick Liq. (%) | Current Liq. (%) | Overall Liq. (%) | Gross Agents Bal. to PHS (%) |
| 2005 | 24.4 | 117.3 | 148.8 | 9.1 | 20.6 | 102.4 | 137.9 | 11.9 |
| 2006 | 31.1 | 122.6 | 151.4 | 10.1 | 23.5 | 108.9 | 141.7 | 11.8 |
| 2007 | 29.1 | 118.7 | 151.2 | 10.4 | 21.7 | 111.2 | 145.2 | 10.1 |
| 2008 | 15.1 | 120.5 | 150.7 | 9.7 | 19.1 | 104.5 | 141.1 | 12.0 |
| 2009 | 16.1 | 127.5 | 157.3 | 8.0 | ... | ... | ... | ... |

### CASH FLOW ANALYSIS ($000)

| | Company | | | | | Industry Composite | |
|---|---|---|---|---|---|---|---|
| Period Ending | Underw Cash Flow | Oper. Cash Flow | Net Cash Flow | Underw Cash Flow (%) | Oper. Cash Flow (%) | Underw Cash Flow (%) | Oper. Cash Flow (%) |
| 2005 | 72,666 | 112,996 | 32,396 | 110.0 | 115.3 | 114.8 | 128.2 |
| 2006 | 70,068 | 111,266 | 1,259 | 109.4 | 114.5 | 113.3 | 125.9 |
| 2007 | 87,765 | 138,484 | 13,344 | 111.9 | 118.2 | 112.0 | 122.6 |
| 2008 | 60,898 | 115,056 | 21,488 | 108.0 | 114.9 | 100.7 | 112.5 |
| 2009 | 32,979 | 95,501 | -49,080 | 104.3 | 112.3 | ... | ... |

### HISTORY

The lead company of the group was organized in March 1923 under the laws of New Hampshire as the National Grange Mutual Liability Company and began business in July 1923 sponsored by the executive officers of the National Grange of the Patrons of Husbandry. All outstanding policy liability of a former companion carrier, National Grange Fire Insurance Company (formed in 1935), was reinsured into the company on December 31, 1958. The corporate title was revised to National Grange Mutual Insurance Company on January 1, 1959. The National Grange Mutual Insurance Company was renamed as NGM Insurance Company in August 2005.

In 1985, MSA Information Systems and Services Corporation was formed as a subsidiary specializing in automated insurance processing services for the insurance industry. In 1986, due to barriers in establishing multi-tier rate structure within a single entity, the company formed Presidential Property and Casualty Insurance Company to write preferred business. In 1987, the name of this company was changed to Main Street America Assurance Company.

In December 1990, the downstream holding company, Main Street America Financial Corporation, acquired 82% of the outstanding common shares of Guilderland Reinsurance Company, the entity created by the demutualization of Guilderland Mutual Reinsurance Company of Delmar, New York. In 1999, Guilderland Reinsurance Company was sold to Excess Reinsurance Company.

Main Street America Group was initiated in 1986 with the creation of the Main Street America Financial Corporation (MSAFC), which is wholly owned by the NGM Insurance Company (NGM). On January 31, 1996, Mutual Assurance Company (MACO), a Pennsylvania-domiciled property and casualty insurer, merged into National Grange Mutual Insurance Company. All policies written by MACO were assumed into National Grange Mutual. As a result of this merger, the Main Street America Group also acquired three additional stock property and casualty insurance companies (Green Tree Insurance Company, American Loyalty Insurance Company, and Old Dominion Insurance Company). Green Tree Insurance Company and American Loyalty Insurance Company were sold to non-affiliated groups.

In December 1994, the company formed Main Street America Holdings, Inc. (MSAH), and transferred ownership of Main Street America Assurance Company to it from Main Street America Financial Corporation. Also in December 1994, the White Mountains Insurance Group invested $25,000,000 into Main Street America Holdings for a 33% equity ownership. In 1998, Main Street America Financial Corporation reduced the percentage of its holdings in MSAH to 50%, due to an additional investment by White Mountains, which increased its equity ownership in MSAH to 50%. Control of the holding company remained with NGM through a tie-breaking vote authority, until 2008.

