UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * * | MDL NO. 2047 |
| | | SECTION: "L" |
| | | JUDGE FALLON |
| **THIS DOCUMENT RELATES TO:** *Catalanotto*, No. 10-CV-01828 | | MAG. WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIM FOR DECLARATORY JUDGMENT BY THE STANDARD FIRE INSURANCE COMPANY

NOW INTO COURT, through undersigned counsel, comes The Standard Fire Insurance Company ("Standard Fire") and respectfully files the following First Amended Answer, Defenses, and Counterclaim for Declaratory Judgment in response to the Petition for Damages filed by Mary Ann Catalanotto ("Plaintiff") pursuant to FRCP 15(a)(1):

### ANSWER

1.

Standard Fire denies the allegations in Paragraph 1 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

2.

Standard Fire denies the allegations in Paragraph 2, subparts (1), (2), (3) and (4) for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.  As to the allegations in subpart (5) of Paragraph 2, Standard Fire admits that it is a corporation organized under Connecticut law with its principal place of business in Connecticut, and that it

1

issued a homeowners insurance policy to Mary Ann Catalanotto. The remaining allegations in subpart (5) of Paragraph 2 are denied.

3.

Standard Fire denies the allegations in Paragraph 3 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

4.

Standard Fire denies the allegations in Paragraph 4 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

5.

Standard Fire denies the allegations in Paragraph 5 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

6.

Standard Fire denies the allegations in Paragraph 6 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

7.

Standard Fire admits that Plaintiff Mary Ann Catalanotto purchased a homeowners' insurance policy from Standard Fire insuring a residence premises located at 743 Louque Place, New Orleans, Louisiana (the "Residence Premises"), bearing policy number 942657346 633 1, effective from November 25, 2008 to November 25, 2009 (hereinafter, the "Policy"). The remaining allegations in Paragraph 7 are denied.

8.

Standard Fire denies the allegations in Paragraph 8 and avers that the Policy speaks for itself.

9.

Standard Fire denies the allegations in Paragraph 9 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

10.

Standard Fire admits that the Plaintiff discovered Chinese-made drywall in the Residence Premises ("Catalanotto Drywall"). Standard Fire denies the remaining allegations in Paragraph 10 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

11.

Standard Fire admits that the Plaintiff reported to Standard Fire that she had discovered that the Catalanotto Drywall was causing damage to HVAC coils, electrical wiring and plumbing components. Standard Fire denies the remaining allegations in Paragraph 11 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

12.

Standard Fire admits that the Catalanotto Drywall is unfit for its intended use. Standard Fire denies the remaining allegations in Paragraph 12 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

13.

Standard Fire denies the allegations in Paragraph 13 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

14.

Standard Fire denies the allegations in Paragraph 14 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

15.

Standard Fire admits the allegations in Paragraph 15.

16.

Standard Fire denies the allegations in Paragraph 16 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

17.

Standard Fire denies the allegations in Paragraph 17 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

18.

Standard Fire denies the allegations in Paragraph 18 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

19.

Standard Fire admits the allegations in Paragraph 19.

20.

Standard Fire admits that it investigated the insurance claim made by the Plaintiff which is the subject of this lawsuit, including but not limited to conducting an inspection of the Residence Premises.  Standard Fire denies the remaining allegations in Paragraph 20.

21.

Standard Fire admits that it issued a letter to the Plaintiff denying her insurance claim involving the Catalanotto Drywall for the reasons set forth in that letter, which speaks for itself.

Standard Fire further admits that the Plaintiff timely made payment of premiums due under the Policy. Standard Fire denies the remaining allegations in Paragraph 21.

22.

Standard Fire denies the allegations in Paragraph 22 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

23.

Standard Fire denies the allegations in Paragraph 23 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

24.

Standard Fire denies the allegations in Paragraph 24.

25.

Standard Fire denies the allegations in Paragraph 25.

26.

Standard Fire denies the allegations in Paragraph 26 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

27-86.

Standard Fire avers that no response is required from Standard Fire to the allegations in Paragraphs 27 through 86 because those allegations are directed to defendants other than Standard Fire. To the extent a response is deemed to be required, Standard Fire denies the allegations in Paragraphs 27 through 86 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

87.

