**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE CHINESE-MANUFACTURED DRYWALL** | * | **MDL NO. 2047** |
| **PRODUCTS LIABILITY LITIGATION** | * | |
| | * | **SECTION "L"** |
| | * | |
| **THIS DOCUMENT RELATES TO:** | * | **JUDGE FALLON** |
| **_Galloway_, No. 10-CV-688** | * | |
| | * | **MAG. WILKINSON** |

**************************************************

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT**
**OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

When the words used in the Policy issued by Property & Casualty Insurance Company of

Hartford ("P&C") are given their ordinary meaning, as Louisiana law requires, it is self-evident

that the Policy excludes Chinese drywall-related losses.   Even the Plaintiffs' Steering

Committee's (PSC) own recent filing in "All Cases" in this MDL uses the word "defective" to

describe the drywall and the word "corrosive" to describe the damage it causes to metals.  (Doc.

5011-1, at 6-7.)  Plaintiff cannot find coverage here without contorting the English language.

**I.     PLAINTIFF'S CLAIMS ARE BARRED BY SEVERAL POLICY EXCLUSIONS**

**A.     Faulty Materials Exclusion**

There can be no real dispute that Plaintiff's claimed losses were caused by "[f]aulty,

inadequate or defective . . . materials used in repair, construction, renovation or remodeling . . .

."[1]     (Policy, at 18.)  A building component that emits gases that cause an odor, corrosion of

metals, and physical injuries (_see_ Petition, ¶¶ 7-9) is "faulty" and "defective" within the ordinary

meaning of those terms.  To use Plaintiff's own definitions of those terms, the drywall is "not

adequate," "insufficient," "imperfect in form or function," and "falling below the norm . . . ."

---

[1] Plaintiff's argument that the exclusions are affirmative defenses that cannot be considered on a Rule 12 motion (Opp. at 3) is clearly wrong.  _See, e.g._, _In re Katrina Canal Breaches Consol. Litig._, 495 F.3d 191 (5th Cir. 2007) (deciding Rule 12 motions based upon flood exclusions in homeowners' policies).

(Opp. at 9 (quoting *Merriam-Webster Online Dictionary*).)  Indeed, a recent filing by the PSC –
the very same lawyers who signed Plaintiff's brief in the case at bar -- concedes that this MDL
involves "property owners whose homes or other properties were damaged by ***defective
drywall***," and "[n]umerous governmental agencies have studied this drywall and found it to be
***defective***."  (Record Doc. 5011-1, at 6 (filed in "All Cases") (emphasis added).)

Plaintiff contends, based on this Court's decision on the economic loss rule, that the
drywall is not "faulty, inadequate or defective" because it "was performing the purpose of
drywall, i.e., serving as a finishing material, holding paint and art, providing fire protection,
providing sound and heat insulation."[2]  (Opp. at 10.)  But, as the Court explained, Chinese
drywall's "***defects go beyond disappointed economic expectations***, causing harm which justifies
access to tort remedies."  *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 680 F. Supp.
2d 780, 793 (E.D. La. 2010) (Fallon, J.)  *Id.* at 793 (emphasis added).  This Court did not
conclude that Chinese drywall is not defective—indeed, such a holding would have been fatal to
the plaintiffs' products liability claims.  To the contrary, the Court described the cases before it
as involving "defective Chinese drywall" and used the term "defective" or "defect" several times
in describing the drywall.  *Id.* at 782, 790, 793.  *See also TRAVCO Ins. Co. v. Ward*, 2010 WL
2222255, at *13 (E.D. Va. June 3, 2010) ("Consistent with the ordinary meaning of the words
'faulty' and 'defective,' courts have held that the faulty materials exclusion can apply even when
the property in question may be serving its intended purpose.").

