UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2:09-md-02047 |
| | * | JUDGE FALLON |
| **This document relates to:** | * * | |
| CENTERLINE HOMES CONSTRUCTION, INC, *et al.* v. MID-CONTINENT CASUALTY CO., *et al.* **(2:10-cv-178)** (E.D. La.) | * * * * * * | MAGISTRATE WILKINSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MID-CONTINENT CASUALTY COMPANY'S MEMORANDUM IN OPPOSITION TO CENTERLINE HOMES CONSTRUCTION, INC., CENTERLINE HOMES AT GEORGETOWN, LLC, CENTERLINE HOMES, INC., AND COMPLETED COMMUNITIES II, LLC MOTION TO COMPEL**

Background

The Plaintiff, Centerline Homes Construction, Inc., Centerline Homes at Georgetown, LLC, Centerline Homes, Inc., and Completed Communities II, LLC (collectively "Centerline") moved to compel 5 categories of documents and 30(b)(6) deposition topics. The only areas of dispute are:

(1) Documents and information requested from Mid-Continent's parent and subsidiary companies;

(2) Documents and information related to person(s) who sold Mid-Continent's insurance policies in Louisiana and the manner in which they sold said policies;

(3)   Documents and information related to other lawsuits in Louisiana in which Mid-Continent has alleged that it is authorized to do business in Louisiana;

(4)   Marketing plans addressing Louisiana; and

(5)   Insurance policies referencing Louisiana.

For the reasons discussed below Centerline's Motion to Compel should be denied.[1]

## A. Documents And Information Requested From Mid-Continent's Parent And Subsidiary Companies

In MCC's verified answer to interrogatory No. 1, MCC responded:

> MCC is a wholly owned subsidiary of Great American Holding, Inc. which does not sell insurance. MCC has two subsidiaries of which it owns 100%, Mid-Continent Assurance Company and Oklahoma Surety Corporation ("Oklahoma Surety"). Only Oklahoma Surety Corporation has sold insurance in Louisiana. Both Mid-Continent Assurance and Oklahoma Surety are headquartered in Tulsa Oklahoma. Mid-Continent and Oklahoma Surety share accounting systems. For each of the answers below MCC includes Oklahoma Surety.

Despite this response Centerline still seeks to obtain additional information from MCC regarding its parent. The only relevant discovery directed to MCC is discovery that shows that MCC's parent corporation so dominates MCC that the two cannot be considered separate and distinct entities. This information includes: (1) whether the parent owns 100% of the subsidiaries stock; (2) whether the two corporations maintain separate headquarters; (3) whether the parent and subsidiary share common officers and directors; (4) whether corporate formalities are observed; (5) whether separate accounting systems are maintained; (6) whether the parent exercises complete authority over the subsidiary's general policy; and (7) whether the parent exercises complete authority over daily operations, including research and development, marketing and supply of its subsidiary. *DP Solutions v. Rollins*, 24 Fed. Appx. 150 (5th Cir. 2002).

---

[1] MCC adapts its Response to Pate and the PSC's Motion to Compel and incorporates that Response here.

Even the cases cited by Centerline do not support the discovery they now seek. For example, in *Hargrave v. Fibreboard Corp.*, 72 F.2d 1154 (5th Cir. 1983) the court observed that it is only "where is a subsidiary does not maintain independence in day-to-day operations, a court may use the parent's contacts to obtain jurisdiction over the subsidiary, or *vise versa*." *Id.* at 723. The *Hargrave* court relied on *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925), which held that "so long as the parent and subsidiary maintain separate and distinct corporate offices, the presence of one in a foreign state may not be attributed to the other." *Id.* at 1160. The *Hargrave* court went on to note that even if 100% of the stock is owned by the parent and there is some commonality of officers and directors, that these factors alone are not sufficient to establish an *alter ego* relationship. Rather, what is required is proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. *Id.* Accordingly discovery that addresses control over the internal business affairs of MCC by its parent may be relevant. MCC has answered those questions and produced such relevant documents to the extent they were requested.

The only information relevant to MCC's subsidiaries is those subsidiaries that sell insurance in Louisiana. To the extent the interrogatories sought information about the one subsidiary that sold insurance in Louisiana that information was provided. (See Response to Interrogatory 1). Any additional discovery on these subjects is nothing more than harassing. Centerline's Motion to Compel should be denied.

> **B.    Documents And Information Related To Person(s) Who Sold Mid-Continent's Insurance Policies In Louisiana And The Manner In Which They Sold Said Policies**

MCC has already stated that's its independent or retail agents are not located in Louisiana Accordingly their exact location or name is not relevant and certainly confidential since many of

2

MCC's competitors are defendants in this action. Centerline has not demonstrated a need to know the identity of these agents in order to respond to the Motion to Dismiss as MCC has disclosed all of its business activity which is conducted through these agents in Mr. Coon's affidavit and its answers to interrogatories. Moreover since MCC's independent agent's are not located in Louisiana and it is MCC's jurisdiction and not its independent agents which is at issue, the information Centerline continues to seek from MCC is simply not relevant. *Mykhaylov*, 2004 WL 2472480 at *1.

