UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * MDL No. 2:09-md-02047 * * * |
| | * JUDGE FALLON |
| **This document relates to:** | * * |
| ROBERT C. PATE, as Trustee for the Chinese Drywall Trust v. AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, ET AL (**2:09-cv-07791**) (E.D. La.) | * * MAGISTRATE WILKINSON * * * * * |

*********************************************

### OWNERS INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE AND <u>ROBERT C. PATE'S JOINT MOTION TO COMPEL</u>

**May it Please the Court:**

In accordance with this Court's Scheduling Orders of July 1, 2010 (Rec. Doc. 4301) and August 5, 2010 (Rec. Doc. 4873) OWNERS INSURANCE COMPANY ("Owners") hereby submits the present Opposition Memorandum to Plaintiffs' Steering Committee and Plaintiff Robert C. Pate's ("PSC/Pate") Motion to Compel Discovery.

**I.   BACKGROUND**

On December 23, 2009, Pate, in his alleged capacity as Trustee for the WCI Communities, Inc. Chapter 11 bankruptcy Chinese Drywall Trust, instituted this action against various insurer defendants. Pate originally filed suit against Auto-Owners Insurance Company ("Auto-Owners") as the alleged insurer of Hinkle Drywall, LLC, a

Florida corporation. (Complaint, ¶45; Rec. Doc. No. 1 filed in underlying Case No. 09-7791).

On February 24, 2010, Auto-Owners filed a Rule 12(b)(2) and 12(b)(3) Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Rec. Doc. 1321). The Motion was originally set for hearing March 24, 2010. In its Motion to Dismiss, Auto-Owners attached an affidavit from Scott Norris, who testified to the following: Auto-Owners is not licensed to write policies of insurance in Louisiana; Auto-Owners does not write policies of insurance in Louisiana; Auto-Owners does not maintain offices in Louisiana; Auto-Owners does not have employees in Louisiana; Auto-Owners does not solicit business from Louisiana residents; Auto-Owners does not advertise for business on any local radio or television outlet or in any publications in Louisiana; Auto-Owners does not collect premiums from Louisiana residents; and Auto-Owners has not designated a registered agent for service of process within the State of Louisiana.[1]

Pate then filed a First Amended Complaint on March 15, 2010 which replaced Auto-Owners with Owners Insurance Company ("Owners") as the alleged insurer of Hinkle Drywall, LLC. (Complaint, ¶50; Rec. Doc. No. 1732). The First Amended Complaint does not allege any facts to establish that Owners is subject to personal jurisdiction in Louisiana. Likewise, Owners filed its Rule 12(b)(2) and 12(b)(3) Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction and Improper Venue. (Rec. Doc. 3302). Owners also attached a nearly identical affidavit from Scott

---

[1] *See* Affidavit of Scott Norris dated February 23, 2010 on behalf of Auto-Owners, attached hereto as Exhibit A.

Norris, in which Mr. Norris testified on behalf of Owners as he did for Auto-Owners as discussed *supra*.[2]  Owners' Motion to Dismiss is now set for hearing November 3, 2010.

After the Insurer Motions were pending for nearly five (5) months, the PSC, in addition to Pate, propounded twenty-nine (29) Interrogatories, thirty-one (31) Requests for Production of Documents and forty-seven (47) topics for the notice of a corporate deposition.[3]  Further, this Court ordered that the "non-stipulating moving insurer shall provide responses and/or objections to any **jurisdictional** discovery propounded by the PSC or any other party by August 16, 2010." (August 5, 2010 Order, ¶3; Rec. Doc. 4873)(emphasis added).  However, the PSC/Pate's written discovery requests were not limited to jurisdictional issues and in general were overly broad, not specific to Owners and unduly burdensome.  Counsel for Owners (as well as counsel for other CGL insurers) contacted counsel for the PSC and Pate to discuss the just filed discovery in an attempt to resolve certain discovery issues and agreed to further postpone the Motions to Dismiss for two months to provide PSC/Pate with the information they claim to need to respond to the motions.  Each of these calls yielded some results.  For example, the time period of ten years initially called for in the written discovery was reduced in scope, Interrogatory No. 23 was eliminated and counsel for Pate clarified certain undefined terms, thus avoiding objections which allowed Owners to provide answers to those questions.

