UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047<br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO<br>CASE NO. 2:09cv-07628 | |

_____/

TAYLOR MORRISON SERVICES, INC., a foreign corporation, and TAYLOR WOODROW COMMUNITIES AT VASARI, LLC, a Florida limited liability company,

    Defendants/Crossclaim Plaintiffs,

v.

KNAUF GIPS KG, a German corporation, KNAUF PLASTERBOARD (TIANJIN) CO., LTD., a Chinese limited liability corporation, BANNER SUPPLY CO., a Florida corporation, RESIDENTIAL DRYWALL, INC., a Florida corporation, NU WAY DRYWALL, LLC, a Florida limited liability company, FLORIDA STYLE SERVICES, INC., a Florida corporation,

Crossclaim Defendants,

COTHERN CONSTRUCTION COMPANY, a Florida corporation,
Third-Party Defendant,

_____/

1

**BANNER SUPPLY CO.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CROSS-CLAIM OF TAYLOR MORRISON SERVICES, INC. F/K/A MORRISON HOMES, INC. AND CROSS-CLAIM AND THIRD PARTY CLAIM OF TAYLOR WOODROW COMMUNITIES AT VASARI, L.L.C.**

COMES NOW Defendant, Banner Supply Co., a Florida Corporation ("Banner"), by and through the undersigned counsel, and submits this Memorandum of Law in Support of its Motion to Dismiss Cross-Claim of Taylor Morrison Services, Inc. f/k/a Morrison Homes, Inc. and Cross-Claim and Third Party Claim of Taylor Woodrow Communities at Vasari, L.L.C. (collectively referred to as "the Taylor Entities").  For the reasons set forth below, the Taylor Entities' claims against Banner fails to state a claim upon which relief may be granted and, therefore, must be dismissed with prejudice.

**STATEMENT OF FACTS**

On December 9, 2009, Sean and Beth Payton, individually and on behalf of all other similarly situated, filed an Omnibus Class Action Complaint asserting various causes of action against Banner and several other Defendants, including the Taylor Entities, for damages allegedly caused by allegedly defective drywall.  See Omnibus Class Action Complaint, filed December 9, 2009.  Subsequently, on May 7, 2010, the Taylor Entities filed their Cross-Claim of Taylor Morrison Services, Inc. f/k/a Morrison Homes, Inc. and Cross-Claim and Third Party Claim of Taylor Woodrow Communities at Vasari, L.L.C. (hereinafter referred to as "the Cross-Claim").  See Cross-Claim, filed May 7, 2010.  In their Cross-Claim, the Taylor Entities allege various theories of recovery against several Defendants, including Banner.  As against Banner, the Taylor Entities allege 1) breach of implied warranty of merchantability; 2) breach of implied warranty of fitness for a particular purpose; 3) strict liability; 4) common law indemnity; 5) equitable subrogation; and 6) contribution.  See id., Counts VII through XII.

2

In support of these claims, the Taylor Entities allege that they entered into subcontract agreements with certain "Installers" (who are also named in the Cross-Claim) for the installation of drywall in certain homes, including, but not limited to, some of the named Plaintiffs in the Omnibus Class Action. See id., ¶ 19. In performing their subcontracts, these Installers purchased drywall, either directly or indirectly, from various suppliers, including Banner. See id., ¶ 20. The Taylor Entities further allege that they received numerous complaints from homeowners who had purchased homes built by Taylor Entities and that, upon investigation, the Taylor Entities discovered that the cause of these complaints was a "latent defect" in the drywall installed in these homes. See id., ¶¶ 22-23. Additionally, the Taylor Entities allege that this allegedly defective drywall was provided and installed by the Installers, who had purchased the drywall from various sources, including Banner. See id., ¶ 24. According to the Taylor Entities, this allegedly defective drywall is "interacting with other conditions and elements, causing damage to other property within the Affected Homes, including, but not limited to, HVAC coils, certain electrical and plumbing components, and other affected materials and items, including personal property." Id., ¶ 25.

