UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | * | MDL NO. 2:09-md-02047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | JUDGE ELDON E. FALLON |
| | * | |
| This document relates to: | * | MAGISTRATE JUDGE |
| Jude Marullo v. Louisiana Citizens, et al | * | JOSEPH C. WILKINSON, JR. |
| | * | |
| Case No. 10-2067 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

**MAY IT PLEASE THE COURT:**

Defendant, Southern Fidelity Insurance Company ("SFIC") submits this Memorandum in Opposition to the Motion to Remand filed by plaintiff, Jude Marullo, on the grounds that complete diversity exists in this matter, and it has properly been removed to federal court. Defendant respectfully requests that this Honorable Court deny plaintiff's Motion to Remand for the reasons more fully discussed below.

**I.      FACTS AND PROCEDURAL HISTORY**

Plaintiff originally instituted this proceeding on May 17, 2010, in the Civil District Court for the Parish of Orleans, State of Louisiana, captioned "Jude Marullo versus Louisiana Citizens Property Insurance Corporation," Docket No. 2010-5013.

The original petition improperly names Louisiana Citizens Property Insurance Corporation ("LCPIC"), a Louisiana defendant. In the petition, plaintiff seeks recovery for losses or damages incurred as a result of the damage to his property and LCPIC's alleged arbitrary and capricious conduct as his insurer in failing to pay for the damage to the property located at 5401 Bancroft Drive, New Orleans, Louisiana. Plaintiff does not allege any specific facts in the original petition regarding the alleged LCPIC policy at issue. For example, plaintiff does not allege a specific policy number, policy term or limits. However, regarding the applicable policy period, plaintiff alleges as follows:

5.

In **June 2009**, plaintiff discovered that his home was constructed using Chinese manufactured drywall, which caused and continues to cause physical loss and damage to Plaintiff's home and contents. The Chinese drywall emits odorous gases that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items and causes personal injury to Plaintiff and his family.[1]

7.

On **September 3, 2009**, Plaintiff, through undersigned counsel, provided notice of Plaintiff's claim relating to the presence of Chinese drywall in Plaintiff's home to Defendant.[2]

Thus, the policy plaintiff refers to in the original Petition for Damages must have been in effect in June and September 3, 2009, accepting plaintiff's allegations as true.

Having learned of that, in fact, LCPIC did not have a policy of insurance in effect on June 2009 and September 3, 2009, plaintiff filed a First Amended and Supplemental Petition for Damages on June 22, 2010. It is important to note that the First Amended and Supplemental Petition for Damages contains, word for word, the exact same allegations as in the original Petition for Damages. However, the First Amended and Supplemental Petition for Damages no

---

[1] Petition for Damages, paragraph 5, Exhibit "A" (emphasis added).

longer lists LCPIC as a defendant; Southern Fidelity Insurance Company ("SFIC") is named as a defendant in place of LCPIC.[3]

In Paragraphs 5 and 7 of the First Amended and <u>Supplemental</u> Petition for Damages, plaintiff reiterates the same allegations regarding the applicable time period – that the damages from the allegedly defective drywall were discovered in June 2009 and reported on September 3, 2009.[4]  In neither Petition does plaintiff assert any claims against any policy of insurance other than the policy in effect on June 2009 and September 3, 2009.  As discussed below, the only policy of insurance fitting the time period alleged by plaintiff is Policy No. FH 20072400332 01, which was originally issued by LCPIC but taken over via novation by SFIC.  As such, SFIC is the proper party defendant insurer in this action and LCPIC is improperly named because it was no longer plaintiff's insurer for the relevant time period asserted by plaintiff in his Petition.

In an attempt to defeat diversity jurisdiction, plaintiff names Louisiana Citizens Property Insurance Corporation ("Louisiana Citizens") as a local defendant.  Plaintiff also incorrectly alleges that Louisiana Citizens was the insurer on the policy of insurance covering the subject property for the relevant time period encompassing June 2009 and September 3, 2009.  As a result of the improper joinder of Louisiana Citizens in this matter, SFIC filed a Notice of Removal on July 23, 2010.

