UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * MDL No. 2047<br>*<br>* SECTION L<br>*<br>* JUDGE ELDON E. FALLON<br>*<br>* MAGISTRATE JUDGE<br>* JOSEPH C. WILKINSON, JR.<br>* |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**THIS DOCUMENT RELATES TO:** *Germano, et al. v. Taishan Gypsum Co., Ltd., et al., Case No. 09-6687*

PEOPLE'S REPUBLIC OF CHINA
CITY OF TAI'AN

## <u>DECLARATION OF JIA TONGCHUN</u>

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

I, JIA TONGCHUN, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. I am over eighteen (18) years of age, am competent to testify to the matters contained herein, and have personal knowledge of these facts. My native language is Chinese. I do not understand, speak, read, or write English. I signed a Chinese version of this Declaration as well as the English version of this Declaration after it was translated for me by a translator with the law firm of Hogan Lovells International LLP.

2. I am Chairman of the Board and General Manager of Taishan Gypsum Co., Ltd. ("Taishan"). I joined Taishan on February 2, 1999 as the leader of the factory and subsequently became Chairman of the Board and General Manager in 2002.

1

3.  When I joined the company, it was called Shandong Taihe Taishan Plasterboard Main Factory (Group).  In 2002, the company changed its name to Shandong Taihe Dongxin Co., Ltd. ("Taihe"), when it became a company limited by shares under Chinese law.  In 2007, Taihe became Taishan.

4.  Taishan is a Chinese corporation with its principal place of business in Tai'an City, Shandong Province, People's Republic of China ("China").

5.  Taishan has approximately 1,600 employees, all of whom are located in China.

6.  In 1992, Taishan started manufacturing paper-coated drywall ("drywall").

7.  Taishan manufactures drywall exclusively in China.

8.  Taishan is one of the largest drywall manufacturers in China.  Taishan has won numerous awards and accolades for the quality of its operations, company management, resource management and compliance with environmental standards.  Taishan has been certified as a "China Top Brand" reflecting official recognition by the national General Administration of Quality Supervision Inspection and Quarantine ("GAQSIQ") of its high quality and superior reputation.  Additionally, Taishan has also received other quality and environmental protection certifications, including, for example, the International Organization for Standardization ("ISO") 9001 standard (for quality management), the ISO 14001 standard (for environmental protection) and certification to use the "China Environmental Labeling" mark.

9.  Taishan sells drywall exclusively in China.

10. Taishan never has manufactured products in Virginia.

11. Taishan never has sold drywall in Virginia.

12. Taishan never has marketed drywall in Virginia.

13. Taishan never has distributed drywall in, or shipped drywall to, Virginia.

2

14. Taishan never has advertised in Virginia.

15. Taishan never has performed services in Virginia.

16. Taishan does not have offices and does not own or lease real or personal property in Virginia.

17. Taishan does not maintain any bank accounts in Virginia.

18. Taishan never has appointed an agent to accept service of process in Virginia.

19. Taishan never has paid taxes or incurred tax liability in Virginia.

20. Taishan is not registered to do business in Virginia.

21. Taishan never has been incorporated in Virginia.

22. Taishan never has maintained any corporate books or records in Virginia.

23. Taishan does not have a mailing address or telephone number in Virginia.

24. Taishan has no officers, directors, employees, or agents in Virginia.  None of Taishan's officers, directors, employees, or agents maintain a residence or place of business in Virginia.

25. No officers, directors, employees, or agents of Taishan have visited Virginia for business purposes.

26. In approximately November of 2005, Phillip Perry, of Tobin Trading, Inc., contacted Taishan to inquire about Taishan's drywall. Mr. Perry said he was an agent of Venture Supply, Inc. ("Venture Supply"), a Virginia company.

27. Mr. Perry visited Taishan in China in approximately November 2005.  During his first visit to Taishan, Mr. Perry, on behalf of Venture Supply, negotiated a contract providing for the sale of drywall by Taishan.

28. The first contract, dated November 17, 2005, was drafted and signed in

Tai'an City, China.  A copy is attached as Exhibit A.   The contract provided for production of the drywall according to the "relative standard of China GB/T9775-1999."  Under the terms of the contract, Venture Supply purchased the drywall in China and was then responsible for transporting the drywall to its desired location.  Prior to shipment, Mr. Perry, as Venture Supply's representative, was responsible for inspecting the drywall in China and ensuring that the quality, specifications and packing met Venture Supply's requirements.  Taishan was responsible for complying with the contractual terms and for delivering the drywall in China in accordance with Venture Supply's arrangements.  Additionally, the November 17, 2005 contract included an arbitration clause, which provided that "[a]ll disputes in connection with this contract" that cannot be amicably be negotiated will be submitted in China to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade, now know as the China International Economic Trade Arbitration Commission ("CIETAC").

