UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEAN and DAWN AMATO, individually, and on behalf of all others similarly situated** | CASE NO.: 2:09-md-02047 |
| **Plaintiffs,** | CLASS ACTION COMPLAINT |
| Versus | JURY TRIAL DEMAND |
| **LIBERTY MUTUAL INSURANCE COMPANY et al** | |
| **Defendants.** | |

_____

**MEMORANDUM IN SUPPORT OF BITUMINOUS CASUALTY CORPORATION'S MOTION FOR SUMMARY JUDGMENT
(ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT)**

MAY IT PLEASE THE COURT:

Bituminous Casualty Corporation ("Bituminous") respectfully moves this Court to enter Summary Judgment in its favor on the ground that there are no genuine issues of material fact, and mover is entitled to judgment as a matter of law pursuant to Rule 56, for the reasons listed below, and as set forth in the Motion for Summary Judgment and the attached exhibits, including the Amended Omnibus Class Action Complaint; the affidavit of Christine Kruse (with the attached Certified Insurance Policies); and the deposition of Clayton C. Geary and James F. Geary, Sr., as Joint 30(B)(6) representatives of Interior Exterior Building Supply, LP.

### I.     BACKGROUND

Plaintiff's Class Action Complaint identifies Interior Exterior Building Supply, LP and Interior Exterior Enterprises, LLC ("Interior Exterior") as

1

Insured/Distributor/Supplies/Importer/Exporter/Broker Defendants. (Doc. 3132; par. 540 and 541; Schedule 1, pgs. 10-90). Plaintiffs alleged "Facts Regarding Chinese Drywall Product" are set forth at paragraph 623 – 636. Plaintiffs allege the Insured Defendants Chinese drywall has damaged the plaintiffs' "bodies, personal property, and structures". (Par. 627) Plaintiffs seek declinatory relief mandating coverage by the Insurance Company Defendants, and have filed a direct action for damages against the Insurance Company Defendants.

## II. STATEMENT OF FACTS

Interior Exterior allegedly imported and distributed Chinese drywall, which was installed on plaintiffs' property and/or damaged plaintiffs' bodies, personal property, and structures. The plaintiffs have set forth their "alignment of the representative Plaintiffs, the Insured Defendants, and the Insurance Company Defendants…in Schedule 1 for each Subclass…" (Doc. 3132; par. 6). Schedule 1 identifies Bituminous (and six other insurance companies) as allegedly insuring Interior Exterior for these Chinese drywall claims.

As established by the attached affidavit and certified insurance policies, Bituminous issued to two insurance policies to Interior Exterior. The last policy issued by Bituminous to Interior Exterior, policy number CLP3155825, is identified by plaintiffs as the basis on which Bituminous has been sued. (Doc. 3132; Omni V – Schedule 2, pg. 5).

<u>Policy number CLP3155825 had a policy period of December 31, 2002 to December 31, 2003.</u>

<u>Interior Exterior first received a shipment of Chinese drywall in January 2006</u>.

(Deposition of Clayton Geary and James Geary, pgs. 50, 51, and 313:

> Q: Okay. Did anything from China get to the U.S. before 2006, to the best of your recollection?
>
> A: No.
>
> Q: Do you know when in 2006 was the first shipment?
>
> A: It was around January 26.
>
> Q: And that was the first time that Interior/Exterior ever received any drywall that was manufactured in China?
>
> A: Yes.  (pgs. 50 and 51, Geary/Interior Exterior deposition)
>
> *****
>
> Q: Okay. Let me make sure I just kind of understand a few things from a big – picture standpoint.  The first shipment that ya'll actually received of Chinese drywall was in January '06; is that right?
>
> A: Yes.  (pg. 313, Geary/Interior Exterior deposition)

### III.    SUMMARY JUDGMENT STANDARD

"Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." *Crawford v Formosa Plastic Corp.*, 234 F.3d 899, 902 (5th Cir. 2000)(citing Fed. R. Civ. P. 56[c]). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson v Liberty Lobby, Inc.* 477 U.S. 242, 248 [1986].)

