

"It is hereby certified that this
is an exact copy of original
policy No. _CLP 3130481_
issued to the named insured."

*Craig Carsten*
Home Office Underwriting

# COMMERCIAL LINES
# POLICY

Member of the Old Republic Insurance Group

CAPITAL STOCK INSURANCE COMPANIES - 320 18TH STREET - ROCK ISLAND, ILLINOIS 61201

CLP 3 130 481

NEW ORLEANS
BR

## BITUMINOUS BRANCH AND CLAIM OFFICES

3000 Riverchase Galleria
Suite 605
**Birmingham, AL** 35244
    Tel:  (205) 988-9890
         (800) 356-8720 (toll free)
    Fax: (205) 988-0129

P.O. Box 2031
**Montgomery, AL** 36102
    Tel:  (334) 263-0288
         (800) 239-7400
    Fax: (334) 265-0818

P.O. Box 25326
**Little Rock, AR** 72221-5326
    Tel:  (501) 224-3080
         (800) 876-8147 (toll free)
    Fax: (501) 224-8147

2310 Parklake Dr., N.E.
Suite 550
**Atlanta, GA** 30345-2904
    Tel:  (770) 934-9010
         (800) 822-2905 (toll free)
    Fax: (770) 934-3734

1268 Timberlane Road, Ste. D
**Tallahassee, FL** 32312
    Tel:  (850) 894-4777
         (800) 678-3104 (toll free)
    Fax: (850) 894-4770

P.O. Box 65605
**West Des Moines, IA** 50265-0605
    Tel:  (515) 223-1122
         (800) 383-1122 (toll free)
    Fax: (515) 223-4315

1600 4th Avenue, 3rd Floor
**Rock Island, IL** 61201-8632
    Tel:  (309) 788-9361
         (800) 592-8991 (toll free)
    Fax: (309) 788-9366

P.O. Box 42608
**Indianapolis, IN** 46242-0608
    Tel:  (317) 243-6721
         (800) 382-9991 (toll free)
    Fax: (317) 241-8922

## BITUMINOUS HOME OFFICE
320 - 18th Street
Rock Island, IL  61201

**TELEPHONE NUMBER (309) 786-5401**

**TOLL FREE NUMBER 1-800-475-4477**

P.O. Box 7567
**Louisville, KY** 40257-0567
    Tel:  (502) 426-9400
         (800) 633-0607 (toll free)
    Fax: (502) 426-4787

P.O. Box 19994
**New Orleans, LA** 70179-0994
    Tel:  (504) 837-5480
         (800) 605-0311 (toll free)
    Fax: (504) 831-0720

P.O. Box 509
**Lutherville, MD** 21094-0509
    Tel:  (410) 321-7670
         (800) 346-5108 (toll free)
    Fax: (410) 296-7413

27777 Franklin Road, Ste. 1160
**Southfield, MI** 48034-2367
    Tel:  (248) 352-8052
         (800) 356-8727 (toll free)
    Fax: (248) 352-8637

P.O. Box 718
**Shawnee Mission, KS** 66201-0718
    Tel:  (913) 262-4664
         (800) 821-5354 (toll free)
    Fax: (913) 262-0997

10733 Sunset Office Drive, Ste. 430
**St. Louis, MO** 63127-1033
    Tel:  (314) 822-4446
         (800) 723-8632 (toll free)
    Fax: (314) 822-9850

P.O. Box 1417
**Mt. Vernon, IL** 62864
    Tel:  (618) 244-1219
         No 800 Number
    Fax: (618) 244-1379

15720 John J. Delaney Dr., Ste. 200
**Charlotte, NC** 28277-2747
    Tel:  (704) 341-3725
         (800) 642-2507
    Fax: (704) 341-3775

Grand Centre Office Bldg., Ste. 545
5400 N. Grand Blvd.
**Oklahoma City, OK** 73112
    Tel:  (405) 947-0809
         (800) 947-0809 (toll-free)
    Fax: (405) 947-1006

Foster Plaza Five
651 Holiday Drive
**Pittsburgh, PA** 15220-2757
    Tel:  (412) 937-9000
         (800) 253-1232 (toll free)
    Fax: (412) 937-1143

P.O. Box 10347
**Knoxville, TN** 37939-0347
    Tel:  (865) 588-8157
         (800) 374-2318 (toll free)
    Fax: (865) 558-8658

P.O. Box 291689
**Nashville, TN** 37229-1689
    Tel:  (615) 871-9042
         (800) 342-5786 (toll free)
    Fax: (615) 871-0783

