UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

* * * * * * * * * * * * * * ** * * * * * ** * * * * * * * * * *

**THIS DOCUMENT RELATES TO:** *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.,*
**Case No. 09-6687**


**TAISHAN GYPSUM CO. LTD.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO VACATE THE
DEFAULT JUDGMENT AND DISMISS THIS ACTION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................................iii

INTRODUCTION ...............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................................1

    A.    Taishan Only Does Business In China............................................................1

    B.    Taishan Sold Drywall To Venture Supply In China...........................................2

    C.    The *Germano* Plaintiffs File A Putative Class Action On Behalf Of Virginia Homeowners...........................................................................................3

    D.    Plaintiffs Failed To Serve The Second Amended Complaint Upon Which The Default Judgment Is Based ................................................................4

    E.    Plaintiff-Intervenors Pursue the New Claims In The Unserved Second Amended Complaint ...........................................................................5

    F.    Plaintiff-Intervenors Obtain A Default Judgment On The Unserved Second Amended Complaint ...........................................................................6

    G.    Taishan Promptly Appears After Learning Of The Default Judgment ......................................................................................................7

ARGUMENT ......................................................................................................................7

I.    THE JUDGMENT IS VOID FOR LACK OF PERSONAL JURISDICTION ...........................................................................................7

    A.    The Eastern District Of Virginia Lacked Personal Jurisdiction Over Taishan ........................................................................................................8

    B.    Taishan Lacks The Continuous And Systematic Contacts With Virginia Necessary To Justify The Exercise Of General Jurisdiction ...............................................................................................10

    C.    Taishan Lacks the Minimum Contacts Necessary For The Exercise Of Specific Jurisdiction Because it Did not Purposefully Avail Itself of the Benefits of a Virginia Forum........................................................12

i

D.      The Exercise Of Jurisdiction Over Taishan Would Be
        Unreasonable and Offend Traditional Notions Of Fair Play And
        Substantial Justice ..................................................................................15

II.     PLAINTIFFS FAILED TO SERVE THE PLEADINGS UPON WHICH
        THE DEFAULT JUDGMENT WAS BASED ...................................................18

III.    THE DEFAULT JUDGMENT SHOULD BE SET ASIDE ON THE
        GROUNDS OF EXCUSABLE NEGLECT ......................................................21

        A.      Taishan's Default Was Not Willful ..................................................21

        B.      Vacating The Default Judgment Will Not Prejudice Plaintiffs .........................23

        C.      Taishan Has A Meritorious Defense..................................................23

        D.      The Other Factors Weigh In Favor Of Vacatur ..................................24

                1.      Taishan Gypsum Will Incur Significant Financial Losses If
                        The Default Stands....................................................................24

                2.      Taishan Gypsum Acted Expeditiously To Vacate The
                        Default.........................................................................24

IV.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE
        VIRGINIA CONSUMER PROTECTION ACT ..............................................24

CONCLUSION...................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Unione Mediterranea Di Sicurta,*
    220 F.3d 659 (5th Cir. 2000) ..................................................................................1

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,*
    293 F.3d 707 (4th Cir. 2002) .................................................................................9

*Amberg v. FDIC,*
    934 F.2d 681 (5th Cir. 1991) .................................................................................7

*Anunciation v. West Capital Financial Services Corp.,*
    97 F.3d 1458 (9th Cir. 1996) ...............................................................................20

*Asahi Metal Ind. Co. v. Superior Ct of Cal.,*
    480 U.S.102 (1987)........................................................................................ passim

*Bangkok Bank Ltd. v. Wallant Int'l Trade, Inc.,*
    No. 88 CIV. 2675, 1989 WL 156299 (S.D.N.Y. Dec. 18, 1989)...........................24

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC.,*
    261 F. Supp. 2d 483 (E.D. Va. 2003) .......................................................10, 11, 15

*Bituminous Cas. Corp. v. Garcia,*
    223 F.R.D. 308 (N.D. Tex. 2004) ........................................................................21

*Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind,*
    841 F.2d 646 (5th Cir. 1988) ...............................................................................19

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)..............................................................................................10

*Carl Marks & Co. v. Union of Soviet Socialist Republics,*
    665 F. Supp. 323 (E.D.N.Y. 1987), *aff'd* 841 F.2d 26 (2d Cir. 1988)....................22

*Choice Hotels Int'l Bonham,*
    1997 WL 600061, 125 F.3d 847 (4th Cir. Sept. 30, 1997) ....................................8

*Chung v. Nana Dev. Corp.,*
    783 F.2d 1124 (4th Cir. 1986) *cert. denied.,* 479 U.S. 948 (1986)............12, 13, 14

*City of Virginia Beach v. Roanoke River Basin Ass'n,*
    776 F.2d 484 (4th Cir. 1985) .................................................................................8

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ................................................................................9, 10, 14, 18

*Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*,
    229 F.3d 448 (4th Cir. 2000) ....................................................................................................10

*E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*,
    430 F. Supp. 2d 1064 (E.D. Cal., 2005)...................................................................................22

*Eagle Paper Int'l, Inc. v. Expolink, Ltd.*,
    No. 2:07cv160, 2008 WL 170506 (E.D. Va. Jan. 17, 2008)......................................................1

*Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*,
    346 F.3d 552 (5th Cir. 2003) ......................................................................................................7

*Federal Ins. Co. v. Lake Shore Inc.*,
    886 F.2d 654 (4th Cir. 1989) ..............................................................................................13, 15

*Gray v. Riso Kagaku Corp.*,
    82 F.3d 410, 1996 WL 181488 (4th Cir. April 17, 1996).........................................................16

*Hanson v. Denckla*,
    357 U.S. 235 (1958)....................................................................................................................9

*Harper Macleod Solicitors v. Keaty & Keaty*,
    260 F.3d 389 (5th Cir. 2001) ......................................................................................................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)..................................................................................................................10

*In re Celotex Corp.*,
    124 F.3d 619 (4th Cir. 1997) ................................................................................................8, 12

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
    No. 07-1873, 2010 WL 1489894 (E.D. La. Apr. 12, 2010)........................................................8

*In re Marinez*,
    589 F.3d 772 (5th Cir. 2009) ....................................................................................................23

*In re Norplant Contraceptive Prods. Liab. Litig.*,
    915 F. Supp. 845 (E.D. Tex. 1996)............................................................................................2

*In re OCA, Inc.*,
    551 F.3d 359 (5th Cir. 2008) ......................................................................................21, 23, 24

*In re Provenza*,
    316 B.R. 177 (Bankr. E.D.La. 2003) .......................................................................................19

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)…………….……………………………………………..9, 11, 12

*James v. Claiborne*,
   No. 07-1570, 2009 WL 994951 (W.D. La. Apr. 13, 2009) ...............................................19, 20

*Jenkins v. Gilchrist v. Groia & Co.*,
   542 F.3d 114 (5th Cir. 2008) .......................................................................................23

