# EXHIBIT 8

Salomon H. Abadi

Page 1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | X | |
| IN RE: | X | MDL No. 2047 |
| CHINESE-MANUFACTURED | X | |
| DRYWALL PRODUCTS | X | SECTION: L |
| LIABILITY LITIGATION | X | |
| | X | JUDGE FALLON |
| This document applies | X | |
| to all cases | X | MAG. JUDGE WILKINSON |

30(b)(6) VIDEOTAPED DEPOSITION OF

LA SUPREMA ENTERPRISE, INC. and

LA SUPREMA TRADING, INC., by and through

SALOMON H. ABADI

Monday, October 19, 2009

GOLKOW TECHNOLOGIES, INC.

ph 877.370.3377  |  fax 917.591.5672

deps@golkow.com

Salomon H. Abadi

Page 102

1  that's bad drywall.
2          MR. HAYDEN: Objection,
3      argumentative as well as the other
4      objection.
5          MR. RASCO: Objection, form.
6      A.   I suppose so. I suppose so.
7  BY MR. GONZALEZ:
8      Q.   And that's why you were willing
9  to reimburse Banner its money?
10     A.   Yes.
11         MR. BACKMAN: Form.
12         MR. HAYDEN: Objection, form.
13 BY MR. GONZALEZ:
14     Q.   Because it was the right thing
15 to do?
16         MR. HAYDEN: Objection, form.
17     A.   Yes.
18 BY MR. GONZALEZ:
19     Q.   And you try to please your
20 customers by providing them quality product.
21     A.   I imagine that's what you try
22 to do with your customers, correct, Counsel?
23     Q.   And that's what you try to do,
24 right?

Page 103

1      A.   Yes.
2      Q.   Has Knauf done anything to try
3  to fix the problem with your business as a
4  result of the problems they caused you?
5      A.   No. There's an e-mail that
6  says -- no, there's an e-mail because they
7  have a deposit that they did not want to
8  return to me, and the deposit says that
9  Mr. Norris --
10         MR. GONZALEZ: E-mail.
11         THE WITNESS: No, no, the
12     deposit says that Mr. Norris says that
13     he does not want to do any more
14     business with me whatsoever. I
15     correct, I correct, I correct. The
16     e-mail says that Mr. Norris does not
17     want to do any further business with
18     me.
19 BY MR. GONZALEZ:
20     Q.   Do you know why that is?
21         MR. HAYDEN: Objection. Total
22     speculation, hearsay.
23     A.   Ask him. But there, in the
24 e-mail, it says that on my account, they

Page 104

1  ended up with some materials they were not
2  able to sell. Why my fault, I did not
3  manufacture that.
4  BY MR. GONZALEZ:
5      Q.   They made it.
6      A.   Of course.
7      Q.   And it was defective, and it
8  caused you to lose money.
9          MR. HAYDEN: Objection, form,
10     foundation.
11     A.   Well, I am now the type of
12 person that cannot deal in any construction
13 material business because I am public enemy
14 no. 1 now.
15 BY MR. GONZALEZ:
16     Q.   Why is that?
17     A.   Because I brought the product.
18     Q.   What product are we referring
19 to?
20     A.   We're talking about Knauf,
21 Knauf's drywall.
22     Q.   Who did you sell the Knauf
23 drywall product to when you brought it in
24 from China? And specifically I'm referring

Page 105

1  to the drywall.
2          MR. HAYDEN: And just so I'm
3      clear, because we're going back to
4      Knauf again, KPT, right?
5          MR. GONZALEZ: Knauf Tianjin.
6      A.   99.999 percent was dispatched
7  to all of the Banner yards, Banner Supply
8  yards. And a little bit was dispatched to
9  84 Lumber in Fort Myers.
10 BY MR. GONZALEZ:
11     Q.   What year for each, please?
12 Specifically what years for Banner.
13     A.   2006.
14     Q.   And what about for lumber,
15 84 Lumber?
16     A.   The same.
17     Q.   2006?
18     A.   Yes.
19     Q.   Did 84 Lumber make a complaint
20 to you about the quality of the drywall made
21 by Knauf Tianjin that you sold it?
22     A.   No. Oh, forgive me. I need to
23 go to the boys' room one minute.
24     Q.   Sure, absolutely.

## Page 106

1  THE VIDEOGRAPHER: Going off
2  the record, it's 2:29.
3  (Recess taken, 2:29 p.m. to
4  2:37 p.m.)
5  THE VIDEOGRAPHER: Please hold.
6  We're back on the record. The time is
7  2:37.
8  BY MR. GONZALEZ:
9  Q. How much product did you --
10 when I say "product," I'm talking about the
11 drywall -- did you purchase from China from
12 the Beijing company and Pingyi Baier as
13 opposed to Knauf?
14 A. He's got his -- you have the
15 documents.
16 Q. I do. Right. What's your
17 understanding, if you were going to say
18 percentagewise and there's three entities,
19 BNB or Beijing, Pingyi Baier and Knauf, more
20 or less?
21 A. More or less about -- a little
22 bit more than 50 -- a little bit more than
23 50% was purchased from Knauf. One could say
24 that about 30% was -- from whatchamacallit,

