UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:
CHINESE MANUFACTURED DRYWALL                 MDL DOCKET No: 2407
PRODUCTS LIABILITY LITIGATION

Section L

Judge Fallon

THIS DOCUMENT RELATES                         Magistrate Judge Wilkinson
TO THE FOLLOWING CASE:

DEAN & DAWN AMATO                    Case No: 10-932
individually and on behalf of
others similarly situated, et al.,
and
FIRST EAST SIDE SAVINGS BANK,
a Florida corporation,
        Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY
and
NAUTILUS INSURANCE COMPANY,
an Arizona corporation,
        Defendant.

MOTION TO DISMISS FIRST EAST SIDE SAVINGS BANK'S
CLAIMS AGAINST NAUTILUS INSURANCE COMPANY
WITH PREJUDICE OR IN THE ALTERNATIVE TO TRANSFER
THAT CLAIM TO THE SOUTHERN DISTRICT OF FLORIDA
AND INCORPORATED MEMORANDUM OF LAW

NAUTILUS INSURANCE COMPANY asks that the court grant this motion and dismiss the

claims made by First Eastside Savings Bank against Nautilus Insurance Company with prejudice and says:

THE FACTS

1.  Plaintiff seeks a declaration that the commercial general liability insurance policy issued by

    Nautilus Insurance Company to Southwell Homes, LLC provides coverage for the

damages sought by First East Side Savings Bank against Southwell Homes, LLC in the *Payton* (Omni I) Chinese drywall class action lawsuit.[1]

2.  The *Amato* complaint alleges that First East Side Savings Bank owns several houses constructed by Southwell Homes, LLC and that First East Side Savings Bank has sued Southwell Homes, LLC in the *Payton* (Omni I) Chinese drywall class action lawsuit seeking property damage caused by the Chinese drywall installed in the houses and that the commercial general liability policy number NC 737240 issued by Nautilus Insurance Company[2] provides coverage for the damages alleged by First East Side Savings Bank against Southwell Homes, LLC in the *Payton* (Omni I) Chinese drywall class action lawsuit.

3.  Since the policy was not attached to the complaint, we have attached it to this motion as *Exhibit A.*

4.  The *Amato* complaint alleges in pertinent part - -

### PLAINTIFFS' AMENDED OMNIBUS CLASS ACTION COMPLAINT (V)

Pursuant to Federal Rule of Civil Procedure 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold by the Insured Defendants, as defined herein. In order to accomplish an effective class structure, each of the class representatives is pursuing a nationwide class action against the manufacturer(s) of the Chinese manufactured drywall located in plaintiffs' homes, as set forth in *Payton, et al.* v. *Knauf Gips KG, et al.,* No.09-7628 (E.D. La.) (Omni I); *Wiltz, et al.* v. *Beijing New Building Materials Public Limited Co., et al.,* No.

---

[1] The motion is directed solely to the claims made by First East Side Savings Bank on the policy(ies) issued by Nautilus Insurance Company to Southwell Homes, LLC and not any other claim(s), claimant(s), policy(ies) or defendant(s).

[2] Nautilus Insurance Company issued three polices to Southwell Home, LLC - - NC 618323, effective 12/11/2006 – 6/11/2007; NC 671317, effective 6/11/2007 – 12/11/2007; and NC 737240, effective 12/11/2007 – 6/11/2008.  The policies are all but identical and each contains all of the terms, conditions and endorsements addressed in this motion.

10-361 (E.D. La.) (Omni II); *Benes, et al.* v. *Knauf Gips KG, et al.,* No. 09-6690 *(B.D. La.)* (Omni III); *Rogers, et al.* v. *Knauf Gips KG, et al.,* No. 10-362 (E.D. La.) (Omni IV) (the "National Class Actions"). Subordinate to the National Class Actions, the identified class representatives are participating in subclasses asserting this Declaratory Judgment Action pursuant to 28 U.S.C. § 2201 seeking a declaration mandating coverage by the respective Insurance Company Defendants for all damages and remedies under the pertinent insurance policies for which the distributors, suppliers, importers, exporters, brokers, builders, developers, contractors, and installers (the "Insured Defendants") for whom the Plaintiffs have standing are liable (class and subclass members shall be collectively referred to herein as "Class Members"). In addition, the identified plaintiffs file this Direct Action pursuant to Louisiana Revised Statute 22: 1269.

. . .

## PLAINTIFFS

. . .

150. Plaintiff, First East Side Savings Bank owns real property located at 258 Boston Way, Lake Placid, Florida 33852; 480 NE Coolidge Avenue, Lake Placid, Florida 33852 and 113 Tryon Avenue, NW, Lake Placid, Florida 33852. Plaintiff is participating as a class representative in the class and subclasses as set forth in the schedules accompanying this complaint which are incorporated herein by reference.

. . .

## DEFENDANTS

427. Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

### The Insurance Company Defendants

428. Detailed charts showing which insurance company provided general liability, excess, and/or umbrella insurance for each Insured Defendant, as well as the pertinent policy numbers and dates of coverage, are attached as Schedule 2 and accompanied as if fully set forth herein.

