UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED          MDL NO. 2047
DRYWALL PRODUCTS LIABILITY           SECTION: L
LITIGATION

THIS DOCUMENT RELATES TO             JUDGE FALLON
                                     MAG. JUDGE WILKINSON
Silva et al v. Knauf Gips KG et al
EDLA 09-08034


MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR CERTIFICATION OF A LOUISIANA HOMEOWNER CLASS FOR
DAMAGES AND DECLARATORY RELIEF

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

III. ARGUMENT ...................................................................................................... 5

   A.   Standard of Review .................................................................................... 5

   B.   The Class Meets the Rule 23(a)(1)-(4) Criteria ....................................... 5

      1.   Numerosity – Rule 23(a)(1) ................................................................ 5

      2.   Commonality – Rule 23(a)(2) ............................................................ 7

         a.   The Damages Claims ................................................................... 7

         b.   The Declaratory Judgment Claim ............................................... 8

      3.   Typicality – Rule 23(a)(3) .................................................................. 8

         a.   The Damages Claims ................................................................... 9

         b.   The Declaratory Judgment Claim ............................................. 10

      4.   Adequacy of Representation – Rule 23(a)(4) ................................... 10

         a.   Ascertainability ......................................................................... 11

   C.   The Class is Appropriate for Certification Under Rule 23(b)(3) for Damages Claims and 23(b)(2) for Declaratory Relief Claim ................................................................ 12

      1.   The Damages Class Should be Certified Under Rule 23(b)(3) ....................................... 12

         a.   Defendant Interior Exterior's Course of Conduct is a Common Liability Issue ....... 13

         b.   Determination of Class-Wide Damages is a Predominant Issue .............................. 14

            i.   Formulaic Method to Determine Class-Wide Damages ......................... 16

         c.   Louisiana Law Applies to All Claims in this Case .................................... 18

         d.   Class Treatment of the Damages Claims Meets the Rule 23(b)(3) Superiority Requirement ................................................................ 19

      2.   The Declaratory Relief Claim Should be Certified Under Rule 23(b)(2) .................... 20

IV.  CONCLUSION ................................................................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adkinson v. Int'l Harvester Co.,*
 975 F.2d 208 (5th Cir. 1992) ............................................................................21

*Allapattah Servs. v. Exxon Corp.,*
 333 F.3d 1248 (11th Cir. 2003) .......................................................................15

*Berger v. Compaq Computer Corp.,*
 257 F.3d 475 (5th Cir. 2001) .......................................................................5, 10

*Boos v. AT & T, Inc.,*
 252 F.R.D. 319 (W.D. Tex. 2008) ....................................................................9

*Castano v. Am. Tobacco Co.,*
 84 F.3d 734 (5th Cir. 1996) ........................................................................5, 13

*DeBremaecker v. Short,*
 433 F.2d 733 (5th Cir. 1970) ..........................................................................12

*Hilao v. Estate of Marcos,*
 103 F.3d 767 (9th Cir. 1996) ...........................................................................17

*In re A.H. Robins Co.,*
 880 F.2d 709 (4th Cir. 1989) ...........................................................................12

*In re Chevron U.S.A., Inc.,*
 109 F.3d 1016 (5th Cir. 1997) .........................................................................17

*In re NASDAQ Market-Makers Antitrust Litigation,*
 169 F.R.D. at 525 (S.D.N.Y. 1996) ................................................................15

*In re Terazosin Hydrochloride,*
 220 F.R.D. 672 (S.D. Fla. 2004) ......................................................................15

*James v. City of Dallas,*
 254 F.3d 551 (5th Cir. 2001) .........................................................................7, 9

*John v. Nat'l Security Fire & Cas. Co.,*
 501 F.3d 443 (5th Cir. 2007) ...........................................................................11

*Jones v. Am. Gen. Life & Accident Ins. Co.,*
 213 F.R.D. 689 (S.D. Ga. 2002) ..............................................................7, 9, 21

*Leszczynski v. Allianz Ins.*,
176 F.R.D. 659 (S.D. Fla. 1997) .................................................................7, 9, 21

*McQuilken v. A&R Development*,
576 F.Supp. 1023 (E.D. Pa. 1983) ...........................................................14, 18, 19

*McWaters v. FEMA*,
237 F.R.D. 155 (E.D. La. 2006)..........................................................................20

*Mims v. Stewart Title Guar. Co.*,
590 F.3d 298 (5th Cir. 2009) .............................................................................19

*Monumental Life Ins. Co. v. Nat'l Life*,
365 F.3d 408 (5th Cir. 2004)........................................................................14, 18

*Mullen v. Treasure Chest Casino LLC*,
186 F.3d 620 (5th Cir. 1999) ...................................................................... passim

*Payton et al. v. Knauf Gips KG, et al.*,
No. 09-7628 (*Payton* Docket No. 1 at Schedule 1 at 34-44 (Distributor/Supplier List) ..........6

*Payton* Intervention, *In re Chinese Manufactured Drywall Products Liability Litigation*,
MDL No. 2047, Docket No. 4346-2, 4346-3 at 2-42 (List of Intervening Plaintiffs))..............6

