UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED      MDL NO. 2047
DRYWALL PRODUCTS LIABILITY       SECTION: L
LITIGATION

THIS DOCUMENT RELATES TO       JUDGE FALLON
                                     MAG. JUDGE WILKINSON

Vickers et al v. Knauf Gips KG et al
EDLA 09-04117
AND
Payton et al v. Knauf Gips KG et al
EDLA 09-07628

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR CERTIFICATION OF A FLORIDA HOMEOWNER CLASS FOR
CLAIMS AGAINST BANNER SUPPLY CO.

# TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................................................ 1

    A.     **Numerosity** ................................................................................ 4

    B.     **Commonality** ............................................................................ 4

    C.     **Typicality** .................................................................................. 4

    D.     **Adequacy of Representation** ................................................. 5

    E.     **Predominance** .......................................................................... 5

    F.     **Superiority** ............................................................................... 6

II.     **FACTUAL STATEMENT AND PROCEDURAL HISTORY** ........................ 6

    A.     **Distribution of Chinese Manufactured Drywall through Banner Supply Co. in Florida** ........................................................ 6

    B.     **General Background on CDW Damage to Homes** ................. 7

    C.     **CDW Related Damages Suffered by Ms. Karin Vickers and Dr. Steven Roberts** ................................................................ 11

III.     ARGUMENT ........................................................................................ 12

    A.     **Standard of Review** ................................................................ 12

    B.     **Elements of Rule 23** ............................................................... 12

        1.     **Numerosity – Rule 23(a)(1)** ......................................... 12

        2.     **Commonality – Rule 23(a)(2)** ...................................... 13

        3.     **Typicality – Rule 23(a)(3).** ............................................ 14

        4.     **Adequacy of Representation – Rule 23(a)(4)** ................ 15

            a.   **Ascertainability** ................................................. 16

        5.     **Predominance – Rule 23(b)(3)** ..................................... 17

            a.   **Defendant Banner's Course of Conduct is a Common Liability Issue** ................ 19

            b.   **Determination of Class-Wide Damages is a Predominant Issue** .......................... 20

                i.   **Formulaic Method to Determine Class-Wide Property Damages** ............... 21

            c.   **All of the Class Claims are Governed by Florida Substantive Law** ................. 24

        6.     **Superiority – Rule 23(b)(3)** .......................................... 26

IV.     **CONCLUSION** ................................................................................. 27

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Allapattah Servs. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003) ........................................................................20

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) ......................................................................11, 15

*Bishop v. Florida Specialty Paint Co.*,
   389 So.2d 999 (Fla. 1980).............................................................................24

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) .........................................................................17

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ......................................................................11, 12

*DeBremaecker v. Short*,
   433 F.2d 733 (5th Cir. 1970) .......................................................................16

*Harris v. Berkowitz*,
   433 So.2d 613 (Fla. App. 1983)......................................................................24

*Hilao v. Estate of Marcos*,
   103 F.3d 767 (9th Cir. 1996) .......................................................................22

*In re A.H. Robins Co., Inc.*,
   880 F.2d 709 (4th Cir. 1989) .......................................................................16

*In re Chevron U.S.A., Inc.*,
   109 F.3d 1016 (5th Cir. 1997) .....................................................................22

*In re NASDAQ Market-Makers Antitrust Litigation*,
   169 F.R.D. at 525 (S.D.N.Y. 1996) ................................................................20

*In re Terazosin Hydrochloride*,
   220 F.R.D. 672 (S.D. Fla. 2004) ...................................................................20

*In re Vioxx Prods. Liab. Litig.*,
   478 F. Supp. 2d 897 (E.D. La. 2007) ..............................................................23

*In re Vioxx Products Liability Litigation,*
  239 F.R.D. 450 (E.D. La. 2006).........................................................................23

*James v. City of Dallas,*
  254 F.3d 551 (5th Cir. 2001) ......................................................................13, 14

*John v. Nat'l Security Fire & Cas. Co.,*
  501 F.3d 443 (5th Cir. 2007) ..............................................................................16

*Klaxon Co. v. Stenor Elec. Mfg. Co.,*
  313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)..........................................23

*McQuilken v. A&R Development,*
  576 F.Supp. 1023 (E.D. Pa. 1983) ............................................................18, 24, 25

*Mims v. Stewart Title Guar. Co.,*
  590 F.3d 298 (5th Cir. 2009) ..............................................................................25

*Monumental Life Insurance Co. v. National Life,*
  365 F.3d 408 (5th Cir. 2004) ....................................................................19, 23, 24

*Mullen v. Treasure Chest Casino LLC,*
  186 F.3d 620 (5th Cir. 1999) ....................................................................... passim

*Pederson v. La. State Univ.,*
  213 F.3d 858 (5th Cir. 2000) ..............................................................................12

*Sher v. Raytheon Co.,*
  261 F.R.D. 651, 2009 WL 31931 ..........................................................................22

*Simer v. Rios,*
  661 F.2d 655 (7th Cir. 1981) ..............................................................................16

*Turner v. Murphy,*
  No. 05-4206, Order ..................................................................................20, 24

*Turner v. Murphy Oil USA Inc.,*
  234 F.R.D. 597 (E.D. La. 2006)..................................................................... passim

*Vizena v. Union Pac. R.R. Co.,*
  360 F.3d 496 (5th Cir. 2004) ......................................................................11, 12

*Watson v. Shell Oil Co.,*
  979 F.2d 1014 (5th Cir. 1992) ..............................................................................22

iii

Other Authorities

Fed. R. Civ. P. 23(a)(1-4) ............................................................................................3

Fed. R. Civ. P. 23(b)(3) ..................................................................................... passim

Fed. R. Civ. P. 23(g) ....................................................................................................15

Fed. R. Civ. P. 30(b)(6) ................................................................................................7

