## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047
SECTION: L

THIS DOCUMENT RELATES TO

JUDGE FALLON
MAG. JUDGE WILKINSON

Payton et al v. Knauf Gips KG et al
EDLA 09-07628

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF A FLORIDA HOMEOWNER CLASS AND A LOUISIANA HOMEOWNER CLASS AND PROPERTY DAMAGE CLAIMS AGAINST KNAUF**

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

    A.   Numerosity ............................................................................................................. 4

    B.   Commonality .......................................................................................................... 5

    C.   Typicality ............................................................................................................... 5

    D.   Adequacy of Representation .................................................................................. 5

    E.   Predominance ......................................................................................................... 6

    F.   Superiority .............................................................................................................. 6

II.   FACTUAL STATEMENT AND PROCEDURAL HISTORY ...................................... 7

    A.   Distribution of Knauf CDW in Florida and Louisiana ......................................... 7

    B.   General Background on CDW Damage to Homes ................................................. 9

    C.   CDW Related Damages Suffered by Mr. Nunez and Dr. Roberts ...................... 12

III.   ARGUMENT ............................................................................................................... 13

    A.   Standard of Review .............................................................................................. 13

    B.   Elements of Rule 23 ............................................................................................. 13

        1.   Numerosity – Rule 23(a)(1) .......................................................................... 13

        2.   Commonality – Rule 23(a)(2) ....................................................................... 14

            a.   Collateral Estoppel Effect of *Hernandez* Findings of Fact and Conclusions of Law .................................................................................. 15

        3.   Typicality – Rule 23(a)(3) ............................................................................. 17

        4.   Adequacy of Representation – Rule 23(a)(4) ................................................ 18

            a.   Ascertainability ...................................................................................... 19

        5.   Predominance – Rule 23(b)(3) ...................................................................... 20

            a.   Defendant Knauf's Conduct is a Common Liability Issue ..................... 21

            b.   Determination of Class-Wide Damages is a Predominant Issue ............ 22

                i.   Formulaic Method To Determine Class-Wide Property Damage ........... 24

            c.   Variation of Substantive Law Between Florida and Louisiana Does not Bar Class Certification ........................................................................ 26

                i.   Louisiana Substantive Law Applies to the Louisiana Class Claim ........ 27

i

       ii.    Florida Substantive Law Applies to the Florida Class Claim ............................. 27

    6.    Superiority – Rule 23(b)(3) ......................................................................... 30

IV.    CONCLUSION ............................................................................................... 31

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Allapattah Servs. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004)..........22

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) ................................................................................12, 17

*Bonnette v. Conoco Inc.*,
   2001-2767 (La. 1/28/03), 837 So.2d 1219 ..............................................................28

*Campbell-Clement/Schexnaydre v. Knauf Plasterboard (Tianjin) Co., Ltd., et al*,
   Case No. 09-7628 (E.D. La.) ..........................................................................3, 6, 16

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ...................................................................................20

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ............................................................................12, 13

*Commercial Union Insurance Group v. The Upjohn Company*,
   409 F.Supp. 453 (W.D. La. 1976)............................................................................26

*DeBremaecker v. Short*,
   433 F.2d 733 (5th Cir. 1970) ..................................................................................19

*Harris v. Berkowitz*,
   433 So. 2d 613 (Fla. App. 1983).......................................................................26, 27

*Hernandez v. Knauf Gips KG, et al.*,
   Case No. 09-6050 (E.D. La.) ........................................................................... passim

*Hilao v. Estate of Marcos*,
   103 F.3d 767 (9th Cir. 1996) ..................................................................................24

*In re A.H. Robins Co., Inc.*,
   880 F.2d 709 (4th Cir. 1989) ..................................................................................19

*In re Chevron U.S.A., Inc.,*
   109 F.3d 1016 (5th Cir. 1997) ............................................................24

*In re Chinese Manufactured Drywall Products Litigation, Seifart v. Knauf GIPS KG et al,*
   Case No. 09-38887 CA 01 (42) (Circuit Court of the 11th Judicial District, Miami-
   Dade County, Florida) (hereinafter "Seifart") Order .................................. passim

*In re NASDAQ Market-Makers Antitrust Litigation,*
   169 F.R.D. at 525 (S.D.N.Y. 1996) ......................................................22

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
   252 F.R.D. 83 (D. Mass 2008) .............................................................27

*In re Plunk,*
   481 F. 3d 302 (5th Cir. 2007) ..........................................................15, 16

*In re Terazosin Hydrochloride,*
   220 F.R.D. 672 (S.D. Fla. 2004) ..........................................................22

*In re Vioxx Products Liability Litigation,*
   239 F.R.D. 450 (E.D. La. 2006)...........................................................26

*James v. City of Dallas,*
   254 F.3d 551 (5th Cir. 2001) ..........................................................14, 16

*John v. Nat'l Security Fire & Cas. Co.,*
   501 F.3d 443 (5th Cir. 2007) ..............................................................19

*Johnson v. Orleans Parish School Bd.,*
   2006-1223 (La. App. 4th Cir. 1/30/08), 975 So.2d 698.........................................28

*Klaxon Co. v. Stenor Elec. Mfg. Co.,*
   313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).............................................26

*Mayer v. Three R's Inc.,*
   597 So.2d 151 (La. App. 3rd Cir. 1992), *writ denied,* 600 So.2d 680 (La. 1992) ...................28

*McQuilken v. A&R Development,*
   576 F.Supp. 1023 (E.D. Pa. 1983) ..................................................20, 27, 28

*Mims v. Stewart Title Guar. Co.,*
   590 F.3d 298 (5th Cir. 2009) ..............................................................29

*Monumental Life Insurance Co. v. National Life,*
    365 F.3d 408 (5th Cir. 2004) ....................................................................21, 25, 27

*Mullen v. Treasure Chest Casino LLC,*
    186 F.3d 620 (5th Cir. 1999) ........................................................................ passim

*Parklane Hosiery Co. v. Shore,*
    439 U.S. 322 (1979)....................................................................................15, 16

*Pederson v. La. State Univ.,*
    213 F.3d 858 (5th Cir. 2000) ...............................................................................13

*Sher v. Raytheon Co.,*
    261 F.R.D. 651, 2009 WL 31931...........................................................................24

*Simer v. Rios,*
    661 F.2d 655 (7th Cir. 1981) ...............................................................................19

*Skansi Marine, LLC v. Ameron Intern. Corp.,*
    2003 WL 22852221 (E.D. La. 2003) .....................................................................26

*Smilow v. Southwestern Bell Mobile Sys.,*
    323 F.3d 32 (1st Cir. 2003) ..................................................................................22

*Taylor v. Burton,*
    97-1348 (La. App. 3rd Cir. 3/6/98), 708 So.2d 531 ...............................................28

*Torch Liquidating Trust v. Stockstill,*
    561 F.3d 377 (5th Cir. 2009) ...............................................................................26

*Turner v. Murphy,*
    No. 05-4206, Order ....................................................................................22, 27

