## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO.:  2047** |
| | **JUDGE FALLON** |
| **This Document Relates to** | |
| ***Pate v. American International Specialty Lines Insurance Company, et al.* (09-7791)** | **MAGISTRATE JUDGE WILKINSON** |

### PLAINTIFFS'MEMORANDUM IN SUPPORT OF SECOND JOINT MOTION TO COMPEL AGAINST DEFENDANT OWNERS INSURANCE COMPANY

The Plaintiffs' Steering Committee and Robert Pate as Trustee for the Chinese Drywall Trust ("<u>Plaintiffs</u>") respectfully move this Court for an order compelling Defendant Owners Insurance Company ("<u>Owners</u>" or "<u>Defendant</u>") to respond to discovery regarding (1) the details underlying some 340 claims that it paid to Louisiana in the last five years; and (2) whether Owners sold insurance policies to Louisiana residents or that cover incidents in Louisiana.

The Court should grant this motion because:

- This Court already ordered this discovery less than a month ago, and Defendant has been intransigent in providing complete answers;

- Defendant admits that it has paid 344 claims since 2006 to Louisianans and that it may have policies covering Louisiana or Louisianans;

- Defendant admits that it conducted <u>no</u> investigation into whether it has Louisiana insureds, nor into the nature of the claims it has paid to Louisiana and Louisianans; and

- In light of its admissions, Defendant's affidavits in support of its Motion to Dismiss are misleading, and further investigation is warranted.

For these reasons, Plaintiffs respectfully seek an order requiring Defendant be more forthcoming and cooperate in full.  A proposed Order is attached.

## **BACKGROUND**

On May 26, 2010, Defendant Owners filed a motion to dismiss for lack of personal jurisdiction. *See Motion to Dismiss First Amended Complaint For Lack Of Personal Jurisdiction and Improper Venue*, 2:09-md-02047-EEF-JCW (E.D. La.), Docket No. 3302, ("Defendant's Motion").

In support of its Motion, Defendant submitted the affidavit of Scott Norris, an attorney. *See Aff. Of Scott Norris*, Sworn to May 24, 2010, attached as Exhibit A to Declaration of Bruce Steckler, September 30, 2010 ("Steckler Decl.").  Therein, Mr. Norris claimed that (1) Owners Insurance Company is not licensed by the State of Louisiana to write policies of insurance in the state; (2) Owners Insurance does not write insurance coverage in the State of Louisiana; (3) Owners Insurance does not solicit business from Louisiana residents; and (4) Owners Insurance Company does not collect any premiums from Louisiana residents.  *See id*.  Another Corporate Representative swore in an affidavit to the same general points.  These statements were the only substantive and direct evidence provided in support of Defendant's Motion.

Plaintiffs served discovery to establish jurisdiction and venue.  Plaintiffs served corporate representative deposition notices seeking information about "13. [I]insurance policies which mention or reference Louisiana.  14. The bases and facts supporting the statements made in any affidavit annexed to Your motion to dismiss in the above-referenced action. . . .19.  Your sale of insurance products in Louisiana, including to Person(s) that reside or do business in Louisiana. . . .47.  Any losses that took place in Louisiana and related to which You sold insurance."  *See* Steckler Decl. Ex. B (Notice of Corporate Representative Deposition).

Moreover, Defendants flatly objected to Plaintiffs' Interrogatories and document requests regarding the same subjects listed in the Corporate Representative deposition notice above. *See id.* Ex. C (Owners Insurance Company's Response to Plaintiff Robert C. Pate's Interrogatories and Requests for Production of Documents concerning Jurisdiction and Venue) (*e.g.*, Interrogatories 6, 7, 9, 13, 14, 15, 29; Requests for Production 3, 7, 8, 9, 31).

Thus, Plaintiffs were forced to file a motion to compel seeking "complete answers" to the various interrogatories and document requests. *See Joint Motion To Compel Of The Plaintiffs' Steering Committee And Robert C. Pate In Accordance With The Court's Scheduling Orders*, Docket No. 5293, August 23, 2010.

On September 2, 2010, this Court granted Plaintiff's motion and entered the following order:

> Plaintiff's request that certain non-stipulating insurers provide discovery responses concerning the sale of insurance policies to Louisiana residents and entities, and processing of insurance claims in Louisiana … GRANTED as it pertains to Owners, but with the understanding Owners is permitted time to clarify its contested responses.

