UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | |
| THIS DOCUMENT RELATES TO: | * | JUDGE FALLON |
| DAVID GROSS, et al | * | |
| vs. | * | |
| KNAUF GIPS, DG., et al | * | |
| Case No. 2:09-CV-6690 | * | MAGISTRATE WILKINSON |

### AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

### DALE F. CLOUTIER

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the President for Cloutier Brothers, Inc., ("Cloutier Brothers"), and as such, has personal knowledge of the following based on his review of records maintained by Cloutier Brothers in the regular course of business.

2. Cloutier Brothers is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Palm Beach County, Florida.

3. Cloutier Brothers is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.



4. Cloutier Brothers has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Cloutier Brothers has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. Cloutier Brothers does not have an agent for service of process in Louisiana.

7. Cloutier Brothers does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Cloutier Brothers does not solicit business in Louisiana or ever transacted business in Louisiana.

9. Cloutier Brothers has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Cloutier Brothers does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Cloutier Brothers has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Cloutier Brothers never anticipated it would be haled into court in Louisiana.

_____
DALE F. CLOUTIER, President

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 1st DAY OF SEPTEMBER, 2010.

_____
NOTARY PUBLIC

NOTARY PUBLIC-STATE OF FLORIDA
Cara C. Morris
Commission #DD703497
Expires: OCT. 21, 2011
BONDED THRU ATLANTIC BONDING CO., INC.

2

**Residential Sale and Purchase Contract**
FLORIDA ASSOCIATION OF REALTORS®

1. **SALE AND PURCHASE:** _D___ R. Laundry LLC_____ ("Seller")
   and _Purchaser_ of _Basics_ Estates C_____ ("Buyer")
   agree to sell and buy on the terms and conditions specified below the property described as:
   Address: _____ 5___ ___ Nelson St_____
   _____ County: _____
   Legal Description: _____
   _____ Tax ID No: _____
   together with all existing improvements and attached items, including fixtures, built-in furnishings, major appliances (including but not limited to range(s), refrigerator(s), dishwasher(s), washer(s), and dryer(s), ____ (if) ceiling fans (if left blank, all ceiling fans), light fixtures, attached wall-to-wall carpeting, rods, draperies and other window treatments as of Effective Date. The only other items included in the purchase are: _____
   _____

   The following attached items are excluded from the purchase: _____

   The real and personal property described above as included in the purchase is referred to as the "Property." Personal property listed in this Contract is included in the purchase price, has no contributory value and is being left for Seller's convenience.

   **PRICE AND FINANCING**

2. **PURCHASE PRICE:**       $ _235,000_____ payable by Buyer in U.S. currency as follows:
   (a) $ _1000_____         Deposit received (checks are subject to clearance) on _____ by
                            _____ for delivery to _____ ("Escrow Agent")
                            Signature              Name of Company
                            (Address of Escrow Agent) _____
                            Phone # of Escrow Agent _____
   (b) $ _9000_____         Additional deposit to be delivered to Escrow Agent by _11/30/07_____
                            or _____days from Effective Date. (10 days if left blank)
   (c) $ _195,000_          Total financing (see Paragraph 3 below) (express as a dollar amount or percentage)
   (d) $ _____         Other: _____
   (e) $ _35,000_           Balance to close (not including Buyer's closing costs, prepaid liens and prorations. All funds paid at closing must be paid by locally drawn cashier's check, official bank check, or wired funds.

3. **FINANCING:** (Check as applicable) ☐ (a) Buyer will pay cash for the Property with no financing contingency.
   ☐ (b) Buyer will apply for new ☐ conventional ☐ FHA ☐ VA financing specified in paragraph 2(c) at the prevailing interest rate and loan costs based on Buyer's creditworthiness (the "Financing") within ____ days from Effective Date (5 days if left blank) and provide Seller with either a written Financing commitment or approval letter ("Commitment") or written notice that Buyer is unable to obtain a Commitment within ____ days from Effective Date (the earlier of 30 days after the Effective Date or 5 days prior to Closing Date if left blank) ("Commitment Period"). Buyer will keep Seller and Broker fully informed about loan application status, progress and Commitment issues and authorizes the mortgage broker and lender to disclose all such information to Seller and Broker. If, after using diligence and good faith, Buyer is unable to provide the Commitment and provides Seller with written notice that Buyer is unable to obtain a Commitment within the Commitment Period, either party may cancel this Contract and Buyer's deposit will be refunded. Buyer's failure to provide Seller with written notice that Buyer is unable to obtain a Commitment within the Commitment Period will result in forfeiture of Buyer's deposit. Once Buyer provides the Commitment to Seller, the financing contingency is waived and Seller will be entitled to retain the deposit if the transaction does not close by the Closing Date unless (1) the Property appraises below the purchase price and either the parties cannot agree on a new purchase price or Buyer elects not to proceed, (2) the property related conditions of the Commitment have not been met (except when such conditions are waived by other provisions of this Contract); or (3) another provision of the Contract provides for cancellation.

   **CLOSING**

4. **CLOSING DATE; OCCUPANCY:** Unless the Closing Date is specifically extended by the Buyer and Seller or by any other provision in this Contract, the Closing Date shall prevail over all other time periods including, but not limited to, inspection and financing periods. This Contract will be closed on _12/14/07_____ 2007 ("Closing Date") at the time established by the closing agent, by which time Seller will (a) have removed all personal items and trash from the Property and swept the Property clean and (b) deliver the deed, occupancy and possession, along with all keys, garage door openers and access codes, to Buyer. If on Closing Date insurance underwriting is suspended, Buyer may postpone closing up to 5 days after the insurance suspension is lifted. If this transaction does not close for any reason, Buyer will immediately return all Seller-provided title evidence, surveys, association documents and other items.

