**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:   CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO.:  2047 |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *Pate v. American International Specialty Lines Insurance Company, et al.* (09-7791) | MAGISTRATE JUDGE WILKINSON |
| *Centerline Homes Construction, Inc., et al. v. Mid-Continent Casualty Co., et al.* (10-178) | |
| *Northstar Holdings, Inc., et al. v. General Fidelity, Inc., Co.* (10-384) | |

**PLAINTIFFS' AND PSC'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**
**FOR FAILURE TO JOIN INDISPENSABLE PARTIES**

Plaintiff, Robert C. Pate, as Trustee for the Chinese Drywall Trust ("Pate"); the Plaintiffs'

Steering Committee (the "PSC"); Plaintiffs, Centerline Homes Construction, Inc., Completed

Communities II, LLC, Centerline Homes at Georgetown, LLC, and Centerline Homes, Inc.

("Centerline"); and Plaintiffs, Northstar Holdings, Inc., Northstar Homes, Inc., and Northstar

Holdings at B&A, LLC ("Northstar") (collectively, "Plaintiffs") respectfully request that this Court

deny the motions to dismiss for failure to join indispensable parties of Defendants American

Guarantee and Liability Insurance Company ("American Guarantee") (Docket No. 2641);

Amerisure Mutual Insurance Company and Amerisure Insurance Company (jointly, "Amerisure")

(Docket Nos. 2174, 2567); Chartis Specialty Insurance Company ("Chartis") (f/k/a American

International Specialty Lines Insurance Company) (Docket No. 4508); FCCI Commercial Insurance

Company and FCCI Insurance Company (jointly, "FCCI") (Docket No. 2148); Landmark American

Insurance Company ("Landmark") (Docket No. 2150); Mid-Continent Casualty Company ("Mid-

Continent") (Docket Nos. 2156, 2282, 2843); National Union Insurance Company of Pittsburgh, P.A. ("National Union") (Docket No. 2155); and NGM Insurance Company ("NGM") (Docket No. 3174) (collectively, the "Defendants").[1]

Defendants' motions improperly utilize Federal Rule of Civil Procedure 19 as a dismissal device. In the proceedings at issue, Plaintiffs seek insurance coverage under two types of insurance policies: (1) insurance policies that were sold directly to WCI Communities, Inc., Centerline, and Northstar and (2) insurance policies that Defendants sold to subcontractors and under which WCI Communities, Inc., Centerline, and Northstar are named or additional insureds. Defendants ignore the first category of insurance policies. Instead, they attempt to obtain dismissal of the entirety of Plaintiffs' actions based on the absence of the subcontractors to whom only part of the insurance coverage at issue was sold. *Pate v. American Int'l Specialty Lines et al.*, for example, concerns $164 million dollars in insurance coverage sold directly to WCI Communities, Inc. As demonstrated below, the Court should not allow the Defendants to obtain dismissal of Plaintiffs' actions based on a futile and erroneous legal argument that concerns only a fraction of the insurance coverage at issue.

Plaintiffs' actions – as currently styled – name all required parties. Defendants purposefully misconstrue the nature of the relief that Plaintiffs seek in their complaints. Plaintiffs' actions

---

[1] The following insurance company defendants opted not to join the Defendants' motions to dismiss for failure to join indispensable parties: Chartis Claims, Inc. ("Chartis Claims"); Hartford Accident & Indemnity Company ("Hartford"); Hermitage Insurance Company ("Hermitage"); Illinois Union Insurance Company ("Illinois Union"); Lexington Insurance Company ("Lexington"); Ohio Casualty Company ("Ohio Casualty"); Owners Insurance Company ("Owners"); Scottsdale Insurance Company ("Scottsdale"); Steadfast Insurance Company ("Steadfast"); West American Insurance Company ("West American"); The Insurance Company of Pennsylvania ("ISOP"); Interstate Fire & Casualty Company ("Interstate Fire"); General Fidelity Insurance Company ("General Fidelity"); Quanta Indemnity Company ("Quanta"), and Essex Insurance Company ("Essex"). Owners, Scottsdale, Hermitage, Hartford, Interstate Fire, and Essex chose not to join in the motions to dismiss based on indispensable parties even though they sold insurance policies to subcontractors and under which WCI Communities, Inc., Centerline, and Northstar are additional or named insureds.

concern solely the rights of Pate, Centerline, and Northstar under the applicable insurance policies, not the rights of the subcontractors.  Furthermore, Defendants' allegations of potential prejudice are unfounded.  Defendants have provided no proof of any claims by the subcontractors under the subject insurance policies, and the majority of the subcontractors are defunct entities that have failed to respond to the numerous duplicative actions the Defendants have filed in Florida.  Finally, dismissal of Plaintiffs' actions would eliminate the most comprehensive vehicles for resolution of these coverage disputes, and instead, encourage piecemeal resolution, promote judicial waste, and possibly deny Plaintiffs of any chance of joining all of the defendants in one forum again.

## BACKGROUND

**I.      THE PATE ACTION**

WCI Communities, Inc. and certain of its subsidiaries (collectively, "WCI") contracted to build and sell homes.  Pate Compl. ¶ 25.[2]  In 2006, WCI began receiving complaints that the Chinese Drywall installed in homes that WCI sold was causing increased rates of corrosion, tarnishing of soft metal and silver, and health-related issues.  *Id.* at ¶¶ 27, 29.

WCI eventually filed for bankruptcy.  *Id.* at ¶¶ 30-31.  The bankruptcy plan created the Chinese Drywall Trust to assume WCI's liability and losses for claims asserted against it for damages related to Chinese Drywall.  *Id.* at ¶ 32.  The Trust maintains the right, title, and interest in the "Insurance Coverage Actions"[3] and the "Chinese Drywall Actions"[4] and the proceeds thereof,

---

[2] "Pate Compl. ¶ __" denotes citations to the First Amended Complaint in the lawsuit styled *Pate v. American International Specialty Lines et al.*, C.A. No. 09-7791 (hereinafter the "Pate Action").  The Pate Complaint is attached hereto as *Exhibit A*.

