

**Online Library**

Your online source for coverage interpretation and analysis.

Home    Contact Us    Video Tours    This Site

FC&S Online > Commercial Lines > Inland Marine > ISO Program > Processors Coverage Form

Print Version

# Processors Coverage Form
## Insurance Services Office Non-filed IM Coverage

December 2005

*Summary: The Insurance Services Office has developed a series of non-filed inland marine coverage forms for use around the country. This article deals with the processors coverage form, IH 00 93 08 02. The insuring agreement, the exclusions, and other parts of the form are listed and analyzed.*

*Topics covered:*

**Introduction**

**Coverage**

**Additional coverages**

**Exclusions**

**Conditions**

**Definitions**

### Introduction

A processor is one who receives the property of others in order to perform some work on that property. As an example, a restoration business will take a customer's aging work of art and restore it to its original beauty. Or, as another example, an auto customizing shop will take a customer's standard auto and install custom chrome or custom furnishings or a surround-sound video entertainment system. And still another example would be a clothes repair shop that needs to send a customer's property off-premises to another store or business in order to have the required work properly completed.

Whatever the situation, if the insured has the property of others in his or her possession for the purpose of performing work upon the property, the exposures to a loss create a risk for the insured. It is true that the commercial property coverage form does provide some coverage for the insured for the loss of or damage to the personal property of others that is in the care, custody, or control of the insured. And, there are inland marine forms that provide coverage for the insured for specified items (for example, cameras, film, musical instruments, signs). But, the processors coverage form, IH 00 93 08 02, handles the coverage that is offered to the insured in a unique way, and is considered to be part of the nonfiled commercial inland marine premium coverages. (A nonfiled inland marine policy is one that is not standardized and is drawn up and rated in accordance with the specific underwriting philosophy of the insurer. IH 00 93 08 02 is part of the ISO's nonfiled inland marine program that serves to simplify and generalize this process.)

### Coverage

IH 00 93 08 02 pays for the loss of or damage to covered property from any covered cause of loss. The policy is an open perils coverage form so that all risks of direct physical loss or damage are covered unless there is a specific exclusion that would prevent the coverage.
Covered property as described in IH 00 93 08 02 is the following: property described in the declarations that is owned by the named insured or is owned by others but for which the named insured is legally liable. Such property is covered only while it is in the care, custody, or control of a processor, or in due course of transit to or from a processor for the purpose of performing work upon the property.
There are several points to consider in this description of covered property.
The property has to be described in the declarations; IH 00 93 08 02 does not apply to property unless it is listed in the declarations. This is not to say that the description cannot be general in nature. For example, if the insured is a clothes repair shop, the described property can be

State Farm Exh. 1

"customers' clothes" or some such generic term. But the property has to be noted in the declarations in some manner.

The covered property has to be either owned by the named insured, or property of others for which the named insured is legally liable. When the insured takes in the property of customer for processing, he becomes legally liable for the safety of that property. A bailment has been created and the named insured has accepted a legal duty to the property owner to return the owner's property in an acceptable condition.

And, the covered property has to be in the care, custody, or control of *a* processor or in transit to or from *a* processor. This means that the named insured does not have to always have care, custody, or control of the property. If the property has to be sent out to another processor in order for the required processing work to be done, IH 00 93 08 02 will still consider the property as covered property. So, not only is property covered while on the premises of the named insured, it is also covered off-premises, while in transit, and while in the custody of someone other than the named insured—as long as that other person is another processor like the named insured.

IH 00 93 08 02 does list certain items that are not considered covered property. Some of these items are not out of the ordinary for a property form: accounts, bills, currency, deeds, evidences of debt, money, notes, securities, contraband or property in the course of illegal transportation or trade, and property while in the mail. Other items are unique to this form: property at, or in transit to or from, a processor that the named insured owns, leases, or operates. In other words, IH 00 93 08 02 wants the named insured and his risk exposures known upfront in order to prevent any fraud or collusion.

### Additional Coverages

IH 00 93 08 02 has three additional coverages for the insured.

