UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON |
| MONA BURKE, WIFE OF/AND THOMAS E. BURKE, IV | * * * | MAG. WILKINSON |
| Versus | * * | 10-1840 |
| DAELEN OF TANGIPAHOA, L.L.C., ABC CORP., AND STATE FARM FIRE AND CASUALTY COMPANY | * * * | |

*   *   *   *   *   *   *   *   *   *   *   *   *   *

### DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S REPLY IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS

In opposition to State Farm's motion to dismiss, Plaintiffs attempt to circumvent the unambiguous language in their homeowners insurance policy ("the Policy") by ignoring the allegations in their own Petition throughout their brief, which are fatal to their claims against State Farm. Despite these efforts, the weight of the case law demonstrates that the Policy exclusions are unambiguous, enforceable, and exclude coverage for Plaintiffs' alleged losses.

Plaintiffs also incorrectly argue that State Farm's motion to dismiss is procedurally improper, claiming that discovery is required to clarify various "contested facts" concerning the effects of defective drywall in Plaintiffs' home. On the contrary, State Farm's motion is based

on the very facts alleged in Plaintiffs' First Amended and Supplemental Petition, in which Plaintiffs themselves describe the nature of the losses they claim to have suffered.  State Farm, in its motion to dismiss, takes those factual allegations at face value.  Plaintiffs cannot manufacture a need for discovery by contesting their own allegations.  Moreover, courts regularly grant insurers' motions to dismiss by applying policy exclusions to facts as alleged in the pleadings. *See, e.g.*, *In re: Katrina Canal Breaches Litig.*, 495 F.3d 191, 224 (5th Cir. 2007); *Mendler v. Derouen*, Civil Action No. 08-4217, 2009 WL 411244, at *3 (E.D. La. Feb. 18, 2009). Plaintiffs' allegations and the Policy terms are ripe for the Court's consideration and bar coverage for Plaintiffs' alleged losses.

A. **Plaintiffs Concede that the Policy Does Not Cover Loss to the Defective Drywall.**

Plaintiffs' attempt to distinguish the holding in *Trinity Industries, Inc. v. Insurance Co. of North America*, 916 F.2d 267 (5th Cir. 1991), in the end, amounts to an acquiescence in State Farm's position.  (Pls.' Br. at 6–7.)  The *Trinity Industries* court held that there can be no physical loss or damage under an insuring agreement where the product or property itself was defective and, therefore, never in an "initial satisfactory state that was changed by some external event into an unsatisfactory state." 916 F.2d at 270–71.  Plaintiffs do not dispute, and thus have conceded, that there has been no "accidental direct physical loss" (Defs.' Br., Ex. A at 7) to the drywall itself and that the cost of removing, repairing or replacing the drywall is not a covered loss.[1]

---

[1] Plaintiffs appear to disclaim any coverage for the costs associated with repairing or replacing the drywall itself.  (*See* Pls.' Br. at 11 ("the claim is to restore the damaged home and not to pay for the cost of the Chinese-manufactured drywall itself").)

**B.     The Latent Defect Exclusion Applies.**

Plaintiffs' argument that the latent defect exclusion should not apply because that exclusion is intended only to exclude losses due to "a quality within an object which makes it tend to destroy itself" is contrary to the plain language of the exclusion and Louisiana law.

Notably, Plaintiffs conflate "latent defect" with "inherent vice," which are two separate concepts under the exclusion. (*See* Pls.' Br. at 10–11.) "Latent defect" is defined by Louisiana courts as "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable and customary inspection would not reveal."[2] *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328, 335 (La. App. 1984). Nothing in this definition requires any kind of self-destructive quality within a product. *See also* 11 Lee R. Russ, et al., *Couch on Insurance* § 153.77 (3d ed. 2005 & Supp. 2010) ("A 'latent defect' has been defined as 'an imperfection in the materials used which could not be discovered by any known and customary test'" and more recently "as referring to defects that would not be discovered by a reasonable inspection."); *compare Perzy v. Intercargo Corp.*, 827 F. Supp. 1365, 1370–71 (N.D. Ill. 1993) (cited by Plaintiffs, analyzing meaning of "inherent vice" exclusion); *Employers Cas. Co. v. Holm*, 393 S.W.2d 363, 364, 366–67 (Tex. App. 1965) (cited by Plaintiffs, policy excluded only "inherent vice," not "latent defect"); 11 *Couch on Insurance* § 153.77 ("An exclusion for 'inherent vice' relates to a loss stemming entirely from some quality within the insured property that renders damage inevitable.").[3]

