UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | *  MDL No. 2:09-md-02047 <br> * <br> * <br> * <br> *  JUDGE FALLON |
| **This document relates to:** | * <br> * |
| ROBERT C. PATE, as Trustee for the Chinese Drywall Trust <br> v. <br> AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, ET AL <br> (**2:09-cv-07791**) (E.D. La.) | * <br> *  MAGISTRATE WILKINSON <br> * <br> * <br> * <br> * <br> * |

*********************************************

### OWNERS INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE AND <u>ROBERT C. PATE'S  SECOND JOINT MOTION TO COMPEL</u>

**May it Please the Court:**

OWNERS INSURANCE COMPANY ("Owners") files this Opposition to Plaintiffs' Steering Committee and Plaintiff Robert C. Pate's ("Plaintiffs") Second Joint Motion to Compel. (Rec. Doc. 5640.)  Even though Owners fully complied with this Court's September 2, 2010 Minute Entry (Rec. Doc. 5450), Plaintiffs now claim that they need additional details regarding claims paid by Owners to Louisiana residents and/or entities in order to fully respond to Owners' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.  (Rec. Doc. 3302.)  However, for the reasons stated below, Owners has fully complied with the Court's prior order regarding discovery and the additional information Plaintiffs seek has no bearing on personal jurisdiction and, as such, Plaintiffs' Second Motion to Compel should be denied.

## I.     BACKGROUND

For the sake of brevity, Owners will not restate each and every background fact included in Owners' Opposition to Plaintiffs' First Motion to Compel on these same issues.  (Rec. Doc. 5381.)   But it is important to note that after oral argument regarding those issues, this Court entered a Minute Entry essentially denying all of Plaintiffs' requests, insofar as the requests related to Owners, except for one category: "Plaintiff's request that certain non-stipulating insurers provide discovery responses concerning…processing of insurance claims in Louisiana…[is] granted as it pertains to Owners, but with the understanding Owners is permitted time to clarify its contested responses."  (Rec. Doc. 5450, ¶ 1(d).)  On September 14, 2010, Owners supplemented its written discovery to comply with the Court's order.  Plaintiffs' Interrogatory No. 13 stated: "Identify the number of claims that You have paid to Louisiana residents or entities in the past 10 years and the total amount of those claims."  Owners provided the exact information requested and stated:

> "…[I]n accordance with the Court's September 2, 2010 Minute Entry (p. 3), Owners limits its supplemental responses to information dating back five (5) years, instead of the ten (10) years requested by PSC and Pate.  Pursuant to Paragraph 1(d) of the Court's Minute Entry stating that "Plaintiff's request that certain non-stipulating insurers provide discovery responses concerning…processing of insurance claims in Louisiana…[is] granted as it pertains to Owners, but with the understanding Owners is permitted time to clarify its contested responses" and notwithstanding Owners' original objections in its August 12, 2010 discovery responses, Owners and its Related Entities provide the following responsive information. Owners and its Related Entities paid the following to Louisiana claimants:
> 2005:  70 claims totaling $593,343.73.
> 2006:  61 claims totaling $481,743.92.
> 2007:  62 claims totaling $502,399.70.

      2008: 79 claims totaling $516,627.76.
      2009: 74 claims totaling $431,381.04.[1]

On September 16, 2010, Plaintiffs conducted a Federal Rule of Civil Procedure 30(b)(6) deposition of Owners. Plaintiffs also deposed a separate Owners Senior Attorney as a fact witness. Both the corporate and fact witnesses testified to the jurisdictional issues outlined in the respective "Schedule 'A'" of the deposition notices.[2]

Plaintiffs now seek additional, underlying details regarding these payments in an effort to establish personal jurisdiction. Plaintiffs' Second Motion to Compel this information should be denied. First, Owners precisely responded to Interrogatory No. 13 by providing the exact information requested, i.e. the number and amount of payments made to Louisiana residents and/or entities for the last five years. Second, the information requested by Plaintiffs is irrelevant, overly broad and unduly burdensome. Plaintiffs seek the following information for <u>each</u> claim paid:

(i) "Who paid the money (which entity – where they were located),

(ii) to whom they were paid,

(iii) for what injury / type of claim,

(iv) based on whose policy(ies), and

(v) where were the insureds located."[3]

---

[1] *See* Owners' Supplemental Response to Plaintiff Robert C. Pate's Interrogatories and Requests for the Production of Documents Concerning Jurisdiction and Venue, dated September 14, 2010, attached hereto as Exhibit "A."

[2] *See* First Amended 30(b)(6) Deposition Notice to Owners Insurance Company and Second Amended Notice of Deposition of Scott Norris, attached hereto *en globo* as Exhibit "B."

