# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL   *   MDL NO. 2047
PRODUCTS LIABILITY LITIGATION        *
                                        *    SECTION "L"
THIS DOCUMENT RELATES TO:        *
                                        *    JUDGE FALLON
**BARRY DEMPSTER, et al.**           *
CASE NO. 2:09-5482-EEF-JCW; AND      *    MAG. JUDGE WILKINSON
**T. JACK KENT, et al.,**             *
CASE NO. 2:10-01110-EEF-JCW; AND    *
**OMNIBUS COMPLAINT III (GROSS/BENES)**   *
                                        *
CASE NO. 2:09-6690-EEF-JCW.        *
**************************************

## LOWE'S MEMORANDUM IN OPPOSITION TO PSC'S MOTION TO ENJOIN STATE COURT PROCEEDINGS IN MUSCOGEE COUNTY, GEORGIA

    With at most two or three dubious Chinese-manufactured drywall ("CDW") claims[1] against Lowe's Home Centers, Inc. ("Lowe's") in this MDL, the Plaintiffs' Steering Committee ("PSC") asks this Court to take the extraordinary and unprecedented step of enjoining thousands of individuals this Court has no jurisdiction over and interfering with their rights to settle claims. Relying on misstatements of fact, the PSC wants this Court to ignore the rights and already expressed desire of thousands of individuals to participate in a national class action in Georgia state court, rendering null and void previously provided class notice and an ongoing settlement claims process, and resulting in irreparable harm to those individuals and to Lowe's. Further, the Georgia state court settlement is broader than the claims in the MDL as it would resolve **all** claims against Lowe's involving all allegedly defective drywall, not just the CDW claims that are before this Court.

    The PSC asks this Court to do something that no district court in the United States has ever done under similar circumstances: violate the Anti-Injunction Act and bedrock principles of

---

[1] See discussion of claims against Lowe's at Statement of Facts and Procedural History, Section B, *infra.*

comity by enjoining a state court in mid-stream from proceeding with a class action settlement. The PSC's motion comes **before** this Court has: (1) certified a class; (2) preliminarily approved a class action settlement; or (3) issued any order of any kind that precludes the parties in the state court suit from settling their claims.

The relief sought by the PSC is explicitly prohibited by the Anti-Injunction Act, 28 U.S.C. §2283, which limits the All Writs Act and "is designed to preclude unseemly interference with state court proceedings."[2] None of the exceptions to the Anti-Injunction Act applies. Not only is an injunction prohibited by the Anti-Injunction Act, but the PSC has also failed to prove any entitlement to an injunction. Rules 23 and 83 of the Federal Rules of Civil Procedure are also inapplicable and provide no support for the PSC's requested relief.

The Georgia settlement is completely consistent with the goal of this Court to resolve, rather than prolong, litigation.   It does not "conflict and interfere with this MDL Court's jurisdiction over the [CDW] litigation."[3]   It is hard to imagine how a settlement involving a single Defendant and three (at most) plaintiffs in the MDL, who have little or no chance of ever becoming or remaining adequate representatives for any class, could possibly interfere with this Court's oversight of thousands of unrelated claims against hundreds of other defendants.[4] This is particularly true when the PSC has elected not to include Lowe's in whatever global settlement efforts may be ongoing before this Court.[5]

---

[2] *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1100–03 (9th Cir. 2008) (reversing injunction which prohibited defendant companies from negotiating settlement with plaintiff's counsel in other actions); *see also Atlantic Coast Line R.R. Co. v. Bd. of Locomotive Engineers*, 398 U.S. 281, 286 (1970) (Anti-Injunction Act creates an "absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions.").

[3] PSC Motion to Enjoin, p. 1.

[4] *See* Plaintiffs' Steering Committee's Memorandum of Law in Support of Its Motion To Enjoin Conflicting State Court Proceedings in Muscogee County, Georgia That Interfere With This Court's Continuing Jurisdiction Over This Litigation ("PSC Brief") at 13 (emphasis added).

[5] As discussed in more detail in Section II.C, *infra*, the proposed KPT pilot program that could potentially result in the remediation of fewer than 10% of the claims against KPT only, is not a "settlement" at all.

I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.      The Georgia Court Has Preliminarily Approved a Nationwide Settlement of Claims Related to All Allegedly Defective Drywall Against Lowe's

On July 27, 2010, the Georgia court preliminarily approved a nationwide, class-action settlement of all claims asserted against Lowe's relating to all allegedly defective drywall. *Vereen v. Lowe's Home Centers, Inc.*, Case No. SU10-cv-2267B (Super. Ct. Muscogee Cty.) [6] The *Vereen* lawsuit alleged damages caused by allegedly defective "domestic" drywall, not CDW. Accordingly, even if *Vereen* had been removed from Georgia state court, which it was not, it could never be part of this MDL, which is explicitly limited to CDW. Moreover, the *Vereen* settlement resolves domestic drywall claims, which are not part of this MDL. While settlement of *all* allegedly defective drywall claims against Lowe's, including CDW claims, in the Georgia state court is objectionable to the PSC, how else could a defendant like Lowe's buy its peace from all of these claims? This MDL is explicitly limited to CDW claims. If the PSC's argument is correct, then neither Lowe's nor any other defendant facing allegations of defective CDW *and* non-CDW could ever settle claims in a single forum. The state court "Order Preliminarily Approving Class Action Settlement, Settlement Certification, and to Schedule Final Fairness Hearing" ("Preliminary Approval Order") which the PSC seeks to enjoin, is attached hereto as Exhibit A. Significantly, the Preliminary Approval Order permits an opt-out.

