DATED:  10.6.10

WCI Communities, Inc., and certain related Debtors

**CHINESE DRYWALL PROPERTY DAMAGE AND PERSONAL INJURY
SETTLEMENT TRUST DISTRIBUTION PROCEDURES**

WCI Communities, Inc., and certain related Debtors

## CHINESE DRYWALL PROPERTY DAMAGE AND PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES

### TABLE OF CONTENTS

SECTION I...............................................................................................1

    Introduction

    1.1    Purpose.................................................................................1

    1.2    Interpretation.........................................................................2

    1.3    Definition..............................................................................2

SECTION II.............................................................................................3

    Overview

    2.1    Chinese Drywall Trust Goals......................................................3

           2.1(a)  PD Claims and PI Claims.................................................4

    2.2    Claims Liquidation Procedures....................................................4

    2.3    Application of the Payment Percentage............................................6

    2.4    PD Fund and PI Fund...............................................................7

SECTION III............................................................................................8

    TDP Administration

    3.1    Chinese Drywall Trust Advisory Board.........................................8

    3.2    Consent and Consultation Procedures............................................8

SECTION IV............................................................................................9

    Payment Percentage; Periodic Estimates

    4.1    Uncertainty of Debtor's Chinese Drywall Liabilities............................9

    4.2    Computation of Payment Percentage.............................................9

4.3   Applicability of the Payment Percentage..........................................10

SECTION V..................................................................................12

Resolution of Chinese Drywall Claims

5.1   Ordering, Processing and Payment of Claims....................................12

      5.1(a)  Ordering of Claims and Claims Filing Deadline........................12

      5.1(b)  Processing and Payment of Claims.....................................12

      5.1(c)  Effect of Claims Filed in the Bankruptcy Case or
              with the Chinese Drywall Trust.......................................14

5.2   Resolution of Chinese Drywall Claims.............................................14

      5.2(a)  Expedited Review Process for PD Claims.............................15

              5.2(a)(1)   In General....................................................15

              5.2(a)(2)   Claims Processing Under Expedited Review.............16

              5.2(a)(3)   Evidentiary Criteria for PD Claims..........................17

              5.2(a)(4)   Scheduled Values and Maximum Values for

                          PD Claims....................................................19

      5.2(b)  Individual Review Process...............................................20

              5.2(b)(1)   In General....................................................20

                          5.2(b)(1)(A)  Review of Evidentiary Criteria.............21

                          5.2(b)(1)(B)  Review of Liquidated Value...............21

              5.2(b)(2)   Valuation Factors to Be Considered in
                          Individual Review............................................22

                          5.2(b)(2)(A)  Valuation Factors for Individual
                                        Review of PD Claims....................22

                          5.2(b)(2)(B)  Processing of PD Claims Under
                                        Individual Review........................22

5.3   Indirect Chinese Drywall Claims.....................................................23

5.4   Claims Audit Program……………………………………………………..25

5.5   Special Master……………………………………………….......................26

SECTION VI

Submission of Claims Materials

6.1   Claims Materials……………………………………………………….27

6.2   Content of Claims Materials……………………………………………27

6.3   Filing Requirements and Fees…………………………………………….27

6.4   Confidentiality of Claimants' Submissions……………………………..28

SECTION VII

General Guidelines for Liquidating and Paying Claims

7.1   Costs Considered…………………………………………………………29

7.2   Discretion to Vary the Order and Amounts of Payments in
      Event of Limited Liquidity………………………………………….......30

7.3   Punitive Damages………………………………………………………30

7.4   Releases…………………………………………………………….......30

7.5   Third-Party Services……………………………………………………31

SECTION VIII

Miscellaneous

8.1   Amendments……………………………………………………………31

8.2   Severability……………………………………………………………..31

8.3   Governing Law…………………………………………………………32

**WCI Communities, Inc., and certain related Debtors**

## CHINESE DRYWALL PROPERTY DAMAGE AND PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES

The Chinese Drywall Property Damage and Personal Injury Settlement Trust Distribution Procedures (the "**TDP**") contained herein provide for resolving all Chinese Drywall Claims, including Chinese Drywall Property Damage Claims ("**PD Claims**") and Chinese Drywall Personal Injury Claims ("**PI Claims**"), as provided in and required by the Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. ("New WCI") and 2009 Real Estate, LLC (f/k/a 2009 Real Estate Corporation, f/k/a WCI Communities, Inc.) ("Old WCI," together with New WCI, "WCI") and Its Affiliated Debtors, dated as of July 16, 2009 (as it may be amended or modified, the "**Plan**") and the Chinese Drywall Property Damage and Personal Injury Settlement Trust Agreement (the "**Chinese Drywall Trust Declaration**").[1] The Plan and the Chinese Drywall Trust Declaration establish the Chinese Drywall Property Damage and Personal Injury Settlement Trust (the "**Chinese Drywall Trust**"). The Trustee of the Chinese Drywall Trust (the "**Trustee**") shall implement and administer this TDP in accordance with the Chinese Drywall Trust Declaration.

## SECTION I

### Introduction

1.1    **Purpose.** This TDP has been adopted pursuant to the Chinese Drywall Trust Declaration. It is designed to provide fair, equitable and substantially similar treatment for all Chinese Drywall Claims in accordance with the Plan.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the Chinese Drywall Trust Declaration.

**1.2** **Interpretation.** Nothing in this TDP shall be deemed to create a substantive right for any claimant. The rights and benefits provided herein to holders of Chinese Drywall Claims shall vest in the holders of Chinese Drywall Claims as of the Effective Date in accordance with the Plan.

**1.3** **Definitions.** The following capitalized terms used herein shall have the meanings set forth below:

"Chinese Drywall Claim" shall have the meaning ascribed to such term in the Plan, except that the holder of an alleged PD Claim must have owned his or her home on the date of confirmation, August 26, 2009, in order to qualify as a valid Chinese Drywall Claim.

"Claimant's Jurisdiction" means either (i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the Chinese Drywall Trust; (ii) a jurisdiction in which the claimant experienced exposure to Chinese drywall for which the Debtor has legal responsibility; or (iii) a jurisdiction in which the claimant owned a home purchased from the Debtor and containing Chinese drywall.

"PD Claim" means a Chinese Drywall Claim asserted against a Debtor for property damages arising from the presence of Chinese drywall[2] in the home owned by the holder of such Chinese Drywall Claim.

---

[2] As used herein, "Chinese drywall" refers to drywall manufactured in China, installed into homes and other structures built by Old WCI, and subsequently causing the "rapid and recurring corrosion of metals inside homes." *See* Florida D.O.H. website, *http://www.doh.state.fl.us/environment/community/indoor-air/drywall.html*. Chinese drywall has also been blamed for a noxious, sulphur-like odor. As stated by the State of Florida's Division of Emergency Management:

> While the health implications remain under investigation, it is undisputed that Chinese drywall corrodes copper and other metal surfaces, causing the degradation and nonperformance of wiring, plumbing, appliances and smoke detectors.

