February and now are off the calendar. However, they are listed, these particular cases are listed at page 6 of your Honor's pre-trial order.

With regard to Trials, I think it's fair to say that without your lightening docket and the fact that *Germano* was tried and the *Hernandez* case was tried, your Honor set two other cases for trial, we would not be where we are today.

Motions committee has communicated with the court's directive regarding Pre-Trial Order 1G and the potential for amendment to that order, and they're being addressed by the motions committee.

With respect to Discovery Issues. It should be clear, may it please the court, to everyone who is listening to these proceedings that discovery and litigation against Knauf continues and will continue till this ultimate resolution. To that end, the Stuermer continuation deposition is tomorrow in New York City. Professor Hummel, the research and science director for Knauf, his deposition is October 19th and October 20th in New York. The Norris deposition is November 11th and November 12th in Hong Kong. The Robson deposition is November 17th and 18th in London. The Isabel Knauf deposition is December 7th and December 8th in Germany. And Director Grundke's deposition is set for December 15th and December 16th in Germany.

Both of those depositions will occur in Frankfurt at the Frankfurt office of Kaye Scholer, the London deposition will be the

at London office of Kaye Scholer, and the deposition notices reflect dates, times, et cetera. And I believe that we have not posted them on your Honor's web site but we shall so that everyone will have notice.

Your Honor, the Taishan Gypsum depositions are a matter of discussion and potential argument before your Honor.

THE COURT: Okay.

MR. HERMAN: At this time I would like to present, as briefly as I can, the PSC's position as to why these depositions must go forward and why written discovery must go forward.

Taishan was served in *Germano* cases. That service cost $100,000 a pop. To say that the Haig Convention is a horse and buggy and we're in an international economy is an understatement. Every time Taishan has been served it's been 100,000 a pop. We had a very expensive trial, expensive for the court, the court's time, expensive for the attorneys that were involved. Your Honor had seven cases before your Honor, those cases cost about $1 million to try, Taishan never appeared, even though they were served.

A legitimate default in our view was taken, your Honor rendered a legitimate government. Taishan has now appeared. We're very pleased that they're here, we welcome Taishan's counsel, they are excellent attorneys. They contest jurisdiction and by inference alter ego, and we have claimed that the People's Republic of China actually and BNBM which we understand was served yesterday, and CNBM are actually the puppets of an alter ego.

We want discovery. We think we're entitled to discovery. They may contest jurisdiction, but we're certainly entitled to discovery on jurisdiction and alter ego, and we ask that it go forward and that it be accelerated under your Honor's aegis as the MDL judge designate.

I believe that failing puts our issues in a context, and either Mr. Stanley, local counsel, or Mr. Cyr are present, I'm sure that --

THE COURT: This is a motion to lift the stay on the class certification in *Germano*, and I'll hear from the other side.

Let's make your appearance and tell us who you represent.

MR. CYR: Thank you, your Honor. My name is Joe Cyr and I am with Hogan Lovells, and we represent Taishan. Thank you very much, your Honor, it's a privilege to be before you. I will try to address the couple of issues that are before you with respect to Taishan as briefly as I can.

I think it is important though for the record and for others to appreciate that we appeared on behalf of Taishan within a few months after the default judgment was entered. You and I and Mr. Stanley had an opportunity to confer. You made it very clear to me that you expected Taishan to proceed expeditiously, even though you did show some sensitivity to the position that we were in and that our client does not have any representatives that speak English and that we were new to the case and that it would be a real challenge. And I promised you that we would do everything we

could to get up to speed on the case as soon as possible.

We've had two groups of lawyers go to China already investigating the facts, as well as educating our client through interpreters with respect to the U.S. judicial system and everything that's going on here. And as I mentioned to you in a call, there was a likelihood that we were going to attempt to move to vacate the default judgment in *Germano*, which was one of the few cases in which Taishan Gypsum has been served.

And after our investigation we decided to do two things: One, we appealed to the Fifth Circuit and that divested this court of jurisdiction. But at the same time, we moved to vacate the default judgment.

