commerce and not by "regular or anticipated flow.") 5/; Ex parte McInnis, 820 So. 2d 795, 805-06 (Ala. 2001) (finding that the court lacked personal jurisdiction under a stream of commerce theory over a defendant officer who had absolutely no contact with the State of Alabama, but finding jurisdiction over two other officers who had travelled to Alabama to solicit sales of the product at issue from customers).   Without any evidence that Taishan could have reasonably anticipated that its two sales of drywall in China to a distributor based in Virginia would cause it to be haled into court in this State, Taishan should not be subject to jurisdiction here.

## II.  THE COURT LACKS PERSONAL JURISDICTION OVER TAISHAN BECAUSE FORCING TAISHAN TO DEFEND A SUIT IN ALABAMA OFFENDS TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

Because the Court lacks personal jurisdiction over Taishan under the "minimum contacts" analysis, it is unnecessary to address whether asserting personal jurisdiction would offend traditional notions of fair play and substantial justice.   Nonetheless, if these principles are applied to this case, it is clear that notions of fairness provide an additional basis for dismissing the Complaint. See Frye v. Ulrich GMBH & Co. KG, No. 3:08-cv-158-MEF, 2009 WL 801773, *5 (M.D. Ala. Mar. 25, 2009) ("Once a court has decided that a defendant has established minimum contacts within a forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'") (citation omitted).   Even where minimum contacts are present, the Due Process Clause forbids the exercise of personal jurisdiction under circumstances that would offend "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316.

In determining whether it would be fair to exercise personal jurisdiction over Taishan, the Court should consider several factors, including:   the burden on the defendant, Alabama's interest, Plaintiffs' interest, the interest in an efficient judicial system, and the shared interest in

---

5/      The Brown case predates, but is not overruled by, Ex parte DBI, Inc.

the several states in furthering substantive policies. <u>Burger King</u>, 471 U.S. at 477. Where – as here – a foreign corporation is named as a defendant, the Court should also consider "the procedural and substantive policies of other <u>nations</u> whose interests are affected by the assertion of jurisdiction by the [forum State] court." <u>Asahi</u>, 480 U.S. at 115 (emphasis in original). All of these factors weigh against the assertion of personal jurisdiction over Taishan in Alabama. <u>See</u> <u>Frye</u>, 2009 WL 801773, *5 ("The Court has considered these factors and has concluded that haling Ulrich USA into court in this state would violate traditional notions of fair play and substantial justice.")

The first factor – the burden on the defendant – is reason enough to find that Taishan should not be subject to personal jurisdiction in Alabama. In <u>Asahi</u>, the Supreme Court of the United States cautioned that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." <u>Id</u>. at 114. In order to defend a suit in Alabama, Taishan would bear the extraordinarily unfair and unjust burden of having to travel around the world. <u>See</u> Jia Aff. at ¶ 51. Beyond sheer travel time, Taishan would have to surmount logistical and bureaucratic difficulties in terms of transportation, voluminous translations, governmental approvals, and deep-seated cultural differences that would likely be prohibitively expensive to overcome. The Chairman of Taishan, Mr. Jia, does not even understand, speak, read or write English. <u>Id.</u> at ¶ 1. The burden imposed on Taishan would, therefore, be severe and litigation of this action here would offend traditional notions of fair play and substantial justice. <u>See</u> <u>Browning Enterprise, Inc. v. Rex Iron & Machine Products Co.,</u> <u>Inc.</u>, 504 F. Supp. 2d 1217, 1228 (N.D. Ala. 2007) ("The court concludes that hauling a very limited purchaser of Alabama goods-who was solicited by an Alabama company, did not visit Alabama, nor have any other significant contact with the state (save making payments and

communicating with the Alabama company about the purchases solicited by the seller)-into an Alabama court would offend traditional notions of fair play and substantial justice.")

The interests of this forum state also weigh against this Court asserting jurisdiction over Taishan because, as shown above, Taishan does not have even minimum contacts. Likewise, while the third factor – the interests of Plaintiffs – may weigh in favor of finding jurisdiction, this alone does not justify forcing Taishan to participate in this litigation all the way from China. Thus, neither the forum's nor the Plaintiffs' interest justify the finding of jurisdiction.

