## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) MDL NO. 2047 ) ) SECTION:  L |
| THIS DOCUMENT RELATES TO: | ) ) ) JUDGE FALLON |
| ALL CASES | ) MAG. JUDE WILKINSON ) ) |

### CROSS-NOTICE OF ORAL AND VIDEOTAPED DEPOSITION DUCES TECUM PURSUANT TO FED. R. CIV. P. 30(b)(6)

TO:   The parties in all cases consolidated in *In re Chinese-Manufactured Drywall Products Liability Litigation*, by and through their counsel of record.

**PLEASE TAKE NOTICE** that the 30(b)(6) deposition of Records Custodian for The Center for Toxicology and Environmental Health, LLC on November 3, 2010 at 10:00 a.m., at the offices of Flynn Legal Services, 124 W. Capitol Avenue, Suite 1560, Little Rock, AR 72201, and will continue day to day until completed.  This deposition is being taken for discovery purposes, for use at trial, or for such other purposes as are permitted under the Federal Rules of Civil Procedure.  You are invited to attend and participate.

Primary Examiners:   Counsel for Banner Supply Companies

This Cross-Notice is based on the Re-Notice of Taking Videotaped Deposition filed on October 15, 2010 in the suit captioned:

| | | |
|---|---|---|
| In re: Alvarez vs. Banner Supply Co., Eastern Construction Group, Inc., and D & C Construction Group, Inc. | In the Circuit Court of Miami-Dade County | Case No.:  09-071623 CA (42) |

Respectfully submitted,

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**
2601 S. Bayshore Drive
Suite 850
Miami, Florida 33130
Telephone (305)455-9500
tehrenreich@wwhgd.com

By:/s/ Todd R. Ehrenreich
*For all Banner Supply entities*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Motion in Response has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail; and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 28th day of October, 2010.

*/s/ Todd R. Ehrenreich*
**TODD R. EHRENREICH, ESQUIRE**

## SCHEDULE A

## DEFINITIONS

"Chinese Drywall" shall mean the defective Chinese drywall imported into the United States and at issue in this Multidistrict Litigation No. 2047.

"Document" or "documents" means and includes any written, recorded, or graphic matter, however produced or reproduced, whether or not in the possession, custody, or control of Defendant and whether or not claimed to be privileged against discovery on any ground, including, but not limited to, books, brochures, notes, diaries, notebooks, ledgers, letters, contracts, checks, drawings, graphs, charts, reports, records, statements, receipts, computer diskettes, computer printouts, teletypes, telecopies, invoices, worksheets, lists, memoranda, correspondence, telegrams, schedules, photographs, sound recordings, films, computer media, or other data compilations from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form.

"Knauf Entities" means, collectively, the following entities: Knauf Plasterboard Dongguan Co. Ltd.; Knauf Plasterboard Tianjin Co. Ltd.; Knauf Plasterboard Wuhu Auhui Co. Ltd.; Knauf Plasterboard Wuhu Co. Ltd.; Knauf Plasterboard Guandong Co. Ltd.; Knauf Gips KG; Knauf Insulation GmbH; Knauf International GmbH; Knauf Fiberglass GmbH; and, Knauf USA Polystyrene Inc., and/or Knauf Polystyrene.

"Person" means any natural person, corporation, partnership, business, governmental body, or entity of any kind.

"Relevant Time Period" shall mean the time period from January 1, 2004, to the present.

## REQUESTS

1. All test results, studies, air sampling results, documents and public records concerning Chinese Drywall from January 1, 2004 to the present.

2. The results and reports generated from EPA's "elemental analysis" as referenced in the July 2009 CPSC report, which elemental analysis was to be completed by August 21, 2009.

3. All documents regarding, relating, or referring to consumer complaints concerning Chinese manufactured drywall received by EPA from January 1, 2004 to the present.

4. All documents regarding, relating, or referring to EPA communications with the Florida Department of Health, federal Consumer Products Safety Commission, Environmental Protection Agency, and/or any other state or federal agency with which you have corresponded concerning the Chinese drywall problem;

5. All documents regarding, relating to, or referring to the joint meeting on April 14, 2009 among the EPA, CDC/ATSDR and CPSC referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

6. All documents presented at the joint meeting among the EPA, CDC/ATSDR, and CPSC referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

7. All documents regarding, relating to, or referring to EPA's Emergency Response Team developing a protocol for the air testing program, including the draft protocol referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

8. All draft protocols from the EPA's Emergency Response Team, referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

9. All portions of the United States Geological Survey and literature review used regarding gypsum mining in China and the ShanDong province, referenced in July 2009 CPSC Investigation of Imported Drywall Status Report;

10. All documents regarding, relating to, or referring to CPSC confirmation that Chinese samples of drywall were from the LuNeng Mine, located in ShanDong province, referenced in the July 2009 CPSC Investigation of Imported Drywall

