1  February and now are off the calendar.  However, they are listed,
2  these particular cases are listed at page 6 of your Honor's
3  pre-trial order.
4        With regard to Trials, I think it's fair to say that
5  without your lightening docket and the fact that *Germano* was tried
6  and the *Hernandez* case was tried, your Honor set two other cases
7  for trial, we would not be where we are today.
8        Motions committee has communicated with the court's
9  directive regarding Pre-Trial Order 1G and the potential for
10 amendment to that order, and they're being addressed by the motions
11 committee.
12       With respect to Discovery Issues.  It should be clear,
13 may it please the court, to everyone who is listening to these
14 proceedings that discovery and litigation against Knauf continues
15 and will continue till this ultimate resolution.  To that end, the
16 Stuermer continuation deposition is tomorrow in New York City.
17 Professor Hummel, the research and science director for Knauf, his
18 deposition is October 19th and October 20th in New York.  The
19 Norris deposition is November 11th and November 12th in Hong Kong.
20 The Robson deposition is November 17th and 18th in London.  The
21 Isabel Knauf deposition is December 7th and December 8th in
22 Germany.  And Director Grundke's deposition is set for December
23 15th and December 16th in Germany.
24       Both of those depositions will occur in Frankfurt at the
25 Frankfurt office of Kaye Scholer, the London deposition will be the

1  at London office of Kaye Scholer, and the deposition notices
2  reflect dates, times, et cetera.  And I believe that we have not
3  posted them on your Honor's web site but we shall so that everyone
4  will have notice.
5           Your Honor, the Taishan Gypsum depositions are a matter
6  of discussion and potential argument before your Honor.
7           THE COURT:  Okay.
8           MR. HERMAN:  At this time I would like to present, as
9  briefly as I can, the PSC's position as to why these depositions
10 must go forward and why written discovery must go forward.
11          Taishan was served in *Germano* cases.  That service cost
12 $100,000 a pop.  To say that the Haig Convention is a horse and
13 buggy and we're in an international economy is an understatement.
14 Every time Taishan has been served it's been 100,000 a pop.  We had
15 a very expensive trial, expensive for the court, the court's time,
16 expensive for the attorneys that were involved.  Your Honor had
17 seven cases before your Honor, those cases cost about $1 million to
18 try, Taishan never appeared, even though they were served.
19          A legitimate default in our view was taken, your Honor
20 rendered a legitimate government.  Taishan has now appeared.  We're
21 very pleased that they're here, we welcome Taishan's counsel, they
22 are excellent attorneys.  They contest jurisdiction and by
23 inference alter ego, and we have claimed that the People's Republic
24 of China actually and BNBM which we understand was served
25 yesterday, and CNBM are actually the puppets of an alter ego.

    1          We want discovery. We think we're entitled to discovery.
    2    They may contest jurisdiction, but we're certainly entitled to
    3    discovery on jurisdiction and alter ego, and we ask that it go
    4    forward and that it be accelerated under your Honor's aegis as the
    5    MDL judge designate.
    6          I believe that failing puts our issues in a context, and
    7    either Mr. Stanley, local counsel, or Mr. Cyr are present, I'm sure
    8    that --
    9          THE COURT: This is a motion to lift the stay on the
   10    class certification in *Germano*, and I'll hear from the other side.
   11          Let's make your appearance and tell us who you represent.
   12          MR. CYR: Thank you, your Honor. My name is Joe Cyr and
   13    I am with Hogan Lovells, and we represent Taishan. Thank you very
   14    much, your Honor, it's a privilege to be before you. I will try to
   15    address the couple of issues that are before you with respect to
   16    Taishan as briefly as I can.
   17          I think it is important though for the record and for
   18    others to appreciate that we appeared on behalf of Taishan within a
   19    few months after the default judgment was entered. You and I and
   20    Mr. Stanley had an opportunity to confer. You made it very clear
   21    to me that you expected Taishan to proceed expeditiously, even
   22    though you did show some sensitivity to the position that we were
   23    in and that our client does not have any representatives that speak
   24    English and that we were new to the case and that it would be a
   25    real challenge. And I promised you that we would do everything we

