附件 D

## Inspection Certificate

DATE: 3-11-06

I, appointed by the buyer as its representative, have inspected the goods (3660*1220*12.7mm gypsum board (T/E)) in seller's factory and that they meet buyer's specifications and quality, and that pallets are constructed not subject to insect infestation (no solid wood), and that the packing meets buyer's requirements.

We agree to transfer the goods to the loading port.

Note: seller:   Shandong Taihe Dongxin Co., Ltd

Buyer:   Venture Supply Inc.

Tobin Trading Inc.

Phillip W. Perry

Signature

*[signature]*

附件 E

| | Counterfoil | | 13709052630'7 |
|---|---|---|---|
| | 2006 年 2 月 24 日 填制 | | No. 00008655 |
| | Date 2006 Y 2 M 24 D | | |

| 出口企业名称：山东泰和东新股份有限公司 | 出口企业税务登记证号： 370911720743873 |
|---|---|
| Exporter Name: SHANDONG TAIHE DONGXIN CO., LTD | Tax Registration No: 3700911720743873 |
| 出口企业地址： 泰安市岱岳区 | 电话： 86-538-8812017 传真： 86-538-8812017 |
| Address: DAWENKOU TAI'AN CITY CHINA | Tel: 86-538-8812017 Fax: 86-538-8812017 |
| 成交方式： FOB 提单号：SKSMLYNF000£0000 号： SDTH051117A | |
| Term of Deli: FOB Lian Yungang B/L No: SKSMLYNF000£0000 Ct No: SDTH051117A | |
| 致： To: VENTURE SUPPLY, INC. | 付款方式： 30%T/T and 70%L/C Payment: 30%T/T and 70%L/C |
| | 装船口岸： 目的地： From: Lian Yungang To: NORFOLK U.S.A |

| 唛头及号码 Mark | 品名及规格 Description | 数量 Quantity | 单价 UnitPrice | 金额 Amount |
|---|---|---|---|---|
| VENTURE SUPPLY, INC. | GYPSUM BOARD 3660*1220*12.7mm | 100000 sheets | USD3.58/sheet | USD358000 |

合计：
TOTAL USD Three hundred fifty-eight thousand only

单位名称：(盖章)
Signature
(本发票手写无效)

Signature
(本发票手写无效)

山东省泰安市出口商品专用发票
Taian Shandong Province Special Invoice for Export

出 口 专 用
Special Use for Export

存 根 联
Counterfoil

137090626307
No 00012282

2006年 7月 20日填制
Date 2006Y 7M 20D

| 出口企业名称: | 山东泰和东新股份有限公司 | 出口企业税务登记证号: | 370911720743873 |
|---|---|---|---|
| Exporter Name: | SHANDONG TAIHE DONGXIN CO., LTD | Tax Registration No: | 370911720743873 |
| 出口企业地址: | 泰安市岱岳区 | 电话: 86-538-881201 传真: | 86-538-8812679 |
| Address: | DAWENKOU TAI'AN CITY CHINA | Tel: 86-538-881201 Fax: | 86-538-8812679 |
| 成交方式: FOB | 提单号: SKSMLYCA00065000 | | |
| Term of Delivery: FOB | B/L No: SKSMLYCA00065000 No: | | |
| 致: VENTURE SUPPLY INC | | 付款方式: T/T | |
| To: VENTURE SUPPLY INC | | Payment: T/T | |
| | | 装船口岸: 连云港 目的地: 美国 | |
| | | From: LIANYUNGANG To: U.S.A | |

第一联: 存根联 (填票单位留存)

| 唛头及号码 Mark | 品名及规格 Description | 数量 Quantity | 单价 UnitPrice | 金额 Amount |
|---|---|---|---|---|
| N/M | PLASTER BOARD 3660*1220*12.7mm | 53912pcs | USD3.668/pcs | USD197749.22 |

合计:
TOTAL: USD197749.22

单位名称: (盖章)
Signature

IN THE CIRCUIT COURT OF ELMORE COUNTY, ALABAMA

| | |
|---|---|
| JAMES H. ALEXANDER, and SHARON H. ALEXANDER, <br><br> PLAINTIFFS, <br><br> v. <br><br> TAISHAN GYPSUM CO., LTD., (D/B/A Shandong Taihe Dongxin Co., Ltd.), et al., <br><br> DEFENDANTS. | CIVIL ACTION NUMBER: CV-2009-900356.00 |

PEOPLE'S REPUBLIC OF CHINA    *

CITY OF TAI'AN    *    To Wit:

## AFFIDAVIT OF JIA TONGCHUN

I, Jia Tongchun, being duly sworn under oath, do state as follows:

1. I am over eighteen (18) years of age, am competent to testify to the matters contained herein, and have personal knowledge of these facts. My native language is Chinese. I do not understand, speak, read, or write English. I signed a Chinese version of this Affidavit as well as the English version of this Affidavit after it was translated for me by a translator with the law firm of Hogan Lovells International LLP.

