UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>ALL CASES | JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFFS' STEERING COMMITTEE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ENJOIN CONFLICTING STATE COURT PROCEEDINGS IN MUSCOGEE COUNTY, GEORGIA THAT INTERFERE WITH THIS COURT'S CONTINUING JURISDICTION OVER THIS LITIGATION**

**I.    INTRODUCTION**

The architects of the *Vereen Defective Drywall* class settlement that was filed in the Superior Court of Muscogee, County, Georgia are Austin Gower, Esq., Don Barrett, Esq., Patrick W. Pendley, Esq., David P. Matthews, Esq. and Dewitt Lovelace, Esq.[1] These attorneys are also counsel of record for numerous plaintiffs in these MDL proceedings in actions against the manufacturer-defendant Knauf Gips, KG and others.[2] *Vereen* Class Counsel and Lowe's Home Centers, Inc. ("Lowe's") have each filed a memorandum in opposition to the PSC's motion to enjoin the state court proceedings in Georgia. *See* Rec. Doc. Nos. 6049 & 6051, respectively.

As defined by the Georgia court, the *Vereen* settlement class is overly broad. The class

---

[1] *See* Order Preliminarily Approving *Vereen* Class Action Settlement, Settlement Class Certification, and to Schedule Final Fairness Hearing ("Preliminary Approval Order"), at 3 (attached as Exhibit "B" to PSC's Mem. in Support of Motion to Enjoin, Rec. Doc. No. 5011).

[2] *See* Exhibit "A" hereto, listing names of plaintiffs currently and previously represented by *Vereen* Class Counsel in the various Omni actions before this MDL Court. As shown, *infra*, this list demonstrates that these attorneys have a conflict of interest whereby they have represented clients before this Court against Knauf and others and at the same time they have included the claims of their remaining MDL clients in the *Vereen* class settlement, which will eliminate those claims while providing very little recovery to those clients.

consists of:

> **Any Person** in the United States **who,** during the Class Period,[3] **purchased,** installed or had installed on real property, *Defective Drywall* or were owners and/or residents on such real property.[4]

The definition of the class is NOT limited to purchasers of drywall from Lowe's and it is NOT limited to domestic drywall, but, rather, also includes purchasers of Chinese drywall. Moreover, the *Vereen* settlement class is comprised of not only owners and tenants of residential and commercial property in the United States where *Defective Drywall* was installed, but also builders, suppliers and installers of said drywall.

Notably, Class Counsel and Lowe's provide no information as to the nature of the claim of the named Class Representative Glen Vereen. Their papers do not indicate (1) whether Mr. Vereen is an owner or tenant of a building where *Defective Drywall* was installed, or (2) whether he is a purchaser or installer of drywall or other "related product," or (3) whether the drywall at issue was manufactured domestically or by a foreign entity, or (4) whether the drywall was even sold by Lowe's. Given the paucity of this vital information, it is impossible to discern what type of legal claim Mr. Vereen has and whether it is typical of other class members' claims and/or in conflict with the Chinese drywall claims at issue in this litigation. Apparently, under Georgia's class action statute, the parties are under no obligation to make any showing of the requirements necessary for a proper class provided they "have so stipulated on the record."[5]

---

[3] *Class Period* in *Vereen* is defined as "the period from the beginning of time through the date of the Preliminary Approval Order." Class Action Settlement Agreement and Release ("Settlement Agreement"), at 2-3 (attached as Exhibit "A" to PSC's Mem. in Support of Motion to Enjoin).

[4] Preliminary Approval Order at 2 (emphasis added).

[5] This appears to be an excellent example of forum-shopping at its best. Under Georgia state law, "When deciding whether a requested class is to be certified, ... the court may treat a [required] factor as having been established if all parties to the action have **so stipulated on the record**. Ga. Code Ann., § 9-11-23(f)(3) (emphasis added). Obviously, Lowe's and *Vereen* Class Counsel purposefully selected Muscogee County for a reason – this is perhaps the reason.

