## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED | * | MDL No. 2:09-md-02047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to:** | * | |
| | * | |
| ROBERT C. PATE, as Trustee for the | * | |
| Chinese Drywall Trust | * | MAGISTRATE WILKINSON |
| v. | * | |
| AMERICAN INTERNATIONAL SPECIALTY | * | |
| LINES INSURANCE COMPANY, ET AL | * | |
| (**2:09-cv-07791**) (E.D. La.) | * | |
| | * | |

*********************************************

## REPLY MEMORANDUM IN SUPPORT OF OWNERS INSURANCE COMPANY'S MOTION TO DISMISS ORIGINAL AND FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

**May it Please the Court:**

Comes now OWNERS INSURANCE COMPANY ("Owners"), a defendant in the above-styled cause, and submits this Reply Memorandum in Support of its Motion to Dismiss for Lack of Jurisdiction and Improper Venue (Rec. Doc. 3302).  For the reasons stated below, Owners respectfully requests this Court grant Owners' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

### I.      BACKGROUND

On December 23, 2009, Pate, in his alleged capacity as Trustee for the WCI Communities, Inc. Chapter 11 bankruptcy Chinese Drywall Trust, instituted this action against various insurer defendants. Pate originally filed suit against Auto-Owners Insurance

Company ("Auto-Owners") as the alleged insurer of Hinkle Drywall, LLC, a Florida corporation. (Complaint, ¶45; Rec. Doc. No. 1 filed in underlying Case No. 09-7791). Pate then filed a First Amended Complaint on March 15, 2010, which replaced Auto-Owners with Owners Insurance Company ("Owners") as the alleged insurer of Hinkle Drywall, LLC. (Complaint, ¶50; Rec. Doc. No. 1732). The First Amended Complaint does not allege any facts to establish that Owners is subject to personal jurisdiction in Louisiana.

Owners filed its Rule 12(b)(2) and 12(b)(3) Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction and Improper Venue. (Rec. Doc. 3302). In its Motion to Dismiss, Owners attached an affidavit from Scott Norris, who testified to the following: Owners is not licensed to write policies of insurance in Louisiana; Owners does not write policies of insurance in Louisiana; Owners does not maintain offices in Louisiana; Owners does not have employees in Louisiana; Owners does not solicit business from Louisiana residents; Owners does not advertise for business on any local radio or television outlet or in any publications in Louisiana; Owners does not collect premiums from Louisiana residents; and Owners has not designated a registered agent for service of process within the State of Louisiana.[1] Owners has also testified as follows:

> Q. Is Auto-Owners or Owners Insurance or any of those other companies that we've been discussing licensed to do business in the state of Louisiana?
>
> A. They are not.

---

[1] These facts have been briefed numerous times. *See* Affidavit of Scott Norris, ¶ 3, originally attached as Exhibit "A" to Owners' Motion to Dismiss First Amended Complaint for Lack of Jurisdiction and Improper Venue (Rec. Doc. 3302) and also attached as Exhibit "E" to Owners' Opposition to Plaintiffs' Steering Committee and Robert C. Pate's Second Joint Motion to Compel (Rec. Doc. 5640) and attached hereto as Exhibit "A."

Q. Auto-Owners or Owners Insurance or those other companies, do they write insurance in Louisiana?

A. They do not.

Q. Does Auto-Owners or Owners Insurance or the other companies that we've been talking about maintain any offices within the state of Louisiana?

A. They do not.

Q. Do Auto-Owners or Owners or any other insurance companies that we've been speaking about maintain any employees in the state of Louisiana?

A. They do not.

Q. Does Auto-Owners or Owners or these other companies have any agents in the state of Louisiana?

A. They do not.

Q. Does Auto-Owners or Owners or these other companies that we've been talking about have any Louisiana insureds?

A. They do not.

Q. Does Auto-Owners or Owners or the other companies we've been talking about solicit any business in Louisiana?

A. They do not.

Q. Does Owners -- Auto-Owners or Owners or the other companies we've been talking about advertise for any business in Louisiana, whether it be radio, TV, billboards, etcetera?

