**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO.:  2047 |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *Pate v. American International Specialty Lines Insurance Co. et al.* (09-7791) | MAGISTRATE JUDGE WILKINSON |
| *Centerline Homes Constr. Inc. et al. v. Mid-Continent Casualty Co. et al.* (10-178) | |
| *Northstar Holdings, Inc. et al. v. General Fidelity, Inc. et al.* (10-384) | |

**MID-CONTINENT CASUALTY**
**COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Pursuant to this Honorable Court's Order entered on August 5, 2010 (R.D. No. 4873),

Mid-Continent Casualty Company submits the following Reply Memorandum in Support of its

pending Motions to Dismiss for Lack of Personal Jurisdiction.  (R.D. Nos. 2282, 2298 and

2843).  Although, this Reply Memorandum is limited to the issue of personal jurisdiction, Mid-

Continent Casualty Company does not abandon or otherwise waive its arguments regarding the

alternative relief requested in the referenced Motions, which is to transfer the venues of these

actions pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1406(a).

## ARGUMENT

Robert C. Pate as Trustee for the Chinese Drywall Trust ("Pate"), the Plaintiff's Steering Committee ("PSC"), Centerline Homes Construction, Inc. ("Centerline"), and Northstar Holdings, Inc. ("Northstar" and collectively as "Plaintiffs") cannot overcome the fact that their lawsuits have no connection with Louisiana—a fact conveniently omitted from their description of their respective actions.  Response at pp. 3-5.  Rather, their lawsuits exclusively involve single-family homes, villas, condominiums, and luxury high rise towers constructed in Florida and built by Floridians.  The complaints were filed in Louisiana by either a Texas resident (Pate) or Florida corporations (Centerline and Northstar), neither of which maintains their principal place of business in Louisiana.  None of the Plaintiffs allege that any injury or damage occurred in Louisiana or to even one Louisiana citizen.

In addition, the Plaintiffs fail to address that each of the Mid-Continent Casualty Company ("MCC")  policies contain a designated work exclusion which expressly designates Louisiana as a state where coverage is precluded for construction projects of any kind.  There can be no clearer intent based upon this policy provision that when MCC agreed to insure 1st Choice Construction, Inc., Finest Drywall, Inc., Distinctive Finishes, LLC, Steve Sweet Drywall, and Swedberg Enterprises, Inc. d/b/a Florida Drywall, (hereinafter the "Subcontractors") that it did not expect to be haled into Louisiana to litigate whether its Florida policies provide coverage for property damage and bodily injury claims involving Florida homes and Florida citizens.  Under these facts, this Court should not exercise jurisdiction over MCC in Louisiana as to do so offends the traditional notions of fair play and substantial justice.

## PLAINTIFFS FAIL TO RECOGNIZE THE DISTINCTION
## BETWEEN SPECIFIC AND GENERAL JURISDICTION

Contrary to the Plaintiffs' assertion, MCC never argued that the cause of actions set forth in Plaintiffs' complaint must arise from MCC's transaction of business in Louisiana.  Response at pp. 16-17.  Rather, MCC was drawing the important distinction between specific and general jurisdiction.  Both the Fifth Circuit and this District have recognized that general as opposed to specific jurisdiction is a difficult standard to meet.  *Submersible Systems, Inc. v. Perforadora Central, Inc.* 249 F.2d 413, 419 (5th Cir. 2001); *Galapagos Corp. Turista Galatours S.A. v. Panama Canal Com'n* 2002 WL 389143 (E.D. La. 2002) (granting motion to dismiss for lack of jurisdiction); *DNH LLC v. In-N-Out Burgers*, 381 F.Supp.2d 559, 563 (E.D. La. 2002) (same); *Mykhaylov v. Masaic Maritime, Inc.*, 2004 WL 2472480 at *3 (E.D. La. 2004) ("…. the continuous and systematic contacts is a difficult one to meet, requiring extensive contacts between a defendant and a forum" quoting *Moore's Federal Practice* ¶ 108.41[3] (3rd Ed. 1999)); and *J.M. Huber Corp. v. Pan Amer. Express, Inc.,* 118 F.Supp.2d 764, 767 (S.D. Tex. 2000) (the minimum contacts review is more demanding for general jurisdiction and requires the plaintiff to demonstrate substantial activities in the forum state).  In order to meet this difficult standard, unlike specific jurisdiction the Plaintiffs have a much higher burden to prove the contacts necessary for the Court to exercise general jurisdiction. *Fogarty v. U.S. Truck, Inc.* 2005 WL 3982061 at *4 (N.D. Tex. 2005) and *Norwood v. Teather,* at *2 (2005 WL 723863 (N.D. Tex. 2005).

