## ♦ BUILDING AGREEMENT ♦

This Agreement made and entered into this __30th__ day of __JUNE__, 20__04__, by and between __TOREKO LEWIS-ZHUTNI__, as Buyer/s, whose mailing address is: __2082 SW BEAUREGARD ST., PSL FL. 34953__, Phone: Home __772-__ Work_____ Beeper/Mobile_____, and Diamond Court Construction Company as Builder.

♦ **I. Location:** The Builder will for the consideration hereinafter mentioned, finish and deliver a residence or structure on the following described land, the Legal Description of which is:
Lot: __13__ Block: __1216__ Section: __8__ O.R. Book_____ Pages_____
Address: __2074 SW BEAUREGARD ST.__ County __ST. LUCIE__

♦ **II. Payments:** The Buyer will in consideration of the Agreement being performed by the Builder as specified, pay or cause to be paid to the Builder, the sum of $ __317,792__ (U.S. Dollars) in the following manner:

| | Approved Lenders Draw | | | Cash Buyers Draw | |
|---|---|---|---|---|---|
| 1 | Contract Total (see Addendum) | 317,792 | 1 | Contract Total (see Addendum) | |
| 2 | Initial partial Deposit | 2,000 | 2 | less Lot prep Draw | |
| 3 | less 10% Deposit | 31,779 | 3 | less City Utilities Draw | |
| 4 | less City Utilities Draw | 4,600 | 4 | Draws based on lines 1 minus 2 & 3 | |
| 5 | less Lot prep Draw | 8,500 | 5 | Initial partial Deposit | |
| 6 | less Closing Costs paid up to | 2,000 | 6 | Remainder of Deposit Due | |
| 7 | less Lot Purchase/ Payoff | | 7 | Deposit...................10% | |
| 8 | less Pool Draw (line #7 Adden.) | | 8 | Slab Draw..................20% | |
| 9 | | | 9 | Tie beam Draw..............20% | |
| 10 | | | 10 | Mechanical rough-in Draw....25% | |
| 11 | | | 11 | Cabinet & Trim Draw.........20% | |
| 12 | Const. funds (omit line 2) | 270,913 | 12 | Final Draw..................5% | |

All payments will be made solely to Diamond Court Construction Company. Deposit due in 60 days. All Bank draw schedules of any type are subject to approval by Builder. Under **no** circumstances will the final draw of any Loan schedule be more than 10%.

THE BUYER/OWNER OF A ONE-FAMILY OR TWO-FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO 10 PERCENT OF THE PURCHASE PRICE) DEPOSITED IN AN INTEREST-BEARING ESCROW ACCOUNT. THIS RIGHT MAY BE WAIVED, IN WRITING, BY THE BUYER/OWNER.



Revised February 3, 2005



EXHIBIT
E

(1-21)

The failure to waive the escrow requirement will result in an extra charge to the Buyer. The Builder shall be entitled to all interest accrued on the account.

_JJJ_ (Initials) Buyer/Owner hereby WAIVES the request for escrow of any portion of the deposit monies received.

At such time as each payment becomes due, Builder shall notify Buyer or Buyers Agents of same in writing whereupon Buyer or Buyers Agents shall have seven (7) days from receipt of such notification within which to make such payment. If Buyer or Buyers Agents fails to make the payment within the time period stated, there will be a penalty charge of $500 every 30 days plus an interest charge of two and one-half percent (2-1/2) per month on the amount of the unpaid payment from the due date until the payment is received.

A. **Default:** In the event of a default by buyer the parties agree that the amount of damages incurred by builder is not readily ascertainable. Builder will be incurring out of pocket expenses, as well as expending time and effort in connection with the contract before any actual construction work is done. The parties further acknowledge that the amount of loss profits of the builder in connection with a default by buyer, are also not readily ascertainable. It is therefore agreed that in the event that buyer defaults in this agreement, the buyer shall pay to the builder as liquidated damages and not as a penalty, the following amounts at the following times: If the buyer defaults after preliminary plans are prepared, the buyer shall pay the builder as liquidated damages 10% of the purchase price; if buyer defaults after plans are prepared and the filing of the application for the engineering permit, the buyer shall pay builder liquidated damages in the amount of 12% of the purchase price; if the buyer defaults after plans are prepared, the application for the engineering permit and the application for the building permit, the buyer shall pay the builder as liquidated damages a total of 18% of the purchase price; if the buyer defaults after construction has begun, the buyer shall pay the builder actual damages incurred by the builder, which shall include all out of pocket expenses of the builder paid or to be paid, reasonable amounts for time, effort, and expertise of the builder, and prospective loss of profits by the builder for the construction.

