

FIRST PREMIUM INSURANCE GROUP
P.O. BOX 77
COVINGTON, LA 70434

PHONE (800) 266-2171
FAX (800) 296-2171
www.lacitizens.com

11/19/2010

To Whom It May Concern:

Attached hereto is a true and certified copy of policy number FH 20071910526 01
issued to SHAUN MICHAEL BOUDREAUX & JUSTINE ELIZABETH TRUDEAU
insuring a dwelling located 3005 BLANCHARD DRIVE, CHALMETTE, Louisiana in
the Parish of ST. BERNARD.

April Najolia, Underwriting Manager

CTZ-U-0422 (01/05)



COVERAGE IS PROVIDED IN THE **Louisiana Citizens Property Insurance Corporation**

**LA Citizens FAIR Plan**
P.O. Box 60730
New Orleans, LA 70160

**Homeowners Declaration**

| | Policy Period | |
|---|---|---|
| **Policy Number** | **From** | **To** |
| FH 20071910526 01 | 08/03/2008 | 08/03/2009 |
| | 12:01 A.M. Standard Time at the described location | |

Service provider: First Premium Insurance Group
P.O. Box 77
Covington, LA 70434
(888) 741-0088

Billing Information: SHAUN MICHAEL BOUDREAUX - Annual

**Transaction:** Renewal Policy

Renewal of:   FH 20071910526

| Named Insured and Address | Producer's Name and Address | Producer Number |
|---|---|---|
| Mr SHAUN MICHAEL BOUDREAUX, Ms JUSTINE ELIZABETH TRUDEAU 3005 BLANCHARD DR CHALMETTE, LA 70043 | GALLODORO INS AGENCIES INC. 1319 VETERANS BLVD METAIRIE, LA 70005-2732 Telephone: (504) 828-1908 | 800 3057 |

The residence premises covered by this policy is located at the above insured address unless otherwise stated below:

Legal Address: 3005 BLANCHARD DR, CHALMETTE, LA 70043

| Const. Type | Year Built | Terr. | Prot. Class | Graded Area #/Name | Distance to Fire Station | Feet to Hydrant | # of Families | Deductible |
|---|---|---|---|---|---|---|---|---|
| Masonry | 1980 | 440 | 2 | 440010 - FIRE DIST 1 | Less than 7 miles | 1,000 feet or less | 1 | $2,500.00 |

Coverage is provided where limit of liability or premium is shown. If the loss is caused by a hurricane, the deductible will be 2% of the Coverage A & C limit of liability.

| Section I Coverage | Limit of Liability | | Premiums |
|---|---|---|---|
| A Dwelling | $124,800.00 | | $2,660.00 |
| B Other Structures | $12,480.00 | | Included |
| C Personal Property | $62,400.00 | | Included |
| D Loss of Use | $37,440.00 | | Included |
| **Section II Coverage** | | | |
| E Personal Liability | $100,000.00 | Each Occurrence | Included |
| F Medical Payments to Others | $1,000.00 | Each Person | Included |
| **Additional Charges:** | | | |

| | | |
|---|---|---|
| Total Location Premium: | | $2,660.00 |
| Tax Exempt Surcharge: | | $80.00 |
| Market Equalization Charge: | | $0.00 |
| 2005 LA Fair Plan Emergency Assessment: | | $133.00 |
| Total: | | $2,873.00 |

Forms and Endorsements

CTZ-U-0329 (01/05)  Homeowners Policy Jacket
HO 00 03 10 00  Homeowners 3 - Special Form
HO 04 46 10 00  Inflation Guard
HO 04 96 10 00  No Section II - Liability Coverages for Home Day Care Business
CTZ-U-0174 (01/05)  Privacy Policy
HO 01 17 04 05  Special Provisions - Louisiana
HO 03 42 01 05  Limited Fungi, Wet or Dry Rot or Bacteria Coverage
CTZ-U-0267 (04/05)  Special Hurricane Deductible - Louisiana Cov A
HO 04 90 10 00  Personal Property Replacement Cost
HO 04 41 10 00  Additional Insured - Residence Premises

Issued Date:   06/18/2008

CTZ-U-0155 (01/05)

*John Wortman*
Authorized Representative

Page   1   of   2

**Policy Interests**

| Co-Applicant | First Mortgagee |
|---|---|
| JUSTINE ELIZABETH TRUDEAU<br>3005 BLANCHARD DR<br>CHALMETTE, LA 70043 | Wells Fargo Bank NA #708 ISAOA<br>P O Box 23030<br>Jacksonville, FL 32241-3030<br>50229629 |

Issued Date:   06/18/2008

# Homeowners Policy

## LOUISIANA CITIZENS COASTAL PLAN
(COASTAL PLAN)

## LOUISIANA CITIZENS FAIR PLAN
(FAIR PLAN)

OF
LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION

NEW ORLEANS, LOUISIANA 70160

**THIS POLICY DOES NOT PROVIDE FLOOD INSURANCE**

INSURANCE IS PROVIDED BY



THIS POLICY JACKET TOGETHER WITH HOMEOWNERS FORM, DECLARATIONS AND ENDORSEMENTS, IF ANY,
ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.

CTZ-U-0329 (01/05)

The provisions of the Standard Fire Policy are stated below. State law still requires that they be attached to all policies. If any conditions of this form are construed to be more liberal than any other policy conditions relating to the perils of fire, lightning or removal, the conditions of this form will apply.

