UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

CASE NO. MDL Docket No. 09-2047

SECTION L
JUDGE FALLON
MAGISTRATE JUDGE WILKINSON

IN RE: CHINESE MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

THIS DOCUMENT RELATES TO THE
FOLLOWING CASE:
Foster, on behalf of herself individually
and all others similarly situated
v. Northstar Holdings, Inc., a Florida
corporation; Northstar Homes, Inc.,
a Florida corporation; Knauf GIPS KG,
a German corporation; Knauf Plasterboard
(TIANJIN) Co., Ltd., a Chinese limited
liability corporation; Knauf Plasterboard
(WUHU) Co., Ltd.; Knauf Plasterboard
(DONGGUAN) Co. Ltd.; USG Corporation,
a foreign corporation; Banner Supply Co.,
a Florida corporation; Rothchilt International
Ltd., a Foreign corporation; Developer/Builder
Does 1-100; Supplier Does 1-100; Installer
Does 1-100; and, Distributer Does 1-100;
Case No. 09-4320 L (2)
_____/

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff KATHERINE FOSTER brings this action on behalf of herself and on behalf of a

Class of persons described below against: Northstar Holdings, Inc. and Northstar Homes, Inc.

(collectively referred to as "Northstar Homes," "the Northstar Defendants," and "Builder").

Plaintiff also brings this action against the drywall manufacturers:  Knauf Gips KG, Knauf

Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co. Ltd. and Knauf Plasterboard

(Dongguan) Co., Ltd. (collectively referred to herein as "Knauf"); Beijing New Building

Material PLC, Taishan Gypsum Co. Ltd., and Shandong Taihe Dongxin Co. (collectively

referred to herein as "BNBM").  Plaintiff also brings this action against the drywall suppliers: USG Corporation, L&W Supply Corporation d/b/a Seacoast Supply, All Interior Supply, Inc. (collectively referred to herein as "USG"); Banner Supply Company; Rothchilt International Ltd. ("Rothchilt"); – all collectively referred to herein as "Suppliers," Developer/Builder Does 1-100; Supplier Does 1-100; Installer Does 1-100; and, Distributer Does 1-100.  All facts contained in this complaint are alleged upon information and belief and based upon the investigation of counsel.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction as the amount in controversy exceeds $15,000.00, exclusive of interest, costs, and attorneys' fees.

2.      Venue in this action is proper because, among other things, the Plaintiff resides in Palm Beach County, Florida and at least one of the causes of action accrued in Palm Beach County, Florida.

3.      This Court has personal jurisdiction over the non-resident Defendants pursuant to Florida Statutes § 48.193(2) because they are "engaged in substantial and not isolated activity within this state."  *See* Fla. Stat. § 48.193(2).  Additionally, Plaintiff's cause of action arises from Defendants, personally or through their agents, causing injury to property within the State of Florida arising out of acts or omissions of Defendants and, at the time of the injury, products, materials, or things manufactured, distributed, supplied, installed, marketed, sold, or otherwise provided by Defendants were used and consumed within the State of Florida in the ordinary course of commerce, trade, or use.  *See* Fla. Stat. §48.193(1)(f)(2).

## INTRODUCTION

4.     Ordinary, non-defective drywall, is a product made from naturally occurring minerals mined from the earth.  Gypsum mines are actually the remains of ancient sea beds that have long ago dried up and become buried by accreting earth and soil.  Although all gypsum mines vary slightly in terms of composition, all contain some elemental sulfur and strontium.

5.     The drywall used by the Defendants in the in the homes of Plaintiff and the Plaintiff Class Members is inherently defective because it contains excessive amounts of elemental sulfur and strontium and as a result causes damage and corrosion ("the Defect") to home structure and mechanical systems such as air-conditioner and refrigerator coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and other property such as microwaves, utensils, personal property, electronic appliances, jewelry, and other household items ("Other Property").  The drywall at issue is also defective in that it has a "rotten egg" smell associated with it which is caused by the excessive elemental sulfur and which is capable of, among other things, causing health consequences such as respiratory problems, sinus problems, ocular problems and nose bleeds.

