# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL      MDL No. 02047
      PRODUCTS LIABILITY LITIGATION         SECTION L

                                       JUDGE FALLON
                                       MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

SEAN and BETH PAYTON, *et al*. v.
KNAUF GIPS KG, *et al.*,
Case No. 2:09-cv-07628-EEF-JCW

_____/

## DEFENDANT FRY BUILDERS, INC.'S CROSS CLAIM[1]

    COMES NOW Defendant/Third-Party-Plaintiff, R. Fry Builders, Inc. ("**Fry**"), by and

through its undersigned counsel, and alleges for its Cross-Claim against Defendants/Cross-

Defendants Knauf Gips KG ("**Knauf Gips**"), Knauf Plasterboard (Tianjin) Co. Ltd. ("**Knauf**

**Tianjin**"), Knauf Plasterboard (Wuhu) Co. Ltd. ("**Knauf Wuhu**"), Knauf Insulation GmbH a/k/a

Knauf Insulation USA ("**Knauf USA**")[2], Guangdong Knauf New Building Products Co., Ltd.

---

[1]    Plaintiffs commenced this action on December 9, 2009 by filing an Omnibus Class Action Complaint in this cause, which was subsequently amended and also expanded by way of intervention (after all modifications, referred to herein as the "Complaint"). In response, Fry has moved to dismiss the Complaint. These Cross-Claims are therefore being brought to the extent all claims against Fry are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims against Fry are not dismissed with prejudice, Fry also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

[2]    Plaintiffs did not name Knauf USA as a defendant until July 9. 2010, when intervening plaintiffs, Phillip Kennedy and Lyzet Machado-Kennedy, filed a motion to intervene asking the Court to grant their Omnibus Class Action Complaint In Intervention (I(A)) (the "First Intervention Complaint"), which alleged claims against Knauf USA for the first time. This Court granted their motion at the September 16, 2010 Status Conference. On October 5, 2010, intervening plaintiffs, Benjamin and Jennifer Abt, filed a motion to intervene asking the Court to grant their Omnibus Class Action Complaint In Intervention (I(B)) (the "Second Intervention Complaint"), which also alleged claims against Knauf USA. This Court has not yet ruled on the Abt's motion.

("**Knauf Guangdong**")[3] (collectively, the "**Knauf Cross-Claim Defendants**"), La Suprema Trading, Inc. ("**La Suprema Trading**" or "**LS Trading**"), La Suprema Enterprise, Inc. ("**La Suprema Enterprise**" or "**LS Enterprise**"), Banner Supply Co. ("**Banner Co.**"), Banner Supply Company Fort Myers, LLC ("**Banner Fort Myers**") and RJL Drywall, Inc. ("**RJL**") as follows:

### CROSS-CLAIMS AGAINST THE KNAUF CROSS-CLAIM DEFENDANTS, LA SUPREMA TRADING, LA SUPREMA ENTERPRISE, BANNER CO. AND BANNER FORT MYERS

#### The Parties, Jurisdiction and Venue

1.　　This is an action for damages within the monetary jurisdiction of this Court.

2.　　The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Fry.

3.　　Fry was and is a Florida corporation doing business in Lee County, Florida, where this cause of action arose.  At all material times, Fry was a builder of residential homes in Lee County.

4.　　Fry has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Fry in the construction of their homes was defective and caused damages to Plaintiffs.

5.　　Fry denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.　　The Knauf Cross-Claim Defendants, LS Trading, LS Enterprise, Banner Co., Banner Fort Myers and RJL (collectively, the "**Cross-Claim Defendants**") have also been

---

[3]　　The Complaint originally named "Knauf Plasterboard (Dongguan) Co. Ltd." and not "Guangdong Knauf New Building Products Co., Ltd." as a defendant.  Plaintiffs subsequently filed a motion for judicial assistance asking the Court to deem the Complaint amended to replace "Guangdong Knauf New Building Products Co., Ltd." in all instances where "Knauf Plasterboard (Dongguan) Co. Ltd." appears. This Court granted Plaintiffs' motion by order dated March 12, 2010.

{FT724746;8}

named as defendants in the above styled action.  Fry adopts and incorporates, as if fully set forth herein, paragraphs 2074-2079[4], 2085, 2087, 2117,  2126-2127, 2623, 2625 and 2629 of the Complaint and paragraphs 1-2 of the First and Second Intervention Complaints[5] identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Cross-Claim Defendants.

<u>**General Allegations**</u>

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Fry is liable for damages to Plaintiffs.[6]

10.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the "**Other Property**").

---

[4]      The allegations in paragraph 2079 relating to Knauf Plasterboard (Dongguan) Co., Ltd. now apply to Knauf Guangdong.

[5]      *See* note 2, *infra*.

[6]      The named class Plaintiffs and other members of the putative class have asserted claims against Fry in this Action, as well as other actions in the state and federal courts.  The damages sought by Fry in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

11.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     In connection with the construction of certain homes in Lee County, Fry hired RJL to furnish, supply, and/or install gypsum drywall in the Homes. The drywall furnished, supplied and/or installed by RJL for use in the construction of the Homes was not altered and/or otherwise substantively changed by Fry.

14.     RJL knew that Fry required and expected the drywall it furnished, supplied and/or installed in the Homes to be fit for the ordinary purpose for which it was intended.

15.     At all material times, RJL furnished, supplied and/or installed the drywall that was installed in the Homes.

16.     Upon information and belief, RJL purchased and/or procured drywall that was installed in the Homes directly from Banner Co. and/or Banner Fort Myers (together, "**Banner**"). At all material times, Banner knew that the drywall purchased for the Homes was going to be used in construction of residential homes.

17.     Upon information and belief, Banner procured drywall that was installed in the Homes from an import-export specialist, LS Trading and/or LS Enterprise (together, "**La Suprema**").  At all material times, La Suprema knew that such drywall was going to be used in construction of residential homes.

18.     Upon information and belief, Banner also procured drywall that was installed in the Homes from the Knauf Cross-Claim Defendants. At all material times, the Knauf Cross-

4

Claim Defendants knew that such drywall was going to be used in the construction of residential homes.

19.     Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips, Knauf Tianjin, La Suprema and Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by Knauf Tianjin emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

20.     Knauf Tianjin consulted with Knauf Gips about the drywall complaints.

21.     Hans-Ulrich Hummel, head of research and development for Knauf Gips in Germany was aware of the "big problems" with Knauf boards from China, and investigated complaints of noxious odors being emitted by the drywall.

22.     Upon information and belief, Knauf Tianjin and/or Knauf Gips conducted their own tests of the drywall and advised Banner that the drywall was "smelly."

23.     Upon information and belief, Banner also conducted tests of the drywall installed in certain South Florida residential homes.

24.     Upon information and belief, Knauf Tianjin, Knauf Gips and/or Banner did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

25.     Upon information and belief, Knauf Gips and Knauf Tianjin were concerned about the potential fallout if the problems with the drywall product became widely known. In a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Knauf Tianjin entered into a confidential settlement agreement with Banner in January of 2007 (the "**Secret Agreement**").

26. The Secret Agreement stipulated that Knauf Tianjin would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers. In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

27. While Knauf Tianjin recalled the drywall product for Banner, it did not recall or take back the product from its other customers, nor did it warn them of the defective nature of the drywall.

28. Upon information and belief, Knauf Tianjin entered into the Secret Agreement to buy the silence of Banner and conceal defects in the drywall from consumers. The Secret Agreement purposefully kept consumers, such as Fry and other builders, contractors and installers, in the dark about the problems with the drywall. The Secret Agreement acknowledged that if Banner broke its promise to remain silent, Knauf Tianjin could be irreparably harmed.

29. Fry did not know and was not made aware of the problems with the drywall. The drywall manufactured, exported, imported, distributed and/or sold by RJL, Banner, La Suprema, and/or the Knauf Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by Fry.

30. For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Fry, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein. In short, Plaintiffs' causes of action are grounded on the existence of

6

unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

31.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Fry to know, of the drywall's applications, performance, and dangers.

32.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing, installing and/or selling the defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages to Plaintiffs.

33.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the gypsum drywall product purchased by Fry for installation in the Homes.

34.     Moreover, Fry did not know and was never informed by any of the Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.

35.     Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused

{FT724746;8}

Plaintiffs' alleged injuries and damages, and further damages to Fry in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.  Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

36.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

## COUNT 1 – VICARIOUS LIABILITY
### (Against Knauf Gips)

37.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

38.     This is an action for vicarious liability against Knauf Gips for the negligence and other wrongful acts of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong.

