## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL      MDL No. 02047
         PRODUCTS LIABILITY LITIGATION      SECTION L

         JUDGE FALLON
         MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

KENNETH and BARBARA WILTZ, *et. al.,*
*Plaintiffs,* v.
BEIJING NEW BUILDING MATERIALS
PUBLIC LTD. CO., *et. al., Defendants.*
Case No. 10:361

_____/

## DEFENDANT R. FRY BUILDERS, INC.'S CROSS CLAIM[1]

COMES NOW Defendant/Cross-Plaintiff, R. Fry Builders, Inc. ("**Fry**"), by and through

its undersigned counsel, and alleges for its Cross-Claims against Defendants/Cross-Defendants

Banner Supply Co. ("**Banner Co.**"), Banner Supply Company Fort Myers, LLC ("**Banner Fort**

**Myers**"), Stock Building Supply, LLC, f/k/a Stock Building Supply, Inc. ("**Stock**"), and RJL

Drywall, Inc. ("**RJL**"), as follows:

### CROSS-CLAIMS AGAINST BANNER CO.,
### BANNER FORT MYERS, STOCK AND RJL

### The Parties, Jurisdiction and Venue

1.       This is an action for damages within the monetary jurisdiction of this Court.

---

[1]     Plaintiffs commenced this action on February 10, 2010 by filing an Omnibus Class Action Complaint in this cause, which was subsequently amended and expanded by way of intervention (after all modifications, referred to herein as the "Complaint"). In response, Fry has moved to dismiss the Complaint. These Cross-Claims are therefore being brought to the extent all claims against Fry are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims against Fry are not dismissed with prejudice, Fry also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Fry.

3.      Fry was and is a Florida corporation doing business in Lee County, Florida, where this cause of action arose.  At all material times, Fry was a builder of residential homes in Lee County.

4.      Fry has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Fry in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Fry denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      Banner Co., Banner Fort Myers, Stock and RJL (collectively, the "**Cross-Claim Defendants**") have also been named as defendants in the above styled action.  Fry adopts and incorporates, as if fully set forth herein, paragraphs 526, 528, 529, 544, and 546, identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Cross-Claim Defendants.

{FT724759;4}

## **General Allegations**

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Fry is liable for damages to Plaintiffs.[2]

10.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the "**Other Property**").

11.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     Fry hired RJL to furnish, supply, and/or install gypsum drywall in the Homes. The drywall furnished, supplied and/or installed by RJL for use in the construction of the Homes was not altered and/or otherwise substantively changed by Fry.

14.     RJL knew that Fry required and expected the drywall it furnished, supplied and/or installed in the Homes to be fit for the ordinary purpose for which it was intended.

15.     At all material times, RJL furnished, supplied and/or installed the drywall that was installed in the Homes.

---

[2]      The named class Plaintiffs and other members of the putative class have asserted claims against Fry in this Action, as well as other actions in the state and federal courts.  The damages sought by Fry in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{FT724759;4}

16.     Upon information and belief, RJL purchased and/or procured drywall that was installed in the Homes directly from Stock, or from Banner Co. and/or Banner Fort Myers (together, "**Banner**"), as applicable.

17.     At all material times, Banner knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner knew that Fry required and expected the drywall to be fit for the ordinary purpose for which it was intended.

18.     Upon information and belief, in mid-to-late Fall of 2006, Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by one of its Chinese-manufacturers emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

19.     Upon information and belief, Banner also conducted tests of the drywall installed in certain South Florida residential homes.

20.     Upon information and belief, even though it learned of problems with drywall it had manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce, Banner did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

21.     In a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Banner entered into a confidential settlement agreement with one of its Chinese manufacturers in January of 2007 (the "**Secret Agreement**").

22.     The Secret Agreement stipulated that that Chinese manufacturer would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of

4

Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers. In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

23.     The Secret Agreement purposefully kept consumers, such as Fry and other builders, contractors and installers, in the dark about the problems with Chinese manufactured drywall.

24.     At all material times, Stock also knew that the drywall purchased for the Homes was going to be used in construction of residential homes. Stock knew that Fry required and expected the drywall to be fit for the ordinary purpose for which it was intended.