During 2005, following the redomestication of National Grange Mutual Insurance Company and its affiliates Main Street America Assurance Company to Florida, National Grange Mutual Insurance Company converted to a mutual insurance holding company structure. Under the Plan of Reorganization approved by the Florida Office of Insurance Regulation, National Grange Mutual Insurance Company converted to a stock insurance company renamed NGM Insurance Company (NGM). NGM issued 100% of its common stock to Main Street Group Mutual Holdings, Inc. (Mutual Holdings), a newly organized Florida mutual insurance holding company, which immediately contributed all of its shares of NGM to Main Street America Group, Inc. (MSAGI), a newly organized Florida intermediate holding company, in consideration for issuance of 100 percent of MSAGI's outstanding common stock to Mutual Holdings. The policyholders of NGM, including those Florida policyholders whose policies were transferred to and assumed by MSA Insurance Company as a result of the reorganization, own all of the membership interests of Mutual Holdings. As of the end of 2008 the insurance operations of Main Street America Group consisted of NGM Insurance Company, Main Street America Assurance Company, Old Dominion Insurance Company, MSA Insurance Company, Main Street America Protection Insurance Company, Great Lakes Casualty Insurance Company. The non-insurance operations consist of Main Street America Group Mutual Holdings, Inc., Main Street America Group, Inc., Main Street America Financial Corp., Main Street America Holdings, Inc., Main Street America Capital Corp. and MSA Information Systems and Services Corp.

During 2006, MSAH paid a $70 million cash dividend to White Mountains and MSAGI issued $70 million of 9% non-voting, cumulative perpetual preferred stock and 4.9% of its common stock in exchange for 100% of White Mountains' common stock in MSAH. Mutual Holdings controlling ownership interest in MSAGI was 95.1% as a result of the transaction.

In October 2008, Main Street America Financial Corp. acquired all of the outstanding stock of Great Lakes Casualty, domiciled in Michigan, in exchange for cash, shares in one of the company's intermediate holding companies, and a return of shares of stock of Newco Financial Holdings Inc.

In November 2009, NGM Insurance Company affiliated with Grain Dealers Mutual Insurance Company, domiciled in Indiana. As part of the affiliation, NGM Insurance Company executed quota share reinsurance and management and services agreements and became a majority on the Board of Directors.



Back to Top

## MANAGEMENT

Administration of the group's affairs is under the direction of M.E. Thomas M. Van Berkel, president and chief executive officer. Mr. Van Berkel has been with Main Street America Group since 1990.

NGM Insurance Company maintains management agreements with its subsidiaries to provide personnel, administrative services, facilities supplies and equipment necessary to conduct their operations.

## REINSURANCE

For the 2010 treaty reinsurance program, casualty/umbrella losses are protected by an excess of loss reinsurance agreement providing $11,175 million excess of $5.25 million. In addition, Workers' Compensation catastrophe treaty provides coverage for $12.5 million excess of $12.5 million.

All property losses are protected by an excess of loss per risk treaty affording coverage of $5,000,000 excess of $1,000,000. In addition, the company maintains property catastrophe reinsurance, affording protection of 95% of maximum loss in excess of $25.5 million. Aggregate catastrophe coverage is provided for $15.0 million excess of $10.0 million. Additionally, for the state of Florida, there is "drop-down" coverage on the first layer of $5 million excess of $17.5 million. Separate Fidelity and surety reinsurance is carried. Boiler and machinery coverage, which has been added to most business owners policies, is reinsured 100%. As part of the sale of Guideland Reinsurance Company in 1999, the group remains a 100% reinsurer to Guideland for accidents incurred prior to July 1998.

## CONSOLIDATED SUMMARY OF 2009 OPERATIONS ($000)

| Statement of Income | 12/31/09 | Funds Provided from Operations | 12/31/09 |
|---|---|---|---|
| Premiums earned | 803,703 | Premium collected | 805,652 |
| | | Benefit & loss related pmts | 417,096 |
| Losses incurred | 426,405 | | |
| LAE incurred | 89,676 | LAE & undrw expenses paid | 355,576 |
| Undrw expenses incurred | 271,211 | | |
| Net underwriting income | 16,411 | Undrw cash flow | 32,979 |
| Net investment income | 62,596 | Investment income | 67,252 |
| Other income/expense | -203 | Other income/expense | -203 |
| Pre-tax oper income | 78,714 | Pre-tax cash operations | 100,029 |
| Realized capital gains | 16,160 | | |
| Income taxes incurred | 4,393 | Income taxes pd (recov) | 4,528 |
| Net income | 90,480 | Net oper cash flow | 95,501 |