Standard Fire's responses to the allegations set forth in Paragraphs 1 through 26 are hereby repeated and realleged.

88.

Standard Fire denies the allegations in Paragraph 88.

89.

Standard Fire denies the allegations in Paragraph 89.

90.

Standard Fire denies the allegations in Paragraph 90.

91.

Standard Fire's responses to the allegations set forth in Paragraphs 1 through 26 are hereby repeated and realleged.

92.

Standard Fire denies the allegations in Paragraph 92.

93.

Standard Fire denies the allegations in Paragraph 93.

94.

Standard Fire's responses to the allegations set forth in Paragraphs 1 through 26 are hereby repeated and realleged.

95.

Standard Fire denies the allegations in Paragraph 95.

96.

Standard Fire denies the allegations in Paragraph 96.

97.

Standard Fire's responses to the allegations set forth in Paragraphs 1 through 26 are hereby repeated and realleged.

98.

Standard Fire denies the allegations in Paragraph 98.

99.

Standard Fire denies the allegations in Paragraph 99.

100.

Standard Fire's responses to the allegations set forth in Paragraphs 1 through 26 are hereby repeated and realleged.

101.

Standard Fire avers that the allegation in Paragraph 101 consists of a legal conclusion to which no response is required.  To the extent a response may be deemed to be required, Standard Fire denies the allegations in Paragraph 101 for lack of sufficient information to justify a belief as to the truth of the matters asserted therein.

102.

Standard Fire denies the allegations in Paragraph 102.

103.

Standard Fire denies the allegations in Paragraph 103.

104.

Standard Fire denies the allegations in Paragraph 104.

105.

Standard Fire avers that Paragraph 105 consists of a request for a jury trial, to which no response is required.

**WHEREFORE**

The final "Wherefore" paragraph contains no allegations against Standard Fire, but states only a prayer for relief. Therefore, no response is required. To the extent a response is deemed necessary, Standard Fire expressly denies any allegations contained therein and expressly denies any liability to Plaintiff.

AND NOW, in further answer, Standard Fire asserts the following defenses:

**First Defense**

The Petition fails to state a claim upon which relief can be granted for the reasons asserted in Standard Fire's 12(b)(6) Motion to Dismiss [Rec. Doc. 4467] filed on July 19, 2010, which Standard Fire incorporates by reference herein as though set forth *in extenso.*

**Second Defense**

The Petition fails to state a cause of action and/or right of action against Standard Fire.

**Third Defense**

The Petition fails to provide sufficient specificity in the allegations to permit a full response thereto and, consequently, Standard Fire reserves its right to raise any and all defenses under the Policy at issue or applicable law until the precise nature of the claims are ascertained through discovery or amendment to the pleadings.

**Fourth Defense**

Coverage is barred, in whole or in part, to the extent the **Chinese-made drywall in the Residence Premises ("Catalanotto Drywall")** has not sustained a "direct physical loss," and

therefore does not fall within the grant of coverage in the Policy. This is a matter on which the Plaintiff bears the burden of proof.

### Fifth Defense

Coverage is barred by the following exclusion in the Policy:

We do not, however, insure, for loss: . . .

    2. Caused by: . . .

        (e) Any of the following: . . .

            (2) Inherent vice, latent defect, mechanical breakdown;

        . . .

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

### Sixth Defense

Coverage is barred by the following exclusion in the Policy:

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

   . . .

    c. Faulty, inadequate or defective: . . .

       3. Materials used in repair, construction, renovation or remodeling; . . .

    of part or all of any property whether on or off the 'residence premises.'

### Seventh Defense

Coverage is barred by the following exclusion in the Policy:

We do not, however, insure for loss: . . .

    2. Caused by: . . .

        (e) Any of the following: . . .

            (3) Smog, rust or other corrosion;

. . .

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

### Eighth Defense

Coverage is barred by the following exclusion in the Policy:

We do not, however, insure for loss: . . .

2. Caused by: . . .

    (e) Any of the following: . . .

    (2) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against Under Coverage C of this policy.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed;

. . .

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

### Ninth Defense

Any obligations that Standard Fire may have under the Policy, which Standard Fire denies, terminate upon the exhaustion of the limits of the Policy.