### B.      Furnishing of Work or Materials Exclusion

Plaintiff admits that the plain language of P&C's exclusion for furnishing of work or
materials ***is applicable*** on its face, but contends that "the cause of Plaintiff's loss is the emissions

---

[2] Plaintiffs cannot have it both ways – they cannot argue that the drywall is not "defective" and at the same time
contend that the drywall has sustained a "direct physical loss" sufficient to trigger coverage.

from the drywall" and "Plaintiff's loss was not caused by the supplying or installation of the drywall, other than the fact that this was done."  (Opp. at 11.)  But the exclusion's prefatory language, in capital letters, states that "WE WILL NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY ***OR INDIRECTLY*** CAUSED BY, RESULTING FROM, ***CONTRIBUTED TO*** OR AGGRAVATED BY, ***OR WHICH WOULD NOT HAVE OCCURRED BUT FOR***, EITHER OF THESE PERILS . . . ."  (Policy, Amendatory Endorsement – Specifically Excepted Perils, HW 01 03 06 03 (NS), at 1 (emphasis added).) There can be no question that "but for" the furnishing of the defective Chinese-made drywall, the losses claimed by Plaintiffs would not have occurred.  As Judge Duval held in construing the very same policy language, this "'lead-in' clause leaves nothing to the imagination," and "[s]uch a clear statement of exclusion from coverage likewise must be enforced."  *In re Katrina Canal Breaches Consol. Litig.*, 466 F. Supp. 2d 729, 764-65 (E.D. La. 2006), *vacated in part on other grounds*, 495 F.3d 191 (5th Cir. 2007).

Given the plain applicability of this exclusion, Plaintiff is left with arguing that the exclusion is purportedly so broad as to render coverage illusory.  (Opp. at 11.)  But that is plainly wrong – there are many types of commonly-occurring losses that would be covered under the Policy, and have nothing to do with faulty work or materials.  These include, for example, most causes of fire, damage caused by windstorm, hail, tornadoes, vandalism, theft, etc.[3]

Contrary to Plaintiff's contentions, the Court can readily apply the exclusion without considering Plaintiff's allegations in the *Amato* class action, because the Petition alleges that

---

[3] *See Newhouse v. Colony Ins. Co.*, 2010 U.S. App. LEXIS 14112, at *2-3 (5th Cir. June 23, 2010) ("Because there remain circumstances under which [the insurer] remains obligated to provide coverage for the hazards outlined in the policy against other classes of claimants, coverage has not been rendered illusory.") (unpublished; applying Texas law); *In re Katrina Canal Breaches Consol. Litig.*, 2008 U.S. Dist. LEXIS 86651, at *509-10 (E.D. La. Aug. 26, 2008) (Duval, J.) (holding that policy was not illusory where it "does provide coverage to certain officials and employees under certain circumstances").

Chinese-made drywall was installed in Plaintiff's home (Petition, ¶ 6), and that "[t]he damage and loss sustained by Plaintiff was caused by the presence of Chinese drywall in Plaintiff's home . . . ." (*Id.*, ¶ 18.)  It is thus clear on the face of the Petition that "but for" acts, errors, or omissions in the "furnishing of . . . materials," *i.e.*, Chinese-made drywall, Plaintiff's claimed losses "would not have occurred . . . ."  (Policy, Amendatory Endorsement – Specifically Excepted Perils, HW 01 03 06 03 (NS), at 1.)  Moreover, the Court should take judicial notice of Plaintiff's allegations in *Amato*, which make the applicability of this exclusion even more clear. (*See* P&C Memo., Doc. 4494-1, at 2-3, 12.)  In paragraphs 627-29 of the 6th Am. *Amato* Complaint, Galloway alleges that the defendants there "tortiously" and "negligently" "delivered" and "supplied" the drywall used in his home.[4]  It is clear from Plaintiff's own words, that the <u>furnishing</u> of the drywall – the supplying and delivering of the drywall – was itself tortious and negligent.  The exclusion squarely applies to exactly such a cause of loss.

### C.    Latent Defect Exclusion

Plaintiff claims that the latent defect exclusion is inapplicable because "[t]here is no evidence that the problems with the Chinese manufactured drywall were latent," and "there are no allegations of latency or of a defect in Plaintiff's Petition."  (Opp. at 6-7.)  To the contrary, the Galloway residence was built with Chinese-made drywall in 2006 (*see* Policy at 2), but Galloway alleges that he did not discover the problem with the drywall until the Spring of 2009. (Petition, ¶ 6.)  A defect that takes several *years* to manifest itself and be discovered is "latent"