To the extent Centerline seeks documents of independent agents from MCC, MCC cannot be forced to provide those documents since they are not in MCC's possession, custody or control. *Monroe's Estate v. Bottle Rock Power Corp.*, 2004 WL 737463 at *10 (E.D.La.2004) (plaintiff's bear the burden to show that MCC has control over the materials it seeks, and the nature of the relationship between the party and non-party is the key"); and *Goh v. Baldor Electric Co.*, 1999 WL 20943 at *2 (N.D. Tex 1999) (defendant not required to produce documents not in its possession or control where entity possessing the documents was not "under [its] common control").

C.  **Documents And Information Related To Other Lawsuits In Louisiana In Which Mid-Continent Has Alleged That It Is Authorized To Do Business In Louisiana**

Centerline seeks the names of cases in which MCC has alleged that it is authorized to do business in Florida. This request does not seek relevant information since being authorized to do business, without more is insufficient to establish personal jurisdiction. *Wenche Siemer v. Learjet Acquisition, Corp.*, 966 F.2d 179, 181 (5th Cir. 1992) (mere appointment of an agent to do business without more does not establish personal jurisdiction) and *Felch v. Transportes Lar-*

3

*Mex SA De CV*, 92 F.3d 320, 328 (5th Cir. 1996) (it is only the actual conduct of business that is relevant).

In addition, MCC does not maintain records that are readily searchable for this information. As set forth in its discovery responses it would take literally thousands of hours to review all of its claim to try and even answer this question or provide a person to testify on this topic. *Conboy v. Edward D. Jones & Co.*, L.P., 140 Fed. Appx. 510, 516 (Tex. 2005) (No abuse of discretion to limit discovery which is "exceedingly burdensome"); *Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441 (5th Cir. 1979) (denying discovery where the requests were unduly burdensome).

### D. Marketing Plans Addressing Louisiana

Centerline also seeks documents and a witness to testify about MCC's marketing plans addressing Louisiana. In other words this request does not seek documents or testimony about MCC's past activities in Louisiana, but rather what it may do in the future. Centerline fails to cite one case to establish that what a company may do in the future is sufficient to establish jurisdiction over it now. MCC has responded to the only relevant inquiry—its past marketing activities in Louisiana. There were none. This request, which only seeks testimony and documents about future marketing activities, therefore does not seek relevant information and Centerline's Motion to Compel should be denied. *Paolino v. Argyll Equities, L.L.C.* 401 F.Supp. 2d 712, 720 (W.D. Tex. 2005) (only contacts for a reasonable number of years up to the time suit is filed is relevant, quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).

### E. Insurance Policies Referencing Louisiana

MCC has already produced information about the number and type of policies it sold in Louisiana since 2005. The request for actual policies, other than the policies that were actually sold to Louisiana insureds not only seeks confidential information disclosing the identity of those insureds, but irrelevant information as well. As Centerline knows, the MCC policies issued to Centerline (a Florida Corporation) and MCC's named insured under which Centerline claims it is an additional insured (also Florida corporations) all reference Louisiana in an endorsement notifying Centerline and MCC's named insureds that their construction activities in Louisiana would not be covered. Obviously the request which seeks the disclosure of and testimony about any policy that references Louisiana is overbroad as MCC issued many policies in Florida and other states that contain similar language referencing Louisiana. Moreover, since MCC has already disclosed the number and type of policies it sold in Louisiana, the additional discovery Centerline seeks will not add any significant facts and would only have been expensive and burdensome for MCC to obtain. *Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441 (5th Cir. 1979). Accordingly Centerline's Motion to Compel should be denied.

### Conclusion

For the forgoing reasons Mid-Continent Casualty Company respectively requests this Court to deny Centerline's Motion to Compel.

Dated: August 30, 2010.

5

Respectfully submitted:

LARZELERE PICOU WELLS SIMPSON LONERO, LLC
Two Lakeway Center – Suite 1100
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: (504) 834-6500
Facsimile: (504) 834-6565


BY: /s/ Lee M. Peacocke
**MORGAN J. WELLS, JR. (La. No. 18499)**
mwells@lpwsl.com
**LEE M. PEACOCKE (La. No. 18374)**
lpeacocke@lpwsl.com
**AND**
**HINSHAW & CULBERTSON LLP**
**RONALD L. KAMMER, T.A.**
(Fla. Bar No. 360859)
rkammer@hinshawlaw.com
**PEDRO E. HERNANDEZ**
(Fla. Bar No. 30365)
phernandez@hinshawlaw.com
9155 S. Dadeland Boulevard – Suite 1600
Miami, Florida 33156
Telephone: (305) 428-5100
Facsimile: (305) 577-1063
**ATTORNEYS FOR DEFENDANT, MID-CONTINENT CASUALTY COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Opposition to Centerline Homes Construction Inc., Centerline Homes at Georgetown, LLC, Centerline Homes, Inc. and Completed Communities II, LLC Motion to Compel has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail, or by hand delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice electronic filing in accordance with the procedures established in MDL 2047, on this 30th day of August, 2010.

/s/ Lee M. Peacocke
LEE M. PEACOCKE