In addition to Owners' general and specific objections, Owners provided detailed responses and produced relevant and responsive documents to the requests on August 12, 2010, four (4) days before the Court-imposed deadline.[4]  This Court also ordered the PSC to "provide topics for Notices of any corporate representative depositions they will seek

---

[2] *See* Affidavit of Scott Norris dated May 24, 2010 on behalf of Owners, attached hereto as Exhibit B.
[3] *See* Exhibits A and B to PSC/Pate's Motion to Compel. (Rec. Doc. 5293).
[4] *See* Exhibit K to PSC and Pate's Motion to Compel.

3

to complete **jurisdictional** discovery." (August 5, 2010 Order, ¶4; Rec. Doc. 4873)(emphasis added). Owners provided its responses and objections to topics for the notice of deposition on August 16, 2010.[5] Similar to the Interrogatories and Requests for Production of Documents, many topics for the notice of deposition are simply outside the scope of jurisdictional discovery and Owners objected to those topics appropriately. Despite Owners' objections, Owners agreed to make a witness available for many topics of inquiry.[6] In accordance with this Court's Order, Owners also provided three (3) dates for Owners' witness to be deposed in September 2010 in New Orleans, Louisiana.[7]

The issue presently before the Court is whether Owners' responses to PSC/Pate's written discovery and Owners' responses to topics for notice of deposition fully comply with the general discovery rules and satisfy the narrow jurisdictional issues as ordered by this Court. Owners submits that its responses to the Interrogatories, Requests for Production of Documents and topics for the notice of deposition fulfill the general discovery obligations regarding limited jurisdictional discovery.[8] For the reasons set forth more fully below, granting the PSC/Pate's Motion to Compel would be unduly burdensome, onerous and extremely time-consuming for Owners. Therefore, Owners respectfully requests that the Court deny PSC/Pate's Motion to Compel.

---

[5] *See* Owners' Objections to PSC/Pate's Schedule of Topics for 30(b)(6) Deposition Notice Concerning Jurisdiction and Venue, attached hereto as Exhibit C.
[6] *See id.*
[7] *See id.*
[8] For further clarification, Owners attaches hereto the unsigned affidavit of Auto-Owners Senior Attorney, Kathleen Lopilato, as Exhibit D. Owners will supplement this Opposition Memorandum with a signed affidavit.

## II.     LAW AND ARGUMENT

Owners does not dispute that it is within the trial court's discretion to allow jurisdictional discovery for the purpose of determining whether a defendant has the requisite minimum contacts for personal jurisdiction to exist in appropriate cases. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  However, it is not an absolute right as argued by plaintiffs and such discovery should not be permitted when the discovery would serve no purpose because the lack of personal jurisdiction is clear. *Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982).  Owners contends that a district court may properly refuse or limit jurisdictional discovery if the plaintiff has not made a sufficient showing that there may be a basis for exercise of jurisdiction, or if the proposed discovery seems unlikely to shed light on the jurisdictional question. *Fielding v. Hubert Burda Media., Inc.*, 415 F.3d 419 (5th Cir. 2005); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390 (4th Cir. 2003).  At a minimum, plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted. *Cent. States, Southeast and Southwest Areas Pension Fund v. Reimer Exp. World Corp.*, 230 F.3d 934 (7th Cir. 2000), cert. denied, 532 U.S. 943 (2001).

Indeed, the Fifth Circuit has stated that the "scope of permissible discovery is limited by the requirement of relevance, although relevance is broadly defined in the context of discovery." *Wyatt*, 686 at 276.  The Court further stated: "It is not error to deny discovery when there is no issue of material fact." *Id*.  In the *Wyatt* case, the plaintiff acknowledged that he did not make a prima facie case on the question of personal jurisdiction, but argued that discovery might have produced the necessary prima

5

facie evidence. *Id*. The Court held that the trial court did not abuse its discretion is denying discovery on questions of personal jurisdiction because the discovery sought could not have added any significant facts. *Id*. When the lack of personal jurisdiction is clear, discovery serves no purpose and should not be permitted. *Paolino v. Argyll Equities, L.L.C.*, 401 F.Supp.2d 712, 722 (W.D. Texas 2005)(holding that is was clear from an affidavit that the discovery sought would not demonstrate sufficient minimum contacts to support jurisdiction).