As shown below, several of the Taylor Entities' claims against Banner are merely "bare bones" claims that set forth only conclusory statements consisting of simply the legal elements of each claim. Such pleading fails to meet the requirements of the Rules of Civil Procedure and United States Supreme Court case law. That reason alone requires dismissal of several of the Taylor Entities' claims against Banner.

Furthermore, each and every one of the claims alleged by the Taylor Entities against Banner fail as a matter of law and must, therefore, be dismissed with prejudice because 1) the Taylor Entities clearly lack privity of contract with Banner and, therefore, have no recognizable

3

claim under Florida law for breach of implied warranty; 2) strict liability does not apply to structural improvements to real property under Florida law; and 3) because these substantive theories of recovery fail as a matter of law, the Taylor Entities cannot prove that Banner is liable and, therefore, they have no basis for indemnity, equitable subrogation, or contribution claims. For each of these reasons, which are more fully discussed below, the Taylor Entities' claims against Banner should be dismissed with prejudice.

## ARGUMENT AND CITATION OF AUTHORITIES

A.   STANDARD ON MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint is subject to dismissal if it fails to state a claim. In order to state a valid claim, a complaint must factually allege each element of the claim for which relief is sought. When allegations in a complaint are wholly conclusory and fail to set forth facts which, if proved, would warrant relief for the Plaintiff, dismissal is appropriate. See Am. Ass'n of People with Disabilities v. Smith, 227 F. Supp. 2d 1276, 1280 (M.D. Fla. 2002); see also Davidson v. State of Ga., 622 F.2d 895, 899 (5th Cir. 1980). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, — U.S. —. —, 129 S. Ct. 1937, 1949 (2009). Therefore, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In the instant case, as shown below, even if the allegations of the Taylor Entities' Cross-Claim are accepted as true for the purposes of this motion, the Taylor Entities' claims against Banner are clearly insufficient under Florida law and must, therefore, be dismissed with prejudice.

B. **THE TAYLOR ENTITIES FAIL TO STATE A CLAIM AGAINST BANNER UPON WHICH RELIEF MAY BE GRANTED.**

1. **Each Of The Taylor Entities' Implied Warranty Claims Fails As A Matter Of Law Due To Lack Of Privity.**

It is well-settled under Florida law that a party must be in privity of contract with a defendant in order to prevail in a claim for breach of warranty, whether express or implied. See, e.g. T.W.M. v. Am. Med. Sys., Inc., 886 F. Supp. 842 (N.D. Fla. 1995) (finding that recipient of allegedly defective product did not state a claim for breach of express or implied warranties absent any allegation that he purchased the product directly from the manufacturer or contracted with the manufacturer); Weiss v. Johansen, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005) ("[I]n order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant").  This is because "[a] warranty, whether express or implied, is fundamentally a contract.  A contract claim requires privity." Id. at 844 (citation omitted); accord Navahoe Circle, Inc. v. Development Concepts Corp., 373 So. 2d 689, 692 (Fla. 2d DCA 1979) (class action by condominium owners for negligence for a defective roof dismissed for lack of privity).

In the instant case, the Taylor Entities have not alleged that they are in privity of contract with Banner.  Indeed, they seem to acknowledge that there is no privity of contract by asserting that they are third party beneficiaries of the contracts between Banner and the Installers.  See Cross-Claim, ¶¶ 78, 88.  However, there is no support under Florida law for such allegation. F.S.A. 672.318 provides with regard to third party beneficiaries as follows:  "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his or her buyer, who is a guest in his or her home or who is an employee, servant or agent of his or her buyer if it is reasonable to expect that such person may use, consume or be affected by the

5

goods and who is injured in person by breach of the warranty." Comment 3 to this Section states "[t]his section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. **Beyond this, the section is neutral and is <u>not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain</u>**." (emphasis added).