Plaintiff then filed a Motion to Remand on August 20, 2010, claiming without factual support that Louisiana Citizens is a properly named defendant and for the damages sustained by Plaintiff.  However, plaintiff has not alleged a colorable claim that possibly would allow recovery against Louisiana Citizens.  Instead, it is clear that plaintiff joined Louisiana Citizens

---

[2] Petition for Damages, paragraph 7, Exhibit "A" (emphasis added).
[3] First Amended and Supplemental Petition for Damages, Exhibit "B".
[4] First Amended and Supplemental Petition for Damages, Exhibit "B".

either by mistake or solely to defeat diversity and deny SFIC a federal forum. Such joinder is improper and/or fraudulent and the Motion to Remand should be denied.

### A.     Affidavit of Louisiana Citizens' Representative

Attached hereto as Exhibit "C" is the Affidavit of Vijay Ramachandran, the Vice President of Staff Operations for Louisiana Citizens.[5] In his position as President of Staff Operations, Mr. Ramachandran is engaged in the process of depopulation of Louisiana Citizens' policies.[6] In order to bring new insurance companies into Lousiana for the purpose of making insurance more readily available and to reduce the number of properties insured by Louisiana Citizens, the Louisiana Legislature enacted LSA-R.S. 23:2361, "The Insure Louisiana Incentive Program."[7] Pursuant to that program, Louisiana Citizens transferred several of its insurance policies to other insurance companies, such as SFIC.[8]

In this case, SFIC took over Policy No. FH 20072400332 01, the subject policy for the relevant time period of June 2009 through September 3, 2009, plaintiff's property, as part of the depopulation program described above.[9] This transfer took place with the consent of the insured, Jude Marullo, via his insurance agent, Insurance Underwriters, Ltd., who had the authority to act on behalf of Jude Marulllo in instructing the transfer of the policy.[10] SFIC took over the responsibilities of the Policy as of March 1, 2008, prior to the subject loss, and Mr. Marullo was notified of this transfer via a "Certificate of Assumption," which is attached to the Affidavit of Vijay Ramachandran as Exhibit "A" and a "Notice of Transfer" letter attached to the Affidavit as Exhibit "B".[11]

---

[5] Affidavit of Vijay Ramachandran, paragraph 1, Exhibit "C".
[6] Affidavit of Vijay Ramachandran, paragraph 1, Exhibit "C".
[7] Affidavit of Vijay Ramachandran, paragraph 2, Exhibit "C".
[8] Affidavit of Vijay Ramachandran, paragraph 3, Exhibit "C".
[9] Affidavit of Vijay Ramachandran, paragraph 4, Exhibit "C".
[10] Affidavit of Vijay Ramachandran, paragraphs 5-6, Exhibit "C".
[11] Affidavit of Vijay Ramachandran, paragraphs 7-8, Exhibit "C".

### B. Affidavit of SFIC Representative

Attached hereto as Exhibit "D" is the Affidavit of Theresa Krueger, a claims analyst and supervisor for SFIC, as well as a custodian of records for SFIC who is privy to the facts and circumstances surrounding Claim No. 17-8672 filed by Jude Marullo under Policy No. FH 20072400332 01 ("the Policy").[12] SFIC acquired the Policy from Louisiana Citizens as part of the depopulation plan set forth by the Louisiana Legislature, as referenced above.[13] SFIC and Louisiana Citizens entered into an agreement under which SFIC assumed full responsibility for Citizens' obligations under the Policy at issue.[14] In fact, the "Certificate of Assumption", which is attached to the Affidavit of Theresa Krueger as Exhibit "2", specifically provides,

> Southern Fidelity Insurance Company ("SFIC") and Louisiana Citizens Property Insurance Corporation ("Citizens") have entered into an agreement under which **SFIC has assumed full responsibility for Citizen's obligations** under certain policies of insurance by Citizens.
>
> **SFIC is directly responsible for all covered losses under your policy**, effective with the claim event occurrences beginning March 1, 2008 at 12:01 AM and continuing through the expirations date of your policy listed above. (emphasis added).[15]