29. On December 16, 2005, Mr. Perry, Venture Supply's agent, visited Taishan to inspect the drywall and agreed to transport of the drywall to the Lian Yungang port.  A copy of his Inspection Certificate is attached as Exhibit B.  Mr. Perry certified in the Inspection Certificate that he had inspected the goods in China and that they met Venture Supply's specifications and quality requirements.

30. On the same day, Taishan and Venture Supply entered into a second contract. A copy of this contract is attached as Exhibit C.  Like the first contract, this contract was negotiated and drafted in Tai'an City, China.  Mr. Perry, on behalf of Venture Supply, and Taishan both signed the second agreement while in Tai'an City, China.  Also like the first contract, the second contract provided for the sale of drywall in China, and required Venture Supply to be responsible for shipping arrangements and charges.  The second contract similarly required that Mr. Perry inspect

4

the goods in Taishan's factory and China loading port to make sure that the quality, specifications and packing met Venture Supply's requirements. Like the first contract, it also contained an arbitration clause, providing for arbitration of claims arising out of the contract before CIETAC in China.

31. On or about March 11, 2006, Mr. Perry again visited Taishan to inspect the drywall and to give approval to transfer it to the loading port. A copy of his Inspection Certificate is attached as Exhibit D. Mr. Perry similarly certified in this Inspection Certificate that he had inspected the drywall in China and that it met buyer's specifications and quality requirements.

32. Pursuant to both contracts, Venture Supply was responsible for transporting the drywall to the final destination, and Venture Supply was also responsible for insuring the drywall once title was transferred to it in China.

33. After delivery of the drywall to a port in China, Taishan had nothing more to do with the drywall thereafter. Taishan had no knowledge or information concerning whether any of the drywall it supplied in China pursuant to those contracts would be distributed or used in Virginia.

34. The Taian Shandong Province Special Invoices for Export for the purchases by Venture Supply are attached together as Exhibit E. These invoices were generated by Taishan for tax purposes after the Venture Supply transactions were complete. They show that Venture Supply purchased a total of 153,912 sheets of drywall from Taishan in China. The invoices also list "FOB" as the term of delivery, meaning that Venture Supply purchased the drywall in China and was responsible for arranging, and paying for, shipment to the desired destination.

35. No employee or representative of Taishan was ever present in Virginia in connection with the Venture Supply contracts or otherwise in connection with the drywall business.

36. Other than the two contracts with Venture Supply, Taishan did not enter into any

5

other contracts with entities based in Virginia. Nor did Taishan enter into any other contracts with companies specifically providing for the supply of drywall in Virginia.

37. Venture Supply made payments for the drywall to Taishan's bank in China.

38. Taishan's two sales to Venture Supply were made in China. They are the only sales of drywall Taishan has made to any customer based in the United States.

39. Tai'an Taishan Plasterboard Co. Ltd. ("TTP") is a wholly owned subsidiary of Taishan formed in February 2006. TTP manufactures and sells drywall exclusively in China. TTP has not entered into any contracts with any companies located in Virginia. TTP has had no contact with Virginia whatsoever.

40. In light of Taishan's lack of contacts with Virginia and for other reasons discussed below, on behalf of Taishan, I respectfully request that Taishan be excused for failure to appear in this case.

41. Taishan did not intend to offend the court or to challenge its powers. Based upon our lack of contacts with Virginia and for other reasons discussed below, we sincerely did not believe that it was necessary for Taishan to appear.

42. Taishan has never been involved in litigation of this nature in the United States or anywhere else in the world. Taishan has had no experience with, and did not understand, the litigation process in Virginia or in the United States.

43. No employee at Taishan has sufficient mastery of the English language to read and understand legal documents written in English. As a result, no legal document sent to Taishan only in English underwent meaningful review. Taishan thus did not understand the consequences of not responding to the Amended Complaint.

44. No employee at Taishan has any understanding whatsoever of the United States' judicial

6

process to understand the nature or consequence of the claims asserted in the litigation in the United States. This is true even if the relevant documents are translated into Chinese.

45. Taishan received only one document related to this litigation from the Chinese courts and that was the Amended Complaint. The Chinese court did not provide Taishan with any other documents. And Taishan still has not received any other documents relating to this lawsuit in Chinese.

46. When Taishan received the Amended Complaint, we could not understand how this litigation could possibly involve Taishan directly. Taishan sells drywall exclusively in China. Taishan has not sold any drywall in the United States. The sales Taishan made in China to Venture Supply were covered by arbitration clauses providing for the arbitration of contractual disputes in China. Taishan had no involvement with the drywall it sold to Venture Supply after it was delivered to Venture Supply in China. Taishan complied with its contractual obligations and had no reason to believe that its drywall had quality problems.

47.     Now that Taishan is aware that a default judgment has been entered, however, it is forced to defend itself and its reputation and erase the judgment suggesting that its product is defective. It retained counsel in the United States and concluded it was necessary to appear and participate in this action. Taishan is determined to appear in this case in order to challenge the jurisdiction of the Court and otherwise defend itself as necessary.