The moving party initially bears the burden of demonstrating the lack of a genuine issue of material fact.  *Id.*  See also *Phillips Oil Co. v OKC Corp.* 812 F.2d 265, 272 (5th Cir. 1987).  Once the moving party satisfies its burden, the opponent must

3

establish that a genuine issue of material fact exists for trial. If it fails to do so, the court must grant the motion. *Id.*

"Summary judgment is also proper if the party opposing the motion fails to establish an essential element in his case." *Celotex Corp. v Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must do more than simply deny the allegations raised by the moving party. See *Donaghey v Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992); Bradley v Allstate Ins. Co., 606 F.3d 215 C.A. 5 (La.), 2010.

Louisiana Law on Interpretation of Insurance Contracts

The U.S. Fifth Circuit of Appeals recently detailed Louisiana law on interpretation of insurance contracts in *In Re Katrina Canal Breaches Litigation*, 495 F.3d 191, at 206-208 (5th Cir. 2007):

> Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in Louisiana Civil Code." *Cadwallader v Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003). The Louisiana Civil Code provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE ANN. Art. 2045 (1987); *see also Cadwallader*, 848 So.2d at 580; *La. Ins. Guar. Assoc. v Interstate Fire & Cas. Co.*, 630 So2d 759, 763 (La. 1994). An insurance contract must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." LA. REV. STAT. ANN § 22:654 (2004). Interpretation of an insurance contract generally involves a question of law. *Bonin v Westport Ins. Corp.,* 930 So.2d 906, 910 (La. 2006) (citing *Robinson v Heard*, 809 So.2d 943, 945 [La. 2002]); *see also La. Ins. Guar. Assoc.* 630 So.2d at 764.
>
> "The words of a contract must be given their generally prevailing meaning." LA. CIV. CODE ANN. Art 2047 (1987); *see also Cadwallader*, 848 So.2d at 580. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. Art. 2046 (1987). "If the policy wording at issue is clear and unambiguously

expresses the parties' intent, the insurance contract must be enforced as written." *Cadwallader*, 848 So2d at 580.

The issue of whether an insurance policy provides or precludes coverage is a dispute which can be properly resolved within the framework of a motion for summary judgment. The interpretation of an insurance contract presents a legal question which can usually be solved by summary judgment. *Townsend v State Farm Mutual Automobile Insurance Company*, 793 So.2d 473,476 (La. App. 2d Cir. 8/22/01), *writ denied*, 804 So.2d 635 (La. 2001). When a contract can be construed from the four corners of the instrument, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. *Peterson v Schimek*, 279 So.2d 1024, 1029 (La. 1999).

In the absence of conflict with statutes or public policy, insurers have the same rights as individuals to limit their liability and to enforce whatever conditions they please upon their obligations, and in such event, unambiguous provisions in an insurance contract limiting liability must be given effect. *Oceanonics, Inc. v Petrolum Distributing Co.*, 292 So2d 190 (La. 1974). Policy provisions which limit an insurer's liability or place restrictions on policy obligations should be enforced unless they conflict with statutes or public policies. *Pareti v Sentry Indem. Co.*, 536 So.2d 417 (La. 1978).

An insurance contract has the effect of law between parties, and an insurer has the right to limit terms and conditions of its coverage as it sees fit. *Trahan v Savage Industries, Inc.*, 692 So.2d 490, 497 (La. App. 3rd Cir. 3/5/97). The fact that an insurance policy is a complex instrument requiring analysis does not render it ambiguous. *Rando III v Top Notch Properties, L.L.C.*, 879 So.2d 821, 2003-1800 (La. App. 4 Cir. 6/2/04). The rule of strict construction of an insurance policy in favor of the

5

insured does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists; it also does not authorize the court to make a new contract for the parties or disregard the evidence as expressed or to refine away terms of a contract expressed with sufficient clearness to convey the meaning of the parties. *Id. at 825.*

### IV.  Argument

The plaintiffs assert claims arising from damages allegedly caused by Chinese drywall imported and distributed by Interior Exterior.  Interior Exterior first imported Chinese drywall in January 2006.