16225 Park Ten Place, Suite 430
**Houston, TX** 77084
    Tel:  (281) 398-2208
         (800) 462-8999 (toll-free)
    Fax: (281) 398-2211

P.O. Box 167968
**Irving, TX** 75016-7968
    Tel:  (972) 506-9591
         (800) 683-9591 (toll free)
    Fax: (972) 556-1539

1031 Andrews Highway, Ste. 401
**Midland, TX** 79701-3873
    Tel:  (915) 689-2114
         (800) 849-9305 (toll free)
    Fax: (915) 697-3279

8023 Vantage Drive, Ste. 900
**San Antonio, TX** 78230-4752
    Tel:  (210) 340-8199
         (888) 857-8031
    Fax: (210) 340-8171

7201 Glen Forest Dr., Ste. 200
**Richmond, VA** 23226-3759
    Tel:  (804) 282-7641
         (800) 552-0101 (toll free)
    Fax: (804) 282-2433

3333 N. Mayfair Road, Ste. 104
**Milwaukee, WI** 53222-3226
    Tel:  (414) 476-5440
         (800) 242-6258 (toll free)
    Fax: (414) 476-8887

**BITUMINOUS**
Insurance Companies

Bituminous Casualty Corporation
Bituminous Fire and Marine Insurance Company

# NOTICE
# PRIVACY STATEMENT

Bituminous Insurance Companies is strongly committed to protecting the confidentiality of our customers' non-public personal information. We collect information about our customers on a routine basis. The collection of this information is necessary to effect, administer, or enforce a transaction that you, our customer, have authorized. Even after our business relationship ends, your personal information remains confidential. This notice describes our privacy policy and explains how we treat the information we receive about you.

Information about you is collected through your application for insurance or submission of a claim. This information may include but is not limited to:

**Identification Information** - such as name, address, Social Security Number, employer identification number, date of birth, age and gender.

**Personal Financial Information** - such as credit history, bank account information, employment history, wage history and bankruptcy information.

**Medical Information** - such as a physician's diagnosis and injury information.

**Other Information** - such as motor vehicle reports, courthouse records, police/fire reports and reports from government agencies (i.e., Department of Transportation/Environmental Protection Agency).

## How We Use Your Information:

We use the information about you to conduct normal business activities as requested by you, our customer. Normal business includes servicing or processing an insurance product or service requested by you. Underwriting of your insurance coverage and processing claims on your coverage are normal business activities in which we engage.

## How We Disclose Your Information:

We may disclose information necessary to conduct normal business activity or activities required by law or regulation. Information may be disclosed to others to enable them to provide a business service to us. Examples of this situation would be outside medical payment review, independent adjusters servicing claims, and data gathering organizations needing information for establishing rates. Information may also be sent to regulatory agencies, state insurance departments, or law enforcement agencies for the prevention of fraud. We may make other disclosures of information as permitted or required by law within the scope of normal business activities.

We do not make disclosures of information for the purpose of cross-selling or marketing nonaffiliated third parties' products or services. For example, we do not and will not sell your name to a mail order catalog company or other marketing ventures.

## How We Protect and Secure Information:

Access to your non-public personal information is restricted to those who need to know your information to provide products or services to you. Our employees are required to protect and maintain the confidentiality of your information. Employees must follow and comply with established policies and procedures regarding customer privacy. We maintain physical, electronic and procedural safeguards to secure your nonpublic personal information.

## Former Customers:

The above privacy statement remains in force when a customer relationship no longer exists with you. Bituminous Insurance Companies will always keep your nonpublic personal information confidential.

## Questions:

If you have any questions regarding this privacy statement, please contact our privacy coordinator at 1-800-475-4477.

GU-3076 (05/01)

## BITUMINOUS
### Insurance Companies

| Your Bituminous policy premium was estimated at issuance. | Actual premium is determined at policy expiration. |
|---|---|

## WHY IS AN AUDIT NECESSARY?

This policy was issued with an "estimated premium" which requires an adjustment after the policy expires. The estimated premium for this type of policy is usually based on the amount of payroll, sales or subcontractor cost incurred during the term of the policy.

After the policy expires and the actual amount of the payroll, sales or cost can be determined, the estimated premium is adjusted to develop the final premium. If the adjusted premium is less than the estimated premium, the difference will be refunded. If it is more, you will receive a bill for the additional premium.

## WHO WILL MAKE THE AUDIT?

When the policy expires, either a Premium Auditor will make an appointment with you to review the records that pertain to your company payrolls and other exposures covered by your policy(ies) with Bituminous or a Policyholder's Report will be mailed to you for completion.