*Lesnick v. Hollingsworth & Vose Co.*,
   35 F.3d 939 (4th Cir. 1994) ...............................................................................12, 13, 16

*Lewis v. Lynn*,
   236 F.3d 766 (5th Cir. 2001) ...........................................................................................25

*Lopez v. NTI, LLC*,
   2008 WL 5120542 (D. Md. Dec. 4, 2008)....................................................................19, 20

*Milliken v. Meyer*,
   311 U.S. 457 (1940).........................................................................................................9

*Nichols v. G.D. Searle & Co.*,
   991 F.2d 1195 (4th Cir. 1993) ....................................................................................9, 11

*Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of Venezuala*,
   575 F.3d 491 (5th Cir. 2009) ...........................................................................................22

*OMI Holding, Inc. v. Royal Ins. Co. of Canada*,
   149 F.3d 1086 (10th Cir.1998) .......................................................................................17

*Practical Concepts, Inc. v. Republic of Bolivia*,
   811 F.2d 1543 (D.C. Cir. 1987)........................................................................................22

*Promotions Ltd. v. Brooklyn Bridge Centennial Comm'n*,
   763 F.2d 173 (4th Cir. 1985) ...........................................................................................14

*Robinson v. Sanctuary Music*,
   Nos. 08-2078-cv, 08-2320-cv, 08-2333-cv,
   2010 WL 2649849 (2d Cir. July 1, 2010)....................................................................21, 23

*Saudi v. Northrop Grummon Corp.*,
   427 F.3d 271 (4th Cir. 2005) ...........................................................................................18

*Stover v. O'Connell Assocs., Inc.*,
   84 F.3d 132 (4th Cir.1996) ...........................................................................................8, 9

*Travelers Indem. Co. v. Calvert Fire Ins. Co.*,
   798 F. 2d 826 (5th Cir. 1986), *modified*, 836 F. 2d 850 (1988) ................................................2

*United States v. Williams,*
   517 F.3d 801 (5th Cir. 2008) ........................................................................................19

*Varnes v. Local 91 Glass Blowers Ass'n,*
   674 F.2d 1365 (11th Cir. 1982) ....................................................................................18

*World-Wide Volkswagon v. Woodson,*
   444 U.S. 286 (1980)......................................................................................................12

*Young v. New Haven Advocate,*
   315 F.3d 256 (4th Cir. 2002) ..........................................................................................8


## STATUTES

28 U.S.C. § 1407 .......................................................................................................................8

Va. Code Ann. § 8.01.328.1(A)(1) ...........................................................................................9


## OTHER AUTHORITIES

Charles Alan Wright, Arthur R. Miller, and May K. Kane, *Federal Practice & Procedure*
   *Jurisdiction* § 1146 (3d ed. 2010) ...............................................................................20

FED. R. CIV. P. 4(f)(1) .........................................................................................................19, 20

FED. R. CIV. P.  5(a)(2)......................................................................................................1, 19, 20

FED. R. CIV. P. 12(b)(2) ............................................................................................................1

FED. R. CIV. P. 24(c).....................................................................................................1, 18, 19

Fed. R. Civ. P. 55(c) ..........................................................................................................1, 7

Fed. R. Civ. P. 60(b) ..........................................................................................................1, 7

Fed. R. Civ. P. 60(b)(1)...................................................................................................21, 24

Fed. R. Civ. P. 60(b)(4)...........................................................................................................7

Hague Convention on the Service Abroad of
   Judicial Documents and Extra Judicial Documents
   in Civil or Commercial Matters, U.N.T.S. 163 (1969) ................................................. passim

Defendant Taishan Gypsum Co. Ltd. ("Taishan") submits this memorandum in support of its motion for an order (1) pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure, vacating the November 20, 2009 order of this Court holding Taishan in preliminary default and vacating the May 11, 2010 default judgment in the amount of $2,758,356.20; and (2) pursuant to Rule 12(b)(2), dismissing this action on the grounds of lack of personal jurisdiction.

## INTRODUCTION

Taishan respectfully submits that the default judgment must be vacated for several reasons.  First, it is void because (a) the Court cannot exercise personal jurisdiction over Taishan consistent with the Due Process Clause of the United States Constitution because Taishan has not had the requisite minimum contacts with Virginia, the forum state where Plaintiffs filed their original Complaint; (b) Plaintiff-Intervenors did not properly serve Taishan with their motion to intervene or the pleading required by Fed. R. Civ. P. 24(c) and 5(a)(2); (c) Taishan was not served with the Second Amended Complaint, on which the default was entered and on which the default judgment was based; and (d)  the default judgment cannot stand to the extent that it is based on a complaint that this Court has already found fails to state a claim under the Virginia Consumer Protection Act.   Further, the defaults should be vacated because any failure by Taishan to timely respond was excusable under the circumstances.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Taishan Only Does Business In China

Taishan is a Chinese corporation with its principal place of business in Tai'an City, Shandong Province, People's Republic of China.  (Declaration of Jia Tongchun, Chairman, General Manager and Senior Engineer of Taishan ("Decl."), dated August 15, 2010, ¶¶ 2, 4.)[1]

---

[1] In determining personal jurisdiction on a Rule 12(b)(2) motion, a court "is not restricted to a review of the plaintiff's pleadings."  *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000); *Eagle Paper*

Taishan has manufactured drywall since 1992.  *Id.* ¶ 6.  Taishan manufactures and sells drywall exclusively in China.  *Id.* ¶¶ 7-9.

Taishan does not conduct business in Virginia and never has.  Specifically:

- Taishan never has manufactured products or performed any services in Virginia. *Id.* ¶¶ 10, 15.

- Taishan never has marketed, advertised, or sold drywall in Virginia.  *Id.* ¶¶ 11-14.

- Taishan does not have offices, or own or lease real or personal property in Virginia and does not have mailing address or telephone number in Virginia.  *Id.* ¶¶ 16, 23.

- Taishan does not maintain any bank accounts in Virginia.  *Id.* ¶ 17.

- Taishan never has appointed an agent to accept service of process in Virginia.  *Id.* ¶ 18.

- Taishan never has paid taxes or incurred tax liability in Virginia.  *Id.* ¶ 19.

- Taishan has never been incorporated in Virginia, kept any corporate records in Virginia and is not registered to do business in Virginia.  *Id.* ¶¶ 20-22.

- Taishan has no officers, directors, employees, or agents in Virginia.  None of Taishan's officers, directors, employees, or agents maintain a residence or place of business in Virginia.  In fact, no officers, directors, employees, or agents of Taishan ever have visited Virginia for business purposes.  *Id.* ¶¶ 24-25.