## Page 107

1  from Beijing Building Materials, and the
2  other 20 from Pingyi Baier. That's -- well,
3  I don't know. I'm guessing here.
4  Q. An educated estimate?
5  A. Give-and-take, yeah.
6  Q. Okay. What distinguishing
7  marks does the Pingyi Baier drywall have on
8  it?
9  A. None.
10 Q. Does it say "Pingyi Baier" on
11 it?
12 A. No.
13 Q. Does it say "Chinese Drywall"?
14 A. No.
15 Q. It has no markings on it at
16 all?
17 A. Not that I recall.
18 Q. How about the Beijing product,
19 Beijing Materials?
20 A. What about it?
21 Q. What distinguishing marks does
22 it have?
23 A. None.
24 Q. It doesn't say BNB, BMB or

## Page 108

1  Beijing Materials?
2  A. It doesn't say -- it doesn't
3  say anything.
4  Q. How about Knauf? Knauf?
5  A. Knauf has its -- its
6  whatchamacallit -- its Knauf label.
7  Q. Okay. Now, in 2006, do you --
8  I'm going to ask you, there's a long list of
9  companies here and I'm going to ask you which
10 ones you remember La Suprema selling to.
11 AC-1 Building, do you remember
12 that?
13 A. Yes.
14 Q. Did you sell to them?
15 A. Yes.
16 Q. What year did you sell Chinese
17 drywall to them?
18 A. I believe we could simplify.
19 Everything was sold in 2006.
20 Q. Okay. Let's do it that way.
21 I'll ask -- I'm going to give you this
22 preface so that you'll know that it's the
23 same question, and the question for all of
24 these will be, do you remember selling

## Page 109

1  Chinese drywall to the following companies in
2  2006?
3  A. That's fine.
4  Q. AC 1 Building.
5  A. Yes.
6  Q. All Steel?
7  A. Yes.
8  Q. Banner Miami?
9  A. Yes.
10 Q. Banner Fort Myers?
11 A. Yes.
12 Q. Banner Pompano?
13 A. Yes.
14 Q. Banner Port St. Lucie?
15 A. Yes.
16 Q. Banner Supply Company Tampa?
17 A. Yes.
18 Q. Black Bear Gypsum?
19 A. Yes.
20 Q. Cape Cement and Supply?
21 A. Yes.
22 Q. Cape Cement and Supply Company?
23 May be the same one.
24 A. Well, it's the same, yes.

**Page 198**

1  MR. RASCO: That's from
2  La Suprema.
3  MR. MONTOYA: Correct.
4  MR. RASCO: To Banner,
5  Port St. Lucie.
6  MR. MONTOYA: Correct.
7  MR. RASCO: These all appear to
8  be La Suprema invoices, we stipulate
9  to authenticity.
10  MR. MONTOYA: And to business
11  records?
12  MR. RASCO: That's what my
13  stipulation is, yes.
14  MR. MONTOYA: Okay. Then
15  Exhibit 351 is from La Suprema to
16  Banner, Pompano.
17  MR. RASCO: Yes, they are, and
18  these are invoices created by
19  Banner -- I'm sorry, created by
20  La Suprema. I stipulate either
21  Trading or Enterprise, and I stipulate
22  to authenticity as to either.
23  MR. MONTOYA: Exhibit 347 is
24  from La Suprema to AC-1 or AC-I

**Page 199**

1  Supply, I'm not sure if it's an "I" or
2  a "1."
3  MR. RASCO: It's a 1. I
4  stipulate to authenticity. These are
5  all La Suprema documents.
6  MR. MONTOYA: Exhibit 358 is
7  from La Suprema to All Steel?
8  MR. RASCO: The last one was
9  Exhibit 347?
10  MR. MONTOYA: Yes.
11  MR. RASCO: Okay. Because that
12  was out of order.
13  MR. MONTOYA: We went from 351
14  to 347.
15  MR. RASCO: Correct. That's
16  why I asked.
17  MR. MONTOYA: Exhibit 348, from
18  La Suprema to All Steel.
19  MR. RASCO: Yes, these --
20  Exhibit 348 appears to be La Suprema
21  documents. We stipulate to
22  authenticity.
23  MR. MONTOYA: Exhibit 350 is
24  from La Suprema to Banner, Fort Myers.

**Page 200**

1  MR. RASCO: I stipulate that
2  these are all La Suprema documents,
3  and therefore we stipulate to their
4  authenticity. To the extent that I'm
5  making a stipulation and there should
6  be a casual or random document not on
7  La Suprema Trading or La Suprema
8  Enterprises letterhead, then I'm not
9  stipulating to that. Every single
10  document of La Suprema carries its
11  letterhead.
12  MR. GONZALEZ: As to those
13  documents that may be inadvertently
14  within those, we're agreeing that they
15  are documents kept within the course
16  of business in the box that we've
17  previously identified it.
18  MR. RASCO: Thus far that's
19  been the case, to the best of my
20  knowledge. I've not looked at every
21  document, but that appears to be the
22  case, correct.
23  MR. MONTOYA: Exhibit 349,
24  La Suprema to Banner, Miami.

**Page 201**

1  MR. RASCO: I agree, 349 we'll
2  stipulate to authenticity.
3  MR. MONTOYA: That's all I have
4  for the documents.
5  MR. GONZALEZ: Okay. I have a
6  series of questions, not many, and
7  then I'm going to pass the witness at
8  that point.
9  BY MR. GONZALEZ:
10  Q. Did you have any contact with
11  anybody from Pingyi Baier?
12  A. When -- at the first time that
13  I -- we -- yes.
14  Q. Who?
15  A. Mr. Clark.
16  Q. Where is Mr. Clark located?
17  A. At Pingyi Baier.
18  Q. In China?
19  A. In China, of course.
20  Q. What city?
21  A. Don't know. The address is
22  there.
23  Q. Did you have contact with him
24  one time or more than one?