429. Each of the following Insurance Company Defendants issued policies of general liability, excess, and/or umbrella insurance under which an Insured Defendant is a named or additional insured as set forth in Schedule 2 that provide coverage for the Underlying Claims asserted by Plaintiffs against the Insured Defendant. Such insurance policies include policies issued directly to the Insured Defendants, as well as policies issued to certain drywall subcontractors that supplied and/or installed Chinese drywall

in the Plaintiffs' homes, as set forth in Schedule 2, under which an Insured Defendant is a named or additional insured. As such, each Insurance Company Defendant is liable for the damages alleged herein against the respective Insured Defendant, individually, jointly and *in solido*.

• • •

495. Defendant, Nautilus Insurance Company, is an Arizona corporation with its principal place of business at 7233 East Butherus Drive, Scottsdale, Arizona 85260. Defendant can be served through the Louisiana Secretary of State at 8585 Archives Ave., Baton Rouge, LA 70809.

• • •

### The Developer/Builder Defendants

• • •

593. Defendant, Southwell Homes, LLC is an entity or individual with a principal place of business at 16191 NW 57th Avenue, Miami, Florida 33014. Defendant is organized under the laws of Florida and can be served through its registered agent, David W. Southwell, CPA, PLLC, 16191 NW 57th Avenue, Miami, FL 33014. Defendant built certain Subclass Members' homes and, directly or through agents, installed Chinese drywall in these homes, which has resulted in harm and damages to Subclass members as described herein.

• • •

## FACTS REGARDING CHINESE DRYWALL PRODUCT

623. Upon information and belief, the Insured Defendants' drywall contains gypsum.

624. In "Chinese drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by the Insured Defendants herein), the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.

625. The "Chinese drywall" is not fit for its ordinary and intended purpose in that it contains high levels of sulfur and strontium, which emit high levels of sulfur and sulfur compounds, including sulphuric acid and hydrogen sulfide, carbonyl sulfide and sulfur dioxide which corrode copper wires, copper plumbing, copper piping, air-conditioner coils, and other component parts of building, appliances, and personal property, including, but not limited to, HVAC systems, refrigerators, televisions, personal computers and other electrical and electronic devices.

626. The Chinese-manufactured drywall (and the hydrogen sulfide and/or other compounds emitted there from, either independently and/or in combination with other ambient compounds such as formaldehyde) sold by and/or through the Insured Defendants has also been widely associated with an offensive smell, headaches, eye

4

irritation, coughing, sore throats, an aggravation of allergy and/or breathing problems, and fear of potential long-term health effects, which have, in many cases, further contributed to a loss of enjoyment, mental anguish, and/or loss of use.

627. As a direct and proximate result of the Insured Defendants' actions and omissions, Plaintiffs' and the Class Members' structures, personal property, and bodies have been exposed to Defendants' Chinese drywall and the corrosive and harmful effects of the hydrogen sulfide and other compounds being released from Defendants' Chinese drywall.

. . .

635. Plaintiffs here seek declaratory relief mandating coverage by the respective Insurance Company Defendants for all damages and remedies under the pertinent insurance policies for the Underlying Claims for which the Insured Defendants are liable.

. . .

**The Insurance Company Defendants and Subclasses (Subclasses 2 et seq.)**

. . .

647. The subclasses identified in Schedule 1 are comprised as follows:

. . .

Subclass # 67:          Nautilus Insurance Company

. . .

**COUNT I**
**DECLARATORY JUDGMENT**
**(Against All Defendants)**

659. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

660. Under the terms of the policies, the Insurance Company Defendants are obligated to indemnify the Insured Defendants in connection with the Underlying Claims.

661. Upon information and belief, the Insured Defendants have asked the Insurance Company Defendants to perform their contractual obligations under the policies.

662. A justiciable controversy exists as to the insurance coverage the policies provide.

663. Accordingly, the Plaintiffs are entitled to a judgment declaring that the Insurance Company Defendants are obligated to indemnify the Insured Defendants in connection with the Underlying Claims, pursuant to 28 U.S.C. § 2201.

. . .

5.  Put in its simplest form, the *Amato* complaint seeks a declaration that Nautilus Insurance Company

owes Southwell Homes, LLC insurance coverage for the clams made against Southwell Homes, LLC by First East Side Savings Bank in the *Payton* (Omni I) Chinese drywall class action lawsuit.

6. Since the *Payton* (Omni I) Chinese drywall class action lawsuit was not attached to the complaint, we have attached the relevant pages to this motion as *Exhibit B*.