*Pederson v. La. State Univ.*,
213 F.3d 858 (5th Cir. 2000) ...........................................................................5, 6

*Sher v. Raytheon Co.*,
261 F.R.D. 651, 2009 WL 31931...........................................................................17

*Silva et al v. Interior Exterior Building Supply, LP*,
No. 09-cv-09030 ("Silva Damages Complaint") (E.D.La Dec. 31, 2009) ...........................4, 8

*Simer v. Rios*,
661 F.2d 655 (7th Cir. 1981) ...............................................................................12

*Turner v. Murphy*,
No. 05-4206, Order and Reasons (March 3,2006), slip op. at 3 ...............................15

*Turner v. Murphy*
No. 05-4206, Order and Reasons at 13-14 (January 30, 2006) ...............................18

*Turner v. Murphy Oil USA Inc.*,
234 F.R.D. 597 (E.D. La. 2006)...................................................................... passim

*Vizena v. Union Pac. R.R. Co.*,
360 F.3d 496 (5th Cir. 2004) ...............................................................................5

*Watson v. Shell Oil Co.,*
    979 F.2d 1014 (5th Cir. 1992) ............................................................................17

*Zeidman v. J. Ray McDermott & Co.,*
    651 F.2d 1030 (5th Cir. 1981) ...............................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(b)(2)....................................................................................2, 5, 20, 21

Fed. R. Civ. P. 23(b)(3)...................................................................................... passim, 21

Fed. R. Civ. P. 23(g) ...............................................................................................10

Fed. R. Civ. P. 30(b)(6)............................................................................................6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED MDL NO. 2047
DRYWALL PRODUCTS LIABILITY SECTION: L
LITIGATION

THIS DOCUMENT RELATES TO JUDGE FALLON
 MAG. JUDGE WILKINSON

Silva et al v. Knauf Gips KG et al
EDLA 09-08034

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR CERTIFICATION OF A LOUISIANA HOMEOWNER CLASS FOR
DAMAGES AND DECLARATORY RELIEF

**I. INTRODUCTION**

  This matter involves the claims of at least 1000 Louisiana homeowners whose

homes have been severely damaged by Chinese manufactured drywall ("CDW") distributed by

Interior/Exterior Building Supply L.P. ("Interior Exterior").  Mr. Stephen. Silva, on behalf of

himself and those similarly situated, seeks compensation for these damages and a declaratory

judgment that Interior Exterior's liability insurance policies provide coverage for repairs of, and

damage to, their homes.  Plaintiffs define the class as it relates both to the damages and

declaratory relief claims as follows:

> All owners of residential real properties in the state of Louisiana
> containing Chinese manufactured drywall sold or distributed by Interior
> Exterior Building Supply LP from January 1, 2005 to December 31,
> 2008, who have not released or assigned their property damage claims to
> a third party.

  The conservation of resources for the Court and the parties of resolving liability on a

class-wide basis is substantial, and is available *even if* the Court later determines that some

damages issues must be resolved through individualized adjudications.

  Class Certification of these claims is appropriate because: 1) class members suffered the

1

same type of damages to their homes, 2) have an entitlement to compensation for this damage, and 3) are in need of a declaration of insurance coverage for Interior Exterior to pay for repairs and damages to the class members' homes.  The case does not present highly individualized damage claims such as personal injury.  A finding of liability would apply equally to all members of the class and damages can be calculated on a formulaic basis, and through the use of a claims proceeding or mini-trials where necessary.  Thus, the damages claims are appropriate for certification pursuant to Fed. R. Civ. P. 23(b)(3).  The declaratory relief claim is injunctive in nature and thus presents a common question for all members of the class and is appropriate for certification pursuant to Fed. R. Civ. P. 23(b)(2).

This Court is highly experienced with the types of factual and expert evidence utilized by the parties in CDW cases and the law that governs Louisiana CDW claims as a result of presiding over the *Germano* and *Hernandez* trials and the *Campbell/Clement* pretrial proceedings.  This experience includes familiarity with evidence relating to defective CDW products sold and distributed by Interior Exterior, and the damages caused by these products. *See Hernandez v. Knauf*, Findings of Fact and Conclusions of Law (Docket #2713) ("*Hernandez* FOFCOL) at 20-44.  Plaintiffs reserve their right to proceed on class claims against Interior Exterior for homeowners in other states.

Certification of the claims for a Louisiana class would expedite the resolution of a large set of Louisiana claims for homeowners who are in desperate need of compensatory and injunctive relief, and provide a blueprint for homeowners in other states who have claims against Interior Exterior.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The general factual background underlying the importing of and distribution of defective