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED** **DRYWALL PRODUCTS LIABILITY** **LITIGATION** | **MDL NO. 2047** **SECTION: L** |
| **THIS DOCUMENT RELATES TO** | **JUDGE FALLON** **MAG. JUDGE WILKINSON** |
| **Vickers et al v. Knauf Gips KG et al** **EDLA 09-04117** **AND** **Payton et al v. Knauf Gips KG et al** **EDLA 09-07628** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CERTIFICATION OF A FLORIDA HOMEOWNER CLASS FOR**
**CLAIMS AGAINST BANNER SUPPLY CO.**

**I.       INTRODUCTION**

This matter involves the claims of thousands of homeowners who have suffered property

damages from the use of Chinese-manufactured drywall ("CDW") obtained through Banner

Supply Co. and other Banner entities ("Banner"), in their homes.  The Florida class

representatives, Ms. Karin Vickers who owns a home at 2259 S.E. 19th Avenue, Homestead, FL

33035 and Dr. Steven Roberts who owns a home at 10013 Cobblestone Creek Drive, Boynton

Beach, FL 33472, hereby move for class certification on behalf of themselves and all similarly

situated persons pursuant to Fed. R. Civ. P. 23(b)(3).  Plaintiffs seek certification of a class of all

owners of residential real properties containing CDW obtained through Banner, on their claims

1

for remediation and property damages.[1]

All claims of homeowners who obtained CDW through Banner are claims brought by Florida homeowners.  Proposed class counsel and the PSC submit that the MDL claimants will best be served by a class action proceeding on behalf of a Florida homeowner class against Banner seeking an award of class-wide property damages for all similarly situated residents. Certification of these claims will efficiently advance the resolution of a large set of Florida claims.  The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications.

These claims are ripe for class certification for several reasons:

- First, this court has already overseen extensive CDW-related discovery, expert testimony, and issued judicial Findings of Fact and Conclusions of Law ("FOFCOL");[2] and the Miami-Dade County state court in Florida has already presided over a jury trial with a verdict for damages caused by the Knauf CDW, which was distributed by Banner.[3]

---

[1] The class definition is: "All owners of residential real properties in the State of Florida containing Chinese manufactured drywall sold, distributed, supplied, marketed, inspected, imported or delivered by Banner Supply Co., from January 1, 2005 to December 31, 2008, who have not released or assigned their property damage claims to a third party."

[2] *See In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, *Hernandez v. Knauf Gips KG, et al.*, Case No. 09-6050 (hereinafter "*Hernandez*") FOFCOL (Docket #2713); In re *Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, *Campbell-Clement/Schexnaydre v. Knauf Plasterboard (Tianjin) Co., Ltd., et al*, Case No. 09-7628 (hereinafter "*Campbell/Clement*"); *see also Germano et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 2:09-cv-6687 (hereinafter "*Germano*") FOFCOL (Docket #2380).

[3] *See In re Chinese Manufactured Drywall Products Liability Litigation, Seifart v. Knauf GIPS KG et al*, Case No. 09-38887 CA 01 (42) (Circuit Court of the 11th Judicial District, Miami-Dade County, Florida) (hereinafter "*Seifart*") Order Denying Defendant Banner Supply Co.'s Motion for Judgment in Accordance with Prior Motion for Directed Verdict or, in the Alternative, for New Trial (July 26, 2010) (*See Compendium of Exhibits in Support of Plaintiffs'*

- Second, the Florida law as it relates to CDW property damage claims has been established in the *Seifart* trial in state court in Florida.

- Third, this class action is limited to property damage and does not include personal injury.

- Fourth, the proposed class representatives from Florida have completed their Plaintiff Profile Forms ("PPF") and provided their product identification information to Banner.

The pivotal issues underlying the Florida homeowners' claims against Banner have been thoroughly litigated and provide sufficient maturity to this mass tort to facilitate a determination of class-wide property damages. Since Florida homeowners with CDW obtained through Banner make up a significant portion of the MDL claims; a class action, brought under Fed. R. Civ. P. 23(b)(3), can potentially resolve a large subset of claims in the MDL and establish a roadmap for the resolution of remaining claims. Here, Plaintiffs limit their request for certification to the property damage claims of Florida homeowners who obtained CDW through Banner. Any class member seeking personal injury (or medical monitoring) relief would need to do so on an individual basis, not through this class action. Furthermore, although the underlying *Vickers* Complaint alleges a national class against all Defendants, this motion only seeks to certify a subset of that class, to wit the claims against Banner for Florida homeowners. All Banner sales of CDW occurred in Florida.

---

Motion for Certification of a Florida Homeowner Class for claims against Banner ("Comp.") Exhibit ("Ex.") 1); Order Denying Defendants Certain Homes and Mandy Drywall Motions to Dismiss Plaintiffs' Second Amended Complaint (March 30, 2010) (Comp. Ex. 2); Order Denying Defendant Banner Supply Co. and all Similarly Situated Defendants' Motions to Stay, or Alternatively, Motions to Dismiss Plaintiffs' Amended Complaints and Strike

The Florida class claims against Banner readily meet the Fed. R. Civ. P. 23(a)(1-4) requirements of numerosity, commonality, typicality, and adequacy, as well as the predominance and superiority requirements of Rule 23(b)(3).

### A.     Numerosity

As to numerosity, available sales and distribution records and the Omnibus Complaints indicate that the number of Florida homeowners who own homes containing CDW (homes that are either all Chinese drywall or "mixed" Chinese and other drywall) obtained through Banner, and who could qualify as members of the class is estimated to be more than 1000. This evidence establishes numerosity.

### B.     Commonality

Commonality is also easily established. With the benefit of the availability of the pretrial and trial rulings from *Seifart,* Plaintiffs will be able to readily demonstrate that the relevant factual and legal property damage determinations already made, including Banner's liability and damages to homeowners caused by CDW distributed by Banner, are common questions. In addition, the need to quantify damages for the class is a common question. Thus, commonality requirement will be satisfied.