*Turner v. Murphy Oil USA Inc.,*
    234 F.R.D. 597 (E.D. La. 2006)........................................................................ passim

*U.S. v. Davenport,*
    484 F. 3d 321 (5th Cir. 2007) ...............................................................................15

*Van Gemert v. Boeing Co.,*
    553 F.2d 812 (2d Cir. 1977), *aff'd*, 444 U.S. 472 (1980) ..........................................22

*Vizena v. Union Pac. R.R. Co.,*
    360 F.3d 496 (5th Cir. 2004) ...........................................................................12, 13

*Waste Mgmt. Holdings v. Mowbray,*
   208 F.3d 288 (1st Cir. 2000) ................................................................27

*Watson v. Shell Oil Co.,*
   979 F.2d 1014 (5th Cir. 1992) ............................................................24

**STATUTES**

CIV. CODE ART. 2524.............................................................................28

La. Civ. Code Ann. Art. 3515, 3539, and 3542 .....................................26

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(1-4) ........................................................................4

Fed. R. Civ. P. 23(b)(3)....................................................................passim

Fed. R. Civ. P. 23(g) ..............................................................................17

Fed. R. Civ. P. 30(b)(6)...........................................................................8

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO | JUDGE FALLON MAG. JUDGE WILKINSON |
| Payton et al v. Knauf Gips KG et al EDLA 09-07628 | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF A FLORIDA HOMEOWNER CLASS AND A LOUISIANA HOMEOWNER CLASS AND PROPERTY DAMAGE CLAIMS AGAINST KNAUF

## I.     INTRODUCTION

This matter involves the claims of thousands of homeowners who have suffered property

damages from the use of Knauf[1] drywall in their homes.  At present, the Plaintiffs' Steering

Committee (PSC) represents Knauf drywall homeowners in several states; but the overwhelming

majority of the claims have been brought on behalf of homeowners in two states: Florida and

Louisiana.  Given the present state of the *Payton* Omnibus action against Knauf [2], proposed class

counsel and the PSC submit that the MDL claimants will best be served by a class action

proceeding on behalf of a "Florida Knauf homeowner Class" and a "Louisiana Knauf homeowner

Class," each seeking an award of class-wide property damages for all similarly situated residents

in their states who own property containing Knauf defective drywall.

---

[1] Knauf consists of Knauf GIPS KG, Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu), Co., Ltd., and Knauf Plasterboard (Dongguan) Co., Ltd. (collectively "Knauf").
[2] *Payton v. Knauf GFPS KG et al.,* Plaintiffs Omnibus Class Action Complaint (I) (*Payton* Docket #1) and

The Florida class representative, Dr. Steven Roberts, who owns a home at 10013 Cobberstone Creek Drive, Boynton Beach, FL 33472, and the Louisiana class representative, Mr. Freddie Nunez, who owns a home at 123 Dominion Blvd., Madisonville, LA 70447, hereby move for class certification on behalf of themselves and all similarly situated persons pursuant to Fed. R. Civ. P. 23(b)(3).  Plaintiffs seek certification of a Florida Class and a Louisiana Class of all owners of residential real properties containing Knauf Chinese drywall on their claims for remediation and property damages.[3]  The class definitions are:

> *Florida Class*: "All owners of residential real properties in the State of Florida containing Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by Knauf, from January 1, 2005 to December 31, 2008, who have not released or assigned their property damage claims to a third party."

> *Louisiana Class*: "All owners of residential real properties in the State of Louisiana containing Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by Knauf, from January 1, 2005 to December 31, 2008, who have not released or assigned their property damage claims to a third party."

The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications.

These claims are ripe for class certification for several reasons.

- First, this Court has already overseen extensive Chinese manufactured drywall ("CDW") related discovery, expert testimony, and issued judicial Findings of Fact

---

Intervention thereto (MDL Docket #4346) (hereinafter "*Payton Complaint*").

[3] The proposed classes do not seek to certify personal injury (or medical monitoring) claims in this motion. To the

2

and Conclusions of Law ("FOFCOL");[4] and the state court in Florida has already
presided over a jury trial with a verdict for damages caused by the Knauf Chinese
drywall product.[5]

- Second, the law as it relates to CDW property damage claims has been established
  for Louisiana in the *Hernandez* and *Campbell/Clement* proceedings before this
  Court, and for Florida in the *Seifart* trial in Miami-Dade County Court.

- Third, this class action is limited to property damage and does not include
  personal injury.

- Fourth, the proposed class representatives from Florida and Louisiana have
  thoroughly completed their Plaintiff Profile Forms ("PPF's") and provided their
  product identification information to Knauf.

Therefore, the pivotal issues underlying the Florida and Louisiana homeowners' claims
against Knauf have been thoroughly litigated; providing sufficient maturity to this mass tort to
facilitate a determination of class-wide property damages. Since Florida and Louisiana

---

extent any class member seeks to bring those claims, they will be brought on an individual basis.

[4] *See In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, *Hernandez v. Knauf Gips KG, et al.*, Case No. 09-6050 (hereinafter "*Hernandez*") FOFCOL (Docket #2713); *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, *Campbell-Clement/Schexnaydre v. Knauf Plasterboard (Tianjin) Co., Ltd., et al*, Case No. 09-7628 (E.D. La.) (hereinafter "*Campbell/Clement*"); *see also Germano et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 2:09-cv-6687 (hereinafter "*Germano*") FOFCOL (Docket #2380).

[5] *See In re Chinese Manufactured Drywall Products Litigation, Seifart v. Knauf GIPS KG et al*, Case No. 09-38887 CA 01 (42) (Circuit Court of the 11th Judicial District, Miami-Dade County, Florida) (hereinafter "Seifart") Order Denying Defendant Banner Supply Co.'s Motion for Judgment in Accordance with Prior Motion for Directed Verdict or, in the Alternative, for New Trial (July 26, 2010) (*See* Compendium of Exhibits in Support of Plaintiffs' Motion for Certification of a Florida Homeowner Class and a Louisiana Homeowner Class Property Damage Claims Against Knauf ("Comp.") Exhibit ("Ex.") 1); Order Denying Defendants Certain Homes and Mandy Drywall Motions to Dismiss Plaintiffs' Second Amended Complaint (March 30, 2010) (Comp. Ex. 2); Order Denying Defendant Banner Supply Co. and all Similarly Situated Defendants' Motions to Stay, or Alternatively, Motions to Dismiss Plaintiffs' Amended Complaints and Strike Demands for Attorneys' Fees (December 18, 2009) (Comp. Ex.

homeowners with Knauf drywall make up the overwhelming majority of the MDL claims; a class

action, brought under Fed. R. Civ. P. 23(b)(3), can potentially resolve the single largest subset of

claims in the MDL and establish a roadmap for the resolution of remaining claims.  The

underlying complaint in *Payton* (*Payton* Docket #1) alleges a national Knauf homeowner class

and several subclasses.  Here, Plaintiffs seek to certify a subset of those claims - the property

damage claims of Florida and Louisiana homeowners against Knauf - and reserve the right to

move for certification for other claims and other state classes once additional discovery is

completed.