*See* Minute Order, Docket No. 5450, September 2, 2010, at 2 ("Order").

Pursuant to the Order, Defendant provided a single Supplemental Response to its Answer to Interrogatory 13 (to which it originally only objected and provided no substantive answer), which now reads:

> [N]otwithstanding Owner's original objections in its August 12, 2010 discovery responses, Owners and its related entities provide the following responsive information, Owners and its Related Entities paid the following to Louisiana claimants:
>
> 2005: 70 claims totaling $593,343.73
>
> 2006: 61 claims totaling $481,743.92

2007: 62 claims totaling $502,399.70

2008: 79 claims totaling $516,627.76

2009: 74 claims totaling $431,381.04

*See* Owners Insurance Company's Supplemental Response to Plaintiff Robert C.
Pate's Interrogatories and Requests for Production of Documents concerning Jurisdiction
and Venue, September 14, 2010 (attached to Steckler Decl. as Exhibit D).

Two days later, on September 16, 2010, Defendant's corporate representative and
Mr. Norris each testified at deposition.   *See* Tr. of Deposition of Owners Insurance
Company, Corporate Representative, September 16, 2010, (*attached as* Exhibit E to
Steckler Decl.) ("Owner's Tr."); Tr. of Deposition of Scott Norris, September 16, 2010
("Norris Tr.") (*attached as* Exhibit F to Steckler Decl.).  But neither was able to provide
any more detail than what was already provided.

When pressed, Mr. Norris admitted that his opinion was not based on any facts –
it was at best an extrapolation. *See* Norris Tr. at 57-58 (Steckler Decl. at Ex. F).  He only
knew that Owners was not licensed in Louisiana and he merely *assumed* without
verifying that Owners sold no policies to Louisianans, and issued no policies covering
incidents that might occur in Louisiana.  *See id.*  Mr. Norris conducted no database search
and in fact did not even know of one; he conducted no personal review of files; he
conducted no review of the specific cases that led to the payments noted in Supplemental
Response to Interrogatory 13 – and Mr. Norris did not even direct anyone to do so on his
behalf!  *Id.* at 51-54, 57-61.

Owners' Corporate Representative testified that of the 344 claims that were listed
in the Supplemental Response to Interrogatory 13, she could not testify accurately as to
any of them – not as to what types of incidents triggered the duty to pay, not who owned

the policies or where they resided, not even where the incidents occurred.  *See* Owner's

Tr. at 65:12 – 66:7 (Steckler Decl., Ex. E).

Plaintiffs' Counsel has conferred with defense counsel regarding Defendant's

obligation to conduct a diligent search to verify that it indeed does not have Louisiana

insureds nor does any business covering Louisiana risks, especially in light of the fact

that between 2005 and 2009 alone, Defendant paid 344 claims to Louisianans, worth over

$2.5 million.

## ARGUMENT

There is no question that Plaintiffs are entitled not only to some discovery, but

*enough* discovery before this Court rules on Defendant's Motion to dismiss for lack of

personal jurisdiction.  Discovery is appropriate, where, as here, the parties and Court

"[do] not at this stage of this litigation know in sufficient detail what contacts defendant

does or does not have with Louisiana."  *Ingram v. Connect Corp.*, No. 88-3078, 1989

U.S. Dist. LEXIS 3873, at *5-6 (E.D. La. Apr. 11, 1989).  "Discovery that will provide

more information about the nature of defendant's contacts with Louisiana, if in fact any

exist, should be allowed to proceed before dismissal for lack of jurisdiction."  *Id.* at *6;

*see also Parish of Jefferson v. Southern Recovery Managemen*t, No. 95-2290, 1995 U.S.

Dist. LEXIS 13938, at *6 (E.D. La. Sept. 11, 1995) (affirming magistrate order because

"[s]ince one or more of defendants' jurisdictional arguments could dispose of the case,

plaintiff must be afforded the opportunity to develop facts that would help in defending

against defendants' motion to dismiss and/or abstain.").  Here, Plaintiffs are merely

asking for a meaningful opportunity to uncover   "sufficient detail what contacts

defendant does or does not have with Louisiana" before having to oppose Defendant's

motion. *Ingram*, 1989 U.S. Dist. LEXIS 3873, at *5-6.