   Buyer (___)(___) and Seller (DC)(___) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.
   FAR-9  4/07  © 2007  Florida Association of Realtors®  All Rights Reserved

EXHIBIT "B"

55 **5. CLOSING PROCEDURE; COSTS:** Closing will take place in the county where the Property is located and may be conducted by
56 mail or electronic means. If title insurance insures Buyer for title defects arising between the title binder effective date and recording
57 of Buyer's deed, closing agent will disburse at closing the net sale proceeds to Seller and brokerage fees to Broker as per
58 Paragraph 19. In addition to other expenses provided in this Contract, Seller and Buyer will pay the costs indicated below.
59    **(a) Seller Costs:**
60 Taxes and surtaxes on the deed
61 Recording fees for documents needed to cure title
62 Other: _____
63 Seller will pay up to $ __0__ or __0__ % (1.5% if left blank) of the purchase price for repairs to warranted items ("Repair
64 Limit"); and up to $ __0__ or __0__ % (1.5% if left blank) of the purchase price for wood-destroying organism treatment
65 and repairs ("WDO Repair Limit"); and up to $ __0__ or __0__ % (1.5% if left blank) of the purchase price for costs
66 associated with closing out open permits and obtaining required permits for unpermitted existing improvements ("Permit Limit").
67    **(b) Buyer Costs:**
68 Taxes and recording fees on notes and mortgages
69 Recording fees on the deed and financing statements
70 Loan expenses
71 Lender's title policy
72 Inspections
73 Survey
74 Flood insurance, homeowner insurance, hazard insurance
75 Other: _____
76 **(c) Title Evidence and Insurance: Check (1) or (2):**
77 ☒ (1) The title evidence will be a Paragraph 10(a)(1) owner's title insurance commitment. ☒ Seller will select the title agent
78 and will pay for the owner's title policy, search, examination and related charges or ☐ Buyer will select the title agent and pay
79 for the owner's title policy, search, examination and related charges or ☐ Buyer will select the title agent and Seller will pay
80 for the owner's title policy, search, examination and related charges.
81 ☐ (2) Seller will provide an abstract as specified in Paragraph 10(a)(2) as title evidence. ☐ Seller ☐ Buyer will pay for the
82 owner's title policy and select the title agent. Seller will pay fees for title searches prior to closing, including tax search and
83 lien search fees, and Buyer will pay fees for title searches after closing (if any), title examination fees and closing fees.
84 **(d) Prorations:** The following items will be made current (if applicable) and prorated as of the day before Closing Date: real
85 estate taxes, interest, bonds, assessments, association fees, insurance, rents and other current expenses and revenues of the
86 Property. If taxes and assessments for the current year cannot be determined, taxes shall be prorated on the basis of taxes for
87 the preceding year as of the day before Closing Date and shall be computed and readjusted when the current taxes are
88 determined with adjustment for exemptions and improvements. If there are completed improvements on the Property by
89 January 1 of the year of the Closing Date, which improvements were not in existence on January 1 of the prior year, taxes shall
90 be prorated based on the prior year's millage and at an equitable assessment to be agreed upon by the parties prior to Closing
91 Date, failing which, request will be made to the County Property Appraiser for an informal assessment taking into consideration
92 available exemptions. If the County Property Appraiser is unable or unwilling to perform an informal assessment prior to Closing
93 Date, Buyer and Seller will split the cost of a private appraiser to perform an assessment prior to Closing Date. Nothing in this
94 paragraph shall act to extend the Closing Date. This provision shall survive closing.
95 **(e) Special Assessment by Public Body:** Regarding special assessments imposed by a public body, Seller will pay (i) the full
96 amount of liens that are certified, confirmed and ratified before closing and (ii) the amount of the last estimate of the assessment
97 if an improvement is substantially completed as of Effective Date but has not resulted in a lien before closing, and Buyer will pay
98 all other amounts. If special assessments may be paid in installments ☐ Buyer ☒ Seller (if left blank, Buyer) shall pay
99 installments due after closing. If Seller is checked, Seller will pay the assessment in full prior to or at the time of closing. Public
100 body does not include a Homeowner Association or Condominium Association.
101 **(f) Tax Withholding:** Buyer and Seller will comply with the Foreign Investment in Real Property Tax Act, which may require
102 Seller to provide additional cash at closing if Seller is a "foreign person" as defined by federal law.
103 **(g) Home Warranty:** ☐ Buyer ☐ Seller ☒ N/A will pay for a home warranty plan issued by _____ at a
104 cost not to exceed $ _____. A home warranty plan provides for repair or replacement of many of a home's mechanical
105 systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement period.

106                               **PROPERTY CONDITION**
107 **6. INSPECTION PERIODS:** Buyer will complete the inspections referenced in Paragraphs 7 and 8(a)(2) by _Nov 30, 2007_
108 _____ (the earlier of 10 days after the Effective Date or 5 days prior to Closing Date if left blank) ("Inspection Period");
109 the wood-destroying organism inspection by _Nov 30_, _2007_ (at least 5 days prior to closing. If left
110 blank); and the walk-through inspection on the day before Closing Date or any other time agreeable to the parties; and the
111 survey referenced in Paragraph 10(c) by _____ (at least 5 days prior to closing if left blank).