[3] The Plan defines "Insurance Coverage Actions" as "any rights to indemnification, reimbursement, contribution or other payment under any of the [WCI] Debtors' existing insurance policies, including the [WCI] Debtors' director and officer liability insurance policies, as of the Effective Date that may provide coverage with respect to Allowed Chinese Drywall Claims."

[4] The Plan defines "Chinese Drywall Actions" as "the Causes of Action that the [WCI] Debtors may have against any subcontractor or other Person who installed Chinese drywall in a home built or sold by a [WCI]

*(footnote continued)*

and any right, title, or interest in pursuing and receiving any and all "Insurance Recoveries."[5]  *Id.* at ¶ 33.  Pate, as Trustee, is tasked with prosecuting the Insurance Coverage and Chinese Drywall Actions.  *Id.* at ¶¶ 34-35.

On December 23, 2009, and by amended complaint on March 15, 2010, Pate filed the Pate Action against the Defendants as well as Chartis Claims, Hartford, Hermitage, Illinois Union, Lexington, Ohio Casualty, Old Republic Insurance Company ("Old Republic"),[6] Owners, Scottsdale, Steadfast, and West American.

The Pate Action seeks a declaratory judgment that the defendant insurance companies are obligated to indemnify the Trust for claims arising from the development and sale of homes allegedly containing defective Chinese Drywall (the "Underlying Claims").  *Id.* at ¶¶ 57-60.  The Trust seeks to recover under two types of insurance policies:  (1) insurance policies sold directly to WCI Communities, Inc. (totaling approximately $164 million in coverage) and (2) insurance policies sold to subcontractors under which WCI is a named or additional insured (providing the minority of the coverage sought).  *Id.* at ¶¶ 38-50.  The subcontractors that purchased the policies from the Defendants consist of:  Finest Drywall, Inc.; Distinctive Finishes, LLC; Steven Sweet Drywall, LLC; Swedberg Enterprises, Inc. d/b/a Florida Drywall; 1st Choice Construction, Inc.; Beta Drywall LLC; Supreme Drywall & Metal Framing Co.; SD & Associates; Residential Drywall,

---

Debtor, directly or indirectly, any insurer of any such subcontractor or other Person, any retailer, wholesaler, distributor, manufacturer or provider of Chinese drywall that was installed in a home built or sold by a [WCI] Debtor, directly or indirectly, and/or any insurer of any such retailer, wholesaler, distributor, manufacturer or provider."

[5] The Plan defines "Insurance Recovery," in pertinent part, as "(a) the right to pursue and receive the benefits and proceeds of any insurance policy issued to, owned by, or otherwise providing coverage to any [WCI] Debtor, including any insurance policy owned by any third party on which any [WCI] Debtor is named as an additional insured, with respect to Chinese Drywall Claims; (b) the right to pursue and receive recovery from or as a result of any Insurance Coverage Action; ... [and] (e) the right to pursue and receive any other recovery from an insurance company, in its capacity as such, with respect to Chinese Drywall Claims."

[6] Pate has settled with Old Republic.

Inc.; Hinkle Drywall LLC; and HDS Drywall Services, Inc. *Id.* at ¶ 50. The Pate Action also seeks damages for breach of contract, on account of the insurance companies' failure to acknowledge coverage for the Underlying Claims, and a claim for tortious interference against Chartis Claims, for inducing or causing breach of certain insurance policies that Lexington sold. *Id.* at ¶¶ 62-63, 65-68. Defendants have moved to dismiss the Pate Action, claiming that the aforementioned subcontractors constitute indispensable parties.[7]

## II.     THE CENTERLINE ACTION

One or more of the Centerline entities were and/or are involved in building homes and residential communities in Florida. Centerline Compl. ¶ 9.[8] The owners of certain homes developed and built by Centerline have made claims against Centerline, alleging that the Chinese drywall installed in the homes that they purchased from Centerline is defective and has resulted in bodily injury and property damage to their homes and personal property (the "Chinese Drywall Claims"). Centerline Compl. ¶¶ 11, 13. These Chinese Drywall Claims include lawsuits filed in the State of Florida and the United States District Court for the Eastern District of Louisiana.

On January 26, 2010, Centerline filed the Centerline Action against Mid-Continent, ISOP, Amerisure Insurance Company ("Amerisure"), and Interstate Fire, seeking a declaration of the insurance companies' defense and indemnity obligations to Centerline regarding the Chinese Drywall Claims. Centerline is seeking coverage under the primary and excess policies that Mid-Continent and ISOP sold to Centerline, as well as the primary policies that Interstate Fire,

---

[7] Defendants' "indispensable party" argument under the subcontractor insurance policies does not apply to Pate's claims under the insurance policies sold directly to WCI. Should the Court find that the subcontractors are indispensable parties and order dismissal, Pate's claims under its own insurance policies should remain.

[8] "Centerline Compl. ¶ __" denotes citations to Centerline's complaint in the lawsuit styled *Centerline Homes Construction, Inc., et al. v. Mid-Continent Casualty Co., et al.*, C.A. No. 10-178 (hereinafter the "Centerline Action"). The Centerline Complaint is attached hereto as *Exhibit B*.

Amerisure, and Mid-Continent sold to Centerline's subcontractors, United Framers, Inc. and Ocean

Coast Drywall, Inc., which name Centerline as an additional insured.  The Centerline Action also

seeks damages for breach of contract for the various insurance companies' failure to acknowledge

their defense and indemnity obligations to Centerline.  Amerisure and Mid-Continent have moved

to dismiss the Centerline Action for failing to name United Framers, Inc. as a party in the Centerline

Action.[9]

## III.    THE NORTHSTAR ACTION

Similarly, the Northstar Action is an action by the Northstar entities to construe insurance

company obligations to Northstar under insurance policies sold directly to Northstar by General

Fidelity and Quanta, as well as the policies sold by Mid-Continent and Essex to Northstar's

subcontractor, Precision Drywall, Inc.  *See* Northstar Compl.[10]  Mid-Continent moved to dismiss the

Northstar Action for failing to name Precision Drywall, Inc. as a party in the Northstar Action.