*Debris Removal.* The insurer will pay the expenses of the insured to remove debris of covered property caused by or resulting from a covered cause of loss. The loss has to occur during the policy period and the expenses have to be reported to the insurer in writing within 180 days of the date of loss or damage. The most the insurer will pay is 25 percent of the amount paid for the direct physical loss or damage to the covered property, plus the deductible applicable to the loss or damage. There is an additional $5,000 available in any one occurrence if the sum of the direct physical loss and debris removal expense exceeds the limit of insurance stated in the declarations; this is also true if the debris removal expense itself exceeds the amount payable under the 25 percent limitation. The additional coverage for debris removal does not apply to costs to extract pollutants from land or water, or to costs to remove, restore, or replace polluted land or water.

*Preservation of Property.* If it is necessary to move covered property from the processing address to preserve it from loss or damage by a covered cause of loss, the insurer will pay for any direct physical loss or damage to that property while it is being moved. This coverage also applies while the covered property is being temporarily stored at another location. For example, if the insured was in Florida and had to move the property he was processing to prevent a loss due to hurricane winds, and the property was damaged in a car accident while the insured was moving it, IH 00 93 08 02 will cover that loss. There are two points to note about this coverage. The coverage is there only if the loss or damage occurs within thirty days after the property is first moved. And, the coverage does not increase the limit of insurance; so, any payment made for this additional coverage depletes the limit of insurance the insured has on the covered property.

*Pollutant Clean Up and Removal.* The insurer will pay up to $10,000 for the sum of all covered expenses to extract pollutants from land or water at the processing address. This is paid if the discharge or escape of the pollutants is caused by or results from a covered cause of loss that occurs during the policy period. The insured must report the expenses to the insurer in writing within 180 days of the date of loss. The $10,000 is in addition to the limit of insurance noted on the declarations page.

### Exclusions

There are three sets of exclusions on IH 00 93 08 02. The first set contains the concurrent causation language, the other two do not.

IH 00 93 08 02 will not apply to loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. The exclusions are: governmental action; nuclear hazard; and war and military action.

IH 00 93 08 02 will not pay for seizure or destruction of property by order of governmental authority. It will not pay for loss or damage caused by any weapon employing atomic fission or fusion, or any nuclear reaction or radioactive contamination. And, the coverage form will not pay for damage or loss caused by war or any warlike action.

There are twelve exclusions contained in the second set of exclusions.

*Improper Packing or Rough Handling.* IH 00 93 08 02 will not pay for loss or damage caused by or resulting from improper packing or stowage or rough handling. This is a rather vague exclusion since how can improper packing, stowage, or rough handling be proven? And, it does not limit itself to the actions of the insured. If the customer improperly packs the property to be worked on, or the carrier of the property mishandles the property, and the property is damaged, the insured can be facing a denial of coverage. Of course, the insurer has the responsibility to prove the applicability of the exclusion in any case.

*Theft.* Theft from any unattended vehicle is not covered unless, at the time of the theft, the vehicle's windows, doors, and compartments were closed and locked; there also has to be visible signs that the theft was the result of forced entry. So, a mysterious disappearance of covered property from a car or truck will not be a covered loss. If the insured parks his car in a parking

lot and leaves it unlocked while he goes to eat lunch, there is no coverage under IH 00 93 08 02 if the insured comes back and finds the customer's property missing. This exclusion does not apply to property in the custody of a carrier for hire.

*Delay or Loss of Use.* If the insured is working on a piece of a customer's property and, for some reason, the work is not finished on time, the customer may lose some business. For example, the insured has to finish customizing the customer's limousine in time for a wedding but problems arise and the work is not finished. The customer loses the business and makes a claim against the insured. IH 00 93 08 02 will not apply to that claim. Any loss or damage caused by or resulting from a delay, loss of use, loss of market, or any other consequential loss is not covered. IH 00 93 08 02 applies to direct physical loss or damage and these types of losses listed in this exclusion are consequential losses.

*Unexplained Disappearance.* This exclusion complements the theft exclusion noted previously. Mysterious and unexplained disappearances from vehicles or anywhere else are not going to be covered by IH 00 93 08 02.