---

[2] Plaintiffs fail to address the *Nida* decision, in which the latent defect exclusion applied to bar coverage where an improperly prepared foundation caused damage to the rest of the home. *See Nida*, 454 So. 2d at 335.

[3] The other three sources cited by Plaintiffs all address the definition of inherent vice, *not* latent defect. *See* Eugene Wollan, *Risks Not Taken*, John Liner Rev. 86 (Fall 2006); William H. Rodda, *Fire & Property Insurance* 298 (Prentice-Hall 1956); Edward L. DeHart, *et al.*, *Arnould on the Law of Marine Insurance and Average* vol. II § 778 (11th ed. 1924).

Under *Nida*, the "latent defect" language in Plaintiffs' homeowners insurance policy is unambiguous. Thus, Plaintiffs' discussion of the intent behind this exclusion is entirely irrelevant. "'When the words of a contract are clear and explicit and lead to no absurd consequences, *no further interpretation may be made* in search of the parties' intent.'" LA. CIV. CODE ANN. art. 2046 (1985), *quoted in In re: Katrina Canal Breaches Litig.*, 495 F.3d at 207 (emphasis added). "'Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.'" *In re: Katrina Canal Breaches Litig.*, 495 F.3d at 208 (quoting *Cadwallader v. Allstate Ins. Co.*, 2002-1637, p. 4 (La. 6/27/03); 848 So. 2d 577, 580).

Nevertheless, it is worth noting that the FC&S Bulletin cited by Plaintiffs is inapposite. That bulletin, describing "latent defect" as "any quality in the property that causes property to damage or destroy itself" is specifically directed to a "Processors Coverage Form," which provides liability coverage for insureds who "receive[] the property of others in order to perform some work on that property" and thus "become[] legally liable for the safety of that property." (FC&S Online, Processors Coverage Form, Insurance Services Office Non-filed IM Coverage, Dec. 2005 (attached as Ex. 1).) In that context, the policy may well be intended to cover damage to the entrusted property, and so it might make sense that the insurer would exclude only damage to the property caused by the property itself. On the other hand, in a separate bulletin directed specifically to the question of first-party coverage for drywall-related damage, Plaintiffs' own source states that the latent defect exclusion bars coverage: "The chemicals in the drywall that are causing the problem vapors are not visible and they are an integral part of the product. Therefore, they are a latent defect; the drywall itself is defective. There is no coverage provided

4

on this [commercial property] policy form." (FC&S Online, Chinese Drywall: The Next Big Issue, March 2010 (attached as Ex. 2).)

Even if Plaintiffs were correct in their interpretation that the latent defect exclusion applies only to a "quality within an object which makes it tend to destroy itself" (and they are not), the exclusion still would apply here to the home as a whole. The "covered property" under the Policy is the dwelling, of which the drywall is a component. Therefore, the damage claimed by Plaintiffs is due to a quality within the *home—defective drywall—*that causes the home to damage or destroy itself. *See Travco Ins. Co. v. Ward*, No. 2:10cv14, 2010 WL 2222255, at *11 (E.D. Va. June 3, 2010) (latent defect exclusion applies to drywall-related losses because the residence "suffers from defects 'that [] are integral to the damaged property's design or manufacture or construction'") (quoting *U.S. West v. Aetna Cas. & Sur. Co.*, No. 96-1698, 1997 WL 400081 (4th Cir. July 16, 1997) (unpub. table op.)). Thus, even under Plaintiffs' counter-intuitive and unduly narrow interpretation of "latent defect," that exclusion still applies.