[3] *See* Plaintiffs' Memorandum in Support of Second Motion to Compel, p. 11. (Rec. Doc. 5640-1.)

Owners has already provided the information requested in categories (i), (iv) and (v). For instance, (i): Auto-Owners, or its related entities, paid the money and none of the entities are licensed to write insurance policies in Louisiana; (iv): none of the policies were written in Louisiana; (v): Neither Auto-Owners, Owners, nor any of the related entities have Louisiana insureds. The information sought in categories (ii) and (iii) are irrelevant insofar as they relate to conferring jurisdiction.

As Owners has already testified, providing additional information on claims paid would require a manual search of each and every claim file, whether located at the home office or in a branch office.[4] Owners has also testified that the there are approximately 4 million total closed claim files in [the] warehouse, which is a 117,000 square foot building.[5] Owners' parent corporation, Auto-Owners, operates in 25 states with 79 claim branches, which could potentially hold "open" files.[6] Requiring Owners, or any of its related entities, to conduct a manual search of each and every file related to payment to a Louisiana resident and/or entity to determine the underlying facts of such payment made would be unduly burdensome and would require several employees working over several days due to the sheer volume of Owners and related entities' claims files. Finally, ordering any additional testimony on the jurisdictional issues will prove to be unproductive because any additional testimony, whether from the same or different deponents, will yield duplicative responses. Just because the Plaintiffs don't "like" the

---

[4] *See* Deposition Transcript of Owners at 65:2 – 11, attached hereto as Exhibit "C." *See also* Affidavit of Kathleen Lopilato, ¶¶ 9-11, 13, originally attached as Exhibit "D" to Owners' Opposition to Plaintiffs' Steering Committee and Robert C. Pate's Motion to Compel (Rec. Doc. 5420-2) and attached hereto as Exhibit "D."
[5] *See* Exhibit "D," Affidavit of Kathleen Lopilato, ¶¶ 15-16.
[6] *See id.*, ¶ 2.

answers given does not mean they should be afforded a second bite at the proverbial apple.

Furthermore, for reasons more fully stated below, such information is outside the scope of discovery and irrelevant for the purposes of determining personal jurisdiction. Therefore, Owners respectfully requests that the Court deny Plaintiffs' Second Motion to Compel.

## II. LAW AND ARGUMENT

Plaintiffs' attempt at a fishing expedition for additional, irrelevant information contained in the manual claim file for any claim paid to a Louisiana resident and/or entity is simply unsupported. The Fifth Circuit imposes a "high standard set by the Supreme Court" to establish general jurisdiction, and recognizes "just how difficult it is" to meet the standard. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610-611 (5th Cir. 2008).

Two cases arising out alleged contacts with Texas shed light on this matter. In the leading Supreme Court case concerning general jurisdiction, the Court found general jurisdiction lacking despite the defendant's extensive contacts with Texas, including the purchase of approximately eighty percent of its helicopter fleet, parts, and accessories from a Texas company, sending prospective pilots and management and maintenance personnel to Texas for training and consultation, sending its chief executive officer into Texas to negotiate a contract, and accepting a $5 million check drawn on a Texas bank. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416-419 (1984). The Fifth Circuit in *Access Telecom, Inc. v. Telecommunications Corp.* likewise affirmed a finding of no proof of general jurisdiction even though the defendant had "numerous" contacts

with Texas over a period of years, including leasing telephone lines and real property in the state, paying taxes in Texas, contracting to warehouse 75,000 telephone poles in Texas, and receiving revenue from Texas residents totaling millions of dollars per month. 197 F.3d 694, 717 (5th Cir. 1999). The court concluded that defendant's contacts failed to demonstrate a business presence in Texas sufficient to sustain general jurisdiction. *Id.* at 718.

In the present case, Plaintiffs refer the Court to *Adams v. Unione Mediterranea Di Sicurta, et al.* to make the argument that "it is possible for an insurer to find itself subject to personal jurisdiction in a state that it not only did not contract business, but that it actively avoided, due to the activities of its insureds" 234 F.Supp.2d 614 (Ed. La. 2002).[7]  The *Adams* case is distinct from the present case and, therefore, additional information regarding claims Owners, or any of its related entities, paid to a Louisiana resident and/or entity is irrelevant.  In *Adams*, the Fifth Circuit reversed and remanded the matter instructing the district court to determine whether the court had personal jurisdiction over a foreign cargo insurer.  *Id*. at 616.  The district court found that the insurer did avail itself to personal jurisdiction in Louisiana because "[the insurer] is an international company that generates substantial income from insuring cargo that is discharged and trans-loaded in Louisiana" and "[the insurer] has benefitted substantially from those contacts."  *Id*. at 625.  The *Adams* Court also took into account that the "tort that gave rise to this suit occurred in Louisiana." *Id*.