B.      The Claims of the Lowe's Plaintiffs in the MDL.

Among the thousands of plaintiffs in the MDL, there are only three plaintiffs in the MDL – and none represented by the members of the PSC – who have filed claims against and seek

---

[6] The background information provided to the Court by Lowe's in support of Lowe's motion to stay this MDL as to Lowes only is equally applicable to the issues presented by this motion and is hereby adopted by reference.

relief from Lowe's; they will collectively be referred to as the "Lowe's Plaintiffs."[7]  Each of the

Lowe's Plaintiffs claims to have suffered damages related to the purchase of allegedly defective

CDW from Lowe's.  The three Lowe's Plaintiffs in the MDL are included in the class definition

set forth in the Preliminary Approval Order and thus have the option to either participate in, or

opt-out of, the Georgia settlement.

None of the three Lowe's Plaintiffs has proven there is, in fact,  CDW purchased from

Lowe's in their homes.[8]  This is an important distinction from the lion's share of the claims in

the MDL, where there is no question that the plaintiffs have CDW in their homes. Even if the

three Lowe's Plaintiffs do have CDW in their homes, they have the option of opting out of the

*Vereen* settlement and remaining in the MDL. These facts alone make an eloquent argument that

this Court should deny the PSC's motion.

The first suit against Lowe's seeking damages associated with CDW allegedly purchased

from Lowe's, captioned *Dempster vs. Lowe's Home Centers, Inc.,* case number 2:09-5482, was

filed on August 10, 2009, in the Eastern District of Louisiana and was automatically consolidated

into the MDL based upon the representation in the Complaint that the case involved CDW.  But

for the reasons detailed in Lowe's pending Motion to Deconsolidate from MDL (Rec. 1561) filed

---

[7] At this time, Lowe's is aware of the following pending claims against it in these consolidated proceedings: *Dempster v. Lowes Home Centers, Inc.,* Case No. 09-5482; and *Kent v. Lowe's Home Centers, Inc.,* Case No. 10-1110; and a single plaintiff (Sheila Guidry) in *Gross/Benes (Omnibus III),* Case No. 09-6690.  Attached is Exhibit B is a chart of  fifteen (15) plaintiffs represented by Pendley, Baudin and Coffin LLP and others who have dismissed their claims against Lowe's in *Omnibus III,* along with a copy of each Notice of Voluntary Dismissal. Attached as Exhibit C is a chart of twenty-four (24) plaintiffs represented by Don Barrett, P.A. and Lovelace Law Firm, P.A. who have dismissed their claims against Lowe's in *Omnibus III,* along with a copy of each Notice of Voluntary Dismissal.

[8] Should the Court be in any way inclined to grant the PSC's motion, before doing so each of the Lowe's Plaintiffs should immediately be required to prove that they have CDW and that it came from Lowe's.  If they cannot, they and/or their claims against Lowe's do not belong in the MDL. The Court should not allow unsupported claims by three plaintiffs, who may not even belong in the MDL and will not withstand the scrutiny of the class action criteria (including adequacy or representation of a class action naming Lowe's), to frustrate a settlement involving thousands of others, especially when those three plaintiffs have the option of opting out of the settlement. It would be a travesty of justice if the Court were to grant an injunction, only to find out months from now that NONE of these three Lowe's Plaintiffs actually have CDW from Lowe's in their home.

on November 25, 2009, *Dempster* does not belong in the MDL. The Threshold Inspection Program inspection of their home completed on October 20, 2009, by the court-appointed expert demonstrated **the Dempsters have no evidence CDW even exists in their house.**[9] In the more than eight months since the filing of the Motion to Deconsolidate, there has been no further activity in the *Dempster* lawsuit.

While there has been minimal activity in *Dempster,* there has been no activity in the action captioned *Kent v. Lowe's Home Centers, Inc.,* case number 2:10-01110, which was consolidated into the MDL based upon a Conditional Transfer Order from the Middle District of Florida. Mr. Kent also seeks damages associated with his alleged purchase of CDW from Lowe's. There has likewise been no activity relating to Lowe's in *Gross v. Knauf Gips KG, et. al, (Omnibus III),* case number 2:09-6690. In fact, **of the 40 Lowe's Plaintiffs named in Omnibus III, 39 have dismissed their claims against Lowe's.**[10] Based upon discussions with counsel for these 39 plaintiffs, the primary reason for these dismissals is that the inspections of these homes, like the inspection of the Dempster home, found no CDW.

Through the *Vereen* settlement, Lowe's has taken a proactive step in resolving issues with its customers and others. Significantly, **the Vereen settlement does not in any way affect the rights of the class members to pursue claims against any parties other than the Lowe's entities.** Accordingly, if the Lowe's Plaintiffs have claims against manufacturers or other retailers, for instance, the Preliminary Approval Order and the stay requested by Lowe's would

---

[9]   The Dempsters are also parties to the pending Motion to Intervene (Rec. 4350) filed in *Gross/Benes (Omnibus III),* case number 2:09-cv-6690, through which they seek to become plaintiffs in *Omnibus III* while still maintaining their claims in case number 2:09-cv-5482. Lowe's opposes the Motion to Intervene to the extent that it seeks to add claims against Lowe's, such as the duplicative claims of the Dempsters, and the claims of Charles and Tracy Bowden and Gregory Bell, who are also moving to intervene to assert claims against Lowe's. All of these purported claims against Lowe's in the Motion to Intervene are subject to the Preliminary Approval Order. Thus, even if the Court were to allow these additional plaintiffs to intervene over the objection of Lowe's, there would be only five (5) Lowe's Plaintiffs in the MDL.