*Id.* (Memorandum: Interim Emergency Management Director David Halstead To FEMA Regional Administrator Phillip May Regarding Chinese Drywall March 10, 2010).

"PI Claim" means a Chinese Drywall Claim asserted against a Debtor for personal injuries.

## SECTION II

## Overview

**2.1     Chinese Drywall Trust Goals.**  The goal of the Chinese Drywall Trust is to treat all similarly-situated claimants similarly and equitably in accordance with the Plan.  This TDP furthers that goal by setting forth procedures for processing and paying allowed Chinese Drywall Claims.  To this end, the TDP establishes presumptive evidentiary requirements ("**Evidentiary Criteria**") and a separate fund (the "**PD Fund**") for PD Claims, together with specific liquidated values ("**Scheduled Values**") and caps on the liquidated values ("**Maximum Values**") of PD Claims.  The Evidentiary Criteria for PD Claims, the Scheduled Values, and the Maximum Values are set forth in Sections 5.2(a)(3) and 5.2(a)(4), and have been selected and derived from the best available information at this time, considering the rights claimants would have in the court system absent the bankruptcy, with the intention of achieving a fair allocation of the assets of the Chinese Drywall Trust (the "**Chinese Drywall Trust Assets**") among claimants.  A

---

Likewise, the Honorable Eldon Fallon, United States District Court Judge for the Eastern District of Louisiana and the presiding judge in the Federal MDL proceeding styled as *In re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047, Section L, has characterized "Chinese drywall" as follows:

> Chinese drywall is different from typical benign drywall for the following reasons:  it has a significantly higher average concentration of strontium and more detectable levels of elemental sulfur, and it releases odious sulfur gases which are corrosive to metals, particularly copper and silver.

*See* Findings of Fact and Conclusions of Law, entered by Judge Fallon on or about April 27, 2010, in the case relating to *Hernandez v. Knauf Gips KG, et al.*, case no.09-6050.

For the avoidance of doubt, the term "Chinese drywall" shall not include typical, benign drywall (whether manufactured in China or elsewhere) that neither releases odious sulfur gases nor causes corrosion of metals, particularly copper and silver.

separate fund is also established for PI Claims (the "**PI Fund**"), initially funded with ten percent (10%) of the proceeds of the Chinese Drywall Trust Assets made available for distribution pursuant to Section 2.4.

  **2.1(a)  PD Claims and PI Claims.**  Chinese Drywall Claims shall be processed, liquidated and paid based on the procedures provided in this TDP.  A claimant may hold both a PD Claim and a PI Claim.  To establish a valid PD Claim, a claimant must meet the requirements set forth in this TDP.  Because the medical evidence necessary to support a viable PI Claim is currently undeveloped, the TDP does not provide any immediate right to payment for PI Claims, although the TDP does establish the PI Fund as described in Sections 2.1 and 2.4.  To the extent that medical evidence, presumptive medical criteria, or other information subsequently becomes available that the Trustee determines, with the consent of the Board, is reasonably reliable and would support a viable PI claim in the court system, this TDP will be amended to set forth procedures for processing and paying allowed PI Claims.

  Because the assets expected to be contributed to the Chinese Drywall Trust may be less than the value of all allowed Chinese Drywall Claims, the holders of allowed Chinese Drywall Claims shall receive a pro rata share of the liquidated value of their claims (a "**Payment Percentage**") that shall be established pursuant to Sections 2.3 and 4.2.  To the extent that the Chinese Drywall Trust has liability for a Chinese Drywall Claim, the Chinese Drywall Trust shall pay the Chinese Drywall Claim subject to the Payment Percentage, unless otherwise provided in this TDP.

  **2.2** **Claims Liquidation Procedures.**  The Chinese Drywall Trustee shall take all reasonable steps to resolve Chinese Drywall Claims as efficiently and expeditiously as possible at each stage of claims processing, which steps may include, in the Chinese Drywall Trustee's

sole discretion, conducting settlement discussions with claimants' representatives with respect to more than one claim at a time, provided that each claim is individually evaluated pursuant to the valuation factors set forth in Section 5.2(b)(2).

The Chinese Drywall Trust shall liquidate all PD Claims that meet the presumptive Evidentiary Criteria set forth in Section 5.2(a)(3) under the expedited review process ("**Expedited Review Process**") described in Section 5.2(a). After processing a particular PD Claim under the Expedited Review Process, the Chinese Drywall Trust shall provide the claimant with a Scheduled Value in accordance with Section 5.2(a)(4). Such claimant will have thirty (30) days within which to accept or reject the Scheduled Value offered by the Chinese Drywall Trust on account of such claimant's PD Claim.

To the extent that a particular claimant accepts the Scheduled Value for his or her PD Claim, the Chinese Drywall Trust shall pay the Scheduled Value for such PD Claim subject to the Payment Percentage, unless otherwise provided in this TDP. Alternatively, if a particular claimant rejects the Scheduled Value determined by the Chinese Drywall Trust for his or her PD Claim, such claimant may seek to establish a liquidated value for the claim that is greater than its Scheduled Value by electing the Chinese Drywall Trust's individual review process ("**Individual Review Process**"). However, the liquidated value of a claim that undergoes the Individual Review Process for valuation purposes may be determined to be less than the Scheduled Value for the applicable claim, and in any event shall not exceed the Maximum Value set forth in Section 5.2(a)(4).

PD Claims that do not meet the presumptive Evidentiary Criteria may also undergo the Chinese Drywall Trust's Individual Review Process described in Section 5.2(b). In such a case, notwithstanding that the claim does not meet the presumptive Evidentiary Criteria, the Chinese

- 5 -

Drywall Trust may offer the claimant an amount up to the Scheduled Value if the Chinese

Drywall Trust is satisfied that the claimant has presented a claim that would be cognizable and

valid in the court system.

The Trustee, with the consent of the Board, may offer the option of a reduced payment to

holders of allowed Chinese Drywall Claim in return for prompter payment; provided, however,

that the claimant shall waive his or her right to any further distributions from the Chinese

Drywall Trust on account of the claim.

All unresolved disputes over a claimant's medical condition, exposure history and/or the

liquidated value of the claim may, at the election of the claimant, be submitted to the Special

Master as set forth in Section 5.5. All decisions of the Special Master shall be binding, final, and

non-appealable. Any award by the Special Master in favor of claimant shall be payable (subject

to the Payment Percentage provisions set forth below) as provided in Section 5.5, subject to the

provisions of Section 2.3.

**2.3     Application of the Payment Percentage.** After the liquidated value of an

allowed Chinese Drywall Claim is determined pursuant to the procedures set forth herein for

Expedited Review or Individual Review, the claimant will ultimately receive a pro rata share of

that value based on the Payment Percentage described in Sections 4.2 and 4.3. The Payment

Percentage shall apply to all Chinese Drywall Claims.