And as your Honor knows, that does provide this court limited jurisdiction to do one of three things under 62.1: The first to defer the motion to vacate the default judgment. To grant the default judgment -- I'm sorry, the second is to deny; and then the third is to grant or indicate to the Fifth Circuit that there is a substantial issue. And if the court does indicate to the Fifth Circuit that there's a substantial issue, then the Fifth Circuit can remand for the purpose of allowing the court to continue to address the default judgment.

And so under those circumstances, Judge, respectfully, we're just all dealt with the very real fact that this court's jurisdiction is limited. And you recognize that when you denied our motion to actually have our brief, excess pages, you said you

lacked jurisdiction to do that and you were right about that.

And so point number one, and I have other points that I want to make briefly, is that the court actually doesn't have jurisdiction to order the discovery requested. Nor does it have jurisdiction to entertain the motion for class certification while this case is on appeal. It can only do the things that I've mentioned under Rule 62.1.

But I would rather in addition to that just offer this, your Honor, the one thing -- and please, I don't mean to preach to anybody in this courtroom -- but representing a Chinese company I am very sensitive to the international comedy issues and the expectations that they have that we go by the rules. And one of the rules, of course, is that you do proceed under the Haig Convention.

And by the way, just for the record, the default judgment was based on the second amended complaint in *Germano* which was never served on Taishan, nor was the motion to intervene on behalf of the intervening plaintiffs that obtained that default judgment rather than the named plaintiffs.

Our company asked the court that we go by the rules and the rules require us that it's not an accident what 62.1 does. The rules require that we go step by step. Now, we've moved based on the facts that we've investigated, Judge, for vacation of the default judgment in this case as well as in *Mitchell* because we believe that the appropriate, that the relevant courts lack

personal jurisdiction and we filed all of the papers in that regard.

And by the way, I apologize for not notifying the PSC with respect to the motion before the Alabama court, and we will make a serious effort to always coordinate any activities we have going on in the state.

But again, just for the record, is that Taishan Gypsum manufactured some drywall in 2006 and 2007 and all of that drywall was sold in China to distributors that were covered by arbitration agreements. And they have no expectation whatsoever that they were going to purposely avail themselves of the state markets of any particular state in the United States. And I, also, I know this is a very positive day for a lot of people that are involved with all of the Knauf negotiations for the past year, but since I have these brief moments, I have to say, your Honor, is that based on our investigation and our discussions with the client, they absolutely do not understand why their high quality drywall allegedly emitted excessive amounts of hydrogen sulfide. They don't understand the causation issues. We are not right behind Knauf in any kind of settlement negotiations, even if the court finds that it has personal jurisdiction. I wanted to be upfront with you about that.

THE COURT: Sure, okay. I understand.

MR. CYR: I have just a couple of other things to say, your Honor. One is that, as I mentioned to you in the phone call in June, and I am not trying to be critical because I know how

these things happen, but in the gross class action the PSC named I think approximately 20 subsidiaries who have been served, subsidiaries of Taishan. Now, our investigation, as I told you, revealed that these subsidiaries are spread throughout this very huge country of China and that they have nothing to do at all with the drywall that was manufactured in China that apparently was distributed to some extent in the United States and found its way into some homes. And we see no good faith basis for including those subsidiaries in the gross complaint.

I suspect that they were added because somebody went on Google, did a web site, saw a whole bunch of subsidiaries and threw them in the complaint. Again, I am not trying to be preaching, your Honor, but we are not the only country that thinks you should have a good faith basis for suing somebody before you sue them.

And then the second point of that is: It's very unfair then to then require those subsidiaries to subject themselves to discovery, offer declarations, declaring their innocence unless the first step is taken and that is that the PSC demonstrates the answer to this question: What was the good faith basis for suing those companies? We've tried to have this discussion with them because we join your Honor in wanting to narrow the issues. We know what the companies are that manufacturer drywall that eventually was distributed into the United States by others, we want to address the personal jurisdiction issue, and if the court finds that Taishan is subject to personal jurisdiction and Taishan

is in the lawsuit, that's the first step and then we go to the next step.