Principles of judicial efficiency – the fourth factor – suggests that jurisdiction over Taishan is not appropriate in this litigation, as the aforementioned difficulties of intercontinental, multi-lingual, cross-cultural adjudication would needlessly complicate and prolong these proceedings. Thus, judicial efficiency weighs against due process allowing jurisdiction over Taishan as well.

Finally, the shared interest of the several states in furthering substantive policies most assuredly does not weigh in favor of diluting the guarantee of due process so far as to allow jurisdiction over Taishan. The two areas of substantive policy most obviously affected by this litigation are international relations and product safety. In both of these areas, the shared interest of the several states is best served through a uniform national policy set forth by the executive branch of the federal government.

In addition, the interests of international comity indicate jurisdiction would be unreasonable. Taishan and Venture entered into a contract providing that all disputes would be decided in a Chinese arbitration under Chinese law. See Jia Aff. at ¶¶ 39, 41. Subjecting Taishan to unexpected litigation half a world away would certainly defeat its reasonable expectations under its contract with Venture, and offend principles of international comity. OMI Holding, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1097 (10th Cir. 1998) (adjudication of

dispute with Canadian defendants arising out of contract negotiated in Canada and governed under Canadian law would implicate Canada's sovereign interest in interpreting its laws and militated in favor of dismissal). For all of these reasons, exercising personal jurisdiction over Taishan would contravene "traditional notions of fair play and substantial justice."

## CONCLUSION

This Court should dismiss Plaintiffs' Complaint for lack of personal jurisdiction.

Respectfully Submitted by


*/s Maibeth J. Porter*
Maibeth J. Porter
Alvin L. (Peck) Fox, Jr.
Joshua B. Baker

Attorneys for Defendant Taishan Gypsum Co., Ltd.

OF COUNSEL:

Maynard, Cooper & Gale, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203
(205) 254-1000


Mr. Frank T. Spano
Ms. Lauren S. Colton
Ms. Katherine Cooper
Hogan Lovells US LLP
Harbor East
100 International Drive, Suite 2000
Baltimore, MD 21202
(410)659-2700

## CERTIFICATE OF SERVICE

I certify that on September 3, 2010, a copy of the foregoing was served on the following via the court's Alafile electronic notification system, or via first-class U.S. Mail:

Mr. Bo Bruner
HOLLIS, WRIGHT & HARRINGTON, P.C.
1500 Financial Center
505 North 20th Street
Birmingham, Alabama  35203
**Counsel for Plaintiff**

Mr. Russell Q. Allison
CARR ALLISON
100 Vestavia Parkway
Birmingham, Alabama 35216
**Counsel for Building Materials Wholesale, Inc.**

Mr. N. Gunter Guy
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery, Alabama 36102-2148
**Counsel for McGee Construction Company**

Mr. Christopher McIlwain
Hubbard, Smith, McIlwain & Brakefield, P.C.
P.O. Box 2427
Tuscaloosa, Alabama 35403
**Counsel for Venture Supply**


*/s Maibeth J. Porter*
OF COUNSEL

# EXHIBIT 1

# 公　证　书

**中华人民共和国山东省泰安市岱岳公证处**

阿拉巴马州埃尔莫尔县巡回法院

JAMES H. ALEXANDER，            )
和                              )
SHARON H. ALEXANDER，           )
                               )
        原告，                   )
                               )
诉                              )        民事诉讼案件号：
                               )        CV-2009-900356.00
泰山石膏股份有限公司，             )
（以山东泰和东新股份有限公司名义营业）等，)
                               )
        被告。                   )


中华人民共和国                      *
                                *        即：
泰安市                            *


### 贾同春的宣誓书

本人贾同春，经正式宣誓，陈述如下：

1. 本人年龄超过十八（18）岁，有资格对本宣誓书所述事宜作证，并且本人知悉该等事实。本人的母语是中文。本人不会听、说、读、写英文。本人签署了本宣誓书的中文文本，也签署了一份由霍金路伟国际律师事务所为我翻译的本宣誓书的英文翻译件。