Status Report;

11. All documents regarding, relating to, or referring to a list of drywall producers that have used the LuNeng mine, referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

12. All documents received by EPA from Chinese officials in any way relating to Chinese manufactured drywall;

13. All documents provided by EPA to Chinese officials in any way relating to Chinese manufactured drywall;

14. The minutes and/or notes from any EPA meetings concerning Chinese-manufactured drywall;

16. All testing results and reports from any testing of Chinese-manufactured drywall or any testing done in association with your investigation of the Chinese drywall problem;

17. All documents regarding, relating, or referring to EPA ERT analysis of 15 samples as referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

18. All documents, public records, and communications to or from or concerning the following persons or entities and/or their affiliates or subsidiaries, relating to gypsum drywall manufactured in or distributed from China (aka "Chinese Drywall"), including but not limited to any air sampling results, test results, written memoranda, or reports:

    a. Environ International Corporation; Environ Holdings, Inc.; or Robert P. DeMott, Ph.D., DABT;

    b. Packer Engineering or Kenneth F. Packer, Ph.D, P.E.;

    c. Dr. Patricia Williams; Lennar Corporation;

    d. Thomas Eager;

    e. Dr. Phillip Goad;

    g. Unified Engineering, Inc. or Lori Streit, Ph.D.;

    h. Spiderman Mulholland; and

    i. Han-Ulrich Hummel

19.   All documents, public records, and communications, relating to Chinese Drywall, including but not limited to any air sampling results, test results, written memoranda or reports summarizing any findings and conclusions, from January 1, 2004 to the present.

20.   Any and all communications with any of the Knauf entities.

21.   All documents and public records showing locations  where Chinese Drywall has been installed.

22.   All documents and public records identifying any installers or suppliers of Chinese Drywall or any builders that used or are using Chinese Drywall.

23.   All documents and public records reflecting all homeowners' complaints regarding Chinese Drywall.

24.   All documents, including test reports and samples, and public records concerning chinese drywall manufactured by any Knauf entity.



IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 09-071623 CA (42)

CHINESE DRYWALL

EMILIO ALVAREZ and
MARTHA I. ALVAREZ

       Plaintiffs,

vs.

.,
BANNER SUPPLY CO.,
EASTERN CONSTRUCTION GROUP, INC.,
and D & C CONSTRUCTION GROUP, INC.

       Defendants.

_____/

---

**RE-NOTICE OF TAKING VIDEOTAPED DEPOSITION**
**(Cancels 10/18/10)**
**Call-in Number: (877)322-9654**
**Host Code:   128472   Participant Code: 858618**

---

**TO:   ALL COUNSEL**

PLEASE TAKE NOTICE that the Defendant, BANNER SUPPLY CO., a Florida corporation, will take the deposition, by oral examination, of the person or persons named below, at the time, on the date, at the hour and at the place indicated before an Associate or Deputy Court Reporter and Notary Public of Veritext, or any other duly qualified officer who is not of counsel to either of the parties or interested in the event of the cause.  This deposition is being taken for the purpose of discovery, for use as evidence, for use at trial, and for such other uses as are permitted under the Florida Rules of Civil Procedure and other applicable law.

| DEPONENT | DATE | TIME | LOCATION |
|----------|------|------|----------|
| RECORDS CUSTODIAN FOR THE CENTER FOR TOXICOLOGY AND ENVIRONMENTAL HEALTH, LLC | November 3, 2010 | 10:00 a.m. (CST) | Flynn Legal Services 124 W. Capitol Avenue Suite 1560 Little Rock, AR 72201 |

**Deponent is to have the following with him/her all items listed in the Exhibit A.**

The oral examination will continue from day to day until completed. The deposition is being taken for the purpose of discovery, for use at trial, or both of the foregoing, or for such other purposes as are permitted under Florida Rules of Civil Procedure 1.280, 1.310, 1.310(b)(6), 1.350, 1.360, 1.380, 1.390, 1.410; or Federal Rule of Procedure 30.