1    could to get up to speed on the case as soon as possible.
2              We've had two groups of lawyers go to China already
3    investigating the facts, as well as educating our client through
4    interpreters with respect to the U.S. judicial system and
5    everything that's going on here.  And as I mentioned to you in a
6    call, there was a likelihood that we were going to attempt to move
7    to vacate the default judgment in *Germano*, which was one of the few
8    cases in which Taishan Gypsum has been served.
9              And after our investigation we decided to do two things:
10   One, we appealed to the Fifth Circuit and that divested this court
11   of jurisdiction.  But at the same time, we moved to vacate the
12   default judgment.
13             And as your Honor knows, that does provide this court
14   limited jurisdiction to do one of three things under 62.1:  The
15   first to defer the motion to vacate the default judgment.  To grant
16   the default judgment -- I'm sorry, the second is to deny; and then
17   the third is to grant or indicate to the Fifth Circuit that there
18   is a substantial issue.  And if the court does indicate to the
19   Fifth Circuit that there's a substantial issue, then the Fifth
20   Circuit can remand for the purpose of allowing the court to
21   continue to address the default judgment.
22             And so under those circumstances, Judge, respectfully,
23   we're just all dealt with the very real fact that this court's
24   jurisdiction is limited.  And you recognize that when you denied
25   our motion to actually have our brief, excess pages, you said you

1   lacked jurisdiction to do that and you were right about that.
2               And so point number one, and I have other points that I
3   want to make briefly, is that the court actually doesn't have
4   jurisdiction to order the discovery requested. Nor does it have
5   jurisdiction to entertain the motion for class certification while
6   this case is on appeal. It can only do the things that I've
7   mentioned under Rule 62.1.
8               But I would rather in addition to that just offer this,
9   your Honor, the one thing -- and please, I don't mean to preach to
10  anybody in this courtroom -- but representing a Chinese company I
11  am very sensitive to the international comedy issues and the
12  expectations that they have that we go by the rules. And one of
13  the rules, of course, is that you do proceed under the Haig
14  Convention.
15              And by the way, just for the record, the default judgment
16  was based on the second amended complaint in *Germano* which was
17  never served on Taishan, nor was the motion to intervene on behalf
18  of the intervening plaintiffs that obtained that default judgment
19  rather than the named plaintiffs.
20              Our company asked the court that we go by the rules and
21  the rules require us that it's not an accident what 62.1 does. The
22  rules require that we go step by step. Now, we've moved based on
23  the facts that we've investigated, Judge, for vacation of the
24  default judgment in this case as well as in *Mitchell* because we
25  believe that the appropriate, that the relevant courts lack

1  personal jurisdiction and we filed all of the papers in that
2  regard.
3           And by the way, I apologize for not notifying the PSC
4  with respect to the motion before the Alabama court, and we will
5  make a serious effort to always coordinate any activities we have
6  going on in the state.
7           But again, just for the record, is that Taishan Gypsum
8  manufactured some drywall in 2006 and 2007 and all of that drywall
9  was sold in China to distributors that were covered by arbitration
10 agreements.  And they have no expectation whatsoever that they were
11 going to purposely avail themselves of the state markets of any
12 particular state in the United States.  And I, also, I know this is
13 a very positive day for a lot of people that are involved with all
14 of the Knauf negotiations for the past year, but since I have these
15 brief moments, I have to say, your Honor, is that based on our
16 investigation and our discussions with the client, they absolutely
17 do not understand why their high quality drywall allegedly emitted
18 excessive amounts of hydrogen sulfide.  They don't understand the
19 causation issues.  We are not right behind Knauf in any kind of
20 settlement negotiations, even if the court finds that it has
21 personal jurisdiction.  I wanted to be upfront with you about that.
22           THE COURT:  Sure, okay.  I understand.
23           MR. CYR:  I have just a couple of other things to say,
24 your Honor.  One is that, as I mentioned to you in the phone call
25 in June, and I am not trying to be critical because I know how

```
 1   these things happen, but in the gross class action the PSC named I
 2   think approximately 20 subsidiaries who have been served,
 3   subsidiaries of Taishan.  Now, our investigation, as I told you,
 4   revealed that these subsidiaries are spread throughout this very
 5   huge country of China and that they have nothing to do at all with
 6   the drywall that was manufactured in China that apparently was
 7   distributed to some extent in the United States and found its way
 8   into some homes.  And we see no good faith basis for including
 9   those subsidiaries in the gross complaint.
10            I suspect that they were added because somebody went on
11   Google, did a web site, saw a whole bunch of subsidiaries and threw
12   them in the complaint.  Again, I am not trying to be preaching,
13   your Honor, but we are not the only country that thinks you should
14   have a good faith basis for suing somebody before you sue them.
15            And then the second point of that is:  It's very unfair
16   then to then require those subsidiaries to subject themselves to
17   discovery, offer declarations, declaring their innocence unless the
18   first step is taken and that is that the PSC demonstrates the
19   answer to this question:  What was the good faith basis for suing
20   those companies?  We've tried to have this discussion with them
21   because we join your Honor in wanting to narrow the issues.  We
22   know what the companies are that manufacturer drywall that
23   eventually was distributed into the United States by others, we
24   want to address the personal jurisdiction issue, and if the court
25   finds that Taishan is subject to personal jurisdiction and Taishan
```