2. I am Chairman of the Board and General Manager of Taishan Gypsum Co., Ltd. ("Taishan"). I joined Taishan on February 2, 1999 as the leader of the factory and subsequently became Chairman of the Board and General Manager in 2002.

3. When I joined the company, it was called Shandong Taihe Taishan Plasterboard Main

Factory (Group). In 2002, the company changed its name to Shandong Taihe Dongxin Co., Ltd. ("Taihe"), when it became a company limited by shares under Chinese law. In 2007, Taihe became Taishan.

4. Taishan is a Chinese corporation with its principal place of business in Tai'an City, Shandong Province, People's Republic of China ("China").

5. Taishan has approximately 1,600 employees, all of whom are located in China.

6. In 1992 Taishan started manufacturing paper-coated drywall ("drywall").

7. Taishan manufactures its drywall exclusively in China.

8. Taishan is one of the largest drywall manufacturers in China. Taishan has won numerous awards and accolades for the quality of its operations, company management, resource management and compliance with environmental standards. Taishan has been certified as a "China Top Brand" reflecting official recognition by the national General Administration of Quality Supervision Inspection and Quarantine ("GAQSIQ") of its high quality and superior reputation. Additionally, Taishan has also received additional quality and environmental protection certifications, including, for example, the International Organization for Standardization ("ISO") 9001 standard (for quality management), the ISO 14001 standard (for environmental protection) and certification to use the "China Environmental Labeling" mark.

9. Taishan sells drywall exclusively in China.

10. Taishan never has manufactured products in Alabama.

11. Taishan never has sold drywall in Alabama.

12. Taishan never has sold drywall in China to distributors located in Alabama.

13. Taishan never has sent any invoices to Alabama.

14. Taishan never has marketed its drywall in Alabama.

2

15. Taishan never has distributed its drywall in Alabama.

16. Taishan never has advertised in Alabama.

17. Taishan never has solicited sales in Alabama.

18. Taishan never has performed services in Alabama.

19. Taishan has not received any revenue from any customer or distributor in Alabama.

20. Taishan does not have offices and does not own or lease real or personal property in Alabama.

21. Taishan does not maintain any bank accounts in Alabama.

22. Taishan never has paid taxes or incurred any tax liability in Alabama.

23. Taishan is not registered to do business in Alabama.

24. Taishan never has been incorporated in Alabama.

25. Taishan never has maintained any corporate books or records in Alabama.

26. Taishan does not have a mailing address or telephone number in Alabama.

27. Taishan never has made any telephone calls, or sent emails to, anyone in Alabama.

28. Taishan never has appointed an agent to accept service of process in Alabama.

29. Taishan has no officers, directors, employees, or agents in Alabama. None of Taishan's officers, directors, employees, or agents maintain a residence or place of business in Alabama.

30. No officers, directors, employees, or agents of Taishan have visited Alabama for business purposes.

31. Taishan never has engaged in any actions in Alabama whatsoever.

32. Taishan has not purchased and does not carry liability insurance coverage for the United States.

33. Taishan has not entered into any type of claims-indemnification contract with any

distributors in the United States.

34. Taishan has only retained defense counsel in the United States for purposes of challenging the exercise of jurisdiction over it in courts in the United States.

35. None of Taishan's officers, directors, employees, or agents have ever attended trade shows or participated in trade groups in the United States.

36. Taishan has not contracted with any companies in the United States to test its drywall.

37. In approximately November of 2005, Phillip Perry, of Tobin Trading, Inc., contacted Taishan to inquire about Taishan's drywall. Mr. Perry said he was an agent of Venture Supply, Inc. ("Venture Supply"), a Virginia company.

38. Mr. Perry visited Taishan in China in approximately November 2005. During his first visit to Taishan, Mr. Perry, on behalf of Venture Supply, negotiated a contract providing for the sale of drywall by Taishan.