2

A close examination of *Vereen* Class Counsel's papers, Lowe's papers, the *Vereen* class settlement agreement and the Georgia state court's order approving the class settlement demonstrates why an injunction is necessary to protect this Court's integrity and jurisdiction over these MDL proceedings involving Chinese-manufactured drywall (or "CDW") claims.

## II.  ARGUMENT

### A.  The *Vereen* Class Action on its Face Conflicts and Interferes With These MDL Proceedings.

The Settlement Agreement in *Vereen* defines *Defective Drywall* to be "any and all drywall, whether manufactured domestically, in China or in any other country...."[6] It is beyond peradventure that **the *Vereen* settlement includes claims arising from defective <u>Chinese-manufactured</u> drywall**, since "China" is specifically listed in the definition as one of the sources of manufacture for the *Defective Drywall*. It is incomprehensible, therefore, that *Vereen* Class Counsel can claim otherwise. And, yet, incredibly they assert that "*Vereen* is simply not a Chinese drywall case. *Vereen* is a defective domestic-drywall case[.]"[7] The definitional section of the settlement agreement, however, belies Class Counsel's claims. Moreover, Lowe's brief confirms that these attorneys are talking out of both sides of their mouths. Lowe's clarifies that "the Georgia state court settlement is broader than the claims in the MDL as it would resolve **all** claims against Lowe's involving all allegedly defective drywall, not just the CDW claims that are before this Court."[8]

Class Counsel apparently concede that their characterization of the *Vereen* settlement as a "domestic-drywall case" only is pure fiction, but they suggest that any interference with these

---

[6] Settlement Agreement at 3.

[7] *Vereen* Class Counsel's Mem. at 3.

[8] Lowe's Mem. at 1(emphasis in original).

3

MDL proceedings would be insubstantial. Both Lowe's and Class Counsel contend that an injunction is not necessary because allegedly the *Vereen* settlement "will affect a minuscule number of Chinese drywall claims in the MDL ..."[9] There has been no reliable showing as to the number of Chinese drywall claims that will be affected by the *Vereen* settlement and there is certainly no basis to assert that the number is "minuscule." On the contrary, because the parties and the Georgia court failed to limit *Vereen* to purchasers of drywall from Lowe's, that class includes all plaintiffs in these MDL proceedings with Chinese drywall claims.

The word "Lowe's" does not appear anywhere in the *Vereen* class definition. The only limitation in the definition of *Defective Drywall* with respect to sales by Lowe's pertains to "... all *related products*, manufactured, imported, distributed, delivered, supplied, inspected, marketed, installed and/or sold by the Company [Lowe's], ... which is allegedly harmful and/or defective for any reason whatsoever ...."[10] Neither Class Counsel nor Lowe's even attempts to explain what "related products" of Lowe's are at issue in that case.

In any event, regardless of the number of Chinese drywall claims affected by the *Vereen* settlement and regardless of whether the Georgia action involves only drywall sold by Lowe's or any and all drywall sold in the United States, on its face the *Vereen* class settlement interferes and conflicts with these MDL proceedings, and, for that reason, the Georgia action should be enjoined.

    **B.**    ***Vereen* Class Counsel Have No Knowledge of or Misrepresent the Status of These MDL Proceedings and Lowe's Denigrates the Efforts of this Court to Achieve Global Resolution of Chinese Drywall Claims.**

*Vereen* Class Counsel boldly contend that an injunction should not issue because "there

---

[9] *Id.*; *see also* Lowe's Mem. at 3-4.

[10] *Vereen* Class Counsel's Mem. at 3.

have been <u>no class settlement negotiations</u> in this MDL action at all."[11] This is simply not true. The Court has first-hand knowledge of the tremendous efforts made by all parties, this Honorable Court and the Honorable State Courts around the country to achieve a resolution of this litigation in a fair, efficient and reasonable manner. The Court has overseen the prolix process of bringing all interested parties into these proceedings through the use of Omnibus class and intervention complaints which have included thousands of plaintiffs and their associated defendants and insurers. For more than eighteen months, the Court has worked tirelessly to manage the coordinated and consolidated pretrial discovery and motion practice for thousands of individual Chinese drywall cases and several class actions. The Court has entered judgments, after trial or settlement on the eve of trial, in ten bellwether cases in Virginia and Louisiana. By aggregating the mass in this mass tort, certain defendants have come to the table and are actively involved in global settlement negotiations. In fact, one such settlement agreement for the Demonstration Remediation of Homes with drywall manufactured by Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT") and other Knauf entities has been executed and posted to the Court's website at http://www.laed.uscourts.gov/Drywall/DemonstrationRemediationAgreement.pdf.