A. They do not.

Q. Does Auto-Owners or Owners or any of the companies that we've been talking about have any registered agents for the service of process --

A. They do not.

Q. -- in Louisiana?

A. They do not.[2]

Plaintiffs contend that Owners is subject to personal jurisdiction because: (1) Owners "has made payments on approximately 340 claims directed at Louisiana addresses…of approximately half a million dollars each year for the five years"[3]; (2) Owners' parent company, Auto-Owners Insurance Company, has instituted litigation in Louisiana[4]; and (3) Owners has a security interest in Louisiana.[5]  However, as discussed *supra*, this is not sufficient to establish Owners' systematic and continuous contacts with the state of Louisiana.

In order to garner a representative sampling contained in the claims files, Owners complied with this Court's October 20, 2010 Minute Entry (Rec. Doc. 6012) and allowed Plaintiffs to choose a starting point from which to produce information related to every tenth claims file of the 340 claims files identified with regard to payment to a Louisiana resident.  Of the thirty-five claims files reviewed, twenty-nine claims relate to automobile policies.  Eight of the twenty-nine automobile incidents did not occur in Louisiana.  Four of the claims files relate to commercial general liability policies, of which two claims did not arise out of an event occurring in Louisiana.  The final two claims files relate to garage liability, of which only one arises from an event occurring in Louisiana.  As the Court can see, more than 80% of claims paid to a Louisiana resident arose from automobile incidents, and of the remaining claims, half did not even arise from an event occurring in Louisiana.

---

[2] *See* Deposition Transcript of Owners at 131:11 – 133:4, originally attached as Exhibit "F" to Owners' Opposition to Plaintiffs' Steering Committee and Robert C. Pate's Second Joint Motion to Compel (Rec. Doc. 5640) and attached hereto as Exhibit "B."
[3] *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, filed under seal, pp. 39-42.
[4] Id.
[5] Id.

Furthermore, while Owners' parent company has initiated litigation in Louisiana, it is imperative to note that the two cases Plaintiffs refer the Court to were decided nearly forty years ago.[6]   Likewise, Owners admits that its parent company has one security interest in Louisiana.  Owners testified as follows:

> Q. … And I guess the question would be, if you are, are you investing in individual companies in Louisiana, securities or otherwise, directly versus a mutual fund?
>
> A. There is one security that I'm aware of in Louisiana. And other than that, nothing.
>
> Q. And that is an investment by Auto-Owners Insurance Company that you're aware of, correct?
>
> A. It's part of our portfolio. I don't know that you'd call it -- it's part of the investment department and -- but it involves a security, so you're asking me -- I'm a little outside of my comfort zone to know the difference between a security and let's say having an ownership interest in a company in Louisiana.
>
> Q. I understand. You have no ownership interest in companies in Louisiana?
>
> A. We do not.
>
> ***************
> Q. You indicated that Auto-Owners does own a security in a Louisiana company. Are you a significant shareholder in that company?
>
> A. We're not a shareholder at all.
>
> Q. You just own stock in the company or an interest -- or why don't you tell me your understanding of it?

---

[6] Plaintiffs direct the Court to *Auto Owners Ins. Co. v. Freret*, 280 So. 2d 638 (La. Ct. App. 1973), a case dealing with an attempt to recover funds paid for an automobile accident, and *Auto-Owners Ins. Co. v. Plaisance*, 225 So. 2d 236 (La. Ct. App. 1969), a case dealing with subrogation claims.  *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, filed under seal, p. 40.

A. We bought debt.[7]

For the reasons more fully discussed below, (1) paying claims to Louisiana residents, whether the incident occurred in Louisiana or otherwise; (2) filing two lawsuits over forty years ago; (3) and owning one security interest in the form of a debt can hardly establish Owners' systematic and continuous contacts with Louisiana in order to confer personal jurisdiction.   Therefore, Owners respectfully requests this Court grant Owners' Motion to Dismiss for Lack of Personal Jurisdiction.

## II.    LAW AND ARGUMENT

The sole basis for personal jurisdiction over Owners hinges upon whether it has "continuous, systematic and substantial contacts with Louisiana."  *Turan v. Universal Plan Inv. Ltd.*  70 F. Supp. 2d 671, 674 (E.D. La. 1999).   Factors the Court may consider to determine whether Owners' contacts with Louisiana are continuous, systematic and substantial are: (1) does the defendant directly market or promote business in Louisiana; (2) does the defendant have any tangible property in Louisiana such as bank accounts or real property; (3) does the defendant maintain an office of other place of business in Louisiana; and (4) the amount of business the defendant does in Louisiana.  *DNH L.L.C. v. In-N-Out Burgers,* 381 F. Supp. 2d 559, 565 (E.D. La. 2005).