In fact, the United States Supreme Court noted that it has upheld an exercise of personal jurisdiction when the suit was unrelated to the defendant's contacts with a forum only once.  *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 416 (1984).  After observing

this fact, the Court declined to exercise jurisdiction in *Helicopteros*, even though it sent its chief executive officer to Texas to negotiate a contract, accepted money from Texas banks, purchased substantial amounts of equipment from Texas companies and sent its employees to Texas for training.

At no time has MCC attempted to hide its business activities in Louisiana.   MCC admitted that it sells both insurance and surety bonds in Louisiana.  *See* Affidavit of Mike Coon [DE 1318-2] and MCC's verified answers to Interrogatories [DE 5380].  MCC also provided the total amount of premium and policies sold and claims paid for the past five years in Louisiana. *Id.*   The fact that Plaintiffs verified the information already provided by MCC through the cumulative testimony of its independent agents did not materially alter the information already provided by MCC in its affidavits and discovery responses.  Rather, MCC argued that based on its contacts with Louisiana, it was not amenable to general personal jurisdiction in Louisiana in this case as to hale it into this forum violates due process.   *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir.1993) (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *R.S. 13:3201*(B); *Ruppert v. Geo. Kellett & Sons*, 996 So. 2d 501, 505 (La. App. 5th Cir 2008) (*citing Superior Supply Co. v. Assoc. Pipe and Supply Co.*, 515 So. 2d 790, 792 (La. 1987)); *Tsaoussidis v. State Farm Mutual Auto. Ins. Co.*, 2009 WL 3448133 (5th Cir. 2009).  As such, whether MCC is subject to personal jurisdiction "is a one-step analysis of the constitutional due process requirements." *Ruppert*, 996 So. 2d at 505-06; *See also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) ("the exercise of jurisdiction [over a non-resident defendant] … must comport with norms imposed by the due process clause

of the fourteenth amendment."). Here, Plaintiffs cannot meet their substantial burden to establish jurisdiction over MCC.

Plaintiffs agree that the factors of whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" are 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, 5) the shared interest of the states in furthering fundamental substantive social policies. *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993) (citing *Int'l Shoe Co.*, 326 U.S. at 316).

None of the factors favor personal jurisdiction in Louisiana. First, MCC will incur a financial burden to defend this suit in Louisiana about a Florida matter. In response, Plaintiffs assert there is no burden since MCC "often" litigates matters in Louisiana. Response at p. 29. According to the Plaintiffs 11 matters from 2002 to 2010 is often. In fact, three of the so called newer matters involved automobile accidents in which MCC was named since insurers can be sued directly under Louisiana state law. In addition, both *Boudreaux v. Mid-Continent Cas. Co.*, 950 So. 2d 839 (La. Ct. App. 2006) and *Keener v. Mid-Continent Cas. Co.*, 817 So. 2d 347 (La. Ct. App. 2002) involve 1998 automobile accidents. Accidents which occurred more than ten years ago are simply too remote in time to be relevant to this Court's decision of whether to assert jurisdiction over MCC now. *See Paolino v. Argyll Equities, L.L.C.* 401 F.Supp.2d 712, 720 (W.D. Tex. 2005) and *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000) (only contacts for a reasonable number of years up to the time suit is filed is relevant, quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). The same can

be said of *Rowley, Hansell Peterin v. Mid-Continent Cas Co.,* 2004 WL 1661203 (E.D. La. 2004) and *Cableguard Systems Inc, Inc. v. Mid-Continent Cas. Co.,* 73 Fed. Appx. 28 (5th Cir 2003). *Rowley* involved a 2001 contract while *Cableguard* involved a 1997 contract. A majority of the other cases cited by the Plaintiffs refer to cases filed in 2004 or earlier. *See, e.g. Mid-Continent Cas. Co. v. GCI Construction, Inc.,* Case No. 03-00819; *Alexander/Ryan Marine & Safety Co. and Mid Continent Cas. Co. v. Noble Drilling (U.S.), Inc.* Case No. 03-03104 and *Mid-Continent Cas. Co. v. The Housing Authority of New Orleans,* Case No. 04-01869. Each of these cases were filed before 2005, or prior to the date this Court established as the earliest relevant date for jurisdictional discovery in this case. Thus seven of the 11 cases cited by the Plaintiff are simply too remote in time to trigger general jurisdiction. Moreover even if MCC was called into or filed 11 cases in Louisiana these cases do not negate the financial burden of litigating a case involving Florida insureds and hundreds of Florida claims in Louisiana.[1] For example, in the coverage cases inspections of the properties, depositions of fact witnesses, and experts all must occur in Florida. In fact, Plaintiffs have not identified a single witness with facts relevant to this coverage dispute in Louisiana.