It is agreed that the Builder will deliver a notice of completion (substantial completion) to the Buyer, and the Buyer shall, within seven (7) days after receipt of said notice, make final payment to the Builder. Possession of the premises shall be delivered to the Buyer when the residence has been fully constructed and all monies due the Builder have been paid. If the final payment is not paid to Builder within 7 days of receipt of notice of completion for any reason, Buyer agrees to pay an additional three dollars/ month/ sq.ft. daily prorated until Builder receives final payment. At this time an Affidavit of No Liens covering all materials and labor will be presented to the Buyer by the Builder. There will be no occupancy of home prior to final payment. Occupancy by Buyer shall constitute complete acceptance by Buyer and waiver of all claims against Builder with exceptions to warranty only. The Buyer further agrees to pay all Attorney's fees, Court fees & related fees necessary to enforce this Building Agreement.

♦    III. **Craftsmanship:** This residence will have craftsmanship equal to or better than that used in the model home located at 573 SW NAUTICAL AVE., PSL FL.

♦    IV. **Insurance, Bank & Related fees:** The Buyer will furnish Builder's Risk Insurance in the full amount of this Agreement during the construction period as required by all Banks/Lenders and list Builder as additionally insured. The Builders Risk Policy must meet the following criteria: $250/$500 deductible, theft, vandalism, fire, damage, liability, wind storm coverage. It is the Buyers responsibility to make the necessary reports, claims and coverages on their builders risk policy without exception. The Buyer is advised to furnish Owner's Flood Insurance where applicable and any other Insurance Buyer deems necessary. Buyer will pay any and all loan interest, bank inspection fees, draw fees, courier fees and any other fee related to the mortgage. Buyer will pay utility company bills for electricity and water used during construction. If Buyer



2 of 5                Revised February 3, 2005

is represented by an Agent or verbal communication becomes excessive (20 min./week), a fee of $360 per hour will be charged for responses. Buyer acknowledges and agrees that Builder is not an insurer of Buyer's property. The Buyer shall release the Builder and its agents and employees from any and all liability for damages, theft, etc. sustained to the property or injury to the Buyer while on the Property, and further shall hold the Builder and its agents and employee harmless from any liability for damages sustained to the Property or injury to a third party brought on the Property.

♦   **V. Changes & Extras:**   Buyer is requested to mail or fax any changes or concerns, this saves time and confusion. A formal change order will be mailed to Buyer with requested change. Should the Buyer at any time before or during the construction of said residence require any additions or changes to the plans, they shall have the right to make such changes when practical, and the cost of Change order will be paid immediately when the change order is signed. No change orders will be implemented until payment for change is received. If a change order has been sent to you and you have decided against it, write declined on the change order and mail or fax it back to us. There will be a minimum administrative service charge of $100.00 on all declined change orders. A Selection Approval Period, extending from the date of this Agreement to 21 days after the 10% deposit is paid (bank closing), is the time when the Selection sheets are to be completed and signed. If changes are requested after the Selection Approval Period but before the Building permit is issued an administrative service charge of $250.00 will be added to the price of any and every change. After the Building permit has been issued, changes will be priced to include rework on the job or rework of materials being prepared by a supplier to the job and will be charged at three times the normal rate. If for any reason the colors have not been chosen prior to the Building permit issuance date, Buyer understands and acknowledges that the Builder will use the current Model selections of color and specifications to complete Buyer's house. Let it be known that all extras, changes or related contracts will have a minimum mark up of 20%. There will be no provisions for anything verbal.