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED in the Declarations or in endorsements made a part hereof, this Company, for the term of *years specified in the Declarations* from *inception date shown in the Declarations* at 12:01 A.M. (Standard Time) to *expiration date shown in the Declarations* at 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the limit of liability specified in the Declarations, does insure *the Insured named in the Declarations* and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of the like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

CTZ-U-0329 (01/05)

LOUISIANA NUMBERED LINE CONDITIONS AMENDMENTS

CANCELLATION OF POLICY lines 56 to 67 are replaced by the following: This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon surrender of the policy, refund the excess of paid premium above the customary rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a twenty days' written notice of cancellation, or ten days' written notice when cancellation is for nonpayment of premium, with or without tender of the excess paid premium above the pro rata premium for the expired time which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium, if not tendered, will be refunded on demand, upon the written request of the named insured, the insurer shall provide to the insured in writing the reasons for cancellation of the policy. There shall be no liability on the part of and no cause of action of any nature shall arise against any insurer or its agents, employees, or representatives for any action taken by them to provide the reasons for cancellation.
MORTGAGEE INTEREST AND OBLIGATIONS Lines 68 to 73 are replaced by the following. If loss hereunder is made payable in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by delivering or mailing to such mortgagee a twenty days' written notice of cancellation, or a ten days' written notice of cancellation if cancella- tion is for nonpayment of premium.

1 **Concealment,**
2 **fraud.** This entire policy shall be void if, whether
3 before or after a loss, the insured has wil-
4 fully concealed or misrepresented any ma-
5 terial fact or circumstance concerning this insurance or the
6 subject thereof, or the interest of the insured therein, or in case
7 of any fraud or false swearing by the insured relating thereto.
8 **Uninsurable** This policy shall not cover accounts, bills,
9 **and** currency, deeds, evidences of debt, money or
10 **excepted property.** securities; nor, unless specifically named
11 hereon in writing, bullion or manuscripts.
12 **Perils not** This Company shall not be liable for loss by
13 **included** fire or other perils insured against in this
14 policy caused, directly or indirectly, by: (a)
15 enemy attack by armed forces, including action taken by mili-
16 tary, naval or air forces in resisting an actual or an immediately
17 impending enemy attack; (b) invasion; (c) insurrection; (d)
18 rebellion; (e) revolution; (f) civil war; (g) usurped power; (h)
19 order of any civil authority except acts of destruction at the time
20 of and for the purpose of preventing the spread of fire, provided
21 that such fire did not originate from any of the perils excluded
22 by this policy; (i) neglect of the insured to use all reasonable
23 means to save and preserve the property at and after a loss, or
24 when the property is endangered by fire in neighboring prem-
25 ises; (j) nor shall this Company be liable for loss by theft.
26 **Other insurance.** Other insurance may be prohibited or the
27 amount of insurance may be limited by en-
28 dorsement attached hereto.
29 **Conditions suspending or restricting insurance. Unless other-**
30 wise provided in writing added hereto this Company shall not
31 be liable for loss occurring.
32 (a) while the hazard is increased by any means within the con-
33 trol or knowledge of the insured; or
34 (b) while a described building, whether intended for occupancy
35 by owner or tenant, is vacant or unoccupied beyond a period of
36 sixty consecutive days; or
37 (c) as a result of explosion or riot, unless fire ensue, and in
38 that event for loss by fire only.
39 **Other perils** Any other peril to be insured against or sub-
40 **or subjects.** ject of insurance to be covered in this policy
41 shall be by endorsement in writing thereon or
42 added hereto.
43 **Added provisions.** The extent of the application of insurance
44 under this policy and of the contribution to
45 be made by this Company in case of loss, and any other pro-
46 vision or agreement not inconsistent with the provisions of this
47 policy, may be provided for in writing added hereto, but no pro-
48 vision may be waived except such as by the terms of this policy
49 is subject to change.
50 **Waiver** No permission affecting this insurance shall
51 **provisions.** exist, or waiver of any provision be valid,
52 unless granted herein or expressed in writing
53 added hereto. No provision, stipulation or forfeiture shall be
54 held to be waived by any requirement or proceeding on the part
55 of this Company relating to appraisal or to any examination
56 provided for herein.
57 **Cancellation** This policy shall be cancelled at any time
58 **of policy.** at the request of the insured, in which case
59 this Company shall, upon demand and sur-
60 render of this policy, refund the excess of paid premium above
61 the customary short rates for the expired time. This pol-
62 icy may be cancelled at any time by this Company by giving
63 to the insured a thirty days' written notice of cancellation
64 with or without tender of the excess of paid premium above the
65 pro rata premium for the expired time, which excess, if not
66 tendered, shall be refunded on demand. Notice of cancellation
67 shall state that said excess premium (if not tendered) will be
68 refunded on demand.
69 **Mortgagee** If loss hereunder is made payable, in whole
70 **interests and** or in part, to a designated mortgagee not
71 **obligations.** named herein as the insured, such interest in
72 this policy may be cancelled by giving to such
73 mortgagee a ten days' written note of can-
74 cellation.
75 If the insured fails to render proof of loss such mortgagee, upon
76 notice, shall render proof of loss in the form herein specified
77 within sixty (60) days thereafter and shall be subject to the pro-
78 visions hereof relating to appraisal and time of payment and of
79 bringing suit. If this Company shall claim that no liability ex-
80 isted as to the mortgagor or owner, it shall, to the extent of pay-
81 ment of loss to the mortgagee, be subrogated to all the mort-
82 gagee's rights of recovery, but without impairing mortgagee's
83 right to sue; or it may pay off the mortgage debt and require
84 an assignment thereof and of the mortgage. Other provisions