6.     This Defect existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted.  There is no repair that will correct the Defect.

7.     As a result of Defendants' conduct as alleged herein, Plaintiff and thousands of other Class Members have suffered economic losses by owning a home containing inherently defective drywall that has caused damage to their home and Other Property.

8.     Plaintiff and Class Members have incurred or will incur tens of thousands of dollars in damages including, but not limited to:  repair/replacement of Plaintiff's and Class Members' homes, Other Property, and any materials contaminated or pitted by the drywall's

excessive sulfur and strontium content; incidental and consequential damages; and diminution of value of Plaintiff's and Class Members' homes.

9.     Further, as a result of Defendants' conduct as alleged herein, Plaintiff and Class Members have suffered harm and/or been exposed to an increased risk of harm and thus has need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical monitoring.

## THE PARTIES

### PLAINTIFF

10.     Plaintiff KATHERINE FOSTER owns and resides in the home located at 8777 Cobblestone Preserve Court, Boynton Beach, Florida 33472 which is located in a development known as "Countryside Meadows a/k/a Cobblestone Creek."

11.     Plaintiff's home was built using defective Chinese drywall in approximately 2007.  Plaintiff has had substantial problems with Plaintiff's home, including but not limited to the pitting and tarnishing effects of the increased sulfur and/or other compounds in the drywall, has suffered adverse medical effects and personal injury, and has suffered injury to personal and real property as a result of Defendants' conduct as further described herein.

### DEFENDANTS

**Developer/Builder Defendants:  Northstar Holdings, Inc. and Northstar Homes, Inc.**

12.     Defendant Northstar Holdings, Inc. is a Florida corporation with its principal place of business in Palm Beach County, Florida.

13.     Defendant Northstar Homes, Inc. is a Florida corporation with its principal place of business in Palm Beach County, Florida.

14. Defendants Northstar Holdings, Inc. and Northstar Homes, Inc. are affiliated companies located at the same address and having the same principal officers and directors. The Northstar Defendants operate under the trade name of "Northstar Homes." Northstar Homes is a leading South Florida home builder and since its inception it has built thousands of homes in numerous communities in the State of Florida. Northstar Homes developed and built the community where the Plaintiff's home is situated.

15. The Northstar Defendants purchased or otherwise procured drywall manufactured in China ("Chinese drywall") for use in the homes Defendants were developing and building in the State of Florida. The Northstar Defendants installed or caused the installation of Chinese drywall in the Plaintiff's home. Defendants' acts or omissions, directly or indirectly through its agents, employees, or affiliates, with respect to the Chinese drywall, have injured Plaintiff and Class Members as alleged herein. The Northstar Defendants also failed to provide adequate warnings regarding the hazardous and defective nature of Chinese drywall.

16. Northstar Holdings and Northstar Homes also acted in a joint enterprise, a joint venture and/or as each other's agent within the course and scope of said agency.

17. At all times relevant hereto, the Northstar Defendants acted by and through their employees, agents, apparent agents and representatives, who were acting within the course and scope of their employment, agency, apparent agency and representation and in the furtherance of Defendants' interests.

**Manufacturer Defendants**

**Knauf Entities**

18. Defendant Knauf Gips is a German corporation doing business in the State of Florida with its principal place of business located at Postfach 10, D-97343 Iphofen, Germany.

19.     Defendant Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf Tianjin"), is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at North Yinhe Bridge, East Jingjin Road, RC-300400, Tianjin, China.

20.     Defendant Knauf Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu"), is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at No. 2 Gang Wan Road, RC-241009, Wuhu Anhui, China.

21.     Defendant Knauf Plasterboard (Dongguan) Co., Ltd. ("Knauf Dongguan"), is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at No.2 Xinsha Development Zone, RC-523147, Guangdong, China.