39.     Among other things, Knauf Tianjin, Knauf Wuhu, Knauf USA and Knauf Guangdong are involved in the manufacturing and sale of gypsum drywall.  Upon information and belief, they are actual agents and/or apparent agents of Knauf Gips.

40.     Upon information and belief, at all material times, Knauf Gips was a family-owned German company extensively involved in the plasterboard market in Germany, the United Kingdom, France, China, and the United States, among others.  Indeed, the Court of European Justice of the European Union in an action between Knauf Gips and the European Commission has found that Knauf Gips and other subsidiaries dealing in gypsum products owned by the Knauf family (the "Knauf Group") constitute one "economic unit" in the area of competition law, and that Knauf Gips should be responsible for all activities of the Knauf Group.

41.     Upon information and belief, at all material times, Knauf Gips had an apparent or actual partnership with, or an ownership interest in, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong..

42.     Upon information and belief, Knauf Gips supervised, monitored, and/or otherwise exercised control and/or had a right to exercise control over the operations of Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, and their agents, apparent agents, and employees, including the manufacturing, distribution, marketing, and/or sale of their drywall products. Moreover, upon information and belief, Knauf Gips is responsible for establishing, implementing, supervising, and maintaining the quality control mechanisms utilized by Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong.

43.     Upon information and belief, at all material times, Knauf Gips was closely involved in the management of Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, and their agents, apparent agents, and employees – overseeing quality control, finding raw materials and dealing with rising concerns over defective drywall.

44.     By way of its apparent or actual partnership and/or exercise of control over the conduct and operations of Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong, Knauf Gips acknowledged that Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong would act on its behalf as its actual and/or apparent agent(s).

45.     Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong accepted the undertaking to act on Knauf Gips' behalf.

46.     As such, Knauf Gips is vicariously liable for all of the damages caused by the negligent and/or other wrongful conduct of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong, as further alleged herein.

{FT724746;8}

47.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong's wrongful conduct directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf USA and/or Knauf Guangdong's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 2 – COMMON LAW INDEMNITY
### (Against Knauf Tianjin and Knauf Gips)

48.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

49.     Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

50.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,

{FT724746;8}

placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

51.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

52.     Fry is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

53.     Fry is entirely without fault for the injuries alleged by Plaintiffs.

54.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Tianjin and/or Knauf Gips.

55.     A special relationship existed between Knauf Tianjin and/or Knauf Gips and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Tianjin and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, Knauf Tianjin and Knauf Gips are wholly to blame for Plaintiffs' injuries.

56.     As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Tianjin and/or

11

Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

57.    If Fry is found to be liable to Plaintiffs, Knauf Tianjin and/or Knauf Gips is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 3 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Tianjin and Knauf Gips)

58.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

59.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

60.    Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,

placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

61.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

62.    Plaintiffs, in the Complaint, allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

63.    Without admitting any liability or damages to Plaintiffs, should Fry be found liable, Knauf Tianjin and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

64.    Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

65.    To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against Knauf Tianjin and/or Knauf Gips for its/their pro rata share of the liability.

66.    Knauf Tianjin and/or Knauf Gips should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

13

**WHEREFORE**, Fry demands that judgment be entered against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Fry in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## COUNT 4 – EQUITABLE SUBROGATION
### (Against Knauf Tianjin and Knauf Gips)

67. Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

68. This is an action, stated in the alternative, for equitable subrogation.

69. Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

70. Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

71. Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

72. Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

14

73.     Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

74.     To the extent that Fry is required to pay damages for any fault of Knauf Tianjin and/or Knauf Gips to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from Knauf Tianjin and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

75.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 5 – NEGLIGENCE
**(Against Knauf Tianjin and Knauf Gips)**

76.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

77.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

15

{FT724746;8}

78.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

79.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

80.     Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Tianjin and/or Knauf Gips.

81.     Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Fry a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Fry's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

{FT724746;8}

82.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

83.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to Fry by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

84.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

17

85.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Fry to substantial liability and damages.  If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

86.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care owed to Fry, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

{FT724746;8}

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Tianjin and Knauf Gips)

87.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

88.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

89.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the gypsum drywall that was installed in the Homes.

90.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

91.     Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

92.     Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Fry a duty to exercise reasonable care to: (i) disclose any defects in the

19

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Fry about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Fry about any problems or dangers in using the drywall for residential construction.

93.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

94.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that unless it warned Fry of the risk of using the drywall, Fry would suffer harm. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

95.     Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every

20

reason to expect that the product could be safely used in a residential home in the ordinary manner.

96.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to Fry by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Fry about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Fry about any problems or dangers in using the drywall for residential construction, about which Knauf Tianjin and/or Knauf Gips knew or reasonably should have known.

97.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

98.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages. If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Tianjin and/or Knauf Gips would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

21

{FT724746;8}

99.     Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Tianjin and Knauf Gips)

100.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

101.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

102.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

103.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

104.    Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

105.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's and/or Knauf Gips' control and/or was sold to Fry, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

106.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, Knauf Tianjin and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Tianjin and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk

of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

107.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

108.    Consumers, such as Fry, to whom a warning might have been provided, could have been identified by Knauf Tianjin and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

109.    A warning could have been effectively communicated to consumers such as Fry and acted on by them.

110.    At all material times, Knauf Tianjin and/or Knauf Gips stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's and/or Knauf Gips' drywall product in residential construction.

111.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Tianjin's and/or Knauf Gips' position would have provided a post-sale warning.

112.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf Tianjin's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but

24

not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – STRICT PRODUCTS LIABILITY
### (Against Knauf Tianjin and Knauf Gips)

113.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

114.    Upon information and belief, at all material times, Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

115.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

116.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

117.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce,

25

and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

118.   Knauf Tianjin and/or Knauf Gips expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

119.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

120.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

26

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Tianjin and Knauf Gips)

121.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

122.    Upon information and belief, at all material times. Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

123.    Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

124.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

125.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

126.    Knauf Tianjin and/or Knauf Gips expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective

27

gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

127.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

128.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Tianjin and/or Knauf Gips was required to provide a warning. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

129.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

130.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Tianjin and/or Knauf Gips failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

{FT724746;8}

131.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.   Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 10
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf Tianjin and Knauf Gips)

132.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

133.     This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

134.     The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

135. At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

136. At all material times, Knauf Tianjin engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Fry.

137. Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

138. Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

139. At the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf Tianjin and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

140. Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{FT724746;8}

141.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

142.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Tianjin's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

143.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall unreasonably

31

dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 19-29 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

144.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

145.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that the drywall was defective,

{FT724746;8}

dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

146.    To the extent Plaintiffs are successful in proving their claims, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Tianjin's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.   Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## COUNT 11 – UNJUST ENRICHMENT
### (Against Knauf Tianjin and Knauf Gips)

147.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

148.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

{FT724746;8}

149.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

150.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

151.    Knauf Tianjin and/or Knauf Gips received money from Fry as payment for the defective drywall installed in the Home.

152.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Fry conferred a benefit, *i.e.*, funds and profit, to Knauf Tianjin and/or Knauf Gips, which had knowledge thereof.

153.    Knauf Tianjin and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Fry.

154.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

{FT724746;8}

155.    The circumstances described herein under which Knauf Tianjin and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Tianjin and/or Knauf Gips to retain those funds and profits.

156.    Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 12 – FRAUDULENT CONCEALMENT
### (Against Knauf Tianjin and Knauf Gips)

157.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

158.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

159.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

160.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed,

35

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

161.    As such, Knauf Tianjin and/or Knauf Gips had a duty to reveal any such knowledge.

162.    Upon information and belief, Knauf Tianjin and/or Knauf Gips failed to disclose and actively concealed drywall defects for the purpose of inducing consumers such as Fry to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's and/or Knauf Gips' expense.

163.    Knauf Tianjin and/or Knauf Gips had superior knowledge not readily available to Fry that the drywall was defective and/or not fit for use in the construction of a residential home, which could not have been discovered by Fry by way of ordinary observation.

164.    Knauf Tianjin and/or Knauf Gips having superior knowledge of the defective nature of the drywall knowingly, deliberately and/or intentionally failed to disclose and actively concealed the drywall's defective nature and used artifice to sell the drywall product.

165.    Knauf Tianjin employed artifice to sell the drywall product by entering into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from Fry and other customers of Banner.

166.    Fry and/or its installers purchased drywall for Fry from Banner for the construction of the Homes. By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed information that caused Fry to remain ignorant about any perceived or actual defects

36

and to believe that it had all available information necessary to use the drywall product sold by Banner in the construction of the Homes.