25.     Fry did not know and was not made aware of the problems with Chinese manufactured drywall, including but not limited to the drywall supplied by Banner and/or Stock for the construction of the Homes. The drywall manufactured, exported, imported, distributed and/or sold by Banner and/or Stock was not altered and/or otherwise substantively changed by Fry.

26.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Fry, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein. In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

27.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous

and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Fry to know, of the drywall's applications, performance, and dangers.

28.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing and/or selling the defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages to Plaintiffs.

29.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the gypsum drywall product installed in the Homes.

30.     Moreover, Fry did not know and was never informed by any of the Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.

31.     Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Fry in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.  Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

{FT724759;4}

32.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

### COUNT 1 – COMMON LAW INDEMNITY
### (Against Banner Supply Co.)

33.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

34.     Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

35.     Fry is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Co.

36.     Fry is entirely without fault for the injuries alleged by Plaintiffs.

37.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Co.

38.     A special relationship existed between Banner Co. and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Co.  To the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Co. was defective and wholly to blame for Plaintiffs' injuries.

39.     As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Co. to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

{FT724759;4}

40.     If Fry is found to be liable to Plaintiffs, Banner Co. is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Cross-Claim Defendant, Banner Supply Co., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Banner Supply Co.)**

41.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

42.     This is an action, stated in the alternative, against Banner Co. for contribution pursuant to Section 768.31, Florida Statutes.

43.     Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

44.     Without admitting any liability or damages to Plaintiffs, should Fry be found liable, Banner Co. would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

45.     Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

8

46.     To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against Banner Co. for its pro rata share of the liability.

47.     Banner Co. should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Cross-Claim Defendant Banner Supply Co. for its pro rata share of the liability, if any, found against Fry in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
#### (Against Banner Supply Co.)

48.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

49.     This is an action, stated in the alternative, against Banner Co. for equitable subrogation.

50.     Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

51.     Fry is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner Co.

52.     Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

{FT724759;4}

53.     To the extent that Fry is required to pay damages for any fault of Banner Co. to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from Banner Co. under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

54.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Cross-Claim Defendant, Banner Supply Co., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 4 – NEGLIGENCE
### (Against Banner Supply Co.)

55.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

56.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

57.     Banner Co. distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

10

{FT724759;4}

58.     Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Co.

59.     As such, Banner Co. owed Fry a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Fry's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

60.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Co. knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

61.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Co. breached its duty of care to Fry by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall

11

which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

62.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Co.'s duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

63.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Fry to substantial liability and damages. If Banner Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

64.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

{FT724759;4}

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 5 – NEGLIGENT FAILURE TO WARN**
**(Against Banner Supply Co.)**

65.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

66.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

67.     Banner Co. distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

68.     Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Co.

69.     As such, Banner Co. owed Fry a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Fry about any dangers inherent in the drywall, and/or (iii) warn Fry about any problems or dangers in using the drywall for residential construction.

70.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

13

the Complaint, Banner Co. knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

71.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or should have known that unless it warned Fry of the risk of using the drywall it distributed, sold, and/or supplied, Fry would suffer harm. However, Banner Co. failed to provide an adequate warning of such danger.

72.     Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

73.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. breached its duty of care to Fry by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Fry about any dangers inherent in the drywall, and/or (iii) failing to warn Fry about any problems or dangers in using the drywall for residential construction, about which Banner Co. knew or reasonably should have known.

74.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

14

the Complaint, such breaches in Banner Co.'s duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

75.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co. knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages. If Banner Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

76.     Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{FT724759;4}

## COUNT 6 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Banner Supply Co.)

77.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

78.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

79.     Banner Co. distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

80.     Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Co.

81.     To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Co. was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Co.'s control, Banner Co. knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

82.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co., as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Banner Co. breached that duty by failing to properly

investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

83.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

84.    Consumers, such as Fry, to whom a warning might have been provided could have been identified by Banner Co.

85.    A warning could have been effectively communicated to consumers such as Fry and acted on by them.

86.    At all material times, Banner Co. stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of Banner Co.'s drywall product in residential construction.