## CONSOLIDATED BALANCE SHEET
### (at December 31, 2009)

### ADMITTED ASSETS ($000)

| | 12/31/09 | 12/31/08 | '09% | '08% |
|---|---|---|---|---|
| Bonds | 1,251,109 | 1,280,524 | 71.5 | 70.8 |
| Preferred stock | 5,307 | 15,230 | 0.3 | 0.8 |
| Common stock | 98,531 | 39,729 | 5.2 | 2.2 |
| Cash & short-term invest | 12,077 | 61,156 | 0.6 | 3.4 |
| Real estate, offices | 3,804 | 3,804 | 0.2 | 0.2 |
| Other non-affil inv asset | 16,134 | 37,540 | 0.9 | 2.1 |
| Investments in affiliates | 38,479 | 38,833 | 2.0 | 2.1 |
| Total invested assets | 1,573,136 | 1,478,946 | 82.7 | 81.7 |
| Premium balances | 229,497 | 223,642 | 12.1 | 12.4 |
| Accrued interest | 14,196 | 13,910 | 0.7 | 0.8 |
| All other assets | 84,931 | 93,183 | 4.5 | 5.1 |
| Total assets | 1,901,650 | 1,809,501 | 100.0 | 100.0 |

### LIABILITIES & SURPLUS ($000)

| | 12/31/09 | 12/31/08 | '09% | '08% |
|---|---|---|---|---|
| Loss & LAE reserves | 667,991 | 660,772 | 35.1 | 36.5 |
| Unearned premiums | 422,906 | 411,109 | 22.2 | 22.7 |
| Conditional reserve funds | 557 | 1,418 | 0.0 | 0.1 |
| All other liabilities | 118,221 | 128,711 | 6.2 | 7.1 |
| Total liabilities | 1,209,676 | 1,202,009 | 63.6 | 66.4 |
| Surplus notes | 30,000 | 30,000 | 1.6 | 1.7 |
| Capital & assigned surplus | 83,523 | 74,769 | 4.4 | 4.1 |
| Unassigned surplus | 578,451 | 502,723 | 30.4 | 27.8 |
| Total policyholders' surplus | 691,974 | 607,491 | 36.4 | 33.6 |
| Total liabilities & surplus | 1,901,650 | 1,809,501 | 100.0 | 100.0 |

© 2010 A.M. Best Company, Oldwick, NJ 08858

NGM Resp #14  00007



## Why is this *Best's® Rating Report* important to you?

A Rating Report from the A.M. Best Company represents an independent opinion from the leading provider of insurer ratings of a company's financial strength and ability to meet its obligations to policyholders.

The A.M. Best Company is the oldest, most experienced rating agency in the world and has been reporting on the financial condition of insurance companies since 1899. The Financial Strength Rating opinion addresses the relative ability of an insurer to meet its ongoing insurance policy and contract obligations. The rating is not assigned to specific insurance policies or contracts and does not address any other risk, including, but not limited to, an insurer's claims-payment policies or procedures; the ability of the insurer to dispute or deny claims payment on grounds of misrepresentation of fraud; or any specific liability contractually borne by the policy or contract holder. A Financial Strength Rating is not a recommendation to purchase, hold or terminate any insurance policy, contract or any other financial obligation issued by an insurer, nor does it address the suitability of any particular policy or contract for a specific purpose or purchaser.

The company information appearing in this pamphlet is an extract from the complete company report prepared by the A.M. Best Company.

A Best's Rating is assigned after an extensive quantitative and qualitative valuation of a company's financial strength, operating performance and market profile.

Best's Ratings are assigned according to the following scale:

### Secure Best's Ratings

A++ and A+ .................................................. Superior
A and A- ....................................................... Excellent
B++ and B+ ................................................... Good

### Vulnerable Best's Ratings

B and B- ........................................................ Fair
C++ and C+ ................................................... Marginal
C and C- ....................................................... Weak
D .................................................................... Poor
E .................................... Under Regulatory Supervision
F ................................................................ In Liquidation
S ............................................................ Rating Suspended

For the latest Best's Financial Strength Ratings and *AMB Credit Reports* visit the A.M. Best web site at www.ambest.com. You may also obtain *AMB Credit Reports* by calling our Customer Service department at +1-908-439-2200, ext. 5742. To expedite your request, please provide the company's identification number (AMB #).

© 2010 A.M. Best Company, Oldwick, NJ 08858

NGM Resp #14  00008