### Tenth Defense

Plaintiff's claims for statutory bad faith penalties are barred because Standard Fire's denial of coverage was based on a reasonable, good faith interpretation of the insurance policy, and its conduct was not arbitrary, capricious or without probable cause.  The Plaintiff bears the burden of establishing a violation of Louisiana's insurance bad faith statutes.

### Eleventh Defense

Plaintiff's claims for statutory bad faith penalties are barred to the extent Plaintiff seeks

10

penalties that would violate the Due Process Clauses of the United States Constitution and/or the Louisiana Constitution.

### Twelfth Defense

Plaintiff's claims under the Louisiana Valued Policy Law are barred because the Valued Policy Law is inapplicable to Plaintiff's loss because, among other reasons: (1) Plaintiff has not sustained a covered loss; (2) the Valued Policy Law applies only to fire insurance policies, and the Policy is not a fire insurance policy; and (3) the Residence Premises is not a total loss.

### Thirteenth Defense

If the Louisiana Valued Policy Law were otherwise applicable to this case, Standard Fire's liability, in the event of total or partial loss, would be limited to the insurable interest of the insured in the property.

### Fourteenth Defense

Standard Fire adopts and incorporates all affirmative defenses pleaded by any other insurer-defendant to this multi-district litigation except to the extent they are inconsistent with this answer. Standard Fire further reserves the right to amend this answer to assert any additional defenses or any other applicable terms, provisions, exclusions, limitations, or conditions of the Policy that may become apparent during Standard Fire's ongoing investigation and discovery.

And now, assuming the role of Plaintiff-in-Counterclaim, comes The Standard Fire Insurance Company, which asserts the following Counter-Claim for Declaratory Judgment against Mary Ann Catalonotto as follows:

### COUNTER-CLAIM FOR DECLARATORY RELIEF

### Nature of the Action

1.       This is an action for a declaratory judgment under a homeowners insurance policy that Standard Fire Insurance Company ("Standard Fire") issued to Mary Catalanotto, bearing policy number 942657346 633 1, effective from November 25, 2008 to November 25, 2009, and any renewal policy(ies) (the "Policy"), insuring a residence premises located at 743 Louque Place, New Orleans, Louisiana (the "Catalanotto Residence").  Standard Fire seeks a declaratory judgment that there is no coverage under the Policy for an insurance claim made by Ms. Catalanotto relating to Chinese-made drywall installed in her home.  A true and correct copy of the Policy is attached as <u>Exhibit A</u> hereto.

2.       While Standard Fire understands the unfortunate circumstance that Ms. Catalanotto has encountered, responsibility for the Chinese-made drywall and its alleged effects on her home does not lie with Standard Fire.  Coverage under the Policy is limited to the terms of the insurance contract and is subject to the terms, limitations, exclusions and conditions contained therein.  Coverage under the Standard Fire Policy cannot be made to exist when the damage being claimed was simply not insured against.

### Parties

3.       Plaintiff Standard Fire is a corporation incorporated under the laws of Connecticut with its principal place of business in Hartford, Connecticut.

4.       Defendant Mary Catalanotto is an individual domiciled in the State of Louisiana, with a principal residence in Metairie, Louisiana or New Orleans, Louisiana.

### Jurisdiction and Venue

5.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The Policy has a limit of liability of $159,000 for the dwelling,

$15,900 for other structures, $111,300 for personal property, and $47,700 for loss of use. Ms. Catalanotto has claimed that her home is a total loss, and is seeking the entire policy limit of $159,000 for dwelling coverage, as well as coverage for personal property losses. She is also seeking statutory bad faith penalties and attorneys' fees.

6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because the insured property at issue is located in this District, and Ms Catalanotto resides in this District.

**Facts**

7.  The Catalanotto Residence was insured by the Policy, subject to all terms, limitations, conditions, and exclusions contained therein.

8.  Walls within the Catalanotto Residence were constructed using sheets of drywall manufactured in China (the "Catalanotto Drywall").

9.  At some time prior to August, 2009, Ms Catalanatto began to experience certain problems at the Catalanotto Residence and she later reported to Standard Fire these problems.

10. Upon information and belief, Ms Catalanotto investigated whether the reported problems at the Catalonotto Residence were associated with or caused by the Catalanotto Drywall.