---

[4] Plaintiff cites no authority whatsoever for his argument that the *Amato* allegations are not properly considered on this motion.  (*See* Opp. at 3.)  P&C previously cited several Fifth Circuit cases demonstrating that, on a Rule 12 motion, a district court can take judicial notice of matters of public record, such as a court record in a prior proceeding.  (*See* Doc. 4494-1, at 2-3.)  In this case, P&C simply asks the Court to take judicial notice of the 6th Amended *Amato* Complaint, which is on file with this Court and is attached at Tab B to P&C moving brief, and to consider the allegations made by the very same Plaintiff involving the same property damage, in that case which is also part of this MDL.  Plaintiff has not disputed those allegations or made any attempt to withdraw them.  *See also Hall v. Hodgkins*, 305 Fed. Appx. 224, 229 (5th Cir. 2008) (taking judicial notice, on a Rule 12(b)(6) motion, of allegations made by plaintiff in prior suits); *Xavier v. Belfor USA Group, Inc.*, 2007 WL 4224320, at *2 (E.D. La. Nov. 26, 2007) (same).

within the plain and ordinary meaning of that word – it is "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328, 335 (La. App. 3d Cir. 1984) (quoting *Walker v. Travelers Indemnity Co.*, 289 So. 2d 864, 870 (La. App. 4th Cir. 1974)). This exclusion "remove[s] the risk for losses that result from flaws in property that are undetectable, and hence unexpected," and "[l]osses from defective Chinese Drywall fit squarely within this category." *TRAVCO Ins. Co. v. Ward*, 2010 WL 2222255, at *12 (E.D. Va. June 3, 2010).

Plaintiff further contends that the latent defect exclusion applies only to "a quality within an object which makes it tend to destroy itself," citing a definition of "inherent vice" – not latent defect – from a book published in 1956. (Opp. at 7 (quoting William H. Rodda, FIRE AND PROPERTY INSURANCE 298 (Prentice Hall, Inc. 1956)). The only case Plaintiffs cite on this point is a Texas case that also construes a different exclusion for inherent vice. *See Employers Casualty Co. v. Holm*, 393 S.W.2d 363, 367 (Tex. Civ. App. 1965). Plaintiff's interpretation of the latent defect exclusion would be contrary to the plain language of the Policy, which provides that "We do not insure, however, for loss: . . . c.  Caused by: . . . Mechanical breakdown, *latent defect*, inherent vice, *or any quality in property that causes it to damage or destroy itself.*" (Policy, at 16 (emphasis added).)  Under Plaintiff's interpretation, "latent defect" would mean the same thing as a "quality in property that causes it to damage or destroy itself," rendering the two separate exclusions duplicative and one of them meaningless. *See Lewis v. Hamilton*, 652 So. 2d 1327, 1330 (La. 1995) (rejecting interpretation of insurance policy that would "render[] meaningless" certain policy language); *Riverwood Int'l Corp. v. Emplrs Ins. of Wausau*, 420 F.3d 378, 383 (5th Cir. 2005) (applying same rule); La. Civ. Code art. 2049.[5]

---

[5] The Fire, Casualty & Surety (FC&S) bulletin cited by Plaintiff is not admissible evidence and is irrelevant because there is no ambiguity in the term "latent defect."  *See Six Flags Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d

### D.      Corrosion Exclusion

There is no dispute that, as Plaintiff alleges, "[t]he Chinese drywall emits odorous gases that ***cause corrosion***" of various building components.   (Petition, ¶ 7 (emphasis added).)  Plaintiff argues that "the damage is not caused by corrosion," but rather the damage consists of corrosion that was "caused by the sulphur compounds being emitted from the drywall."  (Opp. at 12.)  To the extent the sulfuric gases were a cause, they are excluded by the pollution exclusion.  Secondly, as this Court has previously recognized, "corrosion" is "the chemical or electrochemical reaction between a material, usually a metal, and its environment that produces a deterioration of the materials and its properties."  *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 2010 WL 1445684, at *6 (E.D. La. Apr. 8, 2010) (quoting ASTM definition).  That is precisely the cause of the alleged damage to metals in Plaintiff's home.  (Petition, ¶ 7.)  Courts have persuasively rejected the very same argument Plaintiff makes.  *See Kay v. United Pac. Ins. Co.*, 902 F. Supp. 656, 658 (D. Md. 1995) (explaining that, in the corrosion exclusion, "corrosion is being used in its sense of a process, not in its sense of a completed state," and that the exclusion applies to "losses and damages, such as the loss of required structural strength, that are the effects of corrosion").