The sole basis for personal jurisdiction over Owners hinges upon whether it has "continuous, systematic and substantial contacts with Louisiana". *Turan v. Universal Plan Inv. Ltd.* 70 F. Supp. 2d 671, 674 (E.D. La. 1999). Factors the Court may consider to determine whether Owners' contacts with Louisiana are continuous, systematic and substantial are: (1) does the defendant directly market or promote business in Louisiana; (2) does the defendant have any tangible property in Louisiana such as bank accounts or real property; (3) does the defendant maintain an office of other place of business in Louisiana; and (4) the amount of business the defendant does in Louisiana. *DNH L.L.C. v. In-N-Out Burgers,* 381 F. Supp. 2d 559, 565 (E.D. La. 2005). These are the relevant inquiries and these are the questions Owners answered.

In the present case, Owners testified via Scott Norris' factual and sworn affidavit that Owners is not licensed to write policies of insurance in Louisiana; Owners does not write policies of insurance in Louisiana; Owners does not maintain offices in Louisiana; Owners does not have employees in Louisiana; Owners does not solicit business from Louisiana residents; Owners does not advertise for business on any local radio or television outlet or in any publications in Louisiana; Owners does not collect premiums

6

from Louisiana residents; and Owners has not designated a registered agent for service of process within the State of Louisiana.[9] While Owners acknowledges that the Court ordered the insurers to respond or object to PSC/Pate's discovery responses, it is Owners' position that twenty-nine (29) Interrogatories, thirty-one (31) Requests for Production of Documents and forty-seven (47) topics for the notice of deposition are overly broad and not intended to gather facts limited to personal jurisdiction especially when PSC/Pate have not established a colorable or prima facie showing of personal jurisdiction. *Cent. States, Southeast and Southwest Areas Pension Fund*, 334 F.3d at 390.

PSC/Pate have not made a sufficient showing that there may be a basis for personal jurisdiction or that the numerous topics in both the written discovery and topics for notice of deposition would shed light on the jurisdictional question. *Fielding*, 415 F.3d at 419. This information is contained in both Auto-Owners and Owners' affidavits attached to the respective Motions to Dismiss, which PSC/Pate have had for over six (6) months.

In addition, the information sought by PSC/Pate is simply not enough to confer personal jurisdiction. For example, PSC/Pate request information related to claims Owners has paid to Louisiana residents or entities.[10] The Fifth Circuit recently confirmed this Court's ruling that "defendants' intermittent payments to Louisiana over the course of more than three years were insufficient to establish "continuous and systematic" contact with the forum state. *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado*, 2010 WL 3156773 (5th Cir. 2010). As that case applies here,

---

[9] Although the discovery responses are filed on behalf of Owners only because Auto-Owners has been dismissed from the litigation, the substance of the affidavit is also true for Auto-Owners, as evidenced by the affidavit of Owners Senior Attorney, Kathleen Lopilato, Exhibit D.

[10] *See* Interrogatory No. 13, Exhibit A to PSC and Pate's Motion to Compel.

Owners' claims paid to Louisiana residents or entities is wholly irrelevant as it would not establish a prima facie case of jurisdiction.

Overly-broad discovery requests which amount to nothing more than mere "fishing expeditions" are not tolerated. *Strait v. Mehlenbacher*, 526 F. Supp. 581, 584 (W.D. N.Y. 1981), *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 432 (E.D. Mich. 1979) and *Murphy v. Cooper Tire & Rubber Co.*, 2008 WL 5273548, *6 (N.D. Fla. Dec. 18, 2008) (finding overly broad and unduly burdensome a request for the production of documents regarding steel-belted tires of nearly every size, every type, and every model manufactured at Cooper-owned plants during a fifteen-year period). As one federal court explained, "[t]he request in this instance represents not merely a 'fishing expedition,' but . . . an effort to 'drain the pond and collect the fish from the bottom.'" *Amcast Industrial Corp. v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) (quoting *In re IBM Peripheral EDP Devices Antitrust Litigation*, 77 F.R.D. 39, 41-42 (N.D. Cal. 1977)).