This Court has addressed and dismissed implied warranty claims just like those attempted to be asserted here by the Taylor Entities against Banner.  See <u>In re Masonite Corp. Hardboard Siding Products Liability Litigation</u>, 21 F. Supp. 2d 593 (E.D. La. 1998).  In that case, a homebuilder purchased siding from supply stores and subcontractors, and when the siding proved to be defective, the homebuilder sought to recover against the siding manufacturer on various theories of recovery, including implied warranties.  This Court, interpreting Florida law, held that neither the homebuilder nor the homeowners were in privity with the manufacturer and, therefore, the implied warranty claims could not survive.  <u>Id.</u> at 601.  The Court reasoned as follows:

> Neither Lennar [the homebuilder] nor the homeowners were in privity of contract with Masonite. "A plaintiff who purchases a product," one court writes, "but does not buy it directly from the defendant, is not in privity with that defendant." *T.W.M. v American Medical Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995). . . . The extension of warranties to certain third-party beneficiaries is mandated in a limited way by Florida's Uniform Commercial Code. See Fla.Stat. 672.318. . . . Plaintiff's claims do not fall within the reach of this provision. *Cf. Barry v. Ivarson Inc.*, 249 So. 2d 44 (Fla. Dist. Ct. App. 1971) (declining to extend third-party beneficiary status beyond plain wording of statute). However, this statute does not restrict resort to the developing common law principles of beneficiary status. See Fla.Stat. 672.318 comment 3. And that is where this analysis must go. Third-party beneficiary status is a matter of contract interpretation; it extends only to those parties contemplated by the contract. *A.R. Moyer, Inc. v. Graham*, 285 So. 2d 397, 399 (Fla. 1973) ("Privity is a theoretical device of the common law that recognizes limitation of liability commensurate with compensation for contractual acceptance of risk."); *see also Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc.*, 609 So. 2d 1349, 1353 (Fla. Dist. Ct. App. 1992). The privity requirement is relaxed only if the purchasers were "intended and known

beneficiaries of the contract." *First Am. Title Ins. Co. v. First Title Service Co.*, 457 So. 2d 467, 471-73 (Fla. 1984). Contract beneficiaries must be "specifically identifiable" and accorded that status through the contractual mechanism. *See Sandarac*, 609 So. 2d at 1353.

With the possible exception of defendant's limited express warranty, **plaintiff and the homeowners cannot be considered third-party beneficiaries**. **Plaintiff essentially argues that it and the homeowners must be treated as third-party beneficiaries because it was foreseeable-indeed, inevitable-that the siding would be in the homeowners' possession after it is installed. Foreseeability, however, does not confer beneficiary status; otherwise, the contours of contractual relationships would disintegrate.** *See A.R. Moyer*, 285 So. 2d at 399; *Sandarac* at 1353.

The Court is not swayed by plaintiff's invocation of *Warren v. Monahan Beaches Jewelry Ctr., Inc.*, 548 So.2d 870 (Fla.Dist.Ct.App.1989) and *Crabtree v. Aetna Casualty & Surety Co.*, 438 So.2d 102 (Fla.Dist.Ct.App.1983). In *Warren*, the defendant jeweler knew that a (fake) diamond engagement ring was destined "specifically for" the plaintiff. *Warren*, 548 So.2d at 871. The defendant also agreed with plaintiff to replace the ring. The course of dealings before and after the sale established a clear intent to sell a specific ring for the benefit of a particular woman. *Id.* at 872; *see also Goodell v. K.T. Enter., Ltd.*, 394 So.2d 1087 (Fla.Dist.Ct.App.1981) (finding plaintiff was third-party beneficiary where defendant built conveyor system specifically for plaintiff's business, there were discussions between the parties regarding the product, and the contract referred to the plaintiff); *cf. Cedars*, 444 So.2d 1068 (finding privity where defendant "called upon" plaintiff and had shown samples of the product to plaintiff). In the case of Lennar Homes, **there is no allegation that defendant knew the siding ultimately would be used by this particular plaintiff and these homeowners**.

The *Crabtree* decision also does not support plaintiff's position. There, a surety performance bond was issued for the benefit of a building partnership and the tract's owners to secure the performance of the contractor. Unlike the situation in *Crabtree*, **defendant here has made no promises to plaintiff or any specifically identifiable homeowners,** with the exception of the limited express warranty which makes reference to the "homeowners."