Furthermore, attached to the Affidavit of Theresa Krueger as Exhibit "3" is the "Notice of Insurance Coverage Transferred to a New Carrier" document, which was issued by Citizens to the insured and provides in pertinent part,

> On June 1, 2008 at 12:01 a.m., your property insurance policy currently with Louisiana Citizens Property Insurance Corporation will be assumed by the Southern Fidelity Insurance Company. **Your agent has instructed this change.** (emphasis added).

According to the Affidavit of Theresa Krueger, Jude Marullo's insurance agent, Insurance Underwriters, Ltd., consented to the transfer of the subject Policy from Louisiana

---

[12] Affidavit of Theresa Krueger, paragraphs 2-3, Exhibit "D".
[13] Affidavit of Theresa Krueger, paragraph 4, Exhibit "D".
[14] Affidavit of Theresa Krueger, paragraph 5, Exhibit "D".

Citizens to SFIC, and **SFIC is therefore solely liable for all covered losses** under the subject Policy.[16] (emphasis added).

Pursuant to the Affidavit of Vijay Ramachandran, the Affidavit of Theresa Krueger, and Louisiana law discussed below, a complete novation of the Policy occurred before the loss at issue, and SFIC was substituted as the insurer in place of Louisiana Citizens.  Plaintiff does not have a right of action to proceed in this case against Louisiana Citizens, and it has been improperly joined.  As such, removal was and is proper in this matter, as is more fully discussed below.

## II.   LAW AND ARGUMENT

### A.   Diversity of Citizenship Exists and Removal is Proper

The joinder of LCPIC is improper, and this Honorable Court has jurisdiction over this suit.  LCPIC should be dismissed from this case, since it was no longer Plaintiff's insurer at the time of the subject loss.  A complete novation occurred in this matter, and SFIC was substituted as the insurer under the policy at issue with the consent of the insured, Jude Marullo via his insurance agent.  As such, this matter should not remanded to state court, since diversity of citizenship exists and removal is proper.

#### 1.   A Novation took place by agreement between Southern Fidelity and Louisiana Citizens

A complete novation took place for the policy at issue, and no solidary liability exists between SFIC and Louisiana Citizens.

Louisiana Civil Code Article 1882 provides,

Novation takes place when a **new obligor is substituted for a prior obligor** who is discharged by the obligee.  In that case, the novation is accomplished even

---

[15] Affidavit of Theresa Krueger, paragraphs 6-7, Exhibit "D".
[16] Affidavit of Theresa Krueger, paragraphs 10-11, Exhibit "D".

- 6 -

without the consent of the prior obligor, unless he had an interest in performing the obligation himself. (emphasis added).

The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed.[17] Novation by substitution of a new obligor differs from the assumption of obligation.[18] Though in both novation and assumption a new debtor is substituted for an original one, in the case of a novation, the original obligation is extinguished and a new one comes into existence.[19] On the other hand, in the case of an assumption, the original obligation subsists.[20]

A novation occurs where a contracting party accepts performance by an assignee with knowledge that the assignor does not intend to be liable under the original contract, as where the creditor deals exclusively with, or pursues only, the assignee for payment.[21] It is not necessary that a novation be in writing or that there be express words to evidence the intent to create a novation, but rather the intent may be determined from the actions of the parties given the contractual relationships that exist between or among them.[22]

A subjective novation requires the obligee's consent to the substitution of a new obligor for the original one, while an assumption of obligation by agreement between the obligor and a third person can take place without the consent of the obligee.[23] Thus, novation takes place when a debtor contracts a new debt to this creditor, which new debt is substituted to the old one, which is extinguished, or when a new debtor is substituted to the old one, who is discharged by the creditor.[24] A novation made by the obligee and one of the obligors of a solidary obligation