48. Among our highest priorities is to erase the default judgment in this case. We

respectfully ask the Court to do that and to give us a chance to defend the claims made against us.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 15, 2010.

Jia Tongchun

# EXHIBIT A

ec 11 05 02:17p    Don Woods              757-333-7633           P.2

FROM : TRIHE GROUP          FAX NO. : 0008530001017    Dec. 02 2005 20:26    P1

# Contract

Contract NO.: SDTH051117A

Date: 17TH, November 2005            Place: TAI'AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

   Address: Dawenkou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

   Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller

agree to sell and the buyer agree to buy the under mentioned commodity

according to the terms and conditions stipulated below.

1. term of delivery: delivery commodity in China port.

| Commodity & specification | Quantity | Unit price FOBLiang Yungang | Total value |
|---|---|---|---|
| Standard gypsum board (T/E) 12.7*1220*3660mm | 100,000 sheets | USD 3.58/sheet | USD358, 000.00 |
| | | | |
| Total | 100,000 sheets | USD 3.58/sheet | USD358, 000.00 |
| Total value of the contract: US DOLLAR Three hundred fifty-eight thousand ONLY | | | |

2. Quality and packing terms: the gypsum board should be produced as per

   relative standard of China GB/T9775-1999, using plastic inner package

   and gypsum pallet. It should be inspected and confirmed by Mr. Phillip W

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

Perry who come from Tobin Trading Inc and represents the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement, stating that they agree to deliver the good. The stating can be regarded as the satisfactions of the buyer with the gypsum boards and packing.   And the stating is the part of the contract.

3. Term of payment: USD128880.00 should be paid in advance, the rest should be by irrevocable letter of credit at sight.

4. The buyer should be in charge of ocean transportation and instance; the ocean freight should be paid at the buyer's end.

5. Force majeure: the seller shall not be hold responsibility for late or non-delivery of the goods owing to the generally recognized "force majeure" cause. However in such case, the seller shall inform the buyer in four working days.

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

7. The fax copies are regarded as valid.

The Seller: Shandong Taihe Dongxin CO., LTD.

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

The buyer: Venture Supply, Inc.

Stamp and signature

Samuel G. Porter
Venture Supply Inc
1140 Azalea Garden Road

# EXHIBIT B

# Inspection    Certificate

DATE: *12 – 16 – 05*

I, appointed by the buyer as its representative, have inspected the goods (3660*1220*12.7mm gypsum board (T/E)) in seller's factory and that they meet buyer's specifications and quality, and that pallets are constructed of gypsum material not subject to insect infestation (no wood), and that the packing meets buyer's requirements.

We agree to transport the goods to Lian Yungang port.

Note: seller:   Shandong Taihe Dongxin Co., Ltd

Buyer:   Venture Supply Inc.

Tobin Trading Inc.

Phillip W. Perry

Signature

# EXHIBIT C

# C o n t r a c t

Contract NO.:SDTH05121601

Date: 16TH December, 2005          Place: TAI'AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

   Address: Dawenkou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

   Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller

agrees to sell and the buyer agrees to buy the under mentioned commodity

according to the terms and conditions stipulated below:

1. Term of delivery: deliver commodity in China port.

| Commodity & Specification | Quantity | Unit Price | Total Value |
|---|---|---|---|
| Standard gypsum board (T/E) 12.7*1220*3660mm | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total value of the contract:US DOLLAR Three hundred sixty-six thousand and eight hundred   ONLY | | | |



2. Quality and packing terms: the gypsum board should be produced as per

the relative standard of China GB/T9775-1999, using plastic inner package,

gypsum pallet, gypsum protecting board and steel belt. It should be

2/2

inspected and confirmed by Mr. Phillip W Perry, who comes from Tobin Trading Inc and representes the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement. The stating can be regarded as the part of the contract.

3. Term of payment: 30% earnest money should be paid in advance, the rest should be by irrevocable letter of credit at sight. We agree to accept the one hundred percent letter of credit for future orders (except this one).

4. The buyer should be in charge of ocean transportation and insurance, the ocean freight should be paid at the buyer's end.

5. Force Majeure: the seller shall not be held responsible for late or non-delivery of the goods owing to the generally recognized "Force Majeure" cause. However in such case, the seller shall inform the buyer in four working days.

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

The seller: Shandong Taihe Dongxin CO., LTD

The buyer: Venture Supply, Inc.

# EXHIBIT D

# Inspection    Certificate

DATE: *3 - 11 - 06*

I, appointed by the buyer as its representative, have inspected the goods (3660*1220*12.7mm gypsum board (T/E)) in seller's factory and that they meet buyer's specifications and quality, and that pallets are constructed not subject to insect infestation (no solid wood), and that the packing meets buyer's requirements.