Bituminous issued two insurance policies to Interior Exterior.  The last policy issued by Bituminous to Interior Exterior (identified in Schedule 2 of plaintiffs' complaint) was policy number CLP3155825.  This policy was in effect December 31, 2002 to December 31, 2003, as confirmed by the Affidavit of Christine Kruse and the certified insurance policy itself.

Bituminous did not have an insurance policy in effect insuring Interior Exterior in 2004, 2005, 2006, 2007, or any time since.  The last date that Interior Exterior was insured by Bituminous was more than two years before Interior Exterior first began importing Chinese drywall.  Thus, at the time Interior Exterior imported Chinese drywall and at all times thereafter, Interior Exterior was not insured by Bituminous.  Section 1 – Coverages of policy number CLP3155825 provides:

    **1.**    **Insuring Agreement**
        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

*****

6

>    **b.**   This insurance applies to "bodily injury" and "property damage" only if:
>    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>    **(2) The "bodily injury" or "property damage" occurs during the policy period.**  (emphasis added)
> *****

The Bituminous policy is clear that no coverage will be provided for damage that did not occur during the policy period. The policy period of policy number CLP3155825 ended <u>more than two years before Interior Exterior imported any Chinese drywall</u>. The plaintiffs' damages could not have occurred during the policy period of any insurance policy issued by Bituminous to Interior Exterior.

Louisiana courts have generally adopted the manifestation theory regarding the trigger of coverage in property damage cases. *Oxner v Montgomery*, 794 So.2d 86 (La. App. 2 Cir. 2002). As observed by the *Louisiana Insurance Law Treatise* "Generally, if the date the damage occurred is known, the courts of appeal are finding that the policy in effect on that date is triggered; and if the damage is latent, the policy in effect when the damage becomes manifest is triggered". (*Louisiana Civil Law Treatise, Insurance Law and Practice*, Third Edition, Section 184, 2010 Supplement.)

Even if Plaintiffs attempt to argue that because they allege bodily injury, an exposure trigger of coverage should apply to those claims, Bituminous' motion still should be granted. Interior Exterior did not import any Chinese drywall until January 2006. The plaintiffs were not exposed to Chinese drywall imported by Interior Exterior at any time prior to January 2006 – and they were certainly not exposed to Chinese drywall imported by Interior Exterior at any time that defendant was insured by Bituminous.

## V.  CONCLUSION

The plaintiffs' complaint alleges damage to plaintiffs' bodies, personal property, and structures resulting from Chinese drywall allegedly imported and distributed by Interior Exterior.  Interior Exterior first imported Chinese drywall in January 2006, about five months post-Katrina.  Bituminous' last policy issued to Interior Exterior expired in 2003.  Bituminous was not the insurer of Interior Exterior when Interior Exterior allegedly imported Chinese drywall, nor at any time after that drywall was distributed and installed on plaintiffs' property.

In the alternative, and only in the event Bituminous' Motion for Summary Judgment is not granted, Bituminous requests its Motion for More Definite Statement be sustained ordering plaintiffs to explain in detail any basis on which they could have been exposed to Chinese drywall (imported by Interior/Exterior) during the Bituminous policy period.  As that is foreclosed by the facts, Bituminous respectfully requests summary judgment in its favor, dismissing Bituminous with prejudice from plaintiffs' complaint.

Respectfully submitted,

BY:  /s/ Robert W. Robison, Jr.
William E. Scott, TA (#11886)
Robert W. Robison (#24630)
WATSON BLANCHE WILSON & POSNER
P. O. Box 2995
505 North Blvd.
Baton Rouge, LA  70821
Telephone:    225-387-5511
Facsimile:    225-387-5972
Email:    wscott@wbwplaw.com
             rrobison@wbwplaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system and has been sent to all counsel of record via e-mail through the court's electronic filing system on this 3rd day of September, 2010.

                        /s/ Robert W. Robison, Jr.
                        ROBERT W. ROBISON, JR.