Premium Auditors are knowledgeable in both accounting and insurance and will obtain the necessary information to make the premium adjustment with a minimum of inconvenience to your staff.

## WHAT WILL THE PREMIUM AUDITOR DO?

The Premium Auditor will examine your books of original entry and ledger accounts that pertain to the variable factors on which the premium is based. The payroll portion of the audit will normally be verified to your quarterly tax reports. Additionally, during the course of the audit, the Auditor may also ask some questions about your records and personally observe the various operations of your business.

### Automated Records

If your records are automated, or if they will be automated in the near future, the Premium Auditor will be pleased to assist you in setting up your records to include insurance requirements.

### Premium Base

The most common premium bases are total remuneration (payroll), gross sales and total subcontractor cost. A rate is applied to the premium base to develop the premium. The premium base used is determined by the type of policy and by the type of business being insured.

Remuneration is the total gross earnings of your employees. If any of your employees earned overtime during the year, the premium auditor may be able to deduct part of the overtime payroll. See "Overtime" below for further details.

Gross sales is the gross amount charged by you for your products, services or rentals.

Total subcontractor cost is the cost to you of all work you let or sublet, including the cost of materials and equipment you furnished to your subcontractors.

### Overtime

In most states the penalty portion of overtime payroll, or the amount paid in excess of the regular rate of pay, is excluded from the total payroll on which the premium is based.

You must, however, maintain your records to show separately, by employee and in summary by type of work, the amount of overtime paid.

Overtime deductions under workers compensation currently are not applicable in the states of Delaware, Pennsylvania, Utah and to Stevedoring Operations.

### Payroll Segregation

Insurance rates differ by type of work performed. The Premium Auditor must place each employee in the proper occupational category or insurance classification approved by the state. Since each classification has a different premium rate, proper placement is important.

By segregating your employee payroll records by type of work, you should receive a more prompt and equitable premium adjustment.

## SUBCONTRACTORS - PREMIUM CHARGES

### Workers Compensation

You may be held responsible when a subcontractor's employee is injured. Most Workers Compensation laws provide that the general or principal contractor shall be responsible for compensation to employees of subcontractors.

For this reason it is important that each subcontractor you use furnish you with certificates of insurance. Failure to secure a subcontractor's certificate of insurance will result in an additional premium charge.

The premium auditor will ask to see these certificates of insurance as proof that each subcontractor was insured.

### General Liability

Your general liability policy may contain a classification with rates based on operations performed for you by adequately insured subcontractors.

If any of your subcontractors do not have proof of adequate insurance, we will charge for the subcontractors without adequate insurance as if they were your employees. This usually means that a higher rate will be charged to you. It is important for you to verify the limits of insurance carried by your subcontractors by securing a certificate of insurance from each and every one of them.

We consider adequate insurance for your subcontractors to be limits of insurance of at least $300,000 each occurrence and $300,000 aggregate or limits of insurance equal to your own limits of insurance.

# QUICK REFERENCE
## COMMERCIAL GENERAL LIABILITY COVERAGE PART

## READ YOUR POLICY CAREFULLY

The Commercial General Liability Coverage Part in your policy consists of Declarations, a Coverage Form (either CG 00 01 or CG 00 02), Common Policy Conditions and Endorsements, if applicable. Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

### DECLARATIONS

    Named Insured and Mailing Address
    Policy Period
    Description of Business and Location of Premises
    Limits of Insurance
    Forms and Endorsements applying to the Coverage Part at time of issue

### COVERAGE FORM (CG 00 01 or CG 00 02)

    SECTION I--COVERAGES
        Coverage A--Bodily Injury and Property Damage Liability
            Insuring Agreement
            Exclusions
        Coverage B--Personal and Advertising Injury Liability
            Insuring Agreement
            Exclusions
        Coverage C--Medical Payments
            Insuring Agreement
            Exclusions
        Supplementary Payments
    SECTION II--WHO IS AN INSURED
    SECTION III--LIMITS OF INSURANCE
    SECTION IV--COMMERCIAL GENERAL LIABILITY CONDITIONS
        Bankruptcy
        Duties in the Event of Occurrence, Claim or Suit
        Legal Action Against Us
        Other Insurance
        Premium Audit
        Representations
        Separation of Insureds
        Transfer of Rights of Recovery Against Others to Us
        When We Do Not Renew (applicable to CG 00 02 only)
        Your Right to Claim and "Occurrence" Information (applicable to CG 00 02 only)
    SECTION V--EXTENDED REPORTING PERIODS (applicable to CG 00 02 only)
    SECTION VI--DEFINITIONS (SECTION V in CG 00 01)

### COMMON POLICY CONDITIONS (IL 00 17)

    Cancellation
    Changes
    Examination of Your Books and Records
    Inspections and Surveys
    Premiums
    Transfer of Your Rights and Duties under this Policy

### ENDORSEMENTS (If Any)

# POLICY FORMS
# AND
# ENDORSEMENTS

# PREMIUM PAYMENT SCHEDULE

This premium payment schedule replaces the payment provision in the policy listed below.