## B.    Taishan Sold Drywall To Venture Supply In China

Over its entire history Taishan has entered into only two contracts with a Virginia counterparty; in both cases that counterparty was Venture Supply Inc. ("Venture").  Tobin Trading ("Tobin"), an export company representing Venture, contacted Taishan in China, solicited its business *and* negotiated the two contracts between Venture and Taishan (the

---

*Int'l, Inc. v. Expolink, Ltd.*, No. 2:07cv160, 2008 WL 170506, at *3 (E.D. Va. Jan. 17, 2008).  When the unsubstantiated allegations of a complaint are controverted by a defendant's affidavit or declaration, "the affidavit or declaration trumps the allegations."  *In re Norplant Contraceptive Prods. Liab. Litig.*, 915 F. Supp. 845, 847 (E.D. Tex. 1996) (citing *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F. 2d 826, 831 (5th Cir. 1986), *modified*, 836 F. 2d 850 (1988)).

"Venture contracts").  All contract negotiations occurred in China.  *Id.* ¶¶ 27, 30.  The Venture contracts were executed in China, and provided that Taishan would deliver the drywall to Venture in China, FOB[2] at a Chinese port.[3]  *Id.* ¶¶ 29, 30, 34, Exs. A, C, E.  The Venture contracts also provided that any disputes arising from their performance would be resolved in China through arbitration in front of the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade.  *Id.* ¶¶ 28, 30.

No employee or representative of Taishan visited Virginia in connection with the Venture contracts.  *Id.* ¶ 35.  On behalf of Venture, Tobin inspected the drywall in China, took title to the drywall and arranged to ship it from China to the U.S.  *Id.* ¶¶ 29, 37.  Venture paid for the drywall pursuant to a Letter of Credit it posted with Taishan's bank in China.  Venture shipped the drywall it purchased under the first contract to Norfolk in Virginia, and shipped the drywall it purchased pursuant to the second contract to Camden, New Jersey.  (FOF 9.)  Taishan has no record of where Venture sent the shipments afterward.  Taishan was never involved in the distribution, installation or use of drywall in Virginia.  *Id*. ¶¶ 33, 46.

## C.      The *Germano* Plaintiffs File A Putative Class Action On Behalf Of Virginia Homeowners

Plaintiffs Michelle Germano, Dennis and Sharon Jackson, and Jason and Lisa Dunaway (collectively referred to as "the *Germano* Plaintiffs"), owners of three homes in Virginia, commenced this action on May 1, 2009 by filing a complaint in the Eastern District of Virginia. On May 26, 2009, the *Germano* Plaintiffs filed their First Amended Complaint in the Eastern

---

[2] "Free on Board means the seller delivers when the goods pass the ship's rail at the named port of shipment." Incoterms 2010 by the International Chamber of Commerce, ICCWBO.ORG, http://www.iccwbo.org/incoterms/id3040/index.html (last visited August 23, 2010)

[3] The Venture contracts are dated November 17, 2005 and December 16, 2005, respectively.  Although the contracts contemplated the shipment of 4,000 pallets of drywall for $859,200.00, Taishan ultimately sold only 2,586 pallets of drywall to Venture for $555,749.22.  Findings of Fact and Conclusions of Law, Rec. Doc. No. 2380 (the "FOF") 8-9, April 8, 2010.

District of Virginia.  In the First Amended Complaint the *Germano* Plaintiffs asserted individual claims and also purported to bring a class action on behalf of "all other similarly situated owners and residents of residential homes in the Commonwealth of Virginia containing defective drywall that was designed, manufactured . . . by Defendant Taishan . . . ."  Index. 09-6687, Rec. Doc. No. 1, p. 1.

The *Germano* Plaintiffs served the First Amended Complaint on Taishan pursuant to the Hague Convention on the Service Abroad of Judicial Documents.[4]  On or about August 3, 2009 the Ministry of Justice, Department of Judicial Assistance and Foreign Affairs in Beijing China, sent Taishan the English originals of the summons and First Amended Complaint and Chinese translations of both.  The First Amended Complaint is the only pleading that Taishan received in connection with this action.  Decl. ¶ 45.

When Taishan received the First Amended Complaint, it could not understand how this litigation could involve the company.  *Id.* ¶ 46.  Taishan had complied with its contractual obligations to Venture and had no reason to believe there were any issues with the quality of its drywall. *Id.* Since Taishan had never had a role in the distribution or installation of drywall in Virginia and Venture had not raised with Taishan any issue with the quality of the drywall it purchased, Taishan did not believe that it was necessary to appear in the proceedings.  *Id.* ¶ 41.

**D.    Plaintiffs Failed To Serve The Second Amended Complaint Upon Which The Default Judgment Is Based**

The *Germano* Plaintiffs' case was transferred to this Court on October 13, 2009.  On October 30, 2009, the *Germano* Plaintiffs moved to amend the First Amended Complaint by "interlineation."  This amendment involved new claims not contained in the First Amended

---

[4] The full citation "The Hague Convention on the Service Abroad of Judicial Documents and Extra Judicial Documents in Civil or Commercial Matters" (Feb. 10, 1969) 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163, reprinted at 28 U.S.C (the "Hague Convention").

4

Complaint served upon Taishan; the *Germano* Plaintiffs sought to allege that they represented a national class of homeowners with claims against Taishan.

On November 18, 2009, the Court granted the *Germano* Plaintiffs' motion to amend the First Amended Complaint.  In contrast to the Hague Convention process Plaintiffs used to serve the First Amended Complaint, Plaintiffs did not serve Taishan with the Second Amended Complaint.  Taishan did not receive the Second Amended Complaint, in either English or Chinese, by mail or any other means prior to the entry of the default judgment.  Decl. ¶ 45.

On November 18, 2009, the same day that the Court granted their motion to file a Second Amended Complaint, the *Germano* Plaintiffs moved this Court for entry of default against Taishan for failure to answer or move.  Again, as with the Second Amended Complaint, Taishan did not receive any notice of this application.  On November 20, 2009 the Court entered a preliminary default against Taishan.  Rec. Doc. No. 487.

**E.      Plaintiff-Intervenors Pursue the New Claims In The Unserved Second Amended Complaint**

On December 3, 2009, Jerry and Inez Baldwin, Steven and Elizabeth Heischober, Joseph and Kathy Leach, Preston and Rachel McKellar, J. Frederick and Vanessa Michaux, William and Deborah Morgan, and Robert and Lea Orlando (collectively, the "Plaintiff-Intervenors"), moved to intervene in this action. *See* Rec. Doc. No. 548.  The Plaintiff-Intervenors alleged that each was the owner of a house in Virginia in which allegedly defective drywall manufactured by Taishan had been installed, that they were each plaintiffs in related actions pending in state court in Virginia, that their state court complaints stated claims against Taishan, and that they adopted the (unserved) Second Amended Complaint in the *Germano* action.[5]  *Id.* pp. 2-3.  The Court

---

[5] Taishan has not been served in any of the Plaintiff-Intervenors' Virginia state court actions.  In fact, Taishan was named as a defendant only in the *Heischober* state court action; none of the other Plaintiff-Intervenors had asserted

granted Plaintiff-Intervenors' motion to intervene on December 20, 2009.  Rec. Doc. No. 641. Plaintiff-Intervenors did not serve Taishan with their motion to intervene or any pleading.[6] Consequently, prior to the entry of the default judgment, Taishan had no notice of the Plaintiff-Intervenors' claims. Decl. ¶ 45.