### THE PAYTON (OMNI I) COMPLAINT

7. The *Payton* complaint alleges that First East Side Savings Bank owns three houses constructed by Southwell Homes, LLC, that those houses contain defective Chinese drywall, that the Chinese drywall installed in the houses is releasing / off-gassing dangerous chemical gases that are the proximate cause of the property damage and personal injury alleged - -

### PLAINTIFFS OMNIBUS CLASS ACTION COMPLAINT (I)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold by the Defendants. In order to accomplish an effective class structure, each of the class representatives is pursuing a nationwide class action against the Knauf entities, who are the manufacturers of the drywall located in plaintiffs' homes. Subordinate to the national class action, the identified class representatives are participating in subclasses asserting claims against each of their distributors and suppliers (Subclasses 1 - 43); each of their importers, exporters, and brokers (Subclasses 44 - 48); each of their builders and developers (Subclasses 49 - 436); and each of their contractors and installers (Subclasses 437 - 529) for whom they have standing (class and subclass members shall be collectively referred to herein as "Class Members"). Each of the Defendants in this action are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue in this litigation.

. . .

### PLAINTIFFS

. . .

1029.  Plaintiff, First East Side Savings Bank owns real property located at 258 Boston Way, Lake Placid, Florida 33852; 480 NE Coolidge Avenue, Lake Placid, Florida

33852 and 113 Tryon Avenue, NW, Lake Placid, Florida 33852. Plaintiff is participating as a class representative in the class and subclasses as set forth in the schedules accompanying this complaint which are incorporated herein by reference.

. . .

## The Developer/Builder Subclasses

. . .

2461. Defendant, Southwell Homes, LLC is an entity or individual with a principal place of business at 16191 NW 57th Ave., Miami, Florida 33014. Defendant is organized under the laws of Florida. Defendant built certain Subclass Members' homes and, directly or through agents, installed defective drywall in these homes, which has resulted in harm and damages to Subclass members as described herein.

. . .

## FACTS REGARDING PRODUCT DEFECT

. . .

2610. Upon information and belief, Defendants' drywall contains gypsum.

2611. In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.

2612. Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

2613. Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

2614. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall.

2615. Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures and/or caused personal injury resulting in eye

7

irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

. . .

2618. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm and/or personal injury.

2619. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

2620. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and the Class Members have been exposed to toxic gases, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair and remediation of their home, of their home contracts, emergency/corrective notice, environmental testing and monitoring, and/or medical monitoring.

. . .

## CLASS ACTION ALLEGATIONS
### The Builder/Developer Subclasses (Subclasses 49-436)

. . .

2626. The representative Plaintiffs with claims against their builders/developers, set forth in the attached Schedule "3" (the alignment of Plaintiffs and Defendants is depicted in Schedule 3 for each subclass), assert subclasses pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the builders/developers for whom they have standing. The designated Plaintiffs in Schedule 3 define their subclasses to be as follows:

All owners and residents (past or present) of real property located in the United States containing Knauf's defective drywall where each of the defendants identified in Schedule 3 was the builder or developer of the property.

2627. The builder/developer subclasses identified in Schedule 3 are comprised as

follows:

. . .

Subclass #377: Southwell Homes, LLC

. . .

**Sean and Beth Payton, et al. v. Knauf Gips, KG, et al.**
**Schedule "3"–Builder/Developer List of Subclasses to Plaintiffs Omnibus Class**
**Action Complaint (I)**

. . .

Subclass #377: Southwell Homes, LLC

. . .

**Sean and Beth Payton, et al. v. Knauf Gips, KG, et al.**
**Schedule "3"–Builder/Developer List of Subclasses to Plaintiffs Omnibus Class**
**Action Complaint (I)**

| Plaintiff/ Address | Builder/Defend | Defend. Subclass # |
|---|---|---|
| | . . . | |
| First East Side Sav Bank 9399 W Commercial Blvd. Tamarac, FL 33351 | Southwell Homes, LLC | 377 |

. . .

8.  The *Payton* lawsuit alleges 12 separate counts against Southwell Homes, LLC, and the allegations contained in ¶¶ 2610 - 2620 above are incorporated into each of those 12 counts.

**The Policy Issued by Nautilus Insurance Company to Southwell Homes, LLC.**

9.  The policy[3] issued by Nautilus Insurance Company to Southwell Homes, LLC contain a CG 00 01 10 01 Commercial General Liability Coverage Form providing insurance against liability that Southwell Homes incurs due to bodily injury and/or property damage taking place during the policy period and within the policy territory.

10. The policy's Commercial General Liability Coverage Part Declarations page states that

---

[3] As explained in footnote 1, three polices were issued by Nautilus to Southwell Homes and each of those policies contains all of the terms, conditions and exclusions addressed in this motion. For simplicity sake, we will refer to the policies collectively in the singular.

insurance coverage for Products/Completed Operations, Personal and Advertising and Medical Expense is not included in the coverage provided by the policy.

11. The policy's Commercial General Liability Coverage Part Declarations page classifies the insured risk as: Code # 68606 – Vacant Buildings . . . excluding products and/or completed operations.

12. The policy contains an endorsement that excludes Products - Completed Operations Hazard insurance coverage - -

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EXCLUSION - PRODUCTS-COMPLETED OPERATIONS
HAZARD**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

13. The policy contains an endorsement eliminating Coverage B – Personal and Advertising Injury insurance coverage - -

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EXCLUSION - PERSONAL AND ADVERTISING INJURY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply.