2

CDW into the Gulf states and the property damage caused by this drywall are set forth in detail at *Germano v. Taishan,* Findings of Fact and Conclusions of Law (Docket #2380) ("*Germano* FOFCOL") at 3-11, 27-57; and at *Hernandez* FOFCOL at 3-44.  This case concerns the importation and distribution of CDW by Interior Exterior in Louisiana.  In approximately January 2006, Plaintiff Stephen Silva purchased 180 sheets of Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf") drywall directly from Defendant Interior Exterior to be used in the construction of a new home on their property at 52095 Turnpike Road in Folsom, Parish of St. Tammany, Louisiana.  During the initial construction of the home in 2006, Mr. Silva observed sulfur like odors in the home, but at that time did not know that these odors were caused by the Knauf Chinese drywall.  Eventually, Mr. Silva observed distinctive corrosion of copper surfaces in the home.  In March of 2009 Mr. Silva discontinued the construction of the home and has not moved into the home because of the damage caused by the Knauf drywall.  Silva Plaintiff Profile Form ("PPF"), Compendium of Exhibits In Support of Motion for Certification of a Louisiana Homeowner Class for Damages and Declaratory Relief ("Comp.) (Exhibit ("Ex.") 1) at 2.  In approximately March of 2009, Plaintiffs began to suspect that this corrosion was related to the Knauf drywall sold to them by Interior Exterior.  Pursuant to Louisiana law, plaintiffs seek all recoverable property damages including remediation/repair damages, alternative living costs, property diminution, loss of use and enjoyment, and personal property losses.[1]

On November 30, 2009, Plaintiffs filed suit against Interior Exterior, individually and on behalf of a class of similarly-situated persons, claiming Defendant Interior Exterior sold and distributed defective CDW boards in Louisiana from at least 2005-2008.  Interior Exterior records indicate that the company purchased over 500,000 CDW boards from Knauf Tianjin,

---

[1] The proposed class does not seek to certify personal injury (or medical monitoring) claims in this motion.  To the extent members of the class seek to bring those claims, they will be brought on an individual basis.

Knauf Wuhu, and Taian Taishan. *See* Interior Exterior Building Supply L.P. Distributor Profile Form (Comp. Ex. 2); Knauf Defendant Manufacturers' Profile Form (KPT, Wuhu, GIPSP (Comp. Ex. 3); and Interior Exterior Sales Records (Comp. Ex. 4). Interior Exterior failed to adequately test, inspect, monitor the suitability of this product, and warn Mr. Silva and class members of the defective nature of the CDW, in order to assure class members they were receiving a product fit for its intended purpose. *See Silva et al v. Interior Exterior Building Supply, LP*, No. 09-cv-09030, (*Silva* Docket No. 1-2 at *1) ("Silva Damages Complaint") (E.D.La Dec. 31, 2009). Although initially filed in the 22nd Judicial District Court for the Parish of St. Tammany, the case has since been removed to this Court. *Id.*

The home of class representative Steven Silva contains Knauf CDW and has experienced typical CDW induced corrosion damages to electrical wiring and electrical and electronic appliances and other property damage. *See* Silva PPF (Comp. Ex. 1). The home is in need of remediation to return it to its intended use and pre-CDW condition. *See* Declaration of Ronald E. Wright, P.E. ("Wright Dec.") at ¶¶5-6 (filed simultaneously herewith).

During the relevant years, Interior Exterior was covered by insurance policies issued by Arch Insurance Company, RSUI, North River Insurance Company, Fireman's Fund Insurance Company, and Liberty Mutual Insurance Company. *See* Interior Exterior Plaintiff Profile Form at §V (p. 5-10) (Comp. Ex. 2). On information and belief these insurers have denied coverage for damage caused by defective CDW sold and distributed by Interior Exterior. On December 1, 2009, Plaintiffs filed a petition for declaratory judgment seeking coverage under the Defendants' liability policies with respect to Interior Exterior's liability for the aforementioned damages. *Silva* Docket No. 1-3 at *1 ("Silva Dec. J. Petition"). This case was also filed in the 22nd Judicial District Court for the Parish of St. Tammany, but was removed to this Court.

Plaintiff on behalf of himself and similarly-situated persons seeks class certification on his claim for damages pursuant to Fed. R. Civ. P. 23(b)(3), and for declaratory judgment for insurance coverage pursuant to Fed. R. 23(b)(2).

## III.    ARGUMENT

### A.    Standard of Review

The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502-03 (5th Cir. 2004). The class certification decision should not reach the merits of the Plaintiffs' claims. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). While in some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision, the "strength of a plaintiff's claim should not affect the certification decision." *Id.* at 744-45. The district court must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Vizena*, F.3d at 503.

### B.    The Class Meets the Rule 23(a)(1)-(4) Criteria

#### 1.    Numerosity – Rule 23(a)(1)

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000). "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement.

*Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Other considerations include the practicability of joinder and all other relevant factors, *Pederson*, 213 F.3d at 868, including the (1) geographical dispersion of the class; (2) ease with which class members may be identified; (3) nature of the action; and (4) size of each plaintiff's claim. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *Turner v. Murphy Oil USA Inc.*, 234 F.R.D. 597, 604 (E.D. La. 2006).