### C.     Typicality

The claims of the class representatives are also typical of the class. Ms. Vickers and Dr. Roberts, like each class member, are homeowners seeking to recover for damages caused by defective CDW distributed by Banner utilizing the same causes of action. Similarly, the class representatives' claims, like the claims of all class members, are governed by the substantive law

---

Demands for Attorneys' Fees (December 18, 2009) (Comp. Ex. 3); Verdict Form (June 18, 2010) (Comp. Ex. 4).

of Florida - the law of Plaintiffs' state.  The class representatives possess the same interest and

have suffered the same type of injury as class members.  Thus, typicality can be readily

established.

### D.    Adequacy of Representation

Similarly, Ms. Vickers and Dr. Roberts will fairly and adequately protect the interests of

the class.  Each has already undergone a screening inspection of his or her home to verify the

presence of defective Knauf CDW distributed by Banner and corrosion damage.  Each has

completed the court-mandated PPF and provided product identification photographs.  In addition,

proposed class counsel  (Arnold Levin of Levin, Fishbein, Sedran & Berman;  Ervin Gonzalez, of

Colson Hicks Eidson; and Richard Lewis, of Hausfeld LLP) are experienced and competent

counsel, as amply demonstrated by their participation in the *Germano, Hernandez,* and

*Campbell/Clement* proceedings before this court,  and the *Seifart* trial in Florida state court.

### E.    Predominance

As to predominance, the primary remaining unresolved issue that predominates over any

individual issues that may be present in this case is the issue of the amount of class-wide

damages.  Plaintiffs will establish herein that the class-wide liability and damages can be

determined on a common basis.  Banner's course of conduct which caused the property damages

to the Plaintiffs and the class impacted all class members in a similar way.  Plaintiffs and class

members suffered the same type of property damages.  There will be no difficulty in managing

multiple states' laws because the substantive law of only one state, Florida, will govern all

claims.  Plaintiffs have submitted a trial plan for the determination of liability and class-wide

damages.  (*See* "Proposed Trial Plan," filed simultaneously herewith).

**F.     Superiority**

Plaintiffs will show that the class action mechanism is a superior mechanism to resolve these claims compared to individual proceedings.  The applicable law and the type of recoverable damages are uniform across class members.  It would be grossly inefficient and a waste of judicial economy for different courts to resolve these identical issues on an individual basis, and it would unnecessarily create a risk of inconsistent adjudications.  In sum, if the class is certified, the Court can resolve the issues of class-wide liability and the amount of class-wide damages. These are common and predominating issues that are thoroughly within the expertise and competence of the MDL Court, particularly after the Court has presided as the finder of fact in the *Hernandez* remediation and property damages trial and presided over other CDW trials.

**II.     FACTUAL STATEMENT AND PROCEDURAL HISTORY**

**A.     Distribution of Chinese Manufactured Drywall through Banner Supply Co. in Florida**

The present matters commenced when Plaintiff Vickers, on behalf of herself and all other similarly situated owners brought a class action against Defendant Banner Supply Co. and others on June 22, 2009.  Since then the Complaint has been amended to plead a national class.  *Vickers v. Knauf et al,* Third Amended Complaint – Class Action (*Vickers* Complaint).  The Payton Omni Complaint which includes Dr. Roberts was filed on December 9, 2009 (*Payton* Docket #1) (*Payton* Complaint).  The *Vickers* and *Payton* Complaints assert claims against Banner under numerous theories including negligence, negligence *per se*, strict liability, breach of express and/or implied warranties, breach of contract, private nuisance, unjust enrichment, violation of the Consumer Protection Acts, and for equitable injunctive relief and medical monitoring.

6

Banner sold defective CDW that was purchased and built into homes in Florida from at least 2005 to 2008. According to the Banner Distributor Profile Forms, Banner purchased for sale in Florida over 1.3 million pieces of CDW from La Suprema and over 33,000 pieces of CDW from Shandong and distributed nearly all of this product. Banner Distributor Profile Forms, (Comp. Ex. 5). Confidential Settlement Agreement and Release *Seifart*, Plaintiff Ex. 70, Banner-MDL-7393 thru 7401 (January 29, 2007) ("Confidential Agreement") (Comp. Ex. 6); Summary of La Suprema invoices to Banner Supply Co. (2006), *Seifart* Plaintiff Ex. 349 (Comp. Ex. 7); Fed. R. Civ. P. 30(b)(6) Deposition of La Suprema, Salomon H. Adabi (October 19, 2009) at 104(22) – 105(13), 108(20) – 109(17), 199(19) – 200(24) (Comp. Ex. 8); Declaration of Ronald E. Wright, P.E. ("Wright Dec.") at ¶ 3 (filed simultaneously herewith). Banner failed to adequately test and monitor the CDW it sold. Banner failed to warn Plaintiffs and class members of the smelly defective drywall when it was clear they had a record of each and every location to which they delivered CDW. Moreover, Banner withheld information from the Plaintiffs and class members that would have enabled them to prevent or mitigate damage from the defective drywall.[4] The class representatives' homes contain defective Knauf CDW which was distributed by Banner. Confidential Agreement (Comp. Ex. 6); Banner Invoices (Comp. Ex. 9).

**B.      General Background on CDW Damage to Homes**

The Court's FOFCOL in *Hernandez* and the factual record in *Seifart* establish and set forth the majority of the facts (supported by record evidence) relevant to this class motion including facts relevant to Banner's conduct, the defect in the drywall, and the damage it causes. Hernandez Docket #2713; and Confidential Agreement (Comp. Ex. 6). This Factual Statement

---

[4] Confidential Settlement Agreement (Comp. Ex. 6) at ¶ 7.7

incorporates the *Hernandez* FOFCOL and the *Seifart* record citations in this brief by reference and will only highlight those facts most relevant to class certification.