The Florida and Louisiana class claims against Knauf readily meet the Fed. R. Civ. P.

23(a)(1-4) requirements of numerosity, commonality, typicality, and adequacy, as well as the

predominance and superiority requirements of 23(b)(3).

### A.    Numerosity

As to numerosity, available sales and distributors records and the *Payton* Omnibus

Complaint (*Payton* Docket #1) and the Interventions thereto, (Docket #4346), indicate that the

number of Florida and Louisiana homeowners who own homes containing Knauf drywall (homes

that are either all Knauf drywall or "mixed" Knauf and other drywall), and who could qualify as

members of one of the classes is estimated to be at least 2000.  Other documentation of the

distribution of Knauf CDW in Florida and Louisiana indicate that size of the classes is likely to

greatly exceed 2000.  This evidence establishes numerosity.

---

3); Verdict Form (June 18, 2010) (Comp. Ex. 4).

**B.    Commonality**

Commonality is also easily established.  As a result of this Court having held the evidentiary hearing to determine the scope of remediation, cost of remediation and other property damages caused by Knauf drywall in *Hernandez*, the Court issued FOFCOL on April 27, 2010. (Docket # 2713).  These FOFCOL resolved a multitude of factual and legal issues for the *Hernandez* Plaintiffs' claims against Knauf (such as the right to recover remediation damages and scope and cost of remediation).  *Hernandez* FOFCOL at 20-47.  With the benefit of the availability of these Findings from *Hernandez* and the pretrial and trial rulings from *Seifart,* Plaintiffs will be able to readily demonstrate that the relevant factual and legal property damage determinations already made, as well as the need to quantify damages for each class, are common issues for the Florida Class and the Louisiana Class.  Thus, the commonality requirement will be satisfied for each class.

**C.    Typicality**

The claims of the Florida and Louisiana class representatives are also typical of each class.  Each class representative, like each class member, is a homeowner seeking to recover damages caused by defective Knauf drywall utilizing the same causes of action *under the law of his state*.  The class representatives possess the same interest and have suffered the same injury as class members.

**D.    Adequacy of Representation**

Similarly, the class representatives will fairly and adequately protect the interests of the class.  The representatives have already undergone a screening inspection of their home to verify

5

the presence of defective Knauf drywall and corrosion damage, and have completed the court-mandated PPF. In addition, proposed class counsel for the Florida class (Arnold Levin of Levin, Fishbein, Sedran & Berman; Ervin Gonzalez, of Colson Hicks Eidson; and Richard Lewis, of Hausfeld LLP), and the Louisiana Class (Russ Herman, of Herman, Herman, Katz & Cotlar, LLP; and Gerald Meunier, of Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC) are experienced and competent counsel, as amply demonstrated by their participation in the *Germano, Hernandez,* and *Campbell/Clement* proceedings before this Court and the *Seifart* trial in Florida state court.

### E.     Predominance

As to predominance, the primary remaining unresolved issue that predominates over any individual issues that may be present in this case is the issue of the amount of class-wide damages. Plaintiffs will establish herein that both class-wide liability and damages can be determined. Knauf's course of conduct which caused the property damages to the Plaintiffs and the classes impacted all members of the classes in a similar way. Plaintiffs and members of the classes suffered the same type of property damages. There will be no difficulty in managing multiple states' laws because the law of only two states (Florida and Louisiana) is involved and all class members' claims will be governed by their home state law. Plaintiffs have submitted a trial plan for the determination of class-wide damages. (*See* "Proposed Trial Plan" filed simultaneously herewith).

### F.     Superiority

Plaintiffs will show that the class action mechanism is a superior mechanism to resolve

6

these claims compared to individual proceedings.  For each class, the applicable law and the type

of recoverable damages are uniform across class members.  It would be grossly inefficient and a

waste of judicial economcy for different courts to resolve these identical issues on an individual

basis, and it would unnecessarily create a risk of inconsistent adjudications.  In sum, if the classes

are certified, the Court can resolve the issues of class-wide liability and the amount of class-wide

damages.  These are common and predominant issues that are thoroughly within the expertise

and competence of the MDL Court, particularly after the Court has presided as the finder of fact

in the *Hernandez* remediation and property damages trial and presided over other CDW trials.

## II.   FACTUAL STATEMENT AND PROCEDURAL HISTORY

### A.   Distribution of Knauf CDW in Florida and Louisiana

The present matter commenced when Plaintiffs, on behalf of themselves and all other

similarly situated owners brought a class action against Defendant Knauf and others on

September 1, 2009.  Service of the Knauf entities was accomplished in July of 2010.

The *Payton* Complaint asserts claims against Knauf for negligence, negligence per se,

strict liability, breach of express and/or implied warranties, breach of contract, private nuisance,

unjust enrichment, violation of the Consumer Protection Acts, redhibition, and for equitable

injunctive relief and medical monitoring.

Knauf produced and sold defective drywall that was purchased and built into homes in

Florida and Louisiana from at least 2005 to 2008.  According to the Knauf Defendant

Manufacturers' Profile Forms, Knauf exported 5,286,015 square meters of Knauf KPT CDW to

the United States in the time period 2005-2006.  The overwhelming majority of this product was

7

delivered to Miami and New Orleans. Knauf (KPT) Defendant Manufacturer's Profile Form

(Comp. Ex. 5). Knauf Wuhu also exported 1,214,697 square meters of CDW to the U.S. in

2006, all of which was delivered to Canaveral or New Orleans. Knauf (Wuhu) Defendant

Manufacturer's Profile Form (Comp. Ex. 5). Furthermore, the records of Florida and Louisiana

drywall distributors indicate they distributed significant amounts of Knauf drywall in those

states. Confidential Settlement Agreement and Release, (Comp. Ex. 6); Summary of Banner

Supply Co. CDW Purchases for Sale Based on Distributor Profile Forms and Banner Supply Co.

Distributor Profile Forms (Miami, Pompano, Fort Meyers, Tampa, St. Luicie) (Comp. Ex. 7);

Summary of La Suprema Invoices to Banner Supply Co., *Seifart* Ex. 349, (Comp. Ex. 8); Fed. R.

Civ. P. 30(b)(6) Deposition of La Suprema, Salomon H. Adabi (October 9, 2009) at 104(22) –

105(13), 108(20) – 109(17), 199(19) – 201(2) (Comp. Ex. 9); Revised Exporter, Importer, or

Broker Defendant Profile Form – La Suprema Enterprise Inc. and La Suprema Trading Inc.

(October 14, 2009) (Comp. Ex. 10); Knauf GIPS KG's Supplemental Response to Plaintiffs'

First Request for Production of Documents Concerning Jurisdictional Issues (Comp. Ex. 11);

Banner Invoice (Roberts), Banner MDL-00007925 (Comp. Ex. 12); Banner Supply Sales

Records (Comp. Ex. 13); Interior Exterior Distributor Profile Form (September 9, 2009) (Comp.