Rule 37(a) authorizes Plaintiffs to move to compel discovery in the form of more complete discovery and deposition answers. *See* Fed.R.Civ.P. 37(a)(1) and (3)(B).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *See* Fed.R.Civ.P. 37(a)(4).

Here, neither of Defendant's deponent-representatives conducted – or directed someone else to conduct – a search of the records to substantiate their claims that Owners has no ties to Louisiana.  And neither could supply any details about the payment of 344 insurance claims to Louisianans for $2.5 million dollars to substantiate Owner's claim that its activities and interactions with Louisiana do not arise to the level of sufficient contacts for jurisdictional purposes.  Can there by any doubt that these are "incomplete" if not "evasive" answers – and therefore, are no answers at all?

Apparently, Plaintiffs and the Court are supposed to take Defendant's word for it. But that is not good enough.

## I. Defendant Admits That It Possesses Information That It Never Disclosed And Never Bothered To Investigate Or Research When Answering Discovery

We are now months into this process and Defendant has only recently admitted that it in fact has paid a substantial number of claims to people in Louisiana. *See* Supplemental Resp. to Inter. 13 (Steckler Decl. Ex. D).  But despite making that admission, Defendant has surprisingly not backed off of its conclusory sworn affirmation that it has no substantive ties with Louisiana.  And despite Plaintiffs' entreaties to do so, Defendant has remained steadfast and not forthcoming with the truth.

Breaking Defendant's obstinacy at the knees are its representatives' admissions. The Corporate Representative, also a lawyer, testified that indeed there was a likelihood that Owners had insureds in Louisiana.

Q. [] My question to you is, you do issue insurance policies, correct?

A.  We do.

Q. And I'm wondering whether any of those insurance policies are issued to individuals that are residing in Louisiana?

A.  It is possible that a person residing in Louisiana could purchase a policy in a state that we operate.

. . . .

Q.  Okay.  So Auto-Owners or one of its subsidiaries does in all likelihood cover a risk in Louisiana based upon the course and scope of their business?

A.  I wouldn't phrase it as covering a risk in Louisiana.

Q.  How would you phrase it?

A.  We are covering an insured in whatever state that policy is issued who has a liability in Louisiana.

Q.  Okay.  So you issue policies to insureds who may or may not do business in Louisiana.  And if they have a risk in Louisiana that's covered under the policy, you would handle that coverage, correct?

A.  If they have a liability.

Q.  Liability.  I apologize.

A.  Correct.

Owner's Tr. at 17:24-18:8; 25:15-26:7 (Steckler Decl. Ex. E).

Moreover, Owners' Corporate Representative testified that of the 340 or so claims that were listed in the Supplemental Response to Interrogatory 13, she could not testify accurately as to what types of incidents they were based upon or where:

Q. So you don't know what claims these were?

A.  Not specifically, no.

Q.   And you don't know why there were 340 over five years other than this is what you were able to locate, correct?

A.   Right.

Q.   Did any of these involve Louisiana companies that you're aware of?

A.   Without looking at each claim file, I wouldn't be able to give you a valid answer.  When you say -- I'm assuming as a claimant, correct?

Q.  Right.  Either as a claim against a Louisiana company or by a Louisiana company.

A. Right.  As opposed to an individual, I can't tell you.

Q.   So you don't know whether any of these 340 claims involved Louisiana companies, fair enough?

A.   As claimants, I do not know, right.

Owner's Tr. at 65:12 – 66:7 (Steckler Decl., Ex. E). *See also* Norris Tr. at 54:14-19 (Steckler Decl. Ex. F).

Not only did Owners fail to conduct any kind of investigation to substantiate its responses to Interrogatory No. 13 and failed to provide a more complete response as it was ordered to do, Mr. Norris testified that *he* had not conducted any kind of investigation either in determining whether there were policies with Louisiana insureds as he swore to in his affidavit!

**Q.   [] What steps did you undertake to determine whether or not premiums were collected from Louisiana residents**?

**A.   We -- I reviewed the -- we have a chart that shows us which states that we're registered and licensed to do business in.  And as we were not registered or licensed to do business in Louisiana and had no agents in the state of Louisiana and issued no policies in the state of Indiana -- Louisiana, rather, my conclusion was that we were not accepting money from people in Louisiana**.

. . . .