112 Buyer (_CB_) (_KE_) and Seller (_DC_) (____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.
FAR-9   4/07   ©2007   Florida Association of REALTORS®   All Rights Reserved

7. **REAL PROPERTY DISCLOSURES:** Seller represents that Seller does not know of any facts that materially affect the value of the Property, including but not limited to violations of governmental laws, rules and regulations, other than those that Buyer can readily observe or that are known by or have been disclosed to Buyer.

   (a) **Energy Efficiency:** Buyer acknowledges receipt of the energy-efficiency information brochure required by Section 553.996, Florida Statutes.

   (b) **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit. Buyer may, within the Inspection Period, have an appropriately licensed person test the Property for radon. If the radon level exceeds acceptable EPA standards, Seller may choose to reduce the radon level to an acceptable EPA level, failing which either party may cancel this Contract.

   (c) **Flood Zone:** Buyer is advised to verify by survey, with the lender and with appropriate government agencies which flood zone the Property is in, whether flood insurance is required and what restrictions apply to improving the Property and rebuilding in the event of casualty. If the Property is in a Special Flood Hazard Area or Coastal High Hazard Area and the buildings are built below the minimum flood elevation, Buyer may cancel this Contract by delivering written notice to Seller within 20 days from Effective Date, failing which Buyer accepts the existing elevation of the buildings and zone designation of the Property.

   (d) **Homeowners' Association:** If membership in a homeowners' association is mandatory, an association disclosure summary is attached and incorporated into this Contract. **BUYER SHOULD NOT SIGN THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE DISCLOSURE SUMMARY.**

   (e) **PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.**

   (f) **Mold:** Mold is part of the natural environment that, when accumulated in sufficient quantities, may present health risks to susceptible persons. For more information, contact the county indoor air quality specialist or other appropriate professional.

   (g) **Coastal Construction Control Line:** If any part of the Property lies seaward of the coastal construction control line as defined in Section 161.053 of the Florida Statutes, Seller shall provide Buyer with an affidavit or survey as required by law delineating the line's location on the Property, unless Buyer waives this requirement in writing. The Property being purchased may be subject to coastal erosion and to federal, state, or local regulations that govern coastal property, including delineation of the coastal construction control line, rigid coastal protection structures, beach nourishment, and the protection of marine turtles. Additional information can be obtained from the Florida Department of Environmental Protection, including whether there are significant erosion conditions associated with the shoreline of the Property being purchased.
☐ Buyer waives the right to receive a CCCL affidavit or survey.

8. **MAINTENANCE, INSPECTIONS AND REPAIR:** Seller will keep the Property in the same condition from Effective Date until closing, except for normal wear and tear ("Maintenance Requirement") and repairs required by this Contract. Seller will provide access and utilities for Buyer's inspections. Buyer will repair all damages to the Property resulting from the inspections, return the Property to its pre-inspection condition and provide Seller with paid receipts for all work done on Property upon its completion. If Seller is unable to complete required repairs or treatments or meet the Maintenance Requirement prior to closing, Seller will give Buyer a credit at closing for the cost of the repairs and maintenance Seller was obligated to perform. At closing, Seller will assign all assignable repair and treatment contracts to Buyer and provide Buyer with paid receipts for all work done on the Property pursuant to the terms of this Contract. At closing, Seller will provide Buyer with any written documentation that all open permits have been closed out and that Seller has obtained required permits for improvements to the Property.

   (a) **Warranty, Inspections and Repair:**

      (1) **Warranty:** Seller warrants that non-leased major appliances and heating, cooling, mechanical, electrical, security, sprinkler, septic and plumbing systems, seawall, dock and pool equipment, if any, are and will be maintained in working condition until closing; that the structures (including roofs, doors and windows) and pool, if any, are structurally sound and watertight; and that torn or missing screens and missing roof tiles will be repaired or replaced. Seller warrants that all open permits will be closed out and that Seller will obtain any required permits for improvements to the Property prior to Closing Date. Seller does not warrant and is not required to repair cosmetic conditions, unless the cosmetic condition resulted from a defect in a warranted item. Seller is not obligated to bring any item into compliance with existing building code regulations unless necessary to repair a warranted item. "Working condition" means operating in the manner in which the item was designed to operate and "cosmetic conditions" means aesthetic imperfections that do not affect the working condition of the item, including pitted marcite; tears, worn spots and discoloration of floor coverings/wallpapers/window treatments; nail holes, scratches, dents, scrapes, chips and caulking in bathroom ceiling/walls/flooring/tile/fixtures/mirrors; cracked roof tiles; curling or worn shingles; and minor cracks in floor tiles/windows/driveways/sidewalks/pool decks/garage and patio floors.

      (2) **Professional Inspection:** Buyer may, at Buyer's expense, have warranted items inspected by a person who specializes in and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida license to repair and maintain the items inspected ("professional inspector"). Buyer must, within 5 days from the end of the Inspection Period, deliver written notice of any items that are not in the condition warranted and a copy of the portion of

Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.
FAR-9   4/07   © 2007   Florida Association of Realtors®   All Rights Reserved