## <u>ARGUMENT</u>

## I.    THE SUBCONTRACTORS ARE NEITHER NECESSARY NOR INDISPENSABLE PARTIES UNDER FEDERAL RULE OF CIVIL PROCEDURE 19, AND THEREFORE, THIS COURT SHOULD DENY THE DEFENDANTS' MOTIONS TO DISMISS

### A.    Federal Rule Of Civil Procedure 19

Application of Federal Rule of Civil Procedure 19 to the Plaintiffs' actions demonstrates that

the subcontractors constitute neither necessary nor indispensable parties, and that the Court should

deny Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(7).  The Rule 19

---

[9] Mid-Continent's "indispensable party" argument under the United Framers policy does not apply to Centerline's claims under the eight primary and excess insurance policies that Mid-Continent sold directly to Centerline.  Should the Court find that United Framers is an indispensable party, the claims applicable to that policy would be dismissed; however, Centerline's claims under its own Mid-Continent policies will remain.

[10] "Northstar Compl. ¶ __" denotes citations to Northstar's complaint in the lawsuit styled *Northstar Holdings, Inc., et al. v. General Fidelity, Inc., Co.*, C.A. No. 10-384 (hereinafter the "Northstar Action"). The Northstar Complaint is attached hereto as *Exhibit C*.

inquiry "is 'highly practical' and 'fact based.'" *KeyBank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, No. 09-497, 2009 WL 4042974, at *5 (M.D. La. Nov. 20, 2009). Under Rule 19, courts conduct a two-pronged analysis to determine whether to dismiss an action for failure to join an absent party. *See HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003).

   1. Required Parties

  First, "[t]he Court must … determine under Rule 19(a) whether a person should be joined to the lawsuit." *Id.* A party is "required" to be joined, if feasible, only if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). "Only if … [a party] is required, or in traditional parlance 'necessary,' does the inquiry proceed to Rule 19(b)." *KeyBank Nat'l Ass'n*, 2009 WL 4042974, at *5; *see, e.g.*, *SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 199 F.R.D. 209, 212 (S.D. Tex. 2001) (after determining that named insureds were not necessary parties under Rule 19(a), the court discontinued its inquiry and did not consider whether joinder was feasible or whether named insureds constituted indispensable parties).

  A named insured does not, as a matter of law, constitute a necessary party to litigation by an additional insured or other named insured under the insurance policy. *See, e.g.*, *SMI-Owen Steel Co., Inc.,* 199 F.R.D. at 212 (holding that named insured general contractors did not constitute necessary parties under Rule 19(a) to litigation by additional insured subcontractor against insurance company); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mason, Perrin & Kanovsky*, 709 F. Supp. 411, 415 (S.D.N.Y. 1989) (absent named insureds did not constitute necessary parties

to lawsuit by insurance company against named insured); *Brown v. Am. Int'l Group, Inc.*, 339 F.

Supp. 2d 336, 343-44 (D. Mass. 2004) (insured directors under directors' and officers' liability

policy were not necessary parties to action of two directors against the insurance company

requesting a declaration of their rights under the insurance policy); *Allstate Ins. Co. v. Daniels*, 87

F.R.D. 1, 4 (W.D. Okla. 1978) (named insured and additional insured of insurance policy were not

necessary parties to insurance company's lawsuit against claimant under policy).

      2.   <u>Indispensable Parties</u>

      Second, if joinder is warranted, but would destroy the court's jurisdiction, then the court

must determine under Rule 19(b) whether to press forward without the party or to dismiss the

litigation because the party is "indispensable." *HS Res., Inc.*, 327 F.3d at 439. "An absentee is

indispensable within the meaning of Rule 19 … if (1) he is necessary; (2) his joinder cannot be

effected; and (3) the court determines that it will dismiss the pending case rather than proceed

without the absentee." *Royal Ins. Co. of Am. v. Caleb V. Smith & Son, Inc.*, No. 90CV651, 1997

WL 835058, at *1, n. 1 (D. Conn. June 16, 1997). The proponent bears the burden of demonstrating

that an absent party is indispensable and that the court should dismiss the action. *SMI-Owen Steel*

*Co.*, 199 F.R.D. at 211. Whether a person or entity constitutes an indispensable party "can only be

determined in the context of particular litigation." *Provident Tradesmens Bank & Trust Co. v.*

*Patterson*, 390 U.S. 102, 118, 88 S.Ct. 733, 742 (1968). In making this determination, courts

consider:

    (1)    the extent to which a judgment rendered in the person's absence might
           prejudice that person or the existing parties;
    (2)    the extent to which any prejudice could be lessened or avoided by
           (A)    protective provisions in the judgment;
           (B)    shaping the relief; or
           (C)    other measures;
    (3)    whether a judgment rendered in the person's absence would be adequate; and
    (4)    whether the plaintiff would have an adequate remedy if the action were
           dismissed for non-joinder.

Fed. R. Civ. P. 19(b).  In assessing these factors, courts determine whether "in equity and good conscience" the action should proceed or be dismissed, and they deem controlling "pragmatic concerns, especially the effect on the parties and on the litigation."  *Smith v. State Farm Fire and Cas. Co.*, 633 F.2d 401, 405 (5th Cir. 1980).  "Rule 19(b) does not assign a relative weight to each of the factors," but rather, "allows the court to determine the emphasis to be placed on each consideration according to the facts of the case and in light of the 'equity and good conscience' test prescribed by the rule."  *Royal Ins. Co. of Am.*, 1997 WL 835058, at *2.  "A party is indispensable only if it would be unjust (against 'equity and good conscience' in the words of the rule) to allow the litigation to proceed in his absence."  *Id.*  "[V]ery few cases should be terminated due to the absence of a non-diverse party unless there has been a reasoned determination that the non-joinder makes resolution of the action impossible."  *Id.* at *4.