*Inventory Shortage.* If the insured finds a shortage in his inventory of property, IH 00 93 08 02 will not pay for that shortage. This exclusion joins with the theft exclusion and the unexplained disappearance exclusion to prevent the coverage form from paying for mysterious and unexplained disappearances of property. Such disappearances are difficult to underwrite against and providing coverage for them would allow collusion and fraudulent actions to happen rather too easily.

*Dishonest or Criminal Act.* Dishonest or criminal acts by an insured are not supposed to be covered by insurance. This exclusion applies when the named insured or a partner, employee, or any authorized representative commits such acts. The exclusion applies whether or not such persons are acting alone or in collusion with others, and it makes no difference if the acts occur during the hours of employment or otherwise. For example, if the named insured conspires with an employee to have a theft of property occur, IH 00 93 08 02 will not apply to the loss no matter when the theft takes place, whether that be during working hours or after hours when the processing plant is closed. The exclusion does not apply to covered property that is entrusted to others who are carriers for hire, such as a UPS delivery man; if that delivery man steals the property, IH 00 93 08 02 will cover the claim. Of course, a claim can be made against UPS, but this exception to the dishonest or criminal act exclusion allows the insured to be compensated for his loss without waiting for a claim against UPS to be made and processed.

Note also that the exclusion does not apply to acts of destruction by the employees of the named insured. This exception does not specifically distinguish between intentional and negligent acts of the employee, but since the exclusion pertains to dishonest or criminal acts, that wording means the act of destruction by the employee must be deliberate. So, IH 00 93 08 02 does not hold the named insured responsible for the employee deliberately destroying covered property. Theft by an employee is not covered, but destroying covered property is.

*Processing.* IH 00 93 08 02 will not apply to loss or damage due to the actual processing or work upon the covered property. The named insured is a processor; he is in the business of working on customers' property and holds himself out to customers as one who knows his trade. To allow IH 00 93 08 02 to cover damage done to property while the insured was engaged in the processing work would be to insure the workmanship of the insured, to insure against the faulty work of the insured. That is not the purpose of this coverage form. This exclusion prevents IH 00 93 08 02 from becoming a performance bond.

If the processing or work upon the property results in fire or explosion, the insurer will pay for the direct loss or damage caused by the fire or explosion. And note that this exclusion can be deleted if the insured and the insurer agree and it is so marked on the declarations page of the policy.

*Pollution.* IH 00 93 08 02 will not pay for loss or damage caused by the discharge, dispersal, release, or escape of pollutants (a defined term). However, if that discharge or escape is caused by specified causes of loss (also a defined term), the exclusion does not apply. Conversely, if the pollution spill causes a loss by the specified causes of loss, the insurer will pay for the resulting damage. As examples: a pollution spill on the insured's premises causes fire or smoke damage; IH 00 93 08 02 will pay for the damage caused by the fire or smoke. Or, a fire or a windstorm causes the release of pollutants on the insured's premises that damages customers' property; IH 00 93 08 02 will pay for the pollution damage.

*Artificially Generated Current.* This coverage form will not apply to loss or damage caused by artificially generated current creating a short circuit or other electric disturbance within an article covered under the coverage form. For example, if the insured is working on an electric motor or uses an electrical tool in his processing work, and that motor or tool creates any kind of electrical disturbance that damages covered property, IH 00 93 08 02 will not respond to a claim for damages.

There are two things to point out about this exclusion. If a fire or explosion results from that artificially generated current, this coverage form will pay for the direct loss or damage caused by that fire or explosion. And, this exclusion only applies to loss or damage to that article in which the disturbance occurs. In other words, using the example here, if the electric motor (property of a customer) or the tool (property owned by the named insured) is damaged by the electric current, the exclusion applies. If other property is damaged by that current, the exclusion does not apply.

*Voluntary Parting.* If the named insured or anyone entrusted with covered property is induced to voluntarily part with the property due to any fraudulent scheme, trick, device, or false pretense, IH 00 93 08 02 will not cover that loss. This is the false pretense or trick and device exclusion that is so familiar on garage policies. The purpose of the exclusion is to prevent coverage for a loss due to the insured being swindled. The issue of whether voluntarily parting with covered property is a theft is thus sidestepped; there is simply no coverage for such an action.