Finally, although Plaintiffs briefly try to create an issue as to whether the defect in their home caused by the drywall is "latent" (Pls.' Br. at 2), they later admit that the alleged damage caused by the drywall "became apparent only after an interval of time; it was not immediately apparent." (*Id.* at 13.) The latent defect exclusion unambiguously applies to bar coverage of the purported losses to the dwelling.

**C.    The Corrosion Exclusion Applies.**

The Policy clearly excludes coverage for Plaintiffs' alleged loss "which consists of, or is directly and immediately caused by . . . corrosion," regardless of whether or not such corrosion "occurs suddenly or gradually." (Defs.' Br., Ex. A at 9.) To avoid the unambiguous "consists of" language in this exclusion, Plaintiffs argue that their "damage was not the corrosion itself . . .

5

[but] the loss of functionality of the metal fixtures, wiring, piping and other losses within the house." (Pls. Br. at 14.) The Fifth Circuit, however, applying Louisiana law, has denied similar attempts by plaintiffs to recast the nature of their injuries to evade clearly applicable policy exclusions. *See In re: Katrina Canal Breaches Litig.*, 495 F.3d at 223 (rejecting argument that loss was due to negligent design, construction or maintenance of levees rather than water damage from flood; "'[a]n insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss'") (quoting *Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 311 (Wash. 1994)).

No matter how Plaintiffs attempt to characterize the facts, they admit that the drywall in their home emits gases that, in turn, cause corrosion. (First Am. & Supp. Pet. ¶ 7 (drywall "emits sulfur, methane and/or other volatile organic compounds that *cause corrosion* of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items") (emphasis added), ¶ 4 ("electrical wiring, metal furniture fixtures, and other metals in the[] home have been tarnished and are being corroded/destroyed"); Pls.' Br. at 11 ("these compounds corrode wiring").) Plaintiffs' damage undisputedly consists of corrosion.

To aid their effort to get around the "consists of" language in the corrosion exclusion, Plaintiffs incorrectly urge the Court to find that the language "directly and immediately caused by [corrosion]" is ambiguous. Plaintiffs argue that because "directly" and "immediately" are not defined in the Policy, those words must be ambiguous. On the contrary, "[t]he fact that a term is not defined in the policy itself does not alone make that term ambiguous."[4] *In re: Katrina Canal*

---

[4] Plaintiffs reliance on *Smith v. Rocks*, No. 42,021-CA, p. 5 (La. App. 2 Cir. 5/16/07); 957 So. 2d 886, 888, for the proposition that an undefined term in an insurance policy has no precise meaning is unpersuasive. In that case, the issue was whether or not an underage driver was a "resident" of her non-custodial parent's household where she periodically spent the night. The

6

*Breaches Litig.*, 495 F.3d at 207.  Plaintiffs have cited no authority in which the phrase "directly and immediately" in an insurance policy has been found to be ambiguous.  Moreover, Plaintiffs' contention that the phrase must have both a causal and a temporal meaning is patently wrong.  The Policy excludes coverage for loss that "consists of, or is directly and immediately caused by [corrosion] *regardless of whether the loss occurs suddenly or gradually*."  (Defs.' Br., Ex. A at 9 (emphasis added).)  Thus, the Policy language is fatal to Plaintiffs' interpretation.

Plaintiffs cannot create an ambiguity where none exists.  Plaintiffs not only have alleged and argued that their loss consists of corrosion, but to the extent they attempt to argue some other, indeterminate type of loss, they admit that such loss is directly caused by corrosion.  (Pls.' Br. at 17 (damage "is actually a result of corrosion").)  The corrosion exclusion must be applied according to its plain and unambiguous language.