The discovery already undertaken proves that the present case is distinguishable from *Adams* and that no further investigation into Owners' claims files is needed. Owners testified via Scott Norris' factual and sworn affidavit that Owners is not licensed

---

[7] *See* Plaintiffs' Memorandum in Support of Second Motion to Compel, p. 13.  (Rec. Doc. 5640-1.)

6

to write policies of insurance in Louisiana; it does not write policies of insurance in Louisiana; it does not maintain offices in Louisiana; it does not have employees in Louisiana; it does not solicit business from Louisiana residents; it does not advertise for business on any local radio or television outlet or in any publications in Louisiana; it does not collect premiums from Louisiana residents; and it has not designated a registered agent for service of process within the State of Louisiana.[8]  *Helicopteros*, 466 U.S. at 416-419; *see also Access Telecom*, 197 F.3d at 717 n. 6 (that defendant paid for services provided by Texas corporations "add[ed] little" to jurisdictional analysis).  Further, Owners' corporate representative testified as follows:

> Q. Is Auto-Owners or Owners Insurance or any of those other companies that we've been discussing licensed to do business in the state of Louisiana?
>
> A. They are not.
>
> Q. Auto-Owners or Owners Insurance or those other companies, do they write insurance in Louisiana?
>
> A. They do not.
>
> Q. Does Auto-Owners or Owners Insurance or the other companies that we've been talking about maintain any offices within the state of Louisiana?
>
> A. They do not.
>
> Q. Do Auto-Owners or Owners or any other insurance companies that we've been speaking about maintain any employees in the state of Louisiana?
>
> A. They do not.

---

[8] *See* Affidavit of Scott Norris, ¶ 3, originally attached as Exhibit "A" to Owners' Motion to Dismiss First Amended Complaint for Lack of Jurisdiction and Improper Venue (Rec. Doc. 3302) and attached hereto as Exhibit "E."

7

> Q. Does Auto-Owners or Owners or these other companies have any agents in the state of Louisiana?
>
> A. They do not.
>
> Q. Does Auto-Owners or Owners or these other companies that we've been talking about have any Louisiana insureds?
>
> A. They do not.
>
> Q. Does Auto-Owners or Owners or the other companies we've been talking about solicit any business in Louisiana?
>
> A. They do not.
>
> Q. Does Owners -- Auto-Owners or Owners or the other companies we've been talking about advertise for any business in Louisiana, whether it be radio, TV, billboards, etcetera?
>
> A. They do not.
>
> Q. Does Auto-Owners or Owners or any of the companies that we've been talking about have any registered agents for the service of process --
>
> A. They do not.
>
> Q. -- in Louisiana?
>
> A. They do not.[9]

Owners has also established through sworn testimony that there is no electronic database housing the information Plaintiffs seek.

> Q. It could be auto, it could be a bar fight, it could be construction, it could be – it might be a barge, it could be anything?
>
> A. Yeah. I'm not aware of a barge.
>
> Q. I don't know. I'm just saying.

---

[9] *See* Deposition Transcript of Owners at 131:11 – 133:4, attached hereto as Exhibit "F."

>A. Okay.
>
>Q. They could come from a variety of different avenues?
>
>A. They could, yes. We would not know without a manual review of each file.[10]

Apparently Plaintiffs understand this process as they exclaim in their memorandum of law, "Defendant's representatives testified that the only way to know whether the claimants were Louisiana companies, or whether they had policies covering potential issues in Louisiana, would be to look at the papers. But no one did!"[11] Owners does not contest Plaintiffs' assertion that Owners Senior Attorneys, in preparing their respective affidavits or in responding to Interrogatory No. 13, did not conduct a paper review of each claim file because, first, Interrogatory No. 13 did not request this information; rather, the request called for the number of and amount of claims paid to Louisiana residents and/or entities, which Owners fully answered in its supplemental discovery responses. But more importantly, it would be unduly burdensome for Owners to manually review over 4 million closed claims files stored in the warehouse and other potentially "open" files in the 79 branch offices in order to determine the underlying facts of each claim paid to a Louisiana resident and/or entity for the past five years.

Indeed, even if Owners were to conduct a search of every claim file related to a payment in Louisiana, jurisprudence dictates that Owners' payment of a claim to some resident or entity on behalf of some event that occurred in Louisiana does not confer personal jurisdiction. *Choice Healthcare, Inc., et al. v. Kaiser Foundation Health Plan of*

---

[10] *See* Exhibit "C," Deposition Transcript of Owners at 65:2 – 11.
[11] *See* Plaintiffs' Memorandum in Support of Second Motion to Compel, p. 12. (Rec. Doc. 5640-1.)