[10]   See Exhibits B and C.

not impede those claims. And if the few Lowe's Plaintiffs have CDW in their homes – a minimum threshold of proof to even be in the MDL – and do not want to be part of the settlement, each has the right to individually opt-out.[11]

### C.   The *Vereen* Settlement is Nearly Two Months into the Class Notice and Claims Period

The *Vereen* settlement is proceeding apace. On August 26, 2010, the court-ordered point-of-sale notification commenced, and each purchaser in all Lowe's retail stores in the United States began receiving notification on their store receipts of the nature of the *Vereen* action, a description of the settlement class, information regarding the November 19, 2010, fairness hearing, information regarding how class members may request exclusion from the settlement or object to the settlement, and the address of the Settlement Administrator's website and the telephone number of the Settlement Administrator to enable the class member to obtain additional information and obtain and complete a claim form.  Notice has also been published in two national, newspaper-distributed magazines, *Parade Magazine* and *USA Weekend*, and in two national magazines, *People* and *National Geographic*.

Claim forms are being submitted daily by mail and online through the website: www.DrywallSettlement.info.  A toll-free number has been established to answer questions and to allow claimants to request detailed notice and forms.  More than ten thousand claims have been submitted. If the Court grants the unprecedented relief requested by the PSC, these individuals will not be able to receive settlement benefits, and a settlement already proceeding will be wrongly halted, all because of three Lowe's Plaintiffs who have not even shown they have CDW in their homes!

---

[11] Each Lowe's Plaintiff may not opt-out as the representative of a putative class.

These facts and the procedural history alone support the denial of the PSC's motion. The legal authorities below show there is no support for it whatsoever.

## II.   ARGUMENT

### A.   Because no class has been certified in this Court, this Court does not have personal jurisdiction over members of the *Vereen* class

As a threshold matter, this Court must examine its power over the parties. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 134 F.3d 133, 140 (3d Cir. 1998) ("*In re GMC*"). Any injunction issued by this Court would necessarily affect the nationwide group of class members in *Vereen* who have settled their claims against Lowe's. Therefore, any injunction would require this Court to exercise personal jurisdiction over all of these people. *In re GMC*, 134 F.3d at 141.

Due process requires that in order to subject a person to a judgment *in personam*, if the person is not present in the territory of the forum, the person must have certain minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *In re GMC*, 134 F.3d at 141, citing *Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In a Rule 23(b)(3) context, the Supreme Court has held that it is possible for a court to bind an absentee class member to a judgment without abrogating minimal due process protection, even if the party did not have minimum contacts with the forum. *In re GMC*, 134 F.3d at 141, citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–13 (1985). But there is no certified class pending before this MDL court. When a class has not yet been certified, the Court treats the case as one brought by the named plaintiffs individually. *Kaplan v. Utilicorp United, Inc.*, 9 F.3d 405, 407 (5th Cir. 1993); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 n. 5 (5th Cir. 1994). Before certification of a class, the only plaintiffs before the Court are

7

the putative representative parties. *Berthelot v. Stallworth*, No. Civ.A 99-3618, 2000 WL 222155, *2 (E.D. La. Feb. 18, 2000).

Thus, except for the two or three (at most) named Lowe's Plaintiffs, no potential *Vereen* class members are now before this Court. Yet the PSC is asking the Court to enjoin the entire *Vereen* class from settling their claims. No basis exists upon which this Court can infer the consent of these absent individuals to this Court's jurisdiction. *See In re GMC*, 134 F.3d at 141. Therefore, the only plaintiffs this Court has personal jurisdiction over are the named class representatives in the consolidated purported class actions.

To paraphrase *In re GMC,* 134 F.3d at 141: The *Vereen* class members are not parties before this Court; they have not constructively or affirmatively consented to the Court's jurisdiction; and most do not have minimum contacts with Louisiana. Therefore, due process deprives this Court of personal jurisdiction and prevents the injunction sought by the PSC.

**B.      The Anti-Injunction Act forbids the injunction the PSC seeks**

Even if this Court had personal jurisdiction over the *Vereen* class members (which it does not), the injunction that the PSC seeks is prohibited by the Anti-Injunction Act, which provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

The PSC seeks an injunction under the All Writs Act, 28 U.S.C. §1651(a), which provides that federal courts may issue writs "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Injunctions under the All Writs Act are to be issued "sparingly and only in the most critical and exigent circumstances." See *Brown v. Gilmore*, 533 U.S. 1301, 1302 (2001). The All Writs Act is constrained by the Anti-

Injunction Act and must be read in conjunction with that limitation. *See Retirement System of Alabama v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004) (All Writs Act is limited by the Anti-Injunction Act).

Since its passage in 1793, the Anti-Injunction Act has served as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engrs.*, 398 U.S. 281, 286 (1970); *see also Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977). It is not a statute conveying a broad general policy for appropriate *ad hoc* application. Rather, it expresses legislative policy in a clear-cut prohibition qualified only by specifically defined exceptions. *Atlantic Coast Line R.R. Co.*, 398 U.S. at 287. Thus, any injunction against state-court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions if it is to be upheld. *Id.*

The Anti-Injunction Act is aimed at preventing conflict between federal and state courts. *See U.S. v. Billingsley*, No. 09-40734, 2010 WL 3212784, *3 (5th Cir. Aug. 16, 2010). Accordingly, any doubts related to the propriety of a federal injunction against state court proceedings are to be resolved in favor of permitting the state courts to proceed unimpeded. *See Atlantic Coast Line R.R. Co.*, 398 U.S. at 297. Finally, the absolute prohibition in the Anti-Injunction Act cannot be evaded by addressing the order to the parties or prohibiting their using the results of a completed state proceeding. *Atlantic Coast Line R.R. Co.*, 398 U.S. at 287.