Given the uncertainty of the total value of the Chinese Drywall Trust Assets available to

pay claims, no distributions to holders of allowed Chinese Drywall Claims shall be made until

the Trustee, with the consent of the Board, determines that the liquidated Chinese Drywall Trust

Assets available to pay claims are sufficient to begin making distributions to holders of allowed

Chinese Drywall Claims, after taking into account any reserves established by the Chinese

Drywall Trust for the payment of litigation costs, claims administration, and any other cost or expense of the Chinese Drywall Trust over the next five (5) years or such other period of time as determined by the Trustee with the consent of the Board.  Once the Trustee and the Board determine that the liquidated Chinese Drywall Trust Assets are sufficient to begin paying holders of allowed Chinese Drywall Claims, the Trustee, with the consent of the Board, will establish the initial Payment Percentage, provide notice thereof to all claimants, and begin making payments to claimants whose claims have been processed pursuant to the TDP as promptly as possible.

The Payment Percentage may be adjusted upwards or downwards from time to time by the Trustee with the consent of the Board to reflect then-current estimates of the Chinese Drywall Trust's assets and its liabilities, as well as then-estimated values of Chinese Drywall Claims.  Any adjustment to the initial Payment Percentage shall be made only pursuant to Section 4.2.  If the Payment Percentage is increased over time, claimants whose claims were liquidated and paid in prior periods under the TDP shall receive additional payments as provided in Section 4.3.

**2.4     PD Fund and PI Fund.**  Based on a review of Chinese Drywall Claims filed in WCI's bankruptcy proceedings, as well as the current state of medical information supporting alleged PI Claims, this TDP establishes separate funds for PD Claims and PI Claims.  Each time the Trustee determines, with the consent of the Board, that liquidated Chinese Drywall Trust Asset are sufficient to begin paying, or to make a further distribution to, holders of allowed Chinese Drywall Claims as set forth in Section 2.3, 90% of the amount to be distributed shall be placed into the PD Fund and 10% shall be placed into the PI Fund.

As set forth above, given that the requisite medical and exposure evidence necessary to support a viable PI Claim is currently undeveloped, the TDP does not provide any immediate

right to payment for PI Claims.  To the extent that medical evidence, presumptive medical

criteria, or other information subsequently becomes available that the Trustee determines, with

the consent of the Board, is reasonably reliable and would support a viable PI Claim in the court

system, this TDP will be amended to set forth procedures for processing and paying allowed PI

Claims.

In considering whether to amend the 90%/10% ratio set forth above, the Trustee shall

consider the reasons for which the 90%/10% ratio was adopted, the current state of information,

including medical information, relating to PD Claims and PI Claims, and any other factor that

the Trustee determines is relevant to the decision.  In any event, no amendment to the 90%/10%

ratio may be made without the unanimous consent of the Board.

## SECTION III

### TDP Administration

**3.1     Chinese Drywall Trust Advisory Board.**  Pursuant to the Plan and the Chinese

Drywall Trust Declaration, the Chinese Drywall Trust and this TDP shall be administered by the

Trustee in consultation with the Board, which represents the interests of holders of Chinese

Drywall Claims.  The Trustee shall obtain the consent of the Board on any amendments to this

TDP pursuant to Section 8.1, on other matters required by the TDP and on matters provided by

Section 2.2(f) of the Chinese Drywall Trust Declaration.  The Trustee shall also consult with the

Board on such matters as are provided in the TDP and in Section 2.2(e) of the Chinese Drywall

Trust Declaration.  The initial Trustee and the initial members of the Board are identified in the

Chinese Drywall Trust Declaration.

**3.2     Consent and Consultation Procedures.**  In those circumstances in which

consultation or consent is required, the Trustee shall provide written notice to the Board of the

- 8 -

specific amendment or other action that is proposed, unless the Board waives such written notice. The Trustee shall not implement the amendment nor take action unless and until the Trustee and the Board have engaged in the Consultation Process described in Section 5.7(a), or the Consent Process described in Section 5.7(b), of the Chinese Drywall Trust Declaration, respectively.

## SECTION IV

### Payment Percentage; Periodic Estimates

**4.1    Uncertainty of Debtor's Chinese Drywall Liabilities.**  As discussed above, there is inherent uncertainty regarding the Debtor's total liabilities for Chinese Drywall Claims, as well as the total value of the Chinese Drywall Trust Assets available to pay claims. Consequently, there is inherent uncertainty regarding the amounts that holders of allowed Chinese Drywall Claims shall receive.  To seek to ensure substantially equivalent treatment of all Chinese Drywall Claims, the Trustee must determine from time to time the percentage of full liquidated value that holders of Chinese Drywall Claims shall be likely to receive, *i.e.*, the "Payment Percentage" described in Sections 2.3 and 4.2.

**4.2    Computation of Payment Percentage.**  As provided in Section 2.3, no initial Payment Percentage has been established at this time.  The initial Payment Percentage will be adopted as provided in Section 2.3.

The Payment Percentage shall be subject to change pursuant to the terms of this TDP and the Chinese Drywall Trust Declaration if the Trustee with the consent of the Board determines that an adjustment is required.  No less frequently than once every three (3) years, commencing with the first day of January occurring after the third anniversary of the Effective Date, the Trustee shall reconsider the then applicable Payment Percentage to assure that the Payment Percentage is based on accurate and current information.  After such reconsideration, the Trustee

may, if necessary, change the Payment Percentage with the consent of the Board.  The Trustee

shall also reconsider the then applicable Payment Percentage at shorter intervals if he deems

reconsideration to be appropriate or if requested to do so by the Board.

The Trustee must base his determination of the Payment Percentage on current estimates

of the number, types, and values of Chinese Drywall Claims, the value of the assets then

available to the Chinese Drywall Trust for payment of Chinese Drywall Claims, all anticipated

administrative and legal expenses, and any other material matters that are reasonably likely to

affect the sufficiency of funds to pay a comparable percentage of full value to all holders of

Chinese Drywall Claims.  When making these determinations, the Trustee shall exercise

common sense and flexibly evaluate all relevant factors.

**4.3**     **Applicability of the Payment Percentage.**  Except as otherwise provided in

Section 5.1(b) for Chinese Drywall Claims involving deceased or incompetent claimants for

which approval of the Chinese Drywall Trust's offer by a court or through a probate process is

required, no holder of any Chinese Drywall Claim shall receive a payment that exceeds the

liquidated value of the claim times the Payment Percentage in effect at the time of payment.

If a redetermination of the Payment Percentage has been proposed in writing by the

Trustee to the Board but has not yet been adopted, the claimant shall receive the lower of the

current Payment Percentage or the proposed Payment Percentage.  However, if the proposed

Payment Percentage was the lower amount but was not subsequently adopted, the claimant shall

thereafter receive the difference between the lower proposed amount and the higher current

amount.  Conversely, if the proposed Payment Percentage was the higher amount and was

subsequently adopted, the claimant shall thereafter receive the difference between the lower

current amount and the higher adopted amount.