Thanks for your time.

THE COURT: Thank you very much for your time.

MR. HERMAN: Your Honor, just a brief response statement, and Mr. Levin has a brief statement.

While learned counsel was sending lawyers to China who couldn't speak Chinese, his client was on a web site in English that said that it did business in the United States of America. We think that there should be no delay in going forward with jurisdiction and alter ego discovery.

In terms of good faith, we're not subject to cross-examination at this time, but we believe that we've acted in very good faith given the non-appearance of Taishan after they were served.

THE COURT: Okay. Thank you very much.

MR. LEVIN: Does your Honor want to hear a response?

THE COURT: I really don't need to. I understand the issue.

MR. LEVIN: I wanted to give one but I didn't think you wanted to hear one.

THE COURT: I understand the issues. I make no decision on jurisdiction, that's another issue. But both sides ought to have a right to at least look into this matter. I think counsel for Taishan makes a point about he's interested in why some of his

individual companies or why the individual "subsidiaries" are brought into the litigation, I think he has a right to discover that and pursue that with the plaintiffs. He should know why.

But likewise, I think the plaintiffs ought to have a right to discover whether or not they have jurisdiction over it. To the extent of lifting the stay to permit discovery, particularly on jurisdiction, I am going to do so for those reasons.

Let's move onto the next. I have in addition several motions before me, the motions to enjoin the state court in Georgia from proceeding further. The case has taken a different turn now. Under the law that's developed, until there is some *** rees or program, settlement program, it's very difficult for federal courts to enjoin any state court from proceeding.

The situation has changed now, I am involved in a rees, it is a settlement program, a pilot program, but it is a settlement program. And so I am very conscious of protecting that particular program. So I really do now have to take a look at whether or not it is appropriate for the federal court to act on that to protect its jurisdiction and protect its program.

So I am going to set the motion within ten days to determine whether or not to enjoin the state court in Muskogee County. I'll take briefs on that particular. I'll check my calendar and set it sometime within the next ten days alerting all of the parties.

The other motions for class certification of the Florida

homeowners class for claims against Banner and claims against other Florida homeowners against Knauf, it seems to me that both of those should be delayed. I am going to delay moving on those for at least 30 days and I will talk with you all about that at the next conference.

I really want everybody to put their attention and all of their resources into making this pilot program work. I think everybody is looking at this pilot program. If it works then this may be an avenue to resolve this whole matter globally, and it's going to take a lot of effort to get this matter off the ground and I don't want to distract the parties with other matters.

There's a motion for leave to amend third-party complaint in the Vickers. I am going to grant that motion, I think that it's essential for me to get all of the people before me. That doesn't mean they're going to stay there, but I want them present so that they can at least speak for their respective interests, so they can participate to the extent they wish to participate. If they're not a party, they can't, they're a spectator. When they're a party, they're a participant and they can actively advocate for their client. Again, doesn't mean that they're going to stay in it, they may well get out and they may get out quickly, but at least they ought to be given an opportunity to participate and I see that by allowing an amendment not third-party complaint, so I am going to grant that.

Are there any motions that I haven't dealt with? Lowe's

Home Centers opposition to plaintiff's motion intervening *Gross*.

MR. HERMAN: No further motions. I do want --

MR. LEVIN: I do. Excuse me, your Honor, I seldom push Russ aside, he's pretty difficult to push aside. We filed intervention claims and you granted them, and there's another set that's pending that we haven't moved for, we just filed. Lowe's objected to being named in that intervention complaint because of the All Writs Act that was pending. You did not grant the Lowe's intervention at that time. So it's hanging there and I guess it should hang there until we deal with the all writs.

THE COURT: Yes. And by all writs that means enjoining a particular state court. It's an All Risk Act and that's what we're talking about.

MR. HERMAN: He pushed so hard I'm bruised. Your Honor, two things on discovery: We're continuing to negotiate various discovery issues with Knauf; secondly, following this conference there is an issue that involves a Banner Supply subpoena.

Your Honor, it's listed at page 12, there is no Freedom of Information Act pending.