2. 本人系泰山石膏股份有限公司（"泰山"）的董事长和总经理。本人于1999年2月2日加入泰山，担任厂长职务，后于2002年起担任董事长和总经理职务。

3. 本人加入公司时，公司名称为山东泰和泰山纸面石膏板总厂（集团）。2002年，根据中国法律，公司成为一家股份有限公司，并更名为山东泰和东新股份有限公司（"泰和"）。2007年，泰和更名为泰山。

4. 泰山为一家中国公司，其主要营业地为中华人民共和国（"中国"）山东省泰安市。

5. 泰山约有1,600名员工，全部在中国境内工作。

6. 泰山自1992年起开始生产纸面石膏板（"石膏板"）。

7. 泰山只在中国境内生产石膏板。

8. 泰山是中国最大的石膏板生产商之一。泰山曾因其出色的经营、公司管理、资源管理及符合环保标准，荣获了很多奖项和赞许。泰山还被中国人民共和国国家质量监督检验检疫总局（"GAQSIQ"）评为"中国名牌"，认可了泰山优异的质量和极高的声誉。另外，泰山还获得了其他质量和环保证书，其中包括国际标准化组织（"ISO"）9001标准（质量管理）认证，ISO14001标准（环境保护）认证，和"中国环境标志"产品认证。

9. 泰山只在中国境内出售石膏板。

10. 泰山从未在阿拉巴马州生产过任何产品。

11. 泰山从未在阿拉巴马州出售过石膏板。

12. 泰山从未在中国向阿拉巴马州的分销商出售过石膏板。

13. 泰山从未向阿拉巴马州发送过任何账单。

14. 泰山从未在阿拉巴马州营销过其石膏板。

15. 泰山从未在阿拉巴马州分销过其石膏板。

2

16. 泰山从未在阿拉巴马州作过广告宣传。

17. 泰山从未在阿拉巴马州招揽生意。

18. 泰山从未在阿拉巴马州提供过任何服务。

19. 泰山从未从任何阿拉巴马州的客户或分销商处获得过任何的收入。

20. 泰山在阿拉巴马州没有办事处，没有任何动产或不动产，也没有租借过任何动产或不动产。

21. 泰山未在阿拉巴马州开立任何银行账户。

22. 泰山从未在阿拉巴马州纳税或产生任何纳税义务。

23. 泰山并未在阿拉巴马州注册从事业务。

24. 泰山从未在阿拉巴马州组建过任何实体。

25. 泰山从未在阿拉巴马州有过任何公司簿册或记录。

26. 泰山在阿拉巴马州没有邮寄地址或电话号码。

27. 泰山从未向阿拉巴马州拨打过任何电话或向任何在阿拉巴马州的人发送过任何电子邮件。

28. 泰山从未在阿拉巴马州委托过任何代理人接受诉讼书状送达。

29. 泰山在阿拉巴马州没有高级职员、董事、员工或代理人。泰山的高级职员、董事、员工或代理人在阿拉巴马州均无住所或营业地。

30. 泰山的高级职员、董事、员工或代理人均未以商务目的到访过阿拉巴马州。

31. 泰山从未在阿拉巴马州从事过任何性质的行动。

32. 泰山从未购买或持有过保险范围包括美国的责任保险。

33. 泰山从未与任何美国分销商签署过任何类型的索赔-赔偿合同。

34. 仅为在美国法院对其行使管辖权提出质疑之目的，泰山在美国聘请了辩护律师。

35. 泰山的高级职员、董事、员工或代理人从未在美国参加过交易会或加入过美国的贸易团体。

36. 泰山从未与任何美国公司缔结过检测其石膏板的合约。

37. 大约2005年11月，Tobin Trading Inc. 的Phillip Perry与泰山取得联系，问询泰山的石膏板。Perry先生声称代理一家名为Venture Supply Inc.（"Venture Supply"），的弗吉尼亚公司。