In accordance with the Americans with Disabilities Act of 1990, persons needing special accommodation to participate in this proceeding should contact Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC at (305)455-9500 no later than (7) days prior to the proceeding. If hearing impaired contact Florida Relay Service at 1-800-955-8771 for assistance.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Ervin Gonzalez, and Defendants' Liaison Counsel, Robert Fitzsimmons and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Case Management Order No. 09-16, and that the foregoing was filed with the Miami-Dade Clerk of the Court by paper, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 15 day of October, 2010.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

TODD R. EHRENREICH, ESQUIRE
Florida Bar Number: 945900
COUNSEL FOR DEFENDANT
BANNER SUPPLY, CO.
2601 South Bayshore Drive
Suite 850 Coconut Grove, Florida 33133
Telephone (305)455-9500

## EXHIBIT A
## DEFINITION OF TERMS

The term "documents" as used herein shall mean any kind of written, typewritten, printed, recorded or computerized material whatsoever including, but not limited to: notes, transcriptions of notes, memoranda, letters, promissory notes, applications, petitions, exhibits, reports, correspondence, pleadings or other documents filed or prepared in connection with any other court proceedings, recordings or tapes of any conversation or meeting or conference, transcriptions of recordings, minutes of meetings, interoffice communications, summaries, contracts, invoices, remittance, advice, deposit slips, all writings related to any bank deposits, receipts, journals, ledgers, all books of accounts, accounting records, checks, canceled checks, check vouchers, desk calendars, appointment books, diaries, personal journals, telephone logs, time sheets, transactions files, credit reports, agreements, leases, subleases, assignments, information retrievable from computers, pictures, drawings, video, film, photographs, digital pictures or other graphic representations, and business records, whether a copy or original, in whatever form made or maintained, including information made or maintained by electronic photographic or mechanical means.   The term document specifically refers to material maintained in its electronic state.   If the following requested documents exist in an electronic or computer database form, then an electronic copy or copy of the database should be produced in addition to hard copies.

## REQUESTS

1.  All test results, studies, air sampling results, documents and public records concerning Chinese Drywall from January 1, 2004 to the present.
2.  The results and reports generated from EPA's "elemental analysis" as referenced in the July 2009 CPSC report, which elemental analysis was to be completed by August 21, 2009.
3.  All documents regarding, relating, or referring to consumer complaints concerning Chinese manufactured drywall received by EPA from January 1, 2004 to the present.
4.  All documents regarding, relating, or referring to EPA communications with the Florida Department of Health, federal Consumer Products Safety Commission, Environmental Protection Agency, and/or any other state or federal agency with which you have corresponded concerning the Chinese drywall problem;
5.  All documents regarding, relating to, or referring to the joint meeting on April 14, 2009 among the EPA, CDC/ATSDR and CPSC referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;
6.  All documents presented at the joint meeting among the EPA, CDC/ATSDR, and CPSC referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;
7.  All documents regarding, relating to, or referring to EPA's Emergency

Response Team developing a protocol for the air testing program, including the draft protocol referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

8.  All draft protocols from the EPA's Emergency Response Team, referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

9.  All portions of the United States Geological Survey and literature review used regarding gypsum mining in China and the ShanDong province, referenced in July 2009 CPSC Investigation of Imported Drywall Status Report;

10. All documents regarding, relating to, or referring to CPSC confirmation that Chinese samples of drywall were from the LuNeng Mine, located in ShanDong province, referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

11. All documents regarding, relating to, or referring to a list of drywall producers that have used the LuNeng mine, referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

12. All documents received by EPA from Chinese officials in any way relating to Chinese manufactured drywall;

13. All documents provided by EPA to Chinese officials in any way relating to Chinese manufactured drywall;

14. The minutes and/or notes from any EPA meetings concerning Chinese-manufactured drywall;

16. All testing results and reports from any testing of Chinese-manufactured drywall or any testing done in association with your investigation of the Chinese drywall problem;

17. All documents regarding, relating, or referring to EPA ERT analysis of 15 samples as referenced in the July 2009 CPSC Investigation of Imported Drywall Status Report;

18. All documents, public records, and communications to or from or concerning the following persons or entities and/or their affiliates or subsidiaries, relating to gypsum drywall manufactured in or distributed from China (aka "Chinese Drywall"), including but not limited to any air sampling results, test results, written memoranda, or reports:

    a.  Environ International Corporation; Environ Holdings, Inc.; or Robert P. DeMott, Ph.D., DABT;

    b.  Packer Engineering or Kenneth F. Packer, Ph.D, P.E.;

    c.  Dr. Patricia Williams; Lennar Corporation;

    d.  Thomas Eager;

    e.  Dr. Phillip Goad;

    g.  Unified Engineering, Inc. or Lori Streit, Ph.D.;

    h.  Spiderman Mulholland; and

    i.  Han-Ulrich Hummel

19. All documents, public records, and communications, relating to Chinese Drywall, including but not limited to any air sampling results, test results, written memoranda or reports summarizing any findings and conclusions,

from January 1, 2004 to the present.

20. Any and all communications with any of the Knauf entities.
21. All documents and public records showing locations where Chinese Drywall has been installed.
22. All documents and public records identifying any installers or suppliers of Chinese Drywall or any builders that used or are using Chinese Drywall.
23. All documents and public records reflecting all homeowners' complaints regarding Chinese Drywall.
24. All documents, including test reports and samples, and public records concerning Chinese drywall manufactured by any Knauf entity.