1    is in the lawsuit, that's the first step and then we go to the next
2    step.
3                Thanks for your time.
4                THE COURT:  Thank you very much for your time.
5                MR. HERMAN:  Your Honor, just a brief response statement,
6    and Mr. Levin has a brief statement.
7                While learned counsel was sending lawyers to China who
8    couldn't speak Chinese, his client was on a web site in English
9    that said that it did business in the United States of America.  We
10   think that there should be no delay in going forward with
11   jurisdiction and alter ego discovery.
12               In terms of good faith, we're not subject to
13   cross-examination at this time, but we believe that we've acted in
14   very good faith given the non-appearance of Taishan after they were
15   served.
16               THE COURT:  Okay.  Thank you very much.
17               MR. LEVIN:  Does your Honor want to hear a response?
18               THE COURT:  I really don't need to.  I understand the
19   issue.
20               MR. LEVIN:  I wanted to give one but I didn't think you
21   wanted to hear one.
22               THE COURT:  I understand the issues.  I make no decision
23   on jurisdiction, that's another issue.  But both sides ought to
24   have a right to at least look into this matter.  I think counsel
25   for Taishan makes a point about he's interested in why some of his

1   individual companies or why the individual "subsidiaries" are
2   brought into the litigation, I think he has a right to discover
3   that and pursue that with the plaintiffs.  He should know why.
4            But likewise, I think the plaintiffs ought to have a
5   right to discover whether or not they have jurisdiction over it.
6   To the extent of lifting the stay to permit discovery, particularly
7   on jurisdiction, I am going to do so for those reasons.
8            Let's move onto the next.  I have in addition several
9   motions before me, the motions to enjoin the state court in Georgia
10  from proceeding further.  The case has taken a different turn now.
11  Under the law that's developed, until there is some *** rees or
12  program, settlement program, it's very difficult for federal courts
13  to enjoin any state court from proceeding.
14           The situation has changed now, I am involved in a rees,
15  it is a settlement program, a pilot program, but it is a settlement
16  program.  And so I am very conscious of protecting that particular
17  program.  So I really do now have to take a look at whether or not
18  it is appropriate for the federal court to act on that to protect
19  its jurisdiction and protect its program.
20           So I am going to set the motion within ten days to
21  determine whether or not to enjoin the state court in Muskogee
22  County.  I'll take briefs on that particular.  I'll check my
23  calendar and set it sometime within the next ten days alerting all
24  of the parties.
25           The other motions for class certification of the Florida

```
 1   homeowners class for claims against Banner and claims against other
 2   Florida homeowners against Knauf, it seems to me that both of those
 3   should be delayed.  I am going to delay moving on those for at
 4   least 30 days and I will talk with you all about that at the next
 5   conference.
 6              I really want everybody to put their attention and all of
 7   their resources into making this pilot program work.  I think
 8   everybody is looking at this pilot program.  If it works then this
 9   may be an avenue to resolve this whole matter globally, and it's
10   going to take a lot of effort to get this matter off the ground and
11   I don't want to distract the parties with other matters.
12              There's a motion for leave to amend third-party complaint
13   in the Vickers.  I am going to grant that motion, I think that it's
14   essential for me to get all of the people before me.  That doesn't
15   mean they're going to stay there, but I want them present so that
16   they can at least speak for their respective interests, so they can
17   participate to the extent they wish to participate.  If they're not
18   a party, they can't, they're a spectator.  When they're a party,
19   they're a participant and they can actively advocate for their
20   client.  Again, doesn't mean that they're going to stay in it, they
21   may well get out and they may get out quickly, but at least they
22   ought to be given an opportunity to participate and I see that by
23   allowing an amendment not third-party complaint, so I am going to
24   grant that.
25              Are there any motions that I haven't dealt with?  Lowe's
```

1  Home Centers opposition to plaintiff's motion intervening *Gross*.

2  MR. HERMAN: No further motions. I do want --

3  MR. LEVIN: I do. Excuse me, your Honor, I seldom push
4  Russ aside, he's pretty difficult to push aside. We filed
5  intervention claims and you granted them, and there's another set
6  that's pending that we haven't moved for, we just filed. Lowe's
7  objected to being named in that intervention complaint because of
8  the All Writs Act that was pending. You did not grant the Lowe's
9  intervention at that time. So it's hanging there and I guess it
10 should hang there until we deal with the all writs.

11 THE COURT: Yes. And by all writs that means enjoining a
12 particular state court. It's an All Risk Act and that's what we're
13 talking about.

14 MR. HERMAN: He pushed so hard I'm bruised. Your Honor,
15 two things on discovery: We're continuing to negotiate various
16 discovery issues with Knauf; secondly, following this conference
17 there is an issue that involves a Banner Supply subpoena.