39. The first contract, dated November 17, 2005, was drafted and signed in Tai'an City, China. A copy is attached as Exhibit A. The contract provided for production of the drywall according to the "relative standard of China GB/T9775-1999." Under the terms of the contract, Venture Supply purchased the drywall in China and was then responsible for transporting the drywall to its desired location. Prior to shipment, Mr. Perry, as Venture Supply's representative, was responsible for inspecting the drywall in China and ensuring that the quality, specifications and packing met Venture Supply's requirements. Taishan was responsible for complying with the contractual terms and for delivering the drywall in China in accordance with Venture Supply's arrangements. Additionally, the November 17, 2005 contract included an arbitration clause, which provided that "[a]ll disputes in connection with this contract" that cannot be amicably be negotiated will be submitted in

4

China to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade, now know as the China International Economic Trade Arbitration Commission ("CIETAC").

40. On December 16, 2005, Mr. Perry, Venture Supply's agent, visited Taishan to inspect the drywall and agreed to transport of the drywall to the Lian Yungang port. A copy of his Inspection Certificate is attached as Exhibit B. Mr. Perry certified in the Inspection Certificate that he had inspected the goods in China and that they met Venture Supply's specifications and quality requirements.

41. On the same day, Taishan and Venture Supply entered into a second contract. A copy of this contract is attached as Exhibit C. Like the first contract, this contract was negotiated and drafted in Tai'an City, China. Mr. Perry, on behalf of Venture Supply, and Taishan both signed the second agreement while in Tai'an City, China. Also like the first contract, the second contract provided for the sale of drywall in China, and required Venture Supply to be responsible for shipping arrangements and charges. The second contract similarly required that Mr. Perry inspect the goods in Taishan's factory and China loading port to make sure that the quality, specifications and packing met Venture Supply's requirements. Like the first contract, it also contained an arbitration clause, providing for arbitration of claims arising out of the contract before CIETAC in China.

42. On or about March 11, 2006, Mr. Perry again visited Taishan to inspect the drywall and to give approval to transfer it to the loading port. A copy of his Inspection Certificate is attached as Exhibit D. Mr. Perry similarly certified in this Inspection Certificate that he had inspected the drywall in China and that it met buyer's specifications and quality requirements.

5

43. Pursuant to both contracts, Venture Supply was responsible for transporting the drywall to the final destination, and Venture Supply was also responsible for insuring the drywall once title was transferred to it in China.

44. After delivery of the drywall to a port in China, Taishan had nothing more to do with the drywall thereafter. Taishan had no knowledge or information concerning whether any of the drywall it supplied in China pursuant to those contracts would be distributed or used in Alabama.

45. The Taian Shandong Province Special Invoices for Export for the purchases by Venture Supply are attached together as Exhibit E. These invoices were generated by Taishan for tax purposes after the Venture Supply transactions were complete. They show that Venture Supply purchased a total of 153,912 sheets of drywall from Taishan in China. The invoices also list "FOB" as the term of delivery, meaning that Venture Supply purchased the drywall in China and was responsible for arranging, and paying for, shipment to the desired destination.

46. No employee or representative of Taishan was ever present in the United States in connection with the Venture Supply contracts or otherwise in connection with the drywall business.

47. Venture Supply made payments for the drywall to Taishan's bank in China.

48. Although Taishan eventually learned that the drywall sold to Venture Supply was being shipped by Venture Supply to Virginia and New Jersey, Taishan had no expectation that the drywall would be supplied to consumers in Alabama.

49. Taishan's two sales to Venture Supply were made in China. They are the only sales of drywall Taishan has made to any customer based in the United States.

6

50. Taishan is not familiar with the United States, and could not have reasonably anticipated that two isolated sales in China to a distributor with an operation in Virginia would result in it being subject to suit in Alabama.

51. I never have traveled to the United States, I do not speak English, and it would be exceedingly burdensome for me to leave my business operations for the tremendous amount of time it would take to travel to the United States to defend Taishan in this case where Taishan had no reason to expect that it would be subject to suit in Alabama.

I hereby swear and affirm that the foregoing statements are true and correct.

Executed on September ___, 2010.