Class Counsel in *Vereen* are either unaware of this Court's remarkable endeavors to resolve this litigation on a global basis or have misrepresented, perhaps unintentionally, the status of these proceedings. This is surprising, though, because *Vereen* Class Counsel are not strangers to this MDL. As shown in Exhibit "A," attached hereto, these attorneys have been and still are counsel of record representing a multitude of plaintiffs suing Knauf and other defendants in this Chinese drywall litigation. Previously on the eve of the *Vereen* settlement, they dismissed the claims of some of their clients from the MDL proceedings and quietly pursued those claims in

---

[11] *Vereen* Class Counsel's Mem. at 2 (emphasis in original).

5

the state court system of Georgia.[12] However, they still represent many plaintiffs in this MDL. Therefore, these attorneys have an impermissible conflict of interest by virtue of their overly broad class definition in *Vereen*, which sweeps in all plaintiffs in these Chinese drywall proceedings, including their current clients suing other manufacturers of drywall. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 601 (1997); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3rd Cir.), *cert. denied*, 516 U.S. 824 (1995) (class counsel must serve the interests of the *entire* class). As shown below, the maximum possible recovery under the *Vereen* settlement for any claimant is a $2000 Lowe's gift card plus $2500 in cash. There are no standards, however, for the evaluation of claims in *Vereen*, and depending on the number of claimants, the recovery amounts may be reduced *pro rata*. These benefits do not measure up to the potential recoveries that the MDL plaintiffs may realize in this Chinese drywall litigation. The improper attempts of the *Vereen* Class Counsel to impede the jurisdiction of this MDL Court should be enjoined.

Unlike Class Counsel, Lowe's at least acknowledges the existence of the KPT pilot remediation program but refuses to refer to it as any form of "settlement." In fact, Lowe's contends that the settlement reached with KPT is "not a 'settlement' at all."[13] This flies in the face of this Court's vigorous and determined attempts to globally address the genuine issues at stake in these proceedings that affect thousands of individuals and their place of residence made uninhabitable from Chinese-manufactured drywall. Lowe's has unfairly denigrated the good work of the Court and the parties interested in a fair resolution of this case, which has been ongoing now for eighteen months and has culminated in this incredible settlement. As your Honor recently declared in open Court:

---

[12] *See* PSC's Motion to Enjoin at 4-5.

[13] Lowe's Mem. at 2 n.5.

6

> I am pleased to report that I have with me Judge Joseph Farina from the 11th Judicial Circuit Court in Florida and Judge Scott Vowell from the 10th Judicial Court in Alabama.
>
> The difficulty in these cases in an MDL is often that they're filed both in federal courts as well as state courts throughout the country. I've been blessed with the help of state court judges who have been very helpful to me. I've counted on their wisdom, on their suggestions in trying to gather all of the cases and move them forward, and I am delighted that Judge Farina and Judge Vowell can be with me today. Judge Farina and I have been working together now for nearly a year on these cases and I treasure his views and wisdom on these matters, and I appreciate his being here.
>
> One of the reasons for this conference is because at my suggestion, as well as the state court judges, the parties have tried to look at this matter globally. We have been through a number of cases, I've tried or resolved about ten of these cases already, and the parties have had an opportunity to see what results of those judgments have been. They've listened to the evidence and the state courts have done likewise in their particular areas. So it's given the parties an opportunity to look at these matters and see whether or not some global resolution could be worked out.
>
> And we've got the first step in that global resolution [referring to the KPT settlement] reporting today, so I'll hear from the parties.

Transcript of Proceedings, 10/14/10, at pp. 2:17-3:17.