Owners' parent corporation, Auto-Owners, recently dealt with similar jurisdictional issues.  The District Court for the Northern District of Texas found that no general personal jurisdiction existed over Auto-Owners because the plaintiff could not prove that Auto-Owners had any business presence in the State of Texas.  *American Bank v. Auto-Owners*

---

[7] *See* Deposition Transcript of Owners at 50:5 – 51:14, attached hereto as Exhibit "C."

6

*Mutual Fire & Casualty Ins. Co.,* 2010 WL 3784282 at *7 (N.D. Tex. 2010).  As is the case in the present litigation, the *American Bank* court held that:

> Plaintiff had neither alleged nor adduced evidence that defendant owns any property in Texas, has employees who work in, or travel to Texas, is currently licensed in Texas, or conducts business of any kind in Texas.  The contacts proved by plaintiff are far less than those which the Supreme Court and the Fifth Circuit have found insufficient for a finding of general jurisdiction.  Plaintiff's evidence does not show the type of "substantial, continuous and systematic contacts required for a finding of general jurisdiction.

*Id.* (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610-611 (5th Cir. 2008)).

The *American Bank* court relied heavily on two other cases arising out alleged contacts with Texas.  In the leading Supreme Court case concerning general jurisdiction, the Court found general jurisdiction lacking despite the defendant's extensive contacts with Texas, including the purchase of approximately eighty percent of its helicopter fleet, parts, and accessories from a Texas company, sending prospective pilots and management and maintenance personnel to Texas for training and consultation, sending its chief executive officer into Texas to negotiate a contract, and accepting a $5 million check drawn on a Texas bank.  *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416-419 (1984).  The Fifth Circuit in *Access Telecom, Inc. v. Telecommunications Corp.* likewise affirmed a finding of no proof of general jurisdiction even though the defendant had "numerous" contacts with Texas over a period of years, including leasing telephone lines and real property in the state, paying taxes in Texas, contracting to warehouse 75,000 telephone poles in Texas, and receiving revenue from Texas residents totaling millions of dollars per month.  197 F.3d 694, 717 (5th Cir. 1999).  The court concluded that defendant's contacts failed to demonstrate a business presence in Texas sufficient to sustain general jurisdiction.

*Id.*; *see also Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir. 1987) (no personal jurisdiction where nonresident defendant had no employees in forum state even though Beach sold $250 million of goods in the forum state through contracts entered into and executed in other states and purchased $195 million of products from Texas companies); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir.1990) (holding that general jurisdiction did not exist even though 12.9% of the company's charter boat  revenues were generated in Louisiana, the defendant engaged in advertising which reached Louisiana, and purchased vessels in Louisiana).

As compared with these cases, Owners' contacts with the forum state are far less substantial, systematic and continuous.  Owners has already testified that Owners is not licensed to write policies of insurance in Louisiana; Owners does not write policies of insurance in Louisiana; Owners does not maintain offices in Louisiana; Owners does not have employees in Louisiana; Owners does not solicit business from Louisiana residents; Owners does not advertise for business on any local radio or television outlet or in any publications in Louisiana; Owners does not collect premiums from Louisiana residents; and Owners has not designated a registered agent for service of process within the State of Louisiana.[8]

In order to establish jurisdiction, Plaintiffs rely on Owners and its related entities mailing payments to Louisiana residents or entities.  However, jurisprudence dictates that Owners' payment of a claim to some resident or entity on behalf of some event that occurred in Louisiana does not confer personal jurisdiction.  *Choice Healthcare, Inc., et al. v. Kaiser Foundation Health Plan of Colorado, et al.*, 615 F.3d 364 (5th Cir. 2010).  A

---

[8] *See* Affidavit of Scott Norris, ¶ 3, attached hereto as Exhibit "A"; *see also* Deposition Transcript of Owners at 131:11 – 133:4, attached hereto as Exhibit "B."

defendant's intermittent payments to Louisiana over the course of more than three years [are] insufficient to establish "continuous and systematic" contact with the forum state.  *Id*. The mailing of payments to residents and/or entities located in a state also does not confer personal jurisdiction.  *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985).