Second, this Court does not have an interest in adjudicating Plaintiffs' claims, as the cause of action occurred in Florida and Plaintiffs are either a Texas resident or Florida corporations. In response, Plaintiffs' claim that Louisiana has a strong interest in litigation concerning Louisiana citizens. Response at pp. 30-31. The problem with this argument is that none of the cases here involve Louisiana citizens and since MCC does not insure construction

---

[1] *Washington v. Baker Petrolite Corp.,* 2010 WL 343094 at *3 (E.D. La. 2010) is distinguishable. First, the admission regarding personal jurisdiction was in a nearly identical case. That is not the case here. Second, *Washington* also involved specific jurisdiction since the incident occurred in Louisiana to a Louisiana resident.

activities in Louisiana, this state has no interest in protecting Louisiana citizens who have similar insurance with MCC.

Third, since there is no connection between these insurance coverage disputes and Louisiana, litigating these suits in Louisiana would only create inconvenience and additional cost to the parties.  Plaintiffs do not even attempt to argue otherwise.

Fourth, the most efficient resolution of this case cannot be in Louisiana, because jurisdiction is lacking as to certain insurers and MCC's Subcontractors cannot be sued in Louisiana.  Plaintiffs assert without any support that dismissal will contravene the goal of efficient administration of justice since Pate may have to sue the various insurance companies in different jurisdictions.  Response at p. 31.  This assertion is false.  As Plaintiffs well know all 21 insurers can be sued in the Middle District of Florida.  This should come as no surprise since all insurers involved in these cases entered into insurance contracts with Florida insureds who built homes in Florida.  Moreover, unlike these Louisiana suits, the Florida litigation already includes MCC's named insureds under which WCI, Northstar, and Centerline (under the United Framer's policy) claim to be additional insureds.  Thus, the most efficient forum is Florida since all of the parties and insurers can be sued in Florida.  Those cases are pending, motions to dismiss or transfer those cases have been denied and case management orders have been entered which will allow for a prompt resolution of these law based insurance coverage disputes. *See* copies of orders denying the Plaintiffs' Motions to Dismiss and to transfer, Orders by the Judicial Panel of Multidistrict Litigation specifically rejecting to transfer these three cases, as well as the Florida

Court's Scheduling Orders attached as Composite Exhibit "A."[2]  Only the dismissal of the cases filed in this MDL will allow all of the necessary parties to adjudicate their disputes in one forum.

Lastly, having this Court decide coverage for Florida corporations and Florida citizens does not further any social policies and, once again, Plaintiffs really do not argue otherwise. Response at p. 31.  There simply is no basis to bring MCC into a Louisiana court to interpret Florida policies with relation to construction activities in Florida.  Moreover, the purpose of an MDL procedure is not to provide bellwether arguments that other courts will look to for guidance.  Rather the purpose of the MDL is to handle pre-trial procedures and then refer cases transferred into an MDL back to those courts so local courts handle local matters to conclusion. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 41-42 (1998).

## MCC'S CONTACTS WITH LOUISIANA
## ARE INSUFFICIENT TO INVOKE GENERAL PERSONAL JURISDICTION

Plaintiffs make no attempt to distinguish any of MCC's cases which establish that the amount of business transacted by MCC in Louisiana is insufficient to establish continuous, systematic and substantial contacts with Louisiana.  *Turan v. Universal Plan Inv. Ltd.*  70 F.Supp.2d 671, 674 (E.D. La. 1999); *Sasnett v. Iowa State Traveling Men's Ass'n,* 90 F.2d 514 (8th Cir. 1937) (the mere insuring of residents in a foreign state does not constitute "doing business" in the state of the insured). *See also, Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir. 1987) (no personal jurisdiction where nonresident defendant had no employees in forum state even though Beach sold $250 million of goods in the forum state through contracts entered into and executed in other states and purchased $195 million of products from Texas companies);

---

[2] Centerline does not have a Case Management Order. However, the Honorable Judge Seitz has ordered the parties to file one by November 12, 2010. A copy of the Order is also part of Composite Exhibit "A."