Should changes in plans or specifications effecting the structure or land be required by Authorities where said lot is located, such as the Developer, Architectural Review Board, Homeowner's Association or by federal, state, municipal or any other governmental authority having jurisdiction over construction practices on said lot and structure, such changes shall be made at the Buyer's expense, including but not limited to changes in impact amounts, material amounts or changes in building codes. In effect Builder will receive no less than but not limited to the total U.S. Currency stated under the section II of this Agreement incorporating any changes, extras, Customized Plan charges and any other applicable charges made during construction. However, the Builder shall be allowed the additional time necessary to complete said structure for each change order, whether at the request of the Buyer or in compliance with or due to governmental authority changes.

Builder may offer as an option to the plans and specifications a security system to be installed by an independent security company not affiliated with Builder. The installation of the system and continued subscription of the services provided by the Security Company shall be at the sole option of the Buyer. Builder does not warrant or guarantee the equipment installed by the Security Company and Buyer shall look only to the Security Company in the event of breakdown or failure of such equipment or disruption of services resulting therefrom. Builder shall not install the equipment or maintain same or monitor same if external monitoring capabilities are included therewith. Builder shall not be responsible for any representations made by Security Company, written or oral. The Builder does not make or imply any warranty or guaranty that the equipment or the services provided will prevent or lessen the effects of burglaries, fire or other occurrences which the system is designed to prevent or monitor. Buyer acknowledges and agrees that the Builder shall not be liable for loss or damage to property or for personal injury or death whether directly or indirectly due to (i) any failure of the system, the equipment or the components thereof, or the failure of any of the services provided by the Security Company, or (ii) the negligence of the employees of the Security Company.

The above price is guaranteed to the buyer for 60 days from the signing of this Agreement with



exception only to other provisions provided herein. Should start of construction be delayed beyond this time by Buyer or Buyer Agents, or by reason of ruling or regulation of any governmental authority, or by reason of any other cause not the fault of Builder, then the above price may be increased to the published price for the month of actual start. Start of construction is defined as the date on which the slab is poured.

The Buyer shall not perform any work on subject property (under section I) related or unrelated to this Building Agreement, either directly or indirectly, except as covered by this Agreement, nor award any other contracts in connection with construction or other work on the Buyer's property.

♦ **VI. Delivery & Warranty:** Subject to the provisions of this Agreement, the Builder agrees to use its best effort to deliver the substantially completed residence specified herein on or about __180__ days from start of construction. Start of construction is defined as the date on which the slab is poured. However, the Builder cannot and will not be responsible for any damages or inconvenience caused to the Buyer for failure to complete the residence specified herein within the above number of days, regardless of the reason for such delay. Buyer agrees that Builder shall have the right to substitute material or items of comparable quality for such material or items which may be unobtainable by reason of strikes or discontinuance of production for any reason. Builder shall advise Buyer of such substitutions, giving advance notice where possible.

It is expressly understood and agreed that the Buyer shall in no event take possession of, or enter upon the Property prior to closing and should the buyer breach this provision: first the Buyer accepts house as is and forfeits all warranty and second the Buyer consents that the Builder shall have the right to dispossess them from the Property by summary proceedings if such action is deemed necessary by Builder.

The Performance Warranty in the form shown in this Agreement shall be issued to Buyer upon complete payment of all funds as provided for in this Agreement. I further understand that no other representation, either oral or written, or whether contained in any advertisements, pamphlets, brochures or similar sales materials, shall create any additional express or implied warranties or guaranties beyond those contained in the "Performance Warranty". To the extent any such prior representations contradict the terms hereof, such representations shall be invalid and the terms of this document control.