85 relating to the interest and obligations of such mortgagee may
86 be added hereto by agreement in writing.
87 **Pro rata liability.** This Company shall not be liable for a greater
88 proportion of any loss than the amount
89 hereby insured shall bear to the whole insurance covering the
90 property against the peril involved, whether collectible or not.
91 **Requirements in** The insured shall give immediate written
92 **case loss occurs.** notice to this Company of any loss, protect
93 the property from further damage, forthwith
94 separate the damaged and undamaged personal property, put
95 it in the best possible order, furnish a complete inventory of
96 the destroyed, damaged and undamaged property, showing in
97 detail quantities, costs, actual cash value and amount of loss
98 claimed; and within sixty days after the loss, unless such time
99 is extended in writing by this Company, the insured shall render
100 **to this Company a proof of loss, signed and sworn to by the**
101 insured, stating the knowledge and belief of the insured as to
102 the following: the time and origin of the loss, the interest of the
103 insured and of all others in the property, the actual cash value of
104 each item thereof and the amount of loss thereto, all encum-
105 brances thereon, all other contracts of insurance, whether valid
106 or not, covering any of said property, any changes in the title,
107 use, occupation, location, possession or exposures of said prop-
108 erty since the issuing of this policy, by whom and for what
109 purpose any building therein described and the several parts
110 thereof were occupied at the time of loss and whether or not it
111 then stood on leased ground, and shall furnish a copy of all the
112 descriptions and schedules in all policies and, if required, verified
113 plans and specifications of any building, fixtures or machinery
114 destroyed or damaged. The insured, as often as may be reason-
115 ably required, shall exhibit to any person designated by this
116 Company all that remains of any property herein described, and
117 submit to examinations under oath by any person named by this
118 Company, and subscribe the same; and, as often as may be
119 reasonably required, shall produce for examination all books of
120 account, bills, invoices and other vouchers, or certified copies
121 thereof if originals be lost, at such reasonable time and place as
122 may be designated by this Company or its representatives, and
123 shall permit extracts and copies thereof to be made.
124 **Appraisal.** In case the insured and this Company shall
125 fail to agree as to the actual cash value or
126 the amount of loss, then, on the written demand of either, each
127 shall select a competent and disinterested appraiser and notify
128 the other of the appraiser selected within twenty days of such
129 demand. The appraisers shall first select a competent and dis-
130 interested umpire; and failing for fifteen days to agree upon
131 such umpire, then, on request of the insured or this Company,
132 such umpire shall be selected by a judge of a court of record in
133 the state in which the property covered is located. The ap-
134 praisers shall then appraise the loss, stating separately actual
135 cash value and loss to each item; and, failing to agree, shall
136 submit their differences, only, to the umpire. An award in writ-
137 ing, so itemized, of any two when filed with this Company shall
138 determine the amount of actual cash value and loss. Each
139 appraiser shall be paid by the party selecting him and the ex-
140 penses of appraisal and umpire shall be paid by the parties
141 equally.
142 **Company's** It shall be optional with this Company to
143 **options.** take all, or any part, of the property at the
144 agreed or appraised value, and also to re-
145 pair, rebuild or replace the property destroyed or damaged with
146 other of like kind and quality within a reasonable time, on giv-
147 ing notice of its intention so to do within thirty days after the
148 receipt of the proof of loss herein required.
149 **Abandonment.** There can be no abandonment to this Com-
150 pany of any property.
151 **When loss** The amount of loss for which this Company
152 **payable.** may be liable shall be payable sixty days
153 after proof of loss, as herein provided, is
154 received by this Company and ascertainment of the loss is made
155 either by agreement between the insured and this Company ex-
156 pressed in writing or by the filing with this Company of an
157 award as herein provided.
158 **Suit.** No suit or action on this policy for the recov-
159 ery of any claim shall be sustainable in any
160 court of law or equity unless all the requirements of this policy
161 shall have been complied with, and unless commenced within
162 twelve months next after inception of the loss.
163 **Subrogation.** This Company may require from the insured
164 an assignment of all right of recovery against
165 any party for loss to the extent that payment therefor is made
166 by this Company.

**In Witness Whereof,** this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

_Secretary_                    _President_

CTZ-U-0329 (01/05)

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

  **a.** Liability for "bodily injury" or "property damage" arising out of the:

   **(1)** Ownership of such vehicle or craft by an "insured";

   **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

   **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

   **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

  **b.** For the purpose of this definition:

   **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

   **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

   **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

   **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

  **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

  **b.** Any other activity engaged in for money or other compensation, except the following:

   **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

   **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   **(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

  **a.** You and residents of your household who are:

   **(1)** Your relatives; or

   **(2)** Other persons under the age of 21 and in the care of any person named above;

  **b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

   **(1)** 24 and your relative; or

   **(2)** 21 and in your care or the care of a person described in **a.(1)** above; or

Copyright, Insurance Services Office, Inc., 1999

**c.** Under Section II:

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one family dwelling where you reside;

**b.** The two, three or four family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

       Copyright, Insurance Services Office, Inc., 1999       HO 00 03 10 00

**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   **a.** Land, including land on which the other structures are located;

   **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   **c.** Other structures from which any "business" is conducted; or

   **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   **a.** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   **b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

   **a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   **b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

**4. Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

**k.** Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage D is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

**a.** We will pay your reasonable expense for the removal of:

**(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

**(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

**(1)** Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C;**

provided the tree(s):

**(3)** Damage(s) a covered structure; or

**(4)** Does not damage a covered structure, but:

**(a)** Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

  **(1)** Increase the limit of liability that applies to the covered property; or

  **(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section **I – Conditions.**

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

  **a.** Fire or Lightning;

  **b.** Explosion;

  **c.** Riot or Civil Commotion;

  **d.** Aircraft;

  **e.** Vehicles not owned or operated by a resident of the "residence premises";

  **f.** Vandalism or Malicious Mischief; or

  **g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

  **a.** We will pay up to $500 for:

    **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

    **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

    **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

    **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

    All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

    This coverage is additional insurance. No deductible applies to this coverage.