22.     Knauf Gips is a leading manufacturer of building materials and systems, including drywall.  Knauf Gips is the parent corporation of its affiliates Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan (collectively "Knauf").  Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan and their employees are the actual and/or apparent agents of Knauf Gips, and all of the Knauf entities are acting as a joint enterprise and/or joint venture.

23.     The Knauf entities provide building materials and systems to customers in over 50 countries, including the United States.  At least 37 million pounds of Knauf drywall was shipped directly from three sites in China to Florida through Tampa and Port Canaveral.  Knauf Tianjin sent an additional amount (characterized by company officials as "most" of its drywall) into Miami.

24.     Shipping records show coordination between Knauf's Chinese subsidiaries, such as sharing the same vessel to transport their product to the U.S.  In April 2006, the *Yong An Cheng* took three shipments from Knauf Wuhu and a fourth from Knauf Dongguan to the U.S. All were imported by USG Corporation, one of the largest manufacturers of domestic drywall in the U.S. market.

25.     Knauf Tianjin admits that it manufactured and imported at least 20 percent of the imported Chinese drywall that came into the United States.

26.     At all material times hereto, Knauf Gips strictly controlled the product quality of its Chinese affiliates, and supervised, operated, trained and otherwise exercised control and/or had the right to control all of the operations of Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, and their agents, apparent agents, and employees.

27.     Knauf, directly or through its agents, systematically and continuously manufactured, sold, distributed, marketed and placed within the stream of commerce tens of millions of square feet of defective drywall that went to numerous purchasers in the State of Florida, and that is now installed in numerous Florida homes, including Plaintiff's and Class Members' homes.  Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of Chinese drywall in Florida.

**BNBM Entities**

28.     Defendant Beijing New Building Material PLC, is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at No.16, West Road, Jiancaicheng Xisanqi Haidian District, Beijing, China 100096.

29.     Defendant Taishan Gypsum Co. Ltd. ("Taishan"), is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at Daiyue District, Taian, Shandong Province, China, 271026.

30.     Defendant Shandong Taihe Dongxin Co. ("Shandong") is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at Dawenkou, Daiyue District, Taian, Shandong Province, China, 271026.

31.     Beijing New Building Material is the parent corporation or otherwise controls Taishan and Shandong, and will be collectively referred to herein as "BNBM." Taishan and Shandong and their employees are the actual and/or apparent agents of Beijing New Building Material, and all of the BNBM entities are acting as a joint enterprise and/or joint venture.

32.     BNBM, together with its subsidiaries, is the largest building material manufacturer in China and is one of the largest manufacturers of drywall in the world with an annual production capacity of over 1.3 billion square feet. The BNBM entities market their drywall under a number of trade names including "Beijing," "Dragon Brand," and "Taishan." The United States is a major market for BNBM, and the BNBM entities shipped millions of pounds of defective drywall into Port Everglades, Florida, as well as other Florida ports.

33.     BNBM, directly or through its agents, systematically and continuously manufactured, sold, distributed, marketed and placed within the stream of commerce tens of millions of square feet of defective drywall that went to numerous purchasers in the State of Florida, and that is now installed in numerous Florida homes, including Plaintiff's home. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of Chinese drywall in Florida.

**Defendant Distributors/Suppliers**

**USG Corporation Entities**

34.     Defendant USG Corporation is a Delaware corporation authorized and registered to do and doing business in the State of Florida.  USG Corporation, together with its various affiliates, is the nation's largest distributor of drywall and related building products.

35.     Defendant L&W Supply Corporation is a Delaware corporation authorized and registered to do and doing business in the State of Florida, with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661.  L&W Supply is a subsidiary of USG Corporation and also operates in Florida as Seacoast Supply.