167.   Fry relied on Knauf Tianjin and/or Knauf Gips as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended.  The terms of the Secret Agreement foreclosed Fry from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

168.   By failing to disclose and actively concealing that the drywall Knauf Tianjin and/or Knauf Gips manufactured, designed, distributed, and/or sold emitted foul or noxious odors and/or gases, and/or was not fit for the ordinary purpose for which it was intended, Knauf Tianjin and/or Knauf Gips conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

169.   Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

170.   If Fry had known about the matters concealed by Knauf Tianjin and/or Knauf Gips, Fry would not have purchased and used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips for installation in residential homes and/or Fry would have demanded replacement of the drywall at Knauf Tianjin's expense.

171.    Knauf Tianjin and/or Knauf Gips engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[7]

172.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' fraudulent concealment of the defective nature of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 13
### COMMON LAW AIDING AND ABETTING FRAUDULENT CONCEALMENT
### (Against Knauf Gips)

173.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 158, 160 through 171 above as if fully set forth herein.

---

[7]     Fry reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for fraudulent concealment.

{FT724746;8}

174.    This is an action, stated in the alternative, for common law aiding and abetting fraudulent concealment against Knauf Gips.

175.    Knauf Gips was generally and specifically aware that Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects breached a duty to foreseeable consumers, such as Fry, to reveal such knowledge.

176.    Knauf Gips was generally and specifically aware of the nature of the harm that would be incurred by consumers such as Fry by virtue of Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

177.    Knauf Gips knowingly and substantially aided, abetted, advised or encouraged Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

178.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Gips' aiding and abetting a fraudulent concealment directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

39

179.    Knauf Gips engaged in the acts described above with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[8]

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 14
### CIVIL CONSPIRACY TO FRAUDULENTLY CONCEAL A DEFECTIVE PRODUCT
**(Against Knauf Gips and Knauf Tianjin)**

180.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

181.    This is an action, stated in the alternative, for civil conspiracy to fraudulently conceal a defective product.

182.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

183.    Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin.

184.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, upon information and belief, Knauf Tianjin failed to disclose and actively concealed actual and/or potential and/or perceived drywall defects for the purpose of inducing

---

[8]    Fry reserves its right to claim exemplary and/or punitive damages against Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for common law aiding and abetting.

{FT724746;8}

consumers such as Fry to continue to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's expense.

185.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew that some of Banner's customers had complained that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin emitted a very bad sulfurous odor.

186.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to a scheme to conceal defects in the drywall from consumers, such as Fry (the "Concealment Scheme").

187.    Upon information and belief, Knauf Gips and/or Knauf Tianjin investigated the complaints of odors and tested the drywall.

188.    In furtherance of the Concealment Scheme, after conducting tests of the drywall, Knauf Tianjin and/or Knauf Gips advised Banner that the drywall was safe and met regulatory standards.

189.    In furtherance of the Concealment Scheme, Knauf Tianjin employed artifice to sell its drywall product by entering into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from Fry and other customers of Banner.

190.    By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed information that caused Fry to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to purchase and/or use the drywall product in the construction of the Homes.

41

191.    Fry relied on Knauf Tianjin as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.  The terms of the Secret Agreement foreclosed Fry from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

192.    By failing to disclose and actively concealing that the drywall emitted foul or noxious odors and/or gases, and/or was defective, Knauf Tianjin conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

193.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of a residential home.

194.    If Fry had known about the matters concealed by Knauf Tianjin and Knauf Gips, Fry would not have purchased and/or used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin for installation in residential homes and/or Fry would have demanded replacement of the drywall at Knauf Tianjin's expense.

195.    Knauf Gips and Knauf Tianjin engaged in the Concealment Scheme with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[9]

196.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective

---

[9]    Fry reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy to fraudulently conceal a defective product.

{FT724746;8}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Concealment Scheme directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 15**
**CIVIL CONSPIRACY: WILLFUL FAILURE TO WARN**
**(Against Knauf Gips and Knauf Tianjin)**

197.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

198.    This is an action, stated in the alternative, for civil conspiracy premised on a willful failure to issue a post-sale warning.

199.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{FT724746;8}

200.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, marketed, sold, distributed, and/or supplied the gypsum drywall that was installed in the Homes.

201.    Fry was a foreseeable user of the gypsum drywall being manufactured, mined, designed, produced, made, marketed, sold, distributed and/or supplied by Knauf Tianjin.

202.    Knauf Tianjin, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.

203.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, marketed, sold, supplied, and/or delivered by Knauf Tianjin was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's control and/or was sold to Fry, Knauf Tianjin knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

204.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew that some of Banner's customers had complained that the drywall manufactured by Knauf Tianjin emitted a very bad sulfurous odor.

205.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to an intentional and willful scheme not to warn consumers who had already purchased Knauf Tianjin's drywall product about actual or perceived defects in the drywall product (the "Scheme Not to Warn").

206.    Upon information and belief, Knauf Tianjin and/or Knauf Gips investigated the complaints of odors and tested the drywall.

207.    Upon information and belief, and in furtherance of the Scheme Not to Warn, Knauf Tianjin and/or Knauf Gips did not properly investigate potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product and thereby breached the duty owed to Fry to properly investigate the drywall's potential dangers and risks.

208.    Upon information and belief, after Knauf Tianjin and/or Knauf Gips conducted tests of the drywall, and to further the Scheme Not to Warn, Knauf Tianjin entered into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from Fry and other customers of Banner.

209.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of a residential home, and therefore Knauf Tianjin was in breach of the duty to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall in residential construction.

210.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

211.    Consumers, such as Fry, to whom a warning might have been provided could have been identified by Knauf Tianjin and could reasonably be assumed to be unaware of the risk of harm.

45

212. A warning could have been effectively communicated to consumers such as Fry and acted on by them.

213. At all material times, Knauf Tianjin stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product in residential construction.

214. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, distributor, seller and/or supplier in Knauf Tianjin's position would have provided a post-sale warning.

215. Knauf Gips' and Knauf Tianjin's individual and collective failure to warn as set forth above was wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to consumers of the drywall product, such as Fry. Knauf Gips and Knauf Tianjin engaged in the Scheme Not to Warn with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[10]

216. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Scheme Not to Warn directly and proximately caused and/or exposed Fry to substantial liability and damages to Plaintiffs, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or the settlement of Plaintiffs' claims, as well as

---

[10] Fry reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy premised on a willful failure to issue a post-sale warning.

{FT724746;8}

reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – COMMON LAW INDEMNITY
### (Against Knauf Wuhu and Knauf Gips)

217.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

218.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

219.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

220.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

221.    Fry is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

222.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

223.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Wuhu and/or Knauf Gips.

224.    A special relationship existed between Knauf Wuhu and/or Knauf Gips and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Wuhu and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims as more fully alleged in the Complaint, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

225.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Wuhu and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

226.    If Fry is found to be liable to Plaintiffs, Knauf Wuhu and/or Knauf Gips is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the

{FT724746;8}

amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.  Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 17 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Knauf Wuhu and Knauf Gips)**

227.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

228.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

229.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

230.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

231.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

232.    Without admitting any liability or damages to Plaintiffs, should Fry be found liable, Knauf Wuhu and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

233.    Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

234.    To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against Knauf Wuhu and/or Knauf Gips for its/their pro rata share of the liability.

235.    Knauf Wuhu and/or Knauf Gips should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Fry in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## COUNT 18 – EQUITABLE SUBROGATION
### (Against Knauf Wuhu and Knauf Gips)

236.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

237.    This is an action, stated in the alternative, for equitable subrogation.

50

{FT724746;8}

238.     Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

239.     Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

240.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

241.     Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

242.     Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

243.     To the extent that Fry is required to pay damages for any fault of Knauf Wuhu and/or Knauf Gips to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from Knauf Wuhu and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any

51

judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

244.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 19 – NEGLIGENCE
### (Against Knauf Wuhu and Knauf Gips)

245.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

246.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

247.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

248.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

{FT724746;8}

249.    Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Wuhu and/or Knauf Gips.

250.    Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed Fry a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Fry's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

251.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

252.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

53

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Fry by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

253.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

254.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Fry to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious

manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

255.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care owed to Fry, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 20 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

256.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

257.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

258.   Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

259.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

260.   Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

261.   Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed Fry a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Fry about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Fry about any problems or dangers in using the drywall for residential construction.

262.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

56

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

263.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that unless it warned Fry of the risk of using the drywall, Fry would suffer harm. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

264.   Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Fry had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

265.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Fry by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Fry about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Fry about any problems or dangers in using the

drywall for residential construction, about which Knauf Wuhu and/or Knauf Gips knew or reasonably should have known.