87.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable distributor, seller and/or supplier in Banner Co.'s position would have provided a post-sale warning.

88.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry was damaged by Banner Co.'s breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf

{FT724759;4}

of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – STRICT PRODUCTS LIABILITY
**(Against Banner Supply Co.)**

89.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

90.     At all material times, Banner Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

91.     At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co.

92.     At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co., Banner Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

93.     Banner Co. expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

94.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

18

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

95.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Co. directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner Supply Co.)

96.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

97.     At all material times, Banner Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

98.     At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Co.

{FT724759;4}

99.     At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Co., Banner Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

100.    Banner Co. expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

101.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

102.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Co. was required to provide a warning. However, Banner Co. failed to provide an adequate warning of such danger.

103.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

104.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Co. failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm

persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

105.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Banner Supply Co.)

106.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

107.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

108.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

21

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

109.   At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

110.   At all material times, Banner Co. engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Fry.

111.   Banner Co. advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

112.   At the time Banner Co. advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Co. represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

113.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

114.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Co. sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Co. knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

115.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

{FT724759;4}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner Co.'s unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

116.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

117.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it

became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

118.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

119.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Co.'s violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Co.'s wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus attorneys'

fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## COUNT 10– UNJUST ENRICHMENT
### (Against Banner Supply Co.)

120.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

121.    This is an action, stated in the alternative, against Banner Co. for unjust enrichment.

122.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

123.    Banner Co. distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

124.    Banner Co. received money that came from Fry as a result of the installation of its defective drywall installed in the Homes.

125.    In supplying such payment, monies and/or funds that were ultimately paid  to Banner Co., Fry conferred a benefit, *i.e.*, funds and profit, to Banner Co., which had knowledge thereof.

126.    Banner Co. voluntarily accepted and retained the benefit conferred upon it by Fry.

127.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Co.'s acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment

entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

128.    The circumstances described herein under which Banner Co. profited from selling and/or supplying drywall make it inequitable for Banner Co. to retain those funds and profits.

129.    Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 11– COMMON LAW INDEMNITY
### (Against Banner Supply Company Fort Myers, LLC)

130.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

131.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

132.    Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by Banner Fort Myers.

133.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

134.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Fort Myers.

135.    A special relationship existed between Banner Fort Myers and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Fort Myers. To the extent that Plaintiffs are

{FT724759;4}

successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Fort Myers was defective and wholly to blame for Plaintiffs' injuries.

136.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Fort Myers to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

137.    If Fry is found to be liable to Plaintiffs, Banner Fort Myers is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 12 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Supply Company Fort Myers, LLC)

138.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

139.    This is an action, stated in the alternative, against Banner Fort Myers for contribution pursuant to Section 768.31, Florida Statutes.

27

140.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

141.    Without admitting any liability or damages to Plaintiffs, should Fry be found liable, Banner Fort Myers would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

142.    Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

143.    To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against Banner Fort Myers for its pro rata share of the liability.

144.    Banner Fort Myers should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, for its pro rata share of the liability, if any, found against Fry in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT 13 – EQUITABLE SUBROGATION
### (Against Banner Supply Company Fort Myers, LLC)

145.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

146.    This is an action, stated in the alternative, against Banner Fort Myers for equitable subrogation.

28

147.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

148.    Fry is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by Banner Fort Myers.

149.    Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

150.    To the extent that Fry is required to pay damages for any fault of Banner Fort Myers to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from Banner Fort Myers under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

151.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 14 – NEGLIGENCE
### (Against Banner Supply Company Fort Myers, LLC)

152.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

153.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

154.    Banner Fort Myers distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

155.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Fort Myers.

156.    As such, Banner Fort Myers owed Fry a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Fry's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

157.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Fort Myers knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

158.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Fort Myers breached its duty of care to Fry by among other things, (i) failing

{FT724759;4}

to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

159.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Fort Myers' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

160.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying, and/or selling defective drywall would expose Fry to substantial liability and damages. If Banner Fort Myers had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

161.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Fort Myers' breaches of its duties of care, which directly and proximately caused

31

{FT724759;4}

and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 15 – NEGLIGENT FAILURE TO WARN
### (Against Banner Supply Company Fort Myers, LLC)

162.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

163.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

164.    Banner Fort Myers distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

165.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Fort Myers.