11. Ms. Catalanotto reported to Standard Fire that the Catalanotto Drywall was faulty.

12. Ms. Catalanotto reported to Standard Fire that the Catalanotto Drywall caused damage to air conditioner coils and an alarm system, requiring replacement of those items.

13. Ms. Catalanotto reported to Standard Fire that the Catalanotto Drywall caused corrosion to electrical wiring, plumbing and air conditioner coils.

14. Ms. Catalanotto reported to Standard Fire that she was concerned about the possibility of health problems due to sulfur gas created by the Catalanotto Drywall.

15. Standard Fire's investigation verified the presence of Chinese-made drywall in the Catalanotto Residence, and that there was corrosion of certain samples of electrical wiring and plumbing fixtures. Standard Fire's investigation further verified the presence of copper sulfide on certain electrical and plumbing fixtures.

16. Standard Fire determined that there was no coverage for Ms. Catalanotto's claim under the Policy for the claim submitted. Standard Fire informed Ms. Catalanotto, by letter, of its coverage determination.

17. Any problem with the Catalanotto Drywall is not visible.

18. Any problem with the Catalanotto Drywall is not readily discoverable.

19. The Catalanotto Drywall is discharging or releasing a gas or gases that are not emitted by ordinary American-made drywall.

20. The Catalanotto Drywall is discharging or releasing a gas or gases that cause irritation.

21. The Catalanotto Drywall is discharging or releasing a gas or gases that render the air in the Catalanotto Residence impure.

22. The Catalanotto Drywall is discharging or releasing a gas or gases that have contaminated the air in the Catalanotto Residence.

23. Any claimed damage to the air conditioning equipment, wiring, plumbing and other metals at the Catalanotto Residence was caused by the presence of the Catalanotto Drywall.

24. Any claimed damage to the air conditioning equipment, wiring, plumbing and other metals at the Catalanotto Residence was caused by the discharge or release of a gas or gases from the Catalanotto Drywall.

25. Any claimed damage to the air conditioning equipment, wiring, plumbing and other metals at the Catalanotto Residence was caused by corrosion.

26. Any claimed damage to personal property at the Catalanotto Residence was not caused by any of the following causes: fire; lightning; windstorm; hail; explosion; riot; civil commotion; aircraft; vehicles; smoke; vandalism; malicious mischief; theft; falling objects; weight of ice, snow or sleet; discharge or overflow of water or steam; sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water; freezing; or volcanic eruption.

27. Any claimed damage to personal property at the Catalanotto Residence was not caused by sudden and accidental damage from artificially generated electrical current.

**Applicable Policy Provisions – Coverage for the Dwelling and Other Structures**

28. With respect to Coverage A – Dwelling and Coverage B – Other Structures, the Policy's grant of coverage provides that:

> We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss:
> . . .
> **2.** Caused by: [certain enumerated causes]
>
> **3.** Excluded under SECTION I – EXCLUSIONS.

(Exhibit A, Form HO-3 (04-91), at 7-8.)

29. The Policy provides that the following causes of loss are not insured with respect to Coverage A – Dwelling and Coverage B – Other Structures:

> We do not insure, however, for loss:
> . . .
> **2.** Caused by:

15

> . . .
>> **e.** Any of the following:
>>> . . .
>>> **(2)** Inherent vice, latent defect, mechanical breakdown;
>>> **(3)** Smog, rust or other corrosion, mold, wet or dry rot;
>>> . . .
>>> **(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.
>>>
>>> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
>>> . . .
> Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded by any other provision in this policy is covered.

(Exhibit A, Form HO-3 (04-91), at 6-7.)

30. The Policy contains the following exclusion, which applies to all coverage parts:

> 2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.
>
> . . .
>
>> c. Faulty, inadequate or defective: . . .
>>
>>> 3. Materials used in repair, construction, renovation or remodeling; . . .
>>
>> of part or all of any property whether on or off the 'residence premises.'

(Exhibit A, Form HO-3 (04-91), at 9.)