Plaintiff relies heavily on dictum in *Trus Joist Macmillan v. Neeb Kearney & Co.*, 2000 WL 306654 (E.D. La. Mar. 23, 2000) (Sear, J.), but the holding of that case was that merely because bedplates were rusted would not necessarily establish that rust was the cause of the damage.  *Id.* at *6-7.  Plaintiff completely ignores two decisions by judges of this Court cited by

---

948, 962 (5th Cir. 2009).  Even if there were an ambiguity, a third party document is not the type of extrinsic evidence that can be considered.  *See* La. Civ. Code art. 2053.  In any event, the FC&S bulletin relates to a "Processors Coverage Form" not at issue here, and, ***in language that is omitted by ellipses in Plaintiffs' brief***, it also states that the exclusion applies to losses "due to a hidden or latent defect," which would apply here.  (FC&S Bulletin entitled "Processors Coverage Form," Dec. 2005, at 3.)  Moreover, a second FC&S bulletin specifically concludes that the latent defect exclusion applies to Chinese drywall claims.  (FC&S Bulletin entitled "Chinese Drywall: The Next Big Issue?, Mar. 2010, at 3.)

P&C that were contrary to his position.  *See Transcontinental Ins. Co. v. Guico Machine Works, Inc.*, Civ. Nos. 06-2516 & 06-3184, 2008 U.S. Dist. LEXIS 69972, at *4-5 (E.D. La. Sept. 17, 2008) (Englehardt, J.); *Orthopedic Practice, LLC v. Hartford Cas. Ins. Co.*, Civ. No. 06-8710, 2008 U.S. Dist. LEXIS 18335, at *8 (E.D. La. March 10, 2008) (Porteous, J.).

### E.       Pollution Exclusion

Plaintiff's argument on the pollution exclusion focuses heavily on *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119 (La. 2000).  P&C's memorandum of law explained numerous reasons why *Doerr* is inapplicable here.  (*See* Doc. 4494-1, at 17-19).  Plaintiff ignores these arguments and instead attempts to apply the factors articulated in *Doerr* – involving "the nature of the insured's *business*, whether that type of *business* presents a risk of pollution," and whether that business is a "polluter," to a homeowner.   (Opp. at 16 (emphasis added).)   Plaintiff's own analysis demonstrates how application of *Doerr* to this case makes no sense.  A homeowner is never a "professional polluter" in the sense that a commercial business can be.

Plaintiff further contends that *Thompson v. Temple*, 580 So. 2d 1133 (La. App. 4 Cir. 1991) requires application of *Doerr* to a homeowners' policy.  But that case involved *liability* insurance coverage for claims made by third parties against a homeowner – tenants in the home sued the homeowner for personal injuries caused by carbon monoxide released from a heater.  *Id.* at 1134.  In contrast, the liability insurance section (Section II) of the Policy at issue here, which provides coverage for certain types of claims made by third parties *against* Plaintiff, does *not* have a pollution exclusion.  (*See* Policy, at 51-56.)  What is at issue here is the exclusion for damage to the insured's own property caused by a contaminant or irritant, which has been enforced in property insurance policies for decades.  (*See* Doc. 4494-1, at 19.)  Moreover, *Thompson* offers no explanation for how the *Doerr* test could be applied to a homeowner without

7

completely eviscerating the pollution exclusion in the policy at issue.