The fact that the Plaintiffs' written discovery and corporate representative deposition topics are a fishing expedition not designed to lead to relevant, material or probative information is clearly illustrated by the following federal cases rendered in the Fifth Circuit, where the Fifth Circuit Court of Appeals and various U.S. District Courts have refused to find that personal jurisdiction existed as to a defendant. In *Mink v. AAA Dev., LLC.*, the Fifth Circuit held that a corporate defendant's maintenance of an internet website accessible to Texas consumers did not support the exercise of personal jurisdiction over the defendants in Texas. 190 F.3d 333 (5th Cir. 1999). In *Dalton v. R&W Marine, Inc.*, the Fifth Circuit held that neither the subsidiary nor the parent corporation were subject to general jurisdiction even when the parent corporation was an

active litigant in Louisiana, allowing itself to be sued when named as a co-defendant with a subsidiary, and even though it had prosecuted property damage disputes in the State of Louisiana, 897 F.2d 1359 (5th Cir. 1990). In *Bearry v. Beech Aircraft*, the Fifth Circuit held that acts of a foreign manufacturer in maintaining a distribution network in the forum, in advertising its products in the forum, and even in selling substantial amount of its products in Texas do not constitute continuous and systematic contacts with Texas sufficient to support the court's exercise of personal jurisdiction, where the company had never been qualified to do business in the state, had never owned property in the state, had no facilities in the state, and had no office or agent in the state, even though the corporation engaged in a nationwide advertising program and made no attempt to limit the states in which its product was marketed, 818 F.2d 370 (5th Cir. 1987).

In *King v. Hawgwild Air, L.L.C.*, the district court found that sporadic contracts with the forum state's residents were not sufficient to establish personal jurisdiction over the defendant, 2008 WL 2620099 (M.D. Tex. 2008)). In *Paolino v. Argyll Equities, L.L.C.*, the court found an exchange of communications in developing a purported contract was insufficient in and of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's law so as to compel personal jurisdiction, 401 F. Supp. 2d 712 (W.D. Tex. 2005). In *DNH.*, 381 F. Supp. 2d at 559, the U.S. District Court of the Eastern District of Louisiana held that neither an operator's cease and desist letters nor its negotiation of a settlement agreement constituted sufficient minimum contacts with the forum to warrant the exercise of specific personal jurisdiction and even the operator's registration to do business in Louisiana, without more, was insufficient to warrant the exercise of general personal jurisdiction. In *J.M. Huber Corp.*

9

*v. Pan American Express, Inc.*, the court found that California Warehouse and Transportation Company's contacts with Texas were inadequate to support personal jurisdiction in a claim arising out of alleged improper loading, blocking, and bracing of goods loaded into the truck the carrier had then driven to Texas, when all of the company's activities took place in California and merely knowing that the carrier would be transporting the goods into Texas on the way to Mexico, or the company's directing the shipping on the billing of lading in accordance with its own directions, did not demonstrate that the company personally availed itself of the benefits of the forum state, 118 F. Supp. 2d 764 (S.D. Tex. 2000).

      The analysis and reasoning set forth in the above-cited cases clearly proves that even if PSC/Pate were allowed to conduct discovery on the matters that Owners has objected, the results of such discovery could not in any conceivable way produce evidence that would prove that this Court has personal jurisdiction over Owners. The affidavits filed on behalf of Owners and Auto-Owners establish that any relationship between the companies has no probative value as to jurisdiction because neither company conducts business or sells its insurance products in the State of Louisiana. It has also been shown that Auto-Owners and Owners do not write any type of insurance business in the state and do not have bank accounts, do not own property, do not have claims offices, and do not have any type of insurance agents, or even advertise that are in the State of Louisiana.[11]  These facts are undisputed and PSC/Pate have not produced even a scintilla of evidence that shows that there is a factual dispute presented to the Court. Thus, the information that PSC/Pate seek to obtain through a motion to compel can only be deemed to be an attempt to cause undue burden and expense to Owners.