Plaintiff draws attention to Masonite's advertising brochures, but plaintiff's receipt of advertising brochures does not compel a different conclusion. It is undisputed that the homeowners did not receive any of this advertising; thus there is no basis for finding a contractual relationship with them. As to plaintiff, the only suggestion of direct contact with defendant is the conclusory allegation in the complaint. The sworn deposition testimony of Lennar's vice president Sherman Kronick, however, concedes that there was no correspondence between the parties. Even if the Court credits his belated declaration-which incidentally contradicts his earlier testimony-Kronick only adds that he "received" defendant's

> brochures. Conspicuously, he does not state from whom he received these brochures, other than asserting that advertisements were viewed in trade journals and at trade events. He also does not state that those received were related to the Lakeview project. He provides no evidence that creates a material issue of fact on this record.
>
> **There is no suggestion that defendant solicited plaintiff's business for the Lakeview project**. Plaintiff does not even hint that it made any inquiries to which defendant responded. <u>**Other than generalized advertising, there is no indication that defendant directly encouraged plaintiff to use Masonite siding for this project, or for any other development.**</u> Even assuming defendant's advertising could somehow give rise to a warranty, <u>**there is no support for finding that the general advertising transforms this particular plaintiff into an intended third-party beneficiary because there was no direct contact between defendant and plaintiff regarding the Lakeview project.**</u> At best, one could argue for a statutory express warranty in favor of defendant's distributors and suppliers; but, absent privity, this warranty does not run in favor of plaintiff or the homeowners. *See* Fla.Stat. 672.313 . . .

Id. at 599-601 (emphasis added).

Similarly, in the instant case, there is absolutely no privity of contract between the Taylor Entities and Banner, and despite the Taylor Entities' conclusory allegations, they are clearly not third party beneficiaries of any contract between Banner and the Installers. Notably, the Taylor Entities fail to allege any link or connection between themselves and Banner. Rather, they clearly allege that it was the Installers who purchased drywall from Banner. <u>See</u> Cross-Claim, ¶ 20. The Taylor Entities do not allege that they, themselves, purchased anything from Banner. Instead, they make a futile attempt to allege third-party beneficiary status, which attempt is clearly thwarted by this Court's decision in <u>In re Masonite Corp.</u>

Here, as in <u>In re Masonite Corp.</u>, the Taylor Entities, which are homebuilders, seek to recover on implied warranty theories against an entity that supplied a product that went into homes built by the homebuilders. Here, just as the homebuilder in <u>In re Masonite Corp.</u> was not in privity of contract with Masonite because the homebuilder did not buy the siding directly from Masonite, the Taylor Entities are not in privity of contract with Banner because they did not

purchase the subject drywall directly from Banner. Further, just as the homebuilder's implied warranty claims against Masonite did not fall with the reach of F.S.A. 672.318, neither do the Taylor Entities' implied warranty claims do not fall within the reach of the plain language of F.S.A. 672.318.

Additionally, just as the homebuilder in In re Masonite was not a third party beneficiary of any contracts between Masonite and supply stores and subcontractors because the homebuilder was not specifically contemplated in such contracts, the Taylor Entities are not third party beneficiaries of any contract between the Installers and Banner because there are no facts alleged to support an allegation that the Taylor Entities were specifically contemplated in any contract between Banner and the Installers. Here, the Taylor Entities merely allege in a conclusory manner that "it was the clear and manifest intent of the Installers and Banner that the contracts were to primarily and directly benefit the Taylor Plaintiffs" and that "Banner had reason to know that the Installers were purchasing gypsum drywall for the particular purpose of being installed in homes being built by the Taylor Plaintiffs, including the Affected Homes, and that the Installers were relying on Banner's skill and judgment to select and furnish to the Installers gypsum drywall that was suitable for this particular purpose." Cross-Claim, ¶ 78, 88, 89. These allegations are mere conclusions. There are no facts alleged in the Complaint whatsoever to support these allegations. The Taylor Entities do not even attach a copy of any contract between Banner and the Installers to support any allegation regarding the intent of such contract.