---

[17] Louisiana Civil Code Article 1881.
[18] 5 La. Civ. L. Treatise, Law of Obligations § 17.32 (2d ed.).
[19] *Id.*
[20] *Id.*
[21] 58 Am. Jur. 2d Novation § 20.
[22] 30 Williston on Contracts § 76:12 (4th Ed.).
[23] 5 La. Civ. L. Treatise, Law of Obligations § 17.32 (2d ed.), citing LSA-C.C. art. 1821.
[24] *Smith, Howard and McCoy, Inc. v. ACME General Contractors, Inc.*, 152 So.2d 596 (La. App. 2 Cir. 1963).

releases the other solidary obligors.[25] This is so because, by definition, a novation extinguishes the original obligation and, as a consequence, it terminates the solidarity that characterized it.[26]

In this case, a novation occurred when LCPIC transferred the policy at issue to Southern Fidelity with the consent of the insured, as evidence by the "Certificate of Assumption" signed by James A. Graganella, CEO of SFIC, dated June 1, 2008, attached to the Affidavit of Vijay Ramachandran and to the Affidavit of Theresa Krueger.

Although the document itself is titled "Certificate of Assumption", clearly the language of the document reflects a novation of the obligations under the policy and not just an assumption. That the title of an agreement mentions a certain word is not dispositive, as the character of a document is determined by examining the entire writing and not merely the writing's title.[27] The agreement gives notice to the insured that SFIC is **directly responsible** and has assumed all of Citizens' obligations under the policy. Therefore, as long as the insured has consented to the transfer, as is the case here, a novation took place, and Louisiana Citizens is no longer liable under the policy, as is more fully discussed below.

B.   Plaintiff **CONSENTED** to the Novation Through His Insurance Agent

Attached to the Affidavit of Theresa Krueger as Exhibit "3" is the Notice of Insurance Coverage Transfer to a New Carrier, issued by Louisiana Citizens to the insured "policyholder", which provides in pertinent part,

> On June 1, 2008 at 12:01 AM, your property insurance policy currently with Louisiana Citizens Property Insurance Corporation will be assumed by the Southern Fidelity Insurance Company. **Your agent has instructed this change**. (emphasis added).

---

[25] 5 La. Civ. L. Treatise, Law of Obligations § 7.77 (2nd ed.), citing LSA-C.C. art. 1885.
[26] *Id*.
[27] *Caro Properties (A), LLC v. City of Gretna*, 3 So.3d 29, 31, 08-248 (La.App. 5 Cir. 12/16/08).

- 8 -

As the insurance agent of the plaintiff, Jude Marullo, Insurance Underwriters, Ltd. had the authority to act on his behalf, including consenting to the transfer of insurance policies from one insurer to another insurer.[28]  Also, as Jude Marullo's insurance agent, Insurance Underwriters, Ltd., did, in fact, consent to the transfer of the policy at issue, from LCPIC to SFIC on behalf of Jude Marullo, as evidenced by the Affidavit of Vijay Ramachandran and Theresa Krueger.[29]  An agent is one who acts for, or in place of, another by authority from the latter.[30]  Agency relationship may be created by express appointment of mandatory, or by implied appointment arising from apparent authority.[31]  An agency relationship exists between Insurance Underwriters, Ltd. as agent and Jude Marullo as the principal.

Therefore, Insurance Underwriters, Ltd. had the authority to act on behalf of Jude Marullo and did so in consenting to the transfer of the policy and the complete novation of SFIC for LCPIC as insurer under the policy.  As the insured consented to the transfer of his policy from LCPIC to SFIC through his insurance agent, Insurance Underwriters, Ltd., a complete novation occurred.  Since there was a complete novation of the policy from LCPIC to SFIC, LCPIC is no longer liable under the policy, and there is **no solidary liability with a novation**.  As such, LCPIC is not a proper party for the time period asserted by Jude Marullo and should be dismissed from this matter, leaving only SFIC as the proper party defendant and complete diversity.