We agree to transfer the goods to the loading port.

Note: seller:   Shandong Taihe Dongxin Co., Ltd

Buyer:   Venture Supply Inc.

Tobin Trading Inc.

Phillip W. Perry

Signature

# EXHIBIT E

發票　　聯
Counterfoil

137090526307
No. 00008655

2006 年 2 月 24 日填制
Date 2006 Y 2 M 24 D

| 出口企业名称：山东泰和东新股份有限公司 | 出口企业税务登记证号： | 370911720743873 |
| Exporter Name SHANDONG TAIHE DONGXIN CO., LTD | Tax Registration No： | 370911720743873 |

| 出口企业地址：　泰安市岱岳区 | 电话： | 86-538-8812017 传真： 86-538-8812017 |
| Address DAWENKOU TAI'AN CITY CHINA | Tel： | 86-538-8812017 Fax： 86-538-8812017 |

| 成交方式：　　FOB | 提单号：SKSMLYNF000220000号 | SDTH051117A |
| Term of Deliv FOB Lian Yungang | B/L No SKSMLYNF000220000 Contract No： | SDTH051117A |

| 致：<br>To：　VENTURE SUPPLY,INC. | 付款方式： | 30%T/T and 70%L/C |
| | Payment： | 30%T/T and 70%L/C |
| | 装船口岸：　　　　目的地： | |
| | From：　Lian Yungang　To：　NORFOLK U.S.A | |

| 唛头及号码<br>Mark | 品名及规格<br>Description | 数　量<br>Quantity | 单　价<br>UnitPrice | 金　额<br>Amount |
|---|---|---|---|---|
| VENTURE SUPPLY, INC. | GYPSUM BOARD<br>3660*1220*12.7mm | 100000sheets | USD3.58/sheet | USD358000 |

合　计：
TOTAL USD Three hundred fifty-eight thousand only

单位名称：(盖章)
Signature
(本发票手写无效)

Signature
(本发票手写无效)

山东省泰安市出口商品专用发票
Taian Shandong Province Special Invoice for Export

出口 专用
Special Use for Export

存 根 联
Counterfoil

137090626307
No 00012282

2006年 月 20日填制
Date 2006Y M 20D

| 出口企业名称： | 山东泰和东新股份有限公司 | 出口企业税务登记证号： | 370911720743873 |
|---|---|---|---|
| Exporter Name: | SHANDONG TAIHE DONGXIN CO., LTD | Tax Registration No.: | 370911720743873 |
| 出口企业地址： | 泰安市岱岳区 | 电话： 86-538-881201传真： | 86-538-8812679 |
| Address : | DAWENKOU TAI`AN CITY CHINA | Tel： 86-538-881201 Fax： | 86-538-8812679 |
| 成交方式： | FOB 提单号： SKSMLYCA00763000 | | |
| Term of Delivery： | FOB B/L No： SKSMLYCA00763000 No： | | |

致： VENTURE SUPPLY INC

To： VENTURE SUPPLY INC

付款方式： T/T
Payment： T/T

装船口岸：连云港 目的地：美国
From： LIANYUNGANG To： U.S.A

| 唛头及号码 Mark | 品名及规格 Description | 数量 Quantity | 单价 UnitPrice | 金额 Amount |
|---|---|---|---|---|
| N/M | PLASTER BOARD 3660*1220*12.7mm | 53912pcs | USD3.668/pcs | USD197749.22 |

合 计：
TOTAL: USD197749.22

单位名称：(盖章)
Signature

第一联：存根联（填票单位留存）

美国地区法院

路易斯安那州东部区

关于：中国生产的石膏板产品责任诉讼 　 ＊ 　跨地区诉讼第 2047 号

　　　　　　　　　　　　　　　　　　＊ 　L 部分

　　　　　　　　　　　　　　　　　　＊

　　　　　　　　　　　　　　　　　　＊ 　Eldon E. Fallon 法官

　　　　　　　　　　　　　　　　　　＊

　　　　　　　　　　　　　　　　　　＊ 　Joseph C. Wilkinson, Jr. 司法官

　　　　　　　　　　　　　　　　　　＊

＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊

关于：*Germano* 等诉泰山石膏股份有限公司等一案，案件编号第 09-6687 号

中华人民共和国泰安市

### 贾同春的声明

本声明系根据并依照《美国法典》第 28 卷第 1746 条发表。

本人贾同春，根据美利坚合众国法律项下的伪证处罚规定声明，以下陈述真

实、准确：

1. 本人年龄超过十八（18）岁，有资格对本宣誓书所述事宜作证，并且本人知悉该等事
   实。本人的母语是中文。本人不会听、说、读、写英文。本人签署了本声明的中文文
   本，也签署了一份由霍金路伟国际律师事务所为我翻译的本声明的英文翻译件。