Payment Plan     B

| TRANSACTION | INSTALLMENT DUE DATE | TRANSACTION PREMIUM | STATE CHARGES | TOTAL PREMIUM |
|---|---|---|---|---|
| DEPOSIT | 12/31/01 | 12,929.00 | | 12,929.00 |
| INSTALL | 01/31/02 | 5,538.00 | | 5,538.00 |
| INSTALL | 02/28/02 | 5,538.00 | | 5,538.00 |
| INSTALL | 03/31/02 | 5,538.00 | | 5,538.00 |
| INSTALL | 04/30/02 | 5,538.00 | | 5,538.00 |
| INSTALL | 05/31/02 | 5,538.00 | | 5,538.00 |
| INSTALL | 06/30/02 | 5,538.00 | | 5,538.00 |
| INSTALL | 07/31/02 | 5,538.00 | | 5,538.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Our records indicate your premium will be paid in installments.  This schedule is provided as a convenience to let you know how much each payment will be and when it will be due.  If you are paying your agent, your agent will provide you with information on how you should pay the premium.  If you are paying us, we will send you a bill stating how much you owe and when it must be paid.  Please pay the amount due by the due date or your policy may be cancelled for non-payment of premium.

Named Insured:   INTERIOR EXTERIOR BUILDING

Policy Number:   CLP 3 130 481      B      Policy Effective Date:   12-31-01

Schedule Effective Date    12-31-01

GOX-1508 (12/92)

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**BITUMINOUS**
Insurance Companies

**COMPANY:** BITUMINOUS CASUALTY CORPORATION
CAPITAL STOCK INSURANCE COMPANIES - 320 18TH STREET - ROCK ISLAND, ILLINOIS 61201

**POLICY NO.**  CLP 3 130 481B        NEW

Named Insured and Mailing Address
INTERIOR EXTERIOR BUILDING
P O BOX 4002
NEW ORLEANS LA 70178

☐ Individual     ☐ Partnership

☒ Corporation or

Business Description  BUILDING SUPPLY

Policy Period: From       12-31-01   to      12-31-02    12:01 A.M. Standard Time at your mailing address
shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE - COMMERCIAL GENERAL LIABILITY COVERAGE FORM

| | | |
|---|---|---|
| Each Occurrence Limit | $ | 1,000,000 |
| General Aggregate Limit (Other Than Products--Completed Operations) | $ | 2,000,000 |
| Products--Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit (Any One Person or Organization) | $ | 1,000,000 |
| Fire Damage Limit | $ | 100,000   Any One Fire |
| Medical Expense Limit | $ | 5,000   Any One Person |

## RETROACTIVE DATE (CG 00 02 Only)

Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive
Date, if any, shown here:

## DESCRIPTION OF BUSINESS

Location of All Premises You Own, Rent or Occupy:   See Schedule of All Premises Locations

## PREMIUM

| | | |
|---|---|---|
| Commercial General Liability (See Attached Schedule) | $ | 51,695.00 |
| State Charges | $ | .00 |
| Deposit Premium | $ | 51,695.00 |

Premium Adjustment Period: ANNUAL

## FORMS AND ENDORSEMENTS

Forms and Endorsements applying to this Coverage Form and made part of this policy at time of issue.
See Schedule of Forms and Endorsements

Countersigned                              By _____
                                                        Authorized Representative
THESE DECLARATIONS, TOGETHER WITH THE COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission Copyright, Insurance Services Office, Inc. 1984, 1985

INSURED'S COPY

**SCHEDULE OF ALL PREMISES LOCATIONS**

| NAMED INSURED | POLICY NUMBER |
|---|---|
| INTERIOR EXTERIOR BUILDING | CLP 3 130 481 |

| PREM. NO. | BLDG. NO. | DESIGNATED PREMISES (ADDRESS, CITY, STATE, ZIP CODE) | OCCUPANCY |
|---|---|---|---|
| 001 | | 2352 N. LOBDELL BLVD., BATON ROUGE, LA 70806-0000 | |
| 002 | | 3461 HALLS MILL ROAD, MOBILE, AL 36693-0000 | |
| 003 | | 216 S. 12TH STREET, BIRMINGHAM, AL 35215-0000 | |
| 004 | | 14370 SEAWAY RD, GULFPORT, MS 39501-0000 | |
| 005 | | 730 S. SCOTT STREET, NEW ORLEANS, LA 70121-0000 | |
| 006 | | 70161 HWY 59, ABITA SPRINGS, LA 70420-0000 | |