## F.    Plaintiff-Intervenors Obtain A Default Judgment On The Unserved Second Amended Complaint

On February 19 and 22, 2010, the Court held an evidentiary hearing for the assessment of damages allegedly suffered by Plaintiff-Intervenors.  *See* Rec. Doc. Nos. 1223, 1258.  Only Plaintiff-Intervenors put on evidence during the two-day, uncontested trial.  *Id.* On April 8, 2010, the Court issued its Findings of Fact.

The Court did not address whether Taishan is subject to personal jurisdiction in Virginia. The Court noted Taishan's two sales to Venture, but did not discuss that the sales were made in China.  The Court also found that Venture re-sold the drywall in the United States to the Porter-Blaine Corporation ("PB") and, that PB then shipped the drywall to Plaintiff-Intervenors' homes. (FOF 9 (citing Trial Tr. vol. 1, 17:12-14, Feb. 19, 2010)).

The Court also found that another company, Tai'an Taishan Plasterboard Co. Ltd. ("TTP"), shipped drywall to the U.S. (FOF 12, citing P.3 0629-1000 (Affidavit of Russ M. Herman ¶ 25), P3.0629-0175).   This finding was based on a single unidentified and unauthenticated  document submitted by Plaintiffs' counsel.  *Id.*

---

claims against Taishan prior to moving to intervene in the Second Amended complaint. *See* Rec. Doc. No. 548, Exs. A-E, G, I.

[6] Plaintiff-Intervenors served the motion only on Defendants' liaison counsel, by e-mail and upon all parties participating in LexisNexis File & Serve service in accordance with Pre-Trial Order No. 6.  *See* Rec. Doc. No. 548, p. 6.

### G.    Taishan Promptly Appears After Learning Of The Default Judgment

After Taishan learned of the default judgment, Taishan felt compelled to defend its reputation and product, even though it still believed it was not subject to the Court's jurisdiction. Taishan retained counsel, who entered an appearance on June 10, 2010, reserving its objections to the Court's jurisdiction.  The same day, Taishan filed a Notice of Appeal from, *inter alia*, the default judgment.  Rec. Doc. No. 3670.  The Appeal is currently pending in the Fifth Circuit. (5th Cir. Docket No. 10-30568.)

## ARGUMENT

## I.    THE JUDGMENT IS VOID FOR LACK OF PERSONAL JURISDICTION

"Federal Courts generally disfavor default judgments, preferring to resolve disputes according to their merits."  *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 393 (5th Cir. 2001); *see also Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003) (*quoting Amberg v. FDIC*, 934 F.2d 681, 686 (5th Cir. 1991) ("Defaults are not favored and their strict enforcement 'has no place in the Federal Rules.'").

Fed. R. Civ. P. 55(c) provides that the court "may set aside a default judgment under Rule 60(b)."  Rule 60(b) provides, *inter alia*,

> (b)     On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:
>
> > (1)  mistake, inadvertence, surprise or excusable neglect; . . .
>
> > (4)  the judgment is void;  . . .
>
> > (6)  any other reason that justifies relief.

Rule 60(b)(4) compels the Court to vacate a default judgment where personal jurisdiction is lacking and/or service if process was insufficient.  *Harper Macleod Solicitors*, 260 F.3d at 393 (judgment entered against parties not subject to personal jurisdiction of the rendering court is a

7

nullity); *Choice Hotels Int'l Bonham*, 1997 WL 600061, 125 F.3d 847 (4th Cir. Sept. 30, 1997) (voiding default judgment where defendant was not properly served pursuant to state law).

**A.**   **The Eastern District Of Virginia Lacked Personal Jurisdiction Over Taishan**

This action was originally filed in the Eastern District of Virginia and transferred to this Court by the Multidistrict Litigation Panel in accordance with 28 U.S.C. § 1407. Accordingly, the question of personal jurisdiction should be determined on the basis of the transferor Court's ability to exercise jurisdiction. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, No. 07-1873, 2010 WL 1489894, at *1 (E.D. La. Apr. 12, 2010) (refusing to exercise personal jurisdiction over MDL defendant not properly named as a defendant in suits from transferor court).

Plaintiff-Intervenors have the burden of establishing that the exercise of jurisdiction over Taishan was proper. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). In order to determine whether there is a basis for personal jurisdiction over Taishan in Virginia, a district court is required to apply a two-part analysis. *City of Virginia Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484, 487-88 (4th Cir. 1985). *First*, the court must look to the law of Virginia to determine whether there is jurisdiction over the defendant. *Id. Second*, the court must determine whether the exercise of jurisdiction is consistent with federal due process requirements. *Id.* Plaintiff-Intervenors cannot meet these requirements for jurisdiction over Taishan.

The Court may exercise jurisdiction only to the extent permitted by Virginia law. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). As Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, "'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Id.* (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir.1996) (placement of services over the telephone did not subject defendant to jurisdiction in the state).

The "limits of due process" under the United States Constitution were articulated in *International Shoe Co. v. Washington*:

> [I]n order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'…
>
> Whether due process is satisfied must depend … upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.  That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.

326 U.S. 310, 319-20 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Minimum contacts are constitutionally sufficient if they show a party has purposefully availed itself of the privilege of conducting activities in Virginia, thereby invoking the benefits and protections of its laws.  *Stover*, 84 F.3d at 136 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A court may assume power over an out-of-state defendant only by either a proper "finding [of] specific jurisdiction based on conduct connected to the suit or by [a proper] finding [of] general jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002).  General jurisdiction is necessary to adjudicate claims arising out of defendant's activities outside the forum state.  *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 n. 2 (4th Cir. 1993).

By contrast, a defendant may be subject to specific jurisdiction when the cause of action "'arises from'" the defendant's forum-related activities. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting Va. Code Ann. § 8.01.328.1(A)(1)).  The Fourth

Circuit engages in a three-part inquiry to determine whether specific jurisdiction exists over a non-resident defendant. *Id.* at 278. *First*, to "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State." *Id. Second*, "whether the plaintiffs' claim arises out of those activities." *Id. Third*, "whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* (citation omitted). This analysis turns on the relationship between the claims and contacts, and thus courts generally evaluate specific jurisdiction on a claim-by-claim basis. *Id.* at 278-79.