14. The policy also contains an endorsement eliminating Coverage C - Medical Payments insurance coverage - -

COMMERCIAL GENERAL LIABILITY

10

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EXCLUSION - MEDICAL PAYMENTS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section I • Coverage C - Medical Payments does not apply and none of the references to it in the Coverage Part apply.

15. The policy contains an endorsement eliminating insurance coverage for "'bodily injury', 'property damage', 'personal and advertising injury' or "medical payments" arising out of work performed by contractors or subcontractors hired by or on behalf of any insured, or any insured's acts or omissions in connection with the general supervision of such work."

16. That endorsement also eliminates "products-completed operations hazard" insurance coverage for losses resulting from work performed by the insured's contractors or subcontractors - -

**NAUTILUS INSURANCE COMPANY**

**LIABILITY ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**EXCLUSION - CONTRACTORS AND SUBCONTACTORS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**     The following exclusion is **added** to Paragraph **2. Exclusions** of **SECTION I – COVERAGE A – BODILIY INJURY AND PROPERTY DAMAGE LIABILITY**, **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:** and **SECTION I – COVERAGE C – MEDICAL PAYMENTS:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by contractors or subcontractors hired by or on behalf of any insured, or any insured's acts or omissions in connection with the general supervision of such work. This exclusion applies whether such liability is alleged to be direct or vicarious.

**B.**     For the purpose of this endorsement, exclusion **I.**, **Damage to Your Work**, under Paragraph **2.**, **Exclusions** of **SECTION I – COVERAGE A – BODILIY INJURY AND PROPERTY DAMAGE LIABILITY** is **replaced** by the following:

11

This insurance does not apply to:

**l.**     **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

17. The policy defines "pollutants" as - -

**SECTION V – DEFINITIONS**

**15.**     "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

18. The policy does not provide insurance coverage for bodily injury or property damage that would not have occurred but for the actual or threatened release of gaseous or irritants or contaminants, including smoke, vapor, soot, fumes, acids, alkalis and chemicals.

                                        **COMERCIAL GENERAL LIABILITY**
                                        **CG 21 49 09 99**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.**     **Pollution**

     **(1)**     "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

     **(2)**     Any loss, cost or expense arising out of any:

          **(a)**     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

          **(b)**     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up,

12

removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

. . .

**NAUTILUS INSURANCE COMPANY**

**LIABILITY ENDORSEMENT**

**NOTICE TO POLICY HOLDERS**

This insurance does not provide coverage as required by Environmental Protection Agency (EPA) 40 CFR Parts 280 and 281 for underground storage tanks nor any coverage under CERCLA or similar State or Federal Environmental Acts).

This policy Excludes all Coverage for Pollution

. . .

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.    **Insuring Agreement**

. . .

2.    **Exclusions**

This insurance does not apply to:
. . .

m.    **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n.    **Pollution-Related**

Any loss, cost or expense arising out of any:

(1)    Request, demand or order that any insured or others test for, monitory, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of "pollutants"; or

(2)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

. . .

19. Each of the claims alleged against Southwell Homes in the *Payton* complaint incorporates the allegations contained in ¶¶ 2610 – 2620.  Given this, each of the claims alleged against Southwell Homes alleges that Southwell Homes built or caused to be built houses

13

containing drywall that "release(s) sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall" and that "Sulfides and other noxious gases, such as those emitted from Defendants' drywall" are the proximate cause of the property damage and personal injury complained of.

20. Each of the claims alleged by First East Side Savings Bank against Southwell Homes in the *Payton* complaint seeks damages resulting from the existence of Chinese drywall in the houses.

### THE APPLICABLE LAW

21. Since this claim is brought in diversity, and since the insurance policy was sold to and delivered by Nautilus Insurance Company in Florida, to a Florida insured, Florida law governs. *Employers Mut. Liability Ins. Co. v. Houston Fire & Cas. Ins. Co.*, 194 F. Supp. 828, 832 (D.C.La. 1961).

22. Where a Plaintiff refers to documents in the complaint, but fails to attach the documents to the complaint, and where a defendant attaches those documents to a motion to dismiss, the court must consider those documents in reaching its decision. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000) ("documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

23. Documents attached to the complaint are controlling for all purposes. Rule 10(c), Fed, R. Civ. Pro. *See also Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994)("When a party attaches exhibits to the complaint those exhibits become part of the pleading and the court will review those exhibits accordingly.").

24. In reviewing the complaint, the court is not bound by the pleader's interpretation of the documents.

We are not bound by [plaintiff's] interpretation of the attached

14

> exhibits. The conclusions of the pleader, as to the meaning of the exhibits attached to the complaint, are not binding on the court.

*Ginsberg v. Lennar*, 645 So. 2d at 494.

25. Where the documents contradict the allegations of the complaint, the court should ignore the contradictory allegations and look to the plain meaning of the documents.