Plaintiffs have alleged a class the size of which is reasonably believed to exceed 1,000 persons. In the complaint filed by plaintiffs in *Payton et al. v. Knauf Gips KG, et al.*, No. 09-7628, (*Payton* Docket No. 1 at Schedule 1 at 34-44 (Distributor/Supplier List), and the *Payton* Intervention, *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, Docket No. 4346-2, 4346-3 at 2-42 (List of Intervening Plaintiffs)), approximately 250 Louisiana homeowners that purchased their drywall by and/or through Interior Exterior Building Supply are identified. In 2005 and 2006 alone, Interior Exterior purchased almost 500,000 pieces of CDW from Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd. and Taian Taishan Plasterboard Co. ("Taishan"). Interior Exterior Distributor Profile Form at 2-4 (Comp. Ex. 2). Furthermore, Interior Exterior has its corporate headquarters and five of twelve of its sales offices in Louisiana. Interior Exterior Building Supply Locations, http://www.interiorexterior.net/ INEX_Locations.htm; (Comp. Ex. 5). Interior Exterior distribution records indicate approximately 3825 invoices for drywall products sold from four Louisiana sales offices. Interior Exterior Sales Records (Comp. Ex. 4). Testimony of Interior Exterior officers indicates that the majority of this product was CDW including Knauf and Taishan CDW. Fed. R. Civ. P. 30(b)(6) Deposition, Interior Exterior at 51(15-18); 56(12-18); 58(19) – 59(1); 60(9) – 63(2); 63(3) – 64(4) (Comp. Ex. 6). Assuming each of these transactions

represents a purchase for use in a separate home, the class would consist of well over 1000

homeowners. *See* Wright Dec. at ¶3. Thus, a conservative estimate of the number of class

members is at least 1000. The class members are identifiable from Interior Exterior's business

records which indicate delivery or sale of Knauf or Taishan drywall by or through Interior

Exterior to the class members' address. Joinder of more than 1000 class members is

impracticable and would lead to a squandering of judicial economy and the resources of the

parties. The evidence demonstrating that there are more than a thousand class members meets

the numerosity requirement.

### 2. Commonality – Rule 23(a)(2)

Commonality requires that there be "questions of law or fact that are common to the

class." Fed. R. Civ. P. 23(a)(2). The inquiry is not demanding. *Mullen*, 186 F.3d at 624.

Rather, the commonality requirement is satisfied if resolution of at least one issue will affect all

or a significant number of class members. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir.

2001); *Mullen*, 186 F.3d at 625. There is a low threshold for commonality, and the fact that

some Plaintiffs have different claims or require individualized analysis does not defeat

commonality. *James*, 254 F.3d at 570. Courts regularly find declaratory judgment class actions

to meet the commonality requirement when granting certification. *See Leszczynski v. Allianz*

*Ins.*, 176 F.R.D. 659, 671-72 (S.D. Fla. 1997) (finding commonality to exist in case involving

interpretation of form insurance contract's applicability to class of insured); *Jones v. Am. Gen.*

*Life & Accident Ins. Co.*, 213 F.R.D. 689, 695 (S.D. Ga. 2002) (finding that application of

common contract to class members satisfies commonality requirement).

### a. The Damages Claims

Here, there are numerous questions of law and fact common to the class. As to the

7

damages claims, the common questions for the proposed class representative and the proposed class include: (1) whether CDW distributed and sold to class members by Interior Exterior is defective and needs to be replaced; (2) whether additional items in the home need to be repaired or replaced; (3) the determination of Interior Exterior's liability as the distributor or seller of CDW; (4) the fact of property damage to the class representative and class; (5) the availability of property-related damages under Louisiana law; and (6) the identification of a methodology to calculate class-wide damages.[2]

### b.  The Declaratory Judgment Claim

As to the declaratory judgment claim, common questions include: whether one or more of the insurance company defendants' policies provides coverage with respect to Interior Exterior's fault and/or other legal liability to the Plaintiffs for: (i) property damage, (ii) repair and/or restoration costs, (iii) diminution in value, (iv) loss of use, (v) damage to personal property, (vi) inconvenience, (vii) mental anguish, (viii) fear and fright, (ix) personal injuries, (x) attorneys' fees, (xi) other economic damages or injuries; and whether any valid exclusions exists which may limit or eliminate coverage.  Interior Exterior purchased multiple insurance policies from at least five defendant insurers covering the period of January 1, 2005 through December 31, 2008. Resolution of the above-listed questions of law and fact with respect to each insurance policy in question, identified in the Silva Dec. J. Petition (*Silva* Docket #1-3) at ¶¶ 8-12, will affect all class members.

As such, the commonality requirement is met both for the damages claims and the declaratory relief claim.

### 3.  Typicality – Rule 23(a)(3)

Rule 23(a)(3) requires that the claims of the class representative are typical of the class's

---

[2] Wright Dec. at ¶¶5-6.

8

claims or defenses. Again, the threshold for typicality is low: class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen*, 186 F.3d at 625. Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics – a similar course of conduct, or the same legal theory. *James*, 254 F.3d at 571 (*quoting* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)). In a property damage context, liability theories are often deemed to be common questions. *Murphy*, 234 F.R.D. at 605 (finding theory of liability a common question in oil contamination property case.). When plaintiffs seek the same declaratory judgment and injunctive relief on behalf of the entire class, "the claims of the proposed class representatives are typical of the entire proposed class." *Boos v. AT & T, Inc.*, 252 F.R.D. 319, 323 (W.D. Tex. 2008). Courts regularly find declaratory judgment class actions to meet the typicality requirement when granting certification. *See Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672-73 (S.D. Fla. 1997) (finding Rule 23(a)(3) to be met when the "named plaintiffs' claims arise from the same event or cause or conduct that give rise to the claims of the class members); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 696 (S.D. Ga. 2002) (finding that plaintiffs and proposed class members all seek the same remedy of claiming their life insurance benefits).