From 2004 through 2006, the housing boom and rebuilding efforts necessitated by various hurricanes lead to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast states including Virginia. After the installation of the CDW, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the failure of appliances and electrical devices in their homes. Many of these homeowners also began to complain of respiratory irritation, headaches and fatigue. *Hernandez* FOFCOL at 3-19; Confidential Agreement (Comp. Ex. 6).

The Consumer Product Safety Commission ("CPSC") and this Court established that CDW, including Knauf drywall, releases reduced sulfur gases. *Hernandez* FOFCOL at 15-21. The three main gases released from Knauf CDW are hydrogen sulfide ($H_2S$), carbonyl sulfide (COS), and carbon disulfide ($CS_2$). *Id.* The CPSC and plaintiffs' experts have detected sulfur gas emissions by conducting laboratory tests on samples of this drywall. *Id.* These emissions are often associated with strong odors. *Id.* The fact that Knauf CDW emits sulfur gases has been reported by the CPSC, the Florida Department of Health, and other investigatory agencies and firms. *Id.* The sulfur gases released by Knauf drywall cause respiratory, eye, throat and skin irritation,[5] and cause offending odors in homes, making them hard if not impossible to live in,

---

[5] While personal injury claims are not a part of this class action, the reported symptoms are relevant in so far as they establish that the CDW is defective, must be replaced, causes class-wide effects, and that residents experienced loss

and are corrosive to metals, particularly copper and silver. *Id* at 8-19.

The corrosion of metals, particularly copper and silver, caused by the sulfur gases emitted by Chinese drywall leads to premature failure of electrical and mechanical devices. *Id.* at 15-31. Laboratory analysis of the copper and silver components from the homes identified the sulfur induced corrosion as the cause of HVAC coil failure and the cause of the severe deposits at the operative connections in the appliances and in consumer electronics. *Id.* Mechanical, electrical, and electronic failures have occurred prematurely due to the severe industrial corrosive environments in these Knauf drywall homes. *Id. at* 15-31. Evaluation of comparable HVAC systems, appliances, and electronics in *control* homes (e.g., similar homes without Chinese drywall or other defective CDW) do not show premature failures of HVAC systems, appliances, and electronics, and the wires do not have corrosion product thicknesses that would predict premature failures based on corrosivity standards. *Id.* at 15-31. The corrosion on metals caused by the sulfur gases emitted by Knauf drywall also poses a fire risk. *Id.* at 25-26. The level of corrosive sulfur gases emitted by the drywall in the class representatives' homes exceed the safe level established by recognized standards, peer reviewed literature, and expert opinions; and caused a corrosive environment in their homes that has a significant impact on the exposed property. *Id.* at 15-31.

The scientific evidence has demonstrated that corrosion has damaged many components in the home. *Id.* at 15-33. The Court ordered Crawford inspection reports also confirmed widespread corrosion damage. Wright Dec. at ¶4. Consequently, in these homes *all* drywall

---

of use and enjoyment and dislocation expenses due to the CDW.

needs to be removed and replaced. Removal of all drywall in a home that contains only Chinese

drywall as well as a "mixed" home is efficient and cost effective. All electrical wires also need

to be replaced because the insulation jackets on electrical wires do not adequately protect them

from corrosive attack. *Id.* at 21-33. It is not feasible to clean the wires of corrosion product to

render them free of risk of future failure. *Id.* at 25. In addition, the following items will also

have to be replaced: copper pipes, HVAC units, certain electrical devices and appliances, carpet,

and vinyl flooring, cabinets, countertops, trim, crown molding, baseboards, bathroom fixtures

and insulation. *Id.* at 29-35, *Seifart* Verdict Form (Comp. Ex. 4).

In sum, the evidence supports the conclusion that the appropriate remediation for homes

containing Chinese drywall includes the removal of all drywall, all electrical wiring, the entire

HVAC system, and many other items such as appliances, carpet, cabinetry, trim work and

flooring. *Id.* at 27-35. The scope of this remediation is supported by both the scientific evidence

and the evidence of pragmatic concerns relevant to efficient remediation. *Id. at* 27-36. As part

of the remediation, homes will need to be cleaned with a HEPA vacuum, wet-wiped or power-

washed, and allowed to air-out after remediation. After remediation, an independent, qualified

engineering company should inspect and certify that the homes are safe for occupation. *Id.* at 34.

This remediation scope of work is consistent with Chinese drywall remediation being performed

by national homebuilders and recommended by the CPSC. *Id.* at 34-35; *Germano* FOFCOL at

54-55, *Seifart* Verdict Form (Comp. Ex. 4).

The evidence reviewed by this Court indicates that the removal of all drywall in those

homes in which there is a substantial mixture, as opposed to selective removal of CDW on a

board-by-board basis is the better and more realistic approach.  (This point was not contested by

the defendant in *Seifart*.)  This is necessary in order to remove and replace wires, pipes, and

insulation, and to adequately clean the home.  Furthermore, the evidence indicates that it is

virtually impossible to detect, in a nondestructive manner with reasonable accuracy, which

drywall is and is not CDW.  *Hernandez* FOFCOL at 32.  To accomplish this type of remediation,

homeowners will be out of their home for 4-6 months during remediation.  *Id. at* 41; *Seifart*

Verdict Form (Comp. Ex. 4).

### C.  CDW Related Damages Suffered by Ms. Karin Vickers and Dr. Steven Roberts

The need for this sort of repair and remediation is fully applicable to the class

representatives, Ms. Vickers and Dr. Roberts, and absent class members.  Wright Dec. at ¶6.  Ms.

Vickers and Dr. Roberts have subjected their homes to a screening inspection which determined

product identification of CDW and corrosion of metal surfaces in the home, characteristic of

CDW.  Wright Dec. at ¶¶3-5.  In addition, Ms. Vickers and Dr. Roberts have completed the PPF

and provided product identification information, as required by court order.  Declaration of

Arnold Levin ("Levin Dec.") (filed simultaneously herewith) at ¶¶2-5.  Ms. Vickers and Dr.