Ex. 14); Declaration of Ronald E. Wright, P.E. at ¶3 (filed simultaneously herewith). Knauf

failed to adequately test and monitor its production process to prevent or correct its defective

product. Knauf failed to warn the Plaintiffs and members of the classes and withheld

information from the class members that would have enabled these individuals to prevent or

mitigate damage from the defective drywall. Further, Knauf assisted others and provided

8

incentives for others to join them in the withholding of information regarding the defect.[6]

### B.      General Background on CDW Damage to Homes

The Court's Findings of Fact and Conclusions of Law in *Hernandez* establish and set forth the majority of the facts (supported by record evidence) relevant to this class motion including facts relevant to Knauf's conduct, the defect in its drywall product, and the damage it causes. (Docket #2713). This Factual Statement incorporates the *Hernandez* FOFCOL by reference and will only highlight those facts most relevant to class certification.

From 2004 through 2006, the housing boom and rebuilding efforts necessitated by various hurricanes lead to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast states including Virginia. After the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses; the corrosion and blackening of metal wiring, surfaces, and objects; and the failure of appliances and electrical devices in their homes. Many of these homeowners also began to complain of experiencing symptoms of irritant effects such as respiratory irritation, headaches and fatigue. *Hernandez* FOFCOL at 3-19.

The Consumer Product Safety Commission ("CPSC") and this Court established that CDW, including Knauf drywall, releases reduced sulfur gases. *Hernandez* FOFCOL at 15-21. The three main gases released from Knauf CDW are hydrogen sulfide ($H_2S$), carbonyl sulfide (COS), and carbon disulfide ($CS_2$). *Id.* The CPSC and plaintiffs' experts have detected sulfur

---

[6] Confidential Settlement Agreement (Comp. Ex. 6) at ¶ 7.

gas emissions by conducting laboratory tests on samples of this drywall. *Id.* These emissions are often associated with strong odors. *Id.* The fact that Knauf CDW emits sulfur gases has been reported by the CPSC, the Florida Department of Health, and other investigatory agencies and firms. *Id.* The sulfur gases released by Knauf drywall cause respiratory, eye, throat and skin irritation,[7] and cause offending odors in homes, making them hard if not impossible to live in, and are corrosive to metals, particularly copper and silver. *Id* at 8-19.

The corrosion of metals, particularly copper and silver, caused by the sulfur gases emitted by Knauf drywall leads to premature failure of electrical and mechanical devices. *Id.* at 15-31. Laboratory analysis of the copper and silver components from the homes identified the sulfur induced corrosion as the cause of HVAC coil failure and the cause of the severe deposits at the operative connections in the appliances and in consumer electronics. *Id. at* 15-31. Mechanical, electrical, and electronic failures have occurred prematurely due to the severe industrial corrosive environments in these Knauf drywall homes. *Id. at* 15-31. Evaluation of comparable HVAC systems, appliances, and electronics in *control* homes (e.g., similar homes without Knauf drywall or other defective CDW) do not show premature failures of HVAC systems, appliances, and electronics, and the wires do not have corrosion product thicknesses that would predict premature failures based on corrosivity standards. *Id.* at 15-31. The corrosion on metals caused by the sulfur gases emitted by Knauf drywall also poses a fire risk. *Id.* at 25-26. The level of corrosive sulfur gases emitted by the drywall in the class representatives' homes exceed the safe level established by recognized standards, peer reviewed literature, and expert opinions; and caused a

---

[7] While personal injury claims are not a part of this class action, the reported symptoms are relevant in so far as they establish that the CDW is defective and must be replaced, caused class-wide effects, and that residents experienced

corrosive environment in their homes that has a significant impact on the exposed property. *Id.* at 15-31.

The scientific evidence has demonstrated that corrosion has damaged many components in the home. *Id.* at 15-33. The Court-ordered Crawford inspections also confirmed widespread corrosion damage. Wright Dec. at ¶3. Consequently, in these homes *all* drywall needs to be removed and replaced. Removal of all drywall in a home that contains only Knauf drywall as well as a "mixed" home is efficient and cost effective. All electrical wires also need to be replaced because the insulation jackets on electrical wires do not adequately protect them from corrosive attack. *Id.* at 21-33. It is not feasible to clean the wires of corrosion product to render them free of risk of future failure. *Id.* at 25. In addition, the following items will also have to be replaced: copper pipes, HVAC units, certain electrical devices and appliances, carpet, and vinyl flooring, cabinets, countertops, trim, crown molding, baseboards, bathroom fixtures and insulation. *Id.* at 29-35; Confidential Agreement (Comp. Ex. 6).

In sum, the evidence supports the conclusion that the appropriate remediation for homes containing Knauf drywall includes the removal of all drywall, all electrical wiring, the entire HVAC system, and many other items such as appliances, carpet, cabinetry, trim work and flooring. *Id.* at 27-35. The scope of this remediation is supported by both the scientific evidence and the evidence of pragmatic concerns relevant to efficient remediation. *Id. at* 27-36. As part of the remediation, homes will need to be cleaned with a HEPA vacuum, wet-wiped or power-washed, and allowed to air-out after remediation. After remediation, an independent, qualified

---

loss of use and enjoyment and dislocation expenses due to the CDW.

engineering company should inspect and certify that the homes are safe for occupation. *Id.* at 34. This remediation scope of work is consistent with Chinese drywall remediation being performed by national homebuilders and recommended by the CPSC. *Id.* at 34-35; *Germano* FOFCOL at 54-55.

The evidence reviewed by this Court indicates that the removal of all drywall in those homes in which there is a substantial mixture, as opposed to selective removal of CDW on a board-by-board basis is the better and more realistic approach. This is necessary in order to remove and replace wires, pipes, and insulation, and to adequately clean the home. Furthermore, the evidence indicates that it is virtually impossible to detect, in a nondestructive manner with reasonable accuracy, which is and which is not CDW. *Hernandez* FOFCOL at 32. To accomplish this type of remediation, homeowners will be out of their home for 4-6 months during remediation. *Id. at* 41; Seifart Verdict Form (Comp. Ex. 4).

### C.     CDW Related Damages Suffered by Mr. Nunez and Dr. Roberts

The need for this sort of repair and remediation is fully applicable to the class representatives, Mr. Nunez and Dr. Roberts, and absent class members. Wright Dec. at ¶¶5-7. Mr. Nunez and Dr. Roberts have subjected their homes to a screening inspection which determined product identification of Knauf drywall and corrosion of metal surfaces in the home, characteristic of CDW. Wright Dec. at ¶¶3-5. In addition, each of the class representatives has completed the PPF, as required by court order. Declaration of Arnold Levin ("Levin Dec.") (filed simultaneously herewith) at ¶¶2-3. Each of the class representatives has suffered property damage caused by the defective Knauf drywall. Nunez PPF, (Comp. Ex. 16), Roberts PPF,

12

(Comp. Ex. 17). Damages suffered by the class representatives and class members include the cost of the needed remediation, alternate living costs, property diminution, loss of use and enjoyment damages, and personal property damages.[8]

## III.  ARGUMENT

### A.  Standard of Review

The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502-03 (5th Cir. 2004). The class certification decision should not reach the merits of the Plaintiffs' claims. *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 724, (5th Cir. 2007) (*quoting Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996)). However, in some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Id.* The district court must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Vizena,* F.3d at 503.