Q.   And the reason I ask is you basically said here in your affidavit that Owners Insurance Company does not collect premiums from Louisiana residents.  **And my understanding is the steps that were taken to figure that was, we're not licensed in Louisiana, therefore it's not likely that we're   doing that.  And I'm just trying to figure out how you came to that conclusion**.  Because in this day and age, if you don't mind me saying, it's my opinion that a lot of businesses are more national in nature than sort of provincial.  Does that make sense?

MR. SAPORITO: Object to the speculative form of the question.

Q.   Does that make sense to you, what I'm saying by national versus provincial?

A.   I can generally understand your concept, yeah.

Q.   And so I'm wondering if there's some other form and fashion that you could have made this conclusion in your affidavit.  Could you have searched premiums or something on your database to figure this information out?

A.   **I'm not aware of a database that we would have searched to come to that conclusion**.

Q.   **And that's what I'm getting at, is when it talks about collecting premiums, I'm wondering whether you can sort of search on your system premiums collected, location of where the premiums are coming from**?

A.   **I'm not aware of a search for that**.

…

Q.   And I'm not trying to impugn that.  I'm just trying to figure out whether -- like we've talked about, these cases -- whether there's a searchable means to determine whether premiums are being collected from Louisiana residents, and there isn't?

A.   Not to my knowledge.

Q.   Okay.  **And there's no way to determine whether or not companies that are being insured by you all are obtaining substantial income from Louisiana and using that to secure a policy from you?**

MR. SAPORITO: Object to the form of the question.

THE WITNESS: **without going to that particular business or risk, I don't know how we would find that out, no.**

Q. **Exactly. That's what I'm just trying to figure out.**

Norris Tr. at 57:6-17; 59:5–61:18 (emphasis added) (Steckler Decl. Ex. F).

Thus, Mr. Norris admitted that the information exists and is accessible. *Id.* Yet, Mr. Norris initially awore in his affidavit that neither Owners nor its affiliates have any contacts with Louisiana, including not insuring anyone in Louisiana, *see* Norris Affidavit, Sworn to May 24, 2010 (Steckler Decl. Ex. A).

Accordingly, despite testifying under oath that Defendant has no substantive contacts with Louisiana, Owner's revelations in its Supplemental Response to Interrogatory 13 call that prior testimony into question.   And Defendant's later admissions that its blanket assertions in support of its Motion to Dismiss were not even the product of a good faith diligent investigation are fatal and open the gates for deeper investigation.

## II.   **Defendant Has Not Complied With This Court's First Order Compelling The Very Information Sought in this Second Motion to Compel**

Plaintiffs are hamstrung in their ability to respond to Defendant's motion to dismiss without the above discovery.   Yet, this Court already ordered Defendant and its affiliates to "provide discovery responses concerning the sale of insurance policies to Louisiana residents and entities, and processing of insurance claims in Louisiana[.]" Docket No. 5450, at 2.

Defendant has no met its burden.  Defendant provided the numbers and aggregate amounts of claims paid in Louisiana, but nothing else.  It did not provide any specific information about the individual claims – for example, among other things:

(i)     Who paid the money (which entity – where they were located),

(ii)    to whom they were paid,

(iii)   for what injury / type of claim,

(iv)    based on whose policy(ies), and

(v)     where were the insureds located.

This information bears directly on the issue of personal jurisdiction as the payment of 344 claims over a five year period for over $2.5 million could be used satisfy the standards for the "purposeful availment" prong of personal jurisdiction.  *See Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999) ("The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.") (internal citations omitted).

Moreover, as discussed above, Defendant has not conducted any kind of search for its files to see whether, for example, a Louisiana company has purchased insurance for its work in, say, Alabama – or some other state that Defendant admits it does business in.  Defendant's representatives testified that the only way to know whether the claimants were Louisiana companies, or whether they had policies covering potential issues in Louisiana, would be to look at the papers.  *See* Owner's Tr. at 75:16–77:16; Norris Tr. at 50:24–54:17.

But no one did!  *See id.*

Therefore, Defendant has in no way complied with this Court's September 2, 2010 Order.