176   inspector's written report dealing with such items to Seller. If Buyer fails to deliver timely written notice, Buyer waives
177   Seller's warranty and accepts the items listed in subparagraph (a) in their "as is" conditions, except that Seller must meet
178   the maintenance requirement.
179   (3) Repair: Seller will obtain repair estimates and is obligated only to make repairs necessary to bring warranted items
180   into the condition warranted, up to the Repair Limit. Seller may, within 5 days from receipt of Buyer's notice of items
181   that are not in the condition warranted, have a second inspection made by a professional inspector and will report
182   repair estimates to Buyer. If the first and second inspection reports differ and the parties cannot resolve the differences,
183   Buyer and Seller together will choose, and equally split the cost of, a third inspector, whose written report will be
184   binding on the parties. If the cost to repair warranted items equals or is less than the Repair Limit, Seller will have the
185   repairs made in a workmanlike manner by an appropriately licensed person. If the cost to repair warranted items
186   exceeds the Repair Limit, either party may cancel this Contract unless either party pays the excess or Buyer
187   designates which repairs to make at a total cost to Seller not exceeding the Repair Limit and accepts the balance of
188   the Property in its "as is" condition.
189   (4) Permits: Seller shall close out any open permits and remedy any violation of any governmental entity, including
190   but not limited to, obtaining any required permits for improvements to the Property, up to the Permit Limit, and with final
191   inspections completed no later than 5 days prior to Closing Date. If final inspections cannot be performed due to delays
192   by the governmental entity, Closing Date shall be extended for up to 10 days to complete such final inspections, failing
193   which, either party may cancel this Contract and Buyer's deposit shall be refunded. If the cost to close out open
194   permits or to remedy any violation of any governmental entity exceeds the Permit Limit, either party may cancel the
195   Contract unless either party pays the excess or Buyer accepts the Property in its "as is" condition and Seller credits
196   Buyer at closing the amount of the Permit Limit.
197   (b) Wood-Destroying Organisms: "Wood-destroying organism" means arthropod or plant life, including termites, powder-post
198   beetles, oldhouse borers and wood-decaying fungi, that damages or infests seasoned wood in a structure, excluding fences.
199   Buyer may, at Buyer's expense, have the Property inspected by a Florida-licensed pest control business to determine the
200   existence of past or present wood-destroying organism infestation and damage caused by infestation. If the inspector finds
201   evidence of infestation or damage, Buyer will deliver a copy of the inspector's written report to Seller within 5 days from the date
202   of the inspection. If Seller previously treated the Property for the type of wood-destroying organisms found, Seller does not have
203   to treat the Property again if (i) there is no visible live infestation, and (ii) Seller transfers to Buyer at closing a current full treatment
204   warranty for the type of wood-destroying organisms found. Otherwise, Seller will have 5 days from receipt of the inspector's
205   report to have reported damage estimated by a licensed building or general contractor and corrective treatment estimated by a
206   licensed pest control business. Seller will have treatments and repairs made by an appropriately licensed person at Seller's
207   expense up to the WDO Repair Limit. If the cost to treat and repair the Property exceeds the WDO Repair Limit, either party may
208   pay the excess, failing which either party may cancel this Contract by written notice to the other. If Buyer fails to timely deliver the
209   inspector's written report, Buyer accepts the Property "as is" with regard to wood-destroying organism infestation and damage,
210   subject to the maintenance requirement.
211   (c) Walk-through Inspection/Reinspection: Buyer, and/or Buyer's representative, may walk through the Property solely
212   to verify that Seller has made repairs required by this Contract, has met the Maintenance Requirement and has met
213   contractual obligations. If Buyer, and/or Buyer's representative, fails to conduct this inspection, Seller's repair obligations
214   and Maintenance Requirement will be deemed fulfilled.

215   9. RISK OF LOSS: If any portion of the Property is damaged by fire or other casualty before closing and can be restored by the
216   Closing Date or within 45 days after the Closing Date to substantially the same condition as it was on Effective Date, Seller,
217   will, at Seller's expense, restore the Property and deliver written notice to Buyer that Seller has completed the restoration, and
218   the parties will close the transaction on the later of: (1) Closing Date; or, (2) 10 days after Buyer's receipt of Seller's notice.
219   Seller will not be obligated to replace trees. If the restoration cannot be completed in time, Buyer may cancel this Contract
220   and Buyer's deposit shall be refunded, or Buyer may accept the Property "as is", and Seller will credit the deductible and
221   assign the insurance proceeds, if any, to Buyer at closing in such amounts as are (i) attributable to the Property and (ii) not yet
222   expended in restoring the Property to the same condition as it was on Effective Date.

223                                                     TITLE
224   10. TITLE: Seller will convey marketable title to the Property by statutory warranty deed or trustee, personal representative or
225   guardian deed as appropriate to Seller's status.
226   (a) Title Evidence: Title evidence will show legal access to the Property and marketable title of record in Seller in accordance with
227   current title standards adopted by the Florida Bar, subject only to the following title exceptions, none of which prevent residential
228   use of the Property: covenants, easements and restrictions of record; matters of plat; existing zoning and government regulations;
229   oil, gas and mineral rights of record if there is no right of entry; current taxes; mortgages that Buyer will assume; and
230   encumbrances that Seller will discharge at or before closing. Seller will, at least 2 days prior to closing, deliver to Buyer Seller's
231   choice of one of the following types of title evidence, which must be generally accepted in the county where the Property is located
232   (specify in Paragraph 5(c) the selected type). Seller will use option (1) in Palm Beach County and option (2) in Miami-Dade County.
233   (1) A title insurance commitment issued by a Florida-licensed title insurer in the amount of the purchase price and
234   subject only to title exceptions set forth in this Contract.
235   (2) An existing abstract of title from a reputable and existing abstract firm (if firm is not existing, then abstract must be
236   certified as correct by an existing firm) purporting to be an accurate synopsis of the instruments affecting title to the
237   Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.
FAR-8   4/07   © 2007   Florida Association of Realtors®   All Rights Reserved