A named insured under an insurance policy does not, as a matter of law, constitute an indispensable party.  *Id.* at *3.  "Contrary to … [the] blanket assertion that all insureds are always indispensable parties, courts have held in a variety of circumstances that not all insureds must be joined in a declaratory judgment action."  *Id.*  In fact, courts have consistently rejected the argument that policyholders constitute indispensable parties in actions concerning an insurance company's obligations under the insurance policy it sold.  *See, e.g., Royal*, 1997 WL 835058 at *3 (holding that – in insurance company's declaratory judgment action concerning its duty to defend and indemnify two corporations and an individual – an officer and/or employee for whom the insurance policies at issue may also provide coverage did not constitute an indispensable party); *Okada v. MGIC Indem. Corp.*, 608 F. Supp. 383, 390 (D. Haw. 1985), *overruled on other grounds,* 823 F.2d 276 (9th Cir. 1986) (holding that director and officer insureds who were not named in other directors and officers' lawsuit against insurance company did not constitute indispensable parties because they "may have participated in different acts, requiring separate determination of coverage based on

different factual allegations in the underlying suits"); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mason, Perrin & Kanovsky*, 709 F. Supp. 411, 415 (S.D.N.Y. 1989) (absent named insureds did not constitute indispensable parties to lawsuit by insurance company against named insured); *Allstate Ins. Co. v. Daniels*, 87 F.R.D. 1, 4 (W.D. Okla. 1978) (named insured and additional insured of insurance policy were not necessary parties to insurance company's lawsuit against claimant under policy).

    **B.**    **The Subcontractors Are Not Necessary Parties Under Federal Rule Of Civil Procedure 19(a)**

Examination of the factors enumerated in Rule 19(a) demonstrates that the subcontractors do not constitute necessary parties to the Plaintiffs' actions.

    1.    The Court Can Accord Complete Relief Among Those Already Party To Plaintiffs' Actions

Contrary to Defendants' assertions, a coverage determination in the subcontractors' absence would afford complete relief to the existing parties. Where additional insureds seek a coverage determination under an insurance policy, the other insureds' absence from the proceeding does not prevent the court from according complete relief. *See, e.g., Brown v. Am. Int'l Group, Inc.*, 339 F. Supp. 2d 336, 342-43 (D. Mass. 2004). In *Brown v. Am. Int'l Group, Inc.*, for example, former directors sued for a declaration of National Union's duties to them under a directors and officers policy (the "D&O Policy"). *Id.* at 342. National Union moved to dismiss the action for failure to join the other insureds under the D&O Policy, arguing that since the decision would not bind the absent directors, National Union could not obtain complete relief. *Id.* In rejecting this contention, the court held that National Union's argument

> misapprehends the nature of the relief to be granted. The relief sought here is not a general declaration of National Union's duties, but rather a specific determination of its duties to the Plaintiffs … Accordingly, the absence of the other individual insureds poses no bar to according complete relief among those already parties.

*Id.* at 342-43 (internal citation omitted). *See also Royal*, 1997 WL 835058 at *3 (stating that "[a]lthough allowing this action to proceed without … one of the Texas defendants does not completely resolve … [the insurance company's] duty to defend and indemnify, it does serve a useful purpose and fully disposes of the issue with respect to three of the Texas defendants that are parties to this action"); *Allstate Ins. Co.*, 87 F.R.D. at 3 (holding that the court could afford the existing parties complete relief because Allstate sued for a declaratory judgment concerning the rights and liabilities of Allstate and Phelps under the insurance policy and "[b]oth of the parties whose rights and liabilities are to be determined herein are presently parties in this action").

Here, the subcontractors need not participate in the Plaintiffs' actions for the Court to afford complete relief. In their complaints, Plaintiffs seek a declaratory judgment concerning the defendant insurance companies' obligations to the Trust, Centerline, and Northstar under the insurance policies. No reason exists why the Court cannot make this determination in the absence of the subcontractors.[11] Like National Union's argument in *Brown*, Defendants' contentions here misapprehend the nature of the relief to be granted. Plaintiffs do not seek "a general declaration" of Defendants' duties," but rather a specific determination of … [Defendants'] duties to the Plaintiffs." *Brown*, 339 F. Supp. 2d at 342-43. As in the *Allstate Ins. Co.* case, all of the parties whose rights and liabilities are to be determined herein are presently parties. Allowing these actions to proceed without the subcontractors fully disposes of the coverage issues with respect to the parties to these actions. Accordingly, the Court can accord complete relief among those already party to the Plaintiffs' actions, and the subcontractors do not constitute necessary parties.

---

[11] Certainly, no reason exists why the Court cannot accord complete relief, in the absence of the subcontractors, concerning Plaintiffs' rights under the insurance policies sold directly to Plaintiffs.

2.    The Subcontractors Have No Legitimate Interest Relating To The Subject Of
Plaintiffs' Actions

The subcontractors have no legitimate interest relating to the subject of the Plaintiffs'

actions.  Defendants vaguely assert that the Plaintiffs and the subcontractors are competing for the

same funds, and that any amount of coverage for Plaintiffs may impede the subcontractors' interest

in any possible future coverage litigation.  However, courts do not recognize innuendo, suspicion,

and speculation as to the depletion of funds as a legitimate interest requiring the joinder of a party.

*See, e.g., SMI-Owen Steel Co., Inc.*, 199 F.R.D. at 212.  In *SMI-Owen Steel Co., Inc.*, for instance,

the plaintiff-subcontractor sought a declaration of coverage as an additional insured under the

general contractors' insurance policy.  *Id.* at 210.  Defendant St. Paul sought dismissal for failure to

join the named insured general contractors to the action, arguing that the general contractors were

necessary parties because any coverage allocated to the subcontractor would prejudice the general

contractors' interest in the same funds.  *Id.* at 210-12.  The court was not persuaded, stating:

> St. Paul's argument fails … St. Paul has failed to demonstrate that
> Plaintiff is actually competing for the same funds as [the additional
> insureds].  In arguing that policy funds are in danger of being
> depleted, St. Paul repeatedly refers to "policy limits" but does not
> identify exactly what these limits are.  The Court will not grant St.
> Paul's Motion [to dismiss] on the basis of innuendo and suspicion.