*Unauthorized Transfer.* This exclusion complements the voluntary parting exclusion. If an unauthorized instruction is made to transfer property to someone or to some place, the resulting loss will not be covered by IH 00 93 08 02. The exclusion does not define an unauthorized instruction so the application of the exclusion may be difficult. If an employee receives an order from the named insured employer to move a customer's property to another location or to release that property to someone other than the customer, is a resulting loss due to an unauthorized instruction? If someone calls the insured and claims to be the customer and wants the property to be released to a messenger sent by the caller, is a resulting loss due to an unauthorized transfer? It would seem that a denial of coverage would be stronger based on the voluntary parting exclusion than on this one, but the exclusion is present on the coverage form in any case.

*Neglect.* A loss or damage due to the neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss is excluded. But, the question then arises: what does the phrase "all reasonable means" mean? The phrase is ambiguous enough to call its effectiveness into question. If the insured's premises is hit by a fire, does the insured have to run into the building to try and save covered property from complete destruction? This seems to be another example of an insurer wanting to prevent coverage for a cause of loss that should be excluded, but using vague terms to accomplish that goal.

The third set of exclusions note that loss or damage caused by the exclusions is not covered, but if loss or damage by a covered cause of loss results, the insurer will pay for that loss. In other words, if, for example, the malfunction of a covered piece of property causes a fire or an explosion, the loss due to the fire or explosion is covered, regardless of the fact that the excluded cause of loss—a malfunction—started the whole problem. There are six exclusions listed in this set.

*Wear and Tear.* Wear and tear and depreciation are normal happenings. They are not accidents or occurrences in that they are expected to happen. All manufactured items wear out over time and most items depreciate in value over time simply due to normal, everyday use. An insurance policy is not meant to cover such normal, expected losses and IH 00 93 08 02 is no exception.

*Latent Defect.* A loss due to any quality in the property that causes the property to damage or destroy itself, or due to a hidden or latent defect or gradual deterioration is not covered by IH 00 93 08 02. This exclusion aims to prevent coverage for damage to covered property that results from something within that property itself as opposed to some outside force. If, for example, a wedding dress sent to the insured to preserve contains a defect in the material that causes the dress to split or change color, that is not something for which the insured should be held liable. The dress itself caused its own damage and IH 00 93 08 02 will not pay for such a loss.

*Breakdown.* IH 00 93 08 02 will not apply to loss or damage due to breakdown of covered property. This is similar to the two previous exclusions. If property is going to breakdown, it is usually due to a latent defect or wear and tear and this coverage form is not meant to cover that type of loss.

*Malfunction.* Loss or damage due to malfunction or failure of covered property to operate is excluded. This exclusion can be seen as a complement to the three previous exclusions noted here, and the processing exclusion described in the second set of policy exclusions. If loss or damage is caused by a malfunction of covered property, that malfunction is probably caused by wear and tear, defect in or deterioration of the property, or a breakdown. Since these causes of loss are excluded, it is reasonable to exclude the resulting malfunction or failure of the property to operate properly as a cause of loss. And, since damage due to the processing operation is often caused by a malfunction or the operation failure of the insured's property, it follows that those actions should also be the subject of an exclusion.

*Insects, Vermin, Rodents.* Damage done by these things is normally excluded in any property policy and IH 00 93 08 02 is no exception.

*Corrosion, Extremes of Temperature.* Loss or damage due to corrosion, rust, dampness, or extremes of temperature is not covered.

**Conditions**

This section of IH 00 93 08 02 deals with the limits of insurance, the deductible, valuation, the coverage territory, and coinsurance.

The most that the insurer will pay for loss or damage in any one occurrence is the applicable limit of insurance shown in the declarations.

As for the deductible, the insurer will not pay for loss or damage until the amount of the adjusted loss exceeds the deductible shown in the declarations. Then, the insurer will pay the amount of the adjusted loss that is in excess of the deductible, up to the applicable limit of insurance on the policy.

IH 00 93 08 02 adds some information to the valuation general condition that is found on the commercial inland marine conditions form (a form that must be attached to all inland marine coverage forms). IH 00 93 08 02 declares that the value of property that is unfinished at the time of loss will include the value of labor, material, or services furnished by the processor. This is so if the named insured has paid the processor for such labor, materials, or services. However, the value of property will not exceed the cost to replace such property.