D.      **The Contamination Exclusion Applies.**

Although they initially attempt to muddy the waters by citing nonbinding authority applying the laws of other jurisdictions,[5] Plaintiffs ultimately adopt the definition of "contamination" set forth by the court in *Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766 (M.D. La. 2008), applying Louisiana law:  "'to make unfit for use by introduction of unwholesome or undesirable elements' or 'to soil, stain, or infect by contact or association.'"  (Pls.' Br. at 15 (quoting *Barry Concrete*, 531 F. Supp. 2d at 770).)  Ignoring their own allegations and arguments, however, Plaintiffs contend that their losses do not fall within *Barry Concrete*'s definition of contamination.

---

court's holding that the term "resident" was ambiguous under the unique facts of that case is inapplicable to the plain language of the corrosion exclusion in Plaintiffs' policy.

[5]  Notably, Plaintiffs cited at least two cases in which the contamination exclusion was found to be unambiguous and was applied to bar coverage.  *See Hi-G, Inc. v. St. Paul Fire & Marine Ins. Co.*, 391 F.2d 924 (1st Cir. 1968); *Auten v. Employers Nat'l Ins. Co.*, 722 S.W.2d 468 (Tex. Ct. App. 1986).

7

First, Plaintiffs incorrectly argue that the contamination exclusion does not apply because the drywall itself is not "unfit for use"; the drywall, so Plaintiffs say, is "doing its job in holding up the walls of the Burke's [sic] home . . . [and] complies with applicable ASTM standards." (*Id.* at 15–16.) But Plaintiffs themselves have alleged in their Petition that the drywall in their home has "caused a major structural defect to the walls of the home" (First Am. & Supp. Pet. ¶ 1) and "[does] not meet applicable building codes requirements and/or other standards." (*Id.* ¶¶ 15, 16.) Clearly, Plaintiffs believe that the drywall is "unfit for use" in a residential dwelling. Moreover, as discussed above, whether or not the drywall itself is unfit for its intended purpose to "hold[] up walls," Plaintiffs have alleged that the drywall has "caus[ed] the home to become *unsafe, unsanitary and otherwise unlivable*." (*Id.* ¶¶ 1, 14 (emphasis added).) The property covered by the Policy is the dwelling, and according to Plaintiffs' own allegations, the dwelling has been contaminated by the presence of defective drywall, thus rendering it "unfit for use" as a safe, sanitary, livable residence.

Plaintiffs next argue that the drywall "does not release 'unwholesome or undesirable elements,'" because "hydrogen sulfide and sulfur dioxide . . . are both compounds that are present in the environment at all times." (Pls.' Br. at 16.) Yet, in another part of their brief, Plaintiffs state that "the sulfur compounds that are released from Chinese-manufactured drywall *are no less ruinous to a home* than a fire that originated from flammable or untreated woods." (*Id.* at 11.) And Plaintiffs admit that "[t]oo much sulfur dioxide and hydrogen sulfide is 'unwholesome or undesirable.'"[6] (*Id.* at 16.) It is undisputed that, *as alleged and argued by*

---

[6] Plaintiffs' statement that the contamination exclusion does not apply "because State Farm failed to include that type of language ['too much'] in their exclusion" is erroneous. "[T]he fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous." *In re: Katrina Canal Breaches Litig.*, 495 F.3d at 210.

8

*Plaintiffs*, the sulfuric gases emitted from the drywall in Plaintiffs' home are unwholesome and undesirable elements that have contaminated the residence.

Likewise, Plaintiffs have made clear through their own admissions that the second definition of "contamination" provided by the *Barry Concrete* court—"to soil, stain, or infect by contact or association"—applies equally to bar coverage for their losses. Despite their contention that the drywall gases have not made their home "dirty" (Pls.' Br. at 16), Plaintiffs have stated that "these compounds . . . infested carpets, drapes and bedding." (*Id.* at 11.)