*Colorado, et al.*, 615 F.3d 364 (5th Cir. 2010).[12]  A defendant's intermittent payments to Louisiana over the course of more than three years [are] insufficient to establish "continuous and systematic" contact with the forum state.  *Id*.  Moreover, the fact that Owners has engaged in other litigation is not indicative of minimum contacts.  *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 n. 4 (5th Cir. 1990).  The mailing of payments to residents and/or entities located in a state does not confer personal jurisdiction.  *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985).  Finally, the sale of a product in the forum state is generally insufficient to establish general jurisdiction.  *See Johnston*, 523 F.3d at 612 (defendant's sale of approximately $140,000 worth of goods in forum state insufficient to justify general jurisdiction); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373-76 (5th Cir. 1987) (sale of over $250 million of products to forum state's customers over five years did not support general jurisdiction).

To order Owners to conduct a manual search of all claims files would prove futile.  The underlying facts of each claims file are irrelevant.  Whether Owners paid a claim on behalf of an auto accident occurring in Louisiana, a bar fight occurring in Louisiana, a commercial dispute occurring in Louisiana, or otherwise, still does not lead to discoverable evidence for jurisdictional issues.  The fact of the jurisdictional matter is that Owners is not licensed to write policies of insurance in Louisiana; it does not write policies of insurance in Louisiana; it does not maintain offices in Louisiana; it does not have employees in Louisiana; it does not solicit business from Louisiana residents; it does not advertise for business on any local radio or television outlet or in any publications in Louisiana; it does not collect premiums from Louisiana residents; and it

---

[12] Owners previously briefed this issue and cited to *Choice Healthcare* in its first Opposition to Plaintiffs' Motion to Compel.  (Rec. Doc. 5381, pp. 7-8).

has not designated a registered agent for service of process within the State of Louisiana. *Helicopteros*, 466 U.S. at 416-419; *see also Access Telecom*, 197 F.3d at 717-718.

Plaintiffs are simply attempting to engage in a fishing expedition. However, courts have routinely held that overly-broad discovery requests which amount to nothing more than mere "fishing expeditions" are not tolerated. *Strait v. Mehlenbacher*, 526 F. Supp. 581, 584 (W.D. N.Y. 1981); *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 432 (E.D. Mich. 1979); *Murphy v. Cooper Tire & Rubber Co.*, 2008 WL 5273548, *6 (N.D. Fla. Dec. 18, 2008) (finding overly broad and unduly burdensome a request for the production of documents regarding steel-belted tires of nearly every size, every type, and every model manufactured at Cooper-owned plants during a fifteen-year period). As one federal court explained, "[t]he request in this instance represents not merely a 'fishing expedition,' but . . . an effort to 'drain the pond and collect the fish from the bottom.'" *Amcast Industrial Corp. v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) (quoting *In re IBM Peripheral EDP Devices Antitrust Litigation*, 77 F.R.D. 39, 41-42 (N.D. Cal. 1977)). Finally, Owners takes exception with Plaintiffs' statements that Owners did not diligently and truthfully respond to Plaintiffs' discovery. The accusations are unwarranted, spurious attacks due to the weakness of Plaintiffs' argument. Plaintiffs' present motion to compel is simply a dilatory tactic to avoid the November 3, 2010 hearing on the jurisdictional issues.

### III.     CONCLUSION

For the foregoing reasons, Owners Insurance Company respectfully requests this Court to deny Plaintiffs' Steering Committee and Robert C. Pate's Second Motion to Compel.

Respectfully submitted:

**LEAKE & ANDERSSON LLP**

*/s/ Amanda W. Vonderhaar*
_____

**JERRY L. SAPORITO, T.A. (#11717)**
jsaporito@leakeandersson.com
**W. PAUL ANDERSSON (#2474)**
pandersson@leakeandersson.com
**AMANDA W. VONDERHAAR (#31350)**
avonderhaar@leakeandersson.com
1700 Energy Center
1100 Poydras Street
New Orleans, Louisiana 70163-1701
Telephone: (504) 585-7500
Fax: (504) 585-7775

**-AND-**

**MORROW, ROMINE & PEARSON P.C.**

*/s/ Roger S. Morrow*
_____

**ROGER S. MORROW** (pro hac vice)
rsmorrow@mrplaw.com
Post Office Box 4804
Montgomery, Alabama 36103-4804
Telephone: (334) 262-7707
Fax: (334) 262-7742

*Attorneys for Owners Insurance Company, Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **Memorandum of Law in Opposition to Plaintiffs' Steering Committee and Robert C. Pate's Second Motion to Compel** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United states District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 18th day of October, 2010.

*/s/ Amanda W. Vonderhaar*
_____

AMANDA W. VONDERHAAR