The three exceptions to the Anti-Injunction Act must be construed narrowly. "[S]ince the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction." *Atlantic Coast Line R.R. Co.*, 398 U.S. at 287. The statutory prohibition

"is not to be whittled away by judicial improvisation." *Vendo Co.*, 433 U.S. at 631, quoting *Amalgamated Clothing Workers of Am. v. Richman Bros. Co.*, 348 U.S. 511, 514 (1955). Thus, any injunction against the *Vereen* proceedings must be grounded in one of the three exceptions to the Anti-Injunction Act, *i.e.* "expressly authorized by Act of Congress," "necessary in aid of [this Court's] jurisdiction," or "to protect or effectuate [this Court's] judgments."

### 1.    None of the Exceptions to the Anti-Injunction Act Applies

None of the three exceptions applies. The PSC has not cited any Act of Congress overriding the Anti-Injunction Act; nor has the PSC identified any judgment of this Court in need of protection or effectuation through an injunction.

The PSC tries to shoehorn this case into the remaining exception, "necessary in aid of [the Court's] jurisdiction." Its thesis is that any district court handling complex litigation, such as a class action or multi-district litigation, is automatically empowered to enjoin any state-court proceedings involving the same claims.[12] But the PSC's unprecedented grab for expansion of federal control over state courts is expressly barred by the Anti-Injunction Act and must be rejected for at least two reasons.

First, the "necessary in aid of jurisdiction" exception generally applies only to *in rem* cases, where only one court at a time can exercise jurisdiction over the *res*. By its nature, this exception cannot apply to *in personam* cases such as the case at bar. *See Kline v. Burke Constr. Co.*, 260 U.S. 226, 230 (1922); *see also Vendo Co.*, 433 U.S. at 641-42. To the extent that the PSC is suggesting that any MDL or class action can be deemed to be equivalent to an *in rem* proceeding under the Anti-Injunction Act, the PSC is wrong. The Second Circuit flatly rejected this argument in *Retirement Systems of Alabama*, distinguishing *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985): "We reject as unfounded defendants' contention that *Baldwin-United*

---

[12] *See* PSC brief at 9–15.

created a presumption that multidistrict class actions should be regarded as *in rem* actions." 386 F.3d at 427 n. 7. "*Baldwin-United* did not hold that multidistrict class actions are, in general, to be deemed virtual *in rem* proceedings..." *Id.* at 429.

Likewise, in *In re Federal Skywalk Cases*, 680 F.2d 1175, 1183 (8th Cir. 1982), the Eighth Circuit applied the traditional distinction between *in rem* and *in personam* cases, holding that the latter did not fit the "necessary in aid of jurisdictions" exception to the Anti-Injunction Act. Most recently, the Sixth Circuit decided *In re Life Investors Insurance Co. of America*, 589 F.3d 319 (6th Cir. 2009), rejecting the argument that the 'in aid of jurisdiction' exception can be used by a federal court to take ownership of complex class action cases to the exclusion of the state courts. Reversing an order that enjoined the defendant from settling a parallel class action in Arkansas state court, the Sixth Circuit rebuffed the argument that a complex class action can be treated as a *res* in a case where (as here) the federal court had not certified a class, and where (as here) the competing state class action was an opt-out class action that could not affect the rights of the federal plaintiffs unless they elected not to opt-out. The Court held that "a simultaneous *in personam* state action does not interfere with the jurisdiction of a federal court in a suit involving the same subject matter." 589 F.3d at 330.

The recognition of a fictional *res*, as the PSC asks this Court to do, is the very kind of "whitt[ling] away by judicial improvisation"[13] of the statutory prohibition that the Supreme Court has admonished federal judges not to do. By recognizing or creating some fictional *res* as the basis for a flimsy "aid in jurisdiction" theory, this Court would ignore the Supreme Court's admonition and violate its precedent.

The second reason that the "necessary in aid of jurisdiction" exception cannot apply here is that the Georgia court does not so interfere with the federal court's "consideration or

---

[13] *Vendo Co.*, 433 U.S. at 631, quoting *Amalgamated Clothing Workers of Am.* 348 U.S. at 514.

disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002) (citing *Atlantic Coast Line R.R. Co.*, 398 U.S. at 295). The simple fact that a state action may resolve an issue first "is not by itself a sufficient threat to the federal court's jurisdiction that justifies an injunction…" *Id.* at 236. There is no "blanket rule or presumption that a federal court in any multidistrict action may enjoin parallel state proceedings." *Retirement System of Alabama*, 386 F.3d at 427. In fact, the cases cited by the PSC make clear that the extraordinary remedy of an injunction is appropriate only in extreme situations, such as when the federal/MDL court has already conditionally approved a settlement. *See In re Diet Drugs*, 282 F.3d at 239. The court in *Retirement System of Alabama*, 386 F.3d at 428 also distinguished *Baldwin-United, supra.*, 770 F.2d 328, noting it was "crucial" to the analysis in issuing an injunction in that case that most defendants in the federal action had already settled and there was a "substantially significant prospect" the remaining defendants would settle in the near future. These facts are entirely absent here.