- 10 -

There is uncertainty surrounding the amount of the Chinese Drywall Trust's future assets. There is also uncertainty surrounding the totality of the Chinese Drywall Claims to be paid over time, as well as the extent to which changes in existing federal and state law could affect the Chinese Drywall Trust's liabilities under this TDP.  If the value of the Chinese Drywall Trust's future assets increases significantly and/or if the value or volume of Chinese Drywall Claims actually filed with the Chinese Drywall Trust is significantly lower than originally estimated, the Chinese Drywall Trust shall use those proceeds and/or claims savings, as the case may be, first to maintain the Payment Percentage then in effect.

If the Trustee, with the consent of the Board, makes a determination to increase the Payment Percentage due to a material change in the estimates of the Chinese Drywall Trust's future assets and/or liabilities, the Trustee shall also make supplemental payments to all claimants who have previously been paid by the application of the lower Payment Percentage to the liquidated amount of their claims.  The amount of any supplemental payment shall be the liquidated value of the claim times the newly adjusted Payment Percentage, less all amounts previously paid to the claimant with respect to the claim.

The Trustee's obligation to make a supplemental payment to a claimant shall be suspended in the event the payment in question would be less than $500.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment that was also suspended because it would have been less than $500.00.  However, the Trustee's obligation shall resume and the Trustee shall pay any aggregate supplemental payments due the claimant when the total exceeds $500.00; provided, however, the Trustee shall have no obligation to make any supplemental distribution if the Trustee determines, with the consent of the Board, that it would not be cost effective to make any such supplemental distribution.

**SECTION V**

**Resolution of Chinese Drywall Claims**

5.1     **Ordering, Processing and Payment of Claims.**

**5.1(a) Ordering of Claims and Claims Filing Deadline.**  The Chinese Drywall

Trust shall order claims that are sufficiently complete to be reviewed for processing purposes on

a first-in, first-out ("**FIFO**") basis except as otherwise provided herein (the "**FIFO Processing**

**Queue**").  All holders of alleged Chinese Drywall Claims must file their claim with the Chinese

Drywall Trust by _____, the date that is sixty (60) days after the Chinese Drywall Trust first

makes available the proof of claim forms and other claims materials required to file a claim with

the Chinese Drywall Trust (the "**Claims Filing Deadline**").  Notice of the Claims Filing

Deadline shall be provided by the Chinese Drywall Trust to all holders of Chinese Drywall

Claims by posting such notice on the Chinese Drywall Trust's website:  www.wcitrust.com .

For all claims filed with the Chinese Drywall Trust on or before the Claims Filing

Deadline and placed into the FIFO Processing Queue as set forth above, a claimant's position in

the FIFO Processing Queue shall be determined as of the earliest of (i) the date that the Chinese

Drywall Claim was filed in the Debtors' bankruptcy proceedings; or (ii) the date a claimant

submits its claim against the Chinese Drywall Trust.

No Chinese Drywall Claims may be submitted to the Chinese Drywall Trust after the

Claims Filing Deadline.  If any claims are filed on the same date, the claimant's position in the

FIFO Processing Queue shall be determined by the date the claimant purchased his or her home

from the Debtor, with earlier purchases having priority over later purchases.

**5.1(b) Processing and Payment of Claims.**  On the Effective Date, liability of all

of the Debtors for all Chinese Drywall Claims was assumed by, and channeled to, the Chinese

Drywall Trust without further act or deed.  The Chinese Drywall Trust shall review Chinese

Drywall Claims that are sufficiently complete to be reviewed for processing purposes.

Chinese Drywall Claims that have been liquidated by the Expedited Review Process as

provided in Section 5.2(a), by the Individual Review Process as provided in Section 5.2(b), or by

the Special Master as provided in Section 5.5 shall be paid in FIFO order based on the date their

liquidation became final (the "**FIFO Payment Queue**"), all payments being subject to the

applicable Payment Percentage and any other limitations on payment provided herein.

Where the claimant is deceased or incompetent, and the settlement and payment of his or

her claim must be approved by a court of competent jurisdiction or through a probate process

prior to acceptance of the claim by the claimant's representative, an offer made by the Chinese

Drywall Trust on the claim shall remain open so long as proceedings before that court or in that

probate process remain pending, provided that the Chinese Drywall Trust has been furnished

with evidence that the settlement offer has been submitted to the court or in the probate process

for approval.  If the offer is ultimately approved by the court or through the probate process and

accepted by the claimant's representative, the Chinese Drywall Trust shall pay the claim in the

amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first

made.

If any claims are liquidated on the same date, the claimant's position in the FIFO

Payment Queue shall be determined by the date the claimant purchased his or her home from the

Debtor, with earlier purchases having priority over later purchases.  If any claims are liquidated

on the same date and the respective holders purchased their home from the Debtor on the same

day, the position of those claims in the FIFO Payment Queue shall be determined by the Chinese

Drywall Trust based on the dates of the claimants' birth, with older claimants given priority over

younger claimants.  For purposes of placement in the FIFO Payment Queue, the date of final

liquidation shall be the date the Trustee of the Chinese Drywall Trust approves the Chinese

Drywall Claim for payment or as otherwise provided for in this TDP.

 **5.1(c)  Effect of Claims Filed in the Bankruptcy Case or with the Chinese**

**Drywall Trust.**  Only Chinese Drywall Claims filed with the Chinese Drywall Trust on or before

the Claims Filing Deadline shall be processed and eligible for payment by the Chinese Drywall

Trust.  Chinese Drywall Claims filed during the Chapter 11 cases and (i) appearing on  Exhibit A

to the Bankruptcy Court's Order Granting Debtors' Motion for Entry of an Order Pursuant to 11

U.S.C. §§ 105(a) and 1142(b) of the Bankruptcy Code Implementing Provisions of the Plan

Relating to the Chinese Drywall Claims [docket no. 2770], or (ii) deemed to be  a Chinese

Drywall Claim through inclusion on a subsequent Chinese Drywall Claims Notice (as that term

is defined in the Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and

1142(b) of the Bankruptcy Code Implementing Provisions of the Plan Relating to the Chinese

Drywall Claims (the "**Chinese Drywall Motion**") [docket no. 2720]), shall be deemed filed with

the Chinese Drywall Trust without further act or action by the holder of such claim; provided,

however, that the Chinese Drywall Trust may require the holder of any such claim to supplement

his or her Chinese Drywall Claim with additional supporting information.  Failure to have filed a

proof of claim against a Debtor in the Chapter 11 bankruptcy case shall not, in and of itself, bar

or prohibit liquidation of a claim filed with the Chinese Drywall Trust.