The Trial Settings under 10, your Honor has already stated and it's in the status report.

Nothing new in terms of Filings in the MDL.

Nothing new on the notices of appearance and default judgment.

That brings us to 13 insurance issues. There is an issue

brought by Robert Pate as trustee for the Chinese Drywall Trust, motion to compel. Mr. Steckler has been handling those issues, he is in court, and I suggest your Honor may want to hear that after this conference.

THE COURT: Sure, I'll do that afterwards.

MR. HERMAN: Nothing new on Service of Pleadings Electronically.

Nothing new under item 15, Master Complaint.

Mr. Levin has already addressed class action complaints and indeterminate defendants, and it is spelled out; as well as in No. 17 along with a class action complaints to be posted on your web site, there really is nothing new to really discuss there.

Nothing new under article 18 regarding special master. As far as the court appointed mediator, again we want to acknowledge John Perry and his good offices in helping us reach a pilot program. The Knauf Gips KG, personal jurisdiction matter was already addressed at page 8.

Section 8, nothing new under item 20. Database management.

Nothing new under frequently asked questions that have again been posted at www.laed.uscourts.gov/drywall/faq.htm. Knauf attorneys Mr. Wallins and Kerry Miller and Arnold and myself and Chris will attempt to have some additional Q and A's regarding the pilot program to submit to your Honor for potential posting on the web site.

Your Honor has under item 22 detailed the various motions and determinations as to those motions.

Under item 23 motion to establish a Plaintiff's Litigation Expense Fund that's deferred.

Your Honor has under consideration the re-appointment and/or appointment of members of the Plaintiff's Steering Committee.

There is under item 25 a mediation schedule in Alabama, as Mr. Miller, Kerry Miller originally indicated it's October 18th in New Orleans and it is in regard to a significant number of Alabama properties.

THE COURT: Kerry, keep me advised of that. If you need me in any event, give me a call and I'll get to it.

MR. HERMAN: I believe that Mr. Levin for the PSC is going to attend that mediation.

Regarding class certification motions, they're pending. And really there has been no determination of when those matters have been set. And as I understand it, it's the court's directive that they be continued for at least 30 days.

THE COURT: Right.

MR. HERMAN: With regard to the Lowe's settlement, your Honor has addressed that issue, that's at page 25, it's item 27.

And, your Honor, the next status conference is what remains. I don't know if Mr. Miller --

THE COURT: The next status conference is December the

2nd, and I'll meet with the parties again, lead counsel at 8:30 and the open court at nine o'clock.

Does Knauf have anything to anything to add to any of this, Kerry?

MR. MILLER: No, your Honor, I think that's it for today. We thank the court.

THE COURT: Okay. All right. The other matter that we have talked about or that's listed is in the *Harrell* matter and the parties will discuss that. It's the court's urging that that matter be resolved so that we can integrate it into the program and give everybody an opportunity to be equally treated.

MR. MILLER: Your Honor, since we ended a little bit earlier today, we're prepared to discuss that matter right now in your Honor's courtroom.

THE COURT: That's fine. So I'll ask counsel for *Harrell* to meet with the parties here, get me involved in it if you need me. I know that Judge Farina's also interested in having this matter resolved, and I am confident that I would like somebody from the PSC to participate in those conferences.

MR. HERMAN: We'll participate, your Honor. I want to point out that PSC and Knauf are in New York beginning tomorrow for virtually a week and it may be an opportunity if those matters aren't resolved that perhaps John Perry could be notified and in the event it's okay with Victor's schedule maybe we could resume there.

THE COURT: I hope it's not necessary to resume, I hope that you all before you leave today will resolve it, that's my strong hope.

All right. Folks, thank you very much.

MR. HERMAN: Thank you, your Honor.

THE COURT: The court will stand in recess.

THE DEPUTY CLERK: Everyone rise.

(WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

* * * * * *

REPORTER'S CERTIFICATE

I, Karen A. Ibos, CCR, Official Court Reporter, United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

_______________________________

Karen A. Ibos, CCR, RPR, CRR

Official Court Reporter