38. Perry先生大约在2005年11月份到中国访问泰山。在其首次访问泰山期间，Perry先生代表Venture Supply与泰山经磋商达成了一份销售石膏板的合同。

39. 2005年11月17日签署的首份合同是在中国泰安市起草并签署的，随附附件A为该合同的复印件。该合同规定，石膏板应依照"中国GB/T9775-1999的相应标准"生产。根据合同条款，Venture Supply在中国购买石膏板，并负责将石膏板运至其要求的目的地。装运前，作为Venture Supply的代表，Perry先生负责在中国检查石膏板并确保质量、规格和包装均符合Venture Supply的要求。泰山则负责遵守合同条款以及依据Venture Supply的安排在中国交付石膏板。另外，2005年11月17日签署的合同含有仲裁条款，该条款规定，"由本合同引起的所有争议"如无法通过友好协商解决的，应交由中国国际贸易促进委员会对外贸易仲裁委员会（现名为中国国际经济贸易仲裁委员会（"CIETAC"））仲裁解决。

4

40. 2005年12月16日，Venture Supply的代理人Perry先生来到泰山，在检验石膏板后同意将石膏板运至连云港港口。随附附件B为其验货证明书的复印件。Perry先生在验货证明书中证实其已在中国验货并且货物符合Venture Supply的规格和质量要求。

41. 同日，泰山与Venture Supply签署了第二份合同。随附附件C为该合同的复印件。与第一份合同一样，该合同亦在中国泰安市磋商并起草。Perry先生代表Venture Supply在中国泰安市与泰山签署了第二份合同。与第一份合同一样，第二份合同规定在中国出售石膏板，并要求Venture Supply负责安排运输以及相关费用。同样，第二份合同要求Perry先生在泰山的工厂和中国装货港验货，以确保质量、规格和包装均符合Venture Supply的要求。与第一份合同一样，该合同亦含有仲裁条款，指定在中国由CIETAC仲裁解决任何因该合同而引起的主张。

42. 2006年3月11日前后，Perry先生再次来到泰山检验石膏板并同意将石膏板运至装货港。随附附件D为其验货证明书的复印件。同样，Perry先生在该份验货证明书中证实其已在中国检验石膏板并且石膏板符合买方的规格和质量要求。

43. 根据上述两份合同，Venture Supply负责将石膏板运送至最终目的地，另外还负责石膏板的所有权在中国转移至Venture Supply后的保险事宜。

44. 在中国港口交付石膏板之后，泰山与该等石膏板就再无关系。对于泰山在中国依据该等合同供应的石膏板是否分销到阿拉巴马州或在阿拉巴马州使用，泰山毫不知情。

45. 随附附件E为Venture Supply采购石膏板的山东省泰安市出口商品专用发票汇总。该等发票系由泰山为税务目的在Venture Supply交易完成后开具的。该发票显示Venture Supply在中国从泰山总计购买了153,912张石膏板。该发票也列明交付条款

5

为"FOB"，即Venture Supply在中国采购石膏板，并负责安排装运至其要求的目的地并支付费用。

46. 泰山的员工或代表从未为Venture Supply合同或石膏板业务相关的其他事项而访问过美国。

47. Venture Supply将石膏板货款均付到了泰山在中国的银行账户内。

48. 虽然泰山最终获悉，其售予Venture Supply 的石膏板被Venture Supply运往弗吉尼亚州和新泽西州，但泰山并未预期到石膏板将被供应给阿拉巴马州的消费者。

49. 泰山和Venture Supply的两笔交易都发生在中国。这是泰山向在美国的客户出售石膏板的唯一交易。

50. 泰山并不熟悉美国，不可能合理地预期到，其从中国向一家在弗吉尼亚州运营的分销商作出的两宗单独销售，会导致泰山面临在阿拉巴马州的诉讼。

51. 本人从未去过美国，亦不会讲英语，在泰山毫无理由预期到其将面临阿拉巴马州诉讼的情况下，要求本人弃业务经营于不顾、花费大量的时间前往美国为本案辩护是本人难以承受的繁重负担。

本人特此宣誓并确认上述声明真实、准确

签署于2010年9月__1__日。

_____

贾同春

6

附件 **A**

ec 11 05 02:17p   Don Woods                757-333-7633                        p.2
FROM : HOME GROUP            FAX NO. : 00003.880168017        Ver. 06 2005 20:26   P1