18 Your Honor, it's listed at page 12, there is no Freedom
19 of Information Act pending.

20 The Trial Settings under 10, your Honor has already
21 stated and it's in the status report.

22 Nothing new in terms of Filings in the MDL.

23 Nothing new on the notices of appearance and default
24 judgment.

25 That brings us to 13 insurance issues. There is an issue

1   brought by Robert Pate as trustee for the Chinese Drywall Trust,
2   motion to compel.  Mr. Steckler has been handling those issues, he
3   is in court, and I suggest your Honor may want to hear that after
4   this conference.
5           THE COURT:  Sure, I'll do that afterwards.
6           MR. HERMAN:  Nothing new on Service of Pleadings
7   Electronically.
8           Nothing new under item 15, Master Complaint.
9           Mr. Levin has already addressed class action complaints
10  and indeterminate defendants, and it is spelled out; as well as in
11  No. 17 along with a class action complaints to be posted on your
12  web site, there really is nothing new to really discuss there.
13          Nothing new under article 18 regarding special master.
14  As far as the court appointed mediator, again we want to
15  acknowledge John Perry and his good offices in helping us reach a
16  pilot program.  The Knauf Gips KG, personal jurisdiction matter was
17  already addressed at page 8.
18          Section 8, nothing new under item 20.  Database
19  management.
20          Nothing new under frequently asked questions that have
21  again been posted at www.laed.uscourts.gov/drywall/faq.htm.  Knauf
22  attorneys Mr. Wallins and Kerry Miller and Arnold and myself and
23  Chris will attempt to have some additional Q and A's regarding the
24  pilot program to submit to your Honor for potential posting on the
25  web site.

1       Your Honor has under item 22 detailed the various motions
2  and determinations as to those motions.
3       Under item 23 motion to establish a Plaintiff's
4  Litigation Expense Fund that's deferred.
5       Your Honor has under consideration the re-appointment
6  and/or appointment of members of the Plaintiff's Steering
7  Committee.
8       There is under item 25 a mediation schedule in Alabama,
9  as Mr. Miller, Kerry Miller originally indicated it's October 18th
10 in New Orleans and it is in regard to a significant number of
11 Alabama properties.
12      THE COURT: Kerry, keep me advised of that. If you need
13 me in any event, give me a call and I'll get to it.
14      MR. HERMAN: I believe that Mr. Levin for the PSC is
15 going to attend that mediation.
16      Regarding class certification motions, they're pending.
17 And really there has been no determination of when those matters
18 have been set. And as I understand it, it's the court's directive
19 that they be continued for at least 30 days.
20      THE COURT: Right.
21      MR. HERMAN: With regard to the Lowe's settlement, your
22 Honor has addressed that issue, that's at page 25, it's item 27.
23      And, your Honor, the next status conference is what
24 remains. I don't know if Mr. Miller --
25      THE COURT: The next status conference is December the

```
 1    2nd, and I'll meet with the parties again, lead counsel at 8:30 and
 2    the open court at nine o'clock.
 3            Does Knauf have anything to anything to add to any of
 4    this, Kerry?
 5            MR. MILLER:  No, your Honor, I think that's it for today.
 6    We thank the court.
 7            THE COURT:  Okay.  All right.  The other matter that we
 8    have talked about or that's listed is in the Harrell matter and the
 9    parties will discuss that.  It's the court's urging that that
10    matter be resolved so that we can integrate it into the program and
11    give everybody an opportunity to be equally treated.
12            MR. MILLER:  Your Honor, since we ended a little bit
13    earlier today, we're prepared to discuss that matter right now in
14    your Honor's courtroom.
15            THE COURT:  That's fine.  So I'll ask counsel for Harrell
16    to meet with the parties here, get me involved in it if you need
17    me.  I know that Judge Farina's also interested in having this
18    matter resolved, and I am confident that I would like somebody from
19    the PSC to participate in those conferences.
20            MR. HERMAN:  We'll participate, your Honor.  I want to
21    point out that PSC and Knauf are in New York beginning tomorrow for
22    virtually a week and it may be an opportunity if those matters
23    aren't resolved that perhaps John Perry could be notified and in
24    the event it's okay with Victor's schedule maybe we could resume
25    there.
```

1  THE COURT: I hope it's not necessary to resume, I hope
2  that you all before you leave today will resolve it, that's my
3  strong hope.
4  All right. Folks, thank you very much.
5  MR. HERMAN: Thank you, your Honor.
6  THE COURT: The court will stand in recess.
7  THE DEPUTY CLERK: Everyone rise.
8  (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

\* \* \* \* \*

REPORTER'S CERTIFICATE

I, Karen A. Ibos, CCR, Official Court Reporter, United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

Karen A. Ibos, CCR, RPR, CRR
Official Court Reporter