_____
Jia Tongchun

# EXHIBIT A

# Contract

Contract NO.: SDTH051117A

Date: 17th November 2005          Place: TAI'AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

Address: Dawenkou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller agree to sell and the buyer agree to buy the under mentioned commodity according to the terms and conditions stipulated below:

1. term of delivery: delivery commodity in China port.

| Commodity & specification | Quantity | Unit price FOB Liang Yungang | Total value |
|---|---|---|---|
| Standard gypsum board (T/E) 12.7*1220*3660mm | 100,000 sheets | USD 3.58/sheet | USD 358,000.00 |
| | | | |
| Total | 100,000 sheets | USD 3.58/sheet | USD 358,000.00 |

Total value of the contract: US DOLLAR Three hundred fifty-eight thousand ONLY

2. Quality and packing terms: the gypsum board should be produced as per relative standard of China GB/T9775-1999, using plastic inner package and gypsum pallet. It should be inspected and confirmed by Mr. Phillip W

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.

Perry who come from Tobin Trading Inc and represents the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement, stating that they agree to deliver the good. The stating can be regarded as the satisfactions of the buyer with the gypsum boards and packing. And the stating is the part of the contract.

3. Term of payment: USD128880.00 should be paid in advance, the rest should be by irrevocable letter of credit at sight.

4. The buyer should be in charge of ocean transportation and instance; the ocean freight should be paid at the buyer's end.

5. Force majeure: the seller shall not be hold responsibility for late or non-delivery of the goods owing to the generally recognized "force majeure" cause. However in such case, the seller shall inform the buyer in four working days.

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

7. The fax copies are regarded as valid.

VENTURE SUPPLY, INC.
1140 Azalea Garden Rd.
Norfolk, VA 23502

The buyer, Venture Supply, Inc.
Stamp and signature

# EXHIBIT B

## Inspection   Certificate

DATE: 12-16-05

I, appointed by the buyer as its representative, have inspected the goods (3660*1220*12.7mm gypsum board (T/B)) in seller's factory and that they meet buyer's specifications and quality, and that pallets are constructed of gypsum material not subject to insect infestation (no wood), and that the packing meets buyer's requirements.

We agree to transport the goods to Lian Yungang port.

Note: seller:   Shandong Taihe Dongxin Co., Ltd

   Buyer:   Venture Supply Inc.

Tobin Trading Inc.

Phillip W. Perry

Signature

*[signature]*

# EXHIBIT C

# Contract

Contract NO.:SDTH05121601

Date: 16TH December, 2005      Place: TAI'AN CHINA

The seller: Shandong Taihe Dongxin CO., LTD

   Address: Dawenkou Daiyue District Tai'an China

The buyer: Venture Supply, Inc.

   Address: 1140 Azalea Garden Road, Norfolk VA 23502-5612

This contract is made by and between the seller & buyer, whereby the seller agrees to sell and the buyer agrees to buy the under mentioned commodity according to the terms and conditions stipulated below:

1. Term of delivery: deliver commodity in China port.

| Commodity & Specification | Quantity | Unit Price | Total Value |
|---|---|---|---|
| Standard gypsum board (T/E) 12.7*1220*3660mm | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total | 100,000 sheets | USD 3.668/sheet | USD366800.00 |
| Total value of the contract:US DOLLAR Three hundred sixty-six thousand and eight hundred ONLY | | | |



2. Quality and packing terms: the gypsum board should be produced as per the relative standard of China GB/T9775-1999, using plastic inner package, gypsum pallet, gypsum protecting board and steel belt. It should be

2/2

inspected and confirmed by Mr. Phillip W Perry, who comes from Tobin Trading Inc and representes the buyer, stating that they have inspected the goods in seller's factory and China loading port and that the quality, specifications and packing meet buyer's requirement. The stating can be regarded as the part of the contract.

3. Term of payment: 30% earnest money should be paid in advance, the rest should be by irrevocable letter of credit at sight. We agree to accept the one hundred percent letter of credit for future orders (except this one).

4. The buyer should be in charge of ocean transportation and insurance, the ocean freight should be paid at the buyer's end.

5. Force Majeure: the seller shall not be held responsible for late or non-delivery of the goods owing to the generally recognized "Force Majeure" cause. However in such case, the seller shall inform the buyer in four working days.

6. Arbitration: All disputes in connection with this contract shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute may then be submitted to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the arbitration shall be accepted as final and binding upon both parties.

The seller: Shandong Taihe Dongxin CO., LTD

The buyer: Venture Supply, Inc.

Phillip W. Perry