As reported, the KPT pilot remediation settlement is significant. It is no gift card coupon settlement. The KPT program will remediate 300 homes with KPT Chinese drywall in conformance with this Court's rulings set forth in *Hernandez v. Knauf Gips, KG, et al.*, case no. 09-6050, Rec. Doc. No. 2713 (Findings of Fact). *See* Transcript of Proceedings, 10/14/10, at p. 4:16-20. The parties expect these 300 homes to be made whole within three months. *Id.* at p. 6:25-7:1. In addition to the KPT entities, a number of suppliers, their insurers and other entities are participating in this settlement. *Id.* at p. 5:3-5. If the program works, it is expected "that possibly 2,000 to 3,000 homes ... could be eligible" for remediation. *Id.* at p. 7:1-3. Counsel for KPT has confirmed that:

> There's a lot of hope and expectation here. And the hope and
> expectation is that this program is going to be expanded .... [S]ince
> the word has gotten out about the settlement, I've had a
> tremendous response from lawyers representing various defendants
> and insurers that want to participate in this program, that want [to]
> meet and discuss that participation, so that's very encouraging....
> It's our goal to get as many participants in the program as it
> involves.

*Id.* at p. 10:4-13, 15-16.

The benefits of the KPT settlement and a recognition of this Court's hard work were echoed by State Court Judge Farina:

> I want to echo Judge Fallon's remarks as well as the lead plaintiff
> and Defense Steering Committee counsel. Listen, I am fortunate to
> be working with and guided by Judge Fallon throughout these
> proceedings, and I believe we're all blessed with his leadership.

*Id.* at p. 12:2-6. Lowe's refusal to consider the KPT program any kind of "settlement at all" is just silly and cannot be taken seriously.

### C. There Are Numerous Problems With the *Vereen* Class Settlement.

As stated in our initial motion seeking an injunction, there are numerous problems facially with the *Vereen* class settlement.

First, the class definition is overly broad and confusing. Although the Georgia court's order does not define *Defective Drywall*, it is clear from the settlement that the *Vereen* agreement seeks to resolve **all** drywall claims (both domestic and Chinese-manufactured), despite the claims of *Vereen* Class Counsel to the contrary. In addition, neither the class as defined by the Georgia court nor the definition of *Defective Drywall* limits the *Vereen* settlement to only that drywall sold by Lowe's, even if such a limitation was the intention of the drafters of the settlement agreement. Under *Vereen* as it currently stands, all MDL plaintiffs with Chinese drywall claims are included in the *Vereen* class, as are participants in the KPT settlement program, and all of

8

these individuals are at risk of having their claims compromised outside of the confines of this MDL Court. Plainly, if allowed to proceed, the *Vereen* settlement would vitiate the KPT pilot program and its expected expansion towards global relief.

The sloppy class definition in *Vereen* is no accident. Lowe's has provided the best characterization of the *Vereen* settlement, claiming that: "*Vereen* is not a CDW case; it is an allegedly defective domestic drywall case, *the settlement of which happens to include CDW claims*."[14] After all, how can Lowe's achieve total peace if these Chinese drywall claims are not included in its Georgia settlement? So, to the extent that the *Vereen* settlement includes Chinese-manufactured drywall claims, it directly conflicts with these MDL proceedings and the settlement reached herein.

Second, the *Vereen* class is so broad that it includes all owners, residents, purchasers, builders, suppliers and installers of drywall, which in and of itself presents impermissible and inherent intra-class conflicts. Many Chinese drywall homeowners, for example, have sued their builder, and, therefore, these parties cannot be aligned in a unified class of drywall claimants. *See Amchem*, 521 U.S. at 595 (noting problem where "the interests of those within the single class are not aligned."); *In re Joint Eastern & Southern District Asbestos Litig.*, 982 F.2d 721 (2nd Cir. 1992), *modified sub nom. Findley v. Blinken*, 993 F.2d 7 (2nd Cir. 1993) (conflict created by placing both victims and co-defendant manufacturers in the same subclass). In other words, the aggregate group of plaintiffs in *Vereen* does not "possess the same interest and suffer the same injury." *Amchem*, 521 U.S. at 595. Without discrete subclasses, "the settling parties achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Id.*

An additional problem with the *Vereen* class is that there is no information regarding the

---

[14] Lowe's Mem. at 18 (emphasis added).