Plaintiffs also point the Court to two lawsuits that Auto-Owners filed in Louisiana over forty years ago.  Like mailing payments to Louisiana residents, the fact that Owners has engaged in other litigation is not indicative of minimum contacts.  *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 n. 4 (5th Cir. 1990).  In assessing whether initiating a lawsuit can establish minimum contacts with the forum state, the Fifth Circuit has held that general jurisdiction can be determined by evaluating contacts of the defendant with the forum over a *reasonable number of years*, up to the date the suit was filed.  *Access Telecom, Inc.*, 197 F.3d at 717 (emphasis added).  Accidents which occurred more than ten years ago are simply too remote in time to be relevant to this Court's decision of whether to assert jurisdiction over Owners now.  *See Paolino v. Argyll Equities*, *L.L.C.*, 401 F.Supp.2d 712, 720 (W.D. Tex. 2005).  These two isolated and sporadic lawsuits which were initiated over forty years ago can hardly confer general personal jurisdiction over Owners.

To make the point that Owners is subject to jurisdiction in the State of Louisiana, even though Owners has no business presence in the state and does not issue policies to Louisiana residents, Plaintiffs rely heavily on *Aetna Casualty & Surety Co. v. Continental Western Ins. Co.*, 704 So. 2d 900 (La. App. 4 Cir. 1997).  But Plaintiffs miss the mark and overlook the distinction between *Aetna* and the present case.  The *Aetna* court stated that:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.   The application of that rule will vary with the quality and nature

> of the defendant's activity, but it is essential in each case
> that there be some act by which the defendant purposefully
> avails itself of the privilege of conducting activities within
> the forum State, thus invoking the benefits and protections
> of its laws.

*Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 at 474-475 (1985)).  In *Aetna*, the

foreign defendant insurance company, Continental, argued that the court could not exercise

general jurisdiction over it because it was not admitted as an insurer in Louisiana, was not

licensed to do business in Louisiana, did not solicit insurance business in Louisiana, did not

issue policies of insurance to residents of Louisiana, did not collect or receive premiums

from anyone in Louisiana, had no assets or property in Louisiana, paid no taxes in

Louisiana, did not advertise or solicit business in Louisiana, and had no office, agents, or

employees in Louisiana.  704 So. 2d at 903.  But the *Aetna* court correctly points out that

the *Aetna* case was an issue of specific jurisdiction, not general jurisdiction.  *Id*.  Thus, the

court found that Continental was subject to specific personal jurisdiction in Louisiana

because the incident pertaining to the Continental's policy of insurance occurred in

Louisiana.  *Id*. at 905.  "Continental's 'contact' with Louisiana was providing a policy of

liability insurance allegedly covering a risk that was centered in Louisiana.  Under that

contract Continental agreed to defend and/or indemnify for damages in the coverage

territory, including Louisiana."  *Id*. at 904.

The Fifth Circuit imposes a "high standard set by the Supreme Court" to establish

general jurisdiction, and recognizes "just how difficult it is" to meet the standard.

*Johnston*, 523 F.3d at 610-611.  Simply put, the *Aetna* case and the present litigation raise

different issues.  The *Aetna* case was a determination of specific jurisdiction.  Thus, the

*Aetna* court did not have to examine systematic and continuous contacts.  The incident

giving rise to *Aetna* litigation occurred in Louisiana.  There is no dispute in the present litigation that the alleged workmanship performed by Owners' insured, Hinkle Drywall, LLC, occurred in Florida.  Hinkle is a Florida company, with its principal place of business in Florida at al relevant times.  The present issue before the court is markedly different than the *Aetna* case: whether Owners is subject to general personal jurisdiction and whether Owners has substantial, systematic and continuous contacts sufficient enough to confer that jurisdiction.

Both the Fifth Circuit and this District have recognized that general as opposed to specific jurisdiction is a difficult standard to meet.  *Submersible Systems, Inc. v. Perforadora Central, Inc.*, 249 F.2d 413, 419 (5th Cir. 2001); *Galapagos Corp. Turista Galatours S.A. v. Panama Canal Com'n.*, 2002 WL 389143 (E.D. La. 2002) (granting motion to dismiss for lack of jurisdiction); *DNH*, 381 F.Supp.2d at 563; *Mykhaylov v. Masaic Maritime, Inc.*, 2004 WL 2472480 at *3 (E.D. La. 2004) ("…. the continuous and systematic contacts is a difficult one to meet, requiring extensive contacts between a defendant and a forum") (quoting *Moore's Federal Practice* ¶ 108.41[3] (3rd Ed. 1999); *J.M. Huber Corp. v. Pan Amer. Express, Inc.*, 118 F.Supp.2d 764, 767 (S.D. Tex. 2000) (the minimum contacts review is more demanding for general jurisdiction and requires the plaintiff to demonstrate substantial activities in the forum state).