*LeBlanc v. Patton-Tully Trans. LLC,* 138 F.Supp.2d 817, 819 (S.D.Tex. 2001) (court concluded that exercise of jurisdiction in Texas offended traditional notions of fair play even though defendant derived 13% of its revenue in Texas where accident involved a Louisiana resident and the cause of action arose in Mississippi); *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1362 (5th Cir.1990) (holding that general jurisdiction did not exist even though 12.9% of the company's charter boat  revenues were generated in Louisiana, the defendant engaged in advertising which reached Louisiana, and purchased vessels in Louisiana); *Helicopteros, supra,* 466 U.S. at 411, 417-18 (holding that the non-resident defendant's purchase of 80% of its helicopter fleet, as well as spare parts and accessories for the aircraft, at a cost of several million dollars over a seven-year period was not sufficient to support the exercise of general jurisdiction where that activity was not related to the cause of action sued upon); *Access Telecom, Inc. v. MCI Telecom. Corp.,* 197 F.3d 694, 717-718 (5th Cir. 1999) (finding no general jurisdiction even though defendant's "revenues derived from Texas residents totaled millions of dollars a month"); *Smirch v. Allied Shipyard, Inc.,* 164 F.Supp.2d 903, 910-11 (S.D. Tex. 2001) (no jurisdiction where defendant corporation had 50 customers in Texas, regularly solicited and collected millions of dollars from those customers in Texas and previously been sued or defended lawsuits in Texas).

As compared to these cases, MCC's contacts with Louisiana are far less.  As set forth in Michael Coon's Affidavit and MCC's discovery responses, in the past four years, MCC's total premium generated in Louisiana, as compared to MCC's total premium revenue nationwide was approximately between one tenth and three quarters of one percent.  Moreover, merely entering into insurance contracts from Oklahoma is doing business with as opposed to in the state, and is insufficient to invoke this Court's jurisdiction.  *Hunter v. Serv-Tech, Inc.* 2009 WL 2447999 at

*4 (E.D. La. 2009) (execution of an indemnity agreement with a Louisiana company is not a purposeful direction of activities toward Louisiana such that specific jurisdiction can be asserted). The same is true for paying claims to Louisiana residents from Oklahoma. *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado*, 2010 WL 3156773 at *2 (5th Cir. 2010) (payment of 53 claims over a three year period to Louisiana citizens is not continuous and systematic contact with Louisiana where defendant had no offices or other accounts in Louisiana noting that the Fifth Circuit had found general jurisdiction lacking where a defendant's forum contacts were even "more significantly substantial").

Plaintiffs argue that personal jurisdiction is not tied to the revenue of corporations so long as there are adequate minimum contacts. Response at pp.19-21. Each of the cases cited by the Plaintiffs is distinguishable. For example, *Haas Outdoors, Inc. v. Novelty, Inc.*, 2006 WL 1134234 at *3 (N.D. Miss. 2006) and *Luv N' Care, Ltd. v. Ins-Mix, Inc.*, 438 F.3d 465, 470-71 involve specific as opposed to general jurisdiction as the defendants in those cases sold the allegedly infringing product through stores located in Mississippi and Louisiana. In fact, this Court refused to file *Luv N' Care* on that basis in *Starfleet Marine Transportation, Inc. v. Kobelt Manufacturing Co.* 2006 WL 3087171 at *6 (E.D. La. 2006) (no personal jurisdiction where the product at issue ended up in Florida as opposed to Louisiana). *Sanders v. Ball*, 1999 WL 397921 at *4 (E.D. La. 1999) also involved specific as opposed to general jurisdiction since the defendant in that case injured a Louisiana resident. Finally, *Praetorian Specialty Ins. Co. v. Auguillard Constr. Co. Inc.* 2010 WL 2026655 at *6 (W.D. La. 2010) involved a specific jurisdiction analysis where the first suit that defendant filed was related to the second suit that defendant was fighting jurisdiction. As noted above the burden is far different on parties, such as

Plaintiffs here, attempting to assert specific as opposed to general jurisdiction.