BUILDER DOES NOT EXPRESSLY WARRANT OR GUARANTY HABITABILITY OF SOIL OR SUBSURFACE CONDITIONS OF THE SUBJECT PROPERTY. BUYER EXPRESSLY ASSUMES THE RISK OF ANY AND ALL LOSS OR DAMAGE TO THE SUBJECT PROPERTY. DAMAGE CAUSED BY SOIL OR SUBSURFACE CONDITIONS, WHETHER OR NOT ANY SUCH ADVERSE CONDITIONS COULD HAVE BEEN DISCOVERED PRIOR TO THE CLOSING BY APPROPRIATE TESTING. OTHER THAN THE PERFORMANCE WARRANTY. THE BUILDER DOES NOT EXPRESSLY WARRANT OR GUARANTY, ANY TYPE OF FITNESS AND MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

♦ **VII. Property Contingencies:** Items listed below which are applicable may be shown in the attached Addendum /Itemization of extra's or may be charged to the Buyer (upon) request by change order at a later date. It is hereby agreed that, when applicable, the following property related items are to be charged to the Buyer:

- ♦ All lot preparation (including but not limited to)
- ♦ Other impact fees not directly related to the material construction of the home.
- ♦ Soil tests & Engineering for other reasons than construction (diagnostic)
- ♦ Pilings
- ♦ Additional expenses for pumping concrete due to site conditions
- ♦ Underground electric & telephone service
- ♦ Additional electric service lines over fifty (50) feet for overhead power or Temp. Power pole
- ♦ Extended electrical service through attic or under slab (200amp @ $20 per ft.)
- ♦ Expense caused by rock or other adverse subsoil conditions
- ♦ Additional concrete drive & walkway over __1000__ square feet will be charged at $5.00 per sq. ft.
- ♦ Additional Bahia Sod over __9000__ sq. ft. will be charged at $0.20 per sq. ft.
- ♦ Additional public water and sewer lines over a distance of five (5) feet from house
- ♦ Septic tank over 900 gal.



♦ **VIII. Special Assessments:** Buyer acknowledges that the subject property is or may be located in a special assessment district and is now or will be subject to a special assessment lien for certain improvements in that district. Buyer agrees to take title subject to and be solely responsible for payment of any assessment established, whether or not said assessment is pending, certified, or confirmed prior to the date of closing, and the Buyer specifically releases the Seller of any requirement for payment on said special assessment.

♦ **IX. Absolute Domain:** The following exhibits which are attached hereto and more fully describe the residence covered by this Agreement: Floor Plan Sheet, Elevation Sheet, Included Features Sheet and Addendum /Itemization of extra's. Let it be known that Diamond Court Construction Company is the procurator of this Contract/ Building Agreement and that this Contract/ Building Agreement supersedes all past and future Contracts or Agreements no matter what is signed or executed in relation to this contract by any officer or representative of the Builder with exception only to extras, addendums, customized plan charges or new Building Agreements drafted, written, produced and executed by Diamond Court Construction Company.

♦ **X. Disclosures:** Florida law requires the following disclosure to be given to the Buyer of property in this State. Builder has made no independent inspection of the Property to determine the presence of conditions which may result in radon gas, or any other conditions; however, Builder is not aware of any such conditions. Certain building methods and materials have been proven to reduce the possibility of radon gas entering the building. Buyers hereby unconditionally, jointly and severally agrees to indemnify and save harmless Diamond Court Construction Company ((Owners, Agents & Assigns) Indemnities)) and its successors and assigns, from any claim, action, liability, loss, damage or suit, arising from or effected by the building of the Buyers house or structure for any and all reasons other than payment for materials & labor. I understand that "Diamond Court Homes, Inc." is a trademark only, and is being used by the Builder "Diamond Court Construction Co., Inc., and that Diamond Court Homes, Inc., has no legal involvement in or responsibility, obligation or liability for the construction of my home.

♦ **XI. Severability:** If any portion of this Agreement is held unenforceable, void, or voidable by any court, each of the remaining terms hereof shall nevertheless remain in full force and effect as a separate contract and Buyers agree to the terms stated herein to make all terms enforceable . This Agreement shall be deemed modified and amended to the extent necessary to render it valid and enforceable.

♦ **XII. Binding Effect:** This contract shall be binding on the parties hereto, their heirs, successors, and personal representatives. Buyer shall not be entitled to assign this contract without written consent of Diamond Court Construction Company.

IN WITNESS WHEREOF, the said parties to these presents have hereunto set their hands and seals the day and year above written.

♦BUYER

♦ Lance W. Collins, CBC, President
Diamond Court Construction Company
Contract Corporately validated by President
Contract must bear a copy of Corporate Seal

♦BUYER

Corporate Seal