  **b.** We do not cover:

    **(1)** Use of a credit card, electronic fund transfer card or access device:

      **(a)** By a resident of your household;

      **(b)** By a person who has been entrusted with either type of card or access device; or

      **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

    **(2)** Loss arising out of "business" use or dishonesty of an "insured".

  **c.** If the coverage in **a.** above applies, the following defense provisions also apply:

    **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

    **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

    **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

        Copyright, Insurance Services Office, Inc., 1999        HO 00 03 10 00

7. **Loss Assessment**

   a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

      (1) Earthquake; or

      (2) Land shock waves or tremors before, during or after a volcanic eruption.

      The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

   b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

   c. Paragraph **P.** Policy Period under Section **I** – Conditions does not apply to this coverage.

   This coverage is additional insurance.

8. **Collapse**

   a. With respect to this Additional Coverage:

      (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

      (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

      (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

      (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

   b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

      (1) The Perils Insured Against named under Coverage **C**;

      (2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

      (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

      (4) Weight of contents, equipment, animals or people;

      (5) Weight of rain which collects on a roof; or

      (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

   d. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass Or Safety Glazing Material**

   a. We cover:

      (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

      (2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

      (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

Copyright, Insurance Services Office, Inc., 1999

**b.** This coverage does not include loss:

    **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

    **(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

    **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

    **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

    **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

    **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

**1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B.**

**2.** We do not insure, however, for loss:

**a.** Excluded under Section **I** – Exclusions;

**b.** Involving collapse, except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

**c.** Caused by:

    **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

        **(a)** Maintain heat in the building; or

 Copyright, Insurance Services Office, Inc., 1999 HO 00 03 10 00

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(a) Fence, pavement, patio or swimming pool;

(b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

(c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

(a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

(b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

(6) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion, or dry rot;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(g) Birds, vermin, rodents, or insects; or

(h) Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

1. **Fire Or Lightning**

2. **Windstorm Or Hail**

    This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**

    This peril includes self-propelled missiles and spacecraft.

6. **Vehicles**

7. **Smoke**

    This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

9. **Theft**

    a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

    b. This peril does not include loss caused by theft:

    (1) Committed by an "insured";

    (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

    (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

    (4) That occurs off the "residence premises" of:

    (a) Trailers, semitrailers and campers;

    (b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

    (c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

10. **Falling Objects**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight Of Ice, Snow Or Sleet**

    This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

  Copyright, Insurance Services Office, Inc., 1999  HO 00 03 10 00

**12. Accidental Discharge Or Overflow Of Water Or Steam**

   **a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   **b.** This peril does not include loss:

     **(1)** To the system or appliance from which the water or steam escaped;

     **(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

     **(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

     **(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   **c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   **d.** Section I – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

   **a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

     **(1)** Maintain heat in the building; or

     **(2)** Shut off the water supply and drain all systems and appliances of water.

    However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I – EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   **1. Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

     **a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I – Property Coverages;

     **b.** The requirements of which result in a loss in value to property; or

     **c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

     Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion **A.1.** applies whether or not the property has been physically damaged.

   **2. Earth Movement**

   Earth Movement means:

     **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M.** Nuclear Hazard Clause under Section **I** – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A**, **B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

 Copyright, Insurance Services Office, Inc., 1999 HO 00 03 10 00

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

    a. Make reasonable and necessary repairs to protect the property; and

    b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

    a. Show the damaged property;

    b. Provide us with records and documents we request and permit us to make copies; and

    c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    a. The time and cause of loss;

    b. The interests of all "insureds" and all others in the property involved and all liens on the property;

    c. Other insurance which may cover the loss;

    d. Changes in title or occupancy of the property during the term of the policy;

    e. Specifications of damaged buildings and detailed repair estimates;

    f. The inventory of damaged personal property described in **6.** above;

    g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition **C.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

    a. Personal property;

    b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

    c. Structures that are not buildings; and

    d. Grave markers, including mausoleums;

    at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

    a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

        (1) The limit of liability under this policy that applies to the building;

        (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

        (3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

   **(1)** The actual cash value of that part of the building damaged; or

   **(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

   **(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

   **(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

   **(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

   **(1)** Less than 5% of the amount of insurance in this policy on the building; and

   **(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

   **e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

Copyright, Insurance Services Office, Inc., 1999   HO 00 03 10 00

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

**J. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K. Mortgage Clause**

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

**c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

**a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M. Nuclear Hazard Clause**

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B. 6.a., b., d., e.** or **h.**; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

          Copyright, Insurance Services Office, Inc., 1999          HO 00 03 10 00

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

b. Rented to others;

c. Used to carry persons or cargo for a charge; or

d. Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

a. Is stored;

b. Is a sailing vessel, with or without auxiliary power, that is:

(1) Less than 26 feet in overall length; or

(2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

c. Is not a sailing vessel and is powered by:

(1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

(a) 50 horsepower or less and not owned by an "insured"; or

(b) More than 50 horsepower and not owned by or rented to an "insured"; or

(2) One or more outboard engines or motors with:

(a) 25 total horsepower or less;