36.     Defendant All Interior Supply, Inc. is a Florida corporation with its principal place of business located at 6969 West 20th Avenue, Hialeah, Miami-Dade County, Florida 33014.  All Interior Supply is owned by L&W Supply, and is therefore also a subsidiary of USG Corporation.

37.     USG Corporation, L&W/Seacoast Supply, and All Interior Supply are collectively referred to herein as USG.

38.     USG, directly or through its agents, systematically and continuously exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed within the stream of commerce substantial quantities of defective drywall.  This defective drywall went to numerous purchasers in the State of Florida, and is now installed in numerous Florida homes, including Plaintiff's home, and Class Members' homes.

39.     Directly or indirectly through their agents, or affiliates, the USG Defendants' acts or omissions related to defective drywall have injured Plaintiff as alleged herein.  Defendants

also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall in Florida.

**Defendant Banner Supply**

40.     Defendant Banner Supply is a Florida corporation with its principal place of business located at 7195 N.W. 30th Street, Miami, Miami-Dade County, Florida  33122.

41.     Defendant Banner Supply directly or through its agents, exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed within the stream of commerce substantial quantities of defective drywall.  This defective drywall went to numerous purchasers in the State of Florida, and is now installed in numerous Florida homes, including Plaintiff's home, and Class Members' homes.

42.     Directly or indirectly through agents or affiliates, Defendant Banner Supply's acts or omissions related to defective drywall have injured Plaintiff as alleged herein.  Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall in Florida.

**Defendant Rothchilt International Ltd.**

43.     Defendant Rothchilt International Ltd. ("Rothchilt") is a foreign corporation doing business in the State of Florida with its principal place of business located at N-510 Chia Hsin BId., Annex 96 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan, R.O.C.

44.     Defendant Rothchilt, directly or through its agents, systematically and continuously exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed within the stream of commerce substantial quantities of defective drywall.  This defective drywall went to numerous purchasers in the State of Florida, and is now installed in numerous Florida homes, including Plaintiff's home, and Class Members' homes.

45.     Directly or indirectly through agents or affiliates, Defendant Rothchilt's acts or omissions related to defective drywall have injured Plaintiff as alleged herein.  Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall in Florida.

## GENERAL ALLEGATIONS

**A.     Chinese Drywall Distribution in Florida**

46.     Tens of millions of square feet of Chinese drywall was used in the construction of Florida homes between 2004 and the present.

47.     Because of a shortage of construction materials from a booming housing market and the massive damage in the United States in 2005 caused by Hurricanes Katrina and Wilma, builders, suppliers, and importers began bringing significant stocks of foreign manufactured Chinese drywall into Florida and the United States.

48.     At least 550 million pounds of Chinese drywall came into the United States from approximately 2004 to 2006 -- enough to construct 60,000 average-size homes.

49.     Nearly 60 percent of the Chinese drywall that came into the United States came in through Florida ports.

50.     Miami's port received the largest number of shipments of Chinese drywall. Public records show that more than 100 million pounds of Chinese drywall were off-loaded in Miami.  Other ports with significant Chinese drywall off-loading include Port Everglades (80 million pounds), Tampa (50 million pounds), as well as Port Manatee, Pensacola, Port Canaveral, and Jacksonville.

**B.     Drywall Background**

51.    Drywall is also commonly known as gypsum board, wallboard, plasterboard, rock lath, sheetrock, gyproc, or simply, board.  A drywall panel is made of a paper liner wrapped around an inner core made primarily from hardened gypsum plaster.

52.    In order to form drywall, gypsum must be "calcined," or partially dehydrated by heating.  It is then ground into a powder and mixed with water to form a slurry which is poured between two paper layers like a sandwich.  When the core sets and is dried in a large drying chamber, the "sandwich" becomes rigid and strong enough for use as a building material.