266.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

267.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Wuhu and/or Knauf Gips would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

268.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

{FT724746;8}

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 21 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Wuhu and Knauf Gips)

269.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

270.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

271.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

272.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

273.    Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

274.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was

59

defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Wuhu's and/or Knauf Gips' control and/or was sold to Fry, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

275.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Wuhu and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

276.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

277.    Consumers, such as Fry, to whom a warning might have been provided, could have been identified by Knauf Wuhu and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

{FT724746;8}

278.   A warning could have been effectively communicated to consumers such as Fry and acted on by them.

279.   At all material times, Knauf Wuhu and/or Knauf Gips stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of Knauf Wuhu's and/or Knauf Gips' drywall product in residential construction.

280.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Wuhu's and/or Knauf Gips' position would have provided a post-sale warning.

281.   Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf Wuhu's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

{FT724746;8}

**COUNT 22 – STRICT PRODUCTS LIABILITY**
**(Against Knauf Wuhu and Knauf Gips)**

282.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

283.    Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

284.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

285.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

286.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

287.    Knauf Wuhu and/or Knauf Gips expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

288.    Plaintiffs, in the Complaint, allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

62

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

289.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 23 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

290.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

291.   Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing,

{FT724746;8}

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

292.    Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

293.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

294.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

295.    Knauf Wuhu and/or Knauf Gips expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

296.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

297.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

{FT724746;8}

as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Wuhu and/or Knauf Gips was required to provide a warning. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

298.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

299.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Wuhu and/or Knauf Gips failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

300.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' failure to adequately warn of risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf  Wuhu's wrongful

{FT724746;8}

conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 24
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf Wuhu and Knauf Gips)

301.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

302.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

303.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

304.    At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

305.    At all material times, Knauf Wuhu engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Fry.

306.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

307.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

308.     At the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf Wuhu and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

309.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

310.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

311.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

67

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Wuhu's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

312.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 19-29 herein   constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

313.   To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall was unfit, was

68

likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

314.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

315.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Wuhu's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the

settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 25 – UNJUST ENRICHMENT
**(Against Knauf Wuhu and Knauf Gips)**

316.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

317.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

318.   Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

319.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

320.   Knauf Wuhu and/or Knauf Gips received money from Fry as payment for the defective drywall installed in the Home.

70

321.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Fry conferred a benefit, *i.e.*, funds and profit, to Knauf Wuhu and/or Knauf Gips, which had knowledge thereof.

322.    Knauf Wuhu and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Fry.

323.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

324.    The circumstances described herein under which Knauf Wuhu and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Wuhu and/or Knauf Gips to retain those funds and profits.

325.    Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

71

<u>**COUNT 26 – COMMON LAW INDEMNITY**</u>
**(Against Knauf USA and Knauf Gips)**

326.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

327.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

328.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

329.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

330.    Fry is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

331.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

332.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf USA and/or Knauf Gips.

333.    A special relationship existed between Knauf USA and/or Knauf Gips and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely

{FT724746;8}

vicarious, constructive, derivative or technical to Knauf USA and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

334.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf USA and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

335.    If Fry is found to be liable to Plaintiffs, Knauf USA and/or Knauf Gips is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs. Knauf Gips' and Knauf USA's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

{FT724746;8}

## COUNT 27 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf USA and Knauf Gips)

336.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

337.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

338.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

339.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

340.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

341.    Without admitting any liability or damages to Plaintiffs, should Fry be found liable, Knauf USA and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

342.    Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

{FT724746;8}

343.    To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against Knauf USA and/or Knauf Gips for its/their pro rata share of the liability.

344.    Knauf USA and/or Knauf Gips should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Fry in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 28– EQUITABLE SUBROGATION
### (Against Knauf USA and Knauf Gips)

345.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

346.    This is an action, stated in the alternative, for equitable subrogation.

347.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

348.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

349.     Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

350.     Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

351.     Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

352.     To the extent that Fry is required to pay damages for any fault of Knauf USA and/or Knauf Gips to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from Knauf USA and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

353.     Such subrogation will not work any injustice to the rights of others.

{FT724746;8}

**WHEREFORE**, Fry demands judgment in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

COUNT 29 – NEGLIGENCE
**(Against Knauf USA and Knauf Gips)**

354.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

355.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

356.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

357.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

358.    Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf USA and/or Knauf Gips.

359.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Fry a duty to, among other things, exercise reasonable care to (i)

77

manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Fry's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

360.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

361.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Fry by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of

the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

362.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

363.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Fry to substantial liability and damages. If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

364.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care owed to Fry, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 30 – NEGLIGENT FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

365.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

366.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

367.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the gypsum drywall that was installed in the Homes.

{FT724746;8}

368.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

369.    Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

370.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Fry a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Fry about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Fry about any problems or dangers in using the drywall for residential construction.

371.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

372.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that unless it warned Fry of the risk of using the drywall, Fry would suffer harm. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

373.     Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

374.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Fry by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Fry about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Fry about any problems or dangers in using the drywall for residential construction, about which Knauf USA and/or Knauf Gips knew or reasonably should have known.

375.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{FT724746;8}

the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

376.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages.  If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf USA and/or Knauf Gips would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

377.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf USA's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{FT724746;8}

## COUNT 31 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf USA and Knauf Gips)

378.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46  above as if fully set forth herein.

379.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

380.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

381.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

382.    Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

383.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf USA's and/or Knauf Gips' control and/or was sold to Fry, Knauf USA and/or Knauf Gips knew or reasonably should have

84

known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

384.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf USA and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

385.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

386.    Consumers, such as Fry, to whom a warning might have been provided, could have been identified by Knauf USA and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

387.    A warning could have been effectively communicated to consumers such as Fry and acted on by them.

388.    At all material times, Knauf USA and/or Knauf Gips stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could

{FT724746;8}

reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of Knauf USA's and/or Knauf Gips' drywall product in residential construction.

389.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf USA's and/or Knauf Gips' position would have provided a post-sale warning.

390.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf USA's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

## COUNT 32 – STRICT PRODUCTS LIABILITY
### (Against Knauf USA and Knauf Gips)

391.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

392.   Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

393.   Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

394.   Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

395.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

396.   Knauf USA and/or Knauf Gips expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

397.   Plaintiffs, in the Complaint, allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

398.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

87

as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 33 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

399.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46  above as if fully set forth herein.

400.    Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

401.    Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

402.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

403.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

404.    Knauf USA and/or Knauf Gips expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

405.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

406.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf USA and/or Knauf Gips was required to

89

provide a warning. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

407.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

408.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf USA and/or Knauf Gips failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

409.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 34
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Knauf USA and Knauf Gips)**

410.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

411.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

412.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

413.    At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

414.    At all material times, Knauf USA engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Fry.

415.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

416.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

91

packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

417.    At the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf USA and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

418.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

419.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf USA and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

420.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf USA's and/or Knauf Gips' deceptive and

92

unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

421.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 19-29 herein   constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

422.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the

93

drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

423.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

424.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf USA's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these

94

claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 35 – UNJUST ENRICHMENT
**(Against Knauf USA and Knauf Gips)**

425.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

426.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

427.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

428.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

429.    Knauf USA and/or Knauf Gips received money from Fry as payment for the defective drywall installed in the Home.

430.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Fry conferred a benefit, *i.e.*, funds and profit, to Knauf USA and/or Knauf Gips, which had knowledge thereof.

{FT724746;8}

431.    Knauf USA and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Fry.

432.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

433.    The circumstances described herein under which Knauf USA and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf USA and/or Knauf Gips to retain those funds and profits.

434.    Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 36 – COMMON LAW INDEMNITY
**(Against Knauf Guangdong and Knauf Gips)**

{FT724746;8}

435.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

436.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

437.    Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

438.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

439.    Fry is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

440.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

441.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Guangdong and/or Knauf Gips.

442.    A special relationship existed between Knauf Guangdong and/or Knauf Gips and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Guangdong and/or Knauf Gips.  To the

{FT724746;8}

extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

443.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Guangdong and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

444.    If Fry is found to be liable to Plaintiffs, Knauf Guangdong and/or Knauf Gips is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Knauf Guangdong and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 37 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Guangdong and Knauf Gips)

445.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

446.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

447.    Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

448.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

449.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

450.    Without admitting any liability or damages to Plaintiffs, should Fry be found liable, Knauf Guangdong and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

451.    Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

452.    To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against Knauf Guangdong and/or Knauf Gips for its/their pro rata share of the liability.