32

166.     As such, Banner Fort Myers owed Fry a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Fry about any dangers inherent in the drywall, and/or (iii) warn Fry about any problems or dangers in using the drywall for residential construction.

167.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

168.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or should have known that unless it warned Fry of the risk of using the drywall it distributed, sold, and/or supplied, Fry would suffer harm. However, Banner Fort Myers failed to provide an adequate warning of such danger.

169.     Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

170.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers breached its duty of care to Fry by (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn Fry about any dangers inherent in the drywall, and/or (iii) failing to warn Fry about any problems or dangers in using the drywall for residential construction, about which Banner Fort Myers knew or reasonably should have known.

171.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Fort Myers' duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

172.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages. If Banner Fort Myers had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

173.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Fort Myers' breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any

34

payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Banner Supply Company Fort Myers, LLC)

174.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

175.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

176.     Banner Fort Myers distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

177.     Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Banner Fort Myers.

178.     To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Fort Myers was defective, unreasonably dangerous and/or not

reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Fort Myers' control and/or was sold to Fry, Banner Fort Myers knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

179.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers as the distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner Fort Myers breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

180.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

181.    Consumers, such as Fry, to whom a warning might have been provided, could have been identified by Banner Fort Myers.

182.    A warning could have been effectively communicated to consumers such as Fry and acted on by them.

183.    At all material times, Banner Fort Myers stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be

assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of Banner Fort Myers' drywall product in residential construction.

184.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Fort Myers' position would have provided a post-sale warning.

185.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Banner Fort Myers' breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 17 – STRICT PRODUCTS LIABILITY**
**(Against Banner Supply Company Fort Myers, LLC)**

186.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

187.    At all material times, Banner Fort Myers was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

188.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers.

189.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers, Banner Fort Myers intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

190.    Banner Fort Myers expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

191.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

192.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Fort Myers directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Banner Fort Myers' wrongful

38

conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 18 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner Supply Company Fort Myers, LLC)

193.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

194.    At all material times, Banner Fort Myers was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

195.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Fort Myers.

196.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers, Banner Fort Myers intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

197.    Banner Fort Myers expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

198.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

199.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Fort Myers was required to provide a warning.  However, Banner Fort Myers failed to provide an adequate warning of such danger.

200.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as more fully alleged in the Complaint.

201.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Fort Myers failed to warn Fry of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

202.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment

entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 19**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Banner Supply Company Fort Myers, LLC)**

203.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

204.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

205.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

206.    At all material times, Fry was a person and a consumer of drywall as defined under FDUTPA.

207.    At all material times, Banner Fort Myers engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Fry.

41

208.   Banner Fort Myers advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

209.   At the time Banner Fort Myers advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Fort Myers represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

210.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

211.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Fort Myers sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Fort Myers knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

212.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Banner Fort Myers' unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

213.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

214.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Fry acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

215.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising,

43

soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Fry.

216.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Fort Myers' violations of FDUTPA directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## COUNT 20 – UNJUST ENRICHMENT
### (Against Banner Supply Company Fort Myers, LLC)

217.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

44

218.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

219.    This is an action, stated in the alternative, against Banner Fort Myers for unjust enrichment.

220.    Banner Fort Myers distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

221.    Banner Fort Myers received money from or on behalf of Fry as a result of the installation of defective drywall in the Homes.

222.    In supplying payment, monies and/or funds that ultimately were paid to Banner Fort Myers, Fry conferred a benefit, *i.e.*, funds and profit, to Banner Fort Myers, which had knowledge thereof.

223.    Banner Fort Myers voluntarily accepted and retained the benefit conferred upon it by or on behalf of Fry.

224.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

{FT724759;4}

225.    The circumstances described herein under which Banner Fort Myers profited from distributing, selling and/or supplying drywall make it inequitable for Banner Fort Myers to retain those funds and profits.