### Applicable Policy Provisions – Coverage for Personal Property

31. With respect to Coverage C – Personal Property, the Policy's grant of coverage provides, in pertinent part, as follows:

> We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

16

1. **Fire or lightning.**
2. **Windstorm or hail.**
. . .
3. **Explosion.**
4. **Riot or civil commotion.**
5. **"Aircraft"**. . .
6. **Vehicles.**
7. **Smoke** . . .
8. **Vandalism or malicious mischief.**
9. **Theft** . . .
10. **Falling objects.**
. . .
11. **Weight of Ice, Snow or Sleet** . . .
12. **Accidental discharge or overflow of water or steam** . . .
13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water. We do not cover loss caused by or resulting from freezing under this peril.
14. **Freezing** . . .
15. **Sudden and accidental damage from artificially generated electrical current.** This peril does not include loss to a tube, transistor or similar electronic component.
16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

(Exhibit A, Form HO-3 (04-91) at 7-8.)   The exclusion set forth in Paragraph 30 above also applies to Coverage C.

### Application of the Policy to Ms. Catalanotto's Claim

32. The damage claimed by Ms. Catalanotto constitutes a loss caused by a "[l]atent defect, inherent vice" and therefore is excluded under provisions of the Policy.

33. The damage claimed by Ms. Catalanotto constitutes a loss caused by "[f]aulty, inadequate or defective . . . [m]aterials used in repair, construction, renovation or remodeling," and therefore is excluded under the terms of the Policy.

34. The damage claimed by Ms. Catalanotto constitutes a loss caused by a "[l]atent defect" and therefore is excluded under the terms of the Policy.

35. The damage claimed by Ms. Catalanotto constitutes a loss "[c]aused by . . . [f]aulty, inadequate or defective . . . [m]aterials used in repair, construction, renovation or remodeling," and therefore is excluded under the terms of the Policy.

36. The damage claimed by Ms. Catalanotto constitutes a loss "[c]aused by . . . [d]ischarge, dispersal, seepage, migration, release or escape of pollutants," and is therefore excluded under the terms of the Policy.

37. The damage claimed by Ms. Catalanotto constitutes a loss "[c]aused by . . . corrosion," and therefore is excluded under the terms of the Policy.

38. There is also no coverage for the removal and replacement of the Catalanotto Drywall under the policy because it has not sustained a "direct physical loss," and therefore does not fall within the grant of coverage in the Policy.

39. Ms. Catalanotto's claim for allegedly damaged personal property falls under Coverage C in the Policy. This coverage applies only to loss caused by one or more of the 16 named perils quoted in Paragraph 31 above.

40. There is no coverage for the claimed damage to personal property because Ms. Catalanotto has not demonstrated that the claimed damage was caused by any of the 16 named perils set forth in Paragraph 31 above.

41. Even if the claimed damage to the personal property was caused by one of the named perils, it was "caused by . . . [f]aulty, inadequate or defective . . . [m]aterials used in repair, construction, renovation or remodeling," and therefore would be excluded under the terms of the Policy.

## COUNT ONE
### (Declaratory Judgment Pursuant To 28 U.S.C. § 2201)

42. Standard Fire repeats and realleges the allegations contained in Paragraphs 1 through 41 above, as if fully set forth herein.

43. Standard Fire has denied coverage for the claim made by Ms. Catalanotto.

44. An actual controversy has arisen as to whether, under the terms, conditions, exclusions and limitations of the Policy, Standard Fire has an obligation to provide coverage for the losses claimed.

45. Pursuant to 28 U.S.C. § 2201, Standard Fire is entitled to a declaration that, under the Policies, it has no obligation to provide coverage for the losses claimed by Ms Catalanotto.

### REQUESTS FOR RELIEF

WHEREFORE, Standard Fire respectfully requests that the Court grant it the following relief:

A. Enter a declaratory judgment that the Policy does not provide coverage for damages claimed by Ms. Catalanotto.

B. And for such other relief as this Court deems proper.

 /s/Ralph S. Hubbard
**Ralph S. Hubbard III, La. Bar No. 7040**
**Seth A. Schmeeckle, La. Bar No. 27076**
**LaDonna G. Wilson, La. Bar No. 29102**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
e-mail: rhubbard@lawla.com
sschmeeckle@lawla.com
lwilson@lawla.com

**Attorneys for The Standard Fire Insurance Company**

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing First Amended Answer, Defenses, and Counter-Claim for Declaratory Relief have been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 25th day of August, 2010.

        /s//*Ralph S. Hubbard*_____
      **Ralph S. Hubbard, La. Bar No. 7040**