Plaintiff further argues that "[t]he 'pollutant' at issue here is contained within drywall" (Opp. at 17), and that the Petition does not adequately allege that there is a "pollutant."  Plaintiff misconstrues P&C's position.  As P&C previously argued, it is the sulfuric gas, not the drywall itself or something within the drywall, that is the "pollutant."  (Doc. 4494-1, at 15-16.)  Plaintiff expressly alleges that these "odorous" and "noxious" gases "cause corrosion" of metals and "physical injuries to Plaintiff and his tenants," resulting in "nose bleeds, headaches, [and] respiratory problems . . . ."  (Petition, ¶¶ 7-9.)  The Policy defines "pollutants" as "irritants" and "contaminants," and "[u]nder any reasonable definition of these terms, the gases released [by Chinese drywall] qualify as irritants and contaminants."  *TRAVCO*, 2010 WL 2222255, at *18.  As this Court has previously concluded, "by any recognized standard, high levels of corrosive gases are present in the representative homes.  This condition is clearly irritating and harmful to residents and destructive to property."  (Opinion in *Germano v. Taishan Gypsum Co. Ltd.*, Rec. Doc. 2380, at 26; quoted by PSC in Doc. 5011-1, at 7).  These gases are unquestionably "contaminants" and "irritants."

## II.    THE DRYWALL ITSELF SUSTAINED NO DIRECT PHYSICAL LOSS

Under controlling Fifth Circuit authority, there is no coverage for the replacement of the Chinese drywall itself because the Policy insures only against "direct physical loss."  *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) ("[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state"); *see also* Doc. 4494-1, at 20-22.  Plaintiff argues that he has alleged some physical loss to the home including metal items, and contents. (Doc. 4730, at 4-5.)  But Plaintiff completely misses P&C's point – to the extent Plaintiff is

seeking the cost of replacing the drywall *itself*, there is no "physical loss" to the drywall.

## III.   THE ENSUING LOSS CLAUSE DOES NOT APPLY

Plaintiff's final argument is that the damage caused by corrosion of metal components is covered under the "ensuing loss" exception to the faulty materials, latent defect, corrosion and pollution exclusions.  The ensuing loss clause is inapplicable here for two reasons.  First, the ensuing loss clause provides that "any ensuing loss to property described in Coverage A *not precluded by any other provision in this policy* is covered."[6]  (Policy, Form HO 17 32 10 10, at 2 (emphasis added).)  Here, any "ensuing" loss was excluded, and thus the ensuing loss clause does not apply.  *TRAVCO*, 2010 WL 2222255, at *19; *see also Schloss v. Cincinnati Ins. Co.*, 54 F. Supp. 2d 1090 (M.D. Ala. 1999), *aff'd without opinion*, 211 F.3d 131 (11th Cir. 2000).

Second, the clause applies only where there is more than one loss, and the first loss, which is excluded, leads to a second, separate, "ensuing" loss, which is not excluded.  Here, there is only one loss, no matter how that loss is characterized.  As *TRAVCO* explained:

> An ensuing loss is a loss that occurs subsequent in time to an initial loss.  In the present case, only a single claimed loss has occurred.  . . . Although this damage occurred gradually over a period of time, it still represents a single discrete loss from a single discrete injury, namely the off-gassing of defective Chinese Drywall.

*TRAVCO*, 2010 WL 2222255, at *19.[7]  Plaintiff misstates P&C's position when he argues that

---

[6] The exclusion for furnishing of work or materials contains a different exception stating, in pertinent part:  "This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.  As used in this endorsement: . . . If written to cover the risk of loss without specifying specifically named causes, 'Covered Peril' means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy."  (Policy, Amendatory Endorsement – Specifically Excepted Perils, at 1.)  This provision is inapplicable because the losses being claimed were not caused directly by any covered peril – to the contrary, five different exclusions apply.

[7] The Louisiana cases involving "ensuing loss" and similar "resulting loss" clauses recognize that these clauses apply only where there are two separate losses, and the second loss is covered, and is separate and distinct from the first loss.  *See Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 505-06 (5th Cir. 2000) (holding that a resulting loss clause did not apply where minor cracking foundation later became more severe, finding that there was only one loss and that the minor cracking did not "cause" the more severe cracking); *Lake Charles Harbor & Terminal Dist. v. Imperial Cas. & Indem. Co.*, 857 F.2d 286, 288 (5th Cir. 1988) (ensuing loss clause held inapplicable where court found there were two separate losses – a cable broke due to a mechanical breakdown, and a

"there is a distinct separation between what Defendant argues is the excluded loss, the Chinese drywall itself, and the ensuing losses, which are the damages caused by the gases that the Chinese drywall emits." (Opp. at 20.) The drywall itself has sustained no "physical loss" at all (*see* Doc. 4494-1, at 20-22). The only damage is to the metals, and that is excluded.