---

[11] *See* Affidavits of Scott Norris, Exhibits A and B.

10

In addition to not conferring personal jurisdiction, the information sought by PSC/Pate is overly broad and unduly burdensome. For instance, Interrogatory No. 10 states "During the past ten years, have You been a party to any judicial or administrative proceeding in Louisiana? If so, state the name of the proceeding, the index or other identifying number of the proceeding, and describe of the nature of the proceeding" and Interrogatory No. 11 states "Identify all the lawsuits or administrative proceedings in which You have been involved during the past 10 years in which the court applied Louisiana law." Counsel for PSC/Pate and counsel for Owners agreed to shorten the ten year timeframe. Notwithstanding that agreement, it is impossible for Owners to identify this information. Senior Attorney for Owners testifies that Interrogatory Nos. 10, 11 seek:

> information that cannot be identified by conducting searches of [Owners'] computer system in the manner that the information has been requested. [Owners does] not have the ability to identify claims where there was litigation that specifically involved Auto-Owners or Owners Insurance Company as a party that was sued without a manual review of the claim file. [Owners] also [does] not have a means to distinguish claims that involved litigation involving Auto-Owners and Owners Insurance Company as opposed to the other companies operated under the Auto-Owners Group without a manual review of the claim file.[12]

By way of another example, PSC/Pate seek information related to any lawsuit Owners has been involved in. When left up to interpretation, "been involved in" could mean each and every case in which Owners provided a defense for an insured in a case in which Owners was not a named defendant under the direct action statute. Without manually reviewing each of the closed claims files, there is no way for Owners to access the

---

[12] *See* Affidavit of Kathleen Lopilato, ¶8, Exhibit D.

11

information related to a lawsuit or claim by state.[13] Owners does not maintain a computer database that stores the information sought in Interrogatory Nos. 10, 11.[14] Owners retains their closed claims files in a 117,000 square foot warehouse consisting of approximately 36,432 shelves of closed files and holding more than 4 million closed files.[15] It would be onerous and unduly burdensome for Owners to manually review each of the 4 million closed files.

In their Memorandum in Support of Motion to Compel, PSC/Pate specifically address alleged deficiencies with Owners' written discovery responses and Owners replies to each as follows:

| DISCOVERY REQUEST | REASON WHY OWNERS SHOULD NOT BE COMPELLED TO PROVIDE FURTHER RESPONSES IN ADDITION TO WHAT IT HAS ALREADY PROVIDED |
|---|---|
| Interr. No. 1 and ALL | PSC/Pate effectively dismissed Auto-Owners from this litigation with the filing of the First Amended Petition, which replaced Auto-Owners with Owners as the alleged insurer of Hinkle Drywall, LLC. Therefore, Owners filed the discovery responses on its own behalf and not on behalf of non-party Auto-Owners. Furthermore, Owners Senior Attorney testifies that with the exception of Interrogatory No. 24 (related to state of incorporation), each of Owners' responses would be the exact same answer if on behalf of Owners' parent corporation, Auto-Owners.[16] |
| Interr. Nos. 10, 11 and Request for Production Nos. 4, 5 | In response to PSC/Pate's alleged deficiency that Owners should be compelled to identify and produce documents related to each and every instance of Owners' status as a party to any judicial or administrative proceeding in Louisiana (Interr. No. 10, Request for Production No. 4); to identify and produce documents related to any lawsuit or administrative proceeding in which Owners has been involved in which the court applied Louisiana law (Interr. No. 11, Request for Production No. 4); and to produce all court orders issued in any action in Louisiana…wherein the court decided a motion [Owners] made to dismiss for lack of personal jurisdiction or improper venue and all briefs submitted by the parties in support of, or in opposition to, such a motion |

---

[13] *See id.* at ¶10.
[14] *See id.*
[15] *See id.* at ¶15.
[16] *See id.* at ¶4.

|  | (Request for Production No. 5), Owners contends that these requests are overly broad and unduly burdensome.[17]

Furthermore, this information is equally available to PSC/Pate as this information is a matter of public record.  PSC/Pate are equally capable of visiting all Louisiana Judicial District Courts in order to conduct a public records search, and PSC/Pate are also equally capable of conducting a search of the various Pacer websites for federal lawsuits.