Instead, the allegations made in this case by the Taylor Entities are clearly similar to those made by the homebuilder in In re Masonite Corp. Here, as in In re Masonite, the Taylor Entities essentially argue that they must be treated as third-party beneficiaries because it was

9

foreseeable that the siding would be installed in homes built by the Taylor Entities. However, as this Court stated in In re Masonite Corp., foreseeability does not confer beneficiary status. Further, like the fact that in In re Masonite Corp., there was no allegation that the homebuilder knew the siding ultimately would be used by the particular homebuilder and the particular homeowners at issue in that case, there are no facts alleged to support the bare bones allegation that Banner had any reason to know that the drywall at issue in this case was being purchased by the Installers for use in the Taylor Entities' Homes. The Taylor Entities have simply made bare allegations in a futile attempt to state a claim for third party beneficiary status. The pleading requirements of the Federal Rules of Civil Procedure and United States Supreme Court case law demand more. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, — U.S. —. —, 129 S. Ct. 1937, 1949 (2009).

Furthermore, just as in In re Masonite Corp., the siding manufacturer had made no promises to the homebuilder, there are no allegations of any promises made by Banner to the Taylor Entities. There are no allegations of any contact whatsoever between Banner and the Taylor Entities. Here, as in In re Masonite Corp., there is no allegation that Banner solicited any business for the Taylor Entities' homes. Further, as in In re Masonite Corp., there is no allegation that Banner encouraged the Taylor Entities or any other entity to use its drywall for the homes at issue in this case. Thus, in this case, just as the homebuilder in In re Masonite Corp. was not a third party beneficiary of any contract between the siding manufacturer and supply stores or subcontractors, the Taylor Entities are clearly not third party beneficiaries of any contract between Banner and the Taylor Entities' subcontractors (the Installers). Accordingly,

the Taylor Entities' breach of implied warranty claims (Counts VII and VIII of the Cross-Claim) fail as a matter of law and must be dismissed with prejudice.

2. **The Taylor Entities' Strict Liability Claim Against Banner Fails As A Matter Of Law Because Florida's Strict Liability Concept Does Not Apply To Structural Improvements To Real Property And Because The Taylor Entities Have Failed To Allege That The Drywall Is Unreasonably Dangerous.**

"'[T]he doctrine of strict products liability does not apply to structural improvements to real estate.'" Plaza v. Fisher Dev., Inc., 971 So. 2d 918, 920 (Fla. 3d DCA 2007) (quoting Easterday v. Masiello, 518 So. 2d 260, 261 (Fla. 1988)); see also Pamperin v. Interlake Companies, Inc., 634 So. 2d 1137 (Fla. 1st DCA 1994) (structural improvements to real property are generally not considered products for purposes of product liability actions). In determining whether something constitutes a "product" or a "structural improvement to real property" with regard to product liability actions, courts look at several factors, including 1) whether the structure can be disassembled and resold; 2) whether the item adds value to the property; 3) whether the item is intended to enhance the property's value, beauty, or utility; and 4) whether the item is available for purchase in the sense that it is offered in the stream of commerce. There is, however, an exception to the general rule that strict liability does not apply to structural improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." Id. (citations omitted). In such an action, the doctrine of strict liability would apply.

In Plaza, the Third District Court of Appeals of Florida held that a conveyor system was an integral part of a building and was affixed to the building, thereby adding value to the

11

property. 971 So. 2d at 924. Accordingly, the court in that case held that the conveyor system was a structural improvement to real property, and not a "product" within the meaning of strict products liability, and therefore held that the trial court properly granted summary judgment in favor of the conveyor system's distributor on the plaintiff's strict liability claim. Id.

In the instant case, the Taylor Entities have failed to allege in their Cross-Claim that the drywall at issue is a product within the meaning and scope of the strict product liability doctrine. The drywall at issue is clearly a structural improvement to real property and not subject to strict product liability. Accordingly, the Taylor Entities' strict liability claim against Banner (Count IX of the Cross-Claim) fails as a matter of law and must, therefore, be dismissed with prejudice.