### C.     Public Policy Considerations

The transfer of insurance policies, such as the one at issue in this case, has been expressly fostered by the Louisiana Legislature.  In an effort to attract new insurers to Louisiana and to

---

[28] See Affidavit of Theresa Krueger, paragraph 10, Exhibit "D".
[29] See Affidavit of Vijay Ramachandran, paragraph 6, Exhibit "C".
[30] *Breeden v. Lybrand*, 927 So.2d 451, 2004-1340 (La.App. 4 Cir. 2/22/06).
[31] *Id.*

provide adequate and affordable insurance to property owners of this state, the "Insure Louisiana Incentive Program" was enacted through the passage of Act 447 of the 2007 Regular Session of the Louisiana Legislature. The program granted matching funds through cooperative endeavor agreements to qualified property insurance companies.

SFIC participated in the program, resulting in SFIC taking over the LCPIC policy at issue in this litigation by removing it from LCPIC.

The Louisiana Legislature expressly states its intentions in implementing the "Insure Louisiana Incentive Program" in LSA-R.S. 22:2362, which provides,

> A. **Louisiana currently is experiencing a crisis in the availability and affordability of insurance for residential and commercial properties.** Louisiana property owners and their insurers sustained catastrophic losses in 2005 from Hurricanes Katrina and Rita. As the result of their losses and their assessment of the risk of loss from future storms, many insurers have substantially reduced their participation in the voluntary market for residential and commercial property insurance. With fewer insurers in the voluntary market, competitive pressure on premium rates is reduced. Current underwriting practices have resulted in a substantial increase in the number of Louisiana property owners forced to obtain their property insurance coverage or their coverage for the wind peril from Louisiana Citizens Property Insurance Corporation (Citizens), the state insurer of last resort. As a result of the 2005 storms, Citizens has a substantial deficit that currently is and must be funded by assessments against insurers and policyholders. The decline in the voluntary insurance market substantially increases Citizens' exposure, thereby threatening to worsen its financial condition. Increased premiums and assessments make property insurance coverage unaffordable for some property owners, forcing them to sell or abandon their residential or commercial properties or preventing them from restoring storm-damaged properties, causing some residents to leave or fail to return to the state. The availability of property insurance at reasonable cost is essential to the economy of the state. Owners cannot invest in and lenders will not finance the construction and ownership of residential and commercial buildings without adequate property insurance protection. The state has a vital interest in fostering the availability of property insurance at reasonable cost.
>
> B. The Insure Louisiana Incentive Program is adopted **for the purpose of cooperative economic development and stability in Louisiana** by encouraging additional insurers to participate in the voluntary property insurance market in order to substantially increase the availability of property insurance, to substantially increase competitive pressure on insurance rates, and to substantially

reduce the volume of business written by the Louisiana Citizens Property Insurance Corporation, thereby offering a less expensive alternative to its policyholders and reducing Citizens' exposure to an increased deficit and future assessments. (emphasis added).

D. It is hereby declared by the legislature that assuring an adequate and affordable market for insurance for both residential and commercial properties in this state is essential to the economic viability of the state and its citizens, the assurance of an adequate and stable tax base for the state and its political subdivisions, and the health, welfare, and safety of its citizens. Accordingly, **the establishment of the Insure Louisiana Incentive Program implemented through public-private partnerships is declared and demonstrated to be an essential public function and public purpose.** (emphasis added).

The purpose of the "Insure Louisiana Incentive Program" was to alleviate the financial burden on LCPIC and the citizens of the State of Louisiana during this serious insurance crisis. By transferring certain policies, such as the policy at issue, the burden shifted to other insurers. In this case, SFIC accepted its responsibility placed upon it through this program by the Louisiana Legislature and does not seek to avoid its obligations under this policy.

LSA-R.S. 22:2314 was enacted to put in place the procedures for depopulating the number of policies issued by LCPIC via a "Policy take-out program." In LSA-R.S. 22:2314, the intent of the Louisiana Legislature in implementing this form of depopulation is clearly set forth as follows:

A. The legislature created the Louisiana Citizens Property Insurance Corporation to operate insurance plans as a residual market for residential and commercial property. The legislature further intends that the corporation work toward the ultimate **depopulation of these residual market plans**. **To encourage the ultimate depopulation of these residual market plans**, there is hereby created the Louisiana Citizens Property Insurance Corporation Policy Take-Out Program. (emphasis added).