2. 本人系泰山石膏股份有限公司（"泰山"）的董事长和总经理。本人于1999年2月2日
   加入泰山，担任厂长职务，后于2002年起担任董事长和总经理职务。

3. 本人加入公司时，公司名称为山东泰和泰山纸面石膏板总厂（集团）。2002年，根据
   中国法律，公司成为一家股份有限公司，并更名为山东泰和东新股份有限公司（"泰
   和"）。2007年，泰和更名为泰山。

4. 泰山为一家中国公司，其主要营业地为中华人民共和国（"中国"）山东省泰安市。

5. 泰山约有1,600名员工，全部在中国境内工作。

6. 泰山自1992年起开始生产纸面石膏板（"石膏板"）。

7. 泰山只在中国境内生产石膏板。

8. 泰山是中国最大的石膏板生产商之一。泰山曾因其出色的经营、公司管理、资源管理及符合环保标准，荣获了很多奖项和赞许。泰山还被中华人民共和国国家质量监督检验检疫总局（"GAQSIQ"）评为"中国名牌"，认可了泰山优异的质量和极高的声誉。另外，泰山还获得了其他质量和环保证书，其中包括国际标准化组织（"ISO"）9001标准（质量管理）认证，ISO14001标准（环境保护）认证，和"中国环境标志"产品认证。

9. 泰山只在中国境内出售石膏板。

10. 泰山从未在弗吉尼亚州生产过任何产品。

11. 泰山从未在弗吉尼亚州出售过石膏板。

12. 泰山从未在弗吉尼亚州营销过其石膏板。

13. 泰山从未在弗吉尼亚州分销过其石膏板或是往弗吉尼亚州运输过石膏板。

14. 泰山从未在弗吉尼亚州作过广告宣传。

15. 泰山从未在弗吉尼亚州提供过任何服务。

16. 泰山在弗吉尼亚州没有办事处，没有任何动产或不动产，也没有租借过任何动产或不动产。

17. 泰山未在弗吉尼亚州开立任何银行账户。

18. 泰山从未在弗吉尼亚州委托过任何代理人接受诉讼书状送达。

2

19. 泰山从未在弗吉尼亚州纳税或产生任何纳税义务。

20. 泰山并未在弗吉尼亚州注册从事业务。

21. 泰山从未在弗吉尼亚州组建过任何实体。

22. 泰山从未在弗吉尼亚州有过任何公司簿册或记录。

23. 泰山在弗吉尼亚州没有邮寄地址或电话号码。

24. 泰山在弗吉尼亚州没有高级职员、董事、员工或代理人。泰山的高级职员、董事、员工或代理人在弗吉尼亚州均无住所或营业地。

25. 泰山的高级职员、董事、员工或代理人均未以商务目的到访过弗吉尼亚州。

26. 大约2005年11月，Tobin Trading Inc.的Phillip Perry与泰山取得联系，问询泰山的石膏板。Perry先生声称代理一家名为Venture Supply Inc.（"Venture Supply"）的弗吉尼亚公司。

27. Perry先生大约在2005年11月份到中国访问泰山。在其首次访问泰山期间，Perry先生代表Venture Supply与泰山经磋商达成了一份销售石膏板的合同。

28. 2005年11月17日签署的首份合同是在中国泰安起草并签署的，随附附件A为该合同的复印件。合同规定，石膏板应依照"中国GB/T9775-1999的相应标准"生产。根据合同条款，Venture Supply在中国购买石膏板，并负责将石膏板运至其要求的目的地。装运前，作为Venture Supply的代表，Perry先生负责在中国检查石膏板并确保质量、规格和包装均符合Venture Supply的要求。泰山则负责遵守合同条款以及依据Venture Supply 的安排在中国交付石膏板。另外，2005年11月17日签署的合同含有仲裁条款，该条款规定，"由本合同引起的所有争议"如无法通过友好协商解决的，