GOX-2281 (12/92)

**SCHEDULE OF FORMS AND ENDORSEMENTS**

| NAMED INSURED | POLICY NUMBER |
|---|---|
| INTERIOR EXTERIOR BUILDING | CLP 3 130 481 |

```
GU-3076      (05/01)   PRIVACY STATEMENT
GU 2368b     (08/97)   AUDIT INFORMATION NOTICE
GU 2510      (06/96)   QUICK REFERENCE - COMMERCIAL GENERAL LIABILITY COVERAGE PART
GOX 1508     (12/92)   PREMIUM PAYMENT SCHEDULE
GOX 2281     (12/92)   SCHEDULE OF PREMISES LOCATIONS
GOX 2279     (12/92)   SCHEDULE OF FORMS AND ENDORSEMENTS
P4c-AL       (08/70)   COUNTERSIGNATURE ENDORSEMENT
P4c-MS       (08/70)   COUNTERSIGNATURE ENDORSEMENT
IL 00 17     (11/98)   COMMON POLICY CONDITIONS
IL 00 21     (04/98)   NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
IL 02 77     (08/01)   LOUISIANA CHANGES - CANCELLATION AND NONRENEWAL
IL 02 82     (09/00)   MISSISSIPPI CHANGES - CANCELLATION AND NONRENEWAL
GL-2438      (07/95)   COMMERCIAL GENERAL LIABILITY DECLARATIONS
GOX-2446     (07/95)   COMMERCIAL GENERAL LIABILITY SCHEDULE
CG 00 01     (01/96)   COMMERCIAL GENERAL LIABILITY COVERAGE FORM
CG 00 55     (03/97)   AMENDMENT OF OTHER INSURANCE CONDITION
GL 1839b     (02/99)   EMPLOYEE BENEFITS LIABILITY COVERAGE
CG 00 54     (03/97)   AMENDMENT OF POLLUTION EXCLUSION - EXCEPTION FOR BUILDING
                       HEATING EQUIPMENT
CG 00 57     (09/99)   AMENDMENT OF INSURING AGREEMENT - KNOWN INJURY OR DAMAGE
CG 01 18     (03/96)   LOUISIANA CHANGES - LEGAL ACTION AGAINST US
CG 01 25     (08/97)   LOUISIANA CHANGES - INSURING AGREEMENT
CG 21 47     (10/93)   EMPLOYMENT-RELATED PRACTICES EXCLUSION
L 1751a      (01/86)   EXCLUSION (ASBESTOS)
L 1752a      (01/86)   EXCLUSION (ASBESTOS - MISSISSIPPI)
```