Due process will be satisfied only if Taishan has engaged in acts that indicate that it would reasonably anticipate being brought into a Virginia court because it purposefully availed itself of the privilege of conducting activities in the State. *Consulting Eng'rs,* 561 F.3d at 277 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). This "purposeful-availment requirement" assures that a defendant will not be haled into a jurisdiction as a result of 'the '"unilateral activity of those who claim some relationship with a nonresident defendant.'" *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 453 (4th Cir. 2000) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Taishan's isolated sales of drywall to Venture in China are insufficient to confer personal jurisdiction over Taishan under either a theory of general or specific jurisdiction because Venture's unilateral acts do not provide the necessary nexus to Virginia.

### B.   Taishan Lacks The Continuous And Systematic Contacts With Virginia Necessary To Justify The Exercise Of General Jurisdiction

Courts in Virginia have held that where, as here, the allegedly wrongful conduct occurred entirely abroad, jurisdiction must be premised on a theory of general jurisdiction. *See Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC.*, 261 F. Supp. 2d 483, 493-95 (E.D. Va.

2003) (claim based on sales made FOB in the state of the seller, even if to a Virginia entity, was premised on out-of-state activity thereby requiring general personal jurisdiction).

In order for this Court to exercise general jurisdiction over Taishan, it must have maintained "continuous and systemic" affiliations with Virginia. *Int'l Shoe*, 326 U.S. at 314. The level of activity in the forum state necessary for general jurisdiction is substantial. For example, in *Nichols*, the Fourth Circuit held that general jurisdiction did not exist despite a defendant's numerous contacts with the forum state, including employing thirteen forum state residents, holding meetings annually in the forum state, and deriving between $9 million and $13 million in annual revenues in the forum state. *Id.* at 1198.

Taishan has had far less contact with Virginia than the company at issue in *Nichols*. None of Taishan officers, directors or employees live in Virginia or maintain a place of business there. Decl. ¶ 24. Taishan never has maintained an office or any corporate books or records in Virginia. *Id.* ¶¶ 16, 22. Taishan has no real property or bank accounts in Virginia. Taishan has never manufactured products, performed services, marketed, advertised, distributed or sold drywall directly to consumers in Virginia. *Id.* ¶¶ 10-15. Taishan derived revenue indirectly from Virginia only through two isolated transactions with Venture, both of which were conducted in China through Venture's China-based agent Tobin. Venture only shipped one of the two orders to Virginia; the other was shipped to New Jersey. Taishan therefore lacks the "continuous and systematic" contacts with Virginia necessary for this Court to exercise general jurisdiction over it. *See Bay Tobacco, LLC*, 261 F. Supp. 2d at 497-98 (the arrangement of multiple shipments of cigarettes FOB into Virginia was insufficient to subject defendant to general personal jurisdiction).

11

**C.      Taishan Lacks the Minimum Contacts Necessary For The Exercise Of Specific Jurisdiction Because it Did not Purposefully Avail Itself of the Benefits of a Virginia Forum**

Taishan lacks minimum contacts with Virginia even under a specific jurisdiction analysis, as the Fourth Circuit has consistently held that a court may only exercise jurisdiction over a foreign defendant for its conduct abroad where the defendant deliberately directed – and *intended* to direct – its conduct at the forum state.  *In re Celotex*, 124 F.3d at 628 (contacts must be "purposeful") (citation omitted);  *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 943-46 (4th Cir. 1994); *accord Chung v. Nana Dev. Corp.*, 783 F.2d 1124, 1128-30 (4th Cir. 1986) *cert. denied.,* 479 U.S. 948 (1986).

In *Lesnick*, the Fourth Circuit evaluated whether a foreign manufacturer could be subject to jurisdiction in a given forum and engaged in a detailed analysis of Supreme Court rulings from *International Shoe* to the plurality opinion in *Asahi Metal Ind. Co. v. Superior Ct of Cal.*, 480 U.S.102 (1987). The court held that *World-Wide Volkswagon v. Woodson*, 444 U.S. 286 (1980) and *Asahi* had not changed the principle that a defendant must do more than merely place the product in the stream of commerce to be subject to jurisdiction in a particular forum, even if the defendant was aware that the stream may or will sweep the product into the forum state.  *Lesnick*, 35 F.3d at 945 ("To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism.")    The Fourth Circuit went on to hold that the placement of a product in the stream of commerce must be accompanied by a "substantial connection to the forum state by an action purposefully directed toward the forum state or otherwise." *Lesnick*, 35 F.3d at 945-46.   The *Lesnick* court held that "*purposeful*" means "intentional" and that nothing short of the defendant's intent to distribute products in the forum would render it amenable to jurisdiction there. *Id.*, citing *Asahi*, 480 U.S. at 112. For the

exercise of jurisdiction to be Constitutionally permissible, the defendant must have undertaken some additional conduct to service the forum market beyond merely selling a product on foreign soil to a forum company:  the defendant must have advertised in the forum, established channels for providing regular advice to customers in the forum, or marketed the product through a sales agent in the forum.  *See Id.; see also Asahi*, 480 U.S. at 112 (O'Connor J. concurring) (providing examples of conduct evidencing the requisite intent to avail oneself of a forum).  Taishan did none of these things.

Thus, in *Lesnick*, the Court of Appeals found that there was no personal jurisdiction over a manufacturer who delivered over 10 billion asbestos-containing cigarette filters with *knowledge* that cigarettes containing its filters would be sold in the forum State.  *Id*. 946-47.  *See also Federal Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989) ("a 'stream of commerce theory' cannot supplant the requirement that a defendant in some way avail himself of forum law.").

The decision in *Chung* is also instructive.  In *Chung*, the Fourth Circuit held that the shipment of goods to Virginia pursuant to a contract entered into with a Virginian was insufficient to give rise to specific jurisdiction over an Alaskan defendant – even where the Virginian plaintiff had negotiated the contract over the telephone from Virginia and the goods had been shipped by the defendant to Virginia, and damaged en route there.  783 F.2d at 1128-30. The Fourth Circuit held that because the defendant had responded to (and not initiated) inquiries from Virginia, the contract was finalized in Alaska, payment was made in Alaska, and the parties did not have a longstanding relationship, the Alaskan defendant could not be sued in Virginia for its shortcomings in shipping the product to Virginia.  *Id* at 1128.

13

Like the defendant in *Chung*, Taishan was a passive participant in transactions with a company that just happened to be from Virginia.  It "made no purposeful effort of its own to develop a market for its product in Virginia."  *Id.* On the two lone occasions when Taishan contracted with a Virginia company, the Virginia company approached Taishan in China, not the other way around.  The contracts were negotiated, executed, and fully performed in China.  Decl. ¶¶ 27-32.  Taishan delivered the drywall in China.  *Id.* ¶ 34.  Venture paid for the drywall in China. *Id.* ¶ 37.  After Taishan delivered the drywall in China, Taishan had no role whatsoever in the shipment, distribution, re-sale, installation or use of the drywall.  *Id.* ¶ 33. Venture shipped the drywall to Virginia and New Jersey and then re-sold it to one or more third parties.