> Exhibits attached to the complaint are controlling, where the allegations of the complaint are contradicted by the exhibits, the plain meaning of the exhibits will control.

*Ginsberg v. Lennar*, 645 So. 2d at 494.

26. This is true even on a motion to dismiss for failure to state a claim upon which relief may be granted.

*Ginsberg v. Lennar*, 645 So. 2d at 490, 502 (directing trial court to, on remand, dismiss complaint because attachments to show that complaint did not and could not state a cause of action upon which relief may be granted).

27. Under Florida law a property owner may not sue for damage to property prior to ownership - - in order to sue for damage to the property prior to ownership, the present owner must expressly allege assignment of the prior owner's causes of action.

> Where the cause of action arises out of an injury to property, that action is personal to the owner of the property and a party who subsequently takes title to the property, without receiving an assignment of that cause of action, may not pursue that cause of action. *See Selfridge*; *Florida Power*. In order to pursue a cause of action the subsequent purchaser of the property must allege that they became owner of the property after the damage was done and "that by assignment, he became possessed of all rights and causes of action which the original owners possessed." *Bender*, 2 So.2d at 299.

*Ginsberg v. Lennar*, 645 So. 2d at 496.

28. Under Florida law the interpretation of a written document is a question of law.  *Atlanta Jet v. Liberty Aircraft Services*, LLC, 866 So. 2d 148 (Fla. 4th DCA 2004).

29. Similarly, the interpretation of an insurance policy is a question of law.  *Garcia v. Federal Ins. Co.*,

969 So. 2d 288 (Fla. 2007).

30. Florida's Supreme Court consistently holds "that insurance contracts must be construed in accordance with the plain language of the policy" and that a court may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties" - - "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.* 913 So. 2d 528, 532 (Fla. 2005).

31. Finally, "the applicability of policy exclusions contained in a policy attached as an exhibit may be raised by a motion to dismiss when the allegations of the complaint clearly show that the exclusions do apply." *Florida Farm Bureau General Ins. Co. v. Insurance Co. of North America*, 763 So. 2d 429, 432 (Fla. 5th DCA 2000).

## THE AMATO COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION

32. The *Amato* complaint alleges that First East Side Savings Bank owns several houses constructed by Southwell Homes, LLC and that those houses contain Chinese drywall that is emitting / off-gassing dangerous chemical gases into the house and that is causing property damage, that First East Side Savings Bank has sued Southwell Homes, LLC in the *Payton* (Omni I) Chinese drywall class action lawsuit seeking damages for the losses caused by the Chinese drywall and that the commercial general liability policy issued by Nautilus Insurance Company provides coverage for the damages alleged by First East Side Savings Bank against Southwell Homes, LLC in the *Payton* (Omni I) Chinese drywall class action lawsuit.

33. The *Payton* complaint alleges that First East Side Savings Bank owns houses constructed by Southwell Homes, LLC, that those houses contain defective Chinese drywall, that the Chinese drywall installed in those homes is releasing / off-gassing dangerous chemical gases into the house

16

and that those gases are causing property damage and personal injury.

> **There is no Insurance Coverage Under the Policy Issued by Nautilus for the Claims Made Against Southwell Homes, LLC Because the Policy Does Not Provide Insurance Coverage for Southwell Homes, LLC's Completed Operations.**

34. The policy issued by Nautilus insurance Company to Southwell Homes, LLC does not provide insurance coverage for loss or injury taking place after Southwell Homes, LLC has completed its work - - the policy does not provide completed operations coverage.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION - PRODUCTS-COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

35. This is true regardless of who did the work.

**NAUTILUS INSURANCE COMPANY**

**LIABILITY ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION - CONTRACTORS AND SUBCONTACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**   The following exclusion is **added** to Paragraph **2. Exclusions** of **SECTION I – COVERAGE A – BODILIY INJURY AND PROPERTY DAMAGE LIABILITY**, **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:** and **SECTION I – COVERAGE C – MEDICAL PAYMENTS:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by contractors or subcontractors hired by or on behalf of any insured, or any insured's acts or omissions in connection with the general supervision of such work. This exclusion applies whether such liability is alleged to be direct or vicarious.

**B.**   For the purpose of this endorsement, exclusion **I.**, **Damage to Your Work**, under Paragraph **2.**, **Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is **replaced** by the following:

17

This insurance does not apply to:

**I.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

36. The policy controls and the court need not considered contradictory, conclusory allegations.

37. Both *Amato* and *Payton* uniformly allege that First East Side Savings Bank owns 3 houses built by Southwell Homes, LLC and containing Chinese drywall and that First East Side Savings Bank has suffered damages as a result of the Chinese drywall.[4]

38. Nautilus' insurance policy does not provide insurance coverage for the claims made against Southwell Homes, LLC by First East Side Savings Bank because the policy does not provide completed operations insurance coverage.

39. First East Side Savings Bank's complaint against Nautilus Insurance Company must be dismissed with prejudice because there is no set of facts upon which it can show that the policy issued by Nautilus insurance Company to Southwell Homes, LLC provides completed operations insurance coverage for the damages alleged.