### a.    The Damages Claims

The property damage claims of the class representative are the same as those of the absent class members. The determination of these damages depends on the same factual predicate as to the distributor and seller of the defective product, product identification, the mechanism of damage occurring in the class members' homes, the need for remediation, and the square footage costs of accomplishing the remediation. *Murphy*, 234 F.R.D. at 605 (finding

9

typicality established where theory of liability of property owners damaged by oil are alike.); *see* Wright Dec. at ¶¶5-6.  Further, all class members' claims are governed by Louisiana law.

**b.      The Declaratory Judgment Claim**

The insurance coverage questions of the class representative are the same as those of the absent class members.  The assessment necessary to determine the extent to which each insurance policy may cover the claims of Stephen Silva will not differ from the assessment that would be required with respect to any other class member's claims.

Accordingly, the class representative's damages and injunctive claims meet the typicality requirement.

**4.      Adequacy of Representation – Rule 23(a)(4)**

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members.  There can be differences between the class representatives and other class members so long as these differences do not "create conflicts between the named Plaintiffs' interests and the class members' interests."  *Mullen*, 186 F.3d at 626.  A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members.  *Id.* (*citing Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1971)).  In addition, the district court should inquire into the competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

Under Fed. R. Civ. P. 23(g), a district court must appoint class counsel when the class is certified, unless otherwise provided by statute.  The class counsel must fairly and adequately

10

represent the interests of the class. The court must review the counsel's work in investigating claims, experience in handling class action litigation, knowledge of the applicable law, and the resources counsel will commit to representing the class. Rule 23(g)(1)(B), (C).

The class representative, Mr. Steven Silva, has the same interest as absent class members in obtaining property damage relief from Interior Exterior and in determining the extent of coverage for Interior Exterior to make repairs and reimburse for damages under the several defendant insurance policies. The class representative, has demonstrated his commitment to the litigation by filing this lawsuit, his PPF and documenting product identification and corrosion damage. Declaration of Russ M. Herman ("Herman Dec.") at ¶¶2-3 (filed simultaneously herewith).

The proposed class counsel (Russ Herman of Herman, Herman, Katz & Cotlar, LLP; and Gerald Meunier of Gainesburgh, Benjamin, David, Meunier and Warshauer) are committed to this litigation, experienced in class action practice, and are well respected and competent lawyers. This Court has already had the opportunity to work extensively with each of the proposed class counsel and their firms in proceedings related to *Germano*, *Hernandez*, and *Campbell/Clement*. *See* the Curriculum Vitae's of Proposed Class Counsel attached to Herman Dec. Thus, the Court should find that the proposed class representative, as well as the proposed class counsel, are adequate.

### a. Ascertainability

It should be noted that various courts consider *ascertainability* to be a requirement under Rule 23. Ascertainability pertains to the ability of the court based on record evidence to utilize objective criteria to determine who is, and is not, a class member. The Firth Circuit has referred to ascertainability as an "implied prerequisite of Rule 23." *John v. Nat'l Security Fire & Cas.*

*Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981); 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist."). Here, the class is ascertainable. Membership in the class is based on two key objective criteria: (1) homeownership in Louisiana; and (2) the identification of Chinese-manufactured drywall sold or distributed by and/or through Interior Exterior in the home. The determination of CDW in a residence is established through visual identification of known markings. *See* PTO #10 (Docket #171); Wright Dec. at ¶5. The determination that Interior Exterior was the distributor of the CDW in question can be made based on Interior Exterior invoices and other documentation linking Interior Exterior distribution to construction of residences in Louisiana. Interior Exterior Distributor Form (Comp. Ex. 2); Interior Exterior Sales Records (Comp. Ex. 4). Thus, the ascertainability requirement is satisfied.

### C.   The Class is Appropriate for Certification Under Rule 23(b)(3) for Damages Claims and 23(b)(2) for Declaratory Relief Claim

Certification is proper under 23(b)(3) for the property damage claim and 23(b)(2) for a class-wide declaration mandating insurance coverage for all damages and remedies for which that Interior Exterior may be liable for under the relevant insurance policies.

#### 1.   The Damages Class Should be Certified Under Rule 23(b)(3)

Rule 23(b)(3) requires that the class share common issues of law or fact that predominate over the questions affecting individual class members. In general, in order to predominate, common issues must form a significant part of the individual cases. *Mullen,* 186 F.3d at 626.

12

Specifically, a district court should consider how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues. *See Castano,* 84 F.3d at 744-45 (finding that certification was inappropriate where individual trials would be necessary to determine an element of the Plaintiffs' fraud claims).

The dual demands of Rule 23(b)(3) are that common issues are significant and will resolve substantial aspects of the case, and that the case will be manageable for trial purposes. *Id.* This Court applies Louisiana law in *Hernandez,* has already issued factual findings establishing property damage from defective CDW distributed or sold by Interior Exterior and determined the applicable law. Further, Plaintiff's expert Ron Wright has demonstrated a formulaic approach to determining class-wide damages. Thus, class-wide liability and damages can be established in an efficient manner and these issues predominate over any individual issues.[3] Moreover, there are no individual issues associated with any personal injury claims as those claims are excluded from the class.