Roberts have suffered property damage caused by the defective CDW.  Vickers PPF, (Comp. Ex.

10), Roberts PPF (Comp. Ex. 11), Wright Dec. at ¶5.  Damages suffered by Ms. Vickers, Dr.

Roberts, and class members include the cost of the needed remediation, alternate living costs,

property diminution, loss of use and enjoyment damages, and personal property damages.

*Vickers* Complaint; *Payton* Complaint.

11

III.    **ARGUMENT**

A.    **Standard of Review**

The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502-03 (5th Cir. 2004). The class certification decision should not reach the merits of the Plaintiffs' claims. *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 724, (5th Cir. 2007) (*quoting Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996)). However, in some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Id.* The district court must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Vizena,* F.3d at 503.

B.    **Elements of Rule 23**

1.    **Numerosity – Rule 23(a)(1)**

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purposed class members." *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000). "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir. 1999).

Analysis of available records, including the Omnibus Complaints, Banner Distributor

12

Profile Forms and sales records, and third party sales records, indicates that the best estimate of the number of Florida homeowners with CDW obtained through Banner who would qualify as a class member is in excess of 1000. Levin Dec. at ¶5. According to Banner, it sold over 1.3 million pieces of CDW in Florida in the 2005-2008 timeframe. *See* Comp. Ex. 5. Furthermore, the invoice and Profile Form records of Banner, La Suprema, and Knauf indicate widespread sales of CDW by Banner in Florida. *See* Comp. Exs. 5, 7, 12, 13, 15. Wright Dec. at ¶3 (showing that if the average CDW home in Florida with CDW from Banner contained 200 pieces of CDW, then Banner sold enough CDW for thousands of Florida homes). Therefore, the number of homeowners with CDW obtained through Banner in Florida likely exceeds 1000. The class representatives and absent members of the class all seek remediation and property damages for their homes as the primary form of relief in their claims. Joinder of this many class members is impracticable and would lead to a squandering of judicial economy and the resources of the parties. *Turner v. Murphy Oil USA Inc.,* 234 F.R.D. 597, 604 (E.D. La. 2006). Thus, the proposed class meets the numerosity requirement.

## 2.    Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that there be issues of law or fact common to the class. The commonality requirement is satisfied if resolution of at least one issue will affect all or a significant number of class members. *James v. City of Dallas,* 254 F.3d 551, 570 (5th Cir. 2001); *Mullen,* 186 F.3d at 620, 625. There is a low threshold for commonality, and the fact that some class members have different claims or require individualized analysis does not defeat commonality. *James,* 254 F.3d at 570.

13

The proposed class representatives and the proposed class have numerous factual and legal issues in common, including but not limited to:

- whether CDW obtained through Banner is defective and needs to be replaced;

- whether additional items in the home need to be repaired or replaced;

- the determination of Banner's liability as the distributor or seller, of CDW;

- the determination of the fact of damages to the class representatives and members of the class; and

- the availability and amount of class-wide damages.

Thus, the commonality requirement is also satisfied.

### 3.      Typicality – Rule 23(a)(3).

Rule 23(a)(3) requires that the claims of the class representatives are typical of the class's claims or defenses.  Again, the threshold for typicality is low:  class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen,* 186 F.3d at 625.  Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics – a similar course of conduct, or the same legal theory. *James,* 254 F.3d at 571 (*quoting* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

The property damage claims of the class representatives are the same as those of the absent class members.  The determination of these damages depends on the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring in the class members' homes, the need for remediation, and the square

14

footage costs of accomplishing the remediation. *Murphy,* 234 F.R.D. at 605 (theories of liability

of property owners damaged by oil are alike, and support a finding of typicality); *see* Wright Dec.

at ¶¶6-7. Further, the establishment of damages is governed by the identical home state law,

Florida, for all class members. Thus, the typicality requirement is readily met.

### 4.      Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) demands that the named class representatives fairly and adequately

represent the claims of the other class members. There can be differences between the class

representatives and other class members so long as these differences do not "create conflicts

between the named Plaintiffs' interests and the class members' interests." *Mullen,* 186 F.3d at

626. A district court should evaluate whether the class representatives have a sufficient stake in

the outcome of the litigation, and whether the class representatives have interests antagonistic to

the unnamed class members. *Id. (citing Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir.

1971)). In addition, the district court should inquire into the zeal and competence of the class

representatives' counsel and into the class representatives' willingness to take an active role in

the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.,* 257

F.3d 475, 479 (5th Cir. 2001).

Under Rule Fed. R. Civ. P. 23(g), a district court must appoint class counsel at the time

the class is certified, unless otherwise provided by statute. The class counsel must fairly and

adequately represent the interests of the class, and the court must review the counsel's work in

investigating claims, experience in handling class action litigation, knowledge of the applicable

law, and the resources counsel will commit to representing the class. Rule 23(g)(1)(B),(C).

The proposed class representatives, Ms. Karin Vickers and Dr. Steven Roberts, have the same interest as absent subclass members in obtaining property damage relief from Banner. They also all share the same interest in the enforcement of a class judgment and the collection of that judgment against Banner.  The class representatives have demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the fact of corrosion damage.  Further, Ms. Vickers and Dr. Roberts have timely completed the court ordered PPF and provided her product identification information. Levin Dec. at ¶2.  Finally, each has agreed to make themselves available for deposition and cooperate with requests to assist this Court and counsel as needed.  Levin Dec. at ¶7.

The proposed class counsel are experienced in class action practice, well respected, and competent lawyers.  Levin Dec. at ¶8 (attaching Curriculum Vitae of proposed class counsel). This Court has already had the opportunity to work extensively with each of the proposed class counsel and their firms in prior proceedings in this case.  Thus, the Court should find that the proposed class representatives, Ms. Karin Vickers and Dr. Steven Roberts, as well as the proposed class counsel; (Arnold Levin of Levin, Fishbein, Sedran & Berman; Ervin Gonzalez, of Colson Hicks Eidson; and Richard Lewis, of Hausfeld LLP for Florida) are adequate.