### B.  Elements of Rule 23

#### 1.  Numerosity – Rule 23(a)(1)

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purposed class members." *Pederson v.*

---

[8] *See Payton* Complaint *infra* at n. 2.

13

*La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000). "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir. 1999).

Analysis of available records, including the *Payton* Omnibus Complaint and Intervention, indicates the best estimate of the number of Florida and Louisiana homeowners with Knauf drywall who would qualify as a class member is at least 2000. Levin Dec. at ¶5. According to Knauf it exported over 6 million square meters of CDW to Florida and Louisiana in the 2005-2006 timeframe. *See* Comp. Ex. 5. Furthermore, the records of Florida Distributors Banner Supply and La Suprema and a Louisiana Distributor Interior Exterior indicate widespread Knauf sales in these two states. *See* Comp. Exs. 5-15. Therefore, the number of homeowners with Knauf drywall in Florida and Louisiana is likely to exceed 2000. The class representatives and absent members of the classes all seek remediation and property damages for their homes as the primary form of relief in their claims. Joinder of this many class members is impracticable and would lead to a squandering of judicial economy and the resources of the parties. *Turner v. Murphy Oil USA Inc.,* 234 F.R.D. 597, 604 (E.D. La. 2006). Thus, the proposed classes meet the numerosity requirement.

### 2.  Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that there be issues of law or fact common to the class. The commonality requirement is satisfied if resolution of at least one issue will affect all or a significant number of class members. *James v. City of Dallas,* 254 F.3d 551, 570 (5th Cir.

14

2001); *Mullen,* 186 F.3d at 620, 625. There is a low threshold for commonality, and the fact that some class members have different claims or require individualized analysis does not defeat commonality. *James,* 254 F.3d at 570.

  The proposed class representatives and the proposed class have numerous factual and legal issues in common, including but not limited to:

- whether CDW is defective and needs to be replaced;
- whether additional items in the home need to be repaired or replaced;
- the determination of Knauf's liability as the manufacturer or seller, of CDW;
- the determination of the fact of damages to the class representatives and classes; and
- the availability and amount of class-wide damages.

  Thus, the commonality requirement is also satisfied.

### a.   Collateral Estoppel Effect of *Hernandez* Findings of Fact and Conclusions of Law

  The Declaration of Ronald Wright, P.E. amply demonstrates that the method of determining class-wide property damages is common to the class representatives and absent class members. Wright Dec. at ¶¶5-6. However in this case, under the doctrine of collateral estoppel, the Court may also rely on the extensive findings already made as to the facts relevant to the scope and cost of remediation in the *Hernandez* home which contained defective Knauf drywall. The Supreme Court has approved the use of offensive, non-mutual collateral estoppel under certain circumstances.

  Generally stated, the doctrine of collateral estoppel … bars a party

> from relitigating in a second proceeding an issue of fact or law that
> was litigated and actually decided in a prior proceeding, if that
> party had a full and fair opportunity to litigate the issue in the prior
> proceeding and the decision of the issue was necessary to support a
> valid and final judgment on the merits.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979); *see also U.S. v. Davenport*, 484 F.

3d 321, 326 (5th Cir. 2007).  The *Parklane* court noted that certain circumstances might exist in

a case which might justify a court's refusal to apply collateral estoppel, including where: (a) a

Defendant has little incentive to defend vigorously, (b) the second action affords the Defendant

procedural opportunities not available in the first action that could cause a different result, and

(c) "if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more

previous judgments in favor of the Defendant.  *Parklane*, 439 U.S. at 330-31; *In re Plunk*, 481 F.

3d 302, 308 (5th Cir. 2007).

     Under the *Parklane* standards, it is appropriate to give the *Hernandez* FOFCOL a

preclusive effect in this class proceeding.  The Defendant has had a full opportunity to litigate the

issues addressed in the *Hernandez* FOFCOL.[9]  It is also clear that the Court's *Hernandez*

Findings on the scope and cost of remediation and property damages were "necessary to support

a valid and final judgment on the merits." *Parklane*, 439 U.S. at 330-31.  Furthermore, none of

the *Parklane* factors which would justify a court's refusal to apply collateral estoppel are present

on this record.  Therefore under *Parklane* and *Plunk*, Plaintiffs request that the Court find that the

*Hernandez* Findings of Fact and Conclusions of Law (Docket #2713) are entitled to be given a

---

[9] In addition to the *Hernandez* FOFCOL, it is noteworthy that in the *Campbell/Clement* case and the *Germano* case, where Knauf intervened, Knauf vigorously contested Plaintiffs' evidence on the scope of remediation and cost of remediation through the process of filing expert reports, cross-examining Plaintiffs' experts, and filing *Daubert* challenges against Plaintiffs' remediation and damages experts.  Knauf's challenges to Plaintiffs' experts were

preclusive effect in this class proceeding.

In sum, the commonality of legal and factual determinations including a determination of class-wide liability and property damages is amply demonstrated both by the Declaration of Ronald Wright, P.E., and the FOFCOL from the *Hernandez* proceeding.

### 3.  Typicality – Rule 23(a)(3).

Rule 23(a)(3) requires that the claims of the class representatives are typical of the class's claims or defenses.  Again, the threshold for typicality is low:  class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen,* 186 F.3d at 625.  Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics – a similar course of conduct, or the same legal theory. *James,* 254 F.3d at 571 (*quoting* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

The property damage claims of the class representatives are the same as those of the absent class members.  The determination of these damages depends on the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring in the class members' homes, the need for remediation, and the square footage costs of accomplishing the remediation. *Murphy,* 234 F.R.D. at 605 (theories of liability of property owners damaged by oil are alike, and support a finding of typicality); *see* Wright Dec. at ¶¶5-7.  Further, the establishment of damages is governed by the identical home state law for all class members of the Florida class, as well as all members of the Louisiana class.  Thus, the

---

denied. *Campbell/Clement* Docket #3699 and Docket #3735; *Germano* FOFCOL at 5-6.

typicality requirement is readily met.

### 4.    Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members. There can be differences between the class representatives and other class members so long as these differences do not "create conflicts between the named Plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 626. A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members. *Id.* (*citing Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1971)). In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

Under Rule Fed. R. Civ. P. 23(g), a district court must appoint class counsel at the time the class is certified, unless otherwise provided by statute. The class counsel must fairly and adequately represent the interests of the class, and the court must review the counsel's work in investigating claims, experience in handling class action litigation, knowledge of the applicable law, and the resources counsel will commit to representing the class. Rule 23(g)(1)(B),(C).