### III.    The Information Is Critical To The Jurisdiction Analysis

Plaintiffs' requests for discovery cut right to the heart of the jurisdictional question Defendant has raised.   A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law. Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir.1997).  "The Louisiana long-arm statute extends personal jurisdiction to the maximum limits permitted by due process. Due process advances a two-pronged test in order for the Court to exercise jurisdiction: (1) the nonresident must have minimal contacts with the forum state and (2) subjecting the nonresident to jurisdiction must be consistent with traditional notions of fair play." *Adams v. Unione Mediterranea Di Sicurta*, 234 F. Supp. 2d 614, 620 (E.D. La. 2002). These standards take on a different dimension where, as here, the contacts will arise from an insurance contract. *See id.*

In *Adams*, this Court found sufficient minimum contacts to assert general personal jurisdiction over an Italian insurer who had no contacts with the forum other through its insureds. *Id*. at 624-25.  The Court held that the lynchpin was the degree of foreseeability that attended the insureds being in Louisiana. *Id.* at 624.  The Court noted previous cases that held that an insurer whose insureds had a tendency to end up in Louisiana had the requisite foreseeability to be subject to Louisiana's long arm statute. *Id.* ("Even though the foreign insurer had no contact with Louisiana other than through its insureds, Judge Rubin held that the foreign insurer transacted business in the state sufficient to establish personal jurisdiction by "regularly and repeatedly maintaining insurance on a host of

vessel navigating Louisiana territorial waters.'"") (citing *McKeithen v. M/T FROSTA*, 435 F. Supp. 572 (E.D.La. 1977)).

The plain and common sense rule is that it is possible for an insurer to find itself subject to personal jurisdiction in a state that it not only did not contract business, but that it actively avoided, due to the activities of its insureds.  That is why Plaintiffs must have the documents and information necessary to ascertain the scope of Owner's insured's exposure and activities in Louisiana.[1]  It is simply insufficient for Owners to – as it has here – point to its lack of licensure in Louisiana as conclusive evidence that it has no contacts and, even worse, as grounds for concluding that it could have no contacts with Louisiana without deeper investigation.

## REQUESTED RELIEF

Plaintiffs respectfully request that this Court enter an Order requiring Defendant to: (1) provide complete answers to Interrogatory requests and deposition questions that could not be answered because the deponent lacked the requisite knowledge; (2) produce all documents that substantiate and provide detail into the 344 claims paid to Louisiana claimants; and (3) order that Plaintiffs have the right to re-depose Defendant if necessary to follow up on the supplementation.

---

[1] We already know that Owners has had to pay around a half-million dollars each year since 2006 to over 340 Louisiana resident claimants, and those were not all car accidents and bar fights – some were businesses.  And despite Owners claiming that it has never conducted business in Louisiana in any way, (*see* Steckler Decl. Ex. D, Response to Interrogatories), Owners has sued and been sued in Louisiana for the activities of its insureds. *See Rochon v. Consol. Constr. Co. et al.*, 497 So.2d 746 (La. Co. App. 3d Cir., 1987) (claim against insured for workman's compensation related to injury in Louisiana); *Brouillette v. Consol. Constr. Co. of Florida, Inc. et al.*, 422 So.2d 176 (La. Ct. App. 1st Cir., 1982) (claim for surety of construction contractor); *Auto Owners Ins. Co. v. Freret et al.*, 280 So.2d 638 (La. Ct. App., 1973) (claim against dump truck insured); *Leavell & Co. v. Glantz Contracting Corp.*, 322 F. Supp. 779 (E.D. La. 1971) (claim against insured architecture company arising from Louisiana project).

Respectfully submitted,

Dated: October 1, 2010

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com
Victor Manuel Diaz

Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Bruce William Steckler (On the Brief)
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
Matthews, Martinez, Gonzales,
Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
& Warshauer, LLC
2800 Energy Centre, 1100 Poydras St.
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo,
P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## INDIVIDUAL COUNSEL FOR PLAINTIFF, ROBERT C. PATE, TRUSTEE FOR THE CHINESE DRYWALL TRUST

Robert M. Horkovich
Anna M. Piazza (On the Brief)
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York 10020
P: 212-278-1000
F: 212-278-1733
rhorkovich@andersonkill.com
apiazza@andersonkill.com

Burton LeBlanc
Baron & Budd, P.C.
9015 Bluebonnet Blvd.
Baton Rouge, LA 70810
Phone: (225) 927-5441
Fax: (225) 927-5449
bleblanc@baronbudd.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Plaintiffs' Memorandum in Support of <u>Second</u> Joint Motion To Compel Against Defendant Owners Insurance Company of the Plaintiffs' Steering Committee and Robert C. Pate was served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 1st day of October, 2010.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047
*Co-counsel for Plaintiffs*