238  Property recorded in the public records of the county where the Property is located and certified to Effective Date.
239  However, if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed
240  insurer as a base for reissuance of coverage. Seller will pay for copies of all policy exceptions and an update in a format
241  acceptable to Buyer's closing agent from the policy effective date and certified to Buyer or Buyer's closing agent,
242  together with copies of all documents recited in the prior policy and in the update. If a prior policy is not available to
243  Seller then (1) above will be the title evidence. Title evidence will be delivered no later than 10 days before Closing Date.
244  (b) **Title Examination:** Buyer will examine the title evidence and deliver written notice to Seller, within 5 days from receipt of
245  title evidence but no later than Closing Date, of any defects that make the title unmarketable. Seller will have 30 days from
246  receipt of Buyer's notice of defects ("Curative Period") to cure the defects at Seller's expense. If Seller cures the defects
247  within the Curative Period, Seller will deliver written notice to Buyer and the parties will close the transaction on Closing
248  Date or within 10 days from Buyer's receipt of Seller's notice if Closing Date has passed. If Seller is unable to cure the
249  defects within the Curative Period, Seller will deliver written notice to Buyer and Buyer will, within 10 days from receipt of
250  Seller's notice, either cancel this Contract or accept title with existing defects and close the transaction.
251  (c) **Survey:** Buyer may, at Buyer's expense, have the Property surveyed and deliver written notice to Seller, within 5 days from
252  receipt of survey but no later than closing, of any encroachments on the Property, encroachments by the Property's improvements
253  on other lands or deed restriction or zoning violations. Any such encroachment or violation will be treated in the same manner as a
254  title defect and Buyer's and Seller's obligations will be determined in accordance with subparagraph (b) above.

255
                                                     **MISCELLANEOUS**
256  **11. EFFECTIVE DATE; TIME; FORCE MAJEURE:**
257  (a) **Effective Date:** The "Effective Date" of this Contract is the date on which the last of the parties initials or signs and
258  delivers the final offer or counteroffer. Time is of the essence for all provisions of this Contract.
259  (b) **Time:** All time periods will be computed in business days (a "business day" is every calendar day except Saturday, Sunday
260  and national legal holidays). If any deadline falls on a Saturday, Sunday or national legal holiday, performance will be due the
261  next business day. All time periods will end at 5:00 p.m. local time (meaning in the county where the Property is
262  located) of the appropriate day.
263  (c) **Force Majeure:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to
264  each other for damages so long as the performance or non-performance of the obligation is delayed, caused or prevented
265  by an act of God or force majeure. An "act of God" or "force majeure" is defined as hurricanes, earthquakes, floods, fire,
266  unusual transportation delays, wars, insurrections and any other cause not reasonably within the control of the Buyer or
267  Seller and which by the exercise of due diligence the non-performing party is unable in whole or in part to prevent or
268  overcome. All time periods, including Closing Date, will be extended (not to exceed 30 days) for the period that the force
269  majeure or act of God is in place. In the event that such "act of God" or "force majeure" event continues beyond the 30
270  days in this sub-paragraph, either party may cancel the Contract by delivering written notice to the other and Buyer's
271  deposit shall be refunded.

272  **12. NOTICES:** All notices shall be in writing and will be delivered to the parties and Broker by mail, personal delivery or electronic
273  media. Except for the notices required by Paragraph 3 of this Contract, Buyer's failure to deliver timely written notice to
274  Seller, when such notice is required by this Contract, regarding any contingencies will render that contingency null and
275  void and the Contract will be construed as if the contingency did not exist. Any notice, document or item delivered to
276  or received by an attorney or licensee (including a transaction broker) representing a party will be as effective as if
277  delivered to or by that party.

278  **13. COMPLETE AGREEMENT:** This Contract is the entire agreement between Buyer and Seller. Except for brokerage
279  agreements, no prior or present agreements will bind Buyer, Seller or Broker unless incorporated into this Contract.
280  Modifications of this Contract will not be binding unless in writing, signed or initialed and delivered by the party to be bound.
281  Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically
282  or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms
283  inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or
284  unenforceable, all remaining provisions will continue to be fully effective. Buyer and Seller will use diligence and good faith in
285  performing all obligations under this Contract. This Contract will not be recorded in any public records.

286  **14. ASSIGNABILITY; PERSONS BOUND:** Buyer may not assign this Contract without Seller's written consent. The terms
287  "Buyer," "Seller," and "Broker" may be singular or plural. This Contract is binding on the heirs, administrators, executors,
288  personal representatives and assigns (if permitted) of Buyer, Seller and Broker.

289
                                              **DEFAULT AND DISPUTE RESOLUTION**
290  **15. DEFAULT:** (a) **Seller Default:** If for any reason other than failure of Seller to make Seller's title marketable after diligent effort, Seller
291  fails, refuses or neglects to perform this Contract, Buyer may choose to receive a return of Buyer's deposit without waiving the right to
292  seek damages or to seek specific performance as per Paragraph 16. Seller will also be liable to Broker for the full amount of the
293  brokerage fee. (b) **Buyer Default:** If Buyer fails to perform this Contract within the time specified, including timely payment of all deposits,
294  Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated damages or to seek specific performance as

295  Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.
FAR-9    4/07    ©2007    Florida Association of Realtors®    All Rights Reserved

296 per Paragraph 16; and Broker will, upon demand, receive 50% of all deposits paid and agreed to be paid (to be split equally among
297 Broker) up to the full amount of the brokerage fee.