*Id.  See also Allstate Ins. Co.*, 87 F.R.D. at 3 (where court held that it was unable to ascertain any

interest the absent named insured and additional insured had in a declaratory judgment action by the

insurance company against individuals seeking to recover under the insurance policy).  Similarly, in

this case, dismissal is unwarranted where Defendants fail to (1) specify what claims the

subcontractors have; (2) demonstrate that Plaintiffs and the subcontractors are even competing for

the same funds; and (3) explain how the insurance policy limits are in danger of being depleted.

As further evidence of their lack of legitimate interest, the subcontractors have not sought to

intervene in the Plaintiffs' actions.  In fact, corporate records indicate that many of the

subcontractors are now defunct entities. *See* Corporate Records, attached hereto as *Exhibit D* (identifying as dissolved Distinctive Finishes, LLC; Residential Drywall, Inc.; 1st Choice Construction, Inc.; Beta Drywall LLC; Steven Sweet Drywall, LLC; and SD & Associates, Inc.). Furthermore, in duplicative actions filed by Mid-Continent and National Union against Pate, several of the subcontractors have failed to enter appearances and have had defaults entered against them. *See, e.g.*, *Mid-Continent Casualty Company v. Pate et al.*, C.A. No. 10-121 (M.D. Fla.) (wherein Steven Sweet Drywall, Distinctive Finishes, LLC, and Swedberg Enterprises d/b/a Florida Drywall have failed to appear and defaults have been entered against Distinctive Finishes, LLC and Swedberg Enterprises, Inc. d/b/a Florida Drywall); *National Union Fire Insurance Company of Pittsburgh, PA et al. v. Beta Construction LLC et al.*, C.A. No. 10-1541 (M.D. Fla.) (wherein Beta Construction LLC f/k/a Beta Drywall LLC has failed to enter an appearance); *Mid-Continent Casualty Co. v. Centerline Homes Construction, Inc. et al.*, C.A. No. 10-60484 (S.D. Fla.) (wherein United Framers has failed to make an appearance); *Mid-Continent Casualty Co. v. Precision Drywall, Inc. et al.*, C.A. No. 10-80457 (S.D. Fla.) (wherein Precision Drywall has failed to make an appearance). As the subcontractors have no legitimate interest in the Plaintiffs' actions, they do not constitute necessary parties.

        3.      The Subcontractors Are Not So Situated That Disposition Of Plaintiffs' Actions In Their Absence May Impair Or Impede Their Ability To Protect Any Interest In The Subject Matter of The Actions

       Even if the subcontractors possessed a legitimate interest relating to the subject matter of the Plaintiffs' actions – which they do not[12] – they are not so situated that disposition of the actions in

---

[12] If the Court finds that the subcontractors possess no legitimate interest in the subject matter of the Plaintiffs' actions, it need not consider whether disposition of the actions in the subcontractors' absence would: (1) impair or impede the subcontractors' ability to protect any such interest; or (2) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

their absence "may as a practical matter impair or impede the[ir] … ability to protect the interest."

*See* Fed. R. Civ. P. 19(a)(2)(i).  Construing this prong of the analysis, one court noted:

> The language "as a practical matter" has a restrictive as well as an expansive side.
> Thus the fact that the absent person may be bound by the judgment does not of itself
> require his joinder if his interests are not fully represented by the parties present; nor
> does the mere theoretical possibility of prejudice require joinder.

*Mason, Perrin & Kanovsky*, 709 F. Supp. at  413 (citing 3A Moore's, ¶ 19.07 [2.-1], at 19-106 to

19-108).  "Several courts have held that where defendants have raised arguments which the missing

party would raise, the missing party's interests have been adequately represented."  *Id.*; *see also Ace*

*Am. Ins. Co. v. Paradise Divers, Inc.*, 216 F.R.D. 537, 540 (S.D. Fla. 2003) (holding that a party

was not necessary under Rule 19(a) where he and the named defendant "share[d] the ultimate

objective of obtaining a declaration of coverage under the insurance policy").  Furthermore, "a

declaratory judgment would not be res judicata … to … nonparties."  *Allstate Ins. Co.*, 87 F.R.D. at

4.

The Plaintiffs' actions concern Plaintiffs', and not the subcontractors', rights under the

insurance policies.  Furthermore, Plaintiffs' interests in the insurance policies are not derivative of

any interest of the subcontractors.  Thus, Defendants' obligations to Plaintiffs – on the one hand –

and to the subcontractors – on the other hand, are separate.  For this reason, Plaintiffs can litigate

their claims in the subcontractors' absence.  Indeed, where several entities constitute insureds under

a single insurance policy, but hold "distinct separate rights," they "may litigate their claims without

the presence of the other."  *Congregation Ahavath Achim v. Underwriters at Lloyd's of London,*

*England*, 31 F.R.D. 275, 276 (D. Or. 1962).

Additionally, Plaintiffs will likely raise the same legal arguments that the subcontractors

would make if the subcontractors were to seek coverage under the insurance policies.  Both

Plaintiffs and the subcontractors would share the ultimate objective of obtaining a declaration of

coverage under the insurance policy.  Thus, contrary to Defendants' assertions, the subcontractors

will not "lose a critical opportunity to argue their interpretation of the policies before this Court."
Amerisure Mem. [Docket 2174] at 8, n. 7. Finally, the findings in the Plaintiffs' lawsuits will not
be res judicata vis a vis the subcontractors, and therefore, will not bind them.