The coverage territory is the usual—the United States, Puerto, and Canada . IH 00 93 08 02 also covers property that is being

shipped by air within and between points in the declared coverage territory.

If a coinsurance percentage is shown in the declarations, IH 00 93 08 02 presents a formula for how the coinsurance payment is to be made. The insurer will not pay the full amount of any loss if the value of covered property (except property in transit) at the time of loss times the coinsurance percentage shown in the declarations is greater than the limit of insurance listed for the lost or damaged property. Instead the insurer will use the following steps to determine the most to be paid: 1) multiply the value of the covered property at the time of loss by the coinsurance percentage; 2) divide the limit of insurance of the property by the figure determined in step 1; 3) multiply the total amount of loss (before the application of any deductible) by the figure determined in step 2; and 4) subtract the deductible from the figure determined in step 3. This formula goes on to declare that the insurer will pay the amount determined in step 4, or the limit of insurance, whichever is less. For the remainder of the loss, the named insured is on his own.

### Definitions

IH 00 93 08 02 offers five definitions as part of the processors coverage form.

IH 00 93 08 02 offers some coverage for pollutant clean up and removal so it is fitting that the term be defined. A pollutant is defined on this coverage form as it is on just about every insurance policy. Pollutants are any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

Specified causes of loss is a defined term and is used in the exception to the pollution exclusion. There are fourteen items included in this definition:

1. Fire;
2. Lightning;
3. Explosion;
4. Windstorm or Hail;
5. Smoke;
6. Aircraft or Vehicles;
7. Riot or Civil Commotion;
8. Vandalism;
9. Leakage from Fire Extinguishing Equipment;
10. Sinkhole Collapse;
11. Volcanic Action;
12. Falling Objects;
13. Weight of Snow, Ice, or Sleet; and
14. Water Damage.

Sinkhole collapse is further defined. It means the sudden sinking or collapse of land into the underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include the cost of filling sinkholes, or the sinking or collapse of land into manmade underground cavities (such as mines, which would call for some type of mine subsidence coverage).

The category of falling objects is further clarified as not including loss or damage to personal property in the open, or to the interior of a building or structure (or the property inside) unless the roof or an outside wall of the building or structure is first damaged by a falling object.

Finally, water damage is limited to accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

Privacy Policy Contact Us Copyright © 2010, The National Underwriter Company



SP PageToolBar

# Chinese Drywall: The Next Big Issue?

March 1, 2010

**Summary**: *An interesting side issue has arisen from the hurricanes of 2005. At the time, supplies of drywall were running low. The country had been through a housing boom and the destruction caused by hurricanes Katrina and Rita left ready construction materials in short supply. As a result, the construction industry turned to supplies of drywall made in China to supplement their limited supplies. Drywall manufactured by different companies is not identical, and problems now exist presumably from the Chinese drywall used during the supply shortage.*

*Tests of some Chinese drywall has shown that it gives off a rotten egg odor from volatile sulfur compounds when exposed to heat and moisture. In the presence of moisture these vapors create a corrosive environment. The average humidity in Florida is over 50 percent year round, which could account for why Florida is the leader in drywall complaints.*

**Topics:**

Drywall

Effects

Scope

Coverages

Action

Legal aspects

Loss control

## Drywall

While everyone has heard of drywall, not much thought is given to exactly what it is. Drywall is plaster made out of gypsum that is mixed with other materials, formed into boards, and dried. Gypsum is a common mineral often found in sedimentary environments, and when used in drywall provides a noncombustible core. Cotton, fiberglass, or paper is added to the gypsum powder in order to make it stronger and less likely to crack over time. Starch is added in order to help the drywall adhere to the backing paper. Once the mixture is completed, it is pressed between thick paperboard. This is true of all drywall. Gypsum naturally contains sulfur compounds.