Finally, Plaintiffs' reliance on the decision in *McConnell Construction Co. v. Insurance Co. of St. Louis*, 428 S.W.2d 659 (Tex. 1968), is unavailing. In that case, gases from muriatic acid used to treat brick floors caused window casings and other metal in the home to corrode. The plaintiff builder sought coverage for the loss, and the insurer sought to apply a contamination exclusion to bar coverage. Although the court held that the damage to the plaintiff's property was caused by corrosion (the policy at issue there did not contain a corrosion exclusion) rather than contamination, there were no allegations that the home had become uninhabitable. *Id.* at 660–61. Here, by contrast, Plaintiffs have alleged that their home is "unsafe, unsanitary and otherwise unlivable" (First Am. & Supp. Pet. ¶ 1) as a result of the installation of defective drywall. Under *Barry Concrete*, the contamination exclusion bars coverage.

E. **The Drywall in Plaintiffs' Home Is a Defective and Faulty Material Within the Meaning of the Faulty Materials Exclusion, and the Losses Alleged Are Not Covered Ensuing Losses.**

Plaintiffs do not contest that the drywall installed in their home falls within the terms of the faulty materials exclusion of the Policy. (Pls.' Br. at 8.) Instead, Plaintiffs rely solely on the "resulting loss" clause, contending that any damage to the dwelling falls within that exception to the exclusion. The plain language of the provision, however, states clearly that, "we do insure

9

for any resulting loss from items a., b., and c., **unless the resulting loss is itself a Loss Not Insured by this Section**." (Defs.' Br., Ex. A at 11 (emphasis added).)

The very damages allegedly caused by compounds emitting from the drywall, which Plaintiffs now characterize as "resulting losses," are excluded under the unambiguous language of the faulty materials, latent defect, corrosion, and contamination exclusions. Plaintiffs have not alleged a single loss that has "resulted from" the presence of defective drywall in their home that is *not otherwise excluded* under the terms of the Policy.[7] None of Plaintiffs' alleged losses are covered resulting losses.

## CONCLUSION

All of Plaintiffs' alleged losses are excluded under the unambiguous terms of the Policy, and Plaintiffs do not dispute that the Policy does not cover any other alleged losses, including personal property, bodily injury, or diminished value.[8] For these reasons and those set forth in Defendants' opening brief, the Petition should be dismissed with prejudice.

---

[7] In addition, the losses alleged by Plaintiffs are not "resulting losses" at all. As stated by the court in *Travco*, "[t]he Chinese Drywall released reduced sulfur gases which harmed [the homeowner], members of his family, and items of personal property inside the . . . Residence. Although this damage occurred gradually over a period of time, it still represents a single discrete loss from a single discrete injury, namely the off-gassing of defective Chinese Drywall." *Travco*, 2010 WL 2222255, at *19 (citing cases).

[8] Because there is no coverage under the Policy, Plaintiffs' claims of bad faith and misrepresentation are without merit and also should be dismissed.

This 13th day of October, 2010.

/s/ Adrianne L. Baumgartner

_____
**ADRIANNE L. BAUMGARTNER, T.A. (#2861)**
**DARRIN M. O'CONNOR (#24582)**
**EMILY S. MORRISON (#18351**)
PORTEOUS, HAINKEL & JOHNSON
408 North Columbia Street
Covington, LA 70434
Telephone: (985) 893-4790
abaumgartner@phjlaw.com
doconnor@phjlaw.com
emorrison@phjlaw.com

**JAMES R. NIESET, JR. (#24856)**
PORTEOUS, HAINKEL & JOHNSON, LLP
704 Carondelet Street
New Orleans, LA 70130
Telephone: (504) 581-3838
jnieset@phjlaw.com

**Attorneys for State Farm Fire and Casualty Company**

**CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the foregoing Defendants State Farm Fire and Casualty Company's Reply in Support of Its Rule 12(b)(6) Motion to Dismiss has been served upon counsel for Plaintiffs Mona Burke Wife of/and Thomas E. Burke, IV, Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel Kerry Miller by U.S. Mail and email or by hand-delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on the 13th day of October, 2010.

/s/ Adrianne L. Baumgartner
**ADRIANNE L. BAUMGARTNER**

11