    2.       **An Injunction Cannot Issue Absent Extreme Facts, Which Do Not Exist Here**

Courts considering similar situations have likewise concluded that an injunction cannot issue absent extreme facts: the jurisdiction of the MDL court must be threatened by the action of the state court. For example, in *In re GMC*, *supra*, 134 F.3d 133, the court held that the MDL court could not issue an injunction to a state court which had conditionally approved a class action settlement. *In re GMC* was a multidistrict centralization in the Eastern District of Pennsylvania of several product-liability class-action lawsuits. In a prior appeal, the Third Circuit had vacated a class-certification order and set aside a settlement, but left open the possibility that the defect in the class-certification procedure could be cured and a revised settlement approved. Instead of following that suggestion, the parties to the settlement brought a

nationwide class action in a Louisiana state court, seeking that court's approval of the settlement. After the Louisiana court conditionally certified the settlement class, some members of the MDL class applied to the MDL court to enjoin the Louisiana proceedings.

The MDL court denied the injunction and the Third Circuit affirmed. The Third Circuit reasoned that because no class had been certified in the MDL court, the Louisiana class action settlement did not threaten the district court's jurisdiction; no injunction was necessary in aid of that jurisdiction:

> There is no classwide settlement pending before the district court (indeed, the conditional class certification by the district court no longer subsists), and no stipulation of settlement or prospect of settlement in that court is imminent. Furthermore, it simply cannot be said that the Louisiana court is attempting to dictate to the district court the scope and terms of a settlement, since none is pending before the district court. Finally, there can be no confusion by class members, for only one set of notices has been sent out (from the Louisiana court).

134 F.3d at 145. Neither did the Louisiana settlement infringe upon the rights of any class member who wished to litigate in the MDL court, **because "the Louisiana settlement contained opt-out provisions."** *Id. (emphasis added).*

Here, as in *In re GMC*, no class has been certified by this MDL court. No global or class settlements have been approved in the MDL, and no showing has been made that any global or class settlement is imminent in the MDL. Because the *Vereen* settlement allows opt-outs, it does not infringe upon the rights of anyone who wishes to litigate in this Court. And just as in *In re GMC*, there can be no confusion among the *Vereen* class members because notice has only been issued on order of the Georgia court. Thus, no grounds exist for an injunction of the state-court proceedings.

In another MDL proceeding in which the district court attempted to enjoin a state court from proceeding to trial before a trial scheduled in the MDL court, the Court discussed the need

for extraordinary facts to warrant the significant step of enjoining a state court.  In *Retirement Systems of Alabama, supra,* 386 F.3d 419, the Second Circuit reversed an injunction rendered by an MDL court against state-court proceedings, finding the injunction in violation of the Anti-Injunction Act.  Distinguishing its prior decision in *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) (a case relied on by the PSC[14]), the Second Circuit explained that an MDL court does not have *carte blanche* to enjoin state-court proceedings without compelling facts; the mere existence of a complex proceeding is not enough.  "Clearly, our decision in *Baldwin-United* did not create a blanket rule or presumption that a federal court in any multidistrict litigation may enjoin parallel state proceedings." 386 F.3d at 427.

The MDL court in *Retirement Systems of Alabama* enjoined a state court in Alabama from going forward with its own trial until 60 days after conclusion of a class trial scheduled in the MDL court. The MDL court reasoned that the injunction was necessary in aid of its jurisdiction because it was "necessary to preserve the schedule in the *Securities Litigation* and to keep the federal MDL litigation on its own 'path to judgment.'" 386 F.3d at 424 (quoting the district court). The Second Circuit reversed the injunction, holding that the MDL court's desire to adjudicate the case was no ground for an injunction against state-court proceedings:

> [A] federal district court, even assuming it has some interest in avoiding delay in its own proceedings, has no interest—no interest that can be vindicated by the exercise of the federal injunction power—in being the *first* court to hold a trial on the merits. We have held that a district court may not issue an injunction simply to be the first court to reach a judgment and thereby avoid issues of collateral estoppel[.]

386 F.3d at 429.

The lesson from *Retirement Systems of Alabama* is clear:  jurisdiction over an MDL case does not, by itself, authorize a district court to enjoin competing state-court proceedings.

---

[14] *See* PSC brief at 12.

*In re Life Investors Insurance Co., supra.,* 589 F.3d 319, is also instructive. There, the district court overseeing a putative class action enjoined a settlement in a competing state-court class action. The settlement in the state-court class action encompassed all members of the putative federal class. The district court enjoined the defendants in federal court from seeking final approval of the state-court settlement because consummation of the settlement "would effectively render moot this Court's jurisdiction." 589 F.3d at 329 (quoting the district court). The Sixth Circuit reversed. Because the state-court class action allowed for opt-outs, it did not prejudice the rights of the federal class representative or any other putative class members who wished to opt out. *Id.* at 331. As the federal district court had not yet certified a class, "it necessarily follow[ed] that the court ha[d] no cause to take extraordinary injunctive measures to protect the interests of a class." *Id.* at 332.

The same reasoning applies here. Because the *Vereen* settlement allows any class member to opt-out, it cannot prejudice the rights of the two or three (at most) Lowe's Plaintiffs before this Court who may wish to be excluded from the settlement. Because no class has been certified here (and could not be certified based on these dubious claims), this Court has no cause to grant the extraordinary relief requested by the PSC.

### C.   The Cases Relied Upon by the PSC Are Inapposite

In the cases relied upon by the PSC, it took much more than merely presiding over an MDL case to justify an injunction of state-court proceedings. In *Baldwin-United*, for example, the district court had already certified a class; and of 26 defendants, 18 had signed stipulations of settlement. The district court had preliminarily approved the class settlement and had scheduled a fairness hearing. Meanwhile, the remaining eight defendants were actively negotiating settlement. The State of New York, apparently unhappy with the settlement terms, brought an

action in New York state court, the purpose of which was to extract additional money, over and above the settlement amounts, for distribution to New York class members. 770 F.2d at 332 n. 1. The district court enjoined the New York proceedings because they threatened to derail the imminent settlements reached in federal court. "If states or others could derivatively assert the same claims on behalf of the same class or members of it," the Second Circuit reasoned, "there could be no certainty about the finality of any federal settlement." *Id.* at 337.