 **5.2  Resolution of Chinese Drywall Claims.**  Claimants seeking resolution of

Chinese Drywall Claims must include, to the extent not already included with the filed proof of

claim, the required supporting documentation, in accordance with Section 5.2(a)(3).  It is

- 14 -

anticipated that the Chinese Drywall Trust shall provide an initial response to the claimant within six (6) months of the Claims Filing Deadline.

Upon filing of a valid proof of claim form with the required supporting documentation, the claimant shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in Section 5.1(a).

### 5.2(a) Expedited Review Process for PD Claims.

**5.2(a)(1) In General.** The Chinese Drywall Trust's Expedited Review Process is designed primarily to provide an expeditious, efficient and inexpensive method for liquidating PD Claims where (i) the claim can easily be verified by the Chinese Drywall Trust as meeting the presumptive Evidentiary Criteria, and (ii) the claim is based solely on remediation of Chinese Drywall from the claimant's home in accordance with (a) the two opinions[3] issued by Judge Eldon Fallon in the MDL proceeding styled as *In re: Chinese-Manufactured Drywall Products Liability Litigation* and pending in the United States District Court for the Eastern District of Louisiana, MDL No. 2047, Section L, or (b) such other court opinions, standards, and/or evidence as determined by the Trustee, with the consent of the Board, to provide a complete remediation in accordance with current industry standards. Expedited Review thus provides claimants with a substantially less burdensome process for pursuing PD Claims than does the Individual Review Process described in Section 5.2(b).

Claims that meet the presumptive Evidentiary Criteria shall be liquidated within the Scheduled Value set forth in Section 5.2(a)(4) and, if such claimant accepts the Scheduled Value,

---

[3] *See* Findings of Fact and Conclusions of Law, entered by Judge Fallon on or about April 8, 2010, in the case relating to *Germano, et al. v. Taishan Gypsum Co. Ltd., et al.*, case no. 09-6687; Findings of Fact and Conclusions of Law, entered by Judge Fallon on or about April 27, 2010, in the case relating to *Hernandez v. Knauf Gips KG, et al.*, case no.09-6050.

paid subject to the Payment Percentage.[4]  Claimants holding PD Claims that reject the Scheduled

Value assigned to their claim by the Chinese Drywall Trust may elect the Chinese Drywall

Trust's Individual Review Process set forth in Section 5.2(b).  Claimants holding PD Claims that

cannot be liquidated by Expedited Review because they do not meet the presumptive Evidentiary

Criteria or because they assert claims for damages other than for remediation of Chinese Drywall

from the claimant's home may elect the Chinese Drywall Trust's Individual Review Process set

forth in Section 5.2(b).

     The claimant's eligibility to receive the Scheduled Value for his or her PD Claim

pursuant to the Expedited Review Process shall be determined solely by reference to the

Evidentiary Criteria set forth below.

     **5.2(a)(2)  Claims Processing Under Expedited Review.**  All claimants

shall file the Chinese Drywall Trust's proof of claim form or be deemed to have filed a claim

with the Chinese Drywall Trust pursuant to Section 5.1(c) hereof.  As a proof of claim form is

reached in the FIFO Processing Queue, the Chinese Drywall Trust shall determine whether the

claim described therein meets the Evidentiary Criteria necessary to be eligible for Expedited

Review, and shall advise the claimant of its determination.  If the Evidentiary Criteria is

determined to have been met, the Chinese Drywall Trust shall tender to the claimant an offer of

payment within the Scheduled Value multiplied by the applicable Payment Percentage, together

---

[4] Consistent with the opinions issued by Judge Eldon Fallon in the MDL proceeding styled as *In re: Chinese-Manufactured Drywall Products Liability Litigation* and pending in the United States District Court for the Eastern District of Louisiana, MDL No. 2047, Section L, to the extent that the evidence submitted by a claimant demonstrates that Chinese drywall in the claimant's home is confined to a discrete area of the home, the Chinese Drywall Trust has discretion to tender an offer to the claimant less than the Scheduled Value.  Likewise, if the evidence submitted by a claimant reveals that the claimant has been compensated or reimbursed for his Chinese drywall-related damages from another source, the Chinese Drywall Trust may reduce the Scheduled Value to take into account the claimant's other compensation/reimbursement.

with a form of release approved by the Chinese Drywall Trust; provided, however, that to the

extent that the evidence submitted by a claimant demonstrates that the Chinese drywall in the

claimant's home is confined to a discrete area of the home, the Chinese Drywall Trust has

discretion to tender an offer to the claimant less than the Scheduled Value; and provided further

that to the extent the evidence submitted by a claimant reveals that the claimant has been

compensated or reimbursed for his Chinese drywall-related damages from another source, the

Chinese Drywall Trust may reduce the Scheduled Value to take into account the claimant's other

compensation/reimbursement.  Claimants shall have thirty (30) days within which to accept or

reject the Scheduled Value assigned to their claim by the Chinese Drywall Trust.  If the claimant

accepts the Scheduled Value and returns the release properly executed, the claim shall be placed

in the FIFO Payment Queue, following which the Chinese Drywall Trust shall disburse payment

subject to the provisions of Section 2.3.

**5.2(a)(3)  Evidentiary Criteria for PD Claims.**  Claimants with PD

Claims must submit the information set forth below:

(1)  the following documentation or other evidence sufficient to demonstrate that

Chinese drywall is or was installed in the structure which is the subject of the PD Claim:

(i)   an affidavit or sworn statement that Chinese drywall is/was present
in the structure, attested to by a licensed or certified contractor,
architect, civil engineer, government inspector, or other certified
inspector who has inspected the structure (provided the Chinese
Drywall Trust finds the evidence and/or the inspector's
certification to be reasonably reliable); or

(ii)  in the case of a deceased claimant, a sworn statement of the
claimant's executor, executrix, or personal representative
(provided the Chinese Drywall Trust finds the evidence reasonably
reliable) that Chinese drywall is/was present in the structure,
attested to by a licensed or certified contractor, architect, civil
engineer, government inspector, or other certified inspector who
has inspected the structure; or

- 17 -

(iii)    drywall purchase invoices, construction records, or similar records that Chinese drywall is/was present in the structure, (provided the Chinese Drywall Trust finds the evidence reasonably reliable); or

(iv)    before and after photographs of the structure in question depicting the presence of and removal of Chinese drywall, accompanied by an affidavit by the homeowner or contractor verifying that the material depicted in the photographs was Chinese drywall that was present in that structure (provided the Chinese Drywall Trust finds the evidence reasonably reliable); or

(v)    a laboratory report evidencing that Chinese drywall is/was installed in the structure; or

(vi)    any other evidence deemed credible by the Chinese Drywall Trust.

For each of subsections (i)—(vi) above, the documentation or other evidence submitted to the Chinese Drywall Trust shall also specify whether the Chinese drywall present in the claimant's home is confined to a discrete area of the home. The Chinese Drywall Trust may require submission of other or additional evidence of exposure when deemed necessary. Likewise, the proof of claim forms developed by the Chinese Drywall Trust shall also require each claimant to verify whether the claimant has been compensated or reimbursed for his Chinese drywall-related damages from another source, and if so, the amount of compensation or reimbursement received by the claimant.