# Contract

Contract NO.: SDTH051117A

Date: 17TH November 2005                Place: TAI'AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

   Address: Dawenkou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

   Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller

agree to sell and the buyer agree to buy the under mentioned commodity

according to the terms and conditions stipulated below:

1. term of delivery: delivery commodity in China port.

| Commodity & specification | Quantity | Unit price FOBLiang Yungang | Total value |
|---|---|---|---|
| Standard gypsum board (T/E) 12.7*1220*2440mm | 100,000 sheets | USD 3.58/sheet | USD358, 000.00 |
| | | | |
| Total | 100,000 sheets | USD 3.58/sheet | USD358, 000.00 |
| Total value of the contract: US DOLLAR Three hundred fifty-eight thousand ONLY | | | |

2. Quality and packing terms: the gypsum board should be produced as per

   relative standard of China GB/T9775-1999, using plastic inner package

   and gypsum pallet. It should be inspected and confirmed by Mr. Phillip W

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

Perry who come from Tobin Trading Inc and represents the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement, stating that they agree to deliver the good. The stating can be regarded as the satisfactions of the buyer with the gypsum boards and packing.   And the stating is the part of the contract.

3. Term of payment; USD128880.00 should be paid in advance, the rest should be by irrevocable letter of credit at sight.

4. The buyer should be in charge of ocean transportation and instance; the ocean freight should be paid at the buyer's end.

5.Force majeure: the seller shall not be hold responsibility for late or non-delivery of the goods owing to the generally recognized "force majeure" cause. However in such case, the seller shall inform the buyer in four working days;

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

7. The fax copies are regarded as valid.

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

The buyer: Venture Supply, Inc.
Stamp and signature

Samuel G. Porter
Venture Supply Inc
1140 Azalea Garden Road

附件 **B**

## Inspection    Certificate

DATE: *12 - 16 - 05*

I, appointed by the buyer as its representative, have inspected the goods (3660*1220*12.7mm gypsum board (T/E)) in seller's factory and that they meet buyer's specifications and quality, and that pallets are constructed of gypsum material not subject to insect infestation (no wood), and that the packing meets buyer's requirements.

We agree to transport the goods to Lian Yungang port.

Note: seller:    Shandong Taihe Dongxin Co., Ltd

Buyer:    Venture Supply Inc.

Tobin Trading Inc.

Phillip W. Perry

Signature

附件 C

# Contract

Contract NO.:SDTH05121601

Date: 16TH December, 2005          Place: TAI'AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

  Address: Dawenkou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

  Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller agrees to sell and the buyer agrees to buy the under mentioned commodity according to the terms and conditions stipulated below:

1. Term of delivery: deliver commodity in China port.

| Commodity & Specification | Quantity | Unit Price | Total Value |
|---|---|---|---|
| Standard gypsum board (T/E) 12.7*1220*3660mm | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total | 100,000 sheets | USD 3.668/sheet | USD366800.00 |

Total value of the contract:US DOLLAR Three hundred sixty-six thousand and eight hundred   ONLY



2. Quality and packing terms: the gypsum board should be produced as per the relative standard of China GB/T9775-1999, using plastic inner package, gypsum pallet, gypsum protecting board and steel belt. It should be

2/2

inspected and confirmed by Mr. Phillip W Perry, who comes from Tobin Trading Inc and representes the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement. The stating can be regarded as the part of the contract.

3. Term of payment: 30% earnest money should be paid in advance, the rest should be by irrevocable letter of credit at sight. We agree to accept the one hundred percent letter of credit for future orders (except this one).

4. The buyer should be in charge of ocean transportation and insurance, the ocean freight should be paid at the buyer's end.

5. Force Majeure: the seller shall not be held responsible for late or non-delivery of the goods owing to the generally recognized "Force Majeure" cause. However in such case, the seller shall inform the buyer in four working days.

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

The seller: Shandong Taihe Dongxin CO.,LTD

The buyer: Venture Supply, Inc.