9

nature of the claim of the named representative Glen Vereen, making it impossible to determine whether he has any conflicts of interest with the class he purports to represent and whether his claims are typical of his fellow class members. *Id.*

Third, the *Vereen* settlement benefits are woefully inadequate. A maximum aggregate settlement "fund" of $6.5 million, primarily in the form of Lowe's gift cards having values ranging from $50 - $2,000, has been set aside. Depending on the number of claimants, the value of these gift cards may be reduced *pro rata*.[15] Nowhere in Class Counsel's or Lowe's papers is there any mention of the number of claimants estimated to exist, nor has there been any attempt to calculate same. If the settlement is intended to be limited to drywall (and "related products") sales by Lowe's, it would seem that Lowe's, based on its sales records, should have some idea of the number of purchasers of its products. However, that information has not been provided to class members or the Court. The maximum value of the *Vereen* settlement, therefore, appears to have no relation to any specific or estimated number of claims at issue.

Moreover, the form of the principal benefit – Lowe's gift cards – is suspect.[16] Although the settlement provides that in some cases a cash payment not to exceed $2,500 *may* be provided, this will only occur where the costs of remediation or personal injury can be shown to exceed the gift card amount.[17] However, neither the settlement agreement nor the Georgia court's order

---

[15] Settlement Agreement at 7.

[16] PSC's Mem. in Support of Motion to Enjoin, at 8 n.22, *citing* Class Action Fairness Act of 2005 ("CAFA"); *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006); *Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998, at *1 (N.D. Cal. Nov. 21, 2005); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007); Christopher R. Leslie, "The Need to Study Coupon Settlements in Class Action Litigation," 18 GEO. J. LEGAL ETHICS 1395, 1396-97 (Fall 2005); *Fleury v. Richemont North America, Inc.*, 2008 WL 3287154, *2 (N.D. Cal. Aug. 6, 2008); Steven B. Hantler and Robert E. Norton, "Coupon Settlements: The Emperor's Clothes of Class Actions," 18 GEO. J. LEGAL ETHICS 1343, 1348 (Fall 2005).

[17] Settlement Agreement at 8-10.

provides any standards for "valid, independent proof" that the claimant's personal injury was caused by the *Defective Drywall*.[18] It is impossible to know, therefore, how claimants will be paid under the *Vereen* settlement. Lowe's boasts that the *Vereen* settlement includes personal injury claims whereas the KPT program does not. While *Vereen* may very well purport to settle claims for personal injury, the paperwork is far too sketchy to reach any reasonable conclusion that the settlement appropriately compensates any plaintiff for his or her personal injuries resulting from defective drywall.

Finally, the *Vereen* settlement agreement provides for attorneys' fees of up to one-third of the maximum settlement amount, or $2.166 million. This provision of the settlement violates CAFA, 28 U.S.C. § 1712(a), which provides that: "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed."

*Vereen* Class Counsel's and Lowe's response to all of these problems is for class members simply to opt out of the settlement if they are unsatisfied. Many class members, however, did not receive the "best notice practicable," in violation of their due process rights. The Supreme Court has been clear on this point:

> [E]ach class member shall be advised that he has the right to exclude himself from the action on request or to enter an appearance through counsel, and further that the judgment, whether favorable or not, will bind all class members not requesting exclusion. To this end, the court is required to direct to class members "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." We think the import of this language is unmistakable. **Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort**.

---

[18] *Id.* at 8.