Owners contends that it does not have contacts with the State of Louisiana that are substantial, systematic or continuous enough to confer jurisdiction.  Instituting two lawsuits over forty years ago is not a contact substantial, systematic or continuous enough to confer jurisdiction.  Having one security interest in the form of a debt is not a contact substantial, systematic or continuous enough to confer jurisdiction.  Mailing payments to residents in

the forum state is not a contact substantial, systematic or continuous enough to confer jurisdiction. Therefore, Owners is not subject to general personal jurisdiction in the State of Louisiana.

Plaintiffs' alternate argument is that jurisdiction over Owners would not be so unreasonable as to offend the traditional notions of fair play and substantial justice.[9] It is important to note at the outset that if the Court finds that Owners lacks sufficient minimum contacts with the forum state, the Court "need not consider the 'fairness' prong of the jurisdictional inquiry." *American Bank*, 2010 WL at *7. Although Owners contends that it lacks contacts sufficient to confer general personal jurisdiction with the State of Louisiana and, therefore, the Court need not consider the fairness prong, it is Owners' position that requiring Owners to defend itself in Louisiana does offend the traditional notions of fair play and substantial justice.

The factors to consider to determine whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" are 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, 5) the shared interest of the states in furthering fundamental substantive social policies. *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiffs' main argument, insofar as it relates to relates to Owners, is two-fold: (1) Pate will be unduly

---

[9] *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, filed under seal, pp. 42-43.

burdened if he must litigate the case elsewhere; and (2) because Owners has commenced lawsuits in Louisiana, it is not unfair to require Owners to defend a lawsuit in Louisiana.[10]

First, Pate will not be unduly burdened if the litigation proceeds in a forum outside of Louisiana.  Indeed, all twenty-one insurers can be sued in the Middle District of Florida.  This should come as no surprise since all insurers involved in these cases entered into insurance contracts with Florida insureds who built homes in Florida.  There simply is no basis to bring Owners into a Louisiana court to interpret Florida policies with relation to construction activities in Florida.  Pate, a Texas resident, will be no more inconvenienced or unduly burdened in a Florida court than he would in a Louisiana court.  Second, the fact that Owners initiated two lawsuits in Louisiana over forty years ago does not mean that it would be "fair" to expect Owners to now defend itself in a state where it has insufficient contacts to establish personal jurisdiction.  *See Access Telecom, Inc.*, 197 F.3d at 717; *see also Paolino*, 401 F.Supp.2d at 720.  Therefore, requiring Owners to defend itself in a Louisiana court, where Owners lacks the requisite minimum contacts to establish jurisdiction, does violate the traditional notions of fair play and substantial justice.

## III.     CONCLUSION

For the foregoing reasons, Owners Insurance Company respectfully requests this Court to grant Owners' Motion to Dismiss for Lack of Personal Jurisdiction.

---

[10] *Id.*

Respectfully submitted:

**LEAKE & ANDERSSON LLP**

*/s/ Amanda W. Vonderhaar*
_____

**JERRY L. SAPORITO, T.A.  (#11717)**
jsaporito@leakeandersson.com
**W. PAUL ANDERSSON (#2474)**
pandersson@leakeandersson.com
**AMANDA W. VONDERHAAR (#31350)**
avonderhaar@leakeandersson.com
1700 Energy Center
1100 Poydras Street
New Orleans, Louisiana 70163-1701
Telephone: (504) 585-7500
Fax: (504) 585-7775

**-AND-**

**MORROW, ROMINE & PEARSON P.C.**

*/s/ Roger S. Morrow*
_____

**ROGER S. MORROW** (pro hac vice)
rsmorrow@mrplaw.com
Post Office Box 4804
Montgomery, Alabama 36103-4804
Telephone: (334) 262-7707
Fax: (334) 262-7742

***Attorneys for Owners Insurance Company,
Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Reply Memorandum in Support of Owners Insurance Company's Motion to Dismiss Original and Amended Complaint for Lack of Personal Jurisdiction and Improper Venue** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United states District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 29th day of October, 2010.

*/s/ Amanda W. Vonderhaar*
_____

AMANDA W. VONDERHAAR