Moreover, MCC's contracts with independent agents cannot be used to impute personal jurisdiction since they are separate and distinct entities. Response on pp. 20-21. *DP Solutions v. Rollins,* 24 Fed. Appx. 150 (5th Cir. 2002) and *Hamilton v. Mosiac Co.,* 2009 WL 2870215 (E.D. La. 2009). In fact, the very case cited by Plaintiffs supports this position. *Administrators of Tulane Educational Fund v. Biomeasure, Inc.,* 687 F.Supp.2d 620, 629 (E.D. La. 2009) ("Plaintiff's have not even attempted to demonstrate that Ipsen exercises sufficient control over Tercica to fuse the two for jurisdictional purpose, and the Court rejects this basis for exercising jurisdiction over Ipsen"). Moreover in the case of the independent agencies which are not located in Louisiana, Plaintiffs ignore the critical distinction between doing business with as opposed to doing business in the state of Louisiana. *King v. Hawgwild Air, LLC,* 2008 WL 2620099 at *4 (N.D. Tex. 2008) (explaining the difference between doing business in the state which can subject a defendant to personal jurisdiction from doing business with the state which does not).

The Plaintiffs only cite a few cases dealing with general jurisdiction. Each is readily distinguishable. In *Pacific Employers Ins. Co. v. M/T Iver Champion,* 1995 WL 295293 at *2-3 (E.D. La. 1995), one of the defendant's (Gard) most significant members was headquartered in New Orleans, Louisiana. Gard insured all of the vessels (about 1,000) owned by this member. In addition, Gard listed a Louisiana attorney as its correspondent who was specifically designated to perform services in Louisiana for its Louisiana insureds and one of its Committee members resided in Louisiana. Gard also made regularly scheduled visits to Louisiana. Finally, Gard's business in Louisiana represented 72% of all of its letters of guarantee issued in the United

States.   In stark contrast, MCC has no employees in Louisiana, does not make regularly scheduled visits to the state and its Louisiana business is just a small fraction of its United States business.

*Hicks v. American Heritage Life Ins. Co.*, 332 F.Supp. 2d 1193 (W.D. Ark. 2004) actually involved specific as opposed to general jurisdiction since the suit involved the life insurance policy issued by the defendant to an Arkansas citizen.   That is not the case here as none of MCC's policies in this case were issued to a Louisiana corporation nor does this suit involve a claim for property damage or bodily injury allegedly sustained by a Louisiana citizen.

*Dooley v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 1988 WL 28377 at *2 (D.D.C. 1998), involved a different long arm statute which allowed jurisdiction to attach if the corporation had *any* continuing corporate presence directed at advancing the corporation's objectives.   In reaching its decision the *Dooley* court recognized that its decision to confer jurisdiction was contrary to two prior decisions where the corporations in those cases derived less than 1% of their revenue in the District of Columbia.   *See Hughes v. A.H. Robins Co.*, 490 A.2d 1140 (D.C. 1985) and *Bayles v. K-Mart Corp.*, 636 F.Supp. 852, 855-56 (D.D.C. 1986).   Unlike *Dooley*, which has never been cited by another court, other courts have relied on *Hughes* and *Bayles* to determine if contacts similar to MCC's contacts were sufficient to invoke personal jurisdiction. Finally, *Dooley* is inconsistent with the law of this Circuit, which holds that a corporation does not submit itself to personal jurisdiction by merely registering to do business in that state. *Wenche Siemer v. Learjet Acquisition, Corp.*, 966 F.2d 179, 181 (5th Cir. 1992) (mere appointment of an agent to do business without more does not establish personal jurisdiction).

Plaintiffs' cite *Hogue v. State Farm*, 2009 WL 2525751 at *5-6 (E.D. La. 2009) for the proposition that haling MCC into Louisiana will not offend the tradition notions of fair play. There are two significant differences between *Hogue* and this case. First, in *Hogue* the plaintiff was a Louisiana citizen and State Farm's policy provided coverage for Hogue's Louisiana residence. Second, the court noted that since State Farm was a national insurer using substantially the same coverage forms that Louisiana had a policy interest in protecting its citizens with similar insurance. That is not the case here since MCC's policies are specifically endorsed to preclude coverage for construction activities in Louisiana. This crucial distinction is why haling MCC into Louisiana offends the traditional notions of fair play and substantial justice. Additionally, Louisiana has no interest in this in this matter since the MCC policies were issued and delivered to Florida insureds. Therefore, Florida and not Louisiana law will govern this coverage dispute. The case of *Alden v. State Farm Fire and Cas. Co.* is distinguishable for the same reason. *Alden v. State Farm Fire and Cas. Co.*, 760 So. 2d 431, 434 (La. Ct. App. 2000) ("The resolution of this dispute may have an effect on the manner in which claims are settled…").