(b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

(c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

(i) You declare them at policy inception; or

(ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b. This Exclusion **E.2.** does not apply to:

(1) The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1. Liability**

**a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section II – Additional Coverages;

**b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

**(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

**(2)** Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

**a.** Workers' compensation law;

Copyright, Insurance Services Office, Inc., 1999     HO 00 03 10 00

**b.** Non-occupational disability law; or

**c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

      **(1)** Nuclear Energy Liability Insurance Association;

      **(2)** Mutual Atomic Energy Liability Underwriters;

      **(3)** Nuclear Insurance Association of Canada;

      or any of their successors; or

    **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured":

    **a.** To repay; or

    **b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F – Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

    **a.** To the extent of any amount recoverable under Section **I**;

    **b.** Caused intentionally by an "insured" who is 13 years of age or older;

    **c.** To property owned by an "insured";

    **d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

    **e.** Arising out of:

      **(1)** A "business" engaged in by an "insured";

      **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      **(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   **a.** "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   **b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      **(1)** Is elected by the members of a corporation or association of property owners; and

      **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   **a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   **b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   **a.** The identity of the policy and the "named insured" shown in the Declarations;

   **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

   **c.** Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   **a.** To make settlement;

   **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

        Copyright, Insurance Services Office, Inc., 1999        HO 00 03 10 00

**c.** With the conduct of suits and attend hearings and trials; and

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required, as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

  **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

  **(2)** If the risk has changed substantially since the policy was issued.

  This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

  **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

  **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

POLICY NUMBER: FH 20071910526 00

**HOMEOWNERS**
**HO 04 46 10 00**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## INFLATION GUARD

### SCHEDULE*

| |
|---|
| Percentage Amount: <u>4%</u> |
| *Entry may be left blank if shown elsewhere in this policy for this coverage. |

The limits of liability for Coverages **A, B, C** and **D** will be increased annually by the percentage amount that is:

1. Shown in the Schedule above; and

2. Applied pro rata during the policy period.

POLICY NUMBER: FH 20071910526 00

**HOMEOWNERS**
HO 04 96 10 00

## THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE

**A.**

"Business", as defined in the policy, means:

1. A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

2. Any other activity engaged in for money or other compensation, except the following:

   **a.** One or more activities:

   **(1)** Not described in **b.** through **d.** below; and

   **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

   **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   **d.** The rendering of home day care services to a relative of an "insured".

**B.**

If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

1. That an "insured" engages in for money or other compensation; and

2. From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

1. Described in **A.2.** above, and

2. Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

1. Does not provide:

   **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section **II** – Exclusions;

   **b.** Coverage, under Section **I,** for other structures from which any "business" is conducted; and

2. Limits Section **I** coverage, under Coverage **C** – Special Limits of Liability, for "business" property:

   **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form HO 00 08) imposes that limit on "business" property on the "residence premises";

   **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form HO 00 08) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

Copyright, Insurance Services Office, Inc., 1999

# Louisiana Citizens Property Insurance Corporation
# Privacy Policy

Louisiana Citizens Property Insurance Corporation provides insurance and believes that protecting your privacy is of critical importance. We feel that you should understand what *nonpublic personal information* we collect, how we use the information, and how we safeguard it. This statement describes the types of nonpublic personal information we collect and use to provide insurance products and services to our customers.

## COLLECTING INFORMATION
We collect nonpublic personal information to perform the services you have requested from the following sources:
- Information we receive from you on applications or other forms
- Information about your transactions with us, our affiliates, or others
- Information from consumer reporting agencies, such as credit, property inspection, and claims activity reports
- Information received in handling claims

## CUSTOMER INFORMATION WE SHARE WITH OTHERS
We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

## HOW DO WE PROTECT YOUR NONPUBLIC PERSONAL INFORMATION
We value your trust and handle information about you with care. We restrict access to nonpublic personal information about you to employees, affiliates, or non-affiliates who need to know such information in order to provide products and services to you. We maintain physical, procedural, and electronic safeguards to protect our current and former customers' nonpublic information.

## CHANGES TO OUR PRIVACY POLICY
This privacy policy applies to products or services provided for personal, family, or household purposes in the United States by Louisiana Citizens Property Insurance Corporation. Although we may change this policy at any time, please rest assured that you will be notified of any changes as required by law.

## MAINTAINING ACCURATE INFORMATION
We also maintain procedures to ensure that the information we collect is accurate, up-to-date, and as complete as possible. If you believe the information we have about you in our records or files is incomplete or inaccurate, you may request that we make additions or corrections, or if it is feasible, that we delete this information from our files. Your request must be in writing, and you should mail your request to us, addressed as follows *(be sure to include your policy number, name, address, and phone number with your request)*: Privacy Services, Louisiana Citizens Property Insurance Corporation, P.O. Box 60730, New Orleans, LA 70160.

**Thank you for allowing us to serve you. As described in our Privacy Policy, we aim to continually protect your nonpublic information. Please realize that because we value our customer relationship, we endeavor to provide you with excellent products and service.**

POLICY NUMBER: FH 20071910526 00

HOMEOWNERS
HO 01 17 04 05

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – LOUISIANA

**SECTION I – PROPERTY COVERAGES**

**C. Coverage C – Personal Property**

Paragraph **4.c.(2)(a)** is replaced by the following:

**4. Property Not Covered**

  **c.** "Motor vehicles"

    **(2)** We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

      **(a)** Used to service an "insured's" residence; or

(This is Paragraph **A.4.c.(2)(a)** in Form **HO 00 04** and **B.4.c.(2)(a)** in Form **HO 00 06**.)