53.    The Chinese drywall manufactured, sold and/or used by Defendants contained naturally mined gypsum.

54.    Gypsum, due to the manner in which it is created, contains many different elements, including sulfur and strontium.  The presence of sulfur within gypsum is considered an important composite part of the finished product (drywall), as the sulfur assists in deterring mold formation and other less desirable bio-processes.  However, when drywall contains excessive amounts of these otherwise desirable components, the drywall can cause pitting and/or tarnishing on metal components and surfaces and a malodorous smell that has been compared to the smell of "rotten eggs."

55.    Knauf has stated that the problem drywall came from a specific gypsum mine that supplied various manufacturers.

56.    One importer acknowledged in published reports that the defective Chinese Drywall was "well known in the industry" by 2007. Plaintiff and Class Members could not have discovered the existence of the defect in the Chinese-manufactured drywall until press reports about the defects were released in December 2008.

57.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff's and Class Members homes and bodies have been exposed to the defective drywall and the pitting and/or tarnishing and harmful effects of the excess amounts of sulfur and strontium found within the subject defective drywall.

58.     As a direct and proximate result of Defendants' use of defective drywall and the effects of the excess amounts of sulfur and strontium found within the defective drywall, the Plaintiff and Class Members have suffered, and continues to suffer damages for injuries from medical ailments, including but not limited to respiratory problems, sinus problems, eye problems and nosebleeds, in addition to the creation of noxious odors, which smell like "rotten eggs."

**F.      The Mere Existence of Chinese Drywall Has Diminished Home Values**

59.     Because neither the long term effects of Chinese drywall, nor the triggers of the adverse processes within the Chinese drywall are yet fully understood, the mere existence of Chinese manufactured drywall in a particular home causes automatic and substantial diminution of value to a home.  All homes found or disclosed to have Chinese drywall are tainted by the mere existences of the drywall in the home, even if it is ultimately determined that some drywall manufactured in China is not defective.  While the Plaintiff and Class Members are certain that their homes contain defective Chinese drywall, if it is ultimately determined that the drywall in Plaintiff's and Class Members homes are not defective, even though it was manufactured in China, Plaintiff and Class Members have still sustained a diminution of value of Plaintiff's and Class Members' homes and are entitled to recover damages for that diminution of value.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this case as a Class Action pursuant to Fed. R. Civ. P. 23,

individually and on behalf of a class defined as:

> All owners and residents of homes in the United States, which contain defective drywall manufactured, sold or installed by Defendants as well as any individual or entity that paid for or performed repairs of damage caused by the drywall. Defendants, their officers, directors, subsidiaries, or any person or other entity related to, affiliated with or employed by Defendants are excluded from the Class Definition.

61.     Expressly excluded from the Classes defined above are:

A.     Defendants and any entities in which Defendants have a controlling interest;

B.     Any entities in which Defendants officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

C.     The Judge and Magistrate to whom this case is assigned and any member of the Judge's or Magistrate's immediate family; and,

D.     All persons or entities that properly execute and timely file a request for exclusion from the Class.

## NUMEROSITY

62.     The Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of Class members is presently unknown to Plaintiff, but it is believed that Class members number at least in the thousands. The identity of Class members is ascertainable. Class members may be informed of the pendency of this Class action by a combination of direct mail and public notice, or other means.

**COMMONALITY**

63.     Common questions of fact and law exist as to all members of the Class, which predominate over questions affecting only individual members of the Class. These include, but are not limited to, the following:

a.      Whether Defendants manufactured and sold defective drywall;

b.      Whether Defendants are liable for the repair and replacement of all defective drywall;

c.      Whether Defendants are liable for the repair and replacement of all damaged items in the affected homes;

d.      Whether Defendants are liable for the adverse medical consequences of the defective drywall;

e.      Whether Defendants deliberately concealed information about the defective drywall from the Class

f.      Whether Defendants negligently, recklessly or intentionally concealed information about the defective drywall;

g.      Whether Defendants breached express warranties;

h.      Whether Defendants breached implied warranties;

i.      Whether Plaintiffs are entitled to compensatory, punitive, and other damages as a result of Defendants acts and/or omissions;

j.   Whether Defendants are guilty of fraudulent misrepresentation;

k.   Whether Defendants are guilty of fraudulent concealment;

l.   Whether Defendants are guilty of negligence;

## TYPICALITY

64.     Plaintiff's claims are typical of the claims of the Class and all such claims arise out of the wrongful course of conduct engaged in by Defendants.