{FT724746;8}

453.    Knauf Guangdong and/or Knauf Gips should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Knauf Guangdong and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Fry in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 38 – EQUITABLE SUBROGATION
### (Against Knauf Guangdong and Knauf Gips)

454.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

455.    This is an action, stated in the alternative, for equitable subrogation.

456.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

457.    Upon information and belief, Knauf Guangdong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

458.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing,

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

459.    Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

460.    Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

461.    To the extent that Fry is required to pay damages for any fault of Knauf Guangdong and/or Knauf Gips to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from Knauf Guangdong and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

462.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Knauf Guangdong and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 39 – NEGLIGENCE
**(Against Knauf Guangdong and Knauf Gips)**

101

463.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

464.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

465.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

466.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

467.    Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Guangdong and/or Knauf Gips.

468.    Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Guangdong and/or Knauf Gips owed Fry a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Fry's customers; (ii) manufacture, mine, design, produce,

{FT724746;8}

market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

469.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

470.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty of care owed to Fry by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing,

103

producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

471.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

472.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Fry to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

473.   Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care owed to Fry, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any

other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 40 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Guangdong and Knauf Gips)

474.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46  above as if fully set forth herein.

475.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

476.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  the gypsum drywall that was installed in the Homes.

477.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

478.     Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

479.     Knauf Guangdong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Guangdong and/or Knauf Gips owed Fry a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Fry about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Fry about any problems or dangers in using the drywall for residential construction.

480.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

481.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips knew or should have known that unless it warned Fry of the risk of using the drywall, Fry would suffer harm.

However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

482. Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

483. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips breached the duty of care owed to Fry by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Fry about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Fry about any problems or dangers in using the drywall for residential construction, about which Knauf Guangdong and/or Knauf Gips knew or reasonably should have known.

484. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Guangdong's and/or Knauf Gips' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

485. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{FT724746;8}

the Complaint, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages. If Knauf Guangdong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Guangdong and/or Knauf Gips would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

486.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf Guangdong's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 41 – BREACH OF POST-SALE DUTY TO WARN
#### (Against Knauf Guangdong and Knauf Gips)

487.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46  above as if fully set forth herein.

108

488.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

489.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

490.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

491.    Fry was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips.

492.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Guangdong's and/or Knauf Gips' control and/or was sold to Fry, Knauf Guangdong and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

{FT724746;8}

493.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.    Knauf Guangdong and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

494.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

495.    Consumers, such as Fry, to whom a warning might have been provided, could have been identified by Knauf Guangdong and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

496.    A warning could have been effectively communicated to consumers such as Fry and acted on by them.

497.    At all material times, Knauf Guangdong and/or Knauf Gips stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm

110

associated with the use of Knauf Guangdong's and/or Knauf Gips' drywall product in residential construction.

498.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Guangdong's and/or Knauf Gips' position would have provided a post-sale warning.

499.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Knauf Guangdong's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 42 – STRICT PRODUCTS LIABILITY
### (Against Knauf Guangdong and Knauf Gips)

500.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

501.    Upon information and belief, at all material times. Knauf Guangdong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making,

marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

502.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

503.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in distributing, placing into the stream of commerce and/or selling gypsum drywall.

504.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

505.    Knauf Guangdong and/or Knauf Gips expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

506.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

507.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined,

112

designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 43 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Guangdong and Knauf Gips)

508.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

509.    Upon information and belief, at all material times. Knauf Guangdong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

510.    Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

511.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

512.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guangdong and/or Knauf Gips, Knauf Guangdong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

513.    Knauf Guangdong and/or Knauf Gips expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

514.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

515.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Guangdong and/or Knauf Gips was required to provide a warning. However, Knauf Guangdong and/or Knauf Gips failed to provide an adequate warning of such danger.

516.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

517.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Guangdong and/or Knauf Gips failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

518.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

{FT724746;8}

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 44**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Guangdong and Knauf Gips)**

519.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46 above as if fully set forth herein.

520.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

521.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

522.    At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

523.    At all material times, Knauf Guangdong engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Fry.

524.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold the gypsum drywall that was installed in the Homes.

525.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing,

testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such gypsum drywall.

526.    At the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, Knauf Guangdong and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

527.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

528.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Guangdong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Guangdong and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

529.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Guangdong's and/or Knauf Gips'

117

deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

530. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 19 - 29 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

531. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume

{FT724746;8}

that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

532.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

533.   To the extent Plaintiffs are successful proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Guangdong's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these

119

claims.  Knauf Gips' and Knauf Guangdong's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 45 – UNJUST ENRICHMENT
### (Against Knauf Guangdong and Knauf Gips)

534.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 and 39 through 46  above as if fully set forth herein.

535.    Plaintiffs, in the Complaint, allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

536.    Upon information and belief, Knauf Guangdong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

537.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guangdong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

538.    Knauf Guangdong and/or Knauf Gips received money from Fry as payment for the defective drywall installed in the Home.

539.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Fry conferred a benefit, *i.e.*, funds and profit, to Knauf Guangdong and/or Knauf Gips, which had knowledge thereof.

{FT724746;8}

540.    Knauf Guangdong and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Fry.

541.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guangdong's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

542.    The circumstances described herein under which Knauf Guangdong and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Guangdong and/or Knauf Gips to retain those funds and profits.

543.    Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Knauf Guangdong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 46 – COMMON LAW INDEMNITY
**(Against Banner Supply Co.)**

{FT724746;8}

544.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

545.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

546.    Fry is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Co.

547.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

548.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Co.

549.    A special relationship existed between Banner Co. and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Co.  To the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Co. was defective and wholly to blame for Plaintiffs' injuries.

550.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Co. to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

551.    If Fry is found to be liable to Plaintiffs, Banner Co. is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or

122

any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Cross-Claim Defendant, Banner Supply Co., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 47 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Banner Supply Co.)**

552.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

553.     This is an action, stated in the alternative, against Banner Co. for contribution pursuant to Section 768.31, Florida Statutes.

554.     Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

555.     Without admitting any liability or damages to Plaintiffs, should Fry be found liable, Banner Co. would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

556.     Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

557.     To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against Banner Co. for its pro rata share of the liability.

558.     Banner Co. should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the

{FT724746;8}

amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Cross-Claim Defendant Banner Supply Co. for its pro rata share of the liability, if any, found against Fry in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 48 – EQUITABLE SUBROGATION
### (Against Banner Supply Co.)

559.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

560.    This is an action, stated in the alternative, against Banner Co. for equitable subrogation.

561.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

562.    Fry is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner Co.

563.    Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

564.    To the extent that Fry is required to pay damages for any fault of Banner Co. to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from Banner Co. under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf

{FT724746;8}

of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

565.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Cross-Claim Defendant, Banner Supply Co., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 49 – NEGLIGENCE
**(Against Banner Supply Co.)**

566.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

567.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

568.    Banner Co. distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

569.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Co.

570.    As such, Banner Co. owed Fry a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Fry's customers; and, (ii) market, distribute, supply and/or sell drywall materials that

{FT724746;8}

were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

571.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Co. knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

572.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Co. breached its duty of care to Fry by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

573.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Co.'s duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

574.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Fry to substantial liability and damages. If Banner Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

575.   Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 50 – NEGLIGENT FAILURE TO WARN
**(Against Banner Supply Co.)**

576.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

577.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

578.    Banner Co. distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

579.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Co.

580.    As such, Banner Co. owed Fry a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Fry about any dangers inherent in the drywall, and/or (iii) warn Fry about any problems or dangers in using the drywall for residential construction.

581.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

582.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or should have known that unless it

warned Fry of the risk of using the drywall it distributed, sold, and/or supplied, Fry would suffer harm. However, Banner Co. failed to provide an adequate warning of such danger.

583.   Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

584.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. breached its duty of care to Fry by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Fry about any dangers inherent in the drywall, and/or (iii) failing to warn Fry about any problems or dangers in using the drywall for residential construction, about which Banner Co. knew or reasonably should have known.

585.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Co.'s duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

586.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability

and damages. If Banner Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

587.     Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 51 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Banner Supply Co.)

588.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

589.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{FT724746;8}

590.    Banner Co. distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

591.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Co.

592.    To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Co. was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Co.'s control and/or was sold to Fry, Banner Co. knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

593.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co., as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Banner Co. breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

594.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

{FT724746;8}

595.    Consumers, such as Fry, to whom a warning might have been provided could have been identified by Banner Co.

596.    A warning could have been effectively communicated to consumers such as Fry and acted on by them.

597.    At all material times, Banner Co. stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of Banner Co.'s drywall product in residential construction.

598.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Co.'s position would have provided a post-sale warning.

599.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry was damaged by Banner Co.'s breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

132

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 52 – STRICT PRODUCTS LIABILITY
### (Against Banner Supply Co.)

600.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

601.     At all material times, Banner Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

602.     At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co.

603.     At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co., Banner Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

604.     Banner Co. expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

605.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

606.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into

{FT724746;8}

the stream of commerce, supplied and/or sold by Banner Co. directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 53 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner Supply Co.)