226.    Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 21 COMMON LAW INDEMNITY
### (Against Stock Building Supply, LLC)

227.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

228.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

229.    Fry is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Stock.

230.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

231.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Stock.

232.    A special relationship existed between Stock and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Stock. To the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Stock was defective and wholly to blame for Plaintiffs' injuries.

{FT724759;4}

233.   As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Stock to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

234.   If Fry is found to be liable to Plaintiffs, Stock is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Fry demands judgment for indemnity in its favor against Cross-Claim Defendant, Stock Building Supply, LLC, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

## COUNT 22 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Stock Building Supply, LLC)

235.   Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

236.   This is an action, stated in the alternative, against Stock for contribution pursuant to Section 768.31, Florida Statutes.

237.   Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

238.     Without admitting any liability or damages to Plaintiffs, should Fry be found liable, Stock would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

239.     Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

240.     To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against Stock for its pro rata share of the liability.

241.     Stock should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Cross-Claim Defendant Stock Building Supply, LLC, for its pro rata share of the liability, if any, found against Fry in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 23 – EQUITABLE SUBROGATION
### (Against Stock Building Supply, LLC)

242.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

243.     This is an action, stated in the alternative, against Stock for equitable subrogation.

244.     Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

{FT724759;4}

245.     Fry is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Stock

246.     Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs.

247.     To the extent that Fry is required to pay damages for any fault of Stock to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from Stock under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

248.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Fry demands judgment in its favor and against Cross-Claim Defendant, Stock Building Supply, LLC, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 24 – NEGLIGENCE
### (Against Stock Building Supply, LLC)

249.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

250.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{FT724759;4}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

251.    Stock distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

252.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Stock.

253.    As such, Stock owed Fry a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Fry's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

254.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Stock knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

255.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Stock breached its duty of care to Fry by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied

50

with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Stock sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

256.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Stock's duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

257.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Fry to substantial liability and damages. If Stock had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Fry would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

258.    Without admitting any liability or damages to Plaintiffs, Fry was damaged by Stock's breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or

{FT724759;4}

the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. Stock's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Stock Building Supply, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 25 – NEGLIGENT FAILURE TO WARN
**(Against Stock Building Supply, LLC)**

259.     Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

260.     Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

261.     Stock distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

262.     Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Stock.

263.     As such, Stock owed Fry a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Fry about any dangers inherent in the drywall, and/or (iii) warn Fry about any problems or dangers in using the drywall for residential construction.

264.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

265.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock knew or should have known that unless it warned Fry of the risk of using the drywall it distributed, sold, and/or supplied, Fry would suffer harm. However, Stock failed to provide an adequate warning of such danger.

266.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

267.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock breached its duty of care to Fry by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Fry about any dangers inherent in the drywall, and/or (iii) failing to warn Fry about any problems or dangers in using the drywall for residential construction, about which Stock knew or reasonably should have known.

268.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Stock's duty of care were the direct and proximate cause of Fry's injuries, losses, and damages.

269.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Fry to substantial liability and damages. If Stock had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Fry would ensue as a result of failing to disclose and/or warn of drywall defects.

270.   Without admitting any liability or damages to Plaintiffs, Fry was damaged by Stock's breaches of its duties of care, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Stock's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Stock Building Supply, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{FT724759;4}

## COUNT 26 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Stock Building Supply, LLC)

271.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

272.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

273.    Stock distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

274.    Fry was a foreseeable user of the gypsum drywall imported, distributed supplied, and/or sold by Stock

275.    To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Stock was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Stock's control, Stock knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

276.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock, as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Stock breached that duty by failing to properly investigate

and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

277.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

278.   Consumers, such as Fry, to whom a warning might have been provided could have been identified by Stock

279.   A warning could have been effectively communicated to consumers such as Fry and acted on by them.

280.   At all material times, Stock stood in a better position than Fry to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Fry was unaware of potential dangers and/or risk of harm associated with the use of Stock's drywall product in residential construction.

281.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Stock's position would have provided a post-sale warning.