Courts construing ensuing loss clauses also "have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk." *Narob Dev. Corp. v. Ins. Co. of N. Am.*, 631 N.Y.S.2d 155, 155-56 (N.Y. App. Div. 1995). These courts have found no "ensuing loss" if "there was no subsequent ensuing cause of loss *separate and independent* from the initial excluded cause of loss . . . ." *Weeks v. Co-operative Ins. Cos.*, 817 A.2d 292, 296 (N.H. 2003) (emphasis added). Supreme or appellate courts in California, Indiana, Nebraska, New York, New Hampshire, Minnesota, Massachusetts, North Carolina and Washington all agree on this point.[8]

Here, the defect in the drywall that produces the sulfuric gases is what causes the claimed damage to metal surfaces. (*See* Petition, ¶¶ 7, 18.) There is no separate and independent cause, such as if corrosion of electrical wires were to cause a fire, resulting in fire damage, *see Alton Ochsner*, 219 F.3d at 505. The ensuing loss clause therefore does not apply.

---

shuttle then damaged a ship loader); *Dawson Farms, L.L.C. v. Millers Mut. Fire Ins. Co.*, 794 So. 2d 949, 952-53 (La. App. 2 Cir. 2001) (ensuing loss clause held applicable where the court found that a loss to a warehouse caused by faulty design and workmanship was excluded, but a "second accident" – damage to sweet potatoes in the warehouse from condensation – was not excluded); *Holden v. Connex-Metalna*, 2000 WL 1876338, at *8 (E.D. La. Dec. 21, 2000) (Duval, J.) (recognizing that "there must be a distinct separation between the excluded loss and the ensuing loss").

[8] *Acme Galvanizing v. Fireman's Fund Ins. Co.*, 270 Cal. Rptr. 405, 411 (Cal. Ct. App. 1990); *Hartford Cas. Ins. Co. v. Evansville Vanderburgh Pub. Library*, 860 N.E.2d 636, 646 (Ind. App. 2007); *Gies v. City of Gering*, 695 N.W.2d 180, 193 (Neb. Ct. App. 2005); *Narob Dev. Corp.*, 631 N.Y.S.2d at 155-56; *Weeks*, 817 A.2d at 296; *Bloom v. N.W. Nat'l Mut. Ins. Co.*, No. A05-2093, 2006 Minn. App. Unpub. LEXIS 651, at *14 (Minn. App. July 3, 2006); *Hanover New England Ins. Co. v. Smith*, 621 N.E.2d 382, 383 (Mass. App. Ct. 1993); *Smith v. State Farm Fire & Cas. Co.*, 425 S.E.2d 719, 720-21 (N.C. Ct. App. 1993); *Alwart v. State Farm Fire & Cas. Co.*, 508 S.E.2d 531, 534 (N.C. Ct. App. 1998); *Wright v. Safeco Ins. Co.*, 109 P.3d 1, 7 (Wash. Ct. App. 2004).

Respectfully submitted,

/s/ Seth A. Schmeeckle
Ralph S. Hubbard, III (La. Bar #7040)
Seth A. Schmeeckle, Esq. (La. Bar #27076)
**Lugenbuhl, Wheaton, Peck, Rankin
   & Hubbard**
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Tel: (504) 568-1990 Ext. 119
Fax: (504) 310-9195
e-mail:        rhubbard@lawla.com
                sschmeeckle@lawla.com

**And**

**Of Counsel
STEPHEN E. GOLDMAN
WYSTAN ACKERMAN
GERALD P. DWYER, JR.
ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:    (860) 275-8200
Facsimile:     (860) 275-8299
e-mail:        sgoldman@rc.com
              wackerman@rc.com
              gdwyer@rc.com

**Counsel for Property & Casualty
Insurance Company of Hartford**

## CERTIFICATE OF SERVICE

       I hereby certify that the above and foregoing F.R.C.P. 12(c) Reply Memorandum in Further Support of its Motion for Judgment on the Pleadings has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 16th day of August, 2010.

         /s/ Seth A. Schmeeckle
         **Seth A. Schmeeckle, La. Bar No. 27076**