Finally, Owners provided a response to Interr. No. 10 and Owners can affirmatively state that it has not been involved in any claim or lawsuit involving Louisiana properties, policies or businesses because Owners has no Louisiana properties, policies or businesses. |
|---|---|
| Interr. No. 13 | In response to PSC/Pate's alleged deficiency that Owners should be compelled to identify and produce documents related to claims Owners' has paid to Louisiana residents or entities, Owners contends that there is no possible way for Owners to identify claims paid to Louisiana residents or entities.  For instance, if Owners insured an Alabama resident who subsequently was involved in an accident or an incident with a Louisiana domiciliary and Owners paid a claim on the Alabama policy to that Louisiana domiciliary, there is no conceivable way for Owners to determine the state residence or domicile for that claimant or in which state that claim was paid. |
| Interr. No. 14 | In response to PSC/Pate's alleged deficiency that Owners should be compelled to identify and produce documents related to Owners' witnesses relevant to this matter who reside in Louisiana, Owners responded affirmatively that "it is impossible to determine 'all witnesses relevant to this case reside or work in Louisiana.'"  Owners objects to this request on the grounds that it is premature, overly broad and unduly burdensome.  Owners should not be compelled to identify all potentially relevant witnesses at this early stage in the litigation.  Likewise, Owners cannot be expected to not only identify all potential witnesses, but also their domiciliary state.

Furthermore, identification of any witnesses at this stage in the litigation is protected by the attorney work product privilege as identifying any relevant witnesses is an operation of the attorneys' mental impressions and thought processes. |
| Interr. No. 18 | In response to PSC/Pate's alleged deficiency that Owners should be compelled to identify and produce documents related to Owners' employment of any Louisiana domiciliaries, Owners responded |

---

[17] *See id.* at ¶8.

13

| | |
|---|---|
| | affirmatively that "[it] does not have any employees who work for Owners in Louisiana…[and] it is impossible to determine all employees relevant to this case who may reside in Louisiana, but work elsewhere." Similar to PSC/Pate's request for identity and location of potential witnesses, it is unduly burdensome to request Owners to search each and every human resources file for each and every employee that may permanently or temporary reside in the state of Louisiana but work elsewhere.<br><br>Further, Owners Senior Attorney testifies that "With respect to Interrogatory No. 18, we employ over 3,600 employees.  We do not have any employees known to be Louisiana residents and we do not issue any Louisiana payroll.  We do not employ anyone in Louisiana at any Louisiana work site.  There is no practical way for us to determine if any employees own property or have any residence in the state of Louisiana."[18] |
| Requests for Production Nos. 18-22 | In response to PSC/Pate's alleged deficiency that Owners should be compelled to produce documents related to Owners' board of directors, corporate officers, organization structure; documents related to distribution or transfer of cash or assets between [Owners] and a related entity; documents related to inter-company loans, advances of funds or cost sharing between [Owners] and related entity; documents related to guarantees or assurances by [Owners] to financial institutions on behalf of any related entity; and/or documents related to the preparation and approval of [Owners] of annual and long-term business plans, marketing plans, and budgets for any related entity, Owners contends that it has provided relevant information in its affidavit attached hereto.[19]<br><br>Furthermore, Owners submitted its Federal Rule 7.1 certificate in conjunction with the Court ordered Insurer Profile Form on June 7, 2010.  The information contained therein should satisfy this request as any public financial information is equally available to PSC/Pate.<br><br>Furthermore, neither Auto-Owners nor Owners' relationship to any parent company is irrelevant as Auto-Owners Senior Attorney Scott Norris testified in his sworn affidavit that Owners does not do business in Louisiana.[20]  Therefore, it not reasonably calculated to lead the discovery of admissible evidence as to minimum contacts with the State of Louisiana. |
| Requests for | In response to PSC/Pate's alleged deficiency that Owners should be compelled to produce documents because "in prior answers, Owners |

---

[18] *See id.* at ¶17.
[19] *See id.* at ¶4.
[20] *See* Affidavits of Scott Norris, ¶¶3-5, 7, Exhibits A and B.