Additionally, the Taylor Entities' strict product liability claim against Banner fails as a matter of law because the Taylor Entities have failed to allege that the drywall at issue is unreasonably dangerous. Instead, the Taylor Entities merely allege in a conclusory fashion that the drywall is defective. This is insufficient to state a claim for strict product liability under Florida law. Florida law is well-established that "a product is defective if it is in a condition **unreasonably dangerous** to [the user] [a person in the vicinity of the product] and the product is expected to and does reach the user without substantial change affecting that condition." Fla. S. Jury Inst. PL 4 (Civil) (emphasis added); see also 6 Fla. Prac., Personal Injury & Wrongful Death Actions § 13:18. Here, because the Taylor Entities have not alleged that the subject drywall is unreasonably dangerous, their strict liability claim is clearly deficient, fails to state a claim upon which relief may be granted, and must, therefore, be dismissed with prejudice.

3. **The Taylor Entities' Common Law Indemnity, Equitable Subrogation, And Contribution Claims Against Banner Fail As A Matter Of Law Because There Is No Viable Substantive Basis Of Liability Against Banner.**

As explained above, the Taylor Entities' implied warranty and strict liability claims against Banner fail as a matter of law. Without any viable substantive theory of recovery against Banner, the Taylor Entities' claims against Banner for common law indemnity, equitable subrogation, and contribution must likewise fail. Each of these claims requires as an element of proof some *fault* on the part of the defendant. Here, as shown above in sections 1 and 2, there is no such fault on the part of Banner. Accordingly, the Taylor Entities' common law indemnity, equitable subrogation, and contribution claims fail as a matter of law.

In order to recover under a theory of common law indemnity in Florida, the party seeking indemnity must establish "'1) that he is wholly without fault; 2) that the party from whom he is seeking indemnity **is at fault**; and 3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity.'" Mortgage Guar. Ins. Corp. v. Stewart, 427 So. 2d 776, 779 (Fla. 3rd Dist. Ct. App. 1983) (emphasis added) (quoting Fla. Farm Bureau Gen. Ins. Co. v. Ins. Co. of N.A., 763 So. 2d 429, 435 (Fla. 5th Dist. Ct. App. 2000)). In addition to the arguments stated above in sections 1 and 2, Costco Wholesale Corp. v. Tampa Wholesale Liquor Co., Inc., 573 So. 2d 347 (Fla. 2d DCA 1990), further shows that Banner is without fault and therefore, cannot be held liable to the Taylor Entities under a theory of common law indemnity.

In Costco Wholesale Corp., the court addressed a claim for indemnity brought by the retailer of a defective product (Costco) against the intermediate sellers of the product. Referencing the Florida Supreme Court's holding in Houdaille Indus., Inc. v. Edwards, 374 So. 2d 490 (Fla. 1979), the Second District Court of Appeals noted as follows:

> Under the holding of *Houdaille*, Costco could recover in common law indemnity against Tampa Wholesale and Tyfield only if . . . Tampa Wholesale and Tyfield were parties in the chain of distribution to Costco who were possessed with actual fault in regard to the defect in the product. *Since Costco, Tampa Wholesale and*

13

> *Tyfield were all without actual fault in regard to the defective product, common law indemnity will not lie between them.*

Costco Wholesale Corp., 573 So. 2d at 348 (emphasis added).

Here, as in Costco Wholesale Corp., Banner is clearly without actual fault with regard to the defect in the drywall, as it was merely a distributor of the drywall and no involvement in manufacturing it. Indeed, the Taylor Entities allege in their Cross-Claim that Banner purchased the subject drywall from Knauf Gips and Knauf Tianjin and possibly other manufacturers. See Cross-Claim, ¶ 21. Accordingly, as in Costco Wholesale Corp., Banner is clearly without actual fault in regard to the defective drywall and, therefore, common law indemnity does not lie between the Taylor Entities and Banner. Thus, the Taylor Entities' common law indemnity claim (Count X) fails as a matter of law and should be dismissed with prejudice.

Similarly, the Taylor Entities' equitable subrogation claim against Banner fails as a matter of law because there is no allegation that Banner is at fault. It has already been shown in sections 1 and 2 above that the Taylor Entities' substantive claims against Banner fail. Without any viable substantive claims, there is no basis for allowing their equitable subrogation claim to proceed. To do so would be to allow an end-run around the fact that there is no viable substantive theory of recovery on behalf of the Taylor Entities as against Banner. Furthermore, "[a] cause of action for equitable subrogation arises where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) **the subrogee paid off the entire debt**, and (5) subrogation would not work any injustice to the rights of a third party." State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So. 3d 1099, 1100 (Fla. 2d DCA 2009) (emphasis added). Additionally, "[i]n tort cases, the party seeking subrogation must have obtained a release for the other party responsible for the debt." Id.; accord Welch v. Complete Care Corp., 818 So. 2d 645, 648 (Fla. 2d DCA

14

2002) (holding that there was no entitlement to equitable subrogation because the party seeking same had not obtained a release on behalf of the party against whom subrogation was sought).