Therefore, it is clear that the public policy considerations regarding the institution of the "Insure Louisiana Incentive Program" through the "Policy take-out program" are critical in determining whether or not LCPIC can be held liable for the claims made under the policy at

issue in this case. Had the Louisiana Legislature intended for both LCPIC and SFIC to be solidarily liable under the policy, certainly it would have expressed such an intention in the above referenced statutes.

Pursuant to the "Policy take-out program," Plaintiff's insurance agent instructed the transfer of the instant policy from LCPIC to SFIC. Plaintiff was also later formally notified that the policy at issue in this litigation was selected for transfer to SFIC. Plaintiff had the opportunity to refuse the transfer of the policy to SFIC, but did not do so. Since Plaintiff consented to the transfer of the policy and the obligations of LCPIC under the policy to SFIC, a complete novation took place. LCPIC is therefore no longer liable at all under the policy, and SFIC is the only proper party defendant in this matter.

Given the fact that SFIC is the only proper party defendant in this matter, complete diversity exists, and removal was and is proper. SFIC respectfully requests that the Motion for Remand filed by plaintiff in this matter be denied.

### D. The *Harris* Decision

Very recently in the case of *Harris v. Southern Fidelity Insurance Company and Louisiana Citizens Property Insurance Corporation*, 2010-WL-323561 (E.D. La. 01/21/2010), the Honorable Mary Ann T. Vial Lemmon, considered the exact same issues as presented in the instant matter.[32] In *Harris*, Eastern District Civil Action No. 09-6631, Judge Lemmon denied plaintiff's Motion to Remand a case in which both LCPIC and SFIC remained as co-defendants pursuant to a property damage claim. In considering identical evidence as presented to the Court in the instant matter, Judge Lemmon correctly held that "Southern Fidelity is the only insurance

---

[32] *Harris v. Southern Fidelity Insurance Company and Louisiana Citizens Property Insurance Corporation*, 2010-WL-323561 (E.D. La. 01/21/2010), Exhibit "E".

company that has any obligation under plaintiff's insurance policy, and Louisiana Citizens is improperly joined."[33]

The same result in *Harris* is called for in the instant case. For the applicable time period asserted by plaintiff, June 2009 through September 3, 2009, SFIC is the only insurance company that has an obligation under plaintiff's applicable insurance policy. Accordingly, LCPIC has been improperly joined, complete diversity exists and plaintiff's Motion to Remand should be denied.

### III. CONCLUSION

The prerequisites for removal under 28 U.S.C. § 1441 have been met in this matter. For that reason, and for the reasons stated above, SFIC submits that the removal of this case from the Civil District Court for the Parish of Orleans, State of Louisiana, to the United States District Court, for the Eastern District of Louisiana, the district where the suit is pending, was and is proper. As such, SFIC asks that this Honorable Court deny Plaintiff's Motion to Remand and award SFIC costs and expenses incurred in the filing of this Memorandum in Opposition for the improper joinder of LCPIC.

Respectfully submitted:

  /s/ Matthew D. Monson
**MATTHEW D. MONSON (25186), T.A.
KRISTI U. LOUQUE (31845)
PAJARES & SCHEXNAYDRE, LLC**
68031 Capital Trace Row
Mandeville, Louisiana 70471
Telephone:   (985) 292-2000
Facsimile:    (985) 292-2001
Email: mmonson@pslawfirm.com
          klouque@pslawfirm.com
***Counsel for Southern Fidelity Insurance Company***

---

[33] *Id.* at *3.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Memorandum in Support of Motion to Remand has been served on plaintiffs' Liaison Counsel, Russ Herman, and defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery <u>and</u> email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 31st day of August, 2010.

          /s/ Matthew D. Monson