3

应交由中国国际贸易促进委员会对外贸易仲裁委员会（现名为中国国际经济贸易仲裁

委员会（"CIETAC"）仲裁解决。

29. 2005年12月16日，Venture Supply的代理人Perry先生来到泰山，在检验石膏板后同

意将石膏板运至连云港港口。随附附件B为其验货证明书的复印件。Perry先生在验

货证明书中证实其已在中国验货并且货物符合Venture Supply的规格和质量要求。

30. 同日，泰山与Venture Supply签署了第二份合同。随附附件C为该合同的复印件。与

第一份合同一样，该合同亦在中国泰安市磋商并起草。Perry先生代表Venture

Supply在中国泰安市与泰山签署了第二份合同。与第一份合同一样，第二份合同规

定在中国出售石膏板，并要求Venture Supply负责安排运输以及相关费用。同样，第

二份合同要求Perry先生在泰山工厂和中国装货港验货，以确保质量、规格和包装均

符合Venture Supply的要求。与第一份合同一样，该合同亦含有仲裁条款，指定在中

国由CIETAC仲裁解决任何因该合同而引起的主张。

31. 2006年3月11日前后，Perry先生再次来到泰山检验石膏板并同意将石膏板运至装货

港。随附附件D为其验货证明书的复印件。同样，Perry先生在该份验货证明书中证

实其已在中国检验石膏板并且石膏板符合买方的规格和质量要求。

32. 根据上述两份合同，Venture Supply负责将石膏板运送至最终目的地，另外还负责石

膏板的所有权在中国转移至Venture Supply后的保险事宜。

33. 在中国港口交付石膏板之后，泰山与该等石膏板就再无关系。对于泰山在中国依据该

等合同供应的石膏板是否被分销到弗吉尼亚州或在弗吉尼亚州使用，泰山毫不知情。

34. 随附附件E为Venture Supply采购石膏板的山东省泰安市出口商品专用发票汇总。该

等发票系由泰山为税务目的在Venture Supply交易完成后开具的。该发票显示

4

Venture Supply 在中国从泰山总计购买了 153,912 张石膏板。 发票也列明交付条款为"FOB"，即 Venture Supply 在中国采购石膏板，并负责安排装运至其要求的目的地并支付费用。

35. 泰山的员工或代表从未为 Venture Supply 合同或石膏板业务相关的其他事项而访问过弗吉尼亚州。

36. 除与 Venture Supply 签署的两份合同外，泰山未与位于弗吉尼亚州的任何其他实体签订过任何其他合同。泰山也未与专向弗吉尼亚州供应石膏板的公司签订过任何其他合同。

37. Venture Supply 将石膏板货款均付到了泰山在中国的银行账户内。

38. 泰山和 Venture Supply 的两笔交易都发生在中国。这是泰山向在美国的客户出售石膏板的唯一交易。

39. 泰安泰山纸面石膏板有限公司（"TTP"）是于 2006 年 2 月成立的泰山全资子公司。TTP 只在中国生产和销售石膏板。TTP 并未与任何位于弗吉尼亚州的公司签订过任何合同。TTP 与弗吉尼亚州没有任何的联系接触。

40. 鉴于泰山与弗吉尼亚州没有联系，以及以下提及的其他原因，本人代表泰山恳请贵法院谅解泰山未在本案审判中应诉。

41. 泰山并非有意冒犯法庭或挑战其权威。鉴于泰山与弗吉尼亚州没有接触，以及以下提及的其他原因，泰山当时真的认为泰山没有必要应诉。

42. 泰山从未在美国或世界上其他国家牵涉入该种性质的诉讼。对于弗吉尼亚州或美国的诉讼程序，泰山没有任何经验和知识可言。

43. 泰山员工所掌握的英语程度也无法达到能够阅读并理解以英文书写的法律文书的水平。因此，发往泰山的仅以英文书写的法律文书均未经泰山仔细探究，故而泰山并不理解不对经修订的起诉书做出回应的后果。

44. 泰山员工对美国司法程序一无所知，也无法理解美国诉讼中所提出的权利主张的性质或后果。即使相关文件翻译成中文，这一问题依然存在。

45. 泰山仅从中国法院收到本案相关的一份文件，即经修订的起诉书。中国法院并未向泰山提供任何其他文件，并且泰山到目前为止尚未收到与本案相关的任何其他中文文件。

46. 在收到本案的经修订的起诉书时，泰山并不理解本案怎么会有可能直接牵涉到泰山。因为泰山仅在中国销售石膏板，从未在美国销售过任何石膏板。泰山在中国向Venture Supply销售石膏板的事宜受仲裁条款管辖，该条款规定合同争议在中国通过仲裁解决。泰山在中国将石膏板交付给Venture Supply后，便不再与其出售给Venture Supply的石膏板有任何牵连。泰山遵守了其合同义务，并且没有理由认为泰山的石膏板有任何质量问题。

47. 泰山现在意识到法院已做出缺席判决，为了公司的声誉，泰山不得不进行抗辩，并申请撤销该份判定泰山产品存在缺陷的判决。泰山在美国聘请了律师，并认定有必要应诉并参加本案诉讼。泰山下定决心在本案中应诉，从而对贵法院的司法管辖权提出异议以及在其他方面为其进行必要的辩护。

6

48. 泰山的当务之急是寻求撤销本案的缺席判决。泰山恳请贵法院撤销缺席判决，让泰山有机会针对提出的诉求进行抗辩。

本人根据美利坚合众国法律项下的伪证处罚规定声明，上述内容真实、准确。

签署于 2010 年 8 月 15 日。

贾同春

附件 A

ec 11 05 02:17p     Don Woods                    757-333-7633              p.2

FROM : PRIME GROUP            FAX NO. :            Dec. 02 2005 20:25   P1

# Contract

Contract NO.: SDTH051117A

Date: 17TH,November 2005                Place: TAI'AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

   Address: Dawenkou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

   Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller

agree to sell and the buyer agree to buy the under mentioned commodity

according to the terms and conditions stipulated below.