## COMMERCIAL GENERAL LIABILITY SCHEDULE

| NAME | EFFECTIVE DATE | POLICY NUMBER |
|---|---|---|
| INTERIOR EXTERIOR BUILDING | 12-31-01 | CLP 3 130 481 |

**LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY:**   SEE SCHEDULE OF ALL PREMISES LOCATIONS

| | RATE | MINIMUM PREMIUM | ADVANCE PREMIUM |
|---|---|---|---|
| **PREMISES: 001      TERR: 004      STATE: LA** | | | |
| CLASS: 10257      PREMIUM BASIS: $    4,775,973 GROSS SALES/NEAREST THOUSAND | | | |
| BUILDING MATERIAL DISTRIBUTORS | | | |
| PREMISES OPERATIONS/MISCELLANEOUS | 1.144 | 143 | 5,464 |
| PRODUCTS/COMPLETED OPERATIONS | .594 | 248 | 2,837 |
| **PREMISES: 002      TERR: 003      STATE: AL** | | | |
| CLASS: 10257      PREMIUM BASIS: $    6,308,312 GROSS SALES/NEAREST THOUSAND | | | |
| BUILDING MATERIAL DISTRIBUTORS | | | |
| PREMISES OPERATIONS/MISCELLANEOUS | 1.278 | 142 | 8,062 |
| PRODUCTS/COMPLETED OPERATIONS | .589 | 233 | 3,716 |
| **PREMISES: 003      TERR: 001      STATE: AL** | | | |
| CLASS: 10257      PREMIUM BASIS: $    4,297,814 GROSS SALES/NEAREST THOUSAND | | | |
| BUILDING MATERIAL DISTRIBUTORS | | | |
| PREMISES OPERATIONS/MISCELLANEOUS | 1.250 | 142 | 5,372 |
| PRODUCTS/COMPLETED OPERATIONS | .589 | 233 | 2,531 |
| **PREMISES: 004      TERR: 001      STATE: MS** | | | |
| CLASS: 10257      PREMIUM BASIS: $    4,738,661 GROSS SALES/NEAREST THOUSAND | | | |
| BUILDING MATERIAL DISTRIBUTORS | | | |
| PREMISES OPERATIONS/MISCELLANEOUS | .686 | 143 | 3,251 |
| PRODUCTS/COMPLETED OPERATIONS | .644 | 248 | 3,052 |
| **PREMISES: 005      TERR: 001      STATE: LA** | | | |
| CLASS: 10257      PREMIUM BASIS: $    8,578,021 GROSS SALES/NEAREST THOUSAND | | | |
| BUILDING MATERIAL DISTRIBUTORS | | | |
| PREMISES OPERATIONS/MISCELLANEOUS | 1.073 | 143 | 9,204 |
| PRODUCTS/COMPLETED OPERATIONS | .594 | 248 | 5,095 |
| **PREMISES: 006      TERR: 003      STATE: LA** | | | |
| CLASS: 10257      PREMIUM BASIS: $    1,988,353 GROSS SALES/NEAREST THOUSAND | | | |
| BUILDING MATERIAL DISTRIBUTORS | | | |
| PREMISES OPERATIONS/MISCELLANEOUS | .829 | 143 | 1,648 |
| PRODUCTS/COMPLETED OPERATIONS | .594 | 248 | 1,181 |

GOX-2446 (07/95)

## COMMERCIAL GENERAL LIABILITY SCHEDULE

| NAME | EFFECTIVE DATE | POLICY NUMBER |
|---|---|---|
| INTERIOR EXTERIOR BUILDING | 12-31-01 | CLP 3 130 481 |

**LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY:**   SEE SCHEDULE OF ALL PREMISES LOCATIONS

| | RATE | MINIMUM PREMIUM | ADVANCE PREMIUM |
|---|---|---|---|
| PREMISES:        TERR:        STATE: LA<br>CLASS: 44444      PREMIUM BASIS:<br>EMPLOYEE BENEFITS LIABILITY<br><br>PREMISES OPERATIONS/MISCELLANEOUS | | | 282 |
| PREMISES:        TERR:        STATE:<br>CLASS:        PREMIUM BASIS: | | | |
| PREMISES:        TERR:        STATE:<br>CLASS:        PREMIUM BASIS: | | | |
| PREMISES:        TERR:        STATE:<br>CLASS:        PREMIUM BASIS: | | | |
| PREMISES:        TERR:        STATE:<br>CLASS:        PREMIUM BASIS: | | | |
| PREMISES:        TERR:        STATE:<br>CLASS:        PREMIUM BASIS: | | | |

GOX-2446 (07/95)

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

o

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

   Copyright, Insurance Services Office, Inc., 1997   **IL 00 21 04 98**

INTERLINE
IL 02 77 08 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies unless Paragraph **B.** of this endorsement applies.

**2. Notice Of Cancellation**

**a. Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals**

If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

**(1)** Cancellation for nonpayment of premium

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

**(2)** Cancellation for any other reason

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

**b. Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Activities or omissions by you which change or increase any hazard insured against;

**(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy including an increase in exposure due to regulation, legislation, or court decision;

**(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

© ISO Properties, Inc., 2000

o

**(6)** The insured's violation or breach of any policy terms or conditions; or

**(7)** Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph **A.2.b.,** to the first Named Insured at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 20 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **A.2.b.(2)** through **(7)** above.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments.

**2. Notice Of Cancellation**

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **C.5.a., C.5.b., C.5.c., C.5.d.** and **C.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

**b.** If the first Named Insured cancels, the refund may be less than pro rata, and will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **C.5.d.** or **C.5.e.** applies.

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

**D.** The **Premiums** Common Policy Condition is replaced by the following:

**PREMIUMS**

**1.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**2.** We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph **C.** of this endorsement.

**E.** Paragraph **f.** of the Mortgageholders Condition in the Commercial Property Coverage Part and Paragraph **4.(f)** of the Mortgageholders Condition in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 60 days before the effective date of cancellation, if we cancel for any other reason.

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation, if we cancel for any other reason.