In addition, the fact that Taishan eventually learned that Venture planned to ship drywall to Virginia is "immaterial . . . since the foreseeability of injury in a distant forum is not the touchstone of minimum contacts." *Chung*, 783 F.2d at 1128.  Taishan cannot be said to have "purposefully availed" itself of the forum state.  *See Consulting Eng'rs Corp.*, 561 F.3d at 280 (contract with Virginia-counterparty governed by Virginia law was too attenuated a contact where Virginia party initiated the business dealings, which occurred primarily in India); *Promotions Ltd. v. Brooklyn Bridge Centennial Comm'n*, 763 F.2d 173, 174-75 (4th Cir. 1985) (Virginia promoter's unilateral contacts with New York City officials and official's forwarding of contacts to others did not alone provide sufficient minimum contacts with Virginia) (per curiam).  *See also Consulting Eng'r.*, 561 F.3d  at 280 (forum must be "focal point" of operations).

In fact, Taishan's contacts with Virginia were even more attenuated than those of the *Chung and Lesnick* defendants found not subject to jurisdiction:  Taishan did not know its product would be used in Virginia.  Taishan did not ship anything to Virginia.  Taishan delivered

the drywall to Venture in China, FOB a Chinese port.  As a result, Taishan's interest in the drywall, and its responsibility for it, ended at the Chinese port.  *Accord Bay Tobacco LLC*, 261 F. Supp. 2d at 494 (foreign company's shipment of goods FOB North Carolina to Virginia company for delivery in Virginia insufficient to establish that defendant purposefully availed itself of forum state).

Furthermore, the Fourth Circuit has held that where a defendant – like Taishan – was not the party responsible for shipping the goods to a forum state, jurisdiction cannot be premised on that shipment.  *See Federal Ins. Co.*, 886 F.2d at 657-58 (sale of malfunctioning cargo winch manufactured in Michigan and shipped FOB Michigan did not give rise to specific jurisdiction over claim for damages caused by the winch in South Carolina, because the defendant had no control over the shipment of the winch once it was sold).

The application of the factors endorsed by Justice Stevens in *Asahi* would also militate against a finding of jurisdiction over Taishan.  480 at 133 (Stevens, J. concurring in part and concurring in the judgment) (additional key factors to consider in jurisdictional analysis include whether there was a regular course of dealing that results in deliveries of multiple units into a forum annually over a period of several years).  Taishan had no regular course of dealing with anyone in Virginia and made no deliveries into the forum. Taishan's contacts fall far short of those required for the exercise of jurisdiction.

**D.    The Exercise Of Jurisdiction Over Taishan Would Be Unreasonable and Offend Traditional Notions Of Fair Play And Substantial Justice**

Even if Taishan had purposefully availed itself of the benefits of a Virginia forum, the exercise of jurisdiction must also be constitutionally reasonable, taking into account:  (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interests in obtaining relief, (d) the efficient resolution of controversies between states, and (e) the shared

interests of the several states in furthering fundamental substantive social policies. *Lesnick*, 35 F.3d at 945-46.

The first factor – the burden on the defendant – is reason enough to find that Taishan should not be subject to personal jurisdiction in Virginia.  In *Asahi,* the Supreme Court cautioned that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  480 at 114; s*ee also Gray v. Riso  Kagaku Corp.*, 82 F.3d 410, 1996 WL 181488, at *4 (4th Cir. April 17, 1996) (exercise of jurisdiction unreasonable over Japanese company due to language and cultural barriers and distance of South Carolina forum from Japan). In order to defend this lawsuit, Taishan would bear the extraordinarily unfair and unjust burden of having to travel around the world. Beyond sheer travel time, Taishan would have to surmount logistical and bureaucratic difficulties in terms of transportation, voluminous translations, governmental approvals, and deep-seated cultural differences that would likely be prohibitively expensive to overcome.  *See Gray*, 1996 WL 181488, at *4. The burden imposed on Taishan would, therefore, be severe.

The interests of this forum state also weigh against this Court asserting jurisdiction over Taishan because, as shown above, Taishan does not have the requisite minimum contacts with Virginia.  Likewise, the third factor – the interests of Plaintiffs – also weighs against finding jurisdiction.  Plaintiffs' interests can be served by the jurisdiction that this Court has over the other defendants from whom the Plaintiffs allege supplied, distributed or installed the drywall in their homes.  Forcing Taishan to participate in this litigation all the way from China does nothing to serve any interest Plaintiffs may have in obtaining relief.  Thus, neither the forum's nor the Plaintiffs' interest weigh in favor of due process allowing jurisdiction.

16

Principles of judicial efficiency – the fourth factor – also suggest that jurisdiction over Taishan is not appropriate, as the aforementioned difficulties of intercontinental, multi-lingual, cross-cultural adjudication would needlessly complicate and prolong these proceedings. Thus, judicial efficiency weighs against due process allowing jurisdiction over Taishan as well.

Finally, the shared interest of the several states in furthering substantive policies most assuredly does not weigh in favor of diluting the guarantee of due process so far as to allow jurisdiction over Taishan. The substantive policy most obviously affected by this litigation is international relations, and the shared interest of the several states is best served through a uniform national policy set forth by the executive branch of the federal government.

In addition, the interests of international comity indicate jurisdiction would be unreasonable. Taishan and Venture entered into a contract providing that all disputes would be decided in a Chinese arbitration under Chinese law. Subjecting Taishan to unexpected litigation half a world away would certainly defeat its reasonable expectations under its contract with Venture, and offend principles of international comity. *OMI Holding, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1097 (10th Cir.1998) (adjudication of dispute with Canadian defendants arising out of contract negotiated in Canada and governed under Canadian law would implicate Canada's sovereign interest in interpreting its laws and militated in favor of dismissal).

As the Supreme Court concluded in *Asahi,* "the procedural and substantive interests of other *nations* . . . as well as the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and <u>an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State</u>." *Id. at* 115,

(emphasis in original and in original).  For all of these reasons, exercising personal jurisdiction over Taishan would contravene "traditional notions of fair play and substantial justice."

Nothing either in the First Amended Complaint or the Second Amended Complaint indicates a basis for jurisdiction over Taishan.  For example, the Second Amended Complaint alleges that Taishan "designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed and/or sold defective drywall at issue in this case."  Rec. Doc. No. 470, ¶ 11.  Thus, the Complaint merely alleges that Taishan put the drywall in the stream of commerce, which as discussed above, is an insufficient basis for jurisdiction.  Consequently, the Court should dismiss this action against Taishan.  *Consulting Eng'rs*, 561 F.3d at 282.[7]

## II.    PLAINTIFFS FAILED TO SERVE THE PLEADINGS UPON WHICH THE DEFAULT JUDGMENT WAS BASED

The default judgment should be vacated for the additional reasons that (1) Plaintiff-Intervenors did not serve Taishan pursuant to the Hague Convention with either their motion for intervention or a pleading  in compliance with Rules 24(c) and 5(a)(2); and (2) the *Germano* Plaintiffs never served the Second Amended Complaint on Taishan in conformity with the Hague Convention.