**There is No Insurance Coverage for First East Side Savings Bank's Chinese Drywall Claims Against Southwell Homes, LLC**.

40. The policy issued by Nautilus Insurance Company to Southwell Homes, LLC excludes coverage for damage or injury that would not have occurred but for the release or escape of pollutants, it also excludes coverage for any demand that the insured remove, clean up or otherwise respond to the effects of pollutants - -

This insurance does not apply to:

---

[4] First East Side Savings Bank does not seek to recover damages occurring prior to its ownership, nor is it alleged that by assignment, it has became possessed of all rights and causes of action that the original/prior owner possessed against Southwell Homes, LLC.

18

**f. Pollution**

**(1)**     "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)**     Any loss, cost or expense arising out of any:

    **(a)**     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **(b)**     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

41. The policy defines pollutants as - -

    **15.**     "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalines, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

42. Florida's Supreme Court has held this language to be clear, unambiguous and enforceable - - it has also held that this language precludes coverage for pollution related injuries such as those alleged in the Chinese drywall class action lawsuits. *Deni Associates v. State Farm*, 711 So. 2d 1135 (Fla. 1998).

43. In *Deni*, some of the claimants' injuries were caused by exposure to ammonia fumes released after a spill from a blueprint machine in an office - - others resulted from the accidental spraying of a pesticide. The policies at issue contained the standard CGL pollution exclusion, as well as the standard CGL definition of "pollutants."

44. Claimants argued that the pollution exclusion was ambiguous. Claimants also argued that the exclusion should only be applied to "environmental" or "industrial" pollutants, and not the fumes of ordinary, everyday substances such as ammonia or pesticides.

45. The *Deni* Court found that the term pollution, as used and defined by the policy, included common, everyday substances that are safe in their customary use but that become harmful when released into

19

the environment. The Court also found that the pollution exclusion contained in the standard CGL coverage form was clear, unambiguous and precluded coverage for all types of pollution related claims.

46. Applying these findings, the *Deni* Court held that the standard CGL pollution exclusion was clear, unambiguous and eliminated coverage for the loss.

47. The Eleventh Circuit, applying Florida law and citing to *Deni*, has held the CGL pollution excludes coverage for fume / vapor claims such as those alleged in the Chinese drywall class action lawsuits. *Technical Coating Applicators v. USF&G*, 157 F. 3d 843, 845-46 (11th Cir. 1998).

48. In *Technical Coating* a roofer properly applied a polyurethane coating to a school roof.  Several months later teachers and students began complaining of respiratory problems related to the fumes / vapors emitted by the polyurethane coating.

49. The roofer's CGL policy contained a standard CGL pollution exclusion.  A claim was made, and the roofer's insurer denied coverage.  Distinguishing *Deni*, the trial court found coverage for the loss. The Eleventh Circuit disagreed.

50. Citing to *Deni*, the *Technical Coating* court found that the pollution exclusion applied regardless of whether the polyurethane coating was applied properly or negligently.  The court also found that the fumes / vapors emitted were pollutants as that term is used and defined by the policy.  Applying these findings, *Technical Coating* court held that under Florida law the injuries caused by the vapors / fumes were excluded from coverage by the policy's pollution exclusion.

51. In *Philadelphia Indem. Ins. Co. v. Yachtman's Inn Condo Ass'n, Inc.*, 595 F.Supp.2d 1319 (S.D. Fla. 2009) claimant was injured after exposure to feces, raw sewage and battery acid present on the insured's property.  The issue before the court was whether the standard CGL pollution exclusion eliminated coverage for the injury.

52. The *Yachtman's Inn* court, citing to *Deni*, found the policy clear and enforceable as written. The court further found that "In determining whether a substance is an irritant or contaminant, the court should look to see if the disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" *Id.*, at 1325.

53. In making this determination the court looked to claimant's allegations. Claimant had alleged that the feces, raw sewage and battery acid were a "health risk", a "hazardous condition" and that as a result of the exposure claimant suffered "severe dermatological injuries." *Id.* On the facts pled, the court found that feces, raw sewage and battery acid were irritants and contaminates as those term were used and defined by the policy. *Id.*

54. Applying the facts pled to the policy language, the *Yachtman's Inn* court held that there was no duty to defend or indemnify the insured for the claims made because the claims were the result of exposure to pollution, a loss not covered by the policy. *Id.*, at 1325.

55. In *Auto-Owners Insurance v. Housing Authority of the City of Tampa*, 121 F.Supp.2d 1365 (M.D. Fla. 1999) crumbling lead-based paint was inhaled or ingested, causing injury. The City's CGL carrier sought a declaration that injuries caused by lead-based paint were excluded from coverage by the policy's pollution exclusion. The City argued that the definition of pollutant did not include lead based paint, because lead-based paint was not "smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste" as those terms were used in the policy. The City also argued *Deni* did not control because crumbled paint was a solid and not a vapor, gas or fume.