### a. Defendant Interior Exterior's Course of Conduct is a Common Liability Issue

Here, there can be no dispute that Defendant Interior Exterior's common course of conduct in distributing and selling defective CDW to the Louisiana home construction market has a common property damage impact on the class member homeowners. Liability is commonly recognized as a predominant issue in the class setting. *Mullen,* 186 F.3d at 626 ("the common issues in this case, especially negligence and seaworthiness, are not only significant but pivotal ... If the [Defendant] prevails on these two issues, they will prevail in the case."); *Murphy,* 243 F.R.D. at 606 (property damage claims "share large areas of fact in common.");

---

[3] There will be a need during claims processing for each claimant to prove up basic facts to establish property damages: (1) product identification; (2) homeownership; and (3) square footage of owned home, to recover on a remediation claim.

*McQuilken v. A&R Development*, 576 F.Supp. 1023, 1031 (E.D. Pa. 1983) (construction activity causing damages to homeowner's properties was common and predominant issue supporting certification).

The issue of Interior Exterior's liability to the class is highly amenable to class treatment because the evidence of Interior Exterior's failure to monitor the product it sold and distributed for defects and failures to warn, will be the same for all class members. Thus, a finding of liability for the class would allow 1000 plus claimants to proceed directly to the damages phase. The conservation of resources for the court and the parties of resolving liability on a class-wide basis is substantial and is available *even if* the court later determines that some damages issues must be resolved through individualized adjudications. *Murphy,* 234 F.R.D. at 605, 607 (individualized damage issues do not prevent a finding of predominance).

**b.     Determination of Class-Wide Damages is a Predominant Issue**

Similarly, the Plaintiffs' demonstrated ability to determine class-wide damages meets the predominance requirement at the certification stage. *See, e.g., Monumental Life Ins. Co. v. Nat'l Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a classwide basis and, when sorted, are capable of determining damages for individual policyowners; none of these variables is unique to particular Plaintiffs. The prevalence of variables common to the class makes damages computation 'virtually a mechanical task.'").

As the Eleventh Circuit noted in *Klay v. Humana*:

> In assessing whether to certify a class, the court's inquiry is limited to whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all . . . . Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis. Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical

14

methods, the fact that damages must be calculated on an individual
basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).[4]  As such, damages

can be proven on a class-wide basis and allocation and claims processing issues will not defeat

class certification.  *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004)

("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter

accomplished pursuant to a court-approved plan of allocation, and such individual damages

allocation issues are insufficient to defeat class certification."); *In re NASDAQ Market-Makers*

*Antitrust Litigation*, 169 F.R.D. at 525 (S.D.N.Y. 1996) ("Aggregate computation of class

monetary relief is lawful and proper.").

Even if some individual damages issues may exist, it is well settled that their presence

does not defeat predominance.  *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th

Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004) ("[N]umerous courts have

recognized that the presence of individualized damages issues does not prevent a finding that the

common issues in the case predominate."); *Murphy,* 234 F.R.D. at 605, 607 (same).  Any

individualized damage issues, for example determining individual personal property damage, can

be dealt with "pursuant to a court-approved plan of allocation," or mini-trials. *Terazosin*, 220

F.R.D. at 699; *see also Turner v. Murphy,* No. 05-4206, Order and Reasons (March 3, 2006), slip

op. at 3 (Comp. Ex. 7) ("Fifth Circuit has approved of bifurcated trial plans in which common

issues of liability, negligence, and certain defenses are tried commonly, with causation actual

damages, and … comparative fault tried individually.") (Citations omitted).

---

[4]  Courts routinely have used class-wide, formula-based techniques to calculate individual damages in various types of class actions.  *See, e.g., Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) (approving aggregate damages judgment), *aff'd,* 444 U.S. 472 (1980); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) (approving of the use of objective data extracted from the Defendant's computer system and analyzed through a "mechanical process" in a case involving charging customers for incoming cellular telephone calls.); *see also* 3 Newberg on Class Actions § 10:8.

### i.   Formulaic Method to Determine Class-Wide Damages

Alternatively, damages can be formulaic in nature and be amenable to class treatment. Ronald Wright, Plaintiffs' expert, a Civil Engineer who specializes in the assessment and repair and remediation for home construction has inspected many Knauf drywall homes, and has developed a methodology to estimate damages for the remediation of such homes and the replacement of damaged components including appliances, flooring, cabinetry and other items. Wright Dec. at ¶¶5-7. He has considered national databases that estimate such costs including RS Means and more specifically he has reviewed the real world repair bids of local construction companies to perform the necessary remediation in several homes in different states. For example, based on his work in Virginia and available Virginia data, Mr. Wright offered the expert opinion in the *Germano* proceeding that the cost of repair for a fair cross-section of Virginia homes would be on average $86 per square foot, which was accepted by the Court. *Germano* FOFCOL at 57-60. Based on similar data for Louisiana, available statistical databases in the housing and construction industry, and Louisiana CDW distribution records Mr. Wright will be able to estimate: (1) the number of homes in Louisiana likely to contain defective CDW sold or distributed by Interior Exterior and thus require remediation, and (2) the total square footage of these homes. With these estimates, combined with the average price of repair per square foot in the state; Mr. Wright can then determine class-wide remediation damages. Wright Dec. at ¶¶5-7; *see also Germano* FOFCOL at 57-59, 64-69.