### a.    Ascertainability

It should be noted that various courts consider *ascertainability* to be a requirement under Rule 23.  Ascertainability pertains to the ability of the Court based on record evidence to utilize objective criteria to determine who is a subclass member (and who is not).  The Fifth Circuit has referred to ascertainability as an "implied prerequisite of Rule 23." *John v. Nat'l Security Fire &*

16

*Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981); 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist."). Here, the class is ascertainable. Membership in the class is based on two key objective criteria: (1) ownership of a residence in Florida; and (2) the identification of CDW obtained through Banner in that residence. The determination of CDW in a residence is established through visual identification of known markings. *See* PTO #10 (Docket #171); Wright Dec. at ¶5. The determination that Banner was the distributor of the CDW in question can be made based on Banner invoices and other documentation linking Banner's distribution of Knauf and Shandong CDW to construction of residences in Florida. Banner Invoices (Comp. Ex. 9); Banner Supply Sales Records (Comp. Ex. 13); Banner Distributor Profile Forms (Comp. Ex. 5); La Suprema Distributor Profile Form (Comp. Ex. 12); La Suprema Invoices to Banner Supply (Comp. Ex. 7), and Knauf Manufacturers' Profile Forms (Comp. Ex. 14). Thus, the proposed class meets the ascertainability requirement.

### 5.    Predominance – Rule 23(b)(3)

Rule 23(b)(3) requires that the class share common issues of law or fact that predominate over the questions affecting individual class members. In general, in order to predominate, common issues must form a significant part of the individual cases. *Mullen,* 186 F.3d at 626.

17

Specifically, a district court should consider how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues. *See Castano,* 84 F.3d at 744-45 (finding that certification was inappropriate where individual trials would be necessary to determine an element of the Plaintiffs' fraud claims).

The dual demands of Rule 23(b)(3) are that common issues are significant and will resolve substantial aspects of the case, and that the case will be manageable for trial purposes. *Id.*  The issue of Banner's liability for the distribution of defective CDW is a significant issue that will resolve a substantial aspect of the many claims pending against Banner.  Furthermore the determination that property damages can be determined on a class-wide basis using a formulaic approach to determine damages such as the one outlined by Plaintiff's expert, Ronald Wright, Wright Dec. at ¶¶6-7.  The ultimate determination of the class-wide damages is also a significant issue that will resolve major aspects of this case and is manageable for trial purposes. This Court, and the *Seifart* Court in prior proceedings have already found sufficient facts to establish the fact of property damage associated with defective CDW and have determined the law applicable to the liability and damages aspects of the case.  Thus, class-wide liability and damages can be established in an efficient manner and these issues predominate over any individual issues.[6]  Moreover, there are no individual issues associated with any personal injury claims as those claims are excluded from the class.

---

[6] There will be a need during claims processing for each claimant to prove up basic facts to establish property damages: (1) product identification; (2) homeownership; and (3) square footage of owned home, to recover on a remediation claim.

18

        **a.**     **Defendant Banner's Course of Conduct is a Common Liability Issue**

Here, there can be no dispute that Defendant Banner's conduct in distributing and selling defective CDW to the Florida home construction market has a common property damage impact on the class member homeowners.  Liability is commonly recognized as a predominant issue in the class setting.  *Mullen,* 186 F.3d at 626 ("the common issues in this case, especially negligence and seaworthiness, are not only significant but pivotal … If the [Defendant] prevails on these two issues, they will prevail in the case."); *Murphy,* 243 F.R.D. at 606 (Plaintiffs' property damage claims "share large areas of fact in common."); *McQuilken v. A&R Development,* 576 F.Supp. 1023, 1031 (E.D. Pa. 1983) (Involving damage to homeowners' properties caused by construction activity, defendants' conduct is viewed as a common and predominant issue supporting certification).

The issue of Banner's liability to the class is highly amenable to class treatment because the evidence of the actual defect, Banner's knowledge of it and conduct related to it, and the type of corrosion damage associated with the product will be the same for all class members.  Thus, a finding of liability for the class would allow an estimated 1000 plus claimants to proceed directly to the damages phase.  The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications.  *Murphy,* 234 F.R.D. at 605, 607 (individualized damage issues do not prevent a finding of predominance).

### b.    Determination of Class-Wide Damages is a Predominant Issue

Similarly, the plaintiffs' demonstrated ability to determine class-wide damages meets the

predominance requirement at the certification stage.  *See, e.g., Monumental Life Insurance Co. v.*

*National Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a

class-wide basis and, when sorted, are capable of determining damages for individual

policyowners; none of these variables is unique to particular Plaintiffs.  The prevalence of

variables common to the class makes damages computation 'virtually a mechanical task.'").

As the Eleventh Circuit noted in *Klay v. Humana*:

> In assessing whether to certify a class, the court's inquiry is limited
> to whether or not the proposed methods for computing damages are
> so insubstantial as to amount to no method at all . . . . Plaintiffs
> need only come forward with plausible statistical or economic
> methodologies to demonstrate impact on a class-wide basis.
> Particularly where damages can be computed according to some
> formula, statistical analysis, or other easy or essentially mechanical
> methods, the fact that damages must be calculated on an individual
> basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).[7]  As such, damages

can be proven on a class-wide basis and allocation and claims processing issues will not defeat

class certification.  *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004)

("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter

accomplished pursuant to a court-approved plan of allocation, and such individual damages

---

[7] Courts routinely have used class-wide, formula-based techniques to calculate individual damages in various types
of class actions.  *See, e.g., Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) (approving aggregate damages
judgment), *aff'd*, 444 U.S. 472 (1980); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003)
(approving of the use of objective data extracted from the Defendant's computer system and analyzed through a
"mechanical process" in a case involving charging customers for incoming cellular telephone calls.); *see also* 3
Newberg on Class Actions § 10:8.

allocation issues are insufficient to defeat class certification."); *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. at 525 (S.D.N.Y. 1996) ("Aggregate computation of class monetary relief is lawful and proper.").