The proposed class representatives, Dr. Steven Roberts and Mr. Freddie Nunez, here have the same interest as absent subclass members in obtaining property damage relief from Knauf. They also all share the same interest in the enforcement of a class judgment and the collection of

18

that judgment against Knauf.  The class representatives have demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the fact of corrosion damage.  Further, these class representatives have timely completed the court ordered PPF's.  Finally, each class representative has agreed to make him or herself available for deposition and cooperate with requests to assist this Court and counsel as needed.  Levin Dec. at ¶¶2-7.

The proposed class counsel are experienced in class action practice, well respected, and competent lawyers.  Levin Dec. at ¶8 (attaching Curriculum Vitae of proposed class counsel). This Court has already had the opportunity to work extensively with each of the proposed class counsel and their firms in prior proceedings in this case.  Thus, the Court should find that the proposed Florida class representative, Mr. Freddie Nunez; and the proposed Louisiana class representative, Dr. Steven Roberts; as well as the proposed class counsel; (Arnold Levin of Levin, Fishbein, Sedran & Berman;  Ervin Gonzalez, of Colson Hicks Eidson; and Richard Lewis, of Hausfeld LLP for Florida), and (Russ Herman, of Herman, Herman, Katz & Cotlar, LLP; and Gerald Meunier, of Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC for Louisiana) are adequate.

### a.      Ascertainability

It should be noted that various courts consider *ascertainability* to be a requirement under Rule 23.  Ascertainability pertains to the ability of the court based on record evidence to utilize objective criteria to determine who is a subclass member (and who is not).  The Fifth Circuit has referred to ascertainability as an "implied prerequisite of Rule 23." *John v. Nat'l Security Fire &*

19

*Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short,* 433 F.2d 733, 734

(5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be

represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co., Inc.,*

880 F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981); 5 JAMES

W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender

3d ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist.").

Here, the class is ascertainable.  Membership in the class is based on two key objective criteria:

(1) ownership of a residence in Florida or Louisiana; and (2) the identification of Knauf CDW in

that residence.  The determination of Knauf drywall in a residence is established through visual

identification of known markings.  *See* PTO #10 (Docket #171); and other documentation of

Knauf deliveries by third parties.  Wright Dec. at ¶¶3-5.  Thus, the proposed classes meet the

ascertainability requirement.

### 5.    Predominance – Rule 23(b)(3)

Rule 23(b)(3) requires that the class share common issues of law or fact that predominate

over the questions affecting individual class members.  In general, in order to predominate,

common issues must form a significant part of the individual cases.  *Mullen,* 186 F.3d at 626.

Specifically, a district court should consider how the cases would proceed to trial, that is,

whether any cases would require individual trials on particular issues.  *See Castano,* 84 F.3d at

744-45 (finding that certification was inappropriate where individual trials would be necessary to

determine an element of the Plaintiffs' fraud claims).

The dual demands of Rule 23(b)(3) are that common issues are significant and will

resolve substantial aspects of the case, and that the case will be manageable for trial purposes. *Id.* This Court applying Louisiana law in *Hernandez*, and the *Seifart* Court applying Florida law, have already found sufficient facts to establish the fact of property damage associated with defective Knauf drywall and have determined the applicable law. Further, Plaintiff's expert Ron Wright has demonstrated a formulaic approach to determining class-wide damages. Thus, class-wide liability and damages can be established in an efficient manner and these issues predominate over any individual issues.[10]   Moreover, there are no individual issues associated with any personal injury claims as those claims are excluded from the class.

### a.    Defendant Knauf's Conduct is a Common Liability Issue

Here, there can be no dispute that Defendant Knauf's course of conduct in manufacturing and selling defective drywall to the U.S. home construction market has a common property damage impact on the class member homeowners. Liability is commonly recognized as a predominant issue in the class setting. *Mullen,* 186 F.3d at 626 ("the common issues in this case, especially negligence and seaworthiness, are not only significant but pivotal … If the [Defendant] prevails on these two issues, they will prevail in the case."); *Murphy,* 243 F.R.D. at 606 (plaintiffs' property damage claims "share large areas of fact in common"); *McQuilken v. A&R Development,* 576 F.Supp. 1023, 1031 (E.D. Pa. 1983) (involving damage to homeowners' properties caused by construction activity, defendants' conduct is viewed as a common and predominant issue supporting certification).

---

[10] There will be a need during claims processing for each claimant to prove up basic facts to establish property damages: (1) product identification; (2) homeownership; and (3) square footage of owned home, to recover on a remediation claim.

The issue of Knauf's liability to the classes is highly amenable to class treatment because the evidence of the actual defect, Knauf's knowledge of it, and the type of corrosion damage associated with the product will be the same for all class members. Thus, a finding of liability for the classes would allow 2000 plus claimants to proceed directly to the damages phase. The conservation of resources for the Court and the parties of resolving liability on a class-wide basis is substantial, and is available *even if* the Court later determines that some damages issues must be resolved through individualized adjudications. *Murphy,* 234 F.R.D. at 605, 607 (individualized damage issues do not prevent a finding of predominance).

   **b.** **Determination of Class-Wide Damages is a Predominant Issue**

   Similarly, the Plaintiffs' demonstrated ability to determine class-wide damages meets the predominance requirement at the certification stage. *See, e.g., Monumental Life Insurance Co. v. National Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a classwide basis and, when sorted, are capable of determining damages for individual policyowners; none of these variables is unique to particular Plaintiffs. The prevalence of variables common to the class makes damages computation 'virtually a mechanical task.'").

   As the Eleventh Circuit noted in *Klay v. Humana*:

> In assessing whether to certify a class, the court's inquiry is limited to whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all . . . . Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis. Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).[11]  As such, damages

can be proven on a class-wide basis and allocation and claims processing issues will not defeat

class certification.  *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004)

("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter

accomplished pursuant to a court-approved plan of allocation, and such individual damages

allocation issues are insufficient to defeat class certification."); *In re NASDAQ Market-Makers*

*Antitrust Litigation*, 169 F.R.D. at 525 (S.D.N.Y. 1996) ("Aggregate computation of class

monetary relief is lawful and proper.").

   Even if some individual damages issues may exist, it is well settled that their presence

does not defeat predominance.  *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th

Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004) ("[N]umerous courts have

recognized that the presence of individualized damages issues does not prevent a finding that the

common issues in the case predominate."); *Murphy,* 234 F.R.D. at 605, 607 (same).  Any

individualized damage issues, for example determining individual personal property damage, can

be dealt with "pursuant to a court-approved plan of allocation," or mini-trials.  *Terazosin*, 220

F.R.D. at 699; *see also Turner v. Murphy,* No. 05-4206, Order and Reasons (March 3, 2006), slip

op. at 3 (Comp. Ex. 18) ("Fifth Circuit has approved of bifurcated trial plans in which common

issues of liability, negligence, and certain defenses are tried commonly, with causation actual

---

[11]  Courts routinely have used class-wide, formula-based techniques to calculate individual damages in various types
of class actions.  *See, e.g., Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) (approving aggregate damages
judgment), *aff'd*, 444 U.S. 472 (1980); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003)
(approving of the use of objective data extracted from the Defendant's computer system and analyzed through a
"mechanical process" in a case involving charging customers for incoming cellular telephone calls.); *see also* 3
Newberg on Class Actions § 10:8.

damages, and … comparative fault tried individually.") (Citations omitted).