298 **16. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims and other matters in
299 question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
300 (a) **Disputes concerning entitlement to deposits made and agreed to be made:** Buyer and Seller will have 30 days from the
301 date conflicting demands are made to attempt to resolve the dispute through mediation. If that fails, Escrow Agent will
302 submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court or the Florida Real
303 Estate Commission ("FREC"). Buyer and Seller will be bound by any resulting award, judgment or order. A broker's
304 obligation under Chapter 475, FS and the FREC rules to timely notify the FREC of an escrow dispute and timely resolve the
305 escrow dispute through mediation, arbitration, interpleader or an escrow disbursement order, if the broker so chooses,
306 applies to brokers only and does not apply to title companies, attorneys or other escrow companies.
307 (b) **All other disputes:** Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to
308 resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration
309 in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not
310 provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact
311 and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the
312 Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes. Any disputes with a real
313 estate licensee or firm named in Paragraph 19 will be submitted to arbitration only if the licensee's broker consents in
314 writing to become a party to the proceeding. This clause will survive closing.
315 (c) **Mediation and Arbitration; Expenses:** "Mediation" is a process in which parties attempt to resolve a dispute by
316 submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a
317 settlement on the parties. Mediation will be in accordance with the rules of the American Arbitration Association ("AAA") or
318 other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a process in
319 which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is
320 binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the
321 parties. Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will equally
322 split the arbitrators' fees and administrative fees of arbitration.

323                                    **ESCROW AGENT AND BROKER**
324 **17. ESCROW AGENT:** Buyer and Seller authorize Escrow Agent to receive, deposit and hold funds and other items in escrow and,
325 subject to clearance, disburse them upon proper authorization and in accordance with Florida law and the terms of this Contract,
326 including disbursing brokerage fees. The parties agree that Escrow Agent will not be liable to any person for misdelivery of escrowed
327 items to Buyer or Seller, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence. If Escrow
328 Agent interpleads the subject matter of the escrow, Escrow Agent will pay the filing fees and costs from the deposit and will recover
329 reasonable attorneys' fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court costs in
330 favor of the prevailing party. All claims against Escrow Agent will be arbitrated, so long as Escrow Agent consents to arbitrate.

331 **18. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify all facts and representations that are
332 important to them and to consult an appropriate professional for legal advice (for example, interpreting contracts, determining the
333 effect of laws on the Property and transaction, status of title, foreign investor reporting requirements, the effect of property lying
334 partially or totally seaward of the coastal construction control line, etc.) and for tax, property condition, environmental and other
335 specialized advice. Buyer acknowledges that Broker does not reside in the Property and that all representations (oral, written or
336 otherwise) by Broker are based on Seller representations or public records. Buyer agrees to rely solely on Seller, professional
337 inspectors and governmental agencies for verification of the Property condition, square footage and facts that materially affect
338 Property value. Buyer and Seller respectively will pay all costs and expenses, including reasonable attorneys' fees at all levels,
339 incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from Buyer's or Seller's
340 misstatement or failure to perform contractual obligations. Buyer and Seller hold harmless and release Broker and Broker's officers,
341 directors, agents and employees from all liability for loss or damage based on (1) Buyer's or Seller's misstatement or failure to
342 perform contractual obligations; (2) Broker's performance, at Buyer's and/or Seller's request, of any task beyond the scope of
343 services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor; (3)
344 products or services provided by any vendor; and (4) expenses incurred by any vendor. Buyer and Seller each assume full
345 responsibility for selecting and compensating their respective vendors. This paragraph will not relieve Broker of statutory obligations.
346 For purposes of this paragraph, Broker will be treated as a party to this Contract. This paragraph will survive closing.

347 **19. BROKERS:** The licensee(s) and brokerage(s) named below are collectively referred to as "Broker." Instruction to Closing
348 Agent: Seller and Buyer direct closing agent to disburse at closing the full amount of the brokerage fees as specified in separate
349 brokerage agreements with the parties and cooperative agreements between the brokers, except to the extent Broker has
350 retained such fees from the escrowed funds. In the absence of such brokerage agreements, closing agent will disburse
351 brokerage fees as indicated below. This paragraph will not be used to modify any MLS or other offer of compensation made by
352 Seller or listing broker to cooperating brokers.

353 Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.
FAR-9  4/07   © 2007   Florida Association of Realtors®   All Rights Reserved

354 _____B.R. Poirier_____         _____Re/Max Masterpiece_____
355 Selling Sales Associate/License No.              Selling Firm/Brokerage Fee (% or $ of Purchase Price)

356 _____Paul Labossiere_____       _____Re/Max 100 Riverside_____
357 Listing Sales Associate/License No.              Listing Firm/Brokerage Fee (% or $ of Purchase Price)

358                         **ADDENDA AND ADDITIONAL TERMS**
359 **20. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this Contract (check if
360 applicable):

- ☐ A. Condo. Assn.
- ☑ H. As Is w/Right to Inspect
- ☐ O. Interest-Bearing Account
- ☐ V. Prop. Disclosure Stmt.
- ☐ B. Homeowners' Assn.
- ☐ I. Inspections
- ☐ P. Back-up Contract
- ☐ W. FIRPTA
- ☐ C. Seller Financing
- ☐ J. Insulation Disclosure
- ☐ Q. Broker - Pers. Int. in Prop.
- ☐ X. 1031 Exchange
- ☐ D. Mort. Assumption
- ☐ K. Pre-1978 Housing Stmt. (LBP)
- ☐ R. Rentals
- ☐ Y. Additional Clauses
- ☐ E. FHA Financing
- ☐ L. Insurance
- ☐ S. Sale/Lease of Buyer's Property
- ☐ F. VA Financing
- ☐ M. Housing Older Persons
- ☐ T. Rezoning
- ☑ Other ___REMAX___
- ☐ G. New Mort. Rates
- ☐ N. Lease purchase/Lease option
- ☐ U. Assignment
- ☐ Other _____