    The Defendants' reliance on *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Rite
Aid of South Carolina, Inc.*, 210 F.3d 246, 251 (4th Cir. 2000) for the proposition that proceeding
absent the subcontractors would impair or impede their ability to protect an interest is unavailing.
In *Rite Aid*, National Union sued its insured, Rite Aid of South Carolina ("RASC"), for a
declaratory judgment concerning its coverage obligations to RASC in two products liability cases.
*Id.* at 248. The coverage determination depended on RASC's compliance with the policy's notice
provisions, and RASC's parent company and named insured was the entity charged with giving and
receiving notice under the policy. *Id.* at 251. For this reason, the Court noted that the issue could
not be "characterized as simply a matter of coverage," and held that the parent corporation was a
necessary party to the action because it had a "direct interest in the district court's determination of
its reporting obligations as well as an interest in coverage for RASC." *Id.* Indeed, as RASC was
merely a beneficiary of any coverage its parent corporation could obtain, the parent company's
interest was at stake, and RASC could not adequately protect it. *Id.*

    The instant case presents significantly different facts. Here, the Plaintiffs and the
subcontractors do not form part of any common corporate structure that would tie their interests, but
rather are distinct policyholders under the Defendants' insurance policies. Therefore, unlike in *Rite
Aid*, a coverage determination for the Plaintiffs will not affect a coverage determination for the
subcontractors.

4.     The Defendants Are Not So Situated That Disposing Of Plaintiffs' Actions In The Subcontractors' Absence May Leave The Defendants Subject To Any Substantial Risk Of Incurring Double, Multiple, Or Otherwise Inconsistent Obligations

Disposition of Plaintiffs' actions in the subcontractors' absence would not leave the insurance companies subject to a "substantial risk" of incurring double, multiple, or otherwise inconsistent obligations. Fed. R. Civ. P. 19(a)(2)(ii). "'[M]ere theoretical possibilities' of inconsistent obligations are not enough for indispensability." *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1122 (D.C. Cir. 1991); *see also Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 62 (S.D.N.Y. 1992) (holding that a remote and theoretical possibility does not constitute a "substantial risk" of inconsistent obligations). Furthermore, Rule 19(a)(2)(ii) does not protect its proponents from potential for inconsistency or multiple obligations that they themselves create. *See Brown*, 339 F. Supp. 2d at 343. In *Brown*, for instance, the Court held that while a risk of double, multiple, or inconsistent obligations existed, the absent directors and officers did not constitute necessary parties under Rule 19(a) because "National Union's risk of inconsistent obligations is due not to the absence of the other directors and officers, but to the terms of its [p]olicy" under which it "was foreseeable that these individual insureds could commit multiple or inconsistent wrongful acts." *Id.*

Here, any risk of the Defendants' incurring double, multiple, or otherwise inconsistent obligations is theoretical and remote. In its brief, FCCI admits that none of the subcontractors to which FCCI sold the insurance policies at issue are named as defendants in the Chinese Drywall Products Liability Multidistrict Litigation. FCCI Mem. at 2. Instead, FCCI states that it could face inconsistent obligations because "this Court could excuse obligations that FCCI's insureds *seek to impose in the future*." *Id.* at 7 (emphasis added). Similarly, Defendant National Union asserts that it could be subject to inconsistent obligations because "Beta and Finest are *potentially* subject to their own liability" and that each "*would be* entitled to seek coverage." National Union Mem. at 9,

11 (emphasis added). Defendants' references to these hypothetical, future inconsistencies fall short of the "substantial risk" that Rule 19 requires.

The parallel litigations that the Defendants have filed in Florida against the Plaintiffs and certain subcontractors likewise do not create a risk of double, multiple, or otherwise inconsistent obligations. Plaintiffs' lawsuits, unlike Defendants' duplicative, second-filed lawsuits, do not name the subcontractors. Therefore, no risk of inconsistent adjudication exists as to the subcontractors' alleged rights under the policies. Second, and more importantly, Defendants cannot be heard to complain that the parallel litigations may subject them to inconsistent obligations as to the Plaintiffs when they themselves filed the duplicative actions after the Plaintiffs filed their actions in this Court. *See Brown*, 339 F. Supp. 2d at 343. In light of the foregoing, the subcontractors do not constitute necessary parties under Rule 19(a)(2)(ii).

### C.   The Subcontractors Are Not Indispensable Parties Under Federal Rule of Civil Procedure 19(b)

As demonstrated above, the subcontractors do not constitute necessary parties to the Plaintiffs' actions. The Court can stop its analysis here. However, even if the Court held that the subcontractors are necessary parties, they are not indispensable parties meriting dismissal of the Plaintiffs' actions.

#### 1.   A Judgment Rendered In The Subcontractors' Absence Prejudices Neither The Subcontractors Nor The Existing Parties

The first factor in Rule 19(b) is the counterpart to Rule 19(a)(2)(i), and therefore, whether the subcontractors and existing parties will suffer any prejudice from the subcontractors' absence is tied to whether or not the subcontractors' interests will be impaired or impeded. *Florian v. Sequa Corp.*, No. 98 C 7459, 2002 WL 31844985, at *4 n.5 (N.D. Ill. Dec. 18, 2002). "In determining possible prejudice, there must be more than a theoretical possibility; there must be a substantial risk." *N. Am. Hotels, Ltd. v. Home Indem. Co.*, 112 F.R.D. 25, 27 (E.D. Pa. 1986).

A judgment rendered in the subcontractors' absence will not prejudice the subcontractors. Plaintiffs' actions do not request a ruling concerning the subcontractors' alleged rights under the insurance policies, and the subcontractors' alleged rights under the insurance policies are distinct from the Plaintiffs' rights under the policies.  Therefore, the nature of (1) the relief requested and (2) the Plaintiffs' rights under the policies belies any notion that resolution of the Plaintiffs' rights prejudices the subcontractors' rights.  Moreover, any ruling as to the Plaintiffs' rights will not bind the subcontractors.  *See Royal*, 1997 WL 835058 at *2 (stating a declaratory judgment of coverage for insured under the policy would not be *res judicata* as to non-party, additional insured).