With regard to the Chinese drywall, testing has shown that sulfur compounds are released from both the gypsum core and the outer drywall paper. It is possible that before entry into the United States the drywall was treated with insecticide or that the adhesive binding the paper to the drywall contained contaminants. Another possibility is that the Chinese drywall remained on ships at sea for months awaiting approval to enter the country. The exposure of the drywall to humid sea air and the process of evaporation of that moisture once the drywall was on land could be responsible for the off gassing. Off gassing is simply the emission of gasses from a particular substance, such as drywall or carpet. The Gypsum Association recommends that gypsum board not be exposed to high levels of moisture for extended periods of time.

Chinese drywall is made of naturally mined gypsum—it appears to have a higher than normal density and to have a higher than normal tendency to off gas sulfur compounds. Much of the drywall that predates 2006 came from a particular mine in the ShanDong province, and tests show that an unusually high amount of sulfur compounds is present there. Both Chinese and American drywall products have been tested to determine the cause of the problem. The Consumer Product Safety Commission (CPSC) is working with the Environmental Protection Agency (EPA) and the Centers for Disease Control (CDC)/Agency for Toxic Substances and Disease Registry (ATSDR) to coordinate a united action plan to address the health hazards posed by Chinese drywall. The approach includes import investigations; field measurements of affected homes; gauging corrosion to electrical, fire and safety systems; and studies of gypsum and environmental release from disposal sites. The CDC/ATSDR will assist in developing a health awareness program in the future.

## Effects

The off gassing of these vapors has resulted in illness of the residents and damage to property. Reported health issues include headaches, sore throats, nosebleeds, respiratory issues, and dry eyes. The Florida health department has received over 140 complaints concerning the drywall, and the Consumer Product Safety Commission (CPSC) has received 608 reports from residents of twenty-one states about health and property conditions that the residents believe are due to the drywall. The first report to the CPSC was received December 2008.

Damage to property consists of corroded piping and wiring, causing electronics or appliances to fail –copper components are particularly susceptible to damage. A deteriorated connection between a circuit breaker and a panel board could become a hot spot and start a fire. Any wiring or piping is at risk--from the gas service components to the smoke alarm components. Air conditioners seem to be particularly susceptible to damage from these vapors. Air conditioning coils that should last ten years or more are corroding in just a few years. Ground wires are more susceptible to damage because they are not insulated.

Jewelry and silverware of the residents show evidence of corrosion as well. Since personal property typically is insured on a named perils basis, there is no coverage available for any of these items unless they have been scheduled on the policy.

## Scope

The scope of this issue is still being determined. The Gypsum Association states that 300 million square feet of Chinese drywall was imported in 2006-07. A construction consultant estimates that between 2006 and the first two months of 2007 enough drywall was imported to produce at least 50,000 homes of 2,000 square feet each. However this may not be where the drywall issue starts; some experts believe that defective drywall was installed as early as 2004, which would increase the number of homes exposed. It is estimated that Florida alone has 36,000 homes containing the problem drywall, and national estimates range from 60,000 to 100,000 homes. The issue is widespread enough in Florida that real estate agents are adding disclosures to forms advising the buyers that they have the right to have the home inspected in order to ascertain whether or not the drywall is problematic. New homes are not the only issue–renovated or remodeled homes may also contain tainted drywall. While many states are affected, the majority of complaints are originating in Florida, Louisiana, and Virginia .

## Coverages

There are many coverage issues that may develop. Claims may fall under homeowners, commercial liability, or commercial property policies. Homeowners have already started filing claims with their carriers against their homeowners policies, and carriers have already denied coverage. For reference, see *Baker v. American Home Assurance Company,* Middle District of Florida , No. 09-cv-188-FtM-99DNF f.

State Farm Exhibit 2

http://www.nationalunderwriterpc.com/sites/fcsonline/accoandrisman/sp

The homeowner is suing on the basis that the gas from the drywall interfered with the use and enjoyment of the property. The case is not yet settled.

**Homeowners**

The ISO HO 00 03 10 00 clearly excludes pollution, and the definition of pollutant is "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes." If the vapors from the drywall are corroding metal, then the pollution exclusion may apply. However, there is an exception to the exclusion for ensuing loss to property that is not precluded by any other provision. Therefore, if corroded metal such as that found on wires and pipes lead to leaks or fires, damage from those perils would be covered. The pollution exclusion may or may not stand --some courts will still hold that the pollution exclusion applies to traditional environmental contamination losses, spills, superfund, and similar exposures and that gasses from drywall didn't discharge, disperse, or escape onto land, water, or atmosphere. Atmosphere is generally construed to mean the external atmosphere, and not the air inside a building. This exclusion did not hold up through the past lead paint and asbestos suits, and it may not withstand the drywall litigation. The exclusion was intended to limit or exclude coverage for environmental contamination, not product liability claims. The damages from the drywall aren't environmental pollution but, rather, bodily injury or damage caused by products containing the sulfur compounds.