The PSC's reliance on *Baldwin-United* in this case, where there are no global or class settlements, is misplaced. Indeed, the very court that decided *Baldwin-United* later explained that the class settlements already reached in that case were "crucial" to the injunction. "[I]t was crucial to our analysis that most of the defendants had already settled, and that there was a 'substantially significant prospect that [the other eight defendants] will settle in the reasonably near future.'" *Retirement Sys. of Ala.*, 386 F.3d at 428, quoting *Baldwin-United*, 770 F.2d at 338 (bracketed text by *Retirement Sys. of Ala.* court).

The *Vereen* settlement will have no effect on vast numbers of class members in this action—because no class has yet been certified. The *Vereen* settlement will affect, at most, only two or three Lowe's plaintiffs, and even they can opt-out. The *Vereen* settlement will have absolutely no effect on any other plaintiffs or any defendant besides Lowe's.

Several cases cited by the PSC are distinguishable for similar reasons and demonstrate the kinds of extreme and unusual circumstances—absent here—that may justify an injunction. For example:

- *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. Unit A 1981): When the district court enjoined state-court proceedings, it had already **approved class settlements** with most of the defendants, and final judgment was "predictable if not

assured." *Id.* at 1335. A South Carolina state court interfered with the settlement by enjoining some of the defendants from settling any cases under South Carolina law.

- *In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002):   After federal court **conditionally certified a class, preliminarily approved a settlement and established an opt-out procedure**, a Texas state court entered an order purporting to opt-out all Texas plaintiffs from the federal case.   Thus, the Texas court not only interfered with the settlement, but also flouted the federal court's authority to determine the means and methods for opting out.

- *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998):  After a federal court **certified a nationwide class and preliminarily approved a class settlement**, a class member defied the order by filing suit in Georgia, seeking certification of a state-wide class and obtaining an order purporting to opt-out all Georgia class members from the federal class.

- *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189 (3d Cir. 1993):  After the federal court **issued a conditional class-certification order for settlement purposes and scheduled a fairness hearing**, a plaintiff in a related class action in West Virginia sought to opt-out all West Virginia class members from the federal action.

The case at bar raises no such extreme facts. In the above cases, global or class settlements were reached and approved in federal court, parties unhappy with those settlements attempted to use state-court proceedings to interfere with those settlements, and the federal courts issued injunctions to preserve those federal court settlements.  Here, in contrast, there is no federal settlement.   Rather, a settlement has been reached in state court in a case encompassing many claims beyond those at issue in the MDL, and the PSC asks this Court to issue an injunction, not to preserve an MDL settlement, but to prevent the state court settlement

from going through.[15] What the PSC seeks would not only violate the Anti-Injunction Act, but also constitute a perversion of *Baldwin-United* and the other cases tabulated above.

Unlike the state-court proceedings in *Baldwin-United*, the *Vereen* suit was not instituted in any attempt to undermine this Court's jurisdiction. *Vereen* is not a CDW case; it is an allegedly defective domestic drywall case, the settlement of which happens to include CDW claims. Most importantly, conclusion of the *Vereen* settlement will not infringe upon this Court's jurisdiction or authority. The only effect of the *Vereen* settlement's finality will be the *res judicata* conclusion of a miniscule fraction of the claims now before this Court against a single defendant—*i.e.* the claims of any named plaintiff who: (a) has sued Lowe's; and (b) fails to opt-out of *Vereen*. Moreover, the possible *res judicata* effect of a state-court judgment on a claim in federal court is not grounds for an injunction. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1103 (11th Cir. 2004).

For similar reasons, the recent "Settlement Agreement for the Demonstration Remediation of Homes With KPT Drywall" ("KPT Agreement") does not provide support for the instant motion. Significantly, the KPT Agreement did not exist when the *Vereen* settlement was reached and the Preliminary Approval Order was entered. And demonstrably, the KPT Agreement is not a class action settlement at all, placing it well outside the purview of *Baldwin-United* and the other PSC authorities distinguished above. Instead, it is a pilot program between the PSC and a single drywall manufacturer in which KPT agrees to **consider** remediating fewer than one out of ten claims, and those only in homes that contain 95% or more KPT drywall. The program operates in only four states; it does not include claims for personal injury; and it need not be completed: it can be terminated by any party at any time. While it may prove to be a

---

[15] Should this Court conclude that the KPT pilot program is a "settlement," contrary to Lowe's position it was impossible for the Georgia state court settlement to interfere with this Court's jurisdiction because the KPT pilot program did not exist until October 13, 2010, 10 weeks after the Preliminary Approval Order.

useful next step for the administration of claims MDL, there is no assurance it will compensate anyone.  And it most assuredly does not cover the waterfront of CDW claims. Another CDW manufacturer has made clear it will not participate and, as noted, KPT pilot program pointedly does not include claims for personal injury.

Because the KPT pilot program addresses only a small number of unidentified MDL plaintiffs and is not even binding on them, it is difficult to imagine how it relates to Lowe's *Vereen* settlement at all.  By contrast, the *Vereen* settlement operates nationwide, it includes all claims--for personal injury as well as property damage--and it affects only allegedly defective drywall from Lowe's.