(2) the following documentation or other evidence sufficient to demonstrate that the claimant is the current owner of a home or other structure built by or on behalf of a Debtor:

(i)    an affidavit establishing that the claimant was the owner, as of the August 26, 2009, confirmation date, of the structure built by or on

behalf of a Debtor, including the date that the claimant purchased

the home and the address of the home; or

(ii)     any other evidence establishing that the claimant was an owner, as

of the August 26, 2009, confirmation date, of the structure built by

or on behalf of a Debtor, including the date that the claimant

purchased the home and the address of the home.

**5.2(a)(4)  Scheduled Values and Maximum Values for PD Claims.**  The

Scheduled Values and Maximum Values for PD Claims are set forth below.  The Maximum

Values are only available for claimants rejecting the Scheduled Value assigned to their

respective claim, and thereafter electing Individual Review.  The Trustee, with the consent of

the Board pursuant to Section 5.7(b) of the Chinese Drywall Trust Declaration, may change

these valuation amounts for good cause and consistent with other restrictions on the amendment

power.  The Scheduled Values and Maximum Values for PD Claims are the following:

| **Scheduled Value**[5] | **Maximum Value**[6] |
|---|---|
| **$70-120 per square foot** | **$87.5-150 per square foot** |

**5.2(b)  Individual Review Process.**

**5.2(b)(1)  In General.**  Subject to the provisions set forth below, a

claimant may elect to have his or her PD Claim reviewed for purposes of determining whether

---

[5] The Scheduled Value for PD Claims is based on the average cost per square foot to remediate the homes, using estimates obtained by the Chinese Drywall Trust for remediation of certain WCI homes in Florida using the guidelines provided in Judge Fallon's recent opinions.  As such, the Scheduled Value for a particular home will vary depending on the size, type, and location of the home.

[6] The Maximum Value is 1.25 times the Scheduled Value.

- 19 -

the claim would be compensable in the court system even though it does not meet the

presumptive Evidentiary Criteria set forth in Section 5.2(a)(3).  In addition or alternatively, a

claimant that rejects the Scheduled Value assigned to his or her PD Claim by the Chinese

Drywall Trust may elect to have his or her PD Claim undergo the Individual Review Process for

purposes of determining whether the liquidated value of the claim exceeds the Scheduled Value

set forth in Section 5.2(a)(4).  However, until the Chinese Drywall Trust has made an offer on a

claim pursuant to Individual Review, the claimant may change his or her Individual Review

election and accept the Scheduled Value assigned to his or her PD Claim during the Chinese

Drywall Trust's Expedited Review Process.

To the extent that medical evidence, presumptive medical criteria, or other information

subsequently becomes available that the Trustee determines, with the consent of the Board, is

reasonably reliable and would support a viable PI Claim in the court system, this TDP will be

amended to set forth procedures for processing and paying allowed PI Claims.

**5.2(b)(1)(A)  Review of Evidentiary Criteria.**  The Chinese

Drywall Trust's Individual Review Process provides a claimant with an opportunity for

individual consideration and evaluation of a PD Claim that fails to meet the presumptive

Evidentiary Criteria.  In such a case, the Chinese Drywall Trust shall either deny the claim or, if

the Chinese Drywall Trust is satisfied that the claimant has presented a claim that would be

cognizable and valid in the court system, the Chinese Drywall Trust may offer the claimant a

liquidated value amount up to the Scheduled Value for the claim.

**5.2(b)(1)(B)  Review of Liquidated Value.**  Claimants holding

PD Claims that reject the Scheduled Value assigned to their respective claims by the Chinese

Drywall Trust's Expedite Review Process may thereafter seek Individual Review of the

liquidated value of their claims as well as of their Evidentiary Criteria.  The Individual Review

Process is intended to result in payments equal to the full liquidated value for each claim

multiplied by the Payment Percentage; however, the liquidated value of any Chinese Drywall

Claim that undergoes Individual Review may be determined to be less than the Scheduled Value

the claimant would have received under Expedited Review.  Moreover, the liquidated value for a

PD Claim shall not exceed the Maximum Value set forth in Section 5.2(a)(4).  Because the

detailed examination and valuation process pursuant to Individual Review requires substantial

time and effort, claimants electing to undergo the Individual Review Process may be paid the

liquidated value of their Chinese Drywall Claims later than would have been the case had the

claimant elected the Expedited Review Process.  Subject to the provisions of Section 7.1, the

Chinese Drywall Trust shall devote reasonable resources to the review of all claims to ensure

that there is a reasonable balance maintained in reviewing all classes of claims.

   **5.2(b)(2)  Valuation Factors to Be Considered in Individual Review.**

The Chinese Drywall Trust shall liquidate the value of each Chinese Drywall Claim that

undergoes Individual Review taking into consideration all of the factors that might affect the

severity of damages and values within the court system.

   **5.2(b)(2)(A)  Valuation Factors for Individual Review of PD**

**Claims.**  In conducting the Individual Review of a PD Claim, the Chinese Drywall Trust shall

consider the following factors, without limitation:

   (1) credible evidence of the degree to which the characteristics of a claim

differ from the presumptive Evidentiary Criteria for the claim in question;

(2)      actual or projected amounts spent or to be spent by the claimant to
remove, contain, or abate the Chinese drywall, including the cost of repairing the home or other
structure in which the Chinese drywall was installed;

(3)      actual amounts spent to repair or replace any appliances or fixtures,
including air conditioners, damaged as a result of exposure to the Chinese drywall;

(4)      any other damages which the Chinese Drywall Trust determines to be
actual damages compensable in the court system for PD Claims; and

(5)      actual or projected amounts of money, compensation, and/or
reimbursement received by the claimant, directly or indirectly, on account of the presence of
Chinese drywall in his or her home.

**5.2(b)(2)(B)  Processing of PD Claims Under Individual
Review.**  At the conclusion of the Individual Review Process, the Chinese Drywall Trust shall:
(1) determine the liquidated value, if any, of the claim; and (2) advise the claimant of its
determination.  If the Chinese Drywall Trust establishes a liquidated value, it shall tender to the
claimant an offer of payment of the aforementioned determined value multiplied by the
applicable Payment Percentage, together with a form of release approved by the Chinese Drywall
Trust.  If the claimant accepts the offer of payment and returns the release properly executed, the
claim shall be placed in the FIFO Payment Queue, following which the Chinese Drywall Trust
shall disburse payment, subject to the Payment Percentage and the provisions of Section 2.3.