11

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974) (footnote and citation omitted). *Vereen* Class Counsel and Lowe's know the names and addresses of many class members, having represented these individuals in the MDL proceedings. Sadly, point-of-sale notification on Lowe's cash register receipts and notice by publication do not constitute adequate notice for known past purchasers of Lowe's drywall and known plaintiffs with Chinese drywall claims. Moreover, given the confusing and overly broad class definition and the lack of information regarding the size of the class and the nature of the named class representative's claims at issue, the substance of the *Vereen* class notice is also inadequate and unconstitutional. *See Phillips Petroleum co. v. Shutts*, 472 U.S. 797, 810-813 (1985) (due process rights of class members include "the right to intelligently and individually choose whether to continue in a suit as class members"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) ("the right to participate, or to opt-out, is an individual one and should not be made by the class representative or the class counsel"); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 412 (2nd Cir. 1975) ("opting out of the class, like the decision to participate in it, must be an individual decision"). *See also* William B. Rubenstein, Alba Conte and Herbert B. Newberg, 5 NEWBERG ON CLASS ACTIONS, §16.16 (4th ed. updated June 2010) ("The decision to exercise the right of exclusion in a Rule 23(b)(3) action is an individual decision on each class member and may not be usurped by the class representative or class counsel.").

For these reasons, the Georgia settlement serves as an interference with and a roadblock to this Court's management of and supervision over the resolution of Chinese drywall cases.

**D.     The Cases Cited by *Vereen* Class Counsel Do Not
Apply to These Facts and Are Distinguishable.**

*Vereen* Class Counsel mistakenly cite *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1994 WL 605970 (E.D. La. Nov. 3, 1994), as a holding of the Fifth Circuit Court of Appeals, and

they rely on *George A. Fuller Co. v. Coastal Plains, Inc.*, 283 F. Supp. 754 (E.D. La. 1968) and *In re Diamond B. Marine Services, Inc.*, 2001 WL 726885 (E.D. La. 2000), both of which are inapposite.[19]

As the District Court noted in the *Ford Bronco II* litigation, "*in personam* actions in federal and state court should generally be allowed to proceed concurrently, without interference from either court." *Ford Bronco II*, 1995 WL 489480, *2 (E.D. La. Aug. 15, 1995). However, there are exceptions to this general rule, as the Court pointed out, which happen to apply to the facts of this Chinese Drywall MDL:

> *An exception to this general rule arises once* judgment, or its virtual equivalent in the form of the approval of *a partial or global settlement in a multidistrict class action, is entered. An exception may also reasonably be made if the prospect of settlement of complex litigation is imminent.* The state proceedings enjoined must present a direct and immediate threat to the federal court's ability to manage and effectuate an imminent or final compromise of the claims before the court.

*Id.* (citations omitted).

*Vereen* Class Counsel ignore the fact that these are complex multidistrict litigation proceedings that involve thousands of consolidated individual suits and numerous class actions

---

[19] *See Vereen* Mem. at 8. The *Fuller* decision is easily distinguishable. In that case the Court declined to grant an injunction, in part, because the matter involved "[o]nly three parties," noting that "[t]his situation is not nearly as complex as the one involved in the *Lester* case [referring to *American Insurance Company v. Lester*, 214 F.2d 578 (4th Cir. 1954)]." *Fuller*, 283 F. Supp. at 756. The more complex *Lester* case involved 24 fire insurance companies that brought a declaratory judgment suit against a lessor and a lessee in federal court and separate suits in state court by the lessor and lessee against the insurance companies. "The Fourth Circuit Court of Appeals advised the district court that it should issue the injunction against the state court proceedings because it could not possibly effectively declare the rights of the parties in this complex situation if there were other suits pending on the same subject matter. For this reason its jurisdiction in the declaratory judgment proceeding would be greatly aided by such injunctions." *Id.* This Chinese Drywall MDL is far more complicated than either *Lester* or *Fuller. See also Diamond B.*, 2000 WL 726885 at *4 (declining to grant an injunction in a Limitation of Vessel Owner's Liability admiralty proceeding but recognizing an exception for *in rem* suits).