Next, Plaintiffs rely on *Aetna Cas. & Sur. Co. v. Continental Western Ins. Co.*, 704 So. 2d 900 (La. Ct. App. 1997). Like nearly every other case Plaintiffs rely upon, *Aetna* involves specific as opposed to general jurisdiction. *Id.* at 903. When analyzing whether the assertion of jurisdiction violated due process, the Court concluded that it would not be unreasonable or unfair to require an insurer to come to Louisiana when it refused to defend a Louisiana insured. *Id.* at 904. This is not the case here. The other cases cited by Plaintiffs also involve specific jurisdiction. *New Investment Properties, LLC v. ABC Ins. Co.*, 972 So. 2d 392 (La. App. 2007)

(real property that was insured was located in Louisiana), *Gulf South Lithotripsy, LLC v. North River Ins. Co.* 2008 WL 169705 (E.D. La. 2008) (insured property at issue located in Louisiana), and *A & L Energy, Inc. v. Pegasus Group*, 791 So. 2d 1266, 1272 La. 2001) (this case "involves specific, not general jurisdiction" and defendants contacts with Louisiana did not establish general jurisdiction).

Finally, Plaintiffs rely on *Trizec Properties, Inc. v. United States Mineral Products Co.*, 1990 WL 142017 (E.D. La. 1990).  Ironically, the *Trizec* court cited with approval two cases relied upon by MCC that  Plaintiffs made absolutely no attempt to distinguish.  *Id.* at *3 citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987) and *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359 (5th Cir. 1990).  Moreover the case is distinguishable for several important reasons.  First, U.S. Minerals' sales representatives made nearly monthly visits staying in Louisiana for as much as three days at a time, it trained Louisiana customers on-site how to use their products, advertised in two Louisiana publications, attended trade shows in Louisiana, and used the Port of New Orleans as a transshipment point to send its products overseas.  Second, unlike this case Louisiana was the only forum available for the suit as the other two states with a greater interest in the dispute were not available since the suit would have been barred by those state's statute of limitations.  The *Trizec* court observed that the "unavailability of other forums negates any claim that the suit would be more efficiently resolves elsewhere."  *Id* at *6.  This is not the case here, as the Plaintiffs are already defendants in Florida suits together with all of the necessary parties.  Finally, Louisiana had a strong interest in *Trizec*, which is not present in this matter since Louisiana had enacted a specific law to ensure the broad availability of asbestos abatement.  *Id.*

## <u>CONCLUSION</u>

These lawsuits have no connection with Louisiana. The complaints were filed in Louisiana by a Texas resident and Florida corporations neither of whom maintain their principal place of business in Louisiana. The lawsuits do not involve Louisiana insurance policies or any injury or damage that occurred in Louisiana or to its citizens.  As such, the principles of general jurisdiction and the corresponding heavy burden that accompanies that principle applies to plaintiffs—a burden the Plaintiffs cannot meet where, as here, the MCC policies contain a designated work exclusion which expressly designates Louisiana as a state where coverage is precluded for construction projects of any kind.  Based upon this policy provision, MCC did not reasonably expect to be haled into Louisiana to litigate whether its Florida policies provide coverage for property damage and bodily injury claims involving Florida homes and Florida citizens.  Therefore, this Court should not exercise general jurisdiction over MCC as to do so offends the traditional notions of fair play and substantial justice.

Respectfully submitted:

**LARZELERE PICOU WELLS SIMPSON**
**LONERO, LLC**
Two Lakeway Center – Suite 1100
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone:  (504) 834-6500
Facsimile:  (504) 834-6565


BY:  /s/Lee M. Peacocke
_____
**MORGAN J. WELLS, JR. (La. No. 18499)**
mwells@lpwsl.com
**LEE M. PEACOCKE (La. No. 18374)**
lpeacocke@lpwsl.com

**AND**

**HINSHAW & CULBERTSON LLP**
**RONALD L. KAMMER, T.A.**
(Fla. Bar No. 360859)
rkammer@hinshawlaw.com
**PEDRO E. HERNANDEZ**
(Fla. Bar No. 30365)
phernandez@hinshawlaw.com
9155 S. Dadeland Boulevard – Suite 1600
Miami, Florida 33156
Telephone:  (305) 428-5100
Facsimile:  (305) 577-1063
**ATTORNEYS FOR DEFENDANT,**
**MID-CONTINENT CASUALTY COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Mid-Continent Casualty Company's Reply in Support of its Motion to Dismiss has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail, or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice electronic filing in accordance with the procedures established in MDL 2047, on this 29th day of October, 2010.

/s/ Lee M. Peacocke
LEE M. PEACOCKE