**E. Additional Coverages**

**2. Reasonable Repairs** is replaced by the following:

**2. Reasonable Repairs**

We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

(This is Paragraph **C.2.** in Form **HO 00 04** and **D.2.** in Form **HO 00 06**.)

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money** is replaced by the following:

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

  **a.** We will pay up to $500 for:

    **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

    **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

    **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

    **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

  **b.** We do not cover:

    **(1)** Use of a credit card, electronic fund transfer card or access device:

      **(a)** By a resident of your household;

      **(b)** By a person who has been entrusted with either type of card or access device; or

      **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed.

    **(2)** Loss arising out of "business" use or dishonesty of an "insured".

  **c.** If the coverage in **a.** applies, the following defense provisions also apply:

    **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when our limit of liability for the loss has been exhausted by payment of a judgment or settlement.

    **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

    **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

(This is Paragraph **C.6.** in Form **HO 00 04** and **D.6.** in Form **HO 00 06**.)

 © ISO Properties, Inc., 2004

## SECTION I – EXCLUSIONS

8. **Intentional Loss** is replaced by the following:

8. **Intentional Loss,** meaning any loss arising out of any act committed:

   a. With respect to loss caused by fire;

      (1) By or at the direction of the "insured"; and

      (2) With the intent to cause a loss.

   b. With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy;

      (1) By you or at your direction; and

      (2) With the intent to cause a loss.

(This is Exclusion A.8. in Form HO 00 03 and HO 00 05.)

## SECTION I – CONDITIONS

C. **Loss Settlement**

   Under Forms HO 00 02, HO 00 03 and HO 00 05, Paragraph 2.a.(2) is replaced by the following:

      (2) The replacement cost of that part of the building damaged with material of like kind and quality; or

I. **Loss Payment** is replaced by the following:

I. **Loss Payment**

   We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.

K. **Mortgage Clause**

   Paragraph 3. is replaced by the following:

   3. If this policy is cancelled by us, the mortgagee will be notified:

      a. At least 10 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

      b. At least 30 days before the date cancellation takes effect if we cancel for any other reason.

   If the policy is not renewed by us, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

(This Condition does not apply to Form HO 00 04.)

Q. **Concealment Or Fraud** is replaced by the following:

Q. **Concealment Or Fraud**

   1. With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after a loss, has:

      a. Intentionally concealed or misrepresented any material fact or circumstance;

      b. Engaged in fraudulent conduct; or

      c. Made false statements;

      relating to this insurance.

   2. With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:

      a. Intentionally concealed or misrepresented any material fact or circumstance;

      b. Engaged in fraudulent conduct; or

      c. Made false statements;

      relating to this insurance.

   3. However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

(This is Condition P. in Form HO 00 04.)

## SECTION II – LIABILITY COVERAGES

A. **Coverage E – Personal Liability,** Paragraph 1. is replaced by the following:

   1. Pay up to our limit of liability for the damages for which an "insured" is legally liable; and

## SECTION II – EXCLUSIONS

A. **"Motor Vehicle Liability"**

   Paragraph 2.b. is replaced by the following:

   2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

      b. Used to service an "insured's" residence;

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph **1.** is replaced by the following in all forms and Endorsement HO 24 73:

**1. Expected Or Intended Injury**

With respect to loss:

**a.** Caused by fire; which is expected or intended by the "insured" even if the "bodily injury" or "property damage":

(1) Is of a different kind, quality, or degree than initially expected or intended; or

(2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.a.** does not apply to "bodily injury" resulting from the use of reasonable force by the "insured" to protect persons or property.

**b.** Caused by a peril other than fire and with respect to all "insureds" covered under this policy which is expected or intended by one or more "insureds" even if the "bodily injury" or "property damage":

(1) Is of a different kind, quality, or degree than initially expected or intended; or

(2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.b.** does not apply to "bodily injury" resulting from the use of reasonable force by one or more "insureds" to protect persons or property.

**F. Coverage E – Personal Liability**

Paragraph **6.** does not apply in all forms and Endorsement HO 24 73.

**SECTION II – CONDITIONS**

**F. Suit Against Us** does not apply.

**J. Concealment Or Fraud** is replaced by the following:

**J. Concealment Or Fraud**

**1.** We do not provide coverage to one or more "insured" who, whether before or after a loss, have:

**a.** Intentionally concealed or misrepresented any material fact or circumstance;

**b.** Engaged in fraudulent conduct; or

**c.** Made false statements;

relating to this insurance.

**2.** However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

**SECTIONS I AND II – CONDITIONS**

**C. Cancellation**

Paragraphs **2.**, **3.** and **4.** are replaced by the following:

**2.** The following applies with respect to premium payments due on new and renewal policies, including installment payments:

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **b.** and **c.** below.

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**3.** The following applies if **2.** above does not apply.