## ADEQUACY OF REPRESENTATION

65.     Plaintiff is an adequate representative of the Class because she is a member of the

66.     Class and her interests do not conflict with the interests of the members of the Class she seeks to represent. Plaintiff is represented by experienced and able counsel who has litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and her counsel can fairly and adequately protect the interests of the members of the Class.

## RULE 23(B) CERTIFICATION

67.     Class certification is also appropriate in this action because:

a.     Pursuant to Fed.R.Civ.P. 23(b)(l)(A), the prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible duties for Defendants under the law alleged herein.

b.     In seeking declaratory relief from Defendants' conduct alleged herein, pursuant to  Fed.R.Civ.P. 23(b)(2), Defendants have acted or refused to act on grounds that apply generally to the Class, such that declaratory relief would be appropriate to the Class as a whole.

c.     Pursuant to Fed.R.Civ.P. 23(b)(3) the questions of law and fact common to all Class Members predominate over any questions that might arise as to an individual member, such that a Class Action is the superior, fair and efficient method of

adjudicating this controversy where, as here, individual claims would be identical or nearly identical.

**EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

68.     The running of any statute of limitations has been tolled due to Defendants' fraudulent concealment. By failing to disclose a known defect to Plaintiff and the Class, and misrepresenting the nature of their product as safe for its intended use, actively concealed from Plaintiff and the Class the true risks associated with their drywall.

69.     Plaintiff and the Class could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

70.     In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall.  Defendants were under a duty to disclose the true information about their product and they failed in that duty to Plaintiff and the Class.

71.     Plaintiff and the Class had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein.

**Conditions Precedent**

72.     All notice required by Chapter 558, Florida Statutes, and conditions precedent to bringing this action have been met or will have been met or were waived by Defendants.

**<u>FRAUDULENT CONCEALMENT</u>**

73.     The running of any statute of limitations has been tolled due to Defendants' fraudulent concealment.  By failing to disclose a known hazardous problem to Plaintiff and Class Members, and misrepresenting the nature of their product as safe for its intended

use, Defendants' actively concealed from Plaintiff the true risks associated with Plaintiff's and Class Members' drywall.

74.     Plaintiff and Class Members could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

75.     In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the hazardous and problematic nature of their drywall.  Defendants were under a duty to disclose the true information about their product and they failed in that duty to Plaintiff and Class Members.

76.     Plaintiff had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein.

## COUNT I

### NEGLIGENCE
### (Against All Defendants)

77.     Plaintiff and Class Members incorporate and restate paragraphs 1-76 as if fully set forth herein.

78.     Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in the a) design, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installation, j) marketing, and/or k) selling of the defective drywall to prevent the drywall from containing excessive sulfur and strontium as set forth herein.

79.     Defendants also owed a duty to Plaintiff and Class Members to adequately warn of their failure to do the same; instruct the Plaintiff of the hazard and problems associated with drywall; not to misrepresent that the drywall was safe for its intended purpose when,

in fact, it was not; and not to conceal information from Plaintiff and Class Members regarding reports of adverse effects associated with drywall.

80.     Defendants were negligent and breached their duty to exercise reasonable care in the design, manufacture, export, import, distribution, delivery, supply, inspection, installation, marketing, and/or sale of drywall.  Defendants further breached their duty to adequately warn of their failure to do the same.