607.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

608.    At all material times, Banner Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

609.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Co.

610.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co., Banner Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

611.   Banner Co. expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

612.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

613.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Co. was required to provide a warning. However, Banner Co. failed to provide an adequate warning of such danger.

614.   Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

615.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Co. failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

616.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 54
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Banner Supply Co.)**

617.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

618.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

619.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

620.   At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

621.   At all material times, Banner Co. engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Fry.

622.   Banner Co. advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

623.   At the time Banner Co. advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Co. represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

624.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

625.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Co. sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Co. knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous..

626.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner Co.'s unfair and deceptive conduct in

{FT724746;8}

selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

627. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 19-29 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

628. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the   Complaint, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

629.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the   Complaint, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

630.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Co.'s violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 55– UNJUST ENRICHMENT
**(Against Banner Supply Co.)**

631.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

632.    This is an action, stated in the alternative, against Banner Co. for unjust enrichment.

633.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

634.    Banner Co. distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

635.    Banner Co. received money from Fry as a result of Fry's purchases of defective drywall installed in the Homes.

636.    In delivering such payment, monies and/or funds to Banner Co., Fry conferred a benefit, *i.e.*, funds and profit, to Banner Co., which had knowledge thereof.

637.    Banner Co. voluntarily accepted and retained the benefit conferred upon it by Fry.

638.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

639.    The circumstances described herein under which Banner Co. profited from selling and/or supplying drywall make it inequitable for Banner Co. to retain those funds and profits.

640.    Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 56– COMMON LAW INDEMNITY
### (Against Banner Supply Company Fort Myers, LLC)

641.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

642.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

643.    Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by Banner Fort Myers.

644.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

645.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Fort Myers.

646.    A special relationship existed between Banner Fort Myers and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Fort Myers. To the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Fort Myers was defective and wholly to blame for Plaintiffs' injuries.

{FT724746;8}

647.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Fort Myers to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

648.    If Fry is found to be liable to Plaintiffs, Banner Fort Myers is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 57 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Supply Company Fort Myers, LLC)

649.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

650.    This is an action, stated in the alternative, against Banner Fort Myers for contribution pursuant to Section 768.31, Florida Statutes.

651.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

142

652.   Without admitting any liability or damages to Plaintiffs, should Fry be found liable, Banner Fort Myers would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

653.   Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

654.   To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against Banner Fort Myers for its pro rata share of the liability.

655.   Banner Fort Myers should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, for its pro rata share of the liability, if any, found against Fry in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

## COUNT 58 – EQUITABLE SUBROGATION
### (Against Banner Supply Company Fort Myers, LLC)

656.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

657.   This is an action, stated in the alternative, against Banner Fort Myers for equitable subrogation.

658.   Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

659.    Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by Banner Fort Myers.

660.    Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

661.    To the extent that Fry is required to pay damages for any fault of Banner Fort Myers to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from Banner Fort Myers under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

662.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 59 – NEGLIGENCE
### (Against Banner Supply Company Fort Myers, LLC)

663.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

664.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

665.    Banner Fort Myers distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

666.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Fort Myers.

667.    As such, Banner Fort Myers owed Fry a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Fry's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

668.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Fort Myers knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

669.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Fort Myers breached its duty of care to Fry by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all

applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

670.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, such breaches in Banner Fort Myers' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

671.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying, and/or selling defective drywall would expose Fry to substantial liability and damages. If Banner Fort Myers had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

672.   Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Fort Myers' breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the

146

amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 60 – NEGLIGENT FAILURE TO WARN
### (Against Banner Supply Company Fort Myers, LLC)

673.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

674.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

675.     Banner Fort Myers distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

676.     Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Fort Myers.

677.     As such, Banner Fort Myers owed Fry a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Fry about any

dangers inherent in the drywall, and/or (iii) warn Fry about any problems or dangers in using the drywall for residential construction.

678.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

679.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or should have known that unless it warned Fry of the risk of using the drywall it distributed, sold, and/or supplied, Fry would suffer harm. However, Banner Fort Myers failed to provide an adequate warning of such danger.

680.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

681.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers breached its duty of care to Fry by (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably

148

should have known about; (ii) failing to warn Fry about any dangers inherent in the drywall, and/or (iii) failing to warn Fry about any problems or dangers in using the drywall for residential construction, about which Banner Fort Myers knew or reasonably should have known.

682.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Fort Myers' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

683.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages. If Banner Fort Myers had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

684.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Fort Myers' breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Fort Myers' wrongful

{FT724746;8}

conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 61 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Banner Supply Company Fort Myers, LLC)

685.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

686.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

687.    Banner Fort Myers distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

688.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Fort Myers.

689.    To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Fort Myers was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Fort Myers' control and/or was sold to Fry, Banner Fort Myers knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

690.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers as the distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner Fort Myers breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

691.     To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

692.     Consumers, such as Fry, to whom a warning might have been provided, could have been identified by Banner Fort Myers.

693.     A warning could have been effectively communicated to consumers such as Fry and acted on by them.

694.     At all material times, Banner Fort Myers stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of Banner Fort Myers' drywall product in residential construction.

695.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, a reasonable distributor, seller and/or supplier in Banner Fort Myers' position would have provided a post-sale warning.

696.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Fort Myers' breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 62 – STRICT PRODUCTS LIABILITY
**(Against Banner Supply Company Fort Myers, LLC)**

697.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

698.    At all material times, Banner Fort Myers was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

699.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers.

{FT724746;8}

700.     At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers, Banner Fort Myers intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

701.     Banner Fort Myers expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

702.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

703.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Fort Myers directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at

{FT724746;8}

trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 63 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Banner Supply Company Fort Myers, LLC)**

704.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

705.    At all material times, Banner Fort Myers was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

706.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Fort Myers.

707.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers, Banner Fort Myers intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

708.    Banner Fort Myers expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

709.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

710.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Fort Myers was required to provide a

{FT724746;8}

warning.   However, Banner Fort Myers failed to provide an adequate warning of such danger.

711.   Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

712.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Fort Myers failed to warn Fry of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

713.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 64**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Banner Supply Company Fort Myers, LLC)**

714.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

715.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

716.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

717.   At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

718.   At all material times, Banner Fort Myers engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Fry.

719.   Banner Fort Myers advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

720.   At the time Banner Fort Myers advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Fort Myers represented that the drywall was fit for the ordinary

156

purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

721.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

722.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Banner Fort Myers sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Fort Myers knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

723.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Banner Fort Myers' unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

724.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or

its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 19-29 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

725.    To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

726.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

158

727.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Fort Myers' violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 65 – UNJUST ENRICHMENT
### (Against Banner Supply Company Fort Myers, LLC)

728.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

729.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

730.   This is an action, stated in the alternative, against Banner Fort Myers for unjust enrichment.

731.   Banner Fort Myers distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

732.   Banner Fort Myers received money from Fry as a result of Fry's purchases of defective drywall installed in the Homes.

733.   In delivering such payment, monies and/or funds to Banner Fort Myers, Fry conferred a benefit, *i.e.*, funds and profit, to Banner Fort Myers, which had knowledge thereof.

734.   Banner Fort Myers voluntarily accepted and retained the benefit conferred upon it by Fry.

735.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner Fort Myers' acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

736.   The circumstances described herein under which Banner Fort Myers profited from distributing, selling and/or supplying drywall make it inequitable for Banner Fort Myers to retain those funds and profits.

737.   Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at

{FT724746;8}

trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 66 – COMMON LAW INDEMNITY
### (Against La Suprema Trading Inc.)

738.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

739.   Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

740.   Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

741.   Fry is entirely without fault for the injuries alleged by Plaintiffs.

742.   Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Trading.

743.   A special relationship existed between LS Trading and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Trading. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Trading was defective and wholly to blame for Plaintiffs' injuries.

744.   As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Trading to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

745.    If Fry is found to be liable to Plaintiffs, LS Trading is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Cross-Claim Defendant, La Suprema Trading Inc., for damages plus attorneys' fees, interest and costs  as damages, and for such other relief as the Court deems just and proper.

### COUNT 67 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against La Suprema Trading, Inc.)**

746.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

747.    This is an action, stated in the alternative, against LS Trading for contribution pursuant to Section 768.31, Florida Statutes.

748.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

749.    Without admitting any liability or damages to Plaintiffs, should Fry be found liable, LS Trading would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

750.    Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

{FT724746;8}

751.     To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against LS Trading for its pro rata share of the liability.