282.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Fry was damaged by Stock's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Fry to substantial liability and damages, including but

{FT724759;4}

not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Stock's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Stock Building Supply, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 27 – STRICT PRODUCTS LIABILITY
**(Against Stock Building Supply, LLC)**

283.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

284.    At all material times, Stock was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

285.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Stock.

286.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Stock, Stock intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

287.    Stock expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

288.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

289.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Stock directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.   Stock's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Stock Building Supply, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 28 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Stock Building Supply, LLC)

290.   Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

291.   At all material times, Stock was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

{FT724759;4}

292.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Stock.

293.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Stock, Stock intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

294.    Stock expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

295.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

296.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Stock was required to provide a warning. However, Stock failed to provide an adequate warning of such danger.

297.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

298.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Stock failed to warn Fry of the risk of

59

harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

299.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  Stock's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Stock Building Supply, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 29 - UNJUST ENRICHMENT
### (Against Stock Building Supply, LLC)

300.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

301.    This is an action, stated in the alternative, against Stock for unjust enrichment.

302.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

{FT724759;4}

303.   Stock distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

304.   Stock received money that came from Fry as a result of the installation of its defective drywall installed in the Homes.

305.   In supplying such payment, monies and/or funds that were ultimately paid  to Stock, Fry conferred a benefit, *i.e.*, funds and profit, to Stock, which had knowledge thereof.

306.   Stock voluntarily accepted and retained the benefit conferred upon it by Fry.

307.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Stock's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

308.   The circumstances described herein under which Stock profited from selling and/or supplying drywall make it inequitable for Stock to retain those funds and profits.

309.   Fry has no adequate remedy at law.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Claim Defendant, Stock Building Supply, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{FT724759;4}

## COUNT 30 – COMMON LAW INDEMNITY
### (Against RJL)

310.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

311.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

312.    Fry is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, supplied, furnished and/or sold by RJL.  Fry justifiably relied on RJL to install, supply, furnish and/or sell drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

313.    Fry is entirely without fault for the injuries alleged by Plaintiffs.

314.    Any injuries suffered by Plaintiffs were due to the acts or omissions of RJL, and not Fry.

315.    A special relationship existed between RJL and Fry such that any liability imposed upon Fry in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to RJL.  Fry hired RJL to install drywall in the Homes. Moreover, to the extent that Plaintiffs are successful in proving their claims that the drywall was defective, said drywall was installed, supplied, furnished and/or sold by RJL, and thus, RJL is wholly to blame for Plaintiffs' injuries.

316.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of RJL to install and/or furnish drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

62

317.    If Fry is found to be liable to Plaintiffs, RJL is liable to Fry for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

WHEREFORE, Fry demands judgment for indemnity in its favor against Cross-Defendant, RJL Drywall, Inc., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

## COUNT 31 - CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against RJL)

318.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

319.    This is an action, stated in the alternative, against RJL for contribution pursuant to Fla. Stat. § 768.31.

320.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defects in the drywall contained in the Homes.

321.    Without admitting any liability or damages to Plaintiffs, should Fry be found liable, RJL would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

322.    Fry has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

{FT724759;4}

323.    To the extent that any common liability is found with respect to Fry, Fry hereby asserts its right of contribution against RJL for its pro rata share of the liability.

324.    RJL should be required to repay Fry for any loss, damages, costs, and expenses, including attorneys' fees, Fry is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Fry, in excess of its pro rata share of any common liability.

**WHEREFORE**, Fry demands that judgment be entered against Cross-Defendant, RJL Drywall, Inc., for its pro rata share of the liability, if any, found against Fry in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## COUNT 32 – EQUITABLE SUBROGATION
### (Against RJL)

325.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

326.    This is an action, stated in the alternative, against RJL for equitable subrogation.

327.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.

328.    Fry is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, furnished, supplied and/or sold by RJL.  Fry justifiably relied on RJL to install, furnish, supply and/or sell drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

329.    Without admitting any liability or damages to Plaintiffs, Fry is not primarily liable for any liability to the Plaintiffs, resulting from a judgment obtained by Plaintiffs.

{FT724759;4}

330.    To the extent that Fry is required to pay damages for any fault of RJL to protect its own interests, and not as a volunteer, Fry would be entitled to reimbursement from RJL under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Fry, including, without limitation, payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Fry and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Fry, as well as reasonable costs and attorneys' fees incurred by Fry in defending against the claims brought by Plaintiffs.