14

| Production Nos. 25-31 | stated 'Owners is not in possession of any responsive documents because no such Owners' document exists.' In responses 25-31, however, Owners has written: 'Owners is not in possession of any responsive documents.'"  Owners states that the choice of language is simply on behalf of counsel for Owners and that Owners did conduct a search of potentially responsive documents related to Requests for Production Nos. 25-31 and, indeed, Owners is not in possession of any responsive documents because no such Owners' document exists. |
|---|---|

In response to PSC/Pate's issue with Owners' responses to Interrogatory Nos. 10, 11 and Requests for Production Nos. 4, 5, even if Owners has been sued in Louisiana, this does not mean that it has continuous, systematic and substantial contacts with Louisiana and PSC/Pate offer no authority to the contrary.  *Dalton*, 897 F.2d at 1363 n.4 (finding that plaintiff's contention that parent holding company reasonably should anticipate "being hailed into court in Louisiana" because it is has been an active litigant in Louisiana did not affect court's opinion that the parent company had not purposefully availed itself of contacts of a quality or nature that would support subjecting it to jurisdiction in Louisiana).  Owners testifies under oath that it does not maintain records that are readily searchable for information related to judicial or administrative proceedings in Louisiana and that it would take literally thousands of hours to review all of its claim files at great expense to try and even answer this question.[21]  *Conboy v. Edward D. Jones & Co.*, L.P., 140 Fed. Appx. 510, 516 (Tex. 2005)(No abuse of discretion to limit discovery which is "exceedingly burdensome"); *Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441 (5th Cir. 1979)(denying discovery where the requests were unduly burdensome).

---

[21] *See* Affidavit of Kathleen Lopilato, ¶¶8-10, 13-16, Exhibit D.

15

PSC/Pate take issue with Owners' responses insofar as they are not on behalf of Owners' parent company, Auto-Owners. This issue should be resolved by way of Owners' testimony that that "all answers would be the same for Auto-Owners Insurance Company as those that were provided for Owners Insurance Company with the exception of Interrogatory No. 24. Auto-Owners Insurance Company is incorporated in Michigan."[22] Therefore, PSC/Pate's motion to compel this information should be denied as well.

PSC/Pate also move to compel information related to Owners' board of directors, corporate officers, organization structure; documents related to distribution or transfer of cash or assets between [Owners] and a related entity; documents related to inter-company loans, advances of funds or cost sharing between [Owners] and related entity; documents related to guarantees or assurances by [Owners] to financial institutions on behalf of any related entity; and/or documents related to the preparation and approval of [Owners] of annual and long-term business plans, marketing plans, and budgets for any related entity.[23]

The only relevant discovery directed to Owners is discovery that shows that Owners' parent corporation so dominates Owners that the two cannot be considered separate and distinct entities. This information includes: (1) whether the parent owns 100% of the subsidiaries stock; (2) whether the two corporations maintain separate headquarters; (3) whether the parent and subsidiary share common officers and directors; (4) whether corporate formalities are observed; (5) whether separate accounting systems are maintained; (6) whether the parent exercises complete authority over the subsidiary's

---

[22] *See id.* at ¶4.
[23] *See* Requests for Production Nos. 18-22, Exhibit B to PSC and Pate's Motion to Compel.

general policy; and (7) whether the parent exercises complete authority over daily operations, including research and development, marketing and supply of its subsidiary. *DP Solutions v. Rollins,* 24 Fed. Appx. 150 (5th Cir. 2002).