Here, the Taylor Entities have not alleged that they obtained a release from the homeowners on behalf of Banner. Indeed, they obviously have not done so because Banner is being sued by the Plaintiffs in the Omnibus Class Action. Accordingly, for this additional reason, the Taylor Entities have clearly failed to state a claim against Banner for equitable subrogation.

Additionally, the Taylor Entities' equitable subrogation claim also fails as a matter of law because it is clear that they have not paid of the entire debt, as is required in order to pursue an equitable subrogation claim. Both the Taylor Entities and Banner, as well as many other Defendants, are currently being sued by scores of Plaintiffs in the Omnibus Class Action. If the Taylor Entities had paid the entire debt, there would be no such lawsuit. Accordingly, as the Taylor Entities have clearly not paid the entire debt, there is no viable claim for equitable subrogation, and this claim (Count XI of the Cross-Claim) should be dismissed with prejudice.

"To support an action for contribution, the pleading must adequately allege common **liability**." State, Dept. of Transp. v. V.E. Whitehurst & Sons, Inc., 636 So. 2d 101, 105 (Fla. 1st DCA 1994) (emphasis added) (citing FSA 768.31(2)(a)). In Count XII of their Cross-Claim, in which the Taylor Entities attempt to allege a claim for contribution, they fail to allege that there is common liability. There is no such allegation made in Count XII. For this reason alone, the Taylor Entities' contribution claim should fail as a matter of law. There is, however, an additional reason why this claim fails: the Taylor Entities have not alleged a viable substantive theory of liability against Banner. In other words, as with the indemnity and equitable subrogation claims, the contribution claim fails as a matter of law because there is no allegation

15

of actual fault on the part of Banner. It is axiomatic that one must be proven to be at fault in order for another to seek contribution from him. See, e.g. <u>Witt v. La Gorce Country Club, Inc.</u>, 35 So. 3d 1033, 1039 (Fla. 3d DCA 2010) (holding that trial court did not err in failing to allocate fault to non-party because there was no proof of the non-party's fault).

Here, as shown above in sections 1 and 2, none of the Taylor Entities' claims of actual fault against Banner can succeed. Each of these substantive theories of recovery fails as a matter of law. The Taylor Entities, therefore, have no viable basis for a contribution claim against Banner. Accordingly, this claim (Count XII of the Cross-Claim) should be dismissed with prejudice.

## CONCLUSION

WHEREFORE, for the foregoing reasons, each of the Taylor Entities' claims against Banner fails as a matter of law. Accordingly, Banner respectfully requests that this Motion be granted and that the Taylor Entities' claims against it be dismissed with prejudice.

Respectfully submitted, this 31st day of August, 2010.

**WEINBERG, WHEELER, HUDGINS,**
**GUNN & DIAL, LLC**

*/s/ Shubhra R. Mashelkar*
**SHUBHRA R. MASHELKAR, ESQUIRE**
Georgia Bar Number: 475388
smashelkar@wwhgd.com
3344 Peachtree Road
Suite 2400
Atlanta, GA  30326
Telephone (404)876-2700
***Counsel for Banner Supply Company***

## CERTIFICATE OF SERVICE

       I hereby certify that the above and foregoing Memorandum of Law in Support of its Motion to Dismiss Cross-Claim of Taylor Morrison Services, Inc. f/k/a Morrison Homes, Inc. and Cross-Claim and Third Party Claim of Taylor Woodrow Communities at Vasari, L.L.C. has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail; and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, in accordance with the procedures established in MDL 2047, on this 31st day of August, 2010.

                                      */s/ Shubhra R. Mashelkar*  
                                      **SHUBHRA R. MASHELKAR**