1.term of delivery: delivery commodity in China port.

| Commodity & specification | Quantity | Unit price FOBLiang Yungang | Total value |
|---|---|---|---|
| Standard gypsum board (T/E) 12.7*1220*3660mm | 100,000 sheets | USD 3.58/sheet | USD358,000.00 |
| | | | |
| Total | 100,000 sheets | USD 3.58/sheet | USD358,000.00 |
| Total value of the contract: US DOLLAR Three hundred fifty-eight thousand ONLY | | | |

2. Quality and packing terms: the gypsum board should be produced as per

relative standard of China GB/T9775-1999, using plastic inner package

and gypsum pallet. It should be inspected and confirmed by Mr. Phillip W

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

Perry who come from Tobin Trading Inc and represents the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement, stating that they agree to deliver the good. The stating can be regarded as the satisfactions of the buyer with the gypsum boards and packing.   And the stating is the part of the contract.

3. Term of payment: USD128880.00 should be paid in advance, the rest should be by irrevocable letter of credit at sight.

4. The buyer should be in charge of ocean transportation and instance; the ocean freight should be paid at the buyer's end.

5. Force majeure: the seller shall not be hold responsibility for late or non-delivery of the goods owing to the generally recognized "force majeure" cause. However in such case, the seller shall inform the buyer in four working days.

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

7. The fax copies are regarded as valid.

The Seller: ShanDong TaiHe DongXin CO. LTD

The buyer: Venture Supply, Inc.
Stamp and signature

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

Samuel G. Porter
Venture Supply Inc
1140 Azalea Garden Road
N A...

附件 **B**

# Inspection    Certificate

DATE:  *12 - 16 - 05*

I, appointed by the buyer as its representative, have inspected the goods (3660*1220*12.7mm gypsum board (T/E)) in seller's factory and that they meet buyer's specifications and quality, and that pallets are constructed of gypsum material not subject to insect infestation (no wood), and that the packing meets buyer's requirements.

We agree to transport the goods to Lian Yungang port.


Note: seller:   Shandong Taihe Dongxin Co., Ltd

Buyer:   Venture Supply Inc.


Tobin Trading Inc.

Phillip W. Perry

Signature

附件 C

# Contract

Contract NO.:SDTH05121601

Date: 16TH December, 2005          Place: TAI'AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

   Address: Dawenkou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

   Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller

agrees to sell and the buyer agrees to buy the under mentioned commodity

according to the terms and conditions stipulated below:

1. Term of delivery: deliver commodity in China port.

| Commodity & Specification | Quantity | Unit Price | Total Value |
|---|---|---|---|
| Standard gypsum board (T/E) 12.7*1220*3660mm | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total value of the contract:US DOLLAR Three hundred sixty-six thousand and eight hundred   ONLY | | | |



2. Quality and packing terms: the gypsum board should be produced as per

the relative standard of China GB/T9775-1999, using plastic inner package,

gypsum pallet, gypsum protecting board and steel belt. It should be

2/2

inspected and confirmed by Mr. Phillip W Perry, who comes from Tobin Trading Inc and representes the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement. The stating can be regarded as the part of the contract.

3. Term of payment: 30% earnest money should be paid in advance, the rest should be by irrevocable letter of credit at sight. We agree to accept the one hundred percent letter of credit for future orders (except this one).

4. The buyer should be in charge of ocean transportation and insurance, the ocean freight should be paid at the buyer's end.

5. Force Majeure: the seller shall not be held responsible for late or non-delivery of the goods owing to the generally recognized "Force Majeure" cause. However in such case, the seller shall inform the buyer in four working days.

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

The seller: Shandong Taihe
Dongxin CO., LTD

The buyer: Venture Supply, Inc.

附件 D

# Inspection    Certificate

DATE:  *3 ⌐ 11 ⌐ 06*

I, appointed by the buyer as its representative, have inspected the goods (3660*1220*12.7mm gypsum board (T/E)) in seller's factory and that they meet buyer's specifications and quality, and that pallets are constructed not subject to insect infestation (no solid wood), and that the packing meets buyer's requirements.

We agree to transfer the goods to the loading port.

Note: seller:    Shandong Taihe Dongxin Co., Ltd

Buyer:    Venture Supply Inc.

Tobin Trading Inc.