   © ISO Properties, Inc.,  2000   IL 02 77 08 01   o

**F.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

2. We need not mail or deliver this notice if:

   **a.** We or another company within our insurance group have offered to issue a renewal policy; or

   **b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

3. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2000

IL 02 82 09 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISSISSIPPI CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** The following Condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least:

**a.** 10 days before the effective date of nonrenewal, if the nonrenewal is due to nonpayment of premium; or

**b.** 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

**2.** The notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** Paragraph **f.** of the **Mortgageholders** Condition, if any, is replaced by the following:

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least 30 days before the effective date of cancellation.

**C.** In the **Businessowners** Common Policy Conditions, Paragraph **2.a.** of the **Cancellation** Condition, which provides for 5 days' notice of cancellation under certain circumstances, is deleted.

Copyright, Insurance Services Office, Inc., 2000

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION **II**).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION **V**).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION **III**); and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      **(2)** The "bodily injury" or "property damage" occurs during the policy period.

   **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

   **a. Expected or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   **b. Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      **(1)** That the insured would have in the absence of the contract or agreement; or

      **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1994

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)**(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Copyright, Insurance Services Office, Inc., 1994

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g.  Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

   **(a)** Less than 26 feet long; and

   **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.  War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.  Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section **III**).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION **III**); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

**(5)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

Copyright, Insurance Services Office, Inc., 1994

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**5.** All costs taxed against the insured in the "suit".

**6.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**7.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph **2.b.(2)** of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Copyright, Insurance Services Office, Inc., 1994
CG 00 01 01 96

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

    **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

        **(1)** "Bodily injury" or "personal injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

        **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

        **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

        **(d)** Arising out of his or her providing or failing to provide professional health care services.

        **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by,

        **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)** With respect to liability arising out of the maintenance or use of that property; and

        **(2)** Until your legal representative has been appointed.

    **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   **(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   **(2)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

   **(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

Copyright, Insurance Services Office, Inc., 1994

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

**(1)** The injury or damage arises out of:

**(a)** Goods or products made or sold by you in the territory described in **a.** above; or

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**11.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

Copyright, Insurance Services Office, Inc., 1994
CG 00 01 01 96

**e.** Oral or written publication of material that violates a person's right of privacy.

**14.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

    **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(1)** You;

        **(2)** Others trading under your name; or

        **(3)** A person or organization whose business or assets you have acquired; and

    **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

COMMERCIAL GENERAL LIABILITY
CG 00 55 03 97

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF OTHER INSURANCE CONDITION (OCCURRENCE VERSION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **4.b.** of the **Other Insurance** Condition - **(Section IV - Commercial General Liability Conditions)** is replaced by the following:

**4. Other Insurance**

  **b. Excess Insurance**

    This insurance is excess over:

    **(1)** Any of the other insurance, whether primary, excess, contingent or on any basis:

      **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

      **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

      **(c)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of COVERAGE **A** (SECTION **I**).

    **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under COVERAGES **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Copyright, Insurance Services Office, Inc., 1996

POLICY NO.: CLP 3 130 481

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In addition to words and phrases contained in the Commercial General Liability Coverage Part, other words and phrases that appear in quotation marks have special meaning.  Refer to Paragraph E. - ADDITIONAL DEFINITIONS of this endorsement.

The definitions of the words and phrases "coverage territory," "insured" and "suit" contained in Paragraph E. apply in place of their definitions stated elsewhere in the policy, but only as respects coverage under this endorsement.

The provisions of this endorsement apply only as respects Employee Benefit Liability Coverage afforded hereunder.

### SCHEDULE

| COVERAGE | LIMITS OF INSURANCE | | ADVANCE PREMIUM |
|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | each employee | |
| | $1,000,000 | aggregate | |

| ESTIMATED NUMBER OF EMPLOYEES | RATE (EACH EMPLOYEE) | | | ESTIMATED PREMIUM |
|---|---|---|---|---|
| | First | 5,000 | .141 | $ SEE SCHEDULE |
| | Next | 5,000 | | $ SEE SCHEDULE |
| | Over | 10,000 | | $ SEE SCHEDULE |
| | | | TOTAL | $ SEE SCHEDULE |

## A. COVERAGE

**1. Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error, or omission of the insured, or of any other person for whose acts the insured is legally liable.  The negligent act, error or omission must be committed in the "administration" of your "employee benefit program" during the policy period.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS of this endorsement.