In keeping with the tenet that default judgments are disfavored, the courts have required "strict compliance" with the legal prerequisites establishing the court's power to render the judgment.  *Varnes v. Local 91 Glass Blowers Ass'n*, 674 F.2d 1365, 1369 (11th Cir. 1982), *quoted by Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind,* 841 F.2d 646, 650 (5th Cir. 1988).  A default judgment in favor of the Plaintiff-Intervenors should not have issued because,

---

[7] There is no basis for the Court to exercise jurisdiction over Taishan based upon TTP's alleged shipments of drywall to the U.S.  TTP is a separately incorporated subsidiary of Taishan. (Decl. ¶ 39.)  TTP's alleged shipments to the U.S. are not attributed to Taishan for jurisdictional purposes.  *See Saudi v. Northrop Grummon Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) (describing general rule that the contacts of a corporate subsidiary cannot be imputed to provide jurisdiction over its parent).  In any event, TTP has never entered into any contracts with companies in Virginia or had any contact whatsoever with Virginia.  (Decl. ¶ 39.)

as is shown below,  they did not comply at all with the requirements of Rule 24 and Rule 5(a)(2), as they failed to serve either their motion to intervene and their pleading or the Second Amended Complaint on Taishan pursuant to Rule 4 or in any other fashion.

"A motion to intervene must be served on the parties as provided in Rule 5 . . . and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c).  Rule 5(a)(2) provides: "No service is required on a party who is in default for failing to appear.  But a pleading that asserts a *new claim for relief* against such a party must be served on that party under Rule 4."  FED. R. CIV. P. 5(a)(2) (emphasis supplied).[8]  In the case of a foreign defendant, Rule 4(f)(1) requires service to be made by an "internationally agreed means of service," in this case the Hague Convention..

The addition of identifiable new plaintiffs through a motion to intervene constitutes the assertion of "new claims," even when the new plaintiffs are part of a putative class identified in a previous pleading.  *See James v. Claiborne*, No. 07-1570, 2009 WL 994951, at *5 (W.D. La. Apr. 13, 2009); *accord Lopez v. NTI, LLC*, 2008 WL 5120542, at *3 (D. Md. Dec. 4, 2008).  In *James*, for example, the court certified the class to which the newly joined plaintiffs belonged, but still held that it was improper to grant them a default judgment when they had not served the defendant with an amended complaint providing notice of their individual claims.  *James*, 2009

---

[8] Taishan acknowledges that the Court in its ruling on Plaintiff-Intervenors' Petition for Attorneys determined that they were not required to serve Taishan with their motion to intervene, a complaint in intervention or the Second Amended Complaint because their claims were not "new."  *See* "Decision Partially Denying the Motion of Plaintiff – Intervenors For Attorneys Fees" (Rec. Doc. No. 4872). The Court is not bound to follow its previous decision, however.  It is not law of the case, as the issue has not been decided by the 5th Circuit. *See United States v. Williams,* 517 F.3d 801, 806 (5th Cir. 2008) ("The law of the case doctrine contemplates that an issue of fact or law decided ***on appeal*** may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.") (quotation and citation omitted) (emphasis supplied).  Even if it were law of the case, the law of the case doctrine is discretionary, and the law of the case need not be followed if it was rendered as a result of clear error.  *In re Provenza*, 316 B.R. 177, 220 (Bankr. E.D.La. 2003).

WL 994951, at *5.[9]  Thus, it is irrelevant that Plaintiff-Intervenors may be part of the putative class described in the *Germano* plaintiffs' pleadings.

Indeed, in their reply to the opposition to the motions to intervene in the *Gross* action, the intervening plaintiffs, also represented by the PSC, conceded that they were required to serve an amended pleading in intervention pursuant to the Hague Convention.  Rec. Doc. No. 5167, p. 2.  As a consequence, they advised their process server, APS International, Ltd., "that the complaints in intervention will need to be served consistent with the Hague Convention (assuming intervention is allowed)."  *Id.*, p. 5.  Given this concession, the Plaintiff-Intervenors should not be heard to argue here that such service was not required in this case.

The default judgment is void for the additional reason that Plaintiffs did not serve Taishan with the Second Amended Complaint upon which the default judgment was based.  Pursuant to Rule 5(a)(2), Plaintiffs were required to serve the Second Amended Complaint on Taishan Gypsum in accordance with Rule 4 because it introduced new claims.  Among other things, the Second Amended Complaint sought certification of a national class, whereas Plaintiffs' First Amended Complaint sought class certification of a class of Virginia residents.  Further, upon filing of the Second Amended Complaint, the First Amended Complaint became a nullity, but the preliminary default and the default judgment were entered on the basis of the Second Amended Complaint.  This Court did not have jurisdiction over Taishan Gypsum with respect to the Second Amended Complaint, and the preliminary default and default judgment must be vacated.  *See Anunciation v. West Capital Financial Services Corp.*, 97 F.3d 1458 (9th Cir. 1996) (court found that the lower court had jurisdiction over a defendant only as to the

---

[9] In addition to *James* and *Lopez*, a leading treatise states unequivocally that additional claims brought by new parties are "new claims" under Rule 5(a). 4B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1146 (3d ed. 2010).

original complaint, with which he was served, and not as to the amended complaint, which was improperly served).

## III.   THE DEFAULT JUDGMENT SHOULD BE SET ASIDE ON THE GROUNDS OF EXCUSABLE NEGLECT

Pursuant to Fed. R. Civ. P. 60(b)(1), the court may set aside a default judgment where the defaulting party can show "excusable neglect."  In determining whether a party has acted with excusable neglect, the Fifth Circuit has explicitly incorporated the "good cause" standard applicable to vacating entries of default under Fed. R. Civ. P. 55.  *In re OCA, Inc.*, 551 F.3d 359, 369 (5th Cir. 2008).  The factors a court will consider include (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented.  *Id.*  In addition, the court may consider (4) whether the public interest was implicated; (5) whether there was significant financial loss to the defendant; and (6) whether the defendant acted expeditiously to correct the default.  *Id.*

### A.   Taishan's Default Was Not Willful

A default is not willful where the defendant lacked actual notice of the action pending against it.  *See Robinson v. Sanctuary Music*, Nos. 08-2078-cv, 08-2320-cv, 08-2333-cv, 2010 WL 2649849 (2d Cir. July 1, 2010) (good cause found where defendants had not been properly served with process prior to default judgment pursuant to the Hague Convention.); *Bituminous Cas. Corp. v. Garcia*, 223 F.R.D. 308, 313-14 (N.D. Tex. 2004) (vacating a default judgment where intervenors adversely affected by judgment had no notice of the suit or entry of default).