56. The *City of Tampa* court disagreed, finding that ingesting or inhaling crumbled paint is no different than inhaling smoke, soot, vapors or fumes. The court also found that under Florida law the lead in lead-based paint was a pollutant as that term was used and defined by the policy.

57. On these findings, the *City of Tampa* Court held that policy's pollution exclusion eliminated

21

coverage for injury caused by the lead-based paint.

58. Here, First Easy Side Savings Bank seeks a declaration that the damages alleged in the *Payton* (Omni I) Chinese drywall class action lawsuit are covered by the policy.[5]

59. The policy defines pollutants as - - "'Pollutants' means any solid, liquid, **gaseous** or thermal **irritant** or **contaminant**, including smoke, **vapor**, soot, **fumes**, acids, alkalines, **chemicals** and waste." (emphasis added).

60. The policy excludes coverage for "'Bodily Injury' or 'Property Damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'".

61. Both *Payton* and *Amato* uniformly allege that the Chinese drywall is emitting / off gassing dangerous, poisonous and corrosive sulfur based chemical gases that have contaminated claimants' homes and caused property damage and bodily injury.

62. The factual scenario presented by *Payton* or *Amato* is not materially different from that in *Deni* and *Technical Coating* - - in each of those cases chemical gases, vapors or fumes from a commonly found item escaped or were released into the environment, causing property damage or personal injury.

63. Much like in *Deni*, *Technical Coating, Yachtmen's Inn* and *City of Tampa*, First East Side Savings Bank alleges that the chemical gas being emitted / off-gassed from the drywall is a hazardous, dangerous contaminate and/or irritant and that exposure to it resulted in serious injury.

---

[5] Plaintiff's failure to attach the *Payton* Chinese drywall class action lawsuit to their complaint does not prevent the court from reviewing that complaint, which we have attached to this motion, in deciding whether Nautilus Insurance Company has the obligation to indemnify Southwell Homes, LLC as alleged. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d at 498-99 ("documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").  Moreover, the "exhibits attached to the complaint are controlling, where the allegations of the complaint are contradicted by the exhibits, the plain meaning of the exhibits will control." *Ginsberg v. Lennar*, 645 So. 2d at 494.

64. The pollution definition and pollution exclusion contained in the policy issued by Nautilus Insurance Company to Southwell Homes, LLC is identical to that contained in *Deni*, *Technical Coating, Yachtmen's Inn* and *City of Tampa*.

65. As in *Deni*, *Technical Coating, Yachtmen's Inn* and *City of Tampa*, there is no insurance coverage for the loss alleged because the loss would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."

66. Where it is clear on the face of the complaint that the insurance policy does not provide coverage, "the applicability of policy exclusions contained in a policy attached as an exhibit may be raised by a motion to dismiss when the allegations of the complaint clearly show that the exclusions do apply." *Florida Farm Bureau General Ins. Co. v. Insurance Co. of North America*, 763 So. 2d 429, 432 (Fla. 5th DCA 2000).

67. Since First East Side Savings Bank seeks a declaration that there is insurance coverage for the claims made in the *Payton* (Omni I) Chinese drywall class action lawsuit and since the policy excludes coverage for the losses alleged by First East Side Savings Bank in the *Payton* lawsuit, First East Side Savings Bank's complaint against Nautilus Insurance Company must be dismissed with prejudice because there is no set of facts upon which First East Side Savings Bank can show that Southwell Homes, LLC is entitled to insurance coverage under the policy issued to it by Nautilus Insurance Company for the claims made by First East Side Savings Bank in the *Payton* lawsuit.

**LOUISIANA IS AN INCONVENIENT VENUE – THIS CASE SHOULD BE TRANSFRED TO THE SOUTHERN DISTRICT OF FLORIDA**

68. A party may by pre-answer motion assert a defense of inconvenient or improper venue. Fed. R. Civ. P. 12(b)(3). [6]

---

[6] This motion is directed solely to the claims made by First East Side Savings Bank on the policy(ies) issued by Nautilus Insurance Company to Southwell Homes, LLC and not any other

69. First East Side Savings Bank, a Florida Corporation with its offices in Tamarac Florida, has sued Nautilus Insurance Company, an Arizona Corporation with its offices in Scottsdale Arizona, seeking a declaration that a policy of insurance issued by Nautilus Insurance Company to Southwell Homes, LLC, a Florida Company with its offices in Miami Florida, provides insurance coverage to Southwell Homes, LLC for damages allegedly caused by Southwell Homes, LLC to houses owned by First East Side Savings Bank in Lake Placid Florida.

70. The policy sued on was sold and delivered to Southwell Homes, LLC in Miami Florida.

71. Miami, Tamarac and Lake Placid are all located within the Southern District of Florida.

72. First East Side Savings Bank, Southwell Homes, LLC and Nautilus Insurance Company are all subject to jurisdiction, and venue is proper in the Southern District of Florida.