Additional forms of property damage, including alternative living costs, property diminution, loss of use and enjoyment, and personal property losses are also amenable to determination on a class-wide basis. For example, in the case of alternative living costs, the damage amount established in *Hernandez* was $2376.81/month. *Hernandez* FOFCOL at 42.

16

Real property diminution also can be determined in a formulaic manner. *Murphy*, 234 F.R.D. at 607 and n.5 ("Court notes that real estate expert "opined that the properties at issue would be properly subject to mass appraisal to determine their present value."); *Sher v. Raytheon Co.*, 261 F.R.D. 651, 2009 WL 31931 52, (M.D. Fla. 2009) (in environmental pollution toxic tort case, court found at class certification that plaintiffs provided a "viable model for calculating property damages on a class-wide basis").

Loss of use and enjoyment and personal property damages could also be assessed for the class based on a survey of representative homeowners. *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-20 (5th Cir. 1997) (permitting the use of statistics to draw inferences about the claims of 3,000 plaintiffs and intervenors who claimed wrongful death, personal injury, and property contamination from defendant's storage of hazardous substances which had leaked from crude oil waste pits and migrated into the plaintiffs' drinking water supply.); *see Watson v. Shell Oil Co.*, 979 F.2d 1014, 1018 (5th Cir. 1992) (approving trial court's proposal to determine punitive damages in a mass-tort class-action suit by fully trying 20 sample claims on *compensatory* damages to the jury and then asking the jury to "establish the ratio of punitive damages to compensatory damages for each class member"); *Hilao v. Estate of Marcos*, 103 F.3d 767, 782087 (9th Cir. 1996). The Ninth Circuit Court of Appeals allowed the use of aggregation and statistical analysis to determine compensatory damages where a statistics expert relied on a random sample of claims to calculate damages for the entire class.); *see also*, Newberg on Class Actions at §10:3 (4th ed) (citing *Long v. Trans World Airlines, Inc.*, 761 F.Supp. 1320, 1324-1326 (N.D. Ill. 1991) (approving use of a sample of class members' damages in labor dispute as a basis to determine class-wide damages).

Thus, class-wide property damages can be established by a formulaic method or by a

17

combination of a formulaic method and a claims proceeding or mini-trials to meet the Rule

23(b)(3) predominance requirement. *Monumental,* 365 F.3d at 419. In addition, the FOFCOL

from *Germano* and *Hernandez* demonstrate benchmark damage awards for the cost of

remediation, the alternative living costs, property diminution, loss of use and enjoyment and

private property damage.

### c.   Louisiana Law Applies to All Claims in this Case

Variation of state law and choice of law are also significant concerns for manageability.

*Mullen,* 186 F.3d at 627. Here, these matters are easily managed because there is only one

state's laws to consider - Louisiana. *See Manual for Complex Litigation,* Fourth § 22.634, p.

634; §§22.753-54, p. 652.

As stated above, the factual determination of class-wide liability and property damages

are the predominating common issues to be resolved in this case. These types of issues are

recognized as pivotal class issues. *Mullen,* 186 F.3d at 626; *Monumental,* 365 F.3d at 419;

*Murphy,* 234 F.R.D. at 606; *McQuilken,* 576 F.Supp. at 1031. The types of issues that are often

seen as obstacles to class certification: those that require extensive individualized proof like

where class members seeking personal injury damages are exposed to different products, at

different times and suffer different injuries; are not present in this case. *Mullen,* 186 F.3d at 626;

*Turner v. Murphy Oil,* No. 05-4206, Order and Reasons at 13-14 (January 30, 2006) (Comp. Ex.

8). Similarly, complex choice of law issues are not involved here. *Mullen,* 186 F.3d at 627. In

contrast to those cases that have not allowed certification, this case presents class claims where

each member of the class has suffered the same type of injury, during the same time period,

caused by the conduct of the same defendant; which is a paradigm for class certification.

> In the present case the plaintiffs are an extremely compact and
> discrete geographical group, readily identifiable. There are no

18

> choice of law problems.  All claim to have suffered the same type
> of harm, during the same time period, caused by the same conduct
> of the defendant.   This case is thus similar to those cited above in
> which class certification has been granted.  It also differs from
> those "mass tort" cases in which certification has been denied
> because the harm to various class members took place at different
> times and under different circumstances, or because individual
> defenses or choice of law problems existed.

*McQuilken,* 576 F.Supp. at 1031; *see also Mullen,* 186 F.3d at 626-627.