Even if some individual damages issues may exist, it is well settled that their presence does not defeat predominance. *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004) ("[N]umerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."); *Murphy,* 234 F.R.D. at 605, 607 (same).  Any individualized damage issues, for example, determining individual personal property damage, can be dealt with "pursuant to a court-approved plan of allocation," or mini-trials. *Terazosin,* 220 F.R.D. at 699; *see also Turner v. Murphy,* No. 05-4206, Order and Reasons (March 3, 2006), slip op. at 3 (Comp. Ex. 15) ("Fifth Circuit has approved of bifurcated trial plans in which common issues of liability, negligence, and certain defenses are tried commonly, with causation actual damages, and … comparative fault tried individually.") (Citations omitted).

          **i.**    **Formulaic Method to Determine Class-Wide Property Damages**

Alternatively, damages can be formulaic in nature and amenable to class treatment. Ronald Wright, Plaintiffs' expert, is a Civil Engineer who specializes in the assessment of repair and remediation for home construction.  Mr. Wright has inspected many CDW homes, and developed a methodology to estimate damages for the remediation of CDW homes and the replacement of damaged components including appliances, flooring, cabinetry and other items. Wright Dec. at ¶¶5-6.  He has considered national databases that estimate such costs including

RS Means.  More specifically, he has reviewed the real world repair bids of local construction companies to perform the necessary remediation in several homes in different states.  *Id.*  For example, based on his work in Virginia and available Virginia data, Mr. Wright offered the expert opinion in the *Germano* proceeding that the cost of repair for a fair cross-section of Virginia homes would be on average $86 per square foot, which was accepted by the Court. *Germano* FOFCOL at 57-60.  Based on similar data for Florida, available statistical databases in the housing and construction industry, and Florida CDW distribution data Mr. Wright will be able to estimate: (1) the number of homes in Florida likely to contain defective CDW distributed by Banner requiring remediation, and (2) the total square footage of these homes.  With these estimates, combined with the average price of repair per square foot in the state; Dr. Wright can then determine class-wide remediation damages.  Wright Dec. at ¶¶5-7; *see also Germano* FOFCOL at 57-59, 64-69.

Additional forms of property damage, including alternative living costs, property diminution, loss of use and enjoyment, and personal property losses are also amenable to determination on a class-wide basis.  For example, in the case of alternative living costs, the damage amount established in *Hernandez* was $2376.81/month.  *Hernandez* FOFCOL at 42. Real property diminution also can be determined in a formulaic manner.  *Murphy,* 234 F.R.D. at 607 and n.5 (Court notes that real estate expert "opined that the properties at issue would be properly subject to mass appraisal to determine their present value."); *Sher v. Raytheon Co.,*261 F.R.D. 651, 2009 WL 31931 52, *19 (M.D. Fla. 2009) (in environmental pollution toxic tort case, court found at class certification that plaintiffs provided a "viable model for calculating

22

property damages on a class-wide basis").

Loss of use and enjoyment and personal property damages could also be assessed for the class based on a survey of representative homeowners. *In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1019-20 (5th Cir. 1997) (permitting the use of statistics to draw inferences about the claims of 3,000 plaintiffs and intervenors who claimed wrongful death, personal injury, and property contamination from defendant's storage of hazardous substances which had leaked from crude oil waste pits and migrated into the plaintiffs' drinking water supply.); *see Watson v. Shell Oil Co.,* 979 F.2d 1014, 1018 (5th Cir. 1992) (approving trial court's proposal to determine punitive damages in a mass-tort class-action suit by fully trying 20 sample claims on *compensatory* damages to the jury and then asking the jury to "establish the ratio of punitive damages to compensatory damages for each class member"); *Hilao v. Estate of Marcos,* 103 F.3d 767, 782087 (9th Cir. 1996). The Ninth Circuit Court of Appeals allowed the use of aggregation and statistical analysis to determine compensatory damages where a statistics expert relied on a random sample of claims to calculate damages for the entire class.); *see also,* Newberg on Class Actions at §10:3 (4th ed.) (citing *Long v. Trans World Airlines, Inc.,* 761 F.Supp. 1320, 1324-1326 (N.D. Ill. 1991) (approving use of a sample of class members' damages in labor dispute as a basis to determine class-wide damages.).

Thus, class-wide property damages can be established by a formulaic method or by a combination of a formulaic method and a claims proceeding or mini-trials. This meets the Rule 23(b)(3) predominance requirement. *Monumental,* 365 F.3d at 419. In addition, the FOFCOL from *Germano* and *Hernandez,* as well as the jury verdict in *Seifart,* demonstrate benchmark

23

damage awards for the cost of remediation, the alternative living costs, property diminution, loss

of use and enjoyment and private property damage, that may be used by the court as standards of

comparison to review the reasonableness of an expert opinion on these damages or an award of

class-wide property damages.

**c.    All of the Class Claims are Governed by Florida Substantive Law**

Variation of state law and choice of law are also significant concerns for manageability.

*Mullen,* 186 F.3d at 627.  Here, these matters are easily managed because there is only one state

law to consider, Florida.  *See Manual for Complex Litigation,* Fourth § 22.634, p. 634; §§22.753-

54, p. 652.

Federal courts sitting in diversity must apply the choice of law rules of the forum state.

*Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941);

*In re Vioxx Products Liability Litigation*, 239 F.R.D. 450, 454 (E.D. La. 2006).  This case,

having been filed initially in Florida, requires the application of Florida choice of law rules.  *In re*

*Vioxx Prods. Liab. Litig.,* 478 F. Supp. 2d 897, 903 (E.D. La. 2007)("[T]he MDL court must

apply the law of the transferor forum, that is, the law of the state in which the action was filed,

including the transferor forum's choice of law rules.").[8]  Florida choice of law rules require the

court to determine what state has the "most significant relationship" to, and interest in, the claim

and to determine whose policies would be most seriously impaired if its law were not applied to

---

[8] The *Vickers* case was filed in Florida and then transferred to the MDL and the *Payton* case was filed in Louisiana. To the extent Louisiana choice of rules apply, Louisiana also applies the "most significant relationship" test, La. Civ. Code Ann. Art. 3515, 3539, and 3542; *Commerical Union Insurance Group v. The Upjohn Company,* 409 F.Supp 453 (W.D. La. 1976); *Skansi Marine, LLC v. Ameron Intern. Corp.,* 2003 WL 22852221 (E.D. La. 2003). Thus, the choice of law determination would be the same under either state's choice of law rules.

24

that issue. *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla. 1980); *Harris v. Berkowitz,* 433 So.2d 613, 615 (Fla. App. 1983) (holding when all parties are permanent residents of Florida, it is impossible to ascertain any policy Maine may have in limiting the parties' rights which would outweigh Florida's interest).

Based on the above-referenced law, it is clear that substantive Florida law would apply to a Florida resident's property damage claim for a residence that is located in Florida. For the Florida class representatives and the Florida class, Florida is the state where the injury occurred and where the damaged home is located. Florida's substantive law makes clear that Florida court's policy is to protect its own residents and its own properties from injury and to provide fair compensation to its residents when such injuries occur. *See Bishop,* 389 So.2d at 1001 (1980) (explaining that "the state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law ... [o]ther factors may combine to outweigh the place of injury as a controlling consideration"); *Harris* 433 So. 2d at 615. Thus, the substantive law of Florida would apply to the class claim.

As stated above, the factual determination of class-wide liability and property damages are the predominant common issues to be resolved in this case. These types of issue are recognized as pivotal class issues. *Mullen,* 186 F.3d at 626; *Monumental,* 365 F.3d at 419; *Murphy,* 234 F.R.D. at 606; *McQuilken,* 576 F.Supp. at 1031. The types of issues that are often seen as obstacles to class certification: those that require extensive individualized proof like where class members seeking personal injury damages are exposed to different products, at different times and suffer different injuries; are not present in this case. *Mullen,* 186 F.3d at 626;

25

*Turner v. Murphy Oil,* No. 05-4206, Order and Reasons, slip op at 13-14 (January 30, 2006)

(Comp. Ex. 16).  Similarly, complex choice of law issues are not involved here.  *Mullen,* 186

F.3d at 627.  In contrast to those cases that have not allowed certification, this case presents class

claims where each class member has suffered the same type of injury, during the same time

period, caused by the conduct of the same defendant, a paradigm for class certification:

> In the present case the plaintiffs are an extremely compact and
> discrete geographical group, readily identifiable.  There are no
> choice of law problems.  All claim to have suffered the same type
> of harm, during the same time period, caused by the same conduct
> of the defendant.  This case is thus similar to those cited above in
> which class certification has been granted.  It also differs from
> those "mass tort" cases in which certification has been denied
> because the harm to various class members took place at different
> times and under different circumstances, or because individual
> defenses or choice of law problems existed.

*McQuilken,* 576 F.Supp. at 1031; *see also Mullen,* 186 F.3d at 626-627.

In sum, the substantive property damage law applicable to CDW claims in Florida has

been established.  *Seifart* Orders and Verdict Sheet (Comp. Exs. 1-4).  There is no variation in

the law to be applied to members of each class.  Class-wide liability and class-wide damages can

be established on a common basis.  The trial of this case on these predominant issues is

manageable as demonstrated by the Proposed Trial Plan (filed simultaneously herewith).  The

requirements of Rule 23(b)(3) predominance are readily established.

### 6.    Superiority – Rule 23(b)(3)

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the

class action format is superior to other methods of adjudication:  (1) the class members' interest

in individually controlling their separate actions, (2) the extent and nature of existing litigation by

26

class members concerning the same claims, (3) the desirability of concentrating the litigation in the particular form, and, (4) the likely difficulties in class management.  Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).[9]

A class proceeding is the superior method to adjudicate a major subset of claims in the MDL, the property damage claims against Banner in Florida.  The exhaustive record of the relevant factual evidence already reviewed by and ruled on by this Court and the *Seifart* Court greatly enhances the manageability of this matter.  A class proceeding will facilitate an expeditious and streamlined resolution for the largest subset of affected homeowners and potentially establish a road map to resolve the remaining claims in the MDL.  This streamlined proceeding is desirable and necessary because the property damage caused by CDW obtained through Banner has forced many homeowners to abandon their homes and has placed several homeowners under financial pressure including the need to pay two mortgages, loss of credit rating, and foreclosure.  Further, there are no unmanageable obstacles in the trial of these claims. *See* Proposed Trial Plan.  For all the reasons stated above, as well as the procedural advantages of avoiding duplicate proceedings on identical issues, class adjudication is the superior method to resolve the property damage claims of Florida homeowners against Banner.

## IV. CONCLUSION

In sum, the Plaintiffs can readily establish that the proposed class meets the Rule 23 requirements of numerosity, commonality, typicality, adequacy, predominance and superiority. Plaintiffs respectfully request that the class described herein be certified.

---

[9] This Court has recognized that these defective drywall claims against Knauf are meritorious. *Hernandez* FOFCOL at 44-47.

27

## PROPOSED CLASS COUNSEL

Dated: September 20, 2010                    Respectfully submitted,


/s/ Arnold Levin
Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*


Ervin A. Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com


Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com


28

## PROPOSED OF COUNSEL TO CLASS,
## PLAINTIFFS' STEERING COMMITTEE

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR,
LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs Liaison Counsel*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vRoberts@podhurst.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

29

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Ervin A. Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

31