       **i.**      **Formulaic Method To Determine Class-Wide Property Damage**

Alternatively, damages can be established on a formulaic basis. For example, Ronald Wright, Plaintiffs' expert, a Civil Engineer who specializes in the assessment and repair and remediation for home construction has inspected many Knauf drywall homes, and has developed a methodology to estimate damages for the remediation of such homes and the replacement of damaged components including appliances, flooring, cabinetry and other items. He has considered national databases that estimate such costs including RS Means and more specifically he has reviewed the real world repair bids of local construction companies to perform the necessary remediation in several homes in different states. Declaration of Ronald Wright, ("Wright Dec.") at ¶¶5-7. For example, based on his work in Virginia and available Virginia data, Mr. Wright offered the expert opinion in the *Germano* proceeding that the cost of repair for a fair cross-section of Virginia homes would be on average $86 per square foot, which was accepted by the Court. *Germano* FOFCOL at 57-60. Based on similar data for Florida and Louisiana, available statistical databases in the housing and construction industry, and Florida and Louisiana CDW distribution data Mr. Wright will be able to estimate: (1) the number of homes in Florida and Louisiana that contain defective Knauf drywall and require remediation, and (2) the total square footage of these homes. With these estimates, combined with the average price of repair per square foot in the state; Mr. Wright can then determine class-wide remediation damages. Wright Dec. at ¶¶5-7; *see also Germano* FOFCOL at 57-59, 64-69.

Additional forms of property damage, including alternative living costs, property

diminution, loss of use and enjoyment, and personal property losses are also amenable to determination on a class-wide basis.  For example, in the case of alternative living costs, the damage amount established in *Hernandez* was $2376.81/month.  *Hernandez* FOFCOL at 42. Real property diminution also can be determined in a formulaic manner.  *Murphy*, 234 F.R.D. at 607 and n.5 (Court notes that real estate expert "opined that the properties at issue would be properly subject to mass appraisal to determine their present value."); *Sher v. Raytheon Co.*, 261 F.R.D. 651, 2009 WL 31931 52, *19 (M.D. Fla. 2009) (in environmental pollution toxic tort case, court found at class certification that plaintiffs provided a "viable model for calculating property damages on a class-wide basis").

Loss of use and enjoyment and personal property damages could also be assessed for the class based on a survey of representative homeowners.  *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-20 (5th Cir. 1997) (permitting the use of statistics to draw inferences about the claims of 3,000 plaintiffs and intervenors who claimed wrongful death, personal injury, and property contamination from defendant's storage of hazardous substances which had leaked from crude oil waste pits and migrated into the plaintiffs' drinking water supply); *see Watson v. Shell Oil Co.*, 979 F.2d 1014, 1018 (5th Cir. 1992) (approving trial court's proposal to determine punitive damages in a mass-tort class-action suit by fully trying 20 sample claims on *compensatory* damages to the jury and then asking the jury to "establish the ratio of punitive damages to compensatory damages for each class member"); *Hilao v. Estate of Marcos*, 103 F.3d 767, 782087 (9th Cir. 1996).  The Ninth Circuit Court of Appeals allowed the use of aggregation and statistical analysis to determine compensatory damages where a statistics expert relied on a

25

random sample of claims to calculate damages for the entire class.); *see also,* Newberg on Class Actions at §10:3 (4th ed) (citing *Long v. Trans World Airlines, Inc.,* 761 F.Supp. 1320, 1324-1326 (N.D. Ill. 1991) (approving of a sample of class members' damages in labor dispute as a basis to determine class-wide damages).

Thus, class-wide property damages can be established by a formulaic method to or by a combination of a formulaic method and claims proceedings or mini-trials to meet the Rule 23(b)(3) predominance requirement. *Monumental,* 365 F.3d at 419. In addition, the FOFCOL from *Germano* and *Hernandez,* as well as the jury verdict in *Seifart,* demonstrate benchmark damage awards for the cost of remediation, the alternative living costs, property diminution, loss of use and enjoyment and private property damage, that can be used by the Court to assess the reasonableness of expert opinions or awards related to property damage.

c.  **Variation of Substantive Law Between Florida and Louisiana Does not Bar Class Certification**

Variation of state law and choice of law are also significant concerns for manageability. *Mullen,* 186 F.3d at 627. Here, these matters are easily managed because there are only two states laws to consider, Florida and Louisiana. There is little significant variation between them on the issue of property damage, and even if there were, that concern it is minimized here because each state class's claim is governed by the law of its own state. *See Manual for Complex Litigation,* Fourth § 22.634, p. 412 (2004) ("If the choice-of-law and subsequent analysis show little relevant difference in the governing law, or that the law of only a few jurisdictions applies, the court might address these differences by creating subclasses or by other appropriate grouping of claims.").

26

i.   **Louisiana Substantive Law Applies to the Louisiana Class Claim**

Federal courts sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *In re Vioxx Products Liability Litigation*, 239 F.R.D. 450, 454 (E.D. La. 2006). This case, having been filed initially in Louisiana, (*Payton* Docket #1) requires the application of Louisiana choice of law rules. *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 385 n.7 (5th Cir. 2009) (citing *Klaxon*). Louisiana choice of law rules require the court to determine what state has the most significant relationship to, and interest in, the claim and to determine whose policies would be most seriously impaired if its law were not applied to that issue. La. Civ. Code Ann. Art. 3515, 3539, and 3542; *Commercial Union Insurance Group v. The Upjohn Company,* 409 F.Supp. 453 (W.D. La. 1976); *Skansi Marine, LLC v. Ameron Intern. Corp.,* 2003 WL 22852221 (E.D. La. 2003). Under these provisions it is clear that substantive Louisiana law would apply to a Louisiana resident's property damage claim for a residence that is located in Louisiana. *Id.* This Louisiana law will apply to the claims of class representative, Mr. Freddie Nunez and the Louisiana claim

ii.   **Florida Substantive Law Applies to the Florida Class Claim**

Under Louisiana choice of law rules, the fact that Florida is the state where the injury occurred to the class representative, Dr. Roberts, and the Florida class; and Florida is where the class representative and class are domiciled, requires Florida law to apply to these claims. *Bishop,* 389 So. 2d 999, 1001; *Harris v. Berkowitz,* 433 So. 2d 613, 615 (Fla. App. 1983). Florida's substantive law makes clear the state's policies to protect its own residents and its own

27

properties from injury and to provide fair compensation to its residents when such injuries occur.
*See Bishop,* 389 So.2d at 1001 (explaining that "the state where the injury occurred would, under

most circumstances, be the decisive consideration in determining the applicable choice of law …

[o]ther factors may combine to outweigh the place of injury as a controlling consideration");

*Harris v. Berkowitz,* 433 So.2d at 615

Thus, the substantive law of Florida would apply to the Florida class claim and the

substantive law of Louisiana would apply to the Louisiana class claim; and variation between the

law of the states, if any, would not interfere with the management of the trial of this case. *See*

*Waste Mgmt. Holdings v. Mowbray,* 208 F.3d 288, 296-97, (1st Cir. 2000) (a class action

involving eight different states' potentially relevant statutes of limitations in a breach of

contractual warranty case); *see also In re Pharmaceutical Industry Average Wholesale Price*

*Litigation,* 252 F.R.D. 83, 107 (D. Mass 2008) (certifying two separate multi-state classes).