366 **21. ADDITIONAL TERMS:**

Buyer to purchase and install their
own carpet and appliances there

_Buyer ___ and Seller ___ acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages._

Case 2:09-md-02047-EEF-MBN   Document 5748-5   Filed 10/05/10   Page 10 of 14

Sep 15 10 04:02p    CLOUTIER BROTHERS, INC.              561-790-1575          p.8
2007-11-23 21:21    Realtorori          7728079009 >>    772 343 9603          P.11/15

411   This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.

412                              **OFFER AND ACCEPTANCE**
413   (Check if applicable: ☐ Buyer received a written real property disclosure statement from Seller before making this Offer.)
414   Buyer offers to purchase the Property on the above terms and conditions. Unless this Contract is signed by Seller and a copy
415   delivered to Buyer no later than ____5:00____ ☐ a.m. ☒ p.m. on __11/24__, __2007__, this offer will be revoked
416   and Buyer's deposit refunded subject to clearance of funds.

417                              **COUNTER OFFER/REJECTION**
418   ☐ Seller counters Buyer's offer (to accept the counter offer, Buyer must sign or initial the counter offered terms and deliver a copy
419   of the acceptance to Seller. Unless otherwise stated, the time for acceptance of any counteroffers shall be 2 days from the
420   date the counter is delivered. ☐ Seller rejects Buyer's offer.

421   Date: 11/23/07         Buyer: _[signature]_
422                          Print name: _Heymon Brinth_

423   Date: 11/23/07         Buyer: _[signature]_
424   Phone: _____        Print name: _Regine Brinth_
425   Fax: _____        Address: 100 S.W. 96th Terr.
426   E-mail: _____                 Pembroke Pines, Florida 33025

427   Date: 11/26/07         Seller: _Dale Cloutier_
428                          Print name: _Dale Cloutier_

429   Date: _____       Seller: _____
430   Phone: _____       Print name: _____
431   Fax: _____        Address: _____
432   E-mail: _____

433   Effective Date: _____ (The date on which the last party signed or initialed and delivered the final offer or counteroffer.)

434   Buyer (____)(____) and Seller (_DC_)(____) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

The Florida Association of Realtors and local Board/Association of Realtors make no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.
FAR-9   4/07   ©2007   Florida Association of REALTORS®   All Rights Reserved

1  The clause below will be incorporated into the Contract between __DNR Landwest__ (Seller)
2  and __Gregorio Reyes Brown__ (Buyer) concerning the Property described as
3  __4847 SW McClellan St__ only if initialed by all parties:

**PROPERTY**

5  (AR)(GB) - (DL___) H. **As Is With Right to Inspect:** This clause replaces Paragraphs 6 and 8 of the Contract but
6  does not modify or replace Paragraph 9. Paragraph 5(a) Repair, WDO and Permit Limits are 0%. **Seller** makes no warranties
7  other than marketability of title. Seller will keep the Property in the same condition from Effective Date until closing, except for
8  normal wear and tear ("Maintenance Requirement"), and will convey the Property in its "as is" condition with no obligation to
9  make any repairs. Buyer may, at Buyer's expense, by _____ ("Inspection Period") (within 10 days
10 from Effective Date if left blank) make any and all inspections of the Property. The inspection(s) will be by a person who
11 specializes in and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida license
12 to repair and maintain the items inspected. Buyer may cancel this Contract by delivering written notice to Seller within ___ days
13 (within 5 days if left blank) from the end of the Inspection Period if the cost of treatment and repairs estimated by Buyer's
14 inspector(s) is greater than $_____ ($250.00 if left blank) or if Buyer's inspection(s) reveal open permits or that
15 improvements have been made to the Property without required permits. For the cancellation to be effective, Buyer must include
16 in the written notice a copy of the portions of the inspector's written report dealing with the items to be repaired, and treatment
17 and repair estimates from the inspector or person(s) holding an appropriate Florida license to repair the items inspected or any
18 written documentation of open permit(s) or permit(s) that have not been obtained if a permit is required. Any conditions not
19 reported in a timely manner will be deemed acceptable to Buyer. If Buyer fails to timely conduct any inspection which Buyer is
20 entitled to make under this paragraph, Buyer waives the right to the inspection and accepts the Property "as is." Seller will
21 provide access and utilities for Buyer's inspections. Buyer will repair all damages to the Property resulting from the inspections
22 and return the Property to its pre-inspection condition. Buyer and/or Buyer's representative may, on the day before Closing Date
23 or any other time agreeable to the parties, walk through the Property solely to verify that Seller has fulfilled the Maintenance
24 Requirement and the contractual obligations.