A judgment rendered in the subcontractors' absence will not prejudice the Defendants either. The Plaintiffs' actions will determine the Plaintiffs' rights under the policies that Defendants sold. The presence of the subcontractors would not change this determination.  Regardless of the Plaintiffs' actions, the insurance proceeds are subject to a first come, first serve principle.  *See Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 765 (5th Cir. 1999) (stating that "an insurer is free to make a reasonable settlement of the claim before it without considering other possible claims affecting the same policy limits.").  Thus, resolution of the Plaintiffs' actions absent the subcontractors does not affect the Defendants' rights.

        2.        **The Court Can Lessen Or Avoid Any Prejudice By Protective Provisions In The Judgment And Shaping The Relief**

Assuming potential prejudice exists – which Plaintiffs dispute – the Court could place protective provisions in the judgment or shape relief to alleviate Defendants' alleged concerns. Courts have great flexibility in declaratory judgment actions to fashion relief "so as to avoid prejudice to absent parties."  *Okada*, 608 F. Supp. at 390.

        3.        **A Judgment Rendered In The Subcontractors' Absence Would Be Adequate**

A judgment in Plaintiffs' actions rendered in the subcontractors' absence would be adequate. "[T]he third factor in Rule 19(b) is the counterpart to Rule 19(a)(1)" so that whether a judgment

would be adequate mirrors whether the Court can afford complete relief without the absent parties. *Florian*, 2002 WL 31844985, at *4 n.5.  As set forth above, *supra* at 10-11, the Court can afford complete relief absent the subcontractors.

                    4.       **Plaintiffs Will Not Have An Adequate Remedy If The Court Dismisses Their Actions For Non-Joinder**

If the Court dismisses Plaintiffs' actions for non-joinder of the subcontractors, the Plaintiffs will not have an adequate remedy.  In connection with Rule 19(b)'s fourth factor, courts ask "whether the plaintiff has another forum in which to prosecute the action if it is dismissed."  *SMI-Owen Steel Co., Inc.*, 199 F.R.D. at 211.  Depriving a plaintiff of a forum in which to try an action exceeds in importance any concern for the possibility of inconsistent results.  *See Royal*, 1997 WL 835058 at *1-3 (holding that the potential for inconsistent obligations was insufficient to require dismissal where dismissing the case would require the plaintiff to refile in several different courts because no other single court would have jurisdiction over all of the parties).  "[V]ery few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible."  *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987).

The Pate Action, for instance, names twenty-one insurance entities.  Defendants broadly claim that if the Court dismisses the Pate Action, Pate can simply prosecute the action in Florida state court.  No evidence exists, and Defendants have not established, however, that all twenty-one defendants would be subject to personal jurisdiction or service of process in Florida or any other single state.  Indeed, Defendants corporate residencies are spread across the country:  Mid-Continent (Ohio corporation, principal place of business in Oklahoma), Amerisure (Michigan corporation, principal place of business in Michigan), FCCI (Florida corporation, principal place of business in Florida), National Union (Pennsylvania corporation, principal place of business in New York), and Landmark (Oklahoma corporation, principal place of business in Georgia).

Additionally, not all of the implicated properties are located in Florida. Dismissal would require Pate to prosecute his lawsuit piecemeal, in several courts, promoting judicial inefficiency and creating a likelihood of inconsistent rulings. Such a result would be unconscionable especially when the Judicial Panel on Multidistrict Litigation created MDL 2047 to consolidate Chinese Drywall cases before one judge. In light of these circumstances, the subcontractors do not constitute indispensable parties.

> **D.    The Subcontractors' Status As Insureds Under The Insurance Policies Or Parties To A Contract Does Not Make Them, De Facto, Necessary And Indispensable Parties**

The cases Defendants cited in their motions where courts held that a policyholder or insurance company constituted an indispensable party are distinguishable from the facts at issue. In *Burns v. Scottsdale Insurance Co.*, No. C08-1136RSL, 2009 WL 86549 (W.D. Wash. Jan. 7, 2009), the policyholders had assigned some of their rights under the defendant insurance company's policy to the plaintiff tort claimant, and the claimant brought a declaratory action seeking coverage. *Id.* at *2. Therefore, the policyholders were necessary since the tort claimant and the policyholders were acting under the same right of action, seeking the same relief – a determination of the policyholders' coverage. *Id.* at *1-2.

Likewise, in *Wilson v. Canada Life Assurance Co.*, No 08-CV-1258, 2009 WL 532830 (M.D. Pa. Mar. 3, 2009), the named beneficiary and the absent party each asserted that they were the sole owner of the life insurance policy at issue, and therefore, the only rightful recipient of the proceeds under the policy, making the absent party necessary to the action. *Id.* at *3. Here, the Plaintiffs are not seeking (1) a determination of the Defendants' possible liability to the subcontractors or (2) coverage for the Plaintiffs under the subcontractors' rights; and, any coverage owed to the Plaintiffs under the insurance policies is separate from any coverage owed to the

subcontractors.  Unlike the parties in *Burns* and *Wilson*, the Plaintiffs and the subcontractors are not claiming the same right.