Another applicable exclusion is the one for faulty "...repair, construction, renovation, remodeling...materials used in repair, construction, renovation or remodeling..." Again, there is an exception to this exclusion for ensuing losses stemming from these causes that are not excluded elsewhere. So while there is no coverage for the replacement of the drywall, there is at least coverage available for ensuing losses.

Medical payments coverage is not available to the insured, and there is no exception. Medical payments coverage on the typical homeowners policy is intended for those who are not insureds.

Homeowners may also file claims against the builder who constructed the dwelling. This brings the commercial policies into view.

**Commercial General Liability**

Under the ISO commercial general liability policy CG 00 01 12 07, pollution is a major exclusion. Coverage is excluded for BI or PD arising out of the discharge or escape of pollutants at any premises on which any insured, contractor, or subcontractor working on behalf of the insured are performing operations if the pollutants were brought on to the premises in connection with such operations. For example if a plumber brought insulation with asbestos onto the property, injury from the asbestos is excluded. However, an exception exists for injury or damage sustained within a building and caused by the release of vapors, fumes, or gases from materials brought into that building in connection with operations being performed. Construction of the dwelling is certainly an operation being performed. So even if the vapors are considered to be a pollutant, there is coverage because of this exception.

Another exclusion removes property damage coverage for premises you (the named insured) sell, give away, or abandon if the property damage arises out of any part of those premises. This overrides the exception to the pollution exclusion for damage from the release of vapors, fumes and gases from materials brought onto the property in connection with operations. Also, damage to that part of real property on which the insured or contractors are working if the property damage arises out of those operations is also excluded. Once installed, the drywall becomes real property. Damages to the insured's product or work are excluded as well.

Medical expenses are paid if they stem from an accident that occurred on owned or rented premises or if they occurred because of the insured's operations. Coverage is provided for first aid and necessary medical, surgical, dental services, ambulance, hospital, nursing, and funeral services. However, expenses for injury that are included with the "products-completed operations hazard" are excluded. The "products-completed operations hazard" includes injury occurring away from premises the named insured owns or rents and arising out of "your product" or "your work." "Your product" includes goods and products other than real property manufactured, sold, handled, or distributed by the insured and includes warranties made at any time regarding the fitness, quality, performance of the product. "Your work" is work performed by the insured or on his behalf and materials, parts, or equipment furnished in connection with such work. The Chinese drywall installed into a home by a contractor would be considered "your work" (of the contractor) and, therefore, injury due to the faulty drywall is ultimately excluded. If a claim is filed against the contractor who install the drywall, that would be "your product" only until the drywall is installed into a building. Once installed the drywall becomes real property and is no longer "your product."

There also are products liability exposures for manufacturers. Manufacturers are responsible if drywall is defective and causes injury or damage and also must make sure the product is labeled for fitness of use. However, in this situation responsibility may fall on the builders who used the drywall because in general Chinese companies won't come to the United States to defend suits, and judgments made here can not be enforced in China . China does not recognize the jurisdiction of the United States, and it is very costly to go to China to file suit against a manufacturer.

Builders are supposed to heed labeling and use the proper type of product for the proper situation. Labeling and misuse are not the issues here, and the builders could not have reasonably been expected to foresee problems in the use of the materials.

**Commercial Property**

If the insured property is a commercial structure, the commercial property causes of loss form needs to be reviewed. The special causes of loss form contains a standard pollution exclusion with an exception granting coverage if the pollution is caused by or results in a specified cause of loss. Specified causes of loss are fire; lightning; explosion; wind or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of ice, snow, or sleet; and water damage. There is no cause of loss for vapors emitted from drywall.