And the KPT pilot program, which hypothetically could be but a step in the miles it will take to have anything more than a piecemeal resolution of the MDL,[16] was negotiated -- privately and confidentially -- between the PSC and a handful of the hundreds of defendants in the MDL. It is understandable why this pilot program is attractive to KPT, a major, admitted manufacturer of CDW: adverse judgments against KPT have been entered; and KPT can now use this so-called settlement to pressure other less culpable or innocent suppliers to contribute. But this pilot program offers little hope that a global settlement will take place in the near future. Such a voluntary, non-binding "program" agreed to by KPT is not, and cannot be labeled or manipulated into, a court order or fictional *"res"* that prevents Lowe's or any other defendant from settling their liability outside the KPT/PSC "program." This Court cannot force other defendants to follow the lead of a defendant with distinctly different potential exposure and motivation to enter into such a "program" from that of Lowe's and others similarly situated.

---

[16] Indeed, even the PSC views the KPT pilot program as an "embryonic" effort that "looks toward a birth of an eventual global resolution." ("Maker of Chinese drywall, others pay to fix homes," Reuters, Oct. 14, 2010. http://news.yahoo.com/s/nm/20101014/us_nm/us_chinesedrywall_2, last accessed Oct. 21, 2010).

Using a "pilot program" involving only a sampling of plaintiffs (among thousands) and a handful of defendants (among hundreds) to create jurisdiction or retain complete control over all defendants and plaintiffs who hypothetically could possibly end up in that court would circumvent the Anti-Injunction Act and the principles announced by federal courts for centuries. If a federal court can enjoin and interfere with a state court class action settlement on the basis of the embryonic KPT pilot program that was agreed to months **after** the state court settlement has been preliminarily approved, the federal court would be opening the door to the kind of problems the Anti-Injunction Act prevents. Such a ruling would be contrary to clear precedent and would be tantamount to rewriting the Anti-Injunction Act, a power left solely to the legislative branch.

The PSC has offered no evidence that a global or class settlement has been reached or is imminent in the MDL cases. Even if there were a global or class settlement in the MDL cases, the PSC has offered no specifics as to why the *Vereen* settlement would thwart or impair the jurisdiction of this Court in reviewing that MDL settlement. The tiny number of claims that overlap make it extremely unlikely the *Vereen* settlement could impede the settlement of the MDL cases. Under the PSC's suggested approach, Lowe's and the entire *Vereen* class would be held hostage until a global or class settlement is reached in the MDL, if a global or class settlement is ever reached, just because there are three Lowe's Plaintiffs who may not even have CDW in their homes! Such a nonsensical result is not allowed by law.

Similarly, the PSC suggests that the terms of the *Vereen* settlement may warrant this Court to interfere with the Georgia state court. However, disagreement with the terms of a settlement approved by a fellow judge does not warrant an injunction. Indeed, "federal courts ordinarily refrain from enjoining a state action even where the state court is asked to approve a settlement substantially similar to one the federal court has already rejected." *In re Diet Drugs*,

282 F.3d at 236 (citing *In re GMC*, 134 F.3d at 145). Clearly, there are no compelling facts here that would warrant taking the extreme step proposed by the PSC. The PSC's motion should be denied.

### D.     Rule 23 Does Not Provide a Basis for an Injunction

The PSC suggests Rule 23 provides an alternate basis for this Court to issue an injunction. This argument has been specifically rejected by the United States Court of Appeals for the Fifth Circuit. See *Piambino v. Bailey*, 610 F.2d 1306 (5th Cir. 1980). In *Piambino*, the court considered whether Rule 23 could serve as an exception to the Anti-Injunction Act's prohibition on injunctions against state court actions. Reasoning the Anti-Injunction Act "must be given a strict construction due to the sensitive nature of federal interference with state court proceedings," *Id.* at 1330, the Court concluded that Rule 23 is a rule of procedure and cannot serve as the basis for an exception to the Anti-Injunction Act. *Id.* at 1331. This argument must be rejected.

### E.     The Court's "inherent power" cannot be exercised contrary to the Anti-Injunction Act

On pages 15–17 of its brief, the PSC suggests that a federal court can use its "inherent power" to issue an injunction against state-court proceedings. Again, the PSC is wrong. "A federal court does not have inherent power to ignore the limitations of [the Anti-Injunction Act] ...." *Atlantic Coast Line R.R. Co.*, 398 U.S. at 294.

In support of this argument, the PSC cites to Federal Rule of Civil Procedure 83 as support for the Court to use the inherent powers to manage and control its cases where there is no controlling law. *See* PSC Brief at 15-17. Rule 83 is inapplicable. A statute exists that directly prohibits a federal court from enjoining state court proceedings, supported by ample case law interpreting the statute. Rule 83 is no "escape hatch" in the face of a contrary act of Congress.

Moreover, resort to "inherent power" to interfere with state-court proceedings would not only violate the Anti-Injunction Act but would also be unconstitutional under the Fifth, Tenth and Eleventh Amendments to the United States Constitution. Resort to inherent power would also violate widely held principles of comity and deference to state courts embodied in jurisprudentially developed abstention doctrines. *See* Lowe's Home Centers, Inc's Memorandum in Support of Motion to Stay, filed August 10, 2010, and incorporated herein by reference.

**F.      Not only is an injunction prohibited by the Anti-Injunction Act, but the PSC has also failed to prove any entitlement to an Injunction**

Even if the Anti-Injunction Act did not bar the injunction sought by the PSC, the Court should still deny an injunction because the PSC has failed to prove any entitlement to an injunction.  Under Fifth Circuit law, a party seeking an injunction must meet a four-part test by establishing: (1) success on the merits; (2) that failure to grant the injunction will result in irreparable injury; (3) that the injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006). The PSC has made no effort to show that any of these requirements has been met.