In the event that a particular claimant disagrees with (i) the Chinese Drywall Trust's
determination that a particular PD Claim is not eligible for payment, or (ii) the liquidated value
determined by the Chinese Drywall Trust on account of such claimant's claim, the claimant may
appeal the Chinese Drywall Trust's determination to the Special Master by submitting a written

- 22 -

notice to such effect to the Chinese Drywall Trust within fifteen (15) days of service by the

Chinese Drywall Trust of its determination to the claimant.  In the event a timely written notice

of appeal is so filed, the Special Master will determine de novo whether the claimant's Chinese

Drywall Claim is eligible for payment under this TDP and/or the liquidated value of such

claimant's PD Claim, as set forth in Section 5.5.  The Special Master's decision on this matter

shall be final, binding, and non-appealable.

     **5.3**    **Indirect Chinese Drywall Claims.**  Indirect Chinese Drywall Claims asserted

against the Chinese Drywall Trust based on theories of contribution or indemnification under

applicable law shall be treated as valid and paid by the Chinese Drywall Trust subject to the

applicable Payment Percentage if (a) the claim satisfied the requirements of any applicable Bar

Date established by the Bankruptcy Court, and is not otherwise disallowed by Section 502(e) of

the Bankruptcy Code or subordinated under Section 509(c) of the Bankruptcy Code, and (b) the

holder of the claim (the "**Indirect Claimant**") establishes to the satisfaction of the Trustee that

(i) the Indirect Claimant has paid the liability and obligation of the Chinese Drywall Trust to the

individual claimant to whom the Chinese Drywall Trust would otherwise have had a liability or

obligation under this TDP (the "**Direct Claimant**"), (ii) the Direct Claimant and the Indirect

Claimant have released the Chinese Drywall Trust from all liability to the Direct Claimant, and

(iii) the claim is not otherwise barred by a statute of limitations or repose or by other applicable

law.  In no event shall any Indirect Claimant have any rights against the Chinese Drywall Trust

superior to the rights of the related Direct Claimant against the Chinese Drywall Trust, including

any rights with respect to the timing, amount or manner of payment.  In addition, no indirect

Chinese Drywall Claim may be liquidated and paid in an amount that exceeds what the Indirect

Claimant has actually paid the related Direct Claimant.

To establish a presumptively valid indirect Chinese Drywall Claim, the Indirect Claimant's aggregate liability for the Direct Claimant's claim must also have been fixed, liquidated and paid fully by the Indirect Claimant by settlement (with an appropriate full release in favor of the Chinese Drywall Trust) or a Final Order provided that the claim is valid under the applicable state law.  In any case where the Indirect Claimant has satisfied the claim of a Direct Claimant against the Chinese Drywall Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain for the benefit of the Chinese Drywall Trust a release in form and substance satisfactory to the Trustee.

If an Indirect Claimant cannot meet the presumptive requirements set forth above, the Indirect Claimant may request that the Chinese Drywall Trust review the indirect Chinese Drywall Claim individually to determine whether the Indirect Claimant can establish under applicable state law that the Indirect Claimant has paid all or a portion of a liability or obligation that the Chinese Drywall Trust had to the Direct Claimant.  If the Indirect Claimant can show that it has paid all or a portion of a liability or obligation, the Chinese Drywall Trust may reimburse the Indirect Claimant the amount of the liability or obligation so paid, times the then applicable Payment Percentage.  However, in no event shall the reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled.  Further, the liquidated value of any indirect Chinese Drywall Claim paid by the Chinese Drywall Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any Chinese Drywall Claim that might be subsequently asserted by the Direct Claimant against the Chinese Drywall Trust.

Any dispute between the Chinese Drywall Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to the appeal procedures set forth in Section 5.5.

The Trustee may develop and approve a separate proof of claim form for indirect Chinese Drywall Claims. Indirect Chinese Drywall Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures to be developed and implemented by the Trustee consistent with the provisions of this Section 5.6, which procedures (a) shall determine the validity, allowability and enforceability of the claims; and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of the claims as the Chinese Drywall Trust would have afforded the holders of the underlying valid Chinese Drywall Claims.

**5.4    Claims Audit Program.**  The Chinese Drywall Trust, with the consent of the Board, may develop methods for auditing the reliability of Evidentiary Criteria.

Further, in the event that an audit reveals that fraudulent information has been provided to the Chinese Drywall Trust, the Chinese Drywall Claim may be disallowed and the Chinese Drywall Trust may seek the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152, and seek sanctions from the Bankruptcy Court.

**5.5    Special Master.**  The Chinese Drywall Trust, with the consent of the Board, shall appoint one or more persons to serve as the Special Master under this TDP. If, at any time, two or more persons constitute the Special Master, then any decisions of the Special Master shall be made by a majority of such persons.

The Special Master is responsible for resolving disputes concerning whether the Chinese Drywall Trust's rejection or denial of a claim was proper, resolving disputes over the liquidated

value of a claimant's PD Claim, and determining any other dispute expressly made eligible for decision by the Special Master by this TDP.

In all matters appealed to the Special Master for decision, the Special Master shall consider the same remediation requirements that are set forth in Section 5.2(a)(3).  In the case of an appeal involving the liquidated value of a PD Claim, the Special Master shall consider the same valuation factors that are set forth in Section 5.2(b)(2).  With respect to all claims submitted to the Special Master for decision, Special Master may also consider any other relevant information tending to show that a claimant has presented a claim that would be cognizable and valid in the court system.  The Special Master shall notify the Chinese Drywall Trust of its decision, and the Chinese Drywall Trust shall, promptly following receipt of such notice, notify the Board and the claimant of the Special Master's decision.

The Special Master shall not return an award in excess of the Maximum Value specified in Section 5.2(a)(4) for the applicable claim.  The claim of a claimant who appeals to the Special Master and who is given a liquidated claim by the Special Master shall be placed in the FIFO Payment Queue as of the date of the Special Master's decision, and paid subject to the application of the Payment Percentage and the provisions of Section 2.3, if any.

## SECTION VI

### Submission of Claims Materials

**6.1    Claims Materials.**  The Chinese Drywall Trust shall prepare suitable and efficient claims materials ("**Claims Materials**") for all Chinese Drywall Claims, and shall provide the Claims Materials to the claimants upon written request.  The proof of claim form shall include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.  In developing its claim

filing procedures, the Chinese Drywall Trust shall make every effort to provide claimants with

the opportunity to utilize currently available technology at their discretion, including filing

claims and supporting documentation over the internet or by other electronic means. The proof

of claim form to be used by the Chinese Drywall Trust shall be developed by the Chinese

Drywall Trust and submitted to the Board for consent; it may be changed by the Chinese Drywall

Trust with the consent of the Board. The Chinese Drywall Trust shall also prepare procedures as

otherwise mandated by this TDP.

      **6.2**     **Content of Claims Materials.** The Claims Materials shall include a copy of this

TDP, instructions adopted by the Trustee, and a detailed proof of claim form. If feasible, the

forms used by the Chinese Drywall Trust to obtain claims information shall be substantially

similar to those used by other claims resolution organizations.

      **6.3**     **Filing Requirements and Fees.** The Trustee shall have the discretion to

determine, with the consent of the Board, whether a filing fee should be required for any Chinese

Drywall Claims.