(not the simple three-party case of *Fuller*), where not only is settlement imminent, but a settlement has already been inked and posted to the Court's website. This is precisely the type of exception that the *Ford Bronco II* court mentioned which warrants an injunction against a conflicting state court action that interferes with this Court's management of and supervision over plaintiffs' Chinese drywall claims, the complex multidistrict litigation and also the global settlement before the Court. *See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970) (courts liberally invoke the "necessary in aid of its jurisdiction" exception "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.").[20]

Courts have recognized that the jurisdiction of a multidistrict court or a class action proceeding is "analogous to *in rem* actions given their magnitude and complexity." *Joint E. & S. Dist. Asbestos*, 134 F.R.D. at 38; *Baldwin-United*, 770 F.2d at 337 ("need to enjoin conflicting state proceedings arises because the jurisdiction of a multidistrict court is 'analogous to that of a court in an in rem action...'"); *Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered"); *Corrugated Container*, 659 F.2d at 1334-35 (injunction proper because "complicated antitrust action ... required a great deal of the district

---

[20] *See also In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2nd Cir. 1985); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.&S.D.N.Y. 1990); Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U. Chi. L. Rev. 717, 754 (1977) ("necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory."); *In re Diet Drugs*, 282 F.3d 220, 235 (3rd Cir. 2002) (recognizing "a category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court" – namely, where "a federal court [is] entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts....").

14

court's time and necessitate[d] its ability to maintain a flexible approach in resolving the various claims of the many parties."). Under these circumstances, an injunction against parallel or conflicting state court proceedings would be proper, "because the 'exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached,' [and] the federal court is empowered to enjoin any state court proceeding affecting that res." *Baldwin-United*, 770 F.2d at 336, *quoting Kline v. Burke Construction Co.*, 260 U.S. 226, 229 (1922).

Given the overly broad class definition in *Vereen* and the admittedly confusing and contradictory statements made by *Vereen* Class Counsel and Lowe's as to the breadth of the *Vereen* settlement, and given the global settlement already reached in this MDL, an injunction would be particularly appropriate here. *See Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 204 (3rd Cir. 1993) (injunction prohibiting prosecution of competing state class action affirmed where foreign action "would be disruptive to the district court's ongoing settlement management[,]" "would jeopardize the settlement's fruition[,]" and would "present[] a likelihood that [class] members ... [would] be confused as to their membership status in the dueling law suits."). *See also Baldwin-United*, 770 F.2d at 335 & 337 ("utility of the multidistrict forum ... ideally suited to resolving ... broad claims," and in order to protect its ability to settle complex litigation, All-Writs Act empowers MDL court to issue an injunction against actions in state court "even before a federal judgment is reached...."); *In re School Asbestos Litig.*, 1991 WL 61156, *1-*2 (E.D. Pa. Apr. 16, 1991), *aff'd mem.*, 950 F.2d 723 (3rd Cir. 1991) ("[W]here the potential for resolution is gaining momentum ... this court's ability to oversee a possible settlement would be 'seriously impaired' by the continuing litigation of parallel state actions...."); *Diet Drugs*, 282 F.3d at 235 (finding "complexity of the case to be a substantial factor in justifying the injunction"); *Corrugated Container*, 659 F.2d at 1334 (upholding validity of injunction issued by

district court overseeing multidistrict litigation against actions by same plaintiffs in state court, as necessary in aid of district court's jurisdiction); *Newbe v. Enron Corp.*, 338 F.3d 467, 474-75 (5th Cir. 2003) (where "injunctions sought in state court threatened to interfere with the federal court's orderly handling of the massive federal litigation," All Writs Act properly invoked); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (to protect its discovery orders, federal court has "power under the All Writs Act" to enjoin state court litigation and "'to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction'"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992) (approving settlement barring competing actions in state court alleging claims similar to those in the federal action); *White v. National Football League*, 41 F.3d 402, 409 (8th Cir. 1994) ("ability to facilitate ... settlement by enjoining related suits of absent class members is ancillary to jurisdiction over the class action itself"), *cert. denied*, 515 U.S.1137 (1995); *James v. Bellotti*, 733 F.2d 989, 994 (1st Cir. 1984) (provisionally approved settlement justifies injunction against competing state court cases); *In re Granada Partnership Sec. Litig.*, 803 F. Supp. 1236, 1246 (S.D. Tex. 1992) (enjoining "commencement, continuance and/or prosecution of any and all proceedings in federal or state court" by class members in connection with preliminary and final approval of class settlement); *Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. at 37 ("An injunction of all proceedings is necessary to implement the terms of the settlement and to protect the court's jurisdiction over the class action.").