We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, regardless of the period of time this policy has been in effect, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

 © ISO Properties, Inc., 2004

b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us except as provided in Item **3.e.** below, we may cancel:

(1) If there has been a material misrepresentation of fact with the intent to deceive:

(a) In the procurement of the contract; or

(b) At any other time since the policy was issued;

which if known to us would have caused us not to issue the policy; or

(2) If the risk has changed substantially since the policy was issued.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of:

(1) More than one year; or

(2) Three years or less;

we may cancel for any reason at anniversary by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

e. When this policy has been in effect and renewed for more than three years, we may cancel for any one of the following:

(1) If you have committed fraud with the intent to deceive:

(a) In the procurement of the contract; or

(b) At any other time since the policy was issued;

(2) If the insured risk has undergone a material change;

(3) If you have filed two or more claims within three years; or

(4) If the continuation of this policy endangers our solvency.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

We will not, however, cancel this policy, regardless of the period of time this policy has been in effect, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

4. If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **a.**, **b.** and **c.** below. The cancellation will be effective even if we have not made or offered a refund.

a. If you cancel this policy, we will refund the return premium, if any, within 30 days after the date cancellation takes effect. The return premium shall be computed on a pro rata basis, subject to the minimum premium requirements.

b. If we cancel this policy, and the return premium is not refunded with the notice of cancellation, we will refund it within a reasonable time after the date cancellation takes effect. We will send the refund to you, or your agent unless **c.** below applies. If the premium is refunded to your agent, we will notify you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

c. If we cancel based on Paragraph **2.** above, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**D. Nonrenewal** is replaced by the following:

**D. Nonrenewal**

1. We may elect not to renew this policy, subject to the provisions of Paragraphs **2.** and **3.** below. We may do so by delivering to you and any other known person shown by the policy to have an interest in any loss which may occur thereunder or mailing to you at your mailing address shown in the Declaration and to any other known person shown by the policy to have an interest in any loss which may occur thereunder, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

2. If this policy has been in effect and renewed with us for more than three years, we will not exercise our right of nonrenewal except:

   a. When you have not paid the premium;

   b. If you have committed fraud;

   c. If the insured risk has undergone a substantial change;

   d. If you have filed two or more claims within three years; or

   e. If the continuation of this policy endangers our solvency.

3. We will not, however, exercise our right of nonrenewal, regardless of the period of time this policy has been in effect with us, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

**F. Subrogation**

The following paragraph is added:

If we pay an "insured" for a loss caused by another "insured" who intentionally commits, or directs another to commit, any act that results in loss by fire, the rights of the "insured" to recover damages from the "insured" who intentionally committed, or directed another to commit, such an act are transferred to us to the extent of our payment. The "insured" may not waive such rights.

All other provisions of this policy apply.

POLICY NUMBER: FH 20071910526 00

HOMEOWNERS
HO 03 42 01 05

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE – LOUISIANA
### FOR USE WITH FORMS HO 00 03 AND HO 00 05

### SCHEDULE

| | These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|---|
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or "Bacteria" | $10,000 |
| 2. | Section II – Coverage E Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or "Bacteria" | $50,000 |
| | Entries may be left blank if shown elsewhere in this policy for this coverage. | |

**DEFINITIONS**

The following definitions are added:

**"Fungi"**

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or re-leased by fungi.

b. Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**"Bacteria"**

"Bacteria" means any type, kind or form of bacte-rium.

**SECTION I – PROPERTY COVERAGES**

**E. Additional Coverages**

Paragraph **10.k.(2)(d)** is deleted in Form **HO 00 05** only.

The following Additional Coverage is added:

**13. "Fungi", Wet Or Dry Rot, Or "Bacteria"**

a. The amount shown in the Schedule above is the most we will pay for:

(1) The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or "bacteria";

(2) The cost to remove "fungi", wet or dry rot, or "bacteria" from property covered under Sec-tion I – Property Coverages;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or "bacteria"; and

(4) The cost of testing of air or property to con-firm the absence, presence or level of "fungi", wet or dry rot, or "bacteria" whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or "bacteria".

b. The coverage described in **13.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

HO 03 42 01 05

© ISO Properties, Inc.,  2004

POLICY NUMBER: FH 20071910526 00

c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

(1) Number of locations insured under this endorsement; or

(2) Number of claims made.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

In Form HO 00 03:

A. **Coverage A – Dwelling And Coverage B – Other Structures**

Paragraph **2.c.(5)** is replaced by the following:

(5) Caused by constant or repeated seepage or leakage of water or the presence or con-densation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is replaced by the following:

(c) Smog, rust or other corrosion;

B. **Coverage C – Personal Property**

12. **Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(4)** is replaced by the following:

(4) Caused by constant or repeated seepage or leakage of water or the presence or con-densation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 05**:

A. Under Coverages A, B and **C**:

Paragraph **2.d.** is replaced by the following:

d. Caused by constant or repeated seepage or leakage of water or the presence or con-densation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is replaced by the following:

(3) Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

Exclusion A.10. is added:

10. **"Fungi", Wet Or Dry Rot, Or "Bacteria"**

"Fungi", Wet Or Dry Rot, Or "Bacteria" meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or "bacte-ria".

This exclusion does not apply:

a. When "fungi", wet or dry rot, or "bacteria" results from fire or lightning;

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or "Bacteria" Addi-tional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or light-ning; or

c. With respect to "fungi", wet or dry rot, or "bacteria" that is located on the portion of the covered property that must be repaired or replaced because of direct physical dam-age caused by a Peril Insured Against.

However, the exclusion shall continue to apply to:

(1) The cost to treat, contain, remove or dispose of "Fungi", Wet Or Dry Rot, Or "Bacteria" beyond that which is required to repair or replace the covered property physically damaged by a Peril Insured Against;

© ISO Properties, Inc., 2004

POLICY NUMBER: FH 20071910526 00

(2) The cost of any testing of air or property to confirm the absence, presence or level of "Fungi", Wet Or Dry Rot or "Bac-teria" whether performed prior to, during or after removal, repair, restoration or replacement; and

(3) Any increase in loss under Coverage **D** — Loss of Use and Additional Coverage **1.** Debris Removal resulting from **c.(1)** and **(2).**

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or "bacteria" is cov-ered.