81.     Defendants further breached their duty by:  failing to adequately warn and instruct the Plaintiff and Class Members of the hazard and problems associated with drywall; misrepresenting that drywall was safe for its intended purpose when, in fact, it was not; concealing information from Plaintiff and Class Members regarding reports of adverse effects associated with drywall; and improperly concealing and/or misrepresenting information from the Plaintiff and Class Members concerning the severity of risks and dangers of the Defendants' drywall and/or the manufacturing irregularities.

82.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic and other damages and is entitled to recover monetary damages for:  diminution of value of Plaintiff's and Class Members' homes, replacement/repair of Plaintiff's and Class Members' homes; the removal and replacement of all of the drywall contained in Plaintiff's and Class Members' homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household  items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

83.      As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while Plaintiff's and Class Members homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; and other related expenses.

84.      As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and is experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

85.      Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT II

### STRICT LIABILITY
(Against all Defendants)

86.      Plaintiff and Class Members incorporate and restate paragraphs 1-76 as if fully set forth herein.

87.      Defendants were responsible for the design, manufacture, export, import, distribution, delivery, supply, inspection, installation, marketing, and sale of the drywall at issue.

88.      By the time the drywall left the Defendants' hands, the risks associated with the product far outweighed its benefits.

89.     Further, by the time the drywall left the Defendants' hands, they knew, or should have known, the product was unsafe, defective, and could cause serious physical and economic harm to Plaintiff.

90.     Defendants had a duty to provide Plaintiff with a safe and properly functioning product.  This is a duty Defendants failed to uphold.

91.     Because Defendants' product created an unreasonable risk to Plaintiff's and Class Members' homes and person(s), Defendants are strictly liable for economic and physical injuries to Plaintiff and Class Members.

92.     No prudent buyer of a home with Defendants' defective drywall product could be expected to determine on his or her own that Defendants' product was dangerous and defective.

93.     Defendants not only designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and sold poorly designed and defective drywall, but also failed to give Plaintiff and Class Members adequate warning regarding the risks associated with defective drywall product.

94.     Defendants' drywall was a substantial factor in the economic and physical losses that have been, and continue to be, incurred by the Plaintiff and Class Members.

95.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred personal injuries and is experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

96.     Economic losses include, but are not limited to, diminution of value of Plaintiff's and Class Members' homes, substantial reconstruction and repair of Plaintiff's

and Class Members' homes, damage to property other than the Plaintiff's and Class Members' homes, as well as any medical expenses incurred as a result of Defendants' drywall, which are considerable.

## COUNT III

### BREACH OF EXPRESS WARRANTY
(Against all Defendants)

97.   Plaintiff and Class Members incorporate and restate paragraphs 1-76 as if fully set forth herein.

98.   Defendants expressly warranted that the drywall installed in Plaintiff's and Class Members' homes was safe, efficacious, well tested and of high quality.

99.   By installing a defective, unsafe, and poorly manufactured drywall product, Defendants have breached their express warranty.

100.   Defendants knew or should have known that their warranties were specious.

101.   Plaintiff and Class Members relied on these express warranties to Plaintiff's and Class Members' detriment.

102.   As a direct result of this breach of expressed warranty, physical and economic damages have been, and continue to be, incurred by Plaintiff and Class Members.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(All Defendants)

103.   Plaintiff and Class Members incorporate and restate paragraphs 1-76 as if fully set forth herein.

104.   Defendants were in privity with Plaintiff and Class Members.

105.   At the time Defendants designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold the defective drywall, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiff's and Class Members homes for use as a building material, and impliedly warranted the product to be fit for that use.

106.   Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

107.   The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiff's and Class Members' homes for use as a building material, because it contained defects as set forth herein.

108.   The Defendants thus breached the implied warranty of merchantability because the drywall was not fit to be installed in Plaintiff's and Class Members' homes as a building material due to the hazard and problems set forth herein.

109.   Defendants had reasonable and adequate notice of the Plaintiff's and Class Members' claims for breach of implied warranty of merchantability and failed to cure.