752.     LS Trading should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Cross-Claim Defendant, La Suprema Trading Inc., for its pro rata share of the liability, if any, found against Fry in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT 68 – EQUITABLE SUBROGATION
### (Against La Suprema Trading Inc.)

753.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

754.     This is an action, stated in the alternative, against LS Trading for equitable subrogation.

755.     Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

756.     Fry is not and was not in the business of manufacturing, distributing, or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

757.     Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

758.     To the extent that Fry is required to pay damages for any fault of LS Trading to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from LS Trading under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

759.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 69 – NEGLIGENCE
### (Against La Suprema Trading Inc.)

760.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

761.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

762.     Upon information and belief, LS Trading imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

164

763.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Trading.

764.    As such, LS Trading owed Fry a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Fry's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

765.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

766.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Fry by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that

165

could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

767.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

768.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Fry to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

769.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Trading's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

166

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 70 – NEGLIGENT FAILURE TO WARN</u>
**(Against La Suprema Trading Inc.)**

770.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

771.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

772.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

773.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Trading.

774.    As such, LS Trading owed Fry a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Fry about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Fry about any problems or dangers in using the drywall for residential construction.

775.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{FT724746;8}

the Complaint, LS Trading knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

776.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that unless it warned foreseeable consumers such as Fry of the risk of using the drywall it distributed, sold, and/or supplied, Fry would suffer harm. However, LS Trading failed to provide an adequate warning of such danger.

777.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in  a residential home in the ordinary manner.

778.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Fry by:  (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Fry about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Fry about any problems or dangers in using the drywall for residential construction, about which LS Trading knew or reasonably should have known.

{FT724746;8}

779.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

780.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

781.     Without admitting any liability or damages to Plaintiffs, Fry was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Trading's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{FT724746;8}

## COUNT 71– BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Trading Inc.)

782.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

783.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

784.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

785.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Trading.

786.    To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Trading was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Trading's control and/or was sold to Fry, LS Trading knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

787.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Trading breached that duty by failing to properly

investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

788.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

789.    Consumers, such as Fry, to whom a warning might have been provided, could have been identified by LS Trading.

790.    A warning could have been effectively communicated to consumers such as Fry and acted on by them.

791.    At all material times, LS Trading stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of LS Trading's drywall product in residential construction.

792.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Trading's position would have provided a post-sale warning.

793.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by LS Trading's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against

{FT724746;8}

Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Trading's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 72 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Trading Inc.)

794.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

795.    At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

796.    Upon information and belief, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading.

797.    At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

798.    LS Trading expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

799.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

172

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

800.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Trading directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Trading's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 73 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Trading Inc.)

801.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

802.   At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

803.   At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Trading.

173

804.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

805.    LS Trading expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

806.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

807.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Trading was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

808.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

809.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Trading failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm

174

persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

810.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Trading's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 74
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against La Suprema Trading Inc.)

811.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

812.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

813.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

175

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

814. At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

815. At all material times, LS Trading engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Fry.

816. LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

817. At the time LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Trading represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

818. Plaintiffs, in the Complaint, allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

819. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Trading imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Trading knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

176

820.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Trading's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

821.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 19-29 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

822.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe

and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

823.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

824.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Trading's violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Trading's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

**COUNT 75 – UNJUST ENRICHMENT**
**(Against La Suprema Trading, Inc.)**

825.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

826.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

827.    LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

828.    LS Trading received money from Fry as payment for the alleged defective drywall installed in the Homes.

829.    In delivering such payment, monies and/or funds to pay for the drywall that was installed in the Homes, Fry conferred a benefit, *i.e.*, funds and profit, to LS Trading, which had knowledge thereof.

830.    LS Trading voluntarily accepted and retained the benefit conferred upon it by Fry.

831.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the

179

amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

832.    The circumstances described herein under which LS Trading profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Trading to retain those funds and profits.

833.    Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 76 – COMMON LAW INDEMNITY
### (Against La Suprema Enterprise Inc.)

834.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

835.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

836.    Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

837.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

838.    Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Enterprise.

839.    A special relationship existed between LS Enterprise and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious,

{FT724746;8}

constructive, derivative or technical to LS Enterprise. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Enterprise was defective and wholly to blame for Plaintiffs' injuries.

840.   As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Enterprise to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

841.   If Fry is found to be liable to Plaintiffs, LS Enterprise is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Cross-Claim Defendant La Suprema Enterprise Inc. for damages plus attorneys' fees,  interest and costs  and for such other relief as the Court deems just and proper.

### COUNT 77 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Enterprise, Inc.)

842.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

843.   This is an action, stated in the alternative, against LS Enterprise for contribution pursuant to Section 768.31, Florida Statutes.

844.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

845.    Without admitting any liability or damages to Plaintiffs, should Fry be found liable, LS Enterprise would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

846.    Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

847.    To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against LS Enterprise for its pro rata share of the liability.

848.    LS Enterprise should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Cross-Claim Defendant, La Suprema Enterprise Inc., for its pro rata share of the liability, if any, found against Fry in this action, along with interest and costs, together with such other and further relief as this Court deems just and proper.

### COUNT 78 – EQUITABLE SUBROGATION
### (Against La Suprema Enterprise Inc.)

849.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

850.    This is an action, stated in the alternative, against LS Enterprise for equitable subrogation.

851.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

852.    Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

853.    Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

854.    To the extent that Fry is required to pay damages for any fault of LS Enterprise to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from LS Enterprise under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

855.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 79 – NEGLIGENCE
### (Against La Suprema Enterprise Inc.)

856.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

183

{FT724746;8}

857.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

858.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

859.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Enterprise.

860.    As such, LS Enterprise owed Fry a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Fry's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

861.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

862.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Fry by among other things, (i) failing

to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

863.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

864.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Fry to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

865.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or

exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 80 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Enterprise Inc.)

866.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

867.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

868.   Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

869.   Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Enterprise.

870.   As such, LS Enterprise owed Fry a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold

and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Fry about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Fry about any problems or dangers in using the drywall for residential construction.

871.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

872.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that unless it warned foreseeable consumers such as Fry of the risk of using the drywall it distributed, sold, and/or supplied, Fry would suffer harm. However, LS Enterprise failed to provide an adequate warning of such danger.

873.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

874.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Fry by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Fry about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Fry about any problems or dangers in using the drywall for residential construction, about which LS Enterprise knew or reasonably should have known.

875.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

876.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

877.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against

188

Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 81 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Enterprise Inc.)

878.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

879.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

880.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

881.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by LS Enterprise.

882.    To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Enterprise was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Enterprise's control and/or was sold to Fry, LS

Enterprise knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

883.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Enterprise breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

884.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

885.    Consumers, such as Fry, to whom a warning might have been provided, could have been identified by LS Enterprise.

886.    A warning could have been effectively communicated to consumers such as Fry and acted on by them.

887.    At all material times, LS Enterprise stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of LS Enterprise's drywall product in residential construction.

{FT724746;8}

888.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Enterprise's position would have provided a post-sale warning.

889.   Without admitting any liability or damages to Plaintiffs, Fry was damaged by LS Enterprise's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 82 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Enterprise)

890.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

891.   At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

892.    Upon information and belief, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise.

893.    At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

894.    LS Enterprise expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

895.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

896.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Enterprise directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.   LS

{FT724746;8}

Enterprise's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 83 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Enterprise)

897.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

898.    At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

899.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Enterprise.

900.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

901.    LS Enterprise expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

902.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

903.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Enterprise was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

904.   Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

905.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Enterprise failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

906.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment

entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 84
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against La Suprema Enterprise Inc.)

907.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

908.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

909.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

910.    At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

911.    At all material times, LS Enterprise engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Fry.

195

912.     LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

913.     At the time LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Enterprise represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

914.     Plaintiffs, in the Complaint, allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

915.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time LS Enterprise imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Enterprise knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

916.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Enterprise's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

917.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 19-29 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

918.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

919.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's unfair and deceptive conduct in

{FT724746;8}

importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

920.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Enterprise's violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 85 – UNJUST ENRICHMENT
**(Against La Suprema Enterprise Inc.)**

921.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

922.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

923.    LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

924.    LS Enterprise received money from Fry as payment for drywall installed in the Homes.

925.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Fry conferred a benefit, *i.e.*, funds and profit, to LS Enterprise, which had knowledge thereof.

926.    LS Enterprise voluntarily accepted and retained the benefit conferred upon it by Fry.

927.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

928.    The circumstances described herein under which LS Enterprise profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Enterprise to retain those funds and profits.