331.    Such subrogation will not work any injustice to the rights of others.

WHEREFORE, Fry demands judgment against in its favor and against Cross-Defendant, RJL Drywall, Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 33 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLORIDA STATUTE, SECTION 672.314
### (Against RJL)

332.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

333.    This is an action against RJL for breach of the implied warranty of merchantability under the common law and/or Florida Statutes § 672.314.

334.    Fry hired RJL to furnish and/or install gypsum drywall in the Homes. RJL knew that Fry required and expected the drywall it furnished, supplied, sold and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and Fry justifiably relied on RJL's skill and judgment to provide and install such drywall in the Homes.

335.    RJL, as the installer and/or seller of the drywall, warranted to Fry that the drywall was reasonably fit for its ordinary use. Pursuant to the relationship between the parties, RJL is deemed to have provided Fry with an implied warranty of merchantability as to the drywall materials installed, furnished, supplied and/or sold by RJL.

336.    The drywall furnished by RJL for use in the construction of the Homes was not altered and/or otherwise substantively changed by Fry.

337.    Pursuant to Florida Statutes Section 672.314 and/or common law, RJL warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.

338.    Plaintiffs in the Complaint allege various claims against Fry for damages caused by defective drywall contained in the Homes.  Fry denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Fry is found liable to Plaintiffs for the defective drywall in the Homes, RJL breached the implied warranty of merchantability by installing, furnishing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

339.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of RJL to furnish, install, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of

{FT724759;4}

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

340.    Fry timely notified RJL of the defective gypsum drywall, but RJL has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** Fry demands judgment for damages against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 34– BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against RJL)

341.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

342.    This is an action against RJL for breach of the implied warranty of fitness.

343.    Fry hired RJL to furnish and/or install gypsum drywall in the Homes.  RJL knew that Fry required and expected the drywall RJL furnished, supplied, sold and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

344.    Fry justifiably relied on RJL's skill and judgment to furnish, supply, sell and/or install drywall fit for the particular purpose of constructing residential homes.

345.    Pursuant to the relationship between the parties, RJL is deemed to have provided Fry with an implied warranty of fitness as to the work performed and drywall materials furnished, supplied, sold and/or installed by RJL.

346.    The drywall furnished, supplied and/or sold by RJL for use in the construction of the Homes was not altered and/or otherwise substantively changed by Fry.

347.    RJL impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

348.    Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Fry denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Fry is found liable to Plaintiffs, RJL. breached the implied warranty of fitness by furnishing, supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

349.    As a result of the claims that have been filed against Fry, Fry has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of RJL to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

350.    Fry timely notified RJL of the defective gypsum drywall, but RJL has failed to repair or replace the defective gypsum drywall it furnished, supplied, sold and/or and installed in the Homes.

**WHEREFORE,** Fry demands judgment for damages against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

## COUNT 35 – STRICT PRODUCTS LIABILITY
### (Against RJL)

351.    Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

352.    Fry hired RJL to furnish and/or install gypsum drywall in the Homes.   RJL furnished, supplied, sold and/or installed the gypsum drywall in the Homes.

353.    At all material times, RJL was in the business of furnishing, supplying, installing, and/or selling gypsum drywall of the type contained in the Homes

354.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by RJL in the regular course of business to Fry.

355.    At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by RJL, RJL intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

356.    RJL expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

357.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

358.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into

69

the stream of commerce, supplied and/or sold by RJL directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 36 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against RJL)

359.   Fry reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

360.   Fry hired RJL to furnish and/or install gypsum drywall in the Homes.  RJL furnished, supplied, sold and/or installed the gypsum drywall in the Homes.

361.   At all material times, RJL was in the business of furnishing, supplying, installing, and/or selling gypsum drywall of the type contained in the Homes

362.   At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by RJL in the regular course of business to Fry.

363.   At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by RJL, RJL intended that the drywall reach consumers and/or ultimate users of the drywall, such as Fry.