Requests for Production Nos. 19 through 22 do not seek relevant documents. As PSC/Pate concede, it is only under certain limited circumstances that the contacts of the parent can be used to establish personal jurisdiction over its subsidiary. The *DP Solutions* court listed the above seven factors which are relevant to the determination of whether a parent so dominates its subsidiary that a parent's contacts may be properly considered by a court to determine jurisdiction of the subsidiary. Request for Production No. 19 asks for the transfer of cash between Owners and its parent. That is not one of the seven factors listed in *DP Solutions.* Requests for Production Nos. 20 and 21 ask for inter-company loans, advances or sharing of funds and guarantees or financial assurances. None of these documents are one of the seven factors listed in *DP Solutions.* As these requests seek information that is not relevant, but also confidential, PSC/Pate's Motion to Compel should be denied.

Request for Production No. 22 relates to long term business plans. In other words this request does not seek documents about Owners' past activities in Louisiana, but rather what it may do in the future. The law is once again clear, and PSC/Pate do not cite any authority that establishes that what a company may do in the future is sufficient to establish jurisdiction over it now. An analogous situation is where a company is registered to do business in a state, but has taken no action after registering to actually conduct business. *Wenche Siemer v. Learjet Acquisition, Corp.*, 966 F.2d 179, 181 (5th Cir. 1992) (mere appointment of an agent to do business without more does not establish

personal jurisdiction); *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 328 (5th Cir. 1996)(it is only the actual conduct of business that is relevant). Therefore, this request should also be denied.

Furthermore, PSC/Pate accuse the non-stipulating CGL insurers, which includes Owners, of "continuously delay[ing] in providing the discovery necessary to respond to their motions to dismiss." (PSC/Pate Memorandum in Support of Motion to Compel, p. 9, ¶1). This is simply not the case insofar as Owners is concerned. In accordance with this Court's July 1, 2010 Order, Owners timely supplemented its Motion to Dismiss by providing PSC/Pate with a list of all related actions involving the policy at issue. While PSC/Pate provided lists of insurers they deemed to have provided deficient documents, Owners was never listed as having provided a deficient supplement. Further, Owners conducted its due diligence to obtain and confirm the requested information in order to respond to the written discovery. In fact, Owners provided its responses to PSC/Pate's Interrogatories and Requests for Production to PSC/Pate on August 12, 2010, four (4) days before the Court-imposed due date, in a good faith attempt to allow PSC/Pate additional time to review in order for counsel for PSC/Pate and counsel for Owners to "meet and confer" regarding any responses PSC/Pate determined to be deficient and to allow Owners additional time to cure those deficiencies in order to obviate the need for the present Motion to Compel.

PSC/Pate have not made the requisite showing that ordering Owners to produce the information PSC/Pate request would lead to the discovery of admissible evidence that would result in a prima facie showing of personal jurisdiction. PSC/Pate have had Owners' sworn testimony regarding lack of contacts in Louisiana for over six months and

have no evidence whatsoever to contradict the information contained therein. No additional discovery is going to lead to this evidence because it simply does not exist. Therefore, PSC/Pate's motion to compel should be denied.

## III.   CONCLUSION

For the foregoing reasons, Owners Insurance Company respectfully requests this Court to deny PSC and Pate's Motion to Compel.

Respectfully submitted:

**LEAKE & ANDERSSON LLP**

*/s/ Amanda W. Vonderhaar*

**JERRY L. SAPORITO, T.A.  (#11717)**
jsaporito@leakeandersson.com
**W. PAUL ANDERSSON (#2474)**
pandersson@leakeandersson.com
**AMANDA W. VONDERHAAR (#31350)**
avonderhaar@leakeandersson.com
1700 Energy Center
1100 Poydras Street
New Orleans, Louisiana 70163-1701
Telephone: (504) 585-7500
Fax: (504) 585-7775

**MORROW, ROMINE & PEARSON P.C.**

 */s/ Roger S. Morrow*

**ROGER S. MORROW** (pro hac vice)
rsmorrow@mrplaw.com
Post Office Box 4804
Montgomery, Alabama 36103-4804
Telephone: (334) 262-7707
Fax: (334) 262-7742

*Attorneys for Owners Insurance Company, Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **Memorandum of Law in Opposition to Plaintiffs' Steering Committee and Robert C. Pate's Joint Motion to Compel** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United states District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 30th day of August, 2010.

*/s/ Amanda W. Vonderhaar*

AMANDA W. VONDERHAAR