Phillip W. Perry

Signature

附件 **E**

存 根 联
Counterfoil

137090526307
No.00008655

2006 年 2 月 24 日填制
Date 2006 Y 2 M 24 D

| | |
|---|---|
| 出口企业名称：山东泰和东新股份有限公司 | 出口企业税务登记证号： 370911720743873 |
| Exporter Name SHANDONG TAIHE DONGXIN CO., LTD | Tax Registration No: 370911720743873 |
| 出口企业地址： 泰安市岱岳区 | 电话： 86-538-8812017 传真： 86-538-8812017 |
| Address DAWENKOU TAI AN CITY CHINA | Tel： 86-538-8812017 Fax： 86-538-8812017 |
| 成交方式： FOB | 提单号：SKSMLYNF00022050 合同号： SDTH051117A |
| Term of Deliv FOB Lian Yungang B/L No SKSMLYNF00022000 Contract No： SDTH051117A |  |

付款方式：
Payment: 30%T/T and 70%L/C

致：
To: VENTURE SUPPLY,INC.

装船口岸： 目的地：
From： Lian Yungang To： NORFOLK U.S.A

| 唛头及号码 Mark | 品名及规格 Description | 数量 Quantity | 单价 UnitPrice | 金额 Amount |
|---|---|---|---|---|
| VENTURE SUPPLY, INC. | GYPSUM BOARD 3660*1220*12.7mm | 100000sheets | USD3.58/sheet | USD358000 |

合 计：
TOTAL USD Three hundred fifty-eight thousand only

单位名称：(盖章)
Signature
(本发票手写无效)

Signature
(本发票手写无效)

第一联：存根联（填票单位留存）

山东省泰安市出口商品专用发票
Taian Shandong Province Special Invoice for Export

| 出口专用 |
|---|
| Special Use for Export |

存　根　联
Counterfoil

137090626307
No 00012282

2006年　丹　20日填制
Date 2006Y　7M　20D

| 出口企业名称：　山东泰和东新股份有限公司 | 出口企业税务登记证号：　370911720743873 |
|---|---|
| Exporter Name  SHANDONG TAIHE DONGXIN CO., LTD | Tax Registration No:　370911720743873 |
| 出口企业地址：　泰安市岱岳区 | 电话：　86-538-881201  传真：　86-538-8812679 |
| Address：DAWENKOU TAI`AN CITY CHINA | Tel：　86-538-881201 Fax：　86-538-8812679 |
| 成交方式：　FOB　提单号：SKSMLYCA00765000 | |
| Term of Delivery：　FOB　B/L No: SKSMLYCA00765000  No: | |
| 致：　VENTURE SUPPLY INC | 付款方式：　T/T |
| To：　　VENTURE SUPPLY INC | Payment：　T/T |
| | 装船口岸 连云港　目的地：英国 |
| | From：　LIANYUNGANG  To：　U.S.A |

| 唛头及号码<br>Mark | 品名及规格<br>Description | 数量<br>Quantity | 单价<br>UnitPrice | 金额<br>Amount |
|---|---|---|---|---|
| N/M | PLASTER BOARD<br>3660*1220*12.7mm | 53912pcs | USD3.668/pcs | USD197749.22 |

合计：
TOTAL：USD197749.22

￥1581123662

单位名称：(盖章)
Signature

第一联：存根联（填票单位留存）

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED          *  MDL No. 2047
DRYWALL PRODUCTS LIABILITY           *
LITIGATION                           *  SECTION L
                                     *
                                     *  JUDGE ELDON E. FALLON
                                     *
                                     *  MAGISTRATE JUDGE
                                     *  JOSEPH C. WILKINSON, JR.
                                     *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* *

THIS DOCUMENT RELATES TO: *Germano, et al. v. Taishan Gypsum Co.,
Ltd., et al., Case No. 09-6687*

PEOPLE'S REPUBLIC OF CHINA

CITY OF SHANGHAI

### DECLARATION OF YUEN HIU SUM

This is a declaration being made in accordance with and pursuant to
28 U.S.C. § 1746.

I, Yuen Hiu Sum, declare under penalty of perjury under the laws of
the United States of America that the following statements are true and correct:

1.    I am over eighteen (18) years of age, am competent to testify to
the matters contained herein, and have personal knowledge of these facts.

2.    I am a senior translator with the law firm of Hogan Lovells
International LLP, and work in the firm's office in Shanghai, China.

3.    I am fluent in the languages of Chinese and English.

4. Based upon my ability to speak, read, and write Chinese and English fluently, I have been responsible for translating various communications and documents relating to the above-captioned lawsuit.

5. Among the documents I have translated is the Declaration of Jia Tongchun, Chairman of the Board and General Manager of Taishan Gypsum Co., Ltd., which is being filed in support of Taishan Gypsum Co. Ltd.'s Motion to Vacate the Default Judgment and Dismiss the Complaint.

6. I hereby certify that I translated the Declaration between the English and Chinese languages. I further certify that the English version of the Declaration is a true and accurate translation of the Chinese version of the Declaration. I also certify that the English version of the Declaration and the Chinese version of the Declaration, both of which Jia Tongchun signed, are accurate translations of one another.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 2, 2010.

Yuen Hiu Sum