The negligent act, error or omission must take place in the "coverage territory."  We will have the right and duty to defend any "suit" seeking those damages.  But:

a. The amount we will pay for damages is limited as described in Paragraph C. - LIMITS OF INSURANCE.

b. We may at our discretion, investigate any report of a negligent act, error or omission and settle any claim or "suit" that may result; and

c. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

**2. Exclusions**

This insurance does not apply to:

a. Loss arising out of any dishonest, fraudulent, criminal or malicious act or omission, committed by any insured;

b. "Bodily injury" or "property damage" or "personal and advertising injury";

c. Loss arising out of failure of performance of contract by any insurer;

d. Loss arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program";

e. Any claim or "suit" based upon;

(1) failure of any investment to perform as represented by any insured; or

GL 1839b (02/99)                    PAGE 1 OF 4

POLICY NO.: CLP 3 130 481

(2) advice given to any person to participate or not to participate in any plan included in the "employee benefit program."

f. Loss arising out of your failure to comply with the mandatory provisions of any law concerning workers compensation, unemployment insurance, social security or disability benefits;

g. Loss for which the insured is liable because of liability imposed on a fiduciary by the Employee Retirement Security Act of 1974, as now or hereafter amended; or

h. Loss or damage for which benefits have accrued under the terms of an employee benefit plan to the extent that such benefits are available from funds accrued by the insured for such benefits or from collectible insurance, notwithstanding the insured's act, error or omission in administering the plan which precluded the claimant from receiving such benefits.

## 3. Supplementary Payments

We will pay with respect to any claim or "suit" we defend:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

d. All costs taxed against the insured in the "suit."

e. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance we will not pay any prejudgment interest based on that period of time after the offer.

f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

# B. WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with repsect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your directors and stockholders are also insureds, but only with respect to their liability as your directors or stockholders.

2. Each of the following is also an insured:

   a. Each of your partners, executive officers, members, managers and employees who is authorized to administer your "employee benefit program."

   b. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this endorsement.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire, or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage under this provision does not apply to any negligent act, error or omission that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

POLICY NO.: CLP 3 130 481

## C. LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought;

    c.  Persons or organizations making claims or bringing "suits";

    d.  Acts, errors or omissions which result in loss; or

    e.  Plans included in your "employee benefit program."

2.  The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions committed in the "administration" of your "employee benefit program."

3.  Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one employee, including the employee's dependents and beneficiaries, because of acts, errors or omissions committed in the "administration" of your "employee benefit program."

If the policy period is for a term in excess of one year, the Aggregate Limit of Insurance shall apply separately to each consecutive annual period.

## D. DEDUCTIBLE

1.  Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of $1,000. deductible applicable to "Each Employee." The limits of insurance applicable to "Each Employee" will be reduced by the amount of this deductible. The Aggregate limit shall not be reduced by the application of such deductible amount.

2.  The deductible amount applies to all damages sustained by an employee because of an act, error or omission covered by this insurance.

3.  The terms of this insurance, including those with respect to:

    a.  Our right and duty to defend any "suits" seeking those damages; and

    b.  Your duties in the event of an act, error or omission claim, or "suit" apply irrespective of the application of the deductible amount.

4.  We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## E. ADDITIONAL DEFINITIONS

1.  "Administration" means:

    a.  Counseling employees, including their dependents and beneficiaries, with respect to the "employee benefit program";

    b.  Handling records in connection with the "employee benefit program"; or

    c.  Effecting or terminating any employee's participation in a plan included in the "employee benefit program."

2.  "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

3.  "Employee benefit program" means the following plans:

    a.  Group life insurance, group accident or health insurance, "profit sharing plans," pension plans and "stock subscription plans," provided that no one other than an employee may subscribe to such insurance or plans;

    b.  Unemployment insurance, social security benefits, workers compensation and disability benefits;

    c.  Any other similar plan designated in the Schedule or added thereto endorsement.

4.  "Insured" means any person or organization qualifying as such under Paragraph B. - WHO IS AN INSURED.

5.  "Profit sharing plans" mean only such plans that are equally available to all full-time employees.

6.  "Stock subscription plans" mean only such plans that are equally available to all full-time employees.

7.  "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

POLICY NO.: CLP 3 130 481

# F. ADDITIONAL CONDITION

Item 2., Duties in the Event of Occurrence, Claim or Suit, Paragraphs a. and b. of SECTION IV. COMMERCIAL GENERAL LIABILITY CONDITIONS are inapplicable to this endorsement and the following shall apply in lieu thereof:

**2.  Duties in the Event of Act, Error or Omission, Claim or Suit**

    a.  You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim.  Notice should include:

        (1)  What the act, error or omission was and when it occurred;

        (2)  The names and addresses of any employees who may suffer damages as a result of the act, error or omission.

    b.  If a claim is received by any insured you must:

        (1)  Immediately record the specifics of the claim and the date received; and

        (2)  Notify us as soon as practicable.  You must see to it that we receive written notice of the claim as soon as practicable.