Taishan did not willfully default.  Taishan did not receive notice of the Second Amended Complaint, Plaintiff-Intervenors' motion to intervene, the evidentiary hearing, the default judgment, or the award of damages to Plaintiff-Intervenors until after the default judgment was

entered.  Taishan then promptly appeared and made cooperating with this Court "amongst its highest priorities."  Decl. ¶ 48.

Courts have vacated defaults where defendants had a good faith basis for believing that they were not subject to the jurisdiction of the forum court, even if the belief was invalid.  *Carl Marks & Co. v. Union of Soviet Socialist Republics*, 665 F. Supp. 323 (E.D.N.Y. 1987), *aff'd* 841 F.2d 26 (2d Cir. 1988) (vacatur of default judgments entered against the Soviet Union where defendant did not believe the court could have jurisdiction over it); *cf.  Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of Venezuala*, 575 F.3d 491, 503 (5th Cir. 2009) (vacating default with instructions that lower court determine arbitrability of dispute).  Here, Taishan did not understand the significance of the First Amended Complaint, and could not imagine how its sales of drywall in China could have legitimately resulted in U.S. litigation it was required to participate in. (Decl. ¶¶ 41, 46.)  As set forth above, Taishan has *no* business dealings with Virginia and in fact, is not subject to personal jurisdiction in Virginia.  Thus, Taishan had a reasonable belief that responding to the complaint was unnecessary and its failure to do so is excusable.

Taishan's excusable neglect is also attributable to its ignorance of the American legal system and its proceedings.  Taishan did not understand the consequences of not responding to the First Amended Complaint.  (Decl. ¶¶ 42-44.)  *See, e.g., Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1552 (D.C. Cir. 1987) (remanding with instructions to consider, *inter alia,* whether failure to respond to a complaint "was the excusable result of 'a broad divergence in [American and Bolivian] cultural, governmental, and political approaches to the present case.'") (citation omitted); *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 430 F. Supp. 2d 1064 (E.D. Cal., 2005) (vacating default judgment entered against non-English speaking, foreign

22

defendant that received summons and complaint but did not understand the nature of the suit). Moreover, by failing to serve the intervention motion and the Second Amended Complaint, Plaintiff-Intervenors and the *Germano* Plaintiffs deprived Taishan of the opportunity to consider the consequences of not responding or to participate in the hearing upon which the default judgment was based.

### B.    Vacating The Default Judgment Will Not Prejudice Plaintiffs

A plaintiff will not be prejudiced upon vacatur of a default judgment where it cannot show the "'loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'"  *Robinson*, 2010 WL 2649849, *3 (citation omitted).  Here, there is no reason to believe that any evidence has been lost, that discovery would be any more difficult than prior to the default, or that any fraud has taken place.

The cost of requiring Plaintiff-Intervenors to prove their case on the merits will be more expensive than winning by default; however, that is not the type of prejudice that justifies allowing the default judgment to remain.  *In re Marinez*, 589 F.3d 772, 778 (5th Cir. 2009) ("'There is no prejudice to the plaintiff where the setting aside of the default has done no harm to plaintiff except to require [him] to prove [his] case.'") (citation omitted, alteration in original).

### C.    Taishan Has A Meritorious Defense

In determining whether a meritorious defense exists, "'[t]he underlying concern is . . . whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'"  *In re OCA, Inc.*, 551 F.3d at 373, quoting *Jenkins v. Gilchrist v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. 2008).  That possibility exists here.  First, Taishan is not subject to jurisdiction in Virginia.  In addition, even if the judgment were not void, there are other potentially meritorious defenses.   For example, the Findings of Fact do not state whether Plaintiff-Intervenors' houses were inspected to determine if the allegedly defective

drywall therein was manufactured by Taishan.   Additionally, there is a question whether the drywall at issue was defective when it left Taishan's hands in China or if it was damaged or contaminated by a third-party during transit or after it arrived in the U.S.  Accordingly, if the Court determines it has jurisdiction and the case should proceed on the merits, substantial additional fact-finding would be necessary.  And that process of fact findings should be a trial conducted under the Federal Rules of Civil Procedure, including the defendant's right  to challenge any evidence offered by plaintiffs and challenge testimony by cross-examination.

### D.    The Other Factors Weigh In Favor Of Vacatur

#### 1.    Taishan Gypsum Will Incur Significant Financial Losses If The Default Stands

"Default judgments are particularly disfavored in lawsuits involving large amounts of money." *Bangkok Bank Ltd. v. Wallant Int'l Trade, Inc.*, No. 88 CIV. 2675, 1989 WL 156299, at *2 (S.D.N.Y. Dec. 18, 1989).   Courts should vacate a default judgment where the default judgment would cause significant financial loss to the default party.  *In re OCA, Inc.*, 551 F.3d at 374 (vacating default judgment of $600,000).  The default judgment against Taishan of over $2.7 million warrants vacatur.

#### 2.    Taishan Gypsum Acted Expeditiously to Vacate The Default

Under Fed. R. Civ. P. 60, a defaulting party may challenge default within a "reasonable" amount of time, and, in any case, within one year of entry.  Here, Taishan moved to vacate within a few months of learning of the default judgment, a reasonable amount of time, especially given the complexity of the matter.

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE VIRGINIA CONSUMER PROTECTION ACT

This Court has previously held that the *Germano* Complaint did not state a claim under the VCPA because Taishan's sale of drywall to Venture was not a "consumer transaction" within

24

the meaning of the VCPA.  Rec. Doc. No. 4872, p. 12.  Since the Court could not properly grant

a default judgment on Plaintiffs' legally insufficient complaint, *Lewis v. Lynn*, 236 F.3d 766,

767-68 (5th Cir. 2001), the default judgment must be vacated.

## CONCLUSION

For all of the foregoing reasons, the Court should vacate the default judgment and

dismiss the action against Taishan.

Respectfully submitted,

/s/ Thomas P. Owen, Jr.
Joe Cyr
Frank T. Spano
Eric Statman
Matthew J. Galvin
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Email: Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Eric.statman@hoganlovells.com
matthew.galvin@hoganlovells.com
Telephone: 212-918-3000
Facsimile: 212-918-3100

Richard C. Stanley (La. Bar No. 8487)
Thomas P. Owen, Jr. (La. Bar No. 28181)
STANLEY, REUTER, ROSS, THORNTON
& ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: 504-523-1580
Facsimile: 504-524-0069
E-mail: rcs@stanleyreuter.com
tpo@stanleyreuter.em
**Attorneys for Taishan Gypsum Co. Ltd.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum In Support of Motion to Vacate Default Judgment and to Dismiss this Action has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 3rd day of September, 2010

<u>/s/ Thomas P. Owen, Jr.</u>