73. Florida adheres to the common law doctrine of *lex loci contractus*, under which the place of the making of the contract (in this case Florida) governs its interpretation. *State Farm v. Roach*, 945 So. 2d 1160, 1164 (Fla. 2006).

74. Since this claim is brought in diversity, and since the policy was sold to and delivered by Nautilus Insurance Company to Southwell Homes, LLC in Florida, Florida law governs.[7] *Employers Mut. Liability Ins. Co. v. Houston Fire & Cas. Ins. Co.*, 194 F. Supp. 828, 832 (D.C.La. 1961).

75. On the face of the complaint it is clear that all of the evidence, witnesses and property at issue in this case are located in either the Southern District of Florida or Arizona.

76. 28 U.S.C § 1404, entitled change of venue, states in pertinent part that

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might

---

claim(s), claimant(s), policy(ies) or defendant(s).

[7] This is true even if this case is viewed as the equivalent to one transferred to the Chinese Drywall MDL. *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) ("the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules.").

have been brought.

77. While plaintiff's choice of forum generally carries weight, *See Schexnider v. McDermott Intern., Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987), the Fifth Circuit has clearly stated that a plaintiff's choice of forum is a factor to be considered but that in and of itself this factor is neither conclusive nor determinative. *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir.1970).

78. The Fifth Circuit has also found that a plaintiff's choice is afforded less deference when the plaintiff does not reside in the chosen forum and when none of the operative facts occurred in the chosen forum. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966).

79. The location of the relevant documents and the place where the relevant acts took place should be considered in deciding whether it is in the interest of justice that the case be transferred to another district or division. *In Re: Horseshoe Entertainment*, 373 F.3d 429, 434 (5th Cir. 2003)

80. The location of the parties and the witnesses should be considered in determine whether the chosen venue is a convenient one. *Id.*, at 435.

81. Here, all of the evidence, witnesses and property are located in the Southern District of Florida, and while some of the documents may be located at Nautilus Insurance Company in Arizona, nothing related to this case is located in the Eastern District of Louisiana.[8]

82. Moreover, this is a claim by a Florida company seeking a determination that an insurance policy sold to and delivered in Florida to a Florida company provides insurance coverage under Florida law for damage to three houses built in and located in Florida.

83. The District Court in the Southern District of Florida has jurisdiction over Nautilus Insurance Company and Nautilus Insurance Company agrees that venue is proper there too.

84. It is in the interest of justice and would be more convenient for the parties and witnesses for this

---

[8] While not relevant to the court's decision, it is noteworthy that both Nautilus Insurance Company and First East Side Savings Bank's attorneys are located in the Southern District of Florida.

case to be decided in the Southern District of Florida.

85. Nautilus Insurance Company asks that the case be transferred, under 28 U.S.C. 1404(a), to the Southern District of Florida.

**CONCLUSION**

86. First East Side Savings Bank seeks a declaration that the policy issued by Nautilus Insurance Company to Southwell Homes, LLC provides coverage for damage to First East Side Savings Bank's houses.

87. The policy issued by Nautilus Insurance Company to Southwell Homes, LLC does not provide completed operations coverage.

88. Since the policy does not provide completed operations coverage, there is no insurance coverage for the loss claimed.

89. Both *Amato* and *Payton* uniformly allege that the damages sought are the result of Chinese drywall emitting / off-gassing dangerous, volatile chemical gases into the effected houses and that those gases are highly poisonous, corrosive, dangerous and hazardous.  It is also alleged that poisonous and corrosive chemical gas is the cause of the loss.

90. Under Florida law, the loss alleged is the result of exposure to pollution.

91. Under Florida law, the policy issued by Nautilus Insurance Company to Southwell Homes, LLC does not provide insurance coverage for the pollution damages alleged.

92. Since there is no insurance coverage for the loses claimed, First East Side Savings Bank's complaint against Nautilus Insurance Company must be dismissed.

93. The dismissal must be with prejudice because there is no set of facts that First East Side Savings Bank can honestly plead showing that the policy of insurance issued by Nautilus Insurance Company to Southwell Homes, LLC provides insurance coverage for the claims made against Southwell

Homes, LLC by First East Side Savings Bank in the *Payton* (Omin I) Chinese drywall class action lawsuit.

94. Nautilus Insurance Company asks that the court dismiss First East Side Savings Bank's complaint with prejudice and grant any other relief that the court deems right on the facts of this case.

95. Alternatively, Nautilus Insurance Company asks that the case be transferred to the Southern District of Florida.

WE CERTIFY that the foregoing has been served on Liaison Counsel by e-mail and upon all Chinese Drywall parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No.6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on September 20, 2010.

Fullerton George, LLP
*Counsel for Nautilus Insurance Co.*

By: *//s// Charles M-P George*
CHARLES M-P GEORGE
Florida Bar Number:  996718
2000 Ponce de Leon Boulevard
Suite 501
Coral Gables, Florida  33134
Telephone:  305-421-6391
Fax:  305-569-6664
CGeorge@FullertonGeorge.com