In sum, the substantive property damage law applicable to CDW claims in Louisiana has been established, *Hernandez* FOFCOL at 44-47,[5] and there is no variation in the law to be applied to members of the class.  Class-wide liability and class-wide damages can be established on a common basis.  The trial of this case on these predominant issues thus is manageable as is demonstrated by the Proposed Trial Plan (filed simultaneously herewith).  The requirements of Rule 23(b)(3) predominance for the damages claims are readily established.

> **d.      Class Treatment of the Damages Claims Meets the Rule 23(b)(3) Superiority Requirement**

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication:  the class members' interest in individually controlling their separate actions, the extent and nature of existing litigation by class members concerning the same claims, the desirability of concentrating the litigation in the particular form, and the likely difficulties in class management.  Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.,* 590 F.3d 298, 304 (5th Cir. 2009).

---

[5] In addition, Louisiana law supports a property damage claim for diminished value of real estate and loss of use and enjoyment.  *See also Thomas v. Desire Cmty. Hous. Project,* 98-2097 (La. App. 4th Cir. 8/10/00), 773 So.2d 755 (allowing non-pecuniary damages of $15,500 for problems in the construction of plaintiff's home); *Taylor v. Burton,* 97-1348 (La. App. 3rd Cir. 3/6/98), 708 So.2d 531 (upholding award for aggravation and mental distress due to defects in plaintiff's house); *Mayer v. Three R's Inc.,* 597 So.2d 151, 155 (La. App. 3rd Cir. 1992) (affirming award for inconvenience and mental anguish), *writ denied,* 600 So.2d 680 (La. 1992); *see also,* LA.CIV. CODE ART. 2524. *See Bonnette v. Conoco Inc.,* 2001-2767 (La. 1/28/03), 837 So.2d 1219, 1238-1240 (upholding an award for the diminished value of a remediated home because the former presence of asbestos would need to be disclosed to prospective buyers); *see also, e.g., Johnson v. Orleans Parish Sch. Bd.,* 2006-1223 (La. App. 4th Cir. 1/30/08), 975 So.2d 698, 705-706.

A class proceeding is the superior method to adjudicate the major subset of claims in the MDL, the property damage claims against Knauf from Florida and Louisiana. The exhaustive record of the relevant factual evidence already reviewed by and ruled on by this Court and the *Seifart* Court greatly enhances the manageability of this matter. A class proceeding will facilitate an expeditious and streamlined resolution for the largest subset of affected homeowners and potentially establish a road map to resolve the remaining claims in the MDL. This streamlined procedure is desirable and necessary because the property damage caused by Knauf drywall has forced many homeowners to abandon their homes and has placed several homeowners under financial pressure including the need to pay two mortgages, loss of credit rating, and foreclosure. Further, there are no management difficulties in the trial of these claims. *See* Proposed Trial Plan. For all the reasons stated above, as well as the procedural advantages of avoiding duplicate proceedings on identical issues, class adjudication is the superior method to resolve the property damage claims of Louisiana homeowners who purchased defective CDW from Interior Exterior. Thus, the predominance and superiority requirements for the class damages claims are established.

### 2. The Declaratory Relief Claim Should be Certified Under Rule 23(b)(2)

Class certification is appropriate under Rule 23(b)(2) if the 23(a) factors are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Declaratory relief, rather than monetary damages, embodies the type of equitable claim for which "class certification is appropriate under Rule 23(b)(2)." *McWaters v. FEMA*, 237 F.R.D. 155, 162 (E.D. La. 2006).

Indemnity actions or insurance declaratory relief actions are held to be principally

equitable in nature. *See, e.g., Adkinson v. Int'l Harvester Co.*, 975 F.2d 208, 213 (5th Cir. 1992) (explaining that many states, including Mississippi, treat indemnity claims as equitable claims). Indeed, coverage actions are regularly certified under Rule 23(b)(2). *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 674 (S.D. Fla. 1997) (certifying (b)(2) action seeking declaration of rights as to coverage available under insurance policies); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 698 (S.D. Ga. 2002) (granting (b)(2) certification of claim alleging improper termination of life insurance benefits). The class here seeks an equitable remedy from the insurance carrier Defendants to indemnify Interior Exterior for the remediation costs the class has incurred, continues to incur, and will incur. Resolution of such issues is paradigmatic of the purpose of Rule 23(b)(2).

## IV. CONCLUSION

For the reasons stated herein and in the Proposed Trial Plan and Declarations filed simultaneously herewith, Plaintiffs respectfully request class certification of their damages and declaratory judgment claims pursuant to Fed. R. Civ. P. 23(b)(3) and 23(b)(2).

**PROPOSED CLASS COUNSEL**

Dated: September  21, 2010                      Respectfully submitted,


                                                /s/ Leonard A. Davis
                                                Russ M. Herman, Esquire
                                                Leonard A. Davis, Esquire
                                                HERMAN, HERMAN, KATZ & COTLAR, LLP
                                                820 O'Keefe Avenue
                                                New Orleans, Louisiana 70113
                                                Phone: (504) 581-4892
                                                Fax: (504) 561-6024
                                                Ldavis@hhkc.com
                                                *Plaintiffs' Liaison Counsel*
                                                *MDL 2047*

21

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

## PROPOSED OF COUNSEL TO CLASS,
## PLAINTIFFS' STEERING COMMITTEE

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR,
LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com


Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com


Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com