As stated above, the factual determination of class-wide liability and property damages

are the predominant common issues to be resolved in this case. These types of issue are

recognized as pivotal class issues. *Mullen,* 186 F.3d at 626; *Monumental,* 365 F.3d at 419;

*Murphy,* 234 F.R.D. at 606; *McQuilken,* 576 F.Supp. at 1031. The types of issues that are often

seen as obstacles to class certification: those that require extensive individualized proof like

where class members seeking personal injury damages are exposed to different products, at

different times and suffer different injuries; are not present in this case. *Mullen,* 186 F.3d at 626;

*Turner v. Murphy Oil,* No. 05-4206, Order and Reasons, slip op at 13-14 (January 30, 2006)

(Comp. Ex. 19). Similarly, complex choice of law issues are not involved here. *Mullen,* 186

28

F.3d at 627.  In contrast to those cases that have not allowed certification, this case presents class

claims where each class member has suffered the same type of injury, during the same time

period, caused by the conduct of the same defendant, a paradigm for class certification:

> In the present case the plaintiffs are an extremely compact and
> discrete geographical group, readily identifiable.  There are no
> choice of law problems.  All claim to have suffered the same type
> of harm, during the same time period, caused by the same conduct
> of the defendant.   This case is thus similar to those cited above in
> which class certification has been granted.  It also differs from
> those "mass tort" cases in which certification has been denied
> because the harm to various class members took place at different
> times and under different circumstances, or because individual
> defenses or choice of law problems existed.

*McQuilken,* 576 F.Supp. at 1031; *see also Mullen,* 186 F.3d at 626-627.

   In sum, the substantive property damage law applicable to CDW claims in Florida and

Louisiana has been established.  *Hernandez* FOFCOL at 44-47;[12] *Seifart* Orders and Verdict

Sheet (Comp. Exs. 1-4).  There is no variation in the law to be applied to members of each class.

Class-wide liability and class-wide damages can be established on a common basis.  The trial of

this case on these predominant issues is manageable as demonstrated by the Proposed Trial Plan

(filed simultaneously herewith).  The requirements of Rule 23(b)(3) predominance are readily

established.

---

[12] In addition, Louisiana law supports a property damage claim for diminished value of real estate and loss of use and enjoyment. *See also Thomas v. Desire Community Housing Project,* 98-2097 (La. App. 4th Cir. 8/10/00), 773 So.2d 755 (allowing non-pecuniary damages of $15,500 for problems in the construction of plaintiff's home); *Taylor v. Burton,* 97-1348 (La. App. 3rd Cir. 3/6/98), 708 So.2d 531 (upholding award for aggravation and mental distress due to defects in plaintiff's house); *Mayer v. Three R's Inc.,* 597 So.2d 151, 155 (La. App. 3rd Cir. 1992) (affirming award for inconvenience and mental anguish), *writ denied,* 600 So.2d 680 (La. 1992); *see also,* LA.CIV. CODE ART. 2524. *See Bonnette v. Conoco Inc.,* 2001-2767 (La. 1/28/03), 837 So.2d 1219, 1238-1240 (upholding an award for the diminished value of a remediated home because the former presence of asbestos would need to be disclosed to prospective buyers); *see also, e.g., Johnson v. Orleans Parish School Bd.,* 2006-1223 (La. App. 4th Cir. 1/30/08), 975 So.2d 698, 705-706.

### 6.     Superiority – Rule 23(b)(3)

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication: (1) the class members' interest in individually controlling their separate actions, (2) the extent and nature of existing litigation by class members concerning the same claims, (3) the desirability of concentrating the litigation in the particular form, and, (4) the likely difficulties in class management. Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).[13]

A class proceeding is the superior method to adjudicate the major subset of claims in the MDL, the property damage claims against Knauf from Florida and Louisiana. The exhaustive record of the relevant factual evidence already reviewed by and ruled on by this Court and the *Seifart* Court greatly enhances the manageability of this matter. A class proceeding will facilitate an expeditious and streamlined resolution for the largest subset of affected homeowners and potentially establish a road map to resolve the remaining claims in the MDL. This streamlined procedure is desirable and necessary because the property damage caused by Knauf drywall has forced many homeowners to abandon their homes and has placed several homeowners under financial pressure including the need to pay two mortgages, loss of credit rating, and foreclosure. Further, there are no management difficulties in the trial of these claims. *See* Proposed Trial Plan. For all the reasons stated above, as well as the procedural advantages of avoiding duplicate proceedings on identical issues, class adjudication is the superior method to resolve the property damage claims of Florida and Louisiana Knauf homeowners.

---

[13] This Court has recognized that these Knauf defective drywall claims are meritorious. *Hernandez* FOFCOL at 44-47.

## IV.   CONCLUSION

In sum, the Plaintiffs can readily establish that the proposed classes meet the Rule 23 requirements of numerosity, commonality, typicality, adequacy, predominance and superiority. Plaintiffs respectfully request that the Florida and Louisiana Knauf homeowner classes described herein be certified.

## PROPOSED CLASS COUNSEL

Dated: September 21, 2010                    Respectfully submitted,


### FLORIDA CLASS


/s/ Arnold Levin
Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*


Ervin A. Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com


Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

32

**LOUISIANA CLASS**

/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*


Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com


**PROPOSED OF COUNSEL TO CLASS,**
**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Russ M. Herman, Esquire | Arnold Levin |
| Leonard A. Davis, Esquire | Fred S. Longer |
| HERMAN, HERMAN, KATZ & COTLAR, LLP | Levin, Fishbein, Sedran & Berman |
| 820 O'Keefe Avenue | 510 Walnut Street, Suite 500 |
| New Orleans, Louisiana 70113 | Philadelphia, PA 19106 |
| Phone: (504) 581-4892 | 215-592-1500 (phone) |
| Fax: (504) 561-6024 | 215-592-4663 (fax) |
| Ldavis@hhkc.com | Alevin@lfsblaw.com |
| *Plaintiffs' Liaison Counsel* | *Plaintiffs' Lead Counsel* |

33

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931

hlambert@lambertandnelson.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836

sweinstein@forthepeople.com

34

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Ervin A. Gonzalez
Patrick Montoya
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis (On the Brief)
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

35