25 Buyer (AR)(___) and Seller (DL)(___) acknowledge receipt of a copy of this page.
26 FARA-2   4/07   ©2007   Florida Association of Realtors®   All Rights Reserved

Page ___ of Addendum No. ___



Case 2:09-md-02047-EEF-MBN   Document 5748-5   Filed 10/05/10   Page 12 of 14

Sep 15 10 04:03p    CLOUTIER BROTHERS, INC.          561-790-1575          p.10
2007-11-23 21:22    Realtorori        7728079009 >>    772 343 9603          P 14/15

## Mold Inspection Addendum to Contract
FLORIDA ASSOCIATION OF REALTORS®

The following provisions are made a part of the Contract for Sale and Purchase or Residential Sale and Purchase Contract between ___David R Lenfesty LLC_____ (Seller) and ___Alexander & Regina Brown_____ (Buyer) concerning the Property located at ___4357 S.W. McClellan St. Palm City FL 34990___

1. Buyer, at Buyer's expense, may have a qualified professional conduct an inspection of the Property for mold within ___10___ days from the Effective Date ("Mold Inspection Period").

2. Buyer shall be responsible for prompt payment for such inspections and repair of damage to and restoration of the Property resulting from such inspections. This provision shall survive termination of the Contract.

3. In the event the mold inspection reveals a significant presence of mold in the Property, which requires professionals to remove the mold, at a cost which exceeds $___100___, Buyer may cancel the Contract by delivering written notice of such election no later than 48 hours after expiration of the Mold Inspection Period. If Buyer timely cancels the Contract, the deposits paid shall be immediately returned to Buyer and Buyer and Seller shall be released from further obligations under the Contract, except as provided in subparagraph 2 above.

4. If Buyer fails to conduct the inspection permitted in this Paragraph or having conducting such inspections, fails to timely notify the Seller of Buyer's intent to cancel this Contract or if the mold inspection does not reveal significant presence of mold in the Property which requires professional remediation to remove the mold, at a cost which exceeds the sum specified in Paragraph 3 above, Buyers may not terminate this Contract pursuant to this Addendum.

Seller: _Dale Clou___ (signature) / _Dale Cloutier_ (print)   Date: _11-26-07_

Seller: _____ (signature) / _____ (print)   Date: _____

Buyer: _[signature]___ (signature) / _Alexand Brown_ (print)   Date: _11-23-07_

Buyer: _Regina Brown_ (signature) / _Regina Brown_ (print)   Date: _11-23-07_

MIAC-1   Rev. 10/02   © 2002 Florida Association of REALTORS®   All Rights Reserved
This software is licensed to [Kathy Slusser - RE/MAX Masterpiece Realty] www.transactiondesk.com   Instanet forms



Masterpiece Realty
916 SW Glenview Court
Port St. Lucie, FL 34953
Office: 772-340-2700/FAX: 772-344-1390

## SPECIAL CLAUSES

The Seller(s) disclose and the Buyer(s) is made aware that the City of Port St. Lucie is expanding water and sewer services throughout the city. Buyer acknowledges that the subject property is located in a special assessment district and is now or will be subject to a special assessment lien for certain improvements in that district. Buyer agrees to take title subject to and be solely responsible for payment or assumption of any assessment, connection fee (Capital Charge Agreement), transfer fee ($225 as of 1/1/06) or usage fee established whether or not said assessment is pending, certified, ratified, is confirmed prior to the date of closing, and the Buyer specifically releases the Seller of any requirement for payment on said special assessment with the specific understanding that this clause supersedes and controls over the provision set forth in standard M of the Contract for Sale and Purchase. In the event Buyer is using FHA/VA financing, all parties are made aware that property must be hooked to water and sewer and that the hookup can take 10-12 weeks.

Release from liability: If Buyer and/or Seller request Broker to perform any task which is beyond the scope of services regulated by Chapter 475, F.S., as amended, including referring, recommending or retaining a vendor to or on behalf of either party, then as consideration for Broker performing the task, Buyer and Seller hold Broker harmless and release Broker for all liability for loss or damage, whether caused by Broker's negligence or otherwise, in connection with (1) Broker's recommendation performance of the task (2) Broker's referral, or retention of any vendor, (3) services or products provided by any vendor, and (4) expenses incurred by any vendor unless Broker agrees, in writing and for valuable consideration, to accept liability for the task. Buyer and Seller each assume full responsibility for selecting and compensating vendors. For purposes of this paragraph, Broker will be treated as a party to this Contract. This paragraph will survive closing.

_____    Date 11/26/07
Seller

_____    Date _____
Seller

_____    Date 11/11/2007
Buyer

_____    Date 11/11/2007
Buyer



**SELLER'S NAME:** D and R Landvest
**PROPERTY ADDRESS:** 4297 SW Mc Clellan
Port St Lucie, FL

**SELLER'S CREDITS**
SALE PRICE .................................................. $225,000
TOTAL CREDITS ............................................. $225,000

**MONIES/DEBT OWED ON PROPERTY**
TOTAL PAYOFFS .............................................. $0

NET EQUITY IN PROPERTY (Total Credits minus Total Payoffs) ... $225,000

**ESTIMATED SELLING CLOSING COSTS**
Brokerage Fee ............................................... $13,500
Owner's Title Insurance ..................................... 1,238
State Doc Stamps on Deed .................................... 1,575
Real estate Processing Fee .................................. 395
Search Exam and Closing ..................................... 300
APPROXIMATE TOTAL COSTS ..................................... $17,008

ESTIMATE OF SELLER'S PROCEEDS ............................... $207,992

The above information has been obtained from sources believed to be reliable. However, the data is for the information of parties only and is not warranted by this company as to the accuracy or completeness. All the data are estimated and are subject to change.

I HAVE READ THE ABOVE FIGURES AND ACKNOWLEDGE RECEIPT OF A COPY OF THIS FORM.

_Dale [signature]_
SELLER                                    SELLER

PRESENTED BY                      DATE              PHONE NO.