The remaining cases that Defendants cite also are factually irrelevant.  *See, e.g., Alonzo v. State*, No. 02-2792, 2002 WL 31654918, at *2 (E.D. La. Nov. 21, 2002) (finding insured State was necessary party to plaintiffs' declaratory action against State's insurance company where plaintiffs had already obtained a judgment against State and issue was whether State complied with its obligations under the policy); *Northland Ins. Co. v. Berkebile Oil Co.*, No. 3:03CV00011, 2003 WL 22995127, at *3 (W.D. Va. Dec. 12, 2003) (finding policyholder that agreed to indemnify defendant under its insurance policy was necessary party to action by insurance company to deny coverage of defendant); *Aetna Cas. & Sur. Co. v. RASA Mgmt. Co.*, 621 F. Supp. 892, 893 (D. Nev. 1985) (stating in dicta that there was no dispute between parties that corporate policyholder was, of course, necessary party to insurance company's declaratory action against the corporation); *Zurich Am. Ins. Co. v. Elecs. for Imaging, Inc.*, No. C 09-02408, 2009 WL 2252098, at *5 (N.D. Cal. July 28, 2009) (dismissing suit where plaintiff insurance companies' obligations depended on exhaustion of absent carriers' underlying layers of coverage); *Bethel v. Sec. Nat'l Ins. Co.*, 949 So.2d 219, 223 (Fla. Dist. Ct. App. 2006) (stating policyholder should be joined in determination as to whether her injured sister fit under "family member" provision in automobile policy); *Maryland Cas. Co. v. Boyle Constr. Co.*, 123 F.2d 558, 562 (4th Cir. 1941) (finding insured was indispensable in insurance company's declaratory action where a determination that decedent was not employed by insured at time of accident could subject insured to liability in excess of policy).

Finally, Defendants strive in vain to draw a parallel between the facts presented here, in an insurance context, and situations involving parties to an ordinary contract or agreement, where disposition could extinguish the absent party's rights or title.  Those cases are irrelevant to this situation, which involves an insurance policy.  *See, e.g., Siemens Bldg. Techs., Inc. v. Jefferson*

*Parish*, No. 03-2272, 2004 WL 1837386, at *6 (E.D. La. Aug. 16, 2004) (holding contractor was

required party under Rule 19 where plaintiff effectively sought a declaration that the contract

between absent party and the Parish was null and void); *Denkmann Assocs. v. Int'l Paper Co.*, 132

F.R.D. 168, 170 (M.D. La. 1990) (holding absent party was indispensable where a termination of

defendant's rights under the 1945 Agreements would terminate absent party's rights as well); *Haas*

*v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 400 (5th Cir 1971) (finding absent party

indispensable where validity of plaintiff's title to shares of bank's common stock centered around

his agreement with absent party to purchase jointly the shares).[13]  In contrast to the facts in the

aforementioned cases, Plaintiffs' actions neither extinguish any possible right of the subcontractors,

nor enlarge any obligation already agreed to by the Defendants in their insurance policies.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that this Court deny

Defendants' motions to dismiss for failure to join indispensable parties under Fed. R. Civ. P.

12(b)(7) and 19.

October 13, 2010                                    Respectfully submitted,

                                                    /s/ Russ M. Herman
                                                    Russ M. Herman, Esquire (Bar No. 6819)
                                                    Leonard A. Davis, Esquire (Bar No. 14190)
                                                    Stephen J. Herman, Esquire (Bar No. 23129)
                                                    HERMAN, HERMAN, KATZ & COTLAR,
                                                    LLP
                                                    820 O'Keefe Avenue
                                                    New Orleans, Louisiana 70113
                                                    Phone: (504) 581-4892

---

[13] Moreover, Defendants cite *Harris Trust & Sav. Bank v. Energy Assets Int'l Corp.*, 124 F.R.D. 115 (E.D. La. 1989) for support that the subcontractors are necessary parties to this action, but the facts of that case are inapposite.  In *Harris*, a mortgage holder sought a declaration that its interests had priority over the defendants' interest in the subject leases without joining the obligors that would ultimately have to perform under agreements.  *Id.* at 117.  Here, the parties that ultimately must perform under the insurance policies, the Defendants, are joined in the action.

Fax: (504) 561-6024
LDavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047

Arnold Levin
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
Plaintiffs' Lead Counsel
MDL 2047

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
Matthews, Martinez, Gonzales,
Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Hugh P. Lambert

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Bruce William Steckler (On the Brief)
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier

Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Gainsburgh, Benjamin, David, Meunier
& Warshauer, LLC
2800 Energy Centre, 1100 Poydras St.
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973 gmeunier@gainsben.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## INDIVIDUAL COUNSEL FOR PLAINTIFF ROBERT C. PATE,
## TRUSTEE FOR THE CHINESE DRYWALL TRUST

Robert M. Horkovich (On the Brief)
Anna M. Piazza (On the Brief)

Burton LeBlanc
Baron & Budd, P.C.

Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York 10020
P: 212-278-1000
F: 212-278-1733
rhorkovich@andersonkill.com
apiazza@andersonkill.com

9015 Bluebonnet Blvd.
Baton Rouge, LA 70810
Phone: (225) 927-5441
Fax: (225) 927-5449
bleblanc@baronbudd.com

**INDIVIDUAL COUNSEL FOR PLAINTIFFS CENTERLINE HOMES, INC.,
CENTERLINE HOMES CONSTRUCTION, INC., COMPLETED COMMUNITIES II, LLC,
AND CENTERLINE HOMES AT GEORGETOWN, LLC**

Peter R. Goldman
Vanessa M. Serrano (On the Brief)
Broad and Cassel
100 S.E. Third Ave., Ste. 2700
Fort Lauderdale, FL 33394
Telephone: (954) 764-7060
Facsimile:  (954) 761-8135
pgoldman@broadandcassel.com
vserrano@broadandcassel.com

**INDIVIDUAL COUNSEL FOR PLAINTIFFS NORTHSTAR HOLDINGS, INC.,
NORTHSTAR HOMES, INC., AND NORTHSTAR HOLDINGS AT B & A, LLC**

Michael K.  Wilson
Broad and Cassel
390 N. Orange Avenue, Suite 1400
Orlando, FL  32801
Telephone:  (407) 839-4200
Facsimile:  (407) 425-8377
mkwilson@broadandcassel.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel,
Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon
all counsel of record by electronically uploading the same to Lexis Nexis File & Serve in
accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk
of Court of the United States District Court for the Eastern District of Louisiana by using the
CM/ECF System, which will send a notice of electronic filing in accordance with the procedures
established in MDL 2047, on this 13th day of October, 2010.

/s/ Russ M. Herman
Russ M. Herman