Another applicable exclusion is hidden or latent defect. The chemicals in the drywall that are causing the problem vapors are not visible and they are an integral part of the product. Therefore, they are a latent defect; the drywall itself is defective. There is no coverage provided on this policy form.

**Action**

Steps to correct the problems may lead to the drywall, wiring, and piping needing to be removed and/or replaced. The interior of the building may also need to be cleaned. Another issue is just which drywall is the offending Chinese drywall and which drywall is safe. One of the problems is that once the drywall in a house is painted, it is difficult if not impossible to tell if the problem is all the drywall in the house or just a few walls. The drywall may not be clearly labeled, which could result in the entire house having to be gutted if a distinction cannot be made.

As mentioned previously, the CPSC is heading up the task force to study the issue and make recommendations. The Environmental Protection Agency and Centers for Disease Control are conducting studies on the effects of Chinese drywall, but the studies are not yet completed.

Disposal of the drywall is going to be another issue. Many landfills will not take the material and guidelines for where it may be dumped are still being developed. For example, the Florida state environmental department does not consider Chinese drywall a hazardous waste, yet when tons of drywall were sent to waste sites after the 2004 and 2005 hurricanes, problems with severe hydrogen odors developed. The environmental department is recommending that suspect drywall be sent to landfills that are lined with clay or other material and that have gas collection and control systems. Additionally, the drywall should be covered daily with several inches of soil.

**Legal Aspects**

Many lawsuits have been filed against builders or manufacturers; ten suits have been consolidated into one action since they share factual questions regarding the drywall, its importation and use, and the emission of smelly, corrosive gases. Sixty-seven other suits may be tagged onto this action. Some suits target the manufacturer while others target the construction companies. In *Harrell v. South Kendall Construction Corp.,* No. 09-08401CA40, the co nstruction company is being sued because the plaintiffs state their home is uninhabitable because of defective drywall made in China that was sold, manufactured, distributed, imported, and supplied by the defendants in violation of the law.

A separate lawsuit claims that fly ash was used in the making of the Chinese drywall. Fly ash is a waste product from coal-fired power plants. It is not unusual for some drywall to be made using this material. Various drywall manufacturers are listed as defendants in suits, including Knauf Plasterboard Tianjin Co., Ltd. (KPT), Banner Supply, and Taishan Gypsum.

In *Builders Mutual Insurance Company v. Dragas Management Corporation,* No 2:09-cv-185, the insurer has filed suit against the insured claiming that neither a defense nor indemnification is owed because the drywall is excluded by the total pollution exclusion that exists on the policy. The insurer states that the drywall off gassing clearly constitutes the "actual, alleged, or threatened discharge, dispersal, seepage...escape of pollutants at any time" and that the vapors or fumes fit the policy definition of pollution. The insured is claiming bad faith. This is just an example of how disputes may develop over drywall and whether the pollution exclusions apply.

The Drywall Safety Act of 2009 is a bill that was introduced in the U. S. Senate. The bill calls for the CPSC to study Chinese drywall imported between 2004 and 2007, determine whether or not a safety standard for the material is necessary, designate drywall with more than 5 percent organic compounds to be considered hazardous, and order manufacturers, distributors, and retailers of such drywall to cease and desist distribution of the product. A companion bill has been filed in the House. Should these bills pass, both the construction and insurance industries may be greatly affected.

**Loss Control**

Medical advice should be sought immediately if an insured experiences symptoms similar to those discussed here. Symptoms often clear when a person is away from the home and return when the person returns home. If the insured has electrical or fire issues, he should contact an electrician and the utility service provider. The CPSP should also be notified. They can be contacted at: www.cpsc.gov/cgibin/incident.aspx

Signs of Potential Electrical Issues
- Circuit breaker that needs to be reset frequently for no reason; ground fault circuit interrupter trips frequently
- Dim/flickering lights for no reason
- Arc/sparks anywhere in system
- Sizzles/buzzes from electrical systems/devices
- Overheating—switch plates, dimmer switches, cords, and plugs that are discolored or painful to touch
- Odors—smells as if from overheating plastic or electrical insulation material
- Shocks, even a mild tingle


Summit Business Media

Privacy Policy Contact Us Copyright © 2010, The National Underwriter Company