**1.      Success on the merits**

The PSC has failed to show any illegality in the *Vereen* settlement. The best it can do on this score is to cast aspersions on the settlement's terms, suggesting that they require "heightened judicial scrutiny."[17]  But the theoretical need for heightened judicial scrutiny does not equate to illegality. And the proper court to apply "heightened judicial scrutiny" to the *Vereen* settlement is the Georgia state court. That court has scheduled a fairness hearing, at which any class member with a claim against Lowe's can appear and voice his or her objections.

---

[17] PSC memo. at 8 n. 22.

### 2.      Irreparable injury

The PSC has failed to show that the *Vereen* settlement will cause any injury at all to the PSC or to any plaintiff represented by any PSC member. In fact, the PSC has failed to show that any of its members even represents a plaintiff with a claim against Lowe's. The truth is that the *Vereen* settlement cannot possibly injure any MDL plaintiff with a claim against Lowe's, because any such plaintiff has the right to opt-out of *Vereen*.

### 3.      The Injury to Lowe's and the *Vereen* Class Members caused by an injunction would outweigh any injury to the PSC

While denying an injunction will do no harm to the PSC, to any plaintiff represented by any PSC member, or to any plaintiff with a claim against Lowe's, the granting of an injunction would do great harm to Lowe's and to the thousands of class members in *Vereen* who want to settle. An injunction would infringe on the *Vereen* parties' liberty interest in amicably resolving their disputes outside the confines of the MDL on terms both sides have found acceptable. The injunction requested by the PSC would needlessly create confusion among class members. Lowe's has already spent hundreds of thousands of dollars on nationwide class notice and administration costs.  Lowe's would also be denied the benefit of an efficient resolution of the claims against it, and instead would be forced to continue spending substantial time, effort, and legal expenses defending itself in the framework of a massive, complex MDL against only a few, dubious claims.

### 4.      An injunction would disserve the public interest

The public interest favors settlements. *See, e.g., Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985) ("[P]ublic policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation."); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement,

particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). This public interest informs *Baldwin-United* and other cases where federal courts, having engineered a settlement of claims before them, have issued injunctions to preserve and effectuate the settlement. The injunction sought by the PSC would stand this public interest on its head by preventing the *Vereen* parties from settling.

In sum, the PSC has failed to establish any of the four requirements for an injunction, let alone all four.

### G.     If the Court were to issue a preliminary injunction, the PSC would be required to post a bond of at least $6.5 million

Federal Rule of Civil Procedure 65(c) allows a court to issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." For reasons stated above, no injunction should be issued at all. But if the Court were to issue a preliminary injunction, then the PSC must furnish the security required by Rule 65(c). The amount of security should be at least $6.5 million,[18] the value of the settlement agreed to in *Vereen*.

### H.     The PSC's makes its objections to the *Vereen* settlement in the wrong court

On pages 8–9 of its brief, the PSC criticizes various aspects of the *Vereen* settlement. They direct their arguments to the wrong court. This Court has "no power whatever to sit in direct review of state court decisions." *Atlantic Coast Line R.R. Co.*, 398 U.S. at 296. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately the U.S. Supreme Court. *Id.* at 287. If the PSC represents clients in the *Vereen* class

---

[18] Lowe's has already paid $1 million for notice and claims administration of the *Vereen* settlement.

who do not opt-out, their clients may file objections to the settlement with the Georgia court by November 9, 2010. If they represent clients who opt-out, their clients have no standing to object to a settlement that does not affect them. But the filing of an objection –disguised as a motion to enjoin – is improper.

## III.   CONCLUSION

In this MDL, there is no settlement awaiting approval. At most, there is an announced pilot program binding on no one. As to Lowe's, there is no discernable activity at all. Two of the Lowe's cases are moribund, with neither plaintiff proving they have CDW from Lowe's in their home; the third does not belong in the MDL because the Court's inspection program found no CDW in the home. The PSC cannot point to a single act from the *Vereen* court that will impede settlement negotiations with other parties or other progress in the MDL. Neither can the PSC identify an order of this Court that is contravened by the settlement. In contrast, *Vereen* is nearly two months into a nationwide class notice and claims period, which has cost hundreds of thousands of dollars. The PSC has not met its heavy burden to justify an injunction barring the state court and the thousands of claimants/participants from going forward with their settlement.

Were this motion a closer call than it is, doubts as to the propriety of a federal injunction should be resolved in favor of the state court. The explicit wording of the Anti-Injunction Act itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion. *Atlantic Coast Line R.R. Co.*, 398 U.S. at 297. The statutory prohibition "is not to be whittled away by judicial improvisation." *Vendo Co.*, 433 U.S. at 631, quoting *Amalgamated Clothing Workers of Am.*, 348 U.S. at 514. But the Motion is not a close call. Lowe's urges the Court to consider the facts, follow the Anti-Injunction Act, and deny the PSC's motion to enjoin the *Vereen* settlement.

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ Francis V. Liantonio, Jr.*
WILLIAM B. GAUDET (#1374)
FRANCIS V. LIANTONIO, JR. (#19282)
EDWIN C. LAIZER (#17014)
JEFFREY E. RICHARDSON (#23273)
701 Poydras Street
One Shell Square, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
William.Gaudet@arlaw.com
Frank.Liantonio@arlaw.com
Edwin.Laizer@arlaw.com
Jeff.Richardson@arlaw.com
***Attorneys for Lowe's Home Centers, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Herman; Defendants' Liaison Counsel, Kerry Miller; and Homebuilders and Installers Liaison Counsel, Phillip A. Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 21st day of October, 2010.

*/s/ Francis V. Liantonio, Jr.*