      **6.4**     **Confidentiality of Claimants' Submissions.** All submissions to the Chinese

Drywall Trust by a holder of a Chinese Drywall Claim or a proof of claim form and materials

related to the claim shall be treated as made in the course of settlement discussions between the

holder and the Chinese Drywall Trust, and intended by the parties to be confidential and to be

protected by all applicable state and federal privileges, including but not limited to those directly

applicable to settlement discussions. The Chinese Drywall Trust will preserve the confidentiality

of the claimant's submissions, and shall disclose the contents thereof only with the permission of

the holder to such other persons as authorized by the holder, or in response to a valid subpoena.

Furthermore, the Chinese Drywall Trust shall provide counsel for the holder a copy of any

subpoena as soon as practical.  The Chinese Drywall Trust shall on request of the claimant's

counsel and at the sole expense of the claimant or claimant's counsel, take all necessary and

appropriate steps to preserve the privileges.  Notwithstanding anything in the foregoing to the

contrary, with the consent of the Board, the Chinese Drywall Trust may, in specific limited

circumstances, disclose information, documents or other materials reasonably necessary in the

Chinese Drywall Trust's judgment to preserve, litigate, resolve or settle coverage, or to comply

with an applicable obligation under an insurance policy or settlement agreement within the

Insurance Coverage Actions, Insurance Recoveries, and/or Chinese Drywall Actions; provided,

however, the Chinese Drywall Trust shall take any and all steps reasonably feasible in its

judgment to preserve the further confidentiality of such information, documents and materials,

and prior to the disclosure of such information, documents or materials to a third party, the

Chinese Drywall Trust shall receive from the third party a written agreement of confidentiality

that (a) ensures that the information, documents and materials provided by the Chinese Drywall

Trust shall be used solely by the receiving party for the purpose stated in the agreement and (b)

prohibits any other use or further dissemination of the information, documents and materials by

the third party.  Notwithstanding anything in the foregoing to the contrary, the Chinese Drywall

Trust shall, at the request of New WCI, make all such submissions available to New WCI for

review and copying at New WCI's expense, and New WCI agrees to preserve the confidentiality

of the claimant's submissions, and to disclose the contents thereof only with the permission of

the Chinese Drywall Trust to such other persons as authorized by the Chinese Drywall Trust, or

in response to a valid subpoena.  Furthermore, New WCI shall provide counsel for the Chinese

Drywall Trust with a copy of any subpoena as soon as practical.  Nothing herein shall amend or

otherwise modify the letter agreements between WCI, and various law firms regarding "Chinese Drywall Trust Access to Confidential Information," dated on or about November 23, 2009.

## SECTION VII

### General Guidelines for Liquidating and Paying Claims

**7.1    Costs Considered.**  Notwithstanding any provisions of this TDP to the contrary, the Trustee shall give appropriate consideration to the cost of investigating and uncovering invalid Chinese Drywall Claims so that the payment of valid Chinese Drywall Claims is not further impaired by such processes with respect to issues related to the validity of the Evidentiary Criteria supporting a Chinese Drywall Claim.  The Trustee shall have discretion regarding the amount of transaction costs to be expended by the Chinese Drywall Trust so that valid Chinese Drywall Claims are not unduly further impaired by the costs of additional investigation.  Nothing herein shall prevent the Trustee, in appropriate circumstances, from contesting the validity of any claim against the Chinese Drywall Trust whatever the costs, or declining to accept Evidentiary Criteria from sources that the Trustee has determined to be unreliable pursuant to Section 5.2(a)(3) or pursuant to the Claims Audit Program described in Section 5.4.

**7.2    Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.**  Consistent with the provisions hereof and the FIFO Processing and Payment Queues set forth above, and subject to the provisions of Section 2.3, the Trustee shall proceed as quickly as possible to liquidate valid Chinese Drywall Claims, and shall make payments to holders of claims in accordance with this TDP promptly as funds become available and as claims are liquidated.

Because the Chinese Drywall Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, payments may have to

be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustee shall use his best efforts to treat similar claims in substantially the same manner, consistent with his duties as Trustee, the purposes of the Chinese Drywall Trust, and the practical limitations imposed by the inability to predict the future with precision.

In the event that the Chinese Drywall Trust faces temporary periods of limited liquidity, the Trustee may, with the consent of the Board, suspend the normal order of payment and may temporarily limit or suspend payments altogether.

**7.3    Punitive Damages.**  In determining the value of any Chinese Drywall Claim, punitive or exemplary damages, *i.e.*, damages other than compensatory damages, shall not be considered or allowed, notwithstanding their availability in the court system.

**7.4    Releases.**  The Trustee shall have the discretion to determine the form and substance of the releases to be provided to the Chinese Drywall Trust. As a condition to making any payment to a claimant, the Chinese Drywall Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law. If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant may, in the discretion of the Chinese Drywall Trust, constitute such a release.

**7.5    Third-Party Services.**  Nothing in this TDP shall preclude the Chinese Drywall Trust from contracting with a claims resolution organization to provide services to the Chinese Drywall Trust so long as decisions about the liquidated value of Chinese Drywall Claims are based on the relevant provisions of this TDP, including the Evidentiary Criteria set forth above.

## SECTION VIII

### Miscellaneous

**8.1**     **Amendments.**  Except as otherwise provided herein, the Trustee may amend,

modify, delete, or add to any provisions of this TDP (including, without limitation, amendments

to conform this TDP to advances in scientific or medical knowledge or other changes in

circumstances) without seeking approval of the Bankruptcy Court, provided the Trustee first

obtains the consent of the Board pursuant to the Consent Process set forth in Sections 5.7(b) of

the Chinese Drywall Trust Declaration.  Nothing herein is intended to preclude the Board from

proposing to the Trustee, in writing, amendments to this TDP.  Any amendment proposed by the

Board shall remain subject to Section 6.3 of the Chinese Drywall Trust Declaration.

**8.2**     **Severability.**  A determination that any provision contained in this TDP is

unenforceable shall in no way limit or affect the enforceability and operative effect of any and all

other provisions of this TDP.  Should any provision contained in this TDP be determined to be

inconsistent with or contrary to the Debtor's obligations to any insurance company providing

insurance coverage to the Debtor in respect of Chinese Drywall Claims based on exposure to

materials containing Chinese drywall for which the Debtor has legal responsibility, the Chinese

Drywall Trust with the consent of the Board may amend this TDP and/or the Chinese Drywall

Trust Declaration to make the provisions of either or both documents consistent with the duties

and obligations of the Debtor to the insurance company.

**8.3**     **Governing Law.**  Except for purposes of determining the liquidated value of any

Chinese Drywall Claim, administration of this TDP shall be governed by, and construed in

accordance with, the laws of the State of Delaware.  The law governing the liquidation of

Chinese Drywall Claims in the case of Individual Review shall be the law of the Claimant's

Jurisdiction.