## III.   <u>CONCLUSION</u>

The PSC's request for extraordinary relief in the form of an order enjoining the *Vereen* settlement from interfering with this Court's jurisdiction is exactly what is warranted under the circumstances. The Georgia class as defined encompasses all of the plaintiffs before this Court

16

and interferes with this MDL Court's supervision over the Chinese Drywall litigation and the pending global settlement. Lowe's warns of a "travesty of justice"[21] should the Court grant our motion. On the contrary, it would be a travesty to allow thousands of Chinese drywall claims to be swept into the *Vereen* settlement as a result of an overly broad and sloppy class definition and a state court system that permits litigants to "so stipulate" to the requirements of a proper class settlement.

For these reasons, we respectfully ask that our motion be granted.

Respectfully submitted,

Dated: October 29, 2010

/s Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

---

[21] Lowe's Mem. at 4 n.8.

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
 Matthews, Martinez, Gonzales,
 Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger  
Seeger Weiss, LLP  
One William Street  
New York, NY 10004  
Phone: (212) 584-0700  
Fax: (212) 584-0799  
cseeger@seegerweiss.com  

Scott Wm. Weinstein  
Morgan & Morgan  
12800 University Drive, Suite 600  
Ft. Meyers, FL 33907  
Phone: (239) 433-6880  
Fax: (239) 433-6836  
sweinstein@forthepeople.com  

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis  
HAUSFELD LLP  
1700 K Street, N.W  
Suite 650  
Washington, DC 20006  
Phone: (202) 540-7200  
Fax: (202) 540-7201  
rlewis@hausfeldllp.com  

Jeremy W. Alters  
Alters, Boldt, Brown, Rash & Culmo, P.A.  
4141 N.E. 2nd Avenue  
Suite 201  
Miami, FL 33137  
Phone: (305) 571-8550  
Fax: (305) 571-8559  
jeremy@abbrclaw.com  

Daniel K. Bryson  
Lewis & Roberts  
3700 Glenwood Avenue, Suite 410  
Raleigh, NC 27612  
Phone: (919) 981-0191  
Fax: (919) 981-0431  
dkb@lewis-roberts.com  

Richard J. Serpe, Esquire  
Law Offices of Richard J. Serpe  
Crown Center, Ste. 310  
580 East Main Street  
Norfolk, VA 23510-2322  
rserpe@serpefirm.com

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing Plaintiffs' Steering Committee's Reply Memorandum of Law in Support of its Motion to Enjoin Conflicting State Court Proceedings in Muscogee County, Georgia That Interfere With this Court's Continuing Jurisdiction over this Litigation has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 29th day of October, 2010.

  Additionally, a copy of the foregoing Plaintiffs' Steering Committee's Reply Memorandum of Law in Support of its Motion to Enjoin Conflicting State Court Proceedings in Muscogee County, Georgia That Interfere With this Court's Continuing Jurisdiction over this Litigation will be served via FedEx to the following parties, on the 29th day of October, 2010:

The Honorable Bobby Peters
Superior Court Judge
100 10th Street
Columbus, GA 31901

Austin Gower, Esquire
1425 Wynnton Road
Columbus, GA 31906

Don Barrett, Esquire
Don Barrett, PA
404 Court Square
Lexington, MS 39095

Patrick W. Pendley, Esquire
Pendley, Baudin & Coffin, LLP
24110 Eden Street
Plaquemine, LA 70764

Witt Lovelace, Esquire
Lovelace Law Firm, PA
12870 US Hwy. 98 West
Miramar Beach, FL 32550

Jannea S. Rogers, Esquire
Adams and Reese, LLP
11 N. Water Street, Ste. 23200
Mobile, AL 36602

William B. Gaudet, Esquire
Francis V. Liantonio, Jr., Esquire
Adams and Reese, LLP
701 Poydras Street, Ste. 4500
New Orleans, LA 70139

David P. Matthews, Esquire
Matthews & Associates
2905 Sackett Street
Houston, TX 77098

  /s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*