## SECTION I – CONDITIONS

Condition **P. Policy Period** is replaced by the follow-ing:

### P. Policy Period

This policy applies to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition **A. Limit Of Liability** is replaced by the following:

### A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or per-sons injured. All "bodily injury" and "property dam-age" resulting from any one accident or from con-tinuous or repeated exposure to substantially the same general harmful conditions will be consid-ered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Decla-rations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indi-rectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or "bacteria" will not be more than the Section **II** — Coverage **E** Aggregate Sub-limit Of Liability for "Fungi", Wet Or Dry Rot, Or "Bacteria". That sublimit is the amount shown in the Schedule. This is the most we will pay regard- less of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;

**2.** Number of persons injured;

**3.** Number of persons whose property is dam-aged;

**4.** Number of "insureds"; or

**5.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any re-maining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or "bacteria" described in **A. Limit Of Liability** of this endorsement, Condition **B. Severability Of Insurance** is replaced by the following:

### B. Severability Of Insurance

This insurance applies separately to each "in-sured" except with respect to the Aggregate Sub-limit of Liability described in this endorsement un-der Section **II** — Conditions **A. Limit Of Liability.** This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

© ISO Properties, Inc., 2004

Policy Number: FH 20071910526 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL HURRICANE DEDUCTIBLE - LOUISIANA

### Forms HO 00 02, HO 00 03, and HO 00 08 Only

### SCHEDULE

| |
|---|
| **Hurricane Deductible Percentage Amount: 2   %** |
| **Insured's Signature:**                                                     **Date:** |

Entries may be left blank if shown elsewhere in this policy for this coverage.

**A. Definitions**

The following definition, as defined by the National Hurricane Center of the National Weather Service, is added for the deductible provided by this endorsement:

"Hurricane" means a warm-core tropical cyclone in which the maximum sustained surface wind is 74 miles per hour or more.

**B. Special Hurricane Deductible**

1. We will pay only that part of the total of all loss payable under Section I – Property Coverages that exceeds the hurricane percentage deductible stated in this endorsement.

2. The dollar amount of the hurricane deductible is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown above.

3. The Hurricane deductible described above shall apply during the period:

   a. Beginning at the time a Hurricane watch or Hurricane warning is issued for any part of the state of Louisiana by the National Hurricane Center of the National Weather Service;

   b. Continuing for the time period which the Hurricane conditions exist anywhere in the state; and

   c. Ending 24 hours following the termination of the last Hurricane watch or Hurricane warning for any part of the state of Louisiana by the National Hurricane Center of the National Weather Service.

4. This deductible does not apply to Coverage D - Loss of Use.

**C. Loss by Windstorm That Is Not A Declared Hurricane**

Refer to the policy deductible shown on the Declarations page for the deductible that applies if the loss is caused by a windstorm loss that is not a declared hurricane.

All other provisions of this policy apply.

This endorsement forms part of the policy.

CTZ-U-0267 (04/05)

Copyright, Property Insurance Association of Louisiana, includes copyrighted material of ISO Properties, Inc. with its permission, 2001



POLICY NUMBER: FH 20071910526 00

**HOMEOWNERS**
HO 04 90 10 00

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

**A. Eligible Property**

**1.**

Covered losses to the following property are settled at replacement cost at the time of the loss:

**a.** Coverage **C**; and

**b.** If covered in this policy:

**(1)** Awnings, outdoor antennas and outdoor equipment; and

**(2)** Carpeting and household appliances;

whether or not attached to buildings.

**2.** This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

**a.** Jewelry;

**b.** Furs and garments:

**(1)** Trimmed with fur; or

**(2)** Consisting principally of fur;

**c.** Cameras, projection machines, films and related articles of equipment;

**d.** Musical equipment and related articles of equipment;

**e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

**(1)** Pens or pencils;

**(2)** Flasks;

**(2)** Smoking implements; or

**(3)** Jewelry; and

**f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

**1.** Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

**2.** Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

**3.** Articles not maintained in good or workable condition.

**4.** Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above:

**1.** We will pay no more than the least of the following amounts:

**a.** Replacement cost at the time of loss without deduction for depreciation;

**b.** The full cost of repair at the time of loss;

**c.** The limit of liability that applies to Coverage **C**, if applicable;

**d.** Any applicable special limits of liability stated in this policy; or

**e.** For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

**2.** If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

**3.** You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

POLICY NUMBER:  FH 20071910526 00

HOMEOWNERS
HO 04 41 10 00

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED
### RESIDENCE PREMISES

#### SCHEDULE*

Name and Address of Person or Organization*
Ms JUSTINE ELIZABETH TRUDEAU
3005 BLANCHARD DR
CHALMETTE, LA 70043

Interest*
Co-owner

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**DEFINITIONS**

Definition **5.** which defines "insured" is extended to include the person or organization named in the Schedule above, but only with respect to:

1. Coverage **A** – Dwelling and Coverage **B** – Other Structures; and

2. Coverage **E** – Personal Liability and Coverage **F** – Medical Payments To Others but only with respect to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of the "residence premises".

**SECTION II – EXCLUSIONS**

This coverage does not apply to "bodily injury" to an "employee", "residence employee" or a temporary employee furnished to the "insured" to substitute for a permanent "residence employee" arising out of or in the course of the employee's employment by the person or organization.

**CANCELLATION AND NONRENEWAL NOTIFICATION**

If we decide to cancel or not to renew this policy, the person or organization named in the Schedule will be notified in writing.

All other provisions of this policy apply.

HO 04 41 10 00          Copyright, Insurance Services Office, Inc.,  1999          Page 1 of 1