110.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic damages and is entitled to recover monetary damages for: replacement/repair of Plaintiff's and Class Members' homes; diminution of value of Plaintiff's and Class Members' homes; the removal and replacement of all of the drywall contained in Plaintiff's and Class Members' homes; the replacement of Other

Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or pitted and tarnished by the drywall.

111.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while Plaintiff's and Class Members' homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; and other related expenses.

112.    Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT V

**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
(All Defendants)

113.    Plaintiff and Class Members incorporate and restate paragraphs 1-76 as if fully set forth herein.

114.    Defendants were in privity with Plaintiff and Class Members.

115.    Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

116.   The drywall was defective because it was not fit for the specific purpose of being installed in the Plaintiff's and Class Members' homes as a building material, for which Plaintiff and Class Members bought the product in reliance on the judgment of Defendants.

117.   The Defendants breached the implied warranty of fitness for a particular purpose because the drywall was not fit to be installed in Plaintiff's and Class Members' homes as a building material due to the hazard and problems set forth herein.

118.   Defendants had reasonable and adequate notice of the Plaintiff's and Class Members' claims for breach of implied warranty of merchantability and failed to cure.

119.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic damages and is entitled to recover monetary damages for: diminution of value of Plaintiff's and Class Members' homes; replacement/repair of Plaintiff's and Class Members' homes; the removal and replacement of all of the drywall contained in Plaintiff's and Class Members' homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

120.   As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while Plaintiff's and Class Members' homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; and other related expenses.

121.    Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT VI

### NEGLIGENT MISREPRESENTATION
(Against All Defendants)

122.    Plaintiff and Class Members incorporate and restate paragraphs 1-76 as if fully set forth herein.

123.    As discussed herein, Defendants negligently misrepresented material facts regarding the characteristics of the drywall and omitted other material facts that should have been disclosed to Plaintiff and Class Members.

124.    In disseminating information regarding the drywall, Defendants negligently caused statements to be made, which they knew or should have known were inaccurate and untrue.

125.    As a direct consequence of the Defendants' negligent misrepresentations and omissions of material facts regarding the defective drywall, Plaintiff and Class Members have been, and will be irreparably harmed and otherwise damaged in an amount which cannot presently be calculated.

126.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic damages, and Plaintiff and Class Members have incurred personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards including economic and non-economic damages resulting from the adverse health effects.

127.     Until it has been conclusively established that all defective drywall has been removed and that air quality is safe, Defendants should bear the expense of air and environmental monitoring in Plaintiff's and Class Members' homes.


## DEMAND FOR TRIAL BY JURY

Plaintiff and Class Members hereby demand a trial by jury as to all issues so triable as a matter of right.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that this Honorable Court grant the following relief:

    a.   An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate class, finding that Plaintiff is a proper representative of the class and that her counsel is appropriate class counsel;

    b.   An order requiring that Defendants pay compensation to Plaintiff and Class Members to the full extent permitted by the law;

    c.   An order requiring medical monitoring;

    d.   Costs and expenses in this litigation, including, but not limited to, expert fees, filing fees, and reasonable attorneys' fees; and

    e.   Such other relief as the Court may deem just and appropriate.


Dated: November 18, 2010

Respectfully submitted,

 _/s/ Robert B. Brown_
Robert B. Brown, III, Esq.
Florida Bar No. 0621609
Bruce W. Steckler, Esq.
Texas Bar No. 00785039
BARON & BUDD, P.C.
2665 South Bayshore Drive, Suite #220
Miami, FL  33133
Tel.  786-837-5444 / Fax: 786-837-5445
bbrown@baronbudd.com
bsteckler@baronbudd.com

and

Jeremy W. Alters (Fla. Bar No. 111790)
ALTERS BOLDT BROWN RASH & CULMO, PA
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
(305) 571-8550 phone
(305) 571-8558 fax
jeremy@abbrclaw.com