929.    Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 86 – COMMON LAW INDEMNITY
### (Against RJL)

930.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

931.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

932.    Fry is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, supplied, furnished and/or sold by RJL.  Fry justifiably relied on RJL to install, supply, furnish and/or sell drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

933.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

934.    Any injuries suffered by Plaintiffs were due to the acts or omissions of RJL, and not Fry.

935.    A special relationship existed between RJL and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to RJL.  Fry hired RJL to install drywall in the Homes. Moreover, to the extent that Plaintiffs are successful in proving their claims that the drywall was defective, said drywall was installed, supplied, furnished and/or sold by RJL, and thus, RJL is wholly to blame for Plaintiffs' injuries.

936.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of RJL to install and/or furnish drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

937.    If Fry is found to be liable to Plaintiffs, RJL is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

WHEREFORE, Fry demands judgment for indemnity in its favor against Cross-Defendant, RJL Drywall, Inc., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

## COUNT 87 - CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against RJL)

938.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

939.    This is an action, stated in the alternative, against RJL for contribution pursuant to Fla Stat. § 768.31.

940.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

941.     Without admitting any liability or damages to Plaintiffs, should Fry be found liable, RJL would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

942.     Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

943.     To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against RJL for its pro rata share of the liability.

944.     RJL should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Cross-Defendant, RJL Drywall, Inc., for its pro rata share of the liability, if any, found against Fry in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 88 – EQUITABLE SUBROGATION
### (Against RJL)

945.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

946.     This is an action, stated in the alternative, against RJL for equitable subrogation.

947.     Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

948.     Fry is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the

202

drywall installed, furnished, supplied and/or sold by RJL.  Fry justifiably relied on RJL to install, furnish, supply and/or sell drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

949.    Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs, resulting from a judgment obtained by Plaintiffs.

950.    To the extent that Fry is required to pay damages for any fault of RJL to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from RJL under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

951.    Such subrogation will not work any injustice to the rights of others.

WHEREFORE, Fry demands judgment against in its favor and against Cross-Defendant, RJL Drywall, Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 89 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLORIDA STATUTE, SECTION 672.314
### (Against RJL)

952.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

953.    This is an action against RJL for breach of the implied warranty of merchantability under the common law and/or Florida Statutes § 672.314.

954.    Fry hired RJL to furnish and/or install gypsum drywall in the Homes. RJL knew that Fry required and expected the drywall it furnished, supplied, sold and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and Fry justifiably relied on RJL's skill and judgment to provide and install such drywall in the Homes.

955.    RJL, as the installer and/or seller of the drywall, warranted to Fry that the drywall was reasonably fit for its ordinary use. Pursuant to the relationship between the parties, RJL is deemed to have provided Fry with an implied warranty of merchantability as to the drywall materials installed, furnished, supplied and/or sold by RJL.

956.    The drywall furnished by RJL for use in the construction of the Homes was not altered and/or otherwise substantively changed by Fry.

957.    Pursuant to Florida Statutes Section 672.314 and/or common law, RJL warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.

958.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.   Fry denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Fry is found liable to Plaintiffs for the defective drywall in the Homes, RJL breached the implied warranty of merchantability by installing, furnishing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

{FT724746;8}

959.   As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of RJL to furnish, install, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.   RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

960.   Fry timely notified RJL of the defective gypsum drywall, but RJL has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** Fry demands judgment for damages against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 90– BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against RJL)

961.   Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

962.   This is an action against RJL for breach of the implied warranty of fitness.

963.   Fry hired RJL to furnish and/or install gypsum drywall in the Homes. RJL knew that Fry required and expected the drywall RJL furnished, supplied, sold and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

964.   Fry justifiably relied on RJL's skill and judgment to furnish, supply, sell and/or install drywall fit for the particular purpose of constructing residential homes.

965.     Pursuant to the relationship between the parties, RJL is deemed to have provided Fry with an implied warranty of fitness as to the work performed and drywall materials furnished, supplied, sold and/or installed by RJL.

966.     The drywall furnished, supplied and/or sold by RJL for use in the construction of the Homes was not altered and/or otherwise substantively changed by Fry.

967.     RJL impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

968.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Fry denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Fry is found liable to Plaintiffs, RJL breached the implied warranty of fitness by furnishing, supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

969.     As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of RJL to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

{FT724746;8}

970.    Fry timely notified RJL of the defective gypsum drywall, but RJL has failed to repair or replace the defective gypsum drywall it furnished, supplied, sold and/or and installed in the Homes.

**WHEREFORE,** Fry demands judgment for damages against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 91 – STRICT PRODUCTS LIABILITY
### (Against RJL)

971.    Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

972.    Fry hired RJL to furnish and/or install gypsum drywall in the Homes.   RJL furnished, supplied, sold and/or installed the gypsum drywall in the Homes.

973.    At all material times, RJL was in the business of furnishing, supplying, installing, and/or selling gypsum drywall of the type contained in the Homes

974.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by RJL in the regular course of business to Fry.

975.    At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by RJL, RJL intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

976.    RJL. expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

207

977.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

978.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by RJL directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 92 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against RJL)

979.     Fry reasserts and realleges the allegations in paragraphs 1 through 36 above as if fully set forth herein.

980.     Fry hired RJL to furnish and/or install gypsum drywall in the Homes.  RJL furnished, supplied, sold and/or installed the gypsum drywall in the Homes.

{FT724746;8}

981.   At all material times, RJL was in the business of furnishing, supplying, installing, and/or selling gypsum drywall of the type contained in the Homes

982.   At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by RJL in the regular course of business to Fry.

983.   At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by RJL, RJL intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

984.   RJL. expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

985.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

986.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which RJL was required to provide a warning. However, RJL failed to provide an adequate warning of such danger.

987.   Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

988.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because RJL failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

989.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, RJL's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 93 – BREACH OF CONTRACT
### (Against RJL)

990.   Fry reasserts and realleges the allegations in paragraphs 1 through 36,  above as if fully set forth herein.

991.    Upon information and belief, in connection with the construction of residential homes in Lee County, Fry entered into an agreement with RJL wherein RJL agreed to (i) furnish labor, drywall materials, supervision and other things necessary to efficiently perform and timely complete drywall work in the Homes, (ii) perform its duties in a workmanlike manner; and, (iii) correct and/or reimburse Fry for defective work not in compliance with the plans and specifications.

992.    In accordance with their agreement, RJL knew that Fry required and expected the drywall RJL furnished, supplied and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

993.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes

994.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, RJL breached the material obligations of the parties' agreement by, among other things, furnishing and/or installing deficient and/or defective drywall.

995.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, RJL's acts and omissions in furnishing and/or installing defective drywall in the Homes directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to

{FT724746;8}

be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

WHEREFORE, Fry demands judgment for damages in its favor and against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 94 – UNJUST ENRICHMENT
### (Against RJL)

996.    Fry reasserts and realleges the allegations in paragraphs 1 through 36, above as if fully set forth herein.

997.    This is an action, stated in the alternative, against RJL for unjust enrichment.

998.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

999.    RJL furnished, supplied, sold and/or installed the gypsum drywall that was installed in the Homes.

1000.   Fry paid RJL for furnishing supplying, selling, and/or installing the drywall for the Homes.

1001.   RJL received money from Fry as a result of Fry's purchases of defective drywall installed in the Homes.

1002.   In delivering such payment, monies and/or funds to RJL, Fry conferred a benefit, *i.e.*, funds and profit, to RJL, which had knowledge thereof.

1003.   RJL. voluntarily accepted and retained the benefit conferred upon it by Fry.

{FT724746;8}

1004.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, RJL's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

1005.  The circumstances described herein under which RJL profited from selling and/or supplying drywall make it inequitable for RJL to retain those funds and profits.

1006.  Fry has no adequate remedy at law.

WHEREFORE, Fry demands judgment for damages in its favor and against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross-Plaintiff, R. Fry Builders, Inc., and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 7th day of December, 2010.

**AKERMAN SENTERFITT**

BY:  /s/      Stacy Bercun Bohm
Stacy Bercun Bohm, Esq. (Fla. Bar No. 022462)
Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
Leslie Miller Tomczak, Esq. (Fla. Bar No. 126489)
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard

213

Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Telecopier: (954) 463-2224
Email:  stacy.bohm@akerman.com
         valerie.greenberg@akerman.com
         leslie.tomczak@akerman.com

*Lead Counsel for R. Fry Builders, Inc.*

*Co-Counsel for R. Fry Builders, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
         Susie.morgan@phelps.com
         Skylar.rosenbloom@phelps.com

214

## CERTIFICATE OF SERVICE

I hereby certify that *Defendant R. Fry Builders Inc.'s Cross Claim* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA   70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA   70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 7th day of December, 2010.

/s/      Leslie Miller Tomczak