70

364.    RJL expected the gypsum drywall to reach Fry and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Fry and/or the Homes without substantial change affecting that condition.

365.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

366.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which RJL was required to provide a warning. However, RJL failed to provide an adequate warning of such danger.

367.    Fry did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

368.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because RJL failed to warn Fry of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Fry had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

{FT724759;4}

369.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, RJL's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.  RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Fry demands judgment for damages in its favor and against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 37 – BREACH OF CONTRACT
### (Against RJL)

370.     Fry reasserts and realleges the allegations in paragraphs 1 through 32, above as if fully set forth herein.

371.     Upon information and belief, in connection with the construction of residential homes in Lee County, Fry entered into an agreement with RJL wherein RJL agreed to (i) furnish labor, drywall materials, supervision and other things necessary to efficiently perform and timely complete drywall work in the Homes, (ii) perform its duties in a workmanlike manner; and (iii) correct and/or reimburse Fry for defective work not in compliance with the plans and specifications.

{FT724759;4}

372.   In accordance with their agreement, RJL knew that Fry required and expected the drywall RJL furnished, supplied and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

373.   Plaintiffs in the Complaint allege various claims against Fry for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes

374.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, RJL breached the material obligations of the parties' agreement by, among other things, furnishing and/or installing deficient and/or defective drywall.

375.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, RJL's acts and omissions in furnishing and/or installing defective drywall in the Homes directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims. RJL's wrongful conduct also caused damages to Fry, including but not limited to Fry's loss of reputation, goodwill and lost profits.

{FT724759;4}

WHEREFORE, Fry demands judgment for damages in its favor and against Cross-Defendant, RJL Drywall, Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 38 – UNJUST ENRICHMENT
#### (Against RJL)

376.    Fry reasserts and realleges the allegations in paragraphs 1 through 32,  above as if fully set forth herein.

377.    This is an action, stated in the alternative, against RJL for unjust enrichment.

378.    Plaintiffs in the Complaint allege various claims against Fry for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

379.    RJL furnished, supplied, sold and/or installed the gypsum drywall that was installed in the Homes.

380.    Fry paid RJL for furnishing supplying, selling, and/or installing the drywall for the Homes.

381.    RJL received money from Fry as a result of Fry's purchases of defective drywall installed in the Homes.

382.    In delivering such payment, monies and/or funds to RJL, Fry conferred a benefit, *i.e.*, funds and profit, to RJL, which had knowledge thereof.

383.    RJL voluntarily accepted and retained the benefit conferred upon it by Fry.

384.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, RJL's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Fry to substantial liability and damages, including but not limited to any payments made or to be

74

made on behalf of Fry to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Fry in this action and/or any other action brought by Plaintiffs against Fry, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Fry in defending against these claims.

385.    The circumstances described herein under which RJL profited from selling and/or supplying drywall make it inequitable for RJL to retain those funds and profits.

386.    Fry has no adequate remedy at law.

**DEMAND FOR JURY TRIAL**

**COMES NOW** Defendant/Cross-Plaintiff, R. Fry Builders, Inc., and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 7th day of December, 2010.

**AKERMAN SENTERFITT**

BY:  /s/        Stacy Bercun Bohm
        Stacy Bercun Bohm, Esq. (Fla. Bar No. 022462)
        Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
        Leslie Miller Tomczak, Esq. (Fla. Bar No. 126489)
        Las Olas Centre II, Suite 1600
        350 East Las Olas Boulevard
        Fort Lauderdale, Florida 33301-2229
        Telephone: (954) 463-2700
        Telecopier: (954) 463-2224
        Email:  stacy.bohm@akerman.com
                valerie.greenberg@akerman.com
                leslie.tomczak@akerman.com

        *Lead Counsel for R. Fry Builders, Inc.*

{FT724759;4}

*Co-Counsel for R. Fry Builders, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
        Susie.morgan@phelps.com
        Skylar.rosenbloom@phelps.com

## CERTIFICATE OF SERVICE

I hereby certify that *Defendant R. Fry Builders, Inc.'s Cross Claim* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA  70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA  70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 